DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-[    ](RDD)** |
| Debtors. [1] | **(Joint Administration Pending)** |

## APPLICATION FOR AN ORDER APPOINTING PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS

Purdue Pharma L.P. (**"PPLP"**) and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**," the "**Company**" or **"Purdue"**) file this

application (this "**Section 156(c) Application**") for entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "**Order**") pursuant to section 156(c) of title 28 of the United

States Code, section 105(a) of the United States Code (the "**Bankruptcy Code**"), and rule 5075-

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), appointing Prime Clerk LLC ("**Prime Clerk**") as the claims and noticing agent (the "**Claims and Noticing Agent**") in the Debtors' chapter 11 cases effective *nunc pro tunc* to the Petition Date (as defined herein).  In support thereof, the Debtors rely upon and fully incorporate by reference the *Declaration of Shai Y. Waisman in Support of the Debtors' Application for an Order Appointing Prime Clerk LLC as Claims and Noticing Agent for the Debtors* (the "**Waisman Declaration**"), attached hereto as **Exhibit B** and respectfully represent as follows:

### Jurisdiction and Venue

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Section 156(c) Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") has not appointed a statutory committee of creditors in these chapter 11 cases, nor has the Court appointed a trustee or examiner therein.

2

3.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

4.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed contemporaneously herewith.

**Relief Requested**

5.      The Debtors request entry of an order appointing Prime Clerk as the Claims and Noticing Agent for the Debtors in these chapter 11 cases, in order to, among other things, assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' chapter 11 cases.  The Debtors' selection of Prime Clerk to act as the Claims and Noticing Agent has satisfied the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c), in that the Debtors have obtained and reviewed engagement proposals from four court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Prime Clerk's rates are competitive and reasonable given Prime Clerk's quality of services and expertise.  The terms of Prime Clerk's retention are set forth in the engagement agreement attached hereto as **Exhibit C** (the "**Engagement Agreement**"); *provided*, *however*, that the Debtors are seeking approval solely of the terms and provisions as set forth in this Section 156(c) Application and the proposed order attached hereto.

6.      Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be in excess of 25,000 entities to be noticed.  Local Rule 5075-1(b) provides that "[i]n a case in which the number of creditors and equity security holders, in the

3

aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

7.      By separate application, the Debtors will seek authorization to retain and employ Prime Clerk as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code, because the administration of these chapter 11 cases will require Prime Clerk to perform duties outside the scope of 28 U.S.C. § 156(c).

### Prime Clerk's Qualifications, Disinterestedness, Services to Be Provided and Compensation

8.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide.  Prime Clerk's active cases include:  *Synergy Pharmaceuticals Inc.*, No. 18-14010 (JLG) (Bankr. S.D.N.Y.); *Sears Holdings Corporation*, No. 18-23538 (RDD) (Bankr. S.D.N.Y.); *Aralez Pharmaceuticals US Inc.*, No. 18-12425 (SMB) (Bankr. S.D.N.Y.); *Relativity Media, LLC*, No. 18-11358 (MEW) (Bankr. S.D.N.Y.); *Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y.); *Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y.); *Global Brokerage, Inc.*, No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.*, No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Pacific Drilling S.A., No. 17-*

4

13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation*, No. 17-13446
(JLG) (Bankr. S.D.N.Y.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr.
S.D.N.Y.); *Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y.); *Checkout Holding Corp.*, No.
18-12794 (KG) (Bankr. D. Del.); *Fairway Energy, LP*, No. 18-12684 (LSS) (Bankr. D. Del.);
*Dixie Electric, LLC*, No. 18-12477 (KG) (Bankr. D. Del.); *New MACH Gen GP, LLC*, No. 18-
11369 (MFW) (Bankr. D. Del.); *Gibson Brands, Inc.*, No. 18-11028 (CSS) (Bankr. D. Del.);
*Bertucci's Holdings, Inc.*, No.18-10894 (MFW) (Bankr. D. Del.); *EV Energy Partners, L.P.*, No.
18-10814 (CSS) (Bankr. D. Del.); *Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del.);
*The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del.); *TK Holdings Inc.,* No. 17-
11375 (BLS) (Bankr. D. Del.); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D.
Tex.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.).[2]

9.       By appointing Prime Clerk as the Claims and Noticing Agent in these chapter 11
cases, the distribution of notices and the processing of claims will be expedited, and the Office of
the Clerk of the Bankruptcy Court (the "**Clerk**") will be relieved of the administrative burden of
processing what may be an overwhelming number of claims.

