DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-[    ](RDD)** |
| **Debtors.** [1] | **(Joint Administration Pending)** |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING (I) DEBTORS TO CONTINUE TO USE EXISTING CASH
MANAGEMENT SYSTEMS AND MAINTAIN EXISTING BANK ACCOUNTS AND
BUSINESS FORMS AND (II) FINANCIAL INSTITUTIONS TO HONOR AND
PROCESS RELATED CHECKS AND TRANSFERS**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors,**" the "**Company**" or "**Purdue**") hereby move

(this "**Motion**") this Court for entry of interim and final orders, substantially in the forms attached

hereto as **Exhibit A** and **Exhibit B** (the "**Interim Order**" and the "**Final Order,**" respectively),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

granting the relief described below.  In support thereof, the Debtors refer to the contemporaneously filed *Declaration of Jon Lowne in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Lowne Declaration**") and further represent as follows:

### Jurisdiction and Venue

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") has not appointed a statutory committee of creditors in these chapter 11 cases, nor has the Court appointed a trustee or examiner.

3.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

4.      PPLP and its direct and indirect subsidiaries other than the Rhodes Debtors (defined below) (the "**Purdue Debtors**") primarily operate a branded pharmaceuticals business, while

2

19-23649-rdd   Doc 5   Filed 09/16/19   Entered 09/16/19 02:08:23   Main Document
Pg 3 of 44

Debtor Rhodes Associates L.P. and its direct and indirect subsidiaries (the "**Rhodes Debtors**") primarily develop and distribute generic pharmaceutical products and manufacture a range of active pharmaceutical ingredients. As described in further detail below, prior to the commencement of these chapter 11 cases, the Debtors maintained a cash management system to collect, transfer, invest and disburse funds generated by the operations of the Debtors (the "**Cash Management System**").

6.  5.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed contemporaneously herewith.

<u>**Relief Requested**</u>

6.     By this Motion, pursuant to Bankruptcy Code sections 105(a), 345, 363(c)(1) and 364(a), the Debtors request entry of an Interim Order and a Final Order authorizing, but not directing, the Debtors, in their sole discretion, to (a) continue to operate the Cash Management System, (b) fund the operations of PPLP and its subsidiaries, (c) maintain the Debtors' existing bank accounts (as well as authorizing the Debtors to open and close bank accounts) (the Debtors' existing bank accounts together with any accounts opened after the Petition Date, the "**Bank Accounts**") located at various banks and financial institutions (the "**Banks**") and (d) maintain the Debtors' existing Business Forms (as defined below), in each case consistent with the Debtors' prepetition practice. Without the requested relief, the Debtors would be unable to maintain their operations, which would cause grievous harm to the Debtors and their estates.

7.     The Debtors further request that the Interim Order and the Final Order (a) authorize all Banks to receive, process, honor and pay any and all checks, drafts and other forms of payment, including fund transfers, on account of the Cash Management System, whether such checks or

other requests were submitted before, on or after the Petition Date; (b) authorize the Banks to rely on the representations of the Debtors as to which checks and fund transfers are subject to this Motion, *provided* that no Bank shall have any liability to any party for relying on such representations; (c) prohibit the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of the Cash Management System; and (d) authorize the Debtors to issue new post-petition checks or effect new post-petition fund transfers to replace any checks, drafts and other forms of payment which may be dishonored or rejected and to reimburse any expenses that may be incurred as a result of any Bank's failure to honor a prepetition check or other form of payment.

### The Debtors' Cash Management System and Bank Accounts

8.      In the ordinary course of business, the Debtors use the Cash Management System to collect, concentrate and disburse funds generated by the Debtors' operations.  The Cash Management System also enables the Debtors to perform cash reporting, monitor the collection and disbursement of funds and maintain control over intercompany obligations and the administration of the Bank Accounts.[2]  The Cash Management System is not entirely automated: certain activities such as monitoring the system, managing the proper collection and disbursement of funds, depositing checks and transferring monies to and from investment accounts, are performed manually by employees of the Debtors.

9.      The Cash Management System has four main components: (a) cash collection, (b) cash concentration, (c) cash disbursement and (d) investments.  **Exhibit D** hereto is a chart that provides a general overview of the movement of cash through the Debtors' Cash Management System.

---

[2] A list of the Bank Accounts is set forth in **Exhibit C** attached hereto.

4

## A. Cash Collection and Concentration

10.     The Debtors generate and receive funds from sales of their products. Customer payments are made by check, wire or electronic transfer.

11.     The majority of the Debtors' receipts are deposited directly into the Debtors' concentration accounts (the "**Concentration Accounts**") with JPMorgan Chase Bank, N.A. ("**JPMorgan**"). Additionally, the Debtors maintain thirteen (13) working accounts with JPMorgan (the "**Working Accounts**") in which miscellaneous receipts are deposited from time to time. Funds in the Working Accounts are either automatically swept into the Concentration Accounts or manually transferred as needed, depending on whether the Working Account is designated "zero balance" or "non-zero balance." Funds in Working Accounts that are non-zero balance are moved by automatic clearinghouse transfers ("**ACH Transfers**") or by book transfer when needed or as directed. These transfers are performed manually. Funds in Working Accounts that are zero balance are swept each night into the Concentration Accounts.

