DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-[    ](RDD)** |
| **Debtors.** [1] | **(Joint Administration Pending)** |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING (I) THE DEBTORS TO CONTINUE AND RENEW THEIR
LIABILITY, PROPERTY, CASUALTY AND OTHER INSURANCE POLICIES AND
HONOR ALL OBLIGATIONS IN RESPECT THEREOF AND (II) FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") hereby move

(this "**Motion**") this Court for entry of interim and final orders, substantially in the forms attached

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

hereto as **Exhibit A** and **Exhibit B** (the "**Interim Order**" and the "**Final Order**," respectively), granting the relief described below.  In support thereof, the Debtors refer to the contemporaneously filed *Declaration of Jon Lowne in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Lowne Declaration**") and further represent as follows:

## Jurisdiction and Venue

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") has not appointed a statutory committee of creditors in these chapter 11 cases, nor has the Court appointed a trustee or examiner therein.

3.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases Bankruptcy Rule 1015(b).

4.      PPLP and its direct and indirect subsidiaries other than the Rhodes Debtors (defined below) (the "**Purdue Debtors**") primarily operate a branded pharmaceuticals business, while Debtor Rhodes Associates L.P. and its direct and indirect subsidiaries (the "**Rhodes Debtors**") primarily develop and distribute generic pharmaceutical products and manufacture a range of active pharmaceutical ingredients.

5.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed contemporaneously herewith.

## **Relief Requested**

6.      By this Motion, and pursuant to Bankruptcy Code sections 105(a), 361, 363, 1107, 1108 and 1112, Bankruptcy Rules 6003 and 6004 and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors seek entry of the Interim Order and Final Order, substantially in the forms attached hereto, authorizing (a) the Debtors to maintain, continue, renew or purchase, in their sole discretion, Insurance Policies (defined below) on an uninterrupted basis and in accordance with the practices and procedures in effect before the Petition Date and (b) financial institutions to receive, process, honor and pay checks or wire transfers used by the Debtors to pay the foregoing.  This would include (a) paying all amounts arising under the Insurance Policies including, but not limited to, any Broker's Fees (defined below), whether due and payable before, on or after the Petition Date and (b) renewing or obtaining new insurance policies as needed in the ordinary course of business (including creating, capitalizing, and obtaining insurance from a captive insurance company or a segregated account within a licensed insurer as described herein).

### A.    The Debtors' Insurance Policies

7.    The Debtors require various liability, casualty, property and other insurance programs in the ordinary course of their businesses (the "**Insurance Policies**"), which they maintain through several private insurance carriers, and a segregated account within a Bermuda licensed insurer (collectively, the "**Insurance Carriers**").  A summary of the Debtors' principal Insurance Policies is set forth on **Exhibit C** attached hereto.[2]

8.    The Insurance Policies include coverage for, among other things, umbrella liability, workers' compensation, property damage, products liability, operation of automobiles, crime, business interruption, officers' or directors' liability, employment practice liability, fiduciary liability, transport/cargo and various other property-related and general liabilities.  All of the Insurance Policies are essential to the ongoing operation of the Debtors' businesses.

### B.    The Premium Payments

9.    The Insurance Policies renew on various dates throughout the year.  The premiums for most of the Insurance Policies (collectively, the "**Insurance Premiums**") are determined annually and are due either in their entirety at policy inception or up to thirty (30) days after policy inception.  The Debtors make such payments directly to the Insurance Carriers or indirectly to the Insurance Carriers through Marsh USA Inc. and its affiliates (the "**Broker**").

10.    The Debtors employ the Broker to assist them with the procurement and management of the Insurance Policies.  The Broker receives compensation from the Debtors for various services in the form of a commission included in the Insurance Premiums paid by the Debtors or a fee for non-commission insurance policies, as well as fees for claim noticing services

---

[2] **Exhibit C** is intended to be a comprehensive schedule of the principal Insurance Policies.  The Debtors, however, request relief applicable to all Insurance Policies, regardless of whether such Insurance Policy is specifically identified on **Exhibit C**.

