DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.,** *et al.*,<br><br>        Debtors.[1] | **Chapter 11**<br><br>**Case No. 19-23649 (RDD)**<br><br>**(Jointly Administered)** |
| **PURDUE PHARMA L.P., PURDUE PHARMA INC.,**<br>**PURDUE TRANSDERMAL TECHNOLOGIES L.P., PURDUE PHARMA MANUFACTURING L.P.,**<br>**PURDUE PHARMACEUTICALS L.P., PURDUE PHARMA OF PUERTO RICO, PURDUE PHARMACEUTICAL** | **Adv. Pro. No. 19-_____** |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PRODUCTS L.P., RHODES PHARMACEUTICALS L.P., RHODES TECHNOLOGIES, and AVRIO HEALTH L.P.,**

       **Plaintiffs**,

    **v.**

**COMMONWEALTH OF MASSACHUSETTS; COMMONWEALTH OF PENNSYLVANIA by ATTORNEY GENERAL JOSH SHAPIRO; COMMONWEALTH OF VIRGINIA, *ex rel.* MARK R. HERRING, ATTORNEY GENERAL; THE STATE OF ALABAMA; STATE OF ALASKA; STATE OF ARIZONA, *ex rel.* MARK BRNOVICH, ATTORNEY GENERAL; STATE OF ARKANSAS, *ex rel.* LESLIE RUTLEDGE; THE PEOPLE OF THE STATE OF CALIFORNIA; THE STATE OF COLORADO, *ex rel.* PHILIP J. WEISER, ATTORNEY GENERAL; STATE OF CONNECTICUT; DISTRICT OF COLUMBIA; STATE OF DELAWARE, *ex rel.* KATHY JENNINGS; STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS; STATE OF GEORGIA; TERRITORY OF GUAM; STATE OF HAWAII, *ex rel.* CLARE E. CONNORS, ATTORNEY GENERAL; STATE OF IDAHO, through ATTORNEY GENERAL LAWRENCE G. WASDEN; THE PEOPLE OF THE STATE OF ILLINOIS; STATE OF INDIANA, STATE OF IOWA, THOMAS J. MILLER, ATTORNEY GENERAL OF IOWA; STATE OF KANSAS, *ex rel.* DEREK SCHMIDT, ATTORNEY GENERAL; STATE OF LA F/K/A LOUISIANA DEPT. OF HEALTH; STATE OF MAINE; CONSUMER PROTECTION DIVISION OFFICE OF THE ATTORNEY GENERAL (Md.); STATE OF MINNESOTA by its ATTORNEY GENERAL, KEITH**

ELLISON; STATE OF MISSISSIPPI;
STATE OF MISSOURI, *ex rel.* ERIC
SCHMITT, in his official capacity as
MISSOURI ATTORNEY GENERAL;
STATE OF MONTANA; STATE OF
NEVADA; STATE OF NEW HAMPSHIRE;
GURBIR S. GREWAL, ATTORNEY
GENERAL OF THE STATE OF NEW
JERSEY; PAUL RODRIGUEZ, ACTING
DIRECTOR OF THE NEW JERSEY
DIVISION OF CONSUMER AFFAIRS;
STATE OF NEW MEXICO, *ex rel.*
HECTOR BALDERAS, ATTORNEY
GENERAL; THE PEOPLE OF THE
STATE OF NEW YORK, by LETITIA
JAMES, ATTORNEY GENERAL OF THE
STATE OF NEW YORK; STATE OF
NORTH CAROLINA, *ex rel.* JOSH STEIN,
ATTORNEY GENERAL; STATE OF
NORTH DAKOTA, *ex rel.* WAYNE
STENEHJEM, ATTORNEY GENERAL;
STATE OF OHIO, *ex rel.* DAVID YOST,
OHIO ATTORNEY GENERAL; STATE
OF OREGON, *ex rel.* ELLEN F.
ROSENBLUM, ATTORNEY GENERAL
FOR THE STATE OF OREGON; THE
COMMONWEALTH OF PUERTO RICO;
STATE OF RHODE ISLAND, by and
through PETER NERONHA, ATTORNEY
GENERAL; STATE OF SOUTH
CAROLINA, *ex rel.* ALAN WILSON
ATTORNEY GENERAL; STATE OF
SOUTH DAKOTA, *ex rel*. JASON
RAVNSBORG, SOUTH DAKOTA
ATTORNEY GENERAL; STATE OF
TENNESSEE, *ex rel.* HERBERT H.
SLATERY III, ATTORNEY GENERAL
AND REPORTER; STATE OF TEXAS;
UTAH DIVISION OF CONSUMER
PROTECTION; STATE OF VERMONT;
STATE OF WASHINGTON; STATE OF
WEST VIRGINIA, *ex rel.* PATRICK
MORRISEY, ATTORNEY GENERAL;
STATE OF WISCONSIN; STATE OF
WYOMING, *ex rel.* BRIDGET HILL,
ATTORNEY GENERAL; THE

**BLACKFEET TRIBE OF THE BLACKFEET INDIAN RESERVATION; THE MUSCOGEE (CREEK) NATION; CITIZEN POTAWATOMI NATION; SAC & FOX NATION; DELAWARE NATION; APACHE TRIBE OF OKLAHOMA; THE OSAGE NATION; PAWNEE NATION OF OKLAHOMA; THLOPTHLOCCO TRIBAL TOWN; BULLHEAD CITY; CITY OF GLENDALE; CITY OF PRESCOTT; CITY OF SURPRISE; COUNTY OF APACHE; COUNTY OF LA PAZ; STATE OF ARKANSAS,** *ex rel.* **SCOTT ELLINGTON; COUNTY OF ARKANSAS; COUNTY OF ASHLEY; COUNTY OF BAXTER; COUNTY OF BENTON; COUNTY OF BOONE; COUNTY OF BRADLEY; COUNTY OF CALHOUN; COUNTY OF CHICOT; COUNTY OF CLARK; COUNTY OF CLAY; COUNTY OF CLEBURNE; COUNTY OF COLUMBIA; COUNTY OF CONWAY; COUNTY OF CRAIGHEAD; COUNTY OF CRAWFORD; COUNTY OF CROSS; COUNTY OF DALLAS; COUNTY OF DESHA; COUNTY OF FAULKNER; COUNTY OF FRANKLIN; COUNTY OF FULTON; COUNTY OF GARLAND; COUNTY OF GRANT; COUNTY OF GREENE; COUNTY OF HEMPSTEAD; COUNTY OF HOT SPRING; COUNTY OF HOWARD; COUNTY OF INDEPENDENCE; COUNTY OF IZARD; COUNTY OF JACKSON; COUNTY OF JOHNSON; COUNTY OF LAFAYETTE; COUNTY OF LAWRENCE; COUNTY OF LEE; COUNTY OF LINCOLN; COUNTY OF LITTLE RIVER; COUNTY OF LOGAN; COUNTY OF LONOKE; COUNTY OF MADISON; COUNTY OF MILLER; COUNTY OF MISSISSIPPI; COUNTY OF MONROE; COUNTY OF MONTGOMERY; COUNTY OF OUACHITA; COUNTY OF PERRY; COUNTY OF PHILLIPS; COUNTY OF PIKE; COUNTY OF POINSETT;**

**COUNTY OF POLK; COUNTY OF POPE;
COUNTY OF PRAIRIE; COUNTY OF
RANDOLPH; COUNTY OF ST. FRANCIS;
COUNTY OF SALINE; COUNTY OF
SCOTT; COUNTY OF SEARCY;
COUNTY OF SEBASTIAN; COUNTY OF
SEVIER; COUNTY OF SHARP; COUNTY
OF STONE; COUNTY OF UNION;
COUNTY OF VAN BUREN; COUNTY OF
WASHINGTON; COUNTY OF WHITE;
COUNTY OF WOODRUFF; COUNTY OF
YELL; COUNTY OF CARROLL;
COUNTY OF NEWTON; COUNTY OF
CLEVELAND; CITY OF LITTLE ROCK;
CITY OF FORT SMITH; CITY OF
SPRINGDALE; CITY OF JONESBORO;
CITY OF NORTH LITTLE ROCK; CITY
OF CONWAY; CITY OF ROGERS; CITY
OF PINE BLUFF; CITY OF
BENTONVILLE; CITY OF HOT
SPRINGS; CITY OF BENTON; CITY OF
TEXARKANA; CITY OF SHERWOOD;
CITY OF JACKSONVILLE; CITY OF
MONTICELLO; CITY OF EL MONTE,
and THE PEOPLE OF THE STATE OF
CALIFORNIA, by and through EL MONTE
CITY ATTORNEY RICK OLIVAREZ;
COUNTY OF KERN, and THE PEOPLE
OF THE STATE OF CALIFORNIA, by and
through KERN COUNTY COUNSEL
MARGO RAISON; THE PEOPLE OF THE
STATE OF CALIFORNIA, acting by and
through SANTA CLARA COUNTY
COUNSEL JAMES R. WILLIAMS; THE
PEOPLE OF THE STATE OF
CALIFORNIA, acting by and through
ORANGE COUNTY DISTRICT
ATTORNEY TONY RACKAUCKAS; THE
PEOPLE OF THE STATE OF
CALIFORNIA, acting by and through LOS
ANGELES COUNTY COUNSEL MARY C.
WICKHAM; THE PEOPLE OF THE
STATE OF CALIFORNIA, acting by and
through OAKLAND CITY ATTORNEY
BARBARA J. PARKER; CITY OF NEW
BRITAIN; THE CITY OF ANSONIA; THE**

