**NEW YORK STATE OF OPPORTUNITY.** | **Department of Financial Services**

**ANDREW M. CUOMO**
Governor

**LINDA A. LACEWELL**
Superintendent

September 23, 2019

*Via ECF and Overnight Mail*

Honorable Robert Drain
United States Bankruptcy Judge
United State Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

      Re:    Requested Payments to Purdue Pharma Employees
               *In Re Purdue Pharma L.P., et al.,* Case No.: 19-23649 (RDD)

Dear Judge Drain:

      As the Superintendent of the Department of Financial Services (the "Department"), I am responsible for regulating the insurance industry in the State of New York, including the commercial health plans upon which millions of New Yorkers rely for their health insurance coverage. In that regulatory role, I respectfully write to express the Department's views on whether employees of Purdue Pharma, L.P. and related entities should be paid $34 million in bonuses as requested by the debtors. I write to give voice to the interests of health insurance consumers in the State of New York.

      Pursuant to the New York Insurance Law and the New York Financial Services Law, the Department is the sole insurance regulator in the State of New York, including with respect to health insurance plans through which more than five million New Yorkers obtain their health care coverage. Among other things, the Department licenses insurers, conducts examinations, and approves insurance rates. Moreover, as Superintendent, I have the authority to conduct investigations, to bring enforcement proceedings, and to levy monetary penalties against parties who have engaged in wrongdoing in violation of the relevant laws and regulations. Under Section 403 of the New York Insurance Law, for example, I am authorized to levy civil penalties upon any person who committed a fraudulent insurance act, as defined in Section 176.05 of the New York Penal Law, up to $5,000 and the amount of the claim — per fraudulent claim.

      The Department is currently investigating whether various entities involved in the opioid industry, including opioid manufacturers such as Purdue Pharma, were engaged in wrongdoing that resulted in harm being suffered by health insurance consumers in New York. Though our inquiry is not yet complete, it appears that various entities made intentional misrepresentations about the safety of opioids, over many years, and that those misrepresentations have helped cause the terrible opioid crisis we are facing as a nation. More specifically, those misrepresentations appear to have caused a huge volume of unnecessary opioid prescriptions,

thereby costing the insurance companies (and ultimately, consumers) not only tremendous sums in fraudulent prescription claims but also in follow-on claims for opioid-related treatment.

This egregious behavior of some in the opioid industry has taken a terrible toll in human terms, as has been laid out in grave detail by others. It has also taken a tremendous financial toll on the more than five million New York health insurance consumers who have been forced to pay ever-increasing premiums. The cost of that coverage has dramatically risen, in part as the direct result of increasing opioid-related claims. The Department estimates that New York consumers have overpaid an estimated $2 billion in insurance premiums over the past 10 years due to the costs associated with opioid manufacturers and others misrepresenting the safety and efficacy of opioids. My primary job is to protect those consumers, and I intend to do everything I can within the regulatory framework to recover as much of that money for New Yorkers as possible.

It is in this context — in which New York consumers have been defrauded out of nearly $2 billion — that I read about Purdue Pharma's request to Your Honor to allow the payment of $34 million to employees, including as bonuses to employees who have exceeded expectations over the past few years. Not only does the amount appear excessive on its face ($50,000 per employee, on average), but the incentive programs under which these bonuses are to be paid might themselves have contributed to the harm suffered by people all over the country, including to the consumers I am duty bound to protect. Every dollar available should be used to recompense victims, and it would be inequitable, to say the very least, if the amount of the estate left to redress the tremendous harm suffered by those victims was diminished because employees were paid large sums upon exceeding expectations in causing that very harm. I appreciate that you must weigh many interests as you make determinations about the bankruptcy estate. In doing so, I respectfully ask that you weigh the interests of the more than five million New York health insurance consumers who suffered as a result of Purdue Pharma's actions.

The Department is reviewing its options with regard to seeking recovery from Purdue Pharma and related entities in this proceeding. It is entirely possible that the Department will file a claim in this matter, and we reserve our rights to submit a formal objection with respect to the bonus payments before the deadline of October 3, 2019, should that occur. In the meantime, however, in my role as the New York State insurance regulator, I seek to ensure that the interests of New York consumers are considered by the Court. Thank you in advance for your consideration.

Respectfully submitted,

*Linda A. Lacewell*

Linda A. Lacewell, Superintendent
New York State Department of Financial Services

cc:    All Parties (via ECF)