DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF FILING OF REVISED PROPOSED FINAL ORDER AUTHORIZING
(I) PAYMENT OF CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS
AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
RELATED CHECKS AND TRANSFERS**

      **PLEASE TAKE NOTICE** that on September 16, 2019, the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**"), filed the *Motion of Debtors for Entry of*

*Interim and Final Orders Authorizing (I) Payment of Certain Prepetition Claims of Critical*

*Vendors and (II) Financial Institutions to Honor and Process Related Checks and Transfers*

[Docket No. 9] (the "**Motion**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised proposed *Final Order Authorizing (I) Payment of Certain Prepetition Claims of Critical Vendors and (II) Financial Institutions to Honor and Process Related Checks and Transfers* attached hereto as **Exhibit A** (the "**Revised Proposed Order**").

**PLEASE TAKE FURTHER NOTICE** that a comparison between the Revised Proposed Order and order filed with the Motion is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek entry of the Revised Proposed Order at the hearing scheduled for **October 10, 2019, at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma.  You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:    October 8, 2019
          New York, New York

DAVIS POLK & WARDWELL LLP

By:    /s/ *Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## <u>Exhibit A</u>

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.** [1] | **(Jointly Administered)** |

---

### FINAL ORDER AUTHORIZING (I) PAYMENT OF
### CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS
### AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
### RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors

and debtors in possession in these cases (collectively, the "**Debtors**"), pursuant to sections

105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, for entry of an interim order and a final

order (this "**Order**") authorizing, but not directing, the Debtors to pay in the ordinary course of

business prepetition claims of Critical Vendors;[3] and the Court having jurisdiction to consider

the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and

the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding under 28

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

[3] Certain parties may receive payment on account of their prepetition claims pursuant to other motions that have been or may be filed by the Debtors. To the extent that a party receives payment on account of its prepetition claim pursuant to an order approving any such motion, this Order shall not apply to such prepetition claim.

U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided of such request; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and upon the Lowne Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish good and sufficient cause for the relief granted herein, in that such relief provides a material net benefit to the Debtors and their estates and creditors after taking into account the Bankruptcy Code's priority scheme, is a proper exercise of business judgment and is in the best interests of the Debtors, their estates, creditors and all parties in interest; now, therefore,

**IT IS HEREBY ORDERED THAT**

1. The relief requested in the Motion is hereby granted on a final basis as set forth herein.

2. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not directed, in  the reasonable exercise of their business judgment and in consultation with the Official Committee of Unsecured Creditors (the "**Committee**") and the Ad Hoc Committee under its appearance filed at Docket No. 147 (the "**Ad Hoc Committee**") (to the extent and with as much advance notice as is reasonably practicable), to pay some or all of the prepetition claims of the Critical Vendors (the "**Vendor Claims**") in an aggregate amount not to exceed the Critical Vendor Claims Cap, provided that any Vendor Claim payment to a single Critical Vendor may not exceed $750,000 unless the Committee and the Ad Hoc Committee consent, in writing, that such payment may be made.

3.      The Debtors, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), may condition payment of any Vendor Claims upon agreement by the Critical Vendor to continue to supply goods or services to the Debtors on such Critical Vendor's "**Customary Trade Terms**" for a period following the date of the agreement or on other such terms and conditions as are acceptable to the Debtors.    As used herein, "**Customary Trade Terms**" means, with respect to a Critical Vendor, (i) the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, and availability, and other applicable terms and programs), that were most favorable to the Company and in effect between such Critical Vendor and the Company prior to the Petition Date or (ii) such other trade terms as agreed by the Debtors and such Critical Vendor.

4.      As a further condition of receiving payment on a Vendor Claim, the Debtors are authorized, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), to require that such Critical Vendor agree to take whatever action is necessary or appropriate to remove any existing trade liens at such Critical Vendor's sole cost and expense and waive any right to assert a trade lien on account of the paid Vendor Claim.

