

OFFICE OF THE GOVERNOR
**COMMONWEALTH OF MASSACHUSETTS**
STATE HOUSE • BOSTON, MA 02133
(617) 725-4000

**CHARLES D. BAKER**
GOVERNOR

**KARYN E. POLITO**
LIEUTENANT GOVERNOR

October 1, 2019

Honorable Robert Drain
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

Re: *In re Purdue Pharma L.P., et al*, Case No. 19-23649 (RDD)

Dear Judge Drain:

As Governor of Massachusetts, I am writing to convey my opposition to the imposition of a nationwide injunction that would stay lawsuits against Purdue Pharma and the Sackler family, and my support for Attorney General Healey's decision, along with those of 24 other state attorney generals, to reject their settlement offer. In 2007, Purdue settled a case based on similar claims that they misled the public about Oxycontin's addictiveness. A decade later, they were still peddling the same falsehoods. A settlement and injunction that would allow Purdue and the Sacklers to avoid trials and escape accountability for a second time is not in the public interest.

Throughout the Commonwealth, I have met countless families whose lives have been ruined by the drug that the Sackler family made their fortune on. It has caused immeasurable harm to the infants and children who have lost a parent as a result of addiction. This settlement, which would not require any admission of wrongdoing, would not do justice for their losses. These families deserve to understand what Purdue and the Sacklers knew and what they did. They deserve a full airing of the facts.

Massachusetts has been hit particularly hard by the opioid epidemic. Opioid-related deaths have increased more than 500% since 2000. In 2014, Massachusetts had one of the highest rates of death from opioids in the nation and the number of infants born with Neonatal Abstinence Syndrome (NAS) or Substance Exposed Newborn (SEN). Addiction is the primary reason why children are now coming into our state's child welfare system. In addition to the devastating toll on human life, great cost has been inflicted on the state's economy. The Massachusetts

PRINTED ON RECYCLED PAPER

Taxpayers Foundation found nearly $10 billion in lost productivity in the state from people unable to work, foregone income due to fatalities, absenteeism, and excess health care costs related to opioids. They estimated that over a seven year period, opioid use kept an estimated 32,700 people from participating in the labor force, and affected an additional 143,000 individuals with jobs (4.2% of the state workforce) who reported pain reliever misuse and who missed on average 18 more days off from work than those who did not misuse pain medications.

The Baker-Polito Administration has spent the past five years working to address the havoc caused by the opioid crisis. Some but not all of our initiatives include:

- more than doubled public funding for substance use treatment and prevention;
- applied for and received more than $90 million in federal grants for new treatment programs;
- added more than 1,200 treatment beds and access to medication assisted treatment and recovery supports;
- imposed a first in the nation seven-day limit on first prescriptions of opioids;
- passed two major pieces of legislation to increase access to treatment and to raise public awareness about the risks of opioid addition;
- implemented a mandatory prescription monitoring program for physicians;
- issued a standing order for naloxone at all pharmacies of the Commonwealth;
- developed and released statewide public awareness campaigns addressing stigma, educating students and families, and promoting treatment access;
- developed core competencies at all medical, dental, nursing, social work schools to increase in the assessment and treatment of addictions;
- mandated that all public schools provide information to parents whose children participate in athletic programs regarding the potential dangers of opioid misuse and addiction.

The Commonwealth and our nation will spend billions of dollars in the coming year alone to fight the opioid epidemic and the toll it has taken on our communities. It is time for those directly involved in fueling this public health crisis to take responsibility for their negative impact on society.

Purdue Pharma is responsible for much of the opioid crisis and the resulting devastation. The Attorney General's lawsuit has shown that at least 670 Massachusetts residents prescribed Purdue opioids died by overdose. That is why the Baker-Polito Administration, through my Executive Office of Health and Human Services and the Department of Public Health, has supported the Attorney General's suit against Purdue Pharma. It was the first suit to personally name the Sackler family, and I believe that the Sacklers should be held personally responsible for fueling the opioid crisis with their aggressive sales practices and deceptive claims, especially given the commitments they made to the federal government in 2007.

This settlement also appears to involve a cynical and calculated abuse of our nation's bankruptcy laws. The bankruptcy laws offer insolvent individuals and businesses a second chance, not an escape route from wrongdoing. The 670 Massachusetts families whose loved ones died directly from opioid overdoses caused by Oxycontin did not get a similar second chance.

Even worse, the settlement requires the victims to be paid from the future profits of Oxycontin, the very drug that caused the damage in the first place. This means that governmental entities that are looking for resources to invest in treatment, recovery, and prevention would essentially be rooting for more sales of Oxycontin, in the United States and abroad. Such a resolution is not only counterproductive and perverse, resulting in more families suffering as their loved ones battle opioid addictions. It would also mean that the Sacklers would get to keep the billions of dollars they have pocketed from past opioid sales.

I stand with the Attorney General in calling for the Sacklers to pay from their own pockets. They should not be able to walk away a second time without taking responsibility for the harm they have caused. For these reasons, I oppose the imposition of a nationwide injunction and support the Attorney General's rejection of the proposed settlement.

Sincerely,

Charles D. Baker
Governor

Cc:   Attorney General Maura Healey