Sander L. Esserman (admission *pro hac vice* pending)
Peter C. D'Apice
STUTZMAN, BROMBERG, ESSERMAN &
    PLIFKA, A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, TX 75201
Telephone:    214-969-4900
Facsimile:    214-969-4999
esserman@sbep-law.com
dapice@sbep-law.com
*Counsel to Certain Native*
*American Tribes, Health Organizations,*
*Municipalities, and Unions*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x

| | | |
|---|---|---|
| | ) | |
| **In re** | ) | **Chapter 11** |
| | ) | |
| **PURDUE PHARMA L.P.,** *et al.,* | ) | **Case No. 19-23649 (RDD)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

---------------------------------------------------------x


**NOTICE OF HEARING ON MOTION SEEKING APPOINTMENT OF**
**AN OFFICIAL COMMITTEE OF NATIVE**
**AMERICAN AND NATIVE AMERICAN AFFILIATED CREDITORS**

**PLEASE TAKE NOTICE** that on October 9, 2019, the "**Certain Tribes**" filed their

*Motion Seeking Appointment of an Official Committee of Native American and Native American*

*Affiliated Creditors* (the "**Motion**").[1]  A hearing on the Motion will be held on **November 19,**

**2019, at 10:00 a.m. (Prevailing Eastern Time)**  (the "**Hearing**") before the Honorable Judge

Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the

Southern District of New York, at the United States Bankruptcy Court for the Southern District

---

[1] The Certain Tribes are listed on Exhibit A of the Motion.

1

of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**")
or at such other time as the Bankruptcy Court may determine.

PLEASE TAKE FURTHER NOTICE that copies of the Motion may be obtained free
of charge by visiting the website of Prime Clerk LLC at
https://restructuring.primeclerk.com/purduepharma.  You may also obtain copies of any
pleadings by visiting the Bankruptcy Court's website at http://nysb.uscourts.gov in accordance
with the procedures and fees set forth therein.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned
thereafter from time to time without further notice other than an announcement of the adjourned
date or dates that the Hearing or a later hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion
shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local
Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy
Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac
vice*, electronically in accordance with General Order M-399 (which can be found at
www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-
searchable portable document format (PDF) (with a hard copy delivered directly to Chambers),
in accordance with the customary practices of the Bankruptcy Court and General Order M-399,
to the extent applicable, and shall be served in accordance with General Order M-399 and the
Order Establishing Certain Notice, Case Management, and Administrative Procedures, entered
on September 18, 2019 [Docket No. 72], so as to be filed and received no later than **Friday,
November 15, 2019, at 4:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Certain Tribes may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

October 9, 2019
Dallas, Texas

STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, A PROFESSIONAL
CORPORATION

By: *Sander L. Esserman*

Sander L. Esserman (Admission *Pro Hac Vice*
    pending)
Peter C. D'Apice
2323 Bryan Street, Suite 2200
Dallas, TX 75201
Telephone:  (214) 969-4900
Facsimile:   (214) 969-4999

**COUNSEL TO CERTAIN NATIVE
AMERICAN TRIBES, HEALTH
ORGANIZATIONS, MUNICIPALITIES,
AND UNIONS**

Hearing Date: November 19, 2019, 10:00 a.m. ET
Objection Deadline: November 15, 2019, 4:00 p.m. ET

Sander L. Esserman (admission *pro hac vice* pending)
Peter C. D'Apice
STUTZMAN, BROMBERG, ESSERMAN &
  PLIFKA, A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, TX 75201
Telephone:    214-969-4900
Facsimile:    214-969-4999
esserman@sbep-law.com
dapice@sbep-law.com
*Counsel to Certain Native*
*American Tribes, Health Organizations,*
*Municipalities, and Unions*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | ) | **Chapter 11** |
| | ) | |
| **PURDUE PHARMA L.P.,** *et al.,* | ) | **Case No. 19-23649 (RDD)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

-----------------------------------------------------------x

## MOTION SEEKING APPOINTMENT OF AN OFFICIAL COMMITTEE OF
## NATIVE AMERICAN AND NATIVE AMERICAN AFFILIATED CREDITORS

Certain Native American Tribes and affiliated health organizations (collectively, the "Certain Tribes"), by and through the undersigned attorneys, submit this Motion Seeking Appointment of an Official Committee of Native American and Native American-Affiliated Creditors (the "Motion").[2] Pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a), the Certain Tribes ask this Court to direct the Office of the United States Trustee ("UST") to appoint an Official

---

[2]    The Certain Tribes are listed on Exhibit A hereto.

Committee of Native American and Native American Affiliated creditors comprised of tribes, tribal members and/or support organizations such as urban Indian health organizations or clinics that serve the Native American community exclusively or to a significant degree to ensure that the interests of Native American and Alaska Native creditors are adequately represented in these cases.[3]

## Preliminary Statement

1.     Debtors commenced these jointly administered cases to deal with the rising tide of litigation that confronts them.  Tribes, numerous states and their myriad political subdivisions, individuals, and others have inundated Debtors with more than 2,600 lawsuits and innumerable claims rightly alleging that Debtors and their controlling Sackler family did much to fuel the U.S. opioid crisis marked by nearly 400,000 overdose deaths between 1999 and 2017.  The nationwide litigation arising from the opioid epidemic includes multidistrict litigation pending in the Northern District of Ohio, *In re National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio Dec. 12, 2017) (the "MDL") that has been described as the most complex litigation ever brought.[4]

2.     Yet by every measure the opioid crisis has more gravely impacted Native Americans on a proportionate basis than any other segment of American society.  According to the Centers for Disease Control and Prevention ("CDC"), Native Americans had the highest drug overdose death rates in 2015 and the largest percentage increase in the number of deaths over time from 1999-2015 among all racial and ethnic groups—an increase of more than 500 percent.[5]

---

[3]    By letter dated September 23, 2019, the undersigned, on behalf of the Certain Tribes, requested that the U.S. Trustee ("UST") appoint a committee of tribal representatives, but to date has not received any response indicating that the UST would appoint such a committee.

[4]    Tr. of Record, *In re National Prescription Opiate Litigation*, No. 17-md-2804, (N.D. Ohio May 10, 2018), ECF No. 418 at 7.

[5]    Opioids in Indian Country: Beyond the Crisis to Healing the Community; 115th Cong. 3 (2018) (statement of RADM    Michael    E.    Toedt,    Chief    Medical    Officer,    Indian    Health    Service),

3.    This morbid escalation is substantially due to overprescription of opioids.  An epidemiologic database maintained by the CDC reveals that the age-adjusted annual mortality rate for opioid overdose deaths among Native Americans rose from 2.9 per 100,000 in 1999 to 13.9 per 100,000 in 2016.[6]   Opioid overdose death rates in counties comprising the Pine Ridge Reservation of the Oglala Lakota Tribe are utterly shocking.  In 2017, the rates in three such counties  were  15.7, 16, and 17.1 per 100,000 people, respectively, against South Dakota's statewide average of 8.4 per 100,000.[7]   Race and ethnicity misclassification on death certificates has likely resulted in substantial *under*estimation of the appalling toll of this crisis among Native Americans.[8]   The staggering mortality figures mirror the staggeringly high volume of prescription opioids being dispensed in Indian Country.  The Oklahoma Bureau of Narcotics reported in 2015, for example, that over 97 million dosage units of prescription opioids (each "dosage unit" equating to one pill) were distributed in the 14 Oklahoma counties comprising part of the Cherokee Nation's tribal jurisdiction.  That translates to *107 opioid pills per adult* in those counties.[9]   The Cheyenne and Arapaho Tribes, Oklahoma, one of the Certain Tribes, are located in the same general area as the Cherokee.

4.    The Certain Tribes are different from rank-and-file creditors in these cases.  As sovereigns in their own right, the Certain Tribes (and tribes generally) share in the goal of abating

---

https://www.indian.senate.gov/sites/default/files/upload/HHS%20IHS%20testimony%20Opioids%20Indian%20Country%20SCIA%203-14-18%20revised.pdf (citing Karin A. Mack, *et al*., *Illicit Drug Use, Illicit Drug Use Disorders, and Drug Overdose Deaths in Metropolitan and Nonmetropolitan Areas – United States*, CDC Morbidity and Mortality Weekly Report 1, 5 (Oct. 20, 2017), https://www.cdc.gov/mmwr/volumes/66/ss/pdfs/ss6619.pdf.) (both links last visited Oct. 3, 2019).

[6]    Robin Tipps, *et al*., *The Opioid Epidemic in Indian Country*, 46 J.L. MED. & ETHICS 422, 422-436 (2018).

[7]    *See South Dakota Opioid Epidemic,* https://opioid.amfar.org/SD (last visited Oct. 3, 2019).

[8]    Mack, *et al*., *supra* note 4.

[9]    Declaration of Chrissi R. Nimmo in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, *McKesson Corp. v. Hembree*, No. 4:17-cv-00323-TCK-FHM (N.D. Okla., July 21, 2017).

the nationwide opioid public health crisis that has disproportionately affected their populations and strained their resources.  Tribal governments, unlike other governments, do not derive income from sales or other taxes and yet are responsible for paying for services beyond what cities, counties or states typically provide.  It is critical, however, that tribal sovereignty and self-determination be respected and reflected in the administration of these cases.  Tribal interests must be "seated at the table" in these cases.

5.      Tribal interests are not, however, represented by the creditors committee ("UCC") appointed by the UST in these cases.  In addition to four non-Native American individuals, the UCC's membership consists of the Pension Benefit Guaranty Corporation, a federal agency; CVS Caremark Part D Services L.L.C./CaremarkPCS Health, L.L.C., affiliates of the drug retailing behemoth; insurance titan Blue Cross and Blue Shield Association; a medical center in Boca Raton, Florida; and LTS Lohmann Therapy Systems Corporation, purportedly a manufacturer of drug delivery system applied directly to the skin or dissolved immediately in the mouth.

6.      Nor can tribal interests be effectively represented or properly vindicated by states and their political subdivisions or "trickle down" benefits derived therefrom.  The states have been described by the Supreme Court as tribes' "deadliest enemies"[10] and, even today, can be staunchly adverse to tribal interests—particularly in the related contexts of claims resolution and resource distribution.  Claims of tribes, their members and support organizations in these cases must be considered on a distinct basis.  If the opioid crisis is to be remedied and abated in Indian Country, it will be through empowering tribes and their various constituencies to control and direct

---

[10]    *United States v. Kagama*, 118 U.S. 375, 384 (1886).  The peculiar and often strained relationships between tribes and the several states means that American Indians suffer when tribes must seek program funding or authority through a state.  Not only do tribes and states have differing and often competing interests, but only the tribes themselves understand the specific geographic, economic, and cultural contexts within which the opioid crisis grew and must be addressed.

4

resources as *they* deem appropriate and to implement solutions responsive to the specific needs of tribes' citizens and unique communities.

7.      Based on the limited information available thus far, the Certain Tribes have not taken any position on Debtors' proposed global settlement or Debtors' proposed way of proceeding in these cases.  They will keep an open mind and review all proposals carefully, weighing in for their constituents as necessary and appropriate.  Further, the Certain Tribes are not aware of any concrete proposals to allocate resources among the various creditor constituent groups.

## Jurisdiction

8.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§  1408 and 1409.

## Background

9.      *Tribal Sovereignty and Governance*.  Tribes are unique sovereign entities, having retained their preexisting sovereignty through the founding of the Republic.[11]  They are not subsumed within the federal government or the government of any state, with which tribes have historically complex relationships.   "Indian Tribes[']" unique status is enshrined in the Constitution, which reserves for Congress the exclusive power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."[12]  All federally-

---

[11]    Tribal sovereignty was not conferred on Tribes by the United States, but is recognized and protected under federal law to the extent not expressly limited by treaty or an Act of Congress.  *See United States v. Wheeler*, 435 U.S. 313, 323 (1978).

[12]    U.S. Const. art I, § 8, cl. 3.

recognized tribes "maintain[] a government-to-government relationship" with the United States, which in turn "recognizes the sovereignty of those Tribes[.]"[13]

10.     Tribal organizations are varied and exceptionally diverse.  They include (i) small Rancherias (*e.g.*, settlements or villages) in California, with ultimate decision-making authority vested in general councils consisting of the entire membership; (ii) large and small tribes with elected representative tribal or business councils; (iii) Pueblos (*e.g.*, villages) led by governors selected according to tribal custom; and (iv) 227 federally recognized Native Villages in Alaska.

11.     Tribal governments operate today through the rubric of self-determination and self-governance under their retained sovereignty and federal law.  They carry out a broad range of governmental services including health care, law enforcement, tribal courts, education, social services and child welfare programs.  Additionally, urban Indian healthcare organizations such as the Seattle Indian Health Board provide healthcare services, including opioid addiction treatment, for 70% of tribal members who reside in urban centers such as Seattle, Los Angeles, Denver, and Chicago.[14]

12.     *The Impact of the Opioid Crisis on Native Americans Generally.*  The impact of the opioid crisis on tribes and their members has been epically tragic.  As a result of the actions of Debtors and others, Indian Country has been purposely flooded with prescription opioids, leading to escalating rates of addiction, disability, and death while harming the health and welfare of tribal communities.  This latest existential threat to tribes comes on the heels of two centuries of other abuses punctuated by war, privation, and starvation.  This historic legacy greatly complicates

---

[13]    Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, § 103(2), 108 Stat. 4791.  The United States extends formal recognition to 573 federally recognized Tribes.  *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 83 Fed. Reg. 34,863 (July 23, 2018).

[14]    Although not technically a tribe, the Seattle Indian Health Board is listed on Exhibit A hereto.

resolution of the opioid crisis in Indian Country, as does the extreme remoteness of many tribes in

the least populous and most inaccessible corners of rural America.

13.    *Tribes' Responses to the Opioid Crisis Generally.*    Tribal governments face

excruciating choices as they undertake to meet burgeoning needs occasioned by the opioid crisis.

The opioid crisis has put an insupportable strain on the limited resources tribal governments have

to confront the epidemic, overwhelming tribal governmental programs and services and even

threatening tribal self-governance.    Tribal governments contend with many challenges, but the

opioid crisis is proving to be one of the costliest of the modern era—in terms of dollars and the

astonishing human cost.    The broad historical context—the intergenerational trauma wrought by

colonial violence and attempted genocide—magnifies the harm visited upon Indian individuals,

families, and communities by opioid dependence and addiction.    As tribal governments take

responsibility for addressing the harm brought by outsiders to their citizens and communities, they

must necessarily do so within the unique framework of federal Indian law and policies that arose

from that same history.

14.    *The Impact of the Opioid Crisis on the Certain Tribes.*    Twenty-three of the Certain

Tribes attached "Statements of Interest" to an amicus brief filed in the MDL attesting the health,

social, and fiscal devastation the opioid crisis has wrought upon them and their members.[15]    The

following are excerpts from three of the Certain Tribes' statements:

- *From the Statement of the Round Valley Indian Tribe of California:*  "The opioid crisis has created a threat to the lifestyle of the Tribe's members by increasing the amount of opioid addition, abuse, and suicides.  The Tribe is now struggling to maintain the resources it desperately needs to combat this spreading epidemic.  The fight against opioids diverts necessary funds from other programs and has placed

---

[15]    The brief in question was the Brief *Amici Curiae* of 448 Federally Recognized Tribes in Opposition to Defendants' Motions to Dismiss Tribal Claims, MDL Dkt. No. 1026, relating to *The Muscogee (Creek) Nation v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45459 and *The Blackfeet Tribe of The Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp., et al.*, Case No. 1:18-op-45749 and filed on Oct. 5, 2018.

the Round Valley Indian Tribe in a dire struggle where it must attempt to balance resources between regular operations and opioid-related programs. Resources are simply too scarce to cover both adequately. A successful resolution to the opioid crisis is needed in order for the Round Valley Indian Tribe to provide for its people and protect its culture."[16]

- *From the Statement of the Bad River Band of Lake Superior Tribe of Chippewa Indians*: "The opioid crisis and its devastating effects are suffocating the Bad River Band's way of life. Opioid abuse, addiction, and overdoses are rampant, causing incalculable damages and an existential threat to the Band and its members. Families are being torn apart; children are left parentless; children born with Neonatal Abstinence Syndrome are facing lifetime problems. The resources, human and financial, of the Bad River Band are being depleted due to the opioid epidemic."[17]

- *From the Statement of the Shinnecock Indian Nation*: "Opioids … have infiltrated every aspect of the Nation's community … as even the sons of its leaders have suffered from addiction and death due to the opioids epidemic. Opioids are causing rampant abuse, addiction and deaths to Shinnecock men, women, and children. The nation is suffocating from the ravages of opioids …. Tribal government is desperately battling to combat the crisis but the Nation suffers from scarce resources."[18]

## **Requested Relief**

15.    Pursuant to 11 U.S.C. §§ 1102(a)(2) and 105(a), the Tribes respectfully ask this Court to direct the Office of the United States Trustee ("UST") to appoint an Official Committee of Native American and Native American Affiliated creditors comprised of tribes, their members and/or support organizations such as community health centers or clinics that serve the Native American community exclusively or to a significant degree, in order to ensure adequate representation of Native American/Alaskan Native interests in these cases.

---

[16]    *Id*., p. 196 of 236.

[17]    *Id*., p. 102 of 236.

[18]    *Id*., p. 204 of 236.

**ARGUMENT**

I.    **The Bankruptcy Code Expressly Provides for the Appointment of More Than One Official Committee When Necessary to Assure Adequate Representation of Creditors**.

16.    Just and equitable resolution of tribal claims in these cases (and those of tribal members and support organizations) must account for the uniqueness of tribes in terms of their sovereign governments, distinct societies, and historic legacies.  The UCC as recently constituted is devoid of a semblance of Native American representation, lacking even a single Native American stakeholder among its members.  The UCC is thus incapable of "ensur[ing] adequate representation" of Native American creditor interests contemplated by 11 U.S.C.§1102(a)(4)."[19]

17.    The Code vests courts with broad discretion to appoint additional committees based on the facts and circumstances of the particular case.  *In re McLean Industries, Inc.*, 70 B.R. 852, 859-60 (Bankr. S.D.N.Y. 1987).  Section 1102(a)(2) provides that

> On the request of a party in interest, the court may order appointment of additional committees of creditors … *if necessary to assure adequate representation of creditors* …."[20]

Whether to appoint one or more additional committees is a case specific determination.  *In re Enron Corp.*, 279 B.R. 671, 684-85.  Court are to consider all relevant factors in assessing the adequacy of creditor committee representation,  including (1) the ability of the existing committee to function; (2) the nature of the case; (3) the standing and desires of the various constituencies; (4) creditors' ability to participate without an additional committee; (5) the delay and additional cost that would result if the court grants the motion; (6) the tasks which a separate committee is to

---

[19]    11 U.S.C. § 1102(a)(4).

[20]    11 U.S.C. § 1102(a)(2) (emphasis added).

perform; and (7) other factors relevant to the issue of adequate representation.  *In re Dewey &
LeBoeuf LLP*, NO. 12-12321 (MG), 2012 WL 5985325, at *4 (Bankr. S.D.N.Y. Nov. 29, 2012).

18.     Consideration of these factors favors appointment of an Official Committee of
Native American and Native American-Affiliated Creditors in these cases.  Like the underlying
MDL litigation, these cases are highly complex and necessitate organized creditor representation
that is appropriately diverse and comprehensive.  Any suggestion that the UCC as currently
constituted is capable of representing Native American/Alaskan Native creditor interests cannot
credibly be maintained; without an additional committee Native American creditors' ability to
participate in these cases will be significantly frustrated.  Nor can it be reasonably argued, at this
early stage, that speculative prospects of delay or the cost of an additional committee are legitimate
bases for denying adequate committee representation to the creditor constituencies most
beleaguered by these Debtors' bad acts.  A committee of independent (who have not made a
determination to support any transaction currently contemplated by Debtors) Native American and
Native American-Affiliated Creditors would be tasked, quite simply, with representing the
interests of tribal creditors and their constituencies in these cases—an undertaking it would be
eminently and singularly equipped to discharge.

19.     Numerous potential members for such a committee are ready and close at hand.  In
addition to the tribes with claims in these cases (including the Certain Tribes),[21] there are
individual tribal members and tribal-related corporate entities with claims.  For example,
Launcelot A. Gumbs is Vice Chairman of the Council of Trustees of the Shinnecock Nation and

---

[21]    One of the Certain Tribes, the Wampanoag Tribe of Gay Head (Aquinnah) has previously submitted a completed
committee questionnaire and general power of attorney to the UST's office for its consideration, and a number of
the other Certain Tribes are willing to serve on a Native American and Native American-Affiliated Creditors
Committee should one be formed.

Vice President of the National Congress of American Indians; he has also lost a son to an opiate overdose.[22] The Seattle Indian Health Board is a corporation organized under the laws of the State of Washington and, as noted, an urban Indian health organization. Its executive leadership team and board of directors include representatives of many tribes.[23] Another client of the undersigned, Baptist Hospital, Inc. in Pensacola, Florida, has seen to the health needs of numerous Native American patients afflicted by the opioid scourge and is willing to serve on a Native American and Native American-Affiliated Creditors should one be constituted.[24] These individuals and corporate entities are available and eligible for committee service.

## II.   There Is No Legal Impediment to Formation of a Tribal Committee.

### A.   "Personhood" Under the Code Is Not a Threshold Requirement for Creditor Committee Membership.

20.     Section 1102(b)(1) of the Code provides that "[a] committee of creditors … shall *ordinarily* consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee … ."[25] Webster's defines "ordinarily" as "in an ordinary manner or to an ordinary extent: such as a: the ordinary course of events:  USUALLY …."[26] It is black letter law that if the meaning of statutory language is plain, as here it is, no further inquiry in indicated. *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 423 (2d Cir. 2005) (citing *Robinson v. Shell Oil Co.*, 519 U.S.337, 341, 117 S. Ct. 843, 136 L.Ed.2d 808

---

[22]   Mr. Gumbs, too, has submitted a completed committee questionnaire and general power of attorney to the UST.

[23]   It, too, has submitted a completed committee questionnaire and general power of attorney to the UST. The Consolidated Tribal Health Project, Inc., also represented by the undersigned, is an ambulatory health clinic operated by a consortium of 8 tribes (7 of which are included among the Certain Tribes) and a corporation organized under California law. Several of the Certain Tribes operate tribal-affiliated clinics or health centers that would likewise be willing to serve.

[24]   It, too, has submitted a completed committee questionnaire and general power of attorney to the UST.

[25]   11 U.S.C. § 1102(b)(1) (emphasis added).

[26]   *See* https://www.merriam-webster.com/dictionary/ordinarily (last viewed Sep. 30, 2019).

(1997).  The court in *In re A.H. Robins*. 65 B.R. 160, 163 (E.D. Va. 1986), aff'd sub nom *Van Arsdale v. Clemo*, 825 F.2d 794 (4th Cir. 1987) correctly held that the "guidelines" set forth in Section 1102(b) do not impose mandatory requirements.  In light of the plain meaning of "shall ordinarily consist of," there is no threshold requirement of "personhood" for committee membership in extraordinary cases such as the highly unusual and complex cases at bar.  It is also unusual that dozens of Debtors' creditors—and those most affected in a proportionate sense by Debtors' misconduct—are sovereigns whose sovereignty predates the founding of the Republic.

### B.    Nevertheless, the Certain Tribes Are Arguably Persons under the Code.

21.    Given their status as corporations, organizations like the Seattle Indian Health Board and the Consolidated Tribal Health Project, Inc. are irrefutably "persons" under the Bankruptcy Code.  However, because the Bankruptcy Code neglects to mention Native Americans anywhere in its text,[27] it is not clear how Congress intended to classify tribes under the Code. Nevertheless, the Certain Tribes are quite plausibly "persons," which the Code defines to include individuals, partnerships, corporations, and certain governmental units.[28]  The Code's definition of "persons" includes "corporations" and its definition of "corporations" includes unincorporated associations.[29]  Indian tribes are not incorporated and are assuredly "organization[s] of persons having a common interest"—the dictionary definition of "association."[30]  As unincorporated albeit sovereign associations, tribes generally (and any of the Certain Tribes) are arguably persons eligible for creditor committee membership as an ordinary matter and certainly, irrespective of

---

[27]    *In re Money Centers of America, Inc.*, Case.  No. 14-10603-CSS, 2018 WL 1535464, *3 (Mar. 29, 2018) (quoting *In re National Cattle Congress*, 247 B.R. 259, 267 (Bankr. N.D. Iowa 2000) ("The Code makes no specific mention of Indian tribes.").

[28]    11 U.S.C. §101(41).

[29]    11 U.S.C. § 101(9).

[30]    *See* https://www.merriam-webster.com/dictionary/association (last  viewed Sep. 30, 2019).

their personhood, as an atypical matter under the plain meaning analysis set forth in the immediately preceding paragraph.[31]

22.    Any argument that tribes are ineligible to serve on a committee because they are not among the types of "governmental units" included in the Code's definition of "person" should be rejected.   The Code defines "governmental unit" to include the federal government, its instrumentalities, the several states, municipalities, foreign states, or "other foreign or domestic government."[32] Most courts, including the Sixth[33] and Seventh[34] Circuits, a bankruptcy appellate panel in the Eighth Circuit,[35] and recently a bankruptcy court in Delaware,[36] have rejected classifying tribes as "governmental units."  The reason is that if tribes were "governmental units," any tribe that files a proof of claim in a case—an ostensibly innocuous act if the claim is colorable—waives its sovereign immunity.  Section 106(a) of the Code says that the filing of a proof of claim by a "governmental unit" effects a broad abrogation of that governmental unit's sovereign immunity.[37]   These courts have expressed well-founded skepticism that Congress intended a tribes' filing of a proof of claim to abrogate its sovereign immunity absent an express

---

[31]   The Certain Tribes acknowledge the existence of authority for the proposition that tribes are not unincorporated associations for purposes of diversity jurisdiction. *See American Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1101 (9th Cir. 2002).  The Certain Tribes also note that definitions of "person" elsewhere in the United States Code, *see e.g.*, 28 U.S.C. 3002(10) (federal debt collection procedure) and 42 U.S.C. § 8802(17) (Biomass Energy and Alcohol Fuels) include "Indian tribe" within the definition which, as noted, the Bankruptcy Code does not.

[32]   11 U.S.C. § 101(27).

[33]   *In re Greektown Holdings*, LLC, 532 B.R. 680, 700-01 (2015), *aff'd* 917 F.3d 451 (6th Cir. 2019).

[34]   *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818 (7th Cir. 2016), cert denied, 137 S. Ct. 1331 (2017).

[35]   *In re Whitaker*, 474 B.R. 687 (B.A.P. 8th Cir. 2012).

[36]   *In re Money Center of America, Inc.*, 565 B.R. 87 (Bankr. D. Del. 2017).

[37]   11 U.S.C. § 106(a).

indication that in the Code that Congress intended such a result.[38]    The Ninth Circuit is the conspicuous exception.  In *Krystal Energy Co. v. Navaho Nation*, 357 F.3d 1055, 1057-58 (9th Cir. 2004), that court held that tribes "are certainly governments, whether considered foreign or domestic," citing Supreme Court authority that tribes are "domestic dependent nations that exercise inherent sovereign authority."[39]

C.    **Even if Tribes Are "governmental units," They Can Still Serve on Creditors' Committees.**

23.    The court in *In re Lion Capital Group*, 44 B.R. 684, 685 (Bankr. S.D.N.Y. 1984) held that municipalities and school districts could serve on a creditors committee "because the provision that only 'persons' could 'ordinarily' serve on a committee was not an absolute bar …." *Lion Capital* was decided the same year that the Code's definition of "person" was amended to include a narrow class of governmental units—specifically the FDIC and the RTC under certain circumstances.[40]    Two additional categories of "governmental units" were added to the Code's definition of "person" in 1994:  guarantors of pensions and those that become the legal or beneficial owner an asset of certain employee pension benefits and deferred compensation plans—with both additions geared to facilitate committee membership of the Pension Benefit Guaranty Corp. and its state analogs.[41]    None of that diminishes the *Lion Capital* court's astute recognition that the plain meaning of "ordinarily" in Section 1102(b)(1) is not equivalent to "never."  Citing a "great

---

[38]    *See, e.g., In re Money Center*, 565 B.R. at 103 (agreeing with the reasoning in *Whitaker* and *Greektown* and noting that "as neither the terms 'Indians' nor "Indian tribes" were included in the [Code's definition of "governmental unit"], Congress did not unequivocally express an intent to abrogate the sovereign immunity of Indian tribes in section 106(a) of the Bankruptcy Code.").

[39]    (citing *Okla. Tax. Comm. v. Citizen Band Patawatomi Indian Tribe of Okla.*, 498 U.S. 505, 111 S. Ct. 905, 112 L.Ed.2d 1112 (1991)).  Additionally, the court in *In re Vianese*, 195 B.R. 572, 575-76 (Bankr. N.D.N.Y. 1995) viewed Indian nations as domestic dependent nations within the Code's definition of "governmental units."

[40]    Colliers on Bankruptcy, § 1102.02[2][a][viii] (2009).

[41]    *Id*.

14

[*i.e.*, extraordinary] need for organized official creditor representation in the case," the *Lion Capital* court ordered to U.S. Trustee to appoint an official special committee populated with municipalities and school districts.[42]

24.        Similarly, in *In re Gates Engineering Co., Inc.*, 104 B.R. 653 (Bankr. Del. 1989), the State of Tennessee asked the court to permit governmental units to serve on a Warranty Claims Committee formed in that bankruptcy case and, in the alternative, the formation of a separate governmental entities committee.  The court recognized that, because of the nature of Tennessee's claims, it was not functioning as a governmental unit when asserting those claims, but instead had the same interests as other members of the Warranty Claims Committee.  However, the court determined that it did not have authority over the composition of committees appointed by the U.S. Trustee,[43] and therefore, could not dictate to the Trustee who was to serve on the Warranty Claims Committee.  The court then turned to Tennessee's request for alternative relief.  The court determined that it had authority to order the formation of a governmental unit committee, stating "[t]he alternative request for a governmental entities committee is one upon which the court has authority to act under § 1102(b)(2).[44]  While the *Gates Engineering* court did not find that such a committee of governmental units was warranted under the circumstances of that case, it did clearly recognize the authority of bankruptcy courts to form such committees.

---

[42]    44 B.R. at 686.

[43]    In 2005, Congress restored the explicit statutory authority of bankruptcy courts to order changes to the membership of creditors' committees with the inclusion of 11 U.S.C. § 1102(a)(4).  *In re ShoreBank Corp.*, 467 B.R. 156, 160 (Bankr. N.D. Ill. 2012).

[44]    The court's reference to the Bankruptcy Code, Section 1102(b)(2) appears to be a typographical error.  Section 1102(b)(2) pertains to the composition of a committee of equity security holders.  The court's reference should have been to 11 U.S.C. § 1102(a)(2), which pertains to the appointment of additional committees.

25.     Certainly, there is no question that Native American individuals personally afflicted by the opioid crisis fomented by Debtors and others may serve on a creditors committee.  Nor is there any question that the corporate and charitable entities named in paragraph 19 above, which serve exclusively, primarily or substantially to alleviate suffering of Indian communities victimized by opioids, are eligible to serve on a committee, just like any other person or corporate entity.

**D.     The Court Has Authority Under Section 105(a) of the Code to Order the Formation of a Tribal Committee.**

26.     Even if Section 1102(b) does not provide explicit authority for this Court to order the formation of a tribal committee (which the Certain Tribes contend that it does), this Court may, and should, exercise its authority under 11 U.S.C. § 105(a) to order the formation of an Official Committee of Native American and Native American-Affiliated Creditors.  Section 105(a) vests bankruptcy courts the power to issue orders it deems appropriate to carry out the provisions in Title 11.[45]  *In re Mercury Finance Co.*, 240 B.R. 270, 277 (N.D. Ill. 1999) (citing *In re K.P. Enterprise*, 135 B.R. 174, 186 (Bankr. D. Me. 1992).  "This authority 'exceeds the equitable authority available under 'tradition equity jurisprudence.'"  *In re City of Detroit*, 519 B.R. 673, 679 (Bankr. E.D. Mich. 2014) (*quoting In re Mehlhose*, 469 B.R. 694, 710 (Bankr. E.D. Mich. 2012)).  These broad equitable powers are, however, constrained to actions or determinations that are not inconsistent with the Bankruptcy Code.  *City of Detroit* at 680 (*citing ADT Corp. v. Advantage Pkg. Inc. (In re ADT Corp.)*, 352 F.3d 1062, 1066 (6th Cir. 2003)).

---

[45]   More specifically, 11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).

## **Prayer for Relief**

The Certain Tribes request that the Court order the formation of an Official Committee of

Native American and Native American-Affiliated Creditors, with such committee to be populated

by tribes, individual tribal members, and/or support organizations (such as community health

centers or clinics that serve the Native American community exclusively or to a significant degree),

affording Native American creditors the voice in these complex and unique bankruptcy cases to

which they are legally entitled and urgently need.

October 9, 2019
Dallas, Texas

Respectfully submitted,

**STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, A PROFESSIONAL
CORPORATION**

By: _Sander L. Esserman_____
    Sander L. Esserman (Admission _Pro Hac Vice_
    pending)
    Peter C. D'Apice
2323 Bryan Street, Suite 2200
Dallas, TX 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999
esserman@sbep-law.com
dapice@sbep-law.com

**COUNSEL TO CERTAIN NATIVE
AMERICAN TRIBES, HEALTH
ORGANIZATIONS, MUNICIPALITIES,
AND UNIONS**

**OF COUNSEL:**

T. Roe Frazer II
**FRAZER PLC**
30 Burton Hills Boulevard
Nashville, TN  37215
Telephone:  (615) 647-0990
roe@frazer.law

Frederick T. ("Rick") Kuykendall, III
**THE KUYKENDALL GROUP**
2013 1st Avenue North, Suite 450
Birmingham, AL 35203
Telephone:  (205) 960-7279
ftk@thekuykendallgroup.com

17

J. Nixon ("Nix") Daniel, III
**BEGGS & LANE, RLLP**
501 Commendencia Street
Pensacola, FL  32502
Telephone:  (850) 432-2451
Facsimile:  (805) 982-9781
jnd@beggslane.com

Lael Echo-Hawk
**MThirtySix, PLLC**
700 Pennsylvania Ave. SE
2nd FL – The Yard
Washington, D.C.  20002
Telephone:  (206) 271-0106
Facsimile:  (202) 600-8232
lael@mthirtysixpllc.com

Little Fawn Boland
**CEIBA LEGAL, LLP**
35 Madrone Park Circle
Mill Valley, CA 94941
Telephone:  (415) 684-7670 x 101
Facsimile:
littlefawn@ceibalegal.com

**EXHIBIT A**
**The Certain Tribes**
**(Inclusive of Two Native-American Affiliated and Certain Other Health Organization)**

1. Bad River Band of Lake Superior Tribe of Chippewa Indians/Bad River Health & Wellness Center
2. Battle Mountain Band of Te-Moak Tribe of Western Shoshone Indians
3. Big Sandy Rancheria of Mono Indians
4. Big Valley Band of Pomo Indians
5. Cahto Tribe of the Laytonville Rancheria
6. Cher-Ae Heights Indian Community of the Trinidad Rancheria
7. Cheyenne & Arapaho Tribes and Clinic
8. Chicken Ranch Rancheria of Me-Wuk Indians
9. Chitimacha Tribe of Louisiana
10. Coyote Valley Band of Pomo Indians
11. Ely Shoshone Tribe of Nevada
12. Ewiiaapaayp Band of Kumeyaay Indians
13. Fallon Paiute-Shoshone Tribe
14. Fond du Lac Band of Superior Chippewa
15. Guidiville Rancheria of California
16. Ho Chunk Nation
17. Hopland Band of Pomo Indians
18. Koi Nation
19. Lac Courte Oreilles Band of Lake Superior
20. Lac du Flambeau Band of Lake Superior Ind.
21. Manchester Band of Pomo Indians
22. Mentasta Traditional Council
23. Pinoleville Pomo Nation
24. Potter Valley Tribe
25. Pueblo of Pojoaque
26. Pyramid Lake Paiute Tribe
27. Red Cliff Band of Lake Superior Chippewas
28. Redwood Valley Tribe
29. Reno-Sparks Indian Colony
30. Resighini Rancheria
31. Robinson Rancheria of Pomo Indians
32. Round Valley Indian Tribes and Round Valley Indian Health Center
33. Scotts Valley Band of Pomo Indians
34. Shinnecock Indian Nation
35. South Fork Band of the Te-Moak Tribe of Western Shoshone Indians
36. St. Croix Chippewa Indians of WI
37. Walker River Paiute Tribe
38. Wampanoag Tribe of Gay Head (Aquinnah)
39. Baptist Hospital, Inc. (Baptist Hospital, Jay Hospital)
40. Consolidated Tribal Health Project, Inc.
41. Seattle Indian Health Board

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                    )
In re                                               )            **Chapter 11**
                                                    )
**PURDUE PHARMA L.P.,** *et al.,*                   )            **Case No. 19-23649 (RDD)**
                                                    )
            **Debtors.**                            )            **(Jointly Administered)**
                                                    )
-------------------------------------------------------------x

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing ***Motion Seeking Appointment of an Official Committee of Native American And Native American Affiliated Creditors*** has been duly served upon all counsel or parties of record by the Court's ECF system and otherwise in accordance with the Court's Order Establishing Certain Notice, Case Management, and Administrative Procedures on October 9, 2019.

Respectfully submitted,

**S**TUTZMAN, **B**ROMBERG, **E**SSERMAN
**& P**LIFKA, **A P**ROFESSIONAL
**C**ORPORATION

By: *Peter C. D'Apice*

Sander L. Esserman (Admission *Pro Hac Vice*
     pending)
Peter C. D'Apice
2323 Bryan Street, Suite 2200
Dallas, TX 75201
Telephone:      (214) 969-4900
Facsimile:      (214) 969-4999
esserman@sbep-law.com
dapice@sbep-law.com

**COUNSEL TO CERTAIN NATIVE
AMERICAN TRIBES, HEALTH
ORGANIZATIONS, MUNICIPALITIES,
AND UNIONS**