DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF FILING OF CASE STIPULATION AMONG THE DEBTORS, THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND CERTAIN RELATED**
**PARTIES**

> **PLEASE TAKE NOTICE** that on September 15, 2019 (the "**Petition Date**"),
Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession
(collectively, the "**Debtors**"), each filed a voluntary petition for relief under chapter 11 of title 11
of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for
the Southern District of New York (the "**Bankruptcy Court**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PLEASE TAKE FURTHER NOTICE** that on September 26, 2019, the Office of the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors (the "**UCC**").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file that certain Case Stipulation among the Debtors, the UCC and certain related parties, dated October 11, 2019 (the "**Stipulation**").

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court is conducting a hearing today, October 11, 2019, to consider the Debtors' motion for a preliminary injunction (the "**Hearing**").

**PLEASE TAKE FURTHER NOTICE** that Debtors and the UCC intend to present this Stipulation to the Bankruptcy Court for consideration at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Stipulation may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:    October 11, 2019
            New York, New York

DAVIS POLK & WARDWELL LLP

By:    */s/ Timothy Graulich* _____

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit A

**Stipulation**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**CASE STIPULATION AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS AND CERTAIN RELATED PARTIES**

Purdue Pharma L.P. ("**PPLP**") and certain of its affiliates that are debtors in possession

in these chapter 11 cases (collectively, the "**Debtors**," the "**Company**" or "**Purdue**")[2], the

Official Committee of Unsecured Creditors Committee appointed in the Debtors' chapter 11

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Although only certain of the Debtors (Purdue Pharma L.P.; Purdue Pharma Inc.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Purdue Transdermal Technologies L.P.; Purdue Pharmaceutical Products L.P.; Purdue Pharma of Puerto Rico; Rhodes Pharmaceuticals L.P.; Rhodes Technologies; and Avrio Health L.P.) are defendants in the over 2,625 civil actions pending against the Debtors in various state and federal courts and other fora across the United States and its territories, the term "Debtors" is used for ease of reference.

cases (the "**UCC**"), and Beacon Company and Rosebay Medical Company L.P. (together, the "**Shareholder Parties**", and together with the Debtors and the UCC, the "**Parties**"), by and through their undersigned counsel, hereby stipulate and agree as set forth below.

### Recitals

A.  On September 15, 2019 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

B.  On September 18, 2019, the Debtors filed the *Motion for a Preliminary Injunction* ("**Preliminary Injunction Motion**").

C.  On September 26, 2019, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the UCC.

D.  The Parties have conferred, and will continue to confer, in good faith on a variety of matters with respect to these cases, including the Preliminary Injunction Motion, and have reached the agreements set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AS FOLLOWS:

1.      For purposes of this Stipulation, "**Initial Covered Sackler Person**" shall mean Beverly Sackler, David A. Sackler, Ilene Sackler, Jonathan D. Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard S. Sackler, Theresa Sackler, any trusts of which any of the foregoing are beneficiaries, and the trustees thereof (solely in their capacities as such), each Shareholder Party and each other entity or person that directly or indirectly owns equity in, or has voting control over, any of the Debtors; and "**Additional Covered Sackler Person**" shall mean, to the extent not an Initial Covered Sackler Person, any issue of Mortimer Sackler or Raymond Sackler, any

2

spouse of such person, any trusts of which any of the foregoing are beneficiaries and the trustees thereof (solely in their capacity as such).   The Shareholder Parties represent that the Initial Covered Sackler Persons collectively own, directly or indirectly, each of the entities to be listed pursuant to Item 7 on Exhibit B – Diligence List (each entity an "**IAC**" and, together with all other such entities, the "**IACs**").

2.      Provided that there are no modifications to the proposed form of Stay Order (as defined below) filed with the Bankruptcy Court on September 18, 2019 (other than those that are consistent with this Stipulation or are otherwise agreed by the Debtors and the UCC), the UCC consents to and supports the relief requested in the Preliminary Injunction Motion (the "**Preliminary Injunction**") for an initial period of 180 days (the "**Initial Stay Period**") from the date of entry by the Bankruptcy Court of an order (such order, with any changes to the proposed order filed with the Bankruptcy Court on September 18, 2019 satisfactory to the Debtors and the UCC, the "**Stay Order**") approving the Preliminary Injunction, and the Debtors hereby agree to seek an Initial Stay Period of 180, not 270, days[3]; *provided, however* that nothing herein shall prohibit the Debtors or the UCC from seeking or objecting to any relief sought by any party with respect to the Preliminary Injunction for any period after the Initial Stay Period that they deem necessary or appropriate.   For the avoidance of doubt, the Debtors and UCC may jointly decide to seek to extend the Initial Stay Period by joint motion at any time (any such extended period, together with the Initial Stay Period, the "**Stay Period**").

3.      The Debtors agree that during the Initial Stay Period they will not file (i) a chapter 11 plan (a "**Plan**") or disclosure statement for any of the Debtors, or (ii) a motion seeking

---

[3] For the avoidance of doubt, nothing herein is intended to limit or otherwise modify the scope of the injunctive relief requested by the Debtors in the Preliminary Injunction Motion.

approval of a restructuring support agreement (or similar agreement) with any party, in each case absent the support of the UCC.

4.    Prior to the date that is 60 days after the date of expiration of the Initial Stay Period, the UCC shall not seek, directly or indirectly support, or encourage any other party to seek, and shall join and support the Debtors in opposing any motion by any party to (i) terminate, shorten, condition or otherwise modify the Debtors' exclusive periods to file or solicit votes on a Plan (the "**Exclusive Periods**"), (ii) obtain co-exclusivity with the Debtors, or (iii) obtain any other similar relief.    The UCC shall support a motion by the Debtors to extend the Exclusive Periods for the duration of the Initial Stay Period.

5.    During the Initial Stay Period, the Debtors shall not file (i) any motion seeking approval of any settlement of any estate causes of action or other claims of the Debtors against the Initial Covered Sackler Persons and the Additional Covered Sackler Persons (together, the "**Covered Parties**") or (ii) any other motion seeking approval of any terms of a Plan or a resolution of a material portion of the Debtors' opioid litigation (other than with respect to the Department of Justice), in each case without the consent of the UCC.    Where it is, in the Debtors' discretion, practicable to do so without causing harm, risk or prejudice to their negotiations with the Department of Justice, the Debtors shall in good faith consult with the UCC regarding such negotiations.

6.    During the Initial Stay Period, the UCC shall not file, directly or indirectly support, or encourage any other party to file, and shall join the Debtors in opposing, any motion by any party seeking (i) to investigate or prosecute, or standing to investigate or prosecute, estate claims or causes of action, (ii) the appointment of a trustee, examiner (with or without expanded powers), responsible person, or any similar relief with respect to the Debtors' or this Bankruptcy

4

Court's current rights, powers, authority and obligations, or (iii) the dismissal or conversion of these chapter 11 cases to chapter 7 cases.

7.     During the Stay Period, the Debtors shall provide the UCC and its professionals (on a professionals' eyes-only basis until a suitable protective order has been agreed to and entered by the Bankruptcy Court, and then in accordance with the terms of such order, which shall also provide for appropriate professionals' eyes-only designation, and materials provided before entry of the order will be designated or re-designated by the Debtors in accordance with the order and subject to its terms) with information that is reasonably requested and necessary or appropriate to perform due diligence (the "**Company Diligence**") regarding matters relating to the Debtors' chapter 11 cases, without the need for the UCC to file formal discovery.   The Company Diligence shall include, without limitation:

> a.  Any final reports prepared for, by or on behalf of the Special Committee of the Board of Directors, identifying, evaluating and/or valuing transactions between the Debtors and the Shareholder Parties and/or their respective affiliates and reasonable substantive updates with respect to the developing content of such reports, prior to their finalization, including privileged analysis and conclusions subject to and protected by common interest;
>
> b.  Year-to-date August 2019 financials for each of the Debtors, on a consolidating as well as on a consolidated basis.  Audited financial statements for Purdue Pharma L.P., Rhodes Technologies, Rhodes Pharmaceuticals L.P. and combined entities, for 2018 and prior, where available for the time period 1996-2017 and unaudited financials to the extent audited financials are not available.  For the avoidance of doubt, the Debtors shall not be required to create any new work product;

5

c.  Final business plans and forecasts for the Debtors as well as detailed historical financial information of the Debtors and other financial and operational diligence reasonably requested by the UCC (including, without limitation, all returns in the Debtors' possession that were filed with the IRS or other taxing authorities whether as a taxpayer or pass-through entity for the past 20 years);

d.  Customary legal diligence reasonably requested by the UCC;

e.  Unless disclosure is prohibited by the applicable agreement, and in which case subject to the Debtors providing the counterparty or counterparties with any required notice and opportunity to object to such disclosure, copies of the Debtors' material contracts, including all contracts with any Shareholder Party, or any affiliated entity (including any IAC) – it being understood and agreed that no Covered Party may prohibit such disclosure;

f.  Reasonable access, pursuant to reasonable protocols to be established, by UCC professionals to members of the Debtors' management team to answer questions and elaborate on Company Diligence materials;

g.  Minutes, board materials, and presentations with respect to any meetings of the Debtors' Board of Directors or any committee of the Board of Directors, provided such documents are reasonably available, for the past 20 years;

h.  Access by counsel to the UCC to the documents produced by the Debtors or the Shareholder Parties in the MDL proceeding captioned, *In re: National Prescription Opiate Litigation*, Case No.: 1:17-md-2894-DAP (the "**MDL litigation**"), in a word searchable OCR format along with reasonable access to the Debtors' litigation counsel to assist the UCC in locating produced documents with

6

respect to identified subject matters, provided that UCC counsel shall have executed the MDL protective order dated as of May 15, 2018 (the "**MDL Protective Order**"), with any amendments necessary solely to permit the appropriate use of such documents by the UCC in these chapter 11 cases.   For the avoidance of doubt, the Debtors shall take all steps reasonably necessary to aid the UCC in obtaining any such necessary amendments, and, upon the execution of such documents, the Debtors will provide the MDL litigation documents within three (3)  business days;

i.   Copies of all of the Debtors' insurance policies and any insurance policy in which the Debtors may incur any liability (including to the extent relating to a non-Debtor entity or person), including, without limitation, copies of all D&O and products liability insurance policies, where available, since 1999;

j.   Communications and analysis with respect to the Debtors' D&O and product liability insurance coverage and the potential settlement of any coverage disputes with the insurance carriers under such policies (the "**Insurance Carriers**");

k.   Information with respect to the maximization of value of the Debtors' assets, as well as information with respect to the potential plan structure described in the informational brief, and the Debtors' present and developing opioid overdose reversal and addiction treatment medications; and

l.   Information and reasonable updates, including as reasonably requested by the UCC, with respect to the ongoing investigations by and on behalf of the Special Committee of the Board of Directors with respect to potential claims and causes of action against the Covered Parties and any final reports, presentations or other

7

materials prepared for, by or on behalf of the Special Committee of the Board of Directors regarding such matters, including privileged analysis and conclusions subject to and protected by common interest; and

m.  Access by counsel to the UCC on a prompt and rolling basis to all documents produced by the Debtors in pending civil litigation other than the MDL litigation (which is addressed in Paragraph 7(h) above) and with respect to the Department of Justice, in a word searchable OCR format along with reasonable access to the Debtors' litigation counsel to assist the UCC in locating produced documents with respect to identified subject matters.

8.      During the Initial Stay Period, neither the Debtors nor any Covered Party shall (i) engage in any insurance settlement communications with the Insurance Carriers without consulting the UCC or (ii) file any motion seeking to settle (or otherwise settle, or seek to settle) any coverage dispute or liability with any of the Insurance Carriers without the consent of the UCC.

9.      The Debtors agree promptly to commence and thereafter work during the Stay Period with the UCC on issues with respect to claims allowance, categorization and classification, including with respect to methods of allowance, distribution and allocation.  The Debtors and the UCC will work with a broad array of governmental and non-governmental claimants to attempt to resolve disputes regarding intercreditor issues expeditiously and minimize, to the extent possible, litigation and claims disputes.

10.    During the Stay Period, the Debtors and the UCC shall engage in good faith discussions and explore all options for the Debtors' business and assets, with the twin goals of value maximization and promoting the public health and welfare.

11.     The Debtors and the UCC agree to work to build creditor support for the utilization of $200 million (the "**Emergency Fund**") from the Debtors' balance sheet to provide emergency relief and assistance with respect to the opioid crisis during the first six months after the approval of this Order, and, only after having achieved substantial support, including without limitation, from the Ad Hoc Group of supporting parties, to move the Bankruptcy Court for authority to establish such Emergency Fund. The Debtors agree to consider in good faith the items listed on **Exhibit A** as proposed by the UCC, and to solicit the view of other stakeholders, as to potential uses of such monies in the Emergency Fund.

12.     The Debtors and the UCC hereby agree, and the Bankruptcy Court hereby finds that (i) the Debtors and the UCC, as estate fiduciaries, have a common interest in the matters discussed herein (but solely to the extent provided herein), (ii) there shall be common interest and joint defense privileges for all communications, work product, documents, analyses, and other materials shared between or among the Debtors and the UCC and their respective professionals as to the matters discussed and to the extent provided herein (the "**Materials**"), (iii) the Materials shall be confidential and shall not be subject to discovery by or other disclosure to any other party on account of having been provided to the Debtors or the UCC, and (iv) the provision of the Materials by the Debtors and the UCC to one another shall not operate as a waiver of any privilege or allow any third-party any rights with respect to the Materials.  For the avoidance of doubt, nothing in this Stipulation requires the Debtors or UCC to provide to the other or to any other party (x) any privileged or work product documents or information (except as expressly set forth herein), (y) any privileged information or analysis with respect to which there is no unity of interest between the Debtors and UCC, or (z) any documents or information that could be asserted to be a waiver of privilege as to third parties.

9

13.     Prior to the date that is 30 days after the expiration of the Stay Period, no Covered Party shall take any action with respect to any material amount of his, her, or its property that is located inside or outside the United States with the intent or material effect of frustrating enforcement of any potential judgment of this Court in these chapter 11 cases or any other actions pending against them in any other court or jurisdiction.

14.     Each Shareholder Party shall provide a copy of this Stipulation to each of its known related Covered Parties[4] within five (5) business days of entry of the order affirming this Stipulation and shall certify upon completion to the Debtors and the UCC that it has done so.  To the extent a Shareholder Party discovers or becomes aware of a related Covered Party that has not been provided a copy this Stipulation, it shall promptly provide such copy and supplement its certification to the Debtors and the UCC.

15.     Upon delivery of a copy of this Stipulation to an Additional Covered Sackler Person, as required by Paragraph 14 hereof, such Additional Covered Sackler Person shall be deemed to be a Covered Party for all purposes under this Stipulation, unless it files, which may be under seal, with the Bankruptcy Court within ten (10) business days following such delivery, an opt-out notice to this Stipulation and serves such notice on counsel to each of the Debtors and the UCC.  Upon the filing of an opt-out notice by or on behalf of an Additional Covered Sackler Person (and written notice to the Debtors and the UCC that shall include sufficient information to identify such Additional Covered Sackler Person, including the name and address thereof or of any trustees thereof (subject to reasonable confidentiality protections)), such Additional Covered

---

[4] With respect to Beacon Company, the related Covered Parties shall mean the issue of Mortimer Sacker, and with respect to Rosebay Medical Company LP shall mean the issue of Raymond Sackler, and in each case, any spouse of such person, any trusts of which any of the foregoing are beneficiaries and the trustees thereof (solely in their capacity as such).

Sackler Person shall be deemed not to be a Covered Party for any purpose under this Stipulation. The filing of an opt-out notice shall not be deemed to be a consent to jurisdiction of this Court for any purpose.

16.     Each Covered Party, other than an Additional Covered Sackler Person that has delivered an opt-out notice pursuant to the immediately preceding paragraph, consents, or shall be deemed to have consented, to Paragraph 13 hereof and to the jurisdiction of the Bankruptcy Court for the sole purpose of enforcing all provisions hereof that are expressly applicable to Covered Parties, including the enforcement of any sanctions, penalties or any other remedies imposed by the Bankruptcy Court in each case in connection with a violation of Paragraph 13 or other applicable provision hereof that are expressly applicable to Covered Parties.   For the avoidance of doubt, (i) no Initial Sackler Covered Person shall have any right to opt out, and all such persons shall be bound by the provisions of this Stipulation expressly applicable to them, and (ii) the Debtors and the UCC reserve all of their rights with respect to each Additional Covered Sackler Person that has delivered an opt-out notice, including without limitation, discovery pursuant to Bankruptcy Rule 2004 or otherwise, and prejudgment attachment under applicable law.

17.     Each Shareholder Party or Initial Covered Sackler Person, as applicable, agrees to make available, or cause to be made available, to the Debtors and the UCC the information set forth in Exhibit B hereto and as described in Exhibit B of that certain Summary Term Sheet filed in the Debtors' chapter 11 cases at Docket No. 257, as well as all diligence (whether in written or narrative form) that has been or may be provided to the Ad Hoc Group of supporting parties on no more restrictive terms as given to the Ad Hoc Group of supporting parties, and substantially simultaneously with the provision of such diligence to the Ad Hoc Group of supporting parties,

11

with the understanding that there will be cooperation among the professionals of the Ad Hoc

Group of supporting parties and the Debtors and the UCC with regard to receipt of information

from the Shareholder Parties and the IACs. The Covered Parties will produce the information

identified in the preceding sentence on a rolling basis and will work in good faith to complete

their production within 90 days of entry of this Stipulation and Order.  The Covered Parties shall

also cooperate in good faith to permit prompt and full UCC access to documents produced by the

Covered Parties in the MDL litigation and all other civil litigation other than with respect to the

Department of Justice, by October 25, 2019, and will consider in good faith the provision of any

extant indexes or similar documents that would assist in the navigation of such produced

documents.   In addition, subject to a confidentiality order entered by the Bankruptcy Court

(which the Parties shall use good faith efforts to agree to prior to October 25), the Shareholder

Parties will provide the following to the legal and financial advisors to the Debtors and the UCC:

> (a) within the first 30 days, an explanation and analysis regarding where the assets held by the Initial Covered Sackler Persons are located; in what format (trust, corporation, partnership, etc.) they are held; why the applicable Initial Covered Sackler Person selected such format (*i.e.*, tax or other reasons, etc.), if known; a general understanding of the type of such assets; and whether, in their view, any individual Initial Covered Sackler Person (and such person's assets) are subject to the jurisdiction of the Bankruptcy Court; and

> (b) within the first 45 days, substantial information with respect to a thorough explanation and analysis of the defenses that the Shareholder Parties intend to make with regard to any and all causes of action that have been or may be

(within the reasonable expectation of the Shareholder Parties) brought against

them, including, as necessary, caselaw support for such defenses.

Notwithstanding anything to the contrary herein, the Debtors and the UCC shall, after written

notice to the Covered Parties delivered on or after (but not prior to) the 90th day after entry of this

Stipulation and Order, have the right to seek discovery of the Covered Parties whether under

Rule 2004 of the Federal Rules of Bankruptcy Procedure or otherwise, and, should the Debtors

or the UCC seek such discovery, all voluntary diligence and informational obligations of the

Covered Parties hereunder shall immediately terminate.  The Debtors and the UCC reserve their

rights to request additional information and diligence from the Covered Parties, who likewise

reserve all rights with respect to any such requests.

18.    To the extent that at any point during the Stay Period, the Debtors or the UCC

believe that the Shareholder Parties are not acting in good faith or cooperating or communicating

and working productively with the Debtors or the UCC, as applicable, or not otherwise abiding

by this Stipulation, the Debtors and the UCC, as applicable, may provide notice to Shareholder

Parties.  If, within five (5) business days, the Debtors or the UCC, as applicable, are not satisfied

that such issues have been remedied, the Debtors or the UCC, as applicable, shall have the right

to request a chambers conference with the Bankruptcy Court (where only the UCC, the Debtors,

and the Shareholder Parties shall participate) wherein the Bankruptcy Court will be asked to

determine (i) whether the Shareholder Parties are failing to abide by this Stipulation and order,

and (ii) the appropriate remedy therefor.

19.    To the extent that at any point during the Stay Period either the Debtors or the

UCC believe that the other is not acting in good faith with respect to their obligations under this

Stipulation, each shall have the right to provide detailed written notice by electronic mail to the

13

other.  If, within five (5) business days of sending such notice, the sender believes in good faith that the recipient has or will not cure their non-compliance with this Stipulation, the sender shall have the right to request a chambers conference with the Bankruptcy Court (where only the UCC and the Debtors shall participate) wherein the Bankruptcy Court will be asked to determine (i) whether the recipient is not abiding by this Stipulation, and (ii) the appropriate remedy therefor.

20.    The Debtors and the UCC agree to cooperate with one another with respect to and as set forth herein, and believe that entry into this Stipulation is consistent with their fiduciary duties.

*[Remainder of page intentionally left blank]*

14

STIPULATED AND AGREED:

Dated:    October 11, 2019
           New York, New York


                                    DAVIS POLK & WARDWELL LLP

                                    By:    */s/ Marshall S. Huebner*_____


                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone: (212) 450-4000
                                    Facsimile:  (212) 701-5800
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Timothy Graulich
                                    Eli J. Vonnegut

                                    *Proposed Counsel to the Debtors
                                    and Debtors in Possession*

Dated:    October 11, 2019
           New York, New York


                                    AKIN GUMP STRAUSS HAUER & FELD LLP

                                    By:    */s/ Arik Preis*_____


                                    One Bryant Park
                                    New York, New York 10036
                                    Telephone: (212) 872-1000
                                    Facsimile: (212) 872-1002
                                    Ira Dizengoff
                                    Arik Preis
                                    Mitchell Hurley

                                    *Proposed Counsel to the Official Committee of
                                    Unsecured Creditors of Purdue Pharma L.P., et al*


                                    15

STIPULATED AND AGREED:

October 11, 2019
New York, New York

MILBANK LLP

By:   */s/ Gerard Uzzi*                         

Gerard Uzzi
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000

*Counsel to Rosebay Medical Company L.P.*

October 11, 2019
New York, New York

DEBEVOISE & PLIMPTON LLP

By:   */s/ Jeffrey J. Rosen*                         

Jeffrey J. Rosen
Maura Kathleen Monaghan
M. Natasha Labovitz
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836

*Counsel to Beacon Company*

16

**SO ORDERED.**

White Plains, New York
Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

- Provide immediate, life-saving recovery support services to victims of the opioid crisis who lack financial resources or access to private or state treatment providers, including, among other things, assessments, treatment placement (as assessed), harm reduction, naloxone distribution, housing, employment, long-term care, mobile outreach units, medical services, family support, peer counseling and peer recovery support services. Distributions of funds for account of recovery support services may be streamlined through qualified non-profit recovery community organizations ("RCOs") that provide such services as recognized by the federal government's Substance Abuse and Mental Health Services Administration (SAMHSA). The amount of funding received by states with qualified RCOs will be determined, and may be proportional to the states' respective overdose rates. Guidelines and an application process will be created to allow such organizations to apply for grants to receive funding from the Emergency Fund. Qualified 501c3 not-for-profits in the process of becoming qualified recovery community organizations in states without an existing RCO may have access to funds, with a qualified RCO acting as mentor organization and/or fiscal agent while pending qualification on a case-by-case basis.

- Harm reduction services for individuals in underserved communities that continue to suffer from opioid use disorder. Such services include, among other things, overdose prevention, naloxone and syringe access services. Funds used for harm reduction services may be distributed through qualified non-profit community-based organizations ("CBOs") in all 50 states in consultation with the Harm Reduction Coalition national organization. The amount of funding received by states with qualified CBOs will be determined, and may be proportional to the states' respective overdose rates.

- (a) provide peer support services for families of those lost to opioid addiction and those still struggling with opioid use disorder, (b) provide assistance to centers where children are born with Neonatal Abstinence Syndrome ("**NAS**") facing immediate medical issues upon birth, and (c) assist with maternal addiction treatment centers (i.e. funds for centers that treat pregnant addicted women). Funds used for these services may be made available to qualified not-for-profit 501(c)(3) organizations (or other centers) whose mission statements include providing direct services to such family members, children, or women, as described above. Guidelines and an application process would be created to allow such organizations to apply for grants to receive funding from the Emergency Fund, and amounts provided to such organizations will be determined by the geographic areas served by such organizations and other criteria.

18

### Exhibit B - Initial Diligence

The following shall be provided initially on a Professionals' Eyes Only ("**PEO**") basis to the Debtors and the UCC, to the extent the documents listed below are available:

1.  IAC presentation materials, including a copy of the investment banker presentation made available to certain parties prior to the petition date (the **"IB Presentation"**), historical financial results, accounting of excess cash for 2019, current projections, business plans and valuations, on an entity level basis where available, and other customary financial, operational, and legal diligence reasonably requested by the Debtors or the UCC.

2.  Updated financials for each of the IACs.

3.  Reasonable access by the professionals to the Debtors and the UCC to members of the IACs' management teams.

4.  Reasonable access to books and records of the IACs.

5.  Tax information generally necessary to understand the tax liability set forth in the clause (i) referenced in the definition of Net Proceeds set forth in the Summary Term Sheet, with information necessary to determine such tax liability to be provided subsequently.[5]

6.  Quarterly reports listing the material legal and other fees and expenses incurred by the Shareholder Parties in connection with the chapter 11 cases and the Ex-U.S. Sales.

7.  An accurate and complete list of all Ex-U.S. pharmaceutical entities, related businesses, joint ventures, or other holdings directly or indirectly owned or controlled by any Shareholder Party, and that are included in the financial information provided in the IB Presentation.

8.  An accurate and complete list of all Initial Covered Sackler Persons and, contemporaneously with delivery thereof to the Ad Hoc Committee, any proposed releases as contemplated under the Summary Term Sheet.

9.  Reasonably promptly following the presentation by the Shareholder Parties of a proposed allocation among payors of the proposed Consenting Shareholder Cash Contribution, information necessary to assess the reasonableness of such proposed allocation and to determine the assurances that are necessary regarding the ability of the Shareholder Parties to satisfy the Guaranteed Contribution in full when due, taking into account the results of diligence regarding the IACs.

10. Information with respect to the payment to state, federal and non-U.S. taxing authorities of amounts received by Covered Parties from the Debtors as tax distributions.

---

[5] All capitalized terms used in this Exhibit B that are not otherwise defined herein shall have the meanings ascribed to them in that certain Summary Term Sheet filed in the Debtors' chapter 11 cases at Docket No. 257.