DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF HEARING ON DEBTORS' MOTION TO ASSUME THE PREPETITION
REIMBURSEMENT AGREEMENT WITH THE AD HOC COMMITTEE, AND TO PAY
THE FEES AND EXPENSES OF THE AD HOC COMMITTEE'S PROFESSIONALS**

**PLEASE TAKE NOTICE** that on October 29, 2019, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Debtors' Motion to Assume the Prepetition Reimbursement Agreement with the Ad Hoc Committee, and to Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* (the "**Motion**"). A hearing on the Motion will be held on **November 19, 2019, at 10:00 a.m. (Prevailing Eastern Time)** (the "**Hearing**") before

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

the Honorable Judge Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 and the *Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*, entered on

October 24, 2019 [Docket No. 342], so as to be filed and received no later than **November 12, 2019 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

Dated:   October 29, 2019
         New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        By:   */s/ Timothy Graulich*

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile:  (212) 701-5800
                                        Marshall S. Huebner
                                        Benjamin S. Kaminetzky
                                        Timothy Graulich
                                        Eli J. Vonnegut

                                        *Proposed Counsel to the Debtors*
                                        *and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### DEBTORS' MOTION TO ASSUME THE PREPETITION REIMBURSEMENT AGREEMENT WITH THE AD HOC COMMITTEE, AND TO PAY THE FEES AND EXPENSES OF THE AD HOC COMMITTEE'S PROFESSIONALS

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") hereby move (this "**Motion**") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), granting the relief described below.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Preliminary Statement**

1.  Pursuant to this Motion, the Debtors seek authority to assume the Reimbursement Agreement (as defined herein) and to pay the reasonable and documented fees and expenses of the Professionals (as defined herein) in accordance with the terms thereof. The relief requested herein is compelled by the unique facts and circumstances of these chapter 11 cases.

2.  <u>First</u>, given the numerous and disparate parties that have agreed to support the Settlement Framework (as defined herein), it is not possible for the Debtors to successfully continue to negotiate and implement the Settlement Framework unless the supporting parties are organized into a negotiation counterparty like the Ad Hoc Committee (as defined herein). The Debtors are subject to more than 2,700 lawsuits, approximately 85% of which have been brought on behalf of state and local governments. For months leading up to the Petition Date, the Debtors have engaged directly and productively with the attorneys general of many states, the PEC (as defined herein) and other claimants in an effort to reach a comprehensive resolution to this litigation. These Herculean efforts have resulted in the proposed Settlement Framework, a key element of which is a multi-billion dollar contribution by the members of the Sackler family.[2]

3.  Based upon ample pre-petition experience, the Debtors do not believe it would be feasible to successfully progress the Settlement Framework to a confirmable plan of reorganization if they were constrained to individually negotiate with the attorneys general of dozens of states and territories and the representatives of more than 2,000 municipal and other litigants. Therefore, to ease the administrative burden on the Debtors' estates, the Debtors requested that numerous settling parties form a single, organized committee, and in turn offered to pay the fees of the

---

[2] While the Settlement Framework currently enjoys the support of almost half of the states and representatives of more than 2,250 other governmental and non-governmental claimants, the Debtors remain committed to using best efforts to persuade the balance of the states and representatives of other important constituencies (including the UCC (as defined herein) to support the Settlement Framework, including any modifications thereto.

committee's advisors—the resulting committee was the Ad Hoc Committee. The results to date, including the negotiation and documentation of the Settlement Term Sheet (as defined herein) and the Ad Hoc Committee's support for a stay of actions against the Debtors and related parties, could not have been achieved in a reasonable timeframe without such a committee, and demonstrate the value the Ad Hoc Committee has already brought to these chapter 11 cases. It stands to reason that building on these results will similarly require the Ad Hoc Committee.

4. Second, these chapter 11 cases present facts perhaps not previously contemplated by Congress or the Bankruptcy Code—the overwhelming number of currently pending lawsuits against the Debtors have been filed by governmental units, entities that the U.S. Trustee has consistently contended are ineligible to sit on a statutory creditors' committee. Consequently, the Debtors will not be able to emerge in an expeditious manner absent the support of entities that may be ineligible to sit on a statutory committee, and therefore, in an effort to avoid an unnecessary litigation in the early days of these cases and secure the support of a significant number of governmental units, the Debtors believe that an ad hoc committee structure was and is the most efficient path forward.[3]

5. Third, given the size and complexity of the Debtors' chapter 11 cases, the Ad Hoc Committee requires the assistance of highly sophisticated legal and financial advisors, and the payment of the professional fees as set forth in the Reimbursement Agreement is necessary to ensure that the Ad Hoc Committee is able to retain these advisors so that it can effectively assist the Debtors in building creditor support and effectively negotiate, draft and finalize definitive

---

[3] To be clear, the Debtors are not simply proposing to pay the professional fees of the Ad Hoc Committee because their members are not on the UCC; there are hundreds if not thousands of claimants who are not on the UCC, and it would not be in the Debtors' business judgment to pay the professional fees of every party ineligible to serve on the UCC. The Ad Hoc Committee is uniquely and broadly constituted, has been a productive counterparty for months (and its members have been for more than one year), and under the circumstances of these cases has filled and continues to fill a critical role in reaching a consensual resolution of these cases that would not otherwise exist.

3

documents in connection with the Settlement Framework. Chapter 11 debtors paying the professional fees of consenting parties has become commonplace in restructuring support agreements. Here, the Professionals, who were selected by the members of the Ad Hoc Committee due to their substantial knowledge and experience in navigating large and complex restructurings, have already played a significant role in constructing the Settlement Framework, as evidenced by the Settlement Term Sheet, and garnering the support of creditors for an agreement in principle. Each of the Professionals is indispensable to the Ad Hoc Committee's efforts to conduct due diligence, analyze substantial amounts of information, and engage in negotiations with the Debtors and other stakeholders regarding the Settlement. Further, each of the Professionals has experience with large and complex restructurings and bringing mass tort related bankruptcy proceedings to a confirmed plan and successful resolution. The Professionals have agreed in the Reimbursement Agreement to allocate the division of responsibilities and their delivery of services so as to limit unnecessary duplication of work.

6.    At this critical juncture in the Debtors' chapter 11 cases, it is crucial that the Debtors secure authorization to pay the fees and expenses of the Professionals. Absent this relief, the Ad Hoc Committee may be unable to retain all of the advisors it requires, which could threaten both the existence of the Ad Hoc Committee and the Debtors' ability to negotiate, document and confirm a plan of reorganization.

**Jurisdiction and Venue**

7.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

8. On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

9. On September 26, 2019, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**UCC**"). No trustee or examiner has been appointed in these chapter 11 cases.

10. Prior to the Petition Date, the Debtors reached an agreement in principle with (i) 24 states,[4] (ii) five U.S. territories, including Puerto Rico, (iii) the plaintiffs' executive committee ("**PEC**") of the multidistrict litigation pending in the United States District Court for the Northern District of Ohio, *In re National Prescription Opiate Litigation*, No. 1:17-md-02804-DAP (the "**MDL**"), which represents over 2,250 counties, municipalities, Native American and Alaska Native tribes, individuals, and third-party payors, and (iv) certain major U.S. cities and counties in connection with a comprehensive settlement framework to settle the claims relating to the Debtors'

---

[4] Since that time, the State of Arizona has withdrawn from the Ad Hoc Committee. *See Objection and Response of the State of Arizona to Debtors' Motion for a Preliminary Injunction* [Docket No. 51, Adv. Pro. 19-08289].

5

opioid business (the "**Settlement Framework**"). In September 2019, and at the request of the Debtors, representatives of these settling states, the PEC and other MDL and non-MDL litigants formed an ad hoc committee (the "**Ad Hoc Committee**").[5] On September 15, 2019 and prior to the commencement of these chapter 11 cases, the Debtors and the Ad Hoc Committee executed a reimbursement agreement (the "**Reimbursement Agreement**") under which the Debtors agreed to pay the reasonable and documented fees and expenses of the following professionals of the Ad Hoc Committee: (i) Brown Rudnick LLP, (ii) Gilbert, LLP, (iii) Kramer Levin Naftalis & Frankel LLP, (iv) Otterbourg PC, (v) a financial advisory firm (FTI Consulting, Inc.), (vi) an investment banker firm, and (vii) economic consultants Compass Lexecon and Coulter & Justice (collectively, the "**Professionals**") on the terms set forth therein.

11.     On October 7, 2019, the Debtors, the Ad Hoc Committee and the Shareholder Parties (as defined in the Settlement Term Sheet) agreed to a Summary Term Sheet (the "**Settlement Term Sheet**") [Docket No. 257] that memorializes the key terms of the Settlement Framework. As a part of the Settlement Framework and Settlement Term Sheet, the Debtors agreed to file this Motion to assume the Reimbursement Agreement and for authority to pay the reasonable and documented fees and expenses of the Professionals in accordance with the terms of the Reimbursement Agreement. Pursuant to the Settlement Term Sheet, each member of the Ad Hoc Committee agreed to support the Debtors' efforts to stay pending litigation against Purdue and related parties, for a period of 180 days. In accordance with this agreement, the Ad Hoc Committee supported the Debtors' motion requesting a stay of such actions (as reflected in the

---

[5] The Bankruptcy Rule 2019 statement for the Ad Hoc Committee is filed at Docket No. 279. The Ad Hoc Committee currently consists of (i) 10 states, (ii) the PEC, (iii) six political subdivisions of states and (iv) one federally recognized American Indian Tribe.

6

filed statement [Docket. No. 62, Adv. Pro. 19-08289]), further solidifying the Debtors' reliance upon the existence of the Settlement Structure in advocating for a stay.

13. While the Debtors acknowledge that there is still much work that needs to be done to implement the Settlement Framework as part of a chapter 11 plan, the Settlement Term Sheet represents an important milestone in these chapter 11 cases, and the Debtors believe that the Settlement Framework (including any consensual improvements thereto) represents the best path forward for the Debtors, their estates and all parties in interest.

## Relief Requested

13. By this Motion, and pursuant to Bankruptcy Code sections 105(a), 365(a) and 363(b), Bankruptcy Rules 6003, 6004 and 6006, and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to assume the Reimbursement Agreement, attached hereto as **Exhibit B**, and (b) authorizing but not directing the Debtors to pay the reasonable and documented fees and expenses under the Reimbursement Agreement, without the need for further motion, fee application or order of the Court.

## Basis for Relief

**A.**  **Section 365(a) of the Bankruptcy Code Allows the Debtors to Assume the Reimbursement Agreement.**

14. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). In determining whether to permit the debtor to assume or reject a contract,

7

"the debtor's interests are paramount." *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d. 373, 383 (2d Cir. 2008).

15.     Accordingly, the decision to assume or reject is governed by the business judgment rule. *See In re Group of Inst. Investors, Inc. v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) ("the question [of assumption] is one of business judgment"); *Penn Traffic*, 524 F.3d at 383; *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006); *see also In re Sharon Steel Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *In re Armstrong World Indus.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or lease is appropriate under section 365(a)."). The "process of deciding a motion to assume [or reject] is one of the bankruptcy court placing itself in the position of the . . . debtor in possession and determining whether assuming [or rejecting] the contract would be a good business decision or a bad one." *In re The Great Atlantic & Pacific Tea Company, Inc.*, 544 B.R. 43, 48 (Bankr. S.D.N.Y. 2016) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993)).

16.     A debtor exercises sound business judgment with respect to its decision to assume or reject an executory contract or unexpired lease where it determines, in good faith, that the proposed action will benefit the estate. *See In re MF Global Inc.*, No. 11-2790, 2011 WL 6792758, at *2 (Bankr. S.D.N.Y. Dec. 20, 2011) ("The assumption or rejection of an executory contract may be approved if such action would benefit the debtor's estate and is an exercise of sound business judgment."); *Helm*, 335 B.R. at 538 ("To meet the business judgment test, the debtor in possession must establish that rejection will benefit the estate.").

8

17. Absent a showing of "bad faith, or an abuse of business discretion," the debtor's business judgment will generally not be altered. *Old Carco*, 406 B.R. at 188 (quoting *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994)). The party opposing a debtor's exercise of its business judgment has the burden of rebutting the presumption of validity. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

18. Upon finding that the debtor has exercised its sound business judgment in determining that the assumption or rejection of an executory contract or unexpired lease is in the best interests of the debtor, its creditors and all parties in interest, the court should approve such assumption or rejection under section 365(a) of the Bankruptcy Code. *See In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or gross abuse of discretion.").

19. Courts in this and other jurisdictions have approved the payment of professional fees of unsecured creditors pursuant to section 365(a) under the business judgment standard. *In re Genco Shipping & Trading Limited*, No. 14-11108 (SHL) (Bankr. S.D.N.Y. May 16, 2014) [Docket No. 187] (approving payment of counsel to an ad hoc group of unsecured noteholders' professional fees pursuant to a prepetition restructuring support agreement assumed under section 365(a) and paid in accordance with the debtors' business judgment); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. Aug. 24, 2015) [Docket No. 95] (approving payment of unsecured creditors' professional fees in connection with the assumption of a restructuring support agreement); *In re Dendreon Corporation*, No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014) [Docket No. 215] (approving, over the objection of the United States Trustee, assumption of a

9

prepetition restructuring support agreement that provided for payment of unsecured debt holders' fees, finding that it was a proper exercise of the debtors' business judgment); *In re Rural/Metro Corp.*, No. 13-11952 (KJC) (Bankr. D. Del. Sept. 5, 2013) [Docket No. 217] (approving payment of unsecured noteholders' professional fees in connection with the assumption of a restructuring support agreement as an exercise of the debtors' business judgment); *In re William Lyon Homes*, No. 11-14019 (CSS) (Bankr. D. Del. Dec. 29, 2011) [Docket No. 105] (same); *In re Edison Mission Energy,* No. 12-49219 (JPC) (Bankr. N.D. Ill. Jan. 18, 2013) [Docket No. 317] (approving the debtors' assumption of a prepetition agreement to pay certain professional fees of an ad hoc committee of unsecured noteholders).[6]

20.     The Debtors' decision to assume the Reimbursement Agreement is clearly a sound exercise of their business judgment.  First, the assumption of and performance under the Reimbursement Agreement is critical to the Debtors' ability to maintain the Ad Hoc Committee's support for the Settlement Framework and is integral to the efficient and successful administration of the Debtors' chapter 11 cases (particularly, but not exclusively, in light of the U.S. Trustee's position that governmental entities may not serve on official committees).  The Debtors recognize that any plan that is ultimately confirmed in these chapter 11 cases will need to enjoy the support of governmental units, and the Ad Hoc Committee plays a significant role in allowing the Debtors to efficiently negotiate with, and gain the support of, governmental units and to coordinate the activities of supporting governmental units.

---

[6] *See also In re NII Holdings Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. June 17, 2015) [Docket No. 931], Hr'g Trs. at 136:15–136:25 (The Court: "[W]hen you have a prepetition PSA, you're coming in at the outset of the case and you're saying we've had this big negotiation, we've gotten people to sit at the table and agree, we want to lock them in, we want to essentially pay them to be locked in, and we're going to assume it, because that's going to bind them and set the predicate for what we're going to do going forward.  It's an agreement, the payment of fees is a prepetition obligation, you assume it, there's business judgment around the amount, it gets approved.  I think in most cases the U.S. Trustee does not object and it gets done.").

21. The efficiency of working with the Ad Hoc Committee has already been on display in these chapter 11 cases, as the Debtors and Ad Hoc Committee were able to memorialize the Settlement Framework via the Settlement Term Sheet only 22 days after the Petition Date. The Settlement Term Sheet, in addition to providing a framework for the successful resolution of these chapter 11 cases, paved the way for the Ad Hoc Committee's support of the Debtors' motion to temporarily enjoin actions against themselves and various related parties— support that was a substantial component of the Debtors' argument that a successful reorganization was likely, a critical prong of the four-part test for grant of an injunction.

22. While the Settlement Term Sheet serves as a necessary building block for an eventual chapter 11 plan, significant work remains to be done, including the expansion of creditor support for the Settlement Framework and the eventual negotiation of definitive documents. If the Debtors do not obtain the authority to pay the fees and expenses of the Professionals in accordance with the Reimbursement Agreement, there is no guarantee that the Ad Hoc Committee will continue to exist, let alone support the Settlement Framework. Absent the continued support and existence of the Ad Hoc Committee, it would be far more expensive, difficult and time-consuming for the Debtors to pursue a plan of reorganization and, ultimately, to successfully reorganize. It is therefore in the Debtors' best interest at this early but pivotal stage of these chapter 11 cases to pay the fees and expenses of the Professionals to ensure the Ad Hoc Committee's continued support for the Settlement Framework, which the Debtors believe presents the best pathway to a value-maximizing plan and emergence.

23. Further, and importantly, the Debtors' business judgment in assuming the Reimbursement Agreement is supported by robust provisions in the Reimbursement Agreement that safeguard estate resources and ensure that the payment of the fees of the Professionals is in

11

the best interest of the Debtors' estates. Most notably, the Reimbursement Agreement includes a broad "fiduciary out" that allows the Debtors to terminate their obligations under the Reimbursement Agreement if they determine, in their sole discretion, that the Reimbursement Agreement is no longer in the best interests of the Debtors. The Reimbursement Agreement also specifically provides that the Professionals are only permitted to seek reimbursement for services specifically within the Scope (as defined in the Reimbursement Agreement) of the Reimbursement Agreement. The Scope, among other things, provides that "the mandate of the Ad Hoc Committee is to negotiate and support the terms and definitive documents associated with the Settlement" and "not to take positions adverse to the Settlement, engage in litigation activities, review or investigate other matters." This scope limitation, among other things, will help prevent the duplication of the efforts of the UCC and, to the extent the Professionals engage in work that is not aimed at furthering the Settlement Framework or otherwise outside the agreed Scope, the Debtors are not obligated to reimburse the Professionals for such work.

24. Moreover, the Reimbursement Agreement provides that the Debtors may review the Professionals' fees and expenses for reasonableness and may refuse to make payments for services that are duplicative or outside of the agreed Scope. The "fiduciary out," combined with the scope limitation and the Debtors' ability to review fees and expenses for reasonableness, belies any concern that the Debtors may have contracted away their ability to maximize the value of their estates consistent with their fiduciary duties.

B. **Additionally, Section 363(b) of the Bankruptcy Code Justifies the Debtors' Payment of the Reasonable and Documented Fees and Expenses of the Professionals.**

25. The Debtors request authority to perform under the Reimbursement Agreement as a sound exercise of their business judgment under Bankruptcy Code section 363(b). Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a

12

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's sound business judgment. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

26.    Once a debtor articulates a valid business justification in this regard, the strong presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (citations and quotations omitted). Under the business judgment standard, a debtor's business decision should be approved unless that decision "derives from bad faith, whim or caprice." *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) (quoting *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002) (internal quotations omitted)). Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

27.    Courts have approved the payment of professional fees of unsecured creditors pursuant to section 363(b) in connection with the court's approval of a debtor's assumption of or entry into a fee letter. *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Sept. 21, 2012) [Docket No. 4652] (approving payment of an ad hoc group of unsecured creditors' professional fees pursuant to a fee letter approved under section 363(b)); *In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011) (affirming the ruling of the district court and bankruptcy court to approve payment

of bidders' due diligence and work fees requested pursuant to section 363); *U.S. Trustee v. Bethlehem Steel Corp.*, No. 02 Civ. 2854 (MBM), 2003 WL 21738964, at *10 (S.D.N.Y. July 28, 2003) (affirming bankruptcy court's approval of reimbursement of creditors' counsel's costs and expenses pursuant to sections 363(b) and 105(a)).[7]

28. As described above, a sound business purpose clearly exists for the Debtors' entry into the Reimbursement Agreement and payment of the fees and expenses of the Professionals thereunder. For the same reasons, the payment, on a monthly basis, of the reasonable and documented expenses (e.g., hotels, meals, travel costs, etc.) incurred by the Ad Hoc Committee members in furtherance of their service on the Ad Hoc Committee, as contemplated by the Settlement Term Sheet, are likewise supported by valid business justifications.

29. Accordingly, the Debtors submit that the requested relief is appropriate and in the best interests of all stakeholders.

**Notice**

30. Notice of this Motion will be provided as to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this motion. The Debtors respectfully submit that no further notice is required.

---

[7] Approval of the fees of the Professionals at a later date under section 503(b) of the Bankruptcy Code is an inadequate substitute for the pre-authorization sought in this Motion. Unlike private litigants, the governmental units that comprise the bulk of the Ad Hoc Committee's constituency are ill-equipped to bear the costs of the retention of bankruptcy professionals, particularly over a long period of time, and, absent the ability to pay their Professionals on a timely basis, the Ad Hoc Committee's ability to function may be substantially impaired, if not wholly undermined.

**No Previous Request**

31. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

Dated: New York, New York
October 29, 2019

By: */s/ Timothy Graulich*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*