**<u>Exhibit B</u>**

**Reimbursement Agreement**

September 15, 2019

**VIA EMAIL**

Purdue Pharma L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT 06901
Attn: Marc Kesselman, Senior VP & General Counsel

    RE:    **Confirmation of Agreement**

Dear Mr. Kesselman:

    This letter (the "**Agreement**") serves to: (i) memorialize Purdue Pharma L.P.'s and its subsidiaries' (together, the "**Company**") acknowledgement that it believes it is in the best interest of, and would be beneficial to, the Company for certain State Attorneys General, the plaintiffs in the pending Multi-District Litigation, and certain additional municipal entities that have reached agreement with the Company on the framework for a proposed comprehensive settlement (the "**Settlement**") to form a single Ad Hoc Committee of Restructuring Support Parties (the "**Ad Hoc Committee**") to negotiate the final terms and documents associated with such Settlement in the Bankruptcy Case (defined below), (ii) confirm that the Company has been informed by the Ad Hoc Committee that it has selected Brown Rudnick LLP ("**Brown Rudnick**"), Gilbert, LLP ("**Gilbert**"), Kramer Levin Naftalis & Frankel LLP ("**Kramer Levin**"), and Otterbourg PC ("**Otterbourg**"), as legal counsel (together, the "**Ad Hoc Committee Law Firms**") to the Ad Hoc Committee, each at their customary rates; (iii) confirm that the Ad Hoc Committee may retain a financial advisory firm (a "**FA Firm**"), an investment banker firm (an "**IB Firm**"), and Compass Lexecon, as an economic consultant company (together with the IB Firm, FA Firm, the Ad Hoc Committee Law Firms and such other economic consultant company as the Company may agree, the "**Professionals**") each on terms reasonably acceptable to the Company and customary for engagements of this type, to assist them in advising the Ad Hoc Committee in connection with the matters within the Scope (as defined below) of the Ad Hoc Committee's mandate; and (iv) memorialize the Company's acknowledgement and agreement to pay the reasonable and documented fees and expenses of the Professionals, and promptly seek authority from the Bankruptcy Court to make such payments during the Bankruptcy Cases (defined below), on the terms and conditions set forth below. The initial members of the Ad Hoc Committee are set forth on Exhibit A.

    The Company agrees that formation of the Ad Hoc Committee and the retention of the Professionals as described herein is integral to the efficient and successful administration of the Bankruptcy Cases. Given the vast number of the Company's creditor constituents and their varied interests, including more than 50 states and territories, thousands of municipalities and local governments, and federally recognized American Indian, Native American, and Alaskan Native tribes, the Company is faced with a challenging path to a global, consensual restructuring. The formation of an Ad Hoc Committee, as a representative for the various

#92440083v8
5843542.1

types of litigating creditors, is critical to the Company's efforts to negotiate, document and confirm a plan of reorganization that garners the maximum support of its creditors.

The Ad Hoc Committee may select and engage a FA Firm and an IB Firm in its discretion, and separate engagement agreements will be entered into between the Ad Hoc Committee and each retained Professional.[1]  Promptly upon the filing of any petition for relief under Title of 11 of the U.S. Code (any case having been filed, the "**Bankruptcy Case**" and such court, the "**Bankruptcy Court**"), and in no event later than fourteen (14) days following the latest of (i) disclosure of the identity of the members of the Ad Hoc Committee to the Company, with such members at all times being appropriately representative of the parties supporting the Settlement, (ii) the Company's receipt of reasonably acceptable agreed By-Laws for the Ad Hoc Committee, and (iii) the commencement of a Bankruptcy Case, the Company shall seek court approval of the assumption of its obligations under this Agreement to pay the reasonable and documented fees and expenses of the Professionals relating to the Company and its affiliates, in accordance with the terms of this Agreement (including retrospectively in a manner agreed to by the parties), including by filing a motion under section 365 of the Bankruptcy Code and/or seeking use of its property under Section 363(b)(1) or authority under section 105(a) of the Bankruptcy Code to pay the Professionals. Such relief shall be *nunc pro tunc* to the petition date (the "**Fee Approval Motion**").  The Fee Approval Motion and accompanying order shall provide that the amounts payable thereunder to the Professionals shall be payable as administrative expenses of the Company's bankruptcy estate on a monthly basis, shall be payable even if such case is converted to a case under chapter 7 of the Bankruptcy Code, and shall not be subject to avoidance or disgorgement.

The Company's agreement to pay the fees and expenses of the Professionals is subject to its review as to the reasonableness of such fees and expenses.  The Company agrees that, subject to a review for reasonableness, paying the fees and expenses of the Professionals constitutes a sound exercise of the Company's business judgment, and furthers the business reasons for entering into the Agreement.

Upon and subject to the terms of the Bankruptcy Court's approval of the Fee Approval Motion, the Company shall, within fifteen (15) days, pay all outstanding reasonable fees and expenses of the Professionals relating to the Company and its affiliates that are invoiced to the Company by the applicable Professional. Thereafter, the Professionals shall, on a monthly basis, provide the Company with reasonably detailed monthly statements of fees and documented, out-of-pocket expenses for the services rendered to the Ad Hoc Committee.  Unless disputed, and subject to the terms of the fee approval order, the balance listed on such invoices shall be paid by the Company within fifteen (15) days of the receipt of the statement.

For the avoidance of doubt, this Agreement does not create an attorney-client relationship between the Company and the Professionals.  The Company is not the client of any of the Professionals.   The

---

[1] The terms of the retention of the FA Firm and IB Firm, including success or completion fees, must be reasonable. The Company will have the opportunity to review the terms of the retention of the FA Firm and IB Firm before such terms are finalized.

Company further acknowledges and agrees that nothing in this Agreement shall, directly or indirectly, by implication or otherwise, waive, or be deemed to constitute a waiver of, or otherwise prejudice in any manner whatsoever, applicable privileges (if any) including, without limitation, the attorney-client privilege, covering all communication and correspondence between the Professionals and the Ad Hoc Committee or any member of the Ad Hoc Committee and any work product or analyses prepared by or on behalf of the Professionals or the Ad Hoc Committee or any member of the Ad Hoc Committee.

The Professionals have allocated and will allocate the division of responsibilities and their delivery of services to the Ad Hoc Committee so as to limit unnecessary duplication of services rendered on behalf of the Ad Hoc Committee. The Company's review for reasonableness will take into account, among other things, its view of duplication of effort by the Professionals.

*Scope*

The mandate of the Ad Hoc Committee is to negotiate and support the terms and definitive documents associated with the Settlement and to take such other actions as may be necessary or appropriate to facilitate the Settlement, and not to take positions adverse to the Settlement, engage in litigation activities, review or investigate other matters, or engage in matters in which the respective members of the Ad Hoc Committee may be in conflict (the "**Scope**"). The Scope will be further refined in the By-Laws and the Company's motion to assume this Agreement, and the Professionals shall only seek reimbursement for matters within the Scope.

*Termination*

The Company's reimbursement obligations hereunder shall terminate if the Company determines in its sole discretion that this arrangement is no longer in the best interests of the Company. The Company's obligation hereunder shall also terminate unless (i) a summary term sheet is executed by the parties by October 4, 2019, (ii) a restructuring support agreement is executed by the parties by December 13, 2019, in each case unless such date is extended by the Company, or (iii) if the membership of the Ad Hoc Committee should change to be less representative without the Company's consent, not to be unreasonably withheld. For avoidance of doubt, nothing in this paragraph shall limit the Company's obligation to pay the reasonable fees and expenses of the Professionals within the Scope that have been agreed and incurred prior to the date of termination.

*Governing Law*

The Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its choice of law provisions that would result in the application of the laws of a different jurisdiction.

Except as provided herein, should any dispute arise in connection with any matter arising under this Agreement, you and we agree to seek to resolve the dispute amicably.  If the dispute cannot be resolved amicably, you and we agree that any action or proceeding relating to or arising out of the dispute will be brought exclusively before the Bankruptcy Court within the Bankruptcy Case.

*No Third Party Rights*

No provision of the Agreement is intended to be enforceable by any third party.  Accordingly, no third party shall have any right to enforce or rely on any provision of the Agreement.

*Integration Clause; Inconsistencies; Amendments*

This Agreement supersedes any earlier terms of business we may have agreed with you and, in the absence of express agreement to the contrary, will apply to the obligations and rights in any document accompanying this Agreement and all subsequent legal services we provide to our clients related to matters with you.

This Agreement may only be amended or modified with the written consent of all parties hereto.

*Acknowledgement*

If you have any questions regarding the Agreement or any aspects of your obligations to pay all fees and reimbursable expenses of the Professionals, please do not hesitate to contact the appropriate undersigned. Your execution of this letter will constitute your full acceptance of the terms set out in this Agreement.

Sincerely,

BROWN RUDNICK LLP

*David J. Molton*

David J. Molton

GILBERT LLP

*Scott D. Gilbert*

Scott D. Gilbert

OTTERBOURG PC

Melanie L. Cyganowski

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Kenneth H. Eckstein

Consented and Agreed to:

Purdue Pharma L.P., on behalf of itself and its subsidiaries

By: *[signature]*

Name: Marc L. Kesselman

Title: Senior Vice President and General Counsel

Dated: September 15, 2019

Terms - 5

#92440083v10

        Sincerely,

BROWN RUDNICK LLP

*David J. Molton*

David J. Molton

GILBERT LLP

*Scott D. Gilbert*

Scott D. Gilbert

OTTERBOURG PC

Melanie L. Cyganowski

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Kenneth H. Eckstein

Consented and Agreed to:

Purdue Pharma L.P., on behalf of itself and its subsidiaries

By: _____

Name:  Marc L. Kesselman

Title:  Senior Vice President and General Counsel

Dated:  September 15, 2019

Sincerely,

BROWN RUDNICK LLP

David J. Molton

GILBERT LLP

Scott D. Gilbert

OTTERBOURG PC

Melanie L. Cyganowski

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Kenneth H. Eckstein

Consented and Agreed to:

Purdue Pharma L.P., on behalf of itself and its subsidiaries

By: _____

Name: _____

Title: _____

Dated: _____

Sincerely,

BROWN RUDNICK LLP

David J. Molton

GILBERT LLP

Scott D. Gilbert

OTTERBOURG PC

*Melanie L. Cyganowski*

Melanie L. Cyganowski

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Kenneth H. Eckstein

Consented and Agreed to:

Purdue Pharma L.P., on behalf of itself and its subsidiaries

By: _____

Name: _____

Title: _____

Dated: _____

September 15, 2019
Page 5

Sincerely,

BROWN RUDNICK LLP

*David J. Molton*

David J. Molton

GILBERT LLP

*Scott D. Gilbert*

Scott D. Gilbert

OTTERBOURG PC

Melanie L. Cyganowski

KRAMER LEVIN NAFTALIS & FRANKEL LLP

*Kenneth H. Eckstein*

Kenneth H. Eckstein

Consented and Agreed to:

Purdue Pharma L.P., on behalf of itself and its subsidiaries

By: _____

Name: _____

Title: _____

Dated: _____

Terms - 5

#92440083v8
5843542.1

## Exhibit A

### Initial Members of the Ad Hoc Committee

1. The State of Florida
2. The State of Louisiana
3. The State of Mississippi
4. The State of New Mexico
5. The State of Ohio
6. The State of Tennessee
7. The State of Texas
8. The State of Utah
9. The Plaintiffs Executive Committee of the multidistrict litigation pending in the United States District Court for the Northern District of Ohio, *In re National Prescription Opiate Litigation*, No. 1:17-md-02804-DAP
10. Santa Clara County

63495932 v2

Terms - 6

#92440083v8
5843542.1