Exhibit B

No. 22O151

IN THE

# Supreme Court of the United States

_____

STATE OF ARIZONA,

*Plaintiff,*

v.

RICHARD SACKLER, THERESA SACKLER, KATHE SACK-
LER, JONATHAN SACKLER, MORTIMER D.A. SACKLER,
BEVERLY SACKLER, DAVID SACKLER, ILENE SACKLER
LEFCOURT, PURDUE PHARMA, INC., PURDUE PHARMA,
L.P., THE PURDUE FREDERICK COMPANY, INC., PURDUE
HOLDINGS L.P., PLP ASSOCIATES HOLDINGS L.P.,
BR HOLDINGS ASSOCIATES L.P., ROSEBAY MEDICAL
COMPANY L.P., AND BEACON COMPANY,

*Defendants.*

_____

## BRIEF IN OPPOSITION TO MOTION FOR
## LEAVE TO FILE BILL OF COMPLAINT

_____

BENJAMIN S. KAMINETZKY *
MARC J. TOBAK
GERARD MCCARTHY
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
ben.kaminetzky@davispolk.com

*Counsel for Defendants Purdue Pharma, Inc. and
Purdue Pharma, L.P.*

October 30, 2019          * Counsel of Record

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................. ii

INTRODUCTION .................................................. 1

JURISDICTION .................................................... 4

STATEMENT OF THE CASE ............................... 5

ARGUMENT .......................................................... 7

   I.  THIS IS NOT THE RARE CASE IN WHICH THE COURT SHOULD EXERCISE ITS DISCRETION TO HEAR A STATE'S CLAIM AGAINST A CITIZEN OF AN-OTHER STATE ............................................. 8

  II.  THIS COURT SHOULD NOT RECON-SIDER ITS LONG-STANDING DETERMI-NATION THAT IT MAY EXERCISE DIS-CRETION WITH RESPECT TO ITS ORIG-INAL JURISDICTION .................................. 16

CONCLUSION ..................................................... 19

(i)

ii

## TABLE OF AUTHORITIES

CASES                                                    Page

*Advanced Telecomm. Network, Inc. v. Allen*
   (*In re Advanced Telecomm. Network, Inc.*),
   490 F.3d 1325 (11th Cir. 2007) ..................   14
*Arizona v. New Mexico*, 425 U.S. 794
   (1976) ........................................................   13
*ASARCO LLC v. Ams. Mining Corp.*, 396
   B.R. 278 (S.D. Tex. 2008) ..........................   14
*In re Colonial Realty Co.*, 980 F.2d 125 (2d
   Cir. 1992) ....................................................   4
*Official Comm. of Unsecured Creditors of
   Cybergenics Corp. ex rel. Cybergenics Corp.
   v. Chinery*, 330 F.3d 548 (3d Cir. 2003) ....   4
*Georgia v. Pa. R.R.*, 324 U.S. 439 (1945) ......   8
*Glenny v. Langdon*, 98 U.S. 20 (1878) ..........   4
*Illinois v. City of Milwaukee*, 406 U.S. 91
   (1972) ................................................. 2, 3, 9, 16
*Louisiana v. Bryson*, No. 140, Orig., 132 S.
   Ct. 1781 (2012) ..........................................   12
*Maryland v. Louisiana*, 451 U.S. 725
   (1981) ..................................................... 10, 13
*Massachusetts v. Missouri*, 308 U.S. 1
   (1939) ..................................................... *passim*
*Mississippi. v. Louisiana*, 506 U.S. 73
   (1992) ..................................................... *passim*
*In re MortgageAmerica Corp.*, 714 F.2d 1266
   (5th Cir. 1983) ...........................................   4
*Nebraska v. Colorado*, 136 S. Ct. 1034
   (2016) ........................................................   18
*Ohio v. Wyandotte Chems. Corp.*, 401 U.S.
   493 (1971) ............................................. *passim*
*In re Ontos, Inc.*, 478 F.3d 427 (1st Cir.
   2007) .........................................................   4
*Oregon v. Mitchell*, 400 U.S. 112 (1970) .......   12

iii

## TABLE OF AUTHORITIES—continued

Page

*SEC v. Antar*, 120 F. Supp. 2d 431 (D.N.J. 2000), *aff'd*, 44 F. App'x 548 (3d Cir. 2002) ............................................................ 14

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ....................................................... 12

*South Carolina v. North Carolina*, 558 U.S. 256 (2010) ............................................. 2, 13, 15

*Texas v. New Mexico*, 462 U.S. 554 (1983) ... 8

*In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98 (2d Cir. 2016) .............. 1, 4

*Tronox Inc. v. Kerr McGee Corp.* (*In re Tronox Inc.*), 503 B.R. 239 (Bankr. S.D.N.Y. 2013)........................................... 14

*United States v. Nevada*, 412 U.S. 534 (1973) .......................................................... 12

*In re W.R. Grace & Co.*, 281 B.R. 852 (Bankr. D. Del. 2002)............................................... 14

*In re Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir. 1988) ................................... 14

## CONSTITUTION AND STATUTES

U.S. Const. art. III, § 2, cl. 2 ........................ 8

11 U.S.C. § 362 ............................................ 7, 10

11 U.S.C. § 544 ............................................ 1, 10

11 U.S.C. § 548 ............................................ 1, 10

11 U.S.C. § 1107 ......................................... 1

Ariz. Rev. Stat. § 44-1001 *et seq.* .................. 6

Ariz. Rev. Stat. § 44-1002 ............................ 14

Ariz. Rev. Stat. § 44-1004 ............................ 14

iv

TABLE OF AUTHORITIES—continued

SCHOLARLY AUTHORITIES                    Page

Steven A. Boyajian, *Reconsidering the Uniformity of the Uniform Fraudulent Transfer Act*, Am. Bankr. Inst. J. 28 (Apr. 2014) ......................................................... 11

David L. Shapiro, *Jurisdiction and Discretion*, 60 N.Y.U. L. Rev. 543 (1985)............. 18

James G. Mandilk, *The Modification of Decrees in the Original Jurisdiction of the Supreme Court*, 125 Yale L.J. 1880 (2016) ......................................................... 12

OTHER AUTHORITIES

Stephen M. Shapiro et al., *Supreme Court Practice* (10th ed. 2013) .......................... 12, 13
5 *Collier on Bankruptcy* (16th ed. 2019)....... 11

# INTRODUCTION

Arizona asks this Court to exercise its original jurisdiction to resolve a complaint it seeks to bring against citizens of other states, specifically certain members of the Sackler family (the "Sackler Defendants") and Purdue Pharma, Inc. and affiliated entities ("Purdue"). It claims that the Sackler Defendants and Purdue violated Arizona law by fraudulently transferring funds out of the companies. Purdue and the Sackler Defendants face substantively similar allegations of fraudulent transfer brought by states and others under various state laws in courts across the nation. For multiple reasons, this Court should deny the motion for leave to file a bill of complaint.

First, Purdue has filed for bankruptcy. As a matter of black letter bankruptcy law, any and all fraudulent transfer claims against Purdue or the Sackler Defendants may only be brought by the bankruptcy trustee or debtor in possession exercising the powers of a trustee. *See, e.g.*, *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 114 (2d Cir. 2016); *infra* at 4; 11 U.S.C. §§ 544(b), 1107. Second, this Court does not have original jurisdiction over claims brought by a bankruptcy trustee or debtor in possession against private persons. Third, the automatic stay applies to Arizona (*see infra* at 7) and this case should not proceed.

Lastly, Arizona's central argument for this Court's exercise of original jurisdiction—the need for uniform treatment of the many fraudulent transfer claims involving Purdue—is eviscerated by the bankruptcy filing. The Bankruptcy Court will consider all fraudulent transfer claims in a single proceeding—a proceeding created by Congress to handle precisely this type of situation with consistency and fairness. 11 U.S.C. §§ 544, 548.

2

Even assuming that Arizona could pursue this claim during Purdue's bankruptcy, this is a poor case for exercise of the Court's original jurisdiction, which is used only "sparingly," *Mississippi. v. Louisiana*, 506 U.S. 73, 76 (1992), particularly where, as here, a state is bringing a claim *not* against a sister state, but against private citizens of another state. *See Illinois v. City of Milwaukee*, 406 U.S. 91, 93 (1972); *Ohio v. Wyandotte Chems. Corp.*, 401 U.S. 493, 496-97 (1971). In deciding whether to take up a matter within its original jurisdiction, the Court focuses on the nature of the state's interests and the existence of an alternative forum for the dispute.

Here, the Bankruptcy Court provides a unified forum for resolving Arizona's (and all others') fraudulent transfer claims. Even putting that aside, at the time it filed its motion, Arizona plainly had an alternative forum for litigating its fraudulent transfer claim—its own state courts. Moreover, Arizona raised no federal question in its bill of complaint, and there exists no offense to a state's dignity or sovereignty when it can litigate a case in its own courts.

Further, Arizona is simply wrong when it claims that "a decision from this Court" would "allow for a uniform resolution" of any fraudulent transfer issues, Brief in Support of Motion for Leave to File Bill of Complaint 22 ("AZ Br."). It is *the Bankruptcy Court* that can provide a singular forum and a uniform resolution of the fraudulent transfer issues presented. At best, this Court could address only the meaning of *Arizona law* (on which this Court is not the final authority). Other states are free to enact their own fraudulent transfer statutes and interpret them differently.

Finally, this Court has acknowledged the structural limits on its ability "to assume the role of a trial judge," *South Carolina v. North Carolina*, 558 U.S. 256, 278

3

(2010) (Roberts, C.J., concurring in the judgment in part and dissenting in part). Contrary to Arizona's breezy assertion that "factfinding here will be straight-forward," AZ Br. 23, the question whether any particular transfer is fraudulent is fact-intensive and generally involves discovery and expert testimony. The Bankruptcy Court has significant experience and expertise in these matters; no such efficiency exists in litigating this case in this Court.

Arizona knows all of this. That is why Arizona leads with the argument that this Court should overrule decades of precedent and decide that its jurisdiction over state claims against diverse citizens is mandatory. If the Court reaches that argument, it should be rejected. This Court's interpretation of Article III and of 28 U.S.C. § 1251(b)(3) is founded on its established position that "much would be sacrificed, and little gained, by our exercising original jurisdiction over issues bottomed on local law," and its recognition that it has "no claim to special competence in dealing with the numerous conflicts between States and nonresident individuals that raise no serious issues of federal law." *Wyandotte*, 401 U.S. at 497-98. This is just such a case.[1]

The motion should be denied.

_____

[1] While this Court has repeatedly held that even its *exclusive* jurisdiction in cases where one state brings claims against another state is discretionary, this is not such a case. Arizona is suing *citizens* of other states and the Court's jurisdiction is *not* exclusive. If this original jurisdiction were mandatory, the floodgates would open. The Court would then be consumed with state-law issues and trial proceedings in which it lacks any "special competence." *City of Milwaukee*, 406 U.S. at 93-94.

4

## JURISDICTION

Purdue filed for bankruptcy after Arizona's motion was filed. As a result, Purdue, as a debtor in possession exercising the powers of a bankruptcy trustee, has exclusive authority to assert all fraudulent transfer claims pertaining to the debtor during the pendency of the bankruptcy. Thus, Arizona may no longer assert this claim, and it is no longer within this Court's original jurisdiction.

In 1878, this Court explained that the Bankruptcy Act of 1867 vested "all property conveyed by the bankrupt in fraud of his creditors . . . and all his rights of action for property or estate, real or personal, and all other causes of action arising from contract or from the taking or detention or injury to the property of the bankrupt" in the assignee (now the trustee) by virtue of the bankruptcy process. *Glenny v. Langdon*, 98 U.S. 20, 21 (1878). Modern case law is in accord. *See, e.g., Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 559 (3d Cir. 2003) (en banc); *In re Ontos, Inc.*, 478 F.3d 427, 431-32 (1st Cir. 2007); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275-76 (5th Cir. 1983); *In re Colonial Realty Co.*, 980 F.2d 125, 132 (2d Cir. 1992). As the Second Circuit stated, "[a]ll the case law agrees that the trustee *et al.*'s powers under Section 544 are exclusive, at least until the stay is lifted or the two-year period expires." *In re Tribune*, 818 F.3d at 114. Thus, only the trustee or debtor in possession exercising the powers of a trustee has the authority to bring fraudulent transfer and other avoidance actions under the Bankruptcy Code, unless the Bankruptcy Court itself confers that authority on another. *Id.* This Court, accordingly, lacks original jurisdiction over the claims at this time.

5

## STATEMENT OF THE CASE

On May 14, 2007, Arizona and Purdue entered into an Order for Consent Judgment, in which Purdue agreed not to promote or market OxyContin in misleading ways and to pay $19.5 million to the 26 states participating in the settlement underlying the Consent Judgment. *See State ex rel. Goddard v. Purdue Pharma L.P.*, No. C20072471 (Ariz. Super. Ct.) ("*Arizona v. Purdue*"); Bill of Complaint ¶ 36 ("Compl."). In 2018, Arizona notified Purdue that the State believed Purdue had violated the Consent Judgment. Purdue responded on August 24, 2018, denying any violation. Application for Order to Show Cause 24, *Arizona v. Purdue* (Sept. 10, 2018).

On September 10, 2018, Arizona filed its Application for Order to Show Cause in the Arizona Superior Court, alleging that following entry of the 2007 Consent Judgment, Purdue "continued to engage in misleading and harmful practices," including by "overstating benefits and downplaying risks associated with taking the drug." Memorandum in Support of Plaintiff's Application for Order to Show Cause at 1, 2; Compl. ¶ 45. The State asserted that, under Arizona's Consumer Fraud Act, Purdue's violations of the Consent Judgment were subject to civil penalties of not more than $25,000 per violation and stated that it would seek the maximum allowable penalties plus any other available remedies. On September 11, 2018, the Arizona court ordered Purdue to show cause whether it should be found in violation of the Consent Judgment. *See State ex rel. Brnovich v. Purdue Pharma L.P.*, No. C20072471 (Ariz. Super. Ct.). That case is set for trial in 2021. Compl. ¶ 45.

Arizona alleges in its Complaint that "Purdue is presently facing thousands of lawsuits in which plaintiffs, including counties, cities, towns, and nearly every

6

State in the country, are seeking to recover billions of dollars under consumer-protection and tort law." Compl. ¶ 44.

Further, in its proposed Bill of Complaint, Arizona alleges that "the Sackler family, which controls Purdue, has siphoned billions of dollars out of the company in recent years." AZ Br. 1-2. Specifically, the State cites transactions that occurred between 2008 and 2016. Compl. ¶¶ 51, 52. Arizona seeks to "claw back" these transfers under Arizona's fraudulent transfer statute, *see* Ariz. Rev. Stat. § 44-1001 *et seq*. It alleges that Purdue transferred assets to the Sackler Defendants "with the intent to hinder, delay, or defraud present and future creditors, including Arizona." AZ Br. 14 (citing Compl. ¶¶ 46-54). It further asserts that, due to the transfers, "Purdue's remaining assets were unreasonably small or, in the alternative, that Purdue would incur debts beyond its ability to pay as they became due." *Id.* (citing Compl. ¶ 54). These transfers are alleged to constitute both intentional and constructive fraudulent conveyances, in violation of Ariz. Rev. Stat. § 44-1001 *et seq*. *See* Compl. ¶¶ 60-71.

As Arizona further alleges, numerous states and other jurisdictions have already sued Purdue and the Sackler Defendants, alleging that the same transfers described above violate other states' fraudulent conveyance statutes. Compl. ¶ 56. *See also, e.g.*, *State v. Purdue Pharma L.P.*, No. X07 HHD-CV-19-6105325-S (Conn. Super. Ct. Apr. 22, 2019); *People v. Purdue Pharma L.P.*, No. 400016/2018 (N.Y. Sup. Ct. Mar. 28, 2019); *State v. Sackler*, No. 19CV22185 (Or. Cir. Ct. May 16, 2019).

On September 15, 2019, Purdue filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New

7

York. On September 18, Purdue commenced an adversary proceeding and filed a motion for a preliminary injunction seeking to stay certain cases pending against Purdue and certain related parties, including members of the Sackler family. On October 7, Arizona filed an objection to Purdue's motion for a preliminary injunction. After the hearing, the Bankruptcy Court granted Purdue's motion. Relevant here, it ruled that "the Debtors are the steward of their claims against the Sacklers, whether they be fraudulent transfer claims, veil piercing claims, or are variations thereon." Transcript at 266-67, *In re Purdue Pharma L.P.*, No. 1923649 (Bankr. S.D.N.Y. Oct. 11, 2019) (citing cases). The Bankruptcy Court further explained that while it was "clearly not enjoining the U.S. Supreme Court if they want to take up the pleading that already has been filed in front of them," it nonetheless "enjoin[ed] the State of Arizona from violating Section 362(a) [the automatic stay] which enjoins them already," and stated that it would hold Arizona "in contempt if they continue to pursue this litigation of Section 363(a)." *Id.* at 267-68. Despite this Bankruptcy Court ruling, Arizona declined to withdraw the motion in this Court.

## ARGUMENT

Even assuming this Court has jurisdiction, the automatic stay—which is critical to Arizona's stated goal of uniformity—would apply to this matter, and it should not go forward. *See* 11 U.S.C. § 362. But even if the automatic stay did not apply, this Court should not exercise its discretion to entertain the bill of complaint.

8

## I. THIS IS NOT THE RARE CASE IN WHICH THE COURT SHOULD EXERCISE ITS DISCRETION TO HEAR A STATE'S CLAIM AGAINST A CITIZEN OF ANOTHER STATE.

Arizona's motion for leave to file a bill of complaint alleging that transfers to the Sackler Defendants violate Arizona's fraudulent transfer statute should be denied. This is not an appropriate case for invocation of this Court's original jurisdiction, which this Court has repeatedly explained should be exercised only "sparingly." *Mississippi*, 506 U.S. at 76.

The Constitution includes within this Court's original jurisdiction "all Cases . . . in which a State shall be a party." U.S. Const. art. III, § 2, cl. 2. In 28 U.S.C. § 1251(b)(3), Congress instructed that the Supreme Court "shall have original but not exclusive jurisdiction of . . . (3) All actions or proceedings by a State against the citizens of another State . . . ." This Court has long "interpreted the Constitution and [section 1251] as making [its] original jurisdiction 'obligatory only in appropriate cases.'" *Mississippi*, 506 U.S. at 76 (quoting *City of Milwaukee*, 406 U.S. at 93). *See also Wyandotte*, 401 U.S. at 499; *Texas v. New Mexico*, 462 U.S. 554, 570 (1983) (the Court has "substantial discretion to make case-by-case judgments as to the practical necessity of an original forum in this Court"); *Georgia v. Pa. R.R.*, 324 U.S. 439, 464-68 (1945) (Supreme Court "in its discretion has withheld the exercise of its jurisdiction where there has been no want of another suitable forum to which the cause may be remitted in the interests of convenience, efficiency and justice"). The Court has "said more than once" that its original jurisdiction "is of so delicate and grave a character that it was not contemplated that it would be exercised save when the necessity was absolute." *Mississippi*, 506 U.S. at 76 (quoting *Wyoming v. Oklahoma*,

9

502 U.S. 437, 450 (1992) and *Louisiana v. Texas*, 176 U.S. 1, 15 (1900)).

This Court first concluded that it had discretion in exercising its original jurisdiction in cases brought by one state against the citizens of another state in *Massachusetts v. Missouri*, 308 U.S. 1, 19 (1939). There Massachusetts sought leave to bring a complaint against Missouri and certain of its citizens, because both states claimed an exclusive right to impose certain inheritance taxes. After finding that Massachusetts did not have a claim against Missouri, the Court declined to consider Massachusetts' claim against the individual Missouri trustees, concluding that the Court must "inquire whether recourse to that jurisdiction in an action by a State merely to recover money alleged to be due from citizens of other States is necessary for the State's protection." *Id.* at 18. The Court held that

> [t]o open this Court to actions by States . . . [against] citizens of other States, in the absence of facts showing the necessity for such intervention, would be to assume a burden which the grant of original jurisdiction cannot be regarded as compelling this Court to assume, and which might seriously interfere with the discharge by this Court of its duty in deciding the cases and controversies appropriately brought before it.

*Id.* at 19. The Court found that Massachusetts had a "proper and adequate remedy" against the trustees in Missouri courts, and denied the motion for leave to file the bill of complaint. *Id.* Since then, as noted, the Court has reaffirmed its discretion in this context multiple times. *See, e.g., City of Milwaukee*, 406 U.S. at 98; *Wyandotte*, 401 U.S. at 498.

10

Today, in assessing whether to exercise its jurisdiction in particular cases, the Court considers "'the nature of the interest of the complaining State,' focusing on the "seriousness and dignity of the claim,'" and whether there is an alternative forum "in which the issue[s] tendered" to the Court "may be litigated." *Mississippi*, 506 U.S. at 77 (citation omitted) (quoting *City of Milwaukee*, 406 U.S. at 93-94). Here both factors weigh heavily against jurisdiction.

In considering the type of state claim that warrants exercise of its original question, the Court has focused virtually exclusively on questions of federal law and issues that "implicate the unique concerns of federalism forming the basis of our original jurisdiction." *Maryland v. Louisiana*, 451 U.S. 725, 743 (1981). In *Wyandotte*, the Court explained the two historic bases for its original jurisdiction "over cases and controversies between a State and citizens of another State or country." 401 U.S. at 500. "The first was the belief that no State should be compelled to resort to the tribunals of other States for redress, since parochial factors might often lead to the appearance, if not the reality, of partiality to one's own." *Id.* The second factor was "that a State, needing an alternative forum, of necessity had to resort to this Court in order to obtain a tribunal competent to exercise jurisdiction over the acts of nonresidents." *Id.*

This bill of complaint implicates neither concern. Preliminarily, once bankruptcy is filed, fraudulent transfer issues are resolved in bankruptcy courts. 11 U.S.C. §§ 362, 544, 548. The question of state law presented by the bill of complaint has, accordingly, been displaced by a federal bankruptcy law question that should be—and routinely is—decided in the expert federal forum of the Bankruptcy Court.

11

Even taken on its own terms, the bill of complaint presents a question of Arizona law that Arizona could have litigated in its own courts. There is no affront to the State's sovereignty in litigating an issue of its own state law in its own courts.[2] *See Wyandotte*, 401 U.S. at 504 ("it is vitally important to stress that we are not called upon by this lawsuit to resolve difficult or important problems of federal law").

Indeed, the Court has principally exercised its discretion to hear a case within its original jurisdiction in disputes between States "of such seriousness that it would amount to *casus belli* if the States were fully sovereign," *Mississippi*, 506 U.S. at 77 (quoting *Texas*, 462 U.S. at 571 n.18), including disputes "sounding in sovereignty and property, such as those between states in controversies concerning boundaries, and the manner of use of the waters of interstate lakes and riv-

---

[2] Arizona's claim that its bill of complaint does not present "an 'issue[] bottomed on local law'" AZ Br. 23, is demonstrably wrong. It places only Arizona's law at issue. Other states have similar laws—as is often the case—but there are significant differences among them. A leading bankruptcy treatise reports that 36 states and the District of Columbia have adopted the Uniform Fraudulent Transfer Act (the "UFTA"); two states—New York and Maryland—retain statutes based on its predecessor, the Uniform Fraudulent Conveyance Act; and nine states have enacted the UFTA's successor, the Uniform Voidable Transactions Act. *See* 5 *Collier on Bankruptcy* ¶ 544.06 (16th ed. 2019). Even those states that, like Arizona, have adopted the UFTA differ significantly in their interpretation and implementation on issues such as standards of pleading and proof. *See, e.g.*, Steven A. Boyajian, *Reconsidering the Uniformity of the Uniform Fraudulent Transfer Act*, Am. Bankr. Inst. J. 28 (Apr. 2014). In addition, as shown *infra* at 15-16, different jurisdictions assess a debtor's solvency differently. Thus, were the Arizona law issue presented, this Court's decision would not have "allow[ed] for a uniform resolution of this issue." AZ Br. 22.

12

ers," as well as suits under interstate compacts. Ste-
phen M. Shapiro et al., *Supreme Court Practice* § 10.2,
at 622 (10th ed. 2013) (collecting cases). The Court
rarely grants leave to file a complaint in cases where a
state brings a claim against a citizen of another state.
*See* James G. Mandilk, *The Modification of Decrees in
the Original Jurisdiction of the Supreme Court*, 125
Yale L.J. 1880, apps. A & B (2016). When the Court
has heard disputes between a state and a citizen of an-
other state, the matter often involved a state suing a
federal official to raise an important constitutional
question.[3] Unsurprisingly, the fraudulent transfer is-
sues here do not involve such matters.

With respect to the second factor, the Bankruptcy
Court can resolve all fraudulent transfer issues asso-
ciated with Purdue's bankruptcy in a single proceeding
in the ordinary course under federal law. It is the spe-
cialized forum designed by Congress to resolve these
issues in this setting and plainly available to Arizona.
And prior to the bankruptcy filing, Arizona did not dis-
pute that its own courts were available to hear its
fraudulent transfer claim against Purdue and the
Sackler Defendants.

This Court has been "particularly reluctant to take
jurisdiction of a suit where the plaintiff has another
adequate forum in which to settle its claim." *United*

---

[3] *See, e.g.*, *South Carolina v. Katzenbach*, 383 U.S. 301, 307
(1966) (the constitutionality of the Voting Rights Act of 1965); *Or-
egon v. Mitchell*, 400 U.S. 112, 117 n.1, 152-53 n.1 (1970) (plural-
ity opinion) (the constitutionality of reducing the voting age to
18). Even in such cases, this Court often denies motions for leave
to file. *See, e.g.*, *Louisiana v. Bryson*, No. 140, Orig., 132 S. Ct.
1781 (2012) (mem.) (denying motion for leave to file bill of com-
plaint in suit to enjoin counting of non-immigrant foreign nation-
als in U.S. Census for purpose of allocating seats in the U.S.
House of Representatives).

13

*States v. Nevada*, 412 U.S. 534, 538 (1973) (per curiam). *See also Arizona v. New Mexico*, 425 U.S. 794, 796-97 (1976) (per curiam) (availability of actions by other parties raising same legal claims can militate against exercise of original jurisdiction); *Mississippi*, 506 U.S. at 76 (same). The existence of an alternative forum demonstrates that "recourse to [the Supreme Court's original] jurisdiction" is not "necessary for the State's protection." *Massachusetts v. Missouri*, 308 U.S. at 18. *See also* Shapiro, *Supreme Court Practice*, *supra*, § 10.6, at 636 ("[T]he Court is likely to decline to exercise original jurisdiction once satisfied that another court has the necessary jurisdiction and powers to resolve the issues.").

Finally, in declining to exercise its original jurisdiction, the Court has frequently highlighted several additional relevant points. First, the Court has observed that it "is not suited to functioning as a *nisi prius* tribunal," *Maryland*, 451 U.S. at 761 (Rehnquist, J., dissenting), and that matters requiring factual development and adjudication "tax the limited resources of this Court by requiring [it] 'awkwardly to play the role of factfinder.'" *South Carolina*, 558 U.S. at 267 (quoting *Wyandotte*, 401 U.S. at 498).

Arizona claims "factfinding here will be straightforward," AZ Br. 23; but under either the Bankruptcy Code or Arizona law, that is clearly wrong. To illustrate, under Arizona's statute, a transfer is fraudulent if it was made (i) with intent to defraud a creditor; or (ii) without receiving "reasonably equivalent value," where the debtor was insolvent, or was rendered insolvent by the transfer, where "the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or where the debtor "believed

14

or reasonably should have believed that he would in-
cur, debts beyond his ability to pay as they became
due." Ariz. Rev. Stat. §§ 44-1002, 44-1004.

Here, the transfers at issue occurred over a signifi-
cant period of time (2008-2016), and determining the
value of the claims against Purdue—which were at the
relevant times (and remain) contingent, disputed lia-
bilities—in resolving Purdue's balance sheet, capitali-
zation, or ability to pay debts *at the time of each trans-
fer* would require significant factual development and
expert testimony. *See, e.g.*, *In re W.R. Grace & Co.*, 281
B.R. 852, 869 (Bankr. D. Del. 2002) (in valuing a con-
tingent or disputed claim, the court must look to "a fair
and accurate assessment of the . . . liability as the per-
tinent date"). Indeed, the valuation of future liabilities
is highly fact dependent, including factors such as the
debtor's notice of potential claims and ability reasona-
bly to estimate the value of such contingent or dis-
puted liabilities. In addition, there may be questions
about whether it is appropriate to use a "probability
discount" approach or some other method of valuing
these claims. *See In re Xonics Photochemical, Inc.*, 841
F.2d 198, 200 (7th Cir. 1988); *Advanced Telecomm.
Network, Inc. v. Allen* (*In re Advanced Telecomm. Net-
work, Inc.*), 490 F.3d 1325, 1335-36 (11th Cir. 2007);
*SEC v. Antar*, 120 F. Supp. 2d 431, 443 (D.N.J. 2000),
*aff'd*, 44 F. App'x 548 (3d Cir. 2002). It is thus no sur-
prise that significant fraudulent transfer cases rou-
tinely require weeks of trial time. *See, e.g.*, *Tronox Inc.
v. Kerr McGee Corp.* (*In re Tronox Inc.*), 503 B.R. 239,
248 (Bankr. S.D.N.Y. 2013) (noting that fraudulent
transfer trial "consum[ed] 34 trial days at which 28
witnesses testified"); *ASARCO LLC v. Ams. Mining
Corp.*, 396 B.R. 278, 298, 433 (S.D. Tex. 2008) (fraudu-
lent transfer trial spanned "four weeks of trial testi-
mony").

15

In sum, these are complex issues plainly within the experience and expertise of the Bankruptcy Court.

This Court has also expressed concern about "diverting [its] attention from [its] primary responsibility as an appellate tribunal." *South Carolina v. North Carolina*, 558 U.S. 256, 267 (2010). Accepting original jurisdiction in this case—a State claim against private citizens of another state for violation of the complaining State's law where another forum is available for the dispute—would create the floodgates problem Chief Justice Hughes first explained in *Massachusetts v. Missouri, see supra* at 10. Put bluntly, "a host of such actions that might, with equal justification, be commenced in this Court." *Wyandotte*, 401 U.S. at 504-05.

Relatedly, the Court has observed that the scope of its original jurisdiction places it in the "quandary" of "opt[ing] either to pick and choose arbitrarily among similarly situated litigants" in order to preserve the Court's ability to attend to its appellate docket, or "devot[ing] truly enormous portions" of the Court's "energies to such matters." *Wyandotte*, 401 U.S. at 504. This case illustrates that point in two ways. There is no reason for the Court to decide *Arizona*'s fraudulent transfer claim in contrast to the claims challenging the same transfers brought by numerous other states and municipalities, particularly when the Bankruptcy Court is available to decide all claims. *See id.* at 503 (finding no need for the Court to "settle a small piece of a much larger problem that many competent adjudicatory and conciliatory bodies are actively grappling with on a more practical basis"). And, there is no reason that the fraudulent transfer issue presented by Arizona should be resolved by this Court.

For all these reasons, the motion for leave to file the bill of complaint should be denied.

16

## II. THIS COURT SHOULD NOT RECONSIDER ITS LONG-STANDING DETERMINATION THAT IT MAY EXERCISE DISCRETION WITH RESPECT TO ITS ORIGINAL JURISDICTION.

Arizona asks this Court to reconsider its decades-old conclusion—reaffirmed repeatedly over time and in multiple contexts—that its exercise of original jurisdiction in controversies between States and citizens of other states is discretionary. *See Massachusetts v. Missouri*, 308 U.S. at 19[4]; *Wyandotte*, 401 U.S. at 494; *City of Milwaukee*, 406 U.S. at 93. Specifically, the Court has concluded that it has discretion to decline to hear such a case where

> (1) declination of jurisdiction would not disserve any of the principal policies underlying the Article III jurisdictional grant, and (2) the reasons of practical wisdom that persuade us that this Court is an inappropriate forum are consistent with the proposition that our discretion is legitimated by its use to keep this aspect of the Court's functions attuned to its other responsibilities.

*Wyandotte*, 401 U.S. at 499. As demonstrated above, and setting the jurisdictional issue to the side, both elements of this test are fully satisfied here.

In 1939, the Court recognized "the need [for] the exercise of a sound discretion in order to protect this Court from an abuse of the opportunity to resort to its original jurisdiction in the enforcement by States of claims against citizens of other States." *Massachusetts*

---

[4] Arizona suggests that the Court first determined it had discretion with respect to this category of original jurisdiction in 1971, AZ Br. 15; but *Massachusetts v. Missouri* reached this conclusion in 1939.

17

*v. Missouri*, 308 U.S. at 19. The Court re-affirmed that conclusion in *Wyandotte*, explaining that "[a]s our social system has grown more complex, the States have increasingly become enmeshed in a multitude of disputes with persons living outside their borders," on issues such as "taxes, motor vehicles, decedents' estates, [and] business torts." *Wyandotte*, 401 U.S. at 497. The Court concluded that "[i]t would, indeed, be anomalous were this Court to be held out as a potential principal forum for settling such controversies." *Id.*

Indeed, given that "[t]his Court's paramount responsibilities to the national system lie almost without exception in the domain of federal law," it is clear that "much would be sacrificed, and little gained, by our exercising original jurisdiction over issues bottomed on local law," where the Court has "no claim to special competence." *Id.* at 497-98. This reasoning has even more salience today than when *Wyandotte* was decided in 1971.

Arizona's primary response is that the Court's discretionary approach is inconsistent with the "time-honored maxim of the Anglo-American common-law tradition that a court possessed of jurisdiction generally must exercise it." AZ Br. 15-16 (quoting *Wyandotte*, 401 U.S. at 496-97). But as this Court has already explained, "the broad statement that a court having jurisdiction must exercise it . . . is not universally true but has been qualified in certain cases where the federal courts may, in their discretion, properly withhold the exercise of the jurisdiction conferred upon them where there is no want of another suitable forum." *Massachusetts v. Missouri*, 308 U.S. at 19. "[T]he need of the exercise of a sound discretion" is especially clear here "in order to protect this Court from an abuse of the opportunity to resort to its original jurisdiction in the enforcement by States of claims

18

against citizens of other States." *Id. See also* David L. Shapiro, *Jurisdiction and Discretion*, 60 N.Y.U. L. Rev. 543, 545 (1985) ("[F]ar from amounting to judicial usurpation, open acknowledgement of reasoned discretion [in matters of jurisdiction] is wholly consistent with the Anglo-American legal tradition."); *id.* at 548-70 (citing, *inter alia*, traditional equitable discretion not to proceed, abstention doctrines rooted in comity and federalism, prudential standing and ripeness, forum non conveniens, exhaustion of remedies, and federal question jurisdiction).

Finally, Arizona relies on Justice Thomas's dissent from denial of the motion for leave to file a complaint in *Nebraska v. Colorado*, 136 S. Ct. 1034, 1035 (2016) (mem.) (Thomas, J., dissenting). That case involved two states seeking leave to file a complaint against another state. Although the dissent thought the Court's discretionary approach generally would "bear[] reconsideration," it was focused on the fact that the Court has original *and exclusive* jurisdiction over suits between two states and therefore that, if the Court were to deny the motion, "the complaining State [would have] no judicial forum in which to seek relief." *Id.* Of course, this is not such a case; Arizona plainly has an alternative forum.

19

## CONCLUSION

For these reasons, the motion for leave to file a bill of complaint should be denied.

Respectfully submitted,

BENJAMIN S. KAMINETZKY *
MARC J. TOBAK
GERARD MCCARTHY
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
ben.kaminetzky@davispolk.com

*Counsel for Defendants Purdue Pharma, Inc. and Purdue Pharma, L.P.*

October 30, 2019          * Counsel of Record