**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
One Bryant Park
New York, New York 10036
Tel:  (212) 872-1000
Fax: (212) 872-1002

*Proposed Counsel to the Official*
*Committee of Unsecured Creditors*
*of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| PURDUE PHARMA L.P., *et al.*,[1] | Case No. 19-23649 (RDD) |
| | Jointly Administered |
| Debtors. | |

**NOTICE OF HEARING ON MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.* FOR ENTRY OF AN ORDER CLARIFYING THE REQUIREMENT TO PROVIDE ACCESS TO CONFIDENTIAL OR PRIVILEGED INFORMATION AND APPROVING A <u>PROTOCOL REGARDING CREDITOR REQUESTS FOR INFORMATION</u>**

**PLEASE TAKE NOTICE** that on November 1, 2019, the Official Committee of

Unsecured Creditors of Purdue Pharma L.P., *et al.*, (the "<u>Committee</u>") filed the *Motion of the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al., for Entry of an Order Clarifying the Requirement To Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information* (the "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>"), 300 Quarropas Street, White Plains, New York 10601, on **November 19, 2019, at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that any objections to approval of the Motion must be made in writing, filed with the Court, 300 Quarropas Street, White Plains, New York 10601, and served upon, so as to actually be received by, the undersigned counsel, on or before **November 15, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Objection Deadline</u>"). **IF NO OBJECTIONS TO THE MOTION ARE TIMELY FILED AND RECEIVED IN ACCORDANCE WITH THE ABOVE PROCEDURES, AN ORDER MAY BE ENTERED GRANTING THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated:  November 1, 2019  
New York, NY

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  /s/ Arik Preis  
Ira S. Dizengoff  
Arik Preis  
Mitchell Hurley  
Sara L. Brauner  
One Bryant Park  
New York, New York 10036  
Tel:  (212) 872-1000  
Fax: (212) 872-1002  
idizengoff@akingump.com  
apreis@akingump.com  
mhurley@akingump.com  
sbrauner@akingump.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.

**Hearing Date and Time: November 19, 2019 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: November 15, 2019 at 4:00 p.m. (prevailing Eastern Time)**

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
One Bryant Park
New York, New York 10036
Tel:  (212) 872-1000
Fax: (212) 872-1002

*Proposed Counsel to the Official*
*Committee of Unsecured Creditors*
*of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL*. FOR ENTRY OF AN ORDER CLARIFYING THE REQUIREMENT TO PROVIDE ACCESS TO CONFIDENTIAL OR PRIVILEGED INFORMATION AND APPROVING A <u>PROTOCOL REGARDING CREDITOR REQUESTS FOR INFORMATION</u>

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Purdue Pharma

L.P. and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

through its undersigned proposed counsel, hereby files this motion (the "Motion") for entry of an

order (the "Order") pursuant to sections 105(a), 107(b), and 1102(b)(3)(A) of title 11 of the

United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code") and Rule

9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in

the form attached hereto as **Exhibit A**, (i) clarifying the requirements of the Committee to

provide access to confidential or privileged information to creditors, (ii) approving a protocol

regarding creditor requests for information, and (iii) authorizing the establishment of a website to

provide creditors with access to critical information.  In support of the Motion, the Committee

respectfully states as follows.

## PRELIMINARY STATEMENT

1.      As this Court has acknowledged, these chapter 11 cases are unique in myriad

respects.  The Debtors find themselves at the center of the national opioid crisis, one of the most

devastating public health and safety epidemics in this nation's history.  Many people believe that

the Debtors' conduct resulted in widespread harm within the United States and far beyond.  As

such, the Debtors' litigation creditors comprise both public and private institutions and countless

individuals that have been harmed by the opioid crisis.

2.      The Debtors' public creditors include, among others, states, municipalities, and

Native American tribes.  The causes of action underlying the thousands of pending lawsuits

brought by public creditors include, among others, consumer protection, deceptive practices,

unfair trade practices, public nuisance, negligence, fraud, false claims, state and federal RICO,

civil conspiracy, unjust enrichment, and drug dealing/distribution.  By such actions, public

creditors have alleged that the Debtors and their shareholders, among other things: (i) sponsored

or made false statements regarding the potential for abuse, the medical efficacy, and/or the

permitted uses of its opioids; (ii) failed to address the problem of its products being diverted to

the illegal market, notwithstanding their knowledge of the problem; (iii) concealed the crisis; (iv)

paid medical professionals to publish research and materials targeting prescribing doctors; and

(v) participated in industry groups acting in concert with other pharmaceutical manufacturers and

distributors to engage in the aforementioned fraudulent acts.  As this Court is aware, certain

states, a limited number of municipalities, and the MDL PEC purportedly have agreed to a

settlement construct to resolve pending litigation, *see Notice of Filing of Term Sheet with Ad Hoc

Committee* [ECF No. 257], while a roughly equal number of states have not.

3.      The Debtors' private litigation creditors include, among others, hospitals, health

insurance carriers, personal injury plaintiffs (both adult and child), a class of claimants

representing children born with Neonatal Abstinence Syndrome ("NAS") and various birth

defects, and a class of health insurance payers who claim that their health insurance premiums

increased as a result of the opioid crisis.  Such parties seek compensatory damages in respect of

the direct harm they have suffered as a result of the opioid crisis.  Similar to the public litigants,

hospitals have brought claims, including class action claims, alleging public nuisance, RICO,

conspiracy, fraud, and negligence.  Hospitals have also alleged that they were the target of the

opioid crisis in at least two unique ways: (i) opioid manufacturers intended to overburden

hospitals and (ii) opioid manufacturers caused hospital doctors to prescribe opioids, which

hospitals contend allow them to recover nuisance damages separate from those recoverable by

states and/or municipalities.  Insurance providers (including fully-insured programs, private

administrative services, group plans and governmental programs) have also brought similar

claims, seeking recovery for, among other things, billions of dollars of opioid prescriptions that

were improperly covered or reimbursed.  Finally, personal injury claimants and a proposed class

of children diagnosed with NAS have brought myriad actions for public nuisance, deceptive
practices, negligence, civil conspiracy, personal injury, nuisance, and products liability, alleging
direct harm as a result of the conduct of Purdue and its shareholders.

4.      As this Court noted during its first exchange with counsel for the Committee, each
and every one of these public and private litigants has suffered dramatic and often disparate harm
as a result of the Debtors' alleged conduct in perpetuating the opioid crisis, and each has a voice
that must be heard in these cases.  *See* Transcript of Oct. 10, 2019 Hearing at 30:15-21 ("Serving
on a committee like this is difficult enough as it is, and there should be clear lines of
communication to facilitate that service.  I expect in due course the committee will propose
procedures consistent with the relevant Code sections dealing with disclosure and the like, ***which
are particularly important in this type of case*** . . .") (emphasis added).  In addition to providing
closure with respect to the Debtors' past conduct, this Court has acknowledged the potential for
these chapter 11 cases to become a vehicle for addressing—and even helping to ameliorate—the
opioid crisis going forward.  *See* Transcript of Oct. 11, 2019 Hearing at 102:6-17; 105:5.

5.      In view of the unique circumstances of these chapter 11 cases, the Debtors'
creditors and the general public alike have a heightened interest in the conduct and outcome of
these proceedings, including with respect to the facts and circumstances underlying the
allegations in the thousands of lawsuits currently pending against the Debtors.  As the fiduciary
for all unsecured creditors in these cases, the Committee and its professionals take seriously their
obligation to ensure that creditors have access to clear and comprehensive information regarding
the status of and key developments in these cases, how to file proofs of claim, as well as
designated points of contact and vehicles for creditors to raise and discuss specific concerns.
Open communications with creditors and others working to combat the opioid crisis is essential

to achieving the twin goals of transparency and compensation regarding the Debtors' past conduct and the remediation and abatement of the opioid crisis going forward.

6.      To that end, and in accordance with this Court's instructions, the Committee's advisors have already begun working with the Debtors and certain key creditor constituencies in an effort to establish a consensual information-sharing protocol among such creditors, the Debtors and their shareholders.  By this Motion, and in furtherance of this objective, the Committee seeks authority to establish and implement a protocol that will enable the Committee to satisfy its obligation to ensure that *all* of the Debtors' unsecured creditors have access to the information to which they are entitled, while at the same time protecting the confidentiality of information received from the Debtors and non-Debtor parties as necessary to facilitate these chapter 11 cases.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference No. M-431*, dated as of January 31, 2012 (Preska, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The legal bases for the relief requested herein are Bankruptcy Code sections 105(a), 107(b), and 1102(b)(3)(A) and (B), as supplemented by Bankruptcy Rule 9018.

---

[2] The Committee hereby confirms its consent to entry of a final order by this Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

10.     On September 16, 2019 (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to Bankruptcy

Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") have

been consolidated for procedural purposes only and are being jointly administered pursuant to

Bankruptcy Rule 1015(b).

11.     On September 26, 2019 (the "Committee Formation Date"), the United States

Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee as

an official committee of unsecured creditors pursuant to Bankruptcy Code section 1102(a) and

designated the following Committee members to represent a diverse array of creditor interests:

(i) Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services L.L.C. and

CaremarkPCS Health, L.L.C.; (iii) Ryan Hampton; (iv) Cheryl Juaire; (v) LTS Lohmann

Therapy Systems Corporation; (vi) Pension Benefit Guaranty Corporation; (vii) Walter Lee

Salmons; (viii) Kara Trainor; and (ix) West Boca Medical Center.[3]

12.     On the Committee Formation Date, the Committee selected Akin Gump Strauss

Hauer & Feld, LLP ("Akin Gump") to serve as lead counsel to the Committee, and on September

29, 2019, the Committee selected Bayard, P.A. ("Bayard") to serve as efficiency counsel to the

---

[3] On October 9, 2019, the Committee received a letter from counsel to a multi-state group comprising approximately 1,222 entities, including 1,172 cities, counties and other governmental entities, seven Native American tribal nations, six hospitals, two districts, 34 medical groups, two funds, and one veterans' class across 36 states (the "Multi-State Group") requesting the opportunity to join the Committee in an *ex officio* capacity.  After careful consideration, on October 21, 2019, the Committee determined to grant the Multi-State Group's request, and Cameron County, Texas was nominated to sit as an *ex officio* member of the Committee.  On October 30, 3019, the Multi-State Group filed the *Verified Statement of the Multi-State Governmental Entities Group Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [ECF No. 409] disclosing the identity of each member of such group. For the avoidance of doubt, the Ex Officio Member is a non-voting member of the Committee and does not owe fiduciary duties to unsecured creditors as a result of its *ex officio* seat on the Committee.

Committee. On October 1, 2019, the Committee selected Province, Inc. ("Province") to serve as its financial advisor and on October 4, 2019 the Committee selected Jefferies Group LLC ("Jefferies" and, together with Akin Gump, Bayard and Province, the "Committee Professionals") to serve as its investment banker.[4]

13.    On October 11, 2019, the Committee, the Debtors, and certain of the Debtors' shareholders entered into the *Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [ECF No. 291], which sets forth, among other things, a protocol and timeline for the sharing of information and diligence from the Debtors and their shareholders with the Committee and its advisors (the "Information Sharing Protocol"). The Committee, the Debtors and the Debtors' shareholders are also working on the terms of a protective order that will govern the parties' responsibilities with respect to information received under the Information Sharing Protocol.

14.    The Committee has obligations regarding, among other things, the protection of confidential information, materials, and communications produced by or related to the Committee, its members, and its professionals, as well as privileged information (collectively, "Confidential Committee Information").[5] Confidential Committee Information includes any and all written and oral correspondence, reports, and memoranda prepared by the Committee Professionals for the benefit of the Committee as well as all related communications received by any of the members of the Committee, including reports disseminated by Committee members among themselves and/or the Committee Professionals. The Committee also has obligations

---

[4] The Committee's retention of each of the Committee Professionals remains subject to Court approval.

[5] The Committee has adopted bylaws, which contain numerous provisions designed to, among other things, protect the Confidential Committee Information.

regarding the Committee's use and disclosure of non-public information provided to the

Committee by or on behalf of the Debtors ("Confidential Debtor Information").

## RELIEF REQUESTED

15.     By this Motion, the Committee requests entry of an Order authorizing the

Committee to establish and implement a protocol (the "Creditor Information Protocol") in

accordance with Bankruptcy Code sections 1102(b)(3)(A) and (B), effective *nunc pro tunc* to the

Committee Formation Date, to facilitate the Committee's obligation to provide information to

the Debtors' unsecured creditors.

16.     Additionally, to satisfy its fiduciary obligations in an efficient and effective

manner, and in light of the highly unique circumstances of these chapter 11 cases and the

paramount importance of creditor access to information, the Committee seeks express authority

to establish and a website for the benefit of the Debtors' creditors (the "Creditor Website"),[6]

which will be maintained by Kurtzman Carson Consultants LLC ("KCC").[7]  This Creditor

Website will be used to make non-confidential and non-privileged information available and

easily accessible to the Debtors' creditors.  Given the seriousness of the allegations against the

Debtors and the important public interest in the conduct and outcome of these proceedings, the

Committee and its professionals intend to use the Creditor Website to post information and

frequent updates in order to ensure transparency and facilitate open communication with

unsecured creditors, while at the same time respecting their obligations under any confidentiality

agreements or protective orders entered into in connection with these Chapter 11 Cases.

---

[6] The Creditor Website can be found at kccllc.net/PURDUE_CREDITORS.

[7] The Committee intends to file an application seeking to retain KCC to maintain the Creditor Website and provide other services to the Committee, in accordance with the *Order Establishing Certain Notice, Case Management, and Administrative Procedures* [ECF No. 72].

Specifically, the Committee Website will provide, among other things: (i) general information

concerning the Debtors, including access to the case docket and docket filings; (ii) contact

information for the Debtors, the Debtors' counsel and the Committee's counsel (iii); frequently

updated information regarding the status of various developments in the Chapter 11 Cases; (iv)

access to and summaries of key filings and positions the Committee has taken in the cases; (v)

access to hearing summaries and hearing transcripts when made publicly available; (vi) a case

calendar detailing upcoming hearings and other critical events; (vii) forms and instructions for

filling out proofs of claim as well as relevant related deadlines; (viii) access to a telephone

hotline and an email address maintained by KCC to the extent creditors would like additional

information or to discuss specific concerns; (ix) information regarding frequent calls hosted by

the Committee's professionals to provide all creditors with the opportunity to ask questions and

receive detailed case updates; (x) access to the claims docket as and when established by the

claims and noticing agent retained by the Debtors in these cases; and (xi) links to other relevant

websites (*e.g.*, the Debtors' corporate website, the website maintained by the Debtors' claims

and noticing agent on behalf of the Debtors, and the website of the Office of the U.S. Trustee).

17.    The relief requested herein will help facilitate the provision of important

information to the Debtors' creditors and other interested parties, while simultaneously ensuring

that confidential, privileged, proprietary, and other material non-public information will not be

disseminated to the detriment of the Debtors' estates.  Accordingly, such relief will encourage

the exchange of information between the Committee, the Debtors and their shareholders and

other parties and facilitate the Committee's performance of its statutory functions and duties

pursuant to the Bankruptcy Code.  The requested relief will also ensure that creditors have access

to clear and organized information regarding the status of the Debtors' cases and other critical

issues as well as a vehicle to get specific answers to questions and communicate with other

parties working to combat the opioid crisis.

## BASIS FOR RELIEF REQUESTED

18.     Bankruptcy Code section 1102(b)(3) provides, in relevant part, that a creditors'

committee appointed under Bankruptcy Code section 1102(a) shall "provide access to

information for creditors who—(i) hold claims of the kind represented by that committee; and

(ii) are not appointed to the committee." 11 U.S.C. § 1102(b)(3)(A).  Bankruptcy Code section

1102(b)(3)(A) does not indicate the nature, scope, or extent of the "information" that must be

provided to such creditors, or how a creditors' committee should provide "access to information"

to creditors nor does the associated legislative history provide any guidance.

19.     As Bankruptcy Code section 1102(b)(3)(A) simply requires a creditors'

committee to "provide access to information," yet sets forth no guidelines as to the type, kind,

and extent of the information to be provided, the statute could be read as requiring a creditors'

committee to provide access to all information provided to it by any party, or developed through

the exercise of its investigative function, regardless of whether the information is confidential,

privileged, proprietary, or material non-public information and regardless of whether

disseminating such information implicates securities law disclosure requirements (where

applicable).  The legislative history for Bankruptcy Code section 1102 does not provide any

further guidance on this point and merely reiterates the language of Bankruptcy Code section

1102(b)(3).  *See* H.R. REP. NO. 109-31(I), at 87 (2005) ("Section 405(b) requires the committee

to give creditors having claims of the kind represented by the committee access to information.

In addition, the committee must solicit and receive comments from these creditors and, pursuant

to court order, make additional reports or disclosures available to them.").

20.     The lack of specificity in Bankruptcy Code section 1102(b)(3)(A) is a potential
source of confusion for creditors and creditors' committees.  Here, as is typical in most chapter
11 cases, the Committee already has received and expects to continue to receive confidential,
highly confidential (*i.e.*, advisors' eyes only) and other non-public proprietary information from
the Debtors and other parties in interest, including pursuant to the Information Sharing Protocol.
This information likely will be used for, among other things, valuing assets, understanding the
Debtors' operations, analyzing potential claims and causes of action, and consideration of
restructuring proposals.  However, a creditor taking an extreme view of Bankruptcy Code section
1102(b)(3)(A) might argue that Bankruptcy Code section 1102(b)(3)(A) requires the Committee
to share another party's (including the Debtors') confidential information that such creditor
would not be able to obtain otherwise.  Such an interpretation has a strong potential to chill
information sharing between and among stakeholders and the Committee and hinder the progress
of these Chapter 11 Cases to the detriment of all parties in interest.

21.     Moreover, Bankruptcy Code section 1102(b)(3)(A) also could be read to permit
the disclosure of attorney-client privileged information or information protected by any other
applicable privilege or doctrine.  Such a reading of the statute raises the question of whether the
Committee could be required to disclose another party's or its own privileged information.  An
obligation to disseminate privileged information or Confidential Committee Information would
limit the Committee Professionals' ability to communicate effectively with and advise the
Committee, thereby reducing the benefit that active Committee engagement brings to the
administration of the Chapter 11 Cases.

22.     The Committee seeks to avoid the foregoing issues as well as any other potential

issues that could arise by implementing the following Creditor Information Protocol through the

Order:

a.  Privileged and Confidential Information: The Committee shall not be required to
disseminate to any entity (all references to "entity" herein shall have the meaning
as defined in Bankruptcy Code section 101(15)) (i) without further order of the
Court, Confidential Debtor Information, Confidential Committee Information, or
confidential or non-public proprietary information from other parties
("Confidential Non-Debtor Information," and collectively with Confidential
Debtor Information and Confidential Committee Information, "Confidential
Information") or (ii) any information subject to attorney-client or some other
state, federal, or other jurisdictional law privilege (including attorney-work
product), whether such privilege is solely controlled by the Committee or is a
joint or common interest privilege with the Debtors or some other party
("Privileged Information").  In addition, the Committee shall not be required to
provide access to information for or solicit comments from any entity that has not
demonstrated to the satisfaction of the Committee, in its sole discretion, or to the
Court, that it holds a claim of the kind described in Bankruptcy Code section
1102(b)(3).

b.  Information Obtained through Discovery: Any information received (formally or
informally) by the Committee pursuant to Bankruptcy Rule 2004 or in connection
with any formal or informal discovery in any contested matter, adversary
proceeding, or other litigation shall not be governed by any order entered with
respect to this Motion but, rather, by any order governing such discovery.
Nothing herein shall obligate the Committee to provide any such information that
the Committee obtains from third parties.

c.  Creditor Information Requests: If a creditor (a "Requesting Creditor") submits a
written request to the Committee or the Committee Professionals for the
Committee to disclose information (an "Information Request"), pursuant to
Bankruptcy Code section 1102(b)(3)(A), the Committee shall, as soon as
reasonably practicable, but no more than thirty (30) days after receipt of the
Information Request, provide a response to the Information Request (a
"Response"), including by providing access to the information requested or
stating the reason(s) why the Committee cannot disclose the information
requested by such Information Request.  If the Response is to deny the
Information Request because the Committee believes that the Information
Request implicates Confidential Information or Privileged Information that need
not be disclosed, including, but not limited to, (i) pursuant to the terms of this
Order or otherwise under Bankruptcy Code section 1102(b)(3)(A), (ii) because
such disclosure is prohibited under applicable law, (iii) because such information
was obtained by the Committee pursuant to an agreement to maintain it as
confidential, or (iv) because the Information Request is unduly burdensome, the

Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee (which could include the Committee Professionals) regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion. Such motion to compel shall be properly served, including on the Debtors and the Committee Professionals, and the hearing on such motion to compel shall be noticed and scheduled, and any party may object to such motion. Nothing herein shall be deemed to preclude the Requesting Creditor from requesting (or the Committee or any other party from denying or objecting to such request, as applicable) that the Committee provide the Requesting Creditor with a log or other index of any information specifically responsive to the Requesting Creditor's request that the Committee deems to be Confidential Information or Privileged Information. Further, nothing herein shall be deemed to preclude the Requesting Creditor from requesting (or the Committee or any other party from denying or objecting to such request, as applicable) that the Court conduct an *in camera* review of the information subject to the Information Request.

d.  <u>Release of Confidential Information of Third Parties</u>: If the Information Request implicates Confidential Debtor Information or Confidential Non-Debtor Information and the Committee agrees that such request should be satisfied, or if the Committee without a third party request wishes to disclose such Confidential Information to creditors, the Committee may demand such disclosure (a "<u>Demand</u>") for the benefit of the Debtors' creditors: (i) if the Confidential Information is Confidential Debtor Information, by submitting a written request to counsel for the Debtors requesting that such information be disclosed, and (ii) if the Confidential Information is Confidential Non-Debtor Information, by submitting a written request to such third party and its counsel of record (if any), with a copy to the Debtors' counsel, requesting that such information be disclosed. If the Debtors or such other entity do not agree in writing within ten (10) days after receipt of the Demand to disclose such information, the Committee or the Requesting Creditor may file a motion seeking a ruling with respect to the Demand, and the Debtors or such other entity, as applicable, may file an objection to such motion. Demands submitted to counsel to the Debtors pursuant to this clause (d) shall be submitted by email to: Marshall S. Huebner (marshall.huebner@davispolk.com), Benjamin S. Kaminetzky (benjamin.kaminetzky@davispolk.com), Timothy Graulich (timothy.graulich@davispolk.com), and Eli J. Vonnegut (eli.vonnegut@davispolk.com). The Committee will not be authorized to disclose Confidential Debtor Information or Confidential Non-Debtor Information absent an agreement in writing from the Debtors (or their professional advisors) or such other party, as applicable, or further order of the Court. For the avoidance of doubt, this paragraph (d) is subject to paragraph (b) above.

e.  The Committee (or its members and representatives) will not be precluded from discussing commonly-received Confidential Information (and sharing analyses or other documents generated by the Committee based on such commonly-received Confidential Information) with any other party in interest in the Debtors' Chapter

16

11 Cases and/or its advisor(s) that have signed a confidentiality agreement similar to the confidentiality agreement entered into between the Committee and the Debtors or any other party.

23.    The Order would also permit, but not require, the Committee to provide access to Privileged Information to any party so long as the relevant privilege is held and controlled solely by the Committee and does not include Confidential Debtor Information or Confidential Non-Debtor Information.

24.    The Committee believes that granting the relief requested herein will ensure efficient administration of the Chapter 11 Cases and active Committee engagement.  The requested relief is consistent with the language of the Bankruptcy Code.  Indeed, Congress did not intend for a creditors' committee to be required to provide unfettered access to every type and kind of information that a creditors' committee receives from another party as that would result in Bankruptcy Code section 1102(b)(3) frustrating other provisions of the Bankruptcy Code and Bankruptcy Rules, including Bankruptcy Code section 107(b) and Bankruptcy Rule 9018.  Moreover, the requested relief will ensure that creditors have access, through the Creditor Website, to critical information regarding these Chapter 11 Cases and avenues through which to connect with other creditors and parties working to combat the opioid crisis.

25.    Bankruptcy Code section 107(b)(1) provides that, "on request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information."  11 U.S.C. § 107(b)(1).  The language of Bankruptcy Code section 107(b)(1) is mandatory, not permissive.  *Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir. 1994) (providing that the protections of section 107(b)(1) are mandatory upon request).  The plain language of this section of the Bankruptcy Code mandates that confidential information be protected.

17

26.     Bankruptcy Rule 9018 further supports an interpretation of Bankruptcy Code

section 1102(b)(3) that does not require creditors' committees to disseminate confidential or

privileged information or materials.  Bankruptcy Rule 9018 states, in relevant part, that "[o]n

motion or on its own initiative, with or without notice, the court may make any order which

justice requires (1) to protect the estate or any entity in respect of a trade secret or other

confidential research, development, or commercial information . . . ."  Fed. R. Bankr. P. 9018.

Bankruptcy Rule 9018 goes a step further than Bankruptcy Code section 107(b)(1); the rule

expressly allows a court to act on its own initiative.

27.     Finally, Bankruptcy Code section 105(a) empowers the Court to "issue any

order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §

105(a).  The Committee submits that the requested relief is both necessary for the Committee to

fulfill its obligations as set forth under Bankruptcy Code section 1103(c) and appropriate in light

of Bankruptcy Code section 107(b)(1), Bankruptcy Rule 9018, the equitable considerations of

efficient case administration and the unique facts and circumstances of these Chapter 11 Cases.

28.     The Creditor Information Protocol sets forth narrowly tailored rules designed to

protect the interests of the Debtors, the Committee, and affected third parties while permitting

reasonable access to information for the Debtors' unsecured creditors.  It will encourage open

informal discovery and due diligence and ensure the proper functioning of the chapter 11

process.

29.     The Committee submits that the requested relief is appropriate and within the

Court's authority.  Courts in this District have held that Bankruptcy Code section 1102(b)(3)(A)

does not require creditors' committees to provide non-member creditors with access to

confidential or privileged information.  *See, e.g., In re MF Global Holdings Ltd.*, 2012 Bankr.

18

LEXIS 898 (Bankr. S.D.N.Y. Mar. 6, 2012); *In re Refco Inc*., 336 B.R. 187, 197 (Bankr.

S.D.N.Y. 2006).  In *Refco*, this court stated that "[m]aintaining confidentiality against unsecured

creditors generally may be necessary to preserve the committee's attorney-client privilege."

*Refco*, 336 B.R. at 197.  The *Refco* court further noted that "one should proceed cautiously

concerning the disclosure of information that could reasonably have the effect of waiving the

attorney-client or other privilege . . . notwithstanding Bankruptcy Code section 1102(b)(3)."  *Id.*

Moreover, bankruptcy courts in this district routinely grant relief substantially similar to the

relief requested herein.  *See, e.g., In re Aegean Marine Petroleum Network Inc.*, No. 18-13374

(MEW) (Bankr. S.D.N.Y. Jan. 17, 2019) [ECF No. 309]; *In re Sears Holdings Corp.*, No. 18-

23538 (RDD) (Bankr. S.D.N.Y. Dec. 10, 2018) [ECF No. 1108]; *In re Nine West Holdings, Inc.*,

No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 5, 2018) [ECF No. 353]; *In re BCBG Max Azria

Global Holdings, LLC,* No. 17-10466 (SCC) (Bankr. S.D.N.Y. April 5, 2017) [ECF No. 277]; *In

re Avaya Inc.,* No. 17-10089 (SMB) (Bankr. S.D.N.Y. March 16, 2017) [ECF No. 249]; *In re

AOG Entm't, Inc.,* No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 30, 2016) [ECF No. 188]; *In re

SunEdison, Inc.,* No. 16-10992 (SMB) (Bankr. S.D.N.Y. June 8, 2016) [ECF No. 507]; *In re

Sabine Oil & Gas Corp.,* No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) [ECF No. 321];

*In re MPM Silicones, LLC,* No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 2, 2014) [ECF No.

298]; *In re Ambac Fin. Grp., Inc.* No. 10-15973 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2010) [ECF

No. 76]; *In re Neff Corp.,* No. 10-12610 (SCC) (Bankr. S.D.N.Y. July 13, 2010) [ECF No. 269].

## NOTICE

30.     Notice of this Motion will be provided in accordance with the procedures set forth

in the *Order Establishing Certain Notice, Case Management, and Administrative Procedures*

[ECF No. 72].  The Committee respectfully submits that no further notice is required.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (i) enter the Order,

substantially in the form attached hereto as **Exhibit A**, and (ii) grant the Committee such other

and further relief as is just, proper, and equitable.


Dated:  November 1, 2019                AKIN GUMP STRAUSS HAUER & FELD LLP
New York, NY                            By:  /s/ Arik Preis
                                        Ira S. Dizengoff
                                        Arik Preis
                                        Mitchell Hurley
                                        Sara L. Brauner
                                        One Bryant Park
                                        New York, New York 10036
                                        Tel:  (212) 872-1000
                                        Fax: (212) 872-1002
                                        idizengoff@akingump.com
                                        apreis@akingump.com
                                        mhurley@akingump.com
                                        sbrauner@akingump.com

                                        *Proposed Counsel to the Official Committee of*
                                        *Unsecured Creditors of Purdue Pharma L.P., et al.*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**ORDER CLARIFYING THE COMMITTEE'S REQUIREMENT TO**
**PROVIDE ACCESS TO CONFIDENTIAL OR PRIVILEGED**
**INFORMATION AND APPROVING A PROTOCOL**
**REGARDING CREDITOR REQUESTS FOR INFORMATION**

Upon the motion (the "Motion")[2] of the Committee for entry of an order (this "Order"),

pursuant to Bankruptcy Code sections 105(a), 107(b), and 1102(b)(3)(A) and (B) and

Bankruptcy Rule 9018, clarifying the requirements of the Committee to provide access to

confidential or privileged information to creditors and approving a protocol regarding creditor

requests for information; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference No. M-431, dated as of

January 31, 2012 (Preska, C.J.); and this Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

consistent with Article III of the United States Constitution; and this Court having found that

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that the relief requested in the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and this Court

having found that the notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion; and this Court having determined that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and upon all of the proceedings

had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY ORDERED THAT**:

1.      The relief requested in the Motion is granted, effective *nunc pro tunc* to the

Committee Formation Date, as set forth herein.

2.      The Committee shall implement the following Creditor Information Protocol in

accordance with Bankruptcy Code sections 1102(b)(3)(A) and (B):

      a.      <u>Privileged and Confidential Information</u>: The Committee shall not be required to
disseminate to any entity (all references to "entity" herein shall have the meaning
as defined in Bankruptcy Code section 101(15)) (i) without further order of the
Court, Confidential Information or (ii) Privileged Information.  In addition, the
Committee shall not be required to provide access to information for or solicit
comments from any entity that has not demonstrated to the satisfaction of the
Committee, in its sole discretion, or to the Court, that it holds a claim of the kind
described in Bankruptcy Code section 1102(b)(3).

      b.      <u>Information Obtained through Discovery</u>: Any information received (formally or
informally) by the Committee pursuant to Bankruptcy Rule 2004 or in connection
with any formal or informal discovery in any contested matter, adversary
proceeding, or other litigation shall not be governed by this Order but, rather, by
any order governing such discovery.  Nothing herein shall obligate the Committee
to provide any such information that the Committee obtains from third parties.

      c.      <u>Creditor Information Requests</u>: If a creditor (a "<u>Requesting Creditor</u>") submits a
written request to the Committee or the Committee Professionals for the
Committee to disclose information (an "<u>Information Request</u>"), pursuant to

2

Bankruptcy Code section 1102(b)(3)(A), the Committee shall, as soon as reasonably practicable, but no more than thirty (30) days after receipt of the Information Request, provide a response to the Information Request (a "Response"), including by providing access to the information requested or stating the reason(s) why the Committee cannot disclose the information requested by such Information Request.  If the Response is to deny the Information Request because the Committee believes that the Information Request implicates Confidential Information or Privileged Information that need not be disclosed, including, but not limited to, (i) pursuant to the terms of this Order or otherwise under Bankruptcy Code section 1102(b)(3)(A), (ii) because such disclosure is prohibited under applicable law, (iii) because such information was obtained by the Committee pursuant to an agreement to maintain it as confidential, or (iv) because the Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee (which may include the Committee Professionals) regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion.  Such motion to compel shall be properly served, including on the Debtors and the Committee Professionals, and the hearing on such motion to compel shall be noticed and scheduled, and any party may object to such motion.  Nothing herein shall be deemed to preclude the Requesting Creditor from requesting (or the Committee or any other party from denying or objecting to such request, as applicable) that the Committee provide the Requesting Creditor with a log or other index of any information specifically responsive to the Requesting Creditor's request that the Committee deems to be Confidential Information or Privileged Information. Further, nothing herein shall be deemed to preclude the Requesting Creditor from requesting (or the Committee or any other party from denying or objecting to such request, as applicable) that the Court conduct an *in camera* review of the information subject to the Information Request.

d.    Release of Confidential Information of Third Parties: If the Information Request implicates Confidential Debtor Information or Confidential Non-Debtor Information and the Committee agrees that such request should be satisfied, or if the Committee without a third party request wishes to disclose such Confidential Information to creditors, the Committee may demand such disclosure (a "Demand") for the benefit of the Debtors' creditors: (i) if the Confidential Information is Confidential Debtor Information, by submitting a written request to counsel for the Debtors requesting that such information be disclosed, and (ii) if the Confidential Information is Confidential Non-Debtor Information, by submitting a written request to such third party and its counsel of record (if any), with a copy to the Debtors' counsel, requesting that such information be disclosed.  If the Debtors or such other entity do not agree in writing within ten (10) days after receipt of the Demand to disclose such information, the Committee or the Requesting Creditor may file a motion seeking a ruling with respect to the Demand, and the Debtors or such other entity, as applicable, may file an objection to such motion.  Demands submitted to counsel to the Debtors pursuant to this clause (d) shall be submitted by email to: Marshall S. Huebner

3

(marshall.huebner@davispolk.com), Benjamin S. Kaminetzky
(benjamin.kaminetzky@davispolk.com), Timothy Graulich
(timothy.graulich@davispolk.com), and Eli J. Vonnegut
(eli.vonnegut@davispolk.com).  The Committee will not be authorized to disclose
Confidential Debtor Information or Confidential Non-Debtor Information absent
an agreement in writing from the Debtors (or their professional advisors) or such
other party, as applicable, or further order of the Court.  For the avoidance of
doubt, this paragraph (d) is subject to paragraph (b) above.

e.   The Committee (or its members and representatives) will not be precluded from
discussing commonly-received Confidential Information (and sharing analyses or
other documents generated by the Committee based on such commonly-received
Confidential Information) with any other party in interest in the Debtors' chapter
11 cases and/or its advisor(s) that have signed a confidentiality agreement similar
to the confidentiality agreement entered into between the Committee and the
Debtors or any other party.

3.      The Committee shall be permitted (solely to the extent set forth in this Order or

any other order of the Court or the Bankruptcy Code), but is not required, pursuant to

Bankruptcy Code section 1102(b)(3)(A) to provide access to any Confidential Information to any

creditor with a claim of the kind represented by the Committee.

4.      The Committee shall not be required pursuant to Bankruptcy Code section

1102(b)(3)(A) to provide access to any Privileged Information to any creditor with a claim of the

kind represented by the Committee.  Nonetheless, the Committee shall be permitted, but not

required, to provide access to Privileged Information or Confidential Committee Information to

any party so long as (a) such Privileged Information or Confidential Committee Information does

not include any Confidential Debtor Information or Confidential Non-Debtor Information and

(b) any relevant privilege is held and controlled solely by the Committee.

5.      Nothing in this Order shall diminish or modify any rights or obligations of the

Committee or its members and representatives with respect to the protection of Confidential

Information or any confidentiality agreement entered into with the Debtors or any other party

(including the Committee's or its members' and representatives' rights to disclose Confidential

Information as permitted under any such confidentiality agreement), which rights or obligations shall remain in full force and effect notwithstanding any provision of this Order.

6.      None of the Debtors, the Committee, or any of their respective directors, officers, employees, members, attorneys, consultants, advisors, or agents (acting in such capacity) (collectively, the "Exculpated Parties"), shall have to incur any liability to any entity (including the Debtors or their affiliates) for any act taken or omitted to be taken pursuant to the Creditor Information Protocol set forth herein; *provided*, *however*, that the foregoing shall not affect the liability of any Exculpated Party protected pursuant to this paragraph that otherwise would result from any such act or omission to the extent that such act or omission is determined in a final non-appealable order to have constituted gross negligence or willful misconduct.  Without limiting the foregoing, the exculpation provided in this paragraph shall be coextensive with any Exculpated Party's qualified immunity under applicable law.

7.      The Committee is hereby authorized to establish and maintain the Creditor Website as described in the Motion.

8.      The Committee is authorized to use Kurtzman Carson Consultants LLC ("KCC") to maintain the Creditor Website and provide other services, subject to the Court's approval of the Committee's application to retain KCC.

9.      Nothing in this Order shall expand, restrict, affirm, or deny the right or obligation, if any, of the Committee to provide access or not provide access to any information of the Debtors to any party except as explicitly provided herein.

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019

HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE