**Hearing Date and Time: November 19, 2019 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: November 15, 2019 at 4:00 p.m. (prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.***,** | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF HEARING ON APPLICATION OF DEBTORS FOR AUTHORITY TO
RETAIN AND EMPLOY DECHERT LLP AS SPECIAL COUNSEL TO THE DEBTORS
<u>*NUNC PRO TUNC*</u> TO THE PETITION DATE**

**PLEASE TAKE NOTICE** that on November 5, 2019, Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed the *Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* (the "**Application**"). A hearing on the Application will be held on **November 19, 2019, at 10:00 a.m.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**(Prevailing Eastern Time)** (the "**Hearing**") before the Honorable Judge Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Application shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 and the

*Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*, entered on October 23, 2019 [Docket No. 342], so as to be filed and received no later than **November 15, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered without further notice or opportunity to be heard.

Dated:  November 5, 2019
        New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By:  */s/ Eli J. Vonnegut*

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone: (212) 450-4000
                                    Facsimile:  (212) 701-5800
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Timothy Graulich
                                    Eli J. Vonnegut

                                    *Proposed Counsel to the Debtors*
                                    *and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN AND EMPLOY DECHERT LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") hereby represent in support of this application (this "**Application**"):

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

#92414499v12

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final order or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27, 2019, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the creditors' committee pursuant to section 1102 of the Bankruptcy Code [D.I. 131]. No request has been made for the appointment of a trustee or examiner in above-captioned chapter 11 cases. These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 59] entered by the Court in each of the chapter 11 cases.

3. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* [D.I. 17].

**Relief Requested**

4. By this Application, pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors request authority to retain and employ Dechert LLP ("**Dechert**") as special counsel to the Debtors for the matters described herein, effective *nunc pro tunc* to the Petition Date.

5. A proposed form of order granting the relief requested in this Application is attached hereto as **Exhibit A** (the "**Proposed Order**").

6. In support of the relief requested herein, the Debtors submit the (i) *Declaration of Hayden Coleman in Support of Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* (the "**Coleman Declaration**"), attached hereto as **Exhibit B** and (ii) *Declaration of Marc L. Kesselman in Support of the Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* (the "**Kesselman Declaration**"), attached hereto as **Exhibit C**.

**Scope of Dechert's Services**

7. Dechert has a longstanding relationship with the Debtors and is being retained to continue to provide the litigation services the firm has provided to the Debtors over the past 26 months (as more fully described below, the "**Dechert Litigation Services**" or "**Litigation Services**"). Dechert is and has been in charge of national coordination of nearly 2,600 civil actions, including cases filed by the Attorneys General of almost every state and territory, pending in various state and federal courts across the United States and its territories. The cases generally allege that Purdue marketed prescription opioids in violation of state common-law tort duties and

3

consumer protection, tort, and business statutes.  Approximately 2,200 of the cases, most of which are brought by cities and counties, are pending in a multidistrict litigation in the United States District Court for the Northern District of Ohio.  Additionally, approximately 390 individual and coordinated actions are being litigated in state courts and other forums nationwide.  The federal and state cases are in various stages of advancement and additional cases have continued to be filed prior to entry by this Court of the preliminary injunction in Adv. P. No. 19-08289 (RDD) [Dkt. No. 89].  Fact and expert discovery has been underway in many jurisdictions as has briefing and argument on motions to dismiss and motions for summary judgment.  Trial dates have been set in more than a dozen cases nationwide through 2021.  Dechert also assists the Debtors in responding to regulatory inquiries from various governmental agencies concerning the opioid crisis, when necessary.  Dechert is expected to continue representing the Debtors in these cases to the extent necessary, and respond to all inquiries, actions and motions brought by, or in front of, the courts supervising these actions.  Dechert's intimate knowledge of the claims and defenses asserted in these actions will be instrumental in any estimation or other claims related proceedings in these Bankruptcy Cases.

8. In addition to the Dechert Litigation Services, Dechert also handles certain of the Debtors' patent prosecutions and related intellectual property issues (the "**Dechert Patent Services**" or "**Patent Services**", and together with the Dechert Litigation Services, the "**Dechert Services**").  Dechert has in the past and is currently providing legal services in relation to the following patent applications: (1) application no. 15/324,528; (2) application no. 16/446,373; (3) application no. 16/446,397; (4) application no. 16/318,686; (5) application no. 16/557,937; (6) application no. 62/799,710; and (7) PCT/IB2019/050522.  Dechert will continue to provide the Dechert Patent Services to the Debtors during these chapter 11 cases.  In the ordinary course of

business and consistent with past practices, Dechert expects to provide additional patent and intellectual property services as requested by the Debtors.

9. The Debtors require, and will continue to require, the Dechert Services during these chapter 11 cases, including with respect to new matters that may arise. In addition, Dechert's history and familiarity with the Debtors will enable the firm to provide the Debtors and their restructuring advisors with knowledge and expertise about historical matters and issues that may affect the Debtors' chapter 11 cases. Dechert will not serve as the Debtors' general or special bankruptcy counsel and will not advise the Debtors or their estates with respect to their duties under the Bankruptcy Code.

10. Subject to approval of this Application, Dechert has informed the Debtors that it is willing to serve as the Debtors' special counsel and to perform the Dechert Services on matters arising during these chapter 11 cases.

### Dechert's Qualifications

11. The Debtors selected Dechert to provide the Dechert Services due to the firm's reputation and expertise in the relevant fields of law. The Debtors have relied on Dechert's lawyers to provide litigation counsel to the Debtors for more than 26 months[2] with respect to the opioid litigation and for longer with respect of the Dechert Patent Services. By virtue of the firm's prior engagement, Dechert is intimately familiar with the facts and history of the Debtors' business. As such, the retention of Dechert as special counsel will promote the efficient administration of these chapter 11 cases. Conversely, if required to retain different counsel to provide the Dechert Services, the Debtors will be forced to expend significant resources and expense to make such new

---

[2] Most of the Dechert lawyers engaged in the Dechert Litigation Services were retained by Purdue in connection with the opioid litigation while associated with a different law firm. Those lawyers joined Dechert in or about May, 2018 and the litigation was transferred to the firm.

5

#92414499v12

counsel familiar with the Debtors' business and to familiarize such counsel with the legal issues and status of matters that Dechert has handled or is handling for the Debtors.

12. In light of the foregoing, Dechert is well qualified and uniquely able to represent the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code, and the Dechert's retention would be in the best interest of the Debtors' estates, creditors, and other parties in interest.

### Dechert Does Not Represent or Hold an Interest Materially Adverse to the Debtors or Their Estates with Respect of the Dechert Services

13. To the best of the Debtors' knowledge, information, and belief, except as disclosed in the Coleman Declaration, Dechert has represented that it neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any of the Dechert Services.

14. The Debtors have been informed that Dechert will supplement the Coleman Declaration if any facts or circumstances are discovered that require additional disclosure.

### Dechert's Compensation

15. Dechert currently provides the Debtors the following compensation arrangements for the Dechert Services:[3]

a) For the Dechert Litigation Services, the current hourly billing rates for Dechert professionals expected to spend significant time on the engagement range from $895.00 to

---

[3] Certain of the prepetition payments reflect the payment of estimated, rather than actual, fees and expenses for the applicable invoice period. Any prepetition payments in excess of Dechert's actual fees and expenses for the applicable invoice period will be added to, and treated as part of, the Retainer. Any shortfall in the prepetition payments compared to Dechert's actual fees and expenses will result in an application, and corresponding reduction in the amount of the Retainer. Accordingly, the amount of the Retainer remaining after (a) the reconciliation of any estimated prepetition payments and (b) the application of the prepetition payments or the Retainer to Dechert's actual fees and expenses for the prepetition period may differ from the amount reported above. Dechert will not apply any portion of the Retainer to fees and expenses incurred from and after the Petition Date unless and until authorized to do so by a further order of, or procedures approved by the Court.

6

$1,425.00 for partners, $565.00 to $890.00 for associates and counsel, $365.00 for staff attorneys, and $200.00 for paralegals.[4] The aforementioned hourly billing rates reflect voluntary discounts as follows: a 1% to 24% discount for senior partners, a 6% to 13% discount for junior partners, a 1% to 5% discount for counsel, and a 5% to 10% discount for associates. In addition to the discounted hourly rates, Dechert also provides a voluntary discounts, calculated on an annual basis, for the Dechert Litigation Services based on the aggregate amounts invoiced in the calendar year as follows: Dechert provides a 12% discount for fees aggregating $1 to $5 million, an 18% discount for fees aggregating invoices totally $5 to $9 million, and a 20% discount for fees aggregating over $9 million.

b)  For the Dechert Patent Services, the current hourly billing rates for Dechert professionals expected to spend significant time on the engagement range from $695.00 to $940.00 for partners, $690.00 to $710.00 for associates, $350.00 to $545.00 for patent agents, and $150.00 to $385.00 for paralegals.[5] These rates reflect a voluntary discount of 6% to 27% for partners, and 11% to 22% for associates. In addition to the discounted hourly rates, Dechert also provides a voluntary discount, based aggregate amounts invoiced in the calendar year as follows:[6] Dechert provides a 5% discount for fees up $1 million, a

---

[4] These rates reflect a new fee schedule that went into effect on September 1, 2019. Dechert's hourly rates are subject to change from time to time in the regular course of Dechert's business. For the Litigation Services, consistent with ordinary course of business across the Firm, Dechert increases the hourly billing rate of attorneys and paraprofessionals in July of each year in the form of step increases historically awarded on the basis of advancing seniority and promotion. Rate adjustments will be highlighted in any applicable fee applications. The step increases do not constitute "rate increases" as the term is used in the Guidelines as defined below.

[5] With the exception of Samuel Abrams' rate, which has been frozen since 2015, Dechert's hourly rates are subject to change from time to time in the regular course of Dechert's business. For the Patent Services, consistent with ordinary course of business across the Firm, Dechert increases the hourly billing rate of attorneys and paraprofessionals (other than Mr. Abrams) in January of each year in the form of periodic increases within each attorney's and paraprofessional's current level of seniority. Rate adjustments will be highlighted in any applicable fee applications.

[6] The amounts required to receive the voluntary volume-based discount do not include the amounts Mr. Abrams bills to the Debtors for his Patent Services. Accordingly, his time and rate are not subject to the volume-based discount.

7

7% discount for fees aggregating $1 to $2 million, and a 10% discount for fees aggregating $2 to $3 million.

16. In addition to the hourly billing rates set forth herein, Dechert customarily charges its clients for all reimbursable expenses incurred, including photocopying charges, messengers, courier mail, overtime, overtime meals, late night transportation, travel, lodging, meal charges for business meetings, postage, printing, transcripts, filing fees, computer research, and similar items.

17. At the Debtors' request, and to address appropriate staffing levels, Dechert uses Beacon Hill Staffing, an outside staffing service, for additional contract attorneys who perform document analysis in connection with a wide range of litigation needs, including experts, deposition preparation, and trial preparation. The services provided by the Beacon Hill contract attorneys are billed to Dechert, which in turn bills it as an expense to the Debtors.

18. Dechert also utilizes a large number of outside vendors in connection with the Dechert Litigation Services, including, discovery vendors, trial graphics vendors, trial consultants, trial vendors, document analysis vendors and jury consultants. At the request of the Debtors, Dechert aggregates the vendors' invoices and bills them to the Debtors as an expense. Dechert pays the vendors only after the Debtors have paid these expenses.

19. Finally, Dechert utilizes various testifying experts in connection with the Dechert Litigation Services (the "**Experts**"). Dechert maintains an expense trust account (the "**Expense Trust Account**") dedicated for the payment of the Experts' fees and expenses and certain vendors with related services.

20. The Debtors respectfully submit that Dechert's rates and policies, as stated in the herein and in the Declaration, are reasonable, customary and customary in litigations of this magnitude.

#92414499v12

21. The Debtors understand that Dechert will apply to the Court for allowance of compensation and reimbursement of expenses for all professional services performed and expenses incurred after the Petition Date in accordance with General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "**Fee Guidelines**")[7], the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

22. As set forth in the Coleman Declaration, on June 6, 2019 Dechert held $106,790 in the Expense Trust Account and $3,105,991 in retainer for legal fees (the "**Retainer**"). Between June 6, 2019 and the Petition Date, Dechert issued to the Debtors invoices aggregating $25,796,394.20 and was paid, including application of Retainer funds, $30,087,006.93. During the same period withdrawals from the Expense and Trust Account and the retainer aggregated $19,639,921.37 and deposits on account of the Expense Trust Account and the Retainer aggregated $29,153,923.15. On the Petition Date the balance in the Expense Trust Account was $3,105,991 and the Retainer was $7,708,095.20.

23. To the best of the Debtors' knowledge, neither Dechert nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be

---

[7] The majority of time that Dechert professionals spend on matters related to the Debtors is billed to non-bankruptcy matters, to which the U.S. Trustee's categories as outlined in the Fee Guidelines are inapplicable. Accordingly, Dechert professionals will continue to bill time spent on non-bankruptcy matters to the pre-petition, non-bankruptcy, task codes.

9

rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code. Dechert has agreed not to share compensation received in connection with the Debtors' chapter 11 cases with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing of compensation among Dechert's partners.

### No Duplication of Services

24.     The Debtors intend that the Dechert Services will complement, and not duplicate, the services being rendered by any other professional retained in these chapter 11 cases. Dechert understands that the Debtors have retained and may retain additional professionals during the term of their engagement and agrees to work cooperatively with such professionals to avoid any duplication of services.

### Statement Regarding U.S. Trustee Guidelines

25.     The following information is provided in response to the request for additional information set forth in Paragraph D.1. of the U.S. Trustee Guidelines:

Question: Did Dechert agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Answer: Yes. The Debtors enjoy discounted rates as well volume discounts as described herein.

Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Answer: No.

Question: If Dechert represented the client in the 12 months prepetition, disclose Dechert's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If Dechert's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Answer: During the twelve (12) month period prior to the petition, Dechert's billing rates and material financial terms with respect to the Litigation Services have changed. From May 1, 2018 through August 31, 2019, with respect to the Litigation Services, Dechert's billing rates were fixed at the rates agreed to when the case moved to Dechert from the prior firm where many of the lawyers practiced and did not change, other than the step increase (in July of each year) on the basis of advancing seniority and promotion. Beginning on September 1, 2019, the Debtors and Dechert entered into a new fee schedule that reflects the discounts described in paragraph 17(a) herein. During the twelve (12) month period prior to the petition, Dechert's billing rates and material financial terms with respect to the Patent Services have not changed, other than the periodic adjustment (in January of each year) to reflect economic and other conditions.

Question: Did you approve Dechert's prospective budget and staffing plan, and, if so for what budget period?

Answer: Dechert and the Debtors are currently working on a budget and staffing plan for Dechert's work for the Debtors. The budget necessarily will involve a projection

## The Relief Requested Should Be Granted

26. Section 327(e) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ, for a specified special purpose, other than to represent the [debtor in possession] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). Bankruptcy Rule 2014 requires that applications for retention of professionals include, among other things:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

11

#92414499v12

27. In light of the size and complexity of these chapter 11 cases, the Debtors respectfully submit that retaining and employing Dechert pursuant to the terms of this Application is necessary and in the best interests of the Debtors' estates and all parties in interest in these chapter 11 cases. As set forth in the Coleman Declaration, Dechert has represented the Debtors for approximately 26 months and has in-depth knowledge of the Debtors' business and the tax and regulatory framework in which the Debtors operate. The Dechert Services will not overlap, but rather will complement, the services to be provided by the Debtors' general bankruptcy counsel, Davis Polk & Wardwell LLP. Dechert has also represented to the Debtors that it neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any matter for which it will be employed.

### *Nunc Pro Tunc* Relief is Warranted

28. The Debtors believe that the employment of Dechert effective *nunc pro tunc* to the Petition Date is warranted under the circumstances of these chapter 11 cases so that Dechert may be compensated for its services prior to entry of an order approving Dechert's retention. Further, the Debtors believe that no party-in-interest will be prejudiced by the granting of the *nunc pro tunc* employment because Dechert has provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

### Notice

29. Notice of this Application will be provided to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

30. A copy of this Application and any order approving it will also be made available on the Debtors' Case Information Website located at https://restructuring.primeclerk.com/purduepharma. Based on the circumstances surrounding this Application and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## No Previous Request

31. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order and such other and further relief as is just.

Dated:   New York, New York
         November 5, 2019

PURDUE PHARMA L.P.
(for itself and on behalf of its affiliates that are debtors and debtors in possession)

*/s/ Marc L. Kesselman*

Marc L. Kesselman
Senior Vice President, General Counsel & Corporate Secretary
Purdue Pharma L.P.