## **Exhibit B**

**Coleman Declaration**

#92414499v12

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 |
| Debtors.[1] | (Jointly Administered) |

### DECLARATION OF HAYDEN COLEMAN IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN AND EMPLOY DECHERT LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

I, Hayden Coleman, hereby declare that the following statements are true and correct to the best of my knowledge after due inquiry as described herein:

1. I am a partner of the law firm of Dechert LLP ("**Dechert**"), which maintains offices at 1095 Avenue of the Americas, New York, New York 10036. I am an attorney admitted to practice law in the State of New York. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

5362068.2

2. This Declaration is made in support of the application (the "**Application**")[2] of Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for authority to retain Dechert as the Debtors' special counsel, which is filed contemporaneously herewith.

3. Dechert has a longstanding relationship with the Debtors, having represented the Debtors in litigation matters for more than 26 months[3] with respect to the opioid litigation and for longer with respect of the Dechert Patent Services. Dechert has been in charge of national coordination of nearly 2,600 civil actions, including cases filed by the Attorneys General of almost every state and territory, pending in various state and federal courts across the United States and its territories. The cases generally allege that Purdue marketed prescription opioids in violation of state common-law tort duties and consumer protection, tort, and business statutes. Approximately 2,200 of the cases, most of which are brought by cities and counties, are pending in a multidistrict litigation in the United States District Court for the Northern District of Ohio. Approximately 390 individual and coordinated actions are being litigated in state courts and other forums nationwide. The federal and state cases are in various stages of advancement and additional cases have continued to be filed this month. Fact and expert discovery has been underway in many jurisdictions as has briefing and argument on motions to dismiss and motions for summary judgment. Trial dates have been set in more than a dozen cases nationwide through

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Application.
[3] Most of the Dechert lawyers engaged in the Dechert Litigation Services were retained by Purdue in connection with the opioid litigation while associated with a different law firm. Those lawyers joined Dechert in or about May, 2018 and the litigation was transferred to the firm.

2

2021. In addition, Dechert assists the Debtors in responding to regulatory inquiries from various governmental agencies concerning the opioid crisis, when necessary.

### Dechert's Disclosure Procedures

4. Except as otherwise provided herein, the facts stated herein are based on my personal knowledge and upon information provided to me by Dechert's employees and associates, including conflict searches conducted by Dechert's conflicts department.

5. I, or someone working under my supervision, reviewed any client connections to the Debtors' chapter 11 cases to determine whether Dechert has an adverse interest to the Debtors' estates. On or about September 11, 2019, Dechert reviewed any client connections to determine whether any of Dechert's current matters are adverse to the Debtors. To date, Dechert does not represent or have any connection with any parties or matters that are currently adverse to the Debtors.

6. Dechert and certain of its partners, counsel, and associates currently represent Morris & Dickson Co. in the settlement of the opioid multi-district litigation. Although Dechert does not believe that this representation creates any conflicts or potential conflicts, Dechert nevertheless has implemented an ethical screen between the individuals working on the Morris & Dickson matter and the individuals working on the matters related to Purdue's opioid litigation and bankruptcy.

7. Dechert may represent a biotechnology company in a potential sale of assets or licenses of IP to one of the Debtors' related entities. This possible representation is not related to Dechert's representation of the Debtors in relation to the matters for which Dechert is being retained.

3

8.  Dechert and certain of its partners, counsel, and associates currently represent and likely in the future will represent the parties listed in **Appendix 1**, all of which are either parties in interest or entities related to the Debtors' parties in interest. Dechert's representation of these entities is not related to Dechert's representation of the Debtors for which Dechert is being retained.

9.  Based upon the information available to me, Dechert neither represents nor holds an interest adverse to the interests of the Debtors or their estates with respect to the matters on which Dechert is to be employed. To the extent Dechert discovers any connection with any interested party or enters into any new relationship with any interested party, Dechert will promptly supplement its disclosures to the Court.

### Dechert's Rates and Billing Practices

10.  Dechert provides the Debtors the following compensation arrangements for the Dechert Services:[4]

a)  For the Dechert Litigation Services, the current hourly billing rates for Dechert professionals expected to spend significant time on the engagement range from $895.00 to $1,425.00 for partners, $565.00 to $890.00 for associates and counsel, $365.00 for

---

[4] Certain of the prepetition payments reflect the payment of estimated, rather than actual, fees and expenses for the applicable invoice period. Any prepetition payments in excess of Dechert's actual fees and expenses for the applicable invoice period will be added to, and treated as part of, the Retainer. Any shortfall in the prepetition payments compared to Dechert's actual fees and expenses will result in an application, and corresponding reduction in the amount of the Retainer. Accordingly, the amount of the Retainer remaining after (a) the reconciliation of any estimated prepetition payments and (b) the application of the prepetition payments or the Retainer to Dechert's actual fees and expenses for the prepetition period may differ from the amount reported above. Dechert will not apply any portion of the Retainer to fees and expenses incurred from and after the Petition Date unless and until authorized to do so by a further order of the Court.

4

staff attorneys, and $200.00 for paralegals.[5] The aforementioned hourly billing rates reflect voluntary discounts as follows: a 1% to 24% discount for senior partners, a 6% to 13% discount for junior partners, a 1% to 5% discount for counsel, and a 5% to 10% discount for associates. In addition to the discounted hourly rates, Dechert also provides a voluntary discounts, calculated on an annual basis, for the Dechert Litigation Services based on the aggregate amounts invoiced in the calendar year as follows: Dechert provides a 12% discount for fees aggregating $1 to $5 million, an 18% discount for fees aggregating invoices totally $5 to $9 million, and a 20% discount for fees aggregating over $9 million.

b)      For the Dechert Patent Services, the current hourly billing rates for Dechert professionals expected to spend significant time on the engagement range from $695.00 to $940.00 for partners, $690.00 to $710.00 for associates, $350.00 to $545.00 for patent agents, and $150.00 to $385.00 for paralegals.[6] These rates reflect a voluntary discount of 6% to 27% for partners, and 11% to 22% for associates. In addition to the discounted hourly rates, Dechert also provides a voluntary discount, based aggregate amounts

---

[5] These rates reflect a new fee schedule that went into effect on September 1, 2019. Dechert's hourly rates are subject to change from time to time in the regular course of Dechert's business. For the Litigation Services, consistent with ordinary course of business across the Firm, Dechert increases the hourly billing rate of attorneys and paraprofessionals in July of each year in the form of step increases historically awarded on the basis of advancing seniority and promotion. Rate adjustments will be highlighted in any applicable fee applications. The step increases do not constitute "rate increases" as the term is used in the Guidelines as defined below.

[6] With the exception of Samuel Abrams' rate, which has been frozen since 2015, Dechert's hourly rates are subject to change from time to time in the regular course of Dechert's business. For the Patent Services, Dechert increases the hourly billing rate of attorneys and paraprofessionals (other than Mr. Abrams) in January in the form of periodic increases within each attorney's and paraprofessional's current level of seniority. Rate adjustments will be highlighted in any applicable fee applications.

5

invoiced in the calendar year as follows:[7] Dechert provides a 5% discount for fees up $1 million, a 7% discount for fees aggregating $1 to $2 million, and a 10% discount for fees aggregating $2 to $3 million. Dechert's hourly rates for the Patent Services are subject to change from time to time in the regular course of Dechert's business. Dechert will provide notice to the Debtors, the Office of the United States Trustee and any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases of any change in Dechert's hourly rates. Dechert will also file a notice of any such change in hourly rates with the Court.

11.    In addition to the hourly billing rates set forth above, Dechert customarily charges its clients for all out of pocket expenses, including, but not limited to, travel (transportation, lodgings and meals), facsimile, electronic research, document duplication, postage, overnight shipping and courier expenses.

12.    At the Debtors' request, and to address appropriate staffing levels, Dechert uses Beacon Hill Staffing, an outside staffing service, for additional contract attorneys who perform document analysis in connection with a wide range of litigation needs, including experts, deposition preparation, and trial preparation. The services provided by the Beacon Hill contract attorneys are billed to Dechert, which in turn bills it as an expense to the Debtors.

13.    Dechert also utilizes a large number of outside vendors in connection with the Dechert Litigation Services, including, discovery vendors, trial graphics vendors, trial consultants, trial vendors, document analysis vendors and jury consultants. At the request of the

---

[7] The amounts required to receive the voluntary volume-based discount do not include the amounts Mr. Abrams bills to the Debtors for his Patent Services. Accordingly, his time and rate are not subject to the volume-based discount.

Debtors, Dechert aggregates the vendors' invoices and bills them to the Debtors as an expense. Dechert pays the vendors only after the Debtors have paid these expenses.

14.     Finally, Dechert utilizes various testifying experts in connection with the Dechert Litigation Services (the "**Experts**"). Dechert maintains an expense trust account (the "**Expense Trust Account**") dedicated for the payment of the Experts' fees and expenses and certain vendors with related services.

15.     Neither Dechert nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code. Dechert has agreed not to share compensation received in connection with this case with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing of compensation among Dechert's partners.

16.     Dechert will apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in accordance with General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1,

2013 (collectively, the "**Fee Guidelines**")[8], the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

17. On June 6, 2019 Dechert held $106,790 in the Expense Trust Account and $3,105,991 in retainer for legal fees (the "**Retainer**"). Between June 6, 2019 and the Petition Date, Dechert issued to the Debtors invoices aggregating $25,796,394.20 and was paid, including application of Retainer funds, $30,087,006.93. During the same period withdrawals from the Expense and Trust Account and the retainer aggregated $19,639,921.37 and deposits on account of the Expense Trust Account and the Retainer aggregated $29,153,923.15. On the Petition Date the balance in the Expense Trust Account was $3,105,991 and the Retainer was $7,708,095.20.

18. Post-Petition, Dechert will utilize the Retainer and the Expense Trust Account in the ordinary course of business and consistent with past practices before requiring payment from the Debtors, but in all cases subject to orders of, or procedures approved by the Court.

19. In addition, in accordance and in response to the request for additional information set forth in paragraph D.1 of the Fee Guidelines:

    a. Other than a voluntary percent discount from Dechert's customary hourly billing rates, as described herein, and the voluntary discount based on volume of work, as described in the Application, Dechert did not agree to any variations from, or alternatives to, Dechert's customary billing arrangements for this engagement.

    b. None of Dechert's professionals included in this engagement varied or will vary their rate based on the geographic location of these chapter 11 bankruptcy cases.

---

[8] The majority of time that Dechert professionals spend on matters related to the Debtors is billed to non-bankruptcy matters, to which the U.S. Trustee's categories as outlined in the Fee Guidelines are inapplicable. Accordingly, Dechert professionals will continue to bill time spent on non-bankruptcy matters to the pre-petition, non-bankruptcy, task codes.

8

  c. In Dechert's representation of the Debtors in the twelve (12) months prior to the Petition Date, Dechert's billing rates and the material financial terms of the prepetition engagement, including any adjustments during this period, include the following: (i) the hourly billing rates for Dechert professionals who rendered the Dechert Litigation Services during this period range from $895.00 to $1,425.00 for partners, $565.00 to $890.00 for associates and counsel, $365.00 for staff attorneys, and $200.00 for paralegals; (ii) all of the aforementioned hourly billing rates for the Dechert Litigation Services reflect the following voluntary discounts: a 1% to 24% discount for senior partners, a 6% to 13% discount for junior partners, a 1% to 5% discount for counsel, and a 5% to 10% discount for associates; (iii) the hourly billing rates for Dechert professionals who rendered the Dechert Patent Services during this period range from $695.00 to $940.00 for partners, $690.00 to $710.00 for associates, $350.00 to $545.00 for patent agents, and $150.00 to $385.00 for paralegals; (iv) all of the aforementioned hourly billing rates for the Dechert Patent Services reflect a voluntary discount of 6% to 27% for partners, and 11% to 22% for associates; and (v) the Debtors were billed for the Dechert Patent Services on a monthly basis until August 2019 and weekly thereafter; for the Dechert Litigation Services the Debtors were billed monthly until June 2019, bi-weekly from June 2019 and weekly beginning on August 2019.

  d. Dechert will provide such information as the Debtors request or require for them to prepare and submit budget and staffing plans required under the Fee Guidelines.

20. Dechert will use its best efforts to avoid duplicating services rendered by the Debtors' other retained professionals.

### Statement Regarding U.S. Trustee Guidelines

21. The following information is provided in response to the request for additional information set forth in Paragraph D.1. of the U.S. Trustee Guidelines:

Question: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Answer: Yes. The Debtors enjoy discounted rates as well volume discounts as described herein.

Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Answer: No.

Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Answer: During the twelve (12) month period prior to the petition, Dechert's billing rates and material financial terms with respect to the Litigation Services have changed. From May 1, 2018 through August 31, 2019, with respect to the Litigation Services, Dechert's billing rates were fixed at the rates agreed to when the case moved to Dechert from the prior firm where many of the lawyers practiced and did not change, other than the step increase (in July of each year) on the basis of advancing seniority and promotion. Beginning on September 1, 2019, the Debtors and Dechert entered into a new fee schedule that reflects the discounts described in paragraph 8(a). During the twelve (12) month period prior to the petition, Dechert's billing rates and material financial terms with respect to the Patent Services have not changed, other than the periodic adjustment (in January of each year) to reflect economic and other conditions.

Question: Has your client approved your prospective budget and staffing plan, and, if so for what budget period?

Answer: Dechert and the Debtors are currently working on a budget and staffing plan for Dechert's work for the Debtors. The budget necessarily will involve a projection.

*[Remainder of page left intentionally blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

*/s/ Hayden Coleman*
Hayden Coleman

Sworn before me on this
4th day of November, 2019.

_____
Notary Public

AMANDA DONOHUE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6324294
Qualified in Suffolk County
Commission Expires May 4, 2023

*Signature page to the Coleman Declaration in Support of Dechert's Retention Application*

**Appendix 1**

## Current Clients

| Entity | Relationship to Parties |
|---|---|
| Ace American Insurance Co. | Insurer |
| Ace Property and Casualty Insurance Company | Insurer |
| Aetna Health Management | Vendor |
| Agilent Technologies, Inc. | Vendor |
| Air Liquide Industrial U.S. LP | Secured Creditor |
| Alcaliber SA | Vendor |
| Alcami Corporation | Vendor |
| Altasciences Co. | Vendor |
| Alvogen Malta Operations Ltd. | Vendor |
| American Express | Vendor |
| American United Life Insurance Company | Vendor |
| AmerisourceBergen | Top 50 Largest Unsecured Creditor |
| Anaqua Inc. | Vendor |
| Aptus Health | Vendor |
| Arizona Health Care Cost | Vendor |
| Bank of America N.A. | Vendor |
| California State Teachers Retirement System | Plaintiff |
| CALPERS | Plaintiff |
| CaremarkPCS Health LP | Vendor |
| CaremarkPCS Health, L.L.C. | Top 50 Largest Unsecured Creditor |
| CBRE, Inc. | Vendor |
| Ceridian HCM Inc. | Vendor |
| Chubb Limited | Insurer |
| Cigna Health and Life Insurance Co. | Vendor |
| Cigna Participant HSA Funding | Vendor |
| Citibank | Bank |
| City of New York | Plaintiff |
| Clarusone Sourcing Services LLP | Vendor |
| Cognizant Tech Solutions US Corp. | Top 50 Largest Unsecured Creditor, Vendor |
| Colorcon Inc. | Vendor |
| Core Access Group LLC | Vendor |
| Cornerstone Research, Inc. | Vendor |
| CVS Caremark Part D Services, LLC | Top 50 Largest Unsecured Creditor |
| Dell USA LP | Vendor |
| Department of Health Care Services | Top 50 Largest Unsecured Creditor |
| Direct Energy Business | Vendor |
| Dow Chemical Company | Vendor |
| Dupont Nutrition USA Inc. | Vendor |
| Edwards Inc. | Vendor |

5362068.2

| | |
|---|---|
| Goldman Sachs | Bank |
| Ikon Financial SVCS | Secured Creditor |
| Isosceles Insurance Ltd. | Insurer |
| JPMorgan Chase | Bank |
| National Union Fire Insurance Co. of Pittsburgh, PA | Insurer |
| New York City | Plaintiff |
| New York City Patrolmen's Benevolent Association | Plaintiff |
| New York State Judicial Screening Committee | Plaintiff |
| People of California | Plaintiff |
| Province of British Columbia | Plaintiff |
| SpecGX LLC | Top 50 Largest Unsecured Creditor |
| State of Arizona | Plaintiff |
| State of California | Plaintiff |
| State of New York | Plaintiff |
| State of New York Department of Health | Top 50 Largest Unsecured Creditor |
| State of Texas | Plaintiff |
| The Insurance Company of the State of Pennsylvania | Insurer |
| TrialCard Inc. | Top 50 Largest Unsecured Creditor |
| U.S. Bank Equipment Finance | Secured Creditor |
| UBS Group AG | Bank |
| University of Texas | Plaintiff |
| University of Texas Health Science Center | Plaintiff |
| Wells Fargo & Company | Bank |

14