**Hearing Date and Time: November 19, 2019 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: November 15, 2019 at 4:00 p.m. (prevailing Eastern Time)**

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira Dizengoff
Arik Preis
Sara Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Proposed Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF HEARING ON APPLICATION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P.,**
***ET AL.* TO RETAIN AND EMPLOY KURTZMAN CARSON CONSULTANTS**
**LLC AS INFORMATION AGENT, *NUNC PRO TUNC* TO NOVEMBER 1, 2019**

        **PLEASE TAKE NOTICE** that a hearing on the *Application of the Official Committee of*

*Unsecured Creditors of Purdue Pharma, L.P. et al. to Retain and Employ Kurtzman Carson*

*Consultants LLC AS information Agent for the Committee, Nunc Pro Tunc to November 1, 2019*

(the "Application") will be held before the Honorable Robert D. Drain, United States Bankruptcy

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Judge, United States Bankruptcy Court for the Southern District of New York (the "Court"),

Courtroom 116, 300 Quarropas Street, White Plains, New York 10601-4140, on **November 19,**

**2019 at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (each, an

"Objection") to the relief requested in the Application shall be in writing, shall conform to the

Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District

of New York, shall be filed with the Bankruptcy Court and served in accordance with the *Amended*

*Order Establishing Certain Notice, Case Management, and Administrative Procedures*, dated as

of October 24, 2019 [ECF No. 342], so as to be filed and received no later than **November 15,**

**2019 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served

with respect to the Application, the Official Committee of Unsecured Creditors of Purdue Pharma

L.P. may, on or after the Objection Deadline, submit to the Court an order substantially in the form

annexed as **Exhibit A** to the Application, which order the Court may enter without further notice

or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend

the hearing, and failure to appear may result in relief being granted upon default.

[*remainder of page intentionally left blank*]

New York, NY
Dated: November 5, 2019

AKIN GUMP STRAUSS HAUER & FELD LLP

/s/ *Arik Preis*
Ira Dizengoff
Arik Preis
Sara Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 972-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
sbrauner@akingump.com

*Proposed Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P.*

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira Dizengoff
Arik Preis
Sara Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Proposed Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF PURDUE PHARMA L.P., *ET AL.*, TO RETAIN AND**
**EMPLOY KURTZMAN CARSON CONSULTANTS LLC AS**
**INFORMATION AGENT, *NUNC PRO TUNC* TO NOVEMBER 1, 2019**

The Official Committee of Unsecured Creditors (the "Committee") of Purdue Pharma L.P.,

*et al.*, (collectively, the "Debtors") respectfully submits this application (the "Application"),

pursuant to sections 105(a), 1102(b)(3) and 1103 of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Rules"), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Committee to retain and employ Kurtzman Carson Consultants LLC ("KCC") as its information agent in connection with the Debtors' chapter 11 cases (the "Chapter 11 Cases"), effective *nunc pro tunc* to November 1, 2019. In support of this Application, the Committee submits the declaration of Evan Gershbein, dated November 5, 2019 (the "Gershbein Declaration"), attached hereto as **Exhibit B**, and the declaration of Brendan Stuhan, not in his individual capacity but solely on behalf of Blue Cross and Blue Shield Association, in its capacity as co-chair of the Committee, dated November 5, 2019 (the "Stuhan Declaration" and, together with the Gershbein Declaration, the "Declarations"). In further support of this Application, the Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* M-431, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and rule predicates for the relief requested herein are Bankruptcy Code sections 105(a), 1102(b)(3) and 1103, Bankruptcy Rule 2014 and Local Rule 2014-1.

## BACKGROUND

4. On September 15, 2019 (the "Petition Date") and September 16, 2019, each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

5. The Debtors continue to operate their business as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a

2

trustee or an examiner.

6. On September 26, 2019 (the "Formation Date"), the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102. *See Notice Appointing Creditors Committee* [ECF No. 131]. The U.S. Trustee constituted the Committee to consist of: Blue Cross and Blue Shield Association; CVS Caremark Part D Services, L.L.C. and Caremark PCS Health, L.L.C.; Cheryl Juaire; Kara Trainor; LTS Lohmann Therapy Systems Corporation; Pension Benefit Guaranty Corporation; Ryan Hampton; Walter Lee Salmons; and West Boca Medical Center.[2]

7. On September 26, 2019, the Committee selected Akin Gump to serve as lead counsel to the Committee, and on September 29, 2019, the Committee selected Bayard, P.A. ("Bayard") to serve as efficiency counsel to the Committee. On October 1, 2019, the Committee selected Province, Inc. ("Province") to serve as its financial advisor and on October 4, 2019 the Committee selected Jefferies Group LLC ("Jefferies" and, together with Akin Gump, Bayard, Province and KCC, the "Committee Professionals") to serve as its investment banker.

8. On November 1, 2019, the Committee selected KCC to serve as information agent to the Committee in the Chapter 11 cases and, on or around November 1, 2019, executed that certain Services Agreement (the "KCC Agreement"), which is attached as **Schedule 1** to the Gershbein Declaration.

---

[2] On October 9, 2019, the Committee received a letter from counsel to a multi-state group comprising approximately 1,222 entities, including 1,172 cities, counties and other governmental entities, seven Native American tribal nations, six hospitals, two districts, 34 medical groups, two funds, and one veterans' class across 36 states, representing approximately 60,000,000 individuals (the "Multi-State Group"), requesting the opportunity to join the Committee in an *ex officio* capacity. After careful consideration, on October 21, 2019, the Committee determined to grant the Multi-State Group's request and Cameron County, Texas (the "Ex Officio Member") joined the Committee. On October 30, 3019, the Multi-State Group filed the *Verified Statement of the Multi-State Governmental Entities Group Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [ECF No. 409] disclosing the identity of each member of such group. For the avoidance of doubt, the Ex Officio Member is a non-voting member of the Committee and does not owe fiduciary duties to unsecured creditors as a result of its *ex officio* seat on the Committee.

3

## RELIEF REQUESTED

9.   The Committee seeks to retain and employ KCC as its information agent, pursuant to Bankruptcy Code sections 105(a), 1102(b)(3) and 1103, Bankruptcy Rule 2014 and Local Rule 2014-1, effective *nunc pro tunc* to November 1, 2019.

## RETENTION OF KCC

### A.    Scope of Services

10. KCC's retention is appropriate and necessary to assist the Committee in complying with its obligations under the Bankruptcy Code and to assist in the effective administration of the Chapter 11 Cases while minimizing the expense of such functions.  Specifically, KCC will, among other things:

    (a)    Establish and maintain a website for the Committee (the "Creditor Website") and provide associated technology and communications services to facilitate the Committee's communications with the Debtors' unsecured creditors; and

    (b)    Prepare and serve required notices and pleadings on behalf of the Committee in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the *Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* [ECF No. 342] (the "Case Management Order") in the form and manner directed by the Committee and/or the Court, including, if applicable, all notices, orders, pleadings, publications and other documents as the Committee and/or the Court may deem necessary or appropriate.

11. As described in the *Motion of the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al., for Entry of an Order Clarifying the Requirement to Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information* [ECF No. 415] (the "Information Protocol Motion"), the Debtors' creditors and the general public alike have a heightened interest in the conduct and outcome of these proceedings, including with respect to the facts and circumstances underlying the allegations in the thousands of lawsuits currently pending against the Debtors.  As the fiduciary for all unsecured creditors in these Chapter 11 Cases, the Committee and its professionals take seriously their

obligation to ensure that creditors have access to clear and comprehensive information regarding the status of and key developments in these cases, how to file proofs of claim, as well as designated points of contact and vehicles for creditors to raise and discuss specific concerns.   Open communications with creditors and others working to combat the opioid crisis is essential to achieving the twin goals of transparency and compensation regarding the Debtors' past conduct and the remediation and abatement of the opioid crisis going forward.

12.  To that end, the Committee has sought in the Information Protocol Motion authority to establish and implement a protocol that will enable the Committee to satisfy its obligation to ensure that **all** of the Debtors' unsecured creditors have access to the information to which they are entitled, while at the same time protecting the confidentiality of information received from the Debtors and non-Debtor parties as necessary to facilitate these Chapter 11 Cases. The Creditor Website will be used to make non-confidential and non-privileged information available and easily accessible to the Debtors' creditors.  Given the seriousness of the allegations against the Debtors and the important public interest in the conduct and outcome of these Chapter 11 Cases, the Committee and its professionals intend to use the Creditor Website to post information and frequent updates in order to ensure transparency and facilitate open communication with unsecured creditors.

13. Specifically, the Committee Website will provide, among other things: (i) general information concerning the Debtors, including access to the case docket and docket filings; (ii) contact information for the Debtors, the Debtors' counsel and the Committee's counsel (iii); frequently updated information regarding the status of various developments in the Chapter 11 Cases; (iv) access to and summaries of key filings and positions the Committee has taken in the cases; (v) access to hearing summaries and hearing transcripts when made publicly available; (vi)

5

a case calendar detailing upcoming hearings and other critical events; (vii) forms and instructions for filling out proofs of claim as well as relevant related deadlines; (viii) access to a telephone hotline and an email address maintained by KCC to the extent creditors would like additional information or to discuss specific concerns; (ix) information regarding frequent calls hosted by the Committee's professionals to provide all creditors with the opportunity to ask questions and receive detailed case updates; (x) access to the claims docket as and when established by the claims and noticing agent retained by the Debtors in these cases; (xi) links to other relevant websites (*e.g.*, the Debtors' corporate website, the website maintained by the Debtors' claims and noticing agent on behalf of the Debtors, and the website of the Office of the U.S. Trustee).

14. Courts in this and other districts have approved the retention of third parties to provide similar services to official committees of unsecured creditors. *See, e.g.*, *In re Westinghouse Electric Co. LLC*, Case No. 17-10751 (Bankr. S.D.N.Y. July 18, 2017) [ECF No. 934]; *In re EXCO Resources. Inc.*, Case No. 18-30155 (Bankr. S.D. Tex. March 28, 2018) [ECF No. 557]; *In re FirstEnergy Solutions, Inc.*, Case No. 18-50757 (Bankr. N.D. Ohio Jun. 12, 2018) [ECF No. 727]; *In re Toys "R" Us, Inc.*, Case No. 17-34665 (Bankr. E.D. Va. Dec. 27, 2017) [ECF No. 1375]; *In re Magnum Hunter Resources Corp.*, Case No. 15-12533 (Bankr. D. Del. Jan. 27, 2016) [ECF No. 404]; *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Apr. 29, 2014) [ECF No. 3240].

15. The Committee believes that KCC possesses extensive skills and experience in the areas necessary to provide these services to the Committee.  KCC has performed these services for official creditors' committees in cases such as *In re Windstream Holdings, Inc. et al.*, No. 19-22312 (Bankr. S.D.N.Y. Feb. 25, 2019), *In re FirstEnergy Solutions Corp.*, Case No. 18-50757 (AMK) (Bankr. N.D. Ohio Mar. 31, 2018), and *In re Westinghouse Electric Co., LLC*, Case No.

6

17-10751 (SMB) (Bankr. S.D.N.Y. Mar. 29, 2017), and for debtors in cases such as *In re Windstream Holdings, Inc. et al.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 25, 2019), *In re Waypoint Leasing Holdings Ltd.*, No. 18-13648 (SMB) (Bankr. S.D.N.Y. Nov. 27, 2018), *In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RDD) (Bankr. S.D.N.Y. May 25, 2017); and *In re Westinghouse Electric Co. LLC*, Case No. 17-10751 (SMB) (Bankr. S.D.N.Y. Mar. 29, 2017).

16. Because of the nature of the services that may be necessary in the Chapter 11 Cases, and the fact that the full nature and extent of such services are not known at this time, the Committee believes that the employment of KCC to provide the services described above and such other services as may be necessary for the Committee to satisfy its obligations to the Debtors' unsecured creditor constituency is appropriate and in the best interests of the Debtors, their creditors and their estates.

**B.    Professional Compensation**

17. KCC specializes in, among other things, assisting creditors' committees in fulfilling their statutory obligations to the entire unsecured creditor constituency under Bankruptcy Code section 1102.  KCC seeks to be compensated by the Debtors' estates for its information and noticing services rendered on behalf of the Committee in these Chapter 11 cases in accordance with the provisions of the KCC Agreement.  The Committee solicited proposals from two firms interested in serving as information agent, and ultimately determined that KCC's proposed pricing schedule was fair and reasonable and the best option available to the Committee in light of the Committee's needs.

18. As set forth in the KCC Agreement, the rates that KCC will charge for professional services are as follows:

| Position | Rate |
|---|---|
| Analyst | $26.70 - $44.50 |
| Technology/Programming Consultant | $31.15 - $84.55 |
| Consultant/Senior Consultant/Senior Managing Consultant | $57.85 - $173.50 |
| Securities/Solicitation Consultant | $173.50 |
| Securities Director/Solicitation Lead | $191.35 |

19. To assist the Committee in complying with its statutory duties to unsecured creditors, the Committee proposes that KCC's reasonable fees and expenses for services rendered on behalf of the Committee in connection with these chapter 11 cases should be paid by the Debtors' estates in accordance with the terms of the KCC Agreement.  The Committee understands that KCC will file monthly Fee Statements and interim and final Fee Applications in accordance with the procedures set forth in Bankruptcy Code sections 330 and 331, the applicable Bankruptcy Rules, the applicable Local Rules and any applicable guidelines established by the Office of the United States Trustee, and in the form and manner prescribed by General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010) (Gonzalez, C.J.) and Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases*, dated January 29, 2013) (Morris, C.J.), or by any order entered in the Chapter 11 Cases establishing interim compensation procedures.

20. KCC has informed the Committee that, as of the date of this Application and to the best of KCC's knowledge: (a) KCC does not have an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (b) neither KCC nor any employee of KCC (i) is a creditor, equity security holder or an insider of the Debtors or (ii) is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the KCC personnel expected to provide services to the Committee

8

in the Chapter 11 Cases is related or connected to any United States Bankruptcy Judge for the Southern District of New York, the United States Trustee, or any person employed by the Office of the United States Trustee.

21. The Committee has been advised that, consistent with Bankruptcy Code section 504(a), KCC has not agreed to share with any other person or firm the compensation it will receive for its services in the Chapter 11 Cases.

## BASIS FOR *NUNC PRO TUNC* RELIEF

22. Subject to this Court's approval, KCC will render information and noticing services to the Committee, which is a section 1102(a) committee, thereby enabling the Committee to comply with its obligations under Bankruptcy Code section 1102(b)(3). Section 1103(a) of the Bankruptcy Code provides that a creditors' committee "may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a). Section 1102(b)(3) provides that:

A committee appointed under subsection [1102](a) shall—

    (A)    provide access to information for creditors who—

        (i)    hold claims of the kind represented by that committee; and

        (ii)    are not appointed to the committee;

    (B)    solicit and receive comments from the creditors described in subparagraph (A); and

    (C)    be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

11 U.S.C. § 1102(b)(3).

23. The Committee believes that the employment of KCC *nunc pro tunc* to November 1, 2019 is warranted under the circumstances to allow the Committee to comply with these statutory duties in an efficient and cost-effective manner. Without KCC's retention, the Committee's other

9

professionals would be required to perform the informational and solicitation services required under Bankruptcy Code section 1102(b)(3).  Since the functions served by are administrative in nature, the Committee believes there will be a significant cost savings, ultimately inuring to the benefit of the Debtors' estates and their creditors, from eliminating the administrative burden on counsel to the Committee of serving pleadings filed by the Committee.

## NOTICE

24. Notice of this Application has been provided to parties in interest in accordance with the *Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*, dated as of October 24, 2019 [ECF No. 342].

## NO PRIOR REQUEST

25. No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Committee requests that the Court (a) enter an order, substantially in the form annexed hereto as Exhibit A, authorizing the Committee to retain and employ KCC as its information agent in the Chapter 11 Cases *nunc pro tunc* to November 1, 2019, and (b) provide the Committee with such other and further relief as the Court may deem just, proper and equitable.

*[Remainder of page intentionally left blank.]*

Dated: November 5, 2019        Respectfully submitted,

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF PURDUE PHARMA L.P., *ET AL.***

By: _____

Name: Brendan Stuhan, not in his individual capacity
but solely on behalf of Blue Cross and Blue Shield
Association, in its capacity as co-chair of the Official
Committee of Unsecured Creditors of Purdue Pharma
L.P., *et al.*

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 12-23649 (RDD) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.* TO RETAIN AND EMPLOY KURTZMAN CARSON CONSULTANTS LLC AS INFORMATION AGENT, *NUNC PRO TUNC* TO NOVEMBER 1, 2019

Upon the application dated November 1, 2019 (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") of Purdue Pharma L.P., *et al.* (collectively, the "Debtors") for entry of an order, pursuant to sections 105(a), 1102(b)(3) and 1103 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing the Committee to retain and employ Kurtzman Carson Consultants LLC ("KCC") as information agent in connection with the Debtors' chapter 11 cases (the "Chapter 11 Cases"), and upon the declaration of Evan Gershbein, dated November 5, 2019 (the "Gershbein Declaration") and the declaration of Brendan Stuhan, not in his individual capacity but solely on behalf of Blue Cross and Blue Shield Association, in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

its capacity as co-chair of the Committee, dated November 5, 2019 (the "Stuhan Declaration" and, together with the Gershbein Declaration, the "Declarations"); and the Court finding, based on the representations made in the Application and the Declarations, that KCC does not represent any interest adverse to the Committee or the Debtors' estates with respect to the matters upon which it is to be engaged, that it is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), that its employment is necessary and in the best interests of the Debtors, their creditors and their estates; and adequate notice of the Application having been given; and it appearing that no other notice need be given; and after due deliberation and good and sufficient cause appearing therefor, it is hereby

**ORDERED THAT**:

1.    The relief requested in the Application is granted as set forth herein.

2.    In accordance with Bankruptcy Code sections 328(a) and 1103(a), Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1 the Committee is hereby authorized and empowered to retain and employ KCC as its information agent in these cases under chapter 11 of the Bankruptcy Code on the terms set forth in the Application, the Gershbein Declaration and the KCC Agreement, effective *nunc pro tunc* to November 1, 2019.

3.    KCC will file monthly Fee Statements and interim and final Fee Applications in accordance with the procedures set forth in Bankruptcy Code sections 330 and 331, the applicable Bankruptcy Rules, the applicable Local Rules, and in the form and manner prescribed by General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010) (Gonzalez, C.J.) and Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases*, dated January 29, 2013) (Morris, C.J.), or by any order

entered in the Chapter 11 Cases establishing interim compensation procedures.

4.   The limitation of liability section in Section VIII of the KCC Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

5.   KCC shall file a supplemental declaration with this Court and give not less than 10 business days' notice to the Debtors, the U.S. Trustee, and the Committee prior to implementing any increases in the rates set forth in the KCC Agreement in this case.   The supplemental declaration shall explain the basis for the requested rate increases in accordance with Bankruptcy Code section 330(a)(3)(F) and state whether the Committee has consented to the rate increase.

6.   KCC shall use its reasonable best efforts to avoid any duplication of services provided by any of the other Committee Professionals and by the Debtors' noticing and information agent in these Chapter 11 Cases.

7.   The Committee is authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

8.   To the extent of any inconsistency between the KCC Agreement and this Order, this Order shall govern.

9.   Notwithstanding any stay that might be imposed by Bankruptcy Rule 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this order.

Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

3

## <u>EXHIBIT B</u>

**Gershbein Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF THE APPLICATION OF
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA
L.P., *ET AL.* TO RETAIN AND EMPLOY KURTZMAN CARSON CONSULTANTS
LLC AS INFORMATION AGENT, *NUNC PRO TUNC* TO NOVEMBER 1, 2019**

Under 28 U.S.C. § 1746, I, Evan Gershbein, declare as follows under the penalty of
perjury:

1.      I am a Senior Vice President of Corporate Restructuring Services with Kurtzman

Carson Consultants LLC ("KCC").  KCC maintains offices at, among other places, 222 N. Pacific

Coast Highway, 3rd Floor, El Segundo, CA 90245.

2.      I am familiar with the matters set forth herein and make this declaration

(the "Declaration") in support of the application (the "Application")[2] of the Official Committee of

Unsecured Creditors (the "Committee") of Purdue Pharma L.P., *et al*. (collectively, the "Debtors")

seeking approval to retain and employ KCC as information agent to the Committee.

3.      On September 26, 2019 (the "Formation Date"), pursuant to section 1102 of title

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard,
Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

11 of the United States Code (the "Bankruptcy Code"), the United States Trustee for Region 2 (the

"U.S. Trustee") appointed the Committee. *See Appointment of Official Committee of Unsecured*

*Creditors* [ECF No. 131].   On the date thereof, the U.S. Trustee constituted the Committee to

consist of: (a) Blue Cross and Blue Shield Association; (b) CVS Caremark Part D Services L.L.C.

and Caremark PCS Health L.L.C.; (c) Cheryl Juaire; (d) Kara Trainor; (e) LTS Lohmann Therapy

Systems Corporation; (f) Pension Benefit Guaranty Corporation; (g) Ryan Hampton; (h) Walter

Lee Salmons; and (i) West Boca Medical Center.[3]   The Committee also selected Akin Gump to

serve as lead counsel to the Committee on the Formation Date.

4.    On November 1, 2019, the Committee selected KCC to serve as information agent

in these chapter 11 cases and, on or around November 1, executed that certain Services Agreement,

which is attached hereto as **Schedule 1** (the "KCC Agreement").

<u>**Scope of Services**</u>

5.    KCC's retention will assist the Committee in complying with its obligations under

the Bankruptcy Code, add to the effective administration of, and reduce the overall expense of

administering, these Chapter 11 Cases. Specifically, KCC will establish and maintain a website

for the Committee and provide technology and communications-related services. Additionally,

KCC will prepare and serve required notices and pleadings on behalf of the Committee in the form

and manner directed by the Committee and/or the Court, including, if applicable, all notices,

---

[3] On October 9, 2019, the Committee received a letter from counsel to a multi-state group comprising approximately 1,222 entities, including 1,172 cities, counties and other governmental entities, seven Native American tribal nations, six hospitals, two districts, 34 medical groups, two funds, and one veterans' class across 36 states, representing approximately 60,000,000 individuals (the "Multi-State Group"), requesting the opportunity to join the Committee in an *ex officio* capacity. After careful consideration, on October 21, 2019, the Committee determined to grant the Multi-State Group's request and Cameron County, Texas (the "Ex Officio Member") joined the Committee. On October 30, 3019, the Multi-State Group filed the *Verified Statement of the Multi-State Governmental Entities Group Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [ECF No. 409] disclosing the identity of each member of such group. For the avoidance of doubt, the Ex Officio Member is a non-voting member of the Committee and does not owe fiduciary duties to unsecured creditors as a result of its *ex officio* seat on the Committee.

orders, pleadings, publications and other documents as the Committee and/or the Court may deem necessary or appropriate.

6.      KCC is one of the leading chapter 11 administrators, and possesses significant experience providing the types of services the Committee has requested it perform in these Chapter 11 Cases.  KCC performs such services in the ordinary course of its business.  I believe that KCC is qualified and able to provide these services to the Committee in a cost-effective, timely and efficient manner.

### Disinterestedness and Statutory Qualifications

7.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by counsel to the Committee and included, among other things, the Debtors, non-Debtor affiliates, the Debtors' current and former directors and officers, secured creditors, top 50 unsecured creditors, vendors, and other parties.  The results of the conflict check were compiled and reviewed by KCC professionals under my supervision.  At this time, and as set forth in further detail herein, KCC is not aware of any relationship that would present a disqualifying conflict of interest.  Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to promptly file a supplemental declaration.

8.      I am not, nor is KCC, an insider of the Debtors.  Except as set forth below, neither KCC nor I hold directly any claim, debt or equity security of the Debtors.

9.      To the best of my knowledge and information, no employee of KCC has been, within two years from the Petition Date, a director, officer or employee of the Debtors as specified in Bankruptcy Code section 101(14)(B).

3

10.     KCC does not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, as specified in Bankruptcy Code section 101(14)(C), or for any other reason.

11.     KCC does not currently represent the Debtors or, to the best of my knowledge and information, any of their related parties, affiliates, partners, or subsidiaries.  Moreover, KCC will not undertake the representation of any party other than the Committee in connection with the Chapter 11 Cases.

12.     To the best of my knowledge and information, KCC neither holds nor represents any interest adverse to the Committee, the Debtors, their creditors or other parties in interest or their respective attorneys in the Chapter 11 Cases.  Based upon information available to me, I believe that KCC is a "disinterested person" within the meaning of Bankruptcy Code section 101(14).

13.     KCC is an indirect subsidiary of Computershare Limited ("Computershare"). Computershare is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

14.     KCC will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered in the course of such review, KCC will supplement its disclosure to the Court.

15.     Consistent with Bankruptcy Code section 504(a), KCC has not agreed to share with

4

any other person or firm the compensation it will receive for its services in the Chapter 11 Cases.

## Compensation

16.    KCC specializes in, among other things, assisting creditors' committees in fulfilling their statutory obligations to the larger universe of unsecured creditors under Bankruptcy Code section 1102.  KCC seeks to be compensated by the Debtors' estates for its information and noticing services rendered on behalf of the Committee in these Chapter 11 cases in accordance with the provisions of the KCC Agreement.  The Committee solicited proposals from two firms interested in serving as information agent, and ultimately determined that KCC's proposed pricing schedule was fair and reasonable and the best option available to the Committee in light of the Committee's needs.

17.    KCC has agreed to be compensated for its services to the Committee in accordance with the KCC Agreement.  I believe such fees are reasonable and appropriate under the circumstances of KCC's proposed engagement, and will be administrative in nature.  Accordingly, I believe such fees and expenses should be paid by the Debtors on a monthly basis as an administrative expense pursuant to Bankruptcy Code section 503(b), in accordance with the terms and conditions of the KCC Agreement and the pricing schedule set forth therein. KCC will file monthly Fee Statements and interim and final Fee Applications in accordance with the procedures set forth in Bankruptcy Code sections 330 and 331, the applicable Bankruptcy Rules, the applicable Local Rules and any applicable guidelines established by the Office of the United States Trustee, and in the form and manner prescribed by General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010) (Gonzalez, C.J.) and Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases*,

dated January 29, 2013) (Morris, C.J.), or by any order entered in the Chapter 11 Cases establishing interim compensation procedures.

18.    I believe that the employment of KCC to provide the services described in the Application and such other services as may be necessary for the Committee to satisfy its obligations to the Debtors' unsecured creditor constituency is appropriate and in the best interests of the Debtors, their creditors and their estates.

[*remainder of page intentionally left blank*]

6

I declare under penalty of perjury that the foregoing is true and correct on this 5th day of November,

2019.

Name:  Evan Gershbein
       Senior Vice President, Corporate
       Restructuring Services

7

## **Schedule 1**

**KCC Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 30th day of October, 2019, between the Official Committee of Unsecured Creditors ( "Committee") appointed in the chapter 11 cases (the "Cases") of Purdue Pharma L.P. and its affiliated debtors and debtors in possession (the "Debtors"), and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Terms and Conditions

I.      SERVICES

A.      KCC agrees to provide the Committee with technology and other services in connection with the Committee's involvement in the Cases, including the establishment and maintenance of a creditor website.

B.      KCC may upon request provide a communications plan including but not limited to preparation of communications materials, dissemination of information and a call center staffed by KCC.

C.      KCC agrees to provide copy and notice services consistent with the applicable Local Rules of the United States Bankruptcy Court (the "Bankruptcy Court") and as requested by the Committee and/or the Bankruptcy Court.

D.      The Committee agrees and understands that KCC shall not provide the Committee with any legal advice.

E.      KCC understands and agrees that all terms, conditions and obligations contained herein are subject in all respects to applicable Bankruptcy Court orders, including, without limitation, any order approving the retention of KCC as Committee information agent (collectively, "Court Orders").

II.     PRICES, CHARGES AND PAYMENT

A.      KCC will seek reimbursement for its fees and expenses at the hourly rates or prices outlined in the pricing schedule provided to the Committee and the Debtors (the "KCC Fee Structure")  in accordance with the procedures set forth in Bankruptcy Code sections 330 and 331, the applicable Bankruptcy Rules, the applicable Local Rules, the General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010) (Gonzalez, C.J.), the Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases, dated Januarys 29, 2013 (Morris, C.J.)), any applicable guidelines established by the Office of the U.S. Trustee and any further orders of the Court regarding

1



professional services performed and expenses (including expenses related to transportation, lodging, meals, publications, postage and other third-party charges) incurred.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Committee and will provide notice of such rates in accordance with applicable rules, guidelines and Bankruptcy Court orders.

D.      As full compensation for the services to be provided by KCC and in conjunction with the Committee's efforts to cause the Debtors to pay KCC for its services, the Committee agrees to file an application with the Bankruptcy Court to require the Debtors to pay KCC its fees and expenses as outlined in the KCC Fee Structure and Court Orders through submission by KCC to the Committee and the Debtors of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection therewith.

III.     RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Committee agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Committee further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed during the course of its Agreement with KCC shall be the exclusive property of KCC.

C.      Furthermore, upon the Committee's request, KCC shall immediately deliver to the Committee, at the Committee's sole expense, any or all of the non-proprietary data and records held by KCC pursuant to this Agreement, in the form requested by the Committee.

IV.     CONFIDENTIALITY

KCC, on behalf of itself and its employees, agrees to keep confidential all records and other information with respect to the Committee.  The Committee, on behalf of itself and its employees, agrees to keep all proprietary, non-public information with respect to KCC's system, procedures and software confidential.  However, if either party is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.



V.      SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party upon thirty (30) days' written notice to the other party, or for Cause (as defined herein), in which event no notice shall be required.  The term "Cause" means an act or omission to act by KCC performed with either gross negligence or willful misconduct that causes, or an act or omission with the intent to cause, harm to the Committee's efforts in the Cases.  The term "Cause" also means failure of the Committee or the Debtors to pay KCC invoices for more than sixty (60) days from the date of invoice, or the accrual of invoices or unpaid services in excess of any retainer held by KCC where KCC has a reasonable fear of non-payment.

B.      KCC shall be entitled to an administrative expense claim for all fees and expenses outstanding at the time of termination.

C.      In the event that this contract is terminated, regardless of the reason for such termination; KCC shall cooperate with the Committee to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer (collectively, "Wind-Down Services").  The Committee agrees to use its best efforts to cause the Debtors to pay for all of KCC's fees and expenses outstanding at the time of termination as well as fees and expenses incurred in the performance of Wind-Down Services at KCC's then existing prices for such services.

VI.     SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to the Committee.  Therefore, KCC reserves the right to make changes in its operating procedures, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Committee, so long as any such changes do not materially interfere with ongoing services provided to the Committee.

VII.    INDEPENDENT CONTRACTORS

The Committee and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

VIII.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.      Except as provided herein, KCC's liability to the Committee or any person claiming through or under the Committee for any losses, claims, damages, judgments, liabilities and/or expenses (including reasonable counsel fees and expenses) (collectively, "Losses"), even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Committee for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to the Committee or any person claiming through or under the Committee for any Losses, whether direct or indirect, arising out of this Agreement exceed



the total amount billed to the Committee and actually paid to KCC for the services contemplated under the Agreement.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

B.      The Committee is responsible for the accuracy of the programs, data and information it or any representative of the Committee submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Committee.  The Committee agrees to initiate and maintain backup files that would allow the Committee to regenerate or duplicate all programs and data submitted by the Committee to KCC.

C.      The Committee agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

IX.     FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

X.      NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC             The Official Committee of Unsecured Creditors of
2335 Alaska Ave.                             Purdue Pharma L.P., et al.
El Segundo, CA  90245                        Address
Attn:  Drake D. Foster                       City, ST, Zip
Tel: (310) 823-9000                          Attn:
Fax: (310) 823-9133                          Tel:
                                             Fax:

Or to such other address as the party to receive the notice or request so designates by written notice to the other.



XI.     APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

XII.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement. The Committee represents that it has the authority to enter into this Agreement, and this Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Committee and an officer of KCC.

XIII.   COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XIV.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly-owned subsidiary or affiliate of KCC.

XV.     VENUE

The parties agree that any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any state or federal court of competent jurisdiction located in Los Angeles County, State of California, to whose jurisdiction the parties irrevocably submit..



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Evan Gershbein
TITLE: SVP, Corporate Restructuring Services

The Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.

BY: Brendan Stuhan, not in his individual capacity but solely on behalf of Blue Cross and Blue Shield Association, in its capacity as co-chair of the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.

6



## Consulting Services & Rates[1]

| Position | Hourly Rate |
| --- | --- |
| *Analyst* | *$26.70 - $44.50* |

The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

| | |
| --- | --- |
| *Technology/Programming Consultant* | *$31.15 - $84.55* |

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

| | |
| --- | --- |
| *Consultant/Senior Consultant/Senior Managing Consultant* | *$57.85 - $173.50* |

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register.  KCC's Consultants average over six years of experience.

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over seven years of experience.

The Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's SMCs average over twelve years of experience and are generally former practitioners.

| | |
| --- | --- |
| *Securities/Solicitation Consultant[2]* | *$173.50* |

The Securities Director/Solicitation Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results.  In addition, the Solicitation Consultant provides support on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

[2] Certain events and technology development fees may be applicable.



*Securities Director/Solicitation Lead*                    $191.35

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, the Solicitation Lead provides counsel on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

*Weekend, holidays and overtime*                    *Waived*

## Printing Services & Noticing Services

| | |
|---|---|
| Printing | $0.10 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |
| E-mail noticing | Waived[3] |
| Fax noticing | $0.08 per page |
| Claim Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper and legal notice publishing | Quote prior to publishing |

## Claims Administration & Management Expenses

| | |
|---|---|
| License fee and data storage | $0.10 per creditor per month |
| Database and system access (unlimited users) | Waived |
| Custom client reports | Waived |
| Access to KCC CaseView (secure, password protected) | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

KCC eServices

---

[3] A set-up fee for email services larger than 100 parties may apply. This set-up fee varies depending on the total number of parties.



Case website set up & hosting                          Waived
Automated updates of case docket and claims register  Waived
Online claims filing (ePOC)                           Waived

## Document Management/Imaging

Electronic imaging (scanning & bar coding)            $0.10 per imaged page
Virtual Data Room                                     Quote prior to VDR set-up
CD-ROMS (mass document storage)                       Varies upon requirements

## Call Center Support Services

Case-specific voice-mail box for creditors            Waived
Interactive Voice Response ("IVR")                    Set-up and per minute fee waived
Monthly maintenance charge                            Waived
Call Center Operators                                 *$42.50 - $62.50*

## Disbursements

Check issuance                                        Quote prior to printing
W-9 mailing and maintenance of TIN database           See hourly rates and noticing charges

## Exhibit C

**Stuhan Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649  (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### DECLARATION OF BRENDAN STUHAN IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.* TO RETAIN AND EMPLOY KURTZMAN CARSON CONSULTANTS LLC AS INFORMATION AGENT, *NUNC PRO TUNC* TO NOVEMBER 1, 2019

Under 28 U.S.C. § 1746, I, Brendan Stuhan, declare as follows under penalty of perjury:

1.      I am Assistant General Counsel of Blue Cross and Blue Shield Association.  I am making this declaration on behalf of Blue Cross and Blue Shield Association in its capacity as co-chair of the Official Committee of Unsecured Creditors (the "Committee") of Purdue Pharma L.P., *et al*. (collectively, the "Debtors").  Accordingly, I am in all respects competent to make this declaration in support of the *Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al. to Retain and Employ Kurtzman Carson Consultants LLC as Information Agent, Nunc Pro Tunc to November 1, 2019* (the "Application"),[2] filed contemporaneously herewith.

2.      I submit this declaration (the "Declaration") in support of the Application, pursuant to Section D.2. of the Revised UST Guidelines, which were adopted by the Executive Office for U.S.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

Trustees under 28 U.S.C. § 586(a)(3).  Except as otherwise noted, all facts in this Declaration are based

on my personal knowledge of the matters set forth herein, information gathered from my review of

relevant documents and information supplied to me by KCC.

3.      I am informed by KCC that the Revised UST Guidelines request that any application

for employment of a professional person under 11 U.S.C. §§ 327 or 1103 be accompanied by a verified

statement from the client that addresses the following:

(a)    The identity and position of the person making the verification.

(b)    The steps taken by the client to ensure that the applicant's billing rates and material terms for
       the engagement are comparable to the applicant's billing rates and terms for other non-
       bankruptcy engagements and to the billing rates and terms of other comparably skilled
       professionals.

(c)    The number of firms the client interviewed.

(d)    If the billing rates are not comparable to the applicant's billing rates for other nonbankruptcy
       engagements and to the billing rates of other comparably skilled professionals, the
       circumstances warranting the retention of that firm.

(e)    The procedures the client has established to supervise the applicant's fees and expenses and
       to manage costs.  If the procedures for the budgeting, review and approval of fees and
       expenses differ from those the client regularly employs in nonbankruptcy cases to supervise
       outside counsel, explain how and why. In addition, describe any efforts to negotiate rates,
       including rates for routine matters, or in the alternative to delegate such matters to less
       expensive counsel.

### The Committee's Selection of Information Agent

4.      Following its formation, the Committee interviewed two firms to provide services to

the Committee as information agent in the Chapter 11 Cases.  After interviewing each of these firms,

the Committee found KCC to be uniquely qualified to represent the Committee.  KCC has a long

history of serving as information agent to official committees and debtors in chapter 11 proceedings,

and has particular expertise in matters related to the retail pharmaceutical industry.  Therefore, on the

basis of KCC's broad-based, deep and directly applicable skill set and the past experience of certain

individual Committee members with KCC in other bankruptcy cases, the Committee has decided to

4

retain KCC.

## Rate Structure

5.      KCC has informed the Committee that its rates for bankruptcy representations will be those set out in the KCC Agreement, which I understand will be attached as an exhibit to the Application.   The Committee has approved KCC's proposed billing rates, as set forth in the Application.  KCC has informed the Committee that its hourly rates are subject to periodic adjustments (typically in January of each year) to reflect economic and other conditions.   The Committee has consented to such ordinary course rate increases.

## Cost Supervision

6.      The Committee recognizes its responsibility to monitor the billing practices of its counsel to ensure that the fees and expenses paid by the estate remain consistent with the Committee's expectations and the exigencies of these Chapter 11 Cases.  KCC advises that it expects to develop, and the Committee intends to review, a prospective budget and staffing plan to comply reasonably with the U.S. Trustee's request for information and additional disclosures, as to which the Committee is advised, KCC reserves all rights.  In addition, the Committee will review the monthly fee statements that KCC regularly submits.  KCC's fees and expenses will be subject to periodic review on a monthly, interim, and final basis during the course of the Chapter 11 Cases by the Committee, the Office of the U.S. Trustee for Region 2, the Debtors and other parties in interest.

I declare under penalty of perjury that the foregoing is true and correct on this 4th day of November, 2019.

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.***

By: _____

Name: Brendan Stuhan, not in his individual capacity but solely on behalf of Blue Cross and Blue Shield Association, in its capacity as co-chair of the Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.*