## Exhibit B

**Agreements**

# AlixPartners

March 5, 2019

Mr. Jon Lowne
Chief Financial Officer
Purdue Pharma L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT 06901-3431

Mr. James P. Doyle
Vice President & General Counsel
Rhodes Technologies
Rhodes Pharmaceuticals L.P.
498 Washington Street
Coventry, RI 02816

**Re:    Agreement for Financial Advisory and Consulting Services**

Dear Mr. Lowne:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners"), Purdue Pharma Inc., Avrio Health Inc., Purdue Pharma L.P., Coventry Technologies L.P., Rhdoes Technologies Inc., Rhodes Technologies, Rhodes Pharmaceuticals Inc., Rhodes Pharmaceuticals L.P., (each collectively with their respective subsidiaries, the "Company") for the engagement of AlixPartners to provide financial advisory and consulting services to the Company.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions. The Company and AlixPartners are each a "party," and together the "parties."

AlixPartners understands that the Company may file for protection under Chapter 11 of the United States Bankruptcy Code on or about March 31, 2019.

**Objectives and Tasks**

The responsibilities of AlixPartners will be as follows:

- Assist in preparation for a chapter 11 proceeding, including the preparation of bankruptcy petitions and "first day" motions and coordinating and providing administrative support for the proceeding.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court, as well as providing assistance in other areas.

- Assist in obtaining and presenting information required by parties in interest in the Company's bankruptcy process including official committees appointed by the United States Trustee, and their advisors approved by the United States Bankruptcy Court (the "Court"), and the Court itself.

AlixPartners, LLP | 909 Third Avenue, 30th Floor | New York, NY 10022 | 212.490.2500 | 212.490-1344 fax | **alixpartners.com**

#91795257v4

# AlixPartners

Purdue Pharma L.P.
March 5, 2019
Page 2 of 11

- Assist management of the Company in the design and implementation of a restructuring strategy and chapter 11 plan, taking into account the unique interests of all constituencies, including a possible trust or similar structure for the benefit of certain creditors.

- Assist the Company in managing its cash forecasting process and in creating or refining an actual to forecast variance reporting mechanism including the tracking of all intercompany cash movements.

- Provide assistance to management, in connection with the Company's development and/or refinement of its business plan, and such other related forecasts.

- Assist the Company's investment banker in obtaining and compiling information that is needed to present the Company or one or more business units to prospective purchasers or investors.

- Assist in communications and negotiations with stakeholders and their representatives, as well as with potential acquirers of Company assets.

- Assist with testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.

- Assist management in managing the "working group" professionals who are assisting the Company in the reorganization process or who are working for the Company's various stakeholders to improve coordination of their effort and individual work product to be consistent with the Company's overall restructuring goals.

- Assist in responding to due diligence requests from any official committee(s) appointed in a chapter 11 proceeding and other key constituencies.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

## Staffing

Lisa Donahue will be the managing director responsible for the overall engagement, assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

## Timing, Fees and Retainer

AlixPartners will commence this engagement on or about February 28, 2019 after receipt of a copy of the executed Agreement accompanied by the retainer, as set forth on Schedule 1.

#91795257v4

# **Alix**Partners

Purdue Pharma L.P.
March 2, 2019
Page 3 of 11

Upon a chapter 11 filing, the Company will promptly apply to the Bankruptcy Court to obtain
approval of AlixPartners' retention and retainer nunc pro tunc to the date of filing.
AlixPartners acknowledges that its retention and the terms thereof are subject to Bankruptcy
Court approval.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for
expenses, as set forth on Schedule 1.

* * *

If these terms meet with your approval, please sign and return a copy of this Agreement and
wire transfer the amount to establish the retainer.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Lisa Donahue
Managing Director

Acknowledged and Agreed to:

PURDUE PHARMA INC.

By:_____

Dated:_____3/5/19_____

PURDUE PHARMA L.P.

By:_____

Dated:_____3/5/19_____

**Alix**Partners

Purdue Pharma L.P.
March 2, 2019
Page 4 of 11

Avrio Health Inc.

By: _____

Dated: _____3/5/19_____

Coventry Technologies L.P.

By: _____

Dated: _____

Rhodes Technologies Inc.

By: _____

Dated: _____

Rhodes Technologies

By: _____

Dated: _____

Rhodes Pharmaceuticals Inc.

By: _____

Dated: _____

Rhodes Pharmaceuticals L.P.

By: _____

Dated: _____

**AlixPartners**

Purdue Pharma L.P.
March 2, 2019
Page 4 of 11


Avrio Health Inc.

By:_____

Dated:_____


Coventry Technologies L.P.

By:_____

Dated:_____ *Mar. 5, 2019*


Rhodes Technologies Inc.

By:_____

Dated:_____ *Mar. 5, 2019*


Rhodes Technologies

By:_____

Dated:_____ *Mar. 5, 2019*


Rhodes Pharmaceuticals Inc.

By:_____

Dated:_____ *Mar. 5, 2019*


Rhodes Pharmaceuticals L.P.

By:_____

Dated:_____ *Mar. 5, 2019*

**AlixPartners**

**Schedule 1**

**Fees and Expenses**

1.  **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| | |
|---|---|
| Managing Director | US$990 – US$1,165 |
| Director | US$775 – US$945 |
| Senior Vice President | US$615 – US$725 |
| Vice President | US$440 – US$600 |
| Consultant | US$160 – US$435 |
| Paraprofessional | US$285 – US$305 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

Notwithstanding the above table, AlixPartners will provide a credit in the amount of $100,000 per month against each of the first five months' invoices.  To the extent the assignment is less than five months in duration, the credit in the month of termination will be reduced pro rata based upon the number of days worked in that month.

2.  **Success Fee:** AlixPartners does not seek a success fee in connection with this engagement.

3.  **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4.  **Break Fee:** AlixPartners does not seek a break fee in connection with this engagement.

5.  **Retainer:** The Company shall pay AlixPartners a retainer of US$1,000,000 to be applied against Fees and expenses as set forth in this Schedule and in accordance with Section 2 of the General Terms and Conditions.

6.  **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. Prior to any filing of a chapter 11 proceeding, all invoices shall be due and payable immediately upon receipt. After any filing of a chapter 11 proceeding, payment on invoices shall be due immediately following Bankruptcy Court approval.

#91795257v4

**Alix**Partners

**Schedule 2**

**Processing, Personal Data and Data Subjects**

In connection with this Agreement, AlixPartners will not be receiving any Personal Data subject to the General Data Protection Regulation (*(EU) 2016/679*) (the "**GDPR**") or any applicable legislation implementing any provisions of the GDPR as may be enacted time to time (together the "**Data Protection Legislation**").

#91795257v4

**AlixPartners, LLP**
General Terms and Conditions

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

## Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management.

## Section 2. Retainer, Billing, Payments and Taxes

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay AlixPartners the agreed-upon advance retainer as set forth on Schedule 1. Invoices shall be offset against the retainer. Payments of invoices will be used to replenish the retainer to the agreed-upon amount. Any unearned portion of the retainer will be applied against the final invoice or returned to the Company at the end of the engagement.

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

## Section 3. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company.

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

## Section 4. Confidentiality

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners or the Company from making such disclosures of Confidential Information that AlixPartners or the Company reasonably believes are required by law or any

#91795257v4

| **AlixPartners, LLP** |
| General Terms and Conditions |

regulatory requirement or authority to clear client conflicts. AlixPartners and the Company may also disclose Confidential Information to their respective partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided that each of AlixPartners and the Company, as applicable, is responsible for any breach of these confidentiality obligations by any such parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law. The Company may not rely on any draft or interim Work Product.

### Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Company Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be,

the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Company acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement except to the extent finally determined by a court of competent jurisdiction to have resulted from an AlixPartners Parties' own willful misconduct, gross negligence or fraudulent behavior. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of interest, the AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners.

### Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

#91795257v4

**AlixPartners, LLP**
General Terms and Conditions

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

**Section 9. Termination and Survival**

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company due to AlixPartners' material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure) AlixPartners shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

**Section 10. Non-Solicitation of Employees**

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/ contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors in violation of the preceding paragraph, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, $1,000,000; (ii) for a Director, $500,000; and (iii) for any other employee/contractor, $250,000. The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

**Section 11. Limitation of Liability**

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

#91795257v4

| AlixPartners, LLP |
| General Terms and Conditions |

## Section 12. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

AlixPartners, LLP
2000 Town Center, Suite 2400
Southfield, MI 48075
Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to AlixPartners. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

## Section 13. Bankruptcy Related Matters

Notwithstanding any to the contrary in these Terms, in the event the Company files for protection under the U.S. Bankruptcy Code, the following provisions will prevail:

The Company shall promptly apply to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the U.S. Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Bankruptcy Court approval to apply the retainer to these amounts.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested

**AlixPartners, LLP**
General Terms and Conditions

during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company. AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

**Section 14. Data Protection**

All capitalized terms used in this Section and not otherwise defined in this Agreement shall have the meanings given to them in the General Data Protection Regulation ((EU) 2016/679) (the "GDPR") and all applicable legislation implementing any provisions of the GDPR as may be enacted from time to time (together the "Data Protection Legislation").

The parties acknowledge and agree that, in performing services pursuant to this Agreement, AlixPartners may from time to time be required to Process certain Personal Data on behalf of the Company. In such cases: (1) the Company will ensure that it is lawfully permitted to transfer the Personal Data to AlixPartners for the purposes of AlixPartners performing services under this Agreement; and (2) AlixPartners shall (i) act as the Company's Processor for the purposes of the Data Protection Legislation; (ii) only Process such Personal Data in accordance with the Company's written instructions (including when making an international transfer of Personal Data) unless required to do so by law; (iii) implement appropriate technical and organisational measures to reasonably protect that Personal Data against unauthorized or unlawful Processing and accidental, unauthorized or unlawful loss, destruction, alteration, damage, disclosure or access; and (iv) obtain commitments from all AlixPartners' personnel who have access to and/or Process such Personal Data to keep such Personal Data confidential.

If AlixPartners is Processing Personal Data relating to individuals located in the EU or otherwise subject to the Data Protection Legislation, (x) AlixPartners and the Company shall each comply with all relevant provisions of the Data Protection Legislation, and (y) the nature and extent of such Processing shall be set out in the GDPR Data Protection Schedule of this Agreement. AlixPartners shall, in relation to any Personal Data processed by AlixPartners in connection with this Agreement: (1) at the Company's cost, assist the Company in complying with its obligations as the Controller (or as Processor, as the case may be) of the Personal Data, to respond to requests from Data Subjects exercising their rights set out in Articles 12 to 22 of the GDPR; (2) notify the Company without undue delay on becoming aware of a Personal Data Breach; (3) upon termination or expiration of this Agreement, at the written direction of the Company either delete or return any Personal Data and any copies thereof to the Company (except to the extent AlixPartners is required by law to retain such Personal Data, and except for Personal Data located on

AlixPartners' disaster recovery or backup systems where it will be destroyed upon the normal expiration of the backup files); and (4) maintain appropriate records to demonstrate compliance with this Section.

AlixPartners is part of an international business, headquartered in the United States of America ("US"). AlixPartners may in the ordinary course of its business, including the performance of the services under this Agreement, transfer Personal Data received outside the US to its US-based affiliates. AlixPartners' US-based affiliates are certified under the EU-US Privacy Shield framework and any transfer of Personal Data from outside the US to its US-based affiliates will be transferred subject to, and in accordance with, the Privacy Shield requirements. AlixPartners' entities located in the EU have also entered into standard data protection clauses (in accordance with Article 46.2 (c) of the GDPR) with their non-EU-based affiliates. The Company acknowledges and agrees that AlixPartners, as reasonably required for the performance of the services pursuant to this Agreement, be permitted to transfer Personal Data to its affiliates, subject to, and in accordance with, the Privacy Shield requirements and/or the aforementioned standard data protection clauses. Except as allowed above, AlixPartners shall not transfer any Personal Data received in the EU and subject to the Data Protection Legislation outside of the European Economic Area without the prior written consent of the Company.

The Company consents to AlixPartners appointing third party Processors of Personal Data under this Agreement. AlixPartners confirms that it will enter into a written agreement with any third-party Processor prior to supplying them with the Personal Data, incorporating terms which are substantially similar to those set forth in this Section. As between the Company and AlixPartners, AlixPartners shall remain fully liable for all acts or omissions of any third-party Processor appointed by AlixPartners pursuant to this paragraph.

#91795257v4

**Alix**Partners

**PRIVILEGED & CONFIDENTIAL**                                                April 24, 2019

Mr. Jon Lowne
Chief Financial Officer
Purdue Pharma L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT  06901-3431

Mr. James P. Doyle
Vice President & General Counsel
Rhodes Technologies
Rhodes Pharmaceuticals L.P.
498 Washington Street
Coventry, RI  02816

Re:  **Agreement for Consulting Services – First Addendum**

Dear Sirs:

This letter is the First Addendum (the "First Addendum") to the agreement between
AlixPartners, LLP ("AlixPartners") and Purdue Pharma Inc., Avrio Health Inc., Purdue Pharma
L.P., Coventry Technologies L.P., Rhodes Technologies Inc., Rhodes Technologies, Rhodes
Pharmaceuticals Inc., Rhodes Pharmaceuticals L.P. (each collectively with their respective
subsidiaries, the "Company") dated March 5, 2019 (the "Engagement Letter"). Unless
otherwise modified herein, the terms and conditions of the Engagement Letter remain in full
force and effect. Capitalized terms not otherwise defined herein shall have the meaning given
to them in the Engagement Letter.

*The following is in addition to the Objectives and Tasks section in the Engagement Letter:*

**Objectives and Tasks**

AlixPartners will assist the Company's counsel, Davis Polk & Wardwell LLP ("Counsel"), with
certain ongoing litigation on behalf of the Company.  The additional services AlixPartners will
provide, at the direction of Counsel, will include:

- Identify and quantify the amount of all cash and non-cash asset distributions made by
  the Company on or after January 1, 2008 to its parent companies, their beneficial
  shareholders and/or their families and/or any other entity in which their beneficial
  owners or families own a controlling interest (the "Affiliated Entities").

- Identify all transfer pricing, royalty and other operational agreements between the
  Company and the Affiliated Entities in place on or after January 1, 2008.  Quantify the
  amount of value transferred and received under these agreements (cash or non-cash)
  and whether these agreements represented arm's length market agreements.

- Identify all payments made to, expenses reimbursed for or costs covered for the
  Company's beneficial owners or their families on or after January 1, 2008.

**Alix**Partners

Mr. John Lowne
Mr. James P. Doyle
April 24, 2019
Page 2 of 4

- Prepare a report, in writing, if necessary at Counsel and/or the Company's request, and if required by the case.

**Testimony**

Although you have not yet made a determination with respect to the need for testimony, AlixPartners understand that the Company and/or Counsel may or may not request our testimony. In the event that you do request such testimony, our personnel will be available to provide truthful testimony at trial or otherwise, at a time and place designated by the Company and/or Counsel. We also will make such personnel available as necessary for sessions with the Company and/or Counsel in preparation for such testimony.

**Privileged and Confidential**

Any work performed, work product produced, reports issued or communications between AlixPartners, the Company and Counsel (including any information provided by Counsel or the Company to AlixPartners) shall constitute privileged and confidential communications prepared in anticipation, or during the course of, litigation that AlixPartners will not disclose to any other person, both during and after the period of our assignment, except as: (i) requested by the Company or Counsel, or (ii) required by law, or (iii) required to be disclosed, as a reportable relationship, in any of AlixPartner's pending Bankruptcy Court retentions.

**Compensation**

The Company shall continue to compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1 of the Engagement Letter.

**Retainer**

The Company shall pay AlixPartners an additional retainer in the amount of US$1,000,000 in connection with this engagement to be applied against Fees and Expenses as set forth in this First Addendum and in accordance with Section 2 of the General Terms and Conditions of the Engagement Letter.

\*    \*    \*

# **Alix**Partners

Mr. John Lowne
Mr. James P. Doyle
April 24, 2019
Page 3 of 4

If these terms meet with your approval, please sign and return a copy of this First Addendum.

We look forward to working with you.

Sincerely yours,

AlixPartners, LLP

Lisa Donahue
Managing Director

Acknowledged and Agreed to:

PURDUE PHARMA INC.

By: _____

Dated: _____5/10/19_____

PURDUE PHARMA L.P.

By: _____

Dated: _____5/10/19_____

AVRIO HEALTH INC.

By: _____

Dated: _____5/10/19_____

COVENTRY TECHNOLOGIES L.P.

By: _____

Dated: _____5/10/19_____

**Alix**Partners

Mr. John Lowne
Mr. James P. Doyle
April 24, 2019
Page 4 of 4

RHODES TECHNOLOGIES INC.

By: _____

Dated: _____5/10/19_____

RHODES TECHNOLOGIES

By: _____

Dated: _____5/10/19_____

RHODES PHARMACEUTICALS INC.

By: _____

Dated: _____5/10/19_____

RHODES PHARMACEUTICALS L.P.

By: _____

Dated: _____5/10/19_____

# AlixPartners

May 8, 2019

Mr. Jon Lowne
Chief Financial Officer
Purdue Pharma L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT 06901-3431

Mr. James P. Doyle
Vice President & General Counsel
Rhodes Technologies
Rhodes Pharmaceuticals L.P.
498 Washington Street
Coventry, RI 02816

**Re: Agreement for Business Plan and Operational Performance Improvement Consulting Services – Second Addendum**

Dear Sirs:

This letter is the Second Addendum (the "Second Addendum") to the agreement between AlixPartners, LLP ("AlixPartners") and Purdue Pharma Inc., Avrio Health Inc., Purdue Pharma L.P., Coventry Technologies L.P., Rhodes Technologies Inc., Rhodes Technologies, Rhodes Pharmaceuticals Inc. and Rhodes Pharmaceuticals L.P. (each collectively with their respective subsidiaries, the "Company") dated March 5, 2019 (the "Engagement Letter"). Unless otherwise modified herein, the terms and conditions of the Engagement Letter remain in full force and effect. Capitalized terms not otherwise defined herein shall have the meaning given to them in the Engagement Letter.

*The following is in addition to the Engagement Letter:*

**Objectives and Tasks**

- Provide assistance to management, in connection with the Company's development and/or refinement of its business plan, and such other related forecasts.
- Assist management in developing and analyzing different go forward business plan scenarios, including a status quo, a rationalized and an outsourced manufacturing operation.
- Assist management in developing and analyzing go forward business plan scenarios with and without non-ADF opioid sales.
- Assist management in developing and analyzing potential cost reduction and revenue growth opportunities, including an analysis of headcount and spend by function, research and development pipeline spend and SG&A spend.
- Assist management in identifying potential synergies, cost savings and one-time costs related to the integration of Coventry Technologies L.P., Rhodes Technologies Inc., Rhodes Technologies, Rhodes Pharmaceuticals Inc. and Rhodes Pharmaceuticals L.P. and their subsidiaries into Purdue Pharma L.P.

# AlixPartners

Mr. Jon Lowne
Mr. James P. Doyle
May 8, 2019
Page 2 of 4

## Timing and Compensation

AlixPartners will commence this engagement on or about May 8, 2019 after receipt of a copy of the executed Second Addendum. AlixPartners estimates the time for completion of this engagement to be approximately five weeks ending June 13, 2019, depending upon the availability of the Company's management, key personnel and data.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1 of the Engagement Letter.

Notwithstanding the above, AlixPartners agrees to provide a credit of US$150,000 (separate from the credit outlined in Schedule 1 of the Engagement Letter which only applies to those services under the Engagement Letter) against actual fees based on rates times hours for work performed under this Second Addendum in relation to the objectives and tasks outlined above for the period on or about May 8, 2019 to June 13, 2019.  In no event will AlixPartners fees exceed $950,000 in connection with the services under this Second Addendum.

# **Alix**Partners

Mr. Jon Lowne
Mr. James P. Doyle
May 8, 2019
Page 3 of 4

* * *

If these terms meet with your approval, please sign and return a copy of this Second
Addendum.

We look forward to working with you.

Sincerely yours,

AlixPartners, LLP

Lisa Donahue
Managing Director

Acknowledged and Agreed to:

PURDUE PHARMA INC.

By: _____

Dated: _____5·23·2019_____

PURDUE PHARMA L.P.

By: _____

Dated: _____5·23·2019_____

AVRIO HEALTH INC.

By: _____

Dated: _____5·23·2019_____

COVENTRY TECHNOLOGIES L.P.

By: _____

Dated: _____5·23·29 9_____

**AlixPartners**

Mr. Jon Lowne
Mr. James P. Doyle
May 8, 2019
Page 4 of 4

RHODES TECHNOLOGIES INC.

By: _____

Dated: _____5 . 23 . 2019_____

RHODES TECHNOLOGIES

By: _____

Dated: _____5 . 23 . 2019_____

RHODES PHARMACEUTICALS INC.

By: _____

Dated: _____5 . 23 . 2019_____

RHODES PHARMACEUTICALS L.P.

By: _____

Dated: _____5 . 23 . 2019_____

Mr. Jon Lowne                                                      August 14, 2019
Chief Financial Officer
Purdue Pharma L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT 06901-3431

Mr. James P. Doyle
Vice President & General Counsel
Rhodes Technologies
Rhodes Pharmaceuticals L.P.
498 Washington Street
Coventry, RI 02816

**Re:  First Amendment to the Agreement for Financial Advisory and Consulting
Services, the First Addendum for Consulting Services and the Second
Addendum for Business Plan and Operational Performance Improvement
Consulting Services**

Dear Sirs:

This letter is the First Amendment (the "First Amendment") to the agreement between
AlixPartners, LLP ("AlixPartners") and Purdue Pharma Inc., Avrio Health Inc., Purdue Pharma
L.P., Coventry Technologies L.P., Rhodes Technologies Inc., Rhodes Technologies, Rhodes
Pharmaceuticals Inc. and Rhodes Pharmaceuticals L.P. (each collectively with their
respective subsidiaries, the "Company") dated March 5, 2019 (the "Engagement Letter"), the
First Addendum to the Engagement Letter dated April 24, 2019 (the "First Addendum") and
the Second Addendum between AlixPartners and the Company dated May 8, 2019 (the
"Second Addendum" and together with the Engagement Letter and the First Addendum, the
"Agreements").  Unless otherwise modified herein, the terms and conditions of the
Agreements remain in full force and effect. Capitalized terms not otherwise defined herein
shall have the meaning given to them in the Agreements.

*The following definition for the "Company" will replace the language from the Agreements:*

The defined term the "Company" as used in Agreements henceforth shall refer to Purdue
Pharma Inc., Purdue Pharma L.P., Rhodes Associates L.P., Rhodes Technologies and Rhodes
Pharmaceuticals L.P., collectively with their respective subsidiaries.

If these terms meet with your approval, please sign and return a copy of this First Amendment.

We look forward to working with you.

Sincerely yours,

AlixPartners, LLP

Lisa Donahue
Managing Director


Acknowledged and Agreed to:


Acknowledged and Agreed to:

PURDUE PHARMA INC.

By: _____

Dated: _____


PURDUE PHARMA L.P.

By: _____

Dated: _____


RHODES ASSOCIATES L.P.

By: _____

Dated: ____9/4/19_____


RHODES TECHNOLOGIES

By: _____

Dated: ____9/4/19_____

RHODES PHARMACEUTICALS L.P.

By: _____

Dated: _____

Mr. Jon Lowne                                                    August 14, 2019
Chief Financial Officer
Purdue Pharma L.P.
One Stamford Forum
201 Tresser Boulevard
Stamford, CT 06901-3431

Mr. James P. Doyle
Vice President & General Counsel
Rhodes Technologies
Rhodes Pharmaceuticals L.P.
498 Washington Street
Coventry, RI 02816

**Re:  First Amendment to the Agreement for Financial Advisory and Consulting
Services, the First Addendum for Consulting Services and the Second
Addendum for Business Plan and Operational Performance Improvement
Consulting Services**

Dear Sirs:

This letter is the First Amendment (the "First Amendment") to the agreement between
AlixPartners, LLP ("AlixPartners") and Purdue Pharma Inc., Avrio Health Inc., Purdue Pharma
L.P., Coventry Technologies L.P., Rhodes Technologies Inc., Rhodes Technologies, Rhodes
Pharmaceuticals Inc. and Rhodes Pharmaceuticals L.P. (each collectively with their
respective subsidiaries, the "Company") dated March 5, 2019 (the "Engagement Letter"), the
First Addendum to the Engagement Letter dated April 24, 2019 (the "First Addendum") and
the Second Addendum between AlixPartners and the Company dated May 8, 2019 (the
"Second Addendum" and together with the Engagement Letter and the First Addendum, the
"Agreements").  Unless otherwise modified herein, the terms and conditions of the
Agreements remain in full force and effect. Capitalized terms not otherwise defined herein
shall have the meaning given to them in the Agreements.

*The following definition for the "Company" will replace the language from the Agreements:*

The defined term the "Company" as used in Agreements henceforth shall refer to Purdue
Pharma Inc., Purdue Pharma L.P., Rhodes Associates L.P., Rhodes Technologies and Rhodes
Pharmaceuticals L.P., collectively with their respective subsidiaries.

If these terms meet with your approval, please sign and return a copy of this First Amendment.

We look forward to working with you.

Sincerely yours,

AlixPartners, LLP

Lisa Donahue
Managing Director


Acknowledged and Agreed to:


Acknowledged and Agreed to:

PURDUE PHARMA INC.

By: _____

Dated: _____

PURDUE PHARMA L.P.

By: _____

Dated: _____


RHODES ASSOCIATES L.P.

By: _____

Dated: _____


RHODES TECHNOLOGIES

By: _____

Dated: _____

RHODES PHARMACEUTICALS L.P.

By: _____

Dated: _____