## Exhibit A

**Proposed Order**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

### ORDER APPROVING DEBTORS' EMPLOYMENT OF PJT PARTNERS LP AS INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "**Application**")[2] of the above-captioned debtors and debtors in

possession (collectively, the "**Debtors**") for entry of an order (this "**Order**") , pursuant to

sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local

Rules 2014-1 and 2016-1, for authority to employ and retain PJT Partners LP ("**PJT**") as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Application.

investment banker to the Debtors in these chapter 11 cases, effective *nunc pro tunc* to the

Petition Date, pursuant to the terms of the Engagement Letter, as more fully set forth in the

Application; and upon the Coleman Declaration and the Flanagan Declaration; and this Court

having found that the Debtors' notice of the Application, and the opportunity for a hearing on the

Application, were appropriate under the circumstances, and that no other notice need be

provided; and this Court having reviewed the Application; and this Court having determined that

the legal and factual bases set forth in the Application establish just cause for the relief granted

herein; and this Court having found and determined that PJT has the capability and the

experience to provide the services described in the Application, that PJT is disinterested and does

not hold or represent an interest adverse to the Debtors or their estates, and that the relief sought

in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in

interest; and after due deliberation; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.    The Application is granted as set forth herein.

2.    The Debtors are authorized to retain and employ PJT as investment banker to the

Debtors in these chapter 11 cases pursuant to sections 327(a) and 328(a) of the Bankruptcy Code,

Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, *nunc pro tunc* to the

Petition Date, on the terms and conditions set forth in the Application and the Engagement

Letter.

3.    Except to the extent set forth herein, the Engagement Letter (together with all

annexes thereto), including without limitation the Fee Structure, is approved pursuant to

Bankruptcy Code sections 327(a) and 328(a), and the Debtors are authorized and directed to

perform their payment, reimbursement, contribution, and indemnification obligations and their

non-monetary obligations in accordance with the terms and conditions of, and at the times

specified in, the Engagement Letter. Subject to paragraph 7 of this Order, all compensation and

reimbursement of expenses payable under the Engagement Letter shall be subject to review only

pursuant to the standards set forth in Bankruptcy Code section 328(a), and shall not be subject to

any other standard of review, including but not limited to, that set forth in Bankruptcy Code

section 330.

4.      The Debtors are authorized to pay PJT's fees and to reimburse PJT for its

reasonable costs and expenses as provided in the Engagement Letter, and, in particular, all of

PJT's fees and expenses in these chapter 11 cases, including the Monthly, Capital Raising,

Restructuring and Transaction Fees, are hereby approved pursuant to section 328(a) of the

Bankruptcy Code. For the avoidance of doubt, PJT shall be paid (a) each Capital Raising Fee as

to which PJT may be entitled under the Engagement Letter as soon as such financing is approved

by order of this Court (or, if such approval occurred prior to entry of this Order, immediately

following entry of this Order) and with respect to amounts available to the Debtors; (b) each

Transaction Fee upon consummation of the applicable Transaction; and (c) the Restructuring Fee

upon consummation of a Restructuring, in each case subject to subsequent Court approval of any

such Capital Raising Fee, Transaction Fee or Restructuring Fee pursuant to PJT's interim and/or

final fee application, as applicable.

5.      PJT shall file interim and final fee applications for the allowance of compensation

for services rendered and reimbursement of expenses incurred in accordance with applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other

applicable procedures and orders of this Court; *provided, however*, that the requirements of the

Bankruptcy Code, the Bankruptcy Rules, and Local Rule 2016-1 are hereby modified such that

#92327993v19

PJT's restructuring professionals shall only be required to maintain summary records in half-hour increments describing each professional's tasks on a daily basis in support of each fee application, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to this Court; *provided, further,* that PJT's professionals shall not be required to keep time records on a project category basis or provide or conform to any schedules of hourly rates.

6.        None of the fees payable to PJT shall constitute a "bonus" or fee enhancement under applicable law.

7.        PJT shall be compensated in accordance with the terms of the Engagement Letter, and, in particular, all of PJT's fees and expenses in these chapter 11 cases are hereby approved pursuant to section 328(a) of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the fees and expenses payable to PJT pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in Bankruptcy Code section 328(a) and shall not be subject to the standard of review set forth in Bankruptcy Code section 330, except by the United States Trustee. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the United States Trustee to challenge the reasonableness of PJT's compensation and expense reimbursements under Bankruptcy Code sections 330 and 331. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the United States Trustee, on appeal or otherwise, with respect to the reasonableness of PJT's compensation.

8.        Notwithstanding anything to the contrary herein, the indemnification, contribution, and reimbursement provisions set forth in the Engagement Letter and the Indemnification Agreement are approved.

#92327993v19

9.      All requests for payment of indemnity, contribution, or otherwise pursuant to the

Indemnification Agreement shall be made by means of a final fee application and shall be

subject to the approval of, and review by, the Court to ensure that such payment conforms to the

terms of the Indemnification Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local

Rules, and other orders of this Court and is reasonable based on the circumstances of the

litigation or settlement in respect of which indemnity is sought.

10.     In no event shall any Indemnified Parties (as defined in the Indemnification

Agreement) be indemnified or receive contribution or other payment under the Indemnification

Agreement if the Debtors or a representative of the Debtors' estates asserts a claim for, and a

court determines by final order that such claims primarily arose out of, the gross negligence,

willful misconduct, or fraud of any Indemnified Parties.

11.     In the event an Indemnified Party seeks reimbursement of attorneys' fees from the

Debtors pursuant to the Indemnification Agreement, the invoices and supporting time records

from such attorneys shall be attached to PJT's own interim and final fee applications, and such

invoices and time records shall be subject to the United States Trustee guidelines and the

approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code

without regard to whether such attorneys have been retained under section 327 of the Bankruptcy

Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the

Bankruptcy Code.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and

enforceable immediately upon entry hereof.

#92327993v19

13.    Notwithstanding anything to the contrary in the Application and/or Engagement Letter, PJT shall have whatever duties, fiduciary or otherwise, that are imposed upon it by applicable law.

14.    Notwithstanding anything in the Application or the Engagement Letter to the contrary, PJT shall (i) to the extent that PJT uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "**Contractors**") in these cases, pass through the cost of such Contractors to the Debtors at the same rate that PJT pays the Contractors; and (ii) seek reimbursement for actual costs only. The Debtors shall ensure that any such Contractors are subject to the same conflict checks as required for PJT and that they shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

15.    In the event of any inconsistency between the Engagement Letter, the Application, and this Order, this Order shall govern.

16.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

17.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated:    _____, 2019
          White Plains, New York

                                        _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

6

**<u>Exhibit 1</u>**

**<u>Engagement Letter</u>**

# PJT Partners

PJT

May 6, 2019

Marshall S. Huebner
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

Dear Marshall:

This letter confirms the understanding and agreement (the "**Agreement**") between PJT Partners LP ("**PJT Partners**") and Davis Polk & Wardwell LLP ("**Counsel**"), as counsel to Purdue Pharma L.P., Purdue Pharma Inc., Avrio Health Inc., Rhodes Technologies and Rhodes Pharmaceuticals L.P. (collectively with each of their subsidiaries, the "**Company**"), regarding the retention of PJT Partners on an exclusive basis for the benefit of the Company effective as of April 1, 2019 (the "**Effective Date**") as its investment banker for the purposes set forth herein. PJT is being retained by Counsel to provide financial advice to assist Counsel in Counsel's provision of legal services to the Company and will report to and take direction from Counsel notwithstanding that PJT Partners' fees and expenses will be paid by the Company as set forth herein. Reference is hereby made to that certain engagement letter, dated April 24, 2018 (the "**Prior Agreement**"), by and among PJT Partners, the Company and Counsel, as counsel to the Company, which Prior Agreement is hereby terminated effective as of the Effective Date.

Under this Agreement, PJT Partners will provide investment banking services to Counsel in connection with a possible Restructuring (as defined below) and/or the sale, merger or other disposition of all or a portion of the Company or its assets (a "**Transaction**") and will assist Counsel in analyzing, structuring, negotiating and effecting the Restructuring or Transaction pursuant to the terms and conditions of this Agreement.  As used in this Agreement, the term "**Restructuring**" shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Company affecting all or a significant portion of its existing or potential obligations or other claims against the Company, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, preferred stock, and obligations or claims in respect of litigation (whether or not reduced to judgment) or legal settlement, but excluding any settlement of the current litigation by the State of Oklahoma  (collectively, the "**Obligations**"), and/or (ii) a sale or other acquisition or disposition of all or substantially all of the assets and/or equity of the Company, and/or (iii) any repurchase, refinancing, extension or repayment by the Company of all or a significant portion of its Obligations. For the avoidance of doubt, an out-of-court sale, merger or other disposition of any portion of the Company or its assets to any direct or indirect holder of the common equity of the Company as of the Effective Date or any entity owned and/or controlled by any such holder (collectively, the "**Current Equity Holders**") will not be considered a Transaction or Restructuring for purposes of this Agreement.

The investment banking services to be rendered by PJT Partners for the benefit of the Company will, if appropriate and at the request of Counsel, include the following:

(a)     assist in the evaluation of the Company's businesses and prospects, opportunities and financial condition;

(b)     assist in the evaluation of the Company's long-term business plan and related financial projections;

(c)     assist in the development of presentations to the Company's Board of Directors, various creditors and other third parties;

(d)     analyze the Company's financial liquidity;

(e)     analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)     participate in negotiations among the Company and its creditors, and other interested parties;

Purdue Pharma L.P.
May 6, 2019

(g)     value securities offered by the Company in connection with a Restructuring;

(h)     assist in arranging financing for the Company, as requested;

(i)     provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services;

(j)     assist the Company in preparing marketing materials in conjunction with a possible Transaction;

(k)     assist the Company in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

(l)     assist and advise the Company concerning the terms, conditions and impact of any proposed Transaction; and

(m)     provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring and/or Transaction, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, PJT Partners shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity.  PJT Partners makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring and/or Transaction.  PJT Partners is retained under this Agreement solely to provide advice regarding a Restructuring and/or a Transaction, and is not being retained to provide "crisis management" or any legal, tax, accounting or actuarial advice.  It is understood and agreed that nothing contained herein shall constitute a commitment, express or implied, on the part of PJT Partners to underwrite, purchase or place any securities, in a financing or otherwise.

It is agreed that the Company will pay the following fees to PJT Partners for its investment banking services (all fees and expenses payable to PJT Partners pursuant to this Agreement shall be payable solely by the Company; it being understood, notwithstanding anything to the contrary herein or in the indemnification agreement, that Counsel shall not in any event be liable or responsible to PJT Partners or any other party for any fees, expenses, obligations, liabilities, indemnities or damages incurred or any other amounts that may from time to time become payable relating to PJT Partners' investment banking services hereunder or this Agreement):

(i)     a monthly advisory fee (the "**Monthly Fee**") in the amount of $225,000 per month, payable by the Company in cash as follows: (a) to the extent that the Effective Date occurs after the 1st day of the month, for the period beginning on the Effective Date through the end of the first calendar month (the "**Stub Period**"), a pro-rated monthly fee in advance upon execution of this Agreement; (b) for the first full calendar month following the Stub Period, if applicable, or the Effective Date if there is no Stub Period, in advance upon execution of this Agreement; and (c) for each month thereafter, in advance on the first day of each month, subject to pro ration for a portion of a month. Fifty percent (50%) of the Monthly Fees paid to PJT Partners in respect of the period beginning on the Effective Date and ending on March 31, 2021 shall be credited against any Restructuring Fee (as defined below) payable hereunder;

(ii)     a capital raising fee (the "**Capital Raising Fee**") for any financing arranged by PJT Partners, at the Company's request, earned and payable upon receipt of a binding commitment letter.  If access to the financing is limited by orders of the bankruptcy court, a proportionate fee shall be payable with respect to each available commitment (irrespective of availability blocks, borrowing base, or other similar restrictions).  The Capital Raising Fee will be calculated as 1.0% of the total issuance size for senior debt financing, 3.0% of the total issuance size for junior debt financing, and 5.0%

Purdue Pharma L.P.
May 6, 2019

of the issuance amount for equity financing, it being understood that no Capital Raising Fee will be paid in respect of the portion of any financing provided by the Current Equity Holders;

(iii)    an additional fee (the "**Restructuring Fee**") equal to $15,000,000.  Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon (a) in the case of an out-of-court Restructuring, the closing of the Restructuring, including, to the extent applicable the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving (1) the compromise of the face amount of all or a significant portion of the Obligations, (2) the conversion of all or part of such Obligations into alternative securities, including equity, or (3) any other Restructuring; or (b) in the case of an in-court Restructuring, the consummation of a Chapter 11 plan or any other Restructuring pursuant to an order of the Bankruptcy Court or other applicable court.  The Restructuring Fee will be:

(I)    earned on the earliest of:

(w)    consummation of the Restructuring, and

(x)    in the event that the Company attempts to implement the Restructuring by means of a pre-negotiated Chapter 11 plan, the receipt of sufficient commitments, agreements or other expressions of intention to accept such plan that the Company elects to file a Chapter 11 case and therein represent to the Bankruptcy Court hearing such case that the Company will seek to confirm a plan based on the pre-negotiated plan, and

(II)    payable, in immediately available funds, on the earliest of:

(A)    consummation of the Restructuring,

(B)    the first business day immediately following, the receipt of such commitments, agreements or expressions of intention to accept the pre-negotiated Chapter 11 plan, provided that at least one class of creditors impaired by such plan has accepted such plan, and

(C)    two years after the date on which any such Restructuring Fee is earned.

(iv)    upon the consummation of a Transaction, a Transaction fee ("**Transaction Fee**") payable directly out of the gross proceeds of the Transaction calculated as 2.00% of the Transaction Value (as defined below); provided that, the Transaction Fee in respect of a Transaction involving (a) a sale of the products Lemborexant or Adhansia shall, in each case, not be less than $1,500,000 ($3,000,000 for a sale involving both products) or (b) a sale of the Company's over-the-counter drug business shall not be less than $3,000,000 (each such fee, a "**Minimum Fee**").  Each Transaction Fee shall be payable in cash at the closing of the applicable Transaction (the "**Closing**"); provided, however, to the extent any amount of Transaction Value in respect of such Transaction is to be paid to the Company after the applicable Closing (each, a "**Post-Closing Payment**"), any portion of the applicable Transaction Fee payable with respect to such Post-Closing Payment shall not be payable at Closing but instead shall be paid to PJT Partners promptly after the Company receives such Post-Closing Payment; provided, further, that each Transaction Fee paid to PJT Partners at the Closing shall not be less than the applicable Minimum Fee.  To the extent any Minimum Fee paid to PJT Partners at the Closing of a Transaction exceeds the Transaction Fee that would otherwise be payable to PJT Partners at such Closing absent any requirement to pay the applicable Minimum Fee, such difference shall be credited against any

Purdue Pharma L.P.
May 6, 2019

Transaction Fee payable to PJT Partners with respect to any Post-Closing Payment in respect of such Transaction.

In this Agreement, "**Transaction Value**" means the gross value of all cash, securities and other properties and consideration paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Transaction or a transaction related thereto (including, without limitation, amounts paid or to be paid (A) pursuant to covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Transaction Value shall also include (i) (I) in the case of the sale, exchange or purchase of the Company's equity securities the principal amount of any indebtedness for borrowed money (net of cash on the Company's balance sheet), preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities as set forth on the most recent consolidated balance sheet of the Company prior to the consummation of such sale, exchange or purchase or (II) in the case of a sale or disposition of assets by the Company the principal amount of any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities indirectly or directly assumed or acquired, and (ii) any indebtedness for borrowed money, preferred stock obligations, any pension liabilities, capital leases, guarantees and any other long-term liabilities that are or otherwise repaid or retired, in connection with or in anticipation of the Transaction. Transaction Value shall also include (x) any and all consideration received by the Company for securities of the Company issued in connection with the Transaction as to which PJT Partners is not also receiving a Capital Raising Fee and (y) the aggregate amount of any extraordinary dividend or distribution made by the Company from the date hereof until the closing of the Transaction. Transaction Value shall include all amounts paid into escrow and all contingent payments including, without limitation, contingent or milestone payments and payments to be made in connection with any regulatory filing, product approval, or based on achievement of predetermined sales levels, payable in connection with the Transaction. If the Transaction Value to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Transaction Value is paid.

In this Agreement, the value of any securities (whether debt or equity) or other property paid or payable as part of the Transaction Value shall be determined as follows: (1) the value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the public announcement of the Transaction; and (2) the value of securities that are not freely tradable or have no established public market or, if the Transaction Value utilized consists of property other than securities, the value of such other property shall be the fair market value thereof as mutually agreed by the parties hereto;

(v)    reimbursement of all reasonable, documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable and documented fees and expenses of PJT Partners' counsel (without the requirement that the retention of such counsel be approved by the court in any bankruptcy case) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses. In connection therewith the Company shall pay PJT Partners on the Effective Date and maintain thereafter a $75,000 expense advance for which PJT Partners shall account upon termination of this Agreement.

Purdue Pharma L.P.
May 6, 2019

Notwithstanding any provision herein to the contrary, the maximum aggregate amount payable hereunder in respect of all Restructuring Fees, Transaction Fees, and Capital Raising Fees, after giving effect to any crediting of other fees earned hereunder, shall be $23,500,000. For the avoidance of doubt, the foregoing cap on fees shall not include or affect any Monthly Fees due under this Agreement, the Company's obligations to pay PJT Partners' out-of-pocket expenses pursuant to this Agreement or the Company's obligations under and in respect of the indemnification agreement attached hereto as <u>Attachment A</u>.

PJT Partners will direct all communications and notices regarding financial matters, including billing, to the contacts designated by the Company on Schedule I (the "**Company Financial Matters Contacts**").  Please note that any invoices in excess of $500,000 will be provided to the Company Financial Matters Contacts in an encrypted form or other secure manner and subject to an authentication process.  Payments to PJT Partners shall be made pursuant to the wire instructions set forth on Schedule II, and any changes to the PJT Partners' wire instructions will be provided by the PJT Partners financial matters contacts, as set forth on Schedule I, (the "**PJT Partners Financial Matters Contacts**") to the Company Financial Matters Contacts in an encrypted form or other secure manner and subject to an authentication process.  Any notices and communications regarding financial matters, including billing, from the Company shall be directed to one of the PJT Partners Financial Matters Contacts.

All amounts herein are stated in U.S. dollars and all payments under this Agreement shall be paid in immediately available funds in U.S. dollars, free and clear of any tax, assessment or other governmental charge (with appropriate gross-up for withholding taxes).  If any amount to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted in U.S. dollars at the prevailing exchange rate on the date such amount is paid.

In the event that the Company is or becomes a debtor under Chapter 11, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "**Bankruptcy Court**") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) PJT Partners' retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code.  The Company shall supply PJT Partners with a draft of such application and any proposed order authorizing PJT Partners' retention sufficiently in advance of the filing of such application and proposed order to enable PJT Partners and its counsel to review and comment thereon.

PJT Partners shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under Chapter 11 unless PJT Partners' retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order entered by the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to PJT Partners in all respects.

The Company will use its commercially reasonable efforts to ensure that PJT Partners' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of the indemnification agreement attached hereto as <u>Attachment A</u> shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and, for purposes of the payment of its Monthly Fees and out-of-pocket expenses, shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more cash collateral and/or financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing PJT Partners' retention, the Company will assist PJT Partners in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Company will support PJT Partners' fee applications that are consistent with this Agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly the fees and expenses of PJT Partners, in

Purdue Pharma L.P.
May 6, 2019

each case, which are both (i) owed pursuant to this Agreement and (ii) approved by the Bankruptcy Court in
accordance with the orders of the Bankruptcy Court.

PJT Partners acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, PJT
Partners' fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section
328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that PJT
Partners shall not be required to maintain time records and, provided further, that PJT Partners shall not be
required to maintain receipts for expenses in amounts less than $75.  In the event that the Company becomes a
debtor under Chapter 11 and PJT Partners' engagement hereunder is approved by the Bankruptcy Court, the
Company shall pay all fees and expenses of PJT Partners hereunder as promptly as practicable in accordance with
the terms hereof.  Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to PJT
Partners in immediately available funds by wire transfer.

With respect to PJT Partners' retention under sections 327 and 328 of the Bankruptcy Code, the Company
acknowledges and agrees that PJT Partners' restructuring expertise as well as its capital markets knowledge,
financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company
during the term of PJT Partners' engagement hereunder, were important factors in determining the amount of the
various fees set forth herein, and that the ultimate benefit to the Company of PJT Partners' services hereunder
could not be measured merely by reference to the number of hours to be expended by PJT Partners' professionals
in the performance of such services.  The Company also acknowledges and agrees that the various fees set forth
herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time
and effort will be required of PJT Partners and its professionals hereunder over the life of the engagement, and in
light of the fact that such commitment may foreclose other opportunities for PJT Partners and that the actual time
and commitment required of PJT Partners and its professionals to perform its services hereunder may vary
substantially from week to week or month to month, creating "peak load" issues for the firm.  In addition, given
the numerous issues which PJT Partners may be required to address in the performance of its services hereunder,
PJT Partners' commitment to the variable level of time and effort necessary to address all such issues as they arise,
and the market prices for PJT Partners' services for engagements of this nature in an out-of-court context, the
Company agrees that the fee arrangements hereunder (including the Monthly Fee, Capital Raising Fee,
Restructuring Fee and Transaction Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other
investment banking services or transactions that may be undertaken by PJT Partners at the request of both
Counsel and the Company, including the arranging of debt or equity capital (except as provided above), issuing
fairness opinions or any other specific services not set forth in this Agreement.  The terms and conditions of any
such investment banking services, including compensation arrangements, would be set forth in a separate written
agreement between PJT Partners and the appropriate party.

PJT Partners agrees that, until five (5) years after the date of expiration or termination hereof (or such longer
period as may be applicable in respect of Identified Information, defined below)  (the "Confidentiality Term"), PJT
Partners will hold confidential all, and not disclose any proprietary or non-public information concerning the
network of independent associated companies that includes the Company made available to PJT Partners by or on
behalf of the Company in connection with PJT Partners' engagement hereunder (the "**Information**"), except and
only to the extent that such disclosure (a) has been consented to be disclosed by the Company in writing, (b) on
advice of PJT Partner's counsel, is required by law, regulation, supervisory authority or other applicable judicial or
governmental order or (c) is reasonably necessary in connection with PJT Partners' engagement hereunder to be
disclosed to Counsel or those of PJT Partners' employees, affiliates, agents, attorneys and other representatives
(collectively, "**Representatives**") but in such event only to those Representatives who need to know such
Information for the purpose of assisting PJT Partners with PJT Partners' engagement hereunder (it being
understood that such Representatives will be informed of the confidential nature of the Information) and are

Purdue Pharma L.P.
May 6, 2019

bound to comply with this paragraph.  The Information covered by the foregoing obligation shall not include Information that (a) is or becomes generally available to the public (other than as a result of disclosure by PJT Partners or any of its Representatives in violation of this Agreement); (b) was available to PJT Partners or its Representatives on a non-confidential basis prior to its disclosure by or on behalf of the Company as proven by prior written records, (c) becomes available to PJT Partners or its Representatives on a non-confidential basis from a person other than the Company or its Representatives who is not, to PJT Partners' knowledge, bound by a duty of confidentiality to the Company with respect to such Information or otherwise prohibited from disclosing such information.  PJT Partners shall be responsible for any non-compliance with, or breach of, its confidentiality obligations under this paragraph by any of the foregoing parties to which it discloses any Information.  In the event that the Company requests that PJT Partners comply with its confidentiality obligations set forth in this paragraph for a specified period in excess of the five (5) year term set forth above with respect to any expressly identified Information (the "**Identified Information**") as to which the Company or the network of independent associated companies is bound in respect of such Identified Information by a confidentiality agreement with a third party, such Identified Information shall only be provided to PJT Partners to the extent that PJT Partners provides its written consent to such extended term (which can be via email).  Once PJT Partners provides its written consent, the agreed upon extended term shall constitute the Confidentiality Term with respect to such Identified Information only. Upon the Company's or Counsel's written request, PJT Partners will, at its election, return to Company and/or destroy the Information (and any copies thereof) received hereunder, and destroy any notes or other materials prepared by PJT Partners that embody or incorporate such Information, including any copies thereof, and will promptly deliver to Company a written certificate executed by a duly authorized officer of PJT Partners attesting to such return and/or destruction.  Notwithstanding the foregoing, (i) PJT Partners may keep a reasonable number of archival copies of the Information as may be required by its standard document retention policies, law, regulation or any applicable self-regulatory agency to which PJT Partners is subject, and (ii) PJT Partners will not be required to erase electronically stored Information that has been saved to a back-up file or other electronic medium in accordance with its ordinary back-up practices, which shall instead be destroyed upon the normal expiration of its back-up files and practices.  PJT Partners shall continue to be bound by the terms and conditions of this Agreement with respect to any such Information retained in accordance with the foregoing sentence for the duration of the Confidentiality Term.

The Company will furnish or cause to be furnished to PJT Partners such Information regarding the Company or the network of independent associated companies as PJT Partners reasonably requests and believes appropriate to its assignment.  The Company further agrees that it will provide PJT Partners with reasonable access upon reasonable prior notice and during regular business hours to the Company and its directors, officers, employees, accountants, counsel and other advisers. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  During the term of the engagement, the Company will use commercially reasonable efforts to inform PJT Partners promptly upon becoming aware of (i) any material developments relating to the Company that the Company reasonably expects may impact PJT Partners' services under this Agreement, or (ii) any Information provided to PJT Partners is, or has become, untrue, unfair, inaccurate or misleading in any material respect.  Furthermore, the Company warrants and undertakes to PJT Partners that, in respect of all Information supplied by the Company, the Company has not, to its knowledge, obtained any such Information other than by lawful means and that disclosure to PJT Partners will not, to its knowledge, breach any agreement or duty of confidentiality owed to third parties.  The Company and Counsel recognize and confirm that PJT Partners (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

Purdue Pharma L.P.
May 6, 2019

In the event that the Information belonging to the Company is stored electronically on PJT Partners' computer systems, PJT Partners shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that PJT Partners exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information. PJT Partners shall take reasonable steps, consistent with the practices and professional standards applied by investment banks handling similarly sensitive information, to preserve and protect against any anticipated or actual threats or hazards to the integrity and security of, and prevent any unauthorized access to or destruction, use, modification and disclosure of, Information belonging to the Company that is stored electronically on PJT Partners' computer systems (including personally identifiable information) while in its possession and control.  In performing the Services, PJT Partners will observe and comply, in all material respects, with all applicable data privacy and data protection laws and regulations, including applicable consumer privacy laws.

Notwithstanding anything to the contrary herein, PJT Partners acknowledges and agrees that the work product produced by PJT Partners pursuant to this Agreement is for the purpose of facilitating the rendering by Counsel of legal advice to the Company and constitutes attorney work product, and that any communication to Counsel, including, without limitation, any correspondence, analyses, reports and related materials that PJT Partners prepares, constitutes confidential and privileged communications and PJT Partners will not disclose the same or any of the Information to any other person except as requested by Counsel.

Except as required by applicable law, any advice to be provided by PJT Partners under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors) without the prior written consent of PJT Partners, not to be unreasonably withheld, conditioned or delayed, except as required by applicable law or regulation.  In the event disclosure is required by subpoena or court order, the Company will, unless otherwise prohibited by law, provide PJT Partners with reasonable advance notice and permit PJT Partners to comment on the form and content of the disclosure.  All services, advice and information and reports provided by PJT Partners to Counsel and the Company in connection with this assignment shall be for the sole benefit of Counsel and the Company and shall not be relied upon by any other person.

The Company acknowledges and agrees that PJT Partners will provide its investment banking services to Counsel on behalf of the Company. The Company further acknowledges and agrees that PJT Partners has been retained for the purposes set forth herein and does not in such capacity act as a fiduciary for the Company or any other person. PJT Partners shall act as an independent contractor and any duties of PJT Partners arising out of its engagement pursuant to this Agreement shall be owed solely to Counsel and the Company. Following the public announcement of a Restructuring and/or Transaction, PJT Partners may, at its own expense, place announcements or advertisements in financial newspapers and journals or place tombstones on its marketing materials, including its website, describing PJT Partners' services hereunder and the Company agrees that PJT Partners may use the Company's logo in any such advertisements or tombstones.  In any press release or other public announcement made by the Company regarding a Restructuring and/or Transaction that references the services hereunder, the Company shall refer to PJT Partners LP or such entity as PJT Partners may direct.

In consideration of PJT Partners' agreement to provide investment banking services to Counsel in connection with this Agreement, it is agreed that the Company will indemnify PJT Partners and its agents, representatives, members and employees by executing the indemnification agreement attached to this Agreement as Attachment A.  The indemnification agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein.  PJT Partners acknowledges that Counsel has no obligation to indemnify PJT Partners.

PJT Partners' engagement hereunder may be terminated upon 30 days' written notice without cause by Counsel, the Company or PJT Partners; or immediately upon written notice of termination for cause by Counsel, the Company or PJT Partners. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and

Purdue Pharma L.P.
May 6, 2019

expenses accrued through the date of termination, the status of PJT Partners as an independent contractor, the limitation as to whom PJT Partners shall owe any duties, and any other provision of this Agreement that, by its terms, survives termination, will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as <u>Attachment A</u> or PJT Partners' confidentiality obligations hereunder. Without limiting the foregoing, PJT Partners shall be entitled to the Restructuring Fee, Capital Raising Fee and/or Transaction Fee, as applicable, in the event that, at any time prior to the expiration of 24 months following the termination of this Agreement either (i) a Restructuring, a capital raise and/or a Transaction, as applicable, is consummated or (ii) a definitive agreement with respect to a Restructuring, a capital raise and/or a Transaction, respectively, is executed and a Restructuring, a capital raise and/or a Transaction, respectively, is thereafter consummated.

The Company represents that neither it nor any of its affiliates under common control, nor, to the knowledge of the Company, any of their respective directors or officers, is an individual or entity ("**Person**") that is, or is owned or controlled by a Person that is: (i) a Person with whom dealings are prohibited or restricted under U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control and the U.S. Department of State) or under sanctions imposed by the United Nations Security Council, Canada, the European Union, or member countries of the European Union ; (ii) a Person subject to anti-money laundering prohibitions, restrictions, or sanctions imposed by the United States, Canada, the European Union, member countries of the European Union, or any other relevant jurisdiction; or (iii) to the knowledge of the Company, not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions laws.

PJT Partners maintains a conflicts management program (the "Conflicts Management Program"). The Conflicts Management Program is a program designed to include (i) every active matter on which PJT Partners is currently engaged, (ii) the entities represented by PJT Partners in such engagements, (iii) the material parties involved in each current matter (inclusive of adverse and related parties, as identified to PJT Partners by the prospective client and/or its counsel in the case of a restructuring advisory assignment), and (iv) the professional at PJT Partners that is knowledgeable about the matter. As a regulated broker-dealer, PJT Partners maintains compliance policies and procedures which include requirements pertaining to the monitoring, receipt and dissemination of client confidential information.  It is the policy of PJT Partners that no new matter may be accepted or opened within the firm without completing and submitting to those charged with administering the Conflicts Management Program the information necessary to check such matter for conflicts. The scope of the review is a function of the completeness and accuracy of the information submitted by the PJT Partners professional opening a new matter.  For purposes of monitoring and avoiding conflicts of interest, PJT Partners maintains a list of companies with which PJT Partners is doing business, either as an advisor or with respect to which PJT Partners is in possession of material, nonpublic information or has entered into a confidentiality agreement.   The Conflicts Management Program and accompanying policy and procedures are maintained by PJT Partners' internal Legal and Compliance Department.  PJT Partners' Legal and Compliance Department is responsible for maintaining and reviewing the firm's centralized repository of conflicts of interest information and for performing reviews in conjunction with senior business management.

The Company should be aware that PJT Partners and/or its affiliates may be providing and may in the future provide financial or other services to other parties with conflicting interests.  In addition, the Company should be aware that PJT Partners maintains relationships throughout the pharmaceutical industry, including with other opioid manufacturers that are, or may become, involved in opioid-related litigation. Consistent with PJT Partners' policy to hold in confidence the affairs of its clients, PJT Partners will not use any Information except in connection with PJT Partners' services to, and PJT Partners' relationship with, the Company, nor will PJT Partners use on the Company's behalf or have any obligation to disclose or otherwise have any liability with respect to any confidential information obtained from any other client.  Notwithstanding anything to the contrary provided elsewhere herein, the Company expressly acknowledges and agrees that none of the provisions of this Agreement shall in any way

Purdue Pharma L.P.
May 6, 2019

restrict PJT Partners from being engaged or mandated by any third party, or otherwise participating or assisting with any transaction involving any other party (other than a transaction that is the subject of this Agreement prior to the termination of this Agreement).

This Agreement (including the indemnification agreement attached hereto as Attachment A) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this Agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement and any dispute or claim that may arise out of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Each of the Company and Counsel hereby agrees that any action or proceeding brought by the Company and/or Counsel against PJT Partners based hereon or arising out of PJT Partners' engagement hereunder, shall be brought and maintained by the Company and/or Counsel exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case.  Each of the Company and Counsel irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings.  Each of the Company and Counsel hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

**Notices**.  Any notices required or permitted to be given hereunder by either party hereto to the other parties will be given in writing (i) by personal delivery, email or facsimile transmission, (ii) by nationally-recognized overnight delivery company or (iii) by prepaid first class, registered or certified mail, postage prepaid, in each case addressed to the other parties hereto as set forth on Schedule I (or to such other address as the other party hereto may request in writing by notice given pursuant to this section). Notices will be deemed received on the earliest of: (a) if personally delivered, emailed or sent via facsimile, the same day; (b) if sent by overnight delivery company, on the second working day after the day it was sent; or (c) if sent by mail, when actually received.

This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.  A facsimile of a signed copy of this Agreement or other copy made by reliable mechanical means may be relied upon as an original.

Purdue Pharma L.P., Rhodes Technologies and Rhodes Pharmaceuticals L.P. each hereby represent and warrant that (a) it is duly authorized to execute and deliver this Agreement for and on behalf of each of its subsidiaries and (b) the execution and delivery of this Agreement and the performance of the obligations of Purdue Pharma L.P., Rhodes Technologies and Rhodes Pharmaceuticals L.P. and each of their respective subsidiaries under this Agreement has been duly authorized and this Agreement constitutes a valid and legal agreement binding on each such party and enforceable in accordance with its terms.

[SIGNATURE PAGE FOLLOWS]

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the indemnification agreement attached hereto as <u>Attachment A</u>.

Very truly yours,

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____

    Name: _Timothy R. Coleman_

    Title:   Partner

Accepted and Agreed to as

of the date first written above:

PURDUE PHARMA L.P.
(on behalf of itself and its subsidiaries)
By: Purdue Pharma Inc., its general partner

By: _____

    Name:   _Jon Lowne_

    Title:   _SVP, CFO_

RHODES TECHNOLOGIES
(on behalf of itself and its subsidiaries)

By: _____

    Name:

    Title

RHODES PHARMACEUTICALS
(on behalf of itself and its subsidiaries)

By: _____

    Name:

    Title

DAVIS POLK & WARDWELL LLP

By: _____

    Name:   Marshall S. Huebner

    Title:   Partner

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the indemnification agreement attached hereto as <u>Attachment A</u>.

Very truly yours,

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____
      Name:
      Title:   Partner


Accepted and Agreed to as
of the date first written above:

PURDUE PHARMA L.P.
(on behalf of itself and its subsidiaries)
By: Purdue Pharma Inc., its general partner

By: _____
      Name:
      Title:

RHODES TECHNOLOGIES
(on behalf of itself and its subsidiaries)

By: _____
      Name:  David S. Fogel
      Title  V.P. Finance

RHODES PHARMACEUTICALS L.P.
(on behalf of itself and its subsidiaries)

By: _____
      Name:  David S. Fogel
      Title  V.P. Finance

DAVIS POLK & WARDWELL LLP

By: _____
      Name:  Marshall S. Huebner
      Title:  Partner

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the indemnification agreement attached hereto as <u>Attachment A</u>.


Very truly yours,

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____
      Name:
      Title:  Partner


Accepted and Agreed to as
of the date first written above:

PURDUE PHARMA L.P.
(on behalf of itself and its subsidiaries)
By: Purdue Pharma Inc., its general partner

By: _____
      Name:
      Title:

RHODES TECHNOLOGIES L.P.
(on behalf of itself and its subsidiaries)

By: _____
      Name:
      Title

RHODES PHARMACEUTICALS L.P.
(on behalf of itself and its subsidiaries)

By: _____
      Name:
      Title

DAVIS POLK & WARDWELL LLP

By: _____
      Name:  Marshall S. Huebner
      Title:  Partner

Purdue Pharma L.P.
May 6, 2019

ATTACHMENT A

May 6, 2019

PJT Partners LP
280 Park Avenue
New York, NY  10017

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

This letter will confirm that PJT Partners LP ("**PJT Partners**") has been engaged to advise and assist Davis Polk &
Wardwell LLP ("Counsel"), as counsel to Purdue Pharma L.P., Purdue Pharma Inc., Avrio Health Inc., Rhodes
Technologies and Rhodes Pharmaceuticals L.P. (collectively with each of their subsidiaries, the "**Company**") in
connection with the matters referred to in the letter of agreement, dated as of May 6, 2019, by and between PJT
Partners and Counsel (the "**Engagement Letter**").  In connection with the engagement of PJT Partners to advise and
assist Counsel for the benefit of the Company as described in the attached Engagement Letter (the
"**Engagement**"), in the event that PJT Partners becomes involved in any capacity in any claim, suit, action,
proceeding, investigation or inquiry (including, without limitation, any shareholder or derivative action or
arbitration proceeding) (collectively, a "**Proceeding**") in connection with any matter in any way relating to or
referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter,
including, without limitation, related services and activities prior to the date of the Engagement Letter, the
Company agrees to indemnify, defend and hold PJT Partners and its affiliates, and their respective current and
former directors, officers, agents, employees, attorneys and other representatives and the successors and assigns
of all of the foregoing persons (each an "**Indemnified Party**") harmless to the fullest extent permitted by law, from
and against any losses, claims, damages, fines, penalties, liabilities and expenses ("**Losses**"), whether they be joint
or several, in connection with any matter in any way relating to or referred to in the Engagement Letter or arising
out of the matters contemplated by the Engagement Letter, including, without limitation, related services and
activities prior to the date of the Engagement Letter, except to the extent that it shall be determined by a court of
competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review
that such Losses resulted from the gross negligence, fraud, bad faith or willful misconduct of such Indemnified
Party or an intentional breach of the confidentiality obligations set forth in the Engagement Letter by (or a breach
thereof resulting from the gross negligence of) such Indemnified Party.  In the event that any Indemnified Party
becomes involved in any capacity in any Proceeding (regardless of whether or not such or any Indemnified Party is
a party to or the subject of such Proceeding) in connection with any matter in any way relating to or referred to in
the Engagement Letter or arising out of the matters contemplated by the Engagement Letter (including, without
limitation, in enforcing the Engagement Letter), the Company will reimburse such Indemnified Party for its
reasonable, documented legal and other expenses (including the cost of any investigation and preparation) as such
expenses are incurred by such Indemnified Party in connection therewith; provided, that if it shall be determined
by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or
other review that Losses resulted from the gross negligence, fraud, bad faith or willful misconduct of such

Purdue Pharma L.P.
May 6, 2019

Indemnified Party or an intentional breach of the confidentiality obligations set forth in the Engagement Letter by (or a breach thereof resulting from the gross negligence of) such Indemnified Party, such Indemnified Party shall return to the Company such reimbursed amounts..  The Company also agrees to cooperate with any Indemnified Party and to give, and so far as it is reasonably able to procure the giving of, all such reasonable information and render all such reasonable assistance to such Indemnified Party as such Indemnified Party may reasonably request in connection with any Proceeding and not to take any action which might reasonably be expected to prejudice the position of any Indemnified Party in relation to any Proceeding without the consent of PJT Partners (such consent not to be unreasonably withheld, conditioned or delayed).  In the event that any Indemnified Party is requested or authorized by the Company or required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with the matters referred to in the Engagement Letter, the Company will, so long as PJT Partners is not a party to the Proceeding in which the information is sought, pay PJT Partners the reasonable fees and expenses of its counsel incurred in responding to such a request.

If such indemnification is for any reason not available or insufficient to hold an Indemnified Party harmless, the Company agrees to contribute to the Losses involved in the proportion appropriate to reflect the relative benefits received or sought to be received by the Company and its security holders and affiliates and other constituencies, on the one hand, and the Indemnified Party, on the other hand, in connection with the matters contemplated by the Engagement Letter, or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company or its security holders and affiliates or other constituencies, on the one hand, and of the Indemnified Parties, on the other hand; provided, however, that, to the extent permitted by applicable law, the Indemnified Parties shall not be responsible for amounts which in the aggregate are in excess of the amount of all fees actually received by PJT Partners from the Company in connection with the Engagement.  The Company agrees that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Company and its security holders and affiliates and other constituencies, on the one hand, and the Indemnified Party, on the other hand, in connection with the matters contemplated by the Engagement Letter shall be deemed to be in the same proportion that the total value received or paid or contemplated to be received or paid by the Company or its security holders or affiliates and other constituencies, as the case may be, as a result of or in connection with the matters (whether or not consummated) for which PJT Partners has been retained to perform financial services bears to the fees paid to PJT Partners under the Engagement Letter; provided, however, to the extent permitted by applicable law, the Indemnified Parties, taken together, shall not be liable for Losses which in the aggregate are in excess of the amount of fees actually received by PJT Partners pursuant to the Engagement Letter (exclusive of amounts paid for reimbursement of expenses under the Engagement Letter).

The Company agrees that no Indemnified Party shall have any liability to the Company or any person asserting claims on behalf of or in right of the Company in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that such Losses incurred by the Company resulted from the gross negligence, fraud, bad faith or willful misconduct of such Indemnified Party or an intentional breach of the confidentiality obligations set forth in the Engagement Letter by (or a breach thereof resulting from the gross negligence of) such Indemnified Party.

If any Proceeding shall be brought, threatened or asserted against an Indemnified Party in respect of which indemnity or contribution may be sought against the Company, PJT Partners shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability which the Company may have on account of this indemnity or otherwise, except to the extent the Company shall have been actually materially prejudiced by such failure.  The Company may elect to, assume the defense of such Proceeding,

Purdue Pharma L.P.
May 6, 2019

at the Company's own expense, with counsel reasonably satisfactory to such Indemnified Party.  Such Indemnified Party shall have the right to employ separate counsel in any such Proceeding and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (a) the Company has agreed in writing to pay such fees and expenses, (b) the Company has failed to assume the defense, pursue the defense reasonably diligently or to employ counsel in a timely manner (unless such delay in employing counsel does not materially prejudice PJT Partners), or, (c) outside counsel to such Indemnified Party has advised such Indemnified Party that in such Proceeding there is an actual or potential conflict of interest or a conflict on any material issue between the Company's position and the position of such Indemnified Party.

The Company agrees that, without PJT Partners' prior written consent (which shall not be unreasonably withheld, conditioned or delayed), it will not settle, compromise or consent to the entry of any judgment in any pending or threatened Proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party to such Proceeding), unless such settlement, compromise or consent (a) includes an explicit and unconditional release from the settling, compromising or consenting party of each Indemnified Party from all liability arising out of such Proceeding and (b) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, due care, loyalty, expertise or reputation of any Indemnified Party or any action or inaction by each Indemnified Party.  No Indemnified Party seeking indemnification, reimbursement or contribution under this letter agreement will, without the Company's prior written consent (which shall not be unreasonably withheld, conditioned or delayed), settle, compromise, consent to the entry of any judgment or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification, reimbursement or contribution may be sought.

The Company's reimbursement, indemnification and contribution obligations under this letter agreement shall be in addition to any liability which the Company may otherwise have at law or in equity, shall not be limited by any rights PJT Partners or any other Indemnified Party may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, PJT Partners and any other Indemnified Party.

For the avoidance of doubt, Counsel shall have no obligation to indemnify PJT Partners.

This letter agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.  A facsimile of a signed copy of this letter agreement or other copy made by reliable mechanical means may be relied upon as an original.

Purdue Pharma L.P., Rhodes Technologies and Rhodes Pharmaceuticals L.P. each hereby represents and warrants that (a) it is duly authorized to execute and deliver this Agreement for and on behalf of each of its subsidiaries and (b) the execution and delivery of this letter agreement and the performance of the obligations of each of Purdue Pharma L.P., Rhodes Technologies and Rhodes Pharmaceuticals L.P. each of their respective subsidiaries under this letter agreement has been duly authorized and this letter agreement constitutes a valid and legal agreement binding on each such party and enforceable in accordance with its terms.


[SIGNATURE PAGE FOLLOWS]

Purdue Pharma L.P.
Mar 6, 2019

The provisions of this letter agreement shall apply to the Engagement or any modification thereof, as well as any additional engagement or any modification thereof of PJT Partners in connection with the matters which are the subject of the Engagement, and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This letter agreement and the Engagement Letter shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

PURDUE PHARMA L.P.
(on behalf of itself and its subsidiaries)
By: Purdue Pharma Inc., its general partner

By: _____
    Name: Jon Lowne
    Title: SVP, CFO

RHODES TECHNOLOGIES
(on behalf of itself and its subsidiaries)

By: _____
    Name:
    Title

RHODES PHARMACEUTICALS
(on behalf of itself and its subsidiaries)

By: _____
    Name:
    Title

Accepted and Agreed to as
of the date first written above:

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____
    Name: Timothy R. Coleman
    Title: Partner

Purdue Pharma L.P.
Mar 6, 2019

The provisions of this letter agreement shall apply to the Engagement or any modification thereof, as well as any additional engagement or any modification thereof of PJT Partners in connection with the matters which are the subject of the Engagement, and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This letter agreement and the Engagement Letter shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

PURDUE PHARMA L.P.
(on behalf of itself and its subsidiaries)
By: Purdue Pharma Inc., its general partner

By: _____
     Name:
     Title:

RHODES TECHNOLOGIES INC.
(on behalf of itself and its subsidiaries)

By: _____
     Name:   David S. Fogg
     Title   V.P. Finance

RHODES PHARMACEUTICALS L.P.
(on behalf of itself and its subsidiaries)

By: _____
     Name:   David S. Fogg
     Title   V.P. Finance

Accepted and Agreed to as
of the date first written above:

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____
     Name:
     Title:   Partner

#91791082v3

Purdue Pharma L.P.
May 6, 2019

# Schedule I

### Notices

Financial Matters Contacts:  All communications and notices related to financial matters, including billing, shall be addressed to the following:

If to PJT Partners:
>    PJT Partners LP
>    280 Park Avenue
>    New York, NY 10017

>    Attention to either:
>    - Helen Meates, Chief Financial Officer; htm@pjtpartners.com; 212.364.7807; or
>    - David Figur, Director of Finance; figur@pjtpartners.com; 212.364.5056

If to the Company:
>    Purdue Pharma L.P
>    One Stamford Forum
>    201 Tresser Boulevard
>    Stamford, CT 06901-3431
>    Attention:  Jon Lowne, CFO; Email: jon.lowne@pharma.com; Tel: (203) 588-7077

All other notices shall be addressed to the following:

If to PJT Partners:
>    PJT Partners LP
>    280 Park Avenue
>    New York, NY 10017
>    Attention:  General Counsel
>    Email:  cuminale@pjtpartners.com
>    Tel:  212.364.7170

If to the Company:
>    Purdue Pharma L.P.
>    One Stamford Forum
>    201 Tresser Boulevard
>    Stamford, CT 06901-3431
>    Attention:  Marc Kesselman, SVP & General Counsel; Email: marc.kesselman@pharma.com;
>    Tel: (203) 588-7169

Counsel:
>    Davis Polk & Wardwell LLP
>    450 Lexington Avenue
>    New York, NY 10017
>    Attention: Marshall S. Huebner
>    Email: marshall.huebner@davispolk.com
>    Tel: 212-450-4099

Purdue Pharma L.P.
May 6, 2019

# Schedule II

**Wire Instructions**

| | |
|---|---|
| Bank Name: | First Republic Bank |
| | 1230 Avenue of the Americas |
| | New York, NY 10020 |
| Bank Routing Number: (ABA) | 321 081 669 |
| For the benefit of: (Account Name/Title) | PJT Partners LP |
| Account Number: | 80003266582 |
| Swift Code: | FRBBUS6S |