## Exhibit C

**Flanagan Declaration**

#92327993v19

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF TARA FLANAGAN IN SUPPORT OF
DEBTORS' APPLICATION TO EMPLOY PJT PARTNERS LP
AS INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE**

I, Tara Flanagan, hereby declare:

1. I am the Chief Compliance Officer of PJT Partners LP ("**PJT**"). As part of my job, I am responsible for supervising employees who maintain, for purposes of monitoring and avoiding conflicts of interest, a list of companies with which PJT is doing business, either as an

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

#92327993v19

advisor or with respect to which PJT is in possession of material, nonpublic information or has entered into a confidentiality agreement.

2. On July 30, 2019, as updated on August 7, 2019, September 15, 2019 and September 16, 2019, my colleagues received a list of parties in interest (as amended, the "**PII**") from counsel to the above-captioned debtors and debtors-in-possession (the "**Debtors**").

3. As part of PJT's conflicts management program (the "**Conflicts Management Program**"), PJT maintains information pertaining to (i) every active matter on which PJT is currently engaged, (ii) the entities represented by PJT in such engagements, (iii) the material parties involved in each current matter (inclusive of adverse and related parties, as identified to us by the prospective client and/or its counsel in the case of a restructuring advisory assignment), and (iv) the professional at PJT that is knowledgeable about the matter. As part of any conflict review undertaken, this information and information on closed assignments is incorporated into the review. It is the policy of PJT that no new matter may be accepted or opened within the firm without completing and submitting to those charged with administering the Conflicts Management Program the information necessary to check such matter for conflicts. The scope of the review is a function of the completeness and accuracy of the information submitted by the PJT professional opening a new matter.

4. PJT and certain of its partners and employees may have in the past represented, may currently represent, and likely will in the future represent, entities that may be on the PII or may otherwise be parties in interest in these chapter 11 cases in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these chapter 11 cases.

5. The PJT Legal and Compliance Department has undertaken a review of the PII to determine possible connections relating to the Debtors and, subject to the foregoing limitations and the following disclosures, no material connections have been found.

   a. PJT maintains a global practice representing parties throughout the pharmaceutical industry, including other opioid manufacturers and/or distributors of opioid-related products or businesses that are, or may become, involved in opioid-related litigation. One such ongoing engagement is of one of the Debtors' creditors in connection with a certain confidential matter, which creditor holds a claim against the Debtors in the amount of less than $200,000 according to the Debtors' book and records. None of such engagements are directly related to the Debtors or these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by any such engagements.

   b. PJT was previously engaged to provide financial advisory services to a group of lenders to a company in a confidential matter. One of the members of such group was an affiliate of Goldman Sachs & Co., one of the PII (bank). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

   c. PJT has been engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. The members of such group include an affiliate of JPMorgan Chase, one of the PII (bank). This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

   d. PJT was previously engaged to provide financial advisory services to Citibank N.A., one of the PII, as administrative agent under a credit facility, in connection with the chapter 11 case of Pacific Drilling S.A. The lenders under such credit facility included Goldman Sachs and an affiliate of Citibank, each of which is a PII (banks). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

   e. PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. One of the members of such group was an affiliate of Goldman Sachs & Co., one of the PII (bank). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

#92327993v19

f.    An affiliate of PJT was previously engaged to provide financial advisory services to a group of lenders to Prosafe SE. One of the members of such group was an affiliate of Citibank, one of the PII (bank). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

g.    An affiliate of PJT was previously engaged to provide financial advisory services to an affiliate of Citibank, one of the PII (bank), in a confidential matter. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

h.    PJT has been engaged to provide advisory services to an affiliate of Citibank, one of the PII (bank), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

i.    PJT was previously engaged to provide financial advisory services to Bank of America, N.A. ("BofA"), one of the PII (vendor), as administrative agent to certain lenders under a credit agreement with HGIM Corp. and HGIM Holdings, LLC. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

j.    PJT has been engaged to provide advisory services to BofA, one of the PII (vendor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

k.    PJT was previously engaged to provide financial advisory services to a group of lenders to a certain company in a confidential matter. One of the members of such group was an affiliate of BofA, one of the PII (vendor). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

l.    An affiliate of PJT has been engaged to provide financial advisory services to a group of lenders to a company in a confidential matter. One of the members of such group is an affiliate of BofA, one of the PII (vendor). This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

m.  An affiliate of PJT has been engaged to provide financial advisory services to a group of creditors to a certain company in an additional and separate confidential matter. The members of such group include BofA, one of the PII (vendor). This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

n.  PJT has been engaged to provide financial advisory services to a group of creditors to a certain company in a confidential matter. The members of such group include BofA, one of the PII (vendor). This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

o.  PJT was previously engaged to provide financial advisory services to a group of lenders to Aspect Software Parent, Inc. in its chapter 11 case. The members of such group included an affiliate of Wells Fargo & Company ("Wells Fargo") and JPMorgan Chase Bank, each of which is a PII (bank and bank/vendor, respectively). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

p.  PJT was previously engaged to provide financial advisory services to and affiliate of Wells Fargo, one of the PII (bank/vendor), as administrative agent for a group of lenders to Linn Energy, LLC in connection with its chapter 11 case. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

q.  PJT has been engaged to provide advisory services to Wells Fargo, one of the PII (bank/vendor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

r.  PJT has been engaged to provide advisory services to an affiliate of JPMorgan Chase Bank, one of the PII (bank), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

s.  PJT was previously engaged to provide financial advisory services to a group of lenders to a company in a confidential matter. One member of such group was JPMorgan Chase, one of the PII (bank). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT

6

        does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

t.    PJT was previously engaged to provide financial advisory services to a group of lenders to a separate company in a confidential matter. One member of such group was JPMorgan Chase Bank, one of the PII (bank). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

u.    PJT has been engaged to provide financial advisory services to a group of lenders to a company in a confidential matter. The members of such group include JPMorgan Chase and an affiliate of Verizon, each of which is a PII (bank and utility, respectively). This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

v.    PJT has been engaged to provide advisory services to an affiliate of West Boca Medical Center, Inc., one of the PII (plaintiff), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

w.    PJT has been engaged to provide advisory services to Abbott Laboratories, one of the PII (licensing agreement counterparty), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

x.    PJT has been engaged to provide advisory services to a Cardinal Health Inc., one of the PII (customer), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

y.    PJT has been engaged to provide advisory services to an affiliate of Chubb and Otis Elevator Company, each of which is a PII (insurer and vendor, respectively), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

z.    PJT has been engaged to provide advisory services to McKesson Corp., one of the PII (customer), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does

7

not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

aa. PJT was previously engaged to provide advisory services to an affiliate of CSC Consulting Inc., one of the PII (vendor), in a confidential matter. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

bb. PJT has been engaged to provide advisory services to an affiliate of CVS Caremark, one of the PII (customer), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

cc. PJT has been engaged to provide advisory services to Duke Energy Corp., one of the PII (utility), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

dd. PJT has been engaged to provide advisory services to an affiliate of Harris Teeter, Ralphs Grocery, Roundys Inc. and Vitacost.com, each of which is a PII (customers), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

ee. PJT has been engaged to provide advisory services to an affiliate of Honeywell Safety Products, one of the PII (customer), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

ff. PJT has been engaged to provide advisory services to an affiliate of IBM Corporation, one of the PII (consultant/advisor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

gg. PJT was previously engaged to provide advisory services to Spartan Nash, one of the PII (customer), in a confidential matter. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

hh. PJT has been engaged to provide advisory services to an affiliate of National Union Fire Insurance Company of Pittsburgh PA, one of the PII

#92327993v19

   (insurer), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

ii. PJT has been engaged to provide advisory services to an affiliate of Occidental Chemical Corporation, one of the PII (litigation counterparty), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

jj. PJT has been engaged to provide advisory services to an affiliate of Stericycle Inc., one of the PII (utility), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

kk. PJT has been engaged to provide financial advisory services to an affiliate of Gefco Forwarding USA Inc., one of the PII (vendor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

ll. PJT has been engaged to provide financial advisory services to an affiliate of Proquest LLC, one of the PII (vendor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

mm. PJT was previously engaged to provide financial advisory services to Nielsen Co LLC, one of the PII (vendor), in connection with its acquisition of Gracenote. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

nn. An affiliate of PJT has been engaged to provide financial advisory services to an affiliate of the State of Illinois, one of the PII (plaintiff), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

oo. An affiliate of PJT was previously engaged to provide financial advisory services to an affiliate of the State of Illinois, one of the PII (plaintiff), in two separate confidential matters. These engagements were wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not

9

#92327993v19

        believe that the interests of the Debtors or their estates are adversely affected by such engagements.

pp.    PJT was previously engaged to provide financial advisory services to a group of lenders to a company in a confidential matter. One of the members of such group was an affiliate of the State of South Dakota, one of the PII (plaintiff). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

qq.    PJT has been engaged to provide financial advisory services to an affiliate of NCH Marketing Services Inc. and Valassis Direct Mail Inc., each of which is a PII (vendors), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

rr.    PJT has been engaged to provide advisory services to an affiliate of Fred Meyer, one of the PII (customer), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

ss.    PJT has been engaged to provide financial advisory services to the Pension Benefit Guarantee Corporation, one of the PII (governmental authority), in connection with the chapter 11 case of Sears Corporation. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

tt.    PJT has been engaged to provide advisory services to an affiliate of Siemens Industry Inc., one of the PII (vendor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

uu.    PJT was previously engaged to provide financial advisory services to a group of creditors in the chapter 11 case of 21st Century Oncology Holdings, Inc. The members of such group included Goldman Sachs Asset Management, LP and Wells Fargo, NA, each of which is a PII (bank/vendor and vendor, respectively). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

vv. PJT has been engaged to provide advisory services to Jefferies Group LLC, one of the PII (professional), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

ww. PJT has been engaged to provide advisory services to an affiliate of Rxmosaic LLC, one of the PII (vendor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

xx. PJT has been engaged to provide financial advisory services to Goldman Sachs, one of the PII (bank), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

yy. PJT has been engaged to provide advisory services to AT&T, one of the PII (utility), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

zz. PJT has been engaged to provide advisory services to an affiliate of Insurance Company of the State of Pennsylvania, one of the PII (insurer), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

aaa. PJT has been engaged to provide advisory services to American Express, one of the PII (vendor), in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

bbb. PJT was previously engaged to provide financial advisory services to the Official Committee of Unsecured Creditors of Aegean Marine Petroleum Network Inc. in its chapter 11 case. The members of such committee included American Express, one of the PII (vendor). This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

ccc. PJT has been engaged to provide advisory services to an affiliate of HP Enterprise Services LLC, one of the PII (vendor), in a confidential

#92327993v19

        matter.  This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

ddd.    PJT has been engaged to provide advisory services to an affiliate of Dell USA LP and EMC Corp, each of which is a PII (vendors), in a confidential matter.  This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

eee.    PJT has been engaged to provide advisory services to an affiliate of Caremarkpcs Health LP, one of the PII (top 50 creditor), in a confidential matter.  This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

fff.    Certain of the PIIs or their affiliates may hold a passive equity interest (*i.e.*, less than 20%) in certain of the entities to whom PJT and/or its affiliates have provided in the past or continue to provide advisory services.  PJT does not routinely track or maintain such information but is not aware of any such engagement that is related to the Debtors or these chapter 11 cases or, by virtue of which, the interests of the Debtors or their estates are adversely affected.

6.    Partners and/or employees of PJT or its affiliates may, from time to time, directly or indirectly hold equity and/or debt in certain of the PII. However, to the best of my knowledge, none of PJT, its affiliates, or any partner or employee of PJT or its affiliates, currently holds any direct or indirect interest in any debt or equity securities of the Debtors.

7.    As part of its diverse practice, PJT appears in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants, investment bankers, and financial consultants, some of which may represent claimants and parties in interest in these chapter 11 cases. In addition, PJT has in the past, is currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to these cases, including certain professionals that are PII. Further, PJT and its affiliates engage attorneys and other service providers from time to time to provide legal advice and/or other services to PJT

12

#92327993v19

and/or its affiliates, and certain of such service providers may be PII. Based on our current knowledge of the professionals, vendors, and other parties involved in these cases, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors' estates, and none are in connection with these chapter 11 cases.

8.      To the best of my knowledge, except as disclosed herein: (i) PJT has no material connection with the Debtors, the Debtors' creditors, the United States Trustee, any person employed in the office of the United States Trustee, or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (ii) PJT (and PJT's professionals) are not creditors, equity security holders or insiders of the Debtors; (iii) neither PJT nor any of its professionals is or was, within two years of the date of the Debtors' filing of these chapter 11 cases, a director, officer, or employee of the Debtors; and (iv) neither PJT nor its professionals holds or represents an interest materially adverse to the Debtors, their estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason. Accordingly, I believe that PJT is a "disinterested person" as defined in section 101(14) of title 11 of the United States Code (the "**Bankruptcy Code**"), as modified by section 1107(b) of the Bankruptcy Code, and that PJT's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

9.      PJT has performed reasonable due diligence for possible conflicts with the PII in the Debtors' chapter 11 cases. The following is a list of the categories that PJT has searched with respect to the PII:

    a.    Debtor entities;
    b.    Other related entities;
    c.    Current directors and officers;
    d.    Former directors and officers;
    e.    Banks;

    f.  Secured creditors;

    g.  50 Largest unsecured creditors;

    h.  Vendors;

    i.  Customers;

    j.  Government authorities;

    k.  Utilities;

    l.  Insurers;

    m.  Surety issuers;

    n.  Equity holders;

    o.  Restructuring professionals;

    p.  Other consultants and advisors;

    q.  Licensing agreement counterparties;

    r.  Litigation-related parties;

    s.  S.D.N.Y. bankruptcy judges;

    t.  S.D.N.Y. district judges;

    u.  Landlords;

    v.  Sublessees;

    w.  United States Trustee Staff;

    x.  Debtors' Legal counsel;

    y.  Director and officer legal counsel;

    z.  Employee indemnity legal counsel;

    aa.  Plaintiffs' attorneys;

    bb.  Plaintiffs.

10. The list of PII was provided by the Debtors and may change during the pendency of the Debtors' chapter 11 cases. Should PJT learn that a relationship with any of the PII should be disclosed in the future, a supplemental declaration with such disclosure will be promptly filed.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: November 5, 2019
White Plains, New York

By: */s/ Tara Flanagan*
Tara Flanagan
Chief Compliance Officer
PJT Partners LP

#92327993v19