| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | Hearing Date:  November 19, 2019<br>Hearing Time:  10:00 am |
| ------------------------------------------------------- x : | | |
| In re | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| ------------------------------------------------------- x | | |

**OBJECTION OF THE UNITED STATES TRUSTEE
TO MOTION OF DEBTORS TO ASSUME THE PREPETITION REIMBURSEMENT
AGREEMENT WITH THE AD HOC COMMITTEE, AND TO PAY THE FEES AND
EXPENSES OF THE AD HOC COMMITTEE'S PROFESSIONALS**

TO:  **THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), objects to the Debtors' Motion to Assume the Prepetition Reimbursement Agreement with the Ad Hoc Committee, and to Pay the Fees and Expenses of the Ad Hoc Committee's Professionals (the "Assumption Motion").  ECF No. 394.  In support thereof, the United States Trustee respectfully states:[1]

**PRELIMINARY STATEMENT**

While the United States Trustee supports and applauds the efforts of the Debtors and other parties in interest working towards a consensual plan and final resolution of the myriad of litigation surrounding these cases, the United States Trustee questions the propriety of the Debtors' request to assume the Reimbursement Agreement (as defined below) under Bankruptcy Code Sections 363 and 365.  In the Assumption Motion, the Debtors seek to assume an

---

[1] The parties have been actively negotiating a resolution to this matter and agreed to extend the United States Trustee's objection deadline.

agreement entered on the eve of the filing to pay the professional fees of the one identified ad hoc committee which supports, at least in theory, the Debtors' proposed resolution to exit these cases and to resolve the thousands of lawsuits and claims brought against them.

But Section 503(b) of the Bankruptcy Code is the "exclusive avenue for payment of administrative expenses," In re Lehman Bros. Holdings, Inc., 508 B.R. 283, 289 (S.D.N.Y. 2014), and Section 503(b)(3) is the specific and sole authority for an estate to pay the legal fees and expenses of an unsecured creditor. That section requires the court to find that the creditor made a substantial contribution to the case and that the fees and expenses are reasonable and to do so only *after notice and a hearing*. By definition, one cannot have a prospective claim for having made a substantial contribution. Because it is impossible to know now if this ad hoc committee will make a substantial contribution until they take action in the case, the Court should deny the motion as legally improper and premature.

Although the Assumption Motion instead relies on Sections 363 and 365 as authority to pay this ad hoc committee's legal and other professional fees, the general provisions of Sections 363 and 365 of the Bankruptcy Code cannot be used to evade the specific provisions of Sections 503(b)(3) and (4). Simply put, a debtor cannot enter into a pre-petition agreement with a group of creditors to ignore or modify the Code's requirements for payment of substantial contribution claims and then ask a Court to approve the agreement modifying the Code. Accordingly, the Court should deny the motion.

## BACKGROUND

### General Background

1. The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on September 15, 2019 (the "Petition Date").

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF No. 59.

4. The Debtors are pharmaceutical companies that manufacture, sell, or distribute, among other products, extended-release, long-acting opioid pain medications. See Debtors' Information Brief ECF No. 17 at 1.

5. The Debtors commenced these cases because OxyContin® Extended-Release Tablets CII, the Debtors' most prominent pain medication, has made them the target of over 2,600 civil actions pending across the United States and its territories. Id. The lawsuits have proved unmanageable for the Debtors. Id.

6. On October 8, 2019, the Debtors filed a Term Sheet (the "Term Sheet") disclosing salient terms of a proposed settlement of the litigation facing the Debtors with an ad hoc committee (the "Supporting Ad Hoc Committee"). ECF No. 257.

7. The Supporting Ad Hoc Committee currently consists of ten states, the plaintiffs' executive committee (the "PEC") of the multistate litigation pending in the United

States District Court for the Northern District of Ohio, six political subdivisions of states and one federally recognized American Indian Tribe. Assumption Motion at n5.

8.  The Term Sheet requires the Debtors to move to assume a pre-petition reimbursement agreement with the Supporting Ad Hoc Committee. Term Sheet at ¶ 1.

**The Six Currently Identified Committees in these Cases**

*The Official Committee*

9.  On September 27, 2019, the United States Trustee appointed an official committee of unsecured creditors (the "Official Committee"). ECF No. 131. The Official Committee retained Akin Gump Strauss Hauer & Feld, LLP as bankruptcy counsel. ECF No. 184.

*The Supporting Ad Hoc Committee*

10. On October 10, 2019, four law firms, (i) Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), (ii) Brown Rudnick LLP ("Brown Rudnick"), (iii) Gilbert LLP ("Gilbert") and (iv) Otterbourg P.C. ("Otterbourg") filed a Verified Statement Pursuant to Bankruptcy Rule 2019. ECF No. 279. The four law firms represent the Supporting Ad Hoc Committee. Id.

11. According to the verified statement for the Supporting Ad Hoc Committee, each law firm representing the Supporting Ad Hoc Committee also represents one or more creditors or parties-in-interest in the Debtors' Bankruptcy Case and related adversary proceedings, including Supporting Ad Hoc Committee members. Id. at n. 1.

12. The verified statement of the Supporting Ad Hoc Committee does not provide any additional information regarding the creditors and parties-in-interest the law firms represent in this case and related adversary proceedings.

*The Dissenting Ad Hoc Committee*

13.     On October 11, 2019, Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury Winthrop") filed a Verified Statement of the Ad Hoc Group of Non-Consenting States Pursuant to Bankruptcy Rule 2019. ECF No. 296. Pillsbury Winthrop represents an ad hoc committee (the "Dissenting Ad Hoc Committee") of states that do not support the settlement set forth in the Term Sheet. Id. at ¶ 2.

*The Multi-States Governmental Entities Group*

14.     On October 30, 2019, Caplin & Drysdale, Charted ("Caplin & Drysdale") filed a Verified Statement of the Multi-State Governmental Entities Group Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure. ECF No. 409. Caplin & Drysdale represents an ad hoc committee (the "Multi-State Governmental Entities Group") that consists of approximately of 1,222 entities: 1,172 cities, counties and other governmental entities, 7 tribal nations, 6 hospital districts, 34 medical groups, 2 funds, and 1 veterans' class across 36 states. Id. at ¶ 1. Upon information and belief, the Multi-State Governmental Entities Group has not determined its position regarding the settlement set forth in the Term Sheet.

15.     On October 21, 2019, the Multi-State Governmental Entities Group became an *ex officio* member of the Official Committee. Amended Verified Statement of the Official Committee of Unsecured Creditors of Purdue Parma L.P. et al. Pursuant to Bankruptcy Rule 2019 at ¶ 1, ECF No. 414.

*Ad Hoc Committee of NAS Babies*

16.     On October 22, 2019, Tarter Krinsky & Drogin, LLP ("Tarter Kinsky") filed a Verified Statement of the Ad Hoc Committee of NAS Babies (the "NAS Babies Ad Hoc

Committee") Pursuant to Federal Rule of Bankruptcy Procedures. ECF No. 341. The NAS Babies Ad Hoc Committee consists of individual babies (and/or guardians of such babies) who were born opioid dependent because their mothers either were prescribed opioids during pregnancy or obtained opioids on the diversionary market. Id. at n. 2.

*Ad Hoc Committee of Individual Victims*

17. On October 25, 2019, Ask LLP ("Ask") filed a Verified Statement of the Ad Hoc Committee of Individual Victims of Purdue Pharma (the "Individual Victims Ad Hoc Committee") Pursuant to Federal Rule of Bankruptcy Procedures. ECF No. 348. The Individual Victims Ad Hoc Committee consists of eight individuals who assert unliquidated unsecured claims against the Debtors. Id.

**The Assumption Motion**

18. On October 29, 2019, the Debtors filed the Assumption Motion. ECF No. 394. According to the Assumption Motion, the Debtors seek to assume their reimbursement agreement (the "Reimbursement Agreement") with the Supporting Ad Hoc Committee to pay the fees and expenses of the Supporting Ad Hoc Committee's professionals pursuant to Code Sections 365(a) and 363(b). Id. at ¶¶ 1 and 13.

19. More Specifically the Debtors seek authority to pay the fees and expenses of four (4) law firms (Kramer Levin, Brown Rudnick LLP, Gilbert, and Otterbourg), a financial advisory firm (FTI Consulting, Inc.), an undisclosed investment banker firm and two (2) economic consultants (Compass Lexecon and Coulter & Justice) for their services to the Supporting Ad Hoc Committee. Id. at ¶ 10.

6

20.     The Supporting Ad Hoc Committee has not disclosed the terms of its engagement agreements with its professionals.

## ARGUMENT

**Section 503(B) Is the Only Code Section Governing the Payment of An Ad Hoc Committee's Fees And Expenses, and Any Request For Substantial Contribution Is Legally Premature Before a Case Concludes.**

Section 503(b) is the "exclusive avenue" governing the allowance of administrative expenses, including professional fees incurred by an entity seeking allowance of a claim for substantial contribution.  In Lehman Bros. Holdings, Inc., 508 B.R. 283, 289-290 (S.D.N.Y. 2014).  By enacting Section 503(b) of the Bankruptcy Code, Congress provided a specific procedure and standard for the allowance and approval of fees and expenses incurred by ad hoc committees and others in making a substantial contribution to a case.  See 4 Collier on Bankruptcy at ¶ 503.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Administrative expenses, except ordinary course expenses paid pursuant to sections 363 and 364 of the Code, are allowed only after notice and a hearing and are not 'deemed allowed' but rather must be actually allowed by court order.").  "[T]hose provisions [Sections 503(b)(3)(D) and 503(b)(4)] require the bankruptcy court to provide notice and a hearing and to determine for itself that a substantial contribution has been made.  Whatever the merits of that scheme, it is binding on courts and bankruptcy participants." Lehman, 508 B.R. at 294.

Sections 503(b)(3)(D), and (4) provide, in part:

>   (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>       . . .
>
>       (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –

7

> . . .
>
> (D) a creditor, an indenture trustee, an equity security holder or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
> . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. §§ 503(b)(3)(D), and (4).

An attorney or accountant employed by an ad hoc committee may be awarded "reasonable compensation for professional services rendered" if the ad hoc committee itself has an allowable expense under section 503(b)(3)(D), that is, if there has been a showing that the ad hoc committee has substantially contributed to the case. 11 U.S.C. §503(b)(4); see also In re Granite Partners, L.P., 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997); In re General Homes Corp., 143 B.R. 99 (Bankr. S.D. Tex. 1992)(holding that in order to be entitled to any payment from the bankruptcy estate, an indenture trustee must make a prima facie showing that it has made a substantial contribution); In re Revere Copper and Brass, Inc., 60 B.R. 892 (Bankr. S.D.N.Y. 1986) (finding that services rendered by the indenture trustee and its attorneys were not compensable by the estates under sections 503(b)(3), (4) or (5) because they did not make a substantial contribution to the case).

Compensation based upon a "substantial contribution" is designed to meet policy objectives of encouraging meaningful participation in the reorganization process while keeping fees and administrative expenses at a minimum to preserve as much of the estate as possible for

creditors. In re U.S. Lines, Inc., 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989). As a result, Section 503(b) is narrowly construed. Id.; In re Villa Luisa, L.L.C., 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) (citing U.S. Lines) ("Claims for substantial contribution are . . . narrowly construed and are subject to strict scrutiny"). Compensation is limited to those extraordinary actions that lead to an "actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders." In re Randall's Island Family Golf Ctrs., Inc., 300 B.R. 590, 598 (Bankr. S.D.N.Y. 2003) (quoting In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 569 (Bankr. D. Utah 1985)); accord In re Best Prods. Co., 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994); In re Alert Holdings, Inc., 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993). Section 503(b) does not change the general rule that an attorney must look to his client for payment of his fees. Granite Partners, 213 B.R. at 445.

By its nature, a substantial contribution claim is retrospective only, not prospective. There is no way to approve a substantial contribution claim before a bankruptcy case is largely concluded because no substantial contribution has been made and no claim exists. Moreover, the award of fees and expenses for making a substantial contribution must be reasonable, and that determination cannot be made prospectively either.[2] Thus, at this juncture in this case, it is a legal impossibility that anyone could have and prove a substantial contribution claim for

---

[2] Even if reasonableness could be determined in advance, the Debtors have failed to explain why it would be reasonable to have the estate pay four (4) law firms, two (2) economic consultants, an undisclosed investment banker, and a financial advisor for one ad hoc committee and why those services would not duplicate the services of the Official Committee (especially given that Multi State Governmental Entities Group, which is an ex officio member of the Official Committee, includes 1,172 cities, counties and other governmental entities).

creditors. In re U.S. Lines, Inc., 103 B.R. 427, 430 (Bankr. S.D.N.Y. 1989). As a result, Section 503(b) is narrowly construed. Id.; In re Villa Luisa, L.L.C., 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) (citing U.S. Lines) ("Claims for substantial contribution are . . . narrowly construed and are subject to strict scrutiny"). Compensation is limited to those extraordinary actions that lead to an "actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders." In re Randall's Island Family Golf Ctrs., Inc., 300 B.R. 590, 598 (Bankr. S.D.N.Y. 2003) (quoting In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 569 (Bankr. D. Utah 1985)); accord In re Best Prods. Co., 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994); In re Alert Holdings, Inc., 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993). Section 503(b) does not change the general rule that an attorney must look to his client for payment of his fees. Granite Partners, 213 B.R. at 445.

By its nature, a substantial contribution claim is retrospective only, not prospective. There is no way to approve a substantial contribution claim before a bankruptcy case is largely concluded because no substantial contribution has been made and no claim exists. Moreover, the award of fees and expenses for making a substantial contribution must be reasonable, and that determination cannot be made prospectively either.[2] Thus, at this juncture in this case, it is a legal impossibility that anyone could have and prove a substantial contribution claim for

---

[2] Even if reasonableness could be determined in advance, the Debtors have failed to explain why it would be reasonable to have the estate pay four (4) law firms, two (2) economic consultants, an undisclosed investment banker, and a financial advisor for one ad hoc committee and why those services would not duplicate the services of the Official Committee (especially given that Multi State Governmental Entities Group, which is an ex officio member of the Official Committee, includes 1,172 cities, counties and other governmental entities).

reasonable fees and expenses, and the Supporting Ad Hoc Committee should not be awarded one.

But even if it were proper to award fees for a substantial contribution on a prospective basis, four of the eight professionals covered by the Reimbursement Agreement—investment banker, financial advisor, and economic consultants—would be ineligible to have their fees paid by the estate. Section 503(b)(4) only allows for the reimbursement of fees of attorneys and accountants. 11 U.S.C. § 503(b)(4). "[T]he language of § 503(b)(4) (unlike § 330(a)(1)), limits compensation to attorneys and accountants only, rather than any professional. Accordingly, reimbursement for Seidman's [the financial advisor's] services must be disallowed." Matter of Baldwin-United Corp., 79 B.R. 321, 341 (Bankr. S.D. Ohio 1987). Thus, fees for investment bankers, financial advisors, and economic consultants can never be awarded under section 503(b)(4) as a matter of law.

### The General Provisions of Section 363 and 365 Cannot Be Used To Circumvent the Specific Provisions of Section 503(B).

Perhaps for all of these reasons Debtors rely on Sections 363 and 365 to support their request, but that reliance is misplaced. The United States Supreme Court has held that "in all matters of statutory construction, the court must begin with 'the language itself [and] the specific context in which that language is used.'" McNeill v. United States, 131 S.Ct. 2218 (2011) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)); see also Lamie v. United States, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.").

The Supreme Court also has ruled countless times, including when applying the Bankruptcy Code, that a specific statutory provision governs a general one. E.g., RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012).

> We find the debtors' reading of § 1129(b)(2)(A)—under which clause (iii) permits precisely what clause (ii) proscribes—to be hyperliteral and contrary to common sense. A well established canon of statutory interpretation succinctly captures the problem: "[I]t is a commonplace of statutory construction that the specific governs the general." [citation omitted]. That is particularly true where, as in § 1129(b)(2)(A), "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions."

Id. (citation omitted). See also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992); Gozlon-Peretz v. United States, 498 U.S. 395, 407 (1991) (specific statutory provision normally controls one of more general application); Bloate v. United States, 130 S.Ct. 1345, 1353-1354 (2010) (same)); Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment.") (quoting Morton v. Mancari, 417 U.S. 535, 550-51 (1974)). The Second Circuit adheres to this approach. See Greene v. United States, 79 F.3d 1348, 1355 (2d Cir. 1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.").

As in Radlax, so, too, here Congress targeted a specific problem—payment of reasonable fees and expenses for ad hoc committees making a substantial contribution—with a specific solution—Sections 503(b)(3)(D) and 503(b)(4). An ad hoc committee can have its fees and expenses paid but only after giving notice to creditors and after proving to a court that it made a substantial contribution to a case and that its fees and expenses are reasonable. The parties

cannot evade the mandatory statutory scheme by agreement: "the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences." Lehman, 508 B.R. at 294.

Further, the Supreme Court has articulated that a statutory provision should not be construed to render any other provision of the statute superfluous. See Turner v. Rogers, 131 S. Ct. 2507, 2522 (2011) ("The fact that one constitutional provision expressly provides a right to appointed counsel in specific circumstances indicates that the Constitution does not also *sub silentio* provide that right far more broadly in another, more general, provision."). When these traditional principles of statutory construction are applied to the issues before this Court, the resulting conclusion is that Section 503(b) is the only Code section to address directly the issue of the payment of professionals for an ad hoc committee and is the only appropriate statutory provision under which this Court should consider the Assumption Motion. See Lehman, 508 B.R. at 294 (committee members seeking repayment of legal fees must seek reimbursement under Sections 503(b)(3)(D) and 503(b)(4)).

**The Assumption Motion Cannot Be Approved Under Sections 365 and 363.**

In analogous circumstances, courts have refused to allow Section 365 to be used to assume pre-petition contracts to retain and pay a debtor's professionals. See In re Snowcrest Development Group, Inc., 200 B.R. 473, 479 n.5 (Bankr. D. Mass. 1996)(pre-petition executory contract of broker may only be assumed "to the extent there was compliance with § 327(a)."); In re Office Products of America, Inc., 136 B.R. 675, 686 (Bankr. W.D. Tex. 1992)("If the trustee were permitted to circumvent the requirements for § 327 by impliedly assuming a pre-petition executory contract to hire a professional, Section 327 would be eviscerated . . . . Indeed, even an

express assumption of such a contract would override the more specific provisions of § 327, a result which this court eschews."); see also Lehman, 508 B.R. at 294 (denying attempt to circumvent section 503(b) by using section 1129(a)(4) to pay professionals). Just as it is improper to rely on Section 365 to evade Section 327's retention requirements, it would be equally improper to rely on Section 365 to evade Section 503(b)'s substantial contribution standards.

The Debtors' reliance on Section 363 is similarly misplaced. Under Section 363(b) the Debtors must articulate a sound business judgment for approval of a non-ordinary course transaction. The Debtors, however, have not met this burden. On its face, it is presumptively unreasonable and bad judgment for the Debtors to agree prospectively to pay unlimited fees for eight professional firms for one ad hoc committee when it is obligated to pay the professional fees of the official committee.

In any event, this perversion of the substantial contribution process through contract assumption is not what Congress envisioned or specified when it enacted the substantial contribution requirement for ad hoc committees in Section 503(b). Debtors and the Supporting Ad Hoc Committee must comply with Section 503(b) at the conclusion of the case when the Court can judicially determine for itself whether a substantial contribution has been made and whether the compensation sought is reasonable. Any other result undermines and countermands the Bankruptcy Code's comprehensive statutory scheme.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the approval of the Assumption Motion as set forth herein and grant such other relief as the Court deems fair and just.

Dated: New York, New York
November 13, 2019

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Paul K. Schwartzberg*
Paul K. Schwartzberg
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500