| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: November 19, 2019<br>Hearing Time: 10:00 am |

------------------------------------------------------- x
:
In re                                                   :    Chapter 11
:
PURDUE PHARMA L.P., *et al.*,                           :    Case No. 19-23649 (RDD)
:
                                              Debtors.  :    Jointly Administered
:
------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE
TO ENTRY OF ORDERS APPROVING THE RETENTIONS OF (1) DAVIS POLK &
WARDWELL, LLP, (2) SKADDEN ARPS SLATE MEAGHER & FLOM, LLP AND (3)
<u>WILMER CUTLER PICKERING HALE AND DORE</u>**

TO:    **THE HONORABLE ROBERT D. DRAIN,
       UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the applications of the Debtors for authority to employ (1) Davis Polk & Wardwell, LLP ("Davis Polk"), (2) Skadden Arps Slate Meagher & Flom, LLP ("Skadden") and (3) Wilmer Cutler Pickering Hale and Dorr, LLP ("WilmerHale"), to the extent that the professionals seek the Court's approval of "evergreen" retainers.[1]  In support of his objection, the United States Trustee respectfully submits as follows:

### PRELIMINARY STATEMENT

The United States Trustee objects to the retention of the pre-petition retainers to Davis Polk, Skadden and WilmerHale (collectively, the "Professionals") until the end of these cases. The Professionals were each paid pre-petition retainers which they seek to hold as security for payment of their fees until the conclusion of these cases rather than draw down on the retainers

---

[1] If any other professional seeks to hold its retainer to the end of the case, the United States Trustee reserves his right to object to this relief.

upon the first interim fee hearing, which is the customary practice in this District. None of these firms has demonstrated any basis for being treated differently, and more favorably, than any other retained professional. The Professionals already have significant protections to insure full payment. Not only do the Debtors lack significant secured debt, the Debtors also hold well over $1 billion in cash. Additionally, the Debtors have filed a monthly compensation motion seeking authority to pay their professional fees on a monthly basis. Under these circumstances, not only is the likelihood of administrative insolvency not great, but the Professionals will receive payment of their fees on a monthly basis.

In the unlikely event of the Debtors' administrative insolvency, if the evergreen retainers are permitted the Professionals would not share their retainers *pari passu* with other retained professionals, including committee professionals. Rather, the Professionals' retainers would provide them more in compensation. This result is inequitable. Except for this objection, the United States Trustee does not object to applications to retain the Professionals.

## BACKGROUND

### General Background

1. The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on September 15, 2019 (the "Petition Date").

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF No. 59.

4. The Debtors are pharmaceutical companies that manufacture, sell, or distribute, among other products, extended-release, long-acting opioid pain medications. See Debtors' Information Brief ECF No. 17 at 1.

5. The Debtors commenced these cases because OsyContin® Extended-Release Tables CII, the Debtors' most prominent pain medication, is the target of over 2,600 civil actions pending across the United States and its territories. Id. The lawsuits have proved unmanageable for the Debtors. Id.

6. The Debtors do not have significant secured liabilities. Declaration of Jon Lownes in Support of Debtors' Chapter 11 Petitions and First Day Pleadings at Schedule 3, ECF No. 3.

7. According to the Debtors' motion to continue the use its cash management systems (the "Cash Management Motion"), the balance of cash in the Debtors' accounts is approximately $1.36 billion. Cash Management Motion at ¶ 14, ECF No. 5.

8. On November 5, 2019, the Debtors filed a motion establishing procedures for interim compensation and reimbursement of expenses for retained professionals (the "Monthly Compensation Motion"). ECF No. 434. The Monthly Compensation Motion seeks entry of an order (the "Monthly Compensation Order") that will enable the Debtors to pay retained professionals 80% of compensation and 100% of fees on a monthly basis. Monthly Compensation Motion at ¶10.

### The Retention Applications

*Davis Polk*

9.   On November 5, 2019, the Debtors filed an application to retain Davis Polk as bankruptcy counsel (the "Davis Polk Application"). ECF No.419. According to Davis Polk Application, as of the Petition Date Davis Polk is holding a retainer of $5,115,859.35. Davis Polk Application at ¶ 11. The proposed order annexed to the Davis Polk Application provides that Davis Polk's retainer "shall be treated as an evergreen retainer and held by Davis Polk as security throughout the Chapter 11 cases". Davis Polk Application at proposed order.

*Skadden*

10.   On November 6, 2019, the Debtors filed an application to retain Skadden Arps Slate Meagher & Flom as special counsel (the "Skadden Application"). ECF No. 438. According to Skadden Application, as of the Petition Date Skadden is holding a retainer of $2,500,000. Skadden Application at ¶ 23. The proposed order annexed to the Skadden Application provides that Skadden's retainer "shall be treated as an evergreen retainer and held by Skadden as security throughout these chapter 11 cases. Skadden Application at proposed order.

*WilmerHalie*

11.   On November 5, 2019, the Debtors filed an application to retain WilmerHale as special counsel (the "WilmerHale Application"). ECF No.428. According to WilmerHale Application, as of the Petition Date, WilmerHale is holding a retainer of $250,000. WilmerHale Application at ¶ 16. The proposed order annexed to the WilmerHale Application provides that WilmerHale's retainer "shall be treated as an evergreen retainer and by be held by

WilmerHale as security throughout these chapter 11 cases. WilmerHale Application at proposed order.

## OBJECTION

The Professionals have each failed to satisfy their burdens to show that they should be entitled to hold their retainers until the end of these cases. This type of retainer at issue is commonly referred to as an "evergreen retainer." In re Insilco Technologies, Inc., 291 B.R. 628, 632 (Bankr. D. Del. 2003). In the Southern District of New York retained professionals holding pre-petition retainers draw down on the pre-petition retainer upon the Court's approval of the professional's first interim fee application. See In re Old Carco LLC (f/k/a Chrysler LLC) Case No. 09-50002 (ALG); Motors Liquidation Company (f/k/s/ General Motors Corporation) Case No. 09-50026 (REG); In re Chemtura Corp., Case No. 09-11233 (REG). This immediate draw down is used to balance the rights among the various constituencies which have claims against the Debtor's post-petition cash.

Evergreen retainers are used to minimize a professional's exposure to the risk of non-payment. In re Insilico, 291 B.R. at 632. Under the Bankruptcy Code priority scheme, the administrative claims of retained professionals fall under section 507(a)(1) and retained professionals share pari passu. None of the Professionals have demonstrated any basis for being treated differently than any other administrative creditors. Indeed, the professionals' desire to hold their retainers in case of the non-payment of their fees, in essence, gives them an unfair monetary advantage, by reallocating the risk of a potential insufficiency of the Debtors' assets to satisfy administrative claims. This risk should not be borne only by the professionals which did

not receive retainers, each of whom would share pari passu in the event of administrative insolvency.

As stated supra, in other jurisdictions evergreen retainers are not atypical. See In re Knudsen Corp., 84 B.R. 668, 672-73 (9th Cir. B.A.P. 1988); In re Insilco, 291 B.R. at 635 (Bankr. Del. 2003); In re Pan American Hosp. Corp., 312 B.R. 706, 712-13 (Bankr. S.D. FL 2004). A review of the case-law, however, demonstrates that even under the varying standards of these jurisdictions, the professionals have each failed to satisfy their burden.

The seminal case on evergreen retainers is In re Knudsen, which set forth four findings necessary to approve an evergreen retainer:

1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;
2. The court is convinced that waiting an extended period for payment would replace an undue hardship on counsel[i];
3. The court is satisfied that counsel can respond to any reassessment; and
4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

84 B.R. at 672-73.

In In re Insilco, the Delaware Bankruptcy Court rejected a bright line approach to evergreen retainers, noting that evergreens must be tailored to the particular circumstances of the case. Id., 291 B.R. at 634. The Insilco Court laid out a five factor test which is broader than the Knudsen test:

1. Whether the terms of an engagement agreement reflect normal business terms in the marketplace;
2. The relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms length negotiation;

3. Whether the retention, as proposed, is in the best interests of the estate;
4. Whether there is creditor opposition to the retention and retainer provisions; and
5. Whether given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization" especially in light of the existence of any other "risk minimizing" devices, such as an administrative order and/or carve out.

Id.  The Court also discussed the "need for greater clarity in engagements the terms of which are intended to include evergreen retainers . . . . Henceforth, if the terms of a proposed engagement include a provision for an evergreen retainer, such term should be highlighted and summarized in the application; moreover a copy of the engagement agreement should be attached as an exhibit to the application containing language which makes it clear that the applicant intends to hold such retainer until the end of the case . . . ." Id. at 636.

Finally, in In re Pan American Hospital, the Court incorporated both the Knudsen and Insilco analyses, by applying the Knudsen approach on the size of the case and the substantiality of counsel's need for the retainer with the Insilco approach on reasonableness.  The Court also placed a high evidentiary burden on lawyers seeking multiple risk-minimizing devices to establish the existence of undue hardship and found it sufficient to approve one risk minimizing device, the evergreen retainer, but it is unnecessary and unreasonable under the facts of this case to approve any more such devices." 312 B.R. at 711.  The Court also noted the Insilco court's insistence that the engagement agreement be highlighted, summarized and attached as an exhibit to the retention application. Id. at 712 n. 1.

None of the requests for the approval of evergreen retainers pass scrutiny under any of the tests.  First, this is a large case, but not the largest in this District.  Second, none of the

Professionals will have to wait an extended period to receive payment because, pursuant to the proposed Monthly Compensation Order, each will receive 80% of their fees and 100% of their expenses on a monthly basis. Third, none of the Professionals has demonstrated that their retainers are reasonable in light of the facts that (i) there is no significant secured debt in these cases, and (ii) the Debtors cash balance is approximately $1.36 billion. Fourth, the Professionals have not submitted evidence to demonstrate their ability to respond to any reassessment. Fifth, the Professionals have not submitted evidence to demonstrate that evergreen retainers reflect normal business terms in the marketplace. Sixth, although holding their retainers to the end of the case may be in the best interests of the Professionals, the Professionals have not shown why this arrangement is in the best interests of the estates. Finally, the Professionals fail to demonstrate a basis to be treated more favorably than other professionals in these cases. In the event of administrative insolvency, the Professionals would not share their retainers *pari passu* with other professionals, but rather they would each have the amount of their retainers as more in total compensation.

Under these circumstances, the Court should deny the requests to hold pre-petition retainers until the conclusion of the case. Rather, each professional in these cases should be required to draw down on their retainer at the first interim hearing on approval of their fee applications, which is the customary practice of retained professionals in the Southern District of New York.

WHEREFORE, the U.S. Trustee respectfully requests that the Court sustain his objection, deny the requested relieve in the Davis Polk, Skadden and WilmerHale Applications unless the terms of the engagements are revised and grand such other relief as is just.

Dated: New York, New York
November 13, 2019

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Paul K. Schwartzberg*
Paul K. Schwartzberg
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500