| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: December 19, 2019<br>Hearing Time: 10:00 am |

---------------------------------------------------------- x
:
In re                                                              :        Chapter 11
:
PURDUE PHARMA L.P., *et al.*,                        :        Case No. 19-23649 (RDD)
:
                                               Debtors.   :        Jointly Administered
:
---------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO ENTRY
OF ORDER APPROVING THE RETENTION OF PJT
PARTNERS LP AS INVESTMENT BANKER FOR THE DEBTORS**

TO:    **THE HONORABLE ROBERT D. DRAIN,
           UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the application (ECF No. 430) of the Debtors for authority to employ PJT Partners LP ("PJT") (the "Application"). In support of his objection, the United States Trustee respectfully submits as follows:

**PRELIMINARY STATEMENT**

Rigorous compliance with professional retention rules is critical to the integrity and transparency required of the bankruptcy system. As such, Bankruptcy Rule 2014 requires that professionals seeking to be employed under 11 U.S.C. § 327 file a verified statement of "all of the person's connections" to parties in interest. PJT, which seeks to be retained as the investment banker to the Debtors, has declined to identify "a certain company" that engaged it to provide financial advisory services in connection with a "confidential matter." Although the Declarant for PJT avers that the engagement was or is "wholly unrelated" to the Debtors and these chapter 11 cases and that the interests of the Debtors or their estates are not affected by this engagement, the conclusion as to whether PJT has connections which impact its ability to be

retained under 327(a) of the Bankruptcy Code is a conclusion more appropriately considered by the Court and parties-in-interest.  Without identifying the specific company and the matter upon which the financial advisory services of PJT were retained, it is impossible for an interested party to discern if PJT meets the disinterested/adverse interest requirements in order to be a retained professional under Section 327(a).

On the other hand, PJT is not without recourse.  If PJT is able to satisfy the requirements of Section 107(a) of the Bankruptcy Code, it is not precluded from seeking an order from this Court allowing it to redact or seal the name of the specific company and the matter upon which PJT was retained.  However, in the absence of an order allowing PJT to seal or redact client information, pursuant to Section 107(a) of the Bankruptcy Code, the Application must be denied.

## BACKGROUND

### General Background

1. The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on September 15, 2019 (the "Petition Date").

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  ECF No. 59.

4. The Debtors are pharmaceutical companies that manufacture, sell, or distribute, among other products, extended-release, long-acting opioid pain medications.  *See* Debtors' Information Brief ECF No. 17 at 1.

5.  The Debtors commenced these cases because OxyContin® Extended-Release Tablets CII, the Debtors' most prominent pain medication, is the target of over 2,600 civil actions pending across the United States and its territories. *Id*. The lawsuits have proved unmanageable for the Debtors. *Id*.

6.  The Debtors do not have significant secured liabilities. Declaration of Jon Lownes in Support of Debtors' Chapter 11 Petitions and First Day Pleadings at Schedule 3, ECF No. 3.

7.  On November 5, 2019, the Debtors filed an application to retain PJT Partners LP as the Debtors' Investment Banker (the "Application"). ECF No. 430.

8.  The Declaration of Tara Flanagan in Support of Debtor's Application To Employ PJT Partners LP as its Investment Banker (the "Flanagan Declaration") discloses the following:

   a.  PJT maintains a global practice representing parties throughout the pharmaceutical industry, including other opioid manufacturers and/or distributors of opioid-related products or businesses that are, or may become, involved in opioid-related litigation. One such ongoing engagement is of one of the Debtors' creditors in connection with a certain confidential matter, which creditor holds a claim against the Debtors in the amount of less than $200,000 according to the Debtors' book and records. None of such engagements are directly related to the Debtors or these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by any such engagements.

Flanagan Declaration, ¶ 5(a).

## ARGUMENT

Bankruptcy Code Section 327 provides that the trustee or debtor in possession may employ, with court approval, professionals who are disinterested and who do not hold or represent interests adverse to the estate. 11 U.S.C. § 327. Bankruptcy Rule 2014 imposes a

complementary duty of disclosure so that courts and parties in interest can determine whether a professional to be employed satisfies section 327's ethical requirements. These statutory provisions, which prohibit conflicting interests in bankruptcy, "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994). The disclosures required of professionals "go[] to the heart of the integrity of the bankruptcy system . . . ." *In re Universal Building Products*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (*quoting In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988)). "Because '[t]he objective of requiring disclosure is not so much to protect against prejudice to the estate, but to ensure undivided loyalty and untainted advice from professionals. . . . [L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice." *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011) (*quoting Midway Indus. Contractors*, 272 B.R. 651, 664 (Bankr. N.D. Ill. 2001)). Rule 2014 requires that disclosures be sufficiently explicit for a court and other parties to determine whether a professional is disinterested or holds or represents an adverse interest. *In re Lewis Road, LLC*, 2011 WL 6140747, *8 (Bankr. E.D. Va. 2011). An indeterminate statement of "connections with a creditor" does not satisfy Rule 2014. *Id.* at *12. In other words, disclosing the existence of a connection without disclosing the identity of the connection is insufficient. *In re Brennan*, 187 B.R. 135, 144 (Bankr. D.N.J.), *rev'd on other grounds sub nom*, *In re First Jersey Securities, Inc.*, 180 F.3d 504 (3d Cir. 1999) ("must also be disclosure of the identities"). Professionals "must disclose all contacts, not pick and choose which to disclose and which to ignore or leave the court to search the record for such relationships." *In re Universal Building Products*, 486 B.R. at 663. "[C]omplete and candid disclosure . . . is indispensable to the court's discharge of its

4

duty to assure the [professional's] eligibility for employment under section 327(a) . . . ." *In re eToys*, 331 B.R., 176, 189 (Bankr. D. Del. 2005).

To the extent, however, that PJT finds that it may not disclose the identity of its client due to a contractual arrangement or otherwise, the correct procedure is to move to the seal the identity of its client and the nature of the confidential matter on which it has been retained. Bankruptcy Code Section 107 sets forth the legal standard applicable to sealing information that is confidential. *See also* Fed. R. Bankr. P. 9018.  Section 107(a) of the Bankruptcy Code provides, in part, that subject to certain limited exceptions:

> a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a). "There is a strong presumption and public policy in favor of public access to court records." *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); *see also*, *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 553-55 (Bankr. S.D.N.Y. 2007) (Section 107 reflects Congress' intent to favor public access to papers filed with the Bankruptcy Court).

Congress has "implemented a statutory exemption to prevent disclosure of commercial information in a bankruptcy case." *Borders*, 462 B.R. at 46.  Section 107(b) of the Bankruptcy Code provides in relevant part that:

> [o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).[1]  "The exception to the general right of access in section 107(b) is narrow." *Borders*, 462 B.R. at 47.  The burden is on the moving party to show that a request to place documents under seal falls within the parameters of Section 107(b). *Id.* at 46; *Food Mgmt.*, 359 B.R. at 561.

Under Section 107(b), "commercial information" has been defined as information which would cause an "unfair advantage to competitors by providing them information as to the commercial operations" of the requesting party.  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994)(internal quotations omitted); *accord Borders*, 462 B.R. at 47.  As this Court has stated:

> the term ["commercial information"] includes situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors.  Moreover, the Court must also find that the redacted information is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors.

*Borders*, 462 B.R. at 47-48 (internal quotations, citations and brackets omitted).

Although PJT may contract with its clients to keep certain matters confidential, those agreements do not and cannot supersede the ethics and disclosure requirements of the Bankruptcy Code and Rules. *See In re Project Orange*, 431 B.R. 363 (Bankr. S.D.N.Y. 2010) (conflict waivers obtained from a creditor by a law firm do not, by contractually permitting the firm to represent the debtor on some matters adverse to creditors, trump the statutory requirements governing the estate's employment of professionals); *see also Granite Partners*, 219 B.R. at 34 (Bankr. S.D.N.Y. 1998) (observing that while clients may, in some instances,

---

[1] Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under Section 107(b).  Fed. R. Bankr. P. 9018.

waive conflicts, "the mandatory provisions of section 327(a) do not allow for waiver."). Moreover, client confidentiality is a common concern with other professionals, including law firms that are also bound by the duties of professional responsibility and confidentiality, yet other professional firms routinely satisfy their disclosure requirements.

The United States Trustee and other parties in interest have no information that the undisclosed PJT connections would preclude its employment as a professional under section 327(a) —and that is precisely the point. Without voluntary adequate disclosures, parties do not have a roadmap to assess any firm's connections. The requirements of Bankruptcy Rule 2014 "transcend those of § 327, as they mandate disclosure of all connections with the named parties, rather than being limited to those which deal with disinterestedness." *Filene's Basement*, 239 B.R. 845, 849 (Bankr. D. Mass. 1999). Once disclosures are properly made, the Court and the parties can objectively satisfy themselves whether there are no conflicts or disabling connections.

Section 107(a) of the Bankruptcy Code provides that all papers "filed in a case under this title . . . are public records and open to examination" by the public. 11 U.S.C. § 107(a). "This policy of open inspection, codified generally in Section 107(a) of the Bankruptcy Code, evidences Congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *Orion*, 21 F.3d at 26, *accord In re Alterra Healthcare Corporation*, 353 B.R. 66, 71 (Bankr. D. Del. 2006)("[D]ocuments filed in bankruptcy cases have historically been open to the press and general public.").

A limited exception to public disclosure may be invoked to protect "an entity with respect to a trade secret or confidential research, development or commercial information." 11 U.S.C. § 107(b)(1); *accord* Fed. R. Bankr. P. 9018. Specifically, Bankruptcy Rule 9018 provides in pertinent part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.

Fed. R. Bankr. P. 9018.

The moving party bears the burden of showing that a request to place documents under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018 by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access." *In re Continental Airlines*, 50 B.R. 334, 340 (D. Del. 1993); *accord*, *In re Food Mgmt. Group*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007); *In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005). To meet this burden, the movant "must demonstrate extraordinary circumstances and compelling need to obtain protection." *Food Mgmt. Group*, 359 B.R. at 561 (*citing In re Orion Pictures Corp.*, 21 F.3d 24 at 27 (2d Cir. 1994)). A contractual agreement to keep information confidential is not determinative. *See In re Muma Services Inc.*, 279 B.R. 478, 485 (Bankr. D. Del. 2002) (if parties could file documents under seal simply because of confidentiality provisions, then Court "would never have control over motion practice" and Section 107 "would be meaningless.").

The Flanagan Declaration contains little to no justification for its non-disclosure other than noting that PJT represents one of the Debtors' creditors in connection with a certain confidential matter. This vague, self-serving, and unsupported statement is simply not sufficient to overcome Congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings, which is particularly important when dealing with the disclosures

made by a professional being retained by the estate as disclosures required of professionals "go[]
to the heart of the integrity of the bankruptcy system."

      WHEREFORE, the U.S. Trustee respectfully requests that the Court sustain his objection, deny the retention of PJT and grant such other relief as is just and proper.

Dated:  New York, New York
        November 15, 2019

                                    Respectfully submitted,

                                    WILLIAM K. HARRINGTON
                                  UNITED STATES TRUSTEE, Region 2

                                  By: */s/ Brian S. Masumoto*
                                  Brian S. Masumoto
                                  Trial Attorney
                                  201 Varick Street, Room 1006
                                  New York, New York 10014
                                  Tel. (212) 510-0500