**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002

*Proposed Counsel to the Official*
*Committee of Unsecured Creditors*
*of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 19-23649 (RDD) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**DECLARATION OF ARIK PREIS IN SUPPORT OF THE OBJECTION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE
PHARMA L.P.,** *ET AL.* **TO THE DEBTORS' MOTION TO ASSUME THE
PREPETITION REIMBURSEMENT AGREEMENT WITH THE AD
HOC COMMITTEE, AND TO PAY THE FEES AND EXPENSES OF
THE AD HOC COMMITTEE'S PROFESSIONALS**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Under 28 U.S.C. § 1746, I, Arik Preis,[2] declare under the penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      This declaration (the "Declaration") is submitted in support of the *Objection of the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al. *to the Debtors' Motion to Assume the Prepetition Reimbursement Agreement with the Ad Hoc Committee, and to Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* (the "Objection").[3]

2.      I am an attorney in good standing admitted to practice in the State of New York, and I am a partner in the financial restructuring group at the law firm of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump").  I was admitted to the New York State Bar in 2001 and have been practicing law in the area of bankruptcy and financial restructuring since that time.  I make this Declaration based on my own personal knowledge and experience.

3.      Attached hereto as **Exhibit A** is a true and correct copy of an email chain reflecting correspondence between counsel to the Official Committee and counsel to the CAHC from October 31, 2019 to November 11, 2019.

4.      Attached hereto as **Exhibit B** is a true and correct copy of (i) an email I received from counsel to the CAHC on November 5, 2019 and (ii) the unredacted bylaws for the CAHC that were attached to that email.

5.      Attached hereto as **Exhibit C** is a true and correct copy of (i) an email I received from counsel to the CAHC on October 31, 2019 and (ii) the redacted bylaws for the CAHC that were attached to that email.

6.      Attached hereto as **Exhibit D** is a fee estimate provided by the four law firms

---

[2] My legal name is Erik Preis but for my entire life I have utilized the name Arik and not Erik.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

retained by the CAHC, which I received from counsel to the CAHC on November 9, 2019.[4]

7.      Attached hereto as **Exhibit E** is a true and correct copy of email correspondence I sent to certain state attorneys general and to counsel to the Non-Consenting Ad Hoc Committee on November 8, 2019 and November 9, 2019.

8.      Attached hereto as **Exhibit F** is a true and correct copy of email correspondence between counsel to the Official Committee and counsel to the CAHC on November 10, 2019.

9.      Attached hereto as **Exhibit G** is a true and correct copy of email correspondence from counsel to the Official Committee to counsel to the CAHC on November 1, 2019 and November 4, 2019.

10.     Attached hereto as **Exhibit H** is a true and correct copy of email correspondence from counsel to the Official Committee to counsel to the CAHC on November 1, 2019 and November 5, 2019.

11.     **Exhibit A** through **Exhibit C** were provided on a confidential basis and are being submitted under seal.

Dated: November 12, 2019                              _/s/ Arik Preis_____
        New York, NY                                  Arik Preis

---

[4] The fee estimates set forth in **Exhibit D** were included as an attachment to the November 9, 2019 email from counsel to the CAHC included on page 3 of **Exhibit A**.

# EXHIBIT A

| | |
|---|---|
| **From:** | Ringer, Rachael |
| **To:** | Preis, Arik; Hurley, Mitchell |
| **Cc:** | Eckstein, Kenneth H.; gilberts@gilbertlegal.com; Molton, David (External); Graulich, Timothy; Vonnegut, Eli J.; Miller, Allison; Porter, Katherine; Huebner, Marshall S.; Brauner, Sara; Lisovicz, Edan; Salwen, James; Atkinson, Michael (External); Pera, Michael; Kaminetzky, Benjamin S.; Lutchen, Alexa B.; Pohl, Steven (External); mcyganowski@otterbourg.com; Simms, Steven (External); Diaz, Matt (External); Tobak, Marc J. |
| **Subject:** | RE: Purdue - UCC Questions re: AHC 2019 Statement |
| **Date:** | Monday, November 11, 2019 7:14:28 PM |

Arik –

Please see below.

1. <u>Banker</u>. We are agreeing to seek a supplemental order for approval of a banker, once engaged, which will seek to confirm the reasonableness of the engagement. The assumption of the fee letter, however, will give the AHC the right to hire an investment banker as contemplated therein. Approval of the banker will not be an entirely separate motion. We plan to present the terms of the banker retention to the Debtor and the Committee. If the Committee does not agree with the reasonableness of the structure, the Committee can raise their issues with the Court.

2. <u>Prepetition Fees</u>. Yes. We believe this is a significant accommodation that is being made in an effort to address certain of the concerns you have raised to date.

3. <u>AHC Engagement Letters</u>. Counsel for the AHC is relying on the fee letter and the executed by-laws, rather than separate engagement letters with the AHC.

4. <u>Separate Engagement Letters</u>. We have provided substantial information regarding our separate representations at your request. We will not be producing the separate engagement letters between AHC counsel and the identified clients to the Committee.

5. <u>Economic Consultants</u>. Compass Lexicon and one other economic consultant, Coulter & Justice (an accounting firm), provided limited analysis and advice pre-petition. We do not expect them to be active in the near term (and as you mention, CompassLex is a subsidiary of FTI).

Thanks,
Rachael

## Rachael Ringer
Partner

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9506   **M** 989.615.8249   **F** 212.715.8187

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Preis, Arik <apreis@akingump.com>
**Sent:** Sunday, November 10, 2019 4:27 PM
**To:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>; Hurley, Mitchell <mhurley@AkinGump.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; gilberts@gilbertlegal.com;
DMolton@brownrudnick.com; Graulich, Timothy <timothy.graulich@davispolk.com>; Vonnegut, Eli J.

<eli.vonnegut@davispolk.com>; Miller, Allison <amiller@akingump.com>; Porter, Katherine
<kporter@akingump.com>; Huebner, Marshall S. <marshall.huebner@davispolk.com>; Brauner, Sara
<sbrauner@akingump.com>; Lisovicz, Edan <elisovicz@akingump.com>; Salwen, James
<jsalwen@akingump.com>; MAtkinson@provincefirm.com; Pera, Michael <michael.pera@davispolk.com>;
Kaminetzky, Benjamin S. <ben.kaminetzky@davispolk.com>; Lutchen, Alexa B. <alexa.lutchen@davispolk.com>;
SPohl@brownrudnick.com; mcyganowski@otterbourg.com; steven.simms@fticonsulting.com;
Matt.Diaz@fticonsulting.com; Preis, Arik <apreis@akingump.com>
**Subject:** [EXTERNAL] Purdue - UCC Questions re: AHC 2019 Statement

Rachael:

Thank you for sending all of this.

On the investment banker, your language was a little wiggly.   Can you confirm that you will not be seeking
approval of any I Banker (either now or in the future) pursuant to the motion up for the hearing on the 19th, and
that you will need to file a separate motion at some time in the future seeking payment of any such
fees/expenses, that has nothing to do with the instant motion? You wrote "you expect to" seek supplemental
approval of such engagement.  That type of wording seems to me that you may be thinking that approval in some
way would relate back to the motion up for the hearing on the 19th, or that you have not yet made up your mind
on this point.   Please confirm what you mean.

On your number 3 below, can we represent to the Court in our objection that you have agreed to this? Or are you
only agreeing to do this if we do not object? We would prefer to include that in our objection rather than waste
time objecting on that point if you are agreeing to it now regardless of whether we object or not.

Separately, can you please provide the engagement letters that the five firms (not including Lexicon) each have
with the Ad Hoc Group?  Or are you relying on the Fee Letter attached to your motion and the By Laws?

Also, please provide the engagement letters that each firm (KL, Lexicon, Brown Rudnick, Gilbert, and Otterbourg)
has with the individual creditors it represents (and any supplements to those engagement letters).

Please let us know what it is Lexicon is doing.  Or are they not doing anything because they are not included in
your monthly fee projections?  Or are they subsumed in FTI (although admittedly I did not see anything in FTI's
engagement letter about this)?

Finally, your Fee Letter states that AHG Professionals would include "such other economic consultant company as
the Company may agree".  Are you seeking approval of this part of the fee letter? If so, please give us an
indication of what the role of such other economic consultant may be.

Thanks,
Arik


Arik Preis
Akin Gump Strauss Hauer & Feld
One Bryant Park
NY, NY  10036
Office: 212-872-7418
Cell: 646-483-2957
apreis@akingump.com

**From:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>

**Sent:** Saturday, November 9, 2019 10:13 PM
**To:** Preis, Arik <apreis@akingump.com>; Hurley, Mitchell <mhurley@AkinGump.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; gilberts@gilbertlegal.com; Molton, David (External) <DMolton@brownrudnick.com>; Graulich, Timothy <timothy.graulich@davispolk.com>; Vonnegut, Eli J. <eli.vonnegut@davispolk.com>; Miller, Allison <amiller@akingump.com>; Porter, Katherine <kporter@akingump.com>; Huebner, Marshall S. <marshall.huebner@davispolk.com>; Brauner, Sara <sbrauner@akingump.com>; Lisovicz, Edan <elisovicz@akingump.com>; Salwen, James <jsalwen@akingump.com>; Atkinson, Michael (External) <matkinson@provincefirm.com>; Pera, Michael <michael.pera@davispolk.com>; Kaminetzky, Benjamin S. <ben.kaminetzky@davispolk.com>; Lutchen, Alexa B. <alexa.lutchen@davispolk.com>; Pohl, Steven (External) <spohl@brownrudnick.com>; mcyganowski@otterbourg.com; Simms, Steven (External) <steven.simms@fticonsulting.com>; Diaz, Matt (External) <matt.diaz@fticonsulting.com>
**Subject:** RE: Purdue - UCC Questions re: AHC 2019 Statement

Arik –

Please see below for answers to questions from both of your emails of yesterday, along with some additional information regarding the Assumption Motion:

1. **Brown Rudnick**. Brown Rudnick represents the PEC in the bankruptcy cases only and not in connection with the underlying opioid litigation.   As you are aware, Brown Rudnick has advised the PEC as bankruptcy counsel in other opioid bankruptcies, and may advise the PEC in other opioid cases that are not currently in bankruptcy.  As indicated previously, any work performed for/on behalf of the PEC during the bankruptcy cases will be billed separately and Brown Rudnick will not be seeking reimbursement of any such fees from the estates.

2. **Kramer Levin Follow-Up**.  The claimants represented by Kramer Levin in other opioid situations not in bankruptcy do not currently include any of the identified States separately represented by Kramer Levin here, although certain of the claimants are members of the AHC, and each have asserted claims against the Debtors.

3.  **Prepetition Fees**.  We agree that the motion (and the fee letter) contemplate the reimbursement of certain prepetition fees/expenses to be agreed with the Debtors.  Based on discussions among the AHC professionals and with the Debtors, we have determined **not** to seek payment of prepetition fees at this time. Instead, we will seek payment of such fees, in an amount not to exceed $1.5 million (in the aggregate), upon the earlier of approval of the RSA or confirmation of any chapter 11 plan.  The exact amount of such fees is still being reviewed and may indeed be less.

4. **Fee Estimates/Refined Roles and Scope**.  Attached please find the fee estimates for the advisors to the AHC, including (i) estimated amounts incurred from the petition date through the end of October 2019, and (ii) estimated monthly run-rate for each professional. Note that these estimates remain subject to further review and are preliminary and non-binding.  We intend to provide updated estimated monthly budgets for the AHC professionals every 120 days to ensure that budgeted amounts are accurately reflecting the needs of the case.  In connection with analyzing this motion, we have further outlined the scope of the 4 firms, and articulated the scope of the representation.  With respect to the 4 firms, Kramer Levin is serving as lead bankruptcy counsel to the AHC, Gilbert is serving as mass tort/deal/special insurance counsel, Otterbourg is coordinating bankruptcy counsel for the States, and Brown Rudnick is coordinating bankruptcy counsel for the non-states/PEC (in addition to bringing its mass tort bankruptcy expertise for the benefit of the AHC).  Going forward, we expect our primary focus to be on conducting diligence and implementing the settlement we reached, as well as addressing major case issues that directly impact the settlement or chapter 11 plan.

5. **FTI Engagement Letter**.  I do not recall whether you asked for a copy of this previously, but please see attached for a copy of the FTI engagement letter.  This engagement letter should be kept confidential.

6. **Investment Banker**. We have not yet hired an investment banker, but intend to do so in the near term.

We will provide you with the detail of that engagement once it is determined, and expect that we will likely need to seek supplemental approval of the Court for such engagement.

Again, to the extent you would like to have a call to discuss these issues in advance of the response deadlines on the motion, we are happy to make ourselves available and provide additional information.

Thanks,
Rachael


**Rachael Ringer**
Partner

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9506  **M** 989.615.8249  **F** 212.715.8187

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Preis, Arik <apreis@akingump.com>
**Sent:** Friday, November 8, 2019 9:57 AM
**To:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>; Hurley, Mitchell <mhurley@AkinGump.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; gilberts@gilbertlegal.com; DMolton@brownrudnick.com; Graulich, Timothy <timothy.graulich@davispolk.com>; Vonnegut, Eli J. <eli.vonnegut@davispolk.com>; Miller, Allison <amiller@akingump.com>; Porter, Katherine <kporter@akingump.com>; Huebner, Marshall S. <marshall.huebner@davispolk.com>; Brauner, Sara <sbrauner@akingump.com>; Lisovicz, Edan <elisovicz@akingump.com>; Salwen, James <jsalwen@akingump.com>; MAtkinson@provincefirm.com; Preis, Arik <apreis@akingump.com>
**Subject:** [EXTERNAL] RE: Purdue - UCC Questions re: AHC 2019 Statement

Rachael,

While you are answering the below questions, as I said we might, we have some follow ups to your email from early this morning:

1.  You didn't include any information in your email at 645 AM EST about Brown Rudnick (answers to same questions as for KL and Otterbourg and Gilbert, etc.).  In re-reading our email, I guess we should have asked about them specifically, but please provide the same answers to questions regarding Brown Rudnick.
2.  Regarding your response regarding KL, is there any overlap between the claimants in the "unrelated" opioid matter and the claimants KL represents in this case?

Thanks,
Arik


Arik Preis
Akin Gump Strauss Hauer & Feld

One Bryant Park
NY, NY  10036
Office: 212-872-7418
Cell: 646-483-2957
apreis@akingump.com

---

**From:** Preis, Arik <apreis@akingump.com>
**Sent:** Friday, November 8, 2019 9:14 AM
**To:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>; Hurley, Mitchell <mhurley@AkinGump.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; gilberts@gilbertlegal.com; Molton, David (External) <DMolton@brownrudnick.com>; Graulich, Timothy <timothy.graulich@davispolk.com>; Vonnegut, Eli J. <eli.vonnegut@davispolk.com>; Miller, Allison <amiller@akingump.com>; Porter, Katherine <kporter@akingump.com>; Huebner, Marshall S. <marshall.huebner@davispolk.com>; Brauner, Sara <sbrauner@akingump.com>; Lisovicz, Edan <elisovicz@akingump.com>; Salwen, James <jsalwen@akingump.com>; Atkinson, Michael (External) <matkinson@provincefirm.com>; Preis, Arik <apreis@akingump.com>
**Subject:** RE: Purdue - UCC Questions re: AHC 2019 Statement

Thanks Rachael.  We may have some follow up on this, but wanted to ask you another question: the way we read the motion, the Debtors are seeking authority to pay both the pre-petition and post-petition fees allegedly due under the fee reimbursement agreement.  Is that your understanding as well? If that is the case, we asked the Debtors last week for the amount that was being sought pre-petition, and whether they had any projection for the post-petition amounts.  They told us that they do not know the amounts that your group is seeking for reimbursement of pre-petition fees.  They also said to us that they don't have a projection for post-petition amounts (which is not surprising, because the law firm/advisors usually supply their own projections to the debtors).  As such, please provide us the following:

1.  The amount that the various AHG advisors under the motion are seeking to be reimbursed for under the motion for pre-petition fees/expenses, broken down by advisor (and I presume you have invoices, so please provide those if you can under PEO basis);
2.  The amount that the AHG advisors each project (broken down by advisor) for their fees/expenses for the case (at least for the first six months).

Finally, the letter includes a place holder for an investment banker to be hired by the AHG.  Please let us know your status regarding hiring one – are you interviewing? How soon do you think you will be hiring one?

Thank you, and it would be good to get this information by the end of the day today,

Arik


Arik Preis
Akin Gump Strauss Hauer & Feld
One Bryant Park
NY, NY  10036
Office: 212-872-7418
Cell: 646-483-2957
apreis@akingump.com

**From:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>
**Sent:** Friday, November 8, 2019 6:45 AM
**To:** Hurley, Mitchell <mhurley@AkinGump.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; gilberts@gilbertlegal.com; Molton, David (External) <DMolton@brownrudnick.com>; Graulich, Timothy <timothy.graulich@davispolk.com>; Vonnegut, Eli J. <eli.vonnegut@davispolk.com>; Preis, Arik <apreis@akingump.com>; Miller, Allison <amiller@akingump.com>; Porter, Katherine <kporter@akingump.com>; Huebner, Marshall S. <marshall.huebner@davispolk.com>
**Subject:** RE: Purdue - UCC Questions re: AHC 2019 Statement

Mitch (and others),

Please see below for the answers to your questions. Again we would ask that you keep this information **strictly confidential**.

1. **Kramer Levin**.  Kramer Levin was retained as bankruptcy counsel by 10 states/territories shortly prepetition (Alaska, Arkansas, Louisiana, Mississippi, New Mexico, Ohio, Puerto Rico, South Carolina, South Dakota, and Utah), all of whom are supporting the framework/term sheet.  We were initially retained by these states with the expectation that we would likely be retained by an ad hoc group/committee in connection with the bankruptcy cases, as ultimately transpired.  Since the Petition Date, all of the work that has been done by Kramer Levin (other than perhaps some very immaterial amount) has been done on behalf of the Ad Hoc Committee and not on behalf of any of the individual states.  To the extent any work is ultimately performed on behalf of the individual states during the bankruptcy cases, we will bill that time separately and will not be seeking reimbursement of any such fees from the estates. Kramer Levin does not represent these states in the underlying opioid litigation. Kramer Levin is representing a group of claimants in connection with another opioid company that is not in bankruptcy (this is a wholly unrelated matter; all time is billed separately).
2. **Otterbourg**. Otterbourg represents Texas in the bankruptcy cases only and not in connection with the underlying opioid litigation.  Otterbourg has advised Texas as bankruptcy counsel in other opioid bankruptcies.  As indicated previously, any work performed for/on behalf of Texas during the bankruptcy cases will be billed separately and Otterbourg will not be seeking reimbursement of any such fees from the estates.
3. **Gilbert**. As indicated, Gilbert represents Ohio, Delaware, and the listed tribes in the underlying opioid litigation and not in connection with the bankruptcy cases.  Ohio is included in the KL group referenced above (subject to all the caveats included in #1), and Delaware we understand is in the Non-Consenting State Group (per their filed 2019 statement).  We are not aware of who represents the specific tribes as bankruptcy counsel.

To the extent you would like to set-up a call to discuss the above or any other questions, we can make ourselves available.

Thanks,
Rachael


Rachael Ringer
Partner

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9506  **M** 989.615.8249  **F** 212.715.8187

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is

confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have
received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original
communication. Thank you for your cooperation.

**From:** Hurley, Mitchell <mhurley@AkinGump.com>
**Sent:** Thursday, November 7, 2019 1:23 PM
**To:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; gilberts@gilbertlegal.com;
DMolton@brownrudnick.com; Graulich, Timothy <timothy.graulich@davispolk.com>; Vonnegut, Eli J.
<eli.vonnegut@davispolk.com>; Preis, Arik <apreis@akingump.com>; Miller, Allison <amiller@akingump.com>;
Porter, Katherine <kporter@akingump.com>
**Subject:** [EXTERNAL] FW: Purdue - UCC Questions re: AHC 2019 Statement

Good afternoon:

Would you please advise which are the ten states and territories represented by Kramer Levin in Purdue
that are "non-ACH clients"?  Does Kramer Levin represent the ten states (or any of them, or any other
Purdue creditors) in the underlying opioid litigation as well, or otherwise relating to the opioid crisis in
addition to representing them in these cases?

Same for Otterbourg, does it rep Texas (or any other Purdue creditors) in the underlying opioid litigation
as well, or otherwise relating to the opioid crisis in addition to representing them in these cases?

Also, you note that Gilbert represents Ohio, Delaware and the identified tribes in the underlying opioid
litigation only, and not in these bankruptcy cases.  Do those states/tribes have counsel in these
bankruptcy cases?  If so, please identify the firm or firms that represent Ohio, Delaware, and the tribes
in their individual capacities in these cases.

Thanks in advance!

Regards,

Mitch


**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
Direct: +1 212.872.1011 | Internal: 31011



---------- Forwarded message ----------
From: "Ringer, Rachael" <RRinger@KRAMERLEVIN.com>
Date: Oct 31, 2019 12:35 PM
Subject: Purdue - UCC Questions re: AHC 2019 Statement
To: "Preis, Arik" <apreis@akingump.com>
Cc: "Eckstein, Kenneth H."
<keckstein@KRAMERLEVIN.com>,gilberts@gilbertlegal.com,mcyganowski@otterbourg.com,"Molton,
David (External)" <DMolton@brownrudnick.com>,"Graulich, Timothy"
<timothy.graulich@davispolk.com>,"Vonnegut, Eli J." <eli.vonnegut@davispolk.com>,

**EXTERNAL Email**

Arik –

Following our call this week, we received authority to provide you with the below information about the representations of counsel for the AHC referenced in the footnote to the 2019 Statement you asked about.  As discussed on our call, for work performed during the bankruptcy case, each of the AHC counsel will be compensated by the estate only for work done on behalf of the AHC and not for work on behalf of any individual state, municipality or tribe. Please let us know of any further questions on this issue.

In addition we now have authorization to share the AHC by-laws with you, subject to certain redactions, which we will be preparing and sending over later today.

| Firm | Non-AHC Clients |
|------|-----------------|
| Kramer Levin | 10 States and territories supportive of the Settlement Framework (5 of whom are currently serving as members of the Ad Hoc Committee). |
| Otterbourg | Texas |
| Brown Rudnick | PEC |
| Gilbert | PEC<br>Ohio**<br>Delaware**<br>Tribes:**<br>The Cherokee Nation<br>Muscogee (Creek) Nation<br>Navajo Nation<br>San Carlos Apache Tribe<br>Pueblo of Zuni<br>Confederated Salish and Kootenai Tribes<br>Sault Ste. Marie Tribe of Chippewa Indians<br>Grand Traverse Band of Ottawa and Chippewa Indians<br>Gila River Indian Community<br>Mississippi Band of Choctaw Indians<br>Confederated Tribes of Grand Ronde<br>Fort Belknap Indian Community<br>Pascua Yaqui Tribe<br>Quileute Tribe |

**With respect to Gilbert's representations of Ohio, Delaware, and the listed tribes, these representations are only in the underlying opioid litigation and not in connection with the bankruptcy cases.

Rachael Ringer
Partner

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
T 212.715.9506  M 989.615.8249  F 212.715.8187
rringer@kramerlevin.com

Bio
Follow our blog, Broken Bench Bytes

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

The information contained in this e-mail message is intended only for the personal and confidential use
of the recipient(s) named above. If you have received this communication in error, please notify us
immediately by e-mail, and delete the original message.

The information contained in this e-mail message is intended only for the personal and confidential use of
the recipient(s) named above. If you have received this communication in error, please notify us
immediately by e-mail, and delete the original message.

The information contained in this e-mail message is intended only for the personal and confidential use of
the recipient(s) named above. If you have received this communication in error, please notify us
immediately by e-mail, and delete the original message.

# EXHIBIT B

**From:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>
**Sent:** Tuesday, November 5, 2019 12:31 PM
**To:** Hurley, Mitchell <mhurley@AkinGump.com>; Preis, Arik <apreis@akingump.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; mcyganowski@otterbourg.com;
gilberts@gilbertlegal.com; Molton, David (External) <DMolton@brownrudnick.com>
**Subject:** Purdue - AHC By-Laws

**EXTERNAL Email**

Mitch/Arik –

Per your request, please see attached for an unredacted copy of the fully executed by-laws. Again,
please note that these by-laws are being provided a **strictly confidential basis** and should not be
shared beyond the Official Committee's retained professionals.

Let us know of any questions.

Thanks,
Rachael

Rachael Ringer
Partner

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9506   **M** 989.615.8249   **F** 212.715.8187
rringer@kramerlevin.com

Bio
Follow our blog, Broken Bench Bytes

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain
information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication
is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail
message and delete all copies of the original communication. Thank you for your cooperation.

*Execution Version*

**Agreement & Procedural By-Laws**

**of the**

*AD HOC* **COMMITTEE**

**In Connection With the Chapter 11 Cases Of Purdue Pharma, L.P. and Its Subsidiaries and Affiliates**

KL2 3148131.8

## INTRODUCTION[1]

Certain States, the MDL PEC, and certain political subdivisions, including municipalities, cities, and counties, and federally recognized Native American Tribes, have formed an ad hoc committee of litigation claimants, set forth on <u>Exhibit A</u> (the "**Ad Hoc Committee**" or the "**Committee**"), in connection with the chapter 11 cases of Purdue Pharma L.P. and its affiliates, (together, "**Purdue**" or the "**Debtors**") proceeding under the caption styled *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Debtors have acknowledged the formation and role of the Ad Hoc Committee in the Chapter 11 Cases and have agreed to pay the Professionals for the Ad Hoc Committee pursuant to the letter agreement, dated September 15, 2019 (the "**Letter Agreement**"), in accordance with the terms of the Letter Agreement. As of the date hereof, each of the members of the Committee have indicated their support for a conceptual framework for a settlement with Purdue and its shareholders to be negotiated, documented, and implemented through the Chapter 11 Cases (the "**Settlement Framework**").

Each of the Members of the Committee, as of the date of adoption of this Agreement and Procedural By-Laws (the "**By-Laws**") has, through its attorney or other authorized signatory, countersigned these By-Laws, by delivering its counter-signature to Counsel.

## ARTICLE I
## COMMITTEE MEMBERSHIP

1.1    <u>MEMBERSHIP</u>.  The Members of the Committee are set forth on <u>Exhibit A</u> attached hereto, and initially consist of: (i) ten (10) States (each a "**State**" and collectively the "**States**" or the "**State Group**"), (ii) the court-appointed claimants' leadership team in *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No. 2804 (N.D. Ohio) (the "**MDL**," and as further described in the footnote 2 herein, the "**MDL PEC**"),[2] and (iii) six political subdivisions of states (each a "**Municipality**"), and (iv) one federally recognized American Indian Tribe (a "**Tribe**", together with the MDL PEC and the Municipalities the "**Non-State Members**", and individually, each State, the MDL PEC, and each Municipality and Tribe, a "**Member**" and collectively, the "**Members**").    Each Member has designated the person or persons on Exhibit A to act as their representative(s) for Ad Hoc Committee business and voting purposes.

Additional States or Municipalities or Tribes may request to join the Committee by tendering such request to Counsel.  Upon the Affirmative Vote of the Committee (in accordance with Article III hereof), such requesting entities may become Members of the Committee and retain all the rights of initial Members.

---

[1] All capitalized terms used but not defined in this introductory paragraph shall have the meanings ascribed to them elsewhere in the Agreement.

[2] The claimants' leadership team consists of: (1) three co-lead counsel; (2) sixteen-member Plaintiffs' Executive Committee; and (3) three co-liaison counsel (collectively, the "**MDL PEC**") appointed pursuant to Court Order in the MDL.  *See Plaintiffs' Renewed Motion to Approve Co-Leads, Co-Liaisons, and Executive Committee*, MDL (Dkt. No. 34); *id.* at *Margin Order Granting Dkt. No. 34* (Dkt. No. 37).

1.2    RESIGNATION.  A Member may resign at any time by giving written notice to Counsel (who will promptly inform the remaining members of the Committee).  If the Committee recommends, by Affirmative Vote, entering into a formal settlement agreement (a "**Settlement Term Sheet**") or restructuring support agreement ("**RSA**") with the Debtors and their shareholders that is consistent with (including with respect to all material economic terms) and in furtherance of the Settlement Framework, any Member who does not enter into such Settlement Term Sheet or RSA shall be deemed to have resigned, effective immediately, from the Committee ("**Automatic Resignation**").

Upon the resignation of a Member, the Committee shall continue to perform all of its functions with its reduced number of Members (disregarding such vacancy for purposes of determining a majority).  The Committee may replace any resigned Member by an Affirmative Vote (in accordance with Article III hereof).

1.3    PROFESSIONALS. The following firms are serving as co-counsel to the Ad Hoc Committee: Kramer Levin Naftalis & Frankel LLP, Otterbourg P.C., Brown Rudnick LLP, and Gilbert LLP (collectively, "**Counsel**").[3]  The Committee has also retained FTI Consulting to serve as its financial advisor to assist Counsel and the Ad Hoc Committee in the performance of its role in the Chapter 11 Cases. The Committee may also retain (i) an investment banking firm, (ii) Compass Lexecon, as an economic consultant and (iii) such other consultants or advisors as it may determine, to assist Counsel and the Ad Hoc Committee in carrying out the objectives set forth herein (all professionals described in this paragraph, collectively the "**Professionals**"). Neither these By-Laws nor the engagement of Counsel by the Committee shall separately create an attorney-client relationship or duties between Counsel and any of the Members in their individual capacities.

The Professionals have allocated and will continue to allocate the division of responsibilities and their delivery of services to the Committee so as to limit unnecessary duplication of services.

Notwithstanding anything herein to the contrary, no individual Member of the Ad Hoc Committee shall be liable to, or responsible for, any fees and costs incurred by Professionals in these Chapter 11 Cases, *provided, however*, that separate engagement letters entered into with any Member in its individual capacity shall continue to remain in full force and effect.

## ARTICLE II
## MEETINGS

2.1    CALLING AND NOTICE.  Meetings of the Committee may be called by Counsel or may be called upon the request of any three (3) Members.  Notice of the time and place of each meeting of the Committee shall be given to each Member reasonably in advance of such meeting (under the circumstances).  No notice of an adjourned meeting need be given, other

---

[3] In addition to serving as co-counsel to the Ad Hoc Committee, each of the Ad Hoc Committee Counsel represents one or more creditors or parties-in-interest in the Chapter 11 Cases, including Members of the Ad Hoc Committee in such Members' independent capacities as creditors or parties-in-interest in the Chapter 11 Cases.

than by announcement at the meeting at which the adjournment is taken and by reasonable notice (under the circumstances) to any Members and their counsel who were not Present at such meeting. If feasible, each notice of a meeting shall be in writing, which writing may be by email; if not, notice may be given orally, by telephone or otherwise.

2.2   <u>PLACE OF MEETINGS</u>. Meetings of the Committee shall be held at such place as designated by Counsel. Meetings shall be held in person or by conference call, and Members may attend any meeting by telephone. No meeting shall be held unless a quorum, as defined herein, is present at the beginning of the meeting (whether in person or telephonically).

2.3   <u>MEETING AGENDA</u>. The agenda for meetings shall be prepared by Counsel. Any Member may supplement the agenda by written request to Counsel. If feasible, a proposed agenda will be circulated to each Member reasonably (under the circumstances) in advance of each meeting.

2.4   <u>QUORUM</u>. The presence of (i) a majority of all State Members, and (ii) a majority of all Non-State Members, in each case by voting capacity (set forth in Article III hereof) and who are not conflicted pursuant to Section 3.5 hereof, shall constitute a quorum for the transaction of business at any meeting. A quorum shall include Members attending in person, by proxy (with respect to any Committee votes within the scope of such proxy), and by telephone connection as long as such connection is sufficient for all attending Members to hear each other attending Member (in each such case such Member deemed to be "**Present**"). Notwithstanding the minimum requirements set forth in this paragraph, a quorum shall not be constituted if a majority of State or Non-State Members, as the case may be, who are Present at the meeting are represented by one law firm, *provided, however*, that this requirement (i) shall be waived until such time that one additional State Member has been added to the initial members, and (ii) may be waived by the Committee in its discretion.

### ARTICLE III
### <u>VOTING & COMMITTEE ACTION</u>

3.1   <u>SCOPE, PURPOSE & AUTHORITY - CONSENSUS</u>. The Committee and its Members may direct Counsel and/or the other engaged Professionals in accordance with the scope of the Ad Hoc Committee's role in the Chapter 11 Cases and may consult with such Professionals collectively or separately. The Committee will use reasonable best efforts to cooperate and achieve consensus between the Members on all issues in the Chapter 11 Cases. If a general consensus cannot be reached, then a vote pursuant to Section 3.2 hereof must be held by the Committee.

3.2   <u>VOTING & AFFIRMATIVE VOTE</u>. Each Member shall be entitled to one vote. Each Member may vote (a) by its representative or (b) through a designated alternate or counsel. No Counsel may hold a proxy for any Member. Each Member, upon written notice to Counsel, shall have the right to authorize any other Member to act as proxy and cast the authorizing Member's vote in the event that the Member is not able to attend or participate by telephone in a meeting. Any action taken by the Committee in the absence of unanimous consent shall be authorized by an "**Affirmative Vote**," which shall require: (i) a vote of a majority of the voting

State Members by simple majority, and (ii) a vote of a majority of the voting Non-State Members, with a majority vote requiring at least 5 of the 8 Non-State Members.

       3.3    <u>ACTION WITHOUT MEETING</u>.  Certain actions required or permitted to be taken by the Committee may be taken without a meeting.  In order for action to be taken without a meeting, Counsel must either (i) make reasonable efforts to contact each Member entitled to vote either by telephone or e-mail and Members through an Affirmative Vote must approve the action; or (ii) provide each Member entitled to vote with "Negative Notice" of the action to be taken, giving Members as much notice as reasonably practicable.  "**Negative Notice**" shall have been given when the Members (and their respective counsel, if any, set forth in Exhibit A) receive an email from Counsel informing each Member of the proposed action and requesting that the Member contact Counsel by a specified time if such Member does <u>not</u> support the action, which shall be as far in advance as reasonably practicable, and, unless the matter is an emergency, shall not be less than twenty-four (24) hours' notice.  If Counsel does not receive a written response or objection from the Member (or its counsel) by the specified time in the preceding sentence, but reasonably believes that such Member has actually received the notice, that Member shall be deemed to not have objected to the recommended action.  For any action taken via Negative Notice, all Members of the Committee shall be provided notice of the issue being voted upon at substantially the same time.  "**Intracreditor Matters**" identified on <u>Exhibit B</u> may not be governed or decided by Negative Notice.

       3.4    <u>SUBCOMMITTEES</u>. One or more subcommittees may be formed to address any issues arising in the Chapter 11 Cases, with the creation, scope, and membership of such subcommittee to be determined by the Committee through an Affirmative Vote.  No subcommittee shall have authority to bind the Committee, but shall make recommendations to the Committee as to how to proceed with respect to items within its purview.  Subcommittees may consist of parties-in-interest that are not Members, provided that (i) each subcommittee must contain at least one Member, and (ii) all members of a subcommittee must have executed a common interest agreement and confidentiality agreement prior to serving on such subcommittee.

       3.5    <u>CONFLICTS OF INTEREST</u>. In the event that any matter under review or consideration by the Committee may involve a conflict of interest with respect to any Member (the "<u>Conflicted Member</u>"), such potentially Conflicted Member shall (or, if Counsel is aware of such potential conflict of interest, Counsel shall) immediately disclose to the Committee (including all Professionals) such potential conflict and such Member either (i) shall recuse itself from participating in deliberations (except to the extent provided below) and voting on the matter or (ii) may be excluded from participating in deliberations (except to the extent provided below) and voting on the matter, by an Affirmative Vote of the Members then Present and not subject to such potential conflict of interest.  For the purposes of a vote hereunder, those Members that are Conflicted Members shall not be counted for purposes of determining the existence of a quorum.  Any Conflicted Member subject to an alleged conflict of interest shall be provided with a reasonable opportunity to be heard and to provide other Members with additional information and/or to refute any allegations of its alleged conflict of interest prior to any Committee vote regarding such Member's alleged conflict of interest.  Notwithstanding the foregoing, the Conflicted Member who is alleged to have a potential conflict of interest shall be permitted to

discuss with the Committee such Conflicted Member's views on the subject to which the conflict is asserted.

3.6    <u>RIGHT TO ACT SEPARATELY, ADVERSELY</u>. Each Member retains the right to act separately from the Committee, including by making filings in the Chapter 11 Cases or taking other actions within or outside the Chapter 11 Cases irrespective of whether such actions or filings are adverse to the Committee or a position taken by the Committee pursuant to Section 3.2, subject, however, to the Automatic Resignation provision of Section 2.1 herein.  No Counsel shall be disqualified from acting as Counsel to the Ad Hoc Committee because it was directed to act on behalf of a Member in its individual capacity in accordance with this Section 3.6, subject to compliance with the applicable rules of professional conduct.

No Member has a fiduciary or any other duty to any other Member and no Member can bind any other Member through its decisions or actions, unless such action is taken with the consent of such Member. None of the actions of this Committee can bind the individual Members of the Ad Hoc Committee in any capacity other than as a Member of the Committee. Except to the extent otherwise authorized by the Committee, no individual Member shall speak on behalf of the Committee.

## ARTICLE IV
## MISCELLANEOUS

4.1    <u>AD HOC COMMITTEE PRIVILEGE AND CONFIDENTIALITY</u>.  Reference is hereby made to that certain Common Interest Agreement, dated September [24], 2019, which each Member and the Professionals have entered into governing the common interest shared among the Members and others.   All (a) information or documents generated by the Committee, or by any of the Professionals (solely in the Professional's capacity as counsel to the Committee), or by any Member or counsel to any Member for the use of the Committee (collectively,  "<u>Privileged Information</u>") and (b) communications among Members in their capacity as such and communications among Professionals and the Committee, including Committee deliberations and information regarding specific positions taken by Members (collectively,  "<u>Committee Communications</u>," and together with Privileged Information, "<u>Confidential Committee Material</u>"), will, except as otherwise provided herein, be kept confidential and not be disclosed in any manner whatsoever except in connection with the activities or communications undertaken by the Ad Hoc Committee or a Member in its capacity as a Member in connection with the Chapter 11 Cases.[4]

Notwithstanding anything herein to the contrary, the Committee shall be permitted to make public any Confidential Committee Material (other than specific positions taken by

---

[4] Confidential Committee Material shall not include information (i) that was in the possession of a Member on a non-confidential basis prior to the receipt of such information in its capacity as a Member, (ii) that is separately received on a non-confidential basis by a Member in a separate capacity, (iii) that is or becomes generally available to the public other than as a result of a breach of these By-Laws, or (iv) that becomes independently available to a Member by other means so long as the Member's receipt of such information is not governed, to such Member's knowledge, by any other confidentiality provisions or agreements; <u>provided</u>, <u>however</u>, that with respect to clauses (i) or (ii) above, such information became available to the public or was obtained from a source that the Member reasonably believes was not prohibited from disclosing such information publicly.

Members) upon the Affirmative Vote of the Committee. With respect to Privileged Information, the relevant privilege is held and controlled solely by the Committee. Counsel does not represent the Members in their individual capacities. Therefore, only the Committee, and not any individual Member, has authority to waive the attorney-client privilege and (with counsel) the attorney-work product privilege.

Notwithstanding the foregoing, a Member (or if applicable, the Committee) may share or disclose any Confidential Committee Material covered herein: (a) with other Members; (b) with Members' professionals including legal compliance and personnel; (c) with the Member's regulators, attorneys, financial consultants, outside auditors, investment committee members, other professionals, or agents; (d) with third parties, when a Member is obligated to do so by court order, judicial process, regulatory proceeding, the rules of an applicable securities exchange, upon a legally valid request of any state legislative body, or under a state's public records laws or freedom of information laws, with each such exception to be consistent with and subject to all laws and regulations pertaining to non-public information including public securities laws. If a Member is served with a subpoena or other process or request seeking or requiring disclosure of privileged information or other Confidential Committee Material, such Member shall provide written notice to Counsel prior to such disclosure, cooperate with Counsel to respond to the request or process, and take all reasonable and necessary steps to prevent or restrict disclosure, to the extent permitted by law. If there is a question as to whether the information subject to such a request or process may be revealed, the Member shall refer the individual or entity that made the request or caused the process to be issued to Counsel.

Notwithstanding anything herein to the contrary, nothing in these By-Laws shall be deemed or construed to waive, alter or affect any Member's sovereignty, qualified immunity or similar protections under applicable law.

4.2    MEDIA COMMUNICATIONS. Communications with the media with respect to the Committee's views or positions in these Chapter 11 Cases shall be made only as approved by the Committee. Notwithstanding the foregoing, each Member may communicate with the media on its own behalf, and not on behalf of the Committee, in accordance with the limitations of these By-Laws.

4.3    EXPENSE REIMBURSEMENT. Ad Hoc Committee Members shall be entitled to seek reimbursement from the Debtors of reasonable out-of-pocket expenses incurred in connection with serving as a Member of the Committee. Such reimbursement requests shall be included in any request by the Debtors for reimbursement of the fees of Professionals. Counsel will collect and timely submit statements of expenses, with supporting vouchers, from the Members and submit them to the Debtors for reimbursement on a monthly basis, or as soon as reasonably practicable thereafter. Reimbursable expenses may include telephone calls, transportation, hotel, and food. Requests for reimbursement of expenses shall be itemized. Nothing contained in these By-Laws shall preclude Members from seeking reimbursement for underlying claims, including claims for fees and expenses (including attorneys' fees), that the Members may hold against the Debtors.

4.4    <u>AMENDMENTS</u>. These By-Laws may be amended only by unanimous written consent of the Committee Members and Professionals, though no amendment can alter the non-binding aspects of this agreement.

4.5    <u>EXECUTION OF THESE BY-LAWS</u>.  These By-Laws may be executed in any number of counterparts, each of which shall constitute an original, and all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to these By-Laws by scanned attachment to an email shall be as effective as delivery of a manually executed counterpart of a signature page of these By-Laws.

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:      New York, New York
            October 8, 2019

The State of Florida

John Guard, Chief Deputy Attorney General

The State of Georgia

The State of Louisiana

The State of Michigan

The State of Mississippi

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:    New York, New York
          October 8, 2019

The State of Florida

_____

The State of Georgia

_____

The State of Louisiana

_____

The State of Michigan

_____

The State of Mississippi

_____
ASSISTANT Attorney General

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:      New York, New York
             October 8, 2019

The State of Florida

_____

The State of Georgia

_____

The State of Louisiana

_____

The State of Michigan

_____

The State of Mississippi

_____

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:     New York, New York
           October 8, 2019

The State of Florida

_____

The State of Georgia

_____

The State of Louisiana

WILBUR T. STILES
CHIEF DEPUTY AG
_____

The State of Michigan

_____

The State of Mississippi

_____

8

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:          New York, New York
                October 8, 2019

The State of New Mexico

_____

The State of Ohio

_____

The State of Tennessee

_____

The State of Texas

_____

The State of Utah

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

The State of New Mexico

_____

The State of Ohio

_____

The State of Tennessee

*Gill R. Geldreich*
_____
Gill R. Geldreich, Deputy Attorney General

The State of Texas

_____

The State of Utah

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

The State of New Mexico

_____

The State of Ohio

_____

The State of Tennessee

_____

The State of Texas

_____

The State of Utah

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:         New York, New York
               October 8, 2019

                              PEC


                              _____

                              Santa Clara County


                              _____

                              City of Philadelphia


                              _____

                              City of Chicago


                              _____

                              Muscogee (Creek) Nation


                              _____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

PEC

_____

Santa Clara County

_____

City of Philadelphia

_____

City of Chicago

_____

Muscogee (Creek) Nation

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:      New York, New York
            October 8, 2019

PEC

_____
Santa Clara County


_____
City of Philadelphia


_____
City of Chicago


_____
Muscogee (Creek) Nation


_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:          New York, New York
                October 8, 2019

Broward County

_____

King County

_____

Huntington/Cabell County

_____

Brown Rudnick LLP

_____

Gilbert LLP

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:          New York, New York
                October 8, 2019


Broward County

_____


King County

_____


Huntington/Cabell County

_Mike Woelfel, Woelfel & Woelfel_

Brown Rudnick LLP

_____


Gilbert LLP

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:      New York, New York
            October 8, 2019

Broward County

_____

King County

_____

Huntington/Cabell County

_____

Brown Rudnick LLP

_____

Gilbert LLP

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

Broward County

_____

King County

_____

Huntington/Cabell County

_____

Brown Rudnick LLP

_____

Gilbert LLP

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:          New York, New York
                October 8, 2019

                                    Kramer Levin Naftalis & Frankel LLP


                                    Otterbourg P.C.

## **EXHIBIT A**

## **MEMBERS**

|  | **COMMITTEE MEMBER** | **REPRESENTATIVE(S)** | **COUNSEL** |
|---|---|---|---|
| 1. | **State of Florida** | **Ashley Moody,** *Attorney General*<br><br>**John Guard,** *Chief Deputy Attorney General*<br><br>**Trish Conners,** *Deputy Attorney General*<br><br>**Russell S. Kent,** *Special Counsel for Litigation* | **Robert P. Charbonneau**<br><br>**AGENTIS PLLC** |
| 2. | **State of Georgia** | **Christopher M. Carr,** *Attorney General*<br><br>**Anne Infinger,** *Deputy Attorney General*<br><br>**Christine Hom,** *Assistant Attorney General* |  |
| 3. | **State of Louisiana** | **Jeff Landry,** *Attorney General*<br><br>**Wilbur "Bill" Stiles,** *Chief Deputy Attorney General* |  |
| 4. | **State of Michigan** | **Dana Nessel,** *Attorney General*<br><br>**DJ Pascoe,** *Division Chief, Opinions Division* |  |
| 5. | **State of Mississippi** | **Jim Hood,** *Attorney General*<br><br>**Don Kilgore,** *Assistant Attorney General* |  |
| 6. | **State of New Mexico** | **Hector Balderas,** *Attorney General*<br><br>**Tania Maestas,** *Chief Deputy Attorney General*<br><br>**Cholla Khoury,** *Assistant Attorney General*<br><br>**Brian McMath,** *Assistant Attorney General* | **Russell Budd,** *President & Managing Shareholder*<br><br>**Baron & Budd P.C.** |

|   | COMMITTEE MEMBER | REPRESENTATIVE(S) | COUNSEL |
|---|---|---|---|
| 7. | State of Ohio | **Dave Yost,** *Attorney General*<br><br>**Jonathan D. Blanton,** *Deputy Attorney General*<br><br>**Trish Lazich,** *Director Bankruptcy & Legal Support- Collections Enforcement* | |
| 8. | State of Tennessee | **Herbert H. Slatery III,** *Attorney General*<br><br>**Jonathan Skrmetti,** *Chief Deputy Attorney General*<br><br>**Gill Geldreich,** *Deputy Attorney General*<br><br>**Michael Leftwich,** *Deputy Attorney General*<br><br>**Jenni Peacock,** *Senior Assistant Attorney General* | |
| 9, | State of Texas | **Ken Paxton,** *Attorney General*<br><br>**Jeff Mateer,** *First Assistant Attorney General*<br><br>**Paul Singer,** *Senior Counsel for Public Protection* | |
| 10. | State of Utah | **Sean Reyes,** *Attorney General*<br><br>**Robert Wing,** *Assistant Attorney General*<br><br>**Tom Melton,** *Assistant Attorney General*<br><br>**Brian Tarbet,** *Chief Civil Deputy* | **Joseph Rice**<br><br>**MOTLEY RICE LLC** |
| 11. | The MDL PEC, through its Co-Leads as Representatives[5] | **Joseph Rice,** *Motley Rice LLC*<br><br>**Paul Hanly,** *Simmons Hanly Conroy LLC* | |

---

[5] The MDL PEC has consented to: Joseph Rice and Paul Hanly (the "**MDL Leadership Representatives**") acting as their representatives for all purposes of this Committee. Collectively, the MDL Leadership Representatives hold the proxy for the MDL PEC.

|  | COMMITTEE MEMBER | REPRESENTATIVE(S) | COUNSEL |
|---|---|---|---|
| 12. | Broward County | Andrew Meyers, *County Attorney* | Paul Geller, *Partner*<br><br>Robbins Geller Rudman & Dowd LLP<br><br>Elisabeth Cabraser, *Partner*<br><br>Lieff, Cabraser, Heimann & Bernstein |
| 13. | City of Chicago | Mark A. Flessner, *Corporation Counsel, Department of Law*<br><br>Thomas McNulty, *Senior Corporation Counsel, Department of Law* | Joseph Rice<br><br>MOTLEY RICE LLC |
| 14. | Huntington/Cabell County | Steve Williams, *Mayor*<br><br>Beth Thompson, *County Administrator* | Joseph Rice<br><br>MOTLEY RICE LLC |
|  |  |  | Paul Farrell, *Partner*<br><br>Greene Ketchum Farrell Bailey & Tweel LLP<br><br>Russell Budd, *President & Managing Shareholder*<br><br>Baron & Budd P.C. |

|     | COMMITTEE MEMBER | REPRESENTATIVE(S) | COUNSEL |
|-----|------------------|-------------------|---------|
| 15. | **King County** | **Devon Shannon,** *Assistant Chief Deputy Counsel* | **Gary Gotto,** *Partner*<br><br>**Derek Loeser,** *Partner*<br><br>**Lynn Sarko,** *Partner*<br><br>**Keller Rohrback LLP** |
| 16. | **City of Philadelphia** | **Benjamin Field,** *Divisional Deputy City Solicitor*<br><br>**Pamela Elchert Thurmond,** *Deputy City Solicitor* | **Jerry DeSiderato,** *Partner*<br><br>**Martin Weis***, Partner*<br><br>**Scott J. Friedman,** *Partner*<br><br>**DILWORTH PAXSON** |
| 17. | **Muscogee (Creek) Nation** | **Kevin Dellinger,** *Attorney General*<br><br>**Kyle Haskins,** *Deputy Attorney General* | **Don Simon,** *Partner*<br><br>**Sonosky, Chambers, Sachse, Enderson & Perry LLP** |
| 18. | **Santa Clara County** | **Douglas Press,** *Assistant County Counsel*<br><br>**Laura S. Trice,** *Lead Deputy County Counsel*<br><br>**Hannah Kieschnick,** *Social Justice and Impact Litigation Fellow* |  |

## <u>EXHIBIT B</u>
## Initial List Of Intracreditor Matters

- Modification to Committee composition or these By-Laws

- Committee's position on any Temporary Restraining Order ("TRO"), Injunction (whether under 11 U.S.C. § 105 or otherwise) as it relates to Purdue or the Sackler family

- Committee's recommendation with respect to any Settlement Term Sheet or RSA

- Committee's position on allocation or creditor distributions under the Debtors' plan of reorganization or liquidating ("**Plan**"), including

    o Between and among the States, Tribes & Subdivisions/Municipalities
    o Treatment of other creditor groups and creditors under any Plan
    o Attorneys' fees

- Committee's position on structure of NewCo or any post-confirmation entity.

- Committee's position on governance and authority of NewCo or any post-confirmation entity.

- Oversight & Protections re: IACs

- Control over and monetization of Insurance Rights

KL2 3148131.8

**EXHIBIT C**

**From:** Ringer, Rachael <RRinger@KRAMERLEVIN.com>
**Sent:** Thursday, October 31, 2019 11:54 PM
**To:** Preis, Arik <apreis@akingump.com>
**Cc:** Eckstein, Kenneth H. <keckstein@KRAMERLEVIN.com>; gilberts@gilbertlegal.com; mcyganowski@otterbourg.com; Molton, David (External) <DMolton@brownrudnick.com>
**Subject:** Purdue - AHC By-Laws

**EXTERNAL Email**

Arik –

Per your request, please see attached for a copy of the by-laws for the Ad Hoc Committee, subject to the redactions I previewed in my email this morning. Please note that these by-laws are being provided a **strictly confidential basis** and should not be shared beyond the Official Committee's professionals.

Thanks,
Rachael


Rachael Ringer
Partner

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9506   **M** 989.615.8249   **F** 212.715.8187
rringer@kramerlevin.com

Bio
Follow our blog, Broken Bench Bytes

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

*Execution Version*

**Agreement & Procedural By-Laws**

**of the**

***AD HOC* COMMITTEE**

**In Connection With the Chapter 11 Cases Of Purdue Pharma, L.P. and Its Subsidiaries and Affiliates**

## INTRODUCTION[1]

Certain States, the MDL PEC, and certain political subdivisions, including municipalities, cities, and counties, and federally recognized Native American Tribes, have formed an ad hoc committee of litigation claimants, set forth on <u>Exhibit A</u> (the "**Ad Hoc Committee**" or the "**Committee**"), in connection with the chapter 11 cases of Purdue Pharma L.P. and its affiliates, (together, "**Purdue**" or the "**Debtors**") proceeding under the caption styled *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.) (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Debtors have acknowledged the formation and role of the Ad Hoc Committee in the Chapter 11 Cases and have agreed to pay the Professionals for the Ad Hoc Committee pursuant to the letter agreement, dated September 15, 2019 (the "**Letter Agreement**"), in accordance with the terms of the Letter Agreement. As of the date hereof, each of the members of the Committee have indicated their support for a conceptual framework for a settlement with Purdue and its shareholders to be negotiated, documented, and implemented through the Chapter 11 Cases (the "**Settlement Framework**").

Each of the Members of the Committee, as of the date of adoption of this Agreement and Procedural By-Laws (the "**By-Laws**") has, through its attorney or other authorized signatory, countersigned these By-Laws, by delivering its counter-signature to Counsel.

## ARTICLE I
## COMMITTEE MEMBERSHIP

1.1    MEMBERSHIP.  The Members of the Committee are set forth on <u>Exhibit A</u> attached hereto, and initially consist of: (i) ten (10) States (each a "**State**" and collectively the "**States**" or the "**State Group**"), (ii) the court-appointed claimants' leadership team in *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No. 2804 (N.D. Ohio) (the "**MDL**," and as further described in the footnote 2 herein, the "**MDL PEC**"),[2] and (iii) six political subdivisions of states (each a "**Municipality**"), and (iv) one federally recognized American Indian Tribe (a "**Tribe**", together with the MDL PEC and the Municipalities the "**Non-State Members**", and individually, each State, the MDL PEC, and each Municipality and Tribe, a "**Member**" and collectively, the "**Members**").    Each Member has designated the person or persons on Exhibit A to act as their representative(s) for Ad Hoc Committee business and voting purposes.

Additional States or Municipalities or Tribes may request to join the Committee by tendering such request to Counsel.  Upon the Affirmative Vote of the Committee (in accordance with Article III hereof), such requesting entities may become Members of the Committee and retain all the rights of initial Members.

---

[1] All capitalized terms used but not defined in this introductory paragraph shall have the meanings ascribed to them elsewhere in the Agreement.

[2] The claimants' leadership team consists of: (1) three co-lead counsel; (2) sixteen-member Plaintiffs' Executive Committee; and (3) three co-liaison counsel (collectively, the "**MDL PEC**") appointed pursuant to Court Order in the MDL.  *See Plaintiffs' Renewed Motion to Approve Co-Leads, Co-Liaisons, and Executive Committee*, MDL (Dkt. No. 34); *id.* at *Margin Order Granting Dkt. No. 34* (Dkt. No. 37).

1.2    RESIGNATION.  A Member may resign at any time by giving written notice to Counsel (who will promptly inform the remaining members of the Committee).  If the Committee recommends, by Affirmative Vote, entering into a formal settlement agreement (a "**Settlement Term Sheet**") or restructuring support agreement ("**RSA**") with the Debtors and their shareholders that is consistent with (including with respect to all material economic terms) and in furtherance of the Settlement Framework, any Member who does not enter into such Settlement Term Sheet or RSA shall be deemed to have resigned, effective immediately, from the Committee ("**Automatic Resignation**").

Upon the resignation of a Member, the Committee shall continue to perform all of its functions with its reduced number of Members (disregarding such vacancy for purposes of determining a majority).  The Committee may replace any resigned Member by an Affirmative Vote (in accordance with Article III hereof).

1.3    PROFESSIONALS. The following firms are serving as co-counsel to the Ad Hoc Committee: Kramer Levin Naftalis & Frankel LLP, Otterbourg P.C., Brown Rudnick LLP, and Gilbert LLP (collectively, "**Counsel**").[3]  The Committee has also retained FTI Consulting to serve as its financial advisor to assist Counsel and the Ad Hoc Committee in the performance of its role in the Chapter 11 Cases. The Committee may also retain (i) an investment banking firm, (ii) Compass Lexecon, as an economic consultant and (iii) such other consultants or advisors as it may determine, to assist Counsel and the Ad Hoc Committee in carrying out the objectives set forth herein (all professionals described in this paragraph, collectively the "**Professionals**"). Neither these By-Laws nor the engagement of Counsel by the Committee shall separately create an attorney-client relationship or duties between Counsel and any of the Members in their individual capacities.

The Professionals have allocated and will continue to allocate the division of responsibilities and their delivery of services to the Committee so as to limit unnecessary duplication of services.

Notwithstanding anything herein to the contrary, no individual Member of the Ad Hoc Committee shall be liable to, or responsible for, any fees and costs incurred by Professionals in these Chapter 11 Cases, *provided, however*, that separate engagement letters entered into with any Member in its individual capacity shall continue to remain in full force and effect.

## ARTICLE II
## MEETINGS

2.1    CALLING AND NOTICE.  Meetings of the Committee may be called by Counsel or may be called upon the request of any three (3) Members.  Notice of the time and place of each meeting of the Committee shall be given to each Member reasonably in advance of such meeting (under the circumstances).  No notice of an adjourned meeting need be given, other

---

[3] In addition to serving as co-counsel to the Ad Hoc Committee, each of the Ad Hoc Committee Counsel represents one or more creditors or parties-in-interest in the Chapter 11 Cases, including Members of the Ad Hoc Committee in such Members' independent capacities as creditors or parties-in-interest in the Chapter 11 Cases.

than by announcement at the meeting at which the adjournment is taken and by reasonable notice (under the circumstances) to any Members and their counsel who were not Present at such meeting.  If feasible, each notice of a meeting shall be in writing, which writing may be by email; if not, notice may be given orally, by telephone or otherwise.

2.2    PLACE OF MEETINGS.  Meetings of the Committee shall be held at such place as designated by Counsel.  Meetings shall be held in person or by conference call, and Members may attend any meeting by telephone.  No meeting shall be held unless a quorum, as defined herein, is present at the beginning of the meeting (whether in person or telephonically).

2.3    MEETING AGENDA.  The agenda for meetings shall be prepared by Counsel. Any Member may supplement the agenda by written request to Counsel.  If feasible, a proposed agenda will be circulated to each Member reasonably (under the circumstances) in advance of each meeting.

2.4    QUORUM.



## ARTICLE III
## VOTING & COMMITTEE ACTION

3.1    SCOPE, PURPOSE & AUTHORITY - CONSENSUS.  The Committee and its Members may direct Counsel and/or the other engaged Professionals in accordance with the scope of the Ad Hoc Committee's role in the Chapter 11 Cases and may consult with such Professionals collectively or separately.  The Committee will use reasonable best efforts to cooperate and achieve consensus between the Members on all issues in the Chapter 11 Cases.  If a general consensus cannot be reached, then a vote pursuant to Section 3.2 hereof must be held by the Committee.

3.2    VOTING & AFFIRMATIVE VOTE.



███████████████████████████████████████

3.3    ACTION WITHOUT MEETING.   Certain actions required or permitted to be taken by the Committee may be taken without a meeting.  In order for action to be taken without a meeting, Counsel must either (i) make reasonable efforts to contact each Member entitled to vote either by telephone or e-mail and Members through an Affirmative Vote must approve the action; or (ii) provide each Member entitled to vote with "Negative Notice" of the action to be taken, giving Members as much notice as reasonably practicable.  "**Negative Notice**" shall have been given when the Members (and their respective counsel, if any, set forth in Exhibit A) receive an email from Counsel informing each Member of the proposed action and requesting that the Member contact Counsel by a specified time if such Member does not support the action, which shall be as far in advance as reasonably practicable, and, unless the matter is an emergency, shall not be less than twenty-four (24) hours' notice.  If Counsel does not receive a written response or objection from the Member (or its counsel) by the specified time in the preceding sentence, but reasonably believes that such Member has actually received the notice, that Member shall be deemed to not have objected to the recommended action.  For any action taken via Negative Notice, all Members of the Committee shall be provided notice of the issue being voted upon at substantially the same time.  "**Intracreditor Matters**" identified on Exhibit B may not be governed or decided by Negative Notice.

3.4    SUBCOMMITTEES. One or more subcommittees may be formed to address any issues arising in the Chapter 11 Cases, with the creation, scope, and membership of such subcommittee to be determined by the Committee through an Affirmative Vote.   No subcommittee shall have authority to bind the Committee, but shall make recommendations to the Committee as to how to proceed with respect to items within its purview.  Subcommittees may consist of parties-in-interest that are not Members, provided that (i) each subcommittee must contain at least one Member, and (ii) all members of a subcommittee must have executed a common interest agreement and confidentiality agreement prior to serving on such subcommittee.

3.5    CONFLICTS OF INTEREST. In the event that any matter under review or consideration by the Committee may involve a conflict of interest with respect to any Member (the "Conflicted Member"), such potentially Conflicted Member shall (or, if Counsel is aware of such potential conflict of interest, Counsel shall) immediately disclose to the Committee (including all Professionals) such potential conflict and such Member either (i) shall recuse itself from participating in deliberations (except to the extent provided below) and voting on the matter or (ii) may be excluded from participating in deliberations (except to the extent provided below) and voting on the matter, by an Affirmative Vote of the Members then Present and not subject to such potential conflict of interest.  For the purposes of a vote hereunder, those Members that are Conflicted Members shall not be counted for purposes of determining the existence of a quorum. Any Conflicted Member subject to an alleged conflict of interest shall be provided with a reasonable opportunity to be heard and to provide other Members with additional information and/or to refute any allegations of its alleged conflict of interest prior to any Committee vote regarding such Member's alleged conflict of interest.   Notwithstanding the foregoing, the Conflicted Member who is alleged to have a potential conflict of interest shall be permitted to

discuss with the Committee such Conflicted Member's views on the subject to which the conflict is asserted.

3.6    RIGHT TO ACT SEPARATELY, ADVERSELY. Each Member retains the right to act separately from the Committee, including by making filings in the Chapter 11 Cases or taking other actions within or outside the Chapter 11 Cases irrespective of whether such actions or filings are adverse to the Committee or a position taken by the Committee pursuant to Section 3.2, subject, however, to the Automatic Resignation provision of Section 2.1 herein.  No Counsel shall be disqualified from acting as Counsel to the Ad Hoc Committee because it was directed to act on behalf of a Member in its individual capacity in accordance with this Section 3.6, subject to compliance with the applicable rules of professional conduct.

No Member has a fiduciary or any other duty to any other Member and no Member can bind any other Member through its decisions or actions, unless such action is taken with the consent of such Member. None of the actions of this Committee can bind the individual Members of the Ad Hoc Committee in any capacity other than as a Member of the Committee. Except to the extent otherwise authorized by the Committee, no individual Member shall speak on behalf of the Committee.

**ARTICLE IV**
**MISCELLANEOUS**

4.1    AD HOC COMMITTEE PRIVILEGE AND CONFIDENTIALITY. Reference is hereby made to that certain Common Interest Agreement, dated September [24], 2019, which each Member and the Professionals have entered into governing the common interest shared among the Members and others.  All (a) information or documents generated by the Committee, or by any of the Professionals (solely in the Professional's capacity as counsel to the Committee), or by any Member or counsel to any Member for the use of the Committee (collectively, "Privileged Information") and (b) communications among Members in their capacity as such and communications among Professionals and the Committee, including Committee deliberations and information regarding specific positions taken by Members (collectively, "Committee Communications," and together with Privileged Information, "Confidential Committee Material"), will, except as otherwise provided herein, be kept confidential and not be disclosed in any manner whatsoever except in connection with the activities or communications undertaken by the Ad Hoc Committee or a Member in its capacity as a Member in connection with the Chapter 11 Cases.[4]

Notwithstanding anything herein to the contrary, the Committee shall be permitted to make public any Confidential Committee Material (other than specific positions taken by

---

[4] Confidential Committee Material shall not include information (i) that was in the possession of a Member on a non-confidential basis prior to the receipt of such information in its capacity as a Member, (ii) that is separately received on a non-confidential basis by a Member in a separate capacity, (iii) that is or becomes generally available to the public other than as a result of a breach of these By-Laws, or (iv) that becomes independently available to a Member by other means so long as the Member's receipt of such information is not governed, to such Member's knowledge, by any other confidentiality provisions or agreements; provided, however, that with respect to clauses (i) or (ii) above, such information became available to the public or was obtained from a source that the Member reasonably believes was not prohibited from disclosing such information publicly.

Members) upon the Affirmative Vote of the Committee. With respect to Privileged Information, the relevant privilege is held and controlled solely by the Committee. Counsel does not represent the Members in their individual capacities. Therefore, only the Committee, and not any individual Member, has authority to waive the attorney-client privilege and (with counsel) the attorney-work product privilege.

Notwithstanding the foregoing, a Member (or if applicable, the Committee) may share or disclose any Confidential Committee Material covered herein: (a) with other Members; (b) with Members' professionals including legal compliance and personnel; (c) with the Member's regulators, attorneys, financial consultants, outside auditors, investment committee members, other professionals, or agents; (d) with third parties, when a Member is obligated to do so by court order, judicial process, regulatory proceeding, the rules of an applicable securities exchange, upon a legally valid request of any state legislative body, or under a state's public records laws or freedom of information laws, with each such exception to be consistent with and subject to all laws and regulations pertaining to non-public information including public securities laws. If a Member is served with a subpoena or other process or request seeking or requiring disclosure of privileged information or other Confidential Committee Material, such Member shall provide written notice to Counsel prior to such disclosure, cooperate with Counsel to respond to the request or process, and take all reasonable and necessary steps to prevent or restrict disclosure, to the extent permitted by law. If there is a question as to whether the information subject to such a request or process may be revealed, the Member shall refer the individual or entity that made the request or caused the process to be issued to Counsel.

Notwithstanding anything herein to the contrary, nothing in these By-Laws shall be deemed or construed to waive, alter or affect any Member's sovereignty, qualified immunity or similar protections under applicable law.

4.2    MEDIA COMMUNICATIONS. Communications with the media with respect to the Committee's views or positions in these Chapter 11 Cases shall be made only as approved by the Committee. Notwithstanding the foregoing, each Member may communicate with the media on its own behalf, and not on behalf of the Committee, in accordance with the limitations of these By-Laws.

4.3    EXPENSE REIMBURSEMENT. Ad Hoc Committee Members shall be entitled to seek reimbursement from the Debtors of reasonable out-of-pocket expenses incurred in connection with serving as a Member of the Committee. Such reimbursement requests shall be included in any request by the Debtors for reimbursement of the fees of Professionals. Counsel will collect and timely submit statements of expenses, with supporting vouchers, from the Members and submit them to the Debtors for reimbursement on a monthly basis, or as soon as reasonably practicable thereafter. Reimbursable expenses may include telephone calls, transportation, hotel, and food. Requests for reimbursement of expenses shall be itemized. Nothing contained in these By-Laws shall preclude Members from seeking reimbursement for underlying claims, including claims for fees and expenses (including attorneys' fees), that the Members may hold against the Debtors.

4.4    AMENDMENTS. These By-Laws may be amended only by unanimous written consent of the Committee Members and Professionals, though no amendment can alter the non-binding aspects of this agreement.

4.5    EXECUTION OF THESE BY-LAWS.  These By-Laws may be executed in any number of counterparts, each of which shall constitute an original, and all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to these By-Laws by scanned attachment to an email shall be as effective as delivery of a manually executed counterpart of a signature page of these By-Laws.

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:      New York, New York
             October 8, 2019

The State of Florida

_John Guard, Chief Deputy Attorney General_

The State of Georgia

The State of Louisiana

The State of Michigan

The State of Mississippi

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:      New York, New York
            October 8, 2019

The State of Florida

_____

The State of Georgia

_____

The State of Louisiana

_____

The State of Michigan

_____

The State of Mississippi

*Dougl Si Cyu*
*ASSISTANT ATTORNEY General*

KL2 3148131.8

8

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:          New York, New York
               October 8, 2019

The State of Florida

_____

The State of Georgia

_____

The State of Louisiana

_____

The State of Michigan

_____

The State of Mississippi

_____

## CERTIFICATION

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:     New York, New York
           October 8, 2019

The State of Florida

_____

The State of Georgia

_____

The State of Louisiana

WILBUR T STILES
CHIEF DEPUTY AG

The State of Michigan

_____

The State of Mississippi

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

The State of New Mexico

_____

The State of Ohio

_____

The State of Tennessee

_____

The State of Texas

_____

The State of Utah

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:          New York, New York
                October 8, 2019

The State of New Mexico

_____

The State of Ohio

_____

The State of Tennessee

*Gill R Geldreich*
Gill R. Geldreich, Deputy Attorney General

The State of Texas

_____

The State of Utah

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:          New York, New York
                October 8, 2019

                                        The State of New Mexico

                                        _____

                                        The State of Ohio

                                        _____

                                        The State of Tennessee

                                        _____

                                        The State of Texas

                                        _____

                                        The State of Utah

                                        _____

KL2 3148131.8                                      9

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

                              PEC

                              _____

                              Santa Clara County

                              _____

                              City of Philadelphia

                              _____

                              City of Chicago

                              _____

                              Muscogee (Creek) Nation

                              _____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019


                                          PEC


                                          _____


                                          Santa Clara County


                                          _____


                                          City of Philadelphia


                                          _____


                                          City of Chicago


                                          _____


                                          Muscogee (Creek) Nation


                                          _____


KL2 3148131.8                             10

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

PEC

_____

Santa Clara County



_____

City of Philadelphia



_____

City of Chicago



_____

Muscogee (Creek) Nation



_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee.  These certifications may be executed in any number of counterparts.

Dated:          New York, New York
                October 8, 2019

                                    Broward County

                                    _____

                                    King County

                                    _____

                                    Huntington/Cabell County

                                    _____

                                    Brown Rudnick LLP

                                    _____

                                    Gilbert LLP

                                    _____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:      New York, New York
            October 8, 2019

Broward County

_____

King County

_____

Huntington/Cabell County

_____
Mike Woelfel, Woelfel & Woelfel

Brown Rudnick LLP

_____

Gilbert LLP

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:        New York, New York
              October 8, 2019

                         Broward County

                         _____

                         King County

                         _____

                         Huntington/Cabell County

                         _____

                         Brown Rudnick LLP

                         _____

                         Gilbert LLP

                         _____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:       New York, New York
             October 8, 2019

Broward County

_____

King County

_____

Huntington/Cabell County

_____

Brown Rudnick LLP

_____

Gilbert LLP

_____

The undersigned certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Committee. These certifications may be executed in any number of counterparts.

Dated:         New York, New York
               October 8, 2019

                              Kramer Levin Naftalis & Frankel LLP



                              Otterbourg P.C.

**EXHIBIT A**

**MEMBERS**

|  | COMMITTEE MEMBER | REPRESENTATIVE(S) | COUNSEL |
|---|---|---|---|
| 1. | State of Florida | **Ashley Moody**, *Attorney General*<br><br>**John Guard**, *Chief Deputy Attorney General*<br><br>**Trish Conners**, *Deputy Attorney General*<br><br>**Russell S. Kent**, *Special Counsel for Litigation* | Robert P. Charbonneau<br><br>**AGENTIS PLLC** |
| 2. | State of Georgia | **Christopher M. Carr**, *Attorney General*<br><br>**Anne Infinger**, *Deputy Attorney General*<br><br>**Christine Hom**, *Assistant Attorney General* | |
| 3. | State of Louisiana | **Jeff Landry**, *Attorney General*<br><br>**Wilbur "Bill" Stiles**, *Chief Deputy Attorney General* | |
| 4. | State of Michigan | **Dana Nessel**, *Attorney General*<br><br>**DJ Pascoe**, *Division Chief, Opinions Division* | |
| 5. | State of Mississippi | **Jim Hood**, *Attorney General*<br><br>**Don Kilgore**, *Assistant Attorney General* | |
| 6. | State of New Mexico | **Hector Balderas**, *Attorney General*<br><br>**Tania Maestas**, *Chief Deputy Attorney General*<br><br>**Cholla Khoury**, *Assistant Attorney General*<br><br>**Brian McMath**, *Assistant Attorney General* | **Russell Budd**, *President & Managing Shareholder*<br><br>**Baron & Budd P.C.** |

|   | COMMITTEE MEMBER | REPRESENTATIVE(S) | COUNSEL |
|---|---|---|---|
| 7. | State of Ohio | **Dave Yost,** *Attorney General*<br><br>**Jonathan D. Blanton,** *Deputy Attorney General*<br><br>**Trish Lazich**, *Director Bankruptcy & Legal Support- Collections Enforcement* | |
| 8. | State of Tennessee | **Herbert H. Slatery III,** *Attorney General*<br><br>**Jonathan Skrmetti,** *Chief Deputy Attorney General*<br><br>**Gill Geldreich,** *Deputy Attorney General*<br><br>**Michael Leftwich,** *Deputy Attorney General*<br><br>**Jenni Peacock,** *Senior Assistant Attorney General* | |
| 9, | State of Texas | **Ken Paxton,** *Attorney General*<br><br>**Jeff Mateer,** *First Assistant Attorney General*<br><br>**Paul Singer,** *Senior Counsel for Public Protection* | |
| 10. | State of Utah | **Sean Reyes,** *Attorney General*<br><br>**Robert Wing,** *Assistant Attorney General*<br><br>**Tom Melton,** *Assistant Attorney General*<br><br>**Brian Tarbet,** *Chief Civil Deputy* | **Joseph Rice**<br><br>**MOTLEY RICE LLC** |
| 11. | **The MDL PEC, through its Co-Leads as Representatives**[5] | **Joseph Rice**, *Motley Rice LLC*<br><br>**Paul Hanly**, *Simmons Hanly Conroy LLC* | |

---

[5] The MDL PEC has consented to: Joseph Rice and Paul Hanly (the "**MDL Leadership Representatives**") acting as their representatives for all purposes of this Committee. Collectively, the MDL Leadership Representatives hold the proxy for the MDL PEC.

|  | COMMITTEE MEMBER | REPRESENTATIVE(S) | COUNSEL |
|---|---|---|---|
| 12. | Broward County | **Andrew Meyers,** *County Attorney* | **Paul Geller,** *Partner*<br><br>**Robbins Geller Rudman & Dowd LLP**<br><br>**Elisabeth Cabraser,** *Partner*<br><br>**Lieff, Cabraser, Heimann & Bernstein** |
| 13. | City of Chicago | **Mark A. Flessner,** *Corporation Counsel, Department of Law*<br><br>**Thomas McNulty,** *Senior Corporation Counsel, Department of Law* | **Joseph Rice**<br><br>**MOTLEY RICE LLC** |
| 14. | Huntington/Cabell County | **Steve Williams,** *Mayor*<br><br>**Beth Thompson,** *County Administrator* | **Joseph Rice**<br><br>**MOTLEY RICE LLC** |
|  |  |  | **Paul Farrell,** *Partner*<br><br>**Greene Ketchum Farrell Bailey & Tweel LLP**<br><br>**Russell Budd,** *President & Managing Shareholder*<br><br>**Baron & Budd P.C.** |

|    | COMMITTEE MEMBER | REPRESENTATIVE(S) | COUNSEL |
|----|------------------|-------------------|---------|
| 15. | King County | **Devon Shannon,** *Assistant Chief Deputy Counsel* | **Gary Gotto,** *Partner*<br><br>**Derek Loeser,** *Partner*<br><br>**Lynn Sarko,** *Partner*<br><br>**Keller Rohrback LLP** |
| 16. | City of Philadelphia | **Benjamin Field,** *Divisional Deputy City Solicitor*<br><br>**Pamela Elchert Thurmond,** *Deputy City Solicitor* | **Jerry DeSiderato,** *Partner*<br><br>**Martin Weis,** *Partner*<br><br>**Scott J. Friedman,** *Partner*<br><br>**DILWORTH PAXSON** |
| 17. | Muscogee (Creek) Nation | **Kevin Dellinger,** *Attorney General*<br><br>**Kyle Haskins,** *Deputy Attorney General* | **Don Simon,** *Partner*<br><br>**Sonosky, Chambers, Sachse, Enderson & Perry LLP** |
| 18. | Santa Clara County | **Douglas Press,** *Assistant County Counsel*<br><br>**Laura S. Trice,** *Lead Deputy County Counsel*<br><br>**Hannah Kieschnick,** *Social Justice and Impact Litigation Fellow* | |

## EXHIBIT B
## Initial List Of Intracreditor Matters

- Modification to Committee composition or these By-Laws

- Committee's position on any Temporary Restraining Order ("TRO"), Injunction (whether under 11 U.S.C. § 105 or otherwise) as it relates to Purdue or the Sackler family

- Committee's recommendation with respect to any Settlement Term Sheet or RSA

- Committee's position on allocation or creditor distributions under the Debtors' plan of reorganization or liquidating ("**Plan**"), including

    o Between and among the States, Tribes & Subdivisions/Municipalities
    o Treatment of other creditor groups and creditors under any Plan
    o Attorneys' fees

- Committee's position on structure of NewCo or any post-confirmation entity.

- Committee's position on governance and authority of NewCo or any post-confirmation entity.

- Oversight & Protections re: IACs

- Control over and monetization of Insurance Rights

# EXHIBIT D

DRAFT - Subject to Material Change
Privileged Confidential

**Purdue Pharma**
**Ad Hoc Committee Professional Fee Budget**

| | Ad Hoc Committee Professional Fee Budget | |
|---|---|---|
| | **Post-Petition Fees** | **Projected Fees** |
| **Professional Firm** | **9/15–10/31** | **Estimated Monthly Run Rate** |
| Brown Rudnick | $ 470,000 | $ 350,000 |
| Kramer Levin | 1,200,000 | 800,000 |
| Gilbert | 580,000 | 350,000 |
| Otterbourg | 372,000 | 250,000 |
| FTI Consulting | 650,000 | 1,000,000 |
| **Total** | **$ 3,272,000** | **$ 2,750,000** |

1. Note these are estimated fees/run rates and are not binding.

**EXHIBIT E**

| | |
|---|---|
| **From:** | Preis, Arik |
| **To:** | Troop, Andrew M. |
| **Cc:** | Preis, Arik; Hurley, Mitchell; lszlezinger@jefferies.com; Kevin Sheridan; Atkinson, Michael (External); Miller, Allison; Lisovicz, Edan; Porter, Katherine; Brauner, Sara |
| **Subject:** | FW: Purdue - Follow Up |
| **Date:** | Saturday, November 9, 2019 3:15:50 PM |

Andrew:

I sent this email to Gillian/David after our call yesterday, but in thinking about it, I should have obviously sent it to you as well, because Jefferies/Province are obviously available to you and all of the dissenting states – not just Mass and NY – on the same terms as below (I assumed you knew this, but perhaps all of your states don't, as Mass didn't know).  Apologies for not sending to you in the first instance yesterday.

Thanks,
Arik


Arik Preis
Akin Gump Strauss Hauer & Feld
One Bryant Park
NY, NY  10036
Office: 212-872-7418
Cell: 646-483-2957
apreis@akingump.com

---

**From:** Preis, Arik <apreis@akingump.com>
**Sent:** Friday, November 8, 2019 9:05 AM
**To:** Feiner, Gillian (AGO) <gillian.feiner@state.ma.us>; David.Nachman@ag.ny.gov; Alexander, Sandy (AGO) <sandy.alexander@state.ma.us>
**Cc:** Atkinson, Michael (External) <matkinson@provincefirm.com>; Leon Szlezinger <lszlezinger@jefferies.com>; Kevin Sheridan <ksheridan@jefferies.com>; Hurley, Mitchell <mhurley@AkinGump.com>; Miller, Allison <amiller@akingump.com>; Lisovicz, Edan <elisovicz@akingump.com>; Brauner, Sara <sbrauner@akingump.com>; Porter, Katherine <kporter@akingump.com>; Preis, Arik <apreis@akingump.com>
**Subject:** Purdue - Follow Up

Gillian, David, and Sandy,

Thank you for the call yesterday.

During the call, and in response to some questions you had, I had said that of course you are free, like any creditor, to talk to the UCC's financial advisor and investment banker regarding any questions you have (the same way you talk to the UCC's legal advisors - us – with any questions and we talk to you).  Obviously, they are constrained by whatever confidentiality provisions relate to

information they receive (like you are –and so if you are receiving the same information as them, this should not be an issue), and they cannot share (at this point) with you UCC privileged analysis/work product, etc., but you should certainly reach out to them whenever you want – we and they are the advisors to your fiduciary body.

To that end, I have copied in Mike Atkinson (Province – our financial advisor) and Leon Szlezinger and Kevin Sheridan (Jefferies – our investment banker) – so that you have their information.

(As I mentioned, it had not occurred to me that you felt you could not reach out to them with your questions (as any creditor is permitted to do), but I should have obviously realized that what may seem obvious to some of us who do FR every day may not be so obvious to the fortunate among you who don't!)).

Thanks,

Arik

**Arik Preis**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.7418 | Internal: 37418
Fax: +1 212.872.1002 | apreis@akingump.com | akingump.com | Bio

# EXHIBIT F

| From: | Eckstein, Kenneth H. |
|---|---|
| To: | Preis, Arik |
| Cc: | Hurley, Mitchell; Porter, Katherine; lszlezinger@jefferies.com; Atkinson, Michael (External); Kevin Sheridan; Brauner, Sara; Lisovicz, Edan; Miller, Allison; Ringer, Rachael; mcyganowski@otterbourg.com; Simms, Steven (External); Pohl, Steven (External); gilberts@gilbertlegal.com; Diaz, Matt (External); Molton, David (External) |
| Subject: | Re: [EXTERNAL] Purdue - Follow Up |
| Date: | Sunday, November 10, 2019 5:52:37 PM |

**EXTERNAL Email**

Arik,

Thank you for speaking today and for your various follow ups. Rachel will be replying separately to your 4:28PM email.

I appreciate your offer to make Jefferies and Provence available to us. I will make sure the members of the AHC are aware of the opportunity. I believe we already have developed a good working relationship with both firms and I am aware that FTI has been working closely with them. I expect that coordination to continue and to increase as the case proceeds. We are prepared to reciprocate with you. Hopefully, the financial firms can develop and implement efficient work plans. Given the amount of diligence required both from the company and the shareholders, I believe this kind of coordination will prove extremely valuable to completion of an RSA and development of a plan. We share your sentiment that this be extended to the dissenting states as well. This is particularly timely with the injunction behind us.

Ken


Sent from my iPad


Kenneth H. Eckstein
Partner and Co-chair, Bankruptcy and Restructuring

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9229   **M** 917.328.7847   **F** 212.715.8000
keckstein@kramerlevin.com

Bio
Follow our blog, Broken Bench Bytes

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

On Nov 10, 2019, at 3:42 PM, Preis, Arik <apreis@akingump.com> wrote:


Ken,

Just following up on our conversation - - as I noted to you, and as I offered to Andrew and the Dissenting States, Jefferies and Province are of course available to your clients (and you) to the extent you would like to discuss with them anything (they are copied here).  Of course, they cannot discuss privileged ucc analysis/work product, and would be constrained by confidentiality (but my guess is that that will not be a problem because your clients will have access to most of what they receive, if not all), but other than that, your clients (and you) should feel free to reach out to them.  I would ask that you of course forward this to your clients, as I understand that some State AG's or the PEC or the municipalities or tribes on the AHG of Supporting Parties may not be aware of this as well as I'm sure you are.

Thanks,

Arik

**Arik Preis**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park  |  New York, NY 10036-6745  |  USA  |  Direct: +1 212.872.7418  |  Internal: 37418
Fax: +1 212.872.1002  |  apreis@akingump.com  |  akingump.com  |  Bio

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT G

| From: | Hurley, Mitchell |
|---|---|
| To: | Ringer, Rachael |
| Cc: | Eckstein, Kenneth H.; gilberts@gilbertlaw.com; mcyganowski@otterbourg.com; Molton, David (External); Miller, Allison; Preis, Arik |
| Subject: | RE: Bylaws |
| Date: | Monday, November 4, 2019 10:16:55 AM |

Just a reminder on this, would you please advise the basis for the redactions?  Also, the September 15 2019 letter with Purdue contemplates provision to Purdue of a copy of the bylaws (see page 2).  Was the version supplied to Purdue redacted?  Thanks in advance.  Mitch

**From:** Hurley, Mitchell
**Sent:** Friday, November 1, 2019 12:37 PM
**To:** Ringer, Rachael <RRinger@kramerlevin.com>
**Cc:** Eckstein, Kenneth H. <keckstein@kramerlevin.com>; 'gilberts@gilbertlaw.com' <gilberts@gilbertlaw.com>; 'mcyganowski@otterbourg.com' <mcyganowski@otterbourg.com>; 'dmolton@brownrudnick.com' <dmolton@brownrudnick.com>; Miller, Allison <amiller@akingump.com>; Preis, Arik <apreis@akingump.com>
**Subject:** Bylaws

Thanks for sending the bylaws, which we will maintain on PEO basis as you indicated.  Would you please advise the reason for the redactions (the quorum and voting sections)?   Thanks.

**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park  |  New York, NY 10036-6745  |  USA  |  Direct: +1 212.872.1011  |  Internal: 31011
Fax: +1 212.872.1002  |  mhurley@akingump.com  |  akingump.com  |  Bio

# EXHIBIT H

| | |
|---|---|
| **From:** | Hurley, Mitchell |
| **To:** | Ringer, Rachael |
| **Cc:** | Preis, Arik |
| **Subject:** | RE: Bylaws |
| **Date:** | Tuesday, November 5, 2019 11:03:15 AM |

Hi Rachael, any progress on providing the un-redacted bylaws per our call yesterday?  Thank you.

**From:** Hurley, Mitchell
**Sent:** Friday, November 1, 2019 12:37 PM
**To:** Ringer, Rachael <RRinger@kramerlevin.com>
**Cc:** Eckstein, Kenneth H. <keckstein@kramerlevin.com>; 'gilberts@gilbertlaw.com'
<gilberts@gilbertlaw.com>; 'mcyganowski@otterbourg.com' <mcyganowski@otterbourg.com>;
'dmolton@brownrudnick.com' <dmolton@brownrudnick.com>; Miller, Allison
<amiller@akingump.com>; Preis, Arik <apreis@akingump.com>
**Subject:** Bylaws

Thanks for sending the bylaws, which we will maintain on PEO basis as you indicated.  Would you
please advise the reason for the redactions (the quorum and voting sections)?   Thanks.

**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park | New York, NY 10036-6745 | USA  Direct: +1 212.872.1011 | Internal: 31011
Fax: +1 212.872.1002 | mhurley@akingump.com | akingump.com | Bio