| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | Hearing Date: November 19, 2019<br>Hearing Time: 10:00 am |
| ------------------------------------------------------ x<br>In re :<br>:<br>PURDUE PHARMA L.P., *et al.*, :<br>:<br>Debtors. :<br>:<br>------------------------------------------------------ x | | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>Jointly Administered |

**OBJECTION OF THE UNITED STATES TRUSTEE TO ENTRY
OF ORDER APPROVING THE RETENTION OF ERNST &
YOUNG LLP AS THE AUDITOR FOR THE DEBTORS**

TO:   **THE HONORABLE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the application (ECF No. 432) of the Debtors for authority to employ Ernst & Young LLP ("EY LLP") (the "Application"). In support of his objection, the United States Trustee respectfully submits as follows:

**PRELIMINARY STATEMENT**

The settlement term sheet filed with the Ad Hoc Committee of Consenting Claimants and other documents establish that the Debtors' proposed plan of reorganization in these bankruptcy cases consists of two components: (1) the creation of a trust for the benefit of all claimants, which will contain 100% of Purdue's U.S. pharmaceutical businesses; and (2) a cash contribution (the "Cash Contribution") for the consenting shareholders, which include Sackler family members and numerous related entities (the "Consenting Shareholders"), who will be provided a release in exchange for such contributions. The primary dispute in these cases is highly likely to be the value and magnitude of any such Cash Contribution. An essential component of the determination of the value and magnitude of any Cash Contribution will

include a review or investigation of any transactions related to distributions to the Consenting Shareholders. That being the case, the primary party adverse to the Debtors - as fiduciaries of the estate and proponents of this plan – will be the Consenting Shareholders.

Inexplicably, the Debtors seek to retain EY LLP as its auditor in accordance with section 327(a) of the Bankruptcy Code, despite the fact that EY LLP has disclosed that it -– or an affiliate thereof – was and is employed[1] – and intends to continue to be employed -- in some capacity as an auditor for some or all of the Consenting Shareholders and in such capacity would have signed off on many of the same transactions which will be probed in these cases. In order to be retained under section 327(a), EY LLP must demonstrate that it does not hold or represent an adverse interest to the Debtors and is disinterested as such term is defined in the Bankruptcy Code. Under the circumstances, it is impossible for an entity representing certain of the Consenting shareholders to make such a demonstration here and thus, the court should deny the Application as EY LLP cannot meet the requirements of the Bankruptcy code for the retention of a professional.

The Debtors may argue that it would be costly and inefficient to retain a new auditor at this juncture as EY LLP has been performing services for the Debtors for a number of years and is familiar with its businesses. However, the Bankruptcy Code requirements governing the retention of professionals who hold or represent an interest adverse do not contain an efficiency exception and thus, such argument should be denied.

---

[1] EY LLP's disclosures regarding its relationship to the Sackers are not very informative. The Brady Declaration attached to the Application merely states that EY LLP and EYGL "provides services" to the Sacklers, without detailing the nature of such services, for whom such services were performed or how long such services have been rendered. It is the understanding of the United States Trustee that in response to the United States Trustee's inquiry EY LLP will be supplementing its disclosures and thus, the United States Trustee reserves its rights to supplement this objection based on any such additional disclosures.

## BACKGROUND

### General Background

1. The Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on September 15, 2019 (the "Petition Date").

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF No. 59.

4. The Debtors are pharmaceutical companies that manufacture, sell, or distribute, among other products, extended-release, long-acting opioid pain medications. *See* Debtors' Information Brief ECF No. 17 at 1.

5. The Debtors commenced these cases because OxyContin® Extended-Release Tablets CII, the Debtors' most prominent pain medication, is the target of over 2,600 civil actions pending across the United States and its territories. *Id*. The lawsuits have proved unmanageable for the Debtors. *Id*.

6. The Debtors do not have significant secured liabilities. Declaration of Jon Lownes in Support of Debtors' Chapter 11 Petitions and First Day Pleadings at Schedule 3, ECF No. 3.

7. Prior to filing bankruptcy, the Debtors reached an agreement in principal with certain claimants in actions pending against the Debtors and other defendants. Debtors' Informational Brief, p. 1, ECF No. 17.

8. The agreement in principal proposed the following "Settlement Structure:"

> Under the agreed-upon Settlement Structure, as part of a resolution of the litigation: (1) Purdue's existing shareholders will relinquish all of their equity interests in the Debtors and consent to the transfer of all of the Debtors' assets to a trust or similar post-emergence structure for the benefit of claimants and the U.S. public, "free and clear" of Purdue's liabilities to the fullest extent permitted by law; (2) **Purdue's existing shareholders will engage in a sale process for their ex-U.S. pharmaceutical companies; and (3) Purdue's existing shareholders will contribute an additional $3 billion over seven years (in addition to 100% of the value of all 24 Debtors), with the hope of substantial further contemplated contributions from the sales of their ex-U.S. pharmaceutical businesses**.

Debtors' Information Brief, p. 44 (emphasis added).

9. On November 5, 2019, the Debtors filed an application to retain EY LLP as the Debtors' Auditor (the "Application"). ECF No. 432.

10. The Declaration of Devon M. Brady in Support of Debtor's Application For Order Authorizing Retention and Employment of Ernst & Young LLP as its Auditor (the "Brady Declaration") discloses the following:

> 26. In addition to its work for the Debtors, EY LLP, provides services for various trusts that are held by members of the Sackler family ("**Sackler Trusts**") and for certain entities that are owned by one or more Sackler Trusts or by members of the Sackler family, ("**Sackler Entities**").
>
> 27. In addition to the foregoing, EYGL [Ernst & Young Global Limited] member firms outside of the United States provide services for various Sackler Trusts, Sackler Entities and certain members of the Sackler family.

(Emphasis in original) Brady Declaration, ¶¶ 26 and 27.

**OBJECTION**

A.    **Legal Standard Regarding Disinterestedness**

Section 327 of the Bankruptcy Code governs the employment of professional persons by a trustee or debtor in possession and provides, in part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, [. . .] or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Thus a professional

> (1) must not hold an interest adverse to the bankruptcy estate; (2) must not represent an interest adverse to the estate; and (3) must be disinterested.

*In re Worldcom*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004). Pursuant to 11 U.S.C. § 101(14), a person is disinterested if he or she:

> does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). The disinterestedness standard under Section 327(a) is designed to guarantee "that the professionals' service presents no conflict of interest." *Pryor v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 107 (2d Cir. 2001); *see also In re Vytautas Vebeliunas*, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999) (even the appearance of a conflict is to be avoided). "What is clear is that undivided loyalty is central to disinterestedness." *In re Angelika Films 57th Inc.*, 227 B.R. 29, 39 (Bankr. S.D.N.Y. 1998).

Courts have distilled these requirements into a single test for a conflict of interest: a professional must not "hold or represent an interest adverse to the estate." *In re Project Orange Assocs., LLC, LC*, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010) (*citing Bank Brussels Lambert v.*

*Coan (In re AroChem Corp.),* 176 F.3d 610, 622-23 (2d Cir.1999); *Hogil Pharm. Corp. v. Sapir (In re Innomed Labs, LLC),* No. 07 Civ. 4778(WCC), 2008 WL 276490, at *2 (S.D.N.Y. Jan.29, 2008); *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998)); *see also In re WorldCom, Inc.*, 311 B.R. at 163 (Bankr. S.D.N.Y 2004).

The United States Court of Appeals for the Second Circuit has defined "hold or represent an adverse interest" as follows:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re AroChem Corp.*, 176 F.3d at 623 (2d Cir. 1999); *see also In re Enron*, No. 01-16034, 2002 WL 32034346 at *1, *8 (Bankr. S.D.N.Y. May 23, 2002) ("Said another way, if it is plausible that the representation of another interest may cause the professional to act any differently than they would without that other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification."). The decision whether an adverse interest exists is determined by the court on a case-by-case basis. *See In re AroChem Corp.*, 176 F.3d at 623; *In re Caldor, Inc. NY*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996). "Courts lack the power to authorize the 'employment of a professional who has a conflict of interest.'" *In re JMK Constr. Grp., Ltd.*, 441 B.R. 222, 230 (Bankr. S.D.N.Y. 2010) (*quoting In re Mercury*, 280 B.R. 35, 55 (Bankr. S.D.N.Y. 2002).

"Generally stated, the adverse interest test is objective and excludes 'any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *In re Project Orange Assocs., LLC*, *LC*, 431 B.R. at 370 (*quoting In re WorldCom, Inc.*, 311 B.R. at 163 (Bankr. S.D.N.Y 2004)). A

disabling adverse interest arises where a professional has "a meaningful incentive, *or the perception of one*, to act contrary to the interests of the estates." *In re Granite Partners*, 219 B.R. at 36 (emphasis added); *see also In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 534 (Bankr. S.D.N.Y. 1994) (debtor's counsel investigating a client "had a perceptible economic incentive not to pursue the possibility of claims . . . with the same vigor and intensity it might have otherwise applied.). "To be disinterested is 'to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration.'" *In re Vebeliunas*, 231 B.R. at 191.

Section 327(c) of the Code provides that a professional is not disqualified from employment by the debtor in possession solely because of the professional's representation of a creditor. *See* 11 U.S.C. § 327(c) ("a person is not disqualified for employment under this section solely because of such person's employment or representation of a creditor . . ."). The statute, however, *requires* disqualification of a professional following an objection from the United States Trustee or a creditor where there is an actual conflict of interest. *Id.* ("the court shall disapprove such employment if there is an actual conflict of interest"). While not defined in the Code, an actual conflict of interest has been interpreted to mean "an active competition between two interests, in which one interest can only be served at the expense of the other." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002).

**B.    EY LLP Cannot Satisfy the Adverse Interest Test, Suffers from a Potential Conflict of Interest, and Cannot be Retained**

The Debtors have made it abundantly clear in the settlement term sheet filed with the Ad Hoc Committee of Consenting Claimants and other documents filed in this case, that there are two primary components to the Debtors' proposed plan of reorganization in these cases: (1) the

creation of a trust for the benefit of all claimants, which will contain 100% of Purdue's U.S. pharmaceutical businesses; and (2) a cash contribution (the "Cash Contribution") for the consenting shareholders, which include Sackler family members and numerous related entities (the "Consenting Shareholders"), who will be provided a release in exchange for such contributions.  The primary dispute in these cases will involve the value and magnitude of any such Cash Contribution.  Consideration of the amount of the Cash Contribution will require a review or investigation of any transactions related to distributions to the Consenting Shareholders.  That being the case, the primary party that will be adverse to the Debtors -- as fiduciaries of the estate and proponents of this plan – is the Consenting Shareholders.

EY LLP's disclosures regarding its relationship to the Sacklers are not very informative. The Brady Declaration attached to the Application merely states that EY LLP and EYGL "provides services" to the Sacklers, without detailing the nature of such services, for whom such services were performed or how long such services have been rendered.  It is the understanding of the United States Trustee that in response to the United States Trustee's inquiry, EY LLP will be supplementing its disclosures and thus, the United States Trustee reserves its rights to supplement this objection based on any such additional disclosures.

Nonetheless, what is clear is that the Debtors seek to retain EY LLP as its auditor in accordance with section 327(a) of the Bankruptcy Code, despite the fact that EY LLP has disclosed that it -– or an affiliate thereof -- is employed – and intends to continue to be employed -- as an auditor for some or all of the Consenting Shareholders.  EY LLP, as the Debtors' long term auditor, would have audited many of the same transactions that will be probed in these cases.  In order to be retained under section 327(a), EY LLP must demonstrate that it does not hold or represent an adverse interest to the Debtors and is disinterested as such term is defined in

the Bankruptcy Code.  Under the circumstances, it is impossible for an entity such as EY LLP that is simultaneously representing both the Debtors as well as certain of the Consenting Shareholders to make such a demonstration here and thus, the Court should deny the Application as EY LLP cannot meet the requirements of the Bankruptcy code for the retention of a professional.

As discussed above, the Court should reject any argument raised by the Debtors that it would be costly and inefficient to retain a new auditor at this juncture where EY LLP has been performing services for the Debtors for a number of years and is familiar with its businesses. The Bankruptcy Code requirements governing the retention of professionals who hold or represent an interest adverse does not contain an efficiency exception and thus, such argument should be promptly denied.

WHEREFORE, the U.S. Trustee respectfully requests that the Court sustain his objection, deny the retention of EY LLP and grant such other relief as is just and proper.

Dated:  New York, New York
          November 15, 2019

                                          Respectfully submitted,

                                          WILLIAM K. HARRINGTON
                                          UNITED STATES TRUSTEE, Region 2

                                          By: */s/ Brian S. Masumoto*
                                          Brian S. Masumoto
                                          Trial Attorney
                                          201 Varick Street, Room 1006
                                          New York, New York 10014
                                          Tel. (212) 510-0500