DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**REPLY OF DEBTORS IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY ERNST & YOUNG AS ITS AUDITOR, *NUNC PRO TUNC* TO THE PETITION DATE**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") respectfully submit this reply (the "**Reply**") to the objection (the "**Objection**") of the United States Trustee (the "**U.S. Trustee**") [Docket No. 485] to the *Debtor's Application to Employ Ernst & Young as Its Auditor, Nunc Pro Tunc to the Petition Date* [Docket No. 432] (the "**Application**"),[2] and respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Except where otherwise indicated, capitalized terms used but not defined in this Reply have the meanings ascribed

1

#92634710v14

**Preliminary Statement**

1. The Debtors seek to retain Ernst & Young LLP ("**E&Y**") to perform the following tasks, as described in greater detail in the form of engagement letter appended to the Application:

   - Finalize the audit of the Debtors' 2018 consolidated financial statements, which is substantially complete;
   - Audit the Debtors' 2019 consolidated financial statements; and
   - Audit and report on the financial statements of certain 401(K) and pension plans for which certain Debtors act as sponsors.

2. The U.S. Trustee insists E&Y may not be retained by the Debtors to perform this audit work—and that the estates must bear the additional cost and delay of retaining a different auditor—because E&Y and other member firms of Ernst & Young Global Limited ("**EYGL**") provide auditing and related services[3] to shareholders of the Debtors and to certain trusts and entities affiliated with shareholders of the Debtors (the "**Shareholder Entities**"). The U.S. Trustee argues that E&Y has a conflict of interest because it "would have signed off on many of the same transactions which will be probed in these cases" given that the resolution of claims asserted by the Debtors against their shareholders and the Shareholder Entities will be an important element of these cases. Obj. 8.

3. As is made clear in the cases cited by the U.S. Trustee in its Objection, the standard for a disqualifying adverse interest is one that would "cause the professional to act any differently

---

to them in the Application.

[3] E&Y has supplemented the *Declaration of Devon M. Brady in Support of the Debtor's Application for Order Authorizing Retention and Employment of Ernst & Young LLP as Its Auditor, Nunc Pro Tunc to the Petition Date* [Docket No. 432] (the "**Initial Declaration**") by filing the *Supplemental Declaration of Devon M. Brady in Further Support of Debtor's Application for Order Authorizing Retention and Employment of Ernst & Young LLP as Its Auditor, Nunc Pro Tunc to the Petition Date* (the "**Supplemental Declaration**") contemporaneously herewith to clarify that such services provided by E&Y include audit and agreed-upon procedures services, tax advisory services, tax compliance services, and e-discovery and data collection services, and describe in detail the services provided by other member firms of EYGL as well. Supplemental Declaration ¶¶ 3-4. A draft of the Supplemental Declaration substantially similar to the filed version was shared with the U.S. Trustee prior to the filing of the Objection.

2

than they would without that other representation," and a "disabling adverse interest arises where a professional has 'a meaningful incentive, or the perception of one, to act contrary to the interests of the estates.'" Obj. 6-7 (quoting *In re Enron*, No. 01-16034, 2002 WL 32034346, at *1, *8 (Bankr. S.D.N.Y. May 23, 2002) and *In re Granite Partners, L.P.*, 219 B.R. 22, 36 (Bankr. S.D.N.Y. 1998)). Section 327(c) of the Bankruptcy Code also specifically provides that a court shall disapprove the employment of a professional on account of representation of a creditor only "if there is an actual conflict of interest." The U.S. Trustee offers that the appropriate standard for evaluating whether an actual conflict of interest exists is whether there is "an active competition between two interests, in which one interest can only be served at the expense of the other." Obj. 7 (citing *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002)).

4.  The U.S. Trustee has not articulated how E&Y or other member firms of EYGL performing audit, tax and related services for the Shareholder Entities would give E&Y an incentive to "act differently" in performing auditing services for the Debtors for the 2018 and 2019 tax years. Nor has the U.S. Trustee attempted to demonstrate that E&Y has a competing interest that can only be served by failing to faithfully perform auditing services with respect to the Debtors' 2018 and 2019 fiscal years. In fact, E&Y has no actual conflict that would influence the manner in which it would provide these routine auditing services to the Debtors.

5.  Notably, no economic party in interest, including the Official Committee of Unsecured Creditors or any of the ad hoc creditor groups, has objected to E&Y's retention. These groups have every incentive to ensure that no professional serving the estates is compromised in its work by an entanglement with the Debtors' shareholders and that the Debtors' rights against the shareholders are zealously protected yet none has raised any concerns that E&Y might be so compromised.

#92634710v14

6.      Importantly, the Debtors and their professionals will not seek E&Y's advice regarding whether to pursue, or strategically how to pursue, any potential litigation claims the Debtors may have against the shareholders and the Shareholder Entities. Although E&Y has audited transactions between Purdue and the shareholders and/or the Shareholder Entities in its previous audits, the scope of E&Y's go-forward engagement by the Debtors and the services E&Y is proposed to render during these chapter 11 cases will not include reviewing transactions between the Debtors and the Shareholder Entities outside the scope of the 2018 and the 2019 audits, and the Debtors will not rely on E&Y in their analysis of any claims against the Debtors' shareholders or the Shareholder Entities. The Debtors, with the assistance of AlixPartners, PJT, Davis Polk and other professionals, have spent and will continue to spend countless hours conducting a thorough review of transactions related to past distributions from the Debtors to the Shareholders Entities. E&Y has not been, and will not be, involved in such review.

7.      Accordingly, the retention of E&Y by the Debtors to provide the auditing services described in the Application should be approved.

## Reply

**E&Y's Retention by the Debtors Does Not Present a Conflict of Interest**

8.      As discussed above, the Debtors seek to retain E&Y to perform auditing services relating to the 2018 and 2019 fiscal years. As described in the *Supplemental Declaration of Devon M. Brady in Further Support of Debtor's Application for Order Authorizing Retention and Employment of Ernst & Young LLP as Its Auditor, Nunc Pro Tunc to the Petition Date* (the "**Supplemental Declaration**")[4] submitted contemporaneously herewith, the same E&Y engagement team that performs audit services to the Debtors also performs audit services for One

---

[4] A draft of the Supplemental Declaration substantially similar to the filed version was shared with the U.S. Trustee prior to the filing of the Objection

4

#92634710v14

Stamford Realty LP ("**OSR**"), which is a Shareholder Entity and the owner of the property in which the Debtors' headquarters are located. Additionally, separate E&Y audit teams provide professional services for Shareholder Entities in the United States. Those services include audit and agreed-upon procedures services, tax advisory services, tax compliance services, and e-discovery and data collection services. Other member firms of EYGL perform services for various shareholders and Shareholder Entities outside of the United States.

9. The Debtors were fully aware of these separate arrangements when they sought the authority to retain E&Y. The Debtors determined that there was no plausible mechanism by which E&Y's provision of services to the Shareholder Entities would alter how E&Y would perform auditing services for the Debtors for the 2018 and 2019 tax years as contemplated by the engagement letter, or otherwise compromise E&Y's judgment or independence in providing these services.

**E&Y's Retention Should Be Approved Because E&Y Has No Meaningful Incentive to Act Contrary to the Interests of the Debtors' Estates**

10. Section 327(a) of the Bankruptcy Code provides that a debtor may be authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code provides in relevant part that a "disinterested person" is a person that "does not have an interest materially adverse to the interest of the estate… by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 104(14). "Courts have noted that the materially adverse interest standard incorporated into the definition of disinterestedness under [section 101(14)] and the 'interest adverse to the estate' language in section 327(a) overlap and are duplicative, forming a single test to judge conflicts." *In re WorldCom, Inc.*, 311 B.R. 151, 164 (Bankr. S.D.N.Y. 2004).

5

#92634710v14

11. The Second Circuit has explained that "[w]hen evaluating proposed retention, a bankruptcy court should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision." *In re AroChem Corp.*, 176 F.3d 610, 621 (2d Cir. 1999). "Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding." *Id* (quoting *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992)); *see also In re Innomed Labs, LLC*, 2008 WL 276490, at *2 ("Whether an adverse interest exists is a determination that must be made on a case-by-case basis.").

12. "Stated another way, if it is plausible that the representation of another interest may cause the professional to act any differently than they would without that other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification." *In re Enron Corp.*, 2002 WL 32034346, at *8 (Bankr. S.D.N.Y. May 23, 2002), *aff'd*, 02 CIV. 5638 (BSJ), 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003). *See also In re Granite Partners, L.P.*, 219 B.R. at 33 ("[T]he professional has a disabling conflict if it has either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.") (internal quotations omitted).[5]

---

[5] In addition, in the formulation in *Enron*, the U.S. Trustee alternatively cites the standard for an adverse interest as one "that would even faintly color the independence and impartial attitude." Obj. 6. However, that standard has been criticized as part of a "not necessarily all that consistent" application of section 327(a) and one grounded in mere dicta in a case involving "deep and undisclosed conflicts." *In re Relativity Media, LLC*, 2018 WL 3769967, at *2 (Bankr. S.D.N.Y. July 6, 2018).

6

#92634710v14

13. Any alleged adverse interest must be more than hypothetical. "An interest is not considered adverse simply because it is possible to conceive of a situation where interests might clash." *In re WorldCom, Inc.*, 311 B.R. at 168 (citing *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994)). Notably, *WorldCom* involved a situation where the prepetition work of the auditor retained by the Debtors was challenged, which the court held did not preclude the Debtors' retention of the auditor. *Id.* Other decisions have similarly rejected a standard of disqualification based on speculation. *See In re Martin*, 817 F.2d 175, 183 (1st Cir. 1987) ("[H]orrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in sending counsel away to lick his wounds."); *TWI Intern., Inc. v. Vanguard Oil and Service Co.*, 162 B.R. 672, 675 ("[M]erely hypothesizing that conflicts may arise is not sufficient basis to warrant the disqualification.") (internal quotations omitted).

14. Courts have recognized that a debtor is entitled to "wide latitude in selecting his or her professionals." *In re Diva Jewelry Design, Inc.*, 367 B.R. 463, 477 (Bankr. S.D.N.Y. 2007). Accordingly, "disqualification [is a] drastic measure that should be avoided unless absolutely necessary." *In re Best Craft Gen. Contractor & Design Cabinet, Inc.*, 239 B.R. 462, 470 (Bankr. E.D.N.Y. 1999).

15. Careful consideration of the "particular facts and circumstances" of the current situation, as called for by *AroChem*, demonstrates that E&Y's retention meets the standard set forth in section 327(a). The U.S. Trustee does not address how E&Y's audit of past transactions with the shareholders and Shareholder Entities might possibly impair or impact in any way its auditor independence or its ability to provide go-forward auditing services. Mere speculation about the results of an examination of an auditor's past work was determined to be insufficient to disqualify the auditor in *WorldCom*. Notably, the Objection does not contain any specific

7

allegation that E&Y will, or any specific reason it plausibly might, act any differently in conducting audits of the 2018 and 2019 financial statements due to its or other member firms of EYGL's prior or current engagement by shareholders or other Shareholder Entities. *See Enron Corp.*, 2002 WL 32034346, at *8. Because no plausible true conflict has been raised, the Debtors' retention of E&Y to provide the 2018-2019 auditing services specified in the engagement letter should be approved under section 327(a).

**E&Y Should Not Be Disqualified from Retention under the "No Actual Conflict of Interest" Standard Set Forth in Section 327(c).**

16. Section 327(c) of the Bankruptcy Code provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). "Section 327(c) expresses the recognition that a prospective professional for a trustee may, fully consistent with the Code, have represented, or even continue to represent, one or more creditors. Section 327(c) requires, instead, once more by its express terms and plain language, inquiry into whether there is an actual conflict of interest." *In re Diva Jewelry Design, Inc.*, 367 B.R. at 470. Although section 327(c) refers to representation of a "creditor," courts have also held that concurrent representation of a debtor and its shareholders is not disqualifying. *See In re Innomed Labs, LLC*, 2008 WL 276490, at *6–7 (S.D.N.Y. Jan. 29, 2008).

17. Under section 327(c), only an actual conflict, rather than a potential conflict, is disqualifying. "Congress made [a distinction between actual and potential conflicts] in 327(c) and so must the Court when applying that provision." *In re Ampal-Am. Israel Corp.*, 534 B.R. 569, 581 (Bankr. S.D.N.Y. 2015), *aff'd*, 554 B.R. 604 (S.D.N.Y. 2016), *aff'd*, 691 F. App'x 12 (2d Cir. 2017). "An actual conflict of interest is 'an active competition between two interests, in which one

interest can only be served at the expense of the other.'" *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) (quoting *In re Diva Jewelry Design, Inc.*, 367 B.R. at 472); *see also In re Granite Partners, L.P.*, 219 B.R. at 33 (Bankr. S.D.N.Y. 1998) ("An actual conflict involves the representation of 'two presently competing and adverse interests,' while a potential conflict occurs where the competition 'may become active if certain contingencies arise.'").

18.    The U.S. Trustee cites section 327(c) and acknowledges that an actual conflict of interest, meaning "an active competition between two interests, in which one interest can only be served at the expense of the other," is required for disqualification under section 327(c). Obj. 7 (quoting *In re Mercury*, 280 B.R. at 54). However, the U.S. Trustee goes on to argue that E&Y "[s]uffers from a **[p]otential** [c]onflict of [i]nterest." Obj. 7 (emphasis added). Under the plain language of section 327(c), a potential conflict of interest—particularly one unsupported by any specific examples of how the alleged conflict might actually affect the professional's judgment or efforts on behalf of the debtor—is not disqualifying.

19.    This result is appropriate given that no party has articulated any way in which E&Y is or might be incentivized to conduct its audits of the 2018 and 2019 financial statements any differently merely because it or other member firms of EYGL are also providing audit, tax and other services to shareholders or Shareholder Entities. In fact, there is no such conflict—actual or potential. There is no party that would benefit from any result other than the relevant audits of the Debtors being performed properly and in the most timely and cost-efficient manner possible. That is the goal of the Debtors in seeking to retain E&Y to provide such services. Accordingly, E&Y has no actual or potential conflict of interest, so E&Y should not be disqualified from being retained by the Debtors pursuant to the standard set forth in section 327(c).

#92634710v14

**Replacing E&Y as Auditor Would Unduly Burden the Debtors' Estates**

20.     Replacing E&Y as the Debtors' auditor would come with substantial costs. As set forth in the Application, E&Y has substantially completed the 2018 audit and estimates that the cost of finalizing the work will be about $20,000. It would cost many multiples of that number, and cause substantial delay, were the Debtors to retain a new auditor to completely redo the 2018 audit. With respect to 2019, E&Y has the benefit of years of experience working for the Debtors, and a new auditor would have to spend a substantial amount of time getting up to speed.

21.     Moreover, a completed audit report on the financial statements of certain 401(k) and pension plans that are sponsored by certain Debtors was required to be included with certain Form 5500 filings on October 15, 2019. Prior to the Petition Date, E&Y had performed substantial work on such audit reports, but was unable to complete and issue final executed reports because of the commencement of these cases by the Debtors. E&Y cannot finalize this work, and the Debtors cannot submit the required audit reports to complete its deficient Form 5500 filings, unless and until E&Y's retention is approved by the Court. The Debtors understand that they may receive deficiency letters from the Department of Labor and/or the IRS with respect to this issue. The DOL and the IRS may both assess the Debtors with penalties, which from the DOL may be as high as $1,100 per day, with no maximum, if the Debtors do not submit the required audit reports within 45 days after the receipt of such letter.

22.     If the Debtors are forced to retain a new auditor, it may not be a simple process for them to do so, as the U.S. Trustee appears to assume. For example, existing and prospective providers of banking services to the Debtors have refused to do business with the Debtors in several cases, and the difficulties with finding appropriate services has presented a risk factor to the Debtors' business operations that has caused the Debtors to incur additional expenses and diverted

#92634710v14

significant management attention. Affiliates of the Shareholder Entities have similarly had difficulties employing investment banking and other services. Finding and retaining new auditors who are not employed by any of the many parties in interest in these proceedings, have the skills necessary to provide the services that the Debtors require and are willing work with the Debtors would be a challenging task of unknown complexity and duration.

23.     While the U.S. Trustee is correct that these economic considerations should not be the basis for the Court approving the retention of a conflicted professional, for the reasons stated above, the Debtors do not believe there is any such disqualifying conflict. In this light, the Debtors believe that the economic considerations cannot be ignored.

[*Remainder of Page Intentionally Left Blank*]

The Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A to the Application, granting the relief requested in the Application and such other and further relief as the Court deems just and proper.

Dated:   New York, New York
           November 18, 2019

By:  */s/ Eli J. Vonnegut*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors*
*and Debtors in Possession*