DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DEBTORS' REPLY TO THE OBJECTION OF UNITED STATES TRUSTEE TO
DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND
RETENTION OF DAVIS POLK & WARDWELL LLP, SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP AND WILMER CUTLER PICKERING HALE AND DORR LLP
AS ATTORNEYS FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") hereby file this

reply (the "**Reply**") to the objection (the "**Objection**") of the United States Trustee (the "**U.S.**

**Trustee**") [Docket No. 465] to the (i) *Application of Debtors for Authority to Retain and Employ*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Davis Polk & Wardwell LLP* ("**Davis Polk**") *as Attorneys for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 419]; (ii) *Application of Debtors for Authority to Retain and Employ Wilmer Cutler Pickering Hale and Dorr LLP* ("**WilmerHale**") *as Special Counsel Nunc Pro Tunc to the Petition Date* [Docket No. 428]; and (iii) *Application of Debtors for Authority to Retain and Employ Skadden, Arps, Slate, Meagher & Flom LLP* ("**Skadden**") *as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 438] (collectively, the "**Applications**" and Davis Polk, WilmerHale and Skadden collectively, the "**Professionals**"), and respectfully state as follows:

## Preliminary Statement

1.      The U.S. Trustee's Objection to the Professionals' Applications is limited to a single issue, which is the request of these three firms to hold evergreen retainers for the duration of the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").  The U.S. Trustee does not otherwise oppose the Professionals' retention, and no other party in interest has objected on any ground.

2.      The Debtors believe that it is appropriate for the Professionals to hold retainers throughout these Chapter 11 Cases in accordance with their respective engagements.  Contrary to the U.S. Trustee's assertions, there is ample authority supporting the Professionals' requests, which are entirely reasonable based on the facts and circumstances of this matter.

3.      As set forth in the Applications and the declarations submitted in support therewith, prior to September 15, 2019 (the "**Petition Date**"), the Debtors provided each of the Professionals with advance payments to establish and maintain retainers (the "**Retainers**").  The current balance of the Retainers held by Davis Polk, Skadden, and WilmerHale is approximately $5,115,859.35, $2,500,000.00 and $250,000.00, respectively.

4.      The U.S. Trustee cites three "precedents" (providing only case numbers), each ten years old, for the proposition that retained professionals in this District always draw down on their prepetition retainers upon the court's approval of the professional's first interim fee application.  There is in fact no such hard-and-fast rule, and many professionals appropriately hold retainers, as detailed below.  Courts in this District will consider such a request in light of the facts and circumstances of the case.  Some other courts, including those cited by the U.S. Trustee in its Objection, look at a number of specific factors when considering a request to hold a retainer, including the existence of other risk-minimizing devices.  Here, there is no "carve-out," superpriority claim, or similar protection—which are present in virtually all large chapter 11 cases.  Moreover, the Retainers are appropriate, given that, unlike most of the Debtors administrative creditors, who have deposits, letters of credit, COD policies, or tightened trade terms, the Professionals are forced to provide very extended trade terms and will have millions of dollars of unpaid fees at any given time due to the fee payment procedures required under the Bankruptcy Code and applicable guidelines and court orders.  Indeed, no other counterparty is currently extending to the Debtors the trade terms that result from the interim compensation procedures.  The Debtors respectfully submit that the Objection should be overruled.

## The Retention Application

5.      Since March 2018, Davis Polk has advised the Debtors on a wide variety of matters and has performed services necessary to enable the Debtors to file for protection under chapter 11.   Davis Polk has been primarily responsible for the Debtors' preparation, filing, and prosecution of the Chapter 11 Cases and many related matters.  Skadden began performing legal work for the Debtors in 2013 in connection with government investigations and complex and material litigation matters.  Beginning in 2017, WilmerHale was engaged by the Debtors with

3

respect to ongoing Congressional inquiries. The Debtors and the Professionals are each sophisticated business entities that, after negotiating at arm's length, agreed to retention terms as set forth in the Applications.

6.      The terms of each Retainer were clearly delineated in the Applications. Sufficient notice of the terms of the Retainers, as openly set forth in each Application, was given.

### The Retainer is Reasonable and Appropriate

7.      The U.S. Trustee has objected to the Retainers on the grounds that the Professionals should not be permitted to hold the Retainers through the conclusion of the Chapter 11 Cases. This Objection should be overruled because: (i) the Retainers are an appropriate and well-recognized form of security for professionals in chapter 11 cases; (ii) retainers of this nature have routinely been approved or otherwise stayed in place in other cases in this jurisdiction and others; (iii) the very purpose of the Retainers in this case will be undermined, if not entirely vitiated, if the Professionals are required to apply the Retainers at the outset of these cases; (iv) not a single creditor or other economic stakeholder has objected to the Retainers; (v) to the extent applicable, the relevant factors that courts consider in approving "evergreen" retainers are unequivocally satisfied in these Chapter 11 Cases; and (vi) there is no reason that Professionals should be forced to operate under terms worse than all other administrative creditors.

8.      Professional retainers are expressly contemplated by the Bankruptcy Code. *See* 11 U.S.C. § 328(a) (authorizing employment of professionals "on a retainer"). Contrary to the position that the U.S. Trustee has advocated in its Objection, there is nothing in any statute or case law that mandates that retainers be applied at the outset of a case. As with other elements of compensation, reasonableness is the benchmark by which a retainer should be judged. *See generally In re XO Commc'ns, Inc.*, 398 B.R. 106, 113 (Bankr. S.D.N.Y. 2008). It is simply not

the case that all retained professionals in cases pending in the Southern District of New York "draw down on the pre-petition retainer upon the Court's approval of the professional's first interim fee application."  Obj. at p. 5.

9.      Indeed, contrary to the U.S. Trustee's assertions, courts in this District routinely approve retainers similar to those proposed here.  *See, e.g., In re Barney's,* Case No. 19-36300 (CGM), Docket Nos. 175, 269 (Bankr. S.D.N.Y. Sept. 19, 2019) (retention application ¶ 15, fn. 8; retention order ¶ 5) ("In light of the facts and circumstances of these chapter 11 cases, [counsel] will retain any prepetition advance payment retainer [$2,296,278.67] held by [counsel] as of the Petition Date and will not apply any such amounts to postpetition fees and expenses;" and ordered that debtors' counsel "is authorized without further order of the Court to reserve and apply amounts from the prepetition advance payment retainer that would otherwise be applied toward payment of postpetition fees and expenses."); *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD), Docket Nos. 344, 604 (Bankr. S.D.N.Y. Oct. 16, 2018) (retention application ¶ 15; retention order) (authorizing counsel to apply $3.44 million fee advance to any prepetition amounts not processed through counsel's internal billing system prior to commencement but not directing application of such advance in respect of postpetition fees incurred); *In re CIT Group, Inc.*, No. 09-16565 (ALG), Docket No. 206 (Bankr. S.D.N.Y. Dec. 21, 2009) (retention order ¶ 5) (authorizing counsel to hold "a postpetition evergreen retainer to be applied against any amounts approved by the Court in connection with any … final fee application in these cases"); *In re Cabrini Med. Ctr.*, No. 09-14398 (AJG), Docket No. 323 (Bankr. S.D.N.Y. Mar. 29, 2010) (second interim fee application ¶ 28) (indicating that "[p]ursuant to its engagement letter and the Retention Order … the balance of the retainer is being held in escrow until [counsel] is paid for all of its post-petition fees and expenses at the conclusion of this case"); *In re Saint Vincents*

*Catholic Medical Center of New York*, Case No. 05-14945 (CGM), Docket No. 573 (Bankr. S.D.N.Y. July 2, 2010) (overruling the United States Trustee's objection and approving evergreen retainer); *In re BearingPoint, Inc.*, No. 09-10691 (REG), Docket Nos. 1207, 1695 (Bankr. S.D.N.Y. Aug. 14, 2009 and Mar. 1, 2010) (first interim fee application ¶ 12; final interim fee application ¶¶ 7, 15) (first interim fee application indicating that counsel would retain retainer "and apply it towards any amounts owing as of the final fee applications considered by the Court," and final fee application indicating that retainer had been so held); *In re Mark IV Indus., Inc.*, No. 09-12795 (SMB), Docket No. 166 (Bankr. S.D.N.Y. May 28, 2009) (retention order ¶ 3) (authorizing counsel to hold a portion of retainer remaining after satisfaction of prepetition charges and apply it against final fee application); *In re Lenox Sales, Inc.*, No. 08-14679 (ALG), Docket Nos. 603, 711 (Bankr. S.D.N.Y. Sept. 15, 2009 and Feb. 16, 2010) (second interim fee application ¶ 12; final interim fee application ¶¶ 7, 15) (second interim fee application indicating that counsel would hold retainer "and apply it towards any amounts owing as of the final fee applications considered by the Court," and final interim fee application indicating that retainer had been so held); *In re Our Lady of Mercy Med. Ctr.*, 07-10609 (REG), Docket No. 333 (Bankr. S.D.N.Y. Aug. 30, 2007) (first interim fee application ¶ 45) (noting that "[p]ursuant to its engagement letter and the Retention Order, the balance [of the retainer] is being held in escrow until [counsel] is paid for all of its post-petition fees and expenses at the conclusion of these cases").   Courts in other Districts likewise frequently approve requests to hold evergreen retainers.  *See, e.g.*, *In re PES Holdings*, Case No. 19-11626 (KG) (Bankr. D. Del. July 21, 2019) (approving evergreen retainer); *In re Edgemarc Energy Holdings*, No. 19-11104 (BLS) (Bankr. D. Del. May 23, 2019) (same); *In re Payless Holdings LLC*, Case No. 19-40833 (Bankr. E.D. Mo. Feb. 19, 2019) (same); *In re Gibson Brands, Inc.* No. 18-11025 (CSS)

(Bankr. Del. June 11, 2018 (retention order) (approving evergreen retainer over U.S. Trustee's objection); *In re EXCO Resources*, No. 18-30155 (MI) (S.D. Tex. Bankr. Feb. 22, 2018) (retention order ¶ 6) (ordering "remaining retainer shall be treated as an evergreen retainer"); *In re Insilco Techs., Inc.*, 291 B.R. 628, 636 (Bankr. D. Del. 2003) (approving "evergreen" retainer for debtors' professionals, which the court defined as a retainer that is "held intact until the end of the case"); *In re Pan Am. Hosp. Corp.*, 312 B.R. 706, 710 (Bankr. S.D. Fla. 2004) (authorizing evergreen retainer of this type); *In re Benjamin's-Arnolds, Inc.*, 123 B.R. 839, 840 (Bankr. D. Minn. 1990) (approving evergreen retainer of this type).

10.     While the "reasonableness" standard is the applicable standard for approval of compensation in this Circuit, the request is also justified under the five-factor test articulated by the court in *Insilco* for the approval of evergreen retainers, which the U.S. Trustee cites in its Objection.   In *Insilco*, Judge Carey rejected a bright-line approach to evergreen retainers, noting that they must be tailored to the particular circumstances of the case.  The five-factor test—while not binding on this Court—is instructive.

    i.    *Factor 1*: Whether the terms of an engagement agreement reflect normal business terms in the marketplace:

- As evidenced by the many requests to hold retainers during the pendency of chapter 11 cases granted by courts in this and other Districts, retainers of this nature are a normal feature of professional retentions in the bankruptcy context.

    ii.    *Factor 2*: The relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arm's-length negotiation:

- The Debtors and the Professionals are sophisticated business entities who engaged in an arm's-length negotiation of the Retainers.

    iii.    *Factor 3*: Whether the retention, as proposed, is in the best interests of the estate:

7

- The retention is in the best interests of the Debtors' estates. Significantly, neither the U.S. Trustee nor any other party in interest in these cases has contested the skill or expertise of the Professionals. Additionally, as set forth in the Applications, the Professionals are intimately familiar with the Debtors' businesses and many of the legal issues of the Chapter 11 Cases. The Professionals have extensive experience, and are well qualified and uniquely suited to represent the Debtors in the Chapter 11 Cases in an efficient and timely manner. And the Debtors have over $1 billion of cash and are not liquidity restrained.

iv.  *Factor 4*:  Whether there is creditor opposition to the retention and retainer provisions:

- There is none, which speaks volumes.

v.  *Factor 5*: Whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization" especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out:

- Atypically, there is no debtor-in-possession financing or cash collateral order and therefore no "carve-out," superpriority claim or other traditional device minimizing the Professionals' exposure. Given the lack of those common protective elements, and in light of the modest size of the evergreen retainers in relation to the size of the Chapter 11 Cases, the Debtors' cash balance and the monthly fees of the Professionals, the Debtors believe that the Retainers provide the Professionals with an appropriate level of protection and are reasonable under the circumstances. Moreover, the U.S. Trustee's unsupported suggestion that evergreen retainers are seemingly appropriate only in the District's single largest case (*see* Obj. at p. 7) is unsupported by case law and without reason. The Debtors are a multibillion dollar enterprise and the issues to be addressed in these Chapter 11 Cases are novel and exceedingly complex.

*Insilco,* 291 B.R. at 634.

11.    To be clear, *Insilco* is not binding precedent on this Court, nor, for that matter, is the 31-year-old cherry-picked case from the Ninth Circuit Bankruptcy Appellate Panel, *U.S. Trustee v. Knudsen Corp. (In re Knudsen Corp.)*, 84 B.R. 668 (B.A.P. 9th Cir. 1988), or the 15-year-old case from the Southern District of Florida, *In re Pan Am. Hosp. Corp.*, 312 B.R. 706 (Bankr. S.D. Fla. 2004), that the U.S. Trustee offers as describing certain factors that

professionals must satisfy in order to hold retainers.  Notably, in all three cases those courts <u>approved</u> evergreen retainers and would have approved those at bar as well.

12.     Further, and contrary to the U.S. Trustee's contention that the evergreen retainer provides "an unfair monetary advantage" is wrong.  In fact, without the Retainers (and at various points in time even with them) the Professionals are in fact in a materially *worse* position than the overwhelming majority of the Debtors' other administrative creditors.  Some of the Debtors' vendors hold security deposits, letters of credit or other support, and virtually all are being paid on terms far more favorable than the Professionals.  As no creditor extends the Debtors more than the roughly 75-day trade terms that result from the interim compensation procedures, without the Retainers, the Professionals would be the single most disfavored administrative creditors in these Chapter 11 Cases.  Under the proposed interim compensation procedures, on file at Docket No. 434, the Professionals will file monthly fee applications on or before the end of the month following the month for which compensation is sought.  The fees requested in such application cannot be paid until the subsequent 14-day review period has passed, and even then, only 80% of the accrued fees may be paid at that time.  The other 20% is held back pending approval of an interim fee application, which applications are filed at no earlier than four-month intervals.  As a result, each Professional will likely have as much as or more than two-and-a-half months of accrued and unpaid fees (i.e., 75 days) outstanding at many points during these cases and possibly more depending on hearing schedules.  In other words, the Professionals are uniquely providing extended credit to the Debtors at any given time in amounts that much or all of the time far exceed each Professional's Retainer.  The Retainers do not give the Professionals an "unfair monetary advantage" over other administrative creditors.  Rather, they mitigate, only

in part, the material disadvantage imposed on them by chapter 11 payment mechanics compared to other administrative creditors.

13.     The U.S. Trustee further argues that the Professionals are being treated more favorably *than other professionals* in the Chapter 11 Cases because only they hold Retainers. All professionals were positioned to negotiate the terms of their engagements, including the existence and amount of any retainer. That these Professionals bargained for the Retainers while others did not has no relevance. By analogy, as this Court is aware, in almost every large chapter 11 case, certain of a debtor's utility providers (or any other category of counterparty, for that matter) negotiate prepetition for security deposits. The Debtors are not aware of any instance in which the U.S. Trustee or other utility providers without a deposit argued that any utilities with deposits or tighter trade terms must give them back to put all utilities on even footing. Likewise, there is no basis for other professionals to argue that the Professionals must give back the Retainers. And, of course, no professional or any other creditor has raised any such argument.

[*Remainder of page intentionally left blank.*]

The Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit C to each Application, granting the relief requested in the Applications and such other and further relief as the Court deems just and proper.

Dated:    November 18, 2019
          New York, New York

                              DAVIS POLK & WARDWELL LLP

                              By:  /s/ *Marshall S. Huebner*

                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile:  (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              Timothy Graulich
                              Eli J. Vonnegut

                              *Proposed Counsel to the Debtors*
                              *and Debtors in Possession*