PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew M. Troop
31 West 52nd Street
New York, New York 10019
212-858-1000

*Counsel to the Ad Hoc Group of Non-Consenting States*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*,[1] <br> Debtors. | Case No. 19-23649 (RDD) |
| | (Jointly Administered) |
| | Hearing Date: December 4, 2019 <br> Hearing Time: 2:00 p.m. |

**STATEMENT OF THE AD HOC GROUP OF NON-CONSENTING
STATES MAINTAINING ITS OBJECTION TO PURDUE'S WAGE MOTION [ECF
DOCKET No. 6] INSOFAR AS IT RELATES TO PURDUE CEO CRAIG LANDAU**

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

The Ad Hoc Group of Non-Consenting States ("Non-Consenting States")[2] maintains its

objection [ECF Docket No. 197] to the motion filed by the Debtors (collectively, "Purdue")

seeking various forms of relief relating to employee wages and benefits [ECF Docket No. 6] (the

"Wage Motion") only insofar as it seeks authority to make payments under certain incentive

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, and Wisconsin.

1

compensation programs to Craig Landau ("Landau"), Purdue's current Chief Executive Officer and a named defendant in multiple law enforcement actions subject to this Court's *Third Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Proc. Docket No. 115].[3]

In further support of this filing, the Non-Consenting States respectfully state as follows:

1. On September 15, 2019, Purdue filed its Wage Motion.[4] The United States Trustee filed an Objection to the Wage Motion [ECF Docket No. 134] ("UST Objection"). The Non-Consenting States [ECF Docket No. 197] and the Commonwealth of Pennsylvania ("Pennsylvania") [ECF Docket No. 196] each filed an objection to the Wage Motion, adopting, in significant part, the UST Objection.

2. To date, the Court has approved on a final basis, without objection from the Non-Consenting States and Pennsylvania, several aspects of the Wage Motion, other than those portions of the Wage Motion relating to the following programs – the Annual Incentive Plan, the Long Term Results Plan and the Sign-On Bonuses (collectively, the "Bonus Programs"). In their October 8, 2019, Omnibus Reply in Support of the Wage Motion [ECF Docket No. 235], Purdue proposed deferring its request for authority to make payments under the Bonus Programs to enable parties to undertake diligence on the Bonus Programs under less time pressure, and at the October 10, 2019 hearing on the Wage Motion, Pennsylvania and the Non-Consenting States agreed to the Debtors' proposal and expressly requested the same access to diligence information ("Diligence Information") concerning the Bonus Programs as that provided to the Official Committee of

---

[3] On November 22, 2019, the Non-Consenting States requested the Debtors' agree to continue to December 19, 2019, the portion of the Wage Motion seeking authority to make payments under the Bonus Programs to Landau. Purdue refused to agree to the continuance and instead continued the objection deadline to December 2, 2019 at 4:00 p.m.

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Wage Motion.

2

Unsecured Creditors (the "Creditors' Committee") and the Ad Hoc Committee of Consenting States.

3. Obtaining access to the Diligence Information proved difficult and time-consuming. About a month after the October 10 hearing, on November 12, 2019, Purdue agreed to provide two of the Non-Consenting States access to a view-only platform containing certain Diligence Information. Even then, however, the Non-Consenting States were unable to view the Diligence Information due to technical challenges imposed by Purdue's view-only platform. Purdue and the Non-Consenting States resolved these technical difficulties a week later on November 19, 2019, and review of the extensive Diligence Information commenced—a process protracted by the security protocols associated with the view-only platform.[5]

4. As a result of that review and subject to Purdue's agreement to reduce the payments due under the Bonus Programs,[6] at this time, the Non-Consenting States and Pennsylvania maintain their objection only as it relates to Landau.

5. The Non-Consenting States remain unwilling to withdraw their objection as it relates to Landau for two principal reasons: first, because Landau is a named defendant in lawsuits initiated by multiple states seeking to hold him personally liable for his participation in Purdue's deceptive scheme to get more and more people on Purdue's dangerous drugs, at higher and more dangerous doses, for longer and more harmful periods of time; and second, because certain modifications were made to the terms of Landau's employment contract in preparation for the filing of this case. These modifications significantly increased potential payouts to Landau under the Bonus Programs, perhaps to circumvent the restrictions set forth in 11 U.S.C. § 503(c).

---

[5] Counsel for the Non-Consenting State Group was provided access to the same Diligence Information around the same time and encountered the same technical difficulties gaining access to that data.

[6] *See* Second Supplemental Decl. of John Lowne at ¶¶ 58-73 [ECF Docket No. 554] (describing the proposed changes and their expected financial impact).

3

6. Purdue should not award bonus payments to Landau before resolving the allegations that Landau committed deadly, illegal misconduct.

7. By September 18, 2019, Landau had been accused of life-threatening misconduct in lawsuits by Colorado; Massachusetts; the City of Waynesboro, Virginia; Cumberland County, Virginia; Patrick County, Virginia; Shenandoah County, Virginia; the City of Lock Haven, Pennsylvania; and more than a hundred hospitals in Alabama, Arizona, Kentucky, Tennessee, Texas, and West Virginia. *See* ECF Docket No. 74-2 (Ex. B to Purdue's Adversary Complaint). Purdue and Landau may be aware of additional lawsuits and additional allegations against Landau since September.

8. For example, Colorado and Massachusetts allege that Landau is one of the chief architects and beneficiaries of Purdue's illegal marketing campaign. CO Compl. ¶¶ 28-30, 47; MA Compl. ¶ 160.[7] They allege that Landau knowingly and intentionally sent sales representatives to deceive prescribers about Purdue opioids and put patients at risk, including by:

- falsely blaming the dangers of opioids on patients instead of the addictive drugs;

- pushing opioids for elderly patients, without disclosing the higher risks;

- pushing opioids for patients who had never taken them before, without disclosing the higher risks;

- pushing opioids as substitutes for safer medications, with improper comparative claims;

- falsely assuring doctors and patients that reformulated OxyContin was safe;

- pushing doctors and patients to use higher doses of opioids, without disclosing the higher risks;

- pushing doctors and patients to use opioids for longer periods of time, without disclosing the higher risks; and

---

[7] True and correct copies of the state enforcement actions filed against Landau by Colorado and Massachusetts (the "State Enforcement Actions") are available at https://www.mass.gov/lists/state-lawsuits-against-purdue-pharma.

- pushing opioid prescriptions by doctors that Purdue knew were writing dangerous prescriptions.

MA Compl. ¶ 163; CO Compl. ¶¶ 30, 98, 194-195; 203, 230, 261-262, 267-268, 275, 279-286, 293-294, 302, 345-348, 358, 473, 486, 491, 493, 495, 503, 508-509, 532-533, 571, 578. Massachusetts further alleges that Landau knew and intended that: (i) the sales representatives would not tell prescribers the truth about Purdue's opioids; indeed, he knew and intended that these unfair and deceptive practices achieved their purpose by concealing the truth, MA Compl. ¶ 164; and (ii) prescribers, pharmacists, and patients would rely on Purdue's deceptive sales campaign to prescribe, dispense, and take Purdue opioids; securing that reliance was the purpose of the sales campaign. MA Compl. ¶ 165. Additionally, Colorado alleges that Landau received unlawful preferential transfers. CO Compl. ¶¶ 660-664.

9. The only court to have considered a state's allegations against Landau denied Landau's motion to dismiss. The court's rulings denying the motions to dismiss by Landau, every other individual defendant, and Purdue are attached as <u>Exhibit 1</u>.

10. Purdue should not seek Court authorization to pay Landau bonuses now, at the same time when Purdue has sought and obtained the voluntary cooperation of States and other plaintiffs and the assistance of the Court to shut down investigation and litigation of the serious allegations against Landau. *See, e.g.*, ECF Docket No. 97 (*The States' Supplemental Opposition and Commitment Regarding Purdue's Motion for a Preliminary Injunction*) (agreeing to pause litigation until at least December 19, 2019). At the last hearing before this Court on November 19, 2019, Purdue emphasized that the States' cooperation in pausing litigation has made this bankruptcy "materially less litigious." Hr'g Tr. at 16-17, Nov. 19, 2019. Purdue should not upset that arrangement by seeking Court approval for bonus payments to its CEO at the very time when Purdue has arranged to shield him from law enforcement actions seeking to prove he broke the law.

11. Similarly, Purdue has not demonstrated to the States, the Court, or the public that Purdue itself is acting to investigate the serious allegations against Landau. In many cases, a CEO accused of illegal conduct by multiple attorneys general would be subject to intense scrutiny by his own company and its Board of Directors. But Purdue has made no commitment that its own Special Committee of the Board is investigating Landau or has any plans to do so.

12. From the first day of this case, Purdue emphasized that it takes seriously the allegations of misconduct by the Sacklers. *See* Hr'g Tr. at 29, Sept. 17, 2019 ("This special committee which has full and exclusive delegated authority with respect to all Sackler facing issues has taken and will continue to take very seriously the allegations raised in various lawsuits around the country regarding the management of Purdue *by its owners*") (emphasis added); *id.* at 132 ("we will swear up and down in any form required that no payments will go to the Sacklers, we want to be very clear about that"). But Purdue has been silent about the similar allegations made in courts across the country against Landau, who continues to serve as Purdue's CEO. Colorado, Massachusetts, and scores of other plaintiffs allege that Landau was a key player in the Sacklers' illegal scheme.

13. Documents, which Purdue has not made public, confirm that Landau was at the center of the Sacklers' plans. For example, Massachusetts alleges that in 2017 Landau wrote a proposal (entitled "SACKLER PHARMA ENTERPRISE") that Purdue should take advantage of other companies' concerns about the opioid epidemic through an "opioid consolidation strategy" and become an even more dominant opioid seller "as other companies abandon the space." MA Compl. ¶ 485. The Sacklers made him CEO a few weeks later. *Id.*

14. In sum, Purdue should not receive Court approval of bonus payments to Landau at the same time that Purdue forestalls every avenue for investigating the grave allegations that Landau intentionally broke the law.

15. Further, review of the Diligence Information reflects that Purdue made significant modifications to Landau's employment contract just three months after it began preparing for this case[8] and within days of Massachusetts' issuance of its notice of intent to sue Landau for his personal participation in the alleged misconduct. Purdue has not disclosed the details of those changes in its public filings. The changes have significant impact on Landau's payments under the Bonus Programs, most notably his compensation under Purdue's Annual Incentive Plan. These are precisely the types of activities that 11 U.S.C. § 503(c) seeks to prohibit. The Debtors have failed to meet their burden under section 503(c) of establishing that the changes to Landau's bonus payments were not designed to circumvent the Bankruptcy Code. Until they do so, Landau should not be allowed to receive bonus payments.

WHEREFORE, the Non-Consenting States respectfully request that the Court deny or otherwise defer final approval of the Wage Motion as it relates to defendant Craig Landau.[9]

Dated: December 2, 2019

/s/ *Andrew M. Troop*
Andrew M. Troop
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, New York 10019-6118
(212) 858-1660
andrew.troop@pillsburylaw.com

*Counsel to the Ad Hoc Group of Non-Consenting States*

---

[8] *See Declaration Of Marshall S. Huebner In Support Of The Application Of Debtors For Entry Of An Order Authorizing The Debtors To Employ And Retain Davis Polk & Wardwell LLP As Attorneys For The Debtors Nunc Pro Tunc To The Petition Date* ¶ 8(a) [ECF Docket No. 419-1] ("Since March 2018, Davis Polk has advised the Debtors on a wide variety of matters and has performed services necessary to enable the Debtors to file for protection under chapter 11.")

[9] As to employees other than Landau, the Non-Consenting States respectfully reserve the right to seek relief from the Court in the future if the circumstances of the case support such relief.

7

# CERTIFICATE OF SERVICE

I, Andrew M. Troop, hereby certify that, on December 2, 2019, I caused true and correct copies of the foregoing document to be served (i) by the Court's Case Management/Electronic Case File (CM/ECF) System to all parties who are deemed to have consented to electronic service and (ii) by email upon the parties set forth in the Master Service List maintained by the Debtors in respect of these chapter 11 cases.

In addition, on December 2, 2019, I caused true and correct copies of the document to be served on the following:

Attn: Paul K. Schwartzberg
Office of the United States Trustee
Southern District of New York
201 Varick Street, Suite 1006
New York, NY 10014
***Via Overnight Delivery Mail***

/s/ *Andrew M. Troop*
Andrew M. Troop