**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
-------------------------------------------------x
                                                 :
In re                                            :        Chapter 11
                                                 :
INSYS THERAPEUTICS, INC., et al.,                :        Case No. 19-11292 (KG)
                                                 :
        Debtors.¹                                :        (Jointly Administered)
                                                 :
                                                 :        Re: D.I. 5, 49, 475, 620
-------------------------------------------------x
```

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 (I) APPROVING THE POSTPETITION SEVERANCE PROGRAM, (II) AUTHORIZING THE DEBTORS TO PAY AND HONOR SEVERANCE OBLIGATIONS UNDER THE POSTPETITION SEVERANCE PROGRAM (III) GRANTING RELATED RELIEF

Upon the initial motion (the "**Motion**"), dated June 10, 2019, of Insys Therapeutics, Inc. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") for entry of an order authorizing, but not directing, the Debtors to pay and honor certain prepetition claims and obligations, in the exercise of their discretion, relating to, among other things, the Severance Program, all as more fully set forth in the Motion; and the *Debtors' Statement in Support of Postpetition Severance Program and Honoring Related Obligations*, dated August 19, 2019 [D.I. 475] (the "**Supplemental Motion**" and, together with the Initial Motion, the "**Motion**") seeking approval to implement certain modifications to the Severance Program;² and the postpetition Severance Plan proposed to be

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).  The Debtors' mailing address is 410 S. Benson Lane, Chandler, Arizona 85224.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

implemented during these Chapter 11 Cases, a copy of which is annexed hereto as Exhibit A (the "**Severance Plan**"); and the Court having jurisdiction to consider the Motion, the Severance Plan, and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion, the Severance Plan, and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the Severance Plan having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion, the objections filed to the Motion by the Creditors' Committee and the other creditor parties (collectively, the "**Severance Notice Parties**") [D.I. 482, 484, 485, 487, 488, 489, 490, 491, 494, 499, 500] (collectively, the "**Objections**"), and the Severance Plan; and the Court having held a hearing to consider the relief requested in the Motion on August 22, 2019 (the "**August Hearing**"); and the Court having denied the relief requested at the August Hearing and adjourned the Motion *sine die* with direction to the Debtors and the Creditors' Committee at the August Hearing to consensually develop a protocol for determining an Employee's eligibility for the Severance Program (the "**Severance Eligibility Protocol**"); and the Debtors and the Creditors' Committee having developed a Severance Eligibility Protocol, a summary of which is annexed hereto as Exhibit B, and agreed upon the terms of the Severance Plan and related Severance Obligations (as defined herein); and a hearing on the Motion, the Severance Plan, and the Severance Eligibility Protocol having been held on September 19, 2019 (the "**Final Severance Hearing**"); and upon the Long Declaration, filed contemporaneously with the Initial Motion; and upon the record of the Final Severance Hearing

2

and all Objections having been resolved by the Severance Plan and the Severance Eligibility Protocol, withdrawn or overruled; and the Court having determined that the legal and factual bases set forth in the Motion, as modified by the Severance Plan and the Severance Eligibility Protocol, establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion, as modified by the Severance Plan and the Severance Eligibility Protocol, is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted, solely as provided herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363 of the Bankruptcy Code, to continue the Severance Program, solely as modified by the Severance Plan and implemented in accordance with the Severance Eligibility Protocol, and to pay and honor all obligations associated therewith (the "**Severance Obligations**").

3.      The Severance Program, as modified by the Severance Plan and implemented in accordance with the Severance Eligibility Protocol, is hereby approved and the Debtors are authorized, but not directed, to make payments in an aggregate amount not to exceed $500,000, absent consent of the Creditors' Committee or further order of this Court; *provided that* such cap shall be reduced dollar-for-dollar by amounts currently allocated to Severance Program Participants (as defined below) who are currently designated for employment by Chilion Group Holdings US, Inc. and whose services are not needed by the Debtors post-closing of the Transaction approved by order of the Court entered on August 23, 2019 [D.I. 525].

3

4.      Severance payments under the Severance Plan (but solely in accordance with the Severance Eligibility Protocol) may be made to non-insider Eligible Employees identified by the Debtors (the "**Severance Program Participants**"), and within ten business days of the Debtors finalizing their list of Severance Program Participants, the Debtors shall file with this Court a schedule setting forth each Severance Program Participant's name, title, annual base salary, and proposed severance payment to be made to the particular Employee; *provided that*, nothing in this Order shall impair the Debtors' rights to seek relief under section 107 of the Bankruptcy Code to the extent information set forth on such schedule is confidential; *provided further that*, to the extent such list is filed under seal, the Debtors shall provide the unredacted schedule on a professional eyes' only basis to the Severance Notice Parties and the Office of the United States Trustee not less than ten business days before any payments are made.

5.      To the extent that the Debtors implement the Severance Program in accordance with the Severance Eligibility Protocol and, with the consent of counsel for the Creditors' Committee, certify that a particular Severance Program Participant is eligible for an award under the Severance Plan (the "**Debtor Certification**"), the Debtors may pay the applicable severance award to the applicable Severance Program Participant and, in connection therewith, shall be deemed to have acted in good faith in all respects, consistent with any fiduciary duties owed by the Debtors to their stakeholders, and in accordance with the Severance Eligibility Protocol.  Under such circumstances, no party shall have a claim or cause of action against the Debtors or the person or party making the Debtor Certification in connection with or related to the Debtors making such severance payment to the Severance Program Participant.

6.      If the Debtors determine, in their business judgment and in accordance with the process described in the Severance Eligibility Protocol, to designate an Employee to participate

4

in the Severance Program and receive an award thereunder and the Creditors' Committee does not consent to such designation, the Debtors may still pay the severance award to such Employee; *provided, that* the Debtors must make the required Debtor Certification and the limitation of liability and good faith finding in the above decretal paragraph shall only apply upon a determination made by the Court after a telephonic conference with respective counsel for the Debtors and the Creditors' Committee and consideration of the relevant evidence presented by such parties.

7.    Notwithstanding anything in the Severance Plan or the Severance Eligibility Protocol to the contrary and for the avoidance of doubt, the Board of Directors of the Debtors and Senior Management shall have no personal liability in connection with the development or implementation of the Severance Program, the Severance Plan, or the Severance Eligibility Protocol.

8.    To the extent that any Severance Program Participant is determined by a final order of this Court or any court of competent jurisdiction to have (a) knowingly participated in any prepetition criminal misconduct in connection with his or her employment with the Debtors or (b) been aware, other than from public sources, of acts or omissions of others that were fraudulent or criminal with respect to the Company's commercial practices and failed to report such acts or omissions internally at the Company or to law enforcement authorities at any time during his or her employment with the Company, such Severance Program Participant shall not be eligible to receive any payments granted by this Order.  All parties' rights, if any, to seek disgorgement of payments following the entry of such final order are reserved.

9.    Notwithstanding anything in the Motion, the Severance Plan or the Severance Eligibility Protocol to the contrary, the Severance Plan may be modified, altered,

amended or terminated at any time by the Debtors, in their sole discretion, with or without notice

to Employees, only upon prior written notice to the Severance Notice Parties and approval of this

Court.

10. The Debtors are further authorized, but not directed, to discontinue the

Severance Program or modify the Severance Program to reduce or eliminate program expenses or

the benefits provided thereunder, at any time, in their sole discretion without prior Court approval

to the extent permitted by the Severance Plan or law.

11. The limitation of liability set forth herein in decretal paragraphs 5 and 6

shall survive any termination of the Severance Program, the Severance Plan or the Severance

Eligibility Protocol.

12. Nothing contained in the interim order approving the Initial Motion or this

Order shall be deemed as authorizing or approving (a) any payments or transfers that violate

section 503(c) of the Bankruptcy Code or (b) the Debtors to cash out unpaid vacation upon

termination of an Employee, unless applicable non-bankruptcy law requires such payment.

13. Nothing contained in the Motion, Severance Plan, Severance Eligibility

Proposal, or this Order, nor any payment made pursuant to the authority granted by this Order, is

intended to be or shall be construed as (a) an admission as to the validity of any claim against the

Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights (including the

Creditors' Committee's rights) to dispute the amount of, basis for, or validity of any claim against

the Debtors; (c) a waiver of any claims or causes of action that may exist against any creditor or

interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract,

lease, program, or policy between the Debtors and any third-party under section 365 of the

Bankruptcy Code.  Nothing in the Severance Plan, the Severance Eligibility Proposal or this Order

6

is intended to be or shall be construed as an approval of any prepetition payments made to Employees by the Debtors.  All parties' rights, if any, are reserved with respect to all such matters set forth in this decretal paragraph.

14.    Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

15.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

16.    The Debtors are authorized to take all action necessary to implement the relief granted in this Order.

17.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**Dated: September 19th, 2019**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**

19-23649-shl    Doc 559-1    Filed 12/03/19    Entered 12/03/19 22:04:42    Exhibit A --
Order re Severance Program    In re Insys Therapeutics    Pg 8 of 27
Case 19-bb291-KG    Doc 630-1    Filed 09/13/19    Page 1 of 17

## EXHIBIT A

**Severance Plan**

# INSYS THERAPEUTICS, INC.
# SEVERANCE PLAN

The Company has adopted this Plan in order to provide guidelines pursuant to which the Company, in its sole discretion, may make severance payments to employees who meet the eligibility requirements described below when they are terminated from service with the Company. The Plan is applicable to terminations of employment occurring on and after the Effective Date. The Plan provides for discretionary Severance Pay only, and the Company reserves the right with respect to any eligible Employee not to provide any Severance Pay. This document sets out the Plan's provisions and it serves as both the Plan's official document and its summary plan description.

SECTION 1.   <u>DEFINITIONS</u>

As used in this Plan, the following terms shall have the respective meanings set forth below:

1.1    "<u>Administrator</u>" means the Company's Vice President of Human Resources or such other person or committee as may be designated by the Board from time to time to administer the Plan.

1.2    "<u>Board</u>" means the Board of Directors of the Company.

1.3    "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the District of Delaware.

1.4    "<u>Cause</u>" means a finding by the Administrator that the Employee has (i) committed a felony, or any lesser crime involving moral turpitude; (ii) committed fraud, embezzlement, theft, or any other material act of dishonesty with respect to the Company; (iii) willfully failed, refused, or neglected to substantially perform the Employee's duties (other than by reason of any medically determinable physical or mental impairment) or to implement the reasonable directives of the Company; (iv) engaged in material misconduct or willful actions that could reasonably be expected to have an adverse effect upon the business, interests or reputation of the Company; or (v) materially violated any policy of the Company, including but not limited to any sexual harassment policy.

1.5    "<u>Chapter 11 Cases</u>" means the chapter 11 cases of the Company and its Subsidiaries jointly administered under the case caption *In re Insys Therapeutics, Inc.*, and assigned case number 19-11292 (KG).

1.6    "<u>Code</u>" means Internal Revenue Code of 1986, as amended.

1.7    "<u>Company</u>" means Insys Therapeutics, Inc. and its Subsidiaries.

1.8    "<u>Effective Date</u>" means the date on which the Plan is approved by the Board.

1.9    "<u>Employee</u>" means a person, who, on or after the Effective Date, is employed by the Company on a full time or part time basis at a stated rate of compensation, expressed in terms of weekly, monthly or annual salary or hourly pay, on a regular and continuing basis, specifically

1

excluding all of the following: (a) any individual who was hired for a specific limited period of time or on a sporadic or intermittent basis for periods of varying duration; (b) any individual treated for federal income or wage tax purposes as an independent contractor or consultant; and (c) any other individual who is a leased employee or is otherwise not treated for tax or other purposes as an employee of the Company, notwithstanding that such individual may subsequently be re-classified by a court, government agency, tribunal or arbitrator as a common law employee of the Company.

1.10   "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.11   "Pay" means the base salary or wage of an eligible Employee at Employee's stated hourly, weekly, monthly or annual rate as of the Employee's Termination Date. "Pay" does not include overtime pay, shift differentials, bonuses of any kind, incentive pay or any other remuneration. A "Week of Pay" shall be calculated in accordance with the Company's regular payroll practices and procedures and, in the case of hourly employees, shall be based upon the Employee's Scheduled Hours as reflected in the Company's then current payroll system during the last regular pay period preceding the Termination Date.

1.12   "Plan" means the Insys Therapeutics, Inc. Severance Plan set forth herein, as may be amended from time to time with timely prior written notice to the Severance Notice Parties and approval by the Bankruptcy Court.

1.13   "Scheduled Hours" means the number of hours designated as such in the Company's then current payroll system.

1.14   "Severance Approval Order" means the order entered by the Bankruptcy Court approving this Plan.

1.15   "Severance Eligibility Protocol" shall mean the protocol developed and agreed upon by and among the Company and the Severance Notice Parties, dated September [_], 2019.

1.16   "Severance Notice Parties" shall mean those entities identified in the Severance Approval Order.

1.17   "Severance Pay" means a payment made to an eligible Employee pursuant to the Plan.

1.18   "Subsidiary" means any entity other than the Company that is treated under Code Section 414(b) or (c) as a single employer along with the Company.

1.19   "Termination Date" means the date upon which the Employee's employment with the Company ceases.

SECTION 2.   PLAN PARTICIPATION

2.1   Eligibility. An Employee shall be eligible to receive discretionary Severance Pay under the Plan, in accordance with the Severance Eligibility Protocol, if and only if all of the

2

following conditions are met (and the Employee is not disqualified from eligibility pursuant to Section 2.2), as determined in the sole good faith discretion of the Administrator:

(a)    The Employee is an Employee of the Company on or after the Effective Date of the Plan;

(b)    The employment of the Employee is terminated by the Company without Cause;

(c)    The Administrator decides, in its sole discretion, to award Severance Pay to the Employee;

(d)    The Employee has returned all of the Company's property, submitted all expense reimbursements to which Employee is entitled under the Company's standard expense reimbursement policy, and paid to the Company any amounts due by the Employee; and

(e)    The Employee duly executes and delivers to the Company a fully executed and non-revocable general release agreement (the "Release Agreement") in a form substantially similar to Exhibit A hereto, within forty-five (45) days of the Termination Date.

2.2    Conditions. Except to the extent required by applicable law, an Employee shall be ineligible to receive Severance Pay under the Plan if (i) the Company fails to provide a declaration as required under the Severance Eligibility Protocol, with regard to such Employee, or (ii) any of the following disqualifying events are determined to have occurred, which determination shall be made in the sole good faith discretion of the Administrator:

(a)    the Employee is offered employment by a purchaser of any portion of the assets of the Company, or an affiliate of such purchaser, regardless of the terms and conditions of such offer;

(b)    The Employee is terminated for Cause, as determined in the sole good faith discretion of the Administrator;

(c)    The Employee's employment with the Company terminates by reason of the Employee's death, retirement or voluntary resignation.

(d)    The Employee engaged in any criminal or fraudulent conduct with respect to the Company's commercial practices at any time during the Employee's employment with the Company.

Notwithstanding any prior determination regarding eligibility for benefits hereunder, in the event the Company determines at any time that such Employee is not eligible for Severance Pay by reason of any failure to qualify for such Severance Pay under Section 2.1, or by reason of any disqualification from eligibility for such Severance Pay under this Section 2.2, no Severance Pay shall be provided to such Employee, and, if any Severance Pay shall have already been paid to such Employee, such Employee shall be required to repay to the Company, any amounts previously provided to such Employee hereunder within thirty (30) days following the receipt by such Employee of the Company's written notice of such determination.  This Section 2.2 shall

3

19-23649-shl    Doc 55291-K    Filed 12/03/19    Entered 12/03/19 22:04:42    Exhibit A --
Case 19-23649-KG    Doc 630-1    In re Insys Therapeutics    Pg 12 of 27
Order re Severance Program    In re Insys Therapeutics    Pg 5 of 17

apply to any event, action or conduct of the Employee whether or not such event, action or conduct occurred prior to or after such Employee's Termination Date.

## SECTION 3.    SEVERANCE PAY

3.1    Severance Pay Amount. If the Administrator decides to award Severance Pay to any eligible Employee or group of eligible Employees, then such eligible Employee(s) shall receive a cash payment or cash payments in an amount or amounts determined by the Administrator in its sole discretion, taking into account the guidelines set forth on Schedule I; provided, that the maximum Severance Pay an eligible Employee may receive under the Plan shall be an amount equal to eight (8) Weeks of Pay.

3.2    Severance Pay Reduction.    To the extent that an Employee receives any payment from the Company in connection with the Employee's termination of employment with the Company other than pursuant to the Plan (whether pursuant to an agreement or other severance plan or policy), the Severance Pay payable under the Plan shall be correspondingly reduced on a dollar for dollar basis. Similarly, to the extent that a federal, state or local law (including but not limited to the Worker Adjustment and Retraining Notification Act and any similar state laws) requires the Company to make a payment to an eligible Employee or require a payment in lieu of notice because of that Employee's termination of employment, any Severance Pay payable under the Plan shall be correspondingly reduced by the amount of the statutorily required payment. Any overpayments made under the Plan shall be promptly repaid by the Employee upon written request.    The reduction of the Severance Pay payable under the Plan shall not, however, be applicable by reason of receipt by the Employee of payments under any other benefit plan sponsored by the Company which is not in the nature of a severance plan or is otherwise determined by the Administrator not to reduce the benefits payable hereunder.

3.3    Withholdings. The Company shall have the right to take such action as it deems necessary or appropriate to satisfy any requirements under federal, state or local laws to withhold or to make deductions from any benefits, payable under the Plan.

## SECTION 4.    DISTRIBUTION OF BENEFITS

4.1    Timing of Payment. Severance Pay shall be paid in a cash lump-sum within five (5) business days following the date of which the Release Agreement becomes effective and irrevocable.

4.2    General Assets. The Company shall pay any discretionary Severance Pay to such eligible Employee directly out of the general assets of the Company in accordance with the Bankruptcy Court order granting it the authority to implement the Plan.

## SECTION 5.    PLAN ADMINISTRATION

5.1    Plan Administrator. The Plan shall be administered by the Administrator; which shall have complete authority to prescribe, amend and rescind rules and regulations relating to the Plan; with timely prior written notice to the Severance Notice Parties and approval by the Bankruptcy Court.    The Administrator may allocate and assign any of its responsibilities and duties for the operation and administration of the Plan to such other persons as it determines appropriate, other than determinations related to Employee eligibility.

4

5.2     Authority. The Administrator shall have full discretionary authority, up to the maximum discretion allowed by law and in accordance with the Severance Eligibility Protocol and the Severance Approval Order, to administer, interpret and apply the terms of the Plan, and determine any and all questions or disputes hereunder, including but not limited to eligibility for benefits and the amount of benefits payable under the Plan, if any.  The determinations by the Administrator on the matters referred to the Administrator shall be conclusive.

SECTION 6.   CLAIMS PROCEDURE

6.1     Application for Benefits and Inquiries.  In the event of a claim by any person including but not limited to any Employee or such person's authorized representative (the "Claimant") as to whether the Claimant is entitled to any Severance Pay or other benefit under the Plan, the amount of any distribution or its method of payment, such Claimant shall present the reason for Claimant's claim in writing to the Administrator.  The claim must be filed within forty-five (45) days following the date upon which the Claimant first learns of such claim.  All claims shall be in writing, signed and dated and shall briefly explain the basis for the claim.  The claim shall be mailed to the Administrator by certified mail at the following address: [●], or such other address as may be established from time to time by the Administrator.

6.2     Review of Claim. The Administrator shall, within a reasonable period of time but not later than ninety (90) days after receipt of such written claim, decide the claim and send written notification to the Claimant as to its disposition; provided that the Administrator may elect to extend said period for an additional ninety (90) days if special circumstances so warrant and the Claimant is so notified in writing prior to the expiration of the original ninety (90) day period.  Such notice shall indicate the special circumstances requiring the extension of time and the dates by which the Administrator expects to render the final decision.  In no event shall a decision regarding a claim for Severance Pay or other benefits be rendered later than 180 days after the Administrator receives the written claim.  The Administrator shall make all claim determinations in accordance with the Plan and, where appropriate, shall apply Plan provisions consistently with respect to similarly situated Claimants.

6.3     Denial of Claim.  In the event the claim is wholly or partially denied, such written notification shall (a) state the specific reason or reasons for the denial; (b) make specific reference to pertinent Plan provisions on which the denial is based; (c) provide a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; (d) set forth the procedure by which the Claimant may appeal the denial of the claim; and (e) include a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following a whole or partial denial on appeal.

6.4     Request for Review.  In the event that a claim is wholly or partially denied, the Claimant may request a review of such denial by making application in writing to the Administrator within sixty (60) days after receipt of such denial.  Said application must be by certified mail. Upon written request to the Administrator, the Claimant shall be provided free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits. The Claimant shall also have an opportunity to submit to the Administrator, in writing, any comments; documents, records, and other information relating to the claim for benefits.  The Administrator shall take into account all comments, documents,

5

records, and other information relating to the claim submitted by the Claimant, without regard to whether such information was submitted or considered in the initial claim determination.

6.5    <u>Decision on Review</u>.  Within a reasonable period of time, but not later than sixty (60) days after receipt of a written appeal, the Administrator shall decide the appeal and notify the Claimant of the final decision; provided that the Administrator may elect to extend said sixty (60) day period to up to one hundred twenty (120) days after receipt of the written appeal, if special circumstances so warrant and the Claimant is so notified in writing prior to the expiration of the original sixty (60) day period.  Such notice shall indicate the special circumstances requiring the extension of time and the date by which the Administrator expects to tender the final decision.

6.6    <u>Denial of Claim Upon Review</u>.  If the appeal is denied, the Claimant shall receive written notice of the denial, written in a manner reasonably calculated to be understood by the Claimant which (a) states the specific reason or reasons for the denial; (b) makes specific reference to pertinent Plan provisions on which the denial is based; (c) informs the Claimant of his or her right to receive upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim for benefits; and (d) includes a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA.

SECTION 7.    <u>AMENDMENT AND TERMINATION OF PLAN</u>

7.1    The Plan may be modified, amended or terminated at any time by the Administrator, with or without notice to the Employees but with timely prior written notice to the Severance Notice Parties and approval by the Bankruptcy Court.  Any such modification, amendment or termination shall be effective on such date as the Administrator may determine following timely written notice to the Severance Notice Parties and approval of the Bankruptcy Court. Notwithstanding anything to the contrary in this Section 7.1, each Employee who has, prior to any such modification, amendment or termination of the Plan, become entitled to receive Severance Pay pursuant to the Plan, shall remain entitled to receive said Severance Pay under the terms and conditions of the Plan without regard to such subsequent modification, amendment or termination of the Plan.

7.2    All claims for benefits hereunder, even if raised after termination of the Plan, shall be determined pursuant to Section 6, and when acting pursuant thereto, the Administrator shall retain the authority provided in Section 5 and Section 6.

SECTION 8.    <u>GENERAL PROVISIONS</u>

8.1    <u>No Right to Continued Employment</u>.  Nothing herein contained shall be deemed to give any Employee the right to be retained in the employ of the Company or to interfere with the right of the Company to discharge the Employee at any time, for any reason.

8.2    <u>Assignment</u>. Except as otherwise provided by law, no right or interest of any Employee under the Plan shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation by execution, levy, garnishment, attachment, pledge or in any other manner; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Employee under the Plan shall be liable for, or subject

6

to, any obligation or liability of such Employee, except to the extent specifically provided for herein.  Notwithstanding the foregoing, in the event an Employee who becomes entitled to receive Severance Pay pursuant to the Plan subsequently dies, the benefit that would otherwise have been payable to such deceased Employee shall be paid to the Employee's estate at the same time and in the same manner as such Severance Pay would have been paid to the Employee had he or she survived.

8.3    ERISA. The Plan is intended to be a severance pay plan governed by Title I of ERISA and as such shall be interpreted, administered and maintained as an unfunded welfare benefit plan under Section 3(1) of ERISA.

8.4    Governing Law. The interpretation, construction and performance of the provisions of this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Arizona without regard to the principle of conflicts of laws, to the extent Arizona laws are not preempted by ERISA. The invalidity or unenforceability of any provision of this Plan shall not affect the validity or enforceability of any other provision of this Plan, which other provisions shall remain in full force and effect.

8.5    Section 409A. It is intended that all payments under this Plan shall be exempt from the provisions of Section 409A of the Code, and shall not constitute deferred compensation within the meaning of Section 409A of the Code, and the Plan shall be interpreted and administered in a manner consistent with this intent.

## SECTION 9.   SPECIFIC INFORMATION REQUIRED BY ERISA

| | |
|---|---|
| Plan Name: | Insys Therapeutics Inc. Severance Plan |
| Name, Address and Telephone Number of Plan Sponsor | [●] |
| Plan Sponsor's I.D. No. (EIN) | 51-0327886 |
| Plan Number | 002 |
| Type of Plan | The Plan is a welfare benefit plan that provides severance benefits |
| Type of Administration | The Plan is administered by the Administrator |
| Name, Address and Telephone Number of Plan Administrator | [●] |
| Agent for Service of Legal Process | [●] |
| Plan Year | Calendar Year |

7

## STATEMENT OF ERISA RIGHTS

### The following statement is required by federal law and regulations

As a participant in the Insys Therapeutics Inc. Severance Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

### Receive Information About Your Plan and Benefits

- Examine, without charge, at the plan administrator's office and at other specified locations, all documents governing the Plan, including a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

- Obtain, upon written request to the plan administrator, copies of documents governing the operation of the Plan, including copies of the latest annual report (Form 5500 Series) and updated summary plan description. The plan administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The plan administrator is required by law to furnish each Plan participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including the plan administrator or any other person, may terminate your employment or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.

### Enforce Your Rights

If your claim for a Plan benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the plan administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek

8

assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

### Assistance with Your Questions

If you have any questions about the Plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

9

19-23649-shl   Doc 550-1   Filed 12/02/19   Entered 12/02/19 22:01:43   Exhibit A --
Order re Severance Program   In re Insys Therapeutics   Pg 18 of 27

Case 19-11292-KG   Doc 689-19   Filed 09/19/19   Page 11 of 17

## Schedule I

The following guidelines may be taken into account by the Administrator in its determination of the amount of Severance Pay to be provided to eligible Employees:

      (i) Four (4) Weeks of Pay per year of service for Employees with the title of "Director" or above; and

      (ii) Two (2) Weeks of Pay per year of service for Employees below the "Director" level;

in each case, with a minimum guideline amount of Severance Pay equal to two (2) Weeks of Pay.

WEIL:\97150286\14\53602.0003

Case 19-15591-KG Doc 639-19 Filed 09/19/19 Page 12 of 17

## Exhibit A

### Release Agreement

This Release Agreement (this "Agreement") is entered into by and between _____ ("Employee" or "You" or "Your") and Insys Therapeutics, Inc. (defined herein to include its, subsidiaries, affiliates, parent entities, predecessors, successors and assigns, and hereinafter referred to as the "Company") (the "Parties"), dated as of the date an executed copy of this Agreement has been delivered by Employee to the Company, as set forth in the signature block at the end of this Agreement. Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Insys Therapeutics, Inc. Severance Plan ("Severance Plan").

In consideration of the promises set forth in the Severance Plan, by and between the Parties as well as any promises set forth in this Agreement, the Parties agree as follows:

1.      Release of Claims.

1.1      In exchange for the Company providing You with the Severance Pay set forth in the Severance Plan, to the fullest extent allowed by applicable law, You, individually and on behalf of Your heirs, executors, personal representatives, administrators, agents and assigns, forever waive, release, give up and discharge all waivable claims, liabilities and other causes of action, real or perceived, whether now known or unknown, except to the extent that the claims, liabilities, or other causes of action arise from gross negligence, reckless conduct, willful or wanton conduct, or intentional acts solely in connection with the Company's past commercial practices related to the sale and marketing of its Subsys® product, against the Company, its parent, subsidiaries, affiliates, and other related and affiliated companies, their employee benefit plans and trustees, fiduciaries, administrators, and sponsors of those plans, and all of their past and present employees, managers, directors, officers, administrators, shareholders, members, agents, attorneys, insurers, re-insurers and contractors acting in any capacity whatsoever, and all of their respective predecessors, heirs, personal representatives, successors and assigns (collectively, the "Released Parties" as used throughout this Agreement; provided, however, that any person or entity who has been, or ultimately is, convicted of or pleads guilty to any crime involving the Company's past commercial practices related to the sale and marketing of its Subsys® product shall not constitute Released Parties under any circumstances regardless of whether they otherwise fall within the foregoing categories), which have arisen, occurred or existed at any time prior to the date of this Agreement (or which You may have in the future as a result of acts that occurred prior to the date You sign this Agreement), including, without limitation, any and all claims, liabilities and causes of action arising out of, relating to, or in connection with Your employment with the Company, any terms, conditions or privileges related to Your employment with the Company, the termination of Your employment by the Company, the payment or non-payment of Your salary, bonuses or equity compensation or other incentive compensation by the Company, claims of wrongful discharge, retaliation, defamation, harassment, discrimination, personal injury, physical injury, misrepresentation or emotional distress, any change in control of the Company, and all alleged violations of federal, state or local fair employment practices or laws by any of the Released Parties for any reason and under any legal theory including, but not limited to, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Employee

11

19-23649-scc Doc 559-1 Filed 12/03/19 Entered 12/03/19 22:04:42 Exhibit A -- Order re Severance Program In re Insys Therapeutics Pg 20 of 27

Case 19-12591-KG Doc 689-1 Filed 09/19/19 Page 13 of 17

Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1001, et seq., the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., the Equal Pay Act of 1963, 29 U.S.C. § 206, et seq., the Lilly Ledbetter Fair Pay Act of 2009, H.R. 11, the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161, et seq. ("COBRA"), the Occupational Safety and Health Act, 29 U.S.C. 651 et seq.,the Arizona Civil Rights Act, A.R.S. § 41, et seq., the Arizona Employment Protection Act, A.R.S. § 23-1501, et seq., the Arizona Wage Act, A.R.S. § 23-350, et seq., the common law of the State of Arizona, and all other federal or state or local laws, regulations, rules, ordinances, or orders, as they may be amended.  Without limiting the generality of the foregoing, You also forever waive, release, discharge and give up all claims, real or perceived and now known or unknown, for breach of implied or express contract, including but not limited to breach of promise, breach of the covenant of good faith and fair dealing, misrepresentation, negligence, fraud, estoppel, defamation, libel, misrepresentation, intentional infliction of emotional distress, violation of public policy, wrongful, retaliatory or constructive discharge, assault, battery, false imprisonment, negligence, and all other claims or torts arising under any federal, state, or local law, regulation, ordinance or judicial decision, or under the United States or Arizona Constitutions.  This waiver and release is of Your rights to all remedies and damages available to You in law or equity, including but not limited to Your right to compensation, backpay, front pay, non-economic damages, punitive and exemplary damages, statutory damages, attorneys' fees, injunctive relief and declaratory judgments.  Nothing in this Agreement shall be construed to release any claims or waive any substantive rights that cannot be released or waived as a matter of applicable law.

1.2     You have agreed to and do waive any and all claims You may have for employment or reinstatement by the Company or any of the Released Parties and have agreed not to seek such employment or reemployment by the Company or any of the Released Parties in the future.

1.3     Notwithstanding the release contained in Section 1.1 above, You do not waive (i) Your entitlement to receive any 401(k), or pension plan benefits that shall have vested (if any) as of the date You sign this Agreement to the extent You have any entitlement to those benefits under the terms of the relevant plans, (ii) Your right to file a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") or any other government agency or participate in an investigation conducted by the EEOC or any other government agency; however, You expressly waive Your right to monetary or other relief should any government agency, including but not limited to the EEOC, pursue any claim on Your behalf, (iii) your right to receive an award from a government agency under its whistleblower program for reporting in good faith a possible violation of law to such government agency, (iv) your right to challenge the validity of this Agreement under the ADEA, (v) any recovery to which you may be entitled pursuant to state workers' compensation and unemployment insurance laws, or (vi) any right where a waiver is expressly prohibited by law.

1.4     Nothing in this Agreement shall affect or limit Your or the Company's right to bring an action to enforce the terms of the Severance Plan or this Agreement.

1.5     The Parties acknowledge that this Agreement does not provide a basis for You to avoid any obligations You may have in any legal proceeding to provide discovery or testify as a witness or to otherwise cooperate with regard to any legal proceeding or investigation.

WEIL:\97150286\14\53602.0003

2.0    Non-Admission of Liability.  You agree that this Agreement shall not in any way be construed as an admission that any of the Released Parties owe You any money or have acted wrongfully, unlawfully, or unfairly in any way towards You.  In fact, You understand that the Released Parties specifically deny that they have violated any federal, state or local law or ordinance or any right or obligation that they owe or might have owed to You at any time, and maintain that they have at all times treated You in a fair, non-discriminatory and non-retaliatory manner.

3.0    Representation Regarding Conduct.  You represent and affirm that You were not engaged in any criminal or fraudulent conduct with respect to the Company's commercial practices and you were not aware, other than from public sources, of acts or omissions of others that were fraudulent or criminal with respect to the Company's commercial practices that You failed to report internally at the Company or to law enforcement authorities at any time during Your employment with the Company.

4.0    Miscellaneous.

    4.1    Governing Law and Venue.  This agreement and its negotiation, execution, performance or non-performance, interpretation, termination, construction and all claims or causes of action (whether in contract or tort) including resolutions of disputes that may be based upon, arise out of or relate to this agreement, or the negotiation and performance of this agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made or in connection with this agreement or as an inducement to enter into this agreement) (each a "proceeding") shall be governed by, and construed in accordance with, the laws of the State of Arizona, regardless of laws that might otherwise govern under any applicable conflict of laws principles. Any action relating to this agreement shall be instituted and prosecuted only in the courts of Arizona or the federal courts of the District of Arizona, and the Company and Employee hereby consent to the jurisdiction of such courts and waive any right or defense relating to venue and jurisdiction over the person.  The language of all parts of this agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties, by virtue of the identity, interest, or affiliation of its preparer.

    4.2    Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity and severed from this Agreement, without invalidating the remainder of such provision or remaining provisions of this Agreement.

    4.3    Proper Construction.  The language of this Agreement shall be construed within the context of the whole Agreement and according to its fair meaning, and not strictly for or against any of the Parties.  The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

WEIL:\97150286\14\53602.0003

19-23649-shl   Doc 550-1   Filed 12/03/19   Entered 12/03/19 22:04:43   Exhibit A --
Order re Severance Program   In re Insys Therapeutics   Pg 22 of 27

Case 19-11292-KG   Doc 639-19   Filed 09/19/19   Page 15 of 17

4.4     Survival.  You acknowledge that any provisions contained in the Severance Plan that are intended to survive following termination of Your employment shall, pursuant to their terms, survive the execution of this Agreement by You.

4.5     Amendments.  This Agreement may be modified, altered or terminated only with the consent of the official committee of unsecured creditors appointed in the Chapter 11 Cases and by an express written agreement between You and the Company, which agreement must be signed by all Parties or their duly authorized agents, and expressly reference and attach a copy of this Agreement to be effective.

4.6     Counterparts.   This Agreement may be signed in counterparts and said counterparts shall be treated as though signed as one document.  In the event that the Parties execute this Agreement by exchange of portable document format or other electronically signed copies or facsimile signed copies, the Parties agree that, upon being signed by all the Parties, this Agreement shall become effective and binding and that such copies shall constitute evidence of the existence of this Agreement.

4.7     No Reliance on Representations.   You represent and acknowledge that in executing this Agreement that You do not rely and have not relied upon any representation or statement made by any of the Released Parties or by any of the Released Parties' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

5.0   ACKNOWLEDGMENTS.

5.1     YOU ACKNOWLEDGE THAT YOU HAVE BEEN ADVISED IN WRITING, AS REFLECTED IN THIS AGREEMENT, AND HEREBY ARE ADVISED, TO SEEK LEGAL COUNSEL CONCERNING THE TERMS OF THIS AGREEMENT.

5.2     YOU WARRANT THAT YOU HAVE READ THIS AGREEMENT, ARE KNOWINGLY AND VOLUNTARILY ENTERING INTO IT AND INTEND TO BE LEGALLY BOUND BY THE SAME, AND THAT YOUR AGREEMENT THERETO HAS NOT BEEN THE RESULT OF COERCION OR DURESS BY THE COMPANY.  YOU CERTIFY AND AGREE THAT YOU ARE AUTHORIZED AND COMPETENT TO SIGN THIS AGREEMENT, AND THAT YOU ARE RECEIVING VALUABLE AN ADEQUATE CONSIDERATION UNDER THIS AGREEMENT.

5.3     YOU FURTHER ACKNOWLEDGE THAT YOU HAVE HAD 45 DAYS AFTER RECEIPT OF THIS AGREEMENT TO CONSIDER WHETHER TO EXECUTE THIS AGREEMENT AND THAT YOU UNDERSTAND ALL THE PROVISIONS OF THIS AGREEMENT. YOU ALSO UNDERSTAND THAT AFTER YOU EXECUTE THIS AGREEMENT, YOU HAVE SEVEN (7) DAYS TO REVOKE THIS AGREEMENT BY DELIVERING A SIGNED REVOCATION NOTICE TO THE COMPANY, POSTMARKED ON OR BEFORE THE SEVENTH DAY FOLLOWING THE EXECUTION OF THIS AGREEMENT AND SENT BY CERTIFIED MAIL TO [●].  THE PARTIES AGREE THAT NO PAYMENT AS SET FORTH IN THE SEVERANCE PLAN WILL BE MADE UNTIL AFTER THE SEVEN (7) DAY REVOCATION PERIOD HAS EXPIRED, THE "EFFECTIVE DATE" OF THIS AGREEMENT.

14

5.4     YOU   ACKNOWLEDGE   THAT   THE   FOLLOWING   INFORMATION REGARDING   THE   COMPANY'S   GROUP   TERMINATION   PROGRAM   IS   BEING DISCLOSED TO YOU AS REQURED UNDER THE ADEA:

5.4.1   The employment termination program covers selected employees in the Company's [_____] facilities.

5.4.2   Employees eligible to participate in the program are [_____].

5.4.3   The job titles and ages of all individuals selected for the program and all individuals in the same job titles not selected for the program are as follows:

| Job Title | Age | Number Selected | Number Not Selected |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

*[Signature page follows]*

15

WEIL:\97150286\14\53602.0003

19-23649-shl   Doc 550-1   Filed 12/02/19   Entered 12/02/19 22:04:43   Exhibit A --
Order re Severance Program   In re Insys Therapeutics   Pg 24 of 27

Case 19-11292-KG   Doc 639-1   Filed 09/19/19   Page 17 of 17

IN WITNESS WHEREOF, Employee has executed this Release Agreement as of the date set forth below.

**EMPLOYEE**

Dated: _____     By: _____

Print Name: _____

Address: _____

_____

Received, Acknowledged and Accepted:

**INSYS THERAPEUTICS, INC.**

Dated: _____

By:

_____

Name:
Title:

Case 19-11292-KG    Doc 6392    Filed 09/19/19    Page 1 of 3

## EXHIBIT B

**Summary of Severance Eligibility Protocol**

19-23649-shl   Doc 559-2   Filed 12/03/19   Entered 12/03/19 22:04:43   Exhibit A --
Order re Severance Program    In re Insys Therapeutics    Pg 26 of 27

Case 19-23592-KG   Doc 6239   Filed 09/19/19   Page 2 of 3

## Summary of Severance Eligibility Protocol

1.  **Minimum Time at the Company**: Anyone who has been at the company for 1.6 years or less (i.e. who started after January 1, 2018) will not need to be interviewed, and the Company will not need to provide a declaration in the form stated herein.

2.  **Presumption Regarding Disqualification from Severance**: The Debtors have agreed that two employees requested by the Severance Notice Parties (as defined in the order approving the Severance Plan) and who are currently employed by the Debtors, will presumptively **not** be entitled to receive severance under the Severance Plan.

3.  **Remaining Employees**: After giving effect to paragraphs 1 and 2 above, with regard to the remaining individuals eligible for severance, the Debtors may make severance payments in accordance with the Severance Plan.  Severance awards under the Severance Plan are subject to a "hard cap" of $500,000 absent consent of the Creditors' Committee or further order of the Court.  The severance cap will be reduced dollar-for-dollar by the amount of severance currently allocated ($172,340) for five certain employees designated by Chilion and identified by the Debtors to be employed by Chilion upon closing of the Chilion Transactions.

4.  **Investigation**: For any individual that the Company proposes paying severance to the following investigation procedures apply:

    (a) Each individual will be provided a series of written questions that they must respond to (sample questions have been agreed upon between the Debtors and the Severance Notice Parties).

    (b) Upon receipt of the written responses, to the extent the Debtors or the Creditors' Committee determine that an in-person or phone interview is required, such employee must participate in such an interview.

    (c) Bayard, counsel to the Creditors' Committee, will be present by phone should there be an interview in accordance with the above subparagraph (b).  No advisor to the Debtors will be present (subject to subparagraph (d) below).

    (d) To the extent an interview is conducted, it will be conducted by Robert Schwimmer or Marie Aucion, members of the Debtors' in-house legal team, and to the extent available the interview will be conducted by Wilson, Sonsini, Goodrich & Rosati, counsel to the Special Litigation Committee of the Board of Directors of Insys Therapeutics Inc.

    (e) The interviewer will ask a series of questions.  Based on the answers given, the Debtors/Creditors' Committee advisor participating may ask additional questions.

    (f) Based on the responses provided during the interview, nothing shall preclude the Creditors' Committee from requesting reasonable additional information from the employee being investigated or the Debtors.

    (g) It is expected that each interview, if occurring pursuant to subsection (b) above, will take no longer than 30 minutes.

5.  **"Good Faith" Finding**: After the written submission and/or interviews conclude, and for any employee for which the Debtors and the Creditors' Committee are reasonably satisfied with the results of the interviews, the Debtors shall provide a declaration regarding such employee (see below).  The Court order approving payment of severance to such employees (and only such employees) (the "Severance Approval Order") shall provide that payment of severance by the

1

Company consistent with Company severance policy (which shall be subject to paragraph 7 below) is, and shall be deemed, in good faith and consistent with any fiduciary duties owed by the Board to the Company and its stakeholders.  The declaration will state as follows:

"Based upon the investigation conducted by the Debtors, which investigation was conducted with the approval and participation of the Creditors' Committee and has been approved by the Bankruptcy Court as reasonable and in the best interests of creditors, and to the best of our knowledge (1) the employee did not engage in pre-petition criminal activity in connection with his or her employment with the Company, (2) the employee had no knowledge during the pre-petition period of any criminal activity occurring at the Company that such employee knowingly facilitated, and (3) the employee had no knowledge, other than from public sources, of acts or omissions of others at the Company that were fraudulent or criminal with respect to the Company's commercial practices that such employee failed to report internally at the Company or to law enforcement authorities."

6.  **Court Resolution Process**: if the Debtors and the Creditors' Committee disagree with the results of any of the interviews (which satisfaction will be determined based on the answers given during the interview and any follow up questions/documents asked/received), and the Debtors still would like to make severance payments to these individuals over the Creditors' Committee's objection, the Debtors will be permitted to do so consistent with Debtors' Severance Plan, but any such payments will be subject to the protection in the Severance Approval Order that includes a presumption that the Debtors acted in good faith and such payments are consistent with the fiduciary duties owed by the Board to the Debtors and their stakeholders **only** if, after scheduling a telephonic meeting with the Judge and the Creditors' Committee, the Judge determines that the Debtors should receive such protections given the evidence presented.

7.  **Form of Severance Agreement/Policy**: the Creditors' Committee and the other objectors have been given a reasonable opportunity to review and comment on the Severance Plan prior to the date that the Debtors filed it with the Court to seek Court approval for them.  All parties' right to object to the Severance Policy if their comments were not included are reserved.

2