**SCHULTE ROTH & ZABEL LLP**
Kristine Manoukian
James T. Bentley
919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000
Facsimile: 212.593.5955
Email: Kristine.Manoukian@srz.com
        James.Bentley@srz.com

*Counsel to the Ad Hoc Group of Hospitals*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al*. | ) Case No.: 19-23649 (RDD) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |

---

### VERIFIED STATEMENT OF THE AD HOC GROUP OF HOSPITALS PURSUANT TO BANKRUPTCY RULE 2019

Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), a group of hospitals (the "Ad Hoc Group of Hospitals") that have treated and treat patients

for conditions related to the use of opiates manufactured by Purdue Pharma L.P. and/or the other

debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

"Debtors"), hereby submits this verified statement (this "Verified Statement") and in support

thereof states as follows:

1.      On or about November 26, 2019, the Ad Hoc Group of Hospitals was formed, and

the law firms that represent its members retained Schulte Roth & Zabel LLP ("SRZ") to represent

the Ad Hoc Group of Hospitals in connection with the Debtors' chapter 11 cases.[2]  The Ad Hoc

Group of Hospitals currently consists of hundreds of hospitals across the United States.  On

November 30, 2017, certain members of the Ad Hoc Group of Hospitals, as putative class

representatives on behalf of themselves and **all** hospitals who have treated patients for conditions

related to the use of opiates manufactured by the Debtors and other manufacturers, filed a class

action suit (the "Hospital Class Action") against (i) the Debtors and other opioid manufacturers,

(ii) certain opioid distributors, and (iii) certain retailers.[3]

2.      The Ad Hoc Group of Hospitals currently represents approximately 10%[4] of the

hospitals in the United States that collectively hold in excess of $303 billion of claims against the

Debtors, including, without limitation, for (i) violations of the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO") and state law equivalents, (ii) nuisance,

(iii) negligence, (iv) common law fraud, (v) violations of state consumer protection statutes,

---

[2]      These law firms that represent the members of the Ad Hoc Group of Hospitals may serve as their respective clients' representatives on the Ad Hoc Group of Hospitals.

[3]      The Hospital Class Action is styled *St. Vincent Medical Center, et al. v. Amerisource Bergen Drug Corp.*, No. 1:17-op-45175 (N.D. Ohio).  In December 2017, the Judicial Panel on Multidistrict Litigation consolidated thousands of state and federal cases, including the Hospital Class Action, in a case styled *In re National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (N.D. Ohio).

[4]      There are additional hospitals that may become members of the Ad Hoc Group of Hospitals and this Verified Statement will be supplemented accordingly to reflect any such additional members.

(vi) civil conspiracy and (vii) unjust enrichment.[5]  If the RICO (or state law equivalent) allegations

are successful, these hospitals will have treble damages.

3.      The hospitals have been uniquely impacted by the opioid epidemic that was created,

in part, by the Debtors' actions and omissions.  Hospitals (including those comprising the Ad Hoc

Group of Hospitals) are required to treat patients with opioid-related conditions, including (i)

opioid overdose, (ii) opioid addiction, (iii) hepatitis C, (iv) HIV and other infections occurring as

a result of intravenous drug use, (v) neonatal treatment for babies born opioid-dependent (for

which treatment is specialized, intensive, complex, lengthy and very expensive) and (vi)

psychiatric and related conditions for patients suffering from opioid addiction.  Patients with

opioid-related conditions naturally seek treatment from hospitals, including those in the Ad Hoc

Group of Hospitals, which treatment comes at a significant (including unreimbursed and/or under-

reimbursed) cost to these hospitals.  Among the damages caused to the hospitals by the opioid

epidemic are the substantial increased operational costs, including (a) treatments that are more

complex and expensive than they otherwise would be were the patients not opioid-affected

because, among other things, these treatments require special protective measures and prescription

drugs that the hospitals must provide, (b) increased patient admissions, (c) the diversion of funds

from other non-opioid required patient health care, (d) additional human resources, (e) increased

training and staff education and (f) increased psychiatric care.  As a result, the hospitals are directly

and monetarily damaged by the opioid epidemic.

4.      Indeed, hospitals have incurred and continue to incur millions of dollars in damages

associated with the expense of uncompensated and undercompensated care due to the unlawful

---

[5]      First Amended Complaint at 8, *In re National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (N.D.
Ohio Mar. 11, 2019), ECF 1427.

marketing, distribution and sale of opioids and through specialized initiatives to combat the opioid crisis.  As much as any other entity, hospitals directly and monetarily bear the brunt of the opioid crisis.

5.     The statistics are alarming.  More than 130 people die each day from opioid-related overdoses[6] and for every opioid-related death, there are on average 10 hospital admissions for abuse, 26 emergency department visits for misuse and at least $4,350,000 in healthcare-related costs.[7]  More than 50% of patients who enter emergency rooms with opioid overdoses are admitted to the hospital.[8]  Further, approximately 40% of the opioid overdose patients admitted experience organ failure resulting in exponentially higher treatment costs.[9]  Private insurance only covers a portion of these treatment costs, and the increased volume of opioid-affected patients has caused (and will inevitably continue to cause) existential financial losses for hospitals.

6.     The cost of the opioid epidemic to even small and medium-size hospitals has been—and will continue for the foreseeable future to be—enormous.  For example, West Virginia University Health System has by itself suffered more than $1 billion in losses treating patients with opioid abuse issues.

7.     Significantly, the vast majority of hospitals are *not* represented by the states and municipalities that have brought similar cases against the Debtors.  The hospitals are fighting for their survival in the face of the opioid epidemic and are incurring demonstrable and significant

---

[6]     National Institute on Drug Abuse, *Opioid Overdose Crisis*, https://www.drugabuse.gov/drugs-abuse/opioids/opioid-overdose-crisis (last updated January 2019) (last accessed December 3, 2019).

[7]     Loretta Fala & John A. Welz, *New Perspectives in the Treatment of Opioid-Induced Respiratory Depression*, 8(6 suppl. 3) Am. Health & Drug Benefits S51-S63 (Oct. 2015).

[8]     Premier, *Opioid Overdoses Costing U.S. Hospitals an Estimated $11 Billion Annually* https://www.premierinc.com/newsroom/press-releases/opioid-overdoses-costing-u-s-hospitals-an-estimated-11-billion-annually (last accessed December 3, 2019).

[9]     Id.

damages.  Critically, the members of the Ad Hoc Group of Hospitals will not directly benefit from any recovery received by the states, municipalities or counties.

## Composition of the Ad Hoc Group of Hospitals

8.      In accordance with Bankruptcy Rule 2019, the list of the names and addresses of, and the nature and amount of all disclosable economic interests held by each member of the Ad Hoc Group of Hospitals, directly or through entities managed or advised by such member, in relation to the Debtors is set forth on Exhibit A.  The information set forth in this Verified Statement and on Exhibit A, including the claims of the Ad Hoc Group of Hospitals and related claim amounts have been provided to SRZ by the applicable counsel to the members of the Ad Hoc Group of Hospitals, and by filing this Verified Statement, the Ad Hoc Group of Hospitals (and each member thereof) makes no representation with respect to the amount, allowance, validity, secured status or priority of such claims and reserves all rights with respect thereto.

9.      Nothing contained in this Verified Statement or Exhibit A hereto should be construed as a limitation upon or waiver of any rights of any member of the Ad Hoc Group of Hospitals to assert, file and/or amend its claim(s) in accordance with applicable law and any orders entered in these chapter 11 cases establishing procedures for filing proofs of claim (including the right to file a class proof of claim on behalf of all members of the Ad Hoc Group of Hospitals).

10.     The Ad Hoc Group of Hospitals reserves the right to amend or supplement this Verified Statement (including Exhibit A) in accordance with the requirements set forth in Bankruptcy Rule 2019.


[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

New York, New York
Dated: December 3, 2019

**SCHULTE ROTH & ZABEL LLP**


*/s/ Kristine Manoukian*
Kristine Manoukian
James T. Bentley
919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000
Facsimile: 212.593.5955
Email:  Kristine.Manoukian@srz.com
        James.Bentley@srz.com


*Counsel to the Ad Hoc Group of Hospitals*

## CERTIFICATE OF SERVICE

I, Kristine Manoukian, hereby certify that a true and correct copy of the *Verified Statement Of The Ad Hoc Group Of Hospitals Pursuant To Bankruptcy Rule 2019* will be forwarded by electronic transmission to all parties registered to receive electronic notice in these cases, as identified on the Notice of Electronic Filing (NEF), via this Court's CM/ECF system. I also certify that service is being made via first-class mail upon the parties listed on the Master Service List maintained by Prime Clerk. Further service is made, pursuant to the *Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* (ECF No. 342), upon the following parties:

Honorable Judge Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street, Room 248
White Plains, NY 10601
*Via Courier*

Attn: Paul K. Schwartzberg
Office of the United States Trustee
Southern District of New York
201 Varick Street, Suite 1006
New York, NY 10014
*Via First-Class Mail*

*/s/ Kristine Manoukian*
Kristine Manoukian