**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF TIMOTHY COLEMAN IN SUPPORT OF THE DEBTORS' APPLICATION TO EMPLOY PJT PARTNERS LP AS INVESTMENT BANKER NUNC PRO TUNC TO THE PETITION DATE**

I, Timothy Coleman, hereby declare:

1. I am a Partner in and the Global Chairman of the Restructuring and Special Situations Group at PJT Partners LP ("**PJT**") and one of the lead restructuring advisors involved in these chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"). PJT is the proposed investment banker to the Debtors.

2. I make this Declaration in connection with the *Debtors' Application to Employ PJT Partners LP as Investment Banker* Nunc Pro Tunc *to the Petition Date* [Docket No. 430] (the "**Retention Application**") and *PJT Partners LP's Motion for Entry of an Order Authorizing Certain Confidential Information Related to PJT Partners LP's Retention Application to be Filed*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Under Seal* (the "**Motion**"), filed contemporaneously herewith. All capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

3. Unless otherwise stated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of the PJT team, my review of relevant documents, or my opinion based on my experience, knowledge and information. I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto.

4. As set forth in the Motion, the Confidential Client Information that PJT is seeking to seal is comprised of the identity of one potential PII (as defined below) (after accounting for affiliate relationships amongst the parties) with whom PJT has a confidential relationship (i.e., a non-public engagement). In support of the relief requested in the Motion, I respectfully state as follows:

5. The Declaration of Tara Flanagan in support of, and attached as Exhibit C to, the Retention Application (the "**Flanagan Declaration**") made reference to a list of certain potential parties in interest and/or affiliates thereof provided by the Debtors (as amended, the "**PII**"). As noted in the Flanagan Declaration, the PJT Legal and Compliance Department reviewed the PII to determine possible connections relating to the Debtors and, subject to the limitations and the disclosures set forth in the Flanagan Declaration, no material connections were found. The Flanagan Declaration disclosed PJT's relationship with approximately 70 PII; however, the identity of one client was not disclosed because that engagement is confidential. The engagement is not related to the Debtors or these chapter 11 cases and does not preclude PJT from meeting the disinterestedness standard under the Bankruptcy Code.

6. The confidential client engagement is hereby supplemented as follows:

   a. PJT maintains a global practice representing parties throughout the pharmaceutical industry. One such ongoing

engagement where PJT is providing strategic advice is with ███████████████████████████, which holds an outstanding pre-petition claim against the Debtors in the amount of approximately $130,000 according to the Debtors' book and records. None of such engagements, including but not limited to the ███████████, are directly related to the Debtors or these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by any such engagement.

7. Confidentiality is fundamental to, and at the center of, PJT's business model. PJT's engagements are, by their terms and/or the terms of any related confidentiality agreements, confidential. PJT is generally not able to disclose its client engagements until its clients disclose them. This confidentiality is important to PJT's clients for a number of reasons.

8. The very nature of PJT's business (as an advisory firm that primarily provides corporate and restructuring advice) means that merely identifying a client relationship largely reveals the nature of the engagement. Such disclosure not only injures current clients (who engaged PJT with an expectation of confidentiality), but also discourages potential future clients from engaging PJT. Clients that hire PJT are often in the midst of distressed situations and/or non-public transactions, and understandably are concerned with confidentiality regarding even the existence of PJT's engagement. Here, PJT's confidential client, an affiliate of a publicly traded company, has specifically requested that PJT not disclose its identity due to the confidentiality concerns discussed herein and in the Motion. As a result, in evaluating which advisory firm to hire, clients are likely to weigh, among other considerations, the likelihood of public disclosure regarding the engagement. For these reasons, PJT believes that the Confidential Client Information constitutes commercially sensitive information to PJT and PJT's confidential client.

9.  Here, the Confidential Client Information is comprised of only one PII. As set forth herein and in the Flanagan Declaration, PJT is engaged to provide financial advisory services to this party on a confidential basis. Schedule 1 to the *Application of Debtors for Authority to Employ and Retain Davis Polk & Wardwell LLP as Attorneys for the Debtors* Nunc Pro Tunc *to the Petition Date* describes the relationship between PJT's other client and the Debtors – it is a vendor and unsecured creditor. While the client is a potential PII in the Debtors' chapter 11 cases, importantly, PJT has not represented, and is not representing, this party in connection with the Debtors' chapter 11 cases.

10. Furthermore, the small unsecured claim that PJT's confidential client holds against the Debtors is not material to either the Debtors or PJT's other client. Upon information and belief, the Debtors' annual revenue is approximately $900 million. Upon information and belief, the annual revenue of PJT's confidential client is approximately $750 million. The confidential client has a commercial relationship with the Debtors for approximately $200,000 on an annual basis arising from products supplied to the Debtors and holds an outstanding pre-petition unsecured claim against the Debtors in the amount of approximately $130,000. Clearly, this connection is not material to either of the parties involved.

11. Accordingly, the relief requested in the Motion is necessary in order to prevent negative business implications, preserve the confidentiality of PJT's engagements, and protect commercially sensitive and confidential information.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:   December 5, 2019
         New York, New York

By:   */s/ Timothy Coleman*
      Timothy Coleman
      Partner
      PJT Partners LP