**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**SUPPLEMENTAL FINAL ORDER AUTHORIZING (I) DEBTORS TO (A) PAY CERTAIN PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS AND OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS, (II) EMPLOYEES AND RETIREES TO PROCEED WITH OUTSTANDING WORKERS' COMPENSATION CLAIMS AND (III) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 362(d) and 363(b) of the Bankruptcy Code, for entry of an interim order and a final order (this "**Order**") authorizing (i) the Debtors to (a) pay certain prepetition wages, salaries, and other compensation owing to Employees and Retirees and (b) maintain the Employee Programs and pay related administrative obligations, (ii) permitting Employees and Retirees with claims under the Workers' Compensation Programs to proceed with such claims and insurers to continue using collateral and security under the Workers' Compensation Programs, and (iii) authorize applicable

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

banks and other financial institutions to receive, process, honor and process related checks and transfers; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the Hearing (defined below) having been provided, and it appearing that no other or further notice need be provided with respect to the relief granted herein; and the Debtors having revised the relief requested in the Motion after discussion and negotiation with the Official Creditors' Committee; and the Court having reviewed the Motion and the proposed amended form of order and the second supplemental Lowne declaration filed on December 2, 2019 (the "**Second Supplemental Lowne Declaration**") and the Gartrell declaration filed on December 2, 2019, as well as all of the objections to the Motion and other related pleadings, and held an evidentiary hearing on December 5, 2019 to consider the relief requested in the Motion and the form of amended proposed order on a final basis (the "**Hearing**"); and upon the Lowne Declaration filed contemporaneously with the Motion at Docket No. 3, and the Second Supplemental Lowne Declaration filed at Docket No. 554, and the Gartrell declaration filed at Docket No. 555 and the record of the Hearing; and after due deliberation and for the reasons stated by the Court at the Hearing the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish good and sufficient cause for the relief granted herein, in that such relief provides a material net benefit to the Debtors' estates and creditors after taking into account the Bankruptcy Code's priority scheme, and that such relief is a proper exercise of business judgment and in the best interests of the Debtors, their estates, creditors and all parties in interest; now, therefore,

**IT IS HEREBY ORDERED THAT**

1.  The Motion is further granted on a final basis as set forth herein.

2.  The Debtors are authorized, but not required, in their sole discretion, to (a) pay all Sign-On Bonus payments when due, *provided* that Sign-On Bonus payments due to insiders outstanding as of the date of entry of this Order shall be paid on or about (i.e., to be paid on the regularly scheduled employee payment date closest to such date) three months after such Sign-On Bonus payments are currently due, and conditioned upon the written agreement of the recipients thereof to repay such Sign-On Bonuses if such recipients resign prior to December 31, 2020 (which agreement shall be enforceable by the Debtors, the Creditors' Committee or any successor to the Debtors or the Creditors' Committee), (b) pay the amounts under the Non-Executive Retention Plan when due, (c) pay any amounts due on account of the Advancement of Expenses and (d) pay any amounts when due on account of the 2019 Purdue AIP, the 2019 Rhodes AIP, the Purdue LTRP and the Rhodes LTRP; *provided* that (i) the authorization of the Debtors to make such payments under the 2019 Purdue AIP and the 2019 Rhodes AIP shall be (A) limited to the aggregate amounts that would be due if the Corporate Objective Results Percentage[3] were 100% or less, (B) with respect to the General Counsel, capped at $250,000 less than the amount otherwise payable thereunder, (C) with respect to insider Employees other than the Chief Executive Officer, 50% shall be paid on or about (i.e., to be paid on the regularly scheduled employee payment date closest to such date) April 1, 2020 and the remaining 50% on or about (i.e., to be paid on the regularly scheduled employee payment date closest to such date) July 1, 2020, subject to the

---

[3] Such term shall have the meaning ascribed to it in the *Second Supplemental Declaration of Jon Lowne in Support of the Motion of Debtors For Entry of an Order Authorizing (I) Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Employees And Retirees to Proceed With Outstanding Workers' Compensation*.

3

written agreement (which agreement shall be enforceable by the Debtors, the Creditors' Committee or any successor to the Debtors or the Creditors' Committee) of the applicable Employee to repay 25% of the amount received if such Employee resigns prior to September 1, 2020 (the "**Insider Payment and Clawback Schedule**"), (D) with respect to non-insider Employees who are classified as exempt under the Fair Labor Standards Act, payment shall be made on or about (i.e., to be paid on the regularly scheduled employee payment date closest to such date) April 1, 2020 and subject to the written agreement (which agreement shall be enforceable by the Debtors, the Creditors' Committee or any successor to the Debtors or the Creditors' Committee) of the applicable Employee to repay 50% of the amount due if such Employee resigns prior to July 1, 2020 and 25% (without duplication) of the amount due if such Employee resigns prior to September 1, 2020 (the "**Non-Insider Payment and Clawback Schedule**"), and (ii) the authorization of the Debtors to make such payments under the Purdue LTRP and the Rhodes LTRP shall be (A) with respect to insider Employees (other than the Chief Executive Officer, for which authority to make such payments was not requested subsequent and pursuant to the settlement reached with the Creditors' Committee), limited to 46% of the amounts that would otherwise be due, and subject to the Insider Payment and Clawback Schedule, (B) with respect to non-insider Employees with job titles of Vice President or above, limited to 56% of the amounts that would otherwise be due and subject to the Non-Insider Payment and Clawback Schedule, and (C) with respect to non-insider Employees with job titles less senior than Vice President, limited to 76% of the amounts that would otherwise be due, and subject to the Non-Insider Payment and Clawback Schedule; *provided further* that the aggregate amount that the Debtors are authorized to pay to insider Employees with respect to Sign-On Bonuses, the 2019 Purdue AIP, the 2019 Rhodes AIP, the Purdue LTRP, and the Rhodes LTRP in 2020 shall be

*additionally (i.e. in addition to the various deductions noted above)* $500,000 less than the aggregate amount otherwise authorized to be paid to insider Employees with respect to such Employee Program hereunder (and which deduction shall be disclosed to the advisors to the Creditors' Committee no later than March 1, 2020). Notwithstanding the foregoing, the Debtors shall not be authorized to pay any amounts (including, without limitation, pro-rated amounts) on account of the 2019 Purdue AIP, the 2019 Rhodes AIP, the Purdue LTRP, the Rhodes LTRP or the Sign-On Bonuses to any Employee that resigns prior to the applicable payment dates. For the avoidance of doubt, the Non-Insider Payment and Clawback Schedule shall not apply to non-insider Employees who are classified as non-exempt with respect to the Fair Labor Standards Act.

3.  For the avoidance of doubt, the Court hereby defers consideration of the amounts requested with respect to the Debtors' Chief Executive Officer under the 2019 Purdue AIP.

4.  The Debtors are authorized to continue the Debtors' corporate employee credit card and company purchasing card programs (collectively, the "**Card Programs**") with American Express Travel Related Services Company, Inc. ("**TRS**") in the ordinary course of business and consistent with prepetition practices, including by using the credit cards issued thereunder and timely paying any prepetition and postpetition obligations outstanding with respect thereto. The Debtors are further authorized to continue operating the collateral account with American Express National Bank ("**AENB**") ending in 5041, which serves as a collateral account for obligations under the Card Programs (the "**Collateral Account**"), in the ordinary course of business. The terms and conditions of the Card Programs and the pledge agreement with respect to the Collateral Account shall remain in effect, TRS shall continue to have a perfected, first priority security interest in the Collateral Account to secure all prepetition obligations with respect to the Card Programs, TRS shall also have a perfected, first priority security interest in the Collateral Account

to secure all obligations with respect to the Card Programs arising postpetition, and the Debtors shall hereby be deemed to have waived any avoidance claims arising under chapter 5 of the Bankruptcy Code or similar state law against TRS or AENB relating to the Card Programs or any transfers in connection therewith, without any additional documentation executed between the Debtors and TRS or AENB.

5. Nothing in the Motion or this Order, nor any payments made pursuant to this Order, shall be deemed to be or constitute an admission as to the validity or priority of any claim against the Debtors, or constitute an assumption or post-petition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code or a waiver of any rights of the Debtors.

6. Nothing in the Motion or this Order shall impair the ability of the Debtors or the Creditors' Committee to contest the validity or amount of any payment made pursuant to this Order.

7. Nothing in the Motion or this Order shall be construed as impairing the Debtors' or the Creditors' Committee right to contest the validity or amount of any Pre-petition Employee Obligation, including payroll taxes that may be due to any taxing authority.

8. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, for cause, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

9. The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern

District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

10. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the relief granted in this Order.

11. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order including, without limitation, the provisions of paragraph 2.

12. To the extent that any participant in the 2019 Purdue AIP, the 2019 Rhodes AIP, the Purdue LTRP or the Rhodes LTRP is determined by a final order of this Court or any court of competent jurisdiction to have (a) knowingly participated in any criminal misconduct in connection with his or her employment with the Debtors or (b) been aware, other than from public sources, of acts or omissions of others that such participant knew at the time were fraudulent or criminal with respect to the Company's commercial practices in connection with the sale of opioids and failed to report such fraudulent or criminal acts or omissions internally at the Company or to law enforcement authorities at any time during his or her employment with the Company, such participant shall not be eligible to receive any payments approved by this Order. All parties' rights, if any, to seek disgorgement of payments following the entry of such final order are reserved.

Dated: White Plains, New York
      December 9, 2019

                                            /s/ Robert D. Drain
                                            Honorable Robert D. Drain
                                            United States Bankruptcy Judge