Hearing Date and Time: January 24, 2020, at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: January 21, 2020, at 4:00 p.m. (prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF HEARING ON MOTION OF DEBTORS FOR ENTRY OF AN ORDER
EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**PLEASE TAKE NOTICE** that on January 10, 2020, the above-captioned debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") filed the *Motion of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Debtors for Entry of an Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "**Motion**"). A hearing on the Motion will be held on **January 24, 2020** at **10:00 a.m.** (prevailing Eastern Time) (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [Docket No. 498], so as to be filed and received no later than **January 21, 2020** at **4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:   January 10, 2020
         New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By:   */s/ Marshall S. Huebner*
                                    DAVIS POLK & WARDWELL LLP
                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone: (212) 450-4000
                                    Facsimile: (212) 701-5800
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Timothy Graulich
                                    Eli J. Vonnegut
                                    Christopher S. Robertson

                                    *Counsel to the Debtors*
                                    *and Debtors in Possession*

3

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER EXTENDING
THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") hereby file this *Motion of Debtors for Entry of an Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Acceptances Thereof* (this "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1.      By this Motion, and pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (as amended or modified, the "**Bankruptcy Code**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**" and, if entered, the "**Order**"), extending the Debtors' exclusive periods to (a) file (the "**Exclusive Filing Period**") a chapter 11 plan of reorganization (the "**Chapter 11 Plan**") by one hundred eighty (180) days through and including Monday, July 13, 2020[2] and (b) solicit votes thereon (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**") by one hundred eighty (180) days through and including Wednesday, September 9, 2020. The current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on Monday, January 13, 2020 and Friday, March 13, 2020, respectively. The requested extension would be without prejudice to the rights of the Debtors to seek further extensions of the Exclusive Periods.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined

---

[2] The 180th day after the current Exclusive Filing Period expires is Saturday, July 11, 2020. Pursuant to Bankruptcy Rule 9006, the proposed extended Exclusive Filing Period automatically extends the deadline to Monday, July 13, 2020.

that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

3.  The legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006.

4.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## General Background

5.  On September 15, 2019 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these Chapter 11 Cases.

6.  Information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [Docket No. 17].

7.  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 59] entered by the Court on September 18, 2019 in each of the Chapter 11 Cases.

## The Debtors Have Made Substantial Progress in These Chapter 11 Cases

8.  As the Court is well aware, certain of the Debtors entered bankruptcy as defendants in over 2,700 civil actions pending in various state and federal courts and other fora across the United States and its territories. After a year of intense and arduous negotiations,

3

shortly before the Petition Date, the Debtors, their ultimate shareholders, and a critical mass of plaintiff constituencies agreed in principle on the structure of a potential global resolution of the pending actions. The Debtors commenced these Chapter 11 Cases to resolve the litigation rationally, halt the destruction of value and runaway costs associated with the pending actions, centralize all of the claims against the defendant Debtors, adjudicate the claims asserted against the defendant Debtors fairly and efficiently, and, hopefully, expand the scope of parties supporting the settlement structure and consummate a global resolution of the pending litigation – all while conserving the assets of the Debtors' estates so that billions of dollars in value and vital opioid overdose rescue medications can be delivered to communities across the country impacted by the opioid crisis.

9.    Because of the nature of the claims asserted against the defendant Debtors, the chapter 11 filing arguably did not automatically provide the Debtors with the breathing room necessary to turn their undivided attention to the settlement process. Instead, the Debtors were compelled to seek a stay of litigation brought by governmental entities, to the extent that these plaintiffs argued that they were exempt from the automatic stay under the "police and regulatory powers" exception of section 362(b)(4) of the Bankruptcy Code. The Debtors successfully obtained and have extended this vital preliminary injunction, and have been hard at work moving these cases forward.

10.   Among many other steps that the Debtors have taken toward building the arena and architecture for these Chapter 11 Cases, the Debtors have:

> (a) smoothly transitioned into chapter 11, including by obtaining vital first-day relief, largely on a consensual basis, and engaging in numerous discussions and negotiations with key vendors and customers;
>
> (b) obtained a critical preliminary injunction through April 8, 2020, to ensure that the Debtors are able to focus on a successful global settlement;

(c) negotiated a summary term sheet with the ad hoc group of supporting creditors that summarizes the salient terms of the proposed comprehensive settlement;

(d) negotiated a case stipulation with the Creditors' Committee (the "**UCC Stipulation**") and representatives of the Debtors' shareholders that, among other things, ensured that the Creditors' Committee supported the Debtors' efforts to transition into chapter 11 and provides for additional diligence from the shareholders, including personal financial disclosure;

(e) engaged in discussions with the Creditors' Committee and other parties regarding the creation of a $200 million emergency relief fund to provide immediate, life-saving recovery support services to victims of the opioid crisis;

(f) progressed the selection process for a monitor with respect to the Debtors' compliance with an unprecedented self-injunction designed to confirm to the public, the Bankruptcy Court and all parties-in-interest that the Debtors are not engaging, and will not engage, in the kinds of conduct that gave rise to the allegations in the pending lawsuits;

(g) prepared and filed the Debtors' schedules and statements of financial affairs just 44 days after the Petition Date;

(h) filed the motion to establish the Bar Dates and a related comprehensive noticing plan, which involved extensive negotiations with many creditor groups holding various, often conflicting positions regarding the claims process;

(i) prepared for and successfully argued numerous motions and applications at multiple omnibus hearings;

(j) addressed, and continue to address, extremely complicated issues surrounding numerous diligence requests from various creditor groups while providing an ever-increasing volume of relevant information; and

(k) finalized and published a 366-page report of the Special Committee of the Board of Directors that catalogs all cash distributions to or for the benefit of the shareholders, plus salary, benefits and expense and indemnity reimbursements, since January 1, 2008.

11. The Debtors have accomplished a great deal in the first four months of these cases and are well-positioned for the next phase of these proceedings. There is certainly plenty more to accomplish. These Chapter 11 Cases are unprecedented in any number of ways, and the Debtors have an immense amount of work to do in order to accomplish their transformation into

5

a value- and health-maximizing public benefit corporation. The months ahead will be focused on many weighty topics including continued diligence with respect to the Sacklers and the IACs, the emergency relief fund, allocation issues with respect to the many categories of claimants asserting massive claims against these estates, and building further consensus for the settlement structure.

## Basis for Relief Requested

12.     Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case. If a debtor files a plan during this period, section 1121(c)(3) of the Bankruptcy Code provides the debtor with an initial period of 180 days as of the commencement of the chapter 11 case to solicit acceptance of such plan. Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause." *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). For the reasons described in this Motion, the Debtors respectfully submit that "cause" exists to extend the Exclusive Periods.

13.     It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of the particular case. *See, e.g.*, *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Although the Bankruptcy Code does not define "cause," courts have construed the term in consideration of the Bankruptcy Code's underlying legislative history.

6

*See, e.g., In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), as reprinted in 1994 U.S.C.C.A.N. 3340, 3344) (noting that the exclusive periods under section 1121 of the Bankruptcy Code are intended "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated"); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989) (examining the applicable legislative history and noting that "[t]he 'cause' standard referred to in Section 1121 has been referred to as a general standard that allows the Bankruptcy Court 'maximum flexibility to suit various types of reorganization proceedings.'" (citations omitted)). The opportunity for a debtor to negotiate a plan unimpaired by competition is intended to allow a debtor time to negotiate with its creditors, win support for its plan, and ultimately its survival as a business. H.R. Rep. No. 95-595 at 231–32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (indicating that "cause" should be interpreted in such a way "to allow the debtor to reach an agreement."); *see also Geriatrics Nursing Home v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home)*, 187 B.R. 128, 131–32 (D. N.J. 1995) ("The exclusivity period affords the debtor the opportunity to negotiate the settlement of its debts … by proposing and soliciting support for its plan of reorganization without interference—in the form of competing plans . . .").

14. In determining whether to extend a debtor's exclusive periods, courts consider a variety of factors to assess the totality of circumstances affecting whether or not "cause" exists, including:

> a) the size and complexity of the case;
> b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
> c) the existence of good faith progress toward reorganization;
> d) the fact that the debtor is paying its bills as they come due;

7

      e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
      f) whether the debtor has made progress in its negotiations with creditors;
      g) the amount of time that has elapsed in the case;
      h) whether creditors are prejudiced by the extension;
      i) whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and
      j) the existence of an unresolved contingency.

See In re Adelphia Communs. Corp., 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); see also In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997) (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); In re Friedman's Inc., 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same). Any one of these factors may constitute sufficient grounds for extending a debtor's exclusive periods. See In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

    15. Not all of the above factors are relevant to every case and the court considers only the relevant factors to determine whether cause exists to grant an exclusivity extension. See In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (holding that size and complexity of the chapter 11 case is sufficient cause to extend exclusivity); In re Express One Int'l, 194 B.R. at 100–01 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors).

    a. *The Chapter 11 Cases Are Large and Complex, and the Debtors Require Sufficient Time to Negotiate a Chapter 11 Plan in Good Faith*

    16. Courts regularly consider the size and complexity of a chapter 11 case a determining factor of whether a court should grant an extension of the exclusive periods. See, e.g., In re Crescent Mfg. Co., 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause"

8

can include an "unusually large case") (citation omitted); *In re Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); *see also* H.R. Rep. No. 95-595, at 231–32 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for an extension of exclusivity. *See In re Express One Int'l*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); *In re Texaco*, 76 B.R. at 325–27 (cause existed to warrant extension of exclusivity based on the size and complexity of the case alone); *In re Manville Forest Prods. Corp.*, 31 B.R. 991, 995 (S.D.N.Y. 1983) ("[T]he sheer mass, weight, volume and complications of the Manville filings undoubtedly justify a shakedown period.").

17. The circumstances of these Chapter 11 Cases are unprecedented. Any plan of reorganization confirmed in these cases will involve the settlement of hundreds of billions of dollars of litigation against the Debtors and a negotiated allocation of the Debtors' resources among various creditor constituencies. As such, plan negotiations are likely to be complex and time-consuming, and to be aided by an extended exclusive period.

18. As the Court is well aware, the Debtors' proposed settlement structure has, to date, the support of 23 Attorneys General and the analogous officers from all five permanently populated U.S. territories, including Puerto Rico, as well as the court-appointed Plaintiff's Executive Committee and Co-Lead Counsel in the federal multidistrict litigation pending in

9

Ohio, which comprises attorneys at law firms that collectively represent over 1,000 counties, municipalities, Native American tribes, individuals, and third-party payors. The Debtors are working to gain the support of the non-consenting Attorneys General and various other large, organized creditor groups for the proposed settlement and ultimate plan of reorganization. At the same time, the Debtors continue to review and diligence the proposed terms of the settlement relating to the contribution from their shareholders to ensure that the proposal is in the best interest of their estates and their creditors. Given the number of creditor groups and the nature of the litigation at issue, it would be unimaginable that the Debtors could have formulated and proposed a plan within 120 days of the Petition Date. Moreover, the Debtors' conduct in these Chapter 11 Cases demonstrates their good faith desire to successfully reorganize in chapter 11. Accordingly, each of the first three factors listed above weighs in favor of the Court granting the relief sought herein.

    b.  *The Debtors Pay Their Bills as They Come Due*

19.    The Debtors continue to make timely payments on account of their undisputed post-petition obligations. As such, this factor also weighs in favor of allowing the Debtors to extend the Exclusive Periods.

    c.  *A Short Amount of Time Has Elapsed in the Chapter 11 Cases*

20.    Not even four months have elapsed in the Chapter 11 Cases, and this is only the Debtors' first request for an extension of the Exclusive Periods. This amount of time is not long for cases of this size and complexity. *See In re Texaco*, 76 B.R. at 327 ("If, as reflected in the legislative history accompanying 11 U.S.C. § 1121(d), cause for extending the exclusivity period might include an unusually large case, it should follow that cause for granting the debtors' first extension request in these cases should clearly exist."). Accordingly, an extension of the Exclusive Periods is appropriate.

10

    *d. The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan and Are Making Progress in Negotiations with Creditors*

    21.    As described above, the central issue in these Chapter 11 Cases is reaching a broad consensus on a settlement of the litigation pending against the Debtors. The Debtors believe that they are making progress with various constituencies on a viable proposed framework. Moreover, pursuant to the UCC Stipulation, in consideration of, among other things, the Creditors' Committee's support of the preliminary injunction, the Debtors agreed not to file a Chapter 11 Plan prior to April 12, 2020 without the consent of the Creditors' Committee (*see* UCC Stip. at ¶ 3, Docket No. 518). Absent an extension, the Exclusive Periods could expire without the Debtors having had an opportunity to file a Chapter 11 Plan.

    *e. The Debtors Are Not Seeking to Extend Exclusivity to Pressure Creditors to Accede to the Debtors' Demands and Creditors Are Not Prejudiced by the Extension*

    22.    Continued exclusivity will permit the Debtors to continue the complex negotiations with many various creditor groups described above. Fundamentally, the Debtors believe that the proposed settlement requires broad creditor support. The Debtors are seeking an extension of the Exclusive Periods to preserve and build upon the progress made to date. Accordingly, this factor also weighs in favor of the relief requested herein.

    *f. Consensus Regarding the Proposed Settlement Remains an "Unresolved Contingency"*

    23.    As discussed above, the Debtors believe that it is prudent to continue their efforts to reach agreement with additional significant creditor groups regarding the proposed settlement framework and allocation of value, among other things, before proposing a plan of reorganization. Accordingly, this factor also weighs in favor of the relief requested herein.

11

**The Relief Request Should Be Granted**

24.     Despite this significant progress, given the size and complexity of these Chapter 11 Cases, much work remains. The Debtors believe it is prudent to seek a 180-day extension of the Exclusive Periods to permit the Debtors to proceed toward the goal of a confirmable plan that maximizes the value of the Debtors' estates and results in an unprecedented transfer of value to the American people. The Debtors' progress to date has been achieved in no small part due to the breathing room provided by chapter 11. The Debtors believe that maintaining their exclusive right to file and solicit votes on a plan is critical to their ability to complete a value-maximizing and fruitful process.

25.     Furthermore, courts in this jurisdiction have granted relief similar to that requested herein. *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312-RDD (Bankr. S.D.N.Y. June 20, 2019), ECF No. 699 (providing for an initial extension of the exclusivity periods by 180 days); *In re Tops Holding II Corp.*, No. 18-22279-RDD (Bankr. S.D.N.Y. June 22, 2018), ECF No. 432 (120 days); *In re 21st Century Oncology Holdings*, No. 17-22770-RDD (Bankr. S.D.N.Y. Sept. 20, 2017), ECF No. 444 (same); *In re Breitburn Energy Partners LP, et al.*, No. 16-11390-SMB (Bankr. S.D.N.Y. Dec. 14, 2016), ECF No. 844 (same); *In re Republic Airways Holdings Inc.*, Case No. 16-10429-SHL (Bankr. S.D.N.Y. June 16, 2016), ECF No. 687 (190 days); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007-RDD (Bankr. S.D.N.Y. Nov. 13, 2015), ECF No. 1838 (120 days); *In re Residential Capital, LLC*, Case No. 12-12020-MG (Bankr. S.D.N.Y. Sept. 11, 2012), ECF No. 1413 (270 days); *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. May 1, 2012), ECF No. 1076 (150 days).

**Automatic Extension**

22.   Pursuant to the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [Docket No. 498] (the "**Case Management Order**"),

> If a Request for Relief to extend the time to take any action is filed prior to the expiration of the time period provided by the Bankruptcy Code *(including any Request for Relief pursuant to section 1121 of the Bankruptcy Code)*, the Bankruptcy Rules, the Local Rules, or any order of the Court, the time to so take action shall be automatically extended until the Court considers and rules upon the Request for Relief.

Case Management Order at ¶ 45 (emphasis added).  In addition, pursuant to Local Rule 9006-2, the Exclusive Filing Periods are automatically extended until the Court acts on this Motion, without the necessity for the entry of a bridge order.

**Notice**

24.   Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this motion.  The Debtors respectfully submit that no further notice is required.

**No Prior Request**

25.   The Debtors have not previously sought the relief requested herein from the Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

13

WHEREFORE, the Debtors respectfully request that the Court enter the proposed form of order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  January 10, 2020
        New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By:   /s/ Marshall S. Huebner

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone: (212) 450-4000
                                    Facsimile:  (212) 701-5800
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Timothy Graulich
                                    Eli J. Vonnegut
                                    Christopher S. Robertson

                                    *Counsel to the Debtors
                                    and Debtors in Possession*