Hearing Date: January 24, 2020
Hearing Time: 10:00 a.m.

**TARTER KRINSKY & DROGIN**
*Counsel for NAS Babies Ad Hoc Committee*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | |
| | **Case No. 19-23649 (RDD)** |
| Debtors. [1] | |
| | **Jointly Administered** |

------------------------------------------------------X

### CONDITIONAL CONSENT WITH RESERVATION OF RIGHTS OF THE NAS CHILDREN AD HOC COMMITTEE TO MOTION OF DEBTORS FOR ENTRY OF ORDER (I) ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM AND PROCEDURES RELATING THERETO, (II) APPROVING PROOF OF CLAIM FORMS AND (III) APPROVING THE FORM AND MANNER THEREOF

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

TO:  **THE HONORABLE ROBERT D. DRAIN,**
     **UNITED STATES BANKRUPTCY JUDGE:**

Tarter Krinsky & Drogin LLP, the attorneys representing the Ad Hoc Committee for NAS Children (sometimes, "NASAHC") hereby submits this Conditional Consent and/or Limited Objection to Debtors' Motion ("Bar Date Motion") for entry of an order: (1) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (2) Approving Proof of Claim Forms and (3) Approving the Form and Manner Thereof [Docket No. 717].

**PRELIMINARY STATEMENT**

1.      The Debtors, in the Bar Date Motion, along with the Memorandum in Support thereof [Docket No. 718] and the accompanying Declaration of Jeanne C. Finegan (the "Finegan Decl.") in support thereof [Docket No. 719], set forth what appears *on its face* to be a comprehensive plan (the "Noticing Plan") for identifying certain unknown claimants who may have claims against the Debtors.

2.      The NASAHC comes into court to advance and protect the legal interests of, conservatively speaking, hundreds of thousand children known to be suffering from NAS. See, e.g., Center for Disease Control and Prevention Incidence of Neonatal Abstinence Syndrome — 28 States, 1999–2013; Morbidity and Mortality Weekly Report, August 12, 2016, 65(31);799–802; https://www.cdc.gov/mmwr/volumes/65/wr/mm6531a2.htm?s_cid=mm6531a2_w

3.      Initially, the Noticing Plan failed to meaningfully address the issue of providing notice to: (i) children diagnosed with NAS at birth, (ii) children suffering injuries due to NAS (the "NAS Children"), and (iii) the individuals whom have custody, control, and care of them (collectively, the "Guardians of NAS Children") (hereafter, NAS Children and Guardians of NAS Children will be collectively referred to as "NAS Children"). Based on available data, including

that in the Debtors' possession, a significant portion of the population described above lacks socioeconomic status and, in the case of minors, mental capacity and each of these shortcomings, among others, elevate the need for a more robust notice process, arguably beyond what is set forth in the Noticing Plan.

4.     It is noteworthy that, in discussions with the NASACH, Debtor's notice expert, Ms. Jeanne Finnegan, observed that this group of claimants (NAS Children) is unique; and again, to her credit, Ms. Finnegan acknowledged that she had not previously constructed a notice plan for claimants like these. Thereafter, correspondence and discussions ensued with the Debtors and Ms. Finnegan in response to requests by NASACH that Debtors expand the Noticing Plan with the objective of increasing the likelihood the NAS Children will receive notice of the Bar Date so as to be in a position to timely file a proof of claim.

5.     Even though, as noted below, the Noticing Plan has now been expanded to account for the unique nature of the putative claimants, and because they are unique and there is no tried and tested procedure to reach this class of claimants, the NASAHC's approval of the Noticing Plan is *conditional*, to the extent that NASACH explicitly registers a reservation of its right to seek an extension of the Bar Date as well as alternative methods of notice should it be determined, for example, the Noticing Plan did not accomplish its intended goals; did not meet either of the parties expectations; or the number of claims filed on behalf of NAS Children falls below contemplated levels. Thus, while Debtors state their proposed Bar Date is significantly longer than in "comparable" cases, the NASAHC believes that, given the uniqueness of the class and nature of their injuries, there are no truly "comparable" cases to refer or rely upon, and in light of this challenging circumstance, the proposed deadline may still not provide sufficient time to locate and notice the potential claimants.

## **GENERAL BACKGROUND**

6.    The Debtors filed their voluntary cases under chapter 11 of the Bankruptcy Code on September 15, 2019 (the "Petition Date").

7.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8.    The Debtors operate a branded pharmaceuticals business, develop and distribute generic pharmaceutical products, and manufacture a range of active pharmaceutical ingredients.

9.    On September 26, 2019, the United States Trustee (the "Trustee") formed an official committee of unsecured creditors (the "Committee"), consisting of nine members, two of whom are individuals representing the interests of NAS Children.

10.    On October 22, 2019, and pursuant to Bankruptcy Rule 2019, the NASAHC filed its Verified Statement.  [Docket No. 341].

11.    The NASAHC represents the interests of guardians who are responsible for children diagnosed with NAS due to their birth mother's use, during pregnancy, of opioids manufactured by Purdue and other entities.

12.    Nationwide, it is reported that a baby is born and diagnosed with NAS every 15 minutes, nearly 700 babies monthly.  Sadly, it is a trend started nearly two decades ago that has shown little sign of abating.  Admittedly, not every mother that delivers a child diagnosed at birth with NAS used branded pharmaceuticals manufactured by Purdue. Nonetheless, and under the totality of the circumstances, the NASAHC represents the legal interests of upwards of hundreds of thousands of opioid affected children.

13.    In the aggregate, the recovery of reasonable and necessary costs associated with damages and lifelong care needs of the NAS Children places this unique group of individuals at the top of the list of creditors; in fact, the NAS Children's claims may, in the aggregate, exceed the claims of all other known creditors in the Debtors' cases.

14.    The legal representatives of the NASAHC, and their associates, are responsible for filing 87 actions on behalf of NAS Children, including class actions covering 34 individual states, and a national class.

15.    On January 3, 2020, the Debtors filed the Bar Date Motion seeking to establish June 30, 2020 (the "Proposed Bar Date").

16.    Prior to filing the Bar Date Motion, the Debtors provided the NASAHC, and other constituencies, the opportunity to comment on the Noticing Plan and the proof of claim form. The NASAHC provided a comprehensive and meaningful response leading to the Debtors adopting some but not all of NASAHC's suggestions. Accordingly, the NASAHC registers its objections to the Debtors' decision not to adopt the NASAHC's suggestions in total.

17.    On January 7, 2020, the NASAHC communicated (in writing) to the Debtors and expressed its concerns regarding the initial Noticing Plan.

18.    As part of these negotiations, and on January 10, 2020, the Debtors and the NASAHC participated in a conference call, which included Ms. Finnegan; and the expansion of the notice to NAS Children was a subject of lengthy discussion. Subsequently, the Debtors produced an expanded explanation of the Noticing Plan aimed at targeting NAS Children.

## DISCUSSION

A.    **Notice to Unknown Claimants**

19.    The NASAHC acknowledges a debtor is only required to provide unknown creditors with constructive notice by publication. *See In re Energy Future Holdings Corp.*, 522 B.R. 520 (2015) ("Energy Future"). The constructive notice must be reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the bankruptcy case and to afford them an opportunity to present their objections. *Id.*

20.    Inadequate notice of the bar date "is a defect which precludes discharge of a claim in bankruptcy." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). When actual or constructive notice is required, a "process which is a mere gesture is not due process." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). The level of notice due to a party is "highly dependent on the context;" thus, a "process that may be constitutionally sufficient in one setting may be insufficient in another." *In re Mansaray-Ruffin*, 530 F.3d 230, 239 (3d Cir. 2008). "Fair or adequate notice has two basic elements: content and delivery. If the notice is unclear, the fact that it was received will not make it adequate." *Fogel v. Zell*, 221 F.3d 955, 962 (7th Cir. 2000).

21.    In *Energy Future,* the District Court of Delaware considered whether to exclude unknown claimants who had been exposed to asbestos but had not yet developed symptoms from the bar date order ("Unmanifested Claimants"). *Id.* Various personal injury law firms (the "PI Law Firms") filed a motion challenging whether a bar date should be established. The court stated that "given the due process concerns in play, it was appropriate for [the] bankruptcy court, given

that it was possible for Chapter 11 debtors to discharge their potential future obligations to individuals who had been exposed to asbestos as result of debtors' conduct, but who had not yet exhibited any symptoms of that exposure, simply by providing constructive notice sufficient to alert such individuals of [the] need to file timely proofs of claim, to establish [a] bar date for filing of such unmanifested claims; it would be inconsistent with debtors' exclusive right to file proposed Chapter 11 plan, to instead mandate that debtors deal with such unmanifested claim by proposing plan that established asbestos trust and included channeling injunction." *Id.* Although the court ultimately denied the PI Law Firms' objection to set a bar date for the Unmanifested Claimants, it explicitly stated that it "might later extend the bar date for cause shown." *Id.* (citing Fed. R. Bankr. P. 3003(c)(3)).

## B.     Due Process & "Less Than Sophisticated" Claimants

22.     The *Energy Future* court also looked to *In re Century TRS Holdings, Inc.,* 528 B.R. 251 (D. Del. 2014), *vacated and remanded sub nom. In re New Century TRS Holding, Inc.,* 612 Fed. Appx. 147 (3d Cir. 2015). Although vacated and remanded (on separate grounds), *Energy Future* found it instructive:

> Although the District Court noted that publication notice satisfied the requirements of due process for unknown creditors, the court looked at the facts and circumstances to determine whether notice was reasonably calculated, "'under all the circumstances [in *New Century*] to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" The District Court distinguished *New Century* from *Owens Corning:*
> unknown claimants in the instant proceeding were given a mere 39 days' notice by a single publication. That single publication was presented in *The Wall Street Journal,* certainly a newspaper with a national distribution, but not one—like *USA Today*—that necessarily enjoys a broad circulation among less than sophisticated, focused readers. The court concluded that the adequacy of the notice provided in this case has not been meaningfully explored and likely was not reasonably calculated to apprise appellants of

the bar date. The court concludes that "[d]ue process affords a re-do" under
the circumstances of this case
In effect, the court held that, although publication notice is sufficient due
process for unknown creditors, in *New Century,* the publication notice was
insufficient.

*Energy Future,* 522 B.R., at 536.

**C.    The Noticing Plan May Not be Reasonably
Tailored to Provide Notice to the NAS Victims**

23.    The (revised) Noticing Plan, while seemingly comprehensive, is targeting, for the

first time, a class of NAS Children and their legal guardians that has never been attempted before.

There is, therefore, no established format to notice this class due to the unique issues confronting

NAS Children. More than 500,000 children have been diagnosed, when born, as either having

NAS or some other diagnostic classification arising from opiate exposure in the womb. As such,

an infant whose first injury is that of being bathed in opiates in the womb will likely suffer the

effects of withdrawing from those same opiates. These children face multiple, other, real-world

consequences. While some NAS Children live with their birth mothers, others are sent into the

foster care system to be later adopted or placed with relatives, such as a grandparent. Numerous

NAS Children are in programs designed to treat developmental or learning difficulties arising from

their opiate exposure, while many more are being cared for without the luxury of such resources.

This myriad of socioeconomic circumstances makes notice exceptionally difficult.

**D.    Reservation of Rights**

24.    It is a general equitable principle that deadlines are frequently extended for those

who are impaired or lack competence to meet the deadlines on time. *Ernst & Young v. Matsumoto

(In re United Ins. Mgmt., Inc.),* 14 F.3d 1380, 1384 (9th Cir. 1994) (equitable tolling applies where

a party is ignorant of a wrong without any fault or lack of diligence on their part). "As a general

rule, 'this equitable doctrine is read into every federal statute of limitation.'" *Id.*, at 1384-85 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 90 L. Ed. 743, 66 S. Ct. 582 (1945)). *See also Shrader v. Harris*, 631 F.2d 297, 301-02 (4th Cir. 1980) (extending social security review deadline to permit hearing for plaintiff who demonstrated mental impairment that hindered an understanding of the procedure); *Elchediak v. Heckler*, 750 F.2d 892, 894-95 (11th Cir. 1985) (plaintiff raises colorable constitutional claim for lack of due process to address failure to meet filing deadline where he could show mental impairment and pro se status); *Parker v. Califano*, 644 F.2d 1199 (6th Cir. 1981) (plaintiff raises colorable constitutional due process claim if there is evidence that a failure to take advantage of administrative remedies was due to plaintiff's suffering from a mental illness at the time).

25.    It is not clear whether the general bar date for filing a proof of claim applies to claims by infants, children and legal incompetents or their representatives. In *In re Toriello*, 08-18063 DHS, 2010 WL 3943737, at *4–6 (Bankr. D.N.J. Oct. 5, 2010), a bankruptcy court analyzed the applicability of the bar date to someone with Alzheimer's disease. The court found that it had discretion under Bankruptcy Rule 3002(c)(2) to extend the time to file a proof of claim for an infant or incompetent person, or their representative, if such extension is in the interest of justice and will not cause an undue delay. *Id.* (citing *Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval)*, 327 B.R. 493 (B.A.P. 1st Cir.2005). The extension need not be granted prior to the bar date but should not "seriously delay administration of the case." *Id.*, (citing *9 Collier on Bankruptcy* ¶ 3002.03[3] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). "An extension under Rule 3002(c)(2) is permissive, not mandatory." *Id.; In re Wilson*, 96 B.R. 257, 263 (B.A.P. 9th Cir.1988).

26.     Specifically, *Toriello* addressed the issue of what constitutes "incompetence" under Rule 3002(c) in order to allow a proof of claim filed after the bar date. In doing so, the court noted that "[n]either the Bankruptcy Code nor the Rules define 'incompetent' and this court is unaware of any reported cases interpreting the term as used in Rule 3002(c)(2)." *Id.* The court looked to state law for a definition, which had repeatedly defined "mental incompetent" as a person "impaired by reason of mental illness or mental deficiency to the extent that he lacks sufficient capacity to govern himself and manage his affairs." *Id.* The court ultimately found that, given conflicting medical opinions stating, on the one-hand the claimant suffered from Alzheimer's but on the other that she did not "lack[] sufficient capacity to govern herself [or] manage her own affairs," that her competence was questionable. *Id.*

27.     The court next considered the "interest of justice" and "undue delay" prongs of Rule 3002(c)(2), noting that "[a]s with the 'incompetency' prong, case law here is sparse. These are fact-sensitive determinations." *Id.* The court found, claimant's competence notwithstanding, she had waited over a year and half after receiving actual notice and had another mechanism to find relief (seeking to foreclose on the property) that she did not utilize. *Id.* It was also notable to the court that the debtor's certification at that point would cause an undue delay, which was confirmed 2 years prior and provided for a 100% recovery to the creditors. In the end, the court did not find that the interest of justice demanded an extension under the totality of the facts.

28.     The NAS Children are distinguishable from those in the *Toriello* case because they cannot be deemed to receive notice of the Bar Date (except possibly through a caregiver). While the NASAHC acknowledges that if the proposed Bar Date did not apply to the NAS Children, there could be significant delay in the administration of these cases, it nevertheless reserves the right to seek an extension of the Proposed Bar Date, and the appointment of an independent claims

representative if required under the circumstances. A similar approach was recently adopted in *In re PG&E Corporation*, Case No. 19-30088 (Bankr. N.D. Cal.) (*see Stipulation Between Debtors and the Official Committee of Tort Claimants to Extend Bar Date for Fire Claimants and for Appointment of Claims Representative* filed on November 11, 2019 [Docket No. 4651], a copy of which is attached hereto as **Exhibit A** (extending bar date for fire victims and appointing independent claims representative to: (i) identify and locate victims; (ii) estimate and implement procedures to inform and educate victims about their rights; and (iii) assist victims in filing their proofs of claim.

## CONCLUSION

**WHEREFORE,** for the reasons stated above, the NASAHC <u>conditionally</u> consents  of the Debtor's Noticing Plan and Bar Date subject to its reservation of any and all available rights, both legal and equitable,  to request a modification of Noticing Plan and Bar Date if it is determined by the NASAHC that Noticing Plan either has failed to adequately reach the class of NAS Children, and for other and further relief as the Court deems just and proper.

Dated: January 17, 2020
     New York, New York

                      **TARTER KRINSKY & DROGIN LLP**
                      *Counsel for NAS Babies Ad Hoc Committee*

                      By:<u>/s/ Scott S. Markowitz</u>
                         Scott S. Markowitz, Esq.
                         Rocco A. Cavaliere, Esq.
                         Michael Z. Brownstein, Esq.
                         1350 Broadway, 11th Floor
                         New York, New York 10018
                         Tel: (212) 216-8000
                         Email: <u>smarkowitz@tarterkrinsky.com</u>
                         Email: <u>rcavaliere@tarterkrinsky.com</u>
                         Email: <u>mbrownstein@tarterkrinsky.com</u>

**EXHIBIT A**

Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Ray C. Schrock, P.C. (*pro hac vice*)
(ray.schrock@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

Eric E. Sagerman (SBN 155496)
David J. Richardson (SBN 168592)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email: esagerman@bakerlaw.com
Email: drichardson@bakerlaw.com
Email: lattard@bakerlaw.com

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (pro hac vice)
(pzumbro@cravath.com)
Kevin J. Orsini (pro hac vice)
(korsini@cravath.com)
Omid H. Nasab (pro hac vice)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

*Counsel to the Official Committee of Tort Claimants*

*Attorneys for Debtors and Debtors in Possession*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                                        **Debtors.**<br><br>☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors<br><br>*All papers shall be filed in the Lead Case, No. 19-30088 (DM)* | Bankruptcy Case<br>No. 19-30088 (DM)<br><br>Chapter 11 (Lead Case)<br>(Jointly Administered)<br><br>**STIPULATION BETWEEN DEBTORS AND OFFICIAL COMMITTEE OF TORT CLAIMANTS TO EXTEND BAR DATE FOR FIRE CLAIMANTS AND FOR APPOINTMENT OF CLAIMS REPRESENTATIVE**<br><br>Re: Docket No. 4292<br><br>No Hearing Requested |

1   This stipulation and agreement for order ("**Stipulation**") is entered into by PG&E

2   Corporation and Pacific Gas and Electric Company, as debtors and debtors in possession

3   (collectively, the "**Debtors**"), on the one hand, and the Official Committee of Tort Claimants (the

4   "**TCC**"), on the other.  The Debtors and the TCC are referred to in this Stipulation collectively as

5   the "**Parties**," and each as a "**Party**."  The Parties hereby stipulate and agree as follows:

6   **RECITALS**

7   A.    On July 1, 2019, the Court entered an order [Dkt. No. 2806] (the "**Bar Date Order**[1]")

8         approving the *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R.*

9         *Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and L.B.R. 3003-1 for Order (i) Establishing*

10        *Deadline for Filing Proofs of Claim, (ii) Establishing the Form and Manner of Notice*

11        *Thereof, and (iii) Approving Procedures for Providing Notice of Bar Date and Other*

12        *Information to All Creditors and Potential Creditors* [Dkt. No. 1784] (the "**Bar Date**

13        **Motion**"), as modified prior to, and as set forth on the record at, the hearing on the Bar

14        Date Motion.

15  B.    The Debtors believe (i) the Notice Procedures, including the Supplemental Notice Plan as

16        implemented by the Debtors and approved by the Court were broad, robust, and far

17        surpassed the requirements for reasonable and adequate notice of the Bar Date as required

18        under the Bankruptcy Code and otherwise applicable law, and (ii) the results (including

19        the frequency and reach of the Supplemental Notice Plan) far exceeded the results

20        typically achieved in other class action or chapter 11 cases.

21  C.    The TCC maintains that this case presents unique facts and circumstances that require

22        additional measures with respect to the Bar Date. On October 18, 2019, the TCC filed its

23        *Motion of the Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 105(a) and*

24        *501 and Fed. R. Bankr. P. 3003(c) for Entry of an Order Extending the Bar Date* [Dkt.

25        4292] (the "**Bar Date Extension Motion**"), and supporting pleadings and declarations,

26        which is set for a hearing before the Court on November 13, 2019, at 9:30 a.m.   The

27

28  ──────────────
    [1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to
    such terms in the Bar Date Order.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Motion asks this Court to extend the original bar date of October 21, 2019 (the **"Original Bar Date"**), to January 31, 2019, solely with respect to Fire Claimants (as defined in the Bar Date Order) and appoint a third-party to assist non-governmental Fire Claimants who have not filed Proofs of Claim by the Original Bar Date (the **"Unfiled Fire Claimants"**) with understanding and gaining access to the system for filing Proofs of Claim. Alternatively, the Motion asks that the Court set an earlier extended bar date of December 5, 2019 and appoint an expert to determine whether a further extension would be required.

D.   Counsel for the Debtors and Counsel for the TCC have met and conferred to discuss the relief requested by the TCC in the Bar Date Extension Motion, and have reached an agreement on the terms herein to extend the Original Bar Date and to resolve all matters with respect to the Bar Date Extension Motion.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT HEREBY IS STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THE UNDERSIGNED, AND THE PARTIES JOINTLY REQUEST THE COURT TO ORDER, THAT:**

1.   The Original Bar Date will be extended solely for the benefit of Unfiled Fire Claimants to December 31, 2019 at 5:00 p.m. (Prevailing Pacific Time) (the **"Extended Bar Date"**).

2.   Subject to entry of an order approving this Stipulation, Michael G. Kasolas shall be appointed by the Court to serve as a special claims representative for Unfiled Fire Claimants (the **"Claims Representative"**), *nunc pro tunc* to November 1, 2019.  The Claims Representative shall be given broad discretion to conduct his tasks for the benefit of Unfiled Fire Claimants and shall be tasked with (the **"Tasks"**):

(i)    identifying and locating Unfiled Fire Claimants and implementing procedures to provide notice of the Extended Bar Date to Unfiled Fire Claimants;

(ii)   establishing and implementing procedures to inform and educate Unfiled Fire Claimants about their rights to file Fire Claims by the Extended Bar Date, and implementing reasonable methods to reach Unfiled Fire Claimants to inform them

of the Extended Bar Date and how to file Fire Claimants Proof of Claim Forms on account of any Fire Claims;

(iii)    assisting Unfiled Fire Claimants with the process of filing Fire Claimants' Proof of Claim Forms in these cases, including coordinating with Prime Clerk LLP (**"Prime Clerk"**) who will be independently setting up locations within the fire zone areas where Prime Clerk representatives shall receive Proof of Claim Forms; and

(iv)    periodically reporting to both this Court and to Judge Donato on progress and results.

3.    The Claims Representative will have the authority to engage staff, personnel, vendors (including but not limited to media/advertising, project management services, technology solutions, public relations, and other consultants), and counsel (collectively the **"Team"**) to assist in the implementation of the Tasks.

4.    The reasonable and documented fees and expenses of the Claims Representative and any of his Team shall be allowed administrative expenses of the Debtors' estates and paid by the Debtors in the ordinary course of business, without further application to or order of the Court, upon receipt of invoice. If any dispute arises relating to any invoice, the parties shall meet and confer in an attempt to resolve the dispute and, if resolution is not achieved, the matter shall be resolved by the Court. The Claims Representative shall not be personally responsible or liable for the fees and expenses of his Team, and may apply to the Court for approval of advance fees or costs if deemed necessary in order to successfully complete the Tasks. The Claims Representative and his Team will not act as an agent or representative of the Debtors and, accordingly, the Debtors shall have no responsibility or liability for, and no obligations to indemnify or hold harmless the Claims Representative or his Team for any acts or omissions whatsoever. In addition, the Claims Representative and his Team will not owe any duty to any Unfiled Fire Claimants (whether known or unknown) that are unable to be located or who do not file a claim, nor shall the Claims Representative and his Team have any duty to represent Unfiled Fire

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Claimants who file Proofs of Claim or to defend their claims once filed.  In order to avoid

2    duplication of efforts, the Claims Representative and his Team may capitalize and build

3    upon the work conducted in the Wildfire Assistance Program and the Notice Procedures,

4    including the Supplemental Notice Plan.  The Claims Representative and his Team, acting

5    within the course and scope of their agency and representation, are entitled to rely on all

6    outstanding rules of law and Orders of this Court, and the U.S. District Court for the Northern

7    District of California, and shall not be liable to anyone for their good faith compliance with

8    any Order, rule, law, judgment or decree. In no event shall the Claims Representative or his

9    Team be liable to anyone for their good faith compliance with their respective duties and

10   responsibilities as the Claims Representative or Team, nor shall the Claims Representative or

11   Team be liable to anyone for any actions taken or omitted by them, in each case, except upon

12   a finding of this Court that they acted or failed to act as a result of malfeasance, bad faith,

13   intentional misconduct, or reckless disregard of their respective duties.

14   5.   The Claims Representative and his Team will consult with the TCC, Debtors, and Prime

15   Clerk to maximize the effectiveness of the Extended Bar Date while avoiding undue

16   duplication of efforts and to minimize costs.  Prime Clerk will cooperate with the Claims

17   Representative, including by responding to reasonable claims-related information

18   requests.

19   6.   Notwithstanding anything herein to the contrary, Fire Claimant Proof of Claim Forms

20   must be submitted in accordance with the procedures and in the manner set forth in the

21   Bar Date Order; *except that* (i) Unfiled Fire Claimants shall have until the Extended Bar

22   Date to submit their claims in accordance with the procedures set forth in the Bar Date

23   Order; (ii) Prime Clerk may receive Proof of Claim Forms from Unfiled Fire Claimants at

24   the locations established within the fire zones pursuant to Paragraph 2(iii) above; and (iii)

25   the Claims Representative may, at his discretion, utilize the claims filing system

26   implemented between Prime Clerk and BrownGreer for storage and uploading of

27   completed Proof of Claim Forms under Paragraph 3 of the Order re: the Production of the

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BrownGreer Database [Dkt. 3922].[2]

7.    The Claims Representative shall be permitted to seek to obtain information necessary from any of the various parties including the TCC, the Debtors, and the Ad Hoc Subrogation Group. The Claims Representative will be deemed a "Receiving Party" entitled to receive and review materials designated in discovery in these cases as Highly Confidential or Professional Eyes Only, pursuant to Section 7.3 of the Confidentiality and Protective Order dated August 8, 2019 [Dkt. 3405], as well as to receive and review any materials designated with less-protected designations, such as "Confidential" or "Contractor Confidential," solely for the purpose of contacting or providing notice to Unfiled Fire Claimants for the purposes of this Stipulation. The Claims Representative will also be subject to all other terms of the Confidentiality and Protective Order pertaining to the protection and disposition of Protected Materials. Parties in these cases who are in possession of Protected Materials containing information about Unfiled Fire Claimants that may assist the Claims Representative in his duties may produce such Protected Materials to the Claims Representative under the terms of the Confidentiality and Protective Order.

8.    The Claims Representative's appointment will terminate at 5:00 p.m. Pacific Standard Time on January 20, 2020, to enable the Claim Representative to file a report with the Court, and the Claims Representative will be released from its duties and obligations described in this Stipulation other than with respect to maintaining confidentiality as set forth in Paragraphs 6 and 7 hereof. Promptly following the termination of the Claim Representative's appointment, the Claims Representative shall, and shall cause all of his Team to, return all confidential materials received pursuant to Paragraph 7 above to the producing party.

9.    The Parties understand and agree that nothing herein nor the existence, or act of entering

---

[2] The Claims Representative's access to filed claim data is limited to helping to identify Unfiled Fire Claimants by running comparisons with other data sources. The Claims Representative's appointment is limited to Unfiled Fire Claimants and nothing in this Order shall be construed to expand the Claims Representative's responsibilities to Filed Claimants or those claimants represented by counsel.

1    into, this Stipulation shall constitute or be construed as an admission or evidence of any

2    fault, improper action, inadequacy, insufficiency, or any other legal inference or otherwise

3    with respect to the Notice Procedures, the Supplemental Notice Plan, or the Debtors'

4    efforts generally to provide notice of the Bar Date and related procedures to known and

5    unknown claimants, including Known and Unknown Fire Claimants, as approved by the

6    Court pursuant to, and in accordance with, the Bar Date Order.

7    10.    Upon execution of this Stipulation, the hearing on the Bar Date Extension Motion shall

8    automatically be deemed adjourned (with the Debtors' deadline to file any response or

9    objection to the Bar Date Extension Motion extended) pending approval of this

10    Stipulation by the Court.  Upon the approval of this Stipulation by the Court, the Bar Date

11    Extension Motion shall promptly be withdrawn.

12

13    Dated: November 11, 2019              Dated: November 11, 2019

14    CRAVATH, SWAINE & MOORE LLP           BAKER & HOSTETLER LLP

15

16    */s/ Kevin J. Orsini*                 */s/ Robert A. Julian*
      Kevin J. Orsini                      Robert A. Julian

17    *Attorneys for Debtors*              *Attorneys for Official Committee of Tort*
18    *and Debtors in Possession*          *Claimants*

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5    **<u>EXHIBIT A</u>**
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

| | |
|---|---|
| 1 | Robert A. Julian (SBN 88469)<br>Cecily A. Dumas (SBN 111449) | WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*) |
| 2 | BAKER & HOSTETLER LLP | (stephen.karotkin@weil.com) |
| 3 | 1160 Battery Street, Suite 100<br>San Francisco, CA 94111 | Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com) |
| 4 | Telephone:    628.208.6434<br>Facsimile:    310.820.8859 | Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com) |
| 5 | Email: rjulian@bakerlaw.com<br>Email: cdumas@bakerlaw.com | Matthew Goren (*pro hac vice*)<br>(matthew.goren@weil.com) |
| 6 | | 767 Fifth Avenue |
| 7 | | New York, NY 10153-0119<br>Tel: 212 310 8000 |
| 8 | | Fax: 212 310 8007 |
| 9 | Eric E. Sagerman (SBN 155496)<br>David J. Richardson (SBN 168592) | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (pro hac vice) |
| 10 | Lauren T. Attard (SBN 320898) | (pzumbro@cravath.com) |
| 11 | BAKER & HOSTETLER LLP<br>11601 Wilshire Blvd., Suite 1400 | Kevin J. Orsini (pro hac vice)<br>(korsini@cravath.com) |
| 12 | Los Angeles, CA 90025-0509<br>Telephone:   310.820.8800 | Omid H. Nasab (pro hac vice)<br>(onasab@cravath.com) |
| 13 | Facsimile:   310.820.8859<br>Email: esagerman@bakerlaw.com | 825 Eighth Avenue<br>New York, NY 10019 |
| 14 | Email: drichardson@bakerlaw.com<br>Email: lattard@bakerlaw.com | Tel: 212 474 1000<br>Fax: 212 474 3700 |
| 15 | *Counsel to the Official Committee of Tort<br>Claimants* | *Attorneys for Debtors and Debtors in<br>Possession* |
| 16 | | |

<div style="margin-left:2em;">

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Bankruptcy Case<br>No. 19-30088 (DM) |
| **PG&E CORPORATION** | |
| -and- | Chapter 11 (Lead Case)<br>(Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC<br>COMPANY,** | **ORDER EXTENDING BAR DATE FOR<br>FIRE CLAIMANTS AND APPOINTING<br>CLAIMS REPRESENTATIVE** |
| **Debtors.** | |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>■ Affects both Debtors | Re: Docket No. 4292 |
| *All papers shall be filed in the Lead Case,<br>No. 19-30088 (DM)* | No Hearing Requested |

</div>

17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    The Court having considered the *Stipulation Between Debtors and Official Committee of*

2    *Tort Claimants to Extend Bar Date for Fire Claimants and Retain Claims Representative,* dated

3    November 8, 2019 (the "**Stipulation**[1]"), and pursuant to such Stipulation and agreement of the

4    Parties, and good cause appearing,

5    **IT IS HEREBY ORDERED THAT:**

6    1.    The Stipulation is hereby approved.

7    2.    The Original Bar Date will be extended solely for the benefit of Unfiled Fire

8    Claimants[2] to December 31, 2019 at 5:00 p.m. (Prevailing Pacific Time) (the "**Extended Bar**

9    **Date**").

10   3.    The Court appoints Michael G. Kasolas to serve as a special claims representative

11   for the benefit of Unfiled Fire Claimants (the "**Claims Representative**") *nunc pro tunc* to

12   November 1, 2019. The Claims Representative shall be given broad discretion to conduct his tasks

13   for the benefit of Unfiled Fire Claimants and shall be tasked with (the "**Tasks**"):

14   (i)    identifying and locating Unfiled Fire Claimants and implementing procedures to

15   provide notice of the Extended Bar Date to Unfiled Fire Claimants;

16   (ii)    establishing and implementing procedures to inform and educate Unfiled Fire

17   Claimants about their rights to file Fire Claims by the Extended Bar Date, and

18   implementing reasonable methods to reach Unfiled Fire Claimants to inform them

19   of the Extended Bar Date and how to file Fire Claimants Proof of Claim Forms on

20   account of any Fire Claims;

21   (iii)    assisting Unfiled Fire Claimants with the process of filing Fire Claimants' Proof of

22   Claim Forms in these cases, including coordinating with Prime Clerk LLP ("**Prime**

23   **Clerk**") who will be independently setting up locations within the fire zone areas

24   where Prime Clerk representatives shall receive Proof of Claim Forms; and

25

26   _____

27   [1] Capitalized terms used but not herein defined have the meanings ascribed to such terms in the Stipulation.

28   [2] For purposes of this Order, "**Unfiled Fire Claimants**" means any non-governmental Fire Claimants who have not filed Proofs of Claim by the October 21, 2019 Original Bar Date.

1

1    (iv)    periodically reporting to both this Court and to Judge Donato on progress and

2            results.

3    4.    The Claims Representative will have the authority to engage staff, personnel,

4    vendors (including but not limited to media/advertising, project management services, technology

5    solutions, public relations, and other consultants), and counsel (collectively the **"Team"**) to assist

6    in the implementation of the Tasks.

7    5.    The reasonable and documented fees and expenses of the Claims Representative and

8    any of his Team shall be allowed administrative expenses of the Debtors' estates and paid by the

9    Debtors in the ordinary course of business, without further application to or order of the Court,

10    upon receipt of invoice. If any dispute arises relating to any invoice, the parties shall meet and

11    confer in an attempt to resolve the dispute and, if resolution is not achieved, the matter shall be

12    resolved by the Court. The Claims Representative shall not be personally responsible or liable for

13    the fees and expenses of his Team, and may apply to the Court for approval of advance fees or costs

14    if deemed necessary in order to successfully complete the Tasks. The Claims Representative and

15    his Team will not act as an agent or representative of the Debtors and, accordingly, the Debtors

16    shall have no responsibility or liability for, and no obligations to indemnify or hold harmless the

17    Claims Representative or his Team for any acts or omissions whatsoever. In addition, the Claims

18    Representative and his Team will not owe any duty to any Unfiled Fire Claimants (whether known

19    or unknown) that are unable to be located or who do not file a claim, nor shall the Claims

20    Representative and his Team have any duty to represent Unfiled Fire Claimants who file Proofs of

21    Claim or to defend their claims once filed. In order to avoid duplication of efforts, the Claims

22    Representative and his Team may capitalize and build upon the work conducted in the Wildfire

23    Assistance Program and the Notice Procedures, including the Supplemental Notice Plan. The

24    Claims Representative and his Team, acting within the course and scope of their agency and

25    representation, are entitled to rely on all outstanding rules of law and Orders of this Court, and the U.S.

26    District Court for the Northern District of California, and shall not be liable to anyone for their good

27    faith compliance with any Order, rule, law, judgment or decree. In no event shall the Claims

28    Representative or his Team be liable to anyone for their good faith compliance with their respective

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

duties and responsibilities as the Claims Representative or Team, nor shall the Claims Representative or Team be liable to anyone for any actions taken or omitted by them, in each case, except upon a finding of this Court that they acted or failed to act as a result of malfeasance, bad faith, intentional misconduct, or reckless disregard of their respective duties.

6.      The Claims Representative and his Team will consult with the TCC, Debtors, and Prime Clerk to maximize the effectiveness of the Extended Bar Date while avoiding undue duplication of efforts and to minimize costs.    Prime Clerk will cooperate with the Claims Representative, including by responding to reasonable claims-related information requests.

7.      Notwithstanding anything herein to the contrary, Fire Claimant Proof of Claim Forms must be submitted in accordance with the procedures and in the manner set forth in the Bar Date Order; *except that* (i) Unfiled Fire Claimants shall have until the Extended Bar Date to submit their claims in accordance with the procedures set forth in the Bar Date Order; (ii) Prime Clerk may receive Proof of Claim Forms from Unfiled Fire Claimants at the locations established within the fire zones pursuant to Paragraph 2(iii) above; and (iii) the Claims Representative may, at his discretion, utilize the claims filing system implemented between Prime Clerk and BrownGreer for storage and uploading of completed Proof of Claim Forms under Paragraph 3 of the Order re: the Production of the BrownGreer Database [Dkt. 3922].[3]

8.      The Claims Representative shall be permitted to seek to obtain information necessary from any of the various parties including the TCC, the Debtors, and the Ad Hoc Subrogation Group.    The Claims Representative will be deemed a "Receiving Party" entitled to receive and review materials designated in discovery in these cases as Highly Confidential or Professional Eyes Only, pursuant to Section 7.3 of the Confidentiality and Protective Order dated August 8, 2019 [Dkt. 3405], as well as to receive and review any materials designated with less-protected designations, such as "Confidential" or "Contractor Confidential," solely for the purpose of contacting or providing notice to Unfiled Fire Claimants for the purposes of this Stipulation.

---

[3] The Claims Representative's access to filed claim data is limited to helping to identify Unfiled Fire Claimants by running comparisons with other data sources.    The Claims Representative's appointment is limited to Unfiled Fire Claimants and nothing in this Order shall be construed to expand the Claims Representative's responsibilities to Filed Claimants or those claimants represented by counsel.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  The Claims Representative will also be subject to all other terms of the Confidentiality and
2  Protective Order pertaining to the protection and disposition of Protected Materials.  Parties in these
3  cases who are in possession of Protected Materials containing information about Unfiled Fire
4  Claimants that may assist the Claims Representative in his duties may produce such Protected
5  Materials to the Claims Representative under the terms of the Confidentiality and Protective Order.

6      9.    The Claims Representative's appointment will terminate at 5:00 p.m. Pacific
7  Standard Time on January 20, 2020, to enable the Claim Representative to file a report with the
8  Court, and the Claims Representative will be released from its duties and obligations described in
9  this Stipulation other than with respect to maintaining confidentiality as set forth in Paragraphs 6
10  and 7 hereof.  Promptly following the termination of the Claim Representative's appointment, the
11  Claims Representative shall, and shall cause all of his Team to, return all confidential materials
12  received pursuant to Paragraph 7 above to the producing party.

13      10.    The Parties understand and agree that nothing herein nor the existence, or act of
14  entering into, this Stipulation shall constitute or be construed as an admission or evidence of any
15  fault, improper action, inadequacy, insufficiency, or any other legal inference or otherwise with
16  respect to the Notice Procedures, the Supplemental Notice Plan, or the Debtors' efforts generally
17  to provide notice of the Bar Date and related procedures to known and unknown claimants,
18  including Known and Unknown Fire Claimants, as approved by the Court pursuant to, and in
19  accordance with, the Bar Date Order.

20      11.    Upon execution of this Stipulation, the hearing on the Bar Date Extension Motion
21  shall automatically be deemed adjourned (with the Debtors' deadline to file any response or
22  objection to the Bar Date Extension Motion extended) pending approval of this Stipulation by the
23  Court.

24      12.    Promptly following entry of this Order, the Bar Date Extension Motion shall be
25  withdrawn.

26      13.    The Bankruptcy Court retains jurisdiction to resolve any disputes or controversies
27  arising from the Stipulation.

28                    **END OF ORDER**

4