PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew M. Troop
31 West 52nd Street
New York, New York 10019
212-858-1000

*Counsel to the Ad Hoc Group of Non-Consenting States*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA, L.P.,** *et al.*,[1] | Case No. 19-23649 (RDD) |
| **Debtors.** | (Jointly Administered) |

**THE AD HOC GROUP OF NON-CONSENTING STATES' CONTINUING OBJECTION TO PURDUE'S WAGE MOTION AS IT RELATES TO PURDUE CEO CRAIG LANDAU AND RESPONSE TO THE DEBTORS' SECOND SUPPLEMENTAL REPLY**

---

[1] The debtors in these chapter 11 cases ("**Debtors**" or "**Purdue**"), along with the last four digits of their federal tax identification numbers, are Purdue Pharma Manufacturing L.P. (3821), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies K.P. (1868), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (6166), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' principal offices are at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

The Ad Hoc Group of Non-Consenting States (the "**Non-Consenting States**")[2] and the Commonwealth of Pennsylvania[3] maintain their objections [*see* Docket Nos.[4] 196, 197, 557] to the motion filed by Purdue seeking various forms of relief relating to employee wages and benefits (the "**Wage Motion**") [Docket No. 6, 758] to the extent it seeks authority to make payments under certain incentive compensation programs to Craig Landau ("**Landau**"), Purdue's Chief Executive Officer and a named defendant in multiple law enforcement actions subject to this Court's *Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Proc. Docket No. 132].

## Preliminary Statement

1.  As a direct result of the Non-Consenting States' continuing objection and requests for information, the Debtors have now: (a) agreed to defer vesting until December 31, 2020 of the second half of a $6,000,000 retention payment they paid to Landau in March 2018, if the Court allows the Debtors to pay Landau an additional $1,313,250 now [*see* Second Supplemental Reply[5] ¶ 5 ("a change of great value to the Debtors")]; and (b) made public, for the first time, that Purdue

---

[2]  California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, and Wisconsin.

[3]  For ease of reading, further references to the Non-Consenting States in this response shall include the Commonwealth of Pennsylvania in its individual capacity as an objector. The undersigned has been advised that the State of Maryland also maintains its position as articulated in its December 2, 2019 filing [*see* Docket No. 559].

[4]  References to "Docket No. __" refer to docket entries in the Debtors' main case (Case No. 19-23649 (RDD)), and references to "Adv. Proc. Docket No." refer to docket entries in the adversary proceeding titled *Purdue Pharma L.P., et al. v. Com. of Massachusetts, et al.* (Adv. Proc. No. 19-09289).

[5]  As used in this response, the "**Second Supplemental Reply**" means the *Debtors' Second Supplemental Omnibus Reply in Support of Motion of Debtors for Entry of an Order Authorizing (I) Debtors to (a) Pay Pre-Petition Wages, Salaries, Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs And Pay Related Administrative Obligations, (II) Employees and Retirees to Proceed With Outstanding Workers' Compensation Claims and (III) Financial Institutions to Honor and Process Related Checks and Transfers*, Docket No. 758. Capitalized terms used but not defined in this Objection shall have the meanings ascribed to them in the Second Supplemental Reply.

overpaid Landau by nearly $660,000 between 2016 and July 2019, which he will now be required to repay in to the estate [*see* Second Supplemental Reply ¶ 32].

2. Notwithstanding those concessions, the Non-Consenting States maintain their objection as it relates to Landau for two principal reasons. *First*, although the Debtors have now described Landau's *total* compensation in detail in the Second Supplemental Reply, they still fail to consider the impact of that total, including the impact of a $6,000,000 retention payment in March 2018 originally intended to reward Landau for staying with the Debtors through 2022, on their AIP request. Accordingly, the Debtors have not satisfied the burden set forth in *In re Dana Corp.*, 358 B.R. 567, 576-77, 584 (Bankr. S.D.N.Y. 2006). Moreover, by making their offer to defer vesting contingent upon immediate payment of the AIP, the Debtors seem to assert that they must guarantee that Landau receives more than $4,300,000 to ensure that he continues his work with the Debtors this year. However, they offer no explanation as to why deferring the vesting of just the $3,000,000 and not paying him the additional $1,313,250 will not have the same result, while saving the estate more than $1,000,000.

3. *Second*, Landau is a named defendant in lawsuits initiated by multiple states seeking to hold him personally liable for his participation in Purdue's deceptive scheme to get more people on Purdue's dangerous opioids, at higher and more dangerous doses, for longer and more harmful periods of time. *See* Statement of Objection ¶¶ 7-14.[6] The Non-Consenting States understand that the Court previously stated that it will not sustain the objection on this ground, at least in significant part, because the Supplemental Final Wage Order, Docket No. 629 (based on a similar order in the *Insys Therapeutics, Inc.* bankruptcy) will preserve the ability to claw back

---

[6] "**Statement of Objection**" refers to the *Statement of the Ad Hoc Group of Non-Consenting States Maintaining Its Objection to Purdue's Wage Motion [ECF Docket No. 6] Insofar As It Relates to Purdue CEO Craig Landau*, Docket No. 557.

payments should it later be determined that Landau acted inappropriately. *See* Dec. 4 2019 Hr'g Tr. at 120:20-25 ("But to me, particularly if you beef up the language a la the Insys order … and you recognize that there's the same no-secretion language, which is better than a pre-judgment attachment, which you probably wouldn't be able to get, I'm not sure what more can be said at this point."). Unlike here, however, in *Insys,* the claw-back language was intended to cover instances where individuals were *later* discovered to have engaged in wrongful conduct. The individuals—like Landau—subject to allegations of wrongful conduct were *not* eligible for severance payments.

## Background

4. Landau joined Purdue Pharma in 1999, was Chief Medical Officer from 2007 to 2013, and has been CEO since 2017.[7] From 2013 to 2017, Landau was the CEO of Purdue Pharma Canada. Together, Purdue Pharma and Purdue Pharma Canada are defendants in thousands of lawsuits alleging that they engaged in, *inter alia*, illegal marketing and promotion of opioids while Landau was their chief executive. *See* Adv. Proc. Docket No. 1 (Complaint), Ex. C (Pending Actions) (listing thirteen (13) Canadian actions, including one (1) filed by Her Majesty the Queen in Right of the Province of British Columbia).

5. On December 4, 2019, the Court conducted a hearing on the Wage Motion. At the hearing, the Court granted the Wage Motion, except as it related to Landau's AIP. The Court deferred ruling on that portion of the Wage Motion citing concerns about the insufficiency of the record as to Landau's historical compensation and, in particular, the absence of any reference to the $6,000,000 retention payment Purdue paid to Landau in 2018. *See* Dec. 4, 2019 Hr'g Tr. at

---

[7] A November 2017 presentation that Landau received before he disbanded Purdue's sales force in February 2018 shows Purdue calculated that **96% of OxyContin prescriptions** were carry-over from the past and that only 4% of OxyContin prescriptions derived from promotion. *See The States' Notice of Public Health Information to Protect Purdue Patients* at 6-7 [Docket No. 630] (the "**Notice of Public Health Information**") ("Because OxyContin is a 'matured product' with 96% carryover, Purdue could eliminate its sales force and still expect to collect hundreds of millions of dollars of profit from OxyContin every year through 2022."); *see also id.*, Ex. 2 at 6, 23.

125:5-16 ("So in terms of this year's AIP, I think that I don't have the type of record that I have with everyone else that first of all this wasn't clear to me. Ms. Gartrell's chart actually focuses on the post-Creditors' Committee deal. It doesn't reflect the 6 million, and she says, well, we never reflect retention payments, but the purpose of the retention payment is to stay, but it's been accelerated. So it's not really a retention payment. To me that raises serious issues as to whether under the *Dana II* standard I should approve this because it actually, to me, takes it without the additional AIP for 2019 into the median or mean.")

6. After the December 4, 2019 hearing, the Non-Consenting States engaged with Purdue in further diligence with respect to Landau's historical compensation. Based on information reflected in Court filings and/or provided by Purdue, the States understand Landau's 2018-2019 compensation, as follows:

a. In January 2018, Landau's base salary was $1,250,000 with a target AIP of $875,000 (70% of salary) and a target LTRP of $600,000. In other words, Landau's annual compensation (exclusive of perquisites) was $2,725,000.

b. On March 23, 2018, Purdue prepaid Landau a $6,000,000 retention payment (the "**Prepaid Retention**"). As originally contemplated, the Prepaid Retention was to vest 50% by March 2020 and 100% by March 1, 2022. A few months later, in June 2018, Purdue accelerated the vesting schedule so that Landau would be fully vested in the Prepaid Retention payment by March 1, 2020.

c. On June 8, 2018, Purdue doubled Landau's base salary to $2,500,000, with a target AIP of $2,500,000 (100% of salary) and a target LTRP of $600,000. In other words, Purdue increased Landau's annual compensation (exclusive of perquisites and the Prepaid Retention) to $5,600,000.

d. In February 2019, Purdue again increased Landau's base salary to $2,626,000, with a target AIP of $2,626,000 and a target LTRP of $1,530,000. In other words, Purdue increased Landau's annual compensation (exclusive of perquisites and the Prepaid Retention) to $6,783,000.

e. In or around December 2019, in an effort to resolve objections to the Wage Motion, Landau agreed to forgo his 2019 LTRP and to reduce his 2019 AIP by 50% (to $1,313,250).

7. On January 17, 2020, Purdue filed the Second Supplemental Reply advising that:

   a. Landau has conditionally agreed "to defer until December 31, 2020 the vesting of the final $3 million of Landau's 2018 retention payment that otherwise would have vested in less than six weeks on March 1, 2020" thereby "'spreading' this retention payment over 22 months instead of 12." Second Supplemental Reply ¶ 5; and

   b. "[I]n connection with a detailed review of a variety of compensation matters in the summer of 2019, it was determined that Dr. Landau erroneously received from Purdue, over a three-year period, continued payment of a tax equalization benefit that was paid to him while CEO of Purdue Canada in the aggregate amount of $658,794. These payments ceased in July 2019 once this determination was made and will be repaid to Purdue by Landau in 2020[,]" including $500,545 attributable to 2018 and 2019. Second Supplemental Reply ¶ 32.

8. Throughout the Second Supplemental Reply and through their proposed additional concession of "spreading" the as-yet unvested portion of the Prepaid Retention "over 22 months instead of 12," the Debtors seek to minimize the benefits to Landau of having been paid the Prepaid Retention in cash in 2018. *See* Second Supplemental Reply ¶¶ 5, 29 ("While it is true that the arithmetic total of CEO compensation, reimbursements, indemnification, and other total payments attributable to 2018 and 2019, prior to the payment of the reduced 2019 AIP, is approximately $17.21 million, this figure standing alone, while admittedly material, paints a misleading picture of the value of these payments to Dr. Landau.")

9. Even if one accepts the Debtors' newest proposal to defer full vesting of the $3,000,000 of the Prepaid Retention to December 2020, Landau's total compensation and perquisites for the 2018-2019 time period, *excluding* reimbursements for indemnification and business expenses, would be approximately $16,117,865:[8]

---

[8] The Willis Towers Declaration submitted by the Debtors [Docket No. 758 ¶ 44], offers the following benchmarking comparison for CEO total direct compensation (which includes base salary, AIP and LTRP, but excludes retention payments and perquisites):

|  | 2018 | 2019 | Total |
|---|---|---|---|
| **Compensation and Benefits** | | | |
| Annual Incentive Payment | $ 3,442,500 | $ 1,313,250 | $ 4,755,750 |
| Long-term Incentive Program | $ 665,333 | $ - | $ 665,333 |
| Salary | $ 1,980,288 | $ 2,618,788 | $ 4,599,076 |
| Retention Payment | $ 2,500,000 | $ 1,863,636 | $ 4,363,636 |
| Other Benefits (retirement, 401K, etc.) | $ 421,110 | $ 284,637 | $ 705,747 |
| **Other Perquisites** | | | |
| Foreign Tax Equalization | $ 443,034 | $ 144,886 | $ 587,920 |
| Tax Equalization Payment | $ 300,327 | $ 173,266 | $ 473,593 |
| Housing Reimbursement | $ 205,144 | $ 185,364 | $ 390,508 |
| Auto Allowance | $ 40,932 | $ 17,658 | $ 58,590 |
| Foreign Tax Preparation | | $ 18,257 | $ 18,257 |
| Less Equalization Overpayment | | | ($500,545) |
| Total | $ 9,998,668 | $ 6,619,742 | $ 16,117,865 |

If, in contrast, the Debtors' proposal is not accepted and vesting completes in March of 2020, Landau's total compensation for 2018-2019 time period would be approximately $15,940,979:

|  | 2018 | 2019 | Total |
|---|---|---|---|
| **Compensation and Benefits** | | | |
| Annual Incentive Payment | $ 3,442,500 | $ - | $ 3,442,500 |
| Long-term Incentive Program | $ 665,333 | $ - | $ 665,333 |
| Salary | $ 1,980,288 | $ 2,618,788 | $ 4,599,076 |
| Retention Payment | $ 2,500,000 | $ 3,000,000 | $ 5,500,000 |
| Other Benefits (retirement, 401K, etc.) | $ 421,110 | $ 284,637 | $ 705,747 |
| **Other Perquisites** | | | |
| Foreign Tax Equalization | $ 443,034 | $ 144,886 | $ 587,920 |
| Tax Equalization Payment | $ 300,327 | $ 173,266 | $ 473,593 |
| Housing Reimbursement | $ 205,144 | $ 185,364 | $ 390,508 |
| Auto Allowance | $ 40,932 | $ 17,658 | $ 58,590 |
| Foreign Tax Preparation | | $ 18,257 | $ 18,257 |
| Less Equalization Overpayment | | | ($500,545) |
| Total | $ 9,998,668 | $ 6,442,856 | $ 15,940,979 |

---

| CEO TTDC ($000s) | Survey Market TTDC ($000s) | | | Variance (%) | | | Variance ($) | | |
|---|---|---|---|---|---|---|---|---|---|
| | P25 | P50 | P75 | P25 | P50 | P75 | P25 | P50 | P75 |
| $3,940 | $3,510 | $5,015 | $7,165 | 12% | -21% | -45% | $430 | -$1,075 | -$3,225 |

Under either scenario, these amounts are *exclusive* of:

    a. Reimbursements for certain expenses incurred in 2018 and 2019, namely indemnification expenses ($1,171,901), and business expenses ($338,515);

    b. The $500,545 overpayment of the tax equalization benefit attributable to 2018 and 2019, which Purdue has indicated Landau intends to reimburse in 2020;

    c. The $227,150 in private air travel from March 2018 through April 2019; and

    d. Approximately $150,000 for the loss of income of Landau's spouse associated with relocation ($8,333.34 per month from January 2018 through June 2019).

10. At each exchange with the Debtors, the Non-Consenting States honestly apprised the Debtors that they remained unable to consent to a proposed AIP to Landau given the allegations of wrongdoing that have been made against him.[9]

### The Debtors Still Have Not Satisfied Their *Dana II* Burden

11. *Dana II* articulates six (6) factors for courts to consider when evaluating a request to approve an employee benefit plan. The most relevant here are whether the plan is designed to achieve the desired performance and the diligence undertaken in determining the bonus. *Dana II*, 358 B.R. at 576-77.

12. As explained above, prepetition changes in Landau's compensation and acceleration of retention payments originally intended to keep him at Purdue through 2022 placed his total compensation above the amount of the median TDC for CEOs. The Debtors have failed to show why more is required to incent Landau to achieve any performance that may be desired of him during this chapter 11 case.

---

[9] The Non-Consenting States have offered to work with the Debtors to develop a new incentive program for Landau that would be based on identifiable public health benefits achieved during the chapter 11. The Debtors have yet to respond to the Non-Consenting States with respect to this alternative incentive proposal.

13. Furthermore, it is unclear that Landau need do anything to achieve the most substantial portion of future financial performance by the Debtors. The most significant portion of the Debtors' revenue and profit derives from the sales of OxyContin and that revenue and profit will continue notwithstanding the February 2018 decision, attributed to Landau by the Debtors, to cease Purdue's marketing and promotion of opioids. *See* Notice of Public Health Information at 6-7 (in November 2017, Purdue understood that its OxyContin sales were "mainly from carry-over" and 96% would likely continue after the dismantling of its OxyContin sales force).

14. In addition, the Debtors' diligence with respect to Landau's compensation was deficient. In addition to excluding any mention of the $6,000,000 Prepaid Retention payment or the $660,000 overpayment in their Wage Motion until now, they have not provided any "apples to apples" benchmarks that include retention payments and other perquisites in the compensation analysis. The only advisor evidence is based on an analysis that excludes retention payments and perquisites.

## **Reliance on the *INSYS* Claw-Back Is Insufficient**

15. The *Insys* order from which language incorporated into the Supplemental Final Wage Order was derived related to entitlement to postpetition severance by individuals not yet known to be subject to allegations of wrongdoing prior to the commencement of the *Insys* chapter 11. Those for whom there were existing allegations of wrongdoing were excluded from receiving severance payments altogether because they were no longer employed by that debtor.

16. The *Insys* language is therefore not appropriate to deal with Landau. Instead, as the Non-Consenting States contend, estate funds should not be paid to reward Landau who faces allegations of wrongdoing in connection with the prepetition sale and promotion of opioids,

particularly where, as here, the AIP is based in substantial part on the Debtors' opioid sales, and even excluding the AIP, Landau will be paid millions of dollars in 2020.

## Conclusion

17. For these reasons, the Non-Consenting States maintain their objection to the AIP payment for Landau.

WHEREFORE, the Non-Consenting States respectfully request that the Court deny or defer final approval of the Wage Motion as it relates to Landau.

Dated: January 22, 2020

                                          */s/ Andrew M. Troop*
                                          Andrew M. Troop
                                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                                          31 West 52nd Street
                                          New York, New York 10019-6118
                                          (212) 858-1660
                                          Email: andrew.troop@pillsburylaw.com

                                          *Counsel to the Ad Hoc Group of Non-Consenting States*

                                          */s/ Melissa L. Van Eck*
                                          Melissa L. Van Eck
                                          Senior Deputy Attorney General
                                          Pennsylvania Office of Attorney General
                                          Strawberry Square, 15th Floor
                                          Harrisburg, PA 17120
                                          Telephone (717) 787-5176
                                          Email: mvaneck@attorneygeneral.gov

                                          *Counsel to Josh Shapiro, Attorney General for the Commonwealth of Pennsylvania*

**CERTIFICATE OF SERVICE**

      I, Andrew M. Troop, hereby certify that, on January 22, 2020, I caused true and correct copies of the foregoing document to be served (i) by the Court's Case Management/Electronic Case File (CM/ECF) System to all parties who are deemed to have consented to electronic service; and (ii) by email upon the parties set forth in the Master Service List maintained by the Debtors in respect of these chapter 11 cases.

      In addition, on January 22, 2020, I caused true and correct copies of the document to be served on the following:

Attn: Paul K. Schwartzberg
Office of the United States Trustee
Southern District of New York
201 Varick Street, Suite 1006
New York, NY 10014
***Via Overnight Delivery Mail***

                                           /s/ *Andrew M. Troop*
                                           Andrew M. Troop

4816-1572-2162