## Acha Tesyajantorn

| | |
|---|---|
| **From:** | Jonathan Gentile <jgentile@peerless-inc.com> |
| **Sent:** | Tuesday, November 19, 2019 12:08 PM |
| **To:** | CRG Submissions |
| **Subject:** | [EXTERNAL]   Case # 19-23649 Creditor ID 1284890 |
| **Attachments:** | CRG Financial LLC Re Purdue Pharma Chapter 11 PMSC executed.pdf |

Please see attached and remit duly executed copy to me as soon as possible.


**Regards,**

**Jonathan Gentile, CPA**
**Peerless, Inc.**
**15 Lawrence Bell Drive**
**Buffalo, NY 14221**
**Main: (716) 852-4784**
**Direct: (716) 566-3558**
**Fax: (716) 852-5458**





**CRG Financial LLC**
100 Union Avenue
Cresskill, NJ
07626

TELEPHONE +1 (856) 284-6378
FAX NUMBER +1 (201) 266-6985
CRGFINANCIAL.COM

**F I N A N C I A L**

ATTENTION: FINANCE DEPARTMENT
**IMMEDIATE ATTENTION REQUIRED**

In Re: Purdue Pharma L.P.

Case #: 19-23649

In the Southern District of New York

CREDITOR ID: 1284890
PEERLESS MILL SUPPLY COMP INC
15 LAWRENCE BELL DR
BUFFALO, NY 14221

**DEADLINE:**
**WEDNESDAY, NOVEMBER 20, 2019**
**at 5:00 PM EST**

Dear Sir or Madam,

Purdue Pharma L.P. and its affiliated debtors, including Rhodes, Adlon and Imbrium Therapeutics, Rhodes Technologies, and Avrio Health, remain under Chapter 11 Bankruptcy protection in the Southern District of New York, lead case no. 19-23649. According to the debtor's filings, your company is still owed money.

CRG Financial LLC (CRG) is a leading source of funds for creditors holding claims against bankrupt entities, and is currently interested in acquiring outstanding debt which you remain owed by Purdue Pharma L.P. and/or its affiliated debtors:

| | |
|---|---|
| **Administrative Claims** (for <u>goods</u> delivered between August 26, 2019 and September 14, 2019) | **70%** |
| **All Other Claims** | **10%** |

**To proceed:**
Sign/complete and return all 3 pages, along with documentation/i.e. copies of unpaid invoices which substantiate your unpaid receivable.

Send completed forms to: **email: submissions@crgfinancial.com**
**fax: +1 (201) 266-6985** or mailed to the address provided above

Payment will be issued immediately upon satisfactory completion of CRG's internal due diligence process.

IF YOU HAVE ANY QUESTIONS OR NEED HELP, PLEASE CALL:
**+1 (856) 284-6378**

Valid only on a first come first served basis and will expire at <u>5:00 PM (EST) on Wednesday, November 20, 2019.</u>
*Allocation for this case is limited, so please do not delay.*

Sincerely,

Gary Del Moro

*This letter and any and all documents or communications sent by CRG Financial LLC ("CRG") are non-binding indications of interest until a written contract is duly executed by all parties. CRG reserves the right to refuse to purchase any claim, at its sole discretion and for any reason, without further notice or obligation. CRG is an independent financial firm not affiliated with or hired by the Debtor or the Bankruptcy Court. Any discrepancies regarding any of the foregoing shall be governed by the laws of New Jersey.*

PPLPDMS_1

CLAIM PURCHASE AGREEMENT

Assignment of Claim. PEERLESS MILL SUPPLY COMP INC (hereinafter "Seller"), with a principal address of 15 LAWRENCE BELL DR,  BUFFALO, NY 14221 for good and valuable consideration as described herein, does hereby absolutely and unconditionally sell,   convey, and transfer to CRG Financial LLC, and any of its successors, assigns or designees (hereinafter "Purchaser"), all of Seller's right, title, benefit,  interest, claims and causes of action in and to, or arising under or in connection with, Seller's claim(s) for either or both:

(1)    goods delivered within 20 days of the bankruptcy filing, i.e., between <u>August 26, 2019</u> and <u>September 14, 2019</u> (the "<u>Administrative Claim</u>"); and/or

(2)    all other goods and/or services provided (the "<u>Unsecured Claim</u>," and, collectively with the Administrative Claim, the "<u>Claim</u>")

against Purdue Pharma L.P. or any of its co-debtor subsidiaries or affiliates (collectively, the  "<u>Debtor</u>"), in bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>"), Case No. 19-23649 (the "<u>Case</u>");  and includes any Proof of Claim (defined below), along with voting and any other rights and benefits which may now exist, or come into existence, in regards to the   Claim, all cash, securities, instruments and other property, to be paid or issued by Debtor or any other party, directly or indirectly, in connection with and/or in  satisfaction of the Claim, including, without limitation, "cure" amounts related to the assumption of an executory contract and any rights to receive payment in respect  thereof, and all rights to receive interest, penalties, fees, and any damages from any cause of action, litigation or rights of any nature against Debtor, its affiliates, any  guarantor or other third party, which may be paid or issued with respect to and/or in satisfaction of the Claim (the "<u>Recovery</u>"). This Claim Purchase Agreement (the  "<u>Agreement</u>") shall be deemed an unconditional purchase of the Claim for the purpose of collection and shall not be deemed to create a security interest.  In consideration for the purchase of the Claim, Purchaser shall pay to Seller (i) the product of the amount of any Administrative Claim (as evidenced by supporting documents provided by Seller) multiplied by 70%, plus; (ii) the product of the amount of any Unsecured Claim (as evidenced by supporting documents provided by Seller) multiplied by 10% (together, the "<u>Purchase Price</u>").

<u>Proof of Claim</u>. Seller represents and warrants that a copy of any and all Proofs of Claim that they have filed shall be provided to Purchaser. The term "Proof of Claim" shall include: (a) any and all multiple Proofs of Claim timely filed by or on behalf of Seller in respect of the Claim, and (b) any and all of Seller's documentation supporting the Claim.

<u>Representations; Warranties and Covenants</u>. Seller represents, warrants and covenants that, (a) the Administrative Claim, if any, was incurred with respect to goods delivered to the Debtor between <u>08/26/2019</u> and <u>09/14/2019</u>; (b) Seller owns  and has sole title to the Claim free and clear of any and all liens, security interests or encumbrances of any kind or nature whatsoever, including, without limitation,  pursuant to any factoring agreement, and upon the sale of the Claim to Purchaser, Purchaser will receive good title to the Claim; (c) Seller has not previously sold,  assigned, transferred, or pledged the Claim, in whole or in part, to any third party and neither Seller, nor any other third party, has received any payment or other  distribution, in full or partial satisfaction of, or in connection with, the Claim; (d) the basis for the Claim is amounts validly due from and owing by the Debtor; (e) the   Claim is a valid, undisputed, liquidated, enforceable, and non-contingent claim against the Debtor for which the Debtor has no defenses and no objection to the Claim  has been filed, listed on the Debtor's schedule of liability or any amendment thereto (collectively, the "<u>Schedules</u>"), or threatened; (f) Seller has not engaged in any acts,   conduct or omissions that might result in Purchaser receiving, in respect of the Claim, less payments or distributions or any less favorable treatment than other similarly  situated creditors; (g) Debtor, or any other third party, has no basis to assert the Claim is subject to any defense, claim or right of setoff, reduction, impairment,  disallowance, subordination or avoidance, including preference actions, whether on contractual, legal or equitable grounds; (h) Seller has not filed a reclamation claim with respect to the goods  related to the Claim or, if Seller has filed a reclamation claim related to such goods, Seller has withdrawn the reclamation claim prior to entering into this Agreement; (i) Seller is not "insolvent" within the  meaning of Section 1-201 (23)  of the Uniform Commercial Code or Section 101 (32) of the Bankruptcy Code; and (j) Seller is not an "insider" of the Debtor, as set  forth in § 101(31) of the Bankruptcy Code, or a member of any official or unofficial committee in connection with the Case.  Seller acknowledges and unconditionally   agrees any misrepresentation or breach by Seller may cause Purchaser irreparable harm and accordingly, Purchaser shall be entitled to all available remedies for any   such misrepresentation, breach or threatened breach, including but not limited to the immediate recovery of money damages ("<u>Restitution</u>") including, without limitation, a "Restitution Payment", as further defined below plus reasonable attorney's fees and costs.

Seller is aware that the Purchase Price may differ from the amount ultimately distributed in the Case with respect to the Claim. Seller acknowledges that, except as set   forth herein, neither Purchaser nor any agent or representative of Purchaser has made any representation whatsoever to Seller regarding the status of the Case, the  condition of Debtor or any other matter relating to the Case, the Debtor or the Claim.  Seller represents that it has adequate information concerning the Case to make   an informed decision regarding the sale of the Claim and that it has independently and without reliance on Purchaser, and based on such information as it has deemed  appropriate, made its own analysis and decision to enter into this Agreement.

<u>Execution of Agreement</u>.  This Agreement shall become effective and valid when (a) Seller executes this Agreement and it is received by Purchaser <u>and</u> (b) the Agreement is executed by an authorized representative of Purchaser and (c) Purchaser delivers payment in foll to Seller *JOR*

<u>Consent and Waiver</u>.  Seller hereby acknowledges and consents to all of the terms set forth in this Agreement and hereby waives its right to raise any objections and/or to receive notice pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure.

<u>Claim or Recovery Impaired or Allowed for an Amount Less than Amount of Claim</u>.  **Purchaser assumes all risks with respect to the amount of Recovery, even if the Recovery is less than the Purchase Price.** Notwithstanding the foregoing, to the extent that (i) the Claim (as bought and paid for by Purchaser) is impaired for any reason, including, without limitation, disallowance, reduction of either the Administrative Claim or the Unsecured Claim, subordination, objection, offset, demand for repayment as a preference, or due to a breach of this Agreement, (ii) the Administrative Claim, if any, is reclassified as something other than an administrative expense claim pursuant to 11 U.S.C. § 503(b)(9), <u>and/or</u> (iii) the Claim is listed on any Schedules or amendments thereto as unliquidated, contingent or disputed, or in a lesser amount than the amount of the Claim, Seller agrees to make to Purchaser immediate proportional Restitution and repayment of the Purchase Price (the "<u>Restitution Payment</u>"), together with interest at the rate of one percent (1%) per month on the amount repaid for the period from the date of this Agreement until the date such repayment is made. The Restitution Payment with respect to an impairmentfor any Administrative Claim shall be the product of the amount by which the Administrative Claim is reduced, reclassified or otherwise impaired, multiplied by (i) the purchase rate of 70%, or (ii) at Purchaser's sole option, 60% if a portion or all of the Administrative Claim is reclassified and Purchaser elects to retain such portion as an Unsecured Claim. The Restitution Payment with respect to an impairment of any Unsecured Claim shall be the product of the amount by which the Unsecured Claim is otherwise reduced or impaired multiplied by the purchase rate of 10%. Seller further agrees to reimburse Purchaser for all costs, and expenses, including reasonable legal fees and costs, incurred by Purchaser as a result of such disallowance or impairment.

Notices (including Voting Ballots) Received by Seller; Further Cooperation. Seller agrees to immediately forward to Purchaser any and all notices received from Debtor, the Court or any third party regarding the Claim and to take such further action, with respect to the Claim, as Purchaser may request from time to time. More specifically, Seller shall take such further action as may be necessary or desirable to effect the transfer of the Claim and to direct any payments or distributions, or any form of Recovery on account of the Claim, to Purchaser, including the execution of appropriate voting ballots, transfer powers and consents at Purchaser's sole discretion.

Recovery Received/Delayed by Seller. In the event Seller (i) receives any distribution of the Recovery, or any portion thereof, made payable on or after the date of Seller's execution of this Agreement; or (ii) delays or impairs Purchaser's right to Recovery for any reason (each (i) and (ii) a "Delayed Recovery Event"), then Seller agrees to (a) accept any Recovery the same as Purchaser's agent and to hold the same in trust on behalf of and for the sole benefit of Purchaser and shall promptly deliver the same forthwith to Purchaser in the same form received, or in a form reasonably requested by Purchaser, free of any withholding, set-off, claim or deduction of any kind and/or (b) settle or cure the reason for the Delayed Recovery Event (each (a) and (b) a "Settlement") within ten (10) business days of the Delayed Recovery Event (the "Settlement Date"). Seller shall pay Purchaser interest, calculated at the rate of two (2%) percent per month, of any amount or portion of Recovery that incurs a Delayed Recovery Event, for each day after the Settlement Date until such Recovery is received by Purchaser.

Authorizations. Seller irrevocably appoints Purchaser as its true and lawful attorney and authorizes Purchaser to act in Seller's stead, to demand, sue for, compromise and recover all amounts as now are, or may hereafter become, due and payable on account of the Claim. Seller grants Purchaser full authority to do all things necessary to enforce the Claim and its rights thereunder. Seller agrees that the powers granted in this paragraph are discretionary in nature and that Purchaser may exercise or decline to exercise such powers at Purchaser's sole option. Purchaser shall have no obligation to prove or defend the Claim.

Indemnification. Seller agrees to indemnify Purchaser from all losses, damages and liabilities, including reasonable attorney's fees and expenses, which result from (a) Seller's breach of any representation, warranty or covenant set forth herein, (b) any action, proceedings, objection or investigation relating to any attempt or threatened attempt to avoid, disallow, reduce, subordinate or otherwise impair the Claim or otherwise delay payments or distributions in respect of the Claim, and/or (c) litigation arising out of or in connection with this Agreement.

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey. Any action arising under or relating to this Agreement shall be brought in any State or Federal court located in the State of New Jersey, and Seller consents to and confers personal jurisdiction over Seller by such court or courts and agrees that service of process may be upon Seller by mailing a copy of said process to Seller at the address set forth in this Agreement, and in any action hereunder the Seller and Purchaser each waive the right to demand a trial by jury.

Miscellaneous. Seller agrees that the terms of this Agreement are confidential and may not be disclosed without Purchaser's prior written consent. Purchaser shall have the right to all remedies including specific performance and other injunctive and equitable relief without a showing of irreparable harm or injury and without posting a bond for any breach of this Agreement. Each party expressly acknowledges and agrees that it is not relying upon any representations, promises, or statements, except to the extent that the same are expressly set forth in this Agreement, and that each party has the full authority to enter into this Agreement and that the individuals whose signatures appear below hereby expressly represent that they have the authority to bind the party for which they sign this Agreement. The parties hereby mutually agree and stipulate that this Agreement is the result of negotiations between the parties and the terms hereof are jointly negotiated terms. Accordingly, any rules of interpretation, construction or resolving ambiguity against the drafter that otherwise apply, shall not apply hereto. This Agreement (i) may not be modified, waived, changed or discharged, in whole or in part, except by an agreement in writing signed by the parties; (ii) constitutes the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and (iii) supersedes all prior agreements, understandings and representations pertaining to the subject matter hereof, whether oral or written. Seller hereby acknowledges that Purchaser may at any time resell the Claim, or any portion thereof, together with all right title and interest received by Purchaser in and to this Agreement. Seller shall not assign or otherwise transfer its rights or obligations under this Agreement without the prior written consent of Purchaser. This Agreement shall be binding upon any prospective successor of Seller (whether by operation of law, merger or otherwise) or on any purchaser of all or substantially all of Seller's assets ("Transfer"). In connection with any such Transfer, the purchaser, successor or assignee of Seller shall be bound by the terms and conditions of this Agreement. All representations and warranties made herein shall survive the execution and delivery of this Agreement and any Transfer. This Agreement may be signed in counterparts and by telecopy, or other commonly acceptable form of electronic transmission, each of which shall be deemed an original and all of which taken together shall constitute the Agreement. Failure or delay on the part of Purchaser to exercise any right, power or privilege hereunder shall not operate as a waiver thereof.

IN WITNESS WHEREOF, the undersigned Seller hereunto sets its hand this 18 day of November , 2019.
ATTEST:

Sign Here ➡  By: _____  Jonathan Gentile, Controller  716-852-4734  jgentile@peerless-inc.com
              Signature          Print Name/Title           Telephone #         Email

**PEERLESS MILL SUPPLY COMP INC**

IN WITNESS WHEREOF, the undersigned Purchaser hereunto sets its hand this ____ day of _____, 2019.
ATTEST:

By: _____
CRG Financial LLC
Tel: (201)-266-6988 Fax: (201) 266-6985

PPLPDMS_1

PEERLESS MILL SUPPLY COMP INC ("Seller"), sells, transfers and assigns unto CRG Financial LLC, with an address at 100 Union Avenue, Cresskill, NJ 07626, its successors and assigns (collectively, the "Purchaser"), pursuant to the terms of a Claim Purchase Agreement between Seller and Purchaser (the "Agreement"), all of Seller's right, title and interest in, to and under Seller's Claim (as defined in the Agreement), including any and all payments of cure amounts owed with respect to the assumption of any of Seller's contracts, against Purdue Pharma L.P. or any of its co-debtor subsidiaries or affiliates (the "Debtor"), representing all claims of Seller pending against Debtor in the United States Bankruptcy Court, Southern District of New York, jointly administered as Case No. 19-23649.

Seller hereby waives its right to raise any objection and/or receive notice pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedures and stipulates that an order may be entered recognizing the Agreement as an unconditional sale and the Purchaser as the valid owner of the Claim.

**IN WITNESS WHEREOF, the undersigned Seller hereunto sets its hand this** 18 **day of** November **, 2019.**
ATTEST:

Sign Here →    By: _____    Jonathan Gentile, Controller
                        Signature                    Print Name/Title

**PEERLESS MILL SUPPLY COMP INC**

**IN WITNESS WHEREOF, the undersigned Purchaser hereunto sets its hand this** ____ **day of** _____ **, 2019.**
ATTEST:

By: _____
CRG Financial LLC

------------------------------------------------

**PLEASE INCLUDE: (i) A COPY OF EACH OUTSTANDING INVOICE, AND
(ii) (IF APPLICABLE) PROOF OF DELIVERY REFLECTING PURDUE PHARMA L.P.'S
RECEIPT OF PRODUCT(S) ON OR BETWEEN 08/26/2019 AND 09/14/2019**

------------------------------------------------

# PAYMENT SELECTION

**PLEASE INDICATE THE METHOD OF PAYMENT YOU ARE REQUESTING. IF YOU ARE REQUESTING TO BE FUNDED VIA WIRE, YOU MUST COMPLETE THE WIRE INSTRUCTIONS.**

o **Check**          ☑ **Wire**

## Wire Instructions:

Client Name: Peerless Mill Supply Co., Inc.

### Beneficiary Bank:
Bank Name: M & T Bank
Routing #: 022 000 046

### Beneficiary Account:
Account Name: Peerless Mill Supply Co. Inc.
Account #: 0000 63270
Beneficiary Contact: Jonathan Gentile, jgentile @ peerless-inc.com

**United States Bankruptcy Court, Southern District of New York**

Fill in this information to identify the case (Select only one Debtor per claim form):

Debtor: Rhodes Technologies

Case Number: 19-23668

## Modified Form 410

# Proof of Claim

4/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

CRG Financial LLC (As Assignee of Peerless Mill Supply Company Inc.)
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☑ Yes. From whom?  Peerless Mill Supply Company Inc.

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

CRG Financial LLC
100 Union Avenue
Cresskill, NJ 07626

Where should payments to the creditor be sent? (if different)

Contact phone  201.266.6988
Contact email  aaxenrod@crgfinancial.com

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No <br> ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
| **7. How much is the claim?** | $ _4,768.49_ *(partially entitled to 503(b)(9) admin. priority)*    **Does this amount include interest or other charges?** <br> ☑ No <br> ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. <br><br> Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br><br> Limit disclosing information that is entitled to privacy, such as health care information. <br><br> _goods (delivered within the 20 days prior to the filing)_ |
| **9. Is all or part of the claim secured?** | ☑ No <br> ☐ Yes. The claim is secured by a lien on property. <br><br> **Nature of property:** <br> ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*. <br> ☐ Motor vehicle <br> ☐ Other. Describe: _____ <br><br> **Basis for perfection:** _____ <br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br> **Value of property:**    $_____ <br><br> **Amount of the claim that is secured:**    $_____ <br><br> **Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.) <br><br> **Amount necessary to cure any default as of the date of the petition:**    $_____ <br><br> **Annual Interest Rate (when case was filed)** _____% <br> ☐ Fixed <br> ☐ Variable |
| **10. Is this claim based on a lease?** | ☑ No <br> ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ |
| **11. Is this claim subject to a right of setoff?** | ☑ No <br> ☐ Yes. Identify the property: _____ |

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* |

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(     ) that applies. | $_____ |
| *\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.* | |

| | |
|---|---|
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No<br>☑ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.    $ 4,731.43 |

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/02/2019    (mm/dd/yyyy)

*Signature:* Shannon Kalb

**Name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Shannon Kalb |
| | First name        Middle name        Last name |
| Title | |
| Company | CRG Financial LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 100 Union Avenue |
| | Number        Street |
| | Cresskill, NJ 07626 |
| | City        State    ZIP Code |
| Contact phone | 201.266.6988        Email aaxenrod@crgfinancial.com |

**Margarita Oganesyan**

| | |
|---|---|
| **From:** | Jonathan Gentile <jgentile@peerless-inc.com> |
| **Sent:** | Monday, November 25, 2019 3:44 PM |
| **To:** | Margarita Oganesyan |
| **Subject:** | Re: In Re: Purdue Pharma L.P. (PEERLESS MILL SUPPLY COMP INC) |
| **Attachments:** | 3110036183.pdf |

Please see attached for the purchase order.

The freight terms were Prepaid & Add so we added $37.06 to our invoice.

**Regards,**

**Jonathan Gentile, CPA**
**Peerless, Inc.**
**15 Lawrence Bell Drive**
**Buffalo, NY 14221**
**Main: (716) 852-4784**
**Direct: (716) 566-3558**
**Fax: (716) 852-5458**



On Mon, Nov 25, 2019 at 1:53 PM Margarita Oganesyan <moganesyan@crgfinancial.com> wrote:

Good afternoon,

I am writing in regard to your claim in Purdue's bankruptcy.

Please kindly email me a copy of PO# 3110036183 and also please advise if there are any credits to offset the claim.

*Thank you!*

*Margarita Oganesyan*

*CRG Financial LLC*
*100 Union Avenue*
*Cresskill, NJ 07626*
*T 201.266.6988*



**Peerless, Inc.**
**15 Lawrence Bell Drive**
**Buffalo, New York 14221**
**Phone: 1-800-234-3033    Fax: 1-716-852-5458**
**www.peerless-inc.com**

**Invoice: 299532**

| **INVOICE** | Page: | 1 of 1 |
|---|---|---|
| | Date: | 8/28/2019 |

**Sold To:**
Accounts Payable
Rhodes Technologies
1 Stamford Forum
Stamford CT 06901-3431
USA

**Ship To:**
Bryan Proulx
Rhodes Technologies
498 Washington St
Coventry RI 02816
USA

**Fax:** 203-517-3550          Email: invoices@pharma.com

| PO Number: **3110036183** | Terms: Net 45 | F.O.B.: OFPPA |
|---|---|---|
| Sales Rep: Greg Bayerl | Ordered: 8/5/2019 | Ship Via: UPS GROUND SERV |
| Packing Slip: 42615 | Sales Tax ID: 22-3527143 | Ship Date: 8/28/2019 |

Legal Number:      299532

| Line | Part Number/Description | Revision | Quantity | Unit Price | Ext Price |
|---|---|---|---|---|---|
| 1 | 2-SD-IL-400-S | | 1.00 EA | 4,731.4286/1 | 4,731.43 |
| | 2" AEGIS ANSI 150 # PFA LINED 316 | | **PO Number:** 3110036183 | | |
| | | | | **Warehouse Code:** Main | |

| *Miscellaneous Charges* | |
|---|---|
| **Description** | **Amount** |
| 10.) Freight Charges | 37.06 |

| *Payment Schedule* | |
|---|---|
| Due Date | **Amount** |
| 1      10/12/2019 | 4,768.49 |
| *Total* | 4,768.49 |

| Total: | 4,768.49 $ |
|---|---|

Peerless QMS certified to **ISO 9001:2015**

ARForm:001:00



**Peerless, Inc.**
**15 Lawrence Bell Drive**
**Buffalo, New York 14221**
**Phone: 1-800-234-3033   Fax: 1-716-852-5458**
**www.peerless-inc.com**

**Pack Slip: 42615**          **Packing Slip**          Page:     1 of 1

| Ship To: | Bryan Proulx | Sold To: | Rene Barchiesi |
|---|---|---|---|
| | Rhodes Technologies | | Rhodes Technologies |
| | 498 Washington St | | 1 Stamford Forum |
| | Coventry RI 02816 | | Stamford CT 06901-3431 |
| | USA | | USA |

| **Phone:** 401-262-9200 | **Phone:** 401-262-9200 |
|---|---|
| **Fax:** 1-585-247-7268 | **Fax:** 401-262-9201 |

Ship Date: 8/28/2019                     Ship Via: UPS GROUND SERVICE     F.O.B.: ORIGIN: PPA Freight
Tracking #: 1Z1220970391221588

| PO Line | Part Number / Description   Planned Qty | Shipped Qty | Rev |
|---|---|---|---|
| **Sales Order:285390** | **Your PO:** 3110036183 | Salesperson:Greg Bayerl | |
| Line  1 | Rel  1 | | |
| | 2-SD-IL-400-S / 2" AEGIS ANSI 150 # PFA LINED 316 | | |
| | 1.00 EA | 1.00 EA | |

**CLAIMS FOR SHORTAGES MUST BE MADE WITHIN 10 BUSINESS DAYS OF RECEIPT OF MATERIAL**
Win a Peerless hat! Visit www.peerless-inc.com/yourfeedback

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**

1Z1220970391221588

**Weight**

24.00 LBS

**Service**

UPS Ground

**Shipped / Billed On**

08/28/2019

**Delivered On**

08/30/2019 10:23 A.M.

**Delivered To**

COVENTRY, RI, US

**Received By**

JOE

**Left At**

Dock

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 11/18/2019 12:57 P.M. EST

*This purchase order was delivered by Ariba Network.  For more information about Ariba and Ariba Network, visit http://www.ariba.com.*



**From:**
**Accounts Payable Dept. 6th Floor**
1 Stamford Forum
STAMFORD , CT 06901-3516
United States

**To:**
**Peerless Mill Supply Company, Inc.**
15 Lawrence Bell Dr
Buffalo , NY 14221
United States
Phone:
Fax:
Email: oemteam1@peerless-inc.com

**Purchase Order**
**(New)**

3110036183
Amount: $4,731.43 USD
Version: 1

---

**Payment Terms**
NET 45

**Comments**
Comment Type:
Submit
Comment Body:
Per quote #: 201903 received on 07/25/2019.
Comment By:
Bryan Proulx
Comment Date:
2019-08-02T11:08:32-07:00


Comment Type:
General
Comment Body:

Comment By:
Bryan Proulx
Comment Date:
2019-08-02T11:08:19-07:00



Comment Type: Terms and Conditions
Body:1. Acceptance of the offer contained in this Purchase Order is expressly limited to the terms and conditions stated herein. Acknowledging receipt of this Order, or performing any of the work or services called for, or shipping any part of this Order, constitutes acceptance of this Order and of the terms and conditions herein. Any additional or different terms by Seller are hereby rejected and this Order shall be deemed accepted by Seller without said additional or different terms and conditions.

2. Any reference herein to Sellers offer or proposal is solely for the purpose of incorporating a description of the goods or services contained therein to the extent it does not conflict with the description on the face of this Order. If this Order is deemed an acceptance of a prior offer or proposal by Seller: such acceptance is limited to the terms contained herein; additional or different terms by the Seller shall be deemed material and are objected to and rejected; however, this Order shall not operate as a rejection of Seller's offer unless it contains variances in the description, quantity, price or delivery schedule of the goods. This purchase order may be issued pursuant to a consultant, services or other agreement between Buyer and Seller ("Agreement"). In the event of any conflict between any of the terms and conditions of this purchase order or any attached quotation and the terms and conditions of the Agreement, the terms and conditions of the Agreement shall govern and control. In addition, the parties agree that any general Seller terms and conditions appended to any Seller quotation, invoice or otherwise will not be applicable and will have no binding force or effect on Buyer or any of its Associated Companies.

3. Buyer may delay delivery and/or acceptance occasioned by causes beyond its control and/or force majeure.

4. Seller warrants that prices under this Order are at least as favorable as those charged to any other customer for the same or like goods or services in equal or less quantities. If no price is specified in this Order, the goods or services shall be billed at the price last quoted to Buyer or at the prevailing market price, whichever is lower.

5. No additional charges will be allowed, including charges for taxes, transportation, storage, or packing, unless specified in this Order.

6. Buyer reserves the right at any time to change the requirements of this Order as to the specifications, methods of shipment and packaging, and place of delivery or performance. Such changes shall be in writing and signed by an authorized representative of Buyer. If a change affects Seller's cost of and/or time required for performance, an equitable adjustment in price and/or delivery date shall be made by the parties in writing, but any claim by seller for adjustment must be made within thirty (30) days after the change order date.

7. Seller agrees to defend, hold harmless and indemnify Buyer, its employees and customers from and against any and all claims, actions, liabilities, losses, costs and expenses (including attorney's fees): a) arising out of any actual or alleged infringements of any patent, trademark, copyright or other rights, misappropriation of trade secrets, or breach of confidential relationship, with respect to the goods or services covered by this Order; (b) arising out of any actual or alleged death of or injury to any person, damage to any property, or any other damage or loss by whomsoever suffered, arising out of, resulting or claimed to result, in whole or in part, from the goods or services purchased hereunder or

from any act or omission of the Seller, its agents or employees; or (c) Faq in these Terms & Conditions.

8. This order and any payments to be made hereunder may not be assigned or transferred without the prior written approval of the Buyer. All claims for monies due or to become due from the Buyer shall be subject to deduction by the Buyer of any setoff or counter-claim arising out of this or any other purchase orders with the Seller whether such set off or counterclaim arose before or after such assignment by the Seller.

9. Seller warrants that the goods delivered and services performed hereunder will conform with specifications, drawings, samples or other descriptions furnished or adopted by Buyer, and will be, suitable for the purpose intended, of merchantable quality, of good material and workmanship and free from defects. Such warranties shall run for the benefit of the Buyer, its employees and customers, and shall survive inspection, acceptance, and payment by Buyer. Seller will indemnify and hold Buyer, its employees, agents and customer harmless against all liability, damages and expenses (including attorney's fees and incidental and consequential damages) resulting from any breach of said warranties.

10. Payment for the goods or services delivered hereunder shall not constitute acceptance thereof. Buyer shall have the right to inspect such goods and to reject any or all of said goods which are in buyer's judgment defective or nonconforming. Goods so rejected and goods supplied in excess of quantities called for herein may be returned to the Seller at Sellers expense and, in addition to Buyer's other rights, Buyer may charge the Seller all expenses of unpacking, examining, repacking and reshipping such goods. In the event Buyer receives goods whose defects or nonconformity Is not apparent on examination, resulting in deterioration of its finished product, Buyer reserves the right to require replacement of the goods as well as payment of damages.

11. Delivery time is of the essence. If deliveries are not made in the quantities and at the times specified, if services are not performed at the time specified or if Seller breaches any of the provisions of this Order, Buyer, in addition to its other rights and remedies, may cancel this Order and charge Seller with any loss and additional expenses incurred as a result thereof.

12. This Purchase Order constitutes the entire agreement of sale and purchase with respect to the goods or services indicated on the front. No waiver of or change in the terms or provisions of the Order shall be valid unless specifically agreed to in writing by authorized employee of Buyer. Receipt of or acceptance of the goods ordered shall not constitute such specific agreement by Buyer. Waiver of a breach of, or non-compliance with, any provision of the Order shall not constitute waiver of any other breach or non-compliance.

13. If there is any change in the material, the services or manufacturing process from that used in previous orders, or from that used during the course of this Order, Seller shall so notify Buyer in writing and obtain Buyer's express written approval of such change. Seller assumes all liability for products made or services rendered without first obtaining such approval. Buyer's approval of such change shall not, however, relieve Seller of any liability under any other terms of this Purchase Order.

14. Buyer reserves the right, upon written notice, to terminate this Order or any part thereof for the sole convenience of the Buyer. If such termination is invoked, all reasonable costs incurred to date of termination will be reimbursed plus a reasonable profit on the work performed.

15. Seller represents that all products supplied and to be supplied to Buyer are either of US or designated country origin, as defined by 48 CFR 25.003. Seller will notify Purdue in writing at least 60 days before delivering any product of non-designated country origin. Seller further represents that all products supplied or to be supplied to Buyer shall not be acquired from any country, entity, or individual listed on the Office of Foreign Assets Control (OFAC)'s List of Specially Designated Nationals and Blocked Person at http://www.treas.gov/offices/enforcemen t/ofac/sdn.

16. The remedies herein specified shall be cumulative and do not exclude any additional remedies allowed in law or equity. The invalidity in whole or in part of any term of this Order shall not affect the validity of any other terms.

17. This Order and the performance of the parties hereunder shall be construed and governed in accordance with the laws of the State of the Buyer.

18. Seller warrants that all good have been produced and all services will be provided in compliance with all applicable federal, state and local laws, and all executive orders, rules and regulations and that these laws are incorporated herein by reference, including but not limited to, where applicable (i) FAR [48 C.F.R.] 52.203-12, Limitation on Payments to Influence Certain Federal Transactions (Oct. 2010); (ii) FAR 52-203-13, Contractor Code of Business Ethics and Conduct (Oct. 2015); (iii) FAR 52.219-8, Utilization of Small Business Concerns (Dec. 2010) (incorporating 15 U.S.C. 637(d)(2) and (3)); (iv) FAR 52.222.26, Equal Opportunity (Mar. 2007) (incorporating Executive Order 11246); (v) FAR 52.222-35, Equal Opportunity for Veterans (Sep. 2010) (incorporating 38 U.S.C. 4212); (vi) FAR 52.222-36. Affirmative Action for Workers with Disabilities (Oct. 2010) (incorporating 29 U.S.C. 793); (vii) FAR 52.222-40, Notification of Employee Rights under the National Labor Relations Act (Dec. 2010) (incorporating E.O. 13496); (viii) Combating Trafficking in Persons (Feb. 2009) (incorporating 22 U.S.C. 7104(g)). With respect to FAR 52.222-35 and FAR 52.222-36, this contractor and subcontractor shall abide by the requirements of (ix) 41 CFR 60-300.5(a) and 41 CFR 60-741.5(a). These regulations prohibit discrimination against qualified protected veterans and qualified individuals on the basis of disability, and require affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified protected veterans and qualified individuals with disabilities. Seller further represents that neither it nor any of its principals is presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal Agency.

**Other Information**

| | |
|---|---|
| Company Code: | 227 |
| Purchasing Unit Name: | Rhodes Technologies |

**ATTACHMENTS**
📎 201903_-_Aegis_Sample_Valve.pdf (application/pdf)

**SHIP ALL ITEMS TO**

**Rhodes Technologies**
498 Washington Street
COVENTRY , RI 02816-5467
United States
Ship To Code:  RI01
Phone:  +1 (401) 2629341
Email:  BRYAN.PROULX@RHODESTEC.COM

**BILL TO**

**Accounts Payable Dept. 6th Floor**
1 Stamford Forum
STAMFORD , CT 06901-3516
United States

**DELIVER TO**

Bryan Proulx
Rhodes Technologies

**Line Items**

| Line # | Part # / Description | Customer Part # | Type | Return | Revision Level | Qty (Unit) | Unit Price | Subtotal | Customer Location |
|--------|--------------------|-----------------|------|--------|----------------|-----------|-----------|----------|-------------------|
| 1 | 2-SD-IL-400-S | | Material | | | 1 (EA) | $4,731.43 USD | $4,731.43 USD | |

2-SD-IL-400-S
2" AEGIS ANSI 150 # PFA LINED 316
STAINLESS STEEL WAFER STYLE CLOSED
LOOP SAMPLE VALVE WITH SPRING TO
CLOSE SAFETY HAND-LEVER. WITHOUT
BOTTLE ADAPTER

**Other Information**

| | |
|---|---|
| Req. Line No.: | 1 |
| Requester: | Bryan Proulx |
| PR No.: | PR53164 |
| Classification Domain: | custom |
| Classification Code: | A110508 |

Order submitted on: Monday 5 Aug 2019 10:07 AM GMT-04:00
Received by Ariba Network on: Monday 5 Aug 2019 10:07 AM GMT-04:00
This Purchase Order was sent by Purdue Pharma AN01016162910 and delivered by Ariba Network.

| Sub-total: | $ 4,731.43 | USD |
|---|---|---|

**Rhodes Technologies**                                    Case Number:  19-23668 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Unpaid Prepetiton Trade Payables** | | | | | | | |
| 3.60 NATIONAL GRID<br>PO BOX 11739<br>NEWARK, NJ 07101 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $7,491 |
| 3.61 NATIONAL GRID<br>PO BOX 11739<br>NEWARK, NJ 07101 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $88 |
| 3.62 NEPONSET CONTROLS INC<br>71 ELM STREET<br>FOXBOROUGH, MA 02035-2519 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $2,667 |
| 3.63 NEW ENGLAND PEST CONTROL CO<br>161 OCONNELL ST<br>PROVIDENCE, RI 02905-4812 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $764 |
| 3.64 NEW HARBOR LLC<br>1 DAVOL SQ STE 300<br>PROVIDENCE, RI 02903-4755 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $500 |
| 3.65 OCCUHEALTH INC<br>44 WOOD AVE<br>MANSFIELD, MA 02048-1255 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $3,497 |
| 3.66 PC CONNECTION INC<br>PO BOX 536472<br>PITTSBURGH, PA 15253-5906 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $460 |
| 3.67 PEERLESS MILL SUPPLY COMP INC<br>15 LAWRENCE BELL DR<br>BUFFALO, NY 14221 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $4,768 |
| 3.68 PFAUDLER INC<br>1000 WEST AVE<br>ROCHESTER, NY 14692 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $751 |
| 3.69 PITNEY BOWES GLOBAL FINANCIAL SVCS<br>PO BOX 371887<br>PITTSBURGH, PA 15250-7887 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $50 |
| 3.70 PROSYS SAMPLING SYSTEMS LTD<br>IDA BUSINESS PARK<br>COUNTY CORK, CK T45 AP82<br>IRELAND | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $3,120 |
| 3.71 PRYOR CASHMAN LLP<br>7 TIMES SQUARE<br>NEW YORK, NY 10036 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $54 |



PEERLESS MILL SUPPLY COMPANY, INC. - Full Company View

Saved by **Margarita Oganesyan** | 11-25-2019

---

# Summary

**Order Reference:** moganesyan@crgfinancial.com  |  **Report as of:** 11-25-2019 11:53 AM  |  using Currency as USD

## PEERLESS MILL SUPPLY COMPANY, INC.

Tradestyle(s): PEERLESS

`ACTIVE`  `SINGLE LOCATION`

| | |
|---|---|
| **Address:** | 15 Lawrence Bell Dr, Buffalo, NY, 14221, UNITED STATES |
| **Phone:** | (716) 852-4784 |
| **D-U-N-S:** | 00-213-0367 |
| **In Portfolio:** | No |

| Failure Score | Delinquency Score | Age of Business | Employees |
|---|---|---|---|
| **26** | **69** | **105 years** | **27** |
| 35 (in the last month) | (No change since last month) | 1914 Year Started | |

---

## Company Profile

**D-U-N-S**
00-213-0367

**Legal Form**
Corporation (US)

**History Record**
Clear

**Date Incorporated**
01-11-1914

**State of Incorporation**
New York

**Ownership**
Not publicly traded

**Mailing Address**
United States

**Telephone**
(716) 852-4784

**Website**
www.peerless-inc.com

**Present Control Succeeded**
1977

**Employees**
27

**Age (Year Started)**
105 years (1914)

**Named Principal**
David Mckendry, PRES

**Line of Business**
Whol industrial supplies

---

## Risk Assessment

### Overall Business Risk

| LOW | LOW-MODERATE | MODERATE | MODERATE-HIGH | HIGH |
|-----|--------------|----------|---------------|------|

**Maximum Credit Recommendation**

**US$ 52,500**

The recommended limit is based on a moderately low probability of severe delinquency.

### Dun & Bradstreet Thinks...

- Overall assessment of this organization over the next 12 months: **STABLE CONDITION**
- Based on the predicted risk of business discontinuation: **LIKELIHOOD OF CONTINUED OPERATIONS**
- Based on the predicted risk of severely delinquent payments: **MODERATE POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS**

---

### D&B Viability Rating

**Portfolio Comparison Score**

**4**

Low Risk (1)                    High Risk (9)

Company's risk level is: **LOW**

Probability that a company will go out of business, become dormant/inactive, or file for bankruptcy/insolvency within the next 12 months: **4.00 %**

---

### Failure Score   Formerly Financial Stress Score

**26**

Low Risk (100)                    High Risk (1)

Company's risk level is: **MODERATE**

Probability of failure over the next 12 months: **0.59 %**

Past 12 Months



---

### Delinquency Score   Formerly Commercial Credit Score

**69**

Low Risk (100)                    High Risk (1)

Company's risk level is: **MODERATE**

Probability of delinquency over the next 12 months: **3.80 %**

Past 12 Months

---

### PAYDEX ®

**72**

Low Risk (100)                    High Risk (0)

Days Beyond Terms : **12**

Past 24 Months

---

### D&B Rating

Current Rating as of 11-14-2016                    Previous Rating

| Employee Size | Risk Indicator | Employee Size | Risk Indicator |
|---|---|---|---|
| **1R** : 10 employees and over | **2** : Low Risk | **1R** : 10 employees and over | **3** : Moderate Risk |

## Legal Events

| Events | Occurrences | Last Filed |
|---|---|---|
| Bankruptcies | 0 | - |
| Judgements | 0 | - |
| Liens | 0 | - |
| Suits | 0 | - |
| UCC | 5 | 08-07-2018 |

## Trade Payments

**Highest Past Due**

### US$ 2,500

| Highest Now Owing | Total Trade Experiences |
|---|---|
| **US$ 35,000** | **47** |
| Largest High Credit | Average High Credit |
| **US$ 35,000** | **US$ 3,987** |



## Ownership

This company is a **Single Location**

## Financial Overview

This company does not have a Financial Summary.

## Country/Regional Insight

### United States



### Risk Category

| LOW | MODERATE | HIGH |
|---|---|---|

Low Risk                                                                          High Risk

US consumers continue to account for the bulk of GDP growth.

# Risk Assessment

## D&B Risk Assessment

## Overall Business Risk

| LOW | LOW-MODERATE | MODERATE | MODERATE-HIGH | HIGH |
|-----|--------------|----------|---------------|------|

### Maximum Credit Recommendation

**US$ 52,500**

The recommended limit is based on a moderately low probability of severe delinquency.

### Dun & Bradstreet Thinks…

- Overall assessment of this organization over the next 12 months: **STABLE CONDITION**
- Based on the predicted risk of business discontinuation: **LIKELIHOOD OF CONTINUED OPERATIONS**
- Based on the predicted risk of severely delinquent payments: **MODERATE POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS**

## D&B Viability Rating

### Portfolio Comparison Score

| **4** | | | | |
|-------|--|--|--|--|

Low Risk (1)                                                                 High Risk (9)

### Rating Confidence Level

**Robust Predictions** — Decision Support — Directional — Basic

### Data Depth

- Rich Firmographics
- Extensive Commercial Trading Activity
- Basic Financial Attributes

**Level of Risk**
**Low**

**Probability of becoming no longer viable**
**4.00%**

**Percentage of businesses ranked with this score**
**11.00%**

**Average probability of becoming no longer viable**
**5.00%**

## Failure Score Formerly Financial Stress Score

| | | **26** | | |
|--|--|--------|--|--|

Low Risk (100)                                                               High Risk (1)

- Low proportion of satisfactory payment experiences to total payment experiences
- High number of enquiries to D&B over last 12 months

- Low Paydex Score

| Level of Risk | Raw Score | Probability of Failure | Average Probability of Failure for Businesses in D&B Database |
|---|---|---|---|
| **Moderate** | **1428** | **0.59%** | **0.48%** |



**Business and Industry Trends**

### Delinquency Score Formerly Commercial Credit Score



| | | **69** | | |
|---|---|---|---|---|
| Low Risk (100) | | | | High Risk (1) |

- Increase in proportion of delinquent payments in recent payment experiences
- Recent high balance past due
- Proportion of past due balances to total amount owing
- Higher risk industry based on delinquency rates for this industry

| Level of Risk | Raw Score | Probability of Delinquency | Compared to Businesses in D&B Database |
|---|---|---|---|
| **Moderate** | **526** | **3.80%** | **10.20%** |

**Business and Industry Trends**



## PAYDEX ®

Based on 24 months of data



| 72 | | | | | Risk of Slow Pay | Payment Behavior |
| --- | --- | --- | --- | --- | --- | --- |
| Low Risk (100) | | | | High Risk (0) | **Low** | **12** Days Beyond Terms |

### Business and Industry Trends

5085 - Whol industrial supplies

## D&B Rating



Current Rating as of 11-14-2016

Previous Rating

| Employee Size | Risk Indicator | Employee Size | Risk Indicator |
| --- | --- | --- | --- |

| **1R** : 10 employees and over | **2** : Low Risk | **1R** : 10 employees and over | **3** : Moderate Risk |
|---|---|---|---|

# Trade Payments

## Trade Payments Summary (Based on 24 months of data)

| Overall Payment Behavior | % of Trade Within Terms | Highest Past Due |
|---|---|---|
| **12** | **85%** | **US$ 2,500** |
| Days Beyond Terms | | |

**Highest Now Owing:**
US$ 35,000

**Total Trade Experiences:**
47

Largest High Credit:
US$ 35,000

Average High Credit:
US$ 3,987

**Total Unfavorable Comments:**
0

Largest High Credit:
US$ 0

**Total Placed in Collections:**
0

Largest High Credit:
US$ 0

## Trade Payments By Credit Extended (Based on 12 months of data)

| Range of Credit Extended (US$) | Number of Payment Experiences | Total Value | % Within Terms |
|---|---|---|---|
| 100,000 & over | 0 | US$ 0 | 0 |
| 50,000 - 99,999 | 0 | US$ 0 | 0 |
| 15,000 - 49,999 | 3 | US$ 90,000 | 81 |
| 5,000 - 14,999 | 5 | US$ 42,500 | 53 |
| 1,000 - 4,999 | 20 | US$ 33,500 | 86 |
| Less than 1,000 | 15 | US$ 5,450 | 95 |

## Trade Payments By Industry (Based on 24 months of data)

| Industry Category | Number of Payment Experiences | Largest High Credit (US$) | % Within Terms (Expand to View) | 1 - 30 Days Late (%) | 31 - 60 Days Late (%) | 61 - 90 Days Late (%) | 91 + Days Late (%) |
|---|---|---|---|---|---|---|---|
| ▼ 17 - Construction - Special Trade Contractors | 1 | 2,500 | | | | | |
| 1731 - Electrical contractor | 1 | 2,500 | 100 | 0 | 0 | 0 | 0 |
| ▼ 30 - Rubber and Miscellaneous Plastics Products | 2 | 1,000 | | | | | |

| Industry Category | Number of Payment Experiences | Largest High Credit (US$) | % Within Terms (Expand to View) | 1 - 30 Days Late (%) | 31 - 60 Days Late (%) | 61 - 90 Days Late (%) | 91 + Days Late (%) |
|---|---|---|---|---|---|---|---|
| 3052 - Mfg hose & belting | 2 | 1,000 | 75 | 25 | 0 | 0 | 0 |
| ▼ 32 - Stone, Clay, Glass, and Concrete Products | 1 | 25,000 | | | | | |
| 3299 - Mfg nonmetal minerals | 1 | 25,000 | 100 | 0 | 0 | 0 | 0 |
| ▼ 33 - Primary Metal Industries | 1 | 250 | | | | | |
| 3365 - Aluminum foundry | 1 | 250 | 100 | 0 | 0 | 0 | 0 |
| ▼ 34 - Fabricated Metal Products except Machinery and Transportation Equipment | 1 | 1,000 | | | | | |
| 3494 - Mfg valve/pipe fittng | 1 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| ▼ 35 - Industrial and Commercial Machinery and Computer Equipment | 2 | 1,000 | | | | | |
| 3585 - Mfg refrig/heat equip | 1 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| 3593 - Mfg cylinder/actuator | 1 | 100 | 100 | 0 | 0 | 0 | 0 |
| ▼ 38 - Measuring Analyzing and Controlling Instruments; Photographic Medical and Optical Goods; Watches and Clocks | 1 | 35,000 | | | | | |
| 3824 - Mfg fluid meters | 1 | 35,000 | 50 | 50 | 0 | 0 | 0 |
| ▼ 42 - Motor Freight Transportation and Warehousing | 2 | 1,000 | | | | | |
| 4213 - Trucking non-local | 2 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| ▼ 47 - Transportation Services | 1 | 1,000 | | | | | |
| 4731 - Arrange cargo transpt | 1 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| ▼ 48 - Communications | 2 | 750 | | | | | |
| 4813 - Telephone communictns | 2 | 750 | 100 | 0 | 0 | 0 | 0 |
| ▼ 50 - Wholesale Trade - Durable Goods | 17 | 30,000 | | | | | |
| 5013 - Whol auto parts | 1 | 50 | 50 | 50 | 0 | 0 | 0 |
| 5051 - Whol metal | 3 | 2,500 | 100 | 0 | 0 | 0 | 0 |
| 5063 - Whol electrical equip | 2 | 750 | 100 | 0 | 0 | 0 | 0 |
| 5074 - Whol plumb/hydronics | 1 | 10,000 | 50 | 50 | 0 | 0 | 0 |
| 5084 - Whol industrial equip | 5 | 30,000 | 80 | 20 | 0 | 0 | 0 |
| 5085 - Whol industrial suppl | 5 | 10,000 | 53 | 40 | 0 | 0 | 7 |
| ▼ 51 - Wholesale Trade - Nondurable Goods | 2 | 10,000 | | | | | |
| 5113 - Whol service paper | 1 | 10,000 | 100 | 0 | 0 | 0 | 0 |
| 5169 - Whol chemicals | 1 | 2,500 | 100 | 0 | 0 | 0 | 0 |
| ▼ 57 - Home Furniture Furnishings and Equipment Stores | 1 | 250 | | | | | |
| 5712 - Ret furniture | 1 | 250 | 100 | 0 | 0 | 0 | 0 |
| ▼ 60 - Depository Institutions | 1 | 500 | | | | | |
| 6021 - Natnl commercial bank | 1 | 500 | 100 | 0 | 0 | 0 | 0 |
| ▼ 67 - Holding and Other Investment Offices | 1 | 1,000 | | | | | |

| Industry Category | Number of Payment Experiences | Largest High Credit (US$) | % Within Terms (Expand to View) | 1 - 30 Days Late (%) | 31 - 60 Days Late (%) | 61 - 90 Days Late (%) | 91 + Days Late (%) |
|---|---|---|---|---|---|---|---|
| 6719 - Holding company | 1 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| ▼ 87 - Engineering Accounting Research Management and Related Services | 1 | 750 | | | | | |
| 8748 - Business consulting | 1 | 750 | 100 | 0 | 0 | 0 | 0 |
| ▼ 99 - Nonclassifiable Establishments | 6 | 2,500 | | | | | |
| 9999 - Nonclassified | 6 | 2,500 | 78 | 22 | 0 | 0 | 0 |

## Trade Lines

| Date of Experience | Payment Status | Selling Terms | High Credit (US$) | Now Owes (US$) | Past Due (US$) | Months Since Last Sale |
|---|---|---|---|---|---|---|
| 11/19 | Pays Promptly | - | 2,500 | 500 | 0 | 1 |
| 10/19 | Pays Prompt to Slow 30+ | - | 10,000 | 7,500 | 1,000 | 1 |
| 10/19 | Pays Promptly | - | 25,000 | 10,000 | 0 | 1 |
| 10/19 | Pays Promptly | - | 10,000 | 10,000 | 0 | 1 |
| 10/19 | Pays Promptly | - | 2,500 | 0 | 0 | Between 2 and 3 Months |
| 10/19 | Pays Promptly | - | 2,500 | 0 | 0 | 1 |
| 10/19 | Pays Promptly | - | 2,500 | 0 | 0 | Between 2 and 3 Months |
| 10/19 | Pays Promptly | - | 2,500 | 0 | 0 | Between 4 and 5 Months |
| 10/19 | Pays Promptly | - | 2,500 | 750 | 750 | 1 |
| 10/19 | Pays Promptly | - | 1,000 | 500 | 0 | 1 |
| 10/19 | Pays Promptly | - | 1,000 | 0 | 0 | 1 |
| 10/19 | Pays Promptly | - | 1,000 | 750 | 0 | 1 |
| 10/19 | Pays Promptly | - | 1,000 | 750 | 0 | 1 |
| 10/19 | Pays Promptly | N30 | 1,000 | 1,000 | 0 | 1 |
| 10/19 | Pays Promptly | - | 1,000 | 0 | 0 | Between 6 and 12 Months |
| 10/19 | Pays Promptly | - | 750 | 250 | 0 | 1 |
| 10/19 | Pays Promptly | - | 750 | 0 | 0 | 1 |
| 10/19 | Pays Promptly | - | 500 | 100 | 0 | 1 |
| 10/19 | Pays Promptly | N30 | 250 | 250 | 0 | 1 |
| 10/19 | Pays Promptly | - | 250 | 250 | 0 | 1 |
| 10/19 | Pays Promptly | - | 100 | 0 | 0 | Between 6 and 12 Months |
| 10/19 | Pays Prompt to Slow 30+ | - | 35,000 | 35,000 | 0 | 1 |

| Date of Experience | Payment Status | Selling Terms | High Credit (US$) | Now Owes (US$) | Past Due (US$) | Months Since Last Sale |
|---|---|---|---|---|---|---|
| 10/19 | Pays Prompt to Slow 30+ | - | 10,000 | 10,000 | 2,500 | 1 |
| 10/19 | Pays Promptly | - | 30,000 | 15,000 | 500 | 1 |
| 10/19 | Pays Prompt to Slow 30+ | - | 5,000 | 250 | 0 | 1 |
| 10/19 | Pays Prompt to Slow 30+ | - | 2,500 | 2,500 | 750 | 1 |
| 10/19 | Pays Prompt to Slow 30+ | - | 50 | 0 | 0 | Between 2 and 3 Months |
| 10/19 | Pays Prompt to Slow 90+ | - | 2,500 | 1,000 | 250 | 1 |
| 10/19 | Pays Slow 30+ | - | 7,500 | 0 | 0 | Between 2 and 3 Months |
| 10/19 | Pays Slow 30+ | - | 1,000 | 1,000 | 1,000 | 1 |
| 10/19 | Pays Slow 30+ | N30 | 250 | 0 | 0 | Between 6 and 12 Months |
| 10/19 | - | - | 2,500 | 1,000 | 1,000 | - |
| 10/19 | - | - | 1,000 | 1,000 | 0 | 1 |
| 09/19 | Pays Prompt to Slow 30+ | N30 | 1,000 | 250 | 250 | Between 6 and 12 Months |
| 08/19 | Pays Promptly | N30 | 250 | 50 | 0 | 1 |
| 07/19 | Pays Promptly | - | 50 | 50 | 0 | 1 |
| 06/19 | - | - | 2,500 | 0 | 0 | 1 |
| 05/19 | Pays Promptly | 1 10 N30 | 1,000 | 0 | 0 | Between 2 and 3 Months |
| 05/19 | Pays Promptly | - | 750 | 0 | 0 | Between 6 and 12 Months |
| 03/19 | Pays Promptly | - | 500 | 0 | 0 | Between 6 and 12 Months |
| 01/19 | Pays Prompt to Slow 30+ | - | 1,000 | 1,000 | 1,000 | 1 |
| 09/18 | - | Cash account | 50 | 0 | 0 | Between 6 and 12 Months |
| 07/18 | Pays Promptly | - | 250 | 0 | 0 | Between 6 and 12 Months |
| 06/18 | Pays Promptly | - | 1,000 | 0 | 0 | Between 6 and 12 Months |
| 04/18 | Pays Promptly | - | 250 | 0 | 0 | Between 6 and 12 Months |
| 01/18 | Pays Promptly | - | 2,500 | 0 | 0 | Between 6 and 12 Months |
| 10/17 | Pays Promptly | - | 500 | 0 | 0 | Between 6 and 12 Months |

# Legal Events

The following Public Filing data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

| Judgements | Liens | Suits | UCC Filings |
|---|---|---|---|
| 0 | 0 | 0 | 5 |
| Latest Filing: - | Latest Filing: - | Latest Filing: - | Latest Filing: 08-07-2018 |

## Events

### UCC Filing - Continuation

| Filing Date | 08-07-2018 |
|---|---|
| Filing Number | 1808075973055 |
| Received Date | 09-05-2018 |
| Original Filing Date | 02-03-2009 |
| Original Filing Number | 0902035113016 |
| Secured Party | MANUFACTURERS AND TRADERS TRUST COMPANY, BUFFALO, NY |
| Debtors | PEERLESS MILL SUPPLY COMPANY, INC. |
| Filing Office | SECRETARY OF STATE/UCC DIVISION, ALBANY, NY |

### UCC Filing - Original

| Filing Date | 05-01-2017 |
|---|---|
| Filing Number | 1705015511069 |
| Received Date | 05-20-2017 |
| Collateral | All Assets |
| Secured Party | M&T BANK, BUFFALO, NY |
| Debtors | PEERLESS HI-TEMP FABRICATION, LLC |
| Filing Office | SECRETARY OF STATE/UCC DIVISION, ALBANY, NY |

### UCC Filing - Original

| Filing Date | 04-24-2017 |
|---|---|
| Filing Number | 1704240194713 |
| Received Date | 05-12-2017 |
| Collateral | Accounts receivable - Inventory - Account(s) - Assets - and OTHERS |
| Secured Party | HI-TEMP FABRICATION, INC., BUFFALO, NY |
| Debtors | PEERLESS HI-TEMP FABRICATION, LLC |
| Filing Office | SECRETARY OF STATE/UCC DIVISION, ALBANY, NY |

### UCC Filing - Continuation

| Filing Date | 08-09-2013 |
|---|---|
| Filing Number | 1308090456755 |
| Received Date | 08-30-2013 |

| | |
|---|---|
| Original Filing Date | 02-03-2009 |
| Original Filing Number | 0902035113016 |
| Secured Party | MANUFACTURERS AND TRADERS TRUST COMPANY |
| Debtors | PEERLESS MILL SUPPLY COMPANY, INC. |
| Filing Office | SECRETARY OF STATE/UCC DIVISION, ALBANY, NY |

**UCC Filing** - Original

| | |
|---|---|
| Filing Date | 02-03-2009 |
| Filing Number | 0902035113016 |
| Received Date | 02-14-2009 |
| Secured Party | MANUFACTURERS AND TRADERS TRUST COMPANY, BUFFALO, NY |
| Debtors | PEERLESS MILL SUPPLY COMPANY, INC. |
| Filing Office | SECRETARY OF STATE/UCC DIVISION, ALBANY, NY |

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed. This information may not be reproduced in whole or in part by any means of reproduction

There may be additional UCC Filings in D&B's file on this company available by contacting 1-800-234-3867.

# Special Events

05-11-2017

Business address has changed from 79 Perry St, Buffalo, NY, 14203 to 15 Lawrence Bell Dr, Buffalo, NY, 14221.

11-14-2016

A Rating change has occurred on this company.

# Company Profile

## Company Overview

| | | |
|---|---|---|
| **D-U-N-S** | **Mailing Address** | **Employees** |
| 00-213-0367 | United States | 27 |
| **Legal Form** | **Telephone** | **Age (Year Started)** |
| Corporation (US) | (716) 852-4784 | 105 years (1914) |
| **History Record** | **Website** | **Named Principal** |
| Clear | www.peerless-inc.com | David Mckendry, PRES |
| **Date Incorporated** | **Present Control Succeeded** | **Line of Business** |
| 01-11-1914 | 1977 | Whol industrial supplies |

**State of Incorporation**
New York

**Ownership**
Not publicly traded

## Business Registration

Corporate and business registrations reported by the secretary of state or other official source as of:  11-15-2019
This data is for informational purposes only, certification can only be obtained through the Office of the Secretary of State.

| | |
|---|---|
| Registered Name | PEERLESS MILL SUPPLY COMPANY, INC. |
| Corporation Type | Corporation (US) |
| Business Commenced On | 1914 |
| State of Incorporation | NEW YORK |
| Date Incorporated | 01-12-1914 |
| Registration ID | 10798 |
| Registration Status | ACTIVE |
| Filing Date | 01-12-1914 |
| Where Filed | SECRETARY OF STATE/CORPORATION DIVISION |

### Registered Principal

| | |
|---|---|
| Name | DAVID B MCKENDRY |
| Title | Chairman of the Board |
| Address | 15 LAWRENCE BELL DRIVE, BUFFALO, NY, 142210000 |

## Principals

### Officers

DAVID MCKENDRY, PRES
JOHNATHON PORTER, ACCT

### Directors

DIRECTOR(S): THE OFFICER(S)

## Company Events

**The following information was reported on: 03-02-2018**

The New York Secretary of State's business registrations file showed that Peerless Mill Supply Company, Inc. was registered as a Corporation on January 12, 1914, under the file registration number 10798.

Business started 1914. Present control succeeded 1977. 100% of capital stock is owned by the McKendry family.

DAVID B MCKENDRY. January 2003-present active here.

Business address has changed from 79 Perry St, Buffalo, NY, 14203 to 15 Lawrence Bell Dr, Buffalo, NY, 14221.

## Business Activities And Employees

**The following information was reported on: 03-02-2018**

### Business Information

| | |
|---|---|
| Trade Names | PEERLESS |
| Description | Wholesales industrial supplies, specializing in valves or fittings, belting or packing hose and packing. Manufactures fluid power valves and hose fittings, specializing in hydraulic or pneumatic fluid power control valves. |
| | Has 1900 account(s). Terms are Net 30 days. Sells to manufacturers, general public, non profit organizations, retail, commercial concerns and the government. Territory : Local. |
| Employees | 27 which includes officer(s). |
| Financing Status | Unsecured |
| Seasonality | Nonseasonal. |
| Tenure | Owns |
| Facilities | Owns 51,000 sq. ft. in a five story brick building. |
| Location | Industrial section on side street. |

### SIC/NAICS Information

| SIC Codes | SIC Description | Percentage of Business |
|---|---|---|
| 5085 | Whol industrial supplies | - |
| 50850303 | Valves and fittings | - |
| 50850200 | Hose, belting, and packing | - |
| 50850202 | Packing, industrial | - |
| 34929901 | Control valves, fluid power: hydraulic and pneumatic | - |

| NAICS Codes | NAICS Description |
|---|---|
| 423830 | Industrial Machinery and Equipment Merchant Wholesalers |
| 423840 | Industrial Supplies Merchant Wholesalers |
| 423840 | Industrial Supplies Merchant Wholesalers |
| 332912 | Fluid Power Valve and Hose Fitting Manufacturing |

## Government Activity

### Activity Summary

| | |
|---|---|
| Borrower(Dir/Guar) | No |
| Administrative Debt | No |
| Contractor | Yes |
| Grantee | No |
| Party excluded from federal program(s) | No |

### Possible candidate for socio-economic program consideration

| | |
|---|---|
| Labor Surplus Area | Yes (2019) |
| Small Business | Yes (2019) |

Source: D&B  |  Currency: All figures shown in USD unless otherwise stated

# Financials

### Key Business Ratios

| Statement date | Based on Number of Establishments |
|---|---|
| 12-31-2011 | 12 |

| | Ratio for the business | Industry Median | Industry Quartile |
|---|---|---|---|
| **Profitability** | | | |
| Return On Assets | 7.6 | 7.6 | 2 |
| Return on Net Worth | 13.6 | 12.1 | 2 |
| Return on Sales | 2.7 | 3.7 | 3 |
| **Short Term Solvency** | | | |
| Current Liabilities to Inventory | 354.8 | 75.8 | 1 |
| Current Liabilities Over Net Worth | 78.4 | 24.8 | 1 |
| Current Ratio | 2.2 | 3.6 | 3 |
| Quick Ratio | 1.9 | 2.1 | 3 |
| **Efficiency** | | | |
| Accounts Payable to Sales | 8.2 | 5.1 | 1 |
| Assets Over Sales | 35.4 | 35.4 | 1 |
| Collection Period | 88.1 | 42.0 | 1 |
| Sales to Inventory | 23.0 | 9.1 | 1 |
| Sales Over Net Working Capital | 5.3 | 4.4 | 2 |
| **Utilization** | | | |
| Total Liabilities Over Net Worth | 79.8 | 25.9 | 1 |

This information may not be reproduced in whole or in part by any means of reproduction.

©Dun & Bradstreet, Inc. 2019. All rights reserved