Hearing Date and Time: February 21, 2020, at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: February 14, 2020, at 4:00 p.m. (prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF HEARING ON MOTION OF DEBTORS FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE REJECTION OF COMMERCIAL LEASE,
(II) AUTHORIZING ENTRY INTO NEW HEADQUARTERS LEASE,
(III) AUTHORIZING THE ASSUMPTION OF COMMERCIAL LEASES
<u>AND (IV) GRANTING RELATED RELIEF</u>**

**PLEASE TAKE NOTICE** that on January 31, 2020, the above-captioned debtors and

debtors in possession in these proceedings (collectively, the "**Debtors**") filed the *Motion of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief* (the "**Motion**"). A hearing on the Motion will be held on **February 21, 2020** at **10:00 a.m.** (prevailing Eastern Time) (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [Docket No. 498], so as to be filed and received no

later than **February 14, 2020** at **4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 31, 2020
New York, NY

                                            DAVIS POLK & WARDWELL LLP

By: */s/ Timothy Graulich*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.¹ | **(Jointly Administered)** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF COMMERCIAL LEASE, (II) AUTHORIZING ENTRY INTO NEW HEADQUARTERS LEASE, (III) AUTHORIZING THE ASSUMPTION OF COMMERCIAL LEASES, AND (IV) GRANTING RELATED RELIEF

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are the debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**"),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

hereby file this *Motion of Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief* (the "**Motion**"). In support of this Motion, the Debtors submit the *Declaration of Jon Lowne in Support of Motion of Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief* (the "**Lowne Declaration**") filed contemporaneously with this Motion and respectfully state as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### General Background

3. On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended or modified, the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors

2

(the "**Creditors' Committee**").  No trustee or examiner has been appointed in these chapter 11 cases.

4.  On December 20, 2019, the Court entered an order pursuant to section 365(d)(4) of the Bankruptcy Code extending the time period within which the Debtors may assume or reject unexpired leases of nonresidential real property through and including April 13, 2020 [Docket No. 686].  Pursuant to statute, this date may not be further amended without the consent of the landlord.  11 U.S.C. § 365(d)(4).

5.  Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [Docket No. 17].

**Relief Requested**

6.  By this Motion, and pursuant to sections 105(a), 363(b) and 365 of the Bankruptcy Code, Bankruptcy Rule 6006 and Rule 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), authorizing the Debtors to (1) reject that certain lease, dated December 18, 2015, by and between One Stamford Realty L.P. ("**OSR**") and PPLP (as amended on January 14, 2016, the "**Headquarters Wrap Lease**"), a copy of which is attached hereto as **Exhibit B**, with such rejection to take effect as of the date that the 2021 Headquarters Lease (as defined below) is in full force and effect, (2) enter into a replacement lease (the "**2021 Headquarters Lease**") between OSR and PPLP substantially in the form attached hereto as **Exhibit C**, (3) assume (x) that certain lease, dated as of April 6, 2006, by and between OSR and PPLP (the "**Existing PPLP Lease**") and (y) that certain Sublease, dated as of August 10, 2009, by and between UBS AG ("**UBS**") and PPLP (the "**UBS Sublease**"), copies of which is attached hereto as **Exhibit D** and **Exhibit E**, respectively, and (4)

3

enter into that certain Surrender Agreement (the "**Surrender Agreement**") between PPLP and Pharmaceutical Research Associates, L.P., substantially in the form attached hereto as **Exhibit F**.

### The Debtors' Leases

7.      Purdue's corporate headquarters is located at One Stamford Forum, an office building located at 201 Tresser Boulevard, Stamford, CT 06901 ("**One Stamford Forum**"). One Stamford Forum contains approximately 425,439 rentable square feet of office space on nine floors, plus a plaza, data center and parking areas, for a total of 504,471 square feet. One Stamford Forum is owned by OSR, which is beneficially owned by the Debtors' existing shareholders. The Debtors understand that OSR requires its mortgage lender's consent to enter into new leases with the Debtors and other tenants.

8.      PPLP is the tenant under the Existing PPLP Lease, pursuant to which PPLP leases all of floors nine, ten and P-3, the entire plaza floor, and portions of floors P-1 (including but not limited to the data centers) and P-2 of One Stamford Forum from OSR. The Existing PPLP Lease will expire on December 31, 2020. PPLP is also the subtenant under the UBS Sublease, pursuant to which PPLP subleases floors three through eight of One Stamford Forum from UBS. The UBS Sublease will expire on December 30, 2020. The Debtors are current on their obligations under the Existing PPLP Lease and UBS Sublease. PPLP has various subtenants for floors three through six and part of floor nine.

9.      In addition, PPLP is the tenant under that certain lease, dated December 18, 2015 (as amended on January 14, 2016, the "**Headquarters Wrap Lease**"),[2] with OSR as landlord, which demises the entirety of One Stamford Forum. The Headquarters Wrap Lease commences on January 1, 2021 and will expire on June 30, 2031, unless extended.

---

[2] Any description of the Headquarters Wrap Lease herein is qualified in its entirety by reference to the copy of the Headquarters Wrap Lease attached to the Motion as Exhibit B.

4

**Rejection of Headquarters Wrap Lease and Entry into 2021 Headquarters Lease**

10. The Debtors' office space requirements are much different today than they were when the Headquarters Wrap Lease was negotiated in 2015. In 2017 and 2018, the Debtors' overall employee headcount, exclusive of Debtor Rhodes Associates L.P. and its direct and indirect subsidiaries, was reduced by over 1,000 employees—a 67% reduction—and the workforce has continued to contract since 2018. The Debtors have determined that they only require approximately 100,000 square feet of space given their current headcount. A lease for all 500,000-plus square feet of rentable space in One Stamford Forum, most of which would remain unused, would be unnecessary and unduly burdensome to the Debtors' estates. Subleasing space would not be economical for the Debtors due to upfront costs of broker commissions, free rent and tenant improvement allowances.

11. It is critical that the Debtors move quickly to secure an alternative to the Headquarters Wrap Lease. The deadline to assume or reject the Headquarters Wrap Lease is April 13, 2020, and OSR has confirmed that it will not agree to any further extensions of this deadline. The Debtors will therefore be compelled to make a final decision with respect to the Headquarters Wrap Lease well before the end of 2020. Moreover, if the Debtors were to leave One Stamford Forum, they believe that approximately ten (10) months of lead time would be necessary to identify a suitable alternative, negotiate a lease and plan out the new offices. Any relocation without careful advance planning would be highly disruptive to operations and to the lives of the Debtors' employees. Likewise, a move to an undesirable location would have material adverse consequences for the Debtors' workforce.

12. The Debtors actively explored and carefully considered alternatives to space in One Stamford Forum. However, the Debtors were unable to identify a suitable second location.

A number of factors weighed against relocation, including substantial broker commissions, move costs, fit-out costs, IT costs, required security deposits and potential adverse effects on the Debtors' business. In addition, no potential landlord offered a lease term of less than 10 years (the Debtors discussed one six-year sublease, but the prospective sub-landlord was unable to get landlord consent for the Debtors as subtenant), which as discussed below the Debtors believe is unacceptably long. Moreover, five landlords declined to have the Debtors as a tenant at all given the negative attention that the Company has received, which greatly limited the number of available options. Because of the need for substantial lead time in advance of any move and their recent experience in the market, the Debtors do not believe that they would benefit from continuing to search for a new headquarters space.

13. At the same time, the Debtors believe that they have negotiated an attractive lease to remain in One Stamford Forum after the end of this year. The 2021 Headquarters Lease is a three-year lease with a term commencing on January 1, 2021 for the ninth and tenth floors (103,733 square feet in the aggregate) of One Stamford Forum, which the Debtors currently occupy, along with a portion of certain ancillary space described above. The space is sufficient for the Debtors to consolidate their current footprint. The total rent for the three-year lease is expected to be approximately $16.7 million. The Debtors have confirmed with their real estate broker, CB Richard Ellis, that the rent per square foot and the calculation of rentable square footage under the 2021 Headquarters Lease is consistent with the Stamford market. By contrast, rent under the Headquarters Wrap Lease would be $14.5 million in 2021 and $17.3 million in 2022 (both net of sublease income), and the lease would continue to run for another eight and a half years (to June 30, 2031). Because the Debtors will remain in One Stamford Forum, they will not incur any material moving costs or risk disruptions to their operations.

6

14.     The negotiation of the terms of the 2021 Headquarters Wrap Lease was conducted at arm's length.  Because One Stamford Forum is beneficially owned by the Sackler family (though their decision-making authority is constrained by OSR's mortgage lender's consent rights under the mortgage), the terms of the lease have been reviewed, and entry into the lease approved, by the independent Special Committee of PPLP's Board of Directors (the "**Special Committee**").  Notably, OSR originally insisted on any new lease having a five-year term, which was rejected by the Special Committee as being too long.  The Debtors were subsequently able to negotiate OSR's agreement on the three-year lease term.  Because the 2021 Headquarters Lease is for only three years, management will have the opportunity to reevaluate the Company's location, in light of any changes to the Debtors' requirements, relatively soon after emergence from Chapter 11.  Again, no other potential landlord offered a lease term of less than 10 years.

15.     PPLP currently sublets a portion of the ninth floor of One Stamford Forum to its direct shareholder, Pharmaceutical Research Associates L.P. ("**PRA**"), pursuant to that certain Sublease, dated as of July 1, 2018 (the "**PRA Sublease**").  In order to enable the Debtors to fit out the entire ninth floor for their use before January 1, 2021, PPLP and PRA have agreed to enter into the Surrender Agreement, pursuant to which PRA will relinquish its rights under the PRA Sublease and vacate the subleased premises effective as of July 31, 2020.

16.     For the reasons set forth above, the Debtors believe that rejecting the Headquarters Wrap Lease and simultaneously entering into the 2021 Headquarters Lease is the best available option for the Debtors' business and is in the best interest of the Debtors and their estates.

**Assumption of the Existing PPLP Lease and UBS Sublease**

17.     As discussed above, the Debtors currently sublet floors three through eight of One Stamford Forum under the UBS Sublease, and lease the plaza floor, floors nine and ten, floor P-

7

3, and portions of floors P-1 and P-2 under the Existing PPLP Lease. The Debtors have various sub-subtenants for floors three through six, and PRA is PPLP's subtenant for a portion of floor nine.

18. The Debtors seek to assume the Existing PPLP Lease and the UBS Sublease and to maintain the status quo through the end of 2020. The Debtors are current on their obligations to OSR and UBS and will not incur any cure costs by assuming the Existing PPLP Lease or UBS Sublease. The deadline to assume these lease agreements is April 13, 2020. There is no foreseeable scenario in which the Debtors would reject their 2020 headquarters leases at that time, nor is there any discernable advantage to seeking to extend the deadline to assume or reject on a consensual basis. The Debtors require ongoing access to the space that they occupy now so that they can continue to conduct their business and also consolidate operations on floors nine and ten in a rational and orderly manner leading up to the commencement of the 2021 Headquarters Lease.

**Basis for Relief**

Legal Standard for Assumption or Rejection of Executory Contracts

19. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). In determining whether to permit the debtor to assume or reject a contract, "the debtor's interests are paramount." *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d. 373, 383 (2d Cir. 2008).

20. Accordingly, the decision to assume or reject is governed by the business judgment rule. *See Grp. of Institutional Inv'rs v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) ("[T]he question of whether a lease should be rejected and, if not, on what terms it should be assumed is one of business judgment."); *COR Route 5 Co., LLC v. Penn*

8

*Traffic Co. (In re Penn Traffic Co.),* 524 F.3d 373, 383 (2d Cir. 2008); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006); *see also Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989). The "process of deciding a motion to assume [or reject] is one of the bankruptcy court placing itself in the position of the . . . debtor in possession and determining whether assuming [or rejecting] the contract would be a good business decision or a bad one." *In re The Great Atl. & Pac. Tea Co. Inc.*, 544 B.R. 43, 48 (Bankr. S.D.N.Y. 2016) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993)).

21. A debtor exercises sound business judgment with respect to its decision to assume or reject an executory contract or unexpired lease where it determines, in good faith, that the proposed action will benefit the estate. *See In re MF Global Inc.*, No. 11-2790 (MG), 2011 WL 6792758, at *2 (Bankr. S.D.N.Y. Dec. 20, 2011) ("The assumption or rejection of an executory contract may be approved if such action would benefit the debtor's estate and is an exercise of sound business judgment."); *Helm*, 335 B.R. at 538 ("To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate.'" (citation omitted)). The party opposing a debtor's exercise of its business judgment has the burden of rebutting the presumption of validity. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

22. Upon finding that the debtor has exercised its sound business judgment in determining that the assumption or rejection of an executory contract or unexpired lease is in the best interests of the debtor, its creditors and all parties in interest, the court should approve such assumption or rejection under section 365(a) of the Bankruptcy Code. *See Comp. Sales Int'l,*

9

*Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or gross abuse of discretion.").

<u>Rejection of the Headquarters Wrap Lease is an Appropriate Exercise of the Debtors' Business Judgment and Should Be Authorized</u>

23.  As discussed above, the Headquarters Wrap Lease obligates the Debtors to lease vastly more square footage than they currently require beginning in 2021. Furthermore, the Debtors do not believe they could profitably sublet the excess space, given the prevailing Stamford commercial market and the rental rate under the Headquarters Wrap Lease. In addition, the three-year term, which was required by the Special Committee and highly negotiated with OSR, will allow for a reassessment of the Company's headquarters space requirements in the relatively near future. Rejecting the Headquarters Wrap Lease will thus be beneficial to the Debtors' estates and all parties in interest.

<u>Assumption of the Existing PPLP Lease and UBS Sublease is an Appropriate Exercise of the Debtors' Business Judgment and Should Be Authorized</u>

24.  Likewise, it is beyond peradventure that the Debtors need to maintain the Existing PPLP Lease and UBS Sublease through the remainder of 2020, when the agreements will terminate in accordance with their terms. The Debtors would also gain nothing from extending the time to assume or reject these leases, as PPLP is required to timely perform its obligations under the PPLP Lease and UBS Sublease pending assumption or rejection, and the Debtors will undoubtedly be tenants in One Stamford Forum through the end of the term of each lease. The Debtors are also not aware of any defaults under either the Existing PPLP Lease or UBS Sublease that would need to be cured or compensated in accordance with section 365(b)(1)(A) and (B) of the Bankruptcy Code.

<u>Entry into the 2021 Headquarters Lease is an Appropriate Exercise
of the Debtors' Business Judgment and Should Be Authorized</u>

25. Bankruptcy Code section 363(b)(1) empowers the Court to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re MF Global Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) ("Although not specified by section 363, the Second Circuit requires that transactions under section 363 be based on the sound business judgment of the debtor or trustee."); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Although the determination of what constitutes a sufficient business reason depends on the facts and circumstances of each case, a debtor often satisfies the business judgment standard if the actions were undertaken "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656 (citation omitted). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. at 616.

11

26. Additionally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to section 105(a), orders are appropriate where they are essential to the debtor's reorganization efforts and do not pose a burden on the debtor's creditors. *See U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prof. & Indem. Ass'n (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999); *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

27. Entry into the 2021 Headquarters Lease represents a sound exercise of the Debtors' business judgment. As described above, the Debtors have carefully evaluated whether remaining in One Stamford Forum or relocating to a different location, whether in Stamford or elsewhere, is best for the Company at this time. The Debtors believe that the 2021 Headquarters Lease, which they negotiated at arm's length, is appropriate for the Debtors' business needs and superior to available alternatives. Moreover, the Debtors do not believe that they would benefit from further efforts to identify additional options. Authorizing the Debtors to enter into the 2021 Headquarters Lease will therefore allow the Debtors to maximize the value of their estates for the benefit of all parties in interest.

28. In light of the foregoing, the Debtors respectfully request that the Court approve the rejection of the Headquarters Wrap Lease and assumption of the Existing PPLP Lease and UBS Sublease pursuant to section 365(a) of the Bankruptcy Code and entry into the 2021 Headquarters Lease pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

**Debtors' Reservation of Rights**

29.     Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for or validity of any claim against the Debtors; or (c) a waiver of any claims or causes of action which may exist against any creditor or interest holders or any other party. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Waiver of Stay under Bankruptcy Rule 6004(h)**

30.     The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the nature of the relief sought herein justifies immediate relief.

**Notice**

31.     Notice of this Motion will be provided as to (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this motion.  The Debtors respectfully submit that no further notice is required.

**No Prior Request**

32.     The Debtors have not previously sought the relief requested herein from the Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as may be just and proper.

Dated:   January 31, 2020
         New York, NY

> DAVIS POLK & WARDWELL LLP
>
> By:  */s/ Timothy Graulich*
> DAVIS POLK & WARDWELL LLP
> 450 Lexington Avenue
> New York, New York 10017
> Telephone: (212) 450-4000
> Facsimile:  (212) 701-5800
> Marshall S. Huebner
> Benjamin S. Kaminetzky
> Timothy Graulich
> Eli J. Vonnegut
> Christopher S. Robertson
>
> *Counsel to the Debtors*
> *and Debtors in Possession*