# **EXHIBIT B**

**Engagement Letter**

#92833587v6



KPMG LLP
560 Lexington Avenue
New York, NY 10022

Telephone +1 212 937 3836
Fax +1 212 954 5171

December 20, 2019

Davis Polk & Wardwell LLP ("**Davis Polk**"), as counsel
to Purdue Pharma L.P. ("**Purdue**") and its affiliated debtor
entities (the "**Debtors**", a complete listing of which is
attached as **Appendix 1**)
450 Lexington Avenue
New York, New York 10017
Attention: Marshall Huebner

Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**"), as
counsel to the Official Committee of Unsecured Creditors
of the Debtors (the "**Committee**")
One Bryant Park
New York, New York 10036
Attention: Arik Preis

We are pleased that you have jointly engaged KPMG LLP ("**KPMG**") to provide tax consulting services assisting Davis Polk and Akin Gump (together, the "**Counsel**"; the Counsel and KPMG are collectively referred to herein as the "**Parties**") in Counsel's respective representation of the Debtors and the Committee in the bankruptcy cases of the Debtors.

1. **Scope of Services**

The Counsel will jointly specify the nature and limitations of the services that we will provide. Our services may include, but are not limited to, the following:

— Tax analysis and proposal of structuring alternatives with respect to any disposition of the assets or stock of the Debtors, its affiliates, and any companies owned or controlled by the shareholders of the Debtors ("**IACs**") pursuant to the bankruptcy plan;

— Quantitative analysis, including preparation and/or review of cash tax models, regarding the projection of cash taxes arising from operations, dispositions, reorganization and repatriation of funds by the Debtors and IACs;

— Diligence regarding the historical tax positions and tax attributes of the Debtors and IACs;

— Interacting with tax authorities in order to assess the impact of historical tax matters in regards to any proposed transaction;

— Analysis of the tax implications of any payments made by the Debtors to settle claims;

— Analysis of any proof of claims from tax authorities;

KPMG LLP is a Delaware limited liability partnership and the U.S. member firm of the KPMG network of independent member firms affiliated with KPMG International Cooperative ("KPMG International"), a Swiss entity



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 2 of 8

— Analysis of cancellation of debt ("**COD**") income as applicable, including the application of Section 108 and relating to the restructuring of any related party debt and the completed capitalization/ settlement of intercompany debt;

— Analysis and proposal of structuring alternatives with respect to the post-emergence tax structure of the Debtors and IACs.

For purposes of the scope of services outlined above, taxes include direct and indirect taxes, withholding taxes, value added taxes, sales and use taxes, gross receipts taxes, property taxes, transfer and stamp taxes, excise taxes, franchise taxes, employment taxes, alterative or add-on minimum taxes, ad valorem taxes, or any similar tax, custom, duty, governmental fee or other like assessment or charge imposed by any government authority.

### 2. Special Joint Retention Provisions

The Counsel have not yet determined whether KPMG will be called as an expert witness at any trial or hearing in these bankruptcy cases on behalf of the Debtors and/or the Committee for matters that are the subject of this engagement letter. If KPMG provides services as an expert witness on behalf of the Debtors and/or the Committee in the bankruptcy cases of the Debtors for matters that are the subject of this engagement letter, it will be pursuant to a separate engagement letter, which engagement letter shall be mutually acceptable to both the Debtors and the Committee.

The Counsel agree to expeditiously work in good faith to develop mutually acceptable protocols and procedures that further govern the provision of services by KPMG on behalf of the Debtors and the Committee, on a joint basis, which may be incorporated into this agreement by reference with the written consent of KPMG.

### 3. Tax Advice Standards

If KPMG is considered to be a tax return preparer under Treasury Regulation §301.7701-15, we will apply elevated standards in providing tax advice. These standards are dependent on certain characteristics of the entity to which our services will be directed as follows:

1. For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more reflected in audited financial statements prepared in accordance with U.S. generally accepted accounting principles): We must be able to determine that (1) there is "substantial authority" for an undisclosed return position (i.e., the weight of authorities in support of a position is substantial in relation to the weight of authorities in opposition to the position) and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in- three or greater likelihood of success if challenged by a tax authority). The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For advice pertaining to a "Tax Shelter" (as defined in IRC §6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, tax practitioners must generally conclude their advice satisfies the "more likely than not" standard; if the taxpayer is advised regarding potential taxpayer penalties, tax practitioners may conclude at a "substantial authority" level.

2. For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity): We must be able to determine that a return position is at least "more likely than not"



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 3 of 8

to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the taxing authorities).

3. If a return position relates to a transaction that is a "principal purpose transaction," we must arrive at a "should" confidence level (i.e., approximately a 70% or greater likelihood of success if challenged by the taxing authorities) with respect to the position.

4. We will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

Written advice provided on behalf of the Debtors and the Committee under this engagement letter will be based on facts, representations, assumptions, and other information provided to us, the completeness, accuracy and timeliness of which are critical factors in our ability to timely and accurately complete our services. Unless you request and we agree under a separate writing (a newly issued engagement letter or addendum to this engagement letter) after our advice has been issued in final form to you, KPMG will not update our advice to take into account your updating the facts provided to us through your discovery of new or additional facts, or your updating any information that may have formed the basis of any assumptions we made in developing our advice. In rendering advice, we will consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the advice we issue to you on behalf of the Debtors and the Committee.

The Debtors, the Committee, and the Counsel understand that applicable professional standards may require the KPMG personnel providing audit and non-audit services to Debtors, the Committee or the Counsel to discuss matters that may affect the audit. The Debtors, the Committee, and the Counsel agree that KPMG will not assert on the Debtors' or the Committee's behalf any claim of privilege unless, in the case of the Debtors, Davis Polk on behalf of the Debtors, or, in the case of the Committee, Akin Gump on behalf of the Committee, specifically instructs KPMG in writing to do so. Notwithstanding the foregoing, the Debtors, the Committee, and the Counsel acknowledge that in no event will KPMG assert any claim of privilege that KPMG concludes, after consideration of the specific facts and circumstances at issue is not valid.

4. **Additional Services**

If matters exceed the scope of this engagement letter, we will issue a separate engagement letter or clarifying addendum to confirm the scope and related terms of any additional services to be provided.

5. **Fees**

Our professional fees for this engagement will be based on the actual time incurred to complete the work at the hourly rates for the individuals involved in providing the services summarized in the table below, plus out-of-pocket expenses (e.g., travel, lodging, meals, etc.). Our rates vary based upon the experience level of the professional involved. These rates represent a discount of as much as 38% from our standard hourly rates.



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 4 of 8

| Professional | Hourly Rate Range |
|---|---|
| Partner, Principal or Managing Director | $765 - $985 |
| Senior Manager | $690 - $750 |
| Manager | $650 - $730 |
| Senior Associate | $470 - $640 |
| Associate | $350 - $380 |
| Paraprofessional | $200 - $295 |

Our fees are not dependent on tax or other savings achieved or otherwise based in any way on results obtained.

KPMG acknowledges that the Bankruptcy Court must approve its fees in order to be compensated. In that regard, KPMG intends to file applications with the Bankruptcy Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. The Parties acknowledge that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. The Parties agree that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

It is understood and agreed that, notwithstanding anything to the contrary herein, all fees and expenses payable to KPMG pursuant to this engagement letter shall be payable solely by the Debtors.

We will render monthly progress billings to the Parties as work is performed in accordance with Bankruptcy Court rules.

6. **Use of Member Firms, Affiliates, and Third Party Service Providers**

To the extent any of the services referenced above will be performed in or relate to a jurisdiction outside of the United States, the Counsel acknowledge and agree that such services, including any applicable tax advice, may be performed by a member firm of KPMG International practicing in such jurisdiction. The Counsel understand that KPMG International and each such member firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of KPMG and KPMG is not a partner, principal, agent or affiliate of KPMG International or any such member firm.

The Counsel further acknowledge that (i) in connection with the performance of the services referenced above, KPMG, in its discretion or at the Parties' direction, may utilize the services of affiliates and third party service providers within and without the United States to complete the services referenced above and (ii) KPMG uses third party service providers within and without the United States to provide at KPMG's direction administrative and clerical services for KPMG.

Any services performed by the additional service providers referenced herein shall be performed in accordance with the terms of this engagement letter, and KPMG shall remain responsible to the Counsel for the performance of such services. The Counsel agree that any claim relating to the services under the engagement letter may only be made against KPMG



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 5 of 8

and not KGS, the successors to KGS, and any other KPMG International Member Firm, or any third-party services providers referred to above.

### 7. Conflict Waiver

Each of Davis Polk and Akin Gump on behalf of the Debtors and the Committee, respectively, acknowledge and waive any and all conflicts of interest that currently exist, or that may arise, with respect to KPMG's representation of the Counsel pursuant to this engagement.

### 8. Other Matters

The Parties agree that, in connection with this engagement, KPMG is permitted to take direction from, and communicate with, both Davis Polk and Akin Gump. The Parties agree that all direction provided will be memorialized in email correspondence that both Davis Polk and Akin Gump will affirmatively acknowledge prior to KPMG taking any action with respect to such direction. KPMG may disclose any received information to either of Davis Polk or Akin Gump so long as such information is limited to matters outlined in the Scope of Services contained herein, or otherwise consented to by the applicable party whose information is being disclosed (including Confidential Information (as defined in the Standard Terms and Conditions (defined below))) to the other party. Any claim or dispute by or from any of the Counsel arising out of or relating to this engagement may be brought either by Davis Polk and Akin Gump. For the avoidance of doubt, KPMG's limitation on liability in Paragraph 6 of the Standard Terms and Conditions is aggregate and any liability of KPMG to each of Davis Polk and Akin Gump shall be apportioned by them amongst them. Neither Davis Polk nor the Akin Gump shall dispute or challenge the validity, enforceability or operation of this clause on the ground that no such apportionment has been so agreed or on the ground that the agreed share of the limitation amount apportioned to any such party is unreasonable.

To the extent such access is not inconsistent with, nor will jeopardize, any applicable privilege (including without limitation, the attorney-client privilege and work product), if, as a result of any work that we perform pursuant to this engagement, access to the Counsel's work papers and files is necessary in order for us to defend and protect ourselves or any of our partners or employees, or to assert any of our or their claims, rights, interests or privileges, we understand that we will be given reasonable access to and the right to copy the work papers and files.

The attached Standard Terms and Conditions for Advisory and Tax Services (as modified, the "**Standard Terms and Conditions**") are made a part of this engagement letter, subject to the following modifications:

- The first sentence of Paragraph 1(a) is hereby amended and restated as follows:

   "References herein to Client shall refer to the addressees of the Engagement Letter to which these Standard Terms and Conditions are attached or incorporated (the "Engagement Letter") and references herein to KPMG shall refer to KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network")."

- Any obligation of "Client" (as such term is defined in such Standard Terms and Conditions) under Paragraphs 1(c), 2, 11(e) (solely with respect to the third sentence) and 16(h) and any obligation of Client to indemnify KPMG under Paragraphs 8(a) and (b) of such Standard Terms and Conditions, shall be deemed to refer to an obligation of the Debtors, and not to refer to an obligation of the Counsel.



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 6 of 8

Any work performed in connection with this engagement before the execution date of this letter is also governed by the terms of this letter and the Standard Terms and Conditions.

* * * * * * *

Please sign the enclosed copy of this Engagement Letter to confirm our agreement and return it to us.

Unless otherwise terminated, modified, or superseded in writing, this Engagement Letter is intended to apply for a period of 24 months from the date of signing by the Parties. In addition, effective as of the date of signing, this Engagement Letter supersedes any and all written agreements, if any, pertaining to the services described above.

If you have any questions, please call me at 212-872-6562.

Very truly yours,

KPMG LLP

*(signed)* Howard Steinberg
Howard Steinberg
*Partner*

Enclosure:
Standard Terms and Conditions for Advisory and Tax Services

**ACCEPTED:**

| Davis Polk & Wardwell LLP, as Counsel for the Debtors | Akin Gump Strauss Hauer & Feld LLP, as Counsel for the Committee |
|---|---|
| *(signed)* | |
| Authorized Signature | Authorized Signature |
| 12/23/19 | |
| Date | Date |

REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK
* * * * * * *



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 6 of 8

Any work performed in connection with this engagement before the execution date of this letter is also governed by the terms of this letter and the Standard Terms and Conditions.

\* \* \* \* \* \* \*

Please sign the enclosed copy of this Engagement Letter to confirm our agreement and return it to us.

Unless otherwise terminated, modified, or superseded in writing, this Engagement Letter is intended to apply for a period of 24 months from the date of signing by the Parties. In addition, effective as of the date of signing, this Engagement Letter supersedes any and all written agreements, if any, pertaining to the services described above.

If you have any questions, please call me at 212-872-6562.

Very truly yours,

KPMG LLP

*/s/ Howard Steinberg*
Howard Steinberg
*Partner*

Enclosure:
Standard Terms and Conditions for Advisory and Tax Services

**ACCEPTED:**

Davis Polk & Wardwell LLP, as Counsel
for the Debtors

_____
Authorized Signature

_____
Date

Akin Gump Strauss Hauer & Feld LLP, as Counsel
for the Committee

*/s/ Arik Preis*
_____
Arik Preis
12/20/2019

_____
Date

REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK
\* \* \* \* \* \* \*



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 7 of 8

## Acknowledgment of the Debtors and the Committee

In consideration of the services KPMG will perform to assist the Counsel, by signing this letter the Debtors and the Committee acknowledge and agree that (i) any professional responsibility KPMG has to communicate information to the Debtors and the Committee as a client will be discharged by communicating such information to the Counsel, and (ii) the Debtors and the Committee have received a copy of, read, understands and agrees to abide by the terms hereof, including the Standard Terms and Conditions attached hereto, including, without limitation, the Debtors' ultimate responsibility for payment of KPMG's fees as described herein. In addition, Purdue represents and warrants that it is authorized to bind and otherwise act on behalf of each of its affiliated entities set forth in Appendix 1 and that KPMG is entitled to deal directly and solely with Davis Polk regarding the services to be provided to such entities.

Purdue Pharma L.P., on behalf of itself and
its affiliated debtor entities set forth in Appendix 1

_____
Authorized Signature

12/23/2019
_____
Date

Official Committee of Unsecured
Creditors of Purdue Pharma L.P., et al.

_____
Authorized Signature

_____
Date



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 7 of 8

### Acknowledgment of the Debtors and the Committee

In consideration of the services KPMG will perform to assist the Counsel, by signing this letter the Debtors and the Committee acknowledge and agree that (i) any professional responsibility KPMG has to communicate information to the Debtors and the Committee as a client will be discharged by communicating such information to the Counsel, and (ii) the Debtors and the Committee have received a copy of, read, understands and agrees to abide by the terms hereof, including the Standard Terms and Conditions attached hereto, including, without limitation, the Debtors' ultimate responsibility for payment of KPMG's fees as described herein. In addition, Purdue represents and warrants that it is authorized to bind and otherwise act on behalf of each of its affiliated entities set forth in Appendix 1 and that KPMG is entitled to deal directly and solely with Davis Polk regarding the services to be provided to such entities.

Purdue Pharma L.P., on behalf of itself and
its affiliated debtor entities set forth in Appendix 1

_____
Authorized Signature

_____
Date

Official Committee of Unsecured
Creditors of Purdue Pharma L.P., et al.

_____
Authorized Signature

12/21/2019

_____
Date



Davis Polk & Wardwell LLP and
Akin Gump Strauss Hauer & Feld LLP
December 20, 2019
Page 8 of 8

## APPENDIX 1

### LISTING OF THE DEBTORS

1. Purdue Pharma L.P.
2. Purdue Pharma Inc.
3. Purdue Transdermal Technologies L.P.
4. Purdue Pharma Manufacturing L.P.
5. Purdue Pharmaceuticals L.P.
6. Imbrium Therapeutics L.P.
7. Adlon Therapeutics L.P.
8. Greenfield BioVentures L.P.
9. Seven Seas Hill Corp.
10. Ophir Green Corp.
11. Purdue Pharma of Puerto Rico
12. Avrio Health L.P.
13. Purdue Pharmaceutical Products L.P.
14. Purdue Neuroscience Company
15. Nayatt Cove Lifescience Inc.
16. Button Land L.P.
17. Paul Land Inc.
18. Quidnick Land L.P.
19. Rhodes Associates L.P.
20. Rhodes Pharmaceuticals L.P.
21. Rhodes Technologies
22. UDF LP
23. SVC Pharma LP
24. SVC Pharma Inc.

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

1. **Services; Client Responsibilities.**

    (a) References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached or incorporated (the "Engagement Letter") and references herein to KPMG shall refer to KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network"). Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents are collectively referred to herein as the "Client Parties." KPMG, the other member firms of the KPMG Network and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Member Firms"), and their affiliates, and their respective partners, principals, employees, and agents are collectively referred to herein as the "KPMG Parties." Any work performed in connection with the engagement described in the Engagement Letter before its execution is also governed thereby and by these Standard Terms and Conditions.

    (b) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client.

    (c) If KPMG audits the financial statements of Client or provides any other attestation services to Client, the rules of the American Institute of Certified Public Accountants ("AICPA") require Client to agree to the following provisions of this Paragraph 1(c). In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) assume all management responsibilities and perform all management functions; (ii) oversee such services, by designating an individual, preferably within senior management, who possesses suitable skill, knowledge and/or experience; (iii) evaluate the adequacy and results of such services; (iv) accept responsibility for the results of such services; and (v) establish and maintain internal controls over the processes with which such services are concerned, including performing ongoing evaluations of Client's internal control as part of its monitoring activities.

    (d) Subsequent to the completion of this engagement, KPMG will not update its Advice (as defined below) for changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added, income or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination, provided that either party may terminate the Engagement Letter upon written notice to the other party if laws, rules, regulations or professional standards applicable to a party preclude it from continuing to perform or receive the Services thereunder.

4. **Ownership and Use of Deliverables.**

    (a) Upon full and final payment to KPMG under the Engagement Letter, KPMG assigns and grants to Client, title in the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") and any copyright interest in the Deliverables; provided that if and to the extent that any KPMG property is contained in any of the Deliverables ("KPMG Property"), KPMG hereby grants Client, under KPMG's intellectual property rights in such KPMG Property, a royalty-free, non-exclusive, non-transferable, perpetual license to use such KPMG Property solely in connection with Client's use of the Deliverables. KPMG acknowledges that it shall obtain no ownership right in Confidential Information (as defined below) of Client.

    (b) Should Client make a Deliverable bearing the "KPMG" name or logo available to a third party, it must be made available only in its entirety. KPMG may retain for its files copies of each of the Deliverables, subject to the provisions of Paragraph 11 below.

    (c) Client acknowledges and agrees that notwithstanding Paragraph 4(a), any advice, recommendations, information, Deliverables or other work product ("Advice") provided by KPMG in connection with the services under the Engagement Letter is intended for Client's sole benefit and KPMG does not authorize any party other than Client to benefit from or rely upon such Advice, or make any claims against KPMG relating thereto. Any such benefit or reliance by another party shall be at such party's sole risk. Client agrees that if such Advice is made available to any third party other than as expressly permitted by the Engagement Letter, the provisions of Paragraph 8(b) shall apply unless Client has a written notice substantially in the form of Appendix A hereto (the "Notice") acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the Notice acknowledged by such third party. Notwithstanding the foregoing, in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) below, no acknowledgement of the Notice shall be required to avoid application of Paragraph 8(b). For the avoidance of doubt, no Notice or acknowledgement shall be required to avoid application of Paragraph 8(b) with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with AICPA and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages.** Except for the respective indemnification obligations of Client and KPMG set forth herein, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter shall be limited to the amount of fees paid or owing to KPMG under the Engagement Letter. In no event shall any

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

of the Client Parties or any of the KPMG Parties be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). For avoidance of doubt, any damages awarded against any of the Client Parties or the KPMG Parties based on a third party claim subject to indemnification hereunder shall not be subject to the disclaimer in the previous sentence. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, rule, regulation or tort (including but not limited to negligence) or otherwise.

7. **Infringement.**

(a) KPMG hereby agrees to indemnify, hold harmless and defend the Client Parties from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued in the United States as of the date the Deliverables are delivered to Client, trademarks or copyrights. Such KPMG obligations shall not apply to any infringement to the extent arising out of (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than for Client's internal business purposes; (ii) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (iii) the combination or operation of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of the options described in clauses (i) or (ii) above, Client shall return the allegedly infringing item to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification.**

(a) KPMG agrees to indemnify, hold harmless and defend the Client Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the Client Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the KPMG Parties. Client agrees to indemnify, hold harmless and defend the KPMG Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the KPMG Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the Client Parties.

(b) Subject to Paragraph 4(c), Client agrees to indemnify, defend and hold harmless the KPMG Parties from and against any and all Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third party claim arising from KPMG's Advice. The foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute, rule, regulation or tort (including without limitation negligence) by the KPMG Parties.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnifying Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

9. **Cooperation; Use of Information.**

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, systems, equipment, data and information necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional details regarding KPMG's access to and use of personnel, facilities, equipment, data and information.

(b) The Engagement Letter may set forth additional obligations of Client in connection with the services under the Engagement Letter necessary for KPMG to perform its obligations under the Engagement Letter. Client acknowledges that its failure to satisfy these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(c) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material adverse effect on KPMG's conclusions.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

11. **Confidentiality.**

    (a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) is permitted to be disclosed by Paragraphs 18(a) or (b); or (5) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

    (b) The Receiving Party will deliver to the Disclosing Party or destroy all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata. Except as otherwise set forth in this Paragraph 11 or Paragraph 15 below, the Receiving Party shall not disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required or necessary to be disclosed pursuant to a statutory or regulatory provision or court or administrative order, or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process an insurance claim.

    (c) The KPMG Parties, with the assistance of third parties outlined in Paragraph 15, may use all Client's information provided to the KPMG Parties for other purposes, such as improving the delivery or quality of services or technology to Client and other clients, thought leadership projects, to allow Client and other clients to evaluate various business transactions and opportunities, and for use in presentations to Client, other clients and non-clients. When Client's information is used outside of the KPMG Parties or such third parties assisting them, Client will not be identified as the source of the information.

    (d) Each party shall exercise the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

    (e) If the Receiving Party receives a subpoena or other validly issued administrative, judicial, government or investigative regulatory demand or request or other legal process ("Legal Demand") requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law or such Legal Demand, provide prompt written notice to the Disclosing Party of such Legal Demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such Legal Demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event that KPMG is requested or authorized by Client, or is required by law, rule, regulation or Legal Demand in a proceeding or investigation to which KPMG is not a named party or respondent, to produce KPMG's documents or personnel as witnesses or for interviews, or otherwise to make information relating to the services under the Engagement Letter available to a third party, or Client, Client shall reimburse KPMG for its professional time, at its then-current standard hourly rates, and expenses, including reasonable attorneys' fees and expenses, incurred in responding to such requests, authorizations or requirements.

12. **Assignment.** Subject to Paragraph 15 below, neither party may assign, transfer or delegate any of its rights or obligations, claims or proceeds from claims arising under or relating to this Engagement Letter (including by operation of law, in which case the assigning party will, to the extent legally permissible, give as much advance written notice as is reasonably practicable thereof) without the prior written consent of the other party, such consent not to be unreasonably withheld. Any assignment, transfer or delegation in violation hereof shall be null and void.

13. **Governing Law; Severability.** All disputes between the parties (whether based in contract, tort, statute, rule, regulation or otherwise and whether pending in court or in an arbitral forum) shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York, including without limitation its statutes of limitations, without regard to the conflict of laws provisions of New York or any other state or jurisdiction. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

    (a) Any dispute or claim between the parties shall be submitted first to non-binding mediation and, if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

    (b) Mediation shall take place at a location to be designated by the parties using the Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator).

    (c) Arbitration shall take place in New York, New York and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. Party-selected arbitrators shall be selected from the lists of neutrals

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

maintained by either the IICPR or by JAMS, Inc., but the chair of the arbitration panel does not have to be selected from those specific lists. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties (including Paragraph 6 above), that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm, enforce or vacate any final award entered in arbitration, in any court of competent jurisdiction, provided that any party moving to enforce, confirm or vacate any such agreement or award, as the case may be, will file such motion under seal unless prohibited under applicable court rules.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

15  Use of Member Firms and Third Parties.

(a) Client acknowledges and agrees that the services under the Engagement Letter, including any applicable tax advice, may be performed by a Member Firm located outside of the United States. Client understands that each Member Firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of KPMG and KPMG is not a partner, principal, agent or affiliate of any other Member Firm.

(b) Client further acknowledges and agrees that in connection with the performance of services under the Engagement Letter, KPMG and Member Firms, in their discretion or at Client's direction, may utilize the services of third parties within and outside of the United States to complete the services under the Engagement Letter or analyze Client information.

(c) Client further acknowledges and agrees that KPMG Parties may have access to Confidential Information from offshore locations, and that KPMG uses third parties within and outside of the United States to provide at KPMG's direction administrative, clerical or analytical services to KPMG. These third parties may in the performance of such services have access to Client's Confidential Information. KPMG represents to Client that with respect to each Member Firm and third party, KPMG has technical, legal and/or other safeguards, measures and controls in place to protect Confidential Information of Client from unauthorized disclosure or use. KPMG shall be responsible to Client for their failure to comply.

(d) Accordingly, Client's agreement above extends to disclosure, ability to access, and use of its Confidential Information by the parties and for the purposes set forth in Paragraph 11 and this Paragraph 15.

(e) Any services performed by a Member Firm or third party shall be performed in accordance with the terms of the Engagement Letter and these Standard Terms and Conditions, including Paragraph 11 (Confidentiality), but KPMG shall remain responsible to Client for the performance of such services. Client agrees that any claim relating to the services under the Engagement Letter may only be made against KPMG and not any other Member Firm or third party referred to above.

16. Miscellaneous.

(a) Sarbanes-Oxley. Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) Electronic Communications. KPMG and Client may communicate with one another by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Each party accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices). Client agrees that the final hardcopy or electronic version of a document, including a Deliverable, or other written communication that KPMG transmits to Client shall supersede any previous versions transmitted by KPMG to Client.

(c) California Accountancy Act. For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) Volume Rebates. Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) Use of Names and Logos. Except as permitted by law or as set forth in the Engagement Letter or this Paragraph 16(e), neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof, and any such use shall require the express written consent of the owner party. Client agrees that KPMG may list Client as a customer in KPMG's internal and external marketing materials, including KPMG websites and social media, indicating the general services rendered (e.g., "Client is an Audit, Advisory and/or Tax client of KPMG LLP."). In addition, Client gives KPMG the right to use Client's logo on the Deliverables and documents prepared for

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

Client internally (e.g., internal presentations, etc.) or for internal KPMG presentations and intranet sites.

(f) **Export Control.** KPMG and Client acknowledge and agree that each shall comply with all applicable United States export control laws and regulations in the performance of each party's respective activities under the Engagement Letter. Client shall not provide KPMG, or grant KPMG access to, (a) information (including technical data or technology), verbally, electronically, or in hardcopy, (b) software or (c) hardware, that is controlled for export by the United States government under the Arms Export Control Act of 1976, Export Administration Act of 1979, the International Traffic in Arms Regulations ("ITAR"), Export Administration Regulations ("EAR"), Department of Energy Part 810 Regulations or Nuclear Regulatory Commission Part 110 Regulations, except information, software or hardware that is classified as EAR99 under the EAR.

(g) **Active Spreadsheets and Electronic Files.** KPMG may use models, electronic files and spreadsheets with embedded macros created by KPMG to assist KPMG in providing the services under the Engagement Letter. If Client requests a working copy of any such model, electronic file or spreadsheet, KPMG may, at its discretion, make such item available to Client for its internal use only on an as-is basis and such item shall be considered a Deliverable subject to Paragraph 4 above; provided that Client is responsible for obtaining the right to use any third party products necessary to use or operate such item.

(h) **Non-Solicitation.** During the term of the Engagement Letter and for one year thereafter, neither party shall solicit for hire as an employee, consultant or otherwise any of the other party's personnel who have had direct involvement with the services under the Engagement Letter, without such other party's express written consent. This prohibition shall not apply to any offers of employment which result from a general solicitation for employment, including without limitation, through the Internet, newspapers, magazines and radio.

17. **Entire Agreement.** The Engagement Letter and these Standard Terms and Conditions, and any exhibits, attachments, addenda and appendices hereto and thereto, and amendments to any of the foregoing that are agreed in writing between the parties, shall constitute the final, complete and exclusive agreement between the parties with respect to the subject matter of the foregoing, and supersede all other previous and contemporaneous oral and written representations, understandings or agreements relating to that subject matter.

18. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the scope of the Internal Revenue Code of 1986 (the "IRC") section 6011 as implemented through Treasury Regulation 1.6011-4(b)(iii)(ii) (without regard to references to payment or receipt of a minimum fee) or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client, its directors, officers, employees and agents may disclose to any and all persons, without limitation of any kind, tax information KPMG provides to Client, including all materials such as tax opinions, memoranda, or other written tax advice that describes or otherwise relates to, either or both of the tax treatment and tax structure of any transaction on which KPMG's services are provided. Client agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG's services are requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance with IRC section 6011. IRC section 6111 and the laws of various states require a material advisor with respect to a reportable transaction to make a return containing specified information concerning the transaction to the IRS or a designated state tax authority by a prescribed date, and IRC section 6707 imposes penalties for noncompliance with IRC section 6111. IRC section 6112 and the laws of various states require the material advisor to maintain, and make available to the IRS or designated state tax authority upon request, a list containing prescribed information with respect to persons advised and other information with respect to the reportable transaction, and IRC section 6708 imposes penalties for noncompliance with IRC section 6112. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions to IRC section 6011. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state tax authority or other jurisdiction adopting similar or analogous provisions thereto.

(c) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(d) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the IRC, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state, local and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

# APPENDIX A

## [FORM OF NOTICE AND ACKNOWLEDGEMENT]

[Name of Third Party]
Address


The advice, recommendations, information, deliverables and other work product ("KPMG Advice") being made available to you in connection with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG LLP's engagement for [Name of Client]. It has been made available to you for informational purposes only. You acknowledge and agree that KPMG does not authorize any party other than [Name of Client] to benefit from or rely upon it, or make any claims against KPMG relating thereto, and any such reliance by you or anyone else shall be at your or their own risk. Accordingly, KPMG accepts no responsibility or liability in respect of such KPMG Advice and you shall have no right to make it available to anyone else without including a copy of this notice and, unless disclosure is required by law or to fulfill a professional obligation required under applicable professional standards, obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.*

Very truly yours,

[Name of Client]

By: _____
    Name:
    Title:

**Accepted and Agreed to on this ___ day of ____, 20__ by:***

[Name of Third Party

By: _____
    Name:
    Title:

*Remove in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) of the Standard Terms and Conditions in which case an acknowledgement is not required by the terms of Paragraph 4(c).