# **EXHIBIT D**

## **UCC Retention Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

---

**DECLARATION OF BRENDAN STUHAN IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF KPMG LLP AS TAX CONSULTANTS TO THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* TO DECEMBER 23, 2019**

I, Brendan Stuhan, declare as follows:

1. I am Assistant General Counsel of Blue Cross and Blue Shield Association. I am making this declaration on behalf of Blue Cross and Blue Shield Association in its capacity as Co-Chair of the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").

2. I submit this declaration (the "Retention Declaration") in support of the *Application for Order Authorizing Employment and Retention of KPMG LLP as Tax Consultants to the Debtors and the Official Committee of Unsecured Creditors Nunc Pro Tunc to December 23, 2019* (the "Application").[2] Except as otherwise noted, all facts in this Retention Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

US-DOCS\105066320.4
#92833584v10

of relevant documents, and information supplied to me by other members of the Committee and the Committee's advisors.

## THE COMMITTEE'S DETERMINATION TO RETAIN KPMG

3. The Committee understands its fiduciary duty to seek to maximize unsecured creditor recoveries and, to the extent reasonably possible, to resolve these Chapter 11 Cases in a consensual and expeditious manner.

4. After discussion and consideration of the costs and benefits, the Committee concluded—in accordance with its fiduciary duties—that it required the services of tax consultants in order to be able to competently advise unsecured creditors on the transactions that may be consummated in these Chapter 11 Cases. Among other things, the Committee concluded that independent tax consultants were required to evaluate, advise, assist, and provide expert testimony, as required, with respect to, among other things, tax analysis and proposal of structuring alternatives with respect to any disposition of the assets of the Debtors, their affiliates, and any companies owned or controlled by shareholders of the Debtors ("IACs") pursuant to the bankruptcy plan. The Committee's retention of tax consultants will ensure that any sale process(es), settlements or other transactions are fairly considered by the Committee and that a diligent and exhaustive search for value-maximizing proposals is conducted.

5. The Committee carefully considered what financial professionals are necessary in these Chapter 11 Cases and the Committee agreed that it required the services of KPMG (as tax consultants), Jefferies (as investment banker), and Province (as financial advisor) to ensure that the Committee is able to discharge its fiduciary duty to all unsecured creditors.

6. As set forth below, the services to be provided by KPMG are distinct from the services to be provided by Jefferies and Province.

#92833584v10

7.      In order to control costs incurred by the Debtors and maximize the value of the Debtors' estates, the Debtors and the Committee entered into discussions through their respective advisors regarding the possibility of a joint retention of a tax advisor to minimize duplicative costs. The Committee and the Debtors determined that a joint tax advisor would be appropriate given the scope of the engagement and significant expected cost savings.

## THE COMMITTEE'S SELECTION PROCESS

8.      The decision to retain and employ tax consultants followed careful consideration and a thorough an arm's-length negotiation process. After its appointment, the Committee interviewed two accounting and tax consulting firms.

9.      Committee members and the Committee's legal counsel spent the period immediately following the interviews reviewing and considering the need to retain one of the tax consultants the Committee interviewed. After deliberations among Committee members and counsel, the Committee ultimately decided to retain KPMG based on its capabilities and significant experience in chapter 11 restructurings, its competitive compensation structure, and the need for an advisor to perform the services for which the Committee seeks to retain KPMG: specifically, to enable the Committee to discharge its fiduciary duties to independently evaluate any sale process(es), settlements or other transactions contemplated by the Debtors, including any proposed settlement with any parties or entities affiliated with or related to, directly or indirectly, the Debtors or the holders of their equity interests.

10.     The Committee has negotiated, reviewed and agreed to the Fee Structure set forth below:[3]

---

[3] To the extent there is any inconsistency between the summary of the Fee Structures set forth in this Retention Declaration and the Fee Structures as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

3

#92833584v10

| Out-of-Scope Services | Hourly Rate Range |
|---|---|
| Partners, Principals, or Managing Directors | $765 – $985 |
| Senior Managers | $690 – $750 |
| Managers | $650 – $730 |
| Senior Associates | $470 – $640 |
| Associates | $350 – $380 |
| Para-Professionals | $200 – $295 |

11. The Committee understands that the Fee Structures are standard for accounting and tax consulting firms. This view is predicated upon Committee discussions with its advisors before, during, and after the selection process.

12. Having received and evaluated proposals from another accounting and tax consulting firm, the Committee determined that KPMG's negotiated compensation package was fair and reasonable.

13. For the avoidance of doubt, I have no relationship with KPMG.

### SCOPE OF KPMG'S SERVICES

17. As set forth more fully in the Engagement Letter, in consideration for the compensation contemplated therein, KPMG has and will continue rendering a broad range of tax consulting services, on behalf of the Debtors and the Committee.[4] Specifically, KPMG will perform, to the extent the Debtors or the Committee request, the following services to the Debtors and the Committee:

    a. Tax analysis and proposal of structuring alternatives with respect to any disposition of the assets of the Debtors, their affiliates, and any companies owned or controlled by shareholders of the Debtors ("IACs") pursuant to the bankruptcy plan;

    b. Quantitative analysis, including preparation and/or review of cash tax models, regarding the projection of cash taxes arising from operations,

---

[4] To the extent that this Retention Declaration and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

4

#92833584v10

          dispositions, reorganization and repatriation of funds held by the Debtors and IACs;

c.     Diligence regarding the historical tax positions and tax attributes of the Debtors and the IACs;

d.     Interacting with tax authorities in order to assess the impact of historical tax matters in regards to any proposed transaction;

e.     Analysis of the tax implications of any payments made by the Debtors to settle claims;

f.     Analysis of any proofs of claims from tax authorities;

g.     Analysis of cancellation of debt ("COD") income as applicable, including the application of Section 108 and relating to the restructuring of any related party debt and the completed capitalization/settlement of intercompany debt; and

h.     Analysis and proposal of structuring alternatives with respect to the post-emergence tax structure of the Debtors and IACs.

14.     Should the Debtors or the Committee request KPMG to perform additional services not contemplated by the Engagement Letter (the "Out-of-Scope Services") the Committee will seek to mutually agree in advance with the Debtors and KPMG upon such services and fees for those services in writing. In the event the Out-of-Scope Services require an amendment to the Engagement Letter, the amendment will be subject to the Court's review upon proper application by the Committee.

15.     The Committee concluded that the services of KPMG will be necessary to ensure that the Committee is able to execute its statutory mandate and discharge its fiduciary duty to unsecured creditors.

16.     Based on the foregoing, the Committee respectfully requests that the Court enter Order approving the retention of KPMG, as tax consultants, to the Committee.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry,

5

#92833584v10

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 7, 2020

By: Brendan Stuhan, not in his individual capacity but solely on behalf of Blue Cross and Blue Shield Association, in its capacity as co-chair of the Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.*

6