Hearing Date and Time: February 21, 2020, at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: February 20, 2020, at 12:00 p.m. (prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF HEARING ON DEBTORS' MOTION FOR AUTHORIZATION
TO ENTER INTO DEVELOPMENT AGREEMENT**

**PLEASE TAKE NOTICE** that on February 11, 2020, the above-captioned debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") filed the *Debtors' Motion for Authorization to Enter into Development Agreement* (the "**Motion**"). A hearing on

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

the Motion will be held on **February 21, 2020** at **10:00 a.m.** (prevailing Eastern Time) (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

    **PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

    **PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498], so as to be filed and received no later than **February 20, 2020** at **12:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

    **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:   February 11, 2020
         New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By:  /s/ Eli J. Vonnegut
                                    DAVIS POLK & WARDWELL LLP
                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone: (212) 450-4000
                                    Facsimile:  (212) 701-5800
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Timothy Graulich
                                    Eli J. Vonnegut
                                    Christopher S. Robertson

                                    *Counsel to the Debtors*
                                    *and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.¹ | **(Jointly Administered)** |

**DEBTORS' MOTION FOR AUTHORIZATION
TO ENTER INTO DEVELOPMENT AGREEMENT**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Relief Requested**

1. By this Motion (the "**Motion**"), and pursuant to sections 105(a) and 363(b) of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended or modified, the "**Bankruptcy Code**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), authorizing the Debtors, including Debtor Greenfield Bioventures L.P. ("**Greenfield**"), to enter into an agreement substantially in the form of the Development Agreement ("**Development Agreement**") attached hereto as **Exhibit B** with ▮▮▮▮▮ ("**Technology Partner**").

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

3. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**General Background**

4. On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27,

2

2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors. No trustee or examiner has been appointed in these Chapter 11 Cases.

5. Information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [ECF No. 17].

6. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court on September 18, 2019 in each of the Chapter 11 Cases.

### Purdue Is Committed to Distributing Life-Saving Rescue Medications

7. The Debtors' are committed to their transformation into a public benefit corporation that will advance meaningful solutions to the opioid crisis and save lives. The Debtors are hopeful that their expertise, knowledge and intellectual property will be put to positive use developing and distributing life-saving opioid overdose reversal medications. Time is of the essence in addressing this public health crisis.

8. Available opioid reversal medications, including naloxone (which is sold under the brand name Narcan, among others), when timely administered, can quickly restore normal respiration to a person whose breathing has slowed or stopped as a result of a prescription or illicit opioid overdose. But these medications may not be sufficiently powerful or long-lasting to reverse the effects of synthetic opioids such as fentanyl (which is approximately fifty times more potent than heroin).

9. The opioid crisis has been driven in the last few years by synthetic opioids. For instance, just a few days ago, the U.S. Office of National Drug Control Policy noted that, in the

3

last year, approximately 48,000 Americans have died from opioid overdoses. About 70% of those deaths involved some type of synthetic opioid, most prominently fentanyl.[2] Accordingly, the Directors of the National Institutes of Medicine and the National Institute of Drug Abuse recently called for the development of "stronger, longer-acting formulations of antagonists … to counteract the very high potency synthetic opioids that are now claiming thousands of lives each year."[3]

10.  In the Debtors' view, nalmefene hydrochloride, which is more potent and longer-lasting than naloxone,[4] could address a need where existing treatments have proven to be ineffective against the wave of fentanyl overdoses. Because synthetic opioids are so potent, multiple doses of naloxone may be required to reverse their effects. However, multiple doses of naloxone may not be available or administered, and even multiple doses of naloxone cannot revive every patient who has overdosed from large amounts of fentanyl or other synthetic opioids. In addition, naloxone has a significantly shorter half-life and corresponding duration of action than fentanyl, which presents a significant risk that the naloxone may "wear off" before the fentanyl. Naloxone's shorter half-life can result in a patient experiencing a second overdose without taking any additional opioids, creating a particularly high risk situation if the patient is not in a medical care setting at that time. The Debtors are not suggesting that nalmefene should be a replacement for naloxone. Rather, the Debtors view nalmefene as valuable addition to the existing collection of opioid rescue medications that is well-suited to treating overdoses from powerful synthetic opioids.

---

[2] *New Tool Empowers Local Leaders to Take Action Against Rural Drug Addiction*, Office of National Drug Control Policy, https://www.whitehouse.gov/briefings-statements/new-tool-empowers-local-leaders-take-action-rural-drug-addiction/ (last visited January 31, 2020).
[3] Volkow and Collins, *The Role of Science in Addressing the Opioid Crisis*, N. ENGL. J. MED., July 27, 2017, 91-394.
[4] *Drug Record: Nalmefene*, National Institutes of Health, https://livertox.nih.gov/Nalmefene htm (last visited Feb. 11, 2020).

11. The Debtors have been developing an injectable form of nalmefene that can be administered by means of an easy-to-use autoinjector (the "**Product**") by friends, family and caregivers. This solution must be capable of remaining at the ready in the autoinjector device for months or more before use and have an acceptably quick onset of action. The Debtors wish to partner with the Technology Partner to begin developing the Product. The Technology Partner is a specialty pharmaceutical company that develops and commercializes pre-loaded drug device combinations based on their proprietary autoinjector platform. The Technology Partner's technology is simple and easy-to-use, as it requires no mixing of ingredients, includes a pre-filled syringe with the autoinjector device and shields the needle after injection. The Product is also expected to be extremely reliable based on the Technology Partner's proven track record of successful development and registration of other autoinjector-based drug device combinations. In short, the Debtors believe that the Technology Partner is the company most likely to deliver a nalmefene autoinjector within the desired timeframe that can be used safely and effectively by the general public.

12. The Debtors cannot afford to wait. There is a material risk that the Technology Partner pursue other opportunities if the Debtors delayed seeking court approval. More importantly, however, delay would mean sitting still and doing nothing to address the serious ongoing public health crisis.

13. The Debtors understand that certain creditors may have reservations regarding Purdue's investment in public health initiatives, or may wish to delay any such investments to a later date. The Debtors believe any such reservations are misplaced and intend to continue working to build support among their creditors for these initiatives. Creditors can also take comfort, however, in the fact that should the Debtors' belief in these initiatives not be borne out,

5

Section 11.4 of the Development Agreement provides that Greenfield may terminate on ▇▇▇ notice by paying a termination fee of ▇▇▇. This termination right allows the Debtors to control development expenses if the Debtors determine in the future that, for example, the Product is not in fact likely to deliver on its promise as the Debtors believe it will. In addition, Section 13.5 of the Development Agreement provides Greenfield with the right to assign its contract to a not-for-profit entity, which offers further flexibility if the Product fails to play its expected key role in the Debtors' public benefit mission. The Technology Partner also has certain termination rights that are summarized below. Taken together, the terms of the Development Agreement enable the Debtors to advance a critically important initiative on beneficial terms while also not requiring an irrevocable commitment should the Debtors ever need flexibility in the future.

### Development Agreement Key Terms

14. A summary of the material terms of the Development Agreement is as follows:[5]

- Greenfield and the Technology Partner will enter into the Development Agreement. PPLP will guarantee Greenfield's obligations thereunder.

- The Development Agreement will provide for joint development of the Product in and for the United States.

- The Technology Partner will license rights to their autoinjector technology to Greenfield. Greenfield will license intellectual property related to formulation of nalmefene to the Technology Partner solely for the purpose of developing and manufacturing the Product.

- The Technology Partner will be responsible for 

---

[5] Any summaries contained herein are provided for the convenience of the Court and parties in interest. To the extent that there is any conflict between this Motion and the Development Agreement, the Development Agreement shall govern in all respects. Capitalized terms used and not otherwise defined in this Motion shall have the meanings ascribed to them in the Development Agreement.

- Greenfield will be responsible for ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

- The Technology Partner will supply finished goods for clinical trials ▆▆ and finished goods for commercialization ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

- The companies will establish a supply agreement to be negotiated based upon terms outlined in the Development Agreement no later than three months prior to an anticipated New Drug Application filing.

- Greenfiled has the unilateral right to terminate the Development Agreement on ▆▆▆▆▆▆ notice, provided that if Greenfield elects to terminate prior to receipt of New Drug Application approval, Greenfield must pay ▆▆▆▆ to the Technology Partner.

- The Technology Partner has the unilateral right to terminate the Development Agreement ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Selection of the Technology Partner Through a Competitive Process**

15.     The Debtors selected the Technology Partner after conducting a process to identify the best possible partner. Management began by defining the required performance characteristics for the autoinjector technology and identified companies with potentially suitable devices to evaluate further. Based on this initial screening, the Debtors chose to conduct a review of seven companies, five of which were developing autoinjectors for emergency use, with a focus on technical capability, soundness of platform, and likelihood of delivering a finished product for emergency use within an acceptable timeframe. At the conclusion of that review, the Debtors selected four companies with which to engage in diligence and negotiation of potential deal terms.

16. After conducting this competitive process, the Debtors determined that the Technology Partner offered the most attractive overall package. The Technology Partner was selected as the preferred partner because, among other things, it has the most experience in the field and a commercially proven technology, and because it was the only company with a successfully registered autoinjector device for emergency use in the United States that was available to license. The Debtors believe that the Technology Partner is the company most likely to deliver a suitable nalmefene autoinjector within the desired timeline.

17. Accordingly, the Debtors respectfully submit that authorizing Subsidiary to enter into the Development Agreement is in the best interest of the Debtors and all stakeholders.

## Basis for Relief Requested

18. Bankruptcy Code section 363(b)(1) empowers the Court to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re MF Global Inc.,* 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) ("Although not specified by section 363, the Second Circuit requires that transactions under section 363 be based on the sound business judgment of the debtor or trustee."); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Although

8

the determination of what constitutes a sufficient business reason depends on the facts and circumstances of each case, a debtor often satisfies the business judgment standard if the actions were undertaken "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Moreover, "where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. at 616.

19. Additionally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to section 105(a), orders are appropriate where they are essential to the debtor's reorganization efforts and do not pose a burden on the debtor's creditors. *See U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prof. & Indem. Ass'n (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999); *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

20. The relief requested herein represents a sound exercise of the Debtors' judgment. As described above, the Debtors believe that entering into the Development Agreement and consummation of the transactions contemplated therein will facilitate the pursuit of meaningful solutions to the opioid crisis through the development of advanced life-saving treatment options to prevent and reverse the effects of opioid overdose, to the benefit of all stakeholders. The Debtors respectfully submit that the relief requested herein is based on the Debtors' sound

business justification, is consistent with the Debtors' public benefit mission, is in the best interests of their estates and creditors, and should be granted in all respects.

### Debtors' Reservation of Rights

21.     Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder or any other party; or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Stay Under Bankruptcy Rule 6004(h)

22.     The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to maximize the value of their estates.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the nature of the relief sought herein justifies immediate relief.

**Notice**

23. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498] and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this Motion. The Debtors respectfully submit that no further notice is required.

**No Prior Request**

24. The Debtors have not previously sought the relief requested herein from the Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the proposed form of order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: February 11, 2020
New York, New York

                         DAVIS POLK & WARDWELL LLP

                         By: */s/ Eli J. Vonnegut*

                         450 Lexington Avenue
                         New York, New York 10017
                         Telephone: (212) 450-4000
                         Facsimile:  (212) 701-5800
                         Marshall S. Huebner
                         Benjamin S. Kaminetzky
                         Timothy Graulich
                         Eli J. Vonnegut
                         Christopher S. Robertson

                         *Counsel to the Debtors*
                         *and Debtors in Possession*