DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.[1]** | **(Jointly Administered)** |

**NOTICE OF PRESENTMENT OF STIPULATION, AGREEMENT AND ORDER**
**BETWEEN DEBTORS AND EXPRESS SCRIPTS SENIOR CARE HOLDINGS, INC.**

**PLEASE TAKE NOTICE** that the annexed stipulation (the "**Stipulation**") will be

presented for signature to the Honorable Robert D. Drain, United States Bankruptcy Judge, United

States Bankruptcy Court for the Southern District of New York (the "**Court**") for approval and

signature on **February 28, 2020 at 10:00 a.m. (prevailing Eastern Time)**.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PLEASE TAKE FURTHER NOTICE** that, unless a written objection to the Stipulation is served and filed with proof of service with the Clerk of the Court, and a courtesy copy is delivered to the undersigned and to the chambers of the Honorable Robert D. Drain, so as to be received by **February 25, 2020 at 4:00 p.m. (Eastern Time)**, there will not be a hearing to consider such Stipulation, and such Stipulation may be signed and entered by the Court.

**PLEASE TAKE FURTHER NOTICE** that, if a written objection is timely filed and served with respect to the Stipulation, a hearing (the "**Hearing**") will be held to consider the Motion before the Court at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on a date to be announced.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that copies of the Stipulation may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma.  You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  February 14, 2020
        New York, New York

DAVIS POLK & WARDWELL LLP

By:  */s/ Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit A

**Stipulation**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[2] | (Jointly Administered) |

STIPULATION, AGREEMENT AND ORDER
BETWEEN DEBTORS AND EXPRESS SCRIPTS SENIOR CARE HOLDINGS, INC.

Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), through their undersigned counsel, and Express Scripts Senior Care Holdings, Inc. ("**ESSC**" and, together with the Debtors, the "**Parties**") hereby enter into this stipulation, agreement and order (this "**Stipulation**").

**WHEREAS**, on September 15, 2019, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**");

**WHEREAS**, the Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

---

[2] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

WHEREAS, on September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "**Creditors' Committee**");

WHEREAS, on September 16, 2019, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders Authorizing (i) Debtors to Honor Prepetition Obligations to Customers and Related Third Parties and to Otherwise Continue Customer Programs, (ii) Relief from Stay to Permit Setoff in Connection with the Customer Programs and (iii) Financial Institutions to Honor and Process Related Checks and Transfers* [ECF No. 11] (the "**Customer Programs Motion**");[3]

WHEREAS, on October 16, 2019, the Bankruptcy Court entered an order granting the Customer Programs Motion on a final basis [ECF No. 314] (the "**Final Customer Programs Order**");

WHEREAS, PPLP and ESSC are parties to a Medicare Part D Rebate Program Agreement effective January 1, 2011 and amended from time to time thereafter (the "**Rebate Program Agreement**"), pursuant to which PPLP pays certain Medicare Part D Rebates;

WHEREAS, the Medicare Part D Rebate Program is a Customer Program, as such term is defined in the Final Customer Programs Order;

WHEREAS, the Debtors and ESSC agree that it is in their mutual interest to resolve all amounts payable by the Debtors to ESSC on account of Medicare Part D Rebates on utilization of OxyContin® where individual strengths of OxyContin® were listed on certain plan formularies under different tiers, as well as formulary-related payments related to utilization of Hysingla® ER and Butrans® (the "**2017 Disputed Rebates**") for dates of services from January 1, 2017 to December 31, 2017 invoiced on or before September 1, 2018 (the "**Relevant Period**") to avoid

---

[3] Capitalized terms used but not defined herein shall have the same meaning as in the Customer Programs Motion.

2

the expense and uncertainty of further dispute, pursuant to a settlement agreement substantially in the form attached as **Exhibit 1** to this Stipulation (the "**Settlement Agreement**");

**WHEREAS**, under the terms of the Settlement Agreement, ESSC will pay the Debtors the total sum of $2,139,412.00;

**WHEREAS**, the Final Customer Programs Order authorizes the Debtors to fulfill and honor their obligations under the Customer Programs, including Medicare Part D Rebate programs, as they deem appropriate, without further application to the Bankruptcy Court, including making all payments, satisfying all obligations, reconciling and finalizing payable amounts and permitting all setoffs in connection therewith, whether relating to the period prior to, on or subsequent to the Petition Date;

**WHEREAS**, the Debtors and their customers routinely settle payment disputes under contracts relating to their Customer Programs in the ordinary course of business and in order to fulfill and honor their obligations under the Customer Programs in an efficient and value-maximizing manner; and

**WHEREAS**, out of an abundance of caution, the Parties seek approval of this Stipulation authorizing them to enter into and perform under the Settlement Agreement;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the Parties, intending to be legally bound, stipulate and agree as follows:

1.    The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.      PPLP and ESSC are authorized to enter into the Settlement Agreement attached as Exhibit 1 hereto and to perform their respective obligations thereunder and all such further acts as may be necessary, appropriate or desirable in connection therewith.

3.      The Bankruptcy Court shall have exclusive jurisdiction to resolve any and all disputes relating to this Stipulation.  Each of the Parties irrevocably consents for all purposes of this Stipulation to the jurisdiction of the Bankruptcy Court and agrees that venue is proper in the Bankruptcy Court.

4.      This Stipulation and the Settlement Agreement attached hereto represents the Parties' mutual understandings and supersedes all prior agreements whether in oral or written form.

5.      This Stipulation and the Settlement Agreement attached hereto shall bind and benefit the Parties and each of their respective affiliates, subsidiaries, successors and assigns and executors and administrators.

6.      This Stipulation shall be effective and enforceable immediately upon entry.

[*Signature pages to follow*]

STIPULATED AND AGREED:

Dated:   February 14, 2020
          New York, New York

DAVIS POLK & WARDWELL LLP

By:   */s/ Eli J. Vonnegut* _____

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*

Dated:   February 14, 2020
          New York, New York

HUSCH BLACKWELL LLP

By:   */s/ Marshall C. Turner* _____

190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Facsimile:  (314) 480-1505
Marshall C. Turner

*Counsel to Express Scripts Senior Care*
*Holdings, Inc.*

**SO ORDERED.**

White Plains, New York
Dated: _____, 2020

THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Form of Settlement Agreement**

**SETTLEMENT AGREEMENT**

This Settlement Agreement (this "Agreement") is entered into by and between Purdue Pharma L.P. and its Associated U.S. Companies, as defined in the Rebate Program Agreement (collectively, "Purdue") with its headquarters' office located at One Stamford Forum, Stamford, Connecticut 06901 and Express Scripts Senior Care Holdings, Inc. (hereinafter "ESSC"), and both Purdue and ESSC (which are each referred to herein as a "Party" and collectively as "the Parties") agree to the following:

**WHEREAS,** Purdue is a privately held pharmaceutical company engaged in the research, development, production, and marketing of prescription and over-the-counter medicines and healthcare products;

**WHEREAS,** ESSC is a provider of pharmacy benefit management services for various types of plans;

**WHEREAS,** Purdue and ESSC are parties to a Medicare Part D Rebate Program Agreement effective January 1, 2011 and amended from time to time thereafter (the "Rebate Program Agreement");

**WHEREAS,** Purdue and ESSC agree that it is in their mutual interest to settle all past, current, and future disputes regarding payment by Purdue to ESSC of rebates on utilization of OxyContin® where individual strengths of OxyContin were listed on certain Plan formularies under different tiers, as well as formulary-related disputes on utilization of Hysingla® ER and Butrans® (the "2017 Disputed Rebates") for dates of services from January 1, 2017 to December 31, 2017 invoiced on or before September 1, 2018 (the "Relevant Period") to avoid the expense and uncertainty of further dispute and litigation; and

**WHEREAS,** this Agreement shall not be construed in any way as an admission of wrongdoing or liability on the part of either Party, the same being expressly denied;

**NOW, THEREFORE,** in consideration of the promises and mutual covenants and agreements hereinafter set forth, the Parties agree as follows:

1.      <u>Effective Date</u>

This Agreement is effective as of the date of the last signature below ("Effective Date").

2.      <u>Payment</u>

ESSC will pay to Purdue the total sum of $2,139,412.00 (hereinafter the "Settlement Amount") pursuant to the terms of this Agreement.  The Settlement Amount will be payable in a lump sum within 30 days of acceptance and execution of this Agreement and will be transmitted to Purdue electronically pursuant to written instructions provided by Purdue not later than seven (7) days following the final execution of this Agreement.  Purdue agrees that, upon payment by ESSC of the Settlement Amount pursuant to the terms of this Agreement, all 2017 Disputed Rebates for the Relevant Period will be deemed paid in full, and that ESSC will have no financial responsibility for any 2017 Disputed Rebates for the Relevant Period.

#92712810v5

3.      Releases

For and in consideration of the mutual promises contained herein, receipt of which is hereby acknowledged, ESSC (on behalf of itself and its officers) hereby releases Purdue from any and all past, current and future alleged claims or causes of action, including attorneys' fees, that ESSC has or may have, directly or indirectly, against Purdue and any entity or person affiliated with Purdue related to 2017 Disputed Rebates for the Relevant Period, provided that nothing herein shall release any obligations of Purdue pursuant to this Agreement.

For and in consideration of the mutual promises contained herein, receipt of which is hereby acknowledged, Purdue (on behalf of itself and its officers) hereby releases ESSC and any entity or person affiliated with ESSC from any and all claims or causes of action, including attorney fees, that Purdue may have, directly or indirectly, against ESSC and any entity or person affiliated with ESSC relating to 2017 Disputed Rebates for the Relevant Period, provided that nothing herein shall release any obligations of ESSC pursuant to this Agreement.

4.      Confidentiality

Purdue and ESSC agree that the Agreement, related correspondence, alleged claims and negotiations undertaken by the Parties are strictly confidential and that neither Party (including its agents, servants, employees, and independent contractors) will disclose the contents of or existence of this Agreement to any third parties without the written consent of the other Party, except as otherwise required by valid subpoenas, court order, or by applicable local, state and federal law, rule, regulation or obligation, upon request of any regulator, or the written consent of the Parties of this Agreement. Nothing herein shall prohibit any Party from disclosing the fact that the matter was settled and closed as long as there is no disclosure of the terms of the settlement. Furthermore, nothing herein shall prohibit ESSC from disclosing the contents or terms of the Agreement to a client in connection with an audit or other substantiation of payment to such client.

5.      Governing Law

Purdue and ESSC agree that the Agreement shall be interpreted according to the laws of the State of Delaware without regard to conflict of law principles.

6.      Authorized Representatives

Each signer of the Agreement represents and warrants that he or she is authorized to execute this Agreement in his or her official capacity on behalf of the Party to this Agreement for which he or she is signing.

7.      Entirety of Agreement/No Modification

Purdue and ESSC agree that this Agreement represents the complete understanding of the Parties on the subject matter addressed herein. All of the terms of this Agreement are contractual and are not a mere recital. Neither Party may assign this Agreement without the prior written consent of the other Party. No modification, revision or amendment to this Agreement shall be effective unless in writing and signed by both of the Parties hereto.

2

#92712810v5

8.      Headings

The captions and headings contained herein are for convenient reference only and shall not in any way affect the meaning of interpretation of this Agreement.

9.      Counterparts

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together constitute one and the same agreement.

10      No Admission of Liability

This Agreement shall not be used by any Party hereto or by any third party in any legal or administrative proceeding except in a proceeding to enforce this Agreement or as may be otherwise agreed to by the Parties or required by law.

11.     Interpretation

This Agreement shall be construed without regard to the Party who drafted the various provisions.  Any claimed ambiguity shall not be interpreted against either Party, but shall instead be resolved in accordance with other applicable rules governing the interpretation of contracts.

12.     Compliance

The parties acknowledge and agree that this Agreement and its execution shall be carried out in compliance with all applicable law, including but not limited to the Federal Anti-Kickback Statute.  ESSC represents and warrants that it will make all disclosures and submit all reports regarding the Settlement Amount payable pursuant to this Agreement to the extent such disclosures are required by applicable law or by contractual commitments undertaken by it.

13.     Binding

This Agreement shall become final and binding only upon the date of the last signature of a duly authorized representative of each Party hereto.  Facsimiles or electronically mailed documents containing the required signatures shall constitute acceptable, binding signatures for purposes of this Agreement. Each Party to this Agreement represents and warrants that:  (i) it was represented by legal counsel and had sufficient opportunity to review the terms of this Agreement with their legal counsel; (ii) it has voluntarily executed this Agreement; (iii) no promise or representation, oral or otherwise, has been made to it by any other Party, except as expressly stated in this Agreement;  (iv) it fully understands that the consideration provided for in this Agreement is all the consideration that is to be given for the matters contained in this Agreement; (v) to the best of its knowledge, this Agreement is fully enforceable in accordance with its terms.

3

#92712810v5

**PURDUE PHARMA L.P.**


_____    DATE:  _____

Jon Lowne
SVP, Chief Financial Officer


**Express Scripts Senior Care Holdings, Inc.**


_____    DATE:  _____

Adam Kautzner
Chief Pharma Trade Relations Officer

4