AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF COMMERCIAL LEASE, (II) AUTHORIZING ENTRY INTO NEW HEADQUARTERS LEASE, (III) AUTHORIZING THE ASSUMPTION OF COMMERCIAL LEASES AND (IV) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Purdue Pharma L.P., *et al.*, (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement (the "Statement") with respect to the *Motion of Debtors for Entry of an Order (I)*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief* [ECF No. 796] (the "Lease Motion").[2]  In support of this Statement, the Committee respectfully states as follows.

## STATEMENT

1. The Committee does not dispute that the Debtors need an office from which to operate their businesses.  The Committee does, however, have significant concerns regarding the Debtors' proposed entry into a new agreement with OSR, which is wholly owned by the Sackler family.  In addition, the Committee struggles to understand the Debtors' rationale for filing the Lease Motion *now*.  In so doing, the Debtors appear to be committing themselves prematurely to a unitary vison of how these cases will conclude, namely a "public trust" model of corporate governance for the entity that ultimately will emerge from bankruptcy.  As the Court is aware, this outcome may or may not be supported by a majority of the Debtors' creditors, who stand to inherit the entirety of the Purdue enterprise.  Notwithstanding these concerns and in light of the Debtors' willingness to include in the Proposed Order certain language that preserves the rights of all parties in interest, including the Debtors, with respect to any claims or causes of action arising out of the various leases held by or contemplated to be entered into by OSR, the Committee will make no effort to stand in the way of the Debtors' entry into the 2021 Headquarters Lease.  Instead, the Committee submits this Statement to inform the Court of the progress made between the Debtors and the Committee with respect to the Proposed Order and briefly highlight certain of the Committee's additional concerns.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Lease Motion.

2.  In an effort to assuage the Committee's concern regarding the Debtors' continued involvement with a Sackler-controlled entity, counsel to the Committee contacted counsel to the Debtors in advance of filing this Statement and requested that the Proposed Order be modified to explicitly preserve all claims and reserve all rights against the Sacklers, OSR and related entities with respect to the Debtors' entry into the 2021 Headquarters Lease and/or the transactions that led to the existing Headquarters Wrap Lease, including any rejection damages arising therefrom. The Debtors have agreed to include such language, which the Committee believes ensures that parties in interest, depending on the ultimate outcome of these cases, retain the right to argue that the various transactions surrounding the Debtors' Headquarters were improper or otherwise deprived creditors of value to which they are entitled. Specifically, the Proposed Order will be modified to include the following provision.

> Notwithstanding anything to the contrary in the Motion, this Order, the 2021 Headquarters Lease, the Existing PPLP Lease, the UBS Sublease, the Wrap Lease or the Surrender Agreement (collectively, the "Documentation"), nothing herein, in the Documentation or stated on the record before the Bankruptcy Court in connection with the Motion shall be deemed to, or shall, waive, preclude or extinguish any rights or claims of any entity, including the rights and claims of the Debtors, against any entity other than the Debtors, including, but not limited to, OSR and its shareholders and affiliates, related to or arising out of: (a) the 2021 Headquarters Lease; (b) the Existing PPLP Lease; (c) the UBS Sublease; (d) the Headquarters Wrap Lease; (e) the Surrender Agreement; (f) the negotiation, execution, or implementation of any of the foregoing; or (g) the Debtors' assumption of the PPLP Lease and/or of the UBS Sublease, and all such rights and claims are hereby expressly preserved; provided, however, nothing in this reservation is intended to override the relief granted pursuant to this Order under Sections 365 and 363 of the Bankruptcy Code.

3.  With regard to the Committee's second concern, the relief sought in the Lease Motion is grounded in the Debtors' own view of their go-forward business—an issue on which the Committee has not yet formed an opinion. When the Debtors first disclosed to the Committee

3

their intention to file the Lease Motion, the Committee had not seen the Debtors' business plan (the "Business Plan"), nor had there been meaningful discussions regarding what Purdue would look like following the conclusion of these cases. In view of these circumstances, the Committee requested that the Debtors wait to file the Lease Motion at least until the Committee had been given the opportunity to assess the 2021 Headquarters Lease in connection with a thorough evaluation of the Business Plan and consider the soundness of the Business Plan more generally as a basis for the operations of the future reorganized Debtors. For various reasons, the Debtors chose to file the Lease Motion on January 31, 2020.

4. As the Court is well aware, the Committee remains engaged in extensive diligence and has yet to reach a final determination regarding the appropriateness of the contemplated "public trust" governance construct or any other final outcome for the Debtors or their estates. The Committee is not—and cannot be—in a position to reach such a determination a mere 12 days after its first opportunity to review the Business Plan. Indeed, this analysis likely will take a number of months and involve discussions with all of the Debtors' stakeholders.[3] The Committee, however, has chosen not to object to the Lease Motion given the Committee's view that the expenditure of estate funds to litigate this matter is not a prudent use of resources that—like the entirety of the Debtors' estates—will eventually belong to creditors.

---

[3] The Debtors provided the business plan to the Committee's professionals on a professionals' eyes only basis on February 5, 2020. Certain Committee members, however, are designated as Market Participants under the terms of the *Protective Order* [ECF No. 784], and accordingly were only able to review a heavily redacted version of the Business Plan. The Debtors conducted their first in-person meetings with various constituencies (including the Committee, the Supporting Ad Hoc Group and the Dissenting States, individually) regarding the Business Plan over the last two weeks.

| | |
|---|---|
| Dated:  New York, New York<br>February 17, 2020 | AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>By:  /s/ *Arik Preis*<br>      Ira S. Dizengoff<br>      Arik Preis<br>      Mitchell Hurley<br>      Sara L. Brauner<br>      One Bryant Park<br>      New York, New York 10036<br>      Tel: (212) 872-1000<br>      Fax: (212) 872-1002<br>      idizengoff@akingump.com<br>      apreis@akingump.com<br>      mhurley@akingump.com<br>      sbrauner@akingump.com<br><br>      *Counsel to the Official Committee of Unsecured*<br>      *Creditors of Purdue Pharma L.P., et al.* |

5