DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.,* | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**RESPONSE OF DEBTORS TO STATEMENT OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO THE
MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE REJECTION OF COMMERCIAL LEASE, (II) AUTHORIZING ENTRY
INTO NEW HEADQUARTERS LEASE, (III) AUTHORIZING THE ASSUMPTION
OF COMMERCIAL LEASES AND (IV) GRANTING RELATED RELIEF**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are the debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**"),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

hereby submit this response (the "**Response**") to the statement, dated February 17, 2020 [ECF No. 839] (the "**Statement**") filed by the Official Committee of Unsecured Creditors (the "**UCC**") with respect to the *Motion of Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief* [ECF No. 796] (the "**Motion**").[2]

1. The 2021 Headquarters Lease is the product of months of negotiation, careful consideration and exploration of market comparables and potential alternatives, and diligent review by the independent Special Committee of the Debtors' Board of Directors. As a result, the Debtors are confident that the 2021 Headquarters Lease is a prudent exercise of their business judgment and in the best interests of the Debtors and their estates. As the Motion is unopposed, it should be granted. The Debtors are, regretfully, obligated to address the UCC's Statement, so that the Court and all parties understand the Debtors' approach and views.

2. The UCC filing states that the UCC "struggle[d] to understand" why the Debtors' filed the Motion when they did. UCC Stmt. at ¶ 1. The reasons are straightforward, and were both communicated to the UCC and described in the Motion. First, the Debtors face an April 13, 2020 statutory deadline to assume or reject the Headquarters Wrap Lease that cannot be extended without counterparty consent. 11 U.S.C. § 365(d)(4); *see also Order Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property* [ECF No. 686]. Despite requests, OSR refused to grant any further extensions. *Declaration of John Lowne in Support of Motion of Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of*

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

*Commercial Leases and (IV) Granting Related Relief* [ECF No. 797] (the "**Lowne Declaration**") at ¶ 9.  Second, as described in the Motion and the Lowne Declaration, if the Debtors were to leave One Stamford Forum they would require approximately ten months of lead time to identify a suitable alternative headquarters space, negotiate a lease and plan out the new offices.  *See* Lowne Decl. at ¶ 9.  The Debtors' current lease expires at the end of this year, so the relocation alternative—and with it any leverage that the possibility of moving gave the Debtors in their negotiations with OSR—would have completely evaporated had the Debtors continued to wait.  The Debtors cannot play a high-stakes game of chicken with their headquarters, without which they cannot operate.

3.      The UCC nevertheless implies that a potential issue exists because OSR is ultimately owned by the Sacklers.  The Debtors of course fully appreciate those sensitivities.  As all parties know, the Debtors' advisors and the Special Committee have intensely and diligently worked to ensure that all relationships between Purdue and any non-Purdue Sackler entity are and remain in Purdue's best interest.  As Debtors' counsel has previously advised the Court, this process has involved an extensive vetting of Sackler-related contracts, with any undesirable contracts being terminated or renegotiated.  *See, e.g.,* Hr'g Tr. 31:6–20, September 17, 2019.  Because the 2021 Headquarters Lease is with a Sackler-owned entity, it was subject to extensive review by the Special Committee.  Indeed, the Special Committee rejected an earlier proposal by OSR that included a substantially longer term.  Rather, the Special Committee insisted on a lease term of no longer than three years, specifically so that the Debtors would not be burdened with a long-term obligation upon emergence and to maintain optimal flexibility.  *See* Mot. at ¶ 27.  Moreover, the 2021 Headquarters Lease was subject to three different market checks: (i) the fact that the Debtors, with the assistance of their broker, actively explored alternatives to space in

3

One Stamford Forum and determined that the 2021 Headquarters Lease was the best available option, (ii) the fact that the Debtors' broker confirmed that the rent per square foot and the calculation of rentable square footage under the 2021 Headquarters Lease is consistent with the market for similar buildings in the area, and (iii) the fact that the Debtors' unrelated third-party sub-subtenants are paying comparable amounts for similar space in the same building. *See* Lowne Decl. at ¶¶ 10, 13.

4.  As the record reflects, the Debtors are currently not a desirable or even acceptable tenant to many landlords, and have very limited options. *See* Lowne Decl. at ¶¶ 10, 13. It is a testament to a dedicated management team and the Special Committee that the Debtors were able to obtain a relatively short-term lease on market terms, especially one that includes no cost or risk for relocating.

5.  Through the Statement, the UCC seems to take credit for requesting the addition of a reservation of rights in the Order. UCC Stmt. at ¶ 2. While this language does no harm, the Debtors agreed to it only after getting comfortable that it did not create a negative implication that the Debtors had somehow implicitly or explicitly waived any claims, which they have not. Nothing in the 2021 Headquarters Lease or the proposed Order purported to or does waive any claims against OSR (including for rejection damage claims) or any other entity. Moreover, the Debtors are well aware of the Court's views regarding reservations of rights (*see, e.g.*, Hr'g Tr. 73:14–21, September 17, 2019 ("[A]s you probably know, I'm not a big fan of people standing up and saying they reserve their rights because basically all rights are reserved unless they're specifically dealt with in an order.") but had no issue agreeing to the UCC's confirmatory language to ensure an uncontested hearing.

6.    The UCC also appears to conflate the Company's decision to enter into the 2021 Headquarters Lease with a decision or thumb on the scale as to the ultimate future of the reorganized Company.  This is the very issue that the Special Committee worked to and did avoid by rejecting OSR's much longer term proposal and insisting on the flexibility provided by a three-year lease term.  The 2021 Headquarters Lease is a market lease that ensures that the Debtors will have the ability to provide headquarters space for the reorganized Company at a total aggregate cost over three years of approximately $16 million.  Nothing about the lease limits optionality or represents an imperious move by the Debtors to impose their "unitary vision" on creditors.  *See* UCC Stmt. at ¶ 1.  Quite the contrary.

7.    As the UCC notes, "[t]he Committee does not dispute that the Debtors need an office from which to operate their businesses." UCC Stmt. at ¶ 1.  The Debtors agree—and have achieved a lease at market price for a reasonable term that is far better than all other options—if any.

Dated: February 19, 2020
       New York, NY

                                        DAVIS POLK & WARDWELL LLP

                                        By:  */s/ Timothy Graulich*
                                        DAVIS POLK & WARDWELL LLP
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile:  (212) 701-5800
                                        Marshall S. Huebner
                                        Benjamin S. Kaminetzky
                                        Timothy Graulich
                                        Eli J. Vonnegut
                                        Christopher S. Robertson

                                        *Counsel to the Debtors*
                                        *and Debtors in Possession*