...

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

---

## STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO THE DEBTORS' MOTION FOR AUTHORIZATION TO ENTER INTO DEVELOPMENT AGREEMENT

The Official Committee of Unsecured Creditors (the "Committee") of Purdue Pharma L.P., *et al.* (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement (the "Statement") with respect to the Debtors' *Motion for Authorization to Enter into Development Agreement* [ECF No. 826] (the "Motion")[2] and respectfully states as follows.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**STATEMENT**

1. By the Motion, the Debtors seek authorization to enter into the Development Agreement to preserve the option to advance an injectable form of nalmefene device to treat opioid overdoses. If approved, the Motion would seem to move the Debtors one step closer to their desired "transformation into a public benefit corporation" through public health initiatives contemplated under the settlement framework proposed at the outset of these cases (the "Public Health Initiative"). Mot. ¶ 7. Underlying this Motion is the fundamental question of what should happen to the Debtors' businesses upon emergence from chapter 11.

2. As the Court is aware, the Committee has not yet formed a view regarding the most beneficial outcome for the Debtors' businesses and their estates, the entire value of which will belong to the Committee's constituents. Indeed, the Committee received the Debtors' proposed business plan (the "Business Plan"), which is premised upon the Debtors' vision for the future of Purdue, less than two weeks ago. The Committee currently is engaged in extensive diligence and analysis regarding all aspects of the Business Plan, and, at this early stage of the cases, has questions regarding whether the Public Health Initiative, which proposes to use estate value that would otherwise be available to creditors to provide opioid overdose reversal medications and addiction treatment medications to the general public on a nonprofit basis, is the optimal outcome for creditors.

3. The Committee is also engaged in discussions with all of the Debtors' stakeholders regarding the Debtors' proposed Business Plan and the Public Health Initiative. The Committee is hopeful that such discussions will result in a unified view regarding the appropriate trajectory for these cases and, ultimately, the future of Purdue, but no such consensus has been reached at this time. As such, and given the myriad issues that must be resolved in these chapter 11 cases

before the Public Health Initiative may become a reality, the Motion, to the extent it seeks to further the Public Health Initiative, is premature at best.

4. Nonetheless, in light of (a) the Debtors' assurances that the entering into the Development Agreement will not bind the Debtors to the Public Health Initiative, (b) the Debtors' ability to terminate the Development Agreement by paying a reasonable termination fee and (c) the relatively limited costs associated with preserving the option to develop autoinjectable nalmefene, the Committee has determined that any time and resources devoted to objecting to the Motion would be better spent addressing other case issues. For the avoidance of doubt, the Committee's decision not to object to the Motion should not be interpreted as an indication of its support for the Development Agreement, the Public Health Initiative, the Public Benefit Company or the Debtors' proposed Business Plan. The Committee recognizes, however, that a public pleading is not the appropriate forum to engage in this debate and, therefore, files this Statement simply to make the Court aware of certain of its concerns regarding the Motion and the Business Plan generally.

**I.    The Committee Has Concerns Regarding the Development Agreement**

5. The Development Agreement is a component of the Debtors' proposed Public Health Initiative. *See* Mot. ¶¶ 7-12; *Debtors' Informational Brief* [ECF No. 17] at 12-13.[3]

---

[3] The concept of the Public Health Initiative is included in the settlement term sheet among the Debtors, the ad hoc committee of government and other contingent litigation claimants (the "Consenting Ad Hoc Committee") and certain trusts and other entities associated with the Sackler family, which was filed on October 8, 2019. *See Notice of Filing of Term Sheet with Ad Hoc Committee* [ECF No. 257] (the "Settlement Term Sheet"). The Settlement Term Sheet contemplates, among other things, that upon the effective date of a chapter 11 plan, the Debtors will transfer all of their assets to a trust or similar structure for the benefit of all claimants (the "Public Benefit Company"), which will be run by independent directors selected by creditors or their representatives. *Id*. ¶ 2. Notably, the proposed framework for settlement (the "Settlement Framework") outlined in the Settlement Term Sheet is not binding on the Debtors or any other parties. Indeed, the Debtors have made clear that they have not yet concluded that the Settlement Framework is in the best interests of their estates and creditors. *See* Hr'g Tr. at 72:15-16 (Nov. 6, 2019) (Debtors' counsel: "no one has yet signed on any particular final outcome of this case"); *id.* at 72:10-12 ("[W]e're not getting to future gates in this case unless we have a real deal that we believe as fiduciaries is the appropriate one.").

3

Specifically, the Development Agreement contemplates an arrangement between the Debtors and a specialty pharmaceutical company that develops proprietary drug device combinations (the "Technology Partner") with the goal of developing an injectable form of nalmefene that will be administered through an autoinjector device (the "Product") to treat individuals whose breathing has slowed or stopped due to an opioid overdose. Mot. ¶ 11. According to the Debtors, nalmefene is "more potent and longer-lasting" than other available opioid reversal medications such as naloxone and "could address a need where existing treatments have proven to be ineffective against the wave of fentanyl overdoses." *Id.* ¶ 10.

6.    Pursuant to the Development Agreement, the Debtors will supply the intellectual property related to the formulation of nalmefene and pay certain development costs and fees, as well as certain milestone payments, to the Technology Partner. *See* Mot. Ex. B, Development Agreement §§ 4.4, 5.1-5.2. In return, the Technology Partner will license the rights to their autoinjector device and provide finished goods to the Debtors. Mot. ¶ 10. The Debtors may terminate the Development Agreement at any time prior to receipt of New Drug Application approval by paying a reasonable termination fee. *See Declaration of Jon Lowne in Support of Debtors' Motion for Authorization to Enter into Development Agreement* [ECF No. 827] ¶ 9.

7.    Prior to filing this statement, the Committee raised with the Debtors certain concerns regarding the Motion and questioned the Debtors' stated need to seek approval of the Development Agreement ***now***. Among other things, the Committee still has concerns regarding a number of assumptions underlying the Debtors' projections as to the effectiveness and potential marketability of the Product. But even assuming the Product is as successful and valuable to the American public as the Debtors project, the fact that the Public Health Initiative (which includes development of the Product) proposes to "produce and distribute (at no or low cost) millions of

4

doses of opioid overdose reversal medications" may be viewed as depriving the Debtors' estates (and thus their creditors) of any economic benefit from such initiatives. *Debtors' Informational Brief* at 4; *id.*, Appendix B at vi ("As part of Purdue's commitment to advancing meaningful solutions to address the opioid crisis, the company will work to bring forward this option with the commitment not to profit from any future sales of this drug."). The Public Health Initiative thus proposes to take value that belongs to creditors and distribute it to the American public. While this may be a laudable goal, and certain creditors may decide to support it, other creditors may determine that the resources the Debtors seek to devote to overdose reversal medications in connection with the Public Health Initiative would be better spent on other programs to provide support to victims of the opioid crisis. For this reason, to the extent the Motion is approved, it should not be considered an endorsement of the Public Health Initiative, which cannot be effectuated absent broad support from the Debtors' creditors.[4]

## II.   Creditors Should Determine the Future of Purdue

8. The Debtors' decision to seek to approval of the Motion now must also be viewed in the context of their repeated statements that they are turning over the entire value of their estates to creditors as well as the Debtors' commitment to allowing their creditors determine the future of Purdue. *See, e.g.,* Hr'g Tr. at 25:12-14 (Sept. 16, 2019) (Debtors' counsel: "Purdue is also here to build further support for the settlement framework that would transfer 100 percent of the debtors to its contingent claimants."); *see also* Hr'g Tr. at 159:16-19 (Nov. 19, 2019) (The Court: "[T]he Debtors are largely in a *sua generous* [sic] position whereby they have already agreed to turn over

---

[4] The Committee recognizes the thematic ties between the Public Health Initiative and the Emergency Relief Fund (the "ERF"). The ERF is distinguishable, however, as it contemplates a one-time expenditure (of up to $200 million) to provide immediate, life-saving resources to address the opioid crisis. By contrast, the Public Health Initiative dictates the future of the Debtors' business in a manner not currently supported by a majority of the Debtors' creditors and requires the Debtors to expend significant resources over the course of a decade on pipeline products that have not yet been proven to be effective.

all of their value to their creditors."). Indeed, the Settlement Term Sheet provides that creditors—and not the Debtors or the Sacklers—will make all decisions with respect to the company following the effective date of a chapter 11 plan. Settlement Term Sheet ¶ 3 ("Purdue and the Shareholder Parties will have no role, control or consent/approval rights in [the Public Benefit Company] from and after the Effective Date."); *id*. ¶ 4 ("The Shareholder Parties . . . will have no role in the appointment of the persons overseeing the Trust, the board members of [Public Benefit Company] or the operations of either entity."). As such, decisions as to the future of Purdue's business should be made by creditors, not the Debtors.

9. Based on information received to date, the Committee can envision at least three scenarios in which it might ultimately support the Public Health Initiative and the development of autoinjectable nalmefene, which, if developed successfully, may in fact provide significant benefit to victims of the opioid crisis: (i) if all of the Debtors' significant creditor constituencies agree that the Public Health Initiative is a worthy and attainable goal such that they are willing to forego the estate value devoted to such projects; (ii) if the Debtors develop and commercialize the Product (and any other products contemplated to be developed pursuant to the Public Health Initiative) in a manner that affords creditors the option to monetize such assets for the benefit of the estates; or (iii) if creditors that affirmatively support the Public Health Initiative are willing to accept the value provided through such initiative as payment on their claims. As of the filing of this Statement, there is no creditor consensus regarding any of these scenarios.

## **CONCLUSION**

10. Notwithstanding the foregoing, the Committee has determined not to object to the Motion, in part based on the Debtors' assurances that they are not binding themselves or their creditors to the Public Health Initiative by entering into the Development Agreement. The

Committee also is comforted by the Debtors' express ability to terminate the agreement by paying a reasonable termination fee.  *See* Mot. ¶ 13.  Rather than waste time and resources litigating the Motion, the Committee believes it is more important that the parties focus on reaching resolution with respect to the numerous gating issues that must be addressed in these cases, and leave questions as to the future of Purdue for a later date.

Dated:  New York, New York  
        February 20, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  /s/ *Arik Preis*  
Ira S. Dizengoff  
Arik Preis  
Mitchell Hurley  
Sara L. Brauner  
One Bryant Park  
New York, New York 10036  
Tel: (212) 872-1000  
Fax: (212) 872-1002  
idizengoff@akingump.com  
apreis@akingump.com  
mhurley@akingump.com  
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.*