DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF HEARING ON DEBTORS'**
**MOTION FOR ENTRY OF AN ORDER APPOINTING MEDIATORS**

**PLEASE TAKE NOTICE** that on February 18, 2020, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Debtors' Motion for Entry of an Order Appointing Mediators* (the "**Motion**"). A hearing on the Motion will be held on **March 2, 2020, at 10:00 a.m. (Prevailing Eastern Time)** (the "**Hearing**") before the Honorable Judge

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma/. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 and the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative*

*Procedures*, entered on November 18, 2019 [Dkt. No. 498], so as to be filed and received no later than **February 28, 2020 at 12:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion as Exhibit A, which may be entered without further notice or opportunity to be heard.

Dated:  February 20, 2020
        New York, New York

                                                DAVIS POLK & WARDWELL LLP

                                                By:  */s/ James I. McClammy*

                                                450 Lexington Avenue
                                                New York, New York 10017
                                                Telephone: (212) 450-4000
                                                Facsimile:  (212) 701-5800
                                                Marshall S. Huebner
                                                Benjamin S. Kaminetzky
                                                Timothy Graulich
                                                James I. McClammy
                                                Eli J. Vonnegut

                                                *Counsel to the Debtors*
                                                *and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[2] | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPOINTING MEDIATORS**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**," or "**Purdue**") respectfully represent as follows in support of this Motion:

**Introduction**

1. Resolving disputes as to how the Debtors' assets should be allocated is a critical gating item to moving these chapter 11 cases forward to a consensual plan. These cases were commenced in the wake of the Debtors facing over 2,700 cases pending in different fora around the country on behalf of governmental entities and private parties, including both individuals and entities, alleging claims related to Purdue's production, marketing and sale of certain opioid medications (the "**Pending Actions**"). The Debtors filed for chapter 11 protection to stop the

---

[2] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

4

drain on the value of the Debtors' estates and to preserve that value for better purposes, namely for equitable distribution to legitimate creditors.

2.  The myriad constituencies in these cases have vastly differing views on the merits of the claims asserted by other creditor groups, as well as on how value should be allocated between creditor groups. Nonetheless, after much discussion, the Debtors, the Official Committee of Unsecured Creditors (including any *ex officio* members) (the "**Creditors' Committee**" or "**UCC**"), the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Consenting Ad Hoc Committee**"), the Ad Hoc Group of Non-Consenting States (the "**Non-Consenting States**"), the Multi-State Governmental Entities Group (the "**MSGE Group**"), the Ad Hoc Group of NAS Babies, the Ad Hoc Group of Hospitals, the Ad Hoc Group of Individual Victims, counsel for the Blue Cross Blue Shield Association, various third party payors and health insurance carrier plaintiffs, and the group of individual health insurance purchasers represented by Stevens & Lee P.C. (the "**Insurance Purchasers**") (each, a "**Mediation Party**," and together, the "**Mediation Parties**"), have reached agreement about the architecture of a mediation, which may advance these cases by addressing the relative allocations as among creditor groups (defined herein)—and such other issues as the Mediation Parties and the Mediators (defined herein) may agree—more expeditiously and less expensively than if the parties were to litigate.[3]

3.  The Debtors are acutely aware that every day and every dollar spent in bankruptcy represents time and money that is not being used to ameliorate the opioid crisis. As a

---

[3] To be clear, although the Mediation Parties have reached agreement on the architecture of a mediation and will participate, this Motion is the Debtors' Motion, and the reasons advanced in support of the relief requested are the Debtors'. These reasons do not necessarily reflect the views of all Mediation Parties.

5

result, the Debtors are committed to moving these cases toward confirmation and emergence as quickly—and thoughtfully—as possible, so that the Debtors' assets can be distributed to legitimate claimants. To ensure that the Debtors' assets are appropriately distributed to or for the benefit of legitimate claimants, an agreement on allocation is required, whether through consensual resolution or litigation. In order to facilitate a consensual resolution, by the relief requested in this Motion, the Mediation Parties have reached a compromise—influenced by many discussions over the past several weeks—that will be amenable to all constituencies participating in the mediation described herein. Accordingly, the Debtors now seek entry of an order requiring that certain parties attend and participate in good faith in mediation to be conducted by the Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators,[4] which will involve mediation of the issues described herein

4.    The Debtors understand that any consensual resolution of these cases is likely to be complex and, perhaps, contentious. For example, in addition to the fact that the Debtors are in the complex business of manufacturing Schedule II opioid medications regulated by the U.S. Food and Drug Administration, with all the applicable rules and restrictions that accompany that designation, the potential claimants in these cases include: (a) the federal government of the United States, and any agency, department, or instrumentality of the federal government (the "**Federal Government**"), (b) the states, federal districts and U.S. territories, political

---

[4] The parties advocated for anywhere from one to three mediators, with the understanding that they needed to be mediators with experience and a proven track record of bringing parties to agreement in large, complex mass tort cases. Different constituencies, though, had different views as to which mediator might best fit that bill, and whether a mediator with public health expertise might be required, which led to the suggestion of having multiple mediators selected by various groups working together. Others preferred the option of a single mediator, believing that the appointment of more than one mediator could prove unworkable, as coordinating the schedules of two or three of the most highly-in-demand mediators in the country with the many parties in these chapter 11 cases could quickly become a logistical impossibility. However, the Mediation Parties believe that the appointment of two mediators who will work together on the same terms is a reasonable compromise that strikes a balance intended to make all constituencies comfortable with the mediation process and avoiding potential logistical issues.

subdivisions thereof and Native American Tribes (collectively, but excluding the Federal Government, the "**Non-Federal Public Claimants**"); and (c) private parties, including hospitals, health insurance carrier plaintiffs and third party payors, purchasers of private health insurance, and various individuals and estates alleging personal injury or wrongful death claims, including guardian claimants asserting claims on behalf of minors with neonatal abstinence syndrome ("**NAS**") due to exposure to opioids in utero and claimants comprising a putative class of NAS children seeking medical monitoring funding (collectively, the "**Private Claimants**"). *See, e.g.*, Ex. C to Compl. For Inj. Relief, *Purdue Pharma L.P., et al. v. Commw. of Mass., et al.*, Adv. Proc. No. 19-08289 (Bankr. S.D.N.Y. Nov. 6, 2019), Dkt. No. 1-3 (identifying known pending actions to date). The various categories of creditors comprising the Non-Federal Public and Private Claimants follow:

| **Non-Federal Public Claimants** | **Private Claimants** |
|---|---|
| • States<br>• Federal districts<br>• U.S. territories<br>• Political subdivisions of states<br>• Native American Tribes | • Personal injury claimants, including guardian claimants asserting claims on behalf of minors with NAS due to exposure to opioids in utero<br>• Claimants comprising a putative class of NAS children seeking medical monitoring funding<br>• Hospitals<br>• Private health insurance carrier plaintiffs and third party payors<br>• Purchasers of private health insurance |

5.  The Non-Federal Public Claimants and the Private Claimants are currently represented by, among others, seven ad hoc committees/groups or other groups of claimants that

have filed verified statements pursuant to Bankruptcy Rule 2019 in these chapter 11 cases.[5] Each of these creditor groups asserts different damages claims, legal theories and views as to the strengths and weakness of their claims vis-à-vis the claims of other creditor groups.

6.  The "preferred result" in these cases would be an agreed-upon allocation among the Debtors' creditors. *See, e.g.*, Jan. 24, 2020 Omnibus Hr'g Tr. at 26:24-25 (Debtors' noting that the Consenting Ad Hoc Committee's position that "they would prefer to have an agreed resolution on allocation in these cases" was "completely consistent with where [the Debtors] are"); *id.* at 40:19-20 (Court remarking that "the preferred results [in these chapter 11 cases] will be an agreed allocation among claimants and in all likelihood categories of claimants"). Court-ordered mediation is likely the means best suited to achieve this goal. Thoughtful allocation discussions facilitated by two of the most well-respected mass tort mediators in the country will allow key constituents to express their views on the ultimate allocation of the Debtors' assets in these cases in a timely, productive, confidential and effective manner. Mediation also may avoid unnecessary and considerable litigation costs and delays related to allocation and the validity of

---

[5] The following groups have filed Rule 2019 Statements in these cases: (1) a group of governmental and other contingent litigation claimants, represented by Kramer Levin Naftalis & Frankel LLP, Gilbert LLP, Brown Rudnick LLP, and Otterbourg P.C. (the "**Consenting Ad Hoc Committee**") (Dkt. No. 279); (2) a group of states that do not currently support a settlement, represented by Pillsbury Winthrop Shaw Pittman LLP (the "**Ad Hoc Group of Non-Consenting States**") (Dkt. No. 296); (3) a group of individual health insurance purchasers, represented by Stevens & Lee. P.C. (the "**Insurance Purchasers**") (Dkt. No. 24, 333); (4) a group of guardian individuals asserting claims on behalf of minors with NAS, represented by Tarter Krinsky & Drogin LLP (the "**Ad Hoc Committee of NAS Babies**") (Dkt. No. 341); (5) a group of eight individuals holding claims against the Debtors, represented by ASK LLP (the "**Ad Hoc Group of Individuals**") (Dkt. No. 348); (6) a group of 1,222 governmental entities, represented by Caplin & Drysdale, Chartered (the "**Multi-State Governmental Entities Group**" or "**MSGE Group**") (Dkt. No. 409); and (7) a group of hospitals consisting of approximately 10% of the hospitals in the United States, represented by Schulte Roth & Zabel LLP (the "**Ad Hoc Group of Hospitals**") (Dkt. No. 577).

8

claims.[6] Ultimately, a negotiated settlement is the best way to avoid a value-destructive claims process.

7. For the reasons described in this Motion, the Debtors respectfully request that the Court enter an order appointing two co-mediators to oversee mandatory mediation in these chapter 11 cases.

8. For the avoidance of doubt:

    a. "Non-Federal Public Claimants" as defined in this Motion and used in the Proposed Order in connection with the mediation includes only the states, federal districts and U.S. territories, political subdivisions of the states and Native American Tribes, and does not include the Federal Government; and

    b. "Private Claimants" as defined in this Motion and used in the Proposed Order in connection with the mediation includes only certain private parties, including, hospitals; health insurance carrier plaintiffs and third party payors; purchasers of private health insurance; various individuals and estates alleging personal injury or wrongful death claims, including guardian claimants asserting claims on behalf of minors born with NAS due to exposure to opioids in utero; and claimants comprising a putative class of NAS children seeking medical monitoring funding, and does not include trade claimants (except to the extent represented by their fiduciary, the UCC), current or former employees, officers or directors of the Debtors, or members of the Sackler family (in any capacity). All rights of these parties—and, indeed, of all parties in interest—with respect to the valuation and ultimate plan treatment of any claims of, or against, these parties not currently in the mediation are fully reserved.

9. The Federal Government is not participating in the mediation at this time and has not yet determined if it voluntarily will join the mediation in the future. All rights of the Federal Government—and, indeed, of all parties in interest—with respect to the valuation and ultimate

---

[6] *See, e.g.*, Jan. 24, 2020 Omnibus Hr'g Tr. at 49:9-10 (Consenting Ad Hoc Committee noting that "[i]f we don't get to an allocation, an agreed-upon allocation, then obviously the bar date will become more important and we'll have to figure out mechanisms to work through claim allowance allocation and the Court, you know, overseeing [sic] proceeding").

plan treatment of any claims of the Federal Government are fully reserved. The Federal Government shall be entitled to send representatives to observe mediation sessions, in a manner to be specified further under the Mediation Procedures (as defined in the Proposed Order).

**Relief Requested**

10. By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), appointing the Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators who will work together on the same terms (both economic and non-economic) to conduct mediation in these chapter 11 cases (each, a "**Mediator**," and together, the "**Mediators**"),[7] and mandating that the Debtors, the Creditors' Committee (including any *ex officio* members), and the various ad hoc committees and groups in these chapter 11 cases as set forth in the Proposed Order, participate in mediation.[8]

11. The Mediators' initial and exclusive objective will be to mediate the dispute(s) between the Non-Federal Public Claimants, on the one hand, and the Private Claimants, on the other, as to the allocation of value/proceeds available from the Debtors' estates, including, without limitation, from any settlements, to such claimants, in each case on an aggregate basis as between them. In doing so, the Mediators and Mediation Parties may need to consider a variety of concepts and issues, including, without limitation, various sources of value for the estates, various claims of persons or entities who are not Mediation Parties and different modes and methods of allocation. The Mediators may also mediate any other issues that are agreed upon by

---

[7] The Debtors will supplement this filing with the Mediators' disclosures in advance of the Hearing.

[8] The Debtors are not seeking to compel trade claimants (independently of their fiduciary, the UCC), current or former employees, officers and directors of the Debtors, the Federal Government, or the shareholders of the Debtors to participate in the mediation.

all of the Mediation Parties.  However, absent agreement by the Mediation Parties and further order of this Court, the Mediators will not mediate disputes, if any, with respect to the allocation(s) of value/proceeds among entities or persons comprising the Non-Federal Public Claimants or among entities or persons comprising the Private Claimants.

12.   The Debtors also seek authorization to pay the Mediators' reasonable fees and expenses.  The Mediators will be compensated at a rate of $500,000 per month each, for all of their time spent on these matters, including, without limitation, their attendance at in-person meetings, participation in calls, other correspondence, and any necessary background reading and research.  Because of the complex nature of these cases, as well as the timeframe in which the mediation is anticipated to take place and the number of anticipated Mediation Parties, the mediation will require a significant amount of the Mediators' time and the clearing of their calendars to accommodate all of the foregoing.  Under these circumstances, the Debtors believe that it is both reasonable and economical to compensate the Mediators at a set monthly rate.  In addition, in order to facilitate the Mediators' ability to mediate and consider various related and complex concepts, the Debtors seek authorization to allow the Mediators, upon agreement between them, to retain, in their sole discretion, financial, public health or other professionals or consultants to assist them, provided that the aggregate cost of all such financial, public health or other professionals or consultants so retained shall not exceed $250,000, without further order of this Court.  The Mediation Parties have confirmed that they do not object to the foregoing compensation terms.

## Jurisdiction and Venue

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

14.     On September 15, 2019, (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27, 2019, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Creditors' Committee, a statutory committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

15.     These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [Dkt. No. 59] entered by the Court on September 18, 2019, in each of the chapter 11 Cases.

16.     Information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [Dkt. No. 17].

17.     On November 6, 2019, this Court entered an order granting the Debtors' Motion for a Preliminary Injunction in the adversary proceeding styled *Purdue Pharma L.P., et al. v. Commw. of Mass., et al.*, Adv. Proc. No. 19-08289 (RDD), halting the Pending Actions, to the extent that litigants had not voluntarily agreed to halt their Pending Actions. *See, e.g.*, Second Am. Order Pursuant to 11 U.S.C. § 105(a) Granting Mot. for Prelim. Inj. (Bankr. S.D.N.Y. Nov. 6, 2019), Adv. Proc. No. 19-08289, Dkt. No. 105 (as amended from time to time).

18.     On January 27, 2020, this Court signed a Protective Order to preserve the confidentiality of sensitive information and to provide protection sufficient to constitute a Qualified Protective Order under the Health Insurance Portability and Accountability Act of 1996, 45 C.F.R. § 164.512(e)(1)(ii), and the regulations promulgated thereunder ("**HIPAA**"). Protective Order (Jan. 27, 2020), Dkt. No. 784.

19.     On February 3, 2020, this Court set the General Bar Date for claims to be filed in these cases as **5:00 p.m. (Prevailing Eastern Time) on June 30, 2020**. Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof (Feb. 3, 2020), Dkt. No. 800 (the "**Bar Date Order**").

**Basis for Relief**

20.    This Court is authorized to order mandatory mediation pursuant to Section 105 of the Bankruptcy Code, Rule 9019-1 of the Local Bankruptcy Rules for the Southern District of New York, and the Court's General Order M-390. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); S.D.N.Y. Bankr. L.R. 9019-1 ("The Court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee."); *see also In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 84 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011); Order Appointing a Mediator, *In re Windstream Holdings, Inc.,* No. 19-22312 (RDD) (Bankr. S.D.N.Y. July 30, 2019), ECF 874.

21.    The unique nature of these chapter 11 proceedings counsel toward a global consensual resolution of value allocation. *See, e.g.,* Jan. 24, 2020 Omnibus Hr'g Tr. at 50:2-11 (Consenting Ad Hoc Committee noting that "we all recognize that the claims that are asserted are going to exceed whatever the ultimate assets are that are going to be the basis for the plan by many, many, many multiples and so, allocation is really quite important," and further noting that "at least as far as the governmental entities are concerned on the state side, the hope is that there will, in fact, be—and I think there essentially is already—an agreement among the states as to how they would allocate so that you eliminate that fight.");[9] Nov. 19, 2019 Omnibus Hr'g Tr. at

---

[9] Any allocation as among the states, or among the members of any other creditor group, is beyond the scope of the mediation unless otherwise agreed at a later date. *See supra* paragraph 11.

14

160:1-6 (Court noting that "[t]he unusual perhaps unique issue in these cases is that there is a distinct possibility that the allocation issues could either be dealt with in an efficient and fair way that's respectful of the various parties in interest in this case or the parties can spend an inordinate amount of time disputing them to all their detriment."); Second Day Hr'g Tr. at 34:17-24 (Creditors' Committee noting that it "hope[d] to engage in a process of figuring out who gets what during the six month period if there is a preliminary injunction, so as to avoid a protracted and costly fight at some point in the future" and "to do it in the form of consensus where all parties will have to give a little and recognize that the parties' claims have value" ); *id.* at 45:3-7 (Court encouraging the parties "to continue to work behind the scenes to minimize litigation issues"). Mediation should further facilitate fruitful discussions among the parties and provide an indispensable structure for accomplishing the difficult task of determining "how the resources of these companies and any litigation targets should be distributed." Second Day Hr'g Tr. at 45:10-47:17.

22. Commencing mediation now may prevent the undue delay and excessive costs associated with litigating issues regarding claim validity and allocation before this Court. Consensual resolution may also allow the parties to engage more freely in "creative thinking about the allocation of the Debtors' assets." Nov. 19 Omnibus Hr'g Tr. at 165:6-7; *see also A.T. Reynolds & Sons*, 424 B.R. at 84 ("Mediation permits, indeed often requires, consideration of underlying interests, causes or values that produce conflict and thus permits the management, handling or resolution of broader concerns than just those 'disputes' which crystallize at the tip of the iceberg." (quoting Carrie Menkel-Meadow et al., Mediation: Practice, Policy and Ethics 100-01 (2006)) (quotation omitted). The ability to arrive at a creative—and likely unprecedented—resolution is particularly important in these cases.

23. Mediation provides the least expensive means to a consensual resolution of these cases and could avoid the protracted, burdensome and costly process associated with testing the validity of each of the claims filed in these chapter 11 cases through a claims objection process, which would undoubtedly involve extensive discovery costs, additional professional fees and expenses, and would delay the Debtors' emergence from these chapter 11 cases and their ability to compensate those legitimate claimants who have suffered damages as well as contribute to the abatement of the opioid crisis.

24. In the event that mediation is unsuccessful, the fixing of the Bar Dates has ensured that these cases will continue to move forward as expeditiously as possible.

25. For the reasons described in this Motion, however, mediation prior to the General Bar Date will provide the greatest chance for the parties to achieve consensual resolution and transfer the value of the Debtors' estates for the benefit of claimants as quickly and effectively as possible. Accordingly, the Debtors respectfully request that the Court enter the Proposed Order attached hereto as Exhibit A.

**No Prior Request**

11. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

**Notice**

12. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures entered on November 18, 2019 [Dkt. No. 498] and available on

16

the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this motion. The Debtors respectfully submit that no further notice is required.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that this Court enter the attached Order, granting the relief requested herein.

Dated: February 20, 2020
       New York, New York

*/s/ James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*