DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DECLARATION OF JON LOWNE IN SUPPORT OF DEBTORS'**
**MOTION FOR AUTHORIZATION TO ENTER INTO SUPPLY AGREEMENT**

I, Jon Lowne, being fully sworn, hereby declare that the following is true to the best of my knowledge, information and belief:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

#92840308v19

1.  I am a Senior Vice President and the Chief Financial Officer of Purdue Pharma L.P. ("**PPLP**" and, collectively with each of the other above-captioned debtors, the "**Debtors**," the "**Company**" or "**Purdue**"). I was first employed by Purdue as Senior Internal Auditor in 1995 and gained increasing responsibility in the Company's finance team over time, including as Controller from 2005 to July 2017, and then as Acting Chief Financial Officer from August 2017 to February 2018. Since March 2018, I have been the Chief Financial Officer of PPLP. I am familiar with the day-to-day operations, business and financial affairs of the Debtors.

2.  I make this declaration (the "**Declaration**") in support of the *Debtors' Motion for Authorization to Enter into Supply Agreement* (the "**Motion**"). All capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

3.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based upon experience, knowledge and information concerning the operations of the Debtors and the pharmaceutical industry as a whole. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## The Supply Agreement

4.  In September 2019, Purdue Pharma Canada ("**Purdue Canada**"), a non-Debtor company that is indirectly owned by the Debtors' beneficial shareholders, conducted an open, competitive bidding process to outsource the manufacture of certain products, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Products**"). The Debtors submitted the winning bid to manufacture and supply the Products for Purdue Canada ▮▮▮▮▮▮▮▮▮▮▮▮▮. The Debtors and Purdue Canada subsequently

negotiated the terms of the Supply Agreement,[2] pursuant to which the Debtors will perform certain development work, manufacture, package and supply the Products for distribution by Purdue Canada.

5. The Debtors ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ The Wilson Facility has the ability and excess capacity to produce the Products using existing equipment and personnel with no additional capital investment.

6. The Debtors expect to realize a benefit of approximately ███████ through the term of the Supply Agreement from supplying the Products to Purdue Canada at forecasted volumes. The ███████ benefit consists of ███████ of gross margin and a ███████ contribution to fixed overhead at the Wilson Facility.

7. ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Supply Agreement. To the extent there is any conflict between this Declaration and the Supply Agreement, the Supply Agreement shall govern in all respects.

3

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████

8.      Pricing for ████████ is based on ████████████████████████, while pricing for ████████ is based on ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

9.      Under the Supply Agreement, the Debtors will agree to maintain a maximum manufacturing capacity of ███% of the initial Rolling Forecast set forth on Exhibit G to the Supply Agreement.  By the fifteenth (15th) business day of each month, Purdue Canada will provide an updated rolling forecast for the upcoming ████████████, with a reasonable estimate of the quantity of the Products it will require during such period.  The first ████ months of such Rolling Forecast shall be binding on both the Debtors and Purdue Canada, and Purdue Canada shall issue purchase orders for at least the aggregate amount of Products indicated in the Binding Forecast.

10.     The Supply Agreement provides both parties with the right to terminate on ████ days' written notice for breach after expiration of a ████████ day cure period. The Supply Agreement may be terminated by the Debtors upon ████████ months' prior written notice and by Purdue Canada upon ██████ months' written notice. Purdue Canada may also terminate the Supply Agreement immediately due to a DIN or Notice of Compliance being cancelled, withdrawn or suspended.

*[Remainder of Page Intentionally Left Blank]*

#92840308v19

Dated:   February 26, 2020
        New York, New York

                                            By:   */s/ Jon Lowne*

                                                  Jon Lowne
                                                  Senior Vice President and
                                                  Chief Financial Officer
                                                  Purdue Pharma L.P.