```
1                                                              1

2     SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF SUFFOLK: PART 48
3     ------------------------------------------------x

4     IN RE: OPIOID LITIGATION

5

6                             INDEX NO.:400000/2017

7     ------------------------------------------------x

8                             March 10, 2020
                              Central Islip, New York
9

10                     MINUTES OF PROCEEDING

11

12    B E F O R E:        HON. JERRY GARGUILO
                              Supreme Court Justice
13
      A P P E A R A N C E S:
14
              NAPOLI SHKOLNIK, PLLC
15            Attorneys for Plaintiffs
              NEW YORK COUNTIES
16            360 Lexington Avenue
              New York, New York 10017
17            BY: PAUL J. NAPOLI, ESQ.
                  HUNTER J. SHKOLNIK, ESQ.
18                MARIE NAPOLI, ESQ.
                  JOSEPH L. CIACCIO, ESQ.
19                SALVATORE C. BADALA, ESQ.

20
              SIMMONS HANLY CONROY
21            Co-Counsel for Plaintiffs
              112 Madison Avenue
22            New York, New York 10016
              BY:  PAUL J. HANLY, JR., ESQ.
23                 JAYNE CONROY, ESQ.
                   THOMAS I. SHERIDAN, III, ESQ.
24                 JUSTIN PRESNAL, ESQ.

25    (Appearances continued on following page.)
```

2

```
            STATE OF NEW YORK
            OFFICE OF THE ATTORNEY GENERAL
            LETITIA JAMES
            28 Liberty Street
            New York, New York 10005
            BY:  DAVID E. NACHMAN, ESQ,
                 MANDY DEROCHE, ESQ.
                 MICHAEL D. REISMAN, ESQ.
                 M. UMAIR KHAN, ESQ.


            COVINGTON & BURLING, LLP
            Attorneys for Defendant
            MCKESSON
            The New York Times Building
            620 Eighth Avenue
            New York, New York 10018-1405
            BY:  PAUL W. SCHMIDT, ESQ.
                 SHAILEE DIWANJI SHARMA, ESQ.


            O'MELVENY & MYERS
            Attorneys for Defendant
            JOHNSON & JOHNSON and
            JANSSEN PHARMACEUTICALS
            400 South Hope Street
            18th Floor
            Los Angeles, California 90071
            BY:  SABRINA H. STRONG, ESQ.


            PYSER, HARDIN, WILLIAMS & CONNOLLY, LLP
            Attorneys for Defendant
            CARDINAL HEALTH
            725 Twelfth Street
            NorthWest
            Washington, DC 20005
            BY:  STEVEN M. PYSER, ESQ.
                 ENU MAINIGI, ESQ.



      (Appearances continued on following page.)
```

```
 1                                                          3

 2          MORGAN, LEWIS & BOCKIUS, LLP
            Attorneys for Defendants
 3          Teva/Actavis/Cephalon
            1000 Louisiana Street, Suite 4000
 4          Houston, Texas 77002-5006
            BY:  NANCY L. PATTERSON, ESQ.
 5               HARVEY BARTLE, IV, ESQ.

 6
            REEDSMITH, LLP
 7          Attorneys for Defendant
            AMERISOURCEBERGEN
 8          Three Logan Square
            1717 Arch Street, Suite 3100
 9          Philadelphia, Pennsylvania 19103
            BY: MICHAEL J. SALIMBENE, ESQ.
10               ROBERT A. NICHOLAS, ESQ.

11
            ROPES & GRAY, LLP
12          Attorneys for Defendant
            MALLINCKRODT LLC
13          1211 Avenue of the Americas
            New York, New York 10036
14          BY:  JOHN P. BUEKER, ESQ.

15

16          KIRKLAND & ELLIS
            Attorneys for Defendant
17          ALLERGAN
            300 North LaSalle Street
18          Chicago, Illinois 60654
            BY:  DONNA M. WELCH, P.C.
19

20          BARTLITBECK, LLP
            Attorneys for Defendant
21          WALGREENS
            Courthouse Place
22          54 West Hubbard Street
            Chicago, Illinois 60654
23          BY:  KASPAR STOFFELMAYR, ESQ.

24
         (Appearances continued on following page.)
25
```

```
 1                                                            4

 2          ALLEGAERT BERGER & VOGEL, LLP
            Attorneys for Defendant
 3          ROCHESTER DRUG COOPERATIVE, INC.
            111 Broadway, 20th Floor
 4          New York, New York 1006
            BY:  DAVID A. SHAIMAN, ESQ.
 5

 6

 7

 8
            SPECIAL MASTERS:
 9
            HARVEY BESUNDER, ESQ.
10          MARK A. KEURIAN, ESQ.

11          THOMAS J. MCNAMARA, ESQ.

12          JOHN L. JULIANO, P.C.

13          JUDGE MURANO

14          KEVIN ECKHARDT

15          JANET SUTHERLAND, ESQ.

16          NATALIE RIVERA, Intern
            CHRIS PICCIANO, Intern
17

18

19

20

21              *          *          *
                STEPHANIE CASAGRANDE, CSR, RPR
22                  Official Court Reporter

23

24

25
```

```
1                          In re Opioid                    5
2              THE CLERK:  Supreme Court, State of New
3         York, County of Suffolk, Part 48 is now in
4         session, the Honorable Jerry Garguilo
5         presiding.
6              Good morning, Judge.
7              THE COURT:  Good morning.  Please be
8         seated.
9              THE CLERK:  On the Hearing Calendar, In
10        Re:  Opioid Litigation, Index Number 400000
11        of 2017.
12             Counsel, your appearances, please.
13             MR. NACHMAN:  David Nachman, for the
14        State of New York.
15             MS. DEROCHE:  Mandy DeRoche, for the
16        State of New York.
17             MR. REISMAN:  Michael Reisman, State of
18        New York.
19             MS. CONROY:  Jayne Conroy, Suffolk
20        County.
21             MR. SHKOLNIK:  Hunter Shkolnik, Nassau
22        County.
23             MR. HANLY:  Paul Hanly, Suffolk County.
24             MR. NAPOLI:  Paul Napoli, Nassau County.
25             MS. MAINIGI:  Good morning, your Honor.
```

1                          In re Opioid                        6

2          Enu Mainigi, Steve Pyser, Ashley Hardin,

3          Williams & Connolly, for Cardinal Health.

4              MS. STRONG:  Good morning.  Sabrina

5          Strong, of O'Melveny & Myers, on behalf of

6          Johnson & Johnson and Jansen Pharmaceuticals.

7              THE COURT:  Good morning.

8              MR. SCHMIDT:  Good morning, your Honor.

9          Paul Schmidt, Covington & Burling, on behalf

10         of McKesson.

11             THE COURT:  Good morning.

12             MR. NICHOLAS:  Good morning.  Bob

13         Nicholas and Mike Salimbene, for Amerisource.

14             THE COURT:  Good morning.

15             MR. STOFFELMAYR:  Good morning.  Kaspar

16         Stoffelmayr, for Walgreens.

17             MS. PATTERSON:  Good morning, your

18         Honor.  Nancy Patterson for Teva, Actavis and

19         Cephalon.

20             MR. BARTLE:  Good morning, your Honor.

21         Harvey Bartle for Teva, Actavis and Cephalon.

22             MS. WELCH:  Good morning, your Honor.

23         Donna Welch, for Allergan.

24             MR. PYSER:  Good morning, your Honor.

25         Steven Pyser, for Cardinal Health.

```
1                          In re Opioid                      7

2              MR. SALIMBENE:  Good morning, your

3         Honor, Mike Salimbne.

4              Good morning, your Honor.  John Bueker

5         on behalf of Mallinckrodt.

6              THE COURT:  Good morning.

7              MR. O'CONNOR:  Andrew O'Connor.

8              THE COURT:  Good morning, everybody.

9              Anybody here today on behalf of

10        Rochester?

11             MR. SHAIMAN:  Good morning, your Honor.

12        David Shaiman.

13             THE COURT:  Just step up for a second.

14        It's not going to be long, believe me.

15             Your appearance.

16             MR. SHAIMAN:  David Shaiman, Allegaert

17        Berger & Vogel.

18             THE COURT:  Okay.  You have a petition

19        pending, I think that's returnable tomorrow.

20             MR. SHAIMAN:  It is.

21             THE COURT:  Is there an opposition to

22        that file?

23             MR. SHAIMAN:  It was filed last night,

24        your Honor.

25             THE COURT:  Okay.  Are you going to
```

In re Opioid                        8

1

2       respond?

3           MR. SHAIMAN:  I don't believe we had one

4       under the Order to Show Cause.

5           THE COURT:  Beg your pardon?  Say it

6       again.

7           MR. SHAIMAN:  I don't believe we had one

8       under the Order to Show Cause.

9           THE COURT:  Okay.  It was brought by

10      Order to Show Cause but --

11          MR. SHAIMAN:  Yes.

12          THE COURT:  -- I do have the discretion

13      to allow it.  I don't see any reason to it.

14      That will be marked submit tomorrow.  There's

15      no need for an appearance.

16          MR. SHAIMAN:  No need for an appearance,

17      understood.

18          THE COURT:  So if you want to leave --

19      stick around a little bit.

20          MR. SHAIMAN:  Well...

21          THE COURT:  Just a little bit.

22          I'm going to go by sequence number.

23      Hopefully you can follow it.

24          The Court has drafted and edited and in

25      the process of final edits of the following

1                          In re Opioid                    9

2        petitions:  That's motion sequence 144,

3        motion sequence 153, motion sequence 154,

4        sequence 156, sequence 158, sequence 161 and

5        sequence 162.  It's also, what I call the

6        cluster sequences, that deal in the forties

7        and fifties, they are still in the

8        preparation stage.

9             I received a call yesterday to attend a

10       meeting with the Administrative Judge in this

11       building.  During the course of the

12       administrative meeting with the

13       Administrative Judge in this building I was

14       conferenced into a phone call with Judge Vito

15       Caruso.  For those of you not familiar, Judge

16       Caruso is the Administrative Judge for all

17       trial courts in the State of New York, with

18       the exception of New York City.

19            I expect to hear sometime today -- now,

20       of course, as soon as I hear you'll hear --

21       some kind of a pronouncement in connection

22       with the operation of the courts in

23       connection with the Corona situation.  I have

24       nothing yet to report, but as soon as I -- as

25       soon as I know, you'll know.

1                        In re Opioid                      10

2          All right.  I'm going to start with the

3     Defendants first, all right.  I'm going to

4     call this a Compliance Conference.  If

5     somebody wants to take the lead at the

6     Defendants' end of the room, give me a

7     report.

8          Nobody is jumping.

9          MS. PATTERSON:  Your Honor, I don't know

10    where you want to start.  I can start by

11    giving you a report on the jury questionnaire

12    and jury protocol issues, which we discussed

13    with the Court.

14         THE COURT:  No, let's go with the -- you

15    know what, I changed my mind.  Go with the

16    joint status report, that might be easier --

17    oh, wait.  Anybody from Mallinckrodt?

18         MR. BUEKER:  Yes, your Honor.

19         THE COURT:  How could you see me?

20         There was a filing yesterday with the

21    Security & Exchange Commission.

22         MR. BUEKER:  Well, that filing wasn't

23    made yesterday.  The filing was attached to a

24    filing of this Court yesterday; but, yes,

25    your Honor.

1                    In re Opioid                    11

2          THE COURT:  Why don't you tell me about

3     it.

4          MR. BUEKER:  So, your Honor, the filing

5     was made with the Securities & Exchange

6     Commission, explains that we have reached a

7     global resolution of these matters, subject

8     to certain conditions, you know, including a

9     prearranged bankruptcy filing that would take

10    place in a month or two.

11         THE COURT:  There's a dollar amount

12    attached to it?

13         MR. BUEKER:  There is, your Honor.

14         THE COURT:  And that dollar amount is

15    how much?

16         MR. BUEKER:  1.6 billion, your Honor.

17         THE COURT:  And you said it's in

18    connection with a global resolution.

19         What is that -- when I say -- what does

20    that mean?  We have cases pending here.  Last

21    count in the MDL, 330 cases?

22         MR. HANLY:  3,000, your Honor.

23         THE COURT:  3,000.  I'm off.  My 10

24    table is wrong.  Cases pending, I guess, in

25    47 states?

1                              In re Opioid                    12

2            MR. BUEKER:  Sounds about -- Attorney

3       General, yeah, support the Agreement, your

4       Honor.

5            THE COURT:  Let's assume, and this is

6       for purposes of a conversation, let's assume

7       that works out, that 1.6 billion dollars, and

8       let's assume the Court gets a call, a

9       correspondence from a county attorney who is

10      represented here by one of the -- one of the

11      Plaintiffs' firms, all right, and asks the

12      Court, How do we benefit from it?

13           How would the Court or what would the

14      Court do in order to answer that question?

15           MR. BUEKER:  So I think what the Court

16      needs to keep in mind --

17           THE COURT:  Sandy -- go ahead.  No,

18      wait, wait, wait.  This means coffee; this

19      means please...

20           MR. BUEKER:  I learned something today,

21      your Honor.  Thank you.

22           I think what the Court needs to keep in

23      mind is how will the County benefit.  The

24      County will benefit because the reason

25      Mallinckrodt entered into a global resolution

In re Opioid                    13

1

2       the way it did was a group of AGs and a group

3       of the lead Plaintiffs' lawyers from the MDL

4       got together and had a negotiation so that

5       Mallinckrodt could proceed in a way that

6       would maximize the return, the amount of

7       money that could be paid to claimants in

8       these opioid cases.

9           So the County, you would answer, I would

10      think, benefits by the fact that the

11      alternative for Mallinckrodt, which would be

12      some kind of a free-fall bankruptcy without

13      the planning and without the maximization

14      that goes on under this plan.  The County is

15      benefited here because there would be

16      additional consideration to the County.

17          THE COURT:  Okay.  Those two words,

18      "additional consideration."  Go ahead.

19          MR. BUEKER:  More than they'd otherwise

20      get if Mallinckrodt were just to plunge head

21      on into bankruptcy.

22          THE COURT:  So let's say the call came

23      from the county attorney in Chenango County,

24      which I believe is one of the parties in this

25      case, and I repeat exactly what you said, and

1                      In re Opioid                    14

2          he or she listens to me and says, Judge, how

3          much?

4              MR. BUEKER:  That's an issue, your

5          Honor, that remains to be worked out in the

6          Bankruptcy Court.  There will be a procedure

7          for that that will be presided over to be

8          presumably a negotiated resolution of that.

9              THE COURT:  In other words, help me out,

10         the Bankruptcy Court would hear claims?

11             MR. BUEKER:  That's one way it could get

12         worked out in the bankruptcy.  The other way

13         it could get worked out in the bankruptcy the

14         more -- I see Mr. Nachman is raising to

15         address this.  He may be in a better position

16         to address it, so I will politely sit down,

17         but that could get worked out in the

18         bankruptcy by agreement.

19             THE COURT:  Okay.  Mr. Nachman, I

20         understand New York is not one of the 47

21         Attorney Generals that signed on for this

22         thing.

23             MR. NACHMAN:  Two weeks ago that was

24         correct.  As of today we are on a supporting

25         state -- we are a supporting state as of

1                          In re Opioid                    15

2          yesterday.

3                  THE COURT:  This is good news.

4                  MR. NACHMAN:  It is good news.  And to

5          your point, your Honor, the whole idea of the

6          prearranged bankruptcy or prepackaged,

7          depending on exactly what form it takes, is

8          that allocation, which is what you are

9          discussing is to be negotiated.  It is

10         expected that that's exactly what's taking

11         place now.  We know what the parameters, the

12         economic parameters of the deal are.  We've

13         agreed that it's a better deal for everybody

14         because it maximizes value compared to the

15         only other plausible alternative of a

16         free-fall bankruptcy and allocation is now to

17         be finalized, but I should say that we don't

18         write on a clean slate.  There have been, as

19         you might imagine, over the course of the

20         past year around the country many, many

21         discussions about allocation on a national

22         level, as among the states, within New York,

23         as among the counties, city, the state, so

24         those arrangements are, if not finalized,

25         very far progressed, and then the last piece

1                        In re Opioid                    16

2          of it is that we have to take into account

3          other opioid claimants in the Mallinckrodt

4          situation:  personal injury claimants,

5          hospitals and NAS infants who may have been

6          born with addiction in utero.  So that all

7          still has to be arranged.  So we can't give

8          the answer to your Chenango, of the dollar

9          amount.

10             What you can say for the moment is it's

11         better than the alternative, and the idea is

12         that in two months we'll have allocation all

13         arranged, go into bankruptcy, and be out of

14         bankruptcy officially.

15             THE COURT:  Mr. Napoli, you have a

16         problem with it, right?

17             MR. NAPOLI:  I do, your Honor.

18             THE COURT:  Tell me about it.

19             MR. NAPOLI:  You know, I think it comes

20         down to your question, How much is a county

21         going to get?  And none of these lawyers,

22         whether it's the State of New York or the

23         attorney for Mallinckrodt, can tell us.

24             All we know is that there is a potential

25         for 1.6 billion for all of the Plaintiffs

1                          In re Opioid                    17

2          that have filed or even those -- we're not

3          even sure if it includes those that have not

4          filed.  If it includes everybody, the best

5          case scenario for Nassau County would be 5

6          percent of the gross, which would be about 60

7          million would go to the State, and of that 60

8          million, maybe five percent would go to

9          Nassau County over a period of a number of

10         years.  That's from a Defendant who is

11         probably significantly responsible.  In the

12         order of Defendants it's probably Purdue and

13         then Mallinckrodt.  They were the most

14         prolific distributors of sellers and

15         manufacturers of generic opioid.

16              So the County doesn't know how much

17         money they're going to get.  They don't know

18         when they're going to get it.  They don't

19         know who else is going to be included in this

20         process.  We just heard from Mr. Nachman,

21         they still have to make a determination on PI

22         claimants, on hospital claimants, so they're

23         going to get a share as well.

24              THE COURT:  I got it.

25              Mr. Hanly, you're on board with it?

```
1                          In re Opioid                    18

2              MR. HANLY:  Yes, your Honor.  I'm on

3         board --

4              THE COURT:  And yet you're here today,

5         of course, on behalf of Suffolk County?

6              MR. HANLY:  That's correct, Judge.

7              But the background to my support on

8         behalf of Suffolk is the year or so that I

9         spent as a PEC representative dealing with

10        the Mallinckrodt potential bankruptcy, and

11        the PEC spent millions of dollars on

12        financial analysts to analyze the condition

13        of Mallinckrodt and give us an assessment of

14        the potential that the company could survive

15        this litigation without filing for

16        bankruptcy, and the conclusion was it could

17        not.

18             Accordingly, and wearing my PEC hat, I

19        attempted to achieve the best deal that could

20        be achieved, and I have so advised Suffolk

21        County.

22             THE COURT:  Okay.  Mr. Juliano, today,

23        sometime today would you --

24             MR. JULIANO:  Yeah, Judge, I had a

25        conference with Mr. Hanly, Mr. Napoli, Mr.
```

In re Opioid                    19

1

2    O'Connor yesterday, and Mr. Nachman, with

3    respect to what you just heard.  Just one

4    concern that I advised the Court, this is all

5    dependant upon whether or not the specialty

6    generics, which is not Mallinckrodt, PLC

7    comes out of bankruptcy, then this agreement

8    starts to fall into place.

9         However, there are concerns that Mr.

10    Napoli had with respect to what's already

11    been expended in this case to prepare for

12    trial for the 20th.  So I think that issue

13    was left open, and we have not had a

14    resolution, but I think today we have an

15    opportunity, we're going to speak with

16    Mallinckrodt, with Mr. Hanly, Mr. Nachman and

17    Mr. Napoli, to see if that can be worked out

18    or kind of revise some of this global terms

19    to see whether or not we can take into

20    consideration now Mr. Nachman participating

21    and what his allocation with -- what the

22    State's allocation would be with respect to

23    any distribution.  So I think we have that

24    sometime this morning we'll get together,

25    Judge, and try to work some of those out, and

1

2          I'll advise the Court accordingly.

3               THE COURT:  Okay.

4               MR. NAPOLI:  Your Honor, if I can say

5          two quick things.  This deal that gets

6          Mallinckrodt, PLC off the hook, I'm wearing

7          my Nassau County hat, we've spent time and

8          money preparing for trial.  There's no

9          guarantee that a bankruptcy is going to

10         actually be filed, and to that point, we've

11         said if a bankruptcy is not filed and we have

12         to come back here and try this case again

13         against Mallinckrodt sometime in the fall, we

14         want to be made whole for that situation, and

15         the company refused to take that into

16         account.

17              So there is absolutely no benefit for

18         Nassau County.  As an advocate for Nassau

19         County, we're at trial.  The other 34,000

20         other counties and cities and municipalities

21         are not at trial.  What's best for Nassau

22         County, having prepared for trial, is going

23         forward.

24              Again, this prime actor in this crisis,

25         not only around the country but here in New

1                        In re Opioid                    21

2          York.  We're concerned about Nassau County,

3          in New York, that's the client I represent,

4          not the PEC.

5              MR. NACHMAN:  Your Honor, can I just add

6          one thing for the record.  You heard 1.6

7          billion.  The deal also includes a 19.99

8          percent equity stake in the parenting

9          company.  I just want --

10             MR. BUEKER:  Yeah, I was going to add

11         that.

12             MR. JULIANO:  It's a warrant.  I

13         understand it's a warrant.

14             MR. NACHMAN:  It's convertible into

15         19.99 percent or --

16             MR. BUEKER:  And I would just say in

17         response to Mr. Napoli that his county is

18         going to benefit more by this deal going

19         through and by not forcing us to a trial that

20         results in a premature bankruptcy and

21         deprives everyone of what could be a

22         maximizing outcome.

23             THE COURT:  Okay.  I consider -- the

24         Court considers itself sufficiently informed.

25         We'll await the results of any kind of a

In re Opioid                               22

1

2          conference you have with Mr. Juliano and/or

3          further notification.

4               You know, almost as an op-ed comment,

5          when we collectively look at the obligations

6          we have to our principals, whether it's a

7          Plaintiff or a Defendant, and consider the

8          breath and scope of this litigation, this

9          Court has been contacted by judges from other

10         parts of the country involved in this

11         litigation asking questions, in essence,

12         comparing notes.

13              I wonder, given the extent, the breadth

14         of this litigation, is the way we, and I say

15         "we" collectively, we here in New York, we

16         here in Ohio, we here in Louisiana, we here

17         in South Carolina are approaching this thing

18         is the right way to approach it.

19              If we're talking -- if we're using the

20         word global in connection with any resolution

21         that might be arrived at, can we ever really

22         ever get -- this is a rhetorical question --

23         can we ever expect to get to a global

24         resolution as long as there's this

25         litigation, these cases pending throughout

In re Opioid                          23

1

2      the country?  I don't think so.

3          I'm open to suggestions as to a way to

4      convene some sort of a conference which

5      includes every jurisdiction, every state,

6      Federal Court in connection with a wide open

7      discussion and negotiation in connection

8      with, again, a global resolution, as well as

9      a means and method to distribute the --

10     distribute whatever funds are put aside in

11     connection with a global resolution.

12         And you may recall, sometime ago at a

13     conference the Court had suggested its own

14     means and method in the event that number,

15     that global number can be arrived at, and I

16     stand by it, and it seems like a species of

17     it has been adopted in some fashion by the

18     Ohio court.

19         Again, that's just a comment because I

20     don't -- I don't know how, if I was

21     representing a Defendant in this case, how

22     it's okay where we're done with New York, all

23     right, but guess what?  You got 48 other

24     states we got to deal with.

25         I mean, my principal -- my principal

```
1                          In re Opioid                    24
2       would say, Okay, what is my exposure
3       elsewhere and what documents do you have that
4       I can rely on to say, you know, this is my
5       payout?  Again, strictly rhetorical.  That's
6       for you to decide and for you to make
7       suggestions to the Court, any one of you, as
8       to what this Court can do in connection with
9       convention or the convening of a some sort of
10      a meeting of national scope.
11          That aside, I have the joint pretrial
12      order.  All the open discovery issues are
13      here to be conferenced without special
14      masters.
15          Go to page 5, summary of any pending or
16      forthcoming motions.  Item number 1, as I
17      indicated, is done.  Awaiting final edits by
18      the Court.  Item number 2, done.  Awaiting
19      final edits from the Court.
20          I would like to say that the 18th
21      summary judgment motions, to the extent that
22      they were filed as follows.  There's group
23      applications:  manufacturers, distributors
24      and pharmacies.  We have those.  The Court's
25      considered those.
```

In re Opioid                          25

1

2          And then on top of the group

3     applications, we have individual applications

4     where the, where the Petitioner/Defendant

5     indicates we're part of the group, Judge, but

6     now these arguments that are unique to our

7     situation.  They have been looked at and

8     those are in draft also.  But the ones that I

9     detailed this morning are really done but,

10    again, I'd like to take a final look at it.

11         So items 3 and 4 are essentially done.

12    Item 5, 6, and 7 are done.  When I say "done"

13    -- time out.

14         All right.  The Court's in receipt of an

15    administrative order.  It was just handed to

16    me, signed by the Honorable Vito Caruso.

17         I suggested, when I first came out

18    today, that I expected to get some kind of a

19    read from the administration in connection

20    with the Carona situation, and I'll read it

21    into the record.  (READING:)  Administrative

22    order.  Pursuant to the authority vested in

23    me, and at the direction of the Honorable

24    Lawrence K. Marks, Chief Judge -- Chief

25    Administrative Judge, and in further

                            In re Opioid                        26

1

2       consultation with the Honorable Jerry

3       Garguilo -- he spelled my name wrong, by the

4       way -- the following matter shall hereby be

5       adjourned, as the trial court shall direct,

6       and the County of Suffolk v. Purdue and the

7       County of Nassau v. Purdue, New York versus

8       Purdue, et al., and the index numbers.

9            I interpret this to mean that as the

10      Court shall direct that pending, pending the

11      outcome of the Carona situation, the Court

12      can and shall reassign a trial date.

13           I'll tell you right now.  I have no

14      intention of going beyond the next case up

15      for trial, which I believe is Tennessee in

16      May.  I'm not going to set a new date today.

17      Just, by the way, this administrative order

18      will be available for distribution, all

19      right.

20           MR. NACHMAN:  For clarification, your

21      Honor, is the Court suggesting that subject

22      to, obviously, discussing with the

23      administrators of the court system, you

24      anticipate setting a date sometime before the

25      scheduled commencement of the Tennessee trial

1

2    in May?

3         THE COURT:  As soon as there's a

4    lifting, a significant move, either by the

5    Governor's office or OCA, in a New York City

6    instant this Court is going to schedule a

7    trial.  This Court has been anxious to move

8    this case to trial.  You know, hindsight of

9    course can be 20/20.  But one of the things

10   they asked me for yesterday in that phone

11   conference was a roster of not so much the

12   names of lawyers, but the places lawyers come

13   from.  And what I did is, just so you know, I

14   didn't give what I believe is a complete

15   roster, I gave the roster based upon the

16   service, the service list on the joint status

17   report, and Judge Caruso wanted that, and I

18   gave him that.

19        When I say hindsight is 20/20, I have,

20   what was suggested last conference, up to 200

21   lawyers coming here.  Commissioner of Jurors

22   has suggested bringing in 150, 150, 150 and

23   150, that adds up to what, 600 potential

24   jurors.  I suspect the risk of some kind of a

25   communication of the illness was a

In re Opioid                    28

1

2    significant consideration.

3        So here's what we're going to do.  I

4    have motions all over the place right now.  I

5    got a motion to preclude the State on the

6    BNE.  Discovery, I have motions by

7    Mallinckrodt.  We make use of the time we

8    have.  Let's assume it's a month, I'm giving

9    you that assumption because that's what the

10   Court has in its mind, all right.  If we make

11   use of that time, all of these discovery

12   disputes that you have now will be resolved

13   and nobody, let's say a month from now, can

14   come and say, Oh, Judge, guess what?

15       In connection with that, it will be

16   deemed an order of this Court that all

17   discovery is to be complete.

18       What's a month from today?

19       THE CLERK:  April 13th.

20       THE COURT:  I don't like that number.

21       THE CLERK:  April the 14th.

22       THE COURT:  That's my wife's birthday,

23   that's good.  April 14th.

24       MR. SHKOLNIK:  Judge, if I can be heard,

25   Hunter Shkolnik.  What we've been seeing in

1                    In re Opioid                    29

2        the last couple of weeks is incessant service

3        of new discovery.  Can we have an order that

4        this has got to stop, and we can cleanup what

5        has to be cleaned up?  That we had a trial

6        date and this discovery in the last five

7        days --

8            THE COURT:  I've seen it.

9            MR. SHKOLNIK:  Can there be an order

10       that there's nothing new, that we had a date,

11       whatever was proper is served.  Nothing new,

12       and whatever was too late, was too late.

13           THE COURT:  As a matter of fact, on this

14       side of the table I think somebody suggested

15       opening up discovery based upon an article

16       that appeared in the newspaper, right?  I

17       think it was you.

18           MR. NACHMAN:  That's that table.

19           MR. SHKOLNIK:  But if we can have some

20       type of --

21           THE COURT:  Work out a -- if you don't

22       do it, the Court will.  Work out something

23       with my special masters.

24           MR. NAPOLI:  Can I make one more

25       suggestion?  I know the Court said you don't

1                          In re Opioid                    30

2          want to set a date, but to have a control

3          date might make sense.

4                THE COURT:  I'm going to give you a

5          control date.  By the way, are you really

6          appearing in Louisiana once a week?

7                MR. NAPOLI:  Me?

8                THE COURT:  No, is this litigation going

9          on in Louisiana on a weekly basis?

10               MS. PATTERSON:  It is going on in

11         Louisiana, your Honor, but not on a weekly

12         basis.

13               THE COURT:  Okay.  How frequently?

14               MS. PATTERSON:  It's sort of ad hoc,

15         your Honor.  The last hearing was about three

16         weeks ago, but I was here, so I had other

17         people there.

18               THE COURT:  Okay.

19               MS. PATTERSON:  Things are being pushed

20         back there.  They had some issues with

21         discovery.  They had a cyber attack.

22               THE COURT:  There's only one Plaintiff

23         there?

24               MS. PATTERSON:  The State, yes, your

25         Honor.

```
1                        In re Opioid                    31

2            THE COURT:  Those are one of the courts

3       we heard from.

4            Let's get something significant done.

5       You'll meet with my special masters.  Work

6       out a drop dead date, a term of art, a cutoff

7       date on the discovery.  Mr. Nachman, work

8       something.  You face a motion tomorrow to, to

9       preclude.

10           MR. NACHMAN:  We have submitted, your

11      Honor, that that's I think -- I mean, the

12      motion is, especially in view of what's taken

13      place over the past couple of days,

14      effectively moot, and in any event -- or

15      meritless, it should be withdrawn, actually,

16      but on a number of bases, and we've submitted

17      our papers.

18           Picking up on Mr. Shkolnik's suggestion,

19      I would beseech your Honor, we'll work out a

20      Stipulation with the special masters, but to

21      set that cutoff on the basis that the trial

22      was to proceed on March 20th.

23           As an example, you have a motion now

24      filed by us, not yet responded to, about

25      requests for admissions, which were served a
```

```
1                           In re Opioid                    32

2        day or two or three late.  Another set of, I

3        don't know, 30, 40, 50 requests to admit

4        served late just piling on, piling on.  We're

5        not -- we agree with your Honor, we should

6        use this time to clean up all these issues,

7        we can do so in an orderly fashion, but we're

8        not going to do so.

9            I said before that nature abhors a

10       vacuum.  The Defendants abhor a vacuum.  If

11       there is any space in time they will fill it

12       with what is now I think demonstratively

13       fruitless, irrelevant.  They'll contest that.

14       They'll say it's very relevant; they'll say

15       it's critical; they'll say it goes to the

16       heart of due process; blah, blah, blah.  But

17       in any event, unless your Honor puts that

18       date today as if --

19            THE COURT:  I said I was.

20            MR. NACHMAN:  Okay.  Great.

21            THE COURT:  I'll give you a chance to

22       come to an agreement.  If you don't come to

23       an agreement, that's my job.  You can make my

24       job a lot easier by coming to an agreement,

25       so do so.  I don't want to get tied up in too
```

```
 1                      In re Opioid                      33
 2        much academic stuff, but there are some
 3        things I really would like to mention.
 4             By the way, there's a lawyer who put
 5        some papers in, last name is Polster.  Any
 6        relation to the judge?  No?  That person is
 7        not here, right?  No relation to the judge,
 8        as far as any of you know?
 9             MR. NACHMAN:  It's a witness.
10             THE COURT:  It's a witness.  I saw the
11        name.  Okay.  Who put in an affidavit?
12             MS. CONROY:  Yes.
13             THE COURT:  All right.  All the
14        pharmacies are here, correct?  I'd like the
15        pharmacies to meet with Mr. Juliano and with
16        Plaintiffs' counsel.  The Court has read all
17        of the individual pharmacies' petitions, as
18        well as the joint petition, and I would like
19        that case discussed with Mr. Juliano.
20             Am I correct that Judge Polster issued
21        one decision concerning a pharmacy, a
22        pharmacy that's not in this case?  Anybody?
23        I'm going to assume, unless I hear otherwise.
24             MR. STOFFELMAYR:  Your Honor, HBC is in
25        the case in front of Judge Polster, not in
```

```
1                          In re Opioid                    34

2         this case.

3              THE COURT:  That's right.  Judge Polster

4         rendered a decision in connection with a

5         petition to dismiss.

6              MR. STOFFELMAYR:  I'm sure he did.  He's

7         done that.  There's a second pharmacy chain,

8         not in this case, also in front of Judge

9         Polster, called Discount Drug Mart.

10             THE COURT:  I would like the pharmacies

11        that are here today to meet with Mr. Juliano.

12             MR. SHKOLNIK:  The two decisions that

13        came down were later, later decisions.  There

14        were earlier ones I believe as to CVS and

15        Walgreens, because they were part of the

16        trial.  He deferred the decisions on those

17        other ones.  You may have seen those late

18        decisions that just came down in the last

19        probably two months.

20             THE COURT:  No, I hadn't seen those two.

21        I saw the HBC decision.  I read the HBC

22        decision where he held HBC on a diversion

23        claim I believe.

24             MR. SHKOLNIK:  Those just came out, but

25        the original summary judgments as to
```

1                       In re Opioid                    35

2          Walgreens and CVS, those came out quite some

3          time ago.

4               THE COURT:  I have to find them.  I

5          don't have them yet.

6               MR. SHKOLNIK:  We can make them

7          available for the Court.

8               MR. SCHMIDT:  Your Honor, Paul Schmidt,

9          for McKesson.  We have a bunch of dates

10         coming up in terms of things like exhibits,

11         things like that, jury instructions.  May we

12         work with the Plaintiffs to pick new dates

13         for those things?

14              THE COURT:  Yes.  And special masters

15         are here, too.

16              MR. SCHMIDT:  Wonderful.  Thank you.

17              THE COURT:  Oh, by the way, maybe I do

18         have it.  It's the MDL docket 2561, that's

19         what I had down.

20              MR. HANLY:  2804, your Honor.

21              THE COURT:  Then I don't have it.

22              MR. SHKOLNIK:  We'll get you the actual

23         orders.

24              THE COURT:  Okay.  The judge in Ohio

25         also wrote somewhat extensively on the de

```
 1                    In re Opioid                    36

 2        minimis claim that some Defendants are making

 3        here, meaning their participation in the

 4        actual commerce is very, very tiny, tiny and

 5        as such they shouldn't be in the case.  I got

 6        that.

 7             You can expect the decisions on the AOD

 8        issues involving some of your clients to be

 9        out soon.  Statute of Limitations, expect

10        that soon.

11             Oh, yeah, when I referred to the cluster

12        motions before I was talking about 146, 147,

13        149, 151 and 160.  I can tell you that's in

14        also in the editing stage.

15             I'm going to close the record.  You'll

16        -- I'll be here, of course, for help.  You'll

17        meet and confer with Mr. Juliano, the special

18        masters, and with your consent, I'm going to

19        ask Judge Murano to also take part in the

20        discovery issues.  As you all know, Judge

21        Murano was presiding judge in Nassau County.

22        He's been very, very helpful to me.  Unless I

23        hear an objection to that; any objection?

24        Going once, going twice...

25             The record will reflect there's been no
```

1                        In re Opioid                    37

2          objection to the reassignment of Judge Murano

3          this morning.

4              Mr. Nachman, do you want to get the last

5          word in, as always?

6              MR. NACHMAN:  Yes.  I just want to note

7          in light of the Court's statement about

8          decisions forthcoming, that with respect to

9          item number 9, their request for relief under

10         3216 for our reported noncompliance with the

11         BNE, we have responded to that yesterday with

12         our submission.  I just want to be sure that

13         the Court has and considers that before

14         ruling.

15             We also, at the Court's direction, made

16         a formal motion on the reargument of the, of

17         the CSA authority issue of the Attorney

18         General to prosecute those claims.  That

19         motion has now been formally made.  I'm happy

20         to work out dates with the Defendants if they

21         need a response time, but it's been noticed.

22             MR. PYSER:  Your Honor, we'll certainly

23         be responding to the motion to reargue on

24         that.  It's been heard already, and unless

25         the Court is going to summarily deny it,

```
 1                    In re Opioid                    38

 2        having seen it four times already, we'll work

 3        out a -- we'll work out a schedule.  We're

 4        happy to work with the special masters on

 5        that as well.

 6             MR. NAPOLI:  Your Honor, I was unclear.

 7        So April 14th is the day that we're pushing

 8        everything back until?

 9             THE COURT:  Everybody is going to be

10        here on the 14th.  I suspect certainly by

11        that time I'll get some word as to what I can

12        do.  I'm telling you as soon as it becomes

13        apparent that this Court can proceed, it will

14        proceed.  This Court is, as you know, is

15        anxious to proceed.

16             Thank you all.  Meet with my -- our

17        special masters, and I'll be here for

18        recourse throughout the day.

19             Thank you.

20             CHORUS:  Thank you, your Honor.

21

22

23                    *      *      *

24

25
```

1                              In re Opioid                        39

2

3

4

5                    C E R T I F I C A T I O N

6

7          I, Stephanie Casagrande Hague, CSR, RPR,

8      an Official Court Reporter of the State of

9      New York, County of Suffolk, do hereby

10     certify that the above is a true and accurate

11     transcription of my stenographic notes taken

12     in the above-entitled action on this day;

13          Furthermore, photocopies made of this

14     transcript by any party cannot be certified

15     by me to be true and accurate.

16          Therefore, only those copies bearing an

17     original signature in blue ink are official

18     certified copies.

19

20

21     _____
       STEPHANIE CASAGRANDE HAGUE, CSR, RPR
22            Official Court Reporter

23

24

25