AKIN GUMP STRAUSS HAUER & FELD LLP
Ira Dizengoff
Arik Preis
Mitchell Hurley
Sara Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |
| PURDUE PHARMA L.P., *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 19-08289 (RDD) |
| COMMONWEALTH OF MASSACHUSETTS, *et al.*, | |
| Defendants. | |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
STATEMENT IN SUPPORT OF DEBTORS' MOTION
TO EXTEND THE PRELIMINARY INJUNCTION**

The Official Committee of Unsecured Creditors (the "Official Committee"), by and through its undersigned counsel, hereby submits this statement (the "Statement") in support of the *Debtors' Motion to Extend the Preliminary Injunction* dated March 4, 2020 [ECF No. 146] (the "Motion") and the *Debtors' Memorandum of Law in Support of Motion to Extend the Preliminary Injunction* dated March 4, 2020 [ECF No. 147] (the "Debtors' Brief")[2] pursuant to which the Debtors seek entry of an order extending the preliminary injunction issued on November 6, 2019 and subsequently amended by this Court (the "Preliminary Injunction"), that will expire on April 8, 2020, for an additional 180 days.

**DISCUSSION**

1.  The Official Committee supports the Debtors' motion for a limited extension of the Preliminary Injunction for many of the same reasons that the Official Committee supported entry of the original injunction.[3]  Now, as then, the Debtors and the Related Parties should not be distracted from the important work of these cases by outside litigation.  Instead, they should remain focused on, among other things, producing detailed information to the Official Committee and other parties in interest so that all can participate meaningfully in the reorganization process, including by evaluating the merits, *vel non*, of the Settlement Framework.  That process has begun,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Debtors' Brief, as applicable.  Nothing in this statement is a response to *The Non-Consenting States' Voluntary Commitment and Limited Opposition in Response to Purdue's Motion to Extend the Preliminary Injunction* dated March 12, 2020 [ECF No. 150] which was filed yesterday evening.  The Official Committee intends to respond to that filing separately.

[3] While the Official Committee supports the Debtors' request to extend the preliminary injunction as set forth in the Motion, the Official Committee does not agree with all of the statements made in the Motion or in the supporting pleadings, and expressly reserves all rights with respect to such statements.  *See* Motion ¶ 7.

2

but is far from complete. While the Official Committee hopes its ongoing "meet and confer" efforts with the Debtors and Related Parties will limit the need for Court intervention, some near-term motion practice on discovery appears likely, as discussed in more detail below. Nevertheless, allowing litigation outside of these cases to resume would be counterproductive, and the Official Committee therefore submits that the Preliminary Injunction should be temporarily extended.

2.      Before briefly addressing the status of discovery, we pause to emphasize what the proposed extension of the Preliminary Injunction **will not do**. The relief the Debtors request would not extend (and the Official Committee would not have agreed to extend) periods during which the Official Committee pledged, pursuant to the October 11, 2019 case stipulation between the Debtors, the Official Committee and the Related Parties (as amended November 20, 2019, the "Case Stipulation"), to forbear from undertaking certain activities. Among other things, the Official Committee agreed that it (i) would not seek compulsory discovery of certain Related Parties prior to January 19, 2020, *id. ¶ 17*, and (ii) would not file, or support any other party that files, a motion for derivative standing to prosecute estate causes of action prior to April 8, 2020, *id. ¶ 6*. *In fact, no obligation contained in the Case Stipulation that ends by its terms when the "Initial Stay Period" ends will continue past April 8, 2020.* See **Exhibit A** hereto (highlighting Official Committee obligations that have expired, or will expire, by their terms).

3.      The Official Committee is not willing to further defer its access to these tools, in part because the Official Committee has not obtained all of the disclosures it had hoped it would receive from the Related Parties and others during the period of the original Preliminary Injunction. Under the Case Stipulation, the Debtors and Related Parties agreed to provide certain identified disclosures to the Official Committee, and to consider informal information requests from the Official Committee in good faith. To be sure, as required under the Case Stipulation, counsel for

3

the Related Parties presented select information and arguments to the Official Committee concerning the Related Parties' potential liability, and the amount, availability and other information about the assets of the Related Parties, along with certain other information contemplated by Paragraph 17 of the Case Stipulation. The Debtors have likewise supplied much of the information specifically enumerated in Paragraph 7 of the parties' agreement as well.

4.      However, "much remains to be done." *See* Motion at 3. The Case Stipulation contemplates a good faith effort by the parties to engage in discovery on a voluntary basis in the first instance. For example, the Related Parties acknowledge in the Case Stipulation that "the Debtors and the [Official Committee] may request … information and diligence [in addition to that agreed in the Case Stipulation] . . ., including prior to January 19, 2020," and the Related Parties "reserve their rights with respect to such requests." Case Stipulation ¶ 17. For their part, the Debtors agreed to "provide the [Official Committee] and its professionals … with information that is reasonably requested and necessary or appropriate … relating to the Debtors' chapter 11 cases, without the need for the [Official Committee] to file formal discovery." *Id.* ¶ 7.

5.      The Official Committee directed informal document requests to the Debtors on October 18, 2019, and to the Debtors and the Related Parties primarily in letters dated November 25, 2019 and January 2, 2020. The Official Committee provided to the Debtors and the Related Parties the Official Committee's first proposed group of custodians and search terms for locating and producing electronically stored information ("ESI") on February 4, 2020.[4] The Official Committee made clear that it was prepared to "meet and confer" regarding all of its requests. The

---

[4] The February 4 correspondence included four new requests regarding an issue of which the Official Committee first was notified after delivering its January 2 requests, and the Official Committee added another request by letter dated March 3, 2020. The parties also exchanged many additional emails and letters concerning their positions with respect to specific documents called for by the requests previously propounded by Official Committee. The Official Committee reserves its right to propound additional requests to the extent necessary or appropriate.

4

Official Committee also offered to work together with counsel for the other parties in an effort to refine, improve and narrow its proposed ESI search terms, including by reviewing "hit reports" for ESI returned by the Official Committee's suggested terms and proposing, and considering other parties' proposals, for revisions to search criteria. In fact, respective counsel for the Debtors, the Related Parties and the Official Committee have engaged in multiple "meet and confer" calls both before and after the Official Committee provided its February 4, 2020 initial proposed search criteria, and continue to work to narrow their differences. The Official Committee does not question the good faith of the professionals with whom it has engaged over the past several months, but has not yet been able to resolve important disagreements concerning the appropriate scope of discovery in these cases. Consequently, Court intervention to resolve those disputes likely will be necessary in the near term.

6.  We do not wish to suggest that the Official Committee has not received a large volume of information. As required pursuant to the Case Stipulation, the Official Committee understands that it now has access to most of the discovery produced prepetition in litigation arising from or relating to the Debtors' involvement in the opioid crisis, including in the Ohio-based multi-district litigation before Judge Polster (the "MDL"). The volume of this material is substantial and includes more than 8 million documents comprising more than 60 million pages.[5] As noted above, the Debtors and the Related Parties have provided certain other presentations and information pursuant to the Case Stipulation as well.

---

[5] Review of all of the prepetition production documents by the Official Committee's counsel would not be a prudent use of estate resources, and the Official Committee instead has relied on document tagging and other resources, some of which were supplied by the Debtors and certain plaintiffs in the prepetition litigations, to identify important categories of documents for targeted review.

5

7.      It appears, however, that documents of great potential interest to the parties to these bankruptcy cases have not yet been disclosed to any litigants, at any time.  Naturally, the plaintiffs in the MDL and other prepetition litigations were focused on Purdue's "primary liability" arising out of the opioid crisis.  While a handful of later-filed complaints in the MDL included fraudulent conveyance claims against certain members of the Sackler family, other types of claims important to these cases did not feature in the prepetition litigations at all.  Hence, prepetition discovery was not specifically directed at developing claims of the kind that are salient in these cases, including claims for intentional and constructive fraudulent conveyance, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, illegal dividends and others.  Motion practice may be necessary to ensure that complete disclosures regarding these valuable claims are made by the Related Parties and others in these cases.

8.      In addition, prepetition discovery concerning Purdue's "primary liability" for claims arising out of the opioid crisis was not yet complete when the Debtors filed these cases.  To be sure, substantial evidence of Purdue's liability has been assembled already.  Nevertheless, some additional related discovery is appropriate, including because the files of important custodians have not yet been subject to any review, and because Purdue's primary liability bears on issues of great importance to the estates' claims.  Just to highlight a few examples, the size of Purdue's accrued liability arising from the opioid crisis is directly relevant to Purdue's insolvency at key junctures, which in turn is important to a number of claims against the Sacklers and others.  Similarly, the degree to which the Sacklers and other Purdue board members, key executives, and decision-makers were aware of, or concerned about, that potential liability may be relevant to the estates' claims for intentional fraudulent conveyance, breach of fiduciary duty and unjust enrichment, among other claims and issues.  The Official Committee also understands that

substantial creditor groups are unlikely to support any settlement in these cases until at least some additional primary liability discovery has been completed.

9. To be clear, however, the Official Committee has no interest in a "do over" of discovery taken before these cases were filed on issues of primary liability (or anything else). But the reality is that the Debtors and the Related Parties were (i) not required prepetition to conduct any searches of certain key custodians, and (ii) did not specifically search for documents relevant to important estate claims in the possession of any custodians. Solely by way of example, custodial files of just two of the eleven members of the Sackler family who served on Purdue's board of directors were subject to discovery of any kind in the MDL, while two other Sacklers produced a comparatively small number of additional documents in the Oklahoma litigation. These are the only Purdue board members whose custodial files were ever searched, and long-time Sackler and Purdue advisors, executives, employees and affiliates also escaped discovery entirely.[6]

10. To their credit, the Debtors and the Related Parties have indicated willingness to fill at least certain of the gaps in prepetition discovery identified above and elsewhere. The precise extent of the additional disclosures necessary and appropriate in these cases has been the subject of good faith negotiations among the Debtors, the Related Parties, the Official Committee and others for months, and continues. It appears unlikely, however, that the parties' disagreements will all be resolved consensually, despite their meet and confer efforts. In light of the extensive work the parties already have done to resolve certain of their disagreements and crystalize others, the Official Committee submits that a streamlined approach to any necessary motion practice may be

---

[6] To be clear, the Official Committee is referring to searches of the "custodial files" of these important witnesses. The Official Committee does not seek a "re-production" of communications that may have appeared in, and been produced from, the custodial files of other witnesses who were subject to search prepetition. We believe that such materials can readily be "de-duplicated" and removed from any future document review process and production.

appropriate.  Accordingly, the Official Committee will seek to meet and confer with counsel for other parties, including the Debtors and the Related Parties, in an effort to agree on and jointly propose to the Court expedited procedures for resolving discovery disputes to the extent they require Court intervention.

## RESERVATION OF RIGHTS

11.    The Official Committee expressly reserves all rights with respect to the Motion, including the right to amend or supplement this Statement, submit additional briefing, participate in any discovery and be heard at any hearing related to the Motion.  The Official Committee further reserves the right to: (1) seek discovery of the Debtors and/or the Related Parties pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, and/or (2) seek standing to bring estate causes of action against third parties on or any time after April 8, 2020.  Nothing contained herein shall constitute a waiver of any of the rights or remedies of the Official Committee, each of which is expressly reserved.

| | |
|---|---|
| New York, New York<br>Dated: March 13, 2020 | AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>*/s/ Arik Preis*<br>Ira Dizengoff<br>Arik Preis<br>Mitchell Hurley<br>Sara Brauner<br>One Bryant Park<br>New York, New York 10036<br>Tel:  (212) 872-1000<br>Fax:  (212) 872-1002<br>Email: idizengoff@akingump.com<br>      apreis@akingump.com<br>      mhurley@akingump.com<br>      sbrauner@akingump.com<br><br>*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.* |