DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.,* | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**COVER SHEET TO THE FIRST INTERIM APPLICATION OF DAVIS POLK &
WARDWELL LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR THE PERIOD FROM SEPTEMBER 15, 2019
THROUGH JANUARY 31, 2020**

In accordance with Rule 2016-1 of the Local Rules of Bankruptcy Procedure,

incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in the*

*Southern District of New York Bankruptcy Cases* [General Order M-447], among other

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

guidelines (the "**Local Guidelines**") and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel for the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), submits this summary (this "**Summary**") of fees and expenses sought as actual and necessary in the fee application to which this Summary is attached (the "**Application**") for the period of September 15, 2019 through January 31, 2020 (the "**Fee Period**").

| *General Information* | |
| --- | --- |
| **Name of Applicant:** | Davis Polk & Wardwell LLP |
| | Counsel to the Debtors and Debtors in Possession |
| **Authorized to Provide Services to:** | Purdue Pharma L.P., *et al*. |
| **Petition Date:** | September 15, 2019 |
| **Retention Date:** | November 25, 2019 *nunc pro tunc* to September 15, 2019 |
| **Date of Order Approving Retention:** | November 25, 2019 [ECF No. 542] |
| *Summary of Fees and Expenses Requested for the Compensation Period* | |
| **Time Period Covered by This Application:** | September 15, 2019 through January 31, 2020 |
| **Total Compensation Requested:** | $24,058,793.30 |
| **Total Expenses Requested:** | $289,721.70 |
| **Total Compensation and Expenses Requested:** | $24,348,515.00 |

| *Summary of Past Requests for Compensation and Prior Payments* | |
|---|---|
| **Compensation Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $19,247,034.64 |
| **Expenses Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $289,721.70 |
| **Total Compensation and Expenses Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $19,536,756.34 |

| *Summary of Rates and Other Related Information for the Compensation Period* | |
|---|---|
| **Blended Rate in This Application for All Partners, of Counsel, and Associates:** | $1,080.70 |
| **Blended Rate in This Application for All Timekeepers:** | $965.82 |
| **Number of Professionals Included in This Application:** | 129 |
| **Difference Between Fees Budgeted and Compensation Sought for This Period:** | N/A |
| **Number of Professionals Billing Fewer Than 15 Hours During This Period:** | 33 |
| **Increase in Rates Since Date of Retention:** | The compensation period includes a customary annual rate increase for all time keepers which occurred on January 1, 2020, as disclosed on the Court docket at ECF No. 703. |

This is a(n):            ___ monthly            _x_ interim            ___ final application

### Summary of Prior Monthly Fee Statements of Davis Polk & Wardwell LLP

| Period Covered and ECF No. | Total Fees Requested | Total Expenses Requested | Total Fees and Expenses Requested | Fees Paid | Expenses Paid | Total Balance Remaining to be Paid |
|---|---|---|---|---|---|---|
| 9/15/2019 – 9/30/2019 ECF No. 551 | $3,159,539.00 | $90,233.31 | $3,249,772.31 | $2,527,631.20 | $90,233.31 | $631,907.80 |
| 10/1/2019 – 10/31/2019 ECF No. 552 | $6,376,028.00 | $63,836.07 | $6,439,864.07 | $5,100,822.40 | $63,836.07 | $1,275,205.60 |
| 11/1/2019 – 11/30/2019 ECF No. 648 | $5,328,228.80 | $53,802.60 | $5,382,031.40 | $4,262,583.04 | $53,802.60 | $1,065,645.76 |
| 12/1/2019 – 12/31/2019 ECF No. 648 | $4,055,568.75 | $40,256.15 | $4,095,824.90 | $3,244,455.00 | $40,256.15 | $811,113.75 |
| 1/1/2020 – 1/31/2020 ECF No. 873 | $5,139,428.75 | $41,593.57 | $5,181,022.32 | $4,111,543.00 | $41,593.57 | $1,027,885.75 |

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**FIRST INTERIM APPLICATION OF DAVIS POLK & WARDWELL LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD FROM SEPTEMBER 15, 2019 <u>THROUGH JANUARY 31, 2020</u>**

Pursuant to sections 327, 330, and 331 of chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases* [General Order M-447], among other guidelines (the "**Local Guidelines**"), The United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel for the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), submits this *First Interim Application for Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from September 15, 2019 Through January 31, 2020* (this "**Application**"). By this Application, Davis Polk seeks allowance of compensation for actual and necessary professional services rendered for the Debtors in the total amount of $24,058,793.30, and for reimbursement of actual, necessary disbursements that Davis Polk incurred in connection with such services in the total amount of $289,721.70, for an aggregate total of $24,348,515.00 during the period of September 15, 2019 through January 31, 2020 (the "**Fee Period**").

## Jurisdiction

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.      On September 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 18, 2019, the Court entered an order [ECF No. 59] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.  On September 27, 2019, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 131].

4.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to facilitate effective administration of these chapter 11 cases are set forth in the *Debtors' Informational Brief* [ECF No. 17].

5.      On November 21, 2019, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

## The Debtors' Retention of Davis Polk

6.      On November 25, 2019, the Court entered the *Order Approving Application of Debtors for Authority to Employ and Retain Davis Polk & Wardwell LLP as Attorneys for the Debtors Nunc Pro Tunc to the Petition Date* [ECF No. 542] (the "**Retention Order**"), authorizing Davis Polk's retention by the Debtors.  The Retention Order attached hereto as **Exhibit B** and incorporated by reference allows the Debtors to compensate and reimburse Davis

Polk in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Guidelines, and the Interim Compensation Order.

7.      The Retention Order also authorizes the Debtors to compensate Davis Polk at its hourly rates charged for services of this type and for the firm's actual, necessary expenses incurred in connection such services rendered during the Fee Period.  Among other things, it permits Davis Polk to render the following services:

a.      prepare, on behalf of the Debtors, all necessary or appropriate motions, applications, objections, replies, answers, orders, reports and other papers in connection with the administration of the Debtors' estates;

b.      counsel the Debtors with regard to their rights and obligations as debtors in possession, and their powers and duties in the continued management and operation of their businesses and properties;

c.      provide advice, representation and preparation of necessary documentation and pleadings and taking all necessary or appropriate actions in connection with statutory bankruptcy issues, strategic transactions, asset sale transactions, real estate, intellectual property, employee benefits, tort, commercial and governmental litigation, and corporate and tax matters;

d.      take all necessary or appropriate actions to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved and the preparation of objections to claims filed against the Debtors' estates;

e.      take all necessary or appropriate actions in connection with any chapter 11 plan, all related disclosure statements, all related documents and such further actions as may be required in connection with the administration of the Debtors' estates; and

f.      act as restructuring counsel for the Debtors and performing all other necessary or appropriate legal services in connection with the chapter 11 cases.

## Compensation Paid and Its Sources

8.      All services during the Fee Period for which compensation is requested by Davis Polk were performed for or on behalf of the Debtors.  Additionally, Davis Polk has not received any payment or promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with matters covered by this Fee Application.   A certification confirming Davis Polk's compliance with the Fee Guidelines is annexed hereto as **Exhibit A**.

9.      To the extent that billable time or disbursement charges for services rendered or expenses incurred relate to the Fee Period, but were not processed prior to the preparation of this Fee Application, Davis Polk reserves the right to request compensation for such services and reimbursement of such expenses in a future fee application.

10.      These professional services were rendered by Davis Polk's partners, counsel, associates and paraprofessionals from its various practice groups, including restructuring, litigation, corporate, intellectual property, executive compensation and benefits, and tax.

## Summary of Professional Compensation and Reimbursement of Expenses Requested

11.      During the Fee Period, Davis Polk's professionals and paraprofessionals expended a total of 24,910.2 hours in connection with providing necessary services.  Davis Polk has been able to efficiently provide services by utilizing the expertise of professionals and paraprofessionals within relevant practice groups to effectively advise the Debtors regarding discrete issues and ensuring that the level of seniority is commensurate with the assignment. Davis Polk, in connection with services rendered on behalf of the Debtors, respectfully requests allowance of reasonable compensation of such services rendered in the total amount of $24,058,793.30 and reimbursement of actual and necessary expenses incurred in the amount of $289,721.70, for an aggregate total of $24,348,515.00 for the Fee Period.  Annexed hereto as

5

**Exhibit C** is a list of Davis Polk Professionals and paraprofessionals, their position with the firm, the department in which the individual practices, the hourly rate charged for their services, the number of hours worked on this matter, and other pertinent information. **Exhibit D** annexed hereto is a list of the various categories and the total fees and total hours expended by subject matter category. Davis Polk maintains computerized, detailed time records of services rendered by its professionals and paraprofessionals. The detailed records for this Fee Period were appended to Davis Polk's Monthly Fee Statements. Davis Polk engaged in ongoing discussions with the Debtors regarding budgeting and staffing issues. Annexed hereto as **Exhibit E** is Davis Polk's staffing plan in connection with services rendered to the Debtors.

### Case Status

12.     On the Petition Date, the Debtors filed voluntary petitions for Purdue Pharma L.P. and 23 other Debtors. The commencement of these proceedings involved the preparation and filing of numerous substantive and procedural "first day" pleadings, as well as the *Debtors' Informational Brief* [ECF No. 17], which laid out the complex nature of these cases and the Herculean undertaking that would be required in order for the Debtors to reach a global resolution. After extensive negotiations with critical stakeholders and, when necessary, hearings before the Court, the Debtors were able to obtain all of their requested first-day relief on a final basis. This relief has enabled the Debtors to continue to operate successfully and to preserve the value of the Debtors' enterprise while in chapter 11.

13.     Certain of the Debtors have been named in over 2,700 civil actions pending in various state and federal courts and other fora across the United States and its territories (the "**Pending Actions**"). It was critical for the Debtors to secure a preliminary injunction at the outset of these cases in order to craft and implement a value-maximizing, and hopefully consensual, resolution that will inure to the benefit of creditors and many other critical

stakeholders.  After two lengthy hearings, the Court granted the Debtors' request for preliminary

injunction through April 8, 2020.[2]  The Debtors currently have a motion pending to extend this

vital preliminary injunction until October 5, 2020.

14.    Given the complexity and high profile of these cases, the Debtors have also

worked diligently with key stakeholders, including the UCC, the ad hoc committee of

governmental and other contingent litigation claimants (the "**Ad Hoc Committee**")[3] and the Ad

Hoc Group of Non-Consenting States (the "**Non-Consenting States Group**")[4] in order to be

responsive to each of their concerns and to build consensus on as many issues as possible.  Part

of this effort has involved carefully crafting an information sharing framework that balances the

need to provide stakeholders with appropriate diligence materials while also preserving the

confidential nature of such materials.

15.    In October 2019, the Debtors reached agreements with two key stakeholders that

have facilitated and guided information sharing since.  First, on October 8, 2019, the Debtors

finalized a term sheet with Ad Hoc Committee whereby the Debtors committed to sharing of

certain diligence information with the Ad Hoc Committee [ECF No. 257].  Second, on October

11, 2019, the Debtors entered into a stipulation with Beacon Company and Rosebay Medical

Company L.P. (together with Beacon Company, "**Shareholder Parties**"), and the UCC that

provided for, among other things, the sharing of certain diligence materials between the parties

[ECF No. 291].  However, appropriate protections were necessary to enable the Debtors to fulfill

---

[2] The Preliminary Injunction was initially entered on October 11, 2019, became final on November 6, 2019, *see* Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion For a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Nov. 6, 2019) [ECF No. 105], and has been subsequently amended. The currently operative preliminary injunction order was entered on March 4, 2020. *See* Seventh Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. March 4, 2020) [ECF No. 145].
[3] The Bankruptcy Rule 2019 statement for the Ad Hoc Committee is filed at ECF No. 279.
[4] The Bankruptcy Rule 2019 statement for the Non-Consenting State Group is filed at ECF No. 296.

their commitment to produce the voluminous diligence requested by various key constituencies in these cases. On January 28, 2020, after months of negotiations with a multitude of stakeholders, the Court approved an agreed form of protective order governing the disclosure of diligence and discovery materials in these cases [ECF No. 784]. The Debtors have produced tens of thousands of pages of documents to date and continue to address frequent additional requests, often on an expedited basis.

16. The Debtors have also advanced the interests of their estates through the considerable work performed at the direction of the Special Committee of the Debtors' Board of Directors. In late October 2019, the Debtors finalized and published a 356-page report cataloging all cash distributions and other payments may by the Debtors to or for the benefit of members of the Sackler Families since January 1, 2008. This report was filed in slightly redacted form on the Court docket on December 16, 2019 [ECF No. 654].

17. Moreover, at the direction and on behalf of the Special Committee, Davis Polk has undertaken a robust investigation and analysis of potential claims by the Debtors against members of the Sackler family and their associated companies and trusts. A primary focus of the Special Committee's investigation to date has been evaluating potential claims for, among other things, intentional and constructive fraudulent transfers, including for cash and non-cash transfers of value made by the Debtors at the direction and for the benefit of the Debtors' equityholders, as well as alter ego, veil-piercing and breach of fiduciary duty. To aid the Special Committee in its investigation, the Debtors have engaged AlixPartners to conduct an additional forensic analysis of all intercompany and non-cash transfers made by or between the Debtors to the Sackler family and/or their associated companies and trusts between 2008 and September 15, 2019, and are also being assisted by Bates White in assessing the terms of those transactions and

transfers.    Davis Polk, AlixPartners, and Bates White have thus far collectively devoted 26,630 hours to the Special Committee investigation.

18.    Recently, the Debtors were able to obtain entry of an *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [ECF No. 800] (the "**Bar Date Order**").    Although ultimately uncontested, the Bar Date Order and the related carefully-designed, extensive, and in many ways unprecedented noticing program were the products of months-long, good-faith discussions with the UCC, the Ad Hoc Committee, the Non-Consenting States Group and multiple other key constituencies, where parties often disagreed.

19.    Pursuant to the *Order (I) Shortening Notice with Respect to Debtors' Motion for Authorization to Enter into Development Agreement and (II) Authorizing Entry into Development Agreement* [ECF No. 868], the Debtors also secured authorization to enter into a development agreement (the "**Development Agreement**"), enabling the Debtors to develop and distribute a nalmefene autoinjector product which can be effective against certain cases of synthetic opioid overdose and addresses a need where existing treatments have proven to be ineffective.    The development of such potentially life-saving opioid overdose reversal medications represents an important step by the Debtors in their transformation into a public benefit corporation that will advance meaningful solutions to the opioid crisis.

20.    In addition, the Debtors have worked to retain a monitor in these cases to, among other things, review and certify compliance with the unprecedented voluntary injunction that the Debtors requested the Court enter in connection with Debtors' motion for a preliminary injunction.    After a thorough search process that included the consideration of over 20 candidates proposed by various creditor constituencies, as well as candidates identified by the Debtors

themselves, the Debtors announced on February 21, 2020 that they retained former Iowa Governor and former United States Secretary of Agriculture Thomas J. Vilsack to serve as monitor.

21.    The Debtors' efforts during the Fee Period have laid the groundwork for productive discussions in furtherance of the global settlement structure.  For instance, the Debtors and the creditor constituencies are now in a position to mediate the critical issue of allocation between the non-federal public claimants, on the one hand, and the private claimants, on the other.  On March 4, 2020, the Court entered an order approving the appointment of the Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators to facilitate the allocation discussions.  *See Order Appointing Mediators* [ECF No. 895]. The Debtors and the creditor constituencies will meet with the mediators over the course of the following weeks in order to establish a consensual and robust framework for the mediation going forward.

22.    As the foregoing summary demonstrates, the Debtors have accomplished a great deal in the first four months of these cases, and continue to make progress on a number of different fronts.

<u>**Summary of Services Rendered**</u>

23.    During the Fee Period, Davis Polk provided extensive and critical professional advice and other services, involving complex, novel issues involved in resolving the disparate interests of the diverse stakeholder groups in these chapter 11 cases.  These services were rendered often on an urgent basis, within a limited time frame.  Summaries of significant services described above are detailed below in accordance with Davis Polk's internal system of project categories:

<u>Asset Dispositions</u>
Fees: $14,702.00, Total Hours: 12

- Under this project category, Davis Polk assisted the Debtors with issues related to the disposition and acquisition of assets, among other things.  Specifically, Davis Polk:

  - Participated in numerous calls and meetings with the Debtors, their advisors and other parties in interest regarding the structure of potential sale transactions; and

  - Researched and analyzed issues related to asset sales and drafted motions and related documents for the same.

<u>Automatic Stay/Preliminary Injunction/Litigation/DOJ</u>
Fees: $6,049,607.50, Total Hours: 6,226.6

- Under this project category, Davis Polk assisted the Debtors with issues arising in conjunction with (i) activities related to the preliminary injunction; (ii) activities related to the enforcement of the automatic stay and of the preliminary injunction; (iii) defensive litigation efforts, including, among other things, activities related to various omnibus hearings, motion practice and oral arguments related to the *Debtors' Motion to Assume the Prepetition Reimbursement Agreement with the Ad Hoc Committee* [ECF No. 394] (the "**Ad Hoc Committee Fee Motion**") and a lift-stay motion, activities related to potential litigation between the Debtors and contractual counterparties, and activities related to potential litigation regarding the appointment of an examiner; (iv) potential litigation of discovery/diligence issues, including in particular negotiation of the protective order; and (v) issues related to ongoing discussions with the Department of Justice (the "**DOJ**").

  - With respect to the preliminary injunction:

    - Obtained Court approval of the preliminary injunction over multiple objections from numerous creditors and creditor groups.  Prepared and filed adversary complaint seeking a preliminary injunction of prepetition litigation facing the Debtors against hundreds of defendants.  Drafted and filed supporting motion papers, attorney declarations, financial advisor declarations, and exhibits.  Drafted responsive papers to numerous objections to the Preliminary Injunction Motion.  Noticed, prepared for, and defended multiple depositions in support thereof;

    - Communicated with Prime Clerk LLC ("**Prime Clerk**") regarding notice and service issues for a proceeding involving hundreds of parties;

    - Prepared for multiple preliminary injunction hearings, including drafting arguments and preparing witnesses for cross-examination.  Communicated with counsel for related parties regarding hearing strategy.  Engaged with various parties to resolve outstanding issues

in advance of hearings.  Reviewed and analyzed hearing transcripts;

- Engaged with parties with respect to the terms of the preliminary injunction order and the protective order governing related discovery.  Produced and propounded discovery related to the preliminary injunction;

- Negotiated the terms of the Debtors' voluntary injunction with various parties, including the Debtors' tort counsel and various creditor groups;

- Drafted, filed, and obtained Court approval of six preliminary injunction orders; and

- Researched and analyzed appellate issues, and advised the Debtor on appellate strategy.  Reviewed and analyzed notice of appeal and appellate filings by Arkansas and Tennessee plaintiffs.  Drafted response to motion for leave to appeal.  Began the process of drafting response papers on the merits.

o  With respect to the defense of the automatic stay and the preliminary injunction:

- Advised the Debtors and Debtors' tort counsel regarding a responsive strategy for violations of the automatic stay and preliminary injunction;

- Tracked, reviewed, and responded to letters and court filings by various parties in violation of the automatic stay;

- Reviewed, researched, and analyzed various stay- and preliminary-injunction-violation issues as they arose, including complaints filed after the petition date, continued litigation after the preliminary injunction order was entered, and additional service issues;

- Communicated with various creditors and counsel, including counsel for related parties, regarding potential violations of the automatic stay and preliminary injunction;

- Advised the Debtors regarding a responsive strategy to Arizona's original action in the Supreme Court of the United States.  Reviewed amicus brief filed by the State of Ohio in the Supreme Court action.  Drafted and filed an Objection to Arizona's action, an attorney declaration, and a letter to this Court.  Communicated with co-counsel and opposing counsel regarding the filing; and

- Engaged with Canadian co-counsel with respect to proceedings in Canada.  Advised the Debtors regarding the same.

o  With respect to defensive litigation efforts:

- Drafted arguments for various hearings, including but not limited to the September 17, 2019 First Day Hearing, October 10, 2019 Second Day Hearing, October 11, 2019 Preliminary Injunction Hearing,

November 6, 2019 Preliminary Injunction Hearing, November 19, 2019 Omnibus Hearing, December 19, 2019 Omnibus Hearing, and January 24, 2020 Omnibus Hearing. Prepared materials for oral argument for the same. Prepared witnesses for various hearings, including hearings in which no witnesses were ultimately called. Communicated with Debtors' other counsel, including tort counsel and regulatory counsel, on hearing strategy. Advised on strategy regarding various issues that could have potential litigation consequences;

- Reviewed and analyzed objections and other filings by creditors. Advised the Debtors on responsive strategy. Prepared materials for oral argument on the same;

- Prepared support for Ad Hoc Committee Fee Motion in response to opposition from another creditor group, including preparation for and defense of the declarant's deposition and related witness prep;

- Reviewed and analyzed letter sent to the U.S. Trustee and Bankruptcy Court requesting the appointment of an examiner. Advised the Debtors on responsive strategy. Researched related issues. Drafted responsive documents. Communicated with relevant interested parties regarding the request for an examiner;

- Engaged with the Debtors and other counsel to the Debtors on potential litigation disputes with a number of contractual counterparties. Advised the Debtors on strategy in response to the same. Drafted and negotiated common interest agreements; and

- Engaged with Debtors' insurance counsel regarding potential for motions to lift the automatic stay. Researched and analyzed related issues. Advised the Debtors on a strategy for responding to motions to lift the automatic stay. Drafted objection to the *Ironshore Specialty Insurance Company's Motion for Relief from Stay* [ECF No. 712]. Prepared for hearing on the same.

o With respect to potential litigation of discovery/diligence issues:

- Researched issues related to discovery and diligence in anticipation of drafting and negotiating a protective order. Engaged with creditors, including state attorneys general, on the terms of a protective order and the scope of discovery and diligence.

o With respect to DOJ issues:

- Advised the Debtors on ongoing negotiations with the DOJ. Prepared presentations and other materials for, and communicated with, the DOJ. Communicated with the Debtors' financial advisor regarding requests from the DOJ.

13

Bar Date/Estimation/Claims/Allowance Issues
Fees: $2,473,219.00, Total Hours: 2,459.6

- Under this project category, Davis Polk assisted the Debtors with the analysis, negotiation and preparation of materials related to the bar date motion, as well as issues related to the estimation, allowance and settlement of claims, among other things.  Specifically, Davis Polk:
    - Conducted legal research and factual diligence on a wide variety of claims-related issues, including estimation, allowance, allocation, settlement and mediation thereof, to assess the Debtors' options for resolving and exiting these chapter 11 cases;
    - Consulted with and responded to inquiries from the Debtors, the UCC and other stakeholders regarding the foregoing.
    - Negotiated, researched and developed, drafted, filed and obtained Court approval of *Debtors' Motion for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [ECF No. 717];
    - Coordinated and consulted with the Debtors' Court-appointed claims and noticing agent, Prime Clerk, regarding claims issues, the bar date, proof of claim forms, bar date notices, and publication notice;
    - Coordinated and prepared for discussions with the Debtors, the UCC, and other creditor constituencies regarding claims allocation; and
    - Researched, developed, and began drafting the *Debtors' Motion for Entry of an Order Appointing Mediators* [ECF No. 855].

Corporate Governance, Board Matters and Communications
Fees: $706,563.00, Total Hours: 637.3

- Under this project category, Davis Polk assisted the Debtors with analysis and advice regarding corporate governance issues, the review and preparation of corporate documents and interaction with the press, among other things. Specifically, Davis Polk:
    - Discussed with the Debtors' management, its Board, investment bankers, financial advisors and other parties in interest matters related to intercompany issues and coordinated corresponding workstreams;
    - Prepared for and attended meetings of the Board;
    - Corresponded and communicated with the press and public relations firms;
    - Advised, prepared materials for, and participated in numerous meeting and calls with the Board and various Debtors' committees, including on issues regarding the process to transfer the Debtors' assets to a public benefit trust, pending litigation, and general chapter 11 case status and strategy;

14

- o Drafted and reviewed various governance documents for the Board and various Debtors' committees including minutes, resolutions, secretary certificates, shareholder and director consents, articles and by-laws; and

- o Conducted research and advised the Debtors with respect to various public filings, disclosure requirements, audits, examinations, inquiries and other issues.

Creditor/UCC/AHC Issues
Fees: $3,059,624.50, Total Hours: 2,712.1

- Under this project category, Davis Polk assisted the Debtors with coordinating and communicating with creditors, including the UCC, the Ad Hoc Committee and the Non-Consenting States Group on a variety of issues.  Specifically, Davis Polk:

  - o Prepared, reviewed, and revised materials for, corresponded with, and participated in meetings with the UCC, the Ad Hoc Committee and the Non-Consenting States Group regarding all aspects of the chapter 11 cases, including the diligence review process, the various stipulations and term sheets with supporting and opposing creditors, the protective order, and diligence requests;

  - o Reviewed an extensive number of diligence requests from various creditor groups, and coordinated with the Debtors, their in-house electronic discovery team and external vendors to provide information, answers, summaries and documents responsive to the various requests;

  - o Prepared, drafted, revised, and corresponded with counsel from supporting and opposing creditors regarding the settlement term sheet, diligence stipulations and the protective order;

  - o Provided information, analyses and presentations to the UCC's advisors prior to filing various pleadings relating to general business initiatives and responded to inquiries and comments; and

  - o Participated on numerous calls and coordination meetings with the Debtors and their advisors to formulate strategies for responding to requests from the UCC, Ad Hoc Committee and Non-Consenting States Group.

Cross border/International Issues
Fees: $102,496.00, Total Hours: 84

- Under this project category, Davis Polk assisted the Debtors with issues related to proceedings in foreign jurisdictions, among other things.  Specifically, Davis Polk:

  - o Prepared, negotiated and reviewed motions and pleadings filed in ancillary proceedings in Canada;

  - o Attended hearings and conferences in Canada;

  - o Coordinated and managed foreign proceedings, and monitored critical dates

> and case workstreams in order to facilitate effective progress;
>
> o Conducted regular conferences and calls with foreign counsel and parties in interest.

Equityholder/IAC Issues
Fees: $183,456.80, Total Hours: 126.7

- Under this project category, Davis Polk assisted the Debtors with the analysis of issues concerning the Debtors' equityholders and independent associated companies ("**IACs**").  Specifically, Davis Polk:

  o Attended and participated in numerous meetings with counsel for the equityholders on issues including shareholder diligence, confidentiality agreements, and settlement structures;

  o Attended discussions and meetings with shareholder counsel and counsel for other parties in interest regarding the shareholders' filing of a presentation to the court docket; and

  o Conducted research and analysis of potential asset sale transactions involving IACs.

Customer/Vendor/Lease/Contract Issues
Fees: $534,322.50, Total Hours: 487.3

- Under this project category, Davis Polk assisted the Debtors with issues related to the Debtors' customers and vendors, negotiations with lease and contract parties and preparation of pleadings and litigation regarding the Debtors' commercial agreements, among other things.  Specifically, Davis Polk:

  o Advised and strategized with the Debtors' management and other advisors regarding critical vendors issues and processes to stabilize the business and ensure uninterrupted operations;

  o Prepared and reviewed various pleadings to enter into new commercial agreements and pleadings regarding the assumption, assignment or rejection of certain executory contacts and unexpired leases;

  o Conducted extensive research and reviewed and analyzed numerous executory and other contracts, leases, and agreements in response to inquiries from the Debtors and the Debtors' other advisors; and

  o Conducted various conferences and negotiations with contractual counterparties and parties in interest, including the UCC, the Ad Hoc Committee and the Non-Consenting States Group, regarding certain executory contracts and commercial leases, and potential commercial transactions.

Employee/Pension Issues
Fees: $1,675,023.50, Total Hours: 1,475.1

- Under this project category, Davis Polk assisted the Debtors with the review and analysis of employee-related issues including compensation, bonuses, incentive plans, severance, insurance benefits and retirement plan issues, among other things. Specifically, Davis Polk:
  - Obtained Court authorization to satisfy employee-related obligations, including:
    - Drafted and obtained Court approval of the contested wages relief over the course of multiple hearings;
    - Drafted and revised multiple replies and declarations (including declarations of the Debtors' Chief Financial Officer and the Debtors' compensation consultant, Willis Towers Watson) in support of the wages motion;
    - Reviewed and discussed diligence materials on compensation programs, including Wills Towers Watson's report on employee compensation programs, with the Debtors and their advisors;
    - Attended and participated in numerous meetings with the Debtors, the UCC, the U.S. Trustee, the Ad Hoc Committee, the Non-Consenting States Group and various other parties in interest regarding the objections and responses to the Debtors' wages motion and obtaining consensual resolution on critical components of the Debtors' employee plans; and
  - Advised the Debtors on questions and issues related to executive compensation issues, personnel related matters, the Pension Benefit Guaranty Corporation (the "**PBGC**"), Department of Labor 401(k) plan audits, and related regulatory filings.

General Case Administration
Fees: $2,022,144.50, Total Hours: 2,337.9

- Under this project category, Davis Polk assisted the Debtors with general matters related to case administration, including case coordination, case calendaring, the filing of court papers, and attending hearings. Specifically, Davis Polk:
  - Prepared for and attended:
    - The First Day Hearing on September 17, 2019
    - The Second Day Hearing on October 10, 2019
    - The Preliminary Injunction Hearing on October 11, 2019
    - The Preliminary Injunction Hearing on November 6, 2019
    - The Omnibus Hearing on November 19, 2019

- ▪ The Wages Motion Hearing on December 4, 2019
- ▪ The Omnibus Hearing on December 19, 2019
- ▪ The Omnibus Hearing on January 24, 2020;

- o Prepared for, coordinated, and attended weekly internal meetings on case status in order to develop and efficiently manage workstreams;

- o Maintained a critical dates calendar for clients and co-advisors and reviewed and distributed filings on the Court's docket to the Debtors' advisors and internal teams;

- o Prepared and revised various first day pleadings, including motions related to cash management, critical vendors and insurance; and

- o Drafted and filed numerous court papers related to case administration, including the case management order, the motion to extend the removal deadline, notices of hearing dates and adjournments, electronics device orders, and hearing agendas.

Non-DPW Retention and Fee Issues
Fees: $351,895.00, Total Hours: 353.30

- • Under this project category, Davis Polk assisted the Debtors with the preparation of retention materials, disclosures and fee applications for the Debtors' non-Davis Polk professionals. Specifically, Davis Polk:

- o Researched, drafted, and obtained Court authorization to retain professionals in the ordinary course;

- o Attended multiple calls and corresponded with the Debtors and the Debtors' other professionals regarding the retention process;

- o Coordinated with nearly one hundred different professionals on the filing of their retention applications, affidavits, questionnaires, and declarations in support thereof; and

- o Reviewed objections and drafted responses to contested professional retention applications.

Non-Working Travel
Fees: $84,549.00, Total Hours: 118.8

- • This project category includes time attributable to non-working travel, which is billed at less than full hourly rates. Specifically, this travel included:

- o Non-working travel to and from White Plains for multiple hearings;

- o Non-working travel to and from Toronto in connection with a Canadian court proceeding; and

- o Non-working travel to and from the offices of the Debtors and other parties in interest.

Support Agreement/Plan/Disclosure Statement
Fees: $893,685.00, Total Hours: 898.4

- Under this project category, Davis Polk assisted the Debtors with issues related to the Debtors' plan of reorganization and the creation of an emergency relief fund, among other things.  Specifically, Davis Polk:

    o Prepared, drafted and revised a potential plan term sheet to be negotiated with the UCC and other stakeholders;

    o Conducted extensive research and reviewed and analyzed numerous legal precedents regarding plan structure considerations and strategies in response to inquiries from the Debtors;

    o Prepared and revised pleadings related to the plan exclusivity period;

    o Prepared and revised a restructuring support agreement; and

- Advised the Debtors on establishing an emergency relief fund including conducting various negotiations with creditors and other parties in interest and preparing related pleadings.

DPW Retention/Preparation of Fee Statements/Applications Budget
Fees: $457,952.00, Total Hours: 713.9

- Under this project category, Davis Polk assisted the Debtors with issues related to Davis Polk's retention, including the preparation and review of Davis Polk's monthly fee applications.  Specifically, Davis Polk:

    o Drafted and obtained Court authorization for the Davis Polk retention application, including responding to objections thereto;

    o Drafted and prepared monthly fee applications for the months of September, October, November, and December of 2019; and

    o Internally coordinated and reviewed over five hundred pages of time entries for privilege and confidentiality.

IP, Regulatory and Tax
Fees: $750,057.00, Total Hours: 671.1

- Under this project category, Davis Polk assisted the Debtors with intellectual property and tax issues, among other things.  Specifically, Davis Polk:

    o Drafted, reviewed, and advised Debtors in connection with a variety of intellectual property and commercial agreements, including licenses, development agreements, and patent assignment agreements;

    o Conducted due diligence on Debtor's intellectual property portfolio and prepared memoranda and other summaries regarding such due diligence. Attended various meetings and calls with the debtors and outside intellectual property counsel regarding such due diligence; and

  o Advised and performed analysis on tax issues, including reviewing trust structures and transactions and conducting research on tax treatment and filing requirements.

Special Committee/Investigation Issues
Fees: $4,699,496.00, Total Hours: 5,596.1

- Under this project category, Davis Polk assisted and advised the Special Committee of the Debtors' Board of Directors (the "**Special Committee**"). Specifically, Davis Polk:

  o Investigated and assessed potential claims against the Debtors' equityholders, including members of the Sackler Family and their associated companies and trusts, including, but not limited to, potential claims for fraudulent conveyances, alter ego and veil-piercing, and breach of fiduciary duty;

  o Reviewed, supervised, and assisted AlixPartners' forensic analyses of all cash and non-cash distributions, payments, and/or transfers made by or between the Debtors to the Sackler Family, or entities owned by or operated for the benefit of the Sackler Family, for the period spanning January 1, 2008 to September 15, 2019;

  o Reviewed, supervised, and assisted Bates White's transfer pricing analysis of all non-cash distributions and transfers identified by AlixPartners between the Debtors and the Sackler Family, or entities owned by or operated for the benefit of the Sackler Family;

  o Provided information and/or presentations to the Special Committee and various third parties, including the UCC and its advisors, regarding the scope and status of the Special Committee's investigation into potential claims held by the Debtors; and

  o Advised the Special Committee on issues concerning the indemnification of the Debtors' employees and other issues within its mandate.

**<u>Actual and Necessary Expenses</u>**

24. As set forth in **<u>Exhibit F</u>** hereto, Davis Polk has incurred or disbursed $289,721.70 in expenses in providing professional services to the Debtors during the Compensation Period. These expense amounts are intended to cover Davis Polk's direct operating costs, which costs are not incorporated into the Davis Polk hourly billing rates. Only clients for whom the services are actually used are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would unfairly impose

additional costs upon clients who do not require extensive photocopying, delivery, and other services. Davis Polk charges all of its bankruptcy clients $0.10 per page for photocopying and printing job expenses. On several occasions, overnight delivery of documents and other materials were required as a result of circumstances necessitating the use of such express services.

25.    Regarding providers of online legal research (e.g., LexisNexis and Westlaw), Davis Polk charges all of its clients the standard usage rates these providers charge, which, due to contractual flat fees, may not always equal Davis Polk's actual cost. Davis Polk currently is under contract to pay these providers a flat fee every month. Charging its clients the online providers' standard usage rates allows Davis Polk to cover adequately the monthly flat fees it must pay to these types of providers.

26.    Davis Polk has made every effort to minimize its expenses in the Chapter 11 Cases. The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and other parties in interest.

### Davis Polk's Requested Compensation and Reimbursement Should Be Allowed

27.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered … and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

21

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including –

(a)    the time spent on such services;

(b)    the rates charged for such services;

(c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

28.    The foregoing professional services were performed by Davis Polk in an efficient manner, were necessary and appropriate to the administration of the Chapter 11 Cases, and were in the best interests of the Debtors, their estates, and other parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved.  As required by the U.S. Trustee guidelines, annexed hereto as **Exhibit G** is a chart setting forth the comparative blended rates of the professionals and paraprofessionals who rendered services with a corresponding comparison of rates for professionals and paraprofessionals not involved in these chapter 11 cases.

## Notice

29.    The Debtors will provide notice of this Application in accordance with the Interim Compensation Order.  The Debtors submit that no other or further notice be given.

[*Remainder of Page Left Blank Intentionally*]

WHEREFORE, Davis Polk, in connection with services rendered on behalf of the Debtors, respectfully requests allowance of reasonable compensation of such services rendered in the total amount of $24,058,793.30 and reimbursement of actual and necessary expenses incurred in the amount of $289,721.70, for an aggregate total of $24,348,515.00 for the Fee Period.


Dated:    March 16, 2020
          New York, New York


DAVIS POLK & WARDWELL LLP

By:    */s/ Marshall S. Huebner*_____

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors and Debtors in Possession*