AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SUMMARY COVER SHEET TO THE FIRST INTERIM FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., ET AL.,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF
SEPTEMBER 26, 2019 THROUGH AND INCLUDING JANUARY 31, 2020**

In accordance with the Local Bankruptcy Rules for the Southern District of New York,

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Unsecured Creditors of Purdue Pharma L.P. and its affiliated debtors and debtors in possession submits this summary (the "Summary") of fees and expenses sought as actual, reasonable and necessary in the fee application to which the Summary is attached (the "Application")[2] for the period from September 26, 2019 through and including January 31, 2020 (the "Compensation Period").

Akin Gump submits the Application as its first interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order").

| *General Information* | |
|---|---|
| Name of Applicant: | Akin Gump |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.* |
| Petition Date: | September 15, 2019 |
| Retention Date: | November 21, 2019, *nunc pro tunc* to September 26, 2019 |
| Prior Applications: | 0 |

| *Summary of Fees and Expenses Sought in this Application* | |
|---|---|
| Time Period Covered by this Application: | September 26, 2019 through and including January 31, 2020 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $9,838,245.00 |

---

[2] Capitalized terms used but not defined in the Summary shall have the meanings ascribed to such terms in the Application.

| | |
|---|---|
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $165,733.29 |
| Total Compensation and Expenses Requested for the Compensation Period: | $10,027,790.97 |

### Summary of Fees, Professionals, Rates and Budget in this Application

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | N/A |
| Total Expenses Approved by Interim Order to Date: | N/A |
| Total Allowed Compensation Paid to Date: | N/A |
| Total Allowed Expenses Paid to Date: | N/A |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees for the period from September 26, 2019 through and including November 30, 2019):[3] | $3,897,944.80 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses for the period from September 26, 2019 through and including November 30, 2019): | $73,445.43 |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $3,971,390.23 |

---

[3] As of the date of this Application, Akin Gump has filed fee statements for, but has not yet received compensation or reimbursement of expenses for, the period of December 1, 2019 through and including January 31, 2020. Akin Gump anticipates that it will receive 80% of the fees requested and 100% of the expenses requested in such fee statements before the hearing on this Application. If such fees and expenses are paid as anticipated, as of the date of the hearing on this Application the total compensation sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $7,889,646.14, the total expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $165,733.29, the total compensation and expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $8,055,379.43 and the total compensation and expenses sought in this Application not yet paid will be $1,972,411.54.

| | |
|---|---|
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $6,056,400.74 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $379,744.02[4] |

| *Summary of Fees and Expenses Sought in this Application* | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $910.82 |
| Blended Rate in this Application for All Timekeepers: | $844.37 |
| Number of Timekeepers Included in this Application: | 85 (68 attorneys; 17 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 20 |
| Increase in Rates Since Date of Retention: | 1[5] |
| Interim or Final Application: | Interim |

---

[4] Akin Gump voluntarily reduced its fees and expenses by the following amounts: (i) $362,267.00 for fee reductions applied prior to the filing of the applicable Monthly Fee Statement and (ii) $17,477.02 for expense reductions applied prior to the filing of the applicable Monthly Fee Statement. Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

[5] Akin Gump increased its rates on January 1, 2020, consistent with its customary practice and as disclosed in the Akin Retention Application.

## SUMMARY OF MONTHLY FEE STATEMENTS

| ECF Number | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid | Total Unpaid |
|---|---|---|---|---|---|---|
| 736 | 9/29/19–10/31/19 | $2,674,553.00 | $44,481.58 | $2,139,642.40 | $44,481.58 | $534,910.60 |
| 812 | 11/1/19–11/30/19 | $2,197,878.00 | $28,963.85 | $1,758,302.40 | $28,963.85 | $439,575.60 |
| 904 | 12/1/19–12/31/19 | $1,864,770.00 | $23,812.68 | $0.00 | $0.00 | $1,888,582.68 |
| 926 | 1/1/20–1/31/20 | $3,101,044.00 | $68,475.18 | $0.00 | $0.00 | $3,169,519.18 |
| **Totals** | | **$9,838,245.00** | **$165,733.29** | **$3,897,944.80** | **$73,445.43** | **$6,032,588.06** |

Summary of Any Objections to Monthly Fee Statements: None

Compensation and Expenses Sought in This Application Not Yet Paid: $6,032,588.06

## COMPENSATION BY PROFESSIONAL
## SEPTEMBER 26, 2019 THROUGH AND INCLUDING JANUARY 31, 2020

| Partner | Department | Year of Admission | 2019 Rate | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Shar Ahmed | Corporate | 2001 | $965.00 | N/A | 73.80 | $71,217.00 |
| Sara Brauner | Financial Restructuring | 2011 | $1,125.00 | $1,225.00 | 530.40 | $613,190.00 |
| Paul Butler | Litigation | 1991 | $1,100.00 | $1,175.00 | 34.00 | $38,150.00 |
| Dean Chapman | Litigation | 2009 | $980.00 | $1,225.00 | 39.70 | $44,100.00 |
| Olivier De Moor | Tax | 2009 | N/A | $1,175.00 | 10.10 | $11,867.50 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,550.00 | $1,595.00 | 21.20 | $32,950.00 |
| Sophie Donnithorne-Tait | Tax | 2006 | $1,100.00 | N/A | 5.10 | $5,610.00 |
| Shawn Hanson | Litigation | 1983 | $1,060.00 | $1,135.00 | 84.70 | $91,807.00 |
| Mitchell Hurley | Litigation | 1997 | $1,305.00 | $1,595.00 | 737.30 | $1,004,980.50 |
| Stephen Kho | International Trade | 1998 | N/A | $1,135.00 | 16.30 | $18,500.50 |
| Jeffrey Kochian | Corporate | 2000 | $1,275.00 | N/A | 6.30 | $8,032.50 |
| Stuart Leblang | Tax | 1991 | N/A | $1,655.00 | 5.40 | $8,937.00 |
| Allison Miller | Corporate | 2001 | $1,250.00 | $1,350.00 | 509.50 | $643,025.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,425.00 | $1,595.00 | 749.50 | $1,096,563.50 |
| Steven Ross | Litigation | 1976 | $1,220.00 | $1,300.00 | 20.30 | $25,470.00 |
| Corey Roush | Litigation | 2000 | $1,040.00 | $1,135.00 | 34.30 | $36,755.00 |
| Robert Salcido | Health | 1989 | $1,040.00 | $1,155.00 | 56.60 | $61,497.50 |
| Seth Slotkin | Tax | 1996 | $1,120.00 | N/A | 11.80 | $13,216.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Howard Sklamberg | Health | 1996 | N/A | $1,075.00 | 13.80 | $14,835.00 |
| James Tucker | Public Law & Policy | 1999 | $1,020.00 | N/A | 5.30 | $5,406.00 |
| David Vondle | Intellectual Property | 2002 | $1,020.00 | $1,115.00 | 134.60 | $139,334.50 |
| **Partner Total:** | | | | | **3,100.00** | **$3,985,444.50** |

| Senior Counsel & Counsel | Department | Year of Admission | 2019 Rate | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Kenneth Alderfer | Tax | 1986 | $1,040.00 | $1,110.00 | 47.00 | $50,007.00 |
| Eugene Elder | Health | 1990 | $915.00 | $975.00 | 95.90 | $90,478.50 |
| Elizabeth Harris | Tax | 1987 | $1,000.00 | $1,065.00 | 85.20 | $89,067.50 |
| Angeline Koo | Litigation | 2005 | $940.00 | $1,000.00 | 285.90 | $271,320.00 |
| Holli Pryor-Baze | Litigation | 1999 | $905.00 | $965.00 | 63.10 | $57,729.50 |
| M. Todd Tuten | Public Law & Policy | N/A | $855.00 | $1,035.00 | 42.00 | $39,528.00 |
| Dennis Windscheffel | Litigation | 2004 | $905.00 | $965.00 | 128.30 | $118,145.50 |
| Christin Carey | Health | 2012 | N/A | $885.00 | 6.60 | $5,841.00 |
| Sharon Davidov | Tax | 2013 | N/A | $1,010.00 | 6.20 | $6,262.00 |
| Kristi Kirksey | Tax | 2014 | $950.00 | $985.00 | 14.40 | $13,911.00 |
| Erika Leon | Corporate | 2013 | $915.00 | N/A | 191.80 | $175,497.00 |
| Edan Lisovicz | Financial Restructuring | 2014 | $890.00 | $975.00 | 505.00 | $458,468.50 |
| Clayton Matheson | Intellectual Property | 2010 | $885.00 | $950.00 | 198.70 | $178,846.00 |
| William Mongan | Litigation | 2012 | N/A | $1,005.00 | 37.50 | $37,687.50 |
| John Murphy | Litigation | 2011 | N/A | $1,025.00 | 65.40 | $67,035.00 |

| Katherine Porter | Litigation | 2011 | $960.00 | $1,025.00 | 586.40 | $575,066.50 |
|---|---|---|---|---|---|---|
| Jillie Richards | Litigation | 2007 | $775.00 | $850.00 | 311.00 | $250,542.50 |
| Matthew Schmitten | Litigation | 2013 | N/A | $850.00 | 15.00 | $12,750.00 |
| Richard R. Williams, Jr. | Litigation | 2014 | $870.00 | $960.00 | 264.80 | $235,785.00 |
| **Senior Counsel & Counsel Total:** | | | | | **2,950.20** | **$2,733,968.00** |

| **Associate** | **Department** | **Year of Admission** | **2019 Rate** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|---|
| Jonathan Aronchick | Litigation | 2015 | $690.00 | N/A | 28.60 | $19,734.00 |
| Sudhana Bajracharya | Health | 2018 | $555.00 | N/A | 5.70 | $3,163.50 |
| Brooks Barker | Financial Restructuring | 2018 | $660.00 | $775.00 | 238.10 | $166,116.00 |
| Megi Belegu | Litigation | Not yet admitted | $540.00 | $565.00 | 215.20 | $117,910.50 |
| Richard Cochrane | Litigation | 2019 | N/A | $535.00 | 35.60 | $19,046.00 |
| Jess Coleman | Financial Restructuring | Not yet admitted | $560.00 | $615.00 | 278.30 | $161,485.50 |
| Richard D'Amato | Litigation | 2017 | $690.00 | $810.00 | 147.20 | $109,440.00 |
| Alyx Eva | Litigation | 2019 | $510.00 | $535.00 | 191.10 | $100,328.50 |
| Sanzana Faroque | Corporate | Not yet admitted | $540.00 | $565.00 | 142.50 | $77,225.00 |
| Madison Gardiner | Financial Restructuring | Not yet admitted | N/A | $615.00 | 8.70 | $5,350.50 |
| Nina Goepfert | Litigation | 2018 | $630.00 | $725.00 | 424.60 | $280,798.00 |
| Sohrab Hajarian | Intellectual Property | 2016 | $510.00 | $535.00 | 21.10 | $11,006.00 |
| Anthony Hilbert | Corporate | 2019 | N/A | $535.00 | 57.00 | $30,495.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | N/A | $535.00 | 11.30 | $6,045.50 |

| Anne Kolker | Litigation | 2017 | $555.00 | N/A | 48.30 | $26,806.50 |
|---|---|---|---|---|---|---|
| Jay Jamooji | Litigation | 2019 | $540.00 | N/A | 8.10 | $4,374.00 |
| Caroline Kessler | Health | 2019 | $510.00 | N/A | 11.10 | $5,661.00 |
| McKenzie Miller | Litigation | Not yet admitted | $510.00 | $535.00 | 472.50 | $246,092.50 |
| Rebecca Ney | Corporate | 2019 | $540.00 | N/A | 113.30 | $61,182.00 |
| Oluwaremilekun Ojurongbe | Litigation | Not yet admitted | N/A | $535.00 | 43.40 | $23,219.00 |
| Colin Phillips | Intellectual Property | 2017 | $555.00 | $650.00 | 142.30 | $87,355.50 |
| Jennifer Poon | Litigation | 2016 | $690.00 | $810.00 | 636.90 | $465,633.00 |
| Margo Rusconi | Litigation | 2019 | $510.00 | N/A | 13.60 | $6,936.00 |
| Sangita Sahasranaman | Tax | Not yet admitted | N/A | $675.00 | 16.50 | $11,137.50 |
| Theodore James Salwen | Financial Restructuring | 2017 | $660.00 | $775.00 | 438.90 | $301,576.50 |
| Kaitlyn Tongalson | Litigation | 2017 | $690.00 | $810.00 | 111.90 | $81,183.00 |
| Izabelle Tully | Litigation | Not yet admitted | $540.00 | $565.00 | 326.90 | $179,926.00 |
| Joshua Wright | Corporate | 2018 | $630.00 | N/A | 10.20 | $6,426.00 |
| **Associate Total:** | | | | | **4,198.90** | **$2,615,652.50** |

| Staff Attorneys & Paraprofessionals | Department | Year of Admission | 2019 Rate | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Ganna Anisimova | Law Clerk, Litigation | N/A | N/A | $340.00 | 154.00 | $52,360.00 |
| Brian Bevins | Research & Info Services | N/A | $265.00 | N/A | 6.30 | $1,669.50 |
| Daniel Chau | Ediscovery | N/A | $355.00 | $370.00 | 201.20 | $72,230.00 |
| Ashley Forrestier | Paralegal, Litigation | N/A | N/A | $330.00 | 10.20 | $3,366.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Michael Ginsborg | Research & Info Services | N/A | $265.00 | $285.00 | 36.20 | $9,753.00 |
| Brenda Kemp | Paralegal, Financial Restructuring | N/A | $355.00 | N/A | 92.40 | $32,802.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $395.00 | N/A | 140.80 | $55,616.00 |
| Amy Laaraj | Paralegal, Litigation | N/A | $335.00 | $350.00 | 308.50 | $105,287.00 |
| Kim La Croix | Ediscovery | N/A | $355.00 | $370.00 | 67.60 | $24,343.00 |
| Sophia Levy | Paralegal, Financial Restructuring | N/A | $235.00 | $245.00 | 72.10 | $17,108.50 |
| Jim Ma | Ediscovery | N/A | $380.00 | N/A | 25.10 | $9,538.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | N/A | $515.00 | 108.70 | $55,980.50 |
| Alondra Munoz | Paralegal, Litigation | N/A | $205.00 | N/A | 7.30 | $1,496.50 |
| Lauren O'Brien | Consultant, Public Law & Policy | N/A | $600.00 | $625.00 | 62.50 | $38,380.00 |
| W. Matt Pinkney | Trial Services | N/A | $195.00 | $205.00 | 87.40 | $17,677.00 |
| Bennett Walls | Paralegal, Litigation | N/A | $205.00 | N/A | 7.10 | $1,455.50 |
| Doris Yen | Research & Info Services | N/A | $265.00 | $285.00 | 15.10 | $4,117.50 |
| **Staff Attorneys and Paraprofessionals Total:** | | | | | **1402.50** | **$503,180.00** |
| **Total Hours / Fees Requested:** | | | | | **11,651.60** | **$9,838,245.00** |

## TOTAL FEES FOR THE COMPENSATION PERIOD

| Professionals | Blended Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|
| Partners | $1,285.63 | 3,100.0 | $3,985,444.50 |
| Senior Counsel & Counsel | $926.71 | 2,950.2 | $2,733,968.00 |
| Associates | $622.94 | 4,198.9 | $2,615,652.50 |
| Staff Attorneys & Paraprofessionals | $358.77 | 1,402.5 | $503,180.00 |
| **Blended Attorney Rate** | **$910.82** | | |
| **Blended Rate for All Timekeepers** | **$844.37** | | |
| **Total Hours / Fees Requested:** | | **11,651.6** | **$9,838,245.00** |

## COMPENSATION BY PROJECT CATEGORY
## SEPTEMBER 26, 2019 THROUGH AND INCLUDING JANUARY 31, 2020

| Task Code | Matter | Total Hours Billed | Total Value ($) |
|---|---|---|---|
| 2 | General Case Administration | 159.00 | $118,037.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 252.50 | $176,314.50 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 896.00 | $749,588.50 |
| 5 | Review/Preparation of Schedules, Statements | 5.90 | $4,649.00 |
| 6 | Retention of Professionals | 478.50 | $335,400.00 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 1,020.00 | $1,090,531.00 |
| 8 | Hearings and Court Matters/Court Preparation | 344.40 | $359,747.50 |
| 9 | Financial Reports and Analysis | 1.80 | $1,721.50 |
| 11 | Executory Contract/Lease Issues | 18.20 | $21,923.50 |
| 12 | General Claims Analysis/Claims Objections | 866.80 | $788,658.00 |
| 13 | Analysis of Pre-Petition Transactions | 5,241.80 | $3,981,660.00 |
| 14 | Insurance Issues | 421.50 | $405,013.50 |
| 16 | Automatic Stay Issues | 133.10 | $128,561.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 625.80 | $638,045.00 |
| 18 | Tax Issues | 79.90 | $87,620.50 |
| 19 | Labor Issues/Employee Benefits | 69.00 | $75,198.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 266.50 | $217,833.50 |
| 21 | Exclusivity | 0.30 | $292.50 |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 24.50 | $16,960.00 |
| 24 | Real Estate Issues | 1.80 | $2,205.00 |
| 25 | Travel Time | 20.30 | $21,442.00 |
| 28 | General Corporate Matters | 436.30 | $320,343.50 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | 1.20 | $930.00 |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | 1.70 | $1,773.00 |
| 31 | Business Operations | 120.60 | $133,704.50 |
| 32 | Intellectual Property | 164.20 | $160,092.00 |
| **Total Fees Requested:** | | **11,651.60** | **$9,838,245.00** |

## EXPENSE SUMMARY
### SEPTEMBER 26, 2019 THROUGH AND INCLUDING JANUARY 31, 2020

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $29,282.64 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $77,770.56 |
| Computerized Legal Research - Westlaw - Out of Contract | $330.45 |
| Computerized Legal Research - Courtlink - In Contract 50% | $281.18 |
| Computerized Legal Research - Other | $3,555.88 |
| Courier Service/Messenger Service - Off Site | $284.09 |
| Professional Fees - Consultant Fees | $6,243.73 |
| Document Retrieval | $8,342.50 |
| Departmental Consulting | $6,687.50 |
| Duplication - In House | $3,952.80 |
| Filing Fees | $600.00 |
| Meals - Overtime | $331.98 |
| Meals - Business | $64.25 |
| Meals - 100% | $4,036.77 |
| Miscellaneous | $95.01 |
| Overtime - Admin Staff | $1,903.57 |
| Postage | $172.90 |
| Research | $530.75 |
| Refund Expenses | $1,258.28 |
| Telephone - Long Distance | $603.00 |
| Transcripts | $10,676.28 |
| Travel - Airfare | $778.51 |
| Travel - Ground Transporation | $5,521.30 |
| Travel - Lodging (Hotel, Apt, Other) | $323.68 |
| Travel - Trainfare | $268.00 |
| Travel - Parking | $86.00 |
| Local Transportation - Overtime | $1,751.28 |
| **Total Expenses Requested:** | **$165,732.89** |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- :
                                                                :
In re:                                                          :   Chapter 11
                                                                :
PURDUE PHARMA L.P., *et al*.,                                   :   Case No. 19-23649 (RDD)
                                                                :
                                    Debtors.[6]                 :   (Jointly Administered)
                                                                :
--------------------------------------------------------------- :

**FIRST INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD
LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF PURDUE PHARMA L.P., ET AL., FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
OF SEPTEMBER 26, 2019 THROUGH AND INCLUDING JANUARY 31, 2020**

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Purdue Pharma, L.P. and its affiliated debtors and

---

[6] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard,
Stamford, CT 06901.

debtors in possession (collectively, the "<u>Debtors</u>"), hereby submits its first application (the "<u>Application</u>"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Bankruptcy Rules</u>"), requesting interim allowance of compensation for services rendered to the Committee for the period of September 26, 2019 through and including January 31, 2020 (the "<u>Compensation Period</u>") and for reimbursement of expenses incurred in connection therewith.   In support of this Application, Akin Gump submits the declaration of Arik Preis, a partner at Akin Gump (the "<u>Preis Declaration</u>"), which is attached hereto as **<u>Exhibit A</u>** and incorporated by reference into this Application.   In further support of this Application, Akin Gump respectfully states as follows.

## <u>INTRODUCTION</u>

1.      By this Application, Akin Gump seeks: (i) interim allowance of compensation for the professional services rendered by Akin Gump during the Compensation Period in the amount of $9,838,245.00, representing 10,249.1 hours of professional services and 1,402.5 hours of paraprofessional and other non-legal services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in the amount of $165,733.29.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "<u>Interim Compensation Order</u>"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "<u>Local</u>

Guidelines") and the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. 36248, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Co-Chairs (as defined below) of the Committee have been given the opportunity to review this Application and have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. Approval of this Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

**A.      The Debtors' Chapter 11 Cases**

7.      On September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On September 26, 2019 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated

3

September 27, 2019 [ECF No. 131]. The Committee currently comprises nine members and two *ex officio* members.[7] Blue Cross and Blue Shield Association and Ryan Hampton serve as co-chairs of the Committee (the "Co-Chairs").

**B.     Retention of Akin Gump**

9.       On the Formation Date, the Committee selected Akin Gump as its legal counsel. On November 5, 2019, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Purdue Pharma L.P. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel, Nunc Pro Tunc to September 26, 2019* [ECF No. 421] (the "Akin Retention Application"), which was granted by an order of this Court dated November 21, 2019 [ECF No. 522] (the "Akin Retention Order").[8]

10.      The Akin Retention Order authorizes the Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to September 26, 2019, all as contemplated by the Akin Retention Application. The Akin Retention Order further authorizes Akin Gump to be

---

[7] The Committee comprises the following members: (i) Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services L.L.C. and CaremarkPCS Health L.L.C.; (iii) Cheryl Juaire; (iv) Kara Trainor; (v) LTS Lohmann Therapy Systems Corporation; (vi) Pension Benefit Guaranty Corporation; (vii) Ryan Hampton; (viii) Walter Lee Salmons; and (ix) West Boca Medical Center, plus two *ex officio* members, Cameron County, Texas on behalf of the Multi-State Governmental Entities Group and the Cheyenne and Arapaho Tribes, on behalf of certain Native American Tribes and Native American-affiliated creditors.

[8] The Committee selected Bayard, P.A ("Bayard") to serve as its "efficiency" counsel, Province, Inc. ("Province") to serve as its financial advisor, Jefferies LLC ("Jefferies") to serve as its investment banker, Kurtzman Carson Consultants LLC ("KCC") to serve as its information agent, and KPMG LLP ("KPMG") to serve as joint tax consultant to the Committee and the Debtors on September 29, 2019, October 1, 2019 and October 4, 2019, November 1, 2019, and December 23, 2019, respectively. Orders authorizing the retention of Bayard [ECF No. 523], Province [ECF No. 524], Jefferies [ECF No. 526] and KCC [ECF No. 527] were entered on November 21, 2019, and an order authorizing the retention of KPMG was entered on February 24, 2020 [ECF No. 867]. As disclosed in the *Notice of Change of Firm and Substitution of Counsel*, dated March 6, 2020 [ECF No. 900], following the close of the Compensation Period, Justin Alberto, who was serving as the primary attorney for the Committee at Bayard, resigned as a director at Bayard and became a member of the law firm of Cole Schotz P.C. ("Cole Schotz"). On February 24, 2020, the Committee engaged Cole Schotz as substitute efficiency counsel, subject to approval by the Court. The Committee anticipates filing an application to retain and employ Cole Schotz in this capacity in the near future.

4

compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

## C.    Monthly Fee Statements

11.    On January 10, 2020, Akin Gump filed and served the *First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 26, 2019 Through October 31, 2019*, dated January 10, 2020 [ECF No. 736] (the "First Monthly Fee Statement"),[9] pursuant to which Akin Gump sought payment of (i) $2,139,642.40 (80% of $2,674,553.00) as compensation for professional services rendered and (ii) $44,481.58 for reimbursement of expenses.  Akin Gump did not receive any objections to its First Monthly Fee Statement and received payment in respect thereof on February 10, 2020.

12.    On February 7, 2020, Akin Gump filed and served the *Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 Through November 30, 2019*, dated February 7, 2020 [ECF No. 812] (the "Second Monthly Fee Statement"),[10] pursuant to which Akin Gump sought payment of (i) 1,758,302.40 (80% of $2,197,878.00) as compensation for professional services rendered and (ii) $28,963.85 for reimbursement of expenses.  Akin Gump did not receive any objections to the Second Monthly Fee Statement and received payment in respect thereof on March 2, 2020.

---

[9] A copy of the First Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzIzMjY4&id2=0.

[10] A copy of the Second Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzI4MTk2&id2=0.

13.     On March 10, 2020, Akin Gump filed and served the *Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2019 Through December 31, 2019* [ECF No. 904] (the "Third Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $1,491,816.00 (80% of $1,864,770.00) as compensation for professional services rendered and (ii) $23,812.68 for reimbursement of expenses.  As of the filing of this Application, Akin Gump has not received any objections to the Third Monthly Fee Statement.

14.     On March 13, 2020, Akin Gump filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 Through January 31, 2019* [ECF No. 926] (the "Fourth Monthly Fee Statement," and together with the First Monthly Fee Statement, Second Monthly Fee Statement and Third Monthly Fee Statement, the "Monthly Fee Statements"),[12] pursuant to which Akin Gump sought payment of (i) $2,480,835.20 (80% of $3,101,044.00) as compensation for professional services rendered and (ii) $68,475.18 for reimbursement of expenses.  As of the filing of this Application, Akin Gump has not received any objections to the Fourth Monthly Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

15.     By this Application, Akin Gump requests allowance of interim compensation for professional services rendered to the Committee during the Compensation Period in the amount of

---

[11] A copy of the Third Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM2OTgz&id2=0.

[12] A copy of the Fourth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4MzE3&id2=0.

$9,838,245.00 and expense reimbursements of $165,733.29.[13]  During the Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 11,651.60 hours for which compensation is sought.

16.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

17.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code against budgeted fees and hours is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services for the Committee during the Compensation Period have been filed and served with the Monthly Fee Statements in accordance with the Interim Compensation Order.

---

[13] Akin Gump voluntarily reduced its fees and expenses by the following amounts: (i) $362,267.00 for fee reductions applied prior to the filing of the applicable Monthly Fee Statement and (ii) $17,477.02 for expense reductions applied prior to the filing of the applicable Monthly Fee Statement.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

7

18.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

19.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

**SUMMARY OF SERVICES PERFORMED BY
AKIN GUMP DURING THE COMPENSATION PERIOD**

20.     The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Committee and commensurate with the complexity and significance of the matter.  Moreover, the variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Committee's needs and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

21.     The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

22.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed. Rather, it merely is an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the matters and issues that Akin Gump was required to address during the Compensation Period.

A.      **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|---|---|
| 159.0 | $118,037.50 |

23.     This category includes time spent by Akin Gump professionals and paraprofessionals performing various general administrative tasks necessary to the Committee's involvement in the Chapter 11 Cases, including among other things: (i) maintaining service and distribution lists; (ii) monitoring the docket for these Chapter 11 Cases to track filings and to remain apprised of critical dates; (iii) reviewing and analyzing pleadings and other documents filed by the Debtors and other parties in interest; (iv) ensuring that the appropriate parties are notified of filed documents, relevant objection and response deadlines, hearing dates and other critical dates; (v) communicating with the members of the Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters; and (iv) performing other necessary general administrative tasks.

24.     During the Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss when various motions and applications would be filed and the type of information the Committee would require to analyze each motion or application properly and in a timely manner. Akin Gump also consulted with Bayard, Province and Jefferies multiple times each day with respect to documents and other

9

information received from the Debtors, their representatives and other parties in interest. Akin Gump professionals and paraprofessionals also monitored the docket for the Chapter 11 Cases to remain apprised of all critical matters. For each significant filing, Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto. Further, in connection with motions and applications filed by the Debtors and other parties in the Chapter 11 Cases, Akin Gump analyzed and conducted diligence with respect to the subject matter of the motion or application to determine, among other things, the effect the relief requested would have on the Debtors, their creditors and the administration of the Chapter 11 Cases. Akin Gump's analysis and diligence efforts included: (i) reviewing underlying documentation and litigation related to the applicable motion or application; (ii) meeting with or holding conference calls with representatives of the Debtors and third parties in an effort to achieve amicable resolutions of the issues involved; and (iii) working with the Committee's other advisors to ensure that the Committee understood the effects the requested relief would have on the Debtors' estates and creditors. Due to Akin Gump's experience counseling official committees of unsecured creditors, Akin Gump believes it was able to address all issues relating to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.    Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|:---:|:---:|
| 252.5 | $176,314.50 |

25.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the preparation of Akin Gump's monthly fee statements and fee applications. During the compensation period, these efforts included ensuring that the

10

schedules attached to the First Monthly Fee Statement complied with the Fee Guidelines, and that such schedules did not contain information that was privileged, confidential or subject to attorney work product protection.  Akin Gump professionals and paraprofessionals also began preparing the Second Monthly Fee Statement, which was filed after the close of the Compensation Period. To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Monthly Fee Statements, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

## C.    Analysis of Other Professionals' Fee Applications/Reports (Task Code 4)

| Total Hours | Fees |
|---|---|
| 896.0 | $749,588.50 |

26.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements submitted to the Court by other estate-compensated professionals.  Akin Gump reviewed such fee statements to ensure that such professionals operated in accordance with their individual mandates and sought reasonable compensation and reimbursement of expenses in connection with their roles in the Chapter 11 Cases.  This category also includes time spent assisting the Committee's other professionals in reviewing, finalizing and filing their respective monthly fee statements.

27.    During the Compensation Period, Akin Gump professionals and paraprofessionals also spent significant time analyzing the *Debtors' Motion to Assume the Prepetition Reimbursement Agreement with the Ad Hoc Committee, and to Pay the Fees and Expenses of the Ad Hoc Committee's Professionals*, dated October 29, 2019 [ECF No. 394] (the "CAHC Fee Motion").  Pursuant to the CAHC Fee Motion, the Debtors sought authority to assume a prepetition agreement to pay the fees and expenses of four law firms and two other advisory firms on behalf

11

of an ad hoc committee of governmental entities (the "CAHC") supporting the Debtors' proposed settlement framework (the "Settlement Framework")[14] for resolving the Chapter 11 Cases. *See Debtors' Informational Brief*, dated September 16, 2019 [ECF No. 17] (the "Informational Brief") at 6. Specifically, Akin Gump professionals worked closely with the Committee's other professionals to analyze the factual and legal bases for the relief sought by the CAHC Fee Motion and the reasonableness of the compensation contemplated to be paid to the advisors to the CAHC. Akin Gump professionals shared their analysis with the members of the Committee and discussed the matter during several Committee calls.

28.    Ultimately, while the Committee welcomed the CAHC's participation in the Chapter 11 Cases, the Committee concluded that: (i) in light of the limited support among the Debtors and the creditor body as a whole for the Settlement Framework, the commitment by the CAHC to support the Settlement Framework was not the type of consideration for which estate compensation is appropriate, particularly in light of the number of professionals sought to be retained on behalf of the CAHC; (ii) the fees sought to be paid to the six firms advising the CAHC could become excessive; and (iii) the professionals for the CAHC were likely to engage in certain tasks, including tasks related to the allocation of value between various classes of contingent litigation claimants, the costs of which should not be borne by the Debtors' estates. In light of these concerns, Akin Gump professionals engaged in extensive discussions with the Debtors' and CAHC's professionals in an attempt to reach consensus. Unfortunately, however, these negotiations were not successful. Thus, Akin Gump professionals spent time researching and drafting the *Objection of the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,*

---

[14] The Settlement Framework is described in detail in the *Summary Term Sheet* among the Debtors and the CAHC. *See Noticing of Filing of Term Sheet with Ad Hoc Committee*, dated October 8, 2019 [ECF No. 257].

*et al. to Debtors' Motion to Assume the Prepetition Reimbursement Agreement with the Ad Hoc*

*Committee, and to Pay the Fees and Expenses of the Ad Hoc Creditors' Committee's Professionals*,

dated November 14, 2019 [ECF No. 472] (the "CAHC Fee Objection").

29.     Following the filing of the CAHC Fee Objection, Akin Gump professionals

simultaneously continued negotiations and discussions with the Debtors' and CAHC's

professionals and prepared for a possible evidentiary hearing on the CAHC Fee Motion.   In

connection therewith, Akin Gump professionals deposed John James O'Connell III, a partner at

PJT Partners LP who submitted a declaration in support of the Debtors' proposed assumption of

the fee arrangement with the CAHC, and conducted diligence regarding the facts and

circumstances surrounding the Debtors' entry into the fee agreement, including analyzing the

CAHC's membership and bylaws.   As a result of the Committee's continued efforts to negotiate a

consensual resolution, the Debtors and the CAHC agreed to a number of concessions to the

proposed fee arrangement that were reflected in a revised proposed order filed with the Court.

30.     Ultimately, the Court granted the CAHC Fee Motion at the November 19, 2019

hearing, subject to the changes reflected in the revised proposed order and certain additional

requirements, including: (i) conditioning payment for work in respect of allocation issues on the

Court's approval of a restructuring support agreement that includes within it a credible proposal

for the ERF (as defined below);[15] (ii) limiting compensation in respect of the prepetition fees and

expenses of the CAHC's professionals to $1.5 million; and (iii) requiring the CAHC's advisors to

submit requests for compensation in the same manner as estate-retained professionals.   *See Order*

---

[15] *See* Hr'g Tr. (Nov. 19, 2019) at 166:25-167:6.

*Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals*, dated December 2, 2019 [ECF No. 553] at 4.

**D.    Retention of Professionals (Task Code 6)**

| Total Hours | Fees |
|:---:|:---:|
| 478.5 | $335,400.00 |

31.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with various professional retention matters including, among other things: (i) preparing the Akin Retention Application; (ii) assisting Bayard [ECF No. 422], Province [ECF No. 423], Jefferies [ECF No. 425], KCC [ECF No. 426] and KPMG [ECF No. 815] with the preparation and filing of their retention applications; and (iii) analyzing the 11 applications for the proposed retention of advisors to the Debtors pursuant to Bankruptcy Code section 327(e).  With respect to each retention application for the Debtors' professionals, Akin Gump or Bayard prepared a summary of the key terms of the proposed engagement along with a recommended course of action for the Committee.

32.    This category also includes time spent by Akin Gump analyzing the Debtors' proposed retention of certain professionals employed in the ordinary course of business (the "Ordinary Course Professionals").  *See Motion of Debtors for Authority to Employ Professionals Used in the Ordinary Course of Business* Nunc Pro Tunc *to the Petition Date*, dated September 26, 2019 [ECF No. 128].  The Debtors sought to retain 101 Ordinary Course Professionals, and Akin Gump professionals, in coordination with the Committee's other advisors, negotiated several caps and limitations on payments to the Ordinary Course Professionals, including, among other things, an aggregate overall case cap of $25 million on such payments.[16]

---

[16] The changes negotiated by the Committee to the terms of the Debtors' proposed retention of the Ordinary Course Professionals are reflected in the redline included as an exhibit to the revised proposed order granting the OCP Motion,

33.      In addition, in the interest of minimizing the expenses of the Chapter 11 Cases, the Committee proposed that the Committee and the Debtors jointly retain and employ KPMG to serve as tax consultants with respect to the disposition of the Debtors' assets and certain potential transactions involving the Debtors' non-debtor affiliates, including the potential sale of any companies owned or controlled by shareholders of the Debtors (the "IACs") as contemplated under the Settlement Framework.    As such, this category includes time spent by Akin Gump professionals, in coordination with the Committee's other professionals, negotiating with the Debtors and KPMG regarding the terms of KPMG's retention and later assisting in the preparation and filing of a joint application to retain KPMG, which was filed shortly after the close of the Compensation Period.    *See Application for Order Authorizing Employment and Retention of KPMG LLP as Tax Consultants to the Debtors and the Official Committee of Unsecured Creditors* Nunc Pro Tunc *to December 23, 2019*, dated February 7, 2020 [ECF No. 815].

E.      **Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|---|---|
| 1020.0 | $1,090,531.00 |

34.      This category includes time spent by Akin Gump professionals and paraprofessionals: (i) preparing for and participating in meetings and conference calls with the Committee as a whole or with individual members of the Committee, including bi-weekly conference calls with the full Committee; (ii) communicating with the Committee's other advisors on a day-to-day basis regarding pending matters and case strategy; (iii) attending meetings on behalf of the Committee, such as the meeting of creditors held pursuant to Bankruptcy Code

---

which was filed by the Debtors on November 18, 2019. *See Order Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date*, dated November 18, 2019 [ECF No. 513-2] at 5.

section 341 on November 5, 2019; (iv) responding to inquiries from individual unsecured creditors; and (v) attending to other general Committee matters, including drafting the Committee's bylaws.

35.     The Committee played a very active role in the Chapter 11 Cases during the Compensation Period, and Akin Gump, together with the Committee's other professionals, held no fewer than 29 telephonic meetings with the full Committee during the Compensation Period, in addition to numerous telephonic conferences with individual Committee members.  Prior to each biweekly telephonic meeting with the full Committee, Akin Gump professionals reviewed pending matters, prepared an agenda describing issues requiring the Committee's attention and coordinated with the Committee's other advisors regarding such matters.  In addition, Akin Gump professionals prepared and/or assisted the Committee's other professionals in preparing detailed memoranda and presentations for the Committee addressing pertinent matters in the Chapter 11 Cases.  During such meetings, Akin Gump assisted the Committee in fulfilling its statutory duty to exercise informed judgment regarding the various issues arising in the Chapter 11 Cases and assisted the Committee in formulating positions with respect to significant matters.  Akin Gump also sent daily email updates to the Committee to ensure the Committee remained apprised of relevant matters.

36.     Akin Gump professionals and paraprofessionals devoted a significant number of hours to these tasks during the Compensation Period in order to ensure that the Committee was prepared to make informed decisions with respect to significant case issues.  Although such tasks do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated the Committee's participation in the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

37.     In view of the numerous issues requiring the Committee's attention in these cases, and in an effort to conserve estate resources, the Committee organized subcommittees to address certain specific issues and work streams arising the Chapter 11 Cases.  For example, the Committee formed a subcommittee to address the creation of the $200 million emergency relief fund (the "ERF" and such subcommittee, the "ERF Subcommittee") contemplated by the *Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated October 11, 2019 [ECF No. 291] (as subsequently amended by the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated November 20, 2019 [ECF No. 518] (the "Case Stipulation").  As such, this category includes time spent by Akin Gump professionals in connection with the ERF, including among other things: (i) researching and analyzing potential legal and organizational structures for the ERF; (ii) soliciting views from the Debtors and various creditor constituencies regarding effective uses of ERF funds to address the opioid crisis; (iii) drafting and revising the Committee's proposal for the ERF, including related documents and schedules; (iv) reviewing and analyzing proposals for the ERF presented by the Debtors and other creditor constituencies, including the CAHC and the Non-Consenting States (as defined below) and communicating with the full subcommittee and individual members thereof regarding such proposals; and (v) engaging in discussions and negotiations with the Debtors and other creditor constituencies regarding such proposals.  In connection with the foregoing, Akin Gump professionals held several telephonic meetings with the full ERF Subcommittee and organized calls with members thereof and other stakeholders in an effort to narrow open issues and reach consensus on a proposal for the ERF that would be supported by the Debtors and all of their creditors.  As of the filing of this Application, these efforts remain ongoing.

17

38.    Finally, this category includes time spent by Akin Gump professionals, on behalf of the Committee, responding to inquiries from unsecured creditors other than the members of the Committee in order to fulfill the Committee's responsibility under Bankruptcy Code section 1102(b)(3) to "provide access to information for creditors . . . not appointed to the [C]ommittee." In connection with the foregoing, Akin Gump professionals prepared and filed a motion for authorization to establish certain procedures for sharing information with unsecured creditors, including authorization to establish a website at which creditors can receive information regarding the status of the Chapter 11 Cases.  *See Motion of the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al. for Entry of an Order Clarifying the Requirement to Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information*, dated November 1, 2019 [ECF No. 415] (the "Information Protocol Motion").[17] The Committee's website, which is maintained by KCC, provides general information about the Chapter 11 Cases to the Debtors' creditors, including information regarding case developments, key contact information and a detailed case calendar for upcoming hearings and other critical events.  During the Compensation Period, Akin Gump professionals, in coordination with KCC, established the website and updated relevant materials, including detailed case calendars.

**F.    Hearings and Court Matters/Meetings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 344.4 | $359,747.50 |

39.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the court hearings and status conferences held during the

---

[17] The Court granted the Information Protocol Motion by the *Order Clarifying the Committee's Requirement to Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information*, dated December 23, 2019 [ECF No. 699].

Compensation Period.  Akin Gump professionals participated in each of the seven hearings held before the Court during the Compensation Period.  In preparing for such hearings, Akin Gump professionals, together with the Committee's other advisors, reviewed and analyzed all issues, motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and the advisors to other parties in interest the relief requested and, as necessary, asserted the Committee's positions at such hearings.  In addition, following each hearing, Akin Gump professionals provided the Committee with summaries and analyses of the results thereof, either in written form or telephonically during the next Committee meeting.

### G.    Executory Contract/Lease Issues (Task Code 11)

| Total Hours | Fees |
|:---:|:---:|
| 18.2 | $21,923.50 |

40.    This category includes time spent by Akin Gump professionals in connection with analyzing the Debtors' executory contracts and unexpired leases.  In particular, Akin Gump professionals spent time during and after the Compensation Period reviewing the Debtors' *Motion for Entry of an Order (I) Authorizing the Rejection of Commercial Lease and (II) Granting Related Relief*, dated November 5, 2019 [ECF No. 435] (the "Princeton Lease Motion") and *Motion for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief*, dated January 31, 2020 [ECF No. 796] (the "Headquarters Lease Motion"), the latter of which contemplated the replacement of the existing leases for the Debtors' headquarters in Stamford, Connecticut with renegotiated leases that altered significant lease terms.  Specifically, during and after the Compensation Period, Akin Gump professionals analyzed carefully the legal and factual bases for the Princeton Lease Motion and the Headquarters Lease

19

Motion, engaged in discussions with the Debtors regarding their justifications for the relief sought therein and communicated with the Committee and other creditor constituencies regarding issues presented by such motions, as appropriate.

41.     Following the Compensation Period, Akin Gump negotiated the addition of language to the proposed order granting the Headquarters Lease Motion that preserves the Committee's rights to seek recovery in the future from the Debtors' shareholders and related parties in connection with the headquarters lease, thereby obviating the Committee's need to object to the motion.  The Committee also prepared a statement highlighting certain of the Committee's concerns with respect to the headquarters lease and explaining the circumstances surrounding the Committee's decision not to object to the Headquarters Lease Motion, including the inclusion of the Committee's requested language in the proposed form of order.  *See Statement of the Official Committee of Unsecured Creditors with Respect to the Motion of Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief*, dated February 17, 2020 [ECF No. 839].

**H.     General Claims Analysis/Claims Objections (Task Code 12)**

| Total Hours | Fees |
| --- | --- |
| 866.8 | $788,658.00 |

42.     This task code includes time spent by Akin Gump professionals evaluating both the merits of the vast universe of claims against the Debtors and potential approaches to addressing such claims in the Chapter 11 Cases, including allocation among various creditor constituencies of the entire value of the Debtors' estates.  Claims against the Debtors include, among others, a wide variety of contingent litigation claims, including, but not limited to, claims by personal injury

plaintiffs, hospitals, insurance ratepayers, third-party payors, health plans, states, municipalities, the United States, Native American Tribes and children born with neonatal abstinence syndrome. During the Compensation Period, Akin Gump professionals engaged in extensive factual and legal research to assess the relative strengths and weaknesses of such claims and prepared various memoranda and analyses with respect thereto. In connection with such analysis, Akin Gump professionals communicated with representatives of both public and private creditor constituencies on a regular basis to better understand the basis for such claims.

43.    In addition, Akin Gump and the Committee's other professionals worked closely with numerous other parties in interest in an effort to determine the best way to address the critical issue of the allocation of value among the various classes of litigation creditors without requiring the estates to spend substantial resources establishing the validity of claims through litigation. Among other things, Akin Gump professionals discussed with advisors for the Debtors and various creditor groups a proposal to establish a protocol for a series of presentations by such creditor groups to the advisors for the Debtors and the Committee. Such presentations would enable creditors to share their views on the strengths and weaknesses of their claims to aid the Debtors and the Committee in attempting to develop a joint proposal for the allocation of value among the Debtors' creditors.

44.    Following discussions with various creditor groups throughout the Compensation Period, however, the Committee and the Debtors agreed to postpone any such presentations in favor of commencing a global attempt to mediate allocation disputes between the Debtors' public and private litigation creditors. As such, Akin Gump attorneys worked closely with counsel to the Debtors and other parties in interest to begin formulating the details of the proposed mediation, including the scope of the mediation, the number of mediators and the format of the mediation

process. These discussions continued following the conclusion of the Compensation Period and ultimately culminated in the filing of the *Motion for Entry of an Order Appointing Mediators*, dated February 20, 2020 [ECF No. 855] (the "Mediation Motion"), which sought to appoint Kenneth R. Feinberg and the Honorable Layn R. Phillips as mediators.  The Mediation Motion was granted by order dated March 4, 2020 [ECF No. 895].

45.     In addition, this category includes time spent by Akin Gump professionals and paraprofessionals in connection with the *Debtors' Motion for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Related Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof*, dated January 3, 2020 (the "Bar Date Motion").  Given the importance of ensuring that individual claimants impacted by the Debtors' products and the opioid crisis have an adequate opportunity to assert their claims against the Debtors, Akin Gump, along with the Committee's other advisors, worked extensively with the Debtors' advisors during the Compensation Period to ensure that the Debtors' proof of claim forms were clear and accessible to creditors and that the Debtors' noticing strategy not only provided broad and robust notice to the target audience, but also delivered the message to victims in a meaningful manner.  In furtherance of this goal, the Committee established a subcommittee to focus exclusively on bar date and noticing issues (the "Bar Date Subcommittee").  During the Compensation Period, Akin Gump attorneys met telephonically with the Bar Date Subcommittee on numerous occasions to discuss the proof of claim forms to be filed by various types of creditors, the Debtors' notice strategy and the appropriate length of time before the bar date.

46.     Specifically, Akin Gump's work included numerous rounds of comments to the five proof of claim forms that were ultimately approved by the Court, including comments designed to make the proof of claim forms more streamlined and easily accessible to potential claimants.  In

late December 2019 and early January 2020, Akin Gump, on behalf of the Committee, also engaged in preliminary discussions regarding the Debtors' Supplemental Notice Plan (as defined in the Bar Date Motion) to provide notice to unknown claimants through media campaigns. Ultimately, the Debtors and the Committee agreed that the details of the Supplemental Notice Plan would be determined after the filing of the Bar Date Motion, and that the Debtors and the Committee would engage in a transparent and collaborative process regarding such plan to ensure that the Debtors' media and noticing strategy is effective, reaches as many potential claimants as reasonably practicable and complies with all applicable governmental regulations.   In connection these discussions, Akin Gump prepared the *Statement and Reservation of Rights of the Official Committee of Unsecured Creditors in Respect of the Debtors' Motion for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and manner of Notice Thereof*, dated January 21, 2020 [ECF No. 763], to make the Court aware of certain unresolved issues regarding the Debtors' noticing strategy and to preserve the Committee's right to object to certain aspects thereof, particularly as to the specific content of scripted commercials and the use of various media platforms to assist with the messaging.  The Court granted the Bar Date Motion at the hearing on January 24, 2020 and entered an order granting the motion shortly after the conclusion of the Compensation Period [ECF No. 800].

## I.    Prepetition Transactions (Task Code 13)

| Total Hours | Fees |
|---|---|
| 5,241.8 | $3,981,660.00 |

47.    This category includes time spent by Akin Gump professionals and paraprofessionals evaluating potential estate causes of action, including those against the Debtors'

shareholders and affiliated entities, arising from prepetition transfers of value from the Debtors to other entities in their ownership structure. This category also includes time related to evaluating the Debtors' proposed Settlement Framework, which contemplates a global settlement of estate and third-party causes of action against the Debtors' shareholders, including diligence regarding the IACs, the sale of which is contemplated to provide a portion of the consideration for the settlement of such claims. Conducting legal analysis and factual investigation in connection with the foregoing required significant effort on the part of Akin Gump professionals and paraprofessionals during the Compensation Period.

48.    Pursuant to the Case Stipulation, the Committee was entitled to receive significant information from the Debtors and their shareholders regarding transfers to, and the assets of, the Debtors' shareholders, including information produced by the Debtors in prepetition litigation. During the Compensation Period, Akin Gump, in conjunction with the Committee's other advisors, began reviewing voluminous documents produced by the Debtors and conducting fact discovery to assess potential causes of action on behalf of the Debtors' estates and the likelihood of success in establishing rights to recovery. As of the date of this Application, the Committee's advisors have received over 8 million documents comprising over 60 million pages, including the Debtors' productions in the multidistrict litigation pending in the United States District Court for the Northern District of Ohio under the caption *In re Nat'l Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio 2017) (the "MDL"), and other pre-petition litigations. Given the expedited timeframe under which it is operating, the Committee used document analytics and tailored searches to conduct targeted reviews of these materials.

49.    During the Compensation Period, Akin Gump professionals also drafted additional discovery requests and communicated regularly with the advisors to the Debtors and the

24

shareholder parties regarding information required for the Committee to evaluate potential estate causes of action. Such requests related to, among other things, the value of the shareholder parties' assets, including the IACs, and the extent to which the estate may be able to recover from such assets.

50.    The Committee's efforts with respect to analysis of prepetition transactions and related claims remains ongoing.

## J.    Insurance Issues (Task Code 14)

| Total Hours | Fees |
|:---:|:---:|
| 421.5 | $405,013.50 |

51.    This category includes time spent by Akin Gump professionals and paraprofessionals, in conjunction with the Committee's other advisors, investigating the scope, value and limitations of the Debtors' various insurance policies, which likely will represent a critical source of value for the Debtors' creditors. In particular, Akin Gump professionals spent time performing comprehensive analyses regarding the potential availability of insurance coverage for opioid-related claims against the Debtors, including under the Debtors' directors and officers, general liability and products liability insurance policies. In performing such analyses, Akin Gump professionals reviewed dozens of the Debtors' insurance policies and related communications between the Debtors and their insurers, which collectively total thousands of pages.

52.    In addition, Akin Gump professionals conducted research and prepared memoranda regarding numerous critical insurance-related issues, including potential limitations on the ability of the Debtors and/or unsecured creditors to obtain the benefit of coverage under such policies for the various litigation claims against the Debtors. Akin Gump professionals also held several conferences with the Debtors' insurance coverage counsel and communicated by email and

telephone with counsel to the CAHC and other creditor constituencies regarding the foregoing issues.

**K.    Automatic Stay Issues (Task Code 16)**

| Total Hours | Fees |
|:---:|:---:|
| 133.1 | $128,561.00 |

53.    This category includes time spent by Akin Gump professionals addressing matters related to the automatic stay, including primarily the *Motion for Relief from the Automatic Stay*, dated December 30, 2019 [ECF No. 712] (the "Lift-Stay Motion"), filed by Ironshore Specialty Insurance Company ("TIG").  Due to the central role the Debtors' insurance policies may play in these Chapter 11 Cases, the importance of the automatic stay (and the Preliminary Injunction, as discussed below) to the orderly progress of these proceedings and the lack of legal or factual basis for TIG's position, the Committee determined, in consultation with counsel to the Debtors, to object to the Lift-Stay Motion.  Accordingly, Akin Gump professionals spent time researching the issues presented by the Lift-Stay Motion and developing a strategy to oppose the motion.  Among other things, Akin Gump professionals communicated with the advisors for the Debtors and other creditors to coordinate their responses to the Lift-Stay Motion, reviewed and commented on the *Debtors' Objection to TIG's Motion for Relief from the Automatic Stay*, dated January 17, 2020 [ECF No. 753], and drafted and filed the *Objection of the Official Committee of Unsecured Creditors to the Motion of Ironshore Specialty Insurance Company for Relief from Automatic Stay and Joinder to the Debtors' Objection to Such Motion*, dated January 17, 2020 [ECF No. 756]. Akin Gump professionals and paraprofessionals prepared for a contested hearing on the Lift-Stay Motion, which was held on January 24, 2020.  Ultimately, following oral argument, and at the Court's suggestion, TIG agreed to adjourn the Lift-Stay Motion indefinitely.

26

L.    **Adversary Proceedings (Task Code 17)**

| Total Hours | Fees |
|:---:|:---:|
| 625.8 | $638,045.00 |

54.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the certain litigation matters, including the adversary proceeding filed by the Debtors on September 18, 2019, *Purdue Pharma L.P. v. Commonwealth of Massachusetts*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. 2019), and the *Motion for a Preliminary Injunction*, dated September 18, 2019 [Adv. Pro ECF No. 2] (the "Preliminary Injunction Motion"), which sought a temporary stay of all litigation (the "Preliminary Injunction") against the Debtors and certain of their shareholders.  The Committee, like many other parties in interest, had a number of concerns regarding the scope of the Preliminary Injunction sought by the Debtors and its potential effect on the trajectory of the Chapter 11 Cases.  Thus, immediately after the Committee was formed, Akin Gump professionals and the Committee's other advisors began negotiating with the advisors for the Debtors and their shareholders regarding the terms of an information sharing protocol pursuant to which the Committee would agree to support the Preliminary Injunction on a temporary basis in exchange for the Debtors' and their shareholders' agreement and to provide information and disclosures.  *See generally* Case Stipulation.  Akin Gump professionals also conducted legal research regarding the propriety of the Preliminary Injunction vis-à-vis both the Debtors and their shareholders and reviewed and summarized all materials filed in connection with the Preliminary Injunction Motion in order to assist the Committee in analyzing the relief requested.

55.    Ultimately, after extensive negotiations, including numerous calls and meetings with the advisors to the Debtors and their shareholders, the parties finalized and filed the Case

Stipulation hours before the hearing on the Preliminary Injunction Motion on October 10, 2019. The Case Stipulation included, among other things, a detailed schedule for the sharing of information by the Debtors and their shareholders and the Debtors' commitment to work with the Committee and other creditors to gain support for the ERF proposed by the Committee. *Id.* In connection with the foregoing, Akin Gump professionals, on behalf of the Committee, drafted and filed a statement explaining the terms on which it agreed to support the Preliminary Injunction. *See Official Committee of Unsecured Creditors' Statement in Support of Debtors' Motion for a Preliminary Injunction Pursuant to 11 U.S.C. § 105(a) and Statement in Support of Complaint for Injunctive Relief*, dated November 22, 2019 [Adv. Pro. ECF No. 79].

56.     In addition, this category includes time spent by Akin Gump professionals in connection with negotiating the *Protective Order*, dated January 28, 2020 [ECF No. 784] (the "Protective Order"), which governs the terms pursuant to which parties in interest, including Committee members and Committee professionals, have access to certain documents and information from the Debtors and other parties during the Chapter 11 Cases. Akin Gump professionals reviewed and provided comments to numerous drafts of the Protective Order, with the goal of establishing a framework that would adequately protect information while allowing for necessary disclosures to parties in these cases.

## M.     Tax Issues (Task Code 18)

| Total Hours | Fees |
|---|---|
| 79.9 | $87,620.50 |

57.     This category includes time spent by Akin Gump professionals reviewing and analyzing tax issues affecting unsecured creditors. Specifically, Akin Gump attorneys devoted significant time and effort during the Compensation Period to, among other things: (i) evaluating

potential U.S. and foreign tax consequences of a potential sale of the IACs in connection with the Debtors' proposed Settlement Framework; (ii) coordinating with the Committee's and the Debtors' joint tax advisor, KPMG, regarding ongoing tax diligence; (iii) participating in discussions related to, and evaluating, potential tax consequences of the proposed contributions from the Debtors' shareholders under the Settlement Framework; and (iv) researching and analyzing potential structures for the ERF to obtain favorable tax treatment. These efforts required extensive review of the significant tax diligence the Committee received regarding the IACs and the proposed Settlement Framework, as well as careful analysis of various parties' proposals for the ERF. In addition, Akin Gump tax professionals regularly consulted with the Committee's other professionals and communicated with the advisors to the Debtors and other interested parties regarding diligence materials and related issues.

**N.    Labor Issues/Employee Benefits (Task Code 19)**

| Total Hours | Fees |
|:---:|:---:|
| 69.0 | $75,198.00 |

58.    This category includes time spent by Akin Gump professionals in connection with labor and employee benefit issues that have arisen in the Chapter 11 Cases. During the Compensation Period, Akin Gump's efforts in this category were related primarily to the *Motion of Debtors for Entry of an Order Authorizing (I) Debtors to (A) Pay Pre-Petition Wages, Salaries, Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Employees and Retirees to Proceed with Outstanding Workers' Compensation Claims and (III) Financial Institutions to Honor and Process Related Checks and Transfers*, dated September 16, 2019 [ECF No. 6] (the "Wages Motion"). Pursuant to the Wages Motion, the Debtors sought to continue their prepetition incentive-based programs,

29

including, among other things:  (i) a performance-based annual incentive program (the "AIP"), which determines payments to eligible employees based on a combination of employee and company performance; (ii) long-term incentive plan payments; and (iii) a retention plan for approximately 100 non-executive employees.  If paid in full and the Debtors met their targets, aggregate payments under these programs would total approximately $44 million.  The United States Trustee filed an objection to the Wages Motion, dated September 27, 2019 [ECF No. 134] (the "UST Objection"), arguing that the Motion failed to provide sufficient information to discern the appropriateness of the proposed incentive programs.  The ad hoc group of non-consenting States (the "Non-Consenting States") filed a joinder to the UST Objection, dated October 3, 2019 [ECF No. 197], and additional pleadings objecting to certain aspects of the incentive programs, including the appropriateness of the proposed compensation for the Debtors' CEO, Craig Landau.

59.     Akin Gump professionals, in conjunction with the Committee's other advisors, conducted extensive diligence into the Debtors' incentive programs and reviewed and analyzed various materials provided by the Debtors in support thereof.  Specifically, the Committee's professionals engaged in numerous calls and correspondence with the Debtors' advisors in an effort to better understand the Debtors' proposal and justifications therefor.  In addition, Committee advisors and members attended an in-person presentation by the Debtors detailing certain critical aspects of the proposed incentive compensation programs.  Notwithstanding these communications, the Committee had significant concerns regarding the relief requested by the Wages Motion.

60.     In an effort to address the Committee's concerns on a consensual basis, Akin Gump began negotiating with the Debtors' professionals to reduce the payments contemplated under the incentive plans.  Ultimately, after exchanging numerous proposals, the Committee reached an

agreement with the Debtors to modify their proposed incentive plans to address the Committee's concerns, resulting in significant savings for the Debtors' estates.   The modifications negotiated by Akin Gump and the Committee's other advisors, on behalf of the Committee, included among other things: (i) approximately $10 million in savings compared to the Debtors' original proposal to continue their prepetition incentive programs (most of which savings resulted from adjustments to compensation for the Debtors' more senior-level employees); (ii) an agreement not to compensate employees for payments tied to the Debtors' performance prior to 2018, when the Debtors stopped actively marketing their opioid products; (iii) a delayed payment schedule for bonus payments during the Chapter 11 Cases, which was designed to alleviate concerns regarding attrition to the Debtors' workforce; and (iv) a "clawback" mechanism to ensure that approval of payments under the Wages Motion did not insulate recipients from liability for any past misconduct.   Akin Gump professionals also negotiated significant concessions in respect of CEO Craig Landau's compensation, reducing his 2019 incentive compensation by approximately 63%, implementing a delayed payment schedule and allowing the Debtors to recover payments if Mr. Landau is found liable for any wrongdoing in connection with the Debtors' past conduct.[18] In light of these significant modifications and the Committee's advisors' extensive analysis, the Committee determined not to object to the Wages Motion.

## O.    Interaction/Review of Other Opioid Companies and Cases (Task Code 20)

| Total Hours | Fees |
|---|---|
| 266.5 | $217,833.50 |

---

[18] *See Supplemental Final Order Authorizing (I) Debtors to (A) Pay Certain Prepetition Wages, Salaries Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Employees and Retirees to Proceed with Outstanding Workers' Compensation Claims and (III) Financial Institutions to Honor and Process Related Checks and Transfers*, dated December 9, 2019 [ECF No. 629] ¶¶ 12–13.

61.     This category includes time spent by Akin Gump professionals reviewing and analyzing developments in opioid litigation throughout the country, including reports in news articles and academic publications, to assess the potential impact of such matters on the various parties in interest in these Chapter 11 Cases.  Given the expansive scope of the opioid crisis and the various repeat players involved in litigation and/or settlement discussions in numerous jurisdictions and fora throughout the country, tracking and ensuring the Committee stays informed with respect to these developments is vital to Akin Gump's ability to adequately represent the Committee and ensure that the Committee is able to uphold its statutory duties.

62.     For example, Akin Gump professionals monitored developments in the MDL and other pending opioid litigation, including the motion of the Plaintiffs' Co-Lead Counsel, Liaison Counsel, the members of the Plaintiffs' Executive Committee in the MDL (collectively, the "PEC") to establish a "common benefit fund" to provide for the reimbursement of the fees and expenses of the PEC's advisors through a 7% assessment on any settlements or recoveries in respect of opioid-related claims brought by MDL plaintiffs and other potential creditors in these Chapter 11 Cases.  *See Amended Motion for Entry of Order Establishing Common Benefit Fund*, dated January 28, 2020 [MDL ECF No. 3112].   Akin Gump professionals had various communications with counsel to the Debtors, the PEC and the Committee and its members in order to ensure that any assessment under a common benefit fund approved in the MDL would not apply to creditor recoveries in these Chapter 11 Cases.  Tracking developments in other national opioid litigation matters was also necessary to the Committee's analysis of issues of vital importance to these cases, including allocation issues.   For example, Akin Gump professionals monitored settlement discussions among states and political subdivisions throughout the country, such as the Ohio State Attorney General's proposal for allocating the proceeds of any all-Ohio settlement among state

and local governments,[19] in order to inform the Committee's analysis of potential allocation schemes and settlement structures.

**P.    Travel Time (Task Code 25)**

| Total Hours | Fees |
|---|---|
| 20.3 | $21,442.00 |

63.    This category includes time spent by Akin Gump professionals in transit to all hearings and meetings with parties in interest that required in-person attendance on behalf of the Committee. Akin Gump has discounted this time by 50% in accordance with the Local Bankruptcy Rules and Fee Guidelines.

**Q.    General Corporate Matters (Task Code 28)**

| Total Hours | Fees |
|---|---|
| 436.3 | $320,343.50 |

64.    This category includes time spent by Akin Gump attorneys and paraprofessionals in connection with general corporate diligence matters. Specifically, during the Compensation Period, Akin Gump professionals and paraprofessionals conducted general corporate diligence regarding the Debtors' businesses and reviewed public filings and confidential materials made available to the Committee's advisors under the Protective Order.

**R.    Business Operations (Task Code 31)**

| Total Hours | Fees |
|---|---|
| 120.6 | $133,704.50 |

65.    This category includes work performed by Akin Gump professionals with respect to ongoing review and analysis of the Debtors' business operations and performance, including

---

[19] *See, e.g.*, Dave Yost, CINCINNATI ENQUIRER, *Unified front will get the best deal from opioid lawsuits* (March 2, 2020) (encouraging local Ohio governments to agree to "One Ohio" proposal in which 30% of any all-Ohio settlement (including state and local government claims) would go directly to the states and 55% would go to a charitable foundation to spend in local communities).

the Debtors' business plan. During the Compensation Period, Akin Gump professionals, in conjunction with the Committee's other advisors, analyzed issues related to the Debtors' businesses in the context of the unique posture of these Chapter 11 Cases in which the Debtors propose to turn over the full value of their enterprise to creditors and transition into a public benefit corporation. The Debtors' proposed transition into a public benefit corporation through certain public health initiatives, as contemplated under the Settlement Framework,[20] has required—and continues to require—significant diligence by the Committee and its professionals. These efforts have assisted—and will continue to assist—the Committee in evaluating whether to support the Debtors' vision of the future of Purdue.

66.     This category also includes time spent by Akin Gump professionals in connection with the appointment of a monitor to oversee the Debtors' compliance with their obligations under the voluntary self-injunction. *See Seventh Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated March 4, 2020 [Adv. Pro. ECF No. 143] at 7 and App'x 1. During the Compensation Period, Akin Gump professionals reviewed the qualifications of several candidates for the monitor position, participated in interviews and communicated extensively with the Committee and advisors to the Debtors and other parties in interest regarding the appropriate candidate for the position. Ultimately, these efforts culminated in the selection of former United States Secretary of Agriculture Tom Vilsack, which the Debtors announced publicly at the February 21, 2020 omnibus hearing.

67.     Finally, this category includes time spent by Akin Gump professionals in connection with *The States' Notice of Public Health Information to Protect Purdue Patients*, dated

---

[20] The Debtors' proposed public health initiatives are described in detail in the Informational Brief.

December 9, 2019 [ECF No. 630] (the "Public Health Notice").  During the Compensation Period, Akin Gump professionals communicated with advisors to the Debtors, the Non-Consenting States and other creditor constituencies regarding the concerns presented by the Public Health Notice and researched and analyzed issues in connection therewith.

S.      **Intellectual Property (Task Code 32)**

| Total Hours | Fees |
| --- | --- |
| 164.2 | $160,092.00 |

68.     This task code includes time spent by Akin Gump professionals and paraprofessionals in connection with analyzing the Debtors' patents, license agreements, intercompany intellectual property arrangements and related intellectual property issues. Specifically, during the Compensation Period, Akin Gump professionals and paraprofessionals performed diligence with respect to numerous intellectual property issues, including, among other things, issues related to patent history, exclusivity and expiration, ongoing and threatened patent litigation (and intellectual property infringement), pipeline products and related matters.  As the proposed Settlement Framework contemplates ongoing operations based on future expected revenues derived from pipeline products, the Committee's intellectual property analysis has entailed ongoing discussions with the Debtors and their advisors regarding the Debtors' businesses and operations, as well as an analysis of the proposed value of the Debtors and the IACs' patents. Additional intellectual property work performed by Akin Gump professionals during the Compensation Period centered around understanding and evaluating the license arrangements with the IACs, as well as risks associated with the IACs' intellectual property.

35

## ACTUAL AND NECESSARY DISBURSEMENTS

69.     Akin Gump seeks allowance of reimbursement in the amount of $165,733.29 for

expenses incurred during the Compensation Period in the course of providing professional services

to the Committee.  Akin Gump's disbursement policies pass through all out of pocket expenses at

actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example,

as it relates to computerized research, Akin Gump believes that it does not make a profit on that

service as a whole although the cost of any particular search is difficult to ascertain.   Other

reimbursable expenses (whether the service is performed by Akin Gump in-house or through a

third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries,

court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

70.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of,
> or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and

36

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

71.    The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotation marks omitted).

72.    In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)). The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010);

37

*In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set

forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298–99 (5th Cir. 1977)

have been adopted by most courts.[21]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y.

1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212–

13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir.

2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King

ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered

in determining a reasonable allowance of compensation").

73.     Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

> a.  <u>Time and Labor Required</u>.  Akin Gump billed a total of 10,249.1 hours of
> professional services and 1,402.5 hours of paraprofessional and other non-legal
> services during the Compensation Period.  As evidenced by this Application,
> Akin Gump professionals and paraprofessionals worked diligently and
> efficiently without unnecessary duplication of efforts throughout the
> Compensation Period.  This is especially clear when considering the nature and
> complexity of the issues that arose in the Chapter 11 Cases during the
> Compensation Period.  In particular, the Compensation Period involved many
> material issues that required a favorable resolution for the Debtors' estates and
> unsecured creditors, including, among other things, the merits and terms of the
> Preliminary Injunction Motion and the Case Stipulation, negotiations
> surrounding the Wages Motion, the disputes regarding the CAHC Fee Motion,
> diligence regarding valuation of the IACs, the appointment of a monitor,
> analysis of potential estate claims and claims against the Debtors and evaluation
> of the merits of the Settlement Framework.  Akin Gump's representation of the
> Committee has required it to balance the need to provide quality services with
> the need to act quickly and represent the Committee in an effective, efficient
> and timely manner.  Akin Gump submits that the hours spent were reasonable
> given the size and complexity of the Chapter 11 Cases, the significant—and

---

[21] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson*, with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress. *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

often urgent—legal and business issues raised and the numerous pleadings filed in the Chapter 11 Cases.

b. <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, tax, trusts and estates, insurance and other issues.  As further described herein, Akin Gump's teams of skilled practitioners assisted the Committee in analyzing, among other things, the Preliminary Injunction Motion, the CAHC Fee Motion, the various ERF proposals, potential estate claims, potential claims against the Debtors, insurance issues, the Debtors' proposed Settlement Framework and the Debtors' proposed incentive plans in connection with the Wages Motion.

c. <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the administration of the Chapter 11 Cases and benefited the Debtors and the Committee.  Due to the nature and complexity of the legal issues presented by the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax, labor and corporate transaction matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d. <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e. <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters.  Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required.  The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here.  Akin Gump's rate structure is similar to the

rate structure used by other, similar law firms that work on other, similar matters.

f.   Whether the Fee Is Fixed or Contingent.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Committee in the Chapter 11 Cases.

g.   Time Limitations Imposed by the Client or Other Circumstances.  As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines.  For example, Akin Gump and the Committee's other advisors were faced with limited time in which to evaluate the Debtors' approach to these unprecedented Chapter 11 Cases, including the need to act on the Preliminary Injunction Motion less than two weeks after the Formation Date.  Akin Gump also prepared to litigate various matters, including the CAHC Fee Motion, while simultaneously pursuing consensual modifications to the Debtors' requested relief.  The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.   Amount Involved and Results Obtained.  Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in preserving sources of recovery for the benefit of unsecured creditors.  In particular, Akin Gump's efforts in connection with, among other things, the Preliminary Injunction Motion, the ERF and the Wages Motion, along with Akin Gump's efforts to lay a foundation for consensual resolution of the intercreditor disputes in these cases, have been instrumental in preserving value for the benefit of all creditor constituencies.  Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.   Experience, Reputation and Ability of Attorneys.  Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Compensation Period, Akin Gump solicited the skill and expertise of its professionals and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump professionals have

40

actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Sears Holdings Corp., In re Insys Therapeutics, Inc., In re PG&E Corp., In re Nine West Holdings, Inc., In re iHeartMedia, Inc., In re Cumulus Media Inc., In re Avaya Inc., In re Chassix Holdings, Inc., In re Energy Future Holdings Corp., In re Dynegy Holdings, LLC, In re Nortel Networks Inc., In re Lightsquared Inc., In re Longview Power, LLC, In re Eastman Kodak Company, In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC, In re Overseas Shipholding Group, Inc., In re QCE Finance LLC, In re Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.* and many others. Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.   "Undesirability" of the Cases.  This factor is not applicable to the Chapter 11 Cases.

k.   Nature and Length of Professional Relationship.  Akin Gump has been rendering professional services to the Committee since it was selected as counsel to the Committee on September 26, 2019.

74.    For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Committee and consistently performed in a timely manner. The compensation sought in this Application is reasonable in light of the value of such services to the Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump. Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

75.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be

rendered in connection with the Chapter 11 Cases.  No prior application has been made in this

Court or in any other court for the relief requested herein as it relates to the Compensation Period.

### ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

76.     The following is provided in response to the request for additional information set

forth in ¶ C.5 of the U.S. Trustee Guidelines.

**Question**:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:     No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:     Yes.  During the Compensation Period, 190.2 hours and $132,779.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:     See above.

**Question**:     If the fee application includes any rate increases since retention:  (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your

42

client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Akin Gump disclosed to the Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2020 in the Akin Retention Application, which the Committee agreed to.

## **RESERVATION OF RIGHTS**

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

*[Remainder of Page Left Blank Intentionally]*

## **CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $9,838,245.00 and expense reimbursement in the amount of $165,733.29; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
March 16, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Arik Preis*
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al.*

## **EXHIBIT A**

**CERTIFICATION OF ARIK PREIS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

-------------------------------------------------------------------

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE
FIRST INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF SEPTEMBER 26, 2019 THROUGH AND INCLUDING JANUARY 31, 2020**

I, Arik Preis, hereby certify that:

1.       I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of the above captioned Debtors.  Akin Gump is counsel to Official Committee of Unsecured Creditors of Purdue Pharma, L.P. and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2.       In accordance with the Fee Guidelines, this certification is made with respect to the Application for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

3.    In respect of section B.1 of the Local Guidelines, I certify that:

a.    I have read the Application;

b.    to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

c.    the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

d.    in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.    In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Committee are each being provided with a copy of the Application.

Dated: New York, New York
      March 16, 2020

By: */s/ Arik Preis*      
    Arik Preis

# EXHIBIT B

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| Category of Timekeeper | Billed by NY Office for Preceding Year[1] | Billed in this Application |
| Partner | $1,318.40 | $1,285.63 |
| Senior Counsel | $971.55 | $959.91 |
| Counsel | $970.29 | $985.70 |
| Associate | $668.51 | $622.94 |
| Paraprofessional | $335.21 | $340.12 |
| All Timekeepers Aggregated | $884.54 | $844.37 |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (*i.e.*, the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending January 31, 2020.

## EXHIBIT C

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Partner | Department | Year of Admission | 2019 Rate | 2020 Rate | Total Hours Billed | Total Compensation |
|---------|-----------|-------------------|-----------|-----------|--------------------|--------------------|
| Shar Ahmed | Corporate | 2001 | $965.00 | N/A | 73.80 | $71,217.00 |
| Sara Brauner | Financial Restructuring | 2011 | $1,125.00 | $1,225.00 | 530.40 | $613,190.00 |
| Paul Butler | Litigation | 1991 | $1,100.00 | $1,175.00 | 34.00 | $38,150.00 |
| Dean Chapman | Litigation | 2009 | $980.00 | $1,225.00 | 39.70 | $44,100.00 |
| Olivier De Moor | Tax | 2009 | N/A | $1,175.00 | 10.10 | $11,867.50 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,550.00 | $1,595.00 | 21.20 | $32,950.00 |
| Sophie Donnithorne-Tait | Tax | 2006 | $1,100.00 | N/A | 5.10 | $5,610.00 |
| Shawn Hanson | Litigation | 1983 | $1,060.00 | $1,135.00 | 84.70 | $91,807.00 |
| Mitchell Hurley | Litigation | 1997 | $1,305.00 | $1,595.00 | 737.30 | $1,004,980.50 |
| Stephen Kho | International Trade | 1998 | N/A | $1,135.00 | 16.30 | $18,500.50 |
| Jeffrey Kochian | Corporate | 2000 | $1,275.00 | N/A | 6.30 | $8,032.50 |
| Stuart Leblang | Tax | 1991 | N/A | $1,655.00 | 5.40 | $8,937.00 |
| Allison Miller | Corporate | 2001 | $1,250.00 | $1,350.00 | 509.50 | $643,025.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,425.00 | $1,595.00 | 749.50 | $1,096,563.50 |
| Steven Ross | Litigation | 1976 | $1,220.00 | $1,300.00 | 20.30 | $25,470.00 |
| Corey Roush | Litigation | 2000 | $1,040.00 | $1,135.00 | 34.30 | $36,755.00 |
| Robert Salcido | Health | 1989 | $1,040.00 | $1,155.00 | 56.60 | $61,497.50 |
| Seth Slotkin | Tax | 1996 | $1,120.00 | N/A | 11.80 | $13,216.00 |
| Howard Sklamberg | Health | 1996 | N/A | $1,075.00 | 13.80 | $14,835.00 |
| James Tucker | Public Law & Policy | 1999 | $1,020.00 | N/A | 5.30 | $5,406.00 |
| David Vondle | Intellectual Property | 2002 | $1,020.00 | $1,115.00 | 134.60 | $139,334.50 |

| Partner Total: | | | | | 3,100.00 | $3,985,444.50 |
|---|---|---|---|---|---|---|
| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **2019 Rate** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
| Kenneth Alderfer | Tax | 1986 | $1,040.00 | $1,110.00 | 47.00 | $50,007.00 |
| Eugene Elder | Health | 1990 | $915.00 | $975.00 | 95.90 | $90,478.50 |
| Elizabeth Harris | Tax | 1987 | $1,000.00 | $1,065.00 | 85.20 | $89,067.50 |
| Angeline Koo | Litigation | 2005 | $940.00 | $1,000.00 | 285.90 | $271,320.00 |
| Holli Pryor-Baze | Litigation | 1999 | $905.00 | $965.00 | 63.10 | $57,729.50 |
| M. Todd Tuten | Public Law & Policy | N/A | $855.00 | $1,035.00 | 42.00 | $39,528.00 |
| Dennis Windscheffel | Litigation | 2004 | $905.00 | $965.00 | 128.30 | $118,145.50 |
| Christin Carey | Health | 2012 | N/A | $885.00 | 6.60 | $5,841.00 |
| Sharon Davidov | Tax | 2013 | N/A | $1,010.00 | 6.20 | $6,262.00 |
| Kristi Kirksey | Tax | 2014 | $950.00 | $985.00 | 14.40 | $13,911.00 |
| Erika Leon | Corporate | 2013 | $915.00 | N/A | 191.80 | $175,497.00 |
| Edan Lisovicz | Financial Restructuring | 2014 | $890.00 | $975.00 | 505.00 | $458,468.50 |
| Clayton Matheson | Intellectual Property | 2010 | $885.00 | $950.00 | 198.70 | $178,846.00 |
| William Mongan | Litigation | 2012 | N/A | $1,005.00 | 37.50 | $37,687.50 |
| John Murphy | Litigation | 2011 | N/A | $1,025.00 | 65.40 | $67,035.00 |
| Katherine Porter | Litigation | 2011 | $960.00 | $1,025.00 | 586.40 | $575,066.50 |
| Jillie Richards | Litigation | 2007 | $775.00 | $850.00 | 311.00 | $250,542.50 |
| Matthew Schmitten | Litigation | 2013 | N/A | $850.00 | 15.00 | $12,750.00 |
| Richard R. Williams, Jr. | Litigation | 2014 | $870.00 | $960.00 | 264.80 | $235,785.00 |
| **Senior Counsel & Counsel** | | | | | **2,950.20** | **$2,733,968.00** |

| Associate | Department | Year of Admission | 2019 Rate | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Jonathan Aronchick | Litigation | 2015 | $690.00 | N/A | 28.60 | $19,734.00 |
| Sudhana Bajracharya | Health | 2018 | $555.00 | N/A | 5.70 | $3,163.50 |
| Brooks Barker | Financial Restructuring | 2018 | $660.00 | $775.00 | 238.10 | $166,116.00 |
| Megi Belegu | Litigation | Not yet admitted | $540.00 | $565.00 | 215.20 | $117,910.50 |
| Richard Cochrane | Litigation | 2019 | N/A | $535.00 | 35.60 | $19,046.00 |
| Jess Coleman | Financial Restructuring | Not yet admitted | $560.00 | $615.00 | 278.30 | $161,485.50 |
| Richard D'Amato | Litigation | 2017 | $690.00 | $810.00 | 147.20 | $109,440.00 |
| Alyx Eva | Litigation | 2019 | $510.00 | $535.00 | 191.10 | $100,328.50 |
| Sanzana Faroque | Corporate | Not yet admitted | $540.00 | $565.00 | 142.50 | $77,225.00 |
| Madison Gardiner | Financial Restructuring | Not yet admitted | N/A | $615.00 | 8.70 | $5,350.50 |
| Nina Goepfert | Litigation | 2018 | $630.00 | $725.00 | 424.60 | $280,798.00 |
| Sohrab Hajarian | Intellectual Property | 2016 | $510.00 | $535.00 | 21.10 | $11,006.00 |
| Anthony Hilbert | Corporate | 2019 | N/A | $535.00 | 57.00 | $30,495.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | N/A | $535.00 | 11.30 | $6,045.50 |
| Anne Kolker | Litigation | 2017 | $555.00 | N/A | 48.30 | $26,806.50 |
| Jay Jamooji | Litigation | 2019 | $540.00 | N/A | 8.10 | $4,374.00 |
| Caroline Kessler | Health | 2019 | $510.00 | N/A | 11.10 | $5,661.00 |
| McKenzie Miller | Litigation | Not yet admitted | $510.00 | $535.00 | 472.50 | $246,092.50 |
| Rebecca Ney | Corporate | 2019 | $540.00 | N/A | 113.30 | $61,182.00 |
| Oluwaremilekun Ojurongbe | Litigation | Not yet admitted | N/A | $535.00 | 43.40 | $23,219.00 |
| Colin Phillips | Intellectual Property | 2017 | $555.00 | $650.00 | 142.30 | $87,355.50 |

| Jennifer Poon | Litigation | 2016 | $690.00 | $810.00 | 636.90 | $465,633.00 |
|---|---|---|---|---|---|---|
| Margo Rusconi | Litigation | 2019 | $510.00 | N/A | 13.60 | $6,936.00 |
| Sangita Sahasranaman | Tax | Not yet admitted | N/A | $675.00 | 16.50 | $11,137.50 |
| Theodore James Salwen | Financial Restructuring | 2017 | $660.00 | $775.00 | 438.90 | $301,576.50 |
| Kaitlyn Tongalson | Litigation | 2017 | $690.00 | $810.00 | 111.90 | $81,183.00 |
| Izabelle Tully | Litigation | Not yet admitted | $540.00 | $565.00 | 326.90 | $179,926.00 |
| Joshua Wright | Corporate | 2018 | $630.00 | N/A | 10.20 | $6,426.00 |
| **Associate Total:** | | | | | **4,198.90** | **$2,615,652.50** |

| **Staff Attorneys & Paraprofessionals** | **Department** | **Year of Admission** | **2019 Rate** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|---|
| Ganna Anisimova | Law Clerk, Litigation | N/A | N/A | $340.00 | 154.00 | $52,360.00 |
| Brian Bevins | Research & Info Services | N/A | $265.00 | N/A | 6.30 | $1,669.50 |
| Daniel Chau | Ediscovery | N/A | $355.00 | $370.00 | 201.20 | $72,230.00 |
| Ashley Forrestier | Paralegal, Litigation | N/A | N/A | $330.00 | 10.20 | $3,366.00 |
| Michael Ginsborg | Research & Info Services | N/A | $265.00 | $285.00 | 36.20 | $9,753.00 |
| Brenda Kemp | Paralegal, Financial Restructuring | N/A | $355.00 | N/A | 92.40 | $32,802.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $395.00 | N/A | 140.80 | $55,616.00 |
| Amy Laaraj | Paralegal, Litigation | N/A | $335.00 | $350.00 | 308.50 | $105,287.00 |
| Kim La Croix | Ediscovery | N/A | $355.00 | $370.00 | 67.60 | $24,343.00 |
| Sophia Levy | Paralegal, Financial Restructuring | N/A | $235.00 | $245.00 | 72.10 | $17,108.50 |
| Jim Ma | Ediscovery | N/A | $380.00 | N/A | 25.10 | $9,538.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | N/A | $515.00 | 108.70 | $55,980.50 |

| Alondra Munoz | Paralegal, Litigation | N/A | $205.00 | N/A | 7.30 | $1,496.50 |
|---|---|---|---|---|---|---|
| Lauren O'Brien | Consultant, Public Law & Policy | N/A | $600.00 | $625.00 | 62.50 | $38,380.00 |
| W. Matt Pinkney | Trial Services | N/A | $195.00 | $205.00 | 87.40 | $17,677.00 |
| Bennett Walls | Paralegal, Litigation | N/A | $205.00 | N/A | 7.10 | $1,455.50 |
| Doris Yen | Research & Info Services | N/A | $265.00 | $285.00 | 15.10 | $4,117.50 |
| **Staff Attorneys and Paraprofessional Total:** | | | | | **1402.50** | **$503,180.00** |
| **Total Hours / Fees Requested:** | | | | | **11,651.60** | **$9,838,245.00** |

## **EXHIBIT D**

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low - High) | Amount Budgeted (Low - High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 100-250 | $77,500-$193,750 | 159.0 | $118,037.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 200-300 | $155,000-$232,500 | 252.5 | $176,314.50 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 750-1000 | $731,250-$975,000 | 896.0 | $749,588.50 |
| 5 | Review/Preparation of Schedules, Statements | 10-50 | $7,750-$38,750 | 5.9 | $4,649.00 |
| 6 | Retention of Professionals | 400-500 | $325,000-$487,500 | 478.5 | $335,400.00 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 750-1250 | $900-$1,500,000 | 1020.0 | $1,090,531.00 |
| 8 | Hearings and Court Matters/Court Preparation | 250-500 | $300,000-$600,000 | 344.4 | $359,747.50 |
| 9 | Financial Reports and Analysis | 10-25 | $7,750-$19,375 | 1.8 | $1,721.50 |
| 11 | Executory Contract/Lease Issues | 10-50 | $9,000-$45,000 | 18.2 | $21,923.50 |
| 12 | General Claims Analysis/Claims Objections | 750-1000 | $675,000-$900,000 | 866.8 | $788,658.00 |
| 13 | Analysis of Pre-Petition Transactions | 5000-6000 | $4,000,000-$4,800,000 | 5241.8 | $3,981,660.00 |
| 14 | Insurance Issues | 250-500 | $225,000-$450,000 | 421.5 | $405,013.50 |
| 16 | Automatic Stay Issues | 100-250 | $90,000-$225,000 | 133.1 | $128,561.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 500-750 | $450,000-$675,000 | 625.8 | $638,045.00 |
| 18 | Tax Issues | 50-100 | $45,00-$90,000 | 79.9 | $87,620.50 |
| 19 | Labor Issues/Employee Benefits | 50-100 | $45,00-$90,000 | 69.0 | $75,198.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 200-300 | $180,000-$270,000 | 266.5 | $217,833.50 |
| 21 | Exclusivity | 5-10 | $0-$9,000 | 0.3 | $292.50 |
| 22 | Disclosure Statement/ Solicitation/Plan/Confirmation | 25-100 | $22,500-$90,000 | 24.5 | $16,960.00 |
| 24 | Real Estate Issues | 0-25 | $0-$22,500 | 1.8 | $2,205.00 |
| 25 | Travel Time | 25-50 | $22,500-$45,000 | 20.3 | $21,442.00 |
| 28 | General Corporate Matters | 250-500 | $225,000-$450,000 | 436.3 | $320,343.50 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | 0-25 | $0-$22,500 | 1.2 | $930.00 |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | 0-25 | $0-$22,500 | 1.7 | $1,773.00 |
| 31 | Business Operations | 100-200 | $90,000-$180,000 | 120.6 | $133,704.50 |
| 32 | Intellectual Property | 100-200 | $90,000-$180,000 | 164.2 | $160,092.00 |
| **TOTAL** | | **9,880-14,060** | **$8,608,250-$12,450,875** | **11651.6** | **$9,838,245.00** |

**EXHIBIT E**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $29,282.64 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $77,770.56 |
| Computerized Legal Research - Westlaw - Out of Contract | $330.45 |
| Computerized Legal Research - Courtlink - In Contract 50% | $281.18 |
| Computerized Legal Research - Other | $3,555.88 |
| Courier Service/Messenger Service - Off Site | $284.09 |
| Professional Fees - Consultant Fees | $6,243.73 |
| Document Retrieval | $8,342.50 |
| Departmental Consulting | $6,687.50 |
| Duplication - In House | $3,952.80 |
| Filing Fees | $600.00 |
| Meals - Overtime | $331.98 |
| Meals - Business | $64.25 |
| Meals - 100% | $4,036.77 |
| Miscellaneous | $95.01 |
| Overtime - Admin Staff | $1,903.57 |
| Postage | $172.90 |
| Research | $530.75 |
| Refund Expenses | $1,258.28 |
| Telephone - Long Distance | $603.00 |
| Transcripts | $10,676.28 |
| Travel - Airfare | $778.51 |
| Travel - Ground Transportation | $5,521.30 |
| Travel - Lodging (Hotel, Apt, Other) | $323.68 |
| Travel - Trainfare | $268.00 |
| Travel - Parking | $86.00 |
| Local Transportation - Overtime | $1,751.28 |
| **Total Expenses Requested:** | **$165,732.89** |

## **EXHIBIT F**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 20 | $1,285.63 |
| Senior Counsel and Counsel | 15 | $926.71 |
| Associate | 30 | $622.94 |
| Staff Attorneys and Paraprofessionals | 15 | $358.77 |