**Hearing Date: April 22, 2020 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: April 6, 2020 at 4:00 p.m. (Prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP FOR COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES AS SPECIAL
COUNSEL TO THE DEBTORS FOR THE PERIOD FROM
<u>SEPTEMBER 15, 2019 THROUGH AND INCLUDING JANUARY 31, 2020</u>**

| *General Information* | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |
| Authorized to Provide Services to: | Purdue Pharma L.P., et al. |
| Petition Date: | September 15, 2019 |
| Date of Retention: | November 25, 2019, nunc pro tunc to September 15, 2019 |

| *Summary of Fees and Expenses Sought in the Application for the Application Period* | |
|---|---|
| This is a/an: | _ monthly application |
| | x interim application |
| | _ final application |
| Period for Which Compensation and Expense Reimbursement is Sought: | September 15, 2019 through and including January 31, 2019 |

| | |
|---|---|
| Amount of Actual, Reasonable and Necessary Compensation Attributable to the Application Period: | $3,923,706.10[1] |
| Amount of Expense Reimbursement Requested as Actual, Reasonable and Necessary in the Application Period: | $25,670.12 |
| Voluntary Fee Waiver and Expense Reduction in the Application Period: | $162,854.12[2] |
| Total Compensation and Expense Reimbursement Attributable to the Application Period: | $3,949,376.22[3] |
| Compensation Sought in this Application for the Application Period Already Paid Pursuant to the Interim Compensation Procedures but Not Yet Allowed on a Final Basis: | $1,420,730.08[4] |
| Expenses Sought in this Application for the Application Period Already Paid Pursuant to the Interim Compensation Procedures but Not Yet Allowed on a Final Basis: | $7,159.93 |
| Total Outstanding Holdback (20% from each of the Monthly Fee Statements) | $784,741.22 |

---

[1]   This amount represents 100% of fees Skadden billed the Debtors during the Application Period.

[2]   Skadden voluntarily reduced its fees by $112,996.09 and its expenses by $49,858.03 during the Application Period.  Skadden reserves the right to request these amounts.

[3]   This amount includes payments Skadden has received to date on account of the September/October 2019 fee statement and the unpaid amounts set forth in the November 2019, December 2019, and January 2020 fee statements.  This amount also includes the 20% holdback from each of the monthly fee statements, the allowance and payment of which Skadden is seeking at this time.

[4]   This amount includes payments Skadden has received to date on account of the September/October 2019 fee statement.  Skadden has not yet received payment on account of its November 2019, December 2019, or January 2020 fee statements.

| *Summary of Fees, Professionals, Rates and Budget for the Application Period* | |
|---|---|
| Blended Rate in this Application for All Attorneys during the Application Period: | $1009.05 |
| Blended Rate in this Application for All Timekeepers during the Application Period: | $968.61 |
| Number of Professionals and Paraprofessionals Included in this Application for the Application Period: | 39 |
| Number of Professionals and Paraprofessionals Billing Fewer than 15 Hours to these Cases during the Application Period: | 7 |
| Increase in Rates: | Skadden applied an increase to its hourly rates beyond the rates set forth in the Skadden Retention Application effective January 1, 2020.  [Docket No. 936]. |

## PRIOR FEE STATEMENTS OF
## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| DATE FILED | DOCKET NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED |
|---|---|---|---|---|
| 12/06/2019 | 607 | 09/15/2019-10/31/2019 | $1,437,142.89 (80% of $1,796,428.62) | $7,159.93 |
| 01/10/2019 | 735 | 11/01/2019-11/30/2019 | $521,427.54 (80% of $651,784.42) | $6,114.39 |
| 02/21/2020 | 861 | 12/01/2019-12/31/2019 | $338,296.33 (80% of $422,870.41) | $5,497.17 |
| 03/15/2020 | 953 | 01/01/2020-01/31/2020 | $842,098.12 (80% of $1,052,622.65) | $6,898.63 |

4

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**PROFESSIONAL PERSON SUMMARY**
**SEPTEMBER 15, 2019 – JANUARY 31, 2020**

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|------|------------------|------|-------|--------|
| **PARTNER** | | | | |
| John T. Bentivoglio | 1994 | $1,375.05 | 127.40 | $175,181.55 |
| | | 1,485.00 | 21.20 | 31,482.00 |
| Jennifer L. Bragg | 1996 | 1,375.05 | 326.60 | 449,091.59 |
| | | 1,485.00 | 136.90 | $203,296.50 |
| Anthony W. Clark | 1984 | 1,375.05 | 28.10 | 38,638.97 |
| Patrick Fitzgerald | 1986 | 1,539.85 | 229.80 | 353,857.80 |
| | | 1,695.00 | 69.50 | 117,802.50 |
| Maya P. Florence | 2004 | 1,122.70 | 497.80 | 558,880.06 |
| | | 1,350.00 | 187.50 | 253,125.00 |
| Noelle M. Reed | 1998 | 1,375.05 | 21.70 | 29,838.72 |
| | | 1,485.00 | 4.10 | 6,088.50 |
| William Ridgway | 2006 | 1,122.70 | 122.30 | 137,306.21 |
| | | 1,350.00 | 69.30 | 93,555.00 |
| R. Ryan Stoll | 1990 | 1,375.05 | 120.00 | 165,006.14 |
| | | | | |
| | **TOTAL PARTNER** | | **1962.20** | **$2,613,150.54** |
| **COUNSEL** | | | | |
| Michael S. Bailey | 2007 | $999.10 | 209.80 | $209,611.18 |
| | | 1,120.00 | 35.20 | 39,424.00 |
| John Boyle | 1996 | 1,000.00 | 71.50 | 71,500.00 |
| | | 1,200.00 | 8.30 | 9,960.00 |
| Daniel S. Mayerfeld | 2003 | 999.10 | 9.40 | 9,391.54 |
| | | 1,120.00 | 5.30 | 5,936.00 |
| | | | | |
| | **TOTAL COUNSEL** | | **339.50** | **$345,822.72** |
| **ASSOCIATE** | | | | |
| William A. Bejan | 2018 | 509.85 | 163.30 | $83,258.62 |
| | | 660.00 | 62.20 | 41,052.00 |
| Jennifer Berman | 2014 | 921.85 | 32.30 | 29,775.79 |
| Elizabeth L. Berry | 2016 | 731.30 | 35.80 | 26,180.54 |
| | | 895.00 | 15.50 | 13,872.50 |
| Amanda H. Chan | 2019 | 427.45 | 135.30 | 57,834.10 |
| | | 660.00 | 95.00 | 62,700.00 |
| Cheun, Peter | 2016 | 731.30 | 26.10 | 19,086.93 |
| Douglas J. DeBaugh | 2015 | 885.80 | 0.90 | 797.22 |
| Immanuel R. Foster | 2014 | 885.80 | 142.40 | 126,137.92 |
| | | 990.00 | 21.70 | 21,483.00 |
| Timothy M. Frey | 2010 | 993.95 | 127.60 | 126,828.18 |
| | | 1,050.00 | 12.80 | 13,440.00 |

| | | | | |
|---|---|---|---|---|
| Christopher M. Halbohn | 2018 | 509.85 | 5.40 | 2,753.20 |
| Emily Hellman | 2017 | 731.30 | 139.40 | 101,943.22 |
| | | 895.00 | 63.90 | 57,190.50 |
| Drew M. Horwood | 2017 | 612.85 | 7.50 | 4,596.38 |
| | | 785.00 | 42.00 | 32,970.00 |
| Corbin D. Houston | 2017 | 612.85 | 75.20 | 46,086.44 |
| | | 785.00 | 37.30 | 29,280.50 |
| Gail E. Lee | 2014 | 921.85 | 21.40 | 19,727.60 |
| Jennifer Madden | 2010 | 993.95 | 68.20 | 67,787.55 |
| | | 1,050.00 | 1.50 | 1,575.00 |
| Noha K. Moustafa | 2016 | 839.45 | 219.70 | 184,426.30 |
| | | 950.00 | 20.10 | 19,095.00 |
| William S. O'Hare | 2013 | 952.75 | 6.00 | 5,716.53 |
| | | 1,050.00 | 2.20 | 2,310.00 |
| Sterling M. Paulson | 2018 | 509.85 | 77.90 | 39,717.42 |
| Kathleen Shelton | 2019 | 509.85 | 219.40 | 111,861.32 |
| | | 660.00 | 18.00 | 11,880.00 |
| Trusty, Caroline | 2017 | 612.85 | 4.10 | 2,512.69 |
| Tsakos Sylvia | 2016 | 839.45 | 16.20 | 13,599.11 |
| | | | | |
| | **TOTAL ASSOCIATE** | | **1916.30** | **$1,377,475.56** |
| **STAFF ATTORNEY** | | | | |
| Victoria Dienst | 1994 | $430.00 | 78.70 | $33,841.00 |
| Patrick McCullough | 2004 | 430.00 | 59.90 | 25,757.00 |
| | **TOTAL STAFF ATTORNEY** | | **138.60** | **$59,598.00** |
| | | | | |
| **PARAPROFESSIONALS** | | | | |
| | | | | |
| Campana, Mark | N/A | $396.55 | 22.50 | $8,922.42 |
| | | 430.00 | 7.30 | 3,139.00 |
| Jessica E. Davis | N/A | 226.60 | 51.60 | 11,692.56 |
| | | 385.00 | 9.80 | 3,773.00 |
| William R. Fieberg | N/A | 396.55 | 3.80 | 1,506.91 |
| | | 430.00 | 9.90 | 4,257.00 |
| John Hewson | N/A | 309.00 | 110.50 | 34,144.50 |
| | | 385.00 | 5.00 | 1,925.00 |
| Rachel Redman | N/A | 396.55 | 37.90 | 15,029.38 |
| | | 430.00 | 2.90 | 1,247.00 |
| Feimei Zeng | N/A | 226.60 | 7.90 | 1,790.14 |
| | | 340.00 | 4.70 | 1,598.00 |
| | | | | |
| **TOTAL PARAPROFESSIONALS** | | | **273.80** | **$ 89,024.91** |
| | | | | |
| **TOTAL** | | | **4360.40** | **$4,485,071.73** |
| | | | | |
| **VOLUME DISCOUNT** | | | | **$561,365.64** |

| | | | |
|---|---|---|---|
| **TOTAL FEES** | | | **$3,923,706.10** |

| | |
|---|---|
| **BLENDED HOURLY RATE** | **$968.61** |

*Nonworking Travel Time deducted.

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**PROJECT CATEGORY SUMMARY**
**(SEPTEMBER 15, 2019 – JANUARY 31, 2020)**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| DOJ | 3,932.90 | $3,890,971.61 |
| Various Texas Actions | 227.70 | $167,164.56 |
| OIG Issues | 17.20 | $21,526.52 |
| Retention/Fee Matter | 452.60 | $405,409.04 |
| **TOTAL** | **4,630.40** | **$4,485,071.73** |
| **VOLUME DISCOUNT** | | **$561,365.64** |
| **TOTAL FEES** | | **$3,923,706.10** |

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**EXPENSE SUMMARY**
**(SEPTEMBER 15, 2019 – JANUARY 31, 2020)**

| Expense Category | Total Expenses |
|---|---|
| Reproduction – color | $3,115.20 |
| Filing/Court Fees | $186.25 |
| Court Reporting | $214.80 |
| Local Travel | $1,578.24 |
| Out-of-Town Travel | $13,200.14 |
| Business Meals | $249.72 |
| Courier & Express Carriers (e.g., Federal Express) | $240.42 |
| Professional Fees | $5,437.50 |
| Other | $1,447.85 |
| **TOTAL** | **$25,670.12** |

Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**"), counsel to the debtors and debtors-in-possession in the above-captioned case (collectively, the "**Debtors**"), submits this first interim application (this "**Application**") requesting allowance and approval of compensation for professional services rendered to the Debtors and reimbursement of actual and necessary expenses incurred in connection with such services on an interim basis, for the period from September 15, 2019 through and including January 31, 2020 (the "**Application Period**"). In support of this Application, Skadden submits the declaration of Patrick Fitzgerald, a partner at Skadden (the "**Fitzgerald Declaration**"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Application, Skadden represents as follows:

## JURISDICTION

This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the and the *Amended Standing Order of Reference M-431,* dated January 31, 2012 (Preska, C.J.). These are core proceedings under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

The legal predicates for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Bankruptcy Rules**"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "**Local Guidelines**"), and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330

for Attorneys in Larger Chapter 11 Cases effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**").

## BACKGROUND

On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' Chapter 11 cases. On September 27, 2019, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

The Debtors' Chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules. Purdue Pharma L.P. ("**PPLP**") and its direct and indirect subsidiaries other than the Rhodes Debtors (defined below) (the "**Purdue Debtors**") primarily operate a branded pharmaceuticals business, while Debtor Rhodes Associates L.P. and its direct and indirect subsidiaries (the "**Rhodes Debtors**") primarily develop and distribute generic pharmaceutical products and manufacture a range of active pharmaceutical ingredients.

As set forth in the Debtors' Informational Brief [Docket No. 17], PPLP has been responding to subpoenas and civil investigative demands issued by various components of the United States Department of Justice (the "**DOJ**") in connection with criminal and civil investigations of PPLP. PPLP is engaged in ongoing discussions with DOJ regarding a potential resolution of the investigations.

Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Debtors' Informational Brief.

## THE DEBTORS' RETENTION OF SKADDEN

On November 6, 2019, the Debtors applied to this Court for an order authorizing the

retention of Skadden as their restructuring counsel, effective *nunc pro tunc* to the Petition Date

[Docket No. 438] (the "**Skadden Retention Application**").  On November 25, 2019, the Court

approved the Skadden Retention Application [Docket No. 545] (the "**Retention Order**").

The Retention Order authorizes the Debtors to compensate Skadden at its standard hourly

rates subject to certain discounts and reimburse Skadden for its actual and necessary out-of-

pocket expenses incurred, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and

the Local Bankruptcy Rules.[5]

The Retention Order also authorizes Skadden to provide the following services

("Services"):

    (a)    advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession;

    (b)    advise the Debtors with respect to the analysis of their pre-petition debt obligations, and the negotiation of their post-petition financing;

    (c)    attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the cases, including all of the legal and administrative requirements of operating in Chapter 11;

    (d)    take all necessary actions to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of actions commenced against the Debtors' estates, negotiations concerning litigation in which the Debtors may be involved, and objections to claims filed against the Debtors' estates;

---

[5]   Prepetition, Skadden and Purdue agreed to set rates for the period January 1, 2018 through December 31, 2019 as indicated by the rates described in the Skadden Retention Application.  Skadden also agreed to provide a volume discount and quick-pay discount which are described in more detail in the Skadden Retention Application.  Skadden's agreement with Purdue expired under its terms on December 31, 2019.  Skadden and the Debtors have agreed to certain rate increases effective January 1, 2020, subject to certain discounts described in the *Supplemental Declaration of Patrick Fitzgerald in Support of Application of Debtors to Retain and Employ Skadden* [Docket No. 936].

    (e)      prepare on behalf of the Debtors all motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

    (f)      negotiate and prepare on the Debtors' behalf plan(s) of reorganization, disclosure statement(s), and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

    (g)      appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

    (h)      perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with these Chapter 11 Cases.

Other than between Skadden and its affiliated law practices and their members, no agreement or understanding exists between Skadden and any other person or persons for the sharing of compensation received or to be received for professional services rendered in or in connection with these cases, nor will any be made except as permitted pursuant to Bankruptcy Code section 504(b)(1).

## FEE PROCEDURES AND MONTHLY FEE STATEMENTS

Pursuant to the interim compensation procedures (the "**Interim Compensation Procedures**") set forth in the amended interim compensation order [Docket No. 529] professionals who seek compensation must file monthly fee statements. Parties in interest are provided 14 days to object to such statements. Absent a timely objection, the Debtors are authorized to pay 80% of the fees requested (with the remaining 20% of the fees requested referred to herein as the "**Holdback**") and 100% of the charges and disbursements requested.

In accordance with the Interim Compensation Procedures, Skadden seeks interim approval of the full amount of the fees and expenses requested in the monthly fee statements

filed for the months of September, October, November, December, January, and authorization for the Debtors to pay the amounts requested herein in full.[6]

## RELIEF REQUESTED

By this Application, Skadden seeks interim approval of $3,923,706.10 in fees calculated at the applicable guideline hourly billing rates as compensation for professional services rendered[7] and reimbursement of $25,670.12 as actual and necessary expenses incurred during the Application Period.[8]

In accordance with the Interim Compensation Procedures, Skadden submitted monthly fee statements for each of the months covered by the Application Period, resulting in an aggregate Holdback amount of $784,741.22 for the Application Period.  Skadden now requests payment of such Holdbacks.

## DESCRIPTION OF SERVICES RENDERED

During the Application Period, Skadden provided the Services described above to the Debtors, including advising the Debtors with respect to federal government investigation matters, state governmental investigation matters, pending civil litigation, and other discrete matters relating to the pending investigations and civil litigations.  Skadden's streamlined case

---

[6]   The Debtors have been provided with an opportunity to review all amounts requested in the Application and have approved the amounts requested herein.

[7]   As set forth on the detailed schedules at the front of this Application, this amount corresponds to 4,630.40 hours Skadden devoted to representation of the Debtors during the Application Period: 1,962.2 hours by partners, 339.5 hours by counsels, 1,916.30 hours by associates, 138.6 by staff attorneys, and 273.8 hours by client specialists and paraprofessionals.  Skadden's blended hourly rate for the Application Period was $968.61

[8]   The total amount sought for fees and expenses (3,949,376.22) reflects voluntary reductions for the Application Period of $112,996.09 in fees, a 2.88% reduction and $49,858.03 in expenses, a 69.17% reduction.  Skadden reserves the right to request these amounts.

*(cont'd)*

management and staffing structure helped promote cost efficiencies and avoided duplicative or unnecessary work.

Similarly, while it is Skadden's standard policy to charge its clients in all areas for certain charges and disbursements incurred in connection with such clients' matters (as disclosed in the Skadden Retention Application), Skadden attempted to minimize such expenses during these bankruptcy cases.[9]

At the commencement of these Chapter 11 cases, Skadden utilized 6 different matter numbers or subject-matter categories to which its professionals billed their time, all of which were related to the tasks performed by Skadden on behalf of the Debtors. Skadden kept a contemporaneous record of the time spent rendering services and separated tasks in billing increments of one-tenth of an hour. All of the services performed by Skadden were legal in nature and necessary and appropriate for the effective administration of these Chapter 11 Cases.

## RETENTION MATTERS

Following below is a narrative summary of the work performed by Skadden during the Application Period in connection with each of the key matters to which Skadden professionals devoted significant time (listed in descending order based on amount of fees sought):

A.     **Matter No. 13 – DOJ**
       **Amount Sought: $3,890,971.61**

During the Application Period, Skadden provided legal services to the Debtors in connection with federal governmental investigation matters, including the ongoing criminal and civil investigations being coordinated through various components of the DOJ and other federal agencies. Skadden professionals reviewed and analyzed relevant documents, attended

---

[9]   A chart summarizing such necessary charges and disbursements for the Application Period is included at the front of this Application.

conference calls to discuss strategy, and participated in settlement negotiations with the DOJ.

Further, Skadden professionals regularly communicated with DOJ and responded to DOJ's

inquiries by, among other things, identifying and producing documents in response to production

requests and investigating fact issues identified by the DOJ.  Moreover, Skadden professionals

reviewed materials for relevance and to protect any information shielded by privilege.  They also

participated in numerous internal and external conference calls and meetings to coordinate

various investigation and litigation workstreams and develop legal strategy, including with co-

counsel and counsel for other parties with whom Debtors share a common interest.

In addition, Skadden participated in reviewing and analyzing documents to prepare

witnesses in connection with ongoing criminal and civil federal and state investigations.

### B.    Matter No, 73 - Retention / Fee Matters
### Amount Sought: $405,409.04[10]

At the beginning of these cases, Skadden drafted and filed the Skadden Retention

Application along with the supporting declarations of Patrick Fitzgerald and Mark L. Kesselman.

In preparing the Skadden Retention Application, Skadden conducted a comprehensive conflicts

analysis which involved the review of internal connection reports.

Since filing the Skadden Retention Application, and in accordance with the Interim

Compensation Procedures, Skadden professionals prepared and filed four Monthly Fee

Statements [Docket Nos. 607, 735, 801, and 953].  In addition, during the Application Period,

---

[10]    The amount sought in connection with Retention/Fee Matters exceeds the budgeted amount by more than 10% because the agreed upon budget did not contemplate the Retention/Fee Matters matter.  Skadden and PPLP agreed upon a budget prior to September of 2019 prior to the Petition Date and at that time the Retention/Fee Matters matter was not contemplated by the parties.  The Debtors opened this new matter in October 2019. Skadden will amend the budget to reflect budgeted amounts for this matter on a go-forward basis.  Although Skadden did not budget for this matter, Skadden is significantly under its overall budget for the Application Period.

Skadden responded to the United States Trustee's information requests related to the Skadden

Retention Application and its September/October 2019 monthly fee statement.

### C.    Matter No. 63 - Various Texas Actions
####       Amount Sought: $167,164.56

Skadden represented PPLP in opioid-related litigation in Texas state and federal courts,

brought mainly by state and local governments.  During the Application Period, Skadden

professionals assisted in preparing notices of bankruptcy and related filings in the Texas matters

and continue to monitor filings in those cases for potential impact on PPLP.

### D.    Matter No. 72 - OIG Issues
####       Amount Sought: $21,526.52

During the Application Period, Skadden professionals conducted legal research on

various regulatory issues and relating to Purdue's ongoing investigation matters.  Time billed to

this matter included attending internal conference calls to discuss strategy, reviewing and

analyzing materials relevant to resolution issues, and drafting presentations and other work

product.

## REASONABLENESS OF FEES AND DISBURSEMENTS

Bankruptcy Code section 330 authorizes the Court to award "reasonable compensation

for actual, necessary services rendered by the . . . professional person." 11 U.S.C. § 330.

Skadden respectfully submits that its request for an interim award of compensation for the

Application Period satisfies that standard.

In accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested

herein by Skadden is fair and reasonable in light of (a) the nature of the Chapter 11 cases, (b) the

time and labor required to effectively represent the Debtors, (c) the nature and extent of the

services rendered, (d) Skadden's experience, reputation, and ability, (e) the value of Skadden's

services, and (f) the cost of comparable services outside of cases under the Bankruptcy Code.

17

### A.    Nature of the Services Provided During the Chapter 11 Cases

As discussed above, Skadden professionals performed legal work for Debtors and certain of its subsidiaries in connection with government investigations, complex and material litigation matters, and these Chapter 11 cases.  Skadden provided advice pertaining to: (a) regulatory and compliance matters, (b) certain civil and criminal investigations initiated by the DOJ, certain other United States agencies, and state attorneys general and state agencies, (c) certain civil litigation, including approximately 51 cases filed in Texas state courts, most of which have been consolidated into a Texas state multi-district litigation; and (d) the interplay of these matters in the ongoing Chapter 11 cases.  Skadden assigned various attorneys to discrete tasks to avoid the performance of duplicative or unnecessary work.

Given the variety of complex issues that arose in the regulatory, investigation, and litigation, including matters that involved a combination of legal disciplines, there were circumstances where a number of Skadden professionals had to be present at, and participate in, discussions, negotiations, and strategy meetings.  Skadden believes that it has, through the summaries contained in this Application and the time entries attached to the Monthly Fee Statements, articulated specific reasons for such participation.

### B.    Experience of Skadden

As set forth more fully in the Skadden Retention Application, Skadden's attorneys' knowledge and experience in the areas in which the Services were provided, as well as the firm's longstanding relationship with the Debtors in connection with the Services, benefited the Debtors' estates in various ways and ensured that matters related to the DOJ investigation as well as the other matters for which the Debtors provide special counsel were addressed properly and promptly.

18

### C.    Comparable Services

Skadden also satisfies the comparable cost requirement, because its rates in these Chapter 11 Cases are consistent with Skadden's standard rates and the material terms for non-bankruptcy matters and terms of other comparably skilled counsel.  Moreover, Skadden's rate structure was disclosed clearly in the Skadden Retention Application, which this court approved, and the Supplemental Declaration of Patrick Fitzgerald [Docket No. 936].  The amounts sought by Skadden are consistent with the fees, charges, and disbursements incurred in other chapter 11 cases in other similar non-bankruptcy matters.  Accordingly, the cost of comparable services supports the Application and the services performed during the Application Period warrants the allowance of compensation, particularly given the current joint-investigation now underway, which provides a roadmap to a consensual resolution in these cases.

Based on the foregoing, Skadden respectfully submits that approval of the compensation sought herein is warranted and should be approved.

### D.    Reservation of Rights

Skadden reserves the right to supplement this Application to seek amounts for work performed or expenses incurred during the Application Period but not yet reflected in Skadden's time records or to amend the amounts listed herein and in the Monthly Fee Statements to correct any bookkeeping errors.  Skadden has attempted to include in the Monthly Fee Statements and, by extension, this Application, all time and expenses relating to the Application Period.  Delays in processing such time and receiving invoices for certain expenses do occur, however.  In the event that a subsequent review reveals that additional professional services have been rendered or expenses have been incurred on behalf of the Debtors during the Application Period which were not processed by Skadden's accounting system before the time of this Application, Skadden reserves the right to seek such additional fees and expenses by subsequent application to the

Court. Skadden does not waive, and expressly reserves, its right to respond to any objections regarding this Application and the amounts sought for Skadden's services in these Chapter 11 Cases.

## COMPLIANCE WITH GUIDELINES

Skadden believes that this Application, together with the attachments hereto, substantially complies in all material respects with the Fee Guidelines. To the extent this Application does not comply in every respect with the requirements of such Fee Guidelines, Skadden respectfully requests a waiver for any such technical non-compliance.

## NO PRIOR REQUEST

No previous request for the relief sought herein has been made to this Court or any other court.

## NOTICE

Notice of this Motion will be given to the following parties: (a) Debtors; (b) counsel to the Debtors; (c) counsel to the Committee; and (d) all parties entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York. The Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, Skadden respectfully requests that the Court enter an order allowing interim compensation of $3,923,706.10 to Skadden for professional services rendered as counsel for the Debtors during the Application Period, plus reimbursement of actual and necessary charges and disbursements incurred in the amount of $25,670.12.

Dated: New York, New York
      March 16, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Julie E. Cohen*

Julie E. Cohen
4 Times Square
New York, New York 10036
Telephone:  (212) 735-3000
Fax:  (212) 735-2000

– and –

Patrick Fitzgerald
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

– and –

Jennifer L. Bragg
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Fax: (202) 393-5760

*Special Counsel to Debtors
and Debtors-in-Possession*

**Hearing Date: April 22, 2020 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: April 6, 2020 at 4:00 p.m. (Prevailing Eastern Time)**

**Exhibit A**

**Fitzgerald Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| **Debtors.** 1 | **(Jointly Administered)** |

**CERTIFICATION OF PATRICK FITZGERALD IN SUPPORT OF THE
FIRST INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP FOR COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES AS SPECIAL
COUNSEL TO THE DEBTORS FOR THE PERIOD FROM
SEPTEMBER 15, 2019 THROUGH AND INCLUDING JANUARY 31, 2020**

I, Patrick Fitzgerald, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") which maintains offices for the practice of law at, among other locations, 155 N. Wacker Drive, Chicago, Illinois 60606.

2.      I am a practicing member in good standing of the bars of the States of Illinois and New York.

3.      This certification is made in connection with Skadden's application, dated March 16, 2020 (the "**Application**"),[11] for interim compensation and reimbursement of expenses for the period commencing September 15, 2019, through and including January 31, 2020.

4.      I have read the Application and to the best of my knowledge, information, and belief, the statements contained in the Application are true and correct. In addition, after reasonable inquiry, I believe that the Application substantially complies in all material respects

---

[11]    Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Application.

1

with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York* (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "**Local Guidelines**"), and the *United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**").

      5.      With respect to section C.5 of the U.S. Trustee Guidelines, I certify the following:

**Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response: Yes, we have agreed to provide volume discounts as described in *Supplemental Declaration of Patrick Fitzgerald in Support of Application of Debtors to Retain and Employ Skadden* [Docket No. 936].

**Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response: Yes.

**Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response: No.

**Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response: Except as set forth below, the Application does not include any fees dedicated to revising time records or preparing and revising invoices that would not normally be compensable outside of bankruptcy. The Application includes 452.6 hours, totaling $405,409.04 (prior to application of the Volume Discount), which reflects approximately 9.04% of the total fees billed during the Application Period, for Skadden retention and fee matters, including time spent to (a) ensure that time entries comply with the Fee Guidelines and do not disclose privileged or confidential information and (b) prepare monthly fee statements, prepare and revise Skadden's budget

2

and staffing plan, and prepare and file the Application.  Additionally, these amounts include time spent on Skadden's retention and on review of conflicts checks for parties-in-interest in these Chapter 11 Cases.  All of these services, including review of and revisions to fee statements and applications, were necessary components of Skadden's fee and retention activities.

**Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response: See response above.

**Question:** If the fee application includes any rate increases since retention:

    i. Did your client review and approve those rate increases in advance?

Response:  Yes.  The rate increases were the subject of weeks of arms' length discussions and are the subject of the disclosures made pursuant to my *Supplemental Declaration of Patrick Fitzgerald in Support of Application of Debtors to Retain and Employ Skadden* [Docket No. 936].

    ii. Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Response:  The client did not agree, when retaining the law firm, to accept all future rate increases.  The rate increases were the subject of weeks of arms' length discussions.

With respect to section B.1 of the Local Guidelines, I certify the following:

    (a)    I have read the Application;

    (b)    to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, and fall within the Local Guidelines;

    (c)    except to the extent that fees and disbursements are prohibited by the Local Guidelines, the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Skadden and generally accepted by Skadden's clients; and

(d)    in providing a reimbursable expense, Skadden does not make a profit on that expense, whether the service is performed by Skadden in-house or through a third party.

6.     With respect to section B.2 of the Local Guidelines, I certify that the Debtors have been provided on a monthly basis during the Application Period with statements of fees and out-of-pocket expenses, containing lists of professionals and paraprofessionals providing services, their respective billing rates, the work hours expended by each individual, a general description of services rendered, and a reasonably detailed breakdown of out-of-pocket expenses incurred.

7.     With respect to section B.3 of the Local Guidelines, I certify that I will cause this Application will be served on the following parties: (a) Debtors; (b) counsel to the Debtors; (c) counsel to the Committee; and (d) all parties entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.

8.     In accordance with Bankruptcy Rule 2016(a) and Bankruptcy Code section 504, I certify that no agreement or understanding exists between Skadden and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the above cases except as authorized pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  All services for which compensation is sought were professional services on behalf of the Debtors and not on behalf of any other person.

**[*Remainder of Page Intentionally Left Blank*]**

Dated: New York, New York
March 16, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

*/s/ Patrick Fitzgerald*
Patrick Fitzgerald
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Special Counsel to Debtors
and Debtors-in-Possession*

### EXHIBIT B - Rate Disclosures

The blended hourly rate for all U.S.-based Skadden timekeepers (including both professionals and paraprofessionals), excluding all bankruptcy and pro bono engagements and all data from timekeepers practicing primarily in Skadden's Corporate Restructuring Group,[12] during the twelve-month period beginning on February 1, 2019 and ending on January 31, 2020 (the "**Comparable Period**") was, in the aggregate, approximately $880.66 per hour (the "**Non-Bankruptcy Blended Hourly Rate**").[13]

The blended hourly rate for all Skadden timekeepers who billed to the Debtors during the Application Period was approximately $968.61 per hour (the "**Debtors' Blended Hourly Rate**").[14] A detailed comparison of these rates follows:

| Position | Debtors' Blended Hourly Rate ($) | Non-Bankruptcy Blended Hourly Rate ($) |
| --- | --- | --- |
| Partners/Of Counsel | $1,331.75 | $1,481.07 |
| Special Counsel/Counsel | $1,018.62 | $1,064.23 |
| Associate | $718.82 | $751.96 |
| Client Specialists and Paraprofessionals | $325.15 | $320.97 |
| All Others | $430.00 | $357.63 |

---

[12]   For purposes of calculating the Non-Bankruptcy Blended Hourly Rate, Skadden tracks, as bankruptcy engagements, debtor-in-possession ("**DIP**") clients as well as reorganized and post-DIP clients, and excludes those engagements from the Non-Bankruptcy Blended Hourly Rate along with all time of members of the Corporate Restructuring department.

[13]   Skadden calculated the Non-Bankruptcy Blended Hourly Rate by dividing the total dollar amount billed by U.S.-based Skadden timekeepers, excluding all bankruptcy engagements, DIP clients, as well as reorganized and post-DIP clients, and all data from timekeepers of the Corporate Restructuring group (both attorneys and legal assistants), during the Comparable Period by the total number of corresponding hours billed by U.S.-based Skadden timekeepers during the Comparable Period.

[14]   Skadden calculates the Debtors' Blended Hourly Rate by dividing the total dollar amount billed by such timekeepers during the Application Period by the total number of hours billed by such timekeepers during the Application Period. During the Application Period, Skadden voluntarily reduced its fees requested by $112,996.09 (2.46%) and its expenses requested by $49,858.03 (69.17%), for a total of $162,854.12 (3.49%), and its hours billed from a base of 4,740.70 to 4,630.40 (2.33%). Skadden's Debtor Blended Hourly Rate does not account for Skadden's voluntary reduction of its fees. The total blended hourly rate for Skadden timekeepers who billed to the Debtors during the Application Period based on the amount billed divided by actual hours worked (including non-billed hours) was $968.61.

The Debtors' Blended Hourly Rate is the following: for Counsel ($1,018.62), Associates ($718.82), and Client Specialists and Paraprofessionals ($325.15). The Non-Bankruptcy Blended Hourly Rate is the following: for Counsel ($1,064.23), Associates ($751.96), and Client Specialists and Paraprofessionals ($320.97). The differences between the blended rates for these categories of professionals are not indicative of a premium being charged by Skadden for its representation of the Debtors, but rather the result of attending to the complexities involved in the Services and the Chapter 11 Cases that have required the use of more-senior professionals, with correspondingly higher billing rates, than in a typical representation. Only Client Specialists and Paraprofessionals rates are higher than non-bankruptcy client rates.

| Total | $968.61 | $880.66 |
|-------|---------|---------|

**EXHIBIT C-1**
**Staffing Plan**

**September 15, 2019 through January 31, 2020**

Average hourly rates are weighted averages based on the hourly rate of, and projected number of hours worked by, timekeepers.

| Category of Timekeeper | Estimated Number of Timekeepers | Actual Number of Timekeepers | Actual Average Hourly Rate ($) |
|---|---|---|---|
| Partner | 11 | 8 | $1331.75 |
| Counsel | 6 | 3 | $1018.62 |
| Associate | 26 | 20 | $718.82 |
| Staff Attorneys | 8 | 2 | $430.00 |
| Client Specialists and Paraprofessional | 16 | 6 | $325.15 |
| **Total** | **67** | **39** | **$968.61** |

**EXHIBIT C-2**
**Budget & Compensation Summary By Matter**
**September 15, 2019 through January 2020**

| Matter | Hours | | Compensation ($) | |
|---|---|---|---|---|
| | Budgeted | Billed | Budgeted | Billed |
| DOJ | 9,726 | 3,932.90 | $9,000,000 | $3,890,971.61 |
| Texas Actions | 1,288 | 227.70 | $1,192,500 | $167,164.56 |
| OIG Issues | 243 | 17.2 | $225,000 | $21,526.52 |
| Retention/Fee Matters | 0 | 452.6 | $0 | $405,409.04 |
| Volume Discount | | | | 561,365.64 |
| Total | 11,257 | 4,630.4 | $10,417,500 | $3,923,706.09 |

9