Hearing Date/Time: April 22, 2020, at 10:00a.m.
Objection Date/Time: April 15, 2020, at 4:00 p.m.

Office of the New York State Attorney General
Counsel for Opioids and Impact Litigation
Executive Division
28 Liberty Street
New York, New York 10005
Telephone: (212) 416-8390
Attn.: David E. Nachman

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | |
| **Purdue Pharma L.P.,** *et al.*, | Case No.: 19-23649 (RDD) |
| | **(Chapter 11)** |
| **Debtors.** | **(Jointly Administered)** |
| | Re: Doc. No. 909 |

**NEW YORK PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION**
<u>**FOR RELIEF FROM THE AUTOMATIC STAY**</u>

**Preliminary Statement**

Defendants'[1] motion asks this Court to set aside black letter bankruptcy and public

nuisance law – as well as basic principles of equity – and allow them to use bankrupt companies

---

[1] The moving Defendants are the following parties facing trial in the opioids-related New York Litigation referenced in footnote 2: Allergan Finance, LLC, AmerisourceBergen Drug Corporation, Bellco Drug Corp., American Medical Distributors, Inc., Anda, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil- Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., Cephalon Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis Pharma, Inc., Actavis LLC, CVS Pharmacy, Inc., Cardinal Health,

as shadow defendants that they can point to at trial as the sole culprits for the opioid epidemic in New York State, Suffolk County and Nassau County.  For the reasons set forth herein, this Court should reject the Defendants' efforts to avoid the full scope of their own liability by seeking relief from the agreed-to stay of the New York Litigation[2] against certain of the debtors in the above-captioned proceeding (Purdue Pharma, L.P., Purdue Pharma Inc., and Purdue Frederick Company (collectively, "the Debtors" or "Purdue")).

Specifically, Defendants ask this Court to create a "limited purpose" exception to the stay in order to apportion fault (but not liability, they say) to the Debtors for an equitable cause of action by adding them to the verdict form as third-parties.  What they would like, in other words, is to add Purdue to the verdict form so they can attempt to pawn off onto Purdue all of the blame and financial exposure, notwithstanding Purdue's inability to participate in the trial and notwithstanding the Plaintiffs' inability to obtain any relief from Purdue in the New York Litigation to abate the nuisance.

While Plaintiffs do not dispute that this Court has discretion to grant relief from its stay, Defendants' request is not supported by law.  The defendants named in Plaintiffs' equitable public nuisance action must either be in or out of the New York Litigation – there is no "limited purpose" of existing only on a verdict form as a non-party to absorb others' liability.  Yet this is

---

Inc., Kinray, LLC, Walmart Inc., McKesson Corp., PSS World Medical, Inc., Walgreen Co., Walgreen Eastern Co., Rite Aid of Maryland, Inc. and Rite Aid of New York, Inc.

[2] New York State, Suffolk County and Nassau County each have filed separate actions (respectively, *New York v. Purdue Pharma et al.,* Index No. 400016/2018; *County of Suffolk v. Purdue Pharma et al.*, Index No. 400001/2017; and *County of Nassau v. Purdue Pharma et al.*, 400008/2017), that are coordinated in the *In re Opioid Litigation* action (Supreme Court, Suffolk County Index No. 400000/2017) (the "New York Litigation"), in which New York, Suffolk and Nassau are the "Track One Plaintiffs."

expressly what Defendants seek in their papers, writing: "Rather, the jury will apportion Debtors' degree of fault solely to determine the *non*-debtor Defendants' liability." (Defendants' Motion for Relief from the Automatic Stay ("Defs. Mot.") at p. 7, ¶12.)

In opposition to Defendants' Motion, Plaintiffs respectfully state as follows:

## ARGUMENT

**I. Any party who causes or contributes to a public nuisance is jointly and severally liable, so there is no legal basis for Defendants' suggested "apportionment of fault" of the Debtors.**

1. On December 4, 2019, the trial court in the New York Litigation issued an order stating that it will "first try the liability aspects of the 'public or common nuisance' cause of action." (NYSCEF No. 2087 at 1.) With limited potential exceptions not relevant here, the sole cause of action currently proceeding to trial is the Plaintiffs' public nuisance claim.

2. Defendants' motion is predicated on the legally incorrect premise that their liability on the Plaintiffs' public nuisance claims in the New York Litigation should be "apportioned" with non-parties, which is how they would construe the Debtors if added to the verdict form. They cite no case law to support this contention[3] and their Memorandum of Law ignores the unambiguous New York case law establishing that Defendants in an equitable public nuisance

---

[3] The cases they do cite as justifying apportionment notwithstanding joint and several liability in Paragraph 15, *Ravo by Ravo v. Rogatnick*, 514 N.E.2d 1104 (1987) and *La Fountaine ex re. Currie,* 282 A.D.2d 935 (3d Dep't 2001), have no relevance to the New York Litigation. *Ravo by Ravo* was a medical malpractice action and *La Fountaine ex re. Currie* was a personal injury action concerning a child's ingestion of lead paint. Moreover, *Ravo* predated the adoption of Article 16 of the New York Civil Practice Law and Rules ("CPLR"), which sets forth the procedures for apportioning liability, and *La Fountaine* was a personal injury case to which the CPLR contributory fault apportionment process expressly applied. Neither case addressed liability for equitable public nuisance.

3

action face joint and several liability for the *entire* nuisance.[4]

3. Defendants' invocation of "CPLR article 16 rights" and reliance on personal injury cases authorizing some form of apportionment with non-parties, including those in bankruptcy, are unavailing.[5] (Defs. Mot. at 2-3.) CPLR Article 16, by its own terms, applies only "when a verdict or decision in **an action or claim for personal injury** is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable." (Emphasis added.) The New York Litigation, however, is not a personal injury action, but rather an equitable action for public nuisance. *See Amelius v. Grand Imperial LLC*, 57 Misc. 3d 835, 847, 64 N.Y.S.3d 855 (N.Y. Sup. Ct. 2017) (striking affirmative defense based on CPLR Article 16 in a public nuisance case, stating "CPLR article 16 is a statutory modification of the doctrine of joint and several liability in personal injury cases, and concerns the apportionment of liability for noneconomic losses sustained by injured individuals as between the various defendants. (*See* CPLR 1601.) It has no application here.")

4. Defendants open their brief by relying exclusively on Article 16 and related personal injury cases as justifying their effort to "merely seek to ensure that any adjudication of

---

[4] Plaintiffs take no position on Defendants' subsequent ability to apportion among themselves and/or non-parties the amount of the judgment for any abatement fund ordered by the trial court. Any such apportionment efforts would be separate from the Plaintiffs' litigation against Defendants. Numerous Defendants have asserted claims for contribution or equitable allocation among the affirmative defenses asserted in their answers in the New York Litigation. None appears to have asserted cross-claims or third-party claims. *See, e.g.*, CPLR 1403: "A cause of action for contribution may be asserted in a separate action or by cross-claim, counterclaim or by third-party claim in a pending action."

[5] In particular, *Cabrera v. A-To-Z Signs*, 28 N.Y.S 3d 567 (Sup. Ct. West. Cnty. 2016) and *Kharmah v. Metropolitan Chiropractic Ctr.*, 288 A.D.2d 94 (1st Dep't 2001), are *personal injury actions* specifically applying Article 16 to, respectively, prevent a Defendant from being penalized for the inability to implead the State and from bearing a disproportionate share for non-economic damages as a result of bankrupt co-defendants.

Defendants' own alleged liability does not allocate to them liability that is properly allocable to other alleged tortfeasors, including Debtors." (Defs. Mot. at 2.) This principle does not apply in an equitable public nuisance cause of action for which each actor faces joint and several liability.

5. Under settled New York law, anyone who creates, contributes to, or maintains a public nuisance is jointly and severally for the consequences therefrom.[6] *See Simmons v. Everson*, 124 N.Y. 319, 323-24 (1891) ("Persons who by their several acts or omissions maintain a public or common nuisance, are jointly and severally liable for such damages as are the direct, immediate and probable consequences of it.") (citing *Irvine v. Wood*, 51 N.Y. 224, 230 (1872)); *State v. Schenectady Chemicals, Inc.*, 103 A.D.2d 33, 38 (3d Dept. 1984) ("nuisance liability is joint and several"); *State v. Fermenta ASC Corp.*, 160 Misc. 2d 187, 195 (Sup. Ct., Suffolk County 1994) ("[E]veryone who creates a nuisance or participates in the creation or maintenance . . . of a nuisance are liable jointly and severally for the wrong and injury done thereby[.]") (citations and internal quotation marks omitted); *State v. City of Yonkers*, 14 Misc 3d 1229(A), 2004 WL 5213504, at *12 (Sup. Ct. 2004) ("A party is liable in nuisance even if other contributors to the nuisance are not joined for 'nuisance liability is joint and several[.]' ") (citation omitted); 17A Carmody-Wait 2d § 107:78 ("[E]veryone who creates a nuisance or participates in the creation or maintenance of a nuisance is liable, jointly and severally, for the wrong and injury done thereby. Thus, simply stated, nuisance liability is joint and several.") (internal footnotes omitted). The trial court in the New York Litigation itself has acknowledged this principle. *See* Ex. C,

---

[6] *See also* Exhibit A, Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment on the Issue of Joint and Several Liability, dated January 14, 2020, NYSCEF No. 2557, and Exhibit B, Plaintiffs' Reply in Support of Motion for Partial Summary Judgment on the Issue of Joint and Several Liability, dated February 24, 2020, NYSCEF No. 3946.

Decision and Order, dated Jan. 2, 2020, NYSCEF No. 2350 at p. 2 ("'Persons who join or participate in the creation or maintenance of a public nuisance are liable jointly and severally for the wrong and resulting injury.'") (quoting *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 347 (E.D.N.Y. 2007)).

6. While the Defendants argue that "[a]apportionment is critical to ensure Defendants are not unfairly allocated fault for harms allegedly caused by the Debtors," (Defs. Mot. at 9, ¶16), under the most basic principles of equitable public nuisance, there is no risk of "unfair allocation": each Defendant remaining in this action at the time of trial is jointly and severally liable for the *entire nuisance* if it is found to have caused, contributed to, or maintained the public nuisance. Indeed, this is precisely what happened in the recent public nuisance judgment in the litigation concerning the opioid epidemic in Oklahoma. On August 26, 2019, the District Court of Cleveland County, Oklahoma found just one of the Defendants originally named in Oklahoma's action – Johnson & Johnson – liable for the entire public nuisance, and ordered Johnson & Johnson to pay the full amount necessary to satisfy the projected costs for the first year of Oklahoma's abatement plan. (Ex. D, *Oklahoma v. Purdue Pharma L.P. et al.*, Judgment After Non-Jury Trial, August 26, 2019.)

7. Since CPLR Article 16 expressly applies only to personal injury claims, there is no basis for "apportionment" of fault with non-parties in an equitable public nuisance action. Defendants are free to argue that they did not cause or contribute to the public nuisance in Suffolk County, Nassau County, or in the State of New York, and to argue they should not be held liable. But they are not entitled to apportion fault among themselves or any non-parties in the upcoming nuisance-only liability trial in the New York Litigation. Consequently,

Defendants' sole predicate for their motion fails.

## II. The stay prohibits the moving Defendants from including the Debtors on the verdict form.

8. Defendants seek, in the first instance, "confirmation" from the Bankruptcy Court that "the automatic stay does not prohibit inclusion of the Debtors . . . on the jury verdict form solely to apportion fault." (Defs. Mot. at pp. 1-2.) Such relief must be denied because the stay unambiguously prohibits inclusion of the Debtors on the jury verdict form for purposes of apportioning fault, notwithstanding Defendants' argument that any apportionment of fault is "non-binding" on the Debtors.[7]

9. Contrary to Defendant's unsupported assertions, including the Debtors on the verdict form for the purpose of having a jury apportion to them some amount of fault for the Plaintiffs' public nuisance claims is a "continuation" of judicial proceedings against them – the precise activity prohibited by this Court in its Orders staying the litigation against the Debtors. *See* Amended Order Pursuant to 11 U.S.C. §105(a), *In re Purdue Pharma L.P.*, Adv. Pro. 19-08289 [Dkt. 89]; Second Amended Order Pursuant to 11 U.S.C. §105(a) [Dkt. 105]; Third Amended Order Pursuant to 11 U.S.C. §105(a) [Dkt. 115]. It is, therefore, unsurprising the Defendants do not cite a single case in which a court authorized a severed debtor to remain on a verdict form without first receiving judicial relief from the stay pursuant to 11 U.S.C. 362(d).

10. The cases Defendants do cite, on the other hand, are entirely inapposite. In *Variable-*

---

[7] As set forth in Section III, Defendants also fail to meet their burden to make an initial showing of cause as to why the stay should be lifted – not least because each Defendant faces joint and several liability for the public nuisance, *even if* some portion of fault was improperly apportioned to the Debtors.

7

*Parameter Fixture Development Corp. v. Morpheus*, the district court merely ruled, in pertinent part, that a magistrate judge's non-binding report and recommendation was not void, as argued by the defendant, simply because the report referred to the conduct of a bankruptcy debtor. 945 F. Supp. 603 (S.D.N.Y 1996). *In re Adler,* 395 B.R. 827 (E.D.N.Y. 2008) is similarly unavailing. In that case, the bankruptcy court used fact findings from a state court case as collateral estoppel in the bankruptcy proceeding. The district court reversed, because the debtor had been severed from the state court case, so the fact findings in the state court case violated the stay. 395 B.R. 827 (E.D.N.Y. 2008). In so ruling, the district court observed that the debtor did not have a "full and fair" opportunity to litigate the claims. *Id.* at 836-37. The court did *not* hold – as Defendants contend – that a "state court's findings of fraud by a Chapter 11 debtor severed from the action 'did not violate the automatic stay.'" (Defs. Mot. at p. 7, ¶12). On the contrary, the district court distinguished between the debtor and the corporation he owned, which had not filed for bankruptcy. The full sentence of the opinion from which Defendants selectively quote reads as follows: "The State court's findings against Adler Corps did not violate the automatic stay. However, if the state court finding during the Adler Corps state action was also found to be binding against Debtor on the issue of fraud under the doctrine of collateral estoppel, that finding would clearly violate the automatic stay." *In re Adler*, 396 B.R. at 839.

11. In short: Defendants' insistence that inclusion of the Debtors on the verdict form does not violate the automatic stay because the judgment against them would be "non-binding" is not

8

supported by the plain language of the Court's order, the Bankruptcy Code, or any applicable statutory or case law.

### III. No cause exists for granting relief from the automatic stay for the "limited purpose" of adding Debtors to the verdict form.

12. Section 262(d)(1) of the Bankruptcy Code authorizes the Bankruptcy Court to grant relief from its stay of proceedings solely "for cause, including the lack of adequate protection of an interest in property of such party in interest." § 362(a)(1). Defendants, as the movants, bear the burden of "mak[ing] an initial showing of cause" to justify relief from the Court's stay against the Debtor Defendants on this ground. *In re Sonnax Industries, Inc.*, 907 F. 2d 1280, 1285 (2d Cir. 1990). For the reasons set forth below, they have failed to satisfy this threshold burden.

#### A. The *Sonnax* factors do not justify Defendants' proposed "limited purpose" of lifting the stay.

13. Defendants rely on application of the factors set forth in *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (1990) ("*Sonnax* factors")[8] to guide the Court's determination as to whether "cause" exists to grant relief from the automatic stay. (Defs. Mot. at pp. 9 – 12.). The *Sonnax* factors, however, do not address the propriety of the specific relief requested by Defendants or whether "cause" exists for such relief. In *Sonnax*, the plaintiff sought relief from the automatic stay "to allow it to continue prosecution of its litigation in New York courts and to enforce the [trial court's] injunction." *Sonnax*, at 1292. The Second Circuit affirmed the lower court's

---

[8] To be precise, the court in *Sonnax* found four of the twelve factors identified in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) to be relevant in that action in determining whether there was cause for litigation to proceed against the debtor.

9

ruling denying the plaintiff's request to lift the automatic stay by applying various factors to determine whether "whether litigation should be permitted to continue in another forum." *Id.* at 1286. Accordingly, the *Sonnax* factors guide whether litigation should be permitted to continue against a debtor as a defendant – *not* whether debtors may be added to the verdict form as third-parties.

14. This is a critical distinction because the factors considered in *Sonnax* relate to the propriety of continued litigation resulting in a binding judgment against the debtor. In weighing the pertinent factors, the Court in *Sonnax* was concerned about, *inter alia*, potential abuse of bankruptcy by a debtor to avoid judgment, the hardships posed to the plaintiff and defendants (but, notably, not the co-defendants) if litigation were allowed to proceed against the debtor, and whether bankruptcy court would be an expeditious forum for resolution of the litigated issues. None of those considerations have any relevance to the relief requested by Defendants.

**B.    Defendants have not satisfied the *Sonnax* factors even if they apply.**

15. In support of their motion, Defendants contend the following factors weigh in favor of lifting the stay (Defs. Mot. at 10-11):

- Lack of connection with or interference with the bankruptcy case;
- Whether the parties are ready for trial in the other proceeding; and
- Impact of the stay on the parties and the balance of harms.

In fact, each of these factors militates *against* granting the requested relief.

*i. Lack of connection with or interference with the bankruptcy case.*

16. Defendants contend that this factor "weighs dispositively" in their favor because the Debtors will be third-parties on the verdict form and not active defendants. (Defs. Mot. at p. 10,

10

¶19.) Yet Defendants fail to explain how adding the Debtors to the verdict form "lacks connection" with a bankruptcy case that is *directly related* to the New York Litigation. The "lack of connection" factor was described by the court in *In re Curtis* (cited in *Sonnax*) as follows: "Congress contemplated that relief from the stay may be appropriate to permit state court adjudication of *such matters as divorce, child custody and probate proceedings* where such matters bear no relation to the bankruptcy case." *In re Curtis*, 40 B.R. 795, 804–05 (Bankr. D. Utah 1984) (emphasis added). The New York Litigation obviously is fundamentally different, and far more "connected".

17. Even assuming their proposal would not directly interfere with bankruptcy proceedings, which Plaintiffs do not concede, the New York Litigation is intimately connected with the bankruptcy case, as the Plaintiffs may well litigate the public nuisance claim against the Debtors in bankruptcy court. Moreover, if a finding of liability against the Debtors in the New York litigation has no binding effect, then it is legally irrelevant. If, on the other hand, a finding of liability *does* have some legal effect, then it clearly would interfere with the bankruptcy case. Either way, the stay should not be lifted for the Defendants' so-called "limited purpose."

      *ii.  Whether the parties are ready for trial in the other proceeding.*

18. Defendants inexplicably contend that this factor "weighs heavily in favor of relief" (Defs. Mot. at p. 10, ¶19) because the litigation is ready to proceed against the Defendants remaining in the New York Litigation.[9] But that argument completely misses the point, as the

---

[9] Until the Covid-19 epidemic caused the cessation of non-emergency court proceedings in New York, jury selection for the liability trial in the New York Litigation was scheduled for this week. Plaintiffs expect the trial against the non-Debtor Defendants to commence as soon as the Suffolk County trial court is up and running.

11

*Curtis* court noted:

> In the Court's view, "a desire to permit an action to proceed to completion in another tribunal," *see* H.R.Rep. No. 95–595, *supra*, at 343, U.S.Code Cong. & Admin.News 1978, p. 6300, contemplates the situation in which the debtor is a party to a prepetition action that has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court.

*Curtis*, 40 B.R. at 805. This factor contemplates a situation where a case involving a debtor is on the "eve of trial," where it would be a waste of judicial resources not to allow that case to proceed. In the New York Litigation, however, discovery against the Debtors (and the Sackler defendants) was stayed for months as a result of Purdue's bankruptcy filing, so Plaintiffs have not been able to prepare for trial against them. Thus, this factor also weighs against lifting the stay.

### iii. *Impact of the stay on the parties and the balance of harms.*

19. Plaintiffs leave to the Debtors to assert on their own behalf the harm that might result to them if Defendants' request were to be granted. However, Defendants have failed to show how *they* will be harmed if the stay is not lifted. Defendants claim that "[a]pportionment is critical to ensure Defendants are not unfairly allocated fault for harms allegedly caused by the Debtors," (Defs. Mot. at p. 9, ¶16), but as discussed above, they are not entitled to have fault apportioned in a public nuisance case because all parties who cause or contribute to a nuisance are jointly and severally liable. They cite *Schipani v. McLeod*, 541 F.3d 158 (2d Cir. 2008), for the proposition that "apportionment of fault is a component of the liability determination." *Id.*, quoting *Bryant v. State*, 850 N.E.2d 1161, 7 N.S.3d 732 (2006). However, *Schipani* was a personal injury case involving an automobile accident, to which CPLR Article 16 would clearly

12

apply, and the issue in *Bryant* was apportionment of fault between the plaintiff and the defendant – not among co-defendants. Because Defendants are not entitled to have the Debtors' fault apportioned in the New York Litigation, they have failed to show how they are harmed if the stay is not lifted.

20. Further, the Defendants' requested relief is not, as they contend, "consistent with decisions reached by courts across the country," because the cases they cite involved adding debtors as actual parties to the litigation. (Defs. Mot. at p. 11, ¶20.) In *In re Paone*, 401 B.R. 151 (Bankr. M.D. Pa. 2009), the court granted relief from a bankruptcy stay in a personal injury action so that the debtor "may be joined as an additional defendant in the state court litigation," finding, in part, that it "could be disastrous to the Debtor" if she did not participate in the state court case. *Id*. at 152. This was because the other defendant in the case would be entitled to assert a post-bankruptcy claim against the debtor under Pennsylvania law if that defendant paid more than its share of the plaintiff's damages. *Id*. Here, Defendants claim that inclusion of the Debtors on the verdict form is "non-binding," so *Paone* does not apply.

21. *In re Dorner*, 125 B.R. 198 (Bankr. N.D. Ohio 1991), in which the court granted relief from a bankruptcy stay to permit the debtor to be named as "*a party* to pending state court lawsuits," *id.* at 199, also is inapplicable. In *Dorner*, the debtor started a fire while working at a marina owned by Copper Kettle. *Id*. The fire destroyed a building and numerous boats that were in it. The boat owners sued Copper Kettle, and Copper Kettle filed cross-claims and third-party claims against the debtor, prompting him to file for bankruptcy protection. Under Ohio statutory law, Copper Kettle was entitled to have the debtor's proportionate fault determined in the state court litigation. *Id*. at 200-201. Copper Kettle filed a claim against the Debtor, but the amount

13

was unliquidated because it depended upon a determination of Copper Kettle's and the debtors' proportionate fault in the state court litigation. *Id.* at 202. Because Defendants are not entitled to have the proportionate fault of the Debtors determined at this phase of the New York litigation, *Dorner* does not support lifting the stay, much less to name Purdue on the verdict form as a third-party.[10]

22. For all of these reasons, Defendants have failed to demonstrate a valid basis for lifting the stay against Debtors.

## CONCLUSION

Each Defendant is free to argue in the New York Litigation that it is not liable for Plaintiffs' claims. But any Defendant who is found to have caused, contributed to, or maintained the opioid crisis within the Plaintiffs' geographic boundaries will be jointly and severally liable for abatement of the nuisance – regardless whether some other party may have played a larger or smaller role. With respect to Plaintiffs' claims, there simply is no right of apportionment.[11]

The Defendants' motion is not brought to ensure the fair allocation of liability, because each Defendant is subject to joint and several liability for the nuisance. It is instead an attempt to

---

[10] Moreover, unlike in *Dorner*, the Plaintiffs have repeatedly argued in briefing in the New York Litigation that Defendants' defenses of contributory negligence fail as a matter of law. *See, e.g.* Plaintiffs' Motion to Dismiss Defenses Pursuant to CPLR 3211(b), to Frame Issues for Trial, and for a Corresponding Protective Order (Mot. Seq. 32; NYSCEF Nos. 3272 -77); State's Memorandum of Law in Support of its Opposition to Defendants' Motion Regarding Trial and Outstanding Discovery (NYSCEF No. 2108).

[11] As noted above in footnote 4, Defendants may have the right to cross-claim *among themselves* how the cost of abatement should be allocated, but that issue is not before the state court at this time. The only issue to be tried in the upcoming trial is which Defendants, if any, are liable for creating or maintaining a public nuisance in the Plaintiffs' geographic areas.

avoid or minimize their liability for their own roles in creating the opioid epidemic. There is no authority in the Bankruptcy Code to lift the stay under these circumstances, and Defendants' motion should be denied.

Dated: March 24, 2020
      New York, New York

                Respectfully submitted,

                Letitia James
                Attorney General of the State of New York

                By: /s/ David E. Nachman
                David E. Nachman
                Counsel for Opioids and Impact Litigation
                Executive Division
                Office of the New York State Attorney General
                28 Liberty Street
                New York, New York 10005
                Telephone: (212) 416-8390
                Email: David.Nachman@ag.ny.gov

                *Counsel for the People of the State of New York*

                /s/ Paul J. Hanly, Jr.
                Paul J. Hanly, Jr.
                Jayne Conroy
                Andrea Bierstein
                Thomas I. Sheridan, III
                SIMMONS HANLY CONROY LLC
                112 Madison Avenue
                New York, NY 10016
                (212) 784-6401
                phanly@simmonsfirm.com
                jconroy@simmonsfirm.com
                abierstein@simmonsfirm.com
                tsheridan@simmonsfirm.com

*Counsel for Suffolk County*

/s/ Paul J. Napoli
Paul J. Napoli
Hunter J. Shkolnik
Salvatore C. Badala
Joseph L. Ciaccio
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road, Suite 305
Melville, New York 11747
Phone: (212) 397-1000
Facsimile: (646) 843-7603
pnapoli@napolilaw.com
hunter@napolilaw.com
sbadala@napolilaw.com
jciaccio@napolilaw.com

*Counsel for Nassau County*