# EXHIBIT C

**E-FILE**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

IN RE OPIOID LITIGATION

Index No. 400000/2017

**DECISION AND ORDER**

Before the Court is the application of Defendants (NYSCEF No. 2118) to compel certain discovery, which Plaintiffs have opposed (NYSCEF Nos. 2176 and 2178). Pursuant to the request of Defendants' counsel, a conference call was conducted with Special Masters Besunder and McNamara to consider, and hear oral argument on, Defendants' application.

**Claims Data and I-STOP Data from New York State.** Defendants claim that there are certain deficiencies in the Medicaid data and NYSHIP data produced by Plaintiff New York State.

**Overdose Data.** Defendants complain that the overdose data produced by Nassau County and Suffolk County does not contain all the available fields.

**Manufacturer Defendants Interrogatories 5-8.** The Manufacturer Defendants seek an order compelling Plaintiff's to fully answer interrogatories 5-8.

**Manufacturer Defendants Interrogatories 13, 14, and 20.** The Manufacturer Defendants seek an order compelling Plaintiffs to fully respond to Manufacturer Defendants Interrogatories 13, 14, and 20.

Defendants' application must be considered in light of this Court's Order No. 1875 entered November 7, 2019, bifurcating liability and damages at the trial of this action, and this Court's subsequent Order No. 2087 dated December 4, 2019, directing that discovery be limited

7017965.1

to "all the claims and defenses limited to the liability aspect of the public nuisance causes of action."

Defendants, in essence, argue that the discovery which they seek, and which is the subject of their application, relates to whether their conduct is the "cause" of the Opioid Epidemic.

**Causation-in-Fact.** "Satisfaction of the causation requirement for liability in public nuisance actions requires proof that a defendant, alone or with others, created, contributed to, or maintained the alleged interference with the public right." *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 346 (E.D.N.Y. 2007) (Weinstein, J.). As pointed out by Judge Weinstein in *A-1 Jewelry*:

> Persons who join or participate in the creation or maintenance of a public nuisance are liable jointly and severally for the wrong and resulting injury. Where it is difficult or impossible to separate the injury caused by one contributing actor from that caused by another and where each contributing actor's responsibility individually does not constitute a substantial interference with a public right, defendants may still be found liable for conduct creating in the aggregate a public nuisance if the suit is one for injunctive relief. *NAACP*, 271 F.Supp.2d at 493 (citing *Chipman v. Palmer*, 77 N.Y. 51, 1879 WL 12206 (N.Y.1879)). Liability under such circumstances may be depending on the actor's awareness of the other contributors' activities or the effect of their actions in the aggregate. RESTATEMENT (SECOND) OF TORTS §840E, cmt. b.
>
> The tortious actions or omissions of a defendant or defendants need to be the immediate cause of injury to the public. If a defendant's conduct "remains the dominant and relevant fact without which the public nuisance would not have resulted where and under the circumstances it did," *United States v. Hooker Chems & Plastic Corp.*, 722 F.Supp. 960, 968 (W.D.N.Y.1989) (citation omitted), it may be held liable for setting in motion or being a force in the sequence of events resulting in injury to the public. Intervening actions, even multiple or criminal actions taken by third parties, do not break the chain of causation if a defendant could reasonably have expected their nature and effect.

2

7017965.1

*See, e.g., State v. Schenectady Chems. Inc.*, 103 A.D.2d 33, 479 N.Y.S.2d 1010, 1014 (N.Y.App. Div.3d Dep't 1984) (chemical manufacturer may be liable for public nuisance even where it contracted with third party for disposal of chemical byproduct wastes); *Caso v. District Counsel, 37*, 43 A.D.2d 159, 350 N.Y.S.2d 173, 175, 178 (N.Y.App. Div2d Dep't 1973) (a common law public nuisance action is an "appropriate remedy" where illegal strike by public employees who served sewage treatment plants led to release of raw sewage into river; eventually it washed up onto breaches contaminating the water supply); *City of Rochester v. Premises Located at 10-12 S. Wash. St.*, 180 Misc.2d 17, 687 N.Y.S.2d 523, 527 (N.Y.Sup.Ct.1998) (nightclub owner could be held liable for off-premises conduct of his patrons upon leaving the club); State v. Fermenta ASC Corp., 160 Misc.2d 187, 608 N.Y.S.2d 980, 985 (N.Y.Sup.Ct.1994) (lack of control over an herbicide at time injury to public occurred does not preclude public nuisance action against manufacturer).

*Proximate Cause.* With regard to proximate cause, Judge Weinstein stated the following:

> Separate and apart from factual cause is the concept of proximate cause. Proximate cause embodies a policy requirement in some tort actions that a defendant's tortious conduct be so causally sufficiently close to the harm suffered that it is just or fair to hold the defendant liable for the consequences of its actions. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 299, 235 (2d Cir. 1999) ("Because the consequences of an act go endlessly forward in time and its causes stretch back to the dawn of human history, proximate cause is used essentially as a legal tool for limiting a wrongdoer's liability only to those harms that have a reasonable connection to his actions."). The label "proximate cause" has occasionally been employed in public nuisance actions. *See NAACP*, 271 F.Supp.2d at 496 (citing public nuisance cases but noting that they often involve more than one cause of action or are otherwise ambiguous). In such cases, "where the welfare and safety of an entire community is at stake, the cause *348 need not be so proximate as in individual negligence cases." *Id.* at 497.

> iii. *Causation in Suits Against the Firearms Industry.* The possibility that, under some set of circumstances, a causal connection between harm suffered by the public and the conduct of members of the gun industry might be shown has not been precluded by the New York courts. In *Sturm, Ruger* the trial court,

3

7017965.1

while finding that the harm alleged was too remote from defendants' conduct, explicitly left open the possibility that such a showing might be possible with advances in research and available date. Index NO. 402586/00, at 26-27, 2001 WL 35994963 ("in order to assert the broad liability suggested by the Complaint, plaintiffs must allege more facts which would demonstrate that defendants are somehow contributing to the handgun nuisance. This may become possible as further BATF investigations provide more information about the manufacture, sale and eventual unlawful use of handguns.") The Appellate Division affirmed, finding it "inappropriate at this juncture to sustain this complaint." 761 N.Y.S.2d at 200 (emphasis added).

Both the trial court and the Appellate Division in *Sturm, Ruger* relied in large measure on the decision of the New York Court of Appeals in *Hamilton*, 727 N.Y.S.2d 7, 750 N.E.2d at 1055. In considering a negligence claim brought by individual gunshot victims against members of the firearms industry, the *Hamilton* court found that the causal connection between the harm suffered and the conduct of the defendants was too attenuated. *Id.* at 1062. It left open the possibility that liability could be imposed upon "a tangible showing that defendants were a direct link in the causal chain that resulted in plaintiffs' injuries, and that defendants were realistically in a position to prevent the wrongs." *Id.*

The Court is of the opinion that most of the information and documents sought by Defendants in their application is either only marginally or tangentially relevant to the issue of liability only on Plaintiffs' public nuisance cause of action, or relates more to damages, or would be unduly burdensome considering that the first phase trial is for liability only, on the public nuisance cause of action. For example, Defendants seek information on a patient by patient, or prescription by prescription, or medical claim by medical claim basis, including full patient histories for potentially millions of patients.

With respect to the overdose data sought by Defendants, Plaintiffs are ordered to include fields for manner of death, but not location of death, as that would potentially lead to de-identified protected health insurance information being re-identified.

FILED: SUFFOLK COUNTY CLERK 01/02/2020 11:19 AM
NYSCEF DOC. NO. 2350
INDEX NO. 400000/2017
RECEIVED NYSCEF: 01/02/2020
19-23649-shl    Doc 979-3    Filed 03/24/20    Entered 03/24/20 14:46:00    Exhibit
Exhibit C    Pg 6 of 6

With respect to the I-STOP data, the State has not produced data for the time period 2010-2013, but has produced such data for the time period thereafter. The State explains that I-STOP went into effect August 20, 2013. If the State is in possession of similar information for I-STOP's predecessor for the time period 2010-2013, such data is required to be produced. If the State is not in possession of such data, it shall submit an affidavit to that effect.

The discovery sought by Defendants in their application is deferred until after the liability phase of the public nuisance trial, save for the two exceptions referred to above (manner of death overdose data, and I-STOP or predecessor information for the time period 2010-2013).

ENTER,

_____
HON. JERRY GARGUILO, J.S.C.

HON. JERRY GARGUILO