HENRICHSEN SIEGEL, PLLC
225 Broadway
Suite 1803
New York, New York 10007
(646) 378-4421 (phone)
Chiung-Hui Huang
Neil L. Henrichsen (Pro Hac Vice Admission to be applied for)
Dawn C. Stewart (Pro Hac Vice Admission to be applied for)

*Counsel to Creditor*
*Board of Chicago School District No. 299*

**EXPEDITED HEARING REQUESTED**
**HEARING DATE TO BE DETERMINED**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.** | **(Jointly Administered)** |

## CREDITOR BOARD OF CHICAGO SCHOOL DISTRICT NO. 299'S MOTION TO SUBMIT CLAIM TO MEDIATION

Board of Chicago School District No. 299 ("**Chicago Public Schools**" "**CPS**"), a creditor in these proceedings, respectfully represents as follows in support of this Motion for the relief set forth in the proposed Order attached hereto as Exhibit "A":

### Introduction

1.   On February 20, 2020, Debtors filed a Motion to Appoint Mediators stating that "resolving disputes as to how the Debtors' assets should be allocated is a critical gating item to moving these chapter 11 cases forward to a consensual plan. These cases were commenced in the wake of the Debtors facing over 2,700 cases pending in different fora around the country on behalf of governmental entities and private parties, including both individuals and entities, alleging

claims related to Purdue's production, marketing and sale of certain opioid medications (the "**Pending Actions**")."

2.      On March 4, 2020 this Court entered an Order [Dkt. No. 895] granting Debtors' Motion to Appoint Mediators and providing, in pertinent part, that "Additional parties in interest other than the Mediation Parties (the **"Additional Parties"**) may participate voluntarily in the mediation in response to a request from the Mediators, or further order of this Court."

3.      On November 20, 2019, CPS filed a Class Action Complaint in the United States District Court for the Northern District of Ohio, Eastern Division, Case No 1:19-op-46042-DAP against multiple Defendants including affiliates of and/or entities related to the Debtors as well as additional distributors and manufacturers.  CPS seeks to represent a national class of independent public school districts, governmental entities whose damages claims are not included in the claims filed by other state or local governments ("the Class").

4.      On March 13, 2020, Proofs of Claim setting out the claims against the Debtors were filed.  Copies are attached as Exhibit "B."

5.      In their Motion to Appoint Mediators the Debtors represented that "the Debtors are committed to moving these cases toward confirmation and emergence as quickly—and thoughtfully—as possible, so that the Debtors' assets can be distributed to legitimate claimants. To ensure that the Debtors' assets are appropriately distributed to or for the benefit of legitimate claimants, an agreement on allocation is required, whether through consensual resolution or litigation."

6.      CPS and the Class are legitimate claimants with very sizeable and significant claims, and they should not be denied the opportunity to participate in a distribution.

**Factual Background**

7.      Public schools perform the essential function of caring for and educating most American children, a function essential to our democratic system. The nation's public school districts have been hard hit by the opioid epidemic. Accordingly, it is important that any mediation of claims involving the Debtors include the damages experienced by public schools.

8.      The Board of Chicago School District No. 299 ("Chicago Public Schools", "CPS") is the school district which provides all K-12 public education for the City of Chicago, Illinois. Along with public school districts all over the country, including the at least three others that have already submitted proofs of claim in these proceedings, and others who are in the process of doing so, CPS is experiencing unprecedented challenges and costs resulting from the impact of the nationwide opioid epidemic on its students.

9.      CPS and the prospective Class have incurred and continues to incur the cost and burden of providing complex and expensive educational services to students who have suffered neurological damage caused by opioid use by their mothers before and during pregnancy. These costs are expected to be in the billions of dollars nationwide.  The opioid crisis has had a particularly profound impact on women, who are more likely than men to suffer from chronic pain, to receive prescriptions for pain relievers and in higher doses, and to use them for longer periods of time.[1] The United States has seen a precipitous rise in cases of Neonatal Abstinence Syndrome (NAS), the diagnosis pertaining to the addiction and withdrawal complications that affect babies

---

[1] *Opioid Addiction 2016 Facts & Figures,* American Society of Addiction Medicine, https://www.asam.org/docs/default-source/advocacy/opioid-addiction-disease-facts-figures.pdf.

with prenatal opioid exposure.[2] Nationally, the cost of treating NAS increased from $61 million in 2003 to nearly $316 million in 2012.[3]

10. CPS has brought an action on behalf of itself and a national Class of all public school districts that are independent units of government rather than agencies or sub-units of municipalities, counties, states, or other units of government ("the Class"). The claims of these public school districts are distinct from and not included in any of the claims brought by other state or local governments. CPS and the Class bear the costs of providing special education and related services to children who were exposed to opioids before birth, including those with NAS, who are significantly more likely to suffer from learning and developmental disabilities.[4] CPS and the Class have seen a significant and steady rise in the number of children with special education needs resulting from the opioid crisis.

11. Even if the opioid crisis were to be abated today, the costs borne by CPS and members of the proposed Class are likely to increase exponentially in the years to come as the current cohort of adversely impacted children enters primary school and advances through high school.

---

[2] Hannah Rappleye et al., *Born Addicted: The Number of Opioid-Addicted Babies is Soaring*, NBCNEWS, Oct. 9, 2017, https://www.nbcnews.com/storyline/americas-heroin-epidemic/born-addicted-number-opioid-addicted-babies-soaring-n806346; *Dramatic Increases in Maternal Opioid Use and Neonatal Abstinence Syndrome*, Nat'l Inst. on Drug Abuse, https://www.drugabuse.gov/related-topics/trends-statistics/infographics/dramatic-increases-in-maternal-opioid-use-neonatal-abstinence-syndrome (last updated Sept. 2015).

[3] T.E. Corr & C.S. Hollenbeak, *The economic burden of neonatal abstinence syndrome in the United States*, 112 Addiction 1590 (Sept. 2017), *available at* https://onlinelibrary.wiley.com/doi/abs/10.1111/add.13842.

[4] Mary-Margaret A. Fill, MD, *et al.*, Educational Disabilities Among Children Born with Neonatal Abstinence Syndrome, 142 PEDIATRICS 3 (Sept. 2018).

12. CPS and the Class, by counsel, have retained experts to opine on remedies to address the opioid crisis and its effect on CPS and members of the proposed Class. Attached as Exhibit "C" hereto is the Declaration of Professor Tammy Kolbe from the University of Vermont. Professor Kolbe generally opines that for children with prenatal opioid exposure, CPS and members of the Class incur tremendous costs for a wide array of special education services that they are legally obligated to provide, which can range from speech therapy and small group instruction to one-on-one dedicated staff and residential school placements. In addition, Professor Kolbe opines that school districts incur additional expenses for supports provided to students who have been exposed to opioids and have academic, socioemotional, and behavioral challenges, and yet who do not formally receive special education services. Such services include social work, therapy, academic accommodations, modifications, and interventions, and other supports. *See generally* Exhibit "C."

13. CPS and the Class, by counsel, have also retained Ira J. Chasnoff, M.D., a Professor of Clinical Pediatrics at the University of Illinois College of Medicine. Dr. Chasnoff's Declaration is attached as Exhibit "D" hereto. Dr. Chasnoff generally opines that NAS is a significant medical condition that can lead to serious and likely permanent challenges for children and that the impact of NAS can include profound and permanent problems with focus, attention span, self-control, hyperactivity, executive functioning, emotional self-regulation, impulse control, vision, motor control, physical development, attachment and emotional stability, sensory processing, interpersonal interactions, learning, cognitive processing, and behavior. The challenges children with NAS face frequently manifest in school as a disability or disabilities that require specialized intervention through the special education system. *See generally* Exhibit "D."  The mediation process will benefit from considering the information from these experts.

5

14. In sum, inclusion of CPS and the Class in the mediation of claims involving the Debtors is essential. The Class consists of independent governmental entities that are not represented by the cities, counties or states where they are located. These independent public school districts should be compensated for any expenditures they have incurred to address the impact of the opioid epidemic on their students. The mediation process will be enhanced by incorporating these substantial claims in any potential resolution.

### Legal Basis for Relief

15. As Debtors pointed out in their Motion to Approve Mediators, this Court is authorized to order mandatory mediation pursuant to Section 105 of the Bankruptcy Code, Rule 9019-1 of the Local Bankruptcy Rules for the Southern District of New York, and the Court's General Order M-390. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); S.D.N.Y. Bankr. L.R. 9019-1 ("The Court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee."); *see also In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 84 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011); Order Appointing a Mediator, *In re Windstream Holdings, Inc.,* No. 19-22312 (RDD) (Bankr. S.D.N.Y. July 30, 2019), ECF 874.

16. The Debtors are seeking "a global consensual resolution of value allocation." [Dkt. No. 855 ¶ 21]. A global consensual resolution is not possible without allowing school district creditors to participate.

17. Given the severity of CPS and the Class's claims against the Debtors, it is critical to the interests of justice that CPS be entitled to participate in the mediation process and that its claims, and those of the Class, be considered and evaluated along with other legitimate claimants. While the mediation process has commenced it is certainly early enough in the process to benefit from evaluating and incorporating the claims of CPS and the Class.

18. If CPS is excluded from the mediation process, CPS and the Class could be denied their opportunity to secure their fair pro-rata share of available assets, thwarting one of the primary tenants of Chapter 11 Bankruptcy.

19. Allowing CPS and other School District creditors to participate in mediation will avoid undue delay and costs.

20. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

21. Debtors have been consulted by CPS regarding this Motion and do not consent to the relief sought herein.

**Notice**

22. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures entered on November 18, 2019 [Dkt. No. 498] and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this motion. The Debtors respectfully submit that no further notice is required.

**WHEREFORE**, the CPS respectfully request that this Court enter an Order deeming CPS an Additional Party and submitting CPS' claims to mediation.

Dated:  March 30, 2020

Respectfully Submitted,

By:  */s/ Chiung-Hui Huang*
Chiung-Hui Huang
HENRICHSEN SIEGEL, P.L.L.C.
Attorney for Creditor Chicago Public Schools
225 Broadway, Suite 1803
New York, NY 10007
(646) 378-4421
chuang@hslawyers.com

Neil L. Henrichsen (pro hac vice to be applied for)
DC Bar No. 420277
Dawn C. Stewart (pro hac vice to be applied for)
DC Bar No. 458555
1440 G Street, NW
Washington, DC 20005
Tele: (202) 423-3649
Fax: (202) 379-9792
nhenrichsen@hslawyers.com
dstewart@hslawyers.com