HENRICHSEN SIEGEL, PLLC  **EXPEDITED HEARING REQUESTED**
225 Broadway  **HEARING DATE TO BE DETERMINED**
Suite 1803
New York, New York 10007
(646) 378-4421 (phone)
Chiung-Hui Huang
Neil L. Henrichsen (Pro Hac Vice Admission applied for)
Dawn C. Stewart (Pro Hac Vice Admission applied for)

*Counsel to Creditors*
*Board of Education of Thornton Township High School District 205,*
*Board of Education of Thornton Fractional Township High School District 215*
*Board of Education of East Aurora School District 131*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.** | **(Jointly Administered)** |

**CREDITORS THE BOARD OF EDUCATION OF THORNTON TOWNSHIP HIGH SCHOOL DISTRICT 205, THE BOARD OF EDUCATION OF THORNTON FRACTIONAL TOWNSHIP HIGH SCHOOL DISTRICT 215, AND THE BOARD OF EDUCATION OF EAST AURORA SCHOOL DISTRICT 131'S MOTION TO SUBMIT CLAIMS OF INDEPENDENT PUBLIC SCHOOL DISTRICTS TO MEDIATION**

The Board of Education of Thornton Township High School District 205, the Board of Education of Thornton Fractional Township High School District 215, and the Board of Education of East Aurora School District 131 (hereinafter the "Independent Public School Districts")[1], as creditors in these proceedings, respectfully represent as follows in support of their Motion To

---

[1] Independent Public School Districts counsel have been in contact with numerous other public school districts which are in the process of approval to file claims in this bankruptcy, and are expected to support this Motion as well.

Submit Claims of Independent Public School Districts to Mediation (the "Motion")² and for the relief set forth in the proposed Order attached hereto as Exhibit "A":

### Introduction

1.    On February 20, 2020, Debtors filed a Motion to Appoint Mediators [Dkt. No. 855] stating that "resolving disputes as to how the Debtors' assets should be allocated is a critical gating item to moving these chapter 11 cases forward to a consensual plan. These cases were commenced in the wake of the Debtors facing over 2,700 cases pending in different fora around the country on behalf of governmental entities and private parties, including both individuals and entities, alleging claims related to Purdue's production, marketing and sale of certain opioid medications (the '**Pending Actions**')."

2.    On March 4, 2020, this Court entered an Order [Dkt. No. 895] granting Debtors' Motion to Appoint Mediators and providing, in pertinent part, that "Additional parties in interest other than the Mediation Parties (the '**Additional Parties**') may participate voluntarily in the mediation in response to a request from the Mediators, or further order of this Court."

3.    On November 20, 2019, a Class Action Complaint in the United States District Court for the Northern District of Ohio, Eastern Division, Case No 1:19-op-46042-DAP was filed on behalf of independent school districts against multiple Defendants including affiliates of and/or entities related to the Debtors as well as additional distributors and manufacturers (the "Class Action Complaint"). The Class Action Complaint seeks to represent a national class of independent public school districts, governmental entities whose damages claims are not included in the claims filed by other state or local governments.

---

² This Motion is in all material respects identical to the Board of Chicago School District No. 299's ("CPS") *Motion to Submit Claim to Mediation* [Dkt. No. 998] filed on March 30, 2020. CPS has filed a Notice withdrawing said Motion.

4. On March 13, 2020, Proofs of Claim setting out the claims against the Debtors were filed by the Independent Public School Districts. Copies are attached as Exhibit "B." The Independent Public School Districts have jurisdiction within the following in the State of Illinois: the cities of Aurora, Calumet City, and Harvey, as well as the villages of South Holland, Dolton, and Lansing.

5. In their Motion to Appoint Mediators [Dkt. No. 855], the Debtors represented that "the Debtors are committed to moving these cases toward confirmation and emergence as quickly—and thoughtfully—as possible, so that the Debtors' assets can be distributed to legitimate claimants. To ensure that the Debtors' assets are appropriately distributed to or for the benefit of legitimate claimants, an agreement on allocation is required, whether through consensual resolution or litigation."

6. The Independent Public School Districts and the proposed Class are legitimate claimants with very sizeable, significant and unique claims, and they should not be denied the opportunity to participate in a distribution.

**Factual Background**

7. Public schools perform the essential function of caring for and educating most American children, a function essential to our democratic system. The nation's public school districts have been hard hit by the opioid epidemic. Accordingly, it is important that any mediation of claims involving the Debtors include the damages experienced by public schools.

8. The Independent Public School Districts provide public education for their respective jurisdictions. Along with public school districts all over the country, the Independent Public School Districts are experiencing unprecedented challenges and costs resulting from the impact of the nationwide opioid epidemic on its students.

9. The Independent Public School Districts and the prospective Class have incurred and continue to incur, among other damages, the cost and burden of providing complex and expensive educational services to students who have suffered neurological damage caused by opioid use by their mothers before and during pregnancy. These costs are estimated to be in the billions of dollars nationwide. The opioid crisis has had, and continues to have, a particularly profound impact on women, who are more likely than men to suffer from chronic pain, to receive prescriptions for pain relievers and in higher doses, and to use them for longer periods of time.[3] The United States has seen a precipitous rise in cases of Neonatal Abstinence Syndrome (NAS), the diagnosis pertaining to the addiction and withdrawal complications that affect babies with prenatal opioid exposure.[4] Nationally, the cost of treating NAS increased from $61 million in 2003 to nearly $316 million in 2012.[5] NAS results in permanent, irreversible neurological injuries.

10. The Class is comprised of all public school districts that are independent units of government rather than agencies or sub-units of municipalities, counties, states, or other units of government ("the Class"). The claims of these public school districts are distinct from and not included in any of the claims brought by other state or local governments. The Independent Public School Districts and the Class are legally mandated to bear the costs of providing special education

---

[3] *Opioid Addiction 2016 Facts & Figures,* American Society of Addiction Medicine, https://www.asam.org/docs/default-source/advocacy/opioid-addiction-disease-facts-figures.pdf.

[4] Hannah Rappleye et al., *Born Addicted: The Number of Opioid-Addicted Babies is Soaring*, NBCNEWS, Oct. 9, 2017, https://www.nbcnews.com/storyline/americas-heroin-epidemic/born-addicted-number-opioid-addicted-babies-soaring-n806346; *Dramatic Increases in Maternal Opioid Use and Neonatal Abstinence Syndrome*, Nat'l Inst. on Drug Abuse, https://www.drugabuse.gov/related-topics/trends-statistics/infographics/dramatic-increases-in-maternal-opioid-use-neonatal-abstinence-syndrome (last updated Sept. 2015).

[5] T.E. Corr & C.S. Hollenbeak, *The economic burden of neonatal abstinence syndrome in the United States*, 112 Addiction 1590 (Sept. 2017), *available at* https://onlinelibrary.wiley.com/doi/abs/10.1111/add.13842.

4

and related services to children who were exposed to opioids before birth, including those with NAS, who are significantly more likely to suffer from learning and developmental disabilities.[6] The Independent Public School Districts and the proposed Class have seen a significant, steady, and continuing rise in the number of children with special education needs resulting from the opioid crisis.

11. Even if the opioid crisis were to be abated today, the costs borne by the Independent Public School Districts and members of the proposed Class are likely to increase exponentially in the years to come as the current cohort of adversely impacted children enters primary school and advances through high school.

12. The Independent Public School Districts and the proposed Class, by counsel, have retained experts to opine on remedies to address the opioid crisis and its effect on the members of the proposed Class. Attached as Exhibit "C" hereto is the Declaration of Professor Tammy Kolbe from the University of Vermont. Professor Kolbe generally opines that for children with prenatal opioid exposure, members of the Class incur tremendous costs for a wide array of special education services that they are legally obligated to provide, which can range from speech therapy and small group instruction to one-on-one dedicated staff and residential school placements. In addition, Professor Kolbe opines that school districts incur additional expenses for supports provided to students who have been exposed to opioids and have academic, socioemotional, and behavioral challenges, and yet who do not formally receive special education services. Such services include social work, therapy, academic accommodations, modifications, and interventions, and other supports. *See generally* Exhibit "C."

---

[6] Mary-Margaret A. Fill, MD, *et al.*, Educational Disabilities Among Children Born with Neonatal Abstinence Syndrome, 142 PEDIATRICS 3 (Sept. 2018).

5

13. The Independent Public School Districts and the proposed Class, by counsel, have also retained Ira J. Chasnoff, M.D., a Professor of Clinical Pediatrics at the University Of Illinois College Of Medicine. Dr. Chasnoff's Declaration is attached as Exhibit "D" hereto. Dr. Chasnoff generally opines that NAS is a significant medical condition that can lead to serious and likely permanent challenges for children and that the impact of NAS can include profound and permanent problems with focus, attention span, self-control, hyperactivity, executive functioning, emotional self-regulation, impulse control, vision, motor control, physical development, attachment and emotional stability, sensory processing, inter-personal interactions, learning, cognitive processing, and behavior. The challenges children with NAS face frequently manifest in school as a disability or disabilities that require specialized intervention through the special education system. *See generally* Exhibit "D." The mediation process will benefit from considering the information from these experts.

14. In sum, inclusion of Independent Public School Districts and the proposed Class in the mediation of claims involving the Debtors is essential. The Class consists of independent governmental entities that are not represented by the cities, counties or states where they are located. These independent public school districts should be compensated for any expenditures they have incurred and will continue to incur, to address the impact of the opioid epidemic on their students. Any sums recovered will be spent on the critical abatement mission of providing essential education services to the most innocent victims of this opioid epidemic. The mediation process will be enhanced by incorporating these substantial claims in any potential resolution.

**Legal Basis for Relief**

15. As Debtors pointed out in their Motion to Approve Mediators, this Court is authorized to order mandatory mediation pursuant to Section 105 of the Bankruptcy Code, Rule

6

9019-1 of the Local Bankruptcy Rules for the Southern District of New York, and the Court's General Order M-390. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); S.D.N.Y. Bankr. L.R. 9019-1 ("The Court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee."); *see also In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 84 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011); Order Appointing a Mediator, *In re Windstream Holdings, Inc.,* No. 19-22312 (RDD) (Bankr. S.D.N.Y. July 30, 2019), ECF 874.

16. The Debtors are seeking "a global consensual resolution of value allocation." [Dkt. No. 855 ¶ 21]. A global consensual resolution is not possible without allowing independent public school district creditors to participate.

17. Given the severity and the ongoing nature of the Independent Public School Districts and the Class's claims against the Debtors, it is critical to the interests of justice that the Independent Public School Districts be entitled to participate in the mediation process and that their claims, and those of the Class, be considered and evaluated along with other legitimate claimants. While the mediation process has commenced, it is certainly early enough in the process to benefit from evaluating and incorporating the claims of the Independent Public School Districts and the Class.

18. If the Independent Public School Districts are excluded from the mediation process, the Class members could be denied their opportunity to secure their fair pro-rata share of available assets, thwarting one of the primary tenants of Chapter 11 Bankruptcy.

19. Allowing the Independent Public School Districts and other similarly situated school district creditors to participate in mediation will avoid undue delay and costs.

20. No previous request for the relief sought herein is currently pending or has been made by the Debtors to this Court or any other court.

21. Counsel for the undersigned has been in active discussions with counsel for various creditor committees and Debtors' counsel in an effort to resolve this matter by agreement. At the time of filing this Motion those discussions are ongoing and productive.

22. In order to foster further ongoing discussion, the parties have been discussing a briefing schedule in which the deadline for objections to this Motion would be filed by April 17, 2020 at 5 pm and any Reply would be filed by April 20, 2020 by 5 pm while maintaining the hearing date of April 22, 2020. The Independent Public School Districts address the timeline in their accompanying Motion to Shorten Time.

### Notice

23. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures entered on November 18, 2019 [Dkt. No. 498] and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this Motion. The Creditors respectfully submit that no further notice is required.

**WHEREFORE**, the Independent Public School Districts respectfully request that this Court enter an Order deeming Independent Public School Districts an Additional Party and submitting the Independent Public School Districts' claims to mediation.

Dated: April 13, 2020

Respectfully Submitted,

By: ___/s/ Chiung-Hui Huang___
Chiung-Hui Huang
HENRICHSEN SIEGEL, P.L.L.C.
Attorney for Creditors Independent Public School Districts
225 Broadway, Suite 1803
New York, NY 10007
(646) 378-4421
chuang@hslawyers.com

Neil L. Henrichsen (pro hac vice applied for)
DC Bar No. 420277
Dawn C. Stewart (pro hac vice applied for)
DC Bar No. 458555
1440 G Street, NW
Washington, DC 20005
Tele: (202) 423-3649
Fax: (202) 379-9792
nhenrichsen@hslawyers.com
dstewart@hslawyers.com


Matthew J. Piers (pro hac vice applied for)
Illinois Bar No. 2206161
Charlie D. Wysong (pro hac vice applied for)
Illinois Bar No. 6310536
Margaret E. Truesdale (pro hac vice applied for)
Illinois Bar No. 6327706
Emily R. Brown (pro hac vice applied for)
Illinois Bar No. 6317051
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
T: (312) 604-2630
F: (312) 604-2631
mpiers@hsplegal.com
cwysong@hsplegal.com
mtruesdale@hsplegal.com
ebrown@hsplegal.com

Cyrus Mehri (pro hac vice applied for)
D.C. Bar No. 420970
Aisha Rich (pro hac vice applied for)
MEHRI & SKALET, P.L.L.C.

9

Pennsylvania Bar No. 326042
1250 Connecticut Ave., NW
Washington, D.C. 20036
T: (202) 822-5100
F: (202) 822-4997
cmehri@findjustice.com
arich@findjustice.com

Justino D. Petrarca (pro hac to be applied for)
Illinois Bar No. 6183422
Himes Petrarca & Fester, Chtd.
Two Prudential Plaza, Suite 3100
180 North Stetson
Chicago, Illinois 60601
T: (312) 565-3100
F: (312) 565-0000
jpetrarca@edlawyer.com

10