DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## DEBTORS' OBJECTION TO CO-DEFENDANTS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND...........................................................................................................3

ARGUMENT ...............................................................................................................7

I.    Co-Defendants' Request to Seek a Determination of the Proportionate Fault
      of Purdue Violates the Automatic Stay and the Preliminary Injunction Order..............7

      A.    The Automatic Stay and the Preliminary Injunction Order Bar
            Apportionment of Debtors' and Related Parties' Fault by a Factfinder...........7

            1.    Apportionment of fault to any Debtor and any Related Party is a
                  proceeding "against" such parties, in violation of the automatic
                  stay and the Court's Preliminary Injunction Order...........................9

            2.    Cases permitting apportionment of fault to debtors in ordinary
                  course litigation have no application here, and, in any event,
                  Co-Defendants have not demonstrated their entitlement to
                  apportionment as a matter of New York law ....................................13

      B.    Co-Defendants' Motion Should Be Denied Pursuant to the Court's
            Authority to Enforce the Preliminary Injunction Order ...................................17

II.   The *Sonnax* Factors Weigh Strongly in Favor of Denying the Motion .........................18

      CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Adler v. Ng* (*In re Adler*),
  395 B.R. 827 (E.D.N.Y. 2008) .........................................................................13

*AP Indus., Inc. v. SN Phelps & Co.* (*In re AP Indus., Inc.*),
  117 B.R. 789 (Bankr. S.D.N.Y. 1990).................................................................8

*Artibee v. Home Place Corp.*,
  28 N.Y.3d 739 (2017).........................................................................................14

*Avellino & Bienes v. M. Frenville Co. Inc.* (*In re M. Frenville Co., Inc.*),
  744 F.2d 332 (3d Cir. 1984) ..............................................................................16

*Bifaro v. Rockwell Automation*,
  269 F. Supp. 2d 143 (W.D.N.Y. 2003) ........................................................15, 17

*Cabrera v. A-To-Z Signs*,
  51 Misc. 3d 963 (N.Y. Sup. Ct. 2016).........................................................16, 17

*Copper Kettle Marina, Inc. v. Dorner* (*In re Dorner*),
  125 B.R. 198 (Bankr. N.D. Ohio 1991)..............................................................16

*Crown Cork & Seal Co. v. Credit Suisse First Bos. Corp.*,
  Nos. 12-cv-05803, 12-cv-05804, 12-cv-05805, 12-cv-07263, 12-cv-07264,
  2013 WL 308889 (S.D.N.Y. Jan. 25, 2013) ......................................................17

*Degen v. United States*,
  517 U.S. 820 (1996) ...........................................................................................18

*Estes Express Line v. Paone* (*In re Paone*),
  401 B.R. 151 (Bankr. M.D. Pa. 2009) ...............................................................16

*Feltman v. Wells Fargo Bank, N.A.* (*In re TS Emp't, Inc.*),
  597 B.R. 494 (Bankr. S.D.N.Y. 2019).................................................................8

*Grinspan v. Grinspan* (*In re Grinspan*),
  597 B.R. 725 (Bankr. E.D.N.Y. 2019) ................................................................8

*Grocery Haulers, Inc. v. The Great Atl. & Pac. Tea Co., Inc.*
*(In re Great Atl. & Pac. Tea Co., Inc.)*,
  467 B.R. 44 (S.D.N.Y. 2012) .............................................................................21

*In re MPM Silicones, LLC*,
  No. 14-22503, 2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014) (Drain, J.),
  *appealed on other grounds and aff'd*, 531 B.R. 321 (S.D.N.Y. 2015),
  *aff'd in part, rev'd in part, and remanded*, 874 F.3d 787 (2d Cir. 2017).........................19

*In re Residential Capital, LLC*,
No. 12-12020, 2012 WL 3556912 (Bankr. S.D.N.Y. Aug. 16, 2012)........................19, 20

*In re SunEdison, Inc.*,
557 B.R. 303 (Bankr. S.D.N.Y. 2016).................................................................. 20, 21

*Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*,
607 F.3d 114, 121 (3d Cir. 2010) .................................................................................16

*Keene v. Coleman (In re Keene Corp.)*,
164 B.R. 844 (Bankr. S.D.N.Y. 1994)..............................................................................7

*Kharmah v. Metro. Chiropractic Ctr.*,
288 A.D.2d 94 (1st Dep't 2001) .............................................................................15, 17

*Mancuso v. Kaleida Health*,
172 A.D.3d 1931 (4th Dep't 2019) .................................................................................18

*Queenie, Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d Cir. 2003) ...........................................................................................11

*Rangolan v. Cnty. of Nassau*,
96 N.Y.2d 42 (2001)........................................................................................................15

*Ravo by Ravo v. Rogatnick*,
70 N.Y.2d 305 (1987)......................................................................................................15

*Schipani v. McLeod*,
541 F.3d 158 (2d Cir. 2008) .....................................................................................16, 17

*Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*,
922 F.2d 984 (2d Cir. 1990) .............................................................................................7

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990) ....................................................................................18, 19

*Tancredi v. A.C. & S., Inc. (In re N.Y.C. Asbestos Litig.)*,
750 N.Y.S.2d 469 (Sup. Ct. 2002), *aff'd*, 6 A.D.3d 352 (1st Dep't 2004) ...............15, 17

*U.S. Bank Tr. Nat'l Ass'n v. AMR Corp. (In re AMR Corp.)*,
730 F.3d 88 (2d Cir. 2013) .............................................................................................18

*Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights*, *Inc.*,
945 F. Supp. 603 (S.D.N.Y. 1996) .................................................................................13

## STATUTES & RULES

11 U.S.C. § 362 ............................................................................................................ *passim*

N.Y. C.P.L.R. 1401 ............................................................................................................ 21

N.Y. C.P.L.R. 1403 ............................................................................................................ 21

N.Y. C.P.L.R. 1601 ........................................................................................................ *passim*

## OTHER AUTHORITIES

S. Rep. No. 95-989 (July 14, 1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787 .......................... 7

Purdue Pharma L.P. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), submit this objection to the *Motion for Relief from the Automatic Stay* (the "**Motion**") submitted by certain Defendants[2] ("**Co-Defendants**"), as identified in the Motion, in the prescription opioid litigation in New York state court captioned *In re Opioid Litig*., No. 400000/2017 (Suffolk Cty. Sup. Ct.) (the "**New York State Litigation**") and respectfully state as follows:

## PRELIMINARY STATEMENT

The Co-Defendants, a group of opioid manufacturers, distributors, and pharmacies, seek this Court's permission to do, in effect, what the automatic stay and this Court's section 105(a) order forbid: to put Debtors Purdue Pharma, L.P. and Purdue Pharma Inc. and related party The Purdue Frederick Company, Inc. (collectively, "**Purdue**") on trial and to ask a factfinder to determine what share of fault Purdue should bear on account of the public nuisance alleged to be caused by sales of prescription opioid medications.

Co-Defendants' Motion attempts to inflict significant injury on the Debtors and these cases. The injury that the Debtors, these bankruptcy cases, and all estate stakeholders could suffer is plain—any apportionment of fault is likely to upset the ongoing mediation between Debtors, non-federal public claimants, and private claimants by placing a proverbial "thumb on the scale" in apparent favor of certain creditors, to frustrate ongoing negotiations regarding potential global settlements, and to wholly undermine the protections this Court determined were

---

[2] Allergan Finance, LLC, AmerisourceBergen Drug Corporation, Bellco Drug Corp., American Medical Distributors, Inc., Anda, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutical, Inc. n/k/a Janssen Pharmaceuticals, Inc., Cephalon Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis Pharma, Inc., Actavis LLC, CVS Pharmacy, Inc., Cardinal Health, Inc., Kinray, LLC, Walmart Inc., McKesson Corp., PSS World Medical, Inc., Walgreen Co., Walgreen Eastern Co., Rite Aid of Maryland, Inc., and Rite Aid of New York, Inc.

necessary to prevent these chapter 11 cases from turning into little more than an autopsy of

Debtors' business.  In short, apportioning fault to Purdue in the New York State Litigation trial

will have a devastating effect on the ongoing efforts to bring these bankruptcy cases to a

consensual resolution.

This significant injury also would be entirely gratuitous.  For one, whether

Co-Defendants would be allowed to seek allocation under New York law is far from clear.  The

predicate question of whether joint and several liability applies is currently pending before the

court overseeing the New York State Litigation, and Co-Defendants have raised no argument

that any of the statutory exceptions to common-law joint and several liability under New York

law apply.  Accordingly, Co-Defendants have demonstrated neither an alleged "right" nor a legal

basis to apportion fault to Purdue.  Instead, Co-Defendants must seek contribution, if any, from

Debtors through the proof of claim process in this bankruptcy.

Co-Defendants assert that the automatic stay does <u>not</u> prevent them from putting Purdue

on trial because they seek only an apportionment of fault that is not technically binding, or, in the

alternative, that cause exists to lift the stay to allow such an allocation of fault.  Both arguments

fail.

As set forth in Part I, allowing Co-Defendants to put Purdue on trial and to ask a

factfinder to allocate to Purdue responsibility for the alleged public nuisance is plainly a

proceeding "against" Purdue, barred by the automatic stay and completely contrary to this

Court's section 105(a) order.  Indeed, Co-Defendants, all private commercial parties, seek

through this Motion permission to do that which the Court's section 105(a) order effectively

prohibits numerous governmental entities from being able to do—to put Purdue on trial.

Co-Defendants cherry-pick from a few cases suggesting that placing fault on a non-party debtor

has been held not to violate the automatic stay.  But Co-Defendants cite no cases in which a

bankruptcy court—or any federal court—has held that the automatic stay does not apply when a

party seeks a determination of the proportionate fault of a non-party debtor.  More importantly,

the cases Co-Defendants cite are distinguishable on their facts:  in those cases, the litigation at

issue—and any apportionment of fault to the debtor—would have no material impact on any

pending reorganization.  Here, in stark contrast, Purdue faces mass tort liability and the scope

and amount of such liability is the key issue in these restructuring cases.  Accordingly,

Co-Defendants' request is subject to the automatic stay and also to the Court's section 105(a)

order.

Moreover, as set forth in Part II, there is certainly no reason to <u>lift</u> the automatic stay to

allow Co-Defendants to proceed, as the automatic stay and the Court's section 105(a) order are

necessary to preserve estate value and to facilitate the progress of these cases towards a

consensual reorganization.  Contrary to Co-Defendants' assertions, allowing Co-Defendants to

seek an allocation of fault to Purdue will certainly interfere with these bankruptcy cases and

frustrate their resolution.  The balance of harms—and the majority of the *Sonnax* factors—thus

weighs heavily against lifting the automatic stay.

To be abundantly clear, Purdue does not seek to prevent Co-Defendants from presenting

their defenses at trial.  But Co-Defendants should not be permitted to cross the line between

defending the suit against themselves and prosecuting a case against Purdue by seeking a

determination of Purdue's proportionate fault.  For all of the reasons set forth below,

Co-Defendants' Motion should be denied in its entirety.

## **BACKGROUND**

Between 2016 and 2018, the State of New York and various New York municipalities

filed complaints in New York state court against a number of parties, including Purdue Pharma

L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., and Co-Defendants, alleging

that defendants engaged in the improper sale and distribution of opioid medications.[3]  These

cases have been transferred to, and are coordinated in, Suffolk County Supreme Court before the

Honorable Jerry Garguilo.[4]  The cases brought by State of New York, the County of Nassau, and

the County of Suffolk are designated as "Track One" cases.[5]  While the governmental entities

have asserted a number of claims against the defendants, these "Track One" cases are set to

proceed to trial on the governmental entities' public nuisance claims only—a trial date had been

set for March 2020, but that date has been postponed indefinitely due to the COVID-19

pandemic.[6]

Among other disputes, the Co-Defendants and the governmental entities have sharply

disputed whether liability for a public nuisance may be imposed jointly and severally.  On

January 14, 2020, the State of New York, the County of Nassau, and the County of Suffolk

together filed a motion for summary judgment in the New York State Litigation with respect to

---

[3] *See, e.g.*, Pls.' Master Long Form Compl. & Jury Demand, *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Oct. 6, 2017), Dkt. 11; *see also* First Am. Compl., *State v. Purdue Pharma L.P.*, No. 400016/2018 (N.Y. Sup. Ct. Mar. 23, 2019), Dkt. 17; Addendum to Short Form Compl., *Cty. of Suffolk v. Purdue Pharma L.P.*, No. 400001/2017 (N.Y. Sup. Ct. Oct. 23, 2018), Dkt. 333; Short Form Compl. & Jury Demand, *Cty. of Nassau v. Purdue Pharma L.P.*, No. 400008/2017 (N.Y. Sup. Ct. Oct. 23, 2018), Dkt. 69.

[4] *See* Order Granting Defs.' Application to Coordinate Cases & for Partial Stay Pursuant to 22 NYCRR 202.96, *Cty. of Suffolk v. Purdue Pharma L.P.*, No. 613760/2016 (N.Y. Sup. Ct. Coord. Panel July 17, 2017); Order Designating Coordinating Justice, *Cty. of Suffolk v. Purdue Pharma L.P.*, No. 613760/2016 (N.Y. Sup. Ct. Coord. Panel July 18, 2017), Dkt. 300.

[5] *See* Case Mgm't Order No. 2, *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Sept. 5, 2018), Dkt. 541.

[6] On March 16, 2020, Co-Defendants' counsel received an email from Judge Garguilo's chambers stating that, due to directives related to the COVID-19 pandemic, the hearing scheduled for April 14, 2020 was adjourned to May 5, 2020. *See* Email from Sandy Liccardi, Paralegal, Secretary to Hon. Jerry Garguilo, J.S.C., to Counsel for Co-Defs. & Others (Mar. 16, 2020). On April 13, 2020, Co-Defendants' counsel received an email from Judge Garguilo's chambers stating that Judge Garguilo had requested that the court administrative personnel classify the New York State Litigation as essential, to permit exceptions to the directives related to the COVID-19 pandemic such as, for example, to permit the filing of papers in the case.  *See* Email from Sandy Liccardi, Paralegal, Secretary to Hon. Jerry Garguilo, J.S.C., to Counsel for Co-Defs. & Others (Apr. 13, 2020).  No further update has been provided to date regarding this request.

joint and several liability. *See* Pls.' Mot. for Partial Summ. J. on the Issue of Joint & Several

Liab., *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Jan. 14, 2020), Dkt. 2557. The

governmental entities have taken the unequivocal position that the public nuisance claims give

rise to joint and several liability, and that the apportionment scheme of Article 16 of the New

York Civil Practice Law and Rules ("**CPLR**") does not apply. *Id.* at 4. On February 12, 2020,

Co-Defendants and others opposed the motion on the grounds, *inter alia*, that the issue of joint

and several liability should be assessed at trial, rather than on a motion for summary judgment,

and, in the alternative, that joint and several liability should not apply based on equitable

considerations. *See* Defs.' Memo. of Law in Opp. to Pls.' Mot. for Partial Summ. J. on the Issue

of Joint & Several Liab., *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Feb. 25, 2020),

Dkt. 3764 (originally submitted on February 12, corrected version submitted on February 25).

Importantly, Co-Defendants did <u>not</u> argue that any statutory modifications to joint and several

liability, or any other New York law bases for apportionment, are applicable here. *See id.* Judge

Garguilo has not yet issued a decision on this motion.

Purdue has not had any role in the New York State Litigation recently. On October 4,

2019, following the filings of Debtors' chapter 11 petitions and section 105(a) motion, Judge

Garguilo ordered Debtors severed from the New York State Litigation and the cases stayed as to

the Debtors. *See* Stip. & Order Severing Purdue Defs., *In re Opioid Litig.*, No. 400000/2017

(N.Y. Sup. Ct. Oct. 4, 2019), Dkt. 1676. Litigation against Purdue has also been stayed by this

Court's section 105(a) order enjoining active opioid-related litigation against Debtors and related

parties (as defined therein, collectively, "**Related Parties**" and each, individually, a "**Related**

**Party**"), most recently through October 5, 2020 (the "**Preliminary Injunction Order**"). *See,*

*e.g.*, Ninth Am. Order Pursuant to 11 U.S.C. § 105(a) Granting Mot. Prelim. Inj., *Purdue*

*Pharma L.P. v. Commw. of Mass.* (*In re Purdue Pharma L.P.*), Adv. Pro. No. 19-08289 (RDD) (Bankr. S.D.N.Y. Apr. 14, 2020), Dkt. 175 ("**Ninth Am. Prelim. Inj. Order**").

On March 11, 2020, almost four months after Co-Defendants were informed that there would be a trial on liability in March of 2020, over three months after Co-Defendants learned that the trial would proceed on the public nuisance claims alone, almost a month after the March 20, 2020 trial date was confirmed, and a single day after Co-Defendants learned that the March 20, 2020 trial date had been postponed indefinitely in light of the COVID-19 pandemic, Co-Defendants filed the instant Motion along with a motion to shorten time for a hearing one week later on March 18, 2020. *See* Defs.' Mot. for Relief from the Automatic Stay at 4, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Mar. 11, 2020), Dkt. 910 (Co-Defendants' mislabeled motion to shorten time). Co-Defendants seek an order either "confirming" that the automatic stay does not bar them from seeking a determination of Purdue's proportionate fault in the upcoming New York trial, or, in the alternative, an order lifting the stay so that Co-Defendants can seek such apportionment.

On March 12, 2020, this Court denied Co-Defendants' motion to shorten time and ordered that a hearing on the Motion be held on April 8, 2020. *See* Notice of Hr'g on Defs.' Mot. for Relief from the Automatic Stay, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Mar. 12, 2020), Dkt. 914. On March 19, 2020, upon a request from Debtors to which Co-Defendants consented, the Court adjourned the hearing on the Motion from April 8, 2020 to the April 22, 2020 omnibus date. *See* Notice of Adjournment of Hr'g Regarding Certain Defs.' Mot. for Relief from the Automatic Stay, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Mar. 19, 2020), Dkt. 967.

## ARGUMENT

I.    **Co-Defendants' Request to Seek a Determination of the Proportionate Fault of Purdue Violates the Automatic Stay and the Preliminary Injunction Order**

A.    **The Automatic Stay and the Preliminary Injunction Order Bar Apportionment of Debtors' and Related Parties' Fault by a Factfinder**

The automatic stay of section 362(a)(1) of the Bankruptcy Code and the Preliminary Injunction Order each prohibit the "continuation . . . of a . . . proceeding against the [D]ebtor[s]." 11 U.S.C. § 362(a)(1); Ninth Am. Prelim. Inj. Order at 6; *see also* Mar. 18, 2020 Hr'g Tr. 83:7-12 (explaining the Preliminary Injunction Order "largely serve[s] the function of a Section 362 stay"). These bars on proceedings "against the Debtors" prohibit Co-Defendants from seeking to put Purdue on trial, *in absentia*, to obtain a determination of Purdue's proportionate fault.

By prohibiting proceedings "against the debtors," the automatic stay of section 362(a) provides debtors "with a breathing spell" from litigation and "centralize[s] all disputes concerning property of the debtor[s'] estate[s] in the bankruptcy court," in order to allow debtors and debtors' creditors to negotiate a plan of reorganization "efficiently, unimpeded by uncoordinated proceedings in other arenas." *See Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990). As the legislative history of section 362 explains, the goal of the automatic stay is to "stop . . . all harassment" of the debtor in order to "relieve[] [the debtor] of the . . . pressures that drove him into bankruptcy." *See* S. Rep. No. 95-989, 54-55 (July 14, 1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41. In so doing, the automatic stay protects creditors as well as debtors, by "provid[ing] an orderly . . . procedure under which all creditors are treated equally." *Keene v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994) (citing legislative history of Section 362). To promote these goals, the scope of the automatic stay is "broadly written and broadly construed," *Grinspan v.*

7

*Grinspan (In re Grinspan)*, 597 B.R. 725, 733 (Bankr. E.D.N.Y. 2019) (citing *In re NextWave Pers. Commc'ns. Inc.*, 244 B.R. 253, 271 (Bankr. S.D.N.Y. 2000)), "encompassing almost any type of formal or informal action taken against the debtor," *Feltman v. Wells Fargo Bank, N.A. (In re TS Emp't, Inc.)*, 597 B.R. 494, 533 (Bankr. S.D.N.Y. 2019), "in order to effectuate its protective purposes on behalf of both debtors and creditors." *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990).

This Court's Preliminary Injunction Order similarly ceases all active litigation against the Debtors and Related Parties to preserve the prospects of a successful reorganization that maximizes and preserves the value of the Debtors' estates for the benefit of all estate stakeholders. As this Court held in its decision issuing the initial Preliminary Injunction Order, "with a multitude of litigation proceeding" there simply would not be "any reasonable prospect of success" for the Debtors' chapter 11 cases. (Oct. 11, 2019 Hr'g Tr. 257:14-16.) Any prospect of success only exists so long as the automatic stay and the Preliminary Injunction Order remain in place—as the Court recognized in extending the Preliminary Injunction Order for a further 180 days, "ongoing litigations would severely disrupt the constructive process that has ensued" since the Debtors' bankruptcy petitions were filed and "create[] the chaotic effect of moving the focus of this case away from allocation . . . when substantial amounts of value have already been offered" "to alleviat[e] what each [c]reditor has asserted . . . [are] the adverse effects of allegedly improper uses of opioids throughout the nation." (Mar. 18, 2020 Hr'g Tr. 85:9-23, 93:16-21.) Together, the automatic stay and the Court's Preliminary Injunction Order are the means through which the Bankruptcy Code and this Court provide Debtors, Related Parties, and all parties in interest with a "clear shot at negotiating an overall settlement of what amounts to a multi-party battle." (Oct. 11, 2019 Hr'g Tr. 261:1-9.) Indeed, because of these stays, Debtors have been

able to make significant progress in these cases, including engagement in information sharing with key stakeholders, the appointment of a monitor, the development, negotiation, and implementation of a bar date and extensive noticing regime, and the recent commencement of a mediation regarding allocation of value from the Debtors' estates between non-federal public claimants and private claimants.  *See generally* Decl. of Benjamin S. Kaminetzky in Supp. of Debtors' Mot. to Extend the Prelim. Inj., *Purdue Pharma L.P. v. Commw. of Mass.* (*In re Purdue Pharma L.P.*), Adv. Pro. No. 19-08289 (RDD) (Bankr. S.D.N.Y. Mar. 4, 2020), Dkt. 148.

1.      *Apportionment of fault to any Debtor and any Related Party is a proceeding "against" such parties, in violation of the automatic stay and the Court's Preliminary Injunction Order.*

Co-Defendants' request to have a New York State factfinder hear evidence against Purdue and allocate proportionate fault to Purdue for the alleged public nuisance in New York would violate both the automatic stay and the Preliminary Injunction Order as it would be a quintessential proceeding "against" Debtors and a Related Party.  Even if it is indeed true that any apportionment of fault will not be legally binding, that distinction makes no difference here. A factfinder's determination of proportionate fault will cause significant harm to Debtors' estates, creditors, and reorganization prospects—none of which is at all mitigated by the fact that such determination will not technically be binding.

First, any apportionment of fault to Purdue poses serious risk to the recently commenced mediation regarding the allocation of value from the Debtors' estates as between the non-federal public claimants and the private claimants.  Should the factfinder in the New York State Litigation allocate significant fault to Purdue on account of the alleged public nuisance, that allocation may well serve as a proverbial "thumb on the scale," giving some creditors a false sense of certainty as to the value of their claims while making others feel they have been placed "at a disadvantage in the ongoing mediation process over allocation."  (Mar. 18, 2020 Hr'g Tr.

96:25-97:5.)  Even the potential that such a determination could be forthcoming is likely to disrupt, or, indeed, demoralize, efforts to reach a negotiated settlement and plan of reorganization in the Debtors' bankruptcy cases—and, at a minimum, prolong the mediation at great expense to the Debtors' estates.[7]

Second, any apportionment of fault to Purdue may well frustrate the Debtors' efforts to build a true global settlement from the existing settlement structure described in *Debtors' Informational Brief.  See* Debtors' Informational Br. at 44-45, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Sept. 16, 2019), Dkt. 17.  The Debtors fully understand that any settlement will require serious compromises from all sides, and will necessitate that political leaders conclude that the value of a settlement to their constituents outweighs the perceived benefits of litigation (and the attendant squandering and destruction of estate value).  The Debtors believe all parties to these discussions are working seriously and in good faith.  But it is hard to see how any allocation of proportionate fault to Purdue could do anything but frustrate these efforts.  This is precisely contrary to what the automatic stay and, by extension, the Preliminary Injunction Order seek to do:  to protect Purdue and all estate stakeholders from the Hobson's choice of either fully engaging in the bankruptcy process or else fully litigating the pending liability cases.  Indeed, in this respect, it is nearly impossible to envision that such a determination, although not binding, is meaningfully different from a trial verdict against Purdue, given that any such verdict could not be enforced even if the New York State Litigation

---

[7] As this Court knows well, the mediation is an expensive undertaking—indeed, this Court directed the parties to "keep the mediation on a relatively fast track" in granting the mediation motion.  (Mar. 2, 2020 Hr'g Tr. 9:11-12.)

were permitted to continue against Purdue during the pendency of the bankruptcy.[8]  *See*

11 U.S.C. § 362(b)(4).

Third, and relatedly, by putting Purdue on trial and asking a factfinder to allocate fault,

Co-Defendants will fundamentally undermine the "pause" in litigation which Debtors were able

to obtain only through the investment of a great deal of time, money, judicial resources, and

goodwill from all estate stakeholders.  If Co-Defendants proceed on the path they have charted,

Purdue will be faced with an intractable dilemma.  On the one hand, Purdue can sit on the

sidelines while Co-Defendants put Purdue on trial and seek to place as much blame as possible

on Purdue.  This, paradoxically, would allow Co-Defendants to turn on its head the Preliminary

Injunction Order which prevents the State of New York, the Counties of Nassau and Suffolk, and

numerous other governmental entities from putting Purdue on trial.  *See* Ninth Am. Prelim. Inj.

Order at 5-6, App'x III at 3, 19, 20.  On the other hand, if Purdue were to attempt to participate

in the New York State Litigation in some fashion, it would open up a Pandora's box, calling the

same question in thousands of other pending cases and diverting Debtors' attention and other

resources away from the bankruptcy process.  Purdue's participating in this "limited" role in just

one litigation would at the very least undermine—or could at the very worst arguably waive—the

stay of litigation that has been the foundation of these bankruptcy cases and the efforts to

preserve the value of Debtors' estates.

---

[8] Because the only effect of the application of the automatic stay and the Preliminary Injunction Order here is to protect the Debtors' reorganization efforts from being undermined, and not to interfere in any way with the continuance of the New York State Litigation against Co-Defendants, the denial of this lift-stay motion does not run afoul of the Second Circuit's precautionary language in *Queenie, Ltd. v. Nygard Int'l* that the automatic stay not be used to bootstrap protection for a debtor's co-defendants.  *See* 321 F.3d 282, 288 (2d Cir. 2003) ("We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of . . . the precedential effect of an adverse decision.  If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants.").

As this Court explained not even a month ago in its decision extending the Preliminary Injunction Order, "[O]ngoing litigations would severely disrupt the constructive process that has ensued since the issuance of the [initial] injunction." (Mar. 18, 2020 Hr'g Tr. 85:8-11.) This Court further identified, as one of the critical, irreparable harms at work in Debtors' bankruptcy, that allowing any one litigation to go forward—whether to a motion to dismiss, as there, or to the apportionment of fault by a factfinder, as here—would lead to "other parties . . . rightfully say[ing] at that point [that] . . . we need to be involved, too. We need to have our litigation proceed . . . [as there is] nothing fundamentally different in [any one] litigation [against any Debtor or Related Party] than hundreds of other litigations pending." (Mar. 18, 2020 Hr'g Tr. 92:22-93:5.) Whatever choice Purdue makes, either co-defendants in other proceedings will be empowered to pursue allocation of fault to Purdue wherever available—knowing Purdue's hands are tied—or the currently-stayed litigation plaintiffs will use Purdue's arguable participation in the New York State Litigation to vigorously contest any continued applicability of the automatic stay or Preliminary Injunction Order, as applicable. Given these risks, Purdue may well have no choice but to sit out of the New York State Litigation because these stays are too important to risk, even at the cost of a determination that will undermine mediation, allocation, and settlement efforts. The harm from Co-Defendants' request, therefore, is not limited to the harms from the New York State Litigation trial alone, which are substantial in their own right, but incorporates the harms that will arise from every co-defendant in every other proceeding against Purdue seeking an equivalent apportionment of fault.

2.    *Cases permitting apportionment of fault to debtors in ordinary course litigation have no application here, and, in any event, Co-Defendants have not demonstrated their entitlement to apportionment as a matter of New York law.*

For all of the reasons explained above, Co-Defendants' intent to have a factfinder allocate liability to Purdue violates the automatic stay and the Preliminary Injunction Order. Co-Defendants attempt to avoid the obvious conclusion that putting Purdue on trial to allocate fault to it is litigation "against" Purdue by citing a few cases in which courts concluded that statements casting blame on a debtor were not contrary to the automatic stay. But, tellingly, Co-Defendants do not cite a single bankruptcy court decision holding that allocating fault to a debtor was not <u>subject</u> to the automatic stay.

The few cases Co-Defendants do cite are entirely distinguishable and prove that judicial findings—even those far less formal than the allocation of fault Co-Defendants seek—are only permissible when they do not cause harm to a debtor's reorganization. For example, in *Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, the District Court for the Southern District of New York concluded that a report and recommendation that "refer[red] to" a debtor-defendant did not violate the automatic stay (although the automatic stay applied) as the report made clear that it applied only to a non-debtor defendant and, critically, the report "d[id] not interfere with the[] goals" of the Bankruptcy Code and the automatic stay. 945 F. Supp. 603, 606 (S.D.N.Y. 1996). Similarly, *Adler v. Ng (In re Adler)* holds only that giving preclusive effect to a state court action from which a debtor was severed would be contrary to the automatic stay. 395 B.R. 827, 839-41 (E.D.N.Y. 2008). It in no way supports the inverse proposition that the automatic stay has no application so long as a judicial finding against a debtor would <u>not</u> have preclusive effect. Together, these cases offer <u>no</u> support for

13

Co-Defendants' proposition that asking a factfinder to determine Purdue's proportionate fault is outside the scope of the automatic stay.

In any case, there is doubt about whether Co-Defendants are entitled to allocation at all as a matter of New York law. The only claims to be addressed in the New York State Litigation trial are the public nuisance claims. In their Motion, Co-Defendants rely on cases analyzing CPLR 1601[9] and similar statutes that modify the common-law rule "by limiting a joint tortfeasor's liability in certain circumstances," *Artibee*, 28 N.Y. 3d at 744, as predicates for Co-Defendants' alleged "right" to apportion fault.

There has been no determination to date by Judge Garguilo that Co-Defendants are entitled to invoke CPLR 1601 or any other similar statute. The State of New York, the County of Nassau, and the County of Suffolk have argued, both here and before Judge Garguilo, that liability for public nuisance claims is joint and several, and that CPLR 1601 and other modifications to the common-law joint and several liability rule do not apply to public nuisance claims. N.Y. Pls' Opp. to Defs.' Mot. for Relief from the Automatic Stay at 4, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Mar. 24, 2020), Dkt. 979 ("**N.Y. Pls' Opp.**"); Pls.' Mot. for Partial Summ. J. on the Issue of Joint & Several Liab. at 4, *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Jan. 14, 2020), Dkt. 2557.

---

[9] CPLR 1601 in particular provides that, "in a personal injury action involving two or more jointly-liable tortfeasors," "a joint tortfeasor whose share of fault is 50% or less is liable for a plaintiff's noneconomic loss only to the extent of that tortfeasor's share of the total noneconomic loss." *Artibee v. Home Place Corp.*, 28 N.Y. 3d 739, 744 (2017). A necessary prerequisite—that the underlying action be a personal injury action—seems likely not met with respect to the public nuisance actions in the New York State Litigation trial. *See* Order at 3-4, *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Apr. 13, 2020), Dkt. 5636 (identifying public nuisance claims at issue as claims for "damages for injury to [plaintiffs'] interest in protecting public money expended for health insurance costs" and for "damages for the alleged harm resulting from the defendants' concerted efforts to market, promote, and sell prescription opioids" which includes "medical and drug costs incurred on behalf of [plaintiffs'] covered employees and Medicaid beneficiaries"); *see also* Defs.' Opp. to Pls.' Mot. to Dismiss Defenses Pursuant to CPLR 3211(B) at 6, *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Jan. 29, 2020), Dkt. 3458 (arguing in effect that public nuisance claim falls into broad category of "injury to property" rather than narrower category of "personal injury" under CPLR 1411).

In response to the State of New York, the County of Nassau, and the County of Suffolk's motion before Judge Garguilo, Co-Defendants have <u>not</u> argued to Judge Garguilo that CPLR 1601 or any other statutory modification to joint and several liability should apply in the New York State Litigation.  *See* Defs.' Memo. of Law in Opp. to Pls.' Mot. for Partial Summ. J. on the Issue of Joint & Several Liab., *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Feb. 12, 2020), Dkt. 3764.  Instead, Co-Defendants have argued that whether joint and several liability applies should not be decided on a motion for summary judgment, or in the alternative, that joint and several liability should not apply in the New York State Litigation based on equitable considerations.  *See generally id.*

If Judge Garguilo concludes liability is joint and several under the common-law rule— which question is squarely presented by the pending motion for summary judgment—then the State of New York, the County of Nassau, and the County of Suffolk may seek 100% of any damages assessed from the liable Co-Defendants who are parties to the New York State Litigation.[10]  *See, e.g.*, *Rangolan v. Cnty. of Nassau*, 96 N.Y.2d 42, 46 (2001); *Ravo by Ravo*, 70 N.Y.2d at 309-10, 312-13 (explaining apportionment among party co-defendants did not alter joint and several liability but merely set relative amounts of contribution co-defendants could seek from each other).  Under such circumstance, CPLR 1601 would <u>not</u> apply.[11]

---

[10] If, on the other hand, Judge Garguilo concludes that joint and several liability does not apply because, for example, the alleged harms are "[]capable of . . . reasonable or practicable division of allocation," *see Ravo by Ravo v. Rogatnick*, 70 N.Y.2d 305, 310 (1987) (contrasting joint and several liability with independent forms of liability), each Co-Defendant will be held to be at fault only for those specific injuries which a factfinder has found attributable to that specific Co-Defendant.  Under that circumstance, the fact that fault will be allocated for divisible injuries wholly obviates the need for apportionment of fault to Purdue.

[11] Co-Defendants' reliance in this Motion, therefore, on cases where New York courts analyzed the question of allocation pursuant to CPLR 1601 or equivalent statutory modifications of the common-law joint and several liability regime is wholly unavailing.  *See* Mot. for Relief from the Automatic Stay at 2-3, 9, 11-12, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Mar. 11, 2020), Dkt. 909 (citing *Bifaro v. Rockwell Automation*, 269 F. Supp. 2d 143, 149 (W.D.N.Y. 2003) (discussing apportionment pursuant to CPLR Article 16); *Kharmah v. Met. Chiropractic Ctr.*, 288 A.D.2d 94, 94-95 (1st Dep't 2001) (applying CPLR 1601); *Tancredi v. A.C. & S., Inc. (In re N.Y.C. Asbestos Litig.)*, 750 N.Y.S.2d 469, 479 (Sup. Ct. 2002) (analyzing CPLR 1601 as a matter of law), *aff'd*, 6 A.D.3d at 352 (1st

15

Even were Judge Garguilo to conclude that CPLR 1601 applies in the New York State Litigation trial, none of the cases Co-Defendants cite applying CPLR 1601 or equivalent modifications of the common-law rule of joint and several liability to permit allocation to a non-party debtor either support the conclusion that the automatic stay does not apply here in the first instance or address a scenario even remotely similar to that facing the Court here. For example, in *In re Dorner*, the court considered whether to permit a co-defendant to name a discharged debtor as a party for purposes of apportionment of fault for a fire under an Ohio state law similar to CPLR 1601. 125 B.R. at 200-202. Applying the standard for cause to lift the discharge injunction under 11 U.S.C. § 524 (which the court noted was the same as the standard for cause to lift the automatic stay of section 362(a)), the court held that allowing co-defendant to name the discharged debtor for the sole purpose of apportioning fault was appropriate because the only hardship to the discharged debtor was the "cost to defend these actions, should [debtor] deem it necessary" and the cost of depositions. *Id.* at 202. *In re Dorner* accordingly supports Debtors' argument that the automatic stay applies here. Further, in stark contrast to the hardships identified in *Dorner*, here, as explained above, the hardship to Debtors is the decreased likelihood of a successful reorganization, and the consequences of allowing an allocation of fault to Purdue when there are many hundreds of nearly identical cases pending against Purdue are

---

Dep't 2004); *see also Schipani v. McLeod*, 541 F.3d 158, 163 (2d Cir. 2008) (discussing apportionment in context of General Obligations Law § 15-108 which, like CPLR 1601, modifies New York law on joint and several liability to include an apportionment right); *Copper Kettle Marina, Inc. v. Dorner (In re Dorner)*, 125 B.R. 198, 200-201 (Bankr. N.D. Ohio 1991) (apportioning liability under Ohio Rev. Code § 2315.19(D)(1)(a) and (b) which, like CPLR 1601, "entitles [a party to] set-off of non-economic damages attributable to other parties"); *Cabrera v. A-to-Z Signs*, 51 Misc. 3d 963, 967-68 (N.Y. Sup. Ct. 2016) (applying CPLR 1601 to case involving apportionment to State)). Co-Defendants' reliance on *Estes Express Line v. Paone (In re Paone)*, 401 B.R. 151 (Bankr. M.D. Pa. 2009) is similarly misplaced, as the bankruptcy court in that case lifted the automatic stay to allow the debtor to be named as a party, relief Co-Defendants affirmatively disclaim here, in reliance on a Third Circuit decision, *Avellino & Bienes v. M. Frenville Co. Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332 (3d Cir. 1984), which has since been overruled, *see Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010). *Paone* is no longer a correct statement of the proper analysis in the Third Circuit, and was never a correct statement of the law in New York.

significant. As another example, in *Kharmah*, the New York court concluded that the automatic

stay applied but was not violated because the chapter 7 debtors, a chiropractor and his clinic, had

been severed prior to any finding related to an allocation of fault pursuant to CPLR 1601.

288 A.D.2d at 94-95. Here, the automatic stay similarly applies but, in contrast, will be violated

if Co-Defendants are permitted to allocate fault to Purdue because Debtors are seeking to

restructure rather than to liquidate and an apportionment of fault could have devastating

consequences on the entire reorganization, particularly as there are multiple, nearly identical

cases pending against Purdue, which means any apportionment of fault here will have ripple

effects that extend far beyond this single case.[12]  Co-Defendants' reliance on the alleged

applicability of CPLR 1601 or other statutory modifications of the common-law joint and several

liability rule thus offer no reason to conclude that the automatic stay does not apply here.

### B.    Co-Defendants' Motion Should Be Denied Pursuant to the Court's Authority to Enforce the Preliminary Injunction Order

Co-Defendants also must contend with the Court's Preliminary Injunction Order, in

addition to the automatic stay. As noted above, Co-Defendants through this Motion seek to

pursue an action against Purdue that the New York Attorney General and the Counties of Nassau

and Suffolk are precluded from pursuing themselves. If Co-Defendants are permitted to ask the

factfinder to apportion fault to Purdue, the State of New York and the Counties of Nassau and

---

[12] The other cases cited by Co-Defendants present similar infirmities—the debtor in *Bifaro* had dissolved almost two years prior to the filing of claims and so faced no risk of harm as a result of apportionment pursuant to CPLR 1601, *Bifaro*, 269 F. Supp. 2d at 147, *Cabrera* involved apportionment to New York state pursuant to CPLR 1601 and mentions bankrupt defendants only in *dicta*, rendering the case inapposite, 51 Misc. 3d at 967, and *Schipani* addresses apportionment (pursuant to General Obligations Law § 15-108, a statutory exception inapplicable to bankrupt defendants, *see Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, Nos. 12-cv-05803, 12-cv-05804, 12-cv-05805, 12-cv-07263, 12-cv-07264, 2013 WL 308889, at *4 (S.D.N.Y. Jan. 25, 2013) (explaining General Obligations Law § 15-108 "provides relief from the rule of joint and several liability only upon the release of an alleged tortfeasor, not the insolvency of one")) to settling tortfeasors, who are, by virtue of having settled, immune from harm as a result of apportionment, *Schipani*, 541 F.3d at 163. In a similar vein, the court in *In re N.Y.C. Asbestos Litig.* addressed only a question of law with respect to the interpretation of CPLR 1601 and, thus, provides no basis to evaluate the harm to Debtors here. 750 N.Y.S.2d at 474-75.

17

Suffolk will have to address Co-Defendants' contentions or else risk being unable to fully prosecute and defend their litigation positions at trial. *Cf. Mancuso v. Kaleida Health*, 172 A.D.3d 1931, 1934-45 (4th Dep't 2019) (explaining, in denying defendant's request to put a party on the verdict form for purposes of apportioning fault under CPLR 1601 after plaintiff had rested, that a defendant's intent to place blame on a non-party is likely to cause a plaintiff to address such a defense by putting on evidence regarding that non-party at trial). And if the State of New York and the Counties of Nassau and Suffolk are permitted to pursue their litigation positions to a verdict in such a manner, other governmental entities with similar claims will also want to pursue their litigations to the same extent, thereby effectively eviscerating the Preliminary Injunction Order. (*See* Mar. 18, 2020 Hr'g Tr. 96:13-16.) Denying the instant Motion eliminates this tension and risk. As the Court has the inherent authority to enforce its own orders, the Court may deny Co-Defendants' Motion on this basis alone. *See, e.g.*, *Degen v. United States*, 517 U.S. 820, 827 (1996) ("A federal court has at its disposal an array of means to enforce its orders, including . . . those furnished by federal rule and by inherent authority.").

## II.    The *Sonnax* Factors Weigh Strongly in Favor of Denying the Motion

Finally, Co-Defendants ask, if the automatic stay applies to their request—as it does— that the Court lift the stay to allow Co-Defendants to seek to allocate fault to Purdue. This request, too, should be denied.

The standard for lifting the automatic stay in the Second Circuit is well settled. Section 362(d)(1) of the Bankruptcy Code provides that "the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1). The determination of whether cause exists to lift the automatic stay is committed to the sound discretion of this Court, as guided by the factors set forth in *Sonnax Industries, Inc. v. Tri Component Products Corp.* (*In re Sonnax Industries, Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990). *See, e.g.*, *U.S. Bank Tr. Nat'l Ass'n v. AMR Corp.* (*In re AMR*

*Corp.*), 730 F.3d 88, 112 (2d Cir. 2013); *In re MPM Silicones, LLC*, No. 14-22503, 2014 WL

4436335, at *22-23 (Bankr. S.D.N.Y. Sept. 9, 2014) (Drain, J.) (discussing *Sonnax* factors),

*appealed on other grounds and aff'd*, 531 B.R. 321 (S.D.N.Y. 2015), *aff'd in part, rev'd in part,*

*and remanded*, 874 F.3d 787 (2d Cir. 2017).  A party seeking relief from the stay bears the

burden of making an initial showing of cause to lift the stay, and, if the movant fails to make that

showing, the court should deny relief from the stay without requiring any showing from the

debtor.  *In re Sonnax Indus., Inc.*, 907 F.2d at 1285.  Where, as here, a party that is not a secured

creditor seeks relief from the stay, that party must demonstrate "extraordinary circumstances . . .

to justify such relief."  *In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3556912, at *2

(Bankr. S.D.N.Y. Aug. 16, 2012).

      Applying this standard here, it is clear that the automatic stay should not be lifted to

permit the Co-Defendants to seek to apportion fault to Purdue.  Co-Defendants have entirely

failed to demonstrate "cause" to lift the stay, as the *Sonnax* factors—both individually and

together—compel denying the motion to lift the stay.  The twelve *Sonnax* factors are:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a
> specialized tribunal with the necessary expertise has been established to hear the
> cause of action; (5) whether the debtor's insurer has assumed full responsibility
> for defending it; (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other
> creditors; (8) whether the judgment claim arising from the other action is subject
> to equitable subordination; (9) whether movant's success in the other proceeding
> would result in a judicial lien avoidable by the debtor; (10) the interests of judicial
> economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and (12) the
> impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286.  While the factors have varying relevance in each

case—and a court need not assign equal weight to each factor, *see, e.g., In re SunEdison, Inc.*,

557 B.R. 303, 307-08 (Bankr. S.D.N.Y. 2016)—in this case, each of the relevant factors weighs

in favor of denying relief from the automatic stay.

Co-Defendants argue that *Sonnax* factor 2—interference with the bankruptcy case—

weighs in favor of lifting the automatic stay because allocation of fault to Purdue would not

interfere with these cases. As described above, this is simply not true. Putting Purdue on trial so

that a factfinder can apportion fault to Purdue will interfere substantially with the bankruptcy by

throwing negotiations regarding a proposed settlement and allocation into complete disarray at

this critical time. This shifting of the negotiation landscape between and among creditors,

Related Parties, and the Debtors will deeply prejudice the interests of all parties in interest who

have been negotiating in good faith on the premise that the automatic stay and the Preliminary

Injunction Order have stayed all attempts at allocating fault to Purdue outside of the bankruptcy

cases. *Cf. In re Residential Capital, LLC*, 2012 WL 3556912, at *4 (explaining lifting the stay

would be "unfair [and prejudicial] to other creditors who must bring their claims in this Court").

There will be no chance for Debtors or Related Parties to mitigate the disastrous effects of a

factfinder's determination that any one of them bears a certain proportion of fault. The Debtors

have expended significant resources to be <u>excluded</u> from the New York State Litigation trial and

thus cannot defend themselves from whatever case Co-Defendants intend to present without

abandoning all that has been accomplished in this bankruptcy to date.

The apportionment of fault that Co-Defendants seek would in no way simplify these

cases. Instead, any determination would merely result in a "round-trip ticket" back to this Court:

if Co-Defendants wish to obtain any contribution from Debtors, they will be required to file a

proof of claim to have that issue determined in these bankruptcy cases, and cannot rely on the

determination of fault that they concede will not be binding on Purdue. *See, e.g.*, *Grocery*

*Haulers, Inc. v. The Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.)*, 467

B.R. 44, 53, 57 (S.D.N.Y. 2012) (affirming denial of a motion to lift the stay because, in part,

"Judge Drain did not err in determining that the claim was for contribution and that it should be

determined in the Bankruptcy Court"); N.Y. C.P.L.R. 1401, 1403.  In addition, any such proof of

claim is likely to be subject to claims of subordination from other creditors, given that a

determination of fault against Co-Defendants is a precondition to any type of contribution claim

against Debtors.  A determination of the proportionate fault of Purdue thus would have no

meaningful result other than to disrupt ongoing and future negotiations aimed at reaching a

consensual settlement among Debtors, Related Parties, and thousands of creditors in the

bankruptcy.  Put simply, the relief Co-Defendants seek is contrary to the interests of judicial

economy and the expeditious and economical resolution of either the Co-Defendants' underlying

fault or the Debtors' chapter 11 cases.  *See In re SunEdison, Inc.*, 557 B.R. at 309 (denying

motion to lift the stay as there was no efficiency in determining liability that would only be

compensated, if at all, under a plan of reorganization).

Co-Defendants also stress that the New York State Litigation is ready for trial, and thus

*Sonnax* factor 11 weighs in favor of lifting the automatic stay.  But this argument too misses the

mark.  Here, Co-Defendants do not seek to lift the automatic stay so that the New York State

Litigation trial may proceed.  Rather, Co-Defendants seek a remedy from this Court that may or

may not be at play if and when that trial goes forward—Co-Defendants, as noted above, have not

yet argued to Judge Garguilo that there is any basis in New York law to apportion fault for the

alleged nuisance to Purdue.  *See* Defs.' Mem. of Law in Opp. to Pls.' Mot. for Partial Summ. J.

on the Issue of Joint & Several Liab., *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. Feb.

12, 2020), Dkt. 3764 (arguing that joint and several liability does not apply here, without arguing

that any statutory modifications to joint and several liability should apply).  Whether or not the

New York State Litigation trial will go forward (and when and in what manner) will be decided

by Judge Garguilo, not this Court, meaning that whether or not Co-Defendants obtain the relief

they seek is not determinative as to the New York State Litigation trial schedule.  *See also* N.Y.

Pls' Opp. at 11-12.  Further, even if it were relevant, the readiness of the New York State

Litigation for trial cannot outweigh the issues noted above, or the other *Sonnax* factors that Co-

Defendants concede weigh against them here, including: that the New York State Litigation does

not involve the Debtors as a fiduciary; that the efforts to apportion fault to the Debtors means

that the Debtors are involved in the New York State Litigation; and that there is no specialized

tribunal overseeing the New York State Litigation.

Ultimately, the balance of harms tips decidedly toward denying Co-Defendants' request

for relief from the automatic stay here.  The automatic stay and the Preliminary Injunction Order

serve as a vital and necessary precondition to the Debtors' efforts to reach a negotiated resolution

in these bankruptcy cases that will result in the distribution of Debtors' assets to creditors who

are, in effect, the American people.  By contrast, the relief that the Co-Defendants seek does not

meaningfully benefit even the Co-Defendants themselves because Co-Defendants have

demonstrated no legal right to apportionment in the New York State Litigation and they will be

required to seek monetary contribution from Debtors, if any, in this bankruptcy.  Even if Co-

Defendants had a "right" to apportionment, the harm to Debtors outweighs the Co-Defendants'

interest in not being required to separately seek contribution from Debtors before this Court.

Accordingly, the balance of harms weighs decidedly in favor of the Debtors.

The *Sonnax* factors thus strongly weigh in favor of denying the Motion here: the issue of

contribution will not be resolved at the New York State Litigation trial, requiring Co-Defendants

to seek relief in these bankruptcy cases wherein creditors are almost certain to seek to equitably

subordinate any such claim (*Sonnax* factors 1, 8); the apportionment of fault to Purdue will

significantly interfere with these bankruptcy cases by shifting the negotiation landscape and

hindering efforts at settlement (*Sonnax* factors 2, 7, 10); the Debtors are not involved in the New

York State Litigation in a fiduciary capacity (*Sonnax* factor 3); the New York state court is not a

specialized tribunal (*Sonnax* Factor 4); no insurer will cover the cost of the aforementioned

harms—which are, in any case, largely not directly monetary (*Sonnax* factor 5); these efforts to

apportion fault render Purdue involved in the New York State Litigation (*Sonnax* factor 6); and

the harms to the Debtors and these cases far outweigh the harm to Co-Defendants (*Sonnax* factor

12).

## **CONCLUSION**

For the reasons set forth above, Debtors respectfully request that the Court deny in its

entirety Co-Defendants' motion to lift the automatic stay.

Dated:   April 15, 2020                   Respectfully Submitted,
        New York, New York

                                            */s/ Benjamin S. Kaminetzky*
                                          DAVIS POLK & WARDWELL LLP
                                          450 Lexington Avenue
                                          New York, New York 10017
                                          Telephone: (212) 450-4000
                                          Facsimile: (212) 701-5800
                                          Marshall S. Huebner
                                          Benjamin S. Kaminetzky
                                          James I. McClammy
                                          Marc J. Tobak
                                          Gerard X. McCarthy

                                          *Counsel to the Debtors*
                                            *and Debtors in Possession*