PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew M. Troop
Jason S. Sharp, admitted *pro hac vice*
Andrew V. Alfano
31 West 52nd Street
New York, New York 10019
212-858-1000

*Counsel to the Ad Hoc Group of Non-Consenting States*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **PURDUE PHARMA, L.P., *et al.*,**[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| **Debtors.** | ) | (Jointly Administered) |
| | ) | |

## OPPOSITION OF THE NON-CONSENTING STATES TO OPIOID DEFENDANTS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

Twenty-four States and the District of Columbia (the "**States**")[2] respectfully oppose the

*Motion for Relief from the Automatic Stay* [Docket. No. 909] (the "**Motion**") filed by several

opioid defendants in an action currently pending in New York. The companies that filed the

Motion (the "**Other Companies**") are opioid makers, distributors, and pharmacies that are about

---

[1] The debtors in these chapter 11 cases ("**Debtors**" or "**Purdue**"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, and Wisconsin.

to face trial in New York State Court on allegations that their misconduct caused the opioid crisis.[3]

Purdue and the Sacklers would have been defendants in that trial, but in response to this chapter

11 case, New York voluntarily stood down on its litigation against Purdue and the Sacklers.[4]  The

Other Companies ask the Court to allow Purdue to be listed on the verdict form in that trial, so that

the jury might "apportion fault" away from the Other Companies to Purdue.[5]  The governments

that brought the lawsuit, including the State of New York, oppose the Motion because, among

other things, apportioning fault away from the Other Companies is not allowed under the law.[6]

The States agree that the Motion should be denied.  As the States have said before, holding

Purdue accountable is one of the top priorities in state law enforcement.[7]  But the Other

Companies' Motion is about *avoiding* accountability.  They seek a trial where their responsibility

could be taken away based on Purdue's fault even though Purdue would not be a defendant and

the judgment would have no legal effect on Purdue.[8]  They also ignore the potential implications

of their efforts on this case.

New York explained in its opposition that the Opioid Companies are not entitled to

apportion fault to Purdue because *all* parties who cause or contribute to a public nuisance are

---

[3]  Motion at 2.  The opioid defendants include Allergan Finance, LLC; AmerisourceBergen Drug Corporation; Bellco Drug Corp.; American Medical Distributors, Inc.; Anda, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Cephalon Inc.; Teva Pharmaceuticals USA, Inc.; Watson Laboratories, Inc.; Actavis Pharma, Inc.; Actavis LLC; CVS Pharmacy, Inc.; Cardinal Health, Inc.; Kinray, LLC; Walmart Inc.; McKesson Corp.; PSS World Medical, Inc.; Walgreen Co.; Walgreen Eastern Co.; Rite Aid of Maryland, Inc.; and Rite Aid of New York, Inc.  *See* Motion at 1 n.2.

[4]  *See* Motion at ¶¶ 3-6.

[5]  *See* Motion at 2.

[6]  *See New York Plaintiffs' Opposition to Defendants' Motion for Relief from the Automatic Stay* [Docket No. 979] (the "**Opposition**").

[7]  *See The Non-Consenting States' Voluntary Commitment and Limited Opposition in Response to Purdue's Motion to Extend the Preliminary Injunction* at 3, Adv. Proc. Docket No. 150 (the "**PI Response**").

[8]  *See* Motion at 1 ("The moving Defendants do not seek to establish any liability of the Debtors…."); ¶ 11 ("the Debtors' liability will not be determined at the upcoming trial"); at 3 (the other opioid companies "do not seek to add the Debtors as parties, or … to allow a judgment against them…."); ¶ 12 (the trial "will not determine the Debtors' liability…."); ¶ 22 ("because Debtors would not be defendants in the New York trial, the jury's findings … would have no binding effect on Debtors….").

jointly and severally liable.[9]  That principle is an important protection for the public, especially in cases where the alleged misconduct is widespread.[10]  The significance of that principle in the opioid crisis was vividly demonstrated when one of these same companies, Johnson & Johnson, was found responsible for a public nuisance in Oklahoma just last year.[11]

The injustice threatened by the Motion would not be limited to one trial.  As the Court is aware, lawsuits pending across the nation allege that opioid companies broke the law and caused many Americans to suffer and die.[12]  If opioid companies were permitted to try to "apportion fault" to Purdue in their non-bankruptcy litigation, defendants throughout the country would maneuver to escape their own accountability by asking judges and juries to assign fault to a non-present Purdue.[13]  Even though adding Purdue to the verdict form in the New York action will have no legally binding effect on anyone, if the liability of Purdue (and the Sacklers) is to be commented on by a jury, plaintiffs both in the New York action and creditors here should be able to prove, and Purdue and the Sacklers should have the opportunity to defend against, that liability.

The public deserves a justice system that holds lawbreakers accountable based on a full and fair evidentiary record and trial.  As the States have noted before, public officials have enforced

---

[9]  *See* Opposition at ¶ 19.

[10]  Joint and several liability has long ensured that injured persons recover and wrongdoers are held accountable for "reasons of policy and justice." *Summers v. Tice*, 33 Cal. 2d 80, 88 (Cal. 1948) ("reasons of policy and justice" require that, "where the matter of apportionment is incapable of proof,"—for example, because Purdue cannot go to trial—"the innocent wronged party should not be deprived of his right to redress.").  Scholars applying an economic lens to the law have found that these long-established principles are "efficient" too.  *See, e.g.*, Comment, *The Case of the Disappearing Defendant: An Economic Analysis*, 132 U. Penn. L. Rev. 145, 147 (1983) ("a rule that places the risk of one tortfeasor's disappearance on the other joint tortfeasors and not on the victim is most efficient….").

[11]  *See State of Oklahoma v. Purdue Pharma, et al.*, Case No. CJ-2017-816, 2019 WL 4019929 at *12 (Okla. Dist. Ct. Aug. 26, 2019) at 26 (Johnson & Johnson "engaged in false and misleading marketing of both their drugs and opioids generally; and (b) this conduct constitutes a public nuisance…."); *id.* at *15 (ordering abatement of nuisance).

[12]  *See* Motion at ¶ 2 ("thousands of lawsuits against manufacturers, distributors, and pharmacies concerning the alleged improper sale and distribution" of opioids).

[13]  Courts have resisted efforts to let juries make determinations based on a fictional composite grouping. *Cf. Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) (trying class action based on fictional composite of plaintiffs who could not be joined or examined properly improperly skews jury's decision-making function).

the law against thousands of individuals in the course of the opioid crisis.[14]  Doctors, nurses, and

pharmacists have lost their licenses.[15]  People coping with substance use disorder have lost their

freedom.[16]  Parents have lost the custody of their children.[17]  None of those people were allowed

to avoid the law by blaming Purdue.  Purdue's bankruptcy has blocked trials of important claims

against Purdue and the Sacklers; it should not enable the rest of the opioid industry to escape

accountability or to set up a situation where the results of a verdict against the Opioid Companies

impacts claims against absent defendants, Purdue and the Sacklers.

WHEREFORE, the Non-Consenting State Group requests that the Motion be denied.

Dated: April 15, 2020

/s/ Andrew M. Troop
Andrew M. Troop
Andrew V. Alfano
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, New York 10019
212-858-1660
andrew.troop@pillsburylaw.com
andrew.alfano@pillsburylaw.com

Jason S. Sharp, admitted pro hac vice
2 Houston Center
909 Fannin, Suite 2000
Houston, TX 77010
713-276-7600
jason.sharp@pillsburylaw.com

Counsel to the Ad Hoc Group of Non-Consenting States

---

[14]  See PI Response at 9-10 & n.30
[15]  See PI Response at 9-10 n.30 (citing Katherine Hafner, Opioids Played A Role In Nearly Half Of Virginia's Lost Medical Licenses Over The Past Two Decades, The Virginian-Pilot (Mar. 28, 2019), http://www.pilotonline.com/news/health/article_d63bf8b2-4f1c-11e9-b357-973fb38f6dca.html).
[16]  See PI Response at 9-10 n.30 (citing Bekka Depew, Involuntary Commitment for Substance Abuse Treatment in Massachusetts, Harv. Inst. of Politics, at 5 (May 2014) (approximately 4,700 people civilly committed for substance abuse each year in Massachusetts alone)).
[17]  See PI Response at 10 n.30 (citing Anita Wadhwani, Tennessee Parents Lose Kids As Opioid Crisis Rages On, The Tennessean (Nov. 26, 2016), https://www.tennessean.com/story/news/investigations/2016/11/26/nas-loss-parental-rights/94231538/ (quoting Knoxville County, Tennessee Juvenile Court Judge Tim Irwin: "You hate to sever the bond between a mother and child, but it doesn't end there because a lot of time the mother has another child and you have to go through it all over again.  It's the saddest thing I do.")).

## <u>CERTIFICATE OF SERVICE</u>

     I, Andrew M. Troop, hereby certify that, on April 15, 2020, I caused true and correct copies of the foregoing document to be served (i) by the Court's Case Management/Electronic Case File (CM/ECF) System to all parties who are deemed to have consented to electronic service; (ii) by email upon the parties who provided email addresses set forth in the Master Service List maintained by the Debtors in respect of these chapter 11 cases; and (iii) by email upon the chambers of the Honorable Judge Robert D. Drain (rdd.Chambers@nysb.uscourts.gov) and the Office of the United States Trustee for the Southern District of New York (Attn: Paul K. Schwartzberg, paul.schwartzberg@usdoj.gov).

                                       /s/ *Andrew M. Troop*
                                       Andrew M. Troop

5