AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

---

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY DEFENDANTS IN THE NEW YORK OPIOID LITIGATION AND <u>JOINDER IN THE DEBTORS' OBJECTION THERETO</u>**

The Official Committee of Unsecured Creditors (the "<u>Official Committee</u>") of Purdue Pharma L.P., *et al.* (collectively, the "<u>Debtors</u>"), by and through its undersigned counsel, hereby submits this objection (the "<u>Objection</u>") to the *Motion for Relief from the Automatic Stay* [ECF

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

No. 909] (the "Lift-Stay Motion")[2] filed by certain defendants (the "Co-Defendants")[3] in the case pending in New York Supreme Court, Suffolk County (the "New York Court"), captioned *In re Opioid Litig.*, No. 400000/2017 (the "New York Litigation") and joinder to the *Debtors' Objection to Co-Defendants' Motion for Relief from the Automatic Stay* [ECF No. 1048] (the "Debtors' Objection").[4] In support of this Objection, the Official Committee respectfully states as follows.

## PRELIMINARY STATEMENT

1. These chapter 11 cases are at a critical juncture, with numerous parties in interest engaged in a highly complex mediation process designed to avoid dissipation of the Debtors' assets in litigation over allocation of the Debtors' estates, the entire value of which is being turned over to creditors.[5] In addition, both the Debtors and the Sacklers must make comprehensive disclosures of documents, testimony and evidence *in these cases* for the parties in interest to evaluate the Settlement Framework (as defined below) and, ultimately, for the bankruptcy process to succeed. The Court recently authorized the Official Committee, among others, to conduct discovery against the Sacklers under Federal Rule of Bankruptcy Procedure 2004, and the Debtors, the Sacklers and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Lift-Stay Motion.

[3] The Co-Defendants are Allergan Finance, LLC, AmerisourceBergen Drug Corporation, Bellco Drug Corp., American Medical Distributors, Inc., Anda, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., Cephalon Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis Pharma, Inc., Actavis LLC, CVS Pharmacy, Inc., Cardinal Health, Inc., Kinray, LLC, Walmart Inc., McKesson Corp., PSS World Medical, Inc., Walgreen Co., Walgreen Eastern Co., Rite Aid of Maryland, Inc. and Rite Aid of New York, Inc. For the avoidance of doubt, although certain affiliates of Co-Defendant CVS Pharmacy, Inc. are members of the Official Committee, such affiliates were recused from all decisions of the Official Committee regarding the Motion and the Objection.

[4] For the avoidance of doubt, and as set forth herein, the Official Committee joins in certain but not all of the arguments set forth in the Debtors' Objection.

[5] *See* Order Appointing Mediators [ECF No. 895] (the "Mediation Order" and such authorized process, the "Mediation"). The parties currently participating in the Mediation are: (i) the Debtors; (ii) the Official Committee; (iii) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants; (iv) the Ad Hoc Committee of NAS Babies; (v) the Ad Hoc Group of Hospitals; (vi) the Ad Hoc Group of Non-Consenting States; (vii) the Multi-State Governmental Entities Group; (viii) the Ad Hoc Group of Individual Victims; (ix) counsel for the Blue Cross Blue Shield Association, various third party payors and health insurance carrier plaintiffs; and (x) the group of individual health insurance purchasers, represented by Stevens & Lee. P.C. (collectively, the "Mediation Parties").

others have an enormous amount of work to do before the required disclosures are complete. Now is precisely the wrong time to distract these key constituencies from that work.

2.  The Official Committee is hopeful that the Mediation will result in a consensual resolution of myriad intercreditor issues, that the Sacklers and Debtors will provide the disclosures sought by the Official Committee and others and that the parties can then turn their attention to negotiating a global settlement with all major constituencies, including the Sacklers, that will maximize value for the Debtors' creditors. Notwithstanding the Co-Defendants' attempt to frame their requested relief narrowly and engineer an exception to Bankruptcy Code section 362(a)'s prohibition against a "proceeding against the [D]ebtor[s]," they seek leave to engage in a process that is likely to thwart, or even derail, some of the most critical aspects of these chapter 11 cases, namely the Mediation, discovery and an ultimate global resolution of these cases. Moreover, the Co-Defendants have demonstrated neither exigency nor a compelling reason why their requested relief should be granted and, therefore, have failed to meet their burden to obtain relief from the stay or a modification of the Preliminary Injunction[6] imposed by this Court to protect these highly public cases from interference.

3.  By the Lift Stay Motion, the Co-Defendants seek to include the Debtors as assignees of responsibility on a verdict form (the "Verdict Form") at a trial (the "Trial") in the New York Litigation, an action that is largely indistinguishable from many of the thousands of pending actions against the Debtors and the Sacklers that have been stayed and/or enjoined and thus seek a benefit to which no other litigants are entitled. While such a result certainly may be unfair to the

---

[6] *See Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction* [Adv. Pro. ECF No. 82] (as amended, the "Preliminary Injunction"). The Co-Defendants decline to advance any arguments with respect to why relief from the Preliminary Injunction, in addition to the automatic stay, is appropriate here. Notwithstanding this omission and to the extent the Court interprets the Lift Stay Motion to similarly request relief from the Preliminary Injunction, the Official Committee addresses in this Objection why the Co-Defendants have failed to meet the applicable standards for relief from either the automatic stay or the Preliminary Injunction.

plaintiffs in the New York Litigation (the "Plaintiffs"),[7] the Official Committee is far more concerned by the impact the Co-Defendants' request could have on these chapter 11 cases.

4. The Co-Defendants have tried to frame the relief they seek as narrow and technical, in order to portray the impact on the cases as minimal and to tip the balance of harms in their favor. They argue that their request will have little or no impact on these chapter 11 cases because the Debtors will be only nominal parties, not subject to binding legal effect from any verdict in the Trial. Regardless of any *legal* effect that may result from the proposed inclusion of the Debtors on the Verdict Form, the Official Committee submits that, if granted, the Co-Defendants' requested relief will have a severe *practical* effect on the trajectory of these delicately balanced cases.

5. As the Official Committee has made clear since its formation, the continuation of extra-bankruptcy litigation against the Debtors or the Sacklers would divert time and resources away from the numerous and highly complex issues underlying these cases. Therefore, a complete standstill of such litigation is essential to the success of these cases, including a consensual outcome in the now well-underway Mediation and a comprehensive investigation of potential claims against the Sacklers and other related parties in connection with the evaluation by numerous parties of the Settlement Framework.[8] In recognition of these imperatives, the Official Committee and other key stakeholders spent the first several weeks following the Petition Date negotiating

---

[7] *See New York Plaintiffs' Opposition to Defendants' Motion for Relief from the Automatic Stay* [ECF No. 979] (the "Plaintiffs' Objection").

[8] The Official Committee, along with other parties in interest, currently is engaged in extensive discovery in connection with an investigation of potential estate causes of action against the Sacklers and affiliated entities, including pursuant to the *Amended Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties* [ECF No. 1008] recently entered by the Court. This investigation, which involves the review of millions of pages of documents and extensive legal analysis, will be instrumental to the Official Committee's views regarding the settlement framework (the "Settlement Framework") agreed to by the Sacklers and a group of governmental and other contingent litigation claimants, represented by Kramer Levin Naftalis & Frankel LLP, Gilbert LLP, Brown Rudnick LLP, and Otterbourg P.C. (the "Consenting Ad Hoc Committee") at the outset of these chapter 11 cases. *See Notice of Filing of Term Sheet with Ad Hoc Committee* [ECF No. 257]. Significantly, as all parties are aware, the Settlement Framework involves—and any potential global settlement in these cases very likely will involve—a settlement with the Sacklers.

4

the terms of the Preliminary Injunction, which stays all litigation against the Debtors, the Sacklers and their related parties to ensure a reprieve broader than the automatic stay alone could provide. Indeed, it is not just the automatic stay, but also the Preliminary Injunction, which prevents the Co-Defendants from including the Debtors on the Verdict Form.

6. The Official Committee has supported and continues to support the Preliminary Injunction because, among other reasons, the Official Committee believes that any finding regarding the Debtors' liability, regardless of the outcome, quantum or whether such determination is legally binding, will have a severe impact on essential aspects of these cases. Although the Official Committee takes no position at this time on the likely outcome of the New York Litigation, the mere prospect of a verdict from the New York Court—or any other court—that purports to calculate the Debtors' liability (or lack thereof) to certain opioid claimants has the potential to skew negotiations by resulting in an almost arbitrary assessment of the Debtors' obligations to certain creditor constituencies, the meaning of which undoubtedly will be scrutinized and disputed by other parties in these chapter 11 cases. This, in turn, could result in significant disruption to the pending Mediation, through which numerous creditor constituencies seek resolution of complex and multi-faceted allocation issues, and to further stages of negotiations, including with the Sacklers.

7. The Official Committee is also concerned that the foregoing considerations will put the Debtors in an untenable position of choosing between the protection afforded by the stay and the Preliminary Injunction, on the one hand, and being compelled to participate in the Trial in some way to guard against the possibility that a verdict—in whatever form—could threaten a successful outcome in these chapter 11 cases. At a minimum, if the Debtors' name is on the Verdict Form, the Debtors—and other parties in interest, including the Sacklers—will be required to carefully

5

monitor the Trial and react to each day's developments. And, at worst, the Debtors (and perhaps the Sacklers) will be compelled to become more involved to ensure that a determination, both reputational and in respect of the chapter 11 cases, is not made without the opportunity to advance a meaningful defense. Regardless of their ultimate decision—which they may be called upon to repeat in other state court litigation, as there is no principled distinction between the Plaintiffs and other litigants other than the Defendants' misguided insistence that the Trial is imminent[9]—this distraction and the associated expense provide yet another reason to deny the Lift-Stay Motion.

8.    Moreover, notwithstanding the Co-Defendants' ironic characterization of the Lift-Stay Motion as an "emergency," the Trial is unlikely to commence in the near term in light of the complete shutdown of all nonessential functions in New York state courts (and the near-complete shutdown of much of the rest of the world) during the current COVID-19 crisis. By contrast, the impact on these chapter 11 cases—undoing the careful and deliberate work of the Debtors, the Official Committee and the various parties in setting the stage for consensual negotiations and forcing the Debtors back into litigation from which the stay and the Preliminary Injunction were designed to provide a reprieve—strongly disfavors relief from the stay or the Preliminary Injunction. Under these circumstances, the balance of harms tips sharply against the Co-Defendants and, therefore, the Lift-Stay Motion should be denied.

---

[9] The Trial is far from unique in this respect and far from certain to be the first opioid trial involving the Debtors as named defendants to actually commence. Multiple trials are scheduled to commence in the near future with the Debtors as named defendants (all of which are stayed as to the Debtors). *See, e.g.*, *Barry Staubus v. Purdue Pharma, L.P., et al.*, No. 82CC3-2017-CK-41916 (Cir. Ct. Sullivan Cnty. Tenn.) (trial scheduled for May 18, 2020); *Alabama v. Purdue Pharma L.P., et al.*, No. 03-CV-2019-901174 (Cir. Ct. Montgomery Cnty. Ala.) (trial scheduled for July 27, 2020); *City of Huntington, West Virginia v. AmerisourceBergen Drug Corporation*, No. 3:17-cv-01362 (S.D.W.V.) and *Cabell Cnty. Comm'n v. AmerisourceBergen Drug Corp., et al.*, No. 3:17-01665 (S.D.W.V.) (combined trial scheduled for August 31, 2020); *Mississippi v. Purdue Pharma L.P., et al.*, No. 25CH1:15-cv-001814 (Ch. Ct. 1st Jud. Dist. Hinds Cnty. Miss.) (trial scheduled for September 1, 2020); *People of the State of California v. Purdue Pharma L.P., et al.*, No. 30-2014-00725287 (Orange Cnty. Sup. Ct. Santa Ana Cal.) (trial scheduled for September 28, 2020).

**OBJECTION**

9. The Co-Defendants have failed to make the requisite showing to support their requested relief for two primary reasons. First, the applicable standard in this Circuit strongly disfavors relief from the stay under the unique circumstances of these chapter 11 cases. Second, the Co-Defendants have not overcome the high standard necessary to obtain a modification to the Preliminary Injunction. As such, the Lift-Stay Motion should be denied.

    A.    **Relief from the Automatic Stay Is Inappropriate Given the Posture of the Chapter 11 Cases**

10. In the Second Circuit, a motion seeking relief from the stay to proceed with litigation in a nonbankruptcy forum is governed by the 12-factor test articulated in *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).[10] While the entire *Sonnax* analysis disfavors granting the Motion, four important *Sonnax* factors militate most significantly against granting the Motion in light of the unusual facts of these cases and the even more unusual circumstances in which the Trial would occur.[11]

---

[10] The *Sonnax* factors are: (1) whether relief from the stay would result in partial or complete resolution of the relevant issues; (2) lack of connection with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear the cause of action the movant seeks to litigate; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim that would arise from the other action would be subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on parties and balance of harms.

[11] The Co-Defendants also cite to several state court decisions asserting that the bankruptcy of a party is no impediment to such a party's inclusion on a verdict form, which are of limited relevance in the bankruptcy context. *See* Lift-Stay Motion at 2; *see also In re Killmer*, 501 B.R. 208, 214 (Bankr. S.D.N.Y. 2013) (concluding that state court decisions "must bow to the plenary power vested in the federal courts over bankruptcy proceedings."). Indeed, that certain state courts have found they have the authority to proceed with actions listing defendants on verdict forms while such defendants are protected by the automatic stay should not supersede the generally applicable test mandated by the Second Circuit. The bankruptcy cases cited by the Co-Defendants are also distinguishable. The first such case, *Estes Express Lines v. Paone (In re Paone)*, 401 B.R. 151 (Bankr. M.D. Pa. 2009), is distinguishable because it turned on a now-disavowed quirk of Third Circuit law under which not permitting the debtor to be part of an allocation determination would transmute the co-defendants' contribution claims into administrative claims. *Id. at 153*; *see also*

1. ***Interference with the Bankruptcy Case & Prejudice to Other Creditors***

11. The Official Committee shares the Debtors' view that inclusion of the Debtors as responsible parties on the Verdict Form would pose a substantial risk to these chapter 11 cases. This risk comes in three main forms: (i) the harm to the ongoing Mediation and future negotiations; (ii) interference with the discovery process against the Sacklers as part of the Official Committee's and other parties' evaluation of the Settlement Framework; and (iii) the cost to the estates of the potential diversion of the Debtors' and the Sacklers' attention and resources.

12. Nearly every significant constituency in these cases is expending significant time and energy in the Mediation in an effort to resolve on a consensual basis numerous allocation issues among the non-federal public and private opioid litigant groups. The Official Committee believes that a successful Mediation is a critical first step towards achieving an overall resolution of these cases that is in the best interests of the Debtors' creditors. This Mediation, and further negotiations in these cases, can command the attention of creditors only because the automatic stay and the Preliminary Injunction have frozen in place many of the operative facts on which such negotiations are based.

13. Irrespective of whether the Debtors are included on the Verdict Form, the Official Committee is of the view that facts developing during the Trial and any eventual judgment will influence negotiations in the Mediation, as have all other opioid-related judgments and trials to date. While the pendency of these chapter 11 cases should have no impact on opioid litigation against parties other than the Debtors or the Sacklers, the inclusion of the Debtors on the Verdict

---

*In re M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), *overturned by Jeld-Wen, Inc. v. Van Brunt (In re Grossman's, Inc.)*, 607 F.3d 114 (3d Cir. 2012). The other bankruptcy case cited by the Co-Defendants, *Copper Kettle Marina, Inc. v. Dorner (In re Dorner)*, 125 B.R. 198 (Bankr. N.D. Ohio 1991) is distinguishable because it related to relief not from the automatic stay, but from the discharge injunction, thereby obviating any concerns regarding impact on the (concluded) bankruptcy cases.

Form likely will make the Trial qualitatively different from other proceedings in that any ultimate determination (or the prospect of one) may have the effect of placing a tangible thumb on the scale. Again, while the Official Committee takes no position at this time on the likely outcome of the New York Litigation, the Official Committee and the other Mediation Parties simply cannot risk the possibility that new facts will emerge (other than those that do not directly involve the Debtors or the Sacklers) during the Mediation that will upset the tenor of discussions. The pendency of a trial that will assign comparative responsibility (or possibly no responsibility) to Purdue is exactly the sort of imminent fact that will disrupt the Mediation, to the detriment of all stakeholders.

14. Allowing the Plaintiffs a chance to obtain even a non-binding "paper" verdict regarding the Debtors' responsibility for the opioid crisis would give those Plaintiffs an opportunity that none of the Debtors' other creditors have in these cases (as those creditors' suits are fully subject to the automatic stay and the Preliminary Injunction). If the Plaintiffs prevail in the Trial, they could unfairly seek to leverage any such allocation of responsibility in the Mediation. In turn, the other Mediation Parties likely will argue about the comparative weight that should be given to such an allocation of responsibility. If, on the other hand, the Plaintiffs do not prevail, the other Mediation parties will argue the inverse. Either outcome will result in an unnecessary distraction in the already complex Mediation. Findings at the Trial could also impair the ability to consummate a settlement with creditors by altering the backdrop against which the Sacklers have preliminarily agreed to contribute money to the Debtors' estates.

15. In addition, notwithstanding the protection afforded by the stay and the Preliminary Injunction, both the Debtors and the Sacklers may be incentivized to participate in the Trial to mitigate any negative impact on the cases and protect against any further reputational damage. Indeed, if the Motion were granted, the Debtors and the Sacklers would be faced with a Hobson's

choice: continue to take advantage of the breathing spell afforded by the stay and the Preliminary Injunction and direct all of their attention to the chapter 11 cases or simultaneously participate in the Trial notwithstanding their immunity from any judgment, which similarly would have a severe and irreparable impact on these cases and the Debtors' creditors despite the Debtors' technical immunity from any judgment.

16. If Purdue does not participate in the Trial, the Co-Defendants will be free to assign blame to Purdue without the Debtors or the Sacklers having any opportunity to put forth a defense. Indeed, the Co-Defendants appear to seek nothing more than the benefit of an "empty chair in the courtroom, [which] can neither appear nor offer any defense," allowing them to point fingers at the Debtors and thereby limit their own liability. *See Artibee v. Home Place Corp.*, 28 N.Y.3d 739, 744 (N.Y. 2017) (concluding that the State could not appear on a verdict form to be apportioned fault when it was immune to suit in New York Supreme Court).

17. By contrast, if Purdue and/or the Sacklers choose to participate in the Trial, they will be opening themselves to scrutiny in a long, public proceeding. Such involvement undoubtedly will distract the Debtors and the Sacklers from participating in these cases and will introduce countless new variables into negotiations on the basis of each day's testimony and examination, all of which will be debated, scrutinized, fought over and likely not agreed upon. The public perception of these developments will lead to negotiations conducted against a constantly shifting landscape, instead of the solid foundation the Official Committee and other parties in interest have worked so hard to construct. The Debtors will also be forced to incur substantial legal fees (at the expense of creditors), as the trial is expected to run for several months.

18. In short, once the Debtors are identified on the Verdict Form, regardless of whether the Debtors and the Sacklers choose to participate, the Trial—regardless of its outcome—will take

on increased importance that will cast a long shadow over the trajectory of these cases. In light of these considerations, the Debtors and all other parties in interest would, at the very least, be required to expend significant resources monitoring the Trial on a day-by-day basis. Thus, the impact on the bankruptcy cases and the prejudice to creditors resulting from the requested relief both weigh heavily against relief from the stay.

### 2. *Trial-Readiness*

19. The Co-Defendants' analysis of this factor entirely ignores two key participants in the trial: the New York Court and the Debtors.[12] Notwithstanding the original "emergency" nature of the Defendants' filing, **there is no imminently scheduled trial**. The Trial was, at one point, scheduled for March 20, 2020. Prior to that, it was scheduled for January 20, 2020. Now, the world is in an unprecedented situation due to the COVID-19 pandemic and **all** nonessential functions in the New York court system are postponed indefinitely, and are likely to remain so for some time.[13] While the language in *Sonnax* addresses the "parties'" trial-readiness, it is no less relevant whether the proposed forum can accommodate a trial. Thus, in light of the Defendants' and Plaintiffs' inability to go to trial in the near future, this factor weighs against relief.

20. In addition, the Co-Defendants blindly focus on their own and the Plaintiffs' readiness for trial, to the exclusion of the Debtors. The Debtors (and perhaps the Sacklers), for the reasons discussed above, would need to prepare themselves for some level of participation in the Trial, resulting in diverting attention away from the numerous critical issues in these chapter 11

---

[12] To the extent the Court interprets this factor to address the ability of the Plaintiffs and the Co-Defendants to move forward with the Trial generally, rather than to the Co-Defendants' request to include the Debtors on the Verdict Form, this factor has no bearing on the analysis because the Trial certainly can take place without the Debtors' involvement.

[13] *See* Ferguson *et al.*, Impact of Non-Pharmaceutical Interventions (NPIs) to Reduce COVID-19 Mortality and Healthcare Demand, Imperial College London (Mar. 16, 2020), *available at* https://spiral.imperial.ac.uk/bitstream/10044/1/77482/5/Imperial%20College%20COVID19%20NPI%20%modeling%2016-03-2020.pdf (recommending an 18-month "suppression" program to address the COVID-19 pandemic). If, during this time, the Trial were to be deemed an essential function by the New York Office of Court Administration such that it is permitted to go forward, the New York Court would still need to set a new date for the Trial.

cases—including responding to discovery, both formal and informal—and significant costs, all of which would be borne by creditors. In view of the foregoing, this factor weighs against relief from the stay.

### 3. *Partial or Complete Resolution*

21. These cases present the rare situation in which permitting the relief sought would result in neither partial nor complete resolution of ***any*** issue.

22. By the Co-Defendants' own admission, placing the Debtors' names on the Verdict Form ***could not*** result in a binding liability finding for the benefit of the Plaintiffs, or in a binding allocation of responsibility as between the Debtors and the Co-Defendants. Thus, this factor disfavors relief from the stay.

### 4. *Other Sonnax Factors*

23. Each of the remaining *Sonnax* factors either weighs against relief from the stay or is inapplicable.

- **Balance of Harms:** The Co-Defendants seek relief to use a procedural mechanism that may not exist in a trial that may not happen for many months. The sole benefit to the Co-Defendants would be to permit them to ***ask*** the New York Court to include the Debtors on the Verdict Form (and potentially be told they cannot).[14] By contrast, the harm to all parties in interest from disrupting the delicately constructed negotiation tracks in these chapter 11 cases could be catastrophic. This factor weighs in favor of maintaining the stay.

- **Judicial Economy:** In these cases, the parties in interest have crafted—and this Court has authorized—a carefully constructed framework for claims against the Debtors to be resolved consensually, rendering the apportionment of liability to the Debtors in the New York Litigation irrelevant. Accordingly, this factor weighs in favor of maintaining the stay.

- **Whether the Action Primarily Involves Third Parties:** The "action" in question is not the Trial generally, but the inclusion of the Debtors specifically on the Verdict Form. This "action" does not primarily involve the Plaintiffs and the Co-Defendants, but only the Debtors. Moreover, it is clear from the Lift-Stay Motion that the Co-Defendants intend to

---

[14] As the Plaintiffs have noted, it is by no means clear that the procedural device of a Verdict Form requiring the apportionment of liability between defendants is even available at the Trial under New York law. *See* Plaintiffs' Objection.

- **Specialized Tribunal:**  The New York court's experience with the opioid litigation does not render it a specialized tribunal. *See DiPietro v. 21st Century Oncology Holdings, Inc. (In re 21st Century Oncology Holdings, Inc.)*, No. 17-22770 (RDD), Adv. Pro. No. 17-08284, Hr'g Tr. Jan. 30, 2018 at 66:8–10 [ECF No. 23] (District Court where case had been pending was not specialized tribunal for purposes of federal False Claims Act *qui tam* litigation); *see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36(RJH), 2010 U.S. Dist. LEXIS 125182, at *13-14 (S.D.N.Y. Nov. 8, 2010).

- **Whether the Debtors' Insurer Has Assumed Responsibility:**  This factor does not weigh in favor of relief because no insurer has assumed responsibility for whatever role the Debtors would be required to play at the Trial.

- **Debtor as Fiduciary:**  This factor does not weigh in favor of relief.

- **Equitable Subordination/Judgment Lien:**  These factors are not relevant to the Lift-Stay Motion.

24.  Thus, application of the *Sonnax* factors clearly demonstrates that the Co-Defendants have failed to satisfy their burden of proving they are entitled to relief from the automatic stay.

### B.  The Co-Defendants Have Not Established Cause To Modify the Preliminary Injunction

25.  The arguments advanced by the Co-Defendants revolve around relief from the automatic stay under Bankruptcy Code section 362.  Importantly, however, the Debtors are also protected against being haled into court by the heavily negotiated Preliminary Injunction, which was most recently extended on March 30, 2020.  *See Eighth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Pro. ECF No. 168] (the "Preliminary Injunction Extension").  To the extent that the Trial goes forward without involving the Debtors, the Plaintiffs will not be in violation of the Preliminary Injunction.  Should the Co-Defendants succeed in convincing the New York Court to turn the Trial into a determination regarding the Debtors' liability, however, the Trial cannot go forward without a modification to the Preliminary

13

Injunction (which this Court should not grant). Thus, if the Court grants stay relief and the Co-Defendants prevail in their request to have the New York Court include the Debtors on the Verdict Form, the Trial will be prevented from proceeding by the Preliminary Injunction.

26. The Co-Defendants have not even asked for the relief from the Preliminary Injunction they would need to permit their version of the Trial to proceed, but in the event that the Court decides to interpret the Motion as also requesting such relief, the standards are even higher for modification of the Preliminary Injunction than for relief from the stay alone.

27. At bare minimum, a request to modify a preliminary injunction requires the Court to "exercise . . . the same discretion it exercised in granting . . . injunctive relief in the first place." *Sierra Club v. Army Corps of Engineers*, 732 F.2d 253, 256 (2d Cir. 1984). The Preliminary Injunction, and the Preliminary Injunction Extension, were entered after hundreds of pages of briefing and hours of carefully considered argument. The Co-Defendants have not come close to making the showing required to upset that calculus. Some courts in this District, however, have concluded that there is no separate standard for modification of a preliminary injunction, and that the standard applicable under Federal Rule of Civil Procedure 60(b) (*i.e.*, "a significant change in facts or law") is also required to modify a preliminary injunction. *See, e.g.*, *Lawsky v. Condor Cap. Corp.*, No. 14 Civ. 2863(CM), 2014 U.S. Dist. LEXIS 107253, at *5 (S.D.N.Y. Aug. 1, 2014) (citing cases).

28. Moreover, as Chief Judge McMahon has recognized, the order governing this case (although captioned at the Debtors' request as a preliminary injunction) is properly construed as a final order. *See Memorandum Order Denying Motion for Leave to Appeal Preliminary Injunction Order*, [ECF No. 8] *Dunaway v. Purdue Pharma L.P.*, No. 18 Civ. 10941 (CM) (S.D.N.Y. Dec. 10, 2019). A final order is subject to modification only on the basis of Federal Rule of Civil Procedure

14

60(b) (made applicable herein by Federal Rule of Bankruptcy Procedure 9024). *See Sierra Club*, 732 F.2d at 256. Therefore, to obtain relief from the Preliminary Injunction, the Defendants must demonstrate "a significant change in the law or facts." *Id.*

29. The Co-Defendants have come forward with nothing to suggest that the circumstances have changed so severely since the entry of the Preliminary Injunction that the Court must reconsider its decision to enter the Preliminary Injunction under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b).[15]

---

[15] Because the provisions of the Preliminary Injunction from which the Co-Defendants seek relief were in the original Preliminary Injunction, the order as relevant was final when the Motion was filed. To the extent that the Co-Defendants argue that the lower standards of Bankruptcy Rule 9023 (making applicable to these chapter 11 cases Federal Rule of Civil Procedure 59) apply based on the more recent entry of the Preliminary Injunction Extension, they must also explain why they declined to raise their concerns at the hearing on such extension—which occurred *after* they filed the Motion.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, in the Debtors' Objection and in the Plaintiffs' Objection, the Official Committee respectfully requests that the Court: (i) deny the Lift-Stay Motion; and (ii) grant such other and further relief as is just and proper.

Dated: New York, New York
       April 15, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ Arik Preis
    Ira S. Dizengoff
    Arik Preis
    Mitchell Hurley
    Sara L. Brauner
    One Bryant Park
    New York, New York 10036
    Tel: (212) 872-1000
    Fax: (212) 872-1002
    idizengoff@akingump.com
    apreis@akingump.com
    mhurley@akingump.com
    sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al.