| | |
|---|---|
| KRAMER LEVIN NAFTALIS<br>& FRANKEL LLP<br>Kenneth H. Eckstein<br>David E. Blabey Jr.<br>Rachael Ringer<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 715-9100 | GILBERT LLP<br>Scott D. Gilbert, admitted *pro hac vice*<br>Craig Litherland, admitted *pro hac vice*<br>Kami E. Quinn, admitted *pro hac vice*<br>100 New York Ave, NW, Suite 700<br>Washington, D.C. 20005<br>Telephone: (202) 772-2200 |
| BROWN RUDNICK LLP<br>David J. Molton<br>Steven D. Pohl<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800 | OTTERBOURG P.C.<br>Melanie L. Cyganowski<br>Jennifer S. Feeney<br>230 Park Avenue<br>New York, NY 10169<br>Telephone: (212) 661-9100 |

*Attorneys for the Ad Hoc Committee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------X
                                                            :
In re:                                                      :   Chapter 11
                                                            :
PURDUE PHARMA L.P., et al.,                                 :   Case No. 19-23649 (RDD)
                                                            :
                          Debtors.                          :   (Jointly Administered)
                                                            :
------------------------------------------------------------X
```

**AD HOC COMMITTEE'S OBJECTION AND JOINDER IN**
**THE DEBTORS' OBJECTION TO CO-DEFENDANTS' MOTION FOR**
<u>**RELIEF FROM THE AUTOMATIC STAY**</u>

The ad hoc committee of governmental and other contingent litigation claimants (the "**Ad Hoc Committee**"), which consists of (i) ten States, (ii) the court-appointed Plaintiffs' Executive Committee in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No. 2804 (N.D. Ohio) (the "**PEC**"), (iii) six political subdivisions of States, and (iv) one federally recognized American Indian tribe, hereby submits this objection (the "**Objection**") and joinder in the objection (the "**Debtors' Objection**") [Dkt. No. 1048] filed by Purdue Pharma L.P. and its affiliated debtors (collectively, "**Purdue**" or the "**Debtors**") in response to the *Motion for Relief from the Automatic Stay* (the "**Motion**") [Dkt. No. 909] submitted by certain Defendants[1] ("**Co-Defendants**"), as identified in the Motion, in the prescription opioid litigation in New York state court captioned *In re Opioid Litig.*, No. 400000/2017 (Suffolk Cty. Sup. Ct.) (the "**New York State Litigation**").  In support of the Objection, the Ad Hoc Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.    In addition to the imposition of the automatic stay by the Bankruptcy Code, on two separate occasions in these Chapter 11 Cases, this Court has stayed all opioid-related litigation pertaining to the Debtors – most recently through October 5, 2020 – primarily to preserve the Debtors' assets and resources and allow for efficient negotiations between the Debtors and their claimants.  *See* Ninth Am. Order Pursuant to 11 U.S.C. § 105(a) Granting Mot. Prelim. Inj., *In re Purdue Pharma L.P.*, Adv. Pro. No. 19-08289 (RDD) (Bankr. S.D.N.Y. Apr. 14, 2020) [Adv. Pro.

---

[1] Allergan Finance, LLC, AmerisourceBergen Drug Corporation, Bellco Drug Corp., American Medical Distributors, Inc., Anda, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil- Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutical, Inc. n/k/a Janssen Pharmaceuticals, Inc., Cephalon Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis Pharma, Inc., Actavis LLC, CVS Pharmacy, Inc., Cardinal Health, Inc., Kinray, LLC, Walmart Inc., McKesson Corp., PSS World Medical, Inc., Walgreen Co., Walgreen Eastern Co., Rite Aid of Maryland, Inc. and Rite Aid of New York, Inc.

Dkt. No. 175]. With the mediation regarding the allocation of value among creditors well underway, those negotiations are now the central focus of these cases.

2.  Notwithstanding the fact that all creditors (including governmental entities) are prohibited from continuing actions against the Debtors and related parties, the Co-Defendants seek to be the sole exception to that rule – in order to potentially reduce *their own* liability (and effectively augment Purdue's), by including Purdue in a "jury verdict sheet" to allow the factfinders to potentially allocate a portion of the fault for public nuisance to Purdue, and away from the Co-Defendants. In doing so, however, the Co-Defendants seek to take action that runs afoul of both the automatic stay and the preliminary injunction imposed by this Court for the benefit of the Debtors, their affiliates, and others, without having satisfied the standards for relief from either. Moreover, allowing for some apportionment of fault to Purdue and its affiliates in the New York State Litigation would allow the State of New York and the County of Suffolk to, in effect, pursue litigation against the Debtors and related entities notwithstanding the stay and the injunction – an unfair result when all other governmental entities have been barred from doing so.

3.  In addition to undermining the critical reprieve from litigation that the Debtors obtained with the grant of the preliminary injunction, the relief sought in the Motion is antithetical to the policies of the Bankruptcy Code in other respects, as well. *First*, and critically, by the Motion, the Co-Defendants are seeking to gain a leg up on other creditors by securing for themselves a 100% recovery – in real time – on their potential future indemnification and contribution claims against the Debtors, while all other unsecured creditors are relegated to waiting their turn for percentage recoveries at a much later date. These unsecured creditors include governmental entities that have asserted public nuisance claims against the Debtors and related parties (as well as, in many instances, the Co-Defendants) throughout the country. In this way, the

Motion upends bedrock bankruptcy principles of equality of treatment among creditors and introduces a new form of quasi-"setoff" that has no basis in the Bankruptcy Code.

4. *Second,* the Co-Defendants' fail to satisfy the so-called "*Sonnax*" factors governing relief from the stay.[2]  As set forth in more detail in the Debtors' Objection, each of the factors the Co-Defendants argue weigh in favor of lifting the stay, actually mandate the opposite result. Among other things, including Purdue in the trial for purposes of apportioning fault *away* from the Co-Defendants *to* Purdue will necessarily require participation at trial by the Debtors and related parties who are simultaneously participating in negotiations, diligence, and discovery in the Chapter 11 Cases, providing for undue distraction at a critical point in the case.[3]  Nor have the Co-Defendants actually established that they are entitled to apportion fault in the manner they seek. The basis for denial of the Motion here is underscored by the fact that the Debtors, and *all major creditor constituencies* (including the Creditors' Committee, the Non-Consenting State Group, and the Ad Hoc Committee) oppose the relief requested.  Clearly, then, the balance of harms weighs strongly in favor of denying any relief from the automatic stay or the preliminary injunction in this case.

## OBJECTION AND JOINDER

**A.    The Motion Seeks a Disguised – And Impermissible – Form of Setoff**

5. The Motion is premised on the fear that, if relief from the stay is not granted, the Co-Defendants may be assigned some portion of Purdue's liability.  Whether this is likely to happen is highly uncertain; as the Co-Defendants admit, the plaintiffs in the New York litigation seek to impose joint and several liability on all Defendants, and apportionment is thus far from

---

[2] *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990).

[3] A trial date had been set for March 2020, but has been adjourned in light of the COVID-19 pandemic.

3

assured. Motion ¶ 15. But even if the Co-Defendants do risk a verdict that encompasses, in one form or another, some liability they believe is attributable to Purdue, this does not prohibit the Co-Defendants from filing a claim for contribution or indemnity in these chapter 11 cases. That claim, if it proves meritorious, will receive the same treatment as other unsecured creditors in these cases.

6. Not satisfied with this outcome, the Co-Defendants seek, instead, to elevate their claim to full and immediate payment through a novel form of setoff. Rather than suffer a verdict, file a proof of claim, and receive a future percentage recovery from Purdue, the Co-Defendants hope to receive what is in effect full payment of a potential contribution/indemnity claim through a premature claims-allowance proceeding in state court. The Bankruptcy Code does not contemplate this procedural mechanism, nor is it at all equitable to other unsecured creditors, who (i) will have no opportunity to participate in the state court proceedings and object to "allowance" of the Co-Defendants' claims against Purdue, and (ii) will themselves have to wait many months, if not years, before receiving a (percentage) recovery on their own unsecured claims. For this reason alone, the Motion should be denied.

### B.  The Motion Does Not Satisfy the *Sonnax* Factors

7. The Motion also fails to satisfy the *Sonnax* factors, as required to provide any relief from the automatic stay. In *Sonnax*, the Second Circuit set forth a non-exclusive list of factors for consideration when granting a motion for relief from the stay. While the Motion selectively focuses on only three of them, a consideration of the full list of factors – including those that the Co-Defendants erroneously contend favor their own position – confirms that stay relief is inappropriate here. In particular:

- <u>Relief from stay will not resolve any issue relevant to Purdue</u>. If, as the Co-Defendants contend, the state court proceeding will not result in any definitive finding of liability with respect to Purdue, then stay relief will not "result in a partial or complete resolution of" any issue relevant to Purdue. Indeed, it appears uncertain that stay relief will result in resolution of any issue relevant even to the

4

      Co-Defendants, since the Co-Defendants may remain jointly and severally liable in any event.

- <u>Relief from stay will interfere with the bankruptcy case</u>.  Relief from the stay will interfere with the bankruptcy case by, inter alia, causing the Debtors – and potentially creditors – to incur costs and expenses defending against, participating in, and/or monitoring the state court proceedings.  In addition, there can be no assurance that an apportionment of liability to Purdue in the state court litigation will not have some effect, whether direct or indirect, on liability in the bankruptcy and/or negotiations relating to allocation of value between and/or among creditors.

- <u>The state court proceeding does not name the debtor in a fiduciary capacity</u>.  The legislative history to the Bankruptcy Code suggests that "proceedings in which the debtor is a fiduciary…need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." H.R. Rep. No. 95-595 at 343-44 (1977).  Purdue is not named in a fiduciary capacity in the state court litigation, so this factor militates against stay relief.

- <u>The state court is not a "specialized tribunal."</u>  The state court is not a "specialized tribunal with the necessary expertise [to] hear the cause of action."  To the contrary, the Bankruptcy Court is the appropriate and specialized tribunal for the allowance of claims against the Debtors, including contribution claims.

- <u>The action does not primarily involve third parties</u>.  While Purdue has been severed from the state court litigation, the purpose of the Co-Defendants' Motion is to reinstate Purdue in a central role in that litigation – such that, if the Motion is granted, it will *not* be the case that the litigation primarily involves third parties.

- <u>Litigation in another forum could easily prejudice the interests of other creditors</u>.  Among other potentially prejudicial impacts, creditors whose claims are subject to the automatic stay and/or the preliminary injunction are unable to proceed with their claims against Purdue and related affiliates while the State of New York and the County of Suffolk are essentially allowed to litigate claims against Purdue (even if the allocation of fault is non-binding).

- <u>There is no judicial economy in lifting the stay</u>.  If, as the Co-Defendants assert, the relief sought in the Motion will not result in a fixing of Purdue's liability for purposes of the bankruptcy case, there is no judicial economy to lifting the stay.  Instead, as noted above, the only effect of lifting the stay is that the Co-Defendants' potential contribution/indemnification claims against Purdue will be liquidated and allowed now (in state court) rather than later (in bankruptcy court).  Indeed, judicial economy is likely to be harmed by stay relief, because Purdue's "liability" may have to be adjudged twice – once now, in connection with the state court proceeding, and once later, in connection with allowance of the state court plaintiffs' potential claims against Purdue.

5

- <u>The balance of harms weighs decidedly against stay relief.</u>  The relief sought in the Motion is designed to benefit a single creditor out of thousands, and risks prejudicing every other creditor by permitting the one favored creditor to jump to the front of the line and have its alleged claims against Purdue adjudicated in a state court tribunal well in advance of the allowance or payment of any other claim.  Balanced against this weighty harm to other creditors and the estates is merely the parochial desire of one creditor (an alleged wrongdoer) to see its claims adjudicated now, rather than later.  Not surprisingly, it appears that all of the Debtors' main constituents oppose the relief sought in the Motion.

8. For these reasons, and the additional ones articulated in the Debtors' Objection (and those objections filed by the Creditors' Committee and the Non-Consenting States), the Co-Defendants have not shown that the *Sonnax* factors justify relief from the stay or the preliminary injunction imposed by this Court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Ad Hoc Committee respectfully requests that the Court deny the Motion.

Dated:  April 15, 2020                                  Respectfully submitted,


/s/      *Kenneth H. Eckstein*___
Kenneth H. Eckstein
David E. Blabey Jr.
Rachael Ringer
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Email: keckstein@kramerlevin.com
          dblabey@kramerlevin.com
          rringer@kramerlevin.com

Scott D. Gilbert, admitted *pro hac vice*
Craig Litherland, admitted *pro hac vice*
Kami E. Quinn, admitted *pro hac vice*
GILBERT LLP
100 New York Ave, NW, Suite 700
Washington, D.C. 20005

6

Telephone: (202) 772-2200
Email:  gilberts@gilberlegal.com
            litherlandc@gilbertlegal.com
            quinnk@gilbertlegal.com

David J. Molton
Steven D. Pohl
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email:  dmolton@brownrudnick.com
            spohl@brownrudnick.com

Melanie L. Cyganowski
Jennifer S. Feeney
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100
Email:  mcyganowski@otterbourg.com
            jfeeney@otterbourg.com

*Attorneys for the Ad Hoc Committee*