**TARTER KRINSKY & DROGIN**
*Counsel for Ad Hoc Committee for NAS Children*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**AD HOC COMMITTEE FOR NAS CHILDREN'S RESPONSE TO THE INDEPENDENT PUBLIC SCHOOL DISTRICTS' MOTION TO SUBMIT CLAIM TO MEDIATION**

NASAHC[1] takes no position on IPSD's[2] motion to participate in mediation other than IPSD's claim falls clearly on the public side of the ongoing mediation. Moreover, NASAHC—

---

[1] "NASAHC" refers to the Ad Hoc Committee for NAS Children. The attorneys who comprise the NASAHC represent thousands of children born opioid-dependent and diagnosed with NAS. The NASAHC members have represented NAS-afflicted children for years, including in the opioid multidistrict litigation, *In re National Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio), and in another manufacturer's bankruptcy case, *In re Insys Therapeutics, Inc.*, No. 19-11292 (Bankr. D. Del.). NASAHC lawyers appeared before the Court at its very first hearing on September 16, 2019 and have actively supported the efforts of the Unsecured Creditors Committee (and its two NAS representatives) to address the claims of the NAS Children's claims. The NASAHC presented their claims (and evidence of their damages in the form of detailed expert reports and live expert presentation) to the mediators on March 15, 2020.

[2] "IPSD" refers to the Board of Education of Thornton Township High School District 205, Board of Education of East Aurora District 131, and the Board of Education of Thornton Fractional Township High School District 205. IPSD initially joined in the Board of Chicago School District No. 299's motion for mediation. (*See* ECF ## 998, 1025.) After the Board of Chicago School

which represents children born with neonatal abstinence syndrome ("NAS")— submits this response to underscore that IPSD and the NAS have markedly different interests. While IPSD is comprised of only school districts, NAS children are the human beings directly injured by opioids. The relief IPSD seeks is thus necessarily different; it seeks *the costs IPSD itself incurs* in providing special education presumably to NAS children. But NAS children seeks relief *for themselves individually and collectively through much needed nationwide medical surveillance*. So, regardless of whether IPSD participates in mediation, IPSD's recovery, as a public interest, should have no impact on the NAS children's recovery.

### IPSD's Claim

IPSD's claim against Debtors is premised on the "increased costs of the health services provided to its students and staff as well as the cost and burden of providing complex and expensive educational services to students who have suffered neurological damage in utero caused by opioid use by their mothers during pregnancy." (IPSD Complaint,[3] ¶ 2.) IPSD essentially seeks reimbursement of the cost of delivering health and education services to its enrolled population of NAS children.

It is unclear whether IPSD's can prove that it has actually increased special-education spending to address NAS. It is also unclear whether it has standing to seek reimbursement for expenditures that actually come from the State of Illinois or the federal government.[4] NASAHC

---

District No. 299 withdrew its request for mediation (*see* ECF # 1036), IPSD filed its own motion (*see* ECF # 1038), to which NASAHC now responds.

[3] "IPSD Complaint" refers to the Class Action Complaint filed in *Bd. of Educ. of City of Chicago, Sch. Dist. No. 299 (In re Nat'l Prescription Opiate Litig.)*, No. 1:19-op-46042-DAP (N.D. Ohio November 20, 2019) (attached as **Exhibit A**). IPSD relies on the allegations of the IPSD Complaint as the basis for its claim in this bankruptcy. (*See* ECF # 1038-2.)

[4] It is also unclear how any "health services" IPSD provides to "its staff" are attributable to opioid ingestion or abuse. (*See* IPSD Complaint, ¶ 2; *id.* ¶ 699 (seeking reimbursement for "healthcare

nevertheless applauds IPSD's appreciation for the reality many NAS children have severe learning disabilities and for drawing additional attention to the inadequate public response to this unaddressed crisis. All funding advocacy for these voiceless children is helpful and encouraged.

But IPSD cannot seek relief on behalf of the NAS children themselves. The children and their legal representatives—and no other person or entity—have exclusive standing to pursue their own remedies.

### **NAS Children's Claims**

The scope of the damages suffered directly by NAS children is far greater than the special-education costs IPSD pursues. In part, as explained below, we do not yet know the full magnitude of these children's needs. But we do know enough to know they suffer significantly and that we have an obligation to study their needs comprehensively and put in place adequate measures to address them. So, they seek two categories of relief: (1) damages for known personal injuries; and (2) medical-monitoring costs to determine the extent of their needs over their lives. . They have set forth these theories in their pleadings and in their request for class-action certification in the opioid multidistrict litigation. (*See*, *e.g.*, Frost Complaint;[5] Artz Complaint;[6] Class-Certification Motion.[7])

---

insurance" and "disability payments" for its employees).) In any event, that aspect of its claim bears no connection to the relief the NAS children seek on their own behalves.

[5] "Frost Complaint" refers to Third Amended Class Action Complaint filed in *Frost v. Endo Health Solutions Inc. (In re Nat'l Prescription Opiate Litig.)*, No. 1:18-op-46327 (N.D. Ohio Apr. 7, 2020) (attached as **Exhibit B**).

[6] "Artz Complaint" refers to Second Amended Class Action Complaint filed in *Artz v. Endo Health Solutions Inc. (In re Nat'l Prescription Opiate Litig.)*, No. 1:19-op-45459 (N.D. Ohio Nov. 4, 2019) (attached as **Exhibit C**).

[7] "Class-Certification Motion" refers to The NAS Guardians' Notice of Motion and Consolidated Motion for Class Certification and Appointment of Class Counsel filed in *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Jan. 7, 2020) (attached as **Exhibit D**).

Personal Injuries. For the last two decades, NAS babies have been born with a frightening frequency—now over 2,000 such children are born each month with little sign of slowing down. Conservative estimates place the number of living NAS children in the hundreds of thousands. Through no fault of their own, they suffer at birth from brutal withdrawal and then, experience a constellation of disabilities through adulthood. These include developmental disabilities (including delays in walking, talking, and socializing), learning disabilities, and physical disabilities (such as smaller brains, cleft lips and palates, club feet, sight issues, crossed eyes, hearing issues, visceral organ defects, neural tube defects, and defective hearts[8]). (*See generally Expert Reports of Drs. Kanwaljeet S. Anand, Charles Werntz, and Charles Vyvyan Howard*, attached as **Exhibits E-G**, respectively.) NAS children are unquestionably entitled to compensation for these devastating injuries, and IPSD's claim—whatever it may be—does not overlap with these far-more-substantial damages for personal injuries.

Medical Monitoring. While we know these children suffer, there is so much that we do not know. There is no nationwide process to measure these children's greater needs over the course of their lifetimes. So, it is impossible to allocate meaningful and adequate resources to help them. It is precisely because of the absence of a national longitudinal morbidity study (a study similar to that of the famed Framingham Heart Study which followed the cardiac health of thousands of individuals over decades[9]) that entities like the IPSD are left to assert vague damages and to guess at the volume of NAS Children within their systems. Despite more than 20 years of thousands of

---

[8] Heart defects include ventricular septal defects, atrial septal defects, hypoplastic left heart syndrome, pulmonary valve stenosis, and conventicler septal defects.

[9] S. Franklin, S Khan, et al., Pulse Pressure Useful in Predicting Risk for Coronary Heart Disease? The Framingham Heart Study, https://doi.org/10.1161/01.CIR.100.4.354, Circulation. 27 Jul. 1999;100:354–360.

NAS births the public side has never comprehensively studied these thousands of children. The NASAHC experts have therefore identified a profound need for medical monitoring and the funding of a national-cohort longitudinal morbidity study to identify, track, and record these children's disabilities, deformities, and diseases and to identify the full spectrum of effects that opioid exposure has upon the most vulnerable members of society. Only then can we ensure that as a society we address their needs comprehensively.

Two studies, among the many commissioned by NASAHC lawyers, provide some guidance as to a comprehensive medical monitoring program for an individual baby, from birth to age of majority. (*See Expert Reports of Drs. Kanwaljeet S. Anand and Charles Werntz*, attached as **Exhibits E & F**, respectively.) These studies describe the details of a medico-physical monitoring program to address muscular-skeletal, cardio-vascular, and neuro-psychiatric issues experienced throughout early childhood. They also highlight the need for specific monitoring for the disease of addiction as NAS Children enter adolescence. Finally, the NASAHC fears, but has no credible statistical basis to state, that these children born addicted will have a much greater propensity to become the addicts of tomorrow. But there is at best a patchwork of state and local programs that seek to evaluate and treat these children, so we have had little guidance as to when or how to treat these issues. It is precisely that lack of guidance that NASAHC's medical-monitoring claim seeks to remediate.

## CONCLUSION

The reasonable and necessary costs associated with the damages and lifelong care needs of the NAS children brought by the private side place this unique group of individuals in Purdue's list of creditors. So even if IPSD has a seat at the mediation table and succeeds in negotiating a favorable resolution for itself, that resolution should have no bearing on the amount the NAS

children deserve—both to compensate them directly for their injuries and to study their long-term needs.

Dated: April 17, 2020
     New York, New York

          **TARTER KRINSKY & DROGIN LLP**
          *Counsel for Ad Hoc Committee for NAS Children*

          By:/s/ Scott S. Markowitz
             Scott S. Markowitz, Esq.
             Rocco A. Cavaliere, Esq.
             Michael Z. Brownstein, Esq.
             1350 Broadway, 11th Floor
             New York, New York 10018
             Tel: (212) 216-8000
             Email: smarkowitz@tarterkrinsky.com
             Email: rcavaliere@tarterkrinsky.com
             Email: mbrownstein@tarterkrinsky.com