WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 371-2700
Fax: (305) 358-5744
Thomas E Lauria (*pro hac vice* pending)

1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
Fax: (212) 354-8113
J. Christopher Shore
Michele J. Meises
Alice Tsier
Ashley R. Chase

*Co-Counsel for Ad Hoc Group of Individual Victims
of Purdue Pharma L.P., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| Debtors.[1] | : | (Jointly Administered) |

**OBJECTION OF THE AD HOC GROUP OF INDIVIDUAL VICTIMS TO CREDITORS THE BOARD OF EDUCATION OF THORNTON TOWNSHIP HIGH SCHOOL DISTRICT 205, THE BOARD OF EDUCATION OF THORNTON FRACTIONAL TOWNSHIP HIGH SCHOOL DISTRICT 215, AND THE BOARD OF EDUCATION OF EAST AURORA SCHOOL DISTRICT 131'S MOTION TO SUBMIT CLAIMS OF <u>INDEPENDENT PUBLIC SCHOOL DISTRICTS TO MEDIATION</u>**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

AMERICAS 102609954

The Ad Hoc Group of Individual Victims (the "Ad Hoc Group") of Purdue Pharma L.P., *et al*. (collectively, the "Debtors" or "Purdue"), by and through its undersigned counsel, submits this objection (the "Objection") to the motions of the Board of Education of Thornton Township High School District 205, the Board of Education of Thornton Fractional Township High School District 215, and the Board of Education of East Aurora School District 131 (collectively, the "School Districts") to submit their claims to mediation (the "Motion").[2] In support of this Objection, the Ad Hoc Group respectfully states as follows.

## OBJECTION

1.  As the Court is well aware, these cases have attracted opioid-based claims of all shapes and sizes. Many claims are largely secondary in nature and are based on the opioid crisis writ large (to which the Debtors' products were but one of many contributors). For example, the School Districts assert claims for the cost of educating the children of individuals suffering from addiction.[3]

2.  The Ad Hoc Group speaks, in contrast, for over 27,000 people who have suffered direct exposure to opioids made and/or sold by the Debtors.[4] Specifically, the claims held by the 27,000 victims are for their direct, compensable losses suffered from their, or their family member's, demonstrated, prepetition exposure to OxyContin and other of the Debtors' addictive opioid products. Some members have lost their jobs. Some have lost their loved ones. Some have lost their ability to function as productive members of society. Some have lost their lives. In each case, the Debtors' opioid products are the root cause of their losses. In the aggregate, the individual

---

[2] *Creditors the Board of Education of Thornton Township High School District 205, the Board of Education of Thornton Fractional Township High School District 215, and the Board of Education of East Aurora School District 131's Motion to Submit Claims of Independent Public School Districts to Mediation*, Apr. 13, 2020 [ECF No. 1038].
[3] *Id*. at ¶¶ 9-11.
[4] Counsel for the Ad Hoc Group represents each of these 27,000 individuals.

2

victims' losses are conservatively estimated to be in the tens of billions of dollars, without taking into account the direct personal injury and wrongful death claims of other victims who may come forward in the coming months.  Using the Group's current personal injury claim numbers and existing exit assumptions, if every single dollar of distributable value in these chapter 11 cases were used to satisfy the claims of members of the Ad Hoc Group and the 27,000 individuals they speak for, each would already be receiving only a fraction of his or her allowed claim.

3. The magnitude of the direct personal injury claims in these cases, and the limited fund conundrum caused by the limited value of the Debtors' assets and the fixed proposed settlement with the Sacklers, should indicate that a primary task in these cases should be to allocate as much value as possible to the personal injury and wrongful death claimants as quickly as possible.  To date, much of the debate in these cases has instead been focused on addressing the needs and concerns of parties whose prepetition claims are derivative of the harms suffered by members of the Ad Hoc Group – the various States and municipalities which have been forced to wrest with the consequences of addictions of their citizens, the hospitals, and the health insurers, which have been required to absorb the monumental costs of treating opioid-addicted patients, and, here, the School Districts who themselves now allege collateral damage from the effects of the opioid crisis on their students.  Indeed, to date, the debate has seemingly been framed as one not between the Sacklers and their victims, but between the "Non-Federal Public Claimants" and the "Private Claimants."  Respectfully, that is a false dichotomy.

4. The Ad Hoc Group does not seek to denigrate any of the Debtors' many downstream victims, to downplay the losses that they have incurred, or to preclude them from seeking to obtain a fair recovery on their claims if allowed consistent with the Bankruptcy Code.  The Ad Hoc Group certainly does not wish to engage in the type of internecine fighting between

3

creditors that will only work to advantage the Sacklers. Rather, the existence of so many diverse categories of competing creditors with losses in the tens if not hundreds of billions of dollars stands as a testament to the depth of the devastation that the Sacklers and others like them have vested on American society.

5.  That said, given the existence of a limited recovery fund, the Ad Hoc Group views the present debate as more properly framed between the people directly harmed by the Debtors' and the Sacklers' prepetition torts (i.e., personal injury claimants such as members of the Ad Hoc Group) and those whose claims would not exist *but for* the injuries suffered by the direct claimants (i.e., downstream claimants such as the States, municipalities, hospitals, health insurers, rate payers, and school districts). The Ad Hoc Group believes that, with a limited fund of distributable value, the primary focus of these cases should remain on *people*, and on ensuring the distribution of as much compensation as possible for victims with direct personal injuries or claims for wrongful deaths caused by the Debtors' conduct. As these cases proceed to the plan phase, the Ad Hoc Group is likely to ask this Court to strictly scrutinize certain derivative, attenuated, or downstream tort and penalty claims that, if allowed and not subordinated, would impermissibly dilute and reduce the recovery of the direct tort claimants. For now, the Ad Hoc Group simply asserts this two-part limited objection to the Motion presently before the Court.

6.  *First,* in complex chapter 11 mediations, the number of participating parties and the amount of consensus can often be inversely proportionate. Here, there is a material risk that adding additional downstream claimants to ongoing negotiations over an already limited pool of funds will make it significantly harder to reach consensus. That is perhaps why the Debtors filed the Motion for Entry of an Order Appointing Mediators on February 20, 2020 specifying upfront a

4

diverse chorus of constituents who would presumptively be attending.[5] The Notice of Hearing filed with the Mediation Motion directed that any objections be filed by February 28, 2020, and put objecting parties on notice that failing to appear at the hearing could result in relief being granted upon default. *Id*. The School Districts did not come forward to object to the composition of the proposed mediation parties. The Court's Order Appointing Mediators was thereafter entered on March 4, 2020.[6] As recently noted by the Unsecured Creditors' Committee, the Mediation is well underway, with "nearly every significant constituency in these cases . . . expending significant time and energy . . ." to reach a consensual resolution.[7] To date, the mediation parties have already submitted mediation statements, have met preliminarily with the mediators, and are proceeding with next steps. The movants offer no explanation as to why they did not seek timely intervention in the process, particularly given the notoriety of the mediation order in the press,[8] or why their interests are not already adequately represented by the States in which they are located. Illinois is a party to the mediation; there is no good reason to add its school districts as well. Simply, as is the case with litigation, the Court can properly deny a seat in the mediation to any late-coming, derivative claimant, such as the Movants, unless those interests are not already adequately

---

[5] *Notice of Hearing on Debtors' Motion for Entry of an Order Appointing Mediators*, Feb. 20, 2020 [ECF No. 855] (the "Mediation Motion").
[6] *Order Appointing Mediators*, Mar. 4, 2020 [ECF No. 895].
[7] *Objection of the Official Committee of Unsecured Creditors to the Motion for Relief from the Automatic Stay Filed By Defendants in the New York Opioid Litigation and Joinder in the Debtors' Objection Thereto*, Apr. 15, 2020 [ECF No. 1050 at ¶¶ 5, 12].
[8] *See, e.g.*, Jeremy Hill, *Bankrupt Purdue Pharma Seeks Mediation for Opioid Payout Talks, Bloomberg Law* (Feb. 21, 2020), https://www.bloomberglaw.com/document/X1ML7TQK000000?bna_news_filter=bankruptcy-law&jcsearch=BNA%25200000017067dadd9aa7fd67df29b80000#jcite; *Purdue Pharma Debtors Request Appointment of Two Mediators to Oversee Discussions on Key Value Allocation Issues; UCC, Ad Hoc Groups in the Cases Would Participate as Mediation Parties*, Reorg Research (Feb. 20, 2020), https://app.reorg.com/v3#/items/intel/7506?item_id=96319; Rick Archer, *Mediators To Form Plan For Purdue Ch. 11 Claims Distribution*, Law360 (Mar. 2, 2020), https://www.law360.com/articles/1249080/mediators-to-form-plan-for-purdue-ch-11-claims-distribution; *Purdue Pharma Debtors, Various Parties to Promptly Commence Mediation on Value Allocation Issues After Judge Drain Appoints 2 Mediators to Oversee Discussions*, Reorg Research (Mar. 2, 2020), https://app.reorg.com/v3#/items/intel/7506?item_id=97204; Becky Yerak, *Bankruptcy Judge Urges Purdue Mediators to Monitor Costs*, Wall Street Journal (Mar. 2, 2020), https://www.wsj.com/articles/bankruptcy-judge-urges-purdue-mediators-to-monitor-costs-11583181798.

AMERICAS 102609954

represented. *Cf. EEOC v. N.Y. Times Co.*, No. 92-cv-6548, 2000 U.S. Dist. LEXIS 12670, at *13-14 (S.D.N.Y. Aug. 31, 2000) (a motion to intervene may only be granted if the movant "has an interest that is not adequately represented by the other parties") (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)); *see also Cook v. Pan Am. World Airways, Inc.*, 636 F. Supp. 693, 697 (S.D.N.Y. 1986) ("When the interest of the absentee is identical to that of an existing party, or if there is a party charged by law with representing the absentee's interest, representation will be presumed adequate unless special circumstances are shown.") (citations omitted)).

7. *Second*, to the extent that the Court finds that the Motion is timely and further that it is appropriate to add more voices to the mediation, the Ad Hoc Group objects to having any single entity attend the mediation on behalf of an uncertified class of claimants. The School Districts initially sought to join the motion by the Board of Chicago School District No. 299 ("CPS") to submit its claim to mediation.[9] In that motion, CPS sought to represent itself and a nationwide class of independent public schools in the mediation, notwithstanding that such class has never been certified, as discussed below. In their motion to join, the School Districts purported to be "members and representatives of the Class." (Joinder ¶ 4). Although CPS subsequently withdrew its motion,[10] it appears that the School Districts still maintain that they are part of a "class." Specifically, the School Districts attach to their Motion their respective proofs of claim, which state that "Chicago Public Schools, on behalf of itself and a nationwide [class]" also filed a proof of claim for the School District's claim. While CPS has filed a Class Action Complaint in

---

[9] *Motion by Creditors Illinois School Districts 205, 215, and 131 to Join and Support the Motion to Submit Independent Public School Claims to Mediation*, Apr. 9, 2020 [ECF No. 1025]; *Creditor Board of Chicago School District No. 299's Motion to Submit Claim to Mediation*, Mar. 30, 2020 [ECF No. 998].

[10] *Notice by Creditor Board of Chicago School District No. 299 of Withdrawal of Motion to Submit Claim to Mediation*, Apr. 13, 2020 [ECF No. 1036].

6

the United States District Court for the Northern District of Illinois on November 20, 2019, the issue of class certification has not even been briefed, let alone ruled on to date. The School Districts admit that the class has not been certified in their Motion, repeatedly making references to the "prospective Class" and the "proposed Class." (Mot. ¶¶ 9-14). Notwithstanding the lack of class certification, the School Districts seem to be seeking this Court's imprimatur to represent the class in the mediation. *See id.* ¶ 14 ("inclusion of Independent Public School Districts and the proposed Class in the mediation of claims involving the Debtors is essential"); ¶ 18 ("If the Independent Public School Districts are excluded from the mediation process, the Class members could be denied their opportunity to secure their fair pro-rata share of available assets . . . ."). However, absent this Court's certification of a class, the School Districts only assert a claim in their "individual capacity," not "on behalf of any absent claimants." *See In re Motors Liquidation Co.*, 591 B.R. 501, 524 (Bankr. S.D.N.Y. 2018) ("if the court declines to apply Rule 23 to the proof of claim, the putative agent never obtains the requisite authority. Until certification, the claim is in limbo. A proof of claim filed by a party who is not a creditor is not a properly filed proof of claim." (quoting *In re Musicland Holding Corp.*, 362 B.R. 644, 652 (Bankr. S.D.N.Y. 2007)). Thus, before any of the School Districts seek to participate in the mediation on behalf of any proposed class, the Ad Hoc Group respectfully submits that each should be required to move and obtain class certification from this Court in advance.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Ad Hoc Group of Individual Victims respectfully requests that the Court deny the Motion and grant such other and further relief as is just and proper.

AMERICAS 102609954

|  |  |
|---|---|
| Dated: April 17, 2020<br>New York, New York | WHITE & CASE LLP<br><br>By:  /s/ J. Christopher Shore<br><br>Thomas E Lauria (*pro hac vice* pending)<br>Southeast Financial Center, Suite 4900<br>200 South Biscayne Boulevard<br>Miami, Florida 33131<br>Tel:  (305) 371-2700<br>Fax: (305) 358-5744<br>tlauria@whitecase.com<br><br>J. Christopher Shore<br>Michele J. Meises<br>Alice Tsier<br>Ashley R. Chase<br><br>1221 Avenue of the Americas<br>New York, New York 10020<br>Tel:  (212) 819-8200<br>Fax:  (305) 358-5744<br>cshore@whitecase.com<br>michele.meises@whitecase.com<br>alice.tsier@whitecase.com<br>ashley.chase@whitecase.com<br><br>*Co-Counsel for Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al.* |

AMERICAS 102609954