**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al.*, | ) Case No. 19-23649 (RDD) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |

**DEFENDANTS' OMNIBUS REPLY IN SUPPORT OF**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Defendants file this omnibus reply to the objections filed by (i) the Debtors [Dkt. No. 1048], (ii) the Official Committee of Unsecured Creditors [Dkt. No. 1050], (iii) the New York Plaintiffs [Dkt. No. 979], (iv) the Non-Consenting States [Dkt. No. 1049], and (v) the Ad Hoc Committee [Dkt. No. 1054]. None of the objections cites a single case in which a bankruptcy court—or any other court for that matter—has applied the automatic stay to prevent a debtor from being added to a verdict form *as a third party* for purposes of apportionment, particularly in a case like this. Instead, the objections are based on three general arguments that are wrong as a matter of fact and law.

*First*, the objecting parties argue that it would be improper for a jury to apportion fault to the very entities the Plaintiffs allege are the "taproot" of the claimed public nuisance. (*E.g.*, Opp.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

of NY Pls. at 7 n.7, Dkt. 979). Whether liability is joint and several and whether apportionment applies in the underlying litigation are issues not before this Court, and indeed have been reserved until trial by the New York trial court. (Ex. 1, 4/16/2020 Order on Mot. for Summ. J.). This Court has been asked instead to determine that the automatic stay will not prevent apportionment. This Court need not—indeed, should not—resolve whether apportionment is proper under New York law.

Nor is there any risk of "gratuitous" injury if this Court rules on the Motion prior to the trial court resolving these issues, as Debtors claim. (Debtors' Objection at 2, Dkt. No. 1048). Given that the trial court has now ruled that the issues of joint and several liability and apportionment will not be decided until trial, delaying a ruling on the Motion will undoubtedly injure Defendants by preventing them from even having the option to apportion fault. And even if joint and several liability were to apply, Debtors still must be included on the verdict form for purposes of apportionment. The prevailing rule in New York for nearly half a century is that even in cases involving joint and several liability, "New York law . . . favors inclusion of bankrupt defendants on the verdict sheet." *In re New York City Asbestos Litig.*, 151 Misc.2d 1, 6, 572 N.Y.S.2d 1006, 1009 (Sup. Ct. New York Cty. 1991) (citing *Gannon Pers. Agency, Inc. v. City of New York*, 57 A.D.2d 538, 539-540, 394 N.Y.S.2d 5, 7-8 (1st Dep't 1977)).

***Second***, the objecting parties claim that Defendants' requested relief constitutes a "continuation" of a judicial proceeding "against Debtors." That construction of the word "against" is not consistent with the word's plain meaning. And, not surprisingly, there is no case authority for that proposition. Defendants, on the other hand, have provided this Court with authority that (i) New York law "favors" including debtors on verdict forms and (ii) since at least 1977, New York courts have included bankrupt debtors on verdict forms in the interest of equity and fairness.

Neither Debtors nor any other objecting party has identified even a single case where a bankruptcy court, a federal court, or a state court has ruled that including a debtor on a verdict form as a third party for purposes of apportionment violates the automatic stay.

The Court should reject Debtors and the Creditors' Committee argument that granting Defendants' requested relief violates the stay or the Preliminary Injunction because it risks upsetting ongoing settlement discussions. Neither explains how such a risk converts a proceeding where Debtors are a third party and face no prospect of liability into the continuation of a proceeding "against Debtors." No authority supports such strained position. At bottom, they ask this Court to create new law allowing debtors to apply the stay to virtually any proceeding that might "impact" the restructuring, (Debtors' Objection at 3), or perhaps even disclose "new facts" about Debtors, (Creditors' Committee Objection at ¶ 13, Dkt. No. 1050), notwithstanding the due process rights of the remaining defendants in the underlying litigation. Section 362(a)(1) of the Bankruptcy Code does not extend that far. Debtors here have been severed because the trial court recognized that the action ***cannot*** continue against them as parties. They will not be bound by any decision in that court, and an order lifting the automatic stay for this limited purpose could clearly provide that any verdict in the trial is not binding on Debtors.

***Third***, the objecting parties claim on the one hand that the *Sonnax* factors do not apply because Defendants do not actually seek to make Debtors a party to the trial or on the other hand that they are not satisfied. But those arguments only highlight why the stay should not and does not apply to the limited relief Defendants seek. And even if it were to apply, the *Sonnax* balancing test favors relief because of the limited (if any) incremental imposition on Debtors and the threat of substantial prejudice to Defendants' due process rights. Regardless whether Debtors are formally apportioned fault, there is no escaping that Debtors' conduct will be a focus of the trial

3

as alternate causes and Debtors likely will conclude they must monitor the trial. Further, the trial inevitably will impact settlement negotiations regardless of whether Debtors are on the verdict form as third parties or not. This Court should thus grant Defendants' Motion.

## Argument

**I.  Whether Joint and Several Liability or Apportionment Apply Will Be Decided at Trial.**

1. Debtors and the Plaintiffs argue that Debtors need not be included on the verdict form for purposes of apportionment because "Defendants in an equitable public nuisance action face joint and several liability." (Opp. of NY Pls. at 3–4; *see also* Debtors' Objection at 2 ("The predicate question of whether joint and several liability applies is currently pending")). As a threshold matter, Defendants disagree that they are subject to joint and several liability. More importantly, on April 16, 2020, the Court denied Plaintiffs' motion for summary judgment and reserved this issue for trial. (Ex. 1, 4/16/2020 Order on Mot. for Summ. J., Dkt. No. 5656). Thus, the resolution of this issue, which will not happen until trial, does not moot the relief Defendants seek here.

2. Moreover, even if joint and several liability were to apply, Debtors still would have to be included on the verdict form for purposes of apportionment. *See, e.g.*, *In re N.Y.C. Asbestos Litig.*, 151 Misc.2d at 8 (including bankrupt debtors on verdict form in cases where there was "no question . . . concerning joint and several liability"). In such a scenario, apportionment would be essential to calculate Defendants' contribution rights against one another, with any share attributed to the Debtors "distributed among . . . other defendants found liable . . . in proportion to their respective shares of liability." *Id*. at 6.

3. In any event, this Court need not, and should not, make any such determination in order to resolve the Motion regarding the scope of the automatic stay. The trial court is currently

best situated to make that determination, and has committed to doing so in connection with the trial. *See*, *e.g.*, *In re Wolf*, 575 B.R. 794, 796 (Bankr. W.D. Mich. 2017) (deferring ruling on issue to trial court to "avoid disrupting [the trial court's] management of this complicated, tentacled case . . . [which] mitigates the risk of inconsistent rulings."); (citation and quotation marks omitted); *Princeton Dig. Image Corp. v. Facebook, Inc.*, 2012 WL 3647182, at *5 (E.D. Tex. Aug. 23, 2012) (it simply "does not make any sense for two courts to plow the same ground.") (citation and quotation marks omitted). And denial of Defendants' motion would risk substantially prejudicing Defendants by eliminating their option to include Debtors—the entities Plaintiffs themselves allege created the opioid crisis—on the verdict form in the event the trial court correctly rules that apportionment is permitted in the upcoming trial.

## II. The Automatic Stay Does Not Prohibit the Moving Defendants from Including Debtors on the Verdict Form as Third Parties.

4. The objecting parties next argue that the automatic stay applies because the trial will continue a proceeding "against Debtors" even if they are included on the verdict form only as third parties. (Opp. of NY Pls. at ¶ 8; Debtors' Objection at 7). They do not cite *any* authority for this proposition. Nor is their position supported by the plain meaning of the statute.[2] "Against" means the same thing as "versus." Black's Law Dictionary (11th ed. 2019). The New York trial will not involve any action "versus" Debtors because they have been severed and will remain non-parties even if the Court grants this Motion. Similarly, the trial will not involve any action against or versus the estate's property or assets and will not result in a binding finding against or versus Debtors. The objecting parties' failure to address this threshold issue reveals what they really

---

[2] "The first step in statutory interpretation is to 'look to the statute's plain meaning; if the language is unambiguous, we will not look farther." *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 295 (S.D.N.Y. 2009) (citations omitted).

seek: a "cloak of invisibility" for Debtors that would prevent the jury from apportioning fault to the entities Plaintiffs themselves declared just last month are most significantly responsible for their alleged public nuisance. (Ex. 2, 3/10/2020 Hearing Tr. 17:10-13 ("That's from a Defendant who is probably significantly responsible. In the order of Defendants it's probably Purdue and then [a different defendant].")). The automatic stay does not extend so far.[3]

5.  Moreover, the objecting parties' broad view of the automatic stay is inconsistent with "New York law as set forth in *Gannon Personnel Agency v City of New York* (57 AD2d 538)[, which] ***favors inclusion of bankrupt defendants on the verdict sheet***." *In re N.Y.C. Asbestos Litig.*, 151 Misc.2d at 6 (emphasis added). Defendants have cited multiple cases that stand for the proposition that "[n]otwithstanding the automatic stay resulting from bankruptcy, the tortfeasor is not exempt from consideration of damages under CPLR article 16." *In re N.Y.C. Asbestos Litig.*, 6 A.D.3d 352, 775 N.Y.S.2d 520 (1st Dep't 2004); *see also Kharmah v Metro. Chiropractic Ctr.*, 288 A.D.2d 94, 94, 733 N.Y.S.2d 165 (1st Dep't 2001); Motion at 2–3, n.3 (citing other cases) Dkt. No. 909.[4]

6.  Despite this authority and the additional cases discussed below, the objecting parties simply declare that including Debtors as third parties on the verdict form would constitute a "continuation of judicial proceedings against them." Yet the objecting parties do not cite a single bankruptcy court decision holding that allocating fault to a debtor as a third party is subject to the automatic stay, despite nearly half a century of authority in New York allowing bankrupt debtors

---

[3] While the *Sonnax* factors consider the impact on reorganization, no case suggests that any action that impacts on reorganization is stayed.

[4] Debtors dismiss as "dicta" the statement in *Cabrera v. A-To-Z Signs*, 51 Misc.3d 963, 967, 28 N.Y.S.3d 567, 571 (N.Y. Sup. Ct. Westchester Cty. 2016), that "when a nonparty tortfeasor has declared bankruptcy and, therefore, cannot be joined in a tort action, the nonparty tortfeasor's liability is considered and apportioned." (Debtors' Objection at 17 n.12). Yet they have cited no authority that contradicts this statement or any of the other cases Defendants cited allowing bankrupt debtors to be included on verdict forms despite the existence of the automatic stay.

to be included on verdict forms. Put simply, no reported case even considers that including a non-party debtor on a verdict form could violate the stay.

7. Each of the objecting parties, other than Debtors, ignores the cases Defendants cited that expressly allowed Chapter 11 debtors to be included on a verdict form even "though there is an automatic stay by virtue of the bankruptcy." *Kharmah*, 288 A.D.2d at 94. As for Debtors, they ignore that Defendants seek far narrower relief here than in *Kharmah*, where the interested party sought to make the debtors ***parties*** that would be bound by the results at trial. In any event, the Debtors' attempt to distinguish *Kharmah* fails. They speculate that because the bankruptcy there was a chapter 7, the automatic stay apparently had less relevance. (Debtors' Objection at 17). Not so. The court in *Kharmah* did not rely on the form of the bankruptcy in ruling that "equity require[d]" the bankrupt defendants to be included on the verdict form for purposes of apportionment despite the automatic stay. 288 A.D.2d 94, 733 N.Y.S.2d at 166.

8. The objecting parties' attempts to distinguish Defendants' other cases similarly miss the mark. Those cases confirm that where, as here, Defendants do not seek a ***binding*** liability finding against Debtors, the requested relief does not violate the automatic stay. For example, in *Variable–Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, the court expressly held that the issuance of a report and recommendation that addressed a debtor's conduct—but which was not enforceable against the debtor—did not violate the automatic stay. 945 F. Supp. 603, 606 (S.D.N.Y. 1996). Debtors note that the *Variable-Parameter* court acknowledged the report and recommendation did not interfere with the goals of providing "the debtor a breathing spell from his creditors and permit the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *Id.* (citation omitted); (cited in Debtors' Objection at 13). But that is neither here nor there because just as the recommendation

7

in *Variable-Parameter* was not enforceable against the debtor, no finding in the state-court trial here would bind Debtors either. Including Debtors as third parties on the verdict form will not impose additional financial pressures on Debtors or interfere with their relief from creditors in the bankruptcy, either.

9. Likewise, *In re Adler* held that a state court's findings of fraud by a Chapter 11 debtor severed from the action, like Debtors here, "did not violate the automatic stay" because the findings did not bind the debtor. 395 B.R. 827, 839-40 (Bankr. E.D.N.Y. 2008). The court further recognized that "[t]he entire purpose behind the automatic stay is to prevent courts from ***imposing liability*** on debtors who are attempting to reorganize in bankruptcy." *Id*. at 840 (emphasis added).

10. For the same reasons the purpose of the automatic stay was not threatened in *Adler*, it is not endangered here. Defendants neither seek to impose liability on Debtors, nor seek an apportionment finding that would be binding on Debtors. As a result, Defendants' request does not violate the automatic stay.

11. Instead of identifying even a single case to support their argument that including Debtors as third parties on the verdict form is a "continuation of a proceeding against Debtors," Debtors and the Creditors Committee focus almost exclusively on how the requested relief might interfere with their settlement discussions.[5] (Debtors' Objection at 9–12; Creditors Committee Objection at ¶ 2). Even assuming that speculation were true, the fact that an action *might* affect Debtors in some fashion does not convert an action to which Debtors are *not* a party into a proceeding "against Debtors." The objecting parties ask the Court to expand the stay to reach any

---

[5] The "settlement process" the objecting parties seek to protect includes all of the objecting parties and excludes the Defendants notwithstanding that the objecting parties acknowledge the Defendants may have contribution and indemnity claims against the Debtors (*see e.g.*, Creditors Committee's Objection at p. 7, fn 11; Ad Hoc Committee Objection at ¶¶ 3-6).

(i) "judicial finding" that "cause[s] harm to a debtor's reorganization," (Debtors' Objection at 13), or (ii) even proceedings in which "new facts will emerge" about Debtors, (Creditors' Committee Objection at ¶ 13). There is neither statutory nor case authority for the proposition that the stay bars one from introducing evidence about a debtor in a proceeding to which the debtor is not a party.

12.     Moreover, this argument falls apart under minimal scrutiny. Regardless of whether Debtors are included on the verdict form, the results of the New York trial will have implications for ongoing settlement discussions. The Creditors' Committee admits as much. (Creditors' Committee Objection at ¶13 ("Irrespective of whether the Debtors are included on the Verdict Form, the Official Committee is of the view that facts developing during the Trial and any eventual judgment will influence negotiations in the Mediation . . .")). Indeed, this trial will give two major classes of creditors, attorneys general and county plaintiffs, an indication of how a jury will view their claims against defendants who are alleged to have engaged in conduct similar to Debtors. This impact on settlement discussions will be true regardless whether Debtors are allocated fault as a third party.

13.     Similarly, Debtors argue that being included on the verdict form will present an "intractable dilemma," to either participate in the trial in violation of the stay or sit on the sidelines. (Debtors Objection at 11). But no such dilemma exists because Defendants do not seek to include Debtors as a party. Participation as a party is simply not an option as a result of Debtors' bankruptcy filing and the imposition of the automatic stay. There is no unfairness in this, as this is the path Debtors chose when they filed for bankruptcy, sought and took cover under the automatic stay, and agreed to be severed from the New York litigation. (Ex. 3, Stipulation and Order Severing Purdue Defendants, NYCEF No. 1676).

14. This Court has long recognized that the "automatic stay is a shield, not a sword." *In re Briarpatch Film Corp.*, 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002). The automatic stay's purpose is to protect debtors, but within limits. Its application is not intended to harm others when there is no risk of material harm to the debtors, and even then the harm must arise from acts prohibited by the words of the statute. Here, ***the Plaintiffs*** seek to use the bankruptcy stay as a sword to prevent Defendants from reducing their fault based on the fault a jury allocates to the entity Plaintiffs blame most for the alleged nuisance. Indeed, it is telling that the Plaintiffs rushed to this Court to file their objection first. Debtors protest that "Purdue does not seek to prevent Co Defendants from presenting their defenses at trial." (Debtors' Objection at 3). But that is exactly what the objecting parties including the Debtor would do, and the Plaintiffs attempts are clearly intentional. The objecting parties ask the Court to pin the movants arms to their sides with the stay, denying them the right to fully present mitigation and allocation. This is not equitable. It is not consistent with the cases cited above. The movants do not seek to impose liability on the Debtors, but they should be permitted to fully defend themselves.[6]

---

[6] In a similar situation, this Court recognizes that a debtor in possession may not pursue litigation while hiding behind the stay as to compulsory counterclaims. *See*, *e.g.*, *In re Overmyer*, 32 B.R. 597, 601 (Bankr. S.D.N.Y. 1983) ("Where a debtor seeks affirmative relief as a plaintiff in a lawsuit and then invokes the protection of the automatic stay on a counterclaim, the situation warrants very careful scrutiny. In such instance, a court must be cautious to avoid a decision which would convert Code § 362 from a shield into a weapon. A debtor should not be permitted to reap the benefits of litigation in one court, but circumvent the burdens in another forum." (citation omitted)); *In re Wedtech Corp.*, 87 B.R. 279, 290 (Bankr. S.D.N.Y. 1988) (granting stay relief to allow counterclaimant to proceed with state court litigation commenced against it by the debtor pre-petition); *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) (same). To be clear, the New York litigation is not brought by the Debtor, and movants do not seek to assert counterclaims against the Debtor. But, the unfairness is precisely the same. Plaintiffs seek—and the Debtor supports—a reading of the stay that would permit them to fully proceed against the movants while hiding behind the stay to prevent complete defense. This is not fair.

**III.   The Preliminary Injunction Does Not Prohibit the Moving Defendants from Including Debtors on the Verdict Form as Third Parties.**

15.    Some of the objecting parties, and in particular the Creditors' Committee, take issue with Defendants' requested relief on the basis that Defendants have not expressly sought a modification of this Court's Preliminary Injunction.[7] As an initial matter, the Preliminary Injunction prohibits only those actions that would be barred by the automatic stay, so all of Defendants' arguments relating to the automatic stay apply equally to the Preliminary Injunction. In particular, the Preliminary Injunction only prohibits the "commencement or continuation of . . . . actions or proceedings against the Debtors that were or could have been commenced before the commencement of the case against the Debtors arising from or in any way relating to the Debtors' prescription opioid business . . . ." *See* Preliminary Injunction Order at 6, Dkt. No. 131. This operative provision in the Preliminary Injunction Order is a nearly verbatim recitation of the language in section 362(a)(1) of the Bankruptcy Code relating to the automatic stay. Given these facts, Defendants' arguments relating to the automatic stay apply equally to the Preliminary Injunction even assuming it applies (which it does not).

16.    In any event, Defendants are not bound by the Preliminary Injunction, which enjoins the rights of only certain specified parties, such as governmental and private plaintiffs seeking to pursue claims against Debtors. Defendants are not pursuing claims against Debtors and are not covered by the scope of the Preliminary Injunction, so there is no requirement to seek relief therefrom. Debtors even tacitly acknowledge this, framing the issue in terms of the effect of

---

[7]   *See* Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction [Dkt. No. 82] (as amended, the "Preliminary Injunction Order," and such injunction provided for therein, the "Preliminary Injunction").

Defendants' requested relief on other third parties (e.g., the New York Plaintiffs). (Debtors' Objection at 11, 17–18). But that is beyond the scope of the Preliminary Injunction.[8]

### IV. Good Cause Exists to Lift the Stay for the Limited Purpose Requested by Defendants.

17. If the stay applied—which it does not—"cause" demands that it be lifted. The objecting parties disagree with each other on the application of the *Sonnax* factors to the relief sought here. The New York Plaintiffs argue that the *Sonnax* factors do not apply because "the *Sonnax* factors guide whether litigation should be permitted to continue **against a debtor as a defendant** – not whether debtors may be added to the verdict form as third parties." (Opp. of NY Pls. at ¶ 13 (emphasis added)). But as noted above, this is precisely Defendants' point, and it directly contradicts the objecting parties' argument that Defendants are seeking to continue proceedings against Debtors. Thus the Plaintiffs' argument that the *Sonnax* factors have no "relevance to the relief requested by Defendants" only highlights that the automatic stay simply does not apply to the narrow relief Defendants seek here.

18. But, as the parties have found no cases directly addressing what constitutes 'cause' for relief where the debtor is not a party, Defendants assume the *Sonnax* factors are helpful. And the other objectors have assumed their application here too. As discussed below, those factors compel that Defendants be permitted to include Debtors on the verdict form as third parties if the trial court allows.

---

[8] The Preliminary Injunction Order also expressly allows the Court to determine whether an action should be enjoined by the Preliminary Injunction. *See* Preliminary Injunction Order at 7-8 ("If the Applicable Plaintiff files and serves an objection, the Debtors shall have the right to file and serve a response to the objection within seven (7) days of service of the objection, after which the Court may determine whether such Additional Action should be enjoined pursuant to this Order without further proceedings, or either party may seek to schedule and provide notice of a hearing.") (Dkt. No. 132). In light of this provision, the Court has the power to consider and grant the relief requested by Defendants without any need to formally amend or modify the Preliminary Injunction Order.

19. Oddly, both Plaintiffs and Debtors try to distinguish *In re Paone*, 401 B.R. 151 (Bankr. M.D. Pa. 2009), and *In re Dorner*, 125 B.R. 198 (Bankr. N.D. Ohio 1991), on the ground that the courts in those cases lifted the stay to allow debtors to be added as parties to ongoing litigations, while Defendants here seek far narrower relief. (Opp. of NY Pls. ¶¶ 20, 21; Debtors' Objection at 16 n.11). Defendants do not ask the Court to lift the stay so Debtors may be added as parties, but rather that Debtors merely be included as third parties on a verdict form in a proceeding that will have no binding effect on them. That result is supported by the relevant equities discussed in *Paone* and *Dorner*. Far from distinguishing those cases, the objecting parties have only highlighted why the narrow relief Defendants seek does not violate the stay (or, at most, requires a narrow lifting of the stay).[9]

20. Debtors also try to distinguish *Dorner* because, for the debtor in that case, the costs of participating in the litigation were insufficient to justify maintaining the automatic stay, while, according to Debtors, their costs and hardship would be greater and require the stay be maintained. (Debtors' Objection at 16). Yet Debtors ignore that the *Dorner* court expressly acknowledged that the debtor's "costs could be significant," but did not "outweigh the movant's right to apportionment and setoff." *In re Dorner*, 125 B.R. at 202. Moreover, unlike in *Dorner*, Debtors here will not have to sit for depositions or defend themselves at trial as they will remain non-parties not subject to liability. Indeed, Debtors have not identified any incremental expenses they will incur if the Court grants Defendants' relief. *In re Dorner* thus clearly supports the relief Defendants seek here.

---

[9] Debtors also claim that *Paone* is not a correct application of law because the accrual test articulated in *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), has since been overruled. (Debtors' Objection at 16 n. 11). But Debtors offer no explanation for why the updated Third Circuit accrual test would compel a different result in *Paone*, which has not been overruled.

21.     In addition, the relevant *Sonnax* factors support lifting the stay here to the extent necessary. The *Sonnax* factors are not a checklist to be added up, but a useful non-exclusive list of factors to consider; in *Sonnax* itself the Second Circuit relied on only a handful. Here, a handful are likewise dispositive.

22.     "**Ready for trial**." Justice Garguilo has indicated he intends to move forward with the trial expeditiously when the current public health constraints are removed. This readiness is a key factor favoring relief, as *Sonnax* suggests the automatic stay should not unnecessarily bar trial in sister courts. Plaintiffs argue that the "ready for trial" prong favors imposing the stay because Debtors themselves are not on the eve of trial. (Opp. of NY Pls. at ¶ 18). Once again, Plaintiffs' focus on the fact that Debtors will not be parties to the trial only highlights why the stay does not apply here. In any event, *Sonnax* expressly refers to whether "the parties" are ready for trial and does not narrowly focus on a debtor's readiness. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). The point here is that lifting the stay is appropriate precisely because Defendants are on the eve of trial (subject to COVID-19 related limitations) and will be prejudiced without relief from the stay. The Creditors' Committee's claim that "there is no imminently scheduled trial," (Creditors' Committee Objection at ¶19), simply ignores the trial court's statements that trial will commence as soon as it possibly can in light of COVID-19. (*E.g.*, Ex. 2, 3/10/2020 Tr. 27:3-8 ("As soon as there's a lifting, a significant move, either by the Governor's office or OCA, in a New York City instant this Court is going to schedule a trial. This Court has been anxious to move this case to trial.")). Put simply, this is not a case where the parties have not yet filed summary judgment motions or even begun discovery; trial will begin as soon as it will be safe for all involved.[10]

---

[10] *See In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) (finding that the court wasn't ready for trial when "the parties have not even started conducting the extensive discovery

14

23. "**Balance of the harms**." The objecting parties next press that Defendants will not be harmed by the imposition of the stay because Defendants are subject to joint and several liability. (Opp. of NY Pls. at ¶ 19). As explained above, the trial court denied Plaintiffs' summary judgment motion on that issue, which is being reserved for trial. Remarkably, Debtors even argue that Defendants' requested relief will not benefit Defendants because they will be required to seek contribution from Debtors in the bankruptcy even if Debtors are allocated fault. (Debtors' Objection at 22). Thus, they claim that apportionment provides nothing more than a "round-trip ticket" back to this Court for a contribution action. (*Id.* at 20). That is simply not true if joint and several liability does not apply for any reason, including if trial determines that the alleged injury is divisible.[11] In that case, Defendants need not seek contribution because they will not be liable for the fault apportioned to Debtors. Further, as in *In re N.Y.C. Asbestos Litig.*, apportionment is appropriate even in the event of joint and several liability because it clarifies the Defendants' contribution rights by fixing the share attributable to Purdue and reallocating that share proportionally to the Defendants. 151 Misc.2d at 7. And, in any event, this argument, simply recycles Plaintiffs' primary argument about joint and several liability, which is not for this Court to wade into for the reasons discussed above.

---

necessary to make a determination on the class certification issue"); *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 167 (Bankr. D. Conn. 2002) (considering the fact that no motion for summary judgment had been filed; which is in contrast to the case here where the court has proceeded beyond that point); *In re R.J. Groover Const., L.L.C.*, 411 B.R. 473, 477-78 (Bankr. S.D. Georgia 2008) (finding that the "ready for trial" factor weighed in favor of maintaining the automatic stay because no discovery or any pre-trial activities have begun since no complain has been filed).

[11]    For the same reason, the Ad Hoc Committee's argument that Defendants "seek a leg up on other creditors by securing for themselves a 100% recovery" wrongly assumes that Defendants are liable for harms caused by Debtors in the first place and thus will be required to seek contribution. (Ad Hoc Committee Objection at ¶ 3, Dkt. No. 1054). The Ad Hoc Committee suggests that Defendants should simply waive their right to apportionment at trial and be satisfied asserting a contribution claim in the bankruptcy. No New York law requires Defendants to waive their right to apportionment at trial and the Ad Hoc Committee cites no support for their argument.

24. But if the trial court determines that apportionment is appropriate under New York law, to deny Defendants that apportionment is plainly unfair. A jury asked to draw a pie chart of fault, but ordered to ignore Debtors, is very likely to fill in the missing piece at least in part with one or more Defendants. This is a substantive imposition that nothing in the bankruptcy law compels.

25. Defendants acknowledge that Debtors will need to expend resources to monitor the New York proceedings. But, as discussed above, given the nature of Plaintiffs' allegations, Debtors will need to monitor the trial court proceedings vigilantly regardless of whether they are on the verdict form as third parties. Debtors' inclusion on the verdict form as third parties, without being bound by any outcome, will not increase that burden.

26. "**Lack of connection or interference with the bankruptcy case**." Plaintiffs argue only that the New York trial is "directly related" to the bankruptcy case. (Opp. of NY Pls. at ¶ 16). They do not even attempt to argue that including Debtors as third parties on the verdict form would interfere with the bankruptcy in any way. Instead, they contend that "if a finding of liability against the Debtors in the New York litigation has no binding effect, then it is legally irrelevant." (Opp. of NY Pls. at ¶17). That is not true, and it misses the point. While Defendants agree that an allocation of fault to Debtors would have no binding effect *on Debtors*, Plaintiffs ignore the practical relevance such an allocation will have on Defendants—preventing a jury from allocating fault to Defendants (if any) for alleged harms that Plaintiffs contend were caused by Debtors. It is precisely this lack of incremental effect on Debtors coupled with the profound prejudice to

16

Defendants if Debtors are not included on the verdict form that requires the lifting of the stay here (to the extent necessary).[12]

27. Debtors and the Creditors' Committee argue that Defendants' requested relief will throw "negotiations regarding a proposed settlement and allocation into complete disarray at this critical time." (Debtors' Objection at 20). But, as noted above, those settlement negotiations are just as likely to be impacted by the New York trial regardless of whether Debtors are apportioned fault or not. The potential for a limited incremental impact on the bankruptcy negotiations cannot outweigh the substantial and irreparable prejudice to Defendants if they are allocated fault for harms Plaintiffs themselves say were caused by Debtors.

## Conclusion

28. For the foregoing reasons and those stated in their Motion, Defendants request that this Court enter an order in substantially the form attached as **Exhibit A** to the Motion and grant such other relief as is appropriate under the circumstances.

******

Date: April 19, 2020

Respectfully Submitted:

/s/ Claudia Springer
Claudia Springer
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
(215) 851-8100

/s/ G. Robert Gage, Jr.
G. Robert Gage, Jr.
Gage Spencer & Fleming LLP
410 Park Avenue
New York, New York 10022
Tel: 212-768-4900
Fax: 212-768-3629

---

[12] The Non-Consenting States claim that Defendants are trying to "avoid accountability." (Objection of Non-Consenting States at 2). That is plainly not true. Defendants seek nothing more than to not be held liable for harms that a jury determines were caused by Debtors, not Defendants.

| | |
|---|---|
| CSpringer@ReedSmith.com | grgage@gagespencer.com |
| Paul E. Asfendis<br>GIBBONS P.C.<br>One Pennsylvania Plaza<br>New York, New York 10119<br>(212) 613-2000<br>pasfendis@gibbonslaw.com | *Attorneys for Allergan Finance, LLC*<br><br>/s/ Rachel E. Kramer<br>Rachel E. Kramer<br>FOLEY & LARDNER LLP<br>90 Park Avenue |
| *Attorneys for Defendants AmerisourceBergen Drug Corporation, Bellco Drug Corp., and American Medical Distributors, Inc.* | New York, NY 10016<br>(212) 338-3545<br>rkramer@foley.com |
| /s/ Martha A. Leibell<br>Martha A. Leibell<br>MORGAN, LEWIS & BOCKIUS LLP<br>200 S. Biscayne Blvd., Suite 5300<br>Miami, FL 33131<br>(305) 415-3000<br>martha.leibell@morganlewis.com | James W. Matthews<br>Ana M. Francisco<br>Katy E. Koski<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Boston, MA 02199<br>(617) 342-4000<br>jmatthews@foley.com<br>afrancisco@foley.com |
| Harvey Bartle IV (pro hac vice forthcoming)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>(215) 963-5000<br>harvey.bartle@morganlewis.com | kkoski@foley.com<br><br>*Counsel for Defendant Anda, Inc.*<br><br>/s/ Nathaniel Asher<br>Nathaniel Asher |
| Nancy L. Patterson (pro hac vice forthcoming)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1000 Louisiana Street, Suite 4000<br>Houston, TX 77002-5005<br>(713) 890-5195<br>nancy.patterson@morganlewis.com | O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, NY 10036<br>(212) 326-2000<br>nasher@omm.com<br><br>*Attorneys for Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-* |
| Pamela C. Holly<br>MORGAN, LEWIS & BOCKIUS LLP<br>101 Park Avenue<br>New York, NY 10178-0060<br>(212) 309-6000<br>pamela.holly@morganlewis.com | *Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.* |
| *Counsel for Defendants Cephalon Inc., Teva Pharmaceuticals USA, Inc.,* | /s/ Shawn P. Naunton<br>Shawn P. Naunton<br>Devon Galloway |

18

*Watson Laboratories, Inc., Actavis Pharma, Inc., and Actavis LLC*


/s/ Steven M. Pyser
Enu Mainigi
Steven M. Pyser
Ashley W. Hardin
Bradley D. Masters
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
emainigi@wc.com
spyser@wc.com
ahardin@wc.com
bmasters@wc.com

*Attorneys for Defendants Cardinal Health, Inc. and Kinray, LLC*


/s/ *Jeremy W. Ryan*
Jeremy W. Ryan*
Aaron H. Stulman
D. Ryan Slaugh*
POTTER ANDERSON & CORROON LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 1899-0951
(302) 984-6100
jryan@potteranderson.com
astulman@potteranderson.com
rslaugh@potteranderson.com

*Counsel for Walmart Inc.*


/s/ Carolyn Silane
Carolyn Silane
101 Park Avenue
New York, NY 10178
(212)-309-6612
Fax: (212) 309-6001
Carolyn.silane@morganlewis.com

John P. Lavelle, Jr.*

ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
(212) 704-9600
Fax: (917) 261-5864
snaunton@zuckerman.com
dgalloway@zuckerman.com

William J. Murphy
100 East Pratt Street, Suite 2240
Baltimore, MD 21202
(410) 332-0444
Fax: (410) 659-0436
wmurphy@zuckerman.com

Adam L. Fotiades
Anthony M. Ruiz
Graeme W. Bush
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1800
Fax: (202) 822-8106
afotiades@zuckerman.com
aruiz@zuckerman.com
gbush@zuckerman.com

*Counsel for CVS Pharmacy, Inc.*


*/s/ Paul W. Schmidt*
Paul W. Schmidt
David A. Luttinger, Jr.
Shailee Diwanji Sharma
Alexander Setzepfandt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
pschmidt@cov.com
dluttinger@cov.com
ssharma@cov.com
asetzepfandt@cov.com

*Attorneys for Defendant McKesson Corp. and PSS World Medical, Inc.*

19

| | |
|---|---|
| Coleen M. Meehan* | |
| 1701 Market Street | |
| Philadelphia, PA 19103 | /s/ Joseph D. Frank |
| (215) 963-4824 | Joseph D. Frank (IL Bar No. 6216085) |
| Fax: (215) 963-5001 | Jeremy C. Kleinman (IL Bar No. 6270080) |
| John.lavelle@morganlewis.com | FRANKGECKER LLP |
| Coleen.meehan@morganlewis.com | 1327 W. Washington Blvd., Suite 5 G-H |
| | Chicago, Illinois 60607 |
| *Counsel for Rite Aid of Maryland, Inc. and Rite Aid of New York, Inc.* | Telephone: (312) 276-1400 |
| | Facsimile:  (312) 276-0035 |
| | Email: jfrank@fgllp.com |
| * counsel who will see pro hac vice admission | Email: jkleinman@fgllp.com |
| | |
| | *Counsel for Defendants Walgreen Co., and Walgreen Eastern Co.* |