# Exhibit 2

1                                                                      1

2      SUPREME COURT OF THE STATE OF NEW YORK
       COUNTY OF SUFFOLK: PART 48
3      -------------------------------------------------x

4      IN RE: OPIOID LITIGATION

5

6                                   INDEX NO.:400000/2017

7      -------------------------------------------------x

8                                   March 10, 2020
                                    Central Islip, New York
9

10                        MINUTES OF PROCEEDING

11

12     B E F O R E:          HON. JERRY GARGUILO
                             Supreme Court Justice
13
       A P P E A R A N C E S:
14
              NAPOLI SHKOLNIK, PLLC
15            Attorneys for Plaintiffs
              NEW YORK COUNTIES
16            360 Lexington Avenue
              New York, New York 10017
17            BY: PAUL J. NAPOLI, ESQ.
                  HUNTER J. SHKOLNIK, ESQ.
18                MARIE NAPOLI, ESQ.
                  JOSEPH L. CIACCIO, ESQ.
19                SALVATORE C. BADALA, ESQ.

20
              SIMMONS HANLY CONROY
21            Co-Counsel for Plaintiffs
              112 Madison Avenue
22            New York, New York 10016
              BY:  PAUL J. HANLY, JR., ESQ.
23                 JAYNE CONROY, ESQ.
                   THOMAS I. SHERIDAN, III, ESQ.
24                 JUSTIN PRESNAL, ESQ.

25     (Appearances continued on following page.)

2

```
           STATE OF NEW YORK
           OFFICE OF THE ATTORNEY GENERAL
           LETITIA JAMES
           28 Liberty Street
           New York, New York 10005
           BY:  DAVID E. NACHMAN, ESQ,
                MANDY DEROCHE, ESQ.
                MICHAEL D. REISMAN, ESQ.
                M. UMAIR KHAN, ESQ.


           COVINGTON & BURLING, LLP
           Attorneys for Defendant
           MCKESSON
           The New York Times Building
           620 Eighth Avenue
           New York, New York 10018-1405
           BY:  PAUL W. SCHMIDT, ESQ.
                SHAILEE DIWANJI SHARMA, ESQ.


           O'MELVENY & MYERS
           Attorneys for Defendant
           JOHNSON & JOHNSON and
           JANSSEN PHARMACEUTICALS
           400 South Hope Street
           18th Floor
           Los Angeles, California 90071
           BY:  SABRINA H. STRONG, ESQ.


           PYSER, HARDIN, WILLIAMS & CONNOLLY, LLP
           Attorneys for Defendant
           CARDINAL HEALTH
           725 Twelfth Street
           NorthWest
           Washington, DC 20005
           BY:  STEVEN M. PYSER, ESQ.
                ENU MAINIGI, ESQ.



    (Appearances continued on following page.)
```

1                                                                          3

2          <u>MORGAN, LEWIS & BOCKIUS, LLP</u>
           Attorneys for Defendants
3          Teva/Actavis/Cephalon
           1000 Louisiana Street, Suite 4000
4          Houston, Texas 77002-5006
           BY:  NANCY L. PATTERSON, ESQ.
5               HARVEY BARTLE, IV, ESQ.

6

7          <u>REEDSMITH, LLP</u>
           Attorneys for Defendant
           AMERISOURCEBERGEN
8          Three Logan Square
           1717 Arch Street, Suite 3100
9          Philadelphia, Pennsylvania 19103
           BY: MICHAEL J. SALIMBENE, ESQ.
10              ROBERT A. NICHOLAS, ESQ.

11

12         <u>ROPES & GRAY, LLP</u>
           Attorneys for Defendant
           MALLINCKRODT LLC
13         1211 Avenue of the Americas
           New York, New York 10036
14         BY:  JOHN P. BUEKER, ESQ.

15

16         <u>KIRKLAND & ELLIS</u>
           Attorneys for Defendant
17         ALLERGAN
           300 North LaSalle Street
18         Chicago, Illinois 60654
           BY:  DONNA M. WELCH, P.C.

19

20         <u>BARTLITBECK, LLP</u>
           Attorneys for Defendant
21         WALGREENS
           Courthouse Place
22         54 West Hubbard Street
           Chicago, Illinois 60654
23         BY:  KASPAR STOFFELMAYR, ESQ.

24
        (Appearances continued on following page.)
25

1                                                                          4

2          <u>ALLEGAERT BERGER & VOGEL, LLP</u>
           Attorneys for Defendant
3          ROCHESTER DRUG COOPERATIVE, INC.
           111 Broadway, 20th Floor
4          New York, New York 1006
           BY:  DAVID A. SHAIMAN, ESQ.
5

6

7

8
           <u>SPECIAL MASTERS:</u>
9
           HARVEY BESUNDER, ESQ.
10         MARK A. KEURIAN, ESQ.

11         THOMAS J. MCNAMARA, ESQ.

12         JOHN L. JULIANO, P.C.

13         JUDGE MURANO

14         KEVIN ECKHARDT

15         JANET SUTHERLAND, ESQ.

16         NATALIE RIVERA, Intern
           CHRIS PICCIANO, Intern
17

18

19

20

21              *          *          *
               STEPHANIE CASAGRANDE, CSR, RPR
22                Official Court Reporter

23

24

25

1                          In re Opioid                          5

2              THE CLERK:  Supreme Court, State of New

3        York, County of Suffolk, Part 48 is now in

4        session, the Honorable Jerry Garguilo

5        presiding.

6              Good morning, Judge.

7              THE COURT:  Good morning.  Please be

8        seated.

9              THE CLERK:  On the Hearing Calendar, In

10       Re:  Opioid Litigation, Index Number 400000

11       of 2017.

12             Counsel, your appearances, please.

13             MR. NACHMAN:  David Nachman, for the

14       State of New York.

15             MS. DEROCHE:  Mandy DeRoche, for the

16       State of New York.

17             MR. REISMAN:  Michael Reisman, State of

18       New York.

19             MS. CONROY:  Jayne Conroy, Suffolk

20       County.

21             MR. SHKOLNIK:  Hunter Shkolnik, Nassau

22       County.

23             MR. HANLY:  Paul Hanly, Suffolk County.

24             MR. NAPOLI:  Paul Napoli, Nassau County.

25             MS. MAINIGI:  Good morning, your Honor.

1                       In re Opioid                        6

2          Enu Mainigi, Steve Pyser, Ashley Hardin,

3          Williams & Connolly, for Cardinal Health.

4              MS. STRONG:  Good morning.  Sabrina

5          Strong, of O'Melveny & Myers, on behalf of

6          Johnson & Johnson and Jansen Pharmaceuticals.

7              THE COURT:  Good morning.

8              MR. SCHMIDT:  Good morning, your Honor.

9          Paul Schmidt, Covington & Burling, on behalf

10         of McKesson.

11             THE COURT:  Good morning.

12             MR. NICHOLAS:  Good morning.  Bob

13         Nicholas and Mike Salimbene, for Amerisource.

14             THE COURT:  Good morning.

15             MR. STOFFELMAYR:  Good morning.  Kaspar

16         Stoffelmayr, for Walgreens.

17             MS. PATTERSON:  Good morning, your

18         Honor.  Nancy Patterson for Teva, Actavis and

19         Cephalon.

20             MR. BARTLE:  Good morning, your Honor.

21         Harvey Bartle for Teva, Actavis and Cephalon.

22             MS. WELCH:  Good morning, your Honor.

23         Donna Welch, for Allergan.

24             MR. PYSER:  Good morning, your Honor.

25         Steven Pyser, for Cardinal Health.

```
1                      In re Opioid                    7

2              MR. SALIMBENE:  Good morning, your

3        Honor, Mike Salimbne.

4              Good morning, your Honor.  John Bueker

5        on behalf of Mallinckrodt.

6              THE COURT:  Good morning.

7              MR. O'CONNOR:  Andrew O'Connor.

8              THE COURT:  Good morning, everybody.

9              Anybody here today on behalf of

10       Rochester?

11             MR. SHAIMAN:  Good morning, your Honor.

12       David Shaiman.

13             THE COURT:  Just step up for a second.

14       It's not going to be long, believe me.

15             Your appearance.

16             MR. SHAIMAN:  David Shaiman, Allegaert

17       Berger & Vogel.

18             THE COURT:  Okay.  You have a petition

19       pending, I think that's returnable tomorrow.

20             MR. SHAIMAN:  It is.

21             THE COURT:  Is there an opposition to

22       that file?

23             MR. SHAIMAN:  It was filed last night,

24       your Honor.

25             THE COURT:  Okay.  Are you going to
```

1

2          respond?

3               MR. SHAIMAN:  I don't believe we had one

4          under the Order to Show Cause.

5               THE COURT:  Beg your pardon?  Say it

6          again.

7               MR. SHAIMAN:  I don't believe we had one

8          under the Order to Show Cause.

9               THE COURT:  Okay.  It was brought by

10         Order to Show Cause but --

11              MR. SHAIMAN:  Yes.

12              THE COURT:  -- I do have the discretion

13         to allow it.  I don't see any reason to it.

14         That will be marked submit tomorrow.  There's

15         no need for an appearance.

16              MR. SHAIMAN:  No need for an appearance,

17         understood.

18              THE COURT:  So if you want to leave --

19         stick around a little bit.

20              MR. SHAIMAN:  Well...

21              THE COURT:  Just a little bit.

22              I'm going to go by sequence number.

23         Hopefully you can follow it.

24              The Court has drafted and edited and in

25         the process of final edits of the following

1                        In re Opioid                      9

2          petitions:  That's motion sequence 144,

3          motion sequence 153, motion sequence 154,

4          sequence 156, sequence 158, sequence 161 and

5          sequence 162.  It's also, what I call the

6          cluster sequences, that deal in the forties

7          and fifties, they are still in the

8          preparation stage.

9              I received a call yesterday to attend a

10         meeting with the Administrative Judge in this

11         building.  During the course of the

12         administrative meeting with the

13         Administrative Judge in this building I was

14         conferenced into a phone call with Judge Vito

15         Caruso.  For those of you not familiar, Judge

16         Caruso is the Administrative Judge for all

17         trial courts in the State of New York, with

18         the exception of New York City.

19             I expect to hear sometime today -- now,

20         of course, as soon as I hear you'll hear --

21         some kind of a pronouncement in connection

22         with the operation of the courts in

23         connection with the Corona situation.  I have

24         nothing yet to report, but as soon as I -- as

25         soon as I know, you'll know.

1                          In re Opioid                      10

2          All right.  I'm going to start with the

3      Defendants first, all right.  I'm going to

4      call this a Compliance Conference.  If

5      somebody wants to take the lead at the

6      Defendants' end of the room, give me a

7      report.

8          Nobody is jumping.

9          MS. PATTERSON:  Your Honor, I don't know

10     where you want to start.  I can start by

11     giving you a report on the jury questionnaire

12     and jury protocol issues, which we discussed

13     with the Court.

14         THE COURT:  No, let's go with the -- you

15     know what, I changed my mind.  Go with the

16     joint status report, that might be easier --

17     oh, wait.  Anybody from Mallinckrodt?

18         MR. BUEKER:  Yes, your Honor.

19         THE COURT:  How could you see me?

20         There was a filing yesterday with the

21     Security & Exchange Commission.

22         MR. BUEKER:  Well, that filing wasn't

23     made yesterday.  The filing was attached to a

24     filing of this Court yesterday; but, yes,

25     your Honor.

1                        In re Opioid                    11

2              THE COURT:  Why don't you tell me about

3       it.

4              MR. BUEKER:  So, your Honor, the filing

5       was made with the Securities & Exchange

6       Commission, explains that we have reached a

7       global resolution of these matters, subject

8       to certain conditions, you know, including a

9       prearranged bankruptcy filing that would take

10      place in a month or two.

11             THE COURT:  There's a dollar amount

12      attached to it?

13             MR. BUEKER:  There is, your Honor.

14             THE COURT:  And that dollar amount is

15      how much?

16             MR. BUEKER:  1.6 billion, your Honor.

17             THE COURT:  And you said it's in

18      connection with a global resolution.

19             What is that -- when I say -- what does

20      that mean?  We have cases pending here.  Last

21      count in the MDL, 330 cases?

22             MR. HANLY:  3,000, your Honor.

23             THE COURT:  3,000.  I'm off.  My 10

24      table is wrong.  Cases pending, I guess, in

25      47 states?

1                        In re Opioid                    12

2          MR. BUEKER:  Sounds about -- Attorney

3      General, yeah, support the Agreement, your

4      Honor.

5          THE COURT:  Let's assume, and this is

6      for purposes of a conversation, let's assume

7      that works out, that 1.6 billion dollars, and

8      let's assume the Court gets a call, a

9      correspondence from a county attorney who is

10     represented here by one of the -- one of the

11     Plaintiffs' firms, all right, and asks the

12     Court, How do we benefit from it?

13         How would the Court or what would the

14     Court do in order to answer that question?

15         MR. BUEKER:  So I think what the Court

16     needs to keep in mind --

17         THE COURT:  Sandy -- go ahead.  No,

18     wait, wait, wait.  This means coffee; this

19     means please...

20         MR. BUEKER:  I learned something today,

21     your Honor.  Thank you.

22         I think what the Court needs to keep in

23     mind is how will the County benefit.  The

24     County will benefit because the reason

25     Mallinckrodt entered into a global resolution

1                    In re Opioid                13

2          the way it did was a group of AGs and a group

3          of the lead Plaintiffs' lawyers from the MDL

4          got together and had a negotiation so that

5          Mallinckrodt could proceed in a way that

6          would maximize the return, the amount of

7          money that could be paid to claimants in

8          these opioid cases.

9               So the County, you would answer, I would

10         think, benefits by the fact that the

11         alternative for Mallinckrodt, which would be

12         some kind of a free-fall bankruptcy without

13         the planning and without the maximization

14         that goes on under this plan.  The County is

15         benefited here because there would be

16         additional consideration to the County.

17              THE COURT:  Okay.  Those two words,

18         "additional consideration."  Go ahead.

19              MR. BUEKER:  More than they'd otherwise

20         get if Mallinckrodt were just to plunge head

21         on into bankruptcy.

22              THE COURT:  So let's say the call came

23         from the county attorney in Chenango County,

24         which I believe is one of the parties in this

25         case, and I repeat exactly what you said, and

In re Opioid                    14

1

2     he or she listens to me and says, Judge, how

3     much?

4         MR. BUEKER:  That's an issue, your

5     Honor, that remains to be worked out in the

6     Bankruptcy Court.  There will be a procedure

7     for that that will be presided over to be

8     presumably a negotiated resolution of that.

9         THE COURT:  In other words, help me out,

10    the Bankruptcy Court would hear claims?

11        MR. BUEKER:  That's one way it could get

12    worked out in the bankruptcy.  The other way

13    it could get worked out in the bankruptcy the

14    more -- I see Mr. Nachman is raising to

15    address this.  He may be in a better position

16    to address it, so I will politely sit down,

17    but that could get worked out in the

18    bankruptcy by agreement.

19        THE COURT:  Okay.  Mr. Nachman, I

20    understand New York is not one of the 47

21    Attorney Generals that signed on for this

22    thing.

23        MR. NACHMAN:  Two weeks ago that was

24    correct.  As of today we are on a supporting

25    state -- we are a supporting state as of

1

2      yesterday.

3          THE COURT:  This is good news.

4          MR. NACHMAN:  It is good news.  And to

5      your point, your Honor, the whole idea of the

6      prearranged bankruptcy or prepackaged,

7      depending on exactly what form it takes, is

8      that allocation, which is what you are

9      discussing is to be negotiated.  It is

10     expected that that's exactly what's taking

11     place now.  We know what the parameters, the

12     economic parameters of the deal are.  We've

13     agreed that it's a better deal for everybody

14     because it maximizes value compared to the

15     only other plausible alternative of a

16     free-fall bankruptcy and allocation is now to

17     be finalized, but I should say that we don't

18     write on a clean slate.  There have been, as

19     you might imagine, over the course of the

20     past year around the country many, many

21     discussions about allocation on a national

22     level, as among the states, within New York,

23     as among the counties, city, the state, so

24     those arrangements are, if not finalized,

25     very far progressed, and then the last piece

1                        In re Opioid                        16

2          of it is that we have to take into account

3          other opioid claimants in the Mallinckrodt

4          situation:  personal injury claimants,

5          hospitals and NAS infants who may have been

6          born with addiction in utero.  So that all

7          still has to be arranged.  So we can't give

8          the answer to your Chenango, of the dollar

9          amount.

10              What you can say for the moment is it's

11         better than the alternative, and the idea is

12         that in two months we'll have allocation all

13         arranged, go into bankruptcy, and be out of

14         bankruptcy officially.

15              THE COURT:  Mr. Napoli, you have a

16         problem with it, right?

17              MR. NAPOLI:  I do, your Honor.

18              THE COURT:  Tell me about it.

19              MR. NAPOLI:  You know, I think it comes

20         down to your question, How much is a county

21         going to get?  And none of these lawyers,

22         whether it's the State of New York or the

23         attorney for Mallinckrodt, can tell us.

24              All we know is that there is a potential

25         for 1.6 billion for all of the Plaintiffs

1

2          that have filed or even those -- we're not

3          even sure if it includes those that have not

4          filed.  If it includes everybody, the best

5          case scenario for Nassau County would be 5

6          percent of the gross, which would be about 60

7          million would go to the State, and of that 60

8          million, maybe five percent would go to

9          Nassau County over a period of a number of

10         years.  That's from a Defendant who is

11         probably significantly responsible.  In the

12         order of Defendants it's probably Purdue and

13         then Mallinckrodt.  They were the most

14         prolific distributors of sellers and

15         manufacturers of generic opioid.

16             So the County doesn't know how much

17         money they're going to get.  They don't know

18         when they're going to get it.  They don't

19         know who else is going to be included in this

20         process.  We just heard from Mr. Nachman,

21         they still have to make a determination on PI

22         claimants, on hospital claimants, so they're

23         going to get a share as well.

24             THE COURT:  I got it.

25             Mr. Hanly, you're on board with it?

1                        In re Opioid                     18

2          MR. HANLY:  Yes, your Honor.  I'm on

3     board --

4          THE COURT:  And yet you're here today,

5     of course, on behalf of Suffolk County?

6          MR. HANLY:  That's correct, Judge.

7          But the background to my support on

8     behalf of Suffolk is the year or so that I

9     spent as a PEC representative dealing with

10    the Mallinckrodt potential bankruptcy, and

11    the PEC spent millions of dollars on

12    financial analysts to analyze the condition

13    of Mallinckrodt and give us an assessment of

14    the potential that the company could survive

15    this litigation without filing for

16    bankruptcy, and the conclusion was it could

17    not.

18         Accordingly, and wearing my PEC hat, I

19    attempted to achieve the best deal that could

20    be achieved, and I have so advised Suffolk

21    County.

22         THE COURT:  Okay.  Mr. Juliano, today,

23    sometime today would you --

24         MR. JULIANO:  Yeah, Judge, I had a

25    conference with Mr. Hanly, Mr. Napoli, Mr.

In re Opioid                          19

1

2    O'Connor yesterday, and Mr. Nachman, with

3    respect to what you just heard.  Just one

4    concern that I advised the Court, this is all

5    dependant upon whether or not the specialty

6    generics, which is not Mallinckrodt, PLC

7    comes out of bankruptcy, then this agreement

8    starts to fall into place.

9         However, there are concerns that Mr.

10   Napoli had with respect to what's already

11   been expended in this case to prepare for

12   trial for the 20th.  So I think that issue

13   was left open, and we have not had a

14   resolution, but I think today we have an

15   opportunity, we're going to speak with

16   Mallinckrodt, with Mr. Hanly, Mr. Nachman and

17   Mr. Napoli, to see if that can be worked out

18   or kind of revise some of this global terms

19   to see whether or not we can take into

20   consideration now Mr. Nachman participating

21   and what his allocation with -- what the

22   State's allocation would be with respect to

23   any distribution.  So I think we have that

24   sometime this morning we'll get together,

25   Judge, and try to work some of those out, and

1                          In re Opioid                    20

2          I'll advise the Court accordingly.

3               THE COURT:  Okay.

4               MR. NAPOLI:  Your Honor, if I can say

5          two quick things.  This deal that gets

6          Mallinckrodt, PLC off the hook, I'm wearing

7          my Nassau County hat, we've spent time and

8          money preparing for trial.  There's no

9          guarantee that a bankruptcy is going to

10         actually be filed, and to that point, we've

11         said if a bankruptcy is not filed and we have

12         to come back here and try this case again

13         against Mallinckrodt sometime in the fall, we

14         want to be made whole for that situation, and

15         the company refused to take that into

16         account.

17              So there is absolutely no benefit for

18         Nassau County.  As an advocate for Nassau

19         County, we're at trial.  The other 34,000

20         other counties and cities and municipalities

21         are not at trial.  What's best for Nassau

22         County, having prepared for trial, is going

23         forward.

24              Again, this prime actor in this crisis,

25         not only around the country but here in New

1                          In re Opioid                    21

2          York.  We're concerned about Nassau County,

3          in New York, that's the client I represent,

4          not the PEC.

5              MR. NACHMAN:  Your Honor, can I just add

6          one thing for the record.  You heard 1.6

7          billion.  The deal also includes a 19.99

8          percent equity stake in the parenting

9          company.  I just want --

10             MR. BUEKER:  Yeah, I was going to add

11         that.

12             MR. JULIANO:  It's a warrant.  I

13         understand it's a warrant.

14             MR. NACHMAN:  It's convertible into

15         19.99 percent or --

16             MR. BUEKER:  And I would just say in

17         response to Mr. Napoli that his county is

18         going to benefit more by this deal going

19         through and by not forcing us to a trial that

20         results in a premature bankruptcy and

21         deprives everyone of what could be a

22         maximizing outcome.

23             THE COURT:  Okay.  I consider -- the

24         Court considers itself sufficiently informed.

25         We'll await the results of any kind of a

1                       In re Opioid                    22

2          conference you have with Mr. Juliano and/or

3          further notification.

4               You know, almost as an op-ed comment,

5          when we collectively look at the obligations

6          we have to our principals, whether it's a

7          Plaintiff or a Defendant, and consider the

8          breath and scope of this litigation, this

9          Court has been contacted by judges from other

10         parts of the country involved in this

11         litigation asking questions, in essence,

12         comparing notes.

13              I wonder, given the extent, the breadth

14         of this litigation, is the way we, and I say

15         "we" collectively, we here in New York, we

16         here in Ohio, we here in Louisiana, we here

17         in South Carolina are approaching this thing

18         is the right way to approach it.

19              If we're talking -- if we're using the

20         word global in connection with any resolution

21         that might be arrived at, can we ever really

22         ever get -- this is a rhetorical question --

23         can we ever expect to get to a global

24         resolution as long as there's this

25         litigation, these cases pending throughout

1

2      the country?  I don't think so.

3          I'm open to suggestions as to a way to

4      convene some sort of a conference which

5      includes every jurisdiction, every state,

6      Federal Court in connection with a wide open

7      discussion and negotiation in connection

8      with, again, a global resolution, as well as

9      a means and method to distribute the --

10     distribute whatever funds are put aside in

11     connection with a global resolution.

12         And you may recall, sometime ago at a

13     conference the Court had suggested its own

14     means and method in the event that number,

15     that global number can be arrived at, and I

16     stand by it, and it seems like a species of

17     it has been adopted in some fashion by the

18     Ohio court.

19         Again, that's just a comment because I

20     don't -- I don't know how, if I was

21     representing a Defendant in this case, how

22     it's okay where we're done with New York, all

23     right, but guess what?  You got 48 other

24     states we got to deal with.

25         I mean, my principal -- my principal

In re Opioid                    24

1

2      would say, Okay, what is my exposure

3      elsewhere and what documents do you have that

4      I can rely on to say, you know, this is my

5      payout?  Again, strictly rhetorical.  That's

6      for you to decide and for you to make

7      suggestions to the Court, any one of you, as

8      to what this Court can do in connection with

9      convention or the convening of a some sort of

10     a meeting of national scope.

11         That aside, I have the joint pretrial

12     order.  All the open discovery issues are

13     here to be conferenced without special

14     masters.

15         Go to page 5, summary of any pending or

16     forthcoming motions.  Item number 1, as I

17     indicated, is done.  Awaiting final edits by

18     the Court.  Item number 2, done.  Awaiting

19     final edits from the Court.

20         I would like to say that the 18th

21     summary judgment motions, to the extent that

22     they were filed as follows.  There's group

23     applications:  manufacturers, distributors

24     and pharmacies.  We have those.  The Court's

25     considered those.

In re Opioid                              25

1

2          And then on top of the group

3     applications, we have individual applications

4     where the, where the Petitioner/Defendant

5     indicates we're part of the group, Judge, but

6     now these arguments that are unique to our

7     situation.  They have been looked at and

8     those are in draft also.  But the ones that I

9     detailed this morning are really done but,

10    again, I'd like to take a final look at it.

11         So items 3 and 4 are essentially done.

12    Item 5, 6, and 7 are done.  When I say "done"

13    -- time out.

14         All right.  The Court's in receipt of an

15    administrative order.  It was just handed to

16    me, signed by the Honorable Vito Caruso.

17         I suggested, when I first came out

18    today, that I expected to get some kind of a

19    read from the administration in connection

20    with the Carona situation, and I'll read it

21    into the record.  (READING:)  Administrative

22    order.  Pursuant to the authority vested in

23    me, and at the direction of the Honorable

24    Lawrence K. Marks, Chief Judge -- Chief

25    Administrative Judge, and in further

In re Opioid                           26

1

2      consultation with the Honorable Jerry

3      Garguilo -- he spelled my name wrong, by the

4      way -- the following matter shall hereby be

5      adjourned, as the trial court shall direct,

6      and the County of Suffolk v. Purdue and the

7      County of Nassau v. Purdue, New York versus

8      Purdue, et al., and the index numbers.

9           I interpret this to mean that as the

10     Court shall direct that pending, pending the

11     outcome of the Carona situation, the Court

12     can and shall reassign a trial date.

13          I'll tell you right now.  I have no

14     intention of going beyond the next case up

15     for trial, which I believe is Tennessee in

16     May.  I'm not going to set a new date today.

17     Just, by the way, this administrative order

18     will be available for distribution, all

19     right.

20          MR. NACHMAN:  For clarification, your

21     Honor, is the Court suggesting that subject

22     to, obviously, discussing with the

23     administrators of the court system, you

24     anticipate setting a date sometime before the

25     scheduled commencement of the Tennessee trial

In re Opioid                                    27

1

2       in May?

3            THE COURT:  As soon as there's a

4       lifting, a significant move, either by the

5       Governor's office or OCA, in a New York City

6       instant this Court is going to schedule a

7       trial.  This Court has been anxious to move

8       this case to trial.  You know, hindsight of

9       course can be 20/20.  But one of the things

10      they asked me for yesterday in that phone

11      conference was a roster of not so much the

12      names of lawyers, but the places lawyers come

13      from.  And what I did is, just so you know, I

14      didn't give what I believe is a complete

15      roster, I gave the roster based upon the

16      service, the service list on the joint status

17      report, and Judge Caruso wanted that, and I

18      gave him that.

19           When I say hindsight is 20/20, I have,

20      what was suggested last conference, up to 200

21      lawyers coming here.  Commissioner of Jurors

22      has suggested bringing in 150, 150, 150 and

23      150, that adds up to what, 600 potential

24      jurors.  I suspect the risk of some kind of a

25      communication of the illness was a

```
 1                        In re Opioid                      28

 2      significant consideration.

 3           So here's what we're going to do.  I

 4      have motions all over the place right now.  I

 5      got a motion to preclude the State on the

 6      BNE.  Discovery, I have motions by

 7      Mallinckrodt.  We make use of the time we

 8      have.  Let's assume it's a month, I'm giving

 9      you that assumption because that's what the

10      Court has in its mind, all right.  If we make

11      use of that time, all of these discovery

12      disputes that you have now will be resolved

13      and nobody, let's say a month from now, can

14      come and say, Oh, Judge, guess what?

15           In connection with that, it will be

16      deemed an order of this Court that all

17      discovery is to be complete.

18           What's a month from today?

19           THE CLERK:  April 13th.

20           THE COURT:  I don't like that number.

21           THE CLERK:  April the 14th.

22           THE COURT:  That's my wife's birthday,

23      that's good.  April 14th.

24           MR. SHKOLNIK:  Judge, if I can be heard,

25      Hunter Shkolnik.  What we've been seeing in
```

1                    In re Opioid                    29

2         the last couple of weeks is incessant service

3         of new discovery.  Can we have an order that

4         this has got to stop, and we can cleanup what

5         has to be cleaned up?  That we had a trial

6         date and this discovery in the last five

7         days --

8              THE COURT:  I've seen it.

9              MR. SHKOLNIK:  Can there be an order

10        that there's nothing new, that we had a date,

11        whatever was proper is served.  Nothing new,

12        and whatever was too late, was too late.

13             THE COURT:  As a matter of fact, on this

14        side of the table I think somebody suggested

15        opening up discovery based upon an article

16        that appeared in the newspaper, right?  I

17        think it was you.

18             MR. NACHMAN:  That's that table.

19             MR. SHKOLNIK:  But if we can have some

20        type of --

21             THE COURT:  Work out a -- if you don't

22        do it, the Court will.  Work out something

23        with my special masters.

24             MR. NAPOLI:  Can I make one more

25        suggestion?  I know the Court said you don't

```
 1                        In re Opioid                  30

 2        want to set a date, but to have a control

 3        date might make sense.

 4             THE COURT:  I'm going to give you a

 5        control date.  By the way, are you really

 6        appearing in Louisiana once a week?

 7             MR. NAPOLI:  Me?

 8             THE COURT:  No, is this litigation going

 9        on in Louisiana on a weekly basis?

10             MS. PATTERSON:  It is going on in

11        Louisiana, your Honor, but not on a weekly

12        basis.

13             THE COURT:  Okay.  How frequently?

14             MS. PATTERSON:  It's sort of ad hoc,

15        your Honor.  The last hearing was about three

16        weeks ago, but I was here, so I had other

17        people there.

18             THE COURT:  Okay.

19             MS. PATTERSON:  Things are being pushed

20        back there.  They had some issues with

21        discovery.  They had a cyber attack.

22             THE COURT:  There's only one Plaintiff

23        there?

24             MS. PATTERSON:  The State, yes, your

25        Honor.
```

1                    In re Opioid                    31

2          THE COURT:  Those are one of the courts

3     we heard from.

4          Let's get something significant done.

5     You'll meet with my special masters.  Work

6     out a drop dead date, a term of art, a cutoff

7     date on the discovery.  Mr. Nachman, work

8     something.  You face a motion tomorrow to, to

9     preclude.

10         MR. NACHMAN:  We have submitted, your

11    Honor, that that's I think -- I mean, the

12    motion is, especially in view of what's taken

13    place over the past couple of days,

14    effectively moot, and in any event -- or

15    meritless, it should be withdrawn, actually,

16    but on a number of bases, and we've submitted

17    our papers.

18         Picking up on Mr. Shkolnik's suggestion,

19    I would beseech your Honor, we'll work out a

20    Stipulation with the special masters, but to

21    set that cutoff on the basis that the trial

22    was to proceed on March 20th.

23         As an example, you have a motion now

24    filed by us, not yet responded to, about

25    requests for admissions, which were served a

1                              In re Opioid                    32

2           day or two or three late.  Another set of, I

3           don't know, 30, 40, 50 requests to admit

4           served late just piling on, piling on.  We're

5           not -- we agree with your Honor, we should

6           use this time to clean up all these issues,

7           we can do so in an orderly fashion, but we're

8           not going to do so.

9                I said before that nature abhors a

10          vacuum.  The Defendants abhor a vacuum.  If

11          there is any space in time they will fill it

12          with what is now I think demonstratively

13          fruitless, irrelevant.  They'll contest that.

14          They'll say it's very relevant; they'll say

15          it's critical; they'll say it goes to the

16          heart of due process; blah, blah, blah.  But

17          in any event, unless your Honor puts that

18          date today as if --

19                THE COURT:  I said I was.

20                MR. NACHMAN:  Okay.  Great.

21                THE COURT:  I'll give you a chance to

22          come to an agreement.  If you don't come to

23          an agreement, that's my job.  You can make my

24          job a lot easier by coming to an agreement,

25          so do so.  I don't want to get tied up in too

```
 1                      In re Opioid                    33

 2         much academic stuff, but there are some

 3         things I really would like to mention.

 4             By the way, there's a lawyer who put

 5         some papers in, last name is Polster.  Any

 6         relation to the judge?  No?  That person is

 7         not here, right?  No relation to the judge,

 8         as far as any of you know?

 9             MR. NACHMAN:  It's a witness.

10             THE COURT:  It's a witness.  I saw the

11         name.  Okay.  Who put in an affidavit?

12             MS. CONROY:  Yes.

13             THE COURT:  All right.  All the

14         pharmacies are here, correct?  I'd like the

15         pharmacies to meet with Mr. Juliano and with

16         Plaintiffs' counsel.  The Court has read all

17         of the individual pharmacies' petitions, as

18         well as the joint petition, and I would like

19         that case discussed with Mr. Juliano.

20             Am I correct that Judge Polster issued

21         one decision concerning a pharmacy, a

22         pharmacy that's not in this case?  Anybody?

23         I'm going to assume, unless I hear otherwise.

24             MR. STOFFELMAYR:  Your Honor, HBC is in

25         the case in front of Judge Polster, not in
```

1                        In re Opioid                    34

2        this case.

3            THE COURT:  That's right.  Judge Polster

4        rendered a decision in connection with a

5        petition to dismiss.

6            MR. STOFFELMAYR:  I'm sure he did.  He's

7        done that.  There's a second pharmacy chain,

8        not in this case, also in front of Judge

9        Polster, called Discount Drug Mart.

10           THE COURT:  I would like the pharmacies

11       that are here today to meet with Mr. Juliano.

12           MR. SHKOLNIK:  The two decisions that

13       came down were later, later decisions.  There

14       were earlier ones I believe as to CVS and

15       Walgreens, because they were part of the

16       trial.  He deferred the decisions on those

17       other ones.  You may have seen those late

18       decisions that just came down in the last

19       probably two months.

20           THE COURT:  No, I hadn't seen those two.

21       I saw the HBC decision.  I read the HBC

22       decision where he held HBC on a diversion

23       claim I believe.

24           MR. SHKOLNIK:  Those just came out, but

25       the original summary judgments as to

1                        In re Opioid                    35

2          Walgreens and CVS, those came out quite some

3          time ago.

4               THE COURT:  I have to find them.  I

5          don't have them yet.

6               MR. SHKOLNIK:  We can make them

7          available for the Court.

8               MR. SCHMIDT:  Your Honor, Paul Schmidt,

9          for McKesson.  We have a bunch of dates

10         coming up in terms of things like exhibits,

11         things like that, jury instructions.  May we

12         work with the Plaintiffs to pick new dates

13         for those things?

14              THE COURT:  Yes.  And special masters

15         are here, too.

16              MR. SCHMIDT:  Wonderful.  Thank you.

17              THE COURT:  Oh, by the way, maybe I do

18         have it.  It's the MDL docket 2561, that's

19         what I had down.

20              MR. HANLY:  2804, your Honor.

21              THE COURT:  Then I don't have it.

22              MR. SHKOLNIK:  We'll get you the actual

23         orders.

24              THE COURT:  Okay.  The judge in Ohio

25         also wrote somewhat extensively on the de

In re Opioid                          36

1

2        minimis claim that some Defendants are making

3        here, meaning their participation in the

4        actual commerce is very, very tiny, tiny and

5        as such they shouldn't be in the case.  I got

6        that.

7             You can expect the decisions on the AOD

8        issues involving some of your clients to be

9        out soon.  Statute of Limitations, expect

10       that soon.

11            Oh, yeah, when I referred to the cluster

12       motions before I was talking about 146, 147,

13       149, 151 and 160.  I can tell you that's in

14       also in the editing stage.

15            I'm going to close the record.  You'll

16       -- I'll be here, of course, for help.  You'll

17       meet and confer with Mr. Juliano, the special

18       masters, and with your consent, I'm going to

19       ask Judge Murano to also take part in the

20       discovery issues.  As you all know, Judge

21       Murano was presiding judge in Nassau County.

22       He's been very, very helpful to me.  Unless I

23       hear an objection to that; any objection?

24       Going once, going twice...

25            The record will reflect there's been no

```
 1                    In re Opioid                    37

 2         objection to the reassignment of Judge Murano

 3         this morning.

 4              Mr. Nachman, do you want to get the last

 5         word in, as always?

 6              MR. NACHMAN:  Yes.  I just want to note

 7         in light of the Court's statement about

 8         decisions forthcoming, that with respect to

 9         item number 9, their request for relief under

10         3216 for our reported noncompliance with the

11         BNE, we have responded to that yesterday with

12         our submission.  I just want to be sure that

13         the Court has and considers that before

14         ruling.

15              We also, at the Court's direction, made

16         a formal motion on the reargument of the, of

17         the CSA authority issue of the Attorney

18         General to prosecute those claims.  That

19         motion has now been formally made.  I'm happy

20         to work out dates with the Defendants if they

21         need a response time, but it's been noticed.

22              MR. PYSER:  Your Honor, we'll certainly

23         be responding to the motion to reargue on

24         that.  It's been heard already, and unless

25         the Court is going to summarily deny it,
```

```
 1                       In re Opioid                    38

 2          having seen it four times already, we'll work

 3          out a -- we'll work out a schedule.  We're

 4          happy to work with the special masters on

 5          that as well.

 6                  MR. NAPOLI:  Your Honor, I was unclear.

 7          So April 14th is the day that we're pushing

 8          everything back until?

 9                  THE COURT:  Everybody is going to be

10          here on the 14th.  I suspect certainly by

11          that time I'll get some word as to what I can

12          do.  I'm telling you as soon as it becomes

13          apparent that this Court can proceed, it will

14          proceed.  This Court is, as you know, is

15          anxious to proceed.

16                  Thank you all.  Meet with my -- our

17          special masters, and I'll be here for

18          recourse throughout the day.

19                  Thank you.

20                  CHORUS:  Thank you, your Honor.

21

22

23                      *       *       *

24

25
```

1                          In re Opioid                    39

2

3

4

5                    C E R T I F I C A T I O N

6

7          I, Stephanie Casagrande Hague, CSR, RPR,

8       an Official Court Reporter of the State of

9       New York, County of Suffolk, do hereby

10      certify that the above is a true and accurate

11      transcription of my stenographic notes taken

12      in the above-entitled action on this day;

13          Furthermore, photocopies made of this

14      transcript by any party cannot be certified

15      by me to be true and accurate.

16          Therefore, only those copies bearing an

17      original signature in blue ink are official

18      certified copies.

19

20

21      _____
        STEPHANIE CASAGRANDE HAGUE, CSR, RPR
22              Official Court Reporter

23

24

25