Gerard Uzzi
Alexander B. Lees
Eric K. Stodola
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219

Gregory P. Joseph
JOSEPH HAGE AARONSON LLC
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone:     (212) 407-1200
Facsimile:     (212) 407-1280

*Counsel for the Raymond Sackler Family*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>Jointly Administered |

**LIMITED OBJECTION OF THE RAYMOND SACKLER FAMILY TO THE
AD HOC GROUP OF NON-CONSENTING STATES' RULE 2004 MOTION**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

The Raymond Sackler family,[2] by and through its undersigned counsel, hereby submits this limited objection (the "Limited Objection") to the *ex parte* motion of the Ad Hoc Group of Non-Consenting States (the "Ad Hoc Group"), as joined by the Official Committee of Unsecured Creditors (the "Official Committee"), for authority under Rule 2004 to issue subpoenas to financial institutions (the "Motion") [ECF No. 1019]. In support of this Limited Objection, the Raymond Sackler family respectfully states as follows:

## INTRODUCTION

1. After the chambers conference on April 9, the Ad Hoc Group provided the Sackler families with a form of proposed subpoena to be issued to financial institutions, and the parties met and conferred and exchanged extensive written correspondences and proposed orders. This process resulted in the parties' agreement on the form and scope of document requests, which are reflected in the Ad Hoc Group's revised proposed order of April 24, attached as Exhibit A to the Notice of Telephonic Hearing [ECF No. 1085] (the "AHG Proposed Order"). The Raymond Sackler family therefore does not object to the Motion inasmuch as it seeks authority to examine the identified financial institutions by serving the agreed form of subpoena and discovery requests. In addition, the parties were able to reach agreement on a streamlined procedure, also reflected in the Ad Hoc Group's revised order, to address the issuance of further subpoenas to additional financial institutions that are not specifically named in the Motion, and the resolution of related objections, if any.

2. One procedural disagreement remains, however, which is the subject of this Limited Objection. The Raymond Sackler family's proposed order (the "Side B Proposed Order,"

---

[2] The Raymond Sackler family includes Richard Sackler, Jonathan Sackler, David Sackler, and the estate of the late Beverly Sackler.

2

attached as <u>Exhibit A</u>) would give the individuals and entities whose account information is being produced a time-limited opportunity to conduct an advance review of the financial institution's production solely to apply confidentiality designations in accordance with the Amended Protective Order (the "<u>Protective Order</u>") [ECF No. 969], or redactions of highly sensitive and irrelevant information or Personally Identifying Information, as defined in the Protective Order (¶¶ 26, 37). *See* Side B Proposed Order, Ex. A, ¶ 5. The AHG Proposed Order would require banking information to be produced without its account holder's advance confidentiality review, but subject to a blanket "preliminary designation as 'Professionals' Eyes Only/Confidential.'" *See* AHG Proposed Order ¶¶ 5-6.

3. The AHG's proposed "Professionals' Eyes Only" designation is not the highest level of protection available under the Protective Order and prejudges the appropriate treatment of information that may be subject to redaction or enhanced protections that the Protective Order contemplates. *See* Protective Order ¶¶ 23, 35, 37. Moreover, the AHG Proposed Order would require such information to be disseminated to a much larger group of receiving parties than heightened protections otherwise would permit – including to outside counsel for all receiving parties, individual members of the Official Committee, unspecified numbers of in-house counsel and staff for each state attorney general's office, and others – ***before*** the account holder has any opportunity to protect it. *See* AHG Proposed Order ¶ 5; Protective Order ¶¶ 41, 46.

4. The issue is not whether the documents will be produced: they will. The issue is whether account holders will be afforded a 14-day opportunity to conduct an advance, good faith confidentiality review of documents that their financial institutions will produce. The Ad Hoc Group cannot dispute that financial records, such as those called for by the subpoena, are likely to

contain confidential information.[3]  If there is a dispute about the propriety of any designations or redactions once applied, the Protective Order provides an existing mechanism for resolution.  *See* Protective Order ¶ 64.  There is no reason not to give account holders the chance to protect their confidential information before it is disclosed.

## ARGUMENT

5. The Raymond Sackler family requests an order requiring that the financial institutions first provide documents responsive to the subpoenas to respective counsel for the individuals, trusts, or entities whose bank records are targeted.  Counsel would then have an opportunity to review the information and apply confidentiality designations or redactions before, in turn, providing the materials to the Ad Hoc Group and other participants in the examination, along with a certification of counsel that all such materials have been turned over.

6. The right to apply confidentiality designations would be governed by the Protective Order, and all rights of the examining parties to challenge those designations would be preserved. The right to make redactions in this context would be extremely limited, and would apply only to: (i) Personally Identifying Information; and (ii) the names of investment/business counterparties and investment advisors with respect to third-party investments and business relationships (for example, hedge funds and other investment funds) that are currently held by the targeted individuals, trusts, or entities.

7. The Protective Order (¶¶ 26, 37) expressly permits the redaction of Personally Identifying Information, such as home addresses, personal email addresses, home telephone numbers, and personal social security numbers.  Courts routinely permit the redaction of such

---

[3] *See, e.g.*, 15 U.S.C. § 6801(a) (recognizing that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information").

information, even when there is a protective order that limits who has access to discovery information. *See, e.g.*, *Andrews v. Cruz*, No. 04 CIV. 0566 PAC RLE, 2006 WL 1984650, at *3 (S.D.N.Y. July 14, 2006) ("Although there is a protective order in effect in this case, the Court finds that the redaction of social security numbers, home addresses, and family information is appropriate to protect personal and private information.").[4]

8. The second category of redactions would apply only to current investments and business counterparties and advisors, not former ones; and it would apply only to the names of third-party investment or business counterparties, and not to the Debtors, the IACs, or entities that are wholly owned by the Sackler families or their trusts (including the entities in the chain of ownership of the Debtors or the IACs). The Raymond Sackler family has agreed to provide a redaction log, which will identify the basis of redaction (to distinguish between redactions for Personally Identifying Information and current, third-party counterparties and advisors). The Raymond Sackler family also is willing to assign a "code" to each current third-party counterparty or advisor whose name is redacted (e.g., "Redacted Party 1," "Redacted Party 2"), and list the applicable codes on the redaction log for each document so that recipients of discovery materials can see how many third-party names are at issue and the circumstances in which, and the frequency with which, those third-party names arise in the produced documents.

9. The Raymond Sackler family seeks to protect third-party counterparty and advisor information from disclosure because it is both irrelevant and extremely sensitive, such that disclosure would be very damaging – not just to the targets of the subpoenas, but also to the entire bankruptcy process before the Court. Experience has shown that when the names of people or

---

[4] For the avoidance of doubt, the Raymond Sackler family will not redact the personally identifying information of Richard Sackler, Jonathan. Sackler, David Sackler, or Beverly Sackler. *See* Protective Order ¶ 26.

5

entities who do business with the Sacklers are disclosed, counterparties pull away, thus damaging the Sacklers' existing investments and business relationships. Investment managers whose names become associated with the Sacklers, for example, may force a redemption of or other exit from the Sacklers' currently-existing positions; alternatively, co-investors or partners in the same funds might redeem their positions *en masse* and destroy the value of the Sacklers' remaining positions.

10. This is not an abstract concern. News articles abound about non-profit and charitable institutions returning or rejecting funds donated by the Sacklers.[5] The Raymond Sackler family has previously advised the Court of banking relationship ruptures that followed the issuance of subpoenas by New York State to financial institutions in the fall of 2019. The press also has reported on instances in which hedge fund managers redeemed investments held by the Sacklers.[6] The counterparties in these instances, in taking the actions described, cited reputational concerns from being known associates of the Sackler family, and their desire to signal to their other counterparties and customers that they will not continue to do business with the Sacklers.

11. The publicly reported instances are only examples. There have been others. Should the names of remaining investment counterparties or business partners of the Sacklers become known, there is a predictable and substantial risk that this trend will continue and worsen. And inasmuch as the value of the families' existing investments and business arrangements is essential

---

[5] *See, e.g.*, Alex Marshall, *Museums Cut Ties with Sacklers as Outrage Over Opioid Crisis Grows*, N.Y. TIMES, Mar. 25, 2019, *available at* https://www.nytimes.com/2019/03/25/arts/design/sackler-museums-donations-oxycontin.html.

[6] *See* Juliet Chung, Sara Randazzo, & Gregory Zuckerman, *Hedge Fund Tosses Family That Controls Maker of OxyContin*, WALL ST. J., Mar. 7, 2019, *available at* https://www.wsj.com/articles/hedge-fund-tosses-family-that-controls-maker-of-oxycontin-11551985100; Juliet Chung & Jared S. Hopkins, *More Investment Funds Reduce Ties With Family Behind Purdue Pharma*, WALL ST. J., Feb. 19, 2020, *available at* https://www.wsj.com/articles/more-investment-funds-reduce-ties-with-family-behind-purdue-pharma-11582123961.

to funding a consensual resolution of these cases, ruptures to existing business relationships will destroy value, distract from time sensitive discovery, and undermine settlement efforts in progress. No constituent will benefit from this occurring.

12.     The Protective Order does not provide sufficient protection for the limited categories of redacted information outlined here.  Before the bankruptcy, leaks and other confidentiality problems occurred, notwithstanding the existence of protective orders issued by other courts.  One example occurred immediately before the petition date in litigation commenced by the State of New York, a member of the Ad Hoc Group, against the Debtors and members of the Sackler families.  Discovery in that action, including third-party discovery, was governed by a protective order prohibiting public disclosure of designated discovery materials, including those produced by third parties.  On August 27, 2019, New York received bank records from a financial institution that were governed by the protective order; every page of those records was stamped "HIGHLY CONFIDENTIAL."  On September 13, 2019, the state publicly filed a memorandum of law and accompanying declaration that disclosed private, personal, and highly confidential information that the state acknowledged it learned only through the protected materials. Additionally, the state evidently gave the *New York Times* an advance preview of the highly confidential information produced by the financial institution.  The state's filing was time-stamped at 3:56pm; at approximately 3:58pm that day, a representative of some of the Sackler defendants received a request for comment from the *Times*.  Less than 30 minutes later, the *Times* published an 800-plus word story repeating numerous details from the state's public filings, including information that was supposed to be protected from disclosure by the protective order.  That story included a quotation from New York State Attorney General Letitia James indicating that the state's purpose in publicizing this private information was to pressure members of the Sackler

7

families to increase their contribution to the settlement offer that is now the backbone of this bankruptcy process.[7]

13. The Raymond Sackler family does not seek to litigate old grievances here.[8] It highlights these facts only to demonstrate to the Court that its concerns are not academic and that the existence of the Protective Order is not a panacea for confidentiality concerns when it comes to the most sensitive information. *See In re Indep. Serv. Orgs. Antitrust Litig.*, 162 F.R.D. 355, 357-58 (D. Kan. 1995) (recognizing that protective orders cannot guarantee that confidential information will not be disclosed and permitting business to redact the identities of counter-parties to supply agreements: "disclosure, even under the present protective order, might be harmful" because of the "potential harm which could result from even inadvertent disclosure of its confidential suppliers").

14. Equally important, the names of current third-party investments or business partners are not relevant, and their disclosure would not be proportional to the needs of the case. Constituents in the bankruptcy, including the Ad Hoc Group and the Official Committee, among others, have been provided detailed information about how much wealth the Raymond Sackler family members and their trusts possess. They will receive even more information in response to the Official Committee's Rule 2004 subpoenas, including tax filings, financial statements, bank records, and audit reports going back to 2008. And they will receive still more "confirmatory" discovery of bank records from financial institutions through the Ad Hoc Group's subpoenas at

---

[7] *See* Danny Hakim, *New York Uncovers $1 Billion in Sackler Family Wire Transfers*, N.Y. TIMES, Sept. 13, 2019, *available at* https://www.nytimes.com/2019/09/13/health/sacklers-purdue-opioids.html (quoting Attorney General James accusing the Sackler families of "lowball[ing] victims and skirt[ing] a responsible settlement . . . .").

[8] In the New York state court action, the state later revised its public filings to redact the confidential information. *See* So-Ordered Request to File Redacted Documents, *In re Opioid Litigation*, Index No. 400000/2017, Doc. No. 1677 (Oct. 4, 2019).

issue. Additional details about the *names* of specific counterparties or advisors with respect to current third-party investments or business deals will not reveal any information that is pertinent to the chapter 11 process.

15. The Ad Hoc Group rejected the families' version of the proposed order, and instead proposed that all documents produced by financial institutions in response to the subpoenas be produced directly to the requesting parties and automatically be given the "Professionals' Eyes Only" designation under the Protective Order – a designation that is not true to its name, as it permits some non-professionals to view designated material; it also permits in-house counsel at state attorneys general offices, among others, to view the designated material (¶ 41). This is not a workable solution.

16. For one thing, it does not protect the non-discoverable sensitive names of current counterparties and advisors as described above. For another, the Protective Order permits the application of several confidentiality designations, including a designation for "Outside Professionals' Eyes Only," which provides more protection than the "Professionals' Eyes Only" designation. That higher designation was given limited scope under the Protective Order while the parties engaged in voluntary due diligence, but the Protective Order recognizes that once compulsory discovery begins, parties providing information may seek a Court order requesting the right to apply the "Outside Professionals' Eyes Only" designation more broadly, and other parties have the right to challenge the request (¶ 23).

17. Any order granting the Rule 2004 motion should not pre-judge confidentiality designations, such as by mandating that only the "Professionals' Eyes Only" designation apply. This would be an end run around the family members' rights to seek a higher level of protection. In addition, it would require the Court to make confidentiality determinations in a vacuum, before

19-23649-shl    Doc 1087    Filed 04/26/20    Entered 04/26/20 19:27:56    Main Document
Pg 10 of 11

the parties know what information is being provided and what protections are being sought. The better course is to allow counsel for the targeted individuals, trusts, and entities to view the banking information before it is produced, assert their positions (if any) with respect to confidentiality, produce the documents to the examining parties accordingly, meet and confer with the examining parties about those positions, and raise any disputes with the Court in a timely manner. This will ensure that all rights are protected, and that resolutions of confidentiality disputes can be actual and concrete, not hypothetical and advisory.[9]

## CONCLUSION

18.     The Side B Proposed Order is attached as Exhibit A. For the foregoing reasons, the Raymond Sackler family respectfully requests that any order granting the Ad Hoc Group's motion adhere to this form, and that the Court grant such other and further relief to the Raymond Sackler family that is just and proper

---

[9] During the meet-and-confer process, the Debtors requested that their information not be targeted by the financial institution subpoenas, and that the Debtors instead provide their own bank records directly to the examining parties. The Ad Hoc Group accepted this proposal as to the Debtors but declined to give the Sackler families the same courtesy when requested.

Dated: April 26, 2020
      New York, New York

                                      Respectfully submitted,

                                      */s/ Gerard Uzzi*
                                      Gerard Uzzi
                                      Alexander B. Lees
                                      Eric K. Stodola
                                      **MILBANK LLP**
                                      55 Hudson Yards
                                      New York, NY 10001
                                      Telephone:    (212) 530-5000
                                      Facsimile:     (212) 530-5219

                                      */s/ Gregory P. Joseph*
                                      Gregory P. Joseph
                                      **JOSEPH HAGE AARONSON LLC**
                                      485 Lexington Avenue, 30th Floor
                                      New York, New York 10017
                                      Telephone:    (212) 407-1200
                                      Facsimile:     (212) 407-1280

                                      *Counsel for the Raymond Sackler Family*