Jasmine Ball
M. Natasha Labovitz
Maura Kathleen Monaghan
Jeffrey J. Rosen
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836

*Attorneys for Beacon Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**LIMITED OBJECTION OF MORTIMER SACKLER INITIAL COVERED SACKLER PERSONS TO *EX PARTE* MOTION OF THE AD HOC GROUP OF NON-CONSENTING STATES FOR AN ORDER AUTHORIZING EXAMINATIONS OF CERTAIN FINANCIAL INSTITUTIONS PURSUANT TO RULES 2004 AND 9016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The Mortimer Sackler Initial Covered Sackler Persons (the "Mortimer Sackler ICSPs") respectfully submit the following Limited Objection to the *Ex Parte* Motion of the Ad Hoc Group of Non-Consenting States for an Order Authorizing Examinations of Certain Financial Institutions Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

19-23649-shl    Doc 1088    Filed 04/26/20    Entered 04/26/20 23:42:19    Main Document
Pg 2 of 19


"Rule 2004 Motion") [ECF No. 1019] as joined by the Official Committee of Unsecured Creditors (the "UCC").

## PRELIMINARY STATEMENT

1.      The Mortimer Sackler ICSPs fully recognize that disclosure, including of the financial records at issue, is important to the bankruptcy process. For that reason, the Mortimer Sackler ICSPs have agreed to produce the records sought by the Non-Consenting States through first-party discovery (subject to appropriate protection for confidential information[2]). The Mortimer Sackler ICSPs submit this Limited Objection to address the narrow issue of the procedure by which those materials should be collected and provided to the Non-Consenting States and the Official Committee.

2.      During the conference regarding the Non-Consenting States' Rule 2004 Motion, the Court recognized that the purpose of third-party discovery from the Financial Institutions would be "confirmatory." Consistent with that instruction, the Mortimer Sackler ICSPs propose that records from the Financial Institutions be produced through first-party discovery. Because it is apparently important to the Non-Consenting States that the information originate from the Financial Institutions,[3] the Mortimer Sackler ICSPs have offered to collect the information by way of a letter to each of the Financial Institutions, a proposed draft of which is attached as Exhibit A to the Proposed Order (the "Proposed Order") submitted with this Limited Objection, and to seek a certificate of completeness from each Financial Institution, a proposed draft of which is attached as Exhibit B to the Proposed Order from each Financial Institution. Third-

---

[2]  The Mortimer Sackler ICSPs join in the Limited Objection of the Raymond Sackler Family to the Ad Hoc Group of Non-Consenting States' Rule 2004 Motion.

[3]  Capitalized terms used not otherwise defined have the meaning set forth in the Motion or the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [ECF No. 518].

party subpoenas would still be available thereafter for any confirmatory discovery that proves necessary.

3. Nevertheless, the Non-Consenting States are maintaining that they wish to serve formal subpoenas on the Financial Institutions, not to seek confirmation of the first-party discovery after reviewing and digesting it, but to obtain a duplicate production of the same information at the present time. Their rationale for this position appears to be a presumption that productions made by the ICSPs pursuant to the Federal Rules and certified by counsel cannot be trusted to be complete and accurate. There is no basis for any such presumption. The Mortimer Sackler ICSPs wish to be crystal clear on the record that they will participate in good faith in discovery before this Court, and will provide complete and accurate responses to court-ordered discovery.

## BACKGROUND

4. The Mortimer Sackler ICSPs have undertaken significant efforts to provide transparency concerning their financial circumstances. As required by the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [ECF No. 518] (the "Stipulation"), through counsel they have provided two presentations detailing the Mortimer Sackler ISCPs' net assets and how they are held. On November 22, 2019, the UCC, the Ad Hoc Group, and the Non-Consenting States received a 130-slide presentation that detailed the structure and location of all entities and trusts that hold the Mortimer Sackler ICSPs' assets. On January 15, 2020, the Committees received a 168-slide presentation that provided net asset information for the US and ex-US assets of each Mortimer Sackler ICSP (four individuals and 77 trusts), broken out into twelve categories: (*i*) cash and cash equivalents; (*ii*) investments in brokerage accounts and quote investments; (*iii*) investments in related and third parties; (*iv*) accounts receivable; (*v*) loans to third parties;

3

(*vi*) notes receivable from related parties; (*vii*) retirement accounts; (*viii*) residential real estate; (*ix*) other real estate; (*x*) collectibles and other personal property; (*xi*) other miscellaneous assets; and (*xii*) investments in and loans to IACs. The January 15, 2020 presentation also provided net liability information broken out into eight categories: (*i*) accounts payable; (*ii*) notes payable; (*iii*) secured debt; (*iv*) unsecured debt; (*v*) other liabilities; (*vi*) tax obligations; (*vii*) estimated tax liabilities on interests in IACs; and (*viii*) estimated tax liability on unrealized gains. As also requested by the UCC, the January 15, 2020 presentation was accompanied by confirmations of its completeness including (*i*) attestations by certain personal accountants retained by certain Mortimer Sackler ICSPs to the material completeness of the financial information provided, and (*ii*) an additional attestation from an outside third-party organization, Huron Consulting Group, to the consistency of the reports with the underlying materials it reviewed.

5. Following the presentations, the Committees informed the Mortimer Sackler ICSPs that they intended to take discovery of the underlying financial documents, including bank records. On March 31, 2020, the UCC served a subpoena pursuant to Rule 2004 (the "UCC Subpoena") that seeks the same information requested by the Non-Consenting States' proposed subpoena. The Mortimer Sackler ICSPs served responses and objections to the UCC Subpoena on April 21, 2020,[4] with a copy to counsel for the Non-Consenting States, in which they agreed to produce all bank records for the Mortimer Sackler ICSPs related to the period from January 1, 2008 to March 30, 2020, subject to the terms of the Amended Protective Order (the "Protective Order") [ECF No. 969] and to redactions to maintain the confidentiality of third-party investment counterparties and to anonymize the names of minor children. The undersigned counsel is now preparing to collect and produce the requested records.

---

[4]  The date for responses to the UCC Subpoena was extended by agreement of the parties.

6.  Meanwhile, the Non-Consenting States filed their Rule 2004 Motion on April 7, 2020. During the April 9, 2020 informal conference with the Court concerning the Rule 2004 Motion, the Court expressed a view that non-party subpoenas to the Financial Institutions should be used for the purposes of "confirmatory" discovery. In a meet-and-confer shortly thereafter, the Non-Consenting States agreed to permit the Debtors to provide records from financial institutions through first-party discovery. In that same meet-and-confer, the Non-Consenting States maintained that they nevertheless required that the ICSPs' bank records be provided at the present time through the subpoena process, citing the requirement that the Financial Institutions certify the completeness of the production. The Mortimer Sackler ICSPs proposed a procedure to accommodate this identified concern:

- The ICSPs would transmit the Non-Consenting States' discovery requests to the Financial Institutions.

- The ICSPs would request that the Financial Institutions return a signed certification of completeness and accuracy.

- The ICSPs would commence review and rolling production of documents as soon as they receive data from the Financial Institutions.

- To the extent a Financial Institution declines to provide documents or a production from a Financial Institution appears incomplete or otherwise raises concerns, the Non-Consenting States would be authorized to issue subpoenas as necessary to confirm the contents of that Financial Institution's production.

The Non-Consenting States rejected this proposal. A proposed form letter and certification are attached as Exhibits A and B to the Proposed Order, respectively, but the Mortimer Sackler ICSPs are amenable to modifications as proposed by the Non-Consenting States or the UCC.

I.  **Taking First-Party Discovery Prior to the Issuance of Subpoenas Will Be More Efficient and Enable the Parties to Avoid the Need for Subpoenas or Narrow Them to the Purpose of Confirmatory Discovery**

7.  The Mortimer Sackler ICSPs submit that there is no reason to disturb the priority of first-party discovery here because it is feasible under their proposed procedure. *See Burns v.*

5

*Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." (quoting Wright & Miller, *Federal Practice and Procedure* § 2204) (alterations in original)). Nor would the proposed procedure foreclose the Non-Consenting States' ability to issue confirmatory subpoenas of an appropriately tailored scope at the appropriate time.

8. Beginning with first-party discovery would promote efficiency in several respects. First, it will enable counsel to the ICSPs (who will be most knowledgeable about the ICSPs' financial arrangements) to request records from the Financial Institutions in an appropriately targeted manner. Second, it will streamline the process for redaction and confidentiality designations under the Protective Order and the procedures requested by the Raymond Sackler ICSPs. Third, it will ensure that the use of any third-party subpoenas will be consistent with the Court's instruction to use non-party subpoenas for confirmatory discovery and to do so in a manner that will reduce the time and expense associated with any such subpoenas. In the unlikely event of a refusal by a Financial Institution to cooperate fully in the proposed procedure, the Non-Consenting States will be able to issue promptly subpoenas to that Institution. The Non-Consenting States will similarly retain the ability to issue subpoenas to obtain the discovery materials, if any, they believe necessary to confirm the production made through first-party discovery. At that time, even if there is a need for a subpoena, it would be possible for the parties to confer and narrow the topics of that subpoena.

9. There is particular reason to observe the preference for first-party discovery in this case because reversing the usual sequence of first-party discovery preceding third-party subpoenas would pose potentially significant risks to the Mortimer Sackler ICSPs' banking

relationships. The New York Attorney General subpoenaed records from eleven banks in its lawsuit in New York Supreme Court. In the ensuing months, at least six banks severed relationships with the members of the Mortimer Sackler family, charitable foundations that they have funded, and trusts for their benefit. We have provided the UCC and the Non-Consenting States as an example a letter from the bank that had been the principal banking relationship for the Mortimer Sackler family for decades, requiring the closure of over 200 accounts for approximately 70 entities. The letter does not say why the bank is taking that action, but the timing is telling. This bank had taken no action for years after the first lawsuits were filed against Purdue or even after the first lawsuits naming certain Mortimer Sackler ICSPs who had served as directors of Purdue, but within a few months of receiving the subpoena from the New York Attorney General, the bank cut off decades-long relationships.[5] Members of the Mortimer Sackler family have faced significant difficulties in forming and maintaining banking relationships after those subpoenas were served on those financial institutions.

10.     While the damage, if any, that a new set of subpoenas would inflict on the Mortimer Sackler ICSPs' remaining banking relationships cannot be predicted, adverse consequences are certainly possible and there is no reason to run that risk when the same information can be provided through first-party discovery. Termination of additional banking relationships would make it much more difficult for the family and their businesses to conduct their affairs and may impact the financial plumbing of any settlement. Notably, when members of the Sackler families made a voluntary contribution to the settlement of the Oklahoma

---

[5] The New York Attorney General has made clear that these proposed Rule 2004 subpoenas are intended as a continuation of the investigation that began with the issuance of the subpoenas in the New York Court, announcing in a public statement that "we are asking [this Court] to allow us to resume our investigation into individual members of the Sackler family." Emily Field, *NY AG Seeks Additional Sackler Family Financial Info*, LAW360 (pr. 8, 2020), https://www.law360.com/articles/1261654/ny-ag-seeks-additional-sackler-family-financial-info?copied=1.

litigation against Purdue, they were unable to obtain a letter of credit from any national or international financial institution, and could only obtain the letter of credit from one local Oklahoma bank. The Mortimer Sackler ICSPs' proposal that first-party discovery be conducted first reduces this risk because it will give the parties an opportunity to tailor the scope of a confirmatory subpoena and to issue it at a time when the settlement process is more established.

## II.    Commencing with First-Party Discovery Would Parallel the Process for the Debtors' Discovery

11.    The Non-Consenting States have agreed to permit the Debtors to provide records from financial institutions through first-party discovery without issuance of subpoenas, yet they maintain that the same process will not work for the ICSPs. The Non-Consenting States have not provided any explanation of why the process that will work for the Debtors will not work for the ICSPs.

12.    The Non-Consenting States have rejected the Mortimer Sackler ICSPs' proposal apparently because of an assumption that the Mortimer Sackler ICSPs' participation in discovery in these chapter 11 cases is untrustworthy until proven otherwise. However, there is no basis for that assumption, nor do the Non-Consenting States cite one. The Non-Consenting States attempt to cast an innuendo to the contrary with their assertion that the New York Attorney General's previous subpoenas led to the production of "important information relating to transfers by members of the Sackler family." Rule 2004 Motion ¶ 12. This statement and the press announcement made at the time suggest that there was some wrongful concealment when in fact there simply had never been discovery on those topics, so it was entirely unsurprising that the content of confidential bank records "was not already known." Rule 2004 Motion ¶ 6. The transfers shown in the records were ordinary course transfers of funds over a period of years without any effort to conceal resources or secret funds. And to the extent the funds in question

8

were the proceeds of distributions from the Debtor, the amount and timing of each and every distribution had been disclosed to the Non-Consenting States many months before.  Nothing in those subpoenas or the materials produced justifies an assertion that third-party subpoenas are necessary here or the Non-Consenting States' position that every piece of information the ICSPs provide in discovery is fundamentally unreliable and must be triple-checked.  There is no reason that certification of the discovery responses by counsel (and by the Financial Institutions) would be insufficient.

## CONCLUSION

13.    The Mortimer Sackler ICSPs respectfully request that the Court enter an Order, substantially in the form of the Proposed Order, directing the parties to proceed with first-party discovery regarding documents from the Financial Institutions prior to the issuance of subpoenas, if any, as confirmatory discovery.

Dated:    April 26, 2020
          New York, New York

By:    */s/ Jasmine Ball*_____
       Jasmine Ball
       M. Natasha Labovitz
       Maura Kathleen Monaghan
       Jeffrey J. Rosen
       DEBEVOISE & PLIMPTON LLP
       919 Third Avenue
       New York, New York 10022
       Telephone: (212) 909-6000
       Facsimile: (212) 909-6836
       Email: jball@debevoise.com
              nlabovitz@debevoise.com
              mkmonaghan@debevoise.com
              jrosen@debevoise.com

       *Attorneys for Beacon Company*

9

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PURDUE PHARMA, L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**[PROPOSED] ORDER PURSUANT TO RULES 2004 AND 9016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING EXAMINATIONS OF CERTAIN FINANCIAL INSTITUTIONS**

Upon the motion, dated April 7, 2020 of the Ad Hoc Group of Non-Consenting States (the "Motion")[2] for an order pursuant to Bankruptcy Rules 2004 and 9016 authorizing the examinations and discovery described therein; and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), as core proceedings pursuant to 28 U.S.C. § 157(b); and upon the joinder in, and statement with respect to the Motion filed by the Official Committee; and venue being proper in this District pursuant to 28 U.S.C. § 1408; and no additional notice being required except as provided herein; and, after due deliberation and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

   1.  The Motion is granted as provided herein.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield Bio Ventures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used not otherwise defined have the meaning set forth in the Motion.

2.      The Initial Covered Sackler Persons (as defined in the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [ECF No. 518]) shall undertake to obtain documents from the Initial Financial Institutions responsive to the Non-Consenting States and Official Committee's requests.  Promptly following entry of this order, Counsel for the Initial Covered Sackler Persons shall (i) transmit the requests to each Initial Financial Institution in a letter substantially similar to the form attached as **Exhibit A** (the "Information Requests") and (ii) request that each Initial Financial Institution return a signed copy of a certification substantially similar to the form attached as **Exhibit B** (the "Certifications").  Upon receipt of documents from the Initial Financial Institutions pursuant to the Information Requests (the "Received Documents"), the Initial Covered Sackler Persons will promptly begin a rolling production of such Received Documents to the Non-Consenting States and the Official Committee.

3.      Prior to production, counsel for the ICSPs shall be entitled to apply confidentiality designations for Received Documents under the Amended Protective Order [ECF No. 969] (the "Protective Order").  In addition, prior to production, counsel for the ICSPs may redact any such Received Document to the extent it contains: (i) Personally Identifying Information (as defined in the Protective Order); or (ii) the names or other identifying information of investments, investment or business counterparties, investment advisors with respect to third-party investments, or business relationships that are, in each case, currently held by any Covered Sackler Person.  Such counsel shall provide a redaction log consistent with paragraph 37 of the Protective Order; in the event counsel applies redactions to names of current investment or business counterparties or investment advisors in accordance with this paragraph, the redaction log shall assign a "code" to each name that is redacted (e.g., "Redacted Party 1," "Redacted Party

2"), and list the applicable codes on the redaction log for documents where such name appears and has been redacted. If a party entitled to receive such Received Documents believes that confidentiality designations or redactions have been applied inconsistently with this Order, all parties' rights with respect to challenges under the Protective Order are preserved.

4. If the Non-Consenting States or the Official Committee show cause to the Court that the Received Documents obtained pursuant to Paragraph 2 are incomplete or otherwise require confirmation through additional discovery, the Court will authorize the Non-Consenting States and/or the Official Committee (as applicable) to (i) conduct an examination of, (ii) request the production of documents by (including electronically stored information), and (iii) issue subpoenas, substantially in the form attached as **Exhibit C**, to the Initial Financial Institutions.

5. If, following entry of this Order and production of the Received Materials, the Non-Consenting States or the Official Committee believes that an additional financial institution may have relevant data or information in respect of the topics described in the Motion, it may issue a subpoena substantially in the form attached as Exhibit A to such additional financial institution ("Additional Financial Institution," and together with the Initial Financial Institutions, the "Financial Institutions") on the following conditions: the Non-Consenting States or the Official Committee, as applicable, shall notify counsel to the Named Persons (as defined in the document requests attached to the subpoena) of the intent to examine and serve a subpoena on such Additional Financial Institution, and counsel to the Named Persons shall have 5 days to indicate in writing whether it opposes such examination and, if so, on what grounds. If counsel to the Named Persons does not so indicate within 5 days, the Non-Consenting States or the Official Committee, as applicable, may proceed with its examination and service of a subpoena on the Additional Financial Institution without further order of the Court. If counsel to the Named

Persons timely indicates its opposition in writing, the Non-Consenting States or the Official Committee (as applicable) shall not proceed with its examination and service of a subpoena, the parties shall meet and confer in good faith, and, if they are unable to reach agreement, they shall promptly seek a discovery conference with the Court.

6. The Non-Consenting States and/or the Official Committee shall include a copy of the Protective Order (or any further amended protective orders entered by the Court) with any subpoenas issued pursuant to this Order, as well as a copy of this Order and a list of counsel for the Initial Covered Sackler Parties, the Debtors, the Official Committee, the Ad Hoc Committee, and the Non-Consenting States (together, the "Bankruptcy Constituents"), and the Named Persons, with contact information.

7. Producing Financial Institutions shall not be obligated to apply confidentiality designations to Discovery Material (as defined in the Protective Order) ("Discovery Material") produced in response to a subpoena issued under this Order. Instead, any such Financial Institution shall provide all such Discovery Material to counsel for the Named Person whose account information is reflected, rather than to the person issuing the subpoena, and shall substantially contemporaneously provide notice to counsel for all Bankruptcy Constituents that Discovery Material has been made available to counsel for such Named Person. Counsel for such Named Person shall, within 14 days from receipt of Discovery Material from such Financial Institution, unless otherwise agreed in writing with the person or persons seeking production of such Discovery Material, convey such Discovery Material to counsel for the person issuing the subpoena. Upon such conveyance, counsel for the Named Party shall provide a certification to counsel for the receiving party that Discovery Material originating with Financial Institutions has been provided in compliance with this Order. However, prior to such conveyance, counsel for

Pg 14 of 19

such Named Person shall be entitled to apply confidentiality designations for such Discovery Material under the Protective Order.  In addition, prior to such conveyance, counsel for such Named Person may redact any such Discovery Material to the extent it contains: (i) Personally Identifying Information (as defined in the Protective Order); or (ii) the names or other identifying information of investments, investment or business counterparties, investment advisors with respect to third-party investments, or business relationships that are, in each case, currently held by any Named Person.  Such counsel shall provide a redaction log consistent with paragraph 37 of the Protective Order; in the event counsel applies redactions to names of current investment or business counterparties or investment advisors in accordance with this paragraph, the redaction log shall assign a "code" to each name that is redacted (e.g., "Redacted Party 1," "Redacted Party 2"), and list the applicable codes on the redaction log for documents where such name appears and has been redacted. If a party believes that confidentiality designations or redactions have been applied inconsistently with this Order, all parties' rights with respect to challenges under the Protective Order are preserved.

8. Counsel for the Named Parties shall provide to the Debtors copies of all Discovery Material produced in response to subpoenas issued in accordance with this Order and all of all Received Documents and, subject to paragraphs 3 and 7 of this Order.

9. Any Receiving Party (as defined in the Protective Order) may submit a Challenge Notice (as defined in the Protective Order) to the counsel representing the Named Person to which the Discovery Material at issue in the Challenge Notice relates. For the purposes of production by Financial Institutions pursuant to subpoenas issued under this Order, such Named Person shall be considered the Producing Party (as defined in the Protective Order) for purposes

5

of the Challenge Notice. Except as modified in this paragraph, the provisions in paragraph 64 of the Protective Order shall apply to Challenge Notices made pursuant to this Order.

10. The Non-Consenting States and/or the Official Committee and any Financial Institution disputing a subpoena authorized by this Order shall meet and confer to attempt in good faith to resolve any disputes.

11. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: White Plains, New York
April __, 2020

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

7

[*Date*]

[*Name of Financial Institution*]
[*Address Line 1*]
[*Address Line 2*]
[*City, State  Zip*]

Re: *In re Purdue Pharma LP et al.*, No. 19-23649 (RDD)

Dear Sirs,

We write with regard to certain accounts at [*Name of Financial Institution*] ("[*Short Name of Financial Institution*"] held by the individuals and entities listed in Exhibit A to this letter. Records associated with this account are relevant to diligence concerning a plan of reorganization being conducted by parties to the bankruptcy proceeding captioned *In re Purdue Pharma LP et al.*, No. 19-23649 (RDD), in the Southern District of New York.  Attached as Exhibit B are a list of requests for certain categories of documents (the "Requests") that the parties intend to examine.  We ask that you provide to us copies of all documents relating to the Requests by _____ __, 2020, or as soon as practicable thereafter.  We further ask that a representative of [*Short name of Financial Institution*] sign and return the certification attached to this letter as Exhibit C.

Please let us know if you have any questions.

Best regards,

[*Counsel to ICSPs*]

8

# EXHIBIT B

**Certification of Completeness and Accuracy With Regard to Documents Provided in Response to Letter Dated \_\_\_\_\_ \_\_, 2020**

I, _____, hereby confirm and declare the following:

1. My title is _____ and I am employed by [*Name of Financial Institution*] ("[*Short Name of Financial Institution*]") and have been employed by [*Short Name of Financial Institution*] for \_\_\_ years.

2. I am familiar with [*Short Name of Financial Institution*]'s recordkeeping practices and have reviewed the requests to provide certain documents (the "Requests") in the letter dated \_\_\_\_\_ \_\_, 2020. I hereby confirm that, to the best of my knowledge, the records [*Short Name of Financial Institution*] has provided to [*Name of Receiving Law Firm*] constitute a complete and accurate copy of all documents in [*Short Name of Financial Institution*]'s possession responsive to the Requests as of the date of this Certification.

_____
Name:
Title:
Company:
Date: