

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Andrew M. Troop
tel: +1.212.858.1660
andrew.troop@pillsburylaw.com

April 29, 2020

VIA ELECTRONIC COURT FILING

Honorable Robert D. Drain
U.S. Bankruptcy Court for the
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:   *In re: Purdue Pharma L.P.* et al., No. 19-23649 (Bankr. S.D.N.Y.)

Dear Judge Drain:

The Ad Hoc Group of Non-Consenting States (the "Non-Consenting States") writes in support of the requests made by the Official Committee of Unsecured Creditors (the "UCC") [Docket No. 1089] (the "UCC Letter") to resolve certain discovery disputes between the UCC and members of the Sackler family in favor of prompt and full responses and disclosures by the Sacklers. The Non-Consenting States, which also have received authority to take Rule 2004 discovery from the Sacklers [Docket No. 1008], have actively coordinated with the UCC, first in efforts to obtain voluntary discovery from the Sacklers, and now in compulsory discovery, including routinely participating in "meet and confer" efforts. The description of those efforts in the UCC Letter is fair and accurate, and the Non-Consenting States join in the relief sought by the UCC.

There are many reasons why the UCC's proposed resolution of discovery issues with the Sacklers, as joined by the Non-Consenting States, should be allowed as set forth in the UCC Letter. Perhaps foremost among these reasons is transparency. Transparency about the Sacklers and Purdue is critically important to be able to explain to the public any resolution of these cases and to the integrity of this bankruptcy process.

Without repeating the UCC Letter, the Non-Consenting States also want to emphasize the following:

First, at the outset of these cases, the Non-Consenting States understood that the parties would undertake a voluntary process that would provide for the robust information exchange needed to evaluate the settlement structure proposed in the Term Sheet [Docket No. 257] between the Debtors, the Sacklers, and the Ad Hoc Committee. This information exchange was intended, in part, to provide information to assess whether broad releases sought by the Sacklers and their affiliates from liability arising from the opioid crisis were appropriate. At this point in these cases,

April 29, 2020
Page 2

however, the Sacklers have failed to produce the level of information that is needed to assess whether parties should agree to take, or whether this Court should take, the extraordinary step of releasing all estate and third-party claims against them, even though they did not file for bankruptcy, in exchange for a payment to these estates.[1] It is no exaggeration to say that only a modest amount of progress has been made in obtaining verified information from which one could evaluate the settlement structure in the nearly eight months since these cases began. Public and private creditors currently are engaged in important mediation where evaluating claims against, and the wealth of, the Sacklers is necessary to a successful mediation. Delayed and deficient responses from the Sacklers are harming that process.

Second, the Sacklers have largely relied on the information disclosed in certain presentations (the "Presentations") their counsel made pursuant to the Case Stipulation [Docket No. 518] (as amended, the "Case Stipulation"), among the Debtors, the UCC, and certain Sackler-related entities, to avoid producing other information and underlying source documents that the parties must have to evaluate the proposed settlement structure and releases. The Non-Consenting States and the UCC, however, have made it clear to the Sacklers that their Presentations and limited productions to date do not satisfy their obligations to provide the information necessary to obtain any of the releases they seek. The Non-Consenting States and the UCC will not rely on (and should not be expected to rely on) the positions of the Sacklers' counsel in considering the settlement and release of potentially billions of dollars in estate claims and trillions of dollars in public entity claims against the Sacklers.

Third, Side A's proposed limited search period for ESI unquestionably excludes potentially relevant information relating to the Sacklers' conduct and Purdue. As stated by the UCC, knowing "[w]hat the Sacklers knew" and "when they knew it" is essential to assessing the level of culpability of the Sacklers with respect to the opioid crisis. *See* UCC Letter at 5. Limiting searches from 2008 or 2010 is wholly inadequate to answer these questions. The Non-Consenting States agree that searches should begin from the later of the introduction of OxyContin in 1995 or the availability of relevant ESI.

Fourth, although the productions from the MDL and other pre-petition litigation total millions of documents, the productions omitted custodians, most notably Sackler family members,[2] and did not include searches for information relevant to fraudulent/voidable transfer and related estate claims. The lack of discovery from all custodians or relevant to estate claims not only makes it impossible for the Non-Consenting States and others to evaluate whether the consideration proposed in exchange for the broad third-party releases sought by the Sacklers is appropriate for a consensual release, but also whether a narrower release of only estate claims would be appropriate.

---

[1] The Non-Consenting States contend that the Sacklers are not entitled to a non-consensual release of third-party claims, and nothing in this letter is intended to suggest otherwise.

[2] Richard Sackler and Kathe Sackler produced only a limited number of emails, many of which contain improper redactions of non-privileged communications.

April 29, 2020
Page 3

Fifth, any contention by the Sacklers that the discovery requests are not proportional and therefore present an "undue burden" is unfounded. The Sacklers are billionaires who seek extraordinary releases of trillions of dollars in claims, and their conduct is alleged to have caused thousands of deaths nationwide. As such, the discovery sought by the UCC (and the Non-Consenting States) is proportional both in relation to the Sacklers' resources and the relief they seek in these cases. The questions regarding proportionality decided by Judge Bernstein in *SunEdison* simply are not implicated here. *See In re SunEdison, Inc.*, 562 B.R. 243 (Bankr. S.D.N.Y. 2017) (creditor not entitled to broad production of "all documents and communications" when cost of responding would likely exceed the creditor's distribution).

Finally, the urgency of resolving discovery disputes to progress these cases cannot be overstated. Once the Sacklers are required to engage in ESI disclosure in earnest and the meet and confer process continues, the parties will continue to attempt to resolve disputes consensually. The need, however, for further Court intervention to compel mandatory productions from the Sacklers seems very likely (if not inevitable). Importantly, most of the depositions that the parties intend to take will have to wait until substantial completion of written discovery. Therefore, it is crucial that the Sacklers be required to start and substantially complete their initial ESI production on the schedule proposed by the UCC, if not sooner.

For these reasons, the Non-Consenting States support the request by the UCC for discovery from the Sacklers as set forth in the UCC Letter.

Very truly yours,

  */s/ Andrew M. Troop*
Andrew M. Troop

*Counsel to the Non-Consenting States*