AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of
Unsecured Creditors of Purdue Pharma L.P.,
et al.*

COLE SCHOTZ P.C.
Justin R. Alberto (admitted *pro hac vice*)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
jalberto@coleschotz.com

*Efficiency Counsel to the Official
Committee of Unsecured Creditors of
Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Purdue Pharma L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINDER IN, AND
STATEMENT WITH RESPECT TO, REPLY IN SUPPORT OF *EX PARTE* MOTION OF
THE AD HOC GROUP OF NON-CONSENTING STATES FOR AN ORDER
AUTHORIZING EXAMINATIONS OF CERTAIN FINANCIAL INSTITUTIONS
PURSUANT TO  RULES 2004 AND 9016 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

The Official Committee of Unsecured Creditors (the "Official Committee") of Purdue

Pharma L.P. ("Purdue") and its affiliated debtors and debtors-in-possession (collectively, the

"Debtors," and together with their non-Debtor affiliates, the "Company"), further to its joinder in

the *Ex Parte Motion of the Ad Hoc Group of Non-Consenting States for an Order Authorizing*

*Examinations of Certain Financial Institutions Pursuant to Rules 2004 and 9016 of the Federal*

*Rules of Bankruptcy Procedure* [ECF No. 1019] (the "Motion"),[2] submits this joinder in, and

statement with respect to, the *Reply in Support of Ex Parte Motion of the Ad Hoc Group of Non-*

*Consenting States for an Order Authorizing Examinations of Certain Financial Institutions*

*Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure* [ECF No. 1106]

(the "Reply").[3]  In support of the Reply and its joinder thereto, the Official Committee respectfully

states as follows:

## STATEMENT AND JOINDER

1.      The Official Committee joins in the relief sought by the Motion.  As discussed in

more detail below, (i) the Sacklers' request to funnel information responsive to the subpoenas to

the Financial Institutions (the "Bank Subpoenas") through the Sacklers and their counsel prior to

production to the Ad Hoc Group of Non-Consenting States ("NCSG") and the Official

Committee should be denied, and (ii) the Motion should be granted despite the Sacklers'

unsubstantiated claim that the Bank Subpoenas would result in prejudice to their ongoing

banking relationships.

---

[2] *See The Official Committee of Unsecured Creditors' Joinder in, and Statement with Respect to, Ex Parte Motion of the Ad Hoc Group of Non-Consenting States for an Order Authorizing Examinations of Certain Financial Institutions Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure* [ECF No. 1026].

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Reply and in the *Ex Parte Motion of the Official Committee of Unsecured Creditors of Purdue Pharma, et al., for an Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016* [ECF No. 981], as applicable.

2.      The proposals made by the Sacklers for collecting and producing information

from Financial Institutions would needlessly delay the receipt of information that is essential to

the Official Committee's ongoing investigation of valuable estate claims against the ICSPs and

others.  The Official Committee expects that the Financial Institutions will respond promptly and

completely to discovery requests from the NCSG and/or the Official Committee.  The ICSPs'

proposals, in contrast, seek to insert themselves into this process, adding an unnecessary and

potentially obstructive additional step to what otherwise should be a straightforward and efficient

process.  As discussed in more detail in the Official Committee's April 26, 2020 letter to the

Court [ECF No. 1089] (the "April 26th Letter"), the Official Committee has been trying to obtain

discovery from the ICSPs for several months, with little success.  Although the ICSPs insist they

would produce documents from Financial Institutions promptly and in good faith, their conduct

in discovery to date does not inspire confidence in those claims.

3.      Furthermore, there is no reason to redact information produced by the Financial

Institutions.  As the Official Committee explained in its April 26th Letter, the Protective Order

[ECF No. 969] provides strong protections for sensitive information.  Likewise, the order

proposed by the NCSG [ECF No. 1085] provides that all information produced by the Financial

Institutions would automatically receive a preliminary designation of "Professionals' Eyes

Only/Confidential Information."  This automatic designation eliminates any need to redact

information contained in materials provided by Financial Institutions, as disclosure of such

materials would be limited to select groups of persons who have signed the Protective Order.

There is no reason to suspect the Official Committee or its members would violate the terms of

the Protective Order and disclose information provided by the Financial Institutions pursuant to

the subpoenas.  Additionally, redaction of otherwise responsive information may rob the

documents of important context and place an undue burden on the Official Committee, requiring further meet and confers regarding the propriety of the redactions and potentially motion practice and *in camera* review.  These burdens are simply unnecessary.

4.       The ICSPs also claim that issuance of subpoenas would harm their banking relationships, but provide no support for that contention, despite repeated requests from the Official Committee.  Financial institutions routinely receive and respond to subpoenas in relation to their banking clients, and the Sacklers' alleged involvement in the opioid crisis is widely known and cannot come as a surprise to the Financial Institutions—indeed, the Official Committee understands that many of the Financial Institutions already received subpoenas from the New York Attorney General in the fall of 2019 (the "NYAG Subpoenas").  Notably, moreover, the Sacklers' proposed alternative approach suggests that their true aim is to maintain as much control over the disclosure process possible, rather than protect banking relationships.  Even if their approach were adopted—and the Official Committee submits it should not be—it would not shield the banks from the discovery process in these proceedings or even remove the threat of a subpoena.

5.       The Sacklers have provided no proof that the issuance of subpoenas to Financial Institutions would cause harm to existing banking relationships.  After the conference with the Court on this Motion, the Mortimer Sackler ICSPs had a telephone conversation with counsel for the Official Committee and asked that the Official Committee give careful consideration to their view that the Bank Subpoenas could harm the Sacklers' banking relationships.  *See* Decl. Arik Preis dated Apr. 29, 2020 ¶ 3.  The Official Committee agreed to do so, but asked the Mortimer Sackler ICSPs to back up their contention with documents and other proof.  *Id*.  Eventually, they came forward with a single letter from a single bank (the "Bank Letter") terminating its

relationship with the Mortimer Sackler ICSPs.  Preis Decl. ¶ 6 & Ex. C.  The Bank Letter did not

reference the NYAG Subpoenas.  Anxious to ensure it had all available information relevant to

the Sacklers' claims of prejudice, counsel for the Official Committee wrote counsel for the

Mortimer Sackler ICSPs several times asking for additional documentation, but none ever was

provided.  *Id*. Ex. D.

6.      The Official Committee was thus surprised to see the Mortimer Sackler ICSPs

claim in their objection to the Motion that at least six banks had terminated relationships with the

Sacklers, since they never so much as mentioned these alleged additional incidents in response to

the Official Committee's repeated inquiries.  Notably, they still provide no documentation of

their claims.  And although they now strongly imply that the bank termination referenced in the

Bank Letter was caused by the NYAG Subpoenas, in correspondence with the Official

Committee, the Mortimer Sackler ICSPs *expressly disclaimed* the notion that the Bank Letter

was "proof of causality" and deflected the Official Committee's requests for more information,

advising that they "don't think it is productive to dig into what happened in the past."  Preis

Decl. Ex. D.  In short, even if there were a basis in the law to deny 2004 discovery based on

potential fraying of bank relationships—and there is not, as the NCSG explain their Reply—the

Sacklers have supplied virtually no evidence that their claimed concern is credible.

7.      For the reasons stated above, and for the other reasons stated in the Reply, the

Official Committee respectfully requests the authority, if necessary, to serve requests for

discovery directly on the Financial Institutions.

### RESERVATION OF RIGHTS

8.      The Official Committee and its members reserve all of their respective rights,

claims, defenses, and remedies, including, without limitation, the right to amend, modify, or

supplement this joinder, to seek additional discovery, to add additional parties, or to raise

additional grounds for granting the Motion during any hearing on the Motion.

## CONCLUSION

For the reasons set forth above and in the Reply, the Official Committee respectfully

requests that the Court enter an order that authorizes the Official Committee and the NCSG to

undertake a Bankruptcy Rule 2004 examination of the Financial Institutions by serving subpoenas

directly on the Financial Institutions.

New York, New York
Dated:  April 29, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ *Arik Preis*

Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma, L.P., et al.*

-and-

COLE SCHOTZ P.C.

By: /s/ *Justin R. Alberto*

Justin R. Alberto (admitted pro hac vice)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801

Tel: (302) 655-5000
Fax: (302) 658-6395
jalberto@coleschotz.com

*Efficiency Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P., et al.*