May 6, 2020

Honorable Robert Drain
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

Re: *In re Purdue Pharma L.P., et al, Case No. 19-23649 (RDD)*

Dear Judge Drain:

I am writing to request that the bar date for individual victims be moved to September 30th, 2020 in light of obstacles presented by the COVID-19 pandemic.

With two months remaining in the filing process, the Claim Summary published on April 30th shows that, *at most*, only 4,735 personal injury claims have been processed. This figure does not accurately reflect the population harmed by Purdue Pharma.[1]

I work for a non-profit founded in response to the overdose crisis, and our organization has been working to aggregate useful information and resources for those filing a claim with your court. In doing so, I have seen the difficulty many have in understanding their rights and engaging with the bankruptcy process—especially so, given the limitations of shelter-in-place ordinances across the country.

A contemporary US Bankruptcy case in California, *No. 19-30088 (DM)*, concerning the damages from fires ignited by Pacific Gas & Electric Company equipment, provides a comparable scenario: in the disaster of the PG&E fires, many lost their homes and suffered immense trauma, and were thus impaired from filing before the initial deadline. For these reasons, the bar date was successfully moved.[2]
The coronavirus pandemic has fundamentally disrupted our daily lives, forcing many to isolate and affecting the availability of vital public resources like library internet access or pro-bono legal services.

The universal difficulties presented by COVID-19 are then compounded with the specific challenges confronted by those with Substance Use Disorder. People who are unable to access the withdrawal medications or social support structures they rely on to survive are currently at higher risk of overdose and death.[3] Those who use drugs or are in recovery are primary stakeholders in this bankruptcy case, and their particular circumstances must be considered.

It's also important to note key elements of Purdue's Supplemental Notice Plan that have been explicitly obstructed or rendered moot by social distancing measures. Outlined in Doc 714, this plan includes a "boots on the ground approach" of attending various community events to hand out claims materials [¶71] and 4 weeks of video ads during film previews in 300 movie theaters across the country [¶65]. Public

---

[1] *In Doc 1059, the Ad Hoc Group of Individual Victims claims to speak for 27,000 people that have suffered from direct exposure to Purdue opioids. When accounting for these unprocessed claims, the figure is still too small. Also, the difference between 27,000 and 4,735 presents a clear issue: the filing process may not be as accessible to those without legal counsel.*
[2] *Doc 4293 of Case No. 19-30088 (DM)*
[3] *Volkow ND.Collision of the COVID-19 and Addiction Epidemics.Ann Intern Med.2020;doi:https://doi.org/10.7326/M20-1212*

gatherings are now impossible, so both tactics are non viable. The plan also describes the distribution of a one-page notice to all prescribers of Purdue brand-name medications to be posted or handed out to patients [¶73]. Depending on the circulation of physical materials by medical professionals who are already inundated by the impact of coronavirus is unsafe and ineffective. Furthermore, the Supplemental Notice Plan stresses its dependence on "earned" media to make efficient use of the advertising budget approved by the court. We must acknowledge that, for the foreseeable future, the bulk of public service media coverage will reasonably be dedicated to reinforcing pandemic protocols, meaning Purdue's media strategy will not be as effective as originally planned.

Both the homeless and incarcerated populations are important to account for in this case. According to data from the DOJ, approximately 50% of state and federal prisoners meet criteria for substance use disorder,[4] and homeless people face similar odds, as SAMHSA estimates 26% have a substance use disorder. Unfortunately, both groups are put under extreme duress by COVID-19.

Incarcerated people are unable to distance themselves from one another, and, as of a May 3rd report by the Bureau of Prisons, 1,926 federal inmates and 350 staff have tested positive for COVID-19, with 38 fatalities. Corey Dodge, incarcerated in Oregon, wrote to the court (Doc 1124) describing the likely predicament of many incarcerated claimants—he thinks he has a claim, but lacks the knowledge or resources to pursue his claim in a timely manner. The court cannot allow individuals to be denied their right to file amidst this public health emergency.

The bar date was set on February 3rd, nearly a month before the first case of COVID-19 was confirmed in New York State on March 1st. Stay home and essential work orders were not established until even later, on March 20th. Although the initial bar date was duly considered, it is now apparent that, by June 30th, approximately a third of the total filing period will be spent under shelter-in-place. The unforeseen inaccessibility brought about by coronavirus since then is impossible to ignore and must be addressed appropriately.

In the reevaluation of the bar date, the universal postponement of the Federal Income Tax deadline by 90 days provides a reasonable standard for comparison. Without an extension, the court risks excluding potential Creditors impaired by the pandemic and jeopardizing the legitimacy of the bankruptcy process.

Sincerely,

Harrison Cullen
Member, Researcher
Prescription Addiction Intervention Now

[4] Mumola CJ, Karberg JC. *Bureau of Justice Statistics Special Report: Drug Use and Dependence, State and Federal Prisoners, 2004.* U.S. DOJ, Office of Justice Programs; 2006. https://www.bjs.gov/content/pub/pdf/dudsfp04.pdf May 5, 2020.