DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF PRESENTMENT OF APPLICATION OF DEBTORS FOR AUTHORITY
TO RETAIN AND EMPLOY CORNERSTONE RESEARCH AS CONSULTANTS
TO THE DEBTORS *NUNC PRO TUNC* TO JANUARY 14, 2020**

**PLEASE TAKE NOTICE** that the annexed *Application of Debtors for Authority to*

*Retain and Employ Cornerstone Research as Consultants to the Debtors* Nunc Pro Tunc *to*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*January 14, 2020* (the "**Application**") will be presented for approval and signature to the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "**Court**") on **May 27, 2020 at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, unless a written objection to the Application is served and filed with proof of service with the Clerk of the Court, and a courtesy copy is delivered to the undersigned and to the chambers of the Honorable Robert D. Drain, so as to be received by **May 22, 2020 at 10:00 a.m. (prevailing Eastern Time)**, there will not be a hearing to consider the Application, and such Application may be signed and entered by the Court.

**PLEASE TAKE FURTHER NOTICE** that, if a written objection is timely filed and served with respect to the Application, a hearing (the "**Hearing**") will be held to consider the Application before the Court at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on a date to be announced.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma.  You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: May 13, 2020
New York, New York

                        DAVIS POLK & WARDWELL LLP

                        By: */s/ Eli J. Vonnegut*

                        450 Lexington Avenue
                        New York, New York 10017
                        Telephone: (212) 450-4000
                        Facsimile:  (212) 701-5800
                        Marshall S. Huebner
                        Benjamin S. Kaminetzky
                        James I. McClammy
                        Timothy Graulich
                        Eli J. Vonnegut
                        Christopher S. Robertson

                        *Counsel to the Debtors*
                        *and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 |
| Debtors. [1] | (Jointly Administered) |

### APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN AND EMPLOY CORNERSTONE RESEARCH AS CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO JANUARY 14, 2020

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") hereby represent in support of this application (this "**Application**"):

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On September 27, 2019 the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court in each of the chapter 11 cases.

2

4. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* [ECF No. 17].

**Relief Requested**

5. By this Application and pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the Debtors to retain and employ Cornerstone Research, Inc. ("**Cornerstone**") as consultants to the Debtors for the matters described herein, effective *nunc pro tunc* to January 14, 2020, pursuant to the engagement letter between Cornerstone, Davis Polk, and PPLP, a copy of which is attached hereto as **Exhibit B** (the "**Engagement Letter**").

6. In support of the relief requested herein, the Debtors submit the *Declaration of Thomas O. Powell in Support of Application of Debtors for Authority to Retain and Employ Cornerstone Research as Consultants to the Debtors Nunc Pro Tunc to January 14, 2020* (the "**Powell Declaration**"), attached hereto as **Exhibit C** and (ii) the *Declaration of Richard Silbert in Support of Application of Debtors for Authority to Retain and Employ Cornerstone Research as Consultants to the Debtors Nunc Pro Tunc to January 14, 2020* (the "**Silbert Declaration**"), attached hereto as **Exhibit D**.

**Scope of Cornerstone's Services**

7. Subject to the Court's approval, and as set forth more fully in the Engagement Letter, in consideration for the compensation contemplated therein, Cornerstone will, to the extent requested, provide certain consulting services (collectively, the "**Cornerstone Services**") to the Debtors, including: quantitative analysis regarding the valuation of claims brought against

3

the Debtors by claimants including, but not limited to, hospitals, insurers and other third party payors, ratepayers, personal injury claimants, NAS claimants, governmental claimants, and Native American tribes and other matters as may be determined by Davis Polk and Cornerstone, and, if applicable, any expert being supported by Cornerstone.

8. Should the Debtors request Cornerstone to perform additional services not contemplated by the Engagement Letter (the "**Out-of-Scope Services**"), the Debtors and Cornerstone will mutually agree in advance upon such services and fees for those services in writing. In the event the Out-of-Scope Services require an amendment to the Engagement Letter, the amendment will be subject to the Court's review upon proper application.

9. Subject to approval of this Application, Cornerstone has informed the Debtors that it is willing to serve as the Debtors' consultant and to perform the Cornerstone Services on matters arising during these chapter 11 cases.

### Cornerstone's Qualifications and the Need for Cornerstone's Services

10. The Debtors submit this Application because of the need to retain qualified consultants to assist the Debtors with certain critical tasks associated with guiding the Debtors through these chapter 11 cases, which require particular expertise. Specifically, the Debtors believe that consultants are needed to evaluate, advise, assist, and provide litigation support and expert testimony, as required, with respect to, among other things, claims analysis and analysis with respect to any allocation of the assets of the Debtors and their affiliates. As set forth in the Silbert Declaration, the Debtors believe that their retention of consultants is necessary and appropriate to enable them to evaluate these issues raised by the chapter 11 cases and effectively fulfill their statutory duties.

11. The Debtors selected Cornerstone to provide the Cornerstone Services due to Cornerstone's reputation and expertise in the fields of claim valuation, damages estimation,

4

economics, finance and related disciplines, and because Cornerstone's professionals have experience in providing high-quality economic and financial analysis to clients in all phases of commercial litigation and regulatory proceedings, including years of experience providing valuations of potential damages claims. As such, the retention of Cornerstone as consultant will promote the efficient administration of these chapter 11 cases.

12.   As set forth in the Powell Declaration, Cornerstone professionals have extensive experience in delivering services of this type in chapter 11 cases, including, PG&E Corp. and Pacific Gas and Electric Company, and Lehman Brothers Holdings Inc. Cornerstone also has extensive experience in delivering similar services outside of a chapter 11 context, including valuing asbestos-related claims on behalf of both manufacturers and insurers, valuing future cancer claims for a conglomerate spinning off a division to ensure that the spinoff has sufficient assets to meet future claims of cancer related liability and valuing future health claims from sports injuries.

13.   The Debtors previously employed Cornerstone from 2017 through 2019 with respect to *In Re: National Prescription Opiate Litigation* and numerous litigations filed in state courts against Purdue. Cornerstone supported Professor Iain Cockburn of Boston University, in his work evaluating and rebutting the liability and damages analyses put forward by various economics experts retained by two bellwether counties Summit and Cuyahoga. This work included assisting Professor Cockburn in analyzing various data sources used to quantify opioid-related prescriptions, marketing, mortality, and other outcomes and understand their underlying relationships. Although this engagement had concluded prior to the Petition Date, by virtue of its prior engagement, Cornerstone is familiar with the issues surrounding this matter, will be able to draw on its earlier data collection, and will be able to streamline its analysis under this

5

engagement and minimize costs to the estate. As a result, retaining Cornerstone is both efficient and cost effective.

14. In light of the foregoing, Cornerstone is well qualified and uniquely able to represent the Debtors as consultants pursuant to section 327(a) of the Bankruptcy Code, and the Cornerstone's retention would be in the best interest of the Debtors' estates, creditors, and other parties in interest.

## Cornerstone's Disinterestedness

15. Cornerstone has informed the Debtors that, as of the date hereof, except as set forth in the Powell Declaration, (a) Cornerstone has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases; (b) Cornerstone does not hold or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Cornerstone (i) is not a creditor, equity security holder, or an insider of the Debtors, and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Cornerstone professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the Southern District of New York, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

16. To the extent that the Application is granted, Cornerstone has agreed to waive any and all currently outstanding amounts owed for professional services rendered to the Debtors prior to the Petition Date.

17. The Debtors have been informed that Cornerstone will supplement the Powell Declaration if any facts or circumstances are discovered that require additional disclosure.

6

18. Based on the foregoing, the Debtors believe that Cornerstone is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

### Cornerstone's Compensation

19. The hourly billing rates for Cornerstone professionals expected to spend significant time on the engagement are set forth below. [2]

| Name | Title | 2020 Rate |
| --- | --- | --- |
| Sally Woodhouse | Vice President | $850 |
| Abe Chernin | Vice President | 830 |
| Penka Kovacheva | Principal | 705 |
| Rezwan Haque | Manager | 625 |
| Jamie Lee | Manager | 625 |
| Lucia Yanguas | Associate | 495 |
| Nolan Russell | Research Associate | 410 |
| Kyla King | Senior Analyst | 380 |
| Jeffrey McGill | Analyst | 345 |
| Robert Miller | Analyst | 320 |
| Eric Bazak | Analyst | 320 |
| Ruihan Guo | Analyst | 320 |

20. In addition to the hourly billing rates set forth herein, Cornerstone customarily charges its clients for all reimbursable expenses incurred, including photocopying charges, messengers, courier mail, overtime, overtime meals, late night transportation, travel, lodging, meal charges for business meetings, postage, printing, transcripts, filing fees, computer research, and similar items.

21. As set forth in the Powell Declaration, the Debtors understand that Cornerstone will apply to the Court for allowance of compensation and reimbursement of expenses for all professional services performed and expenses incurred after the Petition Date in accordance with

---

[2] Cornerstone's hourly rates are subject to change from time to time in the regular course of Cornerstone's business.

7

General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "**Fee Guidelines**"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

22. The Debtors respectfully submit that Cornerstone's rates and policies, as stated in the Powell Declaration, are reasonable and customary. Cornerstone's rates and policies are consistent with Cornerstone's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, Cornerstone's rates and policies are reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Cornerstone's substantial experience with respect to claim valuation and consulting services, and (d) the nature and scope of work to be performed by Cornerstone in these Chapter 11 Cases.

23. To the best of the Debtors' knowledge, neither Cornerstone nor any Cornerstone professional expected to assist the Debtors with these chapter 11 cases, has received or been promised any compensation for services rendered or to be rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code. Cornerstone has agreed not to share compensation received in connection with the Debtors' chapter 11 cases with any other person.

8

### No Duplication of Services

24. The Debtors intend that the Cornerstone Services will complement, and not duplicate, the services being rendered by any other professional retained in these chapter 11 cases. Cornerstone understands that the Debtors have retained and may retain additional professionals during the term of their engagement and agrees to work cooperatively with such professionals to avoid any duplication of services. The Debtors firmly believe that Cornerstone will provide these necessary services in a cost-effective, efficient, and expert manner.

### The Relief Requested Should Be Granted

25. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires that applications for retention of professionals include, among other things:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

26. As required by Bankruptcy Rule 2014(a), the above-described facts set forth in this Application and the information in the Exhibits attached hereto set forth: (a) the specific facts showing the necessity for Cornerstone's employment; (b) the reasons for the Debtors' selection of

9

Cornerstone as their consultant in connection with these chapter 11 cases; (c) the professional services proposed to be provided by Cornerstone; (d) the arrangement between the Debtors and Cornerstone with respect to Cornerstone's compensation, including information on hourly fees and the reasonableness thereof; and (e) to the best of the Debtors' knowledge, the extent of Cornerstone's connections, if any, to certain parties in interest in these matters.

27.  The Debtors respectfully submit that retaining and employing Cornerstone pursuant to the terms of this Application is necessary and in the best interests of the Debtors' estates and all parties in interest in these chapter 11 cases. Accordingly, Cornerstone's retention by the Debtors should be approved.

## *Nunc Pro Tunc* Relief is Warranted

28.  The Debtors believe that the employment of Cornerstone effective *nunc pro tunc* to January 14, 2020 is warranted under the circumstances of these chapter 11 cases so that Cornerstone may be compensated for its services prior to entry of an order approving Cornerstone's retention. Cornerstone has provided services to the Debtors in advance of approval of this Application in anticipation that its retention would be approved *nunc pro tunc* to January 14, 2020. The Debtors required Cornerstone to immediately dedicate substantial efforts to understanding and evaluating potential theories of liability and damages so that the Debtors could engage in discussions with various creditor groups with the benefit of Cornerstone's expert advice and assistance without delay. Further, the Debtors believe that no party-in-interest will be prejudiced by the granting of the *nunc pro tunc* employment because Cornerstone has provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

10

### **Notice**

29. Notice of this Application will be provided to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

30. A copy of this Application and any order approving it will also be made available on the Debtors' Case Information Website located at https://restructuring.primeclerk.com/purduepharma. Based on the circumstances surrounding this Application and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

### **No Previous Request**

31. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

11

WHEREFORE, the Debtors respectfully request entry of the Proposed Order and such other and further relief as is just.

May 13, 2020
New York, NY

**PURDUE PHARMA L.P.**
(for itself and on behalf of its affiliates
that are debtors and debtors in possession)

*/s/ Jon Lowne*

Jon Lowne
Senior Vice President and
Chief Financial Officer
Purdue Pharma L.P.