

**National Advocates for Pregnant Women**
N A P W

May 12, 2020

Davis Polk & Wardwell LLP
Attn: Marshall S. Huebner, Benjamin Kaminetzky, Timothy Graulich, Eli Vonnegut
450 Lexington Ave.
New York, NY 10017

Akin Bump Strauss Hauer & Feld LLP
Attn: Ira Dizengoff, Arik Preis, Mitchell Hurley
One Bryant Park
New York, NY 10036

Milbank LLP
Attn: Gerard Uzzi
55 Hudson Yards
New York, NY 10001

Debevoise & Plimpton LLP
Attn: Jeffrey Rosen, Maura K. Monaghan, M. Natasha Labovitz
919 Third Avenue
New York, NY 10022

Re: *In re Purdue Pharma* Debtors' Emergency Fund Expenditures – Proposed Guidelines

To the Counsel to the Debtors and Debtors in Possession and Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, LP, *In re Purdue Pharma*, et al.:

The signatories to this letter are experts in the fields of maternal and fetal health, child welfare, public health, and drug treatment, as well as advocacy groups committed to the rights and health of pregnant and parenting women and their children. We reach out to you, in your capacity as originators and partial overseers of the Emergency Fund described in paragraph 11 of and Exhibit A to the *Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, filed October 11, 2019, in the United States Bankruptcy Court for the Southern District of New York.

We write to highlight the importance of establishing guidelines for the distribution of Emergency Fund monies that require Fund resources to be invested in interventions to help individuals impacted by the opioid crisis that are rooted in **evidence-based practices and peer-reviewed research generally accepted within the medical community**. Similarly, we caution against the use of the Emergency Fund resources to bolster policies and practices rooted in fear rather than science, or which are punitive, not therapeutic, in nature. We further urge the Emergency Fund to support programs and services that not only fit these criteria but also which are unlikely to receive meaningful funding elsewhere, including a court-approved settlement or verdict in the National Prescription Opiate Litigation (commonly referred to as the "MDL litigation").

575 8th Avenue, 7th Floor, New York, New York 10018
phone: 212-255-9252 | fax 212-255-9253
NationalAdvocatesforPregnantWomen | @NAPW
www.advocatesforpregnantwomen.org

1

We believe that our clinical research, peer-reviewed writings, and hands-on experience allow us to offer meaningful guidance that can maximize the positive impact of Emergency Fund expenditures. We also are able to provide concrete examples of the types of services and programs that, to date, have received too little attention, but which have enormous potential to improve the well-being of pregnant and parenting women, neonates and children, who have been exposed to opioids or who may be harmed by misguided policies promulgated in response to opioid misuse and overdose.

First, we implore the administrators of the Emergency Fund, with respect to each of its funding decisions, to <u>embrace and to follow the best available scientific and medical evidence</u>. By investing in *proven and effective* pathways for drug misuse prevention, recovery, and avoidance of death, the Emergency Fund can promote health, prolong life, and reduce suffering. Any lesser standard risks squandering precious resources.

Second (and related to our first point), we caution against being swayed by popular, albeit ungrounded fears that may have gained public currency but do not comport with published, peer-reviewed data. For example, many decades of scientific research on child health development and clinical experience underscore that many risk factors associated with prenatal opiate use -- including tobacco exposure, poverty, genetic factors, and material hardships -- can have deleterious and long-term effects for neonatal health and childhood development. But properly controlled research studies, after considering other established risks, have not established that opiates themselves pose specific long-term health risks for children who are exposed in utero. To be sure, loud well-organized voices – including the self-styled "Opioid Justice Team" (created and driven primarily by plaintiffs' class action attorneys) – claim otherwise and allege that neonatal abstinence syndrome is not fully treatable, that prenatal exposure to opioids is likely to result in a wide range of possible permanent disabilities, and that vast amounts of resources are needed to treat a future generation of opioid-damaged children. Such claims, however, are unsupported by evidence-based research and are powerfully undercut by more than one century of experience in the U.S. with women of childbearing age ingesting opioids.

Indeed, such claims closely resemble the now-debunked myth of an impending "crack baby" crisis fanned by popular media late last century. But such claims, rooted in fear rather than science, have caused and continue to wreak substantial damage by stigmatizing women who used drugs and the children who are possibly exposed to drugs in utero. An untold number of families have been splintered by child protective services agencies reacting to alleged and frightening but unsubstantiated harms of prenatal drug exposure. Money that could better be spent on public education and maternal health is instead diverted to ineffectual, sometimes counterproductive, often punitive interventions.

Third (and related to our first two points), several effective health measures backed by robust scientific evidence and clinical experience currently lack sufficient funding and could immediately benefit large numbers of at-risk persons with Emergency Fund support. For example, all local jails should have access to health professionals to assess all incarcerated persons for opioid dependency and, where medically indicated, provide and monitor medication-assisted treatment (MAT) and arrange for uninterrupted MAT upon their release. In addition, because persons are at heightened risk for opioid overdose in the period after release from incarceration, jails, and prisons, without exception, should provide inmates with overdose prevention training and access to naloxone before they re-enter their communities. Further, state family and drug court judges are in need of better training about effective health-centered interventions, especially MAT, for opioid dependency and relapse, as so many court-ordered responses to opioid use and relapse are poorly aligned with appropriate medical practices, accepted standards of substance abuse treatment, and ethical precepts of care. These are just three of many examples. We can provide more information about these and other proven general health interventions upon request.

Fourth, to the extent, administrators wish to focus a portion of Emergency Fund resources on issues specifically arising from the maternal ingestion of opioids, or possible prenatal exposure to opioids (as suggested by the third bullet point of Exhibit A of the *Case Stipulation Among the Debtors*), clinical experience and peer-reviewed research again offer valuable guidance. For example, a strong and growing body of evidence points to the value, efficacy, and cost-effectiveness of promoting "rooming-in" with mother and family in promoting healthy child

575 8th Avenue, 7th Floor, New York, New York 10018
phone: 212-255-9252 | fax 212-255-9253
NationalAdvocatesforPregnantWomen | @NAPW
www.advocatesforpregnantwomen.org

2

outcomes. Accordingly, the Emergency Fund could usefully dedicate resources for the training of hospital staff and hospital-based social and child welfare workers on rooming-in and develop and disseminate rooming in best practice guides for medical centers. Similarly, there is much need to support education and training of child welfare services agencies and advocates about the traumatizing effects of child separation, the treatable symptoms of neonatal abstinence syndrome, and the importance of distinguishing between maternal use of controlled substances and parental fitness.

In closing, the undersigned health advocacy organizations and experts in the field of maternal and child health, stand ready to offer guidance, access to research and professional materials, and further expert contacts that might assist administrators of the Emergency Fund to undertake the Fund's important mission.

Please do not hesitate to contact us if we can be of further assistance.

Sincerely yours,

*[signature: Lynn M Paltrow]*

**Lynn M. Paltrow, JD**
Executive Director
**National Advocates for Pregnant Women**
575 8th Avenue, 7th Floor
New York, NY 10018
Phone: (212) 255-9252 | Fax (212) 255-9253
LMP@advocatesforpregnantwomen.org
www.advocatesforpregnantwomen.org

**Cindy Pearson**
Executive Director
**Sarah Christopherson**
Policy Advocacy Director
**National Women's Health Network**
1413 K Street NW, 4th Floor
Washington, DC 20005
716-427-2684| fax 202-682-2648
cpearson@nwhn.org, schristopherson@nwhn.org
www.nwhn.org

**Kristy Love**
Executive Director
**National Perinatal Association**
P.O. Box 392
Lonedell, MO 63060
314-440-7454
klove@nationalperinatal.org
www.nationalperinatal.org

575 8th Avenue, 7th Floor, New York, New York 10018
phone: 212-255-9252 | fax 212-255-9253
NationalAdvocatesforPregnantWomen | @NAPW
www.advocatesforpregnantwomen.org

3

**Dr. Mishka Terplan, MD, MPH, FACOG, DFASAM,**
Senior Physician Research Scientist
Friends Research Institute
1040 Park Ave, Suite 103
Baltimore, MD 21201
410-387-0298 x 240
mterplan@friendsresearch.org

**Dr. Deborah A. Frank, MD,**
Founder, Grow Clinic for Children Boston Medical Center,
Founder and Principal Investigator, Children's Health Watch, and
Professor of Child Health and Well-Being, Boston University School of Medicine*
801 Albany Street 1E
Boston, MA 02119
617-414-5251
dafrank@bu.edu

**Leo Beletsky, JD, MPH**
Director, Health in Justice Action Lab at Northeastern University
416 Huntington Avenue
Boston, MA 02115
617-373-5540| fax 617-373-5056
l.beletsky@northeastern.edu

*Institutions for identification purposes only

Cc:   Hon. Robert D. Drain
      United States Bankruptcy Judge

575 8th Avenue, 7th Floor, New York, New York 10018
phone: 212-255-9252 | fax 212-255-9253
NationalAdvocatesforPregnantWomen | @NAPW
www.advocatesforpregnantwomen.org

4