DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.[1]** | **(Jointly Administered)** |

**NOTICE OF HEARING ON DEBTORS'**
**MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND**
**501 AND FED. R. BANKR. P. 2002 AND 3003(c)(3) FOR ENTRY**
**OF AN ORDER (I) EXTENDING THE GENERAL BAR DATE FOR A LIMITED**
**PERIOD AND (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

 **PLEASE TAKE NOTICE** that on May 20, 2020, the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**") filed the *Debtors' Motion Pursuant to 11*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*U.S.C. §§ 105(a) and 501 and Federal Rules of Bankruptcy Procedure 2002 and 3003(c)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof* (the "**Motion**").  A hearing on the Motion will be held on **June 3, 2020, at 10:00 a.m. (Prevailing Eastern Time)** (the "**Hearing**") before the Honorable Judge Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

PLEASE TAKE FURTHER NOTICE that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma/.  You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.  The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-

searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 and the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*, entered on November 18, 2019 [Dkt. No. 498], so as to be filed and received no later than **May 31, 2020, at 4:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

      **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

      **PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the Motion, the Debtors may, after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion as Exhibit A, which may be entered without further notice or opportunity to be heard.

Dated:   May 20, 2020
       New York, New York

               DAVIS POLK & WARDWELL LLP

               By:  */s/ James I. McClammy*

               450 Lexington Avenue
               New York, New York 10017
               Telephone: (212) 450-4000
               Facsimile:  (212) 701-5800
               Marshall S. Huebner
               Benjamin S. Kaminetzky
               Timothy Graulich
               James I. McClammy
               Eli J. Vonnegut

               *Counsel to the Debtors*
               *and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| **Debtors.**[2] | (Jointly Administered) |

**DEBTORS' MOTION
PURSUANT TO 11 U.S.C. §§ 105(a) AND 501
AND FED. R. BANKR. P. 2002 AND 3003(c)(3) FOR ENTRY OF AN
ORDER (I) EXTENDING THE GENERAL BAR DATE FOR A LIMITED
PERIOD AND (II) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**," or "**Purdue**") respectfully represent as follows in support of this Motion:

**Introduction**

1.      The Debtors filed for chapter 11 protection to stop the erosion of value from the Debtors' estates as the result of a flood of litigations pending in various fora around the country and to preserve that value for better purposes, namely, for equitable distribution to allowed creditors.  Throughout these cases, the Debtors have emphasized the need to reorganize the Debtors as quickly and thoughtfully as possible in order to transfer the value of the Debtors'

---

[2] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717), and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

estates for the benefit of allowed claimants—and, ultimately, the American people—as every day and every dollar spent in bankruptcy represents time and money that are not being used to ameliorate the opioid crisis. The fixing of the General Bar Date and the commencement of one of the most unprecedented and elaborate noticing programs in chapter 11 history to inform potential claimants of their ability to file proofs of claim against these Debtors was just one of the many steps taken by the Debtors to ensure that these cases continue to move steadily toward emergence.

2. While the Debtors' noticing program has been immensely successful to date and would have provided adequate notice to potential claimants of the June 30, 2020 General Bar Date, the Debtors recognize that the COVID-19 pandemic has resulted in societal disruptions that may have placed added pressures on potential claimants who may wish to file claims in these chapter 11 cases. Thus, while the Debtors remain committed to moving these cases toward confirmation and emergence as expeditiously as possible, the Debtors are sensitive to the realities of the ongoing pandemic. As a result, the Debtors believe that a one-time, limited, thirty (30) day extension of the General Bar Date is reasonable and will not cause undue delay to the administration of these chapter 11 cases. The Official Committee of Unsecured Creditors (the "**Creditors' Committee**") supports the relief requested in this Motion. The Debtors and the Creditors' Committee have had communications with various of the Debtors' major creditor groups and understand that a number of them do not believe a general extension of the bar date is needed, but, that if there were to be an extension, then it should be modest, like thirty (30) days, and apply to all potential claimants. The Debtors are also aware of the recent letters filed on the docket requesting a ninety (90) day extension of the General Bar Date in light of the ongoing COVID-19 pandemic. Under the unique circumstances presented by the pandemic, the Debtors

believe that a thirty (30) day extension strikes the proper balance in the face of the requests for a general extension of the Bar Date where the Debtors and certain of its creditor constituencies believe notice is adequate. Such an extension resolves the competing views on what should be done in light of the ongoing COVID-19 pandemic, while remaining cognizant of the needs of these cases, the manner in which the noticing program has been and will continue to be conducted and optimized, the straightforward nature and simplicity of the proof of claim forms, and the substantial costs of delay.

**Relief Requested**

3.     By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing a one-time, thirty (30) day extension of the General Bar Date for all claimants, from Tuesday, June 30, 2020, at 5:00 p.m. (Prevailing Eastern Time) to **Thursday, July 30, 2020, at 5:00 p.m. (Prevailing Eastern Time)** (the "**Extended General Bar Date**").

4.     To provide adequate notice of the Extended General Bar Date, the Debtors also request approval of the form and manner of notice thereof (the "**Extended Notice Plan**") as described in the *Supplemental Declaration of Jeanne C. Finegan* filed contemporaneously herewith (the "**Supplemental Finegan Declaration**").

**Jurisdiction and Venue**

5.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the

Bankruptcy Rules, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6.     On September 15, 2019 (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27, 2019, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Creditors' Committee, a statutory committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

7.     These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [Dkt. No. 59] entered by the Court on September 18, 2019, in each of the chapter 11 cases.

8.     Information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [Dkt. No. 17].

9.     On November 6, 2019, this Court entered an order granting the Debtors' motion for a preliminary injunction in the adversary proceeding styled *Purdue Pharma L.P., et al. v.*

*Commw. of Mass., et al*., Adv. Proc. No. 19-08289 (RDD), halting the Pending Actions, to the extent that litigants had not voluntarily agreed to halt their Pending Actions. *See, e.g*., Second Am. Order Pursuant to 11 U.S.C. § 105(a) Granting Mot. for Prelim. Inj. (Bankr. S.D.N.Y. Nov. 6, 2019), Adv. Proc. No. 19-08289, Dkt. No. 105 (as amended from time to time). On March 3, 2020, this Court entered an order extending the preliminary injunction until and including Monday, October 5, 2020. *See, e.g*., Eighth Am. Order Pursuant to 11 U.S.C. § 105(a) Granting Mot. for Prelim. Inj. (Bankr. S.D.N.Y. Apr. 14, 2020), Adv. Proc. No. 19-08289, Dkt. No. 168 (as amended from time to time).

10.     On February 3, 2020, this Court set the General Bar Date for claims to be filed in these cases as **5:00 p.m. (Prevailing Eastern Time) on June 30, 2020**. (Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof (Feb. 3, 2020), Dkt. No. 800 (the "**Bar Date Order**").)

11.     On February 24, 2020, the Debtors' commenced one of the most robust noticing programs in chapter 11 history (the "**Supplemental Notice Plan**"), which is described in the *Declaration of Jeanne C. Finegan* (Jan. 3, 2020), Dkt. No. 719 (the "**Finegan Declaration**"), and the Supplemental Finegan Declaration.

12.     On March 3, 2020, this Court entered an order appointing the Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators and requiring that the Mediation Parties (defined therein) participate in mediation to resolve disputes between the Non-Federal Public Claimants (defined therein), on the one hand, and the Private Claimants (defined therein), on the other, as to the allocation of value/proceeds available from the Debtors' estates (the

"**Mediation**").  (Order Appointing Mediators (Mar. 3, 2020), Dkt. No. 895 (the "**Mediation Order**").)

13.     Beginning in March 2020, jurisdictions around the country began to issue orders requiring, *inter alia*, the closure of non-essential businesses, implementation of social distancing measures, and other societal disruptions in response to the ongoing COVID-19 pandemic.

14.     Beginning on May 7, 2020, individuals and nonprofit organizations began to file letters on this Court's docket requesting an extension of time to file personal injury claims for at least ninety (90) days until September 30, 2020, in light of the COVID-19 pandemic.  (*See, e.g.*, Ltr. from Harrison Cullen to the Hon. Robert D. Drain Regarding Request for Extension of the Bar Date (May 7, 2020), Dkt. No. 1133 (the "**Initial Extension Request**"); *see also* Dkt. Nos. 1141, 1142, 1145, 1149, 1153, 1157, 1158, 1160, 1168, 1174 (collectively, the "**Letter Requests**").)  On May 19, 2020, despite discussions with the Debtors regarding the filing of this Motion, the Ad Hoc Group of Non-Consenting States (the "**Non-Consenting States**") filed a highly unusual memorandum/statement supporting an extension of the General Bar Date for all claims until September 30, 2020 (the "**Non-Consenting States Statement**"). (Memorandum/Statement in Support of the Entry of an Order Extending the Bar Date (May 19, 2020), Dkt. No. 1173 (collectively, with the Letter Requests, the "**Extension Requests**").)

15.     As of May 20, 2020, the Debtors are sixty-eight (68) percent through the noticing program timeline and the plan has already over-delivered in a number of key areas and is expected to exceed the planned reach and frequency by June 30, 2020.  Suppl. Finegan Decl. ¶¶ 4, 21.

<h1 style="text-align: center;">**Basis for Relief**</h1>

### A. The Extended General Bar Date

16.     Prior to the expiration of the General Bar Date, this Court is authorized to extend the time within which to file proofs of claim "for cause shown." Fed. R. Bankr. P. 3003(c)(3); *In re Sasson Jeans, Inc.*, 96 B.R. 457, 459 (Bankr. S.D.N.Y. 1989) (citing *In re South Atl. Fin. Corp.*, 767 F.2d 814, 917 (11th Cir. 1985) (explaining that "for cause" is the standard for when a party moves for an extension prior to the expiration of the bar date)); *see also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). In light of the impact of the COVID-19 pandemic, the Debtors believe a reasonable, one-time, thirty (30) day extension that resolves the pending requests and further solidifies the effectiveness of the Debtors' far-reaching noticing program without undue expense and delay satisfies the cause standard. As noted, though, given the significant success of the Debtors' Supplemental Notice Plan to date, which would have seen the program completed by June 30, 2020 (even when accounting for the pandemic), the Debtors believe that anything more than a one-time, thirty (30) day extension of the General Bar Date is unnecessary and risks incurring unnecessary costs and delays to the detriment of these chapter 11 cases.

17.     Deadlines for the filing of proofs of claim, or "bar dates," are vital to a successful chapter 11 reorganization process. *In re Nutri\*Bevco, Inc*., 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990). Indeed, "[a]bsent the setting of a [claims] bar date, a [c]hapter 11 case could not be administered to a conclusion." *Id.* (quoting *In re Waterman S.S. Corp.*, 59 B.R. 724, 726 (Bankr. S.D.N.Y. 1986)) (alteration in original). Moreover, "[b]ar dates protect not only the debtor's interests, but creditors' interests as well" because they "establish[] a date by which the plan

10

proponent can determine which liabilities will be asserted against the estate." *Id.*; *In re XO Commc'ns, Inc.*, 301 B.R. 782, 791 (Bankr. S.D.N.Y. 2003), *aff'd*, No. 04-CIV-01489, 2004 WL 2414815 (S.D.N.Y. June 14, 2004) ("[A] bar [date] order in a chapter 11 case serves the important purpose of enabling the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.") (quotation omitted) (alternation in original); *see also* Jan. 24, 2020 Omnibus Hr'g Tr. 64:8-12 (The Court noting that "the rationale[] here for having a bar date . . . is perhaps more important in this case than some other cases" in order to "know . . . who [the] individuals are who say they have a material claim"). Recognizing the importance of a bar date to the orderly administration of these cases, the Debtors sought and obtained the Bar Date Order, which set the General Bar Date and allowed the Debtors to begin the herculean task of notifying the Debtors' potential claimants of their ability to file claims in these cases in order to develop the "known body of claims" necessary to move these cases forward. *See In re Nutri*Bevco*, 117 B.R. at 781.

18. Notably, none of the Extension Requests suggest that adequate notice of the General Bar Date has not been provided. To the contrary, all of the Extension Requests implicitly acknowledge that notice <u>has</u> been provided, and the one letter that appears to raise concerns about the adequacy of notice, admits that notice was provided on more than one occasion through the Debtors' Supplemental Notice Plan. *See* Ltr. from E. Vanicky to Hon. Robert D. Drain Regarding Request to Extend Bar Date for Personal Injury Claims (May 15, 2020), Dkt. No. 1158 (noting that he "saw two commercials announcing the claims action"); *see also In re Residential Capital, LLC*, No. 12-12020, 2015 WL 2256683, at *6 (Bankr. S.D.N.Y. May 11, 2015) ("The proper inquiry in evaluating notice is whether the party

giving notice acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice." (quoting *In re Best Prods. Co*., 140 B.R. 353, 357-58 (Bankr. S.D.N.Y. 1992))).    Another letter and the Non-Consenting States Statement only speculate on the adequacy of notice, alleging that certain measures proposed in the Finegan Declaration were rendered impossible or ineffective by social distancing measures.    Initial Extension Request, at 1-2 (noting that social distancing prevented the "boots on the ground approach" and the running of movie theater advertisements, and positing that distribution of one-page flyers to prescribers and their patients was "unsafe and ineffective", but implicitly acknowledging that notice was given to an incarcerated individual who described lacking the knowledge or resources to file his claim, the "likely predicament of many incarcerated claimants")[3]; Non-Consenting States Statement ¶ 8 (asserting, without support, that "[t]he pandemic has . . . undermined the effectiveness of Purdue's notice plan" and noting as an example the one-page flyers to prescribers).

19.    The evidence demonstrating the depth and expansiveness of the noticing program undermines any suggestions that potential claimants are not receiving adequate notice.    The Supplemental Notice Plan is undoubtedly one of the most robust noticing programs to be implemented in a chapter 11 case.   Suppl. Finegan Decl. ¶ 4.   The Supplemental Notice Plan is designed to reach ninety-five (95) percent of all adults in the United States at an average frequency of message exposure of six (6) times, and eighty (80) percent of all adults in Canada at an average frequency of three (3) times, and is currently on track to meet, if not exceed, these targets.   *Id.*   The Supplemental Notice Plan began in the United States on February 24, 2020,

---

[3] The claimant referenced in the Initial Extension Request was ultimately able to successfully file his proof of claim.  (Ltr. from C. Dodge to Court Regarding Class Action Lawsuit (May 1, 2020), Dkt. No. 1124 ("**Dodge Letter**").)

when a press release was issued informing those potential claimants who believe that they may have a claim against Purdue of the General Bar Date and how to file a claim against the Debtors in these cases, including how to request a claim form by mail, email, or a toll-free phone number. *Id.* ¶ 7. On May 1, 2020, an additional press release was issued reminding potential claimants about the General Bar Date and the need to file a claim in Purdue's bankruptcy before the deadline. *Id.* Both press releases were accompanied by Prime Clerk's ongoing earned media outreach, which is aimed at identifying, targeting, and encouraging relevant news outlets, organizations, and activists to share information regarding the General Bar Date and the claims filing process in an effort to amplify the reach and frequency of the program. *Id.* To date, the press releases have generated over 1,879 news stories regarding the General Bar Date and the claims filing process across the United States affecting an audience of approximately 79,923,500. *Id.* The estimated publicity value of the earned media for this outreach effort is $1,165.600. *Id.* Press releases were also issued in Canada on March 9, 2020, and May 1, 2020. *Id.* ¶ 14. The press releases were picked up by seventy-nine (79) outlets with a potential audience of 4,701,000. *Id.*.

20. Also on February 24, 2020, online display and banner advertisements, social media advertisements, and targeted internet keyword search terms were deployed in the United States and the U.S. territories to inform potential claimants of the deadline to file proofs of claim in these cases and direct them to the Debtors' dedicated claims website, PurduePharmaClaims.com (the "**Claims Website**"), which went live on February 21, 2020, for additional information on the General Bar Date and how to file claims. *Id.* ¶¶ 8, 13. On March 23, 2020, YouTube digital video advertisements began. *Id.* ¶ 8. To date, in the United States, the Supplemental Notice Plan has served over 167 million display media impressions,

which is outpacing planned impressions for the program, and over 694 million social media impressions, which has already exceeded planned impressions by nearly 109 million. *Id.* Collectively, the digital campaign, which includes display, keyword search terms, social media advertisements, and digital video advertisements, has served over 879 million impressions to date. *Id.* In the U.S. territories, the online display and social media campaigns have served over fifty (50) million impressions, and social media impressions have already surpassed planned impressions by over sixteen (16) million. *Id.* ¶ 13. On March 9, 2020, similar online and social media campaigns began in Canada. *Id.* ¶ 14. To date, the Canadian portion of the Supplemental Notice Plan has served over forty-six (46) million online and social media impressions. *Id.* To date, there have been approximately 400,000 user visits to the Claims Website, with over 872,000 page views or hits. *Id.* ¶ 8.

21.     On February 27, 2020, print media in the United States began with publication of the Bar Date Notice in the *New York Times*, *Wall Street Journal*, and *USA Today*. Suppl. Finegan Decl. ¶ 11. Between March 17, 2020, and March 22, 2020, a summary of the Bar Date Notice was published in seventy-nine (79) local newspapers in eleven (11) states chosen based on demographic and geographic research regarding opioid use. Finegan Decl. ¶¶ 35, 62; Suppl. Finegan Decl. ¶ 11. Collectively, advertisements in newspapers served approximately four (4) million impressions. Suppl. Finegan Decl. ¶ 11. To date, a summary of the Bar Date Notice has been published in six (6) consumer magazines: *People*, *People en Espanol*, *Sports Illustrated*, *Good Housekeeping*, *National Geographic*, and *Parents*. *Id.* Publications in *Men's Health* and *Parents Latina* are forthcoming. *Id.* The magazine publications are on track to serve approximately 120 million impressions. *Id.* A summary of the Bar Date Notice also has been published in the following eleven (11) trade publications: *Modern Healthcare*, *Journal of the*

*American Medical Association*, *American Nurse Today*, *Journal of Pain and Symptoms Management*, *Pain Medicine News*, *Journal of Opioid Management*, *Social Work Today*, *Journal of Obstetric Gynecologic and Neonatal Nursing*, *Neonatal Network*, *Advances in Neonatal Care*, and *Coal Age*. *Id.* Publications in *Counselor*, *Military Times*, and *VVA Veteran* are forthcoming. *Id.* In the U.S. territories, between March 24, 2020, and April 16, 2020, a summary of the Bar Date Notice was published twice in eleven (11) U.S. territorial newspapers. *Id.* ¶ 13. On March 23, 2020, print media in Canada began with publication of a summary of the Bar Date Notice in *Globe and Mail* and *Le Journal de Montreal*, followed by publication of a summary of the Bar Date Notice in *National Post* on March 24, 2020. *Id.* ¶ 14. A summary of the Bar Date Notice was also published in *Canadian Geographic*, *Canadian Living*, *Maclean's*, *Coup de Pouce*, *Chatelain* (English and French editions), and *Reader's Digest* (English and French editions). *Id.* Publication in *L'actualite* is forthcoming. *Id.*

22. On March 23, 2020, in the United States, thirty-second (English) and sixty-second (Spanish)[4] television (TV) legal notice commercials began airing on network and cable television and over-the-top television ("**OTT**"), and a sixty-second legal commercial began airing on network and streaming radio. *Id.* ¶ 9. Between March 23, 2020, and May 10, 2020, the TV commercial aired over 45,000 times on network TV and 182,000 times on cable TV, delivering over 1.1 billion impressions across all networks and cable. *Id.* The TV commercial also delivered over twelve (12) million impressions on OTT. *Id.* During the same period, the radio commercial aired over 177,000 times on network radio, delivering approximately 232 million impressions. *Id.* ¶ 10. The radio commercial also delivered over seventeen (17) million

---

[4] The English and Spanish commercials were identical in content. However, the Spanish television commercials were sixty seconds in length due to the additional number of words needed to convey the message upon translation. *Id.* ¶ 9 n.6.

impressions on streaming radio. *Id.* In the U.S. territories, between April 6, 2020, and April 26, 2020, the TV commercial aired on nine (9) TV stations over 450 times. *Id.* ¶ 13. Between March 30, 2020, and May 3, 2020, the radio commercial aired approximately 775 times on twelve (12) radio stations. *Id.*

23. From the beginning of the Supplemental Notice Plan, Prime Clerk has been actively managing and adjusting the Supplemental Notice Plan in order to maximize the reach and frequency—and optimize the costs—of the plan across all media channels, thereby minimizing waste and increasing visibility and response. *Id.* ¶¶ 15-16. For example, if a network declined to air the TV commercial or if a publication declined to publish the summary of the Bar Date Notice, Prime Clerk adjusted to a different network or publication. *Id.* ¶ 15. In addition, as a result of Prime Clerk's negotiations, additional TV spots aired on several networks in the United States, additional TV and radio spots aired in the U.S. territories, and seventy-five (75) of the eighty-two (82) billboards originally set to run in certain states for four weeks will receive extensions beyond that period. *Id.* ¶ 16.

24. Prime Clerk continued to adjust and optimize as a result of the nationwide shutdowns related to the COVID-19 pandemic. *Id.* ¶¶ 17-19. Following nationwide closures, media usage across all sectors reached historic highs in the United States, as millions of Americans began staying home in increasing amounts and tuning into their televisions and other devices as core sources of news, information, and entertainment. *Id.* ¶ 17. Accordingly, Prime Clerk adjusted the program to meet this unprecedented demand. For example, the thirty-second TV commercial was optimized to air in dayparts on networks that experienced an approximately thirty-five (35) percent increase in viewership in those key dayparts. *Id.* Online and social media consumption has also increased over the last two (2) months and, since mid-March the

online and social media campaigns in the Supplemental Notice Plan have collectively served over 658 million impressions in the United States alone. *Id.* ¶ 18. Following the closure of movie theaters across the country, Prime Clerk reallocated the movie theater budget to additional national TV spots and OTT in the states where the movie theater ads would have run. *Id.* As discussed above, Prime Clerk chose popular news segments on networks where viewers were increasingly tuning in for updates on COVID-19. When it became apparent that social-distancing measures made certain aspects of the Supplemental Notice Plan impossible (e.g., the "boots-on-the-ground" approach involving various community events), Prime Clerk mailed the two-page, full-color summary flyer of the Bar Date Notice to 178 mobile health teams for distribution as feasible within the confines of applicable social-distancing guidelines. *Id.* ¶ 19.

25. Based on the above, even when accounting for the impact of COVID-19, the Supplemental Notice Plan is on track to be completed on June 30, 2020, and is anticipated to outperform planned noticing across several metrics. *Id.* ¶ 21.

26. Rather than focusing on the adequacy of notice, the Extension Requests appear to take issue with the purported difficulty of completing a proof of claim form or obtaining supporting documentation in time to file a claim. However, the Supplemental Notice Plan already includes several features that can help reduce difficulties that those affected by COVID-19 may be experiencing in filing their claims. For example, each of the press releases, as well as all of the advertisements published in magazines, newspapers, and trade publications, have informed claimants that they can request to receive a proof of claim form by mail through the Claims Website or by contacting Prime Clerk through email, mail, or a toll-free phone number. *Id.* ¶ 20. The TV and radio commercials and the online and social media campaigns also have directed claimants to the Claims Website or to contact Prime Clerk in order to obtain more

information, which includes information about receiving a proof of claim form by mail. *Id.* Thus, the Supplemental Notice Plan accounts for the possibility that a claimant may not have access to a computer or a printer. *Id.* In addition, all of the proof of claim forms were developed to be simple forms, requiring that only baseline, necessary information be included at the time of the initial submission of a proof of claim form, and providing the flexibility for claimants to submit supporting documentation or otherwise amend or supplement their claim at a later time. (*See* Notice of Deadlines Requiring Filing of Proofs of Claim, at 5 (Feb. 3, 2020), Dkt. No. 800-1 ("You may attach to your completed proof of claim any documents on which the claim is based . . . if you would like, but you are not required to do so, and failure to attach any such documents will not affect your ability to submit a proof of claim or result in the denial of your claim."); Governmental Opioid Claimant Proof of Claim Form, at 2, 5 (Feb. 3, 2020), Dkt. 800-2 (requesting that claimants "provide . . . supporting documentation if [they] would like" but noting that they "are not required to" and may "amend or supplement [a] claim after it is filed"); Personal Injury Claimant Proof of Claim Form, at 2, 6 (Feb. 3, 2020), Dkt. No. 800-3 (same).) As a result, to the extent that the Extension Requests assert that a prolonged extension is required as a result of difficulty some claimants may have in obtaining certain medical records subject to applicable privacy laws (*see*, *e.g.*, Dkt. No. 1168 (noting challenges to obtaining medical and/or pharmaceutical records)), those concerns are simply not relevant here. (Dodge Letter, at 1 ("I filed the papers that 'Prime Clerk LLC' sent me to the best of my knowledge.").) Importantly, generalized claims of difficulties cannot justify the costs to these cases of a prolonged delay. To the extent that there exists more particularized cases of hardship, there are avenues for claimants to pursue appropriate relief on an individual basis, but a general extension of the General Bar Date—with its attendant costs—is not one of them.

27.     However, the Debtors are aware of and sympathetic to the impacts that the COVID-19 pandemic is having across the country—and around the world.  In light of these unprecedented circumstances—and despite the exceedingly positive performance of the Supplemental Notice Plan, the Debtors believe that a one-time, thirty (30) day extension of the General Bar Date from Tuesday, June 30, 2020, at 5:00 p.m. (Prevailing Eastern Time) to **Thursday, July 30, 2020, at 5:00 p.m. (Prevailing Eastern Time)** may relieve some of the added pressures caused by COVID-19.  The Debtors' proposed Extended General Bar Date reaches the right balance between the concerns raised in the recent Extension Requests and the need to avoid the attendant costs and delay of a prolonged bar date period on these chapter 11 cases—both as a result of the continuation of the Debtors' robust Supplemental Notice Plan and the potential impact of an unknown universe of claims on the ability of all stakeholders to progress these cases toward resolution.  The Debtors are cognizant of the potential impacts of COVID-19.  However, to provide ultimate relief to the Debtors' allowed creditors, these chapter 11 cases must proceed without undue delay so that the value of the estate can be transferred to allowed claimants and the American people to provide assistance and abate the opioid crisis.

28.     With the thirty (30) day extension, the bar date period in this case will have run for 178 days, much longer than the bar date periods in other mass tort bankruptcy cases.  *See, e.g.*, *In re Christian Bros.' Inst.*, No. 11-22820 (Bankr. S.D.N.Y. 2012), Dkt. No. 244 (91-day general bar date and 173-day bar date for sexual abuse claims); *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. 2009), Dkt. No. 4079 (75-day general bar date); *see also In re USA Gymnastics*, No. 18-09108 (Bankr. S.D. In. 2019), Dkt. No. 301 (63-day general bar date and sexual abuse claims bar date); *In re Insys Therapeutics, Inc.*, No. 19-11292 (Bankr. D. Del. 2019), Dkt. No. 294 (45-day bar date for all claims except claims brought by governmental units

and Native American Tribes); *In re TK Holdings, Inc.*, No. 17-11375 (Bankr. D. Del. 2017), Dkt. Nos. 959, 1395 (54-day general bar date and 94-day bar date for personal injury claims); *In re Blitz USA*, No. 11-13603 (Bankr. D. Del. 2013), Dkt. No. 1619 (61-day bar date for personal injury claims); *In re Roman Catholic Archbishop of Portland*, No. 04-37154 (Bankr. D. Or. 2005), Dkt. No. 755 (116-day bar date).  Moreover, the scope and length of the Debtors' vigorous noticing program does not come without substantial costs.  The Supplemental Notice Plan is on track to cost the Debtors' estates approximately $23,750,000, and as discussed further below, the Extended Notice Plan is estimated to cost the Debtors' estates an additional $700,000. Finegan Decl. ¶ 6; Suppl. Finegan Decl. ¶¶ 4, 23.  A ninety (90) day extension of the program likely will triple that cost.  Suppl. Finegan Decl. ¶ 23 n.16.

29.     For these reasons, the Debtors respectfully request that the Court authorize a one-time, limited extension of the General Bar Date for thirty (30) days to **Thursday, July 30, 2020, at 5:00 p.m. (Prevailing Eastern Time)**.

**B.  The Extended Notice Plan**

30.     The Debtors propose providing notice to all claimants of the Extended General Bar Date through online and social media advertisements, billboards, a press release, and earned media outreach, as described further below and in the Supplemental Finegan Declaration.  *See* Fed. R. Bankr. P. 2002; *see also* 11 U.S.C. § 105(a).

31.     The Extended Notice Plan has been designed to ensure that information regarding the Extended General Bar Date is fully publicized and, thus, will provide adequate notice of the Extended General Bar Date to all claimants. Suppl. Finegan Decl. ¶ 23.  *First*, under the Extended Notice Plan, information regarding the Extended General Bar Date will be placed

prominently on the restructuring website and Claims Website and will be shared with claimants when they call into Prime Clerk's call center. *Id.* All claimants who have already received notice to date—whether through mailings, including flyers, or the online and social media campaigns—have been directed to the Claims Website or Prime Clerk's call center for questions regarding the General Bar Date and how to file claims. *Id.* ¶ 20. Thus, to the extent that claimants continue to use those resources as they prepare to file their claims, they will receive notice of the Extended General Bar Date. *Second*, claimants will receive notice of the Extended General Bar Date through the continuation of the Debtors' robust online and social media campaigns as contemplated in the Extended Notice Plan. *Id.* ¶¶ 23-24. To date, display, online search, and social media advertisements have served over 975 million impressions in the United States, U.S. territories, and Canada. *Id.* ¶¶ 8, 13-14. Billboards also will continue beyond June 30, 2020, in West Virginia, Kentucky, Tennessee, and Alabama. *Id.* ¶ 23. The Extended Notice Plan will primarily continue to use these noticing measures to provide notice of the Extended General Bar Date to all claimants. Specifically, the Extended Notice Plan will include online media, such as display and banner advertisements, Google and Bing keyword search terms, and online search advertisements, and social media advertisements in the United States, the U.S. territories, and Canada. *Id.* Consistent with the Supplemental Notice Plan, the Extended Notice Plan will serve approximately 150 million impressions for the limited thirty (30) days and is estimated to cost approximately $700,000. *Id.* Each of the advertisements associated with these impressions will include either direct information about the Extended General Bar Date and/or will continue to direct claimants to the Claims Website or Prime Clerk's call center, where information regarding the Extended General Bar Date will be available. *Id.* The Extended

Notice Plan will also include a press release and the continuation of Prime Clerk's earned media outreach, which will disseminate information about the Extended General Bar Date. *Id.*

32.     The Debtors believe that the proposed Extended Notice Plan appropriately accounts for the unique facts and circumstances in these chapter 11 cases, including the unprecedented and unexpected challenges presented by the COVID-19 pandemic. Most importantly, the Debtors believe the Extended Notice Plan will provide adequate notice of the Extended General Bar Date to all claimants.  For these reasons, the Debtors respectfully request that their suggested form and manner of notice be approved.

### No Prior Request

33.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

### Notice

34.     Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [Dkt. No. 498] and available on the Debtors' restructuring case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this Motion. The Debtors respectfully submit that no further notice is required.

**WHEREFORE**, the Debtors respectfully request that this Court enter the attached Order, granting the relief requested herein.

Dated:  May 20, 2020
      New York, New York

*/s/ James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*
