UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| PRACTICE FUSION, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Docket No. 2:20-cr-11

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 JAN 27 PM 12:02

CLERK

BY_____
DEPUTY CLERK

## DEFERRED PROSECUTION AGREEMENT

Pursuant to the understandings specified below, the United States of America (the "Government") through its attorney Christina E. Nolan, United States Attorney for the District of Vermont (the "USAO" or the "Office"), and the defendant Practice Fusion, Inc. ("Practice Fusion" or the "Company"), under authority granted by its Board of Directors in the form of a Board Resolution (a copy of which is attached as **Exhibit A**), hereby enter into this Deferred Prosecution Agreement (the "Agreement").

### The Criminal Information

1.     Practice Fusion acknowledges and consents to the filing of a two count Information (the "Information") in the United States District Court for the District of Vermont (the "Court"), charging Practice Fusion with conspiring with a leading extended release opioid ("ERO") company ("Pharma Co. X") to receive remuneration in return for arranging for or recommending purchasing or ordering of a good or item for which payment may be made in whole or in part under a Federal health care program in violation of 18 U.S.C. § 371; and knowingly and willfully soliciting and receiving remuneration from Pharma Co. X in return for arranging for or recommending purchasing or ordering of a good or item for which payment may

be made in whole or in part under a Federal health care program in violation of 42 U.S.C. §
1320a-7b(b)(1). A copy of the Information is attached as **Exhibit B**. This Agreement shall take
effect upon filing of the Information (the "Effective Date").

## Acceptance of Responsibility and Admissions of Fact

2. The Office enters into this Agreement based on the individual circumstances
presented by this case and the Company, including:

       a. Practice Fusion stipulates that the facts set forth in the Statement of Facts,
attached hereto as **Exhibit C** and incorporated herein, are true and accurate, and admits, accepts
and acknowledges that it is responsible under United States laws for the acts of its officers and
employees as set forth in the Statement of Facts. Should the Office pursue the prosecution that is
deferred by this Agreement, Practice Fusion stipulates to the admissibility of the Statement of
Facts in any proceeding, including any trial and sentencing proceeding;

       b. Practice Fusion did not receive voluntary disclosure credit because it did
not voluntarily disclose to the Office, or any other Governmental agency, the conduct described
in the Statement of Facts. Even after the Office had issued formal legal process and requested
documents relating to Pharma Co. X, Practice Fusion did not identify and disclose to the Office
the conduct described in the Statement of Facts;

       c. Practice Fusion did not self-disclose any wrongdoing or identify any
potential legal or regulatory areas of concern to the Government; identify individual wrongdoers;
disclose facts relevant to the Government's investigation that the Government was not previously
aware of; or acknowledge and accept responsibility for any wrongdoing by Practice Fusion or
any of its employees. Practice Fusion informed the Government on multiple occasions that it
had found nothing troubling at the Company from a legal or regulatory perspective. Practice

Fusion additionally sought on multiple occasions to limit the documents produced in response to

Government subpoenas, which resulted in the parties conducting multiple meet and confer

conferences. In November 2018, the Office provided written notice to Practice Fusion that it did

not view Practice Fusion as cooperating with the Government's investigation and any professed

cooperation was deficient. Shortly thereafter, and as a consequence of the Office's view of

Practice Fusion's approach to the investigation, the Office pursued a portion of its investigation

covertly and in Spring 2019 advised Practice Fusion that it was prepared to charge Practice

Fusion.

    d.  Only after the Government advised Practice Fusion that it was prepared to

bring charges did Practice Fusion's conduct change. The terms of this Agreement reflect and

take into consideration Practice Fusion's belated cooperation. Upon learning of the

government's intent to bring charges, Practice Fusion promptly completed an additional internal

investigation. Practice Fusion and Allscripts communicated immediately with the Government

regarding Practice Fusion's intention and desire to cooperate fully with the Government.

Practice Fusion's cooperation at this stage included conducting additional investigation into the

conduct described in the Statement of Facts, making regular presentations to the Office,

producing additional documents as requested by the Government, agreeing to accept

responsibility, and collecting, analyzing, and preparing additional evidence and information to be

shared with the Office;

    e.  Practice Fusion also engaged in remedial measures, including the

following: promptly removing from its electronic health record ("EHR") all clinical decision

support ("CDS") alerts for which it had received remuneration from its pharmaceutical company

clients; conducting an immediate review of the medical appropriateness of its existing

pharmaceutical-sponsored CDS alerts; engaging outside counsel to conduct a review of all
sponsored CDS alerts; and pausing sale of all new sponsored CDS alerts pending completion of
expert and legal review;

        f.    Practice Fusion has enhanced and has committed to continuing to enhance
its compliance program and internal controls, including ensuring its compliance program
satisfies the requirements set forth in **Exhibit D** to this Agreement ("Compliance Addendum"),
developing and implementing additional role-based training on the Anti-Kickback Statute,
restructuring certain aspects of Practice Fusion's organization to provide for enhanced separation
between clinical and commercial activities and to provide increased supervision by qualified
individuals of the clinical initiatives undertaken by the business, and revising existing policies
and procedures to enhance controls around CDS alerts;

        g.    Based on the above, Practice Fusion's remediation, agreement to the
appointment of an Oversight Organization, implementation of the Compliance Addendum,
agreement to undertake the terms of the Additional Compliance Terms (which is hereby
incorporated by reference), and agreement to report to the Office as set forth in Paragraphs 7 and
8, the Office determined that an independent compliance monitor was unnecessary.

### Criminal Fine, Forfeiture, and Civil False Claims Act Payment

    3.    Practice Fusion agrees to pay a total of $145,000,000.00 to the United States and
participating States, which includes a criminal fine in the amount of $25,398,300.00 ("Criminal
Fine") and forfeiture of $959,700.00 ("Forfeiture") (together with the Criminal Fine, the
"Criminal Penalty"). The Criminal Penalty is based on the conduct described in the Information
and the Statement of Facts and shall be paid to the United States pursuant to this Agreement.
Practice Fusion additionally agrees to the payment of $118,642,000 to resolve allegations of

violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* Practice Fusion's conduct giving rise to violations of the False Claims Act are described in the Covered Conduct section of a Civil Settlement Agreement entered between the United States and Practice Fusion.

4.      Practice Fusion shall transfer the Criminal Penalty to the United States by no more than 10 days following the Effective Date of this Agreement. Such payment shall be made by wire instructions provided by the Office. If Practice Fusion fails to timely make the payment required under this paragraph, interest (at the rate specified in 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment, unless the Office, in its sole discretion, chooses to reinstate prosecution pursuant to Paragraphs 14, and 15 below. Practice Fusion certifies that the funds used to pay the Criminal Penalty are not the subject of any lien, security agreement, or other encumbrance. Transferring encumbered funds or failing to pass clean title to these funds in any way will be considered a breach of this Agreement and the United States shall be released from any of its obligations hereto.

5.      Practice Fusion agrees that the Criminal Penalty shall be treated as a penalty paid to the Government for all purposes, including all tax purposes. Practice Fusion agrees that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, local, or foreign tax for any portion of the Criminal Penalty that Practice Fusion has agreed to pay the United States pursuant to this Agreement.

### Practice Fusion's Non-Monetary Obligations

6.      Practice Fusion agrees to cooperate fully with the Office, and any other governmental agency designated by the Office regarding (1) any matter relating to the conduct described in the Information or Statement of Facts, (2) the Covered Conduct described in the Civil Settlement Agreement, (3) its privacy practices and use of personal health information, (4)

any investigation or prosecution of Practice Fusion's current or former officers, agents, affiliates, directors, and employees related to the issues described in (1) - (3); or (5) any matter relating to unlawful conduct by Practice Fusion's current or former customers and/or counterparty or client related to the issues described in (1) - (3). Practice Fusion's obligation to cooperate shall continue until the later of the date upon which all investigations and prosecutions arising out of:

        a.     the conduct described in the Statement of Facts;

        b.     the Covered Conduct described in the Civil Settlement Agreement; and

the end of the term specified in Paragraph 10. Practice Fusion's subsidiaries and majority-owned and controlled affiliates are required to cooperate fully to the same extent as Practice Fusion. As described further in Paragraph 28 below, should Practice Fusion cease to exist as a going concern, or should substantially all of its employees and/or its assets be transferred to another entity, such successor in interest shall be required to cooperate fully to the same extent as Practice Fusion.

    7.     It is understood that Practice Fusion shall:

        a.     truthfully and completely disclose all information with respect to the activities of Practice Fusion and its officers, agents, directors, affiliates and employees concerning all matters about which the Office inquires of it, which information can be used for any purpose;

        b.     cooperate fully with the Office, the Department of Justice Commercial Litigation Branch, Fraud Section ("Civil Frauds"), and any other law enforcement agency designated by the Office;

        c.     attend all meetings at which the Office requests its presence and use its best efforts to secure the attendance and truthful statements or testimony of any past or current

officers, directors, agents, or employees of Practice Fusion at any meeting, interview, deposition, sworn civil investigative demand ("CID") testimony, before the grand jury, or at trial or at any other court proceeding;

        d.     provide to the Office, upon request, any document, record, or other tangible evidence relating to matters about which the Office or any designated law enforcement agency inquires of it;

        e.     assemble, organize, and provide in a responsive and prompt fashion, and upon request, on an expedited schedule, all documents, records, information and other evidence in Practice Fusion's possession, custody or control, as may be requested by the Office, or other designated law enforcement agency;

        f.     volunteer and provide to the Office any information and documents that come to Practice Fusion's attention that may be relevant to the Office's investigation of this matter, any issue related to the Statement of Facts, and any issue that would fall within the scope of the duties of the Oversight Organization referred to in Paragraph 24;

        g.     provide testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or other proceeding as requested by the Office, or designated governmental agency, including, but not limited to information and testimony concerning the conduct set forth in the Information and Statements of Facts, and the Covered Conduct as described in the Civil Settlement Agreement;

        h.     bring to the Office's attention all criminal conduct by Practice Fusion or any of its agents or employees acting within the scope of their employment related to violations

of the Federal laws of the United States, as to which Practice Fusion's Board of Directors, senior management, or legal and compliance personnel are aware;

       i.     bring to the Office's attention any administrative, regulatory, civil or criminal proceeding or investigation by a federal or state government agency of Practice Fusion or any of its agents or employees acting within the scope of their employment;

       j.     not directly or indirectly, or through its counsel, enter into any Joint Defense Agreements, provide any advice, information, documents, or otherwise provide any assistance to any third parties (including current or former employees, directors, agents, officers, affiliates, counterparties, and/or clients) in connection with any investigation and/or enforcement action by the Office or Department of Justice involving any such party, related to the issues described in Paragraph 6 (1)-(3) above; except, Practice Fusion may provide information and documents as required by law or as directed by the Office; and

       k.     commit (i) no criminal offenses, or (ii) regulatory violations pertaining to the CDS issues involved in this Agreement under the federal laws of the United States subsequent to the execution of this Agreement.

Nothing in this paragraph shall require Practice Fusion to produce information in violation of law or protected by a valid claim of attorney-client privilege or the attorney-work-product doctrine.

8.     In addition to the obligations set forth in Paragraph 7, during the term of this Agreement, should the Company, or any of its subsidiaries or affiliates, learn of any evidence of a kickback violation by any other EHR vendor, Practice Fusion shall promptly report such evidence or allegation to the Office and Civil Frauds. This provision shall not apply (1) to the extent Practice Fusion is legally prohibited from reporting any evidence or allegation of

misconduct by any other EHR vendor or (2) to information obtained by Practice Fusion in the

course of due diligence or other information exchanged as part of a potential strategic transaction

or other corporate transaction.

        9.      For the duration of this Deferred Prosecution Agreement, Practice Fusion shall

publicly host, at its own expense, the documents underlying the conduct described in the

Statement of Facts. Such documents shall include, but not be limited to, the communications,

presentations, contracts, negotiations, analyses, and reports agreed to by the Office as reflecting

the relevant communications. Such documents shall be hosted on a public internet site and

Practice Fusion shall bear all costs and responsibility for redacting any personal information,

personal health information, trade secrets, and information sufficient to identify Pharma Co. X

and its employees and drug brands unless and until directed by the Office that such information

relating to Pharma Co. X need no longer be redacted.

        10.    Practice Fusion agrees that its obligation to cooperate pursuant to this agreement

and the Additional Compliance Terms, which shall commence on the Effective Date, will

continue for three (3) years from the date on which the Information is filed, unless otherwise

extended pursuant to Paragraph 15 below. Practice Fusion's obligation to cooperate is not

intended to apply in the event that a prosecution against Practice Fusion by this Office is pursued

and not deferred.

### Deferral of Prosecution

        11.    In consideration of Practice Fusion's entry into this Agreement, the Additional

Compliance Terms, and its commitment to: (a) accept and acknowledge responsibility for its

conduct, as described in the Statement of Facts, acknowledge the filing of the Information, and

admit the facts in the Statement of Facts; (b) cooperate with the Office and any other law

enforcement agency designated by this Office; (c) make the payments specified in this Agreement; (d) comply with Federal criminal laws (as provided herein in Paragraph **7**); and (e) otherwise comply with all of the terms of this Agreement and the Additional Compliance Terms, the Office shall recommend to the Court that prosecution of Practice Fusion on the Information be deferred for three (3) years from the Effective Date of this Agreement, except that the term of this Agreement may be extended as described in Paragraph 15 below, in the sole discretion of the Office.

12.      Practice Fusion shall expressly waive indictment and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, 18 U.S.C. § 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the District of Vermont for the period during which this Agreement is in effect. Practice Fusion further agrees to consent to venue in the United States District Court for the District of Vermont, and waive any statute of limitations defense should the Office pursue the prosecution of the crimes charged in the Information.

13.      The Office agrees that, if Practice Fusion is in compliance with all of its obligations under this Agreement, the Office will, within thirty (30) days after the expiration of the deferral-of-prosecution period (including any extensions thereof), seek dismissal, with prejudice of the Information filed against Practice Fusion pursuant to this Agreement, except in the event of a violation by Practice Fusion of any additional charges against Practice Fusion relating to its conduct as described in the admitted Statement of Facts.  This Agreement does not provide any protection against prosecution for any crimes except as set forth above and does not apply to any individual or entity other than Practice Fusion.  Practice Fusion and the Office understand that the Agreement to defer prosecution of Practice Fusion can only operate as

intended if the Court grants a waiver of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(2). Should the Court decline to do so—or should the Court decline to defer prosecution for any other reason—both the Office and Practice Fusion shall be released from any obligation imposed upon them by this Agreement, and this Agreement shall be null and void, except for the tolling provision set forth in Paragraph 12.

## Breach of the Agreement

14. It is understood that should the Office, in its sole discretion, but subject to the notice and cure provisions set forth in Paragraph 17 below, determine that Practice Fusion has: (a) knowingly given false, incomplete or misleading information, either during the term of this Agreement or in connection with the Office's investigation of the conduct described in the Information and Statement of Facts, or described in the Covered Conduct section of the Civil Settlement Agreement, (b) committed any crime under the Federal laws of the United States subsequent to the execution of this Agreement, or (c) otherwise violated any provision of this Agreement, including the terms of the Additional Compliance Terms, Practice Fusion shall, in the Office's sole discretion, thereafter be subject to prosecution for any federal criminal violation or suit for any civil cause of action—not released by the Civil Settlement Agreement—of which the Office has knowledge, including, but not limited to, a prosecution or civil action based on the Information, the Statement of Facts, the conduct described therein, or perjury and obstruction of justice. Any such prosecution or civil action may be premised on any information provided by or on behalf of Practice Fusion to the Office or any government agency at any time. In any such prosecution or civil action, it is understood that: (a) no charge or claim would be time-barred provided that such prosecution or civil action is brought within the applicable statute of limitations period, excluding the period from the Effective Date of this Agreement until its

11

termination; (b) Practice Fusion agrees to toll, and exclude from any calculation of time, the running of the applicable statute of limitations for the length of this Agreement starting from the Effective Date of this Agreement and including any extension of the deferral-of-prosecution period pursuant to Paragraph 15 below; and (c) Practice Fusion waives any objection to venue with respect to any charges in the District of Vermont. By this Agreement, Practice Fusion expressly intends to and hereby does waive its rights in the foregoing respects, including any right to make a claim premised on the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay. Such waivers are knowing and voluntary, and in express reliance on the advice of Practice Fusion's counsel.

15.     It is further agreed that in the event that the Office, in its sole discretion, determines that Practice Fusion has violated any provision of this Agreement, including failure to meet its obligations under this Agreement: (a) all statements made or acknowledged by or on behalf of Practice Fusion to the Office or any government agency, including, but not limited to the Statement of Facts, or any testimony given by Practice Fusion or by any agent of Practice Fusion before a grand jury, or elsewhere, whether before or after the Effective Date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal or civil proceedings hereinafter brought by the Office against Practice Fusion; and (b) Practice Fusion shall not assert any claim under the United States Constitution, Rule 11 (f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other Federal rule, that statements made or acknowledged by or on behalf of Practice Fusion before or after the Effective Date of this Agreement, or any leads derived therefrom, should be suppressed or otherwise excluded from evidence. It is the intent of this Agreement to waive any and all rights in the foregoing respects. In addition, if the Office

12

determines that Practice Fusion has violated this Agreement and has failed to cure any such

violation Practice Fusion agrees to admit, in any criminal or civil proceeding initiated by the

Office or Department of Justice against Practice Fusion for the conduct covered in the Statement

of Facts the following assertions: "The Pain CDS described in the Statement of Facts

successfully resulted in increased ERO sales by Pharma Co. X.  Based on the higher rate of

opioid prescriptions among providers who received the Pain CDS, the alerts caused tens of

thousands of additional prescriptions for extended release opioids, a substantial portion of which

were paid for by federal health care programs such as Medicare and Medicaid."  Provided that

Practice Fusion is in compliance with the Agreement, the assertions in the preceding sentences

are not part of the factual admissions made by Practice Fusion in this matter.  Practice Fusion

agrees that, in the event that the Office determines (subject to the notice and cure provisions set

forth in Paragraph 17 below) during the deferral-of-prosecution period described above in

Paragraph 11 (or any extensions thereof) that Practice Fusion has violated any provision of this

Agreement, an extension of the deferral-of-prosecution period may be imposed, in the sole

discretion of the Office, up to an additional two (2) years, but in no event shall the total term of

the deferral-of-prosecution period of this Agreement exceed five (5) years.  Any extension of the

deferral-of-prosecution period extends all terms of this Agreement for an equivalent period.

16.     Additionally, as a contractual remedy, Practice Fusion and the Office agree that in

the event that the Government determines that Practice Fusion has breached this Agreement, the

Office may require—at its sole discretion but subject to the notice and cure provisions set forth

in Paragraph 17 below, and in lieu of prosecuting the crimes deferred by this Agreement—

Practice Fusion to provide stipulated penalties of up to $25,000.00 per day for each day that

Practice Fusion is in breach of this Agreement.

17.     Should the Office determine that Practice Fusion has violated this Agreement and prior to pursuing the remedies as described in Paragraphs 14 through 16 or extending the deferral-of-prosecution period pursuant to Paragraph 15, the Office shall provide written notice to Practice Fusion of that determination (the "Written Notice"). Such Written Notice shall set forth: (a) the provision(s) breached; (b) the approximate date of the breach; (c) a description of the breach sufficient to permit Practice Fusion to cure or respond (as described below); and (d) an indication of which remedy the Office intends to pursue (prosecution under Paragraph 14, extension of the deferral-of-prosecution period under Paragraph 15, or Stipulated Penalties under Paragraph 16). If the Office seeks Stipulated Penalties pursuant to Paragraph 16, the Written Notice must also include the amount of Stipulated Penalties claimed by the Office as of the date of the Written Notice. After receiving such Written Notice, Practice Fusion shall have an opportunity to make a presentation to the Office to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the exercise of those remedies or in an extension of the deferral-of-prosecution period, including because the violation has been cured by Practice Fusion.

18.     If the Office demands Stipulated Penalties, Stipulated Penalties calculated from the date of breach to the date of payment shall be payable to the United States within fourteen (14) days, payable according to the same instructions as the Criminal Penalty, or as otherwise directed by the Office. Practice Fusion agrees that the United States District Court for the District of Vermont shall have jurisdiction over any action to collect such a penalty. If Practice Fusion fails to timely make a payment required in this Paragraph, interest (at the rate specified in 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment.

19.     Practice Fusion agrees that it is within the Office's sole discretion to choose, in the event of a violation, the remedies contained in Paragraphs 14 and 16 above, or instead to choose to extend the deferral-of-prosecution period pursuant to Paragraph 15, provided, however, if Practice Fusion's violation of this Agreement is limited to an untimely payment of the Criminal Penalty, the Office may elect instead to choose the additional financial penalties set forth in Paragraph 4 above.  Practice Fusion understands and agrees that the exercise of the Office's discretion under this Agreement is unreviewable by any court.

20.     It is further agreed that in the event that the Office, in its sole discretion, determines that Practice Fusion has violated any provision of this Agreement, including failure to meet its obligations under this Agreement:  (a) all statements made or acknowledged by or on behalf of Practice Fusion to the Office or any government agency, including, but not limited to the Statement of Facts, or any testimony given by Practice Fusion or by any agent of Practice Fusion before a grand jury, or elsewhere, whether before or after the Effective Date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal or civil proceedings hereinafter brought by the Office against Practice Fusion; and (b) Practice Fusion shall not assert any claim under the United States Constitution, Rule 11 (f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other Federal rule, that statements made or acknowledged by or on behalf of Practice Fusion before or after the Effective Date of this Agreement, or any leads derived therefrom, should be suppressed or otherwise excluded from evidence.

**Public Statements**

21.     Practice Fusion, having truthfully admitted to the facts in the Statement of Facts, agrees that it shall not, through its attorneys, agents, or employees, make any statement, in

litigation or otherwise, contradicting the Statement of Facts or its representations in this

Agreement. Consistent with this provision, Practice Fusion may raise defenses and/or assert

affirmative claims and defenses in any proceedings brought by private and/or public parties as

long as doing so does not contradict the Statement of Facts or such representations. Nothing in

this agreement shall restrict Practice Fusion's ability to defend itself in ancillary investigations or

proceedings brought by parties other than the Office and/or the United States Department of

Justice ("DOJ") provided that Practice Fusion may not contradict or deny the facts admitted to in

the Statement of Facts. Any such contradictory statement by Practice Fusion, its present or future

attorneys, agents, or employees, shall constitute a violation of this Agreement and Practice

Fusion thereafter shall be subject to prosecution and/or penalties as specified in Paragraphs 14

and 16 above, or the deferral-of-prosecution period shall be extended pursuant to Paragraph 15

above. The decision as to whether any such contradictory statement will be imputed to Practice

Fusion for the purpose of determining whether Practice Fusion has violated this Agreement shall

be within sole discretion of the Office. Upon the Office's notifying Practice Fusion of any such

contradictory statement, Practice Fusion may avoid a finding of violation of this Agreement by

repudiating such statement both to the recipient of such statements and to the Office within four

(4) business days after having been provided notice by the Office. Practice Fusion consents to

the public release by the Office, in its sole discretion, of any such repudiation. Nothing in this

Agreement is meant to affect the obligation of Practice Fusion or its officers, directors, agents or

employees to testify truthfully to the best of their personal knowledge and belief in any

proceeding. Nothing herein applies to statements made, in litigation or otherwise, by any present

or former officers, directors, agents or employees of Practice Fusion that are made solely in an

individual capacity, and not on behalf of Practice Fusion.

**Compliance Program**

22.    Practice Fusion represents that it has implemented and will continue to implement and maintain an effective compliance program designed to prevent and detect violations of the Anti-Kickback Statute.  In order to address deficiencies in its compliance controls, policies, and procedures, Practice Fusion shall maintain and implement a CDS compliance program that meets the requirements set forth in the compliance addendum (the "Compliance Addendum") (a copy of which is attached as **Exhibit D**).

23.    It is understood that Practice Fusion shall promptly notify the Office of (a) any deficiencies, failings, or matters requiring attention with respect to Practice Fusion's adoption, implementation, or maintenance of the compliance programs described in the Compliance Addendum; and (b) any steps taken or planned to be taken by Practice Fusion to address the identified deficiency, failing, or matter requiring attention.  Practice Fusion's failure to adopt, implement, or maintain a compliance program as described in the Compliance Addendum shall constitute a violation of this Agreement.

**Oversight Organization**

24.    Practice Fusion will implement the provisions regarding the Oversight Organization, as required in the addendum attached as **Exhibit E**.

**Additional Compliance Terms**

25.    Practice Fusion will implement the provisions and comply with the terms of the Additional Compliance Terms, as required in the addendum attached as **Exhibit G**.

**Limits of this Agreement**

26.    It is understood that this Agreement is binding on the Office, but does not bind any other Federal agencies, any state or local law enforcement agencies, any licensing

authorities, or any regulatory authorities. However, if requested by Practice Fusion, or its attorneys, the Office will bring to the attention of any such agencies, including, but not limited to, any regulators, as applicable, this Agreement, the cooperation of Practice Fusion, and Practice Fusion's compliance with its obligations under this Agreement.

27.     It is further understood that the Department of Justice has provided Practice Fusion with a nationwide release in connection with its conduct described in the Statement of Facts, as set forth in **Exhibit F**, and that DOJ shall not, except as otherwise contemplated by this Agreement or global resolution with the Office, institute additional or other criminal proceedings against Practice Fusion for the conduct described in the Statement of Facts.

### Sale, Merger, or Insolvency of Practice Fusion

28.     Except as may otherwise be agreed by the parties hereto in connection with a particular transaction, Practice Fusion agrees that in the event it sells, merges, or transfers all or substantially all of its business operations as they exist as of the Effective Date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall include in any contract for sale, merger or transfer, a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. However, the terms of this Agreement shall not be construed to apply to that portion of any purchaser's or successor in interest's assets or operations that are unrelated to Practice Fusion's assets or operations. The Government shall consider any request by Practice Fusion that the Government, in its sole discretion, waive the requirement that all provisions in this Paragraph bind Practice Fusion and/or any of its purchasers or any successors in interest.

29.     Practice Fusion also represents and warrants that it has reviewed its financial situation, that it currently is not insolvent as such term is defined in 11 U.S.C. § 101(32), and that

it reasonably believes that it shall remain solvent following payment to the Government of the Criminal Penalty. Further, Practice Fusion and the Government warrant that, in evaluating whether to execute this Agreement, they (1) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Practice Fusion, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to, and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Practice Fusion was or became indebted to on or after the Effective Date, within the meaning of 11 U.S.C. §548(a)(1).

30.     If within ninety-one (91) days of the Effective Date of this Agreement or any payment made by Practice Fusion under this Agreement, (i) Practice Fusion commences any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any involuntary case, action, or other proceeding against Practice Fusion under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of Practice Fusion's debts, or seeking to adjudicate Practice Fusion as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Practice Fusion or for all or part of Practice Fusion's, assets, or (ii) a third party commences against Practice Fusion any case, proceeding or other action referred to in clauses (a) or (b) above, and the same is not rescinded or dismissed within 60 days of the date of commencement of such case, proceeding or action, Practice Fusion agrees as follows:

a.     Practice Fusion's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Practice Fusion shall not argue or otherwise take the position in any such case, action, or proceeding that (i) Practice Fusion's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Practice Fusion was insolvent at the time this Agreement was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Practice Fusion.

b.     If any of Practice Fusion's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, in its sole discretion, may rescind the Agreement and bring any criminal, civil and/or administrative claim, action, or proceeding against Practice Fusion for the claims that would otherwise be covered by the release in Paragraph 13 above. Practice Fusion agrees that to the fullest extent of applicable law (i) any such criminal charge, civil claim, or other action, or proceeding brought by the Government would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the charge, case, action, or proceeding described in the first sentence of this Paragraph, and Practice Fusion shall not argue or otherwise contend that the Government's criminal charge, claim, action, or proceeding is subject to an automatic stay; (ii) Practice Fusion shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any charge, claim, action, or proceeding that is brought by the Government within sixty (60) calendar days of written notification to Practice Fusion that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) the Government has a valid claim against Practice Fusion in the amount of

the Criminal Penalty and the Government may pursue its charge, claim in the case, action, or

proceeding described in the first sentence of this Paragraph, as well as in any other case, action,

or proceeding.

        c.    Practice Fusion acknowledges that the agreements in this Paragraph are

provided in exchange for valuable consideration provided in this Agreement.

**Notice**

31.    Any notice or report to be provided to the Office under this agreement shall be

made by personal delivery, overnight delivery by a recognized delivery service, or registered or

certified mail, addressed to:

> United States Attorney's Office for the District of Vermont
> Attn:  Civil and Criminal Chiefs
> United States Courthouse and Federal Building
> Post Office Box 570
> 11 Elmwood Avenue, 3d Floor
> Burlington, VT 05402-0570

32.    Any notice or report to be provided to Practice Fusion under this agreement shall

be made by personal delivery, overnight delivery by a recognized delivery service, or registered

or certified mail, and email addressed to:

> ATTN: General Counsel
> Allscripts Healthcare Solutions, Inc.
> 222 Merchandise Mart Plaza, 20th Floor
> Chicago, IL 60654
> Legal.notices@allscripts.com
>
> Joshua S. Levy
> Aaron Katz
> ROPES & GRAY LLP
> Prudential Tower
> 800 Boylston Street
> Boston, MA 02199-3600

**Public Filing**

33.     Practice Fusion and the Office agree that, upon the submission of this Agreement (including the Statement of Facts and other attachments) to the Court, this Agreement and its attachments shall be filed publicly in the proceedings in the United States District Court for the District of Vermont.

34.     The parties understand that this Agreement reflects the unique facts of this case and is not intended as precedent for other cases.

## Execution in Counterparts

35.     This Agreement may be executed in one or more counterparts, each of which shall be considered effective as an original signature. Further, all facsimile and digital images of signatures shall be treated as originals for all purposes.

Dated at Burlington, in the District of Vermont, this ___ day of January, 2020.

                                        Respectfully submitted,

                                        UNITED STATES OF AMERICA

                                        CHRISTINA E. NOLAN
                                        United States Attorney

By:

                                        OWEN C.J. FOSTER
                                        MICHAEL P. DRESCHER
                                        Assistant U.S. Attorneys
                                        P.O. Box 570
                                        Burlington, VT 05402-0570
                                        (802) 951-6725
                                        Owen.C.J.Foster@usdoj.gov
                                        Michael.Drescher@usdoj.gov

Accepted and agreed to:

Eric L. Jacobson, Esq.
Secretary

Practice Fusion, Inc.

Joshua Levy, Esq.
Aaron Katz, Esq.
Patrick Welsh, Esq.
Ropes & Gray, LLP
Counsel to Practice Fusion, Inc.