AKIN GUMP STRAUSS HAUER & FELD LLP
Ira Dizengoff
Arik Preis
Mitchell Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF FILING OF STIPULATION AND AGREED ORDER AMONG THE OFFICIAL COMMITTEE AND OTHER PARTIES IN INTEREST REGARDING DISCOVERY AND THE SHARING OF INFORMATION IN THE CHAPTER 11 CASES**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in the above captioned chapter 11 cases (the "Chapter 11 Cases") of Purdue Pharma L.P. and certain of its affiliates that are debtors in possession (collectively, the "Debtors"), the Ad Hoc Group of Non-Consenting States (the "Non-Consenting States"), the ad hoc group of hospitals (the "Hospitals Ad Hoc Group"), Blue Cross Blue Shield of Louisiana ("BCBSLA"), United HealthCare Services, Inc. ("United," and together with BCBSLA, the "Signatory Third Party Payors"), the ad hoc group of proposed representatives of classes of privately insured parties who are plaintiffs and proposed class representatives in actions against the Debtors and other affiliated defendants (the "Ratepayers Ad Hoc Group") and the ad hoc group of NAS children and their next of kin (the "NAS Children Ad Hoc Group"),[2] by and through their respective undersigned counsel, recognize the need to streamline the critical and significant discovery efforts in the Chapter 11 Cases and, therefore, have agreed upon the terms of a stipulation and proposed agreed order (the "Stipulation"), attached hereto as **Exhibit A**.  In support of entry into the Stipulation, the Parties respectfully state as follows.

1.      The Parties to the Stipulation are unanimous in their conviction that comprehensive document and other discovery is essential to a successful resolution of these cases.  Among other things, the Debtors and members of the Sackler family and their affiliates and representatives (collectively, the "Sacklers") must provide searching disclosures concerning (i) their respective roles in the opioid crisis, (ii) the Sacklers' knowledge of the extent of the

---

[2] The Non-Consenting States, the Hospitals Ad Hoc Group, the Signatory Third Party Payors, the Ratepayers Ad Hoc Group and the NAS Children Ad Hoc Group are collectively referred to herein as the "Other Creditor Parties," and together with the Official Committee, the "Parties."  For the avoidance of doubt, the Stipulation may be amended, subject to the consent of each of the Parties, to include additional creditor parties in the Chapter 11 Cases.

2

crisis and (iii) the Debtors' liability—what they knew and when they knew it—in respect of the billions of dollars of transfers the Sacklers caused Purdue to make to Sackler family trusts while Purdue's liability mounted and potential other transfers of assets by the Sacklers and their trusts that do not trace back to the Debtors.

2.     The Parties, which are among (or represent the interests of) the sole beneficiaries of the Debtor' estates, recognize that the discovery required in these cases has been and will continue to be time-consuming and expensive. The Parties believe, however, that any settlement that may emerge from these cases—particularly one that results in releases for the Sacklers—cannot be perceived as fair or appropriate by important creditor constituents, or indeed the public at large, absent extensive, but properly focused discovery from the Debtors, the Sacklers and others. To be sure, the Parties agree that the cost to the estates of taking the discovery necessary in these cases should not be greater than required. But savings should not come at the expense of transparency by the Sacklers, the Debtors and others relating to what, at least prior to COVID-19, was described by many as the greatest public health crisis in modern American history.

3.     Cognizant of the tension between these two important interests, and after substantial discussions among themselves, the Parties have agreed to the extraordinary sharing and cooperation terms embodied in the Stipulation. As the Court is aware, there are multiple creditor constituencies in these cases, the interests of which substantially overlap but are not identical, and which, in an ordinary case, might be expected to apply to the Court for reimbursement of fees incurred in conducting separate investigations into identical or similar claims.

4.      These groups always have intended to avoid obvious duplication of effort, but the Parties to the Stipulation commit to do more—and to do so explicitly and in writing—in order to ensure that the scope of discovery in these cases is commensurate with the significant magnitude of the issues they present.  Hence, as discussed in more detail in the Stipulation, the Parties agree that the Official Committee will take the highly unusual step of making its professionals' work product and privileged communications available (subject to the discretion of the Official Committee) to the Other Creditor Parties that agree to the terms of the Stipulation and a mutually acceptable common interest agreement to be executed by the Parties to the Stipulation.

5.      In return, the Other Creditor Parties expressly stipulate and agree that they will not ask this Court for reimbursement from estate assets of fees they may incur conducting certain discovery being undertaken by the Official Committee.

6.      The Parties are unaware of another major case in which differently situated creditor groups formally agreed to this level of cooperation and information sharing or agreed in advance to forego estate reimbursement of fees associated with activities within the scope of their agreement.  The Parties believe, however, that such an extraordinary arrangement is warranted here and strikes the right balance between being appropriately cost-conscious and seeking to ensure that any settlement of claims against the Sacklers and the Debtors is preceded by appropriately searching and comprehensive discovery.

[*The remainder of this page has been left blank intentionally.*]

Dated: New York, New York  AKIN GUMP STRAUSS HAUER & FELD LLP
June 5, 2020

By: */s/ Arik Preis*
 Ira Dizengoff
 Arik Preis
 Mitchell Hurley
 Joseph L. Sorkin
 Sara L. Brauner
 One Bryant Park
 New York, New York 10036
 Telephone: (212) 872-1000
 Facsimile: (212) 872-1002
 idizengoff@akingump.com
 apreis@akingump.com
 mhurley@akingump.com
 jsorkin@akingump.com
 sbrauner@akingump.com

 *Counsel to the Official Committee of*
 *Unsecured Creditors Purdue Pharma L.P.,* et al.

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*, | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors.³ | ) | (Jointly Administered) |
| | ) | |

**STIPULATION AND AGREED ORDER AMONG THE OFFICIAL COMMITTEE
AND OTHER PARTIES IN INTEREST REGARDING DISCOVERY
AND THE SHARING OF INFORMATION IN THE CHAPTER 11 CASES**

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in the above captioned chapter 11 cases (the "Chapter 11 Cases") of Purdue Pharma L.P. and certain of its affiliates that are debtors in possession (collectively, the "Debtors"), the Ad Hoc Group of Non-Consenting States (the "Non-Consenting States"), the ad hoc group of hospitals (the "Hospitals Ad Hoc Group"), Blue Cross Blue Shield of Louisiana ("BCBSLA"), United HealthCare Services, Inc. ("United," and together with BCBSLA, the "Signatory Third Party Payors"), the ad hoc group of proposed representatives of classes of privately insured parties who are plaintiffs and proposed class representatives in actions against the Debtors and other affiliated defendants (the "Ratepayers Ad Hoc Group") and the ad hoc group of NAS children and their next

---

³ The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

of kin (the "NAS Children Ad Hoc Group"),[4] by and through their respective undersigned counsel, hereby stipulate and agree as set forth below.

**Recitals**

A.    On September 15, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

B.    On September 18, 2019, the Debtors filed the *Motion for a Preliminary Injunction* ("Preliminary Injunction Motion"), which motion sought a temporary stay of all litigation against the Debtors and to extend that protection to certain third parties, including all members of the Sackler family and their respective trusts and affiliates (the "Sacklers") and certain of their shareholders.

C.    On September 26, 2019, the Office of the United States Trustee for Region 2 appointed the Official Committee pursuant to Bankruptcy Code section 1102(a) to act as a fiduciary for and represent the interests of all unsecured creditors in the Chapter 11 Cases. *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated September 27, 2019 [ECF No. 131].

D.    The Official Committee supported the Preliminary Injunction Motion expressly so that the Debtors and the Sacklers would not be distracted from providing comprehensive disclosure to creditors *in these cases*. The Official Committee noted that it would consider as "bad faith"

---

[4] The Non-Consenting States, the Hospitals Ad Hoc Group, the Signatory Third Party Payors, the Ratepayers Ad Hoc Group and the NAS Children Ad Hoc Group are collectively referred to herein as the "Other Creditor Parties," and together with the Official Committee, the "Parties." For the avoidance of doubt, this Stipulation may be amended, subject to the consent of each of the Parties, to include additional creditor parties in the Chapter 11 Cases.

2

any attempt by the Sacklers to use their injunction as a means of avoiding the kind of comprehensive discovery that would be required of the Sacklers outside of bankruptcy. *See Official Committee of Unsecured Creditors' Statement in Support of Debtors' Motion for a Preliminary Injunction Pursuant to 11 U.S.C. § 105(a) and Statement in Support of Complaint for Injunctive Relief*, dated October 11, 2019 [Adv. Pro. No. 19-08289, ECF No. 79] ¶ 2.

E.   An order approving the Preliminary Injunction Motion initially was entered on October 11, 2019, became final on November 6, 2019, *see Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Pro. No. 19-08289, ECF No. 105], and has been subsequently amended (as amended, the "Preliminary Injunction").[5]

F.   On October 11, 2019, the Court also approved the *Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [ECF No. 291] (as subsequently amended by the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated November 20, 2019 [ECF No. 518], the "Case Stipulation").

G.   On January 28, 2020, following over three months of negotiation among the Debtors, the Official Committee and other parties in interest, the Court issued a comprehensive protective order [ECF No. 784] to govern discovery and diligence by the parties in the Chapter 11 Cases (as amended by the *Amended Protective Order*, dated March 20, 2020 [ECF No. 969] and the *Second Amended Protective Order*, which will be filed in the near term, the "Protective

---

[5] The *Tenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Pro. No. 19-08289, ECF No. 185] was entered by the Court on May 18, 2020, pursuant to which the Preliminary Injunction is extended through and including October 5, 2020.

Order").[6]  For the avoidance of doubt, each Party to this Stipulation is also a party to the Protective Order.

H.   As noted, the Official Committee has always made its intention to take comprehensive discovery from the Sacklers and the Debtors crystal clear.  The Non-Consenting States and certain other parties likewise have emphasized the crucial importance of such disclosures, including, but certainly not limited to, those expressly contemplated by the settlement framework proposed by the Debtors and the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "Ad Hoc Committee of Consenting Parties").[7]  Pursuant to the Case Stipulation, the Official Committee acceded to the Sacklers' request that they be given a chance to make disclosures on a voluntary basis, deferring its right to commence formal discovery against the Sacklers for several months.  Unfortunately, the discovery provided by the Sacklers on a voluntary basis was not satisfactory, amounting to just a few hundred documents produced by the Mortimer side of the family, and a few thousand produced by the Raymond side, many of which were publicly available or had already been produced in the multidistrict litigation pending in the United States District Court for the Northern District of Ohio under the caption *In re Nat'l Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio 2017).

I.   On March 25, 2020, the Official Committee filed the *Ex Parte Motion of the Official Committee of Unsecured Creditors of Purdue Pharma, et al. for an Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [ECF No. 981],

---

[6] An amended Protective Order consistent with the terms and limitations of this Stipulation will be filed in the near term.
[7] *See Noticing of Filing of Term Sheet with Ad Hoc Committee*, dated October 8, 2019 [ECF No. 257].

which motion was granted by order of the Court on March 27, 2020 [ECF No. 992] (as amended by the *Amended Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006 Authorizing Examination of Third Parties*, dated April 14, 2020 [ECF No. 1008], the "Official Committee Rule 2004 Order").  By the Official Committee Rule 2004 Order, the Court authorized the Official Committee, the Debtors, the Non-Consenting States and the Ad Hoc Committee of Consenting Parties, independently of one another (but coordinating as they see fit), to conduct an examination of, and obtain documents (including electronically stored information) from, the Initial Covered Sackler Persons.[8]  Following entry of the Official Committee Rule 2004 Order, certain other parties in interest sought authorization to conduct additional discovery both informally and pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, including, among others, the Non-Consenting States.[9]  The Official Committee also has been working for months, and continues to work, to obtain necessary evidence from the Debtors on a voluntary basis.

J.    Prior to supporting any plan of reorganization or other settlement in the Chapter 11 Cases, the Parties believe voluminous materials must be produced to the Official Committee, the Non-Consenting States and other creditor parties.

---

[8] The "Initial Covered Sackler Persons" are: (i) from Side A, Mortimer D.A., Ilene, Kathe, and Theresa; (ii) from Side B, Richard S., Jonathan D., David A., and the estate of Beverly Sackler, plus, in each case, their trusts and affiliates and any "other entity or person that directly or indirectly owns equity in, or has voting control over, any of the Debtors."  Case Stipulation ¶ 1.

[9] On April 7, 2020, the Non-Consenting States filed the *Ex Parte Motion of the Ad Hoc Group of Non-Consenting States for an Order Authorizing Examinations of Certain Financial Institutions Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure* [ECF No. 1019] ("Non-Consenting States' Rule 2004 Motion"), which motion was approved by order of the Court on May 12, 2020 [ECF No. 1143] (the "Non-Consenting States' Rule 2004 Order").  On May 4, 2020, the Ratepayers Ad Hoc Group filed the *Statement of the Private Insurance Class Claimants Concerning Discovery Disputes between Official Committee of Unsecured Creditors and the Sacklers and Application Under Bankruptcy Rule 2004* [ECF No. 1099].  Similarly, other parties in interest, including the NAS Children Ad Hoc Group, have sought discovery on an informal basis.

K.  The Parties are prepared to take extraordinary steps to contain the cost of discovery without unduly limiting its scope. Among other things, the Court has expressed concerns about duplication of efforts by multiple creditor groups and their advisors.[10] In an effort to alleviate concerns regarding the potential burden imposed on responding parties by multiple, overlapping subpoenas from numerous parties in interest, and to enable the parties to engage in wide-ranging discovery while preserving estate assets, the Parties have agreed to coordinate their efforts as set forth herein.

L.  The Debtors have been informed of the Parties' proposal to enter into this Stipulation and are generally supportive of the Parties' efforts to coordinate discovery efforts and to lessen the burden and expense on the Debtors' estates to the extent practicable. The Parties understand that nothing in this Stipulation is intended to express written (which shall include e-mail) consent on the part of the Debtors to respond to any particular discovery request and that the rights of the Debtors and the Parties with respect to particular requests and the scope of discovery more generally are fully preserved

M.  The Parties agree that they have a common and mutual interest in working together to coordinate discovery efforts to minimize costs and maximize the value available to the Debtors' creditors. Because of this common interest, the Parties intend to share, in accordance with the terms and limitations of this Stipulation, the Protective Order, and a mutually acceptable Joint Defense and Common Interest Agreement (the "Common Interest Agreement") to be executed by

---

[10] *See, e.g.*, Transcript of May 1, 2020 Hearing at 49:22–24 ("I don't want to see at the end of this case fee applications for four or five different sets of lawyers all doing the same thing in these discovery matters"); Official Committee Rule 2004 Order ¶ 4 (directing the parties "to efficiently coordinate the issuance of and compliance with the Subpoenas."); Non-Consenting States' Rule 2004 Order ¶ 9 (same).

the Parties in connection with this Stipulation, certain information otherwise protected by the attorney-client privilege, the joint-defense privilege, the work-product doctrine, the common-interest doctrine and all other applicable privileges, protections, or similar doctrines.

N.    The Parties have conferred, and will continue to confer, in good faith on a variety of matters with respect to the Chapter 11 Cases and, in view of the foregoing concerns, have reached the agreements set forth below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1.    The Parties will coordinate their efforts with one another in order to ensure that the comprehensive discovery required by these cases is carried out as efficiently as is practicable, as further described below.

2.    The Parties agree that they must undertake a thorough investigation (the "Estate Claims Investigation") concerning potential claims or causes of action belonging to the Debtors or their estates, including any such claims and causes of action against the Debtors' shareholders, their affiliates, and any related third parties as well as any and all related issues that are pertinent to a full investigation and analysis of any release sought by any party in connection with any potential chapter 11 plan or otherwise (collectively, the "Estate Causes of Action"), and that carrying out the Estate Claims Investigation will require robust document and deposition discovery from the Debtors, the Sacklers, and others.

3.    To encourage cooperation among and minimize duplication by the Other Creditor Parties, the Official Committee will instruct its outside counsel and other professionals (collectively, the "Official Committee Professionals") to share, in the sole discretion of the Official

7

Committee and its professionals, certain privileged and work product material relating to the Estate Claims Investigation with other Parties and their professionals, subject to the Common Interest Agreement, and otherwise in a manner designed to avoid waiving or relinquishing any privilege, work product or similar protection of such material. Such sharing may include, without limitation, "hot document" and other document review tagging and work product, presentations, factual analyses, financial analyses, mental impressions, memoranda and other documents and information summarizing and analyzing key documents produced by the Debtors, the Sacklers and their affiliates and any third parties in connection with the Estate Claims Investigation (collectively, the "Privileged Information") as well as the identity of certain key underlying documents produced by the Debtors, their shareholders or third parties. The Parties agree that any such sharing of Privileged Information or supporting documentation shall be in accordance with the terms of this Stipulation and the Common Interest Agreement, which is incorporated by reference into this Stipulation. For the avoidance of doubt, absent the express permission of the Debtors or order of the Court, the Official Committee will not share with other Parties material subject to a claim of privilege or work product by the Debtors that the Debtors have provided or may provide the Official Committee on a common interest basis.

4.     This Stipulation shall not apply to: (i) any examination of or discovery taken for the purpose of allocating, as between creditors or groups of creditors, the value and/or proceeds of the Debtors' estates, including, without limitation, from any settlements; (ii) the Non-Consenting States' Rule 2004 Motion and the information produced pursuant thereto and issues or further discovery directly arising from or related thereto; and (iii) the investigation by the Other Creditor Parties of the liability of the Debtors, their shareholders, and other third parties for whom the

8

Debtors intend to seek releases for claims belonging to such Other Creditor Parties ("OCP Investigations"); *provided*, *however*, that the Other Creditor Parties agree not to request reimbursement from the estate of any fees they incur reviewing documents (but not other investigation-related activities) in connection with their OCP Investigations and to coordinate closely with the Official Committee in respect of any such OCP Investigations in an effort to minimize any cost or duplication associated with such investigations.

5. For the avoidance of doubt, nothing in this Stipulation is intended to limit access by the Other Creditor Parties to discovery produced or obtained in connection with this proceeding, subject to the Protective Order.

6. As will be set forth in detail in the Common Interest Agreement, the Parties further agree that the disclosure of Privileged Information by the Official Committee to any of the other Parties shall not waive any applicable privilege, work product or other protection against disclosure to non-Parties, they will maintain the confidentiality and privileged nature of any Privileged Information they receive from the Official Committee in accordance with the terms and limitations of this Stipulation, the Protective Order and the Common Interest Agreement and they intend to preserve all privileges against disclosure to non-Parties to the maximum extent permitted by law.

7. In consideration of the foregoing receipt by the Other Creditor Parties of the Privileged Information and related documents, except as otherwise provided in paragraph 4 hereof, it is hereby stipulated and agreed that no Other Creditor Party shall seek to be reimbursed by the Debtors' estates for any fees or expenses that they or their professional advisors may incur conducting their own investigation of the Estate Causes of Action or engaging in other independent

9

activities that fall within the scope of the Estate Claims Investigation, including, without limitation, in connection with a plan of reorganization or other settlement or through the filing of a motion pursuant to Bankruptcy Code section 503(b) in recognition of a purported "substantial contribution" to the Chapter 11 Cases.

8.    For the avoidance of doubt, nothing contained herein shall preclude any Party from seeking independent discovery or conducting a separate, independent review of documents produced in the Chapter 11 Cases or participating in depositions concerning the Estate Causes of Action, *provided* that, except as otherwise provided in paragraph 4 hereof, such party does not seek reimbursement from the Debtors' estates of any fees or expenses in connection with any such independent investigation efforts. For the further avoidance of doubt, the Official Committee reserves its right to oppose (or support) the request of any party, including the Parties hereto, for independent discovery from the Debtors or otherwise.

9.    To the extent not prohibited by applicable law, no Party shall have or incur, and the Official Committee, each of its members (in their capacity as such) and each of the Official Committee Professionals is hereby released and exculpated from, any claim related to any act or omission arising from and after the Petition Date in connection with, relating to or arising out of the Estate Claims Investigation, including, *inter alia*, the preparation or sharing of the Privileged Information and underlying documents in accordance with the terms and limitations of this Stipulation, the Protective Order and the Common Interest Agreement (the "Exculpated Claims"), obligation, cause of action or liability for any Exculpated Claim.

10.    The Stipulation may be amended, subject to the consent of each of the Parties, to include additional creditor parties in the Chapter 11 Cases.

11. The Parties agree to cooperate with one another with respect to and as set forth herein and believe that entry into this Stipulation is consistent with their fiduciary duties, if any.

**STIPULATED AND AGREED:**

Dated: June 5, 2020
New York, New York

/s/ Arik Preis
AKIN GUMP STRAUSS HAUER
& FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
Bank of America Tower
New York, New York 10036
Telephone: (212) 872-1000

*Counsel to the Official Committee of Unsecured Creditors*

/s/ John W. Barrett
BARRETT LAW GROUP, P.A.
John W. (Don) Barrett
dbarrett@barrettlawgroup.com
David McMullan, Jr.
dmcmullan@barrettlawgroup.com
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488

*Counsel to the Hospitals Ad Hoc Group*

/s/ Andrew Troop
PILLSBURY WINTHROP SHAW
PITTMAN LLP
Andrew M. Troop
andrew.troop@pillsburylaw.com
31 West 52 St.
New York, NY 10019
Telephone: (212) 858-1000

*Counsel to the Non-Consenting States*

11

*/s/ Nicholas Kajon*
STEVENS & LEE, P.C.
Nicholas F. Kajon
nfk@stevenslee.com
Constantine D. Pourakis
cp@stevenslee.com
485 Madison Ave., 20th Floor
New York, NY 10022
Telephone: (212) 319-8500

*-and-*

MORGAN & MORGAN, P.A.
James Young
jyoung@forthepeople.com
76 S. Laura St., Suite 1100
Jacksonville, FL 32202
Telephone: (904) 361-0012

*-and-*

Juan R. Martinez
juanmartinez@forthepeople.com
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Counsel to the Ratepayers Ad Hoc Group*

*/s/ James R. Dugan, II*
THE DUGAN LAW FIRM, LLC
James R. Dugan, II
jdugan@dugan-lawfirm.com
David S. Scalia
dscalia@dugan-lawfirm.com
One Canal Place, Suite 1000
365 Canal Street
New Orleans, LA 70130
Telephone: (504) 648-0180

*-and-*

THE DUGAN LAW FIRM, LLC
TerriAnne Benedetto
tbenedetto@dugan-lawfirm.com
269 S. Third Street
Philadelphia, PA 19106
Telephone: (215) 620-2447

*- and -*

RAWLINGS & ASSOCIATES PLLC
Mark D. Fischer
mdf@rawlingsandassociates.com
1 Eden Parkway
La Grange, KY 40031
Telephone: (502) 814-2139

*- and -*

LOWEY DANNENBERG, P.C.
Gerald Lawrence
glawrence@lowey.com
Noelle Ruggiero
nruggiero@lowey.com
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914)-997-0500

*Counsel to Blue Cross Blue Shield of Louisiana*

*/s/ Thomas C. Mahlum*
ROBINS KAPLAN LLP
Thomas C. Mahlum
tmahlum@robinskaplan.com
Eric P. Barstad
ebarstad@robinskaplan.com
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

*-and-*

SHIPMAN & GOODWIN LLP
Eric Goldstein
egoldstein@goodwin.com
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5000

*Counsel to United HealthCare Services, Inc.*


**SO ORDERED.**

White Plains, New York
Dated: _____, 2020

                                                       THE HONORABLE ROBERT D. DRAIN
                                                       UNITED STATES BANKRUPTCY JUDGE