Gerard Uzzi
Alexander B. Lees
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Gregory P. Joseph
Mara Leventhal
JOSEPH HAGE AARONSON LLC
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone: (212) 407-1200
Facsimile: (212) 407-1280

*Counsel for the Raymond Sackler Family*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al*., | Case No. 19-23649 (RDD) |
| Debtors.[1] | Jointly Administered |

**OBJECTION OF THE RAYMOND SACKLER FAMILY TO THE PRIVATE
INSURANCE PLAINTIFFS' RULE 2004 MOTION [ECF NO. 1099] AND
STATEMENT IN RESPECT OF NOTICE OF STIPULATION AND AGREED
ORDER AMONG THE UCC AND OTHER PARTIES [ECF NO. 1231]**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 7

    A.    The Private Insurance Plaintiffs' Allegations Are Irrelevant to the Requested Rule 2004 Relief, but the Raymond Sackler Family Is Prepared to Respond to Them in Full When the Court Deems It Appropriate. ........................................... 7

    B.    The Raymond Sackler Family Has Made Extraordinary Disclosures in These Cases, with More to Come. ................................................................................ 8

    C.    The Requested Rule 2004 Examination Is Unnecessary. .................................... 10

    D.    The Downside of the Proposed Examination and Access by Additional Parties to Highly Sensitive and Confidential Family Personal Information Outweighs Any Conceivable Upside. ...................................................................................... 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bibhu LLC*,
  No. 17-10042, 2019 WL 171550 (Bankr. S.D.N.Y. Jan. 10, 2019) ........................................13

*In re Centennial Textiles, Inc.*,
  227 B.R. 606 (Bankr. S.D.N.Y. 1998) ...................................................................................11

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*,
  No. 09-11893, 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014) ........................................7

*In re SunEdison, Inc.*,
  562 B.R. 243 (Bankr. S.D.N.Y. 2017) ................................................................................7, 13

**Rules**

Fed. R. Bankr. P. 2004 ....................................................................................................................7

The Raymond Sackler family[2] hereby objects to the *Statement of the Private Insurance Class Claimants Concerning Discovery Disputes Between Official Committee of Unsecured Creditors and the Sacklers and Application Under Bankruptcy Rule 2004* (the "Motion") [ECF No. 1099], and in support of its objection, and in respect of the *Notice of Filing of Stipulation and Agreed Order Among The Official Committee and Other Parties in Interest Regarding Discovery and the Sharing of Information in the Chapter 11 Cases* (the "Notice of Stipulation") [ECF No. 1231], respectfully states as follows[3]:

**INTRODUCTION**

1. These chapter 11 cases are premised on the goal of dedicating Purdue's assets, through the Sackler families' voluntary relinquishment of their equity interests in Purdue, and an additional cash contribution of $3 billion (and potentially more depending upon the outcome of M&A transactions) from the Sackler families to address the opioid crisis directly and help communities in need. The Sackler families and those who have already indicated their support for the proposed settlement believe this is the most sensible way to resolve the litigation in which Purdue has been mired for years. While differences remain among the major parties and there is no certainty that those differences will be resolved, most parties seem aligned on the concept of using Purdue's bankruptcy cases to address the opioid crisis. It is a laudable goal, but one that remains fragile.

2. An extraordinary feature of the settlement framework that has been glossed over is that the dedication of Purdue's assets and the additional family contribution are not dependent upon any creditor proving that it has an actual allowed claim against Purdue – or even a viable

---

[2]   The Raymond Sackler family includes Richard Sackler, Jonathan Sackler, David Sackler, and the estate of the late Beverly Sackler.

[3]   Capitalized terms not defined herein have the same meanings as in the Motion.

1

cause of action against the Sacklers. Instead, they are dependent upon only two principal conditions: a complete and satisfactory resolution of pending and threatened litigation and an agreement among the major parties on how best to deploy and allocate these valuable assets. Estate fiduciaries and public officials collectively representing nearly every U.S. citizen have been in discussions with the Sackler families and otherwise working among themselves to see if these two conditions can be satisfied.

3.      The members of the Raymond Sackler family hope that progress will continue and that Purdue will be able to exit from bankruptcy promptly. They are eager to put behind them what they believe has been unfair scapegoating and shaming of their family. But the Raymond Sackler family also is eager to see the broader goal of these cases achieved: using resources to help ailing communities, consistent with the settlement framework.

4.      The Private Insurance Plaintiffs have proclaimed themselves to be an important constituency in these cases. They are not public officials or estate fiduciaries, however. Nor are they victims of the opioid crisis who have suffered physical injuries from the misuse of opioids (wherever fault may lie). Instead, they are class-action claimants who complain that they have been overcharged by their own private health insurance companies (which are separately filing claims in these cases) and seek to be economically compensated from the same settlement funds that others seek to use to address the opioid crisis. The Raymond Sackler family recognizes that parties are permitted to assert claims in a bankruptcy case and, to the extent the claims are allowed, participate economically in the available assets subject to the absolute priority rule. But the mere self-proclamation of importance does not assure the allowance of a claim. Nor does it mean that the party proclaiming its own importance should be recognized as being on par with the estate fiduciaries and public officials who are hard at work and expending substantial resources engaging

in extensive discovery of highly sensitive and confidential family personal information and analyzing the appropriateness of the settlement framework.

5.  The Private Insurance Plaintiffs seek to take a Rule 2004 examination of the Sackler families – one that involves highly sensitive and confidential family personal information and overlaps entirely with the examination already being conducted by the Debtors, the Official Committee of Unsecured Creditors ("UCC"), and both ad hoc groups of states. While, in general, Rule 2004 requests may be liberally granted, an examination is not a matter of right: good cause must be shown. Nowhere in their Motion do the Private Insurance Plaintiffs attempt to establish cause or explain why the examination already undertaken by estate fiduciaries and public officials is not enough. And they cannot. Instead, the Private Insurance Plaintiffs use their Motion as a platform to tarnish the Sackler families and try their claims in the press, with reckless and unsubstantiated assertions that are demonstrably false. In this regard, the Motion is highly irresponsible and not a valid invocation of Rule 2004.

6.  The Motion is not just an exercise in baseless innuendo. The Private Insurance Plaintiffs outright accuse the Sackler families of being obstructionist by refusing to make the extraordinary disclosures that have been demanded of them. The Private Insurance Plaintiffs know that this accusation is untrue. While a small handful of discovery disputes remain, the Raymond Sackler family has unquestionably already provided, is in the process of providing, or has agreed to provide an extraordinary volume of information in these cases. The Raymond Sackler family will not repeat what was set forth in its submissions in advance of the May 1 discovery hearing and its June 5 letter to the Court. *See* Limited Objection of the Raymond Sackler Family to the Ad Hoc Group of Non-Consenting States' Rule 2004 Motion ("April 26 Objection") [ECF No. 1087]; Response of the Raymond Sackler Family to The Official Committee's April 26 Discovery

3

Letter and Objection to Relief Requested Therein ("April 29 Objection") [ECF No. 1112]; June 5, 2020, letter to the Court ("June 5 Letter") delivered by email from Milbank LLP to the Court on June 5, 2020, at approximately 5:01 p.m.  It is enough that the Court recognized at the May 1 hearing that it "actually believe[s] a lot of information has been provided." Hr'g Tr. at 103:17-18, May 1, 2020 [ECF No. 1139] ("May 1 Hearing Tr.").

7. But is getting information even the real purpose of the Motion?  The pages of rhetoric employed by the Private Insurance Plaintiffs compel the conclusion that it is not.  The Private Insurance Plaintiffs state – without any support – that not just Purdue, but the Sackler families as well, are legally and financially liable to them, and in astronomical numbers.  Those allegations can only be aimed at provoking a substantive response from the Sackler families – which will then give the Private Insurance Plaintiffs still another opportunity to try their case in the press.  This Motion is designed not to generate the production of discovery, all of which will be made to estate fiduciaries and public officials in any event, but rather to trigger responses that will impose even more burdens on the Court and create additional distractions in the media.  This is an improper invocation of Rule 2004.

8. The Raymond Sackler family remains concerned that unqualified and premature declarations of victory like those of the Private Insurance Plaintiffs are designed to poison an intellectually honest assessment of the settlement framework.  Should enough progress be made in these cases to warrant solicitation of a plan, all parties entitled to vote will be permitted to make their own assessment of the sufficiency of the settlement once they receive a disclosure statement, which the Court necessarily will have approved as containing adequate information.  Access to highly sensitive confidential family personal information and duplication of discovery already being conducted by the UCC, Debtors, and public officials is unnecessary and unwarranted.  If the

Private Insurance Plaintiffs believe there is inadequate information contained in a disclosure statement, they can raise that with the Court at the appropriate time, and the Court will rule. Until that time, the Raymond Sackler family cautions all parties against accepting the assertions made by the Private Insurance Plaintiffs and others who make similar inflammatory statements as a basis to prejudice an honest determination of the adequacy of the settlement. The Raymond Sackler family unequivocally rejects these baseless assertions and is confident that when actual *evidence* is introduced, as opposed to the convenient soundbites that permeate the current discourse seemingly designed for media consumption, the record will demonstrate that the settlement framework is more than fair and appropriate and satisfies all applicable legal standards.

9. The Raymond Sackler family is aware of the Notice of Stipulation filed by the UCC. The Raymond Sackler family understands that the Stipulation is an attempt to resolve the Motion without input from the Sackler families, the target of the Motion. The Motion, however, has only been adjourned, not withdrawn, and the Stipulation contemplates the Private Insurance Plaintiffs continuing with their own discovery provided they agree to cover their own costs (something they are required to do in any event). Indeed, the Private Insurance Plaintiffs have made clear to the Raymond Sackler family their intent to proceed with the Motion if the Stipulation is not entered to their satisfaction, and to obtain family information from the UCC under the Stipulation if it is. Although the Raymond Sackler family applauds the UCC's efforts to be efficient, and, of course, the UCC is entitled to share its own information with any party it wishes, with or without a stipulation, the UCC must comply with the terms of the operative protective order [ECF No. 969] (the "Protective Order"). The Protective Order was heavily negotiated to permit an already enormous number of people access to a vast amount of highly sensitive and confidential family personal information.

10. The Raymond Sackler family has no objection to the Stipulation as written, provided the Stipulation does not relieve any party of its obligations to comply with the Protective Order, and provided that, as a non-party, the Raymond Sackler family's rights are completely reserved, including with respect to the recitals contained within the Stipulation. The Raymond Sackler family does not, however, consent to the unfettered further dissemination by the UCC, or any other party, of Raymond Sackler family Protected Information (as defined in the Protective Order) beyond what is already permitted under the heavily negotiated Protective Order.

11. The Private Insurance Plaintiffs' Motion is emblematic of the problem: parties with the most tenuous of claims, with no fiduciary duties to the estate, are attempting to access highly sensitive and confidential information of the family. As was discussed at the May 1 hearing and acknowledged by the Court, given the uniqueness of these cases and the number of parties who already have access to highly sensitive and confidential family personal information, proper policing of compliance with the Protective Order is impossible. The UCC has requested modifications to the Protective Order. The Raymond Sackler family is attempting in good faith to reach an agreement on modifications to the Protective Order and has exchanged proposed language with the UCC that would permit the UCC to disclose Protected Information necessary to share their conclusions confidentially with a limited number of persons consistent with the spirit and intent of the Stipulation as it has been explained to the Raymond Sackler family. But the Stipulation and any attendant modifications to the Protective Order cannot become a backdoor to widespread and unpoliceable dissemination of sensitive and protected family personal information.

12. No cause exists to allow the Private Insurance Plaintiffs to conduct a 2004 examination in addition to the examination already underway by estate fiduciaries and public

officials or to provide access to highly sensitive confidential family personal information. The Motion should be denied, and the parties to the Stipulation, should it be So Ordered by the Court, must continue to comply with the terms of the Protective Order.

## ARGUMENT

13. Rule 2004 provides that "[o]n motion of any party in interest, the court ***may*** order the examination of any entity." Fed. R. Bankr. P. 2004(a) (emphasis added). It does not say "shall." "The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court." *SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*, No. 09-11893, 2014 WL 5486279 at *2 (Bankr. S.D.N.Y. Oct. 30, 2014) (citations omitted). "The party seeking to conduct a Rule 2004 examination typically shows good cause by establishing that the proposed examination is necessary to establish the claim of the party seeking the examination, or denial of such request would cause the examiner undue hardship or injustice." *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) (internal quotation marks and alterations omitted).

14. The Private Insurance Plaintiffs have not satisfied their burden here for a variety of reasons.

    **A.**     **The Private Insurance Plaintiffs' Allegations Are Irrelevant to the Requested Rule 2004 Relief, but the Raymond Sackler Family Is Prepared to Respond to Them in Full When the Court Deems It Appropriate.**

15. The Motion is littered with self-serving, conclusory statements that have no relevance to the question whether an additional Rule 2004 examination should be authorized. The Raymond Sackler family does not seek now to litigate issues irrelevant to the requested Rule 2004 relief and therefore does not respond to the groundless and inflammatory allegations made by the Private Insurance Plaintiffs. The Raymond Sackler family does remind parties that it has shared with the estate fiduciaries and public officials an exhaustive, thoroughly-documented, point-by-

point rebuttal of the public narrative, and that the proposed settlement framework warrants full and fair consideration, as opposed to a premature discarding of it as suggested by the Private Insurance Plaintiffs' Motion.  Motion ¶ 5.

16.     The Raymond Sackler family assumes that the Court feels the same way now as it felt several months ago when it expressed its disinclination to allow the Sackler families to post discussion of their defenses on the record.  Given the Court's public statements on this subject, the Private Insurance Plaintiffs are undoubtedly aware of the Court's views:

> Lastly, on the subject of transparency, there is some brief discussion in the objection apparently faulting the Sacklers for having briefly filed their point of view on the docket and then retracting it.  The reason they retracted it is that I concluded that the filing, while understandable since they have not had the public forum to set forth their point of view on these issues, would severely retard the progress of this case, inevitably eliciting responses by every other party in this case and completely diverting the parties' attention from the tasks that need to be undertaken and completed.  So I directed them to withdraw it as I believe the 24 states know, but if they don't, they know it now.  They should not be faulted for it.  They were not trying to be opaque.

Hr'g Tr. at 99:23-110:11, March 18, 2020 [ECF No. 974].

17.     But if the Court concludes that the tenor of this chapter 11 case now has changed – and it is now somehow proper to permit a one-sided, self-serving, distorted discussion of the merits of plaintiffs' alleged claims – then the Sackler families should be granted leave to tell the world of their defenses.

> **B.     The Raymond Sackler Family Has Made Extraordinary Disclosures in These Cases, with More to Come.**

18.     As to the Private Insurance Plaintiffs' allegations that the Raymond Sackler family is not prepared to be forthcoming in discovery, the Motion rests on a series of misstatements.  To begin, the Private Insurance Plaintiffs premise their Motion on the purported "fact that the Sacklers are unwilling to provide financial disclosure."  Motion ¶ 4; *see also id.* ¶ 3.  In fact, the Raymond Sackler family has disclosed:

8

      a.      All of its wealth;

      b.      Where its wealth is located;

      c.      All of its trusts; and

      d.      Its entire trust structure.

Similarly, the Raymond Sackler family has not objected to the service of subpoenas on its financial institutions; it has not objected to the service of subpoenas on additional financial institutions; and it has not objected to unredacted copies of all subpoenaed bank records being received and reviewed on an Outside Professionals' Eyes Only basis by the professionals for the UCC and both ad hoc groups of states.

      19.      In addition, the Raymond Sackler Initial Covered Sackler Persons[4] ("R-ICSPs") – 44 trusts, six companies, and Richard, Jonathan, David, and Beverly Sackler individually – are in the process of providing their financial statements, bank records, tax filings, and audit reports going back to 2008. The R-ICSPs currently have over 90 lawyers reviewing responsive documents contained in the millions of pages comprising the ESI of Richard, Jonathan, and David Sackler, and Steve Ives, the manager of the Raymond Sackler family office. Since the May 1 hearing, the R-ICSPs have reviewed hundreds of thousands of pages of documents and produced over 30,000 additional pages; the R-ICSPs have agreed to the rolling production of privilege logs for the extensive document productions they are making; and they have successfully directed the IACs[5] to retain counsel to interface with the UCC and to accept service of discovery subpoenas directed at them. Beyond this, no fewer than seven additional individual members of the Raymond Sackler

---

[4]     "Initial Covered Sackler Person" is a term defined in the Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties ("Amended Stipulation") [ECF No. 518].

[5]     "IAC" is a term defined in the Amended Stipulation.

9

family (despite the fact that they did not have meaningful roles at Purdue) have agreed, at the UCC's insistence, to subject their personal emails and similar electronic documents to searches and productions.

20. The Private Insurance Plaintiffs make several bold conclusory statements regarding Purdue's (and by implication, the Sackler families') responsibility that run directly contrary to the facts. Their Motion does little more than trumpet some of the most provocative, unsubstantiated, and unprovable allegations that have been featured in the media. The Raymond Sackler family is capable of responding but will refrain from doing so pending direction from the Court.

### C. The Requested Rule 2004 Examination Is Unnecessary.

21. The Proposed Order accompanying the Motion demonstrates that the Private Insurance Plaintiffs are *not* seeking discovery relating to their unfounded assertions that Purdue caused consumers of health insurance to pay more than they should have (discovery that, in any event, would more properly be conducted during the claims-allowance process). Motion ¶ 10-14. Instead, the Private Insurance Plaintiffs seek financial information about the Sacker families and related entities, including information about distributions made by Purdue and the businesses of the IACs. *See* Exhibit A to Private Insurance Plaintiff's Proposed Order Directing Production of Documents Pursuant to Rule 2004 of the Rules of Bankruptcy Procedure [ECF No. 1099-1].

22. This information, however, is fully subsumed within the sprawling Rule 2004 examination currently being led by the UCC, and joined by the Debtors, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants ("Ad Hoc Committee"), and the Ad Hoc Group of Non-Consenting States.[6] The staggering scope of that existing examination, and

---

[6] *See* April 29 Objection [ECF No. 1112] at 7 ("The Subpoena is staggering in scale. It contains 88 document requests (122 requests including subparts) calling for documents and communications dating as far back as 1996."); Amended Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties [ECF No. 1008.]; May 1 Hearing Tr. at 47:12-20 (confirming that "the way we're doing this discovery

10

what the Raymond Sackler family has agreed to produce to the parties conducting it, already has been detailed in briefing before the Court. *See supra* Introduction; April 29 Objection at 1-2; *see also* June 5 Letter at 1-2, 7-8. As previously noted, the Court recognized during the May 1 hearing that a significant amount of information has already been provided. *See* May 1 Hearing Tr. at 103:18. There is no reason for the Private Insurance Plaintiffs, who are neither estate fiduciaries nor public officials, to conduct yet *another* examination of the Sackler families that duplicates the work already underway.

23. The UCC fully represents the interests of the Private Insurance Plaintiffs. As stated in the UCC's Rule 2019 statement, "[i]t is axiomatic . . . that the Committee represents, and owes fiduciary duties to, **all** unsecured creditors." Verified Statement of the UCC Pursuant to Bankruptcy Rule 2019 [ECF No. 218] ¶ 5 (emphasis in original). The unsecured class represented by the UCC expressly encompasses "private litigants," including "a class of health insurance payers who claim that their health insurance premiums increased as a result of the opioid crisis." *Id.* ¶ 6; Amended Verified Statement of the UCC Pursuant to Bankruptcy Rule 2019 [ECF No. 414] ¶ 3. The Debtors, too, serve as fiduciaries for all stakeholders, including putative unsecured creditors like the Private Insurance Plaintiffs. *See In re Centennial Textiles, Inc.,* 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998) ("As fiduciaries, the debtor in possession and its managers are obligated to treat all parties to the case fairly, maximize the value of the estate," and "owe[] fiduciary duties to the creditors and the estate." (internal citations omitted)).

24. Meanwhile, the Ad Hoc Committee and the Ad Hoc Group of Non-Consenting States both are participating in the same Rule 2004 examination. The Ad Hoc Group of Non-

---

is that [the UCC] and the Debtors and the non-consenting states and the consenting states all get" the same discovery at issue).

Consenting States in particular has led efforts to conduct third-party discovery of financial institutions it believes to have had relationships with Sackler family members or related entities and trusts. *See* Ex Parte Motion of the Ad Hoc Group of Non-Consenting States for an Order Authorizing Examinations of Certain Financial Institutions Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy [ECF No. 1019]. Together, both state groups represent essentially the entirety of the U.S. public.[7]

25. The Private Insurance Plaintiffs spend much of their Motion proclaiming their importance in these cases based on the size of their putative claims against Purdue. Most troubling, the Private Insurance Plaintiffs attempt to blur the distinction between the allegedly increased economic burden of "higher premiums" that they supposedly suffered and the harms that other "private parties suffered" as a consequence of the "opioid crisis." Motion ¶¶ 11, 45. The proposed settlement framework in these cases is designed to address urgent concerns related to opioid addiction treatment. The Private Insurance Plaintiffs cynically invoke concern for the "tragic human cost" of addiction, Motion ¶ 9, but that can most charitably be described as smokescreen for their effort to seize "a very significant percentage of Purdue's assets," Motion ¶ 45, for themselves, who have suffered no "tragic human cost." Motion ¶ 9.

26. The Private Insurance Plaintiffs' claims have not yet been allowed – and will likely never be allowed, given the innumerable problems with their theories – so their insistence on their importance to the chapter 11 process is entirely speculative at this point. Further, the Private Insurance Plaintiffs are not fiduciaries to the estates, and they are not public officials charged with

---

[7] *See* Verified Statement of the Ad Hoc Group of Non-Consenting States and Exhibit A [ECF No. 296, 296-1] (listing 24 states and the District of Columbia as its members); Ad Hoc Committee's Statement in Support of a Limited and Conditional Stay, *Purdue Pharma L.P. v. Commonwealth of Massachusetts*, No. 19-08289, Oct. 08, 2019 [ECF No. 62] (noting that the Ad Hoc Committee negotiated the settlement structure on behalf of "28 States and territories, 6 major cities, counties and subdivisions, a federally recognized American Indian Tribe, and the PEC representing over 2000 cities, counties, and tribes (as well as other litigants).").

12

advancing the interests of the U.S. public in general. This puts them on a fundamentally different footing in these cases than the parties who already are conducting expansive Rule 2004 discovery of both Sackler families. And it obviates the need for a wholly duplicative examination.

> D. **The Downside of the Proposed Examination and Access by Additional Parties to Highly Sensitive and Confidential Family Personal Information Outweighs Any Conceivable Upside.**

27. "In evaluating a request to conduct a Rule 2004 examination, the Court must balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re SunEdison, Inc.*, 562 B.R. at 243 (internal quotation marks omitted). "That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production." *Id*. (internal quotation marks omitted). "[T]he court must weigh the relevance of the discovery against the burden it will impose on the producing party." *In re Bibhu LLC*, No. 17-10042, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019).

28. The requested examination would expose family members' documents and information to an unacceptable and unnecessary risk. *See In re SunEdison, Inc.*, 562 B.R. at 250-53 (denying, in part, a Rule 2004 discovery application that would be unduly burdensome to the producing party). The Raymond Sackler family already has provided voluminous discovery to the UCC, Debtors, Ad Hoc Committee, and Ad Hoc Group of Non-Consenting States. *See* June 5 Letter at 1-2; *see also* April 29 Objection at 1-2. Much more information is yet to come, including not only personal emails, but also financial statements, tax returns, and audit materials. *See* June 5 Letter at 1-2; *see also* April 29 Objection at 1-2. These documents contain extremely sensitive personal and financial information.

29. As the Raymond Sackler family has previously informed the Court, the threat of confidential discovery materials becoming public notwithstanding the existence of a protective

13

order – either by mistake, misunderstanding, or malfeasance – is not a theoretical concern, but one that has been borne out by actual experience. *See* April 26 Objection ¶¶ 12-13. And this risk of public disclosure is not a concern only for the Raymond Sackler family, but for all constituents in these cases: leaks will present a serious and unnecessary distraction from the work being conducted already to conclude these cases, and they very likely could destroy value that is proposed to be dedicated to the U.S. public to ameliorate the opioid crisis. *See* April 26 Objection ¶¶ 10-11.

30.     As the Court recognized at the May 1 hearing, with every additional person who has access to these sensitive materials, the chances of a leak or other confidentiality problem increases – with no ability to trace any breach to its source. May 1 Hearing Tr. at 39:25-40:13 ("I mean, I had thought maybe I could go with your way and just say that if there's any leak, the claim of the state that leaked it would be equitably subordinated. But I tend to agree, if the numbers are so great here and, of course, the press would not leak it. I mean, a leak in a pleading obviously is easy. But if it's a leak to the press, it'll be impossible to trace."). This is not an academic point. Given the terms of the Protective Order and the number of people who are already getting access to this information under the Protective Order, the Protective Order itself offers limited practical protection. Allowing the Private Insurance Plaintiffs to have access to the Raymond Sackler family's sensitive personal information would expand the already-large universe of individuals who already have access, multiplying the risk of misuse or mistakes. Because the Private Insurance Plaintiffs' proposed Rule 2004 examination is unnecessary and duplicative, there is no reason for the Raymond Sackler family – and the estates generally – to take on the enhanced risk of further dissemination of sensitive and private materials.

## CONCLUSION

For the foregoing reasons, the Raymond Sackler family respectfully requests that the Court deny the Motion and grant the Raymond Sackler family such other and further relief as is just and proper.

Dated: June 16, 2020
New York, New York

Respectfully submitted,

*/s/ Gerard Uzzi*
Gerard Uzzi
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219

*/s/ Gregory P. Joseph*
Gregory P. Joseph
Mara Leventhal
**JOSEPH HAGE AARONSON LLC**
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone:  (212) 407-1200
Facsimile:  (212) 407-1280

*Counsel for the Raymond Sackler Family*

15