REDACTED PURSUANT TO PROTECTIVE ORDER

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Purdue Pharma L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE'S OMNIBUS *EX PARTE* MOTION FOR**
**AUTHORIZATION TO CONDUCT EXAMINATIONS PURSUANT**
**TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9016**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

JURISDICTION AND VENUE ....................................................................................................4

RELEVANT BACKGROUND....................................................................................................7

RELIEF REQUESTED................................................................................................................20

BASIS FOR RELIEF ..................................................................................................................20

COMPLIANCE WITH RULES ..................................................................................................22

NOTICE .......................................................................................................................................22

NO PRIOR REQUEST ...............................................................................................................22

RESERVATION OF RIGHTS ...................................................................................................22

CONCLUSION.............................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ...................................................................22

*In re Ecam Publ'ns, Inc.*,
    131 B.R. 556 (Bankr. S.D.N.Y. 1991) ...................................................................22

*In re Enron Corp.*,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002) ...................................................................22

*In re Hughes*,
    281 B.R. 224 (Bankr. S.D.N.Y. 2002) ...................................................................22

*In re Madison Williams & Co., LLC*,
    No. 11-15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ...........................21

*In re Metiom, Inc.*,
    318 B.R. 263 (S.D.N.Y. 2004) ...............................................................................23

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) .............................................................21, 22

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re: Bernard L. Madoff)*,
    No. 09-11893 (SMB), 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014)..................21, 22

*In re Wilcher*,
    56 B.R. 428 (Bankr. N.D. Ill. 1985) ......................................................................21

**Statutes**

11 U.S.C. § 1103.................................................................................................................22

28 U.S.C. § 157...................................................................................................................4

28 U.S.C. § 1334.................................................................................................................4

28 U.S.C. § 1408.................................................................................................................4

REDACTED PURSUANT TO PROTECTIVE ORDER

**Other Authorities**

Fed. R. Bankr. P. 2004 ................................................................................................... *passim*

Fed. R. Bankr. P. 9016 ..............................................................................................4, 20

N.Y. Bankruptcy Rule 9013-1(a) .....................................................................................23

Jared S. Hopkins, *At Purdue Pharma, Business Slumps as Opioid Lawsuits
  Mount*, Wall St. J. (June 30, 2019) ..........................................................................13

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Official Committee of Unsecured Creditors (the "**Official Committee**") of Purdue Pharma L.P. ("**Purdue**") and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**," and together with their non-Debtor affiliates, the "**Company**"), by and through its undersigned counsel, hereby submits this *ex parte* motion (the "**Motion**") for entry of an order authorizing it to conduct examinations of and seek discovery from:

(i)     the so-called independent associated companies (as defined below, the "**IACs**"),

(ii)    Stuart Baker, a long-time lawyer and advisor to the Sacklers and Purdue who also occupied hundreds of executive positions at the IACs and the Debtors and other positions with respect to the Sackler trusts that own the Debtors,

(iii)   entities jointly owned by the two sides of the Sackler family in addition to the IACs as defined herein ("**Other II Way Entities**" or "**OTWs**"), and

(iv)    the investment firm Moab Capital ("**Moab**"), an entity that David Sackler apparently co-founded, and in which Sackler family members are (or have) invested, and which holds some of the Sacklers' electronically stored information.

In support of its Motion, the Official Committee respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      Venue is proper under 28 U.S.C. § 1408.

3.      The bases for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rules 2004 and 9016.

## <u>INTRODUCTION</u>

4.      The subjects of the Motion—the IACs, Stuart Baker, the Other II Way Entities and Moab—all undoubtedly have information of great importance to the Official Committee's ability to maximize value available for distribution to creditors and to combat the opioid crisis. The Official Committee believes that responsive documents in the immediate possession of these Sackler affiliates should have been, and should be, gathered and produced by the Sacklers in response to informal requests for information the Official Committee provided to the Sackler family pursuant to the Amended Case Stipulation last year (the "**<u>Requests</u>**"), and the formal subpoenas the Official Committee served on March 31, 2020 (the "**<u>Subpoenas</u>**").

5.      The Sacklers have taken a contrary view, and have asked the Official Committee to direct its Requests for such documents to a number of different law firms who, the Official Committee has been advised, represent those parties. The Official Committee sought to work within the Sacklers' preferred framework, providing the Requests and Subpoenas to counsel identified by the Sacklers, and attempting to "meet and confer" to obtain responsive documents from those parties directly and without additional subpoenas. Those efforts continue, but have run into serious pitfalls, including the fact that Norton Rose Fulbright ("**<u>Norton Rose</u>**")—the firm that the Official Committee was directed to with regard to its information and document requests regarding the IACs—apparently has had a conflict preventing it from providing discovery to the Official Committee on behalf of the IACs. The Official Committee was not notified of the conflict until June 5, 2020.

6.      The information the Official Committee seeks is of critical importance to these cases. Proceeding by Rule 2004 to get that information is important both to (i) ensure that the subjects of this Motion respond to the Official Committee's inquiries with appropriate urgency,

and (ii) reduce the risk of further delays based on mistakes like the one made concerning the identity and role of the IACs' counsel.  To be clear, however, the Official Committee does not by this Motion abandon its ongoing efforts to obtain certain information from Sackler affiliates voluntarily, or give up its argument that the Sacklers and/or the Debtors also have possession, custody and control over documents in the immediate possession of those persons and entities.  Rather, the Official Committee believes the relief it seeks will help refine and expedite work that already is underway.

7.      Like the Court, the Official Committee is acutely aware that this case involves matters of enormous public interest, public health, and public welfare.  The Official Committee also shares the Court's desire to make funds available to creditors, including for prospective use where possible, as soon as is practicable.  However, it will be next to impossible to build creditor consensus around a proposed settlement, and persuade creditors and the public at large that the Sacklers (and others) deserve the releases they seek, unless they first are subjected to comprehensive discovery.  Anything less also risks leaving substantial value on the table that should be made available to creditors and to address the opioid crisis.

8.      For these reasons and others, the investigation being undertaken by the Official Committee has had, and continues to enjoy, the support of the overwhelming majority of Purdue creditors.  To be sure, the Official Committee has encountered some unnecessary delays and frustrations in seeking to carry out its investigation, but it will continue to do everything in its power to obtain necessary information as promptly as is possible under the circumstances.  Authorizing the requested Rule 2004 examinations will be an important step forward in that regard, and the Official Committee therefore respectfully asks that the Court grant its Motion.

## RELEVANT BACKGROUND

### I.    The IACs

9.      For purposes of this Motion, the Official Committee adopts the definition of

"IACs" supplied in the Amended Case Stipulation:

> all Ex-U.S. pharmaceutical entities, related businesses, joint
> ventures, or other holdings directly or indirectly owned or controlled
> by any Shareholder Party [with Beacon Company and Rosebay
> Medical Company L.P. defined as the "Shareholder Parties"], and
> that are included in the financial information provided in the IB
> Presentation [defined as the investment banker presentation made
> available to certain parties prior to the petition date].

*See* Amended Case Stipulation [ECF No. 518] ¶ 1 & Ex. B ¶¶ 1, 7.  The June 22, 2020 discovery

stipulation concerning the IACs (the "**IAC Stipulation**") also defines IACs by reference to the

Amended Case Stipulation.  *See* IAC Stipulation [ECF No. 1295] Ex. C n.2.  So defined, on

information and belief, the IACs comprise at least 180 entities in dozens of countries around the

world, all ultimately owned by trusts controlled by the Sackler family, and possibly capitalized

largely by profits generated, and technology supplied, by Purdue.  New counsel for the IACs,

Royer Cooper Cohen Braunfeld LLC ("**RCCB**"), delivered a Master IAC List to the Official

Committee pursuant to the IAC Stipulation on June 24, 2020, which it has agreed to supplement

as appropriate pursuant to the terms of the IAC Stipulation.[2]

10.      In some ways, the IACs arguably are even more important to the Sacklers' global

pharmaceutical business than Purdue itself.  ███████████████████████

████████████████████████████████████████████████████

███████ ██████████████████████████████████████████

---

[2] Many, but not all, of the IACs identified on the Master IAC List have consented to the service of a subpoena in
these cases.  The Official Committee believes all IACs are required to submit to such service, and will work in good
faith with RCCB in an effort to reach agreement concerning the IACs that have not yet done so.



11. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ the

IACs' central importance to the Sacklers' global business, and the fact that certain IACs were

themselves in the business of selling opioids, the IACs likely possess information relevant to

issues like opioid marketing practices, abuse, addiction, and diversion, which are all critical to

the Official Committee's investigation of the Settlement Framework.

12. The IACs likely possess information relating to other aspects of the Debtors'

estate claims as well. For example, between 2008 and 2017, the Sacklers caused the Debtors to

transfer at least $1.5 billion in cash to the IACs, for which the Debtors may have received

nothing in return. The Debtors also entered into one-sided licensing deals and royalty

agreements granting the IACs valuable IP rights at below-market value, including licenses to

---

[3] *E.g.*, PPLP004399991 at 999-000 (CONFIDENTIAL); PPLP004400597 at 607–09 (CONFIDENTIAL);
PPLP004400663 at 669 (CONFIDENTIAL); PPLP004412123 at 137–38 (CONFIDENTIAL).
[4] *E.g.*, PPLP004417586 at 632–33 (CONFIDENTIAL) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉.
[5] PPLPC031001515357 (CONFIDENTIAL).

distribute OxyContin that may have been worth hundreds of millions (and perhaps billions) of
dollars more than what the IACs actually paid.  Indeed, in the Intercompany and Non-Cash
Transfers Analysis Report submitted by the Debtors in this action [ECF No. 1194-1],
AlixPartners states that one of its objectives was to "[i]dentify, quantify, and document the
amount of all significant non-cash transfers from Purdue to its parent entity . . . and/or its
previous parent entity,"  but declared that it had "not been asked by the Special Committee or
Counsel to perform an assessment of the ***reasonableness or fair market value*** of each
intercompany or non-cash transfer" analyzed in the Report.  [ECF No. 1194-1] at 10 (emphasis
added).

13.     When that work is completed, the Official Committee believes it will reveal still
more value transferred to the IACs by Purdue for less than reasonably equivalent value.  Indeed,
the IACs as they exist today may largely constitute the proceeds of value fraudulently transferred
from the Debtors.  Therefore, *all of the IACs' value*, not simply a portion of their sale proceeds
over a certain threshold as set forth in the Settlement Framework, may belong to Purdue's
creditors.  In addition, it is highly likely that Sackler family members and their intimate advisors
and affiliates may have discussed liability related to opioids generally, the Debtors' potential
opioid liability, transfers to Sackler trusts, and other highly relevant matters over IAC-hosted
emails.  ***Notably, the IACs were not subject to formal or informal discovery in prepetition***
***litigation relating to the opioid crisis***.

14.     The Official Committee has sought from the outset of these cases to obtain IAC
documents concerning estate claims against the IACs and the Sacklers, and potentially others,
but to date has received little for its efforts.  Beginning in early January of this year, many parties
in these cases, including the Sacklers, represented to the Official Committee that Norton Rose

represented the IACs, and directed the Official Committee to Norton Rose regarding production

of documents from the IACs.  Examples and excerpts of communications reflecting or relating to

the Official Committee's understanding of Norton Rose's role in these cases are attached hereto

as **<u>Exhibits B</u>** through **<u>H</u>**, with yellow highlighting applied by the Official Committee for ease of

reference.  The Official Committee obliged the Sacklers, directing IAC-related requests to

Norton Rose.

15.    To be sure, Norton Rose provided substantial diligence to financial advisors for

the Debtors and the Official Committee, but that information has largely been limited to

valuation materials related to the potential sale of the IACs as proposed by the current Settlement

Framework.  In addition, the Official Committee has also sought important IAC disclosures

concerning many other issues of concern in these cases, and received almost no information from

Norton Rose responsive to these types of requests.  The Official Committee repeatedly advised

the Sacklers that Norton Rose's responses were not satisfactory, but the Official Committee still

did not receive the documents it requested.  As this Court is aware, counsel for Norton Rose now

advises that Norton Rose *never* was in the role of "discovery counsel" for the IACs, apparently

because a potential conflict prevented them from having ever assumed that role in these cases.[6]

16.    No one disclosed the conflict (potential or not) to the Official Committee until

June 5, 2020, when various counsel submitted letters to the Court in response to the Official

Committee's June 2, 2020 letter-motion to compel.  The Official Committee immediately sought

more information from the firms involved.  *See* **<u>Ex. J</u>**.  Debevoise, Milbank and Norton Rose all

responded on June 7, though even they do not appear to be in complete agreement concerning all

---

[6] *See, e.g.*, **<u>Ex. I</u>** (June 7, 2020 email from Norton Rose explaining that it had been precluded throughout these cases from "serving as discovery counsel for the IACs as to *any* IAC discovery matter" (emphasis in original)).  Hence, according to Norton Rose, it never acted for the IACs in supplying discovery requested by the Official Committee's counsel relating to potential liability of Purdue, the IACs, the Sacklers and others.

of the relevant circumstances.  *See* **Exs. I**, **K**, **L**.  Regardless of exactly how this apparent

miscommunication between Norton Rose and the Sacklers occurred, there can be no doubt that

discovery from the IACs was substantially delayed as a result, despite the Official Committee's

diligent efforts for many months to obtain that discovery.

17.    The Official Committee does not raise this history regarding the IACs to seek any

particular relief against any party, but to help explain why it believes the issuance of formal

subpoenas on the IACs is absolutely essential.  RCCB now represents the IACs, and RCCB and

the Official Committee have arrived at a stipulation that we hope will result in the

implementation of a schedule for IAC disclosures very soon.  The Official Committee also hopes

RCCB will work with it productively, cooperatively and expeditiously in the coming weeks to

execute on the requirements of the stipulation and to try to make up for the time that has been

lost.  The Official Committee still believes its ability to issue formal subpoenas to the IACs –

anticipated by the IAC Stipulation itself – is critical to progressing discovery in these cases,

including based on the above referenced facts, and the timeline of these cases.

## II.    Stuart Baker

18.    Mr. Baker, a lawyer currently with Norton Rose, became employed by Purdue as

early as 1994.  For decades thereafter, he has been one of Purdue's most senior executives and

one of the Sacklers' most trusted advisors.  ██████████████████████████████████████

███████████████████████████████████████████████████

  (i)    ████████████████████████████████████
         ██████████████████████████████████

  (ii)   ███████████████████████████████████████

  (iii)  ███████████████████████████████████████████
         ████████████████████████████

  (iv)   █████████████████████████████████

      (v)    ██████████████████████

      (vi)    ████████████████████████████
██████████████████

19.    On April 9, 2020, Mr. Baker's counsel sent the Official Committee a list of all of the various positions that he holds or held at Purdue, the IACs, and certain Sackler family trusts and affiliates.  That list, which is attached hereto as **Exhibit M**, is fifteen pages long.[7]

20.    Mr. Baker, a former partner at Norton Rose and currently "of counsel" at the firm, previously was a partner at Chadbourne & Parke LLP.  Both firms have served as longtime outside counsel to Purdue, the Sacklers, and their affiliates.  Mr. Baker joined Purdue in 1994 as International General Counsel while remaining a partner at Chadbourne & Parke LLP, and has continued to represent Purdue during his tenure at both Chadbourne & Parke LLP and Norton Rose.

21.    Mr. Baker's portfolio of responsibilities was as wide-ranging as his list of titles.  He advised both Purdue and the Sacklers on matters as diverse as tax and estate planning, corporate governance, corporate structure, international law, licensing, and strategic decisions, among many others.  He oversaw Purdue's internal audit functions in the United States and abroad,[8] and he was instrumental in the creation of Purdue's network of IACs, the purpose of which may have been "to move profits into offshore accounts and to reduce the tax burden of the businesses" for the Sacklers.[9] ██████████████████████████

---

[7] Recently, the Debtors produced to the Official Committee a list of Stuart Baker positions (see **Exhibit N**) that is different than the list that Mr. Baker's counsel sent.  The Official Committee is working to determine the reason for the discrepancies.

[8] *See Stuart D. Baker*, Pharm. Sci. Experts, https://biography.omicsonline.org/united-states-of-america/purdue-pharma/stuart-d-baker-306602 (last visited June 30, 2020).

[9] *See* Jared S. Hopkins, *At Purdue Pharma, Business Slumps as Opioid Lawsuits Mount*, Wall St. J. (June 30, 2019 6:15 p.m.), https://www.wsj.com/articles/purdue-pharma-grapples-with-internal-challenges-as-opioid-lawsuits-mount-11561887120?mod=searchresults&page=7&pos=3 (last visited June 30, 2020).

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆ **Ex. O**.

22.      Mr. Baker has been named as a defendant in more than 300 lawsuits relating to the Debtors' marketing and sale of opioids.  These lawsuits allege that in his capacity as an officer, director, and lawyer, he knowingly aided, abetted, participated in, and benefitted from Purdue's illegal marketing and sale of opioids.  The lawsuits also allege that he knowingly aided and abetted the Sacklers' own wrongdoing by structuring their personal affairs (including trusts and several non-Purdue-affiliated companies) so as to safeguard their assets from judgment and evade personal liability arising from the opioid crisis.[10]

23.      Given his wide range of positions and responsibilities across the Sacklers' international web of companies and trusts, Mr. Baker is highly likely to possess information relevant to the Debtors' estate claims.  Indeed, he may be uniquely situated to provide information regarding corporate governance and corporate formalities, issues relevant to the Sacklers' and others' direct liability for Purdue's misconduct.  Mr. Baker's presumably detailed knowledge of the Company's complex corporate structure and the Sacklers' system of trusts (which hold the majority of the Sacklers' wealth) could also be invaluable to developing estate claims, including claims for actual and constructive fraudulent transfer, as well as for the also critical task of determining collectability of assets.

24.      Mr. Baker has a Purdue (pharma.com) email address, and the Official Committee believes that many of Stuart Baker's documents are in the possession, custody, or control of the Debtors.  ***However, Mr. Baker did not produce documents in connection with prepetition discovery, and he was not a Debtor custodian in the Ohio-based multi-district litigation before***

---

[10] *See* Ackal (Iberia Parish, LA) N.D. Ohio 18-op-46052 (cited in April 9, 2020 Letter from Simpson Thacher to Akin at 4)).

***Judge Polster***.  In other words, like numerous members of the Sackler family, Purdue's board of

directors, members of the MNP/MNC board and the IACs, Mr. Baker never was required to

produce documents of any kind in the MDL, whether hosted at Purdue, or in his personal or

work files.

25.    The Debtors have agreed in these cases to search Mr. Baker's Purdue files in

response to the Committee's requests, but other important potential sources of evidence must

also be searched.  Mr. Baker's counsel has indicated that in addition to communicating on his

Purdue email account, Mr. Baker also communicated on email accounts hosted by his law firms

regarding topics relevant to the Official Committee's investigation of estate claims.  Although

Mr. Baker is an attorney, as noted above he occupied many roles within the Company, the IACs,

and various Sackler entities that were non-legal, and almost certainly will have been party to

many relevant communications that are not subject to any viable claim of privilege.

26.    On March 31, 2020, the Official Committee served subpoenas on the Initial

Covered Sackler Persons.  In light of Mr. Baker's roles as advisor, trustee, and executive of

numerous Sackler-affiliated companies and trusts, the Official Committee believes that many (at

least) of his documents are within the possession, custody, or control of the Sacklers and/or the

Debtors.  At the Sacklers' suggestion, the Official Committee forwarded its informal Requests to

Mr. Baker's counsel on January 28, 2020.  In a February 6, 2020 response, Mr. Baker's counsel

wrote that "it is unlikely Mr. Baker is in possession of non-privileged documents that cannot be

obtained more readily from other sources."  *See* **Ex. P**.  After the Parties discussed the Official

Committee's requests on February 12, 2020 and the Official Committee emailed supplemental

requests on March 5, 2020, Mr. Baker's counsel sent a letter to the Official Committee on April

9, 2020 that answered some of the questions posed by the Official Committee but stated, "Mr.

Baker does not have any other responsive documents in his possession with respect to your request for information concerning depositions and/or other discovery directed at Mr. Baker in connection with Purdue, Sacklers, or opioids." *See* **Ex. Q**.

27.     The Official Committee believes that many responsive documents are likely available among Mr. Baker's records hosted by his current and former law firms, and that in his April 9 letter Mr. Baker's counsel was stating only that Mr. Baker lacks other responsive documents in his *immediate* possession.  The Official Committee so far has been unsuccessful in persuading the Sacklers or "any other source[]" to gather Baker documents from those firms. Thus, the Official Committee now seeks permission to serve a separate subpoena on Mr. Baker in order to obtain any relevant documents that are not in Mr. Baker's immediate possession, but that he has the legal right or practical ability to obtain.

**III.    Other II Way Entities**

28.     The Official Committee understands that the Sacklers sometimes refer to companies owned by just one side of the family as "I way entities," and to companies owned jointly by both sides of the family as "II way entities."  At least many of the IACs mentioned above are examples of such "II way entities," but there are many other entities jointly owned or controlled, directly or indirectly, by the two sides of the Sackler family that are not considered IACs by the Sacklers, and that are not represented by RCCB for purposes of discovery in these cases (such other entities were defined above as "**Other II Way Entities**" or "**OTWs**").  Unlike most of the IACs, on information and belief, the Other II Way Entities tend to be located within the United States.  Some sit atop the ownership chain of the Debtor entities or other entities and investments beneficially owned by the Sacklers, and act as intermediate entities between these companies and the Sacklers (or trusts beneficially owned by the Sacklers); some serve

operational roles related to the Debtors and the IACs' businesses (including tax, accounting, and auditing services); and some own rights related to Debtor IP, assets, or royalties, or otherwise engage in related businesses.

29.     At least five OTWs are intermediary entities that sit between the Debtors and the Sacklers' trusts that ultimately own the Debtors.[11]  Billions of dollars in distributions from the Debtors passed through these intermediary entities and were transferred to the Sacklers and their trusts.  The Official Committee is investigating fraudulent transfer claims to avoid those distributions and return that value to the estates.  Furthermore, during many of the years that are the focus of the Official Committee's investigation, the Debtors have asserted that PPLP and other Debtors were "disregarded entities" for tax purposes, and thus federal tax filings concerning those Debtor entities were filed by these intermediary OTWs, not the Debtors. Accordingly, these intermediary OTWs are very likely to have corporate records concerning the Debtors and their ownership interests and activities that will be highly relevant to valuable estate claims.

30.     Other II Way Entities serve, or have served, important operational roles.  For instance, upon information and belief, TXP Services Inc. ("**TXP**"), which is an OTW, provides tax preparation, accounting, and auditing services for numerous Debtor entities, other OTWs (including the entities holding ownership interests in the Debtors and filing taxes on their behalf), IACs, as well as other related Sackler entities, and is believed to be in possession of records and information that are property of the Debtors, including bank statements that may be critical in the Official Committee's investigation of fraudulent transfers.

---

[11] Pharmaceutical Research Associates L.P.; BR Holdings Associates Inc.; BR Holdings Associates L.P.; PLP Associates Holdings Inc.; and PLP Associates Holdings L.P.

31.     The Debtors transferred at least $4.68 billion[12] ostensibly in tax distributions since 2008 that may be recoverable as fraudulent transfers as well.  Accordingly, records concerning the calculation and payment of those transfers may be vital to the investigation of estate claims.  Furthermore, these records are likely to shed light on the Debtors' solvency and financial standing during crucial periods.  Similarly, IAF Corporation is an Other II Way Entity that was established in 1995 to provide independent audit services to the Debtors and provided those services until 2005 before winding down in 2018.  Records concerning those audits would likewise be vital to the investigation of estate claims and shed light on the Debtors' solvency and financial issues.  Pharma Associates L.P. collected royalties from the sale of OxyContin by international IACs and transferred those royalties to the Debtors, after collecting a fee.  Those royalties are an important area of the Official Committee's investigation, and may support additional claims to bring hundreds of millions of dollars into the Debtors' estates.

32.     Numerous Other II Way Entities held various interests on behalf of the Sacklers and their trusts.  For instance, upon information and belief, One Stamford Realty L.P. owns and operates One Stamford Forum, the Debtors' headquarters, ██████████████████ invested in new potential pain management technology, ██████████████████ invested in another joint venture, and so on.  Some of these entities may have records that would shed light on the Debtors' business practices, investments, Sackler management, and other matters that could have significant bearing on the matters that are the subject of the Official Committee's investigation.

33.     The Official Committee does not have a complete list of Other II Way Entities, and their willingness to participate in discovery in these cases voluntarily apparently will vary by

---

[12] See AlixPartners Cash Transfers of Value Analysis Report dated Dec. 16, 2019 [ECF No. 654-1] at 25.

entity.  The March 31, 2020 subpoenas called for the Initial Covered Sackler Persons ("**ICSPs**")

to produce responsive documents in their possession, custody or control, and the Official

Committee believes documents in the immediate possession of the Other II Way Entities are in

fact within the control of the ICSPs.  The ICSPs have denied that control, however, and on April

21, 2020, the law firm Haug Partners LLP ("**Haug**") entered an appearance before this Court on

behalf of six Other II Way Entities: the five intermediary Other II Way Entities[13] and TXP.  On

May 14, 2020, the Official Committee and other creditors were informed that three Other II Way

Entities had been added to the list of Haug's clients,[14] and by letter to the Court dated June 5,

2020, Haug further identified 23 additional Other II Way Entities as its clients.  During a phone

call on June 24, 2020, Haug identified two more Other II Way Entities to the Official Committee

as its clients.[15]

      34.     Thus far, Haug has agreed only to voluntarily produce documents responsive to

the March 31 subpoena on behalf of the five intermediary Other II Way Entities and TXP (the

"**Producing II Way Entities**").  To the extent the Producing II Way Entities have in their

immediate possession documents relating to OTWs, IACs or others that are responsive to the

Subpoenas, Haug has not agreed, at least as of yet, to produce those materials voluntarily.[16]  In

addition, to date, Haug has refused to state whether any of its clients, other than the six

Producing II Way Entities, are willing to produce documents responsive to the March 31

subpoena without a separate subpoena.  The Official Committee has also identified numerous

---

[13] Pharmaceutical Research Associates L.P.; BR Holdings Associates Inc.; BR Holdings Associates L.P.; PLP Associates Holdings Inc.; and PLP Associates Holdings L.P.

[14] The Purdue Frederick Company Inc.; The P.F. Laboratories, Inc.; and Rhodes Technologies Inc.

[15] E.R.G. Realty, Inc. and The Terramar Foundation, Inc.  To date, Haug has thus identified 34 Other II Way Entities to the Official Committee as its clients, but the Official Committee believes that additional Other II Way Entities may exist.

[16] Haug has produced certain Debtor tax documents to the Debtors, which the Debtors have then produced to the Official Committee.

additional entities that appear to be Other II Way Entities, but which have not been identified as

clients by Haug or by RCCB, and is currently seeking to confirm the roles of those entities,

identify their counsel, and learn whether they are willing to cooperate in discovery.[17]

      35.    The Official Committee is seeking to work with Haug constructively regarding

each of the foregoing issues, but by this motion seeks authority to serve subpoenas on all the

Other II Way Entities in the event that the Other II Way Entities refuse to engage in discovery

voluntarily or if the parties cannot reach resolution on the scope of the Producing II Way Entities'

productions.

## IV.    Moab

      36.    Upon information and belief, Moab was co-founded by David Sackler in 2006.

Mr. Sackler apparently worked at Moab until 2013, where he remained an equity partner until

2019; in addition, the Official Committee is advised that Side B of the Sackler family still has

investments with Moab.  Substantial David Sackler ESI responsive to the March 31 subpoena to

Side B apparently is in the immediate possession of Moab ("**DSM ESI**").  The June 22, 2020

stipulation provides that Side B will "use good faith efforts" to obtain for production any DSM

ESI, but Side B also contends that it is unable to require Moab to make DSM ESI available, and

the stipulation therefore also expressly reserves the Official Committee's "right to seek

authorization to serve a Rule 2004 subpoena on Moab."  *See* [ECF No. 1295] Ex. B ¶ 4.  The

Official Committee has itself exchanged emails with Moab's counsel, and is hopeful Moab will

promptly agree to an acceptable disclosure schedule.  However, the Official Committee seeks

---

[17] As the ultimate owners of all of these entities and as recipients of subpoenas calling for responsive material in their control, it is the Sacklers' responsibility to ensure that all of their affiliates, whether deemed "IACs," "Other II Way Entities," or otherwise, are identified for the Official Committee and participate in discovery in these proceedings as may be necessary or appropriate.

authorization to serve Rule 2004 discovery so that it can move quickly in the event compulsory

process is required.

## RELIEF REQUESTED

37.    The Official Committee respectfully requests that the Court enter an order

pursuant to Bankruptcy Rules 2004 and 9016, substantially in the form of the Proposed Order

attached to this Motion as **Exhibit A**, authorizing it to conduct formal discovery from the IACs,

Stuart Baker, the OTWs, and Moab.  Upon entry of the Rule 2004 order, the Official Committee

intends to serve subpoenas on the IACs, Stuart Baker, the OTWs, and Moab pursuant to Rules

2004 and 9016.

## BASIS FOR RELIEF

### I.    Examinations Are Warranted under Bankruptcy Rule 2004

38.    Bankruptcy Rule 2004(a) provides, in relevant part, that "[o]n motion of any party

in interest, the court may order examination of any entity."  Under Bankruptcy Rule 2004, a

party-in-interest like the Official Committee may request discovery related to "acts, conduct, or

property, or to the liabilities and financial condition of the debtor, or to any matter which may

affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R.

Bankr. P. 2004(b).

39.    The purpose of Bankruptcy Rule 2004 is to "assist a party in interest in

determining the nature and extent of the bankruptcy estate, revealing assets, examining

transactions and assessing whether wrongdoing has occurred."  *In re Recoton Corp.*, 307 B.R.

751, 755 (Bankr. S.D.N.Y. 2004).  Rule 2004 permits discovery "to determine the extent of the

estate's assets and recover those assets for the benefit of creditors."  *In re Madison Williams &*

*Co., LLC*, No. 11-15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Jan. 7, 2014); *see also Sec.*

*Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re: Bernard L. Madoff)*, No. 09-11893

(SMB), 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014) ("The underlying purpose of

Rule 2004 is to 'allow the court to gain a clear picture of the condition and whereabouts of the

bankrupt's estate.'" (quoting *Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,

42 B.R. 362, 364 (S.D.N.Y. 1984))).

40.     The scope of discovery allowed under Bankruptcy Rule 2004 is "'very broad and

great latitude of inquiry is ordinarily permitted.'"  *In re Madison Williams*, 2014 WL 56070, at

*3 (quoting *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)).  Courts repeatedly have

recognized that discovery provided for under Rule 2004 encompasses "broader discovery than is

available under the Federal Rules of Civil Procedure."  *In re: Bernard L. Madoff*, 2014 WL

5486279, at *2 (citing *In re Recoton Corp.*, 307 B.R. at 755); *see also In re Hughes*, 281 B.R.

224, 226 (Bankr. S.D.N.Y. 2002) ("[T]he scope of examination allowed under Rule 2004 is

broader than discovery allowed under the Federal Rules of Civil Procedure and may be in the

nature of a 'fishing expedition.'"); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711

(Bankr. S.D.N.Y. 1991) (same).

41.     Bankruptcy Rule 2004 permits discovery of any party, including third parties, "if

they have knowledge of the debtor's affairs."  *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559

(Bankr. S.D.N.Y. 1991); *see also In re Recoton Corp.*, 307 B.R. at 755 ("Any third party who has

a relationship with a debtor may be made subject to a Rule 2004 investigation"); *In re Enron

Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[T]he Court may authorize the examination

of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial

condition which relate to the administration of the bankruptcy estate.").

42.     As set forth above, the persons and entities subject to the Motion likely have

information that relates directly to the "acts, conduct, or property or to the liabilities and

financial condition" of the Debtors and bears directly on potential estate claims, including but
not limited to intentional and constructive fraudulent conveyance and breach of fiduciary duty.
*See* Fed. R. Bankr. P. 2004(b); *Recoton*, 307 B.R. at 755; 11 U.S.C. § 1103 (expressly authorizing
the Official Committee "to investigate the acts, conduct, assets, liabilities and financial condition
of the Debtors"). Thus, the discovery requested in this Motion is "prima facie consistent with the
Rule's . . . purposes of allowing the Committee to obtain information necessary to determine
whether claims beneficial to the estates exist and whether to pursue such claims." *See In re
Recoton Corp.*, 307 B.R. at 756.

43.     Because an "examination is necessary to establish the claim[s]" that the estate
could pursue to benefit its creditors, good cause exists to grant this Motion. *See In re Metiom,
Inc.*, 318 B.R. 263, 268-70 (S.D.N.Y. 2004) (affirming bankruptcy court's order granting
Bankruptcy Rule 2004 examination).

## COMPLIANCE WITH RULES

44.     This Motion includes citations to the applicable rules and statutory authorities
upon which the relief requested herein is predicated and a discussion of their application to this
Motion. The Committee submits that this Motion satisfies Rule 9013-1(a) of the Local
Bankruptcy Rules for the Southern District of New York.

## NOTICE

45.     The Official Committee is proceeding with this Motion on an *ex parte* basis.

## NO PRIOR REQUEST

46.     No prior request for the relief sought in this Motion has been made.

## RESERVATION OF RIGHTS

47.     The Official Committee and its members reserve all of their respective rights,
claims, defenses, and remedies, including, without limitation, the right to amend, modify, or

supplement this Motion, to seek additional discovery, add additional parties, or to raise additional

grounds for granting this Motion during any hearing on the Motion.

## **CONCLUSION**

48.    The Official Committee respectfully requests that the Court enter an order,

substantially in the form of **Exhibit A** that authorizes the Official Committee to undertake Rule

2004 examinations of the IACs, Stuart Baker, the OTWs, and Moab.


New York, New York                      AKIN GUMP STRAUSS HAUER & FELD LLP

Dated:  June 30, 2020


                                   By: /s/ *Mitchell P. Hurley*

                                       Ira S. Dizengoff
                                       Arik Preis
                                       Mitchell P. Hurley
                                       Joseph L. Sorkin
                                       Sara L. Brauner
                                       One Bryant Park
                                       New York, New York 10036
                                       Telephone: (212) 872-1000
                                       Facsimile: (212) 872-1002
                                       idizengoff@akingump.com
                                       apreis@akingump.com
                                       mhurley@akingump.com
                                       jsorkin@akingump.com
                                       sbrauner@akingump.com

                                       *Counsel to the Official Committee of Unsecured*
                                       *Creditors of Purdue Pharma, L.P., et al.*

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE 2004 AND 9016 AUTHORIZING**
**EXAMINATIONS OF THIRD PARTIES**

Upon the motion, dated June 30, 2020 (the "Motion"), of the Official Committee of

Unsecured Creditors (the "Official Committee") of Purdue Pharma L.P. ("Purdue") and its

affiliated debtors and debtors-in-possession (collectively, the "Debtors,") for an order

pursuant to Fed. R. of Bankr. P. 2004 and 9016 authorizing the examinations and discovery

described therein; and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§

157(a)-(b) and 1334(b), as a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and no additional notice being

required except as provided herein; and, after due deliberation and good and sufficient cause

appearing therefor,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      The Official Committee is authorized, pursuant to Fed. R. Bankr. P. 2004, to conduct examinations of, including, without limitation, by seeking electronically stored information and other documents from, (i) the IACs, defined in the Motion by reference to the Amended Case Stipulation as all ex-U.S. pharmaceutical entities, related businesses, joint ventures, or other holdings directly or indirectly owned or controlled by any Shareholder Party and that are included in the financial information provided in the investment banker presentation made available to certain parties prior to the petition date, (ii) Stuart Baker, (iii) the Other II Way Entities, defined in the Motion as all entities jointly owned or controlled, directly or indirectly, by the two sides of the Sackler family that are not IACs, and (iv) the investment firm Moab Capital (collectively, the "Producing Parties"), and to issue subpoenas in connection with such examinations pursuant to Fed. R. Bankr. P. 2004(c) (the "Subpoenas").

3.      The examinations and document production required hereby shall be subject to the assertion of applicable privilege; provided, that if a document required to be produced hereby is withheld on the basis of an asserted privilege, the Party withholding such document shall provide a proper privilege log at the time of production hereunder.

4.      The Official Committee, the Debtors, the Ad Hoc Group of Non-Consenting States, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, and the Producing Parties shall meet and confer not only to attempt in good faith to resolve any disputes over any Subpoenas but also to efficiently coordinate the issuance of and compliance with the Subpoenas.  In furtherance of the foregoing, on a going forward basis these Parties shall record all time and expenses on this discovery matter and report the aggregate sum to each other

2

REDACTED PURSUANT TO PROTECTIVE ORDER

on a weekly basis and also on a weekly basis discuss any cost containment issues.

     5.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  White Plains, New York

_____          _____
                                         THE HONORABLE ROBERT D. DRAIN
                                         UNITED STATES BANKRUPTCY JUDGE

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT B

REDACTED PURSUANT TO PROTECTIVE ORDER



# Akin Gump

## STRAUSS HAUER & FELD LLP

**MITCHELL P. HURLEY**
+1 212.872.1011/fax: +1 212.872.1002
mhurley@akingump.com

January 9, 2020

VIA E-MAIL

Ian McClatchey
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, New York 10019-6022

Re:     *In re: Purdue Pharma L.P.* et al., No. 19-23649 (Bankr. S.D.N.Y.)
        <u>Supplemental Requests for Information from Sackler Family Members</u>

Dear Ian:

Please find enclosed a copy of the Official Committee's January 2, 2020 letter and informal information requests to the Sacklers ("**<u>January 2 Letter and Requests</u>**") which seek, in part, documents and information relating to the IACs, or that may be held by the IACs. Counsel for the Sacklers has asked us to direct requests for such information to you.

We believe that the Sacklers (and/or the Debtors) have the right and/or practical ability to produce, or to obtain and produce, all extant documents and information responsive to the January 2 Letter and Requests, including documents that may be in the immediate possession of the IACs. Indeed, we understand that the Sacklers asked us to direct IAC-related requests to you as an administrative convenience for them, and not because the Sacklers contend that such materials are outside of their control. In any case, as an accommodation and in the interests of time, we ask that you please provide to us copies of all requested documents and information that may be in your clients' immediate possession or control and that are responsive to the January 2 Letter and Requests.

We are available at your convenience if you have any questions or wish to discuss. Nothing herein constitutes a waiver of any of the Official Committee's claims, defenses, rights or remedies, all of which expressly are reserved.

Sincerely,

*/S/ Mitchell Hurley*
Mitchell P. Hurley

Enclosure

REDACTED PURSUANT TO PROTECTIVE ORDER



Ian McClatchey
January 9, 2020
Page 2

cc:    Gerard Uzzi (Milbank LLP)
       Alex Lees (Milbank LLP)
       Jeffrey Rosen (Debevoise & Plimpton LLP)
       Jasmine Ball (Debevoise & Plimpton LLP)
       Harold Williford (Debevoise & Plimpton LLP)
       Marshall Huebner (Davis Polk & Wardwell LLP)
       Charles Duggan (Davis Polk & Wardwell LLP)
       Margarita Clarens (Davis Polk & Wardwell LLP)
       Chautney R. McMillian (Davis Polk & Wardwell LLP
       Andrew Troop (Pillsbury Winthrop Shaw Pittman LLP)
       Kenneth H. Eckstein (Kramer Levin Naftalis & Frankel LLP)

REDACTED PURSUANT TO PROTECTIVE ORDER

# Exhibits Omitted

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT C

REDACTED PURSUANT TO PROTECTIVE ORDER



**MITCHELL P. HURLEY**
+1 212.872.1011/fax: +1 212.872.1002
mhurley@akingump.com

April 3, 2020

**VIA E-MAIL**

Jasmine Ball
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Re: *In re: Purdue Pharma L.P. et al*., No. 19-23649 (Bankr. S.D.N.Y.)

Dear Jasmine:

We write in response to your March 24, 2020 letter concerning discovery, which you sent on
behalf of the issue of Mortimer D. Sackler and their affiliates (commonly referred to in these
cases as the "Mortimer Side" or "A Side" of the Sackler family).

In your letter, you write that the Mortimer Side is "eager" to provide the Official Committee with
"additional information required for [the Official Committee] [to] be able to evaluate the
[proposed] Settlement [Framework] and move this process forward." *See* Mar. 24 letter at 5.
We are pleased to hear that sentiment, but your clients have so far not made any material
document disclosures in response to the Official Committee's requests, or even committed to
doing so. During our meet and confer calls, you indicated that the Mortimer Side would search a
limited set of electronically stored information ("ESI") of a limited number of members of the
Sackler family (four) for a limited period of time. As you know, we do not believe the Mortimer
Side's proposal is sufficient, and in your March 24 letter, you indicate that you are not authorized
even to conduct that limited search and production. *See* Mar. 24 letter, App'x, n.1 (noting the
Mortimer Side has "not authorized us to gather or produce all of the emails and other information
described herein. . . . [W]e are in the process of updating and gathering the necessary
authorizations . . . ."). We are very troubled that you appear to be walking back the Mortimer
Side's offer to make even the limited and inadequate production it said it was willing to make.
Indeed, it is unclear to us whether you have run any search terms against any data at this point.
Certainly, you have not provided any "hit reports" to the Official Committee for us to consider in
potentially modifying our proposed search criteria. We urge you to at least take this step without
further delay.

Based on your letter and the Mortimer Side's conduct to date, it seems your clients believe they
can satisfy their disclosure obligations primarily through presentations prepared by their counsel

REDACTED PURSUANT TO PROTECTIVE ORDER



April 3, 2020
Page 3

Official Committee's requests that are in the immediate possession of the IACs.  Indeed, in the
Case Stipulation, your clients expressly represented that "the Initial Covered Sackler Parties
collectively own, directly or indirectly, each of the . . . IACs."  Amended and Restated Case
Stipulation at 3, *In re: Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr. S.D.N.Y. Nov. 20,
2019) [ECF 518].  As a courtesy to you, and in the hope that it might save time, we previously
directed our voluntary requests for documents relating to the IACs to Norton Rose, a firm you
identified as "counsel to the IACs."  That approach has not been satisfactory, and going forward
we must insist that your clients gather and produce responsive IAC materials themselves.  We
are of course prepared to address your concerns about the scope and burden of our requests
relating to the IACs through the ongoing meet and confer process.

Finally, we do not agree that your clients are entitled to redact or otherwise withhold responsive
information on the grounds of confidentiality.  As you know, these cases are subject to an
extraordinarily comprehensive protective order, which your firm was closely involved in
negotiating.  Now that we are proceeding with compulsory discovery pursuant to Bankruptcy
Rule 2004, your clients are not permitted even to redact so-called personally identifying
information without first moving for and obtaining permission from the Court.  Amended
Protected Order at ¶ 37, *In re: Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr. S.D.N.Y. Mar.
20, 2020) [ECF 969].  And the information you apparently plan to redact is not in the category of
personally identifying information in any event.  If your clients really believe certain information
in the documents is as sensitive as they claim, they must produce it unredacted but subject to
appropriate designations and protocols under the existing confidentiality order and agreed
protocols.

We look forward to receiving your formal objections and responses to the Official Committee's
2004 discovery requests.  We also would be happy to continue the meet and confer process in the
meantime as well.  Please advise if you are available for a meet and confer on Monday or
Tuesday of next week.

Nothing herein constitutes a waiver or relinquishment of any of the Official Committee's rights,
remedies, claims or defenses, all of which expressly are reserved.


                                        Sincerely,


                                        /s/ Mitchell Hurley
                                        Mitchell P. Hurley

REDACTED PURSUANT TO PROTECTIVE ORDER



April 3, 2020
Page 4

cc:
       Jeffrey J. Rosen (Debevoise & Plimpton LLP)
       Marshall S. Huebner (Davis Polk & Wardwell LLP)
       Alexander B. Lees (Milbank LLP)
       Andrew Troop (Pillsbury Winthrop Shaw Pittman LLP)
       Kenneth H. Eckstein (Kramer Levin Naftalis & Frankel LLP)

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT D

REDACTED PURSUANT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Hurley, Mitchell |
| **Sent:** | Saturday, April 4, 2020 2:19 PM |
| **To:** | Novison, Brittney; Porter, Katherine; Poon, Jennifer; zz-Murphy, Jack; Preis, Arik |
| **Cc:** | Lees, Alex; Mara Leventhal; Gregory P. Joseph; Lilburn, Emily; Benjamin A. Taylor; Uzzi, Jerry |
| **Subject:** | RE: In re: Purdue Pharma L.P. et al., No. 19-23649 (Bankr. S.D.N.Y.) |

Counsel:

We are willing to give the Side B Sacklers more time to serve written objections and responses to the Official Committee's document requests. However, we do not believe it is reasonable to bifurcate those responses, or to produce your final set on April 28. Side B has had most of the Official Committee's requests for months, and none of them should come as a surprise. You also suggest that our prior voluntary requests somehow were directed only to Jonathan, David and Richard Sackler, and to the estate of Beverly Sackler, but that is not correct. On the contrary, we have been seeking disclosures of documents in the possession, custody or control of Initial Covered Sackler Parties for months, including but not limited to other Covered Sackler Parties, and advisors to Covered Sackler Parties.

We are glad that Side B is willing to continue the meet and confer process while its objection deadline is pending, and the Official Committee plans to continue working with you during that period as well. As we explained previously, however, including in our Rule 2004 motion, we believe that reviewing your formal objections and responses to our requests with you will itself be an important part of the meet and confer process, and we are not willing to delay that exercise to May, as your proposal would effectively require. Regarding the deadline, if the Official Committee had not exercised its right to require an earlier response, your objections still would have been due on Tuesday, April 14, 2020. FRCP 45(d)(2)(B) (providing that party objecting to subpoena for production of documents must do so "before the earlier of the time specified for compliance [April 7] or 14 day days after service"). While we will not insist on service by April 7 (the date for compliance in the subpoenas), we believe it is more than reasonable under these circumstances to require service of any objections and responses by the deadline provided under the Rule (April 14).

Regarding the IACs, you ask us to "continue to communicate directly with [the IACs counsel,] Norton Rose" to obtain documents that may be in the immediate possession of the IACs. As I believe you know, the Official Committee was not satisfied with that approach in connection with the voluntary disclosure process. The subpoenas we served pursuant to Rule 2004 is directed to members of the Sackler family, and requires them to gather and produce responsive documents in their possession, custody or control. IAC documents undoubtedly fall into that category. Previously, when you asked us to forward our requests to the Sacklers to Norton Rose, you told us Norton Rose is "counsel to the IACs." Are you now saying that Norton Rose is representing the *Sacklers* in connection with responding to the subpoenas? Please advise at your earliest convenience. Thanks.

Mitch

**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
Direct: +1 212.872.1011 | Internal: 31011

1

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT E

| | |
|---|---|
| **From:** | Ball, Jasmine <jball@debevoise.com> |
| **Sent:** | Saturday, April 18, 2020 10:05 PM |
| **To:** | Sorkin, Joseph L.; Richards, Jillie; Porter, Katherine; Hurley, Mitchell; zz-Murphy, Jack; Preis, Arik; Poon, Jennifer |
| **Cc:** | Williford, Harold W.; MacKay, Emily; Stroik, Daniel E.; Aber, Katie R.; Monaghan, Maura Kathleen; Rosen, Jeffrey J. |
| **Subject:** | RE: Purdue: 4/7 meet and confer summary and follow up |

**EXTERNAL Email**

Joseph and team:

Again, thank you for the below email.

Firstly, we hope that everyone is keeping well and staying safe during these times.

Secondly, we wanted to get back to you on the items that you raised in your email in advance of our more detailed objections and responses that we will provide to your subpoena on the 21st.

Our team and your team have separate correspondence on our positions on jurisdiction, so I won't repeat any of that here other than to acknowledge that we have a disagreement, and acknowledge that, as separately noted, the Side A ICSPs are agreeing to voluntarily abide by any orders entered by the Bankruptcy Court with respect to enforcement of your 2004 subpoena, if it were to come to that, and we will, of course, continue to produce documents and discuss the jurisdictional issues in the meantime.

On the redaction question, we continue to feel that given the extremely high risk of value erosion with respect to the names of non-opioid investments that redaction of those names is necessary. We also continue to believe that the privacy of minor children and grandchildren's names, addresses and social security numbers is vital, given the extreme nature of responses that family members have experienced (including threats against the lives of family members) and the risk of accidental disclosure is just too great. And, finally, we are working with our European counterparts on GDPR redaction requirements with respect to PII required to be redacted under GDPR to determine the exact scope of what is required. To the extent that we are permitted to do so under GDPR, we would agree to voluntarily provide each of the above categories as OPEO, but believe it is vital that these categories are redacted prior to any broader distributions outside of the OPEO circle.

On the trust documents, we are in the process of reviewing and indexing the materials we received so that we can produce them to you and should have that completed very soon. Neither we nor our clients currently have access to additional hard copy documents to scan given the current limitations on access to our clients' offices as European countries are also currently under different forms of states of emergency and stay-at-home orders. We can provide you next week with the list of trust documents we have and are in the process of reviewing for production to you on a rolling basis starting next week.

On the IACs, we continue to believe that our clients do not have possession, custody and control of the IAC documents and are not waiving any arguments or objections related thereto. We also note that the IACs have separate counsel, Norton Rose Fulbright, and that their counsel has been providing significant amounts of information in their data rooms as well as coordinating numerous meetings and calls with management and advisors at the request of the UCC. If that

1

REDACTED PURSUANT TO PROTECTIVE ORDER

information provided to date has not been responsive to the requests with respect to IAC information, please let us know what areas have been insufficient and we will coordinate with Norton Rose Fulbright to obtain the IAC information requested in the 2004 subpoena from the IACs (without waiving any objection we may have to such specific requests).  And, to the extent that the Side A ICSPs, from a corporate law perspective, are in a position to instruct the IACs to deliver documents, the Side A ICSPs will do so.

We hope the above clarifies our position with respect to these items and are happy to discuss further with any questions you may have on our subpoena objections and responses.

Best regards and keep well.

--Jasmine

**Jasmine Ball** │ Partner │ Debevoise & Plimpton LLP │ jball@debevoise.com │ +1 212 909 6845 (Tel) │ +1 646 725 7471 (Mobile) │ +1 212 521 7845 (Fax) │ 919 Third Avenue, New York, NY 10022

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.

**From:** Ball, Jasmine
**Sent:** Tuesday, April 14, 2020 19:23
**To:** 'Sorkin, Joseph L.'; Williford, Harold W.; MacKay, Emily; Stroik, Daniel E.; Aber, Katie R.
**Cc:** 'Richards, Jillie'; 'Porter, Katherine'; 'Hurley, Mitchell'; 'Murphy, Jack'; 'Preis, Arik'; 'Poon, Jennifer'
**Subject:** RE: Purdue: 4/7 meet and confer summary and follow up

Thank you, Joseph, for the email.  We are reviewing your email and the questions raised and will revert shortly.

Best regards,

--Jasmine

**Jasmine Ball** │ Partner │ Debevoise & Plimpton LLP │ jball@debevoise.com │ +1 212 909 6845 (Tel) │ +1 646 725 7471 (Mobile) │ +1 212 521 7845 (Fax) │ 919 Third Avenue, New York, NY 10022

This e-mail message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us collect in New York at 1-212-909-6000) and then delete and discard all copies of the e-mail. Thank you.
The latest version of our Privacy Policy, which includes information about how we collect, use and protect personal data, is at www.debevoise.com.

**From:** Sorkin, Joseph L. [mailto:jsorkin@AkinGump.com]
**Sent:** Tuesday, April 14, 2020 15:44
**To:** Williford, Harold W.; Ball, Jasmine; MacKay, Emily; Stroik, Daniel E.; Aber, Katie R.
**Cc:** Richards, Jillie; Porter, Katherine; Hurley, Mitchell; Murphy, Jack; Preis, Arik; Poon, Jennifer
**Subject:** Purdue: 4/7 meet and confer summary and follow up

Jasmine and team – We are writing to memorialize our discussion from last week.  Of course, if we misunderstood anything, please let us know.

REDACTED PURSUANT TO PROTECTIVE ORDER

We understand from our discussion and our subsequent correspondence that you are not objecting to service of the subpoena, but are reserving rights with respect to jurisdiction.  As mentioned in Mitch's letter from Thursday night, our willingness to adjourn the subpoena deadline to the date you requested is conditioned on your clients' agreement not to dispute the Court's power to enforce the subpoena against them.

With respect to your intention to redact certain information from documents produced to us, you stated that Side A intends to redact information regarding Sackler family members' investments, and personally identifying information.  We repeated our position that the protective order provides more than adequate protection for such information – including through inclusion of a highly unusual Outside Professionals' Eyes Only (OPEO) designation.  Furthermore, we believe that the protective order requires you to obtain court approval for such redactions outside the voluntary diligence process.  We are concerned about this redaction issue for a number of reasons, including our concern that redacting information as you proposed would impose an extensive and costly burden on the estates to sift through the redactions.  We remain hopeful that we can find a solution for this issue, but we requested that you provide us with your final position on this question as soon as possible so that we can seek guidance from the court immediately if we are not able to reach an agreement.

We also discussed your pending productions.  As you know, your clients have promised several productions for many weeks, but we have yet to receive a single document.  We understand that your efforts to produce to us documents that were previously produced in other contexts was stalled, but that you will move that forward.  You are also nearly complete with your efforts to gather certain trust documents, and scan in the hardcopy documents.

Finally, we asked you to reconsider and discuss with your clients their position on whether they have possession, custody, and control of IAC materials.  We believe the answer to that question is self-evidently "yes," and ask that you confirm that your clients will search for and produce documents responsive to the subpoena that are in the immediate possession of the IACs immediately, and in any case by 12:00 p.m. Eastern time on Thursday, April 16, 2020.

Best,

**Joseph L. Sorkin**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.7464 | Internal: 37464
Fax: +1 212.872.1002 | jsorkin@akingump.com | akingump.com | Bio

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT F

REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT G

REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT H

REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT I

| | |
|---|---|
| **From:** | Schwinger, Robert A. <robert.schwinger@nortonrosefulbright.com> |
| **Sent:** | Sunday, June 7, 2020 4:33 PM |
| **To:** | Hurley, Mitchell; Lees, Alex; Ball, Jasmine; Joseph, Gregory (External) |
| **Cc:** | Troop, Andrew M.; Sharp, Jason S.; 'keckstein@kramerlevin.com'; Preis, Arik; 'Huebner, Marshall S.'; McClammy, James I. |
| **Subject:** | RE: Purdue |

**\*\*EXTERNAL Email\*\***

Dear Mitch,

As Norton Rose explained in its June 5, 2020 letter to the Court, Norton Rose has never acted as discovery counsel for the IACs (or indeed as counsel for anyone) in the Chapter 11 proceedings.  Nevertheless, Norton Rose now apparently seems to be caught up in a dispute between other parties.  Regardless of whether there is any basis for Norton Rose to be asked to respond to e-mailed questions from the UCC's counsel in these circumstances, we do wish to try to be helpful to the parties and the Court.  Accordingly, we provide you with the following additional information:

1.  Norton Rose never "had" a conflict, and one never "arose," for the simple reason that Norton Rose was never asked by the IACs to represent them as discovery counsel in the Chapter 11 proceedings.

2.  When Norton Rose as the IACs' financial diligence counsel was confronted by requests that went beyond diligence and into the area of discovery, Norton Rose did not seek to expand the scope of its engagement into being discovery counsel for the IACs in the Chapter 11 proceedings, because its historical relationship with Purdue and its historical and ongoing relationships with various Side A and B parties precluded Norton Rose playing such role for the IACs under NY RPC 1.7 and 1.9 due to the possibility of "differing" or "materially adverse" interests (as those terms are used in the NY RPC) among those parties in that context.  At the same time, however, Norton Rose nevertheless remained subject to its obligations under *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn, LLP*, 91 N.Y.2d 30, 689 N.E.2d 879, 666 N.Y.S.2d 985 (1997), with respect to providing clients with access to materials and information belonging to them in their lawyers' files.

3.  Norton Rose addressed the potential conflict issue with Side A & B counsel on several occasions where IAC-related discovery issues arose, with respect to the particular issue then at hand, the first such time being March 26, 2020.  In hindsight, though, it may not have been clear to the Side A & B counsel at those times that the potential conflict issue Norton Rose was highlighting would likewise preclude Norton Rose from serving as discovery counsel for the IACs as to *any* IAC discovery matter, rather than just the specific matter then at issue.

4.  In the early evening just after the May 1, 2020 discovery hearing, Norton Rose was contacted by family counsel and advised of the Court's instructions at the hearing regarding having the IACs appoint counsel who could appear in the Chapter 11 proceedings, accept service of process and engage with the UCC.  Norton Rose then reiterated to family counsel that the potential conflict issue it had previously noted to them would likewise preclude Norton Rose from serving in the role the Court had outlined, and that the IACs would have to select some other law firm to serve in that role.

Best regards,

        R.  A.  S.

**Robert A. Schwinger** | Partner
Assistant General Counsel
Norton Rose Fulbright US LLP
1301 Avenue of the Americas, New York, NY 10019, USA
Tel +1 (212) 408-5364 | Fax +1 (646) 710-5364
robert.schwinger@nortonrosefulbright.com
*[Working remotely but still reachable*

<span style="color:red">REDACTED PURSUANT TO PROTECTIVE ORDER</span>
*<span style="color:red">through office tel. no. above]</span>*

## <span style="color:red">NORTON ROSE FULBRIGHT</span>

*Law around the world*
nortonrosefulbright.com

---

**From:** Hurley, Mitchell [mailto:mhurley@AkinGump.com]
**Sent:** Saturday, June 6, 2020 2:45 PM
**To:** Lees, Alex <ALees@milbank.com>; Ball, Jasmine <jball@debevoise.com>; Joseph, Gregory (External) <gjoseph@jha.com>; Schwinger, Robert A. <robert.schwinger@nortonrosefulbright.com>
**Cc:** Troop, Andrew M. <andrew.troop@pillsburylaw.com>; Sharp, Jason S. <jason.sharp@pillsburylaw.com>; 'keckstein@kramerlevin.com' <keckstein@kramerlevin.com>; Preis, Arik <apreis@akingump.com>; 'Huebner, Marshall S.' <marshall.huebner@davispolk.com>; McClammy, James I. <james.mcclammy@davispolk.com>
**Subject:** Purdue

Dear Counsel:

Prior to receiving your letters yesterday the UCC was unaware that Norton Rose has a conflict that prevents it from representing the IACs in connection with discovery in these cases.  We ask that you please provide the following information to us in writing before the end of the day tomorrow:

(i) the specific nature of the conflict,
(ii) when the conflict arose,
(iii) the date(s) on which Milbank and Joseph Hage contend they first "learned that Norton Rose had identified that it would face a conflict," (JHA, Milbank letter at 4),
(iv) the date on which Debevoise contends it first "learned that Norton Rose Fulbright had identified a conflict that would prevent it from representing the IACs in" the "discovery process" (Deb Letter at ).
(v) the date on which Norton Rose "clarif[ied] for Side A and Side B counsel that Norton Rose was not serving as the IACs' discovery counsel in the Chapter 11 proceedings, and in fact would be precluded from assuming that role" (NR Letter at 2), a communication that apparently occurred "before the May 1, 2020 discovery hearing"  and
(vi) the date "following the conclusion of the May 1, 2020 discovery hearing" on which Norton Rose "revisit[ed] this point with family counsel again." (id.)

Thank you in advance for your cooperation.

Regards,

**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park  |  New York, NY 10036-6745  |  USA  |  Direct: +1 212.872.1011  |  Internal: 31011
Fax: +1 212.872.1002  |  mhurley@akingump.com  |  akingump.com  |  Bio

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

This email message and any attachments are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, copying or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.

REDACTED PURSUANT TO PROTECTIVE ORDER
To reply to our email administrator directly, send an email to nrfus.postmaster@nortonrosefulbright.com.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT J

| | |
|---|---|
| **From:** | Hurley, Mitchell |
| **Sent:** | Saturday, June 6, 2020 2:45 PM |
| **To:** | Lees, Alex; Ball, Jasmine; Joseph, Gregory (External); Schwinger, Robert A. |
| **Cc:** | Troop, Andrew M.; Sharp, Jason S.; 'keckstein@kramerlevin.com'; Preis, Arik; 'Huebner, Marshall S.'; McClammy, James I. |
| **Subject:** | Purdue |

Dear Counsel:

Prior to receiving your letters yesterday the UCC was unaware that Norton Rose has a conflict that prevents it from representing the IACs in connection with discovery in these cases.  We ask that you please provide the following information to us in writing before the end of the day tomorrow:

(i) the specific nature of the conflict,
(ii) when the conflict arose,
(iii) the date(s) on which Milbank and Joseph Hage contend they first "learned that Norton Rose had identified that it would face a conflict," (JHA, Milbank letter at 4),
(iv) the date on which Debevoise contends it first "learned that Norton Rose Fulbright had identified a conflict that would prevent it from representing the IACs in" the "discovery process" (Deb Letter at ).
(v) the date on which Norton Rose "clarif[ied] for Side A and Side B counsel that Norton Rose was not serving as the IACs' discovery counsel in the Chapter 11 proceedings, and in fact would be precluded from assuming that role" (NR Letter at 2), a communication that apparently occurred "before the May 1, 2020 discovery hearing"  and
(vi) the date "following the conclusion of the May 1, 2020 discovery hearing" on which Norton Rose "revisit[ed] this point with family counsel again." (id.)

Thank you in advance for your cooperation.

Regards,

**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park  |  New York, NY 10036-6745  |  USA  |  Direct: +1 212.872.1011  |  Internal: 31011
Fax: +1 212.872.1002  |  mhurley@akingump.com  |  akingump.com  |  Bio

1

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT K

REDACTED PURSUANT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Lees, Alex <ALees@milbank.com> |
| **Sent:** | Sunday, June 7, 2020 3:44 PM |
| **To:** | Hurley, Mitchell |
| **Cc:** | Jasmine Ball; Joseph, Gregory (External); Schwinger, Robert A.; Troop, Andrew M.; Sharp, Jason S.; keckstein@kramerlevin.com; Preis, Arik; Huebner, Marshall S.; McClammy, James I. |
| **Subject:** | Re: [EXT] Purdue |

**EXTERNAL Email**

Mitch,

As we stated in our letter, it was on May 1, following the court conference, when Milbank/JHA understood that Norton Rose had identified that it had a conflict that precluded it from representing the IACs in connection with discovery. We defer to Norton Rose on the other matters your email addresses, and to Debevoise on the question directed at it.

Alexander B. Lees | Milbank | Partner
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5161
alees@milbank.com    milbank.com

On Jun 6, 2020, at 2:47 PM, Hurley, Mitchell <mhurley@akingump.com> wrote:

Dear Counsel:

Prior to receiving your letters yesterday the UCC was unaware that Norton Rose has a conflict that prevents it from representing the IACs in connection with discovery in these cases.  We ask that you please provide the following information to us in writing before the end of the day tomorrow:

(i) the specific nature of the conflict,
(ii) when the conflict arose,
(iii) the date(s) on which Milbank and Joseph Hage contend they first "learned that Norton Rose had identified that it would face a conflict," (JHA, Milbank letter at 4),
(iv) the date on which Debevoise contends it first "learned that Norton Rose Fulbright had identified a conflict that would prevent it from representing the IACs in" the "discovery process" (Deb Letter at ).
(v) the date on which Norton Rose "clarif[ied] for Side A and Side B counsel that Norton Rose was not serving as the IACs' discovery counsel in the Chapter 11 proceedings, and in fact would be precluded from assuming that role" (NR Letter at 2), a communication that apparently occurred "before the May 1, 2020 discovery hearing"  and
(vi) the date "following the conclusion of the May 1, 2020 discovery hearing" on which Norton Rose "revisit[ed] this point with family counsel again." (id.)

Thank you in advance for your cooperation.

1

REDACTED PURSUANT TO PROTECTIVE ORDER

Regards,


**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.1011 | Internal: 31011
Fax: +1 212.872.1002 | mhurley@akingump.com | akingump.com | Bio


The information contained in this e-mail message is intended only for the personal and
confidential use of the recipient(s) named above. If you have received this communication in
error, please notify us immediately by e-mail, and delete the original message.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s),
or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that
any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message
in error, please immediately notify the sender and delete this e-mail message from your computer.

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT L

| | |
|---|---|
| **From:** | Ball, Jasmine <jball@debevoise.com> |
| **Sent:** | Sunday, June 7, 2020 3:52 PM |
| **To:** | Lees, Alex; Hurley, Mitchell |
| **Cc:** | Joseph, Gregory (External); Schwinger, Robert A.; Troop, Andrew M.; Sharp, Jason S.; keckstein@kramerlevin.com; Preis, Arik; Huebner, Marshall S.; McClammy, James I. |
| **Subject:** | RE: [EXT] Purdue |

**\*\*EXTERNAL Email\*\***

Thank you, Mitch.  And thank you, Alex.  Our timing is not different from Milbank's.

Best regards,

--Jasmine


Jasmine Ball
Debevoise & Plimpton LLP
(O) +1 212 909 6845
(F) +1 212 521 7845
(M) +1 646 725 7471



-------- Original message --------
From: "Lees, Alex" <ALees@milbank.com>
Date: 6/7/20 15:44 (GMT-05:00)
To: "Hurley, Mitchell" <mhurley@akingump.com>
Cc: "Ball, Jasmine" <jball@debevoise.com>, "Joseph, Gregory (External)" <gjoseph@jha.com>, "Schwinger, Robert A." <robert.schwinger@nortonrosefulbright.com>, "Troop, Andrew M." <andrew.troop@pillsburylaw.com>, "Sharp, Jason S." <jason.sharp@pillsburylaw.com>, keckstein@kramerlevin.com, "Preis, Arik" <apreis@akingump.com>, "Huebner, Marshall S." <marshall.huebner@davispolk.com>, "McClammy, James I." <james.mcclammy@davispolk.com>
Subject: Re: [EXT] Purdue

Mitch,

As we stated in our letter, it was on May 1, following the court conference, when Milbank/JHA understood that Norton Rose had identified that it had a conflict that precluded it from representing the IACs in connection with discovery. We defer to Norton Rose on the other matters your email addresses, and to Debevoise on the question directed at it.

Alexander B. Lees | Milbank | Partner

T: +1 212.530.5161
alees@milbank.com    milbank.com


On Jun 6, 2020, at 2:47 PM, Hurley, Mitchell <mhurley@akingump.com> wrote:

REDACTED PURSUANT TO PROTECTIVE ORDER

Dear Counsel:

Prior to receiving your letters yesterday the UCC was unaware that Norton Rose has a conflict that prevents it from representing the IACs in connection with discovery in these cases.  We ask that you please provide the following information to us in writing before the end of the day tomorrow:

(i) the specific nature of the conflict,
(ii) when the conflict arose,
(iii) the date(s) on which Milbank and Joseph Hage contend they first "learned that Norton Rose had identified that it would face a conflict," (JHA, Milbank letter at 4),
(iv) the date on which Debevoise contends it first "learned that Norton Rose Fulbright had identified a conflict that would prevent it from representing the IACs in" the "discovery process" (Deb Letter at ).
(v) the date on which Norton Rose "clarif[ied] for Side A and Side B counsel that Norton Rose was not serving as the IACs' discovery counsel in the Chapter 11 proceedings, and in fact would be precluded from assuming that role" (NR Letter at 2), a communication that apparently occurred "before the May 1, 2020 discovery hearing"  and
(vi) the date "following the conclusion of the May 1, 2020 discovery hearing" on which Norton Rose "revisit[ed] this point with family counsel again." (id.)

Thank you in advance for your cooperation.

Regards,

**Mitchell P. Hurley**
**AKIN GUMP STRAUSS HAUER & FELD** LLP
One Bryant Park  |  New York, NY 10036-6745  |  USA  |  Direct: +1 212.872.1011  |  Internal: 31011
Fax: +1 212.872.1002  |  mhurley@akingump.com  |  akingump.com  |  Bio

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT M

REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT N

REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT O

REDACTED PURSUANT TO PROTECTIVE ORDER

REDACTED

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT P

REDACTED PURSUANT TO PROTECTIVE ORDER

# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number
+1-212-455-3242

E-mail Address
jmclaughlin@stblaw.com

BY E-MAIL                                         February 6, 2020

Re:    *In re Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr.
       S.D.N.Y.)

Mitchell P. Hurley, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745

Dear Mr. Hurley:

I write in response to your letter of January 28, 2020.  My firm represents Stuart
Baker with respect to his representation of Purdue Pharma L.P. and related entities
(collectively "Purdue"), as well as members of the Sackler family.  Please continue to direct
correspondence regarding Mr. Baker to my attention.

Mr. Baker has adopted appropriate document retention policies in connection with
his representation of clients and, more recently, the opioid-related litigation.

Many of the documents that concern Mr. Baker's representation of Purdue and/or
members of the Sackler family are subject to the attorney-client privilege, which is
controlled by his clients.  We also expect that any non-privileged communications with
Purdue and/or individual Sacklers could be obtained from them directly.  For these reasons,
we believe it is unlikely Mr. Baker is in possession of non-privileged documents that cannot
be obtained more readily from other sources.  We are nonetheless willing to discuss
particular categories of information you are seeking.

Please feel free to contact me with any questions.

Very truly yours,

*Joseph M. McLaughlin*

Joseph M. McLaughlin

BEIJING    HONG KONG    HOUSTON    LONDON    LOS ANGELES    PALO ALTO    SÃO PAULO    TOKYO    WASHINGTON, D.C.

REDACTED PURSUANT TO PROTECTIVE ORDER

# EXHIBIT Q

REDACTED PURSUANT TO PROTECTIVE ORDER

Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number                                                                                          E-mail Address

+1-212-455-3242                                                                                          jmclaughlin@stblaw.com

BY E-MAIL                                              April 9, 2020

                              Re:    *In re Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr.
                                     S.D.N.Y.)

Katherine Porter
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745

Dear Ms. Porter:

        I write in response to your email dated March 5, 2020, identifying documents which
the Official Committee of Unsecured Creditors of Purdue Pharma, L.P. (the "Committee")
contends may be in the immediate possession or control of my client, Stuart D. Baker.
While we believe that most of the non-privileged communications between our client and
Purdue and/or members of the Sackler family would be most efficiently obtained directly
from those parties, we are willing to provide non-privileged responsive documents and
information to the extent those are within Mr. Baker's unique possession.

        To that end, we are willing to provide the Committee with information regarding Mr.
Baker's positions at Purdue and Sackler-related entities, as well as litigation commenced
against him with respect to opioids.  Attached hereto as Exhibits A-C are (a) a list
identifying complaints currently known to us in which Mr. Baker is or was named as a
defendant relating to Purdue, the Sacklers, IACs, or opioids; (b) a list of all positions Mr.
Baker holds or held at Purdue, IACs, as well as certain Sackler family affiliates; and (c) a
subpoena for deposition issued upon Mr. Baker by the State of Rhode Island.[1]  Mr. Baker
does not have any other responsive documents in his possession with respect to your request
for information concerning depositions and/or other discovery directed at Mr. Baker in
connection with Purdue, Sacklers, or opioids.

---

[1]      Mr. Baker has not yet responded to the Rhode Island subpoena in light of the
         Preliminary Injunction Order issued in the bankruptcy court on October 11, 2019.

REDACTED PURSUANT TO PROTECTIVE ORDER

Simpson Thacher & Bartlett LLP

Katherine Porter                    -2-                    April 9, 2020

Please find responses to your remaining requests below.

1.    We understand that "bakers@us01.apmn.org" is not an independent email address but rather a Microsoft Office 365 authentication address associated with Mr. Baker's Purdue email profile that was generated (and displayed) internally when a Purdue email user emailed Mr. Baker using his Purdue username.  Such an email would go to Mr. Baker at his pharma.com or law firm email addresses, and also to the apmn.org authentication address. Thus, a search for emails sent to or received by "bakers@us01.amn.org" would not yield any documents not already captured by Mr. Baker's law firm or Purdue email addresses. Nor did Mr. Baker use any other email addresses for responsive communications related to the instant action apart from those hosted by Purdue, Chadbourne & Parke, and later, Norton Rose.

2.    Mr. Baker did not engage in any responsive communications via Blackberry messenger, social media direct messaging, texts messages, or other mobile messaging platforms.  Mr. Baker does not maintain any responsive files at home or in any personal storage.

3.    To the extent Mr. Baker possesses responsive material in his capacity as current or former trustee of any Sackler family trusts, such material would not be maintained independently from the rest of his emails and hard copy documents, which are in the possession of Purdue.  We understand that documents concerning certain trusts for which Stuart Baker serves as trustee may be the subject of separate Rule 2004 subpoenas recently issued by the Committee as to the Initial Covered Sackler Persons.  If such a subpoena is served on Mr. Baker, we will represent Mr. Baker with respect to the subpoena.

4.    Mr. Baker has not been a member or director of any pain management or advocacy groups related to the use of opioids for pain management, nor has Mr. Baker received any honors, recognitions, or awards from any such organizations.

Please let us know if you have any questions.

Very truly yours,

/s/ Joseph M. McLaughlin
Joseph M. McLaughlin

Enclosures

REDACTED PURSUANT TO PROTECTIVE ORDER

# Exhibits Omitted