IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>PURDUE PHARMA L.P., et al.,<br><br><br>Debtors.[1] | Chapter 11<br>Case No. 19-23649 (RDD)<br>Administratively Consolidated |

**HOSPITAL CLAIMANTS' MOTION PURSUANT TO FED. BANKR. P. 9014 AND 7023 FOR AN ORDER MAKING FED. R. CIV. P. 23 APPLICABLE TO THESE PROCEEDINGS, PERMITTING THEM TO FILE A CLASS PROOF OF CLAIM AND GRANTING RELATED RELIEF**

MCGRAIL & BENSINGER LLP
888-C 8th Avenue, #107
New York, New York 10019
Ph: (201) 931-6910

BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, Mississippi 39095
Ph: (662) 834-2488

CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Ph: (202) 789-3960

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014).

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1
II.     JURISDICTION AND VENUE ........................................................................... 4
III.    STATEMENT OF FACTS .................................................................................. 4
        A.    Background:  The Debtors' Role In The Opioid Crisis ......................... 4
        B.    Relevant Procedural Posture Of The Debtors' Chapter 11 Case ......... 5
        C.    Hospital Class Action And Other Hospital Actions Naming Purdue
              As A Defendant ..................................................................................... 6
IV.     ARGUMENT ..................................................................................................... 8
        A.    The Court Should Exercise Its Discretion To Extend Application Of
              Rule 23 To The Class Proof Of Claim ................................................. 8
              1.    *Musicland* Factor 1: This Motion Is Timely And Is Consistent With
                    The Efficient Administration Of The Estates. .............................. 11
              2.    *Musicland* Factor 2: That A Class Was Not Certified Prior To The
                    Bankruptcy Is Not A Sufficient Reason To Prevent Class Treatment ........... 13
              3.    *Musicland* Factor 3: Whether The Members Of The Putative Class
                    Received Notice Of The Bar Date ................................................ 14
        B.    Applying Rule 7023, The Court Should Grant The Hospital Claimants'
              Motion To Proceed As A Class ............................................................ 16
              1.    The Hospitals Satisfy All The Rule 23(a) Factors .......................... 18
                    a.    (Numerosity) The Class Is So Numerous That It Is Impracticable
                          To Bring All Class Members Before The Court. .................. 18
                    b.    (Commonality) Common Factual And Legal Questions Exist. ............ 19
                    c.    (Typicality) The Hospitals Are Typical Of The Class. .............. 21
                    d.    (Adequacy) The Hospitals And Their Attorneys Are Adequate
                          Representatives ................................................................ 22
              2.    The Hospitals Satisfy The Requirements Of Rule 23(b)(3) ............ 23
                    a.    (Predominance) Common Questions Predominate Over
                          Individual Issues ............................................................. 24
                    b.    (Superiority) The Filing Of A Class Claim Is The Superior
                          Method Of Proceeding ..................................................... 27
V.      CONCLUSION ................................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................... 23, 24, 27

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)............................................ 17

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998)............................................................ 21

*Bradburn v. 3M*, No. Civ. A. 02-7676, 2004 WL 1842987 (E.D. Pa. Aug. 18, 2004).......... 22, 23

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ................................ 17, 21

Case Management Order No. 1, *In re Nat'l Prescription Opiate Litig.* [Dkt. No. 232]

   (N.D. Ohio Apr. 11, 2018) ........................................................................................................ 7

*Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013)................................ 17

*Chiang v. Veneman*, 385 F.3d 256 (3d Cir. 2004) ....................................................................... 19

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................................... 24

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ....................................................... 22

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).................................................................... 17

*Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012)........................................................................... 9, 14

*Hercules Inc. v. Envtl. Prot. Agency*, 598 F.2d 91 (D.C. Cir. 1978) ........................................... 16

*In re Bally Total Fitness of Greater N.Y.*, 402 B.R. 616 (Bankr. S.D.N.Y. 2009) ...................... 10

*In re Birting Fisheries, Inc.*, 92 F.3d 939 (9th Cir. 1996) ............................................................. 8

*In re Blockbuster Inc., et al.*, 441 B.R. 239 (Bankr. S.D.N.Y. 2011) .......................................... 10

*In re Chaparral Energy, Inc.*, 571 B.R. 642 (Bankr. D. Del. 2017)............................................ 14

*In re Charter Co.*, 876 F.2d. 866 (11th Cir. 1989) ................................................................... 8, 9

*In re Chateaugay Corp.*, 104 B.R. 626 (S.D.N.Y. 1989) ................................................. 8, 15, 16

*In re Connaught Grp., Ltd.*, 491 B.R. 88 (Bankr. S.D.N.Y. 2013).............................................. 14

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ................................ 22

*In re DaimlerChrysler AG Secs. Litig.*, 216 F.R.D. 291 (D. Del. 2003) ....................................... 18

*In re Dynegy, Inc.*, 770 F.3d 1064 (2d Cir. 2014) ........................................................................ 9

*In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1 (S.D.N.Y. 2005) ........................................... 8, 9, 11

*In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998) ......................... 11, 12

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29 (2d Cir. 2009) .............................. 21

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007) ................................... 28

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ............................................ 25

*In re Kaiser Grp. Intern., Inc.*, 278 B.R. 58 (Bankr. D. Del. 2002) ......................................... 14

*In re MF Glob. Inc.*, 512 B.R. 757 (Bankr. S.D.N.Y. 2014) ...................................................... 14

*In re Motors Liquidation Co.*, 447 B.R. 150 (Bankr. S.D.N.Y. 2011) ........................................ 10

*In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007) ......................... 10, 11, 12

*In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2018 WL 6628898

(N.D. Ohio Dec. 19, 2018) ...................................................................................................... 7

*In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2020 WL 1669655

(N.D. Ohio Apr. 4, 2020) ........................................................................................................ 7

*In re Pacific Sunwear of Calif.*, Inc., No. 16-10882, 2016 WL 3564484

(Bankr. D. Del. June 22, 2016) ......................................................................................... 12, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223

(2d Cir. 2016) ........................................................................................................................ 22

*In re Petrobras Secs.*, 862 F.3d 250, 270 (2d Cir. 2017) ........................................................... 24

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008) ............................................... 25

*In re Spring Ford Indus.*, No. 02-15015 DWS, 2003 WL 21785960

   (Bankr. E.D. Pa. July 25, 2003) ............................................................ 12

*In re Tarragon Corp.*, No. 09-10555 DHS, 2010 WL 3842409

   (Bankr. D.N.J. Sept. 24, 2010) ............................................................ 11

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) ...................... 27

*In re Thomson McKinnon Secs., Inc.*, 150 B.R. 98 (Bankr. S.D.N.Y. 1992) ............................... 12

*In re Trebol Motors Distrib. Corp.*, 220 B.R. 500 (1st Cir. 1998) .................................. 9

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)......................... 24, 25, 27

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838

   (6th Cir. 2013).................................................................. 17, 18, 24, 25, 26

*In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365 (Bankr. S.D.N.Y. 1997)................. 8, 9

*In re Opioid Litig.*, No. 19-C-9000 (Cir. Ct. Kanawha Co., W. Va. Feb. 19, 2020) ..................... 8

*Int'l Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363

   (E.D. Mich. July 13, 2006) ............................................................ 21

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015)................................... 19

*Johnston v. HBO Film Mgmt.*, 265 F.3d 178 (3d Cir. 2001)................................... 19, 27

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ....................................... 25

*Marcus v. Dep't of Revenue*, 206 F.R.D. 509 (D. Kan. 2002).................................. 23

*Matter of Am. Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988) ................................. 8

*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) ....................................... 21

*Microsoft I-V Cases*, No. J.C.C.P. No. 4106, 2002-2 Trade Cas. ¶ 73,013

   (Cal. Sup. Ct. Aug. 29, 2000) ........................................................ 27, 28

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ................................. 25

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)............................................................ 17, 24

*Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994)............................................................................... 19

*Neale v. Volvo Cars of North Am.*,794 F.3d 363 (3d Cir. 2015)........................................... 25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001)............... 21

Order (clarifying CMO No. 1), *In re Nat'l Prescription Opiate Litig.* [Dkt. No. 371]

(N.D. Ohio May 3, 2018)................................................................................................ 7

Order Approving Stipulation by and Between the Debtors, the Official Committee of Unsecured

Creditors, and the Hospital Claimants Establishing Class Claims Procedures, *In re Insys

Therapeutics, Inc.*, No. 19-11292 [Dkt. No. 949] (Bankr. D. Del. Dec. 4, 2020) ................... 11

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014)............. 18

*Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989), *cert denied*, 494 U.S. 1080 (1990)... 8

*Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3d Cir. 2015) ........................................................ 25

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)............................................................ 18, 21

Ruling, *Tucson Med. Ctr. v. Purdue Pharma, L.P., et al.*, No. C20184991

(Ariz. Super. Ct., Pima Cty., Sept. 16, 2019)................................................................. 8

*Southwest Miss. Reg'l Med. Ctr., et al v. AmerisourceBergen Drug Corp., et al*,

No. 1:17-op-45175 [Dkt. No. 1] (N.D. Ohio, Nov. 1, 2017) ..................................... 6

*Southwest Miss. Reg'l Med. Ctr., et al v. AmerisourceBergen Drug Corp., et al*,

No. 1:17-op-45175 [Dkt. No. 31] (N.D. Ohio, Mar. 31, 2019) ................................ 6

*Stewart v. Abraham*, 275 F.3d 220, 227 (3rd Cir. 2001) ............................................. 18

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015)...................................... 19, 27

*Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016)..................................... 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................ 17, 19

## Other Authorities

AM. HOSP. ASS'N, HOSPITALS AND HEALTH SYSTEMS FACE UNPRECEDENTED FINANCIAL

    PRESSURES DUE TO COVID-19 (May 2020),

    https://www.aha.org/system/files/media/file/2020/05/aha-covid19-financial-impact-0520-

    FINAL.pdf. ................................................................................................................ 4

American Hospital Association, *Fast Facts on U.S. Hospitals*, AM. HOSP. ASS'N (Jan. 2020),

    https://www.aha.org/system/files/media/file/2020/01/2020-aha-hospital-fast-facts-new-Jan-

    2020.pdf ................................................................................................................... 3

Ayla Ellison, *42 Hospitals Closed, Filed for Bankruptcy This Year, Becker's Healthcare*

    (June 22, 2020), https://www.beckershospitalreview.com/finance/42-hospitals-closed-filed-

    for-bankruptcy-this-year.html ................................................................................. 3

Centers for Disease Control and Prevention, *Prescription Opioid Data,*

    https://www.cdc.gov/drugoverdose/data/prescribing.html, (last visited June 25, 2020) ............ 5

The Editorial Board, *An Opioid Crisis Foretold*, N.Y. TIMES (Apr. 21, 2018),

    https://www.nytimes.com/2018/04/21/opinion/an-opioid-crisis-foretold.html ......................... 5

## Rules

Fed. R. Bankr. P. 7023 ................................................................................................ 9

Fed. R. Bankr. P. 9014 ................................................................................................ 9

Fed. R. Civ. P. 23 ............................................................................. 16, 18, 19, 21, 22

Fla. Stat. §§ 817.40–817.44 ....................................................................................... 7

## Treatises

5 JAMES WM. MOORE, ET AL, MOORE'S FEDERAL PRACTICE ¶ 23.25[4][b][ii]

    (3d ed. 2003) .......................................................................................................... 23

The Hospital Claimants,[2] on behalf of themselves and a proposed class of similarly situated

persons (the "Hospital Class" or the "Class"),[3] by and through their undersigned counsel, hereby

move this court pursuant to Fed. R. Bankr. P. 9014 and 7023 for the entry of an order making Fed.

R. Civ. P. 23 applicable to the "Hospitals' Class Proof of Claim" (hereinafter "Class Proof of

Claim" or "Class Claim"), permitting them to file the Class Proof of Claim and granting related

relief. This motion ("Motion") is supported by the supporting declaration of Shannon Jerse, Deputy

General Counsel of the Sisters of Charity Health System and General Counsel to St. Vincent

Charity Medical Center ("Jerse Decl.").    In support of the Motion, the Hospital Claimants

respectfully represent as follows:

## I.    **INTRODUCTION**

1.    On November 30, 2017, the Hospitals, on behalf of themselves and all other

hospitals similarly situated, filed a class action suit ("Hospital Class Action") against Purdue and

other opioid manufacturers, certain opioid distributors and certain retailers alleging claims under

and/or for: (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

("RICO") and state law equivalents; (2) nuisance; (3) negligence; (4) common law fraud; (5)

violations of state consumer protection statutes; and (6) unjust enrichment. *See* **Exhibit A** attached

hereto, First Amended Complaint in the Hospital Class Action ("First Amended Complaint").[4]

---

[2] As used herein, the "Hospital Claimants" or "Hospitals" are: Infirmary Health Hospitals, Inc., Mobile, Alabama; St. Vincent Charity Medical Center (at times d/b/a Rosary Hall), Cleveland, Ohio; Southwest Mississippi Regional Medical Center, McComb, Mississippi; and Monroe County Healthcare Authority, d/b/a Monroe County Hospital, Monroeville, Alabama.

[3] The formal definition of the Hospital Class is contained in Section IV(A), *infra.* For purposes of the Motion and the Class Proof of Claim only, the Ad Hoc Group of Hospitals (as defined below) is not included in the Hospital Class, as the Ad Hoc Group of Hospitals will be filing a separate combined proof of claim in accordance with the Bar Date Order (as defined below).  Moreover, in addition to the Ad Hoc Group of Hospitals, any other hospitals that will file an individual proof of claim also will not be included in the Class Proof of Claim.

[4] The 300+ page First Amended Complaint is omitted from paper service copies of this motion. It is available on ECF in the MDL Proceeding, No. 1:17-md-02804-DAP (N.D. Ohio) (Dkt. No. 1427), as well as by ECF in the record in

The Hospitals Claimants, as putative class representatives, are all hospitals that have treated patients for conditions related to the use of prescription opiates manufactured by the Debtors and others. As explained in more detail below, the Hospital Class Action currently is stayed.

2.      The Hospital Claimants, through their counsel ("Class Counsel") have prepared (and will file in advance of the Bar Date) a Class Proof of Claim against Purdue Pharma L.P. ("Purdue Pharma") and its subsidiaries that are debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, "Debtors" or "Purdue") for damages stemming from the Debtors' misconduct described in detail in the First Amended Complaint. A true copy of the proposed Class Proof of Claim, without the First Amended Complaint, is attached hereto as **Exhibit B**.[5]

3.      The Hospital Claimants now move for an order authorizing the application of Rule 7023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to the Class Proof of Claim. As a threshold matter, it is well settled that class proofs of claim are permitted in bankruptcy proceedings. Here, the discretionary factors for applying Rule 23 of the Federal Rules of Civil Procedure ("Civil Rules") militate in favor of permitting the Class Proof of Claim:  (i) the Motion is timely and will not compromise the efficient administration of the Debtors' estates as no reorganization plan has been filed, mediation is still ongoing and the Bar Date (as defined below) is approximately thirty (30) days away; (ii) the fact that the Hospital Class Action was not certified before the commencement of these cases due to a procedural stay is not reason to prevent class

---

this      action.      It      is      also      available      to      download      using      this      link:
https://www.dropbox.com/sh/3aiid3cwbt8e6gt/AAB9P_mKV8QQ7FiaEv0iQoNga?dl=0
[5] As set forth in the Class Proof of Claim, the relief sought by the Hospital Claimants is prospective.

treatment; and (iii) although many hospitals in the United States[6] may have received actual notice

of the Bar Date in view of the expansive noticing strategy implemented in this case, many (if not

most) of the hospitals to be included in the Class Proof of Claim are unable to file individual proofs

of claim for a host of reasons (despite the additional thirty days added on to the Bar Date) and, as

a result, would be unable to participate in the nationwide opioid abatement program this Court has

expressed a desire to see implemented in this case.

4.      For example, those hospitals may not appreciate why they are receiving notice of a

Bar Date in this case, may not necessarily be sensitized to the legal basis for their claim against

the Debtors, and simply do not have the requisite human or financial resources to complete a proper

individual proof of claim.  The proof of claim form requires the hospital to state when the hospital

was "first injured," to describe the conduct leading to the injury, to describe "all alleged causes of

action" and "legal theories," to identify "every category of damage," and to quantify the claim.

This is a highly complex form to complete; it requires information much of which is beyond the

knowledge base of a hospital, numerous hours of professional work to complete and retention of

a damages expert.

5.      To make matters worse, the COVID-19 pandemic has caused unimaginable

financial distress on, and an existential crisis for, hospitals, requiring them, among other things, to

reassign resources, furlough administrative staff and attend to unprecedented patient care.[7] As set

---

[6] Currently, there are approximately 6,210 hospitals in the United States. *See* American Hospital Association, *Fast Facts on U.S. Hospitals*, AM. HOSP. ASS'N (Jan. 2020),  https://www.aha.org/system/files/media/file/2020/01/2020-aha-hospital-fast-facts-new-Jan-2020.pdf.

[7] *See, e.g.*, Ayla Ellison, *42 Hospitals Closed, Filed for Bankruptcy This Year, Becker's Healthcare* (June 22, 2020), https://www.beckershospitalreview.com/finance/42-hospitals-closed-filed-for-bankruptcy-this-year.html  ("At least 42 hospitals across the U.S. have closed or entered bankruptcy this year, and the financial challenges caused by the COVID-19 pandemic may force more hospitals to do the same in coming months. COVID-19 has created a cash crunch for many hospitals across the nation. They're estimated to lose $200 billion between March 1 and June 30, according to a report from the American Hospital Association. More than $161 billion of the expected revenue losses

forth in the Jerse Decl. and described herein, the present circumstances simply do not allow many, if not most hospitals in the proposed class, to complete a proof of claim.  Respectfully, the only way to protect the rights of, and to ensure the relevant hospitals have the opportunity to partake in a national abatement program, in this case is through a Class Proof of Claim.

6.      Once the Court determines to apply Rule 7023 to the Class Proof of Claim, the Court should allow the filing of the Class Proof of Claim on behalf of the Hospital Claimants and the class of similarly situated hospitals, i.e., the Hospital Class. That is because all four prerequisites of Rule 23(a) of the Civil Rules–numerosity, commonality, typicality, and adequacy– are satisfied here; additionally, the Class Proof of Claim meets the requirements of Rule 23(b)(3) of the Civil Rules–superiority and predominance.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Rule 23 of the Civil Rules and Rules 7023 and 9014 of the Bankruptcy Rules.

## III.      STATEMENT OF FACTS

### A.  Background:  The Debtors' Role In The Opioid Crisis

8.      The Debtors are pharmaceutical companies that manufacture, sell or distribute, among other products, opioid pain medications. *See* Debtors' Informational Brief [Dkt. No. 17] ("Informational Brief"), p. 1. Purdue's opiate products, including OxyContin® Extended-Release

---

will come from canceled services, including nonelective surgeries and outpatient treatment. Moody's Investors Service said the sharp declines in revenue and cash flow caused by the suspension of elective procedures could cause more hospitals to default on their credit agreements this year than in 2019."); *see generally*, AM. HOSP. ASS'N, HOSPITALS AND HEALTH SYSTEMS FACE UNPRECEDENTED FINANCIAL PRESSURES DUE TO COVID-19 (May 2020), https://www.aha.org/system/files/media/file/2020/05/aha-covid19-financial-impact-0520-FINAL.pdf.

Tablets CII ("OxyContin"), Purdue Pharma's most prominent pain medication, have been the target of over 2,600 civil actions across the United States and its territories ("Pending Actions"). *Id.* The Pending Actions generally allege that the defendant Debtors falsely and deceptively marketed OxyContin and opioid pain medications and are liable for the national opioid crisis. *Id.*

9.    Indeed, the United States is in the midst of an opioid epidemic caused by the aggressive promotional marketing, sale, and distribution of prescription opioids by pharmaceutical manufacturers, distributors and retailers, which has resulted in addiction, criminal activity, serious health issues, and loss of life.[8] According to the Centers for Disease Control ("CDC"), from 1999 to 2014, the sales of prescription opioids in the United States nearly quadrupled, but there was no overall change in the amount of pain that Americans reported.[9] According to the CDC, opioid overdoses killed more than 45,000 people over a 12-month timeframe that ended in September 2017. It is already the deadliest drug epidemic in American history.[10] If current trends continue, lives lost from opioid overdoses will soon represent the vast majority of all drug overdose deaths in the United States.

**B. Relevant Procedural Posture Of The Debtors' Chapter 11 Case**

10.    The Debtors filed their Chapter 11 bankruptcy proceedings on September 16, 2019. On February 3, 2020, this Court entered an Order fixing the deadline for filing proofs of claim against the Debtors' estates [Dkt. No. 800] (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for general unsecured creditors to file a proof of claim (the "Bar Date") was June 30,

---

[8] As used herein, the term "opioid" refers to the entire family of opiate drugs including natural, synthetic, and semi-synthetic opiates.
[9] Centers for Disease Control and Prevention, *Prescription Opioid Data,* https://www.cdc.gov/drugoverdose/data/prescribing.html, (last visited June 25, 2020).
[10] The Editorial Board, *An Opioid Crisis Foretold*, N.Y. TIMES (Apr. 21, 2018), https://www.nytimes.com/2018/04/21/opinion/an-opioid-crisis-foretold.html.

2020. On June 3, 2020, this Court entered an Order extending the Bar Date to July 30, 2020 [Dkt.
No. 1221]. Pursuant to the Bar Date Order, the Ad Hoc Group of Hospitals is permitted to file a
consolidated claim, which they will be doing before the Bar Date.[11] Accordingly, the claims of the
Ad Hoc Group of Hospitals are not included in the request herein.

11.     The Debtors have not yet filed a Chapter 11 plan, and their exclusive right to do so
was extended to July 13, 2020 in January [Dkt. 780]. The Debtors and all other opioid claimants
in these chapter 11 cases are engaged in mediation to attempt to resolve the dispute(s) between the
so-called "Non-Federal Public Claimants," on the one hand, and the "Private Claimants," on the
other hand, as to the allocation of value/proceeds available from the Debtors' estates to such
claimants.

**C.  Hospital Class Action And Other Hospital Actions Naming Purdue As A Defendant**

12.     In the opioid MDL proceeding, Plaintiffs filed a class action complaint on
November 30, 2017, and amended their complaint with the filing of the First Amended Complaint
on March 11, 2019. *See Southwest Miss. Reg'l Med. Ctr., et al v. AmerisourceBergen Drug Corp.,
et al*, No. 1:17-op-45175 [Dkt. No. 1] (N.D. Ohio, Nov. 1, 2017); *Southwest Miss. Reg'l Med. Ctr.,
et al v. AmerisourceBergen Drug Corp., et al*, No. 1:17-op-45175 [Dkt. No. 31] (N.D. Ohio, Mar.
31, 2019). In the First Amended Complaint, four Plaintiff hospitals (St. Vincent Charity Medical
Center, Southwest Mississippi Regional Medical Center, Infirmary Health Hospitals, Inc., and
Monroe County Healthcare Authority d/b/a Monroe County Hospital) have brought claims on
behalf of themselves and all others similarly situated under the federal RICO statute, state RICO

---

[11] In November 2019, a group of hospitals that have treated and treat patients for conditions related to the use of opiates
manufactured by one or more of the Debtors (the "Ad Hoc Group of Hospitals") was formed. On December 3, 2019,
the Ad Hoc Group of Hospitals filed a verified statement pursuant to Fed. R. Bankr. P. 2019 [Dkt No. 577] (the
"Verified Statement").

statutes, state statutes proscribing unfair and deceptive acts in commerce, as well as state law claims of nuisance, negligence, fraud and deceit, civil conspiracy, and unjust enrichment. The Hospital Claimants, the putative class representatives, are hospitals that have treated patients for conditions related to the use, misuse, abuse, and addiction of prescription opiates produced by the Debtors and other manufacturers. Pursuant to Judge Polster's case management orders, Plaintiffs' class action has been stayed. [12]

13.    Other actions by hospitals against substantially the same defendants, including Purdue, also are pending in the MDL Proceeding. One such action was selected by counsel, at the MDL Court's direction, as a "bellwether" case in which motions to dismiss would be fully briefed and, presumably, resolved by the MDL Court–an action brought by West Boca Medical Center of Palm Beach County, Florida, No. 18-op-45530-DAP (N.D. Ohio) ("*West Boca*"). All other hospital actions in the MDL, including the Class Action, were (and remain) stayed (the vast majority of all cases, brought by many categories of claimants, in the MDL, have been stayed for nearly two years pursuant to the MDL Court's operative Case Management Orders).[13]   On April 3, 2020, the MDL court upheld the complaint in *West Boca*, sustaining the hospital's claims under the federal RICO statutes, Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 817.41. (for Misleading Advertisement), Negligence, Nuisance, and Unjust Enrichment. *See In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2020 WL 1669655, at *33 (N.D. Ohio Apr. 3, 2020).[14]

---

[12] *See* Case Management Order No. 1, *In re Nat'l Prescription Opiate Litig.* [Dkt. No. 232] (N.D. Ohio Apr. 11, 2018) ("CMO No. 1") and Order (clarifying CMO No. 1), *In re Nat'l Prescription Opiate Litig.* [Dkt. No. 371] (N.D. Ohio May 3, 2018).

[13] *Id.*

[14] The MDL Court had earlier denied, in principal part, motions to dismiss brought by Purdue and other manufacturer defendants, as well as motions brought by distributor defendants, in a bellwether case brought by Summit County, Ohio, a municipality ("*Summit* Action"). *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2018 WL 6628898, at *21 (N.D. Ohio Dec. 19, 2018).  The MDL Court later denied, in principal part, in a series of opinions addressing separate issues, several summary judgment motions. The *Summit* Action settled on the eve of trial.

14.     In addition to those claims pending in the MDL Proceeding, several hospitals have

brought cases in state court, including hospitals in Arizona, West Virginia, Alabama and Florida

that are represented by Class Counsel. Notably, motions to dismiss have been denied in principal

part proceedings in state court in Arizona[15] and West Virginia,[16] and none have been granted in

any of the state court hospital actions.

15.     With respect to the defendants' conduct and theories of liability, the Hospitals

allege, among other things, that between the 1990s and 2010s, the Debtors (1) engaged in the

fraudulent marketing of opioids in order to promote the broader prescription and use of opioids,

and (2) engaged in tortious conduct in the distribution of opioids, deliberately failing to report

suspicious orders or prescribers, or otherwise shut down suspicious prescribers or distribution

channels.

## IV.    ARGUMENT

### A.  The Court Should Exercise Its Discretion To Extend Application Of Rule 23 To The Class Proof Of Claim

16.     It is now universally established that class proofs of claim are permissible in

bankruptcy proceedings. *See*, *e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4–5 (S.D.N.Y.

2005) (adopting approach set forth in *Matter of Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir.

1988), which held that class proofs of claim may be allowed at the discretion of the bankruptcy

court); *In re Chateaugay Corp.*, 104 B.R. 626, 633 (S.D.N.Y. 1989); *In re Woodward & Lothrop*

*Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997); *In re Charter Co.*, 876 F.2d 866, 873

(11th Cir. 1989); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1472 (6th Cir. 1989), *cert denied*,

---

[15] Ruling, *Tucson Med. Ctr. v. Purdue Pharma, L.P., et al.*, No. C20184991 (Ariz. Super. Ct., Pima Cty., Sept. 16, 2019).

[16] Order, *In re Opioid Litig.*, No. 19-C-9000 (Cir. Ct. Kanawha Co., W. Va. Feb. 19, 2020).

494 U.S. 1080 (1990); *In re Birting Fisheries, Inc.*, 92 F.3d 939, 939 (9th Cir. 1996); *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (1st Cir. 1998); *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012). The Bankruptcy Code's legislative history "supports the conclusion that class proofs of claim are valid," because "[w]hile the legislative history is silent on the specific issue, it evinces a congressional intent to open bankruptcy proceedings to the widest possible range of 'players.'" *Charter*, 876 F.2d at 870.

17.     "The right to proceed as a class claim, however, is not automatic." *Woodward & Lothrop*, 205 B.R. at 369. The Bankruptcy Rules distinguish between "adversary proceedings" (which are governed by Part VII of the Bankruptcy Rules, including Bankruptcy Rule 7023) and "contested matters" (which are governed by Bankruptcy Rule 9014). Bankruptcy Rule 7023 provides that Rule 23 is applicable in adversary proceedings. *See* Fed. R. Bankr. P. 7023. Bankruptcy Rule 9014, which applies to contested matters, lists certain of the adversary proceeding rules that automatically apply in contested matters, but Rule 7023 is not among those listed. *See* Fed. R. Bankr. P. 9014(c). Bankruptcy Rule 9014 goes on to provide, however, that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." *Id.* Therefore, this provision of Bankruptcy Rule 9014 contemplates application of Bankruptcy Rule 7023 and Civil Procedure Rule 23 to a contested matter, at the bankruptcy court's discretion.

18.     Accordingly, "[i]n a contested matter, the party seeking to rely on Rule 23 must file a motion under [Bankruptcy] Rule 9014." *In re Dynegy, Inc.*, 770 F.3d 1064, 1069 (2d Cir. 2014); *see also Ephedra*, 329 B.R. at 5 ("Rule 23 may be invoked against the debtor only if the bankruptcy court first makes a discretionary ruling under Rule 9014 to apply Rule 23 to the proof of claim.").

19.    Courts in the Second Circuit have adopted the more practical approach that a putative class representative need not await an objection to a claim (thus commencing a contested matter) to invoke Rule 23, but "can move at any time for a declaration that it may file a class proof of claim." *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007) (*citing Ephedra*, 329 B.R. at 6) ("requiring the debtor to object to a claim before applying Rule 23 would 'mean that a debtor and others with interests adverse to a class claim could prevent the claimant from asking the bankruptcy court to apply Rule 23 simply by withholding their objections until the eve of confirmation and then move to expunge the class claim on the grounds that applying Rule 23 would unduly delay distribution'"). Adjudication of whether to permit the filing of a class claim requires the bankruptcy court to determine if: (1) the class claimant has moved to extend application of Rule 23, (2) the claims sought to be certified fulfill the requirements of Rule 23 and (3) the benefits to be gained from the use of a class claim device are consistent with the goals of bankruptcy. *Id.*; *In re Blockbuster Inc., et al.*, 441 B.R. 239, 241 (Bankr. S.D.N.Y. 2011); *In re Motors Liquidation Co.,* 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011); *In re Bally Total Fitness of Greater N.Y.*, 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009).

20.    In *Musicland*, this Court articulated the factors that a bankruptcy court should consider in determining whether to exercise its discretion to extend application of Rule 23 to a proof of claim. Those factors, which have come to be known as the "*Musicland* Factors," are: (1) whether class certification will adversely affect the administration of the estate; (2) whether the class was certified pre-petition; and (3) whether the members of the putative class received notice of the bar date. *Musicland*, 362 B.R. at 654; *Motors Liquidation,* 447 B.R. at 620. In considering these factors, no single factor is dispositive, and the weight given to any factor depends on the facts of each case. *Id.* The Musicland Court explained that factor (3) "often centers on (a) the

timing of the motion for certification . . . and (b) whether a plan has been negotiated, voted on or confirmed." *Id.*

21.    Here, where the *Musicland* factors weigh heavily in favor of allowing a class claim, this Court should exercise its discretion and apply Bankruptcy Rule 7023.

### 1. *Musicland* Factor 1: This Motion Is Timely And Is Consistent With The Efficient Administration Of The Estates.

22.    When deciding whether a claim is prejudicial to the debtor and will adversely affect the administration of the estate, courts look first to the timeliness of the motion and the filing of the underlying proof of claim, for which certification is sought, and then to the overall delay in the administration of the estate. *Ephedra*, 329 B.R. at 6–7. Here, the Hospitals have filed this Motion (to which they have appended their Class Proof of Claim) just under one month before the Bar Date.[17] Accordingly, the Class Claim and this Motion both are timely and do not involve or cause *any* delay, much less an *undue* delay.

23.    With respect to timing, courts uniformly have held that a claimant's proof of claim is considered timely when a motion for class certification is filed contemporaneously with the submission of the class proof of claim. *See, e.g., In re Tarragon Corp.*, No. 09-10555 DHS, 2010 WL 3842409, at *2 (Bankr. D.N.J. Sept. 24, 2010) ("[i]n accord with the Southern District of New York, this Court has held a motion for class certification was timely when filed *with* a proof of claim") (emphasis in original); *In re First Interregional Equity Corp.*, 227 B.R. 358, 366 (Bankr.

---

[17] The Hospital Claimants were sensitive to the timing of filing this Motion as they did not want to undermine the fragile mediation process. Indeed, the Hospital Claimants' counsel were hopeful that, as in the recent bankruptcy of Insys Therapeutics, Inc. (and related entities), another manufacturer of opioid products, in the United States Bankruptcy Court for the District of Delaware, the issue of a class proof of claim would be resolved through the mediation process. *See* Order Approving Stipulation by and Between the Debtors, the Official Committee of Unsecured Creditors, and the Hospital Claimants Establishing Class Claims Procedures, *In re Insys Therapeutics, Inc.*, No. 19-11292 [Dkt. No. 949] (Bankr. D. Del. Dec. 4, 2020). Because the mediation process is taking longer than anticipated, the issue has not been resolved, thereby precipitating the filing of the Motion now (i.e., before the Bar Date).

D.N.J. 1998) (same); *In re Thomson McKinnon Secs., Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992) ("[t]he fact that plaintiffs did not move for class certification promptly after filing their purported class claim detracts from the discretionary factors to be considered in determining class certification because Federal Rule of Civil Procedure 23(c)(1) specifically requires that such determination must be sought '[a]s soon as practicable after the commencement of an action brought as a class action.'"). Thus, the timing of the Hospitals' filing of the instant Motion and Class Proofs of Claim weighs in the Hospitals' favor because "[p]rejudice [only] occurs when allowance of a *late* claim would injure or damage the [bankruptcy] debtor." *In re Spring Ford Indus.*, No. 02-15015 DWS, 2003 WL 21785960, at *5 (Bankr. E.D. Pa. July 25, 2003) (emphasis added); *see also Musicland*, 362 B.R. 644 at 654. Courts further have held that motions are timely when filed before the proof of claim bar date—as is the case here. *See, e.g., In re Pacific Sunwear of Calif.*, Inc., No. 16-10882, 2016 WL 3564484, at *6 (Bankr. D. Del. June 22, 2016) (finding no delay to the administration of the bankruptcy where the motion for approval of the class claim was filed before the bar date had passed, and the "claims administration process was in its initial stages.").

24.    Second, allowing the Hospitals' Class Claim will not delay the administration of the Debtors' estates. The Debtors have not yet filed a Chapter 11 plan–and, by all accounts, are not close to doing so as the two key issues in the case – allocation and estate value stemming from the contribution from (or any settlement with) the Sacklers–are still in the midst of (a) mediation and (b) investigation, respectively. Additionally, the Bar Date is weeks away from when this Motion is filed, and the hearing thereon is a week before the Bar Date. Accordingly, not all general unsecured claims will have even filed their claims by the hearing date.

25.     Moreover, even if hospital claims were disputed, the filing of a Class Claim would streamline, and not complicate or frustrate, the administration of this class of claims. Many hospital claims for abatement will be asserted regardless of whether the filing of the Hospitals' Class Claim is permitted. The only differences among those claims (if any) are with respect to the requested relief, as they are on all fours with each other with respect to liability and legal theories. If the Debtors (or others) dispute these claims, they will likely be disputed regardless of whether class treatment is permitted. Rather, class treatment would streamline the resolution of any disputes over hospital claims (see Section II(B)(2)(e)(ii), *infra*, concerning the superiority of class treatment).

26.     Furthermore, the Debtors have known of the Hospital Class members' claims long before their bankruptcy filing. The Hospital Class Action and many other hospital actions have been pending since 2017 and Purdue has defended its interests in these and other cases brought by hospitals,[18] as well as in many analogous cases brought by states, municipalities and other classes of creditors. Thus, it cannot be credibly argued that the filing of the Class Proof of Claim would result in undue delay of the administration of these cases. Rather, a class claim "will promote efficiency by placing potentially thousands of individual claims before the court in a single class claim with competent counsel representing the interests of the class." *Pacific Sunwear*, 2016 WL 3564484, at *6.

### 2. *Musicland* Factor 2: That A Class Was Not Certified Prior To The Bankruptcy Is Not A Sufficient Reason To Prevent Class Treatment

27.     Although the Hospital Class Action was filed in 2017, no class has yet been certified because all hospital claims in the MDL are stayed pending further order of the MDL

---

[18] The Debtors filed motions to dismiss (in both instances jointly with other manufacturers) in (1) the bellwether case in the MDL filed by West Boca Hospital, No. 18-op-45530-DAP (N.D. Ohio June 29, 2018), and (2) an action pending in Arizona state court. *Tucson Med. Ctr. v. Purdue Pharma, L.P., et al.*, Case No. C20184991 (Super. Ct. Pima Co., Ariz. Feb. 6, 2019).

Court.

28.     Nevertheless, the lack of pre-petition certification is *not*, on its own, a sufficient basis for the Court to decline to exercise its discretion to permit the Hospitals' Class Claim. *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017) (noting that a class was not certified prepetition but stating, "[n]onetheless, the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023 in these circumstances.") (*citing In re Kaiser Grp. Intern., Inc.*, 278 B.R. 58, 62–63 (Bankr. D. Del. 2002) (allowing the filing of a class proof of claim where class not certified pre-petition); *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012) (same); *In re MF Glob. Inc.*, 512 B.R. 757, 763–65 (Bankr. S.D.N.Y. 2014) (same); *In re Connaught Grp., Ltd.*, 491 B.R. 88, 98–100 (Bankr. S.D.N.Y. 2013) (same). Thus, the fact that the Debtors filed for bankruptcy protection prior to the expected certification of a class should not affect the Hospitals' ability to obtain class relief here.

### 3.    *Musicland* Factor 3: Whether The Members Of The Putative Class Received Notice Of The Bar Date

29.     Admittedly, the Debtors attempted to cast a wide net with respect to notice of the Bar Date. That notwithstanding, many members of the Hospital Class likely will not file proofs of claim even if they *did* receive actual notice of the Bar Date. First, as set forth in the Jerse Decl., the legal basis of their claims against the Debtors requires sophisticated legal analysis to recognize the contours of the claim. Second, particularly for smaller hospitals, class members' individual damages may be modest and the task of calculating them may appear prohibitively difficult for those unfamiliar with appropriate methodologies. These are tangible and meaningful obstacles to effective individual action, which effectively would result in the disenfranchisement of many class members, and militate strongly in favor of the application of Rule 7023. Thus, this factor supports applying Rule 7023 even under ordinary circumstances.

14

30.     But present circumstances are anything but ordinary for America's hospitals, which

further support the application of Rule 7023. Hospitals in the putative class are currently, and likely

will be for a long time, addressing the extraordinary healthcare calamity caused by the COVID-19

pandemic. Jerse Decl. ¶ 9. COVID-19 presents an existential medical crisis for hospitals, which

are deluged with critical care issues relating to their patients. *Id*. It also presents a financial and

administrative crisis, because of staff furloughs, the costs associated with providing COVID-19-

related care, and the enormous loss of revenue from patients deferring other procedures that are

generally more lucrative. *Id*. This has put hospitals, many of which (particularly rural hospitals)

were already struggling fiscally, under enormous financial pressure. *Id.* Hospitals often lack the

human or financial resources necessary to complete an individual proof of claim, which would

include hiring, and working closely with, outside professionals and damages experts. *Id*. ¶ 4.  The

damages report requires the expert to collect, compile, analyze and otherwise examine extensive

data of each opioid encounter by the hospital. *Id*. ¶ 5. Although the Bar Date was extended to July

30, 2020, many hospitals still would not have the financial and other means with which to timely

file a proper individual claim (i.e., one that complies with all the requirements of the proof of claim

to state when the hospital was "first injured," to describe the conduct leading to the injury, to

describe "all alleged causes of action" and "legal theories," to identify "every category of damage,"

and to quantify the claim). The Hospital Claimants have agreed to incur the significant financial

burden associated with retaining such expert on behalf of all members of the Hospital Class. Thus,

even if all pertinent hospitals received actual notice of the Bar Date, the significance of this

*Musicland* factor under the current extraordinary, unprecedented and all-consuming healthcare

crisis should be relaxed. *See, e.g., In re Chateaugay Corp.*, 104 B.R. at 632 ("any potential

marginal increase in delay or in difficulty of valuation of claims would be justified in order to

protect the rights of small claimants . . . to be represented by the filing of a class proof of claim.");

*see also Hercules Inc. v. Envtl. Prot. Agency*, 598 F.2d 91, 126 (D.C. Cir. 1978) (rule of ancient

origin provides that "expedition in protecting the public health justifies less elaborate procedure

than may be required in other contexts.") (citations omitted).

31.    Because the great weight of the *Musicland* factors favors applying Rule 23, the

Court should exercise its discretion to permit the Hospitals to file their Proof of Claim on a class-

wide basis.

**B.  Applying Rule 7023, The Court Should Grant The Hospital Claimants' Motion
To Proceed As A Class**

32.    Once the Court has exercised its discretion to extend Rule 7023 to the Hospitals'

Class Claim, the next inquiry is whether to certify the class for which the Proof of Claim governs.

33.    Class actions in federal court are governed by Fed. R. Civ. P. 23. To maintain a

class action under Rule 23, the class must satisfy the four requirements of Rule 23(a)–numerosity,

commonality, typicality, and adequacy–as well as meet one of the three conditions of Rule 23(b).

*See* Fed. R. Civ. P. 23(a)–(b). Under Rule 23(b)(3), common questions of law or fact must

"predominate over any questions affecting only individual [class] members" and the class action

must be "superior to other available methods" of adjudicating the controversy fairly and

efficiently. Fed. R. Civ. P. 23(b)(3).

34.    By this Motion, and for the purposes of its Proof of Claim, the Hospital Claimants

seek to certify the Hospital Class as follows:

> All acute care hospitals in the United States which treated, for opioid
> conditions, patients who have been prescribed prescription opioids.
> "Opioid conditions" are defined as opioid overdose; opioid
> addiction (including that of babies born opioid addicted); related
> mental health treatment programs; and any other opioid co-
> morbidities noted in the patient's record. Excluded from the Class
> are any hospitals (1) that file their own claim, and/or (2) are directly

> or indirectly owned or operated by (a) Debtors or Debtors' affiliated
> entities, or (b) the federal government.

For the reasons stated below, the Hospitals' Class Proof of Claim satisfies all the requirements of

Fed. R. Civ. P. 23.

35.     A court should certify a class where, as here, the class satisfies the four prerequisites

of Rule 23(a) (numerosity, commonality, typicality, and adequacy), as well as one of the three

subsections of Rule 23(b) (Hospitals' claim meets the requirements of Rules 23(b)(3) (superiority

and predominance)). *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999);

*Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

36.     The Supreme Court recently reiterated that a trial court must conduct a "rigorous

analysis" to confirm that Rule 23's requirements have been met. *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 351 (2011). However, "the requisite 'rigorous analysis' of the record and

consideration of the merits must be focused on and limited to the question whether the Rule's

requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 536

(E.D. Mich. 2013) (*citing In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722

F.3d 838, 851–52 (6th Cir. 2013)). Thus, at the class certification stage, inquiry into the merits of

plaintiffs' claims is restricted:

> Rule 23 grants courts no license to engage in free-ranging merits
> inquiries at the class certification stage. Merits questions may be
> considered to the extent–but only to the extent–that they are relevant
> to determining whether the Rule 23 prerequisites for class
> certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (*citing Wal-mart Stores*,

564 U.S. at 351 n.6). In other words, for purposes of evaluating a motion for class certification, a

court should assume that the substantive allegations of the complaint generally are true and not

inquire into the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)

("the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met"); *Whirlpool*, 722 F.3d at 851–52 ("[the courts] may not turn the class certification proceedings into a dress rehearsal for the trial on the merits.") (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Federal Rule of Civil Procedure 23 are easily met.

### 1. The Hospitals Satisfy All The Rule 23(a) Factors

#### a. (Numerosity) The Class Is So Numerous That It Is Impracticable To Bring All Class Members Before The Court.

37.     To demonstrate numerosity, the movant must show that ''the class is so numerous that joinder of all members is impracticable'' Fed. R. Civ. P. 23(a)(1). ''Numerosity is presumed for classes larger than forty members.'' *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). ''Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.'' *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *In re DaimlerChrysler AG Secs. Litig.*, 216 F.R.D. 291, 295 (D. Del. 2003) (there is no "rigid minimum number of class members necessary to warrant certification; rather, joinder of all members need only be impractical, not impossible); *Robidoux*, 987 F.2d at 935 ("[i]mpracticable does not mean impossible.") (citations omitted); *Stewart v. Abraham*, 275 F.3d 220, 227–28 (3rd Cir. 2001) ("[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

38.     Here, the proposed Class consists of all acute care hospitals that have provided opioid-related care and that have not otherwise filed their own claims. The proposed Class would

include the vast majority of (well over 5,000) hospitals in the United States. Because of the large

number of putative class members and their geographical distribution throughout the United States,

joinder is highly impractical, if not impossible.

### b.  (Commonality) Common Factual And Legal Questions Exist.

39.    Commonality requires that "there are questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).  That requirement may be satisfied if plaintiffs "demonstrate[ ] that the

class members have suffered the same injury." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128,

137 (2d Cir. 2015) (*quoting Wal-mart Stores*, 564 U.S. at 350). It "simply requires that there be

issues whose resolution will affect all or a significant number of the putative class members." *Id.*;

*see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (commonality "is

satisfied if there is a common issue that 'drive[s] the resolution of the litigation' such that

'determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke.'") (*quoting Wal-mart Stores*, 564 U.S. at 350).

40.    Courts have observed that:

> the commonality standard of Rule 23(a)(2) is not a high bar: it does
> not require identical claims or facts among class member[s], as 'the
> commonality requirement will be satisfied if the named plaintiffs
> share at least one question of law or fact in common with the
> grievances of the prospective class.'

*Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) (*quoting Johnston v. HBO Film Mgmt.*, 265

F.3d 178, 184 (3d Cir. 2001)). Thus, this requirement is "easily met." *Neal v. Casey*, 43 F.3d 48,

56 (3d Cir. 1994).

41.    This prerequisite readily is satisfied here because the factual liability and causation issues, as well as the legal theories asserted, are substantially identical for all hospitals in the various pending actions that have been brought. Here, the Hospitals have identified the following issues common to the proposed Class:

    a.  Did the Debtors use false and deceptive statements and omissions to market opioids?

    b.  Did the Debtors market opioids by misrepresenting the risks and benefits of opioids?

    c.  Did the Debtors fail to monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids?

    d.  Did the Debtors fail to monitor, detect, investigate, refuse to fill, and report orders of prescription opioids which they knew or should have known were likely to be diverted for nonmedical purposes?

    e.  Did the Debtors conduct the affairs of an enterprise through a pattern of unlawful or otherwise prohibited activity?

    f.  Did the Debtors conspire to conduct the affairs of an enterprise through a pattern of unlawful or otherwise prohibited activity?

    g.  Did the Debtors negligently manufacture, market, and sell opioids?

    h.  Did the Debtors negligently sell opioids?

    i.  Did the Debtors wantonly, recklessly, or with gross negligence manufacture, market, and sell opioids?

    j.   Did the Debtors commit common-law fraud or violate state statutes proscribing the use of unfair and deceptive acts in commerce by making false representations of material fact and by concealing material facts about opioids? and

    k.   Are the remediation costs incurred by members of the Class a direct and proximate result of the Debtors' acts and omissions?

*See generally,* First Amended Complaint ¶ 935. Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### c.   (Typicality) The Hospitals Are Typical Of The Class.

42.     Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (*quoting Caridad v. Metro-North*, 191 F.3d at 293); *see also In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (to establish typicality under Rule 23(a)(3), the movant must demonstrate that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability") (*quoting Robidoux*, 987 F.2d at 936).

43.     Like commonality, typicality is "broadly defined" and "focus[es] on similar aspects of the alleged claims." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001) (*quoting Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). "The [typicality] requirement is not onerous," and courts liberally construe it. *Int'l Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006).

44.    Rule 23(a)(3) is satisfied because the hospital class representatives and the members of the proposed Class were all victims of Purdue's (and the other manufacturers') fraudulent misrepresentations concerning the safety and efficacy of their products, as well as the conduct of all defendants with respect to the distribution of the products (including the failure to report suspicious orders).

### d.    (Adequacy) The Hospitals And Their Attorneys Are Adequate Representatives.

45.    The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Second Circuit has held that under Rule 23(a)(4), "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

46.    The Hospitals submit that there are no conflicts between them and the proposed Class because the Hospitals and members of the proposed Class all treated opioid-related conditions and are seeking the same categories of damage based on the same legal theories. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.") (internal quotation marks and citation omitted). Indeed, a conflict "must be more than merely speculative or hypothetical before a named representative can be deemed inadequate." *Bradburn v. 3M*, No. Civ. A. 02-7676, 2004 WL 1842987, at *4 (E.D. Pa.

22

Aug. 18, 2004) (*quoting* 5 JAMES WM. MOORE, ET AL, MOORE'S FEDERAL PRACTICE ¶ 23.25[4][b][ii] (3d ed. 2003)). Here, no such conflict exists.

47.    Rule 23(g) also requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Class is represented by counsel with extensive experience in and class action litigation. They have prosecuted the class claims vigorously, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("[i]n absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation.").

48.    The lead firms representing the Hospitals (and seeking appointment as Class Counsel) – Barrett Law Group, P.A. and Cuneo, Gilbert & LaDuca, LLP–have considerable class action experience and successfully led a number of MDL actions involving antitrust, consumer protection, mass tort, and RICO laws. The MDL Court in the pending opioid MDL Proceeding appointed Barrett Law Group, P.A. as the hospital representative on the Plaintiffs' Executive Committee. *See* Order Granting Plaintiffs' Renewed Motion to Approve Co-Leads, Co-Liaisons, and Executive Committee, No. 1:17-md-02804-DAP [Dkt. No. 37] (N.D. Ohio Jan. 4, 2018), attached hereto as **Exhibit C**. For the same reasons underlying that appointment, the Hospital Claimants' lead counsel should be appointed class counsel here.

### 2.    The Hospitals Satisfy The Requirements Of Rule 23(b)(3)

49.    To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must *predominate* over any questions affecting only individual members; and (2) class resolution must be *superior* to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 614–15 (1997); *Myers v. Hertz*, 624 F.3d at 547. Both Rule 23(b)(3) elements are satisfied here.

### a.   (Predominance) Common Questions Predominate Over Individual Issues.

50.    The Second Circuit has observed that the purpose of the predominance requirement is to 'ensure [] that the class will be certified only when it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Myers*, 624 F.3d at 547. The Rule does not require a plaintiff seeking class certification to prove that each element of the claim is "susceptible to classwide proof." *Whirlpool*, 722 F.3d at 859 (citation omitted). Rather, predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d at 547 (citations omitted). Therefore, the distinction between individual and common questions is a focal point of the predominance analysis. *In re Petrobras Secs.*, 862 F.3d 250, 270–71 (2d Cir. 2017) (*citing Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). The predominance inquiry mitigates the risk of individualized questions permeating the litigation by "ask[ing] whether the common, aggregation enabling, issues in the case are *more prevalent or important* than the non-common, aggregation-defeating, individual issues.'" *Id.* (*quoting Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016)) (emphasis in the original).

51.    When Rule 23 is the mechanism to redress alleged RICO violations, predominance and commonality are satisfied if each element of the alleged RICO violation involves common questions of law and fact capable of proof by evidence common to the class. *See, e.g., In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("fraud claims based on uniform

24

misrepresentations to all members of a class 'are appropriate subjects for class certification'

because, unlike fraud claims in which there are material variations in the misrepresentations made

to each class member, uniform misrepresentation create 'no need for a series of min-trials'" (*citing*

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)); *Reyes v. Netdeposit, LLC*, 802

F.3d 469, 489 (3d Cir. 2015) (*citing In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 269–70

(3d Cir. 2009); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257–58 (11th Cir. 2004) (physician class

certification upheld on appeal where the 'doctors' RICO claims were "not simply individual

allegations of underpayments lumped together," but rather focused on a centralized corporate

conspiracy to defraud, which could be proven through generalized evidence–and which, absent

certification, would have to be reproven in each case). This is true even if "establishing an injury

is not as conducive to common proof[,]" so long as a court is "satisfied that the plaintiffs have

presented a plausible theory for proving a class-wide injury as a result of the racketeering activities

of the alleged enterprises at issue[.]" *Reyes*, 802 F.3d at 489 (*citing In re Ins. Brokerage Antitrust

Litig.,* 579 F.3d at 270; *Neale v. Volvo Cars of North Am.,*794 F.3d 363, 374–75, n.10 (3d Cir.

2015)).

52.    Moreover, any inability to calculate *damages* (as opposed to fact of injury) on a

classwide basis will not, on its own, bar certification. *Reyes*, 802 F.3d at 489 (*citing Neale,* 794

F.3d at 374–75, n.10 (citing many cases on this point)). *Accord In re Scrap Metal Antitrust Litig.*,

527 F.3d 517, 535 (6th Cir. 2008) (where common issues determine liability, fact that damages

calculation may involve individualized issues does not defeat predominance). This is true as long

as the common issues still outweigh the individual ones, *e.g.*, as long as a common theory can be

alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *Whirlpool*, 722 F.3d

at 861 ("[i]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3)

when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)).

53.    The Hospitals (and other hospitals that have filed lawsuits) allege a single conspiracy relating to the sale and distribution of opioids from which all proposed class members' injuries arise, issues common to the proposed class members–for example, the existence and scope of the conspiracy among the defendants (including the Debtors), the impact of defendants' (including the Debtors') misrepresentations and omissions, the impact of defendants' (including the Debtors') failures to report suspicious orders, and irregularities in opioid distribution patterns. These issues predominate over any individual questions and, therefore, class treatment of the Hospital Class' claims is appropriate. Furthermore, the evidence that will prove that a violation as to one class member is common to the entire Hospital Class and will be sufficient to prove it as to all the violative conduct of Purdue (and the other defendants) does not depend on the individual class members' separate conduct.

54.    Here, issues common to the proposed Class predominate in this case–all the Hospitals incurred costs that were caused by Purdue's (and the other defendants') illegal activities. First, common issues predominate with respect to liability. Whether Purdue (and the other defendants) violated RICO and state common law will be determined by using evidence common to all class members. This is all common evidence that each class member would use to prove its claim if the Class Proof of Claim were not permitted to proceed as a class action. Second, common issues also predominate as to the relief requested. Class counsel, and their experts, use the same methodology, for all hospitals in the Hospital Class, for calculating the prospective costs of remediating the harm caused by the Debtors. Thus, common issues overwhelmingly predominate.

The presence of these common issues of liability and impact predominate over any individual issues and strongly support certification of the proposed Hospital Class.

> **b.  (Superiority) The Filing Of A Class Claim Is The Superior Method Of Proceeding.**

55.    Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. Class actions can be a superior litigation tool "precisely because they facilitate the redress of claims where the costs of bringing individual claims outweigh the expected recovery." *U.S. Foodservice*, 729 F.3d at 130 (*citing Amchem*, 521 U.S. at 617). In other words, "[s]uperiority mandates that the district court determine that the class action is the best method of fairly and efficiently resolving the controversy." *Johnston*, 265 F.3d at 185.

56.    Moreover, the superiority of class certification over other available methods is measured by consideration of certain factors enumerate in the Rule, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (although the four factors "structurally, apply to both predominance and superiority, they more clearly implicate the superiority inquiry.").

57.    Here, compared to the alternative of innumerable claims brought by individual class members, a class claim is clearly the superior method of adjudication. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) ("[m]ultiple lawsuits brought by thousands of consumers and third-party payers in seventeen different states would be costly, inefficient and would burden the court system."); *Microsoft I-V Cases*, No. J.C.C.P. No. 4106, 2002-2 Trade Cas. ¶ 73,013 at 88,564 (Cal. Sup. Ct. Aug. 29, 2000) ("to the extent that purchasers

of large quantities of Microsoft software should elect to pursue their individual claims, denying class treatment could result in repetitious litigation and inconsistent adjudication of similar issues and claims.").

58.     The interests of the class members in this case in individually controlling the pursuit of separate claims also are outweighed by the efficiency of the class mechanism. Thousands of hospitals provided opioid-related care; resolving these claims in the context of a class claim would conserve both judicial and private resources and preserve the resources of the estate and expedite a recovery. *See, e.g., In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 411–12 (S.D. Ohio 2007) ("[r]epeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results.").

## V.     <u>CONCLUSION</u>

For all the foregoing reasons and authorities, the Hospital Claimants respectfully request that this Court (1) exercise its discretion pursuant to Fed. R. Bankr. P. 9014(c) and apply Fed. R. Bankr. P. 7023 to the Hospital Claimants' Proof of Claim; (2) permit the filing of the Hospitals' Class Proof of Claim, and certify the Hospital Class as requested above; (3) appoint counsel for the Hospital Claimants as Class Counsel; and

(4) grant such further relief as this Court deems just and equitable under the circumstances.

Dated:    July 2, 2020                        Respectfully submitted,
          New York, NY

                                              MCGRAIL & BENSINGER LLP


                                              */s/ Ilana Volkov*
                                              Ilana Volkov
                                              888-C 8th Avenue #107
                                              New York, NY 10019
                                              Ph: (201) 931-6910
                                              ivolkov@mcgrailbensinger.com


                                              John W. (Don) Barrett
                                              David McMullan, Jr.
                                              Richard Barrett
                                              Sterling Starns
                                              BARRETT LAW GROUP, P.A.
                                              P.O. Box 927
                                              404 Court Square North
                                              Lexington, Mississippi 39095
                                              Ph: (662) 834-2488
                                              dbarrett@barrettlawgroup.com
                                              dmcmullan@barrettlawgroup.com
                                              rrb@rrblawfirm.net
                                              sstarns@barrettlawgroup.com



                                              Jonathan W. Cuneo
                                              Monica Miller
                                              CUNEO GILBERT & LaDUCA, LLP
                                              4725 Wisconsin Ave. NW, Suite 200
                                              Washington, DC 20016
                                              Ph: (202) 789-3960
                                              jonc@cuneolaw.com
                                              evelyn@cuneolaw.com
                                              monica@cuneolaw.com

                                              *Attorneys for the Hospital Claimants*