IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>PURDUE PHARMA L.P., et al.,<br><br><br>Debtors.[1] | Chapter 11<br>Case No.  19-23649 (RDD)<br>Administratively Consolidated |

**DECLARATION OF SHANNON JERSE IN SUPPORT OF HOSPITAL CLAIMANTS' MOTION PURSUANT TO FED. BANKR. P. 9014 AND 7023 FOR AN ORDER MAKING FED. R. CIV. P. 23 APPLICABLE TO THESE PROCEEDINGS AND PERMITTING THEM TO FILE A CLASS PROOF OF CLAIM**

My name is Shannon Fogarty Jerse. I am the Deputy General Counsel of the Sisters of Charity Health System and General Counsel to St. Vincent Charity Medical Center ("St. Vincent"). I am familiar with the facts set forth herein and testify on my own personal knowledge.

1.      St. Vincent is a faith-based care provider and teaching hospital in downtown Cleveland, Ohio. St. Vincent has operated for over 150 years. St. Vincent is home to the renowned Spine and Orthopedic Institute and Center for Bariatric Surgery and offers complete services in cardiovascular, emergency medicine, primary care, behavioral health, occupational health and addiction medicine.

---

[1]The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Life Science Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014).

2.    There are over 5,000 acute care hospitals in the United States. Part of my professional responsibilities is communication with peers and colleagues at other hospitals across the country.

3.    Like these other hospitals, St. Vincent treats patients with opioid related issues. Opioid use is frequently a complicating co-morbidity factor in our treatment of patients. Based on my many communications with and among other hospitals, I believe all or virtually all hospitals in the United States face the same problems St. Vincent faces in dealing with opioid issues every day.

4.    The opioid bankruptcy claim form poses particular challenges to hospitals. Unlike a simple class action claim form that requires only a few pieces of information, the proof of claim form in this matter requires a tremendous amount of information, much of which is beyond the knowledge base of the hospital, including sophisticated legal analysis to recognize the contours of the hospital claim and likely hours of professional work to complete. The proof of claim form requires the hospital to state when the hospital was "first injured;" to describe the conduct leading to the injury (which is not in the firsthand knowledge of the hospital); to describe "all alleged causes of action" and "legal theories;" to identify "every category of damage;" and to quantify the claim. Hospital complaints in the MDL and other courts encompass hundreds of pages assembled based on weeks of factual and legal work by teams of lawyers. It is just not practical for many, if not most, hospitals to do the legal work to submit an individual claim. Such legal work is not an everyday hospital operation. In short, filing an individual claim without such expert guidance is sufficiently difficult that many hospitals will likely forgo making an individual claim, which is far more complex than merely claiming a sum certain on an account receivable. This case differs from

other class actions because the damage calculation is not as simple as listing items purchased or the like.

5.      Our legal team has extensively analyzed the costs and foregone revenues that the opioid dependent patients have cost and will continue to cost St. Vincent and scores of hospitals across the country. This process requires a hospital and its experts to collect, compile, analyze and otherwise examine extensive data of each opioid encounter by the hospital.

6.      We believe that our problems are typical of those of other hospitals, and that we face common issues.

7.      Along with the other proposed class representative hospitals, we have asserted this class claim. We are free from conflicts in doing so. We do not expect nor have we been promised any additional compensation as a result of our service as a class representative.

8.      We are represented by class counsel with extensive experience and success in prosecuting class claims. The Court can find information on our counsel at Barrett Law Group's website (www.BarrettLawGroup.com), Cuneo Gilbert & LaDuca, LLP's website (www.cuneolaw.com), and Taylor Martino, P.C.'s website (www.taylormartino.com).

9.      As the Court is aware, the COVID-19 pandemic has placed extraordinary and, in my experience, unprecedented and sudden pressures on St. Vincent and other hospitals that pose existential threats, forcing radical reassignment of resources and requiring unprecedented government assistance. Despite the Court's extensive notice plan, it is inevitable that many hospitals are and will be too pre-occupied with COVID-19 issues to assert an individual claim. Over the past months, caring for patients presenting with COVID-19 has required the re-allocation of staff and resources to caring for COVID-19 patients, particularly in areas hardest hit by the pandemic. It has also required hospitals in most states to defer non-essential surgeries and other

procedures (including most diagnostic procedures), which has been true in Ohio since March 18, 2020. This has caused catastrophic financial losses, in the millions of dollars per day at some larger hospitals. The threat is existential to many institutions, particularly small rural hospitals that were already under considerable financial stress.  The problems are compounded by patients' reluctance to seek treatment (even when it is treatment that should not be deferred) for fear of being exposed to COVID-19 at medical facilities, which will be an obstacle as hospitals attempt to return to normal operations.  Many hospitals have been forced to furlough staff, including administrative and clerical staff. I communicate regularly with my peers at other hospitals, and I understand these conditions to be common in my region and nationally.

10.    The present circumstances facing hospitals are without precedent in my career, and I believe in modern history.  Routines and processes are disrupted. Many, if not most, hospitals may be unable to tend to the matter of preparing a proof of claim, particularly gathering and analyzing data, and working with the necessary experts and consultants to determine the amount of the claim. Those hospitals, like mine, need the money from this settlement.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated:  June 30, 2020                              /s/  *Shannon Fogarty Jerse*
                                                 Shannon Fogarty Jerse

4