**UNITED STATES BANRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |

**SECOND INTERIM FEE APPLICATION OF PJT PARTNERS LP AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR THE REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD OF FEBRUARY 1, 2020 THROUGH MAY 31, 2020**

**SUMMARY SHEET**

| | |
|---|---|
| Name of Applicant: | PJT Partners LP |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | Order entered on January 9, 2020 approving the retention of PJT Partners LP *nunc pro tunc* to September 15, 2019 [Docket No. 728] |
| Period for which Compensation And Reimbursement is sought: | February 1, 2020 through May 31, 2020 |
| Amount of Compensation sought As actual, reasonable, and necessary: | $900,000.00 |
| Amount of Expense Reimbursement sought as actual, Reasonable, and Necessary: | $14,563.51 |
| Amount of Cash Payment Sought: | $914,563.51 |
| This is a ___ monthly   _x_ interim   ___ final application | |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

UNITED STATES BANRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |

**SECOND INTERIM FEE APPLICATION OF PJT PARTNERS LP AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR THE REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD OF FEBRUARY 1, 2020 THROUGH MAY 31, 2020**

PJT Partners LP ("PJT") respectfully represents as follows:

**I. Background**

1. On September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. On November 5, 2019, the Debtors filed the *Debtors' Application to Employ PJT Partners LP as Investment Banker* Nunc Pro Tunc *to the Petition Date* [Docket No. 430] (the "Retention Application"), pursuant to which the Debtors sought authority to retain and employ PJT as its investment banker pursuant to the terms of an engagement agreement (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

"Engagement Agreement") dated May 6, 2019. A copy of the Engagement Agreement was attached to the Retention Application.

3. On November 21, 2019, this Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 529] (the "Procedures Order") establishing procedures for interim compensation and reimbursement of out-of-pocket expenses for professionals.

4. On January 9, 2020, this Court entered the *Order Approving Debtors' Employment of PJT Partners LP as Investment Banker* Nunc Pro Tunc *to the Petition Date* [Docket No. 728] (the "Retention Order") approving the Retention Application and authorizing the retention and employment of PJT *nunc pro tunc* to the Petition Date, pursuant to the terms of the Engagement Agreement.

5. PJT submits this second interim fee application (the "Second Interim Fee Application") requesting the allowance of Monthly Fees (as defined herein) earned for investment banking services rendered by it as investment banker to the Debtors, and the reimbursement of out-of-pocket expenses incurred during the period of February 1, 2020 through May 31, 2020 (the "Second Interim Period").

6. Investment banking services and out-of-pocket expenses for which compensation and reimbursement are sought were rendered and expended on behalf of the Debtors pursuant to chapter 11 of the Bankruptcy Code.

## II. The PJT Engagement

7. Pursuant to the Engagement Agreement, PJT was retained to provide the following services to the Debtors:[2]

---

[2] Capitalized terms used but not defined herein shall have the meanings provided thereto in the Engagement Agreement.

(a) assist in the evaluation of the Debtors' businesses and prospects, opportunities and financial condition;

(b) assist in the evaluation of the Debtors' long-term business plan and related financial projections;

(c) assist in the development of presentations to the Debtors' Board of Directors, various creditors and other third parties;

(d) analyze the Debtors' financial liquidity;

(e) analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f) participate in negotiations among the Debtors and their creditors, and other interested parties;

(g) value securities offered by the Debtors in connection with a Restructuring;

(h) assist in arranging financing for the Debtors, as requested;

(i) provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services;

(j) assist the Debtors in preparing marketing materials in conjunction with a possible Transaction;

(k) assist the Debtors in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

(l) assist and advise the Debtors concerning the terms, conditions and impact of any proposed Transaction; and

(m) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring and/or Transaction, as requested and mutually agreed.

8. Pursuant to the Engagement Agreement, as approved by the Retention Order, the Debtors agreed to pay PJT as follows in consideration for the services rendered:[3]

(a) <u>Monthly Fee</u>. The Debtors shall pay PJT a monthly advisory fee (the "<u>Monthly Fee</u>") of $225,000 per month. Fifty percent (50%) of all Monthly Fees paid to PJT between the period beginning on April 1, 2019 and ending on March 31, 2021 shall be credited against any Restructuring Fee (as described below).

---

[3] This description of PJT's compensation structure is for summary and illustrative purposes only. The terms of the Engagement Agreement and the Retention Order shall apply to any such compensation awarded to PJT.

(b) <u>Capital Raising Fee</u>. The Debtors shall pay PJT a capital raising fee (the "<u>Capital Raising Fee</u>") for any financing arranged by PJT, earned and payable in accordance with the Engagement Agreement as modified by the Retention Order. The Capital Raising Fee will be calculated as:

- Senior Debt. 1.0% of the total issuance size of the senior debt financing;

- Junior Debt. 3.0 of the total issuance size of the junior debt financing;

- Equity Financing. 5.0% of the issuance amount for equity financing.

(c) <u>Restructuring Fee</u>. The Debtors shall pay PJT a restructuring fee equal to $15,000,000.00 (the "<u>Restructuring Fee</u>") earned and payable upon the consummation of a Restructuring.

(d) <u>Transaction Fee</u>. Upon consummation of a Transaction, the Debtors shall pay PJT a transaction fee of 2.0% of the Transaction Value (the "<u>Transaction Fee</u>"); provided that, the Transaction Fee in respect of a Transaction involving (a) a sale of the products Lemborexant or Adhansia shall, in each case, not be less than $1,500,000 ($3,000,000 for a sale involving both products) or (b) a sale of the Debtors' over-the-counter drug business shall not be less than $3,000,000 (each such fee, a "<u>Minimum Fee</u>").

Notwithstanding any provision on the Engagement Agreement to the contrary, the maximum aggregate amount payable to PJT in respect of all Restructuring Fees, Transaction Fees, and Capital Raising Fees, after giving effect to any crediting of other fees earned under the Engagement Letter, shall be $23,500,000. For the avoidance of doubt, the foregoing cap on fees shall not include or affect any Monthly Fees due under the Engagement Agreement, the Debtors' obligations to pay PJT Partners' out-of-pocket expenses or the Debtors' obligations under and in respect of the Indemnification Agreement.

(e) <u>Expense Reimbursement</u>. In addition to the fees described above, the Debtors agree to reimburse PJT for all reasonable and documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable and documented fees and expenses of PJT's counsel (without the requirement that the retention of such counsel be approved by the Court) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

### III. Services Provided by PJT during the Second Interim Period

9.  PJT has rendered professional services to the Debtors as requested and in furtherance of the interests of the Debtors' estates. The variety and complexity of the issues in these chapter 11 cases and the need to act or respond to such issues on an expedited basis have required the

expenditure of substantial time by PJT personnel. PJT respectfully submits that the professional services that it rendered on behalf of the Debtors were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases. The following summary of services rendered during the Second Interim Period is not intended to be an exhaustive description of the work performed. Rather, it is merely an attempt to highlight certain of those areas in which PJT rendered services to the Debtors:

(a) assisted Debtors' with financial projections and other financial analyses;

(b) assisted in the development of financial data and presentations to the Debtors' Board of Directors, various creditors and other third parties;

(c) analyzed the Debtors' business from an industry and financial perspective;

(d) performed due diligence related to international pharmaceutical operations owned by the current shareholders;

(e) assisted the Debtors in responding to diligence requests from various creditors or other third parties;

(f) provided support to counsel with regard to various matters;

(g) coordinated and participated in update calls with management and counsel regarding various case matters;

(h) attended meetings and conference calls with counsel and various claimants; and

(i) attended and dialed into court hearings.

### IV. The PJT Team

10. The investment banking services set forth above were performed primarily by: Tim Coleman, Partner; Jamie O'Connell, Partner; Rafael Schnitzler, Director; Joe Turner, Vice President; Tom Melvin, Associate; Jade Wang, Associate; Jovana Arsic, Associate; Gerald Sim, Analyst; Aakriti Suri, Analyst; Ismail Mian, Analyst; and other PJT professionals as needed. Details of the background and experience of these professionals are provided in Appendix A.

**V. PJT's Request for Allowance of Compensation and Reimbursement of Expenses**

11. For the Second Interim Period, PJT seeks (a) allowance of Monthly Fees in the amount of $900,000.00, and (b) the reimbursement of out-of-pocket expenses incurred in the amount of $14,563.51. Although every effort has been made to include all expenses incurred during the Second Interim Period, some expenses might not be included in this Second Interim Fee Application due to delays caused in connection with the accounting and processing of such expenses. Accordingly, PJT reserves the right to make further application to this Court for allowance of such expenses incurred during the Second Interim Period but not included herein.

12. Invoices detailing the compensation earned, and the out-of-pocket expenses incurred during the Second Interim Period are attached hereto as Appendix B. A summary of all fees earned and out-of-pocket expenses incurred during the Second Interim Period is outlined below:

| Advisory Periods | Advisory Fees | Out-of-Pocket Expenses | Amount Due |
|---|---|---|---|
| 02/01/20 – 02/29/20 | $225,000.00 | $10,825.82 | **$235,825.82** |
| 03/01/20 – 03/31/20 | 225,000.00 | 340.17 | **225,340.17** |
| 04/01/20 – 04/30/20 | 225,000.00 | 2,742.35 | **227,742.35** |
| 05/01/20 – 05/31/20 | 225,000.00 | 655.17 | **225,655.17** |
| **Total** | **$900,000.00** | **$14,563.51** | **$914,563.51** |

13. PJT respectfully submits that the compensation requested for the services rendered by PJT to the Debtors during the Second Interim Period is fully justified and reasonable based upon (a) the complexity of the issues presented, (b) the skill necessary to perform the financial advisory services properly, (c) the preclusion of other employment, (d) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (e) time constraints required by the exigencies of the case, and (f) the experience, reputation and ability of the professionals rendering services.

14. PJT respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interests of the Debtors and the Debtors' estates. PJT respectfully

submits that under the criteria normally examined in chapter 11 reorganization cases, the compensation requested by PJT is reasonable in light of the work performed by PJT during these chapter 11 cases.

15. The amount of fees sought in this Second Interim Fee Application and PJT's compensation practices are consistent with market practices both in and out of a bankruptcy context. PJT has never billed its clients based on the number of hours expended by its professionals. Accordingly, PJT does not have hourly rates for its professionals and PJT's professionals generally do not maintain detailed time records of the work performed for its clients. PJT has, however, maintained contemporaneous time records in one-half hour increments. Time records with respect to the 2,246.5 hours expended by PJT professionals in providing investment banking services to the Debtors during the Second Interim Period are provided in Appendix C.

16. A summary of hours expended by PJT professionals during the Second Interim Period is provided below:

| | Hours Expended By Professional | | | | |
|---|---|---|---|---|---|
| Professional | February 2020 | March 2020 | April 2020 | May 2020 | Total |
| Tim Coleman | 25.5 | 13.5 | 24.5 | 14.0 | **77.5** |
| Jamie O'Connell | 40.0 | 18.5 | 25.5 | 16.5 | **100.5** |
| George South | - | 1.0 | - | - | **1.0** |
| Rafael Schnitzler | 42.0 | 106.0 | 65.0 | 53.0 | **266.0** |
| Joe Turner | 126.0 | 82.0 | 88.5 | 70.0 | **366.5** |
| Tom Melvin | 114.5 | 120.0 | 111.5 | 109.0 | **455.0** |
| Jade Wang | 63.0 | 129.5 | 88.0 | 69.0 | **349.5** |
| Jovana Arsic | - | - | - | 4.0 | **4.0** |
| Gerald Sim | 77.5 | 54.0 | 69.5 | 65.5 | **266.5** |
| Aakriti Suri | 62.0 | 120.0 | 31.0 | 18.5 | **231.5** |
| Ismail Mian | - | - | 46.0 | 82.5 | **128.5** |
| **Total** | **550.5** | **644.5** | **549.5** | **502.0** | **2,246.5** |

17. Out-of-pocket expenses incurred by PJT are charged to a client if out-of-pocket expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. PJT does not factor general overhead expenses into any disbursements

charged to its clients in connection with chapter 11 cases. PJT has followed its general internal policies with respect to out-of-pocket expenses billed as set forth below, with any exceptions specifically explained.

(a) All cross-country airfare charges are based upon coach class rates.

(b) With respect to local travel, PJT's general policy enables employees to travel by taxi or, in certain circumstances private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. Further, and primarily for safety reasons, employees are permitted to charge to a client the cost of transportation home if an employee is required to work past 9:00 p.m. on weekdays on client specific matters.

(c) PJT's general policy permits its professionals to charge in-office dinner meals to a client after working 3 hours beyond their regularly scheduled workday if an employee is required to provide services to the client during such dinnertime, and to charge in-office meals on the weekend if an employee is required to provide services to a client on the weekend and spends at least 4 hours in the office.

(d) The External Research category of expenses includes charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to PJT. The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to PJT. The Internal Research category of expenses are the charges for time spent by PJT research staff in operating the computer/electronic terminals related to these computer/electronic service companies.

(e) The Publishing Services category of expenses includes charges for the production of text-based publications such as research reports and presentations, and printing and binding services.

18. All services for which PJT requests compensation were performed for and on behalf of the Debtors and not on behalf of any other person or stakeholder.

19. No agreement or understanding exists between PJT and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with these proceedings.

## VI. Requested Relief

**WHEREFORE**, PJT requests that the Court:

(a) allow and grant interim approval of (i) Monthly Fees earned in the amount of $900.000.00, and (ii) the reimbursement of out-of-pocket expenses incurred by PJT in the amount of $14,563.51 for the Second Interim Period;

(b) authorize and direct Debtors to pay PJT's allowed and unpaid fees and out-of-pocket expenses earned or incurred during the Second Interim Period as follows:

| | |
|---|---:|
| Monthly Fees | $900,000.00 |
| Out-Of-Pocket Expenses | 14,563.51 |
| **Amount Due PJT** | **$914,563.51** |

(c) grant such other and further relief as the Court deems just and proper.

Dated: July 8, 2020

PJT Partners LP
Investment Banker to the Debtors


By: /s/ John James O'Connell III
      John James O'Connell III
      Partner
      280 Park Avenue
      New York, NY 10017
      (212) 364-7800

**UNITED STATES BANRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |

**CERTIFICATION UNDER GUIDELINES FOR FEES AND OUT-OF-POCKET EXPENSES FOR PROFESSIONALS IN RESPECT OF SECOND INTERIM APPLICATION OF PJT PARTNERS LP FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF OUT-OF POCKET EXPENSES**

John James O'Connell III, being duly sworn, deposes and says:

1. I am a partner with the applicant firm, PJT Partners LP ("PJT").

2. In accordance with the guidelines established by the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on January 29, 2013 (updated as of June 17, 2013)  (the "Local Guidelines"), the Office of the United States Trustee (the "UST Guidelines") and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 175] (the "Procedures Order," and together with the UST Guidelines and the Local Guidelines, the "Guidelines"), this certification is made with respect to PJT's second interim application, dated July 8, 2020 (the "Second Interim Fee Application"), for allowance of compensation earned and reimbursement of out-of-pocket expenses incurred for the period of February 1, 2020 through May 31, 2020.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

3. In respect of section B.1 of the Local Guidelines, I certify that:

   a. I have read the Second Interim Fee Application;

   b. To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

   c. The fees and out-of-pocket expenses sought are customarily charged by PJT and generally accepted by PJT's clients; and

   d. In providing a reimbursable service, PJT does not make a profit on that service, whether the service is performed by PJT in-house or through a third party.

4. With respect to Section B.2 of the Local Guidelines, I certify that, to the best of my knowledge, information and belief, the Debtors and the United States Trustee for the Southern District of New York (the "U.S. Trustee") have been provided with a statement of the fees and out-of-pocket expenses incurred for each month subject to the Second Interim Fee Application, although such statements may not have always been provided within the exact timetables set forth in the Procedures Order.

5. With respect to section B.3 of the Local Guidelines, I certify that the Debtors and the U.S. Trustee are each being provided with a copy of PJT's Second Interim Fee Application.

By: /s/ John James O'Connell III
     John James O'Connell III
     Partner