**EXHIBIT K**

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>PURDUE PHARMA, L.P., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case Nos.19-23649 (RDD)<br><br>(Jointly Administered) |

### ORDER MAKING FED. R. CIV. P. 23 APPLICABLE TO THESE PROCEEDINGS, PERMITTING NAS GUARDIANS ON BEHALF OF THE NAS CHILDREN'S ABATEMENT CLASS CLAIMANTS TO FILE A CLASS PROOF OF CLAIM AND GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Jacqueline Ramirez, Melissa Barnwell and Ashley Dawn Marie Poe, who are Legal Guardians of neonatal abstinence syndrome ("NAS") Children R.R., C.G. and P.P.R.P. ("Plaintiffs"), in their individual capacities as legal guardians for their NAS Children and on behalf of all other similarly situated legal guardians for their NAS Children (the "NAS Children's Abatement Class" or "Class"), by and through their counsel, for the entry of an order making Fed. R. Civ. P. 23 applicable to the "NAS Children's Abatement Class Proof of Claim" (the "Class Proof of Claim"), permitting them to file the Class Proof of Claim and granting related relief pursuant to Fed. R. Bankr. P. 9014 and 7023; and it appearing that good and sufficient notice of the Motion has been given and that no further notice is necessary; and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Adlon Therapeutics L.P. (6745), Greenfield Bio Ventures L.P. (6150), Imbrium Therapeutics L.P. (8810) Seven Seas Hill Corp. (4591), Ophir Green Corp (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' mailing address is One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901. For ease of reference, the term "Purdue" as used herein, refers to Debtors. For the purposes of this Motion, all allegations set forth herein related to or pertaining to "Manufacturers" apply equally to Purdue.

{Client/085978/1/02135393.DOCX;1 }

Court having considered the Motion, and any other evidenced adduced at the hearing on the Motion; and after due deliberation, and good and sufficient cause appearing therefor[2],

        **IT IS HEREBY FOUND AND DETERMINED THAT**:

    A.    **<u>Jurisdiction and Venue</u>**. This Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    B.    **<u>Fed. R. Civ. P. 23(a)</u>**. All threshold requirements of Federal Rule of Civil Procedure 23(a) are satisfied because:

        1.    <u>Numerosity</u>. The NAS Children's Abatement Class, which includes greater than 100,000 legal guardians of children born with NAS, is so numerous that individual joinder of all such claimants is impractical.

        2.    <u>Commonality</u>. Common questions of fact or law exist. The claims asserted by the NAS Children's Abatement Class against the Debtors and their co-conspirators are based on the conduct of the Debtors and their co-conspirators, and there are no individual differences among the claims possessed by members of the NAS Children's Abatement Class.

        a.    Did the Debtors (hereinafter, "Purdue") separately and/or in concert with the RICO Marketing Claim and RICO Supply Chain Claim co-conspirators fail to monitor, detect, investigate, refuse to fill, and/or report suspicious orders of prescription opioids?

        b.    Did Purdue separately, and/or in concert with the RICO Marketing Claim and RICO Supply Chain Claim co-conspirators fail to monitor, detect, investigate, refuse to fill, and/or report orders of prescription opioids which they knew or should have known were likely to be diverted for nonmedical purposes?

---

[2] All capitalized terms not defined herein shall have the meaning attributed to such terms in the Motion.

c. Did Purdue separately and/or in concert with the RICO Marketing Claim co-conspirators use false statements and omissions to promote and market opioids for treatment of chronic pain?

d. Did Purdue separately and/or in concert with the RICO Marketing Claim co-conspirators use false statements and omissions to promote and market opioids for treatment of non-cancer, including but not limited to widespread conditions such as arthritis and joint pain?

e. Did Purdue separately and or in concert with the RICO Marketing Claim co-conspirators use false statements and omissions to pro-mote and market opioids as drugs without dose limits?

f. Did Purdue separately and/or in concert with the RICO Marketing Claim co-conspirators make false statements and omit relevant facts to better promote and market opioids by misrepresenting the risks and benefits of prescribing and/or taking opioids?

g. Did Purdue separately and/or in concert with the RICO Marketing Claim co-conspirators, negligently manufacture, market, promote, and sell opioids?

h. Did Purdue separately and/or in concert with the RICO Marketing Claim and RICO Supply Chain Claim co-conspirators negligently sell and distribute opioids?

i. Did Purdue separately and/or in concert with the RICO Marketing Claim and RICO Supply Chain Claim co-conspirators, recklessly, or with gross negligence manufacture, market, promote, and sell opioids?

j. Did Purdue separately and/or in concert with the RICO Marketing Claim and RICO Supply Chain Claim co-conspirators wantonly, recklessly, or with gross negligence manufacture, sell and/or distribute opioids?

k. Did Purdue separately and/or in concert with the RICO Marketing Claim co-conspirators manufacture and cause to be marketed opioids which it knew were being prescribed to pregnant women without adequately testing and/or issuing adequate warnings concerning the short-term and long-term risks to the fetus?

    l.  Were Plaintiffs and the class members damaged as a direct and proximate result of Purdue' acts and omissions either separately or in concert with the RICO Marketing Claim and RICO Supply Chain Claim co-conspirators' acts and omissions?

    m.  Are Plaintiffs' claims typical of those of the class and are based on the same legal theories as those of the class members?

    n.  Do Plaintiffs' claims and those of the class members all arise from the same pattern or practice by Purdue acting separately, and/or in concert with RICO Marketing Claim and RICO Supply Chain Claim co-conspirators?

3. <u>Typicality</u>.  The claims of the Plaintiffs are typical of the claims of the NAS Children's Abatement Class. The claims and legal theories of the representative Plaintiffs and the Class members are precisely the same and focus on the conduct of Debtors and other opioid manufacturers and distributors and not on the conduct of the claimants, e.g.: whether Debtors and their co-conspirators made misrepresentations concerning their opioid products and their proper applications, and whether Debtors and their co-conspirators failed to report suspicious orders and otherwise failed to report or address irregularities in distribution channels.  Further, the Plaintiffs seek abatement in the form of a comprehensive, national medical monitoring program designed to care for children diagnosed with NAS across the country. Without widespread participation in the program, it would be completely ineffective in advancing the medical and scientific knowledge in treating those afflicted with NAS.  Thus, the Plaintiffs are, by definition, advocating for the interests of the putative class members when they pursue the relief sought. The requirements of Rule 23(a)(3) are satisfied.

4. <u>Adequacy</u>. Rule 23(a)(4)'s requirement that the class representatives and counsel fairly and adequately protect the interests of the class is satisfied because:

   a. Class Counsel are experienced in class action litigation in general and class action litigation. Moreover, Class Counsel represent Legal Guardians of NAS Children in related class actions pending in a federal MDL proceeding and in various state court actions.

   b. The Plaintiffs, all while bearing the significant burdens of caring for NAS Children, have been active participants in the prosecution of these claims and have established through the discovery process that they meet all criteria set forth in the class definitions. The Plaintiffs agreed to act as representatives for the NAS Children's Abatement Class. The Plaintiffs are adequate representatives.

   c. There are no known conflicts between the Plaintiffs and the NAS Children's Abatement Class. The Plaintiffs and members of the Class all have NAS Children who suffer from opioid-related conditions. The Plaintiffs are seeking the same relief based on the same legal theories as other members of the Class. The Plaintiffs are adequate class representatives.

C. **<u>Fed. R. Civ. P. 23(b)</u>.** In addition to Rule 23(a), at least one provision of Rule 23(b) must be satisfied.

   1. <u>Rule 23(b)(2)</u>. The Rule 23(b)(2) requirements are met. Purdue has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief, i.e., the abatement, is appropriate respecting the class as a whole.

2. <u>Rule 23(b)(1)</u>. The Plaintiffs sought certification under Rule 23(b)(1)(B) in the alternative. The Rule 23(b)(1)(B) requirements are met. Prosecuting separate abatement actions by individual class members is especially fraught, if not impossible, due to the unique nature of the relief sought which requires the participation of all Legal Guardians of the NAS Children. This bankruptcy proceeding involves a limited fund which has significant implications on the abilities of the Plaintiffs and the putative class members to protect their legal interests and prosecute their claims against Purdue. Adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not a party to those individual adjudications and/or would substantially impair or impede their ability to protect their interests. Certification under Rule 23(b)(1)(B) is appropriate.

3. <u>Rule 23(b)(1)</u>. The Plaintiffs sought certification under Rule 23(b)(3) in the alternative. The Rule 23(b)(3) requirements are met. Here, the Rule 23(b)(3) requirements are met in that (i) common questions predominate over any questions affecting only individual members, and (ii) class treatment is superior to other available methods.

**NOW THEREFORE, IT IS ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. Pursuant to Bankruptcy Rules 9014 and 7023, the Court exercises its discretion to extend the application of Rule 23 of the Federal Rules of Civil Procedure to the Class Proof of Claim and hereby authorizes the Plaintiffs to file the Class Proof of Claim.

    3.    The Court hereby certifies the following NAS Children's Abatement Classes (collectively, the "NAS Children's Abatement Class") for purposes of the Class Proof of Claim:[3]

> Class 1: Legal Guardians[4] of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS")[5] at or near birth and whose birth mother received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured and/or distributed by Purdue.
>
> Class 2: Legal Guardians of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured and/or distributed by one or more of Purdue's RICO Marketing Claim or RICO Supply Chain Claim co-conspirators.
>
> Class 3: Legal Guardians of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received a prescription for opioids or opiates in the ten months prior to the birth and those opioids or opiates were manufactured and/or distributed by Purdue.
>
> Class 4: Legal Guardians of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received a prescription for opioids or opiates in the ten months prior to the birth and those opioids or opiates were manufactured and/or distributed by one or more of Purdue's RICO Marketing Claim or RICO Supply Chain Claim co-conspirators.
>
> Expressly excluded from the Classes are any infants or children who were treated with opioids neonatally, other than for pharmacological weaning. Also excluded from the class are Legal Guardianships where a governmental agency, such as a public children services agency, has affirmatively assumed the duties of "custodian" of the child.

---

[3] The definitions of terms for Class 1 shall also apply to those same identical terms in the definitions for Classes 2-4 and are not repeated again for purposes of brevity.

[4] The term "Legal Guardian" is defined for purposes of this putative class action as "any natural person or entity who has the primary legal responsibility under their respective laws of their state for an infant or child's physical, mental, and emotional development." Expressly excluded from the class of "Legal Guardians" are any governmental entities. "Legal Guardians" include natural and adoptive parents who have not otherwise lost legal custody of their children, legal custodians, legal caretakers, and court-appointed guardians (including guardians of the person), whether temporary or permanent.

[5] The term "NAS" is defined to include additional, but medically-symptomatic identical, terminology and diagnostic criteria, including Neonatal Opioid Withdrawal Syndrome (NOWS) and other historically and regionally used medical and/or hospital diagnostic criteria for infants born addicted to opioids.

4. The Court appoints Jacqueline Ramirez, Melissa Barnwell and Ashley Dawn Marie Poe, who are Legal Guardians of NAS Children R.R., C.G., and P.P.R.P., to serve as representatives of the NAS Children's Abatement Class.

5. After considering their: (i) work in identifying or investigating potential claims in the action; (ii) experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) knowledge of the applicable law; and (iv) resources, which they will commit to representing the class, the Court appoints the following lawyers as Class Counsel: Scott R. Bickford of Martzell, Bickford & Centola, Calvin C. Fayard, Jr. of the Law Offices of Calvin C. Fayard, Jr., Thomas and Kelly Bilek of the Bilek Law Firm, Donald Creadore of The Creadore Law Firm, and Kent Harrison Robbins of the Law Offices of Kent Harrison Robbins, P.A.

6. The Court retains jurisdiction to interpret, implement and enforce the terms of this Order.

Dated: _____
       White Plains, New York

                                              _____
                                              THE HONORABLE ROBERT D. DRAIN
                                              UNITED STATES BANKRUPTCY JUDGE