**Hearing Date and Time: July 23, 2020, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Date and Time: July 20, 2020, at 4:00 p.m. (prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

### NOTICE OF HEARING ON MOTION OF DEBTORS FOR ENTRY OF A SECOND ORDER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

**PLEASE TAKE NOTICE** that on July 9, 2020, the above-captioned debtors and debtors

in possession in these proceedings (collectively, the "**Debtors**") filed the *Motion of Debtors for*

*Entry of a Second Order Extending the Exclusive Periods Within Which to File a Chapter 11*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Plan and Solicit Acceptances Thereof* (the "**Motion**").  A hearing on the Motion will be held on **July 23, 2020** at **2:00 p.m.** (prevailing Eastern Time) (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

PLEASE TAKE FURTHER NOTICE that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted telephonically.[2]  Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[3] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.  The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest,

---

[2] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operations-under-exigent-circumstances-created-covid-19.

[3] The Bankruptcy Court's procedures for telephonic appearances are available at:
http://www.nysb.uscourts.gov/telephonic-appearances-white-plains.

on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498], so as to be filed and received no later than **July 20, 2020** at **4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default; *provided* that objecting parties shall attend the Hearing **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

3

Dated:    July 9, 2020
          New York, New York

                              DAVIS POLK & WARDWELL LLP

                              By:   */s/ Marshall S. Huebner*
                              DAVIS POLK & WARDWELL LLP
                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile:  (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              Timothy Graulich
                              Eli J. Vonnegut
                              Christopher S. Robertson

                              *Counsel to the Debtors*
                              *and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## MOTION OF DEBTORS FOR ENTRY OF A SECOND ORDER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**") hereby file this *Motion of Debtors for Entry of*

*a Second Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and*

*Solicit Acceptances Thereof* (this "**Motion**"). In support of this Motion, the Debtors respectfully

state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## Relief Requested

1.      By this Motion, and pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended or modified, the "**Bankruptcy Code**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), extending the Debtors' exclusive periods to (a) file (the "**Exclusive Filing Period**") a chapter 11 plan of reorganization (the "**Chapter 11 Plan**") by one hundred fifty (150) days through and including Thursday, December 10, 2020 and (b) solicit votes thereon (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**") by one hundred fifty (150) days through and including Monday, February 8, 2021.[2]  The requested extension intentionally is 30 days shorter than the 180 days sought from and granted by this Court on January 28, 2020.  While this request is without prejudice to the rights of the Debtors to seek further extensions of the Exclusive Periods, the Debtors will do everything in their power to avoid having to seek another extension, as such a continuation of this case without a plan on file would, absent unforeseen circumstances, be most unfortunate.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined

---

[2] Such date reflects an automatic extension of such deadline from Saturday, February 6, 2021 to the next business day.

that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

3.      The legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006.

4.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### General Background

5.      On September 15, 2019 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Cases**").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these Cases.

6.      Information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [ECF No. 17].

7.      The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court on September 18, 2019 in each of the Cases.

8.      On January 28, 2020, the Court entered the *Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 782] (the "**First Exclusivity Extension Order**") granting the requested 180-day extension and

extending the Exclusive Filing Period and the Exclusive Solicitation Period through and including Monday, July 13, 2020 and Wednesday, September 9, 2020, respectively.

### Preliminary Statement

9.      The Debtors commenced these Cases to efficiently address thousands of lawsuits pending in various fora around the country, stop the erosion of value from this torrent of uncoordinated litigation, and pursue a fair and efficient global resolution of all of these pending actions and other claims through a chapter 11 plan to preserve the value of the Debtors' estates and put that value to work helping address and combat the opioid crisis.  These fundamental goals remain unchanged.  On March 18, 2020, the Court extended the preliminary injunction with respect to such litigations by 180 days, through October 5, 2020.  *See, e.g.*, Eighth Am. Order Pursuant to 11 U.S.C. § 105(a) Granting Mot. For Prelim. Inj. (Bankr. S.D.N.Y. Apr. 14, 2020), Adv. Proc. No. 19-08289, ECF No. 168 (as amended from time to time).  In so ruling, the Court concluded that "there is a likelihood of a successful reorganization here.  We are in the early stages still of that process but the parties are doing what they need to do as have been previously identified in October and that process does not happen overnight.  It requires significant legal and business resources as well as the good faith commitment of key constituents to use the information generated to negotiate in good faith."  Hr'g Tr. 92:14-21 (Mar. 18, 2020).

10.     Since that March hearing, the Debtors have remained relentlessly focused on advancing these Cases and moving this restructuring out of the "early stages."  The Debtors and their key constituencies are actively and intensely engaged in a complex mediation process to address allocation disputes among creditor groups, which must be addressed in order to structure a plan of reorganization.  The Debtors fixed a July 30, 2020 general bar date (after obtaining a 30-day extension from the original date of June 30, 2020 in response to the ongoing COVID-19

pandemic) and conducted a successful noticing program, nearly unprecedented in its scope, to ensure that potential claimants will receive adequate notice of the bar date and that the claims process can move steadily forward with integrity.  The Debtors have collaborated with creditors to respond to increasingly detailed and complex discovery and diligence requests to facilitate the creditors' evaluation of the proposed global settlement framework.  At the direction of the Special Committee of the Board of Directors, the Debtors have also continued to conduct their own diligence regarding the proposed settlement and filed a second massive report on the Court's public docket [ECF No. 1194] relating to transfers between Purdue and the Sackler-owned independent associated companies on May 29, 2020.  All the while, the Debtors have also stabilized their businesses under extremely challenging circumstances, and have continued to successfully maintain business relationships with distributors, rebate providers, managed care organizations, critical vendors and other critical counterparties.  As this Court recently noted at the June 3, 2020 omnibus hearing, "The Debtors themselves, as far as I can see in this case, have been acting as good appropriate fiduciaries."  Hr'g Tr. 94:25-95:9 (Jun. 23, 2020).

11.    The Debtors, fiduciaries for all, are and remain committed to preserving and maximizing the value of the estates by moving these cases toward plan confirmation and emergence as expeditiously as possible.  Prolonging the bankruptcy unnecessarily costs the estates additional professional fees and places increased stress on the Debtors' businesses.  But, in light of the immense complexity of these cases and the numerous difficult issues to be addressed relating to value allocation and plan structuring among the Debtors' many creditor constituencies, it is also not realistic to expect the Debtors to advance from the "early stages" of the chapter 11 process in late March to having a confirmable plan of reorganization on file in July.  Other debtors in mass tort bankruptcies have spent multiple years grappling with similar

5

issues in chapter 11—a result that the Debtors are making every effort to avoid. *See, e.g.*, *In re Bestwall LLC*, Case No. 17-31795 (Bankr. W.D.N.C.) (two years and nine months from petition date to date); *In re The Christian Brothers' Institute*, Case No. 11-22820 (RDD) (Bankr. S.D.N.Y.) (two years and nine months from petition date to effective date); *In re Blitz U.S.A., Inc.*, Case No. 11-13603 (Bankr. D. Del.) (two years and four months); *In re Garlock Sealing Technologies LLC*, Case No. 10-31607 (Bankr. W.D.N.C.) (over seven years); *In re W.R. Grace & Co.*, Case No. 01-1139 (Bankr. D. Del) (over twelve years); *In re Dow Corning Corp.*, Case No. 95-20512 (Bankr. E.D. Mich.) (over nine years). Here, the general bar date, which was heavily negotiated with key creditor constituencies and which was extended by 30 days due to the ongoing COVID-19 pandemic, has not yet occurred.

12.     Abandoning the current path through filing of competing plans reflecting individual constituencies' parochial views on the serious and complex issues involved in these Cases would serve only to derail progress towards a confirmable plan and destroy value. Moreover, as this Court knows, in addition to the Creditors' Committee, there are 10 groups of stakeholders in these Cases that style themselves as unofficial committees. This may well be unprecedented in any U.S. bankruptcy case in history, yet further adding to the extraordinary complexity of these proceedings. For these reasons, the Debtors submit that the requested extension of exclusivity should be granted.

### The Debtors Have Made Substantial Progress in These Cases

13.     Among the myriad other steps that the Debtors have taken to progress these cases toward a successful reorganization, while balancing the interest of numerous constituencies, the Debtors have:

(a) obtained a critical extended preliminary injunction through October 5, 2020;

6

(b) developed, negotiated and obtained approval of a bar date order—and an extension thereof—and implemented an extraordinary, carefully tailored and highly negotiated noticing campaign;

(c) obtained approval to continue to support the development of two overdose reversal medications to help address the opioid crisis;

(d) prepared an updated business plan and related materials and presented the revised business plan to major creditor constituencies;

(e) appointed former Iowa Governor and former United States Secretary of Agriculture Thomas J. Vilsack to serve as monitor pursuant to an unprecedented voluntary injunction designed to confirm to the public, the Bankruptcy Court and all parties-in-interest that the Debtors are not engaging, and will not engage, in the kinds of conduct that gave rise to the allegations in the pending lawsuits, and provided information and access to the monitor in the course of his investigations;

(f) finalized and published (i) a 366-page report of the Special Committee of the Board of Directors that catalogs all cash distributions to or for the benefit of the shareholders, plus salary, benefits and expense and indemnity reimbursements, since January 1, 2008; and (ii) a 401-page report of the Special Committee of the Board of Directors that details 37 categories of intercompany and non-cash transfers to various shareholder-affiliated entities between 2008 and 2019;

(g) procured the agreement of all key stakeholders on a mediation structure and the appointment of two highly respected mediators to address issues of allocation of value that are key to building creditor support for a chapter 11 plan, prepared memoranda and analyses for the mediators regarding issues relevant to the settlement negotiations, and engaged in intensive negotiations with the other mediation parties regarding the structure of a potential settlement;

(h) continued to negotiate the terms of a proposed comprehensive settlement with multiple constituencies in parallel with the mediation;

(i) made substantial progress in a comprehensive investigation of potential estate causes of action and historical transfers of value to the Debtors' direct and indirect shareholders;

(j) collaborated with creditors and other stakeholders, such as the UCC, the Ad Hoc Committee, the Non-Consenting States Group, and the Sackler Families, on extremely complex Rule 2004 discovery and diligence issues, including through participation in regular meet-and-confer sessions, and review and production of a very significant and ever-increasing volume of responsive documents and information; and

(k) prepared for and successfully argued numerous other motions and applications at multiple hearings.

14.      The Debtors have moved these complex cases meaningfully forward and believe they are well positioned for the next phase of these proceedings.  As the Court is all too familiar, these Cases present unprecedented, important and challenging issues.  Despite the significant progress thus far, in light of the complexity and significance of the issues involved and the numerous interests asserted and to be protected, substantial work remains.

## Basis for Relief Requested

15.      Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case.  If a debtor files a plan during this period, section 1121(c)(3) of the Bankruptcy Code provides the debtor with an initial period of 180 days as of the commencement of the chapter 11 case to solicit acceptance of such plan.  Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause."  *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").  For the reasons described in this Motion, the Debtors respectfully submit that "cause" exists to extend the Exclusive Periods.

16.      It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of the particular case.  *See, e.g.*, *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).  Although the Bankruptcy Code does not define "cause," courts have

8

construed the term in consideration of the Bankruptcy Code's underlying legislative history. *See, e.g.*, *In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), as reprinted in 1994 U.S.C.C.A.N. 3340, 3344) (noting that the exclusive periods under section 1121 of the Bankruptcy Code are intended "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated"); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989) (examining the applicable legislative history and noting that "[t]he 'cause' standard referred to in Section 1121 has been referred to as a general standard that allows the Bankruptcy Court 'maximum flexibility to suit various types of reorganization proceedings'" (citations omitted)).  The opportunity for a debtor to negotiate a plan unimpaired by competition is intended to allow a debtor time to negotiate with its creditors, win support for its plan, and ultimately survive as a business.  H.R. Rep. No. 95-595 at 231–32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (indicating that "cause" should be interpreted in such a way "to allow the debtor to reach an agreement"); *see also In re Publ. Serv. Co. of New Hampshire*, 88 B.R. 521, 533–34 (Bankr. D.N.H. 1988) (noting "legislative intent . . . to afford maximum flexibility"); *accord In re Glob. Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003) (noting that so long as the debtors give the court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested extension of exclusivity . . . should be granted").

17.    In determining whether to extend a debtor's exclusive periods, courts consider a variety of factors to assess the totality of circumstances affecting whether or not "cause" exists, including:

    a) the size and complexity of the case;
    b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
    c) the existence of good faith progress toward reorganization;

9

    d) the fact that the debtor is paying its bills as they come due;

    e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    f) whether the debtor has made progress in its negotiations with creditors;

    g) the amount of time that has elapsed in the case;

    h) whether creditors are prejudiced by the extension;

    i) whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

    j) the existence of an unresolved contingency.

*See In re Adelphia Communs. Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997) (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same); *In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (noting the debtors' "substantial efforts . . . to stabilize their business and develop a viable exit strategy").  Any one of these factors may constitute sufficient grounds for extending a debtor's exclusive periods.  *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  Not all of the above factors are relevant to every case, and the court considers only the relevant factors to determine whether cause exists to grant an exclusivity extension.  *See In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (holding that size and complexity of the chapter 11 case is sufficient cause to extend exclusivity); *In re Express One Int'l*, 194 B.R. at 100–01 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors).

     *a.  The Chapter 11 Cases Are Large and Complex, and the Debtors Require Sufficient Time to Negotiate a Chapter 11 Plan in Good Faith*

18.    Courts regularly consider the size and complexity of a chapter 11 case a determining factor of whether a court should grant an extension of the exclusive periods. *See, e.g.*, *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause" can include an "unusually large case") (citation omitted); *In re Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); *see also* H.R. Rep. No. 95-595, at 231–32 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for multiple extensions of exclusivity. *See In re Express One Int'l*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone).

19.    The Debtors are acutely aware of the costs and risks associated with operating in chapter 11, but given the complexity and importance of these issues, additional time is necessary to formulate a confirmable plan. As the Court is well aware, the circumstances of these Cases are unprecedented. Any plan of reorganization confirmed in these cases will involve the settlement of hundreds of billions of dollars of litigation (or more) against the Debtors and a negotiated allocation of the Debtors' resources among various creditor constituencies. The Debtors are dedicating substantial efforts every day to address both issues. Indeed, the allocation question is the central focus of the ongoing mediation, and the Debtors continue their efforts to reach a global settlement of litigation against the Debtors and the Related Parties.

11

20.     Accordingly, the first three factors listed above all weigh in favor of the Court granting a further extension of the Exclusive Periods.

   b.  *The Debtors Pay Their Bills as They Come Due*

21.     The Debtors have continued to make timely payments on account of their undisputed post-petition obligations.  As such, this factor also weighs in favor of allowing the Debtors to extend the Exclusive Periods.

   c.  *A Relatively Short Amount of Time Has Elapsed in the Chapter 11 Cases*

22.     Less than 10 months have elapsed in the Cases, which is not long for cases of this size and complexity.  *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312-RDD (Bankr. S.D.N.Y. June 22, 2020), ECF No. 2186 (extending exclusive periods a fourth time more than 16 months after the petition date); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007-RDD (Bankr. S.D.N.Y. July 14, 2016), ECF No. 3015 (extending exclusive periods a third time approximately 12 months after the petition date).  Indeed, the bar date, which was recently extended by 30 days, has not even passed.  Accordingly, an extension of the Exclusive Periods is appropriate.

   d.  *The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan and Are Making Progress in Negotiations with Creditors*

23.     As described above, the central issue in these Cases is reaching a broad consensus on a settlement of the litigation pending against the Debtors, which will form the foundation of a value allocation model for the plan of reorganization.  The Debtors believe that they are making progress with their constituencies toward a global resolution of the pending litigation and development of a confirmable plan of reorganization.  The participation of the Debtors' key stakeholders in the mediation process and the volume of ongoing discovery speaks to the level of

engagement from major creditors.  Accordingly, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

e. *The Debtors Are Not Seeking to Extend Exclusivity to Pressure Creditors to Accede to the Debtors' Demands. and Creditors Are Not Prejudiced by the Extension*

24.     Continued exclusivity will permit the Debtors to continue the complex negotiations with the many and various creditor groups described above.  Fundamentally, the Debtors believe that the proposed settlement requires broad creditor support.  The Debtors are seeking an extension of the Exclusive Periods to preserve and build upon the progress made to date.  Accordingly, this factor also weighs in favor of the relief requested herein.

f. *Consensus Regarding the Proposed Settlement Remains an "Unresolved Contingency"*

25.     As discussed above, the Debtors believe that an extension is warranted to permit the Debtors to continue their efforts to reach agreement with additional significant creditor groups regarding the proposed settlement framework and allocation of value, among other things, before proposing a plan of reorganization.  It would be highly disruptive to this process to allow one or more groups of the Debtors' creditors—the participants in the ongoing mediation focused on addressing intra-creditor allocation issues—to formulate and propose alternative plans of reorganization.  Accordingly, this factor also weighs in favor of the relief requested herein.

## The Relief Request Should Be Granted

26.     The Debtors' progress to date has been achieved in large part due to the breathing room provided by chapter 11.  The Debtors believe that maintaining their exclusive right to file and solicit votes on a plan is critical to their ability to complete a value-maximizing restructuring.  Accordingly, the Debtors request a further extension of the Exclusive Periods to

allow the Debtors to pursue the plan confirmation process without the costly and needless disruption that would occur if competing plans were to be proposed.

27.    Furthermore, courts in this jurisdiction have granted relief similar to that requested herein.  *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312-RDD (Bankr. S.D.N.Y. June 20, 2019), ECF Nos. 699, 1329, 1706, 2186 (providing for an initial extension of the exclusivity periods by 180 days, a second extension of 120 days and two additional extensions of 60 days each); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007-RDD (Bankr. S.D.N.Y. Nov. 13, 2015), ECF Nos. 1838, 2637, 3015 (first extension of 131 days, second extension of 124 days and third extension of 185 days); *In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Bankr. S.D.N.Y. Nov. 16, 2018) (granting the debtors' fourth extension of the exclusive periods, for a total extension of 341 days); *In re Residential Capital, LLC*, Case No. 12-12020-MG (Bankr. S.D.N.Y. Sept. 11, 2012), ECF Nos. 1413, 2489, 3007, 3102, 3440, 3634, 3919) (granting four exclusivity extensions for a total of 464 days).

## Automatic Extension

22.    Pursuant to the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498] (the "**Case Management Order**"):

> If a Request for Relief to extend the time to take any action is filed prior to the expiration of the time period provided by the Bankruptcy Code *(including any Request for Relief pursuant to section 1121 of the Bankruptcy Code)*, the Bankruptcy Rules, the Local Rules, or any order of the Court, the time to so take action shall be automatically extended until the Court considers and rules upon the Request for Relief.

Case Management Order at ¶ 45 (emphasis added).  In addition, pursuant to Local Rule 9006-2, the Exclusive Filing Periods are automatically extended until the Court acts on this Motion, without the necessity for the entry of a bridge order.

### Notice

24.    Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this motion.  The Debtors respectfully submit that no further notice is required.

### No Prior Request

25.    The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed form of order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated:    July 9, 2020
          New York, New York


By:   */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

16

## <u>Exhibit A</u>

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## SECOND ORDER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") for entry of an order (this "**Order**"), pursuant to section 1121(d) of the Bankruptcy Code, extending the Exclusive Periods, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

hearing to consider the relief requested in the Motion (the "**Hearing**"); and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearing establish

just cause for the relief granted herein; and the Court having determined that the relief requested

is in the best interests of the Debtors, their estates, creditors and all parties in interest; and upon

all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Exclusive Filing Period is hereby extended by one hundred fifty (150) days

through and including Thursday, December 10, 2020.  The Exclusive Solicitation Period is

hereby extended by one hundred fifty (150) days through and including Monday, February 8,

2021.

3.      This Order is without prejudice to the Debtors' right to seek further extension of

the Exclusive Periods.

4.      The contents of the Motion and the notice procedures set forth therein are good

and sufficient notice and satisfy the Bankruptcy Rules and the Local Rules, and no other or

further notice of the Motion or the entry of this Order shall be required.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation, and enforcement of this Order.

White Plains, New York
Dated:  _____, 2020

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE