Settlement Date and Time: July 14, 2020 at 10:00 a.m.
Objection Deadline: July 10, 2020 at 4:00 p.m.

Nickolas Karavolas, Esq. (NK2504)
William J. Brown, Esq. (WB9631)
**PHILLIPS LYTLE LLP**
Local Counsel for Her Majesty the Queen in
Right of the Province of British Columbia
340 Madison Avenue, 17th Floor
New York, New York  10173-1922
Telephone: (212) 759-4888
Facsimile:  (212) 308-9079
E-mail: nkaravolas@phillipslytle.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA, L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |
| | Re: Docket No. 1313 |

**OBJECTION OF HER MAJESTY THE QUEEN IN RIGHT OF THE PROVINCE OF BRITISH COLUMBIA TO PRESENTMENT OF STIPULATION AND ORDER PERMITTING THE FILING OF A CLASS PROOF OF CLAIM SOLELY FOR ADMINISTRATIVE CONVENIENCE IN ORDER TO EFFECTUATE A POTENTIAL SETTLEMENT IN RESPECT OF CERTAIN CANADIAN LITIGATION**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P.) (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products, L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

{18013-001/00758678.6}

Her Majesty the Queen in Right of the Province of British Columbia ("**HMQBC**") and the provincial governments of Alberta, Saskatchewan, Ontario, Nova Scotia, New Brunswick, Newfoundland and Labrador, and Prince Edward Island (together with HMQBC, the **"Canadian Government Objectors"**)[2] by their attorneys, Phillips Lytle LLP, file this objection ("**Objection**") to the Notice of Presentment of Stipulation and Order Permitting the Filing of a Class Proof of Claim Solely for Administrative Convenience in Order to Effectuate a Potential Settlement in Respect of Certain Canadian Litigation (Docket No. 1313) ("**Presentment of Stipulation**") filed by the above-captioned debtors (collectively, the "**Debtors**") on June 30, 2020. In support of the Objection, the Canadian Government Objectors respectfully represent as follows:

## INTRODUCTION

1. HMQBC is the representative plaintiff of a proposed class consisting of the government of British Columbia and all other provincial and territorial governments in Canada. The other Canadian Government Objectors are putative members of the class. No Canadian government entity has expressed support for the Stipulation[3] or opposition to this objection.

2. The Canadian Government Objectors object on two main grounds. First, the Presentment of Stipulation purports to advance and compromise their claims and the claims of the proposed class without their authorization or consent. As such, the Stipulation cannot be construed as compromising the interests of these Canadian provincial and territorial governments. Indeed, the counsel who signed the Stipulation have interests adverse to the interests of the Canadian Government Objectors whose claims counsel purport to address and compromise.

---

[2] The Canadian Government Objectors' appearance in these cases shall be deemed a special appearance solely for the purpose of objecting to the Presentment of Stipulation (defined below) and is not an appearance for any other purpose.

[3] "**Stipulation**" refers to the Stipulation attached as Exhibit A to the Presentment of Stipulation.

3. Second, the Stipulation contains a number of material misrepresentations, errors, and omissions, which can be summarized as follows:

    a. the lawyers who signed the Stipulation - Class Counsel in the Canadian Consumer Actions (as defined below) – have no authority to compromise or address claims of Canadian governments, including the Canadian Government Objectors. Therefore, the representations and warranties in the Stipulation are false and misleading;

    b. the Stipulation is designed to effectuate a Canadian agreement that is not binding, has been twice rejected by Canadian courts, and has been declared void by valid Canadian legislation, none of which was disclosed to this Court; and

    c. Canada is facing a devastating opioid crisis similar in size and scope to that faced in the United States. Canadian government entities, including the Canadian Government Objectors, have joint and several claims against the Debtors worth many billions of dollars. Those claims must not be prejudiced by the Stipulation.

## BACKGROUND

### A. Role of HMQBC in Providing Health Care Services

4. HMQBC is the government for the Province of British Columbia. Canada's ten provinces and three territories all operate within a structure of publicly funded universal health care.

5. Although the federal government of Canada establishes national standards for the Canadian health care system, each province and territory is responsible for the actual delivery of

health care services to their residents. Accordingly, through the Minister of Health, the Ministry of Health of the Province of British Columbia oversees British Columbia's health system and has overall responsibility for ensuring that quality, appropriate, cost-effective and timely health services are universally available to residents of British Columbia. In the course of the Minister of Health's mandate, the Ministry of Health supports and funds the activities of all regional health authorities and the Provincial Health Services Authority in British Columbia as a provincial health insurer ("**PHI**"), including all public health programs and services, and funds and operates the provincially funded drug benefit plans in British Columbia.

6. In addition to HMQBC, the nine other provincial governments and three territorial governments of Canada, including the other Canadian Government Objectors, are PHIs.

**B.   Settlement of Consumer Class Actions Commenced in Canada**

7. Between 2007 and 2012, a series of proposed class actions on behalf of individual consumers were commenced across Canada in relation to the prescription, purchase, use, or ingestion of OxyContin and OxyNeo, which were manufactured and distributed in Canada by Purdue Pharma, Purdue Pharma Inc., Purdue Frederick Inc., the Purdue Frederick Company, and Purdue Pharma LP (the "**Canadian Consumer Actions**"). On June 22, 2012, a proceeding styled *Perdikaris v. Purdue Pharma Inc.*, QBG 1073 of 2012 was commenced in the Saskatchewan Court of Queen's Bench (the "**Saskatchewan Action**"). The Saskatchewan Action is a companion action to the other Canadian Consumer Actions filed in Ontario, Quebec, and Nova Scotia.

8. In the Canadian Consumer Actions, the plaintiffs advanced, on the PHIs' behalf, subrogated claims for the cost of insured medical services provided or to be provided to the class members in connection with their use of OxyContin and/or OxyNeo. Under the health insurance

legislation enacted by each PHI, the province or territory's consent to the compromise of a subrogated health care costs claim is required before an action can be resolved.

9. On April 4, 2016, class counsel and defense counsel in the Ontario, Nova Scotia, and Quebec Canadian Consumer Actions indicated they had reached what they described as an "Agreement in Principle". On April 15, 2016, class counsel and defense counsel reached a second "Agreement in Principle", which included the parties to the Saskatchewan Action (the "**April 2016 Agreement**").

10. As the April 2016 Agreement was a proposed compromise of class action claims, it was subject to court approval. As outlined below, while there can be some slight variation in terms of wording, the class proceedings statutes within each of Canadian provinces provide that a settlement is not binding unless approved by the court. The parties then began the process of seeking approval for the April 2016 Agreement and obtained a conditional certification order from the Ontario Superior Court of Justice for settlement purposes. However, on March 8, 2017, the parties entered into a subsequent settlement agreement (the "**March 2017 Agreement**") .

11. After entering into the March 2017 Agreement, the parties obtained an order from the Ontario court rescinding the conditional certification order granted in respect of the April 2016 Agreement, and obtained new conditional certification orders from each of the Ontario, Nova Scotia, Quebec, and Saskatchewan courts.

12. The March 2017 Agreement was approved by the Ontario, Nova Scotia, and Quebec courts on July 19, 2017, August 2, 2017, and August 21, 2017, respectively. There were very limited reasons provided in support of the approval by the Ontario court, and no reasons by the other two courts.

13. The Saskatchewan court was the last court asked to approve the March 2017 Agreement, and was the only court that tackled the issue of authority to settle PHI claims. The PHIs were not class members, and were also not parties to the March 2017 Agreement, but, as described above, the parties to the March 2017 Agreement were required to seek the PHIs' consent pursuant to provincial and territorial health care costs recovery legislation for the March 2017 Agreement to receive court approval.

14. Although the settlement classes had been notionally divided as between the four courts, with the Saskatchewan class comprising class members in Saskatchewan, Alberta, Manitoba and the three Territories, the change in the approval process from a single approval in the April 2016 Agreement to the four approvals required by the March 2017 Agreement meant that the March 2017 Agreement would not be effective in relation to the totality of the Settlement Class unless it was approved by each and every one of the four courts, including the Saskatchewan court.

15. Each of the orders issued by the Ontario, Nova Scotia and Quebec courts contain a provision stipulating that similar orders would be sought from the four courts, and that approval of the March 2017 Agreement was contingent upon approval orders being issued by each and every one of the other three courts.

**C. Decisions of the Saskatchewan Court of Queen's Bench Find Insufficient Evidence to Support the Conclusion that PHIs Consented to the March 2017 Agreement**

      i. **First Decision of the Saskatchewan Court**

16. On September 22, 2017, Judge Ball of the Saskatchewan Court of Queen's Bench issued his decision dismissing an application to approve the March 2017 Agreement and

outlining a series of concerns with the March 2017 Agreement. *See* **Exhibit A** attached hereto, *Perdikaris v. Purdue Pharma Inc.*, 2017 SKQB 287 ("**Perdikaris 2017**").

17. In reaching his decision, Judge Ball engaged in a detailed review of the proceedings and identified the existence of different versions of settlement agreements, one of which – the March 2017 Agreement – was placed before the court for approval.

18. Judge Ball noted that there were differences as between the April 2016 Agreement and the March 2017 Agreement, including the insertion of provisions establishing that "[t]he Provincial Health Insurers do not have the right to opt out of this Settlement Agreement" and "[t]his Settlement Agreement shall be the exclusive remedy for the Provincial Health Insurers and all Class Members and Family Class Members who do not opt out". Judge Ball concluded that these provisions were inserted in the absence of the consent of the PHIs, and without any indication of their prior approval and consent. *Perdikaris v. Purdue Pharma Inc.,* 2017 SKQB 287 at para. 93.

19. As the March 2017 Agreement purported to also resolve the health care costs claims of the PHIs, Judge Ball engaged in a thorough review of statutory provisions governing the settlement of provincial and territorial health care costs claims, a threshold issue that was seemingly not considered by the other courts. He noted that "if the proposed settlement of the Provincial Health Insurers subrogated claims do not meet the requirements of the legislation on which they are based, the settlements will not be approved". *Perdikaris v. Purdue Pharma Inc.*, 2017 SKQB 287 at para. 84. In this respect, Judge Ball also concluded that "the court must be satisfied the individual Provincial Health Insurers have provided their informed consents to the payments provided for them by the Settlement Agreement in satisfaction of their claims". *Perdikaris v. Purdue Pharma Inc.*, 2017 SKQB 287 at para. 89.

20. Neither the Plaintiff nor the Defendants have sought to appeal any of the findings or conclusions of Judge Ball in Perdikaris 2017.

21. Judge Ball left open the possibility of a further application for approval of the March 2017 Agreement but imposed a threshold requirement that there be "supplementary material addressing the concerns raised in [Perdikaris 2017]". *Perdikaris v. Purdue Pharma Inc.*, 2017 SKQB 287 at para. 96(1). Those concerns, as reviewed above, included the issue of whether the PHIs had consented to the March 2017 Agreement in accordance with their respective governing legislation.

    ii.  **Second Decision of the Saskatchewan Court**

22. Class counsel brought a second motion to approve the March 2017 Agreement, which was heard by Judge Barrington-Foote on January 5, 2018. Judge Barrington-Foote provided written reasons on March 15, 2018. *See* **Exhibit B** attached hereto, *Perdikaris v. Purdue Pharma Inc.*, 2018 SKQB 86 ("**Perdikaris 2018**").

23. Insofar as the question of PHI consent was concerned, Judge Barrington-Foote made three important threshold findings that guide the approval process:

  a. Each PHI included in a national class action settlement must agree to compromise its claim (*Perdikaris v. Purdue Pharma Inc.*, 2018 SKQB 86 at para. 28);

  b. The legislative provisions relating to the compromise of a PHI claim differ from jurisdiction to jurisdiction (*Perdikaris v. Purdue Pharma Inc.*, 2018 SKQB 86 at para. 28); and

  c. Some of the legislative provisions explicitly require that the corresponding PHI consent not only to the settlement of its subrogated

claim but also the claim of the injured plaintiff (*Perdikaris v. Purdue Pharma Inc.*, 2018 SKQB 86 at para. 29). Judge Barrington-Foote provided two examples of such requirements:

    i. S. 19(6) of Saskatchewan's *The Health Administration Act*, RSS 1978, c. H-0.0001, which provides:

> Except with the written consent of the minister no action mentioned in subsection (5) shall be settled without provision being made for payment in full of the cost of health services received by the beneficiary.

    ii. S. 13(1) of British Columbia's *Health Care Costs Recovery Act*, SBC 2008, c 27, which provides:

> A claim against a person alleged to be the wrongdoer for damages arising from or related to a beneficiary's personal injury or death must not be settled unless
> ….
> (b) the minister consents in writing to the proposed settlement.

24. Judge Barrington-Foote concluded that "I am not satisfied that PHIs granted approval in accordance with their subrogation legislation". *Perdikaris v. Purdue Pharma Inc.*, 2018 SKQB 86 at para. 54.

25. Judge Barrington-Foote also determined that, as a matter of fact and contract law, there were "material changes" between the April 2016 Agreement and the March 2017 Agreement, which was presented to the court for approval. *Perdikaris v. Purdue Pharma Inc.*, 2018 SKQB 86 at paras. 52-53.

26. The Defendants filed an application for leave to appeal the decision in *Perdikaris 2018*, which was returnable on August 22, 2018, but was eventually withdrawn. There were no further efforts to appeal *Perdikaris 2018*.

**D.    Proposed Class Action on behalf of all PHIs and Federal Government of Canada**

27.     On August 29, 2018, HMQBC commenced a class action in British Columbia against various manufacturers and distributors of opioids, including the Debtors and their related Canadian entities, seeking a proposed class of all provincial and territorial health insurers and the federal government of Canada (the "**National PHI Class Action**").

28.     The relief sought in the National PHI Class Action is the recovery of health care costs expended to treat opioid-related harms, in addition to claims for damages arising from breaches of statutory and common law duties.

29.     The National PHI Class Action is not yet certified.

**E.    Class Counsel in the Canadian Consumer Class Actions Withdraw as Counsel for the PHIs**

30.     By letter dated September 16, 2018, class counsel in the Canadian Consumer Actions identified a conflict of interest between the Plaintiff and the PHIs and confirmed they would no longer represent the PHIs. *See* **Exhibit C** attached hereto, Letter from Class Counsel to PHIs dated September 16, 2018.

31.     In this letter, class counsel acknowledged that the PHIs were of the view that the March 2017 Agreement was not binding on them, and that HMQBC had filed the National PHI Class Action, and further, that "[t]he nature of the relief you are seeking under this proposed class action appears to overlap with the relief provided to the PHIs by the Defendants in the Perdikaris settlement". Class counsel also recognized that there was a "divergence of the interests of the PHIs and the representative plaintiffs and the Class".

32. At a case conference before Judge Barrington-Foote on September 28, 2018, class counsel advised the court that they no longer represented the PHIs in the Saskatchewan Action. *See* **Exhibit D**, Fiat of Judge Barrington-Foote dated September 28, 2018.

33. The Saskatchewan Court released a decision dated October 31, 2019 which expressly provides that, while class counsel would not be disqualified from acting in the litigation altogether, they were to represent the plaintiff and class members only. The Court confirmed that the PHIs were no longer represented by class counsel. *See* **Exhibit E**, Fiat of Chief Justice Popescul dated October 31, 2019, paragraphs 46 and 50.

### F.  Provincial Legislation

34. Although each of the provinces have statutes that permit recovery of general health care costs incurred as a result of the wrongful act of another, with their own requirements for settlement of such claims, on October 31, 2018, British Columbia passed the *Opioid Damages and Health Care Costs Recovery Act*, S.B.C. 2018, c. 35, which is attached hereto as **Exhibit F**.

35. Pursuant to section 12 of the *Opioid Damages and Health Care Costs Recovery Act*, any prior agreement that purports to bind HMQBC in relation to compensation arising from an opioid-related wrong, including the March 2017 Agreement, is null and void if said agreement did not receive consent of all parties and necessary court approvals prior to the date the legislation was passed. There is no question that this condition was not satisfied for the March 2017 Agreement.

36. Various other provinces have passed similar legislation containing similar provisions regarding prior agreements in relation to compensation from an opioid-related wrong. As of the date of this filing, the following pieces of legislation are in force and effect:

    a. *Opioid Damages and Health Care Costs Recovery Act*, S.A. 2019 c. O-8.5 (Alberta) section 14;

    b. *Opioid Damages and Health Care Costs Recovery Act*, 2019, S.O. 2019, c. 17, Sched. 2 (Ontario) section 13;

    c. *The Opioid Damages and Health Care Costs Recovery Act*, S.S. 2019 (Saskatchewan) section 13; and

    d. *An Act to Recover Opioid Damages and Health-care Costs*, c. 4, Acts of 2020, (Nova Scotia) section 15.

37. By population, the provinces of British Columbia, Alberta, Ontario, Saskatchewan and Nova Scotia comprise approximately 70% of Canada.

38. In addition, the province of Newfoundland and Labrador has passed the *Opioids Damages and Health Care Costs Recovery Act*, S.N.L. 2019, c. O-6.2, which will come into force on a date to be proclaimed by the Lieutenant-Governor in Council.  Section 12 of the Newfoundland and Labrador legislation pertains to the effect of prior agreements in relation to compensation from an opioid-related wrong and has the same effect as the provisions listed above.

### G.    Stay of All Actions in Canada Against the Debtors

39. On September 19, 2019, the Ontario Superior Court of Justice granted an Initial Recognition Order pursuant to Part IV of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 that, among other things, recognized the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") as foreign main proceeding[s] and granted a stay of proceedings in favor of the Chapter 11 Debtors (the "**Ontario *CCAA* Action**").

40. As a result of the stay of proceedings in favor of the Debtors, the Saskatchewan Action has been stayed until such time as the parties apply to lift the stay, or the Chapter 11 Cases come to a resolution.

41. To date, neither class counsel in the Canadian Consumer Actions nor counsel for the Debtors has applied to lift the stay of proceedings in the Saskatchewan Action.

## OBJECTION

### A. Class Counsel in the Canadian Consumer Actions Do Not Act for the Canadian PHIs

42. As of September 16, 2018, class counsel in the Canadian Consumer Actions withdrew as counsel for the PHIs due to a conflict of interest between the class and the PHIs. By their own assertion, class counsel who entered into the Stipulation do not act for the PHIs. This is not in dispute.

43. Class counsel has gone so far as to state, on the record, before Judge Barrington-Foote in the Saskatchewan Action that they no longer act for the PHIs due to a conflict between the PHIs and the class members. They appear to take the opposite position in the Stipulation, in which they purport to have authority to make binding decisions on behalf of the PHIs. HMQBC is not aware of any existing attorney-client relationship between itself, the other PHIs, and class counsel.

44. Leaving aside the ethical considerations of class counsel's attempt to compromise the PHIs' claims by entering into the Stipulation, the Stipulation cannot be used to bind HMQBC or the PHIs, and to the extent that any portion of it attempts to accomplish this outcome, it should not form any part of the Stipulation or proof of claim class counsel intends to file. The Stipulation, as it is currently drafted, compromises the interests of the PHIs, who were never

19-23649-shl    Doc 1369    Filed 07/10/20    Entered 07/10/20 12:27:47    Main Document
                                      Pg 14 of 18

provided a draft of the Stipulation, an opportunity to comment on its contents, or any advance notice of its filing. Simply put, the PHIs do not consent to the Stipulation as currently drafted.

45. Paragraph 1 of the Stipulation says that class counsel may file a proof of claim on behalf of potential holders of "Settled Claims" (as defined in the settlement agreement). The definition of "Settled Claims" in the settlement agreement attached as Schedule 2 to the Stipulation explicitly includes "Provincial Health Insurers" and "the cost of medical services and the drugs". Paragraph 1 of the Stipulation is therefore false and misleading.

46. Further, the Stipulation contains a clause at paragraph 11 that states the parties represent and warrant to each other that the signatories have full power and authority to enter into the Stipulation. Again, paragraph 11 of the Stipulation is false and misleading. Class counsel cannot sign the Stipulation in good faith, as they have neither the power nor the authority to enter into the Stipulation on behalf of the PHIs.

47. Class counsel has no authority to advance a settlement on behalf of the PHIs, whether in the Chapter 11 Cases, in the Saskatchewan Action, or in any other proceeding. Indeed, class counsel took no steps to inform the PHIs of their steps taken in these proceedings with respect to the Stipulation, which is clearly meant to bind the PHIs, and the PHIs only learned about it on July 1, 2020, as a result of the delivery of a Motion Record filed in the Ontario *CCAA* Action. The inclusion of language that purports to bind HMQBC and the PHIs in the Stipulation is nothing more than an attempt to circumvent the dispute in Canada over the enforceability of the March 2017 Agreement as against the PHIs, which issue can only be determined by the Saskatchewan court.

**B.    The Saskatchewan Court has Twice Declined to Approve the March 2017 Agreement**

48.    The March 2017 Agreement has been before the Saskatchewan court on multiple occasions. The Saskatchewan court has twice declined to approve the March 2017 Agreement due to insufficient evidence of the PHIs' consent. Approval by all four courts (Ontario, Nova Scotia, Quebec, and Saskatchewan) is a necessary prerequisite to its effectiveness. The conditional approvals granted by the Ontario, Nova Scotia, and Quebec courts stipulated that the March 2017 Agreement was to be approved by all courts before it could take any effect.

49.    Because the Saskatchewan court has not, to date, granted its approval, the March 2017 Agreement could not be binding on any of the parties, including the PHIs, and the prior approvals in other jurisdictions are without effect.

50.    Approval of the March 2017 Agreement will remain unsettled unless and until the stay of proceedings is lifted in the Saskatchewan Action and the plaintiffs bring a third motion for court approval. The success of this third motion, which will be opposed by the Canadian Government Objectors, remains to be seen.

51.    It was open to any of the parties to the Saskatchewan Action to apply to lift the stay in order to seek a third motion to approve the March 2017 Agreement. It has been more than two years since Judge Barrington-Foote declined to approve the March 2017 Agreement for a second time, and almost one year since the Saskatchewan Action has been stayed. While the Stipulation does not appear to be asking this Court to endorse the March 2017 Agreement, it is asking for the March 2017 Agreement to be effectuated through the Chapter 11 process. Class counsel and the Debtors have chosen the wrong path. The appropriate procedure for the parties to effectuate the March 2017 Agreement is to apply to the Saskatchewan court to lift the stay, so that class counsel could bring on a third hearing seeking approval of the March 2017 Agreement.

C. **Binding Canadian Legislation Voids the March 2017 Agreement**

52. Five provinces have passed legislation that render the March 2017 Agreement void. Accordingly, even if it is approved in Saskatchewan over the objections of the PHIs, the settlement purported to have been reached in the March 2017 Agreement is of no force and effect as it relates to the provinces that have passed legislation, namely British Columbia, Alberta, Ontario, Nova Scotia, and Saskatchewan.

D. **The Canadian PHIS Have Joint and Several Claims Against the Debtors**

53. Alongside the other PHIs, the Canadian Government Objectors have joint and several claims against the Debtors worth many billions of dollars based on breaches of statutory and common law duties. HMQBC is seeking recovery of this amount in the National PHI Class Action.

54. The settlement reflected in the March 2017 Agreement does not purport to value the claims of the PHIs, which include claims brought under statutes, in negligence, and in public nuisance. Judge Barrington-Foote noted that class counsel took "no steps … to ensure that past and potential future health care costs for PHIs were identified" and, when purporting to compromise the PHIs' claims, picked numbers "out of the air.": *Perdikaris v. Purdue Pharma*, 2018 SKQB 86 at para 42.

55. The plaintiffs in the Canadian Consumer Actions may resolve their claims with the Debtors independent of any compromise of the PHIs' claims against the Debtors. The claims of the PHIs are separate and apart from those raised in the Canadian Consumer Actions, and have no bearing on whether or not the plaintiffs in the Canadian Consumer Actions may settle their claims with the Debtors. The March 2017 Agreement is, at best, an attempt to roll in the

- 16 -

claims of the PHIs at a significant discount for the Debtors, whose liability to the PHIs extends into the billions.

## RESERVATION OF RIGHTS

56. The Canadian Government Objectors reserve the right to (i) amend, supplement, or otherwise modify this Objection; and (ii) appear and be heard at any hearing with respect to the Stipulation.

57. Pursuant to Rule 9010 of the Federal Rules of Bankruptcy Procedure and applicable law, the Canadian Government Objectors make this special appearance solely for the purpose of objecting to the Presentment of Stipulation and do not waive the right to challenge the jurisdiction of the Court. Nothing in this Objection shall be construed as a waiver or release of any claims or rights that Canadian Government Objectors may have against the Debtors, all of which are expressly reserved.

## CONCLUSION

58. The PHIs have not consented to the March 2017 Agreement or the Stipulation, and as such, cannot be bound by their terms. To the extent the Stipulation as presently drafted purports to compromise the PHIs' independent rights against the Debtors, the Stipulation should not be approved. In any event, the Stipulation contains a number of material errors, omissions and misrepresentations.

**WHEREFORE**, the Canadian Government Objectors respectfully request that the Court enter an Order: (i) sustaining this Objection; (ii) denying the relief sought in the Presentment of Stipulation; and (iii) granting such other and further relief as the Court deems proper.

Dated:  New York, New York
        July 10, 2020

                              PHILLIPS LYTLE LLP

                              By: ___*/s/ Nickolas Karavolas, Esq.*___
                                  Nickolas Karavolas, Esq. (NK2504)
                                  William J. Brown, Esq. (WB9631)
                                  Local Counsel for Her Majesty the Queen in
                                  Right of the Province of British Columbia
                                  340 Madison Avenue, 17th Floor
                                  New York, New York 10173
                                  Telephone: (212) 759-4888
                                  Facsimile: (212) 308-9079
                                  E-mail: nkaravolas@phillipslytle.com