**Exhibit F**

Copyright (c) Queen's Printer,
Victoria, British Columbia, Canada

License
Disclaimer

This Act is current to June 17, 2020

See the Tables of Legislative Changes for this Act's legislative history, including any changes not in force.

# OPIOID DAMAGES AND HEALTH CARE COSTS RECOVERY ACT

## [SBC 2018] CHAPTER 35

*Assented to October 31, 2018*

## Contents

1  Definitions and interpretation
2  Direct action by government
3  Recovery of cost of health care benefits on aggregate basis
4  Joint and several liability in an action under section 2 (1)
5  Population-based evidence to establish causation and quantify damages or cost
6  Limitation periods
7  Liability based on risk contribution
8  Apportionment of liability in opioid-related wrongs
9  Regulations
10 Retroactive effect
11 If proceedings already commenced
12 Effect of existing agreements
13 Consequential Amendment
14 Commencement

Schedule

**Definitions and interpretation**

    **1**  (1) In this Act:

    **"cost of health care benefits"** means the sum of

        (a) the present value of the total expenditure by the government for health care benefits provided for insured persons as a result of opioid-related disease, injury or illness or the risk of opioid-related disease, injury or illness, and

        (b) the present value of the estimated total expenditure by the government for health care benefits that could reasonably be expected to be provided for those insured persons as a result of opioid-related disease, injury or illness or the risk of opioid-related disease, injury or illness;

"disease, injury or illness" includes problematic substance use, addiction and general deterioration of health;

"health care benefits" means

    (a) benefits as defined under the *Hospital Insurance Act*,

    (b) benefits as defined under the *Laboratory Services Act*,

    (c) benefits as defined under the *Medicare Protection Act*,

    (d) benefits as defined under the *Pharmaceutical Services Act*,

    (e) payments made by the government under the *Continuing Care Act*, and

    (f) other expenditures by the government, made directly or through one or more agents or other intermediate bodies, for programs, services, benefits or similar matters associated with disease, injury or illness;

"insured person" means

    (a) a person, including a deceased person, for whom health care benefits have been provided, or

    (b) a person for whom health care benefits could reasonably be expected to be provided;

"joint venture" means an association of 2 or more persons, if

    (a) the relationship among the persons does not constitute a corporation, partnership or trust, and

    (b) the persons each have an undivided interest in assets of the association;

"manufacture" includes, for an opioid product, the production, assembly and packaging of the opioid product;

"manufacturer" means a person who manufactures or has manufactured an opioid product and a person who, in the past or currently,

    (a) causes, directly or indirectly, through arrangements with contractors, subcontractors, licensees, franchisees or others, the manufacture of an opioid product,

    (b) for any fiscal year of the person, derives at least 10% of revenues, determined on a consolidated basis in accordance with generally accepted accounting principles in Canada, from the manufacture or promotion of opioid products by that person or by other persons,

    (c) engages in or causes, directly or indirectly, other persons to engage in promoting an opioid product, or

    (d) is a trade association primarily engaged in

        (i) advancing the interests of manufacturers,

        (ii) promoting an opioid product, or

(iii) causing, directly o ri ndirectly, otherp ersonst oen gage in promotingan o pioidp roduct;

**"opioidp roduct"**m eansan yp roductt hatc ontains

(a) a drugs eto uti nt he Schedule, or

(b) a drugp rescribedb yr egulation;

**"opioid-relatedd isease, injuryo rilln ess"**m eansd isease, injuryo ri llness causedo rc ontributedt ob yan i ndividual'su se orex posure toan o pioid product, whethert he opioidp roducti s

(a) int he formi nw hichi tw asm anufactured,

(b) combinedw ithan otherd rugo rs ubstance, or

(c) used, ori nt he case of exposure isp resent, in a formo rm annero ther than

(i) asp rescribedo rad visedb y a practitioner, or

(ii) asr ecommendedb yt he manufacturero f thato pioidp roduct;

**"opioid-relatedw rong"**m eans

(a) a tortt hati sc ommittedi nB ritishCo lumbia by a manufacturero r wholesaleran dt hatc auseso rc ontributest oo pioid-relatedd isease, injuryo ri llness, or

(b) inan ac tionu nders ection2 (1 ), a breach, by a manufacturero r wholesaler, of a commonl aw, equitable ors tatutoryd utyo ro bligation owedt op ersonsi nB ritishCo lumbia whoh ave usedo rb eenex posed too rm ightu se orb e exposedt oan o pioidp roduct;

**"person"**i ncludes a trust, jointv enture ort rade association;

**"practitioner"**m eans a personw ho

(a) isau thorizedu ndert he *HealthPr ofessionsA ct*o rt he *Veterinarians Act*t op rescribe orad vise ont he therapeuticv alue, contentsan d hazardso f a drugw ithint he meaningo f the *Pharmacy Operationsan d DrugSc hedulingA ct*, and

(b) isn otp rohibitedfr omp rescribinga drugt hati san o pioidp roduct;

**"promote"**o r **"promotion"**i ncludes, foran o pioidp roduct,

(a) the marketingo f the opioidp roduct, whetherd irecto ri ndirect,

(b) the distributiono rs ale of the opioidp roduct, and

(c) anyr esearchw ithr espectt ot he opioidp roduct;

**"type of opioidp roduct"**m eansan o pioidp roducti nt he formo f a pill, a capsule, ano rall iquid, a powder, ani njectable, a topicalo r a combinationo f anyo f these;

"**use or exposure**", in relation to an opioid product, means ingestion, inhalation, injection, application or assimilation of the opioid product, whether intentional or otherwise;

"**wholesaler**" means a person who distributes, sells or offers for sale opioid products

    (a) to pharmacies, distributors or other persons for resale, or

    (b) to hospitals, facilities or care centres for patient use.

(2) The definition of "manufacturer" in subsection (1) does not include

    (a) an individual,

    (b) a wholesaler or retailer of opioid products who is not related to

        (i) a person who manufactures an opioid product, or

        (ii) a person described in paragraph (a) of the definition of "manufacturer", or

    (c) a person who

        (i) is a manufacturer only because paragraph (b) or (c) of the definition of "manufacturer" applies to the person, and

        (ii) is not related to

            (A) a person who manufactures an opioid product, or

            (B) a person described in paragraphs (a) or (d) of the definition of "manufacturer".

(3) For the purposes of subsection (2) of this section, a person is related to another person if, directly or indirectly, the person is

    (a) an affiliate, as defined in section 1 of the *Business Corporations Act*, of the other person, or

    (b) an affiliate of the other person or an affiliate of an affiliate of the other person.

(4) For the purposes of subsection (3) (b), a person is deemed to be an affiliate of another person if the person

    (a) is a corporation and the other person, or a group of persons not dealing with each other at arm's length of which the other person is a member, owns a beneficial interest in shares of the corporation

        (i) carrying at least 50% of the votes for the election of directors of the corporation, and the votes carried by the shares are sufficient, if exercised, to elect a director of the corporation, or

        (ii) having a fair market value, including a premium for control if applicable, of at least 50% of the fair market value of all the issued and outstanding shares of the corporation, or

    (b) is a partnership, trust or joint venture, and the other person, or a group of persons not dealing with each other at arm's length of which the other person is a member, has an ownership interest in the assets

of that person that at least the other person or group of persons to
receive at least 50% of the profits or at least 50% of the assets on
the dissolution, winding up or termination of the partnership, trust or
joint venture.

(5) For the purposes of subsection (3) (b), a person is deemed to be an affiliate of another person if the other person, or a group of persons not dealing with each other at arm's length of which the other person is a member, has any direct or indirect influence that, if exercised, would result in control in fact of that person, except if the other person or group of persons deals at arm's length with that person and derives influence solely as a lender.

(6) For the purposes of determining the market share of a defendant for a type of opioid product sold in British Columbia, the court must calculate the defendant's market share for the type of opioid product by the following formula:

$$dms = \frac{dm}{MM} \times 100\%$$

where

dms = the defendant's market share for the type of opioid product from the date of the earliest opioid-related wrong committed by that defendant to the date of trial;

dm = the quantity of the type of opioid product manufactured or promoted by the defendant that is distributed or sold within British Columbia from the date of the earliest opioid-related wrong committed by that defendant to the date of trial;

MM = the quantity of the type of opioid product manufactured or promoted by all manufacturers or wholesalers that is purchased or dispensed within British Columbia for the purpose of providing health care benefits from the date of the earliest opioid-related wrong committed by the defendant to the date of trial.

**Direct action by government**

**2** (1) The government has a direct and distinct action against a manufacturer or wholesaler to recover the cost of health care benefits caused or contributed to by an opioid-related wrong.

(2) An action under subsection (1) is brought by the government in its own right and not on the basis of a subrogated claim.

(3) In an action under subsection (1), the government may recover the cost of health care benefits whether or not there has been any recovery by other persons who have suffered damage caused or contributed to by the opioid-related wrong committed by the defendant.

(4) In an action under subsection (1), the government may recover the cost of health care benefits

(a) for particular individual insured persons, or

　　　　(b) on an aggregate basis, for a population of insured persons who have suffered damage caused or contributed to by the use of or exposure to a type of opioid product.

　(5) If the government seeks an action under subsection (1) for recovery of the cost of health care benefits on an aggregate basis,

　　　　(a) it is not necessary

　　　　　　(i) to identify particular individual insured persons,

　　　　　　(ii) to prove the cause of opioid-related disease, injury or illness in any particular individual insured person, or

　　　　　　(iii) to prove the cost of health care benefits for any particular individual insured person,

　　　　(b) the health care records and documents of particular individual insured persons or the documents relating to the provision of health care benefits for particular individual insured persons are not compellable except as provided under a rule of law, practice or procedure that requires the production of documents relied on by an expert witness,

　　　　(c) a person is not compellable to answer questions with respect to the health of, or the provision of health care benefits for, particular individual insured persons,

　　　　(d) despite paragraphs (b) and (c) of this subsection, on application by a defendant, the court may order discovery of a statistically meaningful sample of the documents referred to in paragraph (b) of this subsection, and the order must include directions concerning the nature, level of detail and type of information to be disclosed, and

　　　　(e) if an order is made under paragraph (d) of this subsection, the identity of particular individual insured persons must not be disclosed, and all identifiers that disclose or may be used to trace the names or identities of any particular individual insured persons must be deleted from any documents before the documents are disclosed.

**Recovery of cost of health care benefits on aggregate basis**

**3** (1) In an action under section 2 (1) for the recovery of the cost of health care benefits on an aggregate basis, subsection (2) of this section applies if the government proves, on a balance of probabilities, that, in respect of a type of opioid product,

　　　　(a) the defendant breached a common law, equitable or statutory duty or obligation owed to insured persons who have used or been exposed to or might use or be exposed to the type of opioid product,

　　　　(b) using the type of opioid product can cause or contribute to disease, injury or illness, and

　　　　(c) during all or part of the period of the breach referred to in paragraph (a) of this subsection, the type of opioid product, manufactured or

　　　　promoted by the defendant, was offered for distribution or sale in British Columbia.

 (2) Subject to subsections (1) and (4), the court must presume that

  (a) the population of insured persons who were exposed to the type of opioid product manufactured or promoted by the defendant would not have used or been exposed to the product but for the breach referred to in subsection (1) (a), and

  (b) the use or exposure described in paragraph (a) of this subsection caused or contributed to disease, injury or illness or the risk of disease, injury or illness in a portion of the population described in paragraph (a) of this subsection.

 (3) If the presumptions under subsection (2) (a) and (b) apply,

  (a) the court must determine on an aggregate basis the cost of health care benefits provided after the date of the breach referred to in subsection (1) (a) resulting from use or exposure to the type of opioid product, and

  (b) each defendant to which the presumptions apply is liable for the proportion of the aggregate cost referred to in paragraph (a) of this subsection equal to its market share in the type of opioid product.

 (4) The amount of a defendant's liability assessed under subsection (3) (b) may be reduced, or the proportions of liability assessed under subsection (3) (b) readjusted amongst the defendants, to the extent that a defendant proves, on a balance of probabilities, that the breach referred to in subsection (1) (a) did not cause or contribute to the use or exposure referred to in subsection (2) (a) or to the disease, injury or illness or risk of disease, injury or illness referred to in subsection (2) (b).

**Joint and several liability in an action under section 2 (1)**

**4** (1) Two or more defendants in an action under section 2 (1) are jointly and severally liable for the cost of health care benefits if

  (a) those defendants jointly breached a duty or obligation described in the definition of "opioid-related wrong" in section 1 (1), and

  (b) as a consequence of the breach described in paragraph (a) of this subsection, at least one of those defendants is held liable in the action under section 2 (1) for the cost of those health care benefits.

 (2) For purposes of an action under section 2 (1), 2 or more manufacturers or wholesalers, whether or not they are defendants in the action, are deemed to have jointly breached a duty or obligation described in the definition of "opioid-related wrong" in section 1 (1) if

  (a) one or more of those manufacturers or wholesalers are held to have breached the duty or obligation, and

(b) at common law, in equity or under an enactment, those manufacturers or wholesalers could be held

   (i) to have conspired or acted in concert with respect to the breach,

   (ii) to have acted in a principal and agent relationship with each other with respect to the breach, or

   (iii) to be jointly or vicariously liable for the breach if damages would have been awarded to a person who suffered damages as a consequence of the breach.

## Population-based evidence to establish causation and quantify damages or cost

**5** Statistical information and information derived from epidemiological, sociological and other relevant studies, including information derived from sampling, is admissible as evidence for the purposes of establishing causation and quantifying damages or the cost of health care benefits respecting an opioid-related wrong in an action brought

   (a) by or on behalf of a person, in the person's own name or as a member of a class of persons under the [ClassPr oceedingsA ct](), or

   (b) by the government under section 2 (1).

## Limitation periods

**6** (1) No action that is commenced by the government within 2 years after the coming into force of this section for the recovery of the cost of health care benefits, or for damages, alleged to have been caused or contributed to by an opioid-related wrong, is barred under the [LimitationA ct]().

(2) Any action described in subsection (1) of this section for damages alleged to have been caused or contributed to by an opioid-related wrong is revived if the action was dismissed before the coming into force of this section merely because it was held by a court to be barred or extinguished by the [Limitation Act]().

## Liability based on risk contribution

**7** (1) This section applies to an action for the recovery of the cost of health care benefits, or for damages, alleged to have been caused or contributed to by an opioid-related wrong, other than an action for the recovery of the cost of health care benefits on an aggregate basis.

(2) If the government is unable to establish which defendant caused or contributed to the use or exposure described in paragraph (b) and, as a result of a breach of a common law, equitable or statutory duty or obligation,

   (a) one or more defendants caused or contributed to a risk of disease, injury or illness by making a type of opioid product available to insured persons, and

  (b) an insured person has used or been exposed to the type of opioid product referred to in paragraph (a) and suffered disease, injury or illness as a result of the use or exposure,

the court may find each defendant that caused or contributed to the risk of disease, injury or illness liable for a proportion of the damages or cost of health care benefits incurred, equal to the proportion of its contribution to that risk of disease, injury or illness.

(3) The court may consider the following in apportioning liability under subsection (2):

  (a) the length of time a defendant engaged in the conduct that caused or contributed to the risk of disease, injury or illness;

  (b) the market share a defendant had in the type of opioid product that caused or contributed to the risk of disease, injury or illness;

  (c) the degree of potency of the opioid product manufactured or promoted by a defendant;

  (d) the amounts spent by a defendant on promoting the type of opioid product that caused or contributed to the risk of disease, injury or illness;

  (e) the degree to which a defendant collaborated or acted in concert with other manufacturers or wholesalers in any conduct that caused, contributed to or aggravated the risk of disease, injury or illness;

  (f) the extent to which a defendant conducted tests and studies to determine the risk of disease, injury or illness resulting from use of or exposure to the type of opioid product;

  (g) the extent to which a defendant assumed a leadership role in manufacturing or promoting the type of opioid product;

  (h) the efforts a defendant made to warn practitioners and the public about the risk of disease, injury or illness resulting from use of or exposure to the type of opioid product;

  (i) the extent to which a defendant continued manufacturing or promoting the type of opioid product after it knew or ought to have known the risk of disease, injury or illness resulting from use of or exposure to the type of opioid product;

  (j) the extent to which a defendant continued promoting the type of opioid product after it knew or ought to have known that the amount or dosage of the type of opioid product promoted did not reasonably reflect the health needs of the population of insured persons who were likely to use or be exposed to the type of opioid product;

  (k) affirmative steps that a defendant took to reduce the risk of disease, injury or illness to the public;

  (l) other considerations considered relevant by the court.

**Apportionment of liability in opioid-related wrongs**

8  (1) This section does not apply to a defendant in respect of whom the court has made a finding of liability under section 7.

(2) A defendant who is found liable for an opioid-related wrong may commence, against one or more of the defendants found liable for that wrong in the same action, an action or proceeding for contribution toward the cost of health care benefits or the payment of damages caused or contributed to by that wrong.

(3) Subsection (2) of this section applies whether or not the defendant commencing an action or proceeding under that subsection has paid all or any of the cost of health care benefits or the damages caused or contributed to by the opioid-related wrong.

(4) In an action or proceeding described in subsection (2) of this section, the court may apportion liability and order contribution among each of the defendants in accordance with the considerations listed in section 7 (3).

**Regulations**

9  (1) The Lieutenant Governor in Council may make regulations referred to in section 41 of the *Interpretation Act*.

(2) Without limiting subsection (1) of this section, the Lieutenant Governor in Council may make regulations prescribing drugs for the purposes of paragraph (b) of the definition of "opioid product" in section 1 (1).

**Retroactive effect**

10  A provision of this Act that has the retroactive effect necessary to give the provision full effect for all purposes, including allowing an action to be brought under section 2 (1) arising from an opioid-related wrong, whenever the opioid-related wrong occurred.

**If proceedings already commenced**

11  (1) If the government has commenced a proceeding in relation to an opioid-related wrong and the proceeding is ongoing as of the date this section comes into force,

(a) the proceeding continues in accordance with this Act,

(b) for the purposes of section 4 of the *Class Proceedings Act*, the government may bring an action on behalf of a class consisting of

(i) one or more of the government of Canada and the government of a jurisdiction within Canada, and

(ii) a federal or provincial government paying agency that makes reimbursement for the cost of services that are in the nature of health care benefits within the meaning of this Act,

(c) a procedure completed, and an order made, before this section comes into force continues to have effect unless

        (i) it would be inconsistent with this Act, or

        (ii) the court orders otherwise, and

    (d) a procedure that began but was not completed before this section comes into force must be completed in accordance with this Act.

(2) Nothing in subsection (1) (b) of this section prevents a member of the class described in that provision from opting out of the proceeding in accordance with section 16 of the *Class Proceedings Act*.

**Effect of existing agreements**

**12** (1) In subsections (2) and (3) of this section, **"proceeding"** means a proceeding

    (a) in relation to an action taken under section 2 (1) of this Act, or

    (b) continued as described in section 11 of this Act.

(2) Despite any prior agreement that purports to bind the government in relation to compensation arising from an opioid-related wrong,

    (a) the government is not barred from commencing or continuing a proceeding,

    (b) the evidence that may be brought against a party to the agreement in the course of a proceeding is not limited, and

    (c) the liability of, or the amount of compensation payable by, a party to the agreement in relation to an opioid-related wrong that is the subject of a proceeding is not limited.

(3) If an agreement described in subsection (2) of this section has been finalized by receiving the consent of all parties to the agreement and all necessary court approvals, if any, before the date this Act receives Royal Assent, any compensation received by the government under the agreement must be deducted from any compensation received by the government as a result of a proceeding.

(4) No compensation is payable by the government in any proceedings that may be commenced or continued to claim compensation from the government or to obtain a declaration that compensation is payable by the government as a result of the voiding of an agreement described in subsection (2) of this section.

## Consequential Amendment

*[Note: See Table of Legislative Changes for the status of section 13.]*

| Section(s) | Affected Act |
|---|---|
| 13 | *Health Care Costs Recovery Act* |

**Commencement**

**14** This Act comes into force on the date of Royal Assent.

## Schedule

**Opioid products**

    **1** A product that contains any of the following drugs is an opioid product for the purposes of this Act:

| Drugs containing any of the following active ingredients | Including but not limited to |
|---|---|
| Anileridine | |
| Buprenorphine | Buprenorphine Hydrochloride |
| Butorphanol | Butorphanol Tartrate |
| Codeine, except for those products referred to in section 36 (1) of the Narcotic Control Regulations (Canada) | Codeine Phosphate |
| Diacetylmorphine | |
| Fentanyl | Fentanyl Citrate |
| Hydrocodone | Hydrocodone Bitartrate |
| Hydromorphone | Hydromorphone Hydrochloride |
| Levorphanol | |
| Meperidine | Meperidine Hydrochloride |
| Methadone | Methadone Hydrochloride |
| Morphine | Morphine Hydrochloride and Morphine Sulfate |
| Nalbuphine | |
| Normethadone | Normethadone Hydrochloride |
| Opium | Opium and Belladonna |
| Oxycodone | Oxycodone Hydrochloride |
| Oxymorphone | Oxymorphone Hydrochloride |
| Pentazocine | Pentazocine Hydrochloride and Pentazocine Lactate |
| Propoxyphene | |
| Remifentanil | |
| Sufentanil | |
| Tapentadol | Tapentadol Hydrochloride |
| Tramadol | Tramadol Hydrochloride |

Copyright (c) Queen's Printer, Victoria, British Columbia, Canada