DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF PRESENTMENT OF APPLICATION OF DEBTORS FOR AUTHORITY TO SUPPLEMENT RETENTION AND EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO MARCH 6, 2020**

**PLEASE TAKE NOTICE** that on July 10, 2020, Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed the *Application of the Debtors for Authority to Supplement*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Retention and Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel to the Debtors Nunc Pro Tunc to March 6, 2020* (the "**Application**") attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will present the Application to the Honorable Robert D. Drain, United States Bankruptcy Judge, for approval and signature on **July 24, 2020 at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, unless a written objection to the Application is served and filed with proof of service with the Clerk of the Court, and a courtesy copy is delivered to the undersigned and to the chambers of the Honorable Robert D. Drain, so as to be received by **July 21, 2020 at 4:00 p.m. (prevailing Eastern Time)**, there will not be a hearing to consider such Application, and such Application may be signed and entered by the Court.

**PLEASE TAKE FURTHER NOTICE** that, if a written objection is timely filed and served with respect to the Application, a hearing (the "**Hearing**") will be held to consider such Application before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on a date to be announced.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: July 10, 2020
New York, New York

        DAVIS POLK & WARDWELL LLP

        By: */s/ Eli J. Vonnegut*

        450 Lexington Avenue
        New York, New York 10017
        Telephone: (212) 450-4000
        Facsimile: (212) 701-5800
        Marshall S. Huebner
        Benjamin S. Kaminetzky
        Timothy Graulich
        Eli J. Vonnegut
        Christopher S. Robertson

        *Counsel to the Debtors
and Debtors in Possession*

3

**<u>Exhibit A</u>**

**Application**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.**, *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 19-23649<br><br>(Jointly Administered) |

**APPLICATION OF DEBTORS FOR AUTHORITY TO SUPPLEMENT RETENTION AND EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO MARCH 6, 2020**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") hereby represent in support of this application (this "**Supplemental Application**"):

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final order or judgments consistent with

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2. On September 15, 2019 (the "**Petition Dates**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On September 27, 2019, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules [D.I. 59].

4. PPLP and its direct and indirect subsidiaries other than the Rhodes Debtors (defined below) (the "**Purdue Debtors**") primarily operate a branded pharmaceuticals business, while Debtor Rhodes Associates L.P. and its direct and indirect subsidiaries (the "**Rhodes Debtors**") primarily develop and distribute generic pharmaceutical products and manufacture a range of active pharmaceutical ingredients. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* [D.I. 17].

5. On November 6, 2019 the Debtors filed *Application of Debtors For Authority to Retain and Employ Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 438] (the "**Initial Retention Application**"). In support of the Initial Retention Application, the Debtors submitted the Declaration of Patrick Fitzgerald

2

(the "**Fitzgerald Declaration**"). On November 25, 2019 the Court entered *Order Authorizing The Retention and Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel For the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 545] (the "**Initial Retention Order**").

6. On March 16, 2020, Skadden filed its *Supplemental Declaration of Patrick Fitzgerald In Support of Application of Debtors to Retain and Employ Skadden* [D.I. 936] (the "**First Supplemental Fitzgerald Declaration**"). On May 26, Skadden filed its *Supplemental Declaration of Patrick Fitzgerald In Support Of Application of Debtors For Authority to Retain and Employ Skadden, Arps, Slate, Meagher & Flom LLP As Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 1183] (the "**Second Supplemental Fitzgerald Declaration**").

**Relief Requested**

7. By this Application, pursuant to section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors seek entry of an order supplementing the retention and employment of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") to include the additional services described herein, effective *nunc pro tunc* to March 6, 2020.[2]

8. A proposed form of order granting the relief requested in this Application is attached hereto as **Exhibit A** (the "**Proposed Order**").

9. In support of the relief requested herein, the Debtors submit the *Third Supplemental Declaration of Patrick Fitzgerald in Support of Application of Debtors for Authority to Retain and Employ Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel to the Debtors Nunc Pro*

---

[2] Skadden began providing advice on certain corporate and regulatory matters on March 6, 2020. Skadden began providing advice in connection with a potential transaction on or around April 16, 2020.

3

*Tunc to March 6, 2020* (the "**Third Supplemental Fitzgerald Declaration**," and together with the Fitzgerald Declaration, the First Supplemental Fitzgerald Declaration, and the Second Supplemental Fitzgerald Declaration, the "**Fitzgerald Declarations**"), attached hereto as **Exhibit B**.

## Scope of Skadden's Services

10. In connection with the Initial Retention Application, the Debtors retained Skadden to represent PPLP in (a) providing regulatory and compliance advice (collectively, the "**Advice Matters**"), (b) certain civil and criminal investigations initiated by state attorneys general and state agencies and the Department of Justice (the "**DOJ**") and certain other United States agencies (collectively, the "**Governmental Investigation Matters**"), and (c) certain civil litigation (collectively, the "**Litigation Matters**"), including approximately 51 cases filed in Texas state courts, most of which have been consolidated into a Texas state multi-district litigation (the "**Texas Litigation**"), and to provide the services described in the Initial Retention Application related thereto (the "**Initial Retention Services**").

11. The Debtors seek to expand the scope of Skadden's employment and retention to allow Skadden to advise the Debtors in connection with a potential transaction (the "**Transaction Matters**"), as well as certain corporate and regulatory matters that arise in connection with the Advice Matters, Governmental Investigation Matters, Litigation Matters, and Transaction Matters (the "**Corporate Matters**"). In connection with advising the Debtors regarding the Transaction Matters and Corporate Matters, Skadden will provide services normally and reasonably associated with these types of engagements (the "**Supplemental Services**" and together with the Initial Retention Services, the "**Services**"). In connection with the Transaction Matter, Supplemental Services will include advice relating to the following: structuring the potential transaction;

4

assisting with organizing due diligence and responding to inquiries from potential transaction counterparties; drafting and negotiating definitive documentation; and preparing for and assisting the Debtors in consummating the potential transaction, with advice covering, inter alia, corporate, regulatory, intellectual property, tax, environmental, and real estate matters. The Debtors require the Supplemental Services during these chapter 11 cases.

12. As a result of representing PPLP and certain subsidiaries in connection with the Initial Retention Services, Skadden's professionals have acquired extensive knowledge of the facts and history of the Debtors' business and the various legal issues involved in the Advice Matters, Governmental Investigation Matters, and the Litigation Matters. Advising the Debtors in connection with the Transaction Matters and the Corporate Matters requires a comprehensive understanding of the Debtors' regulatory and compliance issues, the pending governmental investigations, and the Debtors' pending litigation matters, as these are issues that the Debtors will have to navigate in executing a transaction. Given Skadden's longstanding familiarity with the foregoing, expanding the scope of Skadden's retention to advise the Debtors in connection with the Transaction Matters will promote the efficient administration of the chapter 11 cases. If the Debtors were required to retain different counsel to provide the Supplemental Services, such new counsel would need to get up to speed on the matters over which Skadden already has extensive knowledge, which would require the Debtors to expend unnecessary resources.

13. Subject to approval of this Application, Skadden has informed the Debtors that it is able and willing to serve as the Debtors' special counsel and to perform the Supplemental Services on matters arising during these chapter 11 cases. For the avoidance of doubt, Skadden will not serve as the Debtors' general or special bankruptcy counsel and will not advise the Debtors or their estates with respect to their duties under the Bankruptcy Code.

## Skadden's Qualifications

14. Skadden has extensive experience advising health care and pharmaceutical clients worldwide with respect to mergers, acquisitions and divestitures, including in distressed company situations. In addition, Skadden's intellectual property attorneys regularly advise clients in the pharmaceutical industry with respect to a wide variety of intellectual property matters. Additional information regarding Skadden's qualifications are set forth in detail in the Initial Retention Application.

15. Due to the firm's experience and knowledge in the areas for which the Supplemental Services will be provided, as well as the firm's longstanding relationship with the Debtors in connection with the Services, the Debtors believe that Skadden is well qualified and able to represent the Debtors in the Transaction Matters and the Corporate Matters, and expansion of Skadden's retention would be in the best interest of the Debtors' estates, creditors, and other parties in interest.

## Disinterestedness of Professionals

16. To the best of the Debtors' knowledge, information, and belief, and based on the foregoing and as set forth in the Fitzgerald Declarations, Skadden does not hold or represent any interest that is materially adverse to the Debtors or their estates with respect to the Services for which Skadden will be employed.

17. The Fitzgerald Declarations disclose the Firm's connections to the Debtors and parties in interest in the Chapter 11 Cases and are incorporated herein by reference. As set forth herein and in the Fitzgerald Declarations, Skadden has represented the Debtors related to the Services as well as other matters prior to these chapter 11 cases. In addition, as set forth in the Fitzgerald Declarations, Skadden has in the past represented, currently represents and likely in the future will represent certain parties in interest in these cases (or their affiliates) on matters unrelated

to the Debtors, the Debtors' bankruptcy cases or such entities' claims against or interests in the Debtors, or the Services for which Skadden is to be employed under the Initial Retention Application and this Supplemental Application.

18. Based on the foregoing, Skadden does not hold or represent any interest adverse to the Debtors or the estates with respect to the matters on which Skadden is to be employed, and Skadden may be employed under section 327(e) for the Supplemental Services described herein.

## Skadden's Compensation

19. Subject to approval by the Court and as set forth in the First Supplemental Fitzgerald Declaration Skadden's billing rates that are effective beginning January 1, 2020 for the Skadden professionals expected to spend significant time on the engagement range from $1,125 to $1,695 for partners, $475 to $1,270 for associates and special counsel, and $240 to $430 for paralegals.[3]

20. In addition to the hourly billing rates set forth herein, Skadden will continue to charge the Debtors for certain charges and disbursements incurred in the rendition of services. These charges and disbursements include costs for long distance telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.[4] The Debtors believe that the compensation structure and other terms and conditions are reasonable terms and conditions of employment and should be approved.

---

[3] Skadden has agreed to continue to provide a volume discount. Specifically, Skadden agreed to provide a discount of 8% for work that increases to 11% and 14% once fees reach $4 million and $8 million, respectively. These thresholds are calculated on a calendar year basis and re-set annually.

[4] The Debtors understand that charges and disbursements are invoiced pursuant to guidelines set by PPLP, subject to certain modifications. Application of these guidelines generally results in a discount from certain charges and disbursements invoiced pursuant to Skadden's Policy Statement Concerning Charges and Disbursements, which is typically applicable to firm engagements.

7

21.     On April 11, 2019, an initial retainer was paid to Skadden in the amount of $1,500,000, and on June 27, 2019, an additional retainer was paid to Skadden in the amount of $1,000,000 (collectively, the "**Retainer**").  The Retainer is being held in an escrow account, and as of the date of this Application, the Retainer balance was $2,500,000.  Pursuant to the Initial Retention Order, the Retainer is an evergreen Retainer.  Skadden has not shared or agreed to share compensation received in connection with its representation of the Debtors with any other person or entity, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing of compensation among Skadden's partners.

22.     The Debtors understand that Skadden will apply to the Court for allowance of compensation and reimbursement of expenses for all professional services performed and expenses incurred after the Petition Date in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.  The Debtors also understand that Skadden will also seek compensation for all time and expenses associated with its retention as a professional under Bankruptcy Code Section 327(e), including the preparation of this Supplemental Application, the Third Supplemental Fitzgerald Declaration and related documents, as well as any monthly fee statements and/or interim and final fee applications.

## No Duplication of Services

23.     Due to Skadden's limited role in advising with respect to a potential transaction as well as discreet corporate matters that arise out of the Services Skadden is providing, the Debtors believe and intend that the Services will complement, and not be duplicative of, the services being rendered by any other professional retained in these chapter 11 cases.  Skadden understands that the Debtors have retained and may retain additional professionals during the term of their

engagement and agrees to work cooperatively with such professionals to avoid any duplication of services.

## The Relief Requested Should Be Granted

24. Section 327(e) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ, for a specified special purpose, other than to represent the [debtor in possession] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). Bankruptcy Rule 2014 requires that applications for retention of professionals include, among other things:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

25. In light of the size and complexity of these chapter 11 cases, the Debtors respectfully submit that retaining and employing Skadden for the Supplemental Services described herein and pursuant to the terms of this Application is necessary and in the best interests of the Debtors' estates and all parties in interest in these chapter 11 cases. As set forth herein and in the Fitzgerald Declarations, Skadden has represented the Debtors for approximately 9 years. Skadden has in-depth knowledge of the Debtors' business and the regulatory framework in which the Debtors operate and is intimately familiar with the legal issues and facts involved in the Advice

9

Matters, Governmental Investigation Matters, and the Litigation Matters. Skadden is now being asked to advise the Debtors with respect to a potential transaction and certain additional corporate and regulatory advice matters and is particularly suited for that purpose given its extensive professional expertise and particular experience with the Debtors. Substituting counsel would result in a substantial expense for the estate.

26. The Supplemental Services will not overlap with the services to be provided by the Debtors' other professionals. Rather, the Services will complement the services to be provided by the Debtors' general bankruptcy counsel, Davis Polk & Wardwell LLP.

27. Skadden has also represented to the Debtors that it neither holds nor represents any interest that is materially adverse to the Debtors' estates in connection with any matter for which it will be employed.

### *Nunc Pro Tunc* Relief is Warranted

28. As soon as the Debtors determined to explore a potential transaction, the Debtors requested that Skadden begin providing the Supplemental Services. In light of the anticipated timing of a potential transaction, Skadden began providing the Supplemental Services in advance of approval of this Supplemental Application. The Debtors believe that the employment of Skadden effective *nunc pro tunc* to March 6, 2020[5] is warranted under the circumstances. Further, the Debtors believe that no party-in-interest will be prejudiced by the granting of the *nunc pro tunc*

---

[5] Skadden began providing advice on certain corporate and regulatory matters on March 6, 2020. Skadden began providing advice in connection with a potential transaction on or around April 16, 2020.

10

employment because Skadden has provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

### Notice

29. Notice of this Application will be provided to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

30. A copy of this Application and any order approving it will also be made available on the Debtors' Case Information Website located at https://restructuring.primeclerk.com/purduepharma. Based on the circumstances surrounding this Application and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

31. The Debtors have not previously sought the relief requested herein from the Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request entry of the Proposed Order and such other and further relief as is just.

Dated:  July 10, 2020

**PURDUE PHARMA L.P.**
(for itself and on behalf of its affiliates that are debtors and debtors in possession)

*/s/ Marc L. Kesselman*
Marc L. Kesselman
Executive Vice President, General Counsel and Corporate Secretary
Purdue Pharma L.P.