## Exhibit B

**Third Supplemental Fitzgerald Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors. [8] | (Jointly Administered) |

### THIRD SUPPLEMENTAL DECLARATION OF PATRICK FITZGERALD IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN AND EMPLOY SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO MARCH 6, 2020

I, Patrick Fitzgerald, declare:

1.      I am a partner in the law firm of Skadden, Arps, Slate, Meagher & Flom LLP (together with its affiliates, "**Skadden**" or the "**Firm**"), proposed special counsel to the above-captioned debtors (the "**Debtors**") in the above-captioned bankruptcy cases, which maintains an office for the practice of law at, among other places, 155 N. Wacker Drive, Chicago, Illinois 60606.

2.      I am a practicing member in good standing of the bars of the States of Illinois and New York.  I am admitted to practice before the United States Supreme Court, the United States District Courts for the Southern and Eastern Districts of New York, the Northern

---

[8] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

District of Illinois, the Northern District of Indiana, and the Eastern District of Wisconsin, as well as the United States Court of Appeals for the Second Circuit.

3.     I submit this third supplemental declaration (this "**Third Supplemental Declaration**") in support of the Debtors' *Application of Debtors for Authority to Supplement Retention and Employment of Skadden, Arps, Slate, Meagher & Flom LLP As Special Counsel to the Debtors Nunc Pro Tunc to March 6, 2020* (the "**Supplemental Application**").[9]  I am over the age of 18, competent to testify, and authorized to submit this Third Supplemental Declaration on behalf of the Debtors.  The facts set forth below are based either upon my personal knowledge, discussions with other partners, counsel and associates of Skadden, and client/matter records of Skadden reviewed by myself or by associates of Skadden acting under the supervision and direction of Skadden partners working with me on this task, and if called as a witness I would testify competently thereto.

## SCOPE OF SKADDEN'S SERVICES

4.     In connection with the Initial Retention Application, the Debtors retained Skadden to represent PPLP in (a) providing regulatory and compliance advice (collectively, the "**Advice Matters**"), (b) certain civil and criminal investigations initiated by state attorneys general and state agencies and the Department of Justice (the "**DOJ**") and certain other United States agencies (collectively, the "**Governmental Investigation Matters**"),   and (c) certain civil litigation (collectively, the "**Litigation Matters**"), including approximately 51 cases filed in Texas state courts, most of which have been consolidated into a Texas state multi-district litigation (the "**Texas Litigation**"), and to provide the services described in the Initial Retention Application related thereto (the "**Initial Retention Services**").

---

[9]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

5.    The Debtors seek to expand the scope of Skadden's employment and retention to allow Skadden to advise the Debtors in connection with a potential transaction (the "**Transaction Matters**"), as well as certain corporate and regulatory matters that arise in connection with the Advice Matters, Governmental Investigation Matters, Litigation Matters, and Transaction Matters (the "**Corporate Matters**").  A copy of the engagement letters with respect to the Corporate Matters and Transaction Matters are attached as **Exhibit 1-A through 1-C**.  In connection with advising the Debtors regarding the Transaction Matters and Corporate Matters, Skadden will provide services normally and reasonably associated with these types of engagements (the "**Supplemental Services**" and together with the Initial Retention Services, the "**Services**").  In connection with the Transaction Matter, Supplemental Services will include advice relating to the following: structuring the potential transaction; assisting with organizing due diligence and responding to inquiries from potential transaction counterparties; drafting and negotiating definitive documentation; and preparing for and assisting the Debtors in consummating the potential transaction, with advice covering, inter alia, corporate, regulatory, intellectual property, tax, environmental, and real estate matters.

6.    As a result of representing PPLP and certain subsidiaries in connection with the Initial Retention Services, Skadden's professionals have acquired extensive knowledge of the facts and history of the Debtors' business and the various legal issues involved in the Advice Matters, Governmental Investigation Matters, and the Litigation Matters.  I believe that advising the Debtors in connection with the Transaction Matters and the Corporate Matters requires a comprehensive understanding of the Debtors' regulatory and compliance issues, the pending governmental investigations, and the Debtors' pending litigation matters, as these are issues that the Debtors will have to navigate in executing a transaction.  Given Skadden's longstanding

familiarity with the foregoing, I believe that expanding the scope of Skadden's retention to advise the Debtors in connection with the Transaction Matters will promote the efficient administration of the chapter 11 cases. If the Debtors were required to retain different counsel to provide the Supplemental Services, such new counsel would need to get up to speed on the matters over which Skadden already has extensive knowledge, which would require the Debtors to expend unnecessary resources.

**7.**    I believe that Skadden is well-positioned to provide the Supplemental Services throughout the chapter 11 cases. Accordingly, subject to this Court's approval of the Application, Skadden is willing to perform the Supplemental Services as requested by the Debtors, as set forth in the Supplemental Application and in the relevant engagement agreement attached to this Third Supplemental Declaration.

## SKADDEN'S QUALIFICATIONS

8.    Skadden has extensive experience advising health care and pharmaceutical clients worldwide with respect to mergers, acquisitions and divestitures, including in distressed company situations. In addition, Skadden's intellectual property attorneys regularly advise clients in the pharmaceutical industry with respect to a wide variety of intellectual property matters. Additional information regarding Skadden's qualifications are set forth in detail in the Initial Retention Application.

9.    Skadden has assembled a highly qualified team of professionals to provide the Supplemental Services described above for the Debtors. Maya P. Florence, Marie L. Gibson, and Resa K. Schlossberg will be leading the Firm's representation of the Debtors in the Transaction Matters. Ms. Florence is a partner in Skadden's Litigation and Health Care and Life Sciences practices. Ms. Gibson is a partner in the Firm's Corporate, Mergers and Acquisitions, and Health

Care and Life Sciences practices.  Ms. Schlossberg is a partner in Skadden's Intellectual Property and Technology and Health Care and Life Sciences practices.  Ms. Florence is currently resident in Skadden's Boston office and Ms. Gibson and Ms. Schlossberg are currently resident in Skadden's New York office.  Ms. Florence has represented certain of the Debtors on various matters since approximately 2016.  Ms. Gibson and Ms. Schlossberg began representing the Debtors on various matters in April and May of 2020, respectively.

10.    Due to the firm's experience and knowledge in the areas for which Supplemental Services will be provided, as well as the firm's longstanding relationship with the Debtors, I believe Skadden is well qualified and able to represent the Debtors with respect to the Transaction Matters and Corporate Matters, and that supplementing Skadden's retention would be in the best interests of the Debtors' estates, creditors, and other parties in interest.

## DISINTERESTEDNESS OF PROFESSIONALS

11.    To the best of my knowledge, as set forth below, and consistent with Bankruptcy Code section 327(e), Skadden does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters on which Skadden is to be employed.

12.    Skadden has in the past represented, currently represents, and likely in the future will represent certain parties in interest in these chapter 11 cases (or their affiliates). Skadden has made various disclosures regarding Skadden's representations of certain parties-in-interest in the Fitzgerald Declaration and the Second Supplemental Fitzgerald Declaration.

13.    Except as set forth herein in connection with the legal services Skadden has provided to the Debtors, and except with respect to legal services provided by Skadden to the Debtors for which Skadden has not yet submitted bills to them, Skadden is not a creditor of the Debtors.  Skadden is not an equity security holder or insider of the Debtors.  To the best of my

knowledge, neither Skadden nor any attorney working on any matter for which Skadden seeks to be retained is or was, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtors, or has an interest materially adverse to the interests of the estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

14.    Pursuant to the engagement letters pursuant to which Skadden has provided services to the Debtors, the Debtors waived certain non-disqualifying conflicts and agreed that Skadden may represent other present and future parties on matters other than those for which Skadden had been or then is engaged by the Debtors, whether or not on a basis adverse to the Debtors or any of its present or future affiliates.

## PROFESSIONAL COMPENSATION

15.    Subject to approval by the Court and as set forth in the First Supplemental Fitzgerald Declaration Skadden's billing rates that are effective beginning January 1, 2020 for the Skadden professionals expected to spend significant time on the engagement range from $1,125 to $1,695 for partners, $475 to $1,270 for associates and special counsel, and $240 to $430 for paralegals.[10]

16.    In addition to the hourly billing rates set forth herein, Skadden will continue to charge the Debtors for certain charges and disbursements incurred in the rendition of services. These charges and disbursements include costs for long distance telephone charges, photocopying,

---

[10]    Skadden has agreed to continue to provide a volume discount. Specifically, Skadden agreed to provide a discount of 8% for work that increases to 11% and 14% once fees reach $4 million and $8 million, respectively. These thresholds are calculated on a calendar year basis and re-set annually.

travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.[11]

17.    On April 11, 2019, an initial retainer was paid to Skadden in the amount of $1,500,000, and on June 27, 2019, an additional retainer was paid to Skadden in the amount of $1,000,000 (collectively, the "**Retainer**").  The Retainer is being held in an escrow account, and as of the date of this Application, the Retainer balance was $2,500,000.  Pursuant to the Initial Retention Order, the Retainer is an evergreen Retainer.  Skadden has not shared or agreed to share compensation received in connection with its representation of the Debtors with any other person or entity, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016(b) in respect of sharing of compensation among Skadden's partners.

18.    I believe that the compensation structure and other terms and conditions are reasonable terms and conditions of employment and should be approved.

19.    Other than as set forth above, no arrangement has been proposed between the Debtors and Skadden for compensation to be paid in these cases.

20.    Skadden understands the provisions of sections 327, 328, 330 and 331 of the Bankruptcy Code which require, among other things, Court approval of the Debtors' supplementing the employment of Skadden as special counsel with respect to the Supplemental Services, and all of the legal fees and reimbursement of expenses that Skadden will receive from the Debtors and the Debtors' estates.

21.    The Debtors are seeking to expand the scope of Skadden's employment pursuant to section 327(e) of the Bankruptcy Code.  Skadden intends to apply to this Court for

---

[11]    Charges and disbursements are invoiced pursuant to guidelines set by PPLP, subject to certain modifications. Application of these guidelines generally results in a discount from certain charges and disbursements invoiced pursuant to Skadden's Policy Statement Concerning Charges and Disbursements, which is typically applicable to firm engagements.

allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in the chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders entered in these cases governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.  Skadden will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in these cases at the then current rate charged for such services as described herein, including for the Supplemental Services.  Skadden will also seek compensation for all time and expenses associated with its retention as a professional under Bankruptcy Code Section 327(e), including the preparation of the Supplemental Application, this Third Supplemental Fitzgerald Declaration and related documents, as well as any monthly fee statements and/or interim and final fee applications.

### *NUNC PRO TUNC* RELIEF IS WARRANTED

22.    The Debtors first reached out to Skadden regarding certain corporate matters in March 6, 2020 and requested Skadden begin providing the Supplemental Services with respect to certain of the Corporate Matters.  Accordingly, Skadden promptly began advising the Debtors with respect to certain corporate and regulatory matters in advance of approval of the Supplemental Application.

23.    In addition, the Debtors reached out to Skadden seeking advice regarding a potential transaction.  As soon as the Debtors determined to explore a potential transaction, the Debtors requested that Skadden begin providing the Supplemental Services with respect to the Transaction Matters.  In light of the anticipated timing of a potential transaction, Skadden began providing the Supplemental Services in advance of approval of this Supplemental Application. Skadden has provided, and will continue to provide, these valuable services to the Debtors' estates

in the interim period.  Accordingly, employment of Skadden effective *nunc pro tunc* to March 6,

2020  is warranted under the circumstances.

### STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

24.    The following information is provided in accordance with paragraph D.1 of

the U.S. Trustee Guidelines:

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response:    Yes, we have agreed to provide volume discounts as described in Second Supplemental Fitzgerald Declaration at Docket No. 936.

**Question**:    Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response:    No. All U.S. timekeepers bill based on a standard rate schedule in U.S. dollars.

**Question**:    If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Response:    As disclosed in the Second Supplemental Declaration, Skadden's billing rates increased effective January 1, 2020 to reflect regular, annual rate increases.  However, consistent with its arrangement with the Debtors prior to January 1, 2020, including the 12-month period prior to the Petition Date, Skadden agreed to continue to provide a volume discount.[12]  Skadden's billing rates and volume discounts in effect prior to the January 1, 2020 rate increases are described in the Fitzgerald Declaration appended to the Initial Retention Application. Other than regular, annual, Firm-wide adjustments to its standard rates, Skadden's agreement to set rates as described in the Fitzgerald Declarations, and the retainers Skadden received on April 11 and June 27, 2019, Skadden has not changed its billing rates or material financial terms for the engagement since its representation of the Debtors began.

---

[12]    Specifically, Skadden agreed to provide a discount of 8% for work that increases to 11% and 14% once fees reach $4 million and $8 million, respectively.  These thresholds are calculated on a calendar year basis and re-set annually.

**Question**:  Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Response:  Skadden and the Debtors have discussed Skadden's estimated fees and expenses and staffing related to the Supplemental Services through September 2020.  To the extent these chapter 11 cases impact certain of the matters for which Skadden is providing services, this budget may be amended.  In addition, to the extent these chapter 11 cases extend beyond September 2020, the budget and staffing plan would be amended and extended.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief, and after reasonable inquiry.

Dated: Chicago, Illinois
       July 10, 2020

                      _____ */s/ Patrick Fitzgerald* _____
Patrick Fitzgerald

SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 407-0508
Facsimile: (312) 827-9320
Email: patrick.fitzgerald@skadden.com

## EXHIBIT 1-A

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

500 BOYLSTON STREET

BOSTON, MASSACHUSETTS 02116-3740
———
TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

FIRM/AFFILIATE OFFICES
———
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

CONFIDENTIAL

March 11, 2020

Roxana Aleali
Vice President, Corporate Law
  and Assistant Corporate Secretary
Purdue Pharma L.P.
One Stamford Forum
Stamford, Connecticut  06901-3431

Dear Roxana:

        Thank you for the new engagement.  The Firm really does appreciate when a
client returns to us with additional work.  For our mutual records, this letter will confirm that we
have been retained by Purdue Pharma L.P., its subsidiaries identified on Exhibit A hereto, and
Purdue Pharma Inc. to represent them in connection with providing advice regarding potential
transactions.  The terms of our Engagement Letter of January 7, 2010 (attached hereto) will apply
to our work on this matter, with the exceptions that (1) this matter involves representation of
Purdue Pharma L.P., its subsidiaries identified on Exhibit A, and Purdue Pharma Inc., and (2) we
will charge for our work on this matter using the rates and discounts currently negotiated with
Purdue Pharma L.P.  Unless otherwise agreed, the Engagement will not encompass tax-related
advice.

**Data Protection**

        The Firm uses the information you provide for the provision of legal services to
you and for related purposes, including updating client records, analysis to help the Firm manage
its practice, statutory returns, legal and regulatory compliance and, subject to the Firm's ethical
obligations, other legitimate business purposes.  The Firm's work for you may also involve
providing information to third parties such as expert witnesses and other professional advisers in
order to represent your interests most effectively.  The Firm's use of the information you provide
is subject to your instructions, to the Firm's duty of confidentiality, and to applicable data
protection and data privacy laws and regulations.  If and to the extent that any such law or
regulation, such as the E.U. General Data Protection Regulation ("GDPR"), applies to the
Engagement, the Firm will abide by those applicable laws and regulations in processing personal
data in the course of the Firm's work with you, including putting in place security measures to
protect personal data.  Where the work the Firm does for you involves the processing of personal
data, you acknowledge that, unless the Firm agrees otherwise in particular circumstances, the
Firm processes that personal data as an independent controller, not as a processor on your behalf
nor as a joint controller with you, as those terms are defined in the GDPR, and that you may have
a right of access to the personal data the Firm holds about you where the GDPR applies.  Subject
to the Firm's duties of confidentiality and the provisions of this paragraph, the Firm may transfer

Roxana Aleali
March 11, 2020
Page 2

and process personal data that you disclose to the Firm or information that the Firm generates on the basis of personal data that you disclose to the Firm, including the transfer of such personal data or information to jurisdictions where we have offices, both within and outside the United States, as set forth in the Privacy Statement available on www.skadden.com. The Firm may from time to time send you information which the Firm thinks might be of interest to you. If you do not wish to receive that information, please notify the Firm in writing.

**Prevention of Criminal Facilitation of Tax Evasion**

Many jurisdictions criminalize the evasion of tax and its facilitation. As a condition of the Engagement, you represent to us that you will not request or otherwise have the Firm or any third party involved in the Engagement take any action, or desist from taking any action, in order to facilitate tax evasion.

We recognize that you have the opportunity to obtain services from other firms and are particularly pleased that you've chosen to continue to work with us. Thanks again for your continued confidence in Skadden Arps.

Best regards,

Maya P. Florence

MPF/dak
Enclosure

## EXHIBIT A

Adlon Therapeutics L.P.
Avrio Health L.P.
Button Land L.P.
Greenfield BioVentures L.P.
Imbrium Therapeutics L.P.
Nayatt Cove Lifescience Inc.
Ophir Green Corp.
Paul Land Inc.
Purdue Neuroscience Company
Purdue Pharma Manufacturing L.P.
Purdue Pharma of Puerto Rico
Purdue Pharmaceutical Products L.P.
Purdue Pharmaceuticals L.P.
Purdue Products L.P.
Purdue Transdermal Technologies L.P.
Quidnick Land, L.P.
Rhodes Associates L.P.
Rhodes Pharmaceuticals L.P.
Rhodes Technologies
Seven Seas Hill Corp.
SVC Pharma Inc.
SVC Pharma LP
UDF LP

Copy

133970

### SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

TEL:(202) 371-7000
FAX:(202) 393-5760
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

CONFIDENTIAL

January 7, 2010

Robin Abrams, Esq
Vice President and Associate General Counsel
Purdue Pharma L.P.
1 Stamford Forum
201 Tresser Blvd.
Stamford, CT 06901-3431

Dear Robin:

We are pleased that Purdue Pharma L.P. (the "Company") is considering engaging Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps" or the "Firm") in connection with OxyContin Bottle Tracking Program. Our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

Scope of Engagement

As described to us, the Engagement involves providing counseling and advice relating to various regulatory and enforcement issues, including around the Bottle Tracking Program. The services to be provided by the Firm in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement which the Firm is requested and is able to provide and which are consistent with its ethical obligations.

Engagement Personnel

Jennifer Bragg will be responsible for and actively involved in the Engagement. Additional lawyers, including those in other practice areas, will be added to the Engagement on an as needed basis. Any significant additions to staffing will be discussed with you in advance.

Robin Abrams, Esq.
January 7, 2010
Page 2

### Fees and Expenses

Unless otherwise agreed, our fee will be based on the time involved in the Engagement and our internal time charges. We would be happy to discuss alternative billing arrangements, such as fixed fee or risk-sharing arrangements. Because you previously engaged me at our prior firm, and to facilitate a transition to your engaging me at Skadden, I am willing to set my hourly billing rate at $675, through the end of 2010.

In addition, our billing statements will include charges and disbursements incurred by us in the course of performing legal services. These items will be billed in accordance with our standard practice as described in the enclosed summary, which may be periodically updated.

If a dispute develops about our fees, you may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than one thousand and less than fifty thousand dollars.

### Waivers and Related Matters

The Firm represents a broad base of clients on a variety of legal matters. Accordingly, absent an effective conflicts waiver, conflicts of interest may arise that could adversely affect your ability and the ability of other clients of the Firm to choose the Firm as its counsel and preclude the Firm from representing you or other clients of our Firm in pending or future matters. Given that possibility, we wish to be fair not only to you, but to our other clients as well. Accordingly, this letter will confirm our mutual agreement that the Firm may represent other present or future parties on matters other than those for which it had been or then is engaged by the Company, whether or not on a basis adverse to the Company or any of its affiliates, including in litigation, legal or other proceedings or matters, which are referred to as "Permitted Adverse Representation." In furtherance of this mutual agreement, the Company agrees that it will not for itself or any other party assert the Firm's representation of the Company, either previously, in its then existing representation in the Engagement, or in any other matter in which the Company retains the Firm, as a basis for disqualifying the Firm from representing another party in any Permitted Adverse Representation and agrees that any Permitted Adverse Representation does not constitute a breach of duty. Permitted Adverse Representation would include, without limitation, representing a client over which the Company might be seeking to acquire influence or control, or from which the Company may wish to buy assets, or representing a client regarding its interest at the time in acquiring influence or control over an entity in which the Company then has a similar interest.

Robin Abrams, Esq.
January 7, 2010
Page 3

With respect to parties affiliated with the Company generally, including parties owned by the Company and parties that hold direct or indirect interests in the Company, it is our understanding that the Firm is not being asked to provide, and will not be providing, legal advice to, or establishing an attorney-client relationship with, any such affiliated party or person in their individual capacity and will not be expected to do so unless the Firm has been asked and has specifically agreed to do so. Finally, it is our understanding that if the Firm acts as counsel for any other party as to which the Company then owns completely, directly or indirectly, all of the common stock or similar voting interest (other than directors' qualifying shares, if any), the mutual agreement reflected in this letter, including the waivers, would apply to that party as well.

*    *    *

The provisions of this letter will continue in effect, including if the Firm's representation of the Company was ended at your election (which, of course, the Company would be free to do at any time) or by the Firm (which would be subject to ethical requirements). In addition, the provisions of this Engagement Letter will apply to future engagements of the Firm by the Company unless we mutually agree otherwise.

This agreement shall be governed by and interpreted in accordance with the laws of the State of New York without regard to its conflicts of laws principles.

For purposes of this letter, references to Skadden Arps or the Firm include our affiliated law practice entities.

If this letter is satisfactory, please sign a copy and return it to me. Obviously, if you want to discuss any aspect of this letter further, please call me.

Again, we very much appreciate the opportunity to work with Purdue and look forward to doing so.

With best regards.

Sincerely,

Jennifer L. Bragg

Robin Abrams, Esq.
January 7, 2010
Page 4


PURDUE PHARMA L.P.


By: _____
Robin Abrams, Esq.
Title: Vice President and
Associate General Counsel

Dated: As of January 7, 2010

## EXHIBIT 1-B

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

500 BOYLSTON STREET

BOSTON, MASSACHUSETTS 02116

TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

DIRECT DIAL
(617) 573-4805
DIRECT FAX
(617) 573-4822
EMAIL ADDRESS
MAYA.FLORENCE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
―――
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
―――
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

<u>CONFIDENTIAL</u>

May 15, 2020

Roxana Aleali
Vice President, Corporate Law
  and Assistant Corporate Secretary
Purdue Pharma L.P.
One Stamford Forum
Stamford, Connecticut  06901-3431

Dear Roxana:

Thank you for the new engagement.  The Firm really does appreciate when a client returns to us with additional work.  For our mutual records, this letter will confirm that we have been retained by Purdue Pharma L.P. and its subsidiaries Rhodes Technologies and Rhodes Pharmaceuticals L.P. to represent them in connection with a potential transaction.  The terms of our Engagement Letter of January 7, 2010 (attached hereto) will apply to our work on this matter, with the exceptions that (1) this matter involves representation of Purdue Pharma L.P. as well as its subsidiaries Rhodes Technologies and Rhodes Pharmaceuticals L.P., and (2) we will charge for our work on this matter using the rates and discounts currently negotiated with Purdue Pharma L.P.  Unless otherwise agreed, the Engagement will not encompass tax-related advice.

**Data Protection**

The Firm uses the information you provide for the provision of legal services to you and for related purposes, including updating client records, analysis to help the Firm manage its practice, statutory returns, legal and regulatory compliance and, subject to the Firm's ethical obligations, other legitimate business purposes.  The Firm's work for you may also involve providing information to third parties such as expert witnesses and other professional advisers in order to represent your interests most effectively.  The Firm's use of the information you provide is subject to your instructions, to the Firm's duty of confidentiality, and to applicable data protection and data privacy laws and regulations.  If and to the extent that any such law or regulation, such as the E.U. General Data Protection Regulation ("GDPR"), applies to the Engagement, the Firm will abide by those applicable laws and regulations in processing personal data in the course of the Firm's work with you, including putting in place security measures to protect personal data.  Where the work the Firm does for you involves the processing of personal

Roxana Aleali
May 15, 2020
Page 2

data, you acknowledge that, unless the Firm agrees otherwise in particular circumstances, the Firm processes that personal data as an independent controller, not as a processor on your behalf nor as a joint controller with you, as those terms are defined in the GDPR, and that you may have a right of access to the personal data the Firm holds about you where the GDPR applies. Subject to the Firm's duties of confidentiality and the provisions of this paragraph, the Firm may transfer and process personal data that you disclose to the Firm or information that the Firm generates on the basis of personal data that you disclose to the Firm, including the transfer of such personal data or information to jurisdictions where we have offices, both within and outside the United States, as set forth in the Privacy Statement available on www.skadden.com. The Firm may from time to time send you information which the Firm thinks might be of interest to you. If you do not wish to receive that information, please notify the Firm in writing.

## Prevention of Criminal Facilitation of Tax Evasion

Many jurisdictions criminalize the evasion of tax and its facilitation. As a condition of the Engagement, you represent to us that you will not request or otherwise have the Firm or any third party involved in the Engagement take any action, or desist from taking any action, in order to facilitate tax evasion.

We recognize that you have the opportunity to obtain services from other firms and are particularly pleased that you've chosen to continue to work with us. Thanks again for your continued confidence in Skadden Arps.

Best regards,

Maya P. Florence

MPF/dak
Enclosure

2

## **EXHIBIT 1-C**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 BOYLSTON STREET
BOSTON, MASSACHUSETTS 02116

TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

FIRM/AFFILIATE OFFICES
———
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(617) 573-4805
DIRECT FAX
(617) 573-4822
EMAIL ADDRESS
MAYA.FLORENCE@SKADDEN.COM

<u>CONFIDENTIAL</u>

June 8, 2020

Roxana Aleali
Vice President, Corporate Law
  and Assistant Corporate Secretary
Purdue Pharma L.P.
One Stamford Forum
Stamford, Connecticut  06901-3431

Dear Roxana:

Thank you for the new engagement.  The Firm really does appreciate when a client returns to us with additional work.  For our mutual records, this letter will confirm that we have been retained by Purdue Pharma L.P. and its subsidiaries Rhodes Technologies and Rhodes Pharmaceuticals L.P. to represent them in connection with U.S. Drug Enforcement Administration ("DEA") and Food and Drug Administration ("FDA") regulatory advice.  The terms of our Engagement Letter of January 7, 2010 (attached hereto) will apply to our work on this matter, with the exceptions that (1) this matter involves representation of Purdue Pharma L.P. as well as its subsidiaries Rhodes Technologies and Rhodes Pharmaceuticals L.P., and (2) we will charge for our work on this matter using the rates and discounts currently negotiated with Purdue Pharma L.P.  Unless otherwise agreed, the Engagement will not encompass tax-related advice.

<u>**Data Protection**</u>

The Firm uses the information you provide for the provision of legal services to you and for related purposes, including updating client records, analysis to help the Firm manage its practice, statutory returns, legal and regulatory compliance and, subject to the Firm's ethical obligations, other legitimate business purposes.  The Firm's work for you may also involve providing information to third parties such as expert witnesses and other professional advisers in order to represent your interests most effectively.  The Firm's use of the information you provide is subject to your instructions, to the Firm's duty of confidentiality, and to applicable data protection and data privacy laws and regulations.  If and to the extent that any such law or regulation, such as the E.U. General Data Protection Regulation ("GDPR"), applies to the Engagement, the Firm will abide by those applicable laws and regulations in processing personal data in the course of the Firm's work with you, including putting in place security measures to

Roxana Aleali
June 8, 2020
Page 2

protect personal data.  Where the work the Firm does for you involves the processing of personal data, you acknowledge that, unless the Firm agrees otherwise in particular circumstances, the Firm processes that personal data as an independent controller, not as a processor on your behalf nor as a joint controller with you, as those terms are defined in the GDPR, and that you may have a right of access to the personal data the Firm holds about you where the GDPR applies.  Subject to the Firm's duties of confidentiality and the provisions of this paragraph, the Firm may transfer and process personal data that you disclose to the Firm or information that the Firm generates on the basis of personal data that you disclose to the Firm, including the transfer of such personal data or information to jurisdictions where we have offices, both within and outside the United States, as set forth in the Privacy Statement available on www.skadden.com.  The Firm may from time to time send you information which the Firm thinks might be of interest to you.  If you do not wish to receive that information, please notify the Firm in writing.

**Prevention of Criminal Facilitation of Tax Evasion**

Many jurisdictions criminalize the evasion of tax and its facilitation.  As a condition of the Engagement, you represent to us that you will not request or otherwise have the Firm or any third party involved in the Engagement take any action, or desist from taking any action, in order to facilitate tax evasion.

We recognize that you have the opportunity to obtain services from other firms and are particularly pleased that you've chosen to continue to work with us.  Thanks again for your continued confidence in Skadden Arps.

Best regards,

Maya P. Florence

MPF/dak
Enclosure