**Hearing Date and Time: July 23, 2020, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Date and Time: July 22, 2020, at 12:00 p.m. (prevailing Eastern Time)**

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-23649 (RDD) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**NOTICE OF HEARING ON MOTION OF THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER CLARIFYING THE**
**DEBTORS' OBLIGATIONS WITH REGARD TO POLITICAL CONTRIBUTIONS**

**PLEASE TAKE NOTICE** that on July 10, 2020, the Official Committee of Unsecured

Creditors filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order*

*Clarifying the Debtors' Obligations with Regard to Political Contributions* (the "Motion"). A

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

hearing on the Motion (the "Hearing") will be held on **July 23, 2020** at **2:00 p.m.** (prevailing Eastern Time) before the Honorable Robert D. Drain, United States Bankruptcy Judge, United State Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "Court"), or at such other time as the Court may determine.

PLEASE TAKE FURTHER NOTICE that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("General Order M-543"), the Hearing will be conducted telephonically.[2] Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Court's guidelines for telephonic appearances[3] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Court and served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*, dated November 18, 2019 [ECF No. 498], so as to be received no later than **July 22, 2020** at **12:00 pm** (prevailing Eastern Time) (the "Objection Deadline").

---

[2] A copy of General Order M-543 can be obtained by visiting: http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

[3] The Court's procedures for telephonic appearances are available at: http://www.nysb.uscourts.gov/telephonic-appearances-white-plains.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default; *provided* that objecting parties shall attend the Hearing telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Official Committee may, on or after the Objection Deadline, submit to the Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  New York, New York
       July 10, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  /s/ *Arik Preis*
    Ira S. Dizengoff
    Arik Preis
    Mitchell Hurley
    Sara L. Brauner
    One Bryant Park
    New York, New York 10036
    Tel: (212) 872-1000
    Fax: (212) 872-1002
    idizengoff@akingump.com
    apreis@akingump.com
    mhurley@akingump.com
    sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P.*, et al.

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| PURDUE PHARMA L.P., *et al.*, | : Case No. 19-23649 (RDD) |
| | : |
| Debtors.[1] | : (Jointly Administered) |

----------------------------------------------------------------

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER CLARIFYING THE DEBTORS' OBLIGATIONS WITH REGARD TO POLITICAL CONTRIBUTIONS

The Official Committee of Unsecured Creditors (the "Official Committee") of Purdue

Pharma L.P., *et al.* (collectively, the "Debtors"), by and through its undersigned counsel, hereby

submits this *Motion of the Official Committee of Unsecured Creditors for Entry of an Order*

*Clarifying the Debtors' Obligations with Regard to Political Contributions* (the "Motion") and

respectfully states as follows.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

## PRELIMINARY STATEMENT

1.     This Motion represents a sincere effort by the Official Committee to avoid needless litigation over a straightforward issue that, although some may view as modest in monetary value given the size of the Debtors' estates, could blight the delicate balance of the Chapter 11 Cases. Indeed, the Official Committee urges restraint in respect of the matters raised by this Motion, particularly in light of the actions taken by the Debtors and other parties in the last 24 hours, and asks all parties to remain focused on their common goals in these cases: (i) maximizing value for the benefit of creditors; (ii) reaching a consensual allocation of such value; (iii) compensating those individuals and other parties that have been harmed by the Debtors, the Sacklers and other third parties; and (iv) abating the opioid crisis.

2.     With that prologue, the Official Committee notes that the highly unique and politicized nature of these cases has been apparent since the Petition Date,[2] when the Debtors announced the terms of a proposed settlement (the "Settlement Framework"),[3] which was supported by approximately half of the States in this country[4] and staunchly opposed by the other half.[5]  In fact, immediately upon the commencement of these cases, members of the Consenting

---

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to such terms elsewhere in this Motion.

[3] The terms of the Settlement Framework are described in the *Notice of Filing of Term Sheet with Ad Hoc Committee* [ECF No. 257].

[4] The interests of the States that support the Settlement Framework are represented by the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "Consenting Ad Hoc Committee"), which comprises the following members: Florida, Georgia, Louisiana, Michigan, Mississippi, New Mexico, Ohio, Tennessee, Texas, Utah, Paul J. Hanly, Jr., Joseph F. Rice and Paul T. Farrell, Jr., as co-lead counsel on behalf of the Court-appointed Plaintiffs' Executive Committee in *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No.2804, Broward County, the City of Chicago, Huntington/Cabell County, King County, Muscogee (Creek) Nation, City of Philadelphia, and Santa Clara County.  *See Verified Statement Pursuant to Bankruptcy Rule 2019*, dated October 10, 2019 [ECF No. 279].

[5] The interests of the States that do not support the Settlement Framework are represented by the Ad Hoc Group of Non-Consenting States (the "Non-Consenting States"), which comprises the following members: California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Nevada, North Carolina, Oregon, Pennsylvania,

Ad Hoc Committee issued press releases lauding the Settlement Framework as a significant step forward in the fight against the opioid crisis,[6] while representatives of the Non-Consenting States called the Settlement Framework a "slap in the face" and promised their constituents that they would continue to pursue Purdue and the Sacklers to secure justice for victims of the opioid crisis.[7] The Debtors have not formally committed to the Settlement Framework, but they have made clear that they intend to use the bankruptcy process to build support for this prepetition proposal (while continuing to investigate it) and have taken steps to advance their vision of the future of Purdue as a public benefit company.  There can be no dispute that support from the States (or lack thereof)— along with support from the Debtors' other creditors—will be among many factors relevant to determining whether the Settlement Framework comes to fruition.

---

Rhode Island, Vermont, Virginia, Washington, and Wisconsin.  *See Verified Statement of the Ad Hoc Group of Non-Consenting States Pursuant to Bankruptcy Rule 2019*, dated October 11, 2019 [ECF No. 296].

[6] *See, e.g., Purdue Pharma Files for Bankruptcy, Consistent with Settlement Framework*, ATTORNEY GENERAL SEAN D. REYES, UTAH OFFICE OF THE ATTORNEY GENERAL (Sept. 16, 2019), https://attorneygeneral.utah.gov/purdue-pharma-files-for-bankruptcy/ ("Purdue was morally bankrupt and now it is legally so . . . Although there is no dollar amount that will undo the pain and suffering so many families have endured, I'm focused on getting resources to Utahns as quickly as possible . . . I'm pleased to serve as one of nine attorneys general on the ad hoc committee to represent the interests of the states in this proceeding."); *Statement from Tennessee Attorney General Herbert H. Slatery III regarding settlement framework with Opioid maker Purdue Pharma* (Sept. 11, 2019, 1:33 P.M.), *available at* tn.gov/attorneygeneral/news/2019/9/11/pr19-opioids-statement.html ("For several years Tennessee has been one of the leaders in the multi-state investigation into opioid manufacturers and distributors and today, along with a bipartisan group of 27 attorneys general, agreed to a framework to resolve claims against Purdue Pharma and the Sackler family for their role in fueling the opioid crisis . . . This is the most significant step to date in a multi-year investigation and negotiation to obtain meaningful relief to address the opioid addiction crisis.").

[7] *See, e.g.,* Catherine Thorbecke, *State attorneys general call Purdue Pharma settlement a 'slap in the face' for victims of opioid crisis,* ABC NEWS, (Sept. 11, 2019, 5:23 P.M.), https://abcnews.go.com/Business/state-attorneys-general-call-purdue-pharma-settlement-slap/story?id=65546325 (Pennsylvania Attorney General Josh Shapiro: "This apparent settlement is a slap in the face to everyone who has had to bury a loved one due to this family's destruction and greed. It allows the Sackler family to walk away billionaires and admit no wrongdoing . . . I won't let them get away with the harm they inflicted on our Commonwealth. This is far from over."); *id.* (New York Attorney General Letitia James: "While our country continues to recover from the carnage left by the Sacklers' greed, this family is now attempting to evade responsibility and lowball the millions of victims of the opioid crisis.  A deal that doesn't account for the depth of pain and destruction caused by Purdue and the Sacklers is an insult, plain and simple. As attorney general, I will continue to seek justice for victims and fight to hold bad actors accountable, no matter how powerful they may be.").

3.      Against this complex and politically charged backdrop, the Official Committee learned for the first time three days ago (though an exposé piece in *The Intercept*)[8] that the Debtors have made several political contributions **since the Petition Date.**    These contributions (collectively, the "Political Contributions") are set forth below.[9]

| Date | Organization | Amount |
|------|-------------|--------|
| October 29, 2019 | Republican Attorneys General Association | $60,000 |
| December 12, 2019 | Democratic Attorneys General Association | $25,000 |
| January 23, 2020 | Republican Governors Association | $50,000 |
| January 30, 2020 | Democratic Governors Association | $50,000 |

4.      The Official Committee acknowledges that the question of whether the Debtors' conduct constitutes use of estate property outside the ordinary course of business under Bankruptcy Code section 363(b) is litigable and highly fact-intensive, and that any potential victory is likely to be Pyrrhic at best.  Accordingly, the Official Committee has determined not to seek relief against the Debtors on the basis that they declined to (i) seek Court authorization prior to making the Political Contributions or (ii) disclose such payments to the Official Committee (or, upon information and belief, any other creditor constituency).

5.      The Official Committee also recognizes that the magnitude of the Political Contributions may be small in comparison to the size of other donations that these associations receive, and that the following factors may support the Debtors' belief that they were not required to disclose or otherwise seek Court authorization prior to making these donations:

---

[8] *See* Matthew Cunningham-Cook, *Purdue Pharma Made Political Contributions After Going Bankruptcy* (July 7, 2020, 12:30 P.M. ET), THE INTERCEPT, available at https://theintercept.com/2020/07/07/purdue-pharma-bankrupt-donations/.

[9] Immediately upon learning of these purported donations, counsel to the Official Committee sought to confirm such allegations and was able to do so through Political MoneyLine. *See* Political MoneyLine, *http://www.politicalmoneyline.com/tr/tr_MG_IndivDonor.aspx?&MP=1&sText=purdue%20pharma&sCycle=2020* (last visited July 10, 2020).  The Official Committee notes that the October 29, 2019 contribution to RAGA set forth in the chart above is not reflected in Political MoneyLine, but was brought to the attention of counsel to the Official Committee voluntarily by counsel to the Debtors, as discussed in further detail herein.

- Historically (and prior to the commencement of the Chapter 11 Cases), the Debtors made political contributions of approximately this magnitude. Attached hereto as **Exhibit A** is a list of all publicly disclosed political contributions made to the organizations listed therein by the Debtors from 2016 through the Petition Date.

- Upon information and belief, the Debtors may contend that expenditures of this nature are an important part of operating their business, and that such expenditures are therefore necessary to maximize estate value.

- The Debtors previously operated a political action committee (the "PAC"). The PAC was effectively dissolved and all monies donated to nonprofit organizations prior to the Petition Date, with the final formal steps in dissolution completed on September 16, 2019.

- In late 2018, the Debtors ceased making all direct contributions to political candidates.

- Prior to and since commencing the Chapter 11 Cases, the Debtors' Governmental Affairs Department has reduced its personnel by 55 percent.

- A monitor has been appointed in the Chapter 11 Cases to oversee the Debtors' compliance with the voluntary injunction (the "Voluntary Injunction") governing their operations during this period (including certain restrictions on lobbying activities). *See Tenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, Appendix 1 ¶ D, *Purdue Pharma L.P. v. Mass.*, Adv. Pro Case No. 19-08289 [ECF No. 185].

Notwithstanding these facts, however, there can be no dispute that the circumstances of these cases are uniquely political. As such, the Official Committee is surprised by the postpetition actions of both the Debtors and the organizations that accepted the Political Contributions (but encouraged to see that certain of these actions have been remedied, as set forth in more detail below).

6.      With regard to the former, the Official Committee is concerned by the Debtors' apparent assumption that the Political Contributions—even if not made in contravention of the Debtors' legal obligations—were not worthy of disclosure to creditors or this Court. Indeed, the Official Committee submits that the prudent action, in order to ensure that all parties in interest maintain confidence in the good faith of all participants, would have been for the Debtors to

disclose these payments and seek Court approval before making them.[10]  Moreover, as a result of

the Debtors' apparent determination that they were not required to disclose the Political

Contributions, neither creditors nor this Court have any insight, into whether—and to what

extent—the Debtors may seek to make additional similar contributions in the future, subject to the

Debtors' agreed modifications discussed below.

7.      With regard to the recipients of the Political Contributions—and to avoid any

appearance of impropriety and ensure confidence in this bankruptcy process—the Official

Committee urges these organizations to return such amounts to the Debtors' estates, to the extent

they have not done so already (as noted below).[11]  For the avoidance of any doubt, the Official

Committee is not invoking this Court's jurisdiction in aid of an order *forcing* the recipients to

return this money, and has little appetite to commence an adversary proceeding to claw back

$185,000.00 (or whatever amounts remain unreturned).[12]  Rather, the Official Committee appeals

to the conscience of the recipients and sincerely hopes that they will work to rectify this situation.[13]

8.      Importantly, since the Official Committee brought the Political Contributions to the

attention of the Debtors, the Consenting Ad Hoc Committee and the Non-Consenting States, the

the following has occurred: (i) the Democratic Attorney Generals Association has returned the

$25,000 Political Contribution it received from the Debtors in December 2019[14]; and (ii) the

---

[10] The Court and counsel to the parties in interest are no doubt familiar with the concept of a "comfort order," or an order clarifying an entity's authority to perform an act that it believes it is already authorized to perform.  It is not uncommon for debtors to seek such orders with respect to acts that are likely, but not certainly, authorized under Bankruptcy Code section 363(c).

[11] The Official Committee is somewhat surprised that that these organizations did not simply return the Political Contributions upon receipt (or at any point over the last six months).

[12] *See* Transcript of May 1, 2020 Hearing at 48:16–19 (the Court expressing concern that the Chapter 11 Cases will reach a point where, "when you measure the cost versus the benefit, it's getting ridiculous").

[13] On Thursday, July 9, the Official Committee articulated this request to the Non-Consenting States and the Consenting Ad Hoc Committee, including discussing this matter directly with certain members of such groups.

[14] Attached hereto as **Exhibit F** is correspondence from counsel to the Democratic Attorneys General Association to counsel to the Official Committee, dated July 10, 2020, confirming that such check has been mailed.

Debtors have requested that the Republican Attorney Generals Association return the $60,000 Political Contribution it received in October 2019, and counsel to the Debtors has represented to counsel to the Official Committee that the Republican Attorneys General Association has agreed to do so.[15]

## RELIEF REQUESTED

9.      The Official Committee respectfully requests entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit G**, providing that, subject to certain exceptions, the Debtors shall not make any future direct or indirect transfers of an interest in property to or for the benefit of a political campaign, or to an organization that routinely forwards money to political campaigns or the holders of public offices, including, without limitation, those akin to the Political Contributions (collectively, the "Future Political Contributions"), absent the filing of a motion on notice to all parties in interest and the express authorization of the Court.[16] For the avoidance of doubt, the Official Committee does not want compliance with the Proposed Order to become an unnecessary strain on estate resources.  As such, prior to filing this Motion, counsel to the Official Committee began discussions with counsel to the Debtors in an effort to ensure that the relief requested by this Motion does not unnecessarily capture contributions below a certain dollar threshold (both individually and in the aggregate), made to non-political organizations or otherwise of a nature that do not raise concerns in the context of the Chapter 11 Cases.  The Official Committee is optimistic that it will reach agreement with the Debtors on these

---

[15] According to the Debtors, on their own initiative, they also have reached out to at least one other organization, the Conference of Western Attorneys General, to ask for the return of a $15,000 donation made during the postpetition period.

[16] In addition, the Official Committee submits it may be appropriate for the Debtors to amend the Voluntary Injunction pursuant to which they agreed to abstain from, *inter alia*, promoting opioid products and providing financial support to third parties for the purpose of promoting opioids or opioid products.  Specifically, the Voluntary Injunction includes certain provisions relating to lobbying, which could be amended to include making political contributions such as those described herein.  *See* Voluntary Injunciton § II.D.

7

issues in advance of the hearing on this Motion and, upon such consensus, will file or submit a revised Proposed Order.

## JURISDICTION AND VENUE

10.    The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee consents to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

11.    Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

12.    On September 15, 2019 (the "Petition Date"), the Debtors commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United State Code (the "Bankruptcy Code").

13.    On October 29, 2019, the Debtors made a $60,000 contribution to the Republican Attorney General Association ("RAGA").  According to its website, RAGA is "the only national organization whose mission is electing Republicans to the Office of State Attorney General." *About – RAGA*, REPUBLICAN ATTORNEYS GENERAL ASSOCIATION, available at https://republicanags.com/about/ (last visited July 10, 2020).[17]

---

[17] Attached hereto as **Exhibit B** is a list of the States with attorneys general who are members of RAGA.

8

14.    On December 2, 2019, the Debtors made a $25,000 contribution to the Democratic

Attorneys General Association ("DAGA").    According to its website, DAGA is "the only

committee solely dedicated to electing and supporting Democratic state Attorneys General." *About

DAGA*, DEMOCRATIC ATTORNEY GENERAL ASSOCIATION, available at https://dems.ag/about/ (last

visited July 10, 2020).[18]

15.    On January 23, 2020, the Debtors made a $50,000 contribution to the Republican

Governors Association ("RGA").    According to its website, the Republican Governors Association

"is dedicated to one primary objective: electing and supporting Republican governors."    *About*,

RGA: REPUBLICAN GOVERNORS ASSOCIATION, available at https://www.rga.org/about/ (last visited

July 10, 2020).[19]

16.    On January 30, 2020, the Debtors made a $50,000 contribution to the Democratic

Governors Association ("DGA").    According to its website, the Democratic Governors Association

is "the only organization dedicated to electing Democratic governors and candidates, from

providing resources to fund operations to helping articulate and deliver their messages."    *About

Us:    The    Democratic    Governors    Association*,    DGA,    available    at

https://democraticgovernors.org/about/ (last visited July 10, 2020).[20]

17.    The Debtors did not consult with the Official Committee prior to making the

Political Contributions, nor did the Debtors inform the Official Committee or otherwise disclose

that such contributions had been made.[21]

---

[18] Attached hereto as **Exhibit C** is a list of the States with attorneys general who are members of DAGA.

[19] Attached hereto as **Exhibit D** is a list of the States with governors who are members of RGA.

[20] Attached hereto as **Exhibit E** is a list of States with governors who are members of DGA.

[21] As far as the Official Committee is aware, information regarding the Political Contributions was not easily ascertainable from the Debtors' monthly operating reports or other reporting provided to the Official Committee's advisors.

18.     The Official Committee became aware of the Political Contributions on Tuesday, July 7, 2020.  The next day, counsel to the Official Committee discussed its concerns in respect of the Political Contributions with counsel to the Debtors.  Thereafter, on Thursday, July 9, counsel to the Official Committee discussed this matter with counsel to the Non-Consenting States and counsel to the Consenting Ad Hoc Committee.

19.     On Friday, July 10, counsel to the Official Committee discussed the Political Contributions with Secretary Vilsack, the independent monitor appointed in the Chapter 11 Cases.

20.     Also on July 10, counsel to the Official Committee had subsequent conversations with counsel to the Debtors regarding the Political Contributions.  During these discussions, counsel to the Debtors indicated that the Debtors had reached out to DAGA and RAGA to request that the Political Contributions made in October and December 2019, respectively, be returned to the Debtors' estates.  Counsel to the Debtors also confirmed that they would make no further contributions to either DAGA or RAGA during the pendency of the Chapter 11 Cases.  Finally, in addition to alerting counsel to the Official Committee of the October 29, 2019 RAGA Political Contribution, counsel to the Debtors indicated that an additional contribution that did not appear in publically available information had also been made following the Petition Date, and that the Debtors have requested that such funds be returned.[22]

21.     Thereafter, counsel to the Official Committee spoke with counsel to DAGA, who confirmed that DAGA had determined to return the Political Contribution received from the Debtors in December 2019, as set forth in Exhibit F hereto.  Counsel to the Debtors has also

---

[22] Counsel to the Debtors indicated that on December 19, 2019 the Debtors made a $15,000 contribution to the Conference of Western Attorneys General.

represented to counsel to the Official Committee that RAGA has agreed to return the October 29, 2019 Political Contribution.

## BASIS FOR RELIEF REQUESTED

22.     As the Debtors are aware, any use of estate property outside the ordinary course of business requires ***prior*** court authorization.  11 U.S.C. § 363(b)(1); *see also Motion of Debtors for Authorization to Enter into Funding Agreement* [ECF No. 1005] ¶ 21; *Debtors' Motion for Authorization to Enter into Supply Agreement* [ECF No. 879] ¶ 12; *Debtors' Motion for Authorization to Enter into Development Agreement* [ECF No. 826] ¶ 18.  This requirement allows "creditors, who have a vital interest in maximizing realization from assets of the estate, . . . an opportunity to review the terms of [a] proposed transaction and to object if they deem the terms and conditions are not in their best interest."  *In re Crystal Apparel*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998).

23.     Typically, a transaction is within the "ordinary course of business" if and only if it satisfies both a horizontal test (whether the transaction is of a sort that businesses in the debtor's industry engage in routinely) and a vertical test (whether the transaction is of a sort that a creditor would have expected when extending credit to the debtor).  *In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997).  But these cases are far from typical, and these tests "are intended to be both expansive and flexible" to mold to unique facts and circumstances.  *In re Enron Corp.*, 2003 WL 1562202, at *16 (Bankr. S.D.N.Y. Mar. 21, 2003).

24.     With respect to the vertical test, the Official Committee recognizes, as noted above, that the Political Contributions are consistent in amount and frequency with the Debtors' prepetition donations to these organizations.  Even if, however, it were the Debtors' prepetition practice to contribute generously to these political associations (or even directly to political

11

campaigns), the appearance of impropriety here simply is too difficult an issue to ignore.  *See In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 335 (Bankr. E.D. Pa. 1982) ("the avoidance of a real appearance of impropriety is of chief concern to a court of bankruptcy . . . it is not sufficient that the trustee and his counsel actually be disinterested; ***the appearance of [interestedness] must also be avoided***.") (quoting *In re Perry, Adams & Lewis Securities, Inc.*, 5 B.R. 63, 64 (Bankr. W.D. Mo. 1980)) (emphasis added).  Therefore, in light of the circumstances of these cases, there is at least an open question as to whether such transfers of estate property to political organizations should be considered within the ordinary course of business or whether prudence would dictate that they be submitted to the Court to exercise its own sound business judgment.  *See In re The Great Atl. & Pac. Tea Co., Inc.*, 544 B.R. 43, 48 (Bankr. S.D.N.Y. 2016).  Moreover, the vertical test, by its very nature, contemplates financial creditors who voluntarily extend credit to an obligor with expectations of particular business practices engaged in historically by the debtor or other industry participants.  The Debtors' creditors, by contrast, are almost entirely ***involuntary*** creditors who did not have the opportunity to engage professionals and conduct extensive diligence before being harmed by the Debtors' products.  The Official Committee raises these points not to debate the propriety of the Political Contributions, but to highlight the complexity of the issues raised thereby.

25.     The Political Contributions—$185,000 in donations to associations whose members include the very public servants with whom the Debtors are attempting to negotiate a consensual resolution of these cases—are ***precisely*** the sort of transaction that demand close scrutiny.  These donations may present troubling potential conflicts of interests—on both the donor and recipient sides—when viewed through the unique lens of these cases.  The resulting

appearance of impropriety (irrespective of whether such impropriety exists) militates strongly in favor of the relief requested by this Motion.[23]

26.      In view of the foregoing, the Official Committee respectfully requests that the Court enter an order prohibiting the Debtors from making any Future Political Contributions (subject to certain exceptions, as noted above) absent express authorization of the Court.

27.      With regard to the recipients of the Political Contributions, the Official Committee again notes its disbelief that these organizations did not return such amounts immediately upon receipt in light of the stark appearance of impropriety.  The Official Committee is pleased that certain of the Political Contributions have been returned to the Debtors' estates, but would strongly urge the recipients of the remaining Political Contributions—each of which has been served with notice of this Motion—to return the funds to the Debtors' estates for the benefit of all creditors.

---

[23] The Official Committee would further note that the Political Contributions were made during the time that the Debtors and their key creditor constituencies—including the Official Committee, the Consenting Ad Hoc Committee and the Non-Consenting States—were engaged in ongoing (and contentious) discussions regarding the use of estate resources to establish an emergency relief fund to benefit severely underfunded organizations on the front lines of the opioid crisis.

## **CONCLUSION**

28.     It is essential to the success of the Chapter 11 Cases that all parties have confidence in the good faith of all parties involved in this process.  Accordingly, and for the foregoing reasons, the Official Committee respectfully requests that the Court enter the Proposed Order clarifying the Debtors' obligation with regard to any Future Political Contributions.

Dated:  New York, New York
        July 10, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  /s/ *Arik Preis*
     Ira S. Dizengoff
     Arik Preis
     Mitchell Hurley
     Sara L. Brauner
     One Bryant Park
     New York, New York 10036
     Tel: (212) 872-1000
     Fax: (212) 872-1002
     idizengoff@akingump.com
     apreis@akingump.com
     mhurley@akingump.com
     sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al.

## EXHIBIT A

**Publicly Disclosed Political Contributions by the Debtors
from 2016 through the Petition Date**

**Political Contributions by the Debtors from 2016 through the Petition Date**[24]

| Date | Recipient | Amount |
|---|---|---|
| December 10, 2018 | Democratic Attorneys General Association | $25,000 |
| October 15, 2018 | Republican Attorneys General Association | $10,000 |
| October 11, 2018 | Democratic Governors Association | $50,000 |
| October 11, 2018 | Republican Attorneys General Association | $50,000 |
| October 10, 2018 | Republican Governors Association | $25,000 |
| October 10, 2018 | Republican Governors Association | $25,000 |
| August 13, 2018 | Republican State Leadership Committee | $25,000 |
| May 21, 2018 | Democratic Governors Association | $25,000 |
| May 3, 2018 | Democratic Governors Association | $25,000 |
| December 29, 2017 | Democratic Attorneys General Association | $25,000 |
| December 14, 2017 | Republican Attorneys General Association | $65,000 |
| December 8, 2017 | Republican Governors Association | $25,000 |
| November 9, 2017 | Democratic Governors Association | $10,000 |
| May 25, 2017 | Democratic Attorneys General Association | $25,000 |
| May 24, 2017 | Democratic Attorneys General Association | $25,000 |
| January 24, 2017 | Democratic Governors Association | $25,000 |
| November 3, 2016 | Democratic Attorneys General Association | $25,000 |
| October 31, 2016 | Republican Attorneys General Association | $65,000 |
| October 6, 2016 | Republican Governors Association | $25,000 |
| August 30, 2016 | Republican Governors Association | $2,500 |
| August 18, 2016 | Republican Attorneys General Association | $200,000 |
| June 6, 2016 | Democratic Governors Association | $50,000 |
| June 6, 2016 | Democratic Governors Association | $50,000 |
| April 25, 2016 | Republican State Leadership Committee | $5,000 |
| January 28, 2016 | Republican Governors Association | $25,000 |
| January 21, 2016 | Republican State Leadership Committee | $25,000 |
| January 19, 2016 | Republican Attorneys General Association | $25,000 |

---

[24]   The information contained in the below chart is available at Political MoneyLine, *http://www.politicalmoneyline.com/tr/tr_MG_IndivDonor.aspx?&sMP=1&sText=purdue%20pharma&sCycle=202 0* (last visited July 10, 2020).

## EXHIBIT B

**List of States with Attorneys General Who Are Members of RAGA**

**List of States with Attorneys General Who Are Members of RAGA**[25]

1. Alabama
2. Alaska
3. Arizona
4. Arkansas
5. Florida
6. Georgia
7. Idaho
8. Indiana
9. Kansas
10. Kentucky
11. Louisiana
12. Mississippi
13. Missouri
14. Montana
15. Nebraska
16. New Hampshire
17. North Dakota
18. Ohio
19. Oklahoma
20. South Carolina
21. South Dakota
22. Tennessee
23. Texas
24. Utah
25. West Virginia
26. Wyoming

---

[25] *See Meet the AGs*, REPUBLICAN ATTORNEYS GENERAL ASSOCIATION, available at https://republicanags.com/ags/ (last visited July 10, 2020).

## **EXHIBIT C**

**List of States and Other Political Divisions with Attorneys General
Who Are Members of DAGA**

**List of States and Other Political Divisions with Attorneys General
Who Are Members of DAGA[26]**

1.  California
2.  Colorado
3.  Connecticut
4.  Delaware
5.  District of Columbia
6.  Hawai'i
7.  Illinois
8.  Iowa
9.  Maine
10. Maryland
11. Massachusetts
12. Michigan
13. Minnesota
14. Nevada
15. New Jersey
16. New Mexico
17. New York
18. North Carolina
19. Oregon
20. Pennsylvania
21. Rhode Island
22. Vermont
23. Virginia
24. Washington
25. Wisconsin

---

[26] *See Meet the AGs*, DEMOCRATIC ATTORNEYS GENERAL ASSOCIATION, available at https://dems.ag/meet-the-ags/ (last visited July 10, 2020).

## **EXHIBIT D**

**List of States and Other Political Divisions with Governors Who Are Members of RGA**

## List of States and Other Political Divisions with Governors Who Are Members of RGA[27]

1. Alabama
2. Alaska
3. Arizona
4. Arkansas
5. Florida
6. Georgia
7. Idaho
8. Indiana
9. Iowa
10. Maryland
11. Massachusetts
12. Mississippi
13. Missouri
14. Nevada
15. New Hampshire
16. North Dakota
17. Northern Marianas Islands
18. Ohio
19. Oklahoma
20. Puerto Rico
21. South Carolina
22. South Dakota
23. Tennessee
24. Texas
25. Utah
26. Vermont
27. West Virginia
28. Wyoming

---

[27] *See Governors*, RGA: REPUBLICAN GOVERNORS ASSOCIATION, available at https://www.rga.org/governors/ (last visited July 10, 2020).

## **EXHIBIT E**

**List of States and Other Political Divisions with Governors Who Are Members of DGA**

**List of States and Other Political Divisions with Governors Who Are Members of DGA**[28]

1. American Samoa
2. California
3. Colorado
4. Connecticut
5. Delaware
6. Guam
7. Hawai'i
8. Illinois
9. Kansas
10. Kentucky
11. Louisiana
12. Maine
13. Michigan
14. Minnesota
15. Montana
16. Nevada
17. New Jersey
18. New Mexico
19. New York
20. North Carolina
21. Oregon
22. Pennsylvania
23. Rhode Island
24. U.S. Virgin Islands
25. Virginia
26. Washington
27. Wisconsin

---

[28] *See Meet Our Governors*, DGA, available at https://democraticgovernors.org/governors/ (last visited July 10, 2020).

## **EXHIBIT F**

**Correspondence from Counsel to DAGA to Counsel to the Official Committee Confirming
Return of Political Contribution to the Debtors**

| From: | Berkon, Jonathan (Perkins Coie) |
|---|---|
| To: | Preis, Arik; Hurley, Mitchell; Atkinson, Michael (External); Brauner, Sara |
| Cc: | Gold, David (External) |
| Subject: | DAGA |
| Date: | Friday, July 10, 2020 4:33:37 PM |

**EXTERNAL Email**

We are counsel to the Democratic Attorneys General Association (DAGA). Today, July 10, 2020, DAGA refunded a $25,000 contribution from Purdue Pharma that DAGA had received on December 2, 2019. The refund check was placed in the mail today.

**Jonathan Berkon | Perkins Coie LLP**
PARTNER
700 Thirteenth Street, N.W. Suite 800
Washington, DC 20005-3960
D. +1.202.434.1669
F. +1.202.654.9684
E. JBerkon@perkinscoie.com

**Visit our Covid-19 resource page: www.perkinscoie.com/coronavirus**

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

## **EXHIBIT G**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al*., | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## ORDER CLARIFYING THE DEBTORS' OBLIGATIONS
## WITH REGARD TO POLITICAL CONTRIBUTIONS

Upon the motion (the "Motion") of the Official Committee of Unsecured Creditors (the

"Official Committee") of Purdue Pharma L.P. and its affiliated debtors and debtors in possession

(collectively, the "Debtors"), for an order, pursuant to section 363(b) of title 11 of the United States

Code (the "Bankruptcy Code"), clarifying the Debtors' obligations with regard to political

contributions, and upon all pleadings filed in connection with the Motion, and upon the record of

the hearing held by the Court on the Motion on July 23, 2020, and all objections to the Motion

having been withdrawn or overruled, and the Court having jurisdiction to consider the Motion

pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2) and the *Amended Standing Order of Reference*

*from the United States District Court for the Southern District of New York*, dated January 31, 2012

(Preska, C.J.), and the Court having authority to enter a final order with respect to the Motion

consistent with Article III of the United States Constitution, and after due deliberation and good

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

and sufficient cause appearing therefor; now, therefore, it is **HEREBY ORDERED, ADJUDGED**

**AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      Prior to making any direct or indirect transfer by the Debtors of an interest in

property to or for the benefit of a political campaign, or to an organization that routinely forwards

money to political campaigns or the holders of public offices, [the Debtors shall file a motion

pursuant to Bankruptcy Code section 363(b), on notice to all parties in interest, seeking

authorization to make such contributions.]²


Dated:        July __, 2020
              White Plains, New York


_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

---

² As noted in the Motion, the Official Committee does not want compliance with the Proposed Order to become an unnecessary strain on estate resources.  As such, prior to filing the Motion, counsel to the Official Committee began discussions with counsel to the Debtors in an effort to ensure that the relief requested by this Motion does not unnecessarily capture contributions below a certain dollar threshold (both individually and in the aggregate), made to non-political organization or otherwise of a nature that do not raise concerns in the context of the Chapter 11 Cases.  The Official Committee is optimistic that it will reach agreement with the Debtors on these issues in advance of the hearing on this Motion and, upon such consensus, will file a revised proposed form of this order.

2