DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

New York, New York 10017

Telephone: (212) 450-4000

Facsimile: (212) 701-5800

Marshall S. Huebner

Benjamin S. Kaminetzky

Timothy Graulich

Eli J. Vonnegut

Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**COVER SHEET TO THE SECOND INTERIM APPLICATION OF DAVIS POLK &
WARDWELL LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR THE PERIOD FROM FEBRUARY 1, 2020 THROUGH
MAY 31, 2020**

In accordance with Rule 2016-1 of the Local Rules of Bankruptcy Procedure,

incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in the*

*Southern District of New York Bankruptcy Cases* [General Order M-447], among other

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

guidelines (the "**Local Guidelines**") and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel for the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), submits this summary (this "**Summary**") of fees and expenses sought as actual and necessary in the fee application to which this Summary is attached (the "**Application**") for the period of February 1, 2020 through May 31, 2020 (the "**Fee Period**").

| *General Information* | |
|---|---|
| **Name of Applicant:** | Davis Polk & Wardwell LLP<br><br>Counsel to the Debtors and Debtors in Possession |
| **Authorized to Provide Services to:** | Purdue Pharma L.P., *et al*. |
| **Petition Date:** | September 15, 2019 |
| **Retention Date:** | November 25, 2019 *nunc pro tunc* to September 15, 2019 |
| **Date of Order Approving Retention:** | November 25, 2019 [ECF No. 542] |
| *Summary of Fees and Expenses Requested for the Compensation Period* | |
| **Time Period Covered by This Application:** | February 1, 2020 through May 31, 2020 |
| **Total Compensation Requested:** | $19,433,107.75 |
| **Total Expenses Requested:** | $97,640.46 |
| **Total Compensation and Expenses Requested:** | $19,530,748.21 |

| **Summary of Past Requests for Compensation and Prior Payments** | |
|---|---|
| **Compensation Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $15,546,486.20 |
| **Expenses Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $97,640.46 |
| **Total Compensation and Expenses Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $15,644,126.66 |

| **Summary of Rates and Other Related Information for the Compensation Period** | |
|---|---|
| **Blended Rate in This Application for All Partners, of Counsel, and Associates:** | $1,052.16 |
| **Blended Rate in This Application for All Timekeepers:** | $993.72 |
| **Number of Professionals Included in This Application:** | 125 |
| **Difference Between Fees Budgeted and Compensation Sought for This Period:** | N/A |
| **Number of Professionals Billing Fewer Than 15 Hours During This Period:** | 30 |
| **Increase in Rates Since Date of Retention:** | The compensation period includes a customary annual rate increase for all time keepers which occurred on January 1, 2020, as disclosed on the Court docket at ECF No. 703. |

This is a(n):           ___ monthly           _x_ interim           ___ final application

## Summary of Prior Monthly Fee Statements of Davis Polk & Wardwell LLP

| Period Covered and ECF No. | Total Fees Requested | Total Expenses Requested | Total Fees and Expenses Requested | Fees Paid | Expenses Paid | Total Balance Remaining to be Paid |
|---|---|---|---|---|---|---|
| 2/1/2020 – 2/29/2020 ECF No. 986 | $4,630,411.25 | $28,473.43 | $4,658,884.68 | $3,704,329.00 | $28,473.43 | $926,082.25 |
| 3/1/2020 – 3/31/2020 ECF No. 1129 | $4,760,449.00 | $23,403.09 | $4,783,852.09 | $3,808,359.20 | $23,403.09 | $952,089.80 |
| 4/1/2020 – 4/30/2020 ECF No. 1220 | $4,728,790.00 | $18,345.40 | $4,747,135.40 | $3,783,032.00 | $18,345.40 | $945,758.00 |
| 5/1/2020 – 5/31/2020 ECF No. 1343 | $5,313,457.50 | $27,418.54 | $5,340,876.04 | $4,250,766.00 | $27,418.54 | $1,062,691.50 |

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**SECOND INTERIM APPLICATION OF DAVIS POLK & WARDWELL LLP FOR
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED AS COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION FOR THE PERIOD FROM FEBRUARY 1, 2020
<u>THROUGH MAY 31, 2020</u>**

Pursuant to sections 327, 330, and 331 of chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases* [General Order M-447], among other guidelines (the "**Local Guidelines**"), The United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel for the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), submits this *Second Interim Application for Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from February 1, 2020 Through May 31, 2020* (this "**Application**"). By this Application, Davis Polk seeks allowance of compensation for actual and necessary professional services rendered for the Debtors in the total amount of $19,433,107.75, and for reimbursement of actual, necessary disbursements that Davis Polk incurred in connection with such services in the total amount of $97,640.46, for an aggregate total of $19,530,748.21 during the period of February 1, 2020 through May 31, 2020 (the "**Fee Period**").

## Jurisdiction

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.     On September 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 18, 2019, the Court entered an order [ECF No. 59] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.  On September 27, 2019, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 131].

4.     A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to facilitate effective administration of these chapter 11 cases are set forth in the *Debtors' Informational Brief* [ECF No. 17].

5.     On November 21, 2019, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

6.     On April 8, 2020, the Court entered the *Order Authorizing the Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327* [ECF No. 1023], appointing David M. Klauder as the fee examiner in these cases.

## The Debtors' Retention of Davis Polk

7.     On November 25, 2019, the Court entered the *Order Approving Application of Debtors for Authority to Employ and Retain Davis Polk & Wardwell LLP as Attorneys for the*

*Debtors Nunc Pro Tunc to the Petition Date* [ECF No. 542] (the "**Retention Order**"), authorizing Davis Polk's retention by the Debtors.  The Retention Order attached hereto as **Exhibit B** and incorporated by reference allows the Debtors to compensate and reimburse Davis Polk in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Guidelines, and the Interim Compensation Order.

8.      The Retention Order also authorizes the Debtors to compensate Davis Polk at its hourly rates charged for services of this type and for the firm's actual, necessary expenses incurred in connection such services rendered during the Fee Period.  Among other things, it permits Davis Polk to render the following services:

a.      prepare, on behalf of the Debtors, all necessary or appropriate motions, applications, objections, replies, answers, orders, reports and other papers in connection with the administration of the Debtors' estates;

b.      counsel the Debtors with regard to their rights and obligations as debtors in possession, and their powers and duties in the continued management and operation of their businesses and properties;

c.      provide advice, representation and preparation of necessary documentation and pleadings and taking all necessary or appropriate actions in connection with statutory bankruptcy issues, strategic transactions, asset sale transactions, real estate, intellectual property, employee benefits, tort, commercial and governmental litigation, and corporate and tax matters;

d.      take all necessary or appropriate actions to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved and the preparation of objections to claims filed against the Debtors' estates;

e.      take all necessary or appropriate actions in connection with any chapter 11 plan, all related disclosure statements, all related documents and such further actions as may be required in connection with the administration of the

Debtors' estates; and

f.    act as restructuring counsel for the Debtors and performing all other necessary or appropriate legal services in connection with the chapter 11 cases.

### Compensation Paid and Its Sources

9.      All services during the Fee Period for which compensation is requested by Davis Polk were performed for or on behalf of the Debtors.  Additionally, Davis Polk has not received any payment or promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with matters covered by this Fee Application.   A certification confirming Davis Polk's compliance with the Fee Guidelines is annexed hereto as **Exhibit A**.

10.      To the extent that billable time or disbursement charges for services rendered or expenses incurred relate to the Fee Period, but were not processed prior to the preparation of this Fee Application, Davis Polk reserves the right to request compensation for such services and reimbursement of such expenses in a future fee application.

11.      These professional services were rendered by Davis Polk's partners, counsel, associates and paraprofessionals from its various practice groups, including restructuring, litigation, corporate, intellectual property, executive compensation and benefits, and tax.

### Summary of Professional Compensation and Reimbursement of Expenses Requested

12.      During the Fee Period, Davis Polk's professionals and paraprofessionals expended a total of 19,555.9 hours in connection with providing necessary services.  Davis Polk has been able to efficiently provide services by utilizing the expertise of professionals and paraprofessionals within relevant practice groups to effectively advise the Debtors regarding discrete issues and ensuring that the level of seniority is commensurate with the assignment. Davis Polk, in connection with services rendered on behalf of the Debtors, respectfully requests

allowance of reasonable compensation of such services rendered in the total amount of $19,433,107.75 and reimbursement of actual and necessary expenses incurred in the amount of $97,640.46, for an aggregate total of $19,530.748.21 for the Fee Period.   Annexed hereto as **Exhibit C** is a list of Davis Polk Professionals and paraprofessionals, their position with the firm, the department in which the individual practices, the hourly rate charged for their services, the number of hours worked on this matter, and other pertinent information.  **Exhibit D** annexed hereto is a list of the various categories and the total fees and total hours expended by subject matter category.  Davis Polk maintains computerized, detailed time records of services rendered by its professionals and paraprofessionals.   The detailed records for this Fee Period were appended to Davis Polk's Monthly Fee Statements.  Davis Polk engaged in ongoing discussions with the Debtors regarding budgeting and staffing issues.  Annexed hereto as **Exhibit E** is Davis Polk's staffing plan in connection with services rendered to the Debtors.

## Case Status

13.    Certain of the Debtors have been named in over 2,700 civil actions pending in various state and federal courts and other fora across the United States and its territories (the "**Pending Actions**").   The Debtors commenced these chapter 11 cases to pursue a fair and efficient global resolution of the Pending Actions in order to preserve the value of the Debtors' estates and put that value to work helping address and combat the opioid crisis.  On March 18, 2020, the Court extended the preliminary injunction with respect to the Pending Actions, through October 5, 2020.[2]

---

[2] The Preliminary Injunction was initially entered on October 11, 2019, became final on November 6, 2019, *see* Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion For a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Nov. 6, 2019) [ECF No. 105], and has been subsequently amended. The currently operative preliminary injunction order was entered on May 18, 2020. *See* Tenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. March 4, 2020) [ECF No. 185].

14.     The Debtors have made meaningful progress towards a successful reorganization during the Fee Period.  Among other things, the Debtors procured the agreement of all key stakeholders on a mediation structure and have been engaged in a complex mediation process to address allocation disputes among creditor groups, managed extremely complicated and extensive Rule 2004 discovery issues surrounding numerous diligence requests to and from various constituencies, and executed a successful noticing plan, nearly unprecedented in scope, to ensure that potential claimants will receive adequate notice of the July 30, 2020 bar date.  The Debtors obtained court approval to appoint former Iowa Governor and former United States Secretary of Agriculture Thomas J. Vilsack to serve as Monitor to oversee compliance with the Debtors' unprecedented voluntary injunction.  The Monitor published his first report during the Fee Period, on May 20, 2020.  The Debtors have continued to advance the interests of their estates through the considerable work performed at the direction of the Special Committee of the Debtors' Board of Directors.  At the direction and on behalf of the Special Committee, the Debtors have continued a robust investigation and analysis of potential claims by the Debtors against members of the Sackler family and their associated companies and trusts.  On May 29, 2020, the Debtors finalized and published a 401-page report detailing intercompany and non-cash transfers of value among the Debtors and other Sackler-owned entities since January 1, 2008. [ECF No. 1194].  At the same time, the Debtors obtained approval to continue to support the development of overdose reversal medications to help address the opioid crisis, developed an updated business plan, and continued to operate their businesses while in chapter 11 in these unprecedented times.

15.     As the foregoing summary demonstrates, the Debtors have accomplished a great deal in the Fee Period, and continue to make progress on many different fronts.

## Summary of Services Rendered

16.     Davis Polk provided extensive and critical professional advice and other services in connection with the key developments described above and on myriad other important issues, often on an urgent basis and within a limited time frame.  Summaries of significant services are detailed below in accordance with Davis Polk's internal system of project categories:

Asset Dispositions
Fees: $39,928.00, Total Hours: 31.5

- Under this project category, Davis Polk assisted the Debtors with issues related to planning for the potential disposition and acquisition of assets, among other things. Specifically, Davis Polk:

    o Participated in numerous calls and meetings with the Debtors, their advisors and other parties in interest regarding potential sale/licensing transactions;

    o Researched and analyzed issues related to same; and

    o Drafted pleadings and other documents in connection with same.

Automatic Stay/Preliminary Injunction/Litigation/DOJ
Fees: $2,974,309.00, Total Hours: 2,739.1

- Under this project category, Davis Polk assisted the Debtors with issues arising in conjunction with (i) activities related to the preliminary injunction, including briefing two successive appeals by Tennessee plaintiffs; (ii) activities related to the enforcement of the automatic stay and of the preliminary injunction; (iii) defensive litigation efforts, including, among other things, activities related to various omnibus hearings, and motion practice and oral argument preparations related to a lift-stay motion filed by Debtors' co-defendants in an underlying litigation; (iv) efforts to retain a monitor to oversee compliance with the Voluntary Injunction; and (v) issues related to ongoing discussions with the Department of Justice (the "**DOJ**").

    o With respect to the preliminary injunction:

        ▪ Obtained Court approval of an extension of the preliminary injunction for 180 days, through October 5, 2020, over objections from multiple creditors and creditor groups.  Drafted and filed supporting motion papers and attorney declaration.  Engaged with numerous creditors and creditor groups to resolve potential objections before the hearing.  Analyzed objections and researched related legal issues;

        ▪ Drafted responsive papers to objections;

- ▪ Prepared for March 18, 2020, hearing on motion to extend the preliminary injunction, including drafting arguments. Communicated with counsel for related parties regarding hearing strategy. Reviewed and analyzed hearing transcripts;

- ▪ Communicated with Prime Clerk LLC ("**Prime Clerk**") regarding ongoing notice and service issues for a proceeding involving hundreds of parties;

- ▪ Drafted, filed, and obtained Court approval of four amended preliminary injunction orders;

- ▪ Engaged with Debtors, Debtors' counsel, and counsel for creditors and creditor groups in connection with proposed common benefit fund in the ongoing opioid multi-district litigation ("**MDL**"). Reviewed and analyzed common benefit fund motion and proposed order filed in MDL. Revised proposed order alongside counsel for creditors and creditor groups to ensure consistency with terms of the preliminary injunction order; and

- ▪ Researched and analyzed appellate issues and advised the Debtors on appellate strategy in connection with appeal of preliminary injunction filed by Tennessee plaintiffs. Drafted responsive papers and supporting documents in initial appeal. Communicated with counsel to related parties regarding appeal strategy and filings. Reviewed and analyzed second notice of appeal and appellate filings of Tennessee plaintiffs. Engaged with Tennessee plaintiffs' counsel to resolve scheduling and coordination issues created by second appeal. Began drafting responsive papers and supporting documents in connection with second appeal.

- o With respect to the defense of the automatic stay and the preliminary injunction:

  - ▪ Tracked, reviewed, and responded to letters and court filings by various parties in violation of the automatic stay;

  - ▪ Reviewed, researched, and analyzed various stay- and preliminary-injunction-violation issues as they arose, including complaints filed after the petition date, continued litigation after the preliminary injunction order was entered, and additional service issues; and

  - ▪ Communicated with various creditors and counsel, including counsel for related parties, regarding potential violations of the automatic stay and preliminary injunction.

- o With respect to defensive litigation efforts:

  - ▪ Drafted arguments for various hearings, including but not limited to the February 21, 2020 Omnibus Hearing, the March 2, 2020 Hearing regarding the Debtors' Motion for Entry of an Order Appointing Mediators [ECF No. 855] (the "**Mediator Motion**"), the March 18,

2020 Omnibus Hearing, and the April 22, 2020 Omnibus Hearing, Prepared materials for oral argument for the same.  Communicated with Debtors' other counsel, including tort counsel and regulatory counsel, on hearing strategy.  Reviewed and analyzed hearing transcripts.  Advised on strategy regarding various issues that could have potential litigation consequences;

- Advised the Debtors and other counsel to the Debtors on possible litigation in connection with potential insurance coverage disputes. Researched and analyzed numerous related legal issues. Communicated with Debtors and Debtors' insurance counsel regarding strategy;

- Advised the Debtors on a strategy for responding to motion to lift the automatic stay filed by Debtors' co-defendants in an underlying litigation. Analyzed co-defendants' motion to lift the stay. Researched and analyzed related legal issues.  Communicated with Debtors' tort counsel and counsel to creditors and creditor groups, including related parties, regarding objection strategy.  Drafted objection to *Motion for Relief from Automatic Stay* [ECF No. 909]. Prepared for April 22, 2020 Omnibus Hearing on same, including drafting oral arguments.  Analyzed potential future litigation claims arising out of April 22, 2020 hearing; and

- Engaged with the Debtors, Debtors' counsel, and counsel for creditors and creditor groups on other possible motion to lift the automatic stay.  Researched and analyzed related lift-stay issues. Drafted stipulation to resolve threatened lift-stay motion.

  o With respect to potential litigation of discovery/diligence issues:

   - Retained Secretary Thomas J. Vilsack as monitor pursuant to the Voluntary Injunction.  Drafted monitor retention agreement.

  o With respect to DOJ issues:

   - Advised the Debtors on ongoing negotiations with the DOJ. Prepared presentations and other materials for, and communicated with, the DOJ.   Communicated with Debtors' other counsel regarding DOJ negotiations.   Communicated with the Debtors' financial advisor regarding requests from the DOJ.

Bar Date/Estimation/Claims/Allowance Issues
Fees: $2,333,458.50, Total Hours: 2,059.2

- Under this project category, Davis Polk assisted the Debtors with the analysis, negotiation, and preparation of materials related to the bar date motion, bar date extension motion, and mediation motion, as well as issues related to estimation, allowance, allocation, and settlement of claims.  Specifically, Davis Polk:

  o Conducted legal research and factual diligence on a wide variety of claims-

10

related issues, including estimation, allowance, allocation, damages, abatement, proofs of claim, and settlement and mediation thereof, to assess the Debtors' options for resolving and exiting these chapter 11 cases;

o Consulted with and responded to inquiries from the Debtors, the Creditors' Committee, and other stakeholders regarding the foregoing;

o Negotiated, researched, developed, drafted, filed, and obtained Court approval of the Mediator Motion;

o Researched and prepared mediation materials, and presented the materials during mediation sessions with the mediators and various creditor constituencies;

o Coordinated and consulted with Cornerstone Research regarding claims analyses and allocation discussions with the Debtors, the Creditors' Committee, and other creditor constituencies;

o Coordinated and consulted with the Debtors' Court-appointed claims and noticing agent, Prime Clerk LLC ("**Prime Clerk**"), regarding claims issues, the bar date, proof of claim forms, bar date notices, and publication notice; and

o Negotiated, researched, developed, drafted, filed and litigated *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 2002 and 3003(c)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof* [ECF No. 1178].

Corporate Governance, Board Matters and Communications
Fees: $746,086.00, Total Hours: 637.9

- Under this project category, Davis Polk assisted the Debtors' board of directors (the "**Board**") with analysis and advice regarding corporate governance issues, the review and preparation of corporate documents and interaction with the press, among other things.  Specifically, Davis Polk:

o Discussed with the Debtors' management, Board, investment bankers, financial advisors and other parties in interest matters related to intercompany issues and coordinated corresponding workstreams;

o Prepared for and attended general meetings of the Board;

o Coordinated review of press releases and reports;

o Advised, prepared materials for, and participated in numerous meeting and calls with the Board and various committees, including on issues regarding the Public Trust Transfer process, pending litigation, and chapter 11 case status and strategy;

o Drafted and reviewed various governance documents for the Board and various committees including minutes, resolutions, secretary certificates, shareholder and director consents; and

- o Conducted research and advised the Debtors with respect to various public filings, disclosure requirements, audits, examinations, inquiries and other issues.

Creditor/UCC/AHC Issues
Fees: $3,283,964.50, Total Hours: 4,167.9

- Under this project category, Davis Polk assisted the Debtors with coordinating and communicating with creditors, including the UCC, the Ad Hoc Committee and the Non-Consenting States Group on a variety of issues. Specifically, Davis Polk:

  - o Prepared, reviewed, and revised materials for, corresponded with, and participated in meetings with the UCC, the Ad Hoc Committee, the Non-Consenting States Group and other creditor groups regarding all aspects of the Chapter 11 cases, including the production of diligence and documents in response to various information requests;

  - o Reviewed an extensive number of diligence requests from various creditor groups, and coordinated with Debtors, in-house electronic discovery team and external vendors (PJT Partners, AlixPartners, Cobra and TCDI) for the compilation of information, answers, summaries and documents responsive to the various requests;

  - o Participated on numerous calls and coordination meetings with Debtors and their advisors to formulate strategies for responding to requests from the UCC, the Ad Hoc Committee, the Non-Consenting States Group and other creditor groups;

  - o Conducted review of hundreds of thousands of documents and communications for ongoing productions to the UCC, the Ad Hoc Committee, the Non-Consenting States Group and other creditor groups; and

  - o Prepared, discussed, reviewed and revised joinder to the UCC's motions for Rule 2004 discovery.

Cross border/International Issues
Fees: $21,572.00, Total Hours: 15.5

- Under this project category, Davis Polk assisted the Debtors with issues related to proceedings in foreign jurisdictions, among other things. Specifically, Davis Polk:

  - o Coordinated and managed foreign proceedings, and monitored critical dates and case workstreams in order to facilitate effective progress;

  - o Conducted regular conferences and calls with foreign counsel and parties in interest.

Equityholder/IAC Issues
Fees: $69,174.50, Total Hours: 54.9

- Under this project category, Davis Polk assisted the Debtors with the analysis of issues concerning the Debtors' equityholders and independent associated companies ("**IACs**").  Specifically, Davis Polk:

  o Attended and participated in numerous meetings with counsel for the equityholders on issues including shareholder diligence and tolling agreement;

  o Attended discussions and meetings with shareholder counsel and counsel for other parties in interest regarding mediation and related issues; and

  o Conducted research and analysis of intercompany transactions involving IACs.

Customer/Vendor/Lease/Contract Issues
Fees: $742,943.50, Total Hours: 622.4

- Under this project category, Davis Polk assisted the Debtors with issues related to the Debtors' customers and vendors, negotiations with lease and contract parties and preparation of pleadings and litigation regarding the Debtors' commercial agreements, among other things.  Specifically, Davis Polk:

  o Advised and strategized with the Debtors' management and other advisors regarding critical vendors issues and processes to stabilize the business and ensure uninterrupted operations;

  o Prepared and reviewed various pleadings to enter into new commercial agreements and pleadings regarding the assumption, assignment or rejection of certain executory contacts and unexpired leases;

  o Prepared and reviewed various pleadings to support development of opioid overdose reversal medications, including the *Debtors' Motion for Authorization to Enter into Development Agreement* [ECF No. 826], *Motion of Debtors for Authorization to Enter into Funding Agreement* [ECF No. 1005] and *Amended Motion of Debtors for Authorization to Enter into Funding Agreement* [ECF No. 1249];

  o Conducted extensive research and reviewed and analyzed numerous executory and other contracts, leases, and agreements in response to inquiries from the Debtors and the Debtors' other advisors; and

  o Conducted various conferences and negotiations with contractual counterparties and parties in interest, including the UCC, the Ad Hoc Committee and the Non-Consenting States Group, regarding certain executory contracts and commercial leases, and potential commercial transactions.

13

Employee/Pension Issues
Fees: $226,482.00, Total Hours: 176.0

- Under this project category, Davis Polk assisted the Debtors with the review and analysis of employee-related issues including compensation, bonuses, incentive plans, severance, insurance benefits and retirement plan issues, among other things. Specifically, Davis Polk:
  - Reviewed and discussed materials on compensation programs, including Wills Towers Watson's work product on employee compensation programs, with the Debtors and their advisors;
  - Draft and revised resolutions and other ancillary documents related to employee compensation issues; and
  - Advised the Debtors on questions and issues related to executive compensation issues, personnel related matters, the Pension Benefit Guaranty Corporation, Department of Labor 401(k) plan audits, and related regulatory filings.

General Case Administration
Fees: $1,188,231.00, Total Hours: 1,173.5

- Under this project category, Davis Polk assisted the Debtors with general matters related to case administration, including case coordination, case calendaring, the filing of court papers, and attending hearings. Specifically, Davis Polk:
  - Prepared for and attended:
    - The Omnibus Hearing on February 21, 2020
    - The Mediator Motion Hearing on March 2, 2020
    - The Omnibus Hearing on March 18, 2020
    - The Omnibus Hearing on April 22, 2020
    - The Rule 2004 Discovery Motion Hearing on May 1, 2020
  - Prepared for, coordinated, and attended weekly internal meetings on case status in order to develop and efficiently manage workstreams;
  - Maintained a critical dates calendar for clients and co-advisors and reviewed and distributed filings on the Court's docket to the Debtors' advisors and internal teams;
  - Prepared and revised various pleadings, including motions related to sealing documents and fee examiner order; and
  - Drafted and filed numerous court papers related to case administration, including notices of hearing dates and adjournments, electronics device orders, and hearing agendas.

<u>Non-DPW Retention and Fee Issues</u>
Fees: $245,398.50, Total Hours: 227.3

- Under this project category, Davis Polk assisted the Debtors with the preparation of retention materials, disclosures and fee applications for the Debtors' non-Davis Polk professionals. Specifically, Davis Polk:

    o Drafted applications to obtain court authorization to retain additional professionals under section 327(a) of the Bankruptcy Code;

    o Obtained approval of appointment of the fee examiner and assisted the fee examiner with obtaining information from various retained professionals;

    o Coordinated with ordinary course professional regarding preparation of application with respect to fees in excess of the applicable cap;

    o Scheduled an interim fee application hearing and coordinated with various professionals regarding seeking approval of their interim fee applications;

    o Assisted and responded to inquiries from the Debtors' other professionals with respect to retention and the preparation and filing of fee statements and applications; and

    o Attended multiple calls and corresponded with the Debtors and the Debtors' other professionals regarding the retention process and related fee orders.

<u>Non-Working Travel</u>
Fees: $11,438.75, Total Hours: 23.4

- This project category includes time attributable to non-working travel, which is billed at less than full hourly rates. Specifically, this travel included:

    o Non-working travel to and from White Plains for a hearing;

    o Non-working travel to and from Washington, D.C., in connection with a Bates White meeting; and

    o Non-working travel to and from the offices of the Debtors.

<u>Support Agreement/Plan/Disclosure Statement</u>
Fees: $1,340,238.00, Total Hours: 1,125.2

- Under this project category, Davis Polk assisted the Debtors with issues related to the Debtors' plan of reorganization, among other things. Specifically, Davis Polk:

    o Prepared, drafted and revised a potential plan term sheet to be negotiated with the UCC and other stakeholders;

    o Conducted extensive research and reviewed and analyzed numerous legal precedents regarding plan structure considerations and strategies in response to inquiries from the Debtors;

    o Prepared and revised a restructuring support agreement; and

o  Advised the Debtors on establishing an emergency relief fund including conducting various negotiations with creditors and other parties in interest and preparing related pleadings.

DPW Retention/Preparation of Fee Statements/Applications Budget
Fees: $460,235.50, Total Hours: 708.5

- Under this project category, Davis Polk assisted the Debtors with issues related to Davis Polk's retention, including the preparation and review of Davis Polk's monthly fee applications.  Specifically, Davis Polk:

    o  Drafted and prepared monthly fee applications for the months of January, February, March, and April of 2020;

    o  Drafted and prepared the first interim application for compensation; and

    o  Internally coordinated and reviewed over five hundred pages of time entries for privilege and confidentiality.

IP, Regulatory and Tax
Fees: $1,481,750.50, Total Hours: 1,303.5

- Under this project category, Davis Polk assisted the Debtors with intellectual property and tax issues, among other things.  Specifically, Davis Polk:

    o  Drafted, reviewed, and advised Debtors in connection with a variety of intellectual property and commercial agreements, including licenses, development agreements, and patent assignment agreements;

    o  Conducted due diligence on Debtor's intellectual property portfolio and prepared memoranda and other summaries regarding such due diligence;

    o  Attended various meetings and calls with the debtors and outside intellectual property counsel regarding such due diligence;

    o  Advised and performed analysis on tax issues, including reviewing trust structures and transactions and conducting research on tax treatment and filing requirements;

    o  Continued to advise and perform analysis on tax issues, including research and preparation of presentations related to emergence structures and tax considerations for claimants; and

    o  Engaged in discussions and analysis related to models of the tax consequences of the sale of the IACs prepared by KPMG.

Special Committee/Investigation Issues
Fees: $4,049,229.00, Total Hours: 4,258.2

- Under this project category, Davis Polk assisted and advised the Special Committee of the Debtors' Board of Directors (the "**Special Committee**").  Specifically, Davis

16

Polk:

- o Investigated, assessed, and conducted a document review relating to potential claims against the Debtors' equityholders, including members of the Sackler Family and their associated companies and trusts, including, but not limited to, potential claims for fraudulent conveyances, alter ego and veil-piercing, and breach of fiduciary duty;

- o Reviewed, supervised, and assisted AlixPartners' forensic analyses of all cash and non-cash distributions, payments, and/or transfers made by or between the Debtors to the Sackler Family, or entities owned by or operated for the benefit of the Sackler Family, for the period spanning January 1, 2008 to September 15, 2019;

- o Reviewed, supervised, and assisted Bates White's transfer pricing analysis of all non-cash distributions and transfers identified by AlixPartners between the Debtors and the Sackler Family, or entities owned by or operated for the benefit of the Sackler Family;

- o Provided information and/or presentations to the Special Committee and various third parties, including the UCC and its advisors, regarding the scope and status of the Special Committee's investigation into potential claims held by the Debtors;

- o Engaged in numerous meet and confers and other discussions with the various creditor groups, including the UCC, regarding discovery and diligence requests; and

- o Advised the Special Committee on issues concerning the indemnification of the Debtors' employees and other issues within its mandate.

Rule 2004 Discovery
Fees: $218,668.50, Total Hours: 231.9

- Under this project category, Davis Polk assisted the Debtors with coordinating and communicating with creditors and other stakeholders, including the UCC, the Ad Hoc Committee, the Non-Consenting States Group and the Sackler Families on Rule 2004 discovery issues, and reviewed and analyzed materials related to Rule 2004 discovery.  Specifically, Davis Polk:

- o Prepared, reviewed, and revised materials for, corresponded with, and participated in meetings with counsel for the UCC, the Ad Hoc Committee, the Non-Consenting States Group, the IACs, the II-Way Entities, and the Sackler Families regarding the UCC's and Non-Consenting States Group's Rule 2004 discovery requests, objections, and related disputes and issues; and

- o Prepared, reviewed and revised materials for, and participated in, Court hearing regarding Rule 2004 discovery.

17

**Actual and Necessary Expenses**

17.    As set forth in **Exhibit F** hereto, Davis Polk has incurred or disbursed $97,640.46 in expenses in providing professional services to the Debtors during the Compensation Period. These expense amounts are intended to cover Davis Polk's direct operating costs, which costs are not incorporated into the Davis Polk hourly billing rates.  Only clients for whom the services are actually used are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would unfairly impose additional costs upon clients who do not require extensive photocopying, delivery, and other services.  Davis Polk charges all of its bankruptcy clients $0.10 per page for photocopying and printing job expenses.  On several occasions, overnight delivery of documents and other materials were required as a result of circumstances necessitating the use of such express services.

18.    Regarding providers of online legal research (e.g., LexisNexis and Westlaw), Davis Polk charges all of its clients the standard usage rates these providers charge, which, due to contractual flat fees, may not always equal Davis Polk's actual cost.  Davis Polk currently is under contract to pay these providers a flat fee every month.  Charging its clients the online providers' standard usage rates allows Davis Polk to cover adequately the monthly flat fees it must pay to these types of providers.

19.    Davis Polk has made every effort to minimize its expenses in the Chapter 11 Cases.  The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and other parties in interest.

**Davis Polk's Requested Compensation and Reimbursement Should Be Allowed**

20.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to

govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered … and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including –
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

21.    The foregoing professional services were performed by Davis Polk in an efficient manner, were necessary and appropriate to the administration of the Chapter 11 Cases, and were in the best interests of the Debtors, their estates, and other parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved.  As required by the U.S. Trustee guidelines, annexed hereto as **<u>Exhibit G</u>** is a chart setting forth the comparative blended rates of the professionals and paraprofessionals who rendered services with a corresponding comparison of rates for professionals and paraprofessionals not involved in these chapter 11 cases.

## **Notice**

22.     The Debtors will provide notice of this Application in accordance with the Interim

Compensation Order.  The Debtors submit that no other or further notice be given.


[*Remainder of Page Left Blank Intentionally*]

WHEREFORE, Davis Polk, in connection with services rendered on behalf of the Debtors, respectfully requests allowance of reasonable compensation of such services rendered in the total amount of $19,433,107.75 and reimbursement of actual and necessary expenses incurred in the amount of $97,640.46, for an aggregate total of $19,530,748.21 for the Fee Period.

Dated:    July 15, 2020
          New York, New York

                              DAVIS POLK & WARDWELL LLP

                              By:    */s/ Marshall S. Huebner*

                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile:  (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              Timothy Graulich
                              Eli J. Vonnegut
                              Christopher S. Robertson

                              *Counsel to the Debtors and Debtors in Possession*