UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**SUMMARY STATEMENT FOR SECOND INTERIM FEE APPLICATION
OF DECHERT LLP, SPECIAL COUNSEL FOR THE DEBTORS,
FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**

| | |
|---|---|
| Name of applicant | Dechert LLP |
| Name of client | Purdue Debtors and Debtors in Possession |
| Time period covered by this application | February 1, 2020 through and including May 31, 2020 |
| Total compensation sought this period | $3,434,410.64[2] |
| Total expenses sought this period | $408,656.15[3] |
| Petition date | September 15, 2019 |

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]    This amount reflects a reduction in fees in the amount of $749,304.36 on account of the following voluntary discounts:  (i) a voluntary discount of $740,042.25 for aggregate fees as described in the *Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket No. 424] (the "**Retention Application**") and *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965] (the "**Notice of Increased Patent Fees**"); and (ii) a voluntary discount of $8,085 for transient and suspect timekeepers due to concerns previously raised by the Fee Examiner.  Additionally, this amount is $1,177.11 less than the aggregate amount of the Monthly Fee Statements due to minor mistakes in use of billing rates as reflected in fn. 2 to Exhibit C.

[3]    This amount reflects an adjustment in meal expenses, lowering the amount sought for individual meals to $20.

17264035

| | |
|---|---|
| Retention date | *nunc pro tunc* to November 21, 2019 |
| Date of order approving employment | November 21, 2019 |
| Total compensation approved by interim order to date | $5,238,965.98 |
| Total expenses approved by interim order to date | $815,614.96 |
| Total allowed compensation paid to date | $5,238,965.98 |
| Total allowed expenses paid to date | $815,614.96 |
| Blended rate in this application for all attorneys | $872.96 |
| Blended rate in this application for all timekeepers | $769.26 |
| Compensation sought in this application already paid (or credited against prepetition retainer) pursuant to a monthly compensation order but not yet allowed | $2,754,938.18[4] |
| Expenses sought in this application already paid (or credited against prepetition retainer) pursuant to a monthly compensation order but not yet allowed | $408,656.15[5] |
| Number of professionals included in this application | 67 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period | Amount Budgeted: $5,455,000 – 5,860,000[6] <br> Amount Sought: $3,434,410.64 |
| Number of professionals billing fewer than 15 hours to the case during this period | 28 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No. |

This is a(n):    ____Monthly    _X_Interim    ____Final application.

This application includes 459.7 hours with a value of $138,007.23 incurred in connection with the preparation of Fee Applications for the Debtors.[7]

---

[4]    This amount assumes no objections are raised to Dechert's Fifth Monthly Fee Statement for the Period from May 1, 2020 Through May 31, 2020 [ECF No. 1331].

[5]    This amount assumes no objections are raised to Dechert's Fifth Monthly Fee Statement for the Period from May 1, 2020 Through May 31, 2020 [ECF No. 1331].

[6]    The budget includes amounts budgeted in the Bankruptcy Related Budget, which was mistakenly prepared to cover fees through April 30, 2020, rather than through May 31, 2020; however, this mistake is of no consequence, because Dechert's fees within these categories are either well below or within the estimated fees.

[7]    A breakdown of the fees attributed to time spent on retention and fee applications since the Petition date reflecting the aggregate discount can be found at **Exhibit H**.

**SUMMARY OF MONTHLY FEE STATEMENTS**

| Application | Total Compensation and Expenses Incurred for Period Covered | | | Total Amount Requested in Fee Statements | | Total Unpaid |
|---|---|---|---|---|---|---|
| **Date Filed/Docket No.** | **Period Covered** | **Total Fees** | **Expenses** | **Fees (80%)** | **Expenses (100%)** | **Fees and Expenses** |
| 04/20/2020 Docket No. 1065 | 02/01/2020-02/29/2020 | $825,205.95 | $108,937.50 | $660,164.76 | $108,937.50 | $165,041.19 |
| 04/28/2020 Docket No. 1095 | 03/01/2020-03/31/2020 | $705,835.49 | $114,355.29 | $564,668.39 | $114,355.29 | $141,167.10 |
| 05/30/2020 Docket No. 1195 | 04/01/2020-04/30/2020 | $1,020,788.86 | $181,824.00 | $816,631.09 | $181,824.00 | $204,157.77 |
| 07/02/2020 Docket No. 1331 | 05/01/2020-05/31/2020 | $891,842.45 | $3,539.36 | $713,473.96 | $3,539.36 | $178,368.49 |
| **Totals:** | | **$3,443,672.75** | **$408,656.15** | **$2,754,938.18** | **$408,656.15** | **$688,734.55** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**SECOND INTERIM FEE APPLICATION OF DECHERT LLP,**
**AS 327(e) SPECIAL COUNSEL, FOR COMPENSATION FOR**
**PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT**
**OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**DURING THE PERIOD FEBRUARY 1, 2020 THROUGH MAY 31, 2020**

Dechert LLP ("**Dechert**"), as the retained special counsel to Purdue Pharma L.P.

and its affiliated debtors ("**Purdue**" or the "**Debtors**") in the above captioned chapter 11 cases

(the "**Case**"), hereby files this application (the "**Application**") pursuant to sections 330 and 331

of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy**

**Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and the Order Pursuant to Section 327(e) and 328(a) of the Bankruptcy Code Authorizing the

Employment and Retention of Dechert LLP, as Special Counsel to the Debtors, *Nunc Pro Tunc*

to September 15, 2019 (the "**Petition Date**"), dated November 21, 2019 [Docket No. 525] (the

"**Retention Order**", a copy of which is annexed hereto as Exhibit A), for an award of

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034),
Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven
Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P.
(4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove
Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425),
Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP
(0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located
at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

17264035

compensation for professional services rendered to the Debtors in the amount of $3,434,410.64,[2]

incurred during the period from February 1, 2020 through and including May 31, 2020 (the

"**Compensation Period**"), and reimbursement of disbursements incurred during that same

period in the amount of $408,656.15.[3]

## BACKGROUND

### A.  The Chapter 11 Cases

1.     On or about the Petition Date, the Debtors filed voluntary cases under

chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

2.     On September 27, 2019, the United States Trustee for the Southern

District of New York (the "**U.S. Trustee**") appointed the Official Committee of Unsecured

Creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [Docket No. 131].

3.     On April 8, 2020, the Court entered the Order authorizing the appointment

of an independent fee examiner (the "**Fee Examiner**") [Docket No. 1023].

---

[2]     This amount reflects a reduction in fees in the amount of $791,421.86 on account of the following voluntary discounts:  (i) a voluntary discount of $740,042.25 for aggregate fees as described in the *Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket No. 424] (the "**Retention Application**") and *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965] (the "**Notice of Increased Patent Fees**"); and (ii) a voluntary discount of $50,202.50 for transient and suspect timekeepers previously identified by the Fee Examiner.  Additionally, this amount is $1,177.11 less than the aggregate amount of the Monthly Fee Statements due to minor mistakes in use of billing rates as reflected in fn. 2 to Exhibit C.

[3]     This amount reflects an adjustment in meal expenses, lowering the amount sought for individual meals to $20.

### B.  The Debtors' Business

4.      The Debtors are pharmaceutical companies that manufactured, sold, or distributed, among other products, extended release, long-acting, abuse-deterrent opioid pain medications.

5.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* [Docket No. 17] filed on September 16, 2019.

## JURISDICTION

6.      The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

7.      The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**").  By this Application, Dechert respectfully seeks Court approval and allowance of reasonable compensation for professional services rendered to the Debtors during the Compensation Period in the aggregate amount of $ and for reimbursement of actual and necessary expenses incurred in connection with the rendition of such services in the amount of $.

## BASIS FOR RELIEF

### A. **Dechert's Retention**

8.      On November 5, 2019, the Debtors filed their Application of the Debtors

Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal

Rules of Bankruptcy Procedure for Authorization to Employ and Retain Dechert LLP, as Special

Counsel to the Debtors, *Nunc Pro Tunc* to the Petition Date [Docket No. 424].  The Court

entered the Retention Order on November 21, 2019. [Docket No. 525; Exhibit A hereto].

9.      The Order Granting Motion Establishing Procedures for Interim Monthly

Compensation and Reimbursement of Expenses of Professionals [Docket No. 529] (the "**Interim**

**Compensation Order**"), entered by the court on November 21, 2019, outlines the procedures

that all professionals must follow in order to receive compensation and reimbursement of

expenses for services provided to the Debtors.

10.      Dechert is a full service law firm with well-developed practices in the

areas of product liability and mass torts, business restructuring and reorganization, corporate and

securities, complex commercial litigation, finance and real estate and financial services.

### B. **Compensation**

11.      This Application is Dechert LLP's second application for interim

compensation and reimbursement of expenses as special counsel in these chapter 11 cases.

12.      Pursuant to the Interim Compensation Order, during the Compensation

Period, Dechert filed four (4) fee statements (the "**Monthly Fee Statements**") with the Court as

follows:

  a.  On April 20, 2020, Dechert filed its Sixth Monthly Fee Statement for the
      Period from February 1 Through February 29, 2020 [ECF No. 1065] (the
      "**February Fee Statement**").  The February Fee Statement reflected fees

4

in the amount of $825,205.95 and expenses incurred in the amount of $108,937.50.

    b.  On April 28, 2020, Dechert filed its Seventh Monthly Fee Statement for the Period from March 1, 2020 Through March 31, 2020 [ECF No. 1095] (the "**March Fee Statement**").  The March Fee Statement reflected fees in the amount of $705,835.49 and expenses incurred in the amount of $114,355.29.

    c.  On May 30, 2020, Dechert filed its Eighth Monthly Fee Statement for the Period from April 1, 2020 Through April 30, 2020 [ECF No. 1195] (the "**April Fee Statement**").  The April Fee Statement reflected fees in the amount of $1,020,788.86 and expenses incurred in the amount of $181,824.00.

    d.  On July 2, 2020, Dechert filed its Ninth Monthly Fee Statement for the Period from May 1, 2019 Through May 31, 2020 [ECF No. 1331] (the "**May Fee Statement**").  The May Fee Statement reflected fees in the amount of $891,842.45 and expenses incurred in the amount of $3,539.36.

13.    In total, therefore, Dechert has submitted Monthly Fee Statements during the Compensation Period for fees of $3,434,410.64 and expenses of $408,656.15.  As of the date of this Application, no party-in-interest has objected to Dechert's Sixth, Seventh, Eight, and Ninth Monthly Fee Statements.  Consistent with the Interim Compensation Order, Dechert applied 80% of fees and 100% of expenses for each of the Monthly Fee Statements to the Retainer and the Expense Trust Account, as these terms are defined in the Retention Application.

14.    By this Application Dechert seeks compensation for the fair and reasonable fees and expenses incurred by Dechert to the estates of the Debtors during the Compensation Period.  The compensation requested herein is based on discounted regular hourly rates consistent with discounted rates provided for complex mass tort cases generating similar volume of legal fees and reflects the time, labor, and expertise brought to bear on the problems presented, and is either in line with, or lower than the rates charged by similar firms operating in a competitive market for legal services of the type involved in this case.

5

15.     This Application does not detail every correspondence, drafting session, meeting, discussion, or conference held, all research conducted, or each of the numerous tasks performed by Dechert.  Those matters are set forth in detail in the contemporaneous time records filed with Dechert's Monthly Fee Statements and are incorporated herein by reference. In addition, detail for expenses that were incurred by Dechert during the Compensation Period were included in Dechert's Monthly Fee Statements and are incorporated herein by reference. All such expenses are reflected in the books and records of Dechert, which are contemporaneously maintained in the ordinary course of its business.

16.     The professional services for which compensation is sought were rendered in the ordinary course of the Debtors' business and solely on behalf of the Debtors.

17.     By this Application, Dechert seeks allowance in full of interim compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $2,652,250.89 and for reimbursement of actual, necessary expenses incurred in connection with such services in the amount of $408,656.15.  During the Compensation Period, Dechert attorneys and paraprofessionals expended a total of 5,438.6 hours for which compensation is requested.

**C.  <u>Applicable Authority</u>**

18.     Dechert LLP prepared this Application in accordance with: (a) the Administrative Order Re: Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on January 25, 2013 and effective as of February 5, 2013 (the "**Local Guidelines**"); (b) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on May 17, 1996 and June 11, 2013 (the "**UST Guidelines**",

6

and together with the Local Guidelines and the Interim Compensation Order, the "**Guidelines**"); and (c) the Interim Compensation Order.  Pursuant to the Local Guidelines, a certification regarding compliance with the Guidelines is annexed hereto as Exhibit B.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

19.    Dechert believes that the fair and reasonable (and discounted) value of its professional services rendered during the Compensation Period is $3,434,410.64.  Based upon the total attorneys' and paraprofessionals' time expended, and a resulting blended hourly rate of $769.26 for professionals, Dechert believes the compensation requested herein to be reasonable and appropriate.

20.    Dechert also seeks reimbursement of its actual, reasonable, and necessary out-of-pocket expenses in the aggregate amount of $408,656.15.  These expenses were incurred during the course of rendering professional services on behalf of the Debtors during the Compensation Period.

21.    Dechert has utilized its existing hourly rate structure and has calculated its request for compensation by multiplying the hours of time spent on services rendered on behalf of the Debtors by the discounted hourly rate assigned to each attorney or paraprofessional rendering such services.  Dechert respectfully submits that the fees sought herein are less than customary and based on its normal criteria in matters of this type and are discounted from the fees that Dechert has been allowed in other chapter 11 cases, including in this District.

22.    Pursuant to the UST Guidelines, annexed hereto as Exhibit C is the summary sheet required by the Local Guidelines, which includes a schedule setting forth the names of all Dechert professionals and paraprofessionals who have performed services for which

7

compensation is sought, the person's position in the firm and department, and the date of bar admission for each attorney. In addition, the schedule sets forth for each person (a) the hourly rate(s) during the Compensation Period; (b) the total hours billed for which compensation is sought; and (c) the total compensation for such hours.

23.    Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit D</u> is a summary by project category of the services performed by Dechert during the Compensation Period

24.    Annexed hereto as <u>Exhibit E</u> is a schedule specifying the categories of expenses for which Dechert in seeking reimbursement and the total amount of reimbursement requested for each such expense category.

**<u>SERVICES RENDERED BY DECHERT</u>**

25.    Dechert has a longstanding relationship with the Debtors and was retained to continue to provide the litigation services the firm has provided to the Debtors over the 26 months preceding the Petition Date (as more fully described below, the "**Dechert Litigation Services**" or "**Litigation Services**"). Dechert is and has been in charge of national coordination of nearly 2,600 civil actions, including cases filed by the Attorneys General of almost every state and territory, pending in various state and federal courts across the United States and its territories. The cases generally allege that Purdue marketed prescription opioids in violation of state common-law tort duties and consumer protection, tort, and business statutes.

26.    In addition to the Dechert Litigation Services, Dechert also handles certain of the Debtors' patent prosecutions and related intellectual property issues (the "**Dechert Patent Services**" or "**Patent Services**", and together with the Dechert Litigation Services, the "**Dechert Services**"). Dechert has in the past and is currently providing legal services in relation to the

8

following patent applications: (1) application no. 15/324,528; (2) application no. 16/446,373; (3) application no. 16/446,397; (4) application no. 16/318,686; (5) application no. 16/557,937; (6) application no. 62/799,710; and (7) PCT/IB2019/050522.  Dechert will continue to provide the Dechert Patent Services to the Debtors during these chapter 11 cases.  In the ordinary course of business and consistent with past practices, Dechert expects to provide additional patent and intellectual property services as requested by the Debtors.

27.    The description of services below summarizes the primary services rendered by Dechert during the Compensation Period and highlights the benefits conferred upon the Debtors and their estates and creditors as a result of Dechert's services.  The following is a summary description of the matters for which Dechert provided legal services to the Debtors during the Compensation Period:

**L110:  Case Administration (Hours: 538.5 Fees: $228,973.52)**

28.    During the Compensation Period, Dechert performed a variety of services relating to fact investigation and development in the bankruptcy proceedings, including the following:

- Dechert professionals continued to conduct numerous telephonic and video conferencing trainings for the Debtors' employees and other impacted individuals on the preliminary injunction.

- Dechert professionals continued to regularly advise the Debtors on an ongoing, often daily or weekly basis, regarding preliminary injunction compliance matters.

- Dechert professionals researched and analyzed issues regarding the Dissenting States' notice concerning certain public health information and participated in numerous follow-up communications, including advising the Debtors and bankruptcy counsel concerning data developed in the underlying litigation regarding illicit and prescription opioid use.

- Dechert professionals analyzed and researched issues relating to the Neonatal Abstinence Syndrome claimants' (the "**NAS Claimants**") motion for class certification in the underlying multi-district litigation ("**MDL**"), including analyzing the parties' expert

9

reports and depositions to assess the implications on the Purdue bankruptcy allocation and settlement negotiations relating to the NAS Claimants' claims.

29.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 538.5 hours to the Case Administration project category resulting in time charges of $228,973.52.

**L120:  Analysis and Strategy (Hours: 2,626.5 Fees: $2,073,978.85)**

30.    During the Compensation Period, Dechert performed a variety of services relating to the analysis and strategy in the opioid litigation, including the following:

- Dechert professionals continued to conduct weekly, and sometimes, daily, in-person, telephonic, and video conferencing meetings with various creditors, including the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Consenting States**"), the Ad Hoc Group of Non-Consenting States  (the "**Non-Consenting States**"), the UCC, counsel representing the NAS Claimants, the Ad Hoc Group of Hospitals (the "**Hospitals**"), and counsel representing the Third Party Payor claimant group to discuss the proposed settlement framework and issues concerning public and private allocation frameworks and abatement proposals.

- Together with co-counsel, Dechert professionals advised the Debtors regarding strategy for insurance coverage issues relating to the settlement negotiations and strategy regarding engaging with insurance companies on coverage and settlement issues.

- Dechert professionals continued to advise and assist the Debtors and bankruptcy counsel on the claims administration process, including analyzing proof of claim forms submitted to date for settlement and engaging in numerous (often, daily) communications with the Debtors and bankruptcy counsel regarding issues relating to claim allocation and valuation.

- Dechert professionals analyzed the Debtors' settlements in past personal injury cases for purposes of claim valuation.

- Dechert professionals assisted and advised the Debtors on issues relating to current and former employee, officers, and Board of Directors' indemnification issues and related strategy, which are integral to the claims asserted in the pre-petition litigation.

- Dechert professionals reviewed and analyzed issues concerning Plaintiffs' request for creation of a common benefit fund (the "**Common Benefit Fund**") in the underlying MDL and advised the Debtors and bankruptcy counsel on the potential impact on Purdue's settlement and bankruptcy proceedings.

- Dechert professionals together with bankruptcy counsel engaged in numerous discussions and negotiations with different claimant groups regarding the proposed Common Benefit Fund and its impact on Purdue's bankruptcy and global settlement issues.

- Dechert professionals regularly advised the Debtors on issues relating to ongoing regulatory obligations and inquiries.

- Together with the Debtors, Dechert professionals held numerous in-person, telephonic, and video conferences with the court appointed Monitor on issues regarding the Debtors' compliance with the November 2019 voluntary injunction (the "**Voluntary Injunction**") and assisted the Debtors in preparing for such meetings.

- Dechert professionals assisted the Debtor in responding to sometimes daily and weekly requests from the court appointed a monitor in this case (the "**Monitor**") regarding documents and information related to the Debtors' compliance with the Voluntary Injunction and the Monitor's preparation of his initial report to the Bankruptcy Court.

- Dechert professionals continued to consult with and advise the Debtors regarding ongoing media and public communications strategies.

- Dechert professionals regularly advised the Debtors on strategic issues concerning ongoing settlement negotiations and allocation discussions between the court-appointed mediators (the "**Mediators**") and various public and private claimant constituent groups.

- Dechert professionals continued to engage in extensive discussions and negotiations with the Debtors, bankruptcy counsel, consenting and dissenting States, the UCC, and other creditor constituencies regarding the formation and execution of the an emergency relief fund (the "**Emergency Relief Fund**").

- Dechert professionals continued to review and revise multiple complex drafts from different constituents regarding the establishment, structure, and potential recipients of the Emergency Relief Fund.

- Dechert professionals analyzed, researched, and drafted a response to the Dissenting States' notice concerning certain public health information and advised the Debtor on related strategy.

- Dechert professionals reviewed Debtors' experts' analysis in connection with claims allocation and certain claimants' valuation estimations, including NAS Claimants, Hospitals, and Third Party Payors.

- Dechert professionals continued to research and analyze legal and factual issues regarding key defenses and legal arguments to certain private claimants' bankruptcy claims, including issues regarding proximate causation, statute of limitations, and standing.

11

- Dechert professionals conferred and consulted with the Debtors, bankruptcy counsel, and expert consultants regarding potential issues regarding the NAS Claimants' proposed abatement plans and damages models and drafted memorandums to the Debtors regarding the NAS Claimants' claims, damages theories, and valuation issues.

- Dechert professionals analyzed co-Defendants' motions for cross-claims and co-Defendants' Motion for Relief from the Automatic Stay [ECF No. 909] (the "**Lift Stay Motion**") and together with bankruptcy counsel drafted a response to the Lift Stay Motion and advised the Debtors regarding strategic issues relating to the requests.

- Dechert professionals conferred and consulted with the Debtors, bankruptcy counsel, and expert consultants regarding potential issues regarding the Hospitals' proposed abatement plans and damages models.

- Dechert professionals assisted and advised the Debtors concerning regulatory reporting requirements and negotiations in light of the filing of claims in the bankruptcy.

31.     During the Compensation Period, Dechert professionals and paraprofessionals devoted 2,626.5 hours to the Analysis and Strategy project category resulting in time charges of $2,073,978.85.

**L190:  Other Case Assessment, Development and Administration (Hours: 303.2 Fees: $180,070.77)**

32.     During the Compensation Period, Dechert performed a variety of services relating to case assessment, development and administration, including the following:

- Dechert professionals continued to monitor developments in the stayed litigations pending in the MDL proceeding and state courts around the country in order to assess the potential impact of those proceedings on the Debtors' bankruptcy and settlement activities.

- Dechert professionals continued to analyze activities and developments in the state and MDL cases in order to identify, and respond to, actual or potential violations of the stay or preliminary injunction.

- Dechert professionals prepared select Debtors-affiliated witnesses for interviews regarding the bankruptcy, proposed settlement, and other proceedings and reviewed and analyzed correspondence and documents in association with that preparation.

33.     During the Compensation Period, Dechert performed a variety of services relating to written motions and submissions including the following:

12

- Dechert professionals continued to intervene where needed in litigation cases to protect and enforce the automatic stay and preliminary injunction, including through severance and stay orders in the opioid litigation.

- Over the course of the bankruptcy proceeding, Dechert professionals continued to provide necessary updates to courts and litigants regarding revisions to the preliminary injunction.

34.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 303.2 hours to the Other Case Assessment, Development and Administration project category resulting in time charges of $180,070.77.

**L160:  Settlement/Non-Binding ADR (Hours: 515.9 Fees: $375,414.45)**

35.    During the Compensation Period, Dechert performed a variety of services relating to settlement negotiations, including the following:

- Dechert professionals continued to work with the Debtors, bankruptcy counsel, and other co-counsel regarding global settlement negotiations and related strategy and settlement framework discussions.

- Dechert professionals conducted numerous in-person, telephonic, and video conferencing meetings with the Mediators as part of the negotiations concerning allocation and settlement issues.

- Dechert professionals assisted the Debtors and bankruptcy counsel in response to numerous requests and questions from the Mediators on issues regarding allocation negotiations and abatement proposals.

- Dechert professionals continued to respond to dozens of information requests from the Debtors, the Consenting States and Dissenting States, the UCC, and others regarding questions relating to the proposed settlement framework and negotiation process.

- Dechert professionals researched, analyzed, and drafted memoranda for the Mediators on the weaknesses in certain private claimants' claims and how such issues should impact allocation negotiations.

- Dechert professionals researched, analyzed, and drafted memoranda for the Mediators on different public entities' abatement proposals and how such models should impact allocation negotiations.

- Dechert professionals researched and analyzed public and private claimants' abatement proposals and advised the Debtors and co-counsel regarding the impact of such proposals on settlement and negotiation discussions.

36.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 515.9 hours to the Depositions, project category resulting in time charges of $375,414.45.

**P260:  Intellectual Property (Hours: 207.5 Fees: $119,843.34)**

37.    During the Compensation Period, Dechert performed a variety of services relating to intellectual property issues including the following:

- Dechert professionals reviewed certain of the Debtors' inventions to prepare a patent prosecution strategy related thereto.

38.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 207.5 hours to the Depositions, project category resulting in time charges of $119,843.34.

**B160:  Retention Issues and Fee Applications (Hours: 472.1 Fees: $143,510.66)**

39.    During the Compensation Period, Dechert performed a variety of services relating to its retention and compensation including the following:

- Dechert professionals corresponded electronically and participated in conference calls with the Debtors and/or various of their professionals regarding, among other things, fee applications.

- Dechert professionals drafted, reviewed, and revised numerous documents including: (a) the Third and Fourth Supplemental Declarations in Support of the Application; (b) *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965] (the "**Notice of Increased Patent Fees**"); and (c) various Fee Statements.

- Dechert professionals prepared the monthly fee statements for the months of February, March, April, and May.

- Dechert professionals reviewed time entries for confidentiality issues and adherence to the Guidelines.

14

40.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 472.1 hours to Retention Issues resulting in time charges of $143,510.66, which includes 459.7 hours to Fee Application issues resulting in time charges of $138,007.23.

41.    Dechert submits that for the reasons set forth above, the professional services rendered by Dechert on behalf of the Debtors during the Compensation Period were necessary and reasonable.

### EXPENSES INCURRED BY DECHERT

42.    Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed in a chapter 11 case.  11 U.S.C. § 330. Accordingly, Dechert seeks reimbursement of expenses incurred in rendering services during the Compensation Period.

43.    In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Guidelines, Dechert maintains the following policies with respect to expenses for which reimbursement is sought:

a.    <u>Internal Duplicating</u>  -  Charged at $0.10 per page, based upon the cost of duplicating services, which varies due to volume;

b.    <u>Outside Duplicating</u> - Outside duplicating by third parties is charged at the actual cost billed to Dechert;

d.    <u>Computer Research Charges</u>  - Westlaw and Lexis legal research is charged according to an equation based on the flat fee charged to Dechert (approximately 50% of the estimated cost for hourly rate for Lexis; approximately 70% of the estimated cost for hourly rate for Westlaw);

g.    <u>Delivery Services</u>  -  Dechert's practice is to charge postal, overnight delivery, and courier services at actual cost;

i.    <u>Meals</u>  -  In accordance with the Guidelines, meals charged to the Debtors were either associated with (i) out-of-town travel and are limited to $40

15

per person; or (ii) attorneys working at least two hours beyond their normal workday on matters concerning the chapter 11 cases and are limited to $20 per person.

## AUTHORITY FOR
## ALLOWANCE OF COMPENSATION

44.     Bankruptcy Code section 331 allows a bankruptcy court to authorize interim compensation for "[a] trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title… not more than once every 120 days after an order for relief in a case under this title…."

45.     Section 330 of the Bankruptcy Code authorizes the bankruptcy court to award a trustee, examiner, ombudsman or professional employed pursuant to 11 U.S.C. § 327 reasonable compensation for services and reimbursement of expenses.  Specifically, section 330 of the Bankruptcy Code provides that:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award to . . . a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual necessary expenses. . . .

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

A.      the time spent on such services;

B.      the rates charged for such services;

C.      whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, a case under this title;

16

D.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

E.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in case other than cases under this title.

46.     As set forth below, under the standards set forth in Bankruptcy Code section 330(a), Dechert's representation of the Debtors warrants payment of its fees and reimbursement of its expenses.

a.      <u>Time and labor required</u>:  As stated above, Dechert has expended 5,438.6 hours in its representation of the Debtors during the Compensation Period, with a blended average billable rate of $769.26 per hour for all timekeepers. All of the time spent by Dechert in these cases was necessary and appropriate and benefited the Debtors, their estates, their creditors, and other parties-in-interest.  Dechert submits that it has represented the Debtors in an efficient, timely, and cost-effective manner.

b.      <u>Novelty and difficulty of questions presented</u>:  The issues attended to by Dechert in connection with these cases were novel, complex, and difficult, requiring thorough attention and substantial firm resources.

c.      <u>Skill required to perform legal services properly</u>:  The experience, knowledge, and expertise of the various Dechert professionals and paraprofessionals representing the Debtors in these cases have facilitated and expedited the results achieved.  Providing mass tort products liability litigation advice to large debtors is a specialized practice that requires attorneys, such as the Dechert attorneys involved in this matter, with substantial expertise in various areas of the law.

d.      <u>Preclusion of other employment</u>:  Dechert's representation of the Debtors in these cases took time and effort that was not therefore available to provide comparable services to other current or potential clients.

e.      <u>Customary fee paid for such legal services</u>:  The hourly rates charged by Dechert for the services performed in these cases are discounted from the hourly rates regularly charged by Dechert in other similar matters and representations, and Dechert submits that they are discounted to the customary charges of other professionals and paraprofessionals with similar degrees of skill and expertise.

17

f.    <u>Experience, reputation, and ability of attorney</u>:  Dechert believes that its professionals who performed services for the Debtors have an excellent reputation for their skill, quality, integrity, and ability in bankruptcy and other matters.  Dechert's professionals have significant experience in matters of this nature and regularly represent companies similar to the Debtors in various matters in and out of bankruptcy.

g.    <u>Allowance in similar cases</u>:  Dechert asserts that the fees and expenses for which it seeks compensation and reimbursement are lower than the compensation sought and allowed in similar cases for similar services rendered and results obtained by Dechert and by its peer law firms.

## **BUDGET AND STAFFING PLAN**

47.    In accordance with the Retention Order and the Interim Compensation Order, attached hereto as <u>Exhibit F</u> are the budget and staffing plans that Dechert provided to the Debtors for the Compensation Period.

## **QUESTIONS REQUIRED BY U.S. TRUSTEE GUIDELINES**

48.    Dechert responds to the questions presented by the U.S. Trustee Guidelines Appendix B as follows:

<u>Question</u>:  Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

<u>Answer</u>: Yes.  The Debtors enjoy discounted rates as well volume discounts as described in the Retention Application.

<u>Question</u>:  If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

<u>Answer</u>:  The fees sought by Dechert in the Second Interim Fee Application for the Compensation Period are not more than 10% higher than the fees budgeted pursuant to the budget provided by Dechert to the Debtors.  In fact, the total amount in fees sought by Dechert for the Compensation Period is $2,020,589 to $2,425,589 less than the amount originally budgeted by Debtors.

<u>Question</u>:  Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

18

Answer:  No.

Question:  Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Answer:  Yes.  This application includes 459.7 hours with a value of $138,007.23 incurred in connection with the preparation of Fee Applications and fee statements for the Debtors.[4]

Question:  Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Answer:  No. Dechert's review of its time records is done to ensure compliance with the Guidelines although in the process of such review, attention is given to confidential information.

Question:  If the fee application includes any rate increases since retention:

Did your client review and approve those rate increases in advance?

Answer:  Yes.  This application includes rate increases for the Patent Services as described in the Notice of Increased Patent Fees.

Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Answer:  No. The client did not agree to accept future rate increases.

## NOTICE

49.    Notice of this Application will be provided to: (a) the entities on the

Master Service List (as defined in the Case Management Order and available on the Debtors'

---

[4]    A breakdown of the fees attributed to time spent on retention and fee applications since the Petition date reflecting the aggregate discount can be found at **Exhibit H**.

case website at https://restructuring.primeclerk.com/purduepharma) and (b) any party that has

requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

## <u>CONCLUSION</u>

WHEREFORE, Dechert respectfully requests that the Court enter an order (i) that

allowance be made to it in the sum of $3,434,410.64 as the fair and reasonable value of its actual

and necessary professional services rendered by Dechert to the Debtors during the Compensation

Period; (ii) that allowance be made to it in the sum of $408,656.15 as reimbursement for

Dechert's actual and necessary expenses incurred during the Compensation Period; (iii)

authorizing and directing the Debtors to pay to Dechert the unpaid balance of all approved fees

and expenses; (iv) holding that the allowance of such interim compensation for professional

services rendered and reimbursement of actual necessary expenses incurred be without prejudice

to Dechert's right to seek additional compensation for services performed and expenses incurred

during the Compensation Period which were not processed at the time of this Application; and

(v) granting Dechert such other and further relief as it deems just and proper.

Dated: July 15, 2020                          Respectfully submitted,

                                              */s/ Shmuel Vasser*
                                              Shmuel Vasser
                                              DECHERT LLP
                                              1095 Avenue of the Americas
                                              New York, New York 10036
                                              Telephone:  (212) 698-3500
                                              Facsimile:  (212) 698-3599

                                              *Attorneys for Debtors and Debtors in Possession*

21

## **EXHIBIT A**

**Retention Order**

17264035

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

**In re:**

**PURDUE PHARMA L.P.,** *et al.*,

Debtors.[1]

**Chapter 11**

**Case No. 19-23649 (RDD)**

**(Jointly Administered)**

---

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
### OF DECHERT LLP AS SPECIAL COUNSEL
### FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application, dated November 5, 2019 (ECF No. 424) (the "**Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 327(e) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to retain Dechert as special counsel to the Debtors with respect to the Dechert Services, effective *nunc pro tunc* to the Petition Date, all as more fully set forth in the Application; and upon the declaration of Hayden Coleman, a partner of the law firm of Dechert LLP, attached to the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]    Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Application.

Application as **Exhibit B** (the "**Coleman Declaration**"), and this Court having jurisdiction to

consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-

(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.); and consideration of the Application and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and notice of the Application having been provided to the Notice

Parties, such notice having been adequate and appropriate under the circumstances, and it

appearing that no other or further notice need be provided; and there being no objections to the

requested relief; and upon the record of the hearing held by the Court on the Application on

November 19, 2019; and it appearing that Dechert does not hold or represent an adverse interest

to the Debtors or their estates, is disinterested under section 101(14) of the Bankruptcy Code, and

that its retention to perform the Dechert Services is necessary and in the best interests of the

estates; now, therefore,

**IT IS HEREBY ORDERED THAT**:

1.      The Application is granted as set forth herein.

2.      Pursuant to sections 327(e) and 328(a) of the Bankruptcy Code the Debtors

are authorized to retain Dechert as special counsel to the Debtors with respect to the Dechert

Services, effective *nunc pro tunc* to the Petition Date, and Dechert is authorized to perform the

Dechert Services described in the Application; provided, that Dechert shall use best efforts not to

duplicate services of any of the Debtors' other professionals.

3.      Dechert shall apply for compensation for professional services rendered and

reimbursement of expenses incurred in connection with the Dechert Services in compliance with

sections 330 and 331 of the Bankruptcy Code, as the case may be, and the applicable Bankruptcy

Rules, Local Rules, and fee and expense guidelines and orders of the Court.

4.      Dechert shall provide at least ten (10) business days' notice to the Debtors, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases before implementing any increases in the rates set forth in the Application for professionals providing the Dechert Services, and such notice shall be filed with the Court.

5.      Notice of the Application as provided therein is good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by such notice.

6.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Application.

8.      In the event of any inconsistency between the Application and this Order, the terms of this Order shall govern.

9.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:    November 21, 2019
          White Plains, New York


                                        /s/ Robert D. Drain
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Certification**

17264035

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**STATEMENT PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016(b)**

I, Shmuel Vasser, Esquire, hereby declare the following under penalty of perjury:

1.      I am a Partner in the applicant firm, Dechert LLP, and have been admitted to the bar of New York since 1991.

2.      I have personally performed some of the legal services rendered by Dechert LLP as counsel for the Debtors, and I am familiar with all other work performed on behalf of the Debtors by the lawyers and paraprofessionals in the firm.

3.      I have read the foregoing interim fee application of Dechert, attorneys for Debtors, for the Compensation Period (the "Fee Application"). To the best of my knowledge, information and belief, the statements contained in the Fee Application are true and correct. In addition, I believe that the Fee Application complies with Local Bankruptcy Rule 2016-1 and the

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

17264035

*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases.*

4.     In connection therewith, I hereby certify that:

a.  to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Fee Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

b.  except to the extent disclosed in the Fee Application, the fees and disbursements sought in the Fee Application are billed at rates customarily employed by Dechert and generally accepted by Dechert's clients. In addition, none of the professionals seeking compensation varied their hourly rate based on the geographic location of these chapter 11 cases;

c.  the total fees sought do not exceed the total fees budgeted in the budget and staffing plan;

d.  Dechert did not increase hourly rates for the Litigation Services from those disclosed in the Retention Application during the Interim Compensation Period; however, Dechert increased the fees for the Patent Services as described in *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965] (the "**Notice of Increased Patent Fees**");

e.  Dechert is seeking compensation with respect to the approximately 459.7 hours with a value of $138,007.23 in fees spent reviewing or revising time records, preparing, reviewing, and revising invoices, monthly fee statements, and Dechert's retention application. Dechert concurrently revises its invoices for compliance with the Guidelines and in the process of doing so also redacts privileged and confidential information as appropriate. Accordingly Dechert did not spend any additional time associated with the redaction of privileged or confidential information;

f.  in providing a reimbursable expense, Dechert does not make a profit on that expense, whether the service is performed by Dechert in-house or through a third party;

g.  in accordance with Bankruptcy Rule 2016(a) and section 504 of the Bankruptcy Code, no agreement or understanding exists between Dechert and any other person for the sharing of compensation to be received in connection with the above cases except as authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules;

2

    h.   all services for which compensation is sought were professional services on behalf of Debtors and not on behalf of any other person; and

    i.   the U.S. Trustee, the Debtors, and all parties required under the Interim Compensation Order have been provided with a statement of the fees and disbursements for each month within the Compensation Period.

5.    I hereby certify under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 15, 2020        Respectfully submitted,

*/s/ Shmuel Vasser*
Shmuel Vasser
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
shmuel.vasser@dechert.com

*Attorneys for Debtors and Debtors in Possession*

3

**<u>EXHIBIT C</u>**

**Summary of Fees Requested by Timekeeper**

**Compensation by Individual for Debtors for Litigation Services**

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Sheila L Birnbaum | Partner | Litigation | 1965 | 1,350.00 | 583.60 | 787,860.00 |
| Sheila L Birnbaum* | Partner | Litigation | 1965 | 675.00 | 4.00 | 2,700.00 |
| Timothy C. Blank | Partner | Litigation | 1986 | 1,085.00 | 2.20 | 2,387.00 |
| Mark S. Cheffo | Partner | Litigation | 1991 | 1,250.00 | 26.50 | 33,125.00 |
| Hayden A. Coleman | Partner | Litigation | 1997 | 915.00 | 456.00 | 417,240.00 |
| Mara C. Cusker Gonzalez | Partner | Litigation | 2006 | 890.00 | 69.70 | 62,033.00 |
| Hope S. Freiwald | Partner | Litigation | 1990 | 1,090.00 | 228.90 | 249,501.00 |
| Nathan E. Hoffman | Partner | Litigation | 2000 | 915.00 | 4.60 | 4,209.00 |
| Sara B. Roitman | Partner | Litigation | 2013 | 890.00 | 531.10 | 472,679.00 |
| Christina Sarchio | Partner | Litigation | 1997 | 1,085.00 | 1.10 | 1,193.50 |
| Erik W. Snapp | Partner | Litigation | 1995 | 915.00 | 191.80 | 175,497.00 |
| Shmuel Vasser | Partner | Restructuring/ Reorganization | 1991 | 915.00 | 24.10 | 22,051.50 |
| Friedrich-Wilhelm Sachse | Partner | Litigation | 1999 | 915.00 | 3.90 | 3,568.50 |
| Bert L. Wolff | Partner | Litigation | 1985 | 915.00 | 46.40 | 42,456.00 |
| Christopher R. Boisvert | Counsel | Litigation | 2009 | 890.00 | 9.70 | 8,633.00 |
| Lindsey B. Cohan | Counsel | Litigation | 2010 | 855.00 | 38.10 | 32,575.50 |
| Danielle Gentin Stock | Counsel | Litigation | 2000 | 890.00 | 490.10 | 436,189.00 |
| Danielle Gentin Stock* | Counsel | Litigation | 2000 | 445.00 | 1.40 | 623.00 |
| Paul A. LaFata | Counsel | Litigation | 2008 | 890.00 | 199.10 | 177,199.00 |
| Jae H. Lee | Counsel | Litigation | 2006 | 890.00 | 1.10 | 979.00 |
| Jonathan S. Tam | Counsel | Litigation | 2009 | 890.00 | 6.60 | 5,874.00 |
| Michelle K. Yeary | Counsel | Litigation | 1996 | 890.00 | 43.60 | 38,804.00 |
| Meghan Agostinelli | Associate | Litigation | 2019 | 565.00 | 44.20 | 24,973.00 |
| Tomas E. Barron | Associate | Litigation | 2020 | 490.00 | 24.90 | 12,201.00 |
| Noah Becker | Associate | Litigation | 2019 | 490.00 | 96.50 | 47,285.00 |
| Alyssa C. Clark | Associate | Litigation | 2018 | 640.00 | 67.60 | 43,264.00 |
| Alyssa C. Clark* | Associate | Litigation | 2018 | 320.00 | 5.60 | 1,792.00 |
| Alison S. Cooney | Associate | Litigation | 2013 | 825.00 | 161.60 | 133,320.00 |

---

[1]    As described in the Retention Application, these billing rates reflect voluntary discounts of 1% to 24% for senior partners, 6% to 13% for junior partners, 1% to 5% for counsel, and 5% to 10% for associates.

17264035

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Daniel Goldberg-Gradess | Associate | Litigation | 2019 | 565.00 | 10.20 | 5,763.00 |
| Justin M. Kadoura | Associate | Litigation | 2017 | 640.00 | 0.50 | 320.00 |
| Cara Kaplan | Associate | Restructuring/ Reorganization | 2019 | 565.00 | 147.00 | 83,055.00 |
| Mary H. Kim | Associate | Litigation | 2015 | 770.00 | 108.70 | 83,699.00 |
| Sarah Magen | Associate | Litigation | 2013 | 840.00 | 133.00 | 111,720.00 |
| Benjamin F. McAnaney | Associate | Litigation | 2008 | 855.00 | 5.20 | 4,446.00 |
| Jenna C. Newmark | Associate | Litigation | 2012 | 855.00 | 42.00 | 35,910.00 |
| Nicolas A. Novy | Associate | Litigation | 2014 | 725.00 | 4.30 | 3,117.50 |
| Amisha R. Patel | Associate | Litigation | 2011 | 855.00 | 2.70 | 2,308.50 |
| Gabrielle N. Piper[2] | Associate | Litigation | 2020 | 545.00 | 26.10 | 14,224.50 |
| Gabrielle N. Piper | Associate | Litigation | 2020 | 490.00 | 31.70 | 15,533.00 |
| Rachel M. Rosenberg | Associate | Litigation | 2016 | 725.00 | 14.40 | 10,440.00 |
| Sharon Turret | Associate | Litigation | 2019 | 565.00 | 175.80 | 99,327.00 |
| Katherine E. Unger Davis | Associate | Litigation | 2011 | 855.00 | 6.60 | 5,643.00 |
| Cory A. Ward | Associate | Litigation | 2015 | 770.00 | 47.40 | 36,498.00 |
| Rebecca E. Weissman | Associate | Litigation | 2018 | 565.00 | 17.40 | 9,831.00 |
| Theodore E. Yale | Associate | Litigation | 2017 | 640.00 | 0.50 | 320.00 |
| Lindsay N. Zanello | Associate | Litigation | 2016 | 770.00 | 48.50 | 37,345.00 |
| Hassan Ahmed | Staff Attorney | Litigation | 2004 | 365.00 | 81.40 | 29,711.00 |
| Nicholas C. Dean | Staff Attorney | Litigation | 2017 | 365.00 | 28.70 | 10,475.50 |
| Alvin C. Knight | Staff Attorney | Litigation | 1998 | 365.00 | 162.50 | 59,312.50 |
| Matthew B. Tate | Staff Attorney | Litigation | 1998 | 365.00 | 1.90 | 693.50 |
| Antonella Capobianco-Ranallo | Legal Assistant | Litigation | N/A | 200.00 | 98.00 | 19,600.00 |
| Danielle A. Torrice | Legal Assistant | Litigation | N/A | 200.00 | 85.60 | 17,120.00 |
| Jefferson Holder | Legal Assistant | Litigation | N/A | 200.00 | 7.90 | 1,580.00 |
| Kurt Vinson | Legal Assistant | Litigation | N/A | 200.00 | 1.60 | 320.00 |
| Matthew B. Stone | Legal Assistant | Restructuring/ Reorganization | N/A | 200.00 | 295.30 | 59,060.00 |
| Rebecca Haneiko | Legal Assistant | Litigation | N/A | 200.00 | 3.60 | 720.00 |

---

[2]    Dechert billed 26.1 hours at rate of $545 for Gabrielle N. Piper when it should have been $490. The difference in amount (taking into account the aggregate fee discount) is $1,177.11, which has been deducted from the total amount requested in this Fee Application.

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Sam Rosen | Legal Assistant | Litigation | N/A | 200.00 | 139.50 | 27,900.00 |
| Sarah Taylor | Legal Assistant | Litigation | N/A | 200.00 | 120.20 | 24,040.00 |
| Denise Neris | Project Assistant | Litigation | N/A | 155.00 | 9.70 | 1,503.50 |
| Claudia Cohen | Research Analyst | Research Services | N/A | 185.00 | 5.00 | 925.00 |
| Brian K. Deaver | Research Analyst | Research Services | N/A | 185.00 | 0.10 | 18.50 |
| Robyn M. McAllen Broughton | Research Analyst | Research Services | N/A | 185.00 | 3.80 | 703.00 |
| Janet Peros | Lead Research Analyst | Research Services | N/A | 185.00 | 0.20 | 37.00 |
| Steven B. Singer | Research Assistant | Research Services | N/A | 185.00 | 0.10 | 18.50 |
| **Total** | | | | | **5,231.10** | **$4,053,450.50** |
| **18% Volume Discount[3]** | | | | | | **($729,621.09)** |
| **Discounted Total** | | | | | | **$3,323,829.41** |

*Non-working travel billed at 50%.

---

[3]    The Retention Application described a 12% discount for aggregate fees from $1 to $5 million; however, the correct discount for these aggregate fees is 18%, as reflected herein.

3

## Compensation by Individual for Debtors for Patent Services

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate (Including Changes)[4] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Samuel B. Abrams | Partner | Intellectual Property | 1981 | 885.00 | 68.20 | 60,357.00 |
| Blaine M. Hackman | Associate | Intellectual Property | 2014 | 740.00 | 51.90 | 38,406.00 |
| Seth E. Snyder | Patent Agent | Intellectual Property | N/A | 585.00 | 21.50 | 12,577.50 |
| Todd Macklin | Patent Agent | Intellectual Property | N/A | 375.00 | 1.10 | 412.50 |
| Donna Marks | Legal Assistant | Intellectual Property | N/A | 305.00 | 12.80 | 3,904.00 |
| Sara Levy | Legal Assistant | Intellectual Property | N/A | 160.00 | 1.70 | 272.00 |
| Sherrice T. Breland | Legal Assistant | Intellectual Property | N/A | 285.00 | 50.30 | 14,335.50 |
| **Total** | | | | | **207.50** | **$130,264.50** |
| **8% Volume Discount[5]** | | | | | | **($10,421.16)** |
| **Discounted Total** | | | | | | **$119,843.34** |

---

[4]    As described in Notice of Increased Patent Fees, these billing rates reflect voluntary discounts of 10% to 28% for partners, 19% for counsel, 22% for associates, 0% to 18% for paraprofessionals, and 7% to 10% for patent agents.

[5]    As described in the Notice of Increased Patent Fees, Dechert will apply an 8% discount for aggregate fees and this aggregate discount will apply to all timekeepers.

## **EXHIBIT D**

**Summary of Fees Requested by Project Category**

17264035

**Summary of Fees Requested by Project Category**

| Code | Project Category | Total Hours | Discounted Fees |
|------|------------------|------------:|----------------:|
| B110 | Case Administration | 13.10 | 5,739.18 |
| B160 | Fee/Employment Applications[1] | 472.10 | 143,510.66 |
| B165 | Budgeting (case) | 3.40 | 1,772.02 |
| B195 | Non-Working Travel | 11.00 | 4,194.30 |
| B310 | Claims Administration and Objections | 0.50 | 446.90 |
| L110 | Fact Investigation/Development | 538.50 | 228,973.52 |
| L120 | Analysis/Strategy | 2,626.50 | 2,073,978.85 |
| L130 | Experts/Consultants | 55.90 | 33,949.23 |
| L140 | Document/File Management | 184.20 | 30,450.29 |
| L150 | Budgeting | 4.80 | 3,503.04 |
| L160 | Settlement/Non-Binding ADR | 515.90 | 375,414.45 |
| L190 | Other Case Assessment, Development and Administration | 303.20 | 180,070.77 |
| L210 | Pleadings | 107.80 | 27,995.21 |
| L220 | Preliminary Injunctions/Provisional Remedies | 4.10 | 3,006.53 |
| L230 | Court Mandated Conferences | 7.90 | 4,248.42 |
| L250 | Other Written Motions and Submissions | 4.80 | 2,569.06 |
| L310 | Written Discovery | 90.60 | 66,714.38 |
| L320 | Document Production | 18.50 | 7,404.19 |
| L330 | Depositions | 22.30 | 14,905.14 |
| L340 | Expert Discovery | 42.10 | 29,401.92 |
| L390 | Other Discovery | 113.10 | 22,388.46 |
| L410 | Fact Witnesses | 59.60 | 44,717.88 |
| L420 | Expert Witnesses | 10.20 | 4,725.66 |
| L430 | Written Motions and Submissions | 12.80 | 7,654.29 |
| L440 | Other Trial Preparation and Support | 1.20 | 875.76 |
| L510 | Appellate Motions and Submissions | 0.90 | 669.12 |
| L520 | Appellate Briefs | 6.10 | 4,550.18 |
| P260 | Intellectual Property[2] | 207.50 | 119,843.34 |
|  |  |  |  |
| **Total** |  | **5,438.60** | **$3,443,672.75** |

---

[1]   This category includes time spent preparing Dechert's Retention Application materials, including reviewing Dechert's connections with potential parties-in-interest in the Debtors' chapter 11 cases, as well as fee-related disclosures.

[2]   The time and fees for the P260 Intellectual Property category vary slightly from the previously filed fee statement, as some of the time was re-categorized for clarify in this Fee Application.

17264035

## **EXHIBIT E**

**Summary of Expense Reimbursement Requested by Category**

17264035

## Expense Summary for Debtors

| Expenses Category | Total Expenses |
|---|---|
| Consultants Fees[1] | 376,681.05 |
| Court Costs | 595.50 |
| Courtlink Search | 54.16 |
| Docket Fees | 13.70 |
| Federal Express Charges | 224.90 |
| Filing Fees and Related | 6,092.20 |
| Lexis/Legal Research | 653.09 |
| Meals | 738.01 |
| Pacer Research Fees | 1,402.90 |
| Postage | 31.90 |
| Research Fees | 1,010.65 |
| Staff Overtime Charges - Secretary | 15.00 |
| Taxi Fare | 1,412.65 |
| Telephone | 15.00 |
| Train Fare | 705.50 |
| Transcripts | 7,359.12 |
| Video and Electronic Expenses | 6,401.63 |
| Westlaw Search Fees | 5,277.14 |
|  |  |
| **Total** | **$408,684.10** |

---

[1]    These consultant fees represent fees incurred from Ankura Consulting Group, LLC, a firm that manages a document hosting platform necessary for Dechert to provide legal services to the Debtors.

17264035

# **EXHIBIT F**

## **Budget and Staffing Plan**

17264035

**MASS TORT LITIGATION BUDGET**

**Scenario: Bankruptcy in September; No trial; Cases, including government cases and cases again related parties, stayed**

| Category | Feb-20 | Mar-20 | Apr-20 | May-20 |
|---|---|---|---|---|
| Base Rate | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| Additional Trial Fees | | | | |
| Appeal Fees | | | | |
| Subtotals | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| | | | | |
| Before Discount | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| Discount | $312,500 | $312,500 | $312,500 | $312,500 |
| **After Discount** | **$1,250,000** | **$1,250,000** | **$1,250,000** | **$1,250,000** |

**BANKRUPTCY RELATED BUDGET**
**FEBRUARY 2020 – APRIL 2020[1]**

| CATEGORY | ESTIMATED FEES |
|---|---|
| CASE ADMINISTRATION | $75,000-$150,000 |
| RELIEF FROM STAY/ADEQUATE PROTECTION | $20,000-$40,000 |
| FEE/EMPLOYMENT APPLICATIONS | $150,000-$250,000 |
| BUDGETING | $10,000-$20,000 |
| CLAIMS ADMINISTRATION AND OBJECTIONS | $100,000-$200,000 |
| GENERAL BANKRUPTCY ADVICE/OPINIONS | $100,000-$200,000 |

---

[1]    The Bankruptcy Related Budget was mistakenly prepared to cover fees through April 30, 2020, rather than through May 31, 2020; however, this mistake is of no consequence, because Dechert's fees within these categories are either well below or within the estimated fees.

17264035

**DECHERT STAFFING PLAN**
**FEBRUARY 2020 – APRIL 2020**

| Staffing Plan | | |
|---|---|---|
| Years of Experience for Timekeeper (based on law school graduation) | Number of Timekeepers Expected to Work on the Matter During the Budget Period | Average Hourly Rate |
| 15+ Years | 22 | $969.09 |
| 8-14 Years | 17 | $830.88 |
| 4-7 Years | 9 | $770.56 |
| 0-3 Years | 15 | $590.33 |
| Paralegal | 16 | $212.81 |

2

## **EXHIBIT G**

**Blended Rate Schedule**

17264035

**Blended Rate Schedule**

Dechert's hourly rates for bankruptcy services are comparable to the hourly rates charged in complex chapter 11 cases by comparably skilled bankruptcy attorneys.  In addition, Dechert's hourly rates for bankruptcy services are comparable to the rates charged by the Firm, and by comparably skilled practitioners in other firms, for complex corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  By way of example, Dechert's blended hourly rates for attorneys and paraprofessionals in the Financial Services, the Finance and Real Estate, and the White Collar, Securities, and Complex Commercial Litigation practice groups of the Firm for the prior calendar year were as set forth below.  Dechert believes that the services performed by those sections of the Firm are comparable to the services performed professionals who performed services during the Compensation Period.  Also included below is blended hourly rate information for the past calendar year for all sections of the Firm.

| Category of Timekeeper | Blended Hourly Rate[1] | | |
| --- | --- | --- | --- |
| | **Billed** In comparable practice areas[2] for 2/1/2020 - 5/31/2020 | **Billed** Firm-wide for 2/1/2020 - 5/31/2020 | **Billed** This Application |
| **Partner** | $1,030 | $1,069 | $1,042.26 |
| **Counsel** | $849 | $836 | $887.52 |
| **Associate** | $659 | $659 | $675.46 |
| **Paralegal** | $264 | $259 | $206.80 |
| **Aggregated:** | $742 | $759 | $794.00 |

1 - All columns reflect US information only
2 - Comparable practice areas reflect PLMT, TIS, FRE, and FSG information only

17264035

## **EXHIBIT H**

**Time and Fees Spent on Retention/Fee Applications**

17264035

**Time and Fees Spent on Retention/Fee Applications**

| Fee Application | Hours | Amount | Aggregate Discount | New Total Amount | % of Total Fees Sought |
|---|---|---|---|---|---|
| Second (October 2019) | 1.5 | $892.50 | 20% (178.50) | $714.00 | 0.04% |
| Third (November 2019) | 85.5 | $29,035.50 | 20% (5807.10) | $23,228.40 | 3.36% |
| Fourth (December 2019) | 182.2 | $60,949.50 | 20% (12,189.90) | $48,759.60 | 7.23% |
| Fifth (January 2020) | 54.8 | $12,136.50 | 18% (2,184.57) | $9,951.93 | 1.41% |
| Sixth (February 2020) | 104.3 | $39,254.50 | 18% (7,065.81) | $32,188.69 | 3.90% |
| Seventh (March 2020) | 157.1 | $63,035.00 | 18% (11,346.30) | $51,688.70 | 7.32% |
| Eighth (April 2020) | 125.7 | $45,867.50 | 18% (8,256.15) | $37,611.35 | 3.68% |
| Ninth (May 2020) | 72.6 | $20,144.50 | 18% (3,626.01) | $16,518.49 | 1.85% |

17264035