AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al*., | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SUMMARY COVER SHEET TO THE SECOND INTERIM FEE APPLICATION OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., ET AL.,**
**FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF**
**FEBRUARY 1, 2020 THROUGH AND INCLUDING MAY 31, 2020**

In accordance with the Local Bankruptcy Rules for the Southern District of New York,

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of

Unsecured Creditors of Purdue Pharma L.P. and its affiliated debtors and debtors in possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp.  (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc.  (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc.  (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc.  (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

submits this summary (the "Summary") of fees and expenses sought as actual, reasonable and necessary in the fee application to which the Summary is attached (the "Application")[2] for the period from February 1, 2020 through and including May 31, 2020 (the "Compensation Period").

Akin Gump submits the Application as its second interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order").

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.* |
| Petition Date: | September 15, 2019 |
| Retention Date: | November 21, 2019, *nunc pro tunc* to September 26, 2019 |
| Prior Applications: | 1 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | February 1, 2020 through and including May 31, 2020 |
| Amount of Compensation Incurred during the Compensation Period: | $17,661,808.50 |
| Voluntary Reduction Related to Political Contributions Motions:[3] | ($98,329.50) |

---

[2] Capitalized terms used but not defined in the Summary shall have the meanings ascribed to such terms in the Application.

[3] On July 10, 2020, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Clarifying the Debtors' Obligations with Regard to Political Contributions* [ECF No. 1373] (the "Political Contributions Motion"). The Committee feels strongly about the contents and importance of the Political Contribution Motion. Nevertheless, the Committee is cognizant of the magnitude of the total dollar amount at issue. Therefore,

| | |
|---|---|
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $17,563,479.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $236,045.74 |
| Total Compensation and Expenses Requested for the Compensation Period: | $17,799,524.74 |

### Summary of Past Requests for Compensation and Prior Payments

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $9,712,505.25[4] |
| Total Expenses Approved by Interim Order to Date: | $165,733.29 |
| Total Allowed Compensation Paid to Date: | $9,712,505.25 |
| Total Allowed Expenses Paid to Date: | $165,733.29 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees for the period from February 1, 2020 through and including May 31, 2020):[5] | $10,801,163.60 |

---

and in an effort to obviate any misguided argument that the fees incurred in connection with the Political Contributions Motion are significant in relation to the nominal dollar amount at stake, Akin Gump has informed the Committee that it has taken a voluntary reduction in respect of its Eighth Monthly Fee Statement to account for the fees incurred in connection with the Political Contributions Motion. Specifically, the fees incurred by Akin Gump from the afternoon of Tuesday, July 7 (when it first found out about the Debtors' postpetition political contributions) through the evening of Friday, July 10 (when the Committee filed the Political Contributions Motion) total $98,329.50. This amount was deducted from the compensation request set forth in the Eighth Monthly Fee Statement to offset the amount that will be billed in connection with Akin Gump's Monthly Fee Statement for July and will not be subject to any future payment request by Akin Gump. For the avoidance of any doubt, however, the Committee believes that any argument in respect of the Political Contributions Motion focused on the total dollar figure of the Debtors' postpetition political contributions misconstrues the importance of the relief requested thereby.

[4] On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements. Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner, and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020. The "Total Compensation Approved by Interim Order to Date" ($9,712,505.25) reflects these reductions.

[5] As of the date of this Application, Akin Gump has filed monthly fee statements for each month comprising the Compensation Period. Pursuant to the Interim Compensation Order, Akin Gump has received 80% of the fees requested and 100% of the expenses requested by each such Monthly Fee Statement, other than for the month of May, for which it has not yet received compensation for any fees or reimbursement of expenses. Akin Gump anticipates that it will receive 80% of the fees requested and 100% of the expenses requested in its May Monthly Fee Statement

| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses for the period from February 1, 2020 through and including May 31, 2020): | $169,486.24 |
|---|---|
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $10,970,694.84 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $6,828,874.90 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $991,723.34[6] |

### Summary of Rates and Other Related Information for the Compensation Period

| Blended Rate in this Application for All Attorneys: | $909.61 |
|---|---|
| Blended Rate in this Application for All Timekeepers: | $823.76 |
| Number of Timekeepers Included in this Application: | 116 (83 attorneys; 33 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 16 |

---

before the hearing on this Application.  If such fees and expenses are paid as anticipated, as of the date of the hearing on this Application:  (i) the total compensation sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $14,050,783.20; (ii) the total expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $235,034.97; (iii) the total compensation and expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $14,364,481.77; and (iv) the total compensation and expenses sought in this Application not yet paid will be $3,533,372.47.

[6] In addition to the $98,329.50 voluntary reduction on account of the Political Contributions Motion, prior to filing its Monthly Fee Statements for the Compensation Period, Akin Gump voluntarily reduced its fees by the aggregate amount of $866,524.00 and voluntarily reduced its expenses by $26,869.84.  In the Chapter 11 Cases to date, Akin Gump has voluntarily reduced its fees by the aggregate amount of $1,452,860.75, which amount includes, in addition to the above amounts for the Compensation Period: (i) $362,267.00 for fee reductions applied prior to the filing of each Monthly Fee Statement for the First Interim Fee Period; and (ii) a $125,739.75 voluntary fee reduction for the First Interim Fee Period pursuant to an agreement with the Fee Examiner.  Akin Gump does not and will not seek payment of the foregoing fees and expenses in this Application or any other application.

Increase in Rates Since Date of Retention:       1[7]

Interim or Final Application:                     Interim

---

[7] Akin Gump increased its rates on January 1, 2020, consistent with its customary practice and as disclosed in the Akin Retention Application.

## SUMMARY OF MONTHLY FEE STATEMENTS IN THE COMPENSATION PERIOD

| Docket Number | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid | Total Unpaid |
|---|---|---|---|---|---|---|
| 1105 | 2/1/20 – 2/29-20 | $3,265,295.50 | $51,460.31 | $2,612,236.40 | $51,460.31 | $653,059.10 |
| 1165 | 3/1/20 – 3/31/20 | $4,898,163.00 | $52,477.20 | $3,918,530.40 | $52,477.20 | $979,632.60 |
| 1276 | 4/1/20 – 4/30/20 | $5,337,996.00 | $65,548.73 | $4,270,396.80 | $65,548.73 | $1,067,599.20 |
| 1382 | 5/1/20 – 5/31/20 | $4,062,024.50 | $66,559.50 | $0.00 | $0.00 | $4,128,584.00 |
| **Totals** | | **$17,563,479.00** | **$236,045.74** | **$10,801,163.60** | **$169,486.24** | **$6,828,874.90** |

Summary of Any Objections to Monthly Fee Statements: None

Compensation and Expenses Sought in This Application Not Yet Paid: $6,828,274.90

## COMPENSATION BY PROFESSIONAL
### FEBRUARY 1, 2020 THROUGH AND INCLUDING MAY 31, 2020

| Partner | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,225.00 | 855.30 | $1,047,742.50 |
| Paul Butler | Litigation | 1991 | $1,175.00 | 87.70 | $103,047.50 |
| Dean Chapman | Litigation | 2009 | $1,225.00 | 57.00 | $69,825.00 |
| Julius Chen | Litigation | 2010 | $1,015.00 | 19.10 | $19,386.50 |
| Olivier De Moor | Tax | 2009 | $1,175.00 | 80.70 | $94,822.50 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,595.00 | 6.20 | $9,889.00 |
| Sophie Donnithorne-Tait | Tax | 2006 | $1,115.00 | 8.70 | $9,700.50 |
| Shawn Hanson | Litigation | 1983 | $1,135.00 | 40.80 | $46,308.00 |
| Mitchell Hurley | Litigation | 1997 | $1,595.00 | 873.80 | $1,393,711.00 |
| Howard Jacobson | Litigation | 1979 | $1,240.00 | 101.10 | $125,364.00 |
| Stephen Kho | International Trade | 1998 | $1,135.00 | 101.40 | $115,089.00 |
| Jeffrey Kochian | Corporate | 2000 | $1,360.00 | 84.30 | $114,648.00 |
| Eli Miller | Corporate | 2009 | $1,075.00 | 36.70 | $39,452.50 |
| Allison Miller | Corporate | 2001 | $1,350.00 | 67.80 | $91,530.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,595.00 | 725.40 | $1,157,013.00 |
| Steven Ross | Litigation | 1976 | $1,300.00 | 6.00 | $7,800.00 |
| Corey Roush | Litigation | 1997 | $1,135.00 | 106.20 | $120,537.00 |
| Robert Salcido | Health | 1989 | $1,155.00 | 111.40 | $128,667.00 |

| Name | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Seth Slotkin | Tax | 1996 | $1,195.00 | 49.60 | $59,272.00 |
| Joseph Sorkin | Litigation | 2008 | $1,350.00 | 200.20 | $270,270.00 |
| James Tysee | Litigation | 2008 | $1,075.00 | 26.20 | $28,165.00 |
| David Vondle | Intellectual Property | 2002 | $1,115.00 | 287.90 | $321,008.50 |
| Jacqueline Yecies | Litigation | 2009 | $1,115.00 | 241.10 | $268,826.50 |
| **Partner Total:** | | | | **4,174.60** | **$5,642,075.00** |
| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
| Kenneth Alderfer | Tax | 1986 | $1,110.00 | 8.70 | $9,657.00 |
| Jenny Arlington | Litigation | 2010 | $1,005.00 | 9.40 | $9,447.00 |
| Christin Carey | Public Law & Policy | 2012 | $885.00 | 5.40 | $4,779.00 |
| Sophie Chu | Corporate | 2007 | $1,025.00 | 117.30 | $120,232.50 |
| Sharon Davidov | Tax | 2013 | $1,010.00 | 202.50 | $204,525.00 |
| Eugene Elder | Health | 1990 | $975.00 | 248.20 | $241,995.00 |
| Elizabeth Harris | Tax | 1987 | $1,065.00 | 246.00 | $261,990.00 |
| Katie Hyman | Litigation | 2009 | $950.00 | 17.90 | $17,005.00 |
| Kristi Kirksey | Tax | 2014 | $985.00 | 117.60 | $115,836.00 |
| Jo-Ellyn Klein | Health | 1998 | $965.00 | 5.30 | $5,114.50 |
| Angeline Koo | Litigation | 2005 | $1,000.00 | 101.90 | $101,900.00 |
| Serena Lee | Tax | 2013 | $985.00 | 12.30 | $12,115.50 |
| Erika Leon | Corporate | 2013 | $985.00 | 322.50 | $317,662.50 |

| | | | | | |
|---|---|---|---|---|---|
| Edan Lisovicz | Financial Restructuring | 2013 | $975.00 | 623.00 | $607,425.00 |
| Clayton Matheson | Litigation | 2010 | $950.00 | 154.40 | $146,680.00 |
| William Mongan | Litigation | 2011 | $1,005.00 | 83.80 | $84,219.00 |
| John Murphy | Litigation | 2011 | $1,025.00 | 394.80 | $404,670.00 |
| Nicholas Petree | Litigation | 2012 | $910.00 | 201.80 | $183,638.00 |
| Katherine Porter | Litigation | 2011 | $1,025.00 | 763.30 | $782,382.50 |
| Holli Pryor-Baze | Litigation | 1999 | $965.00 | 54.60 | $52,689.00 |
| Jillie Richards | Litigation | 2007 | $850.00 | 652.40 | $554,540.00 |
| M. Todd Tuten | Public Law & Policy | N/A | $1,035.00 | 23.00 | $23,805.00 |
| Richard R. Williams, Jr. | Litigation | 2014 | $960.00 | 376.10 | $361,056.00 |
| Dennis Windscheffel | Litigation | 2004 | $965.00 | 230.70 | $222,625.50 |
| Sophie Shih-Yu Chu | Corporate | 2007 | $1,025.00 | 294.30 | $301,657.50 |
| **Senior Counsel & Counsel Total:** | | | | **5,267.20** | **$5,147,646.50** |

| Associate | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Sudhana Bajracharya | Health | 2018 | $650.00 | 70.90 | $46,085.00 |
| Brooks Barker | Financial Restructuring | 2018 | $775.00 | 425.00 | $329,375.00 |
| Rachel Bayefsky | Litigation | 2016 | $820.00 | 27.50 | $22,550.00 |
| Megi Belegu | Litigation | Not yet admitted | $565.00 | 401.60 | $226,904.00 |
| David Bethea | Litigation | 2015 | $895.00 | 32.60 | $29,177.00 |
| Alexandra Boyd | Litigation | 2019 | $575.00 | 72.00 | $41,400.00 |

| Marc Caplan | Tax | 2019 | $675.00 | 171.10 | $115,492.50 |
|---|---|---|---|---|---|
| Claude Chase | International Trade | 2010 | $820.00 | 18.00 | $14,760.00 |
| Richard Cochrane | Litigation | 2019 | $535.00 | 22.30 | $11,930.50 |
| Jess Coleman | Financial Restructuring | Not yet admitted | $615.00 | 458.60 | $282,039.00 |
| Richard D'Amato | Litigation | 2017 | $810.00 | 296.90 | $240,489.00 |
| Alyx Eva | Litigation | 2019 | $535.00 | 198.20 | $106,037.00 |
| Hayley Evans | Public Law & Policy | 2019 | $535.00 | 97.00 | $51,895.00 |
| Sanzana Faroque | Corporate | 2020 | $565.00 | 178.60 | $100,909.00 |
| Michael Fires | Litigation | 2018 | $575.00 | 75.00 | $43,125.00 |
| Jason Gangwer | Litigation | 2017 | $650.00 | 415.30 | $269,945.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $615.00 | 204.70 | $125,890.50 |
| Patrick Glackin | Litigation | 2019 | $650.00 | 283.20 | $184,080.00 |
| Nina Goepfert | Litigation | 2018 | $725.00 | 327.90 | $237,727.50 |
| Sohrab Hajarian | Intellectual Property | 2016 | $535.00 | 21.50 | $11,502.50 |
| Christina Hightower | Litigation | 2017 | $650.00 | 174.20 | $113,230.00 |
| Anthony Hilbert | Corporate | 2019 | $535.00 | 154.80 | $82,818.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $535.00 | 359.20 | $192,172.00 |
| Rachel Kurzweil | Health | 2017 | $735.00 | 5.80 | $4,263.00 |
| McKenzie Miller | Litigation | 2020 | $535.00 | 731.80 | $391,513.00 |
| Oluwaremilekun Ojurongbe | Litigation | 2020 | $535.00 | 180.80 | $96,728.00 |
| Colin Phillips | Intellectual Property | 2017 | $650.00 | 289.10 | $187,915.00 |

x

| Name | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Jennifer Poon | Litigation | 2016 | $810.00 | 697.60 | $565,056.00 |
| Julia Rinker | Corporate | 2020 | $565.00 | 150.60 | $85,089.00 |
| Theodore James Salwen | Financial Restructuring | 2017 | $775.00 | 621.30 | $481,507.50 |
| Sangita Sahasranaman | Tax | 2019 | $675.00 | 104.50 | $70,537.50 |
| Anthony Sierra | Intellectual Property | 2019 | $535.00 | 294.70 | $157,664.50 |
| Jason Sison | Corporate | 2016 | $810.00 | 298.10 | $241,461.00 |
| Kaitlyn Tongalson | Litigation | 2017 | $810.00 | 263.20 | $213,192.00 |
| Izabelle Tully | Litigation | Not yet admitted | $565.00 | 541.20 | $305,778.00 |
| **Associate Total:** | | | | **8,664.80** | **$5,680,238.00** |

| Staff Attorneys & Paraprofessionals | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Ganna Anisimova | Law Clerk, Litigation | N/A | $340.00 | 550.60 | $187,204.00 |
| Brian Bevins | Research & Info Services | N/A | $285.00 | 5.20 | $1,482.00 |
| Neil Bowden-Brown | EDiscovery | N/A | $355.00 | 11.90 | $4,224.50 |
| Marisa Browndorf | Paralegal, Intellectual Property | N/A | $330.00 | 96.00 | $31,680.00 |
| Frank Castro | Paralegal, Litigation | N/A | $350.00 | 126.80 | $44,380.00 |
| Daniel Chau | EDiscovery | N/A | $370.00 | 289.40 | $107,078.00 |
| Kimberly La Croix | EDiscovery | N/A | $370.00 | 128.50 | $47,545.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $330.00 | 281.70 | $92,961.00 |
| Cheryle Edmonds | Paralegal, Litigation | N/A | $350.00 | 98.40 | $34,440.00 |
| Dariya Fadeeva | Analyst, International Trade | N/A | $340.00 | 261.70 | $88,978.00 |

| Michael Ginsborg | Research & Info Services | N/A | $285.00 | 18.60 | $5,301.00 |
|---|---|---|---|---|---|
| Helen Hanks | Paralegal, Tax | N/A | $330.00 | 24.10 | $7,953.00 |
| Adria Hicks | Paralegal, Litigation | N/A | $350.00 | 18.50 | $6,475.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $415.00 | 5.10 | $2,116.50 |
| Arah Joseph | Research & Info Services | N/A | $285.00 | 8.50 | $2,422.50 |
| Amy Laaraj | Paralegal, Litigation | N/A | $350.00 | 473.50 | $165,725.00 |
| Kim La Croix | EDiscovery | N/A | $370.00 | 21.40 | $7,918.00 |
| Melanie Langford | Paralegal, Intellectual Property | N/A | $260.00 | 72.40 | $18,824.00 |
| Sophia Levy | Paralegal, Financial Restructuring | N/A | $245.00 | 30.30 | $7,423.50 |
| Toni McBride | Practice Attorney, Tax | N/A | $390.00 | 11.40 | $4,446.00 |
| Michael Morse | EDiscovery | N/A | $370.00 | 26.20 | $9,694.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | $515.00 | 286.00 | $147,290.00 |
| Lauren O'Brien | Consultant, Public Law & Policy | N/A | $625.00 | 80.80 | $50,500.00 |
| Ellen Pierce | Practice Attorney, Litigation | N/A | $420.00 | 48.90 | $20,538.00 |
| Jaime Rodriguez | Research & Info Services | N/A | $285.00 | 5.80 | $1,653.00 |
| Refugio Acker-Ramirez | Research & Info Services | N/A | $285.00 | 5.30 | $1,510.50 |
| Camille Schoonmaker | Paralegal, Litigation | N/A | $215.00 | 170.00 | $36,550.00 |
| Risa Slavin | Paralegal, Litigation | N/A | $390.00 | 21.20 | $8,268.00 |
| Kiichi Take | Paralegal, Intellectual Property | N/A | $330.00 | 9.50 | $3,135.00 |

| | | | | | |
|---|---|---|---|---|---|
| Carrie Varner | Paralegal, Litigation | N/A | $350.00 | 73.10 | $25,585.00 |
| Bennett Walls | Paralegal, Litigation | N/A | $215.00 | 44.80 | $9,632.00 |
| Karen Woodhouse | Practice Attorney, Litigation | N/A | $400.00 | 7.40 | $2,960.00 |
| Doris Yen | Research & Info Services | N/A | $285.00 | 20.90 | $5,956.50 |
| **Staff Attorneys and Paraprofessional Total:** | | | | **3,333.90** | **$1,191,849.00** |
| Total Hours Billed / Fees Incurred: | | | | 21,440.50 | $17,661,808.50 |
| Voluntary Reduction Related to Political Contributions Motion: | | | | | ($98,329.50) |
| **Total Fees Requested:** | | | | | **$17,563,479.00** |

## TOTAL FEES FOR THE COMPENSATION PERIOD

| Professionals | Blended Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|
| Partners | $1,351.52 | 4,174.6 | $5,642,075.00 |
| Senior Counsel & Counsel | $977.30 | 5,267.2 | $5,147,646.50 |
| Associates | $655.55 | 8,664.8 | $5,653,595.00 |
| Staff Attorneys & Paraprofessionals | $357.49 | 3,333.9 | $1,191,849.00 |
| **Blended Attorney Rate** | $909.61 | | |
| **Blended Rate for All Timekeepers** | $823.76 | | |
| Total Hours Billed / Fees Incurred: | | 21,440.5 | $17,661,808.50 |
| Voluntary Reduction Related to Political Contributions Motion: | | | ($98,329.50) |
| **Total Fees Requested:** | | | **$17,563,479.00** |

## COMPENSATION BY PROJECT CATEGORY
## FEBRUARY 1, 2020 THROUGH AND INCLUDING MAY 31, 2020

| Task Code | Matter | Total Hours Billed | Total Value($) |
|---|---|---|---|
| 2 | General Case Administration | 69.70 | $51,807.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 598.50 | $453,566.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 71.10 | $65,368.50 |
| 6 | Retention of Professionals | 123.80 | $134,117.50 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 1,265.40 | $1,338,453.50 |
| 8 | Hearings and Court Matters/Court Preparation | 234.50 | $281,181.00 |
| 9 | Financial Reports and Analysis | 2.80 | $3,035.00 |
| 11 | Executory Contract/Lease Issues | 47.40 | $49,294.00 |
| 12 | General Claims Analysis/Claims Objections | 1,748.00 | $1,752,514.00 |
| 13 | Analysis of Pre-Petition Transactions | 13,765.60 | $10,180,235.00 |
| 14 | Insurance Issues | 453.90 | $449,490.50 |
| 16 | Automatic Stay Issues | 175.80 | $159,619.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 236.90 | $236,986.00 |
| 18 | Tax Issues | 639.20 | $592,323.50 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 352.30 | $270,718.50 |
| 21 | Exclusivity | 0.30 | $232.50 |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 249.50 | $187,790.50 |
| 25 | Travel Time | 3.00 | $3,770.00 |
| 28 | General Corporate Matters | 26.10 | $12,605.50 |
| 31 | Business Operations | 320.50 | $342,456.50 |
| 32 | Intellectual Property | 311.20 | $330,348.50 |
| 33 | Sackler Rule 2004 Discovery | 745.00 | $765,895.50 |
| Total Hours Billed / Fees Incurred: | | 21,440.50 | $17,661,808.50 |
| Voluntary Reduction Related to Political Contributions: | | | ($98,329.50) |
| **Total Fees Requested:** | | | **$17,563,479.00** |

**EXPENSE SUMMARY**
**FEBRUARY 1, 2020 THROUGH AND INCLUDING MAY 31, 2020**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $19,476.70 |
| Color Copy | $8,143.75 |
| Computerized Legal Research - Courtlink - In Contract 50% | $471.93 |
| Computerized Legal Research - Other | $2,703.98 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $76,158.11 |
| Computerized Legal Research - Westlaw - Out of Contract | $415.74 |
| Courier Service/Messenger Service - Off Site | $893.63 |
| Document Retrieval | $2,354.00 |
| Dues - Miscellaneous Dues | $50.00 |
| Duplication - In House | $388.80 |
| File History | $598.50 |
| Filing Fees | $600.00 |
| Imagine/Computerized Litigation Support | $2,906.25 |
| Local Transportation - Overtime | $305.52 |
| Meals - 100% | $3,116.25 |
| Meals - Business | $36.52 |
| Meals - Overtime | $489.20 |
| Miscellaneous | $100.04 |
| Overtime - Admin Staff | $819.65 |
| Postage | $13.25 |
| Professional Fees - Legal | $102,150.50 |
| Refund Expenses | $5,447.60 |
| Research | $248.88 |
| Telephone - Long Distance | $789.00 |
| Transcripts | $3,922.50 |
| Travel - Airfare | $838.42 |
| Travel - Ground Transportation | $1,037.28 |
| Travel - Lodging (Hotel, Apt, Other) | $694.51 |
| Travel - Parking | $0.00 |
| Travel - Telephone & Fax | $39.95 |
| Travel - Train fare | $835.28 |
| **Total Expenses Requested:** | **$236,045.74** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SECOND INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD
LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF PURDUE PHARMA L.P., ET AL., FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
OF FEBRUARY 1, 2020 THROUGH AND INCLUDING MAY 31, 2020**

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Purdue Pharma, L.P. and its affiliated debtors and

debtors in possession (collectively, the "Debtors"), hereby submits its second application (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

"Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services rendered to the Committee for the period of February 1, 2020 through and including May 31, 2020 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith. In support of this Application, Akin Gump submits the declaration of Arik Preis, a partner at Akin Gump, which is attached hereto as **Exhibit A** and incorporated by reference into this Application. In further support of this Application, Akin Gump respectfully states as follows.

## INTRODUCTION

1.      By this Application, Akin Gump seeks: (i) interim allowance of compensation for the professional services rendered by Akin Gump during the Compensation Period in the amount of $17,563,479.00, representing 18,098.50 hours of professional services and 3,342.0 hours of paraprofessional and other non-legal services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in the amount of $236,045.74.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in*

*Larger Chapter 11 Cases*, 78 Fed. Reg. 36248, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Committee has been given the opportunity to review this Application and the Co-Chairs (as defined below) have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. Approval of this Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

**A.      The Debtors' Chapter 11 Cases**

7.      On September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On September 26, 2019 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated September 27, 2019 [ECF No. 131].  The Committee currently comprises nine members and two

*ex officio* members.[2]  The Blue Cross and Blue Shield Association and Ryan Hampton serve as co-chairs of the Committee (the "Co-Chairs").

## B.    Retention of Akin Gump

9.      On the Formation Date, the Committee selected Akin Gump as its legal counsel. On November 5, 2019, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Purdue Pharma L.P. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel, Nunc Pro Tunc to September 26, 2019* [ECF No. 421] (the "Akin Retention Application"), which was granted by an order of this Court dated November 21, 2019 [ECF No. 522] (the "Akin Retention Order").[3]

10.     The Akin Retention Order authorizes the Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to September 26, 2019, all as contemplated by the Akin Retention Application.   The Akin Retention Order further authorizes Akin Gump to be

---

[2] The Committee comprises the following members:  (i) The Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services L.L.C. and CaremarkPCS Health L.L.C.; (iii) Cheryl Juaire; (iv) Kara Trainor; (v) LTS Lohmann Therapy Systems Corporation; (vi) Pension Benefit Guaranty Corporation; (vii) Ryan Hampton; (viii) Walter Lee Salmons; and (ix) West Boca Medical Center, plus three *ex officio* members, Cameron County, Texas on behalf of the Multi-State Governmental Entities Group and the Cheyenne and Arapaho Tribes, on behalf of certain Native American Tribes and Native American-affiliated creditors, and Thornton Township High School District 205, on behalf of certain public school districts.

[3] The Committee selected Bayard, P.A ("Bayard") to serve as its "efficiency" counsel, Province, Inc. ("Province") to serve as its financial advisor, Jefferies LLC ("Jefferies") to serve as its investment banker, Kurtzman Carson Consultants LLC ("KCC") to serve as its information agent, KPMG LLP ("KPMG") to serve as joint tax consultant to the Committee and the Debtors and Bedell Cristin Jersey Partnership ("Bedell Cristin") to serve as special foreign counsel on September 29, 2019, October 1, 2019 and October 4, 2019, November 1, 2019, December 23, 2019, and February 27, 2020, respectively.  Orders authorizing the retention of Bayard [ECF No. 523], Province [ECF No. 524], Jefferies [ECF No. 526], KCC [ECF No. 527] were entered on November 21, 2019, and orders authorizing the retention of KPMG and Bedell Cristin were entered on February 24, 2020 [ECF No. 867] and June 26, 2020 [ECF No. 1310], respectively.  As disclosed in the *Notice of Change of Firm and Substitution of Counsel*, dated March 6, 2020 [ECF No. 900], Justin Alberto, who was serving as the primary attorney for the Committee at Bayard, resigned as a director at Bayard and became a member of the law firm of Cole Schotz P.C. ("Cole Schotz").  The Court entered an order authorizing the Committee's retention of Cole Schotz [ECF No. 1084] on April 24, 2020.

4

compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

## C.   Appointment of Fee Examiner

11.    On April 8, 2020, the Court entered the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327*, dated April 8, 2020 [ECF No. 1023] appointing David M. Klauder, Esq. as fee examiner (the "Fee Examiner").  On May 26, 2020, the Court authorized the retention of Bielli & Klauder, LLC as counsel to the Fee Examiner.  *See Order Authorizing the Retention and Employment of Bielli & Klauder, LLC as Counsel to the Fee Examiner, Nunc Pro Tunc to the Appointment Date*, dated May 26, 2020 [ECF No. 1182].

## D.   Monthly Fee Statements

12.    On January 10, 2020, Akin Gump filed and served the *First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 26, 2019 Through October 31, 2019*, dated January 10, 2020 [ECF No. 736] (the "First Monthly Fee Statement"),[4] pursuant to which Akin Gump sought payment of (i) $2,139,642.40 (80% of $2,674,553.00) as compensation for professional services rendered and (ii) $44,481.58 for reimbursement of expenses.  Akin Gump did not receive any objections to its First Monthly Fee Statement and received payment in respect thereof on February 10, 2020.

13.    On February 7, 2020, Akin Gump filed and served the *Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

---

[4] A copy of the First Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzIzMjY4&id2=0.

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 Through November 30, 2019*, dated February 7, 2020 [ECF No. 812] (the "Second Monthly Fee Statement"),[5] pursuant to which Akin Gump sought payment of (i) 1,758,302.40 (80% of $2,197,878.00) as compensation for professional services rendered and (ii) $28,963.85 for reimbursement of expenses.  Akin Gump did not receive any objections to the Second Monthly Fee Statement and received payment in respect thereof on March 2, 2020.

14.    On March 10, 2020, Akin Gump filed and served the *Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2019 Through December 31, 2019* [ECF No. 904] (the "Third Monthly Fee Statement"),[6] pursuant to which Akin Gump sought payment of (i) $1,491,816.00 (80% of $1,864,770.00) as compensation for professional services rendered and (ii) $23,812.68 for reimbursement of expenses.  Akin Gump did not receive any objections to the Third Monthly Fee Statement and received payment in respect thereof on March 30, 2020.

15.    On March 13, 2020, Akin Gump filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 Through January 31, 2019* [ECF No. 926] (the "Fourth Monthly Fee Statement"),[7] pursuant to which Akin Gump sought payment of (i) $2,480,835.20 (80% of $3,101,044.00) as compensation for professional services rendered and (ii) $68,475.18 for reimbursement of

---

[5] A copy of the Second Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzI4MTk2&id2=0.

[6] A copy of the Third Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM2OTgz&id2=0.

[7] A copy of the Fourth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4MzE3&id2=0.

expenses. Akin Gump did not receive any objections to the Fourth Monthly Fee Statement and received payment in respect thereof on April 2, 2020.

16.     On March 16, 2020, Akin Gump filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.*, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of September 26, 2019 Through and Including January 31, 2020* [ECF No. 947] (the "<u>First Interim Fee Application</u>"),[8] pursuant to which Akin Gump sought allowance of (i) $9,838,245.00 as compensation for professional services rendered and (ii) $165,733.29 for reimbursement of expenses. On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts[9] pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements. Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020.

17.     On April 29, 2020, Akin Gump filed and served the *Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2020 Through February 29, 2020* [ECF No. 1105] (the "<u>Fifth Monthly Fee Statement</u>"),[10]

---

[8] A copy of the First Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4Nzk0&id2=0.

[9] Pursuant to Paragraph 2(vi) of the Interim Compensation Order, the payment received by Akin Gump for compensation allowed in connection with the First through Fourth Monthly Fee Statements was subject to a 20% holdback.

[10] A copy of the Fifth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzcyNzgx&id2=0.

pursuant to which Akin Gump sought payment of (i) $2,612,236.40 (80% of $3,265,295.50) as compensation for professional services rendered and (ii) $51,460.31 for reimbursement of expenses. Akin Gump did not receive any objections to the Fifth Monthly Fee Statement and received payment in respect thereof on May 18, 2020.

18.     On May 18, 2020, Akin Gump filed and served the *Sixth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2020 Through March 31, 2020* [ECF No. 1165] (the "Sixth Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $3,918,530.40 (80% of $4,898,163.00) as compensation for professional services rendered and (ii) $52,477.20 for reimbursement of expenses. Akin Gump did not receive any objections to the Sixth Monthly Fee Statement and received payment in respect thereof on June 8, 2020.

19.     On June 15, 2020, Akin Gump filed and served the *Seventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2020 Through April 30, 2020* [ECF No. 1276 ] (the "Seventh Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $4,270,396.80 (80% of $5,337,996.00) as compensation for professional services rendered and (ii) $65,548.73 for reimbursement of expenses. Akin Gump did not receive any objections to the Seventh Monthly Fee Statement and received payment in respect thereof on July 6, 2020.

---

[11] A copy of the Sixth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=Mzk4MjYx&id2=0.
[12] A copy of the Seventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDIzNTky&id2=0.

20.     On July 14, 2020, Akin Gump filed and served the *Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of May 1, 2020 Through May 31, 2020* [ECF No. 1382] (the "Eighth Monthly Fee Statement," and together with the First Monthly Fee Statement, Second Monthly Fee Statement, Third Monthly Fee Statement, Fourth Monthly Fee Statement, Fifth Monthly Fee Statement, Sixth Monthly Fee Statement and Seventh Monthly Fee Statement, the "Monthly Fee Statements"),[13] pursuant to which Akin Gump sought payment of (i) $3,249,619.60 (80% of $4,062,024.50) as compensation for professional services rendered and (ii) $66,559.50 for reimbursement of expenses.  As of the filing of this Application, Akin Gump has not received any objections to the Eighth Monthly Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

21.     By this Application, Akin Gump requests allowance of interim compensation for professional services rendered to the Committee during the Compensation Period in the amount of $17,563,479.00 and expense reimbursements of $236,045.74.[14]  During the Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 21,440.5 hours for which compensation is sought.

---

[13] A copy of the Eighth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDc1OTk3&id2=0.

[14] During the Compensation Period, Akin Gump voluntarily reduced its fees and expenses by the following amounts: (i) $98,329.50 on account of the Political Contributions Motion; (ii) $866,524.00 for other voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Second Interim Fee Period; and (iii) $26,869.84 for expense reductions applied prior to the filing of the applicable Monthly Fee Statement.  In the Chapter 11 Cases to date, Akin Gump has voluntarily reduced its fees by the aggregate amount of $1,452,860.75, which amount includes, in addition to the above amounts for the Compensation Period: (i) $362,267.00 for fee reductions applied prior to the filing of each Monthly Fee Statement for the First Interim Fee Period; and (ii) a $125,739.75 voluntary fee reduction for the First Interim Fee Period pursuant to an agreement with the Fee Examiner.  Akin Gump does not and will not seek payment of the foregoing fees and expenses in this Application or any other application.

22.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

23.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code against budgeted fees and hours is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services for the Committee during the Compensation Period have been filed and served with the Monthly Fee Statements in accordance with the Interim Compensation Order.

24.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

25.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN GUMP DURING THE COMPENSATION PERIOD

26.    The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Committee and commensurate with the complexity and significance of the matter.  Moreover, the nature of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Committee's objectives and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

27.    The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

28.    Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the matters and issues that Akin Gump was required to address during the Compensation Period.

A.      **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|:---:|:---:|
| 69.70 | $51,807.50 |

29.     This category includes time spent by Akin Gump professionals and paraprofessionals performing various general administrative tasks necessary to the Committee's involvement in the Chapter 11 Cases, including among other things: (i) maintaining service and distribution lists; (ii) monitoring the docket for these Chapter 11 Cases to track filings and to remain apprised of critical dates; (iii) reviewing and analyzing pleadings and other documents filed by the Debtors and other parties in interest; (iv) ensuring that the appropriate parties are notified of filed documents, relevant objection and response deadlines, hearing dates and other critical dates; (v) communicating with the members of the Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters; and (iv) performing other necessary general administrative tasks.

30.     During the Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss when various motions and applications would be filed and the type of information the Committee would require to analyze each motion or application properly and in a timely manner.  Akin Gump generally also consulted with Cole Schotz, Province and/or Jefferies multiple times each day with respect to documents and other information received from the Debtors, their representatives and other parties in interest.  In addition, Akin Gump professionals and paraprofessionals monitored the docket for the Chapter 11 Cases to remain apprised of all critical matters.  For each significant filing, Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto.  Further, in connection with motions and applications filed by the Debtors and

other parties in the Chapter 11 Cases, Akin Gump professionals and paraprofessionals analyzed and conducted diligence with respect to the subject matter of the motion or application to determine, among other things, the effect the relief requested would have on the Debtors, their creditors and the administration of the Chapter 11 Cases.  Akin Gump's analysis and diligence efforts included: (i) reviewing underlying documentation and litigation related to the applicable motion or application; (ii) meeting with or holding conference calls with representatives of the Debtors and third parties in an effort to achieve amicable resolutions of the issues involved; and (iii) working with the Committee's other advisors to ensure that the Committee understood the effects the requested relief would have on the Debtors' estates and creditors.  Due to Akin Gump's experience counseling official committees of unsecured creditors, Akin Gump believes it was able to address all issues relating to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.      Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 598.50 | $453,566.00 |

31.      This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the preparation of Akin Gump's monthly fee statements and fee applications.  During the Compensation Period, these efforts included ensuring that the schedules attached to the Second, Third, Fourth, Fifth and Sixth Monthly Fee Statements complied with the Fee Guidelines, and that such schedules did not contain information that was privileged, confidential or subject to attorney work product protection.  Akin Gump professionals and paraprofessionals also prepared, filed and served the First Interim Fee Application and began to prepare the Seventh and Eighth Monthly Fee Statements and this Application, each of which was filed after the close of the Compensation Period.  To minimize costs in connection with this time-

13

intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Monthly Fee Statements and schedules for the First Interim Fee Application, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

32.    This category also includes time spent by Akin Gump attorneys estimating fees incurred with respect to discovery from the Sacklers and various related entities pursuant to Bankruptcy Rule 2004, as ordered by the Court. *See Amended Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties*, dated April 2, 2020 [ECF No. 1008] ("the "2004 Order").

**C.    Analysis of Other Professionals' Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 71.10 | $65,368.50 |

33.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements submitted to the Court by other estate-compensated professionals.  Akin Gump reviewed such fee statements to ensure that such professionals operated in accordance with their individual mandates and sought reasonable compensation and reimbursement of expenses in connection with their roles in the Chapter 11 Cases.  This category also includes time spent assisting the Committee's other professionals in reviewing, finalizing and filing their respective monthly fee statements and interim fee applications.

**D.    Retention of Professionals (Task Code 6)**

| Total Hours | Fees |
|---|---|
| 123.80 | $134,117.50 |

34.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with various professional retention matters including, among other

things: (i) assisting KPMG [ECF No. 815], Bedell Cristin [ECF No. 1244] and Cole Schotz [ECF No. 1013] with the preparation and filing of their retention applications; and (ii) analyzing the applications for the proposed retention of Cornerstone Research, Inc. ("Cornerstone") [ECF No. 1150], as advisor to the Debtors, and Bielli & Klauder LLC, as counsel to the Fee Examiner [ECF No. 1135].

35.    Prior to the Compensation Period, in the interest of minimizing the expenses of the Chapter 11 Cases, the Committee proposed that the Committee and the Debtors jointly retain and employ KPMG to serve as tax consultants with respect to the disposition of the Debtors' assets and certain potential transactions involving the Debtors' non-debtor affiliates, including the potential sale of any companies owned or controlled by shareholders of the Debtors (the "IACs") as contemplated under the Debtors' proposed settlement framework (the "Settlement Framework").[15]    As such, this category includes time spent by Akin Gump professionals negotiating with the Debtors and KPMG regarding the terms of KPMG's retention, as well as assisting in the preparation and filing of a joint application to retain KPMG, which was filed during the Compensation Period.  *See Application for Order Authorizing Employment and Retention of KPMG LLP as Tax Consultants to the Debtors and the Official Committee of Unsecured Creditors Nunc Pro Tunc to December 23, 2019*, dated February 7, 2020 [ECF No. 815].  The Court approved the joint retention of KPMG by the *Order Authorizing the Employment and Retention of KPMG as Tax Consultant for the Debtors and the Official Committee of Unsecured Creditors Nunc Pro Tunc to December 23, 2019*, dated February 24, 2020 [ECF No. 867].

---

[15] The Settlement Framework is described in detail in the *Summary Term Sheet* among the Debtors and the CAHC. *See Noticing of Filing of Term Sheet with Ad Hoc Committee*, dated October 8, 2019 [ECF No. 257].

36.    This category also includes time spent by Akin Gump professionals in connection with the Committee's engagement of Bedell Cristin as special foreign counsel to provide advice regarding certain issues arising under Jersey law, which may be of substantial importance to the Committee's evaluation of the Settlement Framework.  After discussions with the Debtors during the Compensation Period, the Committee concluded that it would be neither practical nor cost-effective to retain Jersey counsel jointly with the Debtors.[16]  Thus, Akin Gump professionals assisted the Committee in engaging and retaining Bedell Cristin as special foreign counsel, including assisting Bedell Cristin with the drafting of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing Retention and Employment of Bedell Cristin Jersey Partnership as Special Foreign Counsel, Nunc Pro Tunc to February 27, 2020*, dated June 9, 2020 [ECF No. 1244], which was filed shortly after the close of the Compensation Period.

37.    Finally, this category includes time spent by Akin Gump professionals on matters related to the Debtors' retention of Cornerstone.  Shortly after the Debtors filed an application to retain Cornerstone [ECF No. 1150] (the "Cornerstone Retention Application"), certain members of the Committee raised concerns regarding Cornerstone's role in prior litigation involving the Debtors.  Akin Gump professionals engaged in discussions with the Debtors regarding Cornerstone's role and analyzed publicly-available work product to which Cornerstone had contributed in other cases in order to assess potential biases that may have arisen as a result of Cornerstone's experience in other opioid litigation.  Following these efforts by Akin Gump

---

[16] The Debtors have separately retained Mourant Ozannes Jersey Partnership to advise them on issues of Jersey law pursuant to the Court's order authorizing the Debtors to employ professionals in the ordinary course of business.  *See Order Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business Nunc Pro Tunc to the Petition Date* [ECF No. 548]; *Notice of Filing of Supplemental Ordinary Course Professionals List* [ECF No. 820].

professionals, the Committee determined not to object to the Cornerstone Retention Application, which the Court granted after the end of the Compensation Period [ECF No. 1255].

### E.    Creditor Committee Matters/Meetings (Task Code 7)

| Total Hours | Fees |
|---|---|
| 1,265.40 | $1,338,453.50 |

38.    This category includes time spent by Akin Gump professionals and paraprofessionals: (i) preparing for and participating in meetings and conference calls with the Committee as a whole or with individual members of the Committee, including bi-weekly conference calls with the full Committee; (ii) communicating with the Committee's other advisors on a day-to-day basis regarding pending matters and case strategy; (iii) attending meetings with various parties in interest on the Committee's behalf; (iv) responding to inquiries from individual unsecured creditors; and (v) attending to other general Committee matters.

39.    The Committee played a very active[17] role in the Chapter 11 Cases during the Compensation Period, and Akin Gump, together with the Committee's other advisors, held no fewer than 29 telephonic meetings with the full Committee during the Compensation Period, in addition to numerous telephonic conferences with individual Committee members and subcommittees.  Prior to each biweekly telephonic meeting with the full Committee, Akin Gump professionals reviewed pending matters, prepared an agenda describing issues requiring the Committee's attention and coordinated with the Committee's other advisors regarding such matters.  In addition, Akin Gump professionals prepared and/or assisted the Committee's other advisors in preparing detailed memoranda and presentations for the Committee addressing pertinent matters in the Chapter 11 Cases.  During such meetings, Akin Gump assisted the

---

[17] *See* Transcript of June 3, 2020 Hearing 95:3–5 (THE COURT: "You have an *active*, well-informed and diligent official creditors committee that represents everyone.") (emphasis added).

Committee in fulfilling its statutory duty to exercise informed judgment regarding the various issues arising in the Chapter 11 Cases and formulating positions with respect to significant matters. Akin Gump also sent daily email updates to the Committee to ensure the Committee remained apprised of relevant matters.

40.    Akin Gump professionals and paraprofessionals devoted a significant number of hours to these tasks during the Compensation Period in order to ensure that the Committee was prepared to make informed decisions with respect to significant case issues. Although such tasks do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated the Committee's participation in the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

41.    In view of the numerous issues requiring the Committee's attention in these cases, and in an effort to conserve estate resources, the Committee organized subcommittees to address certain specific issues and work streams arising the Chapter 11 Cases. For example, the Committee formed a subcommittee to address the creation of the $200 million emergency relief fund (the "ERF" and such subcommittee, the "ERF Subcommittee") contemplated by the *Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated October 11, 2019 [ECF No. 291] (as subsequently amended by the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated November 20, 2019 [ECF No. 518] (the "Case Stipulation")). As such, this category includes time spent by Akin Gump professionals in connection with the ERF, including among other things: (i) researching and analyzing potential legal and organizational structures for the ERF; (ii) soliciting views from the Debtors and various creditor constituencies regarding effective uses of ERF funds to address the opioid crisis; (iii) drafting and revising the Committee's

proposal for the ERF, including related documents and schedules; (iv) reviewing and analyzing proposals for the ERF prepared by the Debtors and other creditor constituencies, including the ad hoc committee of governmental and other contingent litigation claimants (the "CAHC") and the Ad Hoc Group of Non-Consenting States (the "Non-Consenting States") and communicating with the full Committee, the ERF Subcommittee and individual members thereof regarding such proposals; and (v) engaging in discussions and negotiations with the Debtors and other creditor constituencies regarding such proposals. In connection with the foregoing, Akin Gump professionals held numerous telephonic meetings with the full ERF Subcommittee and organized calls with members thereof and other stakeholders in an effort to narrow open issues and reach consensus on an ERF proposal supported by the Debtors and all of their creditors.

42. After exchanging various ERF proposals with the Debtors, the CAHC and the Non-Consenting States, it became apparent that the parties had starkly different views with regard to critical issues including acceptable uses of ERF funds, governance, oversight of the grant-making process and the use existing state and local governmental infrastructures to distribute ERF funds. Despite the fact that the ERF, as originally conceived by the Committee, was intended to provide immediate, life-saving relief to non-creditor organizations and charities that were severely underfunded in comparison to existing opioid relief programs, the Committee was willing to make numerous, significant concessions in order to accommodate concerns voiced by the CAHC and the Non-Consenting States. Unfortunately, however, the Committee was unable to reach agreement with the CAHC and the Non-Consenting with regard to critical issues such as governance, the types of programs and organizations that would be eligible to receive ERF funding and control over the ultimate disposition of ERF funds.

43.     In an attempt to bridge this impasse, the Committee participated in an "all-hands"
meeting attended by advisors and representatives of the Committee, the Debtors, the CAHC, the
Non-Consenting States and the United States Department of Justice on February 27, 2020 and a
chambers conference with the Court on March 30, 2020.    Although the parties exchanged
additional rounds of proposals intended to achieve a compromise and address certain concerns
raised by the Court, the parties' differences proved too great.    To avoid potential litigation and the
strain that further efforts to advance the ERF would place on the ongoing Mediation (as defined
below), the Committee, the Debtors, the CAHC and the Non-Consenting States determined that it
was in all of the parties' best interests to hold consideration of the ERF in abeyance and revisit it
after the Mediation had progressed further, at which point the Committee is hopeful consensus
regarding this critical effort can be reached.    *See* Transcript of April 22, 2020 Hearing 18:1–18
(Counsel for the Debtors).

44.     Finally, this category includes time spent by Akin Gump professionals, on behalf
of the Committee, responding to inquiries from unsecured creditors other than the members of the
Committee in order to fulfill the Committee's responsibility under Bankruptcy Code section
1102(b)(3) to "provide access to information for creditors . . . not appointed to the [C]ommittee."
Prior to the Compensation Period, the Court entered the *Order Clarifying the Committee's
Requirement to Provide Access to Confidential or Privileged Information and Approving a
Protocol Regarding Creditor Requests for Information*, dated December 23, 2019 [ECF No. 699],
which authorized the Committee to establish a website (at which creditors can receive information
regarding the status of the Chapter 11 Cases).    The Committee's website, which is maintained by
KCC, provides general information about the Chapter 11 Cases to the Debtors' creditors, including
information regarding case developments, key contact information and a detailed case calendar for

20

upcoming hearings and other critical events.   During the Compensation Period, Akin Gump professionals, in coordination with KCC, posted relevant updates and materials on the Committee's website, including detailed case calendars, information regarding case developments and key contact information.

## F.    Hearings and Court Matters/Meetings (Task Code 8)

| Total Hours | Fees |
|:-----------:|:----:|
| 234.50 | $281,181.00 |

45.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the court hearings and status conferences held during the Compensation Period.  Akin Gump professionals participated in each of the five hearings and two chambers conferences before the Court during the Compensation Period.  In preparing for such hearings, Akin Gump professionals, together with the Committee's other advisors, reviewed and analyzed all issues, motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and the advisors to other parties in interest the relief requested and, as necessary, asserted the Committee's positions at such hearings.   In addition, following each hearing, Akin Gump professionals provided the Committee with summaries and analyses of the results thereof, either in written form or telephonically during the next Committee meeting.

## G.    Executory Contract/Lease Issues (Task Code 11)

| Total Hours | Fees |
|:-----------:|:----:|
| 47.40 | $49,294.00 |

46.    This category includes time spent by Akin Gump professionals analyzing issues relating to the Debtors' executory contracts and unexpired leases, and in particular the *Motion of Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing*

*Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief* [ECF No. 796], dated January 31, 2020 (the "Headquarters Lease Motion"). Pursuant to the Headquarters Lease Motion, the Debtors sought authorization to assume, reject and enter into certain new leases or subleases in connection with the restructuring of the Debtors' rights to their headquarters. At the time of the filing of the Headquarters Lease Motion, the Debtors leased their headquarters from an entity owned by the Debtors' ultimate shareholders, the Sacklers, and served as middlemen between the Sackler-owned landlord and various subtenants.

47.     Together with the Committee's other advisors, Akin Gump professionals analyzed the Headquarters Lease Motion and the terms of the proposed new lease arrangements, considering the propriety of both the Debtors' decision to do further business with the Sacklers and the new lease arrangements in view of the Debtors' operations during the Chapter 11 Cases and any go forward business likely to emerge from these cases. As a result of the efforts of Akin Gump and the Committee's other advisors, the Debtors agreed to modify the proposed order granting the Headquarters Lease Motion to preserve the Debtors' and third parties' future rights to assert claims arising from the Debtors' previously-existing lease arrangements and/or the assumptions contemplated by the Headquarters Lease Motion. Ultimately, and in light of, these modifications (among other considerations), the Committee determined not to object to the Headquarters Lease Motion. Accordingly, Akin Gump prepared the *Statement of the Official Committee of Unsecured Creditors with Respect to the Motion of Debtors for Entry of an Order (I) Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters Lease, (III) Authorizing the Assumption of Commercial Leases and (IV) Granting Related Relief*, dated February 17, 2020 [ECF No. 839], to explain the basis for its decision. The Court approved the Headquarters Lease

Motion, with the modifications requested by the Committee, on February 24, 2020. *See Order (I)*
*Authorizing the Rejection of Commercial Lease, (II) Authorizing Entry into New Headquarters*
*Lease and (III) Granted Related Relief* [ECF No. 866].

**H.    General Claims Analysis/Claims Objections (Task Code 12)**

| Total Hours | Fees |
|:---:|:---:|
| 1,748.00 | $1,752,514.00 |

48.    This task code includes time spent by Akin Gump professionals evaluating both the
merits of the vast universe of claims against the Debtors and potential approaches to addressing
such claims in the Chapter 11 Cases, including allocation among various creditor constituencies
of the entire value of the Debtors' estates.  Claims against the Debtors include, among others, a
wide variety of contingent litigation claims, including, but not limited to, claims by personal injury
plaintiffs, hospitals, insurance ratepayers, third-party payors, health plans, states, municipalities,
the United States, Native American Tribes and children born with Neonatal Abstinence Syndrome.
During the Compensation Period, Akin Gump professionals engaged in extensive factual and legal
research to assess the relative strengths and weaknesses of such claims and prepared various
memoranda and analyses with respect thereto.   In connection with such analysis, Akin Gump
professionals communicated with representatives of both public and private creditor constituencies
on a regular basis to better understand the basis for such claims.

49.    This category also includes time spent by Akin Gump and the Committee's other
advisors working closely with numerous other parties in interest to determine the best way to
address the critical issue of the allocation of estate value among the various classes of litigation
creditors without requiring the estates to spend substantial resources establishing the validity of
claims through litigation.  Such efforts included research regarding the law governing various types
of claims against the Debtors and factual analysis of likely recoveries such claims.  Among other

things, Akin Gump professionals reviewed and analyzed litigation documents and related materials provided to the Committee's advisors on a rolling basis and updated its ongoing analysis of the strength of various litigation claims according to its review.

50.    In addition, this category includes time spent by Akin Gump professionals working with the advisors to the Debtors and other parties in interest to establish a process through which the various creditor constituencies with contingent litigation claims could negotiate, and hopefully resolve, their respective entitlement to the value of the Debtors' estates, the entirety of which will be turned over to creditors.  These discussions culminated in the filing, on February 20, 2020, of the *Debtors' Motion for Entry of an Order Appointing Mediators* [ECF No. 855] (the "Mediation Motion"), pursuant to which the Debtors requested the appointment of Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators (the "Mediators") to oversee a mediation process involving nearly all significant creditor constituencies to address the relative allocation of the value of the Debtors' estates between public and private opioid litigants, and other related issues (the "Mediation").[18]  The Mediation Motion reflected broad agreement regarding the structure and scope of the Mediation among the following parties: (i) the MSGE Group; (ii) the Ad Hoc Committee of NAS Babies; (iii) the Ad Hoc Group of Hospitals; (iv) the Ad Hoc Group of Individuals; (v) various third-party payors and health insurance carrier plaintiffs, including The Blue Cross Blue Shield Association; (vi) a group of individual health insurance purchasers; (vii) the CAHC; (viii) the Non-Consenting States; (ix) the Committee; and (x) the Debtors.[19]  The Court approved the Mediation Motion, which was entirely unopposed, on March 4, 2020.  *Order*

---

[18] The Mediation Order (as defined below) authorizes the Mediators to mediate any other issues that are agreed upon by all of the Mediation Parties.  Mediation Order ¶ 3.

[19] Capitalized terms used in this sentence and not otherwise defined in this Application have the meanings ascribed to such terms in the Mediation Motion.

*Appointing Mediators* [ECF No. 895] (the "Mediation Order").  In order to bring the Mediators up

to speed quickly and assist the Mediation process, Akin Gump professionals spent significant time

preparing materials addressing the key issues and creditor considerations at play in the Chapter 11

Cases.

51.    Since the commencement of the Mediation in early March, Akin Gump

professionals, along with the Committee's other advisors, have spent significant time

communicating with various public and private creditor constituencies and other parties in interest

regarding the Mediation, participating in Mediation sessions, analyzing issues raised therein, and

participating in calls with the Mediators and the Committee regarding the progress of Mediation.

52.    This category also includes time spent by Akin Gump professionals on issues

related to the *Creditor Board of Chicago School District No. 299's Motion to Submit Claim to

Mediation*, dated March 30, 2020 [ECF No. 998] (the "CPS Motion") and *Creditors the Board of

Education of Thornton Township High School District 205, the Board of Education of Thornton

Fractional Township High School District 215, and the Board of Education of East Aurora School

District 131's Motion to Submit Claims of Independent Public School Districts to Mediation*, dated

April 13, 2020 [ECF No. 1038] (the "IPSD Motion," and together with the CPS Motion, the

"School Mediation Motions").  The School Mediation Motions sought a determination that the

movants be included as parties to the Mediation on behalf of a putative class of public school

districts (the "School Districts") with claims arising from the costs of providing supplemental

educational services to children with special needs due to their parents' opioid use.

53.    Following the filing of the School Mediation Motions, Akin Gump professionals

engaged with counsel to the movants to better understand the basis of their claims and the asserted

need to add the School Districts as a separate party to the Mediation.  Akin Gump professionals

25

also researched and analyzed issues raised in the School Mediation Motions and the objections thereto filed by other creditor constituencies.  In an attempt to resolve the motions consensually and avoid distracting and value-destructive litigation, Akin Gump professionals facilitated a dialogue among the advisors to the movants and other parties to the Mediation, including the Debtors, the CAHC, the Non-Consenting States and certain ad hoc groups of private side creditors, and proposed various potential solutions.  Ultimately, these efforts culminated in the consensual resolution of the IPSD Motion,[20] as set forth in the *Stipulation and Agreed Order Resolving Motion of the Board of Education of Thornton Township High Schools, Illinois District No. 205, the Board of Education of Thornton Fractional Township High Schools, Illinois District No. 215, and the Board Of Education of East Aurora, Illinois School District No. 131's to Submit Claims to Mediation*, dated April 21, 2020 [ECF No. 1073].[21]

54.    This category also includes significant time spent by Akin Gump professionals in connection with the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(A) and 501 and Fed. R. Bankr. P. 2002 and 3003(C)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof*, dated May 20, 2020 [ECF No. 1178] (the "Bar Date Extension Motion").  At the beginning of the Compensation Period, the Court entered the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof*, dated February 3, 2020 [ECF No. 800], which established June 30, 2020 as the

---

[20] The CPS Motion was withdrawn on April 13, 2020.  *See Notice by Creditor Board of Chicago School District No. 299 of Withdrawal of Motion to Submit Claim to Mediation* [ECF No. 1036].

[21] After the end of the Compensation Period, on June 19, 2020, Thornton Township High School District 205 in Illinois joined the Committee as an *ex officio* member on behalf of the School Districts.  *See Second Amended Verified Statement of the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al., *Pursuant to Bankruptcy Rule 2019 to Disclose Addition of Third* Ex Officio *Member*, dated June 22, 2020 [ECF No. 1294].

deadline by which all entities were required to file proofs of claim in the Chapter 11 Cases (the "Bar Date").

55.    In the ensuing months, various creditor constituencies, individuals and organizations raised concerns that this deadline no longer provided adequate time for creditors to submit their claims in light of the COVID-19 pandemic.  The Committee, Akin Gump professionals and the Committee's other advisors spent significant time discussing among themselves, with their various creditor constituents (both public and private) and with the Debtors the impact that the COVID-19 pandemic could have on creditors' ability to timely file proofs of claim and whether, and to what extent, an extension of the Bar Date would be appropriate. Ultimately, the Debtors took the view that a universal 30-day extension of the Bar Date was appropriate, and filed the Bar Date Extension Motion seeking to extend the Bar Date to July 30, 2020.  Both prior to the filing of the Bar Date Extension Motion and in the weeks thereafter, Akin Gump professionals reviewed and analyzed the numerous filings made by creditors and other parties in interest in respect of the Bar Date Extension Motion, and worked with the Committee to develop a position that struck an appropriate balance between the rights of creditors to file claims and the need to preserve the trajectory, fairness and pace of the Chapter 11 Cases.

56.    After significant analysis and discussion, the Committee concluded that the Debtors' request for a 30-day extension of the Bar Date for all creditors was both reasonable in light of the unprecedented facts and circumstances of these Chapter 11 Cases, including the COVID-19 pandemic, and an appropriate middle ground among the starkly divided creditor constituencies.  Akin Gump professionals then worked with counsel to the Debtors to develop an appropriate notice plan to provide creditors with notice of the Bar Date extension.  Akin Gump professionals also prepared a statement on behalf of the Committee summarizing the views of the

various creditor constituencies and explaining the rationale behind the Committee's support for a 30-day extension of the Bar Date. *See Statement of the Official Committee of Unsecured Creditors In Support of Debtors' Motion Pursuant to 11 U.S.C. §§ 105(A) and 501 and Fed. R. Bankr. P. 2002 and 3003(C)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof*, dated June 2, 2020 [ECF No. 1213]. Akin Gump attorneys prepared for and participated in the hearing on the Bar Date Extension Motion on June 3, 2020, at which the Court granted the motion and extended the Bar Date to Thursday, July 30, 2020, at 5:00 p.m. (Prevailing Eastern Time). *See Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof*, dated June 3, 2020 [ECF No. 1221].

57.    Finally, this task code includes time spent by Akin Gump professionals and paraprofessionals addressing all other issues and inquiries relating to the Bar Date and the proof of claim process, including communications with numerous potential claimants to address various inquiries regarding the claim-filing process and the proof of claim forms. Akin Gump professionals received, reviewed and responded to approximately seventy-five (75) such inquiries during the Compensation Period and maintained a log of all such interactions.

## I.    Prepetition Transactions (Task Code 13)

| Total Hours | Fees |
|---|---|
| 13,765.60 | $10,180,235.00 |

58.    This category includes time spent by Akin Gump professionals and paraprofessionals evaluating potential estate causes of action, including those against the Debtors' shareholders and affiliated entities, arising from prepetition transfers of value or the incurrence of obligations from the Debtors to other entities, as well as numerous other potential causes of action arising out of prepetition conduct and transactions. Such efforts involved extensive legal research

with respect to identifying and analyzing potential causes of action, as well as potential defenses to such causes of action. This category also includes time related to evaluating the Debtors' proposed Settlement Framework, which contemplates a global settlement of estate and third-party causes of action against the Debtors' shareholders, including certain diligence related to the IACs, the sale of which is contemplated to provide a portion of the consideration for the settlement of such claims. Conducting legal analysis and factual investigation in connection with the foregoing required significant effort on the part of Akin Gump professionals and paraprofessionals during the Compensation Period.

59.     During the Compensation Period, Akin Gump professionals and paraprofessionals spent significant time reviewing and analyzing materials produced by the Debtors, the Sacklers and other parties in interest in connection with the Committee's ongoing investigation of potential estate causes of action. Specifically, pursuant to the Case Stipulation, the Committee was entitled to receive information from the Debtors and their shareholders regarding transfers to, and the assets of, the Debtors' shareholders, including information produced by the Debtors in prepetition litigation. Akin Gump professionals expended significant effort seeking additional disclosures in these cases, including extensive negotiations concerning voluntary disclosures from the Debtors, the Sacklers and other third parties, moving the Court for authority to seek compulsory discovery from the Sacklers and their entities pursuant to Bankruptcy Rule 2004 and seeking the Court's assistance to resolve other discovery disputes. During the Compensation Period, Akin Gump, in conjunction with the Committee's other advisors, continued reviewing voluminous documents produced by the Debtors, the Sacklers, and other entities and conducting fact discovery to assess potential causes of action on behalf of the Debtors' estates and the likelihood of establishing rights to recovery. As of shortly after the end of the Compensation Period, the Committee's advisors had

received approximately nine million documents comprising more than 71 million pages through discovery and other voluntary disclosures, including the Debtors' productions in the multidistrict litigation pending in the United States District Court for the Northern District of Ohio, *In re Nat'l Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio 2017) (the "MDL"), and other prepetition litigations, as well as other productions made by the Debtors, Sacklers, and other parties in these cases.

60.    Given the expedited timeframe under which the Committee's investigation is proceeding, the Committee's advisors have established a document review protocol assisted by analytics and have used document analytics and tailored searches to conduct targeted reviews of large volumes of materials.  Akin Gump professionals and paraprofessionals have implemented an extensive document review project, with a broad-based document review team, in order to identify and review the most relevant documents.    As such, Akin Gump professionals drafted a comprehensive document review memorandum and document review guidelines and managed an extensive document review team in order to review and analyze these documents and other related materials expeditiously in connection with its analysis of potential estate claims and causes of action.  Akin Gump professionals have also prepared various memoranda and other work product in connection with its ongoing review of these documents and factual investigation.

61.    During the Compensation Period, Akin Gump professionals first drafted additional voluntary discovery requests and communicated regularly with the advisors to the Debtors and the shareholder parties regarding information required for the Committee to evaluate potential estate causes of action.    Such requests related to, among other things, information necessary for the Committee to investigate potential estate causes of action arising out of prepetition conduct and transactions, the value of the shareholder parties' assets, including the IACs, and the extent to

which the Debtors' estates and/or creditors may be able to recover from such assets under the Settlement Framework or an alternative outcome. During the Compensation Period, Akin Gump professionals met and conferred with counsel to multiple parties in interest, including the Debtors, the Sacklers and other third parties potentially in possession of relevant information, to arrange for discovery of information essential to the Committee's investigation in connection with voluntary discovery. In connection with this process, Akin Gump professionals drafted and revised criteria for the production of electronically stored information, including lists of proposed custodians and search terms, and conferred with certain parties in interest regarding such criteria. When it became apparent that the voluntary discovery process was not satisfactory with respect to the Sacklers and their entities, Akin Gump professionals prepared a motion pursuant to Bankruptcy Rule 2004 in order to seek compulsory discovery, which the Court granted pursuant to the Rule 2004 Order. The Committee's efforts with respect to its analysis of prepetition transactions and the Settlement Framework remain ongoing.

62.     Finally, although the production of voluminous materials by the Debtors, the shareholder parties and the IACs is essential to the Committee's evaluation of any plan of reorganization or other settlement in the Chapter 11 Cases, the Committee recognizes that all parties have a common interest in working together to coordinate discovery efforts to minimize costs and maximize the value available to creditors. Accordingly, during the Compensation Period, Akin Gump professionals worked with the Debtors' public and private creditor constituencies to streamline critical discovery efforts, contain the costs of the investigation into potential estate causes of action without unduly limiting its scope, and avoid duplicative efforts by multiple parties in interest. Specifically, Akin Gump professionals drafted a discovery and information-sharing stipulation (the "Discovery Stipulation") pursuant to which the Committee agreed to take the

31

highly unusual step of making certain of its professionals' work product and privileged communications available to parties that agree to the stipulation in exchange for such parties' agreement not to seek reimbursement from estate assets of fees they may incur in conducting discovery undertaken by the Committee.   The Committee finalized and filed the Discovery Stipulation shortly after the conclusion of the Compensation Period.   *See Notice of Filing of Stipulation and Agreed Order Among the Official Committee and Other Parties in Interest Regarding Discovery and the Sharing of Information in the Chapter 11 Cases*, dated June 5, 2020 [ECF No. 1231].

**J.    Insurance Issues (Task Code 14)**

| Total Hours | Fees |
|---|---|
| 453.90 | $449,490.50 |

63.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Committee's ongoing investigation into the scope, value and limitations of the Debtors' various insurance policies, which likely will represent a critical source of value for the Debtors' creditors.   In particular, Akin Gump professionals continued performing comprehensive analyses regarding the potential availability of insurance coverage for opioid-related claims against the Debtors, including under the Debtors' directors and officers, general liability and products liability insurance policies.   In connection with such analyses, Akin Gump professionals reviewed hundreds of additional insurance-related documents and communications produced by the Debtors, which collectively totaled thousands of pages.

64.    Akin Gump professionals also continued to conduct research regarding numerous critical insurance-related issues, including potential limitations on the ability of the Debtors and/or unsecured creditors to obtain the benefit of coverage under such policies for the various litigation claims against the Debtors.   To facilitate this work, Akin Gump professionals held several

32

telephonic conferences during the Compensation Period with the Debtors' insurance coverage counsel and communicated by email and telephone with counsel to the CAHC and other creditor constituencies regarding the foregoing issues, and assisted with efforts to obtain insurance-related documents and communications from the Debtors' insurance brokers.

## K.   Automatic Stay Issues (Task Code 16)

| Total Hours | Fees |
|:---:|:---:|
| 175.80 | $159,619.00 |

65.    This category includes time spent by Akin Gump professionals addressing matters related to the automatic stay, including primarily in connection with the *Motion for Relief from the Automatic Stay*, dated March 11, 2020 [ECF No. 909] (the "Lift-Stay Motion"), filed by certain co-defendants (the "Co-Defendants")[22] of the Debtors in the case pending in New York Supreme Court, Suffolk County, captioned *In re Opioid Litig.*, No. 400000/2017 (the "New York Litigation").  By the Lift-Stay Motion, the Co-Defendants sought authorization to include the Debtors on the verdict form to be used in the New York Litigation.  Due to the potential negative impact on the Chapter 11 Cases, including in respect of the Mediation, of any finding regarding the Debtors' liability in the New York Litigation, and following discussions with counsel to the Debtors and other parties in interest, the Committee determined to object to the Lift-Stay Motion.

66.    Accordingly, Akin Gump professionals spent significant time researching the issues presented by the Lift-Stay Motion and developing a strategy to oppose the motion.  Among other

---

[22] The Co-Defendants are Allergan Finance, LLC, AmerisourceBergen Drug Corporation, Bellco Drug Corp., American Medical Distributors, Inc., Anda, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., Cephalon Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis Pharma, Inc., Actavis LLC, CVS Pharmacy, Inc., Cardinal Health, Inc., Kinray, LLC, Walmart Inc., McKesson Corp., PSS World Medical, Inc., Walgreen Co., Walgreen Eastern Co., Rite Aid of Maryland, Inc. and Rite Aid of New York, Inc.  CVS Caremark Part D Services L.L.C. and CaremarkPCS Health L.L.C. recused themselves from participation on the Committee in connection with all matters relating to the Lift-Stay Motion.

things, Akin Gump professionals communicated with the advisors for the Debtors and multiple groups of creditors to coordinate their responses to the Lift-Stay Motion, reviewed and commented on the objections to the Lift-Stay Motion filed by the Debtors [ECF No. 1048] and the CAHC [ECF No. 1054], and drafted and filed the *Objection of the Official Committee of Unsecured Creditors to the Motion for Relief from Automatic Stay Filed By Defendants in the New York Opioid Litigation and Joinder in the Debtors' Objection Thereto*, dated April 15, 2020 [ECF No. 1050].

67.    A contested hearing on the Lift-Stay Motion was held on April 22, 2020.   In preparation for the hearing, Akin Gump professionals also spent time analyzing the objections to the Lift-Stay Motion filed by the plaintiffs in the New York Litigation [ECF No. 979] and the Non-Consenting States [ECF No. 1049], as well as the response filed by the Co-Defendants.   *See Defendants' Omnibus Reply in Support of Motion for Relief From the Automatic Stay*, dated April 19, 2020 [ECF No. 1063].   Following oral presentation of the Lift-Stay Motion by the Co-Defendants, the Court determined to adjourn the Lift-Stay Motion without decision due to concerns raised by the Debtors and the Committee regarding the ripeness of the motion and uncertainty as to whether a verdict form apportioning fault between defendants (the ultimate purpose of the Co-Defendants' motion) was warranted under applicable New York law.  The Court adjourned the hearing on the Lift-Stay Motion *sine die* and instructed the Debtors and the Co-Defendants to agree upon a new hearing date, which has not yet been scheduled.

**L.    Adversary Proceedings (Task Code 17)**

| Total Hours | Fees |
|---|---|
| 236.90 | $236,986.00 |

68.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the adversary proceeding commenced by the Debtors on September 18, 2019, *Purdue Pharma L.P. v. Commonwealth of Massachusetts*, Adv. Pro. No. 19-

08289 (Bankr. S.D.N.Y. 2019) (the "Adversary Proceeding") and various matters relating to the

*Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction* [Adv.

Pro. ECF No. 82] (the "Preliminary Injunction").

69.    At the outset of the Chapter 11 Cases, the Committee determined to support the

Preliminary Injunction, which stayed all litigation against the Debtors, the Sacklers and certain

related parties for an initial period of 180 days (the "Initial Stay Period"), in exchange for the

various rights and remedies negotiated by the Committee in the Case Stipulation.  As the end of

the Initial Stay Period neared, the Debtors filed the *Debtors' Motion to Extend the Preliminary*

*Injunction*, dated March 4, 2020 [Adv. Pro. ECF No. 146] (the "PI Extension Motion"), by which

the Debtors sought entry of an order extending the Preliminary Injunction by 180 days.  Akin

Gump professionals analyzed the PI Extension Motion and the pleadings filed in response thereto,

including the *Restatement of Limited Objection and Response of Tennessee Public Officials to*

*Debtors' Motion to Extend the Preliminary Injunction for Richard Sackler*, dated March 13, 2020

[Adv. Pro. ECF No. 152] (the "Tennessee Public Officials' PI Objection") and *The Non-*

*Consenting States' Voluntary Commitment and Limited Opposition in Response to Purdue's*

*Motion to Extend the Preliminary Injunction*, dated March 12, 2020 [Adv. Pro. ECF No. 150] (the

"Non-Consenting States' PI Objection"), pursuant to which the Non-Consenting States' requested

a limited carve-out from the Preliminary Injunction that would permit the Non-Consenting

States—and only the Non-Consenting States—to resume extra-bankruptcy litigation against the

certain of the Sacklers.

70.    After consideration of the analysis performed by Akin Gump and the Committee's

other advisors, the Committee determined that an extension of the Preliminary Injunction was

warranted to ensure that, among other things, the Debtors and the Sacklers were not distracted by

outside litigation and would be able to focus on producing the information necessary for the Committee and other parties in interest to evaluate the merits of the Settlement Framework, including the proposed third-party releases for the members of the Sackler family. Accordingly, Akin Gump professionals negotiated with counsel to the Debtors and the Sacklers to ensure that the extension of the Preliminary Injunction would not affect the Committee's rights under the Case Stipulation and prepared the *Official Committee of Unsecured Creditors' Amended Statement in Support of Debtors' Motion to Extend the Preliminary Injunction*, dated March 16, 2020 [Adv. Pro. ECF No. 159], which expressly reserved the Committee's rights to seek discovery of the Debtors and/or the Sacklers pursuant to Bankruptcy Rule 2004 and/or seek standing to bring estate causes of action against third parties on or any time after April 8, 2020. For the same reasons, the Committee believed it would be inappropriate to allow a limited carve-out from the Preliminary Injunction that would benefit only certain creditors, and drafted and filed *Official Committee of Unsecured Creditors' Response to the Non-Consenting States' Voluntary Commitment and Limited Opposition in Response to Purdue's Motion to Extend the Preliminary Injunction*, dated March 16, 2020 [Adv. Pro. ECF No. 160].

71.    The Court held a telephonic hearing on the PI Extension Motion on March 18, 2020, during which the Court overruled the Non-Consenting States' PI Objection and the Tennessee Public Officials' PI Objection and granted the PI Extension Motion. *See Tenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated May 18, 2020 [Adv. Pro. ECF No. 185] (the "PI Extension Order"). Shortly thereafter, certain parties associated with the State of Tennessee appealed the PI Extension Order.

72.    This category includes time spent by Akin Gump professionals in connection with the appeals of the Preliminary Injunction and the PI Extension Order by certain parties associated

with the State of Tennessee, which are pending in the U.S. District Court for the Southern District of New York (SDNY ECF 7:19-cv-10941, 7:20-cv-03048) (the "PI Appeal"). Akin Gump professionals prepared a letter to Chief Judge Colleen McMahon, who is presiding over the PI Appeal, indicating the Committee's intent to participate as appellee in the consolidated appeals of the aforementioned Bankruptcy Court orders. *See Letter addressed to Judge Colleen McMahon from Mitchell P. Hurley dated 05/06/2020 re: Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, dated May 6, 2020 [PI App. ECF No. 8]. Chief Judge McMahon endorsed the Committee's letter on May 8, 2020. *See Memo Endorsement on re: Letter, filed by Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, dated May 8, 2020 [PI App. ECF No. 13]. During the Compensation Period, Akin Gump professionals also undertook research and considered strategy relating to the appeals, including by reviewing and analyzing the issues raised by the appellants' opening appeal brief (which was filed on May 22, 2020). Akin Gump professionals also spent time during the Compensation Period beginning to draft the Committee's responsive brief in the PI Appeal, which was filed on June 22, 2020, after the conclusion of the Compensation Period. *See Brief of Appellee the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.* [P.I. App. ECF No. 20].

73. Finally, this category includes work performed by Akin Gump professionals and paraprofessionals in connection with the *Protective Order*, dated January 28, 2020 [ECF No. 784] and amended on March 20, 2020 [ECF No. 969] (as amended, the "Protective Order"), which governs the terms pursuant to which parties in interest, including Committee members and Committee professionals, have access to certain documents and information from the Debtors and other parties in the Chapter 11 Cases. During the Compensation Period, Akin Gump professionals analyzed various issues concerning the proposed amendment, which was intended to address

concerns regarding the handling of protected health information, and engaged with the various parties to the Protective Order in an effort to arrive at a consensual modification.

**M.    Tax Issues (Task Code 18)**

| Total Hours | Fees |
|:---:|:---:|
| 639.20 | $592,323.50 |

74.    This category includes time spent by Akin Gump professionals reviewing and analyzing various tax issues affecting unsecured creditors.  Specifically, Akin Gump professionals devoted significant effort during the Compensation Period to, among other things: (i) evaluating potential U.S. and foreign tax consequences of a potential sale of the IACs in connection with the Settlement Framework; (ii) coordinating with the Committee's and the Debtors' joint tax advisor, KPMG, regarding tax matters; (iii) ongoing diligence regarding prior U.S. federal and state tax returns, distributions, tax distributions and withholdings; (iv) participating in discussions related to, and evaluating, potential tax consequences of the proposed contributions from the Debtors' shareholders under the Settlement Framework and potential tax consequences of distributions to the Debtors' direct and indirect shareholders; and (v) researching and analyzing potential tax consequences of certain prior transactions and prior filing and reporting by the Debtors or their direct and indirect owners.

75.    The foregoing tasks required extensive review and analysis of significant tax diligence related to the IACs and the proposed Settlement Framework.  In light of the unusual structure of many of the Debtors' shareholders holdings and the wide scope and variety of distributions made by the Debtors, Akin Gump professionals were required to spend significant time conducting legal research and analysis concerning these and other tax-related issues, and Akin Gump professionals communicated regularly with the Committee's other professionals and with the advisors to the Debtors and other interested parties regarding such issues.  Finally, Akin Gump

38

professionals analyzed discovery materials related to taxes, identified missing information and priority requests, and assisted with drafting and revising correspondence and discovery requests related to tax information.

**N.    Interaction/Review of Other Opioid Companies and Cases (Task Code 20)**

| Total Hours | Fees |
|:---:|:---:|
| 352.30 | $270,718.50 |

76.    This category includes time spent by Akin Gump professionals reviewing and analyzing developments in opioid litigation throughout the country, including reports in news articles and academic publications, to assess the potential impact of such matters on the various parties in interest in these Chapter 11 Cases.  Given the expansive scope of the opioid crisis and the various repeat players involved in litigation and/or settlement discussions in numerous jurisdictions and throughout the country, tracking and ensuring that the Committee remains informed with respect to such developments is critical to Akin Gump's ability to assess issues of vital importance to these cases, including its assessment of the various litigation claims against the Debtors and issues related to intercreditor allocations (including the Mediation) and potential settlement structures.

77.    For example, during the Compensation Period, Akin Gump professionals monitored developments in the MDL and other pending opioid litigation, including the motion of the Plaintiffs' Co-Lead Counsel, Liaison Counsel, the members of the Plaintiffs' Executive Committee in the MDL (collectively, the "PEC") to establish a "common benefit fund" to provide for the reimbursement of the fees and expenses of the PEC's advisors through a 7% assessment on any settlements or recoveries in respect of opioid-related claims brought by MDL plaintiffs and other potential creditors in these Chapter 11 Cases.  *See Amended Motion for Entry of Order Establishing Common Benefit Fund, dated January 28, 2020* [MDL ECF No. 3112] (the "Common

Benefit Fund Motion"). Akin Gump professionals analyzed the potential impact of the Common

Benefit Fund Motion on unsecured creditors of Purdue, and negotiated with the PEC's advisors

regarding the terms of a notice clarifying that any common benefit fund approved in the MDL

would not impact creditor recoveries in the Chapter 11 Cases. *See Purdue's Notice of Clarification

and Carve Out Regarding the Potential Establishment of a Common Benefit Fund,* [MDL ECF No.

3214].

**O.    Disclosure Statement/Solicitation/Plan/Confirmation (Task Code 22)**

| Total Hours | Fees |
|:---:|:---:|
| 249.50 | $187,790.50 |

78.    This category includes time spent by Akin Gump professionals researching and

analyzing numerous complex issues that may arise in connection with the formulation of a chapter

11 plan.  Specifically, during the Compensation Period, Akin Gump professionals conducted

research regarding the structures and mechanisms included in chapter 11 plans approved in prior

mass tort bankruptcy cases and analyzed issues relating to the potential applicability of such

structures to the Debtors' unprecedented situation.

79.    In addition, this category includes time spent by Akin Gump professionals

researching and analyzing issues raised with respect to third-party releases in *Lynch v. Mascini

Holdings Ltd. (In re Kirwan Offices S.à.r.L.),* No. 18-3371 (2d Cir. Dec. 20, 2019) ("Kirwan").

Following the Court's comments at the February 21, 2020 hearing regarding issues raised by the

federal government's intervention in *Kirwan,* Akin Gump professionals reviewed all relevant

pleadings in the case and analyzed the issues raised therein in order to assess the potential impact

of the government's position on the Chapter 11 Cases, including any eventual plan.  Akin Gump

professionals also assessed whether the issues raised in *Kirwan* necessitated a response from the

Committee in other pending appeals.

40

**P.      Travel Time (Task Code 25)**

| Total Hours | Fees |
|---|---|
| 3.00 | $3,770.00 |

80.     This category includes time spent by Akin Gump professionals in transit to all hearings and meetings with parties in interest that required in-person attendance on behalf of the Committee.  Akin Gump has discounted this time by 50% in accordance with the Local Bankruptcy Rules and Fee Guidelines.  Due to General Order M-543 (Bankr. S.D.N.Y. Mar. 20, 2020) (Morris, C.J.) and the disruption caused by COVID-19, most hearings that occurred during the Compensation Period were conducted telephonically, which significantly limited the time spent by Akin Gump professionals in transit during the Compensation Period.

**Q.      General Corporate Matters (Task Code 28)**

| Total Hours | Fees |
|---|---|
| 26.10 | $12,605.50 |

81.     This category includes time spent by Akin Gump professionals in connection with general corporate diligence matters.  Specifically, during the Compensation Period, Akin Gump professionals conducted corporate diligence regarding the Debtors' businesses, including by reviewing public filings and diligence materials received in the Chapter 11 Cases.

**R.      Business Operations (Task Code 31)**

| Total Hours | Fees |
|---|---|
| 320.50 | $342,456.50 |

82.     This category includes work performed by Akin Gump professionals with respect to ongoing review and analysis of the Debtors' business operations and performance, including the Debtors' business plan and related operational matters.  During the Compensation Period, Akin Gump professionals, in conjunction with the Committee's other advisors, analyzed issues related to the Debtors' businesses in the context of the unique posture of these Chapter 11 Cases in which

41

the Debtors propose to turn over the full value of their enterprise to creditors and transition into a public benefit corporation. The Debtors' proposed transition into a public benefit corporation through certain public health initiatives, as contemplated under the Settlement Framework,[23] has required—and continues to require—significant diligence by the Committee and its professionals. These efforts have assisted—and will continue to assist—the Committee in evaluating whether to support the Debtors' vision of the future of Purdue.

83.    In furtherance of such public health initiatives, during the Compensation Period, the Debtors filed the *Motion for Authorization to Enter into Development Agreement*, dated February 11, 2020 [ECF No. 826] (the "Nalmefene Motion"), which sought authorization to enter into an agreement (the "Development Agreement") to fund the development of a nalmefene auto-injector device to treat opioid overdoses (the "Nalmefene Initiative"). Akin Gump professionals worked with the Committee's other advisors and the advisors to other creditor constituencies to analyze the Development Agreement and the potential costs and benefits of the Nalmefene Initiative. Ultimately, even though the Committee did not support the Nalmefene Initiative, it determined not to object to the motion in light of the relatively small amount of estate resources at stake, the possibility of commercializing the product, and the Debtors' repeated assurances that approval of the Nalmefene Motion would not constitute a referendum on the Public Health Initiative. To ensure that the Committee's concerns with respect to the Nalmefene Motion and the Public Health Initiative generally were known, the Committee prepared the *Statement of the Official Committee of Unsecured Creditors with Respect to the Debtors' Motion for Authorization to Enter into Development Agreement*, dated February, 20, 2020 [ECF No. 849]. Specifically, such

---

[23] The Debtors' proposed public health initiatives (the "Public Health Initiative") are described in detail in the *Debtors' Informational Brief*, dated September 16, 2019 [ECF No. 17].

statement explained the Committee's view that any efforts by the Debtors to advance the Public Health Initiative are premature at this stage of the Chapter 11 Cases absent substantial creditor support.

84.     This category also includes time spent by Akin Gump professionals in connection with the *Motion of Debtors for Authorization to Enter into Funding Agreement*, dated April 1, 2020 [ECF No. 1005] (the "HRT Motion"), which sought authorization for the Debtors to enter into an agreement (the "Funding Agreement") with Harm Reduction Therapeutics, Inc. ("HRT") pursuant to which the Debtors would fund HRT's development of an over-the-counter formulation of naloxone, a prevalent overdose treatment drug, to be distributed to the American public for free or at cost.  After performing extensive diligence into the viability of the initiative and HRT's historical relationship with the Debtors, the Committee concluded that, similar to its view of the Nalmefene Initiative, the Debtors' decision to pursue the HRT Motion was premature in light of the absence of creditor support for the Public Health Initiative.  Akin Gump professionals shared the Committee's views with the advisors to the Debtors and various other creditor constituencies, all of whom agreed that the Debtors' public health initiatives should not be considered until there is greater clarity and creditor consensus regarding the future of Purdue.  Akin Gump professionals urged the Debtors to adjourn the HRT Motion, and after numerous discussions with the advisors to the Committee and other creditor groups, the Debtors agreed to adjourn the hearing on the HRT Motion to after the end of the Compensation Period.  The Committee similarly determined not to object to the HRT Motion, but filed a statement [ECF No. 1278] to express its concerns with respect to such motion.

85.     Finally, this category includes time spent by Akin Gump professionals in connection with the efforts of former United States Secretary of Agriculture Tom Vilsack, who was

appointed by the Court as a monitor to oversee the Debtors' compliance with their obligations under the voluntary self-injunction. *See Seventh Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated March 4, 2020 [Adv. Pro. No. 19-08289, ECF No. 143] at 7 and App'x 1. During the Compensation Period, Akin Gump professionals, in coordination with the Committee's advisors, reviewed the findings detailed in the *Initial Monitor Report*, dated May 20, 2020 [ECF No. 1175] (the "Monitor's Report"), and discussed the Monitor's Report in detail with the Committee and Secretary Vilsack.

## S.    Intellectual Property (Task Code 32)

| Total Hours | Fees |
|:---:|:---:|
| 311.20 | $330,348.50 |

86.    This task code includes time spent by Akin Gump professionals and paraprofessionals in connection with analyzing the Debtors' patents and patent applications, intellectual property license and ancillary agreements, intercompany intellectual property arrangements and related intellectual property issues. Specifically, during the Compensation Period, Akin Gump professionals performed diligence with respect to numerous intellectual property issues, including, among other things: issues related to patent history, prosecution, and expiration; product exclusivity and expiration of patent coverage for the Debtors' products; ongoing, former and potential patent litigation (in particular patent infringement litigation), and pipeline products. As the proposed Settlement Framework contemplates ongoing operations based on future expected revenues derived from current and pipeline products, the Committee's intellectual property analysis has encompassed ongoing discussions with the Debtors and their advisors regarding the Debtors' businesses and operations, analyses of the proposed value of the Debtors' and the IACs' patents, and the Debtors' patent portfolio. In addition, Akin Gump professionals analyzed the Debtors' license agreements with the IACs, as well as the IACs'

intellectual property and licenses, in connection with the Committee's evaluation of the Settlement Framework.

**T.      Sackler Rule 2004 Discovery (Task Code 33)**

| Total Hours | Fees |
|:---:|:---:|
| 745.00 | $765,895.50 |

87.     This category includes time spent by Akin Gump professionals in connection with formal discovery related to the Rule 2004 Order.  In furtherance of the Committee's investigation of the potential estate causes of action against the Debtors' beneficial owners, Akin Gump met and conferred on numerous occasions with counsel to the Sackler family and the IACs in an effort to reach consensus regarding the scope of discovery.  This category also includes time spent by Akin Gump professionals drafting subpoenas and corresponding with the various parties from whom the Committee sought discovery necessary to its investigation.  Ultimately, the Committee's efforts led to the execution and filing, after the end of the Compensation Period, of the *Notice of Filing of Stipulations and Agreed Orders Among the Official Committee and (I) the Mortimer Side Covered Parties, (II) Certain Raymond Side Covered Parties and (III) the IACs Regarding Discovery in the Chapter 11 Cases*, dated June 22, 2020 [ECF No. 1295], which represented significant progress towards a consensual resolution of the parties' discovery disputes.

## ACTUAL AND NECESSARY DISBURSEMENTS

88.     Akin Gump seeks allowance of reimbursement in the amount of $236,045.74 for expenses incurred during the Compensation Period in the course of providing professional services to the Committee.  Akin Gump's disbursement policies pass through all out of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example, as it relates to computerized research, Akin Gump believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain.  Other

45

reimbursable expenses (whether the service is performed by Akin Gump in-house or through a

third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries,

court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

89.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of,
> or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
>
> (E) with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and
> experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonably based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

90.     The clear congressional intent and policy expressed in Bankruptcy Code section

330 is to provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R.

13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court,

establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal

specialists."); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994)

("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotation marks omitted).

91.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)). The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298–99 (5th Cir. 1977) have been adopted by most courts.[24]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212–13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation").

---

[24] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,* with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress. *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

92.    Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

a.    <u>Time and Labor Required</u>.  Akin Gump billed a total of 18,098.50 hours of professional services and 3,342.0 hours of paraprofessional and other non-legal services during the Compensation Period.  As evidenced by this Application, Akin Gump professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period.  This is especially clear when considering the nature and complexity of the issues that arose in the Chapter 11 Cases during the Compensation Period.  In particular, the Compensation Period involved many material motions and issues that required a favorable resolution for the Debtors' estates and unsecured creditors, including, among other things, the PI Extension Motion, the Nalmefene Motion, the Lift-Stay Motion, the Bar Date Extension Motion, the Mediation, negotiations surrounding the School Mediation Motions, the disputes and negotiations regarding discovery of the Sacklers and the IACs, diligence regarding the HRT Motion, and analysis of potential estate and/or creditor claims against the Debtors' related parties.  Akin Gump's representation of the Committee has required it to balance the need to provide quality services with the need to act quickly and represent the Committee in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant—and often urgent—legal and business issues raised and the numerous pleadings filed in the Chapter 11 Cases.

b.    <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, tax, trusts and estates, insurance and other issues.  As further described herein, Akin Gump's teams of skilled practitioners assisted the Committee in analyzing, among other things, the PI Extension Motion, the HRT Motion, the Nalmefene Motion, the Lift-Stay Motion, potential estate claims, potential claims against the Debtors, insurance issues and various issues relating to an eventual chapter 11 plan.

c.    <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the administration of the Chapter 11 Cases and benefited the Debtors and the Committee.  Due to the nature and complexity of the legal issues presented by the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax, labor and corporate transaction matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest

48

enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d. <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e. <u>Customary Fee</u>. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f. <u>Whether the Fee Is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Committee in the Chapter 11 Cases.

g. <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines. For example, Akin Gump and the Committee's other advisors were faced with limited time in which to formulate an approach to various forms of relief requested by the Debtors and other parties, including the relief sought in the Nalmefene Motion, the Bar Date Extension Motion, the School Mediation Motions and the Lift-Stay Motion, while simultaneously pursuing consensual modifications to or resolutions of such requested relief. The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h. <u>Amount Involved and Results Obtained</u>.   Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.   During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in preserving sources of recovery for the benefit of unsecured creditors.   In particular, Akin Gump's efforts in connection with, among other things, the Bar Date Extension Motion, the PI Extension Motion, the HRT Motion and the Lift-Stay Motion have been instrumental in preserving value for the benefit of all creditor constituencies.   Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i. <u>Experience, Reputation and Ability of Attorneys</u>.   Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.   During the Compensation Period, Akin Gump solicited the skill and expertise of its professionals and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.   Akin Gump professionals have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Sears Holdings Corp., In re Insys Therapeutics, Inc., In re PG&E Corp., In re Nine West Holdings, Inc., In re iHeartMedia, Inc., In re Cumulus Media Inc., In re Avaya Inc., In re Chassix Holdings, Inc., In re Energy Future Holdings Corp., In re Dynegy Holdings, LLC, In re Nortel Networks Inc., In re Lightsquared Inc., In re Longview Power, LLC, In re Eastman Kodak Company, In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC, In re Overseas Shipholding Group, Inc., In re QCE Finance LLC, In re Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.* and many others.   Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.   In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j. <u>"Undesirability" of the Cases</u>.   This factor is not applicable to the Chapter 11 Cases.

k. <u>Nature and Length of Professional Relationship</u>.   Akin Gump has been rendering professional services to the Committee since it was selected as counsel to the Committee on September 26, 2019.

93.     For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Committee and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

94.     No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

### ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

95.     The following is provided in response to the request for additional information set forth in ¶ C.5 of the U.S. Trustee Guidelines.

__Question__:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:     No.

__Question__:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

__Question__:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:    Yes.  During the Compensation Period, 353.1 hours and $261,262.50 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:    See above.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Akin Gump disclosed to the Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2020 in the Akin Retention Application, which the Committee agreed to.

## RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

*[Remainder of Page Left Blank Intentionally]*

## **CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $17,563,479.00 and expense reimbursement in the amount of $236,045.74; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
July 15, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Arik Preis*
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al.*

## **EXHIBIT A**

**CERTIFICATION OF ARIK PREIS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

### CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE SECOND INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF FEBRUARY 1, 2020 THROUGH AND INCLUDING MAY 31, 2020

I, Arik Preis, hereby certify that:

1.      I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of the above captioned Debtors.  Akin Gump is counsel to Official Committee of Unsecured Creditors of Purdue Pharma, L.P. and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

      a.      I have read the Application;

      b.      to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

      c.      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

      d.      in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Committee are each being provided with a copy of the Application.

Dated: New York, New York               By: */s/ Arik Preis*         
     July 15, 2020                     Arik Preis

## **EXHIBIT B**

### CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY Office for Preceding Year**[1] | **Billed in this Application** |
| Partner | $1,367.09 | $1,351.52 |
| Senior Counsel & Counsel | $993.56 | $977.30 |
| Associate | $686.06 | $655.55 |
| Paraprofessional | $342.89 | $357.49 |
| **All Timekeepers Aggregated** | **$884.54** | **$823.76** |

---

[1] Consistent with the U.S. Trustee Guidelines, this column discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (*i.e.*, the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending May 31, 2020.

## **EXHIBIT C**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Partner | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,225.00 | 855.30 | $1,047,742.50 |
| Paul Butler | Litigation | 1991 | $1,175.00 | 87.70 | $103,047.50 |
| Dean Chapman | Litigation | 2009 | $1,225.00 | 57.00 | $69,825.00 |
| Julius Chen | Litigation | 2010 | $1,015.00 | 19.10 | $19,386.50 |
| Olivier De Moor | Tax | 2009 | $1,175.00 | 80.70 | $94,822.50 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,595.00 | 6.20 | $9,889.00 |
| Sophie Donnithorne-Tait | Tax | 2006 | $1,115.00 | 8.70 | $9,700.50 |
| Shawn Hanson | Litigation | 1983 | $1,135.00 | 40.80 | $46,308.00 |
| Mitchell Hurley | Litigation | 1997 | $1,595.00 | 873.80 | $1,393,711.00 |
| Howard Jacobson | Litigation | 1979 | $1,240.00 | 101.10 | $125,364.00 |
| Stephen Kho | International Trade | 1998 | $1,135.00 | 101.40 | $115,089.00 |
| Jeffrey Kochian | Corporate | 2000 | $1,360.00 | 84.30 | $114,648.00 |
| Eli Miller | Corporate | 2009 | $1,075.00 | 36.70 | $39,452.50 |
| Allison Miller | Corporate | 2001 | $1,350.00 | 67.80 | $91,530.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,595.00 | 725.40 | $1,157,013.00 |
| Steven Ross | Litigation | 1976 | $1,300.00 | 6.00 | $7,800.00 |
| Corey Roush | Litigation | 1997 | $1,135.00 | 106.20 | $120,537.00 |
| Robert Salcido | Health | 1989 | $1,155.00 | 111.40 | $128,667.00 |
| Seth Slotkin | Tax | 1996 | $1,195.00 | 49.60 | $59,272.00 |
| Joseph Sorkin | Litigation | 2008 | $1,350.00 | 200.20 | $270,270.00 |
| James Tysee | Litigation | 2008 | $1,075.00 | 26.20 | $28,165.00 |

| David Vondle | Intellectual Property | 2002 | $1,115.00 | 287.90 | $321,008.50 |
| Jacqueline Yecies | Litigation | 2009 | $1,115.00 | 241.10 | $268,826.50 |
| **Partner Total:** | | | | **4,174.60** | **$5,642,075.00** |

| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
| --- | --- | --- | --- | --- | --- |
| Kenneth Alderfer | Tax | 1986 | $1,110.00 | 8.70 | $9,657.00 |
| Jenny Arlington | Litigation | 2010 | $1,005.00 | 9.40 | $9,447.00 |
| Christin Carey | Public Law & Policy | 2012 | $885.00 | 5.40 | $4,779.00 |
| Sophie Chu | Corporate | 2007 | $1,025.00 | 117.30 | $120,232.50 |
| Sharon Davidov | Tax | 2013 | $1,010.00 | 202.50 | $204,525.00 |
| Eugene Elder | Health | 1990 | $975.00 | 248.20 | $241,995.00 |
| Elizabeth Harris | Tax | 1987 | $1,065.00 | 246.00 | $261,990.00 |
| Katie Hyman | Litigation | 2009 | $950.00 | 17.90 | $17,005.00 |
| Kristi Kirksey | Tax | 2014 | $985.00 | 117.60 | $115,836.00 |
| Jo-Ellyn Klein | Health | 1998 | $965.00 | 5.30 | $5,114.50 |
| Angeline Koo | Litigation | 2005 | $1,000.00 | 101.90 | $101,900.00 |
| Serena Lee | Tax | 2013 | $985.00 | 12.30 | $12,115.50 |
| Erika Leon | Corporate | 2013 | $985.00 | 322.50 | $317,662.50 |
| Edan Lisovicz | Financial Restructuring | 2013 | $975.00 | 623.00 | $607,425.00 |
| Clayton Matheson | Litigation | 2010 | $950.00 | 154.40 | $146,680.00 |
| William Mongan | Litigation | 2011 | $1,005.00 | 83.80 | $84,219.00 |
| John Murphy | Litigation | 2011 | $1,025.00 | 394.80 | $404,670.00 |
| Nicholas Petree | Litigation | 2012 | $910.00 | 201.80 | $183,638.00 |

| Katherine Porter | Litigation | 2011 | $1,025.00 | 763.30 | $782,382.50 |
|---|---|---|---|---|---|
| Holli Pryor-Baze | Litigation | 1999 | $965.00 | 54.60 | $52,689.00 |
| Jillie Richards | Litigation | 2007 | $850.00 | 652.40 | $554,540.00 |
| M. Todd Tuten | Public Law & Policy | N/A | $1,035.00 | 23.00 | $23,805.00 |
| Richard R. Williams, Jr. | Litigation | 2014 | $960.00 | 376.10 | $361,056.00 |
| Dennis Windscheffel | Litigation | 2004 | $965.00 | 230.70 | $222,625.50 |
| Sophie Shih-Yu Chu | Corporate | 2007 | $1,025.00 | 294.30 | $301,657.50 |
| **Senior Counsel & Counsel Total:** | | | | **5,267.20** | **$5,147,646.50** |

| Associate | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Sudhana Bajracharya | Health | 2018 | $650.00 | 70.90 | $46,085.00 |
| Brooks Barker | Financial Restructuring | 2018 | $775.00 | 425.00 | $329,375.00 |
| Rachel Bayefsky | Litigation | 2016 | $820.00 | 27.50 | $22,550.00 |
| Megi Belegu | Litigation | Not yet admitted | $565.00 | 401.60 | $226,904.00 |
| David Bethea | Litigation | 2015 | $895.00 | 32.60 | $29,177.00 |
| Alexandra Boyd | Litigation | 2019 | $575.00 | 72.00 | $41,400.00 |
| Marc Caplan | Tax | 2019 | $675.00 | 171.10 | $115,492.50 |
| Claude Chase | International Trade | 2010 | $820.00 | 18.00 | $14,760.00 |
| Richard Cochrane | Litigation | 2019 | $535.00 | 22.30 | $11,930.50 |
| Jess Coleman | Financial Restructuring | Not yet admitted | $615.00 | 458.60 | $282,039.00 |
| Richard D'Amato | Litigation | 2017 | $810.00 | 296.90 | $240,489.00 |
| Alyx Eva | Litigation | 2019 | $535.00 | 198.20 | $106,037.00 |
| Hayley Evans | Public Law & Policy | 2019 | $535.00 | 97.00 | $51,895.00 |

| Sanzana Faroque | Corporate | 2020 | $565.00 | 178.60 | $100,909.00 |
|---|---|---|---|---|---|
| Michael Fires | Litigation | 2018 | $575.00 | 75.00 | $43,125.00 |
| Jason Gangwer | Litigation | 2017 | $650.00 | 415.30 | $269,945.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $615.00 | 204.70 | $125,890.50 |
| Patrick Glackin | Litigation | 2019 | $650.00 | 283.20 | $184,080.00 |
| Nina Goepfert | Litigation | 2018 | $725.00 | 327.90 | $237,727.50 |
| Sohrab Hajarian | Intellectual Property | 2016 | $535.00 | 21.50 | $11,502.50 |
| Christina Hightower | Litigation | 2017 | $650.00 | 174.20 | $113,230.00 |
| Anthony Hilbert | Corporate | 2019 | $535.00 | 154.80 | $82,818.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $535.00 | 359.20 | $192,172.00 |
| Rachel Kurzweil | Health | 2017 | $735.00 | 5.80 | $4,263.00 |
| McKenzie Miller | Litigation | 2020 | $535.00 | 731.80 | $391,513.00 |
| Oluwaremilekun Ojurongbe | Litigation | 2020 | $535.00 | 180.80 | $96,728.00 |
| Colin Phillips | Intellectual Property | 2017 | $650.00 | 289.10 | $187,915.00 |
| Jennifer Poon | Litigation | 2016 | $810.00 | 697.60 | $565,056.00 |
| Julia Rinker | Corporate | 2020 | $565.00 | 150.60 | $85,089.00 |
| Theodore James Salwen | Financial Restructuring | 2017 | $775.00 | 621.30 | $481,507.50 |
| Sangita Sahasranaman | Tax | 2019 | $675.00 | 104.50 | $70,537.50 |
| Anthony Sierra | Intellectual Property | 2019 | $535.00 | 294.70 | $157,664.50 |
| Jason Sison | Corporate | 2016 | $810.00 | 298.10 | $241,461.00 |
| Kaitlyn Tongalson | Litigation | 2017 | $810.00 | 263.20 | $213,192.00 |
| Izabelle Tully | Litigation | Not yet admitted | $565.00 | 541.20 | $305,778.00 |

| Associate Total: | | | | 8,664.80 | $5,680,238.00 |
|---|---|---|---|---|---|
| **Staff Attorneys & Paraprofessionals** | **Department** | **Year of Admission** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
| Ganna Anisimova | Law Clerk, Litigation | N/A | $340.00 | 550.60 | $187,204.00 |
| Brian Bevins | Research & Info Services | N/A | $285.00 | 5.20 | $1,482.00 |
| Neil Bowden-Brown | EDiscovery | N/A | $355.00 | 11.90 | $4,224.50 |
| Marisa Browndorf | Paralegal, Intellectual Property | N/A | $330.00 | 96.00 | $31,680.00 |
| Frank Castro | Paralegal, Litigation | N/A | $350.00 | 126.80 | $44,380.00 |
| Daniel Chau | EDiscovery | N/A | $370.00 | 289.40 | $107,078.00 |
| Kimberly La Croix | EDiscovery | N/A | $370.00 | 128.50 | $47,545.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $330.00 | 281.70 | $92,961.00 |
| Cheryle Edmonds | Paralegal, Litigation | N/A | $350.00 | 98.40 | $34,440.00 |
| Dariya Fadeeva | Analyst, International Trade | N/A | $340.00 | 261.70 | $88,978.00 |
| Michael Ginsborg | Research & Info Services | N/A | $285.00 | 18.60 | $5,301.00 |
| Helen Hanks | Paralegal, Tax | N/A | $330.00 | 24.10 | $7,953.00 |
| Adria Hicks | Paralegal, Litigation | N/A | $350.00 | 18.50 | $6,475.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $415.00 | 5.10 | $2,116.50 |
| Arah Joseph | Research & Info Services | N/A | $285.00 | 8.50 | $2,422.50 |
| Amy Laaraj | Paralegal, Litigation | N/A | $350.00 | 473.50 | $165,725.00 |
| Kim La Croix | EDiscovery | N/A | $370.00 | 21.40 | $7,918.00 |
| Melanie Langford | Paralegal, Intellectual Property | N/A | $260.00 | 72.40 | $18,824.00 |

| Sophia Levy | Paralegal, Financial Restructuring | N/A | $245.00 | 30.30 | $7,423.50 |
|---|---|---|---|---|---|
| Toni McBride | Practice Attorney, Tax | N/A | $390.00 | 11.40 | $4,446.00 |
| Michael Morse | EDiscovery | N/A | $370.00 | 26.20 | $9,694.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | $515.00 | 286.00 | $147,290.00 |
| Lauren O'Brien | Consultant, Public Law & Policy | N/A | $625.00 | 80.80 | $50,500.00 |
| Ellen Pierce | Practice Attorney, Litigation | N/A | $420.00 | 48.90 | $20,538.00 |
| Jaime Rodriguez | Research & Info Services | N/A | $285.00 | 5.80 | $1,653.00 |
| Refugio Acker-Ramirez | Research & Info Services | N/A | $285.00 | 5.30 | $1,510.50 |
| Camille Schoonmaker | Paralegal, Litigation | N/A | $215.00 | 170.00 | $36,550.00 |
| Risa Slavin | Paralegal, Litigation | N/A | $390.00 | 21.20 | $8,268.00 |
| Kiichi Take | Paralegal, Intellectual Property | N/A | $330.00 | 9.50 | $3,135.00 |
| Carrie Varner | Paralegal, Litigation | N/A | $350.00 | 73.10 | $25,585.00 |
| Bennett Walls | Paralegal, Litigation | N/A | $215.00 | 44.80 | $9,632.00 |
| Karen Woodhouse | Practice Attorney, Litigation | N/A | $400.00 | 7.40 | $2,960.00 |
| Doris Yen | Research & Info Services | N/A | $285.00 | 20.90 | $5,956.50 |
| **Staff Attorneys and Paraprofessional Total:** | | | | **3,333.90** | **$1,191,849.00** |
| Total Hours Billed / Fees Incurred: | | | | 21,440.50 | $17,661,808.50 |
| Voluntary Reduction Related to Political Contributions Motion: | | | | | ($98,329.50) |
| **Total Fees Requested:** | | | | | **$17,563,479.00** |

## <u>EXHIBIT D</u>

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 50–150 | $38,750–$116,250 | 69.70 | $51,807.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 500–700 | $387,500–$542,500 | 598.50 | $453,566.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 50–100 | $48,750–$97,500 | 71.10 | $65,368.50 |
| 6 | Retention of Professionals | 75–150 | $67,500–$135,000 | 123.80 | $134,117.50 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 1000–1500 | $1,200,000–$1,800,000 | 1265.40 | $1,338,453.50 |
| 8 | Hearings and Court Matters/Court Preparation | 250–500 | $300,000–$600,000 | 234.50 | $281,181.00 |
| 9 | Financial Reports and Analysis | 10–25 | $7,750–$19,375 | 2.80 | $3,035.00 |
| 11 | Executory Contract/Lease Issues | 25–75 | $22,500–$67,500 | 47.40 | $49,294.00 |
| 12 | General Claims Analysis/Claims Objections | 1500–2000 | $1,350,000–$1,800,000 | 1748.00 | $1,752,514.00 |
| 13 | Analysis of Pre-Petition Transactions | 12500–15000 | $10,000,000–$12,000,000 | 13765.60 | $10,180,235.00 |
| 14 | Insurance Issues | 250–500 | $225,000–$450,000 | 453.90 | $449,490.50 |
| 16 | Automatic Stay Issues | 100–250 | $90,000–$225,000 | 175.80 | $159,619.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 200–400 | $180,000–$360,000 | 236.90 | $236,986.00 |
| 18 | Tax Issues | 500–750 | $450,000–$675,000 | 639.20 | $592,323.50 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 250–500 | $225,000–$450,000 | 352.30 | $270,718.50 |
| 21 | Exclusivity | 5–10 | $4,500–$9,000 | 0.30 | $232.50 |
| 22 | Disclosure Statement/ Solicitation/Plan/Confirmation | 200–300 | $180,000–$270,000 | 249.50 | $187,790.50 |
| 25 | Travel Time | 10–25 | $9,000–$22,500 | 3.00 | $3,770.00 |
| 28 | General Corporate Matters | 25–100 | $22,500–$90,000 | 26.10 | $12,605.50 |
| 31 | Business Operations | 250–500 | $225,000–$450,000 | 320.50 | $342,456.50 |
| 32 | Intellectual Property | 250–500 | $225,000–$450,000 | 311.20 | $330,348.50 |
| 33 | Sackler Rule 2004 Discovery | 500–750 | $525,000–$787,500 | 745.00 | $765,895.50 |
| Voluntary Reduction Related to Political Contributions Motion | | | | | ($98,329.50) |
| **TOTAL** | | **18,500–24,785** | **$15,783,750–$21,417,125** | **21,440.50** | **$17,563,479.00** |

1

## EXHIBIT E

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $19,476.70 |
| Color Copy | $8,143.75 |
| Computerized Legal Research - Courtlink - In Contract 50% | $471.93 |
| Computerized Legal Research - Other | $2,703.98 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $76,158.11 |
| Computerized Legal Research - Westlaw - Out of Contract | $415.74 |
| Courier Service/Messenger Service - Off Site | $893.63 |
| Document Retrieval | $2,354.00 |
| Dues - Miscellaneous Dues | $50.00 |
| Duplication - In House | $388.80 |
| File History | $598.50 |
| Filing Fees | $600.00 |
| Imagine/Computerized Litigation Support | $2,906.25 |
| Local Transportation - Overtime | $305.52 |
| Meals - 100% | $3,116.25 |
| Meals - Business | $36.52 |
| Meals - Overtime | $489.20 |
| Miscellaneous | $100.04 |
| Overtime - Admin Staff | $819.65 |
| Postage | $13.25 |
| Professional Fees - Legal | $102,150.50 |
| Refund Expenses | $5,447.60 |
| Research | $248.88 |
| Telephone - Long Distance | $789.00 |
| Transcripts | $3,922.50 |
| Travel - Airfare | $838.42 |
| Travel - Ground Transportation | $1,037.28 |
| Travel - Lodging (Hotel, Apt, Other) | $694.51 |
| Travel - Parking | $0.00 |
| Travel - Telephone & Fax | $39.95 |
| Travel - Train fare | $835.28 |
| **Total Expenses Requested:** | **$236,045.74** |

**<u>EXHIBIT F</u>**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 25 | $1,250.00 |
| Senior Counsel and Counsel | 25 | $975.00 |
| Associate | 35 | $675.00 |
| Staff Attorneys and Paraprofessionals | 35 | $350.00 |