Hearing Date: July, 23, 2020 at 2:00 p.m. (Prevailing Eastern Time)
Objection Deadline: July 22, 2020 at 12:00 p.m. (Prevailing Eastern Time)

Sander L. Esserman
Peter C. D'Apice
STUTZMAN, BROMBERG, ESSERMAN &
 PLIFKA, A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, TX 75201
Telephone: 214-969-4900
Facsimile: 214-969-4999
esserman@sbep-law.com
dapice@sbep-law.com
*Counsel to Tiffany Dunford as Next*
*Friend of T.N. Dunford*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | ) | **Chapter 11** |
| | ) | |
| **PURDUE PHARMA L.P.,** *et al.,*[1] | ) | **Case No. 19-23649 (RDD)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

-----------------------------------------------------------x

## NOTICE OF HEARING ON MOTION TO
## PERMIT THE FILING OF A CLASS PROOF OF CLAIM

**PLEASE TAKE NOTICE** that on July 15, 2020, Tiffany Dunford as Next

Friend of T.N. Dunford filed their *Motion to Permit the Filing of a Class Proof of Claim*

(the "**Motion**"). A hearing on the Motion will be held on **July 23, 2020, at 2:00 p.m.**

**(Prevailing Eastern Time)** (the "**Hearing**") before the Honorable Judge Robert D.

Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

District of New York, at the United States Bankruptcy Court for the Southern District of

New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy**

**Court**") or at such other time as the Bankruptcy Court may determine.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be

obtained free of charge by visiting the website of Prime Clerk LLC at

https://restructuring.primeclerk.com/purduepharma.  You may also obtain copies of any

pleadings by visiting the Bankruptcy Court's website at http://nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

      **PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or

adjourned thereafter from time to time without further notice other than an announcement

of the adjourned date or dates that the Hearing or a later hearing.

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the

Motion shall be in writing, shall comply with the Federal Rules of Bankruptcy Procedure

and the Local Bankruptcy Rules for the Southern District of New York, shall be filed

with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including

attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399

(which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest,

on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy

delivered directly to Chambers), in accordance with the customary practices of the

Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served

in accordance with General Order M-399 and the Second Amended Order Establishing

Certain Notice, Case Management, and Administrative Procedures, entered on November

18, 2019 [Docket No. 498], so as to be filed and received no later than **July 22, 2020, at**

**12:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

      **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted upon default.

      **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and

served with respect to the Motion, Tiffany Dunford as Next Friend of T.N. Dunford may,

on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially

in the form of the proposed order annexed to the Motion, which order may be entered

without further notice or opportunity to be heard.

July 15, 2020
Dallas, Texas

                    **STUTZMAN, BROMBERG, ESSERMAN
                    & PLIFKA, A PROFESSIONAL
                    CORPORATION**

                    By: *Sander L. Esserman*

                    Sander L. Esserman
                    Peter C. D'Apice
                    2323 Bryan Street, Suite 2200
                    Dallas, TX 75201
                    Telephone:  (214) 969-4900
                    Facsimile:  (214) 969-4999

                    **COUNSEL TO TIFFANY DUNFORD
                    AS NEXT FRIEND OF T.N. DUNFORD**

**Requested Hearing Date: July 23, 2020 at 2:00 p.m. (Prevailing Eastern Time)**
**Requested Objection Deadline: July 22, 2020 at 12:00 p.m. (Prevailing Eastern Time)**

Sander L. Esserman
Peter C. D'Apice
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA,
A PROFESSIONAL CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900
(214) 969-4999 (facsimile)
esserman@sbep-law.com
dapice@sbep-law.com

*Counsel to Tiffany Dunford as Next*
*Friend of T.N. Dunford*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| **PURDUE PHARMA, INC.,** *et al.,*[1] | **Case No. 19-23649 (RDD)** |
| **Debtors.** | **(Jointly Administered)** |

## MOTION TO PERMIT THE FILING OF A CLASS PROOF OF CLAIM

---

[1] The Debtors in these Chapter 11 cases are: Purdue Pharma L.P., Purdue Pharma, Inc., The Purdue Frederick Company, Inc., and other Purdue related entities or individuals. For ease of reference, "Purdue" as used herein, refers to all of the Debtor entities and persons.

# TABLE OF CONTENTS

**SUMMARY FOR THE COURT'S CONVENIENCE**                                          **1**

**JURISDICTION AND VENUE**                                                       **2**

**BACKGROUND**                                                                   **2**

**MOTION AND RELIEF REQUESTED**                                                  **4**

    **A. The NAS infants on the West Virginia Department of Health and Human Resources list are identifiable claimants who have not received actual notice of their rights in this bankruptcy.**                                                                    **4**

    **B. The Court should permit Movant, as a Class Representative, to file a Class proof of claim on behalf of the 4,000 or so NAS infants listed with the West Virginia Department of Health and Human Services, apply Rule 23 procedures to the claim, and certify the Class for liability purposes or at least for notice purposes.**    **6**

    1.  **The Court has the discretion to apply Rule 7023 to proofs of claim.**     **7**

    2.  ***Musicland* Factor 1: This Motion, filed before the bar date, is timely and is consistent with the efficient administration of the Estates.**    **9**

    3.  ***Musicland* Factor 2: That a class was not certified prior to the Bankruptcy is not a sufficient reason to prevent class treatment.**    **11**

    4.  ***Musicland* Factor 3: The members of the proposed Class did not receive notice of the Bar Date.**    **11**

    5.  **Applying Rule 7023, the Court should grant the Motion to proceed as a Class.**    **13**

    6.  **The Class Satisfies All of the Rule 23(a) Factors.**    **14**

        a.  **Numerosity: The Class is So Numerous that It Is Impracticable to Bring All Class Members Before the Court.**    **14**

        b.  **Commonality: Common Factual and Legal Question Exist.**    **15**

        c.  **Typicality: The Class Representative's Claims Are Typical of the Class.**    **17**

        d.  **Adequacy: The Class Representative and Her Attorneys Are Adequate.**    **18**

    7.  **The Class Satisfies the Requirements of Rule 23(b).**    **22**

**REQUEST FOR RELIEF**                                                           **28**

**NOTICE**                                                                       **28**

i

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997)                                    25

*Amgen Ind. V. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455 (2013)                      14

*Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004)                   15

*Baker v. Wash. Mut. Fin. Grp., LLC,* 193 Fed. App'x 294 (5th Cir. 2006)              23

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3rd Cir. 1998)                              18

*Bradburn v. 3M,* No. Civ.A.02-7676, 2004 WL 1842987 (E.D. Pa. Aug. 18, 2004)            19

*Bonner v. Adams,* 734 F.2d 1094 (5th Cir. 1984*)*                                      6

*Cason-Merenda v. VHS of Mich., Inc.* 296 F.R.D. 528 (E.D. Mich. 2013)        14, 16, 25

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)                                     14

*Gentry v. Siegel,* 668 F.3d 83 (4th Cir. 2012)                                     8, 11

*Golden v. City of Columbus,* 404 F. 3d 950 (6th Cir. 2005)                            15

*Griffin v. Flagstar Bancorp Inc.* 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)       16, 18

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)                              15

*In re Am. Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988)                            7, 8, 9

*In re Birting Fisheries, Inc.*, 92 F.3d 939 (9th Cir. 1996)                            8

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001)                   25

*In re Chaparral Energy, Inc.*, 571 B.R. 642 (Bankr. D. Del. 2017)        5, 8, 9,11,12,13

*In re Charter Co.*, 876 F.2d. 866 (11th Cir. 1989)                                   8, 9

*In re Chiang*, 385 F.3d 2556 (3rd Cir. 2004)                                       15, 16

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3rd Cir. 2015)     16

*In re Connaught Group, Ltd.*, 491 B.R. 88 (Bankr. S.D.N.Y. 2013)                        11

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981)            18

*In re Craft,* 321 B.R. 189 (Bankr. N.D. Tex. 2005)                                       6

*In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291 (D. Del. 2003)                    15

*In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1 (S.D.N.Y. 2005)                           9

*In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998)              10

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)       15, 18, 25

*In re Kaiser Group Int'l Inc.,* 278 B.R. 58 (Bankr. D. Del. 2002)                     8, 11

*In re MF Glabal Inc.*, 512 B.R. 757  (Bankr. S.D.N.Y. 2014)                          11, 12

*In re Motors Liquidation Co.*, 447 B.R. 150 (Bankr. S.D.N.Y. 2011)                      10

*In re Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007)                 9, 10, 11, 12, 13

*In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241 (3d Cir 2009)                  16, 26

*In re Orthopedic Bone Screw Prods.* Liab. Litig., 176 F.R.D. 158 (E.D. Pa. 1997)        24

*In re Pac. Sunwear of Cal, Inc.*, No. 16-10882, 2016 WL 3564484 (Bankr. D. Del. June 22, 2016)     8, 10

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995)                          25

*In re Sacred Heart Hosp.*, 177 B.R. 16 (Bankr. E.D. Pa 1995)                            12

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)                 25, 26

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*, No. 2:97-cv-11441-RDP, 2010 WL
    11506713 (N.D. Ala. May 19, 2010), *aff'd sub nom. Juris v. Inamed Corp.,* 685 F.3d 1294
    (11th Cir. 2012)                                                 23, 24
*In re Spring Ford Indus.*, 2003 WL 21785960 (Bankr. E.D. Pa. July 25, 2003)           10
*In re Spring Ford Indus.*, No. 02-15015DWS, 2004 WL 231010 (Bankr. E.D. Pa. Jan. 20, 2004)
                                                                15
*In re Tarragon Corp.*, No. 09-10555 DHS, 2010 WL 3842409 (Bankr. D.N.J. Sept 24, 2010)   10
*In re Trebol Motors Distrib. Corp.*, 220 B.R. 500 (1st Cir. 1998)                   8
*In re United Cos. Fin. Corp.*, 276 B.R. 368 (Bankr. D. Del. 2002)                 8
*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3rd Cir. 2004)             14
*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)14,
    15, 16, 25, 26
*In re Zenith Labs, Inc.*, 104 B.R. 659 (D.N.J. 1989)                             7, 8
*In re: Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158 (E.D. Pa.1997)             24
*Int'l Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363 (E.D. Mich. July
    13, 2006)                                                   18
*Johnston v.  HBO Film Mgmt.*, 265 F.3d 178 (3rd Cir. 2001)                 16, 18
*Marcus v. Dep't of Revenue*, 206 F.R.D. 509 (D. Kan. 2002)                   19
*Miller v. Univ. of Cincinnati*, 241 F.R.D. 285 (S.D. Ohio 2006)               15
*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950*)*              6
*Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353 (3d Cir. 2015)              26
*Neal v. Casey,* 43 F.3d 48 (3rd Cir. 1994)                             16, 26
*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 259 F.3d 154 (3rd Cir. 2001)     17
*Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999)                           23
*Powers v. Hamilton Cnty. Public Defender Comm*, 501 F.3d 592 (6th Cir. 2007)       26
*Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989), *cert denied*, 494 U.S. 1080 (1990)   8
*Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3rd Cir. 2015)                    16, 26
*Steward v. Abraham,* 275 F.3d 220 (3rd Cir. 2001)                         15
*Stott v. Capital Fin. Servs., Inc.,* 277 F.R.D. 316 (N.D. Tex. 2011)             23
*U.S. v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir. 1990)            6
*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011)                     14


**Statutes**

11 U.S.C. § 105                                   1
11 U.S.C. § 501                                   7
28 U.S.C. § 1334                                2
28 U.S.C. § 1409                                1
28 U.S.C. § 157                                  2
28 U.S.C. § 157(b)(1)                             21

**Other Authorities**

| | |
|---|---|
| 2 Newberg on Class Actions § 4:9 (4th ed. 2009) | 23 |
| West Virginia Code § 16-22B-1, et seq. | 3 |
| West Virginia Code of State Regulations § 64-83-7.1 | 4 |

**Rules**

| | |
|---|---|
| Fed. R. Bankr. P. 3011 | 7 |
| Fed. R. Bankr. P. 7023 | passim |
| Fed. R. Bankr. P. 9014 | 1 |
| Fed. R. Bankr. P. 9014(c) | 7, 8, 28, 29 |
| Fed. R. Civ. P. 23 | passim |
| Fed. R. Civ. P. 23(a) | 14, 15, 17, 18, 25 |
| Fed. R. Civ. P. 23(a)(1) | 15, 16 |
| Fed. R. Civ. P. 23(a)(2) | 16 |
| Fed. R. Civ. P. 23(a)(3) | 17, 18 |
| Fed. R. Civ. P. 23(a)(4) | 18 |
| Fed. R. Civ. P. 23(b) | 14, 22 |
| Fed. R. Civ. P. 23(b)(1) | 23, 24 |
| Fed. R. Civ. P. 23(b)(1)(B) | 22, 23 |
| Fed. R. Civ. P. 23(g) | 19 |

**SUMMARY FOR THE COURT'S CONVENIENCE**

The West Virginia Department of Health and Human Resources possesses a list identifying an estimated 4,000 infants born after October 2016 with Neonatal Abstinence Syndrome ("**NAS**), a disease caused by Intrauterine Substance Exposure to a neuroactive drug— like oxycodone—used by a mother during her pregnancy. These innocent infants are presently identifiable creditors of the Debtors and yet almost certainly have not received *actual* notice of this bankruptcy, notice to which they have a Constitutional due process right before they can be bound by a plan of reorganization in this case.

Movant here, Tiffany Dunford as Next Friend of T.N. Dunford, who was born November 21, 2016, in Charleston, WV and is a sufferer of this dreadful disease, seeks in this motion to protect the interests of these 4,000 or so identifiable sufferers of Debtors' malefactions through a request for an order pursuant to Bankruptcy Code §105, Fed. R. Bankr. P. 9014 and 7023, and Fed. R Civ. P. 23, granting Movant Tiffany Dunford as Next Friend of T.N. Dunford, leave to file a proof of claim as class representative on behalf of a proposed class of claimants consisting of those approximately 4,000 identifiable infants, applying Fed. R. Bankr. P. 7023 to the class claims, and certification of the class, as defined and set forth below. This class can be limited for purposes of determining liability and damages, or can be a limited class for notice purposes only. So long as the rights of these most innocent victims in this bankruptcy are protected. If this class is certified for the purpose of determining liability and damages, the class will seek recovery of damages for infant treatment of NAS, pain and suffering, and the reasonable certainty of permanent impairment.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §§157(b)(1) and (2)(A). Venue is proper in this district under 28 U.S.C. §1409.

## BACKGROUND

The Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"). The Debtors continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1007(a) and 1108. The United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors ("**UCC**") pursuant to Bankruptcy Code Section 1102.

Data show that West Virginia has among the highest rates of infants born with Neonatal Abstinence Syndrome ("**NAS**"). NAS is a disease caused by Intrauterine Substance Exposure. That is, passive exposure the fetus occurs *in utero* when a mother uses a neuroactive drug—like oxycodone—during her pregnancy. When the infant is born and is then deprived of these substances, Neonatal Abstinence Syndrome may develop.

NAS is indisputably and indiscriminately devastating and heart wrenching. NAS-afflicted babies may suffer birth defects, seizures, tremors, abnormal heart rate and other cardiac problems, breathlessness, fever, sleeplessness, and vomiting. NAS-afflicted babies cry inconsolably from the pain of withdrawal. Costs to care for babies with NAS can be nearly 20 times greater than costs for babies without NAS. Moreover, these problems do not "just go away" as the babies grow. These children suffer ongoing physical and cognitive developmental problems. Some of these issues are permanent.

West Virginia has—and has had for more than a decade—among the nation's highest rates of NAS. A significant reason for that dubious distinction is the maternal use of opioids during pregnancy. As this Court is well aware, the primary driver of the increase in the use of opioids more broadly—and this certainly holds true in West Virginia—are the actions of the Debtors.

Movant's counsel has worked diligently for months to identify and notify West Virginia families of children born with NAS tied to opioid exposure and has successfully reached many families -- Movant's counsel represents some 111 such West Virginians. However, just recently, Movant's counsel became apprised of a repository of identifying data on infants born in West Virginia, which data is collected and maintained by the West Virginia Birth Score/Project WATCH program. Every birthing hospital in West Virginia is required by West Virginia law to collect and submit data on every infant born in their respective facilities. WV Code § 16-22B-1, *et seq*. Accordingly, data is collected on 99% of the infants born in West Virginia. Significantly, since October 2016, the program has collected data on Intrauterine Substance Exposure, and whether the infant developed NAS. This data identifies the infants and provides their families' last known contact information. *See* Exhibit A. But West Virginia regulations make access to this data by Movant's counsel extremely difficult, at least without a court order, which this Court can provide.

How many infants are identified in this data? A study just a year after such data was being collected showed that rate of NAS in West Virginia to be 53 per 1000. If that rate has held steady, that would result in approximately 1,000 NAS infants born each year in West Virginia. Accordingly, there are likely 4,000 infants who have been born with NAS since such data started being collected in October 2016.

3

Counsel has sought to provide notice of this bankruptcy proceeding and the potential for recovery therefrom to the next friends of the infants identified with NAS to the Birth Score/Project WATCH program. However, the West Virginia Department of Health and Human Resources takes the position that West Virginia Code of State Regulations § 64-83-7.1 prevents such notice being given. That section provides: "Any person who obtains confidential information while implementing W.Va. Code §16-22B-1 *et seq*. and this rule may disclose it only to reporting sources, persons demonstrating a need essential to health related research or care of the newborn infant, or as required by law." Movant's counsel's efforts to obtain this data have met with regulatory roadblocks and bureaucratic slowdowns caused by the Covid-19 pandemic.

Accordingly, as of today, it is beyond doubt that a significant percentage of West Virginia children born with NAS have not received actual notice of their rights in this bankruptcy.

This Court can accomplish what Movant's counsel has been unable to achieve. Should the relief sought in this Motion be granted, giving actual notice to these infants would be "required by law." Without the formation of the Class requested in this Motion, most of these children who potentially have significant claims in this bankruptcy will be left out of this bankruptcy entirely.

## MOTION AND RELIEF REQUESTED

**A. The NAS infants on the West Virginia Department of Health and Human Resources list are identifiable claimants who have not received actual notice of their rights in this bankruptcy.**

1.     There are thousands of identifiable Class Members who have not received adequate actual notice of the Bar Date in this case. The Class includes all infants listed with the

West Virginia Department of Health and Human Resources ("**WVDHHR**"). While the Debtors could have gained access to the identities and contact information for each of those infants, they have not done so and so have not provided actual notice of these proceedings directly to the NAS infants.[2] If claimants are known creditors, then due process entitles them to actual notice of the bankruptcy proceedings. *In re Chaparral Energy*, 571 B.R. 642 (Bankr. D. Del. 2017); *Chemetron Corp. v. Jones*, 72 F.3d 341, 345-47 (3rd Cir. 1995). As characterized by the Supreme Court, a known creditor is one whose identity is either known or reasonably ascertainable by the debtor. *Chemetron Corp.*, 72 F.3d at 346 (citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). A creditor's identity is reasonably ascertainable if that creditor can be identified through reasonably diligent efforts. *Id*.

   2.    Because the WVDHHR has a list of NAS infants born in WV since October 2016, the identity of those creditors can be ascertained through reasonably diligent efforts. As such, the WV NAS infants are known creditors, and they are entitled to actual notice of these proceedings.

---

[2] It is evident that these WV NAS infants did not receive actual notice because it does not appear that any of the more than 4000 WV NAS infants have filed individual proofs of claim and the only anticipated individual filings are from WV NAS infants that Movant's counsel represent, and the families of those individual infants have indicated to Movant's counsel that but for Movant's counsel's efforts through advertising and other promotion done by counsel, they had no notice or other knowledge of this pending bankruptcy nor of its effect on the rights of the minor children in their care. Further, before the bankruptcy petition was filed, Movant's Counsel had received calls from more than 100 families of NAS infants who alleged to have claims against Debtors, but none of those families received notice of these proceedings from the Debtors. Instead, those families responded to Movant's counsel's advertising and promotional efforts regarding potential claims for NAS infants against all opioid related companies and received no notice from the Debtor. Additionally, Movant's counsel has spoken directly with West Virginia Birth Score program representatives, including the Executive Director of the West Virginia Chapter of the American Academy of Pediatrics, who have indicated to Movant's counsel that they had no notice or knowledge, prior to speaking with Movant's counsel, of the pending bankruptcy or the effect upon the WV NAS infants, and received no notice from the Debtor.

3.      As a result, the vast majority of the WV NAS infants have not been provided with adequate notice of these bankruptcy cases, which raises significant due process concerns. As stated by the United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.*, "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of . . . property by adjudication be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). The right to file a proof of claim in a bankruptcy is a property right that is subject to due process. *U.S. v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089-90 (6th Cir. 1990). To discharge the claims of the Class Members without first providing them with actual notice of these bankruptcy proceedings would therefore be a violation of their constitutional right to due process.

4.      Consequently, if the Class Claim requested herein is not allowed, then Class Members without actual notice will have non-dischargeable claims. *In re Craft*, 321 B.R. at 194 (citing *Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1098 (5th Cir. 1984)). From the Debtors' perspective, the lack of adequate notice therefore presents problems for them moving forward post-discharge. Allowing the Class Claim will reduce the possibility of unnoticed Class Members commencing their own individual or class action post-discharge, and it is therefore in the Debtors' best interest because it will improve the Debtors' fresh start. *Id.* at 195.

**B. The Court should permit Movant, as a Class Representative, to file a Class proof of claim on behalf of the 4,000 or so NAS infants listed with the West Virginia Department of Health and Human Services, apply Rule 23 procedures to the claim, and certify the Class for liability purposes or at least for notice purposes.**

5.      Movant respectfully requests that this Court: (a) exercise its discretion pursuant to Fed. R. Bankr. P. 9014(c) and apply Fed. R. Bankr. P. 7023 to a Class Proof of Claim; (b) accept

for filing a Class Proof of Claim, filed by Movant as Class Representative on behalf of all similarly situated claimants, and certify a Class as requested below; (c) appoint Movant's counsel as Class Counsel; and (d) grant such further relief as this Court deems just and equitable under the circumstances. By this Motion, and for the purposes of its Class Proof of Claim, the Movant as Class Representative seeks to certify a Class defined as follows:

> All children born in the State of West Virginia on or after October 1, 2016, who have been identified by the Birth Score/Project WATCH program as having been diagnosed with Neonatal Abstinence Syndrome.

### 1.      The Court has the discretion to apply Rule 7023 to proofs of claim.

6.      Bankruptcy courts have regularly exercised their discretion to permit the filing of class proofs of claim by applying Fed. R. Bankr. P. 7023 to the proof of claims procedure set forth in Fed. R. Bankr. P. 3011. *See, e.g., In re Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988); *see also In re Zenith Labs, Inc.*, 104 B.R. 659, 662 (D.N.J. 1989).

7.      While Bankruptcy Code section 501 is silent on whether the Code permits class claims, Fed. R. Bankr. P. 7023 adopts Fed. R. Civ. P. Rule 23 and expressly permits class actions in adversary proceedings. Fed. R. Bankr. P. 7023 ("Rule 23 Fed. R. Civ. P. applies in adversary proceedings."). Outside of adversary proceedings, bankruptcy courts permit class claims pursuant to Fed. R. Bankr. P. 9014(c), which provides that a "court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. R. 9014(c). As the Seventh Circuit observed, Rule 7023 is one of the rules, within Part VII, that the court may incorporate: "Filing a proof of claim is a 'stage.' All disputes in bankruptcy cases are either adversary proceedings or contested matters, so Fed. R. Civ. P. 23 may apply throughout a bankruptcy case at the bankruptcy judge's discretion." *In re Am. Reserve Corp.*, 840 F.2d at 488. Consistent with Fed. R. Bankr. P. 9014(c), the application of Fed. R. Bankr. P.

7023 to proofs of claim is at the court's discretion. *Id.* at 493. Indeed, every Court of Appeals that has addressed the question of whether class claims are permissible has answered in the affirmative. *See, e.g., In re Charter Co.*, 876 F.2d. 866, 873 (11th Cir. 1989); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1472 (6th Cir. 1989), *cert denied*, 494 U.S. 1080 (1990); *In re Birting Fisheries, Inc.*, 92 F.3d 939 (9th Cir. 1996); *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (1st Cir. 1998); *Gentry v. Siegel,* 668 F.3d 83, 91 (4th Cir. 2012).

8.      Bankruptcy courts have addressed the issue and permitted class claims subject to the bankruptcy court's discretion. *See, e.g., In re Chaparral Energy, Inc.*, 571 B.R. 642 (Bankr. D. Del. 2017); *In re Pac. Sunwear of Cal, Inc.*, No. 16-10882, 2016 WL 3564484 (Bankr. D. Del. June 22, 2016); *In re United Cos. Fin. Corp.*, 276 B.R. 368 (Bankr. D. Del. 2002); *In re Kaiser Group Int'l Inc.,* 278 B.R. 58 (Bankr. D. Del. 2002); *Zenith Labs,* 104 B.R. at 662.

9.      In addition to the consensus among the Circuit Courts regarding the construction of the Bankruptcy Rules set forth in *American Reserve,* other district courts have also articulated compelling arguments in support of class claims in bankruptcies. *Zenith Labs,* 104 B.R. at 644 ("the policies underlying the class action and Congress' explicit provision for the application of Fed. R. Civ. P. 23 to bankruptcy proceedings supports the view that [*In re American Reserve* and its progeny] set forth the better rule."). Further, such application of "Rule 23 [] is consistent with Congress' intention to make bankruptcy proceedings available to 'the widest possible range of players.'" *In re Charter Co.*, 876 F.2d. at 870 (internal citations omitted).

10.     In *In re Musicland,* the United States Bankruptcy Court for the Southern District of New York articulated the factors that a bankruptcy court should consider in deciding to exercise its discretion to permit a class proof of claims. *In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007). Those factors are: (a) whether class certification will adversely

affect the administration of the estate; (b) whether the class was certified pre-petition; and (c) whether the members of the putative class received notice of the bar date. *See, e.g., In re Musicland,* 362 B.R. at 654 (the "*Musicland* Factors"). This Court adopted the *Musicland* Factors in *Chaparral Energy*, 571 B.R. at 646. In considering these factors, no single factor is dispositive, and the weight given to any factor depends on the facts of each case. *Id.*

11.     Here, where the *Musicland* factors weigh heavily in favor of allowing a class claim, this Court should exercise its discretion and apply Bankruptcy Rule 7023.

**2.     *Musicland* Factor 1: This Motion, filed before the bar date, is timely and is consistent with the efficient administration of the Estates.**

12.     When deciding whether a claim is prejudicial to the debtor and will adversely affect the administration of the estate, the courts look first to the timeliness of the motion and the filing of the underlying proof of claim for which class certification is sought, and then to the overall delay in the administration of the estate. *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 6-7 (S.D.N.Y. 2005). Here, the Movant, as Class Representative of the proposed Class, seeks expedited review of this Motion and intends to file a Class Proof of Claim prior to the bar date. Accordingly, the Class Claim and the instant Motion are both timely and do not implicate any delay, much less any undue delay.

13.     Courts have uniformly held that a claimant's proof of claim is properly considered even if a motion for class certification is not yet pending. *See, e.g., In re Tarragon Corp.*, No. 09-10555 DHS, 2010 WL 3842409, at *7 (Bankr. D.N.J. Sept 24, 2010) ("[t]his court has held a motion for class certification was timely when filed with a proof of claim. Thus, the applicability of Rule 7023 is ripe and appropriately considered at this stage.") (internal citations omitted. *See also In re First Interregional Equity Corp.*, 227 B.R. 358 (Bankr. D.N.J. 1998) (same); *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011) (same). Thus, the timing of

the Movant's filing of the instant Motion and the proposed timely filing of a Class Proof of

Claim weighs in the Class's favor because "[p]rejudice [only] occurs when the allowance of a

*late* claim would injure or damage a bankruptcy debtor." *In re Spring Ford Indus.*, 2003 WL

21785960, at *14 (Bankr. E.D. Pa. July 25, 2003) (emphasis added). *See also In re Musicland*

*Holding Corp.*, 362 B.R. at 654. This Court has further held that motions are timely when filed

prior to the proof of claim date – as is the case here. *See, e.g., In re Pacific Sunwear of Cal, Inc.*,

Case No. 16-10882 (LSS) Jointly Administered), 2016 WL 3564484, at *6 (Bankr. D. Del. June

22, 2016) (finding no delay to the administration of the bankruptcy where the motion for

approval of the class claim was filed before the bar date had passed, and the "claims

administration process was in its initial stages").

14.    Further, allowing the Class Claim will not delay the administration of the

Debtors' estates. First, as noted above, the identities and contact information of the infants born

in West Virginia with NAS has already been compiled by the West Virginia Birth Score/Project

WATCH program and can be obtained by the Class Representative, or her counsel, upon this

Court's approval of the filing of the Class Claim and order to release that information. These

victims can then be given notice of their rights in this bankruptcy. Even if the Class claims herein

were disputed, the filing of a Class Claim would streamline, and not complicate, the

administration of these roughly 4,000 claims. If the Debtors or others dispute these claims, class

treatment would streamline the resolution of any disputes over the claims of the proposed Class.

15.    The Debtors knew of the claims of the absent Class members before the

bankruptcy. Cases filed by Class members have been pending since February 2019, and Purdue

defended its interests in the MDL in many cases brought by Class members seeking damages for

the personal injuries and damages of their individual members. Thus, there is no prejudicial delay, and this factor weight heavily in favor of allowing the Class Claim.

3.    *Musicland* **Factor 2: That a class was not certified prior to the Bankruptcy is not a sufficient reason to prevent class treatment.**

16.    Of the 111 claimants already represented by Movant's counsel, almost all of the complaints or claims filed so far by those who would be included in the Class have been brought on an individual basis. No class has been certified yet, but the lack of pre-petition certification is not, on its own, a sufficient basis for the Court to decline to exercise its discretion to permit Class Claim. *In re Chaparral Energy, Inc.*, 571 B.R. at 646 (noting that a class was not certified prepetition but stating, "[n]onetheless, the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023 in these circumstances"); *In re Kaiser Group Intern., Inc.*, 278 B.R. 58, 62-63 (Bankr. D. Del. 2002) (allowing the filing of a class proof of claim where class was not certified pre-petition); *Gentry v. Siegel,* 668 F.3d 83, 91 (4th Cir. 2012) (same); *In re MF Global Inc.*, 512 B.R. 757, 763-65 (Bankr. S.D.N.Y. 2014) (same); *In re Connaught Group, Ltd.*, 491 B.R. 88, 98-100 (Bankr. S.D.N.Y. 2013) (same).

17.    Thus, because the other factors weigh heavily in the Class's favor, the fact that the Debtors filed for bankruptcy protection prior to certification of a class should not affect the Class's ability to obtain class treatment here.

4.    *Musicland* **Factor 3: The members of the proposed Class did not receive notice of the Bar Date.**

18.    Another factor in favor of permitting the Class Claim is the absence of any indication that Debtors provided notice to absent Class members. As such, the final *Musicland* factor weighs heavily in favor of allowance of the Class Claim. In fact, one court has declared that the fact that the putative class members received no notice of the bar deadline may, alone,

justify exercising discretion to apply Rule 71023. *In re MF Global Inc.*, 512 B.R. 752, 763

(Bankr. S.D.N.Y. 2014) ("[t]he filing of a class proof of claim is consistent with the Bankruptcy

Code generally in two principal situations: (i) where a class has been certified prepetition by a

non-bankruptcy court and (ii) where there has been ***no actual or constructive notice to the class***

***member of the bankruptcy case and Bar Date"***) (citations omitted and emphasis added).

Similarly, in *Sacred Heart Hosp.*, the court determined that if the unnamed class members are

largely a group which a debtor has failed to notify individually, as appears to be the case here,

then the class device provides the only form of notice available to those class members and is,

therefore, particularly advisable. *In re Sacred Heart Hosp.*, 177 B.R. 16, 22 (Bankr. E.D. Pa

1995).

19.    This is true even if some members of the class did receive notice. For example, in

*Chaparral Energy,* this Court found that this factor weighed in favor of permitting the class

claim because the debtor had only provided notice to class members whose claims preceded the

bankruptcy by three years, even though the class action litigation had commenced five years

earlier. *Chaparral Energy, Inc.*, 571 B.R. at 646-47. The court held that this notice was

insufficient as to unnamed class members:

> The failure to notify each and every putative class member may not always be
> fatal to a class claim objection. But, under the facts of this case, the Debtors'
> failure to notice all Putative Class members weighs in favor of exercising
> discretion to apply Bankruptcy Rule 7023 to this class claim. To find otherwise
> would condone the Debtors' failure (albeit, perhaps unintentional) to provide
> actual notice to its known creditors, whose information was indisputable in the
> Debtors' books and records. *Id*. at 648 (emphasis added).

20.    Movant's Counsel has worked diligently in an effort to identify and provide

notice to Class members. However, Counsel has been thwarted in that effort by West Virginia

regulations and the unplanned delays caused by the pandemic, and as a result, it is highly

doubtful that the Class members here have received adequate notice of their claims. By extending the application of Rule 7023, this Court will ensure that the Class claimants' due process rights to notice are protected as a group and avert the judicial nightmare of an avalanche of case-by-case due process analyses required for individual claimants who, but for lack of notice, may have filed individual proofs of claim. Thus, this factor applies heavily in favor of applying Rule 7023.

21.    Because the great weight of the *Musicland* factors favors applying Rule 7023, the Court should exercise its discretion to permit the Class Proof of Claim.

**5.    Applying Rule 7023, the Court should grant the Motion to proceed as a Class.**

22.    Once the Court has exercised its discretion to extend Rule 7023 to the Class Proof of Claim, the next inquiry is whether to certify the class which the Proof of Claim governs. By this Motion, and for the purposes of its Proof of Claim, the Class Representative seeks to certify a Class defined as follows:

> All children born in the State of West Virginia on or after October 1, 2016, who have been identified by the Birth Score / Project WATCH program as having been diagnosed with Neonatal Abstinence Syndrome.

23.    A court should certify a class, where, as here, the class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy), as well as one of the three subsections of Rule 23(b). *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3rd Cir. 2004). The Class claim satisfies all the requirements of Fed. R. Civ. P. 23, incorporated into and made applicable to this proceeding through Bankr. R. 7023.

24.    The Supreme Court recently reiterated that a trial court must conduct a "rigorous analysis" to confirm that Rule 23's requirements have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, "the requisite 'rigorous analysis' of the record and

13

consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.* 296 F.R.D. 528, 536 (E.D. Mich. 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Thus, permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited.

25.     Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Amgen Ind. V. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 465-466 (2013) (citing *Dukes*, 564 U.S. at 351 n.6). In other words, for the purposes of evaluating a motion for class certification, a court should assume that the substantive allegations of the complaint are generally true and not inquire into the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met"); *In re Chiang*, 385 F.3d 2556, 262 (3rd Cir. 2004); *In re Whirlpool Corp.*, 722 F.3d at 851-52 ("[the courts] may not turn the class certification proceedings into a dress rehearsal for the trial on the merits") (internal quotation marks and citation omitted; *In re Spring Ford Indus.*, No. 02-15015DWS, 2004 WL 231010 (Bankr. E.D. Pa. Jan. 20, 2004). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

**6.     The Class Satisfies All of the Rule 23(a) Factors.**

**a.  Numerosity: The Class is So Numerous that It Is Impracticable to Bring All Class Members Before the Court.**

26.     There is no "rigid minimum number of class members necessary to warrant certification; rather, joinder of all members need only be impractical, not impossible." *In re*

*DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 295 (D. Del. 2003). *See also Steward v. Abraham,* 275 F.3d 220, 227-28 (3rd Cir. 2001) ("[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); *Miller v. Univ. of Cincinnati,* 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus,* 404 F. 3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

27. The Proposed Class includes an estimated 4,000 members. The Class members are so numerous and dispersed that individual adjudication for all of the Class members is impractical. Accordingly, the requirement in Fed. R. Civ. P. 23(a)(1) that "the class is so numerous that joinder of all members is impracticable" is met.

**b. Commonality: Common Factual and Legal Question Exist.**

28. Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp.*, 722 F.3d at 853; *see also Cason-Merenda,* 296 F.R.D. at 536 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.* 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) (same). "[T]he commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class member[s], as 'the commonality requirement will be

satisfied if the named plaintiffs share at least one question of law or fact in common with the grievances of the prospective class." *Chiang*, 385 F.3d at 265 (quoting *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3rd Cir. 2001)). Thus, this requirement is "easily met." *Neal v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994).

29.     As noted by the Third Circuit, "a properly supported RICO allegation will often contain common issues because, like "commonality[, a RICO allegation,] is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members[.]" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 487 (3rd Cir. 2015) (citing *Sullivan*, 667 F.3d at 297; and *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 269-70). Accordingly, "[w]hether the evidence presented proves a RICO conspiracy []" is a question "common to each class member and will generate common answer [.]" *Reyes*, 802 F. 3d at 487 (quoting *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 399(3rd Cir. 2015)). Questions regarding whether Purdue's conduct constitutes a violation of the UTPA or gives rise to liability for fraud, public nuisance, unjust enrichment, negligence, product liability or civil conspiracy are also common to each class member.

30.     The Class Representative has identified the following issues common to the proposed Class:

   a.  Whether Purdue misrepresented the safety and efficacy of opioids to the detriment of the proposed class;
   b.  Whether Purdue engaged in a conspiracy or conspiracies to promote the sales of opioids;
   c.  Whether Purdue engaged in a conspiracy or conspiracies to suppress adverse information about opioids;
   d.  Whether Purdue has made material misrepresentations of fact, or failed to state material facts regarding the addiction risks associated with opioids, which material misrepresentations or omissions operate as fraud upon the Class;
   e.  Whether, in marketing and selling opioids, Purdue failed to disclose the dangers and risks to the health of persons ingesting the drug;

16

f.  Whether Purdue failed to warn adequately of the adverse effects of opioids, including addiction and overdose;

g.  Whether Purdue knew or should have known that the ingestion of opioids leads to serious adverse health effects and detrimental effects on the community at large;

h.  Whether Purdue manufactured, marketed, distributed and sold opioids notwithstanding their knowledge of the drugs' dangerous nature;

i.  Whether Purdue knowingly omitted, suppressed and/or concealed material facts about the unsafe and defective nature of opioids form government regulators, the medical community and/or the consuming public;

j.  Whether Purdue engaged in conduct that violates federal RICO statutes;

k.  Whether Purdue engaged in conduct constituting a public nuisance;

l.  Whether Purdue unjustly enriched itself to the detriment of the Class;

m.  Whether Purdue acted negligently and caused the proposed Class to suffer harm:

n.  Whether Purdue violated the various state Unfair Trade Practices and Consumer Protection Acts;

o.  Whether the Sacklers have individual liability for any of the claims; and

p.  Whether the Class has been damaged, and if so, the extent of such damages and/or the nature of the equitable relief, statutory damages, or punitive damages to which the proposed Class is entitled.

### c.  Typicality: The Class Representative's Claims Are Typical of the Class.

31.    Rule 23(a) requires typicality of the class representative's claims. Fed. R. Civ. P. 23(a)(3). Like commonality, typicality is "broadly defined" and "focus[es] on similar aspects of the alleged claims." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 259 F.3d 154, 182 (3rd Cir. 2001) (quoting *Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3rd Cir. 1998)). "The [typicality] requirements is not onerous," and courts liberally construe it. *Int'l Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) *see also In re Foundry Resins Antitrust Litig. Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *6 (E.D. Mich. Dec. 12, 2013) (quotation marks and citation omitted).

32.    The Class representative's claims are typical of all the other Class members' claims. The Class members claims for damages arise out of the same alleged conduct and resulting impacts, and have the same causes of action as a result of Purdue's uniform wrongful conduct, based upon the same conduct and interactions by Purdue made uniformly to the Class

Representative and the Class Members and the public. The Class Representative's claims arise

out of the same common course of conduct giving rise to the claims of the other Class members.

Accordingly, the requirement in Fed. R. Civ. P. 23(a)(3) that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class" is satisfied.

### d. Adequacy: The Class Representative and Her Attorneys Are Adequate.

33.     The final requirement of Rule 23(a) is that the representative party "fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing this factor,

"the court must determine whether the representatives' interests conflict with those of the class

and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

The Class Representative submits that there are no conflicts between her and the proposed class

because the damages to the Class Representative and members of the proposed class arise from

the same set of alleged facts and the same legal theories regarding Purdue's liability for damages.

*See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 2018 (5th Cir. 1981) (certifying

settlement class and holding that "so long as all class members are united in asserting a common

right, such as achieving the maximum possible recovery for the class, the class interests are not

antagonistic for representation purposes") (internal quotation marks and citation omitted).

Indeed, a conflict "must be more than merely speculative or hypothetical before a named

plaintiff can be deemed inadequate." *Bradburn v. 3M,* No. Civ.A.02-7676, 2004 WL 1842987, at

*4 (E.D. Pa. Aug. 18, 2004) (quoting 5 James Wm. Moore, et. Al., Moore's Federal Practice

23.25[4][b][ii] (3rd ed. 2003)). Here, no such conflict exists.

34.     Rule 23(g) also requires the court to examine the capabilities and resources of

class counsel to determine whether they will provide adequate representation to the class. The

proposed Class here is represented by counsel with extensive experience in class action

litigation. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("[i]n absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation").

35.    The following firms representing the Class Representative seek appointment as Class counsel: Calwell Luce diTrapano, PLLC ("Calwell Firm"), The Law Firm of P. Rodney Jackson, Goodwin & Goodwin, LLP, and Forbes Law Offices, PLLC.

36.    The Calwell Firm was appointed co-lead counsel for the class in *Good v. American Water Works Company, Inc.*, 310 F.R.D. 274 (S.D.W.Va. 2015), where a settlement was achieved which provided more than $125 million in cash payments to class members. Additionally, the Calwell Firm was recently appointed co-class counsel in the case of *Snider v. Surnaik*, Case No. 17-C-377, Circuit Court of Wood County, West Virginia, a class action arising out of a 2017 warehouse fire in Parkersburg, West Virginia, with approximately 50,000 class members impacted by smoke from the fire. The Calwell Firm has many years of experience in litigating mass actions involving complex issues, including representation of West Virginia residents whose homes and property were damaged by mass flooding caused by large-scale mining and timbering operations, *In re: Flood Litigation Coal River Watershed*, 222 W. Va. 574, 668 S.E.2d 203 (2008). The Calwell Firm also represented residents whose homes were contaminated by 2,3,7,8-tetrachlorodibenzo-p-dioxin ("TCDD"), also commonly referred to as dioxin, produced at the former Monsanto chemical plant in Nitro, West Virginia, resulting in a $93 million settlement on behalf of the class. *Allen v. Monsanto, et al.*, 2013 W. Va. LEXIS 1384 (W. Va. 2013).

37.    The Law Firm of P. Rodney Jackson has successfully represented the State of West Virginia in complex litigation against the wholesale distributors of prescription opioid pain

medications who are responsible for the historic epidemic of related drug abuse, resulting in over $95 million in settlements, in *State of West Virginia v. AmerisourceBergen Drug Corp. et al.*, Boone County Civil Action No. 12-C-14 and *State of West Virginia v. Cardinal Health, Inc.*, Boone County Civil Action No. 12-C-140. Additionally, The Law Firm of P. Rodney Jackson has also litigated class actions and mass actions in the following representative cases *Arnoldt, et al. v. Ashland Oil Corp.*, 412 S.E.2d 795 (W.Va. 1991) Cir. Ct. of Kanawha Co., WV; CVA: 89-C-1054; *Wheeler, et al. v. Arkema, Inc.*, USDC Southern District of Texas, 4:17-cv-2960; *Ball, et al. v. Bielefeldt, M.D., et al.*, Ct. Common Pleas of Allegheny County, Pennsylvania; CVA: GD-14-000220; *Lopez, et al. v. Intercontinental Terminals Company LLC*, USDC Southern District of Texas; CVA 4:19-cv-01460; *Good, et al. v. American Water Works Company, Inc., et al.*, USDC Southern District of West Virginia, 2:14-cv-01374; *Sigman, et al. v. CSX Corporation*, USDC Southern District of West Virginia, 3:15-cv-13328; *Doe, et al. v. Matulis, et al.*, Cir. Ct. of Kanawha Co., WV, CVA: 16-C-1723; *Fleming, et al. v. Matulis, et al.*, Cir. Ct. of Kanawha Co., WV, CVA: 17-C-456; and *Banks, et al. v. Cotter Corporation, et al.*, USDC Eastern District of Missouri; CVA: 4:18-cv-00624 JAR.

38.     Goodwin & Goodwin, LLP has litigated or is litigating class, collective, and mass tort actions in *Davis v. Omnicare, Inc. et al.*, USDC Eastern District of Kentucky, 5:18-cv-00142-REW-MAS; *Young v. Act Fast Delivery of West Virginia, Inc. et al.*, USDC Southern District of West Virginia, 5:16-cv-09788; *Hager v. Omnicare, Inc.*, USDC Southern District of West Virginia, 5:19-cv-00484; *Ferrell, et al. v. U-Haul Co. of West Virginia*, Circuit Court of Kanawha County, West Virginia, 11-C-1426; *Spotloe v. Eastern American Energy Corporation*, Circuit Court of Barbour County, West Virginia, 06-C-53; *Burge v. Bank of America NA*, 18-C-44, Circuit Court of Braxton County, West Virginia; *Bank of America, NA v. Winfree*, 18-C-238,

Circuit Court of Mercer County, West Virginia; *Shuff v. Bank of America, NA*, 5:20-C-184,

USDC Southern District of West Virginia; *Bank of America, NA v. Burgess*, 18-C-197, Circuit

Court of Logan County, West Virginia; *Eads v. Kohl's Department Stores, Inc.*, 16-C-12642,

USDC Southern District of West Virginia; *Michael Sheridan, et al. v. Citizens*

*Telecommunications Company of West Virginia d/b/a Frontier Communications of West*

*Virginia, et al.,* 14-C-115, Circuit Court of Lincoln County, West Virginia; *Stand Energy*

*Corporation v. Columbia Gas Transmission Corporation*, 2:04-cv-00867, USDC Southern

District of West Virginia; *Dijkstra v. Carenbauer et al*, 5:11-cv-00152, USDC Northern District

of West Virginia; *Alig et al v. Quicken Loans Inc. et al*, 5:12-cv-00114, USDC Northern District

of West Virginia. Goodwin & Goodwin's lead counsel for this matter is Booth Goodwin who

served as United States Attorney for the Southern District of West Virginia from 2010-2015.

While United States Attorney, Booth Goodwin led numerous efforts and prosecutions related to

the opioid epidemic, the federal investigation and related prosecutions arising out of the Upper

Big Branch Mine Disaster, and the federal investigation and prosecutions arising out of Freedom

Industries leak which sullied the water supply for more than 300,000 customers in Southern

West Virginia.

      39.    Forbes Law Offices, PLLC has extensive experience in complex litigation,

including having represented the State of West Virginia on behalf of thousands of West Virginia

consumers resulting in an $18 million dollar recovery against a national credit card company in

*State of West Virginia v. Capital One Bank (USA) N.A, et al.* Mason County Civil Action No. 10-

C-7. Additionally, Forbes Law Offices PLLC has handled large private litigation, including

obtaining a jury trial award of $16 million dollars against an American multinational corporation

in *Eagle Research Corporation v. Emerson Electric Co.* Putnam Civil Action No. 03-C-119.

Forbes Law Offices, PLLC also represented West Virginia's largest municipality, the City of Charleston, in *Good, et al. v. American Water Works Company, Inc., et al.* USDC Southern District of West Virginia, 2:14-cv-01374, obtaining a multi-million dollar award in a contested class claim, and successfully negotiating language utilized in the final settlement protocols for all governmental claimants. Forbes Law Offices has served as Guardian Ad Litem for hundreds of drug addicted children throughout West Virginia, has served as Guardian Ad Litem in class action litigation on behalf of all minor class members in *Waldron v. Skaff*, Kanawha County Civil Action No. 17-C-1797, and has represented the State of West Virginia on behalf of thousands of consumers.

40.    All of the above firms are amply skilled at the successful pursuit of class actions and have the capabilities and resources to provide adequate representation to the class.

### 7.    The Class Satisfies the Requirements of Rule 23(b).

41.    Rule 23(b)(1)(B) authorizes certification when "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."[3] Rule 23(b)(1)(B) is applicable in so-called "limited fund" cases. "A limited fund exists when a fixed asset or piece of property exists in which all class members have a preexisting interest, and an apportionment or determination of the interests of one class member cannot be made without affecting the proportionate interests of other class members similarly situated." 2 Newberg on Class Actions § 4:9 (4th ed. 2009).

---

[3] "In contrast to class actions brought under subdivision (b)(3), in cases brought under subdivision (b)(1), Rule 23 does not provide for absent class members to receive notice and to exclude themselves from class membership as a matter of right. It is for this reason that such cases are often referred to as 'mandatory' class actions." *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 834 n. 13 (1999) (citation omitted).

42.    In *Ortiz,* the Supreme Court identified three "common characteristics" consistent with the "historical limited fund model." *Ortiz,* 527 U.S. *Id.* at 838. "The first and most distinctive characteristic," *Ortiz* explains, "is that the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitively at their maximums, demonstrate the inadequacy of the fund to pay all the claims." *Id.* The second historical characteristic is that "the whole of the inadequate fund was to be devoted to the overwhelming claims." *Id.* at 839. The third characteristic is that "the claimants identified by a common theory of recovery were treated equitably among themselves." *Id.*

43.    Courts have applied Rule 23(b)(1) to mass, or class, damages claims brought against defendants who are in financial distress, both in and out of the bankruptcy context. *See, e.g., Baker v. Wash. Mut. Fin. Grp., LLC,* 193 Fed. App'x 294 (5th Cir. 2006) (unreported); *Stott v. Capital Fin. Servs., Inc.,* 277 F.R.D. 316 (N.D. Tex. 2011); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, No. 2:97-cv-11441-RDP, 2010 WL 11506713 (N.D. Ala. May 19, 2010), *aff'd sub nom. Juris v. Inamed Corp.,* 685 F.3d 1294 (11th Cir. 2012); *In re: Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158 (E.D. Pa.1997). In *Silicone Gel Breast Implant Litig.*, for example, the court applied Rule 23(b)(1) to the claims against a breast implant manufacturer that was in difficult financial circumstances but had not yet filed for bankruptcy protection:

> The evidence shows, inter alia, that – absent the new capital contributed to the company conditioned upon approval of this settlement--Inamed has negative net worth, net liquidation value of essentially zero, and no resources to pay claims. The company has had to borrow heavily in order to stay afloat. The settlement is to be funded by additional borrowing available only in the context of this settlement, and the amount Inamed was able to raise for that purpose was constrained both by restrictions associated with its existing debt and the willingness of its lenders to assume the risk that the company's post-settlement operations would repay their investment. The record establishes that Inamed would be unable to raise such additional funds in the absence of this settlement, that the alternative of continued litigation of individual claims would drive Inamed to bankruptcy, and that the funds available to class members from this

settlement are substantially greater than the funds, if any, that would remain for class members after an Inamed bankruptcy. Considering the record evidence of Inamed's financial condition, the court finds a substantial risk that an Inamed bankruptcy would leave all class members with nothing. 685 F.3d at 1307-08.

44.    Here, similarly, the three *Ortiz* factors are plainly satisfied. First, and most importantly under *Ortiz,* the Debtors' estates have a negative net worth and the inability to satisfy the claims asserted against them. Second, all of the assets of the Debtors' estates (after allowances for administrative expenses) will be applied to satisfying those claims. Third, while there may be disagreements among the creditors and other stakeholders as to what percentage of the Debtors' assets should be allocated to the various classes of creditors, there is no disagreement that those creditors within each class should and will be treated equitably (when compared to other claimants within their respective categories) within this process. Certification of a Rule 23(b)(1) class would, in fact, enhance the preservation of estate assets and enhance the equitable distribution of Purdue's limited assets as among this particular class of creditors.

45.    To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common question must predominate over any questions affecting only individual members; and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614-615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). Both are met here.

46.    The predominance requirement of Fed. R. Civ. P. 23(b)(3) is met because the common questions of law or fact predominate over any questions affecting only individual class members and the Proposed Class is sufficiently cohesive to warrant adjudication by representation. "Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d

at 859, Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307). Common questions need only predominate; they need not be dispositive of the litigation. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); cf. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535-36 (6th Cir. 2008) (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda*, 296 F.R.D. at 535 (quoting *Powers v. Hamilton Cnty. Public Defender Comm*, 501 F.3d 592, 619 (6th Cir. 2007)).

47.    When Rule 23 is the mechanism to redress alleged RICO violations, statutory violations, and common law claims, predominance and commonality are satisfied if each element of the alleged violations and claims involves common questions of law and fact capable of proof by evidence common to the class. *Reyes,* 802 F.3d at 489 (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 269-70). This is true even if "establishing an injury is not as conductive to common proof[,]" so long as a court is "satisfied that the plaintiffs have presented a plausible theory for proving a class-wide injury as a result of the racketeering activities of the alleged enterprises at issue...." *Reyes*, 802 F.3d at 489 (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 270, and *Neale*, 794 F.3d at 374-75 & n. 10). Any inability to calculate damages (as opposed to fact of injury) on a classwide basis will not, on its own, bar certification. *Reyes*, 802

F.3d at 489 (citing *Neale*, 794 F.3d at 374-75 & n. 10 (collecting cases on this point)). *Accord In re Scrap Metal Antitrust Litig.* 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). This is true as long as the common issues still outweigh the individual ones, for example, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g., In re Whirlpool Corp.*, 722 F.3d at 861 ("[i]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)).

48.     The Class Representative alleges a single conspiracy relating to the sale and distribution of opioids from which all proposed Class members' injuries arise. Issues common to the Class Representative and the Class Members include the existence and scope of the conspiracy among defendants, the impact of defendants' misrepresentations and omissions, the impact of defendants' failures to report suspicious orders, and irregularities in opioid distribution patterns. Because all of the relevant actions and failures to act by defendants—whether conspiratorial, negligent, or otherwise tortious—occurred before January 1, 2016, and because the proposed class is limited to children born after October 1, 2016, the common liability questions will necessarily give rise to common answers for all class members.  These liability issues predominate over any individual questions, and therefore class treatment of the claims is appropriate. Furthermore, the evidence that will prove a violation as to one Class member is common to the Class and will be sufficient to prove it as to all of the violative conduct of Purdue and the other defendants is not dependent on the separate conduct of the individual class members.

49.     Here, issues common to the proposed class predominate in this case, where all the Class Members incurred costs that were caused by the defendants' (including Purdue's) illegal activities. Whether Purdue and the other defendants violated RICO, UTPA, and state common law will be determined by using evidence common to all class members, all of which pre-dates the conception of the proposed infant class members. This is all common evidence that each Class member would use to prove its case if this case were not permitted to proceed as a class action. Thus, common issues overwhelmingly predominate. The presence of these common issues of liability and impact predominates over any individual issues and strongly support certification of the proposed class.

50.     Under Fed. R. Civ. P. 23(b)(3), class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as requiring each of the members in the Proposed Class to bring a separate cause of action would unnecessarily flood the courts with lawsuits that are brought alleging the same federal causes of action that are based on the Purdue's uniform unlawful actions. Individual litigation by the Proposed Class members would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured. In addition, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein.

51.     Lastly, the proposed class is defined using objectively verifiable criteria.  The class is therefore ascertainable, and also identifiable.

52. Accordingly, the Court should exercise its discretion pursuant to Fed. R. Bankr. P. 9014(c) and apply Fed. R. Bankr. P. 7023 to the Class Proof of Claim, accept for filing the Class Proof of Claim filed by the Class Representative on behalf of all similarly situated claimants, set a hearing for the certification of the Class and certify the Class as requested above, and appoint the undersigned counsel for the Class Representative as Class Counsel.

## REQUEST FOR RELIEF

53. For the foregoing reasons, Movant, as Class Representative, respectfully requests that this Court (1) exercise its discretion pursuant to Fed. R. Bankr. P. 9014(c) and apply Fed. R. Bankr. P. 7023 to the Class Proof of Claim; (2) accept for filing the Class Proof of Claim, filed by the Class Representative on behalf of all similarly situated claimants; (3) set a hearing for the certification of the Class and certify the Class as requested above; (4) appoint the undersigned counsel for the Class Representative as Class Counsel; and (5) grant such further relief as the Court deems just and equitable under the circumstances.

## NOTICE

Notice of this Application has been provided to the following parties: (i) the Debtors; (ii) co-counsel to the Debtors; (iii) each of the Debtors' 30 largest unsecured creditors on a consolidated basis; (iv) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and (v) the Office of the U.S. Trustee. The Class Representative submits that, in light of the nature of the relief requested, no other or further notice is required.

DATED this 15th day of July 2020.

By:  STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, A PROFESSIONAL CORPORATION

By: _ *Sander L. Esserman*_____

Sander L. Esserman
Peter C. D'Apice
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999
esserman@sbep-law.com
dapice@sbep-law.com

P. Rodney Jackson, Esq.
Law Offices of P. Rodney Jackson
Fifth Third Center
700 Virginia Street, East
Charleston, WV 25301
(843) 870-6879
prodjackson27@icloud.com

W. Jesse Forbes, Esq. (WVSB #9956)
FORBES LAW OFFICES, PLLC
1118 Kanawha Blvd., East
Charleston, WV 25301
Phone: 304-343-4050
Fax: 304-343-7450
wjforbes@forbeslawwv.com

R. Booth Goodwin II, Esq. (WVSB #7165)
Benjamin B. Ware (WVSB #10008)
W. Jeffrey Vollmer (WVSB #10277)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
P.O. Box 2107
Charleston, WV 25328-2107
Phone: (304) 346-7000
Facsimile: (304) 344-9692
rbg@goodwingoodwin.com
bbw@goodwingoodwin.com
wjv@goodwingoodwin.com

W. Stuart Calwell, Jr., Esq.
L. Dante diTrapano, Esq.
Alex McLaughlin, Esq.
Benjamin D. Adams, Esq.
Calwell Luce diTrapano, PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV 25302
Phone: (304) 343-4323
Facsimile: (304) 344-3684
scalwell@cldlaw.com
dditrapano@cldlaw.com
amclaughlin@cldlaw.com
badams@cldlaw.com

*Counsel to Tiffany Dunford as Next
Friend of T.N. Dunford*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| **PURDUE PHARMA, INC.,** *et al.,*[1] | **Case No. 19-23649 (RDD)** |
| | **(Jointly Administered)** |
| **Debtors.** | |

**ORDER ON MOTION TO PERMIT THE**

**FILING OF A CLASS PROOF OF CLAIM**

Upon consideration of the motion of Tiffany Dunford as Next Friend of T.N. Dunford, dated July 15, 2020, ("Motion") requesting an order to permit the filing of a class proof of claim; and it appearing that this Court has jurisdiction over the matter; and it appearing that due and adequate notice of the Motion having been given; and that no other or further notice need be provided; and it further appearing that the relief request in the Motion is in the best interest of Tiffany Dunford as Next Friend of T.N. Dunford and the putative Class as defined in the Motion; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore; it is hereby ORDERED:

1.      The Motion is GRANTED as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

2.      The Court (a) permits the filing of the Class Proof of Claim, filed by the Class Representative on behalf of the putative Class as defined in the Motion; (b) sets _____ as the date for a hearing on the class certification motion; and (c) appoints Stutzman, Bromberg, Esserman & Plifka, P.C., Law Offices of P. Rodney Jackson, Forbes Law Offices, PLLC, Goodwin & Goodwin, LLP, and Calwell Luce diTrapano PLLC as counsel for the putative Class, as defined in the Motion.

Dated: _____
        White Plains, New York


        _____
        THE HONORABLE ROBERT D. DRAIN
        UNITED STATES BANKRUPTCY JUDGE