**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X
                                                              :
In re:                                                        :   Chapter 11
                                                              :
**PURDUE PHARMA L.P.**, *et al.*,                             :   Case No. 19-23649 (RDD)
                                                              :
                                    Debtors.                  :   (Jointly Administered)
                                                              :
------------------------------------------------------------- X

# THE STATE OF FLORIDA'S OMNIBUS OBJECTION TO THE REQUEST BY THE HOSPITAL CLAIMANTS, THE PRIVATE INSURANCE CLASS PLAINTIFFS, THE INDEPENDENT PUBLIC SCHOOL DISTRICTS, THE NAS GUARDIANS, AND THE CHEYENNE AND ARAPAHO TRIBES FOR LEAVE TO FILE MOTIONS FOR CLASS RELIEF

The State of Florida ("Florida") hereby submits this Omnibus Objection ("Objection") to the request by the Hospital Claimants, the Private Insurance Class Plaintiffs, the Independent Public School Districts ("IPSDs"), the NAS Guardians, and the Cheyenne and Arapaho Tribes seeking leave to file motions for class relief [ECF Nos. 1211, 1330, 1334, 1362, & 1363] and states the following in support of its Objection:

## A.    INTRODUCTION

In addition to the arguments made in the Public Claimants' Omnibus Objection, which Florida incorporates herein for the sake of brevity, Florida asserts that all five motions should be denied and each group should be barred from asserting class claims because each of their claims are either: (1) for personal injuries and not susceptible to class treatment; (2) derivative of other parties' claims and are too remote to survive scrutiny; or (3) require individualized, not group proof, which undermines the class arguments that have been advanced.

## B.    FACTUAL BACKGROUND

Five groups have filed motions for leave seeking the ability to file class claims. Two of the groups, the NAS Guardians[1] and the Cheyene and Arapaho Tribes (collectively with the other joining Native American tribes, the "Tribes"),[2] seek the ability to file a class proof of claim on

---

[1] The NAS Guardians seek certification of four classes of individuals.  The classes sought certified are:

> Class 1: Legal Guardians of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS") at or near birth and whose birth mother received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured and/or distributed by Purdue.
>
> Class 2: Legal Guardians of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured and/or distributed by one or more of Purdue's RICO Marketing Claim or RICO Supply Chain Claim co-conspirators.
>
> Class 3: Legal Guardians of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received a prescription for opioids or opiates in the ten months prior to the birth and those opioids or opiates were manufactured and/or distributed by Purdue.
> Class 4: Legal Guardians of United States residents born after May 25, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received a prescription for opioids or opiates in the ten months prior to the birth and those opioids or opiates were manufactured and/or distributed by one or more of Purdue's RICO Marketing Claim or RICO Supply Chain Claim coconspirators.
>
> Expressly excluded from the Classes are any infants or children who were treated with opioids neonatally, other than for pharmacological weaning.  Also excluded from the class are Legal Guardianships where a governmental agency, such as a public children services agency, has affirmatively assumed the duties of "custodian" of the child.

Motion [ECF No. 1362-1], at 28.

[2] The Tribes seek to certify a class:

> Individual members of all 574 federally recognized tribes within the boundaries of the United States of America, partially or wholly, as set forth in the list of federally recognized tribes updated annually by the Secretary of the Interior, the most recent version of which is published at 84 Fed. Reg. 1200, 1204, who have the following claims: (a) misuse, addiction, therapy, hospitalization, and/or overdose of opioids with accompanying personal injuries and, in some instances, wrongful death;(b) babies born to opiate addicted mothers with the babies and

2



behalf of injured individuals recovering what would be recognizable as personal injury related damages. More specifically, the NAS Guardians seek to file a claim for the cost of medical monitoring and surveillance[3] (Motion [ECF No. 1362-1], at 2), and the Tribes seek compensation for individual tribal members (Motion [ECF No. 1363-1], at 25). The remaining three groups seek to recover past and future costs caused by the opioid epidemic as follows: (i) the Hospitals seek to file a claim on behalf of almost all acute care hospitals, seeking what appears to be unrecouped costs to hospitals caring for opioid use disorder ("<u>OUD</u>") patients.[4] (*See* Motion [ECF No. 1330-1], at 352, ¶974) (stating "incurred massive costs by providing uncompensated care as a result of opioid-related conditions."); (ii) the Private Insurance Class Plaintiffs seek a class to recover increased health insurance costs. (*See* Motion [ECF No. 1321, at 5-6) (alleging "every purchaser of private health insurance in the United States paid higher premiums, co-payments, and

---

> children having personal injuries, physical disorders, Neonatal Abstinence Syndrome ("NAS"), mental disorders, and lifetime care and educational costs and expenses; (c) abused or neglected children whose parent(s) or guardian(s) are addicted to and/or dependent on opioids, and/or who must be placed in foster care or adoptive guardians who take on the role of caretaker, including grandparents.

Motion [ECF No. 1363-1, at 25.

[3] *See, e.g., Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 498-502 (2d Cir. 2020) (describing medical monitoring as an element of damages for personal injuries under New York law); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1194 (9th Cir. 2001) (finding that medical monitoring claim was only an element of damages under California law ); *Ball v. Joy Techs., Inc.*, 958 F.2d 36, 39 (4th Cir. 1991) (stating that a claim for medical surveillance "is simply a claim for future damages" under West Virginia law).

[4] The Hospitals defined the proposed class as:

> All acute care hospitals in the United States which treated, for opioid conditions, patients who have been prescribed prescription opioids. "Opioid conditions" are defined as opioid overdose; opioid addiction (including that of babies born opioid addicted); related mental health treatment programs; and any other opioid comorbidities noted in the patient's record. Excluded from the Class are any hospitals (1) that file their own claim, and/or (2) are directly or indirectly owned or operated by (a) Debtors or Debtors' affiliated entities, or (b) the federal government.

Motion [ECF No. 1330-1], at 23-24.

3



deductibles."), and (iv) the IPSDs seek to file a claim for the amounts necessary for "[f]unding special education and supplemental education services for children exposed to opioids." (*See* Motion [ECF No. 1211], at 13).

### C.    DISCUSSION

#### 1.    The Tribes lack standing to assert individual claims of other Native American tribes and individual claims of all Native Americans.

As an initial matter, this Court must determine whether the Tribes have standing. The Tribes assert that they are bringing this action in their *parens patriae* capacity. This argument lacks merit for two reasons.

First, the Tribes fail to cite any authority that would allow the approximately forty (40) Native American tribes that have joined their Motion, to claim sovereign authority over the remaining approximately five hundred and thirty (530) federally recognized Native American tribes that have not joined the Tribes' Motion. *See* Motion [ECF No. 1363] at 1, n.2. . For purposes of this Objection, Florida assumes *arguendo* that the Tribes have a sovereign or quasi-sovereign interest over their members, but the Tribes have no such interest as to the members of the remaining Native American tribes. Stated another way, the Tribes are suggesting the equivalent to the State of Florida filing a claim on behalf of the State of New York's citizens without the State of New York's consent and joinder. The doctrine of *parens patriae* is not expandable in such a manner.

Second, *parens patriae* actions are not class actions, and therefore, does not provide a basis for the Tribes' Motion. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 212-13 (2d Cir. 2013) (concluding that a state's lawsuit against Purdue "is not a 'class action'"). Accordingly, this Court should deny the Tribes' Motion.

**55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

Despite the Tribes' confusion in the Motion relating to *parens patriae* authority, the Tribes cannot file the types of claims that they are seeking to file. With the proposed class claim, the Tribes are not seeking to recover for their sovereign or quasi-sovereign interests. Instead, the Tribes are seeking to recover private tribal members' damages. The federal courts which have recognized *parens patriae* authority of Native American tribes have limited that doctrine to those cases where a Native American tribe acts on behalf of **all** of its members and not individually harmed or injured members. *See Alabama and Coushatta Tribes of Texas v. Trustees of Big Sandy Indep. School Dist.*, 817 F.Supp. 1319, 1327 (E.D. Tex. 1993); *The Kickapoo Tribe of Oklahoma v. Lujan*, 728 F.Supp. 791, 795 (D.D.C.1990); *Assiniboine & Sioux Tribes v. Montana*, 568 F.Supp. 269, 277 (D. Mont. 1983).[5] That is not the interest that the Tribes seek to redress in their Motion [ECF No. 1363].

Florida does not dispute that opioids have had a profound, negative effect on Native American tribes, just as they have had on the States. Florida is not challenging the Tribes' ability to file a claim advancing their sovereign and quasi-sovereign interests. However, the Tribes have no sovereign or quasi-interest over members of other Native American tribes and any individual damages claims are not within the Tribes' *parens patriae* standing. Accordingly, this Court should deny the Tribes' Motion [ECF No. 1363].

### 2. The Claims of the NAS Guardians and the Tribes do not meet Rule 7023's requirements.

The Tribes and NAS Guardian's Motions [ECF Nos. 1362 & 1363] should be denied because claims for personal injuries are rarely susceptible to class certification, especially on a

---

[5] Florida could only find one tort case dealing with these issues. *Alabama Coushatta Tribe of Texas v. Am. Tobacco Co.*, case no. 01-41198, 46 Fed. Appx. 225, 225 (5th Cir. July 2002). The United States Court of Appeals for the Fifth Circuit affirmed the dismissal of a Native American tribe's claims against the tobacco companies. *Id.*



nationwide basis.[6] Not surprisingly, numerous courts have rejected prepetition class certification attempts against the Debtors for similar personal injury claims.[7] In each case, the courts concluded that claims within the putative classes depended on questions of fact and law peculiar to each individual and there was not sufficient commonality for a class to be certified. *E.g., Wethington*, 218 F.R.D. at 589. Nothing has changed from those decisions that justifies class treatment of the Tribes or the NAS Guardians.

With the exception of a RICO cause of action, different state laws will apply to each basis asserted by the Tribes and NAS Guardians (as well as the other movants), making adjudication in this case unmanageable.[8] For example, the law on medical monitoring is far from uniform.[9]

---

[6] *See, e.g., Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (stating "[w]e believe that the commonality barrier is higher in personal injury damages class actions…."); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1089-90 (6th Cir. 1996) (denying class certification in single product pharmaceutical product liability personal-injury lawsuits); *In re Temple*, 851 F.2d 1269, 1273 n. 7 (11th Cir. 1988) (declining to hold that products liability or mass accident suits could never be the proper subject of a class action but recognizing "that the prerequisites of commonality and typicality will normally be hard to satisfy").

[7] *Wethington v. Purdue Pharma LP*, 218 F.R.D. 577 (S.D. Ohio 2003); *Harris v. Purdue Pharma, L.P.*, 218 F.R.D. 590 (S.D. Ohio 2003); *Campbell v. Purdue Pharma, L.P.*, 2004 WL 5840206, at * (E.D. Mo. 2004); *Salisbury v. Purdue Pharma, L.P.*, 2003 WL 22005005 (E.D. Ky. 2003); *Gevedon v. Purdue Pharma*, 212 F.R.D. 333 (E.D. Ky. 2002); *Foister v. Purdue Pharma L.P.,* No. Civ.A. 01–268–DCR, 2002 WL 1008608 (E.D. Ky. Feb. 26, 2002); *Howland v. Purdue Pharm L.P.*, 821 N.E. 2d 141, 146-47 (Ohio 2004) (reversing class certification); *Hurtado v. Purdue Pharma Co.*, 800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2005) (denying class certification); *see also United States v. Purdue Frederick Co.*, 495 F. Supp. 2d 569, 575 (W.D. Va. 2007) (discussing in the course of Purdue's criminal sentencing the difficulties of proving causation against Purdue by a personal injury plaintiff and the difficulties of certifying a class based on those same issues).

[8] *See, e.g., In re Bridgestone /Firestone, Inc.*, 288 F.3d 1012, 1018-19 (7th Cir. 2002) (denying certification of a nationwide class); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, (5th Cir. 1996) (reversing class certification and stating "[p]rior to certification, the district court must determine whether variations in state law defeat predominance. While the task may not be impossible, its complexity certainly makes individual trials a more attractive alternative and, *ipso facto*, renders class treatment not superior.") (emphasis in original).

[9] *See In re Prempro*, 230 F.R.D. 555, 569 (E.D. Ark. 2005) (refusing to certify a medical monitoring class because of the variation in state laws); *see, e.g., Houston County Health Care Auth. v. Williams*, 961 So.2d 795, 811 (Ala. 2007) (requiring a present manifestation of injury to receive medical monitoring); Bowerman v. *United Illuminating*, 1998 WL 910271, at *10 (Conn. Super. Dec. 15, 1998) (rejecting medical monitoring common law claim); *Mergenthaler v. Asbestos Corp.*, 480 A.2d 647, 651 (Del. 1984) (refusing a medical monitoring claim); *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 467 (D.D.C. 1997) (rejecting a medical monitoring claim under the law of the District of Columbia); *Petito v. A.H. Robins Co.*, 750 So.2d 103, 106-07 (Fla. 3d DCA 1999) (allowing for medical monitoring in negligence cases despite physical injury); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515 (D. Kan. 1995)

6



Similarly, public nuisance law is varied.[10] Indeed, under Florida and other state laws, a private right of action for public nuisance may not exist if the State or a municipality are already litigating such a claim.[11] Each state will have variation in the laws governing the whole range of issues necessary to be decided, including: viability of future claims; the amount and type of evidence necessary to prove causation; statutes of limitations; joint and several liability; and comparative and contributory negligence.

In addition to the differing laws, the personal injury claims advanced by both the NAS Guardians and the Tribes present disparate factual issues that exponentially compound the legal issues. Factual variations predominate amongst the class members, including: what opioid product was taken and for what condition (off label use); what dosage was taken and for how long; was a Purdue opioid product taken; did the claimant have OUD prior to taking the Purdue product; were the opioid products prescribed or illegally attained; what is the claimant's drug use and medical history; and what is the medical prognoses. In short, the number of uncommon issues becomes

---

(concluding that no separate action for medical monitoring existed, but if there was a physical injury medical monitoring could be recovered under Kansas law); *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 694-704 (Mich. 2005) (rejecting a medical monitoring claim); La. Civ. Code Ann. art. 2315 (stating "[d]amages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease."); *also* Victor E. Schwartz, *et al.*, Medical Monitoring: Should Tort Law Say Yes?, 34 WFLR 1057 (1999) (collecting cases).

[10] *Compare City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1148 (Ill. 2004) (concluding that no claim for public nuisance existed under Illinois law); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421-22 (3d Cir. 2002) (holding same) *with City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002) (concluding under the same facts that a claim for public nuisance existed); *City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003) (holding same).

[11] *Brown v. Florida Chautauqua Ass'n,* 52 So. 802, 804 (Fla. 1910) ("[P]ublic wrongs are redressed at the suit of proper officials, and individuals are not permitted to maintain separate judicial proceedings to redress a wrong that is public in its nature unless the individual suffers or is threatened with some special, particular, or peculiar injury growing out of the public wrong.") (emphasis added); *see also Castro v. Sun Bank of Bal Harbour, N.A.* 370 So. 2d 392, 393 (Fla. 3d DCA 1979) (stating that where State settled a public nuisance claim, private parties were bound even if they were not parties to the original action); *Young v. Miami Beach Imp. Co.*, 46 So. 2d 26, 30 (Fla. 1950) (stating private plaintiffs were bound by a nuisance settlement by a city over the same subject matter).

endless. The differences among the class members make a class action anything but the manageable, superior method for resolution that Rule 23 requires. Accordingly, this Court should deny the Tribes' and NAS Guardian's Motions [ECF Nos. 1362 & 1363].

### 3. The Claims of the Hospital Claimants, the Private Insurance Class Plaintiffs, and the Independent Public School Districts Are Derivative and Too Remote for Class Treatment.

The Hospital Claimants, the Private Insurance Class Plaintiffs, and the IPSDs have asserted claims that are derivative of others' claims and are therefore too remote to be presented to this Court as class claims. These claimants seek to recover expenses incurred in responding to torts suffered by their respective patients, insureds, and students. The claims of private, third-party payors – and the claims of school districts attempting to recover for students' injuries -- are not amenable to class-wide proof. *See UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 134 (2d Cir. 2010) (holding unions and insurers who acted as third-party payors could not demonstrate proximate cause by generalized proof in a RICO claim against a pharmaceutical manufacturer alleging false marketing of the drug Zyprexa). Nine United States Courts of Appeal, including the Second Circuit, have held that the claims like these are derivative, raising questions of proximate cause and standing.[12] Accordingly, the Hospital Claimants, Private Insurance Class Plaintiffs, and the IPSDs cannot use the class action device to prove proximate cause.

---

[12] *See, e.g.*, *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999); *see also Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429 (3d Cir. 2000); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F. 3d 912 (3d Cir. 2000); *Ass'n of Washington Pub. Hosp. Dists. v Phillip Morris*, 241 F.3d 696 (9th Cir 2001); *Lyons v. Philip Morris Inc.*, Case No. 99-2843, 2000 WL 1234272 (8th Cir. Sept. 1, 2000); *United Food and Commercial Workers Unions, Employers Health and Welfare Fund*, Case No. 99-13476, 2000 WL 1190787 (11th Cir. Aug. 22, 2000); *Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 199 F.3d 788 (5th Cir. 2000); *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 185 F.3d 957 (9th Cir. 1999); *Int'l Bhd. of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818 (7th Cir. 1999); *Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003); *Service Employees Int'l Union Health and Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1073 (D.C. Cir. 2001). These causation questions are not susceptible to class-wide proof. *See UFCW Local 1776*, 620 F.3d at 134.

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

The Hospital Claimants' claims are largely derivative of their patients' own tort claims and therefore cannot be afforded class treatment. In analogous cases involving tobacco litigation, courts have held that hospitals, when seeking recovery for costs incurred in responding to smokers' injuries, lack standing to assert tort claims for the injuries that were derivative of their patients' injuries. *See, e.g., Allegheny Gen. Hosp.*, 228 F.3d at 436. In *Allegheny Gen. Hosp.*, the Third Circuit noted that hospitals do not possess *parens patriae* authority like that of state governments to sue on behalf of individuals. *Id.* at 437. As a result, the hospitals were required to prove the proximate cause of their injuries. The Court affirmed the dismissal of all claims asserted by the hospitals including those for RICO violations, negligence, fraud, unjust enrichment, and public nuisance, reasoning:

> Like the Court in *Steamfitters*, we find that the Hospitals' injuries are indirect. Neither the duty to provide medical care, nor the direct or free provision of medical care, affects this conclusion… "[T]he remoteness of the [Hospitals'] alleged RICO injuries from any wrongdoing on the part of the [T]obacco [C]ompanies' leads us to conclude that proximate cause is lacking."

*Id.* at 444 (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 933-4 (3d Cir. 1999)); *see also Ass'n of Washington Pub. Hosp. Dist.*, 241 F.3d at 704 (affirming dismissal of claims brought by public hospital districts claiming injuries from the tobacco companies' conduct).

Here, the Hospital Claimants cannot prove derivative claims based on expenses incurred from the injuries their patients may have suffered by using class-wide proof. *See UFCW Local 1776*, 620 F.3d at 134. Instead, after removal of these derivative claims, the Hospital Claimants are left with nothing more than claims for increased expenses to provide care to people suffering from OUD and increased costs of purchasing opioid products. These claims are also necessarily

9

individualistic and will vary from hospital to hospital. Such derivative claims are simply not the types of claims that are capable of class treatment, and the Court should reject the hospitals' attempt to shoehorn these types of claims as a class.

Likewise, the claims asserted by the Private Insurance Class Plaintiffs suffer from these same defects. The Private Insurance Class Plaintiffs seek to recover damages caused by other insureds' increased costs incurred as a result of taking Purdue's opioid products that were then passed on to them in the form of increased insurance premiums. Thus, the Private Insurance Class Plaintiffs' claims are derivative of other insureds' claims. These types of derivative claims by private insureds have routinely been rejected as too remote. *See, e.g.*, *Perry*, 324 F.3d at 849 (affirming dismissal of putative class action claims brought by insureds under a group health insurance plain claiming they paid increased premiums as a result of the tobacco companies' actions). Further, the Private Insurance Class Plaintiffs' claims for increased insurance premiums are even more remote than the claims asserted by insurance companies, unions, and welfare benefit funds, which courts have held cannot be brought as class actions. *See, e.g.*, *UFCW Local 1776*, 620 F.3d at 134 (third-party payors could not demonstrate proximate cause by generalized proof); *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 244 (2d Cir. 1999) (holding "the economic injuries alleged" by the health and welfare benefit funds "are purely derivative of the physical injuries suffered by plan participants [from smoking] and therefore too remote as a matter of law for them to have standing to sue defendants");[13] *Sidney Hillman Health*

---

[13] The Second Circuit also considered the fact that the State of New York had already sued Philip Morris, creating the threat of a double recovery. *Laborers Local 17 Health and Benefit Fund,* 191 F.3d at 241 (citing *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 269 (1992)). Notably, here, every state and several territories have asserted claims in this proceeding, and the claims by the Hospital Claimants, the Private Insurance Class Plaintiffs, and the IPSDs threaten a double recovery with those of the Public Claimants.

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

*Ctr. v. Abbott Labs.*, 873 F.3d 574, 578 (7th Cir. 2017) (affirming dismissal of RICO lawsuit by two welfare benefit plans that paid for members' use of the drug Depakote after off-label marketing for lack of proximate cause).

It is noteworthy that the Second Circuit in *UFCW Local 1776* rejected class certification on the plaintiffs' theory that the defendant had misrepresented to doctors the risks and benefits of the drug taken by its insureds, a similar theory employed here by the Private Insurance Class Plaintiffs.[14] The Court held that issues of reliance are not capable of proof on a class-wide basis. 620 F.3d 121, 134-6 (reversing district court's class certification order). Accordingly, this Court should deny the class certification requested by the Private Insurance Class Plaintiffs.

Moreover, the claims asserted by the IPSDs suffer from the same defects as the claims asserted by the Hospital Claimants and the Private Insurance Class Plaintiffs. The IPSDs, a loosely defined group of public schools located in four states with vastly different inter- and intra-state funding structures, are seeking costs for special education of children who are born with neonatal abstinence syndrome after exposure to opioids in utero ("NAS Children"). The IPSDs lack standing to assert class action claims for the injuries suffered by the NAS Children, who are also

---

[14] It appears that the Private Insurance Class proponents' proposed class claim is based on guesswork instead of data despite this bankruptcy pending for 10 months.  Remarkably, the Private Insurance Class concede that they do not currently know the additional costs that they are seeking with the class claim, stating:

> The precise costs imposed on the insurance ratepayer market are more nefarious because Purdue knows those costs are veiled by the inner workings of the insurance industry and rate-setting mechanisms that insurers keep shrouded in secrecy.  Because health insurance carriers
> refuse to voluntarily produce this information and facilitate the claims process, the Private Insurance Plaintiffs are serving subpoenas under Bankruptcy Rules 9014 and 9016 in order to further substantiate their claims beyond the common sense reality that insureds pool the costs of medical treatment through insurance payments.

Motion [ECF No. 1334], at 10.

11



55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

claimants in this matter.[15] As discussed *supra*, the IPSDs, like the Hospital Claimants and the Private Insurance Class Plaintiffs, cannot establish proximate cause by class-wide proof. *See supra*, pp. 11-16; *UFCW Local 1776*, 620 F.3d at 134-6.[16]

Further, the claims by the IPSDs threaten a double recovery by asserting overlapping claims with both the Public Claimants, which provide funding for the IPSDs, and the NAS Children. The Second Circuit has warned against the risks of recognizing indirect claims, such as those presented here. In a leading case, the court stated that "recognizing claims by the indirectly injured would require courts **to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, in order to avoid the risk of multiple recoveries**." *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 237 (2d Cir. 1999) (citing *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 269 (1992)) (emphasis added). Permitting the IPSDs, the Hospital Claimants, and the Private Insurance Class Plaintiffs to proceed with class action proofs of claim will put this Court in precisely the position the Second Circuit sought to prevent by requiring the apportionment of "damages among

---

[15] It is not clear how the IPSD class could be ascertained. The NAS Guardians represent that "the numbers [of NAS children] and what those numbers represent vary widely because there is no uniform standard for assessing and collecting data." Motion [ECF No. 1362-1], at 7-8. As relief, the NAS Guardians seek creation of a registry of NAS children. *Id.* at 2. Given the differing ways that States fund education, including public education, without having an ascertained class, such a class will be unmanageable. For example, Florida's funding calculations differ by county. *See, e.g.,* http://fldoe.org/core/fileparse.php/7507/urlt/Fefpdist.pdf, at 9-10, 17 (last visited July 13, 2020). The individual variables of what support a student needs, his or her age, geography, and county demographics cause variations in how much funding the school districts receive for a student.

[16] By contrast, individual states have both *parens patriae* and the statutory authority to bring claims on behalf of their citizens and are the proper parties to represent their constituents in this forum. *See Laborers Local 17 Health and Benefit Fund*, 191 F.3d at 243-44 (distinguishing cases brought by states and holding that, "in general, state cases are often distinguishable on the issue of proximate causation given the state's unique role relative to protection of its citizens . . . and certain state statutes that permit states to maintain actions on behalf of their citizenry "); *Southeast Fla. Laborers Dist. Health & Welfare Tr. Fund v. Philip Morris*, No. 97-8715-CIV-RYSKAMP, 1998 WL 186878, at *5 & n.5 (S.D. Fla. Apr. 13, 1998) (rejecting attempts by a private third-party payor – a union health care fund – to recover for injuries to health care recipients, expressly distinguishing the State's "tobacco settlement."). All of the states are present in this forum as part of the Public Claimants group.

55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com

plaintiffs removed at different levels of injury." *Id.* Accordingly, this Court should deny the Hospitals Claimants', Private Insurance Class's, and IPSD's Motions.

### 4. The Claims of the Hospital Claimants, the Private Insurance Class Plaintiffs, and the Independent Public School Districts Are Inappropriate for Class Treatment Because Individual Issues Are Predominant.

In addition to the fatal flaws concerning the derivative and remote nature of the claims asserted by the Hospital Claimants, the Private Insurance Class Plaintiffs, and the Independent Public School Districts, class treatment is categorically unavailable for these claims due to the need to prove causation as to each of the respective patients, insureds or students, an inquiry necessarily requiring individualized determinations. *See In re Motors Liquidation Co.*, 447 B.R. 150, 158 (Bankr. S.D.N.Y. 2011) ("When resolution of class questions will still require case-by-case analysis of facts with respect to each member of the class, class certification may not be appropriate.").

Courts have routinely rejected similar claims for such causation and individualized proof problems. *See*, *e.g.*, *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 134 (2d Cir. 2010) (holding third-party payors cannot demonstrate proximate cause by generalized proof in a RICO claim against a pharmaceutical manufacturer alleging false marketing of the drug Zyprexa*); see also United Food & Commercial Workers Cent. Pennsylvania & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 2010 WL 4128490, at *1 (9th Cir. 2010) (affirming dismissal of third-party payors' RICO lawsuit against pharmaceutical manufacturer based on lack of proximate cause because "the complaint proffered an attenuated causal chain that involved at least four independent links"); *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 2011 WL 5061645, at *9 (11th Cir. 2011) (affirming dismissal of third-party payor's RICO claim against pharmaceutical manufacturer because the plaintiff "failed to allege facts plausibly demonstrating that [it] would

have independently determined that Trasylol was not 'medically necessary' if Bayer had disclosed the allegedly suppressed material information").

In a similar case, residents of Southern Sudan filed a lawsuit against the government of Sudan and a Canadian energy company alleging that they were the victims of various violations of international law. *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 226 F.R.D. 456, 457 (S.D.N.Y. 2005). The judge denied class certification because the plaintiffs would have to show with respect to each individual class member that the injuries for which they were claiming damages were actually caused by the alleged crimes against humanity. *Id.* at 482. To conduct such an inquiry, facts individual to each attack would have to be determined. *Id.* The Court further stated that given the need for evidence of causation, and the allegations involving hundreds of thousands of class members, hundreds of individual attacks, the massive geographic area involved, and the six-and-a-half year time period, "[t]he challenge of presenting that individualized proof on behalf of thousands of class members, even if it were logically feasible, will quickly dominate the proof regarding the common issues." *Id.* at 482-83.

Similarly, in the bankruptcy case of *In re Motors Liquidation*, 447 B.R. 150, the Court denied class certification because it found that the common issues presented in this case did not predominate over the individual issues. *Id.* at 159. Claimants had sought relief on behalf of thousands of South Africans who had allegedly suffered distinct injuries over multiple decades. *Id.* The court determined that it would be too difficult to establish causation and the requisite intent and that the simpler alternative would be to have individual claimants "tell" their story to the court. *Id.* at 163. The Court further stated that "to proceed on a class action basis, I'd have to choose between holding one or more trials of extraordinary complexity, on the one hand, or taking inappropriate shortcuts as to individual issues of wrongful conduct, causation and requisite purpose

14

and assistance, on the other … [and] any shortcuts that would have to be taken to make class action treatment superior as an administrative matter would have to come at the expense of due process concerns." *Id.* at 163.

Here, burdensome and time-consuming discovery and individual proof would be required for the patients, insureds, and students upon whose injuries the Hospital Claimants, the Private Insurance Class Plaintiffs, and the IPSDs must rely, demonstrating that the claims of each of these groups are completely inappropriate for class treatment.

Moreover, the extraordinary class action relief sought here only highlights the inappropriate nature of the request made by the Hospital Claimants, the Private Insurance Class Plaintiffs, and the IPSDs. *See*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622-4 (1997) (Requirement of predominance for certification of class action was not met because of individual issues surrounding asbestos exposure, with Court noting that "'[c]lass members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma....'"); *see also Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) (affirming district court's denial of motion for class certification where individual misrepresentations made in insureds' fraud action were not shown to be uniform to the putative class members); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) (Common issues did not predominate in class action involving defective penile implants.).

WHEREFORE, Florida respectfully requests that this Court enter an order denying the Hospital Claimants, the Private Insurance Class Plaintiffs, the Independent Public School Districts,

the NAS Guardians, and the Cheyenne and Arapaho Tribes leave to file any motions for class relief.

Respectfully submitted, this 15th day of July 2020.

Dated: July 15, 2020

New York, New York

By: */s/ Christopher Spuches*
AGENTIS PLLC
55 Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Telephone: (305) 722-2002
Christopher Spuches (N.Y. Bar No. 284653)
Robert P. Charbonneau (admitted *pro hac vice*)

ASHLEY MOODY
Florida Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Tel: (850) 414-3300
John Guard
Patricia A. Conners
Russell S. Kent

*Attorneys for the State of Florida*