**Hearing Date: July 23, 2020 at 2:00 p.m. (ET)**
**Objection Deadline: July 16, 2020 at 4:00 p.m. (ET)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>PURDUE PHARMA L.P., et al.,<br><br>Debtors.[1] | Chapter 11<br>Case No. 19-23649 (RDD)<br>Administratively Consolidated<br><br>**Related Moving Paper Doc. Nos. 1330, 1424** |

### HOSPITAL CLAIMANTS' OMNIBUS REPLY TO THE OBJECTIONS/RESPONSES FILED AT DOCKET NOS. 1415, 1421, 1423, 1425, AND 1431 TO HOSPITAL CLAIMANTS' MOTION PURSUANT TO FED. BANKR. P. 9014 AND 7023 FOR AN ORDER MAKING FED. R. CIV. P. 23 APPLICABLE TO THESE PROCEEDINGS, PERMITTING THEM TO FILE A CLASS PROOF OF CLAIM AND GRANTING RELATED RELIEF

The Hospital Claimants, on behalf of themselves and a proposed class of similarly situated persons, by and through their undersigned counsel, hereby file their Omnibus Reply to the following objections/responses (collectively, "Objections") filed to the Hospital Claimants' motion (the "Motion") pursuant to Fed. R. Bankr. P. 9014 and 7023 for the entry of an order making Fed. R. Civ. P. 23 applicable to the "Hospitals' Class Proof of Claim," permitting them to file the Class Proof of Claim and granting related relief (the "Reply"):[2]

1. Omnibus Objection to Motion for the Request by the Hospital Claimants, the Private Insurance Class Plaintiffs, the Independent Public School Districts, the NAS

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014).

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

    Guardians, and the Cheyenne and Arapaho Tribes for Leave to File Motions for Class Relief filed by Attorney General, State of Florida [Docket No. 1415] (the "Florida State Objection");

2. Debtors' Omnibus Objection to Motions by Certain Claimants for an Order Allowing them to Proceed with a Class Proof of Claim and Certifying Class [Docket No. 1421] (the "Debtors' Objection");

3. The Ad Hoc Group of Individual Victims' Statement in Support of Debtors' Omnibus Objection of Motions by Certain Claimants for An Order Allowing Them to Proceed With A Class Proof of Claim Proof of Claim and Certifying A Class [Docket No. 1423] (the "Ad Hoc Group of Individual Victims' Objection");

4. The Official Committee of Unsecured Creditors' Response to and Request for Adjournment of Class Claim Motions Until Conclusion of Mediation [Docket No. 1425] (the "Committee Response"); and

5. Public Claimants' Omnibus Objection to Motions for Leave to File Class Proofs of Claim filed by Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants [Docket No. 1431] (the "Public Claimants' Objection").

In support of the Reply, the Hospital Claimants respectfully represent as follows:

## I.    **<u>PRELIMINARY STATEMENT</u>**

As a threshold matter, the Hospital Claimants support the suggestion made in the Committee Response that the hearing on all the motions to permit the filing of class proofs of claim (collectively, the "Class POC Motions") be adjourned until after the conclusion of the mediation so long as the Bar Date continues to run with the adjourned hearing date (plus seven (7) days, as is the case now). Indeed, as set forth in the Motion, the reason the Hospital Claimants waited until this particular moment to request permission to file the Class Claim was because they, too, were hopeful the mediation would be concluded and the issue of their Class Claim would be addressed pursuant thereto.

In the event the Court determines to move forward with all the Class POC Motions, the Hospital Claimants submit the objections as to their Motion should be overruled for the reasons set forth in the Motion and herein.

## II.     ARGUMENT

### A. THE COURT SHOULD EXERCISE ITS DISCRETION TO EXTEND APPLICATION OF RULE 23 TO THE CLASS PROOF OF CLAIM

Contrary to the applicable objections to the Motion, application in this case of the three *Musicland* factors, *to wit*, (1) whether class certification will adversely affect the administration of the estate; (2) whether the class was certified pre-petition; and (3) whether the members of the putative class received notice of the bar date, militates in favor of granting the Motion. As set forth in the Motion, Courts continuously caution that no single factor is dispositive and the weight accorded to any certain factor depends on the facts of each individual case.

#### 1. *Musicland* Factor 1: This Motion Is Timely And Is Consistent With The Efficient Administration Of The Estates.

Notably, none of the Objections contends that the Motion is untimely. What the applicable Objections do argue is that allowing the Hospital Claimants to file the Class Claims is inconsistent with the efficient administration of the Debtors' estates. This argument must fail under the facts and circumstances of this particular case.

Significantly, the Debtors have not yet filed a Chapter 11 plan and, indeed, have requested that their exclusive right to do so be extended by <u>five months</u> to December 10, 2020. In their second motion to extend exclusivity filed on July 9, 2020 (just two weeks before the hearing date on the Motion), the Debtors state "[d]espite the significant progress thus far, in light of the complexity and significance of the issues involved and the numerous interests asserted and to be protected, substantial work remains" to be done in this case to position the Debtors to promulgate a plan of reorganization. *See* Motion to Extend Exclusivity [Docket No. 1365], ¶ 14.

The Debtors suggest that permitting the filing of a class claim would add "layers of procedural and factual complexity" and would compel the parties to engage in extensive discovery. *See* Debtors' Objection, at ¶ 38. However, the "complexity" does not arise from the class

3

procedure, but from challenges asserted to the merits of the claims from the Debtors or other stakeholders. Moreover, resolving a greater number of individual claims would be infinitely more complex and costly than resolving objections to a class claim (indeed, a class claim is analogous to an ad hoc group's claim, the filing of which is contemplated in the Bar Date Order). Many hospital claims will be asserted regardless of whether the filing of the Hospitals' Class Claim is permitted and any objections to those claims are addressed more efficiently on a universal, rather than one-off, basis. A class proof of claim mechanism for the members of the Hospital Class actually would simplify the administration of that class of claims.

### 2. *Musicland* Factor 2: That a Class Was Not Certified Prior to the Bankruptcy Is Not a Sufficient Reason to Prevent Class Treatment

As noted in the Motion, although the Hospital Class Action was filed in 2017, the reason that no class has yet been certified is because all hospital claims in the MDL are stayed pending further order of the MDL Court. The Debtors suggest that at least some of the class movants failed to act diligently and that there were reasons other than the stay imposed by the MDL Court for the lack of a certified class – but, notably, none of these arguments are directed to the Hospitals. *See* Debtors' Objection, at pp. 18-19. The Hospitals, uniquely among the movants, filed a class complaint *and* were prevented from moving for class certification by the stay.

The Debtors argue that "there is little doubt that class certification would have been denied for all of the Movants in light of their clear-cut inability to satisfy Rule 23…" *See* Debtors' Objection, at ¶ 30. But decisions rendered by the MDL Court pertaining to the bellwether case brought by Summit County, Ohio suggest that the MDL Court would have been receptive to the argument that common issues predominate over individual issues with respect to the types of claims asserted by the Hospitals (which are quite similar to those asserted by Summit County). Judge Polster denied multiple motions for summary judgment, holding that Summit County could proceed to trial with

*generalized* proof that the Defendants' conduct caused the county to be inundated with opioids, and without presenting individualized proof that specific opioid prescriptions were influenced by the Defendants, were wrongfully dispensed or caused damages. *See, generally,* Section II(B)(3)(a), *infra*.

### 3. *Musicland* Factor 3: Whether the Members of the Putative Class Received Notice of the Bar Date

The Hospital Claimants do not dispute the efficacy (or cost) of the Debtors' noticing program. Rather, as set forth in the Motion, the two purposes of the class proof of claim vehicle here are to (i) prevent the disenfranchisement of many class members and (ii) mitigate against the catastrophic effect COVID-19 has had, and continues to have, on thousands of US hospitals, which prevented, prevents and will continue to prevent them from having the necessary resources to file an individual proof of claim in this case.

First, the ongoing COVID-19 crisis, which is as bad as it has ever been in many states, continues to place brutal financial and administrative burdens on hospitals, making it particularly unlikely that hospital staff will be closely focused on this proceeding. The Public Entities contend that "the impact of COVID-19 has already been specifically addressed" by the Court at the hearing on the motion to extend the Bar Date completely misses the mark and minimizes the hospitals' calamitous predicament. *See* Public Claimants' Objection, ¶ 42. This extension was not specifically directed to hospitals, and will do relatively little to increase the likelihood of a larger response.

Second, and most importantly, permitting a class claim will open up the mediation (and, if necessary) adjudication process to the full universe of acute care hospitals in the United States. This is of critical value because hospitals are the only group of private claimants in this bankruptcy who are truly *remediators*, and are truly essential participants in any forward-looking solution. *We*

*emphasize that, in the proposed Class Claim, the Hospitals are seeking only prospective relief (i.e., funds to abate the nuisance), and it is critical that all hospitals have the opportunity to participate.*

Third, the *usual* bankruptcy claim procedures are simply not sufficient, in a bankruptcy of this magnitude and complexity, to protect the interests of all hospitals. These claims are not simple accounts receivable that can be managed by hospitals' accounting clerks. And the simple act of filing a claim will not automatically result in a check being sent to each hospital claimant. Undoubtedly, these claims (absent a global settlement) are likely to be challenged, and the absent class member hospitals will need counsel to represent them through this process if they are to effect a recovery. Class certification does not only save the hospitals from each one having to file a claim, it gives them true legal representation by qualified counsel to protect those claims.

In sum, because the great weight of the *Musicland* factors favors applying Rule 23, the Court should exercise its discretion to permit the Hospitals to file their Class Proof of Claim.

### B. APPLYING RULE 7023, THE COURT SHOULD GRANT THE HOSPITAL CLAIMANTS' MOTION TO PROCEED AS A CLASS

#### 1. Certain Objectors' Challenges to the Hospitals' Class Definition are Without Merit

The Second Circuit does not have a "heightened" requirement of ascertainability, it only requires that a "class be defined using objective criteria that establish a membership with definite boundaries," and does not require "administrative feasibility" of identifying each class member based on that objective criteria. *B & R Supermarket, Inc. v. MasterCard International Inc.*, 2018 WL 1335355 (E.D.N.Y. Mar. 14, 2018). *Accord, e.g., Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) ("The standard for ascertainability is 'not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'" (quoting *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010)).

6

As stated in the Motion, the Hospital Claimants seek to certify the Hospital Class as follows:

> All acute care hospitals in the United States which treated, for opioid conditions, patients who have been prescribed prescription opioids. "Opioid conditions" are defined as opioid overdose; opioid addiction (including that of babies born opioid addicted); related mental health treatment programs; and any other opioid co-morbidities noted in the patient's record. Excluded from the Class are any hospitals (1) that file their own claim, and/or (2) are directly or indirectly owned or operated by (a) Debtors or Debtors' affiliated entities, or (b) the federal government.

Two objector groups have posited objections to the Hospitals' proposed class definition.

The Public Entities contend that the class is too vaguely defined, and that the Hospital Claimants fail to identify the "exact number" of class members. *See* Public Entities' Objection, at ¶57. But the Hospitals' class definition is hardly confusing – it consists of all acute care hospitals that have treated patients to whom prescription opioids have been prescribed, excluding government hospitals, and those who file individual claims. While the Public Entities suggest that the term "acute care hospital" is vague, nothing could be further from the truth. The Centers for Medicaid and Medicare Services defines that term as "[a] hospital that provides inpatient medical care and other related services for surgery, acute medical conditions or injuries (usually for a short term illness or condition)"[3] and state definitions are identical in substance. The identity of class members is quite easy to ascertain. And there simply is no requirement that a movant provide the exact number of all class members, as long as that information can be ascertained. *See Golden v. City of Columbus*, 404 F.3d 950 at 965–66 (6th Cir. 2005)

The Debtors suggest that all of the parties filing class motions have collectively posited

---

[3] https://www.medicare.gov/hospitalcompare/Resources/Glossary.html

7

"expansive and amorphous class definitions." *See* Debtors' Objection, at pp. 31-32. But the Debtors have nothing to say as to how the Hospitals' class definition could be construed as overly expansive or "amorphous," and focus entirely on the putative class definitions of other movants. *Id.*

### 2. The Relatively Few Rule 23(a) Challenges to the Hospitals' Motion are Without Merit

Fed. R. Civ. P. Rule 23(a) requires a showing that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

None of the objectors suggests that the members of the putative Class are not sufficiently numerous (required by Rule 23(a)(1)).

While certain of the objectors raise issues that might be construed as addressing the requirement that there are common questions of law or fact (Rule 23(a)(2)), we address those arguments in Section 3(a) below, in discussing the predominance requirement of Rule 23(b)(3).

Certain of the Objectors have raised issues that might be characterized as challenging the adequacy of the Hospitals as Class Representatives or, alternatively, the typicality of their claims.

The Public Entities suggest that the Hospitals cannot adequately[4] represent a class that includes hospitals in different financial condition ("certain of the Hospitals are considered financially distressed while others are highly profitable"). *See* Public Entities' Objection, at ¶ 63. But the Public Entities have not attempted to explain why this presents any sort of conflict, nor how it renders the claims atypical. The typicality requirement speaks to the qualitative similarity

---

[4] While the Public Entities style this argument as directed to the "commonality" requirement, it is, in substance, a typicality and/or adequacy challenge.

8

of the claims, and not the quantum of relief sought, as it is well settled that class members that have incurred vastly different levels of economic harm can coexist in the same class if their *claims* are similar enough. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Similarly, it does not render class members "antagonistic" to each other so as to render a class representative inadequate.

The Public Entities further posit the bare allegation, in a footnote, that the Hospitals "cannot be purporting to file claims on … behalf" of public hospitals. *See* Public Entities Objection, at n.15. But the Class *does* include public hospitals (except those owned by the federal government), and one of the moving Hospitals (Monroe County Healthcare Authority d/b/a Monroe County Hospital) that will serve as a class representative is, itself, a public hospital. The Public Entities do not attempt to explain why this poses a conflict, or any other prohibiting problem.

The Debtors identify what they describe as an adequacy problem, as they conclude that the Hospitals, through their membership on the Ad Hoc Committee of Hospitals, have excluded themselves from the definition of the Class they seek to represent. See Debtors' Objection, at n.27. But the Debtors misread the Motion. The class definition excludes hospitals that file their own claims (that group will exclude those members of the Ad Hoc Committee who do file claims, but not necessarily all members of that Committee). The moving Hospitals will not join the *claim* filed by the other members of the Ad Hoc Committee. If the moving Hospitals do file individual claims, it will only be on a provisional and contingent basis, to preserve their rights in the event that this Motion is denied.

9

### 3. The Hospitals Satisfy The Requirements Of Rule 23(b)(3)

#### a. (Predominance) Common Questions Predominate Over Individual Issues

The focus of the Debtors' objection is that individual issues of proof will predominate over common issues. *See* Debtors' Objection, at pp. 34-42. Florida, similarly, argues that the need for significant "individual proof" and related discovery militates against class certification. *See, e.g.,* Florida Objection, at p. 15 ("Here, burdensome and time-consuming discovery and individual proof would be required for the patients, insureds, and students upon whose injuries the Hospital Claimants, the Private Insurance Class Plaintiffs, and the IPSDs must rely, demonstrating that the claims of each of these groups are completely inappropriate for class treatment"). As the argument goes, the Hospitals' (and certain other claimants') proof will require putting on individualized evidence relating to, for example, each patient they treated, each prescription previously written for each patient, and the universe of information communicated to and available to each doctor that prescribed medication for and/or treated every patient.

But the Hospitals have no intention of litigating such a case. More importantly, for present purposes, they do not *need* to litigate their case in that manner and can prevail on the merits using individual proof.

One need look no further than the two most advanced opioid-related cases, one of which went to trial in Oklahoma against Johnson & Johnson, and the other of which, a bellwether case in the MDL brought by Summit County, Ohio, settled on the eve of trial.

As noted in one media account relating primarily to the Oklahoma case, "the plaintiffs – mostly states, cities and counties claiming to be seeking to recover opioid-related expenditures – appear to have settled on a strategy of 'aggregate proof' under which they will present expert testimony, instead of specific examples, to show a connection between pharmaceutical industry

10

practices and the increase in opioid abuse."[5]  The Oklahoma Attorney General went to trial with a case based on aggregate proof, and won.[6]

Similarly, in the *Summit* County bellwether case in the MDL, lawyers for Summit County defeated motions for summary judgment, and successfully defended their experts from various *Daubert* challenges, based on an aggregate proof, both with respect to fraudulent marketing and failure to detect or report suspicious orders:

> The Manufacturers contend Plaintiffs cannot show causation based on *aggregate proof*. *See* Manuf. Brief at 16-22 (Doc. #: 1894-1). As discussed above, Plaintiffs have presented evidence to support a finding that each Manufacturer engaged in deceptive marketing practices that resulted in an increased supply of prescription opioids and caused harm to Plaintiffs. Moreover, construing this evidence in the light most favorable to Plaintiffs, the record supports an inference that the conduct of each Manufacturer was a substantial factor in producing the harm. ... Because Plaintiffs have presented evidence that shows they have suffered the sort of injury that would be an expected consequence of the alleged wrongful conduct, Plaintiffs have made a sufficient showing to withstand summary judgment on this issue.
>
> ...
>
> The Manufacturers next contend Plaintiffs cannot show their alleged failure to maintain effective controls caused excess shipments of prescription opioids into the Track One Counties. Specifically, the Manufacturers assert Plaintiffs have failed to identify a single order they should not have shipped. *See* Man. Brief at 12-15 (Doc. #: 1894-1). For reasons similar to those stated above, the Court finds Plaintiffs' *aggregate proof* of causation sufficient to overcome summary judgment. In particular, given the massive increases in the supply of prescription opioids into the *Track One* Counties, combined with evidence that suggests there was a complete failure by Defendants to maintain effective controls against diversion, a factfinder could reasonably infer that these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs. ... Because Plaintiffs have presented evidence that shows they have suffered the sort of injury that would be an expected consequence of the alleged wrongful conduct, Plaintiffs have demonstrated that summary judgment is unwarranted on this issue. ....

---

[5] Dan Fisher, "At opioid trial, Johnson & Johnson moves to strike Oklahoma witness as 'de facto member of State's legal team'" (June 18, 2019), available online at https://legalnewsline.com/stories/512646956-at-opioid-trial-johnson-johnson-moves-to-strike-oklahoma-witness-as-de-facto-member-of-state-s-legal-team

[6] Judgment after Non-Jury Trial, State of Oklahoma v. Purdue Pharma, L.P., Case No. CJ-2017-816 (Dist. Ct. Cleveland Co., Okla. Aug. 26, 2019), available online at https://www.courthousenews.com/wp-content/uploads/2019/08/OklaJJOpioid-VERDICT.pdf

*In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 4178617, at *3 (N.D. Ohio Sept. 3, 2019) (case citations omitted) (emphasis added). *See also In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 3934597**,** at *7 (N.D. Ohio Aug. 20, 2019) (denying motion to strike expert Meredith Rosenthal, noting "Rosenthal's choice to treat all detailing data uniformly likewise does not present a problem of fit. This aggregate approach to detailing data, *like Plaintiffs' other decisions to use aggregate data,* is consistent with Plaintiffs' theory of liability") (emphasis added).

Both the Debtors and Florida rely heavily on *UFCW Local 1776 v. Eli Lilly & Co*., 620 F.3d 121, 133 (2d Cir. 2010), in which the Second Circuit held that individualized issues of proof (including proof relating to reliance) precluded class certification in a case brought by third party payors against Eli Lilly relating to the efficacy of one particular drug. But that case does not resemble the matter at bar in any shape or form – that was a case about misrepresentations relating to the attributes of one specific product that the plaintiffs allege they detrimentally relied by purchasing that product and/or purchasing it at a higher price. This case is about the creation, promotion, and operation of an entire *opioid industrial complex* that flooded the country with opioids*,* not an argument about the attributes of one specific product. While it may not have been possible to go to trial in the *Eli Lilly* case with aggregate proof, it certainly is possible in this instance.

Both the Debtors and Florida extensively cite to many tobacco decisions. Florida, in fact, cites to many of them in a single string cite without further elaboration. *See* Florida Objection, at n.12. But the tobacco cases were merits decisions related to proximate cause, and only address tangentially (if at all) issues relevant to class certification. *See, e.g., Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429 (3d Cir. 2000) (cited by the Debtors and Florida) (affirming Rule 12(b)(6)

dismissal); *Perry v. Am. Tobacco Co.,* 2001 WL 686812, at *2 (E.D. Tenn. Apr. 12, 2001), *aff'd* 324 F.3d 845 (6th Cir. 2013) (cited by Debtors) (same).

Florida does not even attempt to camouflage the fact that it is arguing the merits. Florida expressly argues that the Hospitals' injuries are too remote, and the Hospitals' claims fail for lack of proximate cause. *See* Florida Objection, at pp. 8-10. This argument is, of course, wrong, as this issue has been briefed extensively, and the courts have, thus far unanimously, sustained hospital claims in state and federal court.[7] But more importantly for present purposes, it is an argument for another day, and is entirely inappropriate at the stage of class certification. *Schleicher v. Wendt,* 618 F.3d 679, 685–86 (7th Cir. 2010) (observing that "Defendants have approached this case as if class certification is proper only when the class is sure to prevail on the merits… Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win").

The Debtors also contend that the applicability of the laws of multiple states preclude class certification. *See* Debtors' Objection, at pp. 34-36. But their only attempt to explain a purported actual conflict goes absolutely nowhere - the Debtors cite the existence of hospital lien statutes on the books in many states, which allow hospitals to assert liens on claims brought by patients, and which Debtors contend vary state by state. But movants are not asserting liens on the claim of another person (which is precisely what a hospital lien is) – they are asserting their own claim. The Debtors are free to (later) challenge the claim on the merits.

Obviously, the Hospital Claimants' RICO claim presents no choice of law issues. And

---

[7] Motions to dismiss have been denied in all three hospital cases in which they have been decided. *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2020 WL 1669655 (N.D. Ohio Apr. 4, 2020); Order, *In re: Opioid Litig.*, No. 19-C-9000 (Cir. Ct. Kanawha Co., W. Va. Feb. 19, 2020); Ruling, *Tucson Med. Ctr. v. Purdue Pharma, L.P., et al.*, No. C20184991 (Ariz. Super. Ct., Pima Cty., Sept. 16, 2019).

neither the Debtors, nor any other objecting party, attempt to identify any meaningful differences among state laws on nuisance, unjust enrichment or common law fraud sufficient to preclude a finding of predominance.[8]

### b. (Superiority) The Filing Of A Class Claim Is The Superior Method Of Proceeding

The Debtors contend that proceeding on a class basis is not a superior method of adjudicating the Class' claims. Repeating arguments they assert against the filing of a class proof of claim, the Debtors contend that the existence of the usual bankruptcy process militates against a finding of superiority, and that the proposed classes are nothing more than an "unnecessary overlay" that will only complicate matters. *See* Debtors' Objection, at ¶ 73.

Proceeding through the class mechanism is plainly superior to usual bankruptcy procedures with respect to *hospital* claims.

First and foremost, it will open up the mediation (and, if necessary) adjudication process to the full universe of acute care hospitals in the United States (that is greater than simply the Ad Hoc Group of Hospitals and any individual hospitals outside of that group that might file claims). This is of critical value because hospitals are the only group of private claimants in this bankruptcy case who are truly *remediators* and indispensable participants in any forward-looking solution. Again, we reaffirm that, in the proposed Class Claim, the Hospitals seek only prospective relief (*i.e.,* funds to abate of the nuisance); therefore, it is critical for all hospitals to participate in this process.

Second, the ongoing COVID-19 crisis, which is as bad as it has ever been in many states,

---

[8] And to the extent there are differences for some claims, such as state statutes proscribing unfair and deceptive practices in commerce, subclasses can always be carved out for groups of states.

14

continues to place severe financial and administrative burdens on hospitals (rising to the level of an existential threat to some hospitals), rendering it less likely that many class members will be able to timely and meaningfully focus their precious resources on this proceeding.

Third, as discussed above, claims of hospitals (absent a global mediation) are likely to be challenged, and the absent class member hospitals will need counsel to represent them through this process if they are to obtain a recovery for their remediation claim. Class certification does not only obviate the need for each hospital to file its own claim at a time when they literally cannot, it gives them true legal representation by qualified counsel to protect those claims.

### III.     CONCLUSION

For all the foregoing reasons and authorities, the Hospital Claimants respectfully request that this Court (1) overrule the Objections, (2) exercise its discretion pursuant to Fed. R. Bankr. P. 9014(c) and apply Fed. R. Bankr. P. 7023 to the Hospital Claimants' Proof of Claim; (3) accept for filing the Hospitals' Class Proof of Claim, filed on behalf of all similarly situated claimants (other than the Ad Hoc Hospital Group and any other hospitals that may file separate proofs of claim), and certify the Class as requested above; (4) appoint counsel for the Hospital Claimants as Class Counsel; and (5) grant such further relief as this Court deems just and equitable under the circumstances.

Dated:   July 20, 2020
             New York, NY

Respectfully submitted,

MCGRAIL & BENSINGER LLP

*/s/ Ilana Volkov*
Ilana Volkov
888-C 8th Avenue #107
New York, NY 10019
(201) 931-6910 telephone
ivolkov@mcgrailbensinger.com

John W. (Don) Barrett
David McMullan, Jr.
Richard Barrett
Sterling Starns
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, Mississippi 39095
Ph: (662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
rrb@rrblawfirm.net
sstarns@barrettlawgroup.com

Jonathan W. Cuneo
Monica Miller
CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Ph: (202) 789-3960
jonc@cuneolaw.com
evelyn@cuneolaw.com
monica@cuneolaw.com

*Attorneys for the Hospital Claimants*