Honorable Robert D. Drain  July 19, 2020
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140

Re: *Purdue Pharma, LP, et al.*, case no. 19-23649 (Bankr. S.D.N.Y.)

Dear Judge Drain,

I respectfully write in support of Mr. Pete Jackson's request, by letter dated July 15, 2020, that the Court appoint an independent examiner to investigate and issue a public report on (1) the Sackler family's role in the marketing, labeling and sale of OxyContin and (2) any evidence of misleading and fraudulent marketing of OxyContin by Purdue Pharma after their holding company's 2007 guilty plea in the Western District of Virginia.[1]

As an Assistant District Attorney for New York County, I was assigned to the Office of the Special Narcotics Prosecutor, where I spent four years investigating and prosecuting a New York City doctor who sold controlled substance prescriptions, including OxyContin, to patients struggling with addiction.[2]

My team and I witnessed the emotional, economic, medical and societal devastation wrought by the opioid epidemic, and by OxyContin in particular. We devoted thousands of hours to this case, conducting interviews and reviewing medical records. We worked above and beyond our official schedules and limited resources to pursue the facts and try to stop the carnage. In our case, we were able to find answers to *some* of the questions of *some* grieving families and patients in recovery; with those answers came a measure of justice, a moment of peace and the possibility of forgiveness. Still, we were well and painfully aware of the limited reach of our work on any individual opioid-related case.

This case, however, has tremendous reach and importance, not only in terms of the number of lives and families it will affect, but also because of its potential to result in broad releases for members of the Sackler family. Having read the unsealed court documents from Massachusetts and New York detailing allegations related to the Sackler family's role in the labeling, marketing and sale of OxyContin, it is clear that there is much more to uncover and analyze. Yet based on the protective orders in place, the discovery disputes and the pressure to reach a swift resolution on financial matters, it appears increasingly unlikely that this proceeding will allow for any comprehensive investigation or result in a detailed, independent public report.

---

[1] Barry Meier, *In Guilty Plea, OxyContin Maker to Pay $600 Million*, New York Times (May 10, 2007), https://www.nytimes.com/2007/05/10/business/11drug-web.html
[2] James C. McKinley, Jr., *At Trial, Queens Doctor Is Accused of Recklessly Prescribing Drugs,* New York Times (April 2, 2014), https://www.nytimes.com/2014/04/03/nyregion/at-trial- queens-doctor-is-accused-of-recklessly-prescribing-drugs.html

Your Honor, I understand that bankruptcy is mostly about money, and it is important to proceed toward a resolution of financial matters in the case of Purdue Pharma. I also understand that Your Honor has not yet issued a release to any members of the Sackler family and that the terms of the future settlement are yet to be determined. However, it is well past time for us to receive confirmation that the facts will, indeed, be disclosed in full and with objectivity.

Too many victims of the opioid epidemic have waited nearly two decades for information and accountability, enduring disappointment after disappointment as members of the Sackler family and Purdue Pharma repeatedly benefited from sealed pleadings and court records in their efforts to conceal their role in the opioid crisis. Meanwhile, some grieving parents have marked the thirtieth birthdays of the teenagers they buried. Everyone who thinks it is harmless to keep bereaved parents waiting should spend just one hour imagining life in their heavy hearts. Survivors of addiction also still struggle to rebuild their lives.  Your Honor, they all need the facts to survive their losses. Justice delayed is justice denied.

For us, the members of the public who have watched our communities suffer or who have devoted our careers to fighting the opioid epidemic, ending this case without a comprehensive public report would be a terrible blow and betrayal: we need to know what else we could have done, what we were up against and what to do if it ever happens again. We need to be able to look at our own children, for the first time in decades, without wondering whether we had warned them enough, whether we would know if they were at risk, and whether we would lose them, too.

As Your Honor knows, the Bankruptcy Code offers a solution where there is inadequate or unreliable information to justify a release or where accountability is in the best interest of creditors: the appointment of an examiner. It is hardly pushing the envelope to suggest an examiner in a case that involves not just shady transfers, but also potentially stunning recidivism and tens of thousands of deaths. As Your Honor knows, there is no guarantee of a criminal investigation and there will be no further chances for any civil pursuit of justice. This Court, for better or for worse, is the last stop for victims – and for justice.

Justice, in this case, demands a full and independent investigation of the facts as well as comprehensive public disclosure – not just about financial transactions, but also strategic decisions, key decision-makers, motives, knowledge and failed interventions. It is worth the additional cost of an examiner and any incremental delays in the financial negotiations to offer Purdue's victims the answers they deserve and to instruct us all on how to prevent such a catastrophe from happening again.

Respectfully,

Charlotte Bismuth