Hearing Date: July 23, 2020
Hearing Time:  2:00 p.m.

**TARTER KRINSKY & DROGIN LLP**
*Counsel for Ad Hoc Committee of NAS Children*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| PURDUE PHARMA, L.P., *et al.*, | Case Nos.19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### OMNIBUS REPLY BY NAS GUARDIANS ON BEHALF OF THE NAS CHILDREN'S ABATEMENT CLASS ACTION CLAIMANTS TO OBJECTIONS FILED TO THEIR MOTION FOR ENTRY OF AN ORDER PURSUANT TO FED. R. BANKR. P. 9014 AND 7023 PERMITTING THEM TO FILE A CLASS PROOF OF CLAIM AND GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Adlon Therapeutics L.P. (6745), Greenfield Bio Ventures L.P. (6150), Imbrium Therapeutics L.P. (8810) Seven Seas Hill Corp. (4591), Ophir Green Corp (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' mailing address is One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901. For ease of reference, the term "Purdue" as used herein, refers to Debtors. For the purposes of this Motion, all allegations set forth herein related to or pertaining to "Manufacturers" apply equally to Purdue.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

COME NOW Jacqueline Ramirez, Melissa Barnwell, and Ashley Poe, Legal Guardians of neonatal abstinence syndrome ("NAS") Children R.R., C.G., and P.P.R.P. (hereinafter, "Plaintiffs" or "NAS Guardians"), and who reply (the "Reply") to the Objections[2] filed by the Objecting Parties[3] to the motion (the "Motion")[4] filed by Plaintiffs pursuant to FED.R.BANKR.P. 9014 and 7023 seeking leave to file a proof of claim on behalf of the proposed NAS Children's Abatement Class and for entry of an order making FED.R.CIV P. 23 applicable to the "NAS Children's Abatement Class Proof of Claim" (sometimes, the "Class Proof of Claim"). [Dkt. No. 1362]. In reply, the Plaintiffs state as follows:

## **PRELIMINARY STATEMENT**

1.        Upon filing its bankruptcy petition, Purdue announced an "agreement in principle on a framework for settling the U.S. opioid litigation" with the "entire value [of its companies] to be contributed for the benefit of the American public."[5]  It further pledged to "work with state attorneys general *and other plaintiff representatives* to finalize and implement this agreement as

---

[2] "Objections" refers to, collectively, the *Omnibus Objection (*the "Florida Objection") *to Motion for the Request by the Hospital Claimants, the Private Insurance Class Plaintiffs, the Independent Public School Districts, the NAS Guardians, and the Cheyenne and Arapaho Tribes for Leave to File Motions for Class Relief filed by Attorney General, State of Florida* ("State of Florida") [Dkt No. 1415]; *Debtors' Omnibus Objection* (the "Debtors' Objection") *to Motions by Certain Claimants for an Order Allowing them to Proceed with a Class Proof of Claim and Certifying Class filed by the Debtors* [Dkt No. 1421]; *The Ad Hoc Group of Individual Victims' Statement* (the "PI Statement") in *Support of Debtors' Omnibus Objection of Motions by Certain Claimants for An Order Allowing Them to Proceed With A Class Proof of Claim Proof of Claim and Certifying A Class filed by Ad Hoc Group of Individual Victims of Purdue Pharma L.P.* (the "PI Ad Hoc") [Dkt No. 1423]; *Public Claimants' Omnibus Objection* (the "Public Ad Hoc Objection") *to Motions for Leave to File Class Proofs of Claim filed by Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants* (the "Public Ad Hoc Committee," and together with the State of Florida, the "Public Claimants") [Dkt No. 1431].

[3] "Objecting Parties" refers to, collectively, the State of Florida, the Debtors, the PI Ad Hoc and the Public Ad Hoc.
[4] Capitalized terms not defined herein shall have the meaning attributed to such terms in the Motion.
[5] *See* https://purduepharma.com/news/2019/09/16/purdue-pharma-announces-agreement-in-principle-on-landmark-opioid-litigation-settlement/.

quickly as possible."[6]  In a more recent press release, Purdue extolled the benefits of the proposed agreement, stating that "[t]hrough the chapter 11 process, Purdue seeks to deliver in an expeditious manner more than $10 billion of value… *to families* and communities affected by the opioid crisis."[7]

2.    Notwithstanding these prior pledges, the Debtors (sometimes, "Debtor" or "Purdue"), in concert with the Public Claimants, now object to the NAS Guardians' class claims, the effect of which is to deprive the NAS Children's Abatement Class of the due process of a full and fair hearing on class certification.  The Objections have a shared goal of subverting the bankruptcy process, including the on-going, court-ordered mediation, and ignoring the fundamental premise of bankruptcy that "other creditors have no right to the higher share of the debtor's assets they can achieve by excluding rival creditors at the threshold."[8]

3.    Contemporaneously with the filing of this Reply, the NAS Guardians joined in the *Response to and Request for Adjournment of Class Claim Motions Until Conclusion of Mediation* (the "Committee Response") [Dkt. No. 1425] filed by the Official Committee of Unsecured Creditors (the "Official Committee"), and agree with and fully support its premise, namely, that the Motion and the other Class Motions should be adjourned until the conclusion of the mediation currently underway.

### Prematurity of 7023 Proceedings

4.    The NAS Guardians believe that the efforts of the Objecting Parties to conflate the procedural requirements of Bankruptcy Rules 9014 and 7023 are improper, deny substantive and procedural due process rights and that the proper procedure, whether the Court adjourns the

---

[6] *Id.* (emphasis added).
[7] *See* https://purduepharma.com/news/2020/02/21/purdue-taps-tom-vilsack-former-cabinet-secretary-and-governor-to-monitor-compliance-with-voluntary-injunction/ (emphasis added).
[8] *In the Matter of American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988).

Motion and other Class Motions to a later date or not, is for the Court first to consider and rule on the NAS Guardians' Motion and, if such motion is granted, to set a full briefing and hearing schedule for class certification under Rule 7023.

5.      In an abundance of caution, the NAS Guardians opted to include with their Motion certain preliminary briefing relating to the application of Fed.R.Bankr.P. 7023 (and by extension Fed.R.Civ.P. 23), as well as a draft Class Complaint.  To be clear, full and final briefing by Plaintiffs and a ruling by the Court on the second step of this process—the rights of the NAS Guardians of thousands of NAS Children to seek abatement pursuant to class treatment under 7023 considerations—was and is still premature for the reasons set out below.[9]

### The Objections Are Designed to Improperly Influence the Mediation

6.      The Objecting Parties allege the Motion and other Class Motions should be adjudicated now because the NAS Guardians and other movants filed them and forced the issue. This argument is wholly self-serving and should be disregarded.  First, the Bar Date was responsible for the timing of the movants' filings, as discussed *infra* and in the Committee Response.  The Debtors' and Public Claimants' objections are inappropriately interfering with the ongoing, robust mediation and if permitted to proceed, these objections and the process it creates will no doubt cause its unsuccessful and expensive conclusion.

7.      Both the Debtors' and Public Claimants' objections were clearly prepared, at considerable expense, well in advance of the filing of the Motion.  Plainly, the Debtors and Public Claimants have always known that the NAS Children intended to file class claims, as that intention has long been openly apparent.  In fact, the Mediation Order expressly refers to

---

[9] So that the requested 9014 relief is not perceived by the Court to be pursued in vain, i.e. a scenario in which a claimant succeeds on 9014, but later fails on 7023, a preliminary showing of the *bona fides* of their expected 7023 arguments was made with the right reserved to revisit and conduct full 7023 briefing after a ruling on the 9014 request was made by this Court.

"claimants comprising a putative class of NAS children seeking medical monitoring funding."
*See* Order Appointing Mediators (the "Mediation Order") [Dkt. No. 895] at 6(b).

8.      For more than four months, the Debtors and Public Claimants have engaged in an extensive and expensive mediation based on this premise **with the designated putative class of NAS Guardians as stakeholder participants**.[10]  If other stakeholders had concerns about whether the NAS Guardians intended to seek class treatment of their medical monitoring claims, such concerns were never voiced during this court-ordered mediation process which required good faith by all participants.  To raise such concerns now, as the mediation approaches its most critical moments, smacks of gamesmanship and bad faith.

**The Remedies sought by the NAS Children's Abatement Class are not Remedies available to Governmental Entities.  They Do Not and Cannot Represent the NAS Children *Parens Patriae* Nor Can They File or otherwise Pursue Claims on Their Behalf in The Bankruptcy**

9.      Governmental entities, such as sovereign states, acting as *parens patriae* can "represent the interests of their citizens in enjoining public nuisances."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 603 (1982).  To sue in *parens patriae*, however, a state "must articulate an interest apart from the interests of particular private parties," that is, a sovereign or quasi-sovereign interest.  *Id*. at 607.  Because the "[i]nterests of private parties are obviously not in themselves sovereign interests" of any type, *id*. at 602, the Public Claimants lack

---

[10] The NAS Children's Ad Hoc Committee described its abatement plan in the record.  "The NAS Children's Ad Hoc Committee, as advocates for their many thousands of NAS children clients, has two unwavering goals which are legally and scientifically sound: First to secure a medical monitoring program based on the written plan we and our experts have prepared. That plan will follow NAS children to age 18, provide (1) fulsome anonymous medical and educational evaluations for use in their medical and educational settings (2) development of and improve the medical standards of care, educate healthcare providers and educators about NAS, to reduce NAS treatment costs, and (3) educate the public by de-stigmatizing this population all while protecting the privacy rights of participants and ensuring that the funds set aside for this purpose remain untouched by others who will be inclined to use the funds for a different purpose. And second, to secure reasonable and just compensation for the injuries incurred by NAS children and their legal guardians."  *See* NAS Children's Ad Hoc Committee Response to ECF Document No. 1167 (Letter Signed by National Advocates For Pregnant Women) [Dkt. No. 1193] at 7.

standing to file or otherwise pursue claims on behalf of the NAS Guardians or the NAS Children.[11]

10.    The Tenth Circuit reached exactly this conclusion in *Satsky v. Paramount Commc'ns, Inc*., 7 F.3d 1464 (10th Cir. 1993).  There, the question was whether a consent decree entered into by the State of Colorado prevented private individuals who subsequently asserted claims for personal injuries, property damage, and economic losses from suing.  Even though the consent decree contained a broad release, the Tenth Circuit allowed the individuals to sue.  The consent decree did not release the individuals' claims because "a state may not sue to assert the rights of private individuals."  *Id.* at 1469 (citing *Alfred,* 458 U.S. at 600; *Pennsylvania v. New Jersey,* 426 U.S. 660, 665 (1976); *New York by Abrams v. Seneci,* 817 F.2d 1015, 1017 (2nd Cir.1987); *Illinois v. Life of Mid–America Ins. Co.,* 805 F.2d 763, 766 (7th Cir. 1986), and 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3531.11 at 19 (1984)).  Lacking power to assert private claims, Colorado could not release them either.

11.    The Sixth Circuit has also recognized that a governmental entity lacks standing to assert a claim held by a private individual.  In *Chapman v. Tristar Prod., Inc*., 940 F.3d 299 (6th Cir. 2019), the court held that Arizona lacked standing to appeal the fairness of a class action settlement because "the only objections that Arizona can make are indistinguishable from the objections which individual Arizonans might raise."  *Chapman*, 940 F.3d at 306.  Having failed to assert an independent sovereign interest, Arizona could not sue.

---

[11] *See also*, *State of Ga. v. Pennsylvania R. Co.,* 324 U.S. 439, 473 (1945) (dissenting opinion) ("[T]he inhabitants of the State who have suffered injury or who are threatened with injury by the unlawful practices alleged in the amended complaint are alone entitled to seek a legal remedy for their injury, and are the proper parties plaintiff in any suit to enforce their rights which are alleged to have been infringed.  It has long been settled by the decisions of this Court that a State is without standing to maintain suit for injuries sustained by its citizens and inhabitants for which they may sue in their own behalf.").

12.    Similarly, the Public Claimants herein do not have sovereign or semi-sovereign interests that are concomitant with those of the NAS Guardians or the NAS Children and therefore lack the capacity to pursue their claims.[12]

13.    The clarity of the law notwithstanding, certain of the Public Claimants imply that the relief they seek in bankruptcy will somehow result in either duplicative or superior abatement for the NAS Children's harm.  However, in order to reach such a result, it must follow that (1) there is  some on-going, nondelegable care duty owed by the governmental entities to the NAS Children; and (2) there exists or might exist an ironclad pledge by the governmental entities to render aid to the NAS Children.[13]

14.    Nothing in the Public Claimants' filings require governmental entities to use any amount of funds to alleviate the financial burden that caring for the NAS Children imposes on the NAS Guardians.  With any funds obtained, they can balance their hemorrhaging budgets, meet unfunded pension obligations, implement COVID-19 protocols, pay state unemployment claims, or spend the money in any other way that they prefer.   Only the NAS Guardians stand ready, willing, and able to protect the NAS Children, to prosecute the necessary class claims that will advance their interests, and to bind any bankruptcy proceeds for their sole benefit.

---

[12]  The governmental entities *are* in a *parens patriae* relationship with NAS children who are wards of the States and can sue to recover the cost of caring for them.  Those children are excluded from the NAS Children's Abatement Class.

[13] Though they object to gain advantage over other creditors, the Public Claimants make no such pledge, nor do they identify a legal basis for their purported ability to co-opt the NAS Guardians' and Children's claims.  These are the same public claimants as the ones in *In re National Prescription Opiate Litigation*, MDL 2804, N.D. Ohio (the "Opioid MDL"), whom admitted that they were not binding themselves to use prospective funds for **any** specific purpose, much less to pay for long-term medical monitoring, surveillance and study for the NAS Children.

## **LEGAL ARGUMENT**

### **The Two Step Process for Class Proofs of Claim**

15.     Determining whether to permit a class action proof of claim is a matter of discretion for the Bankruptcy court.  *See* Fed. R. Bankr. P. 9014(c); Fed.  R.  Bankr.  P.  7023; *In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007).[14]  *See also*, *In the Matter of American Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988).  Exercising that discretion is a two-step process: *first*, the court must determine whether to apply Rule 23, through Bankruptcy Rules 9014(c) and 7023, to the proposed class claim in the claims administrative process; and *second*, the court must determine whether the proposed class claim satisfies the requirements of Rule 23 for class certification.  *See In re MF Global Inc.*, 512 B.R. 757, 762–63 (Bankr. S.D.N.Y. 2014); *Musicland*, 362 B.R. at 651, 654-55; *In re Chaparral Energy, Inc.*, No. BR 16-11144 (LSS), 2019 WL 4643849, at *3 (D. Del. Sept. 24, 2019); *In re Think Fin., LLC*, No. 17-33964 (HDH), 2018 WL 9801454, at *3 (Bankr. N.D. Tex. Aug. 30, 2018).

16.     Proper procedure requires that the Court bifurcate this process and hear the "first step" (i.e. whether to apply Rule 23 to the claims administration process) before taking up the task of certifying a NAS Guardian class in the "second step."  *See Think Fin.*, 2018 WL 9801454, at *3 (bifurcating the hearing on the motion for class treatment and hearing only the "first step" as a threshold legal issue after the bar date had passed and after extensive notice procedures failed to ensure adequate creditor participation by putative class members).[15]

---

[14] *Musicland* clearly stands for the proposition that this is a two-step process.  However, the court therein never reached the second step, because the claimant failed to satisfy 9014 and no 7023 inquiry could follow.  As discussed, both *supra* and *infra*, multiple other courts have followed the two-step process following a successful 9014 application and eventually reached the 7023 stage with certification of a bankruptcy class.

[15] *Accord In re USA Gymnastics*, No. 18-09108-RLM-11, 2020 WL 1932340, at *4 (Bankr. S.D. Ind. Apr. 20, 2020) ("If this Court were to apply Rule 7023, the next step would be to conduct a hearing to determine whether the purported class should be certified under Rule 7023."); *Think Fin.*, 2018 WL 9801454, at *3 ("Given the two-step process, this Court recognized a threshold legal issue—whether to apply Bankruptcy Rule 7023 to the putative class

17.    At this juncture, the NAS Guardians seek only a determination on the first step of the process: whether they will receive leave under 9014 to file a class proof of claim.  The NAS Guardians expressly reserved the right to fully brief the requirements of 7023 at a later date. Thus, objections by the Public Claimants and by the Debtor on the issue of whether the NAS Guardians have met the requirements of 7023 are irrelevant to the question at issue.  The 7023 motion will not be filed, nor become ripe, until the Court has granted the Motion that will allow the filing of a class complaint and future briefing under 7023.[16]

### **The Requirements of Rule 9014 Have Been Satisfied**

18.    The class wide abatement claims of the NAS Guardians are precisely the type of claims contemplated by Judges Easterbrook, Posner and Grant in the seminal decision *In the Matter of American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988), which first allowed the filing of a class claim in modern bankruptcy procedure.  Indeed, the proposed NAS Children's

---

claims. For this reason, on April 24, 2018, the Court determined that the hearing on the 7023 Motions should be bifurcated and the threshold legal issue of whether the Court should exercise its discretion to apply Bankruptcy Rule 7023 should proceed first."); *In re Sequoia Senior Solutions, Inc.*, No. 16-11036, 2017 WL 2533345, at *2 (Bankr. N.D. Cal. June 9, 2017) ("The court at this time makes no ruling regarding certification of the class or the merits of the claim, and holds only that the request to apply Rule 7023 is timely and that the equities of the case militate in favor of allowing the claim to be asserted on behalf of employees if the other legal requirements can be met."); *Gentry v. Siegel*, 668 F.3d 83, 91-93 (4th Cir. 2012) (". . . the representative claimants can . . ., upon an indication of an objection, file a Rule 9014 motion to authorize the application of Rule 7023. If the motion is granted, the procedure set forth in Civil Rule 23 would become applicable.); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (noting that "the commencement of the original class suit tolls running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status. …For the most part, Civil Rule 23 factors do not become an issue until the bankruptcy court determines that Rule 7023 applies by granting a Rule 9014 motion. The issue on such a motion centers more directly on whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures.").

[16] Notably, the few purported (and premature) 7023 objections are specious, lacking in both legal and evidentiary basis.  For example, it is argued that the NAS Guardians fail to establish predominance.  And, yet, the primary certification basis is pursuant 7023(b)(2) and the predominance need not even be shown.   The Debtor similarly argues a failure to show commonality.  This is equally weak and specious.  Commonality is an **extremely** low hurdle and only one common issue need be shown to meet the requirement.   In the draft complaint attached to the Motion as **Exhibit A**, the Children identified at least 14 common issues all of which were addressed in the exhaustive factual and legal arguments.

Abatement Class not only meets the standards set forth in *American Reserve* and later in *In re Musicland Holding Corp.*, 362 B.R. 644 (Bankr. S.D.N.Y. 2007), it also possesses other unique attributes that weigh in favor of the Court's exercising its discretion under Rule 9014.

19.     Building upon *American Reserve*, the court in *Musicland* set forth three, non-exhaustive factors to be considered under 9014 to determine whether to permit the filing of a class proof of claim. *See Musicland*, 362 B.R. at 654-55.  They are: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the case. *Id.*

20.     In addition to the *Musicland* factors, courts have routinely considered additional factors in making the "step one" 9014 determination.  *See, e.g., In re Bally Total Fitness of Greater New York, Inc.* 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009) (considering whether class claim would be consistent with goals of bankruptcy); *Chaparral*, 2019 WL 4643849, at \*9-10 (considering deterrent effect of class claim on reorganized companies' future conduct); *Think Fin.*, 2018 WL 9801454, at \*3 (considering, *inter alia*, "… prejudice to putative class members, … the putative class representatives' conduct in the bankruptcy case, and … the status of proceedings in other courts.").

21.     For example, courts consider "whether 'the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy.'"  *Bally Total Fitness*, *supra* (quoting *Musicland*, 362 B.R. at 651).  In fact, this is the very purpose of the *Musicland* factors. *See Musicland*, *supra*.  In this case, a relevant goal of bankruptcy, and, in fact, "[t]he principal function of bankruptcy law," "is to determine and implement in a single collective proceeding the entitlements of all concerned."  *American Reserve*, 840 F.2d at 489.

22.    To that end, and because of the equitable nature of the abatement relief sought by the NAS Children's Abatement Class, before this Court are additional novel factors not previously contemplated by bankruptcy courts: (1) the NAS Guardians seek unique class wide, equitable relief (monitoring and surveillance protocol with the imposition of a science panel to study the robust data from a large cohort of participants) that cannot be obtained or implemented in an efficacious manner on an individual basis; (2) the unique relief sought by the NAS Guardians will not arise *via* action by the competing Public Claimants (as they argue in their Objections) because they do not have *parens patriae* standing to assert these claims, nor can they be required to use bankruptcy proceeds in the aid of the Legal Guardians and the NAS Children in their care); and (3) there is a unique opportunity to achieve a resolution of claims within the bankruptcy process specifically tailored to address the exigent and worsening conditions of the NAS Children.  All of these are appropriate and unique additional factors that this Court must weigh in its exercise of discretion.  As set forth below, these factors, including the *Musicland* factors, clearly counsel in favor of permitting 9014 relief and filing of the proposed Class Complaint.

## Plaintiffs Have Either Satisfied the *Musicland* Factors or They Are Wholly Inapplicable
### *Prepetition Certification*

23.    The Debtor first argues that 9014 relief should not be granted because the NAS Guardians did not certify their class prepetition.  This argument lacks merit; the Plaintiffs were not at liberty to move for certification in the MDL proceeding due to restrictions imposed by the presiding judge.

24.    The NAS Children's abatement classes were filed on multiple occasions and stayed in the MDL.  When leave was finally allowed to amend and proceed to class certification after more than a year, the Debtors filed for Chapter 11 protection in September 2019.  Since then, the advent of COVID 19 has further delayed the actions on which class certification have been

sought in the MDL (against other defendants) and discovery has yet to be restarted on those motions, preventing any determination on the pending motion for class certification. This tortured procedural history is detailed in the NAS Guardian's draft Class Complaint at §V, ¶¶ 84-87.

25.      *In re Chateaugay Corp.*, 104 Bankr.R. 626 (S.D.N.Y. 1989), which is favorably cited by the court in *Musicland*, stands for the proposition that it is error to automatically deny 9014 relief without considering all relevant factors. This holding came despite the fact that the class in *Chateaugay* had not been certified pre-petition but merely had been pending.

26.      Consistent with *Chateaugay* and the holdings discussed infra, the NAS Guardians are not prohibited from 9014 relief simply due to the absence of prepetition certification, especially given the procedural history in the MDL. *Accord In re Chaparral Energy, Inc.*, 571 B.R. 642, 646-50 (Bankr. D. Del. 2017) (exercising discretion to apply Rule 23 to class proof of claim where putative class was not certified pre-petition, even though plaintiffs **had almost five years** to certify class before bankruptcy petition), *aff'd*, 2019 WL 4643849 (D. Del. Sept. 24, 2019); *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58, 61-67 (Bankr. D. Del. 2002) (same, even though plaintiffs **had over a year** to certify class before bankruptcy petition); *In re Verity Health Sys. of California, Inc.*, No. 2:18-BK-20151-ER, 2019 WL 2461688, at *8-9 (Bankr. C.D. Cal. June 11, 2019) (same where plaintiffs **only had two months** to certify class before bankruptcy petition); *MF Global*, 512 B.R. at 763-65 (same where plaintiffs had **no opportunity** to certify class before bankruptcy petition because claims were asserted through an adversary proceeding).

### *Notice of Bar Date*

27.      The Debtor also misapplies the second prong of the *Musicland* test to the Guardians' claims which relates to whether a claimant seeking class wide relief was given notice of the bar date. Notice, however, is entirely irrelevant if the relief sought cannot be obtained on

an individual basis.  In the context of the NAS Guardians' proposed class claims, even perfect notice (which is not conceded) would only have resulted in more individual claims for different relief or duplicative class claims for the unique class-wide relief sought by the NAS Guardians.

28.    The Guardians, furthermore, seek certification primarily under 23(b)(2).  In such a class, no notice is required.  Thus, at a bare minimum, the second *Musicland* factor should be given little weight due to its lack of utility in the context of this dispute.  *See MF Global*, 512 B.R. at 763-65 (exercising discretion to apply Rule 23 to class proof of claim based on application of the third *Musicland* factor as the "principal consideration" where the first two factors (pre-petition certification and notice to the putative class) were of limited utility based on the facts and circumstances of that case).

29.    The Objecting Parties chose to obfuscate and ignore the fundamental nature of the relief sought by the NAS Guardians—ongoing assessment of a population and use of that robust data set to determine the best practices to abate this crisis amongst NAS Children.  Just as we would learn very little if we evaluated a single COVID-19 patient to determine long-term effects of the virus, a broad cohort of NAS Children must be involved in order to perform the sort of long-term epidemiological studies that might provide significant abatement of their suffering and knowledge regarding best-practices and standards of care.

30.    Judge Easterbrook's opinion in *American Reserve* emphasizes the absolute necessity in bankruptcy of gathering up all claims, regardless of their nature.  "The principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned."  *American Reserve*, 840 F.2d at 489.  Easterbrook reckoned that "[i]f American Reserve is liable for fraud, the victims are entitled to recovery — according to their entitlements under substantive law — just as the firm's landlords and vendors of typewriters

are entitled to recovery." *Id.* Only by the filing of the class claim in *American Reserve* could all

claims be properly gathered.    Similarly, in the instant matter, the NAS Guardians' claims for

assessment and abatement can only be addressed by the filing of the class claim.

### *Interference in the Administration of the Bankruptcy*

31.    The Objecting Parties' final basis for opposition is the most baseless of all – the

contention that allowing the filing of the NAS Guardians' class action claims would somehow

interfere with the administration of the bankruptcy.    This is a particularly hypocritical allegation

because the Public Claimants are themselves creditors with unliquidated, contingent claims.[17]

Here, the facts could not be more clear that the class wide relief would not interfere with the

administration of the bankruptcy because there is no plan.[18]    On this basis alone, the Objections

fail.

32.    In the context of an "interference with the administration of the bankruptcy"

objection, "courts consider whether class certification would delay or interfere with the debtor's

ability to make distributions under a plan." *Verity Health*, 2019 WL 2461688, at *9.

---

[17]    *See In re Chateaugay Corp.*, 104 B.R. 626, 633 (Bankr. S.D.N.Y. 1989):

> Given that § 502(c)(1) specifically provides for the expeditious estimation of unliquidated
> contingent claims such as the class claims made in the case at hand, and bankruptcy courts are
> experienced in this procedure, there is no reason to think that permitting the filing of class claims
> will cause special delay or uncertainty in settling the debtor's estate. Even if this were not so,
> however, any potential marginal increase in delay or in difficulty of valuation of claims would be
> justified in order to protect the right of small claimants (who might not otherwise be aware of the
> existence of or be able to process their claims) to be represented by the filing of a class proof of
> claim. Finally, the right to file class proofs of claim will not impose any significant additional
> burden on the bankruptcy court because it retains discretion to reject proofs of claim filed on behalf
> of a class in appropriate circumstances.

*Chateaugay*, 104 B.R. at 633.

[18]    The threat of apportionment amongst *all* valid creditors is not tantamount to an improper "interference" in the
administration of the bankruptcy.    It is anticipated that "the firm's principal creditors [with the states cast into this
role] do not want to thrust additional hands into the till;" however, that is not a valid basis for opposition. *American
Reserve*, 840 F.2d at 489 n. 2.

33.     For example, in *Musicland*, the court found that the third factor weighed against invoking Rule 23 where the class certification motion was filed *after* the court had begun the confirmation hearing on the plan filed by the debtor.  *Musicland*, 362 B.R. at 656.  The court reasoned that the late introduction of a significant claim (as compared to the value of available funds in the estate as proposed by the plan) would delay the debtor's ability to confirm a plan by creating unforeseen issues as to plan feasibility.  *Id.* at 656-57.

34.     Applying the same logic, the court in *Chaparral Energy* held that class certification would not interfere with the plan because the debtors proceeded with confirmation and consummation of their reorganization plan, notwithstanding an outstanding objection they had filed to the plaintiffs' class proof of claim.  *Chaparral Energy*, 571 B.R. at 648-49.

35.     In this case, delay or interference with the Debtors' ability to make distributions under a reorganization plan are ***impossible*** because "the Debtors have not yet filed a plan."  *See Verity Health*, *supra* (weighing factor three in favor of applying Rule 23 to claims administration process where "plan [had] not yet been filed," which made it "unlikely that class certification [would] adversely affect the administration of the estate").  The Debtors concede that they are still focused on "advancing these Cases and moving this restructuring out of the early stages." *See Motion to Extend Exclusivity Period* [Dkt. No. 1365] at ¶ 10.  In fact, a plan of reorganization is no closer today than it was on the Petition Date, evidenced by the Debtors' request to extend exclusivity through **December 10, 2020**.  *See id.* at ¶ 1.  Indeed, it is not possible for the parties to even analyze whether "class certification will adversely affect the administration of the case" since there is no plan by which the administration of the estate will be governed.

36.     It is clear that, given the multitude of issues and parties in these cases, the drafting of a plan and disclosure statement is going to take many months and that the process has not yet

started.  Given the cases' current posture, it is disingenuous to argue that adjournment would have a negative impact on the administration of these estates.  To the contrary, if the mediation succeeds, then the estates may avoid the considerable effort and expense that will be required to analyze, review, and potentially object to the tens of thousands of claims that will be filed in these matters.

37.      Nevertheless, the Debtors contend that certification of the proposed class would adversely affect the administration of the case through increased cost and undue delay.  With regard to increased cost, the "Debtors' argument misapprehends the focus of the third factor, which is directed toward whether class certification will impair the Debtors' ability to prosecute a plan." *Verity Health*, *supra*.  As noted, that simply is not possible in this case.  *See Id*. (rejecting increased cost argument where plan had not been filed).

38.      As to the alleged "undue" delay, the Debtors miss the point.  The NAS Guardians agree that "any delay caused … must be weighed against the real-life cost of allowing 'ongoing harm . . . suffered by individuals[.]'" [Debtors' Objection at p. 33].  The critical issue, however, which the Debtors do not address in any material way, is that relief for the NAS Children and their caregivers can be achieved *only* through class-wide abatement and that it is needed now, not at some hypothetical future date.  Individual relief is not an option.  Thus, while some delay may be necessary for purposes of certifying the class, that delay is certainly not "undue."  Quite the opposite, it is absolutely necessary to avoid "the real-life cost of allowing 'ongoing harm . . . suffered by [the NAS Children's Abatement Class]."[19]

39.      Debtors additionally argue that permitting class relief will work to the detriment of estate stakeholders because it will hypothetically incentivize "additional groups" to seek

---

[19] For this same reason, the NAS Guardians take issue with the notion that "'the only real beneficiaries of applying Rule 23 would be the lawyers representing the class[.]" [Debtors' Objection at p. 33].

similar relief.  Plaintiffs cannot speak for other parties seeking class treatment, nor can they speak

to the future conduct or intentions of unknown "additional groups."  What is clear, however, is

that the Debtors and their attorneys have known of the NAS Guardians' intent to seek class relief

for months.  *See MF Global*, 512 B.R. at 765 (finding class certification would not adversely

affect the administration of the estate where the class claim was timely filed, and the trustee had

known for months of claimants' intent to pursue class relief).  As such, "any dilution of recoveries

to other unsecured creditors is simply a function of the filing of a claim, not the filing of a class

proof of claim."  *Chaparral Energy*, 571 B.R. at 649.

40.     Furthermore, the increased complexity and cost that the Debtors contend would be

introduced through the "implementation of some type of class notice and opt-out procedures"

simply does not apply to the NAS Children's Abatement Class.  Since Plaintiffs are primarily

seeking injunctive class relief through Rule 23(b)(2), putative class members cannot "opt-out" of

the class, obviating the need for class notice.

41.     Finally, the Debtors' argument is especially egregious given that the Court ordered

all parties to mediation, including the stakeholder NAS Guardians, and the process has been long

and costly.  By seeking to forestall the class at this juncture, the Debtors and the Public Claimants

are trying to gain an unfair advantage in the mediation.

### Additional Factors Favoring Overruling the Objections or Granting an Adjournment

#### *Protecting the Progress Made in the Mediation*

42.     The NAS Guardians have no desire to interrupt the ongoing mediation process,

which has gained momentum of late and which represents, in the estimation of the NAS

Guardians, the best hope for a timely conclusion of this bankruptcy proceeding.  Moreover, as the

Official Committee stated, the Motion was filed solely because of the Bar Date.  No movant

would have filed a motion seeking class treatment of its claims had they not been compelled to in order to preserve the status quo by filing in advance of the Bar Date. Common sense alone counsels against injecting adversarial ancillary litigation into the already complicated mediation process. Put plainly, a ruling on the Motion and the other Class Motions – whatever that ruling might be – will throw the Debtors' cases into chaos. Appeals are certain, as are challenges from all creditor groups to the tens of thousands of claims filed by competing claimants. These issues would take years to fully litigate, and in the process would waste the considerable capital investment made in the mediation, further erode estate value and delay what this Court has stated as its primary goal – to get money to the victims as soon as possible. *See* October 11, 2019 Hr'g Tr. 117:14-117:16 (COURT: "What we're talking about here is flesh and blood. Right? That's what we're talking about. How to prevent the outcome continuing"); June 3, 2020 Hr'g Tr. 95:11-95:15 (COURT: "But if I hear a month or two from now that people cannot set aside their views as to what is the  perfect use for the money that is available here and agree to share on how that is to be used, I will be taking steps to move the case along separately, and it's shame on us if we don't do that. This is flesh and blood").

43.    This Court has repeatedly made clear its desire to move these cases forward with all deliberate speed. *See* June 3, 2020 Hr'g Tr. 94-25-95:1 (COURT: "I want this case to move, and I will make it move if the parties don't start accommodating each other"); *Id*. at 95:8-9 (COURT: "If people cannot see other peoples' points of view and some consensus can be built, we need to move ahead."). The NAS Guardians concur and believe the Debtors' estate funds should be used to prevent future harm and compensate victims of the opioid crises instead of to pay more professional fees, which through May 31, 2020, exceed $150,000,000. These goals can only be met if the mediation process continues. If the mediation proves successful, the need to

litigate the Motion or the other Class Motions will likely be negated.  If the mediation falls apart, the Court and the claimants must start again from square one, adding months or years to the time that will be required to conclude these cases.

*The NAS Children's Abatement Class Satisfies the Fundamental Function of Bankruptcy Law to Determine and Implement in a Single Proceeding the Entitlements of All Concerned*

44.    In addition to the *Musicland* factors, courts also consider "whether 'the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy.'" *Bally Total Fitness*, 402 B.R. at 620 (quoting *Musicland*, 362 B.R. at 651).  In fact, this is the very purpose of the *Musicland* factors.  *See Musicland*, *supra*.

45.    In this case, a relevant goal of bankruptcy, and, in fact, "[t]he principal function of bankruptcy law," "is to determine and implement in a single collective proceeding the entitlements of all concerned." *American Reserve*, 840 F.2d at 489.  Here, relief for the NAS Children and their caregivers can be achieved *only* through class-wide abatement.  As such, class treatment is fundamentally required to "implement in a single collective proceeding the entitlements of all concerned." *American Reserve*, *supra*.  Stated differently, this principal function of bankruptcy law cannot, by definition, be accomplished through individual class proofs of claim.  Indeed, "absent application of Civil Rule 23," the most innocent victims of the opioid crisis "would be prejudiced" as their rights as creditors to the estate would have no chance at being vindicated. *Verity Health*, 2019 WL 2461688, at *9.  Accordingly, the Court should exercise its discretion and permit the Plaintiffs to file their Class Proof of Claim.[20]

---

[20] Tellingly, the parties objecting to the NAS Children's Abatement Class make no effort to address the fact that class-wide relief is the only means by which relief can be effectuated for the NAS Children and their Legal Guardians.

## **CONCLUSION**

46.     It is time to hold the Debtor to its prior promises to deliver relief to American families, including the stakeholder NAS Guardians and the NAS Children, and to inform the competing unliquidated contingent Public Claimants they will not be allowed to use their size and sovereign status to prevent the other creditor groups, including the NAS Guardians, from pursuing their legitimate claims in this bankruptcy proceeding.  The Objections lack merit, and the NAS Guardians should be granted their requested 9014 relief, with a 7023 briefing schedule to follow.

Dated:      July 22, 2020                          Respectfully submitted
            New York, NY


                                                   /s/Scott S. Markowitz
                                                   TARTER KRINSKY & DROGIN LLP
                                                   Scott S. Markowitz
                                                   1350 Broadway, 11th Floor
                                                   New York, NY 10018
                                                   Telephone: 212-216-8000
                                                   Facsimile: 212-216-8001
                                                   Email: smarkowitz@tarterkrinsky.com

                                                   MARTZELL, BICKFORD & CENTOLA
                                                   Scott R. Bickford (LA 1165)
                                                   Spencer R. Doody (LA 27795)
                                                   338 Lafayette Street
                                                   New Orleans, LA 70130
                                                   Telephone: 504-581-9065
                                                   Facsimile: 504-581-7635
                                                   sbickford@mbfirm.com
                                                   srd@mbfirm.com
                                                   usdcndoh@mbfirm.com

                                                   CREADORE LAW FIRM PC
                                                   450 Seventh Avenue, 14th Floor
                                                   New York, NY 10123
                                                   Telephone: 212.355.7200
                                                   Donald Creadore, Esq. (NY 2090702)
                                                   donald@creadorelawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was filed via the

CM/ECF system, which caused service upon all parties on this 22nd day of July, 2020.

*/s/ Scott S. Markowitz*
**SCOTT S. MARKOWITZ**