DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Frances E. Bivens
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OBJECTION TO TIFFANY DUNFORD'S MOTION TO PERMIT THE FILING OF A CLASS PROOF OF CLAIM**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

# TABLE OF CONTENTS

PAGE

Argument ..................................................................................................................................1

I. The Infants Identified on the List Allegedly Maintained by the WVDHHR as Having Been Born with NAS Are Not "Known Creditors" Entitled to Actual Notice of the Bar Date ..............................................................................................................................2

II. This Court Should Not Exercise Its Discretion to Apply Rule 23 to the Movants' Proposed Class Claim .................................................................................................4

    A. The Movant's Putative Class Was Not Certified Prepetition ...............................5

    B. Members of the Movant's Putative Class Received Adequate Notice of the Bar Date ..................................................................................................................6

    C. Certification of the Proposed Class Will Adversely Affect the Administration of These Estates .................................................................................................7

III. The Movant Fails to Satisfy the Requirements of Rule 23 ..................................................8

    A. The Movant's Putative Class Definition Includes Many Claimants That Do Not Have Claims Against Purdue ..............................................................................8

    B. The Movant Does Not Establish the Prerequisites for a "Limited Fund" Class Action Under Rule 23(b)(1) ................................................................................9

    C. The Movant Does Not Satisfy Rule 23(b)(3) .......................................................10

    D. The Movant Cannot Satisfy Rule 23(a) ..............................................................13

Conclusion ...............................................................................................................................14

# TABLE OF AUTHORITIES

<u>CASES</u>

<u>PAGE(S)</u>

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018) ................................................................................................... 9

*Campbell v. Purdue Pharm., L.P.*,
   No. 1:02cv00163 TCM, 2004 WL 5840206 (E.D. Mo. June 25, 2004) ................................ 13

*In re Chaparral Energy, Inc.*,
   571 B.R. 642 (Bankr. D. Del. 2017) ..................................................................................... 5

*Chemetron Corp. v. Jones*,
   72 F.3d 341 (3d Cir. 1995) .................................................................................................. 3

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ................................................................................................ 9

*In re Ephedra Prods. Liab. Litig.*,
   329 B.R. 1 (S.D.N.Y. 2005) ............................................................................................ 4, 13

*Foister v. Purdue Pharm. L.P.*,
   No. 01-268-DCR, 2002 WL 1008608 (E.D. Ky. Feb. 25, 2002) .............................. 11, 13, 14

*Gevedon v. Purdue Pharm.*,
   212 F.R.D. 333 (E.D. Ky. 2002) ......................................................................................... 13

*Harris v. Purdue Pharm., L.P.*,
   218 F.R.D. 590 (S.D. Ohio 2003) ................................................................................. 11, 12

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................ 9

*Mennonite Bd. of Missions v. Adams*,
   462 U.S. 791 (1983) ............................................................................................................ 3

*In re MF Glob., Inc.*,
   512 B.R. 757 (Bankr. S.D.N.Y. 2014) ................................................................................. 5

*In re Motors Liquidation Co.*,
   447 B.R. 150 (Bankr. S.D.N.Y. 2011) ................................................................................. 4

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ........................................................................................................ 2, 3

*In re Musicland Holding Corp.*,
  362 B.R. 644 (Bankr. S.D.N.Y. 2007) ............................................................... 4, 5, 6

*In re Nw. Airlines Corp.*,
  No. 05-17930 (ALG), 2007 WL 2815917 (Bankr. S.D.N.Y. Sept. 26, 2007) ......... 4

*In re Sacred Heart Hosp.*,
  177 B.R. 16 (Bankr. E.D. Pa. 1995) ...................................................................... 4, 5

*Tulsa Prof'l Collection Servs., Inc. v. Pope*,
  485 U.S. 478 (1988) ................................................................................................ 3

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010) ................................................................................. 12

*In re U.S.H. Corp. of New York*,
  223 B.R. 654 (Bankr. S.D.N.Y. 1998) .................................................................... 2

*In re USA Gymnastics*,
  No. 18-09108-RLM-11, 2020 WL 1932340 (Bankr. S.D. Ind. Apr. 20, 2020) ....... 6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................ 9

*Wethington v. Purdue Pharm. LP*,
  218 F.R.D. 577 (S.D. Ohio 2003) ......................................................................... 11

### STATUTES & RULES

Fed. R. Civ. P. 23 ................................................................................................ *passim*
Fed. R. Civ. P. 23(a) ................................................................................................ 13, 14
Fed. R. Civ. P. 23(b)(1) ............................................................................................. 8, 9
Fed. R. Civ. P. 23(b)(3) ........................................................................................... 8, 10
Fed. R. Bankr. P. 2002(a)(7) ......................................................................................... 2
Fed. R. Bankr. P. 7023 ....................................................................................... 6, 9, 12

Purdue Pharma L.P. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, "**Debtors**"), submit this objection ("**Objection**") to the *Motion to Permit the Filing of a Class Proof of Claim* [Dkt. No. 1408] ("**Class Claim Motion**") submitted by Tiffany Dunford as Next Friend of T.N. Dunford ("**Movant**") and respectfully state as follows:

## ARGUMENT

1.  Movant and counsel have filed their thirteenth-hour Class Claim Motion seeking permission to proceed with a class proof of claim on behalf of a putative class of children born in the State of West Virginia on or after October 1, 2016, who have been allegedly identified in a confidential database maintained by the West Virginia Department of Health and Human Resources ("**WVDHHR**") as having been diagnosed with neonatal abstinence syndrome ("**NAS**"). Because they filed the Class Claim Motion *six days after* the last day on which they otherwise would have had to file to be heard at the July 23 omnibus hearing (Second Am. Order Establishing Certain Notice, Case Management, and Administrative Procedures ¶ 19 (Nov. 18, 2019), Dkt. No. 498 ("**Case Management Order**")), Movant and counsel also concurrently moved to shorten notice—a motion to which the Debtors and Public Claimants objected[2] and which remains pending. For the convenience of the Court and to preserve their rights, the Debtors hereby submit this Objection to the Class Claims Motion. In doing so, the Debtors expressly (i) preserve their objection to Movant's motion to shorten notice; and (ii) reserve the right to amend, modify or supplement this Objection and raise any other additional arguments at a later date.

---

[2] (*See* Debtors' Obj. to Mot. to Shorten the Notice Period with Respect to the Mot. to Permit the Filing of a Class Proof of Claim (July 17, 2020), Dkt. No. 1432; Public Claimants' Joinder to Debtors' Obj. to Tiffany Dunford's Mot. To Shorten the Notice Period with Respect to the Mot. To Permit the Filing of a Class Proof of Claim (July 17, 2020), Dkt. No. 1448.)

1

2.      The Movant's Class Claim Motion fails for largely the same reasons set forth in the *Debtors' Omnibus Objection to Motions by Certain Claimants for an Order Allowing Them to Proceed with a Class Proof of Claim and Certifying a Class* (July 16, 2020), Dkt. No. 1421 ("**Debtors' Omnibus Objection**").  The Debtors therefore incorporate the arguments contained in the Debtors' Omnibus Objection as if fully set forth herein and do not intend to retread all or even most of the ground traversed there.  The Debtors will instead focus here on arguments and issues unique to the Class Claim Motion.

I.      **The Infants Identified on the List Allegedly Maintained by the WVDHHR as Having Been Born with NAS Are Not "Known Creditors" Entitled to Actual Notice of the Bar Date**

3.      The Movant contends that infants identified on a list allegedly maintained by the WVDHHR as having been born with NAS—a list, it bears emphasis, that Movant's counsel has been unable to obtain despite self-described diligent efforts (Class Claim Mot. at 4.)—"are known creditors . . . entitled to actual notice of these proceedings." (*Id.* ¶ 1.) The Movant further claims that the Debtors' failure to provide actual notice to these infants "raises significant due process concerns." (*Id.* ¶ 3.) The Movant is wrong.

4.      The Debtors are required to provide claimants with notice of the bar date that, under the facts and circumstances of these chapter 11 cases, is "reasonably calculated to reach all interested parties," in order to inform such claimants of the need to file a proof of claim or risk their claims being barred. *In re U.S.H. Corp. of New York*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)); *see also* Fed. R. Bankr. P. 2002(a)(7). Whether notice is reasonable under the circumstances depends on whether the claimant is "known" or "unknown" to the Debtors. *In re U.S.H. Corp.*, 223 B.R. at 658. Importantly, "actual notice is necessary only as to known creditors while constructive notice

2

is sufficient for unknown creditors." *Id.* "[A] 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (quoting *Tulsa Prof'l Collection Serv. Inc. v. Pope*, 485 U.S. 478, 490 (1988)). A creditor's identity is "reasonably ascertainable," in turn, "if that creditor can be identified through 'reasonably diligent efforts.'" *Id.* (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)). "Reasonable diligence," however, "does not require 'impracticable and extended searches . . . in the name of due process.'" *Id.* (second alteration in original) (citing *Mullane*, 339 U.S. at 317). "The requisite search instead focuses on the debtor's own books and records." *Id.* at 347.

5.  In developing their notice program, the Debtors searched their books and records and "identified all claimants that [were] reasonably ascertainable and therefore, all known claimants." (Debtors' Mot. For Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, & (III) Approving the Form and Manner of Notice Thereof ¶ 14 (Jan. 3, 2020), Dkt. No. 717.) The purported class members were not among the known claimants identified by the Debtors because the "list of NAS infants born in WV since October 2016" is not maintained by the Debtors—it is allegedly maintained by the WVDHHR. (*See* Class Claim Mot. ¶¶ 1-2.)

6.  The Movant cites no case—and there is none—that remotely suggests that individuals identified on a state-maintained list that is confidential under relevant law and to which neither the Debtors nor the Movant have ready access[3] are claimants "known" to the Debtor. To

---

[3] Indeed, the Movant asserts that "West Virginia regulations make access to this data by Movant's counsel extremely difficult . . . ." (Class Claim Mot. at 3.)

3

the contrary, such individuals, to the extent they are claimants at all,[4] are the very definition of "unknown claimants" that will receive sufficient (and certainly constitutionally adequate) publication notice through the Debtors' robust Supplemental Notice Plan, which is one of the most extensive and expensive in history and is designed to reach ninety-five percent of adults in the United States with an average frequency of six times. (Debtors' Omnibus Obj. ¶ 18 (describing Supplemental Notice Plan).)

## II. This Court Should Not Exercise Its Discretion to Apply Rule 23 to the Movant's Proposed Class Claim

7. Although courts in this District have, on occasion, permitted the use of class proofs of claims in certain limited circumstances, the right to file one is far from "absolute." *In re Musicland Holding Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007) (citing *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4-5 (S.D.N.Y. 2005)). To the contrary, courts have repeatedly emphasized that "[c]lass action status is sparingly used in a bankruptcy case." *In re Nw. Airlines Corp.*, No. 05-17930 (ALG), 2007 WL 2815917, at *3 (Bankr. S.D.N.Y. Sept. 26, 2007); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995). The decision to extend the application of Rule 23 to the proof of claim context is, in all events, firmly "committed to the Court's discretion," which in turn "is informed by special considerations applicable in bankruptcy cases that are superimposed on those that apply in any determination under Civil Rule 23." *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011). Accordingly, the Court must **both** determine whether to "exercise its discretion . . . to apply Rule 23 to the proposed class claim" **and** "determine whether the proposed class claim satisfies the requirements of Rule 23 for class

---

[4] The Movant does not state that the infants that suffered NAS who are identified on the list were exposed to an opioid manufactured by Purdue, or even that all or most of the individuals on the list suffered NAS as a result of exposure to opioids more generally.

4

certification." *In re MF Glob. Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); *see also In re Musicland*, 362 B.R. at 650, 654 (finding it unnecessary to determine whether the proposed class satisfied Rule 23 where court declined to exercise its discretion to extend the application of Rule 23 to the proposed class claim).

8.      In determining whether to apply Rule 23 as a threshold matter, courts have coalesced around three factors: (1) whether the class was certified prepetition; (2) whether members of the putative class received notice of the bar date; and (3) whether class certification would adversely affect the administration of the estate. *See In re Musicland*, 362 B.R. at 654. These are commonly referred to as the "*Musicland* factors." Although no one factor is dispositive, *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017), courts have characterized the first two as "critical" because where a class has not been certified prepetition, its purported class members "lack[] [a] reasonable expectation that they d[o] not have to comply with the bar date." *In re Musicland*, 362 B.R. at 654-55 (citations omitted). Moreover, "[i]f the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the . . . class proof of claim device appears advisable." *Id.* at 654 (omission in original) (quoting *In re Sacred Heart Hosp.*, 177 B.R. at 22). Here, all three factors weigh heavily against the Movant.

A.      The Movant's Putative Class Was Not Certified Prepetition

9.      The Movant concedes, as she must, that "almost all of the complaints or claims filed so far by those who would be included in the [c]lass have been brought on an individual basis" and that "no class has been certified." (Class Claim Mot. ¶ 16.) Indeed, no class complaint has been filed on behalf of the putative class in any forum. Because no class has been certified, putative class members have no remotely reasonable expectation that they need not file a proof of

5

claim. *See In re Musicland*, 362 B.R. at 654. Accordingly, this *Musicland* factor weighs heavily against the relief the Movant seeks. Indeed, based on the failure to satisfy this factor alone, the majority of courts have denied the relief requested here. *In re USA Gymnastics*, No. 18-09108-RLM-11, 2020 WL 1932340, at *4 (Bankr. S.D. Ind. Apr. 20, 2020) ("The majority of courts have denied application of Rule 7023 where the class had not been certified pre-petition." (citing *In re Musicland*, 362 B.R. at 656, and collecting cases)).

        B.      <u>Members of the Movant's Putative Class Received Adequate Notice of the Bar Date</u>

10. It is equally obvious that the second *Musicland* factor—whether the putative class has received notice of the bar date—also weighs decidedly against certification here. The Movant's argument to the contrary is largely predicated on the assertion that members of the putative class are "known creditors" entitled to direct notice—an assertion which, as set forth above, is entirely without merit. *See* Part I, *supra*. The case law is clear that publication or constructive notice suffices; direct written notice is not required. (*See* Debtors' Omnibus Obj. ¶ 32 (collecting cases).) That is especially so in the context of these chapter 11 cases, where the Debtors' extraordinary notice program was designed to touch virtually every American an average of six times.[5] (*Id.*)

11. Counsel for the Movant filed a notice of appearance in these chapter 11 cases on behalf of other potential claimants on October 7, 2019, over nine months ago, and has received notice of every action to be taken in these cases since. (*See* Notice of Appearance and Request for Service of Papers by Counsel to Certain Native American Tribes and Other Represented Parties

---

[5] In light of this broad notice, the anecdotal statement of the Movant's counsel that members of the putative class informed counsel that "they had no notice or other knowledge of this pending bankruptcy" (Class Claim Mot. ¶ 1 n.1) rings hollow. Indeed, as set forth in the Debtors' Omnibus Objection, the Debtors' noticing program has a number of NAS-specific components. (Debtors' Omnibus Obj. ¶ 19 & n.8.) To the extent counsel is disappointed with the number of claims filed by members of the putative class, it is exceedingly more likely that such disappointment has been occasioned by factors other than the Debtors' extensive notice program.

(Oct. 7, 2019), Dkt. No. 223.) Counsel has most assuredly been aware of entry of the bar date since February. And counsel has also seemingly been aware for some time of the existence of the confidential data upon which the Class Claim Motion largely rests. (Class Claim Mot. at 4 ("Movant's counsel's efforts to obtain this data have met with regulatory roadblocks and bureaucratic slowdowns caused by the Covid-19 pandemic.").) If counsel had seriously believed that the Debtors' extraordinarily extensive noticing regime was in any way inadequate—and, to be clear, it is not—counsel could have raised the issue with counsel for the Debtors, and, if counsel believed that the Debtors' response was not satisfactory, filed and pressed an objection with the Court. Counsel did not. At a minimum, counsel cannot now collaterally attack the notice program and hopscotch its affirmative decision not to object by filing an unwarranted class certification motion.

        C.    <u>Certification of the Proposed Class Will Adversely Affect the Administration of These Estates</u>

12.    Certification of the Movant's putative class will adversely affect the administration of these estates for the reasons already set forth in the Debtors' Omnibus Objection. (Debtors' Omnibus Obj. ¶¶ 38-40.) The Debtors pause here only to observe that the Movant's untimely motion—filed just eight days before the July 23, 2020 omnibus hearing—is strong evidence of the danger to these estates were the Court to certify this and the other untenable classes. In that event, other movants seeking to file their own dubious class claims would undoubtedly pour out of the woodwork. The attendant costs and distraction to the estates, harm to the public, and disruption of the progress of these cases toward a consensual resolution that would result from emboldening additional purported classes to file class claims would be material—all to the ultimate detriment of estate stakeholders.

7

13. For all of the foregoing reasons, and for those articulated more fully in the Debtors' Omnibus Objection, this Court should decline as a threshold matter the Movant's invitation to extend Rule 23 to this context.

### III. The Movant Fails to Satisfy the Requirements of Rule 23

14. The Movant seeks to certify a class comprised of all children born in West Virginia since October 2016 who have been identified in a state database "as having been diagnosed with Neonatal Abstinence Syndrome." (Class Claim Mot. ¶ 5.) She asserts this class can be certified as both a mandatory "limited fund" class action under Rule 23(b)(1) and an "opt-out" class under Rule 23(b)(3). (*Id.* ¶¶ 41-51.) For many of the same reasons detailed in Debtors' Omnibus Objection and more, Movant has fallen far short of carrying her burden under Rule 23. Indeed, the Movant has failed to attach or refer to any class action complaint detailing the putative class's purported claims, all but dooming her efforts to do so. The Movant's motion should be denied.

    A. <u>The Movant's Putative Class Definition Includes Many Claimants That Do Not Have Claims Against Purdue</u>

15. Although expressing sympathy for any individuals who were harmed by the opioid crisis, this Court has emphasized that viable personal injury claimants—including NAS claimants—must have a demonstrable connection to Purdue:

> [Purdue's bankruptcy and the proof of claims process] is not an invitation to people who generally have claims because of opioids. People should understand, this is claims against these debtors. . . . *[I]t's not an invitation just for anyone who has an opioid problem but has never taken any product by these debtors to file a claim.* It's not that type of public health issue. It is centered on these debtors.

Jan. 24, 2020 Omnibus Hr'g Tr. 64:20–65:02 (emphasis added).

16. Notwithstanding this admonition, the Movant's putative class definition sweeps in all children born in West Virginia since October 2016 who have been identified in a state database "as having been diagnosed with Neonatal Abstinence Syndrome." (Class Claim Mot. ¶ 5.) It does

8

so without regard to whether these children were born to mothers that have "never taken any product by these debtors," and purports to file a claim on their behalf.

17.    This class definition is unworkable because many of putative class members do not even have a claim against Purdue. Under Second Circuit law, "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). Thus, a putative class must "be defined in such a way that anyone within it would have standing," *id.*, including that each putative class member must have experienced an "injury in fact." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[W]hether any given individual was injured (and therefore has a claim) turns on an assessment of the individual facts concerning that person. In such a case, the defendant must be offered the opportunity to challenge each class member's proof that the defendant is liable to that class member." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 55 (1st Cir. 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011)). Such challenges cannot be manageably addressed on a class-wide basis where, as here, the class is defined to include putative class members without reference to whether they had *in utero* exposure to an opioid manufactured by Purdue, and, indeed, without reference to whether they were exposed to an opioid *in utero* at all.[6]

B.    <u>The Movant Does Not Establish the Prerequisites for a "Limited Fund" Class Action Under Rule 23(b)(1)</u>

18.    The Movant's demand for a mandatory "limited fund" class merely repeats verbatim the arguments made by the NAS Guardians. (*Compare* Class Claim Mot. ¶¶ 42-44, *with* NAS Guardians on behalf of the NAS Children's Abatement Class Action Claimants Mot. For Entry of an Order Pursuant to Fed. Bankr. P. 9014 & 7023 Permitting Them to File a Class Proof

---

[6] NAS is a catchall term that applies to symptoms of post-birth withdrawal from any substance that can cause physical dependence in the fetus and newborn, which are not limited to opioids.

9

of Claim & Granting Related Relief, ¶¶ 76-78 (July 9, 2020), Dkt. No. 1362-1 ("**NAS Guardians Motion**").) These arguments are no more effective the second time around. Courts consistently hold that, as a general matter, limited fund classes should not be certified as part of a bankruptcy proceeding. (*See* Debtors' Omnibus Obj. ¶¶ 74-82.) It is no surprise, then, that the Movant has not and cannot establish facts proving that she has satisfied the requirements to certify a limited fund class. (*See id.*) The Movant's motion to certify a mandatory limited fund class action should accordingly be denied.

   C. <u>The Movant Does Not Satisfy Rule 23(b)(3)</u>

   19. The Movant's Rule 23(b)(3) arguments are also largely the same as (and in some instances, word-for-word) the arguments raised by the NAS Guardians. They fail for the same reasons—neither claimant can satisfy Rule 23(b)(3)'s predominance and superiority requirements. (*Compare* Class Claim Mot. ¶¶ 46-48, *with* NAS Guardians Mot. ¶¶ 80-82.)

   20. *First*, common issues do not predominate over claim specific issues. The Movant seeks certification of a personal injury class comprised of all children born in West Virginia since October 2016 who have been identified in a state database as being diagnosed with NAS. (Class Claim Mot. ¶ 5.) The Movant seeks damages arising from the NAS-related personal injuries that each putative class member allegedly experienced as a result of their mothers' use of opioids while pregnant, including "damages for infant treatment of NAS, pain and suffering, and the reasonable certainty of permanent impairment." (*Id*. at 1.)

   21. Although the Movant seeks a state-specific class that is at least more geographically tailored than the nationwide classes sought by the NAS Guardians (as well as the Ratepayers, IPSDs, and Hospitals), this is insufficient to save their claims as their putative personal injury class raises the same host of individual issues concerning each class members' ability to establish

10

fundamental issues such as whether the Debtors' conduct proximately caused their injuries. (*See* Debtors' Omnibus Obj. ¶¶ 60-70.)

22. For each of the approximately 4,000 estimated class members (Class Claim Mot. at 3), this requires that the court conduct a child-by-child inquiry into each mother's addiction, medical, and pregnancy history. (Debtors' Omnibus Obj. ¶ 65.) This analysis will be different for every class member and raise highly individualized issues regarding (i) whether a mother was ever prescribed a prescription opioid manufactured by the Debtors and if so, her doctor's awareness of the risk and exposure to, and reliance on, any of the Debtors' promotional messages; (ii) whether a child's mother used any other prescription opioids or illicit drugs such as heroin or fentanyl during her pregnancy; and (iii) each mother's prenatal health and experiences. As the MDL Court noted when expressing skepticism regarding similar class claims brought by NAS Claimants in the underlying litigation, "[h]ow and when and whose opioids each mother ingested is different for each [] mother. Some of them may have ingested prescription opioids, some may have ingested street drugs, some of them may have started on prescription opioids and gone to street drugs . . . . It's different for each individual mother." Hr'g Tr. 6:19-24, *In re: Nat'l Prescription Opiate Litig.*, 1-17-md-02804 (N.D. Ohio Aug. 7, 2019).

23. These same types of individualized issues prevented analogous marketing-based personal injury classes from being certified against Purdue during an earlier wave of litigation. *See, e.g.*, *Foister v. Purdue Pharma L.P.*, 2002 WL 1008608, at *8 (E.D. Ky. Feb. 26, 2002); *see also Harris v. Purdue Pharma*, 218 F.R.D. 590, 595-97 (S.D. Ohio 2003) ("The Court notes that many courts presiding over similar products liability cases involving prescription drugs have denied similar requests for class certification."); *Wethington v. Purdue Pharma, L.P.,* 218 F.R.D. 577, 588-89 (S.D. Ohio 2003).

11

24. The Movant makes no attempt to address how these individual factual issues that arise from the putative class member's claims can be manageably addressed in a class action. Instead, she argues that common issues predominate because the Debtors engaged in "a single conspiracy relating to the sale and distribution of opioids" and this gives rise to common issues of liability. (*Compare* Class Claim Mot. ¶ 48, *with* NAS Guardians Mot. ¶¶ 81-82, *and* Mot. by Public School Districts for an Order Allowing Them to Proceed with a Class Proof of Claim & Certifying a Class ¶ 50 (June 1, 2020), Dkt. No. 1211, *and* Hospital Claimants' Mot. Pursuant to Fed. Bankr. P. 9014 & 7023 for an Order Making Fed. R. Civ. P. 23 Applicable to These Proceedings, Permitting Them to File a Class Proof of Claim & Granting Related Relief ¶ 53 (July 2, 2020), Dkt. No.1330-1.) But as explained in the Debtors' Omnibus Opposition, the Second Circuit considered and rejected this same argument, finding that even in RICO cases, class members' requirement to establish liability also requires establishing reliance, which "cannot be the subject of general proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133 (2d Cir. 2010); Debtors' Omnibus Obj. ¶ 62.

25. Individual issues concerning reliance are especially prominent here given the role of doctors because "the existence of individual Learned Intermediaries trumps any common marketing issues." *Harris*, 218 F.R.D. at 566. As the *Harris* court reasoned in denying class certification in an analogous personal injury class action against Purdue:

> The Plaintiffs would have to prove first that each of their individual physicians was deceived by Defendants' marketing. More precisely, Plaintiff would have to prove whether the individual physician was deceived as to the efficacy, danger, or proper use of the drug, or any combination of those three things. Next, Plaintiff would need to demonstrate whether the physician, as a result of the deception, improperly prescribed the drug to an individual patient. . . . This entire inquiry is highly individualized.

218 F.R.D. at 596 (S.D. Ohio 2003).

26.     *Second*, proceeding as a class is not superior.  The Movant argues that proceeding as a class is superior to *litigating* each case individually because requiring each class member "to bring a separate cause of action would unnecessarily flood the courts with lawsuits." (Class Claim Mot. ¶ 50.)  This argument ignores the fact that claimants are *not* required to litigate lawsuits individually.  "[The] superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost." *In re Ephedra*, 329 B.R. at 9; *see also* Debtors' Omnibus Obj. ¶¶ 71-73.

D.      The Movant Cannot Satisfy Rule 23(a)

27.     The Movant likewise cannot satisfy any aspect of Rule 23(a)'s requirement to establish (a) commonality; (b) typicality; and (c) adequacy of representation.  The Movant attempts to avoid the pitfalls of the NAS Guardians' nationwide medical monitoring class by advancing exclusively personal injury claims—but to no avail.  As detailed in the Debtors' Omnibus Objection, state and federal courts have consistently refused to certify similar personal injury classes against Purdue on Rule 23(a) grounds.  (Debtors' Omnibus Obj. ¶¶ 49, 90, 94-96.)  The commonality requirement is not met where "issues of reliance, causation, and damages" will turn upon thousands of unique inquiries into dozens of "factors, including, dosage, use and manner of administration of the drug, individual and family medical and psychological histories, level of personal awareness regarding the purported risks and medical reasons for use." *Foister*, 2002 WL 1008608, at *8.  Typicality and adequacy are similarly absent, as these individualized issues "preclude a finding that [the Movant's] claims are typical" or "that they have 'common interests with unnamed members of the class.'" *Campbell v. Purdue Pharma, L.P.*, 2004 WL 5840206, at *9 (E.D. Mo. June 25, 2004) (quoting *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 340 (E.D. Ky. 2002)).  Here, the problem for the Movant is compounded, as each infant-members' claim would

13

implicate the factual circumstances of both mother and child. (Debtors' Omnibus Obj. ¶¶ 64-65.) Given that the Movant's "allegations against [Debtor] are based on a complex course of conduct engaged in over a long period of time," Rule 23(a)'s requirements cannot be met here. *Foister*, 2002 WL 1008608, at *10.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court deny the Class Claim Motion in its entirety.

Dated: July 22, 2020
      New York, New York

*/s/ James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Frances E. Bivens
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy

*Counsel to the Debtors
and Debtors in Possession*