Canada-Wide Class Proceedings

This Agreement relates to the certification of Class Proceedings and approval of their Settlement

| | |
|---|---|
| COLIN MACKAY, STEVEN GROUND, HAROLD GROUND, TIM REID and SABINE REID and DARRELL ROCKWOOD and MARILYN ROCKWOOD<br><br>Plaintiffs<br><br>- and -<br><br>PURDUE PHARMA INC., PURDUE PHARMA L.P., PURDUE PHARMA, THE PURDUE FREDERICK COMPANY, THE PURDUE FREDERICK COMPANY INC., PURDUE FREDERICK INC., and THE P.F. LABORATORIES INC.<br><br>Defendants | PROVINCE OF ONTARIO<br>Ontario<br>Superior Court of Justice<br>Court File No.: 07-CV-343201CP |
| GEORGE BELLEFONTAINE and STEPHEN MACGILLIVRAY<br><br>Plaintiffs<br><br>- and -<br><br>PURDUE FREDERICK INC., PURDUE PHARMA INC., PURDUE PHARMA L.P., PURDUE PHARMA, PURDUE PHARMA COMPANY, THE PURDUE FREDERICK COMPANY, INC., PURDUE PHARMACEUTICALS L.P., P.F. LABORATORIES, INC.<br><br>Defendants | PROVINCE OF NOVA SCOTIA<br><br>Supreme Court of Nova Scotia<br>Hfx No.: 285995 |

| | |
|---|---|
| CLAUDE LAROSE, FRANCOIS MICHAUD and LÉO MICHAUD<br><br>Petitioners<br><br>v.<br><br>PURDUE PHARMA INC., PURDUE FREDERICK INC., PURDUE PHARMA L.P., PURDUE PHARMA, THE PURDUE FREDERICK COMPANY, INC., THE P.F. LABORATORIES INC.<br><br>Respondents | PROVINCE OF QUÉBEC<br>Superior Court of Québec,<br>District of Québec<br>(Class Actions)<br>No.: 200-06-000080-070 |
| BEN MILLER and DEMETRIOS PERDIKARIS<br><br>Plaintiffs<br><br>- and -<br><br>PURDUE PHARMA, PURDUE PHARMA INC., PURDUE FREDERICK INC., THE PURDUE FREDERICK COMPANY, INC. AND PURDUE PHARMA LP<br><br>Defendants | PROVINCE OF SASKATCHEWAN<br>In the Queen's Bench<br>Judicial Centre of Regina<br>Q.B.G. 1073/2012 |
| LAURIE JAYNE NEWTON<br><br>Plaintiff<br><br>- and -<br><br>PURDUE PHARMA, PURDUE PHARMA INC., PURDUE FREDERICK INC., THE PURDUE FREDERICK COMPANY, INC., AND PURDUE PHARMA LP<br><br>Defendants | PROVINCE OF BRITISH COLUMBIA<br>Supreme Court of British Columbia<br>Court File No. 07586 |

| | |
|---|---|
| GARY MELANSON<br><br>Plaintiff<br><br>- and -<br><br>PURDUE FREDERICK INC., PURDUE PHARMA INC., PURDUE PHARMA L.P., PURDUE PHARMA, PURDUE PHARMA COMPANY, THE PURDUE FREDERICK COMPANY, INC., PURDUE PHARMACEUTICALS L.P., P.F.LABORATORIES, INC.,<br><br>Defendants | PROVINCE OF NEW BRUNSWICK<br>Court of Queen's Bench of New Brunswick<br>Trial Division<br>Court File No. W/C/44/09 |
| GEORGE CRITCHLEY<br>Plaintiff<br><br>- and -<br><br>PURDUE FREDERICK INC., PURDUE PHARMA INC., PURDUE PHARMA L.P., PURDUE PHARMA COMPANY, THE PURDUE FREDERICK COMPANY, INC., PURDUE PHARMACEUTICALS L.P., AND P.F. LABORATORIES, INC.,<br><br>Defendants | PROVINCE OF NEWFOUNDLAND AND LABRADOR<br>Supreme Court of Newfoundland and Labrador<br>Trial Division<br>Court File 2009 01T 2102 CP |
| L. ANNETTE STEWART<br>Plaintiff<br><br>- and -<br><br>PURDUE FREDERICK INC., PURDUE PHARMA INC., PURDUE PHARMA L.P., PURDUE PHARMA, PURDUE PHARMA COMPANY, THE PURDUE FREDERICK COMPANY, INC., PURDUE PHARMACEUTICALS L.P., AND P.F. LABORATORIES INC.,<br><br>Defendants | PROVINCE OF PRINCE EDWARD ISLAND<br>Supreme Court of Prince Edward Island (General Section)<br>Court File No. S1-GS 23185 |

| | |
|---|---|
| ADOLPH STAN JUCHACZ<br>Plaintiff<br><br>- and -<br><br>PURDUE PHARMA, PURDUE PHARMA INC.,<br>PURDUE FREDERICK INC., THE PURDUE<br>FREDERICK COMPANY, INC. AND PURDUE<br>PHARMA LP<br><br>Defendants | PROVINCE OF SASKATCHEWAN<br>In the Queen's Bench<br>Judicial Centre of Regina<br>Q.B. No. 1163 of 2008 |
| LINDSAY BLACK<br>Plaintiff<br><br>- and -<br><br>PURDUE PHARMA, PURDUE PHARMA INC.,<br>PURDUE FREDERICK INC., THE PURDUE<br>FREDERICK COMPANY, INC. AND PURDUE<br>PHARMA LP<br><br>Defendants | PROVINCE OF ALBERTA<br>Court of Queen's Bench of Alberta<br>Court File No. 0801-08779 |

**OXYCONTIN® AND OXYNEO® NATIONAL SETTLEMENT AGREEMENT**

## TABLE OF CONTENTS

1.   PREAMBLE & RECITALS ................................................................................. 1

2.   DEFINITIONS ................................................................................................... 3

3.   THE ORDERS APPROVING THIS AGREEMENT ........................................... 13

4.   NOTICE TO THE CLASS ................................................................................ 14

5.   THE SETTLEMENT BENEFITS ..................................................................... 15

6.   DISTRIBUTION OF THE SETTLEMENT PAYMENT ......................................... 17

7.   TERMINATION OF THE AGREEMENT ........................................................... 18

8.   NO REVERSION ...................................... **ERROR! BOOKMARK NOT DEFINED.**

9.   CLASS MEMBERSHIP .................................................................................... 22

10.  OPT OUT PROVISIONS ................................................................................. 22

11.  CLAIMS ADMINISTRATION ............................................................................ 24

12.  SUBMITTING CLAIMS .................................................................................... 25

13.  LIMITATION DEFENCE .................................................................................. 25

14.  AMENDMENTS TO THE SETTLEMENT AGREEMENT .................................... 25

15.  LEGAL FEES AND DISBURSEMENTS ........................................................... 26

16.  EXCLUSIVE REMEDY/EFFECT ON CLAIMS .................................................. 27

17.  MISCELLANEOUS PROVISIONS .................................................................... 29

**OXYCONTIN® AND OXYNEO® NATIONAL SETTLEMENT AGREEMENT**

## 1. PREAMBLE & RECITALS

Tim Reid, on his own behalf, and Sabine Reid, on her own behalf, and in their capacities as the representative plaintiffs in Ontario Court File No. 07-CV-343201CP, Stephen MacGillivray, on his own behalf, and George Bellefontaine, on his own behalf, and in their capacities as the proposed representative plaintiffs in Nova Scotia Court File Hfx. No. 285995, Claude Larose, on his own behalf, Francois Michaud, on his own behalf, and Léo Michaud, on his own behalf, in their capacities as the proposed representative plaintiffs in Québec Court File No. 200-06-000080-070, Demetrios Perdikaris, on his own behalf, and in his capacity as proposed representative plaintiff in Saskatchewan Court File No. 1073/2012 and the defendants, Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company, The Purdue Frederick Company Inc., Purdue Frederick Inc. and The P.F. Laboratories Inc., hereby enter into this National Settlement Agreement ("Settlement Agreement") providing for the settlement of claims arising from, without limitation, the manufacture, marketing, sale, distribution, labelling, prescription and use of OxyContin® and OxyNEO® pursuant to the terms and conditions set forth herein, including those claims brought by Laurie Jayne Newton in her capacity as the proposed representative plaintiff in British Columbia Court File No. 07586, by Gary Melanson in his capacity as the proposed representative plaintiff in New Brunswick Court File No. W/C/44/09, by George Critchley in his capacity as the proposed representative plaintiff in Newfoundland and Labrador Court File No. 2009 01T 2102 CP, by L. Annette Stewart in her capacity as the proposed representative plaintiff in Prince Edward Island Court File No. S1-GS 23185, by Adolph Stan Juchacz in his capacity as the proposed representative plaintiff in Saskatchewan Court File No. 1163/2008, and by Lindsay Black in her capacity as the proposed representative plaintiff in Alberta Court File No. 0801-08779, subject to approval of the courts as set forth herein;

**WHEREAS**, the Parties intend by this Settlement Agreement to resolve all past, present and future claims of Class Members and Family Class Members in any way arising out of or

relating to OxyContin® and OxyNEO® prescribed in Canada and ingested during the Class Period;

**WHEREAS**, on April 15, 2016, the plaintiffs to the Ontario Proceeding and the Defendants obtained an Order from the Ontario Court conditionally certifying the Ontario Proceeding for settlement purposes (the "Certification Order");

**WHEREAS**, the Parties subsequently have agreed to amend the Certification Order to, among other things, modify the certification and settlement approval processes contemplated therein and include all of the proceedings across the country;

**WHEREAS**, the Parties shall seek an Order from the Ontario Court amending the Certification Order and conditionally certifying the Ontario Proceeding for settlement purposes and for the purpose of approving this Settlement Agreement;

**WHEREAS**, the Parties shall seek the remaining Conditional Certification Orders;

**WHEREAS**, the Parties shall seek the Approval Orders;

**WHEREAS**, if the Approval Orders are obtained, the Parties shall seek the Dismissal Orders in the Other Proceedings;

**WHEREAS**, counsel to the Parties have conducted settlement negotiations through multiple mediation sessions spanning the course of several weeks;

**WHEREAS**, the Defendants, notwithstanding their consent to the Conditional Certification Orders, have denied and continue to deny any wrongdoing or liability of any kind;

**WHEREAS**, the Plaintiffs and Class Counsel have concluded that this Settlement Agreement provides substantial benefits to Class Members and Family Class Members and is fair, reasonable and in the best interests of Class Members and Family Class Members based on

an analysis of the facts and applicable law, taking into account the extensive burdens and expense of litigation, including the risks and uncertainties associated with protracted trials and appeals, as well as the fair, cost-effective and assured method provided in this Settlement Agreement of resolving the claims of Class Members and Family Class Members;

**WHEREAS**, the Defendants have similarly concluded that this Settlement Agreement is desirable in order to avoid the time, risk, uncertainty and expense of defending multiple and protracted litigation, and to resolve finally and completely the pending and potential claims of Class Members and Family Class Members;

**NOW THEREFORE**, subject to the Courts' approvals or dismissals, as the case may be, this Settlement Agreement embodies the terms of the resolution of the Proceedings on a Canada-wide basis, including past, present and future claims, against the Defendants and other Released Parties in any way arising out of or relating to OxyContin® and OxyNEO® prescribed in Canada and ingested during the Class Period.

## 2.    DEFINITIONS

Unless a particular section of this Settlement Agreement explicitly provides for another interpretation, the following terms, as used in this Settlement Agreement and its exhibits, shall have the meanings set forth below. Terms used in the singular shall be deemed to include the plural, and *vice versa*, where appropriate. Feminine pronouns and female references shall be deemed to include the masculine, and *vice versa*, where appropriate.

"**Administrative Account**" means the interest bearing trust account with one of the Canadian Schedule 1 banks in Ontario under the control of the Claims Administrator.

"**Alberta Proceeding**" shall mean the Court of Queen's Bench of Alberta action Court File No. 0801-08779 in which Lindsay Black is the plaintiff and Purdue Pharma, Purdue Pharma

Inc., Purdue Frederick Inc., The Purdue Frederick Company, Inc. and Purdue Pharma LP are the defendants.

"**Approval Notice**" shall mean the Courts-approved notice, substantially in the form attached hereto as Exhibit "A", which advises Class Members and Family Class Members of the approval of this Settlement Agreement.

"**Approval Orders**" shall mean the orders of the Courts that approve this Settlement Agreement.

"**Approved Claimants**" shall mean Class Members and Family Class Members who are approved by the Claims Administrator to receive compensation pursuant to this Settlement Agreement.

"**Atlantic Canada Class**" shall mean all persons including their estates, who at any time between January 1, 1996 and February 28, 2017 inclusive were prescribed in Nova Scotia, Newfoundland and Labrador, New Brunswick and/or Prince Edward Island and ingested OxyContin® tablets and/or OxyNEO® tablets, manufactured, marketed and/or sold or otherwise placed into the stream of commerce in Canada by one or more of the Defendants.

"**British Columbia Proceeding**" shall mean the Supreme Court of British Columbia action Court File No. 07586 in which Laurie Jayne Newton is the plaintiff and Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company Inc. and Purdue Frederick Inc., are the defendants.

"**Claim Deadline**" shall mean the date nine (9) months after the date on which the Approval Notice is first published, or such other date as may be approved by the Courts.

"**Claim Form**" shall mean the forms developed by the Claims Administrator, in consultation with Class Counsel that Class Members shall complete in order to file a claim under this Settlement Agreement.

"**Claims Administration Costs**" shall mean all costs, other than Class Counsel Legal Fees, required to implement this Settlement Agreement, including without limitation, costs required to satisfy the notice provisions.

"**Claims Administration Protocol**" shall mean Schedule A to the Compensation Protocol.

"**Claims Administrator**" shall mean the person or entity appointed by the Courts as provided in section 11 of this Settlement Agreement.

"**Class**" and "**Classes**" shall mean the Ontario Class, the Atlantic Canada Class, the Québec Class and the Saskatchewan Class, collectively.

"**Class Counsel**" shall mean the law firms of Rochon Genova LLP, Siskinds LLP, Wagners and Merchant Law Group LLP.

"**Class Counsel Legal Fees**" shall mean all legal fees, disbursements and applicable taxes in respect of all legal services provided by Class Counsel and Consortium Counsel for the benefit of the Class and Family Class, as approved by the Courts.

"**Class Members**" shall mean members of the Class.

"**Class Period**" shall mean January 1, 1996 through to and including February 28, 2017.

"**Compensation Protocol**" shall mean the Courts-approved plan, substantially in the form attached hereto as Exhibit "B", for administering this Settlement Agreement and distributing the Escrow Settlement Payment.

"**Conditional Certification Orders**" shall mean the orders of the Courts, substantially in the forms attached hereto as Exhibits "C", "D", "E", and "F", certifying (and authorizing in Québec) the Principal Proceedings for settlement purposes and for the purposes of approving this Settlement Agreement, notice approval and the commencement of an opt out period.

"**Consortium Counsel**" shall mean the law firms of Ches Crosbie Barristers, Paul J.D. Mullin, Q.C, Crocco Hunter, Siskinds, Desmeules Avocats, s.e.n.c.r.l.;, Docken Klym (now Docken & Company), D'Arcy Deacon LLP, Johnston Franklin (now Johnston Franklin Bishop) and Sutts, Strosberg LLP, collectively.

"**Courts**" shall mean the Ontario Court, the Nova Scotia Court, the Québec Court and the Saskatchewan Court.

"**Defendants**" shall mean those entities named as defendants in the Proceedings including Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company, The Purdue Frederick Company Inc., Purdue Frederick Inc., and The P.F. Laboratories Inc.

"**Defendants' Counsel**" shall mean the law firms of Borden Ladner Gervais LLP, Stikeman Elliott LLP and Barry Glaspell Barrister and Solicitor.

"**Dismissal Orders**" shall mean the orders of the Supreme Court of British Columbia, the Court of Queen's Bench of Alberta, the Supreme Court of Prince Edward Island, the Supreme Court of Newfoundland and Labrador, the Court of Queen's Bench of New Brunswick and the Court of Queen's Bench for Saskatchewan which dismiss and/or discontinue the Other Proceedings brought in those provinces.

"**Effective Date**" shall mean the date on which all of the Approval Orders and Dismissal Orders have become Final Orders.

"**Escrow Account**" means the interest bearing trust account with one of the Canadian Schedule 1 banks in Ontario under the control of the Claims Administrator.

"**Escrow Settlement Payment**" means the Settlement Payment plus any interest accruing thereon after payment of taxes and all Non-Refundable Expenses.

"**Execution Date**" shall mean the date on which this Settlement Agreement has been signed by Class Counsel and Defendants' Counsel, collectively.

"**Family Class**" and "**Family Class Members**" shall mean all persons in Canada who by virtue of personal relationships to Class Members, have claims for damages, including those defined in the Compensation Protocol attached hereto as Exhibit B.

"**Final Order**" means any order contemplated by this Settlement Agreement from which no appeal lies or in respect of which any right of appeal has expired without the initiation of proceedings in respect of that appeal, or proposed appeal such as the delivery of a notice of appeal or application for leave to appeal.

"**Hearing Notice**" shall mean the Courts-approved notice, substantially in the full and abridged forms attached hereto as Exhibits "G" and "H", respectively, which advises putative Class Members and Family Class Members of the hearings in Ontario, Nova Scotia, Québec and Saskatchewan to approve this Settlement Agreement.

"**Hearing Notice Date**" shall mean the date on which the Hearing Notice is first published, which date shall be agreed upon by the Parties, or such other date as may be approved by the Courts.

"**Medical Services**" shall mean medical, paramedical, pharmaceutical and alternative non-medical treatment, nursing care, counselling, social work, hospital and homecare services

provided and to be provided to Class Members relating to their use of OxyContin® and/or OxyNEO®.

"New Brunswick Proceeding" shall mean the Court of Queen's Bench of New Brunswick action Court File No. W/C/44/09 in which Gary Melanson is the plaintiff and Purdue Frederick Inc., Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, Purdue Pharma Company, The Purdue Frederick Company, Inc., Purdue Pharmaceuticals L.P., and P.F.Laboratories, Inc., are the defendants.

"Newfoundland and Labrador Proceeding" shall mean the Supreme Court of Newfoundland and Labrador action Court File No. 2009 01T 2102 CP in which George Critchley is the plaintiff and Purdue Frederick Inc., Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma Company, The Purdue Frederick Company, Inc., Purdue Pharmaceuticals L.P., and P.F. Laboratories, Inc., are the defendants.

"Non-Refundable Expenses" shall mean certain Claims Administration Costs as described in section 5.8 of this Settlement Agreement.

"Notice" means the Hearing Notice and Approval Notice.

"Notice Plan" shall mean the Courts-approved method, substantially as described at Exhibit "I" hereto, by which the Hearing Notice and Approval Notice are disseminated.

"Nova Scotia Court" shall mean the Supreme Court of Nova Scotia.

"Nova Scotia Proceeding" shall mean the Supreme Court of Nova Scotia action Court File Hfx. No. 285995, in which George Bellefontaine and Stephen MacGillivray are the plaintiffs and Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company Inc., Purdue Frederick Inc., and The P.F. Laboratories Inc. are the defendants.

**"Ontario Class"** shall mean all persons including their estates, who at any time between January 1, 1996 and February 28, 2017 inclusive were prescribed in Ontario or British Columbia and ingested OxyContin® tablets and/or OxyNEO® tablets, manufactured, marketed and/or sold or otherwise placed into the stream of commerce in Canada by one or more of the Defendants.

**"Ontario Court"** shall mean the Ontario Superior Court of Justice.

**"Ontario Proceeding"** shall mean the Ontario Superior Court of Justice action Court File No. 07-CV-343201CP, in which Tim Reid and Sabine Reid are the plaintiffs and Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company, The Purdue Frederick Company Inc., Purdue Frederick Inc., and The P.F. Laboratories Inc. are the defendants.

**"Opt Out"** shall mean a person who would have been a Class Member or Family Class Member but for his or her timely and valid request for exclusion pursuant to the process set out in sections 10.1 and 10.2 of this Settlement Agreement.

**"Opt Out Deadline"** shall mean the date sixty (60) days after the Hearing Notice Date, or such other date as may be approved by the Courts.

**"Opt Out Form"** shall mean the form for requesting exclusion from the Proceedings as developed by the Claims Administrator in consultation with Class Counsel, attached hereto as Exhibit J.

**"Opt Out Threshold"** shall mean the number of Opt Outs required to trigger the Defendants' right to elect to terminate this Settlement Agreement as described in section 7.1 and 10.8 of this Settlement Agreement, fixed by way of a supplementary agreement and kept confidential subject to the direction of the Courts.

"**Other Proceedings**" shall mean the British Columbia Proceeding, the New Brunswick Proceeding, the Newfoundland and Labrador Proceeding, the PEI Proceeding, the Saskatchewan Juchacz Proceeding and the Alberta Proceeding.

"**Parties**" shall mean the Plaintiffs and the Defendants.

"**PEI Proceeding**" shall mean the Supreme Court of Prince Edward Island action Court File No. S1-GS 23185 in which L. Annette Stewart is the plaintiff and Purdue Frederick Inc., Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, Purdue Pharma Company, The Purdue Frederick Company, Inc., Purdue Pharmaceuticals L.P., and P.F. Laboratories Inc., are the defendants.

"**Plaintiffs**" shall mean Tim Reid, Sabine Reid, George Bellefontaine, Stephen MacGillivray, Claude Larose, Francois Michaud, Léo Michaud and Demetrios Perdikaris.

"**Principal Proceedings**" shall mean the Ontario Proceeding, the Nova Scotia Proceeding, the Québec Proceeding and the Saskatchewan Proceeding.

"**Proceedings**" shall mean the Principal Proceedings and the Other Proceedings.

"**Provincial Health Insurers**" shall mean all provincial and territorial Ministries of Health or equivalents, provincial and territorial governments, and/or provincial and territorial plans funding Medical Services throughout Canada.

"**Québec Class**" shall mean all persons including their estates, who at any time between January 1, 1996 and February 28, 2017 inclusive were prescribed in Québec and ingested OxyContin® tablets and/or OxyNEO® tablets, manufactured, marketed and/or sold or otherwise placed into the stream of commerce in Canada by one or more of the Defendants.

"**Québec Court**" shall mean the Superior Court of Québec.

"**Québec Proceeding**" shall mean the Superior Court of Québec action Court File No. 200-06-000080-070, in which Claude Larose, Francois Michaud and Léo Michaud are the petitioners and Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company Inc., Purdue Frederick Inc., and The P.F. Laboratories Inc. are the defendants.

"**Released Parties**" shall mean the Defendants as well as their respective predecessors, successors, parents, subsidiaries, affiliates, associated companies and divisions, and each of their respective current and former shareholders, officers, directors, employees, lawyers, attorneys, agents, insurers, trustees, assigns, owners, consultants, suppliers, distributors and partners.

"**Saskatchewan Class**" shall mean all persons including their estates, who at any time between January 1, 1996 and February 28, 2017 inclusive were prescribed in Saskatchewan, Alberta, Manitoba, the Yukon, the Northwest Territories or Nunavut and ingested OxyContin® tablets and/or OxyNEO® tablets, manufactured, marketed and/or sold or otherwise placed into the stream of commerce in Canada by one or more of the Defendants.

"**Saskatchewan Court**" shall mean the Court of Queen's Bench for Saskatchewan.

"**Saskatchewan Proceeding**" shall mean the Court of Queen's Bench for Saskatchewan action Court File No. Q.B.G. 1073/2012, in which Demetrios Perdikaris is the plaintiff and Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company Inc., and Purdue Frederick Inc., are the defendants.

"**Saskatchewan Juchacz Proceeding**" shall mean the Court of Queen's Bench for Saskatchewan action Court File No. Q.B.G. 1163/2008 in which Adolph Stan Juchacz is the plaintiff and Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma, The Purdue Frederick Company Inc., and Purdue Frederick Inc., are the defendants.

"Settled Claims" shall mean any and all claims of Provincial Health Insurers, Class Members and Family Class Members, against the Released Parties, whether or not assigned and whether known or unknown, asserted or unasserted, regardless of the legal theory, existing now or in the future, in any way arising out of or relating directly or indirectly to any of the allegations made or that could have been made in the Proceedings, including and without limitation, claims that relate to the manufacture, distribution, prescription, dispensing, sale, payment, purchase, use, ingestion, clinical investigation, administration, regulatory approval, regulatory compliance, promotion, research, design, development, formulation, marketing,  labelling and product monograph of OxyContin® and OxyNEO®, alone or in combination with any other substance. Such claims include, without limitation, all claims for damages, in equity, or remedies of whatever kind or character, including and without limitation, compensatory, common law, equitable, punitive, aggravated, exemplary, statutory and multiple damages or penalties of any kind, known or unknown, past, present or future, that are now or may be recognized by law, for:

(a) personal injury and/or bodily injury, damage, death, fear of disease or injury, mental or physical pain or suffering, emotional or mental harm or loss of enjoyment of life;

(b) loss of wages, income, benefits, earnings, earning capacity and driver's license;

(c) the cost of Medical Services and of the drugs;

(d) loss of support, services, consortium, companionship, society or affection, or damage to familial relations, by spouses, common-law spouses, parents, grandparents, siblings or children of the Class Members by birth, marriage or adoption;

(e) consumer fraud, refunds, unfair business practices, deceptive trade practices and other similar claims, whether arising under statute, regulation or judicial decision;

- 13 -

(f)    wrongful death and survival actions;

(g)    medical screening and monitoring;

(h)    injunctive and declaratory relief;

(i)    economic or business losses or disgorgement of profits arising out of personal
        injury;

(j)    prejudgment and post-judgment interest; and

(k)    costs, inclusive of legal fees, disbursements and applicable taxes.

"**Settlement Agreement**" shall mean this OxyContin® and OxyNEO® National
Settlement Agreement, inclusive of the recitals and exhibits attached hereto.

"**Settlement Orders**" shall mean the Approval Orders and the Dismissal Orders.

"**Settlement Payment**" shall mean the payment of CAD$20,000,000, inclusive of all
interest, taxes and costs, which shall be used to pay the Non-Refundable Expenses, other costs
of notice and administration, compensation for Approved Claimants, amounts to satisfy the claims
of Provincial Health Insurers and Class Counsel Legal Fees, as described herein.

## 3.    THE ORDERS APPROVING THIS SETTLEMENT AGREEMENT

### The Conditional Certification Orders

**3.1**    The Plaintiffs shall, as soon as is reasonably possible following the Execution Date,
file motions seeking the Conditional Certification Orders.

### The Settlement Orders

**3.2**    The Plaintiffs shall, as soon as is reasonably possible, after the Conditional
Certification Orders have been granted, file motions seeking the Approval Orders.

**3.3**    Once the Courts have granted the Approval Orders, Class Counsel and Consortium Counsel will file motions seeking the Dismissal Orders.

**Consent**

**3.4**    The Defendants shall consent to the Conditional Certification Orders, Approval Orders and Dismissal Orders for the purpose of Canada-wide settlement of the Proceedings and implementation of this Settlement Agreement, without prejudice to the rights of the Defendants to contest or oppose class certification in any of the Proceedings in the event that the Approval Orders and Dismissal Orders are not obtained or this Settlement Agreement is otherwise terminated in accordance with its provisions.

**4.    NOTICE TO THE CLASS**

**The Notices**

**4.1**    The Parties hereby agree to the form, contents and method of dissemination of the Notices, as specified in the draft Conditional Certification Orders and Approval Orders, subject to the Courts' approval of the Notices, which shall be sought by way of the Plaintiffs' motions for the Conditional Certification Orders and Approval Orders.

**Notice of Termination**

**4.2**    If this Settlement Agreement is terminated after the Approval Notice has been published and disseminated, a notice of the termination will be given to the Class and Family Class. Class Counsel or the Claims Administrator, as the case may be, will cause the notice of termination, in a form approved by the Courts, to be published and disseminated as the Courts direct and the costs of so doing shall be paid as a Non-Refundable Expense.

**Cooperation**

- 15 -

**4.3**    The Parties shall cooperate, assist one another and the Claims Administrator and undertake all reasonable actions in order to ensure that the Notices are timely disseminated by the Claims Administrator.

5.    **THE SETTLEMENT BENEFITS**

**Payment by Defendants**

**5.1**    The Defendants shall, no later than thirty (30) business days after the Execution Date, pay $1,000,000 into the Administrative Account, controlled by the Claims Administrator, to be held in trust for the benefit of Class Members, Family Class Members and Provincial Health Insurers.

**5.2**    The Defendants shall, no later than ten (10) business days after the Effective Date, pay $19,000,000, the balance of the Settlement Payment into the Escrow Account, controlled by the Claims Administrator,  to be held in trust for the benefit of Class Members, Family Class Members and Provincial Health Insurers.

**5.3**    The Released Parties shall have no further liability or obligations to Class Members, Family Class Members and Provincial Health Insurers or under this Settlement Agreement.

**The Escrow Account**

**5.4**    Except as provided in sections 5.5 and 5.6 of this Settlement Agreement, all interest earned on the monies in the Administrative Account and in the Escrow Account shall accrue to the benefit of the Class, Family Class and Provincial Health Insurers and shall become and remain part of the Escrow Settlement Payment.

**5.5**    Except as provided in section 5.6 of this Settlement Agreement, all taxes payable on any interest which accrues in relation to the Settlement Payment, shall be the

responsibility of the Class, Family Class and Provincial Health Insurers and shall be paid by Class Counsel or the Claims Administrator, as appropriate, from the Escrow Settlement Payment.

**5.6**    If any portion of the Escrow Settlement Payment is returned to the Defendants pursuant to the provisions of this Settlement Agreement, the taxes payable on the interest portion of the returned amount shall be the responsibility of the Defendants.

**Non-Refundable Expenses**

**5.7**    Expenses reasonably incurred for the following purposes shall be Non-Refundable Expenses, meaning that these expenses shall not be returned to the Defendants in the event that this Settlement Agreement is terminated,   and shall be payable from the Settlement Payment as and when incurred:

(a)    the costs of establishing and operating the Administrative Account and the Escrow Account;

(b)    the costs of translating this Settlement Agreement into French;

(c)    the costs of publishing and distributing the Notices, including the associated professional fees and mailing expenses, as may be applicable;

(d)    the costs of publishing and distributing notice to the Class and Family Class that this Settlement Agreement has been terminated, including the associated professional fees, if applicable; and

(e)    if the Courts appoint the Claims Administrator and this Settlement Agreement is thereafter terminated, the costs reasonably incurred by the Claims Administrator for performing the services required to prepare to implement this Settlement Agreement to a maximum of CAD$50,000.

**5.8**     Any dispute concerning the entitlement to or amount of Non-Refundable Expenses shall be dealt with by way of a motion to the Courts on notice to the Parties.

## 6.     DISTRIBUTION OF THE SETTLEMENT PAYMENT

**Priorities**

**6.1**     On or after the Effective Date, the Claims Administrator shall distribute the remainder of the Escrow Settlement Payment in accordance with the following priorities:

(a)     to pay Class Counsel Legal Fees, as approved by the Courts;

(b)     to pay all of the costs and expenses reasonably and actually incurred in connection with the provision of Approval Notice in accordance with the Notice Plan, locating Class Members and Family Class Members for the purpose of providing them with notice and/or soliciting Class Members to submit Claim Forms. The Released Parties are specifically excluded from eligibility for any payment of notice expenses under this subsection;

(c)     to pay the remaining Claims Administration Costs, including the professional fees of the Claims Administrator. For greater certainty, the Released Parties are specifically excluded from eligibility for any payment under this subsection;

(d)     to pay any taxes required by law to be paid to any governmental authority;

(e)     to pay the claims of the Provincial Health Insurers;

(f)     to pay, *pro rata*, the claims of Approved Claimants; and

(g)     to make any *cy-prés* distribution, if applicable.

**Payments to Provincial Health Insurers**

**6.2**   Payments shall be made from the Escrow Settlement Payment to satisfy the claims of the Provincial Health Insurers. The Claims Administrator shall distribute these funds, less Class Counsel Legal Fees, a proportionate share of disbursements, and applicable taxes, to the Provincial Health Insurers in a manner to be agreed upon by Class Counsel and the Provincial Health Insurers, and approved by the Courts. These payments shall be in full and final satisfaction of Medical Services provided for and to be provided for Class Members, and the Provincial Health Insurers shall have no other claim.

**Payments to Approved Claimants**

**6.3**   The Claims Administrator shall distribute the Escrow Settlement Payment, less the cost of notice, claims administration, payments to Provincial Health Insurers, a proportionate share of disbursements, and Class Counsel Legal Fees and applicable taxes, to Approved Claimants in accordance with the Compensation Protocol.

**7.   TERMINATION OF THE SETTLEMENT AGREEMENT**

**General**

**7.1**   The Defendants shall have the right to terminate this Settlement Agreement in the event that the Opt Out Threshold is exceeded.

**7.2**   The Defendants shall have the right to terminate this Settlement Agreement in the event that:

(a)   orders substantially in the form of the Approval Orders are not granted by the Courts; or

(b)   at least one Approval Order is reversed on appeal and the reversal becomes a Final Order; or

(c)    at least one Dismissal Order is not obtained in the Other Proceedings or is reversed on appeal.

**7.3**    The failure of the Courts to approve in full the request by Class Counsel for the Class Counsel Legal Fees shall not be grounds to terminate this Settlement Agreement.

**Effect of Termination**

**7.4**    In the event this Settlement Agreement is terminated in accordance with its terms:

(a)    it shall be null and void and shall have no force or effect, and the Parties shall not be bound by its terms, except as specifically provided in this Settlement Agreement;

(b)    any and all Conditional Certification Orders and Approval Orders shall be set aside on consent and all of the parties to the Proceedings shall maintain their rights to seek and to oppose, as the case may be, certification of the Proceedings;

(c)    any amounts paid for Non-Refundable Expenses are non-recoverable from the Plaintiffs, Class Members, Family Class Members, Provincial Health Insurers, the Claims Administrator or Class Counsel;

(d)    the Escrow Settlement Payment will be returned to the Defendants in accordance with section 7.7(d) of this Settlement Agreement;

(e)    all statutes of limitation applicable to the claims asserted in the Proceedings shall be deemed to have been tolled during the period beginning with the execution of the Settlement Agreement and ending with the day on which the orders contemplated by section 7.7(c) of this Settlement Agreement are entered;

(f)     all negotiations, statements and proceedings relating to the Settlement Agreement

shall be deemed to be without prejudice to the rights of the Parties, and the Parties

shall be deemed to be restored to their respective positions existing immediately

before the Settlement Agreement was executed.

**Survival**

**7.5**     Notwithstanding section 7.4(a) of this Settlement Agreement, if this Settlement

Agreement is terminated, the provisions of this section and sections 4.2, 4.3, 5.7, 5.8, 7.4

and 7.6-7.9 and the definitions and Schedules applicable thereto of this Settlement

Agreement shall survive termination and shall continue in full force and effect. The

definitions and Schedules shall survive only for the limited purpose of interpreting these

sections of this Settlement Agreement, but for no other purposes.

**Accounting**

**7.6**     If this Settlement Agreement is terminated, Class Counsel shall account to the

Courts and the Parties for all payments made from the Administrative Account and/or the

Escrow Account by no later than ten (10) days after such termination.

**Termination Orders**

**7.7**     If this Settlement Agreement is terminated, Class Counsel shall, within thirty (30)

days after termination, apply to the Courts, on notice to Consortium Counsel and the

Claims Administrator, for an order:

(a)     declaring this Settlement Agreement null and void and of no force or effect except

for the provisions of those sections listed in section 7.5 of this Settlement

Agreement;

(b)     determining whether a notice of termination shall be provided to Class Members
        and Family Class Members and, if so, the form, content and method of
        disseminating such a notice;

(c)     requesting an order setting aside, *nunc pro tunc*, all prior orders or judgments
        entered in the Proceedings in accordance with the terms of this Settlement
        Agreement; and

(d)     authorizing the payment of all funds in the Administrative Account and the Escrow
        Account, including accrued interest, to the Defendants directly or indirectly, as the
        case may be, minus any amounts paid out of the Administrative Account and the
        Escrow Account, in accordance with this Settlement Agreement.

**7.8**     Subject to section 7.9 of this Agreement, the Parties shall consent to the orders
sought in any motion made pursuant to section 7.7 of this Settlement Agreement.

**7.9**     If there is any dispute about the termination of this Settlement Agreement, the
Ontario Court shall determine any dispute by motion on notice to the Parties.

## 8.     NO REVERSION

**8.1**     Unless this Settlement Agreement is terminated as provided herein, the Defendants
shall not, under any circumstances, be entitled to the repayment of any portion of the
Settlement Payment and if then, only to the extent of and in accordance with the terms of
the Settlement Agreement.

- 22 -

**9.     CLASS MEMBERSHIP**

**9.1**     If an individual is a member of two or more of the Classes, that individual may elect
to participate in any of the Principal Proceedings in which he or she is a Class Member,
but all such individuals shall participate in only one of the Principal Proceedings.

**10.     OPT OUT PROVISIONS**

**Opting Out**

**10.1**  Members of the Class and Family Class may exclude themselves from the
Proceedings by exercising their right to opt out pursuant to the relevant provisions of the
Ontario, Nova Scotia, Québec and Saskatchewan class proceedings legislation by
submitting a complete and signed Opt Out Form to the Claims Administrator by regular
first class mail or courier, post-marked or submitted to the courier, or by email or fax as
the case may be, before the Opt Out Deadline.

**10.2**  Residents of Québec must also send the written election to opt-out by pre-paid mail
or courier to the Québec Court at an address to be identified in the Notice. The written
election to opt-out must contain the following information in order to be valid:

(i)      the Class Member's full name, current address and telephone number;

(ii)     a statement to the effect that the Class Member wishes to be excluded from
the Proceedings; and

(iii)    the reason(s) for opting out.

**10.3**  Class Members and Family Class Members who do not opt out shall be bound by
this Settlement Agreement. The Provincial Health Insurers do not have the right to opt out
of this Settlement Agreement.

**10.4**   Class Counsel represent and warrant that they are unaware of any Class Member and/or Family Class Member that has expressed an intention to opt out of the Proceedings.

**10.5**   Class Counsel represent and warrant that they will not encourage or solicit any Class Member and/or Family Class Member to opt out of the Proceedings.

**10.6**   In the event that an Opt Out seeks to retain Class Counsel for any purpose related to the Proceedings, Class Counsel hereby agree to refuse to represent the Opt Out.

**Opt Out Report**

**10.7**   The Claims Administrator shall provide Class Counsel and Defendants' Counsel with a report, advising as to the number of Opt Outs, the reasons for their opting out and details of the Opt Out's individual claim, if known, and a copy of all information provided, including the Opt Out Form, within thirty (30) days of the Opt Out Deadline.

**10.8**   Class Counsel shall be permitted to contact Opt Outs or their counsel for the purpose of obtaining their reasons for opting out of the Proceedings and the particulars of their individual claims.

**Opt Out Threshold**

**10.9**   In the event the Opt Out Threshold is exceeded, the Defendants may terminate the Settlement Agreement by giving notice in writing to Class Counsel of their intent to do so within (30) days of the report referenced in section 10.6 above. The failure to deliver notice in accordance with this section shall be deemed a waiver of the Opt Out Threshold.

**10.10** The Defendants shall maintain their right to waive the Opt Out Threshold.

## 11.    CLAIMS ADMINISTRATION

### Appointment of Claims Administrator

**11.1**    The Parties shall propose a bilingual (French/English) Claims Administrator to be appointed by the Courts.

**11.2**    The Claims Administrator shall be responsible for implementing this Settlement Agreement, including the Courts-approved Notice Plan and Compensation Protocol.

### Confidentiality Obligations

**11.3**    The Claims Administrator and any person employed or retained by the Claims Administrator to assist in administering claims and paying Approved Claimants must sign and observe a confidentiality statement in a form mutually agreeable to the Parties, by which such persons agree to keep confidential any information concerning Class Members and Family Class Members. The Claims Administrator shall institute procedures to ensure that the identity of all Class Members and Family Class Members and all information regarding their claims shall be kept confidential and not be provided to persons except as may be provided in this Settlement Agreement or otherwise required by law.

**11.4**    The Claims Administrator shall preserve, in hard copy or electronic form, as the Claims Administrator deems appropriate, the submissions relating to individual claims for compensation for the period of one (1) year after the last Approved Claimant has been paid and/or after all, if any, appeals have been determined, and at such time, shall dispose of the submissions by shredding or other such means as will render the materials permanently illegible.

**Removal of the Claims Administrator**

**11.5**   The Claims Administrator shall be subject to removal by the Courts, for cause, on motion by any of the Parties.

**Liability of the Claims Administrator**

**11.6**   The Claims Administrator shall not be held liable, absent negligence or fraud, in respect of the implementation and administration of this Settlement Agreement and any related accounting.

## 12.   SUBMITTING CLAIMS

**12.1**   Claims shall be submitted by Class Members and Family Class Members, who do not Opt Out, by the Claim Deadline in the manner contemplated by the Compensation Protocol, or in any other manner approved by the Courts.

## 13.   LIMITATION DEFENCE

**13.1**   Except as provided herein, no Class Member or Family Class Member shall be considered ineligible to receive a payment pursuant to this Settlement Agreement on the basis of any statute of limitation or repose, prescription period or any other limitation or prescription defence.

**13.2**   Nothing in this Settlement Agreement shall constitute or be deemed to constitute a waiver by the Defendants of defences based on statutes of limitation or repose, prescription periods or any other limitation or prescription defence with respect to any Class Member or Family Class Member who Opts Out.

## 14.   AMENDMENTS TO THE SETTLEMENT AGREEMENT

**14.1**   The Parties may amend this Settlement Agreement in writing, by consent.

## 15.   LEGAL FEES AND DISBURSEMENTS

### Fee Approval

**15.1**   Class Counsel shall bring a motion or motions to the Courts for determination of Class Counsel Legal Fees, including the fees of Consortium Counsel, to be paid as a first charge on the Escrow Settlement Payment.

**15.2**   Class Counsel shall not be precluded from making additional motions to the Courts for expenses incurred as a result of implementing the terms of this Settlement Agreement. All amounts awarded on account of Class Counsel Legal Fees shall be paid from the Escrow Settlement Payment.

**15.3**   The Released Parties hereby acknowledge and agree that they are not parties to the motions concerning the approval of Class Counsel Legal Fees, they will have no involvement in the approval process to determine the amount of Class Counsel Legal Fees and they will not take any position or make any submissions to the Courts concerning Class Counsel Legal Fees.

**15.4**   Any order or proceeding relating to Class Counsel Legal Fees, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement or affect or delay the finality of the Settlement Orders and the resolution of the Proceedings provided herein.

**15.5**   The procedure for, and the allowance or disallowance by the Courts of, any requests for Class Counsel Legal Fees to be paid out of the Escrow Settlement Payment are not part of the settlement provided for herein, except as expressly provided in section 6.1 of this Settlement Agreement, and are to be considered by the Courts separately from its consideration of the fairness, reasonableness and adequacy of the settlement provided for herein.

**Individual Claims**

15.6   Class Members and Family Class Members who retain lawyers to assist them in making their individual claims for compensation pursuant to this Settlement Agreement or to appeal the classification or rejection of their claim for compensation, shall be responsible for the legal fees and expenses of such lawyers.

15.7   If a Class Member or Family Class Member retains Class Counsel or Consortium Counsel, or a member law firm thereof, to assist him or her in making his or her individual claim for compensation, Class Counsel and Consortium Counsel hereby agree to cap their fees at fifteen (15) percent of the amount awarded to that Class Member or Family Class Member.

## 16.   EXCLUSIVE REMEDY/EFFECT ON CLAIMS

16.1   This Settlement Agreement shall be the exclusive remedy for the Provincial Health Insurers, and all Class Members and Family Class Members who do not Opt Out.

16.2   On the Effective Date, each Class Member and Family Class Member who does not Opt Out, whether or not he or she submits a claim or otherwise receives compensation, shall be deemed by this Settlement Agreement to have completely and unconditionally released, forever discharged, and acquitted the Released Parties from any and all claims relating to the matters raised or which could have been raised in the Proceedings. Every Settled Claim against the Released Parties shall be conclusively compromised, settled and released. All Class Members and Family Class Members who do not Opt Out, and the Provincial Health Insurers, shall be barred from initiating, asserting or prosecuting any claim, action, litigation, investigation or other proceeding in any court of law or equity, arbitration, tribunal, proceeding, governmental forum, administrative forum or any other forum, directly, representatively, or derivatively, against any person, corporation or entity

- 28 -

(including, without limitation, any regulators, governments, health care providers, health care facilities, pharmacies, or other distributors of OxyContin® or OxyNEO®) which might claim against any of the Released Parties damages and/or contribution and indemnity and/or other relief under the provisions of the *Negligence Act*, R.S.O. 1990, c N.1 or other comparable provincial legislation and any amendments thereto, the common law, in equity, or under any other statute for any relief whatsoever, including relief of a monetary, declaratory or injunctive nature. Exceptionally, it is specifically agreed that the provisions of this Section 16 shall not prevent a Class Member or Family Class Member from initiating, asserting or prosecuting any claim, action (including any subrogated claim or action), litigation, investigation or other proceeding in any court of law or equity, arbitration, tribunal, proceeding, governmental forum, administrative forum or any other forum, directly, representatively, or derivatively, against any OxyContin®- or OxyNEO®- prescribing physician, only with respect to his or her own several liability, and provided that if such Class Member or Family Class Member commences such a several liability action or takes such proceedings, and the Released Parties, or any of them, are added to such action or proceeding in any manner whatsoever (including but not limited to a claim for damages and/or contribution and/or other relief under the provisions of the *Negligence Act* or other comparable provincial legislation and any amendments thereto, the common law, Québec civil law, or any other statute), whether justified in law or not, such Class Member or Family Class Member will immediately request the dismissal of the proceedings and claims against the Released Parties or any of them, and shall indemnify the Released Parties, or any of them, for their substantial indemnity costs incurred in any such proceeding. For greater certainty, in the event that an OxyContin®- or OxyNEO®- prescribing physician adds the Released Parties or any of them to the proceeding, there will be a pleaded severance of liability between the OxyContin®- or OxyNEO®- prescribing physician and the Released Parties or any of them, such that the claim only seeks recovery for the

physician's proportionate share of fault. This Settlement Agreement shall operate conclusively as an estoppel in the event of any claim, action, complaint or proceeding which might be brought in the future by such Class Member or Family Class Member with respect to the matters covered herein. Class Members and Family Class Members covenant that in the event that litigation commenced or continued by a member of the Classes results in a claim over or a judgment against the Released Parties to pay any amount to any person, the member of the Class shall either not collect any amount in respect of the Settled Claims and will hold harmless, defend, reimburse and indemnify the Released Parties for the amount of the claim over or the judgment in respect of the claim, or shall fully indemnify and hold the Released Parties entirely harmless from any and all liability, damages, legal fees, disbursements and costs, with respect to any breach of the foregoing provisions.

**16.3**   In consideration of the Settlement Payment as aforesaid, Class Counsel agrees, on behalf of the Provincial Health Insurers, Class Members and Family Class Members, that any prosecution of a Settled Claim in breach of section 16.2 shall cause irreparable harm to the Defendants and/or Released Parties, in respect of which a stay or injunction is an appropriate remedy. For the same consideration, Class Counsel agrees, on behalf of Class Members and Family Class Members, to cooperate with Defendants and Released Parties in seeking such a stay or injunction.

## 17.   MISCELLANEOUS PROVISIONS

### Ongoing Authority

**17.1**   The Ontario Court, the Nova Scotia Court, the Québec Court and the Saskatchewan Court shall retain exclusive and continuing jurisdiction over the Ontario Proceeding, the Nova Scotia Proceeding, the Québec Proceeding and the Saskatchewan

Proceeding, respectively, for the purpose of supervising the approval, implementation and administration of this Settlement Agreement.

**Recitals**

17.2    The Parties represent and warrant that the recitals referred to in section 1 are accurate and agree that they form part of this Settlement Agreement.

**Entire Agreement**

17.3    This Settlement Agreement, including its recitals and exhibits, constitutes the entire agreement by and among the Parties with regard to the subject matter of this Settlement Agreement and, on the Effective Date, shall supersede any previous agreements and understandings between the Parties with respect to the subject matter of this Settlement Agreement.

**Counterparts**

17.4    This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**Party Notification**

17.5    Any notification, request, instruction or other document to be given by any Party to any other Party to this Settlement Agreement (other than class notification) shall be in writing,

(a)    if to the Defendants, jointly to the attention of Defendants' Counsel: Borden Ladner Gervais LLP, Attention: Cindy Clarke, Bay Adelaide Centre, East Tower 22 Adelaide Street West, Toronto, ON M5H 4E3, Stikeman Elliott LLP, Attention:

David Byers, 5300 Commerce Court West, 199 Bay Street, Toronto, ON M5L 1B9
and Barry Glaspell, 163 Howland Ave, Toronto ON M5R 3B7; and

(b)     if to the Plaintiffs, Class Members or Family Class Members, jointly to the attention
of Class Counsel: Rochon Genova LLP, Attention: Joel Rochon, 121 Richmond
Street West, Suite 900, Toronto, ON, M5H 2K1 and Siskinds LLP, Attention:
Michael Robb, 680 Waterloo Street, P.O. Box. 2520, London, ON, N6A 3V8 and
Wagners, Attention: Raymond Wagner, 1869 Upper Water Street, 3rd Floor
Pontac House, Historic Properties, Halifax, NS, B3J 1S9 and Merchant Law Group
LLP, Attention: Tony Merchant, 100-2401 Saskatchewan Drive, Regina, SK, S4P
4H8, or to other recipients as the Courts may order.

**Class Member and Family Class Member Notification**

**17.6**    All communications from the Claims Administrator to Class Members and Family
Class Members may be made by regular first class mail to such person's last mailing
address provided by such person to the Claims Administrator. Class Members and Family
Class Members shall apprise the Claims Administrator of their current mailing address.

**Governing Law**

**17.7**    For the purpose of the settlement of the Proceedings, this Settlement Agreement
shall be interpreted pursuant to the laws of Ontario.

**Severability**

**17.8**    If any provision of this Settlement Agreement is held to be void or invalid, the same
shall not affect any other provision and the remainder shall be effective as though such
provision had not been contained herein.

**Dates**

**17.9**   Dates referred to in this Settlement Agreement may be altered with the written consent of the Parties and with the approval of the Courts.

**French Translation**

**17.10**  This Settlement Agreement is available in the English language. Nevertheless, if required by the Courts, Class Counsel and/or a translation firm selected by Class Counsel shall prepare a French translation of the Settlement Agreement, the cost of which shall be paid from the Settlement Amount. In case of any ambiguity or dispute about interpretation, the English version is official and shall prevail.

**English Language Clause**

**17.11**  Les parties ont convenu que cette Entente soit rédigée en anglais.

Date:   March 8, 2017

**Joel P. Rochon**
**ROCHON GENOVA LLP**

Date:   March 8, 2017

**Michael G. Robb**
**SISKINDS LLP**

- 33 -

Date:   March 8, 2017

_____

Raymond F. Wagner, Q.C.
WAGNERS

Date:   March 8, 2017

_____

Tony Merchant, Q.C.
MERCHANT LAW GROUP LLP

Class Counsel

Date:   March 8, 2017

_____

Cindy Clarke
BORDEN LADNER GERVAIS LLP

Lawyers for the Defendants, Purdue Pharma,
Purdue Pharma Inc. and Purdue Frederick Inc.

Date:   March 8, 2017

_____

Barry Glaspell

Lawyers for the Defendants, Purdue Pharma,
Purdue Pharma Inc. and Purdue Frederick Inc.

- 33 -

Date:   March 8, 2017

_____

Raymond F. Wagner, Q.C.
WAGNERS

Date:   March 8, 2017

_____

Tony Merchant, Q.C.
MERCHANT LAW GROUP LLP

Class Counsel

Date:   March 8, 2017

_____

Cindy Clarke
BORDEN LADNER GERVAIS LLP

Lawyers for the Defendants, Purdue Pharma,
Purdue Pharma Inc. and Purdue Frederick Inc.

Date:   March 8, 2017

_____

Barry Glaspell

Lawyers for the Defendants, Purdue Pharma,
Purdue Pharma Inc. and Purdue Frederick Inc.

- 33 -

Date:   March 8, 2017

_____

Raymond F. Wagner, Q.C.
**WAGNERS**


Date:   March 8, 2017

_____

**Tony Merchant, Q.C.**
**MERCHANT LAW GROUP LLP**

Class Counsel


Date:   March 8, 2017

_____

**Cindy Clarke**
**BORDEN LADNER GERVAIS LLP**

Lawyers for the Defendants, Purdue Pharma,
Purdue Pharma Inc. and Purdue Frederick Inc.


Date:   March 8, 2017

_____

**Barry Glaspell**

Lawyers for the Defendants, Purdue Pharma,
Purdue Pharma Inc. and Purdue Frederick Inc.

- 34 -

Date:   March 8, 2017

David Byers
**STIKEMAN ELLIOTT LLP**

Lawyers for the Defendants, Purdue Pharma
L.P, The Purdue Frederick Company Inc., and
P.F. Laboratories, Inc.

## EXHIBIT "A"

**NOTICE OF SETTLEMENT APPROVAL IN**

**CANADIAN OXYCONTIN® AND OXYNEO® LITIGATION**

### PLEASE READ CAREFULLY. IGNORING THIS NOTICE WILL AFFECT YOUR LEGAL RIGHTS

**NOTICE OF SETTLEMENT APPROVAL**

A Canada-wide settlement has been reached in several proposed class actions relating to the prescription drugs OxyContin® and OxyNEO®. These lawsuits ("the Proceedings") raised various allegations against the Defendants and sought damages on behalf of Canadians for harm and injuries which were allegedly related to the use of OxyContin® and OxyNEO®. The Defendants deny the allegations made in the lawsuits, make no admission as to the truth of these allegations and deny any wrongdoing.

This Notice advises you that, following publication of a notice program, hearings were held in the supervising Courts in Ontario, Québec, Nova Scotia and Saskatchewan on **DATES, 2017**, respectively ("the Settlement Approval Hearings"). The Courts each issued orders ("the Approval Orders") approving the National Settlement Agreement (the "Settlement") as being fair, reasonable and in the best interest of Class Members. The approved Settlement therefore settles all litigation in Canada relating to OxyContin® and OxyNEO®. The Approval Orders can be reviewed at the settlement website: www.XX.

**WHO IS INCLUDED?**

The Settlement applies to all persons in Canada, including their estates and provincial health insurers, who at any time between January 1, 1996 and February 28, 2017 inclusive, were prescribed in Canada and ingested OxyContin® tablets and/or OxyNEO® tablets, manufactured, marketed and/or sold or otherwise placed into the stream of commerce in Canada by one or more of the Defendants (the "Class" or "Class Members"), as well as all persons in Canada who by virtue of personal relationships to Class Members have statutory derivative claims for damages (the "Family Class" or "Family Class Members"). The Class has been sub-divided by region, as follows:

**Ontario Class:** Class Members whose prescription occurred in Ontario and/or British Columbia;

**Québec Class:** Class Members whose prescription occurred in Québec;

**Atlantic Canada Class:** Class Members whose prescription occurred in Nova Scotia, Newfoundland and Labrador, New Brunswick and/or Prince Edward Island; and

**Saskatchewan Class:** Class Members whose prescription occurred in Saskatchewan, Alberta, Manitoba, the Yukon, the Northwest Territories and/or Nunavut.

**TERMS OF THE SETTLEMENT AGREEMENT**

The Settlement provides for the creation of a $20 million (CDN) Settlement Payment which will be used to pay the claims of provincial health insurers, the costs of settlement notice and administration, compensation for Approved Claimants, and Class Counsel Legal Fees. Payments to Approved Claimants will be made to Class Members who show that they suffered one or more of the injuries described in greater detail in the Compensation Protocol, which are all subject to various eligibility criteria and maximum payment values. Not all Class Members will be eligible for compensation.

The types of injuries that may qualify Class Members for compensation include fatal and non-fatal overdose, addiction and various life complications arising from dependency alleged to be associated with OxyContin® and/or OxyNEO® usage. Compensation will also be paid to eligible Family Class Members. For more information on the eligibility criteria, you can review the Compensation Protocol and the Claims Administration Protocol which are posted on the settlement website: www.XX.

**PARTICIPATING IN THE SETTLEMENT**

To be entitled to a payment pursuant to the Settlement, a Class Member must file a claim with the Claims Administrator on or before the Claims Deadline of **DATE, 2017**. A detailed instruction package on how to file a claim, along with a downloadable version of the Claim Form is currently available online at the settlement website at www.XX or you may request a Claim Form from the Claims Administrator by telephone or in writing at the address noted below. Class Members are invited to contact Class Counsel at the coordinates below to receive assistance completing claim documentation. **TO BE ELIGIBLE FOR ANY COMPENSATION, CLASS MEMBERS MUST SUBMIT THEIR CLAIM DOCUMENTATION TO THE CLAIMS ADMINISTRATOR BEFORE THE EXPIRY OF THE CLAIM PERIOD ON DATE, 2017.**

If, for any reason, this deadline is extended, any such extension and new deadline will be posted at the settlement website: www.XXX

### WHO REPRESENTS ME?

Canada Class Counsel in the Proceedings are:

| Rochon Genova LLP | Siskinds LLP | Wagners | Merchant Law Group LLP |
|---|---|---|---|
| 900-121 Richmond St W. Toronto, ON M5H 2K1 | 680 Waterloo St. London, ON N6A 3V8 | 1869 Upper Water St. Halifax, NS B3J 1S9 | 2401 Saskatchewan Dr. Regina, SK S4P 4H8 |
| | Michael G. Robb | Raymond F. | |
| Joel P. Rochon | Tel: 877-672-2121 | Wagner | Tony Merchant |
| Tel: 416-363-1867 | | Tel: 902-425-7330 | Tel: 888-567-7777 |

**LEGAL FEES**

Class Counsel's legal fees, disbursements and applicable taxes will be paid out of the Settlement. At the Approval Hearings, Class Counsel requested and received the Courts' approval for payment of their fees and disbursements and applicable taxes in the amount of $XX.

Class Members may retain their own lawyers to assist them in making individual claims under the Settlement and will be responsible for any fees charged by such lawyers.

**FOR MORE INFORMATION:**

The Courts have appointed RicePoint Administration Inc. as the Claims Administrator for the Settlement. Settlement documents, including a downloadable version of the Claim Form are available at www.XXX . Class Members can also contact the Claims Administrator by telephone toll-free at 1-866-432-5534.

If you have questions about the Settlement and/or would like to obtain more information and/or copies of the Settlement and related documents, please visit the settlement website at www.XXX or contact the Claims Administrator at:

RicePoint Administration Inc.
1480 Richmond Street, Suite 204
London, Ontario, Canada, N6G 0J4
Email: support@ricepoint.com
Toll Free: 1 (866) 432-5534

This Notice contains a summary of some of the terms of the Settlement. If there is a conflict between this Notice and the Settlement, the terms of the Settlement shall prevail.

*This Notice has been approved by the Ontario Superior Court of Justice, the Superior Court of Québec, the Supreme Court of Nova Scotia and the Court of Queen's Bench for Saskatchewan*

## EXHIBIT "B"

**Compensation Protocol for Claims Submitted Pursuant to the OxyContin® and OxyNEO®
National Settlement Agreement**

**("Compensation Protocol")**

1.    Class Member Claims

A Class Member[1] who first consumed OxyContin® or OxyNEO® pursuant to a prescription written for the Class Member by a health care provider, which may be evidenced by the Class Member's medical records, pharmacy records, and/or records created by a public health insurer or social assistance payor (a "Valid Prescription") and subsequently suffered one or more alleged OxyContin®- and/or OxyNEO®-related injuries (an "Injury" or "Injuries") may file a claim to receive compensation from the Settlement Payment. Class Members who consumed OxyContin® or OxyNEO® before first being issued a Valid Prescription are not entitled to receive compensation from the Settlement Payment.

Except where otherwise indicated, all Injuries must be proven by way of medical and/or other reliable documentary evidence, including, where appropriate, affidavit evidence explaining the initial circumstances of addiction to OxyContin® or OxyNEO® and details of prior and subsequent addiction related injuries and events, including adverse events. The evidence that shall be used to prove each level of Injury is described in greater detail in section 4 of the Claims Administration Protocol (attached at Schedule "A").

"Addiction", where applicable, shall be established through medical records that diagnose or indicate a suspected addiction to or psychological dependence on OxyContin® or OxyNEO®, or through medical records that document two or more characteristics of Opioid Use Disorder as defined in the DSM-V. "Period of Addiction" shall begin with the point in time on which the Class Member's Addiction is established (through the means outlined above) and end with the point in time on which the Class Member ceased to experience symptoms of Addiction or on February 28, 2017, whichever is earlier.

Approved Claimants will receive benefits in proportion to the cumulative points they are awarded under this Compensation Protocol.

| LEVEL | INJURY | POINTS |
|-------|--------|--------|
| 1 | Fatal overdose caused or contributed to by OxyContin® and/or OxyNEO® consumption, or suicide by other means during the Period of Addiction | 500 points |
| 2 | Non-fatal overdose during the Period of Addiction, which includes a documented suicide | 150 points |

---

1 Unless otherwise indicated or required by context, capitalized terms in this Compensation Protocol have the meanings assigned to them in the OxyContin® and OxyNEO® National Settlement Agreement (the " Settlement Agreement").

| | attempt, caused or contributed to by OxyContin® and/or OxyNEO® consumption | Add 75 points for each subsequent, discrete suicide attempt to a maximum of 300 points |
|---|---|---|
| 3 | Documented suicide attempt during the Period of Addiction by means other than OxyContin® or OxyNEO® consumption | 100 points <br><br> Add 75 points for each subsequent, discrete suicide attempt to a maximum of 300 points |
| 4 | Participation in a treatment program for OxyContin® and/or OxyNEO® Addiction | 100 points <br><br> Add 50 points for each subsequent, discrete treatment program for Addiction; add 75 points if treatment involved methadone or similar treatments for a period of 6 months or longer, to a combined maximum of 275 points |
| 5 | Loss of employment for a period of 6 consecutive months or longer during the Period of Addiction | Annual income ($) at time of loss of employment: <br><br> 100,000 or greater = 100 points <br><br> 80,000 to 99,999 = 80 points <br><br> 60,000 to 79,999 = 60 points <br><br> 40,000 to 59,999 = 40 points <br><br> 20,000 to 39,999 = 20 points <br><br> Less than 20,000 = 10 points <br><br> Add the applicable number of points for each additional 6 month period of unemployment to a maximum of 200 points |
| 6 | Loss of professional license during the Period of Addiction | 100 points |

| 7 | Loss of custody of child(ren) during the Period of Addiction | 100 points<br><br>This is a fixed allocation and is not dependent on number of children |
|---|---|---|
| 8 | Criminal conviction related to OxyContin® or OxyNEO® during the Period of Addiction | 100 points<br><br>This is a fixed allocation and is not dependent on number of convictions |
| 9 | Separation and/or divorce from spouse or common law spouse during the Period of Addiction | 75 points<br><br>This is a fixed allocation and is not dependent on the number of separations and/or divorces |
| 10 | Criminal charge related to OxyContin® or OxyNEO® during the Period of Addiction that did not result in conviction | 50 points |
| 11 | Bankrupt during the Period of Addiction | 50 points |
| 12 | Evicted from or otherwise lost possession of principal residence during the Period of Addiction | 50 points |
| 13 | Homeless for greater than one week (7 days) during the Period of Addiction | 25 points for each week homeless to a maximum of 100 points |
| 14 | Interruption in post-secondary education during the Period of Addiction | 10 points per semester to maximum of 50 points |

| | | The Approved Claimant must have been enrolled for the semester and completed 60% or less of the registered courses |
|---|---|---|
| 15 | Length of Period of Addiction | 5 points for each month of Addiction to a maximum of 180 points |
| 16 | Discretionary points: The Claims Administrator may in its discretion award points for substantiated circumstances evidencing hardship that are not otherwise provided for in this Compensation Protocol | Up to 100 points |
| **REDUCTIONS** | | |
| A | Addiction to an opioid other than OxyContin® and/or OxyNEO® during the Period of Addiction | Reduce points cumulatively allocated pursuant to Levels 1 through 16 by 25% |
| B | History of addiction and/or substance abuse | Reduce points cumulatively allocated pursuant to Levels 1 through 16, after applying any reduction under Level A if applicable, by:<br><br>0% if previous addiction or abuse occurred more than 3 years before the Approved Claimant was first prescribed OxyContin® or OxyNEO®<br><br>25% if previous addiction or abuse occurred less than 3 years but more than 2 years before the Approved Claimant was first prescribed OxyContin® or OxyNEO®<br><br>50% if previous addiction or abuse occurred less than 2 years but more than 1 year before the Approved Claimant was first prescribed OxyContin® or OxyNEO® |

| | | 100% if previous addiction or abuse occurred less than 1 year before the Approved Claimant was first prescribed OxyContin® or OxyNEO® |
|---|---|---|
| C | OxyContin® was first prescribed to Approved Claimant after February 28, 2012 or Approved Claimant was prescribed OxyNEO® and had not previously been prescribed OxyContin® | Reduce points cumulatively allocated pursuant to Levels 1 through 16, after applying any reductions under Levels A and B if applicable, by 90% |

## 2.    Family Class Member Claims

"Family Class" has the definition assigned to it in the Settlement Agreement and, for greater certainty, includes the spouses, common law spouses, children, grandchildren, parents, brothers, and sisters of Class Members at the time of the Injury or Injuries.

Only Family Class Members of Approved Claimants are eligible to receive compensation from the Settlement Payment.

A child (including an adoptive child), spouse, or common law spouse, of an Approved Claimant, or a parent of an Approved Claimant if the Approved Claimant was a minor (under 18 years of age) during all or part of his or her Period of Addiction, shall receive 10% of the amount awarded to the related Approved Claimant.

All other Family Class Members shall receive 2% of the amount awarded to the related Approved Claimant.

In the event that the cumulative claims of an Approved Claimant's related Family Class Members exceeds 25% of the amount awarded to the Approved Claimant, the total compensation paid to the related Family Class Members shall be capped at 25% of the amount awarded to the Approved Claimant and distributed on a *pro-rata* basis.

## 3.    *Cy-près* Distribution

In the event that less than $100,000 remains in the Escrow Account (whether by reason of tax refunds, uncashed cheques or otherwise) after 120 days from the date of distribution of the Escrow Settlement Payment to the Approved Claimants and Family Class Members, the Claims Administrator shall donate such monies to an education fund related to opioid treatment and addiction, or other such recipient(s) as may be approved by the Courts, *cy-près*. *The Act Respecting the Fonds d'aide aux actions collectives, CQLR c F-3.2.0.1.1* will apply to the portion of any remaining balance, if any, attributable to Quebec Class Members.

## SCHEDULE "A"

**Claims Administration Protocol for Claims Submitted Pursuant to the OxyContin® and OxyNEO®
National Settlement Agreement**

**("Claims Administration Protocol")**

Administration of the Settlement Agreement[2] and the submission, processing, approval, compensation, and appeal of individual claims made pursuant to the Settlement Agreement shall be governed by this Claims Administration Protocol. This Claims Administration Protocol shall be implemented by the Claims Administrator, subject to the ongoing authority and supervision of the Courts.

### 1. Purpose of the Claims Administration Protocol

The purpose of this Claims Administration Protocol is to provide further guidance to the Claims Administrator to help ensure that:

a) only Approved Claimants and not unapproved claimants will receive compensation from the Settlement Payment;

b) similarly situated Approved Claimants will be treated as uniformly as possible; and

c) Approved Claimants will receive timely compensation in a way that minimizes, to the extent reasonably possible, the Claims Administration Costs and other transaction costs associated with implementation and administration of the Settlement Agreement.

### 2. Reporting Obligations of the Claims Administrator

The Claims Administrator shall provide written, quarterly reports to the Courts, Class Counsel, and Defendants' Counsel on the distribution of the Settlement Payment and monies remaining in trust.

### 3. Claim Form and Claim Deadline

The status of a Class Member as an Approved Claimant requires, in addition to the requirements set forth in the Settlement Agreement and Compensation Protocol, that the Class Member properly complete, execute and submit the claim form developed by the Claims Administrator in consultation with Class Counsel (the "Claim Form") to the Claims Administrator by the Claim Deadline. The Claims Administrator may develop such other forms as it deems necessary for the implementation and administration of the Settlement Agreement in accordance with the purpose of this Claims Administration Protocol.

Claims that are not properly and timely submitted to the Claims Administrator by the Claim Deadline will be denied by the Claims Administrator.

### 4. Evidence Required for Proof of Injury

This section lists the information and documentation (the "Evidence") that must be provided as sufficient proof of each level of "Injury" (as that term is defined in the Compensation Protocol).

---

2 Unless otherwise indicated or required by context, capitalized terms in this Claims Administration Protocol have the meanings assigned to them in the Settlement Agreement.

- 42 -

### a) Mandatory Evidence

For any and all claims for Injury compensation and for the purposes of proving the length of his or her Period of Addiction, a Class Member must:

a)  submit proof of a Valid Prescription (as that term is defined in the Compensation Protocol);

b)  submit a copy of his or her medical and pharmacy records for the three years before he or she was first prescribed OxyContin® or OxyNEO® through to the end of the Period of Addiction (the "Material Time"). In the event that some or all of these records are unavailable, a Class Member must submit an affidavit sworn or affirmed by the Class Member that describes his or her use of OxyContin® and/or OxyNEO® for the timeframe that is not supported by records and that contains, as exhibits, true copies of the records requests that were made and the responses received by the Class Member; and

c)  must otherwise disclose, by way of an affidavit sworn or affirmed by the Class Member, any and all addictions and/or substance abuse problems, other than his or her Addiction (as that term is defined in the Compensation Protocol), that he or she suffered during the Material Time. If the Class Member suffered no such addiction and/or substance abuse problems during the Material Time, he or she must submit a sworn or affirmed affidavit to this effect.

### b) Optional Evidence

In addition, to prove the following specific Injuries, a Class Member must submit the following Evidence:

a)  For Level 1 Injury, a Class Member must submit a government-issued Medical Certificate of Death;

b)  For Level 2 Injury, a Class Member must submit medical records from the Class Member's treating physician and/or hospital records that detail the overdose(s) and/or attempted suicide(s);

c)  For Level 3 Injury, a Class Member must submit medical records from the Class Member's treating physician and/or hospital records that detail the attempted suicide(s);

d)  For Level 4 Injury, a Class Member must submit medical records and/or records from the treatment centre/program supporting the Class Member's participation. To be eligible to receive added points for methadone use, a Class Member must submit records from the treatment centre/program that indicate that methadone was prescribed for a period of 6 months or longer;

e)  For Level 5 Injury, a Class Member must swear or affirm and submit an affidavit specifying that his or her loss of employment was mainly due to OxyContin® and/or OxyNEO® Addiction, and must submit documentation that shows his or her termination from employment and income at the time of termination (for example: records of employment, pay stubs, tax returns, notices of assessment, and/or contracts). If requested, a release for the Class Member's complete employment file shall be executed in a form provided for by the Claims Administrator;

f) For Level 6 Injury, a Class Member must submit records from the body that governs the Class Member's profession that indicate the loss of professional license;

g) For Level 7 Injury, a Class Member must submit a Custody Order and/or other court Order and/or other records in the court file that provide for custody of the Class Member's children and/or an affidavit sworn or affirmed by a close friend or family member of the Class Member that provides specific detail as to the circumstances surrounding the loss of custody and an explanation for why the affiant has knowledge of those details;

h) For a Level 8 Injury, a Class Member must submit a Certificate of Conviction signed by the clerk of the court in which the conviction was made as well as the corresponding pre-sentencing report. These records must clearly indicate that the conviction was related to the Class Member's Addiction. If this relationship is not evident from these records, the Class Member must submit a statement from his or her lawyer and/or parole officer and/or social worker that clearly indicates that the conviction was related to the Class Member's Addiction;

i) For Level 9 Injury, a Class Member must submit a Separation Agreement and/or Divorce Certificate and/or other records in the court file and/or an affidavit sworn or affirmed by a close friend or family member of the Class Member that provides specific detail as to the circumstances surrounding the separation and/or divorce and an explanation for why the affiant has knowledge of those details;

j) For Level 10 Injury, a Class Member must submit law enforcement and/or police records that document the charge and that clearly indicate that the charge was related to the Class Member's Addiction. If this relationship is not evident from these records, the Class Member must submit a statement from his or her lawyer and/or healthcare provider and/or social worker that clearly indicates that the charge was related to the Class Member's Addiction;

k) For Level 11 Injury, a Class Member must submit his or her bankruptcy documentation;

l) For Level 12 Injury, a Class Member must submit the real estate documentation and/or eviction notice(s) that demonstrates the loss. If such documentation and/or notice is not available, then a Class Member must submit a sworn or affirmed affidavit that describes the circumstances surrounding the eviction or loss of residence plus a supporting affidavit sworn or affirmed by a person familiar with those circumstances.

m) For Level 13 Injury, a Class Member must submit homeless shelter records and/or a statement by a social worker or healthcare provider that describes the Class Member's experience with and conditions of homelessness and the length of time that the Class Member was homeless. If such documentation cannot be obtained, then a Class Member must submit a sworn or affirmed affidavit that describes the circumstances surrounding his or her homelessness plus a supporting affidavit sworn or affirmed by a person familiar with those circumstances; and

- 44 -

n) For Level 14 Injury, a Class Member must submit his or her transcript(s) that shows the interruption(s).

The Class Member shall obtain and shall bear the cost of obtaining and submitting to the Claims Administrator copies of his or her Evidence.

### 5. Claims Processing Guidelines

If, during claims processing, the Claims Administrator finds that technical deficiencies exist in a Class Member's Claim Form or Evidence, the Claims Administrator shall notify the Class Member, by way of letter sent through first class regular mail, of the technical deficiencies and shall allow the Class Member 60 days from the date of mailing to correct the deficiencies. If the deficiencies are not corrected within the 60 day period, the Claims Administrator shall reject the claim and the Class Member shall have no further opportunity to correct the deficiencies. "Technical deficiencies" shall not include missing the Claim Deadline or failure to provide sufficient Evidence to support the Class Member's claim.

### 6. Claimant Notification and Claim Appeals
#### a)   Notification

The Claims Administrator shall notify each Class Member by way of a letter sent through first class regular mail as to the approval or rejection of his or her claim and the points awarded to the Class Member.

#### b)   Appeals

Class Members will be granted a 30 day period from the date of mailing to appeal the rejection and/or classification of their claims. Appeals will be made in writing, supported only by the documentation provided to the Claims Administrator. A cheque deposit of $100 must be filed with the Class Member's appeal. If the appeal is successful, the $100 deposit will be refunded. If the appeal is unsuccessful, the $100 deposit will be forfeited by the Class Member and deposited into the Escrow Account.

Appeals will be determined by an independent referee appointed by Class Counsel and approved by the Court. Decisions made by the referee will be final and binding and shall not be the subject of any further appeal.

### 7. Family Class Member Claims
#### a)   Derivative Claim Form and Proof of Claim

A Family Class Member must complete and timely submit the derivative claim form (the "Derivative Claim Form") on or before the Claim Deadline in order to be eligible for compensation from the Settlement Payment.

#### b)   Payment Guidelines

Compensation payable to a Family Class Member who, at the time of payment, is 18 years of age or older, shall be paid directly to such Family Class Member.

Compensation payable to a Family Class Member who, at the time of payment, is a minor (under 18 years of age), shall be paid into the Court of the province or territory in which the Family Class Member resides.

- 45 -

**EXHIBIT "C"**

Court File No. 07-CV-343201CP

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

| THE HONOURABLE | ) | , THE   th |
| MR. JUSTICE BELOBABA | ) | DAY OF    , 2017 |

BETWEEN:

COLIN MACKAY, STEVEN GROUND, HAROLD GROUND,
TIM REID and SABINE REID and
DARRELL ROCKWOOD and MARILYN ROCKWOOD

Plaintiffs

- and -

PURDUE PHARMA INC., PURDUE PHARMA L.P.,
PURDUE PHARMA, THE PURDUE FREDERICK COMPANY,
THE PURDUE FREDERICK COMPANY INC.,
PURDUE FREDERICK INC., and THE P.F. LABORATORIES INC.

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**ORDER**

**THIS MOTION** made by the Plaintiffs, on consent of the Defendants, for an order conditionally certifying the above-captioned action (the "Ontario Proceeding") as a class proceeding for the purposes of implementing a national settlement agreement dated March 8, 2017 (the "Settlement Agreement"), was heard this day at Osgoode Hall, 130 Queen Street West, Toronto, Ontario.

**ON HEARING** the submissions of counsel for the Plaintiffs and counsel for the Defendants,

**AND ON READING** the materials filed on this motion:

1.     **THIS COURT ORDERS** that this Order sets aside and replaces the previous Order of this Court dated April 15, 2016.

2.     **THIS COURT ORDERS** that the definitions in the Settlement Agreement are incorporated into and shall be applied in interpreting this Order.

3.     **THIS COURT ORDERS** that the Ontario Proceeding is hereby certified, for the purpose of and subject to implementation of the Settlement Agreement, as a class proceeding pursuant to section 5 of the *Class Proceedings Act, 1992*, S.O. 1992, c. 6 (*"Class Proceedings Act"*) on behalf of the Class.

4.     **THIS COURT ORDERS** that the Class be collectively defined as:

    a) All persons including their estates, who at any time between January 1, 1996 and February 28, 2017 inclusive were prescribed in Ontario or British Columbia and ingested OxyContin® tablets and/or OxyNEO® tablets, manufactured, marketed and/or sold or otherwise placed into the stream of commerce in Canada by one or more of the Defendants (the "Ontario Class"); and

    b) All persons who by virtue of a personal relationship to a Ontario Class Member have a *Family Law Act* R.S.O. 1990, c. F. 3 (*"FLA"*) or similar legislation or law in other provinces or territories' derivative claim (the "Family Class").

5.     **THIS COURT ORDERS** that Tim Reid is hereby appointed as the representative plaintiff for the Ontario Class and Sabine Reid is hereby appointed as the representative plaintiff of the Family Class.

6.    **THIS COURT DECLARES** that the causes of action asserted on behalf of the Ontario Class are in the nature of duty to warn, and on behalf of the Family Class are claims pursuant to section 61 of the *FLA* or similar legislation in British Columbia.

7.    **THIS COURT ORDERS** that the relief sought by the Class includes general, special and punitive damages, including damages pursuant to section 61 of the *FLA*, prejudgment interest and costs.

8.    **THIS COURT DECLARES,** for settlement purposes, that the common issues in the Ontario Proceeding are:

a) Can OxyContin® tablets and/or OxyNEO® tablets cause, contribute to or trigger an addiction disorder?

b) Did one or more of the Defendants know, or should they have known, of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets? If so, when did such Defendant acquire such knowledge and under what circumstances?

c) Did one or more of the Defendants have a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, when ingested in accordance with the use indications?

d) Did one or more of the Defendants breach a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, when ingested in accordance with the use indications?

e) Did one or more of the Defendants have a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, in the case of non-compliance with the use indications through chewing, crushing, snorting, dissolving and/or intravenous use?

f) Did one or more of the Defendants breach a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, in the case of non-compliance with the use indications through chewing, crushing, snorting, dissolving and/or intravenous use?

9.       **THIS COURT ORDERS** that in the event the Settlement Agreement referenced in this Order is not: (i) approved by this Court; (ii) approved by the Courts in Nova Scotia, Québec, Saskatchewan; and (iii) implemented through dismissals/discontinuances by the Courts of British Columbia; Alberta; Saskatchewan (in respect of the Saskatchewan Juchacz Proceeding); Prince Edward Island; New Brunswick; and Newfoundland and Labrador, then the Settlement Agreement shall become null and void pursuant to its terms, and the within Order certifying this class proceeding for settlement purposes is hereby set aside, without further Order of this Court.

10.      **THIS COURT ORDERS** that RicePoint Administration Inc. be appointed as the Claims Administrator.

11.      **THIS COURT ORDERS** that within 30 days of the date of this Order, the Class shall be given notice of the certification of the Ontario Proceeding in the following manner, and as further set out in the Notice Plan attached as Schedule 1 to this Order (the "Notice Plan"):

   a)      The Claims Administrator shall send the Hearing Notice to all Class Members known to Class Counsel by e-mail where such addresses are known and by regular mail otherwise;

   b)      The Claims Administrator shall deliver the Hearing Notice electronically to Addiction Clinics listed in the Notice Plan and shall request that these clinics post the Hearing Notice in their reception areas and/or other location at their facilities where it be most likely to be seen by Class Members;

   c)      The Hearing Notice shall be published in national and regional newspapers as set out in Schedule B to the Notice Plan;

   d)      The Claims Administrator shall maintain a dedicated website where it will post the Hearing Notice as set out in the Notice Plan; and

e)      The Claims Administrator shall also publish the Hearing Notice on internet and
social media websites as set out in Schedule B of the Notice Plan.

12.      **THIS COURT ORDERS** that the Hearing Notice and abridged Hearing Notice in the
forms attached hereto as Schedule 2 and Schedule 3, respectively, are hereby approved.

~~13.~~      **THIS COURT ORDERS** that the Defendants may disclose to Class Counsel further
information about particular Class Members known to them, such as date of birth, to permit Class
Counsel to locate such Class Members to provide them with a copy of the Hearing Notice.

14.      **THIS COURT DECLARES** that the Notice Plan satisfies the requirements of section
17 of the *Class Proceedings Act,* and that the Notice Plan for the Ontario Class shall be deemed to
be notice for the Family Class.

15.      **THIS COURT ORDERS** that by 60 days after the Notice Date, the Claims
Administrator shall serve and file an affidavit with this Court confirming its compliance with its
obligations under the Notice Plan.

16.      **THIS COURT ORDERS** that any Class Member may opt out of the Ontario Proceeding
by sending by the Opt Out Deadline, an election to opt out in the form attached as Schedule 4 by
regular mail, fax or e-mail, signed by the Class Member or by the authorized representative of the
Class Member, stating that he or she opts out of the Ontario Proceeding and also stating the his or
her full name, address, telephone number and birth date to the Claims Administrator.

17.      **THIS COURT ORDERS** that if an Ontario Class Member opts out of the Ontario
Proceeding, all related Family Class Members will be deemed to have opted out of the Ontario

Proceeding and such persons will no longer be considered to be Ontario Class Members or Family Class Members as the case may be.

18.    **THIS COURT ORDERS** that no person may opt out a Class Member who is a minor or a person who is otherwise under a legal disability without leave of the court after notice to the office of the Children's Lawyer or the Public Guardian and Trustee, as the case may be.

19.    **THIS COURT ORDERS** that no Class Member may opt out of the Ontario Proceeding after the Opt Out Deadline.

20.    **THIS COURT ORDERS** that the Claims Administrator shall, within 30 days after the Opt Out Deadline, report to the Court, Class Counsel and the Defendants by affidavit to be filed under seal and advise as to the names and addresses of those Class Members, if any, who have opted out of the Ontario Proceeding, attaching the opt out documents.

21.    **THIS COURT ORDERS** that there shall be no costs of this motion.

_____

BELOBABA J.

- 51 -

## EXHIBIT "D"

Form 78.05

2007                                                                Hfx. No. 285995

### SUPREME COURT OF NOVA SCOTIA

B E T W E E N:

### GEORGE BELLEFONTAINE and STEPHEN MACGILLIVRAY

Plaintiffs

- and -

### PURDUE FREDERICK INC., PURDUE PHARMA INC., PURDUE PHARMA L.P., PURDUE PHARMA, PURDUE PHARMA COMPANY, THE PURDUE FREDERICK COMPANY, INC., PURDUE PHARMACEUTICALS L.P., and

### P.F. LABORATORIES, INC.

Defendants

**Proceeding under the *Class Proceedings Act,* S.N.S 2007, c. 28**

### ORDER

#### BEFORE THE HONOURABLE JUSTICE JOHN D. MURPHY

**THIS MOTION** made by the Plaintiffs, on consent of the Defendants, for an order conditionally certifying the above-captioned action (the "Nova Scotia Proceeding") as a class proceeding for the purposes of implementing a national settlement agreement dated March 8, 2017 (the "Settlement Agreement"), was heard this day at the Law Courts, 1815 Upper Water Street in Halifax, Nova Scotia.

**ON HEARING** the submissions of counsel for the Plaintiffs and of counsel for the Defendants,

**AND ON READING** the materials filed on this motion:

       1.    **THIS COURT ORDERS** that the definitions in the Settlement Agreement are incorporated into and shall be applied in interpreting this Order.

2.      **THIS COURT ORDERS** that the Nova Scotia Proceeding is hereby certified, for

the purpose of and subject to implementation of the Settlement Agreement, as a class

proceeding pursuant to the *Class Proceedings Act*, S.N.S. 2007, c. 28 ("*Class Proceedings

Act*") on behalf of the Class.

3.      **THIS COURT ORDERS** that the Class be collectively defined as:

    a) All persons including their estates, who at any time between January 1, 1996 and
February 28, 2017 inclusive were prescribed in Nova Scotia, Newfoundland and
Labrador, New Brunswick and/or Prince Edward Island and ingested OxyContin®
tablets and/or OxyNEO® tablets, manufactured, marketed and/or sold or otherwise
placed into the stream of commerce in Canada by one or more of the Defendants
(the "Atlantic Canada Class") and

    b) The spouses (including common law spouses and same-sex spouses), children,
grandchildren, parents, grandparents, brothers and/or sisters of members of the
Atlantic Canada Class who have a derivative claim on account of a family
relationship with a member of the Atlantic Canada Class (the "Family Class").

4.      **THIS COURT ORDERS** that Stephen MacGillivray and George Bellefontaine are

hereby appointed as the representative plaintiffs for the Class.

5.      **THIS COURT DECLARES** that the causes of action asserted on behalf of the

Class are in the nature of duty to warn.

6.      **THIS COURT ORDERS** that the relief sought by the Class includes general,

special and punitive damages, including prejudgment interest and costs.

7.      **THIS COURT DECLARES**, for settlement purposes, that the common issues in

the Nova Scotia Proceeding are:

    a) Can OxyContin® tablets and/or OxyNEO® tablets cause, contribute to or trigger
an addiction disorder?

- 53 -

b) Did one or more of the Defendants know, or should they have known, of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets? If so, when did such Defendant acquire such knowledge and under what circumstances?

c) Did one or more of the Defendants have a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, when ingested in accordance with the use indications?

d) Did one or more of the Defendants breach a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, when ingested in accordance with the use indications?

e) Did one or more of the Defendants have a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, in the case of non-compliance with the use indications through chewing, crushing, snorting, dissolving and/or intravenous use?

f) Did one or more of the Defendants breach a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, in the case of non-compliance with the use indications through chewing, crushing, snorting, dissolving and/or intravenous use?

8.    **THIS COURT ORDERS** that in the event the Settlement Agreement referenced in this Order is not: (i) approved by this Court; (ii)  approved by the Courts in Ontario, Québec and Saskatchewan; and (iii) implemented through dismissals/discontinuances by the Courts of British Columbia; Alberta; Saskatchewan (in respect of the Saskatchewan Juchacz Proceeding); Prince Edward Island; New Brunswick; and Newfoundland and Labrador, then the Settlement Agreement shall become null and void pursuant to its terms, and the within Order certifying this class proceeding for settlement purposes is hereby set aside, without further Order of this Court.

9.    **THIS COURT ORDERS** that RicePoint Administration Inc. be appointed as the Claims Administrator.

- 54 -

10.    **THIS COURT ORDERS** that within 30 days of the date of this Order, the Class shall be given notice of the certification of the Nova Scotia Proceeding in the following manner, and as further set out in the Notice Plan attached as Schedule 1 to this Order (the "Notice Plan"):

    a)    The Claims Administrator shall send the Hearing Notice to all Atlantic Canada Class Members known to Class Counsel and the Defendants by e-mail where such addresses are known and by regular mail otherwise;

    b)    The Claims Administrator shall deliver the Hearing Notice electronically to Addiction Clinics listed in the Notice Plan and shall request that these clinics post the Hearing Notice in their reception areas and/or other location at their facilities where it be most likely to be seen by Class Members;

    c)    The Hearing Notice shall be published in national and regional newspapers as set out in Schedule B to the Notice Plan;

    d)    The Claims Administrator shall maintain a dedicated website where it will post the Hearing Notice as set out in the Notice Plan; and

    e)    The Claims Administrator shall also publish the Hearing Notice on internet and social media websites as set out in Schedule B of the Notice Plan.

11.    **THIS COURT ORDERS** that the Hearing Notice and abridged Hearing Notice in the forms attached hereto as Schedule 2 and Schedule 3, respectively, are hereby approved.

12.    **THIS COURT ORDERS** that the Defendants may disclose to Class Counsel further information about particular Class Members known to them, such as date of birth, to permit Class Counsel to locate such Class Members to provide them with a copy of the Hearing Notice.

- 55 -

13.     **THIS COURT DECLARES** that the Notice Plan satisfies the requirements of section 22 of the *Class Proceedings Act,* and that the Notice Plan for the Atlantic Canada Class shall be deemed to be notice for the Family Class.

14.     **THIS COURT ORDERS** that by 60 days after the Notice Date, the Claims Administrator shall serve and file an affidavit with the Court confirming its compliance with its obligations under the Notice Plan.

15.     **THIS COURT ORDERS** that any Class Member may opt out of the Nova Scotia Proceeding by sending by the Opt Out Deadline, an election to opt out, by regular mail, fax or e-mail, signed by the Class Member or the authorized representative of the Class Member, stating that the he or she opts out of the Nova Scotia Proceeding and also stating his or her full name, address, telephone number and birth date to the Claims Administrator.

16.     **THIS COURT ORDERS** that if a Class Member opts out of the Nova Scotia Proceeding, all related Family Class Members will be deemed to have opted out of the Nova Scotia Proceeding and such persons will no longer be considered to be Atlantic Canada Class Members or Family Class Members as the case may be.

17.     **THIS COURT ORDERS** that no person may opt out a Class Member who is a minor or a person who is otherwise under a legal disability without leave of the court after notice to the office of the Children's Lawyer or the Public Guardian and Trustee, as the case may be.

18.     **THIS COURT ORDERS** that no Class Member may opt out of this action after the Opt Out Deadline.

- 56 -

19.    **THIS COURT ORDERS** that the Claims Administrator shall, within 30 days after the Opt Out Deadline, report to the Court, Class Counsel and the Defendants by affidavit to be filed under seal and advise as to the names and addresses of those Class Members, if any, who have opted out of this class action, attaching the opt out documents.

20.    **THIS COURT ORDERS** that there shall be no costs of this motion.

, 2017.

_____
Prothonotary

**Consented to as to form:**


_____
Raymond F. Wagner, Q.C.
**Solicitor for the Plaintiffs**
Wagners
1869 Upper Water Street
Suite PH301, Pontac House
Halifax, NS   B3J 1S9


_____
Scott R. Campbell
**Solicitor for the Defendants,**
**Purdue Frederick Inc., Purdue Pharma Inc.**
 **and Purdue Pharma**
Stewart McKelvey
900 - 1959 Upper Water Street
Halifax, NS   B3J 2X2



_____
David Byers

- 57 -

**Solicitor for the Defendants,**
**Purdue Pharma, L.P. Purdue Pharma Company,**
  **The Purdue Frederick Company, Inc.,**
  **Purdue Pharmaceuticals L.P. and P.F. Laboratories**
Stikeman Elliott LLP
5300 Commerce Court West
199 Bay Street
Toronto, ON   M5L 1B9

- 58 -

## EXHIBIT "E"

COURT FILE NUMBER:   Q.B.G. 1073/2012

COURT OF QUEEN'S BENCH FOR SASKATCHEWAN

JUDICIAL CENTRE:        REGINA

PLAINTIFF(S):               **DEMETRIOS PERDIKARIS**

DEFENDANT(S):            **PURDUE PHARMA, PURDUE PHARMA INC., PURDUE
                                    FREDERICK    INC.,    THE    PURDUE    FREDERICK
                                    COMPANY, INC. AND PURDUE PHARMA LP**

Brought under *The Class Actions Act*

## ORDER

Before the The Honourable Mr. Justice D.P. Ball in chambers this *th day of March, 2017

**On the application of the** Plaintiffs, on consent of the Defendants, for an order conditionally
certifying the above-captioned action (the "Saskatchewan Proceeding") as a class proceeding for the
purposes of implementing a national settlement agreement dated March 8, 2017 (the "Settlement
Agreement"), and on hearing the submissions of counsel for the Plaintiffs and counsel for the
Defendants and on reading the materials filed on this motion:

**The Court orders that:**

1. The definitions in the Settlement Agreement are incorporated into and shall be applied in
   interpreting this Order.

2. The Saskatchewan Proceeding is hereby certified, for the purpose of and subject to implementation
   of the Settlement Agreement, as a class proceeding pursuant to section 6 of the *Class Actions Act*,
   S.S. 2001, c.C-12.01 (the "*Class Actions Act*") on behalf of the following "Class", collectively
   defined as:

   a)     All persons including their estates, who at any time between January 1, 1996 and
          February 28, 2017 inclusive were prescribed in Saskatchewan, Alberta, Manitoba, the
          Yukon, Northwest Territories or Nunavut and ingested OxyContin® tablets and/or

OxyNEO® tablets, manufactured, marketed and/or sold or otherwise placed into the stream of commerce in Canada by one or more of the Defendants (the "Saskatchewan Class"); and

b)    The spouses (including common law spouses and same-sex spouses), children, grandchildren, parents, grandparents, brothers and/or sisters of members of the Saskatchewan Class who have a derivative claim on account of a family relationship with a member of the Saskatchewan Class (the "Family Class").

3.    Demetrios Perdikaris is hereby appointed as the representative plaintiff for the Class.

4.    The causes of action asserted on behalf of the Saskatchewan Class are in the nature of duty to warn.

5.    The relief sought by the Class includes general, special and punitive damages, including prejudgment interest and costs.

6.    For settlement purposes, that the common issues in the action are:

   a) Can OxyContin® tablets and/or OxyNEO® tablets cause, contribute to or trigger an addiction disorder?

   b) Did one or more of the Defendants know, or should they have known, of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets? If so, when did such Defendant acquire such knowledge and under what circumstances?

   c) Did one or more of the Defendants have a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, when ingested in accordance with the use indications?

   d) Did one or more of the Defendants breach a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, when ingested in accordance with the use indications?

   e) Did one or more of the Defendants have a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, in the case of non-compliance with the use indications through chewing, crushing, snorting, dissolving and/or intravenous use?

   f) Did one or more of the Defendants breach a duty to warn the Plaintiffs and Class Members of the addiction potential of OxyContin® tablets and/or OxyNEO® tablets, in the case of non-compliance with the use indications through chewing, crushing, snorting, dissolving and/or intravenous use?

7.      In the event the Settlement Agreement referenced in this Order is not: (i) approved by this Court; (ii) approved by the Courts in Ontario, Nova Scotia, and Québec; and (iii) implemented through dismissals/discontinuances by the Courts of British Columbia; Alberta; Saskatchewan (in respect of the Saskatchewan Juchacz Proceeding); Prince Edward Island; New Brunswick; and Newfoundland and Labrador, then the Settlement Agreement shall become null and void pursuant to its terms, and the within Order certifying this class proceeding for settlement purposes is hereby set aside, without further Order of this Court.

8.      Ricepoint Administration Inc. be appointed as the Claims Administrator.

9.      Within 30 days of the date of this Order, the Class shall be given notice of the certification of the Saskatchewan Proceeding in the following manner, and as further set out in the Notice Plan attached as Schedule 1 to this Order (the "Notice Plan"):

   a)   The Claims Administrator shall send the Hearing Notice to all Class Members known to Class Counsel and the Defendants by e-mail where such addresses are known and by regular mail otherwise;

   b)   The Claims Administrator shall deliver the Hearing Notice electronically to Addiction Clinics listed in the Notice Plan and shall request that these clinics post the Hearing Notice in their reception areas and/or other location at their facilities where it be most likely to be seen by Class Members;

   c)   The Hearing Notice shall be published in national and regional newspapers as set out in Schedule B to the Notice Plan;

   d)   The Claims Administrator shall maintain a dedicated website where it will post the Hearing Notice as set out in the Notice Plan; and

   e)   The Claims Administrator shall also publish the Hearing Notice on internet and social media websites as set out in Schedule B of the Notice Plan.

10.     The Hearing Notice and abridged Hearing Notice in the form attached hereto as Schedule 2 and Schedule 3, respectively, are hereby approved.

11.     The Defendants may disclose to Class Counsel further information about particular Class Members known to them, such as date of birth, to permit Class Counsel to locate such Class Members to provide them with a copy of the Hearing Notice.

12.     The Notice Plan satisfies the requirements of section 33 of the *Class Actions Act,* and the Notice Plan for the Saskatchewan Class shall be deemed to be notice for the Family Class.

13.     By 60 days after the Notice Date, the Claims Administrator shall serve and file an affidavit with the Court confirming its compliance with its obligations under the Notice Plan.

14.     Any Class Member may opt out of the Saskatchewan Proceeding by sending by the Opt Out Deadline, an election to opt out, by regular mail, fax or e-mail, signed by the Class Member or the authorized representative of the Class Member, stating that the Class Member opts out of the Saskatchewan Proceeding and also stating the Class Member's full name, address, telephone number and birth date to the Claims Administrator.

15.     If a Saskatchewan Class Member opts out of the Saskatchewan Proceeding, all related Family Class Members will be deemed to have opted out of the Saskatchewan Proceeding and such persons will no longer be considered to be Saskatchewan Class Members or Family Class Members as the case may be.

16.     No person may opt out a Class Member who is a minor or a person who is otherwise under a legal disability without leave of the court after notice to the office of the Children's Lawyer or the Public Guardian and Trustee, as the case may be.

17.     No Class Member may opt out of the Saskatchewan Proceeding after the Opt Out Deadline.

18.     The Claims Administrator shall, within 30 days after the Opt Out Deadline, report to the Court and to the Defendant by affidavit to be filed under seal and advise as to the names and addresses of those Class Members, if any, who have opted out of the Saskatchewan Proceeding, attaching the opt out documents.

19.     There shall be no costs of this motion.

- 62 -

ISSUED at Regina, Saskatchewan, this _____ day of March, 2017.


_____
(Deputy) Local Registrar

- 63 -

**EXHIBIT "F"**

**COUR SUPÉRIEURE**
**(Chambre des actions collectives)**

CANADA
PROVINCE DE QUÉBEC
DISTRICT DE QUÉBEC

N°:      200-06-000080-070

DATE :   • MARS 2017

---

**SOUS LA PRÉSIDENCE DE L'HONORABLE CLAUDE BOUCHARD, j.c.s.**

---

**CLAUDE LAROSE**

et

**FRANÇOIS MICHAUD**

et

**LÉO MICHAUD**

     Demandeurs

c.

**PURDUE PHARMA INC.**

et

**PURDUE FREDERICK INC.**

et

**PURDUE PHARMA L.P.**

et

**PURDUE PHARMA**

- 64 -

et

**THE PURDUE FREDERICK COMPANY INC.**

et

**THE P.F. LABORATORIES INC.**

Défenderesses

---

### JUGEMENT

(Demande pour obtenir l'autorisation d'exercer une action collective pour fins de
règlement seulement et pour autoriser la publication des avis aux membres)

---

[1]     **ATTENDU** que les parties sont impliquées dans un litige de la nature d'une action
collective;

[2]     **ATTENDU** que les Demandeurs ont conclu un règlement avec les Défenderesses,
le tout tel qu'il appert du document intitulé *Canada-wide Oxycontin and Oxyneo
Settlement Agreement* conclu le 8 mars, 2017 (ci-après l' « **Entente** »);

[3]     **ATTENDU** que les Demandeurs demandent au Tribunal d'autoriser l'exercice
d'une action collective pour les seules fins de l'Entente et d'approuver les avis aux
membres pour les informer, notamment, qu'une audience sera tenue pour l'approbation
de l'Entente, et d'en ordonner leur publication selon le Plan de diffusion proposé par les
parties;

[4]     **ATTENDU** que les Demandeurs demandent au Tribunal que soient fixés la date,
l'heure et l'endroit de la présentation de la Demande pour obtenir l'approbation de
l'Entente, par vidéoconférence;

[5]     **ATTENDU** que les Demandeurs demandent au Tribunal d'approuver la méthode
et le délai pour s'exclure du groupe;

[6]     **VU** la demande sous étude;

[7]     **VU** les pièces versées au dossier;

[8]     **VU** l'absence de contestation;

[9]     **VU** les articles 579, 581 et 590 du *Code de procédure civile*;

[10]    **APRÈS EXAMEN**, il y a lieu de faire droit à la demande.

**POUR CES MOTIFS, LE TRIBUNAL:**

[11]   **ACCUEILLE** la demande;

[12]   **AUTORISE** l'exercice d'une action collective contre les Défenderesses pour les seules fins de l'Entente ;

La définition du Groupe

[13]   **ORDONNE** qu'aux fins de règlement, le Groupe du Québec soit défini ainsi :

  a) Toutes les personnes, incluant les Successions, qui, en tout temps entre le 1er janvier 1996 et le 28 février 2017 inclusivement, se sont vues prescrire et ont consommé, au Québec, des comprimés d'OxyContin® et/ou d'OxyNEO® fabriqués, commercialisés et/ou vendus ou autrement mis en marché au Canada par une ou plusieurs des Défenderesses (ci-après « **Groupe du Québec** ») et

  b) Toutes les personnes qui, en raison de leur relation personnelle avec un Membre du Groupe du Québec, ont une réclamation dérivée (ci-après « **Groupe des familles du Québec** »).

Les demandeurs - représentants

[14]   **ATTRIBUE** aux Demandeurs Claude Larose et François Michaud, pour les fins d'approbation de l'Entente, le statut de représentants des Membres du Groupe du Québec;

[15]   **ATTRIBUE** au Demandeur Léo Michaud, pour les fins d'approbation de l'Entente, le statut de représentant des Membres du Groupe des familles du Québec;

Les questions communes

[16]   **IDENTIFIE** pour les seules fins de l'Entente, les questions communes comme étant les suivantes :

  a) Est-ce que les comprimés d'OxyContin® et/ou d'OxyNEO® causent, contribuent ou augmentent un problème de dépendance?

  b) Est-ce qu'une ou plusieurs des Défenderesses savaient, ou auraient dû savoir que les comprimés d'OxyContin® et/ou d'OxyNEO® pouvaient potentiellement entraîner de la dépendance? Si oui, quand cette ou ces Défenderesses ont-elles acquis cette connaissance et dans quelles circonstances?

  c) Est-ce qu'une ou plusieurs des Défenderesses avaient un devoir d'avertir les Demandeurs et les Membres du Groupe que les comprimés d'OxyContin® et/ou d'OxyNEO® pouvaient potentiellement entraîner de la dépendance lorsque consommés conformément aux indications d'utilisation?

d) Est-ce qu'une ou plusieurs des Défenderesses ont manqué à leur devoir d'avertir les Demandeurs et les Membres du Groupe que les comprimés d'OxyContin® et/ou d'OxyNEO® pouvaient potentiellement entraîner de la dépendance lorsque consommés conformément aux indications d'utilisation?

e) Est-ce qu'une ou plusieurs des Défenderesses avaient un devoir d'avertir les Demandeurs et les Membres du Groupe que les comprimés d'OxyContin® et/ou d'OxyNEO® pouvaient potentiellement entraîner de la dépendance lorsque consommés non conformément aux indications d'utilisation par mastication, écrasement, reniflement, dissolution et/ou de façon intraveineuse?

f) Est-ce qu'une ou plusieurs des Défenderesses ont manqué à leur devoir d'avertir les Demandeurs et les Membres du Groupe que les comprimés d'OxyContin® et/ou d'OxyNEO® pouvaient potentiellement entraîner de la dépendance lorsque consommés non conformément aux indications d'utilisation par mastication, écrasement, reniflement, dissolution et/ou de façon intraveineuse?

Les avis

[17]  **APPROUVE** la forme et le contenu des avis d'audience aux membres, en version détaillée et abrégée (en français et en anglais) joints en Annexe A au présent jugement (RA-2);

[18]  **ORDONNE** que la publication des avis d'audience aux membres (RA-2) de la Demande pour obtenir l'approbation de l'Entente, soit effectuée en conformité avec le Plan de diffusion joint en Annexe B au présent jugement (RA-3);

Les exclusions du recours

[19]  **ORDONNE** que les Membres du Groupe du Québec qui veulent s'exclure du Recours du Québec le fassent en transmettant une demande écrite d'exclusion aux Avocats du Groupe, et que leur envoi soit transmis le ou avant le 60e jour suivant la première publication des avis d'audience aux membres, le cachet postal faisant foi;

[20]  **ORDONNE** que les demandes d'exclusion contiennent toute l'information spécifiée dans l'avis d'audience détaillé (RA-2);

[21]  **ORDONNE** que lorsque le cachet postal n'est pas visible ou lisible, la demande écrite d'exclusion soit réputée avoir été postée quatre (4) jours ouvrables avant la date à laquelle les Avocats du Groupe l'auront reçue;

[22]  **DÉCLARE** que tout Membre du Groupe du Québec qui produira son formulaire d'exclusion selon le format approprié et avant l'expiration de l'échéance, ne pourra plus participer à ce recours et **DÉCLARE** qu'aucune autre possibilité de s'exclure du Groupe dans le cadre du présent recours ne sera accordée;

[23]  **DÉCLARE** que le présent jugement est rendu sous réserve que des ordonnances similaires soient également rendues par les tribunaux de l'Ontario, de la Nouvelles-

- 67 -

Écosse, et de la Saskatchewan, et mis en oeuvre par le biais de désistements à être entérinés par les tribunaux de la Colombie-Britannique, de l'Alberta, de la de l'Île du Prince-Édouard, du Nouveau-Brunswick et de Terre-Neuve et Labrador et que les dispositions du présent jugement seront sans effet tant que ces ordonnances ne seront pas rendues;

L'audience d'approbation de l'Entente

[24]   **FIXE** l'audience de la Demande pour obtenir l'approbation de l'Entente au **XXX 2017** à **XXX**, à la **salle ●**du Palais de Justice de Québec situé au 300, boulevard Jean-Lesage, Québec (Québec), par vidéoconférence;

[25]   **LE TOUT SANS FRAIS.**


_____
CLAUDE BOUCHARD, j.c.s.


SISKINDS, DESMEULES, AVOCATS, Casier #15
Me Caroline Perrault
43, rue de Buade, bureau 320
Québec (Québec) G1R 4A2
Avocats des Demandeurs


BORDEN, LADNER, GERVAIS
Me Anne Merminod
1000, de la Gauchetière Ouest, bureau 900
Montréal (Québec) H3B 5H4
Avocats de Purdue Pharma Inc. et Purdue Frederick Inc.


Fonds d'aide aux recours collectifs
Me Frikia Belogbi
1, rue Notre-Dame Est, bureau 10.30
Montréal (Québec)  H2Y 1B6


Date d'audience : _____2017

Annexe A : Avis d'audience aux membres
Annexe B : Plan de diffusion

- 68 -

**Ajouter**

**Annexe A : Avis d'audience aux membres**
**Annexe B : Plan de diffusion**

- 70 -

If you have questions about the Settlement and/or would like to obtain more information and/or copies of the Settlement and related documents, please visit the settlement website at www.XXX or contact the Claims Administrator at:

RicePoint Administration Inc.
1480 Richmond Street, Suite 204
London, Ontario, Canada, N6G 0J4
Email: support@ricepoint.com
Toll Free: 1 (866) 432-5534

*This Notice has been approved by the Ontario Superior Court of Justice, the Superior Court of Québec, the Supreme Court of Nova Scotia and the Court of Queen's Bench for Saskatchewan.*

## EXHIBIT "H"

### NOTICE OF CERTIFICATION AND PROPOSED SETTLEMENT OF CANADIAN OXYCONTIN® AND OXYNEO® LITIGATION
#### PLEASE READ CAREFULLY. IGNORING THIS NOTICE WILL AFFECT YOUR LEGAL RIGHTS

**WHAT IS THE PROPOSED SETTLEMENT AND WHO IS INCLUDED?**

A Canada-wide settlement has been reached in several proposed class actions relating to the prescription drugs OxyContin® and OxyNEO®. To become effective, the settlement will require court approval. If you , at any time between January 1, 1996 and February 28, 2017 inclusive, were prescribed in Canada and ingested OxyContin® tablets and/or OxyNEO® tablets, you and your family members may be entitled to receive compensation for certain injuries. The settlement provides for a $20 million (CDN) Settlement Payment which will pay for these benefits, as well as for the costs of administering the settlement, payment of the claims of Provincial Health Insurers and Class Counsel Legal Fees.

**OPTING OUT**

**If you are a member of the Class and do not wish to be bound by future orders made in the Proceedings, and/or by the Settlement you must take active steps by "Opting Out".** To Opt Out, you must fully complete and submit an Opt Out Form to the Claims Administrator by the Opt Out Deadline of **DATE, 2017.** Opt Out Forms are available at www.XXX or may be requested by mail or telephone from the Claims Administrator. **If you Opt Out, you will NOT be able to make a claim for compensation under the Settlement.**

**OBJECTING TO THE PROPOSED SETTLEMENT AND OPPORTUNITY TO APPEAR**

In order for the Settlement to become effective, it must be approved by the Courts in Ontario, Québec, Nova Scotia and Saskatchewan. If you wish to object to the Settlement, you must submit a written objection to the Claims Administrator by **no later than DATE, 2017** at the address listed below and you may attend the hearings on the following dates:

**Ontario Class: DATE, 2017 at 10:00 a.m.** at the Ontario Superior Court of Justice, 361 University Avenue, Toronto, Ontario.

**Québec Class: DATE, 2017 at X;XX a.m.** at the Superior Court of Québec, 1 Notre-Dame East, Montréal, Québec.

**Atlantic Canada Class: DATE, 2017 at X:XX a.m.** at The Law Courts Building, 1815 Upper Water Street, Halifax, Nova Scotia.

**Saskatchewan Class: DATE, 2017 at X:XX a.m.** at the Court of Queen's Bench, 2425 Victoria Avenue, Regina, Saskatchewan

**PARTICIPATING IN THE SETTLEMENT**

If the Settlement is approved by the Courts, you will have a limited amount of time within which to submit a claim for compensation. You may download a Claim Form now from the settlement website at www.XXX or you may request a Claim Form from the Claims Administrator. If you intend to submit a claim under the proposed Settlement, you must do so on or before the expiry of the Claim Period on **DATE, 2017.** If, for any reason, this deadline is extended, any such extension and new deadline will be posted at the settlement website: www.XXX

**FOR MORE INFORMATION:**

If you have questions about the Settlement and/or would like to obtain more information, please visit the settlement website at www.XX or contact the Claims Administrator at:

RicePoint Administration Inc.
1480 Richmond Street, Suite 204
London, Ontario, Canada, N6G 0J4
Email: support@ricepoint.com
Toll Free: 1 (866) 432-5534

You can also contact Class Counsel at any of the following firms:

| Rochon Genova LLP | Siskinds LLP | Wagners | Merchant Law Group LLP |
|---|---|---|---|
| 900-121 Richmond St.W. | 680 Waterloo St. | 1869 Upper Water St. | 2401 Saskatchewan Dr. |
| Toronto, ON M5H 2K1 | London, ON N6A 3V8 | Halifax, NS B3J 1S9 | Regina, SK S4P 4H8 |
| Joel P. Rochon | Michael G. Robb | Raymond F. Wagner | Tony Merchant |
| Tel: 416-363-1867 | Tel: 877-672-2121 | Tel: 902-425-7330 | Tel: 888-567-7777 |

- 72 -

*This Notice has been approved by the Ontario Superior Court of Justice, the Superior Court of Québec, the Supreme Court of Nova Scotia and the Court of Queen's Bench of Saskatchewan*

## EXHIBIT "I"

### Canadian OxyContin® and OxyNEO® Settlement Notice Plan

The Notices[3] will be distributed in the following manner:

*Direct Notice*

1.    The Claims Administrator will deliver copies of the Hearing Notice (abridged), Approval Notice and Opt Out Form to all potential Class Members and Family Class Members known to Class Counsel and the Defendants by e-mail where such addresses are known and by regular mail otherwise, with follow-up (best efforts) for any undeliverable e-mails and/or returned mail. Where the potential Class Member or Family Class Member is located in Québec, the notice material and Opt Out Form will be sent in English and French.

*Indirect Notice*

**Settlement Websites**

1.    The Hearing Notice (full) and Approval Notice will be posted, in both English and French, by Class Counsel on Class Counsel's respective websites and on the website created by the Claims Administrator for the purpose of this Settlement Agreement (the "Dedicated Website"). All Notices will direct potential Class Members and Family Class Members to the Dedicated Website where they will be able to obtain more information about the Settlement Agreement, review the Settlement Agreement and related documents, download the Opt Out Form and claim forms and communicate with the Claims Administrator.

**Addiction Clinics**

2.    The Claims Administrator will deliver copies of the Hearing Notice (abridged) and Approval Notice, in both English or French or both, as appropriate, to the following entities specifically engaged with the Class Member population, including addiction clinics and facilities involved in assisting with withdrawal, detoxification, etc, as set out in Schedule A to the Notice Plan.

The Claims Administrator will request that these facilities post copies of the Notices in their reception areas and/or other locations where they are likely to be seen by Class Members.

**News outlets**

3.    The Hearing Notice (abridged) and Approval Notice will be published twice (one weekday and one weekend publication) on 1/4 of a newsprint page in the "Front/News" sections of the following national and regional newspapers, in English or French, as appropriate, as set out in Schedule B to the Notice Plan.

---

3 Unless otherwise indicated or required by context, capitalized terms used in this Notice Plan have the meanings assigned in the Settlement Agreement.

- 74 -

4.  The Claims Administrator will issue a bilingual press release using a Canadian newswire and will deliver this press release to all local and national Canadian media, with a social media component.

**Social media**

5.  The Claims Administrator will also implement Google Search Network and YouTube advertising campaigns to raise awareness of the Proceedings and the Settlement Agreement, <u>subject to agreement of the Parties on search terms, length of campaign and the content being substantially the same as on the Settlement website</u>.

- 75 -

Schedule A

| Name | Province | Website | Information |
|------|----------|---------|-------------|
| 2nd Floor Women's Recovery Centre | Alberta | http://www.lcfasd.com/ | klobb@lcfasd.com<br>4823 50th Street<br>PO Box 479<br>Cold Lake, AB T9M 1P1<br>877.594.5454 |
| Action North Recovery Centre | Alberta | http://www.actionnorth.org/ | director@actionnorth.org<br>High Level, Alberta<br>Canada T0H 1Z0<br>(780) 926-3113 |
| Addiction Centre - Foothills Hospital | Alberta | http://www.addictioncentre.ca | AdaAdiction Centre, 6 floor, North Tower<br>1403 29 Street NW, Calgary, Alberta T2N 2T9<br>Phone: (403) 943-1500 |
| Alberta Adolescent Recovery Centre | Alberta | http://www.aarc.ab.ca/ | dvause@aarc.ab.ca<br>303 Forge Road S.E.<br>Calgary, Alberta<br>T2H 0S9<br>Phone: (403) 253-5250 |
| Alberta Health Services — Business and Industry Clinic | Alberta | http://businessindustryclinic.ca/ | sheri.macmillan@albertahealthservices.ca<br>11333 106 Street<br>Grande Prairie AB<br>Canada T8V 6T7<br>1-800-419-1149 |
| Aventa Treatment Services | Alberta | http://www.aventa.org | info@aventa.org<br>610-25 Avenue S.W.<br>Calgary, Alberta<br>T2S 0L6<br>(403) 245-9050 |

| Breaking New Ground Campaign | Alberta | http://recoveryacres.org/ | gmelsted@recoveryacres.org |
| --- | --- | --- | --- |
| Catholic Social Services | Alberta | http://www.catholicsocialservices.ab.ca | Alpha House: (780) 473-5957<br>Elpida House East: (780) 479-2464<br>Elpida House for Women: (780) 473-7011<br>Elpida House West: (780) 484-0274 |
| Eagle Moon Lodge | Alberta | http://www.woodshomes.ca | teri.basi@woodshomes.ca<br>805 37 St. NW<br>Calgary, AB T2N 4N8<br>403-270-1718 |
| McDougall House association | Alberta | http://www.mcdougallhouse.com/ | mcdougallhouse@shaw.ca<br>11070-108 Street NW,<br>Edmonton, AB T5H 3A9<br>780.426.1409 |
| Our House Addiction Recovery | Alberta | http://www.ourhouseedmonton.com | pbencz@ourhouseedmonton.com<br>22210 Stony Plain Road NW<br>Edmonton, AB T5S 2C3<br>(780) 474-8945 |
| Poundmaker's Lodge Treatment Centres | Alberta | http://www.poundmakerslodge.com/ | info@poundmaker.org<br>25108 Poundmaker Rd<br>Sturgeon County, AB<br>(780) 458-1884 |
| Recovery Acres Society | Alberta | http://recoveryacres.org/ | info@recoveryacres.org |
| Serenity Ranch | Alberta | http://serenityranch.ca/ | carcadmin@gmail.com<br>43001 Range Rd, #235A,<br>Tees, AB T0C 2N0<br>1 866-643-5726 |

| South Country Treatment Program | Alberta | www.southcountrytreatment.com/ | sctc@telusplanet.net 85049 Range Road 212, Lethbridge, AB T1J 3Y2 (403) 329-6603 |
|---|---|---|---|
| Southern Alcare Manor | Alberta | http://www.alcaremanor.com | alcare@telusplanet.net 520 7 Street S Lethbridge, Alberta T1J 2H1 403-328-0955 |
| The George Spady Centre | Alberta | http://www.gspady.org/ | admin@gspady.ab.ca Suite 218, 10509 – 81 Ave Edmonton, AB T6E 1X7 587.524.1530 |
| Thorpe Recovery Centre | Alberta | http://www.thorperecoverycentre.org | director@thorperecoverycentre.org P.O. Box 291 R. R. 21 21060 Tranquility Way Blackfoot, AB T0B 0L0 780.875.8890 |
| Thorpe Recovery Centre | Alberta | http://www.thorperecoverycentre.org/ | info@thorperecoverycentre.org |
| Top of the World Treatment Centres | Alberta | http://www.canadarecovery.com | mark@canadarecovery.com 8350 Holmes Road, P.O. Box 29 Fort Steele, BC V0B 1N0, Canada Phone 250.426.6306 |
| Wood's Homes | Alberta | http://www.woodshomes.ca | askus@woodshomes.com |

| | | | |
|---|---|---|---|
| Abbotsford Addictions Centre | British Columbia | http://www.abbotsfordcommunity services.com/programs/communit y/abbotsford-addictions-centre | info@abbotsfordcommunity services.com 31943 South Fraser Way, Suite 202 Abbotsford, BC 604-850-5106 |
| Agora Regeneration Clinic | British Columbia | http://www.agoraforlife.net | maggie@agoraforlife.net |
| Alouette Addiction Services | British Columbia | http://www.alouetteaddictions.org / | mail@alouetteaddictions.or g 201-22477 Lougheed Hwy Maple Ridge, BC V2X 2T8 604.467.5179 |
| Angels Community Support Network | British Columbia | http://www.angelscommunity.co m | david@angelscommunity.co m |
| ARC Programs Ltd. | British Columbia | http://www.arcprograms.com/ | arcprograms@arcprograms. com 513 Bernard Avenue. Kelowna, British Columbia V1Y 6N9 (250) 763-2977 |
| BC    Teen Challenge | British Columbia | http://www.teenchallengebc.com/ | contact@teenchallengebc.co m PO Box 2095 Abbotsford STN A, BC V2T 3X8 1.888.575.3930 |
| Better    Start Supportive Housing | British Columbia | http://www.betterstart.ca | info@betterstart.ca |

| Beyond Twelve Steps | British Columbia | http://www.beyondtwelvesteps.com | kevinm@beyondtwelvesteps.com |
| Cardinal Recovery | British Columbia | http://www.cardinalrecovery.ca/ | info@cardinalrecovery.ca |
| Carrier Sekani Family Services | British Columbia | http://www.csfs.org/ | darren@csfs.org |
| Cedars at Cobble Hill | British Columbia | http://www.cedarscobblehill.com/ | tom@cedarscobblehill.com<br>3741 Holland Ave, Cobble Hill, BC, V0R 1L0<br>1-866-716-2006 |
| CHOPRA Addiction and Wellness Centre | British Columbia | http://www.chopratreatmentcenter.com/ | Shalina Kajani<br>Phone: 604 801-5477<br>Email: shalinakajani@shaw.ca |
| City Centre Care Society | British Columbia | http://www.cccares.org/ | info@cccares.org |
| Comox Valley Recovery Centre | British Columbia | http://www.comoxvalleyrecoverycentre.com/ | cvrc@mars.ark.com<br>641 Menzies Ave, Courtenay, B.C.<br>V9N 3C3<br>(250) 338-7144 |
| Crossroads Treatment Centre | British Columbia | http://www.xrdstc.net/ | info@xrdstc.net<br>The Crossing Point<br>#116 7841 Hwy 97 N,<br>Kelowna, BC, V4V 1E7<br>250.878-5806 |

| Edgewood Treatment Centre | British Columbia | https://www.edgewood.ca/ | info@edgewood.ca<br>2121 Boxwood Road<br>Nanaimo, BC, Canada V9S 4L2<br>250-751-0111 |
| Family Services of Greater Vancouver | British Columbia | http://www.fsgv.ca/ | 1616 West 7th Ave.<br>Vancouver , BC<br>V6J 1S5<br>604.731.4951 |
| Fraser Health | British Columbia | http://www.fraserhealth.ca | feedback@fraserhealth.ca<br>Suite 400, Central City Tower<br>13450 – 102nd Avenue<br>Surrey, BC V3T 0H1<br>1-877-935-5669 |
| Golden Family Center | British Columbia | http://goldenfamilycenter.bc.ca/ | gfc@goldenfamilycenter.bc.ca<br>P.O. Box 415, Golden, BC, V0A 1H0<br>250.344.2000 |
| Hollyburn | British Columbia | http://www.hollyburn.ca/ | info@hollyburn.ca<br>#104-267 West Esplanade, North Vancouver, BC V7M 1A5<br>604-987-8211 |
| Jackson-Murray Consultants | British Columbia | http://www.jacksonmurray.com | Contact Name: Vince Hohn<br>Contact Email: info@jacksonmurray.com |
| John Volken Academy | British Columbia | https://www.volken.org/ | info@volken.org |
| Kelowna Hills Recovery | British Columbia | http://kelownahillsrecovery.org/ | pattermac2@gmail.com<br>5360 Connaly Lane<br>Kelownam, BC<br>V1W 4Y7<br>250-859-4472 |

| Last Door Recovery Centre | British Columbia | https://www.lastdoor.org/ | lastdoor@winfonet.bc.ca 323 8th Street, New Westminster, BC V3M 3R3 (604) 525-9771 |
|---|---|---|---|
| LIFE Recovery | British Columbia | http://liferecovery.ca/ | admin@liferecovery.ca PO Box 2652 Abbotsford, BC V2T 6R4 604.855.4440 |
| Lion Wellness Alcohol and Drug Recovery Center | British Columbia | http://www.lionwellness.org | staff@lionwellness.org |
| Live Free Now | British Columbia | Livefreenow.ca | livefree@livefreenow.ca |
| Luke 15 House | British Columbia | http://www.luke15house.com | info@luke15house.com |
| North Wind Healing Centre | British Columbia | http://www.northwindhealingcentre.ca | yishak@pris.ca PO Box 2480 Station A Dawson Creek, BC V1G 4T9 (250) 843 6977 |
| Northern Health | British Columbia | https://northernhealth.ca/YourHealth/MentalHealthAddictions.aspx | hello@northernhealth.ca Suite 600, 299 Victoria St. Prince George, BC, V2L 5B8 (250) 565-2649 |
| Options Okanagan Treatment Center | British Columbia | http://www.optionsokanagan.com/ | support@OptionsOkanagan.com 206 - 478 Bernard Avenue Kelowna, BC V1Y 6N7 1-855-335-0331 |

| Options Recovery Centre | British Columbia | http://optionsrecovery.com/ | optionsrc@hotmail.com |
|---|---|---|---|
| Orchard Recovery Centre | British Columbia | http://www.orchardrecovery.com | barbm@orchardrecovery.com 811 Grafton Road Bowen Island, BC, V0N 1G2 604-947-0420 |
| Pacific Community Resources Society | British Columbia | http://www.pcrs.ca | mailbox@pcrs.ca |
| Path to Freedom | British Columbia | http://pathtofreedom.net/ | hardev@pathtofreedom.net |
| Pathway to Freedom | British Columbia | http://www.traviswatsonsociety.ca/pathwaytofreedom/Home.html | pathwaytofreedom@live.com |
| Phoenix Drug & Alcohol Recovery And Education Society | British Columbia | http://www.phoenixsociety.com/ | admin@phoenixsociety.com |
| Physician Health Program | British Columbia | https://www.physicianhealth.com/ | php@radiant.net |
| Round Lake Native Alcohol and Drug Treatment Centre | British Columbia | http://www.roundlake.bc.ca | rltc@roundlake.bc.ca 200 Emery Louis Road Armstrong, BC, V0E 1B5 (250) 546-3077 |

| Sage Health Centre | British Columbia | http://sagehealthcentre.ca/ | baker911@telus.net<br>101 Columbia Street<br>Kamloops, BC<br>V2C 2S7<br>(250) 374-6551 |
|---|---|---|---|
| SHARE Family and Community Services | British Columbia | http://www.sharesociety.ca/ | rob.buirs@sharesociety.ca<br>#200 - 25 King Edward St.<br>Coquitlam, BC V3K 4S8<br>604.540.9161 |
| Sober Champion Vancouver Sober Coaching | British Columbia | http://www.vancouversobercoach.ca/ | doug.caine@gmail.com |
| Sunshine Coast Health Centre | British Columbia | https://www.sunshinecoasthealthcentre.ca/ | info@schc.ca |
| The Realistic Success Recovery Society | British Columbia | http://therecoverysociety.com/ | susanr99@shaw.ca |
| Tsow-Tun Le Lum Society, Substance Abuse Treatment Centre | British Columbia | http://www.tsowtunlelum.org/ | ttlltc@nanaimo.arc.com<br>PO Box 370, 699 Capilano Road,<br>Lantzville, BC<br>V0R 2H0<br>(250) 390-3123 |
| Turning Point Recovery | British Columbia | http://www.turningpointrecovery.com/ | admin@turningpointrecovery.com |
| Union gospel Mission | British Columbia | http://www.ugm.ca/ | friedab@ugm.ca |

| | | | |
|---|---|---|---|
| Valiant Recovery | British Columbia | http://www.valiantrecovery.com/ | canadiandrugrehabcentres@valiantrecovery.com (877) 958-8247 |
| Vancouver Island Health Authority | British Columbia | http://www.viha.ca/ | info@viha.ca |
| Venture Academy | British Columbia | http://www.ventureacademy.ca/ | info@ventureacademy.ca 101-1865 Dilworth Drive, Suite 338 Kelowna, British Columbia, V1Y 9T1 (250) 491-4593 |
| VisionQuest Recovery Society | British Columbia | http://visionquestsociety.org/ | executivedir@visionquestsociety.org Unit 7 – 7551 Vantage Way Delta, B.C. Canada V4G 1C9 604-946-1841 |
| Wagner Hills | British Columbia | http://wagnerhills.com/ | whfprogram@wagnerhills.com 8061-264 Street Langley, BC V1M 3M3 604-856-9432 |
| West Coast Wellness Centre for Women | British Columbia | http://www.womenintohealing.ca/ | womenintohealing@shaw.ca 1-800-801-8354 |
| Western steps to Recovery Society | British Columbia | http://mypage.direct.ca/t/turningp/ | turningp@direct.ca |

| Addictions Foundation of Manitoba | Manitoba | http://afm.mb.ca/ | wpgmens@afm.mb.ca (Riverpoint Centre) |
|---|---|---|---|
| | | | womenandfamily@afm.mb.ca (Women and families) |
| | | | wpggambling@afm.mb.ca (Problem Gambling Services) |
| | | | youth@afm.mb.ca (Youth (Eastern and Central Manitoba)) |
| | | | parkwood@afm.mb.ca (Brandon and surrounding area) |
| | | | parkland@afm.mb.ca (Parkland) |
| | | | afmnorth@afm.mb.ca (AFM North) |
| | | | mine@afm.mb.ca (Methadone and Needles Exchange) |
| Aurora Recovery Centre | Manitoba | Aurorarecoverycentre.com | info@aurorarecovery.com |
| Behavioural Health Foundation | Manitoba | http://www.bhf.ca/ | info@bhf.ca |
| Churchill Regional Health Authority | Manitoba | http://churchillhealthcentre.com/ | Address:   Churchill,   MB R0B 0E0 Phone:(204) 675-2243 |

| Esther House | Manitoba | www.estherhousewinnipeg.ca/ | estherhs@mts.net |
|---|---|---|---|
| MacDonald Youth Services | Manitoba | http://www.mys.ca/ | info@mys.mb.ca |
| Main Street Project | Manitoba | http://www.mainstreetproject.ca/ | admin@mainstreetproject.ca |
| Native Addictions Council of Manitoba | Manitoba | http://www.mts.net/~nacm/ | info@nacm.ca |
| Opiate Addiction Treatment Services | Manitoba | http://www.oatsprogram.com/ | oatsprogram@yahoo.com |
| Recovery Centre For Addictions, Trauma and Families | Manitoba | http://www.addictionscounselling.ca | larson.hope@shaw.ca |
| St. Raphael Wellness Centre | Manitoba | http://straphaelcentre.ca/ | ceic@straphaelcentre.ca |
| Tamarack Recovery Centre | Manitoba | http://www.tamarackrehab.org/ | info@tamarackrecovery.org |

| The Laurel Centre | Manitoba | http://thelaurelcentre.com/ | info@thelaurelcentre.com |
|---|---|---|---|
| Two Ten Recovery Inc. | Manitoba | http://www.twotenrecovery.org/ | info@twotenrecovery.org |
| Whispering Pines | Manitoba | http://whisperingpine.ca/Home.asp | info@whisperingpine.ca |
| Winnipeg Health Sciences Centre | Manitoba | http://www.hsc.mb.ca/ | llscott@hsc.mb.ca |
| Bridges of Canada | New Brunswick | http://www.bridgesofcanada.com/ | bridges@bridgesofcanada.com |
| Horizon Health Newtwork – Ridgewood Addiction Services | New Brunswick | http://en.horizonnb.ca/facilities-and-services/facilities/ridgewood-addiction-services.aspx | Horizon@HorizonNB.ca |
| Imagine Laserworks | New Brunswick | http://www.imaginelaserworks.com/ | info@imaginelaserworks.com |
| Portage Atlantic | New Brunswick | http://www.portage.ca/ | sharding@portage.ca |

| Rising Sun Treatment Centre | New Brunswick | http://www.risingsuntreatment.ca/ | info@risingsuntreatment.ca |
|---|---|---|---|
| Sophia Recovery Centre | New Brunswick | http://sophiarecoverycentre.com/ | sophiarecoverycentre@live.ca |
| Vatalite Network | New Brunswick | http://www.vitalitenb.ca/en/points-service/addiction-services | info@vitalitenb.ca |
| Teen Challenge Canada | New Brunswick /Alberta/Saskatchewan/Newfoundland | http://www.teenchallenge.ca/ | info@teenchallenge.ca |
| Health And Community Services - St.John's Region | Newfoundland | http://www.health.gov.nl.ca/ | healthinfo@gov.nl.ca |
| Humberwood Treatment Centre | Newfoundland | http://westernhealth.nl.ca/index.php/locations/humberwood-centre | marymayo@hcsw.nf.ca |
| Serenity on the Rock | Newfoundland | http://serenityontherock.com/ | info@serenityontherock.com |
| Alcare Place | Nova Scotia | http://www.alcareplace.ca/ | alcare@ns.sympatico.ca |

| | | | |
|---|---|---|---|
| Crosbie House Society | Nova Scotia | http://crosbiehousesociety.com/ | crosbiehousesociety@crosbichousesociety.ca |
| Foundation for Youth Support | Nova Scotia | http://youthsupport.tripod.com | terrygoodwin@eastlink.ca |
| Ledgehill Treatment and Recovery Centre | Nova Scotia | www.ledgehill.com | info@**ledgehill**.com |
| Mi'kmaw Lodge Treatment Centre | Nova Scotia | http://nadaca.ca/mikmaw-lodge.html | nadaca@istar.ca |
| Ontario Addiction Treatment Centres (OATC) - Alliston | | http://www.oatc.ca/ | 96 Victoria Street West, Lower Level, Alliston, ON L9R 1S6 (705) 812-3822 |
| Ontario Addiction Treatment Centres (OATC) - Atikokan | | http://www.oatc.ca/ | 214 Main Street, Atikokan, ON P0T 1C0 (807) 597-1515 |
| Ontario Addiction Treatment Centres (OATC) - Bancroft | | http://www.oatc.ca/ | 89 Hastings Street North, Bancroft, ON K0L 1C0 (613) 332-0660 |
| Ontario Addiction Treatment Centres (OATC) - Barrie | | http://www.oatc.ca/ | 20 Owen Street, Barrie, ON L4M 3G7 (705) 730-0286 |

| | | | |
|---|---|---|---|
| Methadone Clinic Ontario - Road to Recovery Barrie | | http://methadoneclinicontario.com/ | 7 Anne Street, Unit 3, Barrie, ON L4N 2C4 (705) 719-7333 |
| CHMA Simcoe County Bradford Street - Methadone Maintenance | | http://cmhastarttalking.ca/ | 15 Bradford Street, Barrie, ON L4M 1W2 (705) 726-7062 |
| Ontario Addiction Treatment Centres (OATC) - Beaverton | | http://www.oatc.ca/ | 371 Simcoe Street, Beaverton, ON L0K 1A0 (705) 426-2362 |
| Ontario Addiction Treatment Centres (OATC) - Belleville | | http://www.oatc.ca/ | 257 Front Street, Belleville, ON K8N 3Z6 (613) 969-7862 |
| First Step Clinic Belleville | | | 450 Dundas Street East, Unit 5, Belleville, ON K8N 1E9 (905) 966-0001 |
| Methadone Clinic Ontario - Road to Recovery Bolton | | http://methadoneclinicontario.com/ | 30 Martha Street, Unit 104, Bolton, ON L7E 5V1 (905) 857-5959 |
| Ontario Addiction Treatment Centres (OATC) - Bracebridge | | http://www.oatc.ca/ | 500 Highway 118 W, Unit 5, Bracebridge, ON P1L 1T4 (705) 645-1677 |
| Methadone Clinic Ontario - Road to Recovery Bradford | | http://methadoneclinicontario.com/ | 456 Holland Street West, Unit 2, Bradford, ON L3Z 2B2 (905) 775-4999 |

| | | | |
|---|---|---|---|
| Victoria Park Clinic | | | 95 Darling Street, Brantford, ON N3T 2K7 (519) 720-0712 |
| Ontario Addiction Treatment Centres (OATC) - Brampton | | http://www.oatc.ca/ | 14 Nelson Street, Units A & B, Brampton, ON L6X 1B7 (905) 450-6679 |
| New Direction Addiction Clinic | | http://www.ndaclinic.com/ | 14 Lisa Street, Unit 2, Brampton, ON L6T 4W2 (905) 460-1762 |
| Horizons Opioid Treatment Service - Brampton | | http://horizonsclinic.ca/ | 150 West Drive, Brampton, ON L6T 4P9 1-855-742-9449 |
| Lucero Medical Centre - Brampton | | | 79 Queen Street West, Brampton, ON L6Y 1M2 (905) 752-2295 |
| Change Health Care - Brockville Clinic | | http://changehealthcare.ca/ | 244 King Street West, Brockville, ON K6V 3R9 (613) 423-2424 |
| Wellbeings Pain Management and Dependency Clinic | | http://wellbeings.ca/ | 444 Plains Road East, Burlington, ON L7T 2E1 (905) 631-9355 |
| Horizons Opioid Treatment Service - Burlington | | http://horizonsclinic.ca/ | 809 Brant Street, Burlington, ON L7R 2J5 1-855-742-9449 |

| | | |
|---|---|---|
| Ontario Addiction Treatment Centres (OATC) - Cambridge | http://www.oatc.ca/ | 150 Main Street, Cambridge, ON N1R 6P9 (519) 624-6311 |
| Renew Medical Clinics - Cambridge | http://www.renewmedicalclinics.com/ | 141 Hespler Road, Cambridge, ON N1R 3G9 (226) 499-0600 |
| Bluewater Methadone Clinic - Chatham Site | http://bluewatermethadoneclinic.ca/ | 69 Grand Avenue, Chatham, ON N8A 4K1 (519) 351-5800 |
| Bayly Healthcare Consultants Methadone Clinic | | 541 William Street, Unit 5, Cobourg, ON K9A 3A4 (905) 377-0005 |
| Change Health Care - Cobourg Clinic | http://changehealthcare.ca/ | 1000 Depalma Drive, Cobourg, ON K9A 5W6 (905) 373-4494 |
| Ontario Addiction Treatment Centres (OATC) - Collingwood | http://www.oatc.ca/ | 275 First Street, Unit 3, Collingwood, ON L9Y 1A8 (705) 293-1541 |
| Ontario Addiction Treatment Centres (OATC) - Constance Lake | http://www.oatc.ca/ | 5 Amik Street, Jane Mattinas Healing Centre, Constance Lake, ON P0L 1B0 (705) 463-2121 |
| Change Health Care - Cornwall Clinic | http://changehealthcare.ca/ | 421 Marlborough Street North, Cornwall, ON K6H 4A5 (613) 932-9777 |

| | | | |
|---|---|---|---|
| Ontario Addiction Treatment Centres (OATC) - Dryden | | http://www.oatc.ca/ | 35 Whyte Street, Unit 2, Dryden, ON P8N 1Z2 (807) 223-5107 |
| Etobicoke Walk-in Opioid Treatment Service Program | | http://etobicokewalkin.ca/ | 100 Humber College Boulevard, Suite 106, Etobicoke, ON M9V 5G4 (416) 742-9449 |
| Ontario Addiction Treatment Centres (OATC) - Etobicoke | | http://www.oatc.ca/ | 25 Woodbine Downs Boulevard, Suite 11, Etobicoke, ON M9W 6N5 (416) 679-1200 |
| Toronto Addiction Treatment Clinics (TATC) | | http://www.tatchealth.com/ | 4972 Dundas Street West, Etobicoke, ON M9A 1B7 (416) 236-7924 |
| Niagara Health System - Douglas Memorial Hospital Methadone Program | | http://www.niagarahealth.on.ca/ | 230 Bertie Street, Fort Erie, ON L2A 1Z2 (905) 378-4647 |
| Ontario Addiction Treatment Centres (OATC) - Fort Frances | | http://www.oatc.ca/ | 404 Scott Street, Fort Frances, ON P9A 1H2 (807) 274-8305 |
| Horizons Opioid Treatment Service - Georgetown | | http://horizonsclinic.ca/ | 118 Mill Street, Georgetown, ON L7G 1-855-742-9449 |

| | | | |
|---|---|---|---|
| Ontario Addiction Treatment Centres (OATC) - Guelph | | http://www.oatc.ca/ | 84 Carden Street, Guelph, ON N1H 3A3 (519) 822-6100 |
| Stonehenge Therapeutic Community | | http://www.stonehengetc.com/ | 60 Westwood Road, Guelph, ON N1H 7X3 (519) 837-1470 |
| Lucero Medical Centre - Guelph | | | 472 Woodlawn Road East, Guelph, ON N1E 1B9 (519) 821-9449 |
| Ontario Addiction Treatment Centres (OATC) - Hamilton | | http://www.oatc.ca/ | 397 Main Street East, Hamilton, ON L8N 1J7 (905) 528-9889 |
| ACT Hamilton | | http://acttoronto.com/ | 666 Barton Street East, Hamilton, ON L8L 3A4 (289) 799-2135 |
| John Street Clinic | | | 14 John Street North, Hamilton, ON L8R 1G9 (905) 522-7206 |
| The Hamilton Clinic - A Fresh New Start | | http://www.thehamiltonclinic.ca | 200 Main Street East, Lower Level Hamilton, ON L8N 1H3 (905) 523-4567 |
| Addiction Treatment Clinic | | | 554 Main Street East, Hamilton, ON L8M 1J3 (905) 522-9002 |

| Ontario Addiction Treatment Centres (OATC) - Hearst | | http://www.oatc.ca/ | 12 10th Street, Hearst, ON P0L 1N0 (705) 372-1110 |
|---|---|---|---|
| Ontario Addiction Treatment Centres (OATC) - Huntsville | | http://www.oatc.ca/ | 15 Manominee Street, Unit 2A, Huntsville, ON P1H 1H2 (705) 784-9999 |
| Lake of the Woods District Hospital - MECCA Program | | http://www.lwdh.on.ca/ | 21 Sylvan Street, Kenora, ON P9N 3W7 (807) 468-5749 |
| Ontario Addiction Treatment Centres (OATC) - Keswick | | http://www.oatc.ca/ | 204 Simcoe Avenue, Units 1 & 2, Keswick, ON L4P 3S6 (905) 476-3737 |
| ACT Kingston | | http://acttoronto.com/ | 166 Division Street, Kingston, ON K7L 3M6 (613) 544-0228 |
| Change Health Care - Kingston Clinic | | http://changehealthcare.ca/ | 7 Hickson Avenue, Kingston, ON K7K 2N4 (613) 549-6060 |
| Change Health Care - Kingston West Clinic | | http://changehealthcare.ca/ | 3079 Princess Street, Kingston, ON K7L 4V2 (613) 766-0834 |
| Kingston Community Health Centres - Street Health Centre Methadone Treatment | | http://www.kchc.ca/home/ | 235 Wellington Street, Kingston, ON K7K 0B5 (613) 549-1440 |

| Ontario Addiction Treatment Centres (OATC) - Kitchener | | http://www.oatc.ca/ | 509 Park Street, Kitchener, ON N2G 1N9 (519) 746-1919 |
| Ontario Addiction Treatment Centres (OATC) - Kitchener East | | http://www.oatc.ca/ | 1253 King Street East, Unit 4, Kitchener, ON N2G 2N5 (519) 279-6078 |
| Lucero Medical Centre - Kitchener | | | 625 King Street East, Unit 1A, Kitchener, ON N2G 2L3 (519) 749-9692 |
| Towards Recovery Clinic | | http://www.towardsrecovery.com/ | 1145 King Street East, Kitchener, ON N2G 2N3 (519) 579-0589 |
| Renew Medical Clinics - Leamington | | http://www.renewmedicalclinics.com/ | 4 Talbot Street East, Leamington, ON N8H 1L2 (519) 322-4922 |
| Ontario Addiction Treatment Centres (OATC) - Lindsay | | http://www.oatc.ca/ | 40 Lindsay Street S, Lindsay, ON K9V 2L8 (705) 324-5553 |
| Clinic 528 | | | 528 Dundas Street East, London, ON N6B 1W6 (519) 645-1533 |
| Integrated Circle of Care Inc | | www.circleofcare.ca | 1385 North Routledge Park Road, Unit 5, London, ON N6H 5N5 (519) 472-8282 |

| | | | |
|---|---|---|---|
| Oxford Recovery Clinic | | www.oxfordrecovery.ca | 502 Oxford Street East, London, ON N5Y 3H7 (519) 645-6000 |
| Commissioners Clinic | | | 193 Commissioners Road West, London, ON N6J 1X9 (519) 433-6923 |
| Wharncliffe Clinic | | | 231 Wharncliffe Road South, London, ON N6J 2L3 (519) 963-0620 |
| Ontario Addiction Treatment Centres (OATC) - London | | http://www.oatc.ca/ | 425 Wharncliffe Road South, London, ON N6J 2M6 (519) 204-8430 |
| Ontario Addiction Treatment Centres (OATC) - Longlac | | http://www.oatc.ca/ | 92 Indian Road, Longlac, ON P0T 2A0 (807) 876-9666 |
| First Step Medical Clinic | | | 490 Dominion Avenue, Suite 102, Midland, ON L4R 3M1 (705) 527-0550 |
| Georgian Bay Clinic | | | 349 King Street, Midland, ON L4R 3M7 (705) 527-4641 |
| Shoppers Drug Mart | | | 9226 Highway 93, Midland, ON L4R 4K4 (705) 526-7855 |

| | | | |
|---|---|---|---|
| ANEW Dispensary and Clinic | | | 327 Bronte Street South, Milton, ON L9T 4A4 (905) 878-0070 |
| Malton Medical Centre | | | 7330 Goreway Drive, 2nd Floor, Mississauga, ON L4T 4J2 (905) 677-4200 |
| Horizons Opioid Treatment Service - Mississauga | | http://horizonsclinic.ca/ | 2233 Hurontario Street, Mississauga, ON L5A 2E9 1-855-742-9449 |
| Vector Health Clinics | | http://www.vectorhealthclinics.ca/ | 7064 Airport Road, Mississauga, ON L4T 2G8 (416) 487-3885 |
| Renew Medical Clinics - Mississauga | | http://www.renewmedicalclinics.com/ | 1015 Cawthra Road, Mississauga, ON L5G 4K3 (905) 271-1134 |
| Mississauga Addiction Treatment Centre | | http://mississaugamethadone.ca/ | 3047A Hurontario Street, Mississauga, ON L5A 2G9 (905) 279-4848 |
| Ontario Addiction Treatment Centres (OATC) - Pic Mobert | | http://www.oatc.ca/ | 101 11th Street, Pic Mobert Reserve North Dilico Building, Mobert, ON P0M 2J0 (807) 822-1100 |
| Ontario Addiction Treatment Centres (OATC) - Newmarket | | http://www.oatc.ca/ | 17310 Yonge Street, Unit 08, Newmarket, ON L3Y 7R8 (905) 868-9966 |

| | | | |
|---|---|---|---|
| Road to Recovery Clinic | | | 97 Davis Drive, Newmarket, ON L3Y 2M9 (905) 853-9595 |
| Ontario Addiction Treatment Centres (OATC) - Niagara Falls | | http://www.oatc.ca/ | 6175 Dunn Street, Unit 11, Niagara Falls, ON L2G 2P4 (905) 356-0666 |
| Ontario Addiction Treatment Centres (OATC) - North Bay | | http://www.oatc.ca/ | 456 Ferguson Street, North Bay, ON P1B 1X4 (705) 497-1620 |
| Ontario Addiction Treatment Centres (OATC) - Oakville | | http://www.oatc.ca/ | 2510 Hampshire Gate, Unit 2, Oakville, ON L6H 6A2 (905) 901-1882 |
| Oakville Treatment Centre | | | 1108 Speers Road, Oakville, ON L6L 2X4 (905) 842-4848 |
| Lucero Medical Centre - Oakville | | | 2165 Grosvenor Street, Unit 4, Oakville, ON L6H 7K9 (905) 582-0232 |
| Freedom Trail Addiction Clinic | | https://www.freedomtrailaddictionclinic.com/ | 15 Brenda Boulevard, Unit 12, Orangeville, ON L9W 3Y5 (519) 942-8333 |
| Freedom Trail Addiction Clinic | | https://www.freedomtrailaddictionclinic.com/ | 425 West Street North, Unit 20, Orillia, ON L3V 7R2 (705) 325-9547 |

| | | | |
|---|---|---|---|
| Front Street Clinic | | | 188 Mississauga Street East, Orillia, ON L3V 1V9 (705) 329-4000 |
| Ontario Addiction Treatment Centres (OATC) - Oshawa | | http://www.oatc.ca/ | 45 Bloor Street East, Unit 2, Oshawa, ON L1H 3L9 (905) 443-0223 |
| First Step Medical Clinic Oshawa | | | 32 Simcoe Street South, Oshawa, ON L1H 4G2 (905) 720-0506 |
| Sandy Hill Community Health Centre - Opiate Substitution Therapy | | http://www.sandyhillchc.on.ca | 221 Nelson Street, Ottawa, ON K1N 1C7 (613) 569-3488 ext.2106 |
| Ontario Addiction Treatment Centres (OATC) - Ottawa | | http://www.oatc.ca/ | 401 Somerset Street West, Ottawa, ON K2P 0K1 (613) 233-1114 |
| Ontario Addiction Treatment Centres (OATC) - Ottawa West | | http://www.oatc.ca/ | 1318 Carling Avenue, Ottawa, ON K1Z 7K8 (613) 627-0856 |
| Recovery Ottawa | | http://www.methadoneottawa.com | 11 Selkirk Street, Ottawa, ON K1L 6N1 (613) 680-7444 |
| Ontario Addiction Treatment Centres (OATC) - Owen Sound | | http://www.oatc.ca/ | 1161 2nd Avenue East, Owen Sound, ON N4K 2J1 (519) 371-0007 |

| | | | |
|---|---|---|---|
| Ontario Addiction Treatment Centres (OATC) - Parry Sound | | http://www.oatc.ca/ | 32 James Street, Parry Sound, ON P2A 1T5 (705) 774-9669 |
| Ontario Addiction Treatment Centres (OATC) - Pembroke | | http://www.oatc.ca/ | 140 Pembroke Street West, Pembroke, ON K8A 5M8 (613) 735-7469 |
| Ontario Addiction Treatment Centres (OATC) - Peterborough | | http://www.oatc.ca/ | 215 Sherbrooke Street, Peterborough, ON K9J 2N2 (705) 748-0995 |
| ACT Peterborough | | http://www.acttoronto.com/ | 226 Charlotte Street, Peterborough, ON K9J 2T8 (705) 740-0228 |
| First Step Medical Clinic Peterborough | | | 191 Simcoe Street, Peterborough, ON K9H 2H6 (705) 876-1000 |
| Ontario Addiction Treatment Centres (OATC) - Picton | | http://www.oatc.ca/ | 219 Main Street, Picton, ON K0K 2T0 (613) 645-3133 |
| Change Health Care - Picton Clinic | | http://changehealthcare.ca/ | 266 Main Street (Rear Entrance), Picton, ON K0K 2T0 (613) 476-3636 |
| Niagara Health System - Port Colborne General Hospital Methadone Program | | http://www.niagarahealth.on.ca/ | 260 Sugarloaf Street, Port Colborne, ON L3K 2N7 (905) 378-4647 |

| | | | |
|---|---|---|---|
| Ontario Addiction Treatment Centres (OATC) - Port Hope | | http://www.oatc.ca/ | 141 Toronto Street, Port Hope, ON L1A 3S6 (905) 885-7066 |
| Ontario Addiction Treatment Centres (OATC) - Renfrew | | http://www.oatc.ca/ | 627 Fortington Street, Renfrew, ON K7V 1E5 (613) 432-3854 |
| Oak Ridges Addiction Treatment Centre | | | 13085 Yonge Street, Unit 1B, Richmond Hill, ON L4E 3S8 (905) 773-5395 |
| Bluewater Methadone Clinic | | http://bluewatermethadoneclinic.ca/ | 118 Victoria Street North, Sarnia, ON N7T 5W9 (519) 337-5000 |
| Ontario Addiction Treatment Centres (OATC) - Sault Ste. Marie | | http://www.oatc.ca/ | 500 Queen Street East, Sault Ste. Marie, ON P6A 2A1 (705) 759-8080 |
| Algoma Public Health Methadone Maintenance | | http://www.algomapublichealth.com/ | 294 Willow Avenue, Sault Ste. Marie, ON P6B 0A9 (705) 942-4646 |
| Ontario Addiction Treatment Centres (OATC) - Scarborough | | http://www.oatc.ca/ | 2085 Lawrence Avenue East, Scarborough, ON M1R 2Z4 (416) 637-1061 |
| First Step Medical Clinic Scarborough | | | 2681 Eglinton Avenue East, Scarborough, ON M1K 2S2 (416) 264-1715 |

| | | | |
|---|---|---|---|
| Lucero Medical Centre - Scarborough | | | 2657 Eglinton Avenue East, Scarborough, ON M1K 2S2 (647) 340-5855 |
| Vector Health Clinics | | http://www.vectorhealthclinics.ca/ | 9 Progress Avenue, Unit 1A, Scarborough, ON M1P 5A4 (647) 725-9650 |
| Ontario Addiction Treatment Centres (OATC) - Sioux Lookout | | http://www.oatc.ca/ | 64 Front Street, Sioux Lookout, ON P8T 1B1 (807) 737-2200 |
| Change Health Care - Smiths Falls Clinic | | http://changehealthcare.ca/ | 13 Williams Street West, Smiths Falls, ON K7A 1M8 (613) 283-0359 |
| Niagara Health System - Ontario Street Methadone Program | | http://www.niagarahealth.on.ca/ | 155 Ontario Street, St. Catharines, ON L2R 5K3 (905) 378-4647 |
| Segue Clinic St. Catharines | | http://www.segueclinic.com/ | 61 James Street, St. Catharines, ON L2R 5B9 (905) 688-1827 |
| On Trac Clinic | | http://www.towardsrecovery.com/ | 288 St. Paul Street, St. Catharines, ON L2R 3M9 (905) 684-9339 |
| Segue Clinic Stony Creek | | http://www.segueclinic.com/ | 840 Queenston Road, Unit 826, Stoney Creek, ON L8G 4A8 (905) 664-1304 |

| | | |
|---|---|---|
| Methadone Clinic Ontario - Health Center of Stouffville | http://www.methadoneclinicontario.com/ | 6212 Main Street, Suite 203, Stouffville, ON L4A 2S5 (905) 640-1117 |
| Clinic 217 | | 217 Talbot Street, St. Thomas, ON N5P 1B1 (519) 631-9040 |
| Ontario Addiction Treatment Centres (OATC) - Sudbury | http://www.oatc.ca/ | 450 Notre Dame Avenue, Unit 10, Sudbury, ON P3C 5K8 (705) 673-1116 |
| Larch Street Methadone Clinic | | 310 Larch Street, Sudbury, ON P3B 1M1 (705) 669-1111 |
| Applegrove Medical Clinic | | 135 Applegrove Street, Sudbury, ON P3C 1N2 (705) 673-3111 |
| Toronto Addiction Treatment Clinics (TATC) | http://www.tatchealth.com/ | 28 Langstaff Road East, Thornhill, ON L3T 3P8 (905) 709-9955 |
| Lucero Medical Centre - Thunder Bay | | 235 Syndicate Avenue South, Thunder Bay, ON P7E 1E1 (807) 625-5400 |
| Lucero Medical Centre - Thunder Bay North | | 296 Bay Street, Thunder Bay, ON P7B 1R8 (807) 286-0032 |

| | | | |
|---|---|---|---|
| St. Joseph's Health Center - Lakeview Methadone Clinic | | http://www.sjcg.net/services/mental-health_addictions/outreach/lmc/aspx | 710 Victoria Avenue East, Thunder Bay, ON P7C 5P7 (807) 624-3400 |
| Ontario Addiction Treatment Centres (OATC) - Thunder Bay North | | http://www.oatc.ca/ | 119 Cumberland Street North, Thunder Bay, ON P7A 4M3 (807) 768-2910 |
| Ontario Addiction Treatment Centres (OATC) - Thunder Bay South | | http://www.oatc.ca/ | 421 Victoria Avenue East, Thunder Bay, ON P7C 1A6 (807) 622-2900 |
| Ontario Addiction Treatment Centres (OATC) - Thunder Bay Westfort | | http://www.oatc.ca/ | 218 Frederica Street West, Thunder Bay, ON P7C 3W2 (807) 577 3540 |
| Ontario Addiction Treatment Centres (OATC) - Tillsonburg | | http://www.oatc.ca/ | 5 Ridout Street East, Tillsonburg, ON N4G 2C6 (519) 409-6282 |
| ACT Toronto | | http://www.acttoronto.com/ | 1288 Danforth Avenue, Toronto, ON M4J 1M6 (416) 462-0228 |
| ACT Scarborough | | http://www.acttoronto.com/ | 4113-A Lawrence Avenue East, Toronto, ON M1E 2S2 (647) 931-7316 |

| | | | |
|---|---|---|---|
| Ontario Addiction Treatment Centres (OATC) - North York | | http://www.oatc.ca/ | 1111 Finch Avenue West, Suite 100D Toronto, ON M3J 2E5 (416) 736-6279 |
| Ontario Addiction Treatment Centres (OATC) - Bloor West | | http://www.oatc.ca/ | 799 Bloor Street West, Toronto, ON M6G 1L8 (647) 748-6282 |
| Ontario Addiction Treatment Centres (OATC) - Danforth | | http://www.oatc.ca/ | 1154 Danforth Avenue, Toronto, ON M4J 1M3 (647) 748-8780 |
| Ontario Addiction Treatment Centres (OATC) - Willowdale | | http://www.oatc.ca/ | 5460 Yonge Street, Unit 106, Toronto, ON M2N 6K7 (416) 901-5540 |
| Breakaway Addiction Services - Satelite | | http://www.breakawayaddictions.ca/ | 21 Strickland Avenue, Toronto, ON M6K 3E6 (416) 537-9346 |
| Centre for Addiction and Mental Health Addiction Medicine Service | | http://www.camh.ca/en/hospital/Pages/home.aspx | 100 Stokes Street, Bell Gateway Building, 3rd Floor, Toronto, ON M6J 1H4 (416) 535-8501 ext.36019 |
| True North Medical Centre | | http://www.truenorthmedical.com/ | 69 Queen Street East, Unit 101, Toronto, ON M5C 1R8 (416) 640-2389 |
| Toronto Addiction Treatment Clinics (TATC) | | http://www.tatchealth.com/ | 1261 Kennedy Road, Toronto, ON M1P 2L4 (416) 490-0499 |

| | | |
|---|---|---|
| Horizons Opioid Treatment Service - North York | http://horizonsclinic.ca/ | 1575 Jane Street, Toronto, ON M9N, 1-855-742-9449 |
| Ontario Addiction Treatment Centres (OATC) - Vanier | http://www.oatc.ca/ | 263 Montreal Road, Vanier, ON K1L 8C7 (613) 749-9666 |
| South Georgian Bay Community Health Centre | http://www.southgeorgianbaychc.ca/ | 14 Ramblewood Drive, Unit 202, Wasaga Beach, ON L9Z 0C4 (705) 422-1888 |
| Segue Clinic Welland | http://www.segueclinic.com/ | 626 East Main Street, Welland, ON L3B 3Y2 (905) 788-3614 |
| Ontario Addiction Treatment Centres (OATC) - Windsor | http://www.oatc.ca/ | 1101 University Avenue West, Windsor, ON N9A 5T1 (519) 252-0991 |
| Erie - St. Clair Clinic | http://www.eriestclairclinic.ca/ | 1574 Lincoln Road, Windsor, ON N8Y 2J4 (519) 977-9772 |
| Goyeau Street Clinic | | 1078 Goyeau Ave, Windsor, ON N9A 1J1 (519) 256-1519 |
| Horizons Opioid Treatment Service - Windsor | http://horizonsclinic.ca/ | 1428 Ouellette Avenue, Windsor, ON N8X 5B2 1-855-742-9449 |

| | | | |
|---|---|---|---|
| Clinic 461 | | | 461    Dundas    Street, Woodstock, ON N4S 1C2 (519) 421-9557 |
| Native Council of Prince Edward Island | PEI | http://www.ncpei.com/ | tyrone@ncpei.com |
| Prince Edward Island Department of Health | PEI | http://www.gov.pe.ca/hss/addiction/ | healthinput@gov.pe.ca |
| 360 DTX | Québec | | info@360dtx.com |
| Andy's House Treatment Centre | QuébecQuébec | www.andyshouse.com | info@andyshouse.com |
| Aube de la Paix (1993) Inc | Québec | www.laubedelapaix.com | aubepaix@hotmail.com |
| Aux Rayons du Soleil | Québec | www.centreauxrayonsdusoleil.com | cears@cgocable.ca |
| CARAT | Québec | | centrecarat@videotron.ca |

| Carrefour de l'Espoir | Québec | carrefourdelespoir.org | contact@carrefourdelespoir.org |
| Carrefour Le Point Tournant inc. | Québec | www.carrefourlepointtournant.com/ | carrefourlepointtournant@hotmail.com |
| Centrale régionale ADH | Québec | www.maisonletremplin.com | info@maisonletremplin.com |
| Centre André-Boudreau Centre de réadaptation pour les personnes ayant une dépendance | Québec | | centredoc.cab@ssss.gouv.qc.ca |
| Centre Booth (Armée du Salut) - L'Ancrage | Québec | | centreboothmtl@bellnet.ca |
| Centre Caroline Roy | Québec | www.lecentrecarolineroy.ca | info@lecentrecarolineroy.ca |
| Centre CASA | Québec | www.centrecasa.qc.ca | casa@centrecasa.qc.ca |
| Centre Corps, Âme et Esprit | Québec | www.corpsameesprit.ca | ccae@abacom.com |

| Centre de protection et de réadaptation de la Côte-Nord | Québec | www.cprcn.qc.ca | sandra.morin.09cisss@ssss.gouv.qc.ca |
|---|---|---|---|
| Centre de réadaptation en dépendance de Chaudière-Appalaches | Québec | www.crdca.ca | info.crdca@ssss.gouv.qc.ca |
| Centre de réadaptation en dépendance de Jonquière | Québec | www.csssjonquiere.qc.ca/1730_fr.html | com.usagers@ssss.gouv.qc.ca |
| Centre de réadaptation en dépendance de Lanaudière Charlemagne | Québec | | 100, rue Grenier, suite 150 Charlemagne (Québec) J5Z 4C6 450 657-0071 |
| Centre de réadaptation en dépendance de Lanaudière Terrebonne | Québec | | 1045, chemin du Coteau Terrebonne (Québec) J6W 5Y8 450 492-7444 |
| Centre de réadaptation en dépendance de l'Outaouais | Québec | www.jellinek.org | jellinek@jellinek.org |
| Centre de réadaptation en dépendance de Montréal | Québec | www.dependancemontreal.ca | info.cdc@ssss.gouv.qc.ca |
| Centre de réadaptation en dépendance de Québec | Québec | www.cruv.qc.ca | martine.bouffard@ssss.gouv.qc.ca |

| | | | |
|---|---|---|---|
| Centre de réadaptation en dépendance Domrémy-de-la-Mauricie - Centre du Québec | Québec | www.domremymcq.ca | domremymcq@ssss.gouv.qc.ca |
| Centre de réadaptation en dépendance Le Virage | Québec | http://www.levirage.qc.ca/nous-joindre.php | Tel. : 450 619-6009 (Candiac)<br><br>Tel. : 450 375-0022 (Granby)<br><br>Tel. : 450 651-3113 (Longueil)<br><br>Tel. : 450 373-5934 (Salaberry-de-Valleyfield)<br><br>Tel. : 450 746-1226 (Sorel-Tracy)<br><br>Tel. : 450 443-2100 (St-Hubert)<br><br>Tel. : 450 771-6622 (St-Hyacinthe)<br><br>Tel. : 450 348-1600 (St-Jean-sur-Richelieu) |
| Centre de réadaptation en dépendances de Lanaudière Joliette | Québec | | 265, rue Lavaltrie Sud Joliette (Québec) J6E 5X7<br>450 755-6655 |
| Centre de réadaptation en dépendances de l'Estrie | Québec | www.santeestrie.qc.ca/crdsm | 1930 King Street West Sherbrooke (Québec) J1J 2E2<br>819-821-2500 |
| Centre de réadaptation Foster | Québec | http://crdfoster.org/ | 6 Foucreault Street St-Philippe (Québec) J0L 2K0<br>Tel.: 450 659-8911<br>Fax: 450 659-7173 |

| | | | |
|---|---|---|---|
| Centre de réadaptation pour les personnes ayant une dépendance | Québec | www.centrenormand.org | Norman Centre 621, rue de l'Harricana Amos (Québec) J9T 2P9<br><br>Phone: (819) 732-8241<br>Fax: (819) 727-2210 |
| Centre de santé de Chibougamau | Québec | | info.crsssbj@ssss.gouv.qc.ca |
| Centre de santé Isle-Dieu | Québec | | julie_pelletier@ssss.gouv.qc.ca |
| Centre de traitement des dépendances Le Rucher | Québec | www.centrelerucher.ca | vhourdeaux@centrelerucher.ca |
| Centre Domrémy des Appalaches inc. | Québec | http://aqcid.com/fr/nous-joindre | info@aqcid.com |
| Centre Le Maillon de Laval<br>Centre de réadaptation pour les personnes ayant une dépendance | Québec | http://www.dependancelaval.ca/ | 312, boulevard Cartier Ouest Laval (Québec) H7N 2J2 Tel. 450 975-4054 |
| Centre l'Envolé de Granby | Québec | http://www.centrelenvolee.com/ | info@lenvolee.ca |

| | | | |
|---|---|---|---|
| Centre L'Escale Centre de santé et de services sociaux de la Haute-Gaspésie | Québec | | Commentaire sur le site : genevieve.cloutier.cisssgaspesie@ssss.gouv.qc.ca |
| Centre Nouveau Regard | Québec | www.centrenouveauregard.com | nouveauregard@citenet.net |
| Centre Nouvelle Vie (Pavillon La Volière) | Québec | www.centrenouvellevie.com | centrenouvellevie@live.ca |
| Centre Nu-hab inc. (Ascot Corner) | Québec | www.nuhab.ca | info@nuhab.ca |
| Centre sur l'Autre Rive | Québec | www.centreautrerive.org | autrerive@bellnet.ca |
| Centre Toxico-Stop (Réinsertion sociale) | Québec | | info@toxico-stop.com |
| Centre Toxico-Stop (Soutien à la désintoxication) | Québec | | info@toxico-stop.com |
| Clinique Nouveau départ | Québec | www.cliniquenouveaudepart.com | infos@cliniquenouveaudepart.com |

| CRAN - Centre de recherche et d'aide pour narcomanes | Québec | www.cran.qc.ca | info@cran.qc.ca |
|---|---|---|---|
| Dianova - Centre de Terrebonne | Québec | www.dianova.ca | dianova@dianova.ca |
| Domaine Orford - Toxi-Co-Gîtes 2003 | Québec | www.toxicogite.ca | info@toxicogite.ca |
| Domaine Perce-Neige | Québec | www.domaineperceneige.com | info@domaineperceneige.com |
| Havre du Fjord inc. | Québec | www.havredufjord.com | administration@havredufjord.com |
| Heritage Home Foundation | Québec | www.soberrecovery.ca/home.asp | info@heritage-home.com |
| La Croisée des Chemins | Québec | www.croiseedeschemins.ca | croiseedeschemins@cgocable.ca |
| La Futaie | Québec | centrelafutaie.com/ | info@centrelafutaie.com |

| La Maisonnée Paulette Guinois | Québec | www.lamaisonneepauletteguinois.com | info@lamaisoneepaulettegui nois.com |
|---|---|---|---|
| La Montée Centre de prévention et de traitement en dépendances du Bas-St-Laurent | Québec | www.centrelamontee.com | lamontee@videotron.ca |
| La Piaule de Val d'Or inc. | Québec | www.lapiaule.org | Info@lapiaule.org |
| LA VIGILE (Réseau daccueil pour les agents et agentes de la Paix) | Québec | www.lavigile.qc.ca | info@lavigile.qc.ca |
| L'Arrimage | Québec | sites.rapidus.net/larrimage/ | larrimage@globetrotter.net |
| L'Autre Côté de l'Ombre | Québec | | (819) 222-8400 |
| Le Domaine de la Sobriété | Québec | www.domainedelasobriete.com | info@domainedelasobriete.c om |
| Le Grand Chemin inc. | Québec | http://www.legrandchemin.qc.ca/ | info@legrandchemin.qc.ca |

| | | | |
|---|---|---|---|
| Le Grand Chemin inc. (Montréal) | Québec | www.legrandchemin.qc.ca | info@legrandchemin.qc.ca |
| Le Grand Chemin inc. (Trois-Rivières) | Québec | www.legrandchemin.qc.ca | info@legrandchemin.qc.ca |
| Le Refuge des Rescapés | Québec | | refugedesrescapes@msn.com |
| Les centres Bonséjour (Saint-Jérôme) | Québec | www.centrebonsejour.com | info@centrebonsejour.com |
| L'Escale Notre-Dame | Québec | www.escalenotredame.com | lendinc@cooptel.qc.ca |
| L'Estran Centre de réadaptation en toxicomanie du Bas-Saint-Laurent | Québec | | lestran@cgocable.ca |
| Life Science Addiction Treatment | Québec | www.life-science.ca | info@life-science.ca |
| Maison Carignan inc. | Québec | www.maisoncarignan.qc.ca | alain@maisoncarignan.qc.ca |

| | | | |
|---|---|---|---|
| Maison d'aide La Villa Saint-Léonard de Portneuf | Québec | www.villa-st-leonard.org | info@villa-st-leonard.org |
| Maison de Job | Québec | | maisondejob@maisondejob.org |
| Maison de thérapie Victoriaville-Arthabaska | Québec | www.mdtva.org | info@mdtva.org |
| Maison de transition de la Batiscan | Québec | www.maisonbatiscan.com/ | maisonbatiscan@hotmail.com |
| Maison d'entraide L'Arc-en-Ciel | Québec | www.maison-arc-en-ciel.org | vincent.roy@maison-arc-en-ciel.org |
| Maison d'hébergement Le Séjour inc. | Québec | www.hebergementlesejour.ca | heberg-lesejour@bellnet.ca |
| Maison du Pharillon | Québec | www.pharillon.org | administration@pharillon.org |
| Maison Face à l'avenir | Québec | www.maisonfacealavenir.com | maisonfacealavenir2008@hotmail.ca |

| Maison Jean Lepage | Québec | | maisonjeanlepage@biz.videotron.ca |
|---|---|---|---|
| Maison Jean-Lapointe | Québec | www.maisonjeanlapointe.com | info@maisonjeanlapointe.com |
| Maison La Margelle inc. | Québec | www.maisonlamargelle.com | maisonlamargelle@hotmail.com |
| Maison La Passerelle | Québec | www.maisonlapasserelle.ca | info@maisonlapasserelle.ca |
| Maison L'Alcôve inc. | Québec | www.maisonlalcove.com | info@maisonlalcove.com |
| Maison l'Auberivière | Québec | www.lauberiviere.org | maison@lauberiviere.org |
| Maison L'Épervier | Québec | www.maisonlepervier.com | info@maisonlepervier.com |
| Maison L'Exode inc. - Pavillon Alpha | Québec | www.maison-exode.org | info@maison-exode.org |

| Maison L'Exode inc. - Pavillon André-Dumont (Siège social) | Québec | www.maison-exode.org | info@maison-exode.org |
|---|---|---|---|
| Maison L'Exode inc. - Pavillon Émilie-Gamelin | Québec | www.maison-exode.org | info@maison-exode.org |
| Maison l'Intégrale | Québec | www.toxicogite.ca | info@maisonlintegrale.com |
| Maison l'Odyssée Jeu Alcool Drogues | Québec | www.maisonlodyssee.com | info@maisonlodyssee.com |
| Maison Lyse Beauchamp | Québec | www.maisonlysebeauchamp.org | info@maisonlysebeauchamp.org |
| Maison Nouvelle Vie | Québec | | maisonnouvellevie@live.ca |
| Maison Raymonde-Chopin-Péladeau | Québec | www.lesmaisonspeladeau.com | infofemme@lesmaisonspeladeau.com |
| Manoir Aylmer (Toxi-Co-Gîtes 2003 inc.) | Québec | www.toxicogite.ca | info@toxicogite.ca |

| | | | |
|---|---|---|---|
| Pavillon Chatsworth inc. | Québec | | info@infochatsworthpavilion.com |
| Pavillon de l'Assuétude (Saint-Guillaume) | Québec | www.pavillondelassuetude.ca | assuetude@bellnet.ca |
| Pavillon de l'Assuétude (Shawinigan) | Québec | www.pavillondelassuetude.ca | reception@pavillondelassuetude.ca |
| Pavillon Hamford | Québec | | direction@pavillonhamford.com |
| Pavillon l'Entre-temps Réhabilitation Beauce | Québec | http://www.rehabilitationdebeauce.com/ | charles.d@rehabilitationdebeauce.com |
| Pavillon L'Essence Ciel | Québec | www.lessenceciel.org | info@lessenceciel.org |
| Pavillon Louis-Cyr | Québec | www.pavillonlouiscyr.com | info@pavillonlouiscyr.com |
| Pavillon Pierre Péladeau | Québec | www.lesmaisonspeladeau.com | infohomme@lesmaisonspeladeau.com |

| | | | |
|---|---|---|---|
| Pavillons du Nouveau Point de Vue | Québec | www.nouveaupointdevue.com | pnpv@qc.aira.com |
| Point de Rencontre | Québec | | pointderencontre@cgocable.ca |
| Portage | Québec | www.portage.ca | web@portage.ca |
| Portage - Siège social | Québec | www.portage.ca | info@portage.ca |
| Réhabilitation Beauce | Québec | www.rehabilitationdebeauce.com | michelem@rehabilitationbeauce.com |
| Résidence Le Portail | Québec | www.residenceleportail.org | info@residenceleportail.org |
| Résidences Mission Bon Accueil | Québec | www.missionbonaccueil.com | cmorgan@missionba.com |
| Sentier du Nouveau Jour | Québec | www.sentierdunouveaujour.com | info@sentierdunouveaujour.com |

| | | | |
|---|---|---|---|
| Toxi-Co-Gîte inc. (Upton) | Québec | www.toxicogite.ca | info@toxicogite.ca |
| Un foyer pour toi | Québec | www.foyerpourtoi.org | info@foyerpourtoi.org |
| Villa de la Paix II | Québec | www.villadelapaix.ca | info@villadelapaix.ca |
| Villa Ignatia | Québec | www.villaignatia.com | villaignatia@ccapcable.com |
| Vision despoir de sobriété | Québec | | vision@bellnet.ca |
| Calder Centre | Saskatchewan | https://www.saskatoonhealthregion.ca/locations_services/Services/mhas/Pages/ContactUs-ReferralInformation.aspx | general.inquiries@saskatoonhealthregion.ca |
| Cree Nations Treatment Haven | Saskatchewan | http://www.creenationstreatmenthaven.ca/ | cree.nations@sasktel.net |
| Leipzig Serenity Retreat | Saskatchewan | http://www.leipzigserenityretreat.com | adminleipzig@sasktel.net |

| Métis Addictions Council of Saskatchewan | Saskatchewan | http://www.macsi.ca/ | macsioffice@shaw.ca |
|---|---|---|---|
| Newo Yotina Friendship Centre | Saskatchewan | http://www.afcs.ca/newo-yotina.html | ed_afcs@sasktel.net |
| Pine Lodge | Saskatchewan | http://www.pinelodgetreatment.ca | pinelodge@sasktel.net |
| Ranch Ehrlo Society | Saskatchewan | http://www.ehrlo.com | inquiries@ranchehrlo.ca |



A Computershare company.

OxyContin® and  OxyNEO® Notice of Settlement Hearing Overview
RicePoint | Private & Confidential
March 24, 2017

**Key Notes and Assumptions:**
- Counsel to provide publication notice and press release  translation
- All media publication content and placement is subject to final review and approval by the publications' editorial departments

| Media Notice | Unit/ Description | # of Units | Total Cost | Notes |
|---|---|---|---|---|
| *Newspapers* | | | | |
| Globe and Mail | 1/4 page advertisement/ News | 2 | | **Ontario.** Weekend placement. Published twice |
| La Presse | 1/4 page advertisement/ News | 2 | | **Quebec.** Weekend placement. Published twice |
| Hamilton Spectator | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| St. Catherine's Standard | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| Waterloo Record | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| Chronicle Herald | 1/4 page advertisement/ News | 2 | | **Nova Scotia.** Weekend placement. Published twice |
| News Yukon | 1/4 page advertisement/ Legal | 1 | | **Yukon.** Weekend placement |
| NWT | 1/4 page advertisement/ Legal | 1 | | **NWT.** Weekend placement |
| Nunavut | 1/4 page advertisement/ Legal | 1 | | **Nunanvut.** Weekend placement |
| Regina Leader Post (Post Media) | 1/4 page advertisement/ News | 2 | | **Saskatchewan.** Weekend placement. Published twice |
| Montreal Gazette (Post Media) | 1/4 page advertisement/ News | 1 | | **Quebec.** Weekend placement |
| Vancouver Province (Post Media) | 1/4 page advertisement/ News | 1 | | **British Columbia.** Weekend placement |
| Vancouver Sun (Post Media) | 1/4 page advertisement/ News | 1 | | **British Columbia.** Weekend placement |
| Victoria Times Colonist (Post Media) | 1/4 page advertisement/ News | 1 | | **British Columbia.** Weekend placement |
| Edmonton Journal (Post Media) | 1/4 page advertisement/ News | 1 | | **Alberta.** Weekend placement |
| Calgary Herald (Post Media) | 1/4 page advertisement/ News | 1 | | **Alberta.** Weekend placement |
| Saskatoon Star Phoenix (Post Media) | 1/4 page advertisement/ News | 1 | | **Saskatchewan.** Weekend placement |
| Ottawa Citizen (Post Media) | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| Winnipeg FP | 1/4 page advertisement/ News | 1 | | **Manitoba.** Weekend placement |
| Toronto Sun | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| London FP | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| Sudbury Star | 1/4 page advertisement/ News | 1 | $    150,444.22 | **Ontario.** Weekend placement |
| Windsor Star | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| St. John's Telegram | 1/4 page advertisement/ News | 1 | | **Newfoundland.** Weekend placement |
| Charlettetown Guardian | 1/4 page advertisement/ News | 1 | | **P.E.I.** Weekend placement |
| Moncton Times and Transcript | 1/4 page advertisement/ News | 1 | | **New Brunswick.** Weekend placement |
| Toronto Star | 1/4 page advertisement/ News | 1 | | **Ontario.** Weekend placement |
| Vancouver Metro | 1/4 page advertisement/ News | 1 | | **British Columbia.** Publishes only on weekdays (recommended Friday publication) |
| Calgary Metro | 1/4 page advertisement/ News | 1 | | **Alberta.** Publishes only on weekdays (recommended Friday publication) |
| Edmonton Journal Metro | 1/4 page advertisement/ News | 1 | | **Alberta.** Publishes only on weekdays (recommended Friday publication) |
| Montreal Metro | 1/4 page advertisement/ News | 1 | | **Quebec.** Publishes only on weekdays (recommended Friday publication) |
| Toronto Metro | 1/4 page advertisement/ News | 1 | | **Ontario.** Publishes only on weekdays (recommended Friday publication) |
| Ottawa Metro | 1/4 page advertisement/ News | 1 | | **Ontario.** Publishes only on weekdays (recommended Friday publication) |
| Professional Services - Newspapers:<br><br>1. Obtain price for all outlets<br>2. Optimize notice for readability and size<br>3. Sign off from counsel on the notice proofs<br>4. Set notice to the dimensions of each outlet<br>5. Book space and confirm pricing<br>6. Draft insertion order confirming publication date, section and price. Receive signoff and monitor progress<br>7. Confirm notice publication, collect tear sheets and final analytics<br>8. Draft and circulate notice report<br>9. Process payments | | | | Publishes only on weekdays (recommended Friday publication) |
| **Sub Total Newspapers** | | | $        150,444.22 | |
| *Press Release Distribution* | | | | |

| CNW Release (English and French) | | | | | Comprehensive distribution, 500 words in English and the equivalent in French. Assumption: Counsel to provide translations. |
|---|---|---|---|---|---|
| Professional Services - Press Release Distribution:<br><br>1. Production and pricing<br>2. Optimize notice for readability and size<br>3. Sign off from counsel on the notice proofs<br>4. Set notice to distribution<br>5. Book and confirm pricing<br>6. Draft insertion order confirming live date and price. Receive signoff and monitor progress<br>7. Confirm run, collect final analytics<br>8. Draft and circulate notice report<br>9. Process payments | | | | $      1,615.00 | |
| **Sub Total - Press Release** | | | | $      **1,615.00** | |
| *Internet Advertising* | | | | | |
| Google & YouTube Ads | | | | | |
| Professional Services - Internet:<br><br>1. Production and pricing for all web content.<br>2. Draft and produce notice advertisements and optimize for readability and size.<br>3. Sign off from counsel on all notice proofs.<br>4. Set notice to the dimensions of each outlet.<br>5. Book space and confirm pricing.<br>6. Draft insertion order confirming publication date, section and price. Receive signoff and monitor progress.<br>7. Confirm notice publication and collect tear sheets.<br>8. Monitor progress, optimize for best results. Draft and circulate notice report.<br>9. Process payments with website. | | | | $     15,000.00 | |
| **Sub Total - Internet Advertising** | | | | $    **15,000.00** | |
| **Direct Notice** | | | | | |
| **Email Drafting and Translation** | | | | | |
| *Draft introductory email for counsel approval* | | | | | |
| *Translate* | | | | | |
| **Email Blast:** | | | | | |
| *Extract email addresses from database. Format data for email blast.* | | | | | |
| *Send email to all records* | | | | | |
| **Customer Support** | | | | | |
| *Calls and emails from participants (# of hours TBD)* | | | | | Final total subject to final cost of customer support |
| Direct Mail | | | | $      6,117.46 | |
| *Cleanse list and format for merging. Print and prepare packages for mailing & postage.* | | | | | English cover letter (1 impression), English notice (1 impression), materials, b&w, window envlps, <30g Can postage, record return mail. March 2017 postage rate. |
| *Cleanse list and format for merging. Print and prepare packages for mailing & postage.* | | | | | Quebec addresses receive French & English cover letter and notice (4 impressions), materials, b&w, window envlps, <30g Can postage, record return mail. March 2017 postage rate. |
| **Professional Services** | | | | | |
| *Data management* | | | | | |
| *Project management* | | | | | |
| **Sub Total - Direct Notice:** | | | | $      **6,117.46** | Final costs subject to final number of letters and emails sent and customer support hours. |

| **Totals** | | | | |
|---|---|---|---|---|
| **Total Notice Program Before Tax:** | | | $    173,176.68 | |
| **Tax:** | | | $     22,512.97 | |
| **Total Notice Program After Tax:** | | | $    **195,689.64** | |

\*Prices are valid for 30 days

\*\*Cost may vary slightly at time of booking

## Exhibit "J"

**CANADIAN OXYCONTIN® AND OXYNEO® SETTLEMENT – OPT OUT FORM**

THIS IS NOT A REGISTRATION FORM OR A CLAIM FORM.  THIS FORM EXCLUDES YOU FROM THE SETTLEMENT CLASS.
DO NOT USE THIS FORM IF YOU WANT TO PARTICIPATE UNDER THE SETTLEMENT.

**Section 1 - Product user identification:**

First Name  _____    Last Name  _____

Date of Birth (DD/MM/YYYY) _____

Street Address  _____

City  _____

Province  _____

Postal Code  _____

Telephone (Daytime)  _____

Telephone (Alternate)  _____

Email  _____

Health Card Number  _____

Date of Death (if applicable) _____    Death Certificate Attached ☐
                                      DD/MM/YYYY

**Section 2 - Identification of the person signing this Opt Out Form (select only one option):**

☐  Product user - I used OxyContin® and/or OxyNEO®.  By completing and signing this Opt Out Form I am excluding myself from participation and potential entitlement in the Canadian OxyContin® and OxyNEO® Settlement Agreement.  It is my intention to pursue an individual litigation against the defendants.

☐  Legal representative – I am the legal representative for the above identified product user.  By completing and signing this Opt Out Form I am excluding the product user from participation and potential entitlement in the Canadian OxyContin® and OxyNEO® Settlement Agreement. It is our intention to pursue an individual litigation against the defendants.

*If submitting as a legal representative you are required to provide documentation to confirm your appointment.*

**Section 3 – Signature:**

Date _____
     DD/MM/YYYY

Name of product user _____

Signature of product user _____


Date _____
     DD/MM/YYYY

Name of legal representative _____

Signature of legal representative _____


**The deadline to submit an Opt Out Form is <mark>MONTH DAY 201</mark>7**

Completed Opt Out Forms should be sent to:

**CANADIAN OXYCONTIN® AND OXYNEO® SETTLEMENT
PO Box 3355
London, ON N6A 4K3**