**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**SECOND STIPULATION AND AGREED ORDER AMONG THE OFFICIAL
COMMITTEE AND THE STIPULATING IACs
REGARDING DISCOVERY DEADLINES IN THE CHAPTER 11 CASES**

The Official Committee of Unsecured Creditors (the "**Official Committee**")[2] appointed in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of Purdue Pharma L.P. and certain of its affiliates that are debtors in possession (collectively, the "**Debtors**"), and the Independent Associated Companies (the "**IACs**") party hereto (the "**Stipulating IACs**"), by and through their undersigned counsel, hereby stipulate and agree as set forth below in this stipulation and agreed order (the "**Stipulation**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the *Stipulation and Agreed Order among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases*, dated June 22, 2020 [ECF No. 1346].

**Recitals**

A.      On September 15, 2019, each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

B.      On September 26, 2019, the Office of the United States Trustee for Region 2 appointed the Official Committee pursuant to Bankruptcy Code section 1102(a) to act as a fiduciary for and represent the interests of all unsecured creditors in the Chapter 11 Cases. *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated September 27, 2019 [ECF No. 131].

C.      On March 25, 2020, the Official Committee filed the *Ex Parte Motion of the Official Committee of Unsecured Creditors of Purdue Pharma, et al. for an Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [ECF No. 981], which motion was granted by order of the Court on March 27, 2020 [ECF No. 992] (as amended by the *Amended Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006 Authorizing Examination of Third Parties*, dated April 14, 2020 [ECF No. 1008], the "**Official Committee Rule 2004 Order**"). By the Official Committee Rule 2004 Order, the Court authorized the Official Committee (and certain other parties), to conduct an examination of, and obtain documents (including electronically stored information ("**ESI**")) from the Initial Covered Sackler Persons ("**ICSPs**"). Following entry of the Official Committee Rule 2004 Order, the Official Committee issued subpoenas to the ICSPs on March 31, 2020.

D.  On April 26, 2020, the Official Committee, through its counsel Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**"), submitted a letter to the Court seeking resolution of certain discovery disputes, including disputes relating to production of documents relating to the IACs.

E.  During a hearing on May 1, 2020, the Court directed counsel for the ICSPs to instruct the IACs, entities which the ICSPs directly or indirectly own, to appoint counsel to coordinate with the Official Committee regarding discovery in these cases, and to instruct each to accept service of a subpoena or explain why they cannot. Hearing Tr. at 87-88.

F.  On or around May 5, 2020, the ICSPs relayed the Court's instructions to Bryan Lea, who is employed by Mundipharma International Limited, one of the IACs, and acts as global (ex-United States) General Counsel for other IACs.

G.  On June 22, 2020, the Official Committee and the IACs party thereto executed a Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases, which was so ordered by the Court on July 7, 2020 (the "**First Discovery Stipulation**") [ECF Nos. 1295, 1346] pertaining to various discovery issues. All obligations under the First Discovery Stipulation continue unless expressly eliminated or modified.

H.  Royer Cooper Cohen Braunfeld LLC ("**RCCB**") has, in accordance with the Parties' First Discovery Stipulation, completed its due diligence with respect to identifying IACs and advises it was retained by 159 IACs, and will continue to investigate additional potential IACs about which the Official Committee may inquire.

I.       As of June 30, 2020, RCCB advises that it has been authorized by 136 IACs to accept service of subpoenas on their behalf, as set forth in the Master IAC List that RCCB prepared in accordance with the First Discovery Stipulation (the "**Master List**").

J.       The First Discovery Stipulation required the Official Committee, on or before June 30, 2020, to provide RCCB with a draft of the subpoena (the "**Draft Subpoena**") that the Official Committee intended to serve on IACs. On June 26, 2020, the Official Committee fulfilled this obligation (the "**Delivery Date**"). The Draft Subpoena substantially comprised the items contained in the Official Committee's March 31, 2020 subpoenas on the ICSPs that were highlighted for RCCB by the Committee on May 25, 2020, and by counsel for the ICSPs on May 5, 2020. As mandated by the First Discovery Stipulation, on the Delivery Date the Official Committee also identified for RCCB the items of the Draft Subpoena that the Official Committee considers to be the priority requests, (the "**Priority Requests**"), without waiving or withdrawing any other requests including the balance of the requests in the Draft Subpoena (the "**Remaining Requests**").

K.       On July 7, 2020, pursuant to the First Discovery Stipulation, the Stipulating IACs provided to the Official Committee a spreadsheet that included (i) 41 individuals that the Stipulating IACs identified as all of the individuals included on Exhibit A to the Official Committee's June 14, 2020 email to RCCB [ECF No. 1295, Exh. 1] who have or have had an IAC-hosted email account, with the exception of four individuals included on Exhibit A to the Official Committee's June 14, 2020 email to RCCB [ECF No. 1295, Exh. 1] that the Parties have since determined also have or have had an IAC-hosted email account, and (ii) nine additional individuals

whose IAC-hosted email accounts the IACs believe are likely to include information responsive to the Draft Subpoena.

L.  The Parties have conferred, and will continue to confer, in good faith on a variety of matters with respect to the Chapter 11 Cases and have reached the agreements set forth below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1.  On July 6, 2020, the Official Committee provided by email to RCCB a copy of the final form of its subpoena on the IACs (the "**IAC Subpoena**"), which was substantially identical to the Draft Subpoena delivered to RCCB on June 26, 2020.

2.  For the avoidance of doubt, the IAC Subpoena includes each of the Priority Requests and the Remaining Requests as defined in the First Discovery Stipulation and identified for RCCB by the Official Committee on the Delivery Date. On July 6, 2020, the date on which the Court entered its order authorizing the Official Committee to conduct an examination of the IACs, the IAC Subpoena was deemed to have been served on each IAC identified on the IAC Master List as having authorized RCCB to accept service on its behalf. The Official Committee may in its sole discretion withdraw its service of the IAC Subpoena on any Stipulating IAC by written notice to RCCB, which notice may be in the form of an email.

3.  A Stipulating IAC's willingness to enter into this Stipulation and to accept service of a subpoena and/or comply with the Official Committee's discovery requests and the Court's rulings or instructions concerning discovery disputes with the Official Committee shall not be, and shall not be construed as, (i) consent by a Stipulating IAC, to jurisdiction in the Bankruptcy Court

5

or any other forum in the United States for any purpose other than enforcement of such subpoena and this Stipulation; (ii) an agreement regarding the admissibility of any materials produced; or (iii) a waiver by a Stipulating IAC of jurisdictional defenses or objections to the service of any subpoena or other documents or process, provided, however, that a Stipulating IAC that consents to service of a subpoena pursuant to the Court's May 1 instructions and as identified on the Master IAC List waives its right to object on the grounds of improper service to any subpoena delivered by counsel to the Official Committee to such Stipulating IAC's counsel. For the avoidance of doubt, the Official Committee does not waive or otherwise relinquish its right to argue that a Stipulating IAC is subject to jurisdiction in any forum in the United States for any purpose, including the Bankruptcy Court, on any grounds other than such Stipulating IAC's consent to the terms of this stipulation and/or agreement to accept service of a subpoena as set forth herein.

### I.    Identification of Custodians

4.     The Official Committee and the Stipulating IACs have identified thirty one (31) custodians (the "**Phase I Custodians**"), each of whom is likely to have ESI, as defined in Section II below, responsive to the IAC Subpoena.

5.     Fifteen of the Phase I Custodians have email accounts which are housed exclusively in a Microsoft Office 365 exchange server (the "**Initial Phase I Custodians**").

6.     The balance of Phase I Custodians (the "**Remaining Phase I Custodians**") have email accounts which are housed across several different email servers or archive environments, which include Office 365, locally-hosted email exchanges which were established for particular IACs over time, Enterprise Vault, and a handful of locally-maintained back up storage volumes.

7. Attached hereto and incorporated herein as Appendix A is the Phase I Custodian ESI inventory, which was prepared by the Stipulating IACs to represent the amount, distribution, and location of the email data for each of the Phase I Custodians that is now available, as well as certain historical context respecting the hosting and retention practices for IAC emails.

8. The Phase I Custodians set forth in Appendix A shall not be construed as an express or implied limitation on the final list of custodians to be identified for the IACs.

9. On or before July 31, 2020, the Parties will complete their meet and confer efforts to identify a list of additional custodians (the "**Phase II Custodians**") who are likely to have information responsive to the IAC Subpoena from whom the Stipulating IACs will collect ESI, as defined in Section II below (collectively, the Phase I Custodians and the Phase II Custodians, are referred to herein as the "**Final IAC Custodians**"). If the Parties have not reached an agreement on the list of Final IAC Custodians by that date, either side may apply to the Court for relief pursuant to paragraph 36 below.

## II. Identification and Production of ESI

10. For the purposes of this Stipulation, "**ESI**" shall mean emails and electronic documents, text messages, and other forms of electronic messages, to the extent such emails and electronic documents, text messages, and other forms of electronic messages, are in the possession, custody or control of the Stipulating IACs, including all available attachments to and metadata regarding such emails and electronic documents, text messages, and other forms of electronic messages. Counsel for the Stipulating IACs shall (i) make a good faith inquiry to identify and (ii) shall engage in reasonable searches to collect available ESI from all means of electronic

7

communication used by the Final IAC Custodians, including by retrieving ESI from current or former company servers and phones and back up tapes as relevant.

11. By July 24, 2020, RCCB shall have gathered, and made ready for running search terms against, all available ESI in the possession, custody or control of the Stipulating IACs for the Initial Phase I Custodians and all ESI contained in the Microsoft Office 365 email server referenced in paragraph 5 for the Remaining Phase I Custodians (collectively the "**Initial IAC ESI**").

12. By July 31, 2020, RCCB shall have gathered, and made ready for running search terms against, all ESI in the possession, custody or control of the Stipulating IACs for the Remaining Phase I Custodians, which was not initially captured as Initial IAC ESI (the "**Remaining Phase I Custodian ESI**"). The Initial IAC ESI and the Remaining Phase I Custodian ESI shall be collectively referred to herein as "**Phase I Custodian ESI**."

13. The dates for collection of the Phase I Custodian ESI, except as the Parties may agree or the Court may order with respect to any particular custodians or categories of custodians, shall be whatever Phase I Custodian ESI is available from January 1, 2006 to March 31, 2020, for the Phase I Custodians, except for the following: Mortimer D.A. Sackler, Craig Landau, Stuart Baker, Theresa Sackler, Samantha Hunt, David Sackler, Kathe Sackler, Ake Wikstrom, and Karen Reimer (collectively the "**Extended History Phase I Custodians**"). The dates for collection of Phase I Custodian ESI for the Extended History Phase I Custodians shall be whatever Phase I Custodian ESI is available from January 1, 1996, until March 31, 2020.

14. The following schedule shall govern the search for and production of Phase I

Custodian ESI.  On or before:

    a. **July 24, 2020:** The Official Committee will identify initial search terms that RCCB will run against the Initial IAC ESI (the "**Initial Phase I Search Terms**").

    b. **July 27, 2020:** RCCB shall generate and provide to Akin Gump a search term hit report for the Initial Phase I Search Terms run against the Initial IAC ESI that details the number of documents returned, after using electronic deduplication methods and email threading that eliminate only true duplicates.

    c. **August 4, 2020:** RCCB shall generate and provide to Akin Gump a search term hit report for the Initial Phase I Search Terms run against the Remaining Phase I Custodian ESI that details the number of documents returned, after using electronic deduplication methods and email threading that eliminate only true duplicates.

    d. **July 27, 2020 — August 10, 2020:** Counsel for the Parties will meet and confer regarding the results of the Initial Phase I Search Terms run against the Initial IAC ESI and the Remaining Phase I Custodian ESI.  Unless the Parties otherwise agree in writing (which may be in the form of an email exchange), RCCB shall provide to Akin Gump hit reports for any revisions to the Initial Phase I Search Terms that Akin Gump may propose within 3 business days of receiving such revised search terms from Akin Gump.

    e. **August 10, 2020:** Final search terms for the Phase I Custodian ESI (the "**Final Phase I Search Terms**") shall be agreed among the Parties by August 10, 2020.  If the Parties have not reached an agreement by that date, either side may apply to the

9

Court for relief pursuant to paragraph 36 below.

15.  If the Final Phase I Search Terms return, collectively, fewer than 300,000 unique documents from the Phase I Custodians,[3] upon the Official Committee's written request for the Stipulating IACs to commence their review and production, which may be in the form of an email, responsive, non-privileged Phase I Custodian ESI shall be produced on a rolling basis, and the Stipulating IACs shall complete the review and production of such documents within 37 calendar days of the Official Committee's written request.

16.  If the Final Phase I Search Terms return, collectively, more than 300,000 documents but fewer than 500,000 unique documents from the Phase I Custodians, upon the Official Committee's written request for the Stipulating IACs to commence their review and production, which may be in the form of an email, responsive, non-privileged documents shall be produced on a rolling basis, and the Stipulating IACs shall complete the review and production of responsive, non-privileged documents (i) from at least 300,000 of such unique documents within 37 calendar days of the Official Committee's written request, and (ii) from the remaining documents within 52 calendar days of the Official Committee's written request.

17.  If the Final Phase I Search Terms return, collectively, more than 500,000 documents but fewer than 750,000 unique documents from the Phase I Custodians, upon the Official Committee's written request for the Stipulating IACs to commence their review and

---

[3] IAC Search Terms that return documents within the threshold identified in paragraph 15 (fewer than 300,000 unique documents) shall be presumptively acceptable to the Parties. However, the Stipulating IACs reserve the right to seek relief from the Court if they object to using any particular Search Terms. Provided that the Stipulating IACs raise any objection to the Court within three calendar days of notification that the Official Committee consents to the use of particular Search Terms, all deadlines respecting the review and production of Phase I Custodian ESI shall be automatically stayed until the Court has resolved the Stipulating IACs' objection.

10

production, which may be in the form of an email, responsive, non-privileged documents shall be produced on a rolling basis, and the Stipulating IACs shall complete the review and production of responsive, non-privileged documents (i) from at least 300,000 of such unique documents within 37 calendar days of the Official Committee's written request, (ii) from another 200,000 documents within 52 calendar days of the Official Committee's written request, and (iii) from the remaining documents within 67 calendar days of the Official Committee's written request..

18.     The Parties will work in good faith to attempt to agree to Final Phase I Search Terms which, collectively, return fewer than 750,000 documents from the Phase I Custodians.

19.     If the Parties agree to Final Phase I Search Terms which, collectively, return more than 750,000 unique documents from the Phase I Custodians, the Parties shall meet and confer to try to agree to a date for substantial completion of rolling productions of Phase I Custodian ESI in excess of 750,000 unique documents.

20.     If the Official Committee requests the use of Final Phase I Search Terms that, collectively, return in excess of 750,000 unique documents and if the Stipulating IACs do not agree on such Final Phase I Search Terms, or if the Stipulating IACs do agree on such terms but the Parties cannot agree on a date for completion of review and production of the Phase I Custodian ESI in excess of 750,000 unique documents, they may raise their dispute promptly to the Court in accordance with paragraph 36.

21.     By August 14, 2020, RCCB shall have gathered, and made ready for running search terms against, all available ESI in the possession, custody or control of the Stipulating IACs for the Phase II Custodians (the "**Phase II Custodian ESI**").  For the avoidance of doubt, Phase II

11

Custodian ESI shall also include any Phase I Custodian ESI which was inadvertently missed during the initial collection of the Phase I Custodian ESI.

22. The following schedule shall govern the search for and production of Phase II Custodian ESI. On or before:

a. **August 18, 2020:** RCCB shall generate and provide to Akin Gump a search term hit report for the Final Phase I Search Terms run against the Phase II Custodian ESI that details the number of new documents returned, after using electronic deduplication methods and email threading, that eliminate only true duplicates. The report will only include unique hits for the Phase II Custodian ESI.

b. **August 18, 2020 — August 25, 2020:** Counsel for the Parties will meet and confer regarding the results of the search term reports for the Phase II Custodian ESI. Unless the Parties otherwise agree in writing (which may be in the form of an email exchange), RCCB shall provide to Akin Gump hit reports for any revisions to the Final Phase I Search Terms that Akin Gump may propose for application to the Phase II Custodian ESI within 3 calendar days of receiving such revised search terms from Akin Gump.

c. **August 25, 2020:** Final search terms for the Phase II Custodian ESI (the "**Final Phase II Search Terms**") shall be agreed among the Parties. If the Parties have not reached an agreement by that date, either side may apply to the Court for relief pursuant to paragraph 36 below.

23. The Parties will work in good faith to attempt to agree to Final Phase II Search Terms that will result in the review of fewer than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI. To illustrate, if the Phase I Search Terms collectively return 300,000 unique documents from the Phase I Custodians, then the Parties will work in good faith to attempt to agree to Final Phase II Search Terms that will result in fewer than 700,000 unique documents from the Phase II Custodian ESI.

24. If the Parties agree to Final Phase II Search Terms that will result in the review of more than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI, the Parties shall meet and confer to try to agree to dates for rolling productions of responsive, non-privileged Phase II Custodian ESI, which shall, in all events, be completed by October 15, 2020.

25. If (i) the Official Committee requests the use of Final Phase II Search Terms that will result in the review of more than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI but the Stipulating IACs do not agree on such Final Phase II Search Terms, or (ii) the Parties agree to Final Phase II Search Terms that will result in the review of more than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI but the Parties cannot agree on a date for completion of review and production of the Phase II Custodian ESI, the Parties may raise their dispute promptly to the Court in accordance with paragraph 36.

### III. Identification of Information Responsive to IAC Subpoena by Means other than Electronic Searching

26. On or before August 3, 2020, RCCB shall provide by email to counsel for the

Official Committee the Stipulating IACs' objections and responses to the IAC Subpoena (the "**Objections and Responses**").

27. On or before August 3, 2020, RCCB shall also, subject to the Objections and Responses, make an initial, good-faith production (the "**Initial Non-ESI Production**") of non-privileged documents and information that are responsive to the Priority Requests that may be gathered through targeted document gathering as opposed to ESI searches ("**Non-ESI Searches**").

28. Subject to the Objections and Responses, unless otherwise ordered by the Court or agreed to by the Parties, subsequent non-ESI productions ("**Subsequent Non-ESI Productions**") (the Initial Non-ESI Production and the Subsequent Non-ESI Productions are collectively referred to herein as the "**Non-ESI Productions**") will be made available on a rolling basis as additional Non-ESI Searches are undertaken. All Non-ESI Searches and Non-ESI Productions shall be substantially completed by September 18, 2020.

29. Non-ESI Searches shall be used for the collection of responsive materials for the period January 1, 2008 to March 31, 2020, including for IAC Subpoena Requests Nos. 48 and 49, with the exception of (i) documents responsive to IAC Subpoena Requests Nos. 3 and 4, which shall be collected and produced for the period January 1, 1996 to March 31, 2020, and (ii) as the Parties may otherwise agree or as the Court may order with respect to any particular Request(s) or categories of Requests.

30. Between August 3, 2020 and September 18, 2020, the Parties shall meet and confer regarding the IAC Subpoena and the Objections and Responses in connection with the Non-ESI Productions that are responsive to the Priority Requests to be collected through Non-ESI Searches.

14

If the Parties are unable to resolve all disputes concerning the Non-ESI Productions for information responsive to the Priority Requests by September 18, 2020, either side may thereafter apply to the Court for relief pursuant to paragraph 36 hereof.

31.     Between September 18, 2020 and October 2, 2020, the Parties shall meet and confer regarding the IAC Subpoena and Objections and Responses in connection with the Non-ESI Searches for information responsive to the Remaining Requests. If the Parties are unable to resolve all disputes concerning such searches by October 2, 2020, either side may thereafter apply to the Court for relief pursuant to paragraph 36 hereof.

### IV.     Privilege Logs

32.     Responsive documents that are withheld or redacted for privilege or similar reasons shall be logged in accordance with Federal Rule of Bankruptcy Procedure 7026(b)(5). The Parties agree to meet and confer regarding the format and contents of privilege logs during the week of August 10, 2020.

33.     Privilege logs shall be provided within 15 calendar days of the ordered or agreed substantial completion date for each such production and shall include all documents identified as privileged or potentially privileged and withheld from production or redacted on that or any other basis up to such ordered or agreed substantial completion date.

### V.     Miscellaneous

34.     The Parties will meet and confer in an effort to agree on an approach or approaches for obtaining information from or relating to each IAC on the IAC Master List that has not authorized RCCB to accept service of a subpoena on its behalf. If the Parties are unable to reach

agreement on such an approach or approaches by August 3, 2020, either party may seek relief from the Court pursuant to paragraph 36 hereof.

35. Any Party to this Stipulation may request an extension from the other Party of any deadline set forth herein for good cause, the standard applicable to requests to modify a scheduling order under Federal Rule of Civil Procedure 16. Such requesting Party shall provide to the other Party a brief statement (which may take the form of an email) that sets forth the requesting Party's cause for the requested extension. Upon receipt of such statement, the receiving Party shall consent to the extension request if it determines in good faith and considering all of the circumstances, that good cause exists for the requested extension. The Parties may agree to modify any deadline in this Stipulation without further order of the Court provided they do so in writing, which may take the form of an email. For the avoidance of doubt, all deadlines provided in this Stipulation shall be binding unless modified by agreement of the parties, or order of the Court upon a finding of good cause.

36. In the event the Parties have disputes concerning the matters addressed in this Stipulation, including but in no way limited to the modification of any deadlines set forth herein, they may seek a discovery conference by submitting a letter to the Court, not to exceed three single-spaced pages, containing a representation to the Court of the kind described in Rule 7001-7 of the Local Bankruptcy Rules. The opposing Party may respond within three calendar days with a letter not to exceed three single-spaced pages. In addition, the Parties agree that any dispute may be heard on an emergency basis, subject to Court availability.

37. Productions of documents and privilege logs in accordance with this Stipulation shall be made simultaneously to the Official Committee, the Debtors, the Ad Hoc Group of Non-Consenting States (as set forth in the verified statement pursuant to Bankruptcy Rule 2019 [ECF No. 296]), and the ad hoc committee of governmental and other contingent litigation claimants (as set forth in the verified statement pursuant to Bankruptcy Rule 2019 [ECF No. 279]), consistent with past practice in the Chapter 11 Cases.  For the avoidance of doubt, nothing in this Stipulation shall affect, change, or prejudice any Party's rights or obligations under any protective order governing the materials produced, including any Party's right to seek to amend the protective order or otherwise obtain authorization to provide information supplied pursuant to this Stipulation to persons other than those listed in this paragraph 36.  Nor shall anything in this Stipulation affect, change or prejudice any Party's rights or obligations under Rule 7026(b)(5)(B) of the Federal Rules of Bankruptcy Procedure.

38. The Official Committee reserves its right to seek additional documents and information, including ESI, from the Stipulating IACs, whether based on information that may be produced in accordance with this Stipulation or otherwise, and the Stipulating IACs reserve their right to oppose any such request for additional searches and productions.

[*The remainder of this page has been left blank intentionally.*]

**STIPULATED AND AGREED:**

Dated: July 22, 2020
New York, New York

| | |
|---|---|
| */s/ Mitchell Hurley* | */s/ Marc E. Hirschfield* |
| AKIN GUMP STRAUSS HAUER & FELD LLP | ROYER COOPER COHEN BRAUNFELD LLC |
| Ira Dizengoff | Marc E. Hirschfield |
| Arik Preis | Marc Skapof |
| Mitchell Hurley | 1120 Avenue of the Americas, 4th FL |
| Joseph L. Sorkin | New York, NY 10036 |
| Sara L. Brauner | Telephone: (212) 994-0451 |
| One Bryant Park | |
| Bank of America Tower | *Counsel to the Stipulating IACs* |
| New York, New York 10036 | |
| Telephone: (212) 872-1000 | |

*Counsel to the Official Committee of Unsecured Creditors*

**SO ORDERED.**

Dated: July 24, 2020          */s/ Robert D. Drain*
White Plains, New York          THE HONORABLE ROBERT D. DRAIN
                                UNITED STATES BANKRUPTCY JUDGE

# Appendix A

[Redacted]