Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-23649-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   PURDUE PHARMA L.P.,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   300 Quarropas Street, Room 248

14                   White Plains, NY 10601

15

16                   July 23, 2020

17                   2:07 PM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  JUSTIN WALKER

Page 2

1    HEARING re Notice of Agenda I Agenda for July 23, 2020

2    Hearing [telephonic]

3

4    HEARING re Motion to Extend Exclusivity Period for Filing a

5    Chapter 11 Plan and Disclosure Statement Motion of Debtors

6    for Entry of a Second Order Extending the Exclusive

7    Periods within wh1ch to File a Chapter 11 Plan and Solicit

8    Acceptances Thereof (ECF #1365)

9

10   HEARING re Public Claimants' Statement in Support of the

11   Motion of the Debtors for Entry of a Second Order Extending

12   the Exclusive Periods Within Which to File a Chapter 11 Plan

13   and Solicit Acceptances Thereof (related document(s) 1365)

14   filed by Kenneth H. Eckstein on behalf of Ad Hoc Committee

15   of Governmental and Other Contingent Litigation Claimants

16   (ECF # 1471)

17

18   HEARING re Statement of the Raymond Sackler Family in

19   Respect of The Debtors' Second Exclusivity Motion (related

20   document(s) 1365) filed by Gerard Uzzi on behalf of The

21   Raymond Sackler Family (ECF # 1499)

22

23   HEARING re Motion to Approve /Motion of Debtors for Entry of

24   an Order (I) Approving the Dismissal Agreement By and Among

25   the Debtors and Intellipharmaceutics and (II)

Page 3

1    Granting Related Relief (ECF # 1327)

2

3    HEARING re Motion to Authorize /Motion of the Official

4    Committee of Unsecured Creditors for Entry of an Order

5    Clarifying the Debtors Obligations With Regard to Political

6    Contributions (ECF # 1373)

7

8    HEARING re Motion to Shorten Time (related to ECF #1373)

9    (ECF #1372)

10

11   HEARING re Notice of Presentment of Stipulation and Order

12   Permitting the Filing of a Class of Proof of Claim Solely

13   for Administrative Convenience in order to Effectuate

14   Potential Settlement in Respect of Certain Canadian

15   Litigation filed by James I. Mcclammy on behalf of Purdue

16   Pharma L.P. (ECF # 1313)

17

18   HEARING re Objection of Her Majesty the Queen in Right of

19   the Province of British Columbia to Notice of Presentment of

20   Stipulation and Order Permitting the Filing of a Class Proof

21   of Claim Solely for Administrative Convenience in Order to

22   Effectuate a Potential Settlement in Respect of Certain

23   Canadian Litigation [Related Document # 1313] filed

24   by Nickolas Karavolas on behalf of Her Majesty in Right of

25   the Province of British Columbia (ECF# 1369)

Page 4

1   HEARING re Notice of Filing of Amended and Restated

2   Stipulation and [Proposed] Order Permitting the Filing of a

3   Class Proof of Claim Solely for Administrative Convenience

4   in Order to Effectuate a Potential Settlement in Respect of

5   Certain Canadian Patient Litigation (related

6   document(s)1313) Filed by James I. McClammy on behalf of

7   Purdue Pharma L.P. (ECF # 1498)

8

9   HEARING re Motion to Shorten the Notice Period with Respect

10  to Motion to Permit the Filing of a Class Proof of Claim

11  (related document(s) 1408) filed by Peter D'Apice on behalf

12  of Tiffany Dunford (ECF # 1409)

13

14  HEARING re Debtors' Objection to Motion to Shorten the

15  Notice Period with Respect to the Motion to Permit the

16  Filing of a Class Proof of Claim (related document(s) 1409)

17  filed by James I. McClammy on behalf of Purdue Pharma L.P.

18  (ECF # 1432)

19

20  HEARING re Public Claimants' Joinder to Debtors' Objection

21  to Tiffany Dunford's Motion to Shorten the Notice Period

22  with Respect to the Motion to Permit the Filing of a Class

23  Proof of Claim (related document(s)1432, 1409) filed by

24  Kenneth H. Eckstein on behalf of Ad Hoc Committee of

25  Governmental and Other Contingent Litigation Claimants

Page 5

 1   (ECF #1448)

 2

 3   HEARING re Motion by Public Schools Districts for an Order

 4   Allowing them to Proceed with a Class Proof of Claim and

 5   Certifying a Class - other school districts filed by Matthew

 6   J. Piers on behalf of Board of Education of East Aurora

 7   School District 131, Board of Education of Thornton

 8   Fractional Township High School District 215, Board of

 9   Education of Thornton Township High School District 205

10   (ECF #1211)

11

12   HEARING re Omnibus Objection to Motion for the Request by

13   the Hospital Claimants, the Private Insurance Class

14   Plaintiffs, the Independent Public School Districts, the NAS

15   Guardians, and the Cheyenne and Arapaho Tribes for Leave to

16   File Motions for Class Relief (related document(s)1321,

17   1330, 1362, 1211, 1363) filed by Christopher B Spuches on

18   behalf of Attorney General, State of Florida. (ECF # 1415)

19

20   HEARING re Debtors' Omnibus Objection to Motions by Certain

21   Claimants for an Order Allowing them to Proceed with a Class

22   Proof of Claim and Certifying Class (related

23   document(s)1321, 1334, 1362, 1211, 1363) filed by James I.

24   Mcclammy on behalf of Purdue Pharma L.P. (ECF # 1421)

25

Page 6

1    HEARING re The Ad Hoc Group of Individual Victims' Statement

2    in Support of Debtors' OmnibusObjection of Motions by

3    Certain Claimants for An Order Allowing Them to Proceed

4    With A Class Proof of Claim Proof of Claim and Certifying A

5    Class (related document(s)1421) filed by J. Christopher

6    Shore on behalf of Ad Hoc Group of Individual Victims of

7    Purdue Pharma L.P. (ECF #1423)

8

9    HEARING re The Official Committee of Unsecured Creditors

10   Response to and Request For Adjournment of Class Claim

11   Motions Until Conclusion of Mediation filed by Ira S.

12   Dizengoff on behalf of The Official Committee of Unsecured

13   Creditors of Purdue Pharma L.P., et al. (ECF #1425)

14

15   HEARING re Public Claimants' Omnibus Objection to Motions

16   for Leave to File Class Proofs of Claim (related

17   document(s)1330, 1362, 1211) filed by Kenneth H. Eckstein on

18   behalf of Ad Hoc Committee of Governmental and Other

19   Contingent Litigation Claimants. (ECF #1431)

20

21   HEARING re Reply to Motion filed by Joshua Karsh on behalf

22   of Independent Public School Districts (ECF #1473)

23

24

25

1    HEARING re Declaration Pursuant to 28 U.S.C. § 1746 of

2    Jeanne C. Finnegan (related document(s )717) filed by James

3    I. McClammy on behalf of Purdue Pharma L.P. (ECF #719)

4

5    HEARING re Supplemental Declaration of Jeanne C. Finegan

6    (related document(s) 1178) filed by James I. Mcclammy on

7    behalf of Purdue Pharma L.P. (ECF # 1179)

8

9    HEARING re Motion of The Private Insurance Class Claimants

10   for Leave To File Class Proofs of Claim (ECF #1321)

11

12   HEARING re Omnibus Objection to Motion for the Request by

13   the Hospital Claimants, the Private Insurance Class

14   Plaintiffs, the Independent Public School Districts, the NAS

15   Guardians, and the Cheyenne and Arapaho Tribes for Leave to

16   File Motions for Class Relief (related document(s)1321,

17   1330, 1362, 1211, 1363) filed by Christopher B Spuches on

18   behalf of Attorney General, State of Florida. (ECF # 1415)

19

20   HEARING re Debtors' Omnibus Objection to Motions by Certain

21   Claimants for an Order Allowing them to Proceed with a Class

22   Proof of Claim and Certifying Class (related

23   document(s)1321, 1334, 1362, 1211, 1363) filed by James I.

24   McClammy on behalf of Purdue Pharma L.P. (ECF #41)

25

Page 8

1    HEARING re The Ad Hoc Group of Individual Victims' Statement

2    in Support of Debtors' Omnibus Objection of Motions by

3    Certain Claimants for An Order Allowing Them to Proceed

4    With A Class Proof of Claim Proof of Claim and Certifying A

5    Class (related document(s)1421) filed by J. Christopher

6    Shore on behalf of Ad Hoc Group of Individual Victims of

7    Purdue Pharma L.P. (ECF # 1423)

8

9    HEARING re The Official Committee of Unsecured Creditors

10   Response to and Request For Adjournment of Class Claim

11   Motions Until Conclusion of Mediation filed by Ira S.

12   Dizengoff on behalf of The Official Committee of Unsecured

13   Creditors of Purdue Pharma L.P., et al. (ECF #1425)

14

15   HEARING re Public Claimants' Omnibus Objection to Motions

16   for Leave to File Class Proofs of Claim (related

17   document(s)1330, 1362, 1211) filed by Kenneth H. Eckstein on

18   behalf of Ad Hoc Committee of Governmental and Other

19   Contingent Litigation Claimants. (ECF #1431)

20

21   HEARING re Reply to Motion of The Private Insurance Class

22   Claimants in Further Support of Motion for Leave to File

23   Class Proofs of Claim filed by Nicholas F. Kajon on behalf

24   of Eric Hestrup, et al.. (ECF #1475)

25

1    HEARING re Notice of Hearing on Motion of The Private

2    Insurance Class Claimants For Leave To File Class Proofs of

3    Claim (related document(s)1321) filed by Nicholas F. Kajon

4    on behalf of Eric Hestrup, et al. (ECF # 1322)

5

6    HEARING re Notice of Amendment to Motion of The Private

7    Insurance Class Claimants for Leave to File Class Proofs of

8    Claim (related document(s)1321) filed by Nicholas F. Kajon

9    on behalf of Eric Hestrup, et al. (ECF # 1334)

10

11   HEARING re Declaration Pursuant to 28 U .S.C. § 1746 of

12   Jeanne C. Finnegan (related document(s)717) filed by James

13   I. McClammy on behalf of Purdue Pharma L.P.

14   (ECF #719)

15

16   HEARING re Supplemental Declaration of Jeanne C. Finegan

17   (related document(s) 1178) filed by James I. McClammy on

18   behalf of Purdue Pharma L.P. (ECF # 1179)

19

20   HEARING re Motion to Allow/ Hospital Claimants Pursuant to

21   Fed. Bankr. 9014 and 7023 for an Order Making Fed. R. Civ.

22   P. 23 Applicable to These Proceedings, and Permitting

23   Them to File a Class Proof of Claim and Granting Related

24   Relief (ECF #1330)

25

1    HEARING re Statement / Supplement to Hospital Claimants

2    Omnibus Reply to the Objections/Responses Filed at Docket

3    Nos. 1415, 1421, 1423, 1425, and 1431 to Hospital Claimants

4    Motion Pursuant to Fed. Bankr. 9014 and 7023 for an Order

5    Making Fed. R. Civ. P. 23 Applicable to These Proceedings,

6    and Permitting Them to File a Class Proof of Claim and

7    Granting Related Relief [Dkt. No. 1461] (related

8    document(s) 1330)

9

10   HEARING re Omnibus Objection to Motion for the Request by

11   the Hospital Claimants, the Private Insurance Class

12   Plaintiffs, the Independent Public School Districts, the NAS

13   Guardians, and the Cheyenne and Arapaho Tribes for Leave to

14   File Motions for Class Relief (related document(s)1321,

15   1330, 1362, 1211, 1363) filed by Christopher B Spuches on

16   behalf of Attorney General, State of Florida. (ECF # 1415)

17

18   HEARING re The Ad Hoc Group of Individual Victims' Statement

19   in Support of Debtors' Omnibus Objection of Motions by

20   Certain Claimants for An Order Allowing Them to Proceed

21   With A Class Proof of Claim Proof of Claim and Certifying A

22   Class (related document(s) 1421) filed by J. Christopher

23   Shore on behalf of Ad Hoc Group of Individual Victims of

24   Purdue Pharma L.P. (ECF # 1423)

25

Page 11

1    HEARING re The Official Committee of Unsecured Creditors

2    Response to and Request For Adjournment of Class Claim

3    Motions Until Conclusion of Mediation filed by Ira S.

4    Dizengoff on behalf of The Official Committee of Unsecured

5    Creditors of Purdue Pharma L.P., et al. (ECF #1425)

6

7    HEARING re Public Claimants' Omnibus Objection to Motions

8    for Leave to File Class Proofs of Claim (related

9    document(s)1330, 1362, 1211) filed by Kenneth H. Eckstein on

10    behalf of Ad Hoc Committee of Governmental and Other

11    Contingent Litigation Claimants. (ECF#1431)

12

13    HEARING re Hospital Claimants' Omnibus Reply to the

14    Objections/Responses Filed at Docket Nos. 1415, 1421, 1423,

15    1425, and 1431 to Hospital Claimants Motion Pursuant to Fed.

16    Bankr. 9014 and 7023 for an Order Making Fed. R. Civ. P. 23

17    Applicable to These Proceedings, and Permitting Them to File

18    a Class Proof of Claim and Granting Related Relief (related

19    document(s) 1330) filed by Pearl Shah on behalf of Hospital

20    Claimants (ECF #1461)

21

22    HEARING re Supplement to Hospital Claimants' Omnibus Reply

23    to the Objections/Responses Filed at Docket Nos. 1415, 1421,

24    1423, 1425, and 1431 to Hospital Claimants Motion

25    Pursuant to Fed. Bankr. 9014 and 7023 for an Order Making

Page 12

1    Fed. R. Civ. P. 23 Applicable to These Proceedings, and

2    Permitting Them to File a Class Proof of Claim

3    and Granting Related Relief [Dkt. No. 1461] (related

4    document(s)1330) filed by Pearl Shah on behalf of Hospital

5    Claimants (ECF # 1462)

6

7    HEARING re Supplement to Hospital Claimants' Motion Pursuant

8    to Fed. Bankr. 9014 and 7023 for an Order Making Fed. R.

9    Civ. P. 23 Applicable to These Proceedings, and Permitting

10   Them to File a Class Proof of Claim and Granting Related

11   Relief (related document(s)1330) filed by Pearl Shah on

12   behalf of Hospital Claimants (ECF #1424)

13

14   HEARING re Declaration Pursuant to 28 U.S.C. § 1746 of

15   Jeanne C. Finnegan (related document( s )717) filed by James

16   I. McClammy on behalf of Purdue Pharma L.P. (ECF #719)

17

18   HEARING re Supplemental Declaration of Jeanne C. Finegan

19   (related document(s)l 178) filed by James I. McClammy on

20   behalf of Purdue Pharma L.P. (ECF # 1179)

21

22   HEARING re NAS Class Claim Motion -NAS Guardians on Behalf

23   of The NAS Childrens Abatement Class Action Claimants Motion

24   For Entry of An Order Pursuant To Fed. R. Bankr. P. 9014 And

25   7023 Permitting Them To File A Class Proof of Claim And

Page 13

1    Granting Related Relief (ECF # 1362)

2

3    HEARING re Omnibus Objection to Motion for the Request by

4    the Hospital Claimants, the Private Insurance Class

5    Plaintiffs, the Independent Public School Districts, the NAS

6    Guardians, and the Cheyenne and Arapaho Tribes for Leave to

7    File Motions for Class Relief (related document(s)1321,

8    1330, 1362, 1211, 1363) filed by Christopher B Spuches on

9    behalf of Attorney General, State of Florida. (ECF # 1415)

10

11   HEARING re The Ad Hoc Group of Individual Victims' Statement

12   in Support of Debtors' Omnibus Objection of Motions by

13   Certain Claimants for An Order Allowing Them to Proceed

14   With A Class Proof of Claim Proof of Claim and Certifying A

15   Class (related document(s) 1421) filed by J. Christopher

16   Shore on behalf of Ad Hoc Group of Individual Victims of

17   Purdue Pharma L.P. (ECF # 1421)

18

19   HEARING re The Ad Hoc Group of Individual Victims' Statement

20   in Support of Debtors' Omnibus Objection of Motions by

21   Certain Claimants for An Order Allowing Them to Proceed

22   With A Class Proof of Claim Proof of Claim and Certifying A

23   Class (related document(s)1421) filed by J. Christopher

24   Shore on behalf of Ad Hoc Group of Individual Victims of

25   Purdue Pharma L.P. (ECF #1423)

1   HEARING re The Official Committee of Unsecured Creditors

2   Response to and Request For Adjournment of Class Claim

3   Motions Until Conclusion of Mediation filed by Ira S.

4   Dizengoff on behalf of The Official Committee of Unsecured

5   Creditors of PurduePharma L.P., et al. (ECF #1425)

6

7   HEARING re Public Claimants' Omnibus Objection to Motions

8   for Leave to File Class Proofs of Claim (related

9   document(s)1330, 1362, 1211) filed by Kenneth H. Eckstein on

10  behalf of Ad Hoc Committee of Governmental and Other

11  Contingent Litigation Claimants. (ECF #1431)

12

13  HEARING re Response / Omnibus Reply by NAS Guardians on

14  Behalf of the NAS Childrens Abatement Class Action Claimants

15  to Objections Filed to Their Motion for Entry of an Order

16  Pursuant to Fed. R. Bankr. P. 9014 and 7023 Permitting Them

17  to File a Class Proof of Claim and Granting Related

18  Relief(related document(s)1421, 1415, 1423,

19  1431) (ECF #1487)

20

21  HEARING re Response The NAS Children Ad Hoc Committees

22  Joinder to The Official Committee of Unsecured Creditors

23  Response to and Request For Adjournment of Class Claim

24  Motions Until Conclusion of Mediation (related

25  document(s)1425, 1362) (ECF #1486)

1    HEARING re Declaration Pursuant to 28 U.S.C. § 1746 of

2    Jeanne C. Finnegan (related document(s)717) filed by James

3    I. McClammy on behalf of Purdue Pharma L.P. (ECF #719)

4

5    Supplemental Declaration of Jeanne C. Finegan (related

6    document(s) 1178) filed by James I. McClammy on behalf of

7    Purdue Pharma L.P. (ECF # 1179)

8

9    HEARING re West Virginia NAS Class Claims Motion - Motion to

10   Permit the Filing of a Class Proof of Claim filed by Peter

11   D'Apice on behalf of Tiffany Dunford (ECF #1408)

12

13   HEARING re The Official Committee of Unsecured Creditors

14   Response to and Request For Adjournment of Class Claim

15   Motions Until Conclusion of Mediation filed by Ira S.

16   Dizengoff on behalf of The Official Committee of Unsecured

17   Creditors of Purdue Pharma L.P., et al. (ECF # 1425)

18

19   HEARING re Debtors' to Objection Tiffany Dunford's Motion to

20   Permit the Filing of a Class Proof of Claim (related

21   document( s) 1408) filed by James I. McClammy on behalf of

22   Purdue Pharma L.P. (ECF # 1489)

23

24   HEARING re Public Claimants' Joint Objection to Tiffany

25   Dunford's Motion to Permit the Filing of a Class Proof of

Page 16

1    Claim (related document(s) 1408) filed by Kenneth H.

2    Eckstein on behalf of Ad Hoc Committee of Governmental and

3    Other Contingent Litigation Claimants (ECF #1493)

4

5    HEARING re Declaration Pursuant to 28 U.S.C. § 1746 of

6    Jeanne C. Finnegan (related document(s)717) filed by James

7    I. McClammy on behalf of Purdue Pharma L.P. (ECF #719)

8

9    HEARING re Supplemental Declaration of Jeanne C. Finegan

10   (related document(s) 1178) filed by James I. McClammy on

11   behalf of Purdue Pharma L.P. (ECF # 1179)

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 17

1    A P P E A R A N C E S :

2

3    DAVIS POLK & WARDWELL LLP

4         Attorneys for the Debtors

5         450 Lexington Avenue

6         New York, NY 10017

7

8    BY:   MARSHALL HUEBNER (TELEPHONICALLY)

9          JIM MCCLAMMY (TELEPHONICALLY)

10         CHRISTOPHER ROBERTSON (TELEPHONICALLY)

11

12   AKIN GUMP STRAUSS HAUER & FELD LLP

13        Attorneys for the Official Creditors Committee

14        One Bryant Park

15        New York, NY 10036

16

17   BY:   ARIK PREIS (TELEPHONICALLY)

18         MITCH HURLEY (TELEPHONICALLY)

19

20   JOSEPH HAGE AARONSON LLC

21        Attorneys for the Raymond Sackler Parties

22        485 Lexington Avenue, 30th Floor

23        New York, NY 10017

24

25   BY:   GREGORY JOSEPH (TELEPHONICALLY)

Page 18

```
 1   PILLSBURY WINTHROP SHAW PITTMAN LLP

 2        Attorneys for the Non-Consenting States

 3        31 West 52nd Street

 4        New York, NY 10019

 5

 6   BY:  ANDREW TROOP (TELEPHONICALLY)

 7

 8   DEBEVOISE & PLIMPTON LLP

 9        Attorneys for the Mortimer Side

10        919 Third Avenue

11        New York, NY 10022

12

13   BY:  JASMINE BALL (TELEPHONICALLY)

14

15   KRAMER LEVIN NAFTALIS & FRANKEL LLP

16        Attorneys for the Ad Hoc Group of Creditors

17        1177 Avenue of the Americas

18        New York, NY 10036

19

20   BY:  KENNETH ECKSTEIN (TELEPHONICALLY)

21

22

23

24

25
```

Page 19

```
 1   PHILLIPS LYTLE LLP

 2        Attorneys for Her Majesty the Queen in Right of the

 3        Province of British Columbia & Other Canadian

 4        Government Objectors

 5        340 Madison Avenue, 17th Floor

 6        New York, NY 10173

 7

 8   BY:  NICKOLAS KARAVOLAS (TELEPHONICALLY)

 9

10   GUARDIAN LAW GROUP LLP

11        Attorneys for the City of Grand Prairie

12        342 4 Avenue SE

13        Calgary, AB T2G 1C9

14

15   BY:  MATTHEW J.N. FARRELL (TELEPHONICALLY)

16

17   WHITE & CASE LLP

18        Attorneys for the Ad Hoc Group of Creditors

19        1221 Avenue of the Americas

20        New York, NY 10020

21

22   BY:  J. CHRISTOPHER SHORE (TELEPHONICALLY)

23

24

25
```

Page 20

1   CAPLIN & DRYSDALE

2         Attorneys for MSGE

3         One Thomas Circle NW, Suite 1100

4         Washington, DC 20005

5

6   BY:  KEVIN MACLAY (TELEPHONICALLY)

7

8   ALSO PRESENT TELEPHONICALLY:

9

10  LOWELL FINSON

11  ERICA AISNER

12  ANNE PENACHIO

13  DEBORAH WILLIAMSON

14  KATIE STADLER

15  JAKE HOLDREITH

16  JOHN BARRETT

17  SHEILA BIRNBAUM

18  HAYDEN COLEMAN

19  JONATHAN CUNEO

20  SHANNON JERSE

21  THOMAS MAHLUM

22  GEORGE O'CONNOR

23  SARA ROITMAN

24  ARTEM SKOROSTENSKY

25  ALICE TSIER

Page 21

1    ILANA VOLKOV

2    SANDER ESSERMAN

3    ANDREW FURLOW

4    NATASHA LABOVITZ

5    MAURA MONAGHAN

6    DANIEL E. STROLK

7    HAROLD WILLFORD

8    BROOKS BARKER

9    PETER D'APICE

10   SCOTT MARKOWITZ

11   MARC SKAPOF

12   JEFFREY LIESEMER

13   CONSTANTINE DEAN POURAKIS

14   CYRUS MEHRI

15   SOLOMON GENET

16   NICHOLAS KAJON

17   DONALD CREADORE

18   SARA BRAUNER

19   JOHN GUARD

20   JENNIFER CHRISTIAN

21   ALEX LEES

22   EDWARD NEIGER

23   NICHOLAS PRETY

24   GERARD UZZI

25   SYDENHAM ALEXANDER

Page 22

 1   DANTE DITRAPANO

 2   CAROLINE GANGE

 3   R. BOOTH GOODWIN

 4   JEREMY KLEINMAN

 5   M. VIOLA SO

 6   BARBARA VAN ROOYAN

 7   CATRINA SHEA

 8   WILLIAM BROWN

 9   LOWELL RINSON

10   MALLORY K. HOGAN

11   REIDAR M. MORGERMAN

12   DENNIS CHU

13   DAN DRACHLER

14   DAVID MOLTON

15   ALIX BOZMAN

16   MARA LEVENTHAL

17   JEREMY RYAN

18   CHRISTOPHER ROBERTSON

19   SCOTT GAUTIER

20   STEVEN SKALET

21   AISHA RICH

22   JOSHUA KARSH

23   LAUREN NUSSBAUM

24   B. SCOTT BICKFORD

25   BRIAN MASUMOTO

Page 23

1    PAUL SCHWARTZBERG

2    MATTHEW PIERS

3    JOHN BRINGARDNER

4    EMILY F. MACKAY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

1                      P R O C E E D I N G S

2            THE COURT:  Good afternoon.  This is Judge Drain

3       and we're here on a number of matters in In RE:  Purdue

4       Pharma, LP, et al.  This is a completely telephonic set of

5       hearings.  I will ask you to identify yourself and your

6       client the first time speak.  I may do that again if you

7       speak later, and I believe that the Court reporter won't be

8       able to put together your name with your voice.  You may

9       consider doing that, as well.

10            There's one authorized recording of these

11       hearings.  It's being taken by Court Solutions.  If you want

12       to get a transcript of the hearing on your matter, you can

13       contact our clerk's office to arrange for one to be

14       prepared.  The recording is provided to the clerk's office

15       on a daily basis by Court Solutions.

16            So, with that introduction, I have the amended

17       agenda for today's hearing and at least for the first few

18       matters on the agenda, I'm happy to go down in the order

19       that appears on the agenda.

20            MR. HUEBNER:  Terrific.  Your Honor, am I coming

21       through clearly for the Court?

22            THE COURT:  Yes, I can hear you clearly.

23            MR. HUEBNER:  Terrific.  Good afternoon, Your

24       Honor.  May it please the Court, for the record, I'm

25       Marshall Huebner of Davis, Polk, and Wardwell, LLP, on

Page 25

1   behalf of the Debtors, Purdue Pharma, LP, its 22

2   subsidiaries, and Purdue Pharma, Incorporated, its general

3   partner.

4          Your Honor, as someone who is not looking very

5   good during COVID-19 quarantine, I would like to thank you

6   for having this hearing be entirely telephonic.  (sound

7   drops) suit these days for the Courts that asked us to sign

8   into video as well, so I think many of us are probably

9   grateful, on a personal note.

10         Your Honor, as you can see from today's agenda,

11   the first item is exclusivity which is actually a good

12   jumping off point for what I think is possibly an important

13   conversation about timing generally and an update on the

14   status of these Chapter 11 cases, which of course, is quite

15   typical exclusivity extension.

16         On the one hand, mission critical and very

17   material progress has been made on a great many fronts in

18   the last few months.  For example, putting aside the motions

19   on for today's hearing, which is really a single contested

20   matter conceptually, the class proof of claim issue, the

21   last several hearings in this case have actually been

22   largely and often fully consensual.  This is one of many

23   indicators of the material progress that the Debtors and

24   other parties have been making in these cases.  A few other

25   things that I think are important to set the stage for

Page 26

1    today, one, the business itself remains stable and

2    protected.

3            People sometimes forget that there's a large and

4    complex operating business here, not just a "Debtor" and a

5    "defendant," and the financial, operational, and

6    manufacturing safety and stability of Purdue is absolutely

7    essential to hundreds of thousands of patients who rely on

8    their suite of medications and on claimants, and this could

9    have been otherwise, especially with COVID-19 layered on top

10   of Chapter 11, layered on top of the prefiling litigation,

11   and so I just do want to note that the Debtors' financial,

12   operational, and safety performance sometimes is, but really

13   shouldn't be, taken for granted.

14           Two, the various public health initiatives that

15   we've discussed in this courtroom over time, continue on

16   pace.  In March 2020, the FDA approved generic Suboxone,

17   which is the buprenorphine-naloxone tablet and the company

18   now stands ready to manufacture this valuable product.  Two,

19   the OTC, the over-the-counter naloxone nasal spray discussed

20   relatively recently in connection with the HRT motion, OTC

21   naloxone, if it pans out, which we all desperately hope it

22   will, is to be a low-cost, nonprescription, essentially,

23   version of Narcan, the leading prescription opioid rescue

24   drug.

25           The FDA continues to encourage the development of

Page 27

1    the medicine and has gone so far as to proactively develop

2    and test a model drug facts label which we understand has

3    never before happened in FDA history.  HRT, as of now,

4    remains on track to submit the new drug application to the

5    FDA in a year, and hopes to receive FDA approval before the

6    end of next year.

7            Several hearings ago, we discussed injectable

8    nalmefene, which is the third major public health initiative

9    drug.  This is the second-generation opioid overdose rescue

10   medicine that is, hopefully, going to deal with things like

11   fentanyl which current things cannot always deal with

12   because of the half-life, as we've discussed before.

13           As Your Honor may remember, Purdue is developing

14   three forms of the medicine.  All three have been granted

15   expedited review by the FDA and two are on track to be

16   approved by the FDA within the next year.  With respect to

17   the autoinjector, I'm happy to report that process

18   development and device engineering work actually has already

19   begun and is now underway.  That topic is now down.

20           Three, key parties to the case have participated

21   in material and very fecund exchange, in fact, a set of

22   exchanges, about the financial and post-emergence

23   projections of the Debtors and related matters.  The

24   financial advisors for key constituencies appear to be

25   seeing the number in substantially the same way, which is

Page 28

1    likewise a very important and continuing development.  Four,

2    we have reached agreement with all parties on all aspects of

3    Debtor-facing discovery in these cases, including with

4    respect to multipronged information requests from the

5    dissenting states and the UCC.

6            This was a monumental task that required

7    compromises by many, including, of course, the Debtors.

8    Many, many people in these cases, as Your Honor well knows,

9    want many, many things and have many strong views on many

10   topics.  There's only one Debtor, but there are more than 10

11   Ad Hoc Committees and the UCC.

12           Candidly, had you asked pretty much anyone,

13   including me, whether 10 months into this case, we would be

14   standing here and being able to note that not a single

15   formal discovery demand has been served on the Debtors,

16   because everything has been resolved consensually, I'm

17   pretty sure that nobody would've taken that bet, but I'm

18   proud to report that that's actually where we are and the

19   review and rolling production of more than one million

20   incremental documents proceeds.

21           Five, as this Court has no doubt noted, the Ad Hoc

22   Committee or AHC, the dissenting states, and the MSGE Group,

23   have, in the last few months, been of the same view on a

24   wide variety of topics, in some cases, even filed joint

25   pleadings, not infrequently, I might note, of late in

Page 29

1    support of or non-objection to the Debtors.  This ongoing

2    coalescing of the public side stakeholders is very important

3    with much more, of course, going on under the waterline.

4           Six --and this is the last of the numbered points

5    -- with respect to mediation, I am, of course, limited in

6    terms of what I can say by mediation -- by the mediation

7    privilege and order, but here is what I can say.  Your Honor

8    entered the mediation order on March 4, 2020, and we have

9    now been at this for four-and-a-half months, not a short

10   period.  On some fronts, there has been both exciting and

11   meaningful and important progress.  On other issues, the

12   progress has not been all that we would've hoped.

13          The mediators have been fully and deeply engaged

14   and have made an extraordinary difference in moving

15   discussions forward.  Unfortunately, one of the realities we

16   all face in this situation and others is that the new remote

17   environment in which we find ourselves in light of COVID-19

18   takes away many of the pressurization tools normally open to

19   mediators, including hauling senior principals to meetings

20   or keeping parties sequestered in conference centers,

21   sometimes with no food or water, to facilitate resolution.

22          And these realities have, unfortunately, extended

23   the timetable of the mediation, well beyond the original

24   expectation for mediating the intercreditor allocation

25   issues.  The Debtors have considered various ways to address

Page 30

1   this, including looking into whether we have the right,

2   unilaterally, to seek to set an end date to this phase of

3   the mediation.

4           The Debtors ultimately decided, after close review

5   of the order and talking to various parties, that in lieu of

6   attempting unilateral action, we would alert the Court to

7   our strong view, that the time is ripe to move this phase of

8   the mediation to conclusion and that an established deadline

9   or end date that is a limited number of weeks away is likely

10  appropriate at this time, which is a good segue into larger

11  issues about pacing of these cases more generally.

12          As Your Honor without any question well remembers,

13  at a few of the recent hearings, Your Honor has,

14  understandably, asked a number of questions, quite

15  understandably, about plans for timing and deadline.  On

16  June 3rd, Your Honor reminded all in attendance that

17  "Parties here need to understand that there's a public

18  health crisis.  As COVID has brought home, many views need

19  to be taken into account, but an effort to achieve

20  perfection will leave the people who are suffering at

21  greater harm."

22          You also noted if people cannot set aside their

23  views as to the perfect use for the money, the Court would

24  take steps to move along the case separately and "it's shame

25  on us if we don't do that.  This is flesh and blood.  The

Page 31

1    similar vein," you said you "want this case to move and...

2    we'll make it move if the parties don't start accommodating

3    each other," a sentiment you later repeated on June 23rd.

4            In a related vein, before I get back to the

5    calendar, these statements echo the Court's view which has

6    also been the Debtors' view and those of other parties as

7    well, that the discovery and diligence and the mediation

8    process are all critical but must also be tempered against

9    the urgent need to get these cases through and out and to

10   get money and lifesaving treatments in the hands of those

11   most affected by the public health epidemic.

12           As Your Honor noted on May 1st, "At some point,

13   the information process needs to stop because you're going

14   to reach the point of diminishing returns."  Your Honor, in

15   our view, today is the time to start talking more openly and

16   plainly about starting to move these cases forward to the

17   mouth of the exit chute from Chapter 11.  Many mass tort

18   cases go on for many years.  This one should not, cannot,

19   and must not be one of them.

20           As you, of course, saw in our papers, we very

21   intentionally did not ask for the 180-day extension that

22   many might have.  We think that a plan should go on these --

23   on file in these cases well before the end of 2020, and my

24   personal view is that October or early November seems like

25   the right target, and hopefully achievable.

Page 32

1              However, there are some obstacles to that

2    aspirational timing.  For a variety of very good reasons,

3    the Debtors have not once taken a position with respect to

4    any of the discovery disputes, spats, or conversations

5    between various creditor groups on the one hand and

6    shareholders on the other, or sought to limit discovery

7    requested by any other party.  Of course, the Court ruled

8    where it had to, but the end result is the document

9    discovery will not end until October 1 or October 26,

10   depending on exactly how you define end.

11             If documents are produced through and well into

12   October, parties are likely to assert that they then need

13   additional time to read and digest the last of the

14   productions, decide on appropriate deponents, take

15   deposition, then reassess their views on all the topics at

16   hand, and only then, in earnest, start negotiations on the

17   global settlement.

18             In the Debtors' perspective, this schedule is

19   highly problematic.  The idea that it could become November

20   or even December before end-stage negotiations on a global

21   deal get going in full earnest is painfully suboptimal and

22   poses a number of risks to the company and to a value-

23   maximizing restructuring because, of course, as everyone

24   knows, once there is an agreed plan, there's a further delay

25   of at least three months from the filing of a disclosure

1     statement and plan to emergency from Chapter 11.

2             To have no plan on file until very late in 2020 or

3     even in 2021, and thus no emergence well into 2021, first of

4     all, poses risks to the business itself.  As this Court well

5     knows, no company should sit in Chapter 11 any longer than

6     is necessary, and this one probably more than many.

7             Second, a later emergence from Chapter 11 results

8     in very large sums of money continuing to just sit in bank

9     accounts, instead of being deployed out there in the real

10    world to save lives while the opioid crisis rages on all

11    around us and lives continue to be destroyed or lost.

12            Third, the costs and burdens associated with an

13    extended stay in Chapter 11 are very material.  Every month

14    is tens of millions of dollars that could otherwise go to

15    save lives.  So, looking at the calendar, here are some

16    thoughts.  July will soon be behind us.  We hope that the

17    balance of July and August is the period which the

18    intercreditor allocation conversations and this current

19    mediation, or phase of the mediation, come to a conclusion,

20    one way or another.

21            That suggests that September or early October

22    should be the landing zone for negotiations among creditors,

23    the Debtors, and the shareholders, hopefully, to come to

24    fruition, leading to the goal, as I said before, of filing a

25    plan with sufficient creditor support in October or early

Page 34

1    November.  But to achieve this, many parties have to adhere

2    to this schedule.  The Debtors continue to believe, strongly

3    and unequivocally, that a global settlement that includes

4    substantial contributions from the shareholders make, by

5    far, the most sense for all parties to these cases.

6         That was a North Star with which we came into

7    Chapter 11 and that is the North Star to which we -- by

8    which we continue to navigate.  Hopefully, the balance of

9    today's agenda will help provide critically needed clarity

10   that will advance and accelerate these cases.  While we

11   would have like to have shared the Committee's view, since

12   we have, as Your Honor knows, adjourned things wherever we

13   can and resolved a tremendous number of things without

14   contested hearings, it is actually our view that ruling on

15   today's contested motions will actually add substantial and

16   critically needed clarity to the case.

17        Unless Your Honor has any questions, since

18   exclusivity itself was uncontested, I have nothing more to

19   say on that topic; although, obviously, I'm aware that I

20   roved a little widely because I had put Your Honor off at a

21   couple of hearings already (sound drops) questions about

22   what is the timing of this case, what are the Debtors'

23   thoughts, what kind of deadlines do you think are coming or

24   might help, and as I promised you, the answers were coming,

25   and hopefully I have addressed things in a way that the

Page 35

1    Court and hopefully many other people find thoughtful and

2    sensible.

3              THE COURT:  Okay.

4              MR. PREIS:  Your Honor, this is Arik Preis from

5    Akin, Gump, Strauss, Hauer, and Feld on behalf of the

6    Official Creditors Committee.  I don't --

7              THE COURT:  Okay.

8              MR. PREIS:  -- even know -- good afternoon, Your

9    Honor.  I don't even know where to begin, because again,

10   we're in a virtual world so I'm emailing with my colleagues.

11   We knew nothing about any -- some of the things that Mr.

12   Huebner just went through.  I don't know what he was

13   referring to with regard to agreement of parties on various

14   issues or that he's spoken with us, because he has -- this

15   is the first we've ever heard of what he just said.

16             He also made some references to agreements on

17   discovery that he thinks we and the Debtors have which are

18   just not true and I'll let the nonconsenting states speak

19   for themselves.  But I'm not sure what you want us to do

20   with all of his statements.  I don't think this -- there's

21   no item in front of you on this issue right now, so I don't

22   want to start speaking contemporaneously about it, so I --

23   what would you like for us to respond to, what Mr. Huebner -

24   -

25             THE COURT:  Well, look, the Debtors' motion to

Page 36

1    extend the plan exclusive periods is before me and while it

2    is unopposed, Mr. Huebner is right that one of the functions

3    of the need to show cause to extend the exclusive period is

4    to enable parties in interest and the Court to focus on the

5    progress of the case, and I prepared for this hearing, in

6    part, to raise questions that, obviously without any

7    communication between us, Mr. Huebner in some way

8    anticipated.

9         I have given more focus to the timing of the

10   mediation and, in part, that's because of the pleadings that

11   are in front of me on the class claim, class certification

12   motions.  But I, in each of the omnibus hearings, have

13   focused also on the timing to resolve, or to be in a

14   position to resolve, what I view as the other main set of

15   issues in this case, which are all related to the potential

16   role of Sackler family members in funding a plan.

17        I am less conversant on where the parties stand

18   with their due diligence on that inquiry and it's not only

19   due diligence that involves multiple people, but also at

20   least two sets of issues, issues regarding potential

21   transfers, which has been a major focus of the Committee's

22   analysis, and issues regarding potential claims against the

23   Sackler's, separate from derivative claims, and/or resources

24   of the Sacklers.

25        I appreciate that's a very complicate due

Page 37

1    diligence effort to get to the bottom of those two issues.

2    On the other hand, I also know that a substantial amount of

3    resources have been spent already in generating quite a bit

4    of information on those issues, and it was my hope, although

5    just the mechanics of 21st century discovery inevitably

6    complicate the inquiry, because on one level, one can obtain

7    a lot more information because people communicate digitally,

8    but also can extend the time for it to be produced and

9    analyzed.

10            So, I don't know as well the track that the

11   parties are on, on that front, and I didn't really

12   anticipate them to be prepared to discuss that unless they

13   wanted to.  But I clearly share the hope that Mr. Huebner

14   articulated on the Debtors' part, that meaningful plan

15   negotiations with respect to the Sacklers' funding of a plan

16   would take place starting in the early fall, based on my

17   knowledge of when document discovery should be complete and

18   the amount of information that people have to date.

19            Obviously, they would be subject to confirmatory

20   due diligence, but what we're talking about here is not a

21   litigation for a trial, but rather discovery to support

22   negotiations over a potential settlement.  So, I don't know

23   if that answered your question, Mr. Preis.  You're a careful

24   lawyer and you don't want to get ahead of your clients, and

25   I appreciate that, but I had made it clear to the parties

Page 38

1    last month that I didn't want these cases to drift.  In

2    part, that was a message to the Sacklers' counsel and

3    counsel for the entities in which they hold a controlling

4    interest.  In part, it was for other parties, to start

5    working together more and not aiming for achieving the

6    impossible, which is everything they want, at the exclusion

7    of legitimate requests by other parties.

8              So, I do intend, in connection with the Debtors'

9    exclusivity motion, to address the timing going forward in

10   this case.

11             MR. PREIS:  Your Honor, then if that's the case,

12   then I think it would be helpful -- you correctly point out

13   that this case is on two different tracks, one track being

14   the mediation track, the other track being the, I'll just

15   call it the Sackler track.  I think it would be instructive

16   for my partner, Mr. Hurley, to just speak about that and to

17   speak about the timing as well as what has gone on in

18   discovery, so you have an understanding of how we're

19   thinking about timing and --

20             THE COURT:  Okay.

21             MR. PREIS:  -- as well as the issues that we heard

22   from the constituents in the case about what it is they'd

23   like us and them working together, per the litigation

24   protocol we've worked out, to uncover.  So, can I ask Mr.

25   Hurley to address the Court?

Page 39

1          THE COURT:  Sure, that's fine.

2          MR. PREIS:  Okay.

3          MR. HURLEY:  Thank you, Your Honor.  It's Mitch

4   Hurley, for the record, from Akin Gump on behalf of the

5   Official Committee of Unsecured Creditors.  Your Honor,

6   preliminarily, Mr. Huebner did indicate that agreement had

7   been reached between the Debtors and, I think he said, used

8   a phrase something like, all parties on all aspects of

9   discovery.  Maybe I didn't hear it quite right.

10         I just want to be very clear on that,

11   preliminarily.  It is true that the Committee and the

12   Debtors have reached agreement, in principle, regarding the

13   collection and production of certain materials.  We don't

14   actually yet have a formal agreement.  We hope one is going

15   to emerge soon, but it's important to note there are also

16   very significant issues that we have not yet reached

17   agreement on related to discovery with the Debtors,

18   including but not limited to some very important issues

19   concerning privilege.

20         We're certainly going to continue to try and

21   resolve those issues without Court intervention, but it's

22   possible we're going to need to seek the Court's help in

23   that regard.  We'll try to avoid it if we can, of course,

24   and so I just want to make sure it's clear on the record

25   that we believe that there are some pretty substantial

Page 40

1    discovery issues that still need to be worked out between us

2    and the Debtors.

3            THE COURT:  Are you getting information in the

4    meantime?

5            MR. HURLEY:  We are, Your Honor.  Absolutely.  The

6    Debtors have begun to produce documents to the Committee and

7    have been, for some weeks.  I believe, in accordance with

8    the expectation that the agreement in principle we have is

9    going to be formalized, and so information is definitely

10   flowing, Your Honor.  I didn't mean to suggest otherwise.

11           THE COURT:  Okay, and it is being analyzed?

12           MR. HURLEY:  As it comes in, Your Honor, yes,

13   indeed.

14           THE COURT:  Okay.  And what is the status of the

15   information flow from the Sackler parties, first the

16   Sacklers directly and then the related companies?

17           MR. HURLEY:  Well, it's as reflected in the

18   stipulations that we submitted, including a stipulation with

19   respect to the IACs, but I think was submitted to the Court

20   yesterday.  Our understanding is that the information flow

21   from the parties to those stipulations has, at least for the

22   most part, been undertaken on the schedule that's

23   contemplated by those documents.  I would note, Your Honor,

24   in the statement that was filed by the public side in

25   connection with the exclusivity motion, they pointed out

1    that the Sacklers currently have until the end, basically,

2    of October, but I'll refer to the Sacklers to include their

3    affiliated entities, the IACs and others.

4            Public side pointed out that the Sackers, under

5    the stipulations, currently have until the end of October to

6    complete document production and file us privilege logs, and

7    they note that since critical documents and information not

8    only have to be produced by the Sacklers but also

9    appropriately analyzed -- that's the phrase the public side

10   uses in their statement -- in connection with further

11   negotiations over any potential settlement of the cases, the

12   public side suggests that the Debtors are not likely to be

13   in a position to propose a confirmable plan even at the end

14   of the extended exclusivity period unless, as the public

15   side put it, the Sacklers more "more quickly" than is

16   required by the current discovery stipulations.

17           In the Committee's view, the public side probably

18   is not really even being realistic enough about the likely

19   timeline for these cases.  For one thing, we have no reason

20   to believe that the Sacklers and their affiliates will move

21   more quickly than agreed, pursuant to the stipulations.

22           As we believe the Court is aware, the Committee

23   really fought tooth and nail to get the commitments from the

24   Sacklers and their affiliates that are embodied in the

25   stipulations that are on file, including by submitting to

Page 42

1    you extensive letter briefs on discovery issues and then

2    negotiating the detailed disclosure schedules in the

3    stipulations over the course of weeks.  One of those

4    stipulations I noted with the IACs was filed just yesterday,

5    and as we have learned, as this case has gone on, discovery

6    from the IACs is absolutely critical to these cases,

7    including with respect to fraudulent transfers to the IACs

8    and because the IAC's global advisory board would -- acts as

9    a kind of board of directors, appears to have had a key roll

10   in directing the affairs of Purdue as well as the IACs.

11          This is to name just a few issues as to which IAC

12   discovery we think is going to be of central importance.

13   Now, as the Court is aware, for the first five months of the

14   cases, we were told repeatedly that our request for IAC

15   discovery should go to Norton Rose, because Norton Rose --

16          THE COURT:  No, we -- I don't need to go --

17          MR. HURLEY:  Okay.

18          THE COURT:  I'm fully aware of the history here.

19   I'm really just focusing on the production as it currently

20   sits.

21          MR. HURLEY:  Fair enough.  So the IACs later

22   appointed Royer Cooper as their counsel and we really worked

23   with them over the past weeks, basically on a daily basis,

24   to get to the disclosure schedule that was submitted

25   yesterday, and it is our expectation and Royer Cooper's done

1    nothing in the course of those weeks to cause us to believe

2    otherwise, that disclosures are going to be made on the

3    schedule that's contemplated by that document, but we think

4    that the notion that document discovery is going to be

5    completed more quickly than under the deadlines that are

6    embodied in those stipulations, just isn't realistic.

7         Also, as I think we've consistently foreshadowed,

8    we believe there are going to be very important disputes

9    over privilege in these cases that would result in important

10   additional production of documents, maybe some of the most

11   important documents in the cases.  We also have noted in the

12   past that, at least from the Committee's view, document

13   disclosure is not the end of discovery in the cases.

14        There are depositions of critical witnesses that

15   we and we believe the other creditors in the case believe

16   have to be taken in an effort to get to the bottom of

17   Purdue's role in creating the opioid crisis, what the

18   Sacklers knew and when they knew it.

19        We are, of course, Your Honor, fully cognizant of

20   the statement that you made at the last hearing, which you

21   basically repeated today, that discovery in bankruptcy cases

22   is typically less comprehensive than discovery in plenary

23   litigation.  We understand that.  We also note that in the

24   last hearing, Your Honor acknowledged, nearly at the same

25   time, that this is no ordinary bankruptcy case, and of

Page 44

1    course, it is not.

2         With the support of most, if not all of Purdue's

3    creditors, which we at least view as the sole stakeholders

4    of Purdue in these cases, and with the active participation

5    of many of the states and other claimants in the cases, we

6    are seeking to examine the roots and help assign

7    responsibility for one of the worse public health crises in

8    the history of the country.  The Sacklers are quite correct

9    in their submission that discovery in the cases so far has

10   been burdensome for them and we expect it will remain so,

11   both for them and their affiliates and associates.

12        But discovery is always burdensome.  The question

13   is whether the burden is undue under the circumstances, and

14   in light of the importance of the issues that we're

15   investigating.  Their vast resources and the billions of

16   dollars at stake, we don't think there's any serious doubt

17   that the burden that's being placed on them is proportional

18   to the needs of the case.  Critically, at least in our view,

19   it's not just Purdue's creditors that support this

20   painstaking examination of Purdue that we are undertaking.

21        Increasingly, an examination of that client has

22   been demanded by victims, activists, the public at large.  A

23   piece was published in the New York Times, I believe only

24   yesterday, with the headline, "The Sacklers Could Get Away

25   With It."  Numerous activists and others have written Your

Page 45

1    Honor to seek appointment of an examiner, I think to try to

2    ensure that the Sacklers, in fact, don't "get away with it."

3           Now, we don't think an examiner is an answer.  I

4    think it would only increase the cost and time necessary to

5    get to the bottom of these critical events, and we all know

6    other issues that would come with the appointment of an

7    examiner.  The answer, we submit, respectfully, is to allow

8    the Committee, side by side with the states and the other

9    creditors who are cooperating with us through the litigation

10   protocol, to complete the examination, including through

11   discovery that is as comprehensive as may be necessary to

12   get answers that Purdue's creditors and victims in the

13   public are demanding.

14          We, the Committee, pledge that we will continue to

15   do everything in our power to speed those necessary

16   disclosures, but we have to say, we share the public side's

17   skepticism, and really then some, that sufficient

18   disclosures can be made on a schedule that would allow for a

19   confirmable plan by December.  The work that remains to be

20   done is, much of it, is laid out in the stipulations.  We

21   believe there will be other important discovery to take as

22   well.

23          THE COURT:  Is the material being produced on a

24   rolling basis and being reviewed on a rolling basis by the

25   parties that have access to it?

Page 46

1        MR. HURLEY:  Yes, Your Honor.

2        THE COURT:  And that includes the public side

3   parties that are included in the discovery orders?

4        MR. HURLEY:  The Committee is coordinating with

5   other creditors, including elements of the public side, to

6   ensure that they have access to that information, as is

7   appropriate.  I mean, as Your Honor knows, we're trying to

8   avoid a situation where a bunch of different law firms are

9   reviewing the same documents, so it's not like the

10  nonconsenting state group's counsel is separately reviewing

11  all these materials.  We're coordinating on that.

12       THE COURT:  No, that's what I expected.

13       MR. HURLEY:  Yes.

14       THE COURT:  And I'm glad of that.  I just want to

15  make sure that it's not just being reviewed by your

16  Committee, but that you're parceling -- not you, yourself,

17  but the parties are parceling out the work among themselves.

18       MR. JOSEPH:  Your Honor --

19       MR. HURLEY:  The plan is to coordinate in that

20  manner, Your Honor.

21       THE COURT:  Okay.

22       MR. JOSEPH:  Your Honor, this is Gregory Joseph

23  for the Raymond Sackler parties.  May I be heard?

24       THE COURT:  Well, let me make sure I have

25  addressed the concerns I had about the timing here.  I want

Page 47

1    to be clear, and maybe that's one reason I'm cutting you

2    off, Mr. Joseph.  I am not looking at this in the context of

3    what is burdensome on the Sacklers.  I'm not viewing this as

4    a discovery -- a sort of discovery dispute between the

5    Sacklers or the IACs on the one hand and the Committee and

6    public claimant on the other.

7            Those disputes have been relatively few, as far as

8    bring raised to my level as opposed to being worked out by

9    the parties.  What I'm focusing on here is to make sure that

10   time isn't being wasted or that isn't going by in a way that

11   isn't efficient, and I guess my only question further on

12   that is to focus on -- is to make sure that when, Mr.

13   Hurley, you say that you want to get to the bottom of

14   whatever happened, you and your colleagues are not doing

15   that with a historian's perspective, but focusing on actual

16   potential legal causes of action, either that the Debtors

17   would have or that would be the subject of a claim release

18   that the Sacklers would want in return for paying into the

19   plan.

20           I'm assuming that's the case, but I want to make

21   sure.  Is it the case?

22           MR. HURLEY:  Your Honor, that is -- this is Mr.

23   Hurley again.  Your Honor, that is absolutely the case.

24   Obviously, because of the nature of the estate claims, part

25   of what we're looking at is questions related to insolvency,

Page 48

1    which relate, of course, directly to the liability of Purdue

2    at various times, but the answer to the question is yes, our

3    focus is on the claims that would potentially be subject to

4    release under the plan, or under a plan.

5              THE COURT:  Okay.

6              MR. HUEBNER:  So, Your Honor, if I can just jump

7    back in for a minute.  There are a bunch of things that were

8    said in the last 15 minutes that I actually find shocking

9    and will have to take that up directly with Akin Gump after

10   this hearing, but let me say three things I hope will just

11   be helpful to everybody.

12             Number one, let me remind the Court and everyone

13   that the Debtors have stated on the record at multiple

14   hearings that it is their view that once we come out the

15   other side of this, a repository of documents that will be

16   full and open and public is going to be part of any deal,

17   because we fully understand and support and agreed to at the

18   very first time it was ever raised that that be true.

19             Number two, the whole issue of the Special

20   Committee -- and people are a little bit forgetting that

21   massive reports have already been put on the docket that

22   list hugely important things, to the tune of about 800

23   pages' worth of analysis, which isn't to say that there

24   isn't more work to do, but the nature of the transfers, the

25   amounts of the cash transfers were fully put out in the

1    public eye months and months ago.

2           And three, I do want this remembered.  The notion

3    that I just heard that we think December may be far too soon

4    to get a plan on file and overly optimistic and the states

5    have it wrong and it's not just the consenting states, it's

6    the whole government side, that is not our vision.  Our

7    vision is not that we're still sitting in this bankruptcy

8    case in six months, in January, with another $150 million or

9    more of professional fees and potentially hundreds of

10   millions of dollars of value lost that is permanent through

11   the business, so that every single document going back 25

12   years that has been asked for has been fully digested.

13          Since we can't get a plan done here without

14   sufficient creditor support, if that's ultimately the views

15   and demands of the creditors and the Court is agreeable to

16   that, obviously it will be what it will be, but our vision

17   is that everyone needs to prioritize and accelerate and

18   decide when they have enough information.  More always

19   sounds right.  There could always be that smoking gun.

20   There could always be one more issue.  I can strengthen my

21   case even farther.

22          The problem is, the cost of more has now grown to

23   tens of millions of dollars a month and there's just a

24   balance to be struck.  And so, to be clear, we're not asking

25   for any relief right now other than the relief requested in

Page 50

1    the exclusivity motion, which it sounds like the Committee

2    wanted us to ask for more because they think we were

3    unreasonably short -- though we don't.  Two, we were a

4    little bit more precise that we don't -- there's no mechanic

5    in the order appointing the mediators to end this phase of

6    the mediation and the Debtors have no ability to say they do

7    not feel they should be paying anymore because we need to

8    pressurize it.

9             And so, we're not formally asking for relief.  The

10   Court has asked me pointedly at three hearings in a row,

11   what is the Debtors' vision, what is the Debtors' timeline,

12   when is mediation ending.  And so, I do want to say, it is

13   the Debtors' view that something like the end of August

14   seems like the right deadline to pressurize the situation

15   for mediation on the intercreditor allocation.

16            No matter how hard many people are working, the

17   reality is, with all of us (sound drops) own homes, trying

18   to stay safe and healthy and well, with no ability to be

19   dragooned and stared down by mediators and forced to stay

20   until two in the morning, I believe we need some external

21   help pressurizing this phase of the mediation so we can go

22   on to the next phase.

23            If the Committee or others believe that they're

24   not going to be ready, willing, or able to try to negotiate

25   a deal with the Sacklers by September and they need until

Page 51

1    December or January, and the view is, we should spend (sound

2    drops) million dollars more in fees to get there, that's

3    fine.   That's not the Debtors' view, but the Committee is

4    entitled to their view if that really is their view.   But I

5    was asked questions by the Court that I refused to answer in

6    three hearings and that was my limit and I felt an

7    obligation to actually answer what the Court asked me on

8    these questions.

9               THE COURT:   Okay.   Mr. Joseph, you were going to

10   say something?

11              MR. JOSEPH:   Thank you, Your Honor.

12              THE COURT:   Or maybe it got preempted.

13              MR. JOSEPH:   No, it actually is responsive to what

14   Mr. Huebner was just saying.   Right now, just on the B side,

15   we're in the process of reviewing nearly a million documents

16   which means multiple million pages covering a 25-year

17   period.   Before we started -- before we started -- everybody

18   in the case already had 50 million pages of documents from

19   Purdue that have been produced in the MDL.   They had two

20   current depositions from Sackler defendants, and all the

21   claims against the Sacklers are derivative of claims against

22   Purdue.

23              Those are, overwhelmingly, Purdue documents,

24   Purdue solvency and its aware of litigation risk Purdue

25   documents.   So, we're now collecting other data, not Purdue

Page 52

1    documents, and we've collected over 7.6 terabytes of data.

2    That is half the volume of the Library of Congress.  Judge

3    Coats had an opinion about 15 years ago saying that 4

4    terabytes, half of what we've collected, would fill 16 Sears

5    Towers.

6              So, we've got about 30 Sears Towers' worth of

7    documents.  We've already produced the most important

8    documents.  They already have from the Debtors the business

9    emails of our clients.  We produced the personal ESI from

10   Richard John and David Sackler from 1995 or before through

11   the time they left the board in '18 or '17.  That required

12   review of over a million pages and it was done by July 1.

13             We're going to be finished with the manager of the

14   family office and all his documents by August 14th and by

15   September 1, they'll have all of the tax filings, the

16   financial statements, the audit reports, and the bank

17   records for 44 trusts, six companies, and the individuals on

18   our side.  So, what's taking until October 1st -- and these

19   are all agreed dates which were filed in a stipulation in

20   June -- is children and spouses who never had a full-time

21   job a Purdue, and that's another 165,000 documents -- I

22   don't know if that's a million pages, but it's a lot of

23   pages -- and documents from a company David Sackler founded

24   and left.

25             Documents are going to be produced September 1.

Page 53

1    If we were in a conventional litigation or an adversary

2    proceeding, you'd never go back 25 years to all of these

3    custodians.  We've already produced nearly a half-a-million

4    pages.  We've made six productions since May 1.  We have 90

5    lawyers reviewing documents.  The timeline is governed by

6    the scope of the demands.  Those are agreed to dates, but I

7    have to say, I find it highly, highly offensive for

8    Committee counsel to be talking about the Sacklers getting

9    away with something.

10           They have not articulated a claim and we don't

11   believe there ever will be a claim they can articulate

12   against the Sacklers, and I think that ought not have been

13   stated, whether it's under the guise of quoting the headline

14   of an op-ed piece in the New York Times and then saying the

15   Sacklers may be able to get away with it, which is the

16   Committee saying something which they have no right to say.

17   They stated no claims, but I don't want to carry on.  Thank

18   you, Your Honor.

19           MR. HUEBNER:  Your Honor, can I --

20           MR. HURLEY:  Your Honor --

21           MS. BALL:  Your Honor --

22           MR. HURLEY:  It's Mitch Hurley, Your Honor.  I'd

23   like to be able to respond to that, briefly, if I may.

24           THE COURT:  Just briefly.

25           MR. HURLEY:  Okay.  so just to correct something

Page 54

1    for the record, I think Mr. Joseph said that all of the

2    three initial Sacklers' emails have been produced.  That's

3    actually not right.  David Sackler's emails include,

4    apparently, a large number that were maintained at a company

5    he founded called Moab, and those documents are not going to

6    be produced until September 1st.  That's my understanding

7    what their agreement is.  I'm sure they'll correct me if I'm

8    wrong about that.

9            We certainly didn't make an allegation against the

10    Sacklers with respect to what they're going to get away

11    with.  Of course, I was just pointing out that  there are

12    many victims and members of the public in general that are

13    very interested in this case and are watching it very

14    carefully, including, as I think from that article that I

15    cited in the New York Times, I think, is just one example,

16    but our investigation is underway, as Mr. Joseph just

17    pointed out.

18            It's our intention to continue and complete that

19    investigation.  It is a complex investigation, but we are

20    staying focused, Your Honor, very closely on the claims at

21    issue.  Those claims require an investigation of a series of

22    -- that took place over an extended period of time and they

23    do require an examination of a lot of material.  Part of

24    what we're looking for and that hasn't come in yet -- again,

25    it's not just the additional members of the Sackler family -

1    - and this is crucial -- it's the IACs.  I won't go over the

2    history of that again.

3            I know Your Honor doesn't want me to and I won't,

4    but the IAC discovery is also part of what is only now just

5    beginning and won't be concluded until October at the

6    earliest.  The Committee, all we can do is communicate to

7    Your Honor how important, from the Committee's perspective,

8    and we believe from the perspective of all or almost all of

9    the creditors in these cases, it is to ensure that a

10   sufficiently comprehensive investigation is carried out and

11   we're going to keep trying to do that.  Thank you.

12           THE COURT:  Okay.

13           MR. TROOP:  And, Your Honor, if I may, it's Andrew

14   Troop for the nonconsenting states.  Your Honor, Mr.

15   Hurley's last -- I hope you can hear me, Your Honor --

16           THE COURT:  Yeah, I can hear you fine.

17           MR. TROOP:  -- clearly.  Thank you.  Mr. Hurley's

18   last point that this case is one of substantial import for a

19   number of reasons that requires a level of investigation

20   into conduct and answers that is driven by the public and

21   the public's need to know --

22           THE COURT:  Can I interrupt you on that point?

23   Not that you're saying anything --

24           MR. TROOP:  I don't think --

25           THE COURT:  -- I don't agree with.

1          MR. TROOP:  I don't think I get a vote, so go

2     ahead.

3          THE COURT:  But I think that -- make sure I phrase

4     this correctly.  Your clients and Mr. Eckstein's and his

5     colleagues' clients in large measure represent the public.

6     So, in that sense, I understand your point.  I understand it

7     completely.  I also understand that the Committee is the

8     fiduciary for all of the creditors of this company and

9     since, as I said, one can at least make some argument that

10    every American is a -- in some level of some conceivable

11    theory a creditor of this company, they also represent the

12    public.

13         What I find extremely frustrating, and I recognize

14    that your clients are a politician so they have to live in

15    this water, but I don't, and I want to make it clear.  The

16    press, who in a number of totally irresponsible articles led

17    people who have truly suffered, because of the opioid

18    crisis, to believe that there is no investigation going on,

19    that this case's purpose is somehow to let the Sacklers get

20    away with it and that without the appointment of an examiner

21    there won't be an investigation, is just completely and

22    utterly misguided.

23         So, for anyone to believe that they should be

24    driven by such trash is just a big mistake.  We cannot

25    muzzle the press, but certainly, people should understand

Page 57

1    that what is being put out as if it was news is completely

2    false and should lead them to decide that they do not want

3    to buy or click on that publication in the future because

4    they cannot trust it to do the basic due diligence that any

5    reporter should do.

6            So, I don't want to hear some idiot reporter or

7    some bloggist quoted to me again in this case.  And you and

8    your client should not be guided by anything of that sort or

9    some misguided law professor who does not take the basic due

10   diligence that you would think he or she would want a first-

11   year law student to do to actually look at the actual

12   transcript and the record in the case before spouting off

13   about the need for an examiner, including completely

14   ignoring the appointment of a corporate monitor, the

15   commitment as part of the injunction to have a full account,

16   and the examinations that are going on.

17           Now, that's not my anger at you, Mr. Troop.

18   That's my anger at people just simply putting their hands

19   over their eyes and their fingers in the ears and purporting

20   to speak to people who have been harmed, who have had

21   children die, and stirring them up because it's click bait.

22   They should understand that they should stop buying those

23   publications and stop clicking on those sites.

24           MR. TROOP:  Your Honor --

25           MAN 1:  Your Honor --

1            MAN 2:  Hey guys?  Hey, guys, thanks a lot --

2            THE COURT:  Mr. Troop was interrupted so -- have

3       the floor.

4            MR. TROOP:  Thank you, Your Honor.  Your Honor, as

5       you know, well before any of the items and issues that

6       you've identified, states were fulfilling their obligations

7       to pursue and, in that process, discover facts to support

8       claims of potential liability and as you know also, and as

9       Mr. Huebner repeated, the Debtors' plan here is -- continues

10      to be to pursue a path that will result at least in a

11      request for releases and for the Sacklers and others.

12            It is in that context, as you know, that we, the

13      nonconsenting states as well as others in the case have

14      really worked in an unprecedented fashion with the Creditors

15      Committee to identify ways that we can marshal -- no pun

16      intended -- assets, resources, and undertake the diligence

17      that well be required for, in my case, attorneys general to

18      decide to agree to what we expect will be a far ranging

19      release request or not and that the observations that I

20      think everyone has made, which are necessarily conflicting

21      in some ways, Your Honor, that there is a desire to move

22      things on as -- to move things on quickly, but there is a

23      reality that doing so is a large, complex, multifaceted,

24      multi-partied, multi-issued endeavor and that the point that

25      I think was being made -- and I don't think anyone really

Page 59

1    can disagree with -- is that to balance these issues and

2    complexities requires the herculean efforts that I think

3    just about every party in this case has undertaken to -- for

4    mediation parties to proceed with mediation or us to work

5    through discovery issues which are not finally memorialized,

6    but I think will be with the Debtors, to get documents from

7    financial institutions, to get taxpayer ID numbers out of

8    the Sacklers, to facilitate that, just take a lot -- just

9    takes time, Your Honor, with everyone's diligence and really

10   very hard work and on a schedule that is agreed to.

11          I don't think anyone -- was agreed to between the

12   Committee and the Sacklers, that potentially doesn't have

13   discovery concluding until October 1, October 26, depending

14   upon how you want to think about those dates that, as Mr.

15   Hurley said, will require some deposition discovery,

16   appropriate deposition discovery.  We're all very much

17   focused on that.  The point is simply, it is a -- it's going

18   to be a hard push to keep to the timeline, to keep to a

19   timeline that, as a consensual plan, consensual, confirmable

20   plan on file, well in advance to use Mr. Huebner's words, of

21   the extended exclusivity date of December 10.

22          That doesn't take away from anyone's desire or the

23   effort they will undertake to do so, and I'm ascribing, in

24   this context, an assumption that everyone will work hard

25   towards those goals, but there may be disputes that you have

Page 60

1   to decide along the way.

2          There are lots of things that could -- that will

3   likely come into play here despite everyone's best

4   intentions and efforts, and so, Your Honor, here, I think

5   Mr. Eckstein will talk for the three groups on the issue of

6   timing with this stage of mediation, but I think that the

7   fact that we all want to proceed today with the class

8   certification motion reflects our collective belief that

9   things have to move forward in the case, including in

10  connection with these motions and with mediation and that

11  we're committed to move forward quickly, but I don't want to

12  step on Mr. Eckstein's toes too much there.

13         And otherwise, that we're all working -- we really

14  are working together, Your Honor, more so than I've ever

15  seen in my 35 years of practice, amongst parties who might

16  not really have the same end results in the case -- of the

17  case in mind, at least not yet.  So, Your Honor, unless you

18  have any further questions for me, that's all I have to say

19  on this.

20         THE COURT:  Okay, thank you.

21         MS. BALL:  Your Honor, Jasmine Ball from Debevoise

22  and Plimpton on behalf of the Mortimer side.  I think it's

23  just important, given that people have been talking about

24  discovery and timing of discovery and that there's so much

25  that they still need to see, that we just include at least

Page 61

1    the Mortimer side information along with the Raymond side

2    information, so that the other half of the Library of

3    Congress is actually noted.  I mean, I think on the Mortimer

4    side, we've already produced nearly 1,150,000 pages with

5    respect to documentation and that's over 200,000 documents.

6         We've had over 200 attorneys and other persons,

7    both in the U.S. and Europe, doing this document review on

8    this timeframe for -- as requested by the UCC, and we're

9    currently reviewing an additional 200,000 documents that

10   will get produced in the next month to them and we've

11   collected ESI from over 50 email accounts and digital

12   devices already totally many, many terabytes of data at this

13   point and we've also produced priv logs that describe over

14   28,000 documents and that include lists of hundreds of

15   individuals who appear on the logs and as mentioned just

16   recently with respect to bank records, we've actually

17   reviewed over 23,000 pages of bank records that have already

18   come in from financial institutions that have been produced

19   in response to the nonconsenting states' subpoenas.

20        So, there's actually been a lot of data, both from

21   the Raymond side and the Mortimer side, the family's already

22   been produced, so we just want to make sure the record is

23   clear on that.  We don't want anybody to think that people

24   aren't actually producing information for the other side to

25   review.

Page 62

1           THE COURT:  Okay.  Thank you.

2           MS. BALL:  Thank you, Your Honor.

3           MR. ECKSTEIN:  Your Honor, would it be appropriate

4    for me to be heard?  This is Kenneth Eckstein.

5           THE COURT:  Sure.

6           MR. ECKSTEIN:  I actually was hoping to speak

7    briefly about exclusivity, rather than simply discovery, if

8    I may, since there's a lot that's been put on the record, so

9    thank you, Your Honor.  I know Your Honor reads the

10   pleadings and I'm sure it was observed that we were able, in

11   connection with this exclusivity motion, to file a pleading

12   not simply on behalf of the Ad Hoc Committee and there were

13   not multiple pleadings filed, but there was a single

14   pleading filed by each of the public groups that have been

15   acting in this case, the Ad Hoc Committee, the nonconsenting

16   states, and the MSGE.

17          THE COURT:  I actually did a hand bump over that.

18          MR. ECKSTEIN:  We've -- I wanted to make sure Your

19   Honor appreciated that.  We've been listening.  But it was

20   significant, Your Honor, because it does reflect that there

21   has been meaningful progress made in this case and I want to

22   underscore the fact that weeks and weeks of effort have been

23   put in since March by the three constituencies within the

24   public side to build greater consensus and very significant

25   progress has been made that we think is an important

Page 63

1    building block to developing a plan.

2            That said, the pleading that we filed, I don't

3    believe, was precisely characterized by Mr. Hurley.  I think

4    we tried to be practical and we tried to recognize the fact

5    that this is a complicated case where there's a lot that

6    still needs to be accomplished.  There are actually three

7    separate workstreams that are going on simultaneously, Your

8    Honor.  There is the very active mediation that is -- I can

9    represent, is consuming the time of scores of people on a

10   daily basis, including the mediators, and parties are --

11   from every constituency are working in good faith to try to

12   move this mediation forward.

13           We subscribe to the view that this mediation

14   should be coming to a conclusion.  We don't think that it's,

15   at this point in time, necessary to impose a strict calendar

16   deadline, but we think that there should be real aspirations

17   that the mediation concludes within the next few weeks.

18           I think Mr. Huebner referred to the end of August

19   as sort of a goal, and I think that we generally view that

20   as being an appropriate view as to the time people will need

21   to try to reach resolution, but right now, we think that

22   holding parties' feet to the fire but without imposing

23   strict deadlines probably is the most productive way to

24   proceed and there may need to be more periodic and interim

25   check-ins to figure out exactly when this comes to

Page 64

1    conclusion.  I know this subject that Your Honor is thinking

2    about carefully.

3           At the same time, there is a lot of activity also

4    going on, on the question of the future of Purdue and the

5    business, and as Mr. Huebner indicated, there has been a lot

6    of constructive communications about the financial

7    projections, about the options, about what the priorities

8    are and the goals are and that has to also reach a

9    conclusion and all of the parties in the case have been

10   involved in those discussions as well on a very active

11   basis.

12          And there's a third leg, which has just gotten a

13   lot of attention, and that is the discovery that is going on

14   with respect to the Sacklers, and we did point out in our

15   pleading, the October 26th deadline which we know has been

16   negotiated and we suggested that as a practical matter, in

17   order for a plan, in our view, to be filed in the timeline

18   that Mr. Huebner identified, which we subscribed to, which

19   is to get a plan filed as early in the fall as possible,

20   practical steps would need to be taken to accelerate and

21   move up that deadline to the extent possible.

22          For example, if depositions are going to be needed

23   in order to complete this process, we would those

24   depositions to be scheduled as soon as possible.  We should

25   know what dates in October those depositions are going to

Page 65

1    take place.  Parties don't need to wait until the end of

2    October to then start scheduling the depositions.  The

3    documents are coming in.  We heard those representations.

4    Depositions should be scheduled.  They should take place and

5    they should be concluded so that that process can really

6    come to a conclusion or as close to a conclusion as possible

7    by the early, mid, or at latest, late part of October.

8             There is no reason why parties cannot continue to

9    work and fold all of these items into the plan process that

10   has to take place and we are very, very much of the view

11   that the plan should be coalescing and should be filed as

12   early as possible in the fall as we can.  And at this point

13   in time, whether it's the beginning of October or the end of

14   October, I don't think we're yet ready to sort of put a pin

15   in, but we think that whatever building blocks need to be

16   taken in order to achieve the filing of a plan by October or

17   the latest, the beginning of November, needs to be put in

18   place and this is when we should get there.

19             And I believe that is the view of each of the

20   public entities, and I think that without in any way

21   minimizing the challenges of reaching a resolution that has

22   the support of the public claimants, the private claimants,

23   the Department of Justice, and ultimately is going to have

24   to be negotiated with the Sacklers, is a lot to be done.

25   But it is time to do that now and we are very, very

Page 66

1    committed to making sure that the goals that Mr. Huebner

2    expressed are accomplished successfully over the next two or

3    three months that are on the calendar.  So, thank you, Your

4    Honor, for listening to that statement.  We hope that can be

5    achieved.

6         THE COURT:  Okay, thank you.  All right.  As I

7    noted, I had given a fair amount of thought to how to move

8    this case forward and have been over the last couple of

9    months.  I, of course, don't know what's going in the

10   mediation, although I've heard from the parties at these

11   omnibus hearings as well as statements that they've made in

12   pleadings before me.  I have, of course, been a mediator on

13   a number of cases with difficult plan related issues, and I

14   know that there are two very talented and experienced

15   mediators in this case.

16        I think that under the circumstances, a working

17   deadline is important for the conclusion of the mediation.

18   Having said that, I think it's also important to give the

19   mediator sufficient flexibility to let me know that while

20   we're very close on something, extend it a little bit, or

21   not, and frankly, if one sets a working deadline it doesn't

22   mean that the mediators can't say we're done three or four

23   weeks before that.

24        But it does seem to me, given the duration of the

25   mediation and the issues involved, that the end of August is

Page 67

1   a good working date to have as a date in everyone's mind,

2   including the mediators, as to when the mediation should be

3   concluded, at the Monday, the 31st.

4          We have the August omnibus date on Wednesday, the

5   26th.  Obviously, if the parties want to give me an update

6   then and say, no, we're -- we think another couple weeks or

7   another week is appropriate, by all means, that makes sense

8   and I will defer to them and to the mediators.  But I think

9   that that amount of time should be sufficient for the

10  parties who are here, well represented, thoughtful, and have

11  been engaged, I can tell, in a very meaningful way already

12  for a number of months to reach an agreement.

13          I sincerely hope that that's an agreement that

14  involves and includes all of the mediation parties, but

15  having, again, served in that role many times, I know that

16  sometimes you can't achieve that.  Maybe you get all but

17  one, for example.  I'm not expecting complete consensus,

18  necessarily.  That's to be desired, and obviously, there's a

19  risk if you're a hold-out, as things move forward in a

20  bankruptcy case.  So, I would urge all the parties, as I did

21  last month, to put aside the perfect and agree on the good

22  and move on with things, to the next stage in this case.

23          As far as the other two workstreams that Mr.

24  Eckstein referenced, it appears to me that the financial

25  workstream, i.e., the projections and future of the Purdue

Page 68

1    business, is something that the financial advisors and the

2    bankruptcy lawyers should be able to work out in plenty of

3    time to negotiate a plan, and frankly, could probably do so

4    in September.

5          The hardest part of this case, and it always has

6    been, is dealing with the claims against and potential

7    contribution by and release of, for wont of a better term,

8    the Sacklers.

9          I have made it crystal clear since the beginning

10   of this case that the due diligence behind an agreement with

11   the Sacklers that would be embodied in a plan is going to be

12   of an unusually high level in order to achieve consensus in

13   this case, just given the visibility of the case, but I'm

14   not talking about visibility to members of the press who

15   want to get clicks, but legitimate concerns that public

16   officials and creditors have about the quid pro quo for

17   relief.

18         The discovery here is, I think, extraordinary for

19   a bankruptcy case.  One of the reasons that settlements are

20   so highly accepted in bankruptcy cases is the realization

21   that there's not enough money to go around and that with

22   reasonable due diligence, parties should be able to decide

23   how to allocate it and settle claims and causes of action

24   without incurring the full cost of litigation.

25         So, I understand the work that has been undertaken

Page 69

1    here, and in some level, I'm responsible for imposing it

2    beyond the normal level of discovery that would be expected

3    in a bankruptcy case, even a very large bankruptcy case.

4    But at the same time, considerations pertaining to

5    bankruptcy cases to apply here, particularly in the desire

6    of everyone to get a plan confirmed so that the

7    consideration to the creditors can begin to flow.

8              So, I guess the best that I can say here is,

9    largely to paraphrase Mr. Eckstein's remarks, the parties

10   should be moving forward to analyze what's coming in from

11   the Sackler parties and anticipating potential bottlenecks

12   and should act now to address those potential bottlenecks.

13   If you're anticipating important privilege issues, surface

14   them now.  Schedule depositions now.

15             Think about whether you can actually have the

16   deposition now, with the agreement that you would supplement

17   it based on the last bits of discovery that come in in

18   October, so that you will be ready to negotiate in late

19   October and move quickly to a plan that can be filed and

20   heard by the end of the year, if possible.  It's all of your

21   money.  At some point, I'm just urging you to husband your

22   resources so that it gets out faster.

23             I had in my notes that I don't want to see plan

24   confirmation any later than February.  It should be before

25   then, and I think with the talent of the parties here, it

Page 70

1    can be, but you need to continue to press and continue to

2    evaluate on the bankruptcy side, you need high level adult

3    supervision to decide when you can start negotiating.

4            Obviously, you don't need every document in before

5    you can start doing that.  So, I'm not setting any

6    particular deadline for negotiations of a plan, but the

7    parties should be focusing on getting to a point with the

8    third workstream here, the Sackler workstream, to be able to

9    do that in late October and should, more importantly, look

10   to end that process with a plan being filed in November or

11   early December, if not before.

12           Your constituents, ultimately, will thank you for

13   that.  It doesn't matter what some numbskull op-ed writer

14   puts in or a misinformed reporter puts in.  It matters

15   what's laid out on the record, ultimately.  So, on the

16   exclusivity motion, I'll grant that motion and you can

17   submit it to chambers.

18           So, going back to the mediation, I'm serious about

19   this.  It's important for all the parties who are engaged in

20   that mediation to put your best foot forward and get this

21   done by the end of August.  It may well not go beyond then

22   and you may lose your chance, so please, a lot of money has

23   been spent on this.  A lot of effort has been spent on it.

24   You have two very talented mediators.  Use the opportunity

25   to conclude, not as just one more step in a decision tree.

Page 71

 1    Usually, when people draw those types of decision trees,

 2    they end up cutting off the branch that they're sitting on.

 3    End it by the deadline, by reaching an agreement.

 4            Okay.  That probably took a lot longer than people

 5    were expecting, so why don't we move on to the item on the

 6    agenda?

 7            MR. HUEBNER:  Thank you, Your Honor.  I was going

 8    to say, that concludes the first uncontested matter, which

 9    is exclusivity.  Obviously, I'm sure there will be lots

10    (sound drops).  Number two is the dismissal agreement and

11    Your Honor, let me just sort of apologize.  Because the

12    binders were so voluminous and had been hand delivered,

13    things move around a little bit and we didn't want to ask

14    the Court or the (sound drops), so Mr. Robertson, let me ask

15    you, number two, the dismissal agreement motion, is that

16    still number two, and is it your podium?

17            THE COURT:  Number two.

18            MR. ROBERTSON:  That is correct on both regards.

19            MR. HUEBNER:  Okay.  I'm off.

20            MR. ROBERTSON:  So, thank you, and thank you, Your

21    Honor.  For the record, Christopher Robertson, Davis, Polk,

22    and Wardwell, on behalf of the Debtors.  The second item on

23    today's agenda is the Debtors' motion to approve a dismissal

24    agreement with Intellipharmaceutics.  That filing is at

25    Docket No. 1327.  Very briefly, pursuant to the dismissal

Page 72

1    agreement, patent litigation between the parties that is

2    pending in the Delaware District Court will be dismissed

3    without prejudice.  The motion is uncontested.  Unless Your

4    Honor has any questions, we would ask that the motion be

5    granted.

6            THE COURT:  Okay.  I guess my only question here

7    is the consideration that the Debtors are providing here, I

8    gather, is a tradeoff for the other side's agreement in

9    Paragraphs C, D, and F not to take certain actions, correct?

10           MR. ROBERTSON:  That's right, Your Honor, and also

11   it is the advice from outside IP counsel that the agreement

12   is needed for both parties to dismiss the current action.

13   In other words, this is not something that Purdue could

14   dismiss unilaterally and so --

15           THE COURT:  Right.

16           MR. ROBERTSON:  -- as well.

17           THE COURT:  No, I understand that, and, in

18   essence, the Debtors are paying a portion of what they

19   would, in any event, be paying in additional litigation

20   costs to get a result at least on an interim basis, that

21   they would maybe only get if they won after spending all

22   that money.

23           So, it appears, to me, that the settlement is fair

24   and reasonable, taking into account the litigation risks,

25   costs, and benefits of the settlement, so I'll approve it.

Page 73

1    You can email the order to chambers and it'll be entered.

2            MR. ROBERTSON:  Thank you, Your Honor, and I will

3    cede the podium back to Mr. Huebner.

4            THE COURT:  Okay.

5            MR. HUEBNER:  So, I actually think I'm going to

6    sort of re-cede to Mr. Preis because motions three and four

7    or Items 3 and 4, UCC's motion to shorten time and the UCC's

8    "clinical contributions motion" (sound drops) read on an

9    order of operations.  Mr. Preis, assuming you're ready, here

10   we go.

11           THE COURT:  Okay.

12           MR. PREIS:  Good afternoon, Your Honor.  Arik

13   Preis from Akin, Gump, Strauss, Hauer, and Feld again, on

14   behalf of the Official Committee.  On July 10th at docket

15   No. 1373, we filed a motion seeking entry of an order

16   clarifying the Debtors' obligations with regard to certain

17   post-petition political contributions.  We also filed at

18   Docket No. 1372 a motion to shorten the time to hear such

19   motion by one day.

20           THE COURT:  No, no.  That -- I'm going to deal

21   with the motion to shorten time.  That's only under the case

22   management order.  There's sufficient notice on this motion,

23   generally, under the case management order.  It would -- one

24   would be heard on the next omnibus date, but I have no --

25   I'll grant the motion to shorten time.

Page 74

1          MR. PREIS:  Thank you, Your Honor.  That's what I

2     was going to ask.

3          THE COURT:  Right.

4          MR. PREIS:  Okay.  Specifically, the first time we

5     learned about these political contributions was three days

6     before we filed the motion, through an expose piece -- I

7     know you don't want to hear about the press -- that the

8     Debtors had made a number of contributions after the

9     commencement of the Chapter 11 cases.  We explained those

10    contributions in our motion and I really want to stress

11    that, to be clear, as we put in our original pleading, we

12    did not file the motion to launch a morass of litigation.

13    In fact, we did it to prevent it.

14         We spoke to quite a few parties before we filed

15    the pleading and we tried our best to make sure that this

16    didn't get out of hand.  We fully understand the Debtors

17    position -- I think Mr. Huebner may want to say something

18    about that when I'm done -- that these contributions were

19    important to Purdue's ongoing business, and we understand

20    their belief that the contributions were ordinary course.

21         But for the reasons we put in our motion, we felt

22    strongly that the issue needed to be brought to light, for

23    the benefit of all creditors and the public at large, given

24    the highly unique and political circumstances of these

25    cases.  Again, our issue here is one of process.  The

Page 75

1    Official Committee is very appreciative that both prior to

2    and following the filing of the motion the Debtors worked

3    with us in an effort to resolve the issues surrounding the

4    political contributions.

5           In fact, although we did not -- specifically did

6    not request in our motion that about -- we did not request

7    that any parties return the money or that the Debtors ask

8    for any of the money back.  We were pleased to see that the

9    Debtors requested that the two attorney general

10   organizations, the Democratic Attorney General Association

11   and the Republican Attorney General Association, return the

12   funds, which they did.  The two governors' associations, the

13   Republican Governor Association and the Democratic Governor

14   Association, also returned the payments that had been made

15   to them.

16          In total, $185,000 was returned to the Debtors.

17   Further to these efforts, and as I'd mentioned, we have been

18   speaking to the Debtors quite a bit and we also -- for

19   transparency, we also did speak to Secretary Vilsack as the

20   independent monitor.  We are pleased to report that we have

21   reached consensus with the Debtors regarding the requested

22   relief and therefore, subject to entry of an order modifying

23   the joint proposal, we're satisfied that the relief that we

24   had requested has been consensually resolved.

25          I'd like, at this point, to read the proposed

Page 76

1    resolution in respect of the motion for Your Honor.  Is that

2    okay, or would you like to hear --

3              THE COURT:  Well, is it -- I mean, I have the form

4    of order.  Is it different from the order?

5              MR. PREIS:  Yes, it is.

6              THE COURT:  Okay, yeah, you should do that, then.

7              MR. PREIS:  Okay.  My question is, did you want me

8    to go through that or did you want to hear from the Debtors

9    first?  We had worked out that I would read --

10             THE COURT:  Well, if it's agreed, if it's agreed,

11   why don't you read it and then I can hear from the Debtors

12   to the extent they want to say anything further.

13             MR. PREIS:  Okay.  "Number one, for the duration

14   of the Chapter 11 cases, the Debtors will not make any

15   payments to Democratic Attorneys General Association, the

16   Republican Attorney General Association, or any other 527 or

17   other organization, the primary membership or function of

18   which is focused on attorneys general.  For all other 527

19   organizations and for the Chapter 11 cases, the Debtors will

20   agree to a $25,000 cap per organization and an aggregate cap

21   of $125,000 each for the duration of the Chapter 11 cases

22   asked in further order of the Court, plus de minimis

23   incidental costs such as conference registration fees.

24             "For the four existing 527 organizations to which

25   the Debtors contribute, which are not organizations whose

1    primary membership or function is focused on attorneys

2    general, and those four are the Democratic Governors

3    Association, the Republican Governors Association, the

4    Republican State Leadership Committee, and the Democratic

5    Legislative Campaign, the Debtors will agree to make such

6    payments on the customary renewal schedule, again, no more

7    than $25,000.

8              "For these four groups, renewal payments are made

9    between November 1st and December 31st, 2020 and therefore

10   no payments will be made to these four groups before

11   November 1st of this year, though it is possible some of the

12   payments could slip into 2021.  For any 527 organizations

13   that Purdue wishes to join or contribute to beyond these

14   four, the following rules will apply.

15             "First, any such contribution will be subject to

16   the $25,000 per organization and $125,000 aggregate case

17   cap," which I mentioned earlier.  "And two" -- and this is

18   the profit point that was important to the Committee --

19   "before making contributions to such organization, the

20   Debtors will provide notice on the docket of their intent to

21   make the payment 30 calendar days before such payment is

22   made, including the identify of the institution and the

23   amount of the proposed contribution."

24             And finally, for the avoidance of doubt, the

25   Debtors were good enough to provide us quite a bit of

Page 78

1    diligence as to other contributions they make to other

2    associations and organizations such as trade associations,

3    nonpolitical organizations, and 501(c)(3) nonprofits.  For

4    all of those, there will be -- those entities will not be

5    subject to any caps or restrictions.

6            We believe, and I believe the Debtors believe as

7    well -- and I'll let Mr. Huebner speak for the Debtors --

8    that this outline, this compromise, this solution,

9    represents a reasonable resolution of our motion that

10   ensures transparency without imposing potentially harmful

11   restrictions on the Debtors business.

12           Before I ask Mr. Huebner to speak, do you have any

13   questions for either myself or Mr. Huebner about the

14   resolution?

15           THE COURT:  And is that going to be embodied in an

16   order, Mr. Preis?

17           MR. PREIS:  Yes.  We --

18           THE COURT:  Okay.

19           MR. PREIS:  -- intend on filing an order so that

20   it's clear on the docket for all parties in the case.

21           THE COURT:  All right.  Okay.  No, I don't have

22   any questions.

23           MR. HUEBNER:  Good afternoon again, Your Honor.

24   Mr. Huebner for the Debtors.  I can hopefully be brief.

25   Your Honor, you've already heard, we reached a resolution.

Page 79

1    We actually reached that resolution frankly -- really,

2    almost immediately after learning of the issue.  I

3    appreciated Mr. Preis' acknowledgement that we moved

4    extremely quickly to get an understanding of this and to

5    come up with something reasonable under these very unusual

6    case circumstances.

7            Because, obviously, if you lose the sound of a

8    good name, you lost everything, I do need the Court to have

9    a little bit of context on some things because there was a

10   filed motion that said some other things, and so I think a

11   little bit of context very quickly is important.  The

12   Committee, obviously, we're resolved and so they're not

13   seeking a resolution and their motion said they were not;

14   although, it was a (indiscernible) issue, that maybe these

15   payments were not in the ordinary course.

16           Just to give you a sense in how, sort of, we think

17   about things on the Debtors' side, because this is important

18   to us, let me just quickly explain.  In operating their

19   business, the Debtors, like many, probably most other major

20   pharmaceutical and other companies, have joined established

21   political organizations like this for many years.  This is

22   not done for improper purposes.  It's done by many large

23   corporations because involvement in these organizations is

24   thought to provide them, along with hundreds of other law

25   firms, some of whom are on the phone today, corporations and

1    other businesses with important insight and potentially

2    (sound drops) into legislative and regulatory changes that

3    are critical to the operation of the Debtors' business, and

4    most importantly, to the preservation of value for all

5    stakeholders.

6              While the post-petition membership payments were

7    not substantial and you just heard me finish begging for 40

8    minutes to get this case out faster to save every dollar we

9    can, they also were consistent both with years of Purdue's

10   prepetition memberships in most events were far lower than

11   payments made by the dozen -- by dozens of the Debtors' peer

12   pharmaceutical and other companies.  Hundreds of companies

13   contribute to these organizations every year, including

14   pharma companies, and in some cases, their membership levels

15   are multiples of the Debtors who often joined at the lowest

16   or second lowest tiers.

17             But Mr. Preis is right, and was right, that being

18   comfortable with the payment's legality but not in the

19   inquiry, because lots of things matter besides just, did

20   this need Court approval or did it not.  Thus, as we've

21   already discussed, literally within minutes of the Committee

22   raising the concerns, which was a call from Mr. Preis and

23   Ms. Brauner to me, the Debtors jumped right in and by that

24   night, we were already pumping out information about exactly

25   the scope of these and other payments.  No one took the view

Page 81

1   that this was not a fair issue to raise and we immediately

2   offered go-forward limitations that, I think, look an awful

3   lot like the final deal and those were made within something

4   like 36 hours of a standing start, having never known about

5   the issue before.

6          And so, I do want to give the Court and all

7   parties comfort, because this case is very charged, that the

8   Debtors are very sensitive to issues like this and when

9   they're brought to their attention, we work very hard and

10  fast.  One last thing, Your Honor, which I think is also

11  important to note, because obviously, the notion that a

12  $1,000 527 contribution now needs 30 days' advance notice on

13  the docket does sort of suggest things about that, even

14  though, obviously, they're very typical and so to give the

15  Court and all parties some comfort, let me just very quickly

16  explain what the Debtors have actually don't with political

17  contributions in the last 18 to 24 months, and they're just

18  five quick points.

19         One, as of October 2018, the Debtors ceased all

20  direct local contributions to all political candidates.

21  Two, since June 2018, the Debtors' government affairs

22  department has been -- has reduced its personnel by 55

23  percent in light of its radically lower level of activity

24  and involvement.  Three, the Debtors have not retained any

25  new contract lobbyist since 2018.

Page 82

1          Four, there was a PAC, a political action

2     committee, earlier on, but it was shut down prior to the

3     petition date.  It's made no expenditures since July 12,

4     2019 except to disburse the remaining funds to nonprofits,

5     which is what you have to do under federal finance campaign

6     law if you're not going to give it out for political

7     purposes for which the PAC was originally done and

8     technically, the final ministerial act after the last check

9     cleared happened on September 16th, 2019, one day after the

10    petition date, when the PAC was formally and definitively

11    shuttered.

12          And then last, as Your Honor knows, we have a 13-

13    page extremely dense, extremely long self-injunction that we

14    requested that was negotiated for weeks with many parties in

15    this case back in October, November, and December, and as,

16    of course, note -- the Court noted, it was the Court's own

17    suggestion, we retained a monitor -- an august monitor, to

18    give parties yet further comfort that the Debtor would

19    operate within the bounds of their obligations under the law

20    more generally and under the terms of the self-injunction

21    more particularly.

22          So, that's just a little bit from our side.  I

23    just -- I don't want anybody to believe -- which would be

24    totally untrue, that this is some tip of an iceberg.  Quite

25    the contrary, these payments, we believe, were lawful,

Page 83

1    whether with perfect hindsight and all the right people

2    talked about it and thought about it and had they all ben

3    asked, they would've still been made, hard to say.  Doesn't

4    really matter.

5           But the short answer is, we immediately reached an

6    agreement on the go forward, which as you see, is very, very

7    limiting compared to what we think every one of our peers

8    does, and we were happy to do so because this case is

9    unusual and perceptions matter and appearances and propriety

10   matter and, frankly, it was just the right answer.  So, the

11   Committee wants to file pleading.  That was okay.  The

12   Committee asked us not to file a responsive pleading.  We

13   lived with that.  The Committee wants an order.  That's

14   okay.

15          These are important issues, important to many, and

16   we're delighted that leaving the paperwork aside, we were,

17   in essence, able to resolve it about two business days or

18   three business days after learning of the issues.  I mean,

19   we sort of curly-Q submitted the final contours (sound

20   drops) for a few days, but as I said, an offer a lot like

21   what Mr. Preis just described was actually made, I think,

22   really very quickly as it should have been, because it was

23   an issue that attracted a lot of attention from various

24   parties.

25          So, I would like to thank Mr. Preis, by the way,

Page 84

1    for his courtesy both in working with us very quickly, and

2    in acknowledging both in pleading and today that we did move

3    quickly and work it out as efficiently as we knew how.  So

4    that's all I have --

5              THE COURT:  Okay.  All right, thank you.  I will

6    grant the motion as it's been resolved.  In an ideal world,

7    one would not have any political contributions by

8    pharmaceutical or medical industry companies, frankly, but

9    this is far from that world.  Just the other day, I was

10   affirmed on an opinion where a lobbyist for a healthcare

11   company earned $10 million for lobbying for two bills.

12             But it appears to me that the Debtors and the

13   Committee are both comfortable that in today's world, this

14   result doesn't put the Debtor at a commercial disadvantage,

15   and given that and given the other concerns of this case,

16   this is clearly a fair resolution.

17             By the way, Mr. Preis, I'm perfectly happy with

18   this type of reporting.  This is what journalist should do.

19   I just wish that more of them would do it as to the money

20   that goes into Congress and other sources and would go to

21   NY.  So, you can email the revised order to chambers.

22             MR. HUEBNER:  Thank you, Your Honor.

23             MR. PREIS:  Thank you, Your Honor.

24             MR. PREIS:  That brings us to No. 5, which I think

25   is still resolved, which is the Canadian litigation class

Page 85

1    stipulation.  At the risk of being slightly embarrassed, Mr.

2    Robertson, is that you again or Mr. Baloch?  I know he's

3    sort of (sound drops) guy in general, but I think it's

4    yours.

5                MR. ROBERTSON:  That is me again.  So, thank you,

6    Your Honor.  Once again for the record, Christopher

7    Robertson, Davis, Polk, and Wardwell on behalf of the

8    Debtors.  The final uncontested item on today's amended

9    agenda is Item No. 5, the Canadian litigation class

10   stipulation.  The stipulation permits class counsel to file

11   a patient class proof of claim.  The patient class proof of

12   claim must be solely in respect to claims subject to a

13   conditional settlement in Canada, and the patient class

14   proof of claim will be null and void if that settlement is

15   ultimately not approved by the requisite Canadian Courts.

16               The classes in the actions at issue have been

17   conditionally certified in Canada, solely for purposes of

18   implementation of this settlement.  The agreement to permit

19   the patient class proof of claim is solely for the purpose

20   of administrative convenience, and neither the stipulation

21   nor the filing of any patient class proof of claim

22   constitutes an admission of any fact or of any liability

23   with respect to any claim or in any way prejudices the

24   rights of the Debtors or any other party subject to the

25   allowance amount and/or priority of any claim, including any

Page 86

1    patient class proof of claim.

2            Your Honor, Paragraph 6 of the stipulation is very

3    clear on this point.  The original stipulation was filed on

4    presentment on June 30, and we received an objection from

5    the Canadian government objectors on July 10.  The Debtors

6    and class counsel, party to the stipulation, have agreed to

7    revisions to the stipulation that address the issues raised

8    in that objection.  An amended and restates stipulation was

9    filed yesterday afternoon at Docket No. 1498.

10           The Canadian government objectors have confirmed

11   they are not contesting entry of the amended and restated

12   stipulation, only because the revised stipulation addressed

13   their concerns, and on the assumption that there will be no

14   further material revisions to its form.

15           There are no outstanding objections to the amended

16   stipulation.  Rather than walk through the agreement, which

17   is unopposed and which I'm sure Your Honor has reviewed in

18   detail, I would pause to ask Your Honor if Your Honor has

19   any questions about the stipulation generally or the changes

20   in the amended and restated stipulation filed yesterday.

21           THE COURT:  Well, I have two questions.  First, as

22   I understand it, if the class settlement ultimately is

23   approved in Canada, the money to fund it is coming from a

24   non-Debtor Canadian entity, correct?

25           MR. ROBERTSON:  That's correct.

Page 87

1          THE COURT:  It's not coming from these Debtors?

2          MR. ROBERTSON:  That is correct.

3          THE COURT:  So the proof of claim is just simply

4     to facilitate the overall resolution, which includes the

5     release, which would include these Debtors?

6          MR. ROBERTSON:  That is correct.

7          THE COURT:  Okay.  And then, I guess, it's less a

8     question for you than -- looking at the hearing dashboard,

9     but there are a lot of people on it.  Is there anyone on for

10    the Canadian government entities from Phillips Lytle?

11         MR. KARAVOLAS:  Yes.  Good afternoon, Your Honor.

12    Nickolas Karavolas, Phillips Lytle, for Her Majesty the

13    Queen in right of the province of British Columbia and the

14    other Canadian government objectors.

15         THE COURT:  Okay, so if I am right, then, that the

16    revised stipulation resolves your clients' objection?

17         MR. KARAVOLAS:  That's correct, Your Honor.

18         THE COURT:  Okay.

19         MR. KARAVOLAS:  The amended stipulation addresses

20    the concerns that were raised by the objectors, and they no

21    longer object to entry of the stipulation, under the

22    assumption that was raised by counsel.

23         THE COURT:  Okay, very well.  In light of that, I

24    will grant the motion which, as noted, is now unopposed.

25    The only objection has been resolved by clarifying the --

Page 88

1          MR. FARRELL:  Sir, I apologize for interrupting.

2     Mathew Farrell from Alberta.  I'm on for the City of Grand

3     Prairie in respect of one of the issues in Canada, the -- in

4     addition to claims by the Canadian government, there are

5     also claims which have been filed in respect of class

6     actions on behalf of Canadian cities.  I'm wondering how

7     best to deal with the issues regarding filing of claims for

8     those cities on a class-wide basis, as opposed to

9     individually, noting that the time for filing is fast

10    approaching.  I wonder if that might be --

11          THE COURT:  It's a different point.

12          MR. FARRELL:  I understand.

13          THE COURT:  This motion is really not dealing with

14    claims in this case.  It's really dealing with approval of a

15    settlement agreement that would call upon a class claim to

16    be filed in this way -- in this case by the Canadian class

17    parties, so I'm afraid I'm just going to have to ask you to

18    figure that out on your own.

19          MR. FARRELL:  All right, sir.

20          THE COURT:  But as far as the motion before me,

21    I'll grant the motion.  The settlement is clearly reasonable

22    as far as the Debtors' estate is concerned and as I noted,

23    the one objection has now been resolved with the

24    clarification of the amended stipulation that the Canadian

25    governmental entities' rights in the Canadian -- put is

Page 89

1    differently.  I'm not blessing a class action settlement

2    that somehow binds the Canadian entities, let's put it that

3    way, the Canadian governmental entities.

4           That's, I think, a shorthand way of summarizing

5    the agreement that resolved the objection.  So, the Debtors

6    can email a version of the stipulation.  Are you going to

7    have it just so ordered or you going to have a separate

8    order?

9           MR. ROBERTSON:  Just so ordered, Your Honor.

10          THE COURT:  Okay, so you can -- that's fine.  You

11   can just send that in with the so ordered line on it, and it

12   will be granted.

13          MR. ROBERTSON:  Thank you, Your Honor.  That

14   concludes the uncontested portion of the agenda.  At the

15   risk of misdirecting you, I believe I'm ceding the podium to

16   Mr. McClammy.

17          THE COURT:  Okay.  Very well, thank you.

18          MR. MCCLAMMY:  Good afternoon, Your Honor.  Jim

19   McClammy of Davis, Polk, and Wardwell, LLP, on behalf of the

20   Debtors.  I believe that brings us to the portion of the

21   contested matters dealing with the class claims motion.  As

22   Your Honor is aware, the Debtors are not the movant, but

23   we've asked for your direction how best to proceed.  I

24   believe the next item up is the motion to shorten notice.

25          THE COURT:  Well, I know that is the next item on

Page 90

1    the agenda and that's dealing with the West Virginia NAS

2    claim motion, but I would like to move first to the request

3    by the Official Creditors Committee, and I gather from not

4    only that response by the Committee and request, but also by

5    filings by at least some of the movants, that the

6    Committee's request is joined in by the movants to adjourn

7    the hearing on all of the class motions on the terms of the

8    order proposed by the Committee, which is attached to its

9    response and request for adjournment, which is dated July

10   16.

11           Obviously, if I adjourn the matter, or the

12   matters, then we don't need to go further with a hearing on

13   the objections, which I appreciate have been extensively

14   briefed, but I think we should deal with the adjournment

15   request first.

16           MR. MCCLAMMY:  Pertinent, Your Honor, and having

17   had the papers, would you like to hear from the Debtors and

18   the others opposing adjournment, or would you like to hear

19   from the moving parties first?

20           THE COURT:  Well, I've heard -- I mean, I've read

21   the, obviously, the Committee's response and request for

22   adjournment.  I would like confirmation.  Is there any

23   movant that does not support the request for adjournment on

24   the terms laid out in the Committee's response and request

25   for adjournment?

Page 91

1          MR. PREIS:  Your Honor, can --

2          MR. MCCLAMMY:  Oh, go ahead.

3          MR. PREIS:  I did actually -- sorry, this is Arik

4    Preis from Akin, Gump, Strauss, Hauer, and Feld on behalf of

5    the Committee.  I did actually ask the Committee -- sorry,

6    the nonconsenting states, the consenting states, the

7    Debtors, and all the movants if they had changed their

8    positions, and no one had changed their position.  All the

9    movants continue to want, to be okay, with adjournment, and

10   the objecting parties continue to want to press forward with

11   their objections.

12          THE COURT:  Okay, and that includes -- among all

13   the movants, it includes the West Virginia NAS movant?

14          MR. PREIS:  It does.

15          THE COURT:  Okay.  All right.  So, again, I have

16   read your pleading and I haven't really gotten responses to

17   it, so I think I would take Mr. McClammy up and hear from

18   the Debtors and those who have objected to the class

19   certification class claim motions, just on the issue of

20   whether I should adjourn this matter or not.

21          MR. PREIS:  Your Honor, before they -- again, this

22   is Arik Preis from Akin, Gump, Strauss, Hauer, and Feld.

23   Before they go, will I have an opportunity to respond to

24   that?

25          THE COURT:  Yes.  Sure.  Absolutely.

Page 92

1              MR. PREIS:  Thank you.

2              MR. MCCLAMMY:  Thank you, Your Honor.  Again, Jim

3      McClammy of Davis, Polk, and Wardwell on behalf of the

4      Debtors.  With respect to the request to adjourn these

5      motions, the Debtors have spent a lot of time thinking about

6      that and how that impacts their goal of moving these cases

7      forward, and as you've heard already today, the Debtors are

8      very much concerned with and committed to moving these

9      Chapter 11 cases forward expeditiously and efficiently as

10     possible toward a consensual plan of reorganization, where

11     the entire value of the estates is turned over to allow

12     claimants and the Debtors' assets are devoted to addressing

13     and ameliorating the opioid crisis.

14             And I think the mediation moving forward in a way

15     that has clarity with respect to these class claims issues

16     at this stage is one of those things that it would be

17     helpful to have resolved, rather than simply hanging out

18     there for a period of time.  And it may well be, as some of

19     the movants have noted, that the mediation has taken longer

20     than expected and that they filed their claims because the

21     bar date -- or they filed their motion because the bar date

22     was rapidly approaching.

23             The fact is though, Your Honor, with respect to at

24     least that last point, all but the school districts had

25     filed -- did not file, I should say, their motions before

Page 93

1     the June date that was originally going to be the bar date,

2     and have now filed, many of them, within just 14 days of

3     today's hearing date, which is just seven days before the

4     end of the bar date.  The timing is not one that is of our

5     own making, but is one that we find ourselves left with,

6     nonetheless.

7             With respect to the issues that are raised in the

8     motion, certain of those motions are nothing more than, in

9     many ways, an eleventh-hour attack of the adequacy of the

10    Debtors' robust claims noticing program.  And interestingly,

11    many of the movants' assertions with respect to the notice

12    program contained in their class claims motion deemed them

13    all but abandoned, perhaps in their replies, but having some

14    certainty around the bar date and this concept of which

15    claims are or are not going to be in this case, we believe,

16    is very much an important matter for consideration.

17            THE COURT:  What if I told you that the second

18    prong of the analysis, if I got to it, could not be decided

19    today on today's record, in any event?

20            MR. MCCLAMMY:  The second prong of the analysis as

21    to whether or not the class claims should be allowed, Your

22    Honor?

23            THE COURT:  Right, but the true Rule 23 analysis,

24    the Musicland analysis, the second prong of that.

25            MR. MCCLAMMY:  Your Honor, I believe on the

Page 94

1    Musicland factors, at least in our view, we think that the

2    record is sufficient with respect to all three factors,

3    whether the classes were certified prepetition, the impact

4    that these cases, the class certification might have or that

5    the use of the class mechanism is there and whether or not

6    they've received adequate notice of the bar date.  The

7    record has been before this Court already.  We believe that

8    all three of the Musicland factors are there.

9            To the extent that the Rule 23 factors have been

10   addressed at all, I think, is more informative of whether or

11   not, ultimately, a class might be certified and is helpful

12   to the analysis, but I think under the three Musicland

13   factors, at least we would argue, that there's a sufficient

14   record for that.  Certainly, if Your Honor has particular

15   questions, be happy to address that.

16           THE COURT:  Okay.

17           MR. PREIS:  May I respond, or did you want to hear

18   from the other objectors?

19           THE COURT:  No, why don't I hear from everyone --

20           MR. PREIS:  Okay.

21           THE COURT:  -- side of this issue, first?

22           MR. ECKSTEIN:  Your Honor, it's Kenneth Eckstein

23   from Kramer Levin.  I'm happy to speak to the issue next, if

24   that's appropriate.

25           THE COURT:  Okay.

1           MR. ECKSTEIN:  So, Your Honor, we did not submit a

2    pleading in response to the Committee's submission, which

3    was a -- which included a request for adjournment, because

4    we understood that the Court was not looking for any

5    additional pleadings beyond the pleadings that were

6    submitted on the motions themselves, so to the extent we did

7    not provide something in writing, hopefully that was

8    consistent with the Court's expectation.

9           THE COURT:  Yeah, it was.  Thank you.

10          MR. ECKSTEIN:  But, Your Honor, I don't want the

11   lack of a pleading to be taken as an absence of a view on

12   this issue.  This is -- we understand the significance of

13   the motions and, obviously, the motions have captured a

14   great deal of energy.  The fact of the matter is, the timing

15   of the motions really dovetails quite directly into much of

16   the colloquy that has taken place over the first hour-and-a-

17   half or two hours of today's hearing, and most of the points

18   that I would start with, Your Honor, I think are fully

19   appreciated by the Court.

20          This case is a year old or is about to be a year

21   old in September, and as Mr. Huebner indicated in connection

22   with exclusivity, we've incurred nearly $200 million of

23   administrative expenses to date, and the case will continue

24   to incur very substantial expenses on a monthly basis going

25   forward.  The Court has approved and put into place one of

Page 96

1    the most robust and comprehensive bar dates and notice

2    processes ever undertaken in a Chapter 11 case and the

3    Debtor expended more than $24 million in connection with

4    that noticing process, and the Court entertained an

5    extension of the bar date several weeks ago and moved the

6    date out from the end of June to the end of July.

7            And as Your Honor knows, claims are expected to be

8    filed a week from today, and parties have expended a great

9    deal of energy complying with the bar date order and

10   preparing proofs of claim.

11           This is a case where we have more than 10 Ad Hoc

12   Committees representing hospitals, third-party payors, NAS

13   Babies, personal injury claimants, school districts, local

14   governments, states, and the movants in these class motions

15   actually all have seats on the Unsecured Creditors Committee

16   as either members or as ex officio members, and each group

17   has participated actively in a mediation that has proceeded

18   with a great deal of energy for the past five months and, as

19   we have discussed today, is near completion.

20           We have a very active and mature prepetition

21   litigation with an MDL where not a single class had been

22   certified.  And as Your Honor knows, each of the

23   constituencies that have an interest in this case, have

24   participated from day one of this case and have appeared at

25   hearings, participated in connection with all of the major

Page 97

1    proceedings that went on in this case, and including

2    participated quite actively in the development of a very

3    complex bar date order that contemplated how each of the

4    different constituencies were going to file proofs of claim.

5             It came as a surprise that we were confronted with

6    five or so motions for class certification.  One was filed

7    in, I believe it was the end of May, and in fact, that

8    motion was put off until today's hearing.  The others were

9    filed much more recently, knowing full well that the bar

10   date was upon us and that mediation was coming to a

11   conclusion.

12            The significance of the claims that are described

13   in the motions are fully understood, and there's no debate

14   about the significance of the claims, the seriousness of

15   damage, and the entitlements to recoveries, and that's not

16   what a class motion is about.  What it really is about is,

17   also in looking at the Musicland factors, I don't think the

18   Court is -- I believe the Court probably understands without

19   a lot of discussion, the status of the absence of any class

20   certifications in the MDL and the prepetition litigation,

21   and the Court is well aware, I believe, of the bar date

22   order that has been put in place in this case.

23            The question, really, is what is the impact of

24   class certification motions on the administration of this

25   case, and the reason why we believed it was important for

Page 98

1      these motions to go forward now and for there not to be

2      further adjournment is because the adjournment of these

3      motions will, invariably, lead to greater difficulty in

4      resolving mediation.

5            A belief that there is going to be litigation

6      that's going to take place later on in this case that is

7      going to consume more attention, that is going to create

8      uncertainty, and the need to bring this case to a

9      conclusion, I think, has been underscored, not just today,

10     but over the last several hearings.  All parties recognize

11     it is time to bring this case to a conclusion, and one of

12     the ways to bring the case to a conclusion is to bring

13     motions to resolution.

14           These motions have been briefed.  These are legal

15     issues.  In the first instance, Courts have dealt with class

16     certifications in many other cases, and it's well

17     appreciated that class certification is unusual and,

18     particularly in the presence of a bar date order of this

19     breadth and given the fact that these motions were not

20     brought at the beginning of the case when they could have

21     been brought, but were brought literally at the eleventh-

22     and-a-half hour before the expiration of the bar date and

23     after five months of mediation, there was no benefit to this

24     case to let these motions get delayed.

25           And while it is understandably burdensome to go

1    forward with hearings, the fact of the matter is that

2    sometimes it's just necessary to get rulings on motions and

3    get the clarity.  The fact that each constituency is

4    participating in the mediation, specifically has been named

5    as a mediation party, is at the table and is engaging in

6    negotiation, is of great significance to exactly how the

7    Court proceeds with these motions.

8              The timing is not a coincidence.  We need to

9    conclude the mediation.  These parties are participating in

10   the mediation and will participate in the plan process.

11   They sit on the Creditors Committee.  There is nobody who's

12   making a motion who is not adequately and amply represented

13   by experienced and effective counsel, and each of these

14   constituencies will be filing proofs of claim on behalf of

15   hundreds and hundreds, maybe thousands of entities, each of

16   whom claim to have interest in this case.

17             We're trying as best as we can to put together an

18   abatement plan that will provide going forward benefits for

19   all constituencies and there is no reason why the abatement

20   plan cannot be put into place and negotiated and agreed to

21   regardless of the outcome of these class certification

22   motions.  And to the extent we can't reach agreement, and to

23   the extent there is no consensus that is arrived at through

24   mediation, then it's the proofs of claim that will

25   ultimately have to be considered to the extent parties

Page 100

1    believe that they're going to compete for the limited amount

2    of funds that will be applied to satisfy damages in this

3    case.

4           There is no need for class certification in order

5    to negotiate and agree upon a plan of reorganization that is

6    going to provide abatement benefits going forward for all of

7    the constituencies.  Parties are concerned about making sure

8    that the plan is going to specifically make clear that

9    abatements funds are going to go to one constituency or

10   another and they're not going to be simply left in the

11   general revenue of the various states and the localities.

12          That issue was understood, and it is an important

13   element of what has to go into a plan, but has nothing to do

14   with the need for class certification.  So, Your Honor, we

15   believe that the timing and the merits are interlinked here,

16   and we believe that we have a structure that is very mature

17   in this case and it ready now to move into a plan process

18   and to all of a sudden change the rules by which this case

19   has operated for 12 months, and to essentially inject

20   classes that do not exist today and will now be created and

21   will have to consider who is in and are there opt-outs,

22   because there are going to have to be opt-outs,

23   notwithstanding the arguments by the school districts, for

24   example, that if you certify classes under Rule 23(b)(1)(b),

25   which is a limited fund, that there are no opt-outs that, in

Page 101

1      fact, is not the case.

2              The Second Circuit's made clear in Drexel that you

3      have to provide for opt-outs.  You're going to have to have

4      significant litigation around exactly each class is going to

5      exist, and invariably, even if this Court decides to adjourn

6      these motions, the signal will be that others should be

7      coming in over the next several days and beyond for more

8      classes of the other different local government entities.

9      Maybe they'll be prisons.  Maybe they'll be firemen.  Maybe

10     they'll be policemen, each of whom will say, we suffered

11     damages, we should have a class also.

12             It's not unheard of.  In fact, in Musicland, the

13     class certification motions were filed after the bar date in

14     order to be considered, and Courts looked at those, as well,

15     and so we will be burdened with more and more complexity and

16     more burden that will slow this case down and will make the

17     schedule that we talked about in connection with exclusivity

18     impossible to achieve, because of the overwhelming need of

19     new complexities that we inject.

20             So as difficult as it may be to have to confront

21     all the motions, we believe it's in the best interest of the

22     case and in the administration of the case to deal with it

23     and hopefully let us go back to mediation tomorrow and

24     continue to try to see if we can reach agreement on the

25     terms of a plan.

Page 102

1              MR. HUEBNER:  Your Honor, just very quickly, just

2      a new fact that I was just sent that may be helpful to the

3      Court

4              THE COURT:  All right.

5              MR. HUEBNER:  -- inquiry, because the Court asked

6      a specific question about factor number two.  Prime Clerk,

7      just so the Court knows, has --

8              THE COURT:  I think, mister -- my question may

9      have been misunderstood.  I wasn't talking about factor

10     number two in the three-factor discretionary 9014 Musicland

11     analysis.  I was talking about the second step in the

12     inquiry, which is, if you pass the Musicland test, you still

13     have to cover the requirements of Rule 23.

14             MR. HUEBNER:  Understood.  Okay.  Well, then, Your

15     Honor, let me quickly tell you the fact, because it may be

16     useful in any event, and I apologize for slightly

17     mishearing.

18             THE COURT:  Okay.

19             MR. HUEBNER:  Just so that the Court knows,

20     obviously, at the extended bar date hearing, we obviously

21     had an unusually recent and unusually robust set of facts

22     and conversations about the extraordinary (sound drops) of

23     the bar date.  I won't repeat that, because the Court knows

24     all those facts very well, including touching ever person in

25     America six times, but here's just one new fact.  So far,

Page 103

1   Prime Clerk, which is only one facet of Purdue's bar date

2   mechanics that relate to this second Musicland factor of

3   whether members of the punitive class receive notice of the

4   bar date, has incurred $42.9 million in fees, which we

5   assume were appropriately spent, given what we were asked to

6   do.

7           So just so that the Court and all parties

8   understand, the cost of this bar date is, itself, larger

9   than many Chapter 11 cases that people have heard of, and we

10  believe, did its intended goal which was to reach, really,

11  virtually everyone in the country in the way that no bar

12  date has possibly ever reached them before, which is why, in

13  our view, and I won't belabor the pleadings, blowing it all

14  open now and essentially allowing a potential endless

15  procession of new bar dates with new layers of

16  administrative complexity also goes squarely to factor

17  number three.

18          But again, I only wanted to add the new fact

19  because I thought you were asking about the notice issues of

20  Musicland, too, so I apologize for mishearing, and I will

21  leave it at that and not double-team Mr. McClammy.

22              THE COURT:  Okay.

23              MR. SHORE:  Your Honor, this is Chris Shore from

24  White and Case.  May I be heard very quickly?

25              THE COURT:  Sure.

Page 104

1           MR. SHORE:  Thank you.  On behalf of the Ad Hoc

2     Group of Personal Injury Claimants.  I'll try just to focus

3     on Your Honor's question regarding adjournment and reserve

4     any arguments on the merits of the underlying motion.  Let

5     me start here.  Mediation, as I think you're hearing, is

6     currently a daily, not a weekly exercise, to try to see if

7     we can get to an agreed allocation.  And as the Court can

8     expect, it's already hard to divide up the pie.  It was hard

9     because we don't have a bar date yet.  It'll get easier once

10    that comes and goes.

11          But given the size of the claims already filed

12    relative to the distributable value and given parties'

13    strong feelings about the opioid crisis in general, it's a

14    hard, hard process, which a lot of people are putting their

15    minds to.  Given those factors, I do believe that one way or

16    another, we need to know how many proverbial forks can be

17    put into the pie, at this time, even more so, given Your

18    Honor's comments about the expected velocity of the

19    mediation, one way or another

20          Are we going to have giant class groups of claims,

21    in which case, there will be additional parties to satisfy

22    out of the mediation process or will we not?  So, whether or

23    not Your Honor feels you have sufficient -- a sufficient

24    record to definitively rule on the motion today, even

25    guidance as to whether the Court is inclined to exercise its

Page 105

1   discretion to invoke 7023 or not, I think, is just going to

2   be helpful to allow us to keep the velocity up in the

3   mediation.

4           THE COURT:  Okay, thanks.

5           MR. MACLAY:  Your Honor, could I be heard?  This

6   is Kevin Maclay for the MSGE Group.

7           THE COURT:  The -- yes.

8           MR. MACLAY:  Thank you, Your Honor.  We're one of

9   the public claimants who filed the objections, along with

10  the MCSG and the Ad Hoc Committee, and one of the things I

11  would like to reference in respect to Your Honor's question

12  about the potential for this Court's inability, today, to

13  get into the Rule 23 factors, is the point that the movants

14  have the burden and they have had the opportunity to present

15  to Your Honor and to the other parties whatever evidence

16  they thought was necessary.

17          And, of course, at least one of them, the public

18  school districts, on Page 4, Footnote 4 of their brief --

19  Page 4 of their brief with Footnote 4 attached, make the

20  point that the public schools' motion, like many class

21  motions, can resolve without one, the one referring to an

22  evidentiary hearing.

23          So, from my perspective, Your Honor, from the MSGE

24  Group's perspective, to the extent someone had an

25  evidentiary burden that they have failed to meet, that does

Page 106

1    not necessarily suggest adjournment is appropriate.  It

2    could also suggest a denial of a motion would be

3    appropriate.  And the fundamental important point here, as a

4    practical matter, as you've already heard from Mr. Eckstein,

5    is to the extent we're aiming to an end of August of

6    conclusion to the mediation, that mediation is

7    extraordinarily complex, has a lot of parties.

8            My group, as are the other governmental entity

9    groups, has been involved, for example, this last Monday, in

10   five different mediation sessions in one day.  So it is

11   extraordinarily complicated with a lot of moving parts, and

12   the idea that this uncertainty could be allowed to continue

13   to exist about whether or not these various movants have

14   viable class proofs of claim will inject uncertainty into

15   that mediation and will make the conclusion of it by the end

16   of August a much more difficult objective to achieve, and I

17   agree with Your Honor that that is an important objective to

18   try to achieve.

19           It will be difficult, but it's an important thing

20   to try to do.  And so, as we try to work together here in

21   the mediation, all the various parties who are involved here

22   are all involved in the mediation.  I think, having fewer

23   open issues rather than more would be quite helpful and

24   important, and so that is the MSGE Group's position, Your

25   Honor.

Page 107

1           THE COURT:  Okay, thank you.  All right.  We're

2    back to you then, Mr. Preis?

3           MR. PREIS:  Sure.  Thank you, Your Honor.  Again,

4    for the record, Arik Price from Akin, Gump, Strauss, Hauer,

5    and Feld on behalf of the Creditors Committee.  I'm not sure

6    exactly where to begin, because there's a lot just said,

7    some of which was a little bit surprising and some of which

8    was just wrong.  But I do want to just hit on a few things

9    and then I'll get to the main points I want to make.

10           I want to clarify one thing, just so there's no

11    confusion.  Mr. Eckstein twice said that all the movants are

12    members of the Committee or ex officio.  That's actually not

13    true.  Two of them definitely are not, of the five that

14    remain.  Second, I've heard from -- I think we heard from

15    the Debtors or the states or the MSGE Group or Mr. Shore

16    about the parade of horribles that may happen if you do not

17    adjourn the motion today.

18           We've heard that parade of horribles in the past

19    when the public schools were added to the mediation pursuant

20    to stipulation and that actually not -- did not end up

21    happening.  Also, the proposed form of order that we had put

22    forth, actually would, frankly, cut off that parade of

23    horribles.  So, I don't know that that's really an issue.

24           The third thing, both the Debtors and Mr. Eckstein

25    seem to be focused on case timing, as were you, Your Honor,

Page 108

1    at the beginning of this hearing.  You spent the first hour

2    talking about case timing.  You were pretty clear, I

3    thought, that you want mediation to be working to a

4    conclusion of one month.  I'm not sure that adjourning the

5    hearing today is going to affect that timing.  In fact, I'm

6    relatively certain it's not going to affect that timing.

7            Fourth, I thought that it would be helpful, Your

8    Honor, Mr. Shore seems to point out that it would be useful

9    for Your Honor to at least give your views about all of

10   these motions without actually ruling.  I guess, that's

11   exactly what the Committee was afraid of.  Again, we take no

12   view as to whether the motions should be granted or not.

13   We've analyzed and we understand the arguments on both

14   sides, but it is precisely, for example, what Mr. Shore

15   said, which is that you would give your view, even not as a

16   ruling, as to why we wanted these motions adjourned.

17           With that, Your Honor, I want to turn to a few

18   critical points that I believe bear emphasizing.  You have

19   our response, as you said you have read it.  I'm not going

20   to repeat what's in it.  Our argument is fairly

21   straightforward and not extraordinary.  But as we said in

22   our papers, the scope of the mediation was carefully

23   constructed.  It's been extant for almost 150 days.  And as

24   you just heard, mediation parties as well you, as do we,

25   hope it's nearing its end.

1          We believe and continue to believe that all the

2     issues subject to mediation order should be discussed in

3     mediation before they're litigated.  Nothing has changed

4     that.  I therefore -- I just want to make seven kind of

5     quick points.

6          First, as I said earlier with regard to what Mr.

7     Shore said, our main issue with going forward today, is not

8     concern over who wins or loses, but it's the impact that the

9     hearing itself has on the mediation.  We understand that if

10    no mediative resolution can be achieved, then parties will

11    need to litigate these issues and you will need to make a

12    determination.  Rather, we have two concerns.

13         First, the mere fact that certain parties are

14    being forced, today, to defend their claims in an open and

15    litigated forum, whereas other parties, mainly the

16    objectors, will not, when all parties had certain

17    expectations about the process and timing -- and I'm going

18    to get to that in a second -- is unfair as a procedural

19    matter and interferes with the mediation.  We've already

20    seen and you've already, actually now, in some of these

21    arguments, you've started to hear objecting parties taking

22    free shots at the movant's claims, without being subjected

23    to similar arguments against their own claim.

24         The objectors raise very specific issues regarding

25    strength and weaknesses of the movant's claims in their

Page 110

1    papers.  Presumably, they're well aware that those arguments

2    could just as easily be turned against them, but they can

3    take comfort that due to the circumstances of these cases,

4    their claims are not before the Court.  Those circumstances,

5    which include the COVID-19 and include the upcoming bar date

6    would create an uneven playing field if the motions were to

7    go forward today.

8            Our second concern is, frankly, exactly what Mr.

9    Shore said, which is, we're aware that just having a hearing

10   regarding the relative strength and weaknesses of only

11   certain parties' claims is going to put the parties in an

12   unfair position.  The movants are going to be forced to

13   defend their claims, and without telling Your Honor how to

14   do your job, because obviously that is not my intention, I'm

15   sure you understand the awesome weight your words have.

16           We, being who we are, the parties in this case

17   being who we are, even if you don't make a determination in

18   respect to any motion, parties in the mediation listen to,

19   scrutinize, debate, and agonize over Your Honor's

20   commentary.  As such, any public hearing regarding the metis

21   of the mediation parties' claims will upset the delicate

22   balance of mediation and interfere with what I think Mr.

23   Eckstein was saying, the multi -- or, Mr. Troop -- the

24   multifaceted, multiconnected, multipronged mediation issues

25   that are being discussed.

Page 111

1          The second point I want to make, and it's one that

2    we didn't exactly make in our papers, but it became clear to

3    us over the last week.  A lot of people say their goal in

4    mediation is to reach a deal.  We've heard Your Honor's

5    admonition, both in the past and today, specifically even an

6    hour ago, that the deal doesn't have to be perfect.  We

7    agree, but that being said, one of our roles here is to

8    ensure that the mediation process is fair and appropriate

9    and that all parties negotiate in good faith.

10          And when asked, and even sometimes when not asked,

11    we weigh in if we think it's necessary for the good of the

12    process.  Part of that process is ensuring that issues that

13    are subject to mediation are not litigated while mediation

14    is ongoing.  We stated in our brief, and as we said, we've

15    pushed parties not to bring claims against other mediation

16    parties while mediation is pending.  And in respect to

17    several motions in other matters in these cases, which I'm

18    sure you're aware of, we've taken the position that such

19    motions or issues should be dealt with in mediation and not

20    elsewhere.

21          Indeed, like Mr. Shore has put in a pleading,

22    saying he would want to go forward with claims of -- issues

23    of claim subordination.  We've heard people talk about claim

24    allowance, claim estimation, and other similar matters.

25    People could've brought those motions during the last five

Page 112

1    months, all of which would've interfered with mediation.

2    And so, we pushed, and perhaps others have as well, for

3    parties not to bring litigation respect to such issues until

4    it's necessary to do so because mediation failed.

5            I'll just end by saying we worked hard during this

6    mediation on this point to try to ensure that these

7    principles are adhered to, and to our request for an

8    adjournment, we're continuing to do so.

9            The third point I want to make is how central the

10   class proof of claim motions are to mediation.  The issues

11   of claims size, claim amount, and strength and weakness of

12   claims are basically the most elementary building block to

13   an allocation settlement.  The whole reason we're engaged in

14   mediation is to determine the appropriate split of the value

15   of the estate between the private and the public side.

16           Litigating the class proof of claims in the middle

17   of mediation would be akin to litigating the issues I just

18   mentioned earlier, that we've tried to talk people out of

19   litigating.  It's undeniable that we're in mediation,

20   precisely to avoid litigation of these issues.  Indeed, we

21   kind of find it instructive that the centrality of this

22   issue as to mediation by the fact that 12 different groups

23   comprising 14 different parties filed 25 separate pleadings

24   totaling more than 3,100 pages of briefing on just this

25   issue.

Page 113

1          In fact, in these Chapter 11 cases, I believe only

2     the preliminary injunction motion over 10 months ago

3     garnered as much briefing from as many parties.  Perhaps,

4     that's an indication of how truly central these issues are

5     to mediation and a reason to adjourn any decision on the

6     motions to allow mediation to settle them.

7          Fourth, I want to, as I mentioned earlier, to

8     respond to some things that Mr. McClammy and Mr. Eckstein

9     said, there seemed to be some refrain about the timing of

10    these motions.  To be clear, the parties bringing the class

11    proofs of claim motions, by and large, expected and continue

12    to expect, as we, too, expected and continue to expect, that

13    issues of how to ensure that large groups of legitimate

14    claimants receive a recovery in this case would be addressed

15    in mediation.

16         This is not a public versus private issue.  It's

17    the reality of a mass tort bankruptcy case such as this,

18    which everyone here has acknowledged, is one of a kind.  One

19    of the primary, if not the most important, ways in which

20    these cases are unique relates to the sheer number of

21    victims and parties involved.  A mechanic is going to be

22    needed to work out in mediation to ensure that all

23    legitimate creditors have the opportunity, in a sensible

24    way, to receive proceeds.

25         Parties in the mediation can have different views

Page 114

1   as to the right way for this to occur, but this has been an

2   issue since the beginning of mediation.  The fact that we're

3   having the hearing one week before the bar date is not a

4   product of the claimants or movants waiting until the

5   eleventh hour to file a motion, but rather, the fact that

6   this issue has been part of the mediation since the outset

7   and the movants cautiously did not want to raise these

8   issues in litigation if they did not need to.

9          Indeed, if it were not for the pandemic, both its

10  direct effect on how mediation is conducted through phone

11  calls and Zoom instead of in-person meetings, and its

12  indirect effect on the time and attention of our esteemed

13  and important public servants who have played a major role

14  in this case and the mediation, I think it's fair to say

15  that many of us expect that we would've achieved a mediated

16  settlement on these issues by now, or perhaps, a declared

17  failure.

18          The only reason that the movants needed to file

19  these motions is that we are not done and the bar date is

20  one week away.

21          Fifth, we understand that some parties may argue

22  that they had always thought the class proof of claim issue

23  would be resolved in litigation, not mediation.  I think

24  that's what Mr. Eckstein may have been getting at, although

25  I'm not sure.  This position ignores the centrality of the

Page 115

1    issues which I mentioned earlier, but it also ignores the

2    mediation order.  The mediation order expressly identified

3    as mediation parties certain Ad Hoc Groups of creditors.

4         The subject matter of the mediation relates not to

5    the allocation of value solely among those groups, but

6    rather the allocation of value between "the nonfederal

7    public claimants on the one hand and the private claimants

8    on the other."  These two broad classes are not defined to

9    be only the Ad Hoc Groups.  Instead, the terms are to refer

10   to broad constituencies that extend far beyond those sitting

11   around a mediation table.

12        For instance, the mediation order actually

13   includes by name the NAS Medical Monitoring Class as a

14   private claimant on the side of the private claimants.

15   Private side claimants also include, by name, hospitals and

16   rate payors.  Private side claimants are not defined, as I

17   said, as only the clients represented by mediation parties.

18   Same thing with the public side claimants.  Indeed, it would

19   be nonsensical for a mass tort mediation such as this that

20   has claimants across the entire spectrum, because by their

21   very nature, this case requires mechanics to address the

22   mass number of torts that have occurred.

23        That being said, of course, parties can take issue

24   with the contemplated allocation of specific groups.  If

25   they want to take the position that claimants in a certain

Page 116

1    category of creditors should get no recovery or not a

2    recovery consistent with a certified class, for example, or

3    to ensure that -- just to pick on the hospitals -- value

4    only goes to 800 hospitals as opposed to 5,000 hospitals,

5    that's okay.

6          That's their prerogative to negotiate in mediation

7    and the mediation will either fail or succeed.  But it's not

8    appropriate to force the Court to rule on that issue during

9    mediation.  To be clear, we're not suggesting that the

10   mediation order definitively determine the issue underlying

11   the class claims motion.  Instead, any party that has

12   concerns or questions regarding the representative nature of

13   some of the mediation parties should have raise such issues

14   in connection with drafting the mediation order or over the

15   past 140 days, not as such process is basically coming to an

16   end.

17         Everybody knew of this issue at the beginning in

18   mediation.  We discussed it.  Again, without getting into

19   the mediation privilege, but I assure you, it was discussed

20   during the negotiation of the mediation order, just as the

21   parties knew that hundreds of other issues, all of -- yet,

22   all agreed that like all those issues, they'd all be part of

23   mediation.

24         Six, we found it rather surprising that not one

25   objecting party thought it important to mention the issues

1    underlying the class proof of claim motions were part of

2    mediation.  I think you heard, Your Honor, that some parties

3    think that engaging in mediation during preexisting

4    litigation is a way to move the mediation forward.  In other

5    words, we should litigate while the mediation is moving

6    forward.

7              I suppose that's a fair point, in certain cases,

8    but not here.  In cases where we're been a part of that that

9    occurs, in other words, where you allow litigation during

10   mediation, there's some sort of live dispute or adversary

11   proceeding that cannot get resolved, so the Court orders the

12   parties to mediation or they agree voluntarily.  During

13   mediation, the parties may or may not continue the

14   litigation, the preexisting schedule, because if mediation

15   doesn't result in a settlement, the parties need to be

16   prepared to litigate.

17             Or the parties may all agree that during

18   mediation, it's important to have a decision on a minor

19   issue related to mediation, but not on the key issue at play

20   in mediation.  Here, we have no such live controversy prior

21   to the start of mediation, and moreover, having a hearing on

22   a class proof of claim motion will give some parties a

23   completely unfair advantage in the mediation, because they

24   get a free shot at the merits, size, and amount of the

25   claims of others, which is, effectively, the central part of

1    this mediation.

2            THE COURT:  Okay, I think you're repeating

3    yourself at this point, Mr. Preis.

4            MR. PREIS:  Sir, I -- the only -- I was actually

5    coming to an end.  The only thing --

6            THE COURT:  Okay.

7            MR. PREIS:  -- I wanted to say at the very end is,

8    we did propose a manner in which the mediation parties and

9    all the parties to the motions would not be prejudiced by

10   adjourning these various motions and we would respectfully

11   request that that sort of adjournment, consistent with your

12   remarks about an hour ago, be approved here.

13           THE COURT:  Okay.

14           MR. HUEBNER:  Your Honor, given the length of that

15   "response," may I just say four quick things?

16           THE COURT:  Okay, but that should be the end of

17   it, the argument on this point, I think.

18           MR. HUEBNER:  It will be, Your Honor.  I mean, to

19   be clear, that was not a response.  That was a full oral

20   argument and it would've been nice if we heard that first,

21   so that we could've then responded.  So, a -- just four

22   quick things.  Number one, there's a lot Mr. Preis said that

23   is just very not correct.

24           Nobody on our side, certainly the Debtors who want

25   this case treated fairly and efficiently and moved along,

Page 119

1    has asked the Court to form any view on the merits of the

2    claims.  There are Musicland factors and there are three of

3    them, and the movants are seeking extraordinary relief that

4    is in the discretion of the Court that we believe is

5    absolutely clear that they go oh-for-three, down the line,

6    on the three factors.  We're not asking for any ruling on

7    the merits of the claim.

8             Number two, we do not agree with Mr. Preis at all

9    about what is good for mediation and likely to advance

10   mediation and the occasionally -- and I try to do it

11   sometimes, too -- people try to claim the mantle of, they

12   speak for a great number of people.  I just want to be very

13   clear as the fiduciary for all in this case, we opposed

14   these motions and did not agree to the adjournment proposal

15   because we think it is not in the best interest of this case

16   and will blow open a Pandora's box that a change in

17   circumstance that the movants are seeking on motions where

18   it is their burden that has been unsatisfied by a country

19   mile.

20            Three, Mr. Preis has said, repeatedly, this is one

21   of the issues being mediated.  I do not agree with that at

22   all.  I don't want to call it sleight of hand, but I think

23   it is just false, and maybe we just see it differently and

24   maybe that's okay, but to be clear, the mediation is on the

25   intercreditor allocation, primarily public versus private,

Page 120

1   and I'm quite confident I know the mediators' views on these

2   topics, but it's not for me to say.

3          But our view is that whether or not these five,

4   essentially, class action law firms can blast open our bar

5   date that cost, God knows how many tens of millions of

6   dollars, and begin a whole new cycle of administration and

7   claims harvesting, is not something that I believe is being

8   mediated at all.

9          And the last issue, I'm going to actually just

10  pass on, to limit it to three, for the sake of brevity.  But

11  there was sort of a notion in the remarks that people are

12  briefly gunning for the private side in the middle of

13  mediation and that makes the playing field asymmetrical.

14  You can read the Debtors' pleading as many times as you

15  want, and you will not find that.  That is not our view.

16         As fiduciary for all, given how far we've come at

17  the bar date and the extended bar date, we think that this

18  extraordinary relief comfortably fails on the merits and

19  satisfied none of the relevant factors, and we do not

20  believe it will harm mediation.  We think it will accelerate

21  these cases and we think it will be impossible to complete

22  these cases on a schedule anything like what the Court laid

23  out, and I'm leaving aside the notion of administration that

24  will now have to happen with new classes and subclasses and

25  class action lawyers and endless new sets of fees and all

Page 121

1     those things, because it's laid out --

2               THE COURT:  Is that --

3               MR. HUEBNER:  -- in various people's papers.

4               THE COURT:  But that's only if I would grant the

5     motions or some of them, any of them, if they were renewed.

6     Right?  An adjournment just preserves the issue.  It doesn't

7     start the litigation going.

8               MR. HUEBNER:  That's correct, Your Honor, and then

9     you get back to the core question of, is adjournment as

10    opposed to a ruling very good for the case or very bad for

11    the case, in terms of (sound drops) and parties are allowed

12    to disagree and we and the Creditors Committee have agreed

13    on a great many things in this case.  We don't agree on this

14    one.  Based on everything we know and many sophisticated

15    conversations, we believe that mediation will be advanced

16    and the case will be accelerated and parties will be treated

17    fairly if the ruling that we believe is the right one comes

18    down today.

19              But if it comes down in four weeks, so be it, but

20    our view is that today is better.

21              THE COURT:  Okay.

22              MR. TROOP:  Your Honor, this is Andrew Troop.  I

23    apologize, but Mr. Preis did quote me.  And I need to

24    address at least one factual issue, that I am just confused

25    by, so I'll just say it straight out.  The issue of class

Page 122

1    claims, to my knowledge, and to the knowledge of everyone

2    who has emailed me since the statement was made, was not a

3    subject of conversation, discussion, or the mediation.

4           What is true, as Mr. Eckstein reported earlier is

5    that the public claimants are focused on an abatement regime

6    that will benefit all.  Implicit in that is that parties who

7    don't file claims may, nonetheless, benefit from the

8    abatement program; that's true, Your Honor, but as I recall,

9    back at the hearing on the bar date, when you and I had a

10   colloquy about the need for a bar date, the point was made

11   that we need a bar date, primarily so that people can

12   understand what might happen if there isn't a negotiated

13   resolution in this case.

14          That question has been put into play by the

15   motions and a ruling on the motions will provide clarity,

16   and clarity will help the process move along, whether that's

17   approving the motions or denying them, Your Honor.  That,

18   and as a result, the risk that is being undertaken by the

19   objectors to the motions in insisting that it goes forward,

20   is the flipside of the risk that Mr. Preis articulates the

21   movants have, if you should rule on the motions and deny

22   them.

23          But either way, Your Honor, it provides clarity

24   and for the reasons Mr. Huebner said and others, we would

25   advocate you not adjourn the hearing and that we reach the

Page 123

1    merits of the motions.  Thank you, Your Honor.

2            THE COURT:  Okay.  As the parties all know, I

3    have, at this point, although there's a request to hear the

4    last one on the shortened notice, five motions before me for

5    class certification for the purpose of filing class proofs

6    of claim in these Chapter 11 cases:  the public school

7    districts' motion, the hospitals' motion, the private

8    insurance plaintiffs, the rate payors' motion, the NAS

9    Guardians' motion, and what I've been referring to as the

10   West Virginia NAS motion.

11           The current motion before me is couched in a

12   response by the Official Unsecured Committee -- I'm sorry,

13   the Official Committee of Unsecured Creditors, which seeks

14   an adjournment of the hearing on the request for class

15   certification by each of the movants until after the

16   termination of the pending mediation of allocation issues as

17   between public and private claimants in these cases.

18           The movants all have, importantly, agreed to that

19   adjournment and the entry of the order attached to the

20   Creditors Committee's request for an adjournment, but some

21   of the objectors, or all of the objectors, have not agreed

22   to the adjournment, which at one level, is understandable,

23   although, at another level, particularly given the terms of

24   the order, may not be.

25           The Creditors Committee has a point that one

1    normally does not litigate issues pertaining to the merits

2    of claims that are the subject of mediation.  Because of the

3    pendency of the bar date, these five motions have filed.  If

4    the mediation had concluded before now, as originally

5    contemplated, before COVID-19 stuck us, the issues raised in

6    the class claim motions would not have come before the

7    Court, just as many issues that are not time sensitive going

8    to the merits of other participants in the mediation have

9    not come before the Court.

10           So, at one level, it does appear to me that the

11   objection to the adjournment request is opportunistic.  The

12   Debtors say it's opportunistic in a good way.  It clears

13   away an issue that could otherwise raise its head.  I think,

14   more candidly, the -- some of the other objectors have

15   basically said this will assist the mediation because we

16   will know that we're dealing with a pool of claims limited

17   to those that are actually filed, and not class claims, if I

18   were to grant the motion -- I'm sorry, if I were to grant

19   their opposition to the adjournment and then deny the

20   respective motions.

21           A legitimate concern by the objectors is that the

22   bar date in these cases would be subverted by leaving the

23   five pending motions open for determination, if necessary,

24   after the conclusion of the mediation.  The Debtors have

25   spent a substantial amount of time and money in developing

Page 125

1    and implementing a comprehensive set of notice procedures

2    for their bar date.

3           The Courts have long recognized that "One of the

4    troubling aspects of a class claim is that, at some level,

5    it subverts the bar date which is why it is always a

6    consideration, i.e., was there proper notice or effective

7    notice in the so-called Musicland analysis."

8           I will note, however, that the proposed order that

9    would be agreed by the parties supporting the adjournment

10   provides that notwithstanding the adjournment and the

11   preservation of all rights as of today, if these motions or

12   any of them come back on the calendar, notwithstanding the

13   foregoing, the pendency or denial of the class claim motion

14   shall not be deemed to toll -- T-O-L-L -- the general bar

15   date with respect to any individual proof of claim, whether

16   or not such individual proof of claim asserts a claim that

17   would have been encompassed when encompassed by a class

18   proof of claim filed pursuant to the preceding paragraph.

19          In my mind, in preparing for this, that provision

20   is an extremely important fact.  The law remains unclear

21   regarding tolling in the bar date context, without that

22   clarification, and I agree with those who are objecting to

23   the adjournment request, that a major reason to opposed it

24   would be concerns regarding vitiation of the bar date.

25          As I'm sure they're aware, there are cases at the

Page 126

1    Circuit level, although not in the Second Circuit, and in

2    the Southern District, that either indicta or under

3    different facts, refer to tolling.  May well be that I would

4    not follow those cases in these circumstances, but it is a

5    highly open issue and clearly, open still in my mind.

6           The paragraph that I just read with the addition

7    of language that would provide that it would be the pendency

8    or denial of a class claim motion or any other motion of a

9    similar kind or nature would not toll, to me, narrows the

10   issue down considerably, which is, are the benefits of

11   having some clarity on the class claim issue with respect to

12   each of these five motions, outweighed by the need to have

13   the mediation proceed on what I believe would be a more

14   level playing field where all issues implicating claims

15   would be preserved.

16          The parties, themselves, could evaluate their

17   merits.  They certainly spend enough time briefing this

18   issue so that they could consider those issues in the

19   context of a mediation.  I, frankly, do not believe that the

20   adjournment request on the terms of the order offered up by

21   the Committee unduly prejudices the Debtors or the

22   objectors.  The matter is fully briefed.  If there is an

23   agreement in the mediation, I'll be able to rule very

24   promptly on these issues in the exercise of my discretion in

25   the first prong of the analysis and, frankly, with regard to

Page 127

1    most, if not all, of the other -- of the movants on the

2    second prong, namely the Rule 23 factors.

3            I'll certainly be able to rule on all of those

4    issues well before any further plan negotiations that are

5    not resolved by the mediation.  The only other factor that I

6    believe would be unduly unfair, is if other parties jumped

7    in now, after today's hearing, and frankly, although this

8    does not need to be in the order, I would view that as being

9    too late.

10           MR. FARRELL:  Sir --

11           THE COURT:  Excuse me.  I do not believe that the

12   adjournment will open up any sort of floodgate going

13   forward.  So, I'm not ruling on that point, but that's my

14   strong inclination.  It doesn't need to be in the order, but

15   that's simply a fact that people have to consider if they

16   want to spend the time making the motion.  So all things

17   considered, I believe that these parties are able, fully --

18   all of the parties -- the movants, the Committee, the

19   objectors, including the Debtor, are fully able to deal with

20   all of these issues in the mediation, that they are all, in

21   fact, engaged in the mediation, and that they all are

22   discussing the merits of the claims, and as importantly, I

23   assume -- and I assume this in part because the mediators

24   are so experienced and so talented -- they're engaging in a

25   mediation that can be a win-win type of mediation outcome,

Page 128

1     which might well obviate the need for any consideration of

2     this motion, ever.  In any event, I would rather consider it

3     in the light of the facts after the conclusion of the

4     mediation and not before.

5              So, I will grant the Committee's request and enter

6     an order consistent with the order that they attached to

7     their request, with that one change which would provide for

8     no tolling as to anyone else that might file a claim on a

9     class basis between now and the bar date.

10             MR. FARRELL:  Sir, may I speak?  It is Mathew

11    Farrell calling from Canada, representing the City of Grand

12    Prairie, which is recently filed a class claim on behalf of

13    Canadian cities, which I believe, with your change, I'm not

14    sure whether that affects our interests.

15             THE COURT:  Well, I'm not hearing it today and I

16    told you, there's no change in the order that would cover

17    you, except for the tolling point.

18             MR. FARRELL:  Right.

19             THE COURT:  And I am prepared to rule today in

20    favor of the no-tolling point, based on the facts as

21    distinguished here where there was an extensive claims bar

22    date negotiated heavily with substantial notice and

23    opportunity to object and no objection, and --

24             MR. FARRELL:  Yes, sir.  My --

25             THE COURT:  -- the like.  So -- and plus which,

Page 129

1    the other movants have agreed to an adjournment on that

2    basis.

3              MR. FARRELL:  Yes, sir.  I --

4              THE COURT:  I don't believe, in applying the

5    discretionary factors under Rule 9014, that tolling would be

6    appropriate here.

7              MR. FARRELL:  Yes, sir.  My --

8              THE COURT:  -- who clearly could act on their own,

9    being aware of the bankruptcy case, so --

10             MR. FARRELL:  Yes, sir.  But --

11             THE COURT:  -- any doubt about that.

12             MR. FARRELL:  So, just so that I'm clear, sir, my

13   question was, prior to the bar date, a claim is filed with

14   respect to this class action.  Your order is not going to

15   affect the ability of that class to seek certification for

16   the purposes of settlement, as some later time?

17             THE COURT:  For the purposes of settlement?

18   That's one of the reasons that I'm -- that's one of the

19   reasons that I'm adjourning this matter.

20             MR. FARRELL:  Right.

21             THE COURT:  You can have a class for settlement

22   purposes and for non-settlement purposes and --

23             MR. ECKSTEIN:  Your Honor --

24             THE COURT:  -- where we are --

25             MR. ECKSTEIN:  Your Honor --

Page 130

```
1              THE COURT:  -- mediation.  But I'm not ruling on

2     this issue.  I'm not ruling on this issue, except as far as

3     tolling.  There will be no tolling here.

4              MR. FARRELL:  Excellent.  That's all --

5              THE COURT:  -- the only effect of the order.

6              MR. FARRELL:  Thank you, sir.

7              THE COURT:  Okay.

8              MR. ECKSTEIN:  Your Honor, this is Kenneth

9     Eckstein.  Can I just -- to make sure that the record is

10    clear and that the press, when they pick this up, is not

11    confused.  As I understand -- and I don't mean to put words

12    in Your Honor's mouth -- but as I understand what Your Honor

13    is saying today, Your Honor is agreeing that the motions

14    with respect to class certification are being adjourned and

15    I understand that there is no date right now -- there's no

16    adjourn date, they're just being adjourned?

17             THE COURT:  They're being adjourned -- well,

18    again, it's under the terms of the order attached, the

19    proposed order attached to the Trustee's request, which says

20    a first possible hearing date that is at least three days

21    after the termination date under the mediation order.  That

22    will be governed further by the case management order, so

23    clearly, I could hear them very quickly after -- I can hear

24    these, I can resume with this hearing very quickly

25    afterwards, if that makes sense.
```

Page 131

1              MR. ECKSTEIN:  I appreciate that.

2              THE COURT:  There's no specific date.  You're

3     right about that, Mr. Eckstein.

4              MR. ECKSTEIN:  Right.  The other point, though,

5     that I felt was important, was that, as I understand it,

6     Your Honor is not modifying the bar date order --

7              THE COURT:  Absolutely not.

8              MR. ECKSTEIN:  -- obligations and filed claims

9     aren't clear.  The bar date is July 30th and everybody,

10    everybody needs to respect that date and what may happen in

11    the future, people are at risk, whatever they choose to do,

12    but if they don't file claims by the bar date, people have

13    to understand that the bar date will have passed and --

14             THE COURT:  Right.

15             MR. ECKSTEIN:  -- I think that was a clarification

16    I thought the record --

17             THE COURT:  That is --

18             MR. ECKSTEIN:  -- reflect that.

19             THE COURT:  That is a very important --

20             MR. ECKSTEIN:  -- claimants --

21             THE COURT:  That's a very important point, Mr.

22    Eckstein.  People who are not bankruptcy lawyers might not

23    have appreciated what I was saying, but you're absolutely

24    right.  The bar date is not being modified here, and indeed,

25    Paragraph 3 of the order makes it clear that notwithstanding

Page 132

1     the pendency or denial of the class claim motions or any

2     similar motion, the bar date will not be tolled, will not be

3     extended.

4          And I believe that, A, that's agreed by the

5     parties who've agreed -- sought the adjournment, and B, for

6     those who might file a claim between -- a class claim in the

7     future or that is not teed up for a hearing today, that the

8     bar date here is of such a nature with such wide notice of

9     the motion for approval of the bar date, preceded by

10    negotiation of that motion, and its importance to the

11    bankruptcy case, that this case is distinguishable from the

12    facts in In RE:  Connaught Group and MF Global, both of

13    which involved a small group of parties who basically had

14    both pre- and post-petition claims, and the dicta in Gentry

15    v. Siegel and In RE:  TWL Corp., both of which really were

16    dicta, and didn't really focus on the importance of a bar

17    date beyond the statute of limitations.

18         A bar date, unlike a statute of limitations, is

19    not just for the benefit of the defendant, but is for the

20    benefit of all the parties in a case.  And so, under these

21    circumstances, I'm comfortable in my modification of

22    Paragraph 3 of Mr. Preis' order to make it clear that there

23    is no tolling for any purposes with regard to not only the

24    adjourned class claim motions, but any class claim filed on

25    a going forward basis or that wasn't teed up before me for a

Page 133

1    hearing.

2            So, I've been, I hope, very careful in not stating

3    my view on the merits of these motions, except on that one

4    point, the tolling point, and I won't.  The parties are well

5    represented.  I think they know the merits of their case

6    and/or their objection, and to the extent it's relative to

7    the mediation, they should take that into account.  I hope,

8    in most cases if not all, maybe all, it'll become a moot

9    point.

10           Again, I'm urging all of the parties, including

11   the five movants here, to put their best foot forward to

12   resolve their issues consensually in the mediation.   That's

13   your best chance of getting what you want, at least close to

14   what you want, or what is fair as to what you want, before I

15   have to start ruling on things.

16           So, Mr. Preis, I'll ask you to make that one

17   change that I made to Paragraph 3 of the order and you don't

18   have to formally settle it.  You should -- when you email it

19   to chambers, copy the parties who filed pleadings on the

20   five motions.

21           MR. PREIS:  Thank you, Your Honor.  We will do

22   that.

23           THE COURT:  Okay.  Thank you very much.

24           MR. HUEBNER:  Your Honor, I don't think we have

25   anything else on the agenda.  I guess I'd just like to thank

Page 134

1    all parties for staying with us through what turned out to

2    be a rather long and involved hearing.  I do think it

3    probably is worth closing with the fact that I do think that

4    everyone on the phone has a shared goal, which is to get the

5    right amount of value out to the world to do good as soon as

6    can.  Obviously, there are not always agreements on how to

7    best achieve that goal, despite people being all of good

8    faith and the like, but hopefully, we will all recalibrate

9    where we need to, reorient where we need to, reprioritize

10   where we need to, with the shared goal of getting money into

11   the hands of those who, in many cases, very desperately need

12   it.  Thank you, as always, Your Honor, for your

13   extraordinary --

14            THE COURT:  Okay.

15            MR. HUEBNER:  -- and assistance, and we will see

16   you, I guess, in about a month.

17            THE COURT:  All right.  Thank you.  and again,

18   ultimately here, the Debtors do have the power to seek a

19   settlement, a settlement and a plan.  I'm not requiring

20   absolute consensus.  It's in everyone's interest to have

21   absolute consensus, and they should be working to that for

22   their own self-interest.  It's not good in a bankruptcy case

23   to be the one outside looking in, but I won't hesitate to

24   move ahead, if we don't have absolute consensus.

25            MR. HUEBNER:  Thank you, Your Honor.  We

Page 135

1    understand.

2                THE COURT:  Thanks very much to everyone.

3                (Whereupon these proceedings were concluded at

4    0:00 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 136

1                        I N D E X

2

3                        RULINGS

4                                        Page      Line

5

6    Exclusivity motion                    70        16

7    Dismissal agreement, Intellipharmaceutics  73    1

8    Motion to shorten time                74        1

9    Political contributions               84        5

10   Canadian litigation class stipulation 88       23

11   Class claims motion, request for adjournment 128   5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 137

1                    C E R T I F I C A T I O N

2

3           I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  July 27, 2020

**[& - 31st]**                                                                    Page 1

| & | | | |
|---|---|---|---|
| **&** 17:3,12 18:8,15 19:3,17 20:1 | **1221** 19:19 | **1431** 6:19 8:19 10:3 11:15,24 14:11,19 | **200,000** 61:5,9 |

**&**

**&** 17:3,12 18:8,15
19:3,17 20:1

**0**

**0:00** 135:4

**1**

**1** 32:9 52:12,15,25
53:4 57:25 59:13
100:24 136:7,8
**1,000** 81:12
**1,150,000** 61:4
**10** 28:10,13 59:21
84:11 86:5 96:11
113:2
**10017** 17:6,23
**10019** 18:4
**10020** 19:20
**10022** 18:11
**10036** 17:15 18:18
**10173** 19:6
**10601** 1:14
**10th** 73:14
**11** 2:5,7,12 25:14
26:10 31:17 33:1
33:5,7,13 34:7
74:9 76:14,19,21
92:9 96:2 103:9
113:1 123:6
**1100** 20:3
**11501** 137:23
**1177** 18:17
**1178** 7:6 9:17 15:6
16:10
**1179** 7:7 9:18
12:20 15:7 16:11
**12** 82:3 100:19
112:22
**1211** 5:10,17,23
6:17 7:17,23 8:17
10:15 11:9 13:8
14:9

**1221** 19:19
**125,000** 76:21
77:16
**128** 136:11
**13** 82:12
**131** 5:7
**1313** 3:16,23
**1321** 7:10,16
**1322** 9:4
**1327** 3:1 71:25
**1330** 5:17 7:17
9:24 10:8,15 11:9
11:19 12:4 13:8
**1334** 5:23 7:23 9:9
**1362** 5:17,23 6:17
7:17,23 8:17
10:15 11:9 13:1,8
14:9,25
**1363** 5:17,23 7:17
7:23 10:15 13:8
**1365** 2:8,13,20
**1369** 3:25
**1372** 3:9 73:18
**1373** 3:6,8 73:15
**14** 93:2 112:23
**140** 116:15
**1408** 4:11 15:11
15:21 16:1
**1409** 4:12,16,23
**1415** 5:18 7:18
10:3,16 11:14,23
13:9 14:18
**1421** 5:24 10:3,22
11:14,23 13:15,17
14:18
**1423** 6:7 8:7 10:3
10:24 11:14,24
13:25 14:18
**1424** 12:12
**1425** 6:13 8:13
10:3 11:5,15,24
14:5 15:17

**1431** 6:19 8:19
10:3 11:15,24
14:11,19
**1432** 4:18
**1448** 5:1
**1461** 10:7 11:20
12:3
**1462** 12:5
**1471** 2:16
**1473** 6:22
**1475** 8:24
**1486** 14:25
**1487** 14:19
**1489** 15:22
**1493** 16:3
**1498** 4:7 86:9
**1499** 2:21
**14th** 52:14
**15** 48:8 52:3
**150** 49:8 108:23
**16** 52:4 90:10
136:6
**165,000** 52:21
**16th** 82:9
**17** 52:11
**1746** 7:1 9:11
12:14 15:1 16:5
**178** 12:19
**17th** 19:5
**18** 52:11 81:17
**180** 31:21
**185,000** 75:16
**19** 25:5 26:9 29:17
110:5 124:5
**19-23649** 1:3
**1995** 52:10
**1c9** 19:13
**1st** 31:12 52:18
54:6 77:9,11

**2**

**2** 58:1
**200** 61:6 95:22

**200,000** 61:5,9
**20005** 20:4
**2018** 81:19,21,25
**2019** 82:4,9
**2020** 1:16 2:1
26:16 29:8 31:23
33:2 77:9 137:25
**2021** 33:3,3 77:12
**205** 5:9
**215** 5:8
**21st** 37:5
**22** 25:1
**23** 1:16 2:1 9:22
10:5 11:16 12:1,9
93:23 94:9 100:24
102:13 105:13
127:2 136:10
**23,000** 61:17
**23rd** 31:3
**24** 81:17 96:3
**248** 1:13
**25** 49:11 51:16
53:2 112:23
**25,000** 76:20 77:7
77:16
**26** 32:9 59:13
**26th** 64:15 67:5
**27** 137:25
**28** 7:1 9:11 12:14
15:1 16:5
**28,000** 61:14
**2:07** 1:17

**3**

**3** 73:7 78:3 131:25
132:22 133:17
**3,100** 112:24
**30** 52:6 77:21
81:12 86:4
**300** 1:13 137:22
**30th** 17:22 131:9
**31** 18:3
**31st** 67:3 77:9

**[330 - adjourning]**                                                    Page 2

**330**   137:21
**340**   19:5
**342**   19:12
**35**   60:15
**36**   81:4
**3rd**   30:16

**4**

**4**   19:12 29:8 52:3
 73:7 105:18,18,19
 105:19
**40**   80:7
**41**   7:24
**42.9**   103:4
**44**   52:17
**450**   17:5
**485**   17:22

**5**

**5**   84:24 85:9 136:9
 136:11
**5,000**   116:4
**50**   51:18 61:11
**501**   78:3
**527**   76:16,18,24
 77:12 81:12
**52nd**   18:3
**55**   81:22

**6**

**6**   86:2

**7**

**7.6**   52:1
**70**   136:6
**7023**   9:21 10:4
 11:16,25 12:8,25
 14:16 105:1
**717**   7:2 9:12 12:15
 15:2 16:6
**719**   7:3 9:14 12:16
 15:3 16:7
**73**   136:7
**74**   136:8

**8**

**800**   48:22 116:4
**84**   136:9
**88**   136:10

**9**

**90**   53:4
**9014**   9:21 10:4
 11:16,25 12:8,24
 14:16 102:10
 129:5
**919**   18:10

**a**

**aaronson**   17:20
**ab**   19:13
**abandoned**   93:13
**abatement**   12:23
 14:14 99:18,19
 100:6 122:5,8
**abatements**   100:9
**ability**   50:6,18
 129:15
**able**   24:8 28:14
 50:24 53:15,23
 62:10 68:2,22
 70:8 83:17 126:23
 127:3,17,19
**absence**   95:11
 97:19
**absolute**   134:20
 134:21,24
**absolutely**   26:6
 40:5 42:6 47:23
 91:25 119:5 131:7
 131:23
**accelerate**   34:10
 49:17 64:20
 120:20
**accelerated**
 121:16
**acceptances**   2:8
 2:13

**accepted**   68:20
**access**   45:25 46:6
**accommodating**
 31:2
**accomplished**
 63:6 66:2
**account**   30:19
 57:15 72:24 133:7
**accounts**   33:9
 61:11
**accurate**   137:4
**achievable**   31:25
**achieve**   30:19
 34:1 65:16 67:16
 68:12 101:18
 106:16,18 134:7
**achieved**   66:5
 109:10 114:15
**achieving**   38:5
**acknowledged**
 43:24 113:18
**acknowledgement**
 79:3
**acknowledging**
 84:2
**act**   69:12 82:8
 129:8
**acting**   62:15
**action**   12:23
 14:14 30:6 47:16
 68:23 72:12 82:1
 89:1 120:4,25
 129:14
**actions**   72:9 85:16
 88:6
**active**   44:4 63:8
 64:10 96:20
**actively**   96:17
 97:2
**activists**   44:22,25
**activity**   64:3
 81:23

**accepted**   68:20
**acts**   42:8
**actual**   47:15
 57:11
**ad**   2:14 4:24 6:1,6
 6:18 8:1,6,18
 10:18,23 11:10
 13:11,16,19,24
 14:10,21 16:2
 18:16 19:18 28:11
 28:21 62:12,15
 96:11 104:1
 105:10 115:3,9
**add**   34:15 103:18
**added**   107:19
**addition**   88:4
 126:6
**additional**   32:13
 43:10 54:25 61:9
 72:19 95:5 104:21
**address**   29:25
 38:9,25 69:12
 86:7 94:15 115:21
 121:24
**addressed**   34:25
 46:25 86:12 94:10
 113:14
**addresses**   87:19
**addressing**   92:12
**adequacy**   93:9
**adequate**   94:6
**adequately**   99:12
**adhere**   34:1
**adhered**   112:7
**adjourn**   90:6,11
 91:20 92:4 101:5
 107:17 113:5
 122:25 130:16
**adjourned**   34:12
 108:16 130:14,16
 130:17 132:24
**adjourning**   108:4
 118:10 129:19

adjournment 6:10
8:10 11:2 14:2,23
15:14 90:9,14,18
90:22,23,25 91:9
95:3 98:2,2 104:3
106:1 112:8
118:11 119:14
121:6,9 123:14,19
123:20,22 124:11
124:19 125:9,10
125:23 126:20
127:12 129:1
132:5 136:11
administration
97:24 101:22
120:6,23
administrative
3:13,21 4:3 85:20
95:23 103:16
admission 85:22
admonition 111:5
adult 70:2
advance 34:10
59:20 81:12 119:9
advanced 121:15
advantage 117:23
adversary 53:1
117:10
advice 72:11
advisors 27:24
68:1
advisory 42:8
advocate 122:25
affairs 42:10
81:21
affect 108:5,6
129:15
affiliated 41:3
affiliates 41:20,24
44:11
affirmed 84:10
afraid 88:17
108:11

afternoon 24:2,23
35:8 73:12 78:23
86:9 87:11 89:18
agenda 2:1,1
24:17,18,19 25:10
34:9 71:6,23 85:9
89:14 90:1 133:25
aggregate 76:20
77:16
ago 27:7 49:1 52:3
96:5 111:6 113:2
118:12
agonize 110:19
agree 55:25 58:18
67:21 76:20 77:5
100:5 106:17
111:7 117:12,17
119:8,14,21
121:13 125:22
agreeable 49:15
agreed 32:24
41:21 48:17 52:19
53:6 59:10,11
76:10,10 86:6
99:20 104:7
116:22 121:12
123:18,21 125:9
129:1 132:4,5
agreeing 130:13
agreement 2:24
28:2 35:13 39:6
39:12,14,17 40:8
54:7 67:12,13
68:10 69:16 71:3
71:10,15,24 72:1
72:8,11 83:6
85:18 86:16 88:15
89:5 99:22 101:24
126:23 136:7
agreements 35:16
134:6
ahc 28:22

ahead 37:24 56:2
91:2 134:24
aiming 38:5 106:5
aisha 22:21
aisner 20:11
akin 17:12 35:5
39:4 48:9 73:13
91:4,22 107:4
112:17
al 6:13 8:13,24 9:4
9:9 11:5 14:5
15:17 24:4
alberta 88:2
alert 30:6
alex 21:21
alexander 21:25
alice 20:25
alix 22:15
allegation 54:9
allocate 68:23
allocation 29:24
33:18 50:15 104:7
112:13 115:5,6,24
119:25 123:16
allow 9:20 45:7,18
92:11 105:2 113:6
117:9
allowance 85:25
111:24
allowed 93:21
106:12 121:11
allowing 5:4,21
6:3 7:21 8:3 10:20
13:13,21 103:14
ameliorating
92:13
amended 4:1
24:16 85:8 86:8
86:11,15,20 87:19
88:24
amendment 9:6
america 102:25

american 56:10
americas 18:17
19:19
amount 37:2,18
66:7 67:9 77:23
85:25 100:1
112:11 117:24
124:25 134:5
amounts 48:25
amply 99:12
analysis 36:22
48:23 93:18,20,23
93:24 94:12
102:11 125:7
126:25
analyze 69:10
analyzed 37:9
40:11 41:9 108:13
andrew 18:6 21:3
55:13 121:22
anger 57:17,18
anne 20:12
answer 45:3,7
48:2 51:5,7 83:5
83:10
answered 37:23
answers 34:24
45:12 55:20
anticipate 37:12
anticipated 36:8
anticipating
69:11,13
anybody 61:23
82:23
anymore 50:7
anyone's 59:22
apologize 71:11
88:1 102:16
103:20 121:23
apparently 54:4
appear 27:24
61:15 124:10

appearances 83:9
appeared 96:24
appears 24:19
  42:9 67:24 72:23
  84:12
applicable 9:22
  10:5 11:17 12:1,9
application 27:4
applied 100:2
apply 69:5 77:14
applying 129:4
appointed 42:22
appointing 50:5
appointment 45:1
  45:6 56:20 57:14
appreciate 36:25
  37:25 90:13 131:1
appreciated 62:19
  79:3 95:19 98:17
  131:23
appreciative 75:1
approaching
  88:10 92:22
appropriate
  30:10 32:14 46:7
  59:16 62:3 63:20
  67:7 94:24 106:1
  106:3 111:8
  112:14 116:8
  129:6
appropriately
  41:9 103:5
approval 27:5
  80:20 88:14 132:9
approve 2:23
  71:23 72:25
approved 26:16
  27:16 85:15 86:23
  95:25 118:12
approving 2:24
  122:17
arapaho 5:15 7:15
  10:13 13:6

argue 94:13
  114:21
argument 56:9
  108:20 118:17,20
arguments 100:23
  104:4 108:13
  109:21,23 110:1
arik 17:17 35:4
  73:12 91:3,22
  107:4
arrange 24:13
arrived 99:23
artem 20:24
article 54:14
articles 56:16
articulate 53:11
articulated 37:14
  53:10
articulates 122:20
ascribing 59:23
aside 25:18 30:22
  67:21 83:16
  120:23
asked 25:7 28:12
  30:14 49:12 50:10
  51:5,7 76:22 83:3
  83:12 89:23 102:5
  103:5 111:10,10
  119:1
asking 49:24 50:9
  103:19 119:6
aspects 28:2 39:8
  125:4
aspirational 32:2
aspirations 63:16
assert 32:12
assertions 93:11
asserts 125:16
assets 58:16 92:12
assign 44:6
assist 124:15
assistance 134:15

associated 33:12
associates 44:11
association 75:10
  75:11,13,14 76:15
  76:16 77:3,3
associations 75:12
  78:2,2
assume 103:5
  127:23,23
assuming 47:20
  73:9
assumption 59:24
  86:13 87:22
assure 116:19
asymmetrical
  120:13
attached 90:8
  105:19 123:19
  128:6 130:18,19
attack 93:9
attempting 30:6
attendance 30:16
attention 64:13
  81:9 83:23 98:7
  114:12
attorney 5:18
  7:18 10:16 13:9
  75:9,10,11 76:16
attorneys 17:4,13
  17:21 18:2,9,16
  19:2,11,18 20:2
  58:17 61:6 76:15
  76:18 77:1
attracted 83:23
audit 52:16
august 33:17
  50:13 52:14 63:18
  66:25 67:4 70:21
  82:17 106:5,16
aurora 5:6
authorize 3:3
authorized 24:10

autoinjector
  27:17
avenue 17:5,22
  18:10,17 19:5,12
  19:19
avoid 39:23 46:8
  112:20
avoidance 77:24
aware 34:19
  41:22 42:13,18
  51:24 89:22 97:21
  110:1,9 111:18
  125:25 129:9
awesome 110:15
awful 81:2

b

b 1:21 5:17 7:17
  10:15 13:8 22:24
  51:14 100:24,24
  132:5
babies 96:13
back 31:4 48:7
  49:11 53:2 70:18
  73:3 75:8 82:15
  101:23 107:2
  121:9 122:9
  125:12
bad 121:10
bait 57:21
balance 33:17
  34:8 49:24 59:1
  110:22
ball 18:13 53:21
  60:21,21 62:2
baloch 85:2
bank 33:8 52:16
  61:16,17
bankr 9:21 10:4
  11:16,25 12:8,24
  14:16
bankruptcy 1:1
  1:12,23 43:21,25
  49:7 67:20 68:2

[bankruptcy - burden]                                              Page 5

68:19,20 69:3,3,5
70:2 113:17 129:9
131:22 132:11
134:22
**bar** 92:21,21 93:1
93:4,14 94:6 96:1
96:5,9 97:3,9,21
98:18,22 101:13
102:20,23 103:1,4
103:8,11,15 104:9
110:5 114:3,19
120:4,17,17 122:9
122:10,11 124:3
124:22 125:2,5,14
125:21,24 128:9
128:21 129:13
131:6,9,12,13,24
132:2,8,9,16,18
**barbara** 22:6
**barker** 21:8
**barrett** 20:16
**based** 37:16 69:17
121:14 128:20
**basic** 57:4,9
**basically** 41:1
42:23 43:21
112:12 116:15
124:15 132:13
**basis** 24:15 42:23
45:24,24 63:10
64:11 72:20 88:8
95:24 128:9 129:2
132:25
**bear** 108:18
**begging** 80:7
**beginning** 55:5
65:13,17 68:9
98:20 108:1 114:2
116:17
**begun** 27:19 40:6
**behalf** 2:14,20
3:15,24 4:6,11,17
4:24 5:6,18,24 6:6

6:12,18,21 7:3,7
7:18,24 8:6,12,18
8:23 9:4,9,13,18
10:16,23 11:4,10
11:19 12:4,12,16
12:20,22 13:9,16
13:24 14:4,10,14
15:3,6,11,16,21
16:2,7,11 25:1
35:5 39:4 60:22
62:12 71:22 73:14
85:7 88:6 89:19
91:4 92:3 99:14
104:1 107:5
128:12
**belabor** 103:13
**belief** 60:8 74:20
98:5
**believe** 24:7 34:2
39:25 40:7 41:20
41:22 43:1,8,15
43:15 44:23 45:21
50:20,23 53:11
55:8 56:18,23
63:3 65:19 78:6,6
78:6 82:23,25
89:15,20,24 93:15
93:25 94:7 97:7
97:18,21 100:1,15
100:16 101:21
103:10 104:15
108:18 109:1,1
113:1 119:4 120:7
120:20 121:15,17
126:13,19 127:6
127:11,17 128:13
129:4 132:4
**believed** 97:25
**ben** 83:2
**benefit** 74:23
98:23 122:6,7
132:19,20

**benefits** 72:25
99:18 100:6
126:10
**best** 60:3 69:8
70:20 74:15 88:7
89:23 99:17
101:21 119:15
133:11,13 134:7
**bet** 28:17
**better** 68:7 121:20
**beyond** 29:23
69:2 70:21 77:13
95:5 101:7 115:10
132:17
**bickford** 22:24
**big** 56:24
**billions** 44:15
**bills** 84:11
**binders** 71:12
**binds** 89:2
**birnbaum** 20:17
**bit** 37:3 48:20
50:4 66:20 71:13
75:18 77:25 79:9
79:11 82:22 107:7
**bits** 69:17
**blast** 120:4
**blessing** 89:1
**block** 63:1 112:12
**blocks** 65:15
**bloggist** 57:7
**blood** 30:25
**blow** 119:16
**blowing** 103:13
**board** 5:6,7,8 42:8
42:9 52:11
**booth** 22:3
**bottlenecks** 69:11
69:12
**bottom** 37:1 43:16
45:5 47:13
**bounds** 82:19

**box** 119:16
**bozman** 22:15
**branch** 71:2
**brauner** 21:18
80:23
**breadth** 98:19
**brevity** 120:10
**brian** 22:25
**brief** 78:24 105:18
105:19 111:14
**briefed** 90:14
98:14 126:22
**briefing** 112:24
113:3 126:17
**briefly** 53:23,24
62:7 71:25 120:12
**briefs** 42:1
**bring** 47:8 98:8
98:11,12,12
111:15 112:3
**bringardner** 23:3
**bringing** 113:10
**brings** 84:24
89:20
**british** 3:19,25
19:3 87:13
**broad** 115:8,10
**brooks** 21:8
**brought** 30:18
74:22 81:9 98:20
98:21,21 111:25
**brown** 22:8
**bryant** 17:14
**build** 62:24
**building** 63:1
65:15 112:12
**bump** 62:17
**bunch** 46:8 48:7
**buprenorphine**
26:17
**burden** 44:13,17
101:16 105:14,25
119:18

**burdened** 101:15
**burdens** 33:12
**burdensome**
  44:10,12 47:3
  98:25
**business** 26:1,4
  33:4 49:11 52:8
  64:5 68:1 74:19
  78:11 79:19 80:3
  83:17,18
**businesses** 80:1
**buy** 57:3
**buying** 57:22

**c**

**c** 7:2,5 9:12,16
  12:15,18 15:2,5
  16:6,9 17:1 24:1
  72:9 78:3 137:1,1
**calendar** 31:5
  33:15 63:15 66:3
  77:21 125:12
**calgary** 19:13
**call** 38:15 80:22
  88:15 119:22
**called** 54:5 125:7
**calling** 128:11
**calls** 114:11
**campaign** 77:5
  82:5
**canada** 85:13,17
  86:23 88:3 128:11
**canadian** 3:14,23
  4:5 19:3 84:25
  85:9,15 86:5,10
  86:24 87:10,14
  88:4,6,16,24,25
  89:2,3 128:13
  136:10
**candidates** 81:20
**candidly** 28:12
  124:14
**cap** 76:20,20
  77:17

**caplin** 20:1
**caps** 78:5
**captured** 95:13
**careful** 37:23
  133:2
**carefully** 54:14
  64:2 108:22
**caroline** 22:2
**carried** 55:10
**carry** 53:17
**case** 1:3 19:17
  25:21 27:20 28:13
  30:24 31:1 34:16
  34:22 36:5,15
  38:10,11,13,22
  42:5 43:15,25
  44:18 47:20,21,23
  49:8,21 51:18
  54:13 55:18 57:7
  57:12 58:13,17
  59:3 60:9,16,17
  62:15,21 63:5
  64:9 66:8,15
  67:20,22 68:5,10
  68:13,13,19 69:3
  69:3 73:21,23
  77:16 78:20 79:6
  80:8 81:7 82:15
  83:8 84:15 88:14
  88:16 93:15 95:20
  95:23 96:2,11,23
  96:24 97:1,22,25
  98:6,8,11,12,20
  98:24 99:16 100:3
  100:17,18 101:1
  101:16,22,22
  103:24 104:21
  107:25 108:2
  110:16 113:14,17
  114:14 115:21
  118:25 119:13,15
  121:10,11,13,16
  122:13 129:9

  130:22 132:11,11
  132:20 133:5
  134:22
**case's** 56:19
**cases** 25:14,24
  28:3,8,24 30:11
  31:9,16,18,23
  34:5,10 38:1
  41:11,19 42:6,14
  43:9,11,13,21
  44:4,5,9 55:9
  66:13 68:20 69:5
  74:9,25 76:14,19
  76:21 80:14 92:6
  92:9 94:4 98:16
  103:9 110:3
  111:17 113:1,20
  117:7,8 120:21,22
  123:6,17 124:22
  125:25 126:4
  133:8 134:11
**cash** 48:25
**category** 116:1
**catrina** 22:7
**cause** 36:3 43:1
**causes** 47:16
  68:23
**cautiously** 114:7
**ceased** 81:19
**cede** 73:3,6
**ceding** 89:15
**centers** 29:20
**central** 42:12
  112:9 113:4
  117:25
**centrality** 112:21
  114:25
**century** 37:5
**certain** 3:14,22
  4:5 5:20 6:3 7:20
  8:3 10:20 13:13
  13:21 39:13 72:9
  73:16 93:8 108:6

  109:13,16 110:11
  115:3,25 117:7
**certainly** 39:20
  54:9 56:25 94:14
  118:24 126:17
  127:3
**certainty** 93:14
**certification**
  36:11 60:8 91:19
  94:4 97:6,24
  98:17 99:21 100:4
  100:14 101:13
  123:5,15 129:15
  130:14
**certifications**
  97:20 98:16
**certified** 85:17
  94:3,11 96:22
  116:2 137:3
**certify** 100:24
**certifying** 5:5,22
  6:4 7:22 8:4 10:21
  13:14,22
**challenges** 65:21
**chambers** 70:17
  73:1 84:21 133:19
**chance** 70:22
  133:13
**change** 100:18
  119:16 128:7,13
  128:16 133:17
**changed** 91:7,8
  109:3
**changes** 80:2
  86:19
**chapter** 2:5,7,12
  25:14 26:10 31:17
  33:1,5,7,13 34:7
  74:9 76:14,19,21
  92:9 96:2 103:9
  113:1 123:6
**characterized**
  63:3

charged  81:7
check  63:25 82:8
cheyenne  5:15
  7:15 10:13 13:6
children  14:21
  52:20 57:21
childrens  12:23
  14:14
choose  131:11
chris  103:23
christian  21:20
christopher  5:17
  6:5 7:17 8:5 10:15
  10:22 13:8,15,23
  17:10 19:22 22:18
  71:21 85:6
chu  22:12
chute  31:17
circle  20:3
circuit  126:1,1
circuit's  101:2
circumstance
  119:17
circumstances
  44:13 66:16 74:24
  79:6 110:3,4
  126:4 132:21
cited  54:15
cities  88:6,8
  128:13
city  19:11 88:2
  128:11
civ  9:21 10:5
  11:16 12:1,9
claim  3:12,21 4:3
  4:10,16,23 5:4,22
  6:4,4,10,16 7:10
  7:22 8:4,4,10,16
  8:23 9:3,8,23 10:6
  10:21,21 11:2,8
  11:18 12:2,10,22
  12:25 13:14,14,22
  13:22 14:2,8,17

14:23 15:10,14,20
16:1 25:20 36:11
47:17 53:10,11
85:11,12,14,19,21
85:23,25 86:1
87:3 88:15 90:2
91:19 96:10 97:4
99:14,16,24
106:14 109:23
111:23,23,24
112:10,11 113:11
114:22 117:1,22
119:7,11 123:6
124:6 125:4,13,15
125:16,16,18
126:8,11 128:8,12
129:13 132:1,6,6
132:24,24
claimant  47:6
  115:14
claimants  2:10,15
  4:20,25 5:13,21
  6:3,15,19 7:9,13
  7:21 8:3,15,19,22
  9:2,7,20 10:1,3,11
  10:20 11:7,11,13
  11:15,20,22,24
  12:5,7,12,23 13:4
  13:13,21 14:7,11
  14:14 15:24 16:3
  26:8 44:5 65:22
  65:22 92:12 96:13
  104:2 105:9
  113:14 114:4
  115:7,7,14,15,16
  115:18,20,25
  122:5 123:17
  131:20
claims  15:9 36:22
  36:23 47:24 48:3
  51:21,21 53:17
  54:20,21 58:8
  68:6,23 85:12

88:4,5,7,14 89:21
92:15,20 93:10,12
93:15,21 96:7
97:12,14 104:11
104:20 109:14,22
109:25 110:4,11
110:13,21 111:15
111:22 112:11,12
112:16 116:11
117:25 119:2
120:7 122:1,7
124:2,16,17
126:14 127:22
128:21 131:8,12
132:14 136:11
clarification
  88:24 125:22
  131:15
clarify  107:10
clarifying  3:5
  73:16 87:25
clarity  34:9,16
  92:15 99:3 122:15
  122:16,23 126:11
class  3:12,20 4:3
  4:10,16,22 5:4,5
  5:13,16,21,22 6:4
  6:5,10,16 7:9,10
  7:13,16,21,22 8:4
  8:5,10,16,21,23
  9:2,2,7,7,23 10:6
  10:11,14,21,22
  11:2,8,18 12:2,10
  12:22,23,25 13:4
  13:7,14,15,22,23
  14:2,8,14,17,23
  15:9,10,14,20,25
  25:20 36:11,11
  60:7 84:25 85:9
  85:10,11,11,13,19
  85:21 86:1,6,22
  88:5,8,15,16 89:1
  89:21 90:7 91:18

91:19 92:15 93:12
93:21 94:4,5,11
96:14,21 97:6,16
97:19,24 98:15,17
99:21 100:4,14
101:4,11,13 103:3
104:20 105:20
106:14 112:10,16
113:10 114:22
115:13 116:2,11
117:1,22 120:4,25
121:25 123:5,5,14
124:6,17 125:4,13
125:17 126:8,11
128:9,12 129:14
129:15,21 130:14
132:1,6,24,24
136:10,11
classes  85:16 94:3
  100:20,24 101:8
  115:8 120:24
clear  37:25 39:10
  39:24 47:1 49:24
  56:15 61:23 68:9
  74:11 78:20 86:3
  100:8 101:2 108:2
  111:2 113:10
  116:9 118:19
  119:5,13,24
  129:12 130:10
  131:9,25 132:22
cleared  82:9
clearly  24:21,22
  37:13 55:17 84:16
  88:21 126:5 129:8
  130:23
clears  124:12
clerk  102:6 103:1
clerk's  24:13,14
click  57:3,21
clicking  57:23
clicks  68:15

[client - confirmable]                                                    Page 8

**client**  24:6 44:21
    57:8
**clients**  37:24 52:9
    56:4,5,14 87:16
    115:17
**clinical**  73:8
**close**  30:4 65:6
    66:20 133:13
**closely**  54:20
**closing**  134:3
**coalescing**  29:2
    65:11
**coats**  52:3
**cognizant**  43:19
**coincidence**  99:8
**coleman**  20:18
**colleagues**  35:10
    47:14 56:5
**collected**  52:1,4
    61:11
**collecting**  51:25
**collection**  39:13
**collective**  60:8
**colloquy**  95:16
    122:10
**columbia**  3:19,25
    19:3 87:13
**come**  33:19,23
    45:6 48:14 54:24
    60:3 61:18 65:6
    69:17 79:5 120:16
    124:6,9 125:12
**comes**  40:12
    63:25 104:10
    121:17,19
**comfort**  81:7,15
    82:18 110:3
**comfortable**
    80:18 84:13
    132:21
**comfortably**
    120:18

**coming**  24:20
    34:23,24 63:14
    65:3 69:10 86:23
    87:1 97:10 101:7
    116:15 118:5
**commencement**
    74:9
**commentary**
    110:20
**comments**  104:18
**commercial**  84:14
**commitment**
    57:15
**commitments**
    41:23
**committed**  60:11
    66:1 92:8
**committee**  2:14
    3:4 4:24 6:9,12,18
    8:9,12,18 11:1,4
    11:10 14:1,4,10
    14:22 15:13,16
    16:2 17:13 28:22
    35:6 39:5,11 40:6
    41:22 45:8,14
    46:4,16 47:5
    48:20 50:1,23
    51:3 53:8,16 55:6
    56:7 58:15 59:12
    62:12,15 73:14
    75:1 77:4,18
    79:12 80:21 82:2
    83:11,12,13 84:13
    90:3,4,8 91:5,5
    96:15 99:11
    105:10 107:5,12
    108:11 121:12
    123:12,13,25
    126:21 127:18
**committee's**  34:11
    36:21 41:17 43:12
    55:7 90:6,21,24
    95:2 123:20 128:5

**committees**  14:21
    28:11 96:12
**communicate**
    37:7 55:6
**communication**
    36:7
**communications**
    64:6
**companies**  40:16
    52:17 79:20 80:12
    80:12,14 84:8
**company**  26:17
    32:22 33:5 52:23
    54:4 56:8,11
    84:11
**compared**  83:7
**compete**  100:1
**complete**  37:17
    41:6 45:10 54:18
    64:23 67:17
    120:21
**completed**  43:5
**completely**  24:4
    56:7,21 57:1,13
    117:23
**completion**  96:19
**complex**  26:4
    54:19 58:23 97:3
    106:7
**complexities**  59:2
    101:19
**complexity**
    101:15 103:16
**complicate**  36:25
    37:6
**complicated**  63:5
    106:11
**complying**  96:9
**comprehensive**
    43:22 45:11 55:10
    96:1 125:1
**comprising**
    112:23

**compromise**  78:8
**compromises**  28:7
**conceivable**  56:10
**concept**  93:14
**conceptually**
    25:20
**concern**  109:8
    110:8 124:21
**concerned**  88:22
    92:8 100:7
**concerning**  39:19
**concerns**  46:25
    68:15 80:22 84:15
    86:13 87:20
    109:12 116:12
    125:24
**conclude**  70:25
    99:9
**concluded**  55:5
    65:5 67:3 124:4
    135:3
**concludes**  63:17
    71:8 89:14
**concluding**  59:13
**conclusion**  6:11
    8:11 11:3 14:3,24
    15:15 30:8 33:19
    63:14 64:1,9 65:6
    65:6 66:17 97:11
    98:9,11,12 106:6
    106:15 108:4
    124:24 128:3
**conditional**  85:13
**conditionally**
    85:17
**conduct**  55:20
**conducted**  114:10
**conference**  29:20
    76:23
**confident**  120:1
**confirmable**
    41:13 45:19 59:19

**confirmation**
69:24 90:22
**confirmatory**
37:19
**confirmed** 69:6
86:10
**conflicting** 58:20
**confront** 101:20
**confronted** 97:5
**confused** 121:24
130:11
**confusion** 107:11
**congress** 52:2
61:3 84:20
**connaught** 132:12
**connection** 26:20
38:8 40:25 41:10
60:10 62:11 95:21
96:3,25 101:17
116:14
**consensual** 25:22
59:19,19 92:10
**consensually**
28:16 75:24
133:12
**consensus** 62:24
67:17 68:12 75:21
99:23 134:20,21
134:24
**consenting** 18:2
49:5 91:6
**consider** 24:9
100:21 126:18
127:15 128:2
**considerably**
126:10
**consideration**
69:7 72:7 93:16
125:6 128:1
**considerations**
69:4
**considered** 29:25
99:25 101:14

127:17
**consistent** 80:9
95:8 116:2 118:11
128:6
**consistently** 43:7
**constantine** 21:13
**constituencies**
27:24 62:23 96:23
97:4 99:14,19
100:7 115:10
**constituency**
63:11 99:3 100:9
**constituents**
38:22 70:12
**constitutes** 85:22
**constructed**
108:23
**constructive** 64:6
**consume** 98:7
**consuming** 63:9
**contact** 24:13
**contained** 93:12
**contemplated**
40:23 43:3 97:3
115:24 124:5
**contemporaneo...**
35:22
**contested** 25:19
34:14,15 89:21
**contesting** 86:11
**context** 47:2
58:12 59:24 79:9
79:11 125:21
126:19
**contingent** 2:15
4:25 6:19 8:19
11:11 14:11 16:3
**continue** 26:15
33:11 34:2,8
39:20 45:14 54:18
65:8 70:1,1 91:9
91:10 95:23
101:24 106:12

109:1 113:11,12
117:13
**continues** 26:25
58:9
**continuing** 28:1
33:8 112:8
**contours** 83:19
**contract** 81:25
**contrary** 82:25
**contribute** 76:25
77:13 80:13
**contribution** 68:7
77:15,23 81:12
**contributions** 3:6
34:4 73:8,17 74:5
74:8,10,18,20
75:4 77:19 78:1
81:17,20 84:7
136:9
**controlling** 38:3
**controversy**
117:20
**convenience** 3:13
3:21 4:3 85:20
**conventional** 53:1
**conversant** 36:17
**conversation**
25:13 122:3
**conversations**
32:4 33:18 102:22
121:15
**cooper** 42:22
**cooper's** 42:25
**cooperating** 45:9
**coordinate** 46:19
**coordinating** 46:4
46:11
**copy** 133:19
**core** 121:9
**corp** 132:15
**corporate** 57:14
**corporations**
79:23,25

**correct** 44:8 53:25
54:7 71:18 72:9
86:24,25 87:2,6
87:17 118:23
121:8
**correctly** 38:12
56:4
**cost** 26:22 45:4
49:22 68:24 103:8
120:5
**costs** 33:12 72:20
72:25 76:23
**couched** 123:11
**could've** 111:25
118:21
**counsel** 38:2,3
42:22 46:10 53:8
72:11 85:10 86:6
87:22 99:13
**counter** 26:19
**country** 44:8
103:11 119:18
137:21
**couple** 34:21 66:8
67:6
**course** 25:14 28:7
29:3,5 31:20 32:7
32:23 39:23 42:3
43:1,19 44:1 48:1
54:11 66:9,12
74:20 79:15 82:16
105:17 115:23
**court** 1:1,12 24:2
24:7,11,15,21,22
24:24 28:21 30:6
30:23 32:7 33:4
35:1,3,7,25 36:4
38:20,25 39:1,21
40:3,11,14,19
41:22 42:13,16,18
45:23 46:2,12,14
46:21,24 48:5,12
49:15 50:10 51:5

51:7,9,12 53:24
55:12,16,22,25
56:3 58:2 60:20
62:1,5,17 66:6
71:14,17 72:2,6
72:15,17 73:4,11
73:20 74:3 76:3,6
76:10,22 78:15,18
78:21 79:8 80:20
81:6,15 82:16
84:5 86:21 87:1,3
87:7,15,18,23
88:11,13,20 89:10
89:17,25 90:20
91:12,15,25 93:17
93:23 94:7,16,19
94:21,25 95:4,9
95:19,25 96:4
97:18,18,21 99:7
101:5 102:3,4,5,7
102:8,18,19,23
103:7,22,25 104:7
104:25 105:4,7
107:1 110:4 116:8
117:11 118:2,6,13
118:16 119:1,4
120:22 121:2,4,21
123:2 124:7,9
127:11 128:15,19
128:25 129:4,8,11
129:17,21,24
130:1,5,7,17
131:2,7,14,17,19
131:21 133:23
134:14,17 135:2
court's    31:5 39:22
82:16 95:8 105:12
courtesy    84:1
courtroom    26:15
courts    25:7 85:15
98:15 101:14
125:3

cover    102:13
128:16
covering    51:16
covid    25:5 26:9
29:17 30:18 110:5
124:5
creadore    21:17
create    98:7 110:6
created    100:20
creating    43:17
creditor    32:5
33:25 49:14 56:11
creditors    3:4 6:9
6:13 8:9,13 11:1,5
14:1,5,22 15:13
15:17 17:13 18:16
19:18 33:22 35:6
39:5 43:15 44:3
44:19 45:9,12
46:5 49:15 55:9
56:8 58:14 68:16
69:7 74:23 90:3
96:15 99:11 107:5
113:23 115:3
116:1 121:12
123:13,20,25
crises    44:7
crisis    30:18 33:10
43:17 56:18 92:13
104:13
critical    25:16 31:8
41:7 42:6 43:14
45:5 80:3 108:18
critically    34:9,16
44:18
crucial    55:1
crystal    68:9
cuneo    20:19
curly    83:19
current    27:11
33:18 41:16 51:20
72:12 123:11

currently    41:1,5
42:19 61:9 104:6
custodians    53:3
customary    77:6
cut    107:22
cutting    47:1 71:2
cycle    120:6
cyrus    21:14

d

d    1:22 24:1 72:9
136:1
d'apice    4:11 15:11
daily    24:15 42:23
63:10 104:6
damage    97:15
damages    100:2
101:11
dan    22:13
daniel    21:6
dante    22:1
dashboard    87:8
data    51:25 52:1
61:12,20
date    30:2,9 37:18
59:21 67:1,1,4
73:24 82:3,10
92:21,21 93:1,1,3
93:4,14 94:6
95:23 96:5,6,9
97:3,10,21 98:18
98:22 101:13
102:20,23 103:1,4
103:8,12 104:9
110:5 114:3,19
120:5,17,17 122:9
122:10,11 124:3
124:22 125:2,5,15
125:21,24 128:9
128:22 129:13
130:15,16,20,21
131:2,6,9,10,12
131:13,24 132:2,8
132:9,17,18

137:25
dated    90:9
dates    52:19 53:6
59:14 64:25 96:1
103:15
david    22:14 52:10
52:23 54:3
davis    17:3 24:25
71:21 85:7 89:19
92:3
day    31:21 73:19
82:9 84:9 96:24
106:10
days    25:7 74:5
77:21 81:12 83:17
83:18,20 93:2,3
101:7 108:23
116:15 130:20
dc    20:4
de    76:22
deadline    30:8,15
50:14 63:16 64:15
64:21 66:17,21
70:6 71:3
deadlines    34:23
43:5 63:23
deal    27:10,11
32:21 48:16 50:25
73:20 81:3 88:7
90:14 95:14 96:9
96:18 101:22
111:4,6 127:19
dealing    68:6
88:13,14 89:21
90:1 124:16
dealt    98:15
111:19
dean    21:13
debate    97:13
110:19
debevoise    18:8
60:21

**deborah** 20:13
**debtor** 1:9 26:4
  28:3,10 82:18
  84:14 86:24 96:3
  127:19
**debtors** 2:5,11,19
  2:23,25 3:5 4:14
  4:20 5:20 6:2 7:20
  8:2 10:19 13:12
  13:20 15:19 17:4
  25:1,23 26:11
  27:23 28:7,15
  29:1,25 30:4 31:6
  32:3,18 33:23
  34:2,22 35:17,25
  37:14 38:8 39:7
  39:12,17 40:2,6
  41:12 47:16 48:13
  50:6,11,11,13
  51:3 52:8 58:9
  59:6 71:22,23
  72:7,18 73:16
  74:8,16 75:2,7,9
  75:16,18,21 76:8
  76:11,14,19,25
  77:5,20,25 78:6,7
  78:11,24 79:17,19
  80:3,11,15,23
  81:8,16,19,21,24
  84:12 85:8,24
  86:5 87:1,5 88:22
  89:5,20,22 90:17
  91:7,18 92:4,5,7
  92:12 93:10
  107:15,24 118:24
  120:14 124:12,24
  126:21 134:18
**december** 32:20
  45:19 49:3 51:1
  59:21 70:11 77:9
  82:15
**decide** 32:14
  49:18 57:2 58:18

60:1 68:22 70:3
**decided** 30:4
  93:18
**decides** 101:5
**decision** 70:25
  71:1 113:5 117:18
**declaration** 7:1,5
  9:11,16 12:14,18
  15:1,5 16:5,9
**declared** 114:16
**deemed** 93:12
  125:14
**deeply** 29:13
**defend** 109:14
  110:13
**defendant** 26:5
  132:19
**defendants** 51:20
**defer** 67:8
**define** 32:10
**defined** 115:8,16
**definitely** 40:9
  107:13
**definitively** 82:10
  104:24 116:10
**delaware** 72:2
**delay** 32:24
**delayed** 98:24
**delicate** 110:21
**delighted** 83:16
**delivered** 71:12
**demand** 28:15
**demanded** 44:22
**demanding** 45:13
**demands** 49:15
  53:6
**democratic** 75:10
  75:13 76:15 77:2
  77:4
**denial** 106:2
  125:13 126:8
  132:1

**dennis** 22:12
**dense** 82:13
**deny** 122:21
  124:19
**denying** 122:17
**department** 65:23
  81:22
**depending** 32:10
  59:13
**deployed** 33:9
**deponents** 32:14
**deposition** 32:15
  59:15,16 69:16
**depositions** 43:14
  51:20 64:22,24,25
  65:2,4 69:14
**derivative** 36:23
  51:21
**describe** 61:13
**described** 83:21
  97:12
**desire** 58:21 59:22
  69:5
**desired** 67:18
**desperately** 26:21
  134:11
**despite** 60:3 134:7
**destroyed** 33:11
**detail** 86:18
**detailed** 42:2
**determination**
  109:12 110:17
  124:23
**determine** 112:14
  116:10
**develop** 27:1
**developing** 27:13
  63:1 124:25
**development**
  26:25 27:18 28:1
  97:2
**device** 27:18

**devices** 61:12
**devoted** 92:12
**dicta** 132:14,16
**die** 57:21
**difference** 29:14
**different** 38:13
  46:8 76:4 88:11
  97:4 101:8 106:10
  112:22,23 113:25
  126:3
**differently** 89:1
  119:23
**difficult** 66:13
  101:20 106:16,19
**difficulty** 98:3
**digest** 32:13
**digested** 49:12
**digital** 61:11
**digitally** 37:7
**diligence** 31:7
  36:18,19 37:1,20
  57:4,10 58:16
  59:9 68:10,22
  78:1
**diminishing** 31:14
**direct** 81:20
  114:10
**directing** 42:10
**direction** 89:23
**directly** 40:16
  48:1,9 95:15
**directors** 42:9
**disadvantage**
  84:14
**disagree** 59:1
  121:12
**disburse** 82:4
**disclosure** 2:5
  32:25 42:2,24
  43:13
**disclosures** 43:2
  45:16,18

discover 58:7
discovery 28:3,15
  31:7 32:4,6,9
  35:17 37:5,17,21
  38:18 39:9,17
  40:1 41:16 42:1,5
  42:12,15 43:4,13
  43:21,22 44:9,12
  45:11,21 46:3
  47:4,4 55:4 59:5
  59:13,15,16 60:24
  60:24 62:7 64:13
  68:18 69:2,17
discretion 105:1
  119:4 126:24
discretionary
  102:10 129:5
discuss 37:12
discussed 26:15
  26:19 27:7,12
  80:21 96:19 109:2
  110:25 116:18,19
discussing 127:22
discussion 97:19
  122:3
discussions 29:15
  64:10
dismiss 72:12,14
dismissal 2:24
  71:10,15,23,25
  136:7
dismissed 72:2
dispute 47:4
  117:10
disputes 32:4 43:8
  47:7 59:25
dissenting 28:5,22
distinguishable
  132:11
distinguished
  128:21
distributable
  104:12

district 1:2 5:7,8,9
  72:2 126:2
districts 5:3,5,14
  6:22 7:14 10:12
  13:5 92:24 96:13
  100:23 105:18
  123:7
ditrapano 22:1
divide 104:8
dizengoff 6:12
  8:12 11:4 14:4
  15:16
dkt 10:7 12:3
docket 10:2 11:14
  11:23 48:21 71:25
  73:14,18 77:20
  78:20 81:13 86:9
document 2:13,20
  3:23 4:6,11,16,23
  5:16,23 6:5,17 7:2
  7:6,16,23 8:5,17
  9:3,8,12,17 10:8
  10:14,22 11:9,19
  12:4,11,15,19
  13:7,15,23 14:9
  14:18,25 15:2,6
  15:21 16:1,6,10
  32:8 37:17 41:6
  43:3,4,12 49:11
  61:7 70:4
documentation
  61:5
documents 28:20
  32:11 40:6,23
  41:7 43:10,11
  46:9 48:15 51:15
  51:18,23,25 52:1
  52:7,8,14,21,23
  52:25 53:5 54:5
  59:6 61:5,9,14
  65:3
doing 24:9 47:14
  58:23 61:7 70:5

dollar 80:8
dollars 33:14
  44:16 49:10,23
  51:2 120:6
donald 21:17
don't 81:16
double 103:21
doubt 28:21 44:16
  77:24 129:11
dovetails 95:15
dozen 80:11
dozens 80:11
drachler 22:13
drafting 116:14
dragooned 50:19
drain 1:22 24:2
draw 71:1
drexel 101:2
drift 38:1
driven 55:20
  56:24
drops 25:7 34:21
  50:17 51:2 71:10
  71:14 73:8 80:2
  83:20 85:3 102:22
  121:11
drug 26:24 27:2,4
  27:9
drysdale 20:1
due 36:18,19,25
  37:20 57:4,9
  68:10,22 110:3
dunford 4:12
  15:11
dunford's 4:21
  15:19,25
duration 66:24
  76:13,21
d'apice 21:9

e

e 1:21,21 17:1,1
  21:6 24:1,1 136:1
  137:1

dollar... earlier 77:17 82:2
  109:6 112:18
  113:7 115:1 122:4
earliest 55:6
early 31:24 33:21
  33:25 37:16 64:19
  65:7,12 70:11
earned 84:11
earnest 32:16,21
ears 57:19
easier 104:9
easily 110:2
east 5:6
ecf 2:8,16,21 3:1,6
  3:8,9,16,25 4:7,12
  4:18 5:1,10,18,24
  6:7,13,19,22 7:3,7
  7:10,18,24 8:7,13
  8:19,24 9:4,9,14
  9:18,24 10:16,24
  11:5,11,20 12:5
  12:12,16,20 13:1
  13:9,17,25 14:5
  14:11,19,25 15:3
  15:7,11,17,22
  16:3,7,11
echo 31:5
eckstein 2:14 4:24
  6:17 8:17 11:9
  14:9 16:2 18:20
  60:5 62:3,4,6,18
  67:24 94:22,22
  95:1,10 106:4
  107:11,24 110:23
  113:8 114:24
  122:4 129:23,25
  130:8,9 131:1,3,4
  131:8,15,18,20,22
eckstein's 56:4
  60:12 69:9
ecro 1:25
ed 53:14 70:13

| | | | |
|---|---|---|---|
| **education** 5:6,7,9 | **encompassed** | **esi** 52:9 61:11 | **examinations** |
| **edward** 21:22 | 125:17,17 | **especially** 26:9 | 57:16 |
| **effect** 114:10,12 | **encourage** 26:25 | **essence** 72:18 | **examine** 44:6 |
| 130:5 | **endeavor** 58:24 | 83:17 | **examiner** 45:1,3,7 |
| **effective** 99:13 | **endless** 103:14 | **essential** 26:7 | 56:20 57:13 |
| 125:6 | 120:25 | **essentially** 26:22 | **example** 25:18 |
| **effectively** 117:25 | **energy** 95:14 96:9 | 100:19 103:14 | 54:15 64:22 67:17 |
| **effectuate** 3:13,22 | 96:18 | 120:4 | 100:24 106:9 |
| 4:4 | **engaged** 29:13 | **esserman** 21:2 | 108:14 116:2 |
| **efficient** 47:11 | 67:11 70:19 | **established** 30:8 | **excellent** 130:4 |
| **efficiently** 84:3 | 112:13 127:21 | 79:20 | **exchange** 27:21 |
| 92:9 118:25 | **engaging** 99:5 | **estate** 47:24 88:22 | **exchanges** 27:22 |
| **effort** 30:19 37:1 | 117:3 127:24 | 112:15 | **exciting** 29:10 |
| 43:16 59:23 62:22 | **engineering** 27:18 | **estates** 92:11 | **exclusion** 38:6 |
| 70:23 75:3 | **ensure** 45:2 46:6 | **esteemed** 114:12 | **exclusive** 2:6,12 |
| **efforts** 59:2 60:4 | 55:9 111:8 112:6 | **estimation** 111:24 | 36:1,3 |
| 75:17 | 113:13,22 116:3 | **et** 6:13 8:13,24 9:4 | **exclusivity** 2:4,19 |
| **either** 47:16 78:13 | **ensures** 78:10 | 9:9 11:5 14:5 | 25:11,15 34:18 |
| 96:16 116:7 | **ensuring** 111:12 | 15:17 24:4 | 38:9 40:25 41:14 |
| 122:23 126:2 | **enter** 128:5 | **europe** 61:7 | 50:1 59:21 62:7 |
| **element** 100:13 | **entered** 29:8 73:1 | **evaluate** 70:2 | 62:11 70:16 71:9 |
| **elementary** | **entertained** 96:4 | 126:16 | 95:22 101:17 |
| 112:12 | **entire** 92:11 | **event** 72:19 93:19 | 136:6 |
| **elements** 46:5 | 115:20 | 102:16 128:2 | **excuse** 127:11 |
| **eleventh** 93:9 | **entirely** 25:6 | **events** 45:5 80:10 | **exercise** 104:6,25 |
| 98:21 114:5 | **entities** 38:3 41:3 | **everybody** 48:11 | 126:24 |
| **email** 61:11 73:1 | 65:20 78:4 87:10 | 51:17 116:17 | **exist** 100:20 101:5 |
| 84:21 89:6 133:18 | 88:25 89:2,3 | 131:9,10 | 106:13 |
| **emailed** 122:2 | 99:15 101:8 | **everyone's** 59:9 | **existing** 76:24 |
| **emailing** 35:10 | **entitled** 51:4 | 60:3 67:1 134:20 | **exit** 31:17 |
| **emails** 52:9 54:2,3 | **entitlements** | **evidence** 105:15 | **expect** 44:10 |
| **embarrassed** 85:1 | 97:15 | **evidentiary** | 58:18 104:8 |
| **embodied** 41:24 | **entity** 86:24 106:8 | 105:22,25 | 113:12,12 114:15 |
| 43:6 68:11 78:15 | **entry** 2:6,11,23 | **ex** 96:16 107:12 | **expectation** 29:24 |
| **emerge** 39:15 | 3:4 12:24 14:15 | **exactly** 32:10 | 40:8 42:25 95:8 |
| **emergence** 27:22 | 73:15 75:22 86:11 | 63:25 80:24 99:6 | **expectations** |
| 33:3,7 | 87:21 123:19 | 101:4 107:6 | 109:17 |
| **emergency** 33:1 | **environment** | 108:11 110:8 | **expected** 46:12 |
| **emily** 23:4 | 29:17 | 111:2 | 69:2 92:20 96:7 |
| **emphasizing** | **epidemic** 31:11 | **examination** | 104:18 113:11,12 |
| 108:18 | **eric** 8:24 9:4,9 | 44:20,21 45:10 | **expecting** 67:17 |
| **enable** 36:4 | **erica** 20:11 | 54:23 | 71:5 |

expedited  27:15
expeditiously
  92:9
expended  96:3,8
expenditures  82:3
expenses  95:23,24
experienced
  66:14 99:13
  127:24
expiration  98:22
explain  79:18
  81:16
explained  74:9
expose  74:6
expressed  66:2
expressly  115:2
extant  108:23
extend  2:4 36:1,3
  37:8 66:20 115:10
extended  29:22
  33:13 41:14 54:22
  59:21 102:20
  120:17 132:3
extending  2:6,11
extension  25:15
  31:21 96:5
extensive  42:1
  128:21
extensively  90:13
extent  64:21
  76:12 94:9 95:6
  99:22,23,25
  105:24 106:5
  133:6
external  50:20
extraordinarily
  106:7,11
extraordinary
  29:14 68:18
  102:22 108:21
  119:3 120:18
  134:13

extremely  56:13
  79:4 82:13,13
  125:20
eye  49:1
eyes  57:19

**f**

f  1:21 8:23 9:3,8
  23:4 72:9 137:1
face  29:16
facet  103:1
facilitate  29:21
  59:8 87:4
facing  28:3
fact  27:21 45:2
  60:7 62:22 63:4
  74:13 75:5 85:22
  92:23 95:14 97:7
  98:19 99:1,3
  101:1,12 102:2,15
  102:25 103:18
  108:5 109:13
  112:22 113:1
  114:2,5 125:20
  127:15,21 134:3
factor  102:6,9,10
  103:2,16 127:5
factors  94:1,2,8,9
  94:13 97:17
  104:15 105:13
  119:2,6 120:19
  127:2 129:5
facts  27:2 58:7
  102:21,24 126:3
  128:3,20 132:12
factual  121:24
fail  116:7
failed  105:25
  112:4
fails  120:18
failure  114:17
fair  42:21 66:7
  72:23 81:1 84:16
  111:8 114:14

117:7 133:14
fairly  108:20
  118:25 121:17
faith  63:11 111:9
  134:8
fall  37:16 64:19
  65:12
false  57:2 119:23
family  2:18,21
  36:16 52:14 54:25
family's  61:21
far  27:1 34:5 44:9
  47:7 49:3 58:18
  67:23 80:10 84:9
  88:20,22 102:25
  115:10 120:16
  130:2
farrell  19:15 88:1
  88:2,12,19 127:10
  128:10,11,18,24
  129:3,7,10,12,20
  130:4,6
farther  49:21
fashion  58:14
fast  81:10 88:9
faster  69:22 80:8
favor  128:20
fda  26:16,25 27:3
  27:5,5,15,16
february  69:24
fecund  27:21
fed  9:21,21 10:4,5
  11:15,16,25 12:1
  12:8,8,24 14:16
federal  82:5
feel  50:7
feelings  104:13
feels  104:23
fees  49:9 51:2
  76:23 103:4
  120:25
feet  63:22

feld  17:12 35:5
  73:13 91:4,22
  107:5
felt  51:6 74:21
  131:5
fentanyl  27:11
fewer  106:22
fiduciary  56:8
  119:13 120:16
field  110:6 120:13
  126:14
fifth  114:21
figure  63:25 88:18
file  2:7,12 5:16
  6:16 7:10,16 8:16
  8:22 9:2,7,23 10:6
  10:14 11:8,17
  12:2,10,25 13:7
  14:8,17 31:23
  33:2 41:6,25 49:4
  59:20 62:11 74:12
  83:11,12 85:10
  92:25 97:4 114:5
  114:18 122:7
  128:8 131:12
  132:6
filed  2:14,20 3:15
  3:23 4:6,11,17,23
  5:5,17,23 6:5,11
  6:17,21 7:2,6,17
  7:23 8:5,11,17,23
  9:3,8,12,17 10:2
  10:15,22 11:3,9
  11:14,19,23 12:4
  12:11,15,19 13:8
  13:15,23 14:3,9
  14:15 15:2,6,10
  15:15,21 16:1,6
  16:10 28:24 40:24
  42:4 52:19 62:13
  62:14 63:2 64:17
  64:19 65:11 69:19
  70:10 73:15,17

[filed - further]                                                                                    Page 15

74:6,14 79:10
86:3,9,20 88:5,16
92:20,21,25 93:2
96:8 97:6,9
101:13 104:11
105:9 112:23
124:3,17 125:18
128:12 129:13
131:8 132:24
133:19
**filing**   2:4 3:12,20
4:1,2,10,16,22
15:10,20,25 32:25
33:24 65:16 71:24
75:2 78:19 85:21
88:7,9 99:14
123:5
**filings**   52:15 90:5
**fill**   52:4
**final**   81:3 82:8
83:19 85:8
**finally**   59:5 77:24
**finance**   82:5
**financial**   26:5,11
27:22,24 52:16
59:7 61:18 64:6
67:24 68:1
**find**   29:17 35:1
48:8 53:7 56:13
93:5 112:21
120:15
**fine**   39:1 51:3
55:16 89:10
**finegan**   7:5 9:16
12:18 15:5 16:9
**fingers**   57:19
**finish**   80:7
**finished**   52:13
**finnegan**   7:2 9:12
12:15 15:2 16:6
**finson**   20:10
**fire**   63:22

**firemen**   101:9
**firms**   46:8 79:25
120:4
**first**   24:6,17 25:11
33:3 35:15 40:15
42:13 48:18 57:10
71:8 74:4 76:9
77:15 86:21 90:2
90:15,19 94:21
95:16 98:15 108:1
109:6,13 118:20
126:25 130:20
**five**   28:21 42:13
81:18 96:18 97:6
98:23 106:10
107:13 111:25
120:3 123:4 124:3
124:23 126:12
133:11,20
**flesh**   30:25
**flexibility**   66:19
**flipside**   122:20
**floodgate**   127:12
**floor**   17:22 19:5
58:3
**florida**   5:18 7:18
10:16 13:9
**flow**   40:15,20
69:7
**flowing**   40:10
**focus**   36:4,9,21
47:12 48:3 104:2
132:16
**focused**   36:13
54:20 59:17 76:18
77:1 107:25 122:5
**focusing**   42:19
47:9,15 70:7
**fold**   65:9
**follow**   126:4
**following**   75:2
77:14

**food**   29:21
**foot**   70:20 133:11
**footnote**   105:18
105:19
**force**   116:8
**forced**   50:19
109:14 110:12
**foregoing**   125:13
137:3
**foreshadowed**
43:7
**forget**   26:3
**forgetting**   48:20
**forks**   104:16
**form**   76:3 86:14
107:21 119:1
**formal**   28:15
39:14
**formalized**   40:9
**formally**   50:9
82:10 133:18
**forms**   27:14
**forth**   107:22
**forum**   109:15
**forward**   29:15
31:16 38:9 60:9
60:11 63:12 66:8
67:19 69:10 70:20
81:2 83:6 91:10
92:7,9,14 95:25
98:1 99:1,18
100:6 109:7 110:7
111:22 117:4,6
122:19 127:13
132:25 133:11
**fought**   41:23
**found**   116:24
**founded**   52:23
54:5
**four**   28:1 29:9
66:22 73:6 76:24
77:2,8,10,14 82:1
118:15,21 121:19

**fourth**   108:7
113:7
**fractional**   5:8
**frankel**   18:15
**frankly**   66:21
68:3 79:1 83:10
84:8 107:22 110:8
126:19,25 127:7
**fraudulent**   42:7
**free**   109:22
117:24
**front**   35:21 36:11
37:11
**fronts**   25:17 29:10
**fruition**   33:24
**frustrating**   56:13
**fulfilling**   58:6
**full**   32:21 48:16
52:20 57:15 68:24
97:9 118:19
**fully**   25:22 29:13
42:18 43:19 48:17
48:25 49:12 74:16
95:18 97:13
126:22 127:17,19
**function**   76:17
77:1
**functions**   36:2
**fund**   86:23 100:25
**fundamental**
106:3
**funding**   36:16
37:15
**funds**   75:12 82:4
100:2,9
**furlow**   21:3
**further**   8:22
32:24 41:10 47:11
60:18 75:17 76:12
76:22 82:18 86:14
90:12 98:2 127:4
130:22

| | | | |
|---|---|---|---|
| **future** 57:3 64:4 67:25 131:11 132:7 | **glad** 46:14 **global** 32:17,20 34:3 42:8 132:12 **go** 24:18 31:18,22 | 113:21 120:9 121:7 124:7 127:12 129:14 132:25 | 12:10 13:1 14:17 **grateful** 25:9 **great** 25:17 95:14 96:8,18 99:6 |

**future** 57:3 64:4
67:25 131:11
132:7

**g**

**g** 24:1
**gange** 22:2
**garnered** 113:3
**gather** 72:8 90:3
**gautier** 22:19
**general** 5:18 7:18
10:16 13:9 25:2
54:12 58:17 75:9
75:10,11 76:15,16
76:18 77:2 85:3
100:11 104:13
125:14
**generally** 25:13
30:11 63:19 73:23
82:20 86:19
**generating** 37:3
**generation** 27:9
**generic** 26:16
**genet** 21:15
**gentry** 132:14
**george** 20:22
**gerard** 2:20 21:24
**getting** 40:3 53:8
70:7 114:24
116:18 133:13
134:10
**giant** 104:20
**give** 66:18 67:5
79:16 81:6,14
82:6,18 108:9,15
117:22
**given** 36:9 60:23
66:7,24 68:13
74:23 84:15,15
98:19 103:5
104:11,12,15,17
118:14 120:16
123:23

**glad** 46:14
**global** 32:17,20
34:3 42:8 132:12
**go** 24:18 31:18,22
33:14 42:15,16
50:21 53:2 55:1
56:1 68:21 70:21
73:10 76:8 81:2
83:6 84:20 90:12
91:2,23 98:1,25
100:9,13 101:23
110:7 111:22
119:5
**goal** 33:24 63:19
92:6 103:10 111:3
134:4,7,10
**goals** 59:25 64:8
66:1
**god** 120:5
**goes** 84:20 103:16
104:10 116:4
122:19
**going** 27:10 29:3
31:13 32:21 38:9
39:14,20,22 40:9
42:12 43:2,4,8
47:10 48:16 49:11
50:24 51:9 52:13
52:25 54:5,10
55:11 56:18 57:16
59:17 63:7 64:4
64:13,22,25 65:23
66:9 68:11 70:18
71:7 73:5,20 74:2
78:15 82:6 88:17
89:6,7 93:1,15
95:24 97:4 98:5,6
98:7,7 99:18
100:1,6,6,8,9,10
100:22 101:3,4
104:20 105:1
108:5,6,19 109:7
109:17 110:11,12

113:21 120:9
121:7 124:7
127:12 129:14
132:25
**good** 24:2,23 25:5
25:11 30:10 32:2
35:8 63:11 67:1
67:21 73:12 77:25
78:23 79:8 87:11
89:18 111:9,11
119:9 121:10
124:12 134:5,7,22
**goodwin** 22:3
**gotten** 64:12
91:16
**governed** 53:5
130:22
**government** 19:4
49:6 81:21 86:5
86:10 87:10,14
88:4 101:8
**governmental**
2:15 4:25 6:18
8:18 11:10 14:10
16:2 88:25 89:3
106:8
**governments**
96:14
**governor** 75:13
75:13
**governors** 75:12
77:2,3
**grand** 19:11 88:2
128:11
**grant** 70:16 73:25
84:6 87:24 88:21
121:4 124:18,18
128:5
**granted** 26:13
27:14 72:5 89:12
108:12
**granting** 3:1 9:23
10:7 11:18 12:3

12:10 13:1 14:17
**grateful** 25:9
**great** 25:17 95:14
96:8,18 99:6
119:12 121:13
**greater** 30:21
62:24 98:3
**gregory** 17:25
46:22
**group** 6:1,6 8:1,6
10:18,23 13:11,16
13:19,24 18:16
19:10,18 28:22
96:16 104:2 105:6
106:8 107:15
132:12,13
**group's** 46:10
105:24 106:24
**groups** 32:5 60:5
62:14 77:8,10
104:20 106:9
112:22 113:13
115:3,5,9,24
**grown** 49:22
**guard** 21:19
**guardian** 19:10
**guardians** 5:15
7:15 10:13 12:22
13:6 14:13 123:9
**guess** 47:11 69:8
72:6 87:7 108:10
133:25 134:16
**guidance** 104:25
**guided** 57:8
**guise** 53:13
**gump** 17:12 35:5
39:4 48:9 73:13
91:4,22 107:4
**gun** 49:19
**gunning** 120:12
**guy** 85:3
**guys** 58:1,1

| **h** | **health** 26:14 27:8 | 127:7 128:15 | **holding** 63:22 |
|---|---|---|---|

**h** 2:14 4:24 6:17
8:17 11:9 14:9
16:1
**hage** 17:20
**half** 27:12 29:9
52:2,4 53:3 61:2
95:17 98:22
**hand** 25:16 32:5
32:16 37:2 47:5
62:17 71:12 74:16
115:7 119:22
**hands** 31:10 57:18
134:11
**hanging** 92:17
**happen** 107:16
120:24 122:12
131:10
**happened** 27:3
47:14 82:9
**happening** 107:21
**happy** 24:18
27:17 83:8 84:17
94:15,23
**hard** 50:16 59:10
59:18,24 81:9
83:3 104:8,8,14
104:14 112:5
**hardest** 68:5
**harm** 30:21
120:20
**harmed** 57:20
**harmful** 78:10
**harold** 21:7
**harvesting** 120:7
**hauer** 17:12 35:5
73:13 91:4,22
107:4
**hauling** 29:19
**hayden** 20:18
**head** 124:13
**headline** 44:24
53:13

**health** 26:14 27:8
30:18 31:11 44:7
**healthcare** 84:10
**healthy** 50:18
**hear** 24:22 39:9
55:15,16 57:6
73:18 74:7 76:2,8
76:11 90:17,18
91:17 94:17,19
109:21 123:3
130:23,23
**heard** 35:15 38:21
46:23 49:3 62:4
65:3 66:10 69:20
73:24 78:25 80:7
90:20 92:7 103:9
103:24 105:5
106:4 107:14,14
107:18 108:24
111:4,23 117:2
118:20
**hearing** 2:1,2,4,10
2:18,23 3:3,8,11
3:18 4:1,9,14,20
5:3,12,20 6:1,9,15
6:21 7:1,5,9,12,20
8:1,9,15,21 9:1,1
9:6,11,16,20 10:1
10:10,18 11:1,7
11:13,22 12:7,14
12:18,22 13:3,11
13:19 14:1,7,13
14:21 15:1,9,13
15:19,24 16:5,9
24:12,17 25:6,19
36:5 43:20,24
48:10 87:8 90:7
90:12 93:3 95:17
97:8 102:20 104:5
105:22 108:1,5
109:9 110:9,20
114:3 117:21
122:9,25 123:14

127:7 128:15
130:20,24 132:7
133:1 134:2
**hearings** 24:5,11
25:21 27:7 30:13
34:14,21 36:12
48:14 50:10 51:6
66:11 96:25 98:10
99:1
**heavily** 128:22
**help** 34:9,24
39:22 44:6 50:21
122:16
**helpful** 38:12
48:11 92:17 94:11
102:2 105:2
106:23 108:7
**herculean** 59:2
**hesitate** 134:23
**hestrup** 8:24 9:4,9
**hey** 58:1,1
**high** 5:8,9 68:12
70:2
**highly** 32:19 53:7
53:7 68:20 74:24
126:5
**hindsight** 83:1
**historian's** 47:15
**history** 27:3 42:18
44:8 55:2
**hit** 107:8
**hoc** 2:14 4:24 6:1
6:6,18 8:1,6,18
10:18,23 11:10
13:11,16,19,24
14:10,21 16:2
18:16 19:18 28:11
28:21 62:12,15
96:11 104:1
105:10 115:3,9
**hogan** 22:10
**hold** 38:3 67:19

**holding** 63:22
**holdreith** 20:15
**home** 30:18
**homes** 50:17
**hon** 1:22
**honor** 24:20,24
25:4,10 27:13
28:8 29:7 30:12
30:13,16 31:12,14
34:12,17,20 35:4
35:9 38:11 39:3,5
40:5,10,12,23
43:19,24 45:1
46:1,7,18,20,22
47:22,23 48:6
51:11 53:18,19,20
53:21,22 54:20
55:3,7,13,14,15
57:24,25 58:4,4
58:21 59:9 60:4
60:14,17,21 62:2
62:3,9,9,19,20
63:8 64:1 66:4
71:7,11,21 72:4
72:10 73:2,12
74:1 76:1 78:23
78:25 81:10 82:12
84:22,23 85:6
86:2,17,18,18
87:11,17 89:9,13
89:18,22 90:16
91:1,21 92:2,23
93:22,25 94:14,22
95:1,10,18 96:7
96:22 100:14
102:1,15 103:23
104:23 105:5,8,15
105:23 106:17,25
107:3,25 108:8,9
108:17 110:13
117:2 118:14,18
121:8,22 122:8,17
122:23 123:1

129:23,25 130:8
130:12,13 131:6
133:21,24 134:12
134:25
**honor's** 104:3,18
105:11 110:19
111:4 130:12
**hope** 26:21 33:16
37:4,13 39:14
48:10 55:15 66:4
67:13 108:25
133:2,7
**hoped** 29:12
**hopefully** 27:10
31:25 33:23 34:8
34:25 35:1 78:24
95:7 101:23 134:8
**hopes** 27:5
**hoping** 62:6
**horribles** 107:16
107:18,23
**hospital** 5:13 7:13
9:20 10:1,3,11
11:13,15,19,22,24
12:4,7,12 13:4
**hospitals** 96:12
115:15 116:3,4,4
123:7
**hour** 93:9 95:16
98:22 108:1 111:6
114:5 118:12
**hours** 81:4 95:17
**hrt** 26:20 27:3
**huebner** 17:8
24:20,23,25 35:12
35:23 36:2,7
37:13 39:6 48:6
51:14 53:19 58:9
63:18 64:5,18
66:1 71:7,19 73:3
73:5 74:17 78:7
78:12,13,23,24
84:22 95:21 102:1

102:5,14,19
118:14,18 121:3,8
122:24 133:24
134:15,25
**huebner's** 59:20
**hugely** 48:22
**hundreds** 26:7
49:9 61:14 79:24
80:12 99:15,15
116:21
**hurley** 17:18
38:16,25 39:3,4
40:5,12,17 42:17
42:21 46:1,4,13
46:19 47:13,22,23
53:20,22,22,25
59:15 63:3
**hurley's** 55:15,17
**husband** 69:21
**hyde** 16:25 137:3
137:8

**i**

**i.e.** 67:25 125:6
**iac** 42:11,14 55:4
**iac's** 42:8
**iacs** 40:19 41:3
42:4,6,7,10,21
47:5 55:1
**iceberg** 82:24
**idea** 32:19 106:12
**ideal** 84:6
**identified** 58:6
64:18 115:2
**identify** 24:5
58:15 77:22
**idiot** 57:6
**ignores** 114:25
115:1
**ignoring** 57:14
**ii** 2:25
**ilana** 21:1
**immediately** 79:2
81:1 83:5

**impact** 94:3 97:23
109:8
**impacts** 92:6
**implementation**
85:18
**implementing**
125:1
**implicating**
126:14
**implicit** 122:6
**import** 55:18
**importance** 42:12
44:14 132:10,16
**important** 25:12
25:25 28:1 29:2
29:11 39:15,18
43:8,9,11 45:21
48:22 52:7 55:7
60:23 62:25 66:17
66:18 69:13 70:19
74:19 77:18 79:11
79:17 80:1 81:11
83:15,15 93:16
97:25 100:12
106:3,17,19,24
113:19 114:13
116:25 117:18
125:20 131:5,19
131:21
**importantly** 70:9
80:4 123:18
127:22
**impose** 63:15
**imposing** 63:22
69:1 78:10
**impossible** 38:6
101:18 120:21
**improper** 79:22
**inability** 105:12
**incidental** 76:23
**inclination** 127:14
**inclined** 104:25

**impact** (see above)
**include** 41:2 54:3
60:25 61:14 87:5
110:5,5 115:15
**included** 46:3
95:3
**includes** 34:3 46:2
67:14 87:4 91:12
91:13 115:13
**including** 28:3,7
28:13 29:19 30:1
39:18 40:18 41:25
42:7 45:10 46:5
54:14 57:13 60:9
63:10 67:2 77:22
80:13 85:25 97:1
102:24 127:19
133:10
**incorporated** 25:2
**increase** 45:4
**increasingly**
44:21
**incremental** 28:20
**incur** 95:24
**incurred** 95:22
103:4
**incurring** 68:24
**independent** 5:14
6:22 7:14 10:12
13:5 75:20
**indicate** 39:6
**indicated** 64:5
95:21
**indication** 113:4
**indicators** 25:23
**indicta** 126:2
**indirect** 114:12
**indiscernible**
79:14
**individual** 6:1,6
8:1,6 10:18,23
13:11,16,19,24
125:15,16

individually 88:9
individuals 52:17
  61:15
industry 84:8
inevitably 37:5
information 28:4
  31:13 37:4,7,18
  40:3,9,15,20 41:7
  46:6 49:18 61:1,2
  61:24 80:24
informative 94:10
infrequently
  28:25
initial 54:2
initiative 27:8
initiatives 26:14
inject 100:19
  101:19 106:14
injectable 27:7
injunction 57:15
  82:13,20 113:2
injury 96:13
  104:2
inquiry 36:18
  37:6 80:19 102:5
  102:12
ins 63:25
insight 80:1
insisting 122:19
insolvency 47:25
instance 98:15
  115:12
institution 77:22
institutions 59:7
  61:18
instructive 38:15
  112:21
insurance 5:13
  7:9,13 8:21 9:2,7
  10:11 13:4 123:8
intellipharmace...
  2:25 71:24 136:7

intend 38:8 78:19
intended 58:16
  103:10
intent 77:20
intention 54:18
  110:14
intentionally
  31:21
intentions 60:4
intercreditor
  29:24 33:18 50:15
  119:25
interest 36:4 38:4
  96:23 99:16
  101:21 119:15
  134:20,22
interested 54:13
interestingly
  93:10
interests 128:14
interfere 110:22
interfered 112:1
interferes 109:19
interim 63:24
  72:20
interlinked
  100:15
interrupt 55:22
interrupted 58:2
interrupting 88:1
intervention
  39:21
introduction
  24:16
invariably 98:3
  101:5
investigating
  44:15
investigation
  54:16,19,19,21
  55:10,19 56:18,21
invoke 105:1

involved 64:10
  66:25 106:9,21,22
  113:21 132:13
  134:2
involvement
  79:23 81:24
involves 36:19
  67:14
ip 72:11
ira 6:11 8:11 11:3
  14:3 15:15
irresponsible
  56:16
issue 25:20 35:21
  48:19 49:20 54:21
  60:5 74:22,25
  79:2,14 81:1,5
  83:23 85:16 91:19
  94:21,23 95:12
  100:12 107:23
  109:7 112:22,25
  113:16 114:2,6,22
  115:23 116:8,10
  116:17 117:19,19
  120:9 121:6,24,25
  124:13 126:5,10
  126:11,18 130:2,2
issued 58:24
issues 29:11,25
  30:11 35:14 36:15
  36:20,20,22 37:1
  37:4 38:21 39:16
  39:18,21 40:1
  42:1,11 44:14
  45:6 58:5 59:1,5
  66:13,25 69:13
  75:3 81:8 83:15
  83:18 86:7 88:3,7
  92:15 93:7 98:15
  103:19 106:23
  109:2,11,24
  110:24 111:12,19
  111:22 112:3,10

112:17,20 113:4
  113:13 114:8,16
  115:1 116:13,21
  116:22,25 119:21
  123:16 124:1,5,7
  126:14,18,24
  127:4,20 133:12
it'll 73:1 104:9
  133:8
item 25:11 35:21
  71:5,22 85:8,9
  89:24,25
items 58:5 65:9
  73:7
i'm 62:10 74:18
  123:12

## j

j 5:6 6:5 8:5 10:22
  13:15,23 19:22
j.n. 19:15
jake 20:15
james 3:15 4:6,17
  5:23 7:2,6,23 9:12
  9:17 12:15,19
  15:2,6,21 16:6,10
january 49:8 51:1
jasmine 18:13
  60:21
jeanne 7:2,5 9:12
  9:16 12:15,18
  15:2,5 16:6,9
jeffrey 21:12
jennifer 21:20
jeremy 22:4,17
jerse 20:20
jim 17:9 89:18
  92:2
job 52:21 110:14
john 20:16 21:19
  23:3 52:10
join 77:13
joinder 4:20
  14:22

**joined** 79:20
80:15 90:6
**joint** 15:24 28:24
75:23
**jonathan** 20:19
**joseph** 17:20,25
46:18,22,22 47:2
51:9,11,13 54:1
54:16
**joshua** 6:21 22:22
**journalist** 84:18
**judge** 1:23 24:2
52:2
**july** 1:16 2:1
33:16,17 52:12
73:14 82:3 86:5
90:9 96:6 131:9
137:25
**jump** 48:6
**jumped** 80:23
127:6
**jumping** 25:12
**june** 30:16 31:3
52:20 81:21 86:4
93:1 96:6
**justice** 65:23
**justin** 1:25

**k**

**k** 22:10
**kajon** 8:23 9:3,8
21:16
**karavolas** 3:24
19:8 87:11,12,17
87:19
**karsh** 6:21 22:22
**katie** 20:14
**keep** 55:11 59:18
59:18 105:2
**keeping** 29:20
**kenneth** 2:14 4:24
6:17 8:17 11:9
14:9 16:1 18:20
62:4 94:22 130:8

**kevin** 20:6 105:6
**key** 27:20,24 42:9
117:19
**kind** 34:23 42:9
109:4 112:21
113:18 126:9
**kleinman** 22:4
**knew** 35:11 43:18
43:18 84:3 116:17
116:21
**know** 35:8,9,12
37:2,10,22 45:5
52:22 55:3,21
58:5,8,12 62:9
64:1,15,25 66:9
66:14,19 67:15
74:7 85:2 89:25
104:16 107:23
120:1 121:14
123:2 124:16
133:5
**knowing** 97:9
**knowledge** 37:17
122:1,1
**known** 81:4
**knows** 28:8 32:24
33:5 34:12 46:7
82:12 96:7,22
102:7,19,23 120:5
**kramer** 18:15
94:23

**l**

**l** 12:19 125:14,14
**l.p.** 1:7 3:16 4:7
4:17 5:24 6:7,13
7:3,7,24 8:7,13
9:13,18 10:24
11:5 12:16,20
13:17,25 14:5
15:3,7,17,22 16:7
16:11
**l313** 4:6

**l321** 5:16,23 7:23
9:3,8 10:14 13:7
**l330** 6:17 8:17
12:11 14:9
**l421** 6:5 8:5 13:23
**l425** 14:25
**l431** 11:11
**l432** 4:23
**label** 27:2
**labovitz** 21:4
**lack** 95:11
**laid** 45:20 70:15
90:24 120:22
121:1
**landing** 33:22
**language** 126:7
**large** 26:3 33:8
44:22 54:4 56:5
58:23 69:3 74:23
79:22 113:11,13
**largely** 25:22 69:9
**larger** 30:10
103:8
**late** 28:25 33:2
65:7 69:18 70:9
127:9
**latest** 65:7,17
**launch** 74:12
**lauren** 22:23
**law** 19:10 46:8
57:9,11 79:24
82:6,19 120:4
125:20
**lawful** 82:25
**lawyer** 37:24
**lawyers** 53:5 68:2
120:25 131:22
**layered** 26:9,10
**layers** 103:15
**lead** 57:2 98:3
**leadership** 77:4
**leading** 26:23
33:24

**learned** 42:5 74:5
**learning** 79:2
83:18
**leave** 5:15 6:16
7:10,15 8:16,22
9:2,7 10:13 11:8
13:6 14:8 30:20
103:21
**leaving** 83:16
120:23 124:22
**led** 56:16
**ledanski** 16:25
137:3,8
**lees** 21:21
**left** 52:11,24 93:5
100:10
**leg** 64:12
**legal** 47:16 98:14
137:20
**legality** 80:18
**legislative** 77:5
80:2
**legitimate** 38:7
68:15 113:13,23
124:21
**length** 118:14
**letter** 42:1
**level** 37:6 47:8
55:19 56:10 68:12
69:1,2 70:2 81:23
123:22,23 124:10
125:4 126:1,14
**levels** 80:14
**leventhal** 22:16
**levin** 18:15 94:23
**lexington** 17:5,22
**liability** 48:1 58:8
85:22
**library** 52:2 61:2
**liesemer** 21:12
**lieu** 30:5
**life** 27:12

**lifesaving** 31:10
**light** 29:17 44:14
    74:22 81:23 87:23
    128:3
**likewise** 28:1
**limit** 32:6 51:6
    120:10
**limitations** 81:2
    132:17,18
**limited** 29:5 30:9
    39:18 100:1,25
    124:16
**limiting** 83:7
**line** 89:11 119:5
    136:4
**list** 48:22
**listen** 110:18
**listening** 62:19
    66:4
**lists** 61:14
**literally** 80:21
    98:21
**litigate** 109:11
    117:5,16 124:1
**litigated** 109:3,15
    111:13
**litigating** 112:16
    112:17,19
**litigation** 2:15
    3:15,23 4:5,25
    6:19 8:19 11:11
    14:11 16:3 26:10
    37:21 38:23 43:23
    45:9 51:24 53:1
    68:24 72:1,19,24
    74:12 84:25 85:9
    96:21 97:20 98:5
    101:4 112:3,20
    114:8,23 117:4,9
    117:14 121:7
    136:10
**little** 34:20 48:20
    50:4 66:20 71:13

79:9,11 82:22
    107:7
**live** 56:14 117:10
    117:20
**lived** 83:13
**lives** 33:10,11,15
**llc** 17:20
**llp** 17:3,12 18:1,8
    18:15 19:1,10,17
    24:25 89:19
**lobbying** 84:11
**lobbyist** 81:25
    84:10
**local** 81:20 96:13
    101:8
**localities** 100:11
**logs** 41:6 61:13,15
**long** 82:13 125:3
    134:2
**longer** 33:5 71:4
    87:21 92:19
**look** 35:25 57:11
    70:9 81:2
**looked** 101:14
**looking** 25:4 30:1
    33:15 47:2,25
    54:24 87:8 95:4
    97:17 134:23
**lose** 70:22 79:7
**loses** 109:8
**lost** 33:11 49:10
    79:8
**lot** 37:7 52:22
    54:23 58:1 59:8
    61:20 62:8 63:5
    64:3,5,13 65:24
    70:22,23 71:4
    81:3 83:20,23
    87:9 92:5 97:19
    104:14 106:7,11
    107:6 111:3
    118:22

**lots** 60:2 71:9
    80:19
**low** 26:22
**lowell** 20:10 22:9
**lower** 80:10 81:23
**lowest** 80:15,16
**lp** 24:4 25:1
**lytle** 19:1 87:10
    87:12

**m**

**m** 22:5,11
**mackay** 23:4
**maclay** 20:6 105:5
    105:6,8
**madison** 19:5
**mahlum** 20:21
**main** 36:14 107:9
    109:7
**maintained** 54:4
**majesty** 3:18,24
    19:2 87:12
**major** 27:8 36:21
    79:19 96:25
    114:13 125:23
**making** 9:21 10:5
    11:16,25 12:8
    25:24 66:1 77:19
    93:5 99:12 100:7
    127:16
**mallory** 22:10
**man** 57:25 58:1
**management**
    73:22,23 130:22
**manager** 52:13
**manner** 46:20
    118:8
**mantle** 119:11
**manufacture**
    26:18
**manufacturing**
    26:6
**mara** 22:16

**marc** 21:11
**march** 26:16 29:8
    62:23
**markowitz** 21:10
**marshal** 58:15
**marshall** 17:8
    24:25
**mass** 31:17
    113:17 115:19,22
**massive** 48:21
**masumoto** 22:25
**material** 25:17,23
    27:21 33:13 45:23
    54:23 86:14
**materials** 39:13
    46:11
**mathew** 88:2
    128:10
**matter** 1:5 24:12
    25:20 50:16 64:16
    70:13 71:8 80:19
    83:4,9,10 90:11
    91:20 93:16 95:14
    99:1 106:4 109:19
    115:4 126:22
    129:19
**matters** 24:3,18
    27:23 70:14 89:21
    90:12 111:17,24
**matthew** 5:5
    19:15 23:2
**mature** 96:20
    100:16
**maura** 21:5
**maximizing** 32:23
**mcclammy** 3:15
    4:6,17 5:24 7:3,6
    7:24 9:13,17
    12:16,19 15:3,6
    15:21 16:7,10
    17:9 89:16,18,19
    90:16 91:2,17
    92:2,3 93:20,25

103:21 113:8

**mcsg** 105:10

**mdl** 51:19 96:21
97:20

**mean** 40:10 46:7
61:3 66:22 76:3
83:18 90:20
118:18 130:11

**meaningful** 29:11
37:14 62:21 67:11

**means** 51:16 67:7

**measure** 56:5

**mechanic** 50:4
113:21

**mechanics** 37:5
103:2 115:21

**mechanism** 94:5

**mediated** 114:15
119:21 120:8

**mediating** 29:24

**mediation** 6:11
8:11 11:3 14:3,24
15:15 29:5,6,6,8
29:23 30:3,8 31:7
33:19,19 36:10
38:14 50:6,12,15
50:21 59:4,4 60:6
60:10 63:8,12,13
63:17 66:10,17,25
67:2,14 70:18,20
92:14,19 96:17
97:10 98:4,23
99:4,5,9,10,24
101:23 104:5,19
104:22 105:3
106:6,6,10,15,21
106:22 107:19
108:3,22,24 109:2
109:3,9,19 110:18
110:21,22,24
111:4,8,13,13,15
111:16,19 112:1,4
112:6,10,14,17,19

112:22 113:5,6,15
113:22,25 114:2,6
114:10,14,23
115:2,2,3,4,11,12
115:17,19 116:6,7
116:9,10,13,14,18
116:19,20,23
117:2,3,4,5,10,12
117:13,14,18,19
117:20,21,23
118:1,8 119:9,10
119:24 120:13,20
121:15 122:3
123:16 124:2,4,8
124:15,24 126:13
126:19,23 127:5
127:20,21,25,25
128:4 130:1,21
133:7,12

**mediative** 109:10

**mediator** 66:12
66:19

**mediators** 29:13
29:19 50:5,19
63:10 66:15,22
67:2,8 70:24
120:1 127:23

**medical** 84:8
115:13

**medications** 26:8

**medicine** 27:1,10
27:14

**meet** 105:25

**meetings** 29:19
114:11

**mehri** 21:14

**members** 36:16
54:12,25 68:14
96:16,16 103:3
107:12

**membership**
76:17 77:1 80:6
80:14

**memberships**
80:10

**memorialized**
59:5

**mention** 116:25

**mentioned** 61:15
75:17 77:17
112:18 113:7
115:1

**mere** 109:13

**merits** 100:15
104:4 117:24
119:1,7 120:18
123:1 124:1,8
126:17 127:22
133:3,5

**message** 38:2

**metis** 110:20

**mf** 132:12

**mid** 65:7

**middle** 112:16
120:12

**mile** 119:19

**million** 28:19 49:8
51:2,15,16,18
52:12,22 53:3
84:11 95:22 96:3
103:4

**millions** 33:14
49:10,23 120:5

**mind** 60:17 67:1
125:19 126:5

**minds** 104:15

**mineola** 137:23

**minimis** 76:22

**minimizing** 65:21

**ministerial** 82:8

**minor** 117:18

**minute** 48:7

**minutes** 48:8 80:8
80:21

**misdirecting**
89:15

**misguided** 56:22
57:9

**mishearing**
102:17 103:20

**misinformed**
70:14

**mission** 25:16

**mistake** 56:24

**mister** 102:8

**misunderstood**
102:9

**mitch** 17:18 39:3
53:22

**moab** 54:5

**model** 27:2

**modification**
132:21

**modified** 131:24

**modifying** 75:22
131:6

**molton** 22:14

**monaghan** 21:5

**monday** 67:3
106:9

**money** 30:23
31:10 33:8 68:21
69:21 70:22 72:22
75:7,8 84:19
86:23 124:25
134:10

**monitor** 57:14
75:20 82:17,17

**monitoring**
115:13

**month** 33:13 38:1
49:23 61:10 67:21
108:4 134:16

**monthly** 95:24

**months** 25:18
28:13,23 29:9
32:25 42:13 49:1
49:1,8 66:3,9
67:12 81:17 96:18

98:23 100:19
112:1 113:2
**monumental** 28:6
**moot** 133:8
**morass** 74:12
**morgerman** 22:11
**morning** 50:20
**mortimer** 18:9
60:22 61:1,3,21
**motion** 2:4,5,11
2:19,23,23 3:3,3,8
4:9,10,14,15,21
4:22 5:3,12 6:21
7:9,12 8:21,22 9:1
9:6,20 10:4,10
11:15,24 12:7,22
12:23 13:3 14:15
15:9,9,19,25
26:20 35:25 38:9
40:25 50:1 60:8
62:11 70:16,16
71:15,23 72:3,4
73:7,8,15,18,19
73:21,22,25 74:6
74:10,12,21 75:2
75:6 76:1 78:9
79:10,13 84:6
87:24 88:13,20,21
89:21,24 90:2
92:21 93:8,12
97:8,16 99:12
104:4,24 105:20
106:2 107:17
110:18 113:2
114:5 116:11
117:22 123:7,7,8
123:9,10,11
124:18 125:13
126:8,8 127:16
128:2 132:2,9,10
136:6,8,11
**motions** 5:16,20
6:2,11,15 7:16,20

8:2,11,15 10:14
10:19 11:3,7 13:7
13:12,20 14:3,7
14:24 15:15 25:18
34:15 36:12 60:10
73:6 90:7 91:19
92:5,25 93:8 95:6
95:13,13,15 96:14
97:6,13,24 98:1,3
98:13,14,19,24
99:2,7,22 101:6
101:13,21 105:21
108:10,12,16
110:6 111:17,19
111:25 112:10
113:6,10,11
114:19 117:1
118:9,10 119:14
119:17 121:5
122:15,15,17,19
122:21 123:1,4
124:3,6,20,23
125:11 126:12
130:13 132:1,24
133:3,20
**mouth** 31:17
130:12
**movant** 89:22
90:23 91:13
**movant's** 109:22
109:25
**movants** 90:5,6
91:7,9,13 92:19
93:11 96:14
105:13 106:13
107:11 110:12
114:4,7,18 119:3
119:17 122:21
123:15,18 127:1
127:18 129:1
133:11
**move** 30:7,24 31:1
31:2,16 41:20

58:21,22 60:9,11
63:12 64:21 66:7
67:19,22 69:19
71:5,13 84:2 90:2
100:17 117:4
122:16 134:24
**moved** 79:3 96:5
118:25
**moving** 29:14
69:10 90:19 92:6
92:8,14 106:11
117:5
**msge** 20:2 28:22
62:16 105:6,23
106:24 107:15
**multi** 58:24,24
110:23
**multiconnected**
110:24
**multifaceted**
58:23 110:24
**multiple** 36:19
48:13 51:16 62:13
**multiples** 80:15
**multipronged**
28:4 110:24
**musicland** 93:24
94:1,8,12 97:17
101:12 102:10,12
103:2,20 119:2
125:7
**muzzle** 56:25

## n

**n** 17:1 24:1 136:1
137:1
**naftalis** 18:15
**nail** 41:23
**nalmefene** 27:8
**naloxone** 26:17,19
26:21
**name** 24:8 42:11
79:8 115:13,15

**named** 99:4
**narcan** 26:23
**narrows** 126:9
**nas** 5:14 7:14
10:12 12:22,22,23
13:5 14:13,14,21
15:9 90:1 91:13
96:12 115:13
123:8,10
**nasal** 26:19
**natasha** 21:4
**nature** 47:24
48:24 115:21
116:12 126:9
132:8
**navigate** 34:8
**near** 96:19
**nearing** 108:25
**nearly** 43:24
51:15 53:3 61:4
95:22
**necessarily** 58:20
67:18 106:1
**necessary** 33:6
45:4,11,15 63:15
99:2 105:16
111:11 112:4
124:23
**need** 30:17,18
31:9 32:12 36:3
39:22 40:1 42:16
50:7,20,25 55:21
57:13 60:25 63:20
63:24 64:20 65:1
65:15 70:1,2,4
79:8 80:20 90:12
98:8 99:8 100:4
100:14 101:18
104:16 109:11,11
114:8 117:15
121:23 122:10,11
126:12 127:8,14
128:1 134:9,9,10

134:11
**needed**  34:9,16
  64:22 72:12 74:22
  113:22 114:18
**needs**  31:13 44:18
  49:17 63:6 65:17
  81:12 131:10
**negotiate**  50:24
  68:3 69:18 100:5
  111:9 116:6
**negotiated**  64:16
  65:24 82:14 99:20
  122:12 128:22
**negotiating**  42:2
  70:3
**negotiation**  99:6
  116:20 132:10
**negotiations**
  32:16,20 33:22
  37:15,22 41:11
  70:6 127:4
**neiger**  21:22
**neither**  85:20
**never**  27:3 52:20
  53:2 81:4
**new**  1:2 17:6,15
  17:23 18:4,11,18
  19:6,20 27:4
  29:16 44:23 53:14
  54:15 81:25
  101:19 102:2,25
  103:15,15,18
  120:6,24,25
**news**  57:1
**nice**  118:20
**nicholas**  8:23 9:3
  9:8 21:16,23
**nickolas**  3:24 19:8
  87:12
**night**  80:24
**non**  18:2 29:1
  86:24 129:22

**nonconsenting**
  35:18 46:10 55:14
  58:13 61:19 62:15
  91:6
**nonfederal**  115:6
**nonpolitical**  78:3
**nonprescription**
  26:22
**nonprofits**  78:3
  82:4
**nonsensical**
  115:19
**normal**  69:2
**normally**  29:18
  124:1
**north**  34:6,7
**norton**  42:15,15
**nos**  10:3 11:14,23
**note**  25:9 26:11
  28:14,25 39:15
  40:23 41:7 43:23
  81:11 82:16 125:8
**noted**  28:21 30:22
  31:12 42:4 43:11
  61:3 66:7 82:16
  87:24 88:22 92:19
**notes**  69:23
**notice**  2:1 3:11,19
  4:1,9,15,21 9:1,6
  73:22 77:20 81:12
  89:24 93:11 94:6
  96:1 103:3,19
  123:4 125:1,6,7
  128:22 132:8
**noticing**  93:10
  96:4
**noting**  88:9
**notion**  43:4 49:2
  81:11 120:11,23
**notwithstanding**
  100:23 125:10,12
  131:25

**november**  31:24
  32:19 34:1 65:17
  70:10 77:9,11
  82:15
**null**  85:14
**number**  24:3
  27:25 30:9,14
  32:22 34:13 48:12
  48:19 54:4 55:19
  56:16 66:13 67:12
  71:10,15,16,17
  74:8 76:13 102:6
  102:10 103:17
  113:20 115:22
  118:22 119:8,12
**numbered**  29:4
**numbers**  59:7
**numbskull**  70:13
**numerous**  44:25
**nussbaum**  22:23
**nw**  20:3
**ny**  1:14 17:6,15,23
  18:4,11,18 19:6
  19:20 84:21
  137:23

**o**

**o**  1:21 24:1 125:14
  137:1
**object**  87:21
  128:23
**objected**  91:18
**objecting**  91:10
  109:21 116:25
  125:22
**objection**  3:18
  4:14,20 5:12,20
  6:15 7:12,20 8:2
  8:15 10:10,19
  11:7 13:3,12,20
  14:7 15:19,24
  29:1 86:4,8 87:16
  87:25 88:23 89:5
  124:11 128:23

133:6
**objections**  10:2
  11:14,23 14:15
  86:15 90:13 91:11
  105:9
**objective**  106:16
  106:17
**objectors**  19:4
  86:5,10 87:14,20
  94:18 109:16,24
  122:19 123:21,21
  124:14,21 126:22
  127:19
**obligation**  51:7
**obligations**  3:5
  58:6 73:16 82:19
  131:8
**observations**
  58:19
**observed**  62:10
**obstacles**  32:1
**obtain**  37:6
**obviate**  128:1
**obviously**  34:19
  36:6 37:19 47:24
  49:16 67:5,18
  70:4 71:9 79:7,12
  81:11,14 90:11,21
  95:13 102:20,20
  110:14 134:6
**occasionally**
  119:10
**occur**  114:1
**occurred**  115:22
**occurs**  117:9
**october**  31:24
  32:9,9,12 33:21
  33:25 41:2,5
  52:18 55:5 59:13
  59:13 64:15,25
  65:2,7,13,14,16
  69:18,19 70:9
  81:19 82:15

**offensive** 53:7
**offer** 83:20
**offered** 81:2
  126:20
**office** 24:13,14
  52:14
**official** 3:3 6:9,12
  8:9,12 11:1,4 14:1
  14:4,22 15:13,16
  17:13 35:6 39:5
  73:14 75:1 90:3
  123:12,13
**officials** 68:16
**officio** 96:16
  107:12
**oh** 91:2 119:5
**okay** 35:3,7 38:20
  39:2 40:11,14
  42:17 46:21 48:5
  51:9 53:25 55:12
  60:20 62:1 66:6
  71:4,19 72:6 73:4
  73:11 74:4 76:2,6
  76:7,13 78:18,21
  83:11,14 84:5
  87:7,15,18,23
  89:10,17 91:9,12
  91:15 94:16,20,25
  102:14,18 103:22
  105:4 107:1 116:5
  118:2,6,13,16
  119:24 121:21
  123:2 130:7
  133:23 134:14
**old** 95:20,21
  137:21
**omnibus** 5:12,20
  6:15 7:12,20 8:2
  8:15 10:2,10,19
  11:7,13,22 13:3
  13:12,20 14:7,13
  36:12 66:11 67:4
  73:24

**omnibusobjection**
  6:2
**once** 32:3,24
  48:14 85:6 104:9
**ongoing** 29:1
  74:19 111:14
**op** 53:14 70:13
**open** 29:18 48:16
  103:14 106:23
  109:14 119:16
  120:4 124:23
  126:5,5 127:12
**openly** 31:15
**operate** 82:19
**operated** 100:19
**operating** 26:4
  79:18
**operation** 80:3
**operational** 26:5
  26:12
**operations** 73:9
**opinion** 52:3
  84:10
**opioid** 26:23 27:9
  33:10 43:17 56:17
  92:13 104:13
**opportunistic**
  124:11,12
**opportunity**
  70:24 91:23
  105:14 113:23
  128:23
**opposed** 47:8 88:8
  116:4 119:13
  121:10 125:23
**opposing** 90:18
**opposition** 124:19
**opt** 100:21,22,25
  101:3
**optimistic** 49:4
**options** 64:7
**oral** 118:19

**order** 2:6,11,24
  3:4,11,13,20,21
  4:2,4 5:3,21 6:3
  7:21 8:3 9:21 10:4
  10:20 11:16,25
  12:8,24 13:13,21
  14:15 24:18 29:7
  29:8 30:5 50:5
  64:17,23 65:16
  68:12 73:1,9,15
  73:22,23 75:22
  76:4,4,22 78:16
  78:19 83:13 84:21
  89:8 90:8 96:9
  97:3,22 98:18
  100:4 101:14
  107:21 109:2
  115:2,2,12 116:10
  116:14,20 123:19
  123:24 125:8
  126:20 127:8,14
  128:6,6,16 129:14
  130:5,18,19,21,22
  131:6,25 132:22
  133:17
**ordered** 89:7,9,11
**orders** 46:3
  117:11
**ordinary** 43:25
  74:20 79:15
**organization**
  76:17,20 77:16,19
**organizations**
  75:10 76:19,24,25
  77:12 78:2,3
  79:21,23 80:13
**original** 29:23
  74:11 86:3
**originally** 82:7
  93:1 124:4
**otc** 26:19,20
**ought** 53:12

**outcome** 99:21
  127:25
**outline** 78:8
**outs** 100:21,22,25
  101:3
**outset** 114:6
**outside** 72:11
  134:23
**outstanding** 86:15
**outweighed**
  126:12
**overall** 87:4
**overdose** 27:9
**overly** 49:4
**overwhelming**
  101:18
**overwhelmingly**
  51:23
**o'connor** 20:22

| p |
| --- |

**p** 9:22 10:5 11:16
  12:1,9,24 14:16
  17:1,1 24:1
**pac** 82:1,7,10
**pace** 26:16
**pacing** 30:11
**page** 82:13 105:18
  105:19 136:4
**pages** 48:23 51:16
  51:18 52:12,22,23
  53:4 61:4,17
  112:24
**painfully** 32:21
**painstaking** 44:20
**pandemic** 114:9
**pandora's** 119:16
**pans** 26:21
**papers** 31:20
  90:17 108:22
  110:1 111:2 121:3
**paperwork** 83:16
**parade** 107:16,18
  107:22

**paragraph**  86:2
125:18 126:6
131:25 132:22
133:17
**paragraphs**  72:9
**paraphrase**  69:9
**parceling**  46:16
46:17
**park**  17:14
**part**  36:6,10
37:14 38:2,4
40:22 47:24 48:16
54:23 55:4 57:15
65:7 68:5 111:12
114:6 116:22
117:1,8,25 127:23
**participants**
124:8
**participate**  99:10
**participated**
27:20 96:17,24,25
97:2
**participating**  99:4
99:9
**participation**  44:4
**particular**  70:6
94:14
**particularly**  69:5
82:21 98:18
123:23
**partied**  58:24
**parties**  17:21
25:24 27:20 28:2
29:20 30:5,17
31:2,6 32:12 34:1
34:5 35:13 36:4
36:17 37:11,25
38:4,7 39:8 40:15
40:21 45:25 46:3
46:17,23 47:9
59:4 60:15 63:10
63:22 64:9 65:1,8
66:10 67:5,10,14

67:20 68:22 69:9
69:11,25 70:7,19
72:1,12 74:14
75:7 78:20 81:7
81:15 82:14,18
83:24 88:17 90:19
91:10 96:8 98:10
99:9,25 100:7
103:7 104:12,21
105:15 106:7,21
108:24 109:10,13
109:15,16,21
110:11,11,16,18
110:21 111:9,15
111:16 112:3,23
113:3,10,21,25
114:21 115:3,17
115:23 116:13,21
117:2,12,13,15,17
117:22 118:8,9
121:11,16 122:6
123:2 125:9
126:16 127:6,17
127:18 132:5,13
132:20 133:4,10
133:19 134:1
**partner**  25:3
38:16
**parts**  106:11
**party**  32:7 59:3
85:24 86:6 96:12
99:5 116:11,25
**pass**  102:12
120:10
**passed**  131:13
**patent**  72:1
**path**  58:10
**patient**  4:5 85:11
85:11,13,19,21
86:1
**patients**  26:7
**paul**  23:1

**pause**  86:18
**paying**  47:18 50:7
72:18,19
**payment**  77:21,21
**payment's**  80:18
**payments**  75:14
76:15 77:6,8,10
77:12 79:15 80:6
80:11,25 82:25
**payors**  96:12
115:16 123:8
**pearl**  11:19 12:4
12:11
**peer**  80:11
**peers**  83:7
**penachio**  20:12
**pendency**  124:3
125:13 126:7
132:1
**pending**  72:2
111:16 123:16
124:23
**people**  26:3 28:8
30:20,22 35:1
36:19 37:7,18
48:20 50:16 56:17
56:25 57:18,20
60:23 61:23 63:9
63:20 71:1,4 83:1
87:9 103:9 104:14
111:3,23,25
112:18 119:11,12
120:11 122:11
127:15 131:11,12
131:22 134:7
**people's**  121:3
**percent**  81:23
**perceptions**  83:9
**perfect**  30:23
67:21 83:1 111:6
**perfection**  30:20
**perfectly**  84:17

**performance**
26:12
**period**  2:4 4:9,15
4:21 29:10 33:17
36:3 41:14 51:17
54:22 92:18
**periodic**  63:24
**periods**  2:7,12
36:1
**permanent**  49:10
**permit**  4:10,15,22
15:10,20,25 85:18
**permits**  85:10
**permitting**  3:12
3:20 4:2 9:22 10:6
11:17 12:2,9,25
14:16
**person**  102:24
114:11
**personal**  25:9
31:24 52:9 96:13
104:2
**personnel**  81:22
**persons**  61:6
**perspective**  32:18
47:15 55:7,8
105:23,24
**pertaining**  69:4
124:1
**pertinent**  90:16
**peter**  4:11 15:10
21:9
**petition**  73:17
80:6 82:3,10
132:14
**pharma**  1:7 3:16
4:7,17 5:24 6:7,13
7:3,7,24 8:7,13
9:13,18 10:24
11:5 12:16,20
13:17,25 15:3,7
15:17,22 16:7,11
24:4 25:1,2 80:14

**pharmaceutical**
79:20 80:12 84:8
**phase**  30:2,7
33:19 50:5,21,22
**phillips**  19:1
87:10,12
**phone**  79:25
114:10 134:4
**phrase**  39:8 41:9
56:3
**pick**  116:3 130:10
**pie**  104:8,17
**piece**  44:23 53:14
74:6
**piers**  5:6 23:2
**pillsbury**  18:1
**pin**  65:14
**pittman**  18:1
**place**  37:16 54:22
65:1,4,10,18
95:16,25 97:22
98:6 99:20
**placed**  44:17
**plainly**  31:16
**plains**  1:14
**plaintiffs**  5:14
7:14 10:12 13:5
123:8
**plan**  2:5,7,12
31:22 32:24 33:1
33:2,25 36:1,16
37:14,15 41:13
45:19 46:19 47:19
48:4,4 49:4,13
58:9 59:19,20
63:1 64:17,19
65:9,11,16 66:13
68:3,11 69:6,19
69:23 70:6,10
92:10 99:10,18,20
100:5,8,13,17
101:25 127:4
134:19

**plans**  30:15
**play**  60:3 117:19
122:14
**played**  114:13
**playing**  110:6
120:13 126:14
**pleading**  62:11,14
63:2 64:15 74:11
74:15 83:11,12
84:2 91:16 95:2
95:11 111:21
120:14
**pleadings**  28:25
36:10 62:10,13
66:12 95:5,5
103:13 112:23
133:19
**please**  24:24
70:22
**pleased**  75:8,20
**pledge**  45:14
**plenary**  43:22
**plenty**  68:2
**plimpton**  18:8
60:22
**plus**  76:22 128:25
**pm**  1:17 135:4
**podium**  71:16
73:3 89:15
**point**  25:12 31:12
31:14 38:12 55:18
55:22 56:6 58:24
59:17 61:13 63:15
64:14 65:12 69:21
70:7 75:25 77:18
86:3 88:11 92:24
105:13,20 106:3
108:8 111:1 112:6
112:9 117:7 118:3
118:17 122:10
123:3,25 127:13
128:17,20 131:4
131:21 133:4,4,9

**pointed**  40:25
41:4 54:17
**pointedly**  50:10
**pointing**  54:11
**points**  29:4 81:18
95:17 107:9
108:18 109:5
**policemen**  101:10
**political**  3:5 73:17
74:5,24 75:4
79:21 81:16,20
82:1,6 84:7 136:9
**politician**  56:14
**polk**  17:3 24:25
71:21 85:7 89:19
92:3
**pool**  124:16
**portion**  72:18
89:14,20
**poses**  32:22 33:4
**position**  32:3
36:14 41:13 74:17
91:8 106:24
110:12 111:18
114:25 115:25
**positions**  91:8
**possible**  39:22
64:19,21,24 65:6
65:12 69:20 77:11
92:10 130:20
**possibly**  25:12
103:12
**post**  27:22 73:17
80:6 132:14
**potential**  3:14,22
4:4 36:15,20,22
37:22 41:11 47:16
58:8 68:6 69:11
69:12 103:14
105:12
**potentially**  48:3
49:9 59:12 78:10
80:1

**pourakis**  21:13
**power**  45:15
134:18
**practical**  63:4
64:16,20 106:4
**practice**  60:15
**prairie**  19:11 88:3
128:12
**pre**  132:14
**preceded**  132:9
**preceding**  125:18
**precise**  50:4
**precisely**  63:3
108:14 112:20
**preempted**  51:12
**preexisting**  117:3
117:14
**prefiling**  26:10
**preis**  17:17 35:4,4
35:8 37:23 38:11
38:21 39:2 73:6,9
73:12,13 74:1,4
76:5,7,13 78:16
78:17,19 79:3
80:17,22 83:21,25
84:17,23,24 91:1
91:3,4,14,21,22
92:1 94:17,20
107:2,3 118:3,4,7
118:22 119:8,20
121:23 122:20
132:22 133:16,21
**prejudice**  72:3
**prejudiced**  118:9
**prejudices**  85:23
126:21
**preliminarily**
39:6,11
**preliminary**
113:2
**prepared**  24:14
36:5 37:12 117:16
128:19

**preparing** 96:10
125:19
**prepetition** 80:10
94:3 96:20 97:20
**prerogative** 116:6
**prescription**
26:23
**presence** 98:18
**present** 20:8
105:14
**presentment** 3:11
3:19 86:4
**preservation** 80:4
125:11
**preserved** 126:15
**preserves** 121:6
**press** 56:16,25
68:14 70:1 74:7
91:10 130:10
**pressurization**
29:18
**pressurize** 50:8
50:14
**pressurizing**
50:21
**presumably** 110:1
**pretty** 28:12,17
39:25 108:2
**prety** 21:23
**prevent** 74:13
**price** 107:4
**primarily** 119:25
122:11
**primary** 76:17
77:1 113:19
**prime** 102:6 103:1
**principals** 29:19
**principle** 39:12
40:8
**principles** 112:7
**prior** 75:1 82:2
117:20 129:13

**priorities** 64:7
**prioritize** 49:17
**priority** 85:25
**prisons** 101:9
**priv** 61:13
**private** 5:13 7:9
7:13 8:21 9:1,6
10:11 13:4 65:22
112:15 113:16
115:7,14,14,15,16
119:25 120:12
123:7,17
**privilege** 29:7
39:19 41:6 43:9
69:13 116:19
**pro** 68:16
**proactively** 27:1
**probably** 25:8
33:6 41:17 63:23
68:3 71:4 79:19
97:18 134:3
**problem** 49:22
**problematic**
32:19
**procedural**
109:18
**procedures** 125:1
**proceed** 5:4,21
6:3 7:21 8:3 10:20
13:13,21 59:4
60:7 63:24 89:23
126:13
**proceeded** 96:17
**proceeding** 53:2
117:11
**proceedings** 9:22
10:5 11:17 12:1,9
97:1 135:3 137:4
**proceeds** 28:20
99:7 113:24
**process** 27:17
31:8,13 51:15
58:7 64:23 65:5,9

70:10 74:25 96:4
99:10 100:17
104:14,22 109:17
111:8,12,12
116:15 122:16
**processes** 96:2
**procession** 103:15
**produce** 40:6
**produced** 32:11
37:8 41:8 45:23
51:19 52:7,9,25
53:3 54:2,6 61:4
61:10,13,18,22
**producing** 61:24
**product** 26:18
114:4
**production** 28:19
39:13 41:6 42:19
43:10
**productions**
32:14 53:4
**productive** 63:23
**professional** 49:9
**professor** 57:9
**profit** 77:18
**program** 93:10,12
122:8
**progress** 25:17,23
29:11,12 36:5
62:21,25
**projections** 27:23
64:7 67:25
**promised** 34:24
**promptly** 126:24
**prong** 93:18,20,24
126:25 127:2
**proof** 3:12,20 4:3
4:10,16,23 5:4,22
6:4,4 7:22 8:4,4
9:23 10:6,21,21
11:18 12:2,10,25
13:14,14,22,22
14:17 15:10,20,25

25:20 85:11,11,14
85:19,21 86:1
87:3 112:10,16
114:22 117:1,22
125:15,16,18
**proofs** 6:16 7:10
8:16,23 9:2,7 11:8
14:8 96:10 97:4
99:14,24 106:14
113:11 123:5
**proper** 125:6
**proportional**
44:17
**proposal** 75:23
119:14
**propose** 41:13
118:8
**proposed** 4:2
75:25 77:23 90:8
107:21 125:8
130:19
**propriety** 83:9
**protected** 26:2
**protocol** 38:24
45:10
**proud** 28:18
**proverbial** 104:16
**provide** 34:9
77:20,25 79:24
95:7 99:18 100:6
101:3 122:15
126:7 128:7
**provided** 24:14
**provides** 122:23
125:10
**providing** 72:7
**province** 3:19,25
19:3 87:13
**provision** 125:19
**public** 2:10 4:20
5:3,14 6:15,22
7:14 8:15 10:12
11:7 13:5 14:7

15:24 26:14 27:8
29:2 30:17 31:11
40:24 41:4,9,12
41:14,17 44:7,22
45:13,16 46:2,5
47:6 48:16 49:1
54:12 55:20 56:5
56:12 62:14,24
65:20,22 68:15
74:23 105:9,17,20
107:19 110:20
112:15 113:16
114:13 115:7,18
119:25 122:5
123:6,17
**public's** 55:21
**publication** 57:3
**publications**
57:23
**published** 44:23
**pumping** 80:24
**pun** 58:15
**punitive** 103:3
**purdue** 1:7 3:15
4:7,17 5:24 6:7,13
7:3,7,24 8:7,13
9:13,18 10:24
11:5 12:16,20
13:17,25 15:3,7
15:17,22 16:7,11
24:3 25:1,2 26:6
27:13 42:10 44:4
44:20 48:1 51:19
51:22,23,24,24,25
52:21 64:4 67:25
72:13 77:13
**purdue's** 43:17
44:2,19 45:12
74:19 80:9 103:1
**purduepharma**
14:5
**purporting** 57:19

**purpose** 56:19
85:19 123:5
**purposes** 79:22
82:7 85:17 129:16
129:17,22,22
132:23
**pursuant** 7:1 9:11
9:20 10:4 11:15
11:25 12:7,14,24
14:16 15:1 16:5
41:21 71:25
107:19 125:18
**pursue** 58:7,10
**push** 59:18
**pushed** 111:15
112:2
**put** 24:8 34:20
41:15 48:21,25
57:1 62:8,23
65:14,17 67:21
70:20 74:11,21
84:14 88:25 89:2
95:25 97:8,22
99:17,20 104:17
107:21 110:11
111:21 122:14
130:11 133:11
**puts** 70:14,14
**putting** 25:18
57:18 104:14

**q**

**quarantine** 25:5
**quarropas** 1:13
**queen** 3:18 19:2
87:13
**question** 30:12
37:23 44:12 47:11
48:2 64:4 72:6
76:7 87:8 97:23
102:6,8 104:3
105:11 121:9
122:14 129:13

**questions** 30:14
34:17,21 36:6
47:25 51:5,8
60:18 72:4 78:13
78:22 86:19,21
94:15 116:12
**quick** 81:18 109:5
118:15,22
**quickly** 41:15,21
43:5 58:22 60:11
69:19 79:4,11,18
81:15 83:22 84:1
84:3 102:1,15
103:24 130:23,24
**quid** 68:16
**quite** 25:14 30:14
37:3 39:9 44:8
74:14 75:18 77:25
82:24 95:15 97:2
106:23 120:1
**quo** 68:16
**quote** 121:23
**quoted** 57:7
**quoting** 53:13

**r**

**r** 1:21 9:21 10:5
11:16 12:1,8,24
14:16 17:1 22:3
24:1 137:1
**radically** 81:23
**rages** 33:10
**raise** 36:6 81:1
109:24 114:7
116:13 124:13
**raised** 47:8 48:18
86:7 87:20,22
93:7 124:5
**raising** 80:22
**ranging** 58:18
**rapidly** 92:22
**rate** 115:16 123:8
**raymond** 2:18,21
17:21 46:23 61:1

61:21
**rdd** 1:3
**reach** 31:14 63:21
64:8 67:12 99:22
101:24 103:10
111:4 122:25
**reached** 28:2 39:7
39:12,16 75:21
78:25 79:1 83:5
103:12
**reaching** 65:21
71:3
**read** 32:13 73:8
75:25 76:9,11
90:20 91:16
108:19 120:14
126:6
**reads** 62:9
**ready** 26:18 50:24
65:14 69:18 73:9
100:17
**real** 33:9 63:16
**realistic** 41:18
43:6
**realities** 29:15,22
**reality** 50:17
58:23 113:17
**realization** 68:20
**really** 25:19 26:12
37:11 41:18,23
42:19,22 45:17
51:4 58:14,25
59:9 60:13,16
65:5 74:10 79:1
83:4,22 88:13,14
91:16 95:15 97:16
97:23 103:10
107:23 132:15,16
**reason** 41:19 47:1
65:8 97:25 99:19
112:13 113:5
114:18 125:23

reasonable 68:22
72:24 78:9 79:5
88:21
reasons 32:2
55:19 68:19 74:21
122:24 129:18,19
reassess 32:15
recalibrate 134:8
recall 122:8
receive 27:5 103:3
113:14,24
received 86:4 94:6
recognize 56:13
63:4 98:10
recognized 125:3
record 24:24 39:4
39:24 48:13 54:1
57:12 61:22 62:8
70:15 71:21 85:6
93:19 94:2,7,14
104:24 107:4
130:9 131:16
137:4
recording 24:10
24:14
records 52:17
61:16,17
recoveries 97:15
recovery 113:14
116:1,2
reduced 81:22
refer 41:2 115:9
126:3
reference 105:11
referenced 67:24
references 35:16
referred 63:18
referring 35:13
105:21 123:9
reflect 62:20
131:18
reflected 40:17

reflects 60:8
refrain 113:9
refused 51:5
regard 3:5 35:13
39:23 73:16 109:6
126:25 132:23
regarding 36:20
36:22 39:12 75:21
88:7 104:3 109:24
110:10,20 116:12
125:21,24
regardless 99:21
regards 71:18
regime 122:5
registration 76:23
regulatory 80:2
reidar 22:11
relate 48:1 103:2
related 2:13,19
3:1,8,23 4:5,11,16
4:23 5:16,22 6:5
6:16 7:2,6,16,22
8:5,16 9:3,8,12,17
9:23 10:7,7,14,22
11:8,18,18 12:3,3
12:10,11,15,19
13:1,7,15,23 14:8
14:17,18,24 15:2
15:5,20 16:1,6,10
27:23 31:4 36:15
39:17 40:16 47:25
66:13 117:19
relates 113:20
115:4
relative 104:12
110:10 133:6
relatively 26:20
47:7 108:6
release 47:17 48:4
58:19 68:7 87:5
releases 58:11
relevant 120:19

relief 3:1 5:16
7:16 9:24 10:7,14
11:18 12:3,11
13:1,7 14:18
49:25,25 50:9
68:17 75:22,23
119:3 120:18
rely 26:7
remain 44:10
107:14
remaining 82:4
remains 26:1 27:4
45:19 125:20
remarks 69:9
118:12 120:11
remember 27:13
remembered 49:2
remembers 30:12
remind 48:12
reminded 30:16
remote 29:16
renewal 77:6,8
renewed 121:5
reorganization
92:10 100:5
reorient 134:9
repeat 102:23
108:20
repeated 31:3
43:21 58:9
repeatedly 42:14
119:20
repeating 118:2
replies 93:13
reply 6:21 8:21
10:2 11:13,22
14:13
report 27:17
28:18 75:20
reported 122:4
reporter 24:7
57:5,6 70:14

reporting 84:18
reports 48:21
52:16
repository 48:15
represent 56:5,11
63:9
representations
65:3
representative
116:12
represented 67:10
99:12 115:17
133:5
representing
96:12 128:11
represents 78:9
reprioritize 134:9
republican 75:11
75:13 76:16 77:3
77:4
request 5:12 6:10
7:12 8:10 10:10
11:2 13:3 14:2,23
15:14 42:14 58:11
58:19 75:6,6 90:2
90:4,6,9,15,21,23
90:24 92:4 95:3
112:7 118:11
123:3,14,20
124:11 125:23
126:20 128:5,7
130:19 136:11
requested 32:7
49:25 61:8 75:9
75:21,24 82:14
requests 28:4 38:7
require 54:21,23
59:15
required 28:6
41:16 52:11 58:17
requirements
102:13

**requires** 55:19
59:2 115:21
**requiring** 134:19
**requisite** 85:15
**rescue** 26:23 27:9
**reserve** 104:3
**resolution** 29:21
63:21 65:21 76:1
78:9,14,25 79:1
79:13 84:16 87:4
98:13 109:10
122:13
**resolve** 36:13,14
39:21 75:3 83:17
105:21 133:12
**resolved** 28:16
34:13 75:24 79:12
84:6,25 87:25
88:23 89:5 92:17
114:23 117:11
127:5
**resolves** 87:16
**resolving** 98:4
**resources** 36:23
37:3 44:15 58:16
69:22
**respect** 2:19 3:14
3:22 4:4,9,15,22
27:16 28:4 29:5
32:3 37:15 40:19
42:7 54:10 61:5
61:16 64:14 76:1
85:12,23 88:3,5
92:4,15,23 93:7
93:11 94:2 105:11
110:18 111:16
112:3 125:15
126:11 129:14
130:14 131:10
**respectfully** 45:7
118:10
**respective** 124:20

**respond** 35:23
53:23 91:23 94:17
113:8
**responded** 118:21
**response** 6:10
8:10 11:2 14:2,13
14:21,23 15:14
61:19 90:4,9,21
90:24 95:2 108:19
118:15,19 123:12
**responses** 10:2
11:14,23 91:16
**responsibility**
44:7
**responsible** 69:1
**responsive** 51:13
83:12
**restated** 4:1 86:11
86:20
**restates** 86:8
**restrictions** 78:5
78:11
**restructuring**
32:23
**result** 32:8 43:9
58:10 72:20 84:14
117:15 122:18
**results** 33:7 60:16
**resume** 130:24
**retained** 81:24
82:17
**return** 47:18 75:7
75:11
**returned** 75:14,16
**returns** 31:14
**revenue** 100:11
**review** 27:15
28:19 30:4 52:12
61:7,25
**reviewed** 45:24
46:15 61:17 86:17
**reviewing** 46:9,10
51:15 53:5 61:9

**revised** 84:21
86:12 87:16
**revisions** 86:7,14
**rich** 22:21
**richard** 52:10
**right** 3:18,24 19:2
30:1 31:25 35:21
36:2 39:9 49:19
49:25 50:14 51:14
53:16 54:3 63:21
66:6 72:10,15
74:3 78:21 80:17
80:17,23 83:1,10
84:5 87:13,15
88:19 91:15 93:23
102:4 107:1 114:1
121:6,17 128:18
129:20 130:15
131:3,4,14,24
134:5,17
**rights** 85:24 88:25
125:11
**rinson** 22:9
**ripe** 30:7
**risk** 51:24 67:19
85:1 89:15 122:18
122:20 131:11
**risks** 32:22 33:4
72:24
**road** 137:21
**robert** 1:22
**robertson** 17:10
22:18 71:14,18,20
71:21 72:10,16
73:2 85:2,5,7
86:25 87:2,6 89:9
89:13
**robust** 93:10 96:1
102:21
**roitman** 20:23
**role** 36:16 43:17
67:15 114:13

**roles** 111:7
**roll** 42:9
**rolling** 28:19
45:24,24
**room** 1:13
**roots** 44:6
**rooyan** 22:6
**rose** 42:15,15
**roved** 34:20
**row** 50:10
**royer** 42:22,25
**rule** 93:23 94:9
100:24 102:13
104:24 105:13
116:8 122:21
126:23 127:2,3
128:19 129:5
**ruled** 32:7
**rules** 77:14
100:18
**ruling** 34:14
108:10,16 119:6
121:10,17 122:15
127:13 130:1,2
133:15
**rulings** 99:2 136:3
**ryan** 22:17

s

**s** 2:13,20 4:6,11
4:16,23 5:16,23
6:5,11,17 7:2,6,16
7:23 8:5,11,17 9:3
9:8,12,17 10:8,14
10:22 11:3,9,19
12:4,11,15,19
13:7,15,23 14:3,9
14:18,25 15:2,6
15:15,21 16:1,6
16:10 17:1 24:1
**s.c.** 9:11
**sackers** 41:4,15
**sackler** 2:18,21
17:21 36:16 38:15

40:15 46:23 51:20
52:10,23 54:25
69:11 70:8
**sackler's** 36:23
54:3
**sacklers** 36:24
37:15 38:2 40:16
41:1,2,8,20,24
43:18 44:8,24
45:2 47:3,5,18
50:25 51:21 53:8
53:12,15 54:2,10
56:19 58:11 59:8
59:12 64:14 65:24
68:8,11
**safe** 50:18
**safety** 26:6,12
**sake** 120:10
**sander** 21:2
**sara** 20:23 21:18
**satisfied** 75:23
120:19
**satisfy** 100:2
104:21
**save** 33:10,15
80:8
**saw** 31:20
**saying** 51:14 52:3
53:14,16 55:23
110:23 111:22
112:5 130:13
131:23
**says** 130:19
**schedule** 32:18
34:2 40:22 42:24
43:3 45:18 59:10
69:14 77:6 101:17
117:14 120:22
**scheduled** 64:24
65:4
**schedules** 42:2
**scheduling** 65:2

**school** 5:5,7,8,9
5:14 6:22 7:14
10:12 13:5 92:24
96:13 100:23
105:18 123:6
**schools** 5:3 105:20
107:19
**schwartzberg**
23:1
**scope** 53:6 80:25
108:22
**scores** 63:9
**scott** 21:10 22:19
22:24
**scrutinize** 110:19
**se** 19:12
**sears** 52:4,6
**seats** 96:15
**second** 2:6,11,19
27:9 33:7 71:22
80:16 93:17,20,24
101:2 102:11
103:2 107:14
109:18 110:8
111:1 126:1 127:2
**secretary** 75:19
**see** 25:10 60:25
69:23 75:8 83:6
101:24 104:6
119:23 134:15
**seeing** 27:25
**seek** 30:2 39:22
45:1 129:15
134:18
**seeking** 44:6
73:15 79:13 119:3
119:17
**seeks** 123:13
**seen** 60:15 109:20
**segue** 30:10
**self** 82:13,20
134:22

**send** 89:11
**senior** 29:19
**sense** 34:5 56:6
67:7 79:16 130:25
**sensible** 35:2
113:23
**sensitive** 81:8
124:7
**sent** 102:2
**sentiment** 31:3
**separate** 36:23
63:7 89:7 112:23
**separately** 30:24
46:10
**september** 33:21
50:25 52:15,25
54:6 68:4 82:9
95:21
**sequestered** 29:20
**series** 54:21
**serious** 44:16
70:18
**seriousness** 97:14
**servants** 114:13
**served** 28:15
67:15
**sessions** 106:10
**set** 24:4 25:25
27:21 30:2,22
36:14 102:21
125:1
**sets** 36:20 66:21
120:25
**setting** 70:5
**settle** 68:23 113:6
133:18
**settlement** 3:14
3:22 4:4 32:17
34:3 37:22 41:11
72:23,25 85:13,14
85:18 86:22 88:15
88:21 89:1 112:13
114:16 117:15

129:16,17,21,22
134:19,19
**settlements** 68:19
**seven** 93:3 109:4
**shah** 11:19 12:4
12:11
**shame** 30:24
**shannon** 20:20
**share** 37:13 45:16
**shared** 34:11
134:4,10
**shareholders** 32:6
33:23 34:4
**shaw** 18:1
**shea** 22:7
**sheer** 113:20
**sheila** 20:17
**shocking** 48:8
**shore** 6:6 8:6
10:23 13:16,24
19:22 103:23,23
104:1 107:15
108:8,14 109:7
110:9 111:21
**short** 29:9 50:3
83:5
**shorten** 3:8 4:9,14
4:21 73:7,18,21
73:25 89:24 136:8
**shortened** 123:4
**shorthand** 89:4
**shot** 117:24
**shots** 109:22
**show** 36:3
**shut** 82:2
**shuttered** 82:11
**side** 18:9 29:2
40:24 41:4,9,12
41:15,17 45:8,8
46:2,5 48:15 49:6
51:14 52:18 60:22
61:1,1,4,21,21,24
62:24 70:2 79:17

82:22 94:21
112:15 115:14,15
115:16,18 118:24
120:12
**side's** 45:16 72:8
**sides** 108:14
**siegel** 132:15
**sign** 25:7
**signal** 101:6
**significance** 95:12
97:12,14 99:6
**significant** 39:16
62:20,24 101:4
**similar** 31:1
109:23 111:24
126:9 132:2
**simply** 57:18
59:17 62:7,12
87:3 92:17 100:10
127:15
**simultaneously**
63:7
**sincerely** 67:13
**single** 25:19 28:14
49:11 62:13 96:21
**sir** 88:1,19 118:4
127:10 128:10,24
129:3,7,10,12
130:6
**sit** 33:5,8 99:11
**sites** 57:23
**sits** 42:20
**sitting** 49:7 71:2
115:10
**situation** 29:16
46:8 50:14
**six** 29:4 49:8
52:17 53:4 102:25
116:24
**size** 104:11 112:11
117:24
**skalet** 22:20

**skapof** 21:11
**skepticism** 45:17
**skorostensky**
20:24
**sleight** 119:22
**slightly** 85:1
102:16
**slip** 77:12
**slow** 101:16
**small** 132:13
**smoking** 49:19
**sole** 44:3
**solely** 3:12,21 4:3
85:12,17,19 115:5
**solicit** 2:7,13
**solomon** 21:15
**solution** 78:8
**solutions** 24:11,15
137:20
**solvency** 51:24
**sonya** 16:25 137:3
137:8
**soon** 33:16 39:15
49:3 64:24 134:5
**sophisticated**
121:14
**sorry** 91:3,5
123:12 124:18
**sort** 47:4 57:8
63:19 65:14 71:11
73:6 79:16 81:13
83:19 85:3 117:10
118:11 120:11
127:12
**sought** 32:6 132:5
**sound** 25:6 34:21
50:17 51:1 71:10
71:14 73:8 79:7
80:2 83:19 85:3
102:22 121:11
**sounds** 49:19 50:1
**sources** 84:20

**southern** 1:2
126:2
**spats** 32:4
**speak** 24:6,7
35:18 38:16,17
57:20 62:6 75:19
78:7,12 94:23
119:12 128:10
**speaking** 35:22
75:18
**special** 48:19
**specific** 102:6
109:24 115:24
131:2
**specifically** 74:4
75:5 99:4 100:8
111:5
**spectrum** 115:20
**speed** 45:15
**spend** 51:1 126:17
127:16
**spending** 72:21
**spent** 37:3 70:23
70:23 92:5 103:5
108:1 124:25
**split** 112:14
**spoke** 74:14
**spoken** 35:14
**spouses** 52:20
**spouting** 57:12
**spray** 26:19
**spuches** 5:17 7:17
10:15 13:8
**squarely** 103:16
**stability** 26:6
**stable** 26:1
**stadler** 20:14
**stage** 25:25 32:20
60:6 67:22 92:16
**stake** 44:16
**stakeholders** 29:2
44:3 80:5

**stand** 36:17
**standing** 28:14
81:4
**stands** 26:18
**star** 34:6,7
**stared** 50:19
**start** 31:2,15
32:16 35:22 38:4
65:2 70:3,5 81:4
95:18 104:5
117:21 121:7
133:15
**started** 51:17,17
109:21
**starting** 31:16
37:16
**state** 5:18 7:18
10:16 13:9 46:10
77:4
**stated** 48:13 53:13
53:17 111:14
**statement** 2:5,10
2:18 6:1 8:1 10:1
10:18 13:11,19
33:1 40:24 41:10
43:20 66:4 122:2
**statements** 31:5
35:20 52:16 66:11
**states** 1:1,12 18:2
28:5,22 35:18
44:5 45:8 49:4,5
55:14 58:6,13
61:19 62:16 91:6
91:6 96:14 100:11
107:15
**stating** 133:2
**status** 25:14 40:14
97:19
**statute** 132:17,18
**stay** 33:13 50:18
50:19
**staying** 54:20
134:1

**step** 60:12 70:25
102:11
**steps** 30:24 64:20
**steven** 22:20
**stipulation** 3:11
3:20 4:2 40:18
52:19 85:1,10,10
85:20 86:2,3,6,7,8
86:12,12,16,19,20
87:16,19,21 88:24
89:6 107:20
136:10
**stipulations** 40:18
40:21 41:5,16,21
41:25 42:3,4 43:6
45:20
**stirring** 57:21
**stop** 31:13 57:22
57:23
**straight** 121:25
**straightforward**
108:21
**strauss** 17:12 35:5
73:13 91:4,22
107:4
**street** 1:13 18:3
**strength** 109:25
110:10 112:11
**strengthen** 49:20
**stress** 74:10
**strict** 63:15,23
**strolk** 21:6
**strong** 28:9 30:7
104:13 127:14
**strongly** 34:2
74:22
**struck** 49:24
**structure** 100:16
**stuck** 124:5
**student** 57:11
**subclasses** 120:24
**subject** 37:19
47:17 48:3 64:1

75:22 77:15 78:5
85:12,24 109:2
111:13 115:4
122:3 124:2
**subjected** 109:22
**submission** 44:9
95:2
**submit** 27:4 45:7
70:17 95:1
**submitted** 40:18
40:19 42:24 83:19
95:6
**submitting** 41:25
**suboptimal** 32:21
**subordination**
111:23
**suboxone** 26:16
**subpoenas** 61:19
**subscribe** 63:13
**subscribed** 64:18
**subsidiaries** 25:2
**substantial** 34:4
34:15 37:2 39:25
55:18 80:7 95:24
124:25 128:22
**substantially**
27:25
**subverted** 124:22
**subverts** 125:5
**succeed** 116:7
**successfully** 66:2
**sudden** 100:18
**suffered** 56:17
101:10
**suffering** 30:20
**sufficient** 33:25
45:17 49:14 66:19
67:9 73:22 94:2
94:13 104:23,23
**sufficiently** 55:10
**suggest** 40:10
81:13 106:1,2

**suggested** 64:16
**suggesting** 116:9
**suggestion** 82:17
**suggests** 33:21
41:12
**suit** 25:7
**suite** 20:3 26:8
137:22
**summarizing** 89:4
**sums** 33:8
**supervision** 70:3
**supplement** 10:1
11:22 12:7 69:16
**supplemental** 7:5
9:16 12:18 15:5
16:9
**support** 2:10 6:2
8:2,22 10:19
13:12,20 29:1
33:25 37:21 44:2
44:19 48:17 49:14
58:7 65:22 90:23
**supporting** 125:9
**suppose** 117:7
**sure** 28:17 35:19
39:1,24 46:15,24
47:9,12,21 54:7
56:3 61:22 62:5
62:10,18 66:1
71:9 74:15 86:17
91:25 100:7
103:25 107:3,5
108:4 110:15
111:18 114:25
125:25 128:14
130:9
**surface** 69:13
**surprise** 97:5
**surprising** 107:7
116:24
**surrounding** 75:3
**sydenham** 21:25

**t**

**t** 125:14 137:1,1
**t2g** 19:13
**table** 99:5 115:11
**tablet** 26:17
**take** 30:24 32:14
37:16 45:21 48:9
57:9 59:8,22 65:1
65:4,10 72:9
91:17 98:6 108:11
110:3 115:23,25
133:7
**taken** 24:11 26:13
28:17 30:19 32:3
43:16 64:20 65:16
92:19 95:11,16
111:18
**takes** 29:18 59:9
**talent** 69:25
**talented** 66:14
70:24 127:24
**talk** 60:5 111:23
112:18
**talked** 83:2
101:17
**talking** 30:5 31:15
37:20 53:8 60:23
68:14 102:9,11
108:2
**target** 31:25
**task** 28:6
**tax** 52:15
**taxpayer** 59:7
**team** 103:21
**technically** 82:8
**teed** 132:7,25
**telephonic** 2:2
24:4 25:6
**telephonically**
17:8,9,10,17,18
17:25 18:6,13,20
19:8,15,22 20:6,8

**tell** 67:11 102:15
**telling** 110:13
**tempered** 31:8
**tens** 33:14 49:23
  120:5
**terabytes** 52:1,4
  61:12
**term** 68:7
**termination**
  123:16 130:21
**terms** 29:6 82:20
  90:7,24 101:25
  115:9 121:11
  123:23 126:20
  130:18
**terrific** 24:20,23
**test** 27:2 102:12
**thank** 25:5 39:3
  51:11 53:17 55:11
  55:17 58:4 60:20
  62:1,2,9 66:3,6
  70:12 71:7,20,20
  73:2 74:1 83:25
  84:5,22,23 85:5
  89:13,17 92:1,2
  95:9 104:1 105:8
  107:1,3 123:1
  130:6 133:21,23
  133:25 134:12,17
  134:25
**thanks** 58:1 105:4
  135:2
**theory** 56:11
**thereof** 2:8,13
**thing** 41:19 81:10
  106:19 107:10,24
  115:18 118:5
**things** 25:25
  27:10,11 28:9
  34:12,13,25 35:11
  48:7,10,22 58:22
  58:22 60:2,9
  67:19,22 71:13

79:9,10,17 80:19
81:13 92:16
105:10 107:8
113:8 118:15,22
121:1,13 127:16
133:15
**think** 25:8,12,25
  31:22 34:23 35:20
  38:12,15 39:7
  40:19 42:12 43:3
  43:7 44:16 45:1,3
  45:4 49:3 50:2
  53:12 54:1,14,15
  55:24 56:1,3
  57:10 58:20,25,25
  59:2,6,11,14 60:4
  60:6,22 61:3,23
  62:25 63:3,14,16
  63:18,19,21 65:14
  65:15,20 66:16,18
  67:6,8 68:18
  69:15,25 73:5
  74:17 79:10,16
  81:2,10 83:7,21
  84:24 85:3 89:4
  90:14 91:17 92:14
  94:1,10,12 95:18
  97:17 98:9 102:8
  104:5 105:1
  106:22 107:14
  110:22 111:11
  114:14,23 117:2,3
  118:2,17 119:15
  119:22 120:17,20
  120:21 124:13
  131:15 133:5,24
  134:2,3
**thinking** 38:19
  64:1 92:5
**thinks** 35:17
**third** 18:10 27:8
  33:12 64:12 70:8
  96:12 107:24

112:9
**thomas** 20:3,21
**thornton** 5:7,9
**thought** 66:7
  79:24 83:2 103:19
  105:16 108:3,7
  114:22 116:25
  131:16
**thoughtful** 35:1
  67:10
**thoughts** 33:16
  34:23
**thousands** 26:7
  99:15
**three** 27:14,14,20
  32:25 48:10 49:2
  50:10 51:6 54:2
  60:5 62:23 63:6
  66:3,22 73:6 74:5
  81:24 83:18 94:2
  94:8,12 102:10
  103:17 119:2,5,6
  119:20 120:10
  130:20
**tiers** 80:16
**tiffany** 4:12,21
  15:11,19,24
**time** 3:8 24:6
  26:15 30:7,10
  31:15 32:13 37:8
  43:25 45:4 47:10
  48:18 52:11,20
  54:22 59:9 63:9
  63:15,20 64:3
  65:13,25 67:9
  68:3 69:4 73:7,18
  73:21,25 74:4
  88:9 92:5,18
  98:11 104:17
  114:12 124:7,25
  126:17 127:16
  129:16 136:8

**timeframe** 61:8
**timeline** 41:19
  50:11 53:5 59:18
  59:19 64:17
**times** 44:23 48:2
  53:14 54:15 67:15
  102:25 120:14
**timetable** 29:23
**timing** 25:13
  30:15 32:2 34:22
  36:9,13 38:9,17
  38:19 46:25 60:6
  60:24 93:4 95:14
  99:8 100:15
  107:25 108:2,5,6
  109:17 113:9
**tip** 82:24
**today** 26:1 31:15
  43:21 60:7 79:25
  84:2 92:7 93:19
  96:8,19 98:9
  100:20 104:24
  105:12 107:17
  108:5 109:7,14
  110:7 111:5
  121:18,20 125:11
  128:15,19 130:13
  132:7
**today's** 24:17
  25:10,19 34:9,15
  71:23 84:13 85:8
  93:3,19 95:17
  97:8 127:7
**toes** 60:12
**told** 42:14 93:17
  128:16
**toll** 125:14 126:9
**tolled** 132:2
**tolling** 125:21
  126:3 128:8,17,20
  129:5 130:3,3
  132:23 133:4

**tomorrow** 101:23
**tools** 29:18
**tooth** 41:23
**top** 26:9,10
**topic** 27:19 34:19
**topics** 28:10,24
  32:15 120:2
**tort** 31:17 113:17
  115:19
**torts** 115:22
**total** 75:16
**totaling** 112:24
**totally** 56:16
  61:12 82:24
**touching** 102:24
**towers** 52:5,6
**township** 5:8,9
**track** 27:4,15
  37:10 38:13,14,14
  38:15
**tracks** 38:13
**trade** 78:2
**tradeoff** 72:8
**transcribed** 16:25
**transcript** 24:12
  57:12 137:4
**transfers** 36:21
  42:7 48:24,25
**transparency**
  75:19 78:10
**trash** 56:24
**treated** 118:25
  121:16
**treatments** 31:10
**tree** 70:25
**trees** 71:1
**tremendous** 34:13
**trial** 37:21
**tribes** 5:15 7:15
  10:13 13:6
**tried** 63:4,4 74:15
  112:18

**troop** 18:6 55:13
  55:14,17,24 56:1
  57:17,24 58:2,4
  110:23 121:21,22
**troubling** 125:4
**true** 35:18 39:11
  48:18 93:23
  107:13 122:4,8
  137:4
**truly** 56:17 113:4
**trust** 57:4
**trustee's** 130:19
**trusts** 52:17
**try** 39:20,23 45:1
  50:24 63:11,21
  101:24 104:2,6
  106:18,20,20
  112:6 119:10,11
**trying** 46:7 50:17
  55:11 99:17
**tsier** 20:25
**tune** 48:22
**turn** 108:17
**turned** 92:11
  110:2 134:1
**twice** 107:11
**twl** 132:15
**two** 26:14,18
  27:15 36:20 37:1
  38:13 48:19 50:3
  50:20 51:19 66:2
  66:14 67:23 70:24
  71:10,15,16,17
  75:9,12 77:17
  81:21 83:17 84:11
  86:21 95:17 102:6
  102:10 107:13
  109:12 115:8
  119:8
**type** 84:18 127:25
**types** 71:1
**typical** 25:15
  81:14

**typically** 43:22

**u**

**u** 9:11
**u.s.** 1:23 61:7
**u.s.c.** 7:1 12:14
  15:1 16:5
**ucc** 28:5,11 61:8
**ucc's** 73:7,7
**ultimately** 30:4
  49:14 65:23 70:12
  70:15 85:15 86:22
  94:11 99:25
  134:18
**uncertainty** 98:8
  106:12,14
**unclear** 125:20
**uncontested**
  34:18 71:8 72:3
  85:8 89:14
**uncover** 38:24
**undeniable**
  112:19
**underlying** 104:4
  116:10 117:1
**underscore** 62:22
**underscored** 98:9
**understand** 27:2
  30:17 43:23 48:17
  56:6,6,7,25 57:22
  68:25 72:17 74:16
  74:19 86:22 88:12
  95:12 103:8
  108:13 109:9
  110:15 114:21
  122:12 130:11,12
  130:15 131:5,13
  135:1
**understandable**
  123:22
**understandably**
  30:14,15 98:25
**understanding**
  38:18 40:20 54:6

79:4
**understands**
  97:18
**understood** 95:4
  97:13 100:12
  102:14
**undertake** 58:16
  59:23
**undertaken** 40:22
  59:3 68:25 96:2
  122:18
**undertaking**
  44:20
**underway** 27:19
  54:16
**undue** 44:13
**unduly** 126:21
  127:6
**unequivocally**
  34:3
**uneven** 110:6
**unfair** 109:18
  110:12 117:23
  127:6
**unfortunately**
  29:15,22
**unheard** 101:12
**unilateral** 30:6
**unilaterally** 30:2
  72:14
**unique** 74:24
  113:20
**united** 1:1,12
**unopposed** 36:2
  86:17 87:24
**unprecedented**
  58:14
**unreasonably**
  50:3
**unsatisfied**
  119:18
**unsecured** 3:4 6:9
  6:12 8:9,12 11:1,4

14:1,4,22 15:13
15:16 39:5 96:15
123:12,13
**untrue** 82:24
**unusual** 79:5 83:9
98:17
**unusually** 68:12
102:21,21
**upcoming** 110:5
**update** 25:13 67:5
**upset** 110:21
**urge** 67:20
**urgent** 31:9
**urging** 69:21
133:10
**use** 30:23 59:20
70:24 94:5
**useful** 102:16
108:8
**uses** 41:10
**usually** 71:1
**utterly** 56:22
**uzzi** 2:20 21:24

**v**

**v** 132:15
**valuable** 26:18
**value** 32:22 49:10
80:4 92:11 104:12
112:14 115:5,6
116:3 134:5
**van** 22:6
**variety** 28:24 32:2
**various** 26:14
29:25 30:5 32:5
35:13 48:2 83:23
100:11 106:13,21
118:10 121:3
**vast** 44:15
**vein** 31:1,4
**velocity** 104:18
105:2
**veritext** 137:20

**version** 26:23
89:6
**versus** 113:16
119:25
**viable** 106:14
**victims** 6:1,6 8:1,6
10:18,23 13:11,16
13:19,24 44:22
45:12 54:12
113:21
**video** 25:8
**view** 28:23 30:7
31:5,6,15,24
34:11,14 36:14
41:17 43:12 44:3
44:18 48:14 50:13
51:1,3,4,4 63:13
63:19,20 64:17
65:10,19 80:25
94:1 95:11 103:13
108:12,15 119:1
120:3,15 121:20
127:8 133:3
**viewing** 47:3
**views** 28:9 30:18
30:23 32:15 49:14
108:9 113:25
120:1
**vilsack** 75:19
**viola** 22:5
**virginia** 15:9 90:1
91:13 123:10
**virtual** 35:10
**virtually** 103:11
**visibility** 68:13,14
**vision** 49:6,7,16
50:11
**vitiation** 125:24
**voice** 24:8
**void** 85:14
**volkov** 21:1
**volume** 52:2

**voluminous** 71:12
**voluntarily**
117:12
**vote** 56:1

**w**

**wait** 65:1
**waiting** 114:4
**walk** 86:16
**walker** 1:25
**want** 24:11 26:11
28:9 31:1 35:19
35:22 37:24 38:1
38:6 39:10,24
46:14,25 47:13,18
47:20 49:2 50:12
53:17 55:3 56:15
57:2,6,10 59:14
60:7,11 61:22,23
62:21 67:5 68:15
69:23 71:13 74:7
74:10,17 76:7,8
76:12 81:6 82:23
91:9,10 94:17
95:10 107:8,9,10
108:3,17 109:4
111:1,22 112:9
113:7 114:7
115:25 118:24
119:12,22 120:15
127:16 133:13,14
133:14
**wanted** 37:13
50:2 62:18 103:18
108:16 118:7
**wants** 83:11,13
**wardwell** 17:3
24:25 71:22 85:7
89:19 92:3
**washington** 20:4
**wasted** 47:10
**watching** 54:13
**water** 29:21 56:15

**waterline** 29:3
**way** 27:25 33:20
34:25 36:7 47:10
60:1 63:23 65:20
67:11 83:25 84:17
85:23 88:16 89:3
89:4 92:14 103:11
104:15,19 113:24
114:1 117:4
122:23 124:12
**ways** 29:25 58:15
58:21 93:9 98:12
113:19
**we've** 26:15 27:12
35:15 38:24 43:7
52:1,4,6,7 53:3,4
61:4,6,10,13,16
62:18,19 80:20
89:23 95:22
107:18 108:13
109:19 111:4,14
111:18,23 112:18
120:16
**weakness** 112:11
**weaknesses**
109:25 110:10
**wednesday** 67:4
**week** 67:7 96:8
111:3 114:3,20
**weekly** 104:6
**weeks** 30:9 40:7
42:3,23 43:1
62:22,22 63:17
66:23 67:6 82:14
96:5 121:19
**weigh** 111:11
**weight** 110:15
**went** 35:12 97:1
**west** 15:9 18:3
90:1 91:13 123:10
**wh1ch** 2:7
**white** 1:14 19:17
103:24

who've 132:5
wide 28:24 88:8
 132:8
widely 34:20
willford 21:7
william 22:8
williamson 20:13
willing 50:24
win 127:25,25
wins 109:8
winthrop 18:1
wish 84:19
wishes 77:13
witnesses 43:14
won 72:21
wonder 88:10
wondering 88:6
words 59:20
 72:13 110:15
 117:5,9 130:11
work 27:18 45:19
 46:17 48:24 59:4
 59:10,24 65:9
 68:2,25 81:9 84:3
 106:20 113:22
worked 38:24
 40:1 42:22 47:8
 58:14 75:2 76:9
 112:5
working 38:5,23
 50:16 60:13,14
 63:11 66:16,21
 67:1 84:1 108:3
 134:21
workstream
 67:25 70:8,8
workstreams 63:7
 67:23
world 33:10 35:10
 84:6,9,13 134:5
worse 44:7
worth 48:23 52:6
 134:3

would've 28:17
 29:12 83:3 112:1
 114:15 118:20
writer 70:13
writing 95:7
written 44:25
wrong 49:5 54:8
 107:8

**x**

x 1:4,10 136:1

**y**

yeah 55:16 76:6
 95:9
year 27:5,6,16
 51:16 57:11 69:20
 77:11 80:13 95:20
 95:20
years 31:18 49:12
 52:3 53:2 60:15
 79:21 80:9
yesterday 40:20
 42:4,25 44:24
 86:9,20
york 1:2 17:6,15
 17:23 18:4,11,18
 19:6,20 44:23
 53:14 54:15

**z**

zone 33:22
zoom 114:11