ORTIZ & ORTIZ, L.L.P.                                                   **Hearing Date:** Aug. 26, 2020
950 Third Avenue, 25th Floor                                        **Time:** 10:00 a.m.
New York, New York 10022
Norma E. Ortiz
Tel. (718) 522-1117
*Local Counsel to the NAACP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

PURDUE PHARMA L.P., *et al.*,                                 Case No. 19-23649-(RDD)

                      Debtor(s)                                Chapter 11
-----------------------------------------------------------------x

## NOTICE OF HEARING ON MOTION OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP') TO INTERVENE IN CHAPTER 11 CASE

**PLEASE TAKE NOTICE**, that upon the annexed Motion dated August 6, 2020, (the "Motion"), of the National Association for the Advancement of Colored People ("NAACP"), the undersigned will move before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"), 300 Quarropas Street, White Plains, New York 10601, on August 26, 2020, at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard, for the entry of an order permitting the NAACP to intervene in these Chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("General Order M-543"), such Hearing shall be conducted telephonically so long as General Order M-543 is in effect on the day of the hearing or unless otherwise ordered by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE**, that any hearing conducted by telephone shall be conducted pursuant to Judge Drain's guidelines for telephonic appearances and may require registration with Court Solutions LLC. Judge Drain's guidelines may be found at

http://www.nysb.uscourts.gov/content/judge-drains-chambers-rules.  You may reach Court Solutions by telephone at (917) 746-7476 or online at www.court-solutions.com. You need not appear at the hearing if you do not object to the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion was electronically filed with the Bankruptcy Court. Copies of the Motion cases may be obtained free of charge by visiting the website of Prime Clerk at https://restructuring.primeclerk.com/purduepharma.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures entered on November 18, 2019 [ECF No. 498], so as to be actually received no later than **August 19, 2020, at 4:00 p.m.** (prevailing Eastern Time) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or

adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates in open court at the Hearing.

Dated: New York, New York
August 6, 2020

                                                 */s/Norma E. Ortiz*
Norma E. Ortiz
Ortiz & Ortiz, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, New York 11103
Tel. (718) 522-1117
Local Counsel to the NAACP

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| | ) | Case No. 19-23649 |
| PURDUE PHARMA L.P., et al.,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**MOTION TO INTERVENE ON BEHALF OF THE NAACP**

The National Association for the Advancement Of Colored People ("NAACP") moves to intervene in this Chapter 11 proceeding under Section 1109(b) of Title 11 of the United States Code ("Bankruptcy Code") and Fed. Rule of Bankr. Proc. 2018 ("Bankruptcy Rules"). The attached Memorandum more fully sets forth the reasons why intervention is appropriate.

With the hope of obtaining their consent, the NAACP informed all relevant parties of its intent to bring this Motion to Intervene. (See Exhibit 1). While some parties have consented to intervention and do not oppose this Motion, the NAACP

---

[1] The Debtors in these cases (collectively, "Purdue"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P.(0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

was unable to obtain consent from all the relevant parties and this Court should therefore consider this motion opposed. For the reasons more fully set forth in the accompanying Memorandum, the NAACP respectfully requests that the Court adopt and enter the enclosed Proposed Order granting the NAACP's Motion to Intervene.

Respectfully submitted,

Dated: August 6, 2020

| | |
|---|---|
| *s/Norma E. Ortiz*<br>Norma E. Ortiz<br>Ortiz & Ortiz LLP<br>950 Third Avenue, 25th Flr.<br>New York, New York 10022<br>*Local Counsel to NAACP*<br><br>*s/Wilbur O. Colom*<br>Wilbur O. Colom<br>Special Counsel to NAACP<br>PO Box 866<br>Columbus, MS 39703<br><br>*s/Janette Louard*<br>Janette Louard<br>Interim General Counsel<br>NAACP Empowerment Programs<br>National Headquarters<br>4805 Mount Hope Drive<br>Baltimore, MD 21215 | (Applications for admission *pro hac vice* to be submitted)<br><br>*Francois M. Blaudeau*<br>François M. Blaudeau (ASB-7722-D32F)<br>Evan T. Rosemore (ASB-3760-N10B)<br>SOUTHERN MED LAW<br>2224 1st Ave North<br>Birmingham, AL 35203<br><br>*s/James Henly*<br>James Henley<br>4860 North State Street<br>PO Box 31464<br>Jackson, MS 39286-1464<br>601-362-1717 |

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| | ) | Case No. 19-23649 |
| PURDUE PHARMA L.P., et al.,[2] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO INTERVENE ON BEHALF OF THE NAACP**

The National Association for the Advancement of Colored People ("NAACP") submits this Memorandum of Law in support of its Motion to Intervene. The NAACP moves to intervene in this action against opioid manufacturers and distributors for financial damages to compensate states for costs relating to the Opioid Epidemic. The NAACP moves to intervene as of right or, alternatively, by permission, under Fed. R. Bankr. Proc. 2018 and 11 U.S.C. Section 1109(b), to assert

---

[2] The Debtors in these cases (collectively, "Purdue"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P.(0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

3

claims to allocate certain appropriate amounts of the settlement proceeds to communities of color that have suffered harm caused by the Opioid Epidemic

## INTRODUCTION

On February 3, 2020, the Court established June 30, 2020 as the bar date for the filing of proofs of claim in the above entitled and enumerated matter. [R. Doc. 800]. Upon written motion, the Court later extended the bar date to July 30, 2020, because of the circumstances caused by COVID-19. [*See* R. Docs. 1178 and 1221]. The NAACP respectfully incorporates that written motion herein by reference as if set forth herein *in extenso* and moves pursuant to Fed. R. Bankr. Proc. 2018 to intervene as a plaintiff in this action.

Intervention is warranted because the NAACP has an interest to ensure that the settlement allocates appropriate relief to communities of color adversely affected by the Opioid Crisis. Attention has been disproportionately focused on white suburban and rural communities with little consideration for the communities of color that have similarly experienced harm by the Crisis, including dramatic increases in opioid misuse, addiction, and death. Indeed, the United States Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Office of Behavioral Health Equity has concluded that "reducing opioid misuse and overdoses in Black/African American Communities requires an interdisciplinary, multi-level team approach. Collaboration among

4

community leaders, associations, advocates and residents with policymakers, government agencies, educators, prevention specialists, and treatment and recovery providers is urgently needed". (See Exhibit 2, *"The Opioid Crisis and the Black/African American Population: An Urgent Issue"*). The COVID-19 pandemic and the global economic contraction it has caused raises even more concerns about potential disproportionate allocation and distribution of settlement funds. Economic contraction has, among other things, resulted in decreased tax revenue for states. There are thus legitimate concerns that settlement funds, some of which should be earmarked and allocated to help harmed and at-risk communities, including communities of color, may be diverted for other use.

Everyone knows that opioid overdose is a problem for Caucasians in rural America. But Black communities, mostly in urban settings, also suffer from the consequences of opioid addiction, including adverse effects on mental health, economic and social life, and death. (See generally Exhibit 3, Bechteler, S.S. & Kane-Willis, K., *Whitewashed: The African American Opioid Crisis*, Chicago Urban League, Research and Policy Center (2017)). Because Black communities have been left out of the discussion about how to fix the Opioid Crisis, they have higher rates of death. (See Exhibit 4, *The Effects of Opioid Addiction on the Black Community*, INTERNATIONAL JOURNAL OF COLLABORATIVE RESEARCH ON INTERNAL MEDICINE & PUBLIC HEALTH, pp. 843-850, Vol. 10 No. 2 (2018)). Most African Americans with

opioid addiction, moreover, come from low-income families. These people of color rarely receive treatment. The Caucasians who share these characteristics, though, often end up enrolled in private insurance plans and receive the necessary and appropriate treatment. (*Id.* at 845). The consequences of discrepancies like these speak for themselves. Black overdose deaths, already a major problem, have escalated recently, outpacing any other racial or ethnic group, including a 41% increase in 2016. (*Id.* at 847).

## LAW & ARGUMENT

It is undeniable that states are facing significant fiscal shortfalls and increasing deficits because of decreased tax revenues caused by the COVID-19 pandemic. There is also no question that the Opioid Crisis has placed its own set of fiscal pressures on these political entities. Some of the monetary funds from the bankruptcy proceedings will be used to repay and remunerate some of these past costs. Still, there is real concern that funds that should go to assist communities of color with treatment and support services will be diverted to other budget-related items.

### A. Intervention Pursuant to Fed. R. Bankr. Proc. 2018

The NAACP seeks the entry of an order permitting it to intervene in the Debtor's bankruptcy proceedings pursuant to Fed. R. Bankr. Proc. 2018. Under Rule 2018, the Court is granted the power to permit an interested entity to

intervene generally in a case or with respect to any specified matter. Although some courts have found that Rule 2018 is used to implement 1109, Bankruptcy Rule 2018 does not limit intervenors to parties in interest and uses the more expansive term "any interested entity." Courts have held that Bankruptcy Rule 2018(a) is applies to parties not covered by § 1109(b). E.g., In re Allegheny Intern. Inc., 107 B.R. 518, 524 (W.D. PA 1989); Southern Blvd Inc. v. Martin Paint Stores, 207 B.R. 57, 62 (S.D.N.Y 1997). See also the Advisory Committee Notes to Bankruptcy Rule 2018 (stating that Rule 2018(a) permits intervention of an entity not otherwise entitled to do so under the Code or this rule). Rule 2018 may be utilized to permit entities who may not be deemed parties in interest under to participate in a bankruptcy case to protect their interests.

In exercising its discretion to determine whether to permit the NAACP to intervene, the Court may consider a number of relevant factors, including "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Diversified Grp., Inc. v. Daugerdas,* 217 F.R.D. 152, 157 (S.D.N.Y. 2003) (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)); *accord Delaware Trust*, 534 B.R. at

7

509; see 6 MOORE § 24.10[2][b], at 24-66 ("In deciding on a motion for permissive intervention, a court will consider whether the movant's input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues or, alternatively, is likely to be counterproductive."). See also In re First Interregional Equity Corp., 218 B.R. 731, 736 (Bankr. D.N.J. 1997) ("Courts have looked to various factors to allow intervention including 1) whether the moving party has an economic or similar interest in the matter; 2) whether the interest of the moving party are adequately represented by the existing parties; 3) whether the intervention will cause undue delay to the proceedings; and 4) whether the denial of the movant's request will adversely affect their interest.") (citing *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 853 (Bankr.S.D.N.Y.1989); *In re Torrez,* 132 B.R. 924, 936 (Bankr.E.D.Cal.1991); *In re City of Bridgeport,* 128 B.R. 686, 687–88 (Bankr.D.Conn.1991).)

Here, the NAACP recognizes that the states already have legal representation. The NAACP does not seek to usurp the role of said counsel or otherwise dispute the total amount of the monetary awards already agreed upon. Rather, intervention is sought to place limitations to the fullest extent allowed by law and this Court's authority and discretion to ensure that these funds are used, at least in part, to provide resources to assist communities of color plagued by the Opioid Crisis. These are communities that have already been disproportionately affected by the Crisis.

8

Reasonable and legitimate concern therefore exists that this disproportionate impact will continue and that adversely affected communities of color are not and will not be adequately represented by the current counsel representing the states.

Intervention is appropriate to protect historically underserved communities. The NAACP is the nation's largest and oldest grassroots civil-rights organization. Since its founding in 1909, its mission has been to ensure the political, educational, social, and economic equality of all persons and to eliminate race-based discrimination. The NAACP has fought in the courts for decades to protect the guarantee of equal protection under law. To advance its mission, the NAACP has represented parties in landmark civil rights cases, perhaps most famously in *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954), which outlawed segregation in public schools. The NAACP also has filed numerous *amicus* briefs over its decades of existence in cases that impact people of color. Further, the NAACP brings a singular contribution to this process because its focus, unlike any other party, will be on the historically underserved African-American population and with its unparalleled reach into those communities. With over 2200 units in every state in the union, the NAACP can indeed give voice to needs of these underserved communities unlike any other organization.

The burden of showing such an inadequacy is minimal. *Washington Elec. Coop.*, 922 F.2d at 98. "Where there is an identity of interest, ... the movant to

9

intervene must rebut the presumption of adequate representation by the party already in the action." *Butler, Fitzgerald & Potter,* 250 F.3d at 179-80. To adequately rebut the presumption, the movant must provide evidence of collusion, adversity of interest, nonfeasance or incompetence. *Id*. at 180; *St. John's Univ. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011). The issue here is one of adversity of interest. The current counsel representing the states have not previously sought to obtain any limitations as to how funds awarded to their clients can be used and have not previously sought any guarantee or agreement of any kind that any certain percentage of the funds be directed to provide comprehensive services to assist communities of color and redress harm that these communities have suffered because of the Opioid Crisis. This lack of effort or interest is sufficient, under current jurisprudence, to satisfy Rule 24's standard for intervention as of right.

Traditionally, minority interests have not fared well in the bankruptcy system. The harsh treatment for people of color has been noted in several studies. On January 20, 2012, The New York *Times* published an article titled "Blacks Face Bias in Bankruptcy, Study Suggests." The article notes "Blacks are about twice as likely as whites to wind up in the more onerous and costly form of consumer bankruptcy as they try to dig out from their debts."

Similarly, *ProPublica* co-published with The *Atlantic* in September 2017 an article entitled "How the Bankruptcy System Is Failing Black Americans" by Paul

Kiel with Hannah Fresques. Its headline notes "Black people struggling with debts are far less likely than their white peers to gain lasting relief from bankruptcy."

Similarly, Branches of the NAACP have anecdotally reported that black communities are underserved and neglected in mass-tort settlements related to defective drugs and environmental contamination, particularly where the remedy requires conduct to undo harmful effects, because their voices are not heard and their interests are not adequately represented and advocated. An organization such as the NAACP can help mitigate this problem.

Here, the NAACP moves to intervene to help communities of color realize some actual benefit from the Purdue Pharma settlement funds, which should be allocated to efforts directly related to solving the Opioid Epidemic in the communities that need it most. The NAACP seeks to do so by advocating that some negotiated percentage of these funds be directed in a manner that provides relief and services directly to those actually feeling the consequences of the Opioid Crisis. Without input from the NAACP, and without some meaningful prospective dialogue and safeguards in place on how these funds are allocated, it is probable that states will divert proceeds from the Purdue Pharma Bankruptcy settlement away from opioid-related relief and, particularly, from relief needed in the most harmed and least represented communities—those of color. Current counsel for each state is tasked with representing the whole state, respectively. The NAACP, in contrast,

seeks to intervene to represent communities of color that have suffered in the past from reduced financial investment and systemic racism and will inevitably suffer the same fate here should the NAACP not be allowed to intervene.

Another important consideration for the Court is the timeliness of the motion to intervene. "Among the factors to be taken into account to determine whether a motion to intervene is timely are: (a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *United States v. State of New York*, 820 F. 2d at 557. Here, the Motion is timely. Because intervention is only sought to modify how settlement amounts are distributed and not to alter, challenge, or change the amounts of the settlements, intervention is unlikely to be prejudicial to existing parties. Further, the NAACP could not have previously foreseen the occurrence of a pandemic or the financial impact of a widespread economic shutdown on the states. The timeliness of a motion to intervene must "be judged in consideration of all the circumstances [,]" which would include this singularly unique one. *U.S. v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).

## CONCLUSION

The unique and varied perspective of the NAACP will be valuable to the Court in ensuring that the relief provided to states by this complex bankruptcy settlement will, at least in some part, actually go to the communities of color most severely impacted across our country. Intervention will help ensure these settlement proceeds actually do what they are supposed to do. Should the NAACP not be given an opportunity to be present at mediation and not be allowed to participate in the abatement process, then at some later time it will have to deal with adverse decisions that have already been made, and fates already predetermined.  It is this, the failure for communities of color, that requires the need for the NAACP to have a seat at the table during this critical decision-making process. Without intervention, the long-storied history of government's disproportionate treatment of communities of color will repeat itself. This settlement is a significant resolution that will impact thousands of citizens. It is time to recognize that just because a state representative has authority to act, not every group is adequately represented at the negotiating table. It is time for the communities of color to have access to those important discussions that will directly impact their communities. The NAACP therefore respectfully requests that this Court grant the Motion to Intervene, either as of right or by permissive intervention, both of which support the NAACP's right to relief here.

Wherefore, the NAACP respectfully requests that the Court grant the relief requested herein and grant such other and further relied as deemed just.

Dated: August 6, 2020

*s/Norma E. Ortiz*
Norma E. Ortiz
Ortiz & Ortiz LLP
950 Third Avenue, 25th Flr.
New York, New York 10022
*Local Counsel to NAACP*


*s/Wilbur O. Colom*
Wilbur O. Colom
Special Counsel to NAACP
PO Box 866
Columbus, MS 39703

*s/Janette Louard*
Janette Louard
Interim General Counsel
NAACP Empowerment Programs
National Headquarter
4805 Mount Hope Drive
Baltimore, MD 21215

*François M. Blaudeau*
François M. Blaudeau (ASB-7722-D32F)
Evan T. Rosemore (ASB-3760-N10B)
SOUTHERN MED LAW
2224 1st Ave North
Birmingham, AL 35203

*s/James Henly*
James Henley
4860 North State Street
PO Box 31464
Jackson, MS 39286-1464
601-362-1717

(Applications for admission pro hac vice to be submitted)

14