DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OMNIBUS OBJECTION AND REPLY IN SUPPORT OF DEBTORS' MOTION FOR ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT THE DEBTORS TO PROSECUTE CERTAIN PENDING PATENT LITIGATION**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**," or "**Purdue**") submit this omnibus objection and reply (the "**Objection**") to (i) the motion of Collegium Pharmaceutical, Inc. ("**Collegium**") for relief from the automatic stay [ECF No. 1465] (the "**PTAB Liftstay**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Motion**") and (ii) the response of Collegium [ECF No. 1463] ("**Collegium's Response**") to the *Debtors' Motion For Order Modifying the Automatic Stay to Permit the Debtors to Prosecute Certain Pending Patent Litigation* (the "**Debtors' Liftstay Motion**")[2], and respectfully state as follows:

### Preliminary Statement

1. As set forth in the Debtors' Liftstay Motion, the Debtors seek to modify the automatic stay to continue certain Patent Litigation against Collegium in the Massachusetts District Court. Collegium argues that the Debtors' Liftstay Motion should be denied, or in the alternative, that the automatic stay should also be lifted with respect to a separate matter (Case PGR2018-00048, the "**PTAB Action**") before the United States Patent and Trademark Office's Patent Trial and Appeal Board (the "**PTAB**") for post-grant review of certain claims of one of the Debtors' patents, U.S. Patent No. 9,693,961 B2 (the "**'961 Patent**"). Collegium's Response p. 11.

2. The Debtors object to the PTAB Liftstay Motion for the same reason that the Debtors' Liftstay Motion did not address the PTAB Action, which is that the Debtors believe that the PTAB Action no longer exists. On October 2, 2019, the PTAB entered an order (PGR2018-00048, Paper 45 (Oct. 2, 2019), the "**Stay Order**")[3] setting a deadline of April 6, 2020 (the "**PTAB Deadline**") by which Collegium was required to seek relief from the automatic stay from this Court in order to continue the PTAB Action. The consequence of inaction was clear — the time for the PTAB to administer the PTAB Action would expire on the PTAB Deadline. Collegium instead inexplicably allowed the PTAB Deadline to pass, thereby causing the PTAB

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Debtors' Liftstay Motion.

[3] A copy of the Stay Order is attached hereto as **Exhibit A**.

Action to terminate.  Collegium now seeks to undo the consequences of its failure to follow the PTAB's express directions.

3.   The Debtors hereby request that the Court deny the PTAB Liftstay Motion, overrule the objections stated in Collegium's Response, and permit the Debtors to proceed with the only live dispute between the Debtors and Collegium — the Patent Litigation in the Massachusetts District Court — as set forth in the Debtors' Liftstay Motion.  In the alternative, if the Court determines that the automatic stay should be modified with respect to both the Patent Litigation and the PTAB Action, the Debtors respectfully submit that this Court's views on matters of bankruptcy law raised in Collegium's Response and this Objection, and in particular with respect to section 108(c) of the Bankruptcy Code, could assist the PTAB in efficiently reaching a decision regarding whether the PTAB Action remains pending without referring the matter back to the Bankruptcy Court, which would promote judicial economy.

## Argument

### A. The PTAB Action Terminated When Collegium Failed to Seek Relief from the Automatic Stay Before the Deadline Established by the PTAB

4.   On March 13, 2018, Collegium filed a petition to commence the PTAB Action. The PTAB instituted post-grant review of claims under the '961 Patent on October 4, 2018. Under the 2011 Leahy-Smith America Invents Act (the "**AIA**") (the PTAB's governing statute), "the final determination in any post-grant review [is required to] be issued not later than 1 year after the date on which the Director notices the institution of a proceeding under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months."  35 U.S.C. § 326(a)(11).  Thus, the PTAB was required by statute to issue its decision (the "**Final Written Decision**") by October 4, 2019, subject to a one-time extension of up to six months for good cause.

5.      On September 24, 2019, the Debtors filed a notice of bankruptcy in the PTAB Action. During a hearing before the PTAB panel, Collegium argued that the automatic stay did not apply to the PTAB Action, while the Debtors argued that the automatic stay did apply. Consistent with its actions in prior cases in similar postures, on October 2, 2019, the PTAB entered the Stay Order, which had three key effects. First, the PTAB Action was stayed. Stay Order p. 4. Second, the PTAB Deadline was extended by up to six months, through April 6, 2020, for "good cause" in order to provide additional time for this Court to consider whether the automatic stay applied to the PTAB Action and/or any request for relief from the stay. Stay Order p. 4; *see also* PGR2018-00048, Paper 44 (Oct. 2, 2019) (the "**Grant of Good Cause Extension**")[4] (finding that "good cause" exists because "[a]n extension of the one-year period will provide additional time for the Bankruptcy Court to address the applicability of the Automatic Stay provision of the Bankruptcy Code . . . to this proceeding."). Third, and critically, it was incumbent upon Collegium to timely seek such relief, or else the PTAB Action would terminate. Stay Order p. 3 ("Under the circumstances, we determine that the disagreement as to whether the Automatic Stay provision applies to this proceeding is best addressed in the Bankruptcy Court. As such, [Collegium] should seek any relief it deems appropriate from the Bankruptcy Court."); Stay Order p. 4 ("[T]he Chief Judge has determined that good cause exists to extend the one-year period for issuing a Final Written Decision here . . . . Accordingly, *the time to administer the present proceeding is extended by up to six months*.") (emphasis added).

6.      Three key facts were thus clear to Collegium upon entry of the Stay Order. First, if Collegium wished to continue the PTAB Action, it would have to seek relief from the

---

[4] A copy of the Grant of Good Cause Extension is attached hereto as **Exhibit B**.

automatic stay in the Bankruptcy Court.  Second, the PTAB could not issue its Final Written Decision for so long as the Stay Order was in effect.  Third, stay relief would need to be obtained quickly to preserve the PTAB Action, because the PTAB only granted a six-month extension of the PTAB Deadline and offered no indication that it could — or would — extend the deadline further.  In fact, there are no provisions in the post-grant review governing statutes and regulations which empower the PTAB to provide further extensions under the current facts.

7. Despite the express terms of the Stay Order, Collegium chose not to seek relief from the automatic stay from this Court at any time during the six-month extension period, and thus allowed the PTAB Deadline to elapse.  It was Collegium's failure to act, and not the existence of any stay, that caused the PTAB Action to terminate.

**B.    The PTAB Has Not Unlawfully Withheld Its Final Written Decision**

8. Collegium attempts to revive the PTAB Action by asserting that the Federal Circuit could compel the PTAB to issue its Final Written Decision on the theory that the PTAB "unlawfully withheld" its decision.  This argument is unfounded.  The PTAB's actions in this matter have been in full compliance with the Bankruptcy Code and the AIA, such that there has been no "agency action unlawfully withheld or unreasonably delayed" to compel.  *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1998).  Unlike in *Forest Guardians*, on which Collegium relies, compelling the PTAB to issue its Final Written Decision would require the PTAB to act contrary to its statutory obligations.

9. In *Forest Guardians*, the Secretary of the Interior was obligated by statute to identify a critical habitat for the Rio Grande silvery minnow within one year of designating the minnow as an endangered species.  *Id.* at 1182.  The Secretary designated the silvery minnow as endangered in March 1994, but a critical habitat was not identified by the March 1995 deadline because of alleged fiscal impracticability due to a funding moratorium.  *Id.* at 1182–83.  When

that critical habitat had still not been designated by April 1997, Forest Guardians filed suit against the Secretary and moved to compel action. On review of the district court's decision declining to compel the Secretary to act, the Tenth Circuit found that, under the Administrative Procedures Act, the "reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." *Id*. at 1187. Finding the Secretary's failure to designate the critical habit by the statutory deadline to necessarily be "unreasonable delay," the Tenth Circuit reversed the district court's denial of Forest Guardians' motion and remanded to the district court to order the Secretary to publish, as soon as possible, a final regulation designating the critical habitat for the silvery minnow. *Id*. at 1180, 1182.

10.     Unlike in *Forest Guardians*, where the agency's failure to act was a statutory violation, here, the PTAB has acted according to its governing statutes. First, the PTAB acted according to the requirements of section 362(a) of the Bankruptcy Code, which prohibits issuance of the Final Written Decision for so long as the automatic stay is in effect, by declining to render a decision during the pendency of the stay. Second, the AIA requires a final written decision to be rendered no more than eighteen months after institution of trial before the PTAB, given the "good cause" shown here. 35 U.S.C. § 326(a)(11). The PTAB accordingly extended the PTAB Deadline by six months — the maximum permitted under the AIA — to allow Collegium to seek relief from this Court necessary to allow the PTAB to issue its decision, and, as discussed above, affirmed the PTAB Deadline in the Stay Order. Because the PTAB was acting within the mandates of the Bankruptcy Code and the AIA by not issuing its Final Written Decision in this case, there is no "agency action unlawfully withheld or unreasonably delayed" that is a predicate to requiring the reviewing court to compel action as was done in *Forest Guardians*. Significantly, unlike the Secretary's action in *Forest Guardians*, the PTAB would be

acting contrary to statute if it issued a Final Written Decision after the expiration of the PTAB Deadline.  Indeed, the only party that failed to act in a timely manner was Collegium.  In every similar instance where a PTAB matter was paused based on a bankruptcy stay, the petitioner took action to ensure that the matter was resolved within the Section 326 deadline.  *See Mylan Pharms. Inc. v. Pozen Inc. and Horizon Pharma USA, Inc.*, IPR2017-01995, Paper 51 (PTAB Aug. 31, 2018) (suspending deadlines due to suggestion of bankruptcy and terminating case based on settlement prior to expiration of 18 months from institution); *Twitter, Inc. v. Youtoo Technologies, LLC*, IPR2017-00829, Paper 23 at 2 (PTAB Dec. 27, 2017) (extending deadlines to provide petitioner an opportunity to seek relief from the automatic stay (or a determination that it does not apply) by the bankruptcy court and issuing Final Written Decision prior to 18-month extended deadline); *Maxilinear v. Cresta*, IPR2015-00594 (Final Written Decision issued prior to 12-month deadline).  Collegium's failure to do so here is the cause of the issue of which it currently complains.

C.  **Section 108(c) of the Bankruptcy Code Does Not Operate to Extend Any Deadline in the PTAB Action, Including the Deadline Set by the PTAB to Seek Stay Relief**

11.  Collegium asserts that "it should be clear that any applicable statutory deadline in a stayed proceeding is automatically extended pursuant to sections 108(c) and 362(a) of the Bankruptcy Code." Collegium's Response p. 10.  Collegium's reliance on section 108(c) is misplaced, however, because the deadline it missed was a deadline to seek relief from the automatic stay.  Section 108(c) has nothing to do with this deadline, since Collegium was of course not barred from seeking stay relief.  Moreover, section 108(c) by its plain language does not apply in the context of an administrative action such as the PTAB Action.

12.  Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay . . . of the commencement or continuation . . . ***of a judicial,***

*administrative, or other action or proceeding* against the debtor . . . ." 11 U.S.C. § 362(a)(1) (emphasis added). Section 108(c) of the Bankruptcy Code, by contrast, provides that, "if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing *a civil action in a court* other than the bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of . . . 30 days after notice of the termination or expiration of the [automatic stay]." 11 U.S.C. § 108(c) (emphasis added).

13. Thus, while section 362 imposes a stay with respect to "judicial, administrative, or other action[s] or proceedings[s] against the debtor," section 108(c) unambiguously extends the period for "commencing or continuing" only a subset of those stayed actions — "civil actions" brought in a "court." As the juxtaposition of these two related provision clearly shows, Congress was aware of the distinction between civil actions, on the one hand, and administrative or other actions, on the other, and by use of the explicit language in section 108(c) intended section 108(c) to only apply to civil actions brought in courts. The Court is "obligated to interpret the Bankruptcy Code according to its plain meaning." *In re Weidenbenner*, 521 B.R. 74, 81 (Bankr. S.D.N.Y. 2014). It must be assumed that Congress intended to use different language in these two related sections of the Bankruptcy Code. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n. 9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (citations omitted); *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there."). While this Court has broad powers, the Bankruptcy Code does not authorize the Court to disregard the plain language of the statute.

*E.g., In re Barbieri*, 199 F.3d 616, 620–21 (2d Cir. 1999) ("The equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." (citations omitted)).

14.     The PTAB is an administrative body, not a "court." *See, e.g., Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 990 (2d Cir. 1990) ("Certainly administrative agencies are not 'Courts of Law,' as that term is used in [U.S. Const. art. II, § 2] simply because they perform adjudicatory functions."); *L.M. Rests. Inc. v. Ale Yeah!, Inc.*, 2016 U.S. Dist. LEXIS 11571 at *7 (W.D.N.C. Feb. 1, 2016) ("[T]he [Trademark Trial and Appeal Board] is not a court, but an administrative tribunal of the USPTO, housed within the executive branch of the federal government." (citations omitted)).  Moreover, a "civil action" is a proceeding brought in a "court."  *See, e.g., Senju Pharmaceutical Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 445 (D.N.J. 2015) (noting that the PTAB has interpreted the filing of a "civil action" in 35 U.S.C. § 325(a)(1) to refer to "filing a complaint with a court to commence a civil action."); *SSIH Equip. S.A. v. U.S. ITC*, 718 F.2d 365, 371 (Fed. Cir. 1983) ("Civil actions, as that term is commonly understood, refers to proceedings in court.").

15.     As a result, section 108(c) of the Bankruptcy Code cannot operate to extend the PTAB Deadline.  Collegium argues that "[s]everal Courts hold that sections 108(c) and 362(a) operate to toll and extend all deadlines in matters subject to the stay, whether imposed by appropriately promulgated rules, statute or Court order."  Collegium's Response p. 10.  However, the cases cited by Collegium, *In re Hoffinger Industries, Inc.*, 329 F.3d 948 (8th Cir. 2003) and *In re Shamus Holdings, LLC*, 642 F.3d 263 (1st Cir. 2011), do not support this categorical rule, as both cases addressed extensions of limitations periods in the context of civil actions in courts.  Indeed, other courts have held that section 108(c) does not apply to nonjudicial

actions specifically. *In re Gianninoto*, 539 B.R. 452, 460–61 (Bankr. D.N.J. 2015) (Section 108(c) "is not applicable because it applies to statutes of limitations for filing civil actions against a debtor . . . . The 60-day time period for recording a deed or mortgage after the filing of a notice of settlement is not tolled because it is not a limitations period for "commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor." (citations omitted)); *In re Riley*, 2016 Bankr. LEXIS 2958 at *3 (Bankr. D.C. Aug. 12, 2016) ("Section 108(c) does not apply to the commencement of a nonjudicial foreclosure sale, as it only applies to 'commencing or continuing a civil action in a court.'").

16.    As discussed above, the parties disagreed as to whether the automatic stay applied to the PTAB Action. The PTAB did what it had done in prior cases when confronted with the same question — it stayed the PTAB Action, extended the time to administer the PTAB Action to the maximum amount permitted under the AIA, and directed the Petitioner, i.e., Collegium, to take the dispute to the bankruptcy court. Had this Court had the opportunity to timely consider the question, it might have found that Collegium was correct and the automatic stay did not apply to the PTAB Action, in which case the PTAB would have been free to issue its Final Written Decision before the PTAB Deadline. In the alternative, this Court might have found that the automatic stay did apply to the PTAB Action, in which case Collegium could have argued for stay relief for cause. But the PTAB needed to know the answer before the PTAB Deadline, because if the automatic stay did not apply the PTAB would clearly be required to issue its Final Written Decision by that time, and even if the automatic stay did apply to the PTAB Action, section 108(c) of the Bankruptcy Code would not toll the deadline. To compel timely action and resolve the complex interplay between the AIA and the Bankruptcy Code, the PTAB decreed in

the Stay Order itself that the time to administer the PTAB Action would terminate as of the PTAB Deadline.

17. The PTAB's elegant solution to a difficult problem, however, relied on Collegium to act. Now, having failed to timely seek stay relief, Collegium attempts to evade the consequences by arguing the PTAB Deadline set by the Stay Order and the AIA was automatically tolled by operation of section 108(c) of the Bankruptcy Code. This argument entirely ignores the ambiguity surrounding application of the automatic stay to the PTAB Action in the first place that the PTAB clearly grappled with when crafting the Stay Order, the express language of the Stay Order, which provided that the "time to administer" the PTAB Action was extended by up to six months (Sale Order p. 4), and the fact that by its plain text, section 108(c) of the Bankruptcy Code does not even apply in administrative actions like the PTAB Action, and so it cannot provide a basis for overriding any deadlines set by the PTAB governing statutes or by any order issued by the PTAB.

18. Moreover, Collegium has not argued, and cannot argue, that any other statute or regulation governing the PTAB Action extends the PTAB Deadline set under the Stay Order and by operation of 35 U.S.C. § 326(a)(11). The PTAB Action therefore terminated by operation of statute and by order of the PTAB panel due to Collegium's failure to seek relief from this Court during the six-month extension period.

**D.    The Debtors Are Not Using the Automatic Stay as a Sword**

19. Contrary to Collegium's argument (Collegium's Response pp. 11–12), the Debtors are not attempting to use the automatic stay as a "sword" and a "shield" by proceeding with the Patent Litigation while keeping the PTAB Action stayed. The PTAB Action was not terminated by the automatic stay, but rather by Collegium's choice to fail to meet a deadline to seek stay relief imposed by the PTAB. To the extent that the Court does not find that the PTAB

Action has terminated, the Debtors agree that relief from the automatic stay with respect to both actions would be proper, and the Debtors reserve all rights to argue to, without limitation, the PTAB and the Federal Circuit that the PTAB Action has terminated.  Moreover, as discussed above, the imposition of the automatic stay did not prevent Collegium from taking the action that the PTAB itself directed and expected Collegium to take — to seek timely relief from the stay from this Court.

E.     **The Final Written Decision Will Not Render the Patent Litigation Moot**

20.    Equally without merit is Collegium's mere speculation that the PTAB Action "may render much of the Infringement Action moot." Collegium's Response p. 6.  Because the PTAB Action has terminated, the parties do not know what the PTAB's Final Written Decision would have held, and it is not the role of this Court or the parties to speculate in this regard.

21.    Moreover, the '961 Patent — the subject of the PTAB Action — is just one of the patents in suit in the Patent Litigation.  As Collegium acknowledges, there are other patents in suit – U.S. Patent Nos. 9,073,933 ("**'933 Patent**") and 9,522,919 ("**'919 Patent**").  These patents are not related to the '961 Patent — they have different specifications, different records (prosecution histories) before the U.S. Patent and Trademark Office, and different claims to be litigated.

22.    Further, the '933 Patent has withstood Collegium's best defenses, with respect to both infringement and validity, that were the subject of its failed summary judgment motion.[5] As such, the resolution of the Patent Litigation with respect to the '933 and '919 Patents should

---

[5] On February 14, 2017 Collegium moved for summary judgement of invalidity and noninfringement of the asserted patents, including the '933 patent.  On September 28, 2018 the court denied Collegium's summary judgement in all respects as to the '933 patent (C.A. No. 1:15-cv-13099-FDS [D.I. 193]).

under no circumstances be delayed based on Collegium's speculation that a hypothetical Final Written Decision in the PTAB Action would have rendered the '961 Patent Litigation moot.

## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court (i) grant the Debtors' Motion, (ii) deny the PTAB Liftstay Motion on the basis that the PTAB Action is no longer pending; and (c) overrule Collegium's Response to the extent required to effectuate the foregoing.

Dated:  August 19, 2020
        New York, New York

*/s/ Eli J. Vonnegut*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*