**ROBINS KAPLAN LLP**
Jake Holdreith (*pro hac vice* pending)
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
Email:    jholdreith@robinskaplan.com

Scott F. Gautier (*pro hac vice* pending)
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Emails:    sgautier@robinskaplan.com

*Counsel to Collegium Pharmaceutical, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.,* | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**RESPONSE TO DEBTORS' OBJECTION TO COLLEGIUM PHARMACEUTICAL, INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND DEBTORS' REPLY IN SUPPORT OF DEBTORS' MOTION FOR ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT THE DEBTORS TO PROSECUTE CERTAIN <u>PENDING PATENT LITIGATION</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

   A. The Automatic Stay Should Be Lifted. ........................................................................ 2

      i. The Automatic Stay is Automatic. ........................................................................ 2

      ii. Cause Exists To Lift The Automatic Stay. ........................................................... 3

   B. The PTAB Will Determine Issues In The PTAB Proceeding. ...................................... 5

      i. PTAB Is An Independent Tribunal. ...................................................................... 5

      ii. PTAB And The Federal Circuit Interpret PTAB's Regulations And Orders. ................. 6

      iii. The PTAB Will Likely Render A Substantive Decision. .................................... 7

   C. Statutory Deadlines Are Extended By The Automatic Stay. ........................................ 8

III. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AP Indus., Inc.*,
    117 B.R. 789 (Bankr. S.D.N.Y. 1990) ................................................................................. 3

*Bank of America, N.A. v. Johnson*,
    479 B.R. 159 (Bankr. N.D. Ga. 2012) ............................................................................... 10

*Cooper Techs. Co. v. Dudas*,
    536 F.3d 1330 (Fed. Cir. 2008) ......................................................................................... 6

*Garmin Switzerland GmbH v. FLIR Systems, Inc.*,
    No. 3:17-cv-01147-SB, 2017 WL 6453346 (D. Oreg. Dec. 18, 2017) ............................... 4

*In re Gold & Honey, Ltd.*,
    410 B.R. 357 (Bankr. E.D.N.Y. 2009) ............................................................................... 9

*Golden v. Zwickler*,
    394 U.S. 103 (1969) .......................................................................................................... 8

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966) .............................................................................................................. 6

*In re Gronczewski*,
    444 B.R. 526 (Bankr. E.D. Pa. 2011) ................................................................................ 9

*Int'l Distribution Centers v. Walsh Trucking Co.*,
    62 B.R. 723 (Bankr. S.D.N.Y. 1986) ............................................................................... 11

*Matter of U.S. Brass Corp.*,
    110 F.3d 1261 (7th Cir. 1997) ......................................................................................... 11

*Maxilinear v. Cresta*,
    IPR2015-00594 (PTAB) .................................................................................................. 12

*Mylan Pharms. Inc. v. Pozen Inc. and Horizon Pharma USA, Inc.*,
    IPR2017-01995 (PTAB) .................................................................................................. 11

*Personalweb Techs., LLC v. Google Inc.*,
    No. 5:13-cv-01317-EJD, 2014 WL 4100743 (N.D. Cal. Aug. 20, 2014) .......................... 2

*Purdue Pharma L.P. et al. v. Collegium Pharmaceutical, Inc.*,
    335 F. Supp. 3d 149 (D. Mass. 2018)) .............................................................................. 4

*Redline Detection, LLC v. Star Envirotech*,
    Inc., 811 F.3d 435 (Fed. Cir. 2015) ..................................................................................6

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
    140 S. Ct. 582 (2020) ........................................................................................................3

*In re SPOverlook, LLC*,
    No. 15–13018 t11, 2017 WL 3084898 (Bankr. D.N.M. Jan. 4, 2017) ......................9

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019)...............................................................................................7

*Twitter, Inc. v. Youtoo Technologies, LLC*,
    IPR2017-00829 (PTAB) ................................................................................................12

*Zeoli v. RIHT Mortg. Corp.*,
    148 B.R. 698 (Bankr. D.N.H. 1993) ..............................................................................9

**Statutes**

11 U.S.C. §362(a)(1)................................................................................................................8, 9

28 U.S.C. § 1295(4)(A).................................................................................................................6

28 U.S.C. § 1295(a)(4)(A) ...........................................................................................................5

35 U.S.C. § 2(b)(2)(A) ..................................................................................................................6

35 U.S.C. Sec. 326(a)(11)............................................................................................................7

**Other Authorities**

U.S. Const. Art. 1, § 8, cl. 8.........................................................................................................6

Collegium Pharmaceutical, Inc. ("Collegium") hereby files this omnibus reply (this "Reply") to Debtors' Omnibus Objection and Reply In Support of Debtors' Motion for Order Modifying the Automatic Stay to Permit the Debtors to Prosecute Certain Pending Litigation (the "Objection").

## I.
## INTRODUCTION

1.  Collegium respectfully requests this Court to lift the automatic stay from the District Court Action and the PTAB Action. The Debtors have given notice to both the District Court and the PTAB of the effectiveness of the automatic stay and the courts and all parties acquiesced to the stay in both proceedings. These two proceedings are indisputably intertwined as to one patent—the '961 Patent—but not as to all patents that are at issue in the District Court Action. Debtors now seek to move forward with the District Court Action, while raising an argument of first impression—before this or any Court—that the PTAB Action terminated during the pendency of the automatic stay. Whether the PTAB issues a Final Written Decision in the PTAB Action, or decides that the PTAB Action was terminated, is irrelevant to this Court's decision on relief from stay matters.

2.  Regardless of what the PTAB decides, granting parallel relief from the automatic stay in the PTAB Action and the District Court Action is in the best interest of the Estates. Granting relief in only the District Court Action is not in the interests of any party because it would require the District Court to decide identical issues that were before the PTAB. In this case, the PTAB presided over a trial on the validity of the '961 patent and was prepared to issue its Final Written Decision when the automatic stay was imposed. Lifting the stay in the District Court Action alone runs counter to the purpose of creating post-grant review proceedings at the PTAB, which is to provide efficient and expert decisions on key issues in patent litigation. *See,*

*e.g.*, *Personalweb Techs., LLC v. Google Inc.*, 5:13-cv-01317-EJD, 2014 WL 4100743, at *5 (N.D. Cal. Aug. 20, 2014) ("Indeed, allowing these invalidity arguments to be determined once, employing the specialized expertise of the PTAB, produces the exact results—avoiding duplicative costs and efforts and averting the possibility of inconsistent judgments—intended by the AIA and previous procedures.").

3. The Debtors' arguments regarding the PTAB procedural rules and interpretation of the PTAB's orders, actions and powers are both incorrect and irrelevant to the matter before the Court. The PTAB is an independent tribunal and will interpret its own orders and address the status of its own proceedings once it is no longer subject to the automatic stay. This Court need not wade into the application of PTAB law and grapple with the Debtors' argument that the PTAB action "no longer exists." Any such issues are for the PTAB, and, if necessary, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), to decide.

## II.
## ARGUMENT

**A.    The Automatic Stay Should Be Lifted.**

4. The automatic stay in the PTAB Action should be lifted so that the PTAB can take whatever actions the PTAB deems appropriate.

    **i.    The Automatic Stay is Automatic.**

5. The PTAB Action remains pending and subject to the automatic stay. As Debtors and their counsel are well aware, the automatic stay arises automatically upon the filing of a voluntary petition under chapter 11 of the Bankruptcy Code. The PTAB Action Order, while recognizing the automatic stay, was not necessary to give the stay effect.

6. Having given notice of the stay, which the PTAB and all parties having recognized and complied with, Debtors are estopped from implying that the stay did not apply.

2

7.      Moreover, Debtors cannot argue that Collegium was compelled to seek relief from the automatic stay to preserve the stayed proceedings. Bankruptcy favors the continuance of the automatic stay, particularly early in chapter 11 proceedings. Bankruptcy Courts are not required to give relief from stay, and creditors are encouraged to follow the stay. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020) ("The [automatic] stay serves to maintain the status quo and prevent dismemberment of the estate during the pendency of the bankruptcy case.") (internal quotation marks omitted); *In re AP Indus., Inc.*, 117 B.R. 789, 798–99 (Bankr. S.D.N.Y. 1990) (the automatic stay was enacted to ensure that creditors are prevented from initiating and maintaining separate lawsuits.").

### ii.    Cause Exists To Lift The Automatic Stay.

8.      Lifting the automatic stay in the PTAB Action permits the PTAB to issue a Final Written Decision on the merits of the '961 patent and/or to address Debtors' argument that the action "no longer exists." There is no valid reason to make the PTAB wait to act in either capacity.

9.      Even before the Debtors' chapter 11 cases, the District Court was waiting for the PTAB to act in the PTAB Action.[1] It is likely that the District Court will voluntarily continue to stay the District Court Action pending a decision in the PTAB Action because Debtors seek damages from Collegium for infringing the '961 patent, and the PTAB Action has already considered Collegium's defenses that the '961 patent is invalid. This efficiency—reducing

---

[1] Collegium moved for a stay of the District Court proceedings pending the PTAB action on October 16, 2018. Debtors opposed the stay motion. The District Court has not ruled on the 2018 stay motion, but no further proceedings have occurred since briefing of the PTAB Action Stay Motion in the District Court (save a reply brief and several stipulations), apparently while the District Court awaited the outcome of the PTAB action. The District Court entered an order staying the District Court action on September 20, 2019, following notice of the Debtors' bankruptcy. The foregoing proceedings are all found in *Purdue Pharma LP et al v. Collegium Pharmaceutical, Inc*. DMA-1-15-cv-13099 in the District of Massachusetts, which is the lead action into which the '961 patent case in the District Court was consolidated for pretrial management and discovery only.

3

litigation costs, conserving judicial resources, and deferring to the expertise of the PTAB—is why district courts typically stay infringement actions when the PTAB institutes a post-grant review proceeding like the one in this case. *See, e.g., Garmin Switzerland GmbH v. FLIR Systems, Inc.*, No. 3:17-cv-01147-SB, 2017 WL 6453346, at *5 (D. Oreg. Dec. 18, 2017). The PTAB was formed precisely so that it could decide, based on the expertise of its ALJs, the same issues as the District Court in a more timely and efficient way.[2] Hence, Debtors' argument to deny stay relief or terminate the PTAB Action results in the least efficient outcome with no explanation how proceeding in that manner would benefit the Estates.

10. The PTAB's decision is critical to the District Court Action. If the PTAB finds that the '961 patent is invalid, pending appeal, the District Court Action concerning the '961 patent is moot,[3] saving the parties millions of dollars in litigation fees even if the other actions proceed.[4] If the PTAB decides the '961 patent is not invalid, then the District Court does not need to redo the work already done by the PTAB. Finally, if the PTAB deems its action concluded without a substantive ruling then the District Court will be able to lift its stay and

---

[2] *See*, *e.g.*, https://www.ptab-blog.com/2015/11/13/the-cost-effectiveness-of-ptab-proceedings/ and https://www.finnegan.com/en/insights/articles/ptab-basics-key-features-of-trials-before-the-uspto.html.

[3] The '961 patent is the sole patent asserted in a civil action pending in the United States District Court for the District of Massachusetts and captioned as *Purdue Pharma L.P. et al. v. Collegium Pharmaceutical, Inc.*, 1-17-cv-11814, filed September 21, 2017. On December 13, 2017, that case was consolidated, for case management and discovery purposes only, with pending litigation captioned as *Purdue Pharma L.P. et al. v. Collegium Pharmaceutical, Inc.*, 1-15-cv-13099 (D. Mass., filed Aug. 6. 2015).

[4] While there are patents-in-suit in addition to the '961 patent asserted in separate cases consolidated for discovery and case management, Debtors' statement that "the '933 Patent has withstood Collegium's best defenses … that were the subject of its failed summary judgment motion" (Objection ¶ 22) is disingenuous. Collegium's summary judgment motion targeted three patents-in-suit, and successfully knocked out two of them. As for the '933 patent, the Court denied Collegium's motion despite "considerable misgivings." *Purdue Pharma L.P. v. Collegium Pharm., Inc.*, 335 F. Supp. 3d 149, 165 (D. Mass. 2018). The Court further held that "the materiality of the 8α limitation in the product claims is very much in doubt, and therefore casts doubt on the validity of claims 1 and 16" and that there was "substantial doubt as to whether the 95% limitation has any real significance." *Id*. at 168. The Court's "substantial doubts" and "considerable misgivings" indicate that the '933 patent did not "withstand" summary judgement (as Debtors characterize in their Objection); instead, a more objective characterization would be that the '933 patent barely survived summary judgement.

4

make other arrangements to reach a finding on the '961 patent validity issues (discovery, proceedings, etc…).

11. Hence, regardless of the PTAB's actions, relief from stay facilitates the complete resolution of disputed matters related to the '961 patent in the District Court Action and promotes judicial economy. Lifting the stay to permit the PTAB Action to proceed will promote the efficient use of the Debtors' limited assets and will not prejudice the interests of other creditors. Conversely, lifting the District Court Action stay and not the PTAB Action stay will unduly delay the resolution of a key issue in the matter: the validity of the '961 patent. For the foregoing reasons, Collegium's motion for relief from the automatic stay to permit the PTAB Action to proceed should be granted.

**B.     The PTAB Will Determine Issues In The PTAB Proceeding.**

12. The interpretation and application of the PTAB procedures and regulations are matters within the expertise and jurisdiction of the PTAB and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"). The PTAB is an independent adjudicative body that issues its own orders, including, when necessary, the interpretation of USPTO regulations and procedures. The PTAB's interpretations are generally accepted and are only reviewed by the Federal Circuit. *See* 28 U.S.C. § 1295(a)(4)(A) (exclusive jurisdiction of the CAFC over appeals form the PTAB). The PTAB—not this Court—should consider and decide any motion Debtors wish to make with regard to the status of the PTAB Action, from which an appeal will lie to the Federal Circuit.

    **i.     PTAB Is An Independent Tribunal.**

13. The extent of the PTAB's authority, and the effect of any statutory deadlines or limits on PTAB's authority, are not issues that the Bankruptcy Court has cause or authority to consider or determine.

14. The legal authority to issue patents originates in Article I, § 8 of the United States Constitution. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 5 (1966). This authority was given to the legislative branch of the Federal Government. Art. 1, § 8, cl. 8. Congress delegated plenary authority related to issuing and regulating patents to the United States Patent and Trademark Office ("USPTO"). *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1335-36 (Fed. Cir. 2008). The USPTO has authority to establish regulations and procedures to govern the conduct of proceedings in the Office. *Id.*; *see also* 35 U.S.C. § 2(b)(2)(A). Congress also formed the PTAB as an independent adjudicative body within the USPTO. One of the responsibilities of the PTAB is to conduct trials under the America Invents Act to determine the validity of issued patents.

### ii. PTAB And The Federal Circuit Interpret PTAB's Regulations And Orders.

15. Congress granted exclusive jurisdiction over all patent matters to the Federal Circuit. As part of this jurisdiction, Congress also granted the Federal Circuit exclusive jurisdiction to hear all appeals from PTAB decisions. 28 U.S.C. § 1295(4)(A). The Federal Circuit generally accepts the PTAB's interpretation of USPTO and PTAB regulations and procedures. *Redline Detection, LLC v. Star Envirotech*, Inc., 811 F.3d 435, 441–42 (Fed. Cir. 2015). The Federal Circuit will review the PTAB's decision of how it manages its permissive rules of trial proceedings for an abuse of discretion. *Id.* This review is limited to the Federal Circuit under its exclusive Jurisdiction.

16. As such, the extent of the PTAB's authority and the effect of any statutory deadlines or limits on PTAB's authority are under the exclusive jurisdiction of the PTAB and the Federal Circuit. On the other hand, this Court has no interest in determining these issues and it lacks the authority or jurisdiction to bind the PTAB or the Federal Circuit as to interpretation of

the PTAB's orders, statutes and regulations. Debtor's arguments are squarely within the PTAB and the Federal Circuit's jurisdiction to decide.

17. With respect to the relief from stay issues, the only relevant portion of the PTAB Order is that the PTAB recognized that the Automatic Stay was in effect "***pursuant to the Automatic Stay provision of 11 U.S.C. Sec. 362(a)(1), (3)***." PTAB Action Order p. 4 (emphasis added). Having recognized the Automatic Stay, the PTAB could neither (i) conduct further proceedings, nor (ii) affirmatively require the parties to do anything. *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 76 (2d Cir. 2019) (When a bankruptcy action is filed, any action or proceeding against the debtor is automatically stayed by Section 362(a)).

18. Upon relief from the stay, if there are issues related to the PTAB proceedings, then the PTAB, and Federal Circuit, if necessary, will decide the PTAB action, including any relevant issues related to PTAB procedure, the interpretation of PTAB Orders, and rules and regulations governing PTAB proceedings.

### iii.    The PTAB Will Likely Render A Substantive Decision.

19. Collegium maintains that this Court should not wade into interpreting the effect of the PTAB's statutes, rules, and orders on the PTAB Action. But to complete the record, Collegium believes termination would contravene the language and the policy of the PTAB's statutes and rules that require the PTAB to issue a Final Written Decision after a notice of institution. 35 U.S.C. Sec. 326(a)(11). Although the statute imposes a deadline by which the PTAB will issue a substantive decision (35 U.S.C. Sec. 326(a)(11)) (the "Decision Date"), the Decision Date is provided to promote the efficiency for which the tribunal was created. The Decision Date is not, as Debtors' suggest, the sword of Damocles hanging over the head of the petitioner that extinguishes the petitioner's rights if the PTAB is unable, for whatever reason, to render its substantive decision by the Decision Date.

**C.    Statutory Deadlines Are Extended By The Automatic Stay.**

20.    The PTAB is the proper tribunal to rule on the status of its proceedings. The Bankruptcy Court need not issue an opinion regarding the tolling of statutory deadlines as advisory opinions are not favored under federal law. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

21.    But if the Court is inclined to address the issue of whether all deadlines in stayed proceedings are impliedly tolled or continued pending the release of the automatic stay, the Court must recognize that section 362(a)(1) clearly stops the entire PTAB *process* and that the "PTAB process" must encompass all actions and deadlines to act by the parties and the PTAB. There must be a baseline understanding of a stay of the "process" so that: (i) the automatic stay does not unfairly prejudice parties in interest; and (ii) Bankruptcy Courts are not overrun with relief from stay motions during the early stages of a bankruptcy case by litigants that are uncertain as to whether all deadlines in a stayed action are suspended.

22.    Debtors' arguments that the legislative history of section 108(c) supports the proposition that deadlines in a civil action in a court are stayed, but that deadlines in an administrative proceeding are somehow excepted from the stay is entirely without merit. The Debtors' dissection of section 108(c) is a red-herring; section 108(c) addresses the ability to commence (i.e., begin a new suit) or continue (i.e., commence an appeal) civil actions; it does not address deadlines and due dates that are wholly within *any* type of action that was pending on the Petition Date. A discussion of why section 108(c) does not mention, and whether it applies, to administrative proceedings is entirely irrelevant to this matter. Together, Bankruptcy Code sections 108 and 362 work to protect the rights of both types of creditors, those that have not yet brought claims and those with pending actions.

23. The relevant issue here is that Section 362(a)(1), by its plain terms stays "the *employment of process* of [an] … administrative … proceeding." The "employment of process" would have no meaning if it did not include procedural actions within the administrative proceeding, including both: (i) the rendering of a final decision by the PTAB; and (ii) the imposition or enforcement of any deadlines that would otherwise govern the proceedings. 11 U.S.C. §362(a)(1).

24. The purpose of § 362(a)(1) is to "preserve the status quo" in pending matters and the power of the automatic stay, to preserve and maintain the *status quo* in the PTAB proceeding, is as large as its purpose–to shield the bankruptcy estate from the costs and demands of continuing litigation. *See, e.g., In re Gronczewski*, 444 B.R. 526, 531 (Bankr. E.D. Pa. 2011) (citing *Taylor v. Slick,* 178 F.3d 698, 702 (3d Cir.1999)); *see also*, *In re Gold & Honey, Ltd.*, 410 B.R. 357, 369 (Bankr. E.D.N.Y. 2009) (the automatic stay is designed to effect an immediate freeze of the *status quo* at the outset of the chapter 11 proceedings); *Zeoli v. RIHT Mortg. Corp.*, 148 B.R. 698, 700 (Bankr. D.N.H. 1993) (quoting *In re New American Food Concepts,* 70 B.R. 254, 258 (Bankr. N.D.Ohio 1987)); *c.f.*, *In re SPOverlook, LLC*, 2017 WL 3084898, at *2 (Bankr. D.N.M. Jan. 4, 2017) (bankruptcy filing "stayed all deadlines in the… state court action against the Debtor, including any appellate deadlines…") (noting that the deadlines to continue the matter in the appellate court were stayed by section 108(c)).

25. The automatic stay would not preserve the *status quo* if it acted to absolutely freeze the "employment of" the PTAB's process but, as the Debtors' argue, time limits and deadlines continue to run in the stayed proceedings. Indeed, instead of preserving the *status quo* and providing the relief from litigation that the automatic stay is intended to provide, the result of the Debtors' argument would be to interject a new level of litigation gamesmanship into

9

proceedings and burden debtors and bankruptcy courts with endless requests for relief from stay motions to avoid the risk that time limits and deadlines expire in stayed actions. Bankruptcy courts would, thus, be forced to unnecessarily interject and re-set deadlines and time-limits on all routine matters in every forum and tribunal in which any matter is pending against a debtor. Particularly in large chapter 11 cases, this result would be untenable and could unduly burden bankruptcy courts during the initial months of a case.

26.  It must be evident that the broad scope and immense power of the automatic stay not only stops all parties, courts and tribunals from taking affirmative actions, but also tolls the imposition of all deadlines, both statutory and non-statutory, that would otherwise require them to take action in a stayed proceeding. Certainly, the imposition of any deadline or sanction (or the termination of a matter) is part of the "employment of the process" itself. Many courts have noted that the automatic stay does not function in the piecemeal fashion that the Debtors assert; rather, the automatic stay suspends the proceedings, and any deadlines in those proceedings, so as to preserve the *status quo* of the proceeding in its entirety. *See, e.g., Bank of America, N.A. v. Johnson*, 479 B.R. 159 (Bankr. N.D. Ga. 2012) (holding that the automatic stay suspended the obligation of the debtor to file an answer because "the automatic stay means nothing if it does not operate to stay the proceeding *in its entirety*.") (emphasis added).

27.  Collegium's request for relief from stay is warranted particularly under the circumstances of this case. The Debtors filed their bankruptcy cases on the eve of the PTAB rendering its Final Written Decision as to the validity of the '961 patent. Collegium, in good faith, abided by the automatic stay[5] to enable the Debtors to focus on their reorganization efforts.

---

[5] Collegium, when asked by the PTAB panel at a status conference called by the panel, advised that Collegium believed the PTAB panel could make a determination as to whether the automatic stay applied to the PTAB Proceedings. When the PTAB issued its order recognizing the automatic stay, Collegium then abided by the automatic stay.

10

The Debtors cannot argue that the stay has provided them with a litigation advantage. *Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1265 (7th Cir. 1997) ("The use of the Bankruptcy Code to obtain a favorable forum should not be encouraged."); *Int'l Distribution Centers v. Walsh Trucking Co.*, 62 B.R. 723 (Bankr. S.D.N.Y. 1986) ("[a]lthough section 362 is a shield to protect the debtor to provide for a fresh start, the automatic stay was not intended by Congress to be used as a sword.").

28.  Accepting the Debtors' arguments that deadlines are not part of the "employment of process" that is stayed pursuant to 362(a)(1) leads to results that are absolutely antithetical to the spirit of the Automatic Stay as a "shield" to promote a level playing field.  For example, if the Debtors had filed chapter 11 on the eve of the last possible statutory extension of the Decision Date, Collegium would have had no opportunity at all to continue the stayed proceeding.  By the Debtors' reasoning, even though Collegium would have had absolutely no opportunity to seek relief from the stay, the stay would have terminated the PTAB Action by preventing action prior to the Decision Date.  Such a result is antithetical to basic Bankruptcy jurisprudence.  Obviously, accepting the Debtors' novel argument that a "stay" does not really stay the entire proceeding, including any applicable deadlines, could lead to the type of automatic stay "sword-play" that must not be permitted.

29.  The cases cited in the Objection do not warrant a different conclusion.  In each of the cases relied on by Debtors, the automatic stay terminated prior to the Decision Date because the patents at issue were assigned to non-debtors and, thus, were no longer property of the debtors' estate.  The PTAB was able to render its decision without any order of the bankruptcy courts because the patents at issue were no longer subject to the stay, not because anyone sought relief from the automatic stay.  *See Mylan Pharms. Inc. v. Pozen Inc. and Horizon Pharma USA,*

11

*Inc.*, IPR2017-01995, Paper 60 at 1, fn. 1 (PTAB Jan. 25, 2019); *Twitter, Inc. v. Youtoo Technologies, LLC*, IPR2017-00829, Paper 31 at 2 (PTAB Feb. 26, 2018)); *Maxilinear v. Cresta*, IPR2015-00594.  Nothing in the Debtors' cited cases supports the proposition that the PTAB proceedings would have been deemed terminated on the applicable Decision Dates.

## III.
## CONCLUSION

Collegium respectfully requests that the Court lift the automatic stay as to the PTAB Action in addition to the District Court Action and allow the PTAB to move forward and decide any relevant issues related to the status of the PTAB Action.

Dated: August 24, 2020
Los Angeles, California

**ROBINS KAPLAN LLP**

By: /s/ Scott F. Gautier
Jake Holdreith
Scott Gautier

Jake Holdreith (*pro hac vice* pending)
  800 LaSalle Avenue
  Minneapolis, MN 55402
  Telephone:     (612) 349-8500
  Facsimile:(612) 339-4181

Scott F. Gautier (*pro hac vice* pending)
  2049 Century Park East, Suite 3400
  Los Angeles, CA 90067
  Telephone: (310) 552-0130
  Facsimile: (310) 229-5800

*Counsel to Collegium Pharmaceutical, Inc.*

12