EXECUTION VERSION

March 22, 2020

To:   Kramer Levin Naftalis & Frankel LLP, Brown Rudnick LLP, Gilbert LLP, and Otterbourg P.C., in their capacity as counsel to the members of the ad hoc committee of governmental claimants (each, a "Member" and collectively, the "Ad Hoc Committee") (in such capacity, "Counsel") (Counsel and the Ad Hoc Committee are collectively referred to herein as the "Client Group") with respect to opioid-related litigation claims against Purdue Pharma L.P. and their affiliated debtor entities, *In re: Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD) (collectively, the "Company"), in care of:

**Kramer Levin Naftalis & Frankel LLP**
1177 Avenue of the Americas
New York, NY 10036
Attn: Kenneth H. Eckstein, Partner

**Brown Rudnick, LLP**
7 Times Square
New York, NY 10036
Attn: Steven D. Pohl, Partner

**Gilbert LLP**
1100 New York Avenue, NW
Washington, DC 20005
Attn: Scott D. Gilbert, Partner

**Otterbourg P.C.**
230 Park Avenue
New York, NY 10169
Attn: Melanie L. Cyganowski, Partner

Dear Ladies and Gentlemen:

This letter agreement (this "Agreement") confirms the terms of the agreement among Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), Counsel, and the Company, pursuant to which Counsel has engaged Houlihan Lokey on behalf of the Ad Hoc Committee, effective as of January 1, 2020 (the "Engagement Effective Date"), as a financial advisor to provide financial advisory and investment banking services, as further described below.

1. **Scope of Engagement.** Pursuant to its engagement on behalf of the Ad Hoc Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by Counsel, assisting Counsel and the Ad Hoc Committee in, and advising Counsel and the Ad Hoc Committee in connection with:

    (a)   Reviewing and analyzing the financial and operating statements of the Company;

Page 2

(b) Evaluating the assets and liabilities of the Company;

(c) Analyzing business plans, forecasts, and related financial projections of the Company;

(d) Evaluating financing and capital raising alternatives available to the Company;

(e) Assessing the financial issues relating to any settlement of opioid-related litigations and liabilities;

(f) Monitoring and advising the Client Group with regard to (i) the sale process involving the international pharmaceutical companies owned by the Sackler family (collectively, the "IACs") as contemplated in the current settlement framework between the Company and the Ad Hoc Committee and (ii) any other relevant issues;

(g) Providing expert advice and testimony regarding financial matters related to any Transaction(s), to the extent appropriate and necessary;

(h) Developing and evaluating options and implementing strategies for any settlement of opioid-related litigations and liabilities, including participation in negotiations among the Ad Hoc Committee, the Company, the Company's other creditors, and other parties in interest; and

(i) Such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and Counsel.

As used herein, the term "Transaction" means the consummation of any of the following, whether through one transaction or a series of transactions:

(a) The consummation of any plan of reorganization, liquidation, scheme or similar arrangement (but excluding any plan under chapter 7 of the Bankruptcy Code); or

(b) Any sale, transfer or assumption of all or substantially all of the assets or liabilities of the Company (including, without limitation, any consolidation or merger involving any entity comprising all or substantially all of the Company).

2. **Obligation to Pay Fees.** Notwithstanding anything to the contrary set forth herein, including, without limitation the "Scope of Engagement" set forth in Section 1 of this Agreement and the Company's obligation to pay the fees and expenses as set forth in Sections 3, 4 and 6 of this Agreement, this Agreement is in all respects subject to that certain *Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* entered by the Bankruptcy Court on December 2, 2019 [Docket No. 553] (the "Reimbursement Order"), pursuant to which the Company is authorized, but not directed, to pay the reasonable and documented fees and expenses of the Ad Hoc Committee's professionals in accordance with the terms and conditions of that certain reimbursement agreement, dated September 15, 2019, by and among the Debtors and the Ad Hoc Committee (the "Reimbursement Agreement"). Any and all of the Company's obligations hereunder to pay the fees and expenses of Houlihan Lokey set forth in Sections 3, 4, and 6 of this Agreement, including, without limitation, the Monthly Fees and the Deferred Fee, and the indemnification, contribution, and reimbursement obligations under Section 14 hereof (but solely to the extent such obligations relate to any loss, claim, damage, liability, or expense which arises out of any action or failure to act by the applicable Indemnified Party (as defined below) that occurred after the termination of the Reimbursement Agreement and/or the time at which the Reimbursement Order ceases to be in full force and effect), shall terminate

immediately upon termination of the Reimbursement Agreement and/or the time at which the Reimbursement Order ceases to be in full force and effect in each case with respect to all professionals subject to the Reimbursement Agreement and Reimbursement Order, and not only with respect to Houlihan Lokey; provided, however, that termination of the Reimbursement Agreement shall not terminate the Company's obligation to pay a Deferred Fee to Houlihan Lokey for any Transaction consummated during the term of this Agreement or the Tail Period, as defined below; and provided further that, if the Reimbursement Agreement is terminated prior to consummation of a Transaction, Houlihan Lokey shall be paid on or soon after the consummation of a Transaction during the Tail Period an amount equal to a pro-rated portion of the Deferred Fee calculated as (i) the number of days elapsed from the Engagement Effective Date through the date of termination of the Reimbursement Agreement divided by (ii) 366 (i.e., the number of days that would elapse from the Engagement Effective Date to a Transaction if such Transaction were to occur on December 31, 2020) and multiplied by (iii) $7,000,000 (i.e., the Deferred Fee, as defined below). For the avoidance of doubt, (i) termination of this Agreement by Counsel to the Ad Hoc Committee in accordance with Section 4 hereof shall not cause the amount of the Deferred Fee to be reduced on a pro rata basis in accordance with the immediately preceding sentence and (ii) no portion of the Deferred Fee shall be paid prior to the consummation of a Transaction. Each of the parties hereto acknowledges and agrees that all fees and expenses of Houlihan Lokey incurred in connection with or relating to the allocation of value among the Debtors' creditors shall be segregated and recorded separately and shall be sought by separate application only upon the earlier of (i) the approval by the Bankruptcy Court of a restructuring support agreement among the parties, including the Debtors and each member of the Ad Hoc Committee or (ii) confirmation of a chapter 11 plan for the Debtors.

Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company's obligation to pay Houlihan Lokey's fees and expenses hereunder is terminated or otherwise ceases for any reason. In such event, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of the termination or cessation of the Company's obligation to pay such fees and expenses, subject to any requirements imposed by the Bankruptcy Court.

3. **Fees.** In consideration of Houlihan Lokey's acceptance of this engagement, the Company shall pay Houlihan Lokey the following:

(a) *Monthly Fees*: In addition to the other fees provided for herein, upon the Engagement Effective Date, and on every monthly anniversary of the Engagement Effective Date during the term of this Agreement, Houlihan Lokey shall be paid in advance, a nonrefundable cash fee of $200,000 ("Monthly Fee"). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. If this Agreement is terminated before the end of 6 months from the Engagement Effective Date (other than a termination for Cause), Houlihan Lokey shall be paid, on the effective date of such termination, the difference between $1,200,000 and the sum of all Monthly Fees previously paid to Houlihan Lokey on a timely basis.

Fifty percent (50%) of the Monthly Fees paid on a timely basis to Houlihan Lokey under this Agreement after the fourth Monthly Fee shall be credited against the Deferred Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Deferred Fee be reduced below zero; and

(b) *Deferred Fee*: In addition to the other fees provided for herein, upon the consummation of a Transaction, Houlihan Lokey shall be paid a fee in cash (the "Deferred Fee") equal to

Page 4

$7,000,000. The Deferred Fee shall be earned and payable upon the consummation of a Transaction. Notwithstanding anything to the contrary herein, only one Deferred Fee shall be payable hereunder.

4. **Term and Termination.** This Agreement may be terminated at any time by Houlihan Lokey or by Counsel on behalf of the Ad Hoc Committee upon thirty (30) days' prior written notice of termination to the other party. The Company's obligations to pay the fees and expenses set forth in Section 3 and Section 6 of this Agreement shall terminate upon the earlier of (i) the termination of the Reimbursement Agreement, (ii) the time at which the Reimbursement Order ceases to be in full force and effect, (iii) the effective date of any chapter 11 plan or (iv) the consummation of any Transaction; provided, however, that termination of the Reimbursement Agreement shall not terminate the Company's obligation to pay a Deferred Fee to Houlihan Lokey for any Transaction consummated during the term of this Agreement or the Tail Period, as defined below.

The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3 and (ii) Houlihan Lokey's right to receive any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement (other than termination of this Agreement for Cause by Counsel on behalf of the Ad Hoc Committee and except as otherwise set forth in section 2 hereof), Houlihan Lokey shall be entitled to full payment of the Deferred Fee described in this Agreement so long as a Transaction is consummated during the term of this Agreement, or within eighteen (18) months after the date of expiration or termination of this Agreement ("Tail Period"). "Cause" shall mean the willful misconduct, gross negligence, bad faith, or actual fraud by Houlihan Lokey which results in a material failure to perform the services set forth in Section 1 of this Agreement. If Counsel reasonably believes that Cause exists, then, within ten (10) days of becoming aware of such Cause, Counsel shall give Houlihan Lokey a notice of its intent to terminate for Cause, specifying the conduct constituting such alleged Cause, and Houlihan Lokey shall then have thirty (30) days to cure such conduct. If Houlihan Lokey fails to cure such conduct within such time period, then Counsel may terminate this Agreement for Cause upon written notice to Houlihan Lokey. For the avoidance of doubt, Houlihan Lokey shall be entitled to its Deferred Fee unless and until there is a final judicial determination from the Bankruptcy Court that Houlihan Lokey has engaged in such willful misconduct, gross negligence, bad faith, or actual fraud.

5. **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for Houlihan Lokey. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for Houlihan Lokey. Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company and the Ad Hoc Committee.

6. **Expenses.** In addition to all of the other fees and expenses described in this Agreement and regardless of whether any Transaction is consummated, the Company shall, upon submission of a monthly fee application by Houlihan Lokey in accordance with the Reimbursement Order, and approval thereof, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses, including, but not limited to, (i) travel-related and certain other expenses, without regard to

volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors; and (ii) research, database and similar information charges paid to third-party vendors, and reprographics expenses to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

In addition to any other reimbursement rights Houlihan Lokey may have hereunder, Houlihan Lokey shall, in addition, be reimbursed by the Company for fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) any disputes related to Houlihan Lokey's retention and (ii) the payment of all fees and expenses due to Houlihan Lokey hereunder, including, without limitation, in connection with any fee dispute.

7. **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall, unless otherwise expressly permitted herein, be made in lawful money of the United States, and shall be made in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

8. **Information.** The Company will use commercially reasonable efforts to provide Houlihan Lokey with access to management and other representatives of the Company and (to the extent possible) other participants in the Transaction, as reasonably requested by Houlihan Lokey. The Company will use commercially reasonable efforts to furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder (other than information the Company deems subject to attorney client or other privilege), all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. In addition, with respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the Company and IACs, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Company's and the IACs' management, as the case may be, as to the matters covered thereby. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company and the IACs or otherwise reviewed by, or discussed with, Houlihan Lokey. The Client Group understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Client Group acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Company, IACs, or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. The Client Group acknowledges that Houlihan Lokey's ability to render the services hereunder will depend upon the extent of cooperation that it receives from the Company, and the Company's advisors. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Client Group in evaluating a Transaction, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey. Notwithstanding the two immediately preceding sentences, the Ad Hoc Committee may furnish Houlihan Lokey's advice and materials relating to a Transaction in response to any subpoena, court order, or similar legal demand, provided that prompt prior written notice thereof shall be given to Houlihan Lokey so that Houlihan Lokey may seek a protective

Page 6

order or other appropriate remedy, and, if Houlihan Lokey fails to obtain such remedy, the Ad Hoc Committee may disclose only that information which its counsel advises it is legally compelled to disclose. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent, provided that the foregoing restriction shall not apply in respect of submissions required to be made by the Company to the Bankruptcy Court in connection herewith. At the direction of Counsel, certain communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Ad Hoc Committee in connection with this matter, will be considered in preparation for litigation relating to the restructuring of the Company, and accordingly, will be subject to the attorney-client privilege and work-product doctrine.

9.  **Limitations on Services as Advisor.** Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing by the parties hereto (including the Company) and the UCC; provided, however, that no agreement in writing shall be required for modifications to Houlihan Lokey's services that do not result in modifications to the fees set forth in this Agreement. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Client Group, and that Houlihan Lokey is not acting as an agent or fiduciary of the Client Group, the Company or any other person or entity in connection with this engagement, and each of the Client Group and the Company agrees that it shall not make, and hereby waives, any claim based on an assertion of such an agency or fiduciary relationship. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for any decision by any Member, the Company or any other party on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by such party in its sole discretion. Houlihan Lokey is being retained on behalf of, and will report solely to, the Client Group, notwithstanding that Houlihan Lokey's fees and expenses will be paid by the Company, and that certain covenants and representations are made by the Company herein. It is understood that Houlihan Lokey is providing the services hereunder solely to, and will take direction solely from, the Ad Hoc Committee or its duly authorized representative and no other party (including, without limitation, any individual Member).

10.  **Additional Services.** To the extent Houlihan Lokey is requested by the Client Group to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey only such fees as shall be mutually agreed upon by the parties hereto (including the Company) and the UCC in writing, in advance.

11.  **Required Services.** In the event this Agreement is terminated in accordance with Section 2 or Section 4 of this Agreement, if Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable and documented related out-of-pocket costs and expenses, including, among other things, the reasonable and documented legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

12.  **Credit.** After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith.

Page 7

13. **Choice of Law; Jury Trial Waiver; Jurisdiction**. THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF THE PARTIES (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (THE "BANKRUPTCY COURT"), WHICH COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND AGREES TO VENUE IN SUCH COURTS. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE EXCLUSIVELY TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN THE BANKRUPTCY COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN THE BANKRUPTCY COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT ONE STAMFORD FORUM 201 TRESSER BOULEVARD, STAMFORD, CT 06901.

14. **Indemnification and Standard of Care**. As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees, (i) to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or the matters contemplated by, this Agreement, and (ii) to reimburse each Indemnified Party for all reasonable and documented expenses (including, without limitation, the reasonable and documented fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to such engagement or matter. However, the Company shall not be liable under the foregoing indemnification provision for any loss, claim, damage, or liability (or related expenses) which arises out of any action or failure to act by such Indemnified Party and is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct, gross negligence, bad faith or actual fraud of such Indemnified Party.

Page 8

If for any reason, the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any Indemnified Party or to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of the losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions in such proportion as is appropriate to reflect the relative benefits received by the Ad Hoc Committee and/or the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by such Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Ad Hoc Committee and/or the Company (and their respective affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey pursuant to this Agreement except, with respect to an Indemnified Party, for any losses, claims, damages, liabilities or expenses to the extent they both arise out of any action or failure to act by such Indemnified Party and are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence, bad faith, actual fraud, or willful misconduct of such Indemnified Party. Relative benefits received by the Ad Hoc Committee and/or the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders and creditors (including, without limitation, the Ad Hoc Committee), as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement. None of Counsel, any Member or the Company may settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an Indemnified Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to any Member or any person or entity asserting claims on behalf of or in right of any Member arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by the Ad Hoc Committee which arise out of any action or failure to act by such Indemnified Party and are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct, gross negligence, bad faith or actual fraud of such Indemnified Party, and no Indemnified Party shall have any liability whatsoever to the Company, Counsel or any other person or entity.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of any entity comprising all or substantially all of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

The indemnity, reimbursement, and other obligations and agreements of the Client Group and any entity comprising all or substantially all of the Company set forth herein (i) shall apply to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, and (iii) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement. The Company and the Client Group agree that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

15. **Responsibility for Obligations.** Notwithstanding anything herein to the contrary, neither the Ad Hoc Committee, any of the Members, nor any of their respective advisors or professionals (including, but not limited to, Counsel), shall be liable for the fees, expenses or other amounts owed by the Company to Houlihan Lokey hereunder.

16. **Miscellaneous.** This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed on behalf of the Company.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than (i) the UCC (solely with respect to their consent rights hereunder), (ii) the Company and (iii) the Client Group, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third-party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto (including the Company).

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, each of the parties hereto will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Company's equity interests as well as the Company's executive officers, and (ii) certain identifying information necessary to verify such party's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument. By executing this Agreement, the Company confirms that all such information provided to Houlihan Lokey is accurate and complete.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

Page 10

The signatories hereto have the requisite power and authority to enter into this Agreement. Counsel has the requisite power and authority to enter into this Agreement in the capacity as counsel to the Ad Hoc Committee and with the consent and authorization of the Ad Hoc Committee. Upon entry of an order from the Bankruptcy Court approving this Agreement (or such earlier time as the Ad Hoc Committee, the Debtors, the UCC and the U.S. Trustee may agree in writing), this Agreement shall be duly and validly authorized by all necessary action on the part of the Company, shall be deemed duly executed and delivered by the Company and shall constitute a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Client Group confirms that the Ad Hoc Committee is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

Each of the Company and the Client Group understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, one or more entities comprising the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to one or more entities comprising the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about the Company, a Transaction or such other parties, or that otherwise may be of interest to the Client Group, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Client Group or to use such information on the Client Group's behalf.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, each of the Client Group and the Company agrees that, subject to the terms of the Protective Order, Houlihan Lokey may share information obtained from the Company, the Client Group and other parties hereunder with other members of the Houlihan Lokey Group, and may perform the services contemplated hereby in conjunction with such other members.

Page 11

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

**HOULIHAN LOKEY CAPITAL, INC.**

By: _____/s/ Saul E. Burian_____
Saul E. Burian
Managing Director

Accepted and agreed to as of the Engagement Effective Date:

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:  */s/ Kenneth H. Eckstein*
Kenneth H. Eckstein
Partner

**BROWN RUDNICK LLP**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:  */s/ Steven D. Pohl*
Steven D. Pohl
Partner

**GILBERT LLP**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:  */s/ Scott D. Gilbert*
Scott D. Gilbert
Partner

**OTTERBOURG P.C.**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:  */s/ Melanie L. Cyganowski*
Melanie L. Cyganowski
Partner

Page 12

Acknowledged and agreed to as of the Effective Date:

**PURDUE PHARMA L.P.**, on its own behalf, and on behalf of its subsidiaries and affiliates

By: ___/s/ J. M. Lowne___
Jon Lowne
Chief Financial Officer