IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>PURDUE PHARMA L.P., et al.,<br><br><br>Debtors.[1] | Chapter 11<br>Case No. 19-23649 (RDD)<br>Administratively Consolidated |

**MOVANT INDEPENDENT EMERGENCY ROOM PHYSICIAN'S MOTION FOR CLASS TREATMENT PURSUANT TO FED. BANKR. P. 9014 AND 7023 FOR AN ORDER MAKING FED. R. CIV. P. 23 APPLICABLE TO THESE PROCEEDINGS, AND GRANTING RELATED RELIEF**

Movant Independent ER Physician[2], on behalf of himself and a proposed class of

similarly situated persons (the "Independent ER Physicians" or the "ER Physicians" or the

"Class"), by and through their undersigned counsel, hereby move this court pursuant to Fed. R.

Bankr. P. 9014 and 7023 for the entry of an order making Fed. R. Civ. P. 23 applicable to the

"ER Physician's Proof of Claim" (hereinafter "Class Proof of Claim" or "Class Claim"), and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Life Science Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014).

[2] As used herein, the "Independent ER Physicians" or "ER Physicians" are: Michael Masiowski, M.D. and all other similarly situated. Independent emergency room physicians refer to those emergency room physicians whose billing and revenue collection were entirely separate from the medical facility billing practices. I was an owner and member of a group of emergency room physicians that were not employees of the hospital and performed our own billing and revenue collection.

granting related relief, including (to the extent necessary) relief from the Bar Date and inclusion in mediation.  In support of the Motion, the ER Physician respectfully represents as follows:

## I.    <u>INTRODUCTION</u>

1. On July 25, 2018, the Emergency Room Physician, on behalf of himself and all other ER Physicians similarly situated, filed a class action suit ("ER Physicians") against Purdue and other opioid manufacturers, certain opioid distributors and certain retailers alleging claims under and/or for: (1) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") and state law equivalents; (2) nuisance; (3) negligence; (4) common law fraud; (5) violations of state consumer protection statutes; and (6) unjust enrichment. *See* **<u>Exhibit A</u>** attached hereto, First Amended Complaint in the Independent ER Physician Class Action ("First Amended Complaint").[3]

2. The Independent ER Physician, through his counsel ("Class Counsel") on June 12, 2020 filed a Class Proof of Claim against Purdue Pharma L.P. ("Purdue Pharma") and its subsidiaries that are debtors in possession in the above-captioned chapter 11 bankruptcy cases (collectively, "Debtors" or "Purdue") for damages stemming from the Debtors' misconduct described in detail in the First Amended Complaint. A true copy of the Class Proof of Claim, without the First Amended Complaint, is attached hereto as **<u>Exhibit B,</u>** the receipt of the Class Proof of Claim from the Prime Clerk as **<u>Exhibit C,</u>** and cover letter sending complaint to the Prime Clerk as **<u>Exhibit D</u>**.[4]

---

[3] The 200+ page First Amended Complaint is omitted from paper service copies of this motion. It is available on ECF in the MDL Proceeding, No. 1:17-md-02804-DAP (N.D. Ohio).

[4] As set forth in the Class Proof of Claim, the relief sought by the Independent ER Physician includes prospective relief.  *See* Exhibit A, ¶¶ at  69, 401, and 417.

3.  The Independent ER Physician now moves for an order authorizing the application of Rule

7023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to the Class Proof

of Claim. As a threshold matter, it is well settled that class proofs of claim are permitted in

bankruptcy proceedings. Here, the discretionary factors for applying Rule 23 of the Federal

Rules of Civil Procedure ("Civil Rules") militate in favor of permitting the Class Proof of

Claim: (i) the Motion is timely and will not compromise the efficient administration of the

Debtors' estates as no reorganization plan has been filed, mediation is still ongoing and other

Class Claim Motions are still pending before this Court; (ii) the fact that the Independent

ER Physician Class Action was not certified before the commencement of these cases due

to a procedural stay is not reason to prevent class treatment; and (iii) although many

Independent ER Physicians in the United States may have received actual notice of the

Bar Date in view of the expansive noticing strategy implemented in this case, many (if not

most) of the Independent ER Physicians to be included in the Class Proof of Claim are

unable to file individual proofs of claim for a host of reasons (despite the additional thirty

days added on to the Bar Date) and, as a result, would be unable to secure appropriate

relief including  participating in the nationwide opioid abatement program this Court has

expressed a desire to see implemented in this case.

4.  For example, those Independent ER Physicians may not appreciate why they are receiving

notice of a Bar Date in this case, may not necessarily be sensitized to the legal basis for

their claim against the Debtors, and simply do not have the requisite human or financial

resources to complete a proper individual proof of claim. The proof of claim form requires

the Independent ER Physician to state when the Independent ER Physician was "first

injured," to describe the conduct leading to the injury, to describe "all alleged causes of

3

action" and "legal theories," to identify "every category of damage," and to quantify the claim. This is a complex form to complete; it requires information much of which is beyond the knowledge base of an Independent ER Physician, and numerous hours of professional work to complete is necessary..

5. To make matters worse, the COVID-19 pandemic has caused unimaginable financial distress on, and an existential crisis for, the health care industry, requiring them, among other things, to reassign resources, furlough administrative staff and attend to unprecedented patient care.[5] As set forth in the Masiowski Decl. and described herein, the present circumstances simply do not allow many, if not most Independent ER Physicians in the proposed class, to complete a proof of claim. Respectfully, the only way to protect the rights of, and to ensure that Independent ER Physicians have the opportunity to obtain appropriate relief including partaking in a national abatement program, in this case, is through a Class Proof of Claim.

6. The Court should apply Rule 7023 to the Class Proof of Claim because all four prerequisites of Rule 23(a) of the Civil Rules–numerosity, commonality, typicality, and

---

[5] *See, e.g.*, Ayla Ellison, *42 Hospitals Closed, Filed for Bankruptcy This Year, Becker's Healthcare* (June 22, 2020), https://www.beckershospitalreview.com/finance/42-hospitals-closed-filed-for-bankruptcy-this-year.html ("At least 42 hospitals across the U.S. have closed or entered bankruptcy this year, and the financial challenges caused by the COVID-19 pandemic may force more hospitals to do the same in coming months. COVID-19 has created a cash crunch for many hospitals across the nation. They're estimated to lose $200 billion between March 1 and June 30, according to a report from the American Hospital Association. More than $161 billion of the expected revenue losses will come from canceled services, including nonelective surgeries and outpatient treatment. Moody's Investors Service said the sharp declines in revenue and cash flow caused by the suspension of elective procedures could cause more hospitals to default on their credit agreements this year than in 2019."); *see generally*, AM. HOSP. ASS'N, HOSPITALS AND HEALTH SYSTEMS FACE UNPRECEDENTED FINANCIAL PRESSURES DUE TO COVID-19 (May 2020), https://www.aha.org/system/files/media/file/2020/05/aha-covid19-financial-impact-0520-FINAL.pdf.

adequacy– are satisfied here; additionally, the Class Proof of Claim meets the requirements of Rule 23(b)(3) of the Civil Rules–superiority and predominance.

## II.    JURISDICTION AND VENUE

7. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Rule 23 of the Civil Rules and Rules 7023 and 9014 of the Bankruptcy Rules.

## III. STATEMENT OF FACTS

### A. Background: The Debtors' Role in The Opioid Crisis.

8. The Debtors are pharmaceutical companies that manufacture, sell or distribute, among other products, opioid pain medications. *See* Debtors' Informational Brief [Dkt. No. 17] ("Informational Brief"), p. 1. Purdue's opiate products, including OxyContin® Extended-Release Tablets CII ("OxyContin"), Purdue Pharma's most prominent pain medication, have been the target of over 2,600 civil actions across the United States and its territories ("Pending Actions"). *Id.* The Pending Actions generally allege that the defendant Debtors falsely and deceptively marketed OxyContin and opioid pain medications and are liable for the national opioid crisis. *Id.*

9. Indeed, the United States is in the midst of an opioid epidemic caused by the aggressive promotional marketing, sale, and distribution of prescription opioids by pharmaceutical manufacturers, distributors and retailers, which has resulted in addiction, criminal activity, serious health issues, and loss of life.[6] According to the Centers for Disease Control

---

[6] As used herein, the term "opioid" refers to the entire family of opiate drugs including natural, synthetic, and semi-synthetic opiates.

("CDC"), from 1999 to 2014, the sales of prescription opioids in the United States nearly quadrupled, but there was no overall change in the amount of pain that Americans reported.[7] According to the CDC, opioid overdoses killed more than 45,000 people over a 12-month timeframe that ended in September 2017. It is already the deadliest drug epidemic in American history.[8] If current trends continue, lives lost from opioid overdoses will soon represent the vast majority of all drug overdose deaths in the United States.

**B. Relevant Procedural Posture of The Debtors' Chapter 11 Case**

10. The Debtors filed their Chapter 11 bankruptcy proceedings on September 16, 2019. On February 3, 2020, this Court entered an Order fixing the deadline for filing proofs of claim against the Debtors' estates [Dkt. No. 800] (the "Bar Date Order"). Pursuant to the Bar Date Order, the bar date for general unsecured creditors to file a proof of claim (the "Bar Date") was June 30, 2020. On June 3, 2020, this Court entered an Order extending the Bar Date to July 30, 2020 [Dkt. No. 1221]. Pursuant to the Bar Date Order, Independent ER Physicians filed a Class Proof of Claim.

11. The Debtors have not yet filed a Chapter 11 plan, and their exclusive right to do so was extended to December 10, 2020 in July [Dkt. No. 1517]. The Debtors and all other opioid claimants in these chapter 11 cases are engaged in mediation to attempt to resolve the dispute(s) between the so-called "Non-Federal Public Claimants," on the one hand, and the "Private Claimants," on the other hand, as to the allocation of value/proceeds available from the Debtors' estates to such claimants.

---

[7] Centers for Disease Control and Prevention, *Prescription Opioid Data*, https://www.cdc.gov/drugoverdose/data/prescribing.html.

[8] The Editorial Board, *An Opioid Crisis Foretold*, N.Y. TIMES (Apr. 21, 2018), https://www.nytimes.com/2018/04/21/opinion/an-opioid-crisis-foretold.html.

**C. Independent ER Physician Class Action Naming Purdue As A Defendant**

12. In the opioid MDL proceeding, Plaintiff filed a class action complaint on July 25, 2018. In the Complaint, Independent ER Physician has brought claims on behalf of themselves and all others similarly situated under the federal RICO statute, state RICO statutes, state statutes proscribing unfair and deceptive acts in commerce, as well as state law claims of nuisance, negligence, fraud and deceit, civil conspiracy, and unjust enrichment. The Independent ER Physician, the putative class representative, is an Independent ER Physician, at all material times hereto, that has treated patients for conditions related to the use, misuse, abuse, and addiction of prescription opiates produced by the Debtors and other manufacturers. *See* Masiowski Declaration. Pursuant to Judge Polster's case management orders, Plaintiff's class action has been stayed.[9]

13. Other similar actions by hospitals against substantially the same defendants, including Purdue, also are pending in the MDL Proceeding. The Independent ER Physician action in the MDL, were (and remain) stayed (the vast majority of all cases, brought by many categories of claimants, in the MDL, have been stayed for nearly two years pursuant to the MDL Court's operative Case Management Orders).[10] On April 3, 2020, the MDL court upheld the complaint in *West Boca*, which by precedent has the effect of sustaining the Independent ER Physician's claims under the federal RICO statutes, consumer protection,

---

[9] *See* Case Management Order No. 1, *In re Nat'l Prescription Opiate Litig.* [Dkt. No. 232] (N.D. Ohio Apr. 11, 2018) ("CMO No. 1") and Order (clarifying CMO No. 1), *In re Nat'l Prescription Opiate Litig.* [Dkt. No. 371] (N.D. Ohio May 3, 2018).

[10] *Id.*

Negligence, Nuisance, and Unjust Enrichment. *See In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2020 WL 1669655, at *33 (N.D. Ohio Apr. 3, 2020).[11]

14. With respect to the defendants' conduct and theories of liability, the Independent ER Physicians allege, among other things, that between the 1990s and 2010s, the Debtors (1) engaged in the fraudulent marketing of opioids in order to promote the broader prescription and use of opioids, and (2) engaged in tortious conduct in the distribution of opioids, deliberately failing to report suspicious orders or prescribers, or otherwise shutdown suspicious prescribers or distribution channels.

## IV. **ARGUMENT**

### A. The Court Should Exercise Its Discretion To Extend Application Of Rule 23 To The Class Proof Of Claim.

15. It is now universally established that class proofs of claim are permissible in bankruptcy proceedings. *See, e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4–5 (S.D.N.Y. 2005) (adopting approach set forth in *Matter of Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988), which held that class proofs of claim may be allowed at the discretion of the bankruptcy court); *In re Chateaugay Corp.*, 104 B.R. 626, 633 (S.D.N.Y. 1989); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997); *In re Charter Co.*, 876 F.2d. 866, 873 (11th Cir. 1989); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1472 (6th Cir. 1989), *cert denied*, 494 U.S. 1080 (1990); *In re Birting Fisheries*,

---

[11] The MDL Court had earlier denied, in principal part, motions to dismiss brought by Purdue and other manufacturer defendants, as well as motions brought by distributor defendants, in a bellwether case brought by Summit County, Ohio, a municipality ("*Summit* Action"). *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2018 WL 6628898, at *21 (N.D. Ohio Dec. 19, 2018). The MDL Court later denied, in principal part, in a series of opinions addressing separate issues, several summary judgment motions. The *Summit* Action settled on the eve of trial.

*Inc.*, 92 F.3d 939, 939 (9th Cir. 1996); *In re Trebol Motors Distrib. Corp.*, 220 B.R. 500, 502 (1st Cir. 1998); *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012). The Bankruptcy Code's legislative history "supports the conclusion that class proofs of claim are valid," because "[w]hile the legislative history is silent on the specific issue, it evinces a congressional intent to open bankruptcy proceedings to the widest possible range of 'players.'" *Charter*, 876 F.2d at 870.

16. "The right to proceed as a class claim, however, is not automatic." *Woodward & Lothrop*, 205 B.R. at 369. The Bankruptcy Rules distinguish between "adversary proceedings" (which are governed by Part VII of the Bankruptcy Rules, including Bankruptcy Rule 7023) and "contested matters" (which are governed by Bankruptcy Rule 9014). Bankruptcy Rule 7023 provides that Rule 23 is applicable in adversary proceedings. *See* Fed. R. Bankr. P. 7023. Bankruptcy Rule 9014, which applies to contested matters, lists certain of the adversary proceeding rules that automatically apply in contested matters, but Rule 7023 is not among those listed. *See* Fed. R. Bankr. P. 9014(c). Bankruptcy Rule 9014 goes on to provide, however, that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." *Id.* Therefore, this provision of Bankruptcy Rule 9014 contemplates application of Bankruptcy Rule 7023 and Civil Procedure Rule 23 to a contested matter, at the bankruptcy court's discretion.

17. Accordingly, "[i]n a contested matter, the party seeking to rely on Rule 23 must file a motion under [Bankruptcy] Rule 9014." *In re Dynegy, Inc.*, 770 F.3d 1064, 1069 (2d Cir. 2014); *see also Ephedra*, 329 B.R. at 5 ("Rule 23 may be invoked against the debtor only if the bankruptcy court first makes a discretionary ruling under Rule 9014 to apply Rule 23 to the proof of claim.").

18. Courts in the Second Circuit have adopted the more practical approach that a putative class representative need not await an objection to a claim (thus commencing a contested matter) to invoke Rule 23, but "can move at any time for a declaration that it may file a class proof of claim." *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007) (*citing Ephedra*, 329 B.R. at 6) ("requiring the debtor to object to a claim before applying Rule 23 would 'mean that a debtor and others with interests adverse to a class claim could prevent the claimant from asking the bankruptcy court to apply Rule 23 simply by withholding their objections until the eve of confirmation and then move to expunge the class claim on the grounds that applying Rule 23 would unduly delay distribution'"). Adjudication of whether to permit  a class claim requires the bankruptcy court to determine if: (1) the class claimant has moved to extend application of Rule 23, (2) the claims sought to be certified fulfill the requirements of Rule 23 and (3) the benefits to be gained from the use of a class claim device are consistent with the goals of bankruptcy. *Id.*; *In re Blockbuster Inc., et al.*, 441 B.R. 239, 241 (Bankr. S.D.N.Y. 2011); *In re Motors Liquidation Co.,* 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011); *In re Bally Total Fitness of Greater N.Y.*, 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009).

19. In *Musicland*, this Court articulated the factors that a bankruptcy court should consider in determining whether to exercise its discretion to extend application of Rule 23 to a proof of claim. Those factors, which have come to be known as the "*Musicland* Factors," are: (1) whether class certification will adversely affect the administration of the estate; (2) whether the class was certified pre-petition; and (3) whether the members of the putative class received notice of the bar date. *Musicland*, 362 B.R. at 654; *Motors Liquidation,* 447 B.R. at 620. In considering these factors, no single factor is dispositive, and the weight given to

any factor depends on the facts of each case. *Id.* The Musicland Court explained that factor (3) "often centers on (a) the timing of the motion for certification . . . and (b) whether a plan has been negotiated, voted on or confirmed." *Id.*

20. Here, where the *Musicland* factors weigh heavily in favor of allowing a class claim, this Court should exercise its discretion and apply Bankruptcy Rule 7023.

### 1. *Musicland* Factor 1: This Motion Is Timely and Is Consistent With The Efficient Administration Of The Estates.

21. When deciding whether a claim is prejudicial to the debtor and will adversely affect the administration of the estate, courts look first to the timeliness of the motion and the filing of the underlying proof of claim, for which certification is sought, and then to the overall delay in the administration of the estate. *Ephedra*, 329 B.R. at 6–7. Here, the Independent ER Physicians have filed this Motion just under one month after the Bar Date, before any Class Claim Motions have been decided, before Debtor has submitted a Chapter 11 plan, and while mediation is still ongoing. Accordingly, the Class Claim and this Motion both are timely and do not involve or cause *any* delay, much less an *undue* delay.

22. With respect to timing, Independent ER Physicians' motion for class certification is timely even after it is filed after the submission of the class proof of claim because "[p]rejudice [only] occurs when allowance of a *late* claim would injure or damage the [bankruptcy] debtor." *In re Spring Ford Indus.*, No. 02-15015 DWS, 2003 WL 21785960, at *5 (Bankr. E.D. Pa. July 25, 2003) (emphasis added); *see also Musicland*, 362 B.R. 644 at 654.

23. Second, allowing the Independent ER Physicians' Class Claim will not delay the administration of the Debtors' estates. The Debtors have not yet filed a Chapter 11 plan– and, by all accounts, are not close to doing so as the two key issues in the case – allocation

and estate value stemming from the contribution from (or any settlement with) the Sacklers–are still in the midst of (a) mediation and (b) investigation, respectively. Additionally, the other Class Claim Motions have been adjourned until the Termination Date of mediation.

24. Moreover, treatment of Independent ER Physician claims on a class basis would streamline, and not complicate or frustrate, the administration of the claims. Reviewing the docket, it appears few, if any, independent ER Physicians have made claims. Thus, individual ER Physician claims would not materially impact the Court permitting the acceptance of the Independent ER Physicians' Class Claim. Any problem that may arise between the class claim and the individual claims could be ameliorated through the abatement of the latter. The only differences among those claims (if any) are with respect to the requested relief, as they are on all fours with each other with respect to liability and legal theories. If the Debtors (or others) dispute these claims, they will likely be disputed regardless of whether class treatment is permitted. Rather, class treatment would streamline the resolution of any disputes over Independent ER Physician claims (see Section II(B)(2)(e)(ii), *infra*, concerning the superiority of class treatment).

25. Furthermore, the Debtors have known of the Independent ER Physician Class members' claims long before their bankruptcy filing. The Independent ER Physician Class Action has been pending since 2018 and Purdue has defended its interests through other proceedings related to health care providers,[12] as well as in many analogous cases brought by states,

---

[12] The Debtors filed motions to dismiss (in both instances jointly with other manufacturers) in (1) the bellwether case in the MDL filed by West Boca Hospital, No. 18-op-45530-DAP (N.D. Ohio June 29, 2018), and (2) an action pending in Arizona state court. *Tucson Med. Ctr. v. Purdue Pharma, L.P., et al.*, Case No. C20184991 (Super. Ct. Pima Co., Ariz. Feb. 6, 2019).

municipalities and other classes of creditors. Thus, it cannot be credibly argued that the filing of the Class Proof of Claim would result in undue delay of the administration of these cases. Rather, a class claim "will promote efficiency by placing potentially thousands of individual claims before the court in a single class claim with competent counsel representing the interests of the class." *Pacific Sunwear*, 2016 WL 3564484, at *6.

### 2. *Musicland* Factor 2: That A Class Was Not Certified Prior To The Bankruptcy Is Not A Sufficient Reason To Prevent Class Treatment.

26. Although the Independent ER Physician Class Action was filed in 2018, no class has yet been certified because the case is  stayed pending further order of the MDL Court.

27. Nevertheless, the lack of pre-petition certification is *not*, on its own, a sufficient basis for the Court to decline to exercise its discretion to permit the Independent ER Physicians' Class Claim. *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017) (noting that a class was not certified prepetition but stating, "[n]onetheless, the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023 in these circumstances.") (*citing In re Kaiser Grp. Intern., Inc.*, 278 B.R. 58, 62–63 (Bankr. D. Del. 2002) (allowing the filing of a class proof of claim where class not certified pre-petition); *Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012) (same); *In re MF Glob. Inc.*, 512 B.R. 757, 763–65 (Bankr. S.D.N.Y. 2014) (same); *In re Connaught Grp., Ltd.*, 491 B.R. 88, 98–100 (Bankr. S.D.N.Y. 2013) (same). Thus, the fact that the Debtors filed for bankruptcy protection prior to the expected certification of a class should not affect the Independent ER Physicians' ability to obtain class relief here.

### 2. *Musicland* Factor 3: Whether the Members Of The Putative Class Received Notice Of The Bar Date.

28. Admittedly, the Debtors attempted to cast a wide net with respect to notice of the Bar Date. That notwithstanding, many members of the Independent ER Physician Class most likely did not file proofs of claim even if they *did* receive actual notice of the Bar Date. First, as set forth in the Masiowski Decl., the legal basis of their claims against the Debtors requires sophisticated legal analysis to recognize the contours of the claim. Second, particularly for putative class members working in smaller hospitals, class members' individual damages may be modest and the task of calculating them may appear prohibitively difficult for those unfamiliar with appropriate methodologies. These are tangible and meaningful obstacles to effective individual action, which effectively would result in the disenfranchisement of many class members and militate strongly in favor of the application of Rule 7023. Thus, this factor supports applying Rule 7023 even under ordinary circumstances.

29. But present circumstances are anything but ordinary for America's Independent ER Physicians, which further support the application of Rule 7023. Independent ER Physicians in the putative class, at all material times, are currently, and likely will be for a long time, addressing the extraordinary healthcare calamity caused by the COVID-19 pandemic. Masiowski Decl. ¶15. COVID-19 presents an existential medical crisis for ER Physicians, which are deluged with critical care issues relating to their patients. *Id.* It also presents a financial and administrative crisis, because of staff furloughs, and the costs associated with providing COVID-19-related care.  This has put Independent ER Physicians under enormous financial pressure. *Id.* Independent ER Physicians often lack the human or financial resources necessary to complete an individual proof of claim. *Id.* ¶16. The damages report requires the expert to collect, compile, analyze and otherwise examine

14

extensive data by the Independent ER Physician. *Id.* Although the Bar Date was extended to July 30, 2020, many Independent ER Physicians still would not have the financial and other means with which to timely file a proper individual claim (i.e., one that complies with all the requirements of the proof of claim to state when the Independent ER Physician was "first injured," to describe the conduct leading to the injury, to describe "all alleged causes of action" and "legal theories," to identify "every category of damage," and to quantify the claim). Thus, even if all pertinent Independent ER Physicians received actual notice of the Bar Date, the significance of this *Musicland* factor under the current extraordinary, unprecedented and all-consuming healthcare crisis should be relaxed. *See, e.g., In re Chateaugay Corp.*, 104 B.R. at 632 ("any potential marginal increase in delay or in difficulty of valuation of claims would be justified in order to protect the rights of small claimants . . . to be represented by the filing of a class proof of claim."); *see also Hercules Inc. v. Envtl. Prot. Agency*, 598 F.2d 91, 126 (D.C. Cir. 1978) (rule of ancient origin provides that "expedition in protecting the public health justifies less elaborate procedure than may be required in other contexts.") (citations omitted).

30. Because the great weight of the *Musicland* factors favors applying Rule 23, the Court should exercise its discretion to permit the Independent ER Physicians to file their Proof of Claim on a class-wide basis.

**B. Applying Rule 7023, The Court Should Grant The Independent ER Physician ER Physician' Motion to Proceed As A Class.**

31. Once the Court has exercised its discretion to extend Rule 7023 to the Independent ER Physicians' Class Claim, the next inquiry is whether to certify the class for which the Proof of Claim governs.

32. Class actions in federal court are governed by Fed. R. Civ. P. 23. To maintain a class action under Rule 23, the class must satisfy the four requirements of Rule 23(a)–numerosity, commonality, typicality, and adequacy–as well as meet one of the three conditions of Rule 23(b). *See* Fed. R. Civ. P. 23(a)–(b). Under Rule 23(b)(3), common questions of law or fact must "predominate over any questions affecting only individual [class] members" and the class action must be "superior to other available methods" of adjudicating the controversy.

33. By this Motion, and for the purposes of its Proof of Claim, the Independent ER Physicians seek to certify the Independent ER Physician Class as follows:

> All independent emergency room physicians in the United States which treated patients with opioid-related conditions specifically, opioid overdose and opioid misuse disorders. within the applicable statute of limitations.

> Excluded from the Class are any Independent ER Physicians (1) that file their own claim, and/or (2) are directly or indirectly owned or operated by (a) Debtors or Debtors' affiliated entities, or (b) the federal government.

34. For the reasons stated below, the Independent ER Physicians' Class Proof of Claim satisfies all the requirements of Fed. R. Civ. P. 23.

35. A court should certify a class where, as here, the class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy), as well as one of the three subsections of Rule 23(b) (Independent ER Physicians' claim meets the requirements of Rules 23(b)(3) (superiority and predominance)). *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999); *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

36. The Supreme Court recently reiterated that a trial court must conduct a "rigorous analysis" to confirm that Rule 23's requirements have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013) (*citing In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013)). Thus, at the class certification stage, inquiry into the merits of plaintiffs' claims is restricted:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (*citing Wal-mart Stores*, 564 U.S. at 351 n.6). In other words, for purposes of evaluating a motion for class certification, a court should assume that the substantive allegations of the complaint generally are true and not inquire into the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met"); *Whirlpool*, 722 F.3d at 851–52 ("[the courts] may not turn the class certification proceedings into a dress rehearsal for the trial on the merits.") (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Federal Rule of Civil Procedure 23 are easily met.

### 1. The Independent ER Physicians Satisfy All The Rule 23(a) Factors

### a. (Numerosity) The Class Is So Numerous That It Is Impracticable To Bring All Class Members Before The Court.

37. To demonstrate numerosity, the movant must show that "the class is so numerous that joinder of all members is impracticable" Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). "Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *In re DaimlerChrysler AG Secs. Litig.*, 216 F.R.D. 291, 295 (D. Del. 2003) (there is no "rigid minimum number of class members necessary to warrant certification; rather, joinder of all members need only be impractical, not impossible); *Robidoux*, 987 F.2d at 935 ("[i]mpracticable does not mean impossible.") (citations omitted); *Stewart v. Abraham*, 275 F.3d 220, 227–28 (3rd Cir. 2001) ("[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

38. Here, the proposed Class consists of all Independent ER Physicians that have provided opioid-related care for opioid-related conditions specifically, opioid overdose and opioid misuse disorders. and that have not otherwise filed their own claims. The proposed Class would include the vast majority of (well over 1,000) Independent ER Physicians, at all times material, in the United States. *See* Declaration of Michael Masiowski, M.D., ¶2. Because of the large number of putative class members and their geographical distribution throughout the United States, joinder is highly impractical, if not impossible.

### b. (Commonality) Common Factual And Legal Questions Exist.

39. Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That requirement may be satisfied if plaintiffs "demonstrate[ ] that the class members have suffered the same injury." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-mart Stores*, 564 U.S. at 350). It "simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Id.*; *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (commonality "is satisfied if there is a common issue that 'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'") (*quoting Wal-mart Stores*, 564 U.S. at 350).

40. Courts have observed that:

> the commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class member[s], as 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact in common with the grievances of the prospective class.'

*Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) (*quoting Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3d Cir. 2001)). Thus, this requirement is "easily met." *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

41. This prerequisite readily is satisfied here because the factual liability and causation issues, as well as the legal theories asserted, are substantially identical for all Independent ER Physicians in the various pending actions that have been brought. Here, the Independent ER Physicians have identified the following issues common to the proposed Class:

19

a.  Did the Debtors use false and deceptive statements and omissions to market opioids?

b.  Did the Debtors market opioids by misrepresenting the risks and benefits of opioids?

c.  Did the Debtors fail to monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids?

d.  Did the Debtors fail to monitor, detect, investigate, refuse to fill, and report orders of prescription opioids which they knew or should have known were likely to be diverted for nonmedical purposes?

e.  Did the Debtors conduct the affairs of an enterprise through a pattern of unlawful or otherwise prohibited activity?

f.  Did the Debtors conspire to conduct the affairs of an enterprise through a pattern of unlawful or otherwise prohibited activity?

g.  Did the Debtors negligently manufacture, market, and sell opioids?

h.  Did the Debtors negligently sell opioids?

i.  Did the Debtors wantonly, recklessly, or with gross negligence manufacture, market, and sell opioids?

j.  Did the Debtors commit common-law fraud or violate state statutes proscribing the use of unfair and deceptive acts in commerce by making false representations of material fact and by concealing material facts about opioids? and

k.  Are the remediation costs incurred by members of the Class a direct and proximate result of the Debtors' acts and omissions?

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### c. (Typicality) The Independent ER Physicians Are Typical of The Class.

42. Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (*quoting Caridad v. Metro-North*, 191 F.3d at 293); *see also In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (to establish typicality under Rule 23(a)(3), the movant must demonstrate that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability") (*quoting Robidoux*, 987 F.2d at 936).

43. Like commonality, typicality is "broadly defined" and "focus[es] on similar aspects of the alleged claims." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001) (*quoting Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). "The [typicality] requirement is not onerous," and courts liberally construe it. *Int'l Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006).

44. Rule 23(a)(3) is satisfied because the Independent ER Physician class representatives and the members of the proposed Class were all victims of Purdue's (and the other manufacturers') fraudulent misrepresentations concerning the safety and efficacy of their products, as well as the conduct of all defendants with respect to the distribution of the products (including the failure to report suspicious orders).

### d. (Adequacy) The Independent ER Physicians and Their Attorneys Are Adequate Representatives.

45. The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Second Circuit has held that under Rule 23(a)(4), "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

46. The Independent ER Physicians submit that there are no conflicts between them and the proposed Class because the Independent ER Physicians and members of the proposed Class all treated opioid-related conditions specifically, opioid overdose and opioid misuse disorders. and are seeking the same categories of damage based on the same legal theories. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.") (internal quotation marks and citation omitted). Indeed, a conflict "must be more than merely speculative or hypothetical before a named representative can be deemed inadequate." *Bradburn v. 3M*, No. Civ. A. 02-7676, 2004 WL 1842987, at *4 (E.D. Pa.)    Aug. 18, 2004) (quoting 5 JAMES WM. MOORE, ET AL, MOORE'S FEDERAL PRACTICE ¶ 23.25[4][b][ii] (3d ed. 2003)). Here, no such conflict exists.

47. Rule 23(g) also requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The

proposed Class is represented by counsel with extensive experience in and class action litigation. They have prosecuted the class claims vigorously, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("[i]n absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation.").

48. The lead firm representing the Independent ER Physicians (and seeking appointment as Class Counsel) – Paul S. Rothstein, P.A. – has considerable class action experience and successfully led a number of class actions involving consumer protection laws. *See* Declaration of Paul S. Rothstein.

### 2. The Independent ER Physicians Satisfy The Requirements Of Rule 23(b)(3)

49. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must *predominate* over any questions affecting only individual members; and (2) class resolution must be *superior* to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor* 521 U.S. 591, 614–15 (1997); *Myers v. Hertz*, 624 F.3d at 547. Both Rule 23(b)(3) elements are satisfied here.

### a. (Predominance) Common Questions Predominate Over Individual Issues.

50. The Second Circuit has observed that the purpose of the predominance requirement is to 'ensure [] that the class will be certified only when it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Myers*,

624 F.3d at 547. The Rule does not require a plaintiff seeking class certification to prove that each element of the claim is "susceptible to class-wide proof." *Whirlpool*, 722 F.3d at 859 (citation omitted). Rather, predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d at 547 (citations omitted). Therefore, the distinction between individual and common questions is a focal point of the predominance analysis. *In re Petrobras Secs.*, 862 F.3d 250, 270–71 (2d Cir. 2017) (*citing Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). The predominance inquiry mitigates the risk of individualized questions permeating the litigation by "ask[ing] whether the common, aggregation enabling, issues in the case are *more prevalent or important* than the non-common, aggregation-defeating, individual issues.'" *Id.* (*quoting Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016)) (emphasis in the original).

51. When Rule 23 is the mechanism to redress alleged RICO violations, predominance and commonality are satisfied if each element of the alleged RICO violation involves common questions of law and fact capable of proof by evidence common to the class. *See, e.g., In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("fraud claims based on uniform misrepresentations to all members of a class 'are appropriate subjects for class certification' because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentation create 'no need for a series of min-trials'" (*citing Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)); *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015) (citing In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 269–70 (3d Cir. 2009); *Klay v. Humana, Inc.*, 382

F.3d 1241, 1257–58 (11th Cir. 2004) (physician class certification upheld on appeal where the 'doctors' RICO claims were "not simply individual allegations of underpayments lumped together," but rather focused on a centralized corporate conspiracy to defraud, which could be proven through generalized evidence–and which, absent certification, would have to be reproven in each case). This is true even if "establishing an injury is not as conducive to common proof[,]" so long as a court is "satisfied that the plaintiffs have presented a plausible theory for proving a class-wide injury as a result of the racketeering activities of the alleged enterprises at issue[.]" *Reyes*, 802 F.3d at 489 (*citing In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 270; *Neale v. Volvo Cars of North Am.*,794 F.3d 363, 374–75, n.10 (3d Cir. 2015))

52. Moreover, any inability to calculate *damages* (as opposed to fact of injury) on a classwide basis will not, on its own, bar certification. *Reyes*, 802 F.3d at 489 (*citing Neale,* 794 F.3d at 374–75, n.10 (citing many cases on this point)). *Accord In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). This is true as long as the common issues still outweigh the individual ones, *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *Whirlpool*, 722 F.3d at 861 ("[i]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)).

53. The Independent ER Physicians  allege a single conspiracy relating to the sale and distribution of opioids from which all proposed class members' injuries arise, issues

common to the proposed class members–for example, the existence and scope of the conspiracy among the defendants (including the Debtors), the impact of defendants' (including the Debtors') misrepresentations and omissions, the impact of defendants' (including the Debtors') failures to report suspicious orders, and irregularities in opioid distribution patterns. These issues predominate over any individual questions and, therefore, class treatment of the Independent ER Physician Class' claims is appropriate. Furthermore, the evidence that will prove that a violation as to one class member is common to the entire Independent ER Physician Class and will be sufficient to prove it as to all the violative conduct of Purdue (and the other defendants) does not depend on the individual class members' separate conduct.

54. Here, issues common to the proposed Class predominate in this case–all the Independent ER Physicians incurred costs that were caused by Purdue's (and the other defendants') illegal activities. First, common issues predominate with respect to liability. Whether Purdue (and the other defendants) violated RICO and state common law will be determined by using evidence common to all class members. This is all common evidence that each class member would use to prove its claim if the Class Proof of Claim were not permitted to proceed as a class action. Second, common issues also predominate as to the relief requested. Class counsel, and their experts, would adopt the same methodology, for all Independent ER Physicians in the Independent ER Physician Class, for calculating the prospective costs of remediating the harm caused by the Debtors. Thus, common issues overwhelmingly predominate. The presence of these common issues of liability and impact predominate over any individual issues and strongly support certification of the proposed Independent ER Physician Class.

### b. (Superiority) The Filing Of A Class Claim Is The
### Superior Method Of Proceeding.

55. Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. Class actions can be a superior litigation tool "precisely because they facilitate the redress of claims where the costs of bringing individual claims outweigh the expected recovery." *U.S. Foodservice*, 729 F.3d at 130 (*citing Amchem*, 521 U.S. at 617). In other words, "[s]uperiority mandates that the district court determine that the class action is the best method of fairly and efficiently resolving the controversy." *Johnston*, 265 F.3d at 185.

56. Moreover, the superiority of class certification over other available methods is measured by consideration of certain factors enumerate in the Rule, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (although the four factors "structurally, apply to both predominance and superiority, they more clearly implicate the superiority inquiry.").

57. Here, compared to the alternative of innumerable claims brought by individual class members, a class claim is clearly the superior method of adjudication. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) ("[m]ultiple lawsuits brought by thousands of consumers and third-party payers in seventeen different states would be costly, inefficient and would burden the court system."); *Microsoft I-V Cases*, No. J.C.C.P. No. 4106, 2002-2 Trade Cas. ¶ 73,013 at 88,564 (Cal. Sup. Ct. Aug. 29, 2000) ("to the extent that purchasers of large quantities of Microsoft software should elect to pursue

their individual claims, denying class treatment could result in repetitious litigation and inconsistent adjudication of similar issues and claims.").

58. The interests of the class members in this case in individually controlling the pursuit of separate claims also are outweighed by the efficiency of the class mechanism. Thousands of Independent ER Physicians provided opioid-related care; resolving these claims in the context of a class claim would conserve both judicial and private resources and preserve the resources of the estate and expedite a recovery. *See, e.g., In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 411–12 (S.D. Ohio 2007) ("[r]epeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results.").

## C.    Independent ER Physicians Request the Court Grant any Necessary Relief from the Bar Date for the Filing of this Motion for Class Treatment.

59. Nothing in the Bar Date Order(s) sets a deadline to move pursuant to Bankruptcy Rule 9014 for the application of Bankruptcy Rule 7023 and Rule 23.

60. On June 12, 2020, ER Physicians submitted a Proof of Claim on behalf of the proposed Class[13] which they seek to represent. Attached to that Proof of Claim was the first one

---

[13] Class proofs of claim are permissible in bankruptcy proceedings. *See, e.g., In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4-5 (S.D.N.Y. 2005) (adopting approach set forth in Matter of Am. Reserve Corp., 840 F.2d 487 (7th Cir. 1988), which held that class proofs of claim may be allowed at the discretion of the bankruptcy court); *In re Woodward & Lothrop Holdings, Inc*., 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997); *see also Gentry v. Siegel*, 668 F.3d 83, 91 (4th Cir. 2012) ("In construing the Bankruptcy Rules to permit the filing of a class proof[] of claim, we join the vast majority of other courts that have considered the issue."). "The legislative history of the Bankruptcy Code supports the conclusion that class proofs of claim are valid," because "[w]hile the legislative history is silent on the specific issue, it evinces a congressional intent to open bankruptcy proceedings to the widest possible range of 'players.'" *In re Charter Co*., 876 F.2d 866, 870 (11th Cir. 1989)

hundred pages of the Class Action Complaint in the pending (stayed) Opioid Litigation

MDL. (Declaration of Paul S. Rothstein, ¶¶7-8).

61. Before the Bar Date, Undersigned Counsel and staff had several communications with

the Prime Clerk representatives regarding the filing of the Class Proof of Claim. The

Prime Clerk office personnel never indicated that a class claim would not be valid

without court approval before filing. (Declaration of Paul S. Rothstein, ¶17).

62. On July 23, 2020, Independent ER Physicians mailed a complete version of the Class

Action Complaint to the Prime Clerk. (Declaration of Paul S. Rothstein, ¶¶11-12).

63. Independent ER Physicians have always had a distinct financial interest in their class

litigation against Debtors, which is not subsumed within the Hospital Class Claims. In

fact, Independent ER Physicians at all material times, controlled their own billing and

revenue stream entirely separate from the hospital entity. (Declaration of Paul S.

Rothstein, ¶15). As such, the Independent ER Physicians have an independent interest in

recovering as creditors and are not adequately represented by the Hospital Class Claims.

64. Although other Class Claim Motions were filed before the Bar Date, Independent ER

Physicians are not untimely by moving for the relief requested.

65. Bankruptcy Rule 9014 provides that "[t]he court may *at any stage* in a particular matter

direct that one or more of the other rules in Part VII shall apply." FED. R. BANKR. P.

9014 (*emphasis added*). This provision of Bankruptcy Rule 9014 contemplates the

application of Bankruptcy Rule 7023 and Rule 23 to a contested matter, at the discretion

of the bankruptcy court.

66. This Court has long held that " Proofs of claim filed on behalf of a class may be filed as

of right and in such circumstances the bankruptcy court must exercise its discretion,

pursuant to rule 9014 to apply or not apply Rule 7023, once an objection has been made to those claims." *In re Chateaugay Corp.*, 104 B.R. 626, 634 (S.D.N.Y.,1989)

67. Recognizing the great deference afforded to the Court under Bankruptcy Rule 9014, ER Physicians request to whatever extent it is necessary – relief from the Bar Date for their Motion for Class Treatment.

68. ER Physicians maintain that the filing of the Motion for Class Treatment after the Bar Date does not prohibit the Court from exercising its broad discretion under Bankruptcy Rule 9014 in deciding whether to apply or not apply Rule 7023 and Rule 23.

69. This request is reasonable and will not cause undue delay to the administration of this chapter 11 case.

70. In fact, the Court adjourned a hearing on the Class Claim Motions "until the first possible hearing date under the Case Management Order that is at least three (3) days after the Termination Date" [Dkt. No. 1514] whereas the Termination date defined in the Mediation Order as "termination of the mediation" [Dkt. No. 895]. To the best of undersigned counsel's knowledge, the Termination Date has not occurred, and no hearing is set on the other Class Claim Motions.

71. To that end, Independent ER Physicians request that the Court adjourn Independent ER Physicians' Motion for Class Treatment until some future time when the Court hears the other Class Claim Motions.

**D.    Independent ER Physicians Request Inclusion in Future Mediation.**

72. The Court entered a Mediation Order on March 4, 2020 [Docket No. 895], directing certain parties, including other putative Class Claimants, to mediation.

73. ER Physicians seek additional relief to be included in future mediation sessions, as a commonly interested party, pending the Courts ruling on this Motion and any future Class Claim Motions.

74. Because Independent ER Physicians at all material times, controlled their own billing and revenue stream entirely they were separate from the hospital entity and therefore have an distinct interest in making a claim separate and apart from the Hospital Class Claimants.

75. As a condition to participation in the mediation, Independent ER Physicians will sign and abide by the Protective Order in place.

## V. CONCLUSION

For all the foregoing reasons and authorities, the Independent ER Physician respectfully request that this Court (1) exercise its discretion pursuant to Fed. R. Bankr. P. 9014(c) and apply Fed. R. Bankr. P. 7023 to the Independent ER Physician' Proof of Claim; (2) appoint counsel for the Independent ER Physician as Class Counsel; (3) to the extent necessary, grant relief from the Bar Date; (4) enter an order including Independent ER Physicians in future mediation; and (4) grant such further relief as this Court deems just and equitable under the circumstances.


Dated: August 27, 2020

Respectfully submitted,


PAUL S. ROTHSTEIN, P.A.

*/s/ Paul S. Rothstein*
Paul S. Rothstein, P.A.
Bar No.: 310123
626 NE 1st Street
Gainesville, FL 32601
Ph: (352)376-7650
PSR@RothsteinForJustice.com
 *Pro Haec Vice Pending*
*Attorneys for the ER Physicians*

31