**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.* [1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE AD HOC COMMITTEE ON ACCOUNTABILITY'S
OPPOSITION TO DEBTOR'S MOTION AUTHORIZING
IMPLEMENTATION OF A KEY EMPLOYEE INCENTIVE PLAN
AND KEY EMPLOYEE RETENTION PLAN**

Eisenberg & Baum, LLP
Michael S. Quinn
24 Union Square East, Fourth Floor
New York, New York  10003
(212) 353-8700

Counsel to the Ad Hoc Committee on Accountability

---

[1] The debtors in these chapter 11 cases ("Debtors" or "Purdue"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014) (collectively, the "Bankruptcy Cases").

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii
INTRODUCTION ................................................................................................................. 1
ARGUMENT ........................................................................................................................ 1
CONCLUSION .................................................................................................................... 5

# **TABLE OF AUTHORITIES**

**Cases**

Estate of Lay v. Comm'r, 2011 Tax Ct. Memo, T.C. Memo 2011-208, 102 T.C.M. (CCH) 202 ................................................................................................................ 4

United States v. Ebbers, 458 F.3d 110, 117 (2d Cir. 2006). ...................................................... 4

**Articles**

*Purdue Pharma Touts Data that Downplay its role in the Opioid Epidemic, New Analysis Shows*, David Armstrong and Jeff Ernsthausen – ProPublica, STAT (September 9, 2019)............1

*Robins CEO at Center of Storm,* Morton, Mintz, The Washington Post, (November 8, 1987) ................................................................................................................ 4

## INTRODUCTION

The Ad Hoc Committee on Accountability ("Committee on Accountability"), by its undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Opposition to the Debtors' Motion Authorizing Implementation of a Key Employee Incentive Plan and Key Employee Retention Plan ("The Bonus Motion").

## ARGUMENT

Purdue's Bonus Motion is premised on a falsehood that the company is "an asset in the fight against the opioid crisis."[2] Purdue is not an asset. It is a liability that, for the past twenty years, has specialized in selling dangerous opioids that have torn apart the lives of individuals and families.[3] Every week that Purdue stays in business, more citizens are hurt and killed. While Purdue and the Sacklers work tirelessly to obfuscate this simple truth, public information revealed during these matters shows that it would be foolish to authorize the payment of bonuses to employees of this criminal enterprise.[4]

The victims of Purdue's unlawful conduct deserve the money far more than Purdue's executives. Approximately one hundred and twenty-two thousand individuals and families have

---

[2] Purdue Pharma L.P., et al., *Notice of Hearing on Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan.* [Docket No. 1674]. Attached as Exhibit A.

[3] David Armstrong and Jeff Ernsthausen – ProPublica, *Purdue Pharma Touts Data that Downplay its Role in the Opioid Epidemic, New Analysis Shows*, STAT (September 9, 2019). Attached as Exhibit B.

[4] "Purdue's misconduct gives rise to criminal liability under such statutes and obtained proceeds from its activity." Federal Government's *Addendum to Proof of Claim of the United States of America* at 19,. Attached as Exhibit C.

filed personal injury claims in this bankruptcy.[5] Purdue will be unable to pay these families anything close to what they owe them.

Tragically, the individuals who filed claims are only a small portion of the people who were hurt by Purdue. United Health Care, a health insurance provider, identified "hundreds of thousands of members who were diagnosed with OUD after receiving a prescription for an opioid manufactured and marketed by Purdue."[6] The claims filed by other health insurance companies were not made publicly available on the Primeclerk website in the weeks after the bar date. The Committee on Accountability believes that other insurance companies are aware of thousands of more patients who were harmed.

The States—both those supporting and opposing the Sackler's settlement scheme—have calculated the cost to society for allowing Purdue to operate. The states claim damages of "more than two trillion dollars."[7] This means that more than one billion dollars of damage is done to our country each week that Purdue is allowed to operate.

The company's criminality is not just historic; according to the States, "[t]o be clear, Purdue's unlawful conduct continues to this day in the form of continued sales based on the deceptive and unfair marketing Purdue engaged in for over a decade."[8]

Career prosecutors at the Department of Justice have determined that "Purdue's misconduct gives rise to criminal liability."[9] As the Committee on Accountability highlighted in

---

[5] Personal Injury Claims Summary. Attached as Exhibit D.
[6] United HealthCare Services, Inc. *Attachment to Proof of Claim*. Attached as Exhibit E.
[7] States, Territories, and other Government Entities, *Attachment to Consolidated Proof of Claim*. Attached as Exhibit F.
[8] *Id.*
[9] *Supra* Footnote 4.

a filing last spring,10 Purdue gave an illegal bribe to a medical records company, Practice Fusion, to increase sales of its highly addictive opioids.11 This criminal scheme continued under the supervision of the same Purdue executives who would be paid millions of dollars under the Bonus Motion.12 The Department of Justice revealed other recent illegal schemes as well. Purdue also paid off doctors to prescribe opioids and pharmacies to dispense opioids through 2018 under the same executives who are at Purdue today.13 The Committee on Accountability wants the work of those career prosecutors to be respected. Earlier in the opioid epidemic, career prosecutors at the Department of Justice uncovered felony crimes, but were ignored.14 Now, the Committee on Accountability is watching to see whether the Department of Justice leadership supports their line-prosecutors this time.

While no Purdue executive should receive a bonus, granting one to Purdue's CEO should be a crime in and of itself. The schemes laid bare in the federal claims took place under the authority Craig Landau, who was hired by the board of directors in June of 2017.15

Historically, when criminal behavior drives a company into Bankruptcy, the CEO is not paid a bonus. In fact, he usually loses his job. For example, WorldCom's board required Bernie Ebbers to resign months before the company filed for Bankruptcy and years before he was

---

[10] Committee on Accountability, *Memorandum of Points and Authorities in Support of the Ad Hoc Committee on Accountability's Limited Objection to Debtors' Motion*, [Docket No. 1188]. Attached as Exhibit H.
[11] *Supra* Footnote 4 at ¶ 24-25.
[12] *Id.*
[13] *Id.* at ¶ 21-23.
[14] Kirk Ogrosky, *Internal Memorandum – Proposed Indictment of Purdue Pharma LP, The Purdue Frederick Company, Michael Friedman (COO), Howard R. Udell (EVP GC), Paul D. Goldenheim (EVP); Conference scheduled for October 11, 2006*, United States Department of Justice, (October 6, 2006). Available at https://www.posner.com/geraldposner/2020/08/just-unsealed-2006-doj-memo Attached as Exhibit I.
[15] *First Amended Complaint and Jury Demand*, The State of Colorado v. Purdue Pharma, et al., 2018CV33300, CO. Dist. Ct. (2019) at ¶ 47. Attached as Exhibit J

convicted of a crime.16 Ken Lay left Enron two months after the company went into Bankruptcy.17 These were cases where no one died.

In recent cases where victims did die, debtors could not explain why the CEO received a bonus for the period leading up to the bankruptcy. In the infamous Dalkon Shield case, the Department of Justice concluded that "to leave in management those who would knowingly sell unsafe and ineffective drugs or medical devices, who would actively deceive regulatory governmental agencies, or who would hide 'ostrich-like,' head in the sand, from bad news and do nothing to prevent further injuries and death, would do violence to public policy and the public interest."18

Last spring's written request by eleven U.S. Senators to deny Craig Landau a yearly bonus went ignored by the board of directors of Purdue.19 On Monday, September 21, 2020, Senators Tammy Baldwin, of Wisconsin; Richard Blumenthal, of Connecticut; Maggie Hassan, of New Hampshire; Joe Manchin, of West Virginia; and Tina Smith, of Minnesota, once again addressed this issue.20 The Senators are right to be concerned, and the Committee on Accountability calls on members of the Senate and House to convene hearings where Craig Landau and members of the Sackler family can testify in public, under oath so that the nation can learn what really happened at Purdue.

---

[16] United States v. Ebbers, 458 F.3d 110, 117 (2d Cir. 2006). Attached herein as Exhibit K.
[17] Estate of Lay v. Comm'r, 2011 Tax Ct. Memo, T.C. Memo 2011-208, 102 T.C.M. (CCH) 202. Attached herein as Exhibit L.
[18] Morton, Mintz, *Robins CEO at Center of Storm*, The Washington Post, (November 8, 1987). Attached as Exhibit M.
[19] Senator Tammy Baldwin, et al, *Letter to Board of Directors of Purdue Pharma Inc.*, (December 18, 2019). Attached as Exhibit N.
[20] Senator Tammy Baldwin, et al, *Letter to Hon. Judge Robert D. Drain In Re Purdue Pharma*, (September 21, 2020). Available at https://www.baldwin.senate.gov/press-releases/reject-bonus-for-purdue-pharma-ceo Attached as Exhibit O.

## **CONCLUSION**

For the foregoing reasons, the Committee on Accountability respectfully requests this Court deny Purdue's Bonus Motion and grant such other relief as it deems just and appropriate.

[Signature Page Follows]

| | |
|---|---|
| Dated: September 22, 2020<br>New York, NY | Respectfully Submitted,<br><br>Eisenberg & Baum, LLP<br><br>By:  /s/ Michael S. Quinn<br>Michael S. Quinn (mq-1640)<br>24 Union Square East, Fourth Floor<br>New York, New York  10003<br>(212) 353-8700<br>mquinn@eandblaw.com<br>prachmuth@eandblaw.com<br>ebaum@eandblaw.com<br><br>*Counsel to Ad Hoc Committee on Accountability* |

6