# Exhibit E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

# General Opioid Claimant Proof of Claim Form

You may file your claim electronically at PurduePharmaClaims.com via the link entitled "Submit a Claim."

For questions regarding this Proof of Claim Form, please call Prime Clerk at (844) 217-0912 or visit PurduePharmaClaims.com.

Read the instructions at the end of this document before filling out this form. This form is for any person or entity, other than a governmental unit or Native American Tribe, to assert a general unsecured claim against the Debtors based on or involving opioids or their production, marketing and sale, including without limitation, the Debtors' production, marketing and sale of Purdue Opioids, excluding claims for personal injury.

**Do not** use this form to assert a claim against the Debtors seeking damages based on personal injury related to the taking of a Purdue Opioid and/or the taking of another opioid for which You believe Purdue is responsible for Your damages. File such claims on a Personal Injury Claimant Proof of Claim Form.

**Do not** use this form to assert any other pre-petition claims, including secured claims or claims entitled to priority under 11 U.S.C. § 507(a). Secured claims, claims entitled to priority under 11 U.S.C. § 507(a), and non-opioid related claims should be filed on a Non-Opioid Claimant Proof of Claim Form (Form 410). However, if You have a claim against the Debtors based on non-opioid-related injuries or harm, in addition to Your claim based on or involving the Debtors' production, marketing and sale of Purdue Opioids, You may include information related to that claim on the General Opioid Claimant Proof of Claim Form by completing Part 4 of this form.

Creditor (also referred to as "You" throughout) shall provide information responsive to the questions set forth below. Instructions and Definitions are provided at the end of this document. You shall provide information reasonably available to You and are not excused from providing the requested information for failure to appropriately investigate Your claim. Creditor shall supplement its responses if it learns that they are incomplete or incorrect in any material respect.

**You must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim. **Do not send original documents** as they will not be returned, and they may be destroyed after scanning.

Fill in all the information about the claim as of September 15, 2019, the Petition Date. You may also fill in information regarding any claims You believe You may have after September 15, 2019 on this form. This form should be completed to the best of Your ability with the information available to You. If You are unable to answer certain questions at this time, the absence of an answer, by itself, will not result in the denial of Your claim, though You may be asked or required to provide additional information at a later date. You may also amend or supplement Your claim after it is filed.

### Part 1: Identify the Claim

| | | | |
|---|---|---|---|
| 1. Who is the current creditor? | United HealthCare Services, Inc., on behalf of itself, parents, affiliates, and subsidiaries that either administer health plans or offer fully insured health insurance policies | | |
| | Name of the individual or entity to be paid for this claim. If the creditor is a minor (under 18), please provide only the minor's initials. | | |
| | Other names the creditor used with the debtor, including maiden, d/b/a/, or other names used: | | |
| 2. Describe the creditor making the claim. | ☐ Individual<br>☐ Hospital<br>☒ Third Party Payor | ☐ Retirement or Pension Fund Administrator<br>☐ Pharmacy Benefit Manager<br>☐ Other (describe): _____ | |
| 3. Has this claim been acquired from someone else or some other entity? | ☒ No<br>☐ Yes. From whom? _____ | | |
| 4. Where should notices and payments to the creditor be sent?<br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Thomas C. Mahlum, Esq.<br>Robins Kaplan LLP<br>800 LaSalle Ave., Ste. 2800<br>Minneapolis, MN 55402<br><br>Contact phone  612.349.8500<br>Contact email  TMahlum@RobinsKaplan.com | Where should payments to the creditor be sent? (if different)<br><br><br><br><br><br><br>Contact phone _____<br>Contact email _____ | |

General Opioid Claimant Proof of Claim Form                                             page 1

Claim Number: 135053 Date Filed: 07/30/2020

Unique ID: UHCMain
Creditor Name: United HealthCare Services, Inc., on behalf of itself, parents, affiliates, and subsidiaries that either administer

19-23649-shl    Doc 1710-5    Filed 09/22/20    Entered 09/22/20 13:16:28    Exhibit E
Pg 3 of 16

| 5. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____<br>MM / DD / YYYY |
|---|---|---|
| 6. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ | |

**Part 2: Attorney Information (Optional)**

| 7. Are you represented by an attorney in this matter?<br><br>You do not need an attorney to file this form. | ☐ No.<br>☑ Yes. If yes, please provide the following information:<br><br>Robins Kaplan LLP<br>Law Firm Name<br><br>Thomas C. Mahlum, Esq.<br>Attorney Name<br><br>800 LaSalle Ave., Ste. 2800<br>Address<br><br>Minneapolis                    MN              55402<br>City                                    State           ZIP Code<br><br>Contact phone  612.349.8500         Contact email  TMahlum@RobinsKaplan.com |
|---|---|

**Part 3: Information as of September 15, 2019, the Petition Date, About Your Claim**

| 8. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |
|---|---|
| 9. How much is the claim? | $ at least 9,864,972,076 as set forth in attachment   or<br>☐ Unknown. |
| 10. When do You allege You were first injured as a result of the Debtors' alleged conduct? | January / 2008<br>Month         Year |
| 11. Describe the conduct of the Debtors You allege resulted in injury or damages to You.<br><br>Attach additional sheets if necessary. | See attached. |

| | | |
|---|---|---|
| 12. **Describe all alleged causes of action, sources of damages, legal theories of recovery, etc. that You are asserting against the Debtors.**<br><br>Attach additional sheets if necessary. | See attached. | |
| 13. **Please identify and quantify each category of damages or monetary relief that You allege, including all injunctive relief that You seek (for example, actual damages, compensatory damages, punitive damages, and/or penalty damages).**<br><br>Please attach all supporting documentation including, but not limited to, any records supporting Your claims of damages, if You would like (but You are not required), to supplement this proof of claim. <u>Do not</u> include medical records. | See attached. | |
| 14. **Have you ever filed a lawsuit against any of the Debtors at any time?** | ☑ No<br>☐ Yes. If yes, please provide the following information and attach supporting documentation:<br><br>**Case Caption:** _____<br><br>**Court and Case/Docket Number:** _____<br><br>**Attorney Information:**<br>_____<br>Law Firm Name<br><br>_____<br>Attorney Name<br><br>_____<br>Address<br><br>_____<br>City                                                    State                    ZIP Code<br><br>Contact phone _____ Contact email _____ | |

| Part 4: | Non-Opioid-Related Claims | |
|---|---|---|
| 15. Do You believe You have any claims against the Debtors based on <u>non-opioid-related</u> claims or harm? | ☑ No.<br>☐ Yes. If yes, please describe the nature of the claim(s) (Attach additional sheets if necessary). | |
| 16. How much is the claim? | $ _____ or<br>☐ Unknown. | |

### Part 5:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   07/28/2020   (mm/dd/yyyy)

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name    Dr. Rhonda Randall
        First name        Middle name        Last name

Title   Chief Medical Officer

Company United HealthCare Services, Inc.
        Identify the corporate servicer as the company if the authorized agent is a servicer.

Address 9700 Health Care Lane
        Number    Street
        Minnetonka                            MN        55343
        City                                  State     ZIP Code

General Opioid Claimant Proof of Claim Form                                   page 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case. No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## ATTACHMENT TO PROOF OF CLAIM

### I.  Introduction

Purdue Pharma L.P. and its affiliated debtors (collectively, "Purdue" or "Debtors") owe United HealthCare Services, Inc. (collectively with its affiliates, subsidiaries, and parents that either administer health plans or offer fully insured health insurance policies) ("United") a sum of $9,864,972,076 for damages that have been calculated through December 31, 2019 on account of the opioid crisis, together with future damages. The opioid crisis that Debtors unleashed on the United States was the foreseeable result of the fraudulent, multi-year scheme Debtors masterminded to deceive the medical community and patients about the risks and benefits of long-term opioid use.

Debtors' scheme caused millions of Americans to develop Opioid-Use Disorder ("OUD"). Individuals diagnosed with OUD have significantly higher healthcare costs compared to individuals without OUD. United pays, on behalf of itself and its self-insured customers, healthcare benefits and reimbursements for members diagnosed with OUD, and as such has directly borne the excess healthcare costs associated with

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

OUD. Based on the analysis undertaken to date, between January 1, 2008 and December 31, 2019, United paid healthcare benefits and reimbursement for hundreds of thousands members who were diagnosed with OUD after receiving a prescription for an opioid manufactured and marketed by Debtors. The excess healthcare costs United incurred on behalf of these OUD-diagnosed members from 2008-2019 amounted to $9,864,972,076, of which $1,881,205,285 was incurred on behalf of self-funded customers whose plans were administered by United.[2] In addition, United estimates that it will incur an additional $10,444,567,883 in excess healthcare costs due to such OUD-diagnosed members for the time-period 2020-2024, for a total of $20,309,539,959.

Moreover, the Debtors may be jointly and severally liable for United's damages arising from the actions of not just the Debtors, but all of their co-conspirators in connection with the manufacture and marketing of opioids in the United States from 2008 to the Petition Date. Accordingly, the damages figure United submits in this proof of claim represents a highly conservative estimate of the total damages for which Debtors are (jointly and severally) liable. Based on internal analyses of the number of members diagnosed with OUD covered under United-insured or United–administered health plans, United estimates that the true damages figure for which Debtors are liable is many times greater than the claim United submits herewith.[3]

In support of United's proof of claim, it states as follows:

## II. Factual Background

*Purdue Disseminated False and Misleading Statements About Opioids*

Beginning in the 1990s, Purdue spent millions of dollars on promotional activities and materials that falsely deny or trivialize the risks of opioid use, while overstating the benefits of using opioids for chronic pain. Specifically, Purdue falsely and misleadingly:

- Overstated the benefits of opioids for chronic pain;
- Downplayed the risks of addiction;

---

[2] United is continuing to analyze its data and that which is available from other payors and pharmacy benefit managers to finalize this amount because it is likely that additional United members with an OUD diagnosis may have received prescriptions for Purdue manufactured and marketed opioids prior to the member becoming covered by United. It is United's intent to include in this claim the excess costs it incurred in connection with all such members, as well as members for which it has not yet been able to analyze the underlying pharmacy data that received a prescription for a Purdue opioid before being diagnosed with OUD. United reserves the right to amend this claim to further liquidate this amount based on completing the analysis of the data of other relevant payors and pharmacy benefit managers.
[3] United is continuing to liquidate this amount through the analysis of its own data and that of other payors. United reserves the right to amend this claim to include the liquidated amount of the damages arising from Purdue's joint and several liability.

2

- Created and promoted the concept of "pseudoaddiction" and advocated that the signs of addiction should be treated with more opioids;

- Exaggerated the effectiveness of screening tools in preventing addiction;

- Claimed that opioid dependence and withdrawal are easily managed;

- Denied the risks of higher opioid dosages; and

- Exaggerated the effectiveness of "abuse-deterrent" opioid formulations in preventing abuse and addiction.

Purdue developed a well-funded marketing scheme based on deception to persuade the medical community and patients that opioids can and should be used for the treatment of chronic pain, resulting in opioid treatment for a larger group of patients much more likely to become addicted. Purdue did so by deceiving the medical community and patients about the risks and benefits of long-term opioid use by making claims that were not supported by or were contrary to the scientific evidence.

Purdue disseminated these false and misleading statements about opioids using a multi-faceted approach, including:

- Communicating directly with doctors through in-person visits and communications with sales and promotional staff, continuing medical education ("CME") programs, advertisements, websites, and other means;

- Communicating directly with chronic-pain patients through websites, advertisements, publications aimed at the public, and other means;

- Offering promotions through sales representatives who visited doctors and staff in their offices and small group speaker programs;

- Creating, funding, controlling, and operating third-party organizations/"Front Groups," including the American Pain Foundation ("APF"), American Academy of Pain Medicine ("AAPM"), and American Pain Society ("APS"), which communicated directly with doctors and chronic-pain patients to promote opioid use; and

- Enlisting credentialed medical professionals known as "key opinion leaders" ("KOLs") to spread false narratives about the risks and benefits of opioids.

Indeed, Purdue frequently disguised its own role in the deceptive marketing of chronic opioid therapy by funding and working through third parties such as Front Groups and KOLs.

Members of the medical community and patients reasonably relied on Purdue's misrepresentations. As a result of that reasonable reliance, many doctors prescribed

3

Unique ID: UHCMain
Creditor Name: United HealthCare Services, Inc., on behlaf of itself, parents, affiliates, and subsidiaries that either administer

opioids when they otherwise would not have, and many patients requested and obtained opioids when they otherwise would not have.

As a direct result of Purdue's conduct, Opioid addiction rates have skyrocketed over the past decades. Nearly two million Americans have an OUD. According to the NIH's National Institute on Drug Abuse, approximately twenty-one to twenty-nine percent of patients prescribed opioids for chronic pain misuse them. Between eight and ten percent of patients prescribed opioids for chronic pain develop an OUD.

*United's Insurance Coverage and Treatment for Members with OUD*

United provides health care insurance, administration, and/or benefits to insureds or plan participants pursuant to a variety of health care benefit plans and policies of insurance, including group and individual health benefit plans, employer-sponsored benefit plans, and government-sponsored benefit plans. In total, United provides such benefits to roughly fifty million individuals annually.

United offers a variety of commercial insurance plans, including individual plans offered on- or off-exchange and group insurance plans. Patients with OUD may seek coverage from commercial insurance plans. Such plans vary in terms of the services they cover, the facilities and providers they consider to be in-network, the networks they offer, the premiums they charge, and the costs they require members to bear in the form of premiums, coinsurance, copays, and deductibles.

United is the nation's leading provider of Medicare Advantage health benefit products. The Medicare Advantage program provides Medicare beneficiaries with the option to receive their health benefits from a private health plan, such as those run by United, instead of from the Centers for Medicare and Medicaid Services ("CMS"). Private health insurance plans that choose to participate in the Medicare Advantage program agree to assume the risk of providing health benefits to Medicare beneficiaries, whose costs of care would otherwise be borne by Medicare Part B or Medicaid, in exchange for fixed monthly payments from CMS. The payment amounts per member are determined by the bids submitted by Medicare Advantage issuers each year, and those bids are influenced by the costs incurred by the plan.

United is also a leading Medicaid Managed Care Organization ("MCO"), partnering with CMS and individual states to deliver healthcare services to Medicaid-eligible individuals in a manner that manages cost, utilization, and quality. As with its Medicare Advantage health benefit products, in acting as an MCO United accepts a set per member per month (capitation) payment for its services. To the extent its covered Medicaid beneficiaries' health care costs exceed the capitation payments United receives, United bears the economic risk associated with such expenses.

In its capacity as an insurer and as a claims administrator, United processes millions of health care claims each day, and is responsible for administering hundreds

19-23649-shl    Doc 1710-5    Filed 09/22/20    Entered 09/22/20 13:16:28    Exhibit E
Pg 10 of 16

Unique ID: UHCMain
Creditor Name: United HealthCare Services, Inc., on behalf of itself, parents, affiliates, and subsidiaries that either administer

of millions of health care claims every year. United has provided benefits and reimbursement for services associated with Purdue's sale of opioids, including the drugs themselves, and treatment related to any adverse outcomes from chronic opioid therapy, such as overdoses or addiction treatment.

*Impact of the Opioid Epidemic on United and Its Members*

The financial costs of Purdue's illegal conduct have fallen hard on United and its self-funded customers. As the largest insurer and administrator in the United States, the cost impact of covering prescription, medical, and treatment expenses for customers who abused or became addicted to opioids as a consequence of Purdue's misconduct is enormous.

As a direct purchaser of health care services under its fully insured plans, from 2008 to 2019 United incurred approximately $7.98 billion in excess healthcare costs due to members who were diagnosed with OUD after being prescribed an opioid manufactured and marketed by Debtors. This figure includes approximately $5.6 billion in excess medical and treatment benefits, and $2.38 billion in excess pharmacy benefits. In addition, United estimates that its fully insured plans will incur approximately $9.23 billion in excess healthcare costs due to such OUD-diagnosed members for the time-period 2020-2024.

Over the same time-period, United incurred approximately $1.88 billion in excess healthcare costs on behalf of at least 2,610 self-funded customers whose plans covered members diagnosed with OUD after being prescribed an opioid manufactured and marketed by Debtors.[4] This sum includes approximately $1.35 billion in excess medical and treatment benefits, and $530 million in excess pharmacy benefits.[5] In addition, United estimates that it will incur approximately $1.22 billion on behalf of self-funded

---

[4] To the extent that United's continued data analysis referenced in footnote 2 leads to the identification of additional self-funded customers whose members received an OUD diagnosis after receiving Purdue-manufactured and –marketed opioids, United anticipates promptly amending this claim to further liquidate this amount on behalf of such self-funded customers. It is United's intent to include in this claim the excess costs incurred by all self-funded customers that do not file their own proofs-of-claim. To the extent United was aware that a self-funded customer was filing its own claim in this case, it has been excluded from this proof of claim.

[5] *See* footnotes 2 and 3 concerning the further liquidation of these amounts. In accordance with this Court's *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [Dkt No. 800] (the "Bar Date Order"), this is a TPP Consolidated Claim (as defined in the Bar Date Order) on behalf of not only health plans for which United bears the risk, but also for all other plan sponsors and employer groups for which United acts as administrator. United has contemporaneously submitted to the Claims Agent and will provide to the Debtors and the Creditors Committee the highly confidential data required under Paragraph 9 of the Bar Date Order, subject to the terms of the Protective Order (as defined in the Bar Date Order).

customers whose plans will cover such OUD-diagnosed members for the time-period 2020-2024.

From 2008 to approximately 2019, United and its self-funded customers have spent billions of dollars for excess healthcare costs for all members diagnosed with an OUD after receiving a prescription for an opioid from not just Purdue, but also its co-conspirators in the manufacture and marketing of opioids.[6]

## III.   Causes of Action and Bases for Claims

With the foregoing as relevant background, United provides the following list of causes of actions it has against Purdue, which form the basis for United's Proof of Claim and provide a basis for United to recover for the excess healthcare costs Debtors unlawfully imposed on United and United's self-funded customers.[7]

United possesses causes of action against Purdue under numerous state statutes prohibiting consumer fraud, unlawful and deceptive trade practices, and false advertising. The laws of the State of Minnesota (where United is headquartered) are illustrative of the state laws under which Purdue is liable to United:

- **The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69**, provides that "The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, [is an unlawful practice]."

- **The Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13**, provides that "[N]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

- **The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44**, provides that a person engages in a deceptive trade practice when the person "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "represents that goods or services have sponsorship, approval characteristics, ingredients, uses, benefits, or quantities that they do not have;" "represents that goods or services are of a particular standard, quality, or grade, . . . if they are of another;" or "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." "[A]ny person injured by a violation of [these laws]

---

[6] *See* footnote 3 concerning the further liquidation of these amounts.
[7] *See* footnotes 2 and 3 concerning the further liquidation of these amounts.

6

> may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 8.31, subd. 3a.
>
> - **The Minnesota False Advertising Act, Minn. Stat. § 325F.67**, prohibits advertisements containing "untrue, deceptive, or misleading" misrepresentations "with intent to sell or in anywise dispose of merchandise . . . to increase the consumption thereof, or to induce the public in any manner."

The Minnesota Supreme Court has held that "as long as the plaintiff alleges an injury by conduct that violates one or more of the substantive statutes [such as **Minn. Stat. § 325F.69, Minn. Stat. § 325D.13, Minn. Stat. § 325D.44**], it is not necessary . . . to plead that it is a purchaser of the defendant's products." *Certified Question U.S. Dist. Ct. Order v. Philip Morris*, 621 N.W.2d 2, 11 (Minn. 2001).

Purdue's fraudulent, misleading, and deceptive statements and practices relating to the issue of opioid use and health, including intentional misrepresentations regarding the benefits and risks of opioid use, violated these state statutes and inflicted damages on United that United is entitled to recover.

United is likewise entitled to recover damages under similar statutes in other states, including by way of example California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110b, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); Ohio (Oh. Rev. Code § 1345 *et seq.*); New Jersey (N.J. Stat. Ann. §56:8-1, *et seq.*); and Pennsylvania (73 P.S. § 201-2(4)(i)-(xxi), *et seq.*).

Purdue is further liable at common law to United for unjust enrichment. Purdue has been unjustly enriched by its unlawful, deceptive, and wrongful conduct. United has conferred a benefit upon Purdue in the form of significant payments based on claims and charges for medical expenses, treatment costs, and prescriptions associated with plan members with OUD. Purdue has voluntarily received and retained a direct benefit from those payments, and realized record profits in the form of billions of dollars in opioid sales, including sales to United members. Purdue was aware that it was receiving this benefit, and its conduct was designed to bring about the benefit. United is entitled to restitution from Purdue in an amount to be determined at trial.

Purdue is further liable at common law to United for breach of implied warranty. Purdue impliedly warranted to United and United's members that opioids were safe and fit for the purposes for which they were intended. As a result of the breach of Purdue's implied warranties, United suffered injuries and sustained damages compensable under the law in an amount to be determined at trial.

United further possesses statutory, contractual, and/or equitable subrogation claims against Purdue. For example, the Medicare Secondary Payer Statute, 42 U.S.C. §

1395y(b)(2) provides that Medicare shall be the "secondary" payer of medical expenses (including treatment costs) when another source of benefits is available, but may make payments of medical expenses conditioned upon reimbursement from a "primary" payer where there is a reasonable expectation that the primary payer will ultimately pay the expenses. The statute further grants Medicare a subrogation right to the extent of the conditional payment it makes. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii). If a primary plan fails to reimburse Medicare for its conditional payments made in the secondary position, the statute authorizes a private cause of action to recover double damages from the primary plan. *See* 42 U.S.C. § 1395y(b)(3)(A). United made conditional payments on behalf of its Medicare Advantage enrollees with OUD. When United made these payments as a secondary payer, the primary payer was primarily liable for those payments. Because the primary payer has refused to pay, United has standing under 42 U.S.C. § 1395y(b)(3) to bring a private cause of action to recover double damages from the primary payer.

United also has contractual and equitable rights of subrogation to recover damages, on behalf of itself and the self-funded health plans that it administered, to the extent of health benefits paid or provided on behalf of their insured members related to the wrongful conduct of Purdue. Throughout the relevant period, United provided a full spectrum of health benefits in accordance with its obligations under its insurance plans for members with an OUD. United made these payments in full as a secondary payer. Each of these products was provided to members who have been injured by Purdue's unlawful acts. United hereby submits this claim on behalf of each of its members injured by Purdue's wrongful actions to recover the costs of the health care benefits provided to such members arising from Purdue's conduct.[8]

In addition, United possesses other federal and common law causes of action against Debtors, such as under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq*. Indeed, United is an unnamed class member in several actions consolidated before the United States District Court for the Northern District of Ohio in *In re: National Prescription Opiate Litigation* (Case No. 1:17-md-2804). Causes of action that have been asserted against Purdue in the MDL-consolidated third-party payor actions include (1) RICO, 18 U.S.C. §1961, *et seq.*, (2) Public Nuisance (statutory and common law), (3) Negligence, (4) Common Law Fraud, (5) Civil Conspiracy, (6) State Consumer Protection Laws and (7) Unjust Enrichment. *See, e.g.,*

---

[8] Due to the confidential nature of such information, the identity of such members is not annexed hereto and can be provided to the Debtor or other party in interest subject to appropriate protections under the Protective Order. To the extent any former or existing members insured under a United fully insured or self-funded health plan separately seek recovery from Debtors, United, on behalf of itself and its self-funded customers, holds contractual and/or equitable lien rights as to any recovery to the extent of the health benefits paid by United (or its self-funded customer) arising from Debtors' conduct. United reserves all of its rights and remedies concerning the enforcement of such contractual and/or equitable lien rights against the recoveries, if any, of such former or existing members in these cases.

19-23649-shl Doc 1710-5 Filed 09/22/20 Entered 09/22/20 13:16:28 Exhibit E Pg 14 of 16

Unique ID: UHCMain
Creditor Name: United HealthCare Services, Inc., on behalf of itself, parents, affiliates, and subsidiaries that either administer

*Cleveland Bakers and Teamsters Health and Welfare Fund, et al. v. Purdue Pharma, L.P., et al.*, Case No. 1:18-op-45432-DAP (N.D. Ohio, 2018) (bellwether third-party payor action selected in the MDL).

## IV. Calculation of Damages

The damages that Purdue's unlawful conduct has inflicted on United is amenable to quantification. To conduct this quantification, United employed the services of Rawlings Analytics ("Rawlings"). Rawlings receives in the ordinary course of business medical and pharmacy claims data from United and many other third-party payors. Consistent with the approach it undertook for other third-party payors, Rawlings analyzed its vast database to identify members who were diagnosed with OUD after receipt of a prescription for an opioid manufactured by Purdue. Rawlings was then able to calculate the increased healthcare costs associated with those members as compared to like members who had not been diagnosed with OUD.

The most current results of the analysis conducted by Rawlings shows that from 2008 to 2019 United paid health care benefits and reimbursement for hundreds of thousands of members who were diagnosed with OUD after receiving a prescription for an opioid manufactured and marketed by Purdue. The excess healthcare costs United incurred on behalf of these OUD-diagnosed members amounted to at least $9,864,972,076, and United anticipates incurring $10,444,567,883 from 2020 to 2024 in excess healthcare costs associated with such OUD-diagnosed members. This projected sum conservatively assumes a ten percent decline in such costs year-over-year.

Pursuant to consultations with Debtors' counsel, United is not producing the voluminous actual data underlying its Proof of Claim at this time. Should the Debtor or the Court wish to review such data, United will produce it at the appropriate time and subject to appropriate confidentiality and disclosure protections.

## V. Reservation of Rights

The amount of the Proof of Claim is based on the status of United's investigation to date and the data currently available to Rawlings and the work completed by Rawlings to-date. United reserves the right to claim any and all additional amounts now owing or hereafter accrued and owing to United, regardless of whether such amounts are unliquidated, and/or contingent, and/or unmatured, by the Debtors under any applicable law, including treble or punitive damages where appropriate.

To the best of United's knowledge, this Proof of Claim is not subject to any set-off or counterclaim. To the extent the Debtors assert that United owes them any amount, United asserts a right of set-off in such amounts for all amounts owed under this Proof of Claim. In addition, the recitations in this Proof of Claim are not intended in any way to limit United's rights with respect to the legal basis for making the Proof of Claim, and

9

if the Proof of Claim is challenged, United shall not be deemed to have waived any legal position it might otherwise have to the amount of such Proof of Claim.

United also expressly reserves the right to file further pleadings and documents to amend or supplement this Proof of Claim in any respect from time to time to: (i) restate and/or update the liquidated and unliquidated components of the Proof of Claim, including based on the additional data analysis as described herein; or (ii) reflect additional claims under any agreements by and between United and the Debtors to the extent discovered after the filing hereof.

Filing of this Proof of Claim is not and shall not be deemed or construed as: (a) an election of remedies; (b) a consent by United to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving United; (c) a consent by United to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. §157(e) or otherwise; (d) a waiver of United's right to a trial by jury in any proceeding so triable herein or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. §157(b)(2), and whether such jury trial is pursuant to statute or the United States Constitution; (e) a waiver of the right of United to have final orders in non-core matters or constitutionally non-core matters entered only after *de novo* review by a District Court judgment; (f) a waiver or limitation of any rights of United concerning the Proof of Claim, including, without limitation, a waiver of rights, claims, actions, defenses, set-offs or recoupments to which United claims it is or may be entitled to under the Agreement, in law or in equity, all of which rights, claims, actions, defenses, set-offs and recoupments are expressly reserved by United; or (g) an admission by United that any property held by Debtors (or any debtor affiliate) is property of the estate.

## VI. Conclusion

The opioid epidemic that Purdue unleashed through its unlawful conduct has caused United damages through December 31, 2019 of $9,864,972,076, and is anticipated to cause damages in the amount of $10,444,567,883 during the subsequent five year period. United is entitled to recover these sums from Purdue pursuant to numerous state, federal, and common law causes of action, as outlined above.



# Purdue Pharma L.P. (19-23649)

## CONSOLIDATED CLAIM RECEIPT

## CONFIRMATION SHEET

RECEIVED FROM:   SHIPMAN & GOODWIN – United HealthCare Services, Inc.

DATE RECEIVED:   7-30-2020