# Exhibit F

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors. | **(Jointly Administered)** |

# Governmental Opioid Claimant Proof of Claim Form

**You may file your claim electronically at <u>PurduePharmaClaims.com</u> via the link entitled "Submit a Claim."**

**For questions regarding this Proof of Claim Form, please call Prime Clerk at (844) 217-0912 or visit <u>PurduePharmaClaims.com</u>.**

Read the instructions at the end of this document before filling out this form. This form is for governmental units and Native American Tribes to assert a general unsecured claim against the Debtors based on or involving opioids or their production, marketing and sale, including without limitation, the Debtors' production, marketing and sale of Purdue Opioids.

<u>Do not</u> use this form to assert any other pre-petition claims, including secured claims or claims entitled to priority under 11 U.S.C. § 507(a). Secured claims, claims entitled to priority under 11 U.S.C. § 507(a) and non-opioid related claims should be filed on a Non-Opioid Claimant Proof of Claim (Form 410).

Creditor (also referred to as "You" throughout) shall provide information responsive to the questions set forth below. Instructions and Definitions are provided at the end of this document. You shall provide information reasonably available to You and are not excused from providing the requested information for failure to appropriately investigate Your claim. Creditor shall supplement its responses if it learns that they are incomplete or incorrect in any material respect.

For Part 3, governmental units that have filed litigation against the Debtor(s) that is part of the federal multidistrict litigation in Ohio, *In re National Opiate Litigation*, MDL No. 17-02804 (N.D. Ohio 2017) ("Ohio MDL"), and have submitted a Government Plaintiff Fact Sheet in connection with that proceeding, may rely on their Government Plaintiff Fact Sheet to complete the questions in Part 3. For the avoidance of doubt, only governmental units who have filed litigation that is part of the Ohio MDL, and not governmental units that are part of the negotiation class in the Ohio MDL but have not otherwise filed litigation that is part of the MDL, may rely on their Government Plaintiff Fact Sheet to complete the questions in Part 3.

**You must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, including the supporting documentation requested herein. **Do not send original documents** as they will not be returned, and they may be destroyed after scanning.

Fill in all the information about the claim as of September 15, 2019, the Petition Date. You may also fill in information regarding any claims You believe You may have after September 15, 2019 on this form. This form should be completed to the best of Your ability with the information available to You. If You are unable to answer certain questions at this time, the absence of an answer, by itself, will not result in the denial of Your claim, though You may be asked or required to provide additional information at a later date. You may also amend or supplement Your claim after it is filed.

**Part 1:** Identify the Claim

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | The States, Territories, and other jurisdictions listed on Schedule 1 (collectively, the "Claimants"). |
| | | Name of the entity to be paid for this claim. |
| | | Other names the creditor used with the Debtor(s): _____ |

| | | |
|---|---|---|
| 2. | **Has this claim been acquired from someone else or some other entity?** | ■ No. |
| | | ☐ Yes. From whom? _____ |

| | |
|---|---|
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) |

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| See question 6.<br>Name | Name |
| Number        Street | Number        Street |
| City                State            ZIP Code | City                State            ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email _____ | Contact email _____ |

| 4. | Does this claim amend one already filed? | ■ No. |
|----|----|----|
| | | ☐ Yes.  Claim number on court claims registry (if known)_____  Filed on ____/____/____  MM / DD / YYYY |

| 5. | Do You know if anyone else has filed a proof of claim for this claim? | ■ No. |
|----|----|----|
| | | ☐ Yes. Who made the earlier filing?  _____ |

## Part 2:   Attorney Information (Optional)

| 6. | Are you represented by an attorney in this matter?<br><br>You do not need an attorney to file this form. | ■ No.<br>☐ Yes. If yes, please provide the following information: |
|----|----|----|

The Hon. Melanie Cyganowski (Ret.)
Counsel to the Ad Hoc Committee of
Governmental and Other Contingent Litigation Claimants
Otterbourg P.C.
230 Park Avenue
New York, New York 10169
(212) 905-3677
mcyganowski@otterbourg.com

Andrew M. Troop
Counsel to the Ad Hoc Group
of Non-Consenting States
Pillsbury Winthrop Shaw Pittman LLP
31 W. 52nd Street
New York, New York 10019
(212) 858-1660
andrew.troop@pillsburylaw.com

See Schedule 10 for each Claimant's respective attorney(s) in this matter.

## Part 3:   Information as of September 15, 2019, the Petition Date, About Your Claim

| 7. | When do You allege you were first injured as a result of the Debtors' alleged conduct? | 05 / 1987<br>Month     Year |
|----|----|----|
| | | ☐ If You believe that this question has been answered in the Government Plaintiff Fact Sheet submitted in the Ohio MDL, *In re National Opiate Litigation*, MDL No. 17-02804 (N.D. Ohio 2017) ("Ohio MDL"), and You wish to rely on Your statements made in the Government Plaintiff Fact Sheet to answer this question, check this box. |
| | | ☐ If You believe that this question has been answered in a complaint that you have filed against the Debtor(s), and You wish to rely on Your statements made in that complaint to answer this question, check this box. |

| 8. | How much is the claim? | $  $2.156 trillion (unliquidated); see Attachment  ;  or |
|----|----|----|
| | | ☐ If You believe that this question has been answered in the Government Plaintiff Fact Sheet submitted in the Ohio MDL, and You wish to rely on Your statements made in the Government Plaintiff Fact Sheet to answer this question, check this box. |
| | | ☐ If You believe that this question has been answered in a complaint that you have filed against the Debtor(s), and You wish to rely on Your statements made in that complaint to answer this question, check this box. |
| | | ☐ Unknown. |

| 9. | Describe the citizens and entities that You represent in this claim: | The States, Territories, and other jurisdictions, and the citizens, residents and governmental entities of the States, Territories, and other jurisdictions, listed on Schedule 1. |
|----|----|----|
| | | ☐ If You believe that this question has been answered in the Government Plaintiff Fact Sheet submitted in the Ohio MDL, and You wish to rely on Your statements made in the Government Plaintiff Fact Sheet to answer this question, check this box. |
| | | ☐ If You believe that this question has been answered in a complaint that you have filed against the Debtor(s), and You wish to rely on Your statements made in that complaint to answer this question, check this box. |

| | |
|---|---|
| 10. **Describe the conduct of the Debtors You allege resulted in injury or damages to You.**<br><br>Attach additional sheets if necessary. | See the Attachment, schedule 10, and the complaints filed by the Claimants against the Debtors (which are also referenced in schedule 10).<br><br><br><br>☐ If You believe that this question has been answered in the Government Plaintiff Fact Sheet submitted in the Ohio MDL, and You wish to rely on Your statements made in the Government Plaintiff Fact Sheet to answer this question, check this box.<br><br>☐ If You believe that this question has been answered in a complaint that you have filed against the Debtor(s), and You wish to rely on Your statements made in that complaint to answer this question, check this box. |
| 11. **Describe all alleged causes of action, sources of damages, legal theories of recovery, etc. that You are asserting against the Debtors.**<br><br>Attach additional sheets if necessary. | See the Attachment, schedule 10, and the complaints filed by the Claimants against the Debtors (which are also referenced in schedule 10). For the avoidance of doubt, the complaints should be referenced for the claims, legal theories, and causes of action of each Claimant (to the extent not otherwise included in the Attachment), and damage amounts included in the complaints supplement (but do not supersede) the amount set forth above or in the Attachment.<br><br><br><br>☐ If You believe that this question has been answered in the Government Plaintiff Fact Sheet submitted in the Ohio MDL, and You wish to rely on Your statements made in the Government Plaintiff Fact Sheet to answer this question, check this box.<br><br>☐ If You believe that this question has been answered in a complaint that you have filed against the Debtor(s), and You wish to rely on Your statements made in that complaint to answer this question, check this box. |
| 12. **Based on information reasonably available to You, please identify each category of damages or monetary relief that You allege, and include the amount of damages you assert for each category, if known.**<br><br>Attach additional sheets if necessary. | See Attachment, schedule 10, and the complaints filed by the Claimants against the Debtors (which are also referenced in schedule 10). For the avoidance of doubt, the complaints should be referenced for the claims, legal theories, and causes of action of each Claimant (to the extent not otherwise included in the Attachment), and damage amounts included in the complaints supplement (but do not supersede) the amount set forth above or in the Attachment. Further, the amount set forth above (and in the Attachment) does not include claims for penalties, forfeitures, or other penal remedies and other civil or compensatory relief to which the Claimants may be entitled, including, but not limited to, civil penalties, disgorgement, restitution, attorneys fees and costs, investigation costs, or costs of programmatic equitable relief, all of which are asserted by each Claimant in their maximum allowable amount. This claim also asserts claims of all other creditors to which the Claimants are, by statute or common law, subrogated regardless of whether they later become allowed claims. The amount of these claims is not included here and can only be set once the claims are allowed.<br><br>☐ If You believe that this question has been answered in the Government Plaintiff Fact Sheet submitted in the Ohio MDL, and You wish to rely on Your statements made in the Government Plaintiff Fact Sheet to answer this question, check this box.<br><br>☐ If You believe that this question has been answered in a complaint that you have filed against the Debtor(s), and You wish to rely on Your statements made in that complaint to answer this question, check this box. |

| Year | Total number of opioid related overdose deaths, if available |
|------|----|
| See schedule 13. | Schedule 13 includes data for the total number of opioid-related overdose deaths from 1999 though 2018. The Claimants reserve the right to amend or supplement the data in schedule 13, including by adding data for 1987 through 1998. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**13. Based on information reasonably available to You, provide the total number of opioid-related overdose deaths of Your residents each year for the later of (i) 2008, or (ii) the date on which the period for which You are seeking damages begins.**

❑ If You believe that this question has been answered in the Government Plaintiff Fact Sheet submitted in the Ohio MDL, and You wish to rely on Your statements made in the Government Plaintiff Fact Sheet to answer this question, check this box.

❑ If You believe that this question has been answered in a complaint that you have filed against the Debtor(s), and You wish to rely on Your statements made in that complaint to answer this question, check this box.

**Part 4:    Supporting Documentation**

**14. Please provide the following supporting documentation if you would like (but You are not required) to supplement this proof of claim.**

❑ Provide any documents supporting Your claim, including but not limited to: any Plaintiff Fact Sheets and accompanying documents submitted in the MDL proceeding in the Northern District of Ohio; any complaint, petition, information, or similar pleading filed in any civil or criminal proceeding involving the Debtors; and any records supporting Your claim for damages.

❑ In lieu of uploading or resubmitting the Government Plaintiff Fact Sheet that was submitted in the Ohio MDL, the creditor authorizes the Debtors to make the Government Plaintiff Fact Sheet, submitted in _____ in the Ohio MDL, available to Prime Clerk, the Court, and any party who agrees to be bound by the Protective Order to be submitted for entry by the Court for use in connection with this proof of claim and these chapter 11 cases.

■ In lieu of uploading or submitting the complaint filed against the Debtor(s), the creditors authorize the Debtors to make the complaints set forth on the schedules accompanying this claim available to Prime Clerk, the Court, and any party who agrees to be bound by the Protective Order to be submitted for entry by the Court for use in connection with this proof of claim and these chapter 11 cases.

| Part 5: | Sign Below |
|---------|------------|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐  I am the creditor.

☒  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   07/30/2020   (mm/dd/yyyy)

*Melanie Cyganowski /AVA*                    *Andrew M. Troop /AVA*

Signature                                                    Signature

**Print the name of the person who is completing and signing this claim:**

| | | |
|---|---|---|
| Names | The Hon. Melanie Cyganowski (Ret.) | Andrew M. Troop |
| Titles | Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants | Counsel to the Ad Hoc Group of Non-Consenting States |
| Companies | Otterbourg P.C. | Pillsbury Winthrop Shaw Pittman LLP |
| Addresses | 230 Park Avenue New York, New York 10169 | 31 W. 52nd Street New York, New York 10019 |

The signatures of the representatives of the governmental entities filing this claim are set forth on the page for the respective governmental entity in Schedule 10. The reasonable belief representation for each signatory in Schedule 10 applies only to the information relating to the aggregate claim and to the jurisdiction the governmental entity represents in filing this claim.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*,[1] | ) |
| | ) Case No. 19-23649 (RDD) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

## ATTACHMENT TO CONSOLIDATED PROOF OF CLAIM OF
## STATES, TERRITORIES AND OTHER GOVERNMENTAL ENTITIES

## I.    INTRODUCTION

1.    This Attachment, the preceding Governmental Opioid Proof of Claim form and all associated schedules are an integral part of, and an integrated set of documents, constituting the proof of claim being filed by the States, Territories and other governmental entities identified on Schedule 1 (collectively, the "Claimants") in these cases.  All these documents collectively constitute the proof(s) of claim for the Claimants and are sometimes referred to collectively as the "Consolidated Claim" or the "Proof of Claim."  Definitions, reservations, descriptions, authorizations or statements in any one document or schedule apply to all documents and schedules.

2.    The Claimants' claims are unliquidated and are asserted in an estimated amount of $2.156 trillion as described on the Consolidated Claim Information Sheet, plus the amount of the

---

[1]    The debtors in these chapter 11 cases (the "Debtors" or "Purdue"), along with the last four digits of their federal tax identification numbers, are Purdue Pharma Manufacturing L.P. (3821), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies K.P. (1868), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (6166), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' principal offices are at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

unliquidated claims of a Claimant's political subdivisions and residents in those jurisdictions in which such claims may be asserted by each Claimant (the "Claim Amount").[2]

## II.    RELEVANT BACKGROUND AS TO THE CONSOLIDATED CLAIM[3]

### A.    Purdue's Businesses

3.    The Debtors are drug companies founded and owned by members of the Sackler family. The Debtors make up only a part of the entities owned by members of the Sackler family, including other drug companies that have contributed to the world-wide opioid crisis.

4.    Purdue Pharma Inc., a New York corporation, is the general partner of Purdue Pharma L.P. Until 2018, members of the Sackler family held a majority of the seats on Purdue Pharma Inc.'s board of directors (the "Board"). The Sackler family members have now resigned from the Board in the face of an ever-increasing number of lawsuits suing them individually, but only after handpicking their replacements.

### B.    Purdue's Manufacturing and Aggressive Marketing of OxyContin

5.    Since the 1980s, Purdue's primary business has been the manufacture, promotion, and distribution of opioids nationwide.[4] During that time, Purdue engaged in deceptive practices that caused a national tragedy. Indeed, without evidence or support (and contrary to known facts), Purdue marketed, promoted, and mischaracterized OxyContin as "less addictive, less subject to abuse and diversion, and less likely to cause tolerance and withdrawal than other pain

---

[2]    The Claim Amount does not include unliquidated amounts based on each Claimant's Additional Theories (defined below).

[3]    The facts set forth herein are upon information and belief and based upon publicly available information, including the allegations set forth in the States' lawsuits against Purdue. Copies of the States' complaints against Purdue are available at https://www.mass.gov/lists/state-lawsuits-against-purdue-pharma.

[4]    In or around May 1987, Purdue began to market and sell MS Contin, a continuous release formulation of the opioid, morphine sulphate. And, in or around December 1994, Purdue submitted a New Drug Application (the "NDA") for OxyContin to the U.S. Food & Drug Administration (the "FDA"). See Agreed Statement of Facts, at ¶ 13 (The Agreed Statement of Facts was entered in United States v. Purdue Frederick Co., No. 07CR00029 (W.D. Va.), as part of the settlement with the U.S. government (the "Plea Agreement") and is available at https://www.documentcloud.org/documents/279028-purdue-guilty-plea.

medications." *Agreed Statement of Facts* at ¶ 20.  It made similar claims with respect to other opioids it marketed and sold across the United States.  To broadcast this misstatement, Purdue employed a large staff of sales representatives, and issued false marketing materials, which misrepresented OxyContin's benefits, and downplayed its risks, thereby encouraging the drug's use for less acute, longer-lasting pain, including arthritis, back pain, sports injuries, and fibromyalgia.  OxyContin became the best-selling opioid in the nation.  It has been estimated that approximately 80% of heroin abusers started down the path of addiction and abuse through the use of prescription opioids.[5]

## C.    The 2007 Guilty Plea in Connection with the Release and Marketing of OxyContin

6.    In 2007, the Purdue Frederick Company pleaded guilty to a felony charge and three of its executives pleaded guilty to misdemeanor charges for intentionally promoting false or misleading information about OxyContin.[6]

7.    As part of the Plea Agreement, Purdue Pharma L.P. entered into a Corporate Integrity Agreement (the "CIA"), which, in relevant part, required the appointment of a compliance officer to serve as a member of Purdue's senior management and make periodic compliance reports directly to Purdue's Board.  The Plea Agreement explicitly required the Board itself to comply with the rules prohibiting the misbranding of the company's products, undergo training to ensure that the rules were understood, and report any subsequent violations.

8.    In 2007, certain Purdue entities also entered into consent judgments (collectively, the "Consent Judgments") with twenty-five States and the District of Columbia.[7]  As a part of

---

[5]    National Institute on Drug Abuse, "Prescription opioid use is a risk factor for heroin use National Institute on Drug Abuse" (2018), https://www.drugabuse.gov/publications/research-reports/prescription-opioids-heroin/prescription-opioid-use-risk-factor-heroin-use (last visited July 27, 2020).

[6]    Notwithstanding the guilty pleas, Purdue subsequently paid bonuses totaling $8 million to two of the three executives. The company's earlier wrongdoing is described in the Agreed Statement of Facts.

[7]    The 2007 Consent Judgments were with Arizona, Arkansas, California, Connecticut, the District of Columbia, Idaho, Illinois, Louisiana, Maine, Maryland, Massachusetts, Montana, Nebraska, Nevada, New Mexico, North

many of the Consent Judgments, Purdue Pharma, Inc., Purdue Pharma L.P., and the Purdue Frederick Company affirmatively agreed to cease false, deceptive, or misleading marketing. Certain of those judgments also required that Purdue monitor abuse and diversion information and, in some cases, report its findings to the authorities.

### D.    Post-2007 Conduct

9.    Neither the CIA nor the Consent Judgments, however, deterred Purdue (or the Sacklers). Purdue not only continued its deceptive scheme to misrepresent OxyContin's addictive properties and dangers; it also worked shamelessly to increase the frequency, dosage, and time period for OxyContin prescriptions to achieve greater profits from branded and unbranded product.[8] To be clear, Purdue's unlawful conduct continues to this day in the form of continued sales based on the deceptive and unfair marketing Purdue engaged in for over a decade.

10.    The Centers for Disease Control and Prevention has declared opioid abuse to be a "public health epidemic." Between 1999 and 2016, more than 200,000 people in the United States died from overdoses directly related to prescription opioids, with recent estimates suggesting that more than 130 people in the United States die from opioid overdoses *every day*.[9]

11.    Based on this conduct, Claimants have asserted and by this proof of claim are asserting claims against the Debtors for all claims, costs and damages based on or involving opioids or their production, marketing and sale, including without limitation, the Debtors' production, marketing and sale of Purdue opioids. They also assert, where authorized, the claims for damages incurred by their political subdivisions and residents for damages arising from this

---

Carolina, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Vermont, Virginia, Washington, and Wisconsin.

[8] Additional relevant facts are detailed in the complaints filed by the States, available at https://www.mass.gov/lists/state-lawsuits-against-purdue-pharma, and summarized below.

[9] *See* https://www.hhs.gov/opioids/about-the-epidemic/index.html (last visited Jul. 15, 2020)

conduct. Finally, they assert entitlement to civil penalties, restitution, and disgorgement, as variously authorized by their laws.

12.     The crux of the Claimants' claims is that the Debtors engaged in deceptive marketing and promotion aimed at increasing the market for all opioids generally and boosting sales of OxyContin and the Debtors' other opioid products in particular. This marketing and promotion effort had the effect of increasing opioid usage, addiction to all forms of opioids and deaths generally and the costs incurred and to be incurred by the States as a result. Without limiting the foregoing, the Claimants' claims include claims for violations of consumer protection laws, public nuisance, fraud, negligence, negligence *per se*, elder abuse, violations of racketeering and other statutes, lost revenue, past and future costs and expenses, unliquidated claims based on non-Medicaid population, abatement, fraudulent conveyances or transfers, taxes, fines, penalties, forfeitures, and other penal claims, statutory civil penalties, disgorgement, restitution, mandatory and prohibitory injunctive relief under their respective consumer protection laws, and violations or enforcement of police powers. This Consolidated Claim also asserts claims of all other creditors to which the States are by statute or common law subrogated or granted authorization to pursue regardless of whether they later become allowed claims. The amount of these claims is not included here and can only be set once they are otherwise allowed. Each of the foregoing theories for the Claimants' claims comprise the "Collective Theories."

13.     For additional theories asserted by individual Claimants ("Additional Theories"), refer to each Claimant's respective supplement in Schedule 10 (collectively, the "Supplements"). For further details, refer to each Claimant's Supplement and the lawsuit(s) identified therein. The complaints filed in each Claimant's lawsuit(s) and all allegations and prayers for relief set forth in those complaints are incorporated into this Consolidated Claim as if fully set forth herein.

5

### III.    <u>RESERVATION OF RIGHTS</u>

14.     This Proof of Claim is filed pursuant to the order entered by the United States

Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") in these chapter

11 cases establishing July 30, 2020 as the deadline for filing proofs of claim (the "<u>Bar Date</u>").

*See* Docket Nos. 800 and 1221.  Nothing in this Proof of Claim shall constitute an express or

implied waiver of the sovereignty of any governmental unit[10] that may be a member of the Ad Hoc

Committee of Governmental and Other Contingent Litigation Claimants, the Ad Hoc Group of

Non-Consenting States, or any governmental unit that has authorized the filing of, and is deemed

to have filed, a proof of claim through joining the Consolidated Claim.

15.     Each Claimant reserves its rights to amend, modify, and/or supplement any of the

claims set forth in this Proof of Claim, including its schedules or exhibits, at any time, including

after the Bar Date, in any manner, including but not limited to: (i) supplement or amend this Proof

of Claim or any related documents and other information, and to describe further the claims

asserted herein; (ii) assert any and all additional amounts that are due, may be due, or will become

due by any of the Debtors including, without limitation, amounts owed both before and after the

date of the commencement of the Debtors' bankruptcy cases that remain outstanding in an

undetermined amount, or are otherwise unmatured, unliquidated and/or contingent as of the date

hereof; and (iii) fix and liquidate the amount of unmatured, contingent, and unliquidated claims.

Each Claimant expressly reserves the right to attach, produce, and/or rely upon additional

documentation or other evidence that supports its claims, including any additional documents or

other evidence that may become available after further investigation or discovery.  Among other

---

[10]     As used in this Proof of claim, governmental unit has the meaning ascribed to it in 11 U.S.C. §101(27).

reasons, amendment may be required as Claimants continue to assess their losses caused by the Debtors.

16.     Each Claimant expressly reserves all its defenses and rights, procedural and substantive, and shall not be deemed to have waived or released any claim by virtue of it not being liquidated or fixed on the Consolidated Claim Summary Information Sheet.

17.     Each Claimant does not waive, and expressly reserves, any right of action that it has or may have against the Debtors, or any other entity or person.  Any such claims may, without limitation, be the subject of other proofs of claim filed in these cases and the execution and filing of this Proof of Claim shall not limit or affect any other claim of any Claimant.  Each Claimant expressly reserves the right to file other proofs of claim, notwithstanding the filing of this Proof of Claim.

18.     Each Claimant preserves and does not waive any rights to seek additional amounts that are due, may be due, or will become due, including, without limitation, the rights: (i) to file additional proofs of claim at any time; and (ii) to file proofs of claim against third parties, including, without limitation, any entity or person.  If the Bankruptcy Court enters an order, which effectively subordinates Claimants' claims, Claimants' rights to file additional proofs of claim or amended proofs of claim against the Debtors are reserved.

19.     This Proof of Claim is submitted without prejudice and in addition to any other claims of each Claimant that have been listed in any of the Debtors' schedules or may become listed in any of the Debtors' schedules.  In addition, each Claimant: (i) reserves the right to pursue claims (including but not limited to the claims described herein) against any of the Debtors based upon additional or alternative legal theories; (ii) reserves the right to file additional or other pleadings to assert any of the amounts set forth in this Proof of Claim or any amendments thereto;

and (iii) reserves the right to assert, if applicable, claims for post-petition administrative expenses pursuant to Bankruptcy Code sections 503 and 507. Nothing contained in this Proof of Claim shall limit the rights of any Claimant to file papers or pleadings, or commence any proceedings, or take any actions concerning its claims, liens or security interests.

20.    Nothing in this Proof of Claim shall constitute a waiver or release of any rights, powers or remedies of any Claimant, including any rights: (i) against the Debtors; (ii) against any non-debtor affiliate or insider of the Debtors or person or entity associated with the Debtors or their affiliates or insiders; (iii) against any member of the Sackler family and any entity or person associated with a member of the Sackler family; (iv) against any other person, entity, or property, including but not limited to any entity that may have developed, designed, manufactured, marketed, promoted, stored, transported, disposed of, sold, supplied, and/or agreed to indemnify for losses related to, prescription opioid products, including but not limited to, all forms and versions of Purdue's morphine, oxycodone, hydrocodone, and buprenorphine products; (v) of setoff or recoupment; (vi) to contest the jurisdiction of the Bankruptcy Court with respect to the subject matter of the claim set forth herein, or any elements thereof, or any other proceedings commenced against or involving Claimant; (vii) to elect remedies or choice of law; (viii) to have final orders in non-core matters entered only after de novo review by a judge of the United States District Court; (ix) to trial by jury in any proceeding related to this proceeding; (x) to have the United States District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; (xi) to the subordination, in favor of Claimant, of claims or liens held by creditors of the Debtors; (xii) to arbitration or other alternative dispute resolution mechanism; (xiii) to have any unliquidated portion of any claim determined by an applicable court other than the Bankruptcy Court; (xiv) to have claims cured if contracts are assumed, or to have claims

reinstated, pursuant to the Bankruptcy Code, the Debtors' plan of reorganization and/or any other liquidation or reorganization by the Debtors; (xv) to seek the reconsideration under section 502(j) of the Bankruptcy Code of any disallowance of any amount claimed under this Proof of Claim, whether liquidated or unliquidated or contingent or noncontingent; and (xvi) to seek relief from the Bankruptcy Court, or any other applicable court, with respect to the allowance, priority, estimation, or other treatment of Claimant's claims under the Bankruptcy Code.

21.    The filing of this Proof of Claim is not intended to be and shall not be construed as: (i) a concession or admission by any Claimant of liability or facts with respect to any claims or alleged damages (or the amount thereof) that have been or may be asserted against any Claimant by any party, including, and not limited to, third parties; (ii) a waiver of any past, present or future default or event of default; (iii) a consent by any Claimant to the treatment of any non-core claim against it as a core claim; (iv) a consent by any Claimant to a jury trial in the Bankruptcy Court in any proceeding as to any and all matters triable herein, or related to the same, whether or not such matters are designated as core proceedings; (v) a consent by any Claimant to the jurisdiction or venue of the Bankruptcy Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving any Claimant; (vi) a waiver of sovereign immunity; and (vii) a consent to the final determination or adjudication of any claim or right pursuant to 28 U.S.C. § 157(c).

22.    Subject to the limitations, descriptions, and reservations set forth herein, the Claimants agree to take their allocated share of the claims described in the Proof of Claim based on an agreement to be reached among them or as subsequently ordered by the Bankruptcy Court or other court of competent jurisdiction.

23.     Successful objections to any one Claimant's claim will not impact any other Claimant's claims, which each Claimant is asserting in this Consolidated Claim individually.

# Consolidated Claim Information Sheet

**Cost of the Opioid Epidemic to the U.S. States & Territories**
**Including Disbursement of Federal Funds**
**(2020 USD billions)**

| | | Total Historical Costs (2007-2019) | Net Present Value of Future Abatement Costs (2020-2040) | | | Total Historical and Future Costs (2007-2040) |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Continuation of Existing Programs | New Abatement Programs | Total Future Costs | |
| | | [A] | [B] | [C] | [D] | [E] |
| **Healthcare Costs** | | | | | | |
| Medicaid and State Employee* | [1] | $249 | $301 | $266 | $568 | $816 |
| OUD Treatment (Non-Medicaid) | [2] | $64 | $118 | | $118 | $182 |
| OUD Prevention | [3] | $5 | | $248 | $248 | $253 |
| NAS (Medicaid)* | [4] | $7 | $15 | $11 | $27 | $34 |
| **Non-Healthcare Costs** | | | | | | |
| Criminal Justice* | [5] | $97 | $104 | $27 | $131 | $229 |
| Child Welfare | [6] | $108 | $164 | | $164 | $272 |
| ACEs Programs* | [7] | | | $78 | $78 | $78 |
| Education | [8] | $24 | $41 | | $41 | $65 |
| Income and Sales Tax | [9] | $75 | $110 | | $110 | $186 |
| Other Abatement Strategies | [10] | | | $42 | $42 | $42 |
| **Total Costs** | [11] | **$630** | **$854** | **$672** | **$1,526** | **$2,156** |

**Notes and Sources:**

Calculations include the costs of the opioid epidemic borne by both states and the federal government (excluding costs borne by municipalities) unless otherwise noted. Table excludes costs borne by Kentucky prior to January 1, 2016 and Oklahoma. Categories marked with an asterisk (*) reflect known omissions and estimates have been increased to estimate omissions.

# Consolidated Claims Information Sheet

### Cost of the Opioid Epidemic to the U.S. States & Territories
### Including Disbursement of Federal Funds
### (2020 USD billions)

---

**Columns [A]-[E]:**

[A]:   Historical costs incurred as a result of the opioid epidemic over the period 2007 - 2019.  Healthcare costs are reported in 2020 dollars using the Personal consumption expenditures: Services: Health care Index.  Non-healthcare costs are reported in 2020 dollars using the GDP deflator. Inflation data are from the Federal Reserve Bank of St. Louis.

[B]:   Expected future costs over the period 2020-2040 as a result of the opioid epidemic based on a projection of the historical costs incurred.  Future costs are discounted to 2020 at the average annual 10-year T-bill constant maturity rate over the period 1999-2019 (i.e., 3.54%).  Future costs are based on the expected decline in the number of individuals with opioid use disorder ("OUD") based on the effectiveness of expected treatment and prevention programs.  The historical OUD population for the period 2007-2017 are from the National Survey of Drug Use and Health ("NSDUH").  The future OUD population is projected using a Markov simulation model based on the framework developed by Pitt et al. (2018).  *See*  Pitt, Allison L., Keith Humphreys, and Margaret L. Brandeau. "Modeling health benefits and harms of public policy responses to the US opioid epidemic." *American Journal of Public Health 108* , no. 10 (2018): 1394-1400.

[C]:   Expected future costs over the period 2020-2040 for new abatement programs instituted to combat the opioid epidemic.  (Appendix available for a full list of abatement programs included.)  Future costs are discounted to 2020 at the average annual 10-year T-bill constant maturity rate over the period 1999-2019 (i.e., 3.54%).  Healthcare costs and Criminal Justice costs are inflated at the average annual inflation rate in personal healthcare services over the period 1999-2019 (i.e., 2.36%).  Other Abatement Strategies are inflated at the average annual growth rate in the GDP deflator over the period Q3 1999 - Q3 2019 (i.e., 1.96%).  Costs are adjusted for differences across states based on the 2016 Medicaid Physician Fee Index for Healthcare and Criminal Justice costs and 2019 Wage Index (based on mean hourly wage from the U.S. Bureau of Labor Statistics) for Other Abatement Strategies.  New abatement programs are based on the first-year costs of programs from the Ruhm Report that are not covered by the forecast of continuing existing programs in column [B].  Specifically, Addiction Treatment Services and NAS Treatment Services from the Ruhm Report are excluded as continuation of existing programs.  Costs assume that all states and territories will implement all programs listed in Appendix.  Sources of funding may include some federal sources to the extent that they are captured as costs to the State of Oklahoma in the Ruhm Report.  *See*  Ruhm, Christopher J.  "Costs to the State of Oklahoma of Abating the Opioid Crisis."  December 21, 2018 and supplemented February 5, 2019.

[D]:   [B] + [C].

[E]:   [A] + [D].  Categories with asterisk increased by 5% - 25% to reflect known omissions.

# Consolidated Claim Information Sheet

## Cost of the Opioid Epidemic to the U.S. States & Territories
### Including Disbursement of Federal Funds
### (2020 USD billions)

**Rows [1]-[11]:**

[1]: Medicaid and State Employee costs include estimates of the excess healthcare costs associated with opioid use disorder (OUD) and opioid super users that are incurred by the state and federally-funded portions of Medicaid and state-funded health insurance for state employees. The OUD population is retrieved from NSDUH, which defines dependence or abuse of opioids (OUD) based on definitions found in the 4th edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV). Super users are defined as patients who do not have an OUD diagnosis but have opioid prescriptions covering at least 75% of the year. Super user prevalence is from Davenport et al. (2019a). Per patient excess OUD and super user costs are from Davenport et al. (2019b) and Florence (2016). State and federal funding for opioid-related substance use disorder treatment reported through SAMHSA is also included. Finally, costs also include opioid prescription costs funded through state worker's compensation programs as reported by documents directly provided by states. Davenport, Stoddard, Alexandra Weaver, and Matt Caverly. "Costs and comorbidities of opioid use disorder: The impact of opioid use disorder for patients with chronic medical conditions." Milliman White Paper (March 2019): 1-15 (Davenport et al., 2019a); Davenport, Stoddard, Alexandra Weaver, and Matt Caverly. "Economic Impact of Non-Medical Opioid Use in the United States, Annual Estimates and Projections for 2015 through 2019." Report prepared for the Society of Actuaries (October 2019): 1-93 (Davenport et al., 2019b); Florence, Curtis S., Chao Zhou, Feijun Luo, and Likang Xu. "The Economic Burden of Prescription Opioid Overdose, Abuse, and Dependence in the United States, 2013." *Medical Care* 54, no. 10 (2016): 901-906.

[2]: OUD Treatment Costs are calculated by estimating the share of Substance Use Disorder ("SUD") treatment expenditures funded by state and local mental health and substance use disorder agencies and federal funds other than Medicaid, that is spent as grant programs administered by the Substance Abuse and Mental Health Services Administration ("SAMHSA"), that are attributable to opioid abuse. SUD treatment costs are obtained from SAMHSA's Behavioral Health Spending and Use Accounts. The opioid-attributable share of spending is calculated using the share of non-Medicaid admissions to substance abuse treatment facilities that are due to the abuse of opioids, which is obtained by SAMHSA's Treatment Episode Dataset ("TEDS"). *Substance Abuse and Mental Health Services Administration. Behavioral Health Spending & Use Accounts 2006—2015. HHS Pub. No. (SMA) 19-5095. Rockville, MD: Substance Abuse and Mental Health Services Administration; 2019. Substance Abuse and Mental Health Services Administration, Treatment Episode Data Set (TEDS): 2000–2017. Rockville, MD: Substance Abuse and Mental Health Services Administration, 2019.*

[3]: Historical Prevention costs include federal and state spending estimated from documents provided by states and territories. Expected future OUD Prevention costs are captured under column [C] since many of the programs are anticipated to increase or scale up. (Please see the Appendix for the list of prevention programs included in expected future costs.)

[4]: Historical NAS costs include the healthcare cost attributable to the opioid epidemic of treating babies born with Neonatal Abstinence Syndrome ("NAS") for the first two years of life. Estimates represent Medicaid costs. Data on the incidence of NAS are from the Healthcare Cost and Utilization Projection ("HCUP"). The cost of treating NAS is from Strahan et al. (2020) adjusted for excess costs incurred after birth for the first two years of life. New Abatement programs include training of medical professionals, and screening and counselling for pregnant women. Strahan, Andrea E., Gery P. Guy, Michele Bohm, Meghan Frey, and Jean Y. Ko. "Neonatal Abstinence Syndrome Incidence and Health Care Costs in the United States, 2016." *JAMA Pediatrics* 174, no. 2 (2020): 200-202.

[5]: Historical Criminal Justice costs include the cost of policing, the judiciary, and incarceration that are attributable to the opioid epidemic. Total Criminal Justice costs are sourced from the Bureau of Justice Statistics ("BJS") and apportioned to opioids using data from the FBI Uniform Crime Report ("FBI UCR"), BJS (Bronson et al., 2017), the National Forensic Laboratory Information System ("NFLIS"), and NSDUH. This methodology follows prior research by Birnbaum et al. (2011) and Florence et al. (2016). Birnbaum, Howard G., Alan G. White, Matt Schiller, Tracy Waldman, Jody M. Cleveland, and Carl L. Roland. "Societal costs of prescription opioid abuse, dependence, and misuse in the United States." *Pain Medicine* 12, no. 4 (2011): 657-667; Bronson, Jennifer, Jessica Stroop, Stephanie Zimmer, and Marcus Berzofsky. "Drug Use, Dependence, and Abuse Among State Prisoners and Jail Inmates, 2007-2009." *U.S. Department of Justice, Bureau of Justice Statistics* Special Report NCJ 250546 (June 2017): 1-26.

[6]: Historical Child Welfare costs include the cost of Child Protective Services and foster care that are attributable to the opioid epidemic. Costs of the child welfare system are from Child Trend Reports published by the Annie E. Casey Foundation and the Urban Institute. The portion of costs attributable to the opioid epidemic are computed based on the econometric models from Ghertner et al. (2018). *See* Ghertner, Robin, Annette Waters, Laura Radel, and Gilbert Crouse. "The role of substance use in child welfare caseloads." *Children and Youth Services Review* 9 0 (2018): 83-93.

[7]: Program Costs Related to Adverse Childhood Experiences ("ACEs") prevention and treatment include the cost of screening, care management, initial treatment and young adult depression treatment. The costs associated with collaboration, planning, administration, provider training and public education are also included. Estimated costs incorporate a measure of states' likelihood of developing the various programs.

[8]: Total education expenses are from the Department of Education. The portion of costs that relate to substance abuse are from the National Center on Addiction and Substance Abuse. Substance abuse costs are apportioned to opioids using NSDUH. The percent of costs paid by Federal and State sources are from the US Census Bureau. National Center on Addiction and Substance Abuse (CASA). "Shoveling up II: The impact of substance abuse on federal, state and local budgets." (2009).

[9]: Income and Sales Tax costs include lost income tax and sales tax for the states and territories as a result of lower labor force participation resulting from opioid use, opioid related deaths and opioid related incarcerations. Estimates are based on the framework developed by Segel et al. (2019). *See* Segel, Joel E., Yunfeng Shi, John R. Moran, and Dennis Patrick Scanlon. "Opioid misuse, labor market outcomes, and means-tested public expenditures: a conceptual framework." *Am J Manag Care* 25 (2019): S270-S276. A multiplier of 2 was applied to lost income from labor force exits. Typically, a small portion of state sales tax is maintained by local governments. The muncipal portion has not been estimated.

# Consolidated Claim Information Sheet

**Cost of the Opioid Epidemic to the U.S. States & Territories**
**Including Disbursement of Federal Funds**
**(2020 USD billions)**

---

[10]: Other Abatement Strategies include surveillance programs, such as Health Information Exchange, Program Management Monitoring/Evaluation, and Prescription Monitoring Program System/Upgrades.  Cost estimates are based on the Ruhm Report and OUD population projections using the framework by Pitt et al. (2018).

[11]: Sum([1]-[10]).

## **SCHEDULE 1**

## **CLAIMANTS**

### **STATES (INCL. D.C.)**

- Alabama
- Alaska
- Arizona
- Arkansas
- California
- Colorado
- Connecticut
- Delaware
- District of Columbia
- Florida
- Georgia
- Hawaii
- Idaho
- Illinois
- Indiana
- Iowa
- Kansas
- Kentucky
- Louisiana
- Maine
- Maryland

### **(STATES Cont.)**

- Massachusetts
- Michigan
- Minnesota
- Mississippi
- Missouri
- Montana
- Nebraska
- Nevada
- New Hampshire
- New Jersey
- New Mexico
- New York
- North Carolina
- North Dakota
- Ohio
- Oregon
- Pennsylvania
- Rhode Island
- South Carolina
- South Dakota
- Tennessee

- Texas

- Utah

- Vermont

- Virginia

- Washington

- West Virginia

- Wisconsin

- Wyoming

**<u>TERRITORIES</u>**

- American Samoa

- Guam

- Northern Mariana Islands

- Puerto Rico

- U.S. Virgin Islands

## SCHEDULE 10

### STATE/TERRITORY SUPPLEMENT CLAIMS

| Schedule | Jurisdiction |
|----------|--------------|
| 10.1 | Alabama |
| 10.2 | Alaska |
| 10.3 | Arizona |
| 10.4 | Arkansas |
| 10.5 | California |
| 10.6 | Colorado |
| 10.7 | Connecticut |
| 10.8 | Delaware |
| 10.9 | District of Columbia |
| 10.10 | Florida |
| 10.11 | Georgia |
| 10.12 | Hawaii |
| 10.13 | Idaho |
| 10.14 | Illinois |
| 10.15 | Indiana |
| 10.16 | Iowa |
| 10.17 | Kansas |
| 10.18 | Kentucky |
| 10.19 | Louisiana |
| 10.20 | Maine |
| 10.21 | Maryland |

| Schedule | Jurisdiction |
| --- | --- |
| 10.22 | Massachusetts |
| 10.23 | Michigan |
| 10.24 | Minnesota |
| 10.25 | Mississippi |
| 10.26 | Missouri |
| 10.27 | Montana |
| 10.28 | Nebraska |
| 10.29 | Nevada |
| 10.30 | New Hampshire |
| 10.31 | New Jersey |
| 10.32 | New Mexico |
| 10.33 | New York |
| 10.34 | North Carolina |
| 10.35 | North Dakota |
| 10.36 | Ohio |
| 10.37 | Reserved |
| 10.38 | Oregon |
| 10.39 | Pennsylvania |
| 10.40 | Rhode Island |
| 10.41 | South Carolina |
| 10.42 | South Dakota |
| 10.43 | Tennessee |
| 10.44 | Texas |

| Schedule | Jurisdiction |
|----------|--------------|
| 10.45 | Utah |
| 10.46 | Vermont |
| 10.47 | Virginia |
| 10.48 | Washington |
| 10.49 | West Virginia |
| 10.50 | Wisconsin |
| 10.51 | Wyoming |
| 10.52 | American Samoa |
| 10.53 | Guam |
| 10.54 | Northern Mariana Islands |
| 10.55 | Puerto Rico |
| 10.56 | U.S. Virgin Islands |

Schedule 13 - State Opioid Deaths by Year_Adjusted and Unadjusted 4844-9....xlsx
CDC Wonder Opioid Overdose Deaths by State, 1999-2018

| | 1999 Opioid Overdose Deaths | | 2000 Opioid Overdose Deaths | | 2001 Opioid Overdose Deaths | | 2002 Opioid Overdose Deaths | | 2003 Opioid Overdose Deaths | | 2004 Opioid Overdose Deaths | | 2005 Opioid Overdose Deaths | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted |
| ALABAMA | 37 | 67 | 43 | 88 | 57 | 111 | 71 | 127 | 49 | 103 | 83 | 168 | 80 | 161 |
| ALASKA | 27 | 28 | 27 | 29 | 14 | 35 | 5 | 22 | 11 | 29 | 10 | 51 | 18 | 46 |
| ARIZONA | 229 | 299 | 235 | 320 | 265 | 341 | 320 | 400 | 340 | 435 | 344 | 459 | 375 | 473 |
| ARKANSAS | 28 | 41 | 20 | 38 | 30 | 61 | 90 | 104 | 89 | 107 | 127 | 154 | 123 | 155 |
| CALIFORNIA | 1474 | 1827 | 1012 | 1250 | 551 | 745 | 1453 | 1868 | 1398 | 1846 | 1413 | 1868 | 1372 | 1825 |
| COLORADO | 164 | 193 | 174 | 205 | 192 | 231 | 196 | 248 | 213 | 290 | 224 | 280 | 295 | 371 |
| CONNECTICUT | 151 | 201 | 165 | 232 | 149 | 217 | 172 | 255 | 167 | 224 | 193 | 246 | 163 | 212 |
| DELAWARE | 32 | 39 | 29 | 36 | 36 | 42 | 48 | 58 | 37 | 53 | 35 | 39 | 29 | 44 |
| DISTRICT OF COLUMBIA | 28 | 28 | 43 | 43 | 46 | 46 | 29 | 29 | 60 | 60 | 53 | 58 | 44 | 44 |
| FLORIDA | 402 | 552 | 556 | 714 | 846 | 1121 | 959 | 1326 | 1043 | 1407 | 1196 | 1582 | 1097 | 1538 |
| GEORGIA | 83 | 119 | 115 | 156 | 183 | 242 | 215 | 302 | 236 | 340 | 258 | 359 | 300 | 408 |
| HAWAII | 30 | 38 | 29 | 38 | 38 | 47 | 46 | 49 | 43 | 49 | 57 | 61 | 67 | 80 |
| IDAHO | 31 | 47 | 28 | 35 | 51 | 57 | 45 | 58 | 54 | 68 | 47 | 64 | 50 | 71 |
| ILLINOIS | 483 | 523 | 558 | 611 | 525 | 591 | 569 | 640 | 460 | 522 | 532 | 610 | 590 | 647 |
| INDIANA | 46 | 78 | 41 | 96 | 67 | 140 | 63 | 147 | 127 | 280 | 138 | 325 | 160 | 412 |
| IOWA | 14 | 16 | 19 | 22 | 27 | 28 | 37 | 38 | 38 | 40 | 61 | 66 | 67 | 72 |
| KANSAS | 25 | 34 | 22 | 28 | 47 | 68 | 80 | 107 | 75 | 99 | 116 | 145 | 106 | 146 |
| KENTUCKY | 52 | 101 | 92 | 151 | 144 | 232 | 177 | 302 | 234 | 404 | 221 | 377 | 285 | 476 |
| LOUISIANA | 28 | 69 | 52 | 116 | 81 | 149 | 95 | 222 | 121 | 291 | 144 | 353 | 172 | 409 |
| MAINE | 27 | 34 | 41 | 46 | 55 | 64 | 91 | 112 | 86 | 108 | 98 | 111 | 116 | 126 |
| MARYLAND | 487 | 530 | 481 | 518 | 489 | 534 | 543 | 607 | 558 | 636 | 486 | 509 | 495 | 508 |
| MASSACHUSETTS | 326 | 344 | 314 | 328 | 500 | 522 | 484 | 511 | 588 | 629 | 459 | 495 | 557 | 578 |
| MICHIGAN | 121 | 228 | 180 | 351 | 192 | 354 | 227 | 437 | 253 | 465 | 351 | 570 | 483 | 698 |
| MINNESOTA | 57 | 68 | 57 | 76 | 96 | 119 | 95 | 114 | 106 | 142 | 135 | 160 | 144 | 179 |
| MISSISSIPPI | 15 | 32 | 12 | 33 | 26 | 65 | 26 | 83 | 31 | 102 | 26 | 69 | 40 | 103 |
| MISSOURI | 100 | 120 | 131 | 158 | 132 | 169 | 189 | 254 | 271 | 344 | 275 | 336 | 302 | 377 |
| MONTANA | 16 | 23 | 11 | 23 | 20 | 39 | 20 | 41 | 41 | 67 | 45 | 85 | 45 | 77 |
| NEBRASKA | 5 | 8 | 16 | 22 | 32 | 38 | 25 | 34 | 14 | 24 | 26 | 33 | 43 | 63 |
| NEVADA | 153 | 161 | 178 | 183 | 182 | 187 | 220 | 225 | 244 | 251 | 275 | 283 | 323 | 331 |
| NEW HAMPSHIRE | 40 | 41 | 29 | 30 | 53 | 54 | 80 | 81 | 92 | 93 | 90 | 91 | 109 | 111 |
| NEW JERSEY | 323 | 402 | 350 | 462 | 397 | 517 | 486 | 605 | 445 | 544 | 312 | 416 | 435 | 553 |
| NEW MEXICO | 180 | 187 | 180 | 194 | 151 | 173 | 196 | 211 | 218 | 239 | 185 | 211 | 211 | 252 |
| NEW YORK | 621 | 659 | 494 | 530 | 611 | 698 | 555 | 601 | 576 | 631 | 479 | 504 | 562 | 599 |
| NORTH CAROLINA | 159 | 177 | 286 | 311 | 338 | 363 | 407 | 432 | 496 | 524 | 562 | 594 | 654 | 682 |
| NORTH DAKOTA | 5 | 5 | 5 | 5 | 5 | 5 | 14 | 14 | 5 | 5 | 13 | 13 | 5 | 5 |
| OHIO | 164 | 235 | 250 | 337 | 336 | 450 | 421 | 575 | 365 | 485 | 515 | 717 | 560 | 796 |
| OREGON | 120 | 141 | 106 | 120 | 147 | 166 | 193 | 218 | 209 | 249 | 225 | 250 | 267 | 285 |
| PENNSYLVANIA | 320 | 627 | 319 | 736 | 252 | 640 | 345 | 732 | 470 | 1005 | 475 | 1075 | 504 | 1147 |
| RHODE ISLAND | 35 | 36 | 57 | 58 | 78 | 80 | 72 | 73 | 99 | 104 | 75 | 80 | 112 | 116 |
| SOUTH CAROLINA | 48 | 64 | 87 | 126 | 83 | 130 | 81 | 114 | 92 | 139 | 128 | 209 | 149 | 237 |
| SOUTH DAKOTA | 5 | 5 | 5 | 5 | 5 | 5 | 12 | 12 | 5 | 5 | 20 | 25 | 22 | 26 |
| TENNESSEE | 89 | 127 | 100 | 162 | 136 | 201 | 167 | 252 | 294 | 388 | 379 | 486 | 447 | 562 |
| TEXAS | 351 | 497 | 379 | 513 | 561 | 736 | 739 | 904 | 791 | 952 | 814 | 980 | 872 | 1046 |
| UTAH | 141 | 145 | 156 | 159 | 157 | 162 | 203 | 223 | 258 | 274 | 264 | 279 | 326 | 356 |
| VERMONT | 15 | 17 | 22 | 23 | 31 | 31 | 36 | 36 | 45 | 46 | 37 | 37 | 37 | 38 |
| VIRGINIA | 201 | 222 | 250 | 265 | 312 | 325 | 352 | 370 | 362 | 380 | 390 | 409 | 363 | 383 |
| WASHINGTON | 353 | 366 | 353 | 363 | 324 | 340 | 455 | 462 | 471 | 482 | 575 | 587 | 603 | 628 |
| WEST VIRGINIA | 33 | 36 | 50 | 64 | 138 | 152 | 178 | 189 | 193 | 200 | 251 | 260 | 140 | 146 |
| WISCONSIN | 83 | 95 | 112 | 138 | 140 | 158 | 173 | 203 | 200 | 234 | 221 | 254 | 273 | 327 |
| WYOMING | 5 | 9 | 10 | 17 | 17 | 32 | 5 | 8 | 17 | 32 | 12 | 21 | 10 | 16 |

Sources and Notes:
Centers for Disease Control and Prevention, National Center for Health Statistics. Multiple Cause of Death 1999-2018 on CDC WONDER Online Database, released in 2020.
Ruhm, C. J. (2018). Corrected US opioid-involved drug poisoning deaths and mortality rates, 1999–2015. Addiction, 113(7), 1339-1344.

Adjusted opioid overdose deaths follow the imputation method described by Ruhm (2018) to account for under-reporting due to death certificates for drug poisonings sometimes not identifying the specific drugs that contributed to the death.
Ruhm's proposed adjustment solves the equation (Adjusted Opioid Overdose Deaths) = (Reported Opioid Overdose Deaths) / (1 - Share of Opioid Overdose Deaths with No Drug Specified on Death Certificate) by approximating the share of opioid overdose deaths with no drug specified with the share of overall overdose deaths with no drug specified .
Overdose deaths exclude alcohol.

Schedule 13 - State Opioid Deaths by Year_Adjusted and Unadjusted 4844-9....xlsx
CDC Wonder Opioid Overdose Deaths by State, 1999-2018

| | 2006 Opioid Overdose Deaths | | 2007 Opioid Overdose Deaths | | 2008 Opioid Overdose Deaths | | 2009 Opioid Overdose Deaths | | 2010 Opioid Overdose Deaths | | 2011 Opioid Overdose Deaths | | 2012 Opioid Overdose Deaths | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted |
| ALABAMA | 124 | 257 | 165 | 347 | 185 | 398 | 206 | 467 | 187 | 392 | 176 | 412 | 165 | 398 |
| ALASKA | 29 | 52 | 15 | 47 | 88 | 96 | 90 | 95 | 62 | 64 | 66 | 76 | 81 | 90 |
| ARIZONA | 459 | 566 | 461 | 603 | 494 | 612 | 605 | 724 | 626 | 815 | 562 | 760 | 526 | 770 |
| ARKANSAS | 140 | 186 | 148 | 192 | 197 | 267 | 201 | 257 | 189 | 239 | 169 | 242 | 169 | 242 |
| CALIFORNIA | 1511 | 2043 | 1657 | 2314 | 1801 | 2535 | 1987 | 2666 | 1929 | 2595 | 1938 | 2658 | 1719 | 2379 |
| COLORADO | 326 | 406 | 353 | 471 | 355 | 495 | 397 | 564 | 304 | 439 | 418 | 605 | 407 | 587 |
| CONNECTICUT | 224 | 285 | 244 | 312 | 230 | 297 | 216 | 291 | 223 | 277 | 209 | 292 | 201 | 324 |
| DELAWARE | 37 | 54 | 45 | 68 | 65 | 102 | 81 | 98 | 103 | 119 | 113 | 135 | 82 | 117 |
| DISTRICT OF COLUMBIA | 55 | 58 | 29 | 32 | 31 | 31 | 13 | 13 | 34 | 36 | 51 | 56 | 44 | 53 |
| FLORIDA | 1223 | 1696 | 1473 | 2021 | 1478 | 2162 | 1590 | 2347 | 1674 | 2394 | 1576 | 2207 | 1326 | 1849 |
| GEORGIA | 331 | 483 | 385 | 557 | 404 | 610 | 490 | 669 | 534 | 711 | 535 | 735 | 536 | 726 |
| HAWAII | 54 | 58 | 78 | 86 | 53 | 65 | 57 | 68 | 74 | 89 | 77 | 96 | 62 | 74 |
| IDAHO | 70 | 95 | 62 | 93 | 72 | 113 | 62 | 112 | 79 | 133 | 77 | 132 | 59 | 126 |
| ILLINOIS | 870 | 956 | 691 | 779 | 846 | 966 | 886 | 1028 | 867 | 1016 | 907 | 1090 | 1151 | 1310 |
| INDIANA | 176 | 476 | 241 | 547 | 311 | 647 | 319 | 702 | 289 | 620 | 356 | 750 | 375 | 782 |
| IOWA | 93 | 101 | 107 | 114 | 127 | 133 | 141 | 149 | 147 | 155 | 172 | 182 | 171 | 180 |
| KANSAS | 120 | 159 | 117 | 179 | 96 | 157 | 148 | 234 | 104 | 187 | 118 | 185 | 171 | 233 |
| KENTUCKY | 331 | 535 | 343 | 575 | 365 | 595 | 434 | 661 | 591 | 869 | 669 | 955 | 673 | 941 |
| LOUISIANA | 194 | 417 | 212 | 492 | 130 | 358 | 122 | 353 | 123 | 343 | 116 | 345 | 169 | 400 |
| MAINE | 93 | 123 | 102 | 122 | 105 | 120 | 114 | 124 | 90 | 100 | 85 | 103 | 100 | 114 |
| MARYLAND | 565 | 582 | 600 | 615 | 513 | 524 | 586 | 603 | 509 | 519 | 546 | 560 | 657 | 673 |
| MASSACHUSETTS | 659 | 677 | 649 | 674 | 596 | 620 | 622 | 648 | 549 | 560 | 655 | 671 | 691 | 702 |
| MICHIGAN | 594 | 874 | 506 | 831 | 643 | 966 | 736 | 1128 | 695 | 1055 | 714 | 1078 | 685 | 1065 |
| MINNESOTA | 158 | 198 | 180 | 222 | 227 | 272 | 272 | 328 | 235 | 287 | 286 | 350 | 290 | 348 |
| MISSISSIPPI | 65 | 162 | 95 | 207 | 106 | 233 | 96 | 205 | 100 | 220 | 79 | 179 | 111 | 242 |
| MISSOURI | 403 | 516 | 390 | 485 | 475 | 589 | 526 | 670 | 599 | 768 | 595 | 746 | 539 | 700 |
| MONTANA | 47 | 68 | 62 | 90 | 70 | 109 | 89 | 114 | 54 | 81 | 63 | 96 | 51 | 84 |
| NEBRASKA | 34 | 48 | 39 | 49 | 29 | 49 | 66 | 82 | 58 | 86 | 53 | 79 | 53 | 77 |
| NEVADA | 343 | 351 | 376 | 385 | 397 | 410 | 439 | 456 | 439 | 448 | 461 | 479 | 446 | 459 |
| NEW HAMPSHIRE | 104 | 105 | 145 | 149 | 94 | 96 | 126 | 128 | 116 | 117 | 154 | 159 | 133 | 136 |
| NEW JERSEY | 372 | 597 | 339 | 512 | 331 | 495 | 351 | 551 | 373 | 618 | 454 | 752 | 602 | 934 |
| NEW MEXICO | 243 | 278 | 266 | 326 | 324 | 390 | 200 | 315 | 191 | 326 | 243 | 400 | 319 | 376 |
| NEW YORK | 1010 | 1110 | 1029 | 1135 | 1116 | 1216 | 1058 | 1134 | 1074 | 1135 | 1356 | 1439 | 1530 | 1614 |
| NORTH CAROLINA | 696 | 733 | 750 | 795 | 846 | 903 | 857 | 930 | 776 | 849 | 822 | 967 | 833 | 983 |
| NORTH DAKOTA | 5 | 5 | 17 | 20 | 32 | 37 | 17 | 20 | 18 | 20 | 10 | 10 | 5 | 8 |
| OHIO | 634 | 939 | 705 | 1090 | 814 | 1231 | 664 | 918 | 1124 | 1473 | 1272 | 1627 | 1355 | 1729 |
| OREGON | 359 | 383 | 358 | 381 | 342 | 371 | 368 | 406 | 332 | 372 | 392 | 417 | 361 | 377 |
| PENNSYLVANIA | 418 | 1063 | 492 | 1191 | 611 | 1330 | 637 | 1399 | 629 | 1338 | 752 | 1704 | 827 | 1767 |
| RHODE ISLAND | 130 | 132 | 87 | 97 | 133 | 137 | 115 | 119 | 111 | 114 | 142 | 147 | 140 | 146 |
| SOUTH CAROLINA | 214 | 310 | 199 | 308 | 218 | 358 | 238 | 399 | 271 | 447 | 243 | 417 | 237 | 403 |
| SOUTH DAKOTA | 23 | 27 | 20 | 22 | 31 | 39 | 35 | 40 | 32 | 34 | 34 | 36 | 24 | 25 |
| TENNESSEE | 470 | 600 | 479 | 616 | 480 | 624 | 535 | 685 | 633 | 799 | 633 | 819 | 723 | 861 |
| TEXAS | 1067 | 1251 | 1021 | 1286 | 944 | 1269 | 1151 | 1546 | 1123 | 1502 | 1178 | 1606 | 1131 | 1513 |
| UTAH | 331 | 355 | 359 | 399 | 350 | 387 | 370 | 382 | 336 | 355 | 381 | 398 | 422 | 445 |
| VERMONT | 57 | 58 | 52 | 52 | 57 | 58 | 39 | 40 | 43 | 44 | 55 | 56 | 55 | 56 |
| VIRGINIA | 408 | 433 | 502 | 523 | 490 | 537 | 477 | 528 | 389 | 415 | 575 | 591 | 533 | 544 |
| WASHINGTON | 661 | 678 | 651 | 700 | 690 | 765 | 708 | 753 | 628 | 675 | 697 | 740 | 695 | 724 |
| WEST VIRGINIA | 285 | 290 | 332 | 337 | 371 | 379 | 184 | 190 | 451 | 456 | 550 | 559 | 468 | 475 |
| WISCONSIN | 334 | 390 | 371 | 419 | 369 | 440 | 397 | 461 | 415 | 478 | 473 | 548 | 483 | 553 |
| WYOMING | 14 | 28 | 25 | 34 | 40 | 57 | 32 | 48 | 47 | 71 | 43 | 62 | 45 | 71 |

Schedule 13 - State Opioid Deaths by Year_Adjusted and Unadjusted 4844-9....xlsx
CDC Wonder Opioid Overdose Deaths by State, 1999-2018

| | 2013 Opioid Overdose Deaths | | 2014 Opioid Overdose Deaths | | 2015 Opioid Overdose Deaths | | 2016 Opioid Overdose Deaths | | 2017 Opioid Overdose Deaths | | 2018 Opioid Overdose Deaths | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted | Recorded | Adjusted |
| ALABAMA | 166 | 409 | 270 | 566 | 282 | 555 | 343 | 579 | 422 | 603 | 381 | 504 |
| ALASKA | 69 | 75 | 76 | 84 | 86 | 95 | 94 | 95 | 102 | 105 | 68 | 68 |
| ARIZONA | 527 | 798 | 589 | 823 | 671 | 831 | 769 | 896 | 928 | 995 | 1106 | 1162 |
| ARKANSAS | 162 | 204 | 173 | 234 | 203 | 261 | 169 | 235 | 188 | 253 | 208 | 254 |
| CALIFORNIA | 1948 | 2596 | 2024 | 2623 | 2018 | 2551 | 2012 | 2514 | 2199 | 2570 | 2410 | 2729 |
| COLORADO | 433 | 578 | 517 | 639 | 495 | 618 | 536 | 656 | 578 | 679 | 564 | 615 |
| CONNECTICUT | 439 | 464 | 525 | 529 | 685 | 691 | 855 | 861 | 955 | 963 | 948 | 950 |
| DELAWARE | 113 | 130 | 124 | 158 | 133 | 169 | 154 | 237 | 250 | 299 | 355 | 365 |
| DISTRICT OF COLUMBIA | 60 | 68 | 63 | 65 | 98 | 98 | 209 | 211 | 244 | 249 | 191 | 193 |
| FLORIDA | 1268 | 1741 | 1399 | 1893 | 1838 | 2429 | 2798 | 3691 | 3245 | 3960 | 3189 | 3599 |
| GEORGIA | 530 | 717 | 710 | 861 | 858 | 940 | 918 | 991 | 1014 | 1096 | 866 | 918 |
| HAWAII | 69 | 80 | 59 | 71 | 62 | 70 | 77 | 82 | 53 | 61 | 59 | 62 |
| IDAHO | 77 | 131 | 78 | 122 | 90 | 121 | 119 | 154 | 103 | 137 | 120 | 142 |
| ILLINOIS | 1072 | 1229 | 1205 | 1349 | 1381 | 1503 | 1947 | 2033 | 2202 | 2329 | 2169 | 2233 |
| INDIANA | 360 | 779 | 462 | 926 | 535 | 999 | 794 | 1236 | 1176 | 1465 | 1104 | 1245 |
| IOWA | 179 | 191 | 158 | 170 | 170 | 188 | 183 | 200 | 206 | 217 | 143 | 151 |
| KANSAS | 158 | 230 | 173 | 234 | 150 | 201 | 146 | 182 | 144 | 183 | 156 | 187 |
| KENTUCKY | 665 | 890 | 729 | 944 | 885 | 1117 | 989 | 1204 | 1160 | 1296 | 989 | 1077 |
| LOUISIANA | 265 | 563 | 260 | 539 | 287 | 606 | 346 | 659 | 415 | 759 | 444 | 819 |
| MAINE | 125 | 131 | 171 | 173 | 238 | 242 | 301 | 305 | 360 | 363 | 282 | 284 |
| MARYLAND | 749 | 763 | 921 | 947 | 1087 | 1114 | 1821 | 1859 | 1985 | 2026 | 2087 | 2110 |
| MASSACHUSETTS | 888 | 900 | 1140 | 1155 | 1550 | 1572 | 1990 | 2016 | 1913 | 1934 | 1991 | 2023 |
| MICHIGAN | 909 | 1300 | 1052 | 1494 | 1309 | 1685 | 1762 | 2029 | 2033 | 2303 | 2011 | 2210 |
| MINNESOTA | 305 | 379 | 318 | 363 | 338 | 394 | 396 | 460 | 422 | 479 | 343 | 407 |
| MISSISSIPPI | 100 | 221 | 115 | 229 | 150 | 238 | 180 | 231 | 185 | 229 | 173 | 201 |
| MISSOURI | 620 | 789 | 696 | 847 | 692 | 817 | 914 | 1069 | 952 | 1056 | 1132 | 1251 |
| MONTANA | 67 | 91 | 53 | 84 | 48 | 74 | 42 | 68 | 38 | 56 | 64 | 78 |
| NEBRASKA | 41 | 66 | 56 | 76 | 55 | 72 | 44 | 64 | 59 | 77 | 63 | 78 |
| NEVADA | 398 | 424 | 375 | 392 | 419 | 437 | 408 | 420 | 412 | 419 | 372 | 379 |
| NEW HAMPSHIRE | 157 | 160 | 297 | 300 | 380 | 384 | 437 | 442 | 424 | 429 | 412 | 416 |
| NEW JERSEY | 675 | 1010 | 728 | 1032 | 862 | 1245 | 1409 | 1815 | 1969 | 2442 | 2583 | 2654 |
| NEW MEXICO | 322 | 335 | 402 | 410 | 351 | 366 | 349 | 361 | 332 | 337 | 338 | 341 |
| NEW YORK | 1681 | 1758 | 1739 | 1817 | 2166 | 2254 | 3009 | 3091 | 3224 | 3314 | 2991 | 3050 |
| NORTH CAROLINA | 834 | 955 | 967 | 1056 | 1171 | 1260 | 1506 | 1560 | 1953 | 2022 | 1783 | 1835 |
| NORTH DAKOTA | 11 | 11 | 31 | 33 | 34 | 39 | 54 | 62 | 35 | 38 | 36 | 41 |
| OHIO | 1630 | 1942 | 2106 | 2380 | 2698 | 2896 | 3613 | 3802 | 4293 | 4480 | 3237 | 3405 |
| OREGON | 301 | 322 | 340 | 364 | 331 | 348 | 312 | 328 | 344 | 356 | 339 | 353 |
| PENNSYLVANIA | 958 | 1929 | 1092 | 2168 | 1362 | 2746 | 2235 | 4051 | 2548 | 4752 | 2866 | 3754 |
| RHODE ISLAND | 190 | 192 | 205 | 206 | 254 | 256 | 279 | 280 | 277 | 280 | 267 | 273 |
| SOUTH CAROLINA | 247 | 428 | 515 | 545 | 554 | 573 | 628 | 654 | 749 | 772 | 835 | 851 |
| SOUTH DAKOTA | 34 | 39 | 33 | 35 | 27 | 32 | 42 | 44 | 35 | 36 | 28 | 29 |
| TENNESSEE | 767 | 920 | 863 | 991 | 1038 | 1133 | 1186 | 1294 | 1269 | 1354 | 1307 | 1379 |
| TEXAS | 1053 | 1388 | 1151 | 1506 | 1287 | 1536 | 1375 | 1582 | 1458 | 1639 | 1402 | 1561 |
| UTAH | 432 | 446 | 455 | 466 | 448 | 462 | 466 | 492 | 456 | 468 | 437 | 445 |
| VERMONT | 70 | 71 | 64 | 65 | 79 | 81 | 101 | 103 | 114 | 114 | 127 | 130 |
| VIRGINIA | 640 | 657 | 758 | 778 | 820 | 840 | 1130 | 1158 | 1241 | 1260 | 1193 | 1203 |
| WASHINGTON | 640 | 673 | 673 | 702 | 692 | 731 | 709 | 761 | 742 | 779 | 737 | 761 |
| WEST VIRGINIA | 490 | 492 | 554 | 562 | 629 | 636 | 733 | 761 | 833 | 845 | 702 | 708 |
| WISCONSIN | 599 | 682 | 627 | 693 | 622 | 704 | 866 | 914 | 926 | 954 | 846 | 868 |
| WYOMING | 48 | 67 | 54 | 75 | 46 | 62 | 50 | 63 | 47 | 48 | 40 | 41 |