# Exhibit H

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.* [1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE AD HOC COMMITTEE ON ACCOUNTABILITY'S LIMITED OBJECTION TO DEBTORS' MOTION

Eisenberg & Baum, LLP
Michael S. Quinn
Eric Baum
Paul A. Rachmuth
24 Union Square East, Fourth Floor
New York, New York 10003
(212) 353-8700

*Counsel to the Ad Hoc Committee on Accountability*

May 28, 2020

---

[1] The debtors in these chapter 11 cases ("**Debtors**" or "**Purdue**"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014) (collectively, the "**Bankruptcy Cases**").

# TABLE OF CONTENTS

*Page*

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ........................................................................................ ii

**A. PRELIMINARY STATEMENT** ............................................................................. 1

**B. BACKGROUND** ..................................................................................................... 3

**C. BASIS FOR RELIEF – LEGAL ARGUMENT** ................................................... 8

**D. CONCLUSION** ...................................................................................................... 11

## TABLE OF AUTHORITIES

### Cases

*Chemetron Corp. v. Jones*,
  72 F.3d 341 (3d Cir. 1995)..................................................................................................9, 11

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
  747 F.3d 145 (2d Cir. 2014)....................................................................................................9

*In re Bargdill*,
  238 B.R. 711 (Bankr. N.D. Ohio 1999) ..................................................................................9

*In re Motors Liquidation*,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015)................................................................................9, 10

*In re Motors Liquidation Co.*,
  No. 09-50026 (REG), 2015 Bankr. LEXIS 4445 (Bankr. S.D.N.Y. June 1, 2015)............10, 11

*Mennonite Bd. of Missions v. Adams*,
  462 U.S. 791 (1983)................................................................................................................9

*Schroeder v. City of New York*,
  371 U.S. 208 (1962)................................................................................................................9

### Rules

Fed. R. Bankr. P. 3003(c)(3)........................................................................................................9

Fed. R. Bankr. P. 9006(b)(1)........................................................................................................9

The Ad Hoc Committee on Accountability (the "**Ad Hoc Committee**"), by its undersigned

counsel, respectfully submits this Memorandum of Points and Authorities in Limited Objection to

the Debtors' Motion to Extend the General Bar Date and Approve the Form and Manner of Notice

Thereof.

## A. PRELIMINARY STATEMENT

By order dated February 3, 2020, the Bankruptcy Court (i) established a June 30, 2020

deadline for filing proofs of claim (the "**General Bar Date**"), (ii) approved the form and manner

of notice thereof, and (iii) approved procedures for providing notice of bar date and other deadlines

and information to Claimants.[2] Just days before entry of this Order, Practice Fusion, Inc., now a

part of AllScripts Health Care Solutions, Inc. ("**Practice Fusion**"), entered into a Deferred

Prosecution Agreement[3] ("**Deferred Prosecution Agreement**") for criminally conspiring with an

unnamed pharmaceutical company to "target" patients and manipulate private electronic health

records ("**EHR**") to increase sales of extended release opioid ("**EROs**") prescriptions (the

"**Kickback Scheme**").[4]

Media outlets across the country reported and verified the co-conspiring pharmaceutical

company in the Kickback Scheme to be one of the Debtors, identified as Purdue Pharma

(collectively with Practice Fusion, the "**Co-Conspirators**").[5] The United States Attorney for

---

[2] Order Establishing Deadlines for Filing Proofs of Claim (Feb. 3, 2020), Docket No. 800.

[3] Deferred Prosecution Agreement, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 2, *available at* https://www.justice.gov/usao-vt/press-release/file/1239586/download.

[4] Deferred Prosecution Agreement, Exhibit C, Statement of Facts ¶ 1, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 2-4, *available at* https://www.justice.gov/usao-vt/press-release/file/1239606/download.

[5] *See* Derek Brouwer, *Criminal Conspiracy Alleged by Vermont Prosecutors Involved Purdue Pharma*, Seven Days (Jan. 28, 2020), *available at* https://www.sevendaysvt.com/OffMessage/archives/2020/01/28/vermont-prosecutors-allege-criminal-conspiracy-involved-purdue-pharma ("*Seven Days* verified that Pharma Co. X is Purdue Pharma by comparing documents referenced in the court filings with others that identify the program between Stamford, Conn.-based Purdue and Practice Fusion."); Jason N. Doctor & Liisa T. Laine, *Without Oversight, electronic prescribing can*

District of Vermont ("**USAO-Vermont**"), Christina E. Nolan, announced that the opioid company "injected itself in the sacred doctor-patient relationship so that it could peddle even more of its highly addictive and dangerous opioids."[6]

According to the Debtors' Supplemental Notice Plan filed on May 20, 2020,[7] potential claimants received direct mailings on or before February 18, 2020.[8] However, not one court briefing, hearing, or notice (including mailers and/or media advertising) references individual patients targeted and harmed in the Kickback Scheme ("**EHR Creditors**").

Based on the Ad Hoc Committee's examination of the underlying facts in the Kickback Scheme, it is our understanding that Practice Fusion is in possession of articulable information on potential EHR Creditors that includes targeted patient demographics and geographic locations, patient characteristics on health, medical provider characteristics, office visits and chief complaints, written prescriptions and pharmacy fillings, and other measurements.[9] This highly-

---

*harm patients*, Stat News, (Feb. 18, 2020), https://www.statnews.com/2020/02/18/without-oversight-electronic-prescribing-can-harm-patients/; Mike Spector & Tom Hals, EXCLUSIVE-Oxycontin maker Purdue is "Pharma Co X" in U.S. Opioid Kickback Probe-Sources, Reuters (Jan. 28, 2020), https://finance.yahoo.com/news/exclusive-oxycontin-maker-purdue-pharma-213525076.html ("Members of the wealthy Sackler family who control Purdue but no longer sit on its board have also been named in litigation and issued a separate statement. 'Throughout their time on the board since 2007, the directors were regularly and consistently assured that the company was in full compliance with all legal and regulatory requirements, and so we would be profoundly disappointed if any of those assurances turned out not to be true[.]'"); Christina Farr, *Silicon Valley health-tech start-up took kickbacks to push doctors to prescribe opioids, DOJ finds*, CNBC (Jan. 28, 2020), https://www.cnbc.com/2020/01/28/practice-fusion-took-kickbacks-to-push-opioids-to-doctors-doj-finds.html; Brian Mann, *Health Care Software Firm Fined $145M In Opioid Scheme with Drug Companies,* NPR (Feb. 1, 2020), https://www.npr.org/2020/02/01/801832788/healthcare-software-firm-fined-145m-in-opioid-scheme-with-drug-companies.

[6] U.S. Dep't of Justice Press Release, U.S. Attorney's Office for the District of Vermont, *Electronic Health Records Vendor To Pay Largest Criminal Fine in Vermont History and a Total of $145 Million to Resolve Criminal and Civil Investigations* (Jan. 27, 2020), *available at* https://www.justice.gov/usao-vt/pr/electronic-health-records-vendor-pay-largest-criminal-fine-vermont-history-and-total-145.

[7] *See* Suppl. Decl. of Jeanne C. Finnegan ¶ 6 (May 20, 2020), Docket No. 1179.

[8] *See id.*

[9] *See* Practice Fusion Proposal for Pharma Co. X, *Therapy, Treatment Pattern & Outcomes,* Exhibit at PFDPA00001795 & PFDPA00001808.

2

sensitive information ought to be examined by the Court and used for the sole purpose of providing notice.

The Ad Hoc Committee agrees with the Debtors that the General Bar Date needs to be extended. However, the Ad Hoc Committee objects to a 30-day extension and, instead, advocates for a 90-day extension so as to give adequate time for the Debtors to provide notice to EHR Creditors whose names can be known or very easily ascertained from the third-party EHR vendor, Practice Fusion.[10]

There is also good cause for the Court to require the Debtors amend the Extended Notice Plan to the extent that it does not already provide direct actual notice to EHR Creditors, and to inform EHR Creditors of the harms caused by the Debtors for the Debtors' role in targeting patients in its participation of an illegal Kickback Scheme.

### B.    BACKGROUND

The Deferred Prosecution Agreement and incorporated Statement of Facts, the Criminal Information ("**Information**"),[11] the January 27th and April 8th USAO-Vermont Press Releases[12], publicly available presentation materials,[13] and the four hundred (400) disclosed Practice Fusion

---

[10] The Court has the authority to address this problem. In addition, it is in the best interest of the two estate fiduciaries, including the Debtors, their estates, and various creditors as represented by the Committee of Unsecured Creditors to move the Court for discovery to accomplish the necessary notice herein requested.

[11] Information, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download.

[12] U.S. Dep't of Justice Press Release, U.S. Attorney's Office for the District of Vermont, *Electronic Health Records Vendor To Pay Largest Criminal Fine in Vermont History and a Total of $145 Million to Resolve Criminal and Civil Investigations* (Jan. 27, 2020), *available at* https://www.justice.gov/usao-vt/pr/electronic-health-records-vendor-pay-largest-criminal-fine-vermont-history-and-total-145.

[13] Steven Labkoff & Christopher Bond, et. al., *Reach and Impact of an EHR Pain Care Decision Support Program*, American Medical Informatics Association Annual Symposium, Washington, DC, (Nov. 04-08, 2017), *available at* https://d3w3ioujxcalzn.cloudfront.net/item_files/392b/attachments/404739/original/labkoff_chronic_pain_cds_pos_amia2017_print.pdf; Board No. 082 Reach and Impact of an EHR Pain Care Clinical Decision Support Program, Washington    D.C.    AMIA    2017    Annual    Symposium    (Nov.    4-8),    *available    at* https://amia2017.zerista.com/event/member/389550.

documents maintained in the Department of Justice's online repository,[14] evidence the nefarious

activities against EHR Creditors by the Co-Conspirators.

Purdue engaged Practice Fusion as a third-party vendor beginning in 2013. The Co-

Conspirators entered into a vendor agreement,[15] which appears to have been updated from time to

time.[16]

To combat the eroding market and the mounting public pressure against prescribed opioids,

Practice Fusion toyed with "targeting" patients[17] by implementing a pain assessment tool to be

used during every doctor-patient visit.[18] According to a 2014 e-mail exchange between the Co-

Conspirators: an article was forwarded to the pharmaceutical company's CEO, explaining "we too

are working to get our pain management tools into their platform," and the pharmaceutical

company's CEO responded, "[t]hanks. The key is understanding how it grows or protects

scripts."[19] In response to the federal investigation into the Kickback Scheme, FBI Special Agent

---

[14] U.S. Dep't of Justice Press Release, U.S. Attorney's Office for the District of Vermont, *Public Repository of Documents Relating to Practice Fusion, Inc.'s Resolution of Conspiracy and Kickback Charges in Connection with Pharma Co. X Now Available On-Line* (Apr. 8, 2020), *available at* https://www.justice.gov/usao-vt/pr/public-repository-documents-relating-practice-fusion-inc-s-resolution-conspiracy-and; *Documents Underlying the Conduct Described in the Deferred Prosecution Agreement Between the U.S. Department of Justice and Practice Fusion, Inc.*, *available at* https://www.pfdatabasedistrictofvermontsettlement.net/.

[15] Practice Fusion Apr. 1, 2013 Master Service Agreement, Exhibit at PFDAPA00000803.

[16] Practice Fusion Mar. 15, 2016 Email, Exhibit at PFDAPA0004514 ("Please find attached the executed [Statement of Work] and purchase order for the [Purdue] Pain Project.").

[17] Information, ¶ ¶ 32 and 34, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download.

[18] Information, ¶ 30, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download; Practice Fusion, March 2015 Emails, Exhibit at PFDAPA0001907; Practice Fusion, Sept. 15, 2015 Emails, Exhibit at PFDPA00004448 ("The feedback from the brand is they are willing to fund $1,000,000 for the study split three ways between the brands").

[19] Information ¶ 28, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download.

Timothy M. Dunham concluded that "Practice Fusion exploited technology to profit at the expense of a vulnerable population – patients seeking medical advice."[20]

In exchange for approximately one million dollars ($1,000,000.00) in kickbacks masked as "sponsorship"[21] payments from the Debtors, Practice Fusion programmed a specific pain management dropdown menu—known as a Clinical Decision Support ("**CDS**") alert—into its patient medical record system.[22]

The CDS alert worked as follows: when health care providers accessed private patient medical records during medical examinations, a drop-down banner would suddenly appear, alerting the provider to consider particular clinical information, perform certain tests or assessments, and complete certain documentation, given the particular personal health information and circumstances of the patient before the provider at that moment.[23]

The CDS was to have a significant commercial impact by increasing ERO prescriptions. By April of 2015, Practice Fusion sought to develop a return on investment ("**ROI**") model to justify the cost of their CDS marketing alerts.[24] Practice Fusion calculated their client would obtain

---

[20] U.S. Dep't of Justice Press Release, U.S. Attorney's Office for the District of Vermont, *Electronic Health Records Vendor To Pay Largest Criminal Fine in Vermont History and a Total of $145 Million to Resolve Criminal and Civil Investigations* (Jan. 27, 2020), *available at* https://www.justice.gov/usao-vt/pr/electronic-health-records-vendor-pay-largest-criminal-fine-vermont-history-and-total-145.

[21] U.S. Dep't of Justice Press Release 20-94, Office of Public Affairs, *Electronic Health Records Vendor To Pay $145 Million to Resolve Criminal and Civil Investigations* (Jan. 27, 2020), available at https://www.justice.gov/opa/pr/electronic-health-records-vendor-pay-145-million-resolve-criminal-and-civil-investigations-0.

[22] Deferred Prosecution Agreement, Exhibit C, Statement of Facts ¶ 48, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 2-4, *available at* https://www.justice.gov/usao-vt/press-release/file/1239606/download.; Practice Fusion Mar. 23, 2015 Email, Exhibit PFDPA00000029; Practice Fusion July 16, 2015 Email, Exhibit at PFDAPA0004210; Practice Fusion ROI Spreadsheet, Exhibit at PFDPA000001836.

[23] Information ¶¶ 17 & 97, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download; Practice Fusion July 28, 2016 Email, Exhibit at PFDPA00004624.

[24] See Practice Fusion Apr. 22, 2015 Email Exhibit at PFDAPA00000438.

5

a ROI of between 5.8 and 7.8 times its cost if it implemented the Pain CDS.[25] This financial model,

as revised in an internal April 22, 2015 Practice Fusion e-mail, estimated that the pharmaceutical

company would achieve a "patient gain" of two thousand seven hundred seventy-seven (2,777)

and between $8,458,232 and $11,277,643 in additional opioid revenue by implementing the

CDS.[26]

The CDS went live from July 6, 2016 until the spring of 2019.[27] During this period the

CDS alerted health care providers more than Two Hundred and Thirty Million (230,000,000)

times.[28] Based on the electronic alert, between 2016 and 2017, for example, doctors started more

than 700,000 unique pain care plans.[29] Approximately twenty percent (20%) to thirty-three percent

(33%) of these plans ended up in the prescription of EROs, such as Oxycontin.[30] In a one-year

period alone, more than one hundred and forty thousand (140,000) patients were prescribed

opioids.[31]

Practice Fusion was aware of the illegality of a medical records company selling CDS

programs based on anticipated ROI that a pharmaceutical company client could achieve.[32]

According to an internal April 2014 Practice Fusion e-mail, this scheme "[i]ndicating that [Purdue]

---

[25] Practice Fusion Apr. 22, 2015 Email Exhibit at PFDPA00000438; Practice Fusion ROI Spreadsheet, Exhibit at PFDAPA00001836.

[26] *Id.*

[27] Information ¶¶ 114 & 129, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download.

[28] *Id.*

[29] *See* Jason N. Doctor & Liisa T. Laine, *Without Oversight, electronic prescribing can harm patients*, Stat News, (Feb. 18, 2020), https://www.statnews.com/2020/02/18/without-oversight-electronic-prescribing-can-harm-patients/.

[30] *Id.*

[31] *Id.*

[32] *See* Information ¶ 20, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download.

influenced clinical decisions through sponsored money has legal implications versus a marketing program where a banner can be displayed and influencing prescribing behavior."[33]

One way to justify the legality of the CDS program was to couch the program as a "study," rather than what it was— a marketing scheme.[34] For example, Purdue's former Executive Director of Medical Strategy and Director of Epidemiology presented a 2017 Practice Fusion poster titled "*Reach and Impact of the EHR Pain Care Clinical Support Program* (the "**Poster**") at the 2017 American Medical Informatics Association ("**AMIA**") conference and annual symposium.[35] This Poster detailed the "results" of the CDS "study."  The Purdue employees concluded that a CDS can "help physicians follow chronic pain management clinical guidelines and improve documentation of care-related data and activity."[36]

While the "study" portrayed a downward shift of opioid therapy in care plans, according to the USAO-Vermont, there was no analysis of actual opioid prescribing trends—as opposed to care plan documentation—and no assessment of ERO prescribing.[37] The USAO-Vermont further revealed that the presentation failed to indicate that a goal of the Pain CDS was to increase ERO prescribing, that pharmaceutical marketers were involved in designing the program, that the Pain

[33] Deferred Prosecution Agreement, Exhibit C, Statement of Facts ¶ 25, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 2-4, *available at* https://www.justice.gov/usao-vt/press-release/file/1239606/download; See Practice Fusion Apr. 2014 Emails, Exhibit PFDAPA00002700.

[34] Practice Fusion Sept. 2, 2015 Email, Exhibit at PFDPA00004215 ("My take…we were talking to product managers, and they could care less about [Real World Events]. For them, this was all about marketing.").

[35] Steven Labkoff & Christopher Bond, et. al., *Reach and Impact of an EHR Pain Care Decision Support Program*, American Medical Informatics Association Annual Symposium, Washington, DC, (Nov. 04-08, 2017), *available at* https://d3w3ioujxcalzn.cloudfront.net/item_files/392b/attachments/404739/original/labkoff_chronic_pain_cds_pos_amia2017_print.pdf; Board No. 082 Reach and Impact of an EHR Pain Care Clinical Decision Support Program, Washington D.C. AMIA 2017 Annual Symposium (Nov. 4-8), *available at* https://amia2017.zerista.com/event/member/389550.

[36] Information ¶ 113, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 1, *available at* https://www.justice.gov/usao-vt/press-release/file/1239581/download.

[37] *See id.*

CDS was financed by marketing budgets, or whether the Pain CDS influenced prescribing EROs.[38]

The pharmaceutical company cared little about data outcomes.[39] According to Principal Deputy

Assistant Attorney General Ethan Davis of the Department of Justice's Civil Division, "[w]hen a

software vendor claims to be providing unbiased medical information – especially information

relating to the prescription of opioids – we expect honesty and candor to the physicians making

treatment decisions based on that information."[40]

Data from the CDS program was collected and synthesized into promotional materials like

the Purdue employee authored Poster and a Practice Fusion map of the U.S.A highlighting clusters

of CDS patients. [41] Another Practice Fusion sales document outlined the patient data available to

clients such as age, gender, race, geographic region, weight, height, patient prescriptions written

and filled (with corresponding diagnosis) and the opportunity for client's to review provider

notes.[42] The targeting of patients in this criminal conspiracy is well documented.

## C.     BASIS FOR RELIEF – LEGAL ARGUMENT

The reason for requiring a creditor to timely file a proof of claim is to alert the bankruptcy

court, trustee, and other creditors, as well as the Debtors to the existence of the particular claim so

---

[38] *See id.*

[39] *See generally* Deferred Prosecution Agreement, *U.S. v. Practice Fusion, Inc.*, No. 2:20-cr-11 (D. Vt. Jan. 27, 2020), Docket No. 2, *available at* https://www.justice.gov/usao-vt/press-release/file/1239586/download.

[40] U.S. Dep't of Justice Press Release, U.S. Attorney's Office for the District of Vermont, *Electronic Health Records Vendor To Pay Largest Criminal Fine in Vermont History and a Total of $145 Million to Resolve Criminal and Civil Investigations* (Jan. 27, 2020), *available at* https://www.justice.gov/usao-vt/pr/electronic-health-records-vendor-pay-largest-criminal-fine-vermont-history-and-total-145.

[41] *See* Practice Fusion Proposal for Pharma Co. X, *Therapy, Treatment Pattern & Outcomes*, Exhibit at PFDPA00001790 & PFDPA00001808.

[42] Practice Fusion Proposal for Pharma Co. X, *Real World Evidence: Extended Release Opioids*, Exhibit at PFDPA00003208 & PFDPA00003212 & PFDPA00003216.

as to facilitate the orderly administration of the bankruptcy case.[43] Prior to the bar date, the Court may grant an extension of the bar date for cause.[44]

"The general rule that emerges . . . is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."[45] In other words, adequacy of notice "turns on what the debtor . . . knew about the claim or, with reasonable diligence, should have known."[46] The caselaw requires actual notice to claimants whose identity is "reasonably ascertainable."[47]

"A creditor is 'reasonably ascertainable' if the debtor can uncover the identity of that creditor through 'reasonably diligent efforts.'"[48] Generally, this reasonably-ascertainable standard requires "only an examination of the debtor's books and records," but courts have recognized that "situations could arise when creditors are 'reasonably ascertainable' although not identifiable through the debtor's books and records."[49] Thus, although due process does not require "a vast, open-ended investigation,"[50] the debtor must still "make effective use of the information already available" – whether that information is in the debtor's books and records or elsewhere.[51]

---

[43] *In re Bargdill*, 238 B.R. 711, 717 (Bankr. N.D. Ohio 1999).

[44] *See* Fed. R. Bankr. P. 3003(c)(3) and 9006(b)(1).

[45] *Schroeder v. City of New York,* 371 U.S. 208, 212-13 (1962); *accord Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800 (1983).

[46] *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,* 747 F.3d 145, 150 (2d Cir. 2014) (citing *Chemetron Corp. v. Jones,* 72 F.3d 341, 345-46 (3d Cir. 1995)).

[47] *In re Motors Liquidation*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).

[48] *Id.*

[49] *In re Motors Liquidation Co.*, No. 09-50026 (REG), 2015 Bankr. LEXIS 4445, at *83-86 n.115 (Bankr. S.D.N.Y. June 1, 2015) (citing *Chemetron*, 72 F.3d at 347 n.2).

[50] *Chemetron*, 72 F.3d at 346.

[51] *See Motors Liquidation*, 529 B.R. at 550.

9

The Court has the authority to obtain creditor information from a third-party. For example, in *TK Holdings Inc.*, a Delaware Bankruptcy Court "authorized the release to the Debtors of certain motor vehicle records necessary to implement special noticing procedures."[52] The debtors in that case were "one of the world's leading automotive safety system companies" and required to provide notice to "individuals who own or may have owned vehicles containing [a device] manufactured by the Debtors."[53] To do so, the Debtors "require[d] certain vehicle registration information," such as "the owner names and addresses, years, makes, models and VIN Numbers, to implement notice procedures, but "[d]ue to confidentiality restrictions," a certain entity could not turn over the requested information "from the applicable departments of motor vehicles" "absent a court order compelling them to do so."[54] Thus, the Debtors received a court order to provide adequate notice.

In *Motors Liquidation,* the Court ruled that individuals with claims arising from a motor vehicle defect discovered after the Bar Date passed, were entitled to notice by direct mail or some equivalent, as required by due process.[55] In that case, the Bar Date expired before drivers became aware of a defect and an opportunity to file a claim. Here, like in *Motors Liquidation,* the Co-Conspirators are privy to secreted information affecting potential creditors. Now that the Kickback Scheme has come to light, if the General Bar Date in the instant bankruptcy is not extended and proper notice is not given to patients "targeted" by the co-conspirators, a legion of unaware creditors will be barred from filing claims. Rather than have to re-open and re-visit notice like in

---

[52] Court Order, *In re TK Holdings Inc.,* Case No. 17-11375-BLS (Bankr. D. Del. June 27, 2017), Doc 110; *see also* Court Order, *In re TK Holdings Inc.,* Case No. 17-11375-BLS (Bankr. D. Del. Sept. 28, 2017), Doc 882.

[53] Debtors' Mot. at 1-2 ¶¶ 1-2, *In re TK Holdings Inc.,* Case No. 17-11375-BLS (Bankr. D. Del. June 26, 2017), Doc 9.

[54] *Id.* at 4 ¶ 8, 7 ¶ 13, 9 ¶ 16.

[55] *In re Motors Liquidation*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).

*Motors Liquidation*, the instant Court should seize this opportunity to proactively extend and expand notice requirements.

The Debtors may argue that they have no EHR Creditor information in their own books and records. Here, like in *Motors Liquidation*, however, the EHR Creditors can be reasonably ascertainable through a close vendor.[56] Like in *TK Holdings*, where a Bankruptcy Court ordered a third-party to turn over personal information for the limited purpose of providing adequate notice, here, Practice Fusion, another records company, can be ordered to turn over data on individuals to the Court.

Furthermore, because the Debtors were a conspirator to the Practice Fusion crime, it would be unreasonable to withhold notice from the harmed patients just because the conspiracy was arranged to guard against corporate possession of identifying information and future disclosures. Secondly, the very nature of the conspiracy provided the Debtors with intimate demographic information of those harmed.[57] This information should now be used for good - to proactively notify an unaware population that not only has it been subjected to criminal activity, but that it also has the opportunity to file claims in this bankruptcy.

### D.  CONCLUSION

For the foregoing reasons, the Ad Hoc Committee respectfully requests this Court extend the General Bar Date for 90 days, to Monday, September 28, 2020 at 5:00 p.m., require the Debtors to provide actual direct notice to the EHR Creditors, to inform the EHR Creditors of potential

---

[56] *Motors Liquidation*, 2015 Bankr. LEXIS 4445, at *83-86 n.115 (citing *Chemetron*, 72 F.3d 341, 347 n.2).

[57] *See* Practice Fusion Proposal for Pharma Co. X, Therapy, Treatment Pattern & Outcomes, Exhibit at PFDPA00001795; Practice Fusion Proposal for Pharma Co. X, *Real World Evidence: Extended Release Opioids*, Exhibit at PFDPA00003212.

claims against the Debtors for the Debtors' harms caused to them by its participation in an illegal

Kickback Scheme, and grant such other relief as it deems just and appropriate.


Dated: May 28, 2020          Respectfully Submitted,
       New York, NY
                             Eisenberg & Baum, LLP

                             By:    /s/ Michael S. Quinn
                                    Michael S. Quinn (mq-1640)
                                    Eric Baum (eb-5493)
                                    Paul A. Rachmuth (pr-1566)
                             24 Union Square East, Fourth Floor
                             New York, New York 10003
                             (212) 353-8700
                             mquinn@eandblaw.com
                             prachmuth@eandblaw.com
                             ebaum@eandblaw.com

                             *Counsel to Ad Hoc Committee on Accountability*