UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
: 
In re: : Chapter 11
: 
PURDUE PHARMA L.P., *et al.*, : Case No. 19-23649 (RDD)
: 
Debtors. : (Jointly Administered)
: 
------------------------------------------------------------ X

# MEDIATORS' REPORT

The Honorable Layn Phillips and Mr. Kenneth Feinberg, appointed co-mediators (the "Mediators") in these cases pursuant to an order of this Court entered March 4, 2020 (the "Mediation Order") (Dkt. No. 895),[1] respectfully submit this report in accordance with paragraph 17 of the Mediation Order.

## Initial Statement

1.  The Mediators report that every participant in the Mediation, whether participating as an official Mediation Party or informally, engaged with both the Mediators and one another in good faith for the purpose of negotiating an allocation of the Debtors' estate as among the Private Claimants and Non-Federal Public Claimants. The participants in the Mediation process who were not "Mediation Parties" included the United States of America, Native American Tribes, representatives of a putative class of independent public school districts (the "PSD")[2], proposed representatives of a putative class of children born with NAS in the State of West Virginia (the "WV NAS"), the NAACP and a group of victim advocates which refer to

---

[1] Unless the context requires otherwise, capitalized terms not defined in this Report have the meanings given them in the Mediation Order.

[2] The PSD also participated in Mediation pursuant to the April 21, 2020 consent order. The Public School Districts are represented by the law firms of Mehri & Skalet, and Hughes Socol Piers Resnick & Dym, Ltd. and their co-counsel. The Non-Federal Public Claimants do not include the PSD.

themselves as the "Ad Hoc Committee on Accountability". The Mediators also heard the views of individual claimants during the Mediation.

    2.    For ease of reference, the following defined terms are used in this report:

        a.  The <u>Non-Federal Public Claimants</u> means the Ad Hoc Group of Non-Consenting States (the "<u>NCSG</u>"), the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "<u>AHC</u>") and the Multistate Governmental Entity Group (the "<u>MSGE</u>").

        b.  The <u>Personal Injury Claimants</u> means the Ad Hoc Group of Individual Victims.

        c.  The <u>TPPs</u> means counsel for the Blue Cross Blue Shield Association, various third-party payors and health insurance carrier plaintiffs.

        d.  The <u>Hospitals</u> means the Ad Hoc Group of Hospitals.

        e.  The <u>NAS Committee</u> means the Ad Hoc Committee of NAS Children.

        f.  The <u>Insurance Purchasers</u> means a putative class of individual health insurance purchasers.

        g.  <u>Native American Tribes</u> means the Muscogee (Creek) Nation, a member of the AHC, the Cheyenne & Arapaho Tribes, an ex officio member of the Unsecured Creditors' Committee, and other federally recognized tribes represented by various counsel from the Tribal Leadership Committee and the Plaintiffs Executive Committee in MDL No. 2804.

A list of the names and counsel and principals who participated in one or more mediation sessions is attached hereto as <u>Exhibit A</u>.

**Summary of Mediation Outcomes**

*The Non-Federal Public Claimants Abatement Agreement*

3.      During the Mediation, the Non-Federal Public Claimants agreed among themselves that all value received by them through these chapter 11 cases would be exclusively dedicated to programs designed to abate the opioid crisis, and that such value cannot be used for any other purpose (other than an amount to fund administration of the programs themselves and to pay legal fees and costs).  To the Mediators' knowledge, this is the first time States, Territories, Native American Tribes and Local Governments have agreed to be bound by such a commitment.  The Non-Federal Public Claimants also have agreed that these requirements will be embedded in a plan of reorganization for Purdue and the related order confirming such plan.

4.      The NCSG, the AHC and the MSGE also addressed and resolved other significant issues, including value allocation for all Native American Tribes (and the inclusion of culturally appropriate abatement programs for these communities) and a default mechanism that, in the absence of a standalone agreement between a State or Territory and its political subdivisions, provides a structure and process for applying funds to abate the opioid crisis and ensures consultation through local participation mechanisms in determining which programs will be funded from value received.  The NAACP and the Non-Federal Public Claimants are also committed to continuing to engage regarding concerns about the equitable implementation of the abatement program in each State. This discussion has not ended and will continue.  No agreement between the PSDs and the Non-Federal Government Entities has been reached to date. We will continue to seek resolution between the PSDs and the Non-Federal Government Entities.

*The Private Claimants' Agreements*

5. Subject to limited conditions discussed below, there are four written term sheets each of which, individually, is supported by the Debtors, the Non-Federal Public Claimants and the specific individual Private Claimant group (or counsel to certain members of such Private Claimant Group) that is counterparty to such term sheet, which addresses allocation of estate value to each Private Claimant group, respectively. Such term sheets have been reached, respectively, with each of the Personal Injury Claimants, the Hospitals, counsel to certain of the TPPs, and the NAS Committee (with regard to abatement) (the "TS Private Claimants"). In addition, the Debtors and the Insurance Purchasers have reached an agreement for an agreed sum to be paid over two years that will be dedicated to a specific abatement use that has been agreed by the Debtors and the Insurance Purchasers.

6. Subject to the terms of the term sheet reached with the Personal Injury Claimants, personal injury claimants will be eligible to receive cash distributions through fair and equitable trust distribution procedures developed by the Personal Injury Claimants but subject to the consent of the Non-Federal Public Claimants, such consent not to be unreasonably withheld, and approval by the Court as part of a confirmed plan of reorganization. The NAS Committee (with regard to personal injury claims) and others are participating in the drafting of the trust distribution procedures.

7. The term sheets for the Hospitals, TPPs, and NAS Committee (with regard to abatement) require each private creditor group to use substantially all of their respective allocations to fund mutually agreeable programs designed to abate the opioid crisis (including treatments), pursuant to commitments embodied in a confirmed plan of reorganization.

**Other Elements of the Term Sheets**

8. While certain details of the term sheets remain to be finalized, there are certain similarities among the agreements, as set forth below.

9. First, each of the Private Claimants will receive a fixed amount of value over time, the values and time periods varying for each such group.

10. Second, in exchange for this treatment under a confirmed plan of reorganization, the Private Claimants will release (or support releases of) the Debtors, their estates, and their respective current and former officers, directors, employees, and owners (and any related trusts and their respective trustees and beneficiaries), subject to paragraph 12 below.

11. Third, legal fees for each Private Claimant group will be paid exclusively out of its agreed distribution or by other agreements with individual claimants (and not by the estate), although the application of legal fees remains to be resolved between the Non-Federal Public Claimants and each of the Private Claimant groups.

12. Fourth, all term sheets with the TS Private Claimants are conditioned on the Court's confirmation of a plan of reorganization that includes participation by the Sackler family in the plan of reorganization (although this does not limit the ability of any Non-Federal Public Claimant to object to or vote against a plan of reorganization). Three of the four term sheets also are conditioned on resolution of the United States' claims on terms reasonably acceptable to the Non-Federal Public Claimants, and email correspondence with respect to the fourth term sheet addresses this issue as well.

**Next Steps**

13. As indicated above, there remain terms to be negotiated by the parties with respect to each of the term sheets in order to reach final agreements between each of the four TS

5

Private Claimant groups and the Non-Federal Public Claimants, respectively. In addition, the Debtors and the Insurance Purchasers will need to finalize their agreement.

14. The Non-Federal Public Claimants and the four TS Private Claimants have indicated an intent to work diligently with the Mediators to resolve certain remaining open issues pertaining to their term sheets. The Debtors and the Insurance Purchasers will do the same.

15. We have agreed to remain available throughout September (and, if necessary, longer) to help facilitate resolution of open issues.

Dated:   September 23, 2020

By: _____
Layn R. Phillips

By: *Ken Feinberg pp Layn R. Phillips*
Kenneth R. Feinberg

*Mediators*

## Exhibit A

## List of Mediation Parties

| Mediation Parties | Name of Individual Participants |
|---|---|
| Debtors | Marc Kesselman (Purdue Pharma L.P.)<br>Marshall Huebner (Davis Polk & Wardwell LLP)<br>Frances Bivens (Davis Polk & Wardwell LLP)<br>Benjamin Kaminetzky (Davis Polk & Wardwell LLP)<br>Eli Vonnegut (Davis Polk & Wardwell LLP)<br>Sheila Birnbaum (Dechert LLP) |
| Official Committee of Unsecured Creditors | Arik Preis (Akin Gump Strauss Hauer & Feld, LLP)<br>Sara Brauner (Akin Gump Strauss Hauer & Feld, LLP)<br>Mike Atkinson (Province, LLP) |
| NCSG | Michelle Burkart (California Attorney General)<br>Judith Fiorentini (California Attorney General)<br>Kimberly Massicotte (Connecticut Attorney General)<br>Jeremy Pearlman (Connecticut Attorney General)<br>Sandy Alexander (Massachusetts Attorney General)<br>Gillian Feiner (Massachusetts Attorney General)<br>M. Umair Khan (New York Attorney General)<br>David Nachman (New York Attorney General)<br>James Donahue (Pennsylvania Attorney General)<br>Neil Mara (Pennsylvania Attorney General)<br>Melissa Van Eck (Pennsylvania Attorney General)<br>Tad O'Neill (Washington Attorney General)<br>Pillsbury Winthrop Shaw Pittman LLP |
| AHC | John Guard (Florida Attorney General)<br>Gary Gotto (Keller Rohrback LLP)<br>Joseph Rice (Motley Rice LLC)<br>Pamela Thurmond (City of Philadelphia)<br>Paul Hanly (Simmons Hanly Conroy LLC)<br>Michael Leftwich (Tennessee Attorney General)<br>Jennifer Peacock (Tennessee Attorney General)<br>Paul Singer (Texas Attorney General)<br>Brown Rudnick LLP<br>Gilbert LLP<br>Kramer Levin Naftalis & Frankel LLP<br>Otterbourg P.C. |

| Mediation Parties | Name of Individual Participants |
|---|---|
| MSGE | Joanne Cicala (The Cicala Law Firm PLLC)<br>F. Jerome Tapley (Cory Watson, P.C.)<br>John White (Harrison White, P.C.)<br>Dara Hegar (The Lanier Law Firm)<br>Todd Court (McAfee & Taft)<br>Jeffrey Simon (Simon Greenstone Panatier, P.C.)<br>Shelly Sanford (Watts Guerra LLP)<br>Caplin & Drysdale |
| Personal Injury Claimants | Ryan Hampton (Individual)<br>Cheryl Juaire (Individual)<br>Anne Andrews (Andrews & Thornton)<br>Sean Higgins (Andrews & Thornton)<br>Ed Neiger (ASK LLP)<br>Ed Gentle (Gentle, Turner, Sexton & Harbison, LLC)<br>Chris Shore (White & Case LLP) |
| TPPs | Mark Fischer (Rawlings & Associates, PLLC)<br>Tom Sobol (Hagens Berman Sobol Shapiro LLP)<br>Lauren Barnes (Hagens Berman Sobol Shapiro LLP)<br>Gerald Lawrence (Lowey Dannenberg P.C.) |
| Hospitals | John W. (Don) Barrett (Barret Law Group, P.A.)<br>Robert A. Clifford (Clifford Law Offices, P.C.)<br>Jonathan W. Cuneo (Cuneo Gilbert & LaDuca, LLP) |
| NAS Committee | Celeste Brustowicz (Cooper Law Firm, LLC)<br>Scott Bickford (Martzell Bickford & Centola, LLC)<br>Calvin Fayard (Calvin C. Fayard, Jr. APC)<br>Kevin Malone (Krupnick Campbell Malone) |
| Insurance Purchasers | Nicholas F. Kajon (Stevens & Lee, P.C.)<br>James Young (Morgan & Morgan, P.A.)<br>Juan R. Martinez (Morgan & Morgan, P.A.) |