DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Frances E. Bivens
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DEBTORS' OBJECTION TO MOVANT INDEPENDENT EMERGENCY
ROOM PHYSICIAN'S MOTION FOR CLASS TREATMENT PURSUANT TO
FED. BANKR. P. 9014 AND 7023 FOR AN ORDER MAKING FED. R. CIV. P. 23
APPLICABLE TO THESE PROCEEDINGS, AND GRANTING RELATED RELIEF**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT .............................................................................................................5

I.    This Court Should Not Exercise Its Discretion to Apply Rule 23 to the
      Movant's Proposed Class Claim ...............................................................6

      A.    The Movant's Putative Class Was Not Certified Prepetition ...........7

      B.    Members of the Movant's Putative Class Received Adequate Notice of
            the Bar Date ...................................................................................7

      C.    Certification of the Proposed Class Will Adversely Affect the
            Administration of These Estates ......................................................8

II.   The Movant Has Not Established That He Has Met The Requirements of Rule
      23...............................................................................................................10

      A.    The Movant Does Not Satisfy Rule 23(b)(3)...................................11

            1.    Proceeding as a Class Is Neither Necessary Nor Superior .................11

            2.    Individual Legal and Factual Issues Predominate Over Any
                  Perceived Common Issue.....................................................12

      B.    The Movant Cannot Satisfy Rule 23(a)'s Requirements ................16

            1.    Commonality.........................................................................16

            2.    Typicality and Adequacy of Representation........................17

III.  The Movant's Request for Additional Relief is Without Merit...................18

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*In re Adam Aircraft Indus., Inc.*,
 No. 08-11751, 2009 WL 2100929 (Bankr. D. Colo. 2009) ..................................................... 9

*In re Arthur Treacher's Franchise Litig.*,
 93 F.R.D. 590 (E.D. Pa. 1982) ............................................................................................. 12

*In re Bally Total Fitness of Greater N.Y., Inc.*,
 402 B.R. 616 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ......................... 11, 12

*Bergan Mercy Health Sys. v. Haven*,
 620 N.W.2d 339 (Neb. 2000) ............................................................................................... 13

*In re Chaparral Energy, Inc.*,
 571 B.R. 642 (Bankr. D. Del. 2017) ...................................................................................... 6

*In re Comput. Learning Ctrs., Inc.*,
 344 B.R. 79 (Bankr. E.D. Va. 2006) ..................................................................................... 9

*Domestic Drywall Antitrust Litig.*,
 322 F.R.D. 188 (E.D. Pa. 2017) .......................................................................................... 17

*In re Ephedra Prod. Liab. Litig.*,
 329 B.R. 1 (S.D.N.Y. 2005) ......................................................................................... *passim*

*Foister v. Purdue Pharma L.P.*,
 No. Civ.A. 01-268-DCR, 2002 WL 1008608 (E.D. Ky. Feb. 26, 2002) ......................... 16, 17

*Harris v. Purdue Pharma*,
 218 F.R.D. 590 (S.D. Ohio 2003) ........................................................................................ 16

*Huey v. Meek*,
 419 S.W.3d 875 (Mo. App. S.D. 2013) ................................................................................ 13

*Hurtado v. Purdue Pharma Co.*,
 No. 12648/03, 2005 WL 192351 (N.Y. Sup. Ct. Jan. 24, 2005) ........................................ 3, 16

*In re Hydrogen Peroxide Antitrust Litig.*,
 552 F.3d 305 (3d Cir. 2008), *as amended* (Jan. 16, 2009) .................................................. 15

*Mazzei v. Money Store*,
 829 F.3d 260 (2d Cir. 2016) ................................................................................................ 17

*Mem'l Hosp. at Gulfport v. Proulx ex rel. Proulx*,
 121 So. 3d 222 (Miss. 2013) ............................................................................................... 13

*Mercy Hosp. & Med. Ctr. v. Farmers Ins. Grp of Cos.*,
    932 P.2d 210 (Cal. 1997) ................................................... 13

*In re MF Glob. Inc.*,
    512 B.R. 757 (Bankr. S.D.N.Y. 2014) ................................... 6

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ......................................... 15, 16

*In re Motors Liquidation Co.*,
    447 B.R. 150 (Bankr. S.D.N.Y. 2011) ............................... 6, 8

*In re Musicland Holding Corp.*,
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ....................... *passim*

*In re Nw. Airlines Corp.*,
    No. 05-17930 (ALG), 2007 WL 2815917 (Bankr. S.D.N.Y. Sept. 26, 2007) ........................ 6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016) ........................................... 17

*In re Sacred Heart Hosp. of Norristown*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) ........................ 6, 7, 8, 9

*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005) ..................................... 18

*Szabo v. Bridgeport Machines, Inc.*,
    249 F.3d 672 (7th Cir. 2001) .......................................... 15

*In re Thomson McKinnon Sec., Inc.*,
    150 B.R. 98 (Bankr. S.D.N.Y. 1992) ............................... 10

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010) ......................................... 15

*In re USA Gymnastics*,
    No. 18-09108-RLM-11, 2020 WL 1932340 (Bankr. S.D. Ind. Apr. 20, 2020) ........... 7, 11, 12

*In re W.R. Grace & Co.*,
    389 B.R. 373 (Bankr. D. Del. 2008) ........................... 9, 11, 12

*Wynn v. N.Y.C. Hous. Auth.*,
    314 F.R.D. 122 (S.D.N.Y. 2016), *aff'd*, 730 F. App'x 92 (2d Cir. 2018) ................ 3, 16

### STATUTES & RULES

Fed. R. Civ. P. 23 ......................................................... *passim*

<u>OTHER AUTHORITIES</u>

Z. Cooper & F. Morton, *Out of Network Emergency Physician Bills*, N. Engl. J. Med. 375;
20, 1916-17 (Nov. 17, 2016)........................................................................................................14

Z. Cooper et al., *Surprise! Out of Network Billing for Emergency Care in the United States*,
J. Pol. Econ. 129:9, 3631-32, 3663-64 (Aug. 11, 2020) ..............................................................16

*Emergency Medicine Services*, Envision, https://www.envisionphysicianservices.com/explore-
solutions/emergency-medicine .....................................................................................................14

*Groups*, Independent Emergency Physicians Consortium, https://iepc.org/groups ......................14

Purdue Pharma L.P. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, "**Debtors**"), submit this objection ("**Objection**") to *Movant Independent Emergency Room Physician's Motion for Class Treatment Pursuant to Fed. Bankr. P. 9014 and 7023 for an Order Making Fed. R. Civ. P. 23 Applicable to These Proceedings, and Granting Related Relief* [Dkt. No. 1629] ("**ER Physician's Motion**") filed by Independent Emergency Room Physician Michael Masiowski ("**Movant**") and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      At the July 23, 2020 omnibus hearing, this Court adjourned five class claim motions in deference to the then-pending mediation, where those movants' claims were being addressed. In response to concerns articulated by the Debtors and other parties in interest that adjournment would encourage others to file belated class claims motions, the Court expressly discouraged any such future motion.  The Court stated that it "would be unduly unfair . . . if other parties jumped in now, after today's hearing."   (July 23, 2020 Omnibus Hr'g Tr. 127:6-7.)   The Court characterized any such future motion as being "too late."  (*Id.* at 127:9.)  And, thus, the Court directed potential class claim movants to consider timeliness before deciding "to spend the time making the motion."  (*Id.* at 127:16.)

2.      Paying no heed to the Court's admonishments, the Movant filed the present ER Physician's Motion *five weeks after* the July omnibus hearing and *nearly a month after* the passage of the bar date.  By the motion, the Movant seeks (i) permission to proceed with a class proof of claim on behalf of a putative class of independent emergency room physicians in the United States who treated patients with opioid-related conditions; (ii) relief from the bar date; and (iii) inclusion in future mediation.

3.      The ER Physician's Motion should be denied.  Class proofs of claim are employed

1

sparingly in the bankruptcy context and would be wholly inappropriate here.  Not a ***single one*** of

the factors courts typically consider in determining whether to exercise their discretion to permit

class proofs of claims—commonly referred to as the "*Musicland* factors," *In re Musicland Holding*

*Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007)—weighs in the Movant's favor.  ***First***, the

proposed class was not certified prepetition.  ***Second***, members of the putative class received more

than adequate notice of the bar date through the Debtors' robust and unprecedented noticing

program—one that resulted in over 613,000 claims being timely filed against the Debtors' estates.

Indeed, even the Movant concedes that "many Independent ER Physicians in the United States

may have received actual notice of the [b]ar [d]ate in view of the expansive noticing strategy

implemented in this case," (ER Physician's Mot. ¶ 3), and the Movant himself received direct

written notice of the bar date.  ***Finally***, certification of this purported class two months after the

bar date and more than two weeks after mediation concerning the allocation of the value of the

Debtors' estates largely and successfully concluded (putting aside certain limited open issues)

would adversely affect the administration of these cases, add unwarranted complexity, and inject

unnecessary delay.

4.      The Movant likewise does not and cannot satisfy the requirements of Rule 23.  The

Movant concedes that it is likely that "few, if any," ER Physicians filed claims before the bar date.

(ER Physician's Mot. ¶ 24.)  Yet, the Movant demands that the Court extend the bar date and

certify a nationwide "opt-out" class which he speculates will include at least 1,000 class members.

The Movant fails to show why proceeding as a class here is superior to resolving claims through

the pre-existing structure of this chapter 11 proceeding—which is already fairly and efficiently

addressing over 613,000 other timely filed claims.  Instead, certifying this class (especially at such

a late stage) would only "gum up the works" of this proceeding.  *In re Ephedra Prod. Liab. Litig.*,

329 B.R. 1, 5 (S.D.N.Y. 2005). Similarly, common legal and factual issues do not predominate. Not only would the Court be required to examine the laws of all fifty states for each of the Movant's causes of action, but its claims would require an inappropriate "series of mini-trials" into the facts surrounding each class member's claims, injuries, and issues regarding proximate causation.

5.     Nor does the Movant satisfy Rule 23(a)'s requirements of (1) commonality; (2) typicality; and (3) adequacy of representation. For many of the same reasons that Movant cannot establish predominance, commonality is also not satisfied. *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), *aff'd*, 730 F. App'x 92 (2d Cir. 2018). The Movant also ignores the great weight of past cases, which found that personal injury claims based on Purdue's alleged improper marketing are too complex and individualized to find that the claims of named plaintiffs are typical of other class members. *See Hurtado v. Purdue Pharma Co.*, No. 12648/03, 2005 WL 192351, at *10-14 (N.Y. Sup. Ct. Richmond Cnty. Jan. 24, 2005) (citing cases rejecting class certification against Purdue). The ER Physician's claims stem from opioid-related injuries sustained by the patient population, and thus these claims present all of the same individualized issues that make certification untenable and more. Finally, the declaration of the Movant's counsel that accompanies the motion raises important questions as to counsel's ability to serve as adequate class counsel.

6.     The Movant's requests at the end of the ER Physician's Motion for "relief from the bar date" and inclusion in future mediation should also be denied. The former is little more than a repackaging of the Movant's earlier claim that the motion is timely, and the latter is moot in light of the fact that mediation on allocation issues has essentially concluded.

## BACKGROUND

7.     On July 26, 2018, the Movant purported to sue the Debtors and numerous other co-Defendants on behalf of the class for which he seeks certification here. (ER Physician's Mot., Ex.

A ("**Class Compl.**").)  On September 15, 2019 ("**Petition Date**"), the Debtors filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**").

The Movant and counsel for the Movant received the *Notice of Commencement of Chapter 11

Cases and Hearing on First Day Motions* [Dkt. No. 22] and therefore have been aware of the

Debtors' bankruptcy since the Petition Date, or shortly thereafter.  (*See* Aff. of Service of Kelsey

L. Gordon Regarding Notice of Commencement, Ex. B., at 8951, 9445-46 (Oct. 10, 2019), Dkt.

No. 289-4.)

8.      In accordance with the *Order Establishing (I) Deadlines for Filing Proofs of Claim

and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving

the Form & Manner of Notice Thereof* [Dkt. No. 800] ("**Bar Date Order**"), the Movant, as well

as counsel for the Movant, received actual written notice of the bar date.  (*See* Aff. of Service of

Herb Baer Regarding Bar Date Order, Ex. I, at 72 (Feb. 24, 2020), Dkt. No. 872-1.)  On June 3,

2020, the Court granted the Debtors' request to extend the bar date to July 30, 2020.  (*See* Order

(I) Extending the General Bar Date for a Ltd. Period & (II) Approving the Form & Manner of

Notice Thereof (June 3, 2020), Dkt. No. 1221.)  Despite being aware of these proceedings, the

Movant never filed an objection or response to either of the Debtors' motions related to the bar

date or requested to be heard at either bar date hearing.  (*See* Am. Agenda for Jan. 24, 2020

Omnibus Hr'g (Jan. 23, 2020), Dkt. No. 778; Am. Agenda for June 3, 2020 Hr'g (June 2, 2020),

Dkt. No. 1219.)   Moreover, the Movant never once contacted the Debtors regarding the

effectiveness of the Debtors' notice plan.  (*Id.*)  On June 12, 2020, the Movant purported to file a

proof of claim on behalf of himself and his putative class.  (ER Physician's Mot., Ex. B.)

9.      Between June 1, 2020 and July 15, 2020, representatives from no fewer than six

purported classes filed motions seeking permission to file class proofs of claim and certification

of their proposed classes.  (*See* Mot. by Public School Districts for an Order Allowing Them to Proceed with a Class Proof of Claim & Certifying a Class (June 1, 2020), Dkt. No. 1211; Mot. of the Private Insurance Class Claimants for Leave to File Class Proofs of Claim (July 2, 2020), Dkt. Nos. 1321, 1334 (amended); Hosp. Claimants' Mot. Pursuant to Fed. Bankr. P. 9014 & 7023 for an Order Making Fed. R. Civ. P. 23 Applicable to These Proceedings, Permitting Them to File a Class Proof of Claim & Granting Related Relief (July 2, 2020), Dkt. No. 1330-1; NAS Guardians on Behalf of the NAS Children's Abatement Class Action Claimants Mot. for Entry of an Order Pursuant to Fed. Bankr. P 9014 & 7023 Permitting Them to File a Class Proof of Claim & Granting Related Relief (July 9, 2020), Dkt. No. 1362-1; Mot. by Cheyenne & Arapaho Tribes & Certain Other Indian Tribes Claimants Pursuant to Fed. R. Bankr. P. 9014 & 7023 to Permit the Filing of a Class Proof of Claim (July 9, 2020), Dkt. Nos. 1363, 1451 (withdrawn); Mot. to Permit the Filing of a Class Proof of Claim (July 15, 2020), Dkt. No. 1408 (collectively, the "**Class Claim Motions**").)  The Debtors and other parties in interest objected to these motions.  (*See, e.g.*, Debtors' Omnibus Objection to Mots. by Certain Claimants for an Order Allowing Them to Proceed with a Class Proof of Claim & Certifying a Class (July 16, 2020), Dkt. No. 1421 ("**Omnibus Objection**").)  At the July 23, 2020 omnibus hearing, this Court adjourned the hearing on the Class Claim Motions until after the conclusion of mediation.  (*See* July 23, 2020 Omnibus Hr'g Tr. 123:2-133:20; *see also* Order Adjourning Class Claim Mots. (July 24, 2020), Dkt. No. 1514 ("**Adjournment Order**").)  During this entire process, the Movant here remained silently on the sidelines.

## ARGUMENT

10.    The ER Physician's Motion fails for many of the same reasons articulated in the Debtors' Omnibus Objection, and more.  Indeed, there is no doubt that the motion is, as the Court put it, "too late." (July 23, 2020 Omnibus Hr'g Tr. 127:9.)  The Debtors incorporate the arguments

contained in their Omnibus Objection as if fully set forth herein.

I.      **This Court Should Not Exercise Its Discretion to Apply Rule 23 to the Movant's Proposed Class Claim**

11.     Although permitted in narrow circumstances, the right to file a class proof of claim is far from "absolute." *In re Musicland*, 362 B.R. at 650 (citing *In re Ephedra*, 329 B.R. at 4-5); *see also In re Nw. Airlines Corp.*, No. 05-17930 (ALG), 2007 WL 2815917, at *3 (Bankr. S.D.N.Y. Sept. 26, 2007) ("Class action status is sparingly used in a bankruptcy case."); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).  As the decision to extend the application of Rule 23 is a matter firmly "committed to the Court's discretion," *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011), the Court must ***both*** determine whether to "exercise its discretion . . . to apply Rule 23 to the proposed class claim" ***and*** "whether the proposed class claim satisfies the requirements of Rule 23 for class certification." *In re MF Glob. Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); *see also In re Musicland*, 362 B.R. at 650, 654 (finding it unnecessary to determine whether the proposed class satisfied Rule 23 where court declined to exercise its discretion to extend the application of Rule 23 to the proposed class claim).

12.     In determining whether to apply Rule 23 as a threshold matter, courts have coalesced around three factors: (1) whether the class was certified prepetition; (2) whether members of the putative class received notice of the bar date; and (3) whether class certification would adversely affect the administration of the estate.  *See In re Musicland*, 362 B.R. at 654. Although no one factor is dispositive, *In re Chaparral Energy, Inc*., 571 B.R. 642, 646 (Bankr. D. Del. 2017), courts have characterized the first two as "critical" because where a class has not been certified prepetition, its purported class members "lack[] [a] reasonable expectation that they d[o] not have to comply with the bar date." *In re Musicland*, 362 B.R. at 654-55 (citations omitted). Moreover, "[i]f the putative unnamed class members have clearly received actual or constructive

notice of the bankruptcy case and the bar date, denial of the . . . class proof of claim device appears advisable." *Id.* at 654 (omission in original) (quoting *In re Sacred Heart Hosp.*, 177 B.R. at 22). Here, all three factors weigh heavily against the Movant.

### A.    The Movant's Putative Class Was Not Certified Prepetition

13.    The Movant concedes, as he must, that his putative class has not been certified, prepetition or otherwise. (ER Physician's Mot. ¶ 26.) The putative class members, therefore, had no remotely reasonable expectation that they did not need to comply with the bar date. *See In re Musicland*, 362 B.R. at 654. As a result, this factor weighs against the relief the Movant seeks. *In re USA Gymnastics*, No. 18-09108-RLM-11, 2020 WL 1932340, at *4 (Bankr. S.D. Ind. Apr. 20, 2020) ("The majority of courts have denied application of Rule 7023 where the class had not been certified pre-petition." (citing *In re Musicland*, 362 B.R. at 656, and collecting cases)); *see also* Omnibus Obj. ¶¶ 29, 29 n.12 (distinguishing cases cited by Movant).

14.    Seeking to avoid this otherwise straightforward conclusion, the Movant largely rehashes arguments advanced in the Class Claims Motions. Specifically, the Movant argues that "no class has yet been certified because the case is stayed pending further order of the MDL Court." (ER Physician's Mot. ¶ 26.) Putting aside that, properly viewed, this argument has no bearing on the first *Musicland* factor, the Movant—unlike other class movants such as the NAS Guardians— never even asked the MDL Court for permission to proceed with class certification, and there is little doubt that class certification would have been denied in the event he had, *see* Part II, *infra*. Simply put, there is no basis for the Movant to suggest that, but for the MDL stay, his putative class would have been certified.

### B.    Members of the Movant's Putative Class Received Adequate Notice of the Bar Date

15.    Given the extraordinarily extensive notice that has been provided in these chapter

7

11 cases—notice that touched virtually every adult American an average of six times—it is obvious that the Movant's putative class received adequate notice of the bar date.  The Movant all but concedes this, acknowledging that the Debtors' notice program "cast a wide net with respect to notice of the [b]ar [d]ate," (ER Physician's Mot. ¶ 28), and that "many Independent ER Physicians in the United States may have received actual notice of the bar date in view of the expansive noticing strategy implemented in this case."  (ER Physician's Mot. ¶ 3.)  Further, any unreasonable doubt as to the efficacy of the Debtors' noticing regime is surely dispelled by the fact that a staggering 613,000 claims were filed against the Debtors' estates.  (Decl. of Benjamin S. Kaminetzky in Support of Debtors' Mot. to Extend the Prelim. Inj., ¶ 20 (Sept. 16, 2020), Adv. Dkt. No. 199.)  Under these circumstances, this second *Musicland* factor weighs decidedly against certification.[2]

### C.    Certification of the Proposed Class Will Adversely Affect the Administration of These Estates

16.    Finally, certification of the Movant's proposed class would be certain to adversely affect administration of the Debtors' estates.  This Court recognized as much when it observed at the July 23, 2020 omnibus hearing that it "would be unduly unfair . . . if other parties jumped in now, after today's hearing" and that any subsequently filed class claim motion would be "too late." (July 23, 2020 Omnibus Hr'g Tr. 127:6-7, 9.)  Other courts are in accord that "[t]iming is . . . significant" and "[t]he most propitious time for filing a motion for class recognition is before a bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date

---

[2] The Movant's contentions that notice was inadequate because many members of the purported class may not have "recognize[d] the contours of the[ir] claims[s]," may have suffered from a collective action problem, and may have been hindered in filing claims by the COVID-19 pandemic, (ER Physician's Mot. ¶¶ 28-29), should be rejected for the reasons set forth in the Debtors' Omnibus Objection (Omnibus Obj. ¶¶ 41-44).

for a favored class of creditors." *In re Sacred Heart Hosp.*, 177 B.R. at 23.[3]

17.     The timing of the ER Physician's Motion is precisely the opposite of propitious. The motion was filed nearly a month after the bar date, a mere four days before the long-running mediation on allocation issues was originally set to come to a close, and is being heard now after that mediation largely and successfully concluded (putting aside certain limited open issues). (*See* Mediators' Report (Sept. 23, 2020), Dkt. No. 1716.) If granting the motion only upended the bar date, that alone would be regretful enough and warrant denial of the motion. *See In re Sacred Heart Hosp.*, 177 B.R. at 22-23 ("It is clearly disruptive to the formulation of a plan to frustrate a debtor's logical assumptions regarding the amounts of total claims by compelling the debtor to alter or extend an established bar date."). But the harm here would be far from so cabined. That is because granting the ER Physician's Motion would also impede the material progress made and agreements in principle reached in the mediation, (Mediators' Report ¶¶ 3-7)—a mediation, it bears emphasis, that the Movant did not even seek to be included in until it was essentially over, despite being aware of these chapter 11 cases from their very inception. And all of these harms would be in addition to those already addressed in the Debtors' Omnibus Objection. (*See* Omnibus Obj. ¶¶ 38-40.)

18.     In contending that "allowing the Independent ER Physicians' Class Claim will not

---

[3] Courts **routinely** deny class claim motions filed after the bar date. *See In re Motors Liquidation Co.*, 447 B.R. at 164 (denying class claim motion filed after the bar date, noting that the movants "should have sought class certification far sooner than they did"); *In re Musicland*, 362 B.R. at 656 (denying class claim motion filed after the bar date, noting that "the class claim would seriously delay the administration of the case, a fact exacerbated by the delay in making the certification motion"); *In re Ephedra*¸ 329 B.R. at 5 (denying class claim motion filed after the bar date, noting that it was "simply too late in the administration of th[e] [c]hapter 11 case to ask the [c]ourt to apply Rule 23 to the class proof of claim"); *In re Adam Aircraft Indus., Inc.*, No. 08-11751, 2009 WL 2100929, at *10 (Bankr. D. Colo. Mar. 20, 2009) (denying class claim motion where the movant filed the motion and class proof of claim on the bar date but did not request that the court apply Rule 7023 until after the bar date); *In re W.R. Grace & Co.*, 389 B.R. 373, 375, n.5, 380 (Bankr. D. Del. 2008) (denying class claim motion where the purported class claims were filed before the bar date but the motion for class certification was filed after the bar date); *In re Comput. Learning Ctrs., Inc.*, 344 B.R. 79, 89 (Bankr. E.D. Va. 2006) (holding that the motion for class certification filed after the bar date was set was not timely filed).

delay administration of the Debtors' estates," (ER Physician's Mot. ¶ 23), the Movant largely ignores the foregoing harms. The Movant's assertion that granting a meritless and untimely motion to certify an uncertifiable class, *see* Part II, *infra*, would somehow streamline these chapter 11 cases is simply not true. To the contrary, "[t]he fact that the [ER Physicians] did not move for class certification promptly after filing their purported class claim detracts from the discretionary factors to be considered in determining class certification." *In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 101 (Bankr. S.D.N.Y. 1992) (citing Fed. R. Civ. P. 23(c)(1)). Nor is it in any way material that the Debtors have known about the ER Physicians' *uncertified, pre-petition* class action complaint. (ER Physician's Mot. ¶ 25.) What matters—and what matters alone—is that granting the motion now, at this late stage of the case, would be sure to adversely affect the estates.

19.    For all of the foregoing reasons, this Court should decline as a threshold matter the Movant's belated request to extend Rule 23 to his purported class claim.

## II.    The Movant Has Not Established That He Has Met The Requirements of Rule 23

20.    By the motion, the Movant seeks to certify a nationwide "opt-out" class comprised of "all independent emergency room physicians in the United States [that] treated patients with opioid-related conditions . . . ," excluding those that filed their own claims. (ER Physician's Mot. ¶ 33.) According to the Movant, "[i]ndependent emergency room physicians" are "those emergency room physicians whose billing and revenue collection were entirely separate from the medical facility billing practices." (ER Physician's Mot. ¶ 1, n.2.) The Movant alleges that these doctors are entitled to damages arising from, among other things, unpaid or underpaid medical services provided to patients with opioid-related conditions or "lost opportunity" costs associated with managing patients engaged in drug-seeking behavior. (ER Physician's Mot., Ex. 6, ¶ 5 ("**Masiowski Decl.**"); Class Compl. ¶ 4.)

21.    The Movant, however, has fallen far short of his burden to satisfy the requirements

of Rule 23. This provides a separate and independent ground upon which the ER Physician's Motion should be denied.

### A.    The Movant Does Not Satisfy Rule 23(b)(3)

#### 1.    Proceeding as a Class Is Neither Necessary Nor Superior

22.    Notwithstanding the Court's clear admonition that additional class motions should not be filed after the July 23, 2020 omnibus hearing, the Movant urges this Court to upend the bar date and certify his putative class so as to efficiently address "innumerable claims brought by individual class members." (ER Physician's Mot. ¶ 57.) But even in the Movant's own telling, there are no such "innumerable claims" in these chapter 11 cases. To the contrary, the Movant concedes that it is likely that there are "few, if any" independent emergency room physicians that filed claims. (ER Physician's Mot. ¶ 24.) And those that have been filed can be efficiently administered in a single forum—specifically, these chapter 11 cases, which are addressing a staggering 613,000 claims.[4] Indeed, courts have routinely held that "superiority of the class action vanishes when the 'other available method' is bankruptcy." *In re Ephedra*, 329 B.R. at 9; *see also*, *In re Bally Total Fitness of Greater N. Y., Inc*., 402 B.R. 616, 621–22 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ("Though class treatment may be beneficial with other civil actions in consolidating the adjudication of common issues, this advantage disappears in the context of a bankruptcy."); *In re USA Gymnastics*, 2020 WL 1932340, at *4 (same).

23.    As set forth in Part I.C, *supra*, and the Debtors' Omnibus Objection, certifying the Movant's class would only "gum up the works" of resolving these chapter 11 cases. *In re Ephedra*, 329 B.R. at 5. Among other issues, Rule 23(b)(3) requires that, once certified, notice must be

---

[4] The Movant states that there are "over 1000 independent emergency room physicians practicing emergency medicine in the United States." (Masiowski Decl. ¶ 2.) But even if each of these "over 1,000" doctors filed claims in these chapter 11 proceedings, there is no doubt that those claims would be efficiently administered in these chapter 11 cases without resort to the class action device.

provided to all class members and class members must have sufficient information and time to determine whether to object or opt out. *See* Fed. R. Civ. P. 23; *In re W.R. Grace & Co.*, 389 B.R. 373, 379 (Bankr. D. Del. 2008). From a practical perspective, this would require an entirely separate, expensive, and lengthy notice program for all potential class members. Not only would this dueling notice program likely generate significant confusion among putative class members, it is entirely unnecessary. That is because the original notice process was more than "sufficient to reach putative, unnamed class members," and, thus, "[t]he normal protections present in a non-bankruptcy class action have already been provided for in this chapter 11 case." *In re USA Gymnastics*, 2020 WL 1932340, at *6; *In re Arthur Treacher's Franchise Litig.*, 93 F.R.D. 590, 595 (E.D. Pa. 1982) (finding that initiating a separate notice process for the putative Rule 23(b)(3) class "would amount to a grossly futile exercise of a tremendous amount of time and expense by the [c]ourt").

24.    In addition to the foregoing, the Movant's request for certification is also grossly unfair to other claimants. As the Court reasoned in *In re Bally Total Fitness*, "[a]side from the loss of superiority in bankruptcy, the *de facto* expansion of the Bar Date for notified class members who failed to file individual claims in a timely manner will violate due process and prejudice the rights of timely filers." 402 B.R. at 622. In short, this "case simply is 'too far down the road' to allow the class claim to proceed." *In re USA Gymnastics*, 2020 WL 1932340, at *6.

>    2.    *Individual Legal and Factual Issues Predominate Over Any Perceived Common Issue*

25.    The Movant also does not and cannot demonstrate that common issues predominate over individual ones. ***First***, the Movant's nationwide class is based on state law claims for nuisance, negligence, common law fraud, violations of state consumer protection statutes, unjust enrichment, and state law equivalents of the federal RICO claims. (ER Physician's Mot. ¶ 1.) The

laws regarding each of these causes of action vary by state and require the Movant to establish that the laws of all fifty states can be manageably addressed for each of the Movant's six state-law causes of action.  The Movant does not even attempt to meet this burden.

26.    This alone precludes the Movant's request to certify a nationwide class.  As discussed in the Debtors' Omnibus Objection, the Second Circuit, courts within the circuit, and courts around the country consistently hold that common legal issues do not predominate when, as here, a court would be required to conduct an analysis into the laws of every state as part of a putative nationwide class.  (*See* Omnibus Obj. ¶¶ 57-59.)

27.    In fact, the threshold issue of whether an emergency room physician can even bring direct claims against the Debtors to recoup expenses associated with unpaid or underpaid medical bills requires its own state-by-state analysis.  As set forth in Debtors' Omnibus Objection, many states provide that a physician's exclusive remedy to collect unpaid medical bills is to assert statutory liens on patients' recovery from third party tortfeasors; they cannot bring a direct claim against such tortfeasors.  *See, e.g., Bergan Mercy Health Sys. v. Haven*, 620 N.W.2d 339, 345 (Neb. 2000).[5]

28.    The federal court overseeing the opioid MDL recently recognized this limitation and observed that hospitals might not be permitted to bring direct claims against opioid manufacturers for unpaid or under-paid medical bills:  "While a third-party payor may pursue a claim against a third-party tortfeasor who injures a patient-insured, *a hospital's only claim is*

---

[5] Though the Movant may attempt to cast aside this obstacle by arguing he is not asserting patient liens here, in some states, these statutory liens are medical providers' *exclusive* remedy for these types of damages and class members would thus be prohibited from bringing a separate action such as this to recover these damages.  *Compare Huey v. Meek*, 419 S.W.3d 875, 880-81 (Mo. App. S.D. 2013) (finding lien statute was "exclusive" and prohibited chiropractor from asserting action under common law) *with Mercy Hosp. & Med. Ctr. v. Farmers Ins. Grp. of Cos.*, 932 P. 2d 210, 211 (Cal. 1997) (explaining liens are not the exclusive remedy for California hospitals and that "the hospital may still proceed directly against the patient for any unpaid balance") *and Mem'l Hosp. at Gulfport v. Proulx ex rel. Proulx*, 121 So. 3d 222, 225 (Miss. 2013) ("Unlike some other states, Mississippi has no statutory hospital lien . . . .").

*against the patient*."  Opinion & Order, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, at 18, 23 (N.D. Ohio Apr. 3, 2020), Dkt. No. 3253 (emphasis added).  Though the Court ultimately allowed the hospitals' claims to proceed past the motion to dismiss stage, it noted that the hospitals also sought direct costs that did not implicate patient billing (which are not sought here).  *Compare id*. at 21 *with* Class Compl. ¶¶ 3–4.

29.    The work required to resolve even one of these state law issues is sufficient on its own to prevent the Movant from satisfying Rule 23's predominance requirement; collectively, they easily defeat his claims.

30.    ***Second***, common factual issues do not predominate.  Independent ER physicians are not some monolithic entity.  "[H]ospitals generally contract with physician groups to provide care in their emergency departments."  Cooper, Z. & Morton, F., *Out of Network Emergency Physician Bills*, N. Engl. J. Med. 375; 20, 1916-17 (Nov. 17, 2016), *accessible at* https://zackcooper.com/sites/default/files/paper-files/NEJM_surprise_billing.pdf    (last    visited Sept. 23, 2020).  As with other contracts, the terms of employment vary widely.  Some are small groups comprised of a few independent physicians; others are large national physician-staffing companies that contract with hundreds of medical facilities around the country.[6]  On top of this variation, emergency room physicians contract with different insurance companies, which in turn impacts physician billing rates.  Cooper & Morton, *supra* ¶ 30, at 1917 (noting that "on average, in-network emergency-physician claims were paid at 279% of Medicare rates" while "out-of-network emergency physicians charged an average of 798% of Medicare rates.").    All of these

---

[6]    *See    Emergency    Medicine    Services*, Envision    Physician    Services,    *accessible    at* https://www.envisionphysicianservices.com/explore-solutions/emergency-medicine (last visited Sept. 23, 2020); *Groups*, Independent Emergency Physicians Consortium, *accessible at* https://iepc.org/groups (last visited Sept. 23, 2020).

individual variations mean that there will be innumerable individual issues across class members regarding their degrees of injuries (if any) and the cause of such injuries. These variations further ensure common issues do not predominate here.

31.    The Movant wholly ignores this. Instead, he argues that these individual issues are irrelevant because putative class members will rely on "common evidence" to prove their claims regarding liability and the relief requested because "[c]lass counsel, and their experts, would adopt the same methodology . . . for calculating" the degree of costs associated with Debtors' conduct. (ER Physician's Mot. ¶ 54.) The Movant's attempt to rely on so-called "common evidence" is doomed, however, because he fails to proffer such evidence. This "certify now, worry later" approach to class certification is inappropriate and impermissible. "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008), *as amended* (Jan. 16, 2009); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

32.    The Movant's reliance on unidentified common evidence also cannot be squared with Second Circuit law. As explained in the Debtors' Omnibus Objection, the Second Circuit has repeatedly rejected attempts to use common evidence in highly analogous "fraudulent marketing" cases. Omnibus Obj. ¶ 62; *see also UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 135 (2d Cir. 2010) (holding in a prescription medication fraudulent marketing case that "[t]he nature of prescriptions . . . means that [plaintiff's] theory of causation is interrupted by the independent actions of prescribing physicians, which thwarts any attempt to show proximate cause through generalized proof); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002). This is especially true here given the nature of the allegations and that showing that physicians were allegedly deceived by Purdue's purported misrepresentations would require a "series of mini-

trials" into each physician's exposure, if any, to particular messaging, her reliance on that information, and her independent reasons for prescribing the medication to the patient. *Moore*, 306 F.3d at 1253; *Hurtado*, 2005 WL 192351, at *9-10 (collecting cases where federal courts denied class certification in personal injury cases involving Purdue's products).

### B.    The Movant Cannot Satisfy Rule 23(a)'s Requirements

33.    Additionally, the Movant cannot satisfy Rule 23(a)'s requirements of (1) commonality; (2) typicality; and (3) adequacy of representation.

#### 1.    *Commonality*

34.    For many of the same reasons that Movant cannot establish predominance, commonality is also not satisfied. *See* Part II.A.2, *supra*; *Wynn*, 314 F.R.D. at 128 (recognizing that the "inquiries into commonality . . . and predominance overlap"). Indeed, the Movant fails to address the many past cases where courts refused to certify personal injury classes against Purdue on substantially similar grounds, including, finding that commonality is lacking where "each of the claims depends upon questions of fact and of law peculiar to each class member" relating to "issues of reliance, causation, and damages." *Foister v. Purdue Pharma L.P.*, No. Civ.A. 01-268-DCR, 2002 WL 1008608, at *7-8 (E.D. Ky. Feb. 26, 2002); *see also Harris v. Purdue Pharma*, 218 F.R.D. 590, 596-97 (S.D. Ohio 2003); *Wethington v. Purdue Pharma, L.P.,* 218 F.R.D. 577, 588-89 (S.D. Ohio 2003). The ER Physician's claims stem from opioid-related injuries sustained by the patient population and, thus, these claims present all of the same individualized issues that make certification untenable. Additional individualized issues include a putative class member's billing practices, contractual relationships with hospitals and insurers, and state laws governing available avenues to secure reimbursement. *See* Cooper, Z., Morton, F., & Shekita, N. *Surprise! Out of Network Billing for Emergency Care in the United States*, J. POL. ECON. 129:9, 3631-32, 3663-64 (Aug. 11, 2020).

2.    *Typicality and Adequacy of Representation*

35.    The Movant also fails to prove the elements of typicality or adequacy of representation, which "though separate requirements, are closely related and are often analyzed together." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 198–99 (E.D. Pa. 2017) (citation omitted).  "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"  *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (citation omitted). Meanwhile, adequacy of representation is meant "[t]o assure vigorous prosecution," requiring that "courts consider whether the class representative has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine that incentive."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016).

36.    The Movant ignores the great weight of case law which has found that claims like those here "are based on a complex course of conduct engaged in over a long period of time," and consequently, "the claims of the [p]laintiffs are not typical of those of the putative members." *Foister*, 2002 WL 1008608, at *10.  In addition, material differences in billing practices, state healthcare laws, volume of patients, and the like preclude the possibility of a "typical" claim.

37.    Furthermore, Rule 23 requires that, "[i]n appointing class counsel, the court . . . must consider," among other factors, "counsel's experience in handling . . . the types of claims asserted in the action" and "knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1).  Here, the Movant's counsel has raised serious questions regarding his ability to serve as adequate class counsel.  In his declaration accompanying the motion, counsel affirmed that he "is not a bankruptcy attorney" and therefore has "no knowledge" of important procedural rules.  (*See* ER Physician's Mot., Ex. 5, ¶ 14; *see also* ER Physician's Mot. ¶ 61.)   Given class counsel's significant

responsibilities in overseeing this putative class, these admissions and arguments raise serious questions regarding his adequacy to represent the putative class in these complex bankruptcy cases. *See Sweet v. Pfizer*, 232 F.R.D. 360, 370 (C.D. Cal. 2005).

### III.    The Movant's Request for Additional Relief is Without Merit

38.    At the conclusion of the ER Physician's Motion, the Movant requests that he be granted "to whatever extent it is necessary . . . relief from the [b]ar [d]ate"[7] and permission to participate in mediation.  (ER Physician's Mot. ¶¶ 67, 73.)  Both requests should be denied.

39.    As an initial matter, the Movant's request for "relief from the bar date" is nothing but a repackaging of his earlier argument that the ER Physician's Motion is somehow timely.  It is not.  The Movant seemingly contends that filing a proof of claim on behalf of a class and attaching the class action complaint prior to the bar date cures the untimeliness of the motion.  (ER Physician's Mot. ¶¶ 60, 62.)  Not so.  For a class proof of claim to be valid, "the proponent of a class claim must (1) *make a motion to extend the application of Rule 23 to some contested matter*, (2) satisfy the requirements of Rule 23, and (3) show that the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy."  *In re Musicland*, 362 B.R. at 651 (emphasis added).  It is "the timing of the *motion for certification*," not the timing of the proof of claim, that matters.  *Id*. (emphasis added).  Thus, the fact that the Movant purported to submit a class proof of claim on June 12, 2020, in no way alters the fact that the ER Physician's Motion is untimely, or that granting it at this late hour would impede the smooth administration of the Debtors' estates.

---

[7] To the extent the Movant seeks to toll the bar date for individual proofs of claim, such relief is prohibited by this Court's Adjournment Order, which states, "Notwithstanding anything else in this Order, the pendency or denial of a Class Claim Motion or any other motion of a similar kind or nature shall not be deemed to toll the General Bar Date with respect to any individual proof of claim, whether or not such individual proof of claim asserts a claim that would have been encompassed by a class proof of claim filed pursuant to the preceding paragraph or contemplated by a Class Claim Motion." (Adjournment Order ¶ 3.)

40.      Nor is the Movant's attempt to place the blame for his untimely motion on Prime Clerk, the Court-appointed claims and noticing agent, availing in the least.  (ER Physician's Mot. ¶ 61 ("The Prime Clerk office personnel never indicated that a class claim would not be valid without court approval before filing.").)  Prime Clerk provides administrative services to the Debtors' estates, not legal advice to potential claimants.  Indeed, the bar date notice itself states that "Prime Clerk cannot provide legal advice" and, thus, advises that "[a] holder of a possible claim against the Debtors should consult an attorney regarding matters not covered by th[e] [n]otice."  (*See* Bar Date Notice, at 9 (Feb. 3, 2020), Dkt. No. 800-1; Order Authorizing Retention & Appointment of Prime Clerk LLC as Claims & Noticing Agent for the Debtors, at 1 (Sept. 18, 2020), Dkt. No. 60 (authorizing Prime Clerk to provide "administrative services—as required by the Debtors—that would fall within the purview of services to be provided by the Clerk [of the Court]").)

41.      Finally, the Movant asks "to be included in future mediation sessions, as a commonly interested party," alleging that the ER Physicians "have a distinct interest in making a claim separate and apart from the Hospital Class Claimants."  (ER Physician's Mot. ¶¶ 73-74.) This request is moot.  The mediation—which addressed allocation issues—was extended from August 31, 2020, to September 11, 2020, and has now largely and successfully concluded.  (Order Extending Mediation Termination Date ¶ 1 (Sept. 1, 2020), Dkt. No. 1642; Mediators' Report.)

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court deny the ER

Physician's Motion in its entirety.


Dated:  September 23, 2020
       New York, New York


*/s/ James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Frances E. Bivens
Benjamin S. Kaminetzky
Timothy Graulich
James I. McClammy

*Counsel to the Debtors*
*and Debtors in Possession*