## Exhibit A

**Revised Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**ORDER (I) APPROVING SALE OF DEBTORS' COVENTRY FACILITY AND
RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES, (II) APPROVING DEBTORS' ENTRY INTO A LONG-TERM API
SUPPLY AGREEMENT, (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OR
ASSIGNMENT, AS APPLICABLE, OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order (this "Order") pursuant to sections

105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002,

6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of

New York (the "Local Rules"):

    (i)    approving the private sale (the "Sale") of the assets (as more specifically set forth
in Section 1.1 of the APA (as defined below), the "Purchased Assets") of Debtor
Rhodes Technologies ("Rhodes Tech" or the "Seller") to Normaco Coventry LLC
("Purchaser") pursuant to that certain Asset Purchase Agreement, dated as of
September 14, 2020 (attached to the Motion as Exhibit B thereto, and as amended
from time to time, including all schedules and exhibits thereto, the "APA), free and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma
Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford,
CT 06901.
[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the APA
or the Supply Agreement, as applicable.

clear of all liens, claims, and encumbrances, to the fullest extent permitted by law and except where the Debtors agreed to transfer, and the Purchaser has expressly agreed to permit or assume, certain encumbrances and certain liabilities of the Debtors (as set forth and defined in the APA, the "Permitted Post-Closing Encumbrances" and the "Assumed Liabilities");

(ii)     authorizing the assumption and assignment or assignment, as applicable, to the Purchaser of certain Assigned Contracts;

(iii)    authorizing the Debtors to enter into and perform under a long-term supply agreement in the form attached to the APA as Exhibit E thereto (the "Supply Agreement" and, together with the APA and all other Ancillary Documents (as defined in the APA), including, without limitation, a transition services agreement (the "TSA") in a form mutually agreed by the Seller and the Purchaser and in accordance with the term sheet attached as Exhibit F to the APA, the "Agreements"),[3] and

(iv)    granting certain related relief;

and the Debtors having determined after an extensive sale and solicitation process that the Purchaser has submitted the highest or otherwise best offer to (i) purchase the Coventry Facility and related assets and to assume certain liabilities related thereto and (ii) supply the Debtors with all products currently manufactured at the Coventry Facility; and upon due, adequate, and sufficient notice of the Motion, the Agreements and all other related transactions contemplated thereunder and in this Order (such transactions collectively, the "Transaction"); and upon the Declaration of Rafael J. Schnitzler in Support of the Motion (the "Schnitzler Declaration"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

---

[3] Capitalized terms used but not defined herein have the meanings given to them in the Motion or the applicable Agreement, as applicable.

2

been provided to the Notice Parties, and it appearing that no other or further notice need be

provided; and the Court having reviewed and considered the Motion, the Schnitzler Declaration,

and the Agreements; and the Court having held a hearing to consider the relief requested in the

Motion (the "Hearing"); [and there being no objections to the requested relief]; and, after due

deliberation, the Court having determined that the legal and factual bases set forth in the Motion

and at the Hearing establish just cause for the relief granted herein; and the Court having

determined that the relief requested is in the best interests of the Debtors, their estates, creditors

and all parties in interest,

**THE COURT HEREBY FINDS THAT:**[4]

### I.      Jurisdiction, Final Order, and Statutory Predicates.

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28

U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  This Court

may enter a final order with respect to the Motion, the Transaction (including the Sale), and all

related relief, in each case, consistent with Article III of the United States Constitution.  Venue

of these Chapter 11 Cases and the Motion is proper in this District and in the Court pursuant to

28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested in the Motion are sections 105(a),

363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

---

[4]    These findings and determinations constitute the Court's findings of fact and conclusions of law pursuant to
Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Where appropriate,
findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact.  All findings of fact and conclusions of law announced by the Court at the Hearing in relation to the Motion
are hereby incorporated herein to the extent not inconsistent herewith.

## II.    Notice.

C.    As further evidenced by the affidavit of service previously filed with the Court [ECF No. 1733], and based on the representations of counsel at the Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Hearing, the Transaction (including the Sale), the potential assumption and assignment or assignment, as applicable, of the Assigned Contracts to potentially be assumed and assigned or assigned, as applicable, to the Purchaser pursuant to this Order, the cure payments proposed in respect of each Executory Contract (each, a "Cure Cost"), and all deadlines related thereto, has been provided to all interested parties and entities, including the Notice Parties, in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The aforementioned notices were and are timely, proper, sufficient, appropriate, fair and equitable under the particular circumstances, and reasonably calculated to provide the Notice Parties and all other interested parties with timely and proper notice under the circumstances of these Chapter 11 Cases.  No other or further notice with respect to such matters is, or shall be, required.

D.    A reasonable opportunity to object and be heard with respect to the Transaction (including the Sale), the Motion, and the relief requested therein, has been afforded to all interested parties.

E.    The disclosures made by the Debtors concerning the Motion, the Agreements and the Hearing were good, complete and adequate.

## III.    Business Justification.

F.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the Agreements, which provide for, among other things, the private sale of the Purchased Assets to the Purchaser and a seven-year commitment by Purchaser to manufacture, package, test, release, store and deliver APIs to

the Debtors.  The Debtors have, among other things, determined in their business judgment that,

under current circumstances, the benefits of consummating the Transaction on the terms and

conditions embodied in the Agreements outweigh any potential benefits of conducting a further

marketing and overbid process for the Purchased Assets.

## IV.    Adequate Marketing.

G.    As demonstrated by the Schnitzler Declaration, the testimony and other evidence

proffered or adduced at the Hearing and the representations of counsel made on the record at the

Hearing, the Debtors have adequately marketed the Purchased Assets.

## V.    Transaction in Best Interests.

H.    Approval of the Agreements, the Transaction, and all related transactions at this

time, and the actions to be taken by the Debtors and the Purchaser, are appropriate under the

circumstances of these cases and are in the best interests of the Debtors, their estates and

creditors, and all other parties in interest.  The Debtors have demonstrated good, sufficient and

sound business reasons and justifications for the Debtors' entry into the Transaction and the

performance of its obligations under the Agreements.

## VI.    Good Faith of Purchaser.

I.    The Debtors and the Purchaser have not engaged in any conduct that would cause

or permit the APA or the consummation of the Sale to be avoided, or costs or damages to be

imposed, under Bankruptcy Code section 363(n).  The Purchaser has not acted in a collusive

manner with any Person, and the purchase price was not controlled by any agreement among

bidders, all of whom acted in good faith, at arm's length, and in a noncollusive manner.  The

Agreements were negotiated, proposed, and entered into by the Debtors and the Purchaser

without collusion, in good faith, and from arm's-length bargaining positions.  Among other

things (i) the Purchaser recognized that the Debtors were free to deal with any other party

interested in acquiring the Purchased Assets and/or supplying the Debtors with APIs currently

manufactured at the Coventry Facility; (ii) all payments to be made by the Purchaser, and other

agreements or arrangements entered into by the Purchaser in connection with the Transaction

have been disclosed; and (iii) no common identity of directors or controlling stockholders exists

between the Purchaser, on the one hand, and the Debtors, on the other hand.  The Purchaser is

purchasing the Purchased Assets in good faith and for fair and reasonable consideration, and the

Purchaser is a good-faith Purchaser within the meaning of section 363(m) of the Bankruptcy

Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy

Code).  The Purchaser is therefore entitled to the full rights, benefits, privileges, and protections

afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar

bankruptcy and nonbankruptcy law.

**VII.    Purchaser Protections.**

J.    The Break-Up Fee and Expense Reimbursement (each as defined in the APA and,

collectively, the "**Purchaser Protections**") (i) are of substantial benefit to the Debtors' estates,

(ii) are reasonable and appropriate, including in light of the size and nature of the contemplated

Transaction and the efforts expended by the Purchaser, (iii) were negotiated by the parties and

their respective advisors at arm's length and in good faith, and (iv) were necessary to ensure that

the Purchaser continued to pursue the Transaction contemplated under the Agreements.

**VIII.    Corporate Authority.**

K.    Each Debtor (i) has full requisite corporate or other organizational power and

authority to execute, deliver, and perform each Agreement, and to consummate the Transaction

contemplated thereby (including the Sale), and such execution, delivery, and performance have

been duly and validly authorized by all necessary corporate or other organizational action of each

of the Debtors, (ii) has taken all requisite corporate or other organizational action and formalities

necessary to authorize and approve the execution, delivery, and performance of each Agreement

and the consummation by the Debtors of the Transaction contemplated thereby (including the

Sale), including as required by their respective organizational documents, and, upon execution

thereof, each Agreement executed by such Debtor will be duly and validly executed and

delivered by such Debtor and enforceable against such Debtor in accordance with its terms and,

assuming due authorization, execution, and delivery thereof by the other parties thereto, will

constitute a valid and binding obligation of such Debtor.  No government, regulatory, or other

consents or approvals, other than those expressly provided for in the Agreements, are required

for the execution, delivery, and performance by the Debtors of the Agreements or for the

consummation of the Transaction (including the Sale) contemplated thereby, or to take, or cause

to be taken, all such other actions, as may be reasonably necessary to effectuate or evidence the

Transaction contemplated by the Agreements (including the Sale).

**IX.    No Merger; Purchaser Not an Insider; No Successor Liability.**

L.    The Purchaser is not a "successor" to, a mere continuation of, or alter ego of the

Debtors or their estates, and there is no continuity of enterprise or common identity between the

Purchaser and the Debtors.  The Purchaser is not holding itself out to the public as a successor to

or a continuation of the Debtors or their estates.  The Purchaser is not a successor to any of the

Debtors or their estates by reason of any theory of law or equity, and the Transaction (including

the Sale) does not amount to a consolidation, succession, merger, or de facto merger of Purchaser

and the Debtors.  Immediately prior to the Closing Date, the Purchaser was not an "insider" or

"affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common

identity of incorporators, directors, or controlling stockholders existed between the Debtors and

the Purchaser.  The transfer of the Purchased Assets to the Purchaser, and the assumption of the

Assumed Liabilities by the Purchaser, except as otherwise explicitly set forth in the APA, does

not, and will not, subject the Purchaser to any liability whatsoever, with respect to the Debtors or

the operation of the Debtors' businesses prior to the Closing (including liabilities based on the

Debtors' pre-closing ratings by governmental or quasi-governmental agencies or authorities) or

by reason of such transfer, including under the laws of the United States, any state, territory, or

possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in

part, directly or indirectly, on any, or any theory of, successor, vicarious, antitrust,

environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or

benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative,

transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or

products liability or law, or other applicable law, rule, or regulation (including filing

requirements under any such law, rule, or regulation), or theory of liability, whether legal,

equitable, or otherwise (collectively, the "Successor or Other Liabilities").  Pursuant to the APA,

the Purchaser shall have no liability for the Excluded Liabilities.

**X.**      **Binding and Valid Transfer.**

M.      The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and

effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title, and

interest of the Debtors to the Purchased Assets free and clear, to the fullest extent permitted by

law, of all Interests (as defined below) (other than the Permitted Post-Closing Encumbrances and

the Assumed Liabilities), as set forth in the APA.  Immediately prior to consummating the Sale,

the Purchased Assets constitute property of the Debtors' estates, good title is vested in the Debtors'

estates within the meaning of section 541(a) of the Bankruptcy Code, and the Debtors are the sole

and rightful owners of the Purchased Assets.  Upon and following the consummation of the Sale,

the Purchaser shall be vested with good and marketable title to the Purchased Assets and shall be

the sole and rightful owner of the Purchased Assets.

N.     The Agreements are valid and binding contracts between the Debtors and the

Purchaser.  The Agreements were not entered into for the purpose of hindering, delaying, or

defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state,

territory, possession, or the District of Columbia, or foreign jurisdiction.  As demonstrated by the

Schnitzler Declaration, the consideration provided by the Purchaser in respect of the Transaction

(i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will

provide a greater recovery for the Debtors' creditors than would be provided by any other

practical available alternative, and (iv) constitutes reasonably equivalent value and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession, or the District of Columbia, and any foreign jurisdiction (including the

Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws and

acts).  Neither the Debtors nor the Purchaser is entering into the Transaction contemplated by the

Agreements fraudulently for the purpose of statutory and common-law fraudulent conveyance

and fraudulent transfer claims.

## XI.     Section 363(f) Is Satisfied.

O.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in

full with respect to each Interest in the Purchased Assets; therefore, the Debtors may sell the

Purchased Assets free and clear of all Interests (other than the Permitted Post-Closing

Encumbrances and the Assumed Liabilities).

P.     The Purchaser would not have entered into the Agreements and would not

consummate the transactions contemplated thereby if (i) the sale of the Purchased Assets to the

Purchaser were not free and clear of all Interests (other than the Permitted Post-Closing

Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever, or (ii) if the

Purchaser would, or in the future could, be liable for any of the Interests (other than the

9

Permitted Post-Closing Encumbrances and the Assumed Liabilities).  The Purchaser will not

consummate the transactions contemplated by the Agreements unless this Court expressly orders

that none of the Purchaser, its Affiliates, its members or shareholders, or the Purchased Assets

will have any liability whatsoever with respect to, or be required to satisfy in any manner,

whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or

indirectly, any Interests (other than the Permitted Post-Closing Encumbrances and the Assumed

Liabilities), including rights or claims based on any Successor or Other Liabilities.  The total

consideration to be provided under the Agreements reflects the Purchaser's reliance on this

Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and

possession of the Purchased Assets free and clear of all Interests (other than the Permitted Post-

Closing Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever

(including, without limitation, any potential Successor or Other Liabilities).

Q.      Not transferring the Purchased Assets free and clear of all Interests (other than the

Permitted Post-Closing Encumbrances and the Assumed Liabilities), including rights or claims

based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or

applicable state, federal, or foreign law or otherwise, would adversely impact the Debtors' efforts

to maximize the value of their estates, and the transfer of the Purchased Assets other than

pursuant to a transfer that is free and clear of all Interests (other than the Permitted Post-Closing

Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever would be of

substantially less benefit to the Debtors' estates.

R.      The Debtors may sell the Purchased Assets free and clear of all Interests (other

than the Permitted Encumbrances and the Assumed Liabilities) because, in each case, one or

more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been

satisfied.  Those holders of Interests who did not timely object to the Sale or the Motion or

withdrew objections to the Sale or the Motion are deemed to have consented to the Sale and the

Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All Interests (except to the extent

that such Encumbrances are Permitted Post-Closing Encumbrances or Assumed Liabilities) fall

within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  All

holders of Interests are adequately protected by having their Interests, if any, in each instance

against the Debtors, their estates, or any of the Purchased Assets attach to the net cash proceeds

of the Sale ultimately attributable to the Purchased Assets in which such holder alleges an

Interest, in the same order of priority, with the same validity, force, and effect that such Interest

had prior to the Sale, subject to any claims and defenses the Debtors and their estates may

possess thereto.

## XII.    Cure Costs and Adequate Assurance of Future Performance.

S.        The assumption and assignment or assignment, as applicable, of the Assigned

Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of

the Debtors and their estates, their creditors, and all other parties in interest, and represents the

reasonable exercise of sound and prudent business judgment by the Debtors.  The assumption

and assignment or assignment, as applicable, of the Assigned Contracts (i) is necessary to sell the

Purchased Assets to the Purchaser, (ii) allows the Debtors to maximize the value of the

Purchased Assets, including the Assigned Contracts, (iii) limits the losses suffered by the

counterparties to the Assigned Contracts (the "Contract Counterparties"), and (iv) maximizes the

recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors'

estates by avoiding the rejection of the Assigned Contracts.  For these reasons, the Debtors have

exercised sound business judgment in assuming and assigning or assigning, as applicable, the

Assigned Contracts and such assumption and assignment or assignment, as applicable, is in the

best interests of the Debtors' estates.

T.      Pursuant to section 365(f) of the Bankruptcy Code, each Assigned Contract to be

assumed and assigned or assigned, as applicable, under the APA shall be assigned and

transferred to, and remain in full force and effect for the benefit of, the Purchaser,

notwithstanding any provision in such contract prohibiting its assignment or transfer.  No section

of any of the Assigned Contracts that would prohibit, restrict, or condition, whether directly or

indirectly, the use, assumption, or assignment of any of the Assigned Contracts in connection

with the Sale shall have any force or effect.

U.      Subject to the terms of the APA, the Debtors or the Purchaser, as the case may be,

have cured or have demonstrated the ability to cure any default under any Assigned Contract

with respect to any act or omission that occurred prior to the date of assignment of such

Assigned Contract (such date, as applicable to each Assigned Contract, the "Assignment Date").

The Purchaser's promises to pay the Cure Costs upon the applicable Assignment Date and

perform the obligations under the Assigned Contracts thereafter shall constitute adequate

assurance of their future performance of and under the Assigned Contracts, within the meaning

of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  All counterparties to Executory

Contracts who did not timely file an objection to a Cure Cost or an objection to the potential

assumption and assignment of the Executory Contracts are deemed to consent to the assumption

by the applicable Debtor of their respective Executory Contract and the assignment thereof to the

Purchaser if such Executory Contract is or becomes an Assigned Contract pursuant to the terms

of the APA and this Order.  The Court finds that with respect to all such Assigned Contracts, the

payment of Cure Costs is appropriate and is deemed to fully satisfy the Debtors' obligations

under section 365(b) of the Bankruptcy Code.  Accordingly, all of the requirements of sections

365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption and the

assignment by the applicable Debtor to the Purchaser of each of the Assigned Contracts.  To the

extent any Assigned Contract is not an executory contract or unexpired lease within the meaning

of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with

the terms of this Order that are applicable to the Purchased Assets.

**XIII.    Not a Sub Rosa Plan.**

V.    The Sale does not constitute a sub rosa chapter 11 plan for which approval has

been sought without the protection that a disclosure statement would afford.  The Sale neither

impermissibly restructures the rights of any Debtor's creditors nor impermissibly dictates a

liquidating plan for any Debtor.

**XIV.    Necessity of Order.**

W.    The Purchaser would not have entered into the Agreements and would not

consummate the Transaction without all of the relief provided for in this Order.  The

consummation of the Transaction pursuant to this Order and the Agreements is necessary for the

Debtors to maximize the value of their estates for the benefit of the Debtors, their estates and

creditors, and all other parties in interest.

**XV.    Compelling Circumstances for an Immediate Transaction.**

X.    The Debtors' decision to enter into the Agreements and the Transaction represents

an exercise of sound business judgment.  The Debtors have demonstrated both (i) good,

sufficient, and sound business purposes and justifications for approving the Agreements and (ii)

compelling circumstances for the immediate approval and consummation of the Transaction

contemplated by the Agreements outside the ordinary course of business, pursuant to section

363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that the

13

prompt consummation of the Transaction, including the Sale to the Purchaser, is necessary and

appropriate to maximize the value of the Debtors' estates. Accordingly, there is cause to lift the

stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the Transaction

contemplated by this Order.

## XVI.  Final Order.

Y.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the

extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil

Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is

no just reason for delay in the implementation of this Order and expressly directs entry of

judgment as set forth herein.

### THE COURT HEREBY ORDERS THAT:

## I.      General Provisions.

1.      The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter

11 Cases pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact

constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of

law constitute findings of fact, they are adopted as such.

2.      The Motion and the relief requested therein is granted and approved, and the

transactions contemplated in the Motion and the Agreements, including the Sale and the Debtors'

entry into the Supply Agreement, are approved, in each case as set forth herein and on the record

of the Hearing, which is incorporated herein as if fully set forth in this Order.

3.      All objections to, reservations of rights regarding, or other responses to the Motion

or the relief requested therein, each Agreement, the Sale, the entry of this Order, or the relief

14

granted herein, including any objections to Cure Costs or the potential assumption and assignment

of any of the Executory Contracts, that have not been withdrawn, waived, or settled, or that have

not otherwise been resolved pursuant to the terms hereof, as announced to the Court at the Hearing,

or by stipulation filed with the Court, are hereby denied and overruled on the merits with prejudice.

Those parties who did not timely object to the Motion or the entry of this Order, or who withdrew

their objections thereto, are deemed to have consented to the relief granted herein for all purposes,

including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

## II.   Approval of the Agreements.

4.      Each Agreement, including, in each case, any amendments, supplements, and

modifications thereto, and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are

authorized and empowered to take any and all actions necessary or appropriate to (a)

consummate the Transaction (including the Sale) pursuant to and in accordance with the terms

and conditions of the Agreements, (b) close the Sale as contemplated in the APA and this Order,

and (c) execute and deliver, perform under, consummate, implement, and take any and all other

acts or actions as may be reasonably necessary or appropriate to the performance of their

obligations as contemplated by the Agreements, including the assumption and assignment to the

Purchaser of the Assigned Contracts that are prepetition contracts, the assignment to the

Purchaser of the Assigned Contracts that are post-petition contracts, and the entry into the

Supply Agreement and any other Ancillary Document, in each case without further notice to or

order of this Court and including any actions that otherwise would require further approval by

the Contract Counterparties, shareholders, members, or its board of directors, as the case may be,

without the need of obtaining such approvals, together with all additional instruments and

documents that may be reasonably necessary or desirable to implement the Agreements and the

Transaction (including the Sale).  The Debtors are further authorized to pay, without further

order of this Court, whether before, at or after the Closing, any amounts that become payable by

the Debtors pursuant to the Agreements (and related agreements executed in connection with the

Transaction), together with other fees and expenses approved by the Court.  Such amounts shall

(i) constitute allowed administrative expenses of the Debtors' estates under sections 503(b)(1)

and 507(a)(2) of the Bankruptcy Code; (ii) be treated with such priority if the Chapter 11 Cases

convert to cases under chapter 7 of the Bankruptcy Code; and (iii) not be discharged, modified or

otherwise affected by any reorganization or liquidation plan for any of the Debtors, except by

written agreement with the Purchaser (such agreement to be provided in the Purchaser's sole

discretion).

6.      The Purchaser Protections are approved on the terms and conditions set forth in

the APA.

7.      Each Agreement and this Order shall be binding in all respects upon the Debtors,

their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims

(whether known or unknown) against the Debtors, any holders of Liens (as defined below) or

other Interests against, in, or on all or any portion of the Purchased Assets, all counterparties to

any executory contract or unexpired lease of the Debtors (including all Contract Counterparties),

all agencies (including those that assess liability on entities based on ratings), the Purchaser, and

all successors and assigns of each of the foregoing, including, without limitation, any trustee

subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and any Person seeking to assert rights on behalf of any of the foregoing or

that belong to the Debtors' estates.

III.    **Transfer of the Purchased Assets.**

8.        Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy

Code, the Debtors shall transfer the Purchased Assets, including but not limited to, the Assigned

Contracts, to the Purchaser in accordance with the terms of the APA; such transfer shall

constitute a legal, valid, binding, and effective transfer of such Purchased Assets; and the

Purchaser shall take title to and possession of such  Purchased Assets free and clear of all

Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities).

Any and all valid and perfected Interests in the Purchased Assets shall attach solely to the net

proceeds of the Sale with the same validity, force, and effect, if any, and in the same order of

priority, that they have now as against the Purchased Assets, subject to any rights, claims, and

defenses the Debtors or their estates, as applicable, may possess with respect thereto.

9.        The transfer of the Purchased Assets to the Purchaser in accordance with the terms

of the APA will be a legal, valid, enforceable, and effective sale and transfer of the Purchased

Assets and the Assumed Liabilities and (i) will vest the Purchaser with all legal, equitable, and

beneficial right, title, and interest of the Debtors to the Purchased Assets free and clear of all

Interests (other than the Permitted Encumbrances or the Assumed Liabilities) of any kind or nature

whatsoever, including without limitation, rights or claims based on any Successor or Other

Liabilities, and (ii) will render the Purchaser fully liable for any and all Assumed Liabilities, and

assumption of any Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective

delegation of any Assumed Liabilities to the Purchaser and shall divest the Debtors of all liability

with respect to any Assumed Liabilities.

10.        The transfer of each of the Purchased Assets to the Purchaser will be a legal, valid,

and effective transfer of the Purchased Assets, which transfer vests or will vest the Purchaser with

all right, title, and interest to the Purchased Assets free and clear of (i) all liens (including any liens

as that term is defined in section 101(37) of the Bankruptcy Code) and Encumbrances (as defined

in the Agreement) relating to, accruing, or arising any time prior to the Closing Date (collectively,

the "Liens"), and (ii) all debts (as that term is defined in section 101(12) of the Bankruptcy Code)

arising under, relating to, or in connection with any act of the Debtors or claims (as that term is

defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties,

options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages,

hypothecations, charges, indentures, loan agreements, instruments, collective bargaining

agreements, leases, licenses, deeds of trust, security interests or similar interests, conditional sale

or other title retention agreements and other similar impositions, restrictions on transfer or use,

pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement,

products liability, alter ego liability, suits, credits, allowances, options, limitations, causes of action,

choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy,

voting trust or agreement or transfer restriction under any shareholder or similar agreement or

encumbrance, easements, rights of way, encroachments, and matters of any kind and nature,

whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or

equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted

or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including,

without limitation, rights with respect to Claims (as defined below) and Liens (A) that purport to

give to any party a right or option to effect a setoff or recoupment against, or a right or option to

effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or

repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the

Purchased Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first

refusal, charges of interests of any kind or nature, if any, including without limitation, any

restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership)

(collectively, as defined in this clause (ii), the "Claims," and together with the Liens and other

interests of any kind or nature whatsoever, the "Interests"), relating to, accruing, or arising any

time prior to entry of this Order, with the exception of the Permitted Post-Closing Encumbrances

and the Assumed Liabilities.  Notwithstanding anything to the contrary herein, the APA, or the

Motion, "Interests" shall not include, and the assets shall not be sold free and clear of, rights of

setoff asserted pre-petition, recoupment, or other affirmative defenses.

11.     Except as expressly assumed by the Purchaser under the APA, the transfer of the

Purchased Assets to the Purchaser and the assignment to the Purchaser of the Assigned Contracts

will not subject the Purchaser to any liability whatsoever which may become due or owing under

the Assigned Contracts prior to the Assignment Date, or by reason of such transfer under the

laws of the United States, any state, territory, or possession thereof, or the District of Columbia,

or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or

equity, including any Successor or Other Liabilities.

12.     The Agreements are valid and binding contracts between the Debtors and the

Purchaser and shall be enforceable pursuant to their terms.  The Agreements, the Transaction

(including the Sale), and the consummation thereof shall be specifically enforceable against and

binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee

appointed in these Chapter 11 Cases or any converted or successor cases, and shall not be subject

to rejection or avoidance by the foregoing parties or any other Person.  The Agreements were not

entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy

Code or under the laws of the United States, any state, territory, possession, or the District of

Columbia, or foreign jurisdiction.  As demonstrated by the Schnitzler Declaration, the

consideration provided by the Purchaser for the Purchased Assets pursuant to the Agreements (i)

is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide

a greater recovery for the Debtors' creditors than would be provided by any other practical

available alternative, and (iv) constitutes reasonably equivalent value and fair consideration

under the Bankruptcy Code and under the laws of the United States, any state, territory,

possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform

Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws and acts).

Neither the Debtors nor the Purchaser is entering into the Transaction contemplated by the

Agreements with any fraudulent or otherwise improper purpose, including for the purpose of

statutory and common-law fraudulent conveyance and fraudulent transfer claims.

13.    Each and every federal, state, local, and other governmental agency,

governmental department, filing agent, filing officer, title agent, recording agency, secretary of

state, federal, state, and local official, and any other persons and entity who may be required by

operation of law, the duties of their office or contract, to accept, file, register, or otherwise record

or release any documents or instruments or who may be required to report or insure any title in or

to the Purchased Assets, is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the Sale contemplated by the APA.  Neither the

Debtors nor the Purchaser shall be required to execute or file releases, termination statements,

assignments, consents, or other instruments or documents in order to effectuate, consummate,

and implement the provisions of this Order.  The Purchaser may, but shall not be required to, file

a certified copy of this Order in any filing or recording office in any federal, state, county, or

other territory or jurisdiction in which any of the Debtors is incorporated or has real or personal

property, or with any other appropriate clerk or recorded with any other appropriate recorder, and

such filing or recording shall be accepted and shall be sufficient to release, discharge, and

terminate any of the Interests as set forth in this Order as of the Closing Date.

14.     On the Closing Date, each of the Debtors' creditors is authorized and directed to

execute such documents and take all other actions as may be reasonably necessary to release its

Liens, if any, in the Purchased Assets, as such Liens may otherwise exist.  If any Person that has

filed a financing statement, mortgage, mechanic's lien, *lis penden*s, or other statement,

document, or agreement evidencing an Interest in any portion of the Purchased Assets (other

than statements or documents with respect to Permitted Post-Closing Encumbrances or Assumed

Liabilities) shall not have delivered to the Debtors prior to the Closing, in proper form for filing

and executed by the appropriate parties, termination statements, instruments of satisfaction,

releases, and/or other similar documents necessary for the purpose of documenting the release of

all Interests that such Person has in the Purchased Assets, then (i) the Debtors are hereby

authorized to execute and file such statements, instruments, releases, and/or other similar

documents on behalf of such Person with respect to the Purchased Assets, (ii) the Purchaser is

hereby authorized to file, register, or otherwise record a certified copy of this Order that, once

filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all

Interests of any kind or nature in the Purchased Assets, and (iii) the Purchaser may seek in this

Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute

termination statements, instruments of satisfaction, releases, and/or other similar documents with

respect to all Interests that such Person has in the Purchased Assets.  This Order is deemed to be

in recordable form sufficient to be placed in the filing or recording system of each and every

federal, state, or local government agency, department, or office.

15.      The Debtors and the Purchaser shall have no obligation to proceed with the
Closing until all conditions precedent to its obligations to proceed have been met, satisfied or
waived in accordance with the terms of the APA.

16.      Unless the Purchaser otherwise consents, all Persons that are in or come into
possession of any portion of the Purchased Assets, at any time prior to the Closing Date, are
hereby directed to surrender possession of such Purchased Assets to the Purchaser on the Closing
Date, or at such time thereafter as the Purchaser may request.  Subject to the terms of this Order,
all Persons are hereby forever prohibited and enjoined from taking any action that would
adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased
Assets to the Purchaser in accordance with the terms of the APA and this Order.

17.      This Order is and shall be binding upon and govern the acts of all Persons
(including, without limitation, all filing agents, filing officers, title agents, title companies,
recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,
governmental departments, secretaries of state, federal, state, and local officials, and all other
persons or entities) who may be required by operation of law, the duties of their office, or
contract, to accept, file, register, or otherwise record or release any documents or instruments, or
who may be required to report or insure any title or state of title in or to any lease; and each of
the foregoing Persons shall accept for filing any and all of the documents and instruments
necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise
consummate the transactions contemplated by the Agreements and this Order.

18.      To the extent permitted under applicable law, the Purchaser shall be authorized, as
of the Closing Date, to operate under any license, permit, registration, and governmental
authorization or approval of the Debtors with respect to the Purchased Assets, and all such

licenses, permits, registrations, and governmental authorizations or approvals are deemed to have

been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the

extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke,

suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the

Purchased Assets on account of the filing or pendency of these Chapter 11 Cases or the

consummation of the transactions contemplated by the Agreements, including the Sale and the

assumption and assignment or assignment, as applicable, of the Assigned Contracts. To the

extent any license or permit necessary for the operation of the business of the Debtors is

determined not to be an executory contract assumable and assignable under section 365 of the

Bankruptcy Code or otherwise transferable to the Purchaser, the Purchaser may apply for and

obtain any necessary license or permit promptly and the Debtors are hereby authorized to

cooperate with the Purchaser in connection with any such application as the Purchaser deems

reasonably necessary or desirable, pursuant to the provisions of the Agreements.

19.     Notwithstanding anything to the contrary herein, as of or following the Closing

Date, as applicable, the Purchaser shall assume and pay, discharge, perform or otherwise satisfy

the Assumed Liabilities, subject to the terms of the APA.

**IV.   Assumption and Assignment or Assignment, As Applicable, of Assigned Contracts.**

20.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to

and conditioned upon the Closing of the Sale, the applicable Debtors' assumption and

assignment or assignment, as applicable, to the Purchaser, and the Purchaser's acceptance of, the

Assigned Contracts, on the terms set forth in the APA, is hereby approved, and the requirements

of section 365(b)(1) and 365(f)(2) with respect thereto are hereby found and deemed to be

satisfied.

21.     The Debtors are hereby authorized and, unless the Debtors and the Purchaser
otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy
Code to (a) assume and assign or assign, as applicable, to the Purchaser, effective upon the
Assignment Date, the Assigned Contracts free and clear of all Interests (other than the Permitted
Post-Closing Encumbrances and the Assumed Liabilities) and (b) execute and deliver to the
Purchaser such documents or other instruments as Purchaser deems may be necessary to assign
and transfer the Assigned Contracts to the Purchaser.

22.     With respect to the Assigned Contracts, and with respect to the Sale of the
Purchased Assets to the Purchaser: (a) the Debtors may assume each of the Assigned Contracts
that is a prepetition contract in accordance with section 365 of the Bankruptcy Code; (b) the
Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the
Bankruptcy Code, and, to the extent provided in section 365 of the Bankruptcy Code, any
provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned
Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty,
condition renewal or extension, or modify any term or condition upon the assignment of such
Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no
force and effect; (c) all other requirements and conditions under sections 363 and 365 of the
Bankruptcy Code for the assumption by the Debtors and assignment or assignment, as applicable,
to the Purchaser of each Assigned Contract have been satisfied; and (d) effective upon the
Assignment Date, the Assigned Contracts shall be transferred and assigned to, and from and
following the Assignment Date remain in full force and effect for the benefit of, the Purchaser,
notwithstanding any provision in any Assigned Contract that prohibits, restricts, or conditions such
assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall

24

be relieved from any further liability with respect to the Assigned Contracts after such assumption

and assignment or assignment, as applicable, to the Purchaser, except as provided in the APA.  To

the extent any provision in any Assigned Contract assumed and assigned or assigned, as applicable,

pursuant to this Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or

condition, such assumption and assignment or assignment (including, without limitation, any

"change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified,

breached, or terminated by any of the following: (A) the commencement of these Chapter 11 Cases,

(B) the insolvency or financial condition of any of the Debtors at any time before the closing of

these Chapter 11 Cases, (C) the Debtors' assumption and/or assignment of such Assigned Contract,

(D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such

provision shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit,

restrict, or condition such assumption and assignment or assignment, to modify, terminate, or

declare a breach or default under such Assigned Contract, or to exercise any other default-related

rights or remedies with respect thereto.  With respect to the Sale of the Purchased Assets to the

Purchaser, all such provisions constitute unenforceable anti-assignment provisions that are void

and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

23.    All defaults or other obligations of the Debtors under the Assigned Contracts

arising or accruing prior to the Assignment Date, or required to be paid pursuant to section 365

of the Bankruptcy Code in connection with the assumption and assignment or assignment, as

applicable, of the Assigned Contracts shall be cured by the Debtors or the Purchaser, as

applicable, to the extent set forth in the APA and this Order.

24.    All requirements and conditions under sections 363 and 365 of the Bankruptcy

Code for the assumption by the Debtors and assignment to the Purchaser of the Assigned

Contracts have been satisfied. Each of the Assigned Contracts shall be deemed to be valid and

binding and in full force and effect and enforceable in accordance with their terms as of the

Assignment Date, subject to any amendments or modifications agreed to between a Contract

Counterparty and the Purchaser. Upon the Assignment Date, in accordance with sections 363

and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all

right, title, and interest of the Debtors in and under the Assigned Contracts, and each Assigned

Contract shall be fully enforceable by the Purchaser in accordance with its respective terms and

conditions, except as limited or modified by this Order. To the extent provided in the APA, the

Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to

effectuate the foregoing.

25.    Upon payment of the Cure Costs pursuant to the terms hereof and the APA, and

Debtors' assignment of the Assigned Contracts to the Purchaser under the provisions of this Order,

no default or other obligations arising prior to the Assignment Date shall exist under any Assigned

Contract, and each Contract Counterparty is forever barred, estopped, and permanently enjoined

from (a) declaring a default by the Debtors or the Purchaser under such Assigned Contract based

on acts or occurrences arising prior to or existing as of the Assignment Date, (b) raising or asserting

against the Debtors or the Purchaser, or the property of either of them, any assignment fee, default,

breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the

Assigned Contracts, or (c) taking any other action against the Purchaser as a result of any Debtor's

financial condition, bankruptcy, or failure to perform any of its obligations under the relevant

Assigned Contract. Each Contract Counterparty hereby is also forever barred, estopped, and

permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the property of

any of them, any default or Claim arising out of any indemnity or other obligation or warranties

26

for acts or occurrences arising prior to or existing as of the Assignment Date, and (ii) imposing or

charging against Purchaser or its affiliates any rent accelerations, assignment fees, increases, or

any other fees as a result of the Debtors' assumption and assignment or assignment, as applicable,

to Purchaser of the Assigned Contracts.

26.     Subject to the terms and conditions of the APA, and upon the Assignment Date,

the Debtors shall have: (i) to the extent necessary, cured or provided adequate assurance of cure

of, any default existing prior to the date hereof under the Assigned Contracts, within the meaning

of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (ii) to the extent

necessary, provided compensation or adequate assurance of compensation to any party for any

actual pecuniary loss to such party resulting from a default prior to the date hereof under the

Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the

Bankruptcy Code.  The Debtors' and Purchaser's obligations to pay the Cure Costs under the

APA and the Purchaser's agreement to perform the obligations under the Assigned Contracts in

accordance with the terms of the APA shall constitute adequate assurance of future performance

within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the

extent that any such assurance is required and not waived by the Contract Counterparties.

27.     To the furthest extent permitted by law, any party that may have had the right to

consent to the assumption or assignment or assignment, as applicable, of an Assigned Contract is

deemed to have consented to such assumption and assignment or assignment for purposes of

section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the

potential assumption or assignment of such Assigned Contract, and the Purchaser shall be

deemed to have demonstrated adequate assurance of future performance with respect to such

Assigned Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

Any counterparty to an Executory Contract that may be assumed and assigned to the Purchaser who has not timely filed and served an objection shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Executory Contract, and such Executory Contract, if designated as an Assigned Contract in accordance with the terms of the APA, shall be deemed assumed by the Debtors and assigned to the Purchaser on the Assignment Date pursuant to this Order.

28.    No later than five (5) Business Days after the Closing Date, the Debtors shall file with the Court a notice (the "Closing Date Assigned Contracts Notice") listing the Assigned Contracts included on Schedule 1.1(e) of the APA as of the Closing Date (the "Closing Date Assigned Contracts") and serve such Closing Date Assigned Contracts Notice on the Contract Counterparties to each Closing Date Assigned Contract.  No later than five (5) Business Days after the Designation Deadline (as defined in the APA), the Debtors shall file with the Court a notice (the "Designation Deadline Assigned Contracts Notice") listing any Assigned Contracts added to Schedule 1.1(e) of the APA after the Closing Date in accordance with Section 1.5(e) of the APA (the "Designation Deadline Assigned Contracts") and serve such Designation Deadline Assigned Contracts Notice on the Contract Counterparties to each Designation Deadline Assigned Contract.

29.    To the extent a Contract Counterparty fails to timely object to the Cure Costs for any Executory Contract, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

30.    The requirements of Bankruptcy Rule 6006(f)(6) are hereby waived with respect to the Motion and the relief requested therein.

31.     Upon and as of the Assignment Date, the Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

32.     The Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Purchased Assets.

33.     From the date of the entry of the Order, the Debtors may, in their sole discretion, settle objections to assumption and assignment or assignment, as applicable, of any Assigned Contract, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Cost); *provided* that notice to and consent of the Purchaser shall be required to the extent the Purchaser is liable for such Cure Cost pursuant to the APA as modified by this Order.  Unless the Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract without the necessity of obtaining any further order of the Court.

34.     Notwithstanding anything to the contrary herein, no executory contract or unexpired lease as to which a Contract Counterparty timely files and serves an objection shall be considered an Assigned Contract under this Order unless and until any timely objection to the assumption and assignment or assignment, as applicable, of such executory contract or unexpired lease has been resolved or overruled.

35.     In the event that an Executory Contract is omitted from the Notice of Potential

Assumption and Assignment or Assignment, as Applicable, of Contracts and Proposed Cure Costs,

and the Purchaser desires to designate such Executory Contract as an Assigned Contract in

accordance with the terms of the APA, the Debtors shall promptly (x) serve a supplemental

assumption and assignment notice (each, a "Supplemental Assumption and Assignment Notice")

by first class mail or electronic mail on the applicable Contract Counterparties setting forth the

Debtors' intention to assume and assign such Executory Contracts to the Purchaser (which notice

shall include the applicable proposed Cure Costs) and (y) file the Supplemental Assumption and

Assignment Notice with the Court.

36.     Any Contract Counterparty to an Executory Contract listed on a Supplemental

Assumption and Assignment Notice may object to the proposed assumption or assignment of

such Executory Contract, the Debtors' proposed Cure Costs, if any, or the ability of the

Purchaser to provide adequate assurance of future performance (a "Supplemental Assumption

and Assignment Objection").  All Supplemental Assumption and Assignment Objections must

(a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy

Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the

amount of the Cure Costs the Contract Counterparty believes is required to cure defaults under

the relevant Assigned Contract, (d) be filed by no later than **fourteen (14) days from the date of**

**service of such Supplemental Assumption and Assignment Notice** and (e) be served on the

Assumption and Assignment Objection Notice Parties (as defined in the Motion).

37.     If a Contract Counterparty files a timely Supplemental Assumption and

Assignment Objection, the Court will hear and determine such objection on an expedited basis,

and if reasonably practicable no later than the applicable Assignment Date.  If such objection has

not been resolved prior to the applicable Assignment Date (whether by an order of the Court or

by agreement with the Contract Counterparty), the Purchaser shall pay as soon as reasonably

practicable after the applicable Assignment Date any such disputed Cure Cost pursuant to an

Order of the Bankruptcy Court or mutual agreement between the Debtors, the Purchaser and the

Contract Counterparty.

38.     Nothing in this Order, the Motion, or any other  notice or any other document is

or shall be deemed an admission by the Debtors that any contract is an executory contract or

must be assumed and assigned pursuant to the APA or in order to consummate the Sale.

**V.     No Successor Liability; Prohibition of Actions Against the Purchaser.**

39.     The Purchaser is not a "successor" to, continuation of, or alter ego of, any of the

Debtors or their estates by reason of any theory of law or equity.  Except with respect to the

Permitted Post-Closing Encumbrances and Assumed Liabilities, the Purchaser shall not have,

assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of

any of the Debtors or their estates, or any of the Debtors' predecessors or Affiliates with respect

to the Purchased Assets or otherwise.  Without limiting the generality of the foregoing, and

except as otherwise specifically provided in the APA, the Purchaser shall not be liable for any

Interests against, or with respect to, the Debtors, their estates, or any of the Debtors'

predecessors, or Affiliates, including but not limited to, any Successor or Other Liabilities.

Neither the purchase of the Purchased Assets by the Purchaser nor the fact that the Purchaser is

using any of the Purchased Assets previously operated by the Debtors will cause the Purchaser to

be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtors or

the Debtors' businesses, or incur any liability derived therefrom within the meaning of any

foreign, federal, state, or local revenue, pension, ERISA, tax, antitrust, environmental, labor law

(including any WARN Act), employment or benefits law, de facto merger, business continuation,

substantial continuity, successor, vicarious, alter ego, derivative, or transferee liability, veil

piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule,

regulation (including filing requirements under any such laws, rules, or regulations), or under

any products liability law or doctrine with respect to the Debtors' liability under such law, rule,

or regulation or doctrine, whether now known or unknown, now existing or hereafter arising,

whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether

matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated,

whether arising prior to or subsequent to the Petition Date, whether imposed by agreement,

understanding, law, equity, or otherwise, including, but not limited to, liabilities on account of

warranties, intercompany loans, and receivables among the Debtors, and any taxes, arising,

accruing, or payable under, out of, in connection with, or in any way relating to the cancellation

of debt of the Debtors or their Affiliates, or in any way relating to the operation of any of the

Purchased Assets or ratings experience of the Debtors prior to the Closing Date, in each case

other than the Permitted Post-Closing Encumbrances and Assumed Liabilities.

40.     Except with respect to Permitted Post-Closing Encumbrances, Assumed

Liabilities and to the extent otherwise specifically agreed in the APA, the Purchaser shall not

have any liability, responsibility, or obligation for any Interests of the Debtors or their estates,

including any claims, liabilities, or other obligations related to the Purchased Assets which may

become due or owing (a) prior to the Closing Date or (b) from and after the Closing Date but

which arise out of or relate to any act, omission, circumstance, breach, default, or other event

occurring prior to the Closing Date.

41.     Except with respect to Permitted Post-Closing Encumbrances, Assumed Liabilities,

or as otherwise set forth in the APA, all Persons (including but not limited to, all debt holders,

equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors,

litigation claimants, contract counterparties, customers, landlords, licensors, employees), and other

holders of Interests against or in any of the Debtors or any portion of the Purchased Assets (whether

legal or equitable, secured or unsecured, matured or unmatured, known or unknown, contingent or

noncontingent, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether

arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding,

law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to,

the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing, or

the transfer of the Purchased Assets to the Purchaser (including without limitation any Successor

or Other Liabilities or rights or claims based thereon) shall be, and hereby are, forever barred,

estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against the

Purchaser, any of the Purchaser's Affiliates or Subsidiaries, or any of their respective officers,

directors, partners, principals, shareholders, professionals, or representatives, successors, or

assigns, or their respective assets or properties, including, without limitation, the Purchased Assets,

the Interests of any kind or nature whatsoever such Person had, has, or may have against or in the

Debtors, their estates, officers, directors, shareholders, or the Purchased Assets, including, without

limitation, the following actions: (a) commencing or continuing in any manner any action or other

proceeding, the employment of process, or any act (whether in law or equity, in any judicial,

administrative, arbitral, or other proceeding) against the Purchaser, the Purchaser's Affiliates or

Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders,

professionals, or representatives, successors, or assigns, or their respective assets or properties,

including the Purchased Assets; (b) enforcing, attaching, collecting, or recovering in any manner

any judgment, award, decree, or order against the Purchaser, any of the Purchaser's Affiliates or

Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Purchased Assets; (c) creating, perfecting, or enforcing any Interest against the Purchaser, any of the Purchaser's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Purchased Assets; (d) asserting any setoff not asserted prepetition, or right of subrogation, of any kind against any obligation due the Purchaser, any of its Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Purchased Assets; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) to the extent prohibited by Section 525 of the Bankruptcy Code, revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.  Nothing contained herein, the Agreements or the Motion shall enjoin any party from asserting any affirmative defenses.

42.    Except as provided in the APA and without limiting other applicable provisions of this Order, the Purchaser is not, by virtue of the consummation of the Transaction (including the Sale), assuming, nor shall it be liable or responsible for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to or arising from the Debtors, the Purchased Assets, or the Debtors' operation of their businesses or use of the Purchased Assets on

or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any

way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid,

discharged, or performed on or prior to the Closing Date (in each case, including, without

limitation, Successor or Other Liabilities and any liabilities that result from, relate to, or arise out

of tort or product liability claims), or any liabilities calculable by reference to the Debtors or

their assets or operations (including, without limitation, by reference to the Debtors' experience

or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date,

including with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts,

commitments, and obligations are hereby extinguished insofar as they may give rise to Successor

or Other Liability.

**VI.    Other Provisions.**

43.    The consideration provided by the Purchaser to the Debtors pursuant to the

Agreements for the Purchased Assets is fair and reasonable and shall be deemed for all purposes

to constitute reasonably equivalent value, fair value, and fair consideration, including under the

Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and

under the laws of the United States, any state, territory, possession, the District of Columbia, or

any foreign jurisdiction.

44.    The transactions contemplated by the Agreements and this Order are undertaken

by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of

the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the

authorization provided herein to consummate the Transaction (including the Sale) shall not alter,

affect, limit, or otherwise impair the validity of the Sale (including the assumption, assignment,

and/or transfer of the Assigned Contracts), unless such authorization and consummation of the

Sale are duly stayed pending such appeal.  The Purchaser is a good-faith purchaser within the

meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby

granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy

Code.  As a good-faith purchaser of the Purchased Assets, the Purchaser has not entered into any

agreement with any other potential bidders and has not colluded with any potential or actual

bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates

shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided

pursuant to section 363(n) of the Bankruptcy Code.

45.    Notwithstanding anything to the contrary herein, the APA or the Motion, the Sale

shall not be exempt from taxes under Section 1146(a) under the Bankruptcy Code.  No bulk sales

law or any similar law of any state or other jurisdiction shall apply in any way to the transactions

contemplated under the APA.  No brokers were involved in consummating the Sale or the other

such transactions, and no brokers' commissions are due to any person or entity in connection with

the Sale or the other such transactions.  The Purchaser is not and will not become obligated to pay

any fee or commission or like payment to any broker, finder, or financial advisor as a result of the

consummation of the Sale based upon any arrangement made by or on behalf of the Debtors.

46.    For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and

9014, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable

immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6004(d) are

hereby expressly waived and shall not apply.  Accordingly, the Debtors and Purchaser are

authorized and empowered to close the Transaction (including the Sale) immediately upon entry

of this Order.

47.     The failure to include or specifically reference any particular provision of any

Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

the intent of the Court that the Agreements be authorized and approved in their entirety.

48.     To the extent that this Order is inconsistent with the Motion, the terms of this

Order shall control and govern.  To the extent that there are any inconsistencies between the

terms of this Order, on the one hand, and any Agreement, on the other hand, the terms of this

Order shall control and govern.  To the extent that this Order is inconsistent with any prior order

or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall

govern.  To the extent that any plan of reorganization or liquidation, or any order of any type or

kind entered in these Chapter 11 Cases or any subsequent chapter 7 case into which these

Chapter 11 Cases may be converted, conflicts with or derogates from the terms of any

Agreement or this Order, the terms of the applicable Agreement and this Order shall control and

govern to the extent of any such conflict or derogation.

49.     The Agreements may be modified, amended, or supplemented in a writing signed

by the parties thereto and in accordance with the terms thereof, without further notice to or order

of the Court, so long as any such modification, amendment or supplement does not have a

material adverse effect on the Debtors' estates and does not otherwise conflict with this Order.

50.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby

lifted with respect to the Debtors to the extent necessary, without further order of the Court, to

allow the Purchaser to deliver any notice provided for in the APA and allow the Purchaser to

take any and all actions permitted under the APA.

51.     Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any

order confirming any such plan or any other order in the Debtors' cases (including any order

entered after any conversion of these cases into cases under chapter 7 of the Bankruptcy Code)

shall alter, conflict with, or derogate from, the provisions of the Agreements or this Order and, to

the extent of any such conflict, the terms of this Order and the Agreements shall control.

52.      From time to time, as and when requested by the other, the Debtors and the

Purchaser, as the case may be, shall execute and deliver, or cause to be executed and delivered, all

such documents and instruments and shall take, or cause to be taken, all such further or other

actions as such other party may reasonably deem necessary or desirable to consummate the

Transaction (including the Sale), including, such actions as may be necessary to vest, perfect or

confirm, or record or otherwise, in the Purchaser its right, title and interest in and to the Purchased

Assets and the Assigned Contracts, subject to the provisions of the applicable Agreement.

53.      Notwithstanding any provision to the contrary in the Motion, this Order, and any

implementing Sale documents, nothing shall: (1) authorize the assumption, sale, assignment or

other transfer to the Purchaser of any contracts, leases, agreements or other interests of the federal

government (collectively, "Federal Interests") without compliance with all applicable legal

requirements and approvals under non-bankruptcy law; (2) require the government to novate,

approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal

Interests; (3) affect the government's rights to recoup any amounts due under, or relating to, the

Federal Interests; (4) constitute an approval or consent by the United States without compliance

with all applicable legal requirements and approvals under non-bankruptcy law; or (5) confer

exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the

extent set forth in 28 U.S.C. Section 1334 (as limited by any other provisions of the United States

Code).  Notwithstanding the foregoing sentence, nothing in this Order shall: (i) create for any

governmental unit any substantive right that does not already exist under law; or (ii) be deemed or construed to be, an admission of liability by the Debtors.

54.     Notwithstanding any other provision of this Order or the APA, no agreement between the Debtors on the one hand, and Oracle America, Inc. ("Oracle") on the other hand (the "Oracle Agreements"), will be assumed, assigned, or transferred, and no shared or concurrent use of Oracle's products and services by the Purchaser or its affiliates or designees on account of the Oracle Agreements will be authorized except as expressly permitted pursuant to the applicable agreement(s), absent further Court order or Oracle's prior written consent.

55.     No provision of this Order, the Motion, or the Agreements shall authorize the Debtors to: (i) sublicense or transfer any software or proprietary information (the "Software") owned, licensed, or provided by SAP America, Inc. ("SAP") to the Purchaser or any other third party; (ii) provide the Purchaser or any other third party with rights or access to the Software, or to any computers, equipment, hardware, or other property of the Debtors on which the Software is installed, loaded, or embedded; or (iii) use, or allow shared use of, the Software or any Software-related services provided by SAP for the benefit of the Purchaser or any other third party.  Should the Debtors seek to use, or allow the use of, the Software or services provided by SAP by or for the benefit of any third party, such use shall be provided only upon agreement between the SAP, the Debtors, and the Purchaser or, if no agreement can be reached, by further order of the Court upon adequate notice to the SAP, which shall have an opportunity to respond; *provided* that the provisions of this paragraph shall not prohibit the Debtors from using, or allowing the use of, the Software or services provided by SAP by or for the benefit of any third party if and to the extent that such use is authorized under the applicable agreements with SAP in accordance with their terms.

56.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Agreements, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Transaction, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) interpret, implement, and enforce the provisions of this Order, including but not limited to the injunctions and limitations of liability set forth in this Order, (c) protect the Purchaser against any Interests in or against the Debtors or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under sections 105, 363, and 365 of the Bankruptcy Code with respect to the Purchased Assets and the Assigned Contracts.

57.     Nothing in this Order or the Agreements releases, nullifies, precludes or enjoins the enforcement of any valid police or regulatory liability to a governmental unit, to which the Purchaser may be subject to as the post-sale owner or operator of any property that is a Transferred Asset after the date of entry of this Order.  Nothing in this Order or the Agreements authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligations thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.


Dated: White Plains, New York
       _____, 2020


40

_____

HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE