**Hearing Date: September 30, 2020 at 10:00 am (Prevailing Eastern Time)**
**Objection Deadline: September 25, 2020 at 4:00 pm (Prevailing Eastern Time)**
**Reply Deadline: September 28, 2020 at 11:59 pm (Prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.,** *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |
| **PURDUE PHARMA L.P.,** *et al.*,<br><br>        Plaintiffs,<br>    v.<br><br>**COMMONWEALTH OF MASSACHUSETTS,** *et al.*,<br><br>        Defendants. | Adv. Pro. No. 19-08289 (RDD) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO EXTEND THE PRELIMINARY INJUNCTION**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................…...........3

I.    The Non-Consenting States' Limited Objection Should Be Overruled..................…...........3

II.    The Objection of the Ad Hoc Committee on Accountability Should Be Overruled .........................................................................................................................5

CONCLUSION..............................................................................................................................11

# TABLE OF AUTHORITIES

C̲A̲S̲E̲S̲

P̲AGE(S)

*In re Purdue Pharms., L.P.*,
  No. 19-cv-10941, 2020 WL 4596869 (S.D.N.Y. Aug. 11, 2020) ......................................6, 8, 9

**PRELIMINARY STATEMENT**

In their Moving Brief,[2] the Debtors demonstrated that extraordinary progress has been made in these chapter 11 cases under the protection afforded by the Preliminary Injunction, that a continued stay of the Pending Actions against the Debtors and Related Parties remains critical to the success of these chapter 11 cases as they enter their determinative phase, and that a return to the value-destructive litigation chaos that reigned before this Court granted the Preliminary Injunction would deal a disastrous blow to the Debtors' reorganization.  Once again, the litigation plaintiffs subject to the injunction are largely in agreement.  <u>No one</u> has objected to a continued stay of litigation against the Debtors.  <u>No one</u> has objected to a continued stay of litigation against any of the Related Parties other than against certain members of the Sackler Families.  And the <u>overwhelming majority</u> of litigation plaintiffs have not objected to a continued stay of litigation against even as to those Sacklers.  This broad consensus, no doubt, is a testament to the significant time and resources that the Debtors and other estate constituencies have invested to achieve a successful outcome here—as reflected, most recently, in the mediators' announcement that core estate constituencies have reached agreements-in-principle that resolve, in large measure, the critically important issue of allocation of the value of the Debtors' estates.

The three objections that have been filed are just as telling.  Certain Tennessee plaintiffs have filed a four-page *pro forma* objection to the continued injunction of their suit against Richard Sackler, a former President and Co-Chairman of the Debtors.  In that objection, the Tennessee plaintiffs only incorporate by reference their prior arguments rejected by both this

---

[2] Unless otherwise set forth herein, capitalized terms have the meanings ascribed to them in the Debtors' Memorandum of Law in Support of Motion to Extend the Preliminary Injunction, *In re Purdue Pharma L.P.*, Adv. Pro. 19-08289 (RDD) (S.D.N.Y. Bankr. Sept. 16, 2020) [ECF No. 198] ("**Moving Brief**").

1

Court and the District Court, concede that it is a "virtual certainty" that this Court will grant the Debtors' motion to extend the injunction, and "[i]n the interest of judicial economy and the preservation of estate resources . . . waive any right to present argument" at the September 30, 2020 hearing. (*See* Second Restatement of Limited Obj. and Reservation of Rights of Tennessee Public Officials in Response to Debtors' Mot. to Extend the Prelim. Inj. for Richard Sackler at 2–4, *In re Purdue Pharma L.P.*, Adv. Pro. 19-08289 (RDD) (S.D.N.Y. Bankr. Sept. 25, 2020) [ECF No. 201].) In that same spirit of preserving estate resources, this "objection," such as it is, will not be further addressed by the Debtors.

The Non-Consenting States, for their part, reaffirm in their two-page pleading their voluntary commitment not to pursue litigation against the Debtors or Related Parties other than nine members of the Sackler Families. As to those nine Sacklers, the Non-Consenting States only incorporate by reference arguments they have previously advanced in opposition to the initial injunction and the first motion to extend. Of course, this Court has already carefully weighed and rejected those arguments, and there is no reason to disturb those holdings today. With respect to their objection to and alternative proposal regarding a provision in the Debtors' proposed order that permitted certain parties to move in December to shorten the injunction as to members of the Sackler Families, the Debtors are happy to report that this portion of the Non-Consenting States' objection has been resolved by certain revisions to the Debtors' proposed order, attached to the accompanying Reply Declaration of Benjamin S. Kaminetzky as Exhibit A. Among other things, the revised proposed order permits those parties who are bound or voluntarily abiding by the Preliminary Injunction to move in either December or January to terminate or shorten the injunction with respect to members of the Sackler Families.

2

Finally, the so-called Ad Hoc Committee on Accountability—which first appeared in these cases in May 2020 and represents five people—objects to the injunction as it pertains to members of the Sackler Families. The Ad Hoc Committee on Accountability's objection is largely untethered to applicable legal standards, evinces a basic lack of familiarity with what has transpired in these chapter 11 cases, recycles inflammatory arguments that have been advanced in the past by other parties (in significantly more measured form), and goes so far as to cast aspersions on this Court and its motives. In the normal course, the Debtors might otherwise be inclined to let such an improvident objection stand—and fall—on its own. But public confidence in the conduct of these chapter 11 cases is important, and thus the Debtors endeavor to set the record straight with respect to a number, but by no means all, of the misleading or outright false assertions contained in the Ad Hoc Committee on Accountability's objection.

## ARGUMENT

### I. The Non-Consenting States' Limited Objection Should Be Overruled

Although they have filed a short opposition to any extension of the Preliminary Injunction as to nine members of the Sackler Families, the Non-Consenting States all but concede that the Debtors have established that a continuation of the injunction in its current form is appropriate and essential to the success of these cases. (*See* The Non-Consenting States' Voluntary Commitment and Limited Obj. in Resp. to Purdue's Mot. to Extend the Prelim. Inj., *In re Purdue Pharma L.P.*, Adv. Pro. 19-08289 (RDD) (S.D.N.Y. Bankr. Sept. 25, 2020) [ECF No. 202] ("**Non-Consenting States' Brief**").) They do not dispute, for example, that the litigation standstill imposed by the Preliminary Injunction provided the space necessary for key estate constituencies—including the Non-Consenting States—to negotiate and reach important agreements-in-principle regarding allocation of the value of the Debtors' estates, a predicate step toward confirming a plan of reorganization. (*See* Mediators' Report, *In re Purdue Pharma L.P.*,

3

No. 19-23649 (S.D.N.Y. Bankr. Sept. 23, 2020) [ECF No. 1716] ("**Mediators' Report**"); Moving Br. at 6–7.)  They do not dispute that the term sheets with private claimant groups reached in mediation "are conditioned on the Court's confirmation of a plan of reorganization that includes participation by the Sackler family in the plan of reorganization."  (Mediators' Report at 5.)  They do not dispute that the Preliminary Injunction has facilitated extensive information sharing and discovery from the Sackler Families, which as of September 16, 2020 have collectively produced over 370,000 documents totaling over 2 million pages (in addition to over 33,000 documents produced by the IACs, totaling over a million pages).  (Decl. of Benjamin S. Kaminetzky in Support of Debtors' Mot. to Extend the Prelim. Inj., ¶¶ 12–15, *In re Purdue Pharma L.P.*, Adv. Pro. 19-08289 (RDD) (S.D.N.Y. Bankr. Sept. 17, 2020) [ECF. No. 199] ("**Kaminetzky Declaration**").)  And they do not dispute that these accomplishments to date, all of which flow in some way from the protection afforded by the Preliminary Injunction, are designed to, and hopefully will, permit the Debtors, parties in interest, and members of the Sackler Families to effectively negotiate the amount and contours of the Sackler contribution to the Debtors' estates as part of a largely consensual plan of reorganization.  (*See* Moving Br. at 15.)  Indeed, the Non-Consenting States do not address the arguments and evidence that the Debtors' advanced in their Moving Brief.

Instead, the Non-Consenting States recycle by reference arguments they advanced in prior briefing and claim, in perfunctory fashion, that the Preliminary Injunction "interferes with the enforcement of state law and harms the public." (Non-Consenting States' Br. at 1.)  Needless to say, this Court already carefully weighed and rejected these arguments.  (*See, e.g.*, Oct. 11, 2019 Hr'g Tr. at 256:19–262:8; Mar. 18, 2020 Hr'g Tr. at 95:22–99:22.)  The Non-Consenting States do not identify any reason to disturb these holdings.

For all of these reasons, the Non-Consenting States' limited objection should be rejected.

## II. The Objection of the Ad Hoc Committee on Accountability Should Be Overruled

The objection of the self-styled Ad Hoc Committee on Accountability should also be overruled. This group demands that the Preliminary Injunction be modified so as to permit an undefined and amorphous "credible and public test of the Sackler Allegations"—presumably trials of some sort against members of the Sackler Families. (*See* Limited Objection of the Ad Hoc Committee on Accountability to Debtors' Mot. to Extend the Prelim. Inj., at 16, *In re Purdue Pharma L.P.*, Adv. Pro. 19-08289 (RDD) (S.D.N.Y. Bankr. Sept. 25, 2020) [ECF No. 203] ("**Ad Hoc Objection**").) Litigating such cases to trial, however, would take years, would cause irreparable harm to these bankruptcy cases (as this Court has now held twice and the District Court has affirmed), and would significantly delay putting <u>billions of dollars</u> of value to productive use addressing the opioid crisis—if such value was not destroyed altogether.

It is little surprise, then, that the Ad Hoc Committee on Accountability stands alone in aggressively advocating that this Court lift the injunction as to members of the Sackler Families at this critical juncture in these chapter 11 cases. The truth of the matter is that, far from decreasing accountability and clouding transparency, these chapter 11 cases have enabled creditor constituencies to obtain, in just one year, far more information from the Sacklers than had been obtained in the years of litigation outside of bankruptcy. (Kaminetzky Decl. ¶¶ 12–15.) And that discovery process continues at full speed today. (Kaminetzky Decl. ¶¶ 12–16.)

The Ad Hoc Committee on Accountability's objection, while seemingly acknowledging the legal standards governing the issuance of a preliminary injunction, does not purport to address, and therefore concedes, the irreparable harm and balance of harm preliminary injunction factors. With respect to likelihood of a successful reorganization, the Ad Hoc Committee on Accountability makes a series of assertions regarding plan confirmation that are both incorrect

5

and irrelevant. (*See* Ad Hoc Obj. at 8–9.) As the District Court held, the very "fact that [settlement] discussions are continuing provides support for the finding that continuing the injunction increases the likelihood of a successful reorganization." *In re Purdue Pharmaceuticals, L.P.*, No. 19-cv-10941, 2020 WL 4596869, at *16 (S.D.N.Y. Aug. 11, 2020). What remains is a series of previously rejected arguments, misstatements as to the effect of the injunction and the progress of these chapter 11 cases, and attacks that edge right up to, if not cross, the line of becoming *ad hominem*.

While ignoring this vitriolic and often untethered pleading would be tempting, Debtors are compelled to briefly address some (but by no means all) of the more egregious statements in the Ad Hoc Committee on Accountability's pleading.[3]

- **The Preliminary Injunction underlies an exhaustive and searching investigation of the Sacklers led by the UCC and State Attorneys General.**

The Ad Hoc Committee on Accountability claims that "[t]he [P]reliminary [I]njunction in these cases has prevented [estate constituencies] from getting answers that the justice system would otherwise provide" (Ad Hoc Obj. at 2) and that "[a]n official committee of victim's representatives or an independent examiner" is required "to hold the Sacklers accountable" (Ad Hoc. Obj. at 3). These assertions are utterly false. These chapter 11 cases and the Preliminary Injunction have permitted creditor constituencies including the UCC and the State Attorneys General to obtain far more information from members of the Sackler Families than was obtained in the years of litigation that preceded the Debtors' bankruptcy. (Kaminetzky Decl. ¶¶ 12–16.)

Simply put, these chapter 11 cases have facilitated information sharing in a way that civil litigation in disparate fora throughout the country could never have done. Even before the

---

[3] The Ad Hoc Committee on Accountability's objection, for instance, makes a number of irrelevant and incorrect claims about venue (Ad Hoc Obj. 13–14) and, in its conclusion, goes so far as to ask the Court for various forms of "relief" despite not having made any proper motion.

6

Preliminary Injunction was entered, the Debtors and the UCC obtained the Sackler Families' agreement to provide them with significant amounts of information about the scope and location of their assets and the allegations against them, in connection with the UCC's determination to support the Debtors' motion for a preliminary injunction. (*See* Am. and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties, *In re Purdue Pharma L.P.*, Case No. 19-23649, ¶ 17 (S.D.N.Y. Bankr. Nov. 20, 2019) [ECF No. 518] ("**UCC Stipulation**").) In the months after the Preliminary Injunction was entered, there have been a number of stipulations, agreements, and discovery requests designed to facilitate additional information sharing, which have to date resulted in the production of over 400,000 documents totaling over 3 million pages. (Kaminetzky Decl. ¶¶ 12–15.) Indeed, the production of at least some of this information potentially could not be obtained without first securing a judgment on the merits.

The massive discovery efforts that have been long underway demonstrate that an additional official committee or an independent examiner would only duplicate efforts to the detriment of all parties and waste estate resources. The Special Committee of the Debtors' Board of Directors, the UCC as a fiduciary on behalf of all unsecured creditors, and the States' Attorneys General (among others) have invested tens of millions of dollars and countless hours analyzing discovery from members of the Sackler Families, assessing potential estate claims, and evaluating information relevant to any third-party release that may be included in an ultimate plan of reorganization. The Debtors themselves have published on the public docket two, multi-hundred-page reports prepared at the direction of their Special Committee that detail cash and non-cash transfers to or for the benefit of the Sackler Families—reports that exemplify the Debtors' commitment to transparency. (Kaminetzky Decl. ¶ 10.) As this Court recently stated,

the notion that "this case's purpose is somehow to let the Sacklers get away with it and that without the appointment of an examiner there won't be an investigation, is just completely and utterly misguided." (July 23, 2020 Hr'g Tr. 56:13–22.)

Finally, the Ad Hoc Committee on Accountability's demand for public trials rests on the dubious premise that trials in civil actions against the Sacklers would result in "answers." As this Court has previously emphasized, a trial is "at best, a limited way to get to the truth. It doesn't result in the truth, it results in a ruling or a verdict." (Oct. 11, 2019 Hr'g Tr. at 114:25–115:4.) The District Court's concluding observations in affirming this Court's injunction of claims against Richard Sackler, a former President and Co-Chairman of the Debtors, are particularly on point: "[T]he Appellants should recognize that their arguments are overblown. Judge Drain's injunction does not destroy Appellants' interest in transparency. It does not immunize Dr. Sackler against personal liability and it does not protect him from having to disclose details about his personal wealth. Whether Dr. Sackler gets the protection that Appellants fear (and oppose) will be decided in the context of other motions in this bankruptcy. And there is no timetable for addressing them . . . ." *In re Purdue Pharmaceuticals, L.P.*, 2020 WL 4596869, at *19. The extraordinary amount of discovery and investigation of the Sacklers that these chapter 11 cases and the Preliminary Injunction have made possible—and the value that the Debtors hope to be able to put to work to address the opioid crisis—are far too important to sacrifice for the nebulous hope of what might someday emerge from a civil trial.

- **The Preliminary Injunction does not shield members of the Sackler Families from any criminal investigation or prosecution.**

The Ad Hoc Committee on Accountability asserts that the Preliminary Injunction shields members of the Sackler Families from criminal prosecution, including by the federal government. (*See* Ad Hoc Obj. at 12, 14.) This is also false. The Preliminary Injunction has

8

temporarily stayed **civil** litigation against the Related Parties, including members of the Sackler Families. It does not purport to enjoin criminal investigation or criminal prosecution, including by the federal government. Indeed, the Debtors' first motion for a Preliminary Injunction noted that the Debtors had been responding to subpoenas issued by various components of the United States Department of Justice and expressly stated that "the Debtors' motion in no way seeks to enjoin those investigations." (*See* Mem. of Law in Support of Mot. for Prelim. Inj., at 6 n.8, *In re Purdue Pharma L.P.*, Adv. Pro. 19-08289 (RDD) (S.D.N.Y. Bankr. Sept. 18, 2019) [ECF No. 3].)

- **The Preliminary Injunction was entered to protect the Debtors and preserve the value of their estates for all stakeholders—not to shield the Sacklers from suit.**

The Ad Hoc Committee on Accountability chooses to recycle many of the same assertions that the Debtors have repeatedly disproved, and that this Court and the District Court have soundly rejected. It asserts that the Sacklers are being protected by the Preliminary Injunction "[b]ecause they are billionaires." (Ad Hoc Obj. at 11.) It argues that pursuit of claims against the Sacklers poses no threat to the Debtors' resources or the attention of Debtors' management in light of the fact that the "Sacklers have . . . apparently removed themselves from day-to-day management" and "any claims that they may have for contribution and indemnification from the Debtors would at most be general unsecured claims that are miniscule." (Ad Hoc Obj. at 11.) And, the Ad Hoc Committee on Accountability contends that the potential loss of the Sackler Families' proposed multi-billion dollar contribution to the estates does not justify the injunction. (Ad Hoc Obj. at 11–12.) These tired arguments have also been advanced, in one form or another, by other parties in the past and have been roundly rejected by this Court, twice, and by the District Court, and there is no need to waste estate resources relitigating them yet again here. *See, e.g.*, *In re Purdue Pharmaceuticals, L.P.*, 2020 WL 4596869, at *17–19.

Bereft of any factual basis for its argument that the injunction is designed to protect the Sacklers simply due to their wealth, the Ad Hoc Committee on Accountability resorts to asserting that "there is strong and growing public concern that these cases are being run not for the benefit of creditors or the public, but instead for the Sacklers." (Ad Hoc. Obj. at 10.) This is a canard, pure and simple. The Debtors sought and this Court granted the Preliminary Injunction to maximize value in these chapter 11 cases, not to shield members of the Sackler Families. (Oct. 11, 2019 Hr'g Tr. 255:17–23; 257:14–16; 263:20–23.) That simple truth is underscored by the support for the Preliminary Injunction by key creditor constituencies who have no plausible interest in "protecting the Sacklers"—but a very significant interest in preserving value of the estates. (*See* Moving Br. at 5 (noting UCC "supports and joins in the request for relief sought" in the Motion).) If the public holds a misperception that these cases are about absolution for the past and protecting the Sacklers rather than maximizing the good that can be done in the future, that misapprehension is only fueled by counter-factual, entirely irresponsible and incendiary rhetoric like that contained in the Ad Hoc Committee on Accountability's objection.

- **The Preliminary Injunction preserves the value of the estates and fosters a consensual resolution without favoring any particular plan structure.**

The Ad Hoc Committee on Accountability grossly mischaracterizes the record of these cases by asserting, in its objection, that "it appears that the Court has placed a thumb on the scale in favor of the Sacklers. The Court has emphasized that parties should not disrupt the deal embodied in the Term Sheet. In March, the Court admonished the parties that objecting to a plan would be '[a]lmost repulsive.' In July, when journalists raised concerns about the Sacklers evading prosecution, the Court urged the public to unsubscribe." (Ad Hoc. Obj. at 14.)

All of these assertions are demonstrably false. Far from placing "a thumb on the scale in favor of the Sacklers," the Court has repeatedly emphasized that the Sacklers are not getting a

"free pass" in these chapter 11 cases. (Mar. 18 Hr'g Tr. 98:19–99:17.) The Court has also made clear its expectation that the Debtors, UCC, and others "will be doing their utmost to maximize the value of the Debtors' estates and distribute and agree on a reasonable allocation of how it's to be distributed." (Mar. 18 Hr'g Tr. 98:19–99:17.) The remainder of the statements quoted above are either false or taken out of context. In March 2020, for example, the Court recognized that where Related Parties were making a "substantial contribution," it would be highly disappointing if one entity were to "hold up something that is good for all" <u>solely for political motivations</u>— not that it would be "almost repulsive" for a party in interest simply to object to a plan of reorganization. (Mar. 18 Hr'g Tr. 98:19–99:17.) Likewise, in July, the Court reacted not to "concerns about the Sacklers evading prosecution" but to press coverage that implied that "there is no investigation going on." (July 23 Hr'g Tr. at 56:13–57:5.) In the Court's view, such suggestions were "completely and utterly misguided" because there in fact has been a substantial, ongoing diligence and investigative effort in these chapter 11 cases—efforts, it bears emphasis, that have cost the estates millions of dollars in court-approved expenses. (July 23 Hr'g Tr. at 56:13–57:5.) The Ad Hoc Committee on Accountability's claims are flatly false and irresponsible.

## CONCLUSION

For the above reasons, and those stated in the Moving Brief, the Debtors respectfully request that this Court extend the Preliminary Injunction pursuant to the amended form of order attached to the Reply Declaration of Benjamin S. Kaminetzky.

Dated: September 28, 2020
      New York, New York

By: /s/ Benjamin S. Kaminetzky
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors*
*and Debtors in Possession*