DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Eli J. Vonnegut
James M. Millerman
Marc J. Tobak
Dylan A. Consla
Kathryn S. Benedict

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.** [1] | **(Jointly Administered)** |

### DEBTORS' OMNIBUS REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF A KEY EMPLOYEE INCENTIVE PLAN AND A KEY EMPLOYEE RETENTION PLAN

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

THE AGREED MODIFICATIONS TO THE KERP....................................................................3

ARGUMENT ...............................................................................................................................4

I.    Making Payments to KERP Participants Is a Sound Exercise of Business Judgement.......4

     A.    New Programs Must Be Adopted Every Year Under the Company's Annual
          Compensation Cycle ...................................................................................................6

     B.    The Need for Targeted Retention Awards to Certain KERP Participants Is
          Amply Supported by the Record..................................................................................8

     C.    The Amount of Payments to KERP Participants Is Appropriate...........................10

II.   Purdue's Continued Operation Subject to Stringent Safeguards Is Appropriate and
     Necessary to Maximize the Value Available for Distribution...........................................12

CONCLUSION............................................................................................................................17

# TABLE OF AUTHORITIES

### CASES

*In re Borders Grp., Inc.*,
  453 B.R. 459 (Bankr. S.D.N.Y. 2011) ................................................................. 5

*In re Dana Corp.*,
  358 B.R. 567 (Bankr. S.D.N.Y. 2006) ................................................................. 5

*In re Global Aviation Holdings, Inc.*,
  478 B.R. 142 (Bankr. E.D.N.Y. 2012) ................................................................. 12

*In re Global Home Prods., LLC*,
  369 B.R. 778 (Bankr. D. Del. 2007) ................................................................. 5

*In re Velo Holdings Inc.*,
  472 B.R. 201 (Bankr. S.D.N.Y. 2012) ................................................................. 5

### STATUTES AND RULES

11 U.S.C. § 363(b) ................................................................................................. 5

11 U.S.C. § 503(c) ................................................................................................. 5

### OTHER AUTHORITIES

Hr'g. Tr., *In re Tops Holding II Corp.*,
  No. 18-22279 (Bankr. S.D.N.Y. Jul. 26, 2018) [ECF No. 495] ............................................. 12

Order (I) Authorizing Implementation of a Key Employee Incentive Plan, (II) Approving the
  Terms of the Key Employee Incentive Plan, and (III) Grating Related Relief,
  *In re Ryckman Creek Resources, LLC*,
  No. 16-10292 (Bankr. D. Del. June 29, 2017) [ECF No. 1097] ............................................. 6

Order Approving Debtors' Revised Key Employee Incentive Program,
  *In re Imerys Talc Am., Inc.*,
  No. 19-10289 (Bankr. D. Del. June 1, 2020) [ECF No. 1787] ............................................. 6

Order Approving the Debtors' 2010 Key Employee Incentive Plan,
*In re Chemtura Corp.*,
No. 09-11233 (Bankr. S.D.N.Y. May 18, 2010) [ECF No. 2707]........................................... 6

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") respectfully submit this omnibus reply (the "**Reply**") in support of the *Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* [ECF No. 1674] (the "**Motion**" or "**Mot.**")[2] as it pertains to the KERP and in response to the objections (the "**Objections**"), [3] and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The collective knowledge, experience and expertise of the Debtors' highly skilled, trained and educated workforce is vital to the Debtors' reorganization efforts and maximizing value for all stakeholders.  These critical employees must be retained and motivated to allow the Debtors to operate in their highly regulated industry under exceedingly demanding circumstances and to ensure that the Debtors are able to deliver substantial value to stakeholders.  In order to preserve stability in the business while also managing relationships with major creditor constituents, the Debtors designed the KERP to hew closely to the Debtors' longstanding, annually authorized compensation programs that cover the vast majority of Debtors' non-insider employees, and, more importantly, to closely replicate the compensation levels agreed to for 2019 that were previously approved by this Court.

2.      Since filing the Motion, the Debtors have continued to engage in extensive discussions with the Official Committee of Unsecured Creditors (the "**UCC**"), the Non-Consenting States Group (the "**NCSG**"), the Ad Hoc Committee of Governmental and Other

---

[2] Except where otherwise indicated, capitalized terms used but not defined in this Reply have the meanings ascribed to them in the Motion.

[3] Objections were filed by the following parties: The United States Trustee for Region 2 (the "**U.S. Trustee**") [ECF No. 1708] (the "**UST Objection**" or "**UST Obj.**") and the Ad Hoc Committee on Accountability [ECF No. 1710] (the "**AHC Objection**" or "**AHC Obj.**").

Contingent Litigation Claimants (the "**Ad Hoc Committee**") and the Multi-State Governmental Entities Group (the "**MSGE**") to build support for the relief requested in the Motion and limit the scope of any remaining objections.  As set forth in greater detail below, as a result of these efforts, the Debtors have agreed to defer approval of the proposed KEIP to the omnibus hearing on October 28, 2020 at 10:00 a.m. (prevailing Eastern Time) and to make certain modifications to the proposed KERP that address the concerns that the UCC, NCSG, Ad Hoc Committee and MSGE have raised with respect to the KERP.  As agreed with the UCC, NCSG, Ad Hoc Committee and MSGE, the Debtors will reduce the total amount of payments to be made by over $4,000,000, modify the timing and clawback provisions sought with respect to such payments and defer payments to eight KERP Participants as to whom discussions are ongoing until either an agreement is reached as to such payments with the UCC, NCSG, Ad Hoc Committee and MSGE or such payments are authorized by further order.  The UCC, NCSG, Ad Hoc Committee and MSGE support the KERP as modified.

3.      The U.S. Trustee and Ad Hoc Committee on Accountability, by contrast, did not engage with the Debtors prior to filing their objections.  To the extent that these Objections suggest that payments to be made under the KERP are above market, they are wrong and should be overruled.  As the U.S. Trustee acknowledges, the Motion "seeks similar relief to the relief previously granted by the Court" because the KERP is closely based on the Debtors' longstanding annual AIP and LTRP programs, payments which this Court approved approximately one year ago.  *See* UST Obj. at n.1; *Declaration of Jon Lowne in Support of the Motion* [ECF No. 1674-2] (the "**Sept. 9, 2020 Lowne Declaration**" or "**Sept. 9, 2020 Lowne Decl.**").  In approving those payments, this Court concluded that they were "a very fair result." Hr'g Tr., 112:22, Dec. 4, 2019. In addition, the main creditor parties that have an economic interest in distributions to be made

under the Debtors' plan of reorganization and in the success of the reorganized company support the economic terms of the KERP, which strongly supports its reasonableness.

4.    To the extent that the U.S. Trustee and the Ad Hoc Committee on Accountability suggest that no KERP should be approved at all, their Objections cannot be sustained. There is no successful outcome in these cases without a successful business, and it would be misguided in the extreme to attempt to preserve value for creditors by cutting employee compensation under programs that have existed for decades. Failure to implement a KERP and thereby preserve existing compensation levels would likely result in a mass exodus of the Debtors' remaining employees and do irreparable harm to the Debtors' operations, resulting in immense destruction of value and likely entirely derailing the progress made in these Chapter 11 Cases to date.

5.    There can be no preservation of value by the Debtors if the workforce is not retained. This Court has already considered whether allegations of misconduct against the Debtors should prevent the Debtors from, with appropriate protections agreed to last year and approved by this Court, compensating their workforce appropriately during these Chapter 11 Cases—it rightly answered with a resounding "no" and should do so again.

## THE AGREED MODIFICATIONS TO THE KERP

6.    The Debtors have agreed with the UCC, NCSG, Ad Hoc Committee and MSGE to the following modifications to the Debtors' proposed KERP:

- the KERP Award will be paid (x) 50% on or about November 1, 2020 rather than in October 2020 and (y) 50% on or about March 31, 2021 rather than in January 2021;[4]

- KERP Award payments will be subject to a clawback if the KERP Participant resigns or is terminated for any reason other than by the Debtors without cause prior to June 30, 2021 rather than March 15, 2021, except that such clawback will expire upon emergence should it occur earlier;

---

[4] All payment dates referenced herein are approximate. Payments will be made on the closest scheduled payroll date.

3

- the Targeted Retention Awards will be accelerated upon emergence, subject to a clawback through June 1, 2021;

- the LTRP payouts due in 2022 and 2023 will be accelerated upon emergence, subject to a clawback through the dates that such payments would otherwise have been made absent emergence; and

- the long-term incentive compensation grant payable in 2023 will be reduced by 40% from an aggregate amount payable of approximately $10,200,000 to $6,120,000 and will be accelerated upon emergence, subject to a clawback through the date that such payments would otherwise have been made absent emergence.

7.     The UCC, NCSG, Ad Hoc Committee and MSGE specifically sought to accelerate all outstanding payments upon emergence to ensure that no payment obligations will remain outstanding thereafter, while the clawback provisions maintain the retentive effect previously achieved through the staggered timing of payments.[5]

8.     These changes are in addition to the material reductions relative to the amounts that would have been paid under the Debtors' longstanding AIP and LTRP compensation programs and that were already incorporated into the relief that the Debtors sought in the Motion.

9.     In addition, with respect to eight KERP Participants as to whom discussions are ongoing, payments will be deferred until either an agreement is reached as to such payments with the UCC, NCSG, Ad Hoc Committee and MSGE or such payments are authorized by further order.

10.     A revised Proposed Order authorizing the KERP subject to these changes is attached hereto as **Exhibit A**.

## ARGUMENT

### I.     <u>Making Payments to KERP Participants Is a Sound Exercise of Business Judgement</u>

11.     The Debtors' Motion describes in great detail the facts and circumstances supporting the Debtors' adoption of the KERP.  Mot. ¶¶ 61-77.  While the objections from the

---

[5] Hourly employees are not required to be subject to any of the clawbacks set forth herein.

U.S. Trustee and the Ad Hoc Committee on Accountability seek the Court's wholesale rejection of the KERP, both Objections entirely fail to rebut the Debtors' detailed and robustly supported analysis—and last year's ruling by this Court after extensive hearings—and should be denied.

12.     Non-insider compensation outside the ordinary course of the Debtors' business is governed by section 503(c)(3) of the Bankruptcy Code.  Courts in this district and elsewhere have held that the "facts and circumstances" language of section 503(c)(3) reiterates the traditional business judgment rule that is otherwise applicable to a debtor's decision to use, sell or lease assets outside the ordinary course of business under section 363(b).  *See In re Velo Holdings Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012); *In re Global Home Prods., LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007).

13.     The Motion discusses in detail why each of the factors outlined in *In re Dana Corp.*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006) (the "***Dana II* Factors**") and used by courts when determining whether a compensation proposal satisfies the business judgment test (*see, e.g.*, *In re Borders Grp., Inc.*, 453 B.R. 459, 474-77 (Bankr. S.D.N.Y. 2011)) weighs in favor of approval of the payments under the KERP.  Mot. ¶¶ 61-77.  By contrast, the UST Objection does not address with any specificity the *Dana II* Factors, but only makes a small number of general claims about why payments under the KERP are not justified by the "facts and circumstances," each of which is without merit for the reasons set forth below.  UST Obj. at 15-16.  The objection of the Ad Hoc Committee on Accountability fails to even address the standard for approval of the payments at issue under section 503(c)(3) of the Bankruptcy Code.  Accordingly, both Objections should be denied in their entirety and the KERP should be approved as modified.

A.    **New Programs Must Be Adopted Every Year Under the Company's Annual Compensation Cycle**

14.    The UST Objection argues that payments under the KERP should not be authorized because the Debtors have not yet emerged from chapter 11.  Specifically, the UST Objection states that the "facts and circumstances do not justify the payment of additional bonuses to the Debtors' employee" because "no plan of reorganization has been filed" and "[c]reditors have not received a distribution."  UST Obj. at 16.

15.    The U.S. Trustee cites no case law supporting this proposition because none exists. There is simply no authority for the notion that a chapter 11 debtor should stop appropriately compensating its workforce after one year in bankruptcy or in the absence of a filed chapter 11 plan.  Courts have approved KEIPs and KERPs more than one year into chapter 11 cases on many occasions.  Order Approving the Debtors' 2010 Key Employee Incentive Plan, *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. May 18, 2010) [ECF No. 2707] (approving KEIP more than one year after the petition date); Order Approving Debtors' Revised Key Employee Incentive Program, *In re Imerys Talc Am., Inc.*, No. 19-10289 (Bankr. D. Del. June 1, 2020) [ECF No. 1787] (same); Order (I) Authorizing Implementation of a Key Employee Incentive Plan, (II) Approving the Terms of the Key Employee Incentive Plan, and (III) Grating Related Relief, *In re Ryckman Creek Resources, LLC*, No. 16-10292 (Bankr. D. Del. June 29, 2017) [ECF No. 1097] (same). This is only logical: the Debtors have a duty to preserve and maximize the value of the Debtors' estates throughout the chapter 11 process, and to drive highly skilled, trained and educated employees away as they continue to fulfill their regular, demanding roles and job functions with the added strain of the chapter 11 process and the COVID-19 pandemic, simply because their employer remains in bankruptcy, would be value-destructive in the extreme.

6

16.     The U.S. Trustee's argument that payments should not be made because the case has lasted over a year is incomprehensible as applied to the Debtors' <u>annual</u> compensation plans. The KERP is closely based on the Debtors' longstanding annual AIP and LTRP programs, which have both been in place for well over a decade.  Sept. 9, 2020 Lowne Decl. ¶ 4.  Indeed, the U.S. Trustee acknowledges that the Motion "seeks similar relief to the relief previously granted by the Court." UST Obj. at n.1.  While the U.S. Trustee characterizes the payments that the Debtors seek to make as "large bonuses," *id.* at 15, this Court recognized last year that the KERP is a normal part of the employees' compensation package: "Because it's essentially salary with some modifications or risks on either side, depending on how you perform and the company performs." Hr'g Tr., 113:17-18, Dec. 4, 2019.  The Debtors have made the simple business judgement that continuing to compensate their employees <u>similarly to last year</u>—rather than massively cutting their employees' compensation while the Company faces material attrition risks—is in the best interest of the Debtors and their stakeholders.

17.     The Debtors have been relentlessly focused on moving these cases forward expeditiously so that distributions can be made to creditors and the Debtors' assets can be put to work.  This Court has repeatedly recognized that the Debtors are taking appropriate steps to advance these Chapter 11 Cases.  As this Court recently observed in extending the exclusivity period for the Debtors to file a plan of reorganization, "there is a likelihood of a successful reorganization here. . . . [T]he parties are doing what they need to do as have been previously identified in October and that process does not happen overnight.  It requires significant legal and business resources as well as the good faith commitment of key constituents to use the information generated to negotiate in good faith."  Hr'g Tr., 92:14-21, Mar. 18, 2020.

18.    Notably, the Debtors and their key constituencies have been actively and intensely engaged in a complex mediation process to address allocation disputes among creditor groups, which must be addressed in order to structure a plan of reorganization.[6]  Just last week the mediators issued the *Mediators' Report* [ECF No. 1716] (the "**Mediators' Report**") describing the substantial progress made in the mediation.  The Mediators' Report states, among other things, that "the Non-Federal Public Claimants agreed among themselves that all value received by them through these Chapter 11 Cases would be exclusively dedicated to programs designed to abate the opioid crisis" and that "there are four written term sheets each of which, individually, is supported by the Debtors, the Non-Federal Public Claimants and the specific individual Private Claimant group (or counsel to certain members of such Private Claimant Group) that is counterparty to such term sheet, which addresses allocation of estate value to each Private Claimant group, respectively."  Mediators' Report ¶¶ 3, 5.  The Debtors are working tirelessly to build upon the significant progress reflected in the Mediators' Report.  These developments demonstrate material progress towards resolution of these Chapter 11 Cases.

19.    To destroy the very value—measured in the billions—that case constituents are attempting to allocate under a negotiated chapter 11 plan by slashing employee compensation would be perverse, and the suggestion that the Debtors should take this damaging step simply because a year has passed should be rejected.

**B.    The Need for Targeted Retention Awards to Certain KERP Participants Is Amply Supported by the Record**

20.    The U.S. Trustee's argument that this Court lacks sufficient information to determine whether the Targeted Retention Awards are a reasonable exercise of business judgement

---

[6] *See Order Adjourning Class Claim Motions* [ECF No. 1514]; *Order Extending Mediation Termination Date* [ECF No. 1642].

is similarly without merit, as it ignores both the fact that the Debtors are effectively seeking to continue an existing program already approved by this Court and the extensive evidence presented by the Debtors in the Motion.  The Sept. 9, 2020 Lowne Declaration clearly explains that the "Targeted Retention Awards are consistent with the amounts of awards under the prior targeted retention program" and that the KERP Participants to receive Targeted Retention Awards were selected through a detailed and careful review of employee roles and job functions in order to identify employees whose services are particularly critical to preserving and maximizing the value of the Debtors' estates.  Sept. 9, 2020 Lowne Decl. ¶ 40.  The Debtors seek to make up to $8.1 million in such payments this year, entirely consistent with the approximately $8.1 million in payments approved last year.  *Compare* Sept. 9, 2020 Lowne Decl. ¶ 36 *with Second Supplemental Declaration of Jon Lowne in Support of Wages Motion* [ECF No. 554] (the "**Dec. 2, 2019 Lowne Decl.**") ¶ 55 and Supplemental Final Wages Order.  In addition, the Debtors' pleadings make clear that the number of participants this year will be similar to the approximately 110 participants last year.  *See* Sept. 9, 2020 Lowne Decl. ¶ 36; Dec. 2, 2019 Lowne Decl. ¶ 55.  Moreover, the Motion is supported by unrebutted testimony that prior targeted retention awards have represented the <u>bare minimum</u> necessary to stem attrition among this critical employee population.  *See* Sept. 9, 2020 Lowne Decl. ¶ 40.  Any further attrition would have a devastating effect on the Debtors' estates— and the Debtors' stakeholders, as the ultimate recipients of that value, cannot afford to take that risk.  *See* Sept. 9, 2020 Lowne Decl.  ¶ 39.

21.    Ultimately, the success, and this Court's approval of, the prior retention payments favor continuing this tried and true program.  The U.S. Trustee offers no substantiated basis for why this Court should now reverse course.

### C.    The Amount of Payments to KERP Participants Is Appropriate

22.    In a grand total of three sentences, the U.S. Trustee attempts to articulate an argument that the KERP Award and Targeted Retention Award should not be authorized because they are high with respect to one benchmark provided by the Debtors, entirely failing to address the Debtors' extensive, seven-page analysis in the Motion demonstrating that making these payments represents a "sound business judgment" under the *Dana II* Factors. *Compare* UST Obj. at 15 *with* Mot. ¶¶ 64-77. The U.S. Trustee cherry-picks the single metric of cost to revenue ratio from the fulsome and candid set of metrics that the Debtors provided (UST Obj. at 15) and argues this means the programs are inappropriate, ignoring both all other data that the Debtors provided and the fact that cost to revenue ratios are just one means among many of comparing compensation programs to market practice.

23.    The Motion explains that, in addition to the cost-to-revenue ratios quoted by the U.S. Trustee, another important metric to consider is total compensation, on which the KERP Participants fall below the 75th percentile. Mot. ¶ 68. Indeed, this Court previously recognized this reality and approved similar programs last year at similar ranges under these metrics. *Compare Declaration of Josephine Gartrell in Support of the Motion* [ECF No. 1674-3] ¶ 49 *with Declaration of Josephine Gartrell in Support of Debtors' Key Employee Plans* [ECF No. 555] ¶ 42. Moreover, the overall compensation sought for the relevant employees has been further reduced since the U.S. Trustee filed the objection as a result of negotiations with the UCC, NCSG, Ad Hoc Committee and MSGE as described above, and the major creditor groups with an economic interest in the Debtors do not object to the KERP.

24.    The Motion also discusses the impact of the Debtors' previous high levels of attrition and the resulting workload shift to the remaining employees on the necessary compensation levels to ensure motivation and retention of the remaining workforce. Mot. ¶ 68.

The facts and circumstances that justified similar compensation levels last year are still present this year to an <u>even greater</u> degree given the level of attrition that the Debtors have suffered in the past year.  As noted in the Debtors' moving papers, attrition has been high since the Petition Date, with 85 resignations through August 31, 2020, representing an annualized attrition rate of 13.4%.  Sept. 9, 2020 Lowne Decl. ¶ 39.  Further reductions in the workforce due to attrition would significantly harm the Debtors' operations and jeopardize emergence.  *Id.* ¶ 39.  Many of the employees participating in the KERP are professionals such as scientific researchers and regulatory and compliance personnel, with highly differentiated technical expertise and knowledge that are difficult and uniquely costly to replace.  *Id.* ¶ 31.

25.    A large portion of the KERP Participants work in or support the operations of the Debtors' manufacturing facilities.  The COVID-19 pandemic has imposed further strains on all of the Debtors' employees—but particularly these employees—with many of them continuing to work in production plants during the pandemic given that such critical work cannot be done remotely.  *See* Sept. 9, 2020 Lowne Decl. ¶¶ 11, 41.  Reducing the compensation of these employees under these challenging circumstances by failing to make KERP payments would be counterproductive and value destructive.

26.    Simply put, the Debtors' talented and valuable workforce is currently performing demanding jobs in a highly regulated industry under demanding circumstances and doing so with admirable dedication and professionalism.  There is no fat left to cut in the Debtors' business and further attrition would be extremely damaging.  Based on these elements of the record alone, to which the U.S. Trustee has articulated no objections, the Debtors have more than carried their burden of showing that making the KERP payments represents a sound business judgment.  As this Court held in its bench ruling approving the key employee retention plan in *Tops Holding II*

*Corporation*, "the debtor should not have to be made to gamble that KERP employees would elect to remain even if the KERP were not approved. . . .  The exercise of good business judgment does not require that level of tension in a debtor's already stressful reorganization process."  Hr'g. Tr., 60:4-10, *In re Tops Holding II Corp.*, No. 18-22279 (Bankr. S.D.N.Y. Jul. 26, 2018) [ECF No. 495] (citing *In re Global Aviation Holdings, Inc.*, 478 B.R. 142, 151 (Bankr. E.D.N.Y. 2012)). Where, as here, the Debtors have experienced a high attrition rate and the total compensation of KERP Participants falls below the 75th percentile, among other facts in the record, the Court should hold that implementation of the KERP is a proper exercise of the Debtors' business judgment to retain key employees and prevent further attrition that would be detrimental to the value of the estate.

## II.    Purdue's Continued Operation Subject to Stringent Safeguards Is Appropriate and Necessary to Maximize the Value Available for Distribution

27.    The Ad Hoc Committee on Accountability's arguments against the KERP rest on the faulty premise that the Debtors' ongoing operations in chapter 11 are causing harm.  This Court, by contrast, has repeatedly made clear that it is appropriate for the Debtors to continue operating their business under the stringent safeguards that have been put in place to preserve the value of the estates. *See* Hr'g Tr., 12:9-16, Mar. 2, 2020 ("[W]hile the debtors have turned over in broad brush the estates resources and value to alleviating the opioid crisis, one of the functions that I think everyone would agree that the debtors perform is providing pain alleviation medicine, which [when] properly administered, has an important role.  For example, to veterans who have been injured and are being properly treated for chronic pain."); *see also, e.g.*, Hr'g Tr., 12:25-13:7, Mar. 2, 2020 (making clear that such business is to provide "properly administered pain alleviation medicine"); Hr'g Tr., 120:17-121:11, Oct. 10, 2019 (emphasizing that such products must be

"prescribed properly and with proper controls"); Hr'g Tr., 107:16-108:16, Oct. 10, 2019 (emphasizing that the sale of such product is lawful when sold "properly").

28. One such critical safeguard is the unprecedented voluntary injunction. At the commencement of these Chapter 11 Cases, the Debtors sought to voluntarily subject themselves to the coercive power of this Court to make absolutely clear that they are not in any manner using chapter 11 as an improper shield for the kind of past conduct challenged in various actions against them. This voluntary injunction (the "**Voluntary Injunction**"), originally issued on October 11, 2019 as a critical element of this Court's preliminary injunction of certain opioid-related proceedings against the Debtors and certain related parties, remains in place today. *See* Twelfth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P., et al. v. Commonw. of Mass., et al. (In re Purdue Pharma)*, No. 19-08289 (Bankr. S.D.N.Y Aug. 31, 2020) [ECF No. 194]. Pursuant to the terms of the Voluntary Injunction, Secretary Thomas J. Vilsack (the "**Monitor**") was retained by Debtors in February 2020 to report on compliance with the terms of the Voluntary Injunction every 90 days and has submitted two such reports. *Second Monitor Report* [ECF No. 1584]; *Initial Monitor Report* [ECF No. 1175]. This Court has previously recognized that the appointment of the Monitor as part of the Voluntary Injunction highlights "that the parties in interest in this case are working diligently to use the Debtors' resources in a proper way." Hr'g Tr., 24:20-23, Dec. 19, 2019.

29. Nevertheless, the Ad Hoc Committee on Accountability claims, without any evidentiary support, that no employee payments should be made at all because "[e]very week that Purdue stays in business, more citizens are hurt and killed." AHC Obj. at 1. This type of unsupported inflammatory allegation is particularly likely to result in the types of "report[ing of] these issues in a way that catches people's eye without really getting in depth into the nuances"

that this Court has previously noted.  Hr'g Tr., 112:3-22, Dec. 4, 2019.  More critically, the Ad Hoc Committee on Accountability ignores the fact that this type of argument was raised and rejected by this Court when the Debtors sought authority for payments under the replaced compensation programs last year.  Specifically, this Court stated in the context of severance payments that "not having any evidence [that] would warrant rethinking any of these employee programs, it would be a bad exercise of business judgment simply to withhold payments."  Hr'g Tr., 117:24-122:11, Oct. 10, 2019.  This logic applies equally to all of the Debtors' compensation programs, and indeed this Court went on to approve the remainder of the requested payments as modified by the economic agreements struck with key creditor constituencies.

30.     The Ad Hoc Committee on Accountability also appears to suggests that payments to "executives" should not be made because of allegations of wrongdoing against the Company.[7] AHC Obj. at 3.  This objection simply ignores the extensive record generated over the course of three separate hearings spanning several months.  When parties raised concerns about providing payments under the Debtors' 2019 incentive compensation programs to employees who could, potentially, at some later date be found to have engaged in alleged criminal misconduct, this Court approved specific language (modified from an order in *Insys*) to address these concerns and approved payments under the Debtors' compensation plans in two orders containing such language, the Supplemental Final Wages Order and Second Supplemental Wages Order.  Hr'g Tr., 120:20-25, 137:12-18, Dec. 4, 2019.  This language provides that, to the extent that any KERP Participant "is determined by a final order of this Court or any court of competent jurisdiction to have (a) knowingly participated in any criminal misconduct in connection with his or her

---

[7] It is not clear whether the "executives" that the Ad Hoc Committee on Accountability refers to include KERP Participants, but the Debtors have treated this as an objection to the KERP (in addition to an objection to the KEIP) out of an abundance of caution.

employment with the Debtors or (b) been aware, other than from public sources, of acts or omissions of others that such participant knew at the time were fraudulent or criminal with respect to the Company's commercial practices in connection with the sale of opioids and failed to report such fraudulent or criminal acts or omissions internally at the Company or to law enforcement authorities at any time during his or her employment with the Company, such participant shall not be eligible to receive any payments approved by this Order.  All parties' rights, if any, to seek disgorgement of payments following the entry of such final order are reserved."  *See* Revised Proposed Order attached hereto as **Exhibit A**.  These same protections will continue to apply with respect to the payments to KERP Participants sought by the Motion.

31.    This Court has previously recognized the efficacy of this language, which provides, as the Court explained, a "second look, if it turns out that someone was more to blame than we know today."  Hr'g Tr., 113:9-115:22, Dec. 4, 2019 (noting that "one needs to properly address any notion that people are being rewarded for potential misconduct" and concluding that "[i]t appears to me also that the committee properly negotiated a second look, if it turns out that someone was more to blame than we know today."); *see also* Hr'g Tr., 113:12-115:19, Jan. 24, 2019 (stating the such language remained an appropriate element of the order authorizing payments to the CEO).

32.    It is critical that the Debtors be able to continue to appropriately compensate their employees in order to preserve and maximize the value of their estates.  This is, as this Court has held, a proper use of estate resources.  The protections in place during these Chapter 11 Cases, including the Voluntary Injunction and supervision by the Monitor, along with the previously approved protective language regarding employee compensation, ensure that the Debtors' business

will continue to be run responsibly in service of the vital goal of all parties of swiftly confirming a chapter 11 plan and putting the Debtors' assets to work ameliorating the opioid crisis.

33.    The Ad Hoc Committee on Accountability's objection seeks to entirely prohibit the Debtors from providing a KERP to their employees.  Such an outcome would result in levels of attrition that would irreparably harm the Debtors' business and thereby dramatically reduce the value available to stakeholders.  This wholesale objection—which is in essence an objection to the Debtors continuing to operate at all in chapter 11—should be overruled.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, for the foregoing reasons and the reasons stated in the Motion, the Debtors

respectfully request that the Court overrule the Objections and promptly grant the relief requested

in the Motion with respect to the KERP in the modified form set forth in the Revised Proposed

Order.

Dated:    September 29, 2020
          New York, New York


                                        DAVIS POLK & WARDWELL LLP
                                        By:   /s/ Eli J. Vonnegut
                                        _____

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile: (212) 701-5800
                                        Marshall S. Huebner
                                        Eli J. Vonnegut
                                        James M. Millerman
                                        Marc J. Tobak
                                        Dylan A. Consla
                                        Kathryn S. Benedict

                                        *Counsel to the Debtors
                                        and Debtors in Possession*

**<u>Exhibit A</u>**

**Revised Proposed KERP Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## ORDER AUTHORIZING THE DEBTORS TO IMPLEMENT
## A KEY EMPLOYEE RETENTION PLAN

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors

and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an order (this

"**Order**") approving and authorizing the KEIP and the KERP, as more fully set forth in the

Motion; and upon the Lowne Declaration and the Willis Towers Watson Declaration; and the

Court having jurisdiction to consider the matters raised in this Motion pursuant to 28 U.S.C.

§ 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Motion and the relief requested therein being a core proceeding

under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice

Parties, and it appearing that no other or further notice need be provided; and the hearing on

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but otherwise not defined herein will have the meanings set forth in the Motion.

relief requested in the Motion with respect to the KEIP having been adjourned to October 28,

2020 at 10:00 a.m. (prevailing Eastern Time);  and the Court having reviewed the Motion and

held a hearing to consider the relief requested in the Motion with respect to the KERP (the

"**Hearing**"); and the Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and the Court having

determined that the relief requested in the Motion with respect to the KERP, as modified by the

compromise agreed to by the Debtors, the UCC, the NCSG, the AHC, and the MSGE, and as set

forth herein [and on the record at the hearing], is in the best interests of the Debtors, their

creditors, their estates, and all other parties in interest; and all objections to the Motion with

respect to the KERP having been withdrawn, resolved, or overruled; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor;

        **IT IS HEREBY ORDERED THAT:**

        1.      Pursuant to sections 105(a), 363, and 503(c)(3) of the Bankruptcy Code, the

Motion is granted as set forth herein.

        2.      For the avoidance of doubt, the hearing on the relief requested in the Motion with

respect to the KEIP is adjourned to October 28, 2020 at 10:00 a.m. (prevailing Eastern Time).

        3.      The KERP is approved in its entirety in the modified form set forth in the

*Debtors' Omnibus Reply in Support of Motion of Debtors for Entry of an Order Authorizing*

*Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* [ECF

No. [●]] (the "**Reply Brief**"), provided that, with respect to eight KERP Participants (the

"**Specified Participants**") identified by the Debtors, the UCC, the NCSG, the Ad Hoc

Committee and the MSGE, payments under the KERP to each such Specified Participant shall

only be made upon either (a) agreement to such payments by the UCC, the NCSG, the Ad Hoc Committee and the MSGE or (b) further order of the Court authorizing such payments (which order may not be sought prior to the October omnibus hearing).  The UCC, the NCSG, the Ad Hoc Committee and the MSGE will be deemed to have agreed to such payments unless they file an objection to the approval of the KERP with respect to any Specified Participant prior to October 21, 2020 at 4:00 p.m. (prevailing Eastern Time), which objection deadline may be extended with the consent of the Debtors without order of the Court, which consent may be granted via email. Any such objections shall be heard at the omnibus hearing on October 28, 2020 at 10:00 a.m. (prevailing Eastern Time) or a subsequent hearing noticed by the Debtors.

4.      The Debtors are authorized, but not directed, to take all actions necessary to implement the KERP on the terms and conditions set forth in the Motion, but solely as modified by the Reply Brief, including making any payments pursuant to the terms of the KERP (as modified by the Reply Brief).

5.      Once earned, the Debtors' obligations to pay amounts that become due and owing under the KERP shall constitute administrative expenses pursuant to section 503(b) of the Bankruptcy Code, thereby entitled to priority payment pursuant to section 507(a)(2) of the Bankruptcy Code.

6.      Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

7.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or

enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

8.      Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute any claim on any ground, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

9.      Nothing in this Order or its approval is intended to be (a) an agreement by any creditor with the Debtors' assessment of the current compensation market or (b) an agreement or endorsement by any creditor of the contours of any specific plan of reorganization for the Debtors.

10.     For the avoidance of doubt, to the extent that any KERP Participant is determined by a final order of this Court or any court of competent jurisdiction to have (a) knowingly participated in any criminal misconduct in connection with his or her employment with the Debtors or (b) been aware, other than from public sources, of acts or omissions of others that such participant knew at the time were fraudulent or criminal with respect to the Company's commercial practices in connection with the sale of opioids and failed to report such fraudulent or criminal acts or omissions internally at the Company or to law enforcement authorities at any time during his or her employment with the Company, such participant shall not be eligible to receive any payments approved by this Order. All parties' rights, if any, to seek disgorgement of payments following the entry of such final order are reserved.

11.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

12.     The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

13.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

14.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


White Plains, New York
Dated:  _____, 2020


_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE