Hearing Date and Time: October 28, 2020, at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: October 14, 2020, at 11:59 p.m. (prevailing Eastern Time)
Reply Date and Time: October 25, 2020, at 11:59 p.m. (prevailing Eastern Time)

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P.*, et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION
TO COMPEL PRODUCTION OF PURPORTEDLY PRIVILEGED DOCUMENTS, OR
FOR *IN CAMERA* REVIEW, BASED ON FAILURE OF THE SACKLERS
AND THE DEBTORS TO DEMONSTRATE DOCUMENTS
<u>IDENTIFIED ON LOGS ARE PRIVILEGED</u>**

        **PLEASE TAKE NOTICE** that on September 29, 2020, the Official Committee of

Unsecured Creditors of Purdue Pharma, L.P., *et al.* (the "**Official Committee**") filed the *Motion*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*to Compel Production of Purportedly Privileged Documents, or for in Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged* (the "**General Challenges Motion**") and the declaration of Mitchell Hurley in support thereof and exhibits annexed thereto.

**PLEASE TAKE FURTHER NOTICE** that a telephonic hearing on the General Challenges Motion (the "**Hearing**") will be held on **October 28, 2020 at 10:00 a.m.** (prevailing Eastern Time) before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), 300 Quarropas Street, Courtroom No. 118, White Plains, New York 10601, or at such other time as the Court may determine.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted telephonically.[2] Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Court's guidelines for telephonic appearances[3] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

**PLEASE TAKE FURTHER NOTICE** that in accordance with the *Agreed Order Regarding Discovery Deadlines and Briefing Scheduling in the Chapter 11 Cases* [ECF No. 1734]

---

[2] A copy of General Order M-543 can be obtained by visiting: http://www.nysb.uscourts.gov/news/courtoperationsunder- exigent-circumstances-created-covid-19.

[3] The Court's procedures for telephonic appearances are available at: http://www.nysb.uscourts.gov/telephonicappearances-white-plains.

(the "**Stipulation**"), any responses or objections that may be filed in response to the General Challenges Motion shall be received no later than **October 14, 2020 at 11:59 p.m.** (prevailing Eastern Time) and any reply in support of the General Challenges Motion shall be filed by **October 25, 2020 at 11:59 p.m.** (prevailing Eastern Time).  Such responses and objections shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Court and served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*, dated November 18, 2019 [ECF No. 498].

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default, *provided* that objecting parties shall attend the Hearing telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Court.

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and served with respect to the General Challenges Motion, the Official Committee may, on or after the Objection Deadline, submit to the Court an order substantially in the form of the proposed order annexed to the General Challenges Motion, which order may be entered without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that copies of the General Challenges Motion may be obtained free of charge by visiting the website of Prime Clerk LLC.[4] You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

[4]*See* https://restructuring.primeclerk.com/purduepharma.

New York, New York

Dated:  September 29, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ *Mitchell P. Hurley*

Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma, L.P., et al.*

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO COMPEL
PRODUCTION OF PURPORTEDLY PRIVILEGED DOCUMENTS, OR FOR IN
CAMERA REVIEW, BASED ON FAILURE OF THE SACKLERS AND THE DEBTORS
TO DEMONSTRATE DOCUMENTS IDENTIFIED ON LOGS ARE PRIVILEGED**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND ................................................................................................................4

I.        Production of the Privilege Logs .........................................................................4

ARGUMENT ...................................................................................................................7

I.        Choice of Law, Standard, and Burden of Proof ...................................................7

II.       The Sacklers and the Debtors Have Waived Any Privilege That Might Otherwise
          Have Attached to Documents Disclosed to the Department of Justice................9

III.      The Baker and ████ Documents Should be Reviewed *In Camera* ...................14

IV.       The Withholding Parties' █████████████ are Insufficient...........................19

V.        The Sacklers and the Debtors Wrongfully Withheld Tens of Thousands of
          Documents and Communications Involving, or Shared with, Service Providers
          and Other Third Parties Who Break Privilege ....................................................23

          A.       Communications Among Non-Lawyers Reflecting "Intent to Seek Legal
                   Advice" Are Not Privileged......................................................................23

          B.       The Sacklers and the Debtors Cannot Claim Privilege Over Documents
                   and Communications with Public Relations Consultants ......................24

          C.       The Withholding Parties Have Not Carried Their Burden of Proving
                   Communications With Accountants and Investment Advisors Are
                   Privileged        30

          D.       Documents and Communications With Gardeners, Architects, Art
                   Consultants, and a Panoply of Other Non-Lawyer Service Providers and
                   Other Third Parties Must Also be Produced ........................................32

COMPLIANCE WITH RULES ...........................................................................................33

NOTICE .......................................................................................................................34

NO PRIOR REQUEST ....................................................................................................34

RESERVATION OF RIGHTS ............................................................................................34

CONCLUSION...............................................................................................................34

## <u>TABLE OF AUTHORITIES</u>

*866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*,
   No. 16-CV-03678(SN), 2016 WL 6901321 (S.D.N.Y. Nov. 23, 2016) ..................................34

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   No. 14-CV-7126 (JMF), 2017 WL 280816 (S.D.N.Y. Jan. 20, 2017) ....................................11

*Am. Ins. Co. v. Elgot Sales Corp.*,
   No. 97 CIV. 1327(RLC), 1998 WL 647206 (S.D.N.Y. Sept. 21, 1998) ...............................34

*In re Asia Global Cross, Ltd.*,
   322 B.R. 247 (Bankr. S.D.N.Y. 2005) ...................................................................................8

*Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475
   (S.D.N.Y. 2007) ..............................................................................................................9, 33

*Bennett v. La Pere*,
   112 F.R.D. 136 (D.R.I. 1986) .............................................................................................15

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*,
   171 F. Supp. 3d 136 (S.D.N.Y. 2016) .......................................................................... *passim*

*Calvin Klein Trademark Tr. v. Wachner*,
   198 F.R.D. 53 (S.D.N.Y. 2000) ...............................................................................25, 26, 30

*Cendant Corp. v. Shelton*,
   No. 3:06-CV-00854 (AWT), 2007 WL 2460701 (D. Conn. Aug. 24, 2007) ........................21

*In re Chevron Corp.*,
   749 F. Supp. 2d 141 (S.D.N.Y. 2010) .................................................................................34

*Chevron Corp. v. Donzinger*,
   296 F.R.D. 168 (S.D.N.Y. 2013) ........................................................................................22

*Chevron Corp. v. Salazar*,
   No. 11 Civ. 3718 (LAK)(JCF), 2011 WL 3880896 (S.D.N.Y. Sept. 1, 2011) ......................30

*In re China Med. Techs., Inc.*,
   539 B.R. 643 (Bankr. S.D.N.Y. 2015) ..................................................................................7

*In re Cty. of Erie*,
   473 F.3d 413 (2d Cir. 2007) ...............................................................................................19

*Duttle v. Bandler & Kass*,
   127 F.R.D. 46 (S.D.N.Y. 1989) ..........................................................................................24

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*,
   232 F.R.D. 103 (S.D.N.Y. 2005) ........................................................................................32

*Gasperini v. Ctr. for Humanities, Inc.*,
　　518 U.S. 415 (1996)...........................................................................................27

*In re Grand Jury Proceedings*,
　　No. M-11-189, 2001 WL 1167497 (S.D.N.Y. Oct. 3, 2001)...............................24, 25

*In re Grand Jury Subpoenas Dated March 24, 2003*,
　　265 F. Supp. 2d 321 (S.D.N.Y. 2003)...............................................................26, 27

*Gruss v. Zwirn*,
　　No. 09 CIV. 6441 (PGG)(MHD), 2013 WL 3481350 (S.D.N.Y. July 10, 2013).............11, 12

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,
　　No. 02 Civ. 7955 DLC, 2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003) .............25, 26, 27, 30

*In re Horowitz*,
　　482 F.2d 72 (2d Cir. 1973)..................................................................................8, 9

*In re Initial Pub. Offering Sec. Litig.*,
　　249 F.R.D. 457 (S.D.N.Y. 2008) .............................................................................12

*Intex Recreation Corp. v. Team Worldwide Corp.*,
　　471 F. Supp. 2d 11 (D.D.C. 2007) ...........................................................................21

*Middlesex Retirement Sys. v. Quest Software, Inc.*,
　　No. CV 06-6863-DOC (RNBx), 2009 WL 10673943, *at 4 & n.6 (C.D. Cal.
　　July 8, 2009)..................................................................................................23, 25

*In re Modell*,
　　171 B.R. 510 (Bankr. S.D.N.Y. 1994) ........................................................................8

*Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*,
　　122 F.R.D. 447 (S.D.N.Y. 1988) ..............................................................................15

*Music Sales Corp. v. Morris*,
　　No. 98 Civ. 9002 (SAS) (FM), 1999 WL 974025 (S.D.N.Y. Oct. 26, 1999) .........................34

*N. River Ins. Co. v. Columbia Cas. Co.*,
　　No. 90 Civ. 2518 (MJL), 1995 WL 5792 (S.D.N.Y. Jan. 5, 1995).......................................34

*Nat'l Day Laborer Org. Network v. USCIS*,
　　No. 16 CIV. 387 (PAE), 2020 WL 5518114 (S.D.N.Y. Sept. 14, 2020)...............................19

*In re North Plaza, LLC*,
　　395 B.R. 113 (S.D. Cal. July 25, 2008) .....................................................................34

*Obeid v. Mack*,
　　No. 14 Civ. 6498(LTS)(HBP), 2016 WL 7176653 (S.D.N.Y. Dec. 9, 2016) .......................34

*Oliver v. Comm. for Re-Election of the President*,
    66 F.R.D. 553 (D.D.C. 1975) ................................................................. 15

*In re OM Sec. Litig.*,
    226 F.R.D. 579 (N.D. Ohio 2005) ......................................................... 24

*Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165 (2d Cir. 2003) .................................. 12

*Ravenell v. Avis Budget Grp., Inc.*,
    No. 08-CV-2113 (SLT), 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012) ................... 27

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) ................................................... 10

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    352 F. Supp. 3d 207 (E.D.N.Y. 2019) ................................................... 27

*S.E.C. v. Roberts*,
    254 F.R.D. 371 (N.D. Cal. 2008) ......................................................... 24

*Schaeffler v. United States*,
    806 F.3d 34 (2d Cir. 2015) .................................................................. 9

*In re Schick*,
    No. 96 B 42902, 1997 WL 465217 (Bankr. S.D.N.Y. Aug. 12, 1997) .............. 9, 10

*Scott v. Chipotle Mexican Grill, Inc.*,
    94 F. Supp. 3d 585 (S.D.N.Y. 2015) ..................................................... 34

*In re Sealed Case*,
    856 F.2d 268 (D.C. Cir. 1988) ............................................................ 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
    332 F.R.D. 131 (S.D.N.Y. 2019) ......................................................... 29

*In re Steinhardt Partners, L.P.*,
    9 F.3d 230 (2d Cir. 1993) .............................................................. 11, 12

*Summit Ltd. v. Levy*,
    111 F.R.D. 40 (S.D.N.Y. 1986) ........................................................... 31

*Three Crown Ltd. P'ship v. Salomon Bros., Inc.*,
    No. 92 Civ. 3142 (RPP), 1993 WL 277182 (S.D.N.Y. July 21, 1993) ............... 12

*TIFD III-E, Inc. v. United States*,
    223 F.R.D. 47 (D. Conn. 2004) ........................................................... 21

*TVT Records v. Island Def Jam Music Grp.*,
    214 F.R.D. 143 (S.D.N.Y. 2003) ....................................................... 8, 17

*United States v. Ackert*,
    169 F.3d 136 (2d Cir. 1999)........................................................................8, 31, 34

*United States v. Arthur Young & Co.*,
    465 U.S. 805 (1984) ...............................................................................................31

*United States v. Constr. Prods. Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996)...........................................................................8, 9, 19

*United States v. DeFonte*,
    441 F.3d 92 (2d Cir. 2006)............................................................................24, 25

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)..........................................................................31, 32

*United States v. Mejia*,
    655 F.3d 126 (2d Cir. 2011).................................................................................8, 9

*United States v. Schwimmer*,
    892 F.2d 237 (2d Cir. 1989)..........................................................................20, 21

*United States v. Weissman*,
    195 F.3d 96 (2d Cir. 1999)...................................................................................21

*Universal Standard Inc. v. Target Corp.*,
    331 F.R.D. 80 (S.D.N.Y. 2019) .................................................................7, 30, 32

*Urban Box Office Network, Inc. v. Interfase Managers, L.P.*,
    No. 01-CV-8854 (LTS)(THK), 2006 WL 1004472 (S.D.N.Y. Apr. 18, 2006)......................20

*In re Velo Holdings, Inc.*,
    473 B.R. 509 (Bankr. S.D.N.Y. 2012) ...............................................................22

*In re Weatherford Int'l Sec. Litig.*,
    No. 11 Civ. 1646, 2013 WL 12185082 (S.D.N.Y. Nov. 19, 2013) .........................................12

*Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*,
    223 F.R.D. 156 (S.D.N.Y. 2004) ................................................................18, 19

**Rules**

Fed. R. Bankr. P. 9014(c) .................................................................................1

Fed. R. Bankr. P. 9017.....................................................................................7

Fed. R. Evid. 408 ......................................................................................14, 15

Fed. R. Evid. 410 ......................................................................................14, 15

Fed. R. Evid. 501 ...................................................................................................7

Fed. R. Evid. 502 .................................................................................................13

Local Bankr. R. 7034-1(c) .....................................................................................8

Local Bankr. R. 9013-1(a) ...................................................................................35

**Other Authorities**

154 Cong. Rec. H7817 (daily ed. Sept. 8, 2008) ........................................................13

Pursuant to applicable rules, including Rule 9014(c) of the Federal Rules of Bankruptcy Procedure, and the Amended Stipulation and Agreed Order Regarding Discovery Deadlines and Briefing Scheduling in the Chapter 11 Cases [ECF No. 1734] (the "**Scheduling Stipulation**"), the Official Committee of Unsecured Creditors (the "**UCC**") of Purdue Pharma, L.P. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") files this Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs are Privileged (the "**Motion**") seeking an order, substantially in the form submitted herewith, requiring each of the Debtors and the CSPs[2] (collectively, the "**Withholding Parties**") to (i) produce documents that have been or may be withheld on purported privilege grounds within categories identified below (the "**Withheld Documents**") or (ii) provide the Withheld Documents to the Court, or to a special master appointed by the Court (a "**Special Master**"), for review *in camera* and production to the UCC to the extent deemed appropriate.  The Ad Hoc Group of Non-Consenting States ("**NCSG**") supports the relief requested in this Motion.

## PRELIMINARY STATEMENT

1.     The Sacklers and the Debtors have collectively withheld nearly 400,000[3] documents and communications responsive to the UCC's document requests on purported privilege grounds.  The vast majority of these documents were withheld in their entirety, and still

---

[2] As defined in the Scheduling Stipulation, the CSPs include the Raymond Side (or "Side B") Initial Covered Sackler Persons and Additional Custodians and the Mortimer Side (or "Side A") Covered Parties.  The CSPs are sometimes referred to herein simply as the "**Sacklers**" or, as applicable, the "**Side A Sacklers**" and the "**Side B Sacklers**."  Terms defined in the Scheduling Stipulation shall have the meanings ascribed to them therein to the extent used but not defined in the Motion.

[3] Approximately 135,000 entries are on privilege logs the Debtors' prepared for pre-petition litigation.  The UCC is not challenging those entries at this time, but specifically reserves its right to do so as discovery continues, including on grounds identified in this Motion and in the UCC's Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and At Issue Exceptions to Claims of Privilege (the "**Exceptions Motion**").

more logs are due from the Sacklers, the Debtors, and their affiliates after the date of this Motion. As set forth below, a large number of the documents withheld to date are not entitled to protection.[4]

2.    **First**, the Sacklers and the Debtors should be required to produce the documents, presentations, and communications they previously shared with the Department of Justice ("**DOJ**").  These materials are critical to the UCC's investigation of estate claims; the Sacklers and the Debtors waived any applicable privilege by producing them to their adversary; and the DOJ has not asserted any law enforcement or investigative privilege or otherwise opposed their production.

3.    **Second**, the Sacklers and the Debtors have withheld thousands of communications because Stuart Baker and/or ███████████, two individuals who act in both legal and business capacities for the Sacklers and the Debtors, appear on the communications.  But it is not apparent from the face of the logs that the predominant purpose of these communications involved Messrs. Baker and ██████ acting in their legal, rather than business, capacity.  This issue is of paramount importance in this case given, among other things, Mr. Baker's significant business roles, including serving as what was characterized as ████████████████████, and in more than ████ ████████████████████████████████████████████████████████████████████████████ ██████.  The Withholding Parties should be required to make these documents available for *in camera* review by the Court or a Special Master.

4.    **Third**, the Sacklers and the Debtors are withholding under a categorical ████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████.  For their part, the Sacklers have refused even to identify all of the entries on their logs that they claim are subject

---

[4] The Debtors, the Sacklers, and their affiliates will no doubt identify more documents withheld from production in privilege logs scheduled to be produced after this Motion is filed.  The UCC reserves its rights to challenge these logs.

to ███████████. And the doctrine is not applicable to certain documents that have been

identified by the Withholding Parties. For instance, the logs identify communications among ██



████. The ███████████ doctrine does not protect communications among parties with

adversarial interests of this kind.

5.      **Fourth**, a large number of entries on the Sacklers' and the Debtors' logs indicate

that no lawyers authored, sent, received, or were copied on the withheld communications. Many

of these entries indicate merely that they reflect ███████████████████ which is not a

valid basis upon which to withhold documents.

6.      **Fifth**, over ███████████ on the logs produced so far copy or otherwise include

third parties, including public relations firms, accountants, government adversaries, friends,

gardeners, and art advisors. Ordinarily, the inclusion of a non-lawyer third party on a

communication precludes an assertion of privilege. The UCC does not argue, however, ████

████████████████████████████, that communications

involving third parties can *never* be immune from disclosure, only that the Withholding Parties

have not carried their burden of proving that the communications *that they actually withheld* are

so immune. The UCC therefore seeks an order requiring the Withholding Parties to (i) produce

the Withheld Documents[5] or (ii) provide the Withheld Documents to the Court, or to a Special

Master appointed by the Court, for review *in camera* and production to the UCC to the extent

deemed appropriate. The NCSG supports the relief requested in this Motion.

---

[5] The challenged entries associated with these categories, as they appear on the privilege logs, are included on Exhibits A-C to the transmittal Declaration of Mitchell Hurley (hereinafter, "**Hurley Decl.**" or "**Hurley Declaration**").

7.     The UCC is very aware that the relief it is seeking could result in very arduous work by the Court or a Special Master.  The UCC does not therefore make this request lightly.  However, the UCC, along with the NCSG, needs to investigate the Settlement Framework, including the estate causes of action.  Without receiving the inappropriately Withheld Documents, such investigation will be far from complete.  And recall—it is the Sacklers who seek releases.

## BACKGROUND

### I.     Production of the Privilege Logs

8.     As discussed in the accompanying Exceptions Motion, the scope and timing of the productions underway by the Sacklers and the Debtors were expressly negotiated by those parties, and subject to stipulations that they signed and that have been "so ordered" by the Court.  *See* Amended Stipulation and Agreed Order [ECF No. 1734] ¶¶ A-M.  Based on terms for which the UCC carefully bargained, the Sacklers and the Debtors have begun producing privilege logs on a rolling basis.  *See* Side A Stipulation [ECF No. 1347] ¶ 7; Side B Stipulation [ECF No. 1348] ¶¶ 11-13; Cohen Stipulation [ECF No. 1345] ¶¶ 9-11; Debtors' Stipulation [ECF No. 1553] ¶¶ 6-10.

9.     To date, the Sacklers have produced the following privilege logs, collectively containing ███████ entries:

| Side A Sacklers – Side A Logs | |
| --- | --- |
| *Date* | *Number of Entries* |
| July 21, 2020<br>(amended and superseded on July 31, 2020 and August 28, 2020) | ███ |
| *Total* | ███ [6] |
| Side B Sacklers – Side B Logs | |
| *Date* | *Number of Entries* |
| July 22, 2020<br>(amended and superseded on July 26, 2020, August 5, 2020, September 8, 2020, and September 26, 2020) | ███ |
| September 4, 2020<br>(amended September 26, 2020) | ███ |
| September 21, 2020<br>(amended September 26, 2020) | ██ |
| October 22, 2020 | ███ |
| *Total* | ███ [7] |

10.    For their part, the Debtors have withheld from *post-petition* productions over ███ documents that are by definition responsive to informal requests[8] made by the UCC and other creditors, and/or search terms on which the parties agreed, as well as over ███ documents from *pre-petition* productions:

---

[6] ████████████████████████████████████ See Hurley Decl., Ex. 31 ████████████.
████████████████████████████████████████.

[7] At approximately 10:30 p.m. on September 28, 2020, the night before the parties stipulated that the UCC would file this Motion, ████████████████████████████████████. Additionally, ████████████████████████████████████ Given the last-minute nature of this information, the UCC has not yet evaluated ████████████████████████, but will consider and withdraw challenges as appropriate in due course and in advance of the reply briefing and hearing dates set for this Motion.

[8] Pursuant to the Stipulation and Agreed Order Among the Official Committee, the Non-Consenting States Group and the Debtors Regarding Discovery in the Chapter 11 Cases [ECF No. 1623], the parties agreed that "for all purposes, including for purposes of [a] … Discovery Dispute Motion (or other discovery motion pursuant to this Stipulation) the Informal Requests shall be deemed to have been properly and timely served as formal discovery, subject to a full reservation of all objections by the Debtors, except any objection or argument that a request for disclosure or motion to compel should be denied because the Informal Requests were not formally served on the Debtors."

| The Debtors' Logs | |
|---|---|
| *Date* | *Number of Entries* |
| August 7, 2020 | ███ |
| August 15, 2020 (amended August 28, 2020) | ███ |
| September 15, 2020 | ███ |
| September 30, 2020 | ███ |
| *Total* | ███ |
| **The Debtors' DOJ Logs[9]** | |
| *Date* | *Number of Entries* |
| September 15, 2020 | ███ |
| *Total* | ███ |
| **The Debtors' Pre-Petition Logs[10]** | |
| *Date* | *Number of Entries* |
| Pre-petition | ███ |
| *Total* | ███ |

11.    The UCC does not currently seek relief with respect to the Pre-Petition Logs, but reserves its right to do so in the future, as it does with respect to additional privilege logs that are scheduled to be produced by the Withholding Parties and their affiliates in the coming weeks.[11]



[9] The Debtors produced two privilege logs dated September 15, 2020 ████████████████████████ ████████████████

[10] The Pre-Petition Logs ████████████████████████████████████████████████████████████.

[11] The UCC understands that privilege logs will be produced by the Independent Associated Companies (the "**IACs**"), defined in the UCC's Rule 2004 motion "by reference to the Amended Case Stipulation as all ex-U.S. pharmaceutical entities, related businesses, joint ventures, or other holdings directly or indirectly owned or controlled by any Shareholder Party and that are included in the financial information provided in the investment banker presentation made available to certain parties prior to the petition date," [ECF No. 1340] ¶ 2; Other II Way Entities, defined in the UCC's Rule 2004 motion as "all entities jointly owned or controlled, directly or indirectly, by the two sides of the Sackler family that are not IACs," [ECF No. 1340] ¶ 2; Norton Rose Fulbright LLP and its merger partner Chadbourne & Parke LLP (together, "**Norton Rose**"); Norton Rose partner Stuart Baker; Beth Cohen; and Moab Capital.

12.     In this Motion, the Side A Logs and Side B Logs are sometimes collectively referred to as the "**Sackler Logs**."  The Sackler Logs and the Debtors Logs (constituting all privilege logs thus far provided from all parties) are collectively referred to herein as the "**Privilege Logs**."[12]

## ARGUMENT

## I.     Choice of Law, Standard, and Burden of Proof

13.     Privilege determinations in bankruptcy cases are guided by the Federal Rules of Evidence.  *See* Fed. R. Bankr. P. 9017.  Under Federal Rule of Evidence 501, "[t]he common law—as interpreted by United States courts in light of reason and experience—governs a claim of privilege."  Fed. R. Evid. 501.  In connection with a 2004 examination in bankruptcy, federal law generally governs even where discovery is being taken concerning claims as to which state law supplies the rule of decision.  *See, e.g.*, *In re China Med. Techs., Inc.*, 539 B.R. 643, 648 (Bankr. S.D.N.Y. 2015).  ███████████████████████████████████████.[13]  *Id.* ("[N]either party challenges the Bankruptcy Court's proper determination that the 'common law' for the purposes of a Rule 2004 proceeding, is federal, not state common law."); *see also In re Asia Global Cross, Ltd.*, 322 B.R. 247, 254 (Bankr. S.D.N.Y. 2005) (similar).

14.     The standard and burden associated with assessing privilege claims are well-settled. To establish immunity from disclosure, the withholding party must demonstrate that (1) legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communication relates to that purpose, and (4) the communication is made in confidence between

---

[12] The UCC has met and conferred with counsel for the Withholding Parties in a good faith effort to resolve by agreement the issues raised in this Motion without the intervention of the Court.  *See* Hurley Decl. ¶ 3.  Among other things, counsel conferred and corresponded on numerous occasions concerning issues raised in this motion and the UCC's separate Privilege Exceptions Motion.  *Id.* & Exs. 1-38.  The parties resolved by agreement some issues that otherwise would have been included in this Motion, but were not able to resolve their other disputes.

[13] Local Rule 7034-1(c) required the Withholding Parties to specifically identify any "state's privilege rule" that they seek to invoke, ███████████████.  *See, e.g.*, Hurley Decl., Ex. 6 ██████████████; Ex. 9 ████████████████.

the client and the legal advisor.  *See, e.g.*, *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D.

143, 144 (S.D.N.Y. 2003).  Courts "strictly confine[]" the privilege "within the narrowest possible

limits" because it "stands in derogation of the public's right to every [person's] evidence."  *Id.*

(citations and internal quotations omitted); *see also United States v. Mejia*, 655 F.3d 126, 132 (2d

Cir. 2011) (similar); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) (similar).

15.     It is likewise axiomatic that the party asserting privilege bears the burden of

establishing all of its elements with respect to any information withheld from disclosure.  *See, e.g.*,

*United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).  Ordinarily, only

confidential communications "between the attorney and the client" can be privileged.  *United*

*States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) ("[T]he attorney-client privilege generally

applies only to communications between the attorney and the client.").  The inclusion of third

parties is contrary to the requirement that purportedly privileged communications be made and

kept in confidence.  *See Mejia*, 655 F.3d at 134 ("the presence of a third party counsels against

finding that the communication was intended to be, and actually was, kept confidential").  For the

same reason, disclosure of otherwise privileged communications to third parties generally waives

privilege.  *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (disclosure negates claim

that "communications were intended to be confidential."); *In re Horowitz*, 482 F.2d at 81-82.

16.     To be sure, exceptions to the rule exist.  However, the withholding party bears the

burden of proving that all of the elements supporting a claim of privilege still exist, including,

where a third party is involved, specific facts demonstrating that an exception to the ordinary rule

applies.  A purported privilege holder generally carries this burden "by way of affidavits or

equivalent statements discussing the applicability of the attorney-client privilege to ***each***

***document at issue***."  *In re Modell*, 171 B.R. 510, 514 (Bankr. S.D.N.Y. 1994) (emphasis added).

Such document-by-document assertions are typically included in privilege logs.  *See, e.g.*, *Constr. Prods. Research, Inc.*, 73 F.3d at 473 ("To facilitate its determination of privilege, a court may require an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps.") (internal quotation marks and citation omitted); *In re Schick*, No. 96 B 42902, 1997 WL 465217, at *4 (Bankr. S.D.N.Y. Aug. 12, 1997) (describing S.D.N.Y. and Bankr. S.D.N.Y. local rules regarding privilege logs).

17.     Where a purported privilege holder fails to adequately describe the nature of the withheld documents, the privilege may be waived.  *See Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) ("Failure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege."); *Constr. Prods. Research, Inc.*, 73 F.3d at 473-74 (affirming order compelling production of allegedly privileged documents where party failed to adequately describe privileged nature on privilege log); *In re Schick*, 1997 WL 465217, at *4 ("The failure to assert a timely privilege objection, and provide a privilege log, may result in a waiver of the privilege.") (citing cases).  *In camera* review may also be appropriate where logs lack sufficient detail to permit the Court to determine whether or not claims of privilege are valid.

## II.     The Sacklers and the Debtors Have Waived Any Privilege That Might Otherwise Have Attached to Documents Disclosed to the Department of Justice

18.     The Sacklers and the Debtors are under investigation by the DOJ in connection with their roles in the opioid crisis.  The UCC understands that each has (i) ███████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████  and (ii) produced documents to the DOJ ("**DOJ Document Productions**").  ████████████████████████████████████ ████████████████████████████████████████████████████



████████████████████████████████████████.[14]  None of these materials are immune

from discovery, and they should be ordered produced to the UCC without further delay.

19.     As a preliminary matter, ██████████████████████████████████████

██████████████████████████████████████████████████████  But the

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████.  Materials of this kind

easily clear the low bar for relevance under applicable rules.  *See, e.g.*, *Alaska Elec. Pension Fund*

*v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2017 WL 280816, at *1 (S.D.N.Y. Jan. 20, 2017)

(compelling production of "white papers, presentations, written memoranda, or briefs shown or

provided" to the CFTC or DOJ because despite differences in the regulators' investigations and

the litigation at issue, "relevance, for purposes of discovery, is an extremely broad concept"

(internal quotation marks and citations omitted); *see also In re Recoton Corp.*, 307 B.R. 751, 755

(Bankr. S.D.N.Y. 2004) ("The scope of Rule 2004 examination is very broad, broader even than

discovery under the Federal Rules of Civil Procedure.").

20.     Nor is there any significant burden associated with the productions the UCC seeks.

Indeed, █████████████████████████████████████████████████████████

██████████████████████████████████████████.  *See, e.g.*, Hurley Decl., Ex. 43 ███

███████████████████████████████████████████████████████████████

█████████████████████████.  ███████████████████████████████████████

---

[14] █████████████████████████████████████████████████████████
█████████████████████████████████████████████████████.



██████████████████████████████████████████.

21.    ███████████████████████████████████████

██████████████████████████████. It is axiomatic, however, that

disclosure of documents to a government adversary in the midst of an investigation waives any

immunity from disclosure that might otherwise apply. *See, e.g.*, *In re Steinhardt Partners, L.P.*, 9

F.3d 230, 236 (2d Cir. 1993) ("At the time of the submission of the memorandum to the

Enforcement Division, the SEC and Steinhardt stood in an adversarial position. Steinhardt's

voluntary submission of the memorandum to the Enforcement Division waived the protections of

the work product doctrine as to subsequent civil litigants seeking the memorandum from

Steinhardt.");[15] *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646(LAK)(JCF), 2013 WL

12185082, at *7 (S.D.N.Y. Nov. 19, 2013) (parties "waived work product protection for the

material that they provided to the SEC, as well as any underlying factual material explicitly

referenced in it") (citation omitted); *Gruss v. Zwirn*, No. 09 CIV. 6441 (PGG)(MHD), 2013 WL

3481350, at *8 (S.D.N.Y. July 10, 2013) ("[W]hen a party provides documents to a government

adversary []. . ., it ordinarily waives both attorney-client privilege and work product protection as

to those documents.").

22.    ███████████████████████████████████████

████████████████████████. █████████████████████████████

███████████████████████████████████████████.

██████████████, any privilege that *might* have existed █████████████████ certainly



[15] Indeed,
██████████████████████████████████████████
██████████. Hurley Decl., Ex. 42 █████████████████████████.

was waived when the Debtors produced them to the DOJ.  *See Ratliff v. Davis Polk & Wardwell*,

354 F.3d 165, 170 n.5 (2d Cir. 2003) (client authorizing law firm to send documents to SEC waived

attorney-client privilege); *Steinhardt*, 9 F.3d at 235; *Gruss*, 2013 WL 3481350, at *8. ███████

████████████████████████████████. ██████████████████████

█████████████████████████████████████████████████████

██████████████████████████████. *See, e.g.*, *id.* at *11; *In re Initial*

*Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 462-65 (S.D.N.Y. 2008).[16]

   23.    ████████████████████████████████████████

███████████████████[17] █████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████. *See, e.g.*, *Three Crown Ltd.*

*P'ship v. Salomon Bros., Inc.*, No. 92 Civ. 3142 (RPP), 1993 WL 277182, at *1 (S.D.N.Y. July 21,

1993) (quoting *In re Sealed Case*, 856 F.2d 268, 271-72 (D.C. Cir. 1988)). ████████████

█. █████████████████████████████████████████████

███████████████████████████████████████████████████

████████. *See, e.g.*, Hurley Decl., Ex. 8 ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████;

*cf. also* Hurley Decl., Ex. 39 ████████████████████████████████

---

[16] Rule 502 "does not provide a basis for a court to enable parties to agree to a selective waiver of the privilege, such as to a federal agency conducting an investigation, while preserving the privilege as against other parties seeking information."  154 Cong. Rec. H7817, H7818 (daily ed. Sept. 8, 2008) (Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence).

[17] *See, e.g.*, Hurley Decl., Ex. 1 ████████████████████████████; Ex. 3 ████████████████
██████; Ex. 9 ██████████████████████.

██████████████████████████████████████████████████████████████████████

███████████.

24.     In addition, the UCC asked DOJ lawyers during telephone calls over the summer to advise the UCC whether the DOJ would object to the Withholding Parties' production of DOJ materials.  The DOJ lawyers took no position during those calls, or since.  Another lawyer for the DOJ was present for the depositions of each of ███████████, ███████████, and ███████████, but raised no objection of any kind to the UCC's questioning concerning the DOJ's investigation. *See* Hurley Decl., Ex. 43 █████████████████████████████████████████████████

████████████████████████████████████████████████████; Hurley Decl., Ex. 44 █████████████████████████████████████████████████████████

███████████████████████████████████; Hurley Decl., Ex. 45 █████████████████

████████████████████████████████████████████████████████████████

███████████.  In sum, despite multiple opportunities, the DOJ never has sought to assert any "investigatory privilege" concerning its examination, and neither the Debtors nor the Sacklers have standing to raise those objections on their own.

25.     In pre-Motion correspondence, the Withholding Parties also argued, incorrectly, that ██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

As an initial matter, ████████████████████████████████████████████████

█████████████████████████████████████████████.  █████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████.

26.    In any case, Rules 408 and 410 are rules of admissibility, not discovery.  *See Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (observing that Rule 408 "only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery").

27.    Accordingly, courts have consistently held that settlement negotiations are not privileged and that parties may seek production of confidential settlement negotiations in related proceedings.  *See, e.g.*, *Oliver v. Comm. for Re-Election of the President*, 66 F.R.D. 553, 556 (D.D.C. 1975) ("While offers of settlement (and presumably also negotiations which led to such offers) are clearly not admissible at trial for a number of public policy reasons, such negotiations do not fall within the confines of the privileges recognized at common law."); *Bennett v. La Pere*, 112 F.R.D. 136, 138-39 (D.R.I. 1986) (rejecting contention that some "particularized showing" of need is necessary to discover settlement documents).  The DOJ materials should therefore be produced.

## III.    The Baker and ▮▮▮ Documents Should be Reviewed *In Camera*

28.    The Sacklers and the Debtors have withheld ▮▮▮ documents and communications on which Stuart Baker and/or ▮▮▮▮▮▮ are the only lawyers copied.[18]  While Baker and ▮▮ both are attorneys, both also had many non-legal, business roles at the Debtors and with the Sacklers, their trusts, and affiliates.  Both are also long-time Sackler associates:  Baker has worked with the Sacklers and their companies for several decades, while ▮▮▮ has worked with the Sacklers since at least 1998.[19]  In addition to ▮▮▮▮▮▮, Baker was a ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,[20] served as ▮▮▮▮▮▮▮▮▮ and a

---

[18] *See* Exhibit A (Excel Tab A), Exhibit B (Excel Tab A), and Exhibit C (Excel Tab A) to Hurley Declaration for corresponding entries from the Side A's, Side B's, and the Debtors' Logs, respectively.
[19] *See* Hurley Decl., Ex. 50 ▮▮▮▮▮▮▮▮▮▮▮▮.
[20] *See* Hurley Decl., Ex. 40 ▮▮▮▮▮▮▮▮▮▮.

variety of other positions for Purdue Pharma L.P., Purdue Pharma Inc., and a number of affiliates,[21]

and even described himself as ████████████████████.[22] Apparently on an annual basis,

Mr. Baker ████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ Mr. Baker ████████████████████████████████████.

    29.    For example, Baker identified all of the following non-legal roles in his ████

████████████████████████████ many of which are non-legal:[23]

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

---

[21] *See* Hurley Decl., Ex. 40 ████████████████████.

[22] *See* Hurley Decl., Ex. 52 ████████████████████████████████
██████████.

[23] *See* Hurley Decl., Ex. 49 ████████████████████████.

[24] As explained in the accompanying Exceptions Motion, Purdue itself was considered one of the Independent Associated Companies or IACs.



30.

[25]

. In response to the UCC's requests,

. *See* Hurley Decl., Ex. 40 . Based on the available record, it is at least possible that Mr. Baker was the single most important executive in the entire network of companies and trusts owned by or for the benefit of the Sacklers.[26]

31.     has also played a number of non-legal roles for the Debtors, the Sacklers, and related entities, including as a

.[27]     [28]

---

[25] *Id.*

[26]     , the UCC is requesting that an independent third party review the communications.

[27] *See* Hurley Decl., Ex. 50     ; Ex. 109     Ex. 51     *see also* public filings listing Jonathan White as director of Sackler-related companies, https://www.sec.gov/Archives/edgar/data/744218/000110465917009252/a17-3162_1424b3.htm; *see also* Hurley Decl., Ex. 47     .

[28] *See* Hurley Decl., Exs. 53, 54.

REDACTED

█████████████████████████████████████████████████████████████

███.[29]  In addition to serving as a ████████████ ██████ is also ███████████████

█████████████████████████████████████████████████████████████

███████████.[30]  Significantly, ████████ was involved in ███████████████████

█████████████████████████████████████████████████████████████

█████████████████████████.[31]  Indeed, while it is undisputed that ██████████

had a wide variety of business roles for the Sacklers and their affiliates over many years, no specific

evidence has been presented concerning whether, how frequently, or in what capacity ████ acted

for the Sacklers as a lawyer.

32.    The vague and conclusory log entries simply are not sufficient to carry the

Withholding Parties' burden of demonstrating the communications with Baker and ████ are

privileged.  Only legal advice, not business advice, can be shielded by the privilege.  *Women's*

*InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 160 (S.D.N.Y. 2004) (citation omitted).

When counsel are also high-ranking management executives within a company, determining

whether counsel may have been functioning in a legal or business capacity regarding a particular

communication may not be easily discerned.  *TVT Records*, 214 F.R.D. at 145 (noting that

counsel's communications in capacity as business executives were not privileged and that assertion

of a "blanket privilege for large portions of the communications" by counsel who were also

business executives was "overly broad").

33.    As the withholding parties, the Sacklers and the Debtors bear the burden of

establishing that the "predominant purpose" of a withheld communication was legal.  *See, e.g.*,

---

[29] *See* Hurley Decl., Ex. 55.
[30] *See* Hurley Decl., Ex. 51 ████████████████████████████████████.
[31] *See* Hurley Decl., Ex. 56 ████████████████████████████████████████.

*Constr. Prods. Research, Inc.*, 73 F.3d at 473 ("The party asserting the privilege must establish the essential elements of the privilege.") (citing cases); *Nat'l Day Laborer Org. Network v. USCIS*, No. 16 CIV. 387 (PAE), 2020 WL 5518114, at *8 (S.D.N.Y. Sept. 14, 2020) (holding that where a communication contains both legal and business advice, it will be privileged if its "predominant purpose" was to render or solicit legal advice) (citing *In re Cty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)).

34.     The information provided by the Withholding Parties on the Privilege Logs is insufficient to make that showing.   For example, ████████████████ Baker ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████[32] ████████████████████████████████████████████ Baker ████████████████████ ████████████████.   *See* Hurley Decl., Ex. B (Excel Tab A) at ████████, described as ████████████████████████████████████████████████████████████████████████ ████████████████ Ex. C (Excel Tab A) at ████████████, described as ████████████████ ████████████████████████.

35.     Entries of this kind at most indicate the document included both legal and business matters.   They do not demonstrate that the ***predominant purpose*** of the communication was legal. *See, e.g.*, *Women's InterArt Ctr., Inc.*, 223 F.R.D. at 161 (explaining that "[s]ince these notes appear to relate to business information and [d]efendants have provided no explanatory supplements, they have not sustained their burden" under the attorney-client privilege).   Considering the extensive non-legal roles occupied by Baker and ████████, these descriptions do not carry the Withholding Parties' burden of proving that the referenced documents are privileged.   *See Urban Box Office*

---

[32] Hurley Decl., Ex. A (Excel Tab A).

*Network, Inc. v. Interfase Managers, L.P.*, No. 01-CV-8854 (LTS)(THK), 2006 WL 1004472, at *6 (S.D.N.Y. Apr. 18, 2006) ("Where there are several possible interpretations of a document based upon the surrounding circumstances, the party asserting the privilege must produce evidence sufficient to satisfy a court that legal, not business, advice is being sought.") (citation omitted).

36.     To be sure, Messrs. Baker and ███ were lawyers, and the UCC acknowledges that they likely were party to some communications that are in fact privileged.  But the Withholding Parties have failed to prove that the documents withheld from production are privileged, and have refused to revise the Privilege Logs to provide more detail concerning those documents.  The UCC therefore respectfully requests that an *in camera* review of the Baker and ███ documents be conducted by the Court or a Special Master, so that non-privileged documents are produced.[33]

## IV.    The Withholding Parties' ██████████████████████ are Insufficient

37.     The Side A Sacklers, the Side B Sacklers, and the Debtors have all indicated that they are withholding documents in part based on ██████████████████████ When properly   supported,  ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████  *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (citation omitted). ████

████████████████████████████████████████

████████████████████████████. *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999); *TIFD III-E, Inc. v. United States*, 223 F.R.D. 47, 49 (D. Conn. 2004) ("The common interest rule extends the attorney client privilege to privileged communications revealed to a third

---

[33] Exhibit A (Excel Tab A), Exhibit B (Excel Tab A), and Exhibit C (Excel Tab A) to the Hurley Declaration contain the privilege entries upon which Baker or ███ are the only counsel listed.

party who shares a common legal goal with the party in possession of the original privilege.")
(citation omitted).

38.    "As in all claims of privilege arising out of the attorney-client relationship, a claim
resting on the common interest rule requires a showing that the communication in question was
given in confidence," and the burden of establishing common interest "in all its elements, always
rests upon the person asserting it." *Schwimmer*, 892 F.2d at 244.  Among other things, the party
resisting discovery must demonstrate that "there was an agreement, though not necessarily in
writing, embodying a cooperative and common enterprise towards an identical legal strategy."
*Cendant Corp. v. Shelton*, No. 3:06-CV-00854(AWT), 2007 WL 2460701, at *3 (D. Conn. Aug.
24, 2007) (internal quotation marks and citation omitted).  Even where a common interest is
identified, "the party seeking to rely on the doctrine must still demonstrate that the specific
communications at issue were designed to facilitate a common legal interest." *Intex Recreation
Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 16 (D.D.C. 2007).

39.    On their logs, ███████████████████████████████████████
██████████████. ███████████████████████████████████████████
███████████████████████████████████████. For example, ████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████. *See* Hurley Decl., Ex. 17 ███████████████████████. ████████████████
███████████████████████████████████████████. *Id.*, Ex. 21 ████████
███████████████████████. ████████████████████. ████████████████



████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████.[34]

40.    ████████████████████████████████████████████████

████████████████████████████████.  ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████.  ████████████████████

████████████████████████████████████████████████████████████

███████.  ████████████████████████████████████████████████

████████████████████████████████████████.  This approach is not

sufficient.  *See Chevron Corp. v. Donzinger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013) (common

interest must be "based on competent evidence") (internal quotation marks and citation omitted);

*In re Velo Holdings, Inc.*, 473 B.R. 509, 514 (Bankr. S.D.N.Y. 2012) ("each document or

communication must be separately evaluated" to determine whether common interest applies).

41.    The UCC also is troubled by ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████.  The Special

Committee was formed in May 2019 and is composed of Messrs. Miller, Buckfire, Dubel, and

---

[34] ████████████████████████████████████████████████████████████.  *See* Hurley Decl., Ex. 48.  However,
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Cola, who also are "at-large directors." According to the Debtors, the Special Committee is tasked with "overseeing various investigations, including an exhaustive review by outside experts of distributions made by the Debtors to the Sackler Families and their affiliates, as well as any dealings between the Debtors and any member of the Sackler Families or any of their affiliates." *See* Debtors' Informational Brief [ECF No. 17 at 16].

42.    Nevertheless, ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████. *See* Hurley Decl., Ex. A (Excel Tab B), Ex. B (Excel Tab I), Ex. C (Excel Tab B).[35]  The UCC questions whether these materials can be withheld on ████████████████. *See Middlesex Retirement Sys. v. Quest Software, Inc.*, No. CV 06-6863-DOC (RNBx), 2009 WL 10673943, *at 4 & n.6 (C.D. Cal. July 8, 2009) (holding that special committee "did not have the requisite 'common interest' with the persons it was investigating and with whom the privileged communications in question were shared"). ████████████████████████████████████████████████
████████████████████████████████████████.[36]  *See S.E.C. v. Roberts*, 254 F.R.D. 371, 374 n.4 (N.D. Cal. 2008) (plenary board lacked "common interest with the Special Committee since it was the Special Committee's mandate to ascertain whether members of the Board may have





[35] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████.

[36] *See e.g.* Hurley Decl., Ex. C (Excel Tab B) (control no. ████████████)
████████████████████████████████████████████████████████

engaged in wrongdoing"); *In re OM Sec. Litig.*, 226 F.R.D. 579, 592 (N.D. Ohio 2005) (plenary

board and audit committee).

V.    **The Sacklers and the Debtors Wrongfully Withheld Tens of Thousands of Documents and Communications Involving, or Shared with, Service Providers and Other Third Parties Who Break Privilege**

A.    **Communications Among Non-Lawyers Reflecting "Intent to Seek Legal Advice" Are Not Privileged**

43.    Side A has withheld ▓▓ documents that do not include a lawyer and are described

merely as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ regarding various topics, and sometimes

mentioning a lawyer or law firm.[37]    Documents like these that anticipate a future privileged

communication but do not themselves reflect one are not privileged. *See Duttle v. Bandler & Kass*,

127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("To hold otherwise would expand the attorney-client privilege

without limit, since countless communications within an organization could be considered

preparatory to seeking legal advice."); *see also United States v. DeFonte*, 441 F.3d 92, 95-96 (2d

Cir. 2006) (observing that notes made in preparation for communication with attorney are

privileged only if in fact "the notes were communicated by the client to the attorney").

44.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓ *In re Grand Jury Proceedings*, No. M-11-189, 2001 WL

1167497, at *28 (S.D.N.Y. Oct. 3, 2001) ("*In re Grand Jury 2001*"), ▓▓▓▓▓▓▓. The

*In re Grand Jury 2001* court reviewed multiple rounds of *ex parte*, *in camera* submissions from

the government and the target of the grand jury inquiry, and conducted an evidentiary hearing with

direct and cross examination of witnesses on the privilege issues. *See id.* at *1-2. Only after that

extensive presentation of evidence and *in camera* review did the court conclude that the subject

---

[37] Exhibit A (Excel Tab C) to the Hurley Declaration contains ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓

documents had been "created at counsel's request to supply counsel with information necessary to provide legal advice and need not be disclosed." *Id.*[38]  Needless to say, █████████████████ ████████. Indeed, ████████████████████████████████████████████ █████████████████████████████████████████████████. *See DeFonte*, 441 F.3d at 95-96.

### B.    The Sacklers and the Debtors Cannot Claim Privilege Over Documents and Communications with Public Relations Consultants

45.    The Privilege Logs collectively list ██████ entries with public relations firms, including many communications without counsel.  Courts in the Second Circuit consistently refuse to extend privilege protections to public relations firms, even when their services relate to pending litigation.  *See, e.g.*, *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02 Civ. 7955 DLC, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) ("A media campaign is not a litigation strategy."); *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("It may be that the modern client comes to court as prepared to massage the media as to persuade the judge; but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status.").  Disclosure of otherwise privileged materials to public relations firms thus typically waives privilege.  *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 171 F. Supp. 3d 136, 146-47 (S.D.N.Y. 2016); *Calvin Klein Trademark Tr.*, 198 F.R.D. at 54-55; *Haugh*, 2003 WL 21998674, at *3.

46.    Privilege can neither be created, nor preserved, by the mere fact that counsel hired the public relations firm.  *See, e.g.*, *id*. at *1, 3 (holding that no privilege attached to communications with public relations consultant hired by counsel purportedly to "provide . . . advice to assist [counsel] in providing legal services").  Nor does privilege attach just because a

---

[38] And, in any event, the *In re Grand Jury 2001* court undertook the very *in camera* review the UCC seeks here.

public relations firm's analysis is actually helpful to an attorney's provision of legal advice.  *See, e.g., Calvin Klein Trademark Tr.*, 198 F.R.D. at 54 (rejecting privilege claim, reasoning that "[t]he possibility that such activity may also have been helpful to [counsel] in formulating legal strategy is neither here nor there"); *Bloomingburg Jewish Educ. Ctr.*, 171 F. Supp. 3d at 146 ("Although West End's services may have been useful to counsel . . . such a showing alone is insufficient to find that the attorney-client privilege has not been waived by disclosure to a public relations consultant.").

47. ███████████████████████████████████████

████████████████████████████████████████████

██████████████████. *See* Hurley Decl., Ex. 6 ████████████████████; Ex. 10 ████████

█████████████████; Ex. 16 ████████████████████; Ex. 21 ███████████

███████████████. ████████████████████████ *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 323-24, 330 (S.D.N.Y. 2003) (hereinafter "*In re Grand Jury 2003*"), in which the court held that communications involving public relations professionals may be privileged if they constitute efforts to influence prosecutors' and regulators' decisions whether to indict in a high-profile grand jury investigation.

48. But, the Second Circuit has yet to recognize a non-waiver doctrine even close to the scope announced in *In re Grand Jury 2003*, and many district courts have declined to extend that decision beyond its particular context. *See, e.g., Haugh*, 2003 WL 21998674, at *3 (suggesting there is an open question whether *In re Grand Jury 2003* was correctly decided); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 212 (E.D.N.Y. 2019) ("[T]he case's precedential value is likely limited to its unique context"); *Ravenell v. Avis Budget Grp., Inc.*, No. 08-CV-2113 (SLT), 2012 WL 1150450, at *3 (E.D.N.Y. Apr. 5, 2012) (noting *In re*

*Grand Jury 2003* "has arguably extended the privilege the furthest," and "[t]he reach of that case

may be further limited by its context: . . . a high profile grand jury investigation").[39]



49.    Moreover, ███████████████████████████████████████

██████████████████████████████████████████████████████

██████████████. To the contrary, ███████████████████████

██████████████████████████████████████████████████████

█████████████. *See, e.g.*, Hurley Decl., Ex. 6 ████████████████████

██████████████████████████████████████████████; Ex. 16 ██████

█████████████████████████████; Ex. 21 ██████████████████████████

██████████████████████████████████████████████████████

██████████████████. Hence, even if *In re Grand Jury 2003*'s holding were accepted, it

would not apply here.  *Cf. Bloomingburg Jewish Educ. Ctr.*, 171 F. Supp. 3d at 147 (holding public

relations firm destroyed privilege, and *In re Grand Jury 2003* was inapposite because counsel used

firm for "communicating with the general public at large").

50.    The UCC has identified the following public relations firms and individuals on the

Privilege Logs and appendices as public relations professionals:

---

[39] Given that it is not a Second Circuit opinion—and particularly in light of its questionable precedential value—this Court is under no obligation to follow the *In re Grand Jury 2003* opinion.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430 n.10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the over 40 district court judges in the Southern District of New York, each of whom sits alone and renders decisions not binding on the others.").

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

51.    Notably—████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████[43]  ████████

████████████████████████████████████████████████

████████████████████████████████.  ███████████████

[40] *See* Exhibit A (Excel Tab D) of the Hurley Declaration for corresponding entries from the Side A Logs.

[41] *See* Exhibit B (Excel Tab B) of the Hurley Declaration for corresponding entries from the Side B Logs.

[42] *See* Exhibit C (Excel Tab C) of the Hurley Declaration for corresponding entries from the Debtors Logs.

[43] ██████████████████████████████████████████████
██████████████████████████

███████████████████████████████████████████████████████

█████. Representatives from █████████ █████ and ██████████ are on ███ Privilege Log entries where counsel is completely absent.  *See* Hurley Decl., Ex. A (Excel Tab D.1) (Side A), Ex. B (Excel Tab B.1) (Side B), Ex. C (Excel Tab C.1) (Debtors).  ████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████.

52.    Even where counsel is present, the Sacklers and the Debtors cannot claim a blanket privilege over communications with ████████ ██████ and ████████████ solely because ███

████████████████████████████. █████████████████████████████

█████████████████████████████████████████████████████.  *See* Hurley Decl., Ex. A (Excel Tab D.2) (Side A), Ex. B (Excel Tab B.2) (Side B), Ex. C (Excel Tab C.2) (Debtors).  This is precisely the type of non-privileged work that public relations firms are generally hired to perform, and that courts have uniformly held is not privileged.  *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019) (public relations firms broke privilege because they were "involved in public relations activities aimed at burnishing [the client's] image" rather than "called upon to perform a specific litigation task that the attorneys needed") (citation omitted); *Bloomingburg Jewish Educ. Ctr.*, 171 F. Supp. 3d at 147 (no privilege attached to public relations communications where party failed to demonstrate the firm "performed a function beyond that which a public relations firm might ordinarily be called upon to do").

53.    █████████████████████████████████████████████

████████████████ For example, ██████████████████████████████

██████████████████████████████████████████████████.

The UCC therefore has little confidence in these representations.  ██████████████████



. However, ■■■■■■■■■

■■■■■■■■■■■■■ : ■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■    ■■■■■■■■■■■■■

■■■■■■■■■■■■■■■. *See Bloomingburg Jewish Educ. Ctr.*, 171 F.
Supp. 3d at 146-47; *Calvin Klein Trademark Tr.*, 198 F.R.D. at 54-55; *Haugh*, 2003 WL 21998674,
at *3. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■.

54.    ■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■. ■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■        *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 93 (S.D.N.Y. 2019)
("[M]any cases have rejected work product protection for material relating to public relations
activities."); *Calvin Klein Trademark Tr.*, 198 F.R.D. at 55 ("[I]t is obvious that as a general matter
public relations advice, even if it bears on anticipated litigation, falls outside the ambit of
protection of the so-called 'work product' doctrine."); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718
(LAK)(JCF), 2011 WL 3880896, at *1-2 (S.D.N.Y. Sept. 1, 2011) (compelling production of
documents purportedly reflecting work product analysis of "how best to react" to court judgment,
because the underlying discussion related to public relations). ■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■.

C.    **The Withholding Parties Have Not Carried Their Burden of Proving Communications With Accountants and Investment Advisors Are Privileged**[44]

55.    Communications with accountants and accounting firm personnel are generally not shielded by privilege.  *See United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984) ("[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases.") (internal quotation marks and citation omitted).  Thus, where the communication at issue "is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."  *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).  Likewise, communications with financial or investment advisors generally vitiate privilege claims.  *See Ackert*, 169 F.3d at 139-40 (rejecting privilege claim over communications with investment banker, noting "the attorney-client privilege generally applies only to communications between the attorney and the client").

56.    This general rule holds true even where counsel is involved in communications with third parties like accountants and investment advisors.  *See, e.g.*, *Ackert*, 169 F.3d at 139-40; *Summit Ltd. v. Levy*, 111 F.R.D. 40, 42 (S.D.N.Y. 1986).  The presence of a non-lawyer still vitiates the privilege unless the non-lawyer acts like a translator, supplying analysis essential to counsel's rendition of legal advice.  *See, e.g.*, *Kovel*, 296 F.2d at 922.  It is not enough that the accountant's input is important to counsel's ultimate opinion.  *See, e.g.*, *Ackert*, 169 F.3d at 139 ("[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client.") (citation omitted); *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005) (communications with financial consultant not privileged without demonstration they were essential to attorney's legal advice).

[44] For the avoidance of doubt, the UCC does not intend to and is not seeking the disclosure of documents with investment bankers or financial advisers retained in connection with restructuring.

57.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████.[45]

████████████████████████████████████████████████

████████████████████████    *See* Hurley Decl., Ex. A (Excel Tab E) at *e.g.*, control nos.

████ ████ ████    Similarly, ██████████████████████████████

████████████████████████████████    *See id.*, Ex. B (Excel Tab C) at *e.g.*,

control  nos. ████████, ████████████, ██████████, ████████████.  ██████████████

████████████████████████████████████████████████

████████████████████████████████    *See id.*, Ex. C (Excel Tab D) at *e.g.*,

control nos. ████████████, ████████████.

58.    Descriptions of this kind do not establish that the accountant was acting as an

essential "translator" for a lawyer or otherwise justify withholding the associated communication.

*See Kovel*, 296 F.2d at 922; *Universal Standard, Inc.*, 331 F.R.D. at 87-88.  ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████.    ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████.[46]    *See Aurora Loan Servs., Inc.*, 499 F. Supp. 2d at 479 ("The burden of establishing

attorney-client or work product privilege is on the party asserting the respective privilege.").

---

[45] The entries involving ████████ and ████████████████ subject to challenge are identified in Exhibit A (Excel Tab E), Exhibit B (Excel Tab C), and Exhibit C (Excel Tab D) to Hurley Declaration for corresponding entries from Side A's, Side B's, and the Debtors' Logs, respectively.

[46] *See* Hurley Decl., Ex. 14 ████████████████████████; Ex. 16 ████████████████████████.



Likewise, ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████.[47]

### D. Documents and Communications With Gardeners, Architects, Art Consultants, and a Panoply of Other Non-Lawyer Service Providers and Other Third Parties Must Also be Produced

59.    In addition to withholding thousands of documents and communications copying public relations firms, accountants, and investment advisors, the withholding parties have improperly withheld ████ documents and communications with other kinds of service providers and third parties.  For Side A, these other third parties include architects, building and construction contractors/managers, gardeners, farm and estate managers, personal "friends" of various Sacklers, a chef and other restaurant employees, charity directors, and art consultants, *see* Hurley Decl., Ex. A (Excel Tab F); insurance brokers, *id.* (Excel Tab G); bankers, *id.* (Excel Tab H); real estate brokers, *id.* (Excel Tab I); co-investors and/or counterparties to transactions, *id.* (Excel Tab J); and a variety of consultants, *id.* (Excel Tab K).  The Debtors claim privilege over communications with lobbyists, Hurley Decl. Ex. C (Excel Tab E); consultants, *id.* (Excel Tab F); real estate firms, *id.* (Excel Tab G); non-Debtors' counsel including counsel for Purdue's employees and ████████ ████ personal counsel, *id.* (Excel Tab H); non-affiliates of the Debtors, *id.* (Excel Tab I); bankers, *id.* (Excel Tab J); insurance brokers, *id.* (Excel Tab K); other third party participants such as security firms and non-affiliate pharmaceutical companies, *id.* (Excel Tab L); and participants whose role the Debtors have not identified at all, *id.* (Excel Tab M).[48]  Side B asserts privilege over

---

[47] *See* Hurley Decl., Ex. 21 ██████████████████████████.

[48] Despite the UCC's requests, ████████████████████████████████████████
████████████████████████████████. *See* Hurley Decl., Ex. 29 ████████████████████████.

its communications involving consultants, Hurley Decl. Ex. B (Excel Tab D); co-investors, *id.* (Excel Tab E); bankers, *id.* (Excel Tab F); real estate firms, *id.* (Excel Tab G); and other third parties, such as a recipient of a charitable donation and an individual who "assist[s] with identifying charitable opportunities," *id.* (Excel Tab H).

60.    In some cases, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████. But, even if true, many more circumstances "could" exist that ***do not*** permit a privilege assertion with the above types of third parties. *Music Sales Corp. v. Morris,* No. 98 Civ. 9002 (SAS) (FM), 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999) ("The voluntary disclosure of privileged attorney-client communications to unrelated third parties typically constitutes a waiver of the privilege."); *see also Ackert*, 169 F.3d at 139-40 (banker); *Obeid v. Mack*, No. 14 Civ. 6498(LTS)(HBP), 2016 WL 7176653, at *8-9 (S.D.N.Y. Dec. 9, 2016) (investor); *866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-CV-03678(SN), 2016 WL 6901321, at *1 (S.D.N.Y. Nov. 23, 2016) (insurer); *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 591-92 (S.D.N.Y. 2015) (consultant); *In re Chevron Corp.,* 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010) (lawyer acting as lobbyist); *In re North Plaza, LLC*, 395 B.R. 113, 126 (S.D. Cal. July 25, 2008) (real estate broker); *Am. Ins. Co. v. Elgot Sales Corp.,* No. 97 CIV. 1327(RLC), 1998 WL 647206, at *2 (S.D.N.Y. Sept. 21, 1998) (insurance adjuster); *N. River Ins. Co. v. Columbia Cas. Co.,* No. 90 Civ. 2518 (MJL), 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995) (insurer and insured). Having failed to identify specific facts establishing the privileges claimed, these other third party documents must be produced or provided to the Court or a Special Master for review *in camera*.

## COMPLIANCE WITH RULES

61.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.

The UCC submits that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

62.     Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this Motion.  The Official Committee respectfully submits that no further notice is required.

## NO PRIOR REQUEST

63.     No prior request for the relief sought in this Motion has been made.

## RESERVATION OF RIGHTS

64.     The UCC and its members reserve all of their respective rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Motion, to seek additional discovery, add additional parties, or to raise additional grounds for granting this Motion during any reply briefing or hearing on the Motion.

## CONCLUSION

65.     For all the foregoing reasons, the UCC respectfully requests that the Court grant the Motion in its entirety, and enter an order requiring the Withholding Parties to (i) produce the Withheld Documents or (ii) provide the Withheld Documents to the Court, or to a Special Master appointed by the Court, for review *in camera* and production to the UCC to the extent deemed appropriate.  The NCSG supports the relief requested herein.

New York, New York                          AKIN GUMP STRAUSS HAUER & FELD LLP

Dated:  September 29, 2020


                                    By: /s/ *Mitchell P. Hurley*                                   

                                        Ira S. Dizengoff
                                        Arik Preis
                                        Mitchell P. Hurley
                                        Joseph L. Sorkin
                                        Sara L. Brauner
                                        One Bryant Park
                                        New York, New York 10036
                                        Telephone: (212) 872-1000
                                        Facsimile: (212) 872-1002
                                        idizengoff@akingump.com
                                        apreis@akingump.com
                                        mhurley@akingump.com
                                        jsorkin@akingump.com
                                        sbrauner@akingump.com

                                        *Counsel to the Official Committee of Unsecured
                                        Creditors of Purdue Pharma, L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER GRANTING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**MOTION TO COMPEL PRODUCTION OF PURPORTEDLY PRIVILEGED**
**DOCUMENTS, OR FOR *IN CAMERA* REVIEW, BASED ON FAILURE OF THE**
**SACKLERS AND THE DEBTORS TO DEMONSTRATE**
**DOCUMENTS IDENTIFIED ON LOGS ARE PRIVILEGED**

Upon the Motion to Compel Production of Purportedly Privileged Documents, or for

*In Camera* Review, Based on Failure of the Sacklers and the Debtors to Demonstrate

Documents Identified on Logs Are Privileged, dated September 29, 2020 (the "**Motion**"), of

the Official Committee of Unsecured Creditors (the "**UCC**") of Purdue Pharma L.P. and its

affiliated debtors and debtors in possession (collectively, the "**Debtors**") and upon all papers

filed in connection with the Motion; and upon the record of the hearing held by the Court on

October 28, 2020, and all objections to the Motion having been withdrawn or overruled; and

the Court having jurisdiction over the Motion pursuant to 28 U.S.C. § 1334(a); and the venue

of these chapter 11 cases and the Motion being proper in this District pursuant to 28 U.S.C.

§§ 1408 and 1409; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

and the Court having authority to enter a final order with respect to the Motion; and no additional notice being required except as provided herein; and, after due deliberation and good and sufficient cause appearing; now, therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED.

2.      The Withholding Parties (as defined in the Motion) are hereby ORDERED to produce, or in the alternative to provide for *in camera* review, all documents that have been or may be withheld on purported privilege grounds within categories identified in the Motion, as follows:

      a.   The Withholding Parties are hereby ORDERED to produce all of the (1) presentations, white papers, and other communications the Withholding Parties shared with the Department of Justice ("**DOJ**"), and (2) the documents and communications the Debtors previously produced to the DOJ, as identified on the Debtors' DOJ privilege logs.

      b.   The Withholding Parties are hereby ORDERED to provide for *in camera* review, all withheld documents and communications that include Stuart Baker or Jonathan White as identified at Exhibit A (Excel Tab A), Exhibit B (Excel Tab A), and Exhibit C (Excel Tab A) to the Hurley Declaration in support of the Motion.

      c.   The Withholding Parties are hereby ORDERED to produce, or in the alternative provide for *in camera* review, all withheld documents and communications with members of the Special Committee identified on Exhibit A (Excel Tab B), Exhibit B (Excel Tab I), and Exhibit C (Excel Tab B) to the Hurley Declaration in support of the Motion.

      d.   The Side A Sacklers (as defined in the Motion) are hereby ORDERED to produce,

or in the alternative provide for *in camera* review, all withheld documents and communications purporting to reflect an intent to seek legal advice as identified on Exhibit A (Excel Tab C) to the Hurley Declaration in support of the Motion.

e.   The Withholding Parties are hereby ORDERED to produce, or in the alternative provide for *in camera* review, all withheld documents and communications reflecting communications with public relations consultants as identified on Exhibit A (Excel Tab D), Exhibit B (Excel Tab B), and Exhibit C (Excel C) to the Hurley Declaration in support of the Motion.

f.   The Withholding Parties are hereby ORDERED to produce, or in the alternative provide for *in camera* review, all withheld documents and communications reflecting communications with accountants and investment advisors as identified on Exhibit A (Excel Tab E), Exhibit B (Excel Tab C), and Exhibit C (Excel Tab D) to the Hurley Declaration in support of the Motion.

g.   The Withholding Parties are hereby ORDERED to produce, or in the alternative provide for *in camera* review, all withheld documents and communications reflecting communications with non-lawyer service providers and other third parties as identified on Exhibit A (Excel Tabs F-K), Exhibit B (Excel Tabs D-H), and Exhibit C (Excel Tab E-M) to the Hurley Declaration in support of the Motion.

White Plains, New York

Dated: _____          _____
                                       THE HONORABLE ROBERT D. DRAIN
                                       UNITED STATES BANKRUPTCY JUDGE

3