AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |


**DECLARATION OF MITCHELL HURLEY**
**DATED SEPTEMBER 29, 2020**


---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Under 28 U.S.C. § 1746, I, Mitchell Hurley, declare under the penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      This declaration ("**Declaration**") is submitted in support of the Official Committee of Unsecured Creditors (the "**UCC**") of Purdue Pharma, L.P. et al.'s two motions filed contemporaneously with this Declaration entitled (1) Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and At Issue Exceptions to Privilege (the "**Exceptions Motion**"); and (2) Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged (the "**General Challenges Motion,**" and, together with the Exceptions Motion, the "**Motions**").[2]

2.      I am an attorney in good standing admitted to practice in the State of New York, and I am a partner at the law firm of Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**").  I make this Declaration based on my own personal knowledge and belief, and upon documents and information available to me as counsel to the UCC.

3.      The UCC has met and conferred with counsel for the Sacklers and the Debtors (collectively, the "**Withholding Parties**") in a good faith effort to resolve by agreement the issues raised by the Motions without the intervention of the Court.  The UCC has conferred and corresponded with the Sacklers' and the Debtors' counsel on numerous occasions in an attempt to resolve the UCC's concerns regarding the propriety of the documents withheld or redacted as indicated on the Privilege Logs, as well as the issues regarding the Good Cause, Crime Fraud, and At Issue exceptions to privilege.  A selection of the written correspondence most relevant to the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motions.

issues before the Court is described below and attached to this Declaration.  While the parties

informally resolved some of the UCC's challenges, they could not resolve the issues set forth in

the Motions.  The UCC, therefore, has filed the Motions in accordance with the briefing schedule

provided in the *Amended Stipulation and Agreed Order Regarding Discovery Deadlines and

Briefing Scheduling in the Chapter 11 Cases* executed by the Debtors, the Sacklers, the NCSG,

the AHC, and the UCC, which was filed and so ordered by the Court on September 28, 2020 [ECF

No. 1734].

4.      Further, the UCC is filing the correspondence with the Withholding Parties in

redacted form in an abundance of caution in order to accommodate certain Withholding Parties'

prior positions concerning the confidentiality of email address and other information that may be

contained therein.  By filing in this way, the UCC does not intend to suggest that it agrees the

information is or ought to be confidential.

5.      In addition to the correspondence between the UCC and the Withholding Parties,

this Declaration describes the documents and testimony attached to this Declaration that support

the UCC's position in both Motions.

6.      Certain exhibits attached hereto have been designated as Confidential, Highly

Confidential, or Professional's Eyes Only by one or more parties to this proceeding and are filed

under seal pursuant to the *Second Amended Protective Order* entered in these proceedings [ECF

No. 1540].

7.      Attached hereto as **Exhibit A** is a true and correct copy of an excel workbook

containing the entries on Side A's privilege log that the UCC is challenging in the General

Challenges Motion and the Exceptions Motion, separated by category based on the tabbed

worksheets in the excel workbook.  For the Exceptions Motion, the privilege entries are a non-

exhaustive, illustrative list of the Challenged Documents that the UCC believes may fit within the categories of privileged documents of which, by the Exceptions Motion, the UCC is seeking to compel production.

8.      Attached hereto as **Exhibit B** is a true and correct copy of an excel workbook containing the entries on Side B's privilege log that the UCC is challenging in the General Challenges Motion and the Exceptions Motion, separated by category based on the tabbed worksheets in the excel workbook.  For the Exceptions Motion, the privilege entries are a non-exhaustive, illustrative list of the Challenged Documents that the UCC believes may fit within the categories of privileged documents of which, by the Exceptions Motion, the UCC is seeking to compel production.

9.      Attached hereto as **Exhibit C** is a true and correct copy of an excel workbook containing the entries on Debtors' privilege log that the UCC is challenging in the General Challenges Motion and the Exceptions Motion, separated by category based on the tabbed worksheets in the excel workbook.  For the Exceptions Motion, the privilege entries are a non-exhaustive, illustrative list of the Challenged Documents that the UCC believes may fit within the categories of privileged documents of which, by the Exceptions Motion, the UCC is seeking to compel production.

10.     Attached hereto as **Exhibit 1** is a true and correct copy of an email from J. McClammy to K. Porter, dated May 22, 2020.

11.     Attached hereto as **Exhibit 2** is a true and correct copy of a letter from M. Hurley to J. Ball, A. Lees, and G. Joseph, dated July 25, 2020.

12.     Attached hereto as **Exhibit 3** is a true and correct copy of a letter from A. Lees to M. Hurley, dated July 28, 2020.

13.    Attached hereto as **Exhibit 4** is a true and correct copy of a letter from A. Lees to M. Hurley, dated July 31, 2020.

14.    Attached hereto as **Exhibit 5** is a true and correct copy of a letter from M. Hurley to J. Ball, A. Lees, and G. Joseph, dated August 5, 2020.

15.    Attached hereto as **Exhibit 6** is a true and correct copy of a letter from A. Lees to M. Hurley, dated August 7, 2020.

16.    Attached hereto as **Exhibit 7** is a true and correct copy of a letter from J. Ball to Akin Gump counsel, dated August 10, 2020.

17.    Attached hereto as **Exhibit 8** is a true and correct copy of a letter from M. Hurley to J. Ball and A. Lees, dated August 12, 2020.

18.    Attached hereto as **Exhibit 9** is a true and correct copy of a letter from J. Ball to M. Hurley, dated August 16, 2020.

19.    Attached hereto as **Exhibit 10** is a true and correct copy of a letter from A. Lees to M. Hurley, dated August 16, 2020.

20.    Attached hereto as **Exhibit 11** is a true and correct copy of a letter from J. Ball, A. Lees, J. Dougherty, and M. Hirschfield to M. Hurley, dated August 17, 2020.

21.    Attached hereto as **Exhibit 12** is a true and correct copy of a letter from M. Hurley to J. Ball, dated August 18, 2020.

22.    Attached hereto as **Exhibit 13** is a true and correct copy of a letter from M. Hurley to A. Lees, dated August 20, 2020.

23.    Attached hereto as **Exhibit 14** is a true and correct copy of a letter from A. Lees to M. Hurley, dated August 22, 2020.

24.     Attached hereto as **Exhibit 15** is a true and correct copy of a letter from J. Ball to M. Hurley, dated August 23, 2020.

25.     Attached hereto as **Exhibit 16** is a true and correct copy of a second letter from J. Ball to M. Hurley, dated August 23, 2020.

26.     Attached hereto as **Exhibit 17** is a true and correct copy of a letter from M. Hurley to B. Kaminetzky, C. Duggan, J. McClammy, M. Clarens, dated August 30, 2020.

27.     Attached hereto as **Exhibit 18** is a true and correct copy of a letter from M. Hurley to J. Ball, dated August 30, 2020.

28.     Attached hereto as **Exhibit 19** is a true and correct copy of a letter from M. Hurley to A. Lees, dated August 30, 2020.

29.     Attached hereto as **Exhibit 20** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 2, 2020.

30.     Attached hereto as **Exhibit 21** is a true and correct copy of a letter from J. McClammy to M. Hurley, dated September 8, 2020.

31.     Attached hereto as **Exhibit 22** is a true and correct copy of a letter from J. Ball to M. Hurley, dated September 8, 2020.

32.     Attached hereto as **Exhibit 23** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 12, 2020.

33.     Attached hereto as **Exhibit 24** is a true and correct copy of a letter from M. Hurley to J. Ball, dated September 12, 2020.

34.     Attached hereto as **Exhibit 25** is a true and correct copy of a letter from M. Hurley to J. McClammy, dated September 13, 2020.

35.     Attached hereto as **Exhibit 26** is a true and correct copy of a letter from J. Ball to Akin Gump counsel, dated September 17, 2020.

36.     Attached hereto as **Exhibit 27** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 17, 2020.

37.     Attached hereto as **Exhibit 28** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 19, 2020.

38.     Attached hereto as **Exhibit 29** is a true and correct copy of a letter from M. Hurley to J. McClammy, dated September 21, 2020.

39.     Attached hereto as **Exhibit 30** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 22, 2020.

40.     Attached hereto as **Exhibit 31** is a true and correct copy of a letter from J. Ball to Akin Gump counsel, dated September 22, 2020.

41.     Attached hereto as **Exhibit 32** is a true and correct copy of a letter from M. Hurley and A. Troop to J. McClammy and P. Fitzgerald, dated September 23, 2020.

42.     Attached hereto as **Exhibit 33** is a true and correct copy of a letter from M. Hurley to J. McClammy, dated September 24, 2020.

43.     Attached hereto as **Exhibit 34** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 24, 2020.

44.     Attached hereto as **Exhibit 35** is a true and correct copy of a letter from M. Hurley to J. Ball, dated September 24, 2020.

45.     Attached hereto as **Exhibit 36** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 25, 2020.

46.    Attached hereto as **Exhibit 37** is a true and correct copy of a letter from M. Grier to M. Huebner, M. Hurley, R. Ringer, and A. Troop, dated September 26, 2020.

47.    Attached hereto as **Exhibit 38** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 28, 2020.

48.    Attached hereto as **Exhibit 39** is a true and correct copy of an email from J. McClammy to G. Feiner, dated May 11, 2020.

49.    Attached hereto as **Exhibit 40** is a true and correct copy of a letter from J. McLaughlin to K. Porter, dated April 9, 2020.

50.    Attached hereto as **Exhibit 41** is a true and correct copy of a letter from M. Hirschfield to A. Vinson Crawford, dated September 16, 2020.

51.    Attached hereto as **Exhibit 42** is a true and correct copy of a letter from M. Leventhal to J. McClammy, C. Duggan, and C. Oluwole, dated September 26, 2020.

52.    Attached hereto as **Exhibit 43** is a true and correct copy of an excerpt from the transcript of the deposition of David Sackler: 66:13-18; 86:20-87:10; 156:5-157:21; 190:6-15; 211:9-224:1; 225:6-232:17; 379:6-380:3; dated August 28, 2020.

53.    Attached hereto as **Exhibit 44** is a true and correct copy of an excerpt from the transcript of the deposition of Marianna Sackler: 4:19-22; 302:14-25; dated September 2, 2020.

54.    Attached hereto as **Exhibit 45** is a true and correct copy of an excerpt from the transcript of the deposition of Stephen Ives: 5:4-6; 31:23-37:21; 309:19-310:14; dated September 22, 2020.

55.    Attached hereto as **Exhibit 46** is a true and correct copy of excerpts from the transcript of the deposition of Ilene Sackler Lefcourt: 78:7-12; 91:18-92:7; dated September 18, 2020.

56.    Attached hereto as **Exhibit 47** is a true and correct copy of an excerpt from the transcript of the deposition of Dame Theresa Sackler: 50:18-52:6; 63:25-65:16; 452:21-453:12; dated September 23-24, 2020.

57.    Attached hereto as **Exhibit 48** is a true and correct copy of a Memorandum of Understanding Regarding Joint Defense and Common Interest dated May 15, 2018, as sent by E. Lilburn to M. Hurley on July 31, 2020.

58.    Attached hereto as **Exhibit 49** is a true and correct copy of an email dated March 31, 2015 with an attached document entitled "Report of SDB Activities and Responsibilities," which was produced to the UCC under the Bates numbers PPLPUCC000336422 and PPLPUCC000336423, respectively.

59.    Attached hereto as **Exhibit 50** is a true and correct copy of a document entitled "Purdue Pharma Inc. Board of Directors," which was produced to the UCC under the Bates number PPLPUCC500140094.

60.    Attached hereto as **Exhibit 51** is a true and correct copy of Mortimer-Side Informational Presentation, Nov. 22, 2019.

61.    Attached hereto as **Exhibit 52** is a true and correct copy of an email chain dated August 28, 2013 among Jonathan Sackler and Dame Theresa Sackler, which was produced to the UCC under the Bates number MDSF00019408.

62.    Attached hereto as **Exhibit 53** is a true and correct copy of an email dated May 3, 2010, which was produced to the UCC under the Bates number MSF00077969.

63.    Attached hereto as **Exhibit 54** is a true and correct copy of a "Family Council Meeting" agenda for a meeting dated November 5, 2012, which was produced to the UCC under the Bates number PPLPUCC000620611.

64.    Attached hereto as **Exhibit 55** is a true and correct copy of an email chain dated September 22, 2017, which was produced to the UCC under the Bates number MSF00591611.

65.    Attached hereto as **Exhibit 56** is a true and correct copy of an email chain among Jonathan White and Dame Theresa Sackler from June 19, 2015, which was produced to the UCC under the Bates number MSF90010331.

66.    Attached hereto as **Exhibit 57** is a true and correct copy of an email chain dated June 12, 2015, which was produced to the UCC by Beth Cohen under the Bates numbers BCOH0000049.

67.    Attached hereto as **Exhibit 58** is a true and correct copy of excerpts from a December 6, 2019 presentation by Joseph Hage Aaronson LLC, on behalf of the Raymond-side Sacklers entitled "*In Re: Purdue Pharma L.P., et al.*: Presentation of Defenses: Pursuant to November 5, 2019 Amended Stipulation ¶ 17(b) (ECF No. 431)."

68.    Attached hereto as **Exhibit 59** is a true and correct copy of an email chain dated March 3, 2010, which was produced to the UCC under the Bates numbers PPLPC012000259875.

69.    Attached hereto as **Exhibit 60** is a true and correct copy of a native file containing a presentation entitled "Purdue Pharma L.P. and Independent Associated Companies:  Insurance Update" dated September 2012, which was produced to the UCC under the Bates number PWG004469106.

70.    Attached hereto as **Exhibit 61** is a true and correct copy of an email chain dated April 13, 2012 attaching a presentation produced in native format entitled "OxyContin Market Events:  4/12/12 - FINAL," which was produced to the UCC under the Bates numbers PPLPC012000372436.

71.    Attached hereto as **Exhibit 62** is a true and correct copy of an email chain dated November 20, 2006, which was produced to the UCC under the Bates numbers PPLPC057000003694.

72.    Attached hereto as **Exhibit 63** is a true and correct copy of an email chain dated May 15, 2007, which was produced to the UCC under the Bates numbers PWG004474511.

73.    Attached hereto as **Exhibit 64** is a true and correct copy of an email chain dated May 17, 2007, which was produced to the UCC under the Bates numbers PPLPUCC002683256.

74.    Attached hereto as **Exhibit 65** is a true and correct copy of an email chain dated February 27, 2007, which was produced to the UCC under the Bates numbers PPLPUCC000555709.

75.    Attached hereto as **Exhibit 66** is a true and correct copy of an email chain dated June 25, 2007, which was produced to the UCC under the Bates number PPLPUCC000886987.

76.    Attached hereto as **Exhibit 67** is a true and correct copy of an email chain dated February 13, 2008, which was produced to the UCC under the Bates numbers PPLPUCC000177443.

77.    Attached hereto as **Exhibit 68** is a true and correct copy of an email chain dated June 22, 2007, which was produced to the UCC under the Bates numbers PWG004473999.

78.    Attached hereto as **Exhibit 69** is a true and correct copy of an email chain dated July 26, 2007 attaching a document entitled "Confidential Memorandum to Jon Sackler," which was produced to the UCC under the Bates numbers PPLPUCC9000491386.

79.    Attached hereto as **Exhibit 70** is a true and correct copy of a document entitled "Memorandum to Dr. Richard Sackler.  From:  F. Peter Boer" dated April 12, 2008, which was produced to the UCC under the Bates numbers PDD9316314303.

80.    Attached hereto as **Exhibit 71** is a true and correct copy of an email chain dated February 22, 2008, which was produced to the UCC the Debtors under the Bates numbers PPLPC042000011911.

81.    Attached hereto as **Exhibit 72** is a true and correct copy of excerpts from a December 6, 2019 presentation by Debevoise & Plimpton, on behalf of the Mortimer-side Sacklers entitled "Presentation of Defenses ('Side A'): Pursuant to November 5, 2019 Amended Stipulation ¶ 17(b) (ECF No. 431)."

82.    Attached hereto as **Exhibit 73** is a true and correct copy of a WhatsApp conversation from October 2017, which was produced to the UCC under the Bates number MSF00023231.

83.    Attached hereto as **Exhibit 74** is a true and correct copy of a WhatsApp conversation from 2017 to 2019, which was produced to the UCC under the Bates number MSF00022423.

84.    Attached hereto as **Exhibit 75** is a true and correct copy of an email chain dated December 21, 2011, which was produced to the Senate Finance Committee by Purdue prior to Purdue's bankruptcy filings under the Bates number SFC00007403.

85.    Attached hereto as **Exhibit 76** is a true and correct copy of an email chain dated March 6, 2015, which was produced to the UCC under the Bates number PNY000485015.

86.    Attached hereto as **Exhibit 77** is a true and correct copy of an email chain dated October 20, 2017, which was produced to the UCC under the Bates number MDSF00019747.

87.    Attached hereto as **Exhibit 78** is a true and correct copy of a document entitled "Purdue Quarterly Report to the Board April 15, 2008," which was produced to the UCC under the Bates numbers PWG004497873.

88.     Attached hereto as **Exhibit 79** is a true and correct copy of an email chain dated December 8, 2011, which was produced to the UCC under the Bates numbers PWG004463776.

89.     Attached hereto as **Exhibit 80** is a true and correct copy of a presentation entitled "Risk Identification and Mitigation:  Selected Risks," dated September 30, 2013, which was produced to the UCC by the Debtors under the Bates numbers PPLPC031001489270.

90.     Attached hereto as **Exhibit 81** is a true and correct copy of a presentation entitled "Risk Identification and Mitigation:  Selected Risks," dated December 1, 2014, which was produced in native format to the UCC by the Debtors under the Bates number PPLPC032000394439.

91.     Attached hereto as **Exhibit 82** is a true and correct copy of a Purdue Board Meeting Agenda and materials, dated September 13, 2018.

92.     Attached hereto as **Exhibit 83** is a true and correct copy of an email dated May 15, 2012 attaching a letter from the United States Senate Committee on Finance to John H. Stewart, dated May 8, 2012, which was produced to the UCC under the Bates numbers RSF00679318.

93.     Attached hereto as **Exhibit 84** is a true and correct copy of a presentation entitled "4Q12 Compliance Report to the Board of Directors," dated January 2013, which was produced in native format to the UCC under the Bates number PPLPUCC001456442.

94.     Attached hereto as **Exhibit 85** is a true and correct copy of an excerpt of a Board presentation dated May 15, 2014, which was produced to the UCC under the Bates numbers PPLP004411166.

95.     Attached hereto as **Exhibit 86** is a true and correct copy of an excerpt of a Board presentation dated April 21, 2015, which was produced to the UCC under the Bates numbers PPLP004412071.

96.    Attached hereto as **Exhibit 87** is a true and correct copy of a Distribution Agreement dated October 24, 1991, which was produced to the UCC under the Bates numbers MSF00026491.

97.    Attached hereto as **Exhibit 88** is a true and correct copy of excerpts of Board decisions dated January 15, 2013, which was produced to the UCC under the Bates numbers PPLP004417308.

98.    Attached hereto as **Exhibit 89** is a true and correct copy of an email chain dated July 24, 2015, which was produced to the UCC under the Bates number PPLPUCC9002715623.

99.    Attached hereto as **Exhibit 90** is a true and correct copy of an email chain dated September 9, 2014, which was produced to the UCC under the Bates numbers MDSF00018083.

100.    Attached hereto as **Exhibit 91** is a true and correct copy of email correspondence from September 5, 2020 to September 25, 2020 between M. Hirschfield and A. Vinson Crawford, among others.

101.    Attached hereto as **Exhibit 92** is a true and correct copy of excerpts of Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Adjudication in the case *In re National Prescription Opiate Litigation*, Case No. 17-md-2804, United States District Court for the Northern District of Ohio, dated July 19, 2019, Doc. No. 1910-1.

102.    Attached hereto as **Exhibit 93** is a true and correct copy of excerpts of Plaintiffs' Consolidated Reply Memorandum in Further Support of Plaintiffs' Motions for Partial Summary Adjudication in the case *In re National Prescription Opiate Litigation*, Case No. 17-md-2804, United States District Court for the Northern District of Ohio, dated August 26, 2019, Doc. No. 2545.

103.    Attached hereto as **Exhibit 94** is a true and correct copy of "An Analysis of Distributor and Manufacturer Regulatory Compliance to Maintain Effective Controls for the Prevention of Diversion of Controlled Substances" filed in the case *In re National Prescription Opiate Litigation*, Case No. 17-md-2804, United States District Court for the Northern District of Ohio, dated January 31, 2020, Doc. No. 3124-14.

104.    Attached hereto as **Exhibit 95** is a true and correct copy of an excerpt of a United States Department of Justice Civil Proof of Claim Form in these cases dated July 30, 2020.

105.    Attached hereto as **Exhibit 96** is a true and correct copy of an excerpt of a United States Department of Justice Criminal Proof of Claim Form Addendum in these cases dated July 30, 2020.

106.    Attached hereto as **Exhibit 97** is a true and correct copy of a letter from J. Sorkin to K. Marino, dated July dated September 15, 2020.

107.    Attached hereto as **Exhibit 98** is a true and correct copy of an email from K. Marino to J. Sorkin, dated September 28, 2020.

108.    Attached hereto as **Exhibit 99** is a true and correct copy of the April 14, 2009 Decision regarding "Funding – Rhodes Pharmaceuticals L.P.," which was produced to the UCC under the Bates number PPLPUCC000619871.

109.    Attached hereto as **Exhibit 100** is a true and correct copy of April 1, 2010 Decision regarding "Purdue Pharma L.P. – 2Q 2010 Distribution," which was produced to the UCC under the Bates number PPLPUCC000440913.

110.    Attached hereto as **Exhibit 101** is a document describing the categories of privileged documents (namely, the Fiduciary Documents, the Crime Fraud Documents, and the At Issue Documents) that the UCC is seeking to compel as set forth in the Motions.

111.    Attached hereto as **Exhibit 102** is a document entitled "Dr. Craig Landau Appointed President and CEO Purdue Pharma L.P.," dated August 28, 2018, was produced to the UCC by the Debtors under the Bates number PPLPUCC000013176.

112.    Attached hereto as **Exhibit 103** is true and correct copy of a letter from Mara Leventhal (Joseph Hage Aaronson) to James I. McClammy (Davis Polk) et al. dated September 26, 2020.

113.    Attached hereto as **Exhibit 104** is a true and correct copy of the April 16, 2013 Beacon Company SEC Form 4.

114.    Attached hereto as **Exhibit 105** is a true and correct copy of the April 16, 2013 Rosebay Medical Company L.P. SEC Form 4.

115.    Attached hereto as **Exhibit 106** is a true and correct copy of the March 4, 2003 Shareholders' Agreement (Purdue Pharma Inc.), which was produced to the UCC under the Bates number MSF00026639.

116.    Attached hereto as **Exhibit 107** is a true and correct copy of the Minutes of a March 4, 2003 Meeting of the Board of Directors of Purdue Pharma Inc., which was produced to the UCC under the Bates number PPLPUCC500647319.

117.    Attached hereto as **Exhibit 108** is a true and correct copy of the December 4, 2015 email from Kathe Sackler, which was produced to the UCC under the Bates number MSF00806366.

118.    Attached hereto as **Exhibit 109** is a true and correct copy of a document entitled "MNP Consulting Limited - List of Directors," sent as an attachment to a July 14, 2020 email from J. Upin to A. V. Crawford RE: IAC custodians follow up.

Executed on: September 29, 2020

/s/ Mitchell Hurley
Mitchell Hurley

REDACTED

# EXHIBITS A-C & 1-100
# REDACTED

REDACTED

# EXHIBIT 101

# CATEGORIES OF CHALLENGED DOCUMENTS[1]

## Good Cause Exception Categories for Privilege Claims Belonging to the Debtors

Documents subject to the "good cause" exception include documents from January 1, 2006 to the present claimed as privileged by the Debtors concerning:

a. The Debtors' financial condition, including as a result of actual or potential opioid-related liability due to improper sales and marketing of opioids or otherwise, and Debtors and/or the Sacklers awareness of the same;

b. Knowledge of actual or potential opioid claims, investigations, damages, litigation, and other opioid related risks;

c. The Debtors' failed attempts to procure products insurance and director and officer insurance;

d. The propriety, or not, of causing Purdue to make cash and non-cash transfers to or for the direct or indirect benefit of the Sacklers, and any related discussion or analysis concerning fiduciary duties, solvency, fraudulent conveyance, illegal dividends, and other liability or other legal risks actually or potentially attendant to such transfers;

e. The degree to which liability risks would or might persist notwithstanding the 2007 settlements with the United States Department of Justice and certain states;

f. Whether Purdue received adequate value in exchange for non-cash transfers it made to the IACs[2] and otherwise for the direct or indirect benefit of the Sacklers, including under the OxyContin license agreements with the IACs and Purdue's transfer of Lucien to the Sacklers in 2010;

g. Any whistleblower or similar activity concerning Purdue's sale and marketing of opioids; and

h. Liability risks associated with cash transfers versus risks associated with non-cash transfers, and liability risks associated with transfers directly to or for the benefit of the Sacklers' trusts versus risks associated with transfers to or for the benefit of IACs or other entities directly or indirectly owned by the Sacklers.

---

[1] Due to their limited and generic descriptions and of course without the benefit of reviewing the underlying documents, the Debtors' and the Sacklers' logs are simply not detailed enough for the UCC to identify each entry subject to the exceptions set forth herein. Accordingly, the UCC has identified the Challenged Documents it seeks pursuant to defined categories in this exhibit. The UCC is likewise submitting herewith non-exhaustive samples of the types of log entries from the Side A Sacklers' (Mortimer-Side), the Side B Sacklers' (Raymond-Side), and the Debtors' privilege logs produced to date that appear to correspond to the categories at issue as Exhibits A, B, and C, respectively, to the transmittal Declaration of Mitchell Hurley dated September 29,2020. These samples are by no means exhaustive of the relevant entries on the logs received so far, and the UCC reserves all rights to identify additional entries within each category and to raise additional issues with respect to the Debtors' and the Sacklers' logs received to date and to be received in the coming weeks. Further, to the extent there are additional emails or attachments associated with any of the log entries listed in Exhibits A, B, and C, those additional emails or attachments also should be included in any sampling the Court, or a Special Master, may conduct of Debtors or the Sacklers' purportedly privileged documents. Finally, the UCC has provided the sample log entry exhibits in native Microsoft Excel format due to their size and to facilitate the Court's orderly review. Should the Court wish to review the log entry exhibits in paper format, the UCC will coordinate with the Court to provide such paper copies. The UCC reserves the right to seek documents in additional or different categories, including based on information that may be produced as a result of the Motion.

[2] "IACs" refers to the various domestic and foreign independent associated companies, which are ultimately owned or controlled by the Sackler families as further defined in the Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9106 Authorizing Examinations of and Document Production by Third Parties filed July 6, 2020 [ECF No. 1340 at 2].

**Crime-Fraud Exception Categories for Privilege Claims Belonging to the Sacklers or the Debtors**

Documents subject to the crime-fraud exception include documents from January 1, 2006 to the present claimed as privileged by the Sacklers or the Debtors concerning:

a.   The Sacklers' asset protection and estate planning measures to transfer funds to trusts and other assets with "limited transparency" and/or "jurisdictional shielding" from creditors relating to the Sacklers' and Purdue's liability;

b.   Whether cash or non-cash transfers to the Sacklers were, or were not, at risk of being deemed fraudulent transfers;

c.   Whether, and/or how, opioid litigants could collect, or be prevented from collecting, a potential judgment against the Sacklers, their trusts and other affiliates and assets (even if the Sacklers' motive to obscure assets was unbeknownst to the lawyer providing the advice);

d.   Purdue's potential liability, or the Sacklers' (or any of their advisors') potential liability, related to breaches of fiduciary duty and other misconduct, and any efforts to conceal such conduct or breaches of duty;

e.   The formation, governance and management of the Sacklers' trusts, including whether trusts were created or modified, or transfers made among trusts, for the purpose of delaying or hindering creditors, and whether purportedly discretionary trusts are operated in a manner consistent with that claimed status;

f.   The appropriate amount, and mechanics for, distributions to the Sacklers to avoid tracing or liability (including fraudulent transfer liability); and

g.   Non-cash transfers to entities the Sacklers controlled for less than reasonably equivalent value to Purdue, including but not limited to:

    i.   Royalties from international sales of OxyContin by the IACs
    ii.   Transfer of non-ADF OxyContin IP rights from PPLP to PRA LP
    iii.   Transfer of PPLP's equity interest in Infinity Pharmaceuticals Inc. to PRA LP
    iv.   Transfer of PPLP's equity interest in Lucien Holdings Sarl to PRA LP
    v.   PPLP's transfer of equity interest in New Suffolk Holdings LLP to PRA LP
    vi.   PPLP transfer of equity interests in Millsaw Realty L.P. to PRA LP.

**At-Issue Exception Categories for Privilege Claims Belonging to the Sacklers**

Documents subject to the at-issue exception include documents from January 1, 2006 to the present claimed as privileged by the Sacklers concerning:

a.  The Sacklers' claim of the board(s)' alleged "good faith" belief that Purdue's marketing and sales practices with respect to opioids were compliant with applicable laws and regulations;

b.  The Sacklers' claim of an alleged "good faith" belief that Purdue did not face significant litigation risk related to opioids prior to 2017, including  attempts by the Debtors to procure products insurance and director and officer insurance;

c.  The Sacklers' alleged "good faith" belief and/or reliance on counsel with respect to the propriety of cash and non-cash distributions or transfers to the Sacklers and whether such transfers or distributions presented a risk of being deemed fraudulent transfers.

REDACTED

# EXHIBIT 102

8/28/2018    **REDACTED**    Pharmaceutical & Healthcare News from Purdue Pharma L.P.

News & Media

---

## Dr. Craig Landau Appointed President and CEO Purdue Pharma L.P.



**STAMFORD, Conn. – June 22, 2017 –** The Board of Directors of the independently associated worldwide Purdue/Napp/Mundipharma network of companies announces that Dr. Craig Landau is appointed President and CEO for the U.S. operations, Purdue Pharma L.P., headquartered in Stamford, Connecticut, with immediate effect, and will retain responsibility for Purdue Pharma (Canada).

CEO Mark Timney is leaving Purdue to pursue other career opportunities. Mark's tenure was distinguished by his ability to set a visionary goal for the organization, his work to transform the company to a future beyond opioids, and by developing an outstanding talent bench. The Board and Purdue colleagues will miss his professional strategic ability, integrity, and leadership. We thank Mark for his service and will continue to build on the strong foundation he laid during his time here.

Mark joined Purdue Pharma L.P. as President and Chief Executive Officer in 2014, following an impressive career with Merck, where he served in leadership roles for 15 years within the United States and abroad. At Purdue, Mark diversified the company in high-need areas and expanded beyond opioid-based pain treatments through strategic acquisitions and creative partnerships.

During his tenure, Purdue experienced significant diversification in the pain portfolio where the company announced a collaboration with AnaBios to advance the research of non-opioid, non-NSAID compounds for the treatment of chronic pain. Purdue also acquired the innovative, non-opioid, non-NSAID treatment VM-902A and the TrkA program in pain from VM Pharma. Additionally, a $790 million strategic research collaboration with Exicure to discover and develop treatments for psoriasis, a strategic collaboration with Eisai to jointly develop and commercialize the investigational candidate Lemborexant, and an alliance with Shionogi for the joint U.S. launch and commercialization of Symproic® (naldemedine) were all launched under Mark's leadership.

Craig entered the pharmaceutical industry in 1997, and two years later joined Purdue Pharma L.P. Through his 14 years with the U.S. organization, he would eventually become Purdue Pharma L.P.'s Chief Medical Officer and Vice President of R&D Innovation, Clinical and Medical Affairs. In this role and as part of the Company's Management Team, he and the R&D organization he led were responsible for a number of successful health policy initiatives as well as product registrations in the U.S. and other regions, including Butrans®, reformulated OxyContin®, Targiniq® ER and Hysingla® ER.

In 2013, he was appointed President and CEO of Purdue Pharma (Canada). Over the last three years, Purdue Pharma (Canada) has become a more diversified and stable business through the completion of multiple strategic business development transactions, as well as through contributions from its internal R&D function. In addition to a portfolio of approved prescription products for the treatment of pain, Purdue Pharma (Canada) offers prescription treatment options for patients suffering from attention deficit hyperactivity disorder (ADHD), chemotherapy-induced nausea and vomiting (CINV) and ophthalmic conditions, as well as over-the-counter (OTC) laxative, decongestant and antiseptic products.

Craig earned his B.Sc. in Physiology and Anatomy from Cornell University and his M.D. from Mount Sinai School of Medicine. He completed his Anesthesiology residency at Yale University, with specialty training in chronic pain management, obstetric and peripheral vascular anesthesia. He is also a U.S. Army Veteran, having concluded a distinguished 14-year career in 2005.

**About Purdue Pharma L.P.**
Purdue Pharma is a privately-held pharmaceutical company and is part of a global network of independent associated companies known for pioneering research in chronic pain and opioids with abuse deterrent properties. The company's leadership and employees are committed to providing healthcare professionals, patients and caregivers quality products and educational resources to support their proper use. With Purdue Pharma's expertise in drug development, commercialization and life-cycle management, the company is diversifying in high-need areas to expand through strategic acquisitions and creative partnerships. For more information, please visit www.purduepharma.com

**Contacts**
**Media Inquiries:**
Purdue Pharma L.P.
Bob Josephson, 203-588-7114
Robert.Josephson@pharma.com



EXHIBIT

9

tabbies®

PPLPUCC000013176

PPLPUCC000013176

REDACTED

# EXHIBIT 103

# REDACTED

REDACTED

# EXHIBIT 104

REDACTED

SEC Form 4

**FORM 4**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Washington, D.C. 20549

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

☒ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* Beacon Co | 2. Issuer Name **and** Ticker or Trading Symbol INFINITY PHARMACEUTICALS, INC. [ INFI ] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

| (Last)   (First)   (Middle) C/O OGIER HOUSE, THE ESPLANADE ST. HELIER | | Director   X 10% Owner |
| | | Officer (give title below)   Other (specify below) |

| | 3. Date of Earliest Transaction (Month/Day/Year) 04/16/2013 | |

| (Street) JERSEY CHANNEL ISLANDS   JE4 9WG | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) X Form filed by One Reporting Person   Form filed by More than One Reporting Person |

| (City)   (State)   (Zip) | | |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 04/16/2013 | | S | | 5,708,282[1] | D | $38.4 | 0 | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Rosebay Medical Company L.P. held a 50% economic interest on behalf of Beacon Company in one share of the Common Stock sold by Rosebay Medical Company L.P. in the same transaction in which Beacon Company sold its shares.

/s/ Anthony M. Roncalli, as
Assistant Secretary of Beacon   04/16/2013
Company

** Signature of Reporting Person   Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

PURDEBT-COR-0000478

REDACTED

# EXHIBIT 105

SEC Form 4

**REDACTED**

## FORM 4

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Washington, D.C. 20549

| OMB APPROVAL | |
| --- | --- |
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

[X] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) | | |
| --- | --- | --- | --- | --- |
| Rosebay Medical Co L.P. | INFINITY PHARMACEUTICALS, INC. [ INFI ] | Director | X | 10% Owner |
| (Last)    (First)    (Middle) C/O NORTH BAY ASSOCIATES 14000 QUAIL SPRINGS PARKWAY #2200 | 3. Date of Earliest Transaction (Month/Day/Year) 04/16/2013 | Officer (give title below) | | Other (specify below) |
| (Street) OKLAHOMA CITY    OK    73134 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) X  Form filed by One Reporting Person    Form filed by More than One Reporting Person | | |
| (City)    (State)    (Zip) | | | | |

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 04/16/2013 | | S | | 5,708,283[1] | D | $38.4 | 0 | D | |

### Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Rosebay Medical Company L.P. held a 50% economic interest on behalf of Beacon Company in one share of the Common Stock sold by Rosebay Medical Company L.P.

| | |
| --- | --- |
| /s/ Anthony M. Roncalli, as Vice President of Rosebay Medical Company, Inc., the general partner of Rosebay Medical Company L.P. | 04/16/2013 |
| ** Signature of Reporting Person | Date |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

PURDEBT-COR-0000479

REDACTED

# EXHIBITS 106-109

# REDACTED