Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   300 Quarropas Street, Room 248

14                   White Plains, NY 10601

15

16                   February 21, 2020

17                   10:01 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  SHEA

Page 2

1   HEARING re Notice of Agenda/ Agenda for February 21, 2020

2   Omnibus Hearing

3

4   Motion of Debtors for Entry of an Order (I) Authorizing the

5   Rejection of Commercial Lease, (II) Authorizing Entry into

6   New Headquarters Lease, (III) Authorizing the Assumption of

7   Commercial Leases, and (IV) Granting Related Relief

8   (ECF 796)

9

10  Notice of Hearing on Debtors Ex Parte Motion for Entry of an

11  Order Shortening Notice with Respect to Debtors Motion for

12  Authorization to Enter into Development Agreement (related

13  document(s) 825, 824, 826)

14

15  Motion to Authorize / Debtors Motion for Authorization to

16  Enter into Development Agreement [Redacted]

17

18  Application to Employ KPMG LLP as Tax Consultants /

19  Application for Order Authorizing Employment and Retention

20  of KPMG LLP as Tax Consultants to the Debtors and the

21  Official Committee of Unsecured Creditors Nunc Pro Tunc to

22  December 23, 2019 filed by Eli J. Vonnegut on behalf of

23  Purdue Pharma L.P. (ECF 815)

24

25  Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   AKIN GUMP STRAUSS HAUER & FELD LLP

4       Attorneys for UCC

5       One Bryant Park

6       New York, NY 10036

7

8   BY:  SARA L. BRAUNER

9       ARIK PREIS

10      MITCHELL HURLEY

11      EDAN LISOVICZ

12

13  CAPLIN & DRYSDALE

14      Attorneys for Multi-State Governmental Entities Group

15      One Thomas Circle, NW, Suite 1100

16      Washington, DC 20005

17

18  BY:  GEORGE M. O'CONNOR

19

20  PILLSBURY WINTHROP SHAW PITTMAN LLP

21      Attorneys for Ad Hoc Group of Non-Consenting States

22      31 West 52nd Street

23      New York, NY 10019

24

25  BY:  ANDREW M. TROOP

Page 4

1    DAVIS POLK & WARDWELL LLP

2          Attorneys for the Debtors

3          450 Lexington Avenue

4          New York, NY 10017

5

6    BY:  JAMES I. MCCLAMMY

7          MARSHALL HUEBNER

8          TIMOTHY GRAULICH

9

10   OTTERBOURG

11         AHC Counsel

12         230 Park Avenue

13         New York, NY 10169

14

15   BY:  MELANIE L. CYGANOWSKI

16

17   DEBEVOISE & PLIMPTON LLP

18         Attorneys for Beacon Company

19         919 Third Avenue

20         New York, NY 10022

21

22   BY:  JASMINE BALL

23

24

25

```
 1    ALSO PRESENT TELEPHONICALLY:

 2

 3    MICHELLE BURKART

 4    JESSE CLOYD

 5    DONALD E. CREADORE

 6    HEATHER M. CROCKETT

 7    SEAN DALY

 8    SUSAN ELLIS

 9    CAROLINE F. GANGE

10    ERIC M. GOLD

11    TAYLOR B. HARRISON

12    JEREMY HILL

13    JEREMY C. KLEINMAN

14    KELLY V. KNIGHT

15    ANDREA LAW

16    MARK LIGHTNER

17    EDAN S. LISOVICZ

18    BRIAN MASUMOTO

19    ANNA MCDERMOTT

20    GEOFF MULVIHILL

21    S. MICHAEL MURPHY

22    BRETT V. NEWMAN

23    ROBERT P. PADJEN

24    JEREMY PEARLMAN

25    MICHAEL PERA
```

Page 6

1    DANIEL PORAT

2    PAUL SCHWARTZBERG

3    CATRINA SHEA

4    ARTEM SKOROSTENSKY

5    TRUDY SMITH

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            P R O C E E D I N G S

2        THE COURT:  Okay, good morning. In re Purdue

3   Pharma, et al.

4        MR. HUEBNER:  Good morning, Your Honor.  For the

5   record, Marshall Huebner of Davis Polk & Wardwell LLP here

6   on behalf of Purdue and its affiliated debtors.

7        Your Honor, I'm happy to report that we continue

8   to make progress on a variety of important issues, both

9   large and small.  Number one I should note, although there

10  will be a lot of things to talk about, we are gratified that

11  this omnibus hearing is uncontested, which, as I told you on

12  the first day of the case, I view as the mark of success of

13  the hearing, which is due to the hard work of many people.

14        Before turning to the agenda, there are three

15  important updates, but I think that the Court, and to the

16  extent that a few parties don't know about them, should

17  have.  Number one, the Debtors are delighted to announce

18  that Secretary Tom Vilsack has been retained as the monitor

19  as contemplated under and to ensure and report on compliance

20  with to the Debtor's requested and granted self-injunction.

21  Among many other things, Secretary Vilsack was the United

22  States Secretary of Agriculture for eight years and served

23  as a two-term governor of Iowa.

24        And, Your Honor, I won't repeat it, but I

25  discussed at the last hearing the choice of this candidate

1    in particular reflects the very notable respect for creditor

2    views and input that the Debtors brought to this matter.  By

3    the way, actually are beyond what they were required to do

4    under the terms of the injunction itself in terms of

5    consultation rights.  So I think everyone is delighted with

6    Secretary Vilsack.  This is sort of the formal announcement

7    of the appointment.  And we will be issuing a press release

8    later today making it publicly known.

9              THE COURT:  Okay.

10             MR. HUEBNER:  Number two, Your Honor, I hopefully

11   will end up delighted in retrospect as well to announce that

12   yesterday afternoon the Debtors filed a motion to retain the

13   Honorable Layn Phillips and Kenneth Feinberg to jointly

14   mediate a critical issue to all of us, including the Court,

15   that we've been discussing now for many months including

16   Your Honor, from really the opening days of this case, which

17   is the potential of allocation of value in these cases

18   between on the one hand state and local governments, and on

19   the other hand private claimants.

20             This motion is set for March 2nd.  Your Honor was

21   kind enough to give us an extra hearing date yet again in

22   between our omnibuses.  And so I will say nothing more about

23   it, because today is not the day for that.  And I also don't

24   want to sort of say anything that would risk other people

25   feeling they need to make this a mini set of presentations.

Page 9

1    It was a tremendous amount of work by many, many parties to

2    get to the framework.  And we'll talk about it more on March

3    2nd.

4              THE COURT:  Okay.

5              MR. HUEBNER:  Number three, Your Honor, where the

6    news is -- I guess maybe I'm going from totally untraveled

7    to still slightly complicated.  So it's a little bit more

8    complicated, but still nonetheless positive I hope, is news

9    with respect to the ERF.

10             As Your Honor of course knows, at every hearing I

11   comment and I say I desperately hope that will have the

12   motion on file before the next hearing.  There definitely

13   has been progress.  So let me tell you where I think we

14   stand.  Again, nothing is up for today, but because I know

15   it is an issue of great interest to the Court, as many other

16   parties who are not in the rooms where things are behind

17   hashed out, I thought it was appropriate to quickly tell the

18   Court my belief as to where we are.

19             The parties have been exchanging calls, emails,

20   drafts, markups, for several weeks now, virtually on a daily

21   basis.  And I think it's fair to say that the Debtors have

22   tried to serve as cajoler and mediator and facilitator-in-

23   chief.  On the one hand, there has been very substantial

24   progress reconciling views on a wide variety of topics.  The

25   EFR is an issue, understandably, on which there are

1    incredibly strongly and passionately held views as top the

2    appropriate use of the money, and the vehicles for the

3    money, and the oversight and the like.

4         I believe that at base we have shrunk the list of

5    material open issues from what was actually a very large

6    number as recently as even a few weeks ago to a very small

7    number, whether it's, you know, two or three or four.  I

8    don't want to pick a number and then have someone else say

9    it's a different number.  But it's certainly not I think a

10   material number of open issues.

11        On the other hand, and unfortunately, despite

12   weeks of extraordinary sustained effort and engagement by

13   many parties, we are not there yet.  And as I have said more

14   than once before, the passage of time while this money

15   literally sits in a bank account is really intolerably

16   painful I think to many people, certainly not just to the

17   Debtors.

18        And so next week I think the plan is to have an

19   in-person summit at Davis Polk with sort of the core parties

20   who have been negotiating this and to attempt to kind of

21   metaphorically lock everyone in a room and just hope to god

22   that we get something done before people have to leave.

23        If not, then I'm not exactly sure what the way

24   forward is.  It may well be, although I'm not committing to

25   it, that the Debtors actually file a motion and explain sort

Page 11

1    of where we have gotten and what is left.  It may be that a

2    different pathway makes sense.  But either way I think,

3    unfortunately, or fortunately, the Debtors are near the end

4    I think of their ability to bridge the gaps.  And I think

5    after next week, it will probably be no longer productive

6    for us to try to do it unaided, and we'll probably need a

7    different mechanic of some sort to get us over the line.

8    Quite possibly, frankly, it may involve another court, which

9    would not be unusual.

10        But again, that's not up for today, I just wanted

11   to let the Court know so that I didn't get a question like

12   where the heck is the ERF, like, how can this not be done

13   yet.  It is most assuredly not for lack of trying.  And

14   that's true of many parties, not only of the Debtors.

15        THE COURT:  Okay.  The only thing I'll say on that

16   point is -- it's a cliché, but there's a reason why it's a

17   cliché, because it's true.  This is money that should be put

18   to good use, because it really is an emergency relief fund.

19   And people shouldn't let the perfect be the enemy of the

20   good.

21        And I will note that if you do bring it to court,

22   I think it would be under Section 363(b), which has a pretty

23   broad standard that I am on record as saying I don't believe

24   under the Second Circuit caselaw of the statute is the same

25   as a corporate business judgement standard.  It takes into

Page 12

1    account the views of the other parties, but it reflects a

2    policy that decisions just need to be made, and hopefully

3    made in the best interest at the time.  But the Second

4    Circuit is on record in the Orion Pictures case as saying

5    that the judge isn't perfect, and you just do the best you

6    can.

7           So I would hope that the parties would see fit not

8    to leave it up to me and decide themselves.  But I guess if

9    they can't, they won't.  But I would hope that they would be

10   able to reach some sort of agreement, recognizing that this

11   is a one-time payment in one sense, but on the other hand,

12   there's a lot of other value that the Debtors will be

13   distributing in the future.

14           MR. HUEBNER:  We agree, Your Honor.  And again,

15   everyone I think is engaged very intensely and in good

16   faith.  It's just that there are just complicated issues

17   that remain ahead of us.

18           THE COURT:  Okay.

19           MR. GRAULICH:  Your Honor, I think those were the

20   only three off-agenda letter topics I wanted to raise.

21   Obviously there are dozens and dozens of initiatives and

22   work and progress being made, and I think we do try -- these

23   are three more examples of it as far as today's docket which

24   we'll discuss in a few minutes -- to work incredibly hard to

25   build consensus wherever we can to avoid that nature of the

Page 13

1   Court to resolve things and to keep the case moving along as

2   best we know how.

3          With that, Your Honor, I would propose that we

4   turn to the agenda itself.  Mr. Graulich is not through

5   security, and then I think we can turn to Item 1, which is

6   the headquarters base.

7          THE COURT:  Okay.

8          MR. GRAULICH:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10         MR. GRAULICH:  For the record, Timothy Graulich of

11   Davis Polk & Wardwell on behalf of the Debtors.

12         Your Honor, the first item on the agenda this

13   morning relates to the Debtor's headquarters.  And the

14   motion is at Docket 796.  Now, there are no -- we've

15   received no filed objections to the motion, we've received

16   no informal objections to the motion.  But we have received

17   a statement from the Creditor's Committee that raises three

18   important issues.  And I think because -- and we've

19   responded in writing to those issues in ways that we submit

20   are both sort of comprehensive and compelling as to the

21   responses to those three questions.  But just because they

22   are important matters, I would just like to spend a few

23   moments this morning describing the proposed transaction and

24   then walking the Court through our thinking as to why we

25   think this is the transaction that's the best interest of

Page 14

1    the estate.

2            THE COURT:  Okay.  I mean, I've reviewed the

3    pleadings and I understand that there is an agreed order,

4    which I've gone through as well.  To me it seemed that the

5    choice was simply to use the next several months before the

6    lease expires, and the other leases being interlocked with

7    that effort to find new space at a somewhat lower rent

8    during that period, or do you take the new lease with clear

9    reservations of rights at a slightly hither rent, but for a

10   locked-in period without the transition cost or the risk

11   that you won't find new space.

12           MR. GRAULICH:  Yeah.  And, Your Honor, just with

13   respect to the new space.  So we did a pretty comprehensive

14   effort to try and find alternative space.  And it's going to

15   come as no surprise that we're not a prize tenant in the

16   view of m any landlords.  And so that was not -- and through

17   the help of a broker, that was not such an easy process.  In

18   fact, the only -- you know, sometimes you would get halfway

19   through a process and the people would even stop returning

20   your phone calls when they sort of realized who the tenant

21   might be.

22           THE COURT:  Well, and also the only -- it looked

23   like the only available leases were for a longer term than

24   anyone wanted.

25           MR. GRAULICH:  Correct.  A ten-year lease that,

1   frankly, the deposit associated with the ten-year lease was

2   almost the amount equal to the entire rent of this three-

3   year lease.  And so that was -- and this is I think the

4   important message that we want to be able to communicate, is

5   that there was some concern by the Committee that this lease

6   somehow reflected our -- you know, imposing our view of the

7   future on the estates and that maybe we were sort of

8   stealing a base and making decisions that would be properly

9   the providence of the reorganized company.  And not to

10  belabor the point, but that's not at all what's happened

11  here.

12       The alternatives were either a much longer term

13  lease, which actually would have some consequence on the

14  reorganized company, or to sort of roll the dice and

15  potentially have no lease at the end of this year, which

16  also would have -- which would potentially guide in a very

17  negative way how this company may reorganize.

18       THE COURT:  Well, it wouldn't be the end of this

19  year, either.  It would be in April, because that's when the

20  statutory period to assume or reject expires.

21       MR. GRAULICH:  That's correct, Your Honor.  So the

22  why now question is sort of twofold.  Why?  We have April

23  13th imposed by statute.  The evidence submitted from Mr.

24  Lowne is that it would take ten months to sort of go and

25  transition to other space once we have actually found it.

Page 16

1    But the existing lease, even if we wanted to just say let's

2    let it ride, expires at the end of this year.  And so even

3    if we could get an extension, which we tried for and failed

4    to be able to obtain under 364(d)(4), it doesn't get any

5    better.  In fact, our sort of microscopic leverage gets

6    worse the longer we're on the clock.

7             THE COURT:  Okay.  I mean, again, the questions

8    were perfectly legitimate questions to ask, as you ask with

9    any decision that a debtor-in-possession has to make before

10   the business plan has been fully vetted, et cetera.  But I

11   think -- I mean, and this appears to me to be a reasonable

12   exercise (indiscernible).

13            MR. GRAULICH:  Well, as a judge once told me, do

14   you have anything to add before I rule in your favor.  I'm

15   going to take the very strong hint from Your Honor.  I'm

16   happy to walk through -- we filed the revised order last

17   night on the docket at Docket 857.  I was going to suggest

18   to Your Honor that I could hand it up, but it sounds like

19   you already have it.

20            THE COURT:  No, I've been through it.

21            MR. GRAULICH:  So unless you have any questions

22   with respect to the revised order --

23            THE COURT:  I only had one minor question, which

24   is the Debtors have -- they're taking over space that is

25   currently occupied by one of their subs or affiliated

Page 17

1    companies.

2              MR. GRAULICH:  To be clear, it's actually -- it's

3    a non-debtor parent, but yes.

4              THE COURT:  Okay, affiliated company.

5              MR. GRAULICH:  Yes.

6              THE COURT:  Are they going -- do they know where

7    they're going?

8              MR. GRAULICH:  They are -- I don't know the answer

9    to that.  My assumption is they're probably going to be

10   someplace else in the building.  Because right now we have a

11   somewhat complicated relationship with the space in the

12   sense that we have some leases, and some leases we've turned

13   around -- of the sublessor to third parties, and some were

14   the sublessor to related parties.  In other ways with a

15   sublessee from third parties.  This all gets cleaned up as

16   of January 1st, 2021, where it would be clear that we just

17   have the single lease.  Our parent though is going to, as

18   part of a consensual agreement, going to be moving out of

19   the space in July, and so it will be ready for us to take

20   over in January.

21             THE COURT:  Okay.  All right.  Does anyone have

22   anything further to say on this motion?

23             Okay, I'll grant the motion as revised.  I've been

24   through the redline of the proposed order.  And as I said,

25   ideally one wouldn't make any significant changes in your

1   rental footprint or your business footprint until a business

2   plan is largely agreed and you're on the way to actually

3   Chapter 11.  But clearly that can't happen in a large

4   business with real deadlines.  So taking all of the factors

5   into account, this appears to me to be a proper exercise in

6   business judgement.

7           MR. GRAULICH:  Thank you, Your Honor.

8           THE COURT:  Okay.

9           MR. HUEBNER:  Your Honor, that brings us to the

10  next item on the agenda -- apologizes for the 20-second

11  delay -- which is the motion to shorten time with respect to

12  the autoinjector motion.  Your Honor, as we set forth in the

13  notion, we actually worked well in advance of what actually

14  would have been the original filing deadline.  To the extent

15  that we could with parties, we gave as much notice as we

16  could.  We sent people drafts of the motion several days

17  before we filed it.  Frankly -- and it was nonetheless I

18  think still filed on 14 days' notice, which is acceptable

19  for many other types of motions.  I point that out only to

20  show how hard we really are working on this and all topics

21  where we can to bring people into the tent and not jam

22  anybody.

23          The motion is unopposed, and so I don't think I

24  need to belabor it.  We ask that the motion to expedite be

25  granted.

1          THE COURT:  Okay.  I'll grant the motion.  As you

2     all know, when I get motions to shorten notice, I make one

3     of two decisions at that moment.  Either it appears to me

4     just a nonstarter to shorten notice, or it may well make

5     sense, but only enough to schedule the hearing on the

6     underlying relief at the same time as the hearing on the

7     motion to shorten notice, and that at least gives parties

8     some additional time to complain about shortened notice.

9     And there are no complaints here, and I think that's

10    consistent with the timetable for running out this

11    initiative and the stages that it contemplate.

12          MR. HUEBNER:  Thank you, Your Honor.

13          The second thing I'd like to do, now turning to

14    the motion itself, is move for the admission of the

15    declaration of Mr. John Lowne, who obviously is in the

16    courtroom today.  I don't intend to put him on the witness

17    stand.  I don't think anyone has questions for him.  There

18    are no actual objections.

19          THE COURT:  Okay.

20          MR. HUEBNER:  But we obviously do as always try to

21    present an appropriate evidentiary record, even if a motion

22    is not opposed.

23          THE COURT:  Right.  I've reviewed that

24    declaration.  Does anyone want to question Mr. Lowne?

25          Okay, so I'll admit it as his direct testimony.

1          MR. HUEBNER:  Sure, Your Honor.  So let me turn to

2    the two statements and provide a little bit of what I think

3    is important background.

4          So, Your Honor, we were contacted by both the UCC

5    and the ad hoc committee of consenting states, but obviously

6    we've talked to others as well.  But in particular there was

7    a fairly robust dialogue which we fully resected and

8    actually welcomed about double-checking that we had ensured

9    that like the conversation you just had about the lease with

10   Mr. Graulich, that we were not actually moving to lock in

11   some huge, weighty thing that reflected a vision of the exit

12   or a post-emergence life of the company to which other

13   creditors have not yet brought in, and which is not the

14   subject, as Your Honor noted, of a business plan and a file

15   of reorganization that we believe has requisite support.

16         The good news is that we've tried to do our jobs

17   well.  And as I think parties realize, we had actually

18   already negotiated into the contract all the things that we

19   believe that we needed to ensure that we were actually not

20   locking anything sort of tectonic and level into the case at

21   all.  And Your Honor obviously has an unredacted version of

22   the motion.  Even the redacted version makes clear that the

23   Debtors have a termination right at any time in their sole

24   discretion on X days' notice for a termination fee of Y

25   dollars.  The X days' notice is a quite reasonable and

Page 21

1   appropriate number of days.  And the dollars that we

2   negotiated, we and ultimately others got comfortable with.

3          So I do want to be clear that we are working very

4   hard to walk the difficult tightrope of advancing many

5   things that we believe are necessary and very much in the

6   public good while at the same time fully -- not just

7   slightly -- acknowledging that at the end of the day, you

8   know, a plan of reorganization will need to be supported by

9   a very substantial majority of creditors for end-stage

10  issues and permanent continued work.

11         The dollars to be spent under this contract in

12  2020 in particular compared to the Debtor's $1.369 billion

13  cash balance announced in yesterday's monthly operating

14  report -- that includes both restricted and unrestricted.

15  And I think unrestricted is maybe $1.190 billion as opposed

16  to in the monthly operating report.  Suffice it to say that

17  it is a relatively modest amount for something that we

18  believe is extremely critical.

19         What the Creditor's Committee and the Ad Hoc

20  Committee of Supporting States asked us for was they said,

21  you know, okay, we're not going to object, we get it.  But

22  we want monthly reporting, we want to see what's happening

23  with this product, we want to see what's happening with the

24  spend, et cetera.  To which we said of course.  Didn't have

25  to ask.  I mean, we interact with our sort of key

1   stakeholders and financial advisors pretty much every day

2   anyway, so it was not a big deal at all.

3         We actually added ourselves to their request that

4   we want to meet with you quarterly about all of this.

5   Because in fact a lot of this is ultimately pharmacological

6   and pharmacokinetic and regulatory-based.  And it's not just

7   about how many dollars did you spend that an FA looks at and

8   says are you above of, you know, behind budget.

9         The question is more fundamental, which is, does

10  the world still need this product?  Is it still racing ahead

11  in a way that we think makes sense?  You know, what is the

12  ultimate potential disposition of the product?  And

13  obviously the contract also provides for ways that the

14  product and the contract can be transferred to others.

15  Again, keeping optionality open for any number of end-stage

16  possibilities, which is what we did.

17        So if you look at the proposed revised order that

18  we filed late last night, you will see the addition.  It's a

19  provision that was easy for us to give that essentially

20  gives information as requested, our suggestion of quarterly

21  meetings, and such other information as I think the parties

22  shall reasonably request, which we were fine with.

23        The Committee filed a statement on the docket

24  which, candidly, we just have no problem at all with.  We

25  mostly agree with it.  I mean, I'm not going to countersign

Page 23

1   it, but the fundamental gestalt of the pleading of for the

2   avoidance of doubt because of the exit ramps and because of

3   the continuous reevaluation and because at the end of the

4   day this does not put not only a thumb, but a hand on the

5   scale for really anything about one way or the other.  Right

6   now is a relatively low-cost option to develop a potential

7   life-saving drug.  But we'll see where we are in March and

8   April and May and June.  Totally agree.

9           I mean, as Your Honor I hope noted, no changes to

10  the contract were required or demanded by anyone because

11  they actually saw that we did our job just fine because

12  actually we get it also.  And so we're happy to provide that

13  cooperation.

14          I need to apologize to Mr. Troop.  He asked me

15  this before the hearing, if the dissenting states could have

16  the same package as well.  I just didn't have the time to

17  talk to the clients.  We'll talk about that during a brief

18  break and we'll figure it out, but we are sort of find with

19  that.

20          Unfortunately, the pleading of the dissenting

21  states is substantially more complicated.  And I think that

22  because it states kind of medical facts and historical facts

23  in it that are highly relevant to the product, I need to

24  spend just a few minutes explaining to the Court our view on

25  some of the things that we just find maybe confusing and

Page 24

1    very unfortunate would be the best words to use.

2            So number one is they tell us that this is a,

3    quote, speculative product.  Speculative use of produced

4    resources I think is that quote.  So, Your Honor, I do want

5    to be clear -- and I brought lots of things.  I probably

6    won't offer to him most of them up unless the Court wants.

7    But the FDA is actually the regulatory agency charged with

8    deciding when and how products should be pursued.  And under

9    Section 506(b) of the Food, Drug, and Cosmetics Act, the FDA

10   only designates a drug as a fast-track product if, and I

11   quote, "It is intended, whether alone or on combination with

12   one or more other drugs for the treatment of a serious or

13   life-threatening disease or condition and it demonstrates

14   the potential to address unmet medical needs for such a

15   disease or condition."

16           So when earlier in 2019 the FDA granted fast-track

17   status to our autoinjector nalmefene product, that was

18   actually a very big deal, because it's the Agency's view

19   that this should proceed.  The FDA also granted competitive

20   generic treatment to our two other nalmefene initiatives.

21   There is a pre-filled syringe and then there's an actual

22   little glass ampule that you draw from.

23           This doesn't mean we know it's going to work.

24   Obviously it's a product in development.  But the question

25   is, is it worth pursuing.  And fast-track designation, while

Page 25

1    I certainly don't want to overstate it, is not irrelevant to

2    the equation of the people whose job it actually is to

3    figure out whether a drug company should be pursuing a

4    medication.

5            Second, they say, and I quote, "Although nalmefene

6    itself has yet to be determined safe and effective and may

7    not ultimately prove a successful reversal drug."  This

8    statement is flatly false.  It is patently and flatly false.

9    In 1995 the FDA approved Nalmefene as a safe and effective

10   product for the specific, among others, of the reversal of

11   opioid overdose.  Period.  The statement is just false.

12           In 2008, because I'm assuming fentanyl and

13   carfentanil fortunately were not yet on the scene killing

14   people, the company decided that there was no commercial

15   market for their product, and they withdrew.  IT was largely

16   used in operating rooms at the time.  I think if there was

17   sort of like a little too much opioid, it was used for that.

18   And there just wasn't a market for it.

19           In 2017, because someone asked them, the FDA

20   recertified -- or I'm not sure what the right word is, but

21   issued a formal statement that the withdrawal of the drug

22   from the market was not for safety or efficacy reasons at

23   all and that they stood ready to approve generics and other

24   medications based on the formulation.  So the statement that

25   it's not safe and effective is false, and that it may not

1    prove successful as a reversal drug is false.  That's just

2    what the FDA tells you.  And again, I have it all right

3    here.  So if anybody wants to see it and the Court, I'm

4    happy to hand it up.

5              And then they go on to say, to make it worse, at

6    least -- and this is the same sentence.  I'm just continuing

7    reading.  "At least two other companies in the United States

8    are developing Nalmefene-based treatments, and Nalmefene-

9    based products are already on the market in Europe."  I

10   mean, I guess the best you can say is that statement is

11   facially true.  But now let's talk about it.  And in one of

12   them you sort of have to read the footnote.

13             So there are in fact two companies in the U.S.

14   developing Nalmefene-based treatments.  One of them is a 30-

15   day shot that is used for opioid addiction therapy.  It has

16   nothing to do with emergency rescue, it has nothing to do

17   with opioid overdose.  It is an extended release emergency -

18   - sorry, non-emergency -- an extended release addiction

19   therapy drug.

20             The product in Europe -- first of all, I'm not

21   really sure the relevance in fact that some Nalmefene

22   product is approved in a different country.  But what they

23   actually don't tell you is that it's actually a high dose

24   oral pill that you take before ingesting alcohol for alcohol

25   use disorder.  It has nothing in the world to do with opioid

Page 27

1    overdose rescue.

2            So to say kind of, you know, not only is this

3    product totally questionable, but three other companies are

4    working on it.  We've now addressed two of those companies.

5            Now let's talk bout the third.  So they are right,

6    there is one company in the United States that is actually

7    working on nalmefene as a potential rescue drug besides

8    Purdue.  One other company that we know of.  That company is

9    Opiant.  So as I said before, the 1995 approval of nalmefene

10   by the FDA approved it as an injection either

11   intramuscularly or by IV.  It did not approve it for any

12   other delivery methodologies.  What Opiant is actually

13   working on is a 3 milligram nasal spray, but I'm obviously

14   not going to get into the science.  I'm just going to hand

15   you Opiant's 8-K from January 2019 where the FDA told them

16   to stop their study.  And they had to issue an 8-K so

17   telling.

18           So we obviously desperately hope that Opiant's

19   product gets back to review under whatever the FDA comment

20   letter is that told them to stop.  Because unlike Purdue,

21   which is only working on injectable forms that match the

22   1995 FDA approval for safe and effective and indicated for

23   opioid overdoes, obviously we would love there to be

24   multiple products on the market that have the ability to

25   help save lives, and we hope that the one other product that

Page 28

1    is currently under development using a new delivery

2    methodology that has never been approved by the FDA that was

3    in the middle of being tested, before that test shuts down,

4    ultimately proves potentially valuable.

5           So, you know, again, we're all here trying to do

6    the best we can to address the terrible opioid crisis.  But

7    the notion that injectable nalmefene -- and again, Your

8    Honor, the Lowne Declaration -- and I'm not going to belabor

9    it because it's obviously unopposed and I know Your Honor

10   read everything -- is very clear as to why Nalmefene has the

11   potential to be such an unbelievably critical drug, because

12   the half-life of Narcan, which is the brand name for

13   naloxone, which is the current nasal approved overdose drug,

14   is simply nowhere near long enough to deal with carfentanil

15   or fentanyl or other fentanyl.  So what happens is, you

16   know, someone will, god forbid, overdose.  And then you

17   insert an opioid antagonist which will reverse their

18   respiratory depression/rest.  But if they're still loaded

19   with fentanyl, then the fentanyl extends past the life of

20   the Narcan, and they go right back into respiratory arrest.

21   And if you don't have a second dose of Narcan -- and, you

22   know, how many people have two, let alone one, the fentanyl

23   simply overwhelms the Narcan, and they die.  They can get up

24   and walk away and seem fine, and just drop an hour later.

25          So a drug that is way more powerful with an

Page 29

1    extended half-life -- and the whole point of the

2    autoinjector -- again, to sort of talk about it for a

3    second.  You know, many types of delivery systems simply

4    cannot be used by non-trained medical personnel.  If I

5    handed most people in this courtroom a syringe and a glass

6    ampule and said please administer this if you see someone

7    overdosing, that's obviously a nonstarter.  It's also

8    unlawful.  Right?  And the same is even true with a pre-

9    filled syringe which has largely in-hospital and ambulance

10   applications, not necessarily sort of regular citizen

11   applications.  The autoinjector, like an EpiPen, is

12   literally potentially usable by anybody.  You just slam it

13   into the thigh.  The short, high-bore needle shoots out.  It

14   injects the dose.  There's no blood, there's no cleanup,

15   there's no alcohol swabs.

16          And so if it were to be the case -- and Purdue is

17   also working, by the way -- in other words, it's not also

18   right to quote anyone else could do this.  In fact, no one

19   else is doing it.  Purdue is actually working to radically

20   improve the delivery time and dosage of Nalmefene.  That's

21   the magi that people are desperately trying to get to, which

22   is super high dose, immediate acting, long half-life

23   antidote strong enough to overcome fentanyl.

24          So, again, the good news is it's uncontested.  But

25   because there were a variety of things stated in here that

1    are just simply not correct, and because they sort of

2    suggest that Purdue is on a frolic that it shouldn't be

3    doing and other people are doing and should be doing

4    instead.  And because it's just so wrong on the facts -- and

5    actually if you read their footnotes slowly and carefully,

6    you'll actually kind of see that.  Because they actually in

7    fact admit that one of them is the sustained release for the

8    treatment of addiction, which obviously is not what we're

9    working on.  We're working on emergency medications for

10   reversal.

11          The last thing, Your Honor, which we just sort of

12   continue to find upsetting and mystifying, candidly, is

13   something that in a pleading that's only three pages long

14   they say sort of two or three times, which is Purdue should

15   not be working on things like this.  You know, essentially

16   because it did, in our view, grievous wrong in the past, it

17   should not be allowed to do right in the future.  And that's

18   just not a vision we share.  And, you know, it's sort of

19   chillingly reminiscent to me of maybe the only time I've

20   ever seen Your Honor just fully and visibly upset, at the

21   injunction hearing, when there were flavors of we'll just

22   wait out the injunction and then come back and get back to

23   sort of the maelstrom that we allege would destroy all the

24   value here.

25          So, Your Honor, here's what I would say.  Our

Page 31

 1   vision, which I articulate at almost every hearing, is very

 2   simple and very straightforward.  To try to look as little

 3   as we can into the past and instead to focus on maximizing

 4   the value of these companies and dedicating one hundred

 5   percent of that value to ameliorating, addressing, bating,

 6   and compensating for the opioid crisis.  We are working on a

 7   medication that we believe has the ability to be incredibly

 8   important.  And if we learn in April or March or May or June

 9   or July that has ceased to be the case, we will shut it down

10   and instead preserve the money for whatever other

11   initiatives we and our creditors think makes sense.  But for

12   people to say that inherently we shouldn't be trying to aims

13   towards that north star, which I believe by the way is what

14   is actually required by Title 11, Chapter 11 of the United

15   States Code, which is to Maximize the value of the estate

16   for the parties in interest.  You know, that I think is very

17   difficult for us to swallow.

18            So at the end of the day, I apologize.  It may

19   seem really strange to bring eight exhibits for an

20   uncontested motion, but the statement was much more than

21   that, candidly.  And again, it's to some extent a question

22   of just seriously conflicting visions that keeps coming up.

23   We are trying to save lives and do good, and we know

24   everyone is on that same endeavor.  We believe that

25   proceeding with a low-cost option on this product while

Page 32

1    letting our creditors continually work with us to reassess

2    the propriety of continuing, or pulling quite an expensive

3    ripcord and doing something else instead, is without any

4    question the appropriate way to proceed.

5            THE COURT:  Okay.  Well, there are no real issues

6    for me to determine today, right?

7            MR. TROOP:  Do you want to hear from me, Your

8    Honor?

9            THE COURT:  I don't think so.  I don't think I

10   need to.  I think basically Mr. Huebner was responding to

11   some statements in a pleading that Debtors disagree with.

12           I'll make one note, which is obviously the FDIC --

13   the FDIC...

14           MR. HUEBNER:  That's (indiscernible), Your Honor.

15           THE COURT:  Yeah, I know.  A different agency.

16   The FDA is charged with protecting the public with respect

17   to the development of new drugs.  That being said, there

18   have been allegations made that, at least in the past, these

19   Debtors misled the FDA and others about the drugs.  Does

20   that mean the FDA is absolved of not doing its job or people

21   relying on the FDA?  That's not really what I'm trying to

22   get into.

23           The point I'm trying to say is that one of the

24   reasons I thought it was advisable to have a monitor is that

25   you have someone who literally has no history whatsoever

Page 33

1    with these debtors, is entirely neutral, and whose judgment

2    is well-respected.  And if that person believes that the

3    debtors are going down a path where they're pulling the wool

4    over the FDA's eyes, he should stop it.  And people have the

5    ability to reach out to him and say, you know, have you

6    thought of X, Y, or Z as part of that process.

7            So I think, frankly, history does matter here,

8    although the history hasn't really been written on this

9    company.  And the whole purpose of this bankruptcy is to

10   leave the history for the future.  I hope that didn't sound

11   like Yogi Berra, but it will be written at some point.  But

12   in the meantime, as everyone recognizes, the value in this

13   company should be put to good use.

14           And so I think the motion, again, with the close

15   attention paid to it by the key ad hoc committees as well as

16   the Creditor's Committee not only to the motion itself, but

17   to the runout of this program added to it, is a proper

18   exercise of business judgement, both in terms of dollars and

19   cents and the ability to pull the plug if that use doesn't

20   make sense, and also recognizing the unique nature of this

21   business, which is that the Debtors do have the ability,

22   subject to proper review and monitoring, starting with the

23   FDA, but including other -- you know, including a monitor,

24   including parties in the case, to provide value for their

25   constituents that is not just a dollar, but hopefully, or at

Page 34

1    least one hopes, you know, orders of magnitude on a dollar

2    through the at cost or slightly above cost delivery of drugs

3    that can treat opioid -- either opioid overdoses or

4    addiction.

5            So I think the Committee asked the right

6    questions.  The Debtors are asking them also.  The Committee

7    laid out three scenarios where this clearly makes sense,

8    recognizing that there may be scenarios where it doesn't

9    make sense.  And all things considered, again, focusing on

10   the Second Circuit precedent, the judge can only do what he

11   or she can.  You can't determine the future; you can just

12   predict it.  But based on the record before me and the

13   status of this case, this makes I think good business sense

14   to pursue.

15           MR. HUEBNER:  Thank you, Your Honor.  And during

16   that moment I was able to confirm with Mr. Kesselman that we

17   are happy to include the dissenting states as well in the

18   quarterly meetings and provision of information.  Again, the

19   goal is to have everybody get ever more comfortable that

20   we're doing only the right things and not things that don't

21   make sense.  And I think there's no -- despite the way we

22   got to this hearing, which is not how I would have had it,

23   there's no reason not to proceed as productively as we can

24   once again.

25           Your Honor, that I think brings us to -- Mr.

Page 35

1    Price, did you want to say anything or not?  Okay.  Your

2    Honor, I think that's --

3              THE COURT:  So you're going to revise the order.

4              MR. HUEBNER:  Yeah, we'll revise the order, just

5    add --

6              THE COURT:  Often when I combine the hearing on a

7    motion to shorten with the ultimate relief, I just deal with

8    both motions and the one order.  So you might want to mark

9    up the order to reflect that.

10             MR. HUEBNER:  Oh, okay.  I think we had submitted

11   two separate orders already.  But if the Court's preference

12   is --

13             THE COURT:  Did you -- I didn't see the second

14   one.

15             MR. HUEBNER:  We'll merge them, absolutely.  So

16   that brings us to the last item on the agenda, which I think

17   is truly, truly uncontested, which is the KPMG retention

18   where he'll also -- we're just working hard to save the

19   estate's money and proceed efficiently and do things that

20   are frankly unusual in terms of sharing advisor and

21   potentially letting others have information.  Again, I don't

22   want the fundamental ethos of how we keep trying to proceed

23   on issue after issue, which is very consensus-driven, very

24   speed-driven, very cost-effective driven, and frankly,

25   hopefully very saving-lives-driven to be lost in --

1          THE COURT:  And by the way, when you say we, I

2     think you're including not just the Debtors, but the --

3          MR. HUEBNER:  Of course.

4          THE COURT:  -- official committee and the other

5     committees, too.

6          MR. HUEBNER:  Yeah.

7          THE COURT:  Okay.

8          MR. HUEBNER:  I all but served as the official

9     committee's press agent on their filing.  I hope that I did

10    not misdescribe it in any way.  And certainly, as I said,

11    when I say we, that's literally what I meant, since in this

12    case it is a joint retention application --

13         THE COURT:  Right.

14         MR. HUEBNER:  -- with other parties also

15    participating in an agreed form in order to save the estate

16    money.  So with that, let me turn the podium over to Mr.

17    Robertson.

18         MR. ROBERTSON:  Good morning, Your Honor.  For the

19    record, Chris Robison of Davis Polk & Wardwell on behalf of

20    the Purdue debtors.

21         The fourth and final item on today's agenda is the

22    Debtor and the Committee's joint retention of KPMG as tax

23    consultants.  This is Docket Number 815.

24         The Debtors and the Committee have determined that

25    they require the services of tax consultants in order to

Page 37

1    evaluate the tax implications of various potential

2    restructuring alternatives with respect to any disposition

3    of the assets or the stock of company's own or control by

4    shareholders of the Debtors, which is what we call the IACs

5    in connection with these Chapter 11 proceedings.

6            In order to control costs, the Debtor and the

7    Committee propose to jointly retain KPMG for this role.  The

8    matter is uncontested.  We've received informal comments

9    from the United States Trustee, in response to which we and

10   KPMG and the Committee have agreed to modify Paragraph 7 of

11   the proposed order.  That's on Page 4.  This is the

12   paragraph modifying the indemnification provisions in the

13   engagement letter.

14           THE COURT:  Right.

15           MR. ROBERTSON:  And I believe Mr. Masumoto and Mr.

16   Schwartzberg are on the phone as well.

17           THE COURT:  That's -- is there a provision beyond

18   the redline that I got, or is that reflecting the comments?

19           MR. ROBERTSON:  Your Honor, I don't believe we

20   filed a redline of the proposed order.

21           THE COURT:  No, I have a --

22           MR. ROBERTSON:  And this is the change to

23   Paragraph 7.  It just -- it's literally just conforming the

24   language to the language that the U.S. Trustee's office for

25   Region 2 prefers in this paragraph.  There's no other

1    changes.

2              THE COURT:  Okay, fine.  All right.  I mean, I

3    actually was very impressed by the indemnification language

4    in the proposed order.  I thought it was beyond what is

5    normally in.  So I would hope it -- frankly, I would like to

6    use it as a new template.  So I hope that how you changed it

7    doesn't dilute that.

8              MR. ROBERTSON:  No, Your Honor.  Full disclosure,

9    I believe the language that was in the proposed order is the

10   Delaware standard.

11             THE COURT:  Okay, fine.  There you go.

12             MR. ROBERTSON:  So unless Your Honor has any

13   questions for --

14             THE COURT:  I'm sorry.  What I want to make sure

15   is that the change you're referring to doesn't dilute what's

16   in...

17             MR. ROBERTSON:  No, Your Honor.

18             THE COURT:  Okay.

19             MR. ROBERTSON:  And again, I'm happy to hand up a

20   blackline just so we're on the same page.

21             THE COURT:  All right.  Well, I'll just look at it

22   and compare the two.  That's fine.  I understand the reasons

23   for the changes from the agreement.

24             MR. ROBERTSON:  That's the only change, Your

25   Honor.  Unless Your Honor has any other questions, we

Page 39

1    respectfully request that the relief be approved.

2              THE COURT:  Okay.  Does anyone have anything to

3    say on the application?  All right.  I'll grant the

4    application.  The proposed order appropriately deals with

5    the indemnification and cap on liability, those types of

6    provisions that we routinely modify in retention orders.  So

7    you can email the final version of that order to chambers.

8              MR. ROBERTSON:  Thank you, Your Honor.  And I

9    believe that concludes today's agenda.

10             THE COURT:  Okay.  Can I say one more thing?

11   Totally different topic than what we've been talking about,

12   but I think it's important.  And it's prompted in part by my

13   review of the recent circuit opinion and the briefing for it

14   where I was actually affirmed, but it was troubling,

15   particularly in the briefing.

16             If this case is going to achieve what I think the

17   parties hope it can achieve, the issue of third party

18   releases and exculpations will be front and center.  And I

19   appreciate that we're not there yet.  But I am concerned

20   that in other cases going to the circuit, parties in

21   interest, including the Federal Government, including the

22   U.S. Attorney, are asserting that the Bankruptcy Court does

23   not have the power to approve a third party release under

24   the caselaw, which says those releases are hard to obtain,

25   but does not have the power to issue a third party release

1    as part of its core jurisdiction in confirming a Chapter 11

2    plan.  I think that is a huge error of law and a huge

3    mistake to assert.  And you all who represent debtors should

4    be mindful of this.  Among other things, I think the caselaw

5    is being miscited, the Second Circuit's own caselaw.  And,

6    frankly -- you mentioned Delaware earlier -- the Third

7    Circuit got it entirely right in the Millennium case.  We

8    just need to be aware of this.

9             And I would strongly urge -- I don't know if

10   there's anybody here from the U.S. Attorney's office.  But

11   before they take this position again, a focus on cases like

12   this where the only way to get true peace, if the parties

13   are prepared to support it and not fight it in a meaningful

14   way, is to have a third party release as part of

15   confirmation of a plan with all of confirmation's

16   protections.  And, you know, just be mindful that these

17   issues are bubbling up in other cases, such as the

18   (indiscernible) case that just came down where the U.S.

19   Attorney's office took that position notwithstanding that

20   every release that I'm aware of in the Southern District

21   carves them out.

22             MR. HUEBNER:  Your Honor, to give the Court

23   comfort, I think suffice it to say that Davis Polk is

24   actually tracking virtually with an electron microscope all

25   cases that come out of this area.  We're not unaware --

Page 41

1          THE COURT:  You may need to do more than track.

2    You may need to file an amicus to counteract some of the --

3    well, I'm just leaving at that, to counteract the --

4          MR. HUEBNER:  I don't know if the world wants a

5    Purdue Pharma amicus, but we'll have to take that one under

6    advisement.  Maybe we'll leave history to the future.

7          THE COURT:  Maybe those firms that routinely

8    practice in this area should realize that the law can really

9    be -- there's a chance at least that the law can be

10   perverted here.  I'm not saying the Second Circuit is going

11   to buy the arguments.  But if the only people making them

12   are making them on the other side, sometimes it's easy to

13   make a mistake.

14         MR. HUEBNER:  Yeah.  Understood, Your Honor.  And

15   thank you for the guidance.

16         THE COURT:  Okay.  Thank you.

17         (Whereupon these proceedings were concluded at

18   10:52 AM)

19

20

21

22

23

24

25

1                        **I N D E X**

2

3                        **RULINGS**

4                                              **Page        Line**

5

6    **Headquarters Motion Granted**             **17**         **23**

7    **Motion to Shorten Time Granted**          **19**         **1**

8    **KPMG Retention Motion Granted**           **39**         **3**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 43

1                C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya

7    Landanski Hyde

Digitally signed by Sonya Landanski
Hyde
DN: cn=Sonya Landanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2020.02.25 11:40:15 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 24, 2020

[& - apologize]                                                                                    Page 1

**&**

**&**   3:3,13 4:1,17
   7:5 13:11 36:19

**1**

**1**   13:5 42:7
**1.190**   21:15
**1.369**   21:12
**10017**   4:4
**10019**   3:23
**10022**   4:20
**10036**   3:6
**10169**   4:13
**10601**   1:14
**10:01**   1:17
**10:52**   41:18
**11**   18:3 31:14,14
   37:5 40:1
**1100**   3:15
**11501**   43:23
**13th**   15:23
**14**   18:18
**17**   42:6
**19**   42:7
**19-23649**   1:3
**1995**   25:9 27:9,22
**1st**   17:16

**2**

**2**   37:25
**20**   18:10
**20005**   3:16
**2008**   25:12
**2017**   25:19
**2019**   2:22 24:16
   27:15
**2020**   1:16 2:1
   21:12 43:25
**2021**   17:16
**21**   1:16 2:1
**23**   2:22 42:6
**230**   4:12
**24**   43:25

**248**   1:13
**2nd**   8:20 9:3

**3**

**3**   27:13 42:8
**30**   26:14
**300**   1:13 43:22
**31**   3:22
**330**   43:21
**363**   11:22
**364**   16:4
**39**   42:8

**4**

**4**   16:4 37:11
**450**   4:3

**5**

**506**   24:9
**52nd**   3:22

**7**

**7**   37:10,23
**796**   2:8 13:14

**8**

**8**   27:15,16
**815**   2:23 36:23
**824**   2:13
**825**   2:13
**826**   2:13
**857**   16:17

**9**

**919**   4:19

**a**

**ability**   11:4 27:24
   31:7 33:5,19,21
**able**   12:10 15:4
   16:4 34:16
**absolutely**   35:15
**absolved**   32:20
**acceptable**   18:18
**account**   10:15
   12:1 18:5

**accurate**   43:4
**achieve**   39:16,17
**acknowledging**
   21:7
**act**   24:9
**acting**   29:22
**actual**   19:18
   24:21
**ad**   3:21 20:5
   21:19 33:15
**add**   16:14 35:5
**added**   22:3 33:17
**addiction**   26:15
   26:18 30:8 34:4
**addition**   22:18
**additional**   19:8
**address**   24:14
   28:6
**addressed**   27:4
**addressing**   31:5
**administer**   29:6
**admission**   19:14
**admit**   19:25 30:7
**advance**   18:13
**advancing**   21:4
**advisable**   32:24
**advisement**   41:6
**advisor**   35:20
**advisors**   22:1
**affiliated**   7:6
   16:25 17:4
**affirmed**   39:14
**afternoon**   8:12
**agency**   24:7 32:15
**agency's**   24:18
**agenda**   2:1,1 7:14
   12:20 13:4,12
   18:10 35:16 36:21
   39:9
**agent**   36:9
**ago**   10:6
**agree**   12:14 22:25
   23:8

**agreed**   14:3 18:2
   36:15 37:10
**agreement**   2:12
   2:16 12:10 17:18
   38:23
**agriculture**   7:22
**ahc**   4:11
**ahead**   12:17 22:10
**aims**   31:12
**akin**   3:3
**al**   7:3
**alcohol**   26:24,24
   29:15
**allegations**   32:18
**allege**   30:23
**allocation**   8:17
**allowed**   30:17
**alternative**   14:14
**alternatives**   15:12
   37:2
**ambulance**   29:9
**ameliorating**   31:5
**amicus**   41:2,5
**amount**   9:1 15:2
   21:17
**ampule**   24:22
   29:6
**andrea**   5:15
**andrew**   3:25
**anna**   5:19
**announce**   7:17
   8:11
**announced**   21:13
**announcement**
   8:6
**answer**   17:8
**antagonist**   28:17
**antidote**   29:23
**anybody**   18:22
   26:3 29:12 40:10
**anyway**   22:2
**apologize**   23:14
   31:18

apologizes 18:10
appears 16:11
  18:5 19:3
application 2:18
  2:19 36:12 39:3,4
applications
  29:10,11
appointment 8:7
appreciate 39:19
appropriate 9:17
  10:2 19:21 21:1
  32:4
appropriately
  39:4
approval 27:9,22
approve 25:23
  27:11 39:23
approved 25:9
  26:22 27:10 28:2
  28:13 39:1
april 15:19,22
  23:8 31:8
area 40:25 41:8
arguments 41:11
arik 3:9
arrest 28:20
artem 6:4
articulate 31:1
asked 21:20 23:14
  25:19 34:5
asking 34:6
assert 40:3
asserting 39:22
assets 37:3
associated 15:1
assume 15:20
assuming 25:12
assumption 2:6
  17:9
assuredly 11:13
attempt 10:20
attention 33:15

attorney 39:22
attorney's 40:10
  40:19
attorneys 3:4,14
  3:21 4:2,18
authorization
  2:12,15
authorize 2:15
authorizing 2:4,5
  2:6,19
autoinjector
  18:12 24:17 29:2
  29:11
available 14:23
avenue 4:3,12,19
avoid 12:25
avoidance 23:2
aware 40:8,20

b

b 1:21 5:11 11:22
  24:9
back 27:19 28:20
  30:22,22
background 20:3
balance 21:13
ball 4:22
bank 10:15
bankruptcy 1:1
  1:12,23 33:9
  39:22
base 10:4 13:6
  15:8
based 22:6 25:24
  26:8,9,14 34:12
basically 32:10
basis 9:21
bating 31:5
beacon 4:18
behalf 2:22 7:6
  13:11 36:19
belabor 15:10
  18:24 28:8

belief 9:18
believe 10:4 11:23
  20:15,19 21:5,18
  31:7,13,24 37:15
  37:19 38:9 39:9
believes 33:2
berra 33:11
best 12:3,5 13:2
  13:25 24:1 26:10
  28:6
better 16:5
beyond 8:3 37:17
  38:4
big 22:2 24:18
billion 21:12,15
bit 9:7 20:2
blackline 38:20
blood 29:14
bore 29:13
bout 27:5
brand 28:12
brauner 3:8
break 23:18
brett 5:22
brian 5:18
bridge 11:4
brief 23:17
briefing 39:13,15
bring 11:21 18:21
  31:19
brings 18:9 34:25
  35:16
broad 11:23
broker 14:17
brought 8:2 20:13
  24:5
bryant 3:5
bubbling 40:17
budget 22:8
build 12:25
building 17:10
burkart 5:3

business 11:25
  16:10 18:1,1,4,6
  20:14 33:18,21
  34:13
buy 41:11

c

c 3:1 5:13 7:1 43:1
  43:1
cajoler 9:22
call 37:4
calls 9:19 14:20
candidate 7:25
candidly 22:24
  30:12 31:21
cap 39:5
caplin 3:13
carefully 30:5
carfentanil 25:13
  28:14
caroline 5:9
carves 40:21
case 1:3 7:12 8:16
  12:4 13:1 20:20
  29:16 31:9 33:24
  34:13 36:12 39:16
  40:7,18
caselaw 11:24
  39:24 40:4,5
cases 8:17 39:20
  40:11,17,25
cash 21:13
catrina 6:3
ceased 31:9
center 39:18
cents 33:19
certainly 10:9,16
  25:1 36:10
certified 43:3
cetera 16:10
  21:24
chambers 39:7
chance 41:9

change 37:22
  38:15,24
changed 38:6
changes 17:25
  23:9 38:1,23
chapter 18:3
  31:14 37:5 40:1
charged 24:7
  32:16
checking 20:8
chief 9:23
chillingly 30:19
choice 7:25 14:5
chris 36:19
circle 3:15
circuit 11:24 12:4
  34:10 39:13,20
  40:7 41:10
circuit's 40:5
citizen 29:10
claimants 8:19
cleaned 17:15
cleanup 29:14
clear 14:8 17:2,16
  20:22 21:3 24:5
  28:10
clearly 18:3 34:7
cliché 11:16,17
clients 23:17
clock 16:6
close 33:14
cloyd 5:4
code 31:15
combination
  24:11
combine 35:6
come 14:15 30:22
  40:25
comfort 40:23
comfortable 21:2
  34:19
coming 31:22

comment 9:11
  27:19
comments 37:8,18
commercial 2:5,7
  25:14
committee 2:21
  13:17 15:5 20:5
  21:19,20 22:23
  33:16 34:5,6 36:4
  36:24 37:7,10
committee's 36:9
  36:22
committees 33:15
  36:5
committing 10:24
communicate
  15:4
companies 17:1
  26:7,13 27:3,4
  31:4
company 4:18
  15:9,14,17 17:4
  20:12 25:3,14
  27:6,8,8 33:9,13
company's 37:3
compare 38:22
compared 21:12
compelling 13:20
compensating
  31:6
competitive 24:19
complain 19:8
complaints 19:9
compliance 7:19
complicated 9:7,8
  12:16 17:11 23:21
comprehensive
  13:20 14:13
concern 15:5
concerned 39:19
concluded 41:17
concludes 39:9

condition 24:13
  24:15
confirm 34:16
confirmation
  40:15
confirmation's
  40:15
confirming 40:1
conflicting 31:22
conforming 37:23
confusing 23:25
connection 37:5
consensual 17:18
consensus 12:25
  35:23
consenting 3:21
  20:5
consequence
  15:13
considered 34:9
consistent 19:10
constituents
  33:25
consultants 2:18
  2:20 36:23,25
consultation 8:5
contacted 20:4
contemplate
  19:11
contemplated
  7:19
continually 32:1
continue 7:7
  30:12
continued 21:10
continuing 26:6
  32:2
continuous 23:3
contract 20:18
  21:11 22:13,14
  23:10
control 37:3,6

conversation 20:9
cooperation 23:13
core 10:19 40:1
corporate 11:25
correct 14:25
  15:21 30:1
cosmetics 24:9
cost 14:10 23:6
  31:25 34:2,2
  35:24
costs 37:6
counsel 4:11
counteract 41:2,3
countersign 22:25
country 26:22
  43:21
course 9:10 21:24
  36:3
court 1:1,12 7:2
  7:15 8:9,14 9:4,15
  9:18 11:8,11,15
  11:21 12:18 13:1
  13:7,9,24 14:2,22
  15:18 16:7,20,23
  17:4,6,21 18:8
  19:1,19,23 23:24
  24:6 26:3 32:5,9
  32:15 35:3,6,13
  36:1,4,7,13 37:14
  37:17,21 38:2,11
  38:14,18,21 39:2
  39:10,22 40:22
  41:1,7,16
court's 35:11
courtroom 19:16
  29:5
creadore 5:5
creditor 8:1
creditor's 13:17
  21:19 33:16
creditors 2:21
  20:13 21:9 31:11
  32:1

[crisis - employment]                                                                Page 4

**crisis**  28:6 31:6
**critical**  8:14 21:18
  28:11
**crockett**  5:6
**current**  28:13
**currently**  16:25
  28:1
**cyganowski**  4:15

**d**

**d**  1:22 7:1 16:4
  42:1
**daily**  9:20
**daly**  5:7
**daniel**  6:1
**date**  8:21 43:25
**davis**  4:1 7:5
  10:19 13:11 36:19
  40:23
**day**  7:12 8:23
  21:7 22:1 23:4
  26:15 31:18
**days**  8:16 18:16
  18:18 20:24,25
  21:1
**dc**  3:16
**deadline**  18:14
**deadlines**  18:4
**deal**  22:2 24:18
  28:14 35:7
**deals**  39:4
**debevoise**  4:17
**debtor**  1:9 16:9
  17:3 36:22 37:6
**debtor's**  7:20
  13:13 21:12
**debtors**  2:4,10,11
  2:15,20 4:2 7:6,17
  8:2,12 9:21 10:17
  10:25 11:3,14
  12:12 13:11 16:24
  20:23 32:11,19
  33:1,3,21 34:6
  36:2,20,24 37:4

40:3
**december**  2:22
**decide**  12:8
**decided**  25:14
**deciding**  24:8
**decision**  16:9
**decisions**  12:2
  15:8 19:3
**declaration**  19:15
  19:24 28:8
**dedicating**  31:4
**definitely**  9:12
**delaware**  38:10
  40:6
**delay**  18:11
**delighted**  7:17 8:5
  8:11
**delivery**  27:12
  28:1 29:3,20 34:2
**demanded**  23:10
**demonstrates**
  24:13
**deposit**  15:1
**depression**  28:18
**describing**  13:23
**designates**  24:10
**designation**  24:25
**desperately**  9:11
  27:18 29:21
**despite**  10:11
  34:21
**destroy**  30:23
**determine**  32:6
  34:11
**determined**  25:6
  36:24
**develop**  23:6
**developing**  26:8
  26:14
**development**  2:12
  2:16 24:24 28:1
  32:17

**dialogue**  20:7
**dice**  15:14
**die**  28:23
**different**  10:9
  11:2,7 26:22
  32:15 39:11
**difficult**  21:4
  31:17
**dilute**  38:7,15
**direct**  19:25
**disagree**  32:11
**disclosure**  38:8
**discretion**  20:24
**discuss**  12:24
**discussed**  7:25
**discussing**  8:15
**disease**  24:13,15
**disorder**  26:25
**disposition**  22:12
  37:2
**dissenting**  23:15
  23:20 34:17
**distributing**  12:13
**district**  1:2 40:20
**docket**  12:23
  13:14 16:17,17
  22:23 36:23
**document**  2:13
**doing**  29:19 30:3
  30:3,3 32:3,20
  34:20
**dollar**  33:25 34:1
**dollars**  20:25 21:1
  21:11 22:7 33:18
**donald**  5:5
**dosage**  29:20
**dose**  26:23 28:21
  29:14,22
**double**  20:8
**doubt**  23:2
**dozens**  12:21,21
**drafts**  9:20 18:16

**drain**  1:22
**draw**  24:22
**driven**  35:23,24
  35:24,25
**drop**  28:24
**drug**  23:7 24:9,10
  25:3,7,21 26:1,19
  27:7 28:11,13,25
**drugs**  24:12 32:17
  32:19 34:2
**drysdale**  3:13
**due**  7:13

**e**

**e**  1:21,21 3:1,1 5:5
  7:1,1 42:1 43:1
**earlier**  24:16 40:6
**easy**  14:17 22:19
  41:12
**ecf**  2:8,23
**ecro**  1:25
**edan**  3:11 5:17
**effective**  25:6,9,25
  27:22 35:24
**efficacy**  25:22
**efficiently**  35:19
**effort**  10:12 14:7
  14:14
**efr**  9:25
**eight**  7:22 31:19
**either**  11:2 15:12
  15:19 19:3 27:10
  34:3
**electron**  40:24
**eli**  2:22
**ellis**  5:8
**email**  39:7
**emails**  9:19
**emergence**  20:12
**emergency**  11:18
  26:16,17,18 30:9
**employ**  2:18
**employment**  2:19

endeavor  31:24
enemy  11:19
engaged  12:15
engagement  10:12
  37:13
ensure  7:19 20:19
ensured  20:8
enter  2:12,16
entire  15:2
entirely  33:1 40:7
entities  3:14
entry  2:4,5,10
epipen  29:11
equal  15:2
equation  25:2
erf  9:9 11:12
eric  5:10
error  40:2
essentially  22:19
  30:15
estate  14:1 31:15
  36:15
estate's  35:19
estates  15:7
et  7:3 16:10 21:24
ethos  35:22
europe  26:9,20
evaluate  37:1
everybody  34:19
evidence  15:23
evidentiary  19:21
ex  2:10
exactly  10:23
examples  12:23
exchanging  9:19
exculpations
  39:18
exercise  16:12
  18:5 33:18
exhibits  31:19
existing  16:1
exit  20:11 23:2

expedite  18:24
expensive  32:2
expires  14:6 15:20
  16:2
explain  10:25
explaining  23:24
extended  26:17,18
  29:1
extends  28:19
extension  16:3
extent  7:16 18:14
  31:21
extra  8:21
extraordinary
  10:12
extremely  21:18
eyes  33:4

**f**

f  1:21 5:9 43:1
fa  22:7
facially  26:11
facilitator  9:22
fact  14:18 16:5
  22:5 26:13,21
  29:18 30:7
factors  18:4
facts  23:22,22
  30:4
failed  16:3
fair  9:21
fairly  20:7
faith  12:16
false  25:8,8,11,25
  26:1
far  12:23
fast  24:10,16,25
favor  16:14
fda  24:7,9,16,19
  25:9,19 26:2
  27:10,15,19,22
  28:2 32:16,19,20
  32:21 33:23

fda's  33:4
fdic  32:12,13
february  1:16 2:1
  43:25
federal  39:21
fee  20:24
feeling  8:25
feinberg  8:13
feld  3:3
fentanyl  25:12
  28:15,15,19,22
  29:23
fight  40:13
figure  23:18 25:3
file  9:12 10:25
  20:14 41:2
filed  2:22 8:12
  13:15 16:16 18:17
  18:18 22:18,23
  37:20
filing  18:14 36:9
filled  24:21 29:9
final  36:21 39:7
financial  22:1
find  14:7,11,14
  23:18,25 30:12
fine  22:22 23:11
  28:24 38:2,11,22
firms  41:7
first  7:12 13:12
  26:20
fit  12:7
flatly  25:8,8
flavors  30:21
focus  31:3 40:11
focusing  34:9
food  24:9
footnote  26:12
footnotes  30:5
footprint  18:1,1
forbid  28:16
foregoing  43:3

form  36:15
formal  8:6 25:21
forms  27:21
formulation  25:24
forth  18:12
fortunately  11:3
  25:13
forward  10:24
found  15:25
four  10:7
fourth  36:21
framework  9:2
frankly  11:8 15:1
  18:17 33:7 35:20
  35:24 38:5 40:6
frolic  30:2
front  39:18
full  38:8
fully  16:10 20:7
  21:6 30:20
fund  11:18
fundamental  22:9
  23:1 35:22
further  17:22
future  12:13 15:7
  30:17 33:10 34:11
  41:6

**g**

g  7:1
gange  5:9
gaps  11:4
generic  24:20
generics  25:23
geoff  5:20
george  3:18
gestalt  23:1
give  8:21 22:19
  40:22
gives  19:7 22:20
glass  24:22 29:5
go  15:24 26:5
  28:20 38:11

[goal - intensely]                                                                    Page 6

**goal**  34:19
**god**  10:21 28:16
**going**  9:6 14:14
  16:15,17 17:6,7,9
  17:17,18 21:21
  22:25 24:23 27:14
  27:14 28:8 33:3
  35:3 39:16,20
  41:10
**gold**  5:10
**good**  7:2,4 11:18
  11:20 12:15 13:8
  13:9 20:16 21:6
  29:24 31:23 33:13
  34:13 36:18
**gotten**  11:1
**government**  39:21
**governmental**
  3:14
**governments**  8:18
**governor**  7:23
**grant**  17:23 19:1
  39:3
**granted**  7:20
  18:25 24:16,19
  42:6,7,8
**granting**  2:7
**gratified**  7:10
**graulich**  4:8 12:19
  13:4,8,10,10
  14:12,25 15:21
  16:13,21 17:2,5,8
  18:7 20:10
**great**  9:15
**grievous**  30:16
**group**  3:14,21
**guess**  9:6 12:8
  26:10
**guidance**  41:15
**guide**  15:16
**gump**  3:3

**h**

**half**  28:12 29:1,22
**halfway**  14:18
**hand**  8:18,19 9:23
  10:11 12:11 16:18
  23:4 26:4 27:14
  38:19
**handed**  29:5
**happen**  18:3
**happened**  15:10
**happening**  21:22
  21:23
**happens**  28:15
**happy**  7:7 16:16
  23:12 26:4 34:17
  38:19
**hard**  7:13 12:24
  18:20 21:4 35:18
  39:24
**harrison**  5:11
**hashed**  9:17
**hauer**  3:3
**he'll**  35:18
**headquarters**  2:6
  13:6,13 42:6
**hear**  32:7
**hearing**  2:1,2,10
  7:11,13,25 8:21
  9:10,12 19:5,6
  23:15 30:21 31:1
  34:22 35:6
**heather**  5:6
**heck**  11:12
**held**  10:1
**help**  14:17 27:25
**high**  26:23 29:13
  29:22
**highly**  23:23
**hill**  5:12
**hint**  16:15
**historical**  23:22
**history**  32:25 33:7
  33:8,10 41:6

**hither**  14:9
**hoc**  3:21 20:5
  21:19 33:15
**hon**  1:22
**honor**  7:4,7,24
  8:10,16,20 9:5,10
  12:14,19 13:3,8
  13:12 14:12 15:21
  16:15,18 18:7,9
  18:12 19:12 20:1
  20:4,14,21 23:9
  24:4 28:8,9 30:11
  30:20,25 32:8,14
  34:15,25 35:2
  36:18 37:19 38:8
  38:12,17,25,25
  39:8 40:22 41:14
**honorable**  8:13
**hope**  9:8,11 10:21
  12:7,9 23:9 27:18
  27:25 33:10 36:9
  38:5,6 39:17
**hopefully**  8:10
  12:2 33:25 35:25
**hopes**  34:1
**hospital**  29:9
**hour**  28:24
**huebner**  4:7 7:4,5
  8:10 9:5 12:14
  18:9 19:12,20
  20:1 32:10,14
  34:15 35:4,10,15
  36:3,6,8,14 40:22
  41:4,14
**huge**  20:11 40:2,2
**hundred**  31:4
**hurley**  3:10
**hyde**  2:25 43:3,8

**i**

**iacs**  37:4
**ideally**  17:25
**ii**  2:5

**iii**  2:6
**immediate**  29:22
**implications**  37:1
**important**  7:8,15
  13:18,22 15:4
  20:3 31:8 39:12
**imposed**  15:23
**imposing**  15:6
**impressed**  38:3
**improve**  29:20
**include**  34:17
**includes**  21:14
**including**  8:14,15
  33:23,23,24 36:2
  39:21,21
**incredibly**  10:1
  12:24 31:7
**indemnification**
  37:12 38:3 39:5
**indicated**  27:22
**indiscernible**
  16:12 32:14 40:18
**informal**  13:16
  37:8
**information**  22:20
  22:21 34:18 35:21
**ingesting**  26:24
**inherently**  31:12
**initiative**  19:11
**initiatives**  12:21
  24:20 31:11
**injectable**  27:21
  28:7
**injection**  27:10
**injects**  29:14
**injunction**  7:20
  8:4 30:21,22
**input**  8:2
**insert**  28:17
**intend**  19:16
**intended**  24:11
**intensely**  12:15

interact 21:25
interest 9:15 12:3
  13:25 31:16 39:21
interlocked 14:6
intolerably 10:15
intramuscularly
  27:11
involve 11:8
iowa 7:23
irrelevant 25:1
issue 8:14 9:15,25
  27:16 35:23,23
  39:17,25
issued 25:21
issues 7:8 10:5,10
  12:16 13:18,19
  21:10 32:5 40:17
issuing 8:7
item 13:5,12
  18:10 35:16 36:21
iv 2:7 27:11

**j**

j 2:22
jam 18:21
james 4:6
january 17:16,20
  27:15
jasmine 4:22
jeremy 5:12,13,24
jesse 5:4
job 23:11 25:2
  32:20
jobs 20:16
john 19:15
joint 36:12,22
jointly 8:13 37:7
judge 1:23 12:5
  16:13 34:10
judgement 11:25
  18:6 33:18
judgment 33:1
july 17:19 31:9

june 23:8 31:8
jurisdiction 40:1

**k**

k 27:15,16
keep 13:1 35:22
keeping 22:15
keeps 31:22
kelly 5:14
kenneth 8:13
kesselman 34:16
key 21:25 33:15
killing 25:13
kind 8:21 10:20
  23:22 27:2 30:6
kleinman 5:13
knight 5:14
know 7:16 9:14
  10:7 11:11 13:2
  14:18 15:6 17:6,8
  19:2 21:8,21 22:8
  22:11 24:23 27:2
  27:8 28:5,9,16,22
  29:3 30:15,18
  31:16,23 32:15
  33:5,23 34:1 40:9
  40:16 41:4
known 8:8
knows 9:10
kpmg 2:18,20
  35:17 36:22 37:7
  37:10 42:8

**l**

l 3:8 4:15
l.p. 1:7 2:23
lack 11:13
laid 34:7
landlords 14:16
language 37:24,24
  38:3,9
large 7:9 10:5
  18:3
largely 18:2 25:15
  29:9

late 22:18
law 5:15 40:2 41:8
  41:9
layn 8:13
learn 31:8
lease 2:5,6 14:6,8
  14:25 15:1,3,5,13
  15:15 16:1 17:17
  20:9
leases 2:7 14:6,23
  17:12,12
leave 10:22 12:8
  33:10 41:6
leaving 41:3
ledanski 2:25 43:3
  43:8
left 11:1
legal 43:20
legitimate 16:8
letter 12:20 27:20
  37:13
letting 32:1 35:21
level 20:20
leverage 16:5
lexington 4:3
liability 39:5
life 20:12 23:7
  24:13 28:12,19
  29:1,22
lightner 5:16
line 11:7 42:4
lisovicz 3:11 5:17
list 10:4
literally 10:15
  29:12 32:25 36:11
  37:23
little 9:7 20:2
  24:22 25:17 31:2
lives 27:25 31:23
  35:25
llp 2:18,20 3:3,20
  4:1,17 7:5

loaded 28:18
local 8:18
lock 10:21 20:10
locked 14:10
locking 20:20
long 28:14 29:22
  30:13
longer 11:5 14:23
  15:12 16:6
look 22:17 31:2
  38:21
looked 14:22
looks 22:7
lost 35:25
lot 7:10 12:12
  22:5
lots 24:5
love 27:23
low 23:6 31:25
lower 14:7
lowne 15:24 19:15
  19:24 28:8

**m**

m 3:18,25 5:6,10
  14:16
maelstrom 30:23
magi 29:21
magnitude 34:1
majority 21:9
making 8:8 15:8
  41:11,12
march 8:20 9:2
  23:7 31:8
mark 5:16 7:12
  35:8
market 25:15,18
  25:22 26:9 27:24
markups 9:20
marshall 4:7 7:5
masumoto 5:18
  37:15
match 27:21

[material - offer]                                                                Page 8

**material**  10:5,10
**matter**  1:5 8:2
  33:7 37:8
**matters**  13:22
**maximize**  31:15
**maximizing**  31:3
**mcclammy**  4:6
**mcdermott**  5:19
**mean**  14:2 16:7,11
  21:25 22:25 23:9
  24:23 26:10 32:20
  38:2
**meaningful**  40:13
**meant**  36:11
**mechanic**  11:7
**mediate**  8:14
**mediator**  9:22
**medical**  23:22
  24:14 29:4
**medication**  25:4
  31:7
**medications**  25:24
  30:9
**meet**  22:4
**meetings**  22:21
  34:18
**melanie**  4:15
**mentioned**  40:6
**merge**  35:15
**message**  15:4
**metaphorically**
  10:21
**methodologies**
  27:12
**methodology**  28:2
**michael**  5:21,25
**michelle**  5:3
**microscope**  40:24
**microscopic**  16:5
**middle**  28:3
**millennium**  40:7
**milligram**  27:13

**mindful**  40:4,16
**mineola**  43:23
**mini**  8:25
**minor**  16:23
**minutes**  12:24
  23:24
**miscited**  40:5
**misdescribe**  36:10
**misled**  32:19
**mistake**  40:3
  41:13
**mitchell**  3:10
**modest**  21:17
**modify**  37:10 39:6
**modifying**  37:12
**moment**  19:3
  34:16
**moments**  13:23
**money**  10:2,3,14
  11:17 31:10 35:19
  36:16
**monitor**  7:18
  32:24 33:23
**monitoring**  33:22
**monthly**  21:13,16
  21:22
**months**  8:15 14:5
  15:24
**morning**  7:2,4
  13:8,9,13,23
  36:18
**motion**  2:4,10,11
  2:15,15 8:12,20
  9:12 10:25 13:14
  13:15,16 17:22,23
  18:11,12,16,23,24
  19:1,7,14,21
  20:22 31:20 33:14
  33:16 35:7 42:6,7
  42:8
**motions**  18:19
  19:2 35:8

**move**  19:14
**moving**  13:1
  17:18 20:10
**multi**  3:14
**multiple**  27:24
**mulvihill**  5:20
**murphy**  5:21
**mystifying**  30:12

**n**

**n**  3:1 7:1 42:1
  43:1
**nalmefene**  24:17
  24:20 25:5,9 26:8
  26:8,14,21 27:7,9
  28:7,10 29:20
**naloxone**  28:13
**name**  28:12
**narcan**  28:12,20
  28:21,23
**nasal**  27:13 28:13
**nature**  12:25
  33:20
**near**  11:3 28:14
**necessarily**  29:10
**necessary**  21:5
**need**  8:25 11:6
  12:2 18:24 21:8
  22:10 23:14,23
  32:10 40:8 41:1,2
**needed**  20:19
**needle**  29:13
**needs**  24:14
**negative**  15:17
**negotiated**  20:18
  21:2
**negotiating**  10:20
**neutral**  33:1
**never**  28:2
**new**  1:2 2:6 3:6,23
  4:4,13,20 14:7,8
  14:11,13 28:1
  32:17 38:6

**newman**  5:22
**news**  9:6,8 20:16
  29:24
**night**  16:17 22:18
**non**  3:21 17:3
  26:18 29:4
**nonstarter**  19:4
  29:7
**normally**  38:5
**north**  31:13
**notable**  8:1
**note**  7:9 11:21
  32:12
**noted**  20:14 23:9
**notice**  2:1,10,11
  18:15,18 19:2,4,7
  19:8 20:24,25
**notion**  18:13 28:7
**notwithstanding**
  40:19
**number**  7:9,17
  8:10 9:5 10:6,7,8
  10:9,10 21:1
  22:15 24:2 36:23
**nunc**  2:21
**nw**  3:15
**ny**  1:14 3:6,23 4:4
  4:13,20 43:23

**o**

**o**  1:21 7:1 43:1
**o'connor**  3:18
**object**  21:21
**objections**  13:15
  13:16 19:18
**obtain**  16:4 39:24
**obviously**  12:21
  19:15,20 20:5,21
  22:13 24:24 27:13
  27:18,23 28:9
  29:7 30:8 32:12
**occupied**  16:25
**offer**  24:6

[office - presentations]                                                                                Page 9

office   37:24 40:10
  40:19
official   2:21 36:4
  36:8
oh   35:10
okay   7:2 8:9 9:4
  11:15 12:18 13:7
  14:2 16:7 17:4,21
  17:23 18:8 19:1
  19:19,25 21:21
  32:5 35:1,10 36:7
  38:2,11,18 39:2
  39:10 41:16
old   43:21
omnibus   2:2 7:11
omnibuses   8:22
once   10:14 15:25
  16:13 34:24
open   10:5,10
  22:15
opening   8:16
operating   21:13
  21:16 25:16
opiant   27:9,12
opiant's   27:15,18
opinion   39:13
opioid   25:11,17
  26:15,17,25 27:23
  28:6,17 31:6 34:3
  34:3
opposed   19:22
  21:15
option   23:6 31:25
optionality   22:15
oral   26:24
order   2:4,11,19
  14:3 16:16,22
  17:24 22:17 35:3
  35:4,8,9 36:15,25
  37:6,11,20 38:4,9
  39:4,7
orders   34:1 35:11
  39:6

original   18:14
orion   12:4
otterbourg   4:10
overcome   29:23
overdoes   27:23
overdose   25:11
  26:17 27:1 28:13
  28:16
overdoses   34:3
overdosing   29:7
oversight   10:3
overstate   25:1
overwhelms
  28:23

**p**

p   3:1,1 5:23 7:1
package   23:16
padjen   5:23
page   37:11 38:20
  42:4
pages   30:13
paid   33:15
painful   10:16
paragraph   37:10
  37:12,23,25
parent   17:3,17
park   3:5 4:12
part   17:18 33:6
  39:12 40:1,14
parte   2:10
participating
  36:15
particular   8:1
  20:6 21:12
particularly
  39:15
parties   7:16 9:1
  9:16,19 10:13,19
  11:14 12:1,7
  17:13,14,15 18:15
  19:7 20:17 22:21
  31:16 33:24 36:14
  39:17,20 40:12

party   39:17,23,25
  40:14
passage   10:14
passionately   10:1
patently   25:8
path   33:3
pathway   11:2
paul   6:2
payment   12:11
peace   40:12
pearlman   5:24
people   7:13 8:24
  10:16,22 11:19
  14:19 18:16,21
  25:2,14 28:22
  29:5,21 30:3
  31:12 32:20 33:4
  41:11
pera   5:25
percent   31:5
perfect   11:19 12:5
perfectly   16:8
period   14:8,10
  15:20 25:11
permanent   21:10
person   10:19 33:2
personnel   29:4
perverted   41:10
pharma   1:7 2:23
  7:3 41:5
pharmacokinetic
  22:6
pharmacological
  22:5
phillips   8:13
phone   14:20
  37:16
pick   10:8
pictures   12:4
pill   26:24
pillsbury   3:20
pittman   3:20

plains   1:14
plan   10:18 16:10
  18:2 20:14 21:8
  40:2,15
pleading   23:1,20
  30:13 32:11
pleadings   14:3
please   29:6
plimpton   4:17
plug   33:19
podium   36:16
point   11:16 15:10
  18:19 29:1 32:23
  33:11
policy   12:2
polk   4:1 7:5 10:19
  13:11 36:19 40:23
porat   6:1
position   40:11,19
positive   9:8
possession   16:9
possibilities   22:16
possibly   11:8
post   20:12
potential   8:17
  22:12 23:6 24:14
  27:7 28:11 37:1
potentially   15:15
  15:16 28:4 29:12
  35:21
power   39:23,25
powerful   28:25
practice   41:8
pre   24:21 29:8
precedent   34:10
predict   34:12
preference   35:11
prefers   37:25
preis   3:9
prepared   40:13
present   5:1 19:21
presentations
  8:25

**preserve** 31:10
**press** 8:7 36:9
**pretty** 11:22
  14:13 22:1
**price** 35:1
**private** 8:19
**prize** 14:15
**pro** 2:21
**probably** 11:5,6
  17:9 24:5
**problem** 22:24
**proceed** 24:19
  32:4 34:23 35:19
  35:22
**proceeding** 31:25
**proceedings** 37:5
  41:17 43:4
**process** 14:17,19
  33:6
**produced** 24:3
**product** 21:23
  22:10,12,14 23:23
  24:3,10,17,24
  25:10,15 26:20,22
  27:3,19,25 31:25
**productive** 11:5
**productively**
  34:23
**products** 24:8
  26:9 27:24
**program** 33:17
**progress** 7:8 9:13
  9:24 12:22
**prompted** 39:12
**proper** 18:5 33:17
  33:22
**properly** 15:8
**propose** 13:3 37:7
**proposed** 13:23
  17:24 22:17 37:11
  37:20 38:4,9 39:4
**propriety** 32:2

**protecting** 32:16
**protections** 40:16
**prove** 25:7 26:1
**proves** 28:4
**provide** 20:2
  23:12 33:24
**providence** 15:9
**provides** 22:13
**provision** 22:19
  34:18 37:17
**provisions** 37:12
  39:6
**public** 21:6 32:16
**publicly** 8:8
**pull** 33:19
**pulling** 32:2 33:3
**purdue** 1:7 2:23
  7:2,6 27:8,20
  29:16,19 30:2,14
  36:20 41:5
**purpose** 33:9
**pursue** 34:14
**pursued** 24:8
**pursuing** 24:25
  25:3
**put** 11:17 19:16
  23:4 33:13

**q**

**quarropas** 1:13
**quarterly** 22:4,20
  34:18
**question** 11:11
  15:22 16:23 19:24
  22:9 24:24 31:21
  32:4
**questionable** 27:3
**questions** 13:21
  16:7,8,21 19:17
  34:6 38:13,25
**quickly** 9:17
**quite** 11:8 20:25
  32:2

**quote** 24:3,4,11
  25:5 29:18

**r**

**r** 1:21 3:1 7:1 43:1
**racing** 22:10
**radically** 29:19
**raise** 12:20
**raises** 13:17
**ramps** 23:2
**rdd** 1:3
**reach** 12:10 33:5
**read** 26:12 28:10
  30:5
**reading** 26:7
**ready** 17:19 25:23
**real** 18:4 32:5
**realize** 20:17 41:8
**realized** 14:20
**really** 8:16 10:15
  11:18 18:20 23:5
  26:21 31:19 32:21
  33:8 41:8
**reason** 11:16
  34:23
**reasonable** 16:11
  20:25
**reasonably** 22:22
**reasons** 25:22
  32:24 38:22
**reassess** 32:1
**received** 13:15,15
  13:16 37:8
**recertified** 25:20
**recognizes** 33:12
**recognizing** 12:10
  33:20 34:8
**reconciling** 9:24
**record** 7:5 11:23
  12:4 13:10 19:21
  34:12 36:19 43:4
**redacted** 2:16
  20:22

**redline** 17:24
  37:18,20
**reevaluation** 23:3
**referring** 38:15
**reflect** 35:9
**reflected** 15:6
  20:11
**reflecting** 37:18
**reflects** 8:1 12:1
**region** 37:25
**regular** 29:10
**regulatory** 22:6
  24:7
**reject** 15:20
**rejection** 2:5
**related** 2:7,12
  17:14
**relates** 13:13
**relationship**
  17:11
**relatively** 21:17
  23:6
**release** 8:7 26:17
  26:18 30:7 39:23
  39:25 40:14,20
**releases** 39:18,24
**relevance** 26:21
**relevant** 23:23
**relief** 2:7 11:18
  19:6 35:7 39:1
**relying** 32:21
**remain** 12:17
**reminiscent** 30:19
**rent** 14:7,9 15:2
**rental** 18:1
**reorganization**
  20:15 21:8
**reorganize** 15:17
**reorganized** 15:9
  15:14
**repeat** 7:24
**report** 7:7,19
  21:14,16

reporting 21:22
represent 40:3
request 22:3,22
  39:1
requested 7:20
  22:20
require 36:25
required 8:3
  23:10 31:14
requisite 20:15
rescue 26:16 27:1
  27:7
resected 20:7
reservations 14:9
resolve 13:1
resources 24:4
respect 2:11 8:1
  9:9 14:13 16:22
  18:11 32:16 37:2
respected 33:2
respectfully 39:1
respiratory 28:18
  28:20
responded 13:19
responding 32:10
response 37:9
responses 13:21
rest 28:18
restricted 21:14
restructuring
  37:2
retain 8:12 37:7
retained 7:18
retention 2:19
  35:17 36:12,22
  39:6 42:8
retrospect 8:11
returning 14:19
reversal 25:7,10
  26:1 30:10
reverse 28:17
review 27:19
  33:22 39:13

reviewed 14:2
  19:23
revise 35:3,4
revised 16:16,22
  17:23 22:17
ride 16:2
right 17:10,21
  19:23 20:23 23:5
  25:20 26:2 27:5
  28:20 29:8,18
  30:17 32:6 34:5
  34:20 36:13 37:14
  38:2,21 39:3 40:7
rights 8:5 14:9
ripcord 32:3
risk 8:24 14:10
road 43:21
robert 1:22 5:23
robertson 36:17
  36:18 37:15,19,22
  38:8,12,17,19,24
  39:8
robison 36:19
robust 20:7
role 37:7
roll 15:14
room 1:13 10:21
rooms 9:16 25:16
routinely 39:6
  41:7
rule 16:14
rulings 42:3
running 19:10
runout 33:17

**s**

s 2:13 3:1 5:17,21
  7:1
safe 25:6,9,25
  27:22
safety 25:22
sara 3:8
save 27:25 31:23
  35:18 36:15

saving 23:7 35:25
saw 23:11
saying 11:23 12:4
  41:10
says 22:8 39:24
scale 23:5
scenarios 34:7,8
scene 25:13
schedule 19:5
schwartzberg 6:2
  37:16
science 27:14
sean 5:7
second 11:24 12:3
  18:10 19:13 25:5
  28:21 29:3 34:10
  35:13 40:5 41:10
secretary 7:18,21
  7:22 8:6
section 11:22 24:9
security 13:5
see 12:7 21:22,23
  22:18 23:7 26:3
  29:6 30:6 35:13
seen 30:20
self 7:20
sense 11:2 12:11
  17:12 19:5 22:11
  31:11 33:20 34:7
  34:9,13,21
sent 18:16
sentence 26:6
separate 35:11
serious 24:12
seriously 31:22
serve 9:22
served 7:22 36:8
services 36:25
set 8:20,25 18:12
share 30:18
shareholders 37:4
sharing 35:20

shaw 3:20
shea 1:25 6:3
shoots 29:13
short 29:13
shorten 18:11
  19:2,4,7 35:7 42:7
shortened 19:8
shortening 2:11
shot 26:15
show 18:20
shrunk 10:4
shut 31:9
shuts 28:3
side 41:12
significant 17:25
simple 31:2
simply 14:5 28:14
  28:23 29:3 30:1
single 17:17
sits 10:15
skorostensky 6:4
slam 29:12
slightly 9:7 14:9
  21:7 34:2
slowly 30:5
small 7:9 10:6
smith 6:5
sole 20:23
solutions 43:20
someplace 17:10
somewhat 14:7
  17:11
sonya 2:25 43:3,8
sorry 26:18 38:14
sort 8:6,24 10:19
  10:25 11:7 12:10
  13:20 14:20 15:7
  15:14,22,24 16:5
  20:20 21:25 23:18
  25:17 26:12 29:2
  29:10 30:1,11,14
  30:18,23

[sound - time]                                                                      Page 12

sound   33:10
sounds   16:18
southern   1:2
   40:20
space   14:7,11,13
   14:14 15:25 16:24
   17:11,19
specific   25:10
speculative   24:3,3
speed   35:24
spend   13:22 21:24
   22:7 23:24
spent   21:11
spray   27:13
stage   21:9 22:15
stages   19:11
stakeholders   22:1
stand   9:14 19:17
standard   11:23,25
   38:10
star   31:13
starting   33:22
state   3:14 8:18
stated   29:25
statement   13:17
   22:23 25:8,11,21
   25:24 26:10 31:20
statements   20:2
   32:11
states   1:1,12 3:21
   7:22 20:5 21:20
   23:15,21,22 26:7
   27:6 31:15 34:17
   37:9
status   24:17 34:13
statute   11:24
   15:23
statutory   15:20
stealing   15:8
stock   37:3
stood   25:23
stop   14:19 27:16
   27:20 33:4

straightforward
   31:2
strange   31:19
strauss   3:3
street   1:13 3:22
strong   16:15
   29:23
strongly   10:1 40:9
study   27:16
subject   20:14
   33:22
sublessee   17:15
sublessor   17:13
   17:14
submit   13:19
submitted   15:23
   35:10
subs   16:25
substantial   9:23
   21:9
substantially
   23:21
success   7:12
successful   25:7
   26:1
suffice   21:16
   40:23
suggest   16:17
   30:2
suggestion   22:20
suite   3:15 43:22
summit   10:19
super   29:22
support   20:15
   40:13
supported   21:8
supporting   21:20
sure   10:23 20:1
   25:20 26:21 38:14
surprise   14:15
susan   5:8
sustained   10:12
   30:7

swabs   29:15
swallow   31:17
syringe   24:21
   29:5,9
systems   29:3

**t**

t   43:1,1
take   14:8 15:24
   16:15 17:19 26:24
   40:11 41:5
takes   11:25
talk   7:10 9:2
   23:17,17 26:11
   27:5 29:2
talked   20:6
talking   39:11
tax   2:18,20 36:22
   36:25 37:1
taylor   5:11
tectonic   20:20
telephonically   5:1
tell   9:13,17 24:2
   26:23
telling   27:17
tells   26:2
template   38:6
ten   14:25 15:1,24
tenant   14:15,20
tent   18:21
term   7:23 14:23
   15:12
termination   20:23
   20:24
terms   8:4,4 33:18
   35:20
terrible   28:6
test   28:3
tested   28:3
testimony   19:25
thank   18:7 19:12
   34:15 39:8 41:15
   41:16

therapy   26:15,19
thigh   29:13
thing   11:15 19:13
   20:11 30:11 39:10
things   7:10,21
   9:16 13:1 20:18
   21:5 23:25 24:5
   29:25 30:15 34:9
   34:20,20 35:19
   40:4
think   7:15 8:5
   9:13,21 10:9,16
   10:18 11:2,4,4,22
   12:15,19,22 13:5
   13:18,25 15:3
   16:11 18:18,23
   19:9,17 20:2,17
   21:15 22:11,21
   23:21 24:4 25:16
   31:11,16 32:9,9
   32:10 33:7,14
   34:5,13,21,25
   35:2,10,16 36:2
   39:12,16 40:2,4
   40:23
thinking   13:24
third   4:19 17:13
   17:15 27:5 39:17
   39:23,25 40:6,14
thomas   3:15
thought   9:17
   32:24 33:6 38:4
threatening   24:13
three   7:14 9:5
   10:7 12:20,23
   13:17,21 15:2
   27:3 30:13,14
   34:7
thumb   23:4
tightrope   21:4
time   10:14 12:3
   12:11 18:11 19:6
   19:8 20:23 21:6

23:16 25:16 29:20
30:19 42:7
**times**  30:14
**timetable**  19:10
**timothy**  4:8 13:10
**title**  31:14
**today**  8:8,23 9:14
11:10 19:16 32:6
**today's**  12:23
36:21 39:9
**told**  7:11 16:13
27:15,20
**tom**  7:18
**top**  10:1
**topic**  39:11
**topics**  9:24 12:20
18:20
**totally**  9:6 23:8
27:3 39:11
**track**  24:10,16,25
41:1
**tracking**  40:24
**trained**  29:4
**transaction**  13:23
13:25
**transcribed**  2:25
**transcript**  43:4
**transferred**  22:14
**transition**  14:10
15:25
**treat**  34:3
**treatment**  24:12
24:20 30:8
**treatments**  26:8
26:14
**tremendous**  9:1
**tried**  9:22 16:3
20:16
**troop**  3:25 23:14
32:7
**troubling**  39:14
**trudy**  6:5

**true**  11:14,17
26:11 29:8 40:12
43:4
**truly**  35:17,17
**trustee**  37:9
**trustee's**  37:24
**try**  11:6 12:22
14:14 19:20 31:2
**trying**  11:13 28:5
29:21 31:12,23
32:21,23 35:22
**tunc**  2:21
**turn**  13:4,5 20:1
36:16
**turned**  17:12
**turning**  7:14
19:13
**two**  7:23 8:10
10:7 19:3 20:2
24:20 26:7,13
27:4 28:22 30:14
35:11 38:22
**twofold**  15:22
**types**  18:19 29:3
39:5

### u

**u.s.**  1:23 26:13
37:24 39:22 40:10
40:18
**ucc**  3:4 20:4
**ultimate**  22:12
35:7
**ultimately**  21:2
22:5 25:7 28:4
**unaided**  11:6
**unaware**  40:25
**unbelievably**
28:11
**uncontested**  7:11
29:24 31:20 35:17
37:8
**underlying**  19:6

**understand**  14:3
38:22
**understandably**
9:25
**understood**  41:14
**unfortunate**  24:1
**unfortunately**
10:11 11:3 23:20
**unique**  33:20
**united**  1:1,12 7:21
26:7 27:6 31:14
37:9
**unlawful**  29:8
**unmet**  24:14
**unopposed**  18:23
28:9
**unredacted**  20:21
**unrestricted**
21:14,15
**unsecured**  2:21
**untraveled**  9:6
**unusual**  11:9
35:20
**updates**  7:15
**upset**  30:20
**upsetting**  30:12
**urge**  40:9
**usable**  29:12
**use**  10:2 11:18
14:5 24:1,3 26:25
33:13,19 38:6

### v

**v**  5:14,22
**valuable**  28:4
**value**  8:17 12:12
30:24 31:4,5,15
33:12,24
**variety**  7:8 9:24
29:25
**various**  37:1
**vehicles**  10:2
**veritext**  43:20

**version**  20:21,22
39:7
**vetted**  16:10
**view**  7:12 14:16
15:6 23:24 24:18
30:16
**views**  8:2 9:24
10:1 12:1
**vilsack**  7:18,21
8:6
**virtually**  9:20
40:24
**visibly**  30:20
**vision**  20:11 30:18
31:1
**visions**  31:22
**vonnegut**  2:22

### w

**wait**  30:22
**walk**  16:16 21:4
28:24
**walking**  13:24
**want**  8:24 10:8
15:4 19:24 21:3
21:22,22,23 22:4
24:4 25:1 32:7
35:1,8,22 38:14
**wanted**  11:10
12:20 14:24 16:1
**wants**  24:6 26:3
41:4
**wardwell**  4:1 7:5
13:11 36:19
**washington**  3:16
**way**  8:3 10:23
11:2 15:17 18:2
22:11 23:5 28:25
29:17 31:13 32:4
34:21 36:1,10
40:12,14
**ways**  13:19 17:14
22:13

| | |
|---|---|
| **we've**  8:15 13:14 13:15,18 17:12 20:6,16 27:4 37:8 39:11 | **year**  14:25 15:1,3 15:15,19 16:2 |
| **week**  10:18 11:5 | **years**  7:22 |
| **weeks**  9:20 10:6 10:12 | **yesterday**  8:12 |
| **weighty**  20:11 | **yesterday's**  21:13 |
| **welcomed**  20:8 | **yogi**  33:11 |
| **west**  3:22 | **york**  1:2 3:6,23 4:4,13,20 |
| **whatsoever**  32:25 | **z** |
| **white**  1:14 | **z**  33:6 |
| **wide**  9:24 | |
| **winthrop**  3:20 | |
| **withdrawal**  25:21 | |
| **withdrew**  25:15 | |
| **witness**  19:16 | |
| **wool**  33:3 | |
| **word**  25:20 | |
| **words**  24:1 29:17 | |
| **work**  7:13 9:1 12:22,24 21:10 24:23 32:1 | |
| **worked**  18:13 | |
| **working**  18:20 21:3 27:4,7,13,21 29:17,19 30:9,9 30:15 31:6 35:18 | |
| **world**  22:10 26:25 41:4 | |
| **worse**  16:6 26:5 | |
| **worth**  24:25 | |
| **writing**  13:19 | |
| **written**  33:8,11 | |
| **wrong**  30:4,16 | |
| **x** | |
| **x**  1:4,10 20:24,25 33:6 42:1 | |
| **y** | |
| **y**  20:24 33:6 | |
| **yeah**  14:12 32:15 35:4 36:6 41:14 | |