REDACTED

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com
*Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P.*, et al.

PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew M. Troop
31 West 52nd Street
New York, NY 10019
Telephone: (212) 858-1000
andrew.troop@pillsburylaw.com
*Counsel to the Non-Consenting State Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

***EX PARTE* MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF PURDUE PHARMA L.P., *ET AL.* AND THE NON-CONSENTING
STATE GROUP FOR ENTRY OF AN ORDER AUTHORIZING EXAMINATIONS OF
CERTAIN FORMER DEBTOR EXECUTIVES, SEPARATELY REPRESENTED
DEBTOR PERSONNEL, AND NORTON ROSE FULBRIGHT PURSUANT TO
<u>FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9006</u>**

REDACTED

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

JURISDICTION AND VENUE ......................................................................................... 6

RELEVANT BACKGROUND .......................................................................................... 6

   A. Former Purdue Executives and Independently Represented Directors and Officers ........... 6

   B. NRF ....................................................................................................................... 11

RELIEF REQUESTED..................................................................................................... 16

BASIS FOR RELIEF........................................................................................................ 17

COMPLIANCE WITH RULES ........................................................................................ 19

NOTICE ............................................................................................................................ 19

NO PRIOR REQUEST ..................................................................................................... 20

RESERVATION OF RIGHTS .......................................................................................... 20

CONCLUSION.................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Drexel Burnham Lambert Grp., Inc.*,
   123 B.R. 702 (Bankr. S.D.N.Y. 1991) ...................................................................18

*In re Ecam Pub'ns, Inc.*,
   131 B.R. 556 (Bankr. S.D.N.Y. 1991) ...................................................................18

*In re Enron Corp.*,
   281 B.R. 836 (Bankr. S.D.N.Y. 2002) ...................................................................18

*In re Hughes*,
   281 B.R. 224 (Bankr. S.D.N.Y. 2002) ...................................................................17

*In re Madison Williams & Co., LLC*,
   No. 11-15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ...........................17

*In re Recoton Corp.*,
   307 B.R. 751 (Bankr. S.D.N.Y. 2004) ..............................................................17, 18

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*,
   91 N.Y.2d 30, 689 N.E.2d 879 (1997) ...................................................................12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.
   Madoff)*,
   No. 09-11893 (SMB), 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014) .........17

**Statutes**

11 U.S.C. § 1103 .....................................................................................................................2

28 U.S.C. § 1334 .....................................................................................................................6

28 U.S.C. § 157 .......................................................................................................................6

28 U.S.C. § 1408 .....................................................................................................................6

**Other Authorities**

Fed. R. Bankr. P. 2004 ................................................................................................... passim

Fed. R. Bankr. P. 9006 ............................................................................................................6

Fed. R. Bankr. P. 9016 ............................................................................................................6

REDACTED

Local Bankruptcy Rules Rule 9013-1(a) .......................................................................................19

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Unsecured Creditors (the "Official Committee") of Purdue Pharma L.P. ("PPLP") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Purdue") and the Ad Hoc Committee of Non-Consenting States (the "NCSG" and, together with the Official Committee, the "Moving Parties"), by and through their respective undersigned counsel, submit this *ex parte* motion (the "Motion") for entry of an order authorizing the Moving Parties to conduct examinations of and seek discovery from certain former executives of the Debtors, certain current directors and executives of the Debtors who have retained independent counsel, and Norton Rose Fulbright (together with its predecessor Chadbourne & Parke LLP, "NRF").

## PRELIMINARY STATEMENT

1.      The Moving Parties seek authority under Bankruptcy Rule 2004 to serve formal discovery, by way of compulsory process, on (i) certain former high-ranking members of the Debtors' management team (the "Former Purdue Executives"); (ii) certain current directors and management who are independently represented in connection with these chapter 11 cases and other proceedings related to the Debtors (the "Independently Represented Directors and Officers"); and (iii) NRF, the longtime law firm to the Debtors, the Debtors' ultimate owners (the "Sacklers") and entities affiliated with the Debtors and the Sacklers.  NRF personnel fulfilled legal and hundreds of non-legal roles for these persons and entities, and is apparently in sole possession of critical information that relates to the Debtors, their affiliates, and the Sacklers, including non-cash transfers from Purdue, which likely have a value in excess of $1 billion.

2.      To be clear, the Moving Parties are not seeking information from or related to these parties for the first time now.  In light of recent events, however, the Moving Parties bring this Motion in an abundance of caution to ensure that necessary discovery can be obtained in time to

1

ensure meaningful participation by the Moving Parties in recently ordered mediation with the Sacklers being undertaken in an effort to determine whether there is a confirmable plan of reorganization to be reached for these Debtors that includes the Official Committee and the NCSG, which represents more than half the population of the United States.[2]

3.      As a fiduciary, the Official Committee is tasked with investigating the Debtors' prepetition conduct and evaluating potential estate claims to maximize value available for distribution to unsecured creditors (the only stakeholders in this case) and combat the opioid crisis. *See* 11 U.S.C. § 1103(c)(2) (a committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan"). That investigation includes whether the Debtors' transfers of more than $11.4 billion to or for the benefit of the Sacklers were intentional or constructive fraudulent transfers[3] and whether the Sacklers and other board members breached their fiduciary duties to the Debtors in connection with such transfers and otherwise, among other potential claims.

4.      There is no question that the individuals subject to this Motion and NRF possess information critical to this investigation. The Former Purdue Executives and Independently Represented Directors and Officers are individuals who, along with the Sacklers, were charged with managing the Debtors, overseeing the Debtors' marketing of opioids, reporting to and/or serving on the Debtors' boards, and authorizing the Debtors' transfers, among other things. It also

---

[2] Of course, the Moving Parties are cognizant of this Court's order regarding mediation. The Moving Parties also would like for mediation to be as successful as possible. Obtaining the relief requested herein should also aid, and certainly not hinder, this Court's mediation order.

[3] These claw-back claims include more than $10 billion in cash that was transferred to or for the benefit of the Sacklers or the IACs, and non-cash transfers to or for the benefit of the Sacklers or the IACs, which likely have a value in excess of $1 billion.

has become apparent that NRF personnel were central actors in virtually every non-legal aspect of the events and transactions under investigation, including the Debtors' business decisions, the board's stewardship of the company, the transfer of cash and other property to the Sacklers and their non-Debtor affiliates, the disposition of such wealth after it was transferred to the Sacklers, and the management of the Sacklers' trusts. Indeed, it appears the business and non-legal work NRF performed for the Sacklers and the Debtors may have been far more significant than any legal advice that the firm provided.

5.       The Official Committee has worked diligently to seek information crucial to its investigation through informal and voluntary disclosures where possible—including from the Debtors, the Former Purdue Executives, and the Independently Represented Directors and Officers and NRF—and will continue to do so.[4] The Official Committee previously determined, however, that it was necessary to seek and obtain this Court's permission to serve formal discovery on the Sacklers[5] and on the so-called independent associated companies (the "IACs") and other entities jointly owned by the two sides of the Sackler family ("Other II Way Entities").[6] The Official

---

[4] *See Stipulation and Agreed Order Among the Official Committee, the Non-Consenting States Group and the Debtors Regarding Discovery in the Chapter 11 Cases,* dated August 6, 2020 [ECF No. 1553]; *Stipulation and Agreed Order Among the Official Committee, the Non-Consenting States, the Ad Hoc Committee, and the Debtors Regarding Discovery Deadlines and Briefing Scheduling in the Chapter 11 Cases*, dated August 25, 2020 [ECF No. 1609].

[5] *See Ex Parte Motion of the Official Committee of Unsecured Creditors of Purdue Pharma, et al., for an Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006*, dated March 25, 2020 [ECF No. 981]; *see also Stipulation and Agreed Order Among the Official Committee and the Mortimer Side Covered Parties Regarding Discovery Deadlines in the Chapter 11 Cases,* dated June 22, 2020 [ECF No. 1295 at Ex. A]; *Stipulation and Agreed Order Among the Official Committee and the Raymond Side Covered Parties Regarding Discovery Deadlines in the Chapter 11 Cases*, dated June 22, 2020 [ECF No. 1295 at Ex. B]; *Stipulation and Agreed Order Between the Official Committee and Beth Cohen, as Trustee for Certain Covered Sackler Person Trusts, Regarding Discovery Deadlines in the Chapter 11 Cases*, dated July 1, 2020 [ECF No. 1319]. The NCSG similarly has received authority from the Court to undertake Rule 2004 examinations co-extensively with the Official Committee.

[6] *See The Official Committee's Omnibus Ex Parte Motion for Authorization to Conduct Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [ECF No. 1317]; *see also Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases*, dated June 22, 2020 [ECF No. 1295 at Ex. C]; *Second Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases*, dated July 22, 2020 [ECF No. 1490].

Committee similarly found it necessary to seek and obtain permission to serve formal discovery on Stuart Baker,[7] a longtime partner at NRF and possibly the most important executive in the network of the Sacklers' affiliated companies.  Among other things, Baker ███████████ ████████████████████████████████████████████████████████████████████. Indeed, Baker ███████████████████████████████████████████████████.[8]

6.        With respect to the Former Purdue Executives and the Independently Represented Directors and Officers, the Moving Parties have worked and will continue to work with counsel to these individuals to obtain documents and testimony on a voluntary basis.  Nevertheless, the Moving Parties have experienced delays in scheduling depositions and disputes over the scope of discovery.[9]  Going forward, the Moving Parties must be able to address any such delays promptly.  As a result, the Moving Parties find it prudent and necessary to seek the relief requested in the Motion so that the Moving Parties may act quickly and efficiently in the event that service of additional subpoenas becomes necessary.

7.        With respect to NRF, the Moving Parties served subpoenas months ago on the Sacklers and their affiliates that specifically called for production of documents in the immediate possession of NRF, but the Sacklers refused to gather NRF documents, essentially contending that all such documents would be privileged.  ███████████████████████████████████████

████████████████████████████████████████████████████.

[7] *See The Official Committee's Omnibus Ex Parte Motion for Authorization to Conduct Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006*, dated June 30, 2020 [ECF No. 1317].

[8] *See* [ECF No. 1754, Ex. 52] (email chain dated August 28, 2013 among Jonathan Sackler and Dame Theresa Sackler, which was produced to the UCC under the Bates number MDSF00019408.).

[9] Following the chambers conference on September 17, 2020, where the Court ordered the parties to mediation with regard to the Sackler causes of action but was clear that discovery must continue on schedule, several depositions were unilaterally cancelled or postponed by counsel to the witnesses.  *See* Sept. 30, 2020 Hearing Tr. at 72:9–73:15.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████.

8.      The Debtors, the Sacklers, the IACs, and the Other II Way Entities have since authorized counsel to Baker, the Simpson Thacher law firm ("Simpson"), to coordinate disclosures of files in NRF's possession that are responsive to outstanding requests to each of those parties. The Moving Parties will continue to work with counsel to Baker and others in an effort to obtain this critical discovery as swiftly as possible, but the pace of disclosures remains troublingly slow. For example, NRF itself recently obtained its own counsel, Cleary Gottlieb Steen & Hamilton LLP ("Cleary"), which has refused to speak directly with Official Committee counsel regarding discovery in these cases.  Accordingly, the Moving Parties seek the relief requested in this Motion so they are in a position to serve subpoenas promptly to the extent necessary or appropriate.

9.      The Moving Parties are mindful of the progress in these cases to date, particularly the unexpectedly successful mediation of allocation issues among major private claimant constituents and non-Federal public claimants, and the current effort to continue mediation focused on estate and State claims against the Sacklers and evaluating whether they can be resolved through a confirmable plan of reorganization.  As such, it is imperative that the Moving Parties have the ability to serve formal discovery and/or to seek Court intervention quickly and efficiently if ongoing voluntary discovery from the Former Purdue Executives, the Independently Represented Directors and Officers, and NRF is inadequate.  Accordingly, the Moving Parties respectfully request that the Court grant the Motion and authorize an examination under Bankruptcy Rule 2004.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

11.     Venue is proper under 28 U.S.C. § 1408.

12.     The bases for the relief requested in this Motion are Bankruptcy Code section 105 and Bankruptcy Rules 2004, 9006, and 9016.

## RELEVANT BACKGROUND

### A. Former Purdue Executives and Independently Represented Directors and Officers

13.     In May 2007, Purdue and three of its top executives pled guilty to criminal conduct relating to their sale and marketing of OxyContin.  In the decade after entering this plea, the Debtors transferred value totaling at least $11.4 billion to or for the benefit of the Sacklers.  Those transfers included more than $8.8 billion in cash to the Sacklers in the form of U.S. partner distributions and tax distributions, $1.5 billion in cash, and what the Official Committee estimates to be more than $1 billion in other property to the so-called IACs, which the Sacklers defined in these cases as certain non-Debtor entities.[10]  It is widely alleged that the Debtors also continued to engage in improper marketing practices during these years and faced trillions of dollars in liability as a result of their misconduct.  The Official Committee is investigating valuable estate claims that may arise out of these transactions, including fraudulent transfer and breach of fiduciary duty claims, among others.

14.     The knowledge, beliefs, and motivations of the Debtors and the Sacklers in the face of the unabated and growing opioid crisis, the liability risk faced by the Debtors, and the Sacklers' actions to transfer money to themselves and out of reach of the Debtors' creditors are central to

---

[10] *But see* n.6 *supra.*

these claims.  As such, the knowledge, beliefs, motivations, and intent of the Debtors' current and

former top management and the Debtors' directors must be thoroughly examined.  This Motion

accordingly seeks relief with respect to the below listed Former Purdue Executives and

Independently Represented Directors and Officers, each of whom was a top executive or key

decision-maker, served on the board of directors or routinely reported to the board of directors,

and/or was involved in decisions concerning the Debtors' transfers and/or the Debtors' accruing

liability relating to the sale and marketing of opioids.  None of these individuals was deposed as

part of the MDL proceedings.

15.    The "<u>Former Purdue Executives</u>" subject to this Motion comprise:

- **John Stewart** ("<u>Stewart</u>") served as President and CEO of Purdue Pharma, Inc. ("<u>PPI</u>") and PPLP from 2008 to December 2013.  In that role, he was the chief executive during the period when Purdue transferred more than $7 billion in cash transfers to the Sacklers and the IACs.[11] ██████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████.[12]

- **Mark Timney** ("<u>Timney</u>") served as CEO of PPI and PPLP after Stewart.  He filled this role from January 2014 to June 2017.  ██████████████ ████████████████████████████████████.  Timney also presided over the Debtors at the time of most of the remaining cash distributions from the Debtors to the Sacklers and some very significant non-cash transfers to the IACs.[13]

- **Robin Abrams** ("<u>Abrams</u>") was an employee of PPLP from 2002 to April 2016.  Her titles during her tenure included Vice President and Associate General Counsel of PPLP.  ████████████████████████████████

---

[11] *See* AlixPartners Cash Report [ECF No. 654-1] at 11.

[12] *See* [ECF No. 1754] Hurley Decl., Ex. 70 ██████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████ [HC].

[13] *See* AlixPartners Cash Report [ECF No. 654-1] at 11; AlixPartners Non-Cash Report [ECF No. 1194] at 56.

███████████████████████████████████████████
████████████████████████████████.

- **Peter Justason** ("<u>Justason</u>") ████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ████████████████████████████████.

16.    The "<u>Independently Represented Directors and Officers</u>"[14] subject to this Motion

comprise:

- **Anthony Roncalli** ("<u>Roncalli</u>") has served as a director of the PPI Board since December 1, 2018. ████████████████████████
  
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  █████████████████████████████.

- **Peter Boer** ("<u>Boer</u>") is currently a director of the PPI Board, a position he has held since April 18, 2008, and previously served as a director of the MNP Consulting Limited ("<u>MNP</u>") board from April 18, 2008 to August 22, 2018. ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████[15]

  Boer was a director of the boards throughout the period that the Debtors made billions of dollars in transfers to the Sacklers and the IACs.

---

[14] By this Motion, the Moving Parties do not seek relief with respect to the members of the Special Committee of the Debtors' board of directors: Robert S. Miller, Kenneth Buckfire, Mike Cola, and John Dubel. Nor do the Moving Parties seek relief with respect to directors who are members of the Sackler family, as the Court has already authorized an examination of the Sacklers. *See* [ECF No. 992] (Order Authorizing Examination of Third Parties.)

[15] *See* [ECF No. 1754, Ex. 69] (Email chain dated July 26, 2007, attaching a document entitled "Confidential Memorandum to Jon Sackler").

- **Cecil Pickett** ("Pickett") is currently a director of the PPI Board, a position he has held since January 21, 2010 and previously served as a director of the MNP Board from January 21, 2010 to August 9, 2018. ██████████████ ████████████████████████████████████████████. Pickett served as a director throughout the time that almost all of the transfers from the Debtors occurred.

- **Craig Landau** ("Landau") has served in executive roles for the Debtors and/or the IACs since 1999. Since June 2017, Landau has served as CEO of PPI and PPLP. ████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████. Given his long tenure and numerous executive positions, Landau is likely to have significant knowledge regarding the Debtors' and IACs operations and the significant transfers of value from the Debtors to the IACs. Landau is represented by his own counsel in connection with the Moving Parties' request for deposition testimony.

17.     The Debtors advised that they have produced to the Moving Parties certain documents in their possession, custody or control concerning the Former Purdue Executives' and Independently Represented Directors' and Officers' work for the Debtors, and are subject to a continuing obligation to produce additional documents to the extent responsive to the Official Committee's document requests to the Debtors. Counsel for certain Independently Represented Directors and Officers produced additional documents concerning those persons' roles with the Debtors. The Moving Parties also have sought to schedule depositions.

18.     On July 23, 2020, the Court encouraged the parties to "think about" whether depositions can be scheduled in the near term "with the agreement that [the parties] would supplement" depositions after the completion of document discovery.[16] The Official Committee

---

[16] See (Hr'g Tr. at 69, July 23, 2020); see also July 29, 2020 Letter from M. Hurley to M. Herrington, Hurley Decl., Ex. 3.

promptly reached out to counsel to the Debtors and counsel to the non-Sackler directors of the Debtors to identify likely deponents and to begin scheduling depositions.[17]

19.     The Debtors responded by acknowledging the significance and importance of the depositions sought by the Official Committee.[18]  But the Debtors advised that "Davis Polk does not represent any of the individuals included in the Letter as potential deponents," and thus the Debtors could not "unilaterally arrange the deposition of those individuals."[19]  Accordingly, the Debtors provided a list of outside counsel who represented each of the likely Debtor deponents identified by the Official Committee.[20]  The Debtors also advised that three individuals identified as likely deponents were no longer employed by the Debtors and had no known counsel.[21]  The Official Committee also separately knew that Pickett and Boer were represented by independent counsel at Paul Hastings.

20.     Since that time, the Official Committee, for the Moving Parties, has corresponded extensively with counsel for the Former Purdue Executives and Independently Represented Directors and Officers in order to schedule dates for depositions.  While counsel for certain individuals have indicated their willingness to coordinate and schedule depositions, others have not yet agreed to dates or, since September 17, unilaterally postponed deposition dates that previously had been scheduled or offered.

---

[17] See July 30, 2020 Letter from M. Hurley to Charles Duggan and James McClammy, Hurley Decl., Ex. 4; July 29, 2020 Letter from M. Hurley to M. Herrington, Hurley Decl., Ex. 3.  The Official Committee is commencing discussions concerning Roncalli's deposition.

[18] The Debtors agreed that "both the Official Committee and Debtors may have an interest in deposing certain persons who may have information regarding possible estate claims."  See Letter from J. McClammy to M. Hurley, dated August 14, 2020, Hurley Decl, Ex. 5, at 3.

[19] Id. at 1.

[20] Id. at 1-2.

[21] Id. at 1. The Moving Parties have kept the Debtors apprised of efforts to schedule depositions and obtain discovery related to the Former Purdue Executives and the Independently Represented Directors and Officers, but the Debtors have not taken an active role in facilitating discovery.

21.    For instance, on September 15, 2020, the Official Committee sought to schedule a deposition of Stewart during the week of October 5, 2020 and informed his counsel that the Official Committee would proceed with a subpoena if an agreement was not reached regarding his deposition.[22]  The following day, counsel for Stewart informed the Official Committee that Stewart would sit for a deposition on October 8, 2020.[23]  Less than two weeks prior to the deposition, however, Stewart's counsel informed the Official Committee that he was no longer available to be deposed on October 8, 2020 without providing any alternative dates.[24]

22.    This was not an isolated incident.  In the eight business days after the September 17, 2020 chambers conference, at least four witnesses sought to cancel or delay until November, depositions that previously had been scheduled or requested in September and October.

23.    The Moving Parties intend to continue to work with counsel to the Former Purdue Executives and Independently Represented Directors and Officers in order to schedule their depositions in way that is consistent with the demands of these cases, and to serve subpoenas on those witnesses if they are unwilling to do so on a voluntary basis.

**B. NRF**

24.    NRF has represented the Sackler family, the Debtors, the IACs, the Other II Way Entities, and the Sacklers' other entities and trusts for more than a half-century, advising on nearly all aspects of the Sackler family's business and personal dealings.[25]  ██████████████

████████████████████████████████████████████████████

---

[22] *See* [ECF No. 1754, Ex. 97] (Letter from J. Sorkin to K. Marino, dated September 15, 2020).

[23] *See* [ECF No. 1754, Ex. 98] (Email correspondence from September 15, 2020 to September 28, 2020 between K. Marino and J. Sorkin).

[24] *See id.*

[25] *See* [ECF No. 1754, Ex. 11] (Letter from J. Ball, A. Lees, J. Doughterty, and M. Hirschfield to M. Hurley, dated August 17, 2020) ████████████████████████████████████████████
████████████████████████████ [OPEO].

███████████████████████████████████████████████████████████████████████████████.

From the beginning of these cases, the Official Committee and the NCSG have sought to obtain

records of the Debtors, IACs, Other II Way Entities, and the Sacklers that may be in the immediate

possession of NRF by seeking discovery directly from those clients—each of whom indisputably

had and has the right, ability and obligation to obtain responsive records from NRF.

25.    Furthermore, the Official Committee previously sought the Court's assistance in

obtaining IAC-related records and previously apprised the Court regarding NRF's failure to

respond to the Official Committee's discovery requests.[26]    As a result, the Court directed the

Sacklers to instruct the IACs to appoint counsel to coordinate with the Official Committee

regarding discovery in these cases and accept service of subpoenas.[27]    The IACs then retained

Royer Cooper Cohen Braunfeld LLC ("RCCB") as their counsel and accepted service of the

Official Committee's subpoenas as set forth in court-ordered stipulations.[28]

26.    The subpoenas served by the Official Committee on the Sacklers and their affiliates

all expressly sought responsive documents in the immediate possession of NRF, and the Sacklers

and their affiliates were of course obligated to obtain and produce such materials regardless of the

Official Committee's instruction.[29]    But the Sacklers did not do so, supposedly because virtually

all such documents would have to be withheld and logged as privileged.

---

[26] *See* April 26, 2020 Letter from Official Committee to the Court [ECF No. 1089] (seeking resolution of certain discovery disputes, including disputes relating to production of documents relating to the IACs); *see also The Official Committee's Omnibus Ex Parte Motion for Authorization to Conduct Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [ECF No. 1317] at 7-11.

[27] *See* May 1, 2020 Hearing Tr. at 87-88.

[28] *Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases, dated June 22, 2020* [ECF No. 1295 at Ex. C and 1346]; *Second Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases, dated July 22, 2020* [ECF Nos. 1490 and 1518].

[29] *See, e.g.,* Hurley Decl. Ex. 2 (letter from Mitchell Hurley to J. Rosen and J. Ball, dated March 31, 2020 attaching Side A Subpoena at 10) ███████████████████████████████████████████████████████; *see Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 91 N.Y.2d 30, 34 (1997) ("A majority of courts and State legal ethics advisory bodies

27.    Subsequently, however, the Moving Parties learned through discovery and the meet and confer process that the non-legal roles played by NRF and its personnel were much more extensive than previously suggested.  For example, ██████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████.[30]  The Official Committee sought and obtained the Court's authorization to serve formal discovery on Baker and has since worked with his counsel at Simpson in an effort to obtain additional disclosures.[31]

28.    Since July 31, 2020, Simpson also has been authorized by the Debtors, the Sacklers, and their other affiliates, including, later, the IACs, to coordinate NRF's collection and production of emails responsive to requests served on those parties that are in NRF's immediate possession. The Moving Parties have been negotiating search terms and collection terms with Simpson.  While slower than the Moving Parties would like, the negotiation of search parameters with Simpson is proceeding.  In addition, the Moving Parties have asked Simpson to ask NRF to conduct manual searches for certain documents, including records relating to services billed to or paid for by the Debtors, the Sacklers and their affiliates over the years.  Although each of its clients joined in the requests, NRF has yet to produce the billing materials or commit to a date by which they will be produced.

---

considering a client's access to the attorney's file in a represented matter . . . presumptively accord the client full access to the entire attorney's file on a represented matter with narrow exceptions.").

[30] *See* [ECF No. 1754, Ex. 49] (email dated March 31, 2015 with an attached document entitled "Report of SDB Activities and Responsibilities," which was produced to the UCC under the Bates numbers PPLPUCC000336422 and PPLPUCC000336423).

[31] *The Official Committee's Omnibus Ex Parte Motion for Authorization to Conduct Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [ECF No. 1317].

<span style="color:red">REDACTED</span>

29.    In addition to the collection of NRF emails and other documents under discussion with Simpson, it has recently become apparent that NRF has possession of a significant volume of documents and information that the Moving Parties expected to be part of the IACs' productions. These include documents that are typically within a company's actual possession and normally collected outside of email searches, such as board records, contracts, and sales figures.[32]  Among other things, it appears that NRF was largely, if not solely, responsible for developing the terms of the agreements concerning many of the non-cash transfers by the Debtors, including setting what appear to be substantially below-market royalty rates with the IACs, tracking the sale of opioids by the IACs, and calculating the payments for royalty amounts owed by the IACs.

30.    And the IACs and potentially also the Debtors have advised that they have few or no records pertaining to these subjects, which appear to have been maintained by NRF.[33] Troublingly, it was not until September 16, 2020—two days before the deadline for the IACs to substantially complete the production of Non-ESI Documents—that RCCB informed the Official Committee that documents responsive to certain of its priority requests—including, notably, those related to the cash and non-cash transfers to the IACs—are largely, if not solely, in the custody of NRF.[34]  This information is critical to the Official Committee's investigation of, among other things, valuable claims to claw back potentially fraudulent transfers to the IACs.

---

[32] See, e.g., [ECF No. 1754, Ex. 41] (Letter from M. Hirschfield to A. Vinson Crawford, dated September 16, 2020) at 5 ████████████████████████████████████████████████, 6 ███████████████████████████████████████████████████████████████████████████████████████, 10-11 ███████████████████████████████████████████████████████████████████.

[33] Id.; [ECF No. 1754, Hurley Decl., Ex. 41] (Letter from M. Hirschfield to A. Vinson Crawford, dated September 16, 2020), Ex. 91 (Email correspondence from September 5, 2020 to September 25, 2020 between M. Hirschfield and A. Vinson Crawford).

[34] See [ECF No. 1754, Ex. 41, Ex. 91.].

31.     While the Official Committee has received some assurances from RCCB that collection of these documents is *now* underway, it remains unclear when they will be produced and whether they will be produced by the deadlines called for in the IAC Discovery Stipulation.[35] This delay is especially troubling given that the documents the IACs now claim are in the possession of NRF, and that NRF has apparently just begun to collect, fall directly within the categories of documents the Official Committee sought from the Sacklers and the IACs directly beginning in November and December 2019, respectively.[36]

32.     Importantly, NRF has also recently retained Cleary as its own counsel in these proceedings.  The Official Committee believes that part of the delays and difficulties in obtaining documents, or even in obtaining clear answers, from NRF has been introduced by Cleary's new involvement.  For instance, the Official Committee understands that Cleary has insisted, over the supposed objection of the IACs, on obtaining consent from the Debtors, the Sacklers, and other unidentified NRF "client groups" before even providing certain of the IACs' documents to counsel for the IACs, so that they can review and produce responsive documents.[37]   The Official

---

[35] *See* [ECF No. 1754, Ex. 91] ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████; Letter from M. Hirschfield to A. Vinson Crawford, dated October 2, 2020, Hurley Decl., Ex. 7 ████████████████████
██████████████████████████████████████████████████████.

[36] Letter from M. Hurley to I. McClatchey, dated December 18, 2019, Hurley Decl., Ex. 1; [ECF No. 1754, Ex. 91] ████████████████████████████████████████████████████████████████
███████████████████████████████████████████.

[37] October 2, 2020 M. Hirschfield letter to A. Vinson Crawford, Hurley Decl., Ex. 7 at 4-5 ████████
█████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████████

Committee understands that the IACs have asked NRF to provide the material that is exclusively the IACs without delay, but have received no response to their request.  The Official Committee has also sought to discuss the status of collection of IAC documents with Cleary directly, but to no avail.[38]    The Official Committee's concern regarding the status of NRF discovery is underscored by the fact that RCCB has recently advised the Official Committee that Cleary has represented that it will continue to liaise only with RCCB regarding the status and timing of IAC discovery.

33.    The Moving Parties intend to continue pursuing the documents in the possession of NRF through its pending meet-and-confer efforts with Simpson and RCCB.  However, given the recent revelations regarding the extent of NRF's involvement, and potentially complete control, over the substantial distributions of value from the estate, the pace at which the NRF collection has proceeded to date, and Cleary's present refusal even to speak to the Official Committee about NRF's collection efforts, it is imperative that this Court authorize the Moving Parties to serve Bankruptcy Rule 2004 discovery on NRF so that they can move quickly in the event compulsory process is required.

## RELIEF REQUESTED

34.    The Moving Parties respectfully request that the Court enter an order pursuant to Bankruptcy Rule 2004, substantially in the form of the Proposed Order attached to this Motion as **Exhibit A**, authorizing them to conduct an examination of the Former Purdue Executives, the Independently Represented Directors and Officers, and NRF.

---

[38] *See* Hurley Decl., Ex. 6 (September 29, 2020 A. Vinson Crawford email to Cleary).

## BASIS FOR RELIEF

35.     As Bankruptcy Rule 2004 provides, "On motion of any party in interest, the court may order examination of any entity."  Under Bankruptcy Rule 2004, parties-in-interest such as the Moving Parties may request discovery related to "acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(b).

36.     The purpose of Bankruptcy Rule 2004 is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."  *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).  Rule 2004 permits discovery "to determine the extent of the estate's assets and recover those assets for the benefit of creditors."  *In re Madison Williams & Co., LLC*, No. 11-15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Jan. 7, 2014); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, No. 09-11893 (SMB), 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014) ("The underlying purpose of Rule 2004 is to 'allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate.'") (quoting *Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362, 364 (S.D.N.Y. 1984)).

37.     The scope of discovery allowed under Bankruptcy Rule 2004 is "'very broad and great latitude is ordinarily permitted.'"  *In re Madison Williams*, 2014 WL 56070, at *3 (quoting *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)).  Courts repeatedly have recognized that discovery provided for under Rule 2004 encompasses "broader discovery than is available under the Federal Rules of Civil Procedure."  *In re Bernard L. Madoff*, 2014 WL 5486279, at *2 (citing *In re Recoton Corp.*, 307 B.R. at 755); *see also In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y.

17

2002) ("[T]he scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure and may be in the nature of a 'fishing expedition.'"); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (same).

38.     Bankruptcy Rule 2004 permits discovery of any party, including third parties, "if they have knowledge of the debtor's affairs." *In re Ecam Pub'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Recoton Corp.*, 307 B.R. at 755 ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation."); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[T]he Court may authorize the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate.").

39.     The Moving Parties require the discovery requested in this Motion, which "may affect the administration of the debtor[s'] estate[s]," in order to investigate potential estate claims. Fed R. Bankr. P. 2004(b).

40.     The information sought through this Motion relates directly to the "acts, conduct, or property or to the liabilities and financial condition" of the Debtors and bears directly on the potential estate claims. *See* Fed. R. Bankr. P. 2004(b). Thus, the discovery requested by this Motion is "*prima facie* consistent with the Rule's . . . purposes of allowing the committee to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims." *See In re Recoton Corp.*, 307 B.R. at 756.

41.     For the reasons stated in this Motion, the Former Purdue Executives and Independently Represented Directors and Officers are central actors with important knowledge regarding the Debtors' business practices, board practices, transfer deliberations and determinations, and liability risk arising from the sale and marketing of OxyContin, as well as the

Debtors' and the Sacklers' awareness and motivations concerning the same. The Moving Parties have worked to obtain relevant documents and schedule certain depositions voluntarily but seek the authority to conduct examinations under Bankruptcy Rule 2004 in order to ensure that depositions proceed promptly and efficiently, and on a schedule consistent with the needs of this case and the soon-to-commence mediation.

42.     Similarly, NRF is the repository of information concerning every aspect of the on-going investigation of the Debtors' practices, the board's knowledge, the Debtors' transfers, the Sacklers' receipt of transfers in complex trust structures, transactions with the IACs and Sackler conduct, knowledge and intent, among other things. The Moving Parties have sought records in the immediate possession of NRF through coordination with counsel to Baker and NRF's clients. However, recent developments regarding NRF's retention of IAC documents, and the continuing difficulty in obtaining them, demonstrate that it is important for the Moving Parties to be able to serve formal discovery on the law firm itself in order to ensure efficient and complete disclosures.

## COMPLIANCE WITH RULES

43.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. The Moving Parties submits that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

44.     The Moving Parties are proceeding with this Motion on an *ex parte* basis. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Case   Management   Order   and   available   on   the   Debtors'   case   website   at

19

https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this Motion.

## NO PRIOR REQUEST

45.     No prior request for the relief sought in this Motion has been made.

## RESERVATION OF RIGHTS

46.     The Official Committee and its members, and the NCSG and its members, each reserve all of their respective rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Motion, to seek additional discovery, add additional parties, or to raise additional grounds for granting this Motion during any hearing on the Motion.

## CONCLUSION

For the foregoing reasons the Moving Parties respectfully requests that the Court enter an order, substantially in the form of **Exhibit A** authorizing them to conduct an examination of the Former Purdue Executives, the Independently Represented Directors and Officers, and NRF.

*[Remainder of page intentionally left blank]*

New York, New York

Dated:  October 6, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ *Mitchell P. Hurley*

Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al.*

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ *Andrew M. Troop*
Andrew M. Troop
Jason S. Sharp (admitted *pro hac vice*)
Andrew A. Alfano
31 West 52nd Street
New York, NY 10019
Telephone: (212) 858-1000
andrew.troop@pillsburylaw.com
jason.sharp@pillsburylaw.com
andrew.alfano@pillsburylaw.com

*Counsel to the Ad Hoc Group of Non-Consenting States*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004**
**AND 9016 AUTHORIZING EXAMINATION OF CERTAIN FORMER DEBTOR**
**EXECUTIVES, SEPARATELY REPRESENTED DEBTOR PERSONNEL, AND**
**NORTON ROSE FULBRIGHT PURSUANT TO FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE 2004 AND 9006**

Upon the motion, dated October 6, 2020 (the "Motion"), of the Official Committee of

Unsecured Creditors (the "Official Committee") of Purdue Pharma L.P. ("Purdue") and its

affiliated debtors and debtors-in-possession (collectively, the "Debtors"), and the Ad Hoc

Committee of Non-Consenting States ("NCSG" and, together with the Official Committee,

the "Moving Parties"), for an order pursuant to the Federal Rules of Bankruptcy Procedure

2004 and 9016 authorizing an examination; and the Court having jurisdiction over the Motion

pursuant to 28 U.S.C. § 1334(a); and the venue of these chapter 11 cases and the Motion being

proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Motion being a core

proceeding pursuant to 28 U.S.C. § 157(b); and no additional notice being required except as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard,
Stamford, CT 06901.

1

provided herein; and, after due deliberation and good and sufficient cause appearing therefor; now, therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The Moving Parties are authorized pursuant to Fed. R. Bankr. P. 2004 to conduct an examination of the Former Purdue Executives, the Independently Represented Directors and Officers, and NRF as defined in the Motion.

2.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

3.      The Official Committee, the Debtors, the NCSG, the Ad Hoc Committee, and the representatives of the Former Purdue Executives, Independently Represented Directors and Officers, and NRF shall meet and confer not only to attempt in good faith to resolve any disputes over any Subpoenas but also to efficiently coordinate the issuance of and compliance with the Subpoenas. In furtherance of the foregoing, on a going forward basis the Official Committee, the Debtors, the NCSG, and the Ad Hoc Committee shall record all time and expenses on this discovery matter and report the aggregate sum to each other on a weekly basis and also on a weekly basis discuss any cost containment issues.

Dated:  White Plains, New York

_____              _____
                                     THE HONORABLE ROBERT D. DRAIN
                                     UNITED STATES BANKRUPTCY JUDGE