# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

THOMAS J. MOLONEY
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
HOWARD S. ZELBO
DAVID E. BRODSKY
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE

CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES

RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
ARON M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 212 225 2416
soneal@cgsh.com

October 7, 2020

VIA ELECTRONIC COURT FILING

Hon. Robert D. Drain
U.S. Bankruptcy Court for the
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:  In re Purdue Pharma L.P., *et al.*, No. 19-23649 (RDD)

Dear Judge Drain:

We represent Norton Rose Fulbright US LLP ("Norton Rose") in connection with Norton Rose's provision of documents to certain recipients of document requests from the Official Committee of Unsecured Creditors (the "Receiving Parties")[1] in the above referenced matter (the "Chapter 11 Proceedings").  I respectfully submit this letter in response to *Ex Parte* Motion of the Official Committee of Unsecured Creditors of Purdue Pharma L.P., *Et Al.* and the Non-Consenting State Group for Entry of an Order Authorizing Examinations of Certain Former Debtor Executives, Separately Represented Debtor Personnel, and Norton Rose Fulbright Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006, Docket No. 1779 (the "Motion"), to explain Norton Rose's ongoing efforts to provide the Receiving Parties with documents in connection with requests from the Official Committee of Unsecured Creditors (the "UCC") to the Receiving Parties.

For many years, Norton Rose has represented many of the Receiving Parties.  As the Court and the UCC previously have been made aware, because of the different positions its clients now occupy in the Chapter 11 Proceedings, Norton Rose is unable to act as discovery counsel for any of them in this proceeding, although when requested it can provide its clients

---

[1]   The Receiving Parties consist of the Debtors, certain members of the Sackler families in their individual capacities, various independent associated companies ("IACs"), holding companies of certain of the Debtors, and Stuart Baker.

The Honorable Judge Drain, p. 2

with materials from their individual files pursuant to *Matter of Sage Realty Corp. v. Proskauer Rose Goetz & Mendehlsohn LLP*, 91 N.Y.2d 30 (1997), for their own use in discovery. *See* Letter to Judge Drain from Robert Schwinger, June 5, 2020. Accordingly, when the Receiving Parties asked Norton Rose to make materials available in response to UCC document requests, Norton Rose reconfirmed and memorialized its willingness to make materials from its files requested by its clients available to them for their use in discovery, with the clients taking responsibility for reviewing those files for responsiveness and privilege. In instances where requested file materials implicated the privileged and confidential client information of multiple Norton Rose clients who are now separately represented in these proceedings, and among whose interests Norton Rose could not intermediate, Norton Rose made clear that it could only proceed with the consent of all the affected clients, and it proceeded to obtain such consent.

Given the complexities involved, and to ensure the independence of the document collection and production process, Norton Rose retained an outside law firm, Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), to guide and facilitate Norton Rose's provision of documents to the Receiving Parties at its clients' direction in connection with the Chapter 11 Proceedings. In addition, Norton Rose retained separate ethics counsel to provide advice and guidance and assist with discovery issues.

The Motion now seeks to put the UCC "in a position to" subpoena from Norton Rose materials from its files of its work for various of the Receiving Parties it represented. Motion at ¶ 8. These materials appear to duplicate or overlap with materials the UCC previously has sought directly from certain of the Receiving Parties that are the subject of the UCC's pending motion to compel against those Receiving Parties (Doc. Nos. 1752-54). To the extent those Receiving Parties have requested files from Norton Rose for such materials, Norton Rose already has been and will continue to be cooperating with those Receiving Parties in making such material available to them for their use in responding to the UCC's discovery requests, as described above.

It is not clear how the UCC's proposed separate subpoena to Norton Rose could result in any material change to these ongoing processes. Under applicable ethical rules and opinions, including ABA Formal Opinion 473, a law firm faced with a subpoena or other demand for client documents must consult with, and take direction from, its clients. This obligation is rooted in a law firm's duty to protect client confidences and privileges, and that is precisely what has been going on in this matter since the UCC first began seeking materials that may be found in Norton Rose's files.

The below provides the Court specific information concerning Norton Rose's efforts:

Custodial Data. In late July, the Receiving Parties requested that Norton Rose make available to them certain data from 1995 to the present for 13 custodians associated with Norton Rose (the "Custodial Data"). Immediately upon receiving a request for assistance from the Receiving Parties, Cleary Gottlieb began working with the Receiving Parties, through their counsel, on a protocol for Norton Rose to provide the Custodial Data. Having a protocol was a necessary first step in light of Norton Rose's ethical duties to its clients. Specifically, under the protocol agreed by all of the Receiving Parties, Norton Rose was to make the Custodial Data

The Honorable Judge Drain, p. 3

available to Simpson Thacher, counsel for Stuart Baker.  The clients agreed that their respective counsel would take responsibility for reviewing the Custodial Data for responsiveness to the document requests they received and for their respective privilege or other protections, as well as responsibility for preparing privilege logs.  Beginning on August 14, 2020, Norton Rose delivered the Custodial Data for processing and review in connection with the UCC's requests to the Receiving Parties.  The Custodial Data amounted to over 6.8 million records totaling 2.1 terabytes.  Since that time, the UCC has been negotiating search terms with the Receiving Parties.  Motion at ¶ 28 (noting that negotiation of search terms is still "proceeding").

<u>Requests from IACs</u>.  On September 10, 2020, the IACs requested that Norton Rose make additional documents available to them (separate from the Custodial Data that Norton Rose had already made available), in connection with a July 6, 2020 subpoena from the UCC to the IACs.  In response to that request, Norton Rose has made several categories of documents and information available to the IACs, and has been working to make several hundred boxes of materials available from its network of off-site archival storage warehouses in preparation for turning over additional categories.  As Norton Rose has explained to the IACs, Norton Rose's files containing certain materials that the IACs have requested include not just material that belongs exclusively to the IACs, but also privileged or otherwise protected information of other client groups as well.  Norton Rose is working with the Receiving Parties to develop a protocol that allows Norton Rose to comply with its ethical obligations, as it did in respect of the request for Custodial Data.

<u>Request for Billing Data</u>.  Norton Rose is collecting decades of data from its billing records in connection with a request from the UCC to counsel for Stuart Baker.  Norton Rose is aiming to provide the data to counsel for Stuart Baker next week.  Given changes in accounting systems, and limitations on obtaining information from legacy billing systems that are no longer used by Norton Rose, as well as COVID-19 related matters, collecting this information has required substantial attention and time.

<u>Communication with the UCC</u>.  As previously noted, Norton Rose retained Cleary Gottlieb to assist Norton Rose with providing documents to the Receiving Parties at its clients' request.  Neither Cleary Gottlieb nor Norton Rose has been involved in the Receiving Parties' discussions with UCC counsel on these matters because Norton Rose is simply taking direction from its clients.  Cleary Gottlieb, as Norton Rose's counsel, cannot provide discovery for the Receiving Parties or negotiate issues on their behalf with the UCC, and it would not be appropriate for Cleary Gottlieb to purport to do so.  Decisions involving the Receiving Parties' responses to the UCC's document requests, including questions related to the Receiving Parties' various privileges and the scope of search terms, are necessarily the purview of the Receiving Parties that received the document requests.

At the September 30 hearing, Your Honor commended all involved in the discovery process for acting "professionally and proficiently."  Norton Rose and Cleary Gottlieb have endeavored to do the same.  Norton Rose will continue to provide its clients' documents at their direction, consistent with its ethical obligations.  Given that the Receiving Parties were able to agree on a protocol for collecting the Custodial Data, given that Norton Rose is working with the Receiving Parties to develop a protocol for collecting the documents requested by the IACs, and given Norton Rose's is working to collect the billing data requested by counsel for Stuart

The Honorable Judge Drain, p. 4

Baker, it is not clear what a Rule 2004 Order would accomplish.  Even if the UCC were authorized to issue a subpoena, Norton Rose would have to establish and follow a protocol (perhaps identical to the existing protocol relating to Custodial Data) to ensure that its clients have the opportunity to review materials in light of client confidences and privileges, which Norton Rose cannot unilaterally waive.

In any event, with this background, we hope the Court understands that Norton Rose is committed to being constructive and honoring its ethical duties to its clients.  We are available to answer any of the Court's questions.

                                              Respectfully Submitted,
                                              */s/ Sean O'Neal*
                                              Sean O'Neal
                                              Cleary Gottlieb Steen & Hamilton LLP