

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9              Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                     United States Bankruptcy Court

13                     300 Quarropas Street, Room 248

14                     White Plains, NY 10601

15

16                     April 22, 2020

17                     10:15 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: UNKNOWN

1   HEARING re Notice of Agenda / Agenda for April 22, 2020

2   Omnibus Hearing

3

4   HEARING re First Interim Fee Application of Dechert LLP, as

5   327(e) Special Counsel, for Compensation for Professional

6   Services Rendered and Reimbursement of Actual and Necessary

7   Expenses Incurred During the Period : 9/15/2019 to

8   1/31/2020, fee:$5,252,892.22, expenses: $815,614.96 (ECF

9   #933)

10

11  HEARING re First Application for Interim Professional

12  Compensation of Arnold & Porter Kaye Scholer LLP for

13  Allowance of Compensation and Reimbursement of Expenses as

14  Special Counsel for the Debtors for the Period from

15  September 16, 2019 through January 31, 2020 (ECF #934)

16

17  HEARING re Application for Interim Professional Compensation

18  / First Quarterly Fee Statement of King & Spalding LLP for

19  Compensation for Services Rendered and Reimbursement of

20  Expenses Incurred as Special Counsel to the Debtors and

21  Debtors in Possession for the Period From September 16, 2019

22  Through January 31, 2020, fee:$5408371.90, expenses:

23  $3845.40 (ECF# 935)

24

25

1    HEARING re First Interim Fee Application of Wilmer Cutler

2    Pickering Hale and Dorr LLP for Allowance of Compensation

3    and Reimbursement of Expenses for Wilmer Cutler Pickering

4    Hale and Dorr LLP, Debtor's Attorney, period: 9/16/2019 to

5    1/31/2020, fee:$448,644.25, expenses: $3,529.30 (ECF #941)

6

7    HEARING re First Interim Application of Davis Polk &

8    Wardwell LLP for Compensation for Services Rendered and

9    Reimbursement of Expenses Incurred as Counsel to the Debtors

10   and Debtors in Possession for the Period: 9/15/2019 to

11   1/31/2020, fee: $24,058,793., expenses: $289,721.70

12   (ECF # 945)

13

14

15   HEARING re First Interim Fee Application of Jones Day for

16   Compensation for Services Rendered and Reimbursement of

17   Actual and Necessary Expenses Incurred as Special Counsel to

18   the Debtors for the Retention Period : 9/15/2019 to

19   1/31/2020, fee: $1067512.46, expenses: $12001.56 (ECF #948)

20

21

22

23

24

25

Page 4

1  HEARING re First Interim Fee Application of KPMG LLP as Tax

2  Consultant to the Debtors and the Official Committee of

3  Unsecured Creditors for Allowance of Interim Compensation

4  for Services Rendered and Reimbursement of Expenses for the

5  Period : 12/23/2019 to 1/31/2020, fee:$580,539.30, expenses:

6  $614.93 (ECF #950)

7

8  HEARING re Interim Application of Ernst & Young LLP for

9  Compensation and Reimbursement of Expenses for the Period:

10 9/15/2019 to 1/31/2020, fee:$200,000.00, expenses:

11 $29,161.00 (ECF #951)

12

13 HEARING re AlixPartners, LLP's First Interim Application for

14 the Period September 16, 2019 through January 31, 2020 for

15 Allowance of Compensation for Services Rendered and

16 for Reimbursement of Expenses Incurred as Financial Advisor

17 to the Chapter 11 Debtors, period: 9/16/2019 to 1/31/2020,

18 fee:$7,223,413.00, expenses: $324,981.79 (ECF #952)

19

20 HEARING re First Interim Fee Application Of Skadden, Arps,

21 Slate, Meagher & Flom LLP For Compensation For Services

22 Rendered And Reimbursement Of Expenses As Special Counsel To

23 The Debtors For The Period: 9/15/2019 to 1/31/2020, fee:

24 $3,923,706.10, expenses: $25,670.12 (ECF #958)

25

1   HEARING re First Interim Fee Application of PJT Partners LP

2   as Investment Banker to the Debtors and Debtors-In

3   Possession for Allowance of Compensation for Services

4   Rendered and for the Reimbursement of all Actual and

5   Necessary Expenses Incurred for the Period : 9/15/2019 to

6   1/31/2020, fee:$1,020,000.00, expenses: $86,456.43

7   (ECF #973)

8

9   HEARING re First Interim Application of Jeffries LLC for

10  Allowance of Compensation Earned and Reimbursement of

11  Expenses Incurred as Investment Banker for the Official

12  Committee of Unsecured Creditors for the Period: 10/4/2019

13  to 1/31/2020, fee:$900000, expenses: $75203.89 (ECF #940)

14

15  HEARING re First Interim Fee Application of Bayard, P.A. for

16  Compensation for Services Rendered and Reimbursement of

17  Expenses as Co-Counsel to the Official Committee of

18  Unsecured Creditors for the Period : 9/29/2019 to 1/31/2020,

19  fee: $950561, expenses: $7715.34 (ECF #942)

20

21  HEARING re First Interim Application of Province, Inc.,

22  Financial Advisor to the Official Committee of Unsecured

23  Creditors of Purdue Pharma L.P., et al., for Compensation

24  and Reimbursement of Expenses for the Interim Period:

25  10/1/2019 to 1/31/2020, fee:$4865202.5, expenses: $31605.81

Page 6

1    (ECF #946)

2

3    HEARING re First Interim Fee Application of Akin Gump

4    Strauss Hauer & Feld LLP as Counsel to the Official

5    Committee of Unsecured Creditors of Purdue Pharma L.P., et

6    al., for Allowance of Compensation for Services Rendered and

7    Reimbursement of Expenses for the Period : 9/26/2019 to

8    1/31/2020, fee:$9838245, expenses: $165733.29

9    (ECF #947)

10

11   HEARING re First Interim Fee Application of Kurtzman Carson

12   Consultants LLC as Information Agent to the Official

13   Committee of Unsecured Creditors for Allowance of

14   Compensation for Professional Services Rendered and for

15   Reimbursement of Actual and Necessary Expenses Incurred,

16   period: 11/1/2019 to 1/31/2020, fee:$10729.22,

17   expenses: $14991.54 (ECF #949)

18

19   HEARING re First Interim Fee Application of Brown Rudnick

20   LLP as Co-Counsel to the Ad Hoc Committee of Government and

21   Other Contingent Litigation Claimants for Services and

22   Reimbursement of Expenses Incurred for the period: 9/16/2019

23   to 1/31/2020, fee:$1,135,221.75, expenses: $11,073.89

24   (ECF #944)

25

1   HEARING re First Interim Fee Application of FTI Consulting,

2   Inc. For Ad Hoc Committee of Governmental and Other

3   Contingent Litigation Claimants, Other Professional, period:

4   9/19/2019 to 1/31/2020, fee: $3,183,065.00, expenses:

5   $15,395.05 (ECF #954)

6

7   Application of Otterbourg P.C. As Co-Counsel of the Ad Hoc

8   Committee of Governmental and Other Contingent Litigation

9   Claimants, period: 9/16/2019 to 1/31/2020, fee:$646,606.50,

10   expenses: $2,956.87 (ECF #955)

11

12   HEARING re First Interim Application of Gilbert LLP, as Co-

13   Counsel to the Ad Hoc Committee of Governmental and Other

14   Contingent Litigation Claimants period: 9/16/2019 to

15   1/31/2020, fee:$946,935.75, expenses: $22,218.14 (ECF #956)

16

17   HEARING re First Interim Application of Kramer Levin

18   Naftalis & Frankel LLP, as Co-Counsel to the Ad Hoc

19   Committee of Governmental and Other Contingent Litigation

20   Claimants, For Allowance of Compensation for Professional

21   Services Rendered and For Reimbursement of Actual and

22   Necessary Expenses Incurred For the Period: 9/16/2019

23   to 1/31/2020, fee:$2,635,092.25, expenses: $47,449.28

24   (ECF #957)

25

1    HEARING re Application to Employ Cole Schotz P.C. as

2    Efficiency Counsel to Unsecured Creditors Committee

3    [ECF No. 1013]

4

5    HEARING re Response to Motion Ad Hoc Committee for NAS

6    Children's Response to the Independent Public School

7    Districts' Motion to Submit Claim to Mediation (related

8    document(s)1038, 998, 1025) filed by Scott S. Markowitz on

9    behalf of Ad Hoc Committee of NAS Babies (ECF #1055)

10

11   HEARING re Motion for Relief from the Automatic Stay

12   [Allergan Finance LLC] [ECF No. 909]

13

14   HEARING re Opposition of New York Plaintiffs to Defendants

15   (Allergan) Motion For Relief From The Automatic Stay

16   (related document(s)909) (ECF 979)

17

18   HEARING re Debtors' Objection to Co-Defendants' Motion for

19   Relief from the Automatic Stay (related document(s)909)

20   (ECF #1048)

21

22   HEARING re Opposition of the Non-Consenting States to Opioid

23   Defendants' Motion for Relief from the Automatic Stay

24   (related document(s)909) filed by Andrew M. Troop on behalf

25   of Ad Hoc Group of Non-Consenting States (ECF #1049)

1    HEARING re Objection of the Official Committee of Unsecured

2    Creditors to the Motion for Relief from the Automatic Stay

3    Filed by Defendants in the New York Opioid Litigation and

4    Joinder in the Debtors' Objection Thereto (related

5    document(s)909, 1048) (ECF #1050)

6

7    HEARING re Ad Hoc Committee's Objection and Joinder in the

8    Debtors' Objection to Co- Defendants' Motion for Relief from

9    the Automatic Stay (related document(s)909, 1048)

10   filed by Kenneth H. Eckstein on behalf of Ad Hoc Committee

11   of Governmental and Other Contingent Litigation Claimants

12   (ECF #1054)

13

14   HEARING re Reply to Motion (related document(s)909) filed by

15   George Robert Gage Jr on behalf of Allergan Finance LLC.

16   (ECF #1063)

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    DAVIS POLK & WARDWELL LLP

4         Attorneys for

5         450 Lexington Avenue

6         New York, NY 10017

7

8    BY:  MARSHALL HUEBNER (TELEPHONICALLY)

9

10   GAGE SPENCER

11        Attorneys for Allergan Finance, LLC

12        410 Park Avenue

13        New York, NY 10022

14

15   BY:  GEORGE GAGE (TELEPHONICALLY)

16

17   O'MELVENY & MEYERS LLP

18        Attorneys for Johnson & Johnson, Janssen

19        Pharmaceuticals, Inc., Ortho-McNeil-Janssen

20        Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals

21        400 South Hope Street, #1950

22        Los Angeles, CA 90071

23

24   BY:  EVAN JONES

25

Page 11

1    NEW YORK ATTORNEY GENERAL'S OFFICE

2         The Capitol

3         Albany, NY 12224

4

5    BY:  DAVID NACHMAN (TELEPHONICALLY)

6

7    PILLSBURY LAW

8         Attorneys for Ad Hoc Group of Non-Consenting States

9         31 West 52nd Street

10        New York, NY 10019

11

12   BY:  ANDREW TROOP (TELEPHONICALLY)

13

14   ALSO PRESENT TELEPHONICALLY:

15

16   DANIELLE GENTIN-STOCK

17   JENNIFER CHRISTIAN

18   MARK LIGHTNER

19   DONALD CREADORE

20   CHRISTOPHER PERKINS

21   MEGAN RUNDLET

22   LAUREN KELLEHER

23   SHEILA BIRNBAUM

24   HAYDEN COLEMAN

25   SCOTT DAVIDSON

```
 1   THOMAS LAURIA

 2   J. CHRISTOPHER SHORE

 3   ALICE TSIER

 4   SHMUEL VASSER

 5   ANDREW ALFANO

 6   SARAH BRYAN

 7   DANIELLE LEVINE

 8   CASEY NUNEZ

 9   HOWARD STEINBERG

10   BROOKS BARKER

11   SCOTT BICKFORD

12   CONSTANTINE DEAN POURAKIS

13   BENJAMIN KAMINETZKY

14   JAMES MCCLAMMY

15   NEGISA BALLUKU

16   JASMINE BALL

17   RYAN BUEHLER

18   MICHELLE BURKART

19   LAWRENCE FOGELMAN

20   ERIC HWANG

21   JEFFREY ROSEN

22   DAVID KLAUDER

23   ANNA KORDAS

24   NATASHA LABOVITZ

25   ANNA MCDERMOTT
```

1   MAURA MONGHAN

2   GOEFF MULVHILL

3   JAMIE O'CONNELL

4   ROBERT PADJEN

5   JEFFREY ROSENTHAL

6   DANIEL E. STROIK

7   JENNIFER BRAGG

8   ALIX BROZMAN

9   ANTHONY CLARK

10  ALYSSA DACUNHA

11  JESSE DELCONTE

12  KENNETH H. ECKSTEIN

13  CARLINE CANGE

14  RORY GRIESS

15  JEREMY KLEINMAN

16  ALEX LEES

17  JENNIFER MADDEN

18  RACHAEL RINGER

19  GEORGE SHUSTER

20  ARTEM SKOROSTENSKY

21  CLAUDIA SPRINGER

22  KAITLYN SUNDT

23  MELISSA VAN ECK

24  CATRINA SHEA

25  JENNIFER FEENEY

Page 14

1    JUSTIN ALBERTO

2    MICHAEL ATKINSON

3    GERARD CICERO

4    ERIN FAY

5    DAVID MOLTON

6    JEREMY PEARLMAN

7    STEVEN POHL

8    ROBIN SPIGEL

9    SARA BRAUNER

10   MITCHELL P. HURLEY

11   GREGORY JOSEPH

12   ARIK PREIS

13   NICHOLAS PREY

14   JEREMY RYAN

15   RYAN D. SLAUGH

16   AARON STULMAN

17   GERARD UZZI

18   ADAM HABERKORN

19   MATTHEW PIERS

20   MARGARET TRUESDALE

21   MELANIE CYGANOWSKI

22   VICTOR ORDONEZ

23   PAU SCHWARTZBERG

24   DONNA WELCH

25   TIMOTHY KNAPP

Page 15

1    THOMAS MAEGLIN

2    EMILY GRIMM

3    KAMI QUINN

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2             THE COURT:  Hello.  Good morning.  This is Judge

 3    Drain.  This is a wholly telephonic hearing.  I know there

 4    are many people attending on the live line as well as many

 5    listening in.  I will ask each of you when you speak to

 6    identify yourself and your client.  I may ask you to do that

 7    again later in oral argument if I believe that the court

 8    reporter may have difficulty identifying you from the

 9    official record of this set of hearings which is being taken

10    by Court Solutions.  That raises one other point.  That's

11    the only recording of this telephonic conference that should

12    be taken.  No other recordings are permitted.

13             So with that introduction, I have the agenda for

14    today's omnibus hearing in In re Purdue Pharma, L.P., et

15    al., and I'm happy to go down the agenda.

16             MR. HUEBNER:  Perfect.  Your Honor, can you hear

17    me clearly?

18             THE COURT:  Yes, I can.  I hope you all could hear

19    me clearly as well.  I'm sorry I'm late.  I had a little

20    difficulty getting on.  For some reason they sent me right

21    into the dashboard without the phone number so -- anyway, I

22    apologize for being late.

23             MR. HUEBNER:  No worries.  We can hear you

24    terrifically well.

25             THE COURT:  Okay.
```

1          MR. HUEBNER:  So let me begin by noting that I

2    very much hope that everyone in their various venues is safe

3    and well and healthy with their families in these continuing

4    unprecedented times.  Your Honor, there's not really much of

5    a status report because, frankly, I think we're all

6    attending to lots of thing, including Purdue.  While many

7    things are going on including the mediation which is

8    proceeding apace, there's not really a lot of

9    (indiscernible) agenda items I think are useful to discuss.

10          There one exception which is, we wanted to give

11   the Court an update on the ERF in light of (indiscernible)

12   chambers conference a couple weeks ago and since -- as a

13   very strong sign of just how passionately everyone feels

14   about every single aspect of the ERF, even the seven

15   sentences that I'm about to, quote, read, close quote, were

16   scripted and signed off on and commented on by multiple

17   parties and I think people are even printing them out and

18   are following along to make sure that I know how to read.

19   So that's -- sort of res ipsa loquitur.

20          So here is the update.  After the chambers

21   conference with Your Honor on March 30th, the Debtors, the

22   creditors committee, the consenting ad hoc committee, and

23   the non-consenting state's group took Your Honor's guidance

24   to heart and went back to work on the ERF.  The parties

25   exchanged further proposals in good faith in an attempt to

Page 18

1    be responsive to Your Honor's comments.  Ultimately, comma,

2    the Debtors, creditors committee, consenting ad hoc

3    committee and non-consenting states collectively concluded

4    that despite the best intentions on all sides, pursuit of an

5    ERF should be paused temporarily while we allow planned

6    mediation to progress.  The creditors in this case continue

7    to have deeply-held fundamental differences in view as to,

8    among other things, the optimal use of ERF funds and

9    appropriate governance and it has become clear that

10   attempting to resolve those differences while parties are

11   focused on planned mediation was placing additional strain

12   on that intense, complex, and important process.

13        All parties believe that an ERF is more likely to

14   be successful after additional progress has been made in

15   planned mediation.  To be clear, while we are pausing

16   consideration of an ERF at this time, it is not cancelled

17   and all parties have agreed to revisit it once planned

18   mediation has progressed further.  All parties hope to be

19   back to Your Honor in the future with an ERF.

20        So that is the ERF update.  I guess since it is,

21   obviously, cross-refenced to mediation, I should note that

22   the mediators do continue to be quite hard at work.  There

23   are multiple calls, multiple sessions, multiple video calls

24   going on with a wide variety parties many times a week, and

25   they're, you know, asking lot of excellent questions of

Page 19

1    people and I won't say anything more than that, because

2    obviously it's a conflict to mediation, but we do want Your

3    Honor to, you know, be comfortable that the mediators are, I

4    think, quite fully engaged and I think the parties in the

5    case are quite fully engaged with the mediators.

6            So with that unusually brief case update let me

7    turn as Your Honor had said to the agenda letter.  Pod

8    number one -- the hearing obviously as the Court knows is

9    utterly uncontested with a single exception that we'll deal

10   with at the end which is the lift stay motion --

11           THE COURT:  Mr. Huebner, you cut out.  Mr.

12   Huebner?  Hello?

13           MR. TROOP:  Your Honor -- it's -- Your Honor, this

14   is Andrew Troop.  I don't know if Mr. Huebner is having the

15   same issue as I am.

16           THE COURT:  I -- I could not hear him.  I can now

17   hear you.  Mr. Huebner, are you able to hear me?

18           MR. TROOP:  Your Honor, for some reason, the

19   website -- at least for me, the dashboard kicked it as --

20   kicked itself off and now when I'm talking to you it seems

21   to automatically be trying to mute me.

22           THE COURT:  Yes.  It's doing the same thing to me

23   as well and I think it may have done the same to Mr.

24   Huebner.  You know, I've been using this product for about

25   two --

```
 1              MR. TROOP:  Okay.  Hold on.  Your Honor, can you
 2      hear me?  It just said, unmuted by judge so I'm not sure if
 3      --
 4              THE COURT:  Yeah.
 5              MR. TROOP:  -- maybe the Court accidentally --
 6              THE COURT:  No.  There was something wrong with my
 7      line.  It kept muting me so maybe it was muting you also and
 8      it was muting Mr. -- well, it was muting other people, too,
 9      who were trying to speak.  I was saying, I've been able to
10      use this -- hello.  Can anyone hear me?
11              MR. TROOP:  Yeah, you sound --
12              THE COURT:  What is going on?
13              MR. TROOP:  We can all hear you.
14              THE COURT:  Okay.  Very well.  There was a period
15      where I could not hear you and I could not hear Mr. Troop
16      either.  I was about to say I've been using this Court
17      Solutions system now for about ten days and this is the
18      first time I've had a problem with it.  Someone from the
19      clerk's office is on the phone.  I just -- I want to ask
20      him.  (Indiscernible) is there -- what' going on with this?
21      Do you know?
22              CLERK:  I'm not too sure exactly what is going on.
23      We're trying to get in touch with (indiscernible) right now.
24              THE COURT:  Okay.  It's --
25              CLERK:  I will keep --
```

1          MR. HUEBNER:  So, Your Honor, I just --

2          THE COURT:  It's working now so -- but I would

3     like -- (indiscernible), if you could get ahold of the Court

4     Solutions people just to make sure they're on top of this.

5     In the meantime, we'll try to proceed with the hearing.

6          MR. HUEBNER:  Yeah.  So Your Honor, I just texted

7     the CEO of the company in the background who is now

8     personally jumping in to monitor it and make sure we don't

9     have any further difficulties during the call and --

10          THE COURT:  Very well,

11          MR. HUEBNER:  -- he'll check into the problem of

12     your line so I have (indiscernible).

13          THE COURT:  Okay.  So when you cut out, Mr.

14     Huebner, you were -- you had finished your reading of the

15     statement on the emergency relief fund and I don't have any

16     further questions or comments on that.  What I stated, that

17     the parties --

18          MR. HUEBNER:  So what I did right after that, Your

19     Honor --

20          THE COURT:  Yeah.  You also stated the parties are

21     heavily involved still in the mediation and my only comment

22     on that is I'm glad to hear that and I'm grateful to the

23     parties and the mediators for continuing to do that, I'm

24     assuming telephonically, but still on an active basis.  And

25     then you were going to proceed into the agenda at this

Page 22

1    point.

2             MR. HUEBNER:  Yeah.  And Your Honor, we're --

3    they're actually doing a lot of the mediations when the

4    Debtor's being done by video which is actually proving, at

5    least from our perspective, pretty effective -- you know,

6    the little boxes where you can actually see everybody and

7    make eye contact and all that.  But it actually is, I think,

8    working better than many us, you know, somewhat older folks

9    might have imagined.

10            So Your Honor, that does take us to the agenda

11   letter.  And so the first item is the bevy of quarterly fee

12   applications --

13            AUTOMATED VOICE:  The judge has left the call.  If

14   this was an accident or you were instructed by the judge to

15   rejoin the call, please call back.  Thank you for using

16   Court Solutions.  Goodbye.

17            AUTOMATED:  Welcome.  Please enter your six-digit

18   -- thank you.  Your personal identification number has been

19   accepted.  Welcome to your telephonic courtroom.  Your line

20   is live.  To access the Court Solutions advanced call

21   features, go to Court-Solutions.com and open the hearing

22   dashboard.  You are entering the courtroom.  Unmuted.

23            THE COURT:  -- go back for this first one.  The

24   examiner will be dealing with these on a going-forward basis

25   and it may be that -- on a going-forward basis, such a

Page 23

1    holdback isn't warranted for subsequent applications or a

2    lesser holdback but I'm not comfortable just having all the

3    money go out the door at this point.

4             On this -- on the more specific point, the

5    following firms appear to me be having a large number of

6    hours spent on employment and fee applications for

7    themselves.  I understand that Debtor's main counsel and the

8    committee's main counsel incurs additional time in reviewing

9    other's fee applications and I'm not talking about that.

10   I'm talking about the -- one's own applications, and I'll

11   just list those firms.  They should be focusing on why the

12   time is so much and whether it needs to.  I will note that a

13   number of firms who are doing comparable work have far fewer

14   hours spent on fee and employment applications.

15            So the following firms seem to me to be billing

16   unusual amount of time on those matters.  Dechert, King &

17   Spaulding, Davis Polk -- and again, this is on the firm's

18   own applications -- Jones Day, Skannon.  I guess that's it.

19            And then one small point.  It appears to me that

20   Kurtzman Carson may have duplicated a handful of expenses.

21   The aggregate amount of its expenses is slightly under

22   $15,000 -- $14,991.54.  There are entries in the January

23   expense report that seems to include entries from a November

24   one and I think that should probably lead to the expenses

25   being reduced to $10,416.74.  If they can explain how those

Page 24

1    aren't duplicate entries that's fine, but at least from the

2    documents it appears that they're duplicate.

3           So with those caveats and the only one that would

4    be a reduction would be the Kurtzman Carson one, I'll grant

5    each of the fee applications on an interim basis.

6           MR. HUEBNER:  Thank you, Your Honor.  And I

7    apologize, but to be clear, is the ruling that we can't have

8    any of the amounts -- the 20 percent from September to

9    (indiscernible)?  It said, no incremental payment can be

10   made at all on any of the now-approved interim fee

11   applications or --

12          THE COURT:  Right.  There would be a 20 percent

13   holdback on the fees not the expenses.

14          MR. HUEBNER:  Okay.  I mean, just so you know, we

15   had actually talked about the potential of adjourning this

16   hearing for one more omnibus to let the fee examiner get up

17   to speed on them and I think the decision was made and they

18   were comfortable that they would review these in the context

19   of the next batch, you know, given that --

20          THE COURT:  Right.

21          MR. HUEBNER:  -- these go all the way back to

22   September and we're already at almost May, it's a little bit

23   -- respectfully, I think it's a little bit tough to ask

24   people to deal with a -- because by the time we're at our

25   next quarterly fee app, you know, we'll be moving towards a

Page 25

1    year in this case and an addition, as the Court of course

2    knows from internal account procedures, there's a quite long

3    delay already between sort of you billing time and getting

4    paid the first 80 percent.  So I just -- you know, I guess

5    on behalf of everybody -- and I apologize for sort billing

6    into the peak of the buzz saw a little bit -- it is a little

7    bit difficult to contemplate having to go eight, nine, ten,

8    eleven months into a case and unlike every other

9    administrative creditor in the case, virtually all of who

10   are being paid currently or immediately, to be looking at,

11   you know, waiting potentially close to a year to get the

12   last 20 percent of quite material amounts for some of us.

13           THE COURT:  Well, again, I'm just not comfortable

14   doing it without the -- I mean, that's why I appointed the

15   fee examiner.

16           MR. HUEBNER:  Okay.

17           THE COURT:  I've been through them but that's

18   where I'm coming out on this.  So --

19           MR. HUEBNER:  Okay.  What we'll do is, if it's

20   okay with the Court is, we'll coordinate with the fee

21   examiners and see sort of what would make sense for them to

22   be able to go through these and get up to speed and then

23   obviously engage in the process contemplated.  And I assume

24   it would not be -- I -- would request that it not be --

25   would it be okay with the Court if in a month or two the fee

1    examiner was ready and had views on some or all these we

2    could come up with a mechanic where getting your approved

3    reductions or approval of the holdback amount done before

4    the next quarterly application is because that's not for

5    quite a while?

6            THE COURT:  That's probably fair, although the --

7    isn't it -- I mean, in a couple months then -- you're just

8    talking about two months -- but if the examiners able to do

9    that that's fine.

10           MR. HUEBNER:  Okay.  We'll figure something out.

11   Okay.  So that's probably enough on fees and --

12           THE COURT:  As far as the order is concerned,

13   there are three groups of professionals -- eleven Debtor

14   professionals, five committee professionals, and five ad hoc

15   committee professionals -- I could do one order with

16   schedules A and B covering everybody or I can do three.

17   It's really up to you all but -- you can just coordinate and

18   make sure that counsel for the committee and the ad hoc

19   committee know which order is being submitted and -- so they

20   know whether I need to prepare for their own group of

21   professionals or not.

22           MR. HUEBNER:  Yeah.  So well, in general, to save

23   everybody time and money, I think we often take the

24   (indiscernible) omnibus orders to cover this and we've

25   already been doing that and so we'll probably just submit an

Page 27

1   omnibus order that includes deletion of the authority to pay

2   the holdback amount and we'll see if KCC was able to resolve

3   and reduce the amount portioned from approval sought and by

4   the expense questions raised by Your Honor and if we can,

5   we'll wrap it all into an order and tie it up with a bow and

6   send it over.

7             THE COURT:  Okay.  Very well.  That's fine.  Thank

8   you.

9             MR. HUEBNER:  Terrific.  Your Honor, the second

10  matter is the Cole Scholz.  It's technically a committee

11  matter but for the sake of the --

12            THE COURT: Right.

13            MR. HUEBNER: -- easy flow, Mr. Price said that

14  unless the Court had questions I could just note that that

15  was next up on the agenda.  Obviously, you know, the lawyer

16  team that the committee wants to work with switched firms.

17            THE COURT:  Right.

18            MR. HUEBNER:  For efficiency counsel, it's just

19  moving it over.  There were no objections.  The Debtor

20  certainly has no objection.  I (indiscernible) think we've

21  granted a waiver to allow the switch to take place and

22  that's all we have on number two.

23            THE COURT:  All right.  I don't have any questions

24  on that.  The explanation is clear and I'm prepared to grant

25  that order so it can be emailed to me authorizing Cole

1    Schotz retention in place of the Bayard firm.

2            MAN:   Thank you, Your Honor.

3            MR. HUEBNER:   Okay.  So we're 1 for 17 so far.

4    It's going great.  The last matter on the agenda -- because

5    obviously one matter was resolved and I already entered the

6    order which -- thank you.  That saved us time from having to

7    talk about the settlement on the mediation cause and

8    participation.  The last item is the lift stay motion and

9    since we are not the moving, I will turn it over to the

10   movings.  I will note that in order to streamline the

11   hearing given the complexities of us all being in separate

12   spaces, those of us on the respondent's side had a call

13   (indiscernible) coordinated in what order we will address

14   the Court after the movants finish so, you know, that will

15   be smooth once it's time for us to respond.

16            So unless the Court has further questions on

17   anything else, I will turn it over to the movants for the

18   one contested matter on the agenda.

19            THE COURT:   Okay.  that's fine.

20            MR. GAGE:   Your Honor, it's Robert Gage on behalf

21   of Allergan Finance and I'll address our -- the moving

22   papers first.  We are one of the movants.  I think others --

23   other defendant movants -- may also wish to speak.

24            As Your Honor knows, we're seeking very limited

25   relief here to allow the Debtor to be added to the verdict

Page 29

1    form in the New York litigation in state court in

2    centralized Islip where the plaintiffs are the New York

3    attorney general in Suffolk and Nassau Counties, and I would

4    just note at the outset that plaintiff's own pleadings of

5    course identify the Debtor as the taproot of the opioid

6    crisis among other things.

7            But Your Honor, the relief we seek or the order we

8    asked the Court to enter is supported by the language of the

9    statute, New York case law, and the equities here.  As Your

10   Honor also knows the Debtors were originally a part of the

11   New York litigation.  They obviously filed and they've been

12   severed so are no longer a party to that litigation and

13   pursuant to the plain language of the automatic stay, there

14   is no proceeding against them nor would adding them to the

15   verdict form constitute a proceeding against them.

16           New York law supports this conclusion also.

17   Justice Friedman, in the asbestos case that we've cited

18   among others, clearly states that New York law as set forth

19   in Gannon Personnel which is a decision from 1977, favors

20   inclusion of bankruptcy defendants on the verdict sheet.

21   It's interesting also, Your Honor, as a footnote in that

22   opinion at the beginning which says that the federal courts

23   that have been tried in the so-called (indiscernible) cases

24   also followed the approach or at least strongly suggest that

25   they follow the approach of including Debtors on verdict

1    forms.

2              I won't go into all that case law in detail unless

3    Your Honor wants me to.  It's cited in our brief.  But I

4    think it's extremely clear from all reported New York

5    decisions that including the Debtor on the verdict form is

6    an accepted and appropriate practice.

7              I also, as our papers do, want to make clear that

8    by placing the Debtors on the verdict form that would not

9    impose any liability on the Debtors or create an

10   importionment finding which is binding on the Debtors.  Put

11   simply, Your Honor, there would be no binding decision with

12   regard to the Debtors if they're placed on the verdict

13   forms.

14             Moving to the equities, Your Honor, the -- to

15   repeat because I think it's a critical point, really the

16   Debtors are at the epicenter or taproot of this opioid

17   crisis and that's per the plaintiff's pleading.  So to

18   require the defendants to defend this case without the jury

19   having the benefit of a form that identifies the role of the

20   Debtors would really impose substantial and irreparable harm

21   on the defendants.  It really would be a violation of

22   fundamental due process, at least vis-à-vis the defendants.

23   And I think, Your Honor, the pie chart analysis --

24             THE COURT:  How is -- I'm sorry.  I -- because of

25   the fact that this is a telephonic hearing and I can't get

Page 31

1    your attention without interrupting by phone, I've let you

2    go ahead but the last point really does require a question.

3    Where, if at all, do you argue due process and how does it

4    exist given that you're relying on a statutory provision

5    that was enacted only about 30 years ago?  So how does due

6    process come into here at all?

7             MR. GAGE:  Well, I'm using due process in the

8    sense, Your Honor, that it would prejudice -- the prejudice

9    that would arise from not including the Debtors on the

10   verdict form.

11            THE COURT:  Okay.  So it's really the equities.

12   It's another word for saying equity.

13            MR. GAGE:  Yes, Your Honor.  Yes.

14            THE COURT:  Okay.  All right.  Go on -- I'm sorry.

15   I interrupted you but I just want to make sure we're not

16   going off on a tangent.  So you can feel free to keep going.

17            MR. GAGE:  Okay.  Thank you, Your Honor.  And as

18   our papers discuss, but I would want to highlight, the pie

19   chart analogy.  If the Debtors are not on the verdict form,

20   the risk exists -- a very strong risk exists -- that the

21   portion of the pie chart so to speak that should be

22   allocable to the Debtors will get filled in by allocation to

23   the defendants.  And so that really is among -- that's some

24   of the irreparable and substantial prejudice I'm talking

25   about and that we discuss in our papers.

1           And alternatively, or I should say on the other

2      side, balance in the equities -- there really is limited

3      incremental impact on the Debtors and the settlement

4      discussion.  I know there's speculation, particularly in the

5      Debtor's papers but others, about the impact including the

6      Debtors in the verdict form would have on the settlement

7      negotiations, but of course that's impossible to predict and

8      it's -- necessarily respect to it.  We could discuss, if

9      it's helpful to Your Honor I'd be glad to, all the

10     possibilities here but the reality is -- and the practical

11     reality is -- if the Debtors are not on the verdict form,

12     there is the significant prejudice that we've been

13     discussing to the defendants.

14           On the other hand, because there is no binding

15     liability or decision of any sort with regard to the

16     Debtors, their inclusion on that form is limited -- highly

17     limited.  And I think, you know, for the same reasons, Your

18     Honor, that I've outlined, if the -- we would urge the Court

19     find that the automatic stay does not extend to the Debtor's

20     inclusion on the verdict form, but if the Court were to

21     decide otherwise for the reasons discussed in our papers, we

22     would request relief from the automatic stay for good cause

23     for pretty much the same arguments we've been discussing.

24           That said, we strongly believe inclusion on the

25     verdict form -- again, per the language of the statute, the

1    New York case law, and the equities supports an order -- a

2    conclusion that the Debtor's inclusion on the verdict form

3    is appropriate.

4              THE COURT:  Okay.

5              MR. GAGE:  I know there's discussion in the -- I

6    can stop I just -- the last thing I'd add is some brief

7    discussion about the preliminary injunction but we -- it's

8    effectively co-extensive for this purpose with the stay.

9    And I'm glad to answer any questions the Court may have.

10             THE COURT:  All right.  I do have a few questions.

11   The first is, what is the current status of the trial before

12   Justice -- is it Garguilo -- is that how it's pronounced?

13             MR. GAGE:  Yes, Your Honor.  And I think it is --

14   last week, as I understand it, it was designated an

15   essential matter by the court -- the New York Trial Court --

16   and therefore is moving forward on a -- briefs can now be

17   submitted and I think as to a trial date, that of course is

18   -- can only be determined when the health and safety issue

19   as a result of the COVID-19 is imposed.  So we don't have a

20   specific trial date but again, the court last week

21   designated us as essential so I think the working assumption

22   is that we'll move forward, you know, as soon as the health

23   challenge is resolved.

24             THE COURT:  Okay.  And obviously the jury trial so

25   the Court would need to deal with jury assembly issues in

Page 34

1   light of the COVID-19 crisis.  Do you have any insight as to

2   how that has been dealt with by the New York State Courts

3   with regard to jury trial?

4          MR. GAGE:  Your Honor, I don't have any particular

5   insight.  I've followed the various postings by southern

6   district courts and other federal courts in the area as well

7   as New York State Court.  I just don't think there's any

8   clear path forward.  This isn't immediately responsive to

9   Your Honor's question but to underscore, there's no absolute

10  roadmap here.  I mean, Judge McMann -- she's a judge from

11  the southern district issued a new order yesterday which,

12  you know -- the full impact of which I think we're all

13  digesting.  So the short answer is, Your Honor, no.  There's

14  no clear path to seating a jury.

15         THE COURT:  Okay.  All right.  Your reply attached

16  a ruling by Justice Garguilo on a summary judgment or a

17  partial summary judgment issue, quote, on the issue of

18  whether joint and several liability, as opposed to several

19  liability will applicable to the prosecution and defense of

20  the public nuisance claims in which, as I read it, that

21  issue was reserved to trial.

22         I don't see a ruling as to whether -- well, first,

23  I don't see whether there was a motion but I also don't see

24  a ruling as to whether New York CPLR 1601 applies to the

25  claims that are to be tried.  Was there such a ruling?

1          MR. GAGE:  My understanding, Your Honor, is that

2     the issue of apportionment has not yet been decided -- fully

3     presented -- hasn't been fully presented or really presented

4     or decided by the trial court but that the trial court would

5     be making that decision.  But that's all, Your Honor.  I

6     think we're in the process -- parties are -- preparing a

7     verdict form that -- the reasons we've been discussing, we

8     strong believe should include the Debtors.

9          THE COURT:  All right.  But the -- New York CPLR

10    1601 applies specifically to decisions that an action or

11    claim for personal injury and where the liability is such

12    defendant for non-economic loss shall not exceed, you know,

13    et cetera, et cetera, as provided in the statute.

14          I just want to make sure that no court has dealt

15    with, at this point in the pending litigation, the issue as

16    to whether the pending litigation is in respect of a claim

17    for personal injury where you're dealing with non-economic

18    loss.  Have those issues been raised at this point?

19          MR. GAGE:  I -- let -- I think -- yeah, no.  Can

20    Your Honor hear me?

21          THE COURT:  Yes, I can.

22          MR. GAGE:  Okay.  I'm sorry.  Something popped up

23    on the website.  I think, Your Honor, I just -- I don't have

24    sufficient command of the complete record and I'd be most

25    comfortable if that's -- if we could come back to that issue

Page 36

1    in writing or otherwise with the Court.  What I generally do

2    understand is that the issue of apportionment -- and I'm

3    sorry for repeating myself a bit, Your Honor -- has not yet

4    been presented to the trial court and that the trial court

5    anticipates deciding that issue.  But with regard to the

6    specific question Your Honor's asked, I'd want to go back

7    and check the record and make sure my response is accurate.

8            THE COURT:  Well, is there any other basis for

9    apportionment where the debtor would be covered by the jury

10   form other than 1601?

11           MR. GAGE:  Well, I believe so, Your Honor, in the

12   sense that it's not -- and pardon me, again, for repeating a

13   bit -- it's not prohibited by the language of the automatic

14   stay, so that --

15           THE COURT:  No, no, I'm not talking about that.

16   I'm talking about what would be before the New York Court.

17   Is there any other basis for apportionment?  There's been so

18   settlements here, so the general obligations law wouldn't

19   apply.  And 1601 has been described subject to exception, as

20   an exception to the general rule where you don't apportion

21   against non-present, with respect to non-present parties.

22           So I'm just -- I want to make sure that I'm not

23   stepping on the New York Court's toes, whether the New York

24   Court has ruled or not on this issue already.  And secondly,

25   I want to make sure that I'm not really being asked to give

Page 37

1    an advisory opinion on an area of the law that it is

2    somewhat uncertain.

3              MR. GAGE:  Well, I --

4              THE COURT:  So if it's something more than 1601

5    that you'd have a jury form, I ought to know that because as

6    far as the language of 1601 is concerned, I'm having a hard

7    time seeing how it would apply in this particular

8    litigation.

9              MR. GAGE:  Well, Your Honor, just generally

10   speaking, we certainly are not asking the Court to -- and I

11   appreciate the Court's concern.  We're certainly not asking

12   for an advisory opinion.  It really is a very narrow issue

13   of inclusion on the jury verdict form that we're asking the

14   Court to order is not covered by the automatic stay.

15             THE COURT:  But you wouldn't -- but I'm sorry.

16   You wouldn't include it on the jury form if there was no

17   legal basis for apportionment, and I'm trying to figure out

18   what the legal basis for apportionment is here other than

19   1601 of the CPLR.

20             MR. GAGE:  Well, I think -- and maybe this is

21   something we should respond to Your Honor in writing to give

22   a more full response.  But I think here, in part, it gets

23   back to equitable arguments and part to New York case law.

24   But equitable arguments that if the debtors who are at the

25   epicenter cap route of the opioid allegations -- and again,

Page 38

1    that as Your Honor knows, per the Plaintiffs' pleadings --

2    are not on that verdict form, then we will have a situation

3    where extreme prejudice could result to the Defendants

4    because they could -- the jury could allocate fault, which

5    was caused by the debtors, to allocation fault caused by the

6    debtors improperly, wrongly to the Defendants.

7            THE COURT:  But do those -- but lawyers could

8    argue equity all day, and there are equities on the other

9    side which have been raised, including by the ad hoc

10   committee of non-consenting states, one of which is -- one

11   member of which is New York State, one of the Plaintiffs in

12   the litigation.  But the issue is whether as a legal basis

13   there's any basis for apportionment recognized by the Courts

14   or a statute here, other than under New York CPLR 1601.

15           MR. GAGE:  I guess, Your Honor, my reaction --

16   and, again, if a letter submission to the Court would be

17   helpful, glad to do it.  But my reaction is, understanding

18   the posture of the case is, a apportionment is an issue that

19   will be decided, will ultimately be presented and decided by

20   the trial court.  And so, it's really not necessary for Your

21   Honor to make that determination.

22           The only issue that we've presented to the Court

23   is the -- and wanted to be respectful of the bankruptcy

24   process, of course, is does the automatic stay bar, the

25   addition of the debtors to the verdict form; just that very

1    narrow issue.  Then it will be up to the trial judge to

2    decide, you know, whether or not that's appropriate under

3    New York law.

4              So I guess, again at the risk of briefly repeating

5    myself, I think that will be an issue for the trial court,

6    Your Honor.  The relief we ask from Your Honor or the order

7    we ask from Your Honor is much more narrow.  It certainly

8    does not in any way, shape, or form ask Your Honor to weigh

9    in on, so to speak, the apportionment issue and what bases

10   there would be under New York law for apportionment.

11             THE COURT:  All right.  So you've referenced that

12   this is only to put on a jury form the issue of the debtors'

13   palatable share of any liability that is found here

14   ultimately.  But how is the jury to decide that issue; how

15   is that case made?

16             MR. GAGE:  Well, I would say, first of all, Your

17   Honor, in the way that it's been made in New York Courts, as

18   noted by reported decisions at least as far back as 1977.

19   And I think ultimately, the manner in which that's done, the

20   management, so to speak, at the trial will again be decided

21   by the trial court.

22             But one thing is clear, I think, that I believe

23   goes to the essence of what Your Honor's asking, is

24   obviously the debtors will not be participating as a party;

25   they've been severed, to state perhaps the obvious.  But

Page 40

1    significantly for the purposes of the limited relief we

2    seek, Your Honor, there's no -- there will be no binding

3    decision by the jury with regard to the debtors.

4            THE COURT:  So, but I guess the point I'm making

5    though is during the trial, I'm assuming one element of the

6    trial or one portion of the trial would consist of the

7    submission of evidence by the Defendants to the effect that

8    if they are liable for anything, the main liability under

9    public nuisance causes of action or a substantial amount and

10   then they'd have to introduce evidence as to what that

11   substantial amount would be, would be attributable to the

12   debtors.  All right?

13           Appreciate that it is unlikely that the debtors

14   would be participating because they wouldn't want to incur

15   the cost of doing that.  So are you basically then -- the

16   only other parties that would be participating would be the

17   Plaintiffs, correct?

18           MR. GAGE:  I believe so, Your Honor, yes.

19           THE COURT:  Who would be arguing -- who would be

20   arguing that really your side has more liability, right,

21   than you are asserting.

22           MR. GAGE:  And I leave to them to make the

23   arguments.  But, hypothetically, I would assume, yes, that

24   would be the argument they'd make.

25           THE COURT:  Okay.  And at the same time, the

Page 41

1    Plaintiffs are stayed by my order and/or the automatic stay

2    from pursuing the debtors, correct?

3              MR. GAGE:  That's right.

4              THE COURT:  Okay.

5              MR. GAGE:  And then I think that's for the

6    severance by -- yes.  (audio distortion)

7              THE COURT:  Have you identified any case where

8    this issue has been addressed where the debtor was an entity

9    that had a substantial amount of value, as opposed to a

10   Chapter 7 debtor that was either already liquidated or out

11   of business or where its creditors would receive next to

12   nothing?

13             MR. GAGE:  I'm not certain there's any case

14   precisely on point, particularly with the, you know, with

15   the caveat the Court added at the end, I mean, a case

16   absolutely on all fours.  But I do think, Your Honor, the

17   Gannon Personnel case from 1977 and Justice Friedman's case,

18   which is a very thoughtful decision in 1991 in the asbestos

19   litigation, and the other case law we cite really speak to

20   the notion that under New York practice, a debtor who is not

21   participating in the trial itself can be included on a

22   verdict form.

23             And I think I mentioned earlier Justice Friedman's

24   first footnote in the asbestos litigation.  It strongly

25   suggests that this is a practice that has been followed not

1    only in New York State Courts, but in the Federal Courts

2    that were handling some of the larger aspects of the

3    asbestos litigation, which obviously goes back a number of

4    years.

5           So how exactly it gets managed is to the trial

6    court.  Certainly, it's defendants here and, of course, I

7    would agree evidence would be presented is a fact that the

8    debtors are, as the Plaintiffs contend, the taproot here.

9    But I think it's been done since at least 1977, and because

10   there's no actual prejudice of any sort to the debtors here,

11   they'll be no binding decision of any sort with regard to

12   them, I think they are appropriately on the verdict form.

13          Again, I can't speak to the specifics going back

14   to 1977.  But, Your Honor, as you trace the case law

15   through, one thing is clear is that this is not a unique

16   request; this has been a practice going back to the '70s.

17          THE COURT:  Albeit that it's never really been

18   litigated, right --

19          MR. GAGE:  Well --

20          THE COURT:  -- in the handful of cases that have

21   come up that include the (indiscernible) case, as well as

22   the Brooklyn Navy Yard Second Circuit case, but never really

23   in the context of someone opposing from the debtors' side,

24   the apportionment.

25          MR. GAGE:  Well, Your Honor, I have to say I'm

Page 43

1    going to go back to Justice Friedman's language again.  I

2    mean, I appeared before her a number of times when she was

3    on the bench and, of course, ultimately to the First

4    Department, as Your Honor knows, a very thoughtful court.

5    And in a somewhat lengthy decision, nothing -- again,

6    there's no absolute case that's absolutely on all fours.

7    But Justice Friedman does say very clearly: New York law, as

8    set forth in Gannon -- I won't read the entire cite -- New

9    York law, as set forth in Gannon favors inclusion of

10   bankrupt defendants on the verdict sheet.  And I think that

11   basic statement of New York law is not only correct but has

12   been relied upon going forward by New York Courts.  And so,

13   that --

14          THE COURT:  But that's not -- but, again, that's

15   not a stay litigation context.  No one in that case said, no

16   -- from the debtors' point of view -- no, don't do that,

17   that will mess up our reorganization.

18          MR. GAGE:  That may not have been the precise

19   context, Your Honor, but I think the clear principle of that

20   case does apply to our case.  I think they're -- I keep --

21   again, pardon me for repeating myself.  But here, it's so

22   critical and I think it's what does bring in Justice

23   Friedman's and the other reported decisions, is because

24   including the debtors here on that verdict form will impose

25   no binding liability or obligations on them or even a

Page 44

1     binding apportionment on them, the debtors, the law that

2     we've been discussing is applicable here, the principles of

3     law.

4               THE COURT:  All right, but that's not determined

5     by any of those cases.  You're just interpreting Section

6     362, right?

7               MR. GAGE:  Yes, Your Honor, and critically.  To be

8     clear, it's not decided -- the facts are not absolutely on

9     all fours; that is true.  But at 362 requires a proceeding

10    for the stay to apply to be against the debtor, including on

11    a verdict form, and this I do draw from all the cases we've

12    been discussing in our papers.  Inclusion on a verdict form

13    is not a proceeding against the debtor because, again (audio

14    distortion) --

15              THE COURT:  Well, you're looking at 362(a)(1),

16    right?

17              MR. GAGE:  I am.

18              THE COURT:  And not (a)(3), to exercise control

19    over property of the estate.

20              MR. GAGE:  Well, that's why I keep coming back to

21    the binding, Your Honor.  I don't think inclusion on the

22    verdict form there will, in any way, seek -- it will not

23    seek to take any property of the debtor, because again --

24              THE COURT:  Well, it's not taking.  It says

25    exercise control.  And if that doesn't have independent

1    meaning, then Congress would have just stopped at (1) or (2)

2    of 362(a).

3            MR. GAGE:  Well, I would say, Your Honor, I don't

4    -- and, pardon me, I have it in front of me right now,

5    already so much on this screen -- but is I don't think it

6    will exercise control because, again, it would not be

7    binding in any way against the debtors.

8            THE COURT:  Well --

9            MR. GAGE:  There's no control being exercised over

10    their property.

11            THE COURT:  The argument that the debtors and

12    their creditors are making is that it does control property

13    of the estate because it forces either the debtor to, in the

14    facts of these cases play a role in that case in the New

15    York Supreme Court case, or it -- let me finish.

16            MR. GAGE:  Yes.

17            THE COURT:  Or it affects the ongoing conduct of

18    this case, which is in the critical stages of mediation,

19    including with the plaintiffs in your case who, as we just

20    went through I think, would be -- if the debtors didn't take

21    a position in the New York case, would have to take a

22    position on the allocation issue that will affect the

23    negotiations in this case.

24            Now, at the beginning of this hearing, the

25    debtors' counsel read out a several line statement on a

1    fairly -- well, a fairly important issue in this case, but

2    certainly not as important as the overall issue of the

3    allocation of claims against the debtors by states like the

4    Plaintiffs in this litigation and other parties and the

5    public nuisance theory general and Purdue's role in it.  And

6    if it took the, I gather, multiple groups of lawyers billing

7    over $1,000 an hour to come up with that four-line

8    statement, you can imagine the effect on the debtors' estate

9    on proceeding with this litigation with the allocation in

10   it, I would think.

11          MR. GAGE:  Well, Your Honor, a couple of things

12   reacting to the Court's second point.  Having -- and, of

13   course, note to mediations or settlement efforts are the

14   same.  But having been involved in complicated multiparty

15   mediations and settlement conferences led by very find

16   mediators, obviously without naming case or cases, it's very

17   -- as Your Honor knows, but I think it's important to say --

18   it's very important to predict how or why a mediation or

19   settlement conference will go in the direction that it does.

20   Here, a mediation obviously and with multiple parties.

21          So I think when you balance, what I would say just

22   based on my own experience but I think it's correct, the

23   unpredictability of charting how a mediation is going to go

24   and the incremental impact that inclusion on a verdict form

25   in the New York litigation in Central Islip.  I just think

Page 47

1    because of the unpredictability of where a settlement is

2    going to go, what will impact it, balanced against the clear

3    prejudice and immediate prejudice it will have on the

4    defendants in the upcoming trial.

5          I think -- so I would say, number one, I'm not

6    certain it will have such a -- it's very difficult to

7    predict what, if any, impact inclusion on the jury verdict

8    form will have on the settlement proceeding.  And also,

9    given the unpredictability of that when you balance the

10   equities -- again, I find myself repeating just a bit, Your

11   Honor, I apologize -- layered against, balanced against the

12   very real and immediate harm prejudice it will have to the

13   defendants before the New York Trial Court, I think the

14   limited relief we seek here is appropriate.

15          I appreciate Your Honor wanting to do (crosstalk).

16          THE COURT:  I apologize myself for repeating too.

17   But the mediation is going on right now.  The trial in New

18   York State Court will occur sometime in the future that we

19   cannot predict, given that we cannot predict even when

20   people are supposed to stop social distancing.  Secondly,

21   the only statute that I've been told applies, so far at

22   least, to me, doesn't appear to apply in at least two ways

23   and has not been ruled on as to whether it applies or not by

24   the New York State Court.

25          So it's hard for me to see how there's any

Page 48

1    immediate prejudice on getting what I believe is an advisory

2    ruling from me as to whether something should be included on

3    a jury form when it might well be the case that that would

4    be an either premature or completely unnecessary ruling.

5            MR. GAGE:  Well, I think --

6            THE COURT:  And, again, the reasons that it would

7    not apply is how is a public nuisance action an action for

8    personal injury.  And, two -- and we haven't even discussed

9    this yet -- there appears to me to be a conflict in the case

10   law not yet decided by New York's highest court, but decided

11   by the highest court over me, the Second Circuit, that an

12   inability to sue Purdue because of the automatic stay

13   exempts the applicability of Section 1601 because of the

14   proviso that says, "The claimant provides that with due

15   diligence he or she was unable to obtain jurisdiction over

16   such person."

17           Now, I appreciate that the Appellate Division, two

18   different departments, has ruled contrary to the Second

19   Circuit in the Brooklyn Navy Yard case, that you can get

20   personal jurisdiction under this, even if the stay prevents

21   you from actually using it, but the leading case on that

22   point says it's just inequitable.  And, frankly, I don't

23   believe the equities that that Court was considering where

24   the debtor could care less applies here where the debtor

25   could not care more about being dragged into the litigation.

1            So it seems to me you're asking me to issue a

2    ruling that has serious consequences, both at the Second

3    Circuit level and the New York Court of Appeals level, at a

4    time when it's not really necessary.  Now, I appreciate that

5    when you made this motion, you believed you were getting

6    full steam up to trial, but it's just not the case now.

7            MR. GAGE:  Well, I hear you, Your Honor.  I would

8    say a couple of things.  We are absolutely not asking Your

9    Honor for an advisory opinion.  We're only asking for an

10   opinion or decision on the very narrow issue.  And secondly,

11   with regard to the apportionment issue, you know, as we've

12   been discussing, Your Honor, that we believe is an issue

13   solely for the New York Trial Court, which is another way of

14   saying we're not looking for an advisory opinion.

15           What I can share with Your Honor in terms of the

16   timing is what I have, but just the New York Trial Court has

17   deemed this case essential.  But, of course, Your Honor is

18   correct and as we've been discussing, no one can predict the

19   path and health consequences of this virus.  I think one

20   reason that we did think the limited relief we're seeking

21   would -- is appropriate at this time is that it frees up the

22   trial court then to make a decision on apportionment, you

23   know, when things commence, which again is where -- we don't

24   think -- we strongly believe that the decision is

25   appropriately made.  So it's (crosstalk).

1          THE COURT:  Let me ask you another question as far

2     as being dragged into litigation is concerned; that is

3     (a)(1) and (a)(2) of Section 362.  The Appellate Division in

4     the Kharmah v. Metro Chiropractic, basically said, well,

5     it's inequitable to prevent apportionment by ruling as the

6     Second Circuit did in the Brooklyn Navy Yard case, that the

7     stay prevents there being jurisdiction.

8          I don't believe that the debtor in the Kharmah

9     case appeared or cared.  But, here, the debtor says, well,

10    it would be inequitable to us because we have just spent a

11    lot of time and money getting a nationwide injunction,

12    including of New York State, to the extent the stay doesn't

13    apply and 362(b)'s governmental exception would apply.  And

14    now, the state is not allowed to sue Purdue in the opioid

15    litigation, but it has to deal with the apportionment issue.

16         So someone has to argue that equity's point to the

17    New York State Court, which no one cared to do in the

18    Kharmah case, which is then cited by the court in the

19    Tancredi case, then everyone else is just binding precedent.

20         But secondly, how does one get jurisdiction,

21    personal jurisdiction over the Plaintiff.  I'm sorry, excuse

22    me.  How does the Plaintiff get personal jurisdiction over

23    Purdue or could get personal jurisdiction if the automatic

24    stay and my injunction were to prevent them from doing it?

25         MR. GAGE:  I --

Page 51

```
 1           THE COURT:  To me, that seems to be a legitimate

 2   question that the New York Court of Appeals can rule on.  It

 3   seemed pretty clear to the Second Circuit in Brooklyn Navy

 4   Yard.  It also seemed pretty clear to Judge Keenan in

 5   Schmelzer v. Hilton Hotels Corp., 2007 U.S. Dist. LEXUS

 6   70722 (S.D.N.Y. Sept. 24, 2007), that the proviso regarding

 7   jurisdiction in Section 1601 really has teeth in it in the

 8   bankruptcy context because the stay prevents you from

 9   serving Purdue.  So how could you get personal jurisdiction?

10   It just says jurisdiction.

11           So I appreciate that the Appellate Division First

12   Department has ruled that that language, jurisdiction,

13   doesn't apply to a debtor or the Plaintiff is barred from

14   the automatic stay from serving the debtor, but it did so

15   saying it was unfair.  And in the Tancredi case, which is

16   basically a two-paragraph opinion, it just cites Kharmah and

17   the other cases where, again, I don't believe any debtor

18   opposed this, and normally, a debtor wouldn't.

19           But one can argue that, here, the debtor would

20   have to oppose it basically to raise the same issues that I

21   am raising now and saying this is unfair if I said the stay

22   didn't apply.  They would have to go into the State Court

23   and say this is unfair, this is inequitable.  Even leaving

24   aside (a)(3), I don't see how that doesn't implicate (a)(1)

25   and (a)(2).
```

1          And I guess that's one reason why I'm having a

2     hard time seeing why this is even ripe for a decision given

3     those difficult issues.  And you're asking me to intrude on

4     or make a decision that also affects the State Court in a

5     context where it may not matter because this isn't a

6     personal injury lawsuit.

7          MR. JONES:  Your Honor, this is Evan Jones from

8     O'Melveny & Myers.  At an appropriate time, I would be asked

9     to be heard on the questions Your Honor has posed.

10          THE COURT:  Okay, why don't we do that.

11          MR. JONES:  Thank you, Your Honor.  Your Honor,

12     Evan Jones on behalf of, I'll just refer to them as the

13     Janssen defendants.  We're identified in the papers.  We are

14     movants.

15          Your Honor, to start, I want to apologize.  The

16     phone system kicked me off just as Your Honor was inquiring

17     of Mr. Gage about due process.  And, unfortunately, I didn't

18     get back in until the end of the discussion on Section 1601,

19     so I will start by apologizing if I cover matters that have

20     already been covered while I was excluded from the call.

21     But, obviously, Your Honor, this is a very important matter

22     and so, if I repeat things that Mr. Gage has said, I

23     certainly apologize.

24          Your Honor, I'll start by observing the request

25     that the movants make is not for this Court to rule on

```
 1   whether apportionment is appropriate.  We simply ask this

 2   Court to permit Justice Garguilo of the New York Court to

 3   make a determination under New York law whether

 4   apportionment is appropriate or not.

 5             Your Honor asked a very specific question about

 6   what the basis for apportionment might be, and Your Honor

 7   referred to Section 1601 of the New York statute.  Your

 8   Honor is aware that just last week, Justice Garguilo -- and

 9   I apologize, I'm probably mispronouncing his name.  Just

10   last week, he entered an order denying a motion by the

11   plaintiffs to determine that apportionment was not

12   appropriate.  Your Honor --

13             THE COURT:  I'm sorry, you'll have to stop at that

14   point.  Is this the order that's attached to the reply?

15             MR. JONES:  Yes, Your Honor.

16             THE COURT:  Okay.  So that order deals with

17   whether a public nuisance claim gives rise to joint and

18   several or several liability.  I don't see anything in here

19   about apportionment or 1601.

20             MR. JONES:  Well, Your Honor --

21             THE COURT:  And I don't know whether even the

22   issue of the applicability of 1601 applies.  Was it briefed?

23             MR. JONES:  Your Honor, it is my understanding

24   that --

25             THE COURT:  (crosstalk).
```

1          MR. JONES:  Your Honor, it is my understanding

2     that it was.  I was not involved in that briefing.  Your

3     Honor, I'm also told, though, in response --

4          THE COURT:  What is the basis for your

5     understanding there?  Have you seen the brief?

6          MR. JONES:  No, Your Honor.  I'm informed by my

7     colleagues who briefed the issue.

8          THE COURT:  Has anyone passed the briefs for me?

9          MR. JONES:  I don't believe anyone has, Your

10    Honor.

11         THE COURT:  Okay.  Do you believe that his ruling

12    addresses 1601 --

13         MR. JONES:  Well, Your Honor, I thought by

14    answering --

15         THE COURT:  -- as opposed to entering it joint and

16    several liability?

17         MR. JONES:  Well, Your Honor, I'd respond by

18    answering a specific question that the Court asked, whether

19    1601 was the only basis in which apportionment might be

20    appropriate under New York law.  And, in fact, we believe in

21    the New York asbestos case, the Court made clear that not

22    only 1601, but Section 1400 and general equitable principles

23    of New York law could permit such apportionment.

24         And, Your Honor, this is the point --

25         THE COURT:  I'm sorry.  Which asbestos case are

1    you referring to?  There's several.

2              MR. JONES:  I'm sorry, Your Honor.  The case is

3    the New York City Asbestos Litigation, 572 NY 2nd 1006.

4    But, Your Honor, this brings me back to the critical point

5    here.  No one has brought before this Court by appropriate

6    motion, by adversary or any other way, other than response

7    to our motion, a request for this Court to determine what

8    New York law requires or permits in this aspect.  And, Your

9    Honor, we'd submit that even if they had, that is an issue

10   that's appropriately before the New York Court and, Your

11   Honor, we believe Justice Garguilo is seized with that

12   question.

13             THE COURT:  Then why are you asking me to give --

14   excuse me, just a minute.  We have now spent an hour and a

15   half on this issue, all right.  I am asking these questions

16   to know why we are spending time on it.

17             MR. JONES:  Your Honor --

18             THE COURT:  If you believe that this issue hasn't

19   been decided yet, and it may be decided in a way where your

20   side loses, why are you asking me to deal with it now?

21             MR. JONES:  Your Honor, we're asking you to deal

22   with it now because we have great respect for the automatic

23   stay and we have a debtor and a bunch of Plaintiffs who are

24   arguing that our request to have this included on the jury

25   form violates the stay.  And so, all we are asking for this

Page 56

1   Court to do is to declare that we are not forbidden by this

2   Court and its stay to make these arguments to the New York

3   Justice.

4        Your Honor, I also want to respond to a question

5   that the Court asked just before I was kicked off the call.

6   The Court asked Mr. Gage, do we believe it's a violation of

7   due process.  And, Your Honor, we do.  We think that even

8   though this is a statutory provision -- and by the way, as I

9   mentioned, it also arises under New York common law and

10  general equitable principles, we think it is a --

11       THE COURT:  I'm sorry.  Have you filed a brief on

12  this issue?

13       MR. JONES:  Sorry, Your Honor.  The issue, which

14  issue?

15       THE COURT:  On the due process issue or New York

16  common law.  Have you filed a brief on either of those

17  points?

18       MR. JONES:  Your Honor, we have --

19       THE COURT:  Either of those points.

20       MR. JONES:  Your Honor, we have not filed a brief

21  that expressly delves into due process.  Your Honor

22  inquired, we do believe that it would be a denial of due

23  process for us to be prevented from making arguments to the

24  New York court that are permitted, we believe, by New York

25  law.

Page 57

1           THE COURT:  And have you briefed that issue?

2           MR. JONES:  We have not, Your Honor.

3           THE COURT:  All right.

4           MR. JONES:  Your Honor inquired of Mr. Gage.

5           THE COURT:  So I think you are asking a lot of

6   this Court when I have contradictory opinions by the Second

7   Circuit and the Appellate Division to premise your arguments

8   on a right that you say you have.  Now, I get it.

9   Ultimately, the state court might have to rule on that issue

10  and probably would rule on that issue if I lifted the stay.

11  But I think it's worthwhile for me in evaluating cause and

12  whether the stay applies in the first place to know whether

13  we're arguing about something that's totally moot or

14  unlikely to be decided in your favor.

15           So I'm going to adjourn this hearing and require

16  the parties who believe that their due process is being

17  violated somehow here to brief the issues that they haven't

18  briefed so far.  I see no harm in doing that given that the

19  prospect of a trial here is remote at this point.  So this

20  matter will be adjourned to the next omnibus hearing date,

21  and I expect briefing with case law on these points.

22           MR. JONES:  Your Honor, Evan Jones again.  I

23  understand the Court's ruling and we will certainly comply.

24  May I inquire when the next omnibus hearing will be?

25           THE COURT:  I'm not sure.  You should get that

1    date from the debtors.

2              MR. JONES:  Thank you, Your Honor.

3              THE COURT:  But your brief should be due 10 days

4    before that hearing, and the parties who have objected to

5    this motion can file something three days before the

6    hearing, either jointly or separately.

7              MR. JONES:  Thank you, Your Honor.

8              THE COURT:  Okay.  Does anyone else have any

9    questions on this?

10             MR. GAGE:  Your Honor, just -- can the Court hear

11   me?  It's Robert Gage.

12             THE COURT:  Yes.

13             MR. GAGE:  I apol- -- I just want to say without -

14   - I understand what Your Honor just said.  I don't have

15   anything to add.  One brief point, but I just want to

16   apologize to the Court and others.  It's not clear to me how

17   I got kicked off, so to speak, but I did, so my apologies.

18             THE COURT:  I don't know.  You know, I apologize

19   because we have not had any problems with Court Solutions

20   until today, but we've had plenty of problems today.  In

21   fact, my dashboard is frozen today, so people can hear me,

22   but I cannot see from the dashboard who is speaking.  I hope

23   the other parties are able to hear me.  I can't really tell

24   because I can't see the dashboard and whether they're off.

25             Is counsel for the debtors able to hear me and

1    respond?

2             MR. HUEBNER:  Yes, Your Honor.  We hear you loud

3    and clear and we have throughout the hearing.  Other than

4    the one time that we were all thrown off, we'd actually

5    heard everybody consistently.

6             THE COURT:  Okay, very well.  Do you know, Mr.

7    Huebner, when the next omnibus date is?

8             MR. HUEBNER:  I don't, Your Honor, but there are a

9    lot of people on the phone.  They can email us if they can't

10   figure it out from the docket.  We're obviously happy to let

11   everybody know.

12            MAN 1:  It's May 21st.

13            THE COURT:  Okay, very well.  Thank you.  All

14   right.  Does anyone have any more questions?  All right.  So

15   as far as --

16            MR. GAGE:  No, Your Honor, I just --

17            THE COURT:  I --

18            MR. GAGE:  I'm sorry.  It's Robert --

19            THE COURT:  No, go ahead, Mr. Gage.

20            MR. GAGE:  Pardon me, Your Honor.

21            THE COURT:  Go ahead.

22            MR. GAGE:  I just wanted to clear that, yes, I

23   think Your Honor is correct.  Was the due process argument

24   addressed directly head on in the papers?  No.  But I think

25   ultimately there is a due process issue here, and I do

Page 60

1        appreciate the Court allowing us to address it.

2               THE COURT:  Okay.  But, again, the context is

3        this: I don't see where there's a due process issue when the

4        fallback position for New York law, other than as modified

5        by statute, is against apportionment.  So I think that's the

6        context I'm focusing on here.  And secondly, whether there's

7        any other statute than 1601 that applies.

8               And then lastly, it appears to me that the issue

9        of control really has not been addressed, and frankly, you

10       can see where I'm coming out on that issue.  If the debtor

11       is forced to argue the equities, it is being forced to argue

12       in another court.  And the reason it's arguing the equities

13       in the other court is because of the adverse effect on its

14       bankruptcy case of proceeding here in a context where the

15       Plaintiff is not permitted to sue Perdue; and, yet, is put

16       to the task of dealing with apportionment with respect to

17       Purdue.

18              To me, that is something that most debtors don't

19       care about because, as in most cases including ones cited in

20       the briefing already, they're liquidated.  They don't care.

21       They're not in plan negotiations.  And so, it's someone else

22       who is raising the stay, as was the case in the Variable

23       Parameters case or the Adler v. Ng case.  This is a very

24       different situation.  The debtor is being, in essence,

25       forced back into a litigation, not in terms of its own

Page 61

1   liability but in terms of dealing with its primary

2   creditors, when it has already successfully enjoined those

3   primary creditors from participating in that litigation.

4           To me, that's a pretty telling equitable argument.

5   And if the First Department, without any real opposition by

6   a debtor, concluded that the equities favor the defendants,

7   I understand that because they didn't hear from the debtor.

8   But, here, they would and they would be forced to, so it's

9   hard for me to see how that doesn't implicate (a)(1) and

10  (a)(2), leaving aside (a)(3), which even if the debtor chose

11  not to appear, it would be affecting the conduct of this

12  case materially in terms of the dollars and sense involved,

13  which are high here.  I just approved about $30 million of

14  fee applications, most of which relate to negotiation of a

15  plan.

16          So that's my perspective on this and I, frankly,

17  am reluctant to rule on it on this record given that the

18  issue does not appear to me to be at all ripe on multiple

19  grounds, while --

20          MR. GAGE:  Your Honor --

21          THE COURT:  -- the case that mediation is going on

22  as we speak, so that's where we are at this point.  All

23  right.

24          MR. NACHMAN:  Your Honor, this is David Nachman

25  from the Attorney General's Office of New York, if I may

Page 62

1    just for a moment.  There's an additional point of ripeness

2    or lack of ripeness that movants have not mentioned, which

3    is that the State Court has invited briefing on whether

4    there is a right to a jury trial in this action and has

5    received our papers, the Plaintiffs' papers on that subject

6    arguing that there is no jury trial right and asking for a

7    bench trial.  And the movants here are going to be

8    responding to that, I believe, on the 27th with a reply

9    thereafter.  So it's not at all clear that there will be a

10   jury trial in this matter at all.

11              THE COURT:  Okay.  Well, all right.

12              MR. GAGE:  Your Honor, it's --

13              THE COURT:  But separate from that point, have you

14   -- have people -- I mean, this is just a fact issue for me.

15   Was the applicability of 1601 briefed as part of the summary

16   judgment?

17              MR. GAGE:  I don't think so, Your Honor.  We moved

18   -- I don't think so.  And I apologize, Your Honor --

19              THE COURT:  Well, that's fine.

20              MR. GAGE:  -- while we were on the Court Call, I

21   just want to way --

22              THE COURT:  People can address that -- people

23   should address that before -- I mean, obviously if the Judge

24   has already decided that issue, I will look at his decision.

25   I think that's critical, but not deciding it.  It's part of

Page 63

1    the facts that I need to consider that the likelihood of how

2    that would come out, not that I would decide it, but the

3    likelihood of how that issue would turn out.

4            MR. NACHMAN:  I can say, Your Honor, that we have

5    consistently taken the position that this is an equitable

6    public nuisance action.  It's neither a personal injury

7    action, nor an action for damages.  It's an action for

8    abatement, and it could not, from our perspective, be more

9    unlike a 1601 covered action.  We have made that point and

10   the Judge has reiterated that he sees joint and several

11   liability, including in the decision where he reserved for

12   trial, but made it quite clear that he subscribes to his

13   earlier pronouncements on that subject and then goes out of

14   his way in that decision to cite that principle.

15           THE COURT:  Well, if anyone has any more clarity

16   for me as to what the Judge had before him, has before him,

17   has decided, has not decided on the applicability of Section

18   1601 or apportionment generally, I'd appreciate it.  I'm

19   sorry, go ahead.

20           MR. GAGE:  Your Honor, I appreciate the Court's,

21   you know, the time Your Honor has given us on this.  I just

22   want to say I think we have a very different view on the

23   issue joint and several liability, but I'll just leave it at

24   that for now.

25           THE COURT:  Well, no, that's clear.

Page 64

1              MR. GAGE:  Okay.

2              THE COURT:  No one's being pinned down to anything

3      on that.  I understand that.  I just really want to know

4      what's been before the Judge and what he has ruled on and

5      what he hasn't ruled on.  I just have that one order, which

6      doesn't seem to me to address 1601 at all.  So, Mr. Huebner,

7      were you going to say something?

8              MR. HUEBNER:  Your Honor, just one very small

9      point, which is, you know, the idea from the estates'

10     perspective of, you know, multiple law firms now moving to

11     both prepare, respond to, and respond to supplemental

12     pleadings on new topics that have been briefed in the first

13     instance.  At the next omnibus when -- and I'm probably

14     going to say something that's just totally wrong, but I'll

15     just take a flyer.  It may not even be ripe by the next

16     omnibus or it may ultimately be obviated by events and

17     rulings that happen in New York State Court thereafter, or

18     this trial may not happen until July or August and the world

19     may look totally different.

20              I just wonder if -- and, again, I'm not even sure

21     if this is the Debtors, I'm just sort of thinking out loud

22     to try to save everyone cost and time for something that it

23     sounds like may actually become obviated.  You know, could

24     we have some process where the parties reassess with one

25     another whether they believe this is really, in fact, needed

Page 65

1    and ripe for the very next omnibus on May 21st.  And if, for

2    example, all the estate people and would be guided obviously

3    by, you know, others, including Mr. Nachman would even go on

4    with his New York trial, say that this won't even be ripe by

5    June 21st, you know, or July 21st and there's no reason to

6    do that briefing.

7              THE COURT:  That's a good point.  I mean, I don't

8    think anyone wants there -- any clients wants there to be

9    unnecessary expense here, so that's fine.  I'm not requiring

10   you to submit the brief.  If you want to put this off and

11   adjourn it to hearings down the road, that's fine.

12             MR. HUEBNER:  Yes.  Again, I'm not the movants, so

13   I don't want to box anyone in and all just to --

14             THE COURT:  Right.

15             MR. HUEBNER:  I would suggest to the parties just

16   caucus, not omnibus logged in front of the Court.  And

17   obviously, if the movants feel very strongly that this must

18   be on May 21st and the respondents strongly disagree, we can

19   have a quick conference with the Court about that view.

20   Because, you know, to spend another potential five or six

21   figure number -- because, remember, we're paying for the

22   debtors' professionals, the committees' professionals, the

23   ad hoc professionals -- and, you know, that may not be the

24   end of the list by the time the case is over.  I'm just very

25   mindful that this is a burden.  I understand we're --

1          THE COURT:  No, I understand.

2          MR. HUEBNER:  -- living complicated lives to begin

3    with at present.

4          THE COURT:  Right, I agree.  I agree, and frankly,

5    that goes to my point on any case, so let's make that the

6    last word on this.  I don't believe there's anything more on

7    the agenda.

8          MR. HUEBNER:  No, there is not, Your Honor,

9    although it --

10         MR. TROOP:  Nothing else on the agenda, Your

11   Honor.  This is Andrew Troop for the non-consenting states.

12         THE COURT:  Right.

13         MR. TROOP:  Can you hear me, Your Honor?

14         THE COURT:  Yes, I can.

15         MR. TROOP:  Your Honor, as you know, there are

16   discovery disputes brewing in this case.

17         THE COURT:  Did you get my email in response to

18   yours?

19         MR. TROOP:  I did.  I did, Your Honor, but I just

20   wanted to raise sort of a preference question with you on

21   this.  It looks like there are going to be disputes between

22   the creditors' committee and the Sacklers as well over the

23   first 2004 motion that you entered.  And we were thinking

24   that we would like to suggest and suggest to your clerk and

25   your calendar that we schedule a hearing for next Wednesday

Page 67

1   with a response deadline from the Sacklers first and then

2   giving us an opportunity within 24 hours to respond, us

3   being the UCC and the non-consenting states, and wanted to

4   confirm whether that was a process that would work for Your

5   Honor.

6          THE COURT:  I don't know if that date works.  I

7   have a trial on Monday that I think may carry over into

8   Wednesday.  You should check with Miss Lee.

9          And leaving that aside, I appreciate that the

10  parties have been working hard behind the scenes to narrow

11  their differences.  I don't want the -- a formal hearing on

12  a motion to enforce a Rule 2004 order to be sort of a free

13  flow discovery conference.  I want the parties to identify

14  their specific issues.  If they can do that and they just

15  haven't been able to get any farther, then we should have

16  that hearing quite promptly.  If they've not been able to do

17  that yet, they need to do that first and then we'll have the

18  hearing promptly after that.

19         MR. TROOP:  Your Honor, I think that we've

20  narrowed the issues and there isn't a clear (crosstalk).

21         THE COURT:  Yeah, that's fine.  And I don't doubt

22  that because I know the parties have been working hard to do

23  that.  So I think probably the issue is just going to be

24  whether it should be Wednesday or Thursday or Friday next

25  week.  You can check with Miss Lee on that point.

1          MR. TROOP:  We'll do that promptly, Your Honor.

2     Thank you.

3          THE COURT:  Okay.  Then as far as the submissions,

4     you know, you can tailor them depending on what date she

5     gives you but tell her that it should be next week.

6          MR. TROOP:  We'll do, Your Honor.  Thank you.

7          THE COURT:  Okay, thanks.  All right, so I believe

8     that concludes today's hearings, so I'll see you, at least

9     most of you in May, some of you probably next week on the

10    discovery issue.

11         MR. GAGE:  Thank you, Your Honor.  Just one final

12    process point just to give the Court comfort.  I have

13    continued -- each time we've had a bump in the hearing, I've

14    actually been giving the Court Solutions CO a real-time

15    update, so he knows exactly what problems we're

16    experiencing.  And he already is -- his whole team is

17    coordinating with the SDNY and the SDNY's Bankruptcy Clerk's

18    office to figure out exactly what happened and why your

19    dashboard was frozen.  So, you know, no extra charge.

20    Friend of the People trying to make things smoothed out.

21         THE COURT:  Very well, thank you.

22         MR. GAGE:  Even at 80 percent, it's all good.

23         THE COURT:  All right, okay.  Thank you.

24         MR. TROOP:  Thank you, Your Honor.

25         THE COURT:  Okay.

Page 69

1          (Whereupon these proceedings were concluded)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3                          RULINGS

4                                              Page        Line

5

6    Quarterly Fee Applications Granted

7    on an Interim Basis                        23          4

8

9    Cole Scholz Retention Motion Granted       26          24

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 71

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 24, 2020

[& - 950561]                                                                                     Page 1

### &

**&**   2:12,18 3:7 4:8
4:21 6:4 7:18 10:3
10:17,18 23:16
52:8

### 1

**1**   28:3 44:15 45:1
50:3 51:24 59:12
61:9
**1,000**   46:7
**1,020,000.00**   5:6
**1,135,221.75**   6:23
**1/31/2020**   2:8 3:5
3:11,19 4:5,10,17
4:23 5:6,13,18,25
6:8,16,23 7:4,9,15
7:23
**10**   58:3
**10,416.74.**   23:25
**10/1/2019**   5:25
**10/4/2019**   5:12
**10017**   10:6
**10019**   11:10
**10022**   10:13
**1006**   55:3
**1013**   8:3
**1025**   8:8
**1038**   8:8
**1048**   8:20 9:5,9
**1049**   8:25
**1050**   9:5
**1054**   9:12
**1055**   8:9
**10601**   1:14
**1063**   9:16
**1067512.46**   3:19
**10729.22**   6:16
**10:15**   1:17
**11**   4:17
**11,073.89**   6:23
**11/1/2019**   6:16
**11501**   71:23

**12/23/2019**   4:5
**12001.56**   3:19
**12224**   11:3
**14,991.54.**   23:22
**1400**   54:22
**14991.54**   6:17
**15,000**   23:22
**15,395.05**   7:5
**16**   2:15,21 4:14
**1601**   34:24 35:10
36:10,19 37:4,6
37:19 38:14 48:13
51:7 52:18 53:7
53:19,22 54:12,19
54:22 60:7 62:15
63:9,18 64:6
**165733.29**   6:8
**17**   28:3
**19**   33:19 34:1
**19-23649**   1:3
**1950**   10:21
**1977**   29:19 39:18
41:17 42:9,14
**1991**   41:18

### 2

**2**   45:1 50:3 51:25
61:10
**2,635,092.25**   7:23
**2,956.87**   7:10
**20**   24:8,12 25:12
**200,000.00**   4:10
**2004**   66:23 67:12
**2007**   51:5,6
**2019**   2:15,21 4:14
**2020**   1:16 2:1,15
2:22 4:14 71:25
**21st**   59:12 65:1,5
65:5,18
**22**   1:16 2:1
**22,218.14**   7:15
**23**   70:7
**24**   51:6 67:2 70:9
71:25

**24,058,793**   3:11
**248**   1:13
**25,670.12**   4:24
**26**   70:9
**27th**   62:8
**289,721.70**   3:11
**29,161.00**   4:11
**2nd**   55:3

### 3

**3**   44:18 51:24
61:10
**3,183,065.00**   7:4
**3,529.30**   3:5
**3,923,706.10**   4:24
**30**   31:5 61:13
**300**   1:13 71:22
**30th**   17:21
**31**   2:15,22 4:14
11:9
**31605.81**   5:25
**324,981.79**   4:18
**327**   2:5
**330**   71:21
**362**   44:6,9,15 45:2
50:3,13
**3845.40**   2:23

### 4

**4**   70:7
**400**   10:21
**410**   10:12
**448,644.25**   3:5
**450**   10:5
**47,449.28**   7:23
**4865202.5**   5:25

### 5

**5,252,892.22**   2:8
**52nd**   11:9
**5408371.90**   2:22
**572**   55:3
**580,539.30**   4:5

### 6

**614.93**   4:6
**646,606.50**   7:9

### 7

**7**   41:10
**7,223,413.00**   4:18
**70722**   51:6
**70s**   42:16
**75203.89**   5:13
**7715.34**   5:19

### 8

**80**   25:4 68:22
**815,614.96**   2:8
**86,456.43**   5:6

### 9

**9/15/2019**   2:7 3:10
3:18 4:10,23 5:5
**9/16/2019**   3:4 4:17
6:22 7:9,14,22
**9/19/2019**   7:4
**9/26/2019**   6:7
**9/29/2019**   5:18
**900000**   5:13
**90071**   10:22
**909**   8:12,16,19,24
9:5,9,14
**933**   2:9
**934**   2:15
**935**   2:23
**940**   5:13
**941**   3:5
**942**   5:19
**944**   6:24
**945**   3:12
**946**   6:1
**946,935.75**   7:15
**947**   6:9
**948**   3:19
**949**   6:17
**950**   4:6
**950561**   5:19

| | | | |
|---|---|---|---|
| **951** 4:11 | **added** 28:25 | **albany** 11:3 | **apace** 17:8 |
| **952** 4:18 | 41:15 | **albeit** 42:17 | **apol** 58:13 |
| **954** 7:5 | **adding** 29:14 | **alberto** 14:1 | **apologies** 58:17 |
| **955** 7:10 | **addition** 25:1 | **alex** 13:16 | **apologize** 16:22 |
| **956** 7:15 | 38:25 | **alfano** 12:5 | 24:7 25:5 47:11 |
| **957** 7:24 | **additional** 18:11 | **alice** 12:3 | 47:16 52:15,23 |
| **958** 4:24 | 18:14 23:8 62:1 | **alix** 13:8 | 53:9 58:16,18 |
| **973** 5:7 | **address** 28:13,21 | **alixpartners** 4:13 | 62:18 |
| **979** 8:16 | 60:1 62:22,23 | **allegations** 37:25 | **apologizing** 52:19 |
| **9838245** 6:8 | 64:6 | **allergan** 8:12,15 | **app** 24:25 |
| **998** 8:8 | **addressed** 41:8 | 9:15 10:11 28:21 | **appeals** 49:3 51:2 |
| **a** | 59:24 60:9 | **allocable** 31:22 | **appear** 23:5 47:22 |
| **aaron** 14:16 | **addresses** 54:12 | **allocate** 38:4 | 61:11,18 |
| **abatement** 63:8 | **adjourn** 57:15 | **allocation** 31:22 | **appeared** 43:2 |
| **able** 19:17 20:9 | 65:11 | 38:5 45:22 46:3,9 | 50:9 |
| 25:22 26:8 27:2 | **adjourned** 57:20 | **allow** 18:5 27:21 | **appears** 23:19 |
| 58:23,25 67:15,16 | **adjourning** 24:15 | 28:25 | 24:2 48:9 60:8 |
| **absolute** 34:9 43:6 | **adler** 60:23 | **allowance** 2:13 | **appellate** 48:17 |
| **absolutely** 41:16 | **administrative** | 3:2 4:3,15 5:3,10 | 50:3 51:11 57:7 |
| 43:6 44:8 49:8 | 25:9 | 6:6,13 7:20 | **applicability** |
| **accepted** 22:19 | **advanced** 22:20 | **allowed** 50:14 | 48:13 53:22 62:15 |
| 30:6 | **adversary** 55:6 | **allowing** 60:1 | 63:17 |
| **access** 22:20 | **adverse** 60:13 | **alternatively** 32:1 | **applicable** 34:19 |
| **accident** 22:14 | **advisor** 4:16 5:22 | **alyssa** 13:10 | 44:2 |
| **accidentally** 20:5 | **advisory** 37:1,12 | **amount** 23:16,21 | **application** 2:4,11 |
| **account** 25:2 | 48:1 49:9,14 | 26:3 27:2,3 40:9 | 2:17 3:1,7,15 4:1 |
| **accurate** 36:7 | **affect** 45:22 | 40:11 41:9 | 4:8,13,20 5:1,9,15 |
| 71:4 | **agenda** 2:1,1 | **amounts** 24:8 | 5:21 6:3,11,19 7:1 |
| **action** 35:10 40:9 | 16:13,15 17:9 | 25:12 | 7:7,12,17 8:1 26:4 |
| 48:7,7 62:4 63:6,7 | 19:7 21:25 22:10 | **analogy** 31:19 | **applications** |
| 63:7,7,9 | 27:15 28:4,18 | **analysis** 30:23 | 22:12 23:1,6,9,10 |
| **active** 21:24 | 66:7,10 | **andrew** 8:24 | 23:14,18 24:5,11 |
| **actual** 2:6 3:17 | **agent** 6:12 | 11:12 12:5 19:14 | 61:14 70:6 |
| 5:4 6:15 7:21 | **aggregate** 23:21 | 66:11 | **applies** 34:24 |
| 42:10 | **ago** 17:12 31:5 | **angeles** 10:22 | 35:10 47:21,23 |
| **ad** 6:20 7:2,7,13 | **agree** 42:7 66:4,4 | **anna** 12:23,25 | 48:24 53:22 57:12 |
| 7:18 8:5,9,25 9:7 | **agreed** 18:17 | **answer** 33:9 34:13 | 60:7 |
| 9:10 11:8 17:22 | **ahead** 31:2 59:19 | **answering** 54:14 | **apply** 36:19 37:7 |
| 18:2 26:14,18 | 59:21 63:19 | 54:18 | 43:20 44:10 47:22 |
| 38:9 65:23 | **ahold** 21:3 | **anthony** 13:9 | 48:7 50:13,13 |
| **adam** 14:18 | **akin** 6:3 | **anticipates** 36:5 | 51:13,22 |
| **add** 33:6 58:15 | **al** 5:23 6:6 16:15 | **anyway** 16:21 | **appointed** 25:14 |

[apportion - bow]    Page 3

apportion 36:20
apportionment
  35:2 36:2,9,17
  37:17,18 38:13,18
  39:9,10 42:24
  44:1 49:11,22
  50:5,15 53:1,4,6
  53:11,19 54:19,23
  60:5,16 63:18
appreciate 37:11
  40:13 47:15 48:17
  49:4 51:11 60:1
  63:18,20 67:9
approach 29:24
  29:25
appropriate 18:9
  30:6 33:3 39:2
  47:14 49:21 52:8
  53:1,4,12 54:20
  55:5
appropriately
  42:12 49:25 55:10
approval 26:3
  27:3
approved 24:10
  26:2 61:13
april 1:16 2:1
  71:25
area 34:6 37:1
argue 31:3 38:8
  50:16 51:19 60:11
  60:11
arguing 40:19,20
  55:24 57:13 60:12
  62:6
argument 16:7
  40:24 45:11 59:23
  61:4
arguments 32:23
  37:23,24 40:23
  56:2,23 57:7
arik 14:12

arises 56:9
arnold 2:12
arps 4:20
artem 13:20
asbestos 29:17
  41:18,24 42:3
  54:21,25 55:3
aside 51:24 61:10
  67:9
asked 29:8 36:6
  36:25 52:8 53:5
  54:18 56:5,6
asking 18:25
  37:10,11,13 39:23
  49:1,8,9 52:3
  55:13,15,20,21,25
  57:5 62:6
aspect 17:14 55:8
aspects 42:2
assembly 33:25
asserting 40:21
assume 25:23
  40:23
assuming 21:24
  40:5
assumption 33:21
atkinson 14:2
attached 34:15
  53:14
attempt 17:25
attempting 18:10
attending 16:4
  17:6
attention 31:1
attorney 3:4 11:1
  29:3 61:25
attorneys 10:4,11
  10:18 11:8
attributable
  40:11
audio 41:6 44:13
august 64:18

authority 27:1
authorizing 27:25
automated 22:13
  22:17
automatic 8:11,15
  8:19,23 9:2,9
  29:13 32:19,22
  36:13 37:14 38:24
  41:1 48:12 50:23
  51:14 55:22
automatically
  19:21
avenue 10:5,12
aware 53:8

**b**

b 1:21 26:16
  50:13
babies 8:9
back 17:24 18:19
  22:15,23 24:21
  35:25 36:6 37:23
  39:18 42:3,13,16
  43:1 44:20 52:18
  55:4 60:25
background 21:7
balance 32:2
  46:21 47:9
balanced 47:2,11
ball 12:16
balluku 12:15
banker 5:2,11
bankrupt 43:10
bankruptcy 1:1
  1:12,23 29:20
  38:23 51:8 60:14
  68:17
bar 38:24
barker 12:10
barred 51:13
based 46:22
bases 39:9
basic 43:11

basically 40:15
  50:4 51:16,20
basis 21:24 22:24
  22:25 24:5 36:8
  36:17 37:17,18
  38:12,13 53:6
  54:4,19 70:7
batch 24:19
bayard 5:15 28:1
beginning 29:22
  45:24
behalf 8:9,24 9:10
  9:15 25:5 28:20
  52:12
believe 16:7 18:13
  32:24 35:8 36:11
  39:22 40:18 48:1
  48:23 49:12,24
  50:8 51:17 54:9
  54:11,20 55:11,18
  56:6,22,24 57:16
  62:8 64:25 66:6
  68:7
believed 49:5
bench 43:3 62:7
benefit 30:19
benjamin 12:13
best 18:4
better 22:8
bevy 22:11
bickford 12:11
billing 23:15 25:3
  25:5 46:6
binding 30:10,11
  32:14 40:2 42:11
  43:25 44:1,21
  45:7 50:19
birnbaum 11:23
bit 24:22,23 25:6
  25:7 36:3,13
  47:10
bow 27:5

**[box - committee]** Page 4

**box** 65:13
**boxes** 22:6
**bragg** 13:7
**brauner** 14:9
**brewing** 66:16
**brief** 19:6 30:3
  33:6 54:5 56:11
  56:16,20 57:17
  58:3,15 65:10
**briefed** 53:22 54:7
  57:1,18 62:15
  64:12
**briefing** 54:2
  57:21 60:20 62:3
  65:6
**briefly** 39:4
**briefs** 33:16 54:8
**bring** 43:22
**brings** 55:4
**brooklyn** 42:22
  48:19 50:6 51:3
**brooks** 12:10
**brought** 55:5
**brown** 6:19
**brozman** 13:8
**bryan** 12:6
**buehler** 12:17
**bump** 68:13
**bunch** 55:23
**burden** 65:25
**burkart** 12:18
**business** 41:11
**buzz** 25:6

**c**

**c** 10:1 16:1 71:1,1
**ca** 10:22
**calendar** 66:25
**call** 21:9 22:13,15
  22:15,20 28:12
  52:20 56:5 62:20
**called** 29:23
**calls** 18:23,23

**cancelled** 18:16
**cange** 13:13
**cap** 37:25
**capitol** 11:2
**care** 48:24,25
  60:19,20
**cared** 50:9,17
**carline** 13:13
**carry** 67:7
**carson** 6:11 23:20
  24:4
**case** 1:3 18:6 19:5
  19:6 25:1,8,9 29:9
  29:17 30:2,18
  33:1 37:23 38:18
  39:15 41:7,13,15
  41:17,17,19 42:14
  42:21,22 43:6,15
  43:20,20 45:14,15
  45:18,19,21,23
  46:1,16 48:3,9,19
  48:21 49:6,17
  50:6,9,18,19
  51:15 54:21,25
  55:2 57:21 60:14
  60:22,23,23 61:12
  61:21 65:24 66:5
  66:16
**cases** 29:23 42:20
  44:5,11 45:14
  46:16 51:17 60:19
**casey** 12:8
**catrina** 13:24
**caucus** 65:16
**cause** 28:7 32:22
  57:11
**caused** 38:5,5
**causes** 40:9
**caveat** 41:15
**caveats** 24:3
**central** 46:25
**centralized** 29:2

**ceo** 21:7
**certain** 41:13 47:6
**certainly** 27:20
  37:10,11 39:7
  42:6 46:2 52:23
  57:23
**certified** 71:3
**cetera** 35:13,13
**challenge** 33:23
**chambers** 17:12
  17:20
**chapter** 4:17
  41:10
**charge** 68:19
**chart** 30:23 31:19
  31:21
**charting** 46:23
**check** 21:11 36:7
  67:8,25
**children's** 8:6
**chiropractic** 50:4
**chose** 61:10
**christian** 11:17
**christopher** 11:20
  12:2
**cicero** 14:3
**circuit** 42:22
  48:11,19 49:3
  50:6 51:3 57:7
**cite** 41:19 43:8
  63:14
**cited** 29:17 30:3
  50:18 60:19
**cites** 51:16
**city** 55:3
**claim** 8:7 35:11,16
  53:17
**claimant** 48:14
**claimants** 6:21
  7:3,9,14,20 9:11
**claims** 34:20,25
  46:3

**clarity** 63:15
**clark** 13:9
**claudia** 13:21
**clear** 18:9,15 24:7
  27:24 30:4,7 34:8
  34:14 39:22 42:15
  43:19 44:8 47:2
  51:3,4 54:21
  58:16 59:3,22
  62:9 63:12,25
  67:20
**clearly** 16:17,19
  29:18 43:7
**clerk** 20:22,25
  66:24
**clerk's** 20:19
  68:17
**client** 16:6
**clients** 65:8
**close** 17:15 25:11
**cole** 8:1 27:10,25
  70:9
**coleman** 11:24
**colleagues** 54:7
**collectively** 18:3
**come** 26:2 31:6
  35:25 42:21 46:7
  63:2
**comfort** 68:12
**comfortable** 19:3
  23:2 24:18 25:13
  35:25
**coming** 25:18
  44:20 60:10
**comma** 18:1
**command** 35:24
**commence** 49:23
**comment** 21:21
**commented** 17:16
**comments** 18:1
  21:16
**committee** 4:2
  5:12,17,22 6:5,13

6:20 7:2,8,13,19
8:2,5,9 9:1,10
17:22,22 18:2,3
26:14,15,18,19
27:10,16 38:10
66:22
**committee's** 9:7
23:8
**committees** 65:22
**common** 56:9,16
**company** 21:7
**comparable** 23:13
**compensation** 2:5
2:12,13,17,19 3:2
3:8,16 4:3,9,15,21
5:3,10,16,23 6:6
6:14 7:20
**complete** 35:24
**completely** 48:4
**complex** 18:12
**complexities**
28:11
**complicated**
46:14 66:2
**comply** 57:23
**concern** 37:11
**concerned** 26:12
37:6 50:2
**concluded** 18:3
61:6 69:1
**concludes** 68:8
**conclusion** 29:16
33:2
**conduct** 45:17
61:11
**conference** 16:11
17:12,21 46:19
65:19 67:13
**conferences** 46:15
**confirm** 67:4
**conflict** 19:2 48:9
**congress** 45:1

**consenting** 8:22
8:25 11:8 17:22
17:23 18:2,3
38:10 66:11 67:3
**consequences**
49:2,19
**consider** 63:1
**consideration**
18:16
**considering** 48:23
**consist** 40:6
**consistently** 59:5
63:5
**constantine** 12:12
**constitute** 29:15
**consultant** 4:2
**consultants** 6:12
**consulting** 7:1
**contact** 22:7
**contemplate** 25:7
**contemplated**
25:23
**contend** 42:8
**contested** 28:18
**context** 24:18
42:23 43:15,19
51:8 52:5 60:2,6
60:14
**contingent** 6:21
7:3,8,14,19 9:11
**continue** 18:6,22
**continued** 68:13
**continuing** 17:3
21:23
**contradictory**
57:6
**contrary** 48:18
**control** 44:18,25
45:6,9,12 60:9
**coordinate** 25:20
26:17
**coordinated**
28:13

**coordinating**
68:17
**corp** 51:5
**correct** 40:17 41:2
43:11 46:22 49:18
59:23
**cost** 40:15 64:22
**counsel** 2:5,14,20
3:9,17 4:22 5:17
6:4,20 7:7,13,18
8:2 23:7,8 26:18
27:18 45:25 58:25
**counties** 29:3
**country** 71:21
**couple** 17:12 26:7
46:11 49:8
**course** 25:1 29:5
32:7 33:17 38:24
42:6 43:3 46:13
49:17
**court** 1:1,12 16:2
16:7,10,18,25
17:11 19:8,11,16
19:22 20:4,5,6,12
20:14,16,24 21:2
21:3,10,13,20
22:16,20,21,23
24:12,20 25:1,13
25:17,20,25 26:6
26:12 27:7,12,14
27:17,23 28:14,16
28:19 29:1,8
30:24 31:11,14
32:18,20 33:4,9
33:10,15,15,20,24
33:25 34:7,15
35:4,4,9,14,21
36:1,4,4,8,15,16
36:24 37:4,10,14
37:15 38:7,16,20
38:22 39:5,11,21
40:4,19,25 41:4,7
41:15 42:6,17,20

43:4,14 44:4,15
44:18,24 45:8,11
45:15,17 47:13,16
47:18,24 48:6,10
48:11,23 49:3,13
49:16,22 50:1,17
50:18 51:1,2,22
52:4,10,25 53:2,2
53:13,16,21,25
54:4,8,11,15,18
54:21,25 55:5,7
55:10,13,18 56:1
56:2,5,6,11,15,19
56:24 57:1,3,5,6,9
57:25 58:3,8,10
58:12,16,18,19
59:6,13,17,19,21
60:1,2,12,13
61:21 62:3,11,13
62:19,20,22 63:15
63:25 64:2,17
65:7,14,16,19
66:1,4,12,14,17
67:6,21 68:3,7,12
68:14,21,23,25
**court's** 36:23
37:11 46:12 57:23
63:20
**courtroom** 22:19
22:22
**courts** 29:22 34:2
34:6,6 38:13
39:17 42:1,1
43:12
**cover** 26:24 52:19
**covered** 36:9
37:14 52:20 63:9
**covering** 26:16
**covid** 33:19 34:1
**cplr** 34:24 35:9
37:19 38:14
**creadore** 11:19

[create - docket]                                                                              Page 6

create 30:9
creditor 25:9
creditors 4:3 5:12
  5:18,23 6:5,13 8:2
  9:2 17:22 18:2,6
  41:11 45:12 61:2
  61:3 66:22
crisis 29:6 30:17
  34:1
critical 30:15
  43:22 45:18 55:4
  62:25
critically 44:7
cross 18:21
crosstalk 47:15
  49:25 53:25 67:20
current 33:11
currently 25:10
cut 19:11 21:13
cutler 3:1,3
cyganowski 14:21

            d

d 1:22 14:15 16:1
  70:1
dacunha 13:10
damages 63:7
daniel 13:6
danielle 11:16
  12:7
dashboard 16:21
  19:19 22:22 58:21
  58:22,24 68:19
date 33:17,20
  57:20 58:1 59:7
  67:6 68:4 71:25
david 11:5 12:22
  14:5 61:24
davidson 11:25
davis 3:7 10:3
  23:17
day 3:15 23:18
  38:8

days 20:17 58:3,5
deadline 67:1
deal 19:9 24:24
  33:25 50:15 55:20
  55:21
dealing 22:24
  35:17 60:16 61:1
deals 53:16
dealt 34:2 35:14
dean 12:12
debtor 1:9 26:13
  27:19 28:25 29:5
  30:5 36:9 41:8,10
  41:20 44:10,13,23
  45:13 48:24,24
  50:8,9 51:13,14
  51:17,18,19 55:23
  60:10,24 61:6,7
  61:10
debtor's 3:4 22:4
  23:7 32:5,19 33:2
debtors 2:14,20
  2:21 3:9,10,18 4:2
  4:17,23 5:2,2 8:18
  9:4,8 17:21 18:2
  29:10,25 30:8,9
  30:10,12,16,20
  31:9,19,22 32:3,6
  32:11,16 35:8
  37:24 38:5,6,25
  39:12,24 40:3,12
  40:13 41:2 42:8
  42:10,23 43:16,24
  44:1 45:7,11,20
  45:25 46:3,8 58:1
  58:25 60:18 64:21
  65:22
dechert 2:4 23:16
decide 32:21 39:2
  39:14 63:2
decided 35:2,4
  38:19,19 39:20
  44:8 48:10,10

55:19,19 57:14
  62:24 63:17,17
deciding 36:5
  62:25
decision 24:17
  29:19 30:11 32:15
  35:5 40:3 41:18
  42:11 43:5 49:10
  49:22,24 52:2,4
  62:24 63:11,14
decisions 30:5
  35:10 39:18 43:23
declare 56:1
deemed 49:17
deeply 18:7
defend 30:18
defendant 28:23
  35:12
defendants 8:14
  8:18,23 9:3,8
  29:20 30:18,21,22
  31:23 32:13 38:3
  38:6 40:7 42:6
  43:10 47:4,13
  52:13 61:6
defense 34:19
delay 25:3
delconte 13:11
deletion 27:1
delves 56:21
denial 56:22
denying 53:10
department 43:4
  51:12 61:5
departments
  48:18
depending 68:4
described 36:19
designated 33:14
  33:21
despite 18:4
detail 30:2

determination
  38:21 53:3
determine 53:11
  55:7
determined 33:18
  44:4
differences 18:7
  18:10 67:11
different 48:18
  60:24 63:22 64:19
difficult 25:7 47:6
  52:3
difficulties 21:9
difficulty 16:8,20
digesting 34:13
digit 22:17
diligence 48:15
direction 46:19
directly 59:24
disagree 65:18
discovery 66:16
  67:13 68:10
discuss 17:9 31:18
  31:25 32:8
discussed 32:21
  48:8
discussing 32:13
  32:23 35:7 44:2
  44:12 49:12,18
discussion 32:4
  33:5,7 52:18
disputes 66:16,21
dist 51:5
distancing 47:20
distortion 41:6
  44:14
district 1:2 34:6
  34:11
districts 8:7
division 48:17
  50:3 51:11 57:7
docket 59:10

**[document - fairly]**                                                                      Page 7

document 8:8,16
  8:19,24 9:5,9,14
documents 24:2
doing 19:22 22:3
  23:13 25:14 26:25
  40:15 50:24 57:18
dollars 61:12
donald 11:19
donna 14:24
door 23:3
dorr 3:2,4
doubt 67:21
dragged 48:25
  50:2
drain 1:22 16:3
draw 44:11
due 30:22 31:3,5,7
  48:14 52:17 56:7
  56:15,21,22 57:16
  58:3 59:23,25
  60:3
duplicate 24:1,2
duplicated 23:20

**e**

e 1:21,21 2:5 10:1
  10:1 13:6 16:1,1
  70:1 71:1
earlier 41:23
  63:13
earned 5:10
easy 27:13
ecf 2:8,15,23 3:5
  3:12,19 4:6,11,18
  4:24 5:7,13,19 6:1
  6:9,17,24 7:5,10
  7:15,24 8:3,9,12
  8:16,20,25 9:5,12
  9:16
eck 13:23
eckstein 9:10
  13:12
economic 35:12
  35:17

ecro 1:25
effect 40:7 46:8
  60:13
effective 22:5
effectively 33:8
efficiency 8:2
  27:18
efforts 46:13
eight 25:7
either 20:16 41:10
  45:13 48:4 56:16
  56:19 58:6
element 40:5
eleven 25:8 26:13
email 59:9 66:17
emailed 27:25
emergency 21:15
emily 15:2
employ 8:1
employment 23:6
  23:14
enacted 31:5
enforce 67:12
engage 25:23
engaged 19:4,5
enjoined 61:2
enter 22:17 29:8
entered 28:5
  53:10 66:23
entering 22:22
  54:15
entire 43:8
entity 41:8
entries 23:22,23
  24:1
epicenter 30:16
  37:25
equitable 37:23
  37:24 54:22 56:10
  61:4 63:5
equities 29:9
  30:14 31:11 32:2
  33:1 38:8 47:10

48:23 60:11,12
  61:6
equity 31:12 38:8
equity's 50:16
erf 17:11,14,24
  18:5,8,13,16,19
  18:20
eric 12:20
erin 14:4
ernst 4:8
essence 39:23
  60:24
essential 33:15,21
  49:17
estate 44:19 45:13
  46:8 65:2
estates 64:9
et 5:23 6:5 16:14
  35:13,13
evaluating 57:11
evan 10:24 52:7
  52:12 57:22
events 64:16
everybody 22:6
  25:5 26:16,23
  59:5,11
evidence 40:7,10
  42:7
exactly 20:22 42:5
  68:15,18
examiner 22:24
  24:16 25:15 26:1
examiners 25:21
  26:8
example 65:2
exceed 35:12
excellent 18:25
exception 17:10
  19:9 36:19,20
  50:13
exchanged 17:25
excluded 52:20

excuse 50:21
  55:14
exempts 48:13
exercise 44:18,25
  45:6
exercised 45:9
exist 31:4
exists 31:20,20
expect 57:21
expense 23:23
  27:4 65:9
expenses 2:7,8,13
  2:20,22 3:3,5,9,11
  3:17,19 4:4,5,9,10
  4:16,18,22,24 5:5
  5:6,11,13,17,19
  5:24,25 6:7,8,15
  6:17,22,23 7:4,10
  7:15,22,23 23:20
  23:21,24 24:13
experience 46:22
experiencing
  68:16
explain 23:25
explanation 27:24
expressly 56:21
extend 32:19
extensive 33:8
extent 50:12
extra 68:19
extreme 38:3
extremely 30:4
eye 22:7

**f**

f 1:21 71:1
fact 30:25 42:7
  54:20 58:21 62:14
  64:25
facts 44:8 45:14
  63:1
fair 26:6
fairly 46:1,1

Page 8

**faith** 17:25
**fallback** 60:4
**families** 17:3
**far** 23:13 26:12
  28:3 37:6 39:18
  47:21 50:1 57:18
  59:15 68:3
**farther** 67:15
**fault** 38:4,5
**favor** 57:14 61:6
**favors** 29:19 43:9
**fay** 14:4
**features** 22:21
**federal** 29:22 34:6
  42:1
**fee** 2:4,8,18,22 3:1
  3:5,11,15,19 4:1,5
  4:10,18,20,23 5:1
  5:6,13,15,19,25
  6:3,8,11,16,19,23
  7:1,4,9,15,23
  22:11 23:6,9,14
  24:5,10,16,25
  25:15,20,25 61:14
  70:6
**feel** 31:16 65:17
**feels** 17:13
**feeney** 13:25
**fees** 24:13 26:11
**feld** 6:4
**fewer** 23:13
**figure** 26:10 37:17
  59:10 65:21 68:18
**file** 58:5
**filed** 8:8,24 9:3,10
  9:14 29:11 56:11
  56:16,20
**filled** 31:22
**final** 68:11
**finance** 8:12 9:15
  10:11 28:21
**financial** 4:16
  5:22

**find** 32:19 46:15
  47:10
**finding** 30:10
**fine** 24:1 26:9
  27:7 28:19 62:19
  65:9,11 67:21
**finish** 28:14 45:15
**finished** 21:14
**firm** 28:1
**firm's** 23:17
**firms** 23:5,11,13
  23:15 27:16 64:10
**first** 2:4,11,18 3:1
  3:7,15 4:1,13,20
  5:1,9,15,21 6:3,11
  6:19 7:1,12,17
  20:18 22:11,23
  25:4 28:22 33:11
  34:22 39:16 41:24
  43:3 51:11 57:12
  61:5 64:12 66:23
  67:1,17
**five** 26:14,14
  65:20
**flom** 4:21
**flow** 27:13 67:13
**flyer** 64:15
**focused** 18:11
**focusing** 23:11
  60:6
**fogelman** 12:19
**folks** 22:8
**follow** 29:25
**followed** 29:24
  34:5 41:25
**following** 17:18
  23:5,15
**footnote** 29:21
  41:24
**forbidden** 56:1
**forced** 60:11,11
  60:25 61:8

**forces** 45:13
**foregoing** 71:3
**form** 29:1,15 30:5
  30:8,19 31:10,19
  32:6,11,16,20,25
  33:2 35:7 36:10
  37:5,13,16 38:2
  38:25 39:8,12
  41:22 42:12 43:24
  44:11,12,22 46:24
  47:8 48:3 55:25
**formal** 67:11
**forms** 30:1,13
**forth** 29:18 43:8,9
**forward** 22:24,25
  33:16,22 34:8
  43:12
**found** 39:13
**four** 46:7
**fours** 41:16 43:6
  44:9
**frankel** 7:18
**frankly** 17:5
  48:22 60:9 61:16
  66:4
**free** 31:16 67:12
**frees** 49:21
**friday** 67:24
**friedman** 29:17
  43:7
**friedman's** 41:17
  41:23 43:1,23
**friend** 68:20
**front** 45:4 65:16
**frozen** 58:21
  68:19
**fti** 7:1
**full** 34:12 37:22
  49:6
**fully** 19:4,5 35:2,3
**fund** 21:15
**fundamental** 18:7
  30:22

**funds** 18:8
**further** 17:25
  18:18 21:9,16
  28:16
**future** 18:19
  47:18

**g**

**g** 16:1
**gage** 9:15 10:10
  10:15 28:20,20
  31:7,13,17 33:5
  33:13 34:4 35:1
  35:19,22 36:11
  37:3,9,20 38:15
  39:16 40:18,22
  41:3,5,13 42:19
  42:25 43:18 44:7
  44:17,20 45:3,9
  45:16 46:11 48:5
  49:7 50:25 52:17
  52:22 56:6 57:4
  58:10,11,13 59:16
  59:18,19,20,22
  61:20 62:12,17,20
  63:20 64:1 68:11
  68:22
**gannon** 29:19
  41:17 43:8,9
**garguilo** 33:12
  34:16 53:2,8
  55:11
**gather** 46:6
**general** 26:22
  29:3 36:18,20
  46:5 54:22 56:10
**general's** 61:25
**generally** 36:1
  37:9 63:18
**general's** 11:1
**gentin** 11:16
**george** 9:15 10:15
  13:19

gerard 14:3,17
getting 16:20 25:3
  26:2 48:1 49:5
  50:11
gilbert 7:12
give 17:10 36:25
  37:21 55:13 68:12
given 24:19 28:11
  31:4 47:9,19 52:2
  57:18 61:17 63:21
gives 53:17 68:5
giving 67:2 68:14
glad 21:22 32:9
  33:9 38:17
go 16:15 22:21,23
  23:3 24:21 25:7
  25:22 30:2 31:2
  31:14 36:6 43:1
  46:19,23 47:2
  51:22 59:19,21
  63:19 65:3
goeff 13:2
goes 39:23 42:3
  63:13 66:5
going 17:7 18:24
  20:12,20,22 21:25
  22:24,25 28:4
  31:16,16 42:13,16
  43:1,12 46:23
  47:2,17 57:15
  61:21 62:7 64:7
  64:14 66:21 67:23
good 16:2 17:25
  32:22 65:7 68:22
goodbye 22:16
governance 18:9
government 6:20
governmental 7:2
  7:8,13,19 9:11
  50:13
grant 24:4 27:24
granted 27:21
  70:6,9

grateful 21:22
great 28:4 55:22
gregory 14:11
griess 13:14
grimm 15:2
grounds 61:19
group 8:25 11:8
  17:23 26:20
groups 26:13 46:6
guess 18:20 23:18
  25:4 38:15 39:4
  40:4 52:1
guidance 17:23
guided 65:2
gump 6:3

## h

h 9:10 13:12
haberkorn 14:18
hale 3:2,4
half 55:15
hand 32:14
handful 23:20
  42:20
handling 42:2
happen 64:17,18
happened 68:18
happy 16:15
  59:10
hard 18:22 37:6
  47:25 52:2 61:9
  67:10,22
harm 30:20 47:12
  57:18
hauer 6:4
hayden 11:24
he'll 21:11
head 59:24
health 33:18,22
  49:19
healthy 17:3
hear 16:16,18,23
  19:16,17,17 20:2
  20:10,13,15,15

21:22 35:20 49:7
  58:10,21,23,25
  59:2 61:7 66:13
heard 52:9 59:5
hearing 2:1,2,4,11
  2:17 3:1,7,15 4:1
  4:8,13,20 5:1,9,15
  5:21 6:3,11,19 7:1
  7:12,17 8:1,5,11
  8:14,18,22 9:1,7
  9:14 16:3,14 19:8
  21:5 22:21 24:16
  28:11 30:25 45:24
  57:15,20,24 58:6
  58:6 59:3 66:25
  67:11,16,18 68:13
hearings 16:9
  65:11 68:8
heart 17:24
heavily 21:21
held 18:7
hello 16:2 19:12
  20:10
helpful 32:9 38:17
high 61:13
highest 48:10,11
highlight 31:18
highly 32:16
hilton 51:5
hoc 6:20 7:2,7,13
  7:18 8:5,9,25 9:7
  9:10 11:8 17:22
  18:2 26:14,18
  38:9 65:23
hold 20:1
holdback 23:1,2
  24:13 26:3 27:2
hon 1:22
honor 16:16 17:4
  17:21 18:19 19:3
  19:7,13,13,18
  20:1 21:1,6,19
  22:2,10 24:6 27:4

27:9 28:2,20,24
  29:7,10,21 30:3
  30:11,14,23 31:8
  31:13,17 32:9,18
  33:13 34:4,13
  35:1,5,20,23 36:3
  36:11 37:9,21
  38:1,15,21 39:6,6
  39:7,8,17 40:2,18
  41:16 42:14,25
  43:4,19 44:7,21
  45:3 46:11,17
  47:11,15 49:7,9
  49:12,15,17 52:7
  52:9,11,11,15,16
  52:21,24 53:5,6,8
  53:12,15,20,23
  54:1,3,6,10,13,17
  54:24 55:2,4,9,11
  55:17,21 56:4,7
  56:13,18,20,21
  57:2,4,22 58:2,7
  58:10,14 59:2,8
  59:16,20,23 61:20
  61:24 62:12,17,18
  63:4,20,21 64:8
  66:8,11,13,15,19
  67:5,19 68:1,6,11
  68:24
honor's 17:23
  18:1 34:9 36:6
  39:23
hope 10:21 16:18
  17:2 18:18 58:22
hotels 51:5
hour 46:7 55:14
hours 23:6,14
  67:2
howard 12:9
huebner 10:8
  16:16,23 17:1
  19:11,12,14,17,24
  21:1,6,11,14,18

22:2 24:6,14,21
25:16,19 26:10,22
27:9,13,18 28:3
59:2,7,8 64:6,8
65:12,15 66:2,8
**hurley** 14:10
**hwang** 12:20
**hyde** 9:25 71:3,8
**hypothetically**
40:23

**i**

**idea** 64:9
**identification**
22:18
**identified** 41:7
52:13
**identifies** 30:19
**identify** 16:6 29:5
67:13
**identifying** 16:8
**imagine** 46:8
**imagined** 22:9
**immediate** 47:3
47:12 48:1
**immediately**
25:10 34:8
**impact** 32:3,5
34:12 46:24 47:2
47:7
**implicate** 51:24
61:9
**important** 18:12
46:1,2,17,18
52:21
**importionment**
30:10
**impose** 30:9,20
43:24
**imposed** 33:19
**impossible** 32:7
**improperly** 38:6
**inability** 48:12

**include** 23:23
35:8 37:16 42:21
**included** 41:21
48:2 55:24
**includes** 27:1
**including** 17:6,7
29:25 30:5 31:9
32:5 38:9 43:24
44:10 45:19 50:12
60:19 63:11 65:3
**inclusion** 29:20
32:16,20,24 33:2
37:13 43:9 44:12
44:21 46:24 47:7
**incremental** 24:9
32:3 46:24
**incur** 40:14
**incurred** 2:7,20
3:9,17 4:16 5:5,11
6:15,22 7:22
**incurs** 23:8
**independent** 8:6
44:25
**indiscernible** 17:9
17:11 20:20,23
21:3,12 24:9
26:24 27:20 28:13
29:23 42:21
**inequitable** 48:22
50:5,10 51:23
**information** 6:12
**informed** 54:6
**injunction** 33:7
50:11,24
**injury** 35:11,17
48:8 52:6 63:6
**inquire** 57:24
**inquired** 56:22
57:4
**inquiring** 52:16
**insight** 34:1,5
**instance** 64:13

**instructed** 22:14
**intense** 18:12
**intentions** 18:4
**interesting** 29:21
**interim** 2:4,11,17
3:1,7,15 4:1,3,8
4:13,20 5:1,9,15
5:21,24 6:3,11,19
7:1,12,17 24:5,10
70:7
**internal** 25:2
**interpreting** 44:5
**interrupted** 31:15
**interrupting** 31:1
**introduce** 40:10
**introduction**
16:13
**intrude** 52:3
**investment** 5:2,11
**invited** 62:3
**involved** 21:21
46:14 54:2 61:12
**ipsa** 17:19
**irreparable** 30:20
31:24
**islip** 29:2 46:25
**issue** 19:15 33:18
34:17,17,21 35:2
35:15,25 36:2,5
36:24 37:12 38:12
38:18,22 39:1,5,9
39:12,14 41:8
45:22 46:1,2 49:1
49:10,11,12 50:15
53:22 54:7 55:9
55:15,18 56:12,13
56:14,15 57:1,9
57:10 59:25 60:3
60:8,10 61:18
62:14,24 63:3,23
67:23 68:10
**issued** 34:11

**issues** 33:25 35:18
51:20 52:3 57:17
67:14,20
**item** 22:11 28:8
**items** 17:9

**j**

**j** 12:2
**james** 12:14
**jamie** 13:3
**janssen** 10:18,19
10:20 52:13
**january** 2:15,22
4:14 23:22
**jasmine** 12:16
**jeffrey** 12:21 13:5
**jeffries** 5:9
**jennifer** 11:17
13:7,17,25
**jeremy** 13:15 14:6
14:14
**jesse** 13:11
**johnson** 10:18,18
**joinder** 9:4,7
**joint** 34:18 53:17
54:15 63:10,23
**jointly** 58:6
**jones** 3:15 10:24
23:18 52:7,7,11
52:12 53:15,20,23
54:1,6,9,13,17
55:2,17,21 56:13
56:18,20 57:2,4
57:22,22 58:2,7
**joseph** 14:11
**jr** 9:15
**judge** 1:23 16:2
20:2 22:13,14
34:10,10 39:1
51:4 62:23 63:10
63:16 64:4
**judgment** 34:16
34:17 62:16

**july** 64:18 65:5
**jumping** 21:8
**june** 65:5
**jurisdiction** 48:15
  48:20 50:7,20,21
  50:22,23 51:7,9
  51:10,12
**jury** 30:18 33:24
  33:25 34:3,14
  36:9 37:5,13,16
  38:4 39:12,14
  40:3 47:7 48:3
  55:24 62:4,6,10
**justice** 29:17
  33:12 34:16 41:17
  41:23 43:1,7,22
  53:2,8 55:11 56:3
**justin** 14:1

**k**

**k** 10:20
**kaitlyn** 13:22
**kami** 15:3
**kaminetzky** 12:13
**kaye** 2:12
**kcc** 27:2
**keenan** 51:4
**keep** 20:25 31:16
  43:20 44:20
**kelleher** 11:22
**kenneth** 9:10
  13:12
**kept** 20:7
**kharmah** 50:4,8
  50:18 51:16
**kicked** 19:19,20
  52:16 56:5 58:17
**king** 2:18 23:16
**klauder** 12:22
**kleinman** 13:15
**knapp** 14:25
**know** 16:3 17:18
  18:25 19:3,14,24
  20:21 22:5,8

24:14,19,25 25:4
25:11 26:19,20
27:15 28:14 32:4
32:17 33:5,22
34:12 35:12 37:5
39:2 41:14 49:11
49:23 53:21 55:16
57:12 58:18,18
59:6,11 63:21
64:3,9,10,23 65:3
65:5,20,23 66:15
67:6,22 68:4,19
**knows** 19:8 25:2
  28:24 29:10 38:1
  43:4 46:17 68:15
**kordas** 12:23
**kpmg** 4:1
**kramer** 7:17
**kurtzman** 6:11
  23:20 24:4

**l**

**l.p.** 1:7 5:23 6:5
  16:14
**labovitz** 12:24
**lack** 62:2
**language** 29:8,13
  32:25 36:13 37:6
  43:1 51:12
**large** 23:5
**larger** 42:2
**lastly** 60:8
**late** 16:19,22
**lauren** 11:22
**lauria** 12:1
**law** 11:7 29:9,16
  29:18 30:2 33:1
  36:18 37:1,23
  39:3,10 41:19
  42:14 43:7,9,11
  44:1,3 48:10 53:3
  54:20,23 55:8
  56:9,16,25 57:21
  60:4 64:10

**lawrence** 12:19
**lawsuit** 52:6
**lawyer** 27:15
**lawyers** 38:7 46:6
**layered** 47:11
**lead** 23:24
**leading** 48:21
**leave** 40:22 63:23
**leaving** 51:23
  61:10 67:9
**led** 46:15
**ledanski** 9:25 71:3
  71:8
**lee** 67:8,25
**lees** 13:16
**left** 22:13
**legal** 37:17,18
  38:12 71:20
**legitimate** 51:1
**lengthy** 43:5
**lesser** 23:2
**letter** 19:7 22:11
  38:16
**level** 49:3,3
**levin** 7:17
**levine** 12:7
**lexington** 10:5
**lexus** 51:5
**liability** 30:9
  32:15 34:18,19
  35:11 39:13 40:8
  40:20 43:25 53:18
  54:16 61:1 63:11
  63:23
**liable** 40:8
**lift** 19:10 28:8
**lifted** 57:10
**light** 17:11 34:1
**lightner** 11:18
**likelihood** 63:1,3
**limited** 28:24 32:2
  32:16,17 40:1
  47:14 49:20

**line** 16:4 20:7
  21:12 22:19 45:25
  46:7 70:4
**liquidated** 41:10
  60:20
**list** 23:11 65:24
**listening** 16:5
**litigated** 42:18
**litigation** 6:21 7:3
  7:8,14,19 9:3,11
  29:1,11,12 35:15
  35:16 37:8 38:12
  41:19,24 42:3
  43:15 46:4,9,25
  48:25 50:2,15
  55:3 60:25 61:3
**little** 16:19 22:6
  24:22,23 25:6,6
**live** 16:4 22:20
**lives** 66:2
**living** 66:2
**llc** 5:9 6:12 8:12
  9:15 10:11
**llp** 2:4,12,18 3:2,4
  3:8 4:1,8,21 6:4
  6:20 7:12,18 10:3
  10:17
**llp's** 4:13
**logged** 65:16
**long** 25:2
**longer** 29:12
**look** 62:24 64:19
**looking** 25:10
  44:15 49:14
**looks** 66:21
**loquitur** 17:19
**los** 10:22
**loses** 55:20
**loss** 35:12,18
**lot** 17:8 18:25
  22:3 50:11 57:5
  59:9

lots   17:6
loud   59:2 64:21
lp   5:1

**m**

m   8:24
madden   13:17
maeglin   15:1
main   23:7,8 40:8
making   35:5 40:4
   45:12 56:23
man   28:2 59:12
managed   42:5
management
   39:20
manner   39:19
march   17:21
margaret   14:20
mark   11:18
markowitz   8:8
marshall   10:8
material   25:12
materially   61:12
matter   1:5 27:10
   27:11 28:4,5,18
   33:15 52:5,21
   57:20 62:10
matters   23:16
   52:19
matthew   14:19
maura   13:1
mcclammy   12:14
mcdermott   12:25
mcmann   34:10
mcneil   10:19
meagher   4:21
mean   24:14 25:14
   26:7 34:10 41:15
   43:2 62:14,23
   65:7
meaning   45:1
mechanic   26:2
mediation   8:7
   17:7 18:6,11,15

18:18,21 19:2
21:21 28:7 45:18
46:18,20,23 47:17
61:21
mediations   22:3
   46:13,15
mediators   18:22
   19:3,5 21:23
   46:16
megan   11:21
melanie   14:21
melissa   13:23
member   38:11
mentioned   41:23
   56:9 62:2
mess   43:17
metro   50:4
meyers   10:17
michael   14:2
michelle   12:18
million   61:13
mindful   65:25
mineola   71:23
minute   55:14
mispronouncing
   53:9
mitchell   14:10
modified   60:4
molton   14:5
moment   62:1
monday   67:7
money   23:3 26:23
   50:11
monghan   13:1
monitor   21:8
month   25:25
months   25:8 26:7
   26:8
moot   57:13
morning   16:2
motion   8:5,7,11
   8:15,18,23 9:2,8
   9:14 19:10 28:8

34:23 49:5 53:10
55:6,7 58:5 66:23
67:12 70:9
movants   28:14,17
   28:22,23 52:14,25
   62:2,7 65:12,17
move   33:22
moved   62:17
moving   24:25
   27:19 28:9,21
   30:14 33:16 64:10
movings   28:10
multiparty   46:14
multiple   17:16
   18:23,23,23 46:6
   46:20 61:18 64:10
mulvhill   13:2
mute   19:21
muting   20:7,7,8,8
myers   52:8

**n**

n   10:1,20 16:1
   70:1 71:1
nachman   11:5
   61:24,24 63:4
   65:3
naftalis   7:18
name   53:9
naming   46:16
narrow   37:12
   39:1,7 49:10
   67:10
narrowed   67:20
nas   8:5,9
nassau   29:3
natasha   12:24
nationwide   50:11
navy   42:22 48:19
   50:6 51:3
necessarily   32:8
necessary   2:6
   3:17 5:5 6:15 7:22
   38:20 49:4

need   26:20 33:25
   63:1 67:17
needed   64:25
needs   23:12
negisa   12:15
negotiation   61:14
negotiations   32:7
   45:23 60:21
neither   63:6
never   42:17,22
new   1:2 8:14 9:3
   10:6,13 11:1,10
   29:1,2,9,11,16,18
   30:4 33:1,15 34:2
   34:7,11,24 35:9
   36:16,23,23 37:23
   38:11,14 39:3,10
   39:17 41:20 42:1
   43:7,8,11,12
   45:14,21 46:25
   47:13,17,24 48:10
   49:3,13,16 50:12
   50:17 51:2 53:2,3
   53:7 54:20,21,23
   55:3,8,10 56:2,9
   56:15,24,24 60:4
   61:25 64:12,17
   65:4
ng   60:23
nicholas   14:13
nine   25:7
non   8:22,25 11:8
   17:23 18:3 35:12
   35:17 36:21,21
   38:10 66:11 67:3
normally   51:18
note   18:21 23:12
   27:14 28:10 29:4
   46:13
noted   39:18
notice   2:1
noting   17:1

notion   41:20
november   23:23
nuisance   34:20
  40:9 46:5 48:7
  53:17 63:6
number   16:21
  19:8 22:18 23:5
  23:13 27:22 42:3
  43:2 47:5 65:21
nunez   12:8
ny   1:14 10:6,13
  11:3,10 55:3
  71:23

**o**

o   1:21 16:1 71:1
o'melveny   52:8
objected   58:4
objection   8:18 9:1
  9:4,7,8 27:20
objections   27:19
obligations   36:18
  43:25
observing   52:24
obtain   48:15
obviated   64:16,23
obvious   39:25
obviously   18:21
  19:2,8 25:23
  27:15 28:5 29:11
  33:24 39:24 42:3
  46:16,20 52:21
  59:10 62:23 65:2
  65:17
occur   47:18
office   11:1 20:19
  61:25 68:18
official   4:2 5:11
  5:17,22 6:4,12 9:1
  16:9
okay   16:25 20:1
  20:14,24 21:13
  24:14 25:16,19,20
  25:25 26:10,11

27:7 28:3,19
  31:11,14,17 33:4
  33:24 34:15 35:22
  40:25 41:4 52:10
  53:16 54:11 58:8
  59:6,13 60:2
  62:11 64:1 68:3,7
  68:23,25
old   71:21
older   22:8
omnibus   2:2
  16:14 24:16 26:24
  27:1 57:20,24
  59:7 64:13,16
  65:1,16
once   18:17 28:15
one's   23:10 64:2
ones   60:19
ongoing   45:17
open   22:21
opinion   29:22
  37:1,12 49:9,10
  49:14 51:16
opinions   57:6
opioid   8:22 9:3
  29:5 30:16 37:25
  50:14
opportunity   67:2
oppose   51:20
opposed   34:18
  41:9 51:18 54:15
opposing   42:23
opposition   8:14
  8:22 61:5
optimal   18:8
oral   16:7
order   26:12,15,19
  27:1,5,25 28:6,10
  28:13 29:7 33:1
  34:11 37:14 39:6
  41:1 53:10,14,16
  64:5 67:12

orders   26:24
ordonez   14:22
originally   29:10
ortho   10:19
otterbourg   7:7
ought   37:5
outlined   32:18
outset   29:4
overall   46:2
o'connell   13:3
o'melveny   10:17

**p**

p   10:1,1 14:10
  16:1
p.a.   5:15
p.c.   7:7 8:1
padjen   13:4
page   70:4
paid   25:4,10
palatable   39:13
papers   28:22 30:7
  31:18,25 32:5,21
  44:12 52:13 59:24
  62:5,5
paragraph   51:16
parameters   60:23
pardon   36:12
  43:21 45:4 59:20
park   10:12
part   29:10 37:22
  37:23 62:15,25
partial   34:17
participating
  39:24 40:14,16
  41:21 61:3
participation   28:8
particular   34:4
  37:7
particularly   32:4
  41:14
parties   17:17,24
  18:10,13,17,18,24
  19:4 21:17,20,23

35:6 36:21 40:16
  46:4,20 57:16
  58:4,23 64:24
  65:15 67:10,13,22
partners   5:1
party   29:12 39:24
passed   54:8
passionately
  17:13
path   34:8,14
  49:19
pau   14:23
paused   18:5
pausing   18:15
pay   27:1
paying   65:21
payment   24:9
peak   25:6
pearlman   14:6
pending   35:15,16
people   16:4 17:17
  19:1 20:8 21:4
  24:24 47:20 58:21
  59:9 62:14,22,22
  65:2 68:20
percent   24:8,12
  25:4,12 68:22
perdue   60:15
perfect   16:16
period   2:7,14,21
  3:4,10,18 4:5,9,14
  4:17,23 5:5,12,18
  5:24 6:7,16,22 7:3
  7:9,14,22 20:14
perkins   11:20
permit   53:2 54:23
permits   55:8
permitted   16:12
  56:24 60:15
person   48:16
personal   22:18
  35:11,17 48:8,20
  50:21,22,23 51:9

52:6 63:6
**personally** 21:8
**personnel** 29:19
  41:17
**perspective** 22:5
  61:16 63:8 64:10
**pharma** 1:7 5:23
  6:5 16:14
**pharmaceuticals**
  10:19,20,20
**phone** 16:21
  20:19 31:1 52:16
  59:9
**pickering** 3:2,3
**pie** 30:23 31:18,21
**piers** 14:19
**pillsbury** 11:7
**pinned** 64:2
**pjt** 5:1
**place** 27:21 28:1
  57:12
**placed** 30:12
**placing** 18:11
  30:8
**plain** 29:13
**plains** 1:14
**plaintiff** 50:21,22
  51:13 60:15
**plaintiff's** 29:4
  30:17
**plaintiffs** 8:14
  29:2 38:1,11
  40:17 41:1 42:8
  45:19 46:4 53:11
  55:23 62:5
**plan** 60:21 61:15
**planned** 18:5,11
  18:15,17
**play** 45:14
**pleading** 30:17
**pleadings** 29:4
  38:1 64:12

**please** 22:15,17
**plenty** 58:20
**pod** 19:7
**pohl** 14:7
**point** 16:10 22:1
  23:3,4,19 30:15
  31:2 35:15,18
  40:4 41:14 43:16
  46:12 48:22 50:16
  53:14 54:24 55:4
  57:19 58:15 61:22
  62:1,13 63:9 64:9
  65:7 66:5 67:25
  68:12
**points** 56:17,19
  57:21
**polk** 3:7 10:3
  23:17
**popped** 35:22
**porter** 2:12
**portion** 31:21
  40:6
**portioned** 27:3
**posed** 52:9
**position** 45:21,22
  60:4 63:5
**possession** 2:21
  3:10 5:3
**possibilities** 32:10
**postings** 34:5
**posture** 38:18
**potential** 24:15
  65:20
**potentially** 25:11
**pourakis** 12:12
**practical** 32:10
**practice** 30:6
  41:20,25 42:16
**precedent** 50:19
**precise** 43:18
**precisely** 41:14
**predict** 32:7 46:18
  47:7,19,19 49:18

**preference** 66:20
**preis** 14:12
**prejudice** 31:8,8
  31:24 32:12 38:3
  42:10 47:3,3,12
  48:1
**preliminary** 33:7
**premature** 48:4
**premise** 57:7
**prepare** 26:20
  64:11
**prepared** 27:24
**preparing** 35:6
**present** 11:14
  36:21,21 66:3
**presented** 35:3,3
  35:3 36:4 38:19
  38:22 42:7
**pretty** 22:5 32:23
  51:3,4 61:4
**prevent** 50:5,24
**prevented** 56:23
**prevents** 48:20
  50:7 51:8
**prey** 14:13
**price** 27:13
**primary** 61:1,3
**principle** 43:19
  63:14
**principles** 44:2
  54:22 56:10
**printing** 17:17
**probably** 23:24
  26:6,11,25 53:9
  57:10 64:13 67:23
  68:9
**problem** 20:18
  21:11
**problems** 58:19
  58:20 68:15
**procedures** 25:2
**proceed** 21:5,25

**proceeding** 17:8
  29:14,15 44:9,13
  46:9 47:8 60:14
**proceedings** 69:1
  71:4
**process** 18:12
  25:23 30:22 31:3
  31:6,7 35:6 38:24
  52:17 56:7,15,21
  56:23 57:16 59:23
  59:25 60:3 64:24
  67:4 68:12
**product** 19:24
**professional** 2:5
  2:11,17 6:14 7:3
  7:20
**professionals**
  26:13,14,14,15,21
  65:22,22,23
**progress** 18:6,14
**progressed** 18:18
**prohibited** 36:13
**promptly** 67:16
  67:18 68:1
**pronounced**
  33:12
**pronouncements**
  63:13
**property** 44:19,23
  45:10,12
**proposals** 17:25
**prosecution** 34:19
**prospect** 57:19
**provided** 35:13
**provides** 48:14
**province** 5:21
**proving** 22:4
**provision** 31:4
  56:8
**proviso** 48:14
  51:6
**public** 8:6 34:20
  40:9 46:5 48:7

[public - right]                                                    Page 15

53:17 63:6
**purdue** 1:7 5:23
  6:5 16:14 17:6
  48:12 50:14,23
  51:9 60:17
**purdue's** 46:5
**purpose** 33:8
**purposes** 40:1
**pursuant** 29:13
**pursuing** 41:2
**pursuit** 18:4
**put** 30:10 39:12
  60:15 65:10

**q**

**quarropas** 1:13
**quarterly** 2:18
  22:11 24:25 26:4
  70:6
**question** 31:2
  34:9 36:6 50:1
  51:2 53:5 54:18
  55:12 56:4 66:20
**questions** 18:25
  21:16 27:4,14,23
  28:16 33:9,10
  52:9 55:15 58:9
  59:14
**quick** 65:19
**quinn** 15:3
**quite** 18:22 19:4,5
  25:2,12 26:5
  63:12 67:16
**quote** 17:15,15
  34:17

**r**

**r** 1:21 10:1 16:1
  71:1
**rachael** 13:18
**raise** 51:20 66:20
**raised** 27:4 35:18
  38:9
**raises** 16:10

**raising** 51:21
  60:22
**rdd** 1:3
**reacting** 46:12
**reaction** 38:15,17
**read** 17:15,18
  34:20 43:8 45:25
**reading** 21:14
**ready** 26:1
**real** 47:12 61:5
  68:14
**reality** 32:10,11
**really** 17:4,8
  26:17 30:15,20,21
  31:2,11,23 32:2
  35:3 36:25 37:12
  38:20 40:20 41:19
  42:17,22 49:4
  51:7 58:23 60:9
  64:3,25
**reason** 16:20
  19:18 49:20 52:1
  60:12 65:5
**reasons** 32:17,21
  35:7 48:6
**reassess** 64:24
**receive** 41:11
**received** 62:5
**recognized** 38:13
**record** 16:9 35:24
  36:7 61:17 71:4
**recording** 16:11
**recordings** 16:12
**reduce** 27:3
**reduced** 23:25
**reduction** 24:4
**reductions** 26:3
**refenced** 18:21
**refer** 52:12
**referenced** 39:11
**referred** 53:7
**referring** 55:1

**regard** 30:12
  32:15 34:3 36:5
  40:3 42:11 49:11
**regarding** 51:6
**reimbursement**
  2:6,13,19 3:3,9,16
  4:4,9,16,22 5:4,10
  5:16,24 6:7,15,22
  7:21
**reiterated** 63:10
**rejoin** 22:15
**relate** 61:14
**related** 8:7,16,19
  8:24 9:4,9,14
**relied** 43:12
**relief** 8:11,15,19
  8:23 9:2,8 21:15
  28:25 29:7 32:22
  39:6 40:1 47:14
  49:20
**reluctant** 61:17
**relying** 31:4
**remember** 65:21
**remote** 57:19
**rendered** 2:6,19
  3:8,16 4:4,15,22
  5:4,16 6:6,14 7:21
**reorganization**
  43:17
**repeat** 30:15
  52:22
**repeating** 36:3,12
  39:4 43:21 47:10
  47:16
**reply** 9:14 34:15
  53:14 62:8
**report** 17:5 23:23
**reported** 30:4
  39:18 43:23
**reporter** 16:8
**request** 25:24
  32:22 42:16 52:24
  55:7,24

**regard** see above

**require** 30:18
  31:2 57:15
**requires** 44:9 55:8
**requiring** 65:9
**res** 17:19
**reserved** 34:21
  63:11
**resolve** 18:10 27:2
**resolved** 28:5
  33:23
**respect** 32:8 35:16
  36:21 55:22 60:16
**respectful** 38:23
**respectfully** 24:23
**respond** 28:15
  37:21 54:17 56:4
  59:1 64:11,11
  67:2
**respondent's**
  28:12
**respondents**
  65:18
**responding** 62:8
**response** 8:5,6
  36:7 37:22 54:3
  55:6 66:17 67:1
**responsive** 18:1
  34:8
**result** 33:19 38:3
**retention** 3:18
  28:1 70:9
**review** 24:18
**reviewing** 23:8
**revisit** 18:17
**right** 16:20 20:23
  21:18 24:12,20
  27:12,17,23 31:14
  33:10 34:15 35:9
  39:11 40:12,20
  41:3 42:18 44:4,6
  44:16 45:4 47:17
  55:15 57:3,8
  59:14,14 61:23

62:4,6,11 65:14
66:4,12 68:7,23
**ringer** 13:18
**ripe** 52:2 61:18
64:15 65:1,4
**ripeness** 62:1,2
**rise** 53:17
**risk** 31:20,20 39:4
**road** 65:11 71:21
**roadmap** 34:10
**robert** 1:22 9:15
13:4 28:20 58:11
59:18
**robin** 14:8
**role** 30:19 45:14
46:5
**room** 1:13
**rory** 13:14
**rosen** 12:21
**rosenthal** 13:5
**route** 37:25
**rudnick** 6:19
**rule** 36:20 51:2
52:25 57:9,10
61:17 67:12
**ruled** 36:24 47:23
48:18 51:12 64:4
64:5
**ruling** 24:7 34:16
34:22,24,25 48:2
48:4 49:2 50:5
54:11 57:23
**rulings** 64:17 70:3
**rundlet** 11:21
**ryan** 12:17 14:14
14:15

**s**

**s** 8:8,8,16,19,24
9:5,9,14 10:1 16:1
50:13
**s.d.n.y.** 51:6
**sacklers** 66:22
67:1

**safe** 17:2
**safety** 33:18
**sake** 27:11
**sara** 14:9
**sarah** 12:6
**save** 26:22 64:22
**saved** 28:6
**saw** 25:6
**saying** 20:9 31:12
49:14 51:15,21
**says** 29:22 44:24
48:14,22 50:9
51:10
**scenes** 67:10
**schedule** 66:25
**schedules** 26:16
**schmelzer** 51:5
**scholer** 2:12
**scholz** 27:10 70:9
**school** 8:6
**schotz** 8:1 28:1
**schwartzberg**
14:23
**scott** 8:8 11:25
12:11
**screen** 45:5
**scripted** 17:16
**sdny** 68:17
**sdny's** 68:17
**seating** 34:14
**second** 27:9 42:22
46:12 48:11,18
49:2 50:6 51:3
57:6
**secondly** 36:24
47:20 49:10 50:20
60:6
**section** 44:5 48:13
50:3 51:7 52:18
53:7 54:22 63:17
**see** 22:6 25:21
27:2 34:22,23,23
47:25 51:24 53:18

57:18 58:22,24
60:3,10 61:9 68:8
**seeing** 37:7 52:2
**seek** 29:7 40:2
44:22,23 47:14
**seeking** 28:24
49:20
**seen** 54:5
**sees** 63:10
**seized** 55:11
**send** 27:6
**sense** 25:21 31:8
36:12 61:12
**sent** 16:20
**sentences** 17:15
**separate** 28:11
62:13
**separately** 58:6
**sept** 51:6
**september** 2:15
2:21 4:14 24:8,22
**serious** 49:2
**services** 2:6,19
3:8,16 4:4,15,21
5:3,16 6:6,14,21
7:21
**serving** 51:9,14
**sessions** 18:23
**set** 16:9 29:18
43:8,9
**settlement** 28:7
32:3,6 46:13,15
46:19 47:1,8
**settlements** 36:18
**seven** 17:14
**severance** 41:6
**severed** 29:12
39:25
**shape** 39:8
**share** 39:13 49:15
**shea** 13:24
**sheet** 29:20 43:10

**sheila** 11:23
**shmuel** 12:4
**shore** 12:2
**short** 34:13
**shuster** 13:19
**side** 28:12 32:2
38:9 40:20 42:23
55:20
**sides** 18:4
**sign** 17:13
**signed** 17:16
**significant** 32:12
**significantly** 40:1
**simply** 30:11 53:1
**single** 17:14 19:9
**situation** 38:2
60:24
**six** 22:17 65:20
**skadden** 4:20
**skannon** 23:18
**skorostensky**
13:20
**slate** 4:21
**slaugh** 14:15
**slightly** 23:21
**small** 23:19 64:8
**smooth** 28:15
**smoothed** 68:20
**social** 47:20
**solely** 49:13
**solutions** 16:10
20:17 21:4 22:16
22:20 58:19 68:14
71:20
**solutions.com**
22:21
**somewhat** 22:8
37:2 43:5
**sonya** 9:25 71:3,8
**soon** 33:22
**sorry** 16:19 30:24
31:14 35:22 36:3
37:15 50:21 53:13

54:25 55:2 56:11
56:13 59:18 63:19
**sort**  17:19 25:3,5
25:21 32:15 42:10
42:11 64:21 66:20
67:12
**sought**  27:3
**sound**  20:11
**sounds**  64:23
**south**  10:21
**southern**  1:2 34:5
34:11
**spaces**  28:12
**spalding**  2:18
**spaulding**  23:17
**speak**  16:5 20:9
28:23 31:21 39:9
39:20 41:19 42:13
58:17 61:22
**speaking**  37:10
58:22
**special**  2:5,14,20
3:17 4:22
**specific**  23:4
33:20 36:6 53:5
54:18 67:14
**specifically**  35:10
**specifics**  42:13
**speculation**  32:4
**speed**  24:17 25:22
**spencer**  10:10
**spend**  65:20
**spending**  55:16
**spent**  23:6,14
50:10 55:14
**spigel**  14:8
**springer**  13:21
**stages**  45:18
**start**  52:15,19,24
**state**  29:1 34:2,7
38:11 39:25 42:1
47:18,24 50:12,14
50:17 51:22 52:4

**state's**  17:23
**stated**  21:16,20
**statement**  2:18
21:15 43:11 45:25
46:8
**states**  1:1,12 8:22
8:25 11:8 18:3
29:18 38:10 46:3
66:11 67:3
**status**  17:5 33:11
**statute**  29:9 32:25
35:13 38:14 47:21
53:7 60:5,7
**statutory**  31:4
56:8
**stay**  8:11,15,19,23
9:2,9 19:10 28:8
29:13 32:19,22
33:8 36:14 37:14
38:24 41:1 43:15
44:10 48:12,20
50:7,12,24 51:8
51:14,21 55:23,25
56:2 57:10,12
60:22
**stayed**  41:1
**steam**  49:6
**steinberg**  12:9
**stepping**  36:23
**steven**  14:7
**stock**  11:16
**stop**  33:6 47:20
53:13
**stopped**  45:1
**strain**  18:11
**strauss**  6:4
**streamline**  28:10
**street**  1:13 10:21
11:9
**stroik**  13:6
**strong**  17:13
31:20 35:8

**strongly**  29:24
32:24 41:24 49:24
65:17,18
**stulman**  14:16
**subject**  36:19 62:5
63:13
**submission**  38:16
40:7
**submissions**  68:3
**submit**  8:7 26:25
55:9 65:10
**submitted**  26:19
33:17
**subscribes**  63:12
**subsequent**  23:1
**substantial**  30:20
31:24 40:9,11
41:9
**successful**  18:14
**successfully**  61:2
**sue**  48:12 50:14
60:15
**sufficient**  35:24
**suffolk**  29:3
**suggest**  29:24
65:15 66:24,24
**suggests**  41:25
**suite**  71:22
**summary**  34:16
34:17 62:15
**sundt**  13:22
**supplemental**
64:11
**supported**  29:8
**supports**  29:16
33:1
**supposed**  47:20
**supreme**  45:15
**sure**  17:18 20:2
20:22 21:4,8
26:18 31:15 35:14
36:7,22,25 57:25
64:20

**switch**  27:21
**switched**  27:16
**system**  20:17
52:16

**t**

**t**  71:1,1
**tailor**  68:4
**take**  22:10 26:23
27:21 44:23 45:20
45:21 64:15
**taken**  16:9,12
63:5
**talk**  28:7
**talked**  24:15
**talking**  19:20 23:9
23:10 26:8 31:24
36:15,16
**tancredi**  50:19
51:15
**tangent**  31:16
**taproot**  29:5
30:16 42:8
**task**  60:16
**tax**  4:1
**team**  27:16 68:16
**technically**  27:10
**teeth**  51:7
**telephonic**  16:3
16:11 22:19 30:25
**telephonically**
10:8,15 11:5,12
11:14 21:24
**tell**  58:23 68:5
**telling**  61:4
**temporarily**  18:5
**ten**  20:17 25:7
**terms**  49:15 60:25
61:1,12
**terrific**  27:9
**terrifically**  16:24
**texted**  21:6
**thank**  22:15,18
24:6 27:7 28:2,6

31:17 52:11 58:2
58:7 59:13 68:2,6
68:11,21,23,24
**thanks** 68:7
**theory** 46:5
**thereto** 9:4
**thing** 17:6 19:22
33:6 39:22 42:15
**things** 17:7 18:8
29:6 46:11 49:8
49:23 52:22 68:20
**think** 17:5,9,17
19:4,4,23 22:7
23:24 24:17,23
26:23 27:20 28:22
30:4,15,23 32:17
33:13,17,21 34:7
34:12 35:6,19,23
37:20,22 39:5,19
39:22 41:5,16,23
42:9,12 43:10,19
43:20,22 44:21
45:5,20 46:10,17
46:21,22,25 47:5
47:13 48:5 49:19
49:20,24 56:7,10
57:5,11 59:23,24
60:5 62:17,18,25
63:22 65:8 67:7
67:19,23
**thinking** 64:21
66:23
**thomas** 12:1 15:1
**thought** 54:13
**thoughtful** 41:18
43:4
**three** 26:13,16
58:5
**thrown** 59:4
**thursday** 67:24
**tie** 27:5
**time** 18:16 20:18
23:8,12,16 24:24

25:3 26:23 28:6
28:15 37:7 40:25
49:4,21 50:11
52:2,8 55:16 59:4
63:21 64:22 65:24
68:13,14
**times** 17:4 18:24
43:2
**timing** 49:16
**timothy** 14:25
**today** 58:20,20,21
**today's** 16:14 68:8
**toes** 36:23
**told** 47:21 54:3
**top** 21:4
**topics** 64:12
**totally** 57:13
64:14,19
**touch** 20:23
**tough** 24:23
**trace** 42:14
**transcribed** 9:25
**transcript** 71:4
**trial** 33:11,15,17
33:20,24 34:3,21
35:4,4 36:4,4
38:20 39:1,5,20
39:21 40:5,6,6
41:21 42:5 47:4
47:13,17 49:6,13
49:16,22 57:19
62:4,6,7,10 63:12
64:18 65:4 67:7
**tried** 29:23 34:25
**troop** 8:24 11:12
19:13,14,18 20:1
20:5,11,13,15
66:10,11,13,15,19
67:19 68:1,6,24
**true** 44:9 71:4
**truesdale** 14:20
**try** 21:5 64:22

**trying** 19:21 20:9
20:23 37:17 68:20
**tsier** 12:3
**turn** 19:7 28:9,17
63:3
**two** 19:25 25:25
26:8 27:22 47:22
48:8,17 51:16

---

**u**

**u.s.** 1:23 51:5
**ucc** 67:3
**ultimately** 18:1
38:19 39:14,19
43:3 57:9 59:25
64:16
**unable** 48:15
**uncertain** 37:2
**uncontested** 19:9
**underscore** 34:9
**understand** 23:7
33:14 36:2 57:23
58:14 61:7 64:3
65:25 66:1
**understanding**
35:1 38:17 53:23
54:1,5
**unfair** 51:15,21
51:23
**unfortunately**
52:17
**unique** 42:15
**united** 1:1,12
**unknown** 1:25
**unmuted** 20:2
22:22
**unnecessary** 48:4
65:9
**unprecedented**
17:4
**unpredictability**
46:23 47:1,9
**unsecured** 4:3
5:12,18,22 6:5,13

8:2 9:1
**unusual** 23:16
**unusually** 19:6
**upcoming** 47:4
**update** 17:11,20
18:20 19:6 68:15
**urge** 32:18
**use** 18:8 20:10
**useful** 17:9
**utterly** 19:9
**uzzi** 14:17

---

**v**

**v** 50:4 51:5 60:23
**value** 41:9
**van** 13:23
**variable** 60:22
**variety** 18:24
**various** 17:2 34:5
**vasser** 12:4
**venues** 17:2
**verdict** 28:25
29:15,20,25 30:5
30:8,12 31:10,19
32:6,11,20,25
33:2 35:7 37:13
38:2,25 41:22
42:12 43:10,24
44:11,12,22 46:24
47:7
**veritext** 71:20
**victor** 14:22
**video** 18:23 22:4
**view** 18:7 43:16
63:22 65:19
**views** 26:1
**violated** 57:17
**violates** 55:25
**violation** 30:21
56:6
**virtually** 25:9
**virus** 49:19
**vis** 30:22,22

| | | |
|---|---|---|
| **voice** 22:13 | **white** 1:14 | 51:2 53:2,3,7 |
| **w** | **wholly** 16:3 | 54:20,21,23 55:3 |
| **waiting** 25:11 | **wide** 18:24 | 55:8,10 56:2,9,15 |
| **waiver** 27:21 | **wilmer** 3:1,3 | 56:24,24 60:4 |
| **want** 19:2 20:19 | **wish** 28:23 | 61:25 64:17 65:4 |
| 30:7 31:15,18 | **wonder** 64:20 | **york's** 48:10 |
| 35:14 36:6,22,25 | **word** 31:12 66:6 | **young** 4:8 |
| 40:14 52:15 56:4 | **work** 17:24 18:22 | **à** |
| 58:13,15 62:21 | 23:13 27:16 67:4 | **à** 30:22 |
| 63:22 64:3 65:10 | **working** 21:2 22:8 | |
| 65:13 67:11,13 | 33:21 67:10,22 | |
| **wanted** 17:10 | **works** 67:6 | |
| 38:23 59:22 66:20 | **world** 64:18 | |
| 67:3 | **worries** 16:23 | |
| **wanting** 47:15 | **worthwhile** 57:11 | |
| **wants** 27:16 30:3 | **wrap** 27:5 | |
| 65:8,8 | **writing** 36:1 | |
| **wardwell** 3:8 10:3 | 37:21 | |
| **warranted** 23:1 | **wrong** 20:6 64:14 | |
| **way** 24:21 39:8,17 | **wrongly** 38:6 | |
| 44:22 45:7 49:13 | **x** | |
| 55:6,19 56:8 | **x** 1:4,10 70:1 | |
| 62:21 63:14 | **y** | |
| **ways** 47:22 | **yard** 42:22 48:19 | |
| **we've** 26:24 27:20 | 50:6 51:4 | |
| 29:17 32:12,23 | **yeah** 20:4,11 21:6 | |
| 35:7 38:22 44:2 | 21:20 22:2 26:22 | |
| 44:11 49:11,18 | 35:19 67:21 | |
| 58:20 67:19 68:13 | **year** 25:1,11 | |
| **website** 19:19 | **years** 31:5 42:4 | |
| 35:23 | **yesterday** 34:11 | |
| **wednesday** 66:25 | **york** 1:2 8:14 9:3 | |
| 67:8,24 | 10:6,13 11:1,10 | |
| **week** 18:24 33:14 | 29:1,2,9,11,16,18 | |
| 33:20 53:8,10 | 30:4 33:1,15 34:2 | |
| 67:25 68:5,9 | 34:7,24 35:9 | |
| **weeks** 17:12 | 36:16,23,23 37:23 | |
| **weigh** 39:8 | 38:11,14 39:3,10 | |
| **welch** 14:24 | 39:17 41:20 42:1 | |
| **welcome** 22:17,19 | 43:7,9,11,12 | |
| **went** 17:24 45:20 | 45:15,21 46:25 | |
| **west** 11:9 | 47:13,18,24 49:3 | |
| | 49:13,16 50:12,17 | |