U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

October 19, 2020

**By ECF**

The Honorable Robert D. Drain
United States Bankruptcy Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4140

      Re:    *In re Purdue Pharma L.P., et al.*, No. 19-23649 (RDD)

Dear Judge Drain:

      The United States of America (the "Government") respectfully submits this Statement of Interest in accordance with 28 U.S.C. § 517 to object to the Official Committee of Unsecured Creditors' ("UCCs'") motion to compel the production of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Dkt. 1752 ¶ 18. As reflected in the claims filed by the Department of Justice, the Government engaged in criminal and civil investigations relating to Purdue. *See* Claims 137798, 137848. We have serious concerns that the compelled production of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ may deter defendants in future criminal and civil cases from engaging in full and frank discussions to resolve potential charges or claims. As long as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

      As an initial matter, the UCC has obtained a substantial volume of factual, non-privileged documents[1] from Purdue and the Sacklers ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] As Debtors explain in their brief, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



   *See, e.g.*, Dkt. 1808 ¶¶ 2, 6 (Debtors stating that "over 90 million pages of materials" have been produced to the UCC, including "[o]ver 13.5 million pages (comprising over 2.5 million documents) that were previously produced to [DOJ] in connection with its ongoing investigation of the Debtors"); Dkt. 1806 ¶ 4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Dkt. 1810 at 33 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The Government objects to the compelled production ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because such production may have significant adverse repercussions in the Government's ability to have free and frank discussions with subjects and targets of criminal and civil investigations. It is common that the subjects and targets of criminal and civil prosecutions may also have exposure to the claims of private parties. Examples where the Government and private litigants both pursue claims are legion, including the examples of Bernard Madoff, Enron, Tyco, Cendant and WorldCom. If future subjects and targets of criminal and civil investigations by the Government expect that their ▮▮▮▮▮▮▮▮▮▮▮▮▮ might be subjected to compelled discovery in civil litigation with private plaintiffs, they may be deterred from engaging in discussions with the Government that may lead to guilty pleas and/or civil settlements. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

While the case law is mixed in this area, *see, e.g.*, *Gen. Elec. Co. v. DR Sys., Inc.*, No. 06-CV-5581(LDW)(ARL), 2007 WL 1791677, at *1 (E.D.N.Y. June 20, 2007) ("District courts within this Circuit have disagreed over the applicable standard concerning the discovery of settlement documents") (collecting cases), the Government respectfully submits that the better reasoned of these cases recognize the sensitivity of settlement communications and require the party seeking such documents to make a compelling showing of relevance before they are produced. *See, e.g.*, *Matsushita Electronics Corp. v. Loral Corp.*, No. 92 Civ. 5461 (SAS), 1995 WL 527640, at *4 (S.D.N.Y. Sep. 7, 1995) (requiring the party seeking discovery to "make a fairly compelling showing that it needs the information"). As the Court explained in *Matsushita*:

> Settlement discussions are typically undertaken with the understanding that they will remain confidential, particularly when their disclosure may impact on ongoing or prospective business arrangements. Accordingly, there is no reason to question defendants' representation that the discussions about which [plaintiff] seeks to learn were conducted on a confidential basis. It is equally reasonable to infer that disclosure of the substance of those talks would be likely to put a serious crimp in future discussions of

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

this sort, since candor would likely give way to extreme caution in making disclosures that are often vital to the success of such negotiations.

*Id.* at *3; *see also SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1995 WL 552719, at *1 (S.D.N.Y. Sept. 18, 1995) (denying request for settlement records absent "compelling showing of need for the information").

If the Court concludes that a "compelling showing" is not required, the UCC should at least be required to making a particularized showing of relevance, which it has not done here. *See Morse/Diesel Inc. v. Trinity Industries, Inc.*, 142 F.R.D. 80, 83-84 (S.D.N.Y. 1992) (requiring "particularized showing" of relevance); *Riddell Sports, Inc. v. Brooks*, No. 92 CIV. 7851 (PKL), 1995 WL 20260, at *1 (S.D.N.Y. Jan. 19, 1995) ("absent a 'particularized showing' of their relation to admissible evidence, documents concerning settlement are presumed irrelevant and need not be produced"); *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) ("Given the strong public policy of favoring settlements and the congressional intent to further that policy by insulating the bargaining table from unnecessary intrusions, we think the better rule is to require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement."); *Weissman v. Fruchtman*, No. 83 Civ. 8958 (PKL), 1986 WL 15669, at *20 (S.D.N.Y. Oct. 31, 1996) (Buchwald, M.J.) (citing *Botaro* as "instructive" in its finding that "'the better rule is to require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement'").[2]

While Federal Rule of Evidence 408 pertains to admissibility at trial and not to the question of discoverability, it nevertheless reflects the policy behind keeping such materials confidential that equally applies here. *See Matsushita*, 1995 WL 527640, at *4 ("The policy of the federal rules is to encourage 'the compromise and settlement of disputes.'") (citing 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 408[02] at 408–19 (1994)). The Advisory Committee Notes to Rule 408 observe that an "impressive ground" for the exclusion of evidence of an offer to compromise is the "promotion of the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408, Advisory Committee Note. *See Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, No. 98 Civ. 6738 (RMB)(MHD), 2000 WL 97680, at *4 n.5 (S.D.N.Y. Jan. 28, 2000) (recognizing that Rule 408 "does not create a settlement privilege," while adding that "the policy underlying that evidentiary rule includes a recognition that settlement is generally desirable and to be encouraged . . . The disinclination of the courts to require disclosure of the status of continuing negotiations, absent a substantial showing of need, is consistent with that policy."); *cf. United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (affirming denial of motion to intervene in an effort to vacate a protective order that limited disclosure of draft settlement documents, and noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial"); *Affiliated Mfrs., Inc. v. Aluminum Co. of Amer.*, 56 F.3d 521, 526 (3d Cir. 1995) ("The policy behind Rule 408 is to encourage freedom of discussion with

---

[2] For the avoidance of doubt, the Government's arguments are not based on the assertion of any privilege, including work product privilege, law enforcement or investigatory privilege. Accordingly, the Second Circuit's decision *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993), Dkt. 1752 ¶ 21, is inapplicable, as the Court's decision addressed waiver of the work product doctrine.

regard to compromise."). This same policy that animates Rule 408 is directly implicated here, since ███████████████████████████████ is likely to discourage candor in communications by subjects and targets of criminal and civil investigations with the Government.

The case that best distills the Government's concerns is *United States ex rel. Underwood v. Genentech, Inc.*, No. 03-3983, 2010 WL 8917474, at *2 (E.D. Pa. Oct. 7, 2010),a *qui tam* lawsuit brought by a relator pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq*. The United States engaged in settlement negotiations with Genentech, Inc. ("Genentech"), but ultimately declined to settle or intervene in the lawsuit. Following the United States' declination, the relator chose to continue the lawsuit, and issued a discovery request to Genentech seeking "documents 'created in connection with any settlement discussions between the Government and Genentech.'" *Id.* at *1. The Court granted Genentech's motion for a protective order "[b]ecause important policy reasons support protecting settlement communications." *Id.* The Court explained:

> Although I will not create a privilege protecting settlement communications, I recognize the very strong policy reasons for maintaining the confidentiality of settlement negotiations. If parties fear that the substance of their settlement negotiations might be disclosed, they will not negotiate earnestly or candidly. This, in turn, will make settlements far less likely. The Government has made just this point, arguing that candid communication between investigated parties and the Department of Justice in *qui tam* actions is essential to the efficient resolution of these cases. [Citing DOJ's submission]. If investigated parties withheld information from the DOJ during settlement negotiations for fear of later disclosure, "settlement negotiations would be truncated and active litigation would ensue in matters that may have been resolved had there been a more fulsome exchange of positions." [Quoting DOJ's submission].

*Id.* at *2 (citations omitted).

The Court in *Underwood* concluded that the relator "offered no convincing reason for disclosure." *Id.* Like the UCC in this case, the relator had "already received some seven million documents produced by Genentech to the DOJ in the course of the DOJ's investigations of the Company." *Id.* The Court found that the Relator failed to demonstrate "what information he might obtain from the settlement materials that is not available in the documents already provided." *Id.* The concerns articulated by the Court in *Underwood* have even more force here, where the Government's claims are not just civil but also criminal in nature, and where more than 13.5 million documents produced to DOJ have been produced to the UCC.

Other courts outside of this District have likewise recognized the sensitivity regarding the compelled production of settlement documents and adopted standards limiting the disclosure of these documents. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) (establishing privilege in the Sixth Circuit over settlement communications, and explaining that the "ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications."); *Jo Ann Howard & Assoc., P.C. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (responding to motion to compel the production of settlement materials by engaging in a "careful review of the facts and the purpose of the discovery

request," and denying motion to compel as overbroad where party sought discovery of not just settlement agreement but also documents revealing the parties' settlement discussions); *Lamoureux v. Anazaohealth Corp.*, No. 3:03 Civ. 1382 (WIG), 2009 WL 813977, at *2 (D. Conn. Mar. 26, 2009) (finding that arguments for disclosure of settlement communications fell short of "establishing substantial need and making the particularized showing necessary to override the strong policy against production of these materials because of the chilling effect that their production could have on the ongoing settlement negotiations."); *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 424 (D.N.J. 2009) (finding that a request for settlement communications between state environmental enforcement agency and target required a "heightened, more particularized showing of relevance" that was not met, and observing that "the disclosure of such negotiations in cases such as this that are brought under the environmental recovery statutes—CERLCA and the Spill Act—could tend to have a chilling effect on negotiations between government entities, be they federal or state, and potentially responsible parties").

The UCC has failed to compellingly or particularly demonstrate the relevance of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, given that the underlying factual, non-privileged documents produced to the DOJ have already been produced to the UCC. The UCC argues that ▮▮▮▮▮▮▮▮▮▮ are relevant because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 1752 ¶ 19. But this argument fails to account for the UCC's access to all the underlying factual, non-privileged documents produced to the UCC, including "over 90 million pages of materials" from Debtors and "[o]ver 13.5 million pages (comprising over 2.5 million documents)" that Debtors disclosed to DOJ. Dkt. 1808 ¶¶ 2, 6. As in *Underwood*, the UCC has failed to identify "what information [the UCC] might obtain from the settlement materials that is not available in the documents already provided." *Underwood*, 2010 WL 8917474, at *2. Likewise, the UCC's claim that there would not be "any significant burden associated with the productions the UCC seeks," Dkt. 1752 ¶ 20, ignores the substantial costs to the public interest that would result from impairing the Government's ability to engage in free and frank discussions with subjects and targets of criminal and civil investigations.

For these reasons, the Government respectfully requests that the Court deny the UCC's motion to compel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

We thank the Court for its consideration of this matter.

                Respectfully submitted,

                AUDREY STRAUSS
                Acting United States Attorney for the
                Southern District of New York

By:    /s/ Lawrence H. Fogelman
        LAWRENCE H. FOGELMAN
        PETER ARONOFF
        DANIELLE LEVINE
        Assistant United States Attorneys
        86 Chambers Street, Third Floor
        New York, New York 10007
        Telephone: (212) 637-2800
        Facsimile: (212) 637-2686
        Email: Lawrence.Fogelman@usdoj.gov
                Danielle.Levine@usdoj.gov
                Peter.Aronoff@usdoj.gov

Cc:  All parties (By ECF)