**Hearing Date and Time: November 17, 2020 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Date and Time: November 10, 2020 at 4:00 p.m. (prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.***,** | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF HEARING ON MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 105**
**AND FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING SETTLEMENTS**
**BETWEEN THE DEBTORS AND THE UNITED STATES**

**PLEASE TAKE NOTICE** that on October 21, 2020, the above-captioned debtors and

debtors in possession in these proceedings (collectively, the "**Debtors**") filed the *Motion of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United States* (the "**Motion**").  A hearing on the Motion will be held on **November 17, 2020 at 10:00 a.m. (prevailing Eastern Time)** (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.  The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

PLEASE TAKE FURTHER NOTICE that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted telephonically.[2]  Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[3] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed

---

[2] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operations-under-exigent-circumstances-created-covid-19.

[3] The Bankruptcy Court's procedures for telephonic appearances are available at:
http://www.nysb.uscourts.gov/telephonic-appearances-white-plains.

with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including

attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which

can be found at http://www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-

ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to

Chambers), in accordance with the customary practices of the Bankruptcy Court and General

Order M-399, to the extent applicable, and shall be served in accordance with the *Second*

*Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*

entered on November 18, 2019 [Docket No. 498], so as to be filed and received no later than

**November 10, 2020 at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**").

   **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted upon default; *provided* that

objecting parties shall attend the Hearing telephonically so long as General Order M-543 is in

effect or unless otherwise ordered by the Bankruptcy Court.

   **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served

with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the

Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion,

which order may be entered without further notice or opportunity to be heard.

   **PLEASE TAKE FURTHER NOTICE** that copies of the Motion may

be obtained free of charge by visiting the website of Prime Clerk LLC at

https://restructuring.primeclerk.com/purduepharma.    You may also obtain copies of any

pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

Dated:    October 21, 2020
      New York, New York

DAVIS POLK & WARDWELL LLP

By:  */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 105 AND FED. R.
BANKR. P. 9019 AUTHORIZING AND APPROVING SETTLEMENTS
BETWEEN THE DEBTORS AND THE UNITED STATES**

Purdue Pharma L.P. ("**PPLP**") and its affiliated debtors in the above-captioned chapter

11 cases (the "**Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), file

this motion (the "**Motion**") seeking entry of an order, substantially in the form attached hereto as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Exhibit A** (the "**Order**"), approving (1) a proposed plea agreement (the "**Plea Agreement**") substantially in the form attached hereto as **Exhibit B** by and among (i) Debtor PPLP and (ii) the United States, acting through the United States Attorney's Office for the District of New Jersey (the "**NJ USAO**"), the United States Attorney's Office for the District of Vermont ("**VT USAO**"), and the United States Department of Justice, Civil Division, Consumer Protection Branch ("**DOJ Consumer Protection**") and (2) a proposed civil settlement agreement (the "**Civil Settlement Agreement**" and, together with the Plea Agreement, and including the settlements contemplated thereby and the other terms and conditions thereof, the "**DOJ Resolution**")[2] substantially in the form attached hereto as **Exhibit C** by and among (i) Debtor PPLP and (ii) the United States, acting through the United States Department of Justice, Civil Division, Commercial Litigation Branch ("**DOJ Commercial Litigation**"), NJ USAO, and VT USAO and on behalf of the Office of Inspector General of the United States Department of Health and Human Services ("**HHS-OIG**"), the Defense Health Agency, acting on behalf of the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("**TRICARE**"), and the Office of Personnel Management.  In further support of this Motion, the Debtors respectfully represent as follows:

<u>**Preliminary Statement**</u>

1.      The United States is the Debtors' most significant priority creditor, asserting billions of dollars of forfeiture and other non-dischargeable claims that could entitle it to substantially all of the Debtors' distributable value if upheld.  Separate and apart from its role as a creditor, various actions that could be taken by the United States in the absence of a consensual

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plea Agreement or the Civil Settlement Agreement, as applicable.

resolution could leave the Debtors with no viable alternative to liquidation.  Resolution of the

United States' claims is thus an essential element of any path forward in these cases.  The

proposed DOJ Resolution fully resolves the United States' civil and criminal investigations (the

"**DOJ Investigations**") into the Debtors' past practices related to the production, sale, marketing

and distribution of opioid products and enables a value-maximizing restructuring that might not

otherwise be possible.

2.      As discussed below, the United States has asserted that the Debtors could be

required to forfeit at least $3.5 billion to the United States, be subject to a non-dischargeable

criminal fine of at least $6.2 billion, and be liable for billions of dollars of additional criminal and

civil claims.  A $3.5 billion criminal forfeiture judgment alone could leave the Debtors with no

viable alternative to liquidation, and satisfaction of such a judgment would leave little to no

recovery for other creditors.

3.      Instead, among other things, the United States and the Debtors have agreed as

follows:[3]

- PPLP agrees to the entry of a criminal forfeiture judgment in the amount
  of $2 billion (the "**Forfeiture Judgment**"), which Forfeiture Judgment
  shall be deemed to have the status of an allowed superpriority
  administrative expense claim against PPLP and shall be satisfied by (i) an
  upfront payment of $225 million (the "**Forfeiture Payment**") by PPLP
  within three business days following the entry of a judgment of
  conviction pursuant to the Plea Agreement and (ii) application of a credit
  (the "**Forfeiture Judgment Credit**") by the United States of up to
  $1.775 billion for value distributed or otherwise conferred by PPLP under
  the Debtors' chapter 11 plan of reorganization (the "**Plan**") in respect of
  claims asserted by state, tribal, or local government entities.

---

[3] To the extent that there is any conflict between this Motion and the Plea Agreement or the Civil Settlement
Agreement, the Plea Agreement or the Civil Settlement Agreement, as applicable, shall govern in all respects.

- The sentence imposed shall order a criminal fine in the amount of $3.544 billion. The United States shall have an allowed, unsubordinated, undisputed, non-contingent, liquidated unsecured claim against PPLP in such amount (the "**Criminal Fine Claim**").

- The United States shall have an allowed, unsubordinated, undisputed, non-contingent, liquidated unsecured claim against PPLP in the amount of $2.8 billion arising from the Department of Justice's civil investigation (the "**Civil Claim**").

- The United States and PPLP stipulate and agree to the statements set forth in Schedule A to the Plea Agreement (the "**Agreed Statement of Facts**"), and the United States will accept guilty pleas from Purdue to a three-count Information.

- Once the order (the "**Confirmation Order**") confirming the Plan has become final and non-appealable, and the Plan has become effective, the Debtors will create and host a public document repository containing non-privileged documents in their possession, custody, or control that they have produced to the United States and that the United States identifies as relating to the charges asserted in the Information and the alleged civil violations, which will be publicly available at an easily identifiable and accessible website.

- Before the Plea Agreement is accepted by the District Court at the sentencing hearing, PPLP may withdraw its pleas of guilty (1) if the Bankruptcy Court rejects, or otherwise declines to confirm, a Plan that provides for the emergence of a public benefit company (or other entity with a similar mission) or (2) if HHS-OIG exercises, or states an intent to exercise, any available authority to exclude PPLP's successor public benefit company (or other entity with a similar mission) from participation in federal healthcare programs.

4. These agreements are the product of years of investigation and extensive arm's-length negotiations. During this time, the Debtors have produced more than nine million documents totaling over 75 million pages, made several detailed presentations and submissions to the United States in cooperation with the investigations, and engaged in lengthy plea and settlement negotiations. Throughout this exhaustive process, the Debtors and the United States have been focused on the goal of reaching an appropriate resolution that would maximize the

4

value of the global settlement. And in fact, the proposed DOJ Resolution will build a strong foundation for a restructuring that will allow the Debtors to deliver value to their creditors and to communities in need across the country.

5. The alternative to the DOJ Resolution is an immensely costly and protracted civil litigation and criminal prosecution that would carry with it the significant risk that the Debtors would be left unable to make distributions to any creditors other than the United States. Failure to reach a consensual resolution with the United States would also likely have immediate and deleterious effects on the Debtors' businesses and itself jeopardize the prospects for a successful reorganization. The Debtors therefore believe that litigating against the United States would entail an unacceptable level of risk and would not serve the best interests of the Debtors' estates or their creditors.

6. In furtherance of a global resolution, the United States has agreed to provide offset credit for value conferred upon the non-federal government creditors up to $1.775 billion out of a $2 billion criminal forfeiture claim provided that the Debtors: (i) confirm a plan of reorganization that provides that all of the Debtors' assets are transferred to a public benefit company (or entity with a similar mission); and (ii) distribute at least $1.775 billion of value to state, tribal, and local governments in satisfaction of their claims, with such funds to be dedicated to abatement programs. It is expected that a public benefit company (or entity with a similar mission) would maintain the continuity of supply of a range of FDA-approved medications and work towards providing resources and medications that can be used to address and abate the opioid crisis. If less than $1.775 billion in value is distributed or otherwise conferred in settlement of such claims under the Plan of Reorganization, the amount of the Forfeiture Judgment Credit

will be equal to such lesser amount of value.  If the $225 million payment and the Forfeiture

Judgment Credit combine to total $2 billion, they will be deemed to permanently and finally

satisfy the Forfeiture Judgment.

7.      This Court has from the very outset urged all parties to find a way to ensure that

the Debtors' assets are deployed specifically to address the opioid crisis.  *See, e.g.*, Hr'g Tr. 126:7-

127:2 (Oct. 11, 2019) ("[N]ow that we've mentioned tobacco.  If you get a judgment, I'm sure

the attorney generals here would say, it's going to be devoted to this public health crisis, that's

where the money's going to go.  Very good attorneys general did that with the tobacco litigation

. . . Within years the money was used for general purposes and even for such things as $700,000

for refurbishing a golf course.").

8.      At the September 30, 2020 hearing, the Court discussed the Mediators' Report,

which outlined significant developments in furtherance of that vision—an agreement among non-

federal governmental claimants and private creditor groups, reached through a months-long

mediation process, on a framework for the allocation and distribution of estate value heavily

focused on abatement.  This Court observed at that hearing that "[t]he parties have an incredible

opportunity at this moment to move forward quickly to end these cases and get the money out to

abate the opioid crisis.  They should do it."  Hr'g Tr. 81:14-19 (Sept. 30, 2020).

9.      With today's proposed DOJ Resolution, the Debtors achieve certainty in the face

of a potential DOJ recovery that it could not satisfy; the United States obtains the Debtors' public

admission of responsibility for their past misconduct as well as a substantial monetary recovery;

the non-federal government claimants and the private claimants will receive the significant

majority of the available value; and the public health will be advanced.

6

## **Relief Requested**

10.    By this Motion, and pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to enter into the Plea Agreement substantially in the form attached hereto as **Exhibit B**, and the Civil Settlement Agreement substantially in the form attached hereto as **Exhibit C**, and to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effectuate the terms and requirements of the DOJ Resolution.

## **Jurisdiction and Venue**

11.    The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Bankruptcy Rule 7008, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

12.    Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **General Background**

13.    On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary Case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to

7

sections 1107(a) and 1108 of the Bankruptcy Code.  On September 27, 2019, the United States

Trustee for the Southern District of New York appointed the official committee of unsecured

creditors.  No trustee or examiner has been appointed in these Cases.

14.    These Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b)

and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the

Court in each of the Cases.

15.    Additional information about the Debtors' businesses and the events leading up to

the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019

[ECF No. 17].

### The DOJ Investigations

16.    The Debtors have been subject to investigation by multiple components of the

Department of Justice (the "**DOJ**") since June 2016. Specifically, between the summer of 2016

and the fall of 2019, several U.S. Attorney's Offices and components of the DOJ served

subpoenas to PPLP seeking various documents related to OxyContin, Debtors' monitoring

programs, payments to professionals, marketing practices, and other matters.

17.    In response to the various DOJ requests, PPLP produced to DOJ more than 9

million documents (totaling over 75 million pages of documents), including more than 2.5 million

documents (totaling more than 17 million pages of documents) produced in direct response to

DOJ's requests and millions of additional documents previously produced in civil litigation or

state government investigations.  PPLP also provided numerous presentations and submissions to

DOJ in cooperation with its investigations and in the course of plea and settlement negotiations.

**The DOJ Resolution**

18.    The proposed DOJ Resolution, among other things and as described in greater detail below, (a) resolves the DOJ Investigations; (b) provides for the Forfeiture Judgment in the amount of $2 billion, which shall be deemed to have the status of an allowed superpriority administrative expense claim against PPLP and which shall be satisfied by (i) an upfront payment of the $225 million Forfeiture Payment by PPLP within three business days following the entry of a judgment of conviction pursuant to the Plea Agreement, and (ii) application of the up to $1.775 billion Forfeiture Judgment Credit for value distributed or otherwise conferred by PPLP in respect of claims asserted by state, tribal, or local government entities under the Plan; (c) provides that the United States shall have (i) an allowed, unsubordinated, undisputed, non-contingent, liquidated unsecured Civil Claim in the amount of $2.8 billion arising from the DOJ's civil investigation, and (ii) an allowed, unsubordinated, undisputed, non-contingent, liquidated unsecured Criminal Fine Claim in the amount of $3.544 billion on account of criminal fine liability; (d) confirms that the United States will not initiate any further criminal charges or forfeiture action against the Debtors with respect to the production, sale, marketing or distribution of opioid products, or the reporting of (or obligation to report) information regarding such products and activities to federal government agencies, between May 2007 and the present; and (e) as set forth in the Civil Settlement Agreement, releases the Debtors from specified civil or administrative monetary claims the United States has for the Covered Conduct (as defined below).

19.    As set forth in the Plea Agreement, PPLP will agree to plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) to a criminal Information in the District of New Jersey (the "**District Court**") and agrees to stipulate to a statement of facts in connection therewith.  If PPLP enters

guilty pleas and a judgment of conviction is entered by the District Court that is consistent with the terms of the agreed disposition included in the Plea Agreement, and if PPLP otherwise fully complies with all of the terms of the Plea Agreement, the United States will not initiate any further criminal charges against PPLP, Purdue Pharma Inc., or their present and former companies, affiliates (including certain independent associated companies), divisions, or subsidiaries, or their predecessors, successors, or assigns in connection with the conduct encompassed by the DOJ Resolution or known to NJ USAO, VT USAO, the United States Attorney's Office for the Southern District of New York ("**SDNY USAO**"), or DOJ Consumer Protection as of the date of the Plea Agreement.

20.     PPLP has agreed to plead guilty to three counts as detailed in the Plea Agreement. Count One will charge PPLP with a dual-object conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and to violate the Food, Drug, and Cosmetic Act in violation of 21 U.S.C. §331, 333(a)(1) and 353, all in violation of 18 U.S.C. §371. The parties agree that the time period of the conspiracy described in Count One will be May 2007 through March 2017.

21.     Count Two will charge PPLP with conspiracy to violate the Federal Anti-Kickback Statute related to Purdue's payments to healthcare providers, contrary to 42 U.S.C. § 1320a-7b(b), in violation of 18 U.S.C. § 371. The parties agree that the time period of the conspiracy described in Count Two will be June 2009 through March 2017.

22.     Count Three will charge PPLP with conspiracy to violate the Federal Anti-Kickback Statute related to Purdue's payments to Practice Fusion, a cloud-based EHR platform, contrary to 42 U.S.C. § 1320a-7b(b), in violation of 18 U.S.C. § 371. The parties agree that the time period of the conspiracy described in Count Three will be the fall of 2015 through June 2017.

23.     The United States also contends that it has certain civil claims against the Debtors for having knowingly caused false and/or fraudulent claims for OxyContin, Butrans, and Hysingla to be submitted for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1; the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5; TRICARE; and the Federal Employees Health Benefits Program, 5 U.S.C. §§ 8901-8914; and caused purchases of OxyContin by the Indian Health Service on behalf of its federally operated programs, *i.e.*, programs not operated by a tribal health program or an Urban Indian organization, as those terms are defined in the Indian Health Care Improvement Act, 25 U.S.C. § 1603(25), (29) (as set forth in Addendum A to the Civil Settlement Agreement, the "**Covered Conduct**").

24.     The Debtors deny that they engaged in the Covered Conduct, with the exception of such admissions as are made in connection with the guilty plea contemplated by the Plea Agreement and as set forth in the Agreed Statement of Facts.  In order to avoid the delay, uncertainty, and expense of protracted litigation of such claims, the parties have agreed that the United States shall have an allowed, unsubordinated, undisputed, non-contingent, liquidated Civil Claim in the amount of $2.8 billion.  Subject to the exceptions set forth in Paragraph III.6 of the Civil Settlement Agreement, the Civil Settlement Agreement provides that the United States will release the Debtors from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq.; the Controlled Substances Act, 21 U.S.C. § 801 et seq.; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and the common law theories of payment by mistake, unjust enrichment, fraud, nuisance, or negligent entrustment.

25.    The DOJ Resolution does not include criminal or civil releases for any of the Debtors' current or former shareholders or any other individuals.

26.    The Debtors agree that, in the event of a default by the Debtors of any material obligation under the Civil Settlement Agreement or rescission of the Civil Settlement Agreement, the automatic stay under 11 U.S.C. § 362(a) shall not apply to the United States' claims, actions or proceedings in connection with the Covered Conduct.  The Debtors further agree that they will not seek to enjoin the United States' claim, actions, or proceedings pursuant to 11 U.S.C. § 105 or any other bankruptcy authority.

27.    In addition, once the Confirmation Order confirming the Plan has become final and non-appealable, and the Plan has become effective, the Debtors will create and host a public document repository containing the non-privileged documents in their possession, custody, or control that they have produced to the Department of Justice and that the Department of Justice identifies as relating to the charges asserted in the Information and the alleged civil violations. The repository will be publicly available at an easily identifiable and accessible website.  The Debtors (and their successors) will maintain the document repository for no less than five (5) years.

28.    The Plea Agreement also provides that the parties agree to request that the District Court's acceptance of the Plea Agreement, pursuant to Fed. R. Crim. P. 11(c)(3)(A), be deferred until the date of the sentencing hearing and to request that the sentencing hearing take place no earlier than 75 days following the date of confirmation of the Plan, but in any event seven days prior to such Plan becoming effective.  Before the Plea Agreement is accepted by the District Court at the sentencing hearing, PPLP may withdraw its guilty pleas (1) if the Bankruptcy Court

rejects, or otherwise declines to confirm, a Plan that provides for the emergence of a public benefit company (or other entity with a similar mission); or (2) if HHS-OIG exercises, or states an intent to exercise, any available authority to exclude PPLP's successor public benefit company (or other entity with a similar mission) from participation in federal healthcare programs.

## **Basis for Relief Requested**

29.     The proposed DOJ Resolution between the Debtors and the DOJ resolves the DOJ Investigations and is, therefore, at least with regard to the non-criminal aspects of the DOJ Resolution, subject to approval by the Court under Bankruptcy Rule 9019(a).  *See In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. D. Del. Oct. 7, 2019) (approving stipulation and agreement between the debtors and the United States); *In re Leiner Health Products Inc*., Case No. 08-10446 (KJC) (Bankr. D. Del. Jun. 11, 2008 (approving a settlement agreement between the debtors and the DOJ); *Adelphia Communications Corp*., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. May 26, 2005) (approving, among other things, agreements between the debtors and the Securities and Exchange Commission and the DOJ); *In re Aerovias Nacionales de Columbia S.A. Avianca*, Case No. 03-11678 (ALG) (Bankr. S.D.N.Y. Nov. 8, 2004) (approving a settlement between the debtors and the U.S. Attorney's Office for the Southern District of New York); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. May 4, 2004) (approving a settlement agreement between the debtors and the DOJ).

30.     Bankruptcy Rule 9019 provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Settlements are "a normal part of the process of reorganization," *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v.*

*Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)), and are generally favored in bankruptcy proceedings. *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) Hr'g Tr. 34:2-4 (May 8, 2020) ("As a general matter, settlements and compromises are favored in bankruptcy . . . ."); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), 2019 Bankr. LEXIS 2271, at *20-21 (July 19, 2019) ("Courts favor resolving disputes through settlements."); *In re Motors Liquidation Co.*, 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016) ("Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996))); *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 69 (Bankr. E.D.N.Y. 2009) ("[Settlements] minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate.").

31.    In order to merit the approval of the bankruptcy court, a settlement must be "both fair and equitable and in the best interests of the estate." *Fixed Income Shares: Series M v. Citibank N.A.*, 314 F. Supp. 3d 552, 560 (S.D.N.Y. 2018) ("Indeed, to approve a settlement, the Bankruptcy Court was required to find that it was 'fair and equitable.'" (quoting *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (Bankr. S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994))); *In re: AMR Corp.*, 502 B.R. 23, 42 (Bankr. S.D.N.Y. 2013) ("In approving a settlement, a court must 'review the reasonableness of the proposed settlement [and] ... make an informed judgment as to whether the settlement is fair and equitable and in the best interests of the estate.'" (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006))).   In reviewing a proposed settlement, however, a court should not conduct a "mini-trial" on the merits of the underlying litigation, but rather must merely canvass the issues and see whether the settlement falls within a

range of reasonableness. *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) Hr'g Tr. 34:23-35:4 (May 8, 2020) ("[I]n considering a motion for approval of a settlement, the court does not decide the numerous issues of law in fact raised by the issues that are being settled but must only canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness in deciding that it is fair, equitable, and in the best interest of the estate."); *In re Frost Bros*, No. 91 CIV. 5244, 1992 U.S. Dist. LEXIS 18301, at *16 (S.D.N.Y. Nov. 30, 1992) (citations omitted).  This standard "reflect[s] the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims," *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993).  It is well-established that a settlement proponent need not convince the court that the settlement is the best possible compromise, but only that the settlement does not "fall below the lowest point in the range of reasonableness." *E.g., In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991).[4]

32.     Courts in the Second Circuit have described the following seven interrelated factors that a bankruptcy court should consider in exercising its discretion under Rule 9019: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (3) the paramount interest of the creditors; (4) whether other parties

---

[4] Further, under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Authorizing the Debtors to proceed with the DOJ Resolution falls squarely within the spirit of Bankruptcy Rule 9019, as well as the Bankruptcy Code's preference for compromise.  Thus, to the extent necessary, section 105(a) of the Bankruptcy Code relief is appropriate in this instance and would best harmonize the settlement process contemplated by the Bankruptcy Code.

in interest affirmatively support the proposed settlement; (5) the nature and breadth of releases to be obtained by officers and directors; (6) whether the competency and experience of counsel support the settlement; and (7) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

33.    The Court should approve the proposed DOJ Resolution because it represents a fair and equitable compromise, falls well within the range of reasonableness, and satisfies each of the factors identified in *Iridium*, as described further below.

## A.    The First Three *Iridium* Factors Weigh in Favor of Approval of the DOJ Resolution

34.    The first three *Iridium* factors—(1) the balance between the litigation's likelihood of success and the settlement's benefits, (2) the likelihood of complex and protracted litigation, and (3) the paramount interest of the Debtors' creditors—are easily satisfied.

35.    The benefits of the DOJ Resolution are undeniable. The DOJ claims that the Debtors' prior conduct gives rise to criminal liability under a number of federal statutes, including, but not limited to, anti-kickback violations (42 U.S.C. § 1320a-7b(b)), misbranding in violation of the Food, Drug, and Cosmetic Act (21 U.S.C. §§ 331, 333, 352, 353), conspiracy (18 U.S.C. § 371), and others. Proof of Claim appearing at number 137798 on the claims register in these Cases (the "**DOJ Criminal Proof of Claim**") ¶ 1.

36.     If the United States were to prevail in a criminal prosecution of the Debtors, the

Debtors could face a criminal fine of approximately $6.2 billion or more[5] pursuant to 18 U.S.C.

§ 3571(d), an order of restitution pursuant to 18 U.S.C. §§ 3663, 3663A in an amount equal to the

losses suffered by any victims of the Debtors' offenses, and/or criminal forfeiture in the amount

of approximately $3.5 billion or more pursuant to 18 U.S.C. § 982(a).  *Id.* at ¶¶ 2-4.  These

remedies would likely consume the vast majority, if not all, of the Debtors' estates.  Pursuant to

sections 3613(e) and (f) of title 18 of the United States Code (the "**Criminal Code**"), a bankruptcy

discharge would not affect the Debtors' liability for any such criminal fines or restitution

obligations.[6]  With respect to criminal forfeiture, the United States could seek forfeiture of

"property, real or personal, that constitutes or is derived, directly or indirectly, from gross

proceeds traceable to the commission of" the offense.  11 U.S.C. § 982(a).  Right, title, and

interest in such property "vests in the United States upon the commission of the act giving rise to

forfeiture."  21 U.S.C. § 853(c) (incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c)).

This "relation-back doctrine can divest a bankruptcy estate of its property even though the estate

was created *before* the forfeiture order was entered."  *In re Dreier LLP*, 452 B.R. 391, 411 (Bankr.

S.D.N.Y. 2011) (emphasis in original).  The United States has a variety of "accounting choices"

---

[5] As described in the Plea Agreement, PPLP stipulates that the United States Sentencing Guidelines suggest a criminal fine of between $3.6 billion and $7.2 billion based on the stipulated facts.

[6] Sections 3613(e) and (f) of the Criminal Code provide:

> (e)  Discharge of Debt Inapplicable – No discharge of debts in a proceeding pursuant to any chapter of title 11, United States Code, shall discharge liability to pay a fine pursuant to this section, and a lien as prescribed by this section shall not be voided in a bankruptcy proceeding.

> (f)  Applicability to Order of Restitution – In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution.

17

at its disposal to trace funds in PPLP's accounts to the proceeds of the offenses covered by the guilty plea, which would allow the United States to apply the relation-back doctrine to those funds. *United States v. Walsh*, 712 F.3d 119, 124 (2d Cir. 2013). Even if tracing is not possible, the United States can seek the forfeiture of "substitute assets" unrelated to the crime. *See* 18 U.S.C. § 982, 21 U.S.C. § 853(p). Absent a resolution, the United States could also attempt to charge PPLP with additional offenses.

37.    If the United States were successful, it could thus be entitled to obtain substantially all of the value of the Debtors' estates through its forfeiture claims, which would render a successful, and possibly any, reorganization impossible.

38.    The alternative to the DOJ Resolution would be expensive, protracted, and extraordinarily risky litigation which would itself likely do irreparable damage to the Debtors even were the Debtors to ultimately prevail. A criminal trial might well be followed by an expensive and potentially even more protracted litigation of the federal civil claims asserted by the United States seeking at least $2.8 billion in damages, to be trebled, plus penalties (Proof of Claim appearing at number 137848 on the claims register in these Cases (the "**DOJ Civil Proof of Claim**") ¶ 5) as well as claims for civil forfeiture (DOJ Civil Proof of Claim ¶ 54-57) which the United States would argue can proceed during the pendency of these bankruptcy cases under the exception to the automatic stay of Section 362(b)(4).

39.    By contrast, the DOJ Resolution offers a clear path to a successful reorganization that preserves billions of dollars of value for the Debtors' creditors. Within three business days following the entry of a judgment of conviction pursuant to the Plea Agreement, the Debtors will pay $225 million in partial satisfaction of the Forfeiture Judgment to the United States. The

18

remaining $1.775 billion of the Forfeiture Judgment will be satisfied through the Forfeiture Judgment Credit.  The United States will not receive any other forfeiture or secured claims.  In addition, the United States will have allowed, prepetition, unsecured claims not entitled to priority, in the aggregate amount of $6.344 billion, consisting of a $2.8 billion Civil Claim and a $3.544 billion Criminal Fine Claim.[7]  With respect to the Civil Claim, the Debtors believe that the settlement is in the best interest of the estate because, among other things, it resolves the relevant claims asserted in the DOJ Civil Proof of Claim without the United States' receipt of any additional priority recovery and without a treble damages award or other penalties that could materially dilute recoveries of other creditors.

40.    Given the immense costs and risks of defending against criminal indictment and civil litigation by the DOJ, both in terms of litigation expense and the immense downside risks to the Debtors' business and to all estate stakeholders, the Debtors believe that litigation with the United States is not a practical or realistic alternative.

41.    The DOJ Resolution will preserve billions of dollars of value for the Debtors' other creditors that otherwise could have been paid solely to the United States or consumed in litigation. The Debtors expect that the DOJ Resolution will facilitate the Debtors' pursuit of providing billions of dollars in financial resources and lifesaving medicines to address the opioid crisis. Without a doubt, the DOJ Resolution is a critical step moving these cases forward, and it should be approved.

---

[7] This DOJ Resolution does not address the proofs of claim 137406, 138509, 137782, and 138522, filed by other agencies of the federal government.

**B.     The Position of Key Creditor Constituencies**

42.     The Debtors do not yet know the position of other creditors. Because the DOJ investigations were required to be kept confidential, it was not possible to solicit the views of other creditors before this motion was made. However, based on the terms of the resolution, including the credit of up to $1.775 billion for distributions to states, local governments, and tribal authorities, Debtors hope that there will be substantial support for the DOJ Resolution.

**C.     The DOJ Resolution Satisfies the Remaining *Iridium* Factors**

43.     With respect to the fifth *Iridium* factor, the nature and breadth of releases to be obtained by officers and directors, the DOJ Resolution will not include criminal or civil releases for any non-Debtor, including any individuals, consistent with DOJ policy regarding corporate resolutions.

44.     The final two *Iridium* factors are the competency and experience of counsel advising on the DOJ Resolution and the extent to which the DOJ Resolution is the product of arm's-length bargaining.  The Debtors' primary outside counsel leading these efforts, which included Skadden, Arps, Slate, Meagher & Flom LLP and King & Spalding LLP, are among the most experienced, sophisticated and knowledgeable advisors in the country in this area, and the DOJ devoted enormous resources, across numerous components of DOJ, to the investigation and negotiation underlying the DOJ Resolution.  The terms of the DOJ Resolution were the subject of more than a year and a half of extensive good-faith, arm's-length negotiations.  The Debtors produced to the DOJ more than nine million documents (totaling over 75 million pages of documents), including more than 2.5 million documents (totaling more than 17 million pages of documents) produced in direct response to DOJ's requests and millions of additional documents

previously produced in civil litigation or state government investigations. PPLP also provided numerous presentations and submissions in cooperation with its investigations and in the course of plea and settlement negotiations. The Plea Agreement and the Civil Settlement Agreement are each carefully structured resolutions of complex criminal and civil claims resolving billions of dollars of potential liability and are informed by exhaustive investigation and extensive negotiation. The competency of counsel on both sides of the negotiation and the complexity of those negotiations is readily apparent.

45. Accordingly, the Debtors respectfully request that the Court authorize their entry into and performance under the proposed Plea Agreement and Civil Settlement Agreement pursuant to Bankruptcy Rule 9019.

### Notice

46. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498] and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma); (b) the DOJ; (c) NJ USAO; (d) VT USAO; (e) SDNY USAO; (f) DOJ Consumer Protection; (g) DOJ Commercial Litigation; (h) HHS-OIG; (i) the Internal Revenue Service; (j) the Food and Drug Administration; and (k) any other person or entity with a particularized interest in the subject matter of this Motion (the "**Notice Parties**"). The Debtors respectfully submit that, in view of the facts and circumstances, such notice is sufficient and no further notice is required.

## No Previous Request

47.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such further relief as the Court may deem just and appropriate.

Dated:    October 21, 2020
          New York, New York


DAVIS POLK & WARDWELL LLP

By:   */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*