DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Eli J. Vonnegut
James M. Millerman
Marc J. Tobak
Dylan A. Consla
Kathryn S. Benedict

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors. [1] | (Jointly Administered) |

**DEBTORS' SUPPLEMENTAL STATEMENT IN SUPPORT OF MOTION OF
DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF A
KEY EMPLOYEE INCENTIVE PLAN AND A KEY EMPLOYEE RETENTION PLAN**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") respectfully submit this statement (the "**Statement**") in support of the *Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* [ECF No. 1674] (the "**Motion**" or "**Mot.**")[2] as it pertains to the KEIP.[3] In further support of the Motion and this Statement, the Debtors rely on the *Supplemental Declaration of Josephine Gartrell in Support of the Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* (the "**Supplemental Willis Towers Declaration**" or "**Suppl. Willis Towers Decl.**"), attached hereto as **Exhibit B**, as well as the Lowne Declaration and Willis Towers Declaration previously submitted in connection with the Motion, and respectfully represent as follows:

### PRELIMINARY STATEMENT

1.      The Debtors are pleased to report that, subject to certain modifications described below, no party opposes approval of the proposed KEIP with respect to four KEIP Participants (the "**Agreed KEIP Participants**"): (i) Executive Vice President, General Counsel and Corporate Secretary (the "**General Counsel**"); (ii) Chief Technical Operations Officer; (iii) President, Rhodes Pharmaceuticals; and (iv) President, Rhodes Technologies. Consideration of the KEIP with respect to two other KEIP Participants, the CEO and CFO, will be adjourned to the omnibus

---

[2] Except where otherwise indicated, capitalized terms used but not defined in this Statement have the meanings ascribed to them in the Motion.

[3] Objections were filed by the following parties: The United States Trustee for Region 2 (the "**U.S. Trustee**") [ECF No. 1708] (the "**UST Objection**" or "**UST Obj.**") and the Ad Hoc Committee on Accountability [ECF No. 1710] (the "**AHC Objection**" or "**AHC Obj.**" and collectively, the "**Objections**"). The Objections were resolved or overruled with respect to the KERP but remained outstanding with respect to the KEIP. *See Order Authorizing the Debtors to Implement a Key Employee Retention Plan* [ECF No. 1762], recitals & ¶ 3. The Objections have been withdrawn solely as they relate to the Agreed KEIP Participants (defined above).

1

hearing on November 17, 2020. The remaining two KEIP Participants (the President of Imbrium Therapeutics and the Debtors' Senior Vice President, Intellectual Property Law & Public Health Initiatives) resigned to pursue other opportunities after the Motion was filed, so the Debtors no longer seek any authorizations related to those two former KEIP Participants.

2.      After extensive discussions with the Debtors, the Official Committee of Unsecured Creditors (the "**UCC**"), the Non-Consenting States Group (the "**NCSG**"), the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Ad Hoc Committee**") and the Multi-State Governmental Entities Group (the "**MSGE**") have decided not to object to the approval of the KEIP with respect to the Agreed KEIP Participants, with a reduction of proposed incentive opportunities for the Agreed KEIP Participants totaling $395,382 and certain other modifications that parallel the prior agreed changes to the KERP. In light of these developments, both other parties who previously objected to the Motion—the U.S. Trustee and the Ad Hoc Committee on Accountability—have informed the Debtors that they will no longer press their objections as to the Agreed KEIP Participants, while preserving their objections with respect to the remaining active KEIP Participants. The Motion as to the Agreed KEIP Participants is therefore now entirely uncontested.

## THE AGREED MODIFICATIONS TO THE KEIP

3.      The Debtors have agreed to adjourn the hearing on the KEIP with respect to the CEO and CFO to the omnibus hearing on November 17, 2020 at 10:00 a.m. (prevailing Eastern Time) and the President of Imbrium Therapeutics and the Debtors' Senior Vice President, Intellectual Property Law & Public Health Initiatives have resigned. Accordingly, the Debtors currently seek approval of the KEIP, as modified by this Statement, with respect to only the Agreed KEIP Participants.

4. The Debtors have agreed to make the following modifications to the KEIP with respect to the Agreed KEIP Participants:

- the KEIP Award payments, LTRP payouts due in 2022 and long-term incentive compensation grant payable in 2023 will be reduced for the Agreed KEIP Participants by a total of $395,382.00 as set forth in the table below:

| KEIP Participant | Agreed Reduction in Amount of: | | | |
|---|---|---|---|---|
| | KEIP Award | LTRP payouts due in 2022 | Long-term incentive compensation grant payable in 2023 | Total |
| Executive Vice President, General Counsel and Corporate Secretary | ($175,000.00) | ($40,963.00) | ($23,175.00) | ($239,138.00) |
| Chief Technical Operations Officer | ($54,753.00) | ($15,908.00) | ($9,000.00) | ($79,661.00) |
| President, Rhodes Pharmaceuticals | ($31,501.00) | ($4,573.00) | ($2,665.00) | ($38,739.00) |
| President, Rhodes Technologies | ($30,763.00) | ($4,474.00) | ($2,607.00) | ($37,844.00) |
| Total | ($292,017.00) | ($65,918.00) | ($37,447.00) | ($395,382.00) |

- the KEIP Award will be paid (x) 50% on or about November 1, 2020 rather than in October 2020 and (y) 50% on or about March 31, 2021 rather than in January 2021;[4]

- the KEIP Award payments will be subject to a clawback if the Agreed KEIP Participant resigns or is terminated for any reason other than by the Debtors without cause prior to June 30, 2021 rather than March 15, 2021, except that such clawback will expire upon emergence should it occur earlier;

---

[4] All payment dates referenced herein are approximate. Payments will be made on the closest scheduled payroll date.

3

- the LTRP payouts due in 2022 will be accelerated upon emergence, subject to a clawback through the date that such payments would otherwise have been made absent emergence; and

- the long-term incentive compensation grant payable in 2023 will be accelerated upon emergence, subject to a clawback through the date that such payments would otherwise have been made absent emergence.

5. The changes to payment dates and clawback provisions are consistent with the changes that the Debtors previously agreed to make to the KERP.

6. These reductions are in addition to the reductions relative to the amounts that would have been paid under the Debtors' longstanding AIP and LTRP compensation programs and that were already incorporated into the relief that the Debtors originally sought in the Motion.

7. A revised Proposed Order (the "**Revised Proposed Order**") authorizing the KEIP for the Agreed KEIP Participants subject to these changes is attached hereto as **Exhibit A**.

## STATEMENT

8. At the omnibus hearing on September 30, 2020, this Court emphasized that compensation of similar executives at peer pharmaceutical companies outside of the chapter 11 context is an important reference point for determining the reasonableness of the KEIP, stating that "I want to know about . . . the industry standard, and I want to know whether the incentives are properly targeted" and "I would benefit from . . . a focus on the market of the Debtors' competitors." Hr'g Tr., 143:7-10, 143:17-19, Sept. 30, 2020.

9. The Debtors and their compensation consultants at Willis Towers Watson focused on this key benchmark in designing the KEIP to ensure that the KEIP Participants' total compensation aligned reasonably with industry standards. In particular, the Willis Towers Declaration filed with the Motion included a comparison of the compensation of the KEIP Participants to compensation at similar pharmaceutical companies that participated in Willis

4

Towers Watson's 2019 CDB Pharmaceutical and Health Sciences Executive Compensation Survey Report (the "**Survey**"). Willis Towers Decl. ¶ 23. Data from approximately 87 non-debtor companies in the pharmaceutical industry in this Survey was aggregated for purposes of benchmarking the KEIP. Suppl. Willis Towers Decl. ¶¶ 9-10.

10.     In response to the Court's statements, the Debtors submit herewith a supplemental declaration that updates this analysis for the agreed changes to the KEIP with respect to the Agreed KEIP Participants and provides additional information about comparing, for the Agreed KEIP Participants, the cash-based long-term incentive payments opportunities under the KEIP to stock-based incentive opportunities offered by peer companies in the pharmaceutical industry. The results of the updated analysis are summarized in the table below:

|  | Variance to Market TDC | | | | | |
|---|---|---|---|---|---|---|
|  | Purdue Base + Proposed 2020 KEIP | | | Purdue Base + Proposed 2020 KEIP Subject to Agreed Reductions | | |
|  | P25 | P50 | P75 | P25 | P50 | P75 |
| EVP, General Counsel | 358% | 229% | 136% | 341% | 217% | 127% |
| Chief Technical Operations Officer | 43% | 17% | -4% | 37% | 13% | -7% |
| President, Rhodes Pharmaceuticals | 37% | 7% | -15% | 32% | 3% | -18% |
| President, Rhodes Technologies | 62% | 27% | 0% | 56% | 23% | -3% |
| **Average (excl. General Counsel)** | **47%** | **17%** | **-6%** | **42%** | **13%** | **-10%** |

11.     The Debtors have excluded the General Counsel from the average in the table above because, as described in the Motion, the Debtors retained the General Counsel when pre-bankruptcy litigation was already at a fever pitch and therefore made a business judgment that they

5

required significantly greater expertise and experience in a General Counsel than a peer company lacking the Debtors' matchless legal complexity might require. The Debtors believe that there is no industry standard that is truly comparable to the uniquely challenging role that the Debtors' General Counsel was hired to take on. The Debtors believe that the General Counsel's compensation is appropriate and reasonable, particularly in light of the immense challenges he faces in his role with the Debtors, and in light of his past experience and qualifications—qualifications that the Debtors determined were necessary for overseeing the Debtors' extraordinarily complex legal situation.

12.    The Debtors submit that this updated analysis, along with the fact that no party in these Chapter 11 Cases objects to the modified relief sought with respect to the Agreed KEIP Participants, further supports the conclusion that the KEIP with respect to the Agreed KEIP Participants is reasonable and should be approved as modified by this Statement.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, for the foregoing reasons and the reasons stated in the Motion, the Debtors respectfully request that the Court promptly grant the relief requested in the Motion with respect to the Agreed KEIP Participants in the modified form set forth in the Revised Proposed Order.

Dated: October 26, 2020
New York, New York

DAVIS POLK & WARDWELL LLP
By: /s/ *Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Eli J. Vonnegut
James M. Millerman
Marc J. Tobak
Dylan A. Consla
Kathryn S. Benedict

*Counsel to the Debtors
and Debtors in Possession*