Eisenberg & Baum, LLP
Michael S. Quinn
24 Union Square East, Fourth Floor
New York, New York 10003
(212) 353-8700

*Counsel to the Ad Hoc Committee on Accountability*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.* [1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**THE AD HOC COMMITTEE ON ACCOUNTABILITY'S
OBJECTION TO THE SACKLERS' MOTION TO SHORTEN NOTICE
WITH RESPECT TO THEIR MOTION TO CONFIRM THAT PAYMENT BY THE
SACKLER FAMILIES UNDER SETTLEMENT WITH THE UNITED STATES
DEPARTMENT OF JUSTICE IS NOT PROHIBITED BY THIS COURT**

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

The Ad Hoc Committee on Accountability, by its undersigned counsel, objects to the Sackler families' motion to shorten the notice period provided in the rules for their motion regarding their $225 million settlement with the United States Department of Justice for their role in the opioid epidemic (ECF No. 1832, the "Motion to Shorten").

The Committee on Accountability respectfully states as follows:

---

[1] The debtors in these chapter 11 cases ("**Debtors**" or "**Purdue**"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014) (collectively, the "**Bankruptcy Cases**").

1

On Wednesday, October 21, 2020, at or about 11:00 AM, United States Deputy Attorney General Jeffrey Adam Rosen announced at a press conference that the United States Department of Justice was settling its civil claims against members of the Sackler family for $225 million.[2] At the same press conference, Mr. Rosen announced that the Department of Justice was settling claims against Purdue.

It is widely acknowledged that these settlements are significant events for millions of Americans affected by the opioid crisis. Within the Department of Justice, senior attorneys travelled to Washington from Vermont and New Jersey, during the pandemic, to attend the announcement in person; and the announcement was made by the second-highest-ranking attorney in the United States.[3] In the legislative branch, dozens of Representatives and Senators have written formal letters to the Department of Justice to express concerns about the case.[4] In the

---

[2] Remarks by Dep. AG Jeffrey A. Rosen on the Resolution of Civil and Criminal Investigations into Purdue Pharma and the Sackler Family, 2020-10-21, at https://www.justice.gov/opa/speech/remarks-deputy-attorney-general-jeffrey-rosen-resolution-civil-and-criminal.

[3] Justice Dept. Announces Global Resolution of Criminal and Civil Investigations With Opioid Manufacturer Purdue Pharma and Civil Settlement with Members of the Sackler Family, 2020-10-21, https://www.justice.gov/usao-nj/pr/justice-department-announces-global-resolution-criminal-and-civil-investigations-opioid.

[4] Letter from 36 U.S. Reps. to AG Barr, 2020-10-15, at https://katherineclark.house.gov/_cache/files/1/b/1b3e1a05-b123-4c68-9dc6-29ec975d8cb1/15D0264685780309478EDC3149C10461.10.15.20-rep.-clark-letter-to-ag-barr-on-purdue-settlement-signed.pdf, Letter from U.S. Senators Whitehouse and Hassan to AG Barr, 2020-10-01, at https://www.whitehouse.senate.gov/imo/media/doc/2020-10-01%20DOJ%20Letter%20on%20Purdue%20Settlement%20Talks.pdf; Letter from U.S. Senator Baldwin to AG Barr, 2020-10-20, https://www.baldwin.senate.gov/imo/media/doc/20201020_DOJ_Public_Benefit_Concern.pdf.

media, the settlements were front page news.[5] In the world of philanthropy, the settlements led to decisions to strip the Sackler name from famous institutions.[6]

For the members of the Committee on Accountability, the proposed settlement is especially troubling because the DOJ continues to view the victims of the Sacklers' misconduct as "abusers" themselves. But the "abuse" in question would not have been possible without the Sacklers' systematic efforts—detailed in the settlement itself—to exploit doctors, regulators and, ultimately, those who were unwittingly duped into believing that Purdue's opioids were less harmful than they were. That the Department of Justice refused to hear the concerns of victims and survivors, and failed to hold any individuals accountable – after similarly failing in 2007 – are landmark betrayals of citizens by their government. Two motions regarding the settlements were filed in this Court. Purdue filed a motion regarding its settlement [ECF No. 1828] and acknowledged that the motion should be heard on November 17, 2020, consistent with the regular rules and the case management order in this case. The Sacklers, on the other hand, asked the Court to set aside the normal rules and approve their settlement only one week after it was revealed to the public: this Wednesday, October 28, 2020.

---

[5] Dan Levin, *Purdue Pharma Plea Offers Little Solace to Survivors of Opioid Crisis*, N.Y. Times, 2020-10-21, https://www.nytimes.com/2020/10/21/us/oxycontin-victims-purdue-pharma.html; Editorial Board, *OxyContin Settlement Doesn't Begin To Make Up For The Harm Purdue Pharma Has Caused*, L.A. Times, 2020-10-22, https://www.latimes.com/opinion/story/2020-10-22/purdue-pharma-settlement-justice-department; Editorial Board, *The Maker Of OxyContin Admits To Serious Crimes. Why Is No One Going To Prison?*, Wash. Post, 2020-10-22, https://www.washingtonpost.com/opinions/the-maker-of-oxycontin-admits-to-serious-crimes-why-is-no-one-going-to-prison/2020/10/22/1a34f76e-1472-11eb-ad6f-36c93e6e94fb_story.html.

[6] AP, *NYU To Remove Sackler Name Following Purdue Pharma Deal*, Wash. Post, 2020-10-21, https://www.washingtonpost.com/business/nyu-to-remove-sackler-name-following-purdue-pharma-deal/2020/10/22/27c967ea-1489-11eb-a258-614acf2b906d_story.html; Sarah Cascone, *After Purdue Pharma Reached a $225 Million Settlement With US Authorities, the Met Says the Name of Its Sackler Wing Is 'Under Review,'* Artnet News, 2020-10-23, https://news.artnet.com/art-world/sacklers-name-museum-met-1917814.

The Sacklers appear to claim that they require urgent relief because "[a]ny uncertainty over the fate of the Sackler Families' DOJ settlement would impede the progress of mediation, and thus the progress of these cases as a whole." Motion to Short at 4, ¶ 7. This cannot be true, and if it is true, it is merely so because the Sacklers structured the settlement to require immediate approval so as to avoid the scrutiny that time permits.

The Committee on Accountability respectfully requests that the regular time allowed in the rules to assess and respond to a Motion should apply. There are more than a hundred thousand creditors in this case. Thousands of them are individuals and families who have been personally injured, are not billionaires, and do not have multiple law firms on stand-by around-the-clock. Their experience of litigation is not at all like what the Sacklers assume. Under federal law and sound policy, they have a right to be heard. *See* 11 U.S.C. § 1109(b). If the Motion to Shorten were granted, and the Court approved the Sacklers' settlement this week, many people would have no practical opportunity to be heard. The Sacklers' contention that they have allowed everyone "5 days to prepare a response" and "any party that intends to submit a response to the Motion will be well positioned to do so" shows a callous disregard for the reality of this case.[7]

The Motion to Shorten fails to answer an important question about what Sackler money will be left after $225 million is paid. The Sacklers seek the Court's blessing to pay one politically powerful creditor: The Department of Justice. But the Sacklers provide no assurance that there will be money left to pay the many thousands of real people they hurt. Indeed, this case has been bogged down for months over questions about the Sacklers' ability to return potentially billions of dollars in funds wrongfully taken from the Debtors. The Committee on Accountability is

---

[7] Motion to Shorten para. 9.

4

concerned that the Sacklers have hidden billions of dollars out of reach.[8] Before the Court approves the payment, the Sacklers should state in a public filing how much more money they have available and accessible for victims in the United States, so that parties have a fair chance to argue to the Court about whether the payment to the Department of Justice prejudices the vulnerable parties in this case.

If the Sacklers' payment was addressed in a Disclosure Statement and a Plan, then all parties might have the adequate information about how much Sackler money will be paid to each creditor in this case, so that concerns about fairness could be addressed transparently on the merits. The Disclosure Statement would also show how much money the Sacklers seek to keep for themselves, so the parties and the Court can address whether it could ever be just for the Sacklers to walk away billionaires. Approving a settlement on five days' notice makes it impossible to have any assurance that the Sacklers are not rendering themselves judgment-proof in order to prefer a single creditor. Many things would look different if the Sacklers took a moment to stand in someone else's shoes.

The Motion to Shorten also raises further questions about the Sacklers' criminal liability and their efforts to use this bankruptcy to resolve such liability. A year ago, Purdue filed a "term sheet" proposing an agreement with the Sacklers.[9] Based on that term sheet, the Sacklers won an extraordinary, court-ordered injunction protecting them from lawsuits for killing thousands of

---

[8] Eli Moskowitz, *Opioid Giant's $8 Billion Settlement May Miss Wealth Stashed Offshore*, Organized Crime & Corruption Reporting Project, 2020-10-22, https://www.occrp.org/en/daily/13297-opioid-giant-s-8-billion-settlement-may-miss-wealth-stashed-offshore; Congressman Tim Ryan, 2020-10-21, https://timryan.house.gov/media/press-releases/congressman-tim-ryan-statement-purdue-pharma-s-83-billion-opioid-settlement ("The Sacklers knowingly created and expanded the opioid epidemic for personal profit, then siphoned off billions of dollars into offshore bank accounts to ensure that they would still walk away as billionaires when their criminal enterprise finally came crumbling down.").

[9] ECF No. 257.

Americans.[10] The motion to approve the $225 million payment asserts yet again that the Sacklers' term sheet is the "settlement framework" for this case.[11] The Committee on Accountability is concerned that the term sheet appears to require that the Sacklers receive a release from "all potential federal liability arising from or related to opioid-related activities," both civil and criminal.[12]

The strong inference created by the term sheet is that the Sacklers will use the chapter 11 process to buy their way out of both civil and criminal liability. If DOJ settles all criminal charges against the Sacklers then, as a practical matter, no other governmental authority will have the resources to prosecute the Sacklers, who will seek to use their exoneration in a DOJ settlement to deter aggressive prosecution. While that settlement is not now before the Court, it would be naïve to think that the effort to make this payment now is anything other than a rush to render that larger settlement a fait accompli.

Before the Court approves the Sacklers' payment to the Department of Justice, the parties and the public must know whether the Sacklers are trying to resolve their criminal liability in this bankruptcy. Deputy AG Rosen seemed to say that the Department of Justice has *not* released the Sacklers from liability for crimes.[13] But the term sheet Purdue filed says the Sackler deal requires a release from "all potential federal liability." Have the Sacklers given up on getting a release

---

[10] 2019-10-11 Hearing Transcript at 259:6-8 (entering injunction to encourage parties to "negotiate a plan that resolves the current objections of the multi-state group as well as other parties to the terms sheet that has been proposed by the Debtors"); 2020-03-18 Hearing Transcript at 85:17-20 (extending injunction to protect "the resources of the related parties who have in a term sheet with the so-called governmental group agreed to, on their face, substantial contributions to a Chapter 11 plan").

[11] ECF No. 1833 para. 2 & n.2 ("The "Settlement Framework" is the settlement framework set forth in the Summary Term Sheet attached to the Notice of Filing of Term Sheet with Ad Hoc Committee [ECF 257].").

[12] ECF No. 257 para. 10.

[13] Remarks by Dep. A.G. Jeffrey A. Rosen on the Resolution of Civil and Criminal Investigations into Purdue Pharma and the Sackler Family, Oct. 21, 2020, at https://www.justice.gov/opa/speech/remarks-deputy-attorney-general-jeffrey-rosen-resolution-civil-and-criminal. ("It is important to note that this resolution does not prohibit future criminal or civil penalties against Purdue Pharma's executives or employees.")

from criminal liability? Have they obtained a release from criminal liability that has not been disclosed? Or is this week's civil settlement one step in a strategy, where the Sacklers lock in part of a favorable deal now, and then later they demand an additional release – immunity for crimes – before they pay what they owe to the many thousands of people waiting in this bankruptcy.

The Committee on Accountability believes it is wrong that our legal system would allow rich people to buy releases from liability for crimes. But the Sacklers have done that once already. The State of Oklahoma released the Sacklers and every other Purdue executive from liability for all crimes related to their opioid business – even murder – in exchange for a $75 million "donation."[14]

When the Committee on Accountability raised a similar question about language in the preliminary injunction that appeared to enjoin criminal law enforcement, Purdue and the Court clarified that the Bankruptcy Court's preliminary injunction does not pertain to criminal matters at all.[15] The Sacklers should assure the world that, unlike their Oklahoma deal, no settlement or Plan in this bankruptcy will give any member of the Sackler family immunity for crimes.

---

[14] *State v. Purdue Pharma LP*, No. CJ-2017-816, 2019 WL 4136840, (Okla. Dist.) (Trial Order) (2019-03-26), at *4 ("'Released Claims' means any and all claims of any nature, including the State's state and federal statutory and common law claims, that were brought or could have been brought by any Releasor related to or arising out of in any way the Covered Conduct, whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, that any Releasor, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or may hereafter have including all past, present, and future civil, ***criminal***, derivative, regulatory, administrative, or any other claims any Releasor may have under any applicable state, regulatory, or administrative law or statute relating in any way to any Covered Conduct (regardless of where in the world any such Covered Conduct or any result, loss, injury, or damage resulting therefrom occurred) from the beginning of time …." (emphasis added)).

[15] Adversary Proceeding ECF No. 205, Reply Memorandum of Law in Support of Motion to Extend the Preliminary Injunction, at 8-9 (injunction that forbids "judicial, administrative, or other actions or proceedings" nevertheless "does not purport to enjoin criminal investigation or criminal prosecution" and instead only applied to "civil litigation" (emphasis in original)); Sept. 30, 2020 Hearing Transcript at 63:3-6 (Committee on Accountability: "We certainly appreciate that in the debtor's reply they've clarified the current injunction applies only the civil cases."); *id.* at 76:20-23 (The Court: "the record even more so supports today, a preliminary injunction of the third-party, non-criminal claims against the parties covered by the proposed extension of the preliminary injunction").

The presumptive practice in this District is that motions shall not be heard on less than 14 days notice. See Local Rule of Bankruptcy Procedure 9006-1. While the case management order in this case permits the Court to shorten notice, it may only do so upon a showing of "good cause." Case Management Order [ECF no. 498], at 9, ¶ 17.

The Sacklers have shown no cause to shorten that time, good or otherwise. They claim that "making the payments required by the settlement as soon as possible is in the *best interests of the estates*." Motion to Shorten at 4, ¶ 6 (emphasis added). It is, however, not possible to see how it is in the interests of the estates to siphon funds potentially available to all creditors to a single creditor before any plan or discovery is complete.

The Motion to Shorten insinuates that the DOJ settlement may fall apart unless approved on the expedited basis the Sacklers seek. No one—including the DOJ, as far as the record shows—has required this, however. If the Sacklers need to rush this through court, it is because they chose to do so.

If the Sacklers' release was addressed in a Disclosure Statement and a Plan, rather than a one-off motion, then all parties might have the adequate information about how this settlement fits into the larger picture of the case, which is important to many people beyond the Sacklers and the Justice Department. Moreover, the Court has assured the parties that discovery pursuant to Rule 9019 would be available to assess the merits of the plan and any settlements embodied in the plan. If this $225 million is the Sacklers' down payment on a plan that will ultimately insulate them entirely from criminal and civil liability, the parties must have the opportunity to investigate and assess the effects of this settlement, as the Court has promised. They cannot do so on five days' notice.

The Motion to Shorten also fails to explain why the Sacklers' settlement and Purdue's

19-23649-shl    Doc 1852    Filed 10/26/20    Entered 10/26/20 17:01:40    Main Document

settlement should not be addressed by the Court on the same day. The Sacklers contend that "there is no need for the Sackler Families' Motion to be heard at the same time as the Debtor Settlement Motion," because one is not contingent on the other.[16] But that contention does not match the way actual parties addressed these settlements in the real world. The Department of Justice announced the Sackler and Purdue settlements on the same day, and the signatures on the documents show they were signed on the same day, because they are in fact closely related. The entities that are scheduled to receive releases from liability under the Sackler settlement appear to include at least one debtor in the bankruptcy: Purdue Pharma Inc.[17] The Committee on Accountability is still reviewing the significant developments that have taken place in the past week; but it appears that even sophisticated parties that had the benefit of months of advance warning and inside information made a deliberate choice to conclude the two settlements on the same day because of the close relationships between them. Those without the extraordinary resources of the Sacklers and the Debtors—that is, the Debtors' hundreds of thousands of creditors – should also have sufficient time to assess and address the proposed settlements together.

The Motion to Shorten also fails to explain why following the regular rules would harm anyone. The proposed settlement agreement contemplates that time will be needed for the process of Court approval: the Sackler's payment is not due until "3 business days after this Court grants the Motion."[18] The parties even agreed on an interest rate, so that neither the Sacklers nor the Department of Justice will be prejudiced by the time it takes for proper Court consideration.[19] The money to be transferred in this settlement will flow from the bank accounts of billionaires (the

---

[16] Motion to Shorten para. 10.

[17] ECF No. 1833 at 82, Addendum C.

[18] Motion to Shorten para. 5.

[19] *Id.*

9

Sacklers) to a party with trillions of dollars (the U.S. Treasury). Unlike other money in this case, the payments to the Department of Justice will not go to victims or to abate the opioid crisis; instead, it will be dropped into the sea of the multi-trillion-dollar U.S. Treasury.[20]

The Sacklers assert that the mediation will be harmed by following the regular rules for their motion, and that it is "imperative that the parties to the mediation know – without delay – that the Sackler Families' settlement with the DOJ" is approved.[21] That does not seem right. Depositions in the case are scheduled through November. The Committee on Accountability views a thorough investigation and report on the Sacklers' role in the opioid crisis as an essential prerequisite to any legitimate resolution of these cases. It would make no sense to arrange a deal before the crucial witnesses testify. There is time for the parties to follow the regular rules regarding the Sacklers' motion, just as the regular rules apply to the related motion filed day by Purdue.

The Committee on Accountability is concerned that the true reason for the Sacklers' rush is because they believe their deal is possible only under the Trump administration. The New York Times reported that: "Purdue was keen to settle its federal legal troubles under a Trump administration, which it sensed would cut a better deal than a new Biden administration."[22] The article cited Joe Rice, a negotiator in the case, saying: "Purdue is doing everything they can to get this deal done in this administration."[23]

---

[20] 31 U.S. § 3302(b) ("an official or agent of the Government receiving money for the Government from any source shall deposit the money in the Treasury …").

[21] Motion to Shorten para. 7.

[22] Jan Hoffman & Katie Benner, *Purdue Pharma Pleads Guilty to Criminal Charges for Opioid Sales*, N.Y. Times, 2020-10-21, https://www.nytimes.com/2020/10/21/health/purdue-opioids-criminal-charges.html.

[23] *Id.*

This case presents high stakes for everyone.  The dispute between the parties is intense and personal and based on the deepest injuries people can suffer: crimes that made some people billionaires and killed other people's children.[24]  In such a case, it is at minimum appropriate to allow the ordinary time for parties to respond to motions and follow the regular rules.

WHEREFORE, the Committee on Accountability respectfully submits that the Motion to Shorten should be denied, and the regular period for notice should apply.

Dated: October 26, 2020　　　　　　　　　Respectfully Submitted,
　　　　　New York, NY　　　　　　　　　Eisenberg & Baum, LLP

　　　　　　　　　　　　By:　/s/ Michael S. Quinn
　　　　　　　　　　　　　　　Michael S. Quinn (mq-1640)
　　　　　　　　　　　　　　　24 Union Square East, Fourth Floor
　　　　　　　　　　　　　　　New York, New York  10003
　　　　　　　　　　　　　　　(212) 353-8700
　　　　　　　　　　　　　　　mquinn@eandblaw.com
　　　　　　　　　　　　　　　prachmuth@eandblaw.com
　　　　　　　　　　　　　　　ebaum@eandblaw.com

　　　　　　　　　　　　　　　*Counsel to Ad Hoc Committee on Accountability*

---

[24] ECF No. 1828-2, Purdue Pharma Plea Agreement ("Count One, a dual-object conspiracy to defraud the United States, contrary to Title 18, United States Code, Section 371, and to violate the Food, Drug, and Cosmetic Act, contrary to Title 21, United States Code, Sections 331, 333(a)(1), and 353, all in violation of Title 18, United States Code, Section 371; in Count Two, a conspiracy to violate the Federal Anti-Kickback Statute related to Purdue's payments to health care providers, contrary to Title 42, United States Code, Section 1320a-7b(b), in violation of Title 18, United States Code, Section 371; and in Count Three, a conspiracy to violate the Federal Anti-Kickback Statute related to Purdue's payments to Practice Fusion, a cloud-based electronic health records platform, contrary to Title 42, United States Code, Section 1320a-7b(b), in violation of Title 18, United States Code, Section 371.").