| | |
|---|---|
| AKIN GUMP STRAUSS HAUER & FELD LLP<br>Ira S. Dizengoff<br>Arik Preis<br>Mitchell P. Hurley<br>Joseph L. Sorkin<br>Sara L. Brauner<br>One Bryant Park<br>New York, New York 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br>idizengoff@akingump.com<br>apreis@akingump.com<br>mhurley@akingump.com<br>jsorkin@akingump.com<br>sbrauner@akingump.com<br><br>*Counsel to the Official Committee of*<br>*Unsecured Creditors of Purdue Pharma L.P.*, et al. | PILLSBURY WINTHROP SHAW PITTMAN LLP<br>Andrew M. Troop<br>Jason S. Sharp (admitted *pro hac vice*)<br>Andrew V. Alfano<br>31 West 52nd Street<br>New York, New York 10019<br>andrew.troop@pillsburylaw.com<br>jason.sharp@pillsburylaw.com<br>andrew.alfano@pillsburylaw.com<br><br>*Counsel to the Non-Consenting State Group* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

**STATEMENT REGARDING AND LIMITED OBJECTION
TO NOTICE BY THE SACKLER FAMILIES OF SETTLEMENT WITH THE
UNITED STATES DEPARTMENT OF JUSTICE AND MOTION TO CONFIRM THAT
PAYMENT BY THE SACKLER FAMILIES UNDER SETTLEMENT WITH THE
<u>DEPARTMENT OF JUSTICE IS NOT PROHIBITED BY THIS COURT</u>**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Ad Hoc Group of Non-Consenting States (the "NCSG"), by and through their respective undersigned counsel, hereby submit this statement and limited objection (the "Limited Objection") in response to the *Notice by the Sackler Families of Settlement with the United States Department of Justice and Motion to Confirm that Payment by the Sackler Families Under Settlement with the United States Department of Justice Is Not Prohibited by this Court* [ECF No. 1833] (the "Motion").[2] In support of this Limited Objection, the Official Committee and NCSG respectfully state as follows.

## STATEMENT AND LIMITED OBJECTION

1. Throughout the Chapter 11 Cases—and, indeed, for the better part of the last two decades—the Debtors and the Sackler Families have heralded their innocence regarding their role in the staggering opioid crisis that has resulted in the loss of hundreds of thousands of lives and a significant number of children born injured from *in utero* opioid exposure. The Sacklers' continued refusal to take any responsibility notwithstanding overwhelming evidence to the contrary—particularly now, in the face of agreements to pay perhaps more than a billion dollars to the United States government and the Debtors' now admitted criminal conduct—is astonishing. Indeed, the Motion begins with the now familiar refrain that the Sackler Families "vigorously deny all allegations that they acted unlawfully or unethically in connection with the Debtors' marketing and sale of opioid products." This conceit has been displayed time and again during these cases in meetings, depositions, discovery disputes and pleadings. Week by week, more evidence shows that the Sacklers' denials are false.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

2. Last Wednesday, at 11:00 a.m. EDT, the United States Department of Justice (the "DOJ") announced two "settlements." The first involved a civil, but not a criminal, settlement with the Sackler Families (the "Sackler Settlement") and is the subject of the Motion and this Limited Objection. The second involved a civil settlement *and a criminal guilty plea* by the Debtors (the "Debtor Settlement and Plea" and, together with the Sackler Settlement, the "Settlements").[3] Together, the Settlements result in: (i) a $450 million payment to the DOJ on account of the Debtors' and the Sackler Families' fraudulent conduct since 2007; (ii) Debtor Purdue Pharma LP's admission to three felonies; (iii) a $6 billion unsecured claim against the Debtors in favor of the DOJ; and (iv) close to 200 paragraphs of assertions by the DOJ regarding the conduct that led to these penalties.

3. Taking into account the Settlements, as well as the $600 million fine that the Debtors paid in 2007 in conjunction with the admission of one criminal count by The Purdue Frederick Corporation, Inc., the Debtors and the Sackler Families are poised to have paid more than $1 billion to the United States government for their roles in causing and deepening the opioid crisis. Furthermore, as a result of the Settlements, there can be no dispute that the Debtors (under the close stewardship of the Sackler Families and their agents) are serial federal felons that continued to engage in a "conspiracy to defraud," even under the watchful eye of the federal government after the CIA (as defined below) and a monitor were put into place as a result of the 2007 plea agreement.[4] This fact is notably absent from the various filings in respect of the

---

[3] While the Debtor Settlement and Plea is not the specific subject of the Motion or this Limited Objection, it must nevertheless be addressed briefly in this context.

[4] Specifically, the *Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9109 Authorizing and Approving Settlements Between the Debtors and the United States*, dated October 21, 2020 [ECF No. 1828] (the "DOJ Settlement Motion") explains that "Count One of the Plea Agreement Count One will charge PPLP with a dual-object conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and to violate the Food, Drug, and Cosmetic Act in violation of 21 U.S.C. §331, 333(a)(1) and 353, all in violation of 18 U.S.C. §371. The parties agree that the time period of the conspiracy described in Count One will be May 2007 through March 2017." DOJ Settlement Motion ¶ 20 (emphasis added). This 10-year period includes the full five-year period during which the Debtors were

3

Settlements, but is lost on neither creditors nor the public, who—as the old proverb dictates—do not intend to be "fooled twice."

4. Against this background and in an effort to offer some bearings amidst the sea of paper filed in connection with the Settlements, the Official Committee and NCSG would like to highlight the following critical elements of the Sackler Settlement:

- The Sackler Families have agreed to pay $225 million to the DOJ to settle the "Covered Conduct," as further set forth in paragraph 4 of the Sackler Settlement Agreement and as described in the 170-paragraph Addendum.

- The Sackler Families do not admit any liability, and there is **no settlement of criminal liability** contemplated by the Sackler Settlement Agreement.

- The DOJ has included a 31-page Addendum to the Sackler Settlement Agreement, setting forth 170 paragraphs of findings and assertions. The Addendum includes, among other things, a detailed and compelling description of the DOJ's determinations that Purdue and the Sackler Families engaged in fraudulent conveyances. *See* Addendum ¶¶ 158–170. These determinations offer significant credence to the investigation in which the Official Committee has been engaged for the last 10 months and the investigations in which States have been engaged for many years.

- In order to ensure that these valuable estate causes of action are not released, the Sackler Settlement Agreement specifically states that "[n]othing in this Agreement releases any claims the Debtors' estates have the ability to bring, including but not limited to fraudulent transfer claims and any claims that could be brought by the Debtors' estates by standing in the shoes of any creditors in the Chapter 11 Cases against any individuals or non-debtor entities, including without limitation, the Debtors' current or former owners, shareholders, or members of their Boards of Directors." Sackler Settlement Agreement ¶ 4.

- In a further effort to ensure that the States' valuable claims against the Sacklers are not released, the Sackler Settlement Agreement also provides that "[n]otwithstanding the release given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims . . . are specifically reserved and not released: . . . (h) Any liability for claims of the States or Indian tribes in the Chapter 11 cases or otherwise . . . ." Sackler Settlement Agreement ¶ 8(h).

---

subject to the Corporate Integrity Agreement (the "CIA") with the Office of the Inspector General of the Department of Health and Human Services (which was in place from 2007 through 2013) as a result of the 2007 plea agreement entered into between Purdue and the DOJ. *See Debtors' Informational Brief*, dated September 16, 2019 [ECF No. 17], at 33.

4

- Notwithstanding the foregoing, the "Named Sacklers" warrant that they are "solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount." Sackler Settlement Agreement ¶ 16(a). This representation is startling to say the least, given the breadth and scope of lawsuits currently pending against the Sackler Families—lawsuits that, if not settled, would continue following the termination of this Court's Preliminary Injunction. It is unclear the remedy to which the DOJ would be entitled to if this warranty ultimately is determined to be false.

- Finally, paragraph 16 of the Sackler Settlement Agreement includes a litany of recitations aimed at controlling any future individual bankruptcy case commenced by a member of the Sackler Families. Taken together, and if enforceable, these recitations mean that if the Sackler Families do not receive third-party releases in these Chapter 11 Cases, and any member of the Sackler Families commences an individual bankruptcy case in the future, the payment such Sackler has made to the DOJ cannot be attacked as a fraudulent conveyance or preference, and the DOJ is not subject to the automatic stay. It is the view of the Official Committee and the NCSG that pre-waivers of the automatic stay and avoidance actions are likely unenforceable. Still, if enforced, they would improperly place the DOJ—despite its status as an unsecured creditor, and in exchange for nothing more than settling civil liability—ahead of all other unsecured creditors, including the Debtors' estates and the States, with respect to their direct claims against the Sacklers.

5. Notwithstanding a number of concerns raised by these and other provisions, however, this Limited Objection takes no position at this time regarding the propriety of the Sackler Settlement Agreement as a matter of law.[5] Instead, it seeks only certain limited modifications to any order granting the Motion. Specifically, the Official Committee and the NCSG raise the following three limited concerns regarding the form of order approving the Sackler Settlement Agreement.

6. **Anti-Secretion**. The only specific standard under which the Sackler Families have asked this Court to review the Sackler Settlement is the "anti-secretion" provision related to the Preliminary Injunction. On this issue, the Official Committee and NCSG request express

---

[5] For the avoidance of doubt, the Official Committee, the NCSG and/or other interested parties may determine that discovery in connection with the Sackler Settlement Agreement is warranted in connection with continued evaluation of, among other things, the claims against the Sacklers and any proposed release thereof under a plan of reorganization in these Chapter 11 Cases.

5

assurance that, notwithstanding the Sackler Families' request in paragraphs 10–12 of the Motion and corresponding provisions of the Sackler Settlement Agreement,[6] the $225 million payment contemplated to be made by the Sackler Families to the DOJ will ***not*** be made from funds that were transferred directly or indirectly by the Debtors to the Covered Parties.[7]

7. It goes without saying that taking $225 million of ill-gotten Purdue funds and placing it out of the reach of other creditors in favor of the DOJ is inappropriate for a number of reasons. *First*, in exchange for the myriad benefits afforded to the Sacklers and others by the Preliminary Injunction, the beneficiaries of such breathing spell agreed not to transfer property "with the intent or material effect of frustrating enforcement of any potential judgment of this Court in these chapter 11 cases or any other actions pending against them in any other court or jurisdiction." *See Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated November 20, 2019 [ECF No. 518] ¶ 13. *Second*, the Sacker Families currently are engaged in a mediation aimed towards resolution of "any and all potential claims or causes of action that may be asserted by the estate or any of the Non-Federal Public Claimants against the Covered Parties . . . or that may otherwise become the subject of releases potentially granted to the Covered Parties in these chapter 11 cases." *Order Expanding Scope of Mediation*, dated September 30, 2020 [ECF No. 1756] (the "Mediation

---

[6] Paragraph 2 of the Sackler Settlement Agreement provides that "[t]o the extent that any funds transferred to the United States in payment of the Named Sacklers' obligations in Paragraph 1 derive directly or indirectly from transfers from the Debtors, the Named Sacklers will expressly disclose these facts to the Bankruptcy Court and obtain an order from the Bankruptcy Court confirming in advance of paying the Settlement Amount that payment is not prohibited," and in paragraphs 11 and 12 of the Motion, the Sackler Families acknowledge that they intend to make such payments from such sources, asking the Court to bless this use of funds notwithstanding the effect on creditors. *See* Sackler Settlement Agreement ¶ 2; Motion ¶¶ 11-12.

[7] Since the filing of the Motion, the Official Committee and the NCSG have been engaged in discussions with the Sackler Families regarding this and other of the requested modifications identified herein. Although language has been exchanged among the parties to address this issue and the Official Committee and the NCSG remain hopeful that resolution can be achieved on a consensual basis, as of the filing of this Limited Objection, no such resolution has been reached.

Order") ¶ 3. *Finally*, the Sackler Families are very aware that, in addition to the States' direct claims against them, they are the anticipated targets of significant estate causes of action, alleging, among other things, the actual and constructive fraudulent conveyance of funds from Purdue to members of the Sackler Families and trusts held in their name.

8.      In view of the foregoing, the Sackler Families' decision to resolve the claims of certain creditors (here, the DOJ) outside the scope of mediation and ahead of the claims of other similarly situated creditors using the proceeds of direct or indirect transfers from Purdue certainly is inconsistent with the spirit, if not in direct contravention, of both the Preliminary Injunction and the Mediation Order. It also takes for granted the numerous benefits the Sackler Families have obtained (and presumably will continue to obtain or seek to obtain) by participating in the Chapter 11 Cases, including—most importantly—the sweeping releases they undoubtedly will pursue in connection with any chapter 11 plan. Indeed, there simply is no basis in fact or in law for the Sackler Families to deprive the creditors in these cases of full value for the estate causes of action by taking traceable funds or to deprive the States of the full value of their direct claims by taking such value and using it to satisfy the claims of the DOJ. Absent the language proposed herein, the Court should deny this request.

9.      **Future Sackler Family Bankruptcies.** As discussed above, paragraph 16 of the Sackler Settlement Agreement purports to establish various representations, warranties and waivers with respect to—among other things—the Sackler Families' solvency[8] and the effect of the automatic stay in any individual bankruptcy case to be commenced by any Sackler Family member in the future. The Official Committee and the NCSG submit that these provisions are likely unenforceable as a matter of bankruptcy law, but recognize that the Sackler Families have

---

[8] Among other things, neither the Official Committee nor the NCSG is aware of any legal standard for evaluating the solvency of a family, as opposed to an individual or business organization.

19-23649-shl    Doc 1856    Filed 10/27/20    Entered 10/27/20 12:09:11    Main Document
Pg 8 of 9

not put this issue before the Court at this juncture. Nevertheless, because the Debtors and States (in respect of their direct claims) are likely to be creditors in any future Sackler bankruptcy, any order granting the Motion should make explicit that the Court has not approved this or ***any other*** provision of the Sackler Settlement Agreement as a matter of law.

10. **Mutual Independence of the Settlements.**  The Official Committee and NCSG also have numerous substantive concerns regarding the Debtor Settlement, which (based on limited discussions to date) are shared by other stakeholders. Indeed, certain of these issues are of particular importance to the States. Accordingly, it is vital that any order granting the Motion clearly state that nothing in it shall affect in any way the disposition of the Debtor Settlement.[9]

## CONCLUSION

11. For the reasons set forth herein, the Official Committee and the NCSG respectfully request that the Court modify any proposed order approving the Motion to address the concerns identified *supra*, as a condition to granting any relief with respect to the Motion. The Official Committee and the NCSG reserve all rights with respect to the Motion, including the right to amend or supplement this Limited Objection, submit additional briefing, participate in any discovery and be heard at any hearing related to the Motion.

[*Signatures on following page.*]

---

[9] As noted above, the Official Committee and the NCSG have been engaged in discussions with the Sackler Families regarding the requested modifications identified in this Limited Objection. Upon information and belief, the Sackler Families may be amenable to including language in the proposed form of order approving the Sackler Settlement Agreement to address this concern. As of the filing of this Limited Objection, however, no such language has been agreed upon.

| | |
|---|---|
| Dated: New York, New York<br>October 27, 2020 | AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>By: /s/ *Arik Preis*<br>Ira S. Dizengoff<br>Arik Preis<br>Mitchell P. Hurley<br>Joseph L. Sorkin<br>Sara L. Brauner<br>One Bryant Park<br>New York, New York 10036<br>Tel: (212) 872-1000<br>Fax: (212) 872-1002<br>idizengoff@akingump.com<br>apreis@akingump.com<br>mhurley@akingump.com<br>jsorkin@akingump.com<br>sbrauner@akingump.com<br><br>*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al.<br><br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br><br>By: /s/ *Andrew Troop*<br>Andrew M. Troop<br>Jason S. Sharp (admitted *pro hac vice*)<br>Andrew V. Alfano<br>31 West 52nd Street<br>New York, NY 10019<br>Telephone: (212) 858-1000<br>andrew.troop@pillsburylaw.com<br>jason.sharp@pillsburylaw.com<br>andrew.alfano@pillsburylaw.com<br><br>*Counsel to the Ad Hoc Group of Non-Consenting States* |