DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Marc J. Tobak
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DEBTORS' STATEMENT REGARDING**
**MOTION TO CONFIRM THAT PAYMENT BY THE SACKLER FAMILIES**
**UNDER SETTLEMENT WITH THE UNITED STATES DEPARTMENT OF JUSTICE**
**IS NOT PROHIBITED BY THIS COURT**

Purdue Pharma L.P. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, "**Debtors**"), submit this statement with respect to the *Motion to Confirm that Payment by the Sackler Families under Settlement with the Department of Justice is Not Prohibited by this Court* [Dkt. No. 1833] ("**Motion**") submitted by the Raymond

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Sackler family and the Mortimer Sackler family (together, the "**Sackler Families**") and respectfully state as follows:

## STATEMENT

The resolution of the United States' civil investigation of the Sackler Families is an important step on the path to the ultimate goal of these cases: a resolution that will put the value of the Debtors' estates to work addressing the opioid crisis. The Debtors submit this statement because they believe that delaying the consummation of the agreement between the Sackler Families and the U.S. Department of Justice ("**DOJ**") risks serious and consequential delays of these cases.

The Debtors commenced these cases knowing that at least three major issues would need to be addressed in order to confirm a plan of reorganization in these cases: *first*, the value of the Debtors' estates would need to be allocated among the various claimants; *second*, the DOJ's investigations of and claims against the Debtors and the Sackler Families would need to be resolved; and *third*, an agreement would need to be reached with respect to potential claims or causes of action that may be asserted by the Debtors' estates and other claimants against the Sackler Families. The first milestone was reached after months of work in the first phase of the Court-ordered mediation in which (i) the non-Federal governmental claimants agreed among themselves that all value received by them through these chapter 11 cases would be exclusively dedicated to programs designed to abate the opioid crisis; (ii) the non-Federal governmental claimants took significant steps towards resolving the issue of value allocation among themselves; and (iii) each of the private-side creditor groups agreed to a written term sheet outlining fixed cash distributions. *See* Mediators' Report at ¶¶ 3-6 [Dkt. No. 1716]. The central components of the second of these milestones—resolution of DOJ civil claims against the Sacklers, and of civil and criminal claims against the Debtors—are now before the Court.

2

As the Court noted on October 28, the scope of relief sought by the Sackler Families is narrow.  The Sackler Families are not debtors and do not seek (or require) substantive approval of their settlement with DOJ (the "**Sackler-DOJ Settlement**").  The only issue before the Court is whether the Sackler Families should be prohibited from paying their $225 million obligation to the DOJ (the "**Sackler Payment**") due to Paragraph 13 (the "**Anti-Secretion Provision**") of the *Amended and Restated Case Stipulation among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [Dkt. No. 518] (the "**Amended UCC Stipulation**") or this Court's preliminary injunction order (the "**Preliminary Injunction Order**") which incorporates the Anti-Secretion Provision by reference.[2]  They should not.  The Sackler-DOJ Settlement is in the best interest of the Debtors' estates and should not be delayed.  So long as the final form of order proposed by the Sackler Families is acceptable to the Debtors, the Debtors support the relief requested, whether it takes the form of a determination that the Sackler Payment does not violate the Anti-Secretion Provision, or relief from the provision crafted to permit only the Sackler Payment.

## I.     The Sackler Payment Does Not Violate the Anti-Secretion Provision.

The Sackler Families' public and documented agreement to make the Sackler Payment to the DOJ is not inconsistent with the Anti-Secretion Provision.  By its plain language, the Anti-Secretion Provision bars the Sackler Families from taking action with respect to property "with the intent or material effect of frustrating enforcement of any potential judgment" in these proceedings or any other pending actions.  Amended UCC Stipulation at ¶ 13.  For over a year,

---

[2] *See, e.g.*, Fourteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction at 9, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. 19-08289 (Bankr. S.D.N.Y. Oct. 30, 2020) [Dkt. No. 214] ("All obligations under the UCC Stipulation, inclusive of obligations of any Covered Party as defined therein . . . shall remain in full force and effect so long as the Preliminary Injunction, as amended and extended, remains in effect.").

the parties have consistently referred to this language as the anti-secretion provision. *See, e.g.*, Oct. 11, 2019 Hr'g Tr. 101:14-19 (Counsel for the UCC: "The anti-secretion language is one month past the stay period; meaning, if the stay period ends, it's not like at that point the Sacklers can go secreting assets. But we have built in an extra 30 days to allow us to try to stop that and to come back to court. We thought that was an important provision to negotiate for."). The plain meaning of the word "secrete," according to Black's Law Dictionary, is to "conceal or hide away." It is therefore no surprise that the focus of the Court, the Debtors, the UCC, the Non-Consenting States Group ("the **"NCSG"**"), and all parties to the UCC Stipulation was on ensuring that the Sackler Families would not transfer a material amount of their assets in a way that would hide them from the Debtors or the Sackler Families' potential creditors (including the DOJ) and frustrate the ability of the Sackler Families' creditors, including the Debtors, to execute a judgment against the Sackler Families' assets. *See, e.g.*, *id.*; Oct. 10, 2019 Hr'g Tr. 15:14-20 (Counsel for Debtors: "Equally important, Your Honor, since the estate and all parties need and deserve comfort that should the deal not progress, the shareholders will not have used the timing of the Chapter 11 process to be able to secrete assets. The term sheet has an exhibit exclusively devoted to asset protection provisions, that will be enshrined assuming Your Honor agrees, in an order of this court."); *id.* at 18: 4-10 (Counsel for Debtors: "[T]here will be Court ordered provisions designed to ensure that the estate is not put at inappropriate risk of assets secretion or removal by shareholders during the injunction period. That period certainly should not and must not be used by any shareholder party in an attempt to make itself more judgment proof by taking actions to frustrate potential judgments."); *see also* Oct. 11, 2019 Hr'g Tr. 140:13-16, 140:25-141:8 (Counsel for the Raymond Sackler Family: "The purpose of that language is all to deal with any concerns that people might have that the Sackers are out there trying to secrete their assets during an injunction period, which

4

they're not. . . . Now, . . . the IACs are not actually an initial covered party. I mean, they're businesses. They're not parties that are going to start secreting assets. But the parties who control them are initial covered parties. Not only do they control them, they own all the economics. . . . And they are the ones who have consented to this and are not able to opt out[.]"). Indeed, in considering identical anti-secretion language with respect to Purdue's CEO, the Court noted it meant that "he's agreed that he won't put it off in a bank in Panama or wherever." *See* Dec. 4, 2019 Hr'g Tr. 121:20-21. The Sackler Families' public fulfillment of the Sackler Payment does not fall within the spirit or letter of the Anti-Secretion Provision.

## II. The Sackler-DOJ Settlement Benefits the Debtors, their Estates, and the Interests of All Creditors.

### 1. *The Sackler-DOJ Settlement Preserves Significant Value for the Debtors and Other Potential Creditors of the Sackler Families.*

The Debtors affirmatively support the Motion because the Sackler-DOJ Settlement has the effect of preserving value for the Debtors' estates. Critically, the Sackler-DOJ Settlement expressly provides that the Sackler Payment does not reduce or otherwise dilute any amounts to be paid by the Sackler Families to the Debtors or their creditors in connection with these bankruptcy cases. *See* Motion at Exhibit A ¶ 9. The obligation of the Sackler Families to contribute at least $3 billion to the Debtors' estates to in turn be put towards efforts to abate the opioid crisis, agreed upon as part of the initial term sheet (the "**Term Sheet**") between the ad hoc committee of governmental and other contingent litigation claimants (the "**Ad Hoc Committee**"), the Debtors, and the Sackler Families, remains unaltered. *Id.*; *see also* Term Sheet with Ad Hoc Committee at Exhibit A p. 6 [Dkt. No. 257].

Pursuant to the terms of the Sackler-DOJ Settlement, the deal embodied in the Term Sheet has transformed from a $3 billion or more payment to Debtors' estates subject to a dilution risk to an undiluted $3 billion plus payment to Debtors' estates and an incremental $225 million payment

5

directly to the DOJ.  The Term Sheet reflected a concern that some or all of the economic value of a settlement between the Sackler Families and the DOJ could count against (i.e., dilute) the $3 billion payment to Debtors' estates, thereby reducing the Sackler Families' net payment to the Debtors' estates and total cash payment overall.  The Term Sheet accounted for this risk of dilution by providing the Ad Hoc Committee with a unilateral right to terminate the Term Sheet on thirty days' notice "[i]f the economic terms of any such resolution [between DOJ and the Sackler Families or Debtors] are materially inconsistent with th[e Term Sheet] or otherwise materially adverse to the Debtors."  Term Sheet with Ad Hoc Committee at ¶ 10 [Dkt. No. 257].  Termination of the Term Sheet by the Ad Hoc Committee would not have been and is not in the Debtors' best interests.  Now, pursuant to the terms of the Sackler-DOJ Settlement, dilution on account of the Sackler Payment will be zero, and amounts that are not paid to the DOJ remain available for a subsequent, at least $3 billion and perhaps much larger, settlement with the Sackler Families of the estates' and other creditors' claims.

2. *The Sackler-DOJ Settlement Does Not Unfairly Prefer the DOJ Because the Preliminary Injunction Did Not Stay Any Government Investigation.*

The Debtors do not believe that the existence of the Preliminary Injunction Order would make it unfair for the Sackler-DOJ Settlement to be consummated.  The DOJ investigations are not and have never been subject to the Preliminary Injunction Order, a point the Debtors made crystal-clear in their motion seeking the Preliminary Injunction.  *See* Mem. of Law in Support of Mot. for a Prelim. Inj., at 6 n.8, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. 19-08289 (Bankr. S.D.N.Y. Sept. 18, 2019) [Dkt. No. 3] ("In addition to the Pending Actions, Purdue Pharma has been responding to subpoenas and civil investigation demands issued by various components of the DOJ.  To avoid any doubt, the Debtors' motion in no way seeks to enjoin those investigations."); *see also* Reply Mem. of Law in Support of Mot. to Extend the Prelim. Inj., at 8-

9, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. 19-08289 (Bankr. S.D.N.Y. Sept. 28, 2020) [Dkt. No. 205] ("The Preliminary Injunction . . . does not purport to enjoin criminal investigation or criminal prosecution, including by the federal government."). The key parties in interest here have understood and accepted this premise—indeed, the Amended UCC Stipulation specifically permits the Debtors to seek approval of a settlement with the DOJ while imposing an otherwise all-encompassing ban on the Debtors seeking the approval of any settlement without the UCC's consent during the first 180 days after entry of the Preliminary Injunction Order. *See* Amended UCC Stipulation at ¶ 5 (Bankr. S.D.N.Y. Nov. 20, 2019) [Dkt. No. 518] ("During the Initial Stay Period, the Debtors shall not file . . . any other motion seeking approval of any terms of a Plan or a resolution of a material portion of the Debtors' opioid litigation (other than with respect to the Department of Justice), in each case without the consent of the UCC."). Because the DOJ was never enjoined, it should not be effectively barred from resolving its civil investigation, especially because the resolution is favorable to the Debtors' estates.

| | |
|---|---|
| Dated:   November 9, 2020<br>          New York, New York | Respectfully Submitted,<br><br>*/s/ Marshall S. Huebner*<br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 450-4000<br>Facsimile: (212) 701-5800<br>Marshall S. Huebner<br>Benjamin S. Kaminetzky<br>Eli J. Vonnegut<br>Marc J. Tobak<br>Christopher S. Robertson<br><br>*Counsel to the Debtors*<br>*and Debtors in Possession* |