Eisenberg & Baum, LLP
Michael S. Quinn
24 Union Square East, Fourth Floor
New York, New York 10003
(212) 353-8700

*Counsel to the Ad Hoc Committee on Accountability*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.* [1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**THE AD HOC COMMITTEE ON ACCOUNTABILITY'S OBJECTION TO PURDUE'S
MOTION TO AUTHORIZE AND APPROVE SETTLEMENTS
BETWEEN PURDUE AND THE UNITED STATES**

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

The Ad Hoc Committee on Accountability ("Committee on Accountability"), by its undersigned counsel, objects to Purdue's motion to authorize and approve its settlement with the United States under Rule 9019 ("Purdue Settlement Motion").

The settlement should not be approved because (a) it would improperly allow Purdue and a single creditor to make a harmful decision about the future of the opioid business in America before parties to the bankruptcy can negotiate a plan and (b) the United States Government should

---

[1] The debtors in these chapter 11 cases ("**Debtors**" or "**Purdue**"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014) (collectively, the "**Bankruptcy Cases**").

1

agree to use all monies received in the settlement for opioid use abatement.

A transaction that effects a lock-up of the terms of a chapter 11 bankruptcy plan is not permitted. *In re Crowthers McCall Pattern, Inc.,* 114 B.R. 877, 887 (Bankr. S.D.N.Y. 1990). Purdue is seeking to use its Motion to obtain a Court ruling, as soon as next week, that would interfere with the Creditors' ability to negotiate a final plan. The DOJ settlement mandates the preservation of the OxyContin business under the government's protection as a Public Benefit Company ("PBC"). This requirement in the settlement is improper, corrosive to public faith in government, and offensive to the tens of thousands of families who have been harmed.

The members of the Committee on Accountability have suffered through a tragic history of Purdue's crimes and the government's complicity. Nan Goldin lost years of her life to OxyContin addiction.[2] Mr. Bisch's son was killed by the drug in 2001.[3] Ms. Van Rooyan's son was killed in 2004. At the 2007 Purdue criminal sentencing hearing Ms. Van Rooyan testified: "What I learned after Patrick's death about OxyContin and Purdue shocked and sickened me, enough that almost every day for a year I wasn't sure that I wanted to be alive."[4]

Part of what is shocking and sickening was the government's own complicity in Purdue's reprehensible behavior. According to prosecutors, the FDA allowed Purdue to make a false claim that OxyContin had less "abuse liability" than other drugs.[5] Purdue recognized the immense consequences of this false statement and wrote that it was "so valuable and promotional that it

---

[2] Thessaly La Force, *Nan Goldin Survived an Overdose to Fight the Opioid Company*, N.Y. Times (June 11, 2019), https://www.nytimes.com/2018/06/11/t-magazine/a-heroin-chic-photographers-new-project-tackling-the-opioid-epidemic.html.

[3] *U.S v. Purdue Frederick Comp.*, No. 1:07CR29 (2007-07-20) Sentencing Transcript at 7:19-10:6. Attached as Exhibit A.

[4] *Id.* at 33:23-36:5.

[5] Oct. 6, 2006 Kirk Ogrosky, *Internal Memorandum – Proposed Indictment of Purdue Pharma LP, The Purdue Frederick Company, Michael Friedman (COO), Howard R. Udell (EVP GC), Paul D. Goldenheim (EVP)*; *Conference scheduled for October 11, 2006*, United States Department of Justice. Attached as Exhibit B.

2

easily served as principal selling tool."[6] The government regulator who approved OxyContin promised Purdue that the drug would be approved long before the official process was completed. Purdue rewarded him with a $379,000-per-year job.[7]

The U.S. House of Representatives Committee on Energy & Commerce is now investigating another FDA decision to change the label for OxyContin in 2001 that led to a further tripling of OxyContin sales.[8] Richard Sackler boasted about the Sacklers' influence: "We can get virtually every senator and congressman we want to talk to on the phone in the next seventy-two hours."[9]

The Committee on Accountability does not want the government entering into the OxyContin business. For years, the only government officials who stood up against the danger of OxyContin were the state and local governments whose lawsuits forced Purdue into this bankruptcy. If those state and local governments now step into the Sackler's shoes and become the owners of some trust that owns an OxyContin PBC, then the Sacklers will have corrupted everything.

It is also important to note that the ongoing OxyContin business that would be sheltered by the government is deadly and grossly inflated by Purdue's crimes. Evidence presented in the multi-district litigation showed that more than 75% of opioids sold in America in 2018 were not for clinically justifiable uses.[10] That lines up with the conclusion by the National Bureau of Economic

---

[6] *Id.*

[7] *Id.*

[8] Jan. 13, 2020 Letter from U.S. Reps. Greg Walden, Brett Guthrie, & H. Morgan Griffith to Craig Landau. Attached as Exhibit C.

[9] Patrick Radden Keefe, *The Sackler Family's Plan to Keep Its Billions*, The New Yorker (Oct. 4, 2020), https://www.newyorker.com/news/news-desk/the-sackler-familys-plan-to-keep-its-billions.

[10] See In Re: National Prescription Opiate Litigation, Case No. 1:17-md-02804-DAP, Docket No. 3007-22, Expert Report of Meredith Rosenthal, at table 6. Attached as Exhibit D.

Research, which found that Purdue caused "65 percent of the growth in overdose death rates" in the nation from 1996 to 2017.[11] Evidence filed in the bankruptcy shows that the momentum of dangerous OxyContin sales continues today, regardless of the superficial decision to fire Purdue's sales force, and that "thousands of Purdue patients will die of overdoses during this case."[12]

If the Court requires the formation of an OxyContin PBC, each future death will be on the heads of state and local governments: our mayors, governors, and attorneys general.

Many creditors, citizens, and policymakers agree that there should not be a PBC, and that Purdue's assets should be sold to a private owner instead. On October 14, 2020, twenty-five state attorneys general wrote a public letter explaining their opposition to the PBC: "A business that killed thousands of Americans should not be associated with government. Instead, the business should be sold to private owners, so the government can enforce the law against it with the same impartiality as for any other company."[13]

On October 20, 2020, U.S. Senator Tammy Baldwin wrote a public letter explaining her opposition to the PBC:

> Families who have lost loved ones to OxyContin overdoses . . . are not looking for the government to be tied to an opioid company, especially one with a history of gross negligence and misconduct. Families are seeking justice, and assurances that Purdue will be held accountable for the deaths of their loved ones. I am extremely concerned by reports that the DOJ, under your leadership, intends to sign agreements that would require that Purdue be preserved as a 'public benefit company' which would sell OxyContin on behalf of cities and state governments. I am concerned that such a settlement could suggest a preference for the wishes of the billionaire owners of a private company over the interests of the American people.[14]

---

[11] Austin Frakt, *Damage From OxyContin Continues to Be Revealed*, N.Y. Times (Apr. 13, 2020), https://www.nytimes.com/2020/04/13/upshot/opioids-oxycontin-purdue-pharma.html.

[12] Public Health Filing ECF. 630, The States' Notice of Public Health Information to Protect Purdue Patients, at 2.

[13] Oct. 14, 2020 Letter from 25 State Attorneys Generals to Attorney General William Barr. Attached as Exhibit E.

[14] Oct. 20, 2020 Letter from U.S. Senator Tammy Baldwin to Attorney General William Barr. Attached as Exhibit F.

On October 22, 2020 the editorial board of the *Washington Post* declared: "This story should not end with the government somehow in business selling OxyContin."[15]

On November 10, 2020, fifteen U.S. Senators sent a letter to Attorney General Barr asking that the Justice Department "defer court approval of the proposed agreement until the appropriate stakeholders have addressed public policy concerns associated with the agreement."[16] The Senators continued that the existing settlement terms are "an inappropriate use of federal authority."[17]

Meanwhile, on the same day, forty-six members of the U.S. House of Representatives wrote to Attorney General Barr and asked the Justice Department to ensure that a public benefit company requirement "is not included in any final settlement agreement to be approved by the courts."[18] The Representatives wrote that "never in American history have federal courts used the bankruptcy process" to impose this kind of requirement.[19]

The Committee on Accountability has proven its willingness to negotiate with other stakeholders, including the debtors, on tough issues. This month, we joined many parties in negotiating and reaching a consensual resolution on the issue of bonus awards for Purdue executives. The Court should decline to grant Purdue's motion and allow stakeholders their right to negotiate an appropriate plan that addresses the issues raised in this objection.

Lastly, the Committee on Accountability believes the federal government should commit

---

[15] Editorial Board, *The maker of OxyContin admits to serious crimes. Why is no one going to prison?*, Wash. Post (Oct. 22, 2020), https://www.washingtonpost.com/opinions/the-maker-of-oxycontin-admits-to-serious-crimes-why-is-no-one-going-to-prison/2020/10/2 2/1a34f76e-1472-11eb-ad6f-36c93e6e94fb_story.html.

[16] Nov. 10, 2020 Letter from fifteen U.S. Senators to Attorney General William Barr. Attached as Exhibit G.

[17] *Id.*

[18] Nov. 10, 2020 Letter from forty-six U.S. Representatives to Attorney General William Barr. Attached as Exhibit H.

[19] *Id.*

5

to use all monies received from Purdue for opioid abatement. The multiparty mediation in this case has already proven that the process of negotiation can lead to results that are good for all. The best result so far has been the commitment by other creditors to spend funds on abatement. The federal government should do the same.

**WHEREFORE**, the Committee on Accountability respectfully submits that the Purdue Settlement Motion should be denied.

Dated: November 10, 2020  
      New York, NY

Respectfully Submitted,

Eisenberg & Baum, LLP

By: /s/ Michael S. Quinn  
Michael S. Quinn (mq-1640)  
24 Union Square East, Fourth Floor  
New York, New York 10003  
(212) 353-8700  
mquinn@eandblaw.com  
prachmuth@eandblaw.com  
ebaum@eandblaw.com

*Counsel to Ad Hoc Committee on Accountability*