October 14, 2020

The Honorable William P. Barr
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Dear Attorney General Barr:

We write to ask you to revise a proposed DOJ settlement agreement that reportedly would wrongly mandate that Purdue Pharma's infamous OxyContin business be preserved as a public trust.  A business that killed thousands of Americans should not be associated with government. Instead, the business should be sold to private owners, so the government can enforce the law against it with the same impartiality as for any other company.

States sued Purdue Pharma and its billionaire owners, the Sacklers, because their illegal conduct caused much of the national opioid crisis.  Their misconduct also forced the company into bankruptcy, and the States and DOJ are participating in the bankruptcy case with the shared goals of distributing Purdue's assets to compensate people who were injured and to abate the opioid epidemic.

A key issue in the bankruptcy is the future of Purdue's OxyContin business.  Purdue and the Sacklers proposed that the government should step into their shoes and take over their business of selling OxyContin.  They want their OxyContin company preserved as a family legacy and a "public trust."  Purdue explained: "We're turning [the company] into a public trust organization … It sells a very valuable product called OxyContin."[1]

We rejected Purdue's proposal.  We believe that Purdue's assets should be sold to new owners in the private sector.  The role of government in any OxyContin business should be to enforce the law, just as against any other company.  The public deserves assurance that no opioid business is given the special protection of being placed under a public umbrella.  Although it may take time to find a private sector buyer, the public should be confident that public officials are seeking to avoid having special ties to an opioid company, conflicts of interest, or mixed motives in an industry that caused a national crisis.

In the recent bankruptcy of another notorious opioid company, the assets of Insys Therapeutics Inc. were sold to a private buyer, pursuant to court approval, and our governments were not forced to enter the opioid business.[2]  That is a normal, lawful result in a bankruptcy, and the DOJ should encourage Purdue to follow that same path.  Compared to Purdue's proposal, selling the

---

[1] Berkeley Lovelace Jr., *Purdue Pharma chair: Best Way To Fight Opioid Crisis Is For OxyContin Maker To Stay In Business*, CNBC, Sept. 16, 2019, at https://www.cnbc.com/2019/09/16/purdue-pharma-chairman-steve-miller-on-bankruptcy-of-oxycontin-maker.html.

[2] *See* Nate Raymond, *Drugmaker Insys Wins Bankruptcy Court Approval To Sell Off Opioid*, Reuters, Sept. 19, 2019, at https://www.reuters.com/article/us-insys-opioids-bankruptcy/drugmaker-insys-wins-bankruptcy-court-approval-to-sell-off-opioid-idUSKBN1W42KY.

1

business to a private owner may also deliver more upfront money that cities and States can use to abate the opioid epidemic. At least one potential buyer has already come forward to make a bid to buy Purdue's drug businesses, which would keep the businesses in private ownership. Qualified buyers should be permitted to bid for Purdue's assets.

Instead, the press has reported that DOJ intends to sign agreements that would purport to prohibit the sale of Purdue's businesses to private owners, and would require that Purdue be preserved as a "public benefit company" that will sell OxyContin on behalf of cities and state governments.[3]

We ask you to reverse that decision for three reasons. First, as we explained above, the Sacklers' proposal to cloak the OxyContin business in public ownership compromises the proper roles of the private sector and government. Thousands of Americans have died, and it is a top priority of every State to enforce the law against the perpetrators whose misconduct caused the opioid crisis. The last business our States should protect with special public status is this opioid company.

Second, even if DOJ disagrees with the principles that keep government out of the opioid business, DOJ should not impose its view on States, cities, families, and all other stakeholders in the bankruptcy. Instead, the relevant parties in the bankruptcy should be permitted to negotiate without DOJ putting its thumb on the scale.

Third, the States will continue to oppose the Sacklers' plan. When a plan is proposed in the bankruptcy, States and all other creditors can vote against a plan they believe is wrong. Even after that, because the Sacklers seek extraordinary releases of the States' claims for their individual, personal liability, States have powerful arguments to challenge the confirmation of the Sacklers' plan in the Bankruptcy Court and every court above it.[4]

There is no need for DOJ to require a special status for the Sackler's OxyContin business. If DOJ insists that the Sacklers get their way and their OxyContin business is elevated into a public trust, Americans will question whether billionaires bought special treatment in this case, while working families across the country suffered.

---

[3] Mike Spector & Jessica DiNapoli, *OxyContin Maker Purdue Nears Guilty Plea Agreement In U.S. Criminal Probe - Sources*, Reuters, Oct. 7, 2020, at https://www.reuters.com/article/us-purdue-pharma-investigations-opioids/exclusive-oxycontin-maker-purdue-nears-guilty-plea-agreement-in-u-s-criminal-probe-sources-idUSKBN26S1P2 ("The Justice Department is prepared to waive a large portion of its $2 billion forfeiture claim as long as Purdue meets certain conditions. The first is that Purdue steer significant financial sums for combating the opioid epidemic to U.S. communities suing it over the crisis, two people said. The other is that it receive court approval for a reorganization plan transforming it into a 'public benefit company' run on behalf of those communities and no longer controlled by the Sacklers."). The same article also reported that details of the proposed settlement "remain in flux."

[4] States and the DOJ agree that bankruptcy courts should never force governments to release these claims. *See* Brief for the United States as Amicus Curiae at 12, *Lynch v. Mascini Holdings, Ltd. (In re Kirwan Offices S.a.R.L.)*, Case No. 18-3371 (2d Cir. Oct. 7, 2019) ECF No. 119 ("third-party releases are impermissible"); *id.* at 15 n.3 ("Moreover, the government's view is that, even assuming that releases may be appropriate in certain circumstances, no such releases should ever apply to the government, as its interests are distinct from those of ordinary creditors or other outsiders who may have claims against participants in the bankruptcy process. For example, no bankruptcy court order should release non-debtors from their obligations under criminal laws, tax laws, environmental laws, or other public health and safety laws….").

We ask you to work with us to keep the OxyContin business in the private sector, secure money to abate the crisis, and hold the perpetrators accountable.

Respectfully,

XAVIER BECERRA
California Attorney General

PHILIP J. WEISER
Colorado Attorney General

WILLIAM TONG
Connecticut Attorney General

KATHLEEN JENNINGS
Delaware Attorney General

KARL A. RACINE
District of Columbia Attorney General

CLARE E. CONNORS
Hawai'i Attorney General

LAWRENCE WASDEN
Idaho Attorney General

KWAME RAOUL
Illinois Attorney General

TOM MILLER
Iowa Attorney General

AARON M. FREY
Maine Attorney General

BRIAN E. FROSH
Maryland Attorney General

3

*[signature]*

MAURA HEALEY
Massachusetts Attorney General

*[signature]*

KEITH ELLISON
Minnesota Attorney General

*[signature]*

AARON D. FORD
Nevada Attorney General

*[signature]*

JANE E. YOUNG
New Hampshire Deputy Attorney General

*[signature]*

GURBIR S. GREWAL
New Jersey Attorney General

*[signature]*

LETITIA JAMES
New York Attorney General

*[signature]*

JOSHUA H. STEIN
North Carolina Attorney General

*[signature]*

ELLEN F. ROSENBLUM
Oregon Attorney General

*[signature]*

JOSH SHAPIRO
Pennsylvania Attorney General

*[signature]*

PETER F. NERONHA
Rhode Island Attorney General

*[signature]*

THOMAS J. DONOVAN, JR.
Vermont Attorney General

*[signature]*

MARK R. HERRING
Virginia Attorney General

*[signature]*

BOB FERGUSON
Washington Attorney General

*[signature]*

JOSHUA L. KAUL
Wisconsin Attorney General