Congress of the United States
Washington, DC 20515

November 10, 2020

The Honorable William Barr
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Dear Attorney General Barr:

We write today to express our serious concerns with the Department of Justice's (DOJ) recently announced settlement with Purdue Pharma and members of the Sackler family. While we have several concerns about the adequacy of the entire settlement, we strenuously object to the provision that would convert Purdue Pharma into a so-called "public benefit company" and urge you to ensure this provision is not included in any final settlement agreement to be approved by the courts.

The idea to convert Purdue Pharma into some form of public trust originated with the Sackler family as a way to artificially inflate the size of their punishment by counting the public trust's future sales of OxyContin as part of the value the Sacklers must forfeit. There is no better example of the success of this public relations strategy than the Department of Justice's own settlement announcement. While headlines announced Purdue's $8 billion settlement, nearly a quarter, or $1.775 billion, of this figure is actually a "credit" DOJ is providing Purdue "[b]ased on the value that would be conferred to State and local governments" through the public benefit company.[1] In other words, this proposal is a mirage designed to help the Sacklers keep billions in ill-gotten gains by deceiving the American people into believing they have already been severely punished.

Granting the Sacklers' wish to convert their company into some form of a public trust has no precedent in American history. The Chairman of the Board of Directors for Purdue Pharma has suggested this proposal is similar to when the federal government took an ownership interest in AIG following the 2008 financial crisis.[2] But that temporary arrangement, the functional equivalent of a loan, was only to ensure the federal government was repaid for the taxpayer-funded financial assistance provided to AIG. Once repayment occurred, the ownership interest was terminated. In contrast, the Sackler/DOJ proposal would permanently transfer the ownership of Purdue Pharma to a trust operated for the benefit of state and local governments in order to

---

[1] United States Department of Justice press release. *Justice Department Announces Global Resolution of Criminal and Civil Investigations with Opioid Manufacturer Purdue Pharma and Civil Settlement with Members of the Sackler Family.* October 21, 2020.
[2] Steve Miller. *Here's what critics of the Purdue Pharma settlement get wrong.* The Washington Post. October 27, 2020.

1

resolve Purdue's financial liability for intentionally addicting hundreds of thousands of unsuspecting Americans to powerful opioids for profit.

Another important contrast is that in 2008 the federal government imposed the ownership interest obligation on itself. Here the federal government is attempting to resolve Purdue's financial liability to the federal government by forcing state and local governments to assume an indefinite obligation to direct the operations of an opioid manufacturer.

On October 14, 2020, 25 state Attorneys General wrote to you explicitly asking DOJ not to mandate that Purdue be preserved as a public benefit company. As policymakers, we agree with the states' argument that the public trust proposal creates the potential for, or at the least the appearance of, a conflict of interest between a state's ownership interest in the public trust and its law enforcement obligations. The proper role of government in the production of prescriptions opioids is to enforce regulatory compliance, prevent diversion, and hold perpetrators liable for violations. An ownership interest in the production of OxyContin would mean that states may be forced to balance these enforcement interests with their interest in the products or revenue produced by the public trust. Moreover, entangling government with this company may also create conflicts and doubts regarding the government's ability to regulate other companies in the industry that are its suppliers, customers, and competitors. This apparent conflict will undermine the public's faith in state enforcement activity.

Never in American history have federal courts used the bankruptcy process to achieve this outcome. That is why there is so much confusion and uncertainty about how this public benefit corporation will operate. No one knows the answers to simple questions like: Who would sit on the board of directors? Who would receive the profits from the sale of OxyContin? How would profits be distributed? These are questions of policy that must be resolved by Congress, not the courts. But Congress has never addressed these issues because state ownership of private business has never been considered an appropriate outcome of bankruptcy proceedings. To force the court to create this new bankruptcy outcome would set a dangerous precedent.

Finally, injecting this novel and confusing issue into an already complex bankruptcy process will only further delay the financial assistance state and local governments need to respond to the harms caused by Purdue's illegal actions. Final resolution of Purdue's bankruptcy will be delayed, not only by forcing the court to create an entirely new legal framework for the operation of a public benefit corporation, but also by the appeals that will inevitably flow from the opposition of half the states.

The solution to this problem is simple: reject the Sackler family's public relations strategy to fabricate a novel legal solution and allow the court to conclude the bankruptcy process by selling Purdue Pharma to a new private owner. While following established bankruptcy law may reduce the settlement headlines, it will hasten financial assistance to the victims of the Sackers' crimes, it will prevent states from maintaining an indefinite association with OxyContin, it will ensure impartiality in government enforcement actions, and it will help maintain the public's trust that the rules were not bent to protect billionaires.

Thank you for your attention to this important matter.

Sincerely,

| | | | |
|---|---|---|---|
| Katherine Clark<br>Member of Congress | Hal Rogers<br>Member of Congress | Ann McLane Kuster<br>Member of Congress | David Trone<br>Member of Congress |

| | |
|---|---|
| Gilbert R. Cisneros, Jr.<br>Member of Congress | Barbara Lee<br>Member of Congress |
| Ayanna Pressley<br>Member of Congress | James P. McGovern<br>Member of Congress |
| Stephen F. Lynch<br>Member of Congress | Jahana Hayes<br>Member of Congress |
| Joseph P. Kennedy, III<br>Member of Congress | André Carson<br>Member of Congress |
| Brian Fitzpatrick<br>Member of Congress | Peter Welch<br>Member of Congress |
| Bill Foster<br>Member of Congress | Mark DeSaulnier<br>Member of Congress |
| Rosa L. DeLauro<br>Member of Congress | David B. McKinley, P.E.<br>Member of Congress |
| Marcy Kaptur<br>Member of Congress | Jim Himes<br>Member of Congress |
| Joe Courtney<br>Member of Congress | Joe Neguse<br>Member of Congress |

3

| | |
|---|---|
| John P. Sarbanes<br>Member of Congress | John B. Larson<br>Member of Congress |
| William R. Keating<br>Member of Congress | Jason Crow<br>Member of Congress |
| Lori Trahan<br>Member of Congress | Lucille Roybal-Allard<br>Member of Congress |
| Bobby L. Rush<br>Member of Congress | Peter A. DeFazio<br>Member of Congress |
| Jan Schakowsky<br>Member of Congress | Kathy Castor<br>Member of Congress |
| Katie Porter<br>Member of Congress | Madeleine Dean<br>Member of Congress |
| Chris Pappas<br>Member of Congress | Zoe Lofgren<br>Member of Congress |
| Angie Craig<br>Member of Congress | David N. Cicilline<br>Member of Congress |
| Max Rose<br>Member of Congress | Jackie Speier<br>Member of Congress |
| Gerald E. Connolly<br>Member of Congress | Pramila Jayapal<br>Member of Congress |
| Tony Cárdenas<br>Member of Congress | Ted W. Lieu<br>Member of Congress |
| Raja Krishnamoorthi<br>Member of Congress | Suzanne Bonamici<br>Member of Congress |

4