AKIN GUMP STRAUSS HAUER &
FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P.*, et al.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

---

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT REGARDING MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING SETTLEMENTS BETWEEN THE DEBTORS AND THE UNITED STATES AND REQUEST FOR CERTAIN MODIFICATIONS IN THE PROPOSED FORM OF ORDER APPROVING THE SAME**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement and request for certain modifications in the proposed form of order (the "Statement and Request for Modification") in response to the *Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United States*, dated October 12 [ECF No. 1828] (the "Motion").[2] In support of this Statement and Request for Modification, the Official Committee respectfully states as follows.

## STATEMENT AND REQUEST FOR MODIFICATION

1. The Debtors seek approval of the Plea Agreement and Settlement Agreement (collectively, the "Proposed DOJ Resolution"), which purport to resolve all civil and criminal claims asserted against the Debtors by the United States Department of Justice (the "DOJ"). Specifically, pursuant to the Plea Agreement, the Debtors will plead guilty to three felony counts stemming from their actions between 2007 and 2018; and the DOJ will accept a $2 billion forfeiture judgment, $1.775 billion of which the DOJ will forgo upon the satisfaction of certain conditions precedent discussed in further detail herein.[3] In addition, the DOJ will receive a cash payment in the amount of $225 million (the balance of the forfeiture judgment) and will be entitled to an unsecured claim against the Debtors' estates in the approximate amount of $6.344 billion, which claim will be classified separately under a plan and entitled to "fair and equitable" treatment.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Attached to the Motion are, among other things, a plea agreement between the Debtors and the United States Department of Justice [Ex. B] (the "Plea Agreement") and a civil settlement agreement between the Debtors and the United States [Ex. D] (the "Settlement Agreement").

[3] Specifically, the DOJ will treat $1.775 billion in recovery to the public creditors as a credit against its agreed forfeiture claim.

2

2.  The Proposed DOJ Resolution is a monumental step in both these Chapter 11 Cases and the broader opioid world, and one that should not be taken lightly.  Indeed, notwithstanding Purdue's enduring efforts to defend against liability, the Debtors are now ***pleading guilty to multiple serious crimes, for the second time in 14 years***—this time including an admission that they continued to engage in fraud *even while they were subject to a five-year Corporate Integrity Agreement*.  And, importantly, the Debtors have agreed to the contemplated terms without securing criminal or civil releases for any former or current board members or officers.  Moreover, the Official Committee believes that the favorable financial terms of the Proposed DOJ Resolution (to the extent they remain intact with the consent of numerous parties in interest or are modified as set forth herein), coupled with the Official Committee's ongoing investigation efforts, will result in significant value being available to distribute to the Debtors' other creditors and abate the opioid crisis.  Finally, the Official Committee believes that resolution of the United States' claims is a vital step towards the Debtors' ultimate restructuring, given that the proposed settlement will (in its current formulation, and if the non-federal governmental creditors consent to the current structure or it is modified as set forth herein) ameliorate the threat of dilution posed by a staggering DOJ claim.

3.  Notwithstanding the clear progress signified by the Proposed DOJ Resolution, the Official Committee has five concerns in respect of the contemplated settlement.  The Official Committee raised these concerns with the Debtors and other creditor constituencies prior to the objection deadline for the Motion.  In connection with these ongoing discussions among the parties, the Debtors granted the Official Committee a one-day extension of the applicable deadline to file this Statement and Request for Modification.  Although the dialogue among the parties has been productive, it has not assuaged the Official Committee's apprehensions.  Accordingly, the Official

Committee submits this Statement and Request for Modification to request that each of the Official Committee's concerns be addressed prior to entry of any order approving the Proposed DOJ Resolution.[4]

4.      **Public Benefit Company Structure as a "Poison Pill."** The Proposed DOJ Resolution expressly contemplates—and, indeed, seems to require—that any plan of reorganization pursued by the Debtors include that the Debtors reorganize as a public benefit corporation (or an entity with a similar mission) following emergence from chapter 11. *See* Plea Agreement at 9–10; Settlement Agreement ¶ 8(e)–(f). By contrast, should the Debtors pursue any other route to emergence, the Debtors propose to *formally concede* that: "the United States shall retain the full amount of the [$2 billion] Forfeiture Judgment as an allowed superpriority administrative expense claim." *See* Plea Agreement, at 10. In such event, the Forfeiture Claim could destroy the value predicates upon which the Debtors' creditors were able to resolve allocation disputes during the first phase of ongoing mediation.

5.      If the Chapter 11 Cases were in a different posture, with creditors in general agreement on a structure for the reorganized Debtors, the Official Committee might not take issue with these provisions. In the present circumstances, however, and as the NCSG has noted in its objection, the future of the Debtors' business is being addressed in connection with ongoing mediation.[5] Moreover, the NCSG—representing approximately 50% of the Debtors' residual owners—is staunchly opposed to any provision of the Proposed DOJ Resolution requiring that the

---

[4] The Official Committee continues to engage in discussion with the Debtors and representatives of both the Non-Consenting State Group ("NCSG") and the Consenting Ad Hoc Committee ("CAHC") regarding these concerns and remains committed to a consensual resolution of these issues to the extent feasible. The Official Committee is also aware that several of these issues identified in this Statement and Request for Modification have been raised by other parties in interest in their objections and responses to the Motion.

[5] *See, e.g.*, Transcript of October 28, 2020 Hearing at 65:14–19 ("[Mr. Troop]: We are now in the midst of mediating, particularly, the Sackler issues. And together with that . . . the question about the future of Purdue post-reorganization.").

4

Debtors emerge as a public benefit company. Accordingly, and in view of the lack of support for the Debtors' desired path forward among the estates' residual owners, the Official Committee submits that the Debtors should consider in good faith other available alternatives, including the prospect of a private purchaser offering sufficient value for Purdue's assets and agreeing to manage the enterprise in a socially, morally and ethically responsible manner (and taking into account any other non-federal governmental creditor requirements).

6. The Official Committee has not, as of the filing of this Statement and Request for Modification, formed a final view on the appropriateness of Purdue's emergence from chapter 11 as a public benefit company or the States' ownership of such an entity; nor has it fully analyzed the prospect of a third party owning reorganized Purdue. However, in light of its own equivocal views and the concerns expressed by the NCSG, the Official Committee submits that it is incongruous for the preferences of one creditor (here, the DOJ) regarding the future business and corporate structure of the reorganized Debtors to be forced upon all other creditors through a motion to approve a compromise under Federal Rule of Bankruptcy Procedure 9019, rather than a full and transparent plan process.[6] Indeed, as currently drafted, the public benefit company provisions of the Proposed DOJ Resolution are akin to a "poison pill," cautioning creditors that any challenge to such an outcome necessarily will result in the catastrophic dilution of creditors' claims. As such, the Proposed DOJ Resolution would ***irrevocably*** and inappropriately commit the

---

[6] The Debtors' attempt to enshrine their (and apparently the DOJ's) preferred restructuring transactions in the Proposed DOJ Resolution is precisely the sort of *sub rosa* plan that cannot be approved in a bilateral settlement. *See Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating Co.)*, 466 (2d Cir. 2007) ("The reason *sub rosa* plans are prohibited is based on a fear that a debtor-in-possession will enter into transactions that will, in effect, **short-circuit the requirements of [c]hapter 11 for confirmation of a reorganization plan**.") (emphasis added) (internal quotation marks and alterations omitted); *see also Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983) (settlement agreement was *sub rosa* plan where it "had the practical effect of dictating some of the terms of any future reorganization plan"). Dictating not only the consideration to be paid to creditors, but the very structure of the reorganized Debtors' business, is precisely the danger of which the *Iridium* court warned.

reorganized Debtors to becoming a public benefit company (or entity with a similar mission), regardless of the wishes of any creditor other than the federal government.

7. Therefore, the Official Committee requests that any order granting the Motion make clear that: (i) approval of the economic terms (without the poison pill construct) of the Proposed DOJ Resolution expressly does not require the Debtors to reorganize as a public benefit company (or entity with a similar mission); and (ii) notwithstanding anything in the Proposed DOJ Resolution, the corporate form and ownership of the Debtors' assets following emergence from chapter 11 should be resolved by consensual negotiation among the Debtors, their creditors (including the States and the DOJ, among others) and the Official Committee.

8. **Forfeiture Claim.**  The $2 billion "superpriority administrative expense claim" contemplated to be granted to the United States under the Proposed DOJ Resolution is not only inappropriate as a component of the contemplated public benefit structure.  It also, as noted by numerous parties in interest, contravenes bankruptcy law to the extent the Debtors seek to classify and guarantee payment of this claim prior to and outside of a plan of reorganization.

9. The relative priority of claims, including those of the federal government, should be subject of discussions among all creditors in connection with negotiation of a plan, not bilateral negotiations between the Debtor and a single creditor.  Indeed, it is not clear that the Debtors have the authority under the Bankruptcy Code in the first instance to grant a "superpriority administrative expense claim," or otherwise designate the priority of a claim arising from *prepetition* conduct, outside the context of a plan.  *Cf.* 11 U.S.C. § 364 (authorizing the incurrence of *new* debt as an administrative expense).

10. Admittedly, the Plea Agreement and Settlement Agreement are ambiguous with regard to *when* the DOJ would become entitled to the Forfeiture Claim.  On the one hand, the Plea

6

Agreement provides that "the Forfeiture Judgment shall be deemed to have the status of an allowed superpriority administrative expense claim in the Purdue Bankruptcy with priority over any and all claims and administrative expenses of any kind," and further explains that if a plan is not confirmed that provides for a public benefit company (or entity with a similar mission), then "the United States will retain the full amount of the Forfeiture Judgment as an allowed superpriority administrative expense claim." *See* Plea Agreement, at 8-9. On the other hand, the proposed form of order provides that "***[i]f the District Court approves the Plea Agreement***, the United States ***shall*** have an allowed superpriority administrative expense claim against PPLP in the amount of $2.0 billion." Proposed Order ¶ 3 (emphasis added). While the Plea Agreement itself provides that the District Court will not hold a hearing to approve such agreement until after confirmation of a plan, *see* Plea Agreement at 4, the Official Committee nevertheless is concerned that the language in the Debtors' proposed form of order could be understood as a preliminary determination that the Forfeiture Claim is entitled to "superpriority administrative expense" status ***as of the entry of such order.***

11.    In light of the foregoing, the Official Committee requests that, for the avoidance of doubt, any order granting the Motion explicitly provide that the Court is making no finding as to the priority or allowance of the Forfeiture Claim or any other claim. Alternatively, the DOJ should agree to eliminate the "poison pill" construct from the settlement agreements.

12.    **Effect on Phase I of Mediation**. As this Court is aware, Phase I of the mediation resulted in agreements in principle among various private-side creditor groups and the public-side creditors. As stated in the Mediators' Report and noted by the NCSG, many of the term sheets documenting these resolutions contain a condition precedent that requires the Debtors to reach a

7

resolution with the DOJ that is satisfactory to the public-side creditors (the "DOJ CP").[7] Upon information and belief, the DOJ CP was intended to ensure that the claims held by the public claimants—which are the residual owners of the Debtors' estates, and therefore bear the entire risk of dilution by any claim asserted by the United States—would not be so diluted as to negate the economic terms of the settlements reached in mediation.

13. Now that the terms of the Proposed DOJ Resolution have come to light, creditors can rest assured that any economic dilution of public claims by the Proposed DOJ Resolution may not be significant, ***but only to the extent that*** (i) the DOJ does not receive a $2 billion administrative priority claim[8] and (ii) the approximately $6.3 billion unsecured claim to which the DOJ would be entitled does not materially dilute the public claimants' unsecured claim pool.

14. In view of the foregoing uncertainties, the Official Committee sought confirmation from public creditors that the Proposed DOJ Resolution satisfies the DOJ CP. Unfortunately, but consistent with the objection filed by the NCSG, the public creditors (both the NCSG and the CAHC) have confirmed that any such confirmation is "premature" at this time.

15. Absent clarity on these issues, the Court is being asked to approve the Proposed DOJ Resolution under circumstances that may permit the public side creditors to argue that the term sheets agreed upon with the private-side creditor groups are no longer binding because the DOJ CP has not been satisfied.[9] Such a result would be catastrophic to the trajectory of these cases, as a more than six-month and hard-fought mediated resolution of allocation disputes would unravel.

---

[7] *See Mediators' Report*, dated September 23, 2020 [ECF No. 1716] ¶ 12 ("Three of the four term sheets also are conditioned on resolution of the United States' claims on terms reasonably acceptable to the Non-Federal Public Claimants, and email correspondence with respect to the fourth term sheet addresses this issue as well.").

[8] Assuming the DOJ does not receive such a claim, the Proposed DOJ Resolution contemplates that the DOJ will treat $1.775 billion of recovery to the public creditors as a credit against its agreed Forfeiture Claim.

[9] For the avoidance of doubt, the Official Committee believes that the public-side creditors, including the NCSG, can acknowledge that the Proposed DOJ Resolution satisfies the DOJ CP while objecting on other grounds.

Indeed, it would have the potential to put all creditors in these cases back to a proverbial square one. The Official Committee therefore respectfully requests that the Court require, as a condition to approval of the Proposed DOJ Resolution, a commitment from the public-side creditors not to seek to rescind or otherwise depart from the term sheets agreed upon in the mediation on the ground that the DOJ CP is not satisfied.

16. **Federal Government Commitment To Use Funds for Abatement.** The $225 million contemplated to be paid to the DOJ is—without question—a very material sum. Moreover, if approved, the contemplated settlements would facilitate payment in respect of the DOJ's claims long before all other claims are satisfied.

17. Therefore, the Official Committee renews the request it raised regarding the Sackler Settlement, namely that the DOJ provide assurance that the funds received will be used to promptly to address needs for community recovery, peer support, prevention, treatment, and recovery relating to the opioid epidemic or otherwise explain how such funds will be expended.[10]

18. **Document Repository.** All creditors (and this Court) appear to agree that a repository of information is a desirable and important outcome in these Chapter 11 Cases.[11] The Proposed DOJ Resolution, as such, is not in conflict with the creditors' goal of broad disclosure, but the scope of the contemplated repository requires some clarification in this context. Specifically, the Debtors assert that "[o]nce the . . . plan has become effective, the Debtors will create and host a public document repository containing *non-privileged* documents in their

---

[10] *See Further Statement Regarding Notice by the Sackler Families of Settlement with the United States Department of Justice and Motion to Confirm that Payment by the Sackler Families Under Settlement with the Department of Justice Is Not Prohibited by this Court*, dated November 3, 2020 [ECF No. 1893].

[11] *See, e.g.*, Transcript of October 28, 2020 Hearing at 30:20–22 (counsel for the Debtors) ("There will be a large, meaningful, fully public repository of documents in this case when it is over as these companies emerge."); Transcript of October 11, 2019 Hearing at 65:2–3 (the Court) ("[T]here's a legitimate public interest in knowing what happened with Purdue.").

possession, custody, or control that they have produced to the United States and that the United States identifies as relating to the charges . . . , which will be publicly available at an easily identifiable and accessible website." Motion ¶ 3 (emphasis added); *see also* Plea Agreement, at 10 (providing that the document repository will include only "***non-privileged documents*** in Purdue's possession, custody, or control which it has produced to the Department and that the Department identifies as relating to the charges asserted in the information and the alleged civil violations.") (emphasis added).

19. While the Official Committee certainly supports the establishment of a repository, the current proposal falls well short insofar as it requires deference to both the Debtors' privilege determinations and the government's view of "relevance." The Official Committee therefore submits that parties in interest must have sufficient assurance that the document repository contemplated by the Proposed DOJ Resolution will not be in lieu of the broader repository sought by other parties in interest, and that nothing in the Proposed DOJ Resolution will be interpreted to prevent any successor to the Debtors from publicizing a wider universe of documents. To achieve this result, the Official Committee requests that any order granting the Motion be subject to a proviso indicating that nothing therein shall in any way limit: (i) the scope of any repository to be established in connection with a future plan of reorganization; or (ii) the authority of any successor to the Debtors to release documents.

[*The remainder of this page has been left blank intentionally.*]

## **CONCLUSION**

20. For the reasons set forth herein, the Official Committee respectfully requests that the Court modify any proposed order approving the Motion to address the concerns identified *supra*, and require the requested confirmations from the public-side creditors prior to approval of the Proposed DOJ Resolution. The Official Committee further submits that absent such modifications and the confirmations requested herein, an adjournment of the hearing on the Motion may be appropriate to allow all parties in interest—including the DOJ, the NCSG, the CAHC, the Official Committee and the Debtors—to continue discussions regarding the future of Purdue and the Proposed DOJ Resolution. The Official Committee reserves all rights with respect to the Motion, including the right to amend or supplement this Statement and Request for Modification, submit additional briefing, participate in any discovery and be heard at any hearing related to the Motion.

Dated: New York, New York
       November 11, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ *Arik Preis*
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al.