| | |
|---|---|
| Gerard Uzzi, Esq.<br>Alexander B. Lees, Esq.<br>**MILBANK LLP**<br>55 Hudson Yards<br>New York, New York 10001<br>Telephone:    (212) 530-5000<br>Facsimile:    (212) 530-5219 | Jasmine Ball, Esq.<br>Maura Kathleen Monaghan, Esq.<br>Jeffrey J. Rosen, Esq.<br>**DEBEVOISE & PLIMPTON LLP**<br>919 Third Ave.<br>New York, NY 10022<br>Telephone:    (212) 909-6000<br>Facsimile:    (212) 909-6836 |
| Gregory P. Joseph, Esq.<br>Mara Leventhal, Esq.<br>**JOSEPH HAGE AARONSON LLC**<br>485 Lexington Avenue, 30th Floor<br>New York, New York 10017<br>Telephone:    (212) 407-1200<br>Facsimile:    (212) 407-1280 | *Counsel for the Mortimer Sackler Family* |

*Counsel for the Raymond Sackler Family*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |

**OMNIBUS REPLY IN FURTHER SUPPORT OF
MOTION TO CONFIRM THAT PAYMENT BY THE SACKLER FAMILIES UNDER
SETTLEMENT WITH THE UNITED STATES DEPARTMENT OF JUSTICE
IS NOT PROHIBITED BY THIS COURT**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

The Raymond Sackler family and Mortimer Sackler family (together, the "Sackler Families"), by and through their undersigned counsel, hereby submit this omnibus reply to (a) the *Further Statement Regarding Notice by the Sackler Families of Settlement with the United States Department of Justice and Motion to Confirm That Payment by the Sackler Families Under Settlement with the Department of Justice Is Not Prohibited by This Court* [ECF No. 1893] (the "Further Statement") submitted by the Official Committee of Unsecured Creditors (the "UCC") and the Ad Hoc Group of Non-Consenting States ("NSCG") in connection with the *Notice by the Sackler Families of Settlement with the United States Department of Justice and Motion to Confirm That Payment by the Sackler Families Under Settlement with the United States Department of Justice Is Not Prohibited by This Court* [ECF No. 1833] (the "Motion") and (b) the *Ad Hoc Committee on Accountability's Objection to the Sackler's Motion to Confirm That Payment by the Sackler Families Under Settlement with the United States Department of Justice Is Not Prohibited by This Court* [ECF No. 1891] (the "AHCA Objection") submitted by the Ad Hoc Committee on Accountability (the "AHCA"). In support of this reply, the Sackler Families respectfully state as follows[2]:

## REPLY TO THE UCC AND NCSG

1. ***The revised proposed order addresses comments made by the Court at the initial conference.*** On October 28, 2020, the Court held an initial conference and heard substantial argument in respect of the Motion (the "Initial Conference"). Before the Initial Conference, the Sackler Families submitted the *Notice of Filing of Revised Proposed Order Confirming That Payment by the Sackler Families Under Settlement with the United States Department of Justice*

---

[2] Capitalized terms not defined herein have the same meanings as in the Motion. The term "Covered Party" as used herein shall have the same meaning as in the Amended Stipulation.

1

*Is Not Prohibited by This Court* [ECF No. 1858] (the "Revised Proposed Order") to address certain issues raised by the UCC and NCSG in their original limited objection to the Motion. At the Initial Conference, the Court suggested certain additional modifications to the Revised Proposed Order. Attached hereto as **Exhibit A** and **Exhibit B** are, respectively, a further revised proposed order and a redline against the previously submitted order. The Sackler Families believe that this further revised order is responsive to the Court's comments and resolves the UCC's and NCSG's original objection. The Sackler Families will be prepared to address any further comments or concerns the Court may have at the hearing on the Motion.

2. ***The UCC and NCSG already know how much wealth the Sackler Families have.*** The UCC and NCSG filed the Further Statement in connection with the Motion, in which they now assert that an evidentiary presentation of how much wealth the Sackler Families will have remaining after paying the DOJ is required. The UCC and NCSG themselves already know the answer to this question. In January 2020, both families voluntarily made detailed presentations to the UCC, the NCSG, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, and the Debtors – fiduciaries who collectively represent every creditor in these cases and essentially every United States citizen – concerning the amount of wealth the families have. Since then, the UCC and NCSG have been provided with massive amounts of additional discovery relating to the Sackler Families' wealth. Not once has the UCC or NCSG questioned the legitimacy of the Sackler Families' disclosures regarding their wealth or where it is located.

3. In the two submissions that the UCC and NCSG have filed in response to the Motion, and at the Initial Conference where the Court heard extensive argument, these parties never contended that the Sackler Families' remaining wealth after paying the DOJ would be so affected that creditors would be prejudiced. At the Initial Conference, the Court even observed

that "I don't have people jumping up and down and telling me that, you know, this is going to deplete our recovery. In fact, my sense is just the opposite." The Court further suggested that it did not believe it was necessary to take evidence on this point. 10/28/20 Hr'g Tr. at 100 ("I'm not suggesting that people need to put it in front me necessarily.").

4. Knowing the facts themselves and having heard the Court's comments at the Initial Conference, the UCC and NCSG fail to explain why the evidentiary presentation they demand would be relevant to any remaining objection *they* possibly could have to the Motion. Nor, for that matter, have they suggested, based upon their extensive knowledge of the facts, that a payment of $225 million would — or even might — have the effect of materially frustrating a judgment of this Court.

5. Therefore, this evidence is not necessary for the UCC and NCSG to form their own views on the DOJ settlement or its effect on potential creditor recoveries. Leveraging this moment to compel the Sackler Families to put sensitive personal information into the public domain runs contrary to this Court's stated preference that negotiations and discussions of the strength of claims and defenses occur privately among the major parties in interest. *See, e.g.*, 3/18/20 Hr'g Tr. at 100 (public disclosure of Sackler Families' defense presentations "would severely retard the progress of this case, inevitably eliciting responses by every other party in this case and completely diverting the parties' attention from the tasks that need to be undertaken and completed"); *see also id.* at 90-91 ("[T]he record is crystal clear that there has been substantial disclosure and that that disclosure is ongoing. . . . The notion that such disclosure should immediately be flushed out to the public, I think, is belied by every party [in] interests' willingness

to enter into an agreed protective order and the use of such protective order as in discovery generally . . . .").[3]

6. The Court already has rejected attempts to "back the Sacklers into" making representations on the record that are not pertinent to the Motion but that are sought for other purposes. 10/28/20 Hr'g Tr. at 107 ("I think it is clear that I don't believe, although it was a nice try, that one can reasonably back the Sacklers into saying that this payment will be made from funds that aren't indirectly proceeds of distributions . . . ."). It should reject this latest attempt, too.[4]

7. **_Payment to the DOJ will not "frustrate" any judgment of the Court, but rather will enhance the likelihood of creditor recoveries._** The UCC and NCSG take the position that the claims against the Sackler Families are so powerful that virtually every last dollar of the Sackler Families' multibillion-dollar fortune is vulnerable in litigation. The Sackler Families do not believe that anyone's alleged claims against them have merit, but assuming, _arguendo_, that the claims are as strong as the UCC and NCSG contend, then it follows necessarily that the U.S. government's claims – premised on the same conduct and theories of wrongdoing – are at least as strong as well. This in turn demonstrates that consummation of the settlement with the DOJ, a potential priority creditor, will benefit the estates' ability to recover from the Sackler Families, and not frustrate any potential judgment.

8. Simply put, the DOJ arguably has superior enforcement rights that need to be considered in any relevant analysis. The DOJ's allegations, if they were to be proved, might give

---

[3] While the UCC and NCSG may suggest that this information may be submitted under seal, such a submission would likely be followed by requests to unseal, thus placing a further unnecessary burden on this Court.
[4] The UCC and NCSG have suggested that the Sackler Families "provide specifics as to from where the funds to make these payments are being taken." Further Statement ¶ 8 n.9. The Sackler Families have no objection to providing this information subject to the protective order.

4

rise to forfeiture rights that would give the DOJ priority access, at the expense of general unsecured creditors, to funds distributed by the Debtors. *See* Claim No. 137798 at ¶ 6; Claim No. 134848 at ¶ 64; *Gowan v. Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 411 (Bankr. S.D.N.Y. 2011) (forfeiture orders can "divest a bankruptcy estate of its property even though the estate was created *before* the forfeiture order was entered," since forfeiture relates back to the time of the wrongdoing and assets are not property of the debtor). Furthermore, the DOJ contends (with appellate-level support) that its federal fraudulent transfer claims can be prosecuted independent of the claims of the Debtors' estates and undersection 11 U.S.C. § 544(b) Code. *See* Claim No. 134848 at ¶ 53 (asserting fraudulent transfer claims under the Federal Debt Collection Procedures Act, and alleging that such claims are not "assigned to the Debtors by operation of the Bankruptcy Code or otherwise"); *see In re Mirant Corp.*, 675 F.3d 530, 535-36 (5th Cir. 2012) (holding that the FDCPA is not "applicable law" for purposes of section 544(b) of the Bankruptcy Code).

9. The DOJ and general unsecured creditors are therefore in *competition* with one another for the same assets, and the DOJ – given its special enforcement powers – arguably is positioned to win any contest that may ensue. If the UCC and NCSG are so confident in the merits of the alleged claims against the Sackler Families, they must recognize the merits of the government's similar claims and the threat that its super-priority position poses to estate and creditor recoveries. Payment by the Sackler Families of the settlement amount eliminates competition for the Sackler Families' assets. When viewed in this light, the proposed payment will enhance the potential for recoveries on a hypothetical judgment, not materially frustrate it.

10. **Payment to the DOJ will not contravene the purpose and intent of the anti-secretion injunction.** The anti-secretion injunction was added to the *Protective Order* [ECF No.

5

784] (as subsequently amended, the "PI Order") in response to specious claims made before the petition date by some of the plaintiffs, and repeated by the press, that the Sackler Families were sending assets overseas to defeat U.S. court jurisdiction. That suspicion was unfounded then, and it is unfounded now. But the point is that the proposal to pay the DOJ under the Sackler Families' settlement has nothing to do with that suspicion of a wrongful attempt to hide assets from creditors.

11. The Sackler Families made this point at the Initial Conference, but the Court indicated that it could not assess the argument without the transcript of the preliminary injunction hearing, where the relevant language was presented and its purpose was discussed. A review of that transcript confirms that the purpose of the injunction was to prevent *nefarious* conduct that prejudice creditors during the stay of litigation. Counsel for the Debtors, the Sackler Families, and the UCC repeatedly stated in open court that the goal was to prevent "secretion" of assets. *See, e.g.*, 10/10/19 Hr'g Tr. at 15 (debtor counsel: "since the estate and all parties need and deserve comfort that should the deal not progress, the shareholders will not have used the timing of the Chapter 11 process to be able to *secrete* assets" (emphasis added)); 10/11/19 Hr'g Tr. at 101 (UCC counsel: "The *anti-secretion* language is one month past the stay period; meaning, if the stay period ends, it's not like at that point the Sacklers can go *secreting* assets. But we have built in an extra 30 days to allow us to try to stop that and to come back to court." (emphasis added)); *id.* at 140 (Raymond Sackler family counsel: "The purpose of that language is all to deal with any concerns that people might have that the Sacklers are out there trying to *secrete* their assets during an injunction period, which they're not." (emphasis added)). To this day, the parties – including the UCC and NCSG – continue to refer to the relevant provision in the PI Order as the anti-*secretion* injunction. *E.g.*, Further Statement, ¶ 8.

6

12.  That is a deliberate and significant choice of words by all the parties. To "secrete," when referring to assets, does not mean merely to use or dispose. The word specifically encompasses the concept of *hiding* or *concealing*. *See, e.g.*, Merriam Webster Online ("Secrete") ("1: to deposit or conceal in a hiding place; 2: to appropriate secretly"), *available at* https://www.merriam-webster.com/dictionary/secrete?src=search-dict-hed. A payment by the Sackler Families to the DOJ of a legitimate obligation in accordance with a well-publicized agreement, filed on the docket and discussed extensively in open court, obviously does not involve any kind of concealment – or any other reprehensible conduct.

### REPLY TO AHCA

13.  The *Ad Hoc Committee on Accountability's Objection to the Sackler's Motion to Shorten Notice With Respect to Their Motion to Confirm That Payment by the Sackler Families Under Settlement with the United States Department of Justice Is Not Prohibited by This Court* [ECF No. 1852] is now incorporated into, and reiterated in, the AHCA Objection. The AHCA's positions were discussed at length at the Initial Conference, and the Court recognized that the issues raised – which mainly amounted to challenges to the merits of the Sackler Families' settlement with the DOJ and of the proposed settlement framework – were not properly before it on the Motion. *E.g.*, 10/28/20 Hr'g Tr. at 83-84.

14.  The AHCA's renewed objection does not present any new argument, let alone raise issues that are pertinent to the narrow relief requested in the Motion. As such, the Sackler Families believe that the AHCA Objection already has been addressed at length and should be overruled.

## CONCLUSION

For the reasons articulated above, in the Motion, and by counsel for the Sackler Families at the Initial Conference, the Sackler Families respectfully request that the Court grant the Motion and grant the Sackler Families such other relief as is just and proper.

Dated: November 13, 2020
New York, New York

 */s/ Gerard Uzzi*
Gerard Uzzi, Esq.
Alexander B. Lees, Esq.
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

 */s/ Gregory Joseph*
Gregory P. Joseph, Esq.
Mara Leventhal, Esq.
**JOSEPH HAGE AARONSON LLC**
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone: (212) 407-1200
Facsimile:(212) 407-1280

*Counsel for the Raymond Sackler Family*

 */s/ Jasmine Ball*
Jasmine Ball, Esq.
Maura Kathleen Monaghan, Esq.
Jeffrey J. Rosen, Esq.
**DEBEVOISE & PLIMPTON LLP**
919 Third Ave.
New York, NY 10022
Telephone:    (212) 909-6000
Facsimile:    (212) 909-6836

*Counsel for the Mortimer Sackler Family*