**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**SUMMARY STATEMENT FOR THIRD INTERIM FEE APPLICATION
OF DECHERT LLP, SPECIAL COUNSEL FOR THE DEBTORS,
FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**

| | |
|---|---|
| Name of applicant | Dechert LLP |
| Name of client | Purdue Debtors and Debtors in Possession |
| Time period covered by this application | June 1, 2020 through and including September 30, 2020 |
| Total compensation sought this period | $3,706,616.10[2] |
| Total expenses sought this period | $612,547.92 |
| Petition date | September 15, 2019 |
| Retention date | *nunc pro tunc* to November 21, 2019 |
| Date of order approving employment | November 21, 2019 |

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]   This amount reflects a reduction in fees in the amount of $818,239.40 on account of the following voluntary discounts:  (i) a voluntary discount of $799,406.40 for aggregate fees as described in the *Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket No. 424] (the "**Retention Application**") and *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965] (the "**Notice of Increased Patent Fees**"); and (ii) a voluntary discount of $18,833.00 for transient and other non-professional timekeepers due to concerns previously raised by the Fee Examiner.

17565294

| | |
|---|---|
| Total compensation approved by interim order to date | $7,632,544.92 |
| Total expenses approved by interim order to date | $1,223,836.61 |
| Total allowed compensation paid to date | $7,632,544.92 |
| Total allowed expenses paid to date | $1,223,836.61 |
| Blended rate in this application for all attorneys | $894.68 |
| Blended rate in this application for all timekeepers | $805.02 |
| Compensation sought in this application already paid (or credited against prepetition retainer) pursuant to a monthly compensation order but not yet allowed | $1,522,319.78[3] |
| Expenses sought in this application already paid (or credited against prepetition retainer) pursuant to a monthly compensation order but not yet allowed | $284,637.07[4] |
| Number of professionals included in this application | 61 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period | Amount Budgeted: $5,555,000 - $6,100,000 Amount Sought: $3,706,616.10 |
| Number of professionals billing fewer than 15 hours to the case during this period | 27 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No. |

This is a(n):    _____Monthly    __X__Interim    _____Final application.

This application includes 164.3 hours with a value of $72,784.50 incurred in connection with the preparation of Fee Applications for the Debtors.

---

[3]    $1,455,327.55 in fees for August and September, 2020 have not been paid to date but may be paid prior to the hearing date on this application.

[4]    $327,910.85 in expenses for August and September, 2020 have not been paid to date but may be paid prior to the hearing date on this application.

### SUMMARY OF MONTHLY FEE STATEMENTS

| Application | | Total Compensation and Expenses Incurred for Period Covered | | | Total Amount Requested in Fee Statements | | Total Unpaid |
|---|---|---|---|---|---|---|---|
| **Date Filed/Docket No.** | **Period Covered** | **Total Fees** | **Expenses** | **Fees (80%)** | **Expenses (100%)** | **Fees and Expenses** |
| 08/25/2020 Docket No. 1610 | 06/01/2020-06/30/2020 | $677,526.54 | $185,696.48 | $542,021.23 | $185,696.48 | $135,505.31 |
| 09/15/2020 Docket No. 1694 | 07/01/2020-07/31/2020 | $1,225,373.19 | $98,940.59 | $980,298.55 | $98,940.59 | $245,074.64 |
| 10/17/2020 Docket No. 1818 | 08/01/2020-08/31/2020 | $903,247.67 | $228,137.27 | $722,598.14 | $228,137.27 | $1,131,384.94 |
| 10/22/2020 Docket No. 1839 | 09/01/2020-09/30/2020 | $915,911.76 | $99,773.58 | $732,729.41 | $99,773.58 | $1,015,685.34 |
| **Totals:** | | **$3,722,059.16** | **$612,547.92** | **$2,977,647.33** | **$612,547.92** | **$2,527,650.23** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## THIRD INTERIM FEE APPLICATION OF DECHERT LLP, AS 327(e) SPECIAL COUNSEL, FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED <u>DURING THE PERIOD JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020</u>

Dechert LLP ("**Dechert**"), as the retained special counsel to Purdue Pharma L.P.

and its affiliated debtors ("**Purdue**" or the "**Debtors**") in the above captioned chapter 11 cases

(the "**Case**"), hereby files this application (the "**Application**") pursuant to sections 330 and 331

of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy**

**Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and the Order Pursuant to Section 327(e) and 328(a) of the Bankruptcy Code Authorizing the

Employment and Retention of Dechert LLP, as Special Counsel to the Debtors, *Nunc Pro Tunc*

to September 15, 2019 (the "**Petition Date**"), dated November 21, 2019 [Docket No. 525] (the

"**Retention Order**", a copy of which is annexed hereto as <u>Exhibit A</u>), for an award of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

17565294

compensation for professional services rendered to the Debtors in the amount of $3,706,616.10,[2]

incurred during the period from June 1, 2020 through and including September 30, 2020 (the

"**Compensation Period**"), and reimbursement of disbursements incurred during that same

period in the amount of $612,547.92.

## BACKGROUND

### A.    The Chapter 11 Cases

1.    On or about the Petition Date, the Debtors filed voluntary cases under

chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

2.    On September 27, 2019, the United States Trustee for the Southern

District of New York (the "**U.S. Trustee**") appointed the Official Committee of Unsecured

Creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [Docket No. 131].

3.    On April 8, 2020, the Court entered the Order authorizing the appointment

of an independent fee examiner (the "**Fee Examiner**") [Docket No. 1023].

---

[2]    This amount reflects a reduction in fees in the amount of $818,239.40 on account of the following voluntary
discounts:  (i) a voluntary discount of $799,406.40 for aggregate fees as described in the *Application of Debtors
for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors* Nunc Pro Tunc *to the
Petition Date* [Docket No. 424] (the "**Retention Application**") and *Dechert LLP's First Notice of Increase in
Hourly Rates for Patent Services* [Docket No. 965] (the "**Notice of Increased Patent Fees**"); and (ii) a
voluntary discount of $18,833.00 for transient and suspect timekeepers due to concerns previously raised by the
Fee Examiner.

**B.  The Debtors' Business**

4.      The Debtors are pharmaceutical companies that manufactured, sold, or distributed, among other products, extended release, long-acting, abuse-deterrent opioid pain medications.

5.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* [Docket No. 17] filed on September 16, 2019.

**JURISDICTION**

6.      The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELIEF REQUESTED**

7.      The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**").  By this Application, Dechert respectfully seeks Court approval and allowance of reasonable compensation for professional services rendered to the Debtors during the Compensation Period in the aggregate amount of $3,706,616.10 and for reimbursement of actual and necessary expenses incurred in connection with the rendition of such services in the amount of $612,547.92.

**BASIS FOR RELIEF**

**A.  Dechert's Retention**

8.      On November 5, 2019, the Debtors filed their Application of the Debtors

Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal

Rules of Bankruptcy Procedure for Authorization to Employ and Retain Dechert LLP, as Special

Counsel to the Debtors, *Nunc Pro Tunc* to the Petition Date [Docket No. 424].  The Court

entered the Retention Order on November 21, 2019. [Docket No. 525; Exhibit A hereto].

9.      The Order Granting Motion Establishing Procedures for Interim Monthly

Compensation and Reimbursement of Expenses of Professionals [Docket No. 529] (the "**Interim**

**Compensation Order**"), entered by the court on November 21, 2019, outlines the procedures

that all professionals must follow in order to receive compensation and reimbursement of

expenses for services provided to the Debtors.

10.      Dechert is a full service law firm with well-developed practices in the

areas of product liability and mass torts, business restructuring and reorganization, corporate and

securities, complex commercial litigation, finance and real estate and financial services.

**B.  Compensation**

11.      This Application is Dechert LLP's second application for interim

compensation and reimbursement of expenses as special counsel in these chapter 11 cases.

12.      Pursuant to the Interim Compensation Order, during the Compensation

Period, Dechert filed four (4) fee statements (the "**Monthly Fee Statements**") with the Court as

follows:

  a.  On August 25, 2020, Dechert filed its Tenth Monthly Fee Statement for
      the Period from June 1 Through June 30, 2020 [ECF No. 1610] (the "**June**

4

**Fee Statement**").  The June Fee Statement reflected fees in the amount of $677,526.54 and expenses incurred in the amount of $185,696.48.

b.  On September 15, 2020, Dechert filed its Eleventh Monthly Fee Statement for the Period from July 1, 2020 Through July 31, 2020 [ECF No. 1694] (the "**July Fee Statement**").  The July Fee Statement reflected fees in the amount of $1,225,373.19 and expenses incurred in the amount of $98,940.59.

c.  On October 17, 2020, Dechert filed its Twelfth Monthly Fee Statement for the Period from August 1, 2020 Through August 31, 2020 [ECF No. 1818] (the "**August Fee Statement**").  The August Fee Statement reflected fees in the amount of $903,247.67 and expenses incurred in the amount of $228,137.27.

d.  On October 22, 2020, Dechert filed its Thirteenth Monthly Fee Statement for the Period from September 1, 2020 Through September 30, 2020 [ECF No. 1839] (the "**September Fee Statement**").  The September Fee Statement reflected fees in the amount of $915,911.76 and expenses incurred in the amount of $99,773.58.

13.    In total, therefore, Dechert has submitted Monthly Fee Statements during the Compensation Period for fees of $3,722,059.16 and expenses of $612,547.92.  As of the date of this Application, no party-in-interest has objected to Dechert's Tenth, Eleventh, Twelfth, and Thirteenth Monthly Fee Statements.

14.    By this Application Dechert seeks compensation for the fair and reasonable fees and expenses incurred by Dechert to the estates of the Debtors during the Compensation Period.  The compensation requested herein is based on discounted regular hourly rates consistent with discounted rates provided for complex mass tort cases generating similar volume of legal fees and reflects the time, labor, and expertise brought to bear on the problems presented, and is either in line with, or lower than the rates charged by similar firms operating in a competitive market for legal services of the type involved in this case.

15.     This Application does not detail every correspondence, drafting session, meeting, discussion, or conference held, all research conducted, or each of the numerous tasks performed by Dechert. Those matters are set forth in detail in the contemporaneous time records filed with Dechert's Monthly Fee Statements and are incorporated herein by reference. In addition, detail for expenses that were incurred by Dechert during the Compensation Period were included in Dechert's Monthly Fee Statements and are incorporated herein by reference. All such expenses are reflected in the books and records of Dechert, which are contemporaneously maintained in the ordinary course of its business.

16.     The professional services for which compensation is sought were rendered in the ordinary course of the Debtors' business and solely on behalf of the Debtors.

17.     By this Application, Dechert seeks allowance in full of interim compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $3,706,616.10 and for reimbursement of actual, necessary expenses incurred in connection with such services in the amount of $612,547.92. During the Compensation Period, Dechert attorneys and paraprofessionals expended a total of 5,620.8 hours for which compensation is requested.

**C.  Applicable Authority**

18.     Dechert LLP prepared this Application in accordance with: (a) the Administrative Order Re: Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on January 25, 2013 and effective as of February 5, 2013 (the "**Local Guidelines**"); (b) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330, adopted on May 17, 1996 and June 11, 2013 (the "**UST Guidelines**",

and together with the Local Guidelines and the Interim Compensation Order, the "**Guidelines**");

and (c) the Interim Compensation Order.  Pursuant to the Local Guidelines, a certification

regarding compliance with the Guidelines is annexed hereto as <u>Exhibit B</u>.

### SUMMARY OF PROFESSIONAL COMPENSATION<br>AND REIMBURSEMENT OF EXPENSES REQUESTED

19.     Dechert believes that the fair and reasonable (and discounted) value of its

professional services rendered during the Compensation Period is $3,722,059.16.  Based upon

the total attorneys' and paraprofessionals' time expended, and a resulting blended hourly rate of

$805.02 for professionals, Dechert believes the compensation requested herein to be reasonable

and appropriate.

20.     Dechert also seeks reimbursement of its actual, reasonable, and necessary

out-of-pocket expenses in the aggregate amount of $612,547.92.  These expenses were incurred

during the course of rendering professional services on behalf of the Debtors during the

Compensation Period.

21.     Dechert has utilized its existing hourly rate structure and has calculated its

request for compensation by multiplying the hours of time spent on services rendered on behalf

of the Debtors by the discounted hourly rate assigned to each attorney or paraprofessional

rendering such services.  Dechert respectfully submits that the fees sought herein are less than

customary and based on its normal criteria in matters of this type and are discounted from the

fees that Dechert has been allowed in other chapter 11 cases, including in this District.

22.     Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit C</u> is the

summary sheet required by the Local Guidelines, which includes a schedule setting forth the

names of all Dechert professionals and paraprofessionals who have performed services for which

compensation is sought, the person's position in the firm and department, and the date of bar

admission for each attorney.  In addition, the schedule sets forth for each person (a) the hourly

rate(s) during the Compensation Period; (b) the total hours billed for which compensation is

sought; and (c) the total compensation for such hours.

23.    Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit D</u> is a

summary by project category of the services performed by Dechert during the Compensation

Period

24.    Annexed hereto as <u>Exhibit E</u> is a schedule specifying the categories of

expenses for which Dechert in seeking reimbursement and the total amount of reimbursement

requested for each such expense category.

## <u>SERVICES RENDERED BY DECHERT</u>

25.    Dechert has a longstanding relationship with the Debtors and was retained

to continue to provide the litigation services the firm has provided to the Debtors over the 26

months preceding the Petition Date (as more fully described below, the "**Dechert Litigation**

**Services**" or "**Litigation Services**").  Dechert is and has been in charge of national coordination

of nearly 2,600 civil actions, including cases filed by the Attorneys General of almost every state

and territory, pending in various state and federal courts across the United States and its

territories.  The cases generally allege that Purdue marketed prescription opioids in violation of

state common-law tort duties and consumer protection, tort, and business statutes.

26.    In addition to the Dechert Litigation Services, Dechert also handles certain

of the Debtors' patent prosecutions and related intellectual property issues (the "**Dechert Patent**

Services" or "**Patent Services**", and together with the Dechert Litigation Services, the "**Dechert Services**").  Dechert has in the past and is currently providing legal services in relation to the following patent applications: (1) application no. 15/324,528; (2) application no. 16/318,686; (3) application no. 16/446,373; (4) application no. 16/446,397; (5) application no. 16/557,937; (6) application no. 16/578,278; (7) application no. 16/900,600; (8) application no. 16/964,174; (9) application no. 62/799,710; and (10) PCT/IB2019/050522.  Dechert will continue to provide the Dechert Patent Services to the Debtors during these chapter 11 cases.  In the ordinary course of business and consistent with past practices, Dechert expects to provide additional patent and intellectual property services as requested by the Debtors.

27.    The description of services below summarizes the primary services rendered by Dechert during the Compensation Period and highlights the benefits conferred upon the Debtors and their estates and creditors as a result of Dechert's services.  The following is a summary description of the matters for which Dechert provided legal services to the Debtors during the Compensation Period:

**L110:  Fact Investigation/Development (Hours: 253.8 Fees: $114,145.00)**

28.    During the Compensation Period, Dechert performed a variety of services relating to fact investigation and development in the bankruptcy proceedings, including the following:

- Dechert professionals assisted in the preparation of numerous witnesses for depositions and witness interviews as part of the bankruptcy proceedings, including analyzing relevant documents produced in the underlying litigation and conferring with witnesses' counsel.

- Dechert professionals advised the Debtor regarding co-Defendants' designation of testimony from select Debtor witnesses in connection with co-Defendants' upcoming

9

trials in the underlying litigation and Dechert professionals analyzed various issues relating to the designations and advised regarding potential objections and strategy.

- Dechert professionals continued to regularly advise the Debtors on an ongoing, often daily or weekly basis, regarding preliminary injunction compliance matters.

29.     During the Compensation Period, Dechert professionals and paraprofessionals devoted 253.8 hours to the Fact Investigation/Development project category resulting in time charges of $114,145.00.

**L120:  Analysis and Strategy (Hours: 3,805.8 Fees: $3,421,164.50)**

30.     During the Compensation Period, Dechert performed a variety of services relating to the analysis and strategy in the opioid litigation, including the following:

- Dechert professionals continued to conduct weekly, and sometimes, daily, in-person, telephonic, and video conferencing meetings with various creditors, including the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Consenting States**"), the Ad Hoc Group of Non-Consenting States  (the "**Non-Consenting States**"), the UCC, counsel representing the NAS Claimants, the Ad Hoc Group of Hospitals (the "**Hospitals**"), and counsel representing the Third Party Payor claimant group to discuss the proposed settlement framework and issues concerning public and private allocation frameworks and abatement proposals.

- Dechert professionals continued to advise the Debtor and assist in responding to numerous requests and inquiries from various creditor committees such as the UCC and Non-Consenting States for various information relating to the settlement and mediation negotiations.

- Dechert professionals regularly advised the Debtors on strategic issues concerning ongoing settlement negotiations and allocation discussions between the court-appointed mediators (the "**Mediators**") and various public and private claimant constituent groups.

- Dechert professionals continued to conduct regular meetings and engage in numerous communications with the Mediators and responded to ongoing requests from the Mediators on settlement and mediation related issues.

- Together with co-counsel, Dechert professionals prepared oppositions to six separate motions for class certification brought by claimants representing the School Districts, Hospitals, Tribes, the NAS Monitoring Claimants, the West Virginia NAS Claimants, and independent Emergency Room physicians and coordinated with other stakeholders

on strategy for the class action motions and assisted the Debtor and co-counsel in preparing for bankruptcy court conferences addressing the motions.

- Together with co-counsel, Dechert professionals advised the Debtors regarding strategy for insurance coverage issues relating to the settlement negotiations and strategy regarding engaging with insurance companies on coverage and settlement issues.

- Dechert professionals conferred with counsel for Debtors' insurers regarding coverage issues and potential mediation and settlement discussions and drafted related written communications.

- Dechert professionals continued to advise and assist the Debtors and bankruptcy counsel on the claims administration process, including analyzing proof of claim forms submitted to date for settlement and engaging in numerous (often, daily) communications with the Debtors and bankruptcy counsel regarding issues relating to claim allocation, valuation, and bankruptcy liquidation analysis for all creditor groups.

- Dechert professionals analyzed the Debtors' settlements in past personal injury cases for purposes of claim valuation and reviewed and analyzed past settlement agreements for issues regarding confidentiality and past settlement valuations.

- Together with co-counsel, Dechert professionals retained consultants to assist with claim estimation and bankruptcy liquidation analysis and participated in extensive communications and video conferences with consultants and co-counsel regarding claim valuation, estimation, and liquidation analysis.

- Dechert professionals reviewed and analyzed Debtors' experts' analysis in connection with claims allocation and estimation and liquidation analysis regarding public, personal injury, and commercial claimants, including NAS Claimants, Hospitals, and Third Party Payors.

- Dechert professionals continued to research and analyze legal and factual issues regarding key defenses and legal arguments to certain public and private claimants' bankruptcy claims, including issues regarding proximate causation, statute of limitations, and standing.  This included researching and compiling a comprehensive fifty-state survey of all state laws relating to personal injury claims, public nuisance, and application of statute of limitations laws on different governmental entities.

- Dechert professionals conferred and consulted with the Debtors, bankruptcy counsel, and expert consultants regarding potential issues regarding the NAS Claimants' proposed abatement plans.

- Dechert professionals conferred and consulted with the Debtors, bankruptcy counsel, and expert consultants regarding potential issues regarding the Hospitals' proposed abatement plans and damages models.

11

- Dechert professionals reviewed and analyzed abatement proposals and plans from the Consenting and Non-Consenting States, the Hospitals, and the NAS Monitoring Claimants and advised the Debtor regarding various components of the proposals and participated in related discussions with various creditor committees and the Mediators.

- Dechert professionals researched and analyzed various issues relating to the Consenting and Non-Consenting States' damages theories and worked in close communication with expert consultants to understand claimants' methodology and research and identify potential challenges.

- Dechert professionals researched and analyzed settlement issues regarding the prior tobacco-related settlements and discussed with the Mediators and various creditor committees regarding how best to ensure settlement monies are used for abatement-related purposes.

- Together with the Debtors, Dechert professionals continued to hold numerous in-person, telephonic, and video conferences with the court appointed Monitor in this case ("**Monitor**") on issues regarding the Debtors' compliance with the November 2019 voluntary injunction (the "**Voluntary Injunction**") and assisted the Debtors in preparing for such meetings.

- Dechert professionals continued to assist the Debtor in responding to sometimes daily and weekly requests from the Monitor regarding inquiries, documents, and information related to the Debtors' compliance with the Voluntary Injunction and the Monitor's preparation of his reports to the Bankruptcy Court.

- Dechert professionals assisted the Debtor in preparing a detailed and substantive presentation outlining the Debtors' proposed settlement initiative to provide multiple forms of addiction treatment and overdose rescue medications to the public at low or no cost, including working with subject matter experts to understand the proposals and researching scholarly and academic literature relating to opioid addiction and treatment.

- Dechert professionals advised the Debtor on strategy relating to creditors' requests for depositions of Debtor witnesses in the bankruptcy and conferred extensively with the Debtor and co-counsel regarding preparing witnesses and responding to creditors' discovery requests.

- Dechert professionals attended numerous Debtor witness depositions in the bankruptcy proceeding and advised the Debtor on strategy and ongoing witness preparations.

- Dechert professionals reviewed and analyzed proceedings in the New York state court litigation relating to the Court's multi-week long hearings regarding the admissibility of Plaintiffs' experts' opinions and advised the Debtor regarding settlement and bankruptcy implications.

- Dechert professionals continued to consult with and advise the Debtors regarding ongoing media and public communications strategies.

- Dechert professionals assisted and advised the Debtors concerning regulatory reporting requirements and negotiations in light of the filing of claims in the bankruptcy.

- Dechert professionals researched public health and governmental response initiatives regarding the COVID-19 pandemic and advised the Debtor regarding the implications for opioid-related public health abatement proposals and settlement negotiations.

- Dechert professionals assisted and advised the Debtors on issues relating to current and former employee, officers, and Board of Directors' indemnification issues and related strategy, which are integral to the claims asserted in the pre-petition litigation.

- Dechert professionals reviewed and analyzed issues concerning Plaintiffs' request for creation of a common benefit fund (the "**Common Benefit Fund**") in the underlying MDL, the various parties' opposition filings, and the MDL Court's related rulings on the issue, and advised the Debtors and bankruptcy counsel on the potential impact on Purdue's settlement and bankruptcy proceedings.

- Dechert professionals reviewed, analyzed, and summarized key developments and filings in the appeal of the MDL Court's certification of the Negotiation Class and advised the Debtor and co-counsel on implications for the Debtor's settlement negotiations.

31.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 3,805.8 hours to the Analysis and Strategy project category resulting in time charges of $3,421,164.50.

**L190:  Other Case Assessment, Development and Administration (Hours: 173.3 Fees: $62,941.00)**

32.    During the Compensation Period, Dechert performed a variety of services relating to case assessment, development and administration, including the following:

- Dechert professionals continued to monitor developments in the stayed litigations pending in the MDL proceeding and state courts around the country in order to assess the potential impact of those proceedings on the Debtors' bankruptcy and settlement activities.

- Dechert professionals continued to analyze activities and developments in the state and MDL cases in order to identify, and respond to, actual or potential violations of the stay or preliminary injunction.

13

- Dechert professionals prepared select Debtors-affiliated witnesses for interviews and depositions regarding the bankruptcy, proposed settlement, and other proceedings and reviewed and analyzed correspondence and documents in association with that preparation.

- Dechert professionals reviewed and analyzed Debtor-produced documents that co-Defendants in the underlying litigation included on proposed trial exhibit lists and advised the Debtor regarding confidentiality issues and admissibility objections on select documents.

- Dechert professionals reviewed and analyzed significant volumes of proof of claim forms filed by various claimant creditors such as personal injury claimants, Hospitals, Third Party Payors, and governmental creditors.

- Dechert professionals reviewed and analyzed Debtor witness testimony from the underlying litigation and purposes of responding to the UCC and other creditors' requests for discovery and depositions in the bankruptcy.

- Dechert professionals researched statute of limitations laws in all fifty states relating to claimants' proof of claim forms and in anticipation of claim estimation processes and challenges.

33.     During the Compensation Period, Dechert professionals and paraprofessionals devoted 173.3 hours to the Other Case Assessment, Development and Administration project category resulting in time charges of $62,941.00.

**L160:  Settlement/Non-Binding ADR (Hours: 107.4 Fees: $92,548.50)**

34.     During the Compensation Period, Dechert performed a variety of services relating to settlement negotiations, including the following:

- Dechert professionals continued to work with the Debtors, bankruptcy counsel, and other co-counsel regarding global settlement negotiations and related strategy and settlement framework discussions.

- Dechert professionals analyzed and reviewed hundreds of personal injury proof of claim forms to identify potential legal challenges for purposes of a potential estimation process.

- Dechert professionals assisted the Debtors and bankruptcy counsel in response to numerous requests and questions from the Mediators on issues regarding allocation negotiations and abatement proposals.

14

- Dechert professionals analyzed and evaluated abatement proposals from the Consenting and Non-Consenting States and other private creditor groups and researched evidence-based abatement proposals in the academic and public health literature.

- Dechert professionals tracked and oversaw litigation developments in the state and federal MDL and advised the Debtor regarding how such activities may impact settlement and bankruptcy related issues.

- Dechert professionals responded to co-Defendants' termination of the joint defense agreement in the underlying litigation, including drafting a response, negotiating provisions with the relevant Defendants and advising the Company regarding the implications for bankruptcy and settlement developments.

- Dechert professionals researched and drafted a memorandum for the Debtors and Mediators regarding weaknesses in the School Districts' claims and how such issues should impact settlement and allocation discussions.

- Dechert professionals researched and drafted opposition to School Districts' motion for class certification.

- Dechert professionals engaged in various communications and analysis regarding the Debtors' negotiations with its insurers and the availability of insurance proceeds for settlement purposes, including engaging in weekly discussions with the Debtor and creditors' committees, conferring regarding strategy, and review and revising a proposed complaint in preparation for an adversary proceeding.

- Dechert professionals reviewed and analyzed NAS Monitoring Claimants and Hospital Groups motions for class certification and class action proof of claims and researched defenses and challenges to each and advised the Debtor on related strategy.

- Dechert professionals engaged in various communications regarding compliance with the bankruptcy fee examiner's report and related applications.

35.     During the Compensation Period, Dechert professionals and paraprofessionals devoted 107.4 hours to the Depositions, project category resulting in time charges of $92,548.50.

**P260:  Intellectual Property (Hours: 197.3 Fees: $116,776.50)**

36.     During the Compensation Period, Dechert performed a variety of services relating to intellectual property issues including the following:

15

- Dechert professionals reviewed certain of the Debtors' inventions to prepare a patent prosecution strategy related thereto.

37.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 197.3 hours to the Depositions, project category resulting in time charges of $116,776.50.

**B160:  Retention Issues and Fee Applications (Hours: 171.4 Fees: $78,856.00)**

38.    During the Compensation Period, Dechert performed a variety of services relating to its retention and compensation including the following:

- Dechert professionals corresponded electronically and participated in conference calls with the Debtors and/or various of their professionals regarding, among other things, fee applications.

- Dechert professionals prepared the monthly fee statements for the months of June, July, August, and September.

- Dechert professionals reviewed time entries for confidentiality issues and adherence to the Guidelines.

39.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 171.4 hours to Retention Issues resulting in time charges of $78,856.00, which includes 164.3 hours to Fee Application issues resulting in time charges of $72,784.50.

40.    Dechert submits that for the reasons set forth above, the professional services rendered by Dechert on behalf of the Debtors during the Compensation Period were necessary and reasonable.

## <u>EXPENSES INCURRED BY DECHERT</u>

41.    Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed in a chapter 11 case.  11 U.S.C. § 330.

16

Accordingly, Dechert seeks reimbursement of expenses incurred in rendering services during the

Compensation Period.

42.     In accordance with the requirements of the Bankruptcy Code, the

Bankruptcy Rules, and the Guidelines, Dechert maintains the following policies with respect to

expenses for which reimbursement is sought:

a.    <u>Internal Duplicating</u>  -  Charged at $0.10 per page, based upon the cost of duplicating services, which varies due to volume;

b.    <u>Outside Duplicating</u> - Outside duplicating by third parties is charged at the actual cost billed to Dechert;

d.    <u>Computer Research Charges</u>  - Westlaw and Lexis legal research is charged according to an equation based on the flat fee charged to Dechert (approximately 50% of the estimated cost for hourly rate for Lexis; approximately 70% of the estimated cost for hourly rate for Westlaw);

g.    <u>Delivery Services</u>  -  Dechert's practice is to charge postal, overnight delivery, and courier services at actual cost;

i.    <u>Meals</u>  -  In accordance with the Guidelines, meals charged to the Debtors were either associated with (i) out-of-town travel and are limited to $40 per person; or (ii) attorneys working at least two hours beyond their normal workday on matters concerning the chapter 11 cases and are limited to $20 per person.

## AUTHORITY FOR
## <u>ALLOWANCE OF COMPENSATION</u>

43.     Bankruptcy Code section 331 allows a bankruptcy court to authorize

interim compensation for "[a] trustee, an examiner, a debtor's attorney, or any professional

person employed under section 327 or 1103 of this title… not more than once every 120 days

after an order for relief in a case under this title…."

44.      Section 330 of the Bankruptcy Code authorizes the bankruptcy court to

award a trustee, examiner, ombudsman or professional employed pursuant to 11 U.S.C. § 327

reasonable compensation for services and reimbursement of expenses.  Specifically, section 330

of the Bankruptcy Code provides that:

> (a)(1) After notice to the parties in interest and the United States
> Trustee and a hearing, and subject to sections 326, 328 and 329, the
> court may award to . . . a professional person employed under
> section 327 or 1103 –
>
> (A) reasonable compensation for actual, necessary services rendered
> by . . . professional person, or attorney and by any paraprofessional
> person employed by any such person; and
>
> (B) reimbursement for actual necessary expenses. . . .
>
> (3) In determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the value
> of such services, taking into account all relevant factors, including–
>
> A.    the time spent on such services;
>
> B.    the rates charged for such services;
>
> C.    whether the services were necessary to the administration of, or beneficial
>        at the time at which the services were rendered toward the completion of, a
>        case under this title;
>
> D.    whether the services were performed within a reasonable amount of time
>        commensurate with the complexity, importance, and nature of the problem,
>        issue, or task addressed; and
>
> E.    whether the compensation is reasonable based on the customary
>        compensation charged by comparably skilled practitioners in case other
>        than cases under this title.
>
> 45.    As set forth below, under the standards set forth in Bankruptcy Code

section 330(a), Dechert's representation of the Debtors warrants payment of its fees and

reimbursement of its expenses.

> a.    <u>Time and labor required</u>:  As stated above, Dechert has expended 5,620.8
>        hours in its representation of the Debtors during the Compensation Period,
>        with a blended average billable rate of $805.02 per hour for all timekeepers.
>        All of the time spent by Dechert in these cases was necessary and
>        appropriate and benefited the Debtors, their estates, their creditors, and

18

other parties-in-interest.  Dechert submits that it has represented the Debtors in an efficient, timely, and cost-effective manner.

b.      <u>Novelty and difficulty of questions presented</u>:  The issues attended to by Dechert in connection with these cases were novel, complex, and difficult, requiring thorough attention and substantial firm resources.

c.      <u>Skill required to perform legal services properly</u>:  The experience, knowledge, and expertise of the various Dechert professionals and paraprofessionals representing the Debtors in these cases have facilitated and expedited the results achieved.  Providing mass tort products liability litigation advice to large debtors is a specialized practice that requires attorneys, such as the Dechert attorneys involved in this matter, with substantial expertise in various areas of the law.

d.      <u>Preclusion of other employment</u>:  Dechert's representation of the Debtors in these cases took time and effort that was not therefore available to provide comparable services to other current or potential clients.

e.      <u>Customary fee paid for such legal services</u>:  The hourly rates charged by Dechert for the services performed in these cases are discounted from the hourly rates regularly charged by Dechert in other similar matters and representations, and Dechert submits that they are discounted to the customary charges of other professionals and paraprofessionals with similar degrees of skill and expertise.

f.      <u>Experience, reputation, and ability of attorney</u>:  Dechert believes that its professionals who performed services for the Debtors have an excellent reputation for their skill, quality, integrity, and ability in bankruptcy and other matters.  Dechert's professionals have significant experience in matters of this nature and regularly represent companies similar to the Debtors in various matters in and out of bankruptcy.

g.      <u>Allowance in similar cases</u>:  Dechert asserts that the fees and expenses for which it seeks compensation and reimbursement are lower than the compensation sought and allowed in similar cases for similar services rendered and results obtained by Dechert and by its peer law firms.

## **BUDGET AND STAFFING PLAN**

46.      In accordance with the Retention Order and the Interim Compensation Order, attached hereto as <u>Exhibit F</u> are the budget and staffing plans that Dechert provided to the Debtors for the Compensation Period.

19

## **QUESTIONS REQUIRED BY U.S. TRUSTEE GUIDELINES**

47.     Dechert responds to the questions presented by the U.S. Trustee

Guidelines Appendix B as follows:

Question:  Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Answer: Yes.  The Debtors enjoy discounted rates as well volume discounts as described in the Retention Application.

Question:  If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Answer:  The fees sought by Dechert in the Second Interim Fee Application for the Compensation Period are not more than 10% higher than the fees budgeted pursuant to the budget provided by Dechert to the Debtors.  In fact, the total amount in fees sought by Dechert for the Compensation Period is $1,848,384 to $2,393,384 less than the amount originally budgeted by Debtors.

Question:  Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Answer:  No.

Question:  Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Answer:  Yes.  This application includes 164.3 hours with a value of $72,784.50 incurred in connection with the preparation of Fee Applications and fee statements for the Debtors.

Question:  Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Answer:  No. Dechert's review of its time records is done to ensure compliance with the Guidelines although in the process of such review, attention is given to confidential information.

20

Question:  If the fee application includes any rate increases since retention:

Did your client review and approve those rate increases in advance?

Answer:  Yes.  This application includes rate increases for the Patent Services as described in the Notice of Increased Patent Fees.

Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Answer:  No. The client did not agree to accept future rate increases.

## NOTICE

48.      Notice of this Application will be provided to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

## CONCLUSION

WHEREFORE, Dechert respectfully requests that the Court enter an order (i) that allowance be made to it in the sum of $3,706,616.10 as the fair and reasonable value of its actual and necessary professional services rendered by Dechert to the Debtors during the Compensation Period; (ii) that allowance be made to it in the sum of $612,547.92 as reimbursement for Dechert's actual and necessary expenses incurred during the Compensation Period; (iii) authorizing and directing the Debtors to pay to Dechert the unpaid balance of all approved fees and expenses; (iv) holding that the allowance of such interim compensation for professional services rendered and reimbursement of actual necessary expenses incurred be without prejudice to Dechert's right to seek additional compensation for services performed and expenses incurred

during the Compensation Period which were not processed at the time of this Application; and

(v) granting Dechert such other and further relief as it deems just and proper.

Dated: November 16, 2020                    Respectfully submitted,

                                            */s/ Shmuel Vasser*
                                            Shmuel Vasser
                                            DECHERT LLP
                                            1095 Avenue of the Americas
                                            New York, New York 10036
                                            Telephone:  (212) 698-3500
                                            Facsimile:  (212) 698-3599

                                            *Attorneys for Debtors and Debtors in Possession*

22

## EXHIBIT A

**Retention Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

**PURDUE PHARMA L.P.,** *et al.*,

Debtors.[1]

Chapter 11

Case No. 19-23649 (RDD)

(Jointly Administered)

---

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF DECHERT LLP AS SPECIAL COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application, dated November 5, 2019 (ECF No. 424) (the "**Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 327(e) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to retain Dechert as special counsel to the Debtors with respect to the Dechert Services, effective *nunc pro tunc* to the Petition Date, all as more fully set forth in the Application; and upon the declaration of Hayden Coleman, a partner of the law firm of Dechert LLP, attached to the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Application.

Application as **Exhibit B** (the "**Coleman Declaration**"), and this Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and there being no objections to the requested relief; and upon the record of the hearing held by the Court on the Application on November 19, 2019; and it appearing that Dechert does not hold or represent an adverse interest to the Debtors or their estates, is disinterested under section 101(14) of the Bankruptcy Code, and that its retention to perform the Dechert Services is necessary and in the best interests of the estates; now, therefore,

**IT IS HEREBY ORDERED THAT**:

1.      The Application is granted as set forth herein.

2.      Pursuant to sections 327(e) and 328(a) of the Bankruptcy Code the Debtors are authorized to retain Dechert as special counsel to the Debtors with respect to the Dechert Services, effective *nunc pro tunc* to the Petition Date, and Dechert is authorized to perform the Dechert Services described in the Application; provided, that Dechert shall use best efforts not to duplicate services of any of the Debtors' other professionals.

3.      Dechert shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Dechert Services in compliance with sections 330 and 331 of the Bankruptcy Code, as the case may be, and the applicable Bankruptcy Rules, Local Rules, and fee and expense guidelines and orders of the Court.

4.      Dechert shall provide at least ten (10) business days' notice to the Debtors, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases before implementing any increases in the rates set forth in the Application for professionals providing the Dechert Services, and such notice shall be filed with the Court.

5.      Notice of the Application as provided therein is good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by such notice.

6.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Application.

8.      In the event of any inconsistency between the Application and this Order, the terms of this Order shall govern.

9.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:    November 21, 2019
          White Plains, New York


                          /s/ Robert D. Drain
                          THE HONORABLE ROBERT D. DRAIN
                          UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**Certification**

17565294

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## STATEMENT PURSUANT TO
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016(b)

I, Shmuel Vasser, Esquire, hereby declare the following under penalty of perjury:

1.      I am a Partner in the applicant firm, Dechert LLP, and have been admitted to the bar of New York since 1991.

2.      I have personally performed some of the legal services rendered by Dechert LLP as counsel for the Debtors, and I am familiar with all other work performed on behalf of the Debtors by the lawyers and paraprofessionals in the firm.

3.      I have read the foregoing interim fee application of Dechert, attorneys for Debtors, for the Compensation Period (the "Fee Application"). To the best of my knowledge, information and belief, the statements contained in the Fee Application are true and correct. In addition, I believe that the Fee Application complies with Local Bankruptcy Rule 2016-1 and the

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New*

*York Bankruptcy Cases.*

4.      In connection therewith, I hereby certify that:

a.   to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Fee Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

b.   except to the extent disclosed in the Fee Application, the fees and disbursements sought in the Fee Application are billed at rates customarily employed by Dechert and generally accepted by Dechert's clients. In addition, none of the professionals seeking compensation varied their hourly rate based on the geographic location of these chapter 11 cases;

c.   the total fees sought do not exceed the total fees budgeted in the budget and staffing plan;

d.   Dechert did not increase hourly rates for the Litigation Services from those disclosed in the Retention Application during the Interim Compensation Period; however, Dechert increased the fees for the Patent Services as described in *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965] (the "**Notice of Increased Patent Fees**");

e.   Dechert is seeking compensation with respect to the approximately 164.3 hours with a value of $72,784.50 in fees spent reviewing or revising time records, preparing, reviewing, and revising invoices, monthly fee statements, and Dechert's retention application. Dechert concurrently revises its invoices for compliance with the Guidelines and in the process of doing so also redacts privileged and confidential information as appropriate. Accordingly Dechert did not spend any additional time associated with the redaction of privileged or confidential information;

f.   in providing a reimbursable expense, Dechert does not make a profit on that expense, whether the service is performed by Dechert in-house or through a third party;

g.   in accordance with Bankruptcy Rule 2016(a) and section 504 of the Bankruptcy Code, no agreement or understanding exists between Dechert and any other person for the sharing of compensation to be received in connection with the above cases except as authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules;

2

      h.   all services for which compensation is sought were professional services on behalf of Debtors and not on behalf of any other person; and

      i.    the U.S. Trustee, the Debtors, and all parties required under the Interim Compensation Order have been provided with a statement of the fees and disbursements for each month within the Compensation Period.

5.     I hereby certify under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 16, 2020             Respectfully submitted,

                                  */s/ Shmuel Vasser*
                                  Shmuel Vasser
                                  DECHERT LLP
                                  1095 Avenue of the Americas
                                  New York, New York 10036
                                  Telephone:  (212) 698-3500
                                  Facsimile:  (212) 698-3599
                                  shmuel.vasser@dechert.com

                                  *Attorneys for Debtors and Debtors in Possession*

**<u>EXHIBIT C</u>**

**Summary of Fees Requested by Timekeeper**

17565294

**Compensation by Individual for Debtors for Litigation Services**

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Sheila L Birnbaum | Partner | Litigation | 1965 | 1,350.00 | 593.70 | 801,495.00 |
| Timothy C. Blank | Partner | Litigation | 1986 | 1,085.00 | 3.80 | 4,123.00 |
| Mark S. Cheffo | Partner | Litigation | 1991 | 1,250.00 | 13.40 | 16,750.00 |
| Hayden A. Coleman | Partner | Litigation | 1997 | 915.00 | 677.40 | 619,821.00 |
| Mara C. Cusker Gonzalez | Partner | Litigation | 2006 | 890.00 | 108.00 | 96,120.00 |
| Hope S. Freiwald | Partner | Litigation | 1990 | 1,090.00 | 259.90 | 283,291.00 |
| Nathan E. Hoffman | Partner | Litigation | 2000 | 915.00 | 2.00 | 1,830.00 |
| Sara B. Roitman | Partner | Litigation | 2013 | 890.00 | 679.50 | 604,755.00 |
| Christina Sarchio | Partner | Litigation | 1997 | 1,085.00 | 0.80 | 868.00 |
| Erik W. Snapp | Partner | Litigation | 1995 | 915.00 | 13.50 | 12,352.50 |
| Shmuel Vasser | Partner | Restructuring/ Reorganization | 1991 | 915.00 | 35.60 | 32,574.00 |
| Bert L. Wolff | Partner | Litigation | 1985 | 915.00 | 13.00 | 11,895.00 |
| Christopher R. Boisvert | Counsel | Litigation | 2009 | 890.00 | 242.00 | 215,380.00 |
| Lindsey B. Cohan | Counsel | Litigation | 2010 | 855.00 | 2.70 | 2,308.50 |
| Danielle Gentin Stock | Counsel | Litigation | 2000 | 890.00 | 428.30 | 381,187.00 |
| Paul A. LaFata | Counsel | Litigation | 2008 | 890.00 | 79.20 | 70,488.00 |
| Jae H. Lee | Counsel | Litigation | 2006 | 890.00 | 1.90 | 1,691.00 |
| Jonathan S. Tam | Counsel | Litigation | 2009 | 890.00 | 87.20 | 77,608.00 |
| Michelle K. Yeary | Counsel | Litigation | 1996 | 890.00 | 130.70 | 116,323.00 |
| Tomas E. Barron | Associate | Litigation | 2020 | 490.00 | 6.10 | 2,989.00 |
| Noah Becker | Associate | Litigation | 2019 | 490.00 | 130.70 | 64,043.00 |
| Micah Brown | Associate | Litigation | 2019 | 490.00 | 103.20 | 50,568.00 |
| Craig J. Castiglia | Associate | Litigation | 2017 | 640.00 | 34.10 | 21,824.00 |
| Alyssa C. Clark | Associate | Litigation | 2018 | 640.00 | 108.20 | 69,248.00 |
| Alison S. Cooney | Associate | Litigation | 2013 | 825.00 | 23.90 | 19,717.50 |
| Rory M. Gledhill | Associate | Litigation | 2017 | 640.00 | 129.70 | 83,008.00 |
| Cara Kaplan | Associate | Restructuring/ Reorganization | 2019 | 565.00 | 41.00 | 23,165.00 |
| Mary H. Kim | Associate | Litigation | 2015 | 770.00 | 125.50 | 96,635.00 |

---

[1]    As described in the Retention Application, these billing rates reflect voluntary discounts of 1% to 24% for senior partners, 6% to 13% for junior partners, 1% to 5% for counsel, and 5% to 10% for associates.

17565294

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Sarah Magen | Associate | Litigation | 2013 | 840.00 | 58.80 | 49,392.00 |
| Benjamin F. McAnaney | Associate | Litigation | 2008 | 855.00 | 78.90 | 67,459.50 |
| Jenna C. Newmark | Associate | Litigation | 2012 | 855.00 | 51.50 | 44,032.50 |
| Katherine Norman | Associate | Restructuring/ Reorganization | 2019 | 490.00 | 12.00 | 5,880.00 |
| Nicolas A. Novy | Associate | Litigation | 2014 | 725.00 | 9.10 | 6,597.50 |
| Jon E. Olsson | Associate | Litigation | 2017 | 640.00 | 1.60 | 1,024.00 |
| Amisha R. Patel | Associate | Litigation | 2011 | 855.00 | 1.10 | 940.50 |
| Gabrielle N. Piper | Associate | Litigation | 2020 | 490.00 | 179.40 | 87,906.00 |
| Rachel M. Rosenberg | Associate | Litigation | 2016 | 725.00 | 4.40 | 3,190.00 |
| Sharon Turret | Associate | Litigation | 2019 | 565.00 | 13.20 | 7,458.00 |
| Cory A. Ward | Associate | Litigation | 2015 | 770.00 | 148.60 | 114,422.00 |
| Theodore E. Yale | Associate | Litigation | 2017 | 640.00 | 51.20 | 32,768.00 |
| Lindsay N. Zanello | Associate | Litigation | 2016 | 770.00 | 20.20 | 15,554.00 |
| Hassan Ahmed | Staff Attorney | Litigation | 2004 | 365.00 | 29.20 | 10,658.00 |
| Nicholas C. Dean | Staff Attorney | Litigation | 2017 | 365.00 | 1.20 | 438.00 |
| Kathleen Fay | Staff Attorney | Litigation | 1998 | 365.00 | 88.50 | 32,302.50 |
| Alvin C. Knight | Staff Attorney | Litigation | 1998 | 365.00 | 177.60 | 64,824.00 |
| Matthew B. Tate | Staff Attorney | Litigation | 1998 | 365.00 | 2.10 | 766.50 |
| Antonella Capobianco-Ranallo | Legal Assistant | Litigation | N/A | 200.00 | 181.80 | 36,360.00 |
| Danielle A. Torrice | Legal Assistant | Litigation | N/A | 200.00 | 45.80 | 9,160.00 |
| Jefferson Holder | Legal Assistant | Litigation | N/A | 200.00 | 6.10 | 1,220.00 |
| Luis Lopez | Legal Assistant | Litigation | N/A | 200.00 | 0.50 | 100.00 |
| Kurt Vinson | Legal Assistant | Litigation | N/A | 200.00 | 1.20 | 240.00 |
| Matthew B. Stone | Legal Assistant | Restructuring/ Reorganization | N/A | 200.00 | 86.80 | 17,360.00 |
| Sarah Taylor | Legal Assistant | Litigation | N/A | 200.00 | 13.60 | 2,720.00 |
| Denise Neris | Project Assistant | Litigation | N/A | 155.00 | 77.00 | 11,935.00 |
| Claudia Cohen | Research Analyst | Research Services | N/A | 185.00 | 2.30 | 425.50 |
| Brian K. Deaver | Research Analyst | Research Services | N/A | 185.00 | 0.10 | 18.50 |
| Robyn M. McAllen Broughton | Research Analyst | Research Services | N/A | 185.00 | 1.00 | 185.00 |
| David W. Lang | Research Analyst | Research Services | N/A | 185.00 | 0.50 | 92.50 |
| Janet Peros | Lead Research Analyst | Research Services | N/A | 185.00 | 0.70 | 129.50 |
| Taylor T. Southworth | Research Analyst | Research Services | N/A | 185.00 | 1.30 | 240.50 |

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Steven B. Singer | Research Assistant | Research Services | N/A | 185.00 | 1.20 | 222.00 |
| **Total** | | | | | **5,423.50** | **$4,408,079.00** |
| **18% Volume Discount[2]** | | | | | | **($793,454.22)** |
| **Discounted Total** | | | | | | **$3,614,624.78** |

### Compensation by Individual for Debtors for Patent Services

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate (Including Changes)[3] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Samuel B. Abrams | Partner | Intellectual Property | 1981 | 885.00 | 49.50 | 43,807.50 |
| Blaine M. Hackman | Associate | Intellectual Property | 2014 | 740.00 | 58.90 | 43,586.00 |
| Seth E. Snyder | Patent Agent | Intellectual Property | N/A | 585.00 | 13.30 | 7,780.50 |
| Sherrice T. Breland | Legal Assistant | Intellectual Property | N/A | 285.00 | 66.20 | 18,867.00 |
| Sara Levy | Legal Assistant | Intellectual Property | N/A | 160.00 | 0.70 | 112.00 |
| Donna Marks | Legal Assistant | Intellectual Property | N/A | 305.00 | 8.20 | 2,501.00 |
| Erin K. Peacock | Legal Assistant | Intellectual Property | N/A | 245.00 | 0.50 | 122.50 |
| **Total** | | | | | **197.30** | **$116,776.50** |
| **8% Volume Discount[4]** | | | | | | **($9,342.12)** |
| **Discounted Total** | | | | | | **$107,434.38** |

[2]    The Retention Application described a 12% discount for aggregate fees from $1 to $5 million; however, the correct discount for these aggregate fees is 18%, as reflected herein.

[3]    As described in Notice of Increased Patent Fees, these billing rates reflect voluntary discounts of 10% to 28% for partners, 19% for counsel, 22% for associates, 0% to 18% for paraprofessionals, and 7% to 10% for patent agents.

[4]    As described in the Notice of Increased Patent Fees, Dechert will apply an 8% discount for aggregate fees and this aggregate discount will apply to all timekeepers.

## **EXHIBIT D**

**Summary of Fees Requested by Project Category**

**Summary of Fees Requested by Project Category**

| Code | Project Category | Total Hours | Discounted Fees |
|------|------------------|-------------|-----------------|
| B110 | Case Administration | 8.40 | 4,454.00 |
| B160 | Fee/Employment Applications[1] | 171.40 | 78,856.00 |
| B165 | Budgeting (case) | 1.50 | 1,372.50 |
| B190 | Other Contested Matters | 1.50 | 1,372.50 |
| B310 | Claims Administration and Objections | 4.90 | 4,483.50 |
| L110 | Fact Investigation/Development | 253.80 | 114,145.00 |
| L120 | Analysis/Strategy | 3,805.80 | 3,421,164.50 |
| L130 | Experts/Consultants | 89.70 | 75,374.00 |
| L140 | Document/File Management | 81.60 | 16,320.00 |
| L160 | Settlement/Non-Binding ADR | 107.40 | 92,548.50 |
| L190 | Other Case Assessment, Development and Administration | 173.30 | 62,941.00 |
| L210 | Pleadings | 20.20 | 13,948.00 |
| L220 | Preliminary Injunctions/Provisional Remedies | 3.90 | 3,511.00 |
| L230 | Court Mandated Conferences | 59.80 | 39,327.00 |
| L250 | Other Written Motions and Submissions | 3.30 | 1,766.50 |
| L260 | Class Action Certification and Notice | 140.80 | 90,112.00 |
| L310 | Written Discovery | 260.00 | 268,100.00 |
| L320 | Document Production | 30.40 | 27,056.00 |
| L330 | Depositions | 42.70 | 21,442.50 |
| L340 | Expert Discovery | 2.00 | 1,795.00 |
| L350 | Discovery Motions | 0.50 | 457.50 |
| L390 | Other Discovery | 117.90 | 31,524.00 |
| L410 | Fact Witnesses | 18.10 | 14,832.50 |
| L420 | Expert Witnesses | 0.50 | 457.50 |
| L430 | Written Motions and Submissions | 1.40 | 1,015.00 |
| L440 | Other Trial Preparation and Support | 8.40 | 6,846.00 |
| L450 | Trial and Hearing Attendance | 3.70 | 3,293.00 |
| L510 | Appellate Motions and Submissions | 2.50 | 2,235.00 |
| L520 | Appellate Briefs | 4.40 | 4,003.50 |
| L530 | Oral Argument | 3.70 | 3,325.50 |
| P260 | Intellectual Property | 197.30 | 116,776.50 |
| **Total** | | **5,620.80** | **$4,524,855.50** |

---

[1]    This category includes time spent preparing Dechert's Retention Application materials, including reviewing Dechert's connections with potential parties-in-interest in the Debtors' chapter 11 cases, as well as fee-related disclosures.

17565294

## EXHIBIT E

**Summary of Expense Reimbursement Requested by Category**

## Expense Summary for Debtors

| Expenses Category | Total Expenses |
|---|---|
| Consultants Fees[1] | $358,890.82 |
| Court Costs | $1,065.25 |
| Courtlink Search | $163.07 |
| Document Storage/Retrieval | $176.45 |
| Federal Express Charges | $214.89 |
| Filing Fees and Related | $7,345.00 |
| Lexis/Legal Research | $752.09 |
| Pacer Research Fees | $2,243.50 |
| Registration Fee | $421.00 |
| Research Fees | $233.25 |
| Transcripts | $198,168.59 |
| Video and Electronic Expenses | $23,380.00 |
| Westlaw Search Fees | $19,494.01 |
| | |
| **Total** | **$612,547.92** |

---

[1]    These consultant fees represent fees incurred from Ankura Consulting Group, LLC, a firm that manages a document hosting platform necessary for Dechert to provide legal services to the Debtors.

17565294

## <u>EXHIBIT F</u>

**Budget and Staffing Plan**

17565294

**MASS TORT LITIGATION BUDGET**

**Scenario:  Bankruptcy in September; No trial; Cases, including government cases and cases against related parties, stayed**

| Category | Jun-20 | Jul-20 | Aug-20 | Sept-20 |
|---|---|---|---|---|
| Base Rate | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| Additional Trial Fees | $0 | $0 | $0 | $0 |
| Appeal Fees | $0 | $0 | $0 | $0 |
| Subtotals | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
|  |  |  |  |  |
| Before Discount | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| Discount | $312,500 | $312,500 | $312,500 | $312,500 |
| **After Discount** | **$1,250,000** | **$1,250,000** | **$1,250,000** | **$1,250,000** |

**BANKRUPTCY/IP RELATED BUDGET**
**JUNE 2020 – SEPTEMBER 2020**

| CATEGORY | ESTIMATED FEES |
|---|---|
| CASE ADMINISTRATION | $75,000-$150,000 |
| RELIEF FROM STAY/ADEQUATE PROTECTION | $20,000-$40,000 |
| FEE/EMPLOYMENT APPLICATIONS | $150,000-$250,000 |
| BUDGETING | $10,000-$20,000 |
| CLAIMS ADMINISTRATION AND OBJECTIONS | $100,000-$200,000 |
| GENERAL BANKRUPTCY ADVICE/OPINIONS | $100,000-$200,000 |
| IP MATTERS | $100,000-$150,000 |

17565294

**DECHERT STAFFING PLAN**
**JUNE 2020 – SEPTEMBER 2020**

| Staffing Plan | | |
|---|---|---|
| Years of Experience for Timekeeper (based on law school graduation) | Number of Timekeepers Expected to Work on the Matter During the Budget Period | Average Hourly Rate |
| 15+ Years | 22 | $969.09 |
| 8-14 Years | 17 | $830.88 |
| 4-7 Years | 9 | $770.56 |
| 0-3 Years | 15 | $590.33 |
| Paralegal | 16 | $212.81 |

## EXHIBIT G

**Blended Rate Schedule**

17565294

**Blended Rate Schedule**

Dechert's hourly rates for bankruptcy services are comparable to the hourly rates charged in complex chapter 11 cases by comparably skilled bankruptcy attorneys.  In addition, Dechert's hourly rates for bankruptcy services are comparable to the rates charged by the Firm, and by comparably skilled practitioners in other firms, for complex corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  By way of example, Dechert's blended hourly rates for attorneys and paraprofessionals in the Financial Services, the Finance and Real Estate, and the White Collar, Securities, and Complex Commercial Litigation practice groups of the Firm for the prior calendar year were as set forth below.  Dechert believes that the services performed by those sections of the Firm are comparable to the services performed professionals who performed services during the Compensation Period.  Also included below is blended hourly rate information for the past calendar year for all sections of the Firm.

| Category of Timekeeper | Blended Hourly Rate[1] | | |
| --- | --- | --- | --- |
| | **Billed**<br><br>**In comparable practice areas[2] for 6/1/2020 - 9/30/2020** | **Billed**<br><br>**Firm-wide for 6/1/2020 - 9/30/2020** | **Billed**<br><br>**This Application** |
| **Partner** | $1,041 | $1,047 | $1,032.48 |
| **Counsel** | $820 | $818 | $890.00 |
| **Associate** | $658 | $665 | $654.71 |
| **Paralegal** | $266 | $262 | $215.82 |
| **Aggregated:** | $738 | $754 | $841.25 |

1 - All columns reflect US information only
2 - Comparable practice areas reflect PLMT, TIS, FRE, and FSG information only

17565294