DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Eli J. Vonnegut
James M. Millerman
Marc J. Tobak
Dylan A. Consla
Kathryn S. Benedict

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF A KEY EMPLOYEE INCENTIVE PLAN AND A KEY EMPLOYEE RETENTION PLAN**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................................................................1

THE AGREED MODIFICATIONS TO THE KEIP ...................................................................3

ARGUMENT ..................................................................................................................................4

I.      Legal Standard ..................................................................................................4

II.     The Amount of Incentive Opportunities Under the KEIP Are Appropriate ........................5

III.    The KEIP Metrics Are Incentivizing ................................................................6

IV.    There Is No Basis to Deny the KEIP Because of Alleged Lack of Progress in These Chapter 11 Cases ..............................................................................................9

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

P<small>AGE</small>(S)

C<small>ASES</small>

*In re Aralez Pharm. US Inc.*, No. 18-12425 (MG), 2018 WL 6060356
  (Bankr. S.D.N.Y. Nov. 19, 2018) .................................................................................... 5, 9

*In re Borders Grp., Inc.*, 453 B.R. 459 (Bankr. S.D.N.Y. 2011) ..................................................... 5

*In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 WL 3810899
  (Bankr. S.D.N.Y. Sept. 24, 2010) ........................................................................................ 5

*In re Residential Capital, LLC* 478 B.R. 154 (Bankr. S.D.N.Y. 2012) .......................................... 4

*In Re Velo Holdings, Inc.*, 472 B.R. 201 (Bankr. S.D.N.Y. 2012) ................................................. 6

*United Mine Workers of Am. 1974 Pension Plan & Tr. v. Alpha Nat. Res., Inc.*,
  553 B.R. 556 (E.D. Va. 2016) ............................................................................................. 4

S<small>TATUTES</small>

11 U.S.C. § 503(1) ............................................................................................................... 4, 5, 9

11 U.S.C. § 503(3) ....................................................................................................................... 6

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**" or "**Purdue**") respectfully submit this supplemental reply (the "**Supplemental KEIP Reply**") in support of the *Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* [ECF No. 1674] (the "**Motion**" or "**Mot.**")[2] as it pertains to the final two remaining KEIP Participants and in response to the sole remaining objection.[3] In further support of the Motion and the Supplemental KEIP Reply, the Debtors rely on the *Second Supplemental Declaration of Josephine Gartrell in Support of the Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* (the "**Second Supplemental Willis Towers Watson Declaration**" or "**Sec. Suppl. Willis Towers Watson Decl.**"), attached hereto as <u>**Exhibit B**</u>, as well as the Lowne Declaration, Willis Towers Watson Declaration, and Supplemental Willis Towers Watson Declaration previously submitted in connection with the Motion, and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. The only remaining issue before this Court is whether the Debtors may provide the proposed annual incentive compensation under the KEIP in the reduced amounts set forth herein to the Debtors' CEO, Dr. Craig Landau (the "**CEO**"), and CFO, Jon Lowne (the "**CFO**" and collectively with the CEO, the "**Remaining KEIP Participants**"). The only party who objects to

---

[2] Except where otherwise indicated, capitalized terms used but not defined in this Supplemental KEIP Reply have the meanings ascribed to them in the Motion.

[3] Objections were filed by the following parties: The United States Trustee for Region 2 (the "**U.S. Trustee**") [ECF No. 1708] (the "**UST Objection**" or "**UST Obj.**") and the Ad Hoc Committee on Accountability [ECF No. 1710] (the "**AHC Objection**" or "**AHC Obj.**" and collectively, the "**Objections**"). The Objections were resolved or overruled with respect to the KERP and the Initial KEIP Participants (defined below). *See Order Authorizing the Debtors to Implement a Key Employee Retention Plan* [ECF No. 1762] (the "**KERP Order**"), recitals & ¶ 3; *Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [ECF No. 1861] (the "**KEIP Order**"), recitals & ¶ 3. The AHC Objection has been withdrawn with respect to the Remaining KEIP Participants (as defined below). The UST Objection remains outstanding with respect to the Remaining KEIP Participants (as defined below).

1

such relief is the U.S. Trustee. None of the parties with an economic interest in this case have maintained an objection to the Remaining KEIP Participants' proposed compensation.

2.  Rather, the Debtors are pleased to report that, after extensive discussions with the Official Committee of Unsecured Creditors (the "**UCC**"), the Non-Consenting States Group (the "**NCSG**"), the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Ad Hoc Committee**") and the Multi-State Governmental Entities Group (the "**MSGE**"), all these groups have decided not to object to the approval of the KEIP with respect to the Remaining KEIP Participants pursuant to an agreement under which the Remaining KEIP Participants' compensation will be reduced by approximately $711,000 and certain other modifications will be made that parallel the prior agreed changes to the KERP and KEIP with respect to the four KEIP Participants (the "**Initial KEIP Participants**") whose participation in the KEIP was approved at the prior hearing. The form of order effectuating that settlement is fully agreed with all those parties. The Ad Hoc Committee on Accountability has also informed the Debtors that it is withdrawing its objection in light of these developments.

3.  The Remaining KEIP Participants have been instrumental in achieving exceptional results for the Debtors' businesses while navigating a uniquely difficult chapter 11 restructuring. It is critical that the Debtors continue to appropriately incentivize these key employees in order to continue to preserve and maximize the value of the Debtors' estates. The Debtors submit that the decision to pursue the revised proposed KEIP for the Remaining KEIP Participants is a reasonable business judgment for the same reasons that the KEIP was approved with respect to the Initial KEIP Participants, particularly in light of the absence of any objection to the program from any creditor.

## THE AGREED MODIFICATIONS TO THE KEIP

4.  The Debtors have agreed to make the following modifications to the KEIP with respect to the Remaining KEIP Participants:

- the KEIP Award with respect to the CEO will be reduced by $593,000;

- the LTRP payouts due in 2022 and long-term incentive compensation grants payable in 2023 with respect to both the CEO and CFO will each be reduced by 4.5%;

- the KEIP Award will be paid (x) 50% as soon as reasonably practicable after entry of an order authorizing such payment[4] (rather than in October 2020) and (y) 50% on or about March 31, 2021 (rather than in January 2021);[5]

- the KEIP Award payments will be subject to a clawback if the Remaining KEIP Participant resigns or is terminated for any reason other than by the Debtors without cause prior to June 30, 2021 (rather than March 15, 2021), except that such clawback will expire upon emergence should it occur earlier;

- the LTRP payouts due in 2022 will be accelerated upon emergence, subject to a clawback through the date that such payments would otherwise have been made absent emergence; and

- the long-term incentive compensation grants payable in 2023 will be accelerated upon emergence, subject to a clawback through the date that such payments would otherwise have been made absent emergence.

5.  The changes to payment dates and clawback provisions are consistent with the changes that the Debtors previously agreed to make to the KEIP with respect to the Initial KEIP Participants and to the KERP.

6.  These reductions are in addition to the reductions relative to the amounts that would have been paid under the Debtors' longstanding AIP and LTRP compensation programs that were already incorporated into the relief that the Debtors originally sought in the Motion.

---

[4] The modified payment date for the Initial KEIP Participants of November 1, 2020 with respect to such payment passed prior to filing this Supplemental KEIP Reply.

[5] All payment dates referenced herein are approximate. Payments will be made on the closest scheduled payroll date.

3

7.  A supplemental order (the "**Supplemental KEIP Order**") authorizing the KEIP for the Remaining KEIP Participants subject to these changes is attached hereto as **Exhibit A**.

## ARGUMENT

### I. Legal Standard

8.  Section 503(c)(1) of the Bankruptcy Code, which prohibits, with limited exceptions, a transfer to an insider "for the purpose of inducing such person to remain with the debtor's business," does not apply to the Debtors' proposed KEIP. An incentive-based compensation plan that rewards insiders for achieving certain financial metrics or other targets is permitted under section 503(c)(1) so long as it is "primarily incentivizing and not primarily retentive." *In re Residential Capital, LLC* 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2012).

9.  Courts have distinguished compensation plans that are primarily incentivizing from those that are primarily retentive by looking to whether "the goals [are] almost certain to be met regardless of the [relevant] participants' action." *United Mine Workers of Am. 1974 Pension Plan & Tr. v. Alpha Nat. Res., Inc.*, 553 B.R. 556, 563 (E.D. Va. 2016); *see also In re Residential Capital, LLC*, 478 B.R. at 171 ("When a plan is designed to motivate employees to achieve specified performance goals, it is primarily incentivizing, and thus not subject to section 503(c)(1)."). Under this metric, courts have rejected compensation plans that are conditioned solely on the occurrence of a transaction or emergence. *See, e.g.*, *In re Residential Capital, LLC*, 478 B.R. at 171. By contrast, courts routinely approve compensation plans that are "tied . . . to the achievement of particular financial milestones," *In re Borders Grp., Inc.*, 453 B.R. 459, 471-72 (Bankr. S.D.N.Y. 2011), and that are consistent with past practice, *see, e.g.*, *In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 WL 3810899, at *3 (Bankr. S.D.N.Y. Sept. 24, 2010).

10. When evaluating proposed compensation plans under section 503(c)(1), courts examine the challenging nature of the financial targets from the perspective of "[w]hen the KEIP

4

was developed," rather than with the 20/20 hindsight available at the time that the KEIP is being evaluated by the court. *In re Aralez Pharm. US Inc.*, No. 18-12425 (MG), 2018 WL 6060356, at *4 (Bankr. S.D.N.Y. Nov. 19, 2018). Indeed, courts have rejected the view that a proposed incentive plan should fail under section 503(c)(1) because its "targets now appear achievable in hindsight." *Id.* at * 5. Rather, courts determine whether the "targets appeared difficult to achieve and likely to incentivize the KEIP Participants to work hard for the benefit of the estate . . . as originally developed." *Id*. at *4-5.

11. Incentive plans for insiders outside of the ordinary course are subject to the "facts and circumstances test" of section 503(c)(3). As the court in *In Re Velo Holdings, Inc*. observed, "the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)." 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012). In the Motion, the Debtors set forth in extensive detail the manners in which the KEIP satisfies the *Dana II* Factors that courts use to evaluate the reasonableness of a compensation plan and thus constitutes a sound exercise of business judgement. Mot. ¶¶ 61-77.

## II. The Amount of Incentive Opportunities Under the KEIP Are Appropriate

12. At the October omnibus hearing, this Court granted the KEIP with respect to the Initial KEIP Participants after considering, among other things, the benchmarking analysis against non-distressed companies in the pharmaceutical industry provided in the Supplemental Willis Towers Watson Declaration. This analysis showed that the agreed reductions moved the compensation of three of the four Initial KEIP Participants (other than General Counsel, whose compensation was acknowledged to reflect a special situation) to the midpoint of the 50th and 75th percentile of the industry range for comparably-situated executives in the aggregate. The Court found that these reductions "place[d] these executives in the middle of industry compensation for people performing jobs like theirs." Hr'g. Tr., 23:8-10, Oct. 28, 2020.

13. The Second Supplemental Willis Towers Watson Declaration demonstrates that the compensation of both the CEO and CFO falls <u>below</u> the midpoint of the 50th and 75th percentile after the agreed changes described above, as reflected in the table copied below. Accordingly, the compensation of the CEO and CFO with the proposed incentive opportunities provided by the KEIP falls <u>lower</u> on this same benchmark than that of those three Initial KEIP Participants.

|  | Variance to Market TDC | | | | | |
|---|---|---|---|---|---|---|
|  | Purdue Base + Proposed 2020 KEIP | | | Purdue Base + Proposed 2020 KEIP Subject to Agreed Reductions | | |
|  | P25 | P50 | P75 | P25 | P50 | P75 |
| President & Chief Executive Officer | 72% | 21% | -16% | 56% | 9% | -24% |
| EVP, Chief Financial Officer | 59% | 15% | -17% | 59% | 15% | -17% |

14. In addition, this Court found at the October omnibus hearing that "Ms. Gartrell addresses th[e] dynamic [with respect to the differences between cash and stock compensation] appropriately in her supplemental declaration." Hr'g. Tr. 23:24-25, Oct. 28, 2020. The same explanation holds true with respect to the proposed compensation of the CEO and CFO. Accordingly, the proposed incentive opportunities for the Remaining KEIP Participants represent a reasonable exercise of business judgement.

### III.     The KEIP Metrics Are Incentivizing

15. The U.S. Trustee argues (with no evidence) that the KEIP is not an incentive plan because the KEIP's Performance Metrics do not "present difficult targets that will incentivize future performance." UST Obj. at 11. The U.S. Trustee fails to address that the Performance Metrics are highly analogous to the metrics with respect to the Debtors' AIP that were approved last year and are the metrics that apply to all of the Initial KEIP Participants for 2020. *See*

Supplemental Final Wages Order and Second Supplemental Wages Order. Indeed, the U.S. Trustee likewise objected to last year's compensation plan on similar grounds, yet this Court nevertheless approved such compensation plan based on the copious evidence provided in the supporting testimony. Hr'g Tr., 100:17-22, Dec. 4, 2019; Supplemental Final Wages Order. The Court should do so again now.

16. This year's Performance Metrics were designed using the same rigorous process as last year's metrics, contain the same high-level categories of metrics (value creation, innovation and efficiency, and people and culture) with similar weighting and with performance goals of a similar nature within each category, were similarly set early in the relevant performance period and presented for approval at a later date due to outside circumstances, and are supported by similar testimony from the same two declarants as was the prior program. *Compare Second Supplemental Declaration of Jon Lowne in Support of the Wages Motion* [ECF No. 554] (the "**Dec. 2, 2019 Lowne Decl.**") ¶ 15 and *Declaration of Josephine Gartrell in Support of Debtors' Key Employee Plans* [ECF No. 555] (the "**Dec. 2, 2019 Willis Towers Watson Decl.**") ¶¶ 16-18, 23-25 *with* Lowne Decl. ¶ 23 and Willis Towers Watson Decl. ¶ 18; *see* Supplemental Final Wages Order; Second Supplemental Wages Order. These metrics are "consistent with and are a continuation of past practice," Dec. 2, 2019 Lowne Decl. ¶ 28—a past practice that was approved by the Court last year. *See* Supplemental Final Wages Order; Second Supplemental Wages Order. Indeed, last year the Court questioned Mr. Lowne about the Debtors' budgeting process that was used to set the financial metrics, eliciting testimony about how the Company ensured that the metrics "truly are stretch objectives." Hr'g Tr., 72:3-75:3, Dec. 4, 2019 ("THE COURT: So are there times when you ask them for more results than they proposed? THE WITNESS: Significantly more."). This year's Performance Metrics were set in a similar manner. *See* Lowne Decl. ¶¶ 8, 23. The Motion

7

describes how the KEIP Award is conditioned on meeting Performance Metrics that "were challenging, required extensive achievement and presented a meaningful risk of not being met at the threshold level required for payment" when the Compensation Committee set them. Mot. ¶ 27. The Debtors' CFO, Mr. Lowne, offered unrebutted testimony attesting to the fact that the Performance Metrics "are ambitious, having threshold targets that are difficult to achieve both individually and when considered in combination, and will require the KEIP Participants' diligent and committed efforts." Lowne Decl. ¶ 22. Moreover, Willis Towers Watson assisted the Compensation Committee with developing the Performance Metrics, and Ms. Gartrell, the declarant from Willis Towers Watson, testified that "[t]he KEIP is purely incentive based. The KEIP Awards will be conditioned on the KEIP Participants' ability to meet the Performance Metrics set out in the Scorecard, thus ensuring that the KEIP Participants are properly incentivized to work toward a value-maximizing restructuring of the Debtors' estates during this critical stage of these Chapter 11 Cases." Willis Towers Watson Decl. ¶ 18.

17. Further, the U.S. Trustee's argument that the KEIP fails under section 503(c)(1) because some metrics have already been satisfied is similarly misguided. UST Obj. at 13. Courts have appropriately looked to when a compensation plan was developed, rather than the date of the motion, to assess its reasonableness. *In re Aralez Pharm. US Inc.*, 2018 WL 6060356, at *5 . While some of the 2020 Performance Metrics appear likely to be achieved approximately nine months after being set, others still require extensive work to be achieved, and it is a virtual certainty that others will not be achieved. Mot. ¶ 27. Indeed, the fact that some of the metrics almost certainly will not be met this year further supports the conclusion that the Performance Metrics were difficult to achieve when set.

**IV.    There Is No Basis to Deny the KEIP Because of Alleged Lack of Progress in These Chapter 11 Cases**

18.     The UST Objection also argues that payments under the KEIP should not be authorized because an emergency fund has not been put in place and the Debtors have not yet filed a chapter 11 plan. UST Obj. at 16. The Court overruled this objection with respect to the KERP Participants and should do so with respect to the Remaining KEIP Participants as well. *See* Hr'g Tr., 138:9-139:4, Sept. 30, 2020; *see also* KERP Order. While the KEIP Participants, particularly the Remaining KEIP Participants, are more senior employees who have greater responsibility for managing the company and navigating these Chapter 11 Cases, the rationale for overruling the objection with respect to the KERP Participants applies with equal force to the Remaining KEIP Participants.

19.     First, with respect to the emergency relief fund, the Court specifically recognized that putting in place an emergency relief fund is not something that the Debtors' management can accomplish on its own without broad creditor support despite a desire and efforts to do so, directly stating that "even the decision-makers here for the company are not responsible for there not being an emergency fund." Hr'g Tr., 112:19-20, Sept. 30, 2020. And creditor consensus proved impossible to obtain despite months of effort.

20.     Second, the same logic applies to confirmation of a plan of reorganization. The KEIP Participants, including the Remaining KEIP Participants, have been working tirelessly—and effectively—toward that goal, and it is not because of any lack of effort or skill on the part of the KEIP Participants that this difficult and complex task has not yet been completed. More generally, as set forth in more detail in paragraphs 15-16 of the *Debtors' Omnibus Reply in Support of Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* [ECF No. 1742] (the "**KERP Reply**"), there is simply no

9

authority for the notion that a chapter 11 debtor should stop appropriately compensating its workforce—including its senior management—after one year in bankruptcy or in the absence of a filed chapter 11 plan. *See* KERP Reply ¶ 15. In fact, courts have approved KEIPs and KERPs more than one year into chapter 11 cases on many occasions. *See id*. Similarly, as the Debtors previously explained, this argument is particularly inapposite as applied to an annual compensation plan this is intended to be approved every year. *See id.* at ¶ 16. This logic applies to the KEIP in precisely the same way as it did to the KERP that this Court authorized. Finally, the KERP Reply describes the substantial progress that the Debtors have made toward confirmation, *see* KERP Reply ¶¶ 17-18, including the result of the mediation, about which this Court observed that "[i]t's rare—perhaps unprecedented—to have the level of consensus that occurred in the mediation occur in this country. And it is due, not only to the mediators, but also as the mediators recognized in their report, the good faith and hard efforts of the parties [to the mediation]." Hr'g Tr., 25:16-20, Sept. 30, 2020. Moreover, as this Court is well aware, the Debtors have also taken another significant step toward confirmation since that time by filing the *Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United States* [ECF No. 1828].

21. The Debtors have made substantial progress toward plan confirmation under the leadership of the Remaining KEIP Participants, which supports the need to continue to appropriately incentivize the Remaining KEIP Participants as requested by the Motion.

*[Remainder of page intentionally left blank]*

**CONCLUSION**

WHEREFORE, for the foregoing reasons and the reasons stated in the Motion, the Debtors respectfully request that the Court overrule the remaining objection and promptly grant the relief requested in the Motion with respect to the Remaining KEIP Participants in the modified form set forth in the proposed Supplemental KEIP Order.

Dated:   November 16, 2020
         New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        By:  /s/ *Eli J. Vonnegut*

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile: (212) 701-5800
                                        Marshall S. Huebner
                                        Eli J. Vonnegut
                                        James M. Millerman
                                        Marc J. Tobak
                                        Dylan A. Consla
                                        Kathryn S. Benedict

                                        *Counsel to the Debtors
                                        and Debtors in Possession*

11