10.      This Section 156(c) Application pertains only to the work to be performed by
Prime Clerk under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and
S.D.N.Y. Local Rule 5075-1, and any work to be performed by Prime Clerk outside of this scope
is not covered by this Section 156(c) Application or by any order granting approval hereof.
Specifically, Prime Clerk will perform the following tasks in its role as Claims and Noticing
Agent, as well as all quality control relating thereto:

---

[2] Because of the voluminous nature of the orders cited herein, they are not attached to the Section 156(c)
Application.  Copies of these orders, however, are available on request of the Debtors' proposed counsel.

(a)    Prepare and serve required notices and documents in the chapter 11 cases in accordance with the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

(b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)    Maintain (i) a list of all potential creditors, equity holders and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party in interest or the Clerk (subject to any other orders of the Court);

(d)    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form (or forms) for the filing of a proof of claim, after such form(s), notice and manner of notice are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims to the extent set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)    For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served, in each case subject to any other orders of the Court;

(g)    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)    Provide an electronic interface for filing proofs of claim;

(i)     Maintain the official claims register for each Debtor (the "**Claims Registers**") on behalf of the Clerk on a case-specific website, subject to any other orders of the Court; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and, except to the extent ordered otherwise by the Court, specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor and (vii) any disposition of the claim;

(j)     Except to the extent ordered otherwise by the Court, provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Prime Clerk, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center.

(r)     If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Prime Clerk of entry of the order converting the cases;

(s)     Thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Prime Clerk as Claims and Noticing Agent and terminating its services in such capacity upon

completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(t)     Within seven (7) days of notice to Prime Clerk of entry of an order closing the chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

(u)     At the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

### **Professional Compensation**

11.     The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.   Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party in interest who specifically requests service of the monthly invoices.   If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

12.     Prior to the Petition Date, the Debtors provided Prime Clerk an advance in the amount of $75,000.  Prime Clerk seeks to first apply the advance to all pre-petition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to

hold the advance under the Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

13.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct, or as otherwise provided in the Engagement Agreement or order. The Debtors believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

## Disinterestedness

14.     Although the Debtors do not propose to employ Prime Clerk under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by separate application), Prime Clerk has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information and belief, and except as disclosed in the Waisman Declaration, Prime Clerk has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

15.     Moreover, in connection with its retention as Claims and Noticing Agent, Prime Clerk represents in the Waisman Declaration, among other things, that

(a)     Prime Clerk is not a creditor of the Debtors;

9

(b)   Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the chapter 11 cases;

(c)   By accepting employment in the chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with the Debtors' chapter 11 cases;

(d)   In its capacity as the Claims and Noticing Agent in the chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)   Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)   Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)   In its capacity as Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)   Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)   Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)   None of the services provided by Prime Clerk as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims and Noticing Agent Protocol

16.    This Section 156(c) Application complies with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) and conforms to the standard Section 156(c) Application in use in this Court.  To the extent that there is any inconsistency between this Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

## Notice

17.     The Debtors have provided copies of this Section 156(c) Application to: (a) the U.S. Trustee; (b) each of the Debtors' fifty largest unsecured creditors on a consolidated basis; (c) each of the Debtors' three largest secured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) the Department of Justice; (f) the United States Attorney's Office for the Southern District of New York; (g) the attorneys general for all fifty states and the District of Columbia; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  Based on the urgency of the circumstances surrounding this Section 156(c) Application and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## No Previous Request

18.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors request entry of an order, in the form annexed hereto as

**Exhibit A**, authorizing Prime Clerk to act as Claims and Noticing Agent for the maintenance and

processing of claims and the distribution of notices.

Dated:    September 15, 2019
          New York, New York

                              DAVIS POLK & WARDWELL LLP

                              By:   /s/ *Eli J. Vonnegut*_____

                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile:  (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              Timothy Graulich
                              Eli J. Vonnegut

                              *Proposed Counsel to the Debtors*
                              *and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-[    ](RDD) |
| Debtors.[1] | **(Joint Administration Pending)** |

## ORDER AUTHORIZING RETENTION AND APPOINTMENT
## OF PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT FOR
## THE DEBTORS

Upon the application (the "**Section 156(c) Application**")[2] of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**"), for entry of an order (this "**Order**") for

the retention and appointment of Prime Clerk LLC ("**Prime Clerk**") as the claims and noticing

agent ("**Claims and Noticing Agent**"), pursuant to 28 U.S.C. §156(c), section 105(a) of the

Bankruptcy Code and Local Rule 5075-1, to, among other things, (a) distribute required notices

to parties in interest, (b) receive, maintain, docket and otherwise administer the proofs of claim

filed in the Debtors' chapter 11 cases and (c) provide such other administrative services—as

required by the Debtors—that would fall within the purview of services to be provided by the

Clerk, all as more fully set forth in the Section 156(c) Application; and upon the Waisman

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

Declaration submitted in support of the Section 156(c) Application; and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334 and the *Amended Standing*

*Order of Reference from the United States District Court for the Southern District of New York*,

dated January 31, 2012; and this Court having the power to enter a final order consistent with

Article III of the United States Constitution; and this Court having found that venue of this

proceeding and the Section 156(c) Application in this district is proper pursuant to 28 U.S.C. §§

1408 and 1409; and this Court having found that the Debtors' notice of the Section 156(c)

Application and opportunity for a hearing on the Section 156(c) Application were appropriate

under the circumstances and no other notice need be provided; and this Court having reviewed

the Section 156(c) Application and having heard the statements in support of the relief requested

therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the

legal and factual bases set forth in the Section 156(c) Application and at the Hearing establish

just cause for the relief granted herein; and upon all of the proceedings had before this Court;

and after due deliberation and sufficient cause appearing therefor,

> **IT IS HEREBY ORDERED THAT**

1.      Notwithstanding the terms of the Engagement Agreement attached to the Section

156(c) Application, the Section 156(c) Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain Prime Clerk as Claims and Noticing Agent

effective *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and

Prime Clerk is authorized and directed to perform noticing services and to receive, maintain,

record and otherwise administer the proofs of claim filed in these chapter 11 cases, and all

related tasks, all as described in the Section 156(c) Application and any other orders of the

Court.

3.      Prime Clerk shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Prime Clerk is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.      Prime Clerk is authorized to take such other action to comply with all duties set forth in the Section 156(c) Application.

6.      The Debtors are authorized to compensate Prime Clerk in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Prime Clerk and the rates charged for each, and to reimburse Prime Clerk for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Prime Clerk to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Prime Clerk shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party in interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from this Court if resolution is not achieved.

3

9.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Prime Clerk under this Order shall be an administrative expense of the Debtors' estates.

10.     Prime Clerk may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Prime Clerk may hold its advance under the Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Prime Clerk in accordance with the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     All requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided* that in no event shall Prime Clerk be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

13.     In the event that Prime Clerk seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Prime Clerk is unable to provide the services set out in this Order, Prime Clerk will immediately notify the Clerk and the Debtors' attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to

4

another claims and noticing agent with the advice and consent of the Clerk and the Debtors'
attorney.

15.    The Debtors may submit a separate retention application, pursuant to section 327
of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Prime
Clerk but is not specifically authorized by this Order.

16.    The Debtors and Prime Clerk are authorized to take all actions necessary to
effectuate the relief granted in this Order in accordance with the Section 156(c) Application
(including, without limitation, making copies of this Order, the Application, and any materials or
other information related thereto, available in any local language in a jurisdiction in which the
Debtors operate, in each case at the Debtors' sole expense and in the Debtors' sole discretion).

17.    Prime Clerk shall not cease providing claims processing services during these
chapter 11 cases for any reason, including nonpayment, without an order of the Court.

18.    In the event of any inconsistency between the Engagement Agreement, the
Section 156(c) Application and this Order, this Order shall govern.

19.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms
and conditions of this Order are immediately effective and enforceable upon its entry.

20.    Notwithstanding any term in the Engagement Agreement to the contrary, the
Court retains jurisdiction with respect to all matters arising from or related to the implementation
of this Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Waisman Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-[    ](RDD)** |
| Debtors. [1] | **(Joint Administration Pending)** |

### DECLARATION OF SHAI Y. WAISMAN IN SUPPORT OF THE DEBTORS' APPLICATION FOR AN ORDER APPOINTING PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS

I, Shai Y. Waisman, under penalty of perjury, declare as follows:

1.      I am the Chief Executive Officer of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose headquarters are located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned debtors' (collectively, the "**Debtors**") *Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent*, which was filed contemporaneously herewith (the "**Section 156(c) Application**").[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

3.    Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide. Prime Clerk's active and former cases include: *Synergy Pharmaceuticals Inc.*, No. 18-14010 (JLG) (Bankr. S.D.N.Y.); *Sears Holdings Corporation*, No. 18-23538 (RDD) (Bankr. S.D.N.Y.); *Aralez Pharmaceuticals US Inc.*, No. 18-12425 (SMB) (Bankr. S.D.N.Y.); *Relativity Media, LLC*, No. 18-11358 (MEW) (Bankr. S.D.N.Y.); *Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y.); *Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y.); *Global Brokerage, Inc.,* No. 17-13532 (MEW) (Bankr. S.D.N.Y.); *Global A&T Electronics Ltd.,* No. 17-23931 (RDD) (Bankr. S.D.N.Y.); *Pacific Drilling S.A.*, No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *Walter Investment Management Corporation,* No. 17-13446 (JLG) (Bankr. S.D.N.Y.); *Ultrapetrol (Bahamas) Limited,* No. 17-22168 (RDD) (Bankr. S.D.N.Y.); *Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y.); *Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del.); *Fairway Energy, LP*, No. 18-12684 (LSS) (Bankr. D. Del.); *Dixie Electric, LLC*, No. 18-12477 (KG) (Bankr. D. Del.); *New MACH Gen GP, LLC*, No. 18-11369 (MFW) (Bankr. D. Del.); *Gibson Brands, Inc.*, No. 18-11028 (CSS) (Bankr. D. Del.); *Bertucci's Holdings, Inc.*, No.18-10894 (MFW) (Bankr. D. Del.); *EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del.); *Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del.); *The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del.); *TK*

*Holdings Inc.,* No. 17-11375 (BLS) (Bankr. D. Del.); *Castex Energy Partners, L.P.,* No. 17-35835 (MI) (Bankr. S.D. Tex.); *Toys "R" Us, Inc.,* No. 17-34665 (KLP) (Bankr. E.D. Va.).

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Prime Clerk will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "**Clerk**"), the services specified in the Section 156(c) Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical and support services as specified in the Section 156(c) Application and the Engagement Agreement.  In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit C** to the Section 156(c) Application.

5.      Prime Clerk represents, among other things, the following:

(a)      Prime Clerk is not a creditor of the Debtors;

(b)      Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)      By accepting employment in these chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)      In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)      Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)      Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)      In its capacity as Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)    Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by Prime Clerk as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

6.    To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

7.    Prime Clerk has reviewed its electronic database to determine whether it has any relationships with the list of entities provided by the Debtors.  Based on the results of such search, at this time, Prime Clerk is not aware of any relationship that would present a disqualifying conflict of interest.  Should Prime Clerk discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to promptly file a supplemental declaration.

8.    Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut,

4

Segal & Segal LLP; Gibson, Dunn & Crutcher LLP; Centerview Partners LLC; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

9.      Prime Clerk is an indirect subsidiary of Duff & Phelps LLP ("**D&P**").  D&P is the global advisor that protects, restores and maximizes value for clients.  Within the D&P corporate structure, Prime Clerk operates independently from D&P. As such, any relationships that D&P and its affiliates maintain do not create an interest of Prime Clerk that is materially adverse to the Debtors' estates or any class of creditors or security holders.

10.      Prime Clerk, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases. Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

11.      Prime Clerk, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors.  Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

12.      Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my

knowledge and belief, neither Prime Clerk nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on September 15, 2019

/s/ Shai Y. Waisman
Shai Y. Waisman
Chief Executive Officer
Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, New York 10165

**<u>Exhibit C</u>**

**Engagement Agreement**



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of March 6, 2019 between Prime Clerk LLC ("**Prime Clerk**"), Purdue Pharma L.P., Purdue Pharma Inc., Avrio Health Inc., Coventry Technologies LP, Rhodes Technologies Inc., Rhodes Pharmaceuticals Inc. (collectively with the subsidiaries of each of the foregoing, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.   **Services**

   (a)   Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").  Prime Clerk and the Company agree that Shai Waisman, Benjamin P.D. Schrag and Christina Pullo are an integral part of the engagement as set forth herein and, accordingly, will be actively involved in the matter.

   (b)   The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents, attorneys, financial advisors, and/or other professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder.  The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c)   The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2.   **Rates, Expenses and Payment**

   (a)   Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**"); provided, however that Prime Clerk will provide a discount of 10% off the attached hourly rates; provided further, however, that hourly rates for call center personnel and live chat services shall be $45-$65 and shall not be subject to the foregoing discount.  The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b)   The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c)   Prime Clerk will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $75,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder.  Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 5% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice

2



to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**5.** <u>**Property Rights**</u>

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

**6.** <u>**Bank Accounts**</u>

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

**7.** <u>**Term and Termination**</u>

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

**8.** <u>**No Representations or Warranties**</u>

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

    (a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b)  Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c)  The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

    (d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

    (a)  The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "<u>SOFAs and Schedules</u>").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b)  The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

    (c)  Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or



acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d)  If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Other than with respect to any dispute arising during the chapter 11 cases as to which the presiding Court has jurisdiction, any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.



16. **Integration; Severability; Modifications; Assignment**

    (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

    (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

    (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

18. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022<br>Attn: Shai Waisman<br>Tel: (212) 257-5450<br>Email: swaisman@primeclerk.com |
| If to the Company: | Purdue Pharma L.P.<br>One Stamford Forum<br>201 Tresser Boulevard<br>Stamford, CT 06901<br>Attn: Marc L. Kesselman<br>Tel: (203) 588-7077<br>Email: marc.kesselman@pharma.com |
| With a copy to: | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017 |



Attn: Timothy Graulich
Tel: (212) 450-4639
Email: timothy.graulich@davispolk.com

*[Signature page follows]*



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: *Benjamin Schray*
Title: *Chief Business Development Officer*

**Purdue Pharma LP**

By:
Title:

**Purdue Pharma Inc.**

By:
Title:

**Avrio Health Inc.**

By:
Title:

**Coventry Technologies LP**

By:
Title:

**Rhodes Technologies Inc.**

By:
Title:

**Rhodes Pharmaceuticals Inc.**

By:
Title:



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: _____
Title:

**Purdue Pharma LP**

By: Jon Lowne
Title: SVP, CFO

**Purdue Pharma Inc.**

By: Jon Lowne
Title: SVP, CFO

**Avrio Health Inc.**

By: Jon Lowne
Title: Director

**Coventry Technologies LP**

By: _____
Title:

**Rhodes Technologies Inc.**

By: _____
Title:

**Rhodes Pharmaceuticals Inc.**

By: _____
Title:



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By:
Title:

**Purdue Pharma LP**

By:
Title:

**Purdue Pharma Inc.**

By:
Title:

**Avrio Health Inc.**

By:
Title:

**Coventry Technologies LP**

By:      James P. Doyle
Title:   Vice Pres. & General Counsel

**Rhodes Technologies Inc.**

By:      James P. Doyle
Title:   Vice Pres. & General Counsel

**Rhodes Pharmaceuticals Inc.**

By:      James P. Doyle
Title:   Vice Pres. & General Counsel