12.     The Debtors also maintain the restricted cash accounts listed on **Exhibit C**, which either hold security deposits or provide collateral to various counterparties.

13.     The Debtors are currently in the process of migrating their Cash Management System from JPMorgan to East West Bank. East West Bank is one of the 25 largest publicly traded banks in the country, with over $40 billion in assets and over 130 branches. Since 2010, East West Bank has been recognized by *Forbes* as one of the 15 best banks in America. While the Cash Management System currently uses accounts at JPMorgan, the Debtors expect to substitute accounts with East West Bank (which have already been opened) for the JPMorgan accounts in the near future. The Debtors do not expect the migration of accounts from JPMorgan to East West Bank to impact the structure of or flow of funds through the Cash Management System.

14.    As of September 13, 2019, the balance of cash in the Debtors' accounts is approximately $1.36 billion.

15.    Funds received in the form of foreign currencies are sent to currency-specific JPMorgan Nostro accounts, where an analyst confirms and converts at spot rate the foreign currencies into United States dollars.

**B.    Cash Disbursements**

16.    The Debtors use receipts concentrated in the Concentration Accounts to satisfy their financial obligations on account of operating expenses, interest, taxes and regulatory fees, utilities and payments due to other vendors.  Disbursements are paid by wire, check or ACH Transfer or auto-debited out of the Concentration Accounts, the Working Accounts and the Controlled Disbursement Accounts.  In addition, if a Debtor's Working Account is at a deficit or additional funding is otherwise required, the Concentration Accounts will fund the Working Account in an amount appropriate to remove the deficit.   The Debtors fund payroll obligations through disbursements out of the Working Accounts.  The Debtors fund flexible spending accounts and other benefits payments through disbursements out of the Concentration Accounts.

17.    The Debtors process payroll and related taxes through Ceridian Dayforce, a third-party provider of human resources management services.  Once the payroll amounts have been confirmed by the Debtors for a certain period, Ceridian Dayforce debits the appropriate amounts from the Working Accounts one business day before each payroll date.  Ceridian Dayforce then proceeds to make the payments as scheduled out of its own bank account.

18.    The Debtors maintain flexible spending accounts for their employees.  Employee contributions are deducted from their payroll amounts and deposited into the Debtors' flexible spending account from the Debtors' Concentration Account.  Periodically, the Debtors reimburse

WageWorks, a third-party administrator of consumer-directed benefits, for medical and dependent-care expenses incurred by employees. These WageWorks reimbursements are made from the Debtors' Concentration Account (which is reimbursed in turn by the Debtors' employee flexible spending account).

## C.   Investments

19.   Funds to be invested are transferred from the Concentration Accounts to certain accounts (the "**Investment Accounts**") that hold Treasuries or interests in money market funds that primarily invest in Treasuries, or interest-bearing bank accounts.

### The Debtors' Existing Business Forms and Checks

20.   In the ordinary course of business, the Debtors use sequentially numbered check stock with the Debtors' logo printed thereon. In addition, the Debtors maintain pre-printed correspondence and business forms, including, but not limited to, letterhead, envelopes, purchase orders, invoices, sales order acknowledgments and other business forms (collectively, along with the Debtors' checks, the "**Business Forms**"). To minimize administrative expense and delay, the Debtors request authority to continue using their existing Business Forms, substantially in the forms existing immediately before the Petition Date, without reference to the Debtors' status as "Debtors In Possession."

### The Debtors Seek Authorization to Open and Close Bank Accounts

21.   Pursuant to this Motion, the Debtors also seek authorization to implement changes to the Cash Management System in the ordinary course of business, including opening any additional bank accounts, or closing any existing Bank Account as they may deem necessary and appropriate. The Debtors request that the Court authorize the Banks to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts, provided,

however, that, unless otherwise ordered by this Court, any new bank account shall be with (i) a bank insured by the FDIC and that is organized under the laws of the United States or any State therein, (ii) a bank designated as an Authorized Depository under the U.S. Trustee Guidelines or (iii) any other bank, as the Debtors may determine upon consultation with the U.S. Trustee.

22.     The Debtors further request that nothing contained in the order granting the relief requested herein shall prevent Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

## **Relief Requested Should Be Granted**

**A.     Continuing the Centralized Cash Management System Is in the Best Interests of the Debtors, Their Creditors and All Other Parties in Interest**

23.     The Debtors hereby seek authority to continue using their current centralized, integrated Cash Management System.  Given the Debtors' operations, the goal of preserving and enhancing the value of the Debtors' estates simply cannot be accomplished if there is substantial disruption to the Cash Management System, including the intercompany transfers made thereunder.  It is essential that the Debtors be permitted to continue to consolidate the management of their cash and transfer monies from entity to entity as necessary and appropriate to continue the operation of their businesses.  If the Debtors were required to dismantle the Cash Management System, it would wreak havoc in their day-to-day operations and their accounting practices and impair the Debtors' ability to generate timely reports of transactions and balances.

24.     The widespread use of similar cash management systems is attributable to the numerous benefits they provide, including the ability to collect and apply receivables, pay operating expenses and other vendors, tightly control corporate funds, ensure cash availability and reduce administrative expenses by facilitating the expeditious movement of funds and the development of timely and accurate account balance and presentment information.

25.     In addition, it would be very time consuming, difficult and costly for the Debtors to establish an entirely new system of accounts and new cash management system, and doing so would disrupt the Debtors' relationships with their key customers.  The attendant delays from opening new accounts, revising cash management procedures and instructing customers to redirect payments would harm the Debtors' ability to operate their businesses.  Under the circumstances, maintenance of the Cash Management System is essential and in the best interests of the Debtors' estates.

26.     The Debtors will maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases.  As a result, the Debtors will be able to document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest.  As a part thereof, each Debtor will record in its books and records any transfer made by such Debtor to or for the benefit of any other Debtor that occurs on or after the Petition Date (a "**Post-Petition Transfer**").  Any Debtor that makes a Post-Petition Transfer to or for the benefit of another Debtor shall be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code.

27.     Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court.  *Med. Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc.* (*In re Crystal Apparel, Inc.*), 207 B.R. 406, 409 (S.D.N.Y.

1997); *In re Enron Corp.*, 2003 Bankr. LEXIS 2111 (Bankr. S.D.N.Y. Mar. 21, 2003).  Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, disbursement and investment of cash pursuant to their Cash Management System described above.

28.    Bankruptcy Code section 363(b)(1) empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  The debtor's decision to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge deciding a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

29.    The business judgment rule is satisfied "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will

generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self-interest or gross negligence, and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.,* 147 B.R. at 656.

30.     The Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtors' Cash Management System without interruption is vital to the Debtors' survival. The Cash Management System is the mechanism by which the Debtors are able to transfer their revenue toward the payment of their obligations and without which the Debtors' reorganization would fail. It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

31.     As noted, these procedures are similar to those employed by comparable corporate enterprises. Moreover, the relief requested herein to maintain Debtors' existing cash management system is routinely granted in chapter 11 cases by courts in this district. *See, e.g.*, *In re Synergy Pharmaceuticals Inc.,* Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 23, 2019); *Sears Holding Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 26, 2018); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 31, 2017); *In re BCBG Max Azria Glob. Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Ultrapetrol (Bahamas) Ltd.*, Case No. 17-22168 (RDD) (Bankr. S.D.N.Y Mar. 8, 2017).

**B.      The Debtors' Investments Are Compliant with Section 345 of the Bankruptcy Code, or, in the Alternative, Cause Exists to Waive the Requirements of Section 345(b) of the Bankruptcy Code**

32.      Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case, and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) requires the estate to obtain, from the entity with which the money is deposited or invested, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court, for cause, orders otherwise.

33.      The Investment Accounts hold exclusively Treasuries or interests in money market funds that invest primarily in Treasuries.  Accordingly, the Debtors believe that their investments meet the requirements of section 345(b) of the Bankruptcy Code.

34.      In addition, the Working Accounts and Concentration Account are held at JPMorgan and East West Bank, which are already parties to Uniform Depository Agreements.

35.      Nonetheless, in the alternative, to the extent the Investment Accounts do not strictly comply with section 345(b) of the Bankruptcy Code, the Debtors request that they be permitted to maintain their Investment Accounts in accordance with existing practices for cause.  In evaluating whether "cause" exists, courts have considered a number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver or modification of the section 345(b) requirements, the potential harm to the estate,

and the reasonableness of such a waiver or modification under the circumstances.  *See In re Serv. Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

36.    "Cause" exists in these chapter 11 cases.  First, the Investment Accounts are maintained at reputable, financially sound institutions that are subject to supervision by national banking regulators, and the funds in the Investment Accounts are invested solely in highly liquid Treasuries or interests in money market funds that invest primarily in Treasuries, which the Debtors regard as cash equivalents.  As such, the Debtors submit that the Investment Accounts are safe and secure and pose no substantial risk to the Debtors' estates.  Second, the process of strictly satisfying the requirements of section 345(b) would lead to needless inconvenience and inefficiencies in the management of the Debtors' businesses.  Third, a bond secured by the undertaking of an adequate corporate surety would be prohibitively expensive (if such a bond could be obtained at all).

37.    Here, these factors warrant a waiver of the requirements of Bankruptcy Code section 345(b) to the extent the Cash Management System does not already strictly comply with its requirements.

## C.    Maintenance of the Debtors' Existing Bank Accounts and Business Forms Is Warranted

38.    To avoid delays in payments, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in the Debtors' efforts to reorganize, it is critical that the Debtors be permitted to maintain the Bank Accounts with the same account numbers following the commencement of these cases, subject to a prohibition against honoring checks issued or dated before the Petition Date absent a prior order of the Court.

39.    By preserving business continuity and avoiding the disruption and delay to the Debtors' disbursement obligations that would necessarily result from closing the Bank Accounts

13

and opening new accounts, all parties in interest, including employees, vendors and customers, will be best served. The confusion and operational harm that would result absent the relief requested herein would ill serve the Debtors' rehabilitative efforts. Courts in this district have recognized that, in complex chapter 11 cases, strict enforcement of the requirement that a debtor in possession close its bank accounts and open new bank accounts in accordance with the U.S. Trustee's "Operating Guidelines and Financial Reporting Requirements" does not serve the rehabilitative purpose of chapter 11. Accordingly, this Court and others have waived this requirement and replaced it with more effective procedures similar to those requested by this Motion. *See, e.g.*, *In re Aegean Marine Petroleum Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 17, 2018); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 26, 2018); *In re Global A&T Electronics Ltd.*, Case No. 17-23931 (RDD) (Bankr. S.D.N.Y. Dec. 19, 2017); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Mar. 31, 2017); *In re BCBG Max Azria Glob. Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Chassix Holdings, Inc.*, Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 13, 2015); *In re AMR Corp.,* Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Feb. 7, 2012); *In re Mesa Air Group, Inc.*, Case No. 10-10018 (MG) (Bankr. S.D.N.Y. Jan. 5, 2010). Similar authorization is appropriate in these chapter 11 cases.

40. The Debtors also seek an order granting the Banks authority to continue to treat, service and administer the Bank Accounts as accounts of each respective Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process and honor and pay any and all post-petition checks, drafts, book transfers, wires, ACH Transfers, drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtors have good funds standing to their credit with such Bank.

41.     Notwithstanding anything to the contrary in any other order of this Court, the Debtors request that the Banks be authorized to accept and honor all representations from the Debtors as to which checks, drafts, book transfers, wires or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date. Pursuant to the relief requested in this Motion, the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good-faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.

42.     The Debtors also request that, in accordance with past practice and the agreements governing the Bank Accounts, the Banks be authorized to "charge back" to the Debtors' accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and that the Debtors be authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or post-petition or relate to prepetition or post-petition items.

43.     The Debtors further request that any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfers such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

44.     To minimize expenses, the Debtors further request they be authorized to continue to use their Business Forms, substantially in the forms existing immediately before the Petition

Date, without reference to their status as debtors in possession; *provided*, *however*, that as soon as reasonably practicable, the Debtors shall mark "Debtor in Possession" and the chapter 11 case number under which these cases are being jointly administered on any newly printed check stock. As a result of the press releases issued by the Debtors and other press coverage, parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession. In the absence of such relief, the Debtors' estates will be required to bear a potentially significant expense that the Debtors respectfully submit is unwarranted.

45.     If the Debtors are not permitted to maintain and use their Bank Accounts and continue to use their existing Business Forms as set forth herein, the resulting prejudice will include (a) disruption of the ordinary financial affairs and business operations of the Debtors, (b) delay in the administration of the Debtors' estates, (c) compromise of the Debtors' internal controls and accounting system and (d) cost to the estates to set up new systems and open new accounts and print new business forms.

## Debtors Have Satisfied Bankruptcy Rule 6003(b)

46.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of filing a petition. Irreparable harm "is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotations omitted). The "harm must be shown to be actual and imminent, not remote or speculative." *Id.*

47.     If the Debtors are not permitted to continue to use their Cash Management System in its current form, it would cause immediate and irreparable harm by causing operational chaos, disabling the Debtors from paying for goods and services received post-petition or otherwise approved by this Court and disrupting the collection of receivables.  Accordingly, the interim relief requested herein is consistent with Bankruptcy Rule 6003 and the Court should authorize the Debtors' continued use of the Cash Management System.

### Request for Waiver of Stay

48.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the fourteen (14) day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent the notice requirement and stay apply.

### Notice

49.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) each of the Debtors' fifty largest unsecured creditors on a consolidated basis; (c) each of the Debtors' three largest secured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney's Office for the Southern District of New York; (g) the attorneys general for all fifty states and the District of Columbia; (h) the Banks; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  Based on the urgency of the circumstances surrounding this Motion and the

nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## **Reservation of Rights**

50.     Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for or validity or priority of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holders; or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **No Previous Request**

51.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as may be just and proper.

Dated:    September 15, 2019
          New York, New York

DAVIS POLK & WARDWELL LLP

By:    /s/ *Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone:(212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-[    ](RDD) |
| Debtors.[1] | (Joint Administration Pending) |

## INTERIM ORDER AUTHORIZING (I) DEBTORS TO CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEMS AND MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") for entry of an interim order (this "**Order**") and a final order authorizing, but not directing, (i) the Debtors to continue to use their existing cash management system and maintain existing bank accounts and business forms and (ii) financial institutions to honor and process related checks and transfers pursuant to sections 105(a), 345, 363(c)(1) and 364(a) of the Bankruptcy Code and Bankruptcy Rule 6003; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the

Notice Parties, and it appearing that no other or further notice need be provided; and the Court

having reviewed the Motion and held a hearing to consider the relief requested in the Motion on

an interim basis (the "**Hearing**"); and upon the Lowne Declaration, filed contemporaneously with

the Motion, and the record of the Hearing; and the Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and the Court having determined that immediate relief is necessary to avoid irreparable

harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003(b) and is in the

best interests of the Debtors, their estates, creditors and all parties in interest; and upon all of the

proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

### IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized and empowered, pursuant to sections 105(a) and

363(c)(1) of the Bankruptcy Code, to continue to maintain, operate and make transfers under their

Cash Management System as described in the Motion.

3.      In accordance with their prepetition practices, the Debtors shall maintain records of

all transfers within the Cash Management System to the same extent they were recorded by the

Debtors before the commencement of these chapter 11 cases.  As a part thereof, each Debtor shall

record in its books and records any transfer made by such Debtor to or for the benefit of any other

Debtor that occurs on or after the Petition Date (a "**Post-Petition Transfer**").

4.      Any Debtor that makes a Post-Petition Transfer to or for the benefit of another Debtor shall be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code.

5.      Pursuant to section 364(a) of the Bankruptcy Code, the Debtors are authorized, in connection with the ordinary course operation of their Cash Management System, to obtain unsecured credit and incur unsecured debt in the ordinary course of business without any further notice or hearing.

6.      The Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these cases.

7.      The Banks are authorized to continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all post-petition checks, drafts, book transfers, wires or automated clearinghouse transfers ("**ACH Transfers**") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtors have good funds standing to their credit with such Bank.

8.      Notwithstanding anything to the contrary in any other order of this Court, the Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, book transfers, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

9.      The Banks shall not be liable to any party on account of (a) following the Debtors'
instructions or representations as to any order of this Court, (b) the honoring of any prepetition
check or item in a good-faith belief that the Court has authorized such prepetition check or item to
be honored or (c) an innocent mistake made despite implementation of reasonable item-handling
procedures.

10.     In accordance with current practice and the agreement governing the Bank
Accounts, the Banks are authorized to "charge back" to the Debtors' accounts any amounts
incurred by the Banks resulting from returned checks or other returned items, and the Debtors are
authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether
such items were deposited prepetition or post-petition or relate to prepetition or post-petition items.

11.     Any payment from a Bank Account at the request of the Debtors made by a Bank
prior to the Petition Date (including any ACH Transfers such Bank is or becomes obligated to
settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight
deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited
from the Bank Account prepetition.

12.     The Debtors are authorized to implement changes to the Cash Management System
in the ordinary course of business, including opening any additional bank accounts, or closing any
existing Bank Account as they may deem necessary and appropriate; *provided* that the Debtors
shall, as soon as practicable, provide notice to the relevant Bank and the U.S. Trustee of any
opening or closing of any Bank Accounts or other bank accounts.

13.     The Banks are authorized to honor the Debtors' requests to open or close, as the
case may be, such Bank Accounts or additional bank accounts; *provided*, *however*, that, unless
otherwise ordered by this Court, any new bank account shall be with (i) a bank insured by the

4

FDIC and that is organized under the laws of the United States or any State therein, (ii) a bank

designated as an Authorized Depository under the U.S. Trustee Guidelines, or (iii) any other bank,

as the Debtors may determine upon consultation with the U.S. Trustee.

14.     Nothing contained herein shall prevent Banks from modifying or terminating any

Bank Accounts or related services in accordance with the agreements governing such accounts or

services.

15.     Notwithstanding anything to the contrary herein, the Debtors are authorized to

migrate the Cash Management System from JPMorgan to East West Bank (or such other bank as

the Debtors deem appropriate in compliance with the terms of this Order and in consultation with

the U.S. Trustee) and to take any actions that are necessary or desirable to effectuate such

migration.

16.     The Debtors are authorized to continue to use their correspondence and business

forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials,

checks and other business forms (collectively, the "**Business Forms**") substantially in the forms

existing immediately before the Petition Date, without reference to their status as debtors in

possession; *provided*, *however*, that as soon as reasonably practicable, the Debtors shall mark

"Debtors in Possession" and the chapter 11 case number under which these cases are being jointly

administered on any newly printed check stock.

17.     The Final Hearing shall be held on _____, 2019, at _____ (Prevailing Eastern

Time).  Any objections or responses to the entry of the Final Order shall be: (a) filed with the Court

and (b) served upon and actually received by (i) the Office of the United States Trustee, U.S.

Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Paul K.

Schwartzberg), (ii) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington

5

Avenue, New York, NY 10017 (Attn: Marshall S. Huebner, Benjamin S. Kaminetzky, Timothy

Graulich and Eli J. Vonnegut) and (iii) counsel to any official committee then appointed in these

chapter 11 cases,  so as to be received by 4:00 p.m. (Prevailing Eastern Time) seven (7) days before

the Final Hearing.  A reply to an objection may be filed with the Court and served on or before

12:00 p.m. (prevailing Eastern Time) on the day that is at least two (2) business days before the

date of the applicable hearing. If no objections or responses are filed and served, this Court may

enter the Final Order without further notice or hearing.

18.     If no objections are timely filed and served as set forth herein, the Debtors shall, on

or after the Objection Deadline, submit to the Court a final order substantially in the form of this

Order, which order shall be submitted and may be entered with no further notice or opportunity to

be heard afforded any party, and the Motion shall be approved *nunc pro tunc* to the date of the

commencement of these chapter 11 cases.

19.     To the extent the Debtors' Investment Accounts are not compliant with Bankruptcy

Code section 345, the requirements of Bankruptcy Code section 345(b) are hereby waived on an

interim basis.

20.     The contents of the Motion and the notice procedures set forth therein are good and

sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern

District of New York, and no other or further notice of the Motion or the entry of this Order shall

be required.

21.     Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h),

the terms and conditions of this Order shall be immediately effective and enforceable upon its

entry.

22.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the relief granted in this Order.

23.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-[    ](RDD) |
| Debtors. [1] | (Joint Administration Pending) |

**FINAL ORDER AUTHORIZING (I) DEBTORS TO CONTINUE TO USE
EXISTING CASH MANAGEMENT SYSTEMS AND MAINTAIN
EXISTING BANK ACCOUNTS AND
BUSINESS FORMS AND (II) FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors

and debtors in possession in these proceedings (collectively, the "**Debtors**") for entry of an interim

order and a final order (this "**Order**") authorizing, but not directing, (i) the Debtors to continue to

use their existing cash management system and maintain existing bank accounts and business

forms and (ii) financial institutions to honor and process related checks and transfers pursuant to

sections 105(a), 345, 363(c)(1) and 364(a) of the Bankruptcy Code and Bankruptcy Rule 6003;

and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant

to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January

31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and upon the Lowne Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that immediate relief is necessary to avoid irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003(b) and is in the best interests of the Debtors, their estates, creditors and all parties in interest; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized and empowered, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to continue to maintain, operate and make transfers under their Cash Management System as described in the Motion.

3.      In accordance with their prepetition practices, the Debtors shall maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases.  As a part thereof, each Debtor shall record in its books and records any transfer made by such Debtor to or for the benefit of any other Debtor that occurs on or after the Petition Date (a "**Post-Petition Transfer**").

4.      Any Debtor that makes a Post-Petition Transfer to or for the benefit of another Debtor shall be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code.

5.      Pursuant to section 364(a) of the Bankruptcy Code, the Debtors are authorized, in connection with the ordinary course operation of their Cash Management System, to obtain unsecured credit and incur unsecured debt in the ordinary course of business without any further notice or hearing.

6.      The Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these cases.

7.      The Banks are authorized to continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all post-petition checks, drafts, book transfers, wires or automated clearinghouse transfers ("**ACH Transfers**") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtors have good funds standing to their credit with such Bank.

8.      Notwithstanding anything to the contrary in any other order of this Court, the Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, book transfers, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

9.      The Banks shall not be liable to any party on account of (a) following the Debtors'
instructions or representations as to any order of this Court, (b) the honoring of any prepetition
check or item in a good-faith belief that the Court has authorized such prepetition check or item to
be honored or (c) an innocent mistake made despite implementation of reasonable item-handling
procedures.

10.     In accordance with current practice and the agreement governing the Bank
Accounts, the Banks are authorized to "charge back" to the Debtors' accounts any amounts
incurred by the Banks resulting from returned checks or other returned items, and the Debtors are
authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether
such items were deposited prepetition or post-petition or relate to prepetition or post-petition items.

11.     Any payment from a Bank Account at the request of the Debtors made by a Bank
prior to the Petition Date (including any ACH Transfers such Bank is or becomes obligated to
settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight
deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited
from the Bank Account prepetition.

12.     The Debtors are authorized to implement changes to the Cash Management System
in the ordinary course of business, including opening any additional bank accounts, or closing any
existing Bank Account as they may deem necessary and appropriate; *provided* that the Debtors
shall, as soon as practicable, provide notice to the relevant Bank and the U.S. Trustee of any
opening or closing of any Bank Accounts or other bank accounts.

13.     The Banks are authorized to honor the Debtors' requests to open or close, as the
case may be, such Bank Accounts or additional bank accounts; *provided*, *however*, that, unless
otherwise ordered by this Court, any new bank account shall be with (i) a bank insured by the

FDIC and that is organized under the laws of the United States or any State therein, (ii) a bank

designated as an Authorized Depository under the U.S. Trustee Guidelines, or (iii) any other bank,

as the Debtors may determine upon consultation with the U.S. Trustee.

14.     Nothing contained herein shall prevent Banks from modifying or terminating any

Bank Accounts or related services in accordance with the agreements governing such accounts or

services.

15.     Notwithstanding anything to the contrary herein, the Debtors are authorized to

migrate the Cash Management System from JPMorgan to East West Bank (or such other bank as

the Debtors deem appropriate in compliance with the terms of this Order and in consultation with

the U.S. Trustee) and to take any actions that are necessary or desirable to effectuate such

migration.

16.     The Debtors are authorized to continue to use their correspondence and business

forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials,

checks and other business forms (collectively, the "**Business Forms**") substantially in the forms

existing immediately before the Petition Date, without reference to their status as debtors in

possession; *provided*, *however*, that as soon as reasonably practicable, the Debtors shall mark

"Debtors in Possession" and the chapter 11 case number under which these cases are being jointly

administered on any newly printed check stock.

17.     To the extent the Debtors' Investment Accounts are not compliant with Bankruptcy

Code section 345, the requirements of Bankruptcy Code section 345(b) are hereby waived on a

final basis.

18.     The contents of the Motion and the notice procedures set forth therein are good and

sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern

District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

19.    Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the relief granted in this Order.

21.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit C**

**Bank Accounts**

**Debtors' Bank Accounts**

| COMPANY | FINANCIAL INSTITUTION | ACCOUNT NUMBER | ACCOUNT DESCRIPTION |
|---|---|---|---|
| Purdue Pharma L.P. | JPMorgan Chase | xxxxxx2890 | Purdue Concentration Account |
| Purdue Pharma of Puerto Rico | JPMorgan Chase | xxxxxx5485 | Working Account |
| Avrio Health L.P. | JPMorgan Chase | xxxxxx9278 | Working Account |
| Nayatt Cove Lifescience Inc. | JPMorgan Chase | xxxxxx8162 | Working Account |
| Purdue Neuroscience Company | JPMorgan Chase | xxxxxx6535 | Working Account |
| Greenfield BioVentures L.P. | JPMorgan Chase | xxxxxx1118 | Working Account |
| Imbrium Therapeutics L.P. | JPMorgan Chase | xxxxxx1191 | Working Account |
| Adlon Therapeutics L.P. | JPMorgan Chase | xxxxxx5999 | Working Account |
| Purdue Pharma Inc. | JPMorgan Chase | xxxxxx2866 | Working Account |
| Purdue Pharma L.P. | JPMorgan Chase | xxxxxx5837 | Landlord Account |
| Purdue Pharma L.P. | JPMorgan Chase | xxxxxx8921 | Employee Flexible Spending Account |
| Purdue Pharma L.P. | JPMorgan Chase | xxxxxx8509 | Controlled Disbursement Account |
| Purdue Pharma L.P. | JPMorgan Chase | xxxxxx7720 | Investment Account |
| Purdue Pharma L.P. | Goldman Sachs | xxxxxx0462 | Investment Account |
| Purdue Pharma L.P. | Goldman Sachs | xxxxxx8266 | Investment Account |
| Purdue Pharma L.P. | UBS | xxxxx1003 | Investment Account |
| Aircastle Advisor LLC | JPMorgan Chase | xxxxxx6084 | Restricted Cash Account |

| COMPANY | FINANCIAL INSTITUTION | ACCOUNT NUMBER | ACCOUNT DESCRIPTION |
|---|---|---|---|
| Purdue Pharma L.P. | East West Bank | xxxxxx9129 | Purdue Concentration Account |
| Purdue Pharma of Puerto Rico | East West Bank | xxxxxx9185 | Working Account |
| Avrio Health L.P. | East West Bank | xxxxxx9199 | Working Account |
| Nayatt Cove Lifescience Inc. | East West Bank | xxxxxx9220 | Working Account |
| Purdue Neuroscience Company | East West Bank | xxxxxx9227 | Working Account |
| Greenfield BioVentures L.P. | East West Bank | xxxxxx9234 | Working Account |
| Imbrium Therapeutics L.P. | East West Bank | xxxxxx9241 | Working Account |
| Adlon Therapeutics L.P. | East West Bank | xxxxxx9248 | Working Account |
| Purdue Pharma Inc. | East West Bank | xxxxxx9213 | Working Account |
| Purdue Pharma L.P. | East West Bank | xxxxxx9136 | Investment Account |
| Purdue Pharma L.P. | East West Bank | xxxxxx9773 | Restricted Cash Account |
| Purdue Pharma L.P. | East West Bank | xxxxxx9388 | Employee Flexible Spending Account |
| Purdue Pharma L.P. | East West Bank | xxxxxx9549 | Adequate Assurance Deposit Account |
| Purdue Pharma L.P. | Metropolitan Commercial Bank | xxxxxx4813 | Investment Account |
| Purdue Pharma L.P. | Metropolitan Commercial Bank | xxxxxx6077 | Restricted Cash Account |
| Purdue Pharma L.P. | Metropolitan Commercial Bank | xxxxxx4767 | Restricted Cash Account |

| COMPANY | FINANCIAL INSTITUTION | ACCOUNT NUMBER | ACCOUNT DESCRIPTION |
|---|---|---|---|
| Rhodes Technologies | JPMorgan Chase | xxxxxx6362 | Concentration Account |
| Rhodes Pharmaceutical L.P. | JPMorgan Chase | xxxxxx6220 | Concentration Account |
| Paul Land Inc. | JPMorgan Chase | xxxxxx1859 | Working Account |
| Button Land L.P. | JPMorgan Chase | xxxxxx1875 | Working Account |
| Quidnick Land L.P. | JPMorgan Chase | xxxxxx1891 | Working Account |
| SVC Pharma L.P. | JPMorgan Chase | xxxxxx9855 | Working Account |
| SVC Pharma Inc. | JPMorgan Chase | xxxxxx9863 | Working Account |
| Rhodes Technologies | JPMorgan Chase | xxxxxx2509 | Controlled Disbursement Account |
| Rhodes Technologies | JPMorgan Chase | xxxxxx3153 | Investment Account |
| Rhodes Pharmaceutical L.P. | JPMorgan Chase | xxxxxx3154 | Investment Account |

| COMPANY | FINANCIAL INSTITUTION | ACCOUNT NUMBER | ACCOUNT DESCRIPTION |
|---|---|---|---|
| Rhodes Technologies | East West Bank | xxxxxx9262 | Concentration Account |
| Rhodes Pharmaceutical L.P. | East West Bank | xxxxxx9269 | Concentration Account Lockbox/EDI |
| Paul Land Inc. | East West Bank | xxxxxx9290 | Working Account |
| Button Land L.P. | East West Bank | xxxxxx9297 | Working Account |
| Quidnick Land L.P. | East West Bank | xxxxxx9304 | Working Account |
| SVC Pharma L.P. | East West Bank | xxxxxx9276 | Working Account |
| SVC Pharma Inc. | East West Bank | xxxxxx9283 | Working Account |

## **Exhibit D**

**Cash Management System**

**Debtors Cash Management Diagram**



**PURDUE PHARMA LP -** Overview of Cash Management System [1]

**Notes:**

(1) The Debtors are currently in the process of migrating their Cash Management System from JPMorgan to East West Bank. While the Debtors' Cash Management System currently uses accounts at JPMorgan, the Debtors expect to substitute accounts with East West Bank (which have already been opened) for the JPMorgan accounts in the near future. The Debtors do not expect the migration of accounts from JPMorgan to East West Bank to impact the structure of or flow of funds through the Debtors' Cash Management System.

(2) Any working account with excess cash is either manually transferred or swept into the concentration account. If any working account is at a deficit, the concentration account will fund an appropriate amount to cover the deficit.

(3) This restricted cash account was originally opened to hold a tenant security deposits for a sub-lease agreements for One Stamford Forum. This account is in the process of being closed.



**PURDUE PHARMA LP -** Overview of Cash Management System [1]

**Notes:**

(1) The Debtors are currently in the process of migrating their Cash Management System from JPMorgan to East West Bank. While the Debtors' Cash Management System currently uses accounts at JPMorgan, the Debtors expect to substitute accounts with East West Bank (which have already been opened) for the JPMorgan accounts in the near future. The Debtors do not expect the migration of accounts from JPMorgan to East West Bank to impact the structure of or flow of funds through the Debtors' Cash Management System.

(2) Any working account with excess cash are swept into the concentration account. If any working account is at a deficit, the concentration account will fund an appropriate amount to cover the deficit.

2



**PURDUE PHARMA LP -** Overview of Cash Management System [1]

**Notes:**

(1) The Debtors are currently in the process of migrating their Cash Management System from JPMorgan to East West Bank.  While the Debtors' Cash Management System currently uses accounts at JPMorgan, the Debtors expect to substitute accounts with East West Bank (which have already been opened) for the JPMorgan accounts in the near future.  The Debtors do not expect the migration of accounts from JPMorgan to East West Bank to impact the structure of or flow of funds through the Debtors' Cash Management System.

(2) For investment purposes any working account with excess cash is swept into the concentration account from which the funds can be invested. If any working account is at a deficit, the concentration account will fund an appropriate amount to cover the deficit.

**PURDUE PHARMA LP -** Overview of Cash Management System [1]



**Notes:**

(1) The Debtors are currently in the process of migrating their Cash Management System from JPMorgan to East West Bank. While the Debtors' Cash Management System currently uses accounts at JPMorgan, the Debtors expect to substitute accounts with East West Bank (which have already been opened) for the JPMorgan accounts in the near future. The Debtors do not expect the migration of accounts from JPMorgan to East West Bank to impact the structure of or flow of funds through the Debtors' Cash Management System.

(2) Any working accounts with excess cash are swept into the concentration account. If any working account is at a deficit, the concentration account will fund an appropriate amount to cover the deficit.