(the "**Broker's Fees**").  The employment of the Broker allows the Debtors to obtain and manage the Insurance Policies in an efficient manner and to realize considerable savings in the procurement of such policies.  Accordingly, the Debtors believe that it is in the best interests of the creditors and estates to continue their business relationship with the Broker.

11.     The Debtors' aggregate annual Insurance Premiums under the Insurance Policies total approximately $3,200,000, consisting of $2,970,000 with respect to the Purdue Debtors and $230,000 with respect to the Rhodes Debtors.  The Debtors believe that all material Insurance Premiums or amounts due under the Insurance Policies that were due and payable on or prior to the Petition Date have been fully paid but, out of an abundance of caution, the Debtors seek authority to satisfy any such prepetition obligations.

12.     Pursuant to the Insurance Policies, the Debtors may be required to pay various deductibles or self-insurance retention amounts (collectively, the "**Insurance Deductibles**"), depending upon the type of claim and insurance policy involved.  As of the Petition Date, the Debtors do not believe there are any material prepetition obligations relating to Insurance Deductibles but, out of an abundance of caution, the Debtors seek authority to satisfy any such prepetition obligations.

13.     The Debtors believe that certain prepetition amounts under the Insurance Policies remain outstanding.  By this Motion, the Debtors request the authorization, but not the direction, to pay such amounts.

**C.     Collateral**

14.     With respect to certain of its Insurance Policies, the Debtors have posted collateral in favor of and as required by relevant Insurance Carriers to secure the Debtors' deductibles or any claims paid with respect to such Insurance Policies.  The Debtors have also posted collateral in

connection with and as required by fronting and captive arrangements related to certain of its Insurance Policies, as well as in connection with certain ongoing insurance obligations. The Debtors may also need to post letter of credit collateral in connection with upcoming insurance policy renewals and extensions. The Purdue Debtors have posted $87,349,641 in collateral in the aggregate in various trust accounts at Wells Fargo Bank, N.A. to secure their obligations.

**D.      Product and General Liability Insurance Captive**

15.      The Debtors are required to maintain $10 million in product liability insurance and up to $27 million in general liability insurance under contracts with numerous third party suppliers, wholesalers, distributors, group purchasing organizations and other contract counterparties. A commercial solution to the Debtors' product and general liability coverage requirements has been challenging to obtain with a third party insurer. The Debtors are therefore in the process of evaluating captive options to insure the Debtors' product and general liability risks, including (i) creating a captive insurance company that will be a wholly owned, non-debtor subsidiary of PPLP or (ii) in the alternative, creating a segregated account within a licensed insurer (any such insurance vehicle, the "**Product and General Liability Captive**").

16.      By this Motion, the Debtors request the authorization, but not the direction, to secure the required product and general liability insurance, including by creating and capitalizing the Product and General Liability Captive.

## Basis for Relief

**A.      The Bankruptcy Code Authorizes the Debtors to Maintain the Insurance Policies**

17.      The nature of the Debtors' businesses makes it essential for the Debtors to maintain their Insurance Policies on an ongoing and uninterrupted basis. The nonpayment or delayed payment of any premiums, deductibles or related fees under the Insurance Policies could result in one or more of the Insurance Carriers terminating or declining to renew their insurance policies or

refusing to enter into new insurance policies with the Debtors in the future. If any of the Insurance Policies lapse without renewal, the Debtors could be in violation of state and/or federal law, resulting in a loss of licenses and therefore loss of the ability to operate their business, which would result in immediate and irreparable harm to the Debtors and their estates. Allowing the Insurance Policies to lapse without renewal could also result in exposure to substantial liability for personal, contractual and/or property damages, to the detriment of all parties-in-interest.

18.     As a prerequisite for operations, certain governmental agencies also require the Debtors to maintain certain Insurance Policies. Moreover, pursuant to contractual obligations with numerous third party suppliers, distributors and contractors, the Debtors are obligated to demonstrate certain levels of insurance coverage and to remain current with respect to certain of their Insurance Policies. The Debtors must also maintain the Insurance Policies to comply with the U.S. Trustee Guidelines. Thus, in order for the Debtors to maintain their operations in compliance with various legal and contractual obligations, the Debtors must be able to continue their Insurance Policies without disruption.

19.     If the Debtors are unable to make any outstanding payments that may be owed on account of the Insurance Policies, the unpaid Insurance Carriers may seek relief from the automatic stay to terminate such Insurance Policies. The Debtors would be required to obtain replacement insurance on an expedited basis and at a significant cost to the estates. If the Debtors were required to obtain replacement insurance, this payment likely would be greater than what the Debtors currently pay. Even if these Insurance Carriers were not permitted to terminate the agreements, any interruption of payment would have an adverse effect on the Debtors' ability to obtain future policies at reasonable rates.

i.    *The Insurance Policies Can be Maintained Under Bankruptcy Code Section 363(c)(1)*

20.    Although the Debtors do not believe that Court approval is required to maintain their existing Insurance Policies following the Petition Date, the Debtors seek this relief out of an abundance of caution.  The Insurance Carriers and Broker may be reluctant to engage in ordinary course transactions with the Debtors absent an order eliminating any uncertainty as to whether the Debtors have the requisite authority to engage in such transactions.

21.    Bankruptcy Code section 363(c) authorizes a debtor in possession operating its business pursuant to Bankruptcy Code section 1108 to "enter into transactions. . . in the ordinary course of business, without notice or a hearing, and use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).

22.    One purpose of Bankruptcy Code section 363 is to provide a debtor with the flexibility to engage in the ordinary course transactions required to operate its business without oversight by its creditors or the court.  *See*, *e.g.*, *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998); *In re Leslie Fay Companies, Inc.*, 168 B.R. 294, 301 (Bankr. S.D.N.Y. 1994).

23.    In addition, Bankruptcy Code section 363(b)(1) empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See*, *e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y.

2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

24.     The business judgment rule is satisfied "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this district have consistently and appropriately been reluctant to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.,* 147 B.R. at 656.

25.     The Debtors submit that the relief requested in this Motion represents a sound exercise of the Debtors' business judgment. To the extent the maintenance, continuance and renewal of the Insurance Policies and any and all payments related thereto (including any payments made to the Broker) are outside the ordinary course of business, they are justified under Bankruptcy Code section 363(b). Even where coverage is not expressly required by applicable law, the Debtors are nevertheless compelled by sound business practice to maintain essential insurance coverage. Any interruption in such coverage would expose the Debtors to a variety of risks, including the possible (a) incurrence of direct liability for the payment of claims that

otherwise would have been covered by the Insurance Policies, (b) incurrence of material costs and other losses that otherwise would have been reimbursed, such as attorneys' fees for certain covered claims, (c) inability to obtain similar types and levels of insurance coverage, (d) incurrence of higher costs for reestablishing lapsed policies or obtaining new insurance coverage and (e) incurrence of direct liability for failing to maintain required insurance coverage.

26.    Courts in this district have routinely granted similar relief.    *See*, *e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2019); *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 23, 2019); *In re Cumulus Media Inc.*, Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017); *In re 21st Century Oncology Holdings, Inc.*, Case No 17-22770 (RDD) (Bankr. S.D.N.Y. June 20, 2017); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2017); *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Apr. 26, 2016).

**ii.    *The Doctrine of Necessity and Bankruptcy Code Section 105 Support Payment of Amounts Necessary to Maintain Insurance***

27.    Similarly, although the Debtors do not believe they have any material outstanding prepetition obligations or payment defaults with respect to their insurance obligations, including the Insurance Deductibles, the Debtors are seeking authority to pay any such amounts to ensure continuing insurance coverage during these bankruptcy cases.

28.    Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Under section 105, "the court can permit pre-plan payment of a pre-petition obligation when essential to

the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

29.     In a long line of well-established cases, federal courts have consistently permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See*, *e.g.*, *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 312 (1882) (permitting payment of pre-receivership claim prior to reorganization to prevent "stoppage of [crucial] business relations"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits).

30.     This doctrine of "necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Bos. & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing existence of judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to debtors' continued operation).  The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

31.     The Debtors' ability to maintain and honor their Insurance Policies in a timely manner is critical to the ongoing operation of their businesses, as discussed above, and therefore necessary to maximize the value of the Debtors' estates.  The Debtors believe that any prepetition amounts that they will pay in respect of Insurance Policies would be small relative to the size of the Debtors' estates and the critical benefits provided by the Insurance Policies.  As noted above, interruption of the Debtors' insurance coverage could, among other things, cause the Debtors to violate state and/or federal law and expose the Debtors to direct liability for significant claims that

otherwise would be covered by insurance, thus potentially substantially diminishing the value of the Debtors' estates. For the Debtors to pay what would be relatively small prepetition amounts under the Insurance Policies to avoid such an occurrence is in the best interests of the Debtors, their estates and all of the Debtors' stakeholders and other parties-in-interest. Thus, payments of amounts to ensure continuation of the Insurance Policies, including the payment of prepetition and post-petition Insurance Premiums, Broker Fees and other amounts necessary to maintain the Debtors' Insurance Policies, falls within the sound business judgment of the Debtors and will benefit, rather than prejudice, the Debtors' creditors by preserving the property of the Debtors' estates. The Debtors submit that the relief requested herein is appropriate under the doctrine of necessity and Bankruptcy Code section 105(a).

### iii.     *Payment of Amounts Necessary to Maintain Insurance is Required by the Bankruptcy Code and the United States Trustee*

32.     The Debtors believe that the Insurance Policies are essential to the operation of their business during these chapter 11 cases.

33.     Under the terms of the Insurance Policies, the Insurance Carriers may cancel the underlying Insurance Policies for the Debtors' nonpayment. Such cancellation will harm the Debtors not only because some of the Insurance Policies are required by various regulations, laws and contracts that govern the Debtors' commercial activities, but Bankruptcy Code section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, the Operating Guidelines and Reporting Requirements for Debtors In Possession and Trustees, issued by the Office of the United States Trustee for Region 2 (the "**U.S. Trustee Guidelines**") require the Debtors to maintain insurance coverage throughout the pendency of the chapter 11 cases.

12

**B.      Applicable Financial Institutions Should Be Authorized to Honor and Process Insurance Related Checks and Transfers**

34.      The Debtors also request that all applicable banks and other financial institutions be authorized to (a) receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date and (b) rely on the Debtors' designation of any particular check as approved by order of the Court.

### Debtors Have Satisfied Bankruptcy Rule 6003(b)

35.      Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of filing a petition.  Irreparable harm "is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation."  *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotations omitted).  The "harm must be shown to be actual and imminent, not remote or speculative."  *Id.*

36.      As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations and going-concern value.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and that Bankruptcy Rule 6003(b) is satisfied.

### Request for Waiver of Stay

37.      To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the fourteen (14)

day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors, particularly as the Debtors have several critical insurance programs with upcoming renewal dates. Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent the notice requirement and stay apply.

**Notice**

38.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) each of the Debtors' fifty largest unsecured creditors on a consolidated basis; (c) each of the Debtors' three largest secured creditors on a consolidated basis; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney's Office for the Southern District of New York; (g) the attorneys general for all fifty states and the District of Columbia; (h) any party that has requested notice pursuant to Bankruptcy Rule 2002; (i) the Broker; and (j) the Insurance Carriers set forth on **Exhibit C** herein (collectively, the "**Notice Parties**"). In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

**Reservation of Rights**

39.     Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holders; or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought

herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **No Previous Request**

40.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed forms of order, substantially in the forms attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:    September 15, 2019
          New York, New York

DAVIS POLK & WARDWELL LLP

By:    /s/ *Eli J. Vonnegut*                    

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

<u>**Exhibit A**</u>

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-[     ](RDD) |
| Debtors. [1] | **(Joint Administration Pending)** |

## INTERIM ORDER AUTHORIZING (I) THE DEBTORS TO CONTINUE AND RENEW THEIR LIABILITY, PROPERTY, CASUALTY AND OTHER INSURANCE POLICIES AND HONOR ALL OBLIGATIONS IN RESPECT THEREOF AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") for entry of an interim order (this "**Order**") and a final order authorizing, but not directing, the Debtors to (i) continue and renew their liability, property, casualty and other insurance policies and honor all obligations in respect thereof and (ii) financial institutions to honor and process related checks and transfers, all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the Lowne Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that immediate relief is necessary to avoid irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003(b) and is in the best interests of the Debtors, their estates, creditors and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are, in their sole discretion, authorized to continue their Insurance Policies, including the Insurance Policies listed on **Exhibit C** attached to the Motion, without interruption and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized to pay prepetition obligations, if any, that may be owed in connection with the Insurance Policies (including Broker's Fees and Insurance Deductibles) during the interim period, whether due and payable before, on or after the Petition Date to the extent any such obligations are owed.

4.      The Debtors are, in their sole discretion, authorized to renew or obtain new insurance policies or execute other agreements in connection with their Insurance Policies, including, without limitation, upon the expiration or termination of any Insurance Policy.

5.      The Debtors are, in their sole discretion, authorized to create, capitalize and obtain insurance from the Product and General Liability Captive as set forth in the Motion.

6.      All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

7.      Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.  To the extent any Insurance Policy or related agreement is deemed an executory contract within the meaning of Bankruptcy Code section 365, neither this Order nor any payments made in accordance with this Order shall constitute the post-petition assumption or reaffirmation of those Insurance Policies or related agreements under Bankruptcy Code section 365.

8.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the

status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

9.      Nothing in this Order shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Policies.

10.     Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

11.     The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

12.     The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

13.     The Final Hearing shall be held on _____, 2019, at _____ (Prevailing Eastern Time).  Any objections or responses to the entry of the Final Order shall be: (a) filed with the Court and (b) served upon and actually received by (i) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Paul K. Schwartzberg), (ii) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Marshall S. Huebner, Benjamin S. Kaminetzky, Timothy Graulich and Eli J. Vonnegut) and (iii) counsel to any official committee then appointed in these

chapter 11 cases, so as to be received by 4:00 p.m. (Prevailing Eastern Time) seven (7) days before the Final Hearing. A reply to an objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two (2) business days before the date of the applicable hearing. If no objections or responses are filed and served, this Court may enter the Final Order without further notice or hearing.

14.    If no objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form of this Order, which order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved *nunc pro tunc* to the date of the commencement of these chapter 11 cases.

15.    Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

17.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-[    ](RDD) |
| Debtors. [1] | (Joint Administration Pending) |

**FINAL ORDER AUTHORIZING (I) THE DEBTORS TO CONTINUE AND RENEW**
**THEIR LIABILITY, PROPERTY, CASUALTY AND OTHER INSURANCE POLICIES**
**AND HONOR ALL OBLIGATIONS IN RESPECT THEREOF AND (II) FINANCIAL**
**INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors

and debtors in possession in these proceedings (collectively, the "**Debtors**") for entry of an interim

order and a final order (this "**Order**") authorizing, but not directing, the Debtors to (i) continue

and renew their liability, property, casualty and other insurance policies and honor all obligations

in respect thereof and (ii) financial institutions to honor and process related checks and transfers,

all as set forth more fully in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing

Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion

and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and upon the Lowne Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that the relief granted herein is in the best interests of the Debtors, their estates, creditors and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are, in their sole discretion, authorized to continue their Insurance Policies, including the Insurance Policies listed on **Exhibit C** attached to the Motion, without interruption and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized to pay prepetition obligations, if any, that may be owed in connection with the Insurance Policies (including Broker's Fees and Insurance Deductibles), whether due and payable before, on or after the Petition Date to the extent any such obligations are owed.

4.      The Debtors are, in their sole discretion, authorized to renew or obtain new insurance policies or execute other agreements in connection with their Insurance Policies, including, without limitation, upon the expiration or termination of any Insurance Policy.

5.       The Debtors are, in their sole discretion, authorized to create, capitalize and obtain insurance from the Product and General Liability Captive as set forth in the Motion.

6.       All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on or after the Petition Date to the extent the Debtors have good funds standing to their credit with banks or other financial institutions.   Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

7.       Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.   To the extent any Insurance Policy or related agreement is deemed an executory contract within the meaning of Bankruptcy Code section 365, neither this Order nor any payments made in accordance with this Order shall constitute the post-petition assumption or reaffirmation of those Insurance Policies or related agreements under Bankruptcy Code section 365.

8.       Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

9.      Nothing in this Order shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Policies.

10.      Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity or priority of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claims on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

11.      Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

12.      The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

13.      The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

14.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

4

## <u>Exhibit C</u>

**List of Insurance Policies**

**Purdue Debtors' Insurance Policies**

| Insurance Company | Policy Number | Type of Policy (Purpose) | Policy Term |
|---|---|---|---|
| Liberty Mutual Fire Insurance Company | AS2-611-004531-038 | Automobile liability | 10/1/18-10/1/19 |
| Liberty Insurance Corp. | WA7-61D-004531-088 AOS WC7-611-004531-098 WI | Workers' Compensation | 10/1/18-10/1/19 |
| Liberty Mutual Fire Insurance Company | EN2611004531027 | General Liability | 10/1/18-10/1/19 |
| Old Republic Insurance Company | MWZZ 314344 | Products/Completed Operations Liability | 10/1/18-10/1/19 |
| ACE American Insurance Co. CHUBB | G46815634 002 | Umbrella Liability (excl. Products Liability) | 10/1/18-10/1/19 |
| Liberty Surplus Insurance Corporation (Non-Admitted) | 1000318031-01 | Excess Liability - 2nd Layer | 10/1/18-10/1/19 |
| The Insurance Company of the State of Pennsylvania (AIG WorldSource) | 99-53565 (Products) | Non-US Fronted Products Liability/Completed Operations (excludes clinical trials) | 10/1/18-10/1/19 |
| The Insurance Company of the State of Pennsylvania (AIG WorldSource) | 83-74278 | Foreign Voluntary Workers Compensation And Employer's Liability | 10/1/18-10/1/19 |
| The Insurance Company of the State of Pennsylvania | 80-0276739 (GL) 80-0276740 (Auto) | International General Liability - Premises Only and Foreign Excess Third Party Motor Liability. Guaranteed Cost | 10/1/18-10/1/19 |
| Factory Mutual Insurance Company | 1043673 | Property | 10/29/18-10/29/19 |
| FM Global Transit | CUSA0042207 | Marine Cargo | 10/29/18-10/29/19 |
| Great American Insurance Company (VOSCO) | SCI273610694 | Special Risk Corporate Protection Insurance - K&R | 11/15/16-11/15/19 |
| Zurich American Insurance Company | FID 672628508 | Blanket Crime | 12/12/18-12/12/19 |
| U.S. Specialty Insurance Company - HCC | 64-MGU-18-A45608 | Excess Crime | 12/12/18-12/12/19 |
| Steadfast Insurance Company - Zurich | SPR 0161118-02 | Cyber Liability | 11/03/18-11/03/19 |
| National Union Fire Insurance Co. of Pittsburgh, PA  (AIG) | 01-146-72-44 | Employment Practices Liability ("EPL") | 02/11/19-02/11/20 |
| Endurance Assurance Corp | EPX30000948900 | Employment Practices Liability 1st excess | 02/11/19-02/11/20 |

| Insurance Company | Policy Number | Type of Policy (Purpose) | Policy Term |
|---|---|---|---|
| Zurich American Insurance Company | EPL 0462441-00 | Employment Practices Liability 2nd excess excess | 02/11/19-02/11/20 |
| National Union Fire Insurance Co. of Pittsburgh, PA  (AIG) | 01-146-72-44 | Fiduciary Liability | 02/11/19-02/11/20 |
| Endurance Assurance Corp | FLX30000948800 | Fiduciary Liability 1st excess | 02/11/19-02/11/20 |
| Zurich American Insurance Company | FLC 0462442-00 | Fiduciary Liability 2nd excess | 02/11/19-2/11/20 |
| Isosceles Insurance Limited, acting in respect of Separate Account PPLP-01 | PPLP-01/2019 | Side-A D&O Liability | 02/11/19-02/11/22 |

### Rhodes Debtors' Insurance Policies

| Insurance Company | Policy Number | Type of Policy (Purpose) | Policy Term |
|---|---|---|---|
| Ironshore Specialty Insurance Company | 003809700 | Products-Completed Operations Liability | 10/1/2018-10/1/2019 |

2