**CITY OF DANBURY; THE CITY OF
DERBY; THE CITY OF NORWALK; THE
CITY OF BRIDGEPORT; THE
BOROUGH OF NAUGATUCK; THE
TOWN OF SOUTHBURY; THE TOWN OF
WOODBURY; THE TOWN OF
FAIRFIELD; THE TOWN OF BEACON
FALLS; THE CITY OF MILFORD; THE
CITY OF WEST HAVEN; THE TOWN OF
NORTH HAVEN; THE TOWN OF
THOMASTON; THE CITY OF
TORRINGTON; THE CITY OF BRISTOL;
THE TOWN OF EAST HARTFORD; THE
TOWN OF SOUTHINGTON; THE TOWN
OF NEWTOWN; THE CITY OF
SHELTON; THE TOWN OF TOLLAND;
THE TOWN OF OXFORD; THE CITY OF
NEW HAVEN; THE CITY OF NEW
LONDON; THE CITY OF WATERBURY;
THE TOWN OF STRATFORD; THE
TOWN OF BERLIN; THE TOWN OF
MIDDLEBURY; THE TOWN OF
SEYMOUR; THE TOWN OF PROSPECT;
THE TOWN OF WOLCOTT; THE TOWN
OF BETHLEHEM; THE TOWN OF NEW
MILFORD; THE TOWN OF ROXBURY;
THE TOWN OF COVENTRY; TOWN OF
WALLINGFORD; CITY OF DOVER, a
municipal corporation of the State of
Delaware; CITY OF SEAFORD, a
municipal corporation of the State of
Delaware; KENT COUNTY, a political
subdivision of the State of Delaware;
COUNTY OF HAWAI'I; COUNTY OF
LAKE; MICHAEL NERHEIM, LAKE
COUNTY STATE'S ATTORNEY; MARK
C. CURRAN JR., LAKE COUNTY
SHERIFF; DR. HOWARD COOPER,
LAKE COUNTY CORONER; THE
COUNTY OF LAKE in the Name of the
PEOPLE OF THE STATE OF ILLINOIS;
CITY OF SESSER; CITY OF GRANITE
CITY, ILLINOIS; THE CITY OF
BURBANK; THE CITY OF
COUNTRYSIDE; THE PEOPLE OF THE
STATE OF ILLINOIS AND BOONE**

**COUNTY, ILLINOIS; THE PEOPLE OF
THE STATE OF ILLINOIS AND BUREAU
COUNTY, ILLINOIS; THE PEOPLE OF
THE STATE OF ILLINOIS AND
CHAMPAIGN COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS
AND COOK COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS,
AND DUPAGE COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS
AND JERSEY COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS
AND LASALLE COUNTY; THE PEOPLE
OF THE STATE OF ILLINOIS AND
MACON COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS
AND MCLEAN COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS,
AND DEKALB COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS,
AND HENRY COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS,
AND KANE COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS
AND KANKAKEE COUNTY, ILLINOIS;
THE PEOPLE OF THE STATE OF
ILLINOIS, AND KENDALL COUNTY,
ILLINOIS; THE PEOPLE OF THE STATE
OF ILLINOIS, AND MACOUPIN
COUNTY, ILLINOIS; THE PEOPLE OF
THE STATE OF ILLINOIS, AND
MCHENRY COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS,
AND PIATT COUNTY, ILLINOIS; THE
PEOPLE OF THE STATE OF ILLINOIS,
AND WILL COUNTY, ILLINOIS; THE
VILLAGE OF BEDFORD PARK; THE
VILLAGE OF EVERGREEN PARK; THE
VILLAGE OF LYONS; THE VILLAGE OF
SUMMIT; VILLAGE OF BRIDGEVIEW;
VILLAGE OF HODGKINS; CITY OF
ROCKLAND, STATE OF MAINE; KNOX
COUNTY, STATE OF MAINE; ANNE
ARUNDEL COUNTY, MARYLAND;
MAYOR & CITY COUNCIL OF
BALTIMORE; CITY OF BOSTON; THE**

**BOSTON PUBLIC HEALTH COMMISSION; THE BOSTON HOUSING AUTHORITY; CITY OF CAMBRIDGE; CITY OF CHICOPEE; CITY OF FRAMINGHAM; CITY OF GLOUCESTER; CITY OF HAVERHILL; CITY OF SALEM; CITY OF WORCESTER; TOWN OF CANTON; TOWN OF LYNNFIELD; TOWN OF NATICK; TOWN OF RANDOLPH; TOWN OF SPRINGFIELD; TOWN OF WAKEFIELD; JEFFERSON COUNTY; BUTLER COUNTY; CAPE GIRARDEAU COUNTY; CHRISTIAN COUNTY; CITY OF INDEPENDENCE; CITY OF JOPLIN; CRAWFORD COUNTY; DENT COUNTY; DUNKLIN COUNTY; FRANKLIN COUNTY; GREENE COUNTY; IRON COUNTY; JASPER COUNTY; MADISON COUNTY; PERRY COUNTY; STE. GENEVIEVE COUNTY; STONE COUNTY; TANEY COUNTY; TEXAS COUNTY; WASHINGTON COUNTY; CITY OF HENDERSON; CITY OF LAS VEGAS; CITY OF NORTH LAS VEGAS; CITY OF RENO; CLARK COUNTY; CITY OF TRENTON; COUNTY OF OCEAN, NJ; CUMBERLAND COUNTY; THE CITY OF ALBANY; CITY OF ITHACA; CITY OF NEW YORK; CITY OF SCHENECTADY; CITY OF YONKERS; COUNTY OF BROOME; COUNTY OF COLUMBIA; COUNTY OF DUTCHESS; COUNTY OF ERIE; COUNTY OF NASSAU; COUNTY OF NIAGARA; COUNTY OF ORANGE; COUNTY OF OSWEGO; CITY OF TROY; COUNTY OF RENSSELAER; COUNTY OF SARATOGA; COUNTY OF HERKIMER; COUNTY OF SCHENECTADY; COUNTY OF SCHOHARIE; COUNTY OF SENECA; COUNTY OF ST. LAWRENCE; COUNTY OF SUFFOLK; COUNTY OF SULLIVAN; COUNTY OF TOMPKINS; COUNTY OF WESTCHESTER; COUNTY OF MONTGOMERY; THE CITY OF MOUNT**

**VERNON; THE COUNTY OF
CATTARAUGUS; THE COUNTY OF
CAYUGA; THE COUNTY OF
CHAUTAUQUA; THE COUNTY OF
CHENANGO; THE COUNTY OF
CLINTON; THE COUNTY OF ONTARIO;
THE COUNTY OF CORTLAND; THE
COUNTY OF ESSEX; THE COUNTY OF
FRANKLIN; THE COUNTY OF FULTON;
THE COUNTY OF GENESEE; THE
COUNTY OF GREENE; THE COUNTY
OF HAMILTON; CITY OF
PLATTSBURGH; THE COUNTY OF
LEWIS; THE COUNTY OF LIVINGSTON;
THE COUNTY OF MADISON; THE
COUNTY OF MONROE; THE COUNTY
OF OTSEGO; THE COUNTY OF
PUTNAM; THE COUNTY OF
SCHUYLER; THE COUNTY OF
STEUBEN; THE COUNTY OF TIOGA;
THE COUNTY OF ULSTER; THE
COUNTY OF WARREN; THE COUNTY
OF WASHINGTON; THE COUNTY OF
WYOMING; THE TOWN OF AMHERST;
THE TOWN OF CHEEKTOWAGA; THE
TOWN OF LANCASTER; THE TOWN OF
TONAWANDA; THE COUNTY OF
FAYETTE, OHIO; THE STATE OF OHIO
*ex rel.* PROSECUTING ATTORNEY OF
FAYETTE COUNTY, JESS WEADE; THE
COUNTY OF MEDINA, OHIO; THE
STATE OF OHIO *ex rel.* PROSECUTING
ATTORNEY OF MEDINA COUNTY, S.
FORREST THOMPSON; BOARD OF
COUNTY COMMISSIONERS OF
CLEVELAND COUNTY; BOARD OF
COUNTY COMMISSIONERS OF COAL
COUNTY; BOARD OF COUNTY
COMMISSIONERS OF HUGHES
COUNTY; BOARD OF COUNTY
COMMISSIONERS OF JACKSON
COUNTY; BOARD OF COUNTY
COMMISSIONERS OF KAY COUNTY;
BOARD OF COUNTY COMMISSIONERS
OF LINCOLN COUNTY; BOARD OF
COUNTY COMMISSIONERS OF LOVE**

**COUNTY; BOARD OF COUNTY COMMISSIONERS OF MCCURTAIN COUNTY; BOARD OF COUNTY COMMISSIONERS OF NOBLE COUNTY; BOARD OF COUNTY COMMISSIONERS OF OKFUSKEE COUNTY; BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY; BOARD OF COUNTY COMMISSIONERS OF POTTAWATOMIE COUNTY; BOARD OF COUNTY COMMISSIONERS OF WOODWARD COUNTY; BOARD OF COUNTY COMMISSIONERS OF MAJOR COUNTY; BOARD OF COUNTY COMMISSIONERS OF WOODS COUNTY; BOARD OF COUNTY COMMISSIONERS OF GREER COUNTY; BOARD OF COUNTY COMMISSIONERS OF LEFLORE COUNTY; BOARD OF COUNTY COMMISSIONERS OF LOGAN COUNTY; BOARD OF COUNTY COMMISSIONERS OF TEXAS COUNTY; CITY OF ANADARKO; CITY OF BURNS FLAT; CITY OF FORT COBB; CITY OF BETHANY; COMMONWEALTH OF PA,** acting by and through **PHILADELPHIA DISTRICT ATTORNEY LAWRENCE S. KRASNER; COMMONWEALTH OF PA,** acting by **JAMES MARTIN;  PEOPLE OF LEHIGH COUNTY AND LEHIGH COUNTY, PA; ADAMS COUNTY; ARMSTRONG COUNTY, PA; BEAVER COUNTY, PENNSYLVANIA; BUCKS COUNTY; CAMBRIA COUNTY, PENNSYLVANIA; CITY OF LOCK HAVEN; CITY OF PHILADELPHIA; CITY OF PITTSBURGH; CLEARFIELD COUNTY; CLINTON COUNTY; COUNTY OF ALLEGHENY; COUNTY OF BRADFORD; COUNTY OF CARBON; COUNTY OF CLARION; COUNTY OF CUMBERLAND; COUNTY OF ERIE; COUNTY OF FAYETTE; COUNTY OF MONROE; COUNTY OF TIOGA; COUNTY OF WASHINGTON; COUNTY OF WESTMORELAND; COUNTY OF**

**YORK; DAUPHIN COUNTY, PA; DELAWARE COUNTY; FRANKLIN COUNTY; COUNTY OF GREENE, PENNSYLVANIA; LACKAWANNA COUNTY, PENNSYLVANIA; LAWRENCE COUNTY, PENNSYLVANIA; MAHONING TOWNSHIP; MERCER COUNTY; NEWTOWN TOWNSHIP; PEOPLE OF NORTHAMPTON COUNTY AND NORTHAMPTON COUNTY, PA; PIKE COUNTY, PA.; SCHUYLKILL COUNTY, PENNSYLVANIA; THE MUNICIPALITY OF NORRISTOWN; THE TOWNSHIP OF WEST NORRITON; WAMPUM BOROUGH; WARRINGTON TOWNSHIP; CITY OF CHARLESTON; CITY OF NORTH CHARLESTON; COUNTY OF ABBEVILLE; COUNTY OF AIKEN; COUNTY OF ALLENDALE; COUNTY OF ANDERSON; COUNTY OF BAMBERG; COUNTY OF BARNWELL; COUNTY OF BEAUFORT; COUNTY OF CALHOUN; COUNTY OF CHEROKEE; COUNTY OF CHESTERFIELD; COUNTY OF CLARENDON; COUNTY OF COLLETON; COUNTY OF DILLON; COUNTY OF DORCHESTER; COUNTY OF EDGEFIELD; COUNTY OF FAIRFIELD; COUNTY OF FLORENCE; COUNTY OF GREENWOOD; COUNTY OF HAMPTON; COUNTY OF HORRY; COUNTY OF JASPER; COUNTY OF KERSHAW; COUNTY OF LANCASTER; COUNTY OF LAURENS; COUNTY OF LEE; COUNTY OF LEXINGTON; COUNTY OF MARION; COUNTY OF MCCORMICK; COUNTY OF OCONEE; COUNTY OF ORANGEBURG; COUNTY OF PICKENS; COUNTY OF SALUDA; COUNTY OF SUMTER; COUNTY OF UNION; COUNTY OF WILLIAMSBURG; COUNTY OF YORK; GREENVILLE COUNTY; SPARTANBURG COUNTY; TOWN OF MOUNT PLEASANT; BRYANT C. DUNAWAY, in his official**

**capacity as the DISTRICT ATTORNEY GENERAL FOR THE THIRTEENTH JUDICIAL DISTRICT, TN and on behalf of all political subdivisions therein, including CLAY COUNTY, CITY OF CELINE, CUMBERLAND COUNTY, CITY OF CRAB ORCHARD, CITY OF CROSSVILLE, TOWN OF PLEASANT HILL, DEKALB COUNTY, TOWN OF ALEXANDRIA, TOWN OF DOWELLTOWN, TOWN OF LIBERTY, CITY OF SMITHVILLE, OVERTON COUNTY, TOWN OF LIVINGSTON, PICKETT COUNTY, TOWN OF BYRDSTOWN, PUTNAM COUNTY, CITY OF ALGOOD, TOWN OF BAXTER, CITY OF COOKEVILLE, TOWN OF MONTEREY, WHITE COUNTY, TOWN OF DOYLE, CITY OF SPARTA; JENNING H. JONES, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE SIXTEENTH JUDICIAL DISTRICT, TN and on behalf of all political subdivisions therein, including CANNON COUNTY, TOWN OF AUBURNTOWN, TOWN OF WOODBURY, RUTHERFORD COUNTY, CITY OF EAGLEVILLE, CITY OF LA VERGNE, CITY OF MURFREESBORO, TOWN OF SMYRNA; ROBERT J. CARTER, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE SEVENTEENTH JUDICIAL DISTRICT, TN and on behalf of all political subdivisions therein, including BEDORD COUNTY, TOWN OF BELL BUCKLE, TOWN OF NORMANDY, CITY OF SHELBYVILLE, TOWN OF WARTRACE, LINCOLN COUNTY, CITY OF ARDMORE, CITY OF FAYETTEVILLE, TOWN OF PETERSBURG, MARSHALL COUNTY, TOWN OF CHAPEL HILL, TOWN OF CORNERSVILLE, CITY OF LEWISBURG, MOORE COUNTY, CITY OF LYNCHBURG; BRENT A. COOPER, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE**

**TWENTY-SECOND JUDICIAL DISTRICT, TN and on behalf of all political subdivisions therein, including GILES COUNTY, CITY OF ELKTON, TOWN OF LYNNVILLE, CITY OF MINOR HILL, CITY OF PULASKI, LAWRENCE COUNTY, TOWN OF ETHRIDGE, CITY OF IRON CITY, CITY OF LAWRENCEBURG, CITY OF LORETTO, CITY OF ST. JOSEPH, MAURY COUNTY, CITY OF COLUMBIA, CITY OF MOUNT PLEASANT, CITY OF SPRING HILL, WAYNE COUNTY, CITY OF CLIFTON, CITY OF COLLINWOOD, CITY OF WAYNESBORO; LISA S. ZAVOGIANNIS, IN HER OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY GENERAL FOR THE THIRTY-FIRST JUDICIAL DISTRICT, TN and on behalf of all political subdivisions therein, including VAN BUREN COUNTY, TOWN OF SPENCER, WARREN COUNTY, TOWN OF CENTERTOWN, CITY OF MCMINNVILLE, TOWN OF MORRISON, TOWN OF VIOLA; BABY DOE, by and through his Mother; JARED EFFLER, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE EIGHTH JUDICIAL DISTRICT, TN; CHARME ALLEN, in her official capacity as the DISTRICT ATTORNEY GENERAL FOR THE SIXTH JUDICIAL DISTRICT; DAVE CLARK, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE SEVENTH JUDICIAL DISTRICT, TN; RUSSELL JOHNSON, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE NINTH JUDICIAL DISTRICT, TN; STEPHEN CRUMP, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE TENTH JUDICIAL DISTRICT, TN; BABY DOE #1; BABY DOE #2; BARRY STAUBUS, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE SECOND JUDICIAL DISTRICT AND**

**ON BEHALF OF ALL POLITICAL SUBDIVISIONS THEREIN; TONY CLARK, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE FIRST JUDICIAL DISTRICT and on behalf of all political subdivisions therein; DAN ARMSTRONG, in his official capacity as the DISTRICT ATTORNEY GENERAL FOR THE THIRD JUDICIAL DISTRICT and on behalf of all political subdivisions therein; BABY DOE, by and through his Guardian Ad Litem; SHELBY COUNTY, by the SHELBY BOARD OF COMMISSIONERS; CITY OF HOUSTON, TEXAS; COUNTY OF BEE; COUNTY OF BEXAR; COUNTY OF BURLESON; COUNTY OF BURNET; COUNTY OF CAMERON; COUNTY OF CASS; COUNTY OF COOKE; COUNTY OF CORYELL; COUNTY OF DALLAS; COUNTY OF DELTA; COUNTY OF DIMMIT; COUNTY OF ECTOR; COUNTY OF EL PASO; COUNTY OF FALLS; COUNTY OF FANNIN; COUNTY OF FREESTONE; COUNTY OF GRAYSON; COUNTY OF HARRISON; COUNTY OF HIDALGO; COUNTY OF HOPKINS; COUNTY OF HOUSTON; COUNTY OF KENDALL; COUNTY OF KERR; COUNTY OF LIBERTY; COUNTY OF LIMESTONE; COUNTY OF MARION; COUNTY OF MCMULLEN; COUNTY OF MILAM; COUNTY OF NACOGDOCHES; COUNTY OF NUECES; NUECES COUNTY HOSPITAL DISTRICT; COUNTY OF ORANGE; COUNTY OF PANOLA; COUNTY OF PARKER; COUNTY OF POTTER; COUNTY OF ROBERTSON; COUNTY OF SAN PATRICIO; COUNTY OF SHELBY; COUNTY OF TRAVIS; COUNTY OF TRINITY; COUNTY OF VAN ZANDT; COUNTY OF WALLER; COUNTY OF WILLIAMSON; COUNTY OF WOOD; JOHNSON COUNTY; CACHE COUNTY, UTAH; RICH COUNTY, UTAH; DAVIS**

COUNTY; GRAND COUNTY; IRON
COUNTY; MILLARD COUNTY; SALT
LAKE COUNTY; SAN JUAN COUNTY;
SANPETE COUNTY; SEVIER COUNTY;
JUAB COUNTY; EMERY COUNTY;
WAYNE COUNTY; PIUTE COUNTY;
SUMMIT COUNTY, UTAH; TOOELE
COUNTY, UTAH; UINTAH COUNTY,
UTAH; DUSCESNE COUNTY, UTAH;
DAGGETT COUNTY, UTAH; TRI-
COUNTY HEALTH DEPARTMENT;
WASATCH COUNTY, UTAH;
WASHINGTON COUNTY, UTAH; KANE
COUNTY, UTAH; BEAVER COUNTY,
UTAH; GARFIELD COUNTY, UTAH;
WEBER COUNTY, UTAH; CITY OF
MARTINSVILLE, VIRGINIA;
DINWIDDIE COUNTY, VIRGINIA; THE
COUNTY BOARD OF ARLINGTON
COUNTY, VIRGINIA; MECKLENBURG
COUNTY; BROOKE COUNTY
COMMISSION; HANCOCK COUNTY
COMMISSION; HARRISON COUNTY
COMMISSION; LEWIS COUNTY
COMMISSION; MARSHALL COUNTY
COMMISSION; OHIO COUNTY
COMMISSION; TYLER COUNTY
COMMISSION; WETZEL COUNTY
COMMISSION; THE COUNTY
COMMISSION OF MASON COUNTY;
THE COUNTY COMMISSION OF
BARBOUR COUNTY; MAYOR CHRIS
TATUM on behalf of THE VILLAGE OF
BARBOURSVILLE; THE COUNTY
COMMISSION OF TAYLOR COUNTY;
THE COUNTY COMMISSION OF
WEBSTER COUNTY; MAYOR DON E.
MCCOURT, on behalf of the TOWN OF
ADDISON a/k/a THE TOWN OF
WEBSTER SPRINGS; MAYOR PEGGY
KNOTTS BARNEY, on behalf of the CITY
OF GRAFTON; MAYOR PHILIP
BOWERS, on behalf of the CITY OF
PHILIPPI; MONONGALIA COUNTY
COMMISSION; MARION COUNTY
COMMISSION; DODDRIDGE COUNTY

COMMISSION; RANDOLPH COUNTY
COMMISSION; UPSHUR COUNTY
COMMISSION; ROANE COUNTY
COMMISSION; THE CITY OF SPENCER;
JACKSON COUNTY COMMISSION; THE
CITY OF RIPLEY; THE TOWN OF
RAVENSWOOD; WOOD COUNTY
COMMISSION; THE CITY OF
WILLIAMSTOWN; WIRT COUNTY
COMMISSION; THE TOWN OF
ELIZABETH; PLEASANTS COUNTY
COMMISSION; CITY OF ST. MARY'S;
RITCHIE COUNTY COMMISSION;
TOWN OF HARRISVILLE; WEST
VOLUSIA HOSPITAL AUTHORITY;
THOMAS HICKEY; I-KARE
TREATMENT CENTER, LLC; MARY
TILLEY; BROWARD COUNTY,
FLORIDA; CABELL COUNTY
COMMISSION; CITY OF HUNTINGTON,
WEST VIRGINIA; CITY OF CHICAGO;
CITY OF CLEVELAND; COUNTY OF
SUMMIT, OHIO; SUMMIT COUNTY
PUBLIC HEALTH; THE CITY OF
AKRON; STATE OF OHIO, *ex rel.*
PROSECUTING ATTORNEY FOR
SUMMIT COUNTY, SHERRI BEVAN
WALSH; THE DIRECTOR OF LAW FOR
THE CITY OF AKRON, EVE BELFANCE;
COUNTY OF MONROE; THE COUNTY
OF CUYAHOGA, OHIO; STATE OF
OHIO, *ex rel.* PROSECUTING
ATTORNEY OF CUYAHOGA COUNTY,
MICHAEL C. O'MALLEY; ALEXANDER
CITY, ALABAMA; CITY OF OXFORD,
ALABAMA; RUSSELL COUNTY,
ALABAMA; CITY OF SANTA ANA; THE
PEOPLE OF THE STATE OF
CALIFORNIA, by and through SANTA
ANA CITY ATTORNEY SONIA R.
CARVALHO; CITY OF FULLERTON;
THE PEOPLE OF THE STATE OF
CALIFORNIA by and through
FULLERTON CITY ATTORNEY
RICHARD D. JONES; CITY OF IRVINE;
THE PEOPLE OF THE STATE OF

**CALIFORNIA by and through IRVINE CITY ATTORNEY JEFFREY MELCHING; CITY OF SAN CLEMENTE; THE PEOPLE OF THE STATE OF CALIFORNIA by and through SAN CLEMENTE CITY ATTORNEY SCOTT C. SMITH; CITY OF COSTA MESA; THE PEOPLE OF THE STATE OF CALIFORNIA by and through COSTA MESA CITY ATTORNEY KIMBERLY HALL BARLOW; CITY OF WESTMINSTER; THE PEOPLE OF THE STATE OF CALIFORNIA by and through WESTMINSTER CITY ATTORNEY RICHARD D. JONES; COUNTY OF ALAMEDA; THE PEOPLE OF THE STATE OF CALIFORNIA by and through COUNTY COUNSEL DONNA ZIEGLER; CITY OF OCALA, FLORIDA; COUNTY OF KAUA'I, a political subdivision of the State of Hawaii, for themselves individually, and on behalf of all similarly situated persons, and on behalf of the general public, as a class; HOWARD COUNTY; CHARTER TOWNSHIP OF HARRISON; CITY OF STERLING HEIGHTS; CITY OF WARREN; CITY OF COON RAPIDS, MINNESOTA; ST. FRANCOIS COUNTY; COUNTY OF BURLINGTON, NJ; TOWNSHIP OF BRICK; CITY OF AMSTERDAM; CITY OF AUBURN; CITY OF POUGHKEEPSIE; CITY OF ROCHESTER; CITY OF SARATOGA SPRINGS; CITY OF OGDENSBURG; BOARD OF COUNTY COMMISSIONERS OF ATOKA COUNTY; BOARD OF COUNTY COMMISSIONERS OF CADDO COUNTY; BOARD OF COUNTY COMMISSIONERS OF CIMARRON COUNTY; BOARD OF COUNTY COMMISSIONERS OF GRADY COUNTY; BOARD OF COUNTY COMMISSIONERS OF HASKELL COUNTY; BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY; BOARD OF COUNTY COMMISSIONERS OF**

LATIMER COUNTY; CITY OF JENKS;
CITY OF SEMINOLE; CITY OF
SHAWNEE; CITY OF ALLENTOWN,
PENNSYLVANIA; COUNTY OF DUVAL;
COUNTY OF KLEBERG; COUNTY OF
JIM HOGG; ELLIS COUNTY;
ROCKWALL COUNTY; CHARLOTTE
COUNTY; CITY OF EMPORIA; CITY OF
FREDERICKSBURG; CITY OF
PORTSMOUTH; CITY OF RADFORD;
CITY OF WAYNESBORO; CULPEPER
COUNTY; CUMBERLAND COUNTY;
GREENSVILLE COUNTY; LOUDOUN
COUNTY; PATRICK COUNTY; PRINCE
GEORGE COUNTY; SHENANDOAH
COUNTY; WISE COUNTY BOARD OF
SUPERVISORS; THE DCH HEALTH
CARE AUTHORITY; THE
HEALTHCARE AUTHORITY FOR
BAPTIST HEALTH, an affiliate of UAB
HEALTH SYSTEM; MEDICAL WEST
HOSPITAL AUTHORITY, an affiliate of
UAB Health System;  EVERGREEN
MEDICAL CENTER, LLC; GILLIARD
HEALTH SERVICES, INC.;
CRESTWOOD HEALTHCARE, L.P.;
TRIAD OF ALABAMA, LLC; QHG OF
ENTERPRISE, INC.; AFFINITY
HOSPITAL, LLC; GADSDEN REGIONAL
MEDICAL CENTER, LLC; FOLEY
HOSPITAL CORPORATION; THE
HEALTH CARE AUTHORITY OF
CLARKE COUNTY, ALABAMA; BBH
PBMC, LLC; BBH, WBMC, LLC; BBH
SBMC, LLC; BBH CBMC, LLC; BBH
BMC, LLC; TUCSON MEDICAL
CENTER; TAKOMA REGIONAL
HOSPITAL, INC. f/k/a TAKOMA
HOSPITAL, INC.; AMISUB (SFH), INC.;
BAPTIST WOMENS HEALTH CENTER,
LLC; CAMPBELL COUNTY HMA, LLC;
CLARKSVILLE HEALTH SYSTEM, G.P.;
CLEVELAND TENNESSEE HOSPITAL
COMPANY, LLC; COCKE COUNTY
HMA, LLC; DICKENSON COMMUNITY
HOSPITAL; HAWKINS COUNTY

**MEMORIAL HOSPITAL; JEFFERSON COUNTY HMA, LLC; JOHNSTON MEMORIAL HOSPITAL, INC.; LEBANON HMA, INC.; LEXINGTON HOSPITAL CORPORATION; METRO KNOXVILLE HMA, LLC; MOUNTAIN STATES HEALTH ALLIANCE f/k/a JOHNSON CITY MEDICAL CENTER HOSPITAL, INC.; NORTHEAST TENNESSEE COMMUNITY HEALTH CENTERS, INC.; NORTON COMMUNITY HOSPITAL; SAINT FRANCIS HOSPITAL--BARTLETT, INC. f/k/a TENET HEALTH SYSTEM; SHELBYVILLE HOSPITAL COMPANY, LLC f/k/a SHELBYVILLE HOSPITAL CORPORATION; SMYTH COUNTY COMMUNITY HOSPITAL; TULLAHOMA HMA, LLC f/k/a TULLAHOMA HMA, INC.; WELLMONT HEALTH SYSTEM f/k/a BRMC/HVMC, INC.; KINGMAN HOSPITAL, INC.; ARIZONA SPINE AND JOINT HOSPITAL LLC; BULLHEAD CITY HOSPITAL CORPORATION; CARONDELET ST. JOSEPH'S HOSPITAL; HOLY CROSS HOSPITAL, INC.; HOSPITAL DEVELOPMENT OF WEST PHOENIX, INC.; NORTHWEST HOSPITAL, LLC; ORO VALLEY HOSPITAL, LLC; OASIS HOSPITAL; ORTHOPEDIC AND SURGICAL SPECIALTY COMPANY, LLC; ST. MARY'S HOSPITAL OF TUCSON; VHS ACQUISITION SUBSIDIARY NUMBER 1, INC.; VHS ARROWHEAD, INC.; WEST VIRGINIA UNIVERSITY HOSPITALS INC.; APPALACHIAN REGIONAL HEALTHCARE, INC.; BLUEFIELD HOSPITAL COMPANY, LLC; CHARLESTON AREA MEDICAL CENTER, INC.; DAVIS MEMORIAL HOSPITAL; BROADDUS HOSPITAL ASSOCIATION; WEBSTER COUNTY MEMORIAL HOSPITAL, INC.; GRAFTON CITY HOSPITAL, INC.;**

**COMMUNITY HEALTH ASSOCIATION
d/b/a JACKSON GENERAL HOSPITAL;
GRANT MEMORIAL HOSPITAL;
GREENBRIER VMC, LLC;
MONONGALIA COUNTY GENERAL
HOSPITAL COMPANY; PRESTON
MEMORIAL HOSPITAL
CORPORATION; PRINCETON
COMMUNITY HOSPITAL
ASSOCIATION, INC.; STONEWALL
JACKSON MEMORIAL HOSPITAL
COMPANY; OAK HILL HOSPITAL
CORPORATION d/b/a PLATEAU
MEDICAL CENTER; CAMDEN-CLARK
MEMORIAL HOSPITAL
CORPORATION; THE CHARLES TOWN
GENERAL HOSPITAL; CITY HOSPITAL,
INC.; POTOMAC VALLEY HOSPITAL
OF W. VA., INC.; REYNOLDS
MEMORIAL HOSPITAL INC.; ST.
JOSEPH'S HOSPITAL OF
BUCKHANNON, INC.; WETZEL
COUNTY HOSPITAL ASSOCIATION;
WILLIAMSON MEMORIAL HOSPITAL,
LLC; BRAXTON COUNTY MEMORIAL
HOSPITAL, INC.; UNITED HOSPITAL
CENTER, INC.; BOWLING GREEN-
WARREN COMMUNITY HOSPITAL
CORPORATION; THE MEDICAL
CENTER AT CLINTON COUNTY, INC.;
THE MEDICAL CENTER AT FRANKLIN,
INC.; ARH TUG VALLEY HEALTH
SERVICES INC. f/k/a HIGHLANDS
HOSPITAL CORPORATION; BAPTIST
HEALTHCARE SYSTEM, INC.; BAPTIST
HEALTH MADISONVILLE, INC.;
BAPTIST HEALTH RICHMOND, INC.;
GRAYSON COUNTY HOSPITAL
FOUNDATION, INC.; THE HARRISON
MEMORIAL HOSPITAL, INC.; SAINT
ELIZABETH MEDICAL CENTER, INC.;
ST. CLAIRE MEDICAL CENTER, INC.;
TAYLOR COUNTY HOSPITAL
DISTRICT HEALTH FACILITIES
CORPORATION; WEST BOCA
MEDICAL CENTER, INC.; GARY CARR;**

**FREDRICK HILL; FRANCISCO PEREZ;
AFSCME DISTRICT COUNCIL 33
HEALTH & WELFARE FUND; AFSCME
DISTRICT COUNCIL 47 HEALTH &
WELFARE FUND; BRICKLAYERS AND
ALLIED CRAFTWORKERS LOCAL
UNION NO. 1 OF PA/DEHEALTH AND
WELFARE FUND; CARPENTERS
HEALTH & WELFARE OF
PHILADELPHIA & VICINITY;
SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY;
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 98
HEALTH & WELFARE FUND;
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 89
SOUND AND COMMUNICATION
HEALTH & WELFARE FUND;
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 728
FAMILY HEALTHCARE PLAN;
INTERNATIONAL UNION OF PAINTERS
AND ALLIED TRADES, DISTRICT
COUNCIL NO. 21 WELFARE FUND;
IRON WORKERS DISTRICT COUNCIL
OF PHILADELPHIA AND VICINITY,
BENEFIT FUND; PHILADELPHIA
FEDERATION OF TEACHERS HEALTH
AND WELFARE FUND; THE TRUSTEES
OF THE UNITE HERE LOCAL 634
HEALTH & WELFARE FUND; UFCW
LOCAL 23 AND EMPLOYERS HEALTH
FUND; WESTERN PENNSYLVANIA
ELECTRICAL EMPLOYEES
INSURANCE TRUST FUND; DALLAS
COUNTY HOSPITAL DISTRICT D/B/A
PARKLAND HEALTH & HOSPITAL
SYSTEM; PALO PINTO COUNTY
HOSPITAL DISTRICT a/k/a PALO PINTO
GENERAL HOSPITAL; GUADALUPE
VALLEY HOSPITAL a/k/a GUADALUPE
REGIONAL MEDICAL CENTER; VHS
SAN ANTONIO PARTNERS, LLC d/b/a
BAPTIST MEDICAL CENTER, MISSION
TRAIL BAPTIST HOSPITAL, NORTH**

**CENTRAL BAPTIST HOSPITAL, NORTHEAST BAPTIST HOSPITAL, AND ST. LUKE'S BAPTIST HOSPITAL; NACOGDOCHES MEDICAL CENTER; RESOLUTE HOSPITAL COMPANY, LLC d/b/a RESOLUTE HEALTH; THE HOSPITALS OF PROVIDENCE EAST; CAMPUS; THE HOSPITALS OF PROVIDENCE MEMORIAL CAMPUS; THE HOSPITALS OF PROVIDENCE; SIERRA CAMPUS; THE HOSPITALS OF PROVIDENCE TRANSMOUNTAIN CAMPUS; VHS BROWNSVILLE HOSPITAL COMPANY, LLC d/b/a VALLEY BAPTIST MEDICAL CENTER - BROWNSVILLE; VHS HARLINGEN HOSPITAL COMPANY, LLC d/b/a VALLEY BAPTIST MEDICAL CENTER; ARMC, L.P. d/b/a ABILENE REGIONAL MEDICAL CENTER; COLLEGE STATION HOSPITAL, LP; GRANBURY HOSPITAL CORPORATION d/b/a LAKE GRANBURY MEDICAL CENTER; NAVARRO HOSPITAL, L.P. d/b/a NAVARRO REGIONAL HOSPITAL; BROWNWOOD HOSPITAL, L.P. d/b/a BROWNWOOD REGIONAL MEDICAL CENTER; VICTORIA OF TEXAS, L.P. d/b/a DETAR HOSPITAL; NAVARRO AND DETAR HOSPITAL NORTH; LAREDO TEXAS HOSPITAL COMPANY, L.P. d/b/a LAREDO MEDICAL CENTER; SAN ANGELO HOSPITAL, L.P. d/b/a SAN ANGELO COMMUNITY MEDICAL CENTER; CEDAR PARK HEALTH SYSTEM, L.P. d/b/a CEDAR PARK REGIONAL MEDICAL CENTER; NHCI OF HILLSBORO, INC. d/b/a HILL REGIONAL HOSPITAL; LONGVIEW MEDICAL CENTER, L.P. d/b/a LONGVIEW REGIONAL MEDICAL CENTER; PINEY WOODS HEALTHCARE SYSTEM, L.P. d/b/a WOODLAND HEIGHTS MEDICAL CENTER; FIRE AND POLICE RETIREMENT HEALTH CARE FUND,**

SAN ANTONIO; ALICIA SIMONSON;
ALYSSA LYLE; A.M.H.; AMANDA
GIBSON; AMANDA MUFFLEY; AMY
SHEPARD; ANDREW G. RILING;
BEVERLY RILING; ANGELA CHERRY;
APRIL BERZINSKI; ARACYA
JOHNSON; BILLIE IVIE; BOBBIE LOU
MOORE; BRANDI BRUMBARGER;
BRITTANY FLACH; CAROL LIVELY;
CAROLINE VONCANNON; CHOLE
PAUL; CHRISTINA DELANCEY;
CLEVELAND BANKERS AND
TEAMSTERS HEALTH AND WELFARE
FUND; PIPE FITTERS LOCAL UNION
NO. 120 INSURANCE FUND; COREY
MEANS; COURTNEY HERRING;
DARREN FLANAGAN; ELENA
FLANAGAN; DEBORAH DIXON; DERIC
REES; CEONDA REES; DESIREE
CARLSON; DESIRAE WARREN;
ELIZABETH KOMMER; ERIN DOYLE;
ESPERENZA ELLIS; FARRAH
WILLIAMS; GENA PATTERSON;
GLORIA CRUZ; HEATHER GOSS;
HEATHER PUCKETT; JACQUELYNN
MARTINEZ; JAMIE JOHNSON; JAMIEE
GILSON; JENNI GOLDMAN; JENNIFER
ARTZ; JENNIFER THOMAS; JENNY
SCULLY; JESSICA COLLIER; JESSICA
HAMPEL; JESSICA PERKINS; JESSICA
RODRIGUEZ; JESSICA TAYLOR; JODI
SHAFFER; JOHN DOE; KATHERINE
WHITTINGTON; KAYLA SHOCKLEY;
KIANA HUTCHINS; KIMBERLY
MARTIN; KJELLSI MEINECKE; KRISTA
GAUTHIER; ANGELA SAWYERS;
JESSICA SPRINGBORN; KRYSTLE
KIRK; LORI TAYLOR; MARIA ORTIZ;
MARIJHA HAMAWI; MEGHAN LARA;
MECHELLE GAUTHIER; MELANIE
MASSEY; MELBA ALEXANDER;
MELISSA AMBROSIO; MUSETTE
CHANCEY; NAOMI WRIGHT; NICHOLE
TINDALL; NICOLE TUTTLE; NIOLA
LECHUGA; PAULA WATSON; PENNY
MARTIN; QUINCY WEATHERWAX;

**RACHEL WOOD; REANNAN HOWELL;
REBECCA GOFORTH; ROXIE
WHITLEY; CHRIS DENSON; DIANE
DENSON; JAMES HOLLAND; TERI
HOLLAND; SALLY PETERSON;
SAMANTHA DEMARO; SAMANTHA
MCANANY; SANDRA ATKINSON;
SHANNON HUNT; SHELBY L. BRANT;
SHELLEY WHITTAKER; SHILO
SHEWMAKE; TAYLOR BROOKE
UNDERWOOD; TYLER M. ROACH;
WALTER SALMONS; VIRGINIA
SALMONS; WAIKEISHA RICHARDSON;
WENDY STEWART; W.E., by and through
her guardian and next friend, PAMELA
OSBORNE; PAMELA OSBORNE;
AMANDA HANLON; AMY GARDNER,**

            **Defendants.**

## COMPLAINT FOR INJUNCTIVE RELIEF

Purdue Pharma L.P. ("**Purdue Pharma**") and certain other of the debtors ("**Debtors**")[2]

in the above-captioned chapter 11 cases that are defendants in over 2,625 pending civil actions in

state and federal courts around the country ("**Pending Actions**") and plaintiffs in this adversary

proceeding allege for their Complaint, upon knowledge of their own acts and upon information

and belief as to other matters, as follows:

## NATURE OF THE ACTION AND THE NEED FOR RELIEF

1.      This is an adversary proceeding brought pursuant to Rules 7001(7) and 7065 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 105 of title 11

---

[2] Not all of the Debtors have been named as defendants in the Pending Actions, as defined
below.  Those that have been named as defendants include:  Purdue Pharma L.P.; Purdue Pharma
Inc.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Purdue Transdermal
Technologies L.P.; Purdue Pharmaceutical Products L.P.; Purdue Pharma of Puerto Rico;
Rhodes Pharmaceuticals L.P.; Rhodes Technologies; and Avrio Health L.P. (formerly known as
Purdue Products L.P.).  For ease of reference, this Complaint refers to these as the Debtors.

of the United States Code (the "**Bankruptcy Code**") to: (i) enjoin the governmental defendants in this adversary proceeding ("**Governmental Defendants**") from the commencement or continuation of their active judicial, administrative, or other actions or proceedings against the Debtors that were or could have been commenced before the commencement of this case (the "**Governmental Actions**"),[3] which are identified in <u>Exhibit A</u> to this Complaint, as well as the commencement or continuation of any other actions against the Debtors alleging substantially similar facts or causes of action as those alleged in the Governmental Actions, if not otherwise subject to the automatic stay imposed by section 362 of the Bankruptcy Code, for a period of 270 days from the issuance of the injunction; and (ii) enjoin the Governmental Defendants and the private defendants ("**Private Defendants**") in this adversary proceeding from the commencement or continuation of their active judicial, administrative, or other actions or proceedings, identified in <u>Exhibit B</u> to this Complaint, and the commencement or continuation of other actions alleging substantially similar facts or causes of action as those alleged in the actions identified in <u>Exhibit A</u> or <u>Exhibit B</u> to this Complaint, against former or current (a) owners (including any trusts and their respective trustees and beneficiaries), (b) directors, (c) officers, (d) employees, and (e) associated entities of the Debtors that were or could have been commenced before the commencement of the case ("**Related Parties**," and the claims against them described in this paragraph, the "**Related Party Claims**"), if not otherwise subject to the automatic stay imposed by section 362 of the Bankruptcy Code, for a period of 270 days from the issuance of the injunction.

---

[3] Solely to preserve judicial and estate resources, the Debtors do not, through this adversary proceeding, seek a stay of Pending Actions against them or the Related Parties that are not currently active.

2.      Unless stayed, the Pending Actions, identified in <u>Exhibit C</u> to this Complaint, will eviscerate the fundamental goals of these bankruptcy cases—and of the Bankruptcy Code itself. As long as the Pending Actions are actively prosecuted, the value of the estates will continue to be rapidly eroded by the staggering direct and indirect costs of litigation, as Purdue Pharma, the Debtors' main operating entity, spends an average of over **$2 million per week** in legal and professional costs directly related to defending the Pending Actions, and another $3 million per week in legal and professional fees—the bulk of which are related to the Pending Actions, governmental investigations, and the financial pressure resulting therefrom.  And that is just the hard costs.  The endless, relentless pressure on the business and its employees is equally material.  As long as pursuit of the Pending Actions fosters a race to the courthouse in which plaintiffs attempt ever-more creative ways to jump ahead of one another, claims against the estates will proceed by the luck of the draw instead of fairly and equitably under the principles of the Bankruptcy Code.

3.      The Bankruptcy Code provides for stays of litigation to avoid precisely this inequitable and value-destroying dynamic.  In the wide range of situations to which it applies, the automatic stay provided by section 362(a) of the Code allows "the bankruptcy court to centralize all disputes concerning property of the debtor's estate in bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990); *see also* 11 U.S.C. § 362(a).  And section 105(a) of the Code empowers this Court to stay actions that will frustrate a successful reorganization even if those actions are not automatically stayed by section 362—or if the application of section 362 is unclear or disputed.

4.      The Debtors therefore respectfully request that the Court issue the requested injunctions.  To be clear, the Debtors in no way concede that the Governmental Actions fall within the limited "police power" exception to the automatic stay of 11 U.S.C. § 362(b)(4), or that none of the Related Party Claims are subject to the automatic stay.  But, because the vast majority of plaintiffs in the Pending Actions (over 85% by number) are governmental entities, and because the scope of Pending Actions is so vast and the stakes to the Debtors are so high, the Debtors cannot risk a case-by-case or claim-by-claim litigation of the scope of the automatic stay, any exceptions thereto, and any lift-stay motions that may be filed—in hundreds of separate cases.  Instead, the Debtors ask that this Court stay the tidal wave of litigation that will drown the Debtors and most certainly frustrate their successful reorganization.  Indeed, this is a paradigmatic case for a section 105(a) injunction, even if the automatic stay does not apply.

5.      The standard for such an injunction is amply met here.  First, the Debtors have a reasonable likelihood of a successful reorganization—if (and likely only if) granted the requested pause of the Pending Actions.  The Debtors have already made great strides towards a successful reorganization through the agreement in principle between the Debtors and the Debtors' ultimate owners (trusts for the benefit of members of the Sackler families ("**Sackler Families**")), on the one hand, and 24 state attorneys general, analogous officials from five U.S. territories, and the court-appointed Plaintiffs' Executive Committee ("**PEC**") and Co-Lead Counsel in the federal multidistrict litigation pending in Ohio ("**Ohio MDL**"), on the other hand, to completely resolve the litigation ("**Settlement Structure**").  Although there are certainly open points to be further refined and resolved, if the Debtors can successfully translate the Settlement Structure into the core of a confirmed plan, billions of dollars of cash and critical resources from the Debtors would be made available to the American people to address the opioid crisis, and the Debtors'

27

intellectual property, accumulated expertise, knowledge, and manufacturing capacity would be put to essential public uses.

6.      Second, absent a stay of the Pending Actions, the Debtors—and their prospects of successful reorganization—will suffer crushing and irreparable injury.  The Debtors' assets and dwindling cash balance will continue to be consumed by legal fees.  The Debtors' management will be forced to dedicate ever-increasing time and effort to defending the Pending Actions rather than operating the business to maximize the value of the Debtors' estates.  The actions against Related Parties will further consume the Debtors' resources, distract the Debtors' management, and threaten the billions of dollars of Related Party contributions that are a keystone of the Settlement Structure.  And the Settlement Structure—as well as any concept of equitable distribution among like creditors—will be further undermined at every turn by plaintiffs' endless intramural jockeying for leverage and races to the courthouse.  Every party in interest—whether supporting the Settlement Structure, opposing it, or on the fence—will lose if this value-destroying and inequitable dynamic continues.

7.      Third, there is little harm caused by granting the requested relief.  While there may be a temporary delay, the Governmental Defendants' ability to underline enforce any money judgment is unquestionably stayed by section 362 of the Bankruptcy Code.  Furthermore, the Debtors will request that this Court enjoin the underline Debtors to enforce their commitment to refrain from engaging in key aspects of the conduct implicated in the Governmental Actions ("**Voluntary Injunction**").  Finally, and perhaps most importantly under these circumstances, it is clearly in the public interest to halt these actions.  The Settlement Structure, and the collective process ensuring equality and finality provided by these chapter 11 cases, present a unique opportunity to

benefit millions of Americans in need.  Without this injunction, that opportunity may be lost and billions of dollars in value—likely for the public itself—destroyed for the benefit of no one.

8.      Because the equities weigh in favor of staying the actions, a stay is warranted in the interest of justice, and this Court should grant the requested injunctive relief.

## JURISDICTION AND VENUE

9.      This adversary proceeding arises in and relates to the Debtors' cases pending before this Court under chapter 11 of the Bankruptcy Code.

10.     The Court has jurisdiction to consider this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This Court has subject matter jurisdiction over the claims against the Related Parties pursuant to 28 U.S.C. §§ 157 and 1334.

11.     This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

13.     The Debtors are pharmaceutical companies.  They manufacture, among other things, FDA-approved, abuse-deterrent, opioid medications, including OxyContin, indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.  The Debtors are also

developing, among other things, two opioid overdose rescue medications and one opioid
addiction treatment medication.

14.      Purdue Pharma is the main operating entity for the Debtors' business.  Purdue
Pharma is a limited partnership that is managed and operated by its general partner, Purdue
Pharma Inc. ("**PPI**"), and is governed by PPI's Board of Directors.  Purdue Pharma and its
subsidiaries are ultimately owned by various trusts for the benefit of members of the Sackler
Families.

15.      Although not named parties in this adversary proceeding, the Related Parties are
former or current (a) directors, (b) officers, (c) employees, (d) associated entities, and/or (e)
owners (including any trusts and their respective trustees and beneficiaries) of the Debtors.  They
include, among others, Purdue Pharma's current CEO, two current directors, and members of the
Sackler Families.  The Related Parties are listed in Exhibit B of the Complaint and include: The
Purdue Frederick Company Inc.; The P.F. Laboratories Inc.; Purdue Pharma Technologies Inc.;
PLP Associates Holdings L.P.; PLP Associates Holdings Inc.; BR Holdings Associates L.P.; BR
Holdings Associates Inc.; Rosebay Medical Company L.P.; Rosebay Medical Company, Inc.;
Beacon Company; PRA Holdings Inc.; Pharmaceutical Research Associates Inc.; Purdue
Holdings L.P.; Rhodes Pharmaceuticals Inc.; Rhodes Technologies Inc.; Coventry Technologies
L.P.; MNP Consulting Limited; Richard S. Sackler; Jonathan D. Sackler; Mortimer D.A.
Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; Beverly Sackler; Theresa Sackler; David A.
Sackler; Estate of Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of
Members of the Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S.
Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964;
Beverly Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust

Agreement Dated November 5, 1974; Paulo Costa; Cecil Pickett; Ralph Snyderman; Judith

Lewent; Craig Landau; Mark Timney; Stuart D. Baker; Frank Peter Boer; John Stewart; Russell

Gasdia; Marv Kelly; Shelli Liston; Heather Weaver; Doug Powers; Lori Fuller; Rodney Davis;

Brandon Worley; Donald Leathers; Wendy Kay; Michael Madden; LeAvis Sullivan; Jeffrey

Ward; Beth Taylor; Leigh Varnadore; Paul Kitchin; Mark Waldrop; Mark Radcliffe; Mark Ross;

Patty Carnes; Carol Debord; Jeff Waugh; Shane Cook; James David Haddox; Aida Maxsam;

Tessa Rios; Amy K. Thompson; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca

Sterling; Vanessa Weatherspoon; Chris Hargrove; Brandon Hassenfuss; Joe Read; and Andrew

T. Stokes.

16.    The Defendants in this adversary proceeding are certain plaintiffs in the Pending

Actions.  As reflected in Exhibits A and B to the Complaint, the vast majority of defendants are

Governmental Defendants.  The Defendants also include the Private Defendants who have

asserted claims against certain of the Debtors (which are unquestionably subject to the automatic

stay) and the Related Parties (which are not).  The Defendants are listed in the caption to this

complaint and Exhibits A and B of the Complaint.

## FACTUAL BACKGROUND

### The Pending Actions and Bankruptcy Petitions

17.    The Debtors have been named in more than 2,625 lawsuits filed throughout the

state and federal court systems.  The lawsuits—i.e., the Pending Actions—generally allege that

the Debtors acted improperly in the marketing and sale of opioid medications, and seek monetary

damages based on public nuisance, consumer protection laws, unjust enrichment, false claims

acts, and similar claims.  Although some of the proceedings also seek injunctive relief against the

Debtors, requests for such relief are ancillary to the monetary claims in the Governmental Actions—which overwhelmingly allege <u>past</u> misconduct.

18.    The vast majority of the Pending Actions—over 85% by number—involve governmental entities as plaintiffs.  Approximately 2,200 of the actions have been consolidated in a multidistrict litigation pending in the United States District Court for the Northern District of Ohio.  There are also actions pending against the Debtors and Related Parties in state courts around the country, as well as in Puerto Rico.  The state court actions include those asserted by the attorneys general of 46 states; these are not part of the MDL.

19.    The Debtors and Related Parties also face actions in state and federal courts brought by private parties that assert various claims for personal injury, wrongful death, and economic damages (the "**Private Actions**").  While these actions have without question been automatically stayed as against the Debtors, certain of the Private Actions also assert claims against the Related Parties, who are not Debtors.

20.    Outside of the United States, the Debtors and the Related Parties are also named in 13 actions in Canada (the "**Canadian Actions**").  The Canadian Actions are brought on behalf of both private individuals and governmental entities and raise claims predicated on similar allegations and causes of action as the Pending Actions in the United States.[4]

---

[4] The Debtors do not seek an injunction regarding the Canadian Actions.  However, Purdue Pharma will seek recognition of these chapter 11 proceedings in Canada under the *Companies' Creditors Arrangement Act* from the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Proceeding**"), which will result in a stay against the Debtors if granted.  The Debtors will also seek a stay of the claims against the Related Parties in the Canadian Court such that the Canadian Proceeding is coordinated with these proceedings and all claims are resolved in an efficient and equitable manner.

21.     Substantially all of the Pending Actions name Purdue Pharma as a defendant, and the vast majority also name PPI and the Purdue Frederick Company, Inc.  A growing number of the Pending Actions name as defendants other Debtors and/or other Related Parties.

**Impact of Pending Actions on the Debtors' Resources**

22.     Irrespective of the merits, continued litigation of the Pending Actions in disparate fora on the scale faced by the Debtors will only deplete estate assets, misdirect management attention, and severely harm the Debtors' businesses.

23.     The costs of litigating thousands of actions across the country are immense. Purdue Pharma, the Debtors' main operating entity, is projected to spend approximately $263 million on legal and related professional costs in 2019—the bulk of which are related to the Pending Actions and the financial pressure resulting therefrom.  Indeed, in the first half of 2019, Purdue Pharma spent approximately $63 million for legal representation, expert fees, and other expenses directly related to litigating the Pending Actions, a number that is forecast to approach $121 million by year-end—a rate of over $2 million per week.

24.     Legal expenses are, by far, Purdue's largest operating expenses.  As the number of lawsuits nearing dispositive motion practice and trial increases in 2020 and beyond, there is no reason to think that litigation expenses directly connected to the Pending Actions will decrease. Indeed, Purdue Pharma's legal expenses year-over-year have increased dramatically since 2015, when the Pending Actions against the Debtors numbered only a handful.  As of September 14, 2019, the Debtors were scheduled to take or defend 60 depositions, file as many as 22 dispositive motions, and participate in five hearings on dispositive motions in five different courts across the country through October 31, 2019.

25.      In addition to financial costs, the Pending Actions have been disruptive to the Debtors' day-to-day conduct of business.  The time and energy required to monitor, manage, and direct the Debtors' response to the Pending Actions is enormous.  Many senior employees have been forced to devote significant time and efforts to litigation-related matters, and considerable resources have been expended tending to an extremely large volume of discovery demands.  There have been many depositions of the Debtors' present or former directors, officers, or employees in the Pending Actions, which have in turn required current management and employees to sit through many more hours of preparation time.  Additionally, the Debtors have been responding to interrogatories, requests for the production of documents, and requests for admission in actions all throughout the country, as well as extensive document discovery.  Indeed, the Debtors have produced millions of documents in connection with the Pending Actions, including millions of documents in the MDL alone, with much more discovery yet to come.

26.      The Pending Actions have also caused or exacerbated various operational challenges and exacted significant human capital costs.  The Pending Actions have created and/or contributed to an environment of uncertainty and doubt that has both frustrated the Debtors' efforts to retain talent and made recruiting new talent difficult.  The Debtors have already suffered several key resignations, complicating the Debtors ability to operate the business.  Further, negative public sentiment surrounding the Pending Actions has complicated the Debtors' business operations; for example, several financial intuitions have refused to work with Purdue, requiring management to spend precious time securing replacement vendors.

27.      Further, sales of opioid medications, which accounted for approximately 92% of Purdue Pharma's revenue in 2018, have decreased significantly.  In 2010, Purdue Pharma

generated $2.2 billion of revenue from opioid-related products.  By 2018, that figure had

dropped precipitously to $975 million and it is forecasted to be just $644 million for 2019.  This

decline in revenue will only impede the Debtors' ability to preserve estate value in the face of

massive legal costs associated with the Pending Actions.  This is particularly acute in view of the

fact that products in Purdue Pharma's new product pipeline (assuming they receive FDA

approval) are not expected to generate revenue before 2022.

**The Settlement Structure**

28.     The Debtors spent the better part of the last year attempting to negotiate a global

resolution of the Pending Actions.  These efforts culminated in an agreement in principal with

critical and important constituents on a structure to resolve the Pending Actions that can be

effectuated only through these chapter 11 proceedings.

29.     This Settlement Structure would maximize the value of the Debtors' estates and

result in an unprecedented transfer of value to the American people.  Under the agreed-upon

Settlement Structure, as part of a resolution of the litigation:  (1) Purdue's existing shareholders

will relinquish all of their equity interests in the Debtors and consent to the transfer of all of the

Debtors' assets to a trust or similar post-emergence structure for the benefit of claimants and the

U.S. public, "free and clear" of Purdue's liabilities to the fullest extent permitted by law;

(2) Purdue's existing shareholders will engage in a sale process for their ex-U.S. pharmaceutical

companies; and (3) Purdue's existing shareholders will contribute an additional $3 billion over

seven years (in addition to 100% of the value of all 24 Debtors), with the hope of substantial

further contemplated contributions from the sales of their ex-U.S. pharmaceutical businesses.

30.     This Settlement Structure has the strong support of key constituencies that

represent a sizable portion of this country's citizens.  These include no fewer than 24 state

attorneys general and analogous officials from five U.S. territories. In addition, the Settlement

Structure has the backing of the Plaintiffs' Executive Committee (PEC) and Co-Lead Counsel in

the Ohio MDL. The PEC is the court-appointed claimants' leadership team in the Ohio MDL

that is charged with coordinating and organizing the various plaintiffs and litigation tracks.[5] It

comprises attorneys at law firms that collectively represent over 1,000 counties, municipalities

(including cities, towns, and villages), Native American tribes, individuals, and third-party

payors. Among these plaintiffs are some of the nation's most populous cities and counties that,

together with the supporting states and territories, comprise well over half of the country's

population.

**The Bankruptcy Proceeding**

31.     The Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code in this Court on September 15, 2019 (the "**Petition Date**").

32.     The Debtors continue to operate their businesses and manage their properties as

debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors

also filed a motion requesting joint administration of these chapter 11 cases under Bankruptcy

Rule 1015(b), which was granted on September 17, 2019.

33.     Through the Settlement Structure, and with the support of the aforementioned key

constituencies, the Debtors seek to construct a confirmable plan of reorganization that conserves

the assets of the Debtors' estates so that billions of dollars in value and vital opioid overdose

---

[5] *See* Renewed Mot. to Approve Co-Leads, Co-Liaisons, and Executive Committee, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (N.D. Ohio Jan. 3, 2018) (Dkt. No. 34); Marginal Entry Order Granting Mot. to Approve Co-Leads, Co-Liaisons, and Executive Committee, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (N.D. Ohio Jan. 4, 2018) (Dkt. No. 37).

rescue medications can be delivered to communities across the country impacted by the opioid crisis.

## CLAIMS FOR RELIEF

### COUNT ONE
### (Preliminary Injunction Staying the Governmental Actions against the Debtors)

34.     The Debtors repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

35.     The Debtors seek a preliminary injunction to stay the Governmental Actions against the Debtors under section 105(a) of the Bankruptcy Code for a period of 270 days from the issuance of the injunction.

36.     Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  It is well settled that the Court, under section 105(a), may enjoin suits that might impede the reorganization process.

37.     Accordingly, although the Debtors in no way concede and do not believe that the police power exception to the automatic stay applies, section 105(a) permits the issuance of injunctions to stay governmental actions that fall within that exception, just as it authorizes the Court to enjoin suits against non-debtors that are not subject to the automatic stay.

38.     In assessing whether such a preliminary injunction under section 105(a) is appropriate, courts look to the traditional requirements for a preliminary injunction under Federal Rule of Civil Procedure 65, modified to fit the bankruptcy context:  (1) whether there is a reasonable likelihood of successful reorganization; (2) whether there is imminent irreparable harm to the estate and the bankruptcy process in the absence of an injunction; (3) whether the

balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction.

39.     There is a reasonable likelihood that the Debtors will successfully accomplish the goal of these chapter 11 cases:  to halt the drain on the Debtors' estates; centralize all of the claims against the Debtors; determine whether and to what extent they are liable, if required; and construct a confirmable plan of reorganization to implement the Settlement Structure.  By providing a collective process that ensures equal treatment of similarly situated claimants, and the finality that is an essential part of any comprehensive settlement, bankruptcy will help structure negotiations and enable a comprehensive and equitable resolution.  The proposal of the Debtors' ultimate owners to, among other things, relinquish all of their equity interests in the Debtors and consent to the transfer of all of the Debtors' assets to a trust or similar post-emergence structure for the benefit of claimants and the U.S. public has laid the foundation for the success of these proceedings.

40.     Still, if some claimants insist on pursuing their own claims to the detriment of all, decades of experience demonstrate that bankruptcy is a proven and efficient vehicle to successfully, rationally, and equitably resolve such mass tort liability.  The present request for an injunction is the first step in rationalizing the claims against the Debtors.  Further, bankruptcy will allow for the efficient resolution of claims via:  (1) the ability to implement coordinated and cost-effective discovery protocols; (2) the use of omnibus objections and consolidated hearings or trials to allow or disallow claims involving common questions of law or fact, of which there are many (including, among others, standing, causation, and preemption); and (3) the ability to craft flexible and efficient mechanisms for valuating claims through claims estimation.  Unlike the current status quo, bankruptcy provides the necessary mechanisms to allow the claims against

the Debtors to be resolved in an efficient and uniform manner that avoids duplication, waste, and the inequities of disparate outcomes.

41.     Absent an order enjoining the Governmental Defendants from continued prosecution of their claims as against the Debtors, the Debtors' estates and the Debtors' reorganization efforts will suffer imminent irreparable harm.  If the Pending Actions continue as they had before the Debtors' bankruptcy filings, the Settlement Structure will be irretrievably undermined as the Debtors' estates continue to be consumed by legal fees and the plaintiffs' endless races to courthouses around the country continues.  As long as some parties remain able to pursue litigation in disparate fora—rather than before this Court—even those plaintiff constituencies that support the Settlement Structure face a paradigmatic "prisoner's dilemma." They will face the choice of litigating in courts across the country to avoid being left behind as others pursue litigation, even though that strategy depletes the value of the estates.

42.     The costs associated with the Pending Actions are enormous, and estate value is irretrievably lost by the day.  Unless the Governmental Actions are stayed, many millions of critical dollars will continue to be squandered on legal costs and associated expenses rather than being preserved for the greater benefit and being put to productive and potentially life-saving use by furthering the development and distribution of opioid overdose treatments.

43.     In addition, if the Governmental Actions were to continue, it is almost certain that the Debtors' leadership and employees would be forced to attend hearings and trials, prepare for and participate in depositions, and assist in responding to a wide array of time-consuming written discovery devices—thereby diverting their attention from business matters, maximizing estate value, and from achieving a global resolution of the Pending Actions in these chapter 11 proceedings, for the benefit of all estate stakeholders.

44.     The balance of harms weighs decidedly in favor of enjoining the Governmental

Actions against the Debtors.  The Governmental Actions threaten irreparable harm to the

reorganization effort and estates, while the Governmental Defendants would receive no real

benefit in proceeding to judgment in piecemeal litigation.  The continued prosecution of the

Governmental Actions would only wastefully deplete the Debtors' assets and frustrate a global

resolution.  Indeed, even if these actions were litigated to conclusion, the Governmental

Defendants would be permitted only to reduce their money claims to judgment, as they cannot

<u>enforce</u> any monetary judgments against the Debtors.  Thus, the expenditure of hundreds of

millions of dollars in attorneys' fees and the uncertainty and distraction of trials would win

nothing more than proofs of claim to be filed and addressed in this Court.  Moreover, to the

extent the actions implicate non-monetary concerns, those will be addressed by the Voluntary

Injunction.  In addition, even were the Governmental Defendants theoretically prejudiced by a

stay, the time-limited duration of the stay requested here in the first instance—270 days—would

significantly ameliorate that prejudice.

45.     The public interest weighs heavily in favor or granting the requested stay.  The

requested stay would advance the prospects of a global, orderly, equitable (and hopefully)

negotiated resolution of the Debtors' potential liability while stemming the enormous drain on

party and judicial resources caused by a disjointed prosecution of the Pending Actions.

Moreover, the Settlement Structure would ensure that billions of dollars in value, along with

every dollar spent litigating these claims during the pendency of these bankruptcy proceedings, is

a dollar that will be preserved for the American public or other potential estate stakeholders,

including the plaintiffs in the Pending Actions.

46.     The public interest is also served through the centralized resolution of claims

against the Debtors.

47.     An injunction staying the Governmental Actions against the Debtors is therefore

appropriate.

48.     No prior application for the relief requested herein has been made to this Court or

any other court.

## COUNT TWO
### (Preliminary Injunction Staying Actions Against Related Parties)

49.     The Debtors repeat and re-allege the allegations contained in the preceding

paragraphs of this Complaint as if fully set forth herein.

50.     The Debtors seek a preliminary injunction to stay the Related Party Claims under

section 105(a) of the Bankruptcy Code for a period of 270 days from the issuance of the

injunction.

51.     This Court has the jurisdiction and authority to enjoin the Related Party Claims

pursuant to section 105(a) because the actions will have a direct and substantial impact on the

Debtors' estates.  The Related Party Claims are based on conduct substantially identical to, and

inextricably intertwined with, that alleged to have been engaged in by the Debtors and could give

rise to potential future indemnification claims against the Debtors or otherwise diminish shared

insurance coverage.

52.     As explained above, it is likely that there will be a successful reorganization.  A

stay of the Related Party Claims is essential to this success.  There would be no Settlement

Structure without the existing shareholders' willingness to agree in principle, and as part of a

global resolution, to voluntarily relinquish all of their equity interests in the Debtors, to consent

to the transfer of all of the Debtors' assets to a trust or similar post-emergence structure for the

benefit of claimants and the U.S. public, "free and clear" of the Debtors' liabilities to the fullest

extent permitted by law, and to contribute $3 billion over seven years in additional funds, with

the hope of substantial further contemplated contributions from the sales of their ex-U.S.

pharmaceutical businesses.  This foundation for success should not be undermined by allowing

the Related Party Claims to deplete estate assets and to threaten the Settlement Structure.

53.     Absent a stay of the claims against the Related Parties, there would be irreparable

harm to the Debtors' prospects for reorganization and the estates.  The Related Party Claims are

based on conduct substantially identical to, and inextricably intertwined with, that alleged to

have been engaged in by the Debtors.  Indeed, many of the Related Party Claims do not

distinguish between the actions of the Debtors or Related Parties, but instead assert that both sets

of defendants are jointly liable for the same alleged conduct, under the same theories.  Because

the claims against the Related Parties are inextricably linked to those very same claims made

against the Debtors, absent a stay, the Debtors will be forced to bear the monetary and non-

monetary costs of participation in those actions—even if those cases are stayed with respect to

the Debtors.  Current directors, officers, and employees of the Debtors will almost certainly be

required to spend time overseeing and assisting in protecting the Debtors' interests and

responding to discovery requests, all of which diminishes the Debtors' resources and diverts

critical management focus and attention from the all-important task of achieving consensual

resolution of these chapter 11 proceedings.  Moreover, because the Related Party Claims are

inextricably intertwined with claims against the Debtors, there is a material risk that there would

be findings of law or fact with respect to the Related Party Claims that would, at a minimum,

create an adverse record against the Debtors, and may embolden plaintiffs to argue that the

findings against the Related Parties should have a collateral estoppel effect.

54.     Commencement or continued prosecution of the Related Party Claims against the Debtors' existing shareholders and their affiliates risks toppling the Settlement Structure and depriving the Debtors' estates of billions of dollars of value.  If forced to bear the risk of adverse money judgments, the Related Parties may be unwilling—or unable—to make the billions of dollars of contributions contemplated by the Settlement Structure.  If any judgment on a Related Party Claim were enforced, value that would otherwise be distributed fairly and equitably in these proceedings would be stripped for the benefit of the plaintiff that won the race to judgment. This, in turn, would only diminish the value of potential estate claims that vested in the Debtors as of the petitions—such as fraudulent conveyance, alter ego, and veil piercing claims—and be antithetical to the goals of these chapter 11 proceedings.

55.     The balance of the hardships favors a stay, given that the irreparable harm to the Debtors outweighs any potential harm.  That the Defendants may have to wait to prosecute their cases does not outweigh the potential harm to the Debtors.  Indeed, staying the claims against Related Parties would preserve the estates' assets and facilitate an equitable resolution of claims in the bankruptcy, which is to the benefit of all stakeholders.

56.     Finally, staying the claims against Related Parties would be in the public interest, given the strong interest in allowing the Debtors to reorganize and resolve their liabilities through a centralized and rational resolution of claims in bankruptcy as well as the public interest in achieving such a reorganization through the consensual resolution proposed in the Settlement Structure.

57.     An injunction staying the Related Party Claims for a period of 270 days from the issuance of the injunction is therefore appropriate.

58.    No prior application for the relief requested herein has been made to this Court or any other court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs respectfully request that this Court enter judgment in their favor

and request relief as follows:

(a) enjoin the Governmental Defendants from the commencement or continuation of the

Governmental Actions, which are identified in Exhibit A to this Complaint, as well as the

commencement or continuation of any other actions against the Debtors alleging

substantially similar facts or causes of action as those alleged in the Governmental

Actions, if not otherwise subject to the automatic stay imposed by section 362 of the

Bankruptcy Code, for a period of 270 days from the issuance of the injunction;

(b) enjoin the Governmental Defendants and Private Defendants in this adversary proceeding

from commencement or continuation of the Related Party Claims, if not otherwise

subject to the automatic stay imposed by section 362 of the Bankruptcy Code, for a

period of 270 days from the issuance of the injunction;

(c) entry of the Voluntary Injunction; and

(d) all such other relief as the Court finds just and equitable.

Dated:    September 18, 2019
          New York, New York

By: /s/ Benjamin S. Kaminetzky

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Proposed Counsel to the Debtors*
*and Debtors in Possession*