5.      After the date hereof, the Debtors shall determine, in the ordinary course of business and in consultation with the Committee and the Ad Hoc Committee, which entities are Critical Vendors by considering, among other things, (a) which suppliers were sole source or limited source suppliers, without whom the Debtors could not continue to operate without disruption, (b) which suppliers would be prohibitively expensive to replace, (c) which suppliers

present an unacceptable risk should they cease the provision of truly essential services or supplies, (d) the extent to which suppliers may be able to obtain or have obtained trade liens on assets of the Debtors, (e) whether the suppliers are party to an executory contract with the Debtors that requires the suppliers' ongoing performance pending assumption or rejection under section 365 of the Bankruptcy Code notwithstanding the Debtors' failure to make the prepetition payment, and (f) the extent to which suppliers are beyond the jurisdiction of this Court and can thus, notwithstanding the automatic stay, exercise remedies that would disrupt the Debtors' operations and businesses.

6.      The Debtors shall undertake all appropriate efforts to require Critical Vendors to enter into an agreement (the "**Vendor Agreement**") including provisions substantially in the form attached to the Motion as **Exhibit C**.  The Debtors may, in their sole discretion, negotiate, amend, or modify the form of Vendor Agreement on a case-by-case basis.  The Debtors shall provide the Committee and the Ad Hoc Committee with copies of Vendor Agreements entered into with critical vendors within two (2) business days after execution of the same.

7.      The Debtors are authorized, but not required, to enter into Vendor Agreements when the Debtors determine, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), that it is appropriate to do so in connection with making payments to Critical Vendors.

8.      If the Debtors, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), determine that a Critical Vendor has not complied with the terms and provisions of the Vendor Agreement or has failed to continue to provide Customary Trade Terms

following the date of the agreement, or on such terms as were individually agreed to between the Debtors and such Critical Vendor, the Debtors may terminate a Vendor Agreement, together with the other benefits to the Critical Vendor as contained in this Order, *provided*, *however*, that the Vendor Agreement may be reinstated (x) if such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the Critical Vendor, (y) the underlying default under the Vendor Agreement is fully cured by the Critical Vendor not later than five business days after the date the initial default occurred or (z) the Debtors, in their sole discretion, reach a subsequent agreement with the Critical Vendor.

9.     If a Vendor Agreement is terminated as set forth above, or if a Critical Vendor that has received payment of a prepetition claim later refuses to continue to supply goods or services for the applicable period in compliance with the Vendor Agreement or this Order, then (a) the Debtors may, in their sole discretion, declare that the payment of the creditor's Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor, (b) the creditor shall immediately return such payments in respect of a Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever and (c) the creditor's Vendor Claim shall be reinstated in such an amount so as to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of Vendor Claim had been made.

10.     All Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

11.     The Debtors are authorized, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), and in the exercise of their business judgment, to pay Twenty-Day/Secured Claims in the ordinary course of Debtors' businesses and on such terms as the Debtors deem appropriate.

12.     Payments on account of any Twenty-Day/Secured Claims shall not count against the Critical Vendor Claims Cap.

13.     The Debtors shall maintain a "Critical Vendor Matrix" summarizing (i) the name of each Critical Vendor, (ii) the amount and timing of any Critical Vendor payment, (iii) the amount of the Critical Vendor's claim satisfied by the Critical Vendor payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms.  The Critical Vendor Matrix will be provided on a weekly basis to the U.S. Trustee and professionals for the Committee and  the Ad Hoc Committee; provided that the U.S. Trustee and the professionals for the Committee and the Ad Hoc Committee shall keep the Critical Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone without the prior written consent of the Debtors. The Debtors shall also provide other information that the U.S. Trustee or professionals for the Ad Hoc Committee or the Committee shall reasonably request.

14.     The Debtors' undisputed obligations to LTS Lohmann Therapy Systems Corp. and its related affiliates arising from the shipments of goods under prepetition purchase orders

delivered to and accepted by the Debtors on and after the Petition Date are hereby granted

administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code

as against the Debtor liable for any such order, and the Debtors are authorized, but not directed,

to pay such obligations in the ordinary course of business and consistent with the parties'

customary practices in effect prior to the Petition Date.

15.     All applicable banks and other financial institutions are hereby authorized to

receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests or

automated clearing house transfers evidencing amounts paid by the Debtors under this Order,

whether presented prior to or after the Petition Date to the extent the Debtors have good funds

standing to their credit with such bank or other financial institution.  Such banks and financial

institutions are authorized to rely on representations of the Debtors as to which checks are issued

or authorized to be paid pursuant to this Order without any duty of further inquiry and without

liability for following the Debtors' instructions.

16.     Nothing contained in this Order shall be deemed to constitute a rejection,

assumption or postpetition reaffirmation of any executory contract or to require the Debtors to

make any of the payments or to post any of the deposits authorized herein.

17.     Nothing in this Order or the Motion shall be construed as prejudicing any rights

the Debtors may have to dispute or contest the amount of or basis for any claims against the

Debtors arising in connection with the Vendor Claims.

18.     The Debtors are authorized and empowered to take all actions necessary or

appropriate to implement the relief granted in this Order.

19.     The contents of the Motion and the notice procedures set forth therein are good

and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the

Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

20.    Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, for cause, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

21.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Blackline Against Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-[    ]23649 (RDD) |
| Debtors. [1] | (~~Joint Administration Pending~~Jointly Administered) |

**FINAL ORDER AUTHORIZING (I) PAYMENT OF**
**CERTAIN ~~PRE-PETITION~~PREPETITION CLAIMS OF CRITICAL VENDORS**
**AND (II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS**
**RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors

and debtors in possession in these ~~proceedings~~cases (collectively, the "**Debtors**"), pursuant to

sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, for entry of an interim order and a

final order (this "**Order**") authorizing, but not directing, the Debtors to pay in the ordinary

course of business ~~pre-petition~~prepetition claims of Critical Vendors;[3] and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§

157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

[3] Certain parties may receive payment on account of their prepetition claims pursuant to other motions that have been or may be filed by the Debtors.  To the extent that a party receives payment on account of its prepetition claim pursuant to an order approving any such motion, this Order shall not apply to such prepetition claim.

2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided of such request; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and upon the Lowne Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish justgood and sufficient cause for the relief granted herein; and the Court having determined that the relief granted herein, in that such relief provides a material net benefit to the Debtors and their estates and creditors after taking into account the Bankruptcy Code's priority scheme, is a proper exercise of business judgment and is in the best interests of the Debtors, their estates, creditors and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;now, therefore,

**IT IS HEREBY ORDERED THAT**

1.      The relief requested in the Motion is hereby granted on a final basis as set forth herein.

2.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are authorized, but not directed, in  the reasonable exercise of their business judgment and in consultation with the Official Committee of Unsecured Creditors (the "**Committee**") and the Ad Hoc Committee under its appearance filed at Docket No. 147 (the "**Ad Hoc Committee**") (to the extent and with as much advance notice as is reasonably practicable), to pay some or all of the pre-petitionprepetition claims of the Critical Vendors (the "**Vendor Claims**") in an aggregate

amount not to exceed the Critical Vendor Claims Cap, provided that any Vendor Claim payment to a single Critical Vendor may not exceed $750,000 unless the Committee and the Ad Hoc Committee consent, in writing, that such payment may be made.

3.      The Debtors, in their sole discretion, and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), may condition payment of any Vendor Claims upon agreement by the Critical Vendor to continue to supply goods or services to the Debtors on such Critical Vendor's "**Customary Trade Terms**" for a period following the date of the agreement or on other such terms and conditions as are acceptable to the Debtors.     As used herein, "**Customary Trade Terms**" means, with respect to a Critical Vendor, (i) the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, and availability, and other applicable terms and programs), that were most favorable to the Company and in effect between such Critical Vendor and the Company prior to the Petition Date or (ii) such other trade terms as agreed by the Debtors and such Critical Vendor.

4.      As a further condition of receiving payment on a Vendor Claim, the Debtors are authorized, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), to require that such Critical Vendor agree to take whatever action is necessary or appropriate to remove any existing trade liens at such Critical Vendor's sole cost and expense and waive any right to assert a trade lien on account of the paid Vendor Claim.

5.      After the date hereof, the Debtors shall determine, in the ordinary course of business and in consultation with the Committee and the Ad Hoc Committee, which entities are

Critical Vendors by considering, among other things, (a) which suppliers were sole source or limited source suppliers, without whom the Debtors could not continue to operate without disruption, (b) which suppliers would be prohibitively expensive to replace, (c) which suppliers present an unacceptable risk should they cease the provision of truly essential services or supplies, (d) the extent to which suppliers may be able to obtain or have obtained trade liens on assets of the Debtors and, (e) whether the suppliers are party to an executory contract with the Debtors that requires the suppliers' ongoing performance pending assumption or rejection under section 365 of the Bankruptcy Code notwithstanding the Debtors' failure to make the prepetition payment, and (f) the extent to which suppliers are beyond the jurisdiction of this Court and can thus, notwithstanding the automatic stay, exercise remedies that would disrupt the Debtors' operations and businesses.

6.      The Debtors, in their sole discretion, may shall undertake all appropriate efforts to require Critical Vendors to enter into an agreement (the "**Vendor Agreement**") including provisions substantially in the form attached to the Motion as **Exhibit C**. The Debtors may, in their sole discretion, negotiate, amend, or modify the form of Vendor Agreement on a case-by-case basis. The Debtors shall provide the Committee and the Ad Hoc Committee with copies of Vendor Agreements entered into with critical vendors within two (2) business days after execution of the same.

7.      The Debtors are authorized, but not required, to enter into Vendor Agreements when the Debtors determine, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), that it is appropriate to do so in connection with making payments to Critical Vendors.

8.       If the Debtors, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), determine that a Critical Vendor has not complied with the terms and provisions of the Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the agreement, or on such terms as were individually agreed to between the Debtors and such Critical Vendor, the Debtors may terminate a Vendor Agreement, together with the other benefits to the Critical Vendor as contained in this Order, *provided*, *however*, that the Vendor Agreement may be reinstated (x) if such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the Critical Vendor, (y) the underlying default under the Vendor Agreement is fully cured by the Critical Vendor not later than five business days after the date the initial default occurred or (z) the Debtors, in their sole discretion, reach a subsequent agreement with the Critical Vendor.

9.       If a Vendor Agreement is terminated as set forth above, or if a Critical Vendor that has received payment of a ~~pre-petition~~prepetition claim later refuses to continue to supply goods or services for the applicable period in compliance with the Vendor Agreement or this Order, then (a) the Debtors may, in their sole discretion, declare that the payment of the creditor's Vendor Claim is a voidable ~~post-petition~~postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor, (b) the creditor shall immediately return such payments in respect of a Vendor Claim to the extent that the aggregate amount of such payments exceeds the ~~post-petition~~postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever and (c) the creditor's Vendor

5

Claim shall be reinstated in such an amount so as to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of Vendor Claim had been made.

10.    All Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

11.    The Debtors, are authorized, in their sole discretion and in consultation with the Committee and the Ad Hoc Committee (in each case to the extent and with as much advance notice as is reasonably practicable), and in the exercise of their business judgment, to pay Twenty-Day/Secured Claims in the ordinary course of Debtors' businesses and on such terms as the Debtors deem appropriate.

12.    Payments on account of any Twenty-Day/Secured Claims shall not count against the Critical Vendor Claims Cap.

13.    The Debtors shall maintain a "Critical Vendor Matrix" summarizing (i) the name of each Critical Vendor, (ii) the amount and timing of any Critical Vendor payment, (iii) the amount of the Critical Vendor's claim satisfied by the Critical Vendor payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms.  The Critical Vendor Matrix will be provided on a weekly basis to the U.S. Trustee and professionals for the Committee and  the Ad Hoc Committee; provided that the U.S. Trustee and the professionals for the Committee and the Ad Hoc Committee shall keep the Critical Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone without the prior written consent of the Debtors. The Debtors shall also provide

other information that the U.S. Trustee or professionals for the Ad Hoc Committee or the Committee shall reasonably request.

14.    The Debtors' undisputed obligations to LTS Lohmann Therapy Systems Corp. and its related affiliates arising from the shipments of goods under prepetition purchase orders delivered to and accepted by the Debtors on and after the Petition Date are hereby granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code as against the Debtor liable for any such order, and the Debtors are authorized, but not directed, to pay such obligations in the ordinary course of business and consistent with the parties' customary practices in effect prior to the Petition Date.

15.    ~~13.~~ All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors under this Order, whether presented prior to or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution.  Such banks and financial institutions are authorized to rely on representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

16.    ~~14.~~ Nothing contained in this Order shall be deemed to constitute a rejection, assumption or ~~post-petition~~ postpetition reaffirmation of any executory contract or to require the Debtors to make any of the payments or to post any of the deposits authorized herein.

17.    ~~15.~~ Nothing in this Order or the Motion shall be construed as prejudicing any rights the Debtors may have to dispute or contest the amount of or basis for any claims against the Debtors arising in connection with the Vendor Claims.

18. ~~16.~~ The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

19. ~~17.~~ The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

~~18. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.~~

20. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, for cause, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

21. ~~19.~~ This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE