AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SUMMARY COVER SHEET TO THE THIRD INTERIM FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., ET AL.,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF
JUNE 1, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020**

In accordance with the Local Bankruptcy Rules for the Southern District of New York,

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of

Unsecured Creditors of Purdue Pharma L.P. and its affiliated debtors and debtors in possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp.  (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc.  (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc.  (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc.  (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

submits this summary (the "Summary") of fees and expenses sought as actual, reasonable and necessary in the fee application to which the Summary is attached (the "Application")[2] for the period from June 1, 2020 through and including September 30, 2020 (the "Compensation Period").

Akin Gump submits the Application as its third interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order").

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.* |
| Petition Date: | September 15, 2019 |
| Retention Date: | November 21, 2019, *nunc pro tunc* to September 26, 2019 |
| Prior Applications: | 2 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | June 1, 2020 through and including September 30, 2020 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $22,112,857.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $1,358,212.79 |
| Total Compensation and Expenses Requested for the Compensation Period: | $23,471,070.29 |

---

[2] Capitalized terms used but not defined in the Summary shall have the meanings ascribed to such terms in the Application.

| | |
|---|---|
| ***Summary of Past Requests for Compensation and Prior Payments*** | |

Total Compensation Approved by Interim Order to Date: $27,121,033.25[3]

| | |
|---|---|
| Total Expenses Approved by Interim Order to Date: | $401,779.03 |
| Total Allowed Compensation Paid to Date: | $27,121,033.25 |
| Total Allowed Expenses Paid to Date: | $401,779.03 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees for the period from June 1, 2020 through and including September 30, 2020):[4] | $17,690,286.00 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses for the period from June 1, 2020 through and including September 30, 2020): | $1,358,212.79 |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $19,048,498.79 |

---

[3] On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements. Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner, and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020. On September 2, 2020, the Court entered an order [ECF No. 1649] allowing the fees and expenses requested by Akin Gump in the Second Interim Fee Application in the total amount of $17,644,573.70, reflecting a fee reduction of $154,951.00 proposed by the Fee Examiner and agreed to by Akin Gump. The "Total Compensation Approved by Interim Order to Date" ($27,121,033.25) reflects the aforementioned reductions.

[4] As of the date of this Application, Akin Gump has filed monthly fee statements for each month comprising the Compensation Period. Pursuant to the Interim Compensation Order, Akin Gump has received 80% of the fees requested and 100% of the expenses requested by each such Monthly Fee Statement, other than for the months of August and September, for which it has not yet received compensation for any fees or reimbursement of expenses. Akin Gump anticipates that it will receive 80% of the fees requested and 100% of the expenses requested in its August and September Monthly Fee Statements before the hearing on this Application. If such fees and expenses are paid as anticipated, as of the date of the hearing on this Application: (i) the total compensation sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $17,690,286.00; (ii) the total expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $1,358,212.79; (iii) the total compensation and expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $19,048,498.79; and (iv) the total compensation and expenses sought in this Application not yet paid will be $4,422,571.50.

| | |
|---|---|
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $4,422,571.50 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $4,059,658.00[5] |

## Summary of Rates and Other Related Information for the Compensation Period

| | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $911.66 |
| Blended Rate in this Application for All Timekeepers: | $856.99 |
| Number of Timekeepers Included in this Application: | 129 (107 attorneys; 22 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 12 |
| Increase in Rates Since Date of Retention: | 1[6] |
| Interim or Final Application: | Interim |

---

[5] Prior to filing its Monthly Fee Statements for the Compensation Period, Akin Gump voluntarily reduced its fees by the aggregate amount of $4,059,658.00.  In the Chapter 11 Cases to date, Akin Gump has reduced its fees by the aggregate amount of $5,569,139.75, which amount includes, in addition to the above voluntary amount for the Compensation Period: (i) $362,267.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the First Interim Fee Period; (ii) a $125,739.75 fee reduction for the First Interim Fee Period pursuant to an agreement with the Fee Examiner; (iii) $866,524.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Second Interim Fee Period; and (iv) a $154,951.00 fee reduction for the Second Interim Fee Period pursuant to an agreement with the Fee Examiner.  Akin Gump does not and will not seek payment of the foregoing fees and expenses in this Application or any other application.  For the avoidance of doubt, the foregoing voluntary reductions are not based on any determination that such fees are not appropriate or compensable.

[6] Akin Gump increased its rates on January 1, 2020, consistent with its customary practice and as disclosed in the Akin Retention Application.

## SUMMARY OF MONTHLY FEE STATEMENTS IN THE COMPENSATION PERIOD

| Docket Number | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid | Total Unpaid |
|---|---|---|---|---|---|---|
| 1559 | 6/1/20 - 6/30/20 | $4,499,654.00 | $128,348.37 | $3,599,723.20 | $128,348.37 | $899,930.80 |
| 1696 | 7/1/20 - 7/31/20 | $4,908,347.00 | $124,849.29 | $3,926,677.60 | $124,849.29 | $981,669.40 |
| 1870 | 8/1/20 - 8/31/20 | $5,749,763.50 | $646,665.40 | $0.00 | $0.00 | $6,396,428.90 |
| 1923 | 9/1/20 - 9/30/20 | $6,955,093.00 | $458,349.73 | $0.00 | $0.00 | $7,413,442.73 |
| **Totals** | | **$22,112,857.50** | **$1,358,212.79** | **$7,526,400.80** | **$253,197.66** | **$15,691,471.83** |

Summary of Any Objections to Monthly Fee Statements: None

Compensation and Expenses Sought in This Application Not Yet Paid: $15,691,471.83

v

## COMPENSATION BY PROFESSIONAL
## JUNE 1, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020

| Partner | Department | Year of Admission | Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,225.00 | 899.3 | $1,101,642.50 |
| Paul Butler | Litigation | 1991 | $1,175.00 | 59.9 | $70,382.50 |
| Nathan Brown | Health | 2000 | $1,135.00 | 5.8 | $6,583.00 |
| Julius Chen | Litigation | 2010 | $1,015.00 | 69.7 | $70,745.50 |
| Ashley Crawford | Litigation | 2003 | $1,075.00 | 572.9 | $615,867.50 |
| Olivier De Moor | Tax | 2009 | $1,175.00 | 23.2 | $27,260.00 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,595.00 | 5.5 | $8,772.50 |
| Shawn Hanson | Litigation | 1983 | $1,135.00 | 42.8 | $48,578.00 |
| Mitchell Hurley | Litigation | 1997 | $1,595.00 | 1056.2 | $1,684,639.00 |
| Howard Jacobson | Tax | 1979 | $1,240.00 | 37.7 | $46,748.00 |
| Stephen Kho | International Trade | 1998 | $1,135.00 | 118.5 | $134,497.50 |
| Jeffrey Kochian | Corporate | 2000 | $1,360.00 | 191.3 | $260,168.00 |
| Eli Miller | Corporate | 2009 | $1,075.00 | 85.6 | $92,020.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,595.00 | 617.9 | $985,550.50 |
| Abid Qureshi | Financial Restructuring | 1995 | $1,595.00 | 1.6 | $2,552.00 |
| Steven Ross | Litigation | 1976 | $1,300.00 | 5.3 | $6,890.00 |
| Corey Roush | Litigation | 1997 | $1,135.00 | 42.3 | $48,010.50 |
| Robert Salcido | Health | 1989 | $1,155.00 | 78.4 | $90,552.00 |
| Elizabeth Scott | Litigation | 2007 | $1,075.00 | 714.4 | $767,980.00 |
| Seth Slotkin | Tax | 1996 | $1,195.00 | 24.4 | $29,158.00 |
| Joseph Sorkin | Litigation | 2008 | $1,350.00 | 279.6 | $377,460.00 |
| James Tysee | Litigation | 2008 | $1,075.00 | 43.6 | $46,870.00 |
| David Vondle | Intellectual Property | 2002 | $1,115.00 | 291.1 | $324,576.50 |
| Alan Yanovich | International Trade | 1997 | $1,035.00 | 9.5 | $9,832.50 |
| Jacqueline Yecies | Litigation | 2009 | $1,115.00 | 271.2 | $302,388.00 |
| **Partner Total:** | | | | **5,547.70** | **$7,159,724.00** |

| Senior Counsel & Counsel | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Christin Carey | Public Law & Policy | 2012 | $885.00 | 187.8 | $166,203.00 |
| Sharon Davidov | Tax | 2013 | $1,010.00 | 191.5 | $193,415.00 |
| Eugene Elder | Health | 1990 | $975.00 | 283.5 | $276,412.50 |

| Melissa Gibson | Intellectual Property | 2010 | $950.00 | 178.8 | $169,860.00 |
|---|---|---|---|---|---|
| Daniel Graver | Health | 2014 | $885.00 | 41 | $36,285.00 |
| Elizabeth Harris | Tax | 1987 | $1,065.00 | 379 | $403,635.00 |
| Matthew Hartman | Intellectual Property | 2010 | $930.00 | 151.4 | $140,802.00 |
| Taylor Lea Jones | Health | 2007 | $965.00 | 23.7 | $22,870.50 |
| Jeffrey Kane | Litigation | 2015 | $850.00 | 578.7 | $491,895.00 |
| Kristi Kirksey | Tax | 2014 | $985.00 | 248.9 | $245,166.50 |
| Erika Leon | Corporate | 2013 | $985.00 | 54 | $53,190.00 |
| Howard Leventhal | Tax | 1976 | $1,170.00 | 5.4 | $6,318.00 |
| Edan Lisovicz | Financial Restructuring | 2013 | $975.00 | 456.2 | $444,795.00 |
| Matthew Lloyd | Litigation | 2012 | $910.00 | 489.7 | $445,627.00 |
| Daniel Lund | International Trade | 2014 | $925.00 | 11.5 | $10,637.50 |
| Clayton Matheson | Litigation | 2010 | $950.00 | 52.9 | $50,255.00 |
| Brennan Meier | Litigation | 2012 | $910.00 | 413.8 | $376,558.00 |
| John Murphy | Litigation | 2011 | $1,025.00 | 33.9 | $34,747.50 |
| Erin Parlar | Litigation | 2015 | $925.00 | 661.9 | $612,257.50 |
| Heather Peckham | Litigation | 2000 | $935.00 | 412.9 | $386,061.50 |
| Nicholas Petree | Litigation | 2012 | $910.00 | 196.9 | $179,179.00 |
| Katherine Porter | Litigation | 2011 | $1,025.00 | 1030.2 | $1,055,955.00 |
| Ali Rabbani | Litigation | 2007 | $965.00 | 80.2 | $77,393.00 |
| Jillie Richards | Litigation | 2007 | $850.00 | 752.3 | $639,455.00 |
| Sophie Shih-Yu Chu | Corporate | 2007 | $1,025.00 | 533.9 | $547,247.50 |
| Dustin Stark | Labor | 2013 | $985.00 | 20.9 | $20,586.50 |
| M. Todd Tuten | Public Law & Policy | N/A | $1,035.00 | 7.4 | $7,659.00 |
| Jonathan Underwood | Intellectual Property | 2014 | $850.00 | 115.7 | $98,345.00 |
| Molly Whitman | Litigation | 2013 | $885.00 | 152.1 | $134,608.50 |
| Richard R. Williams, Jr. | Litigation | 2014 | $960.00 | 323.3 | $310,368.00 |
| Dennis Windscheffel | Litigation | 2004 | $965.00 | 195.1 | $188,271.50 |
| **Senior Counsel & Counsel Total:** | | | | **8,264.50** | **$7,826,059.50** |

| **Associate** | **Department** | **Year of Admission** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|
| Tyler Andrews | Corporate | 2019 | $535.00 | 11.1 | $5,938.50 |
| Sudhana Bajracharya | Health | 2018 | $650.00 | 88.8 | $57,720.00 |
| Brooks Barker | Financial Restructuring | 2018 | $775.00 | 398 | $308,450.00 |
| Rachel Bayefsky | Litigation | 2016 | $820.00 | 89.4 | $73,308.00 |

| Megi Belegu | Litigation | Not yet admitted | $565.00 | 366 | $206,790.00 |
|---|---|---|---|---|---|
| Patrick Benedetto | Corporate | 2019 | $535.00 | 5.4 | $2,889.00 |
| Nafisa Bringe | Litigation | 2016 | $735.00 | 60.2 | $44,247.00 |
| Marc Caplan | Tax | 2019 | $675.00 | 182.8 | $123,390.00 |
| Jess Coleman | Financial Restructuring | Not yet admitted | $615.00 | 339.5 | $208,792.50 |
| Shane Copelin | Corporate | 2018 | $575.00 | 138.3 | $79,522.50 |
| Richard D'Amato | Litigation | 2017 | $810.00 | 226.7 | $183,627.00 |
| Travis Earp | Corporate | 2018 | $575.00 | 129.3 | $74,347.50 |
| Alyx Eva | Litigation | 2019 | $535.00 | 44.5 | $23,807.50 |
| Sanzana Faroque | Corporate | Not yet admitted | $565.00 | 232.8 | $131,532.00 |
| Alexander France | Corporate | 2019 | $535.00 | 46.5 | $24,877.50 |
| Jason Gangwer | Litigation | 2017 | $650.00 | 272.2 | $176,930.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $615.00 | 160.4 | $98,646.00 |
| Lisa Garrett | Corporate | 2017 | $650.00 | 126.5 | $82,225.00 |
| Patrick Glackin | Litigation | 2019 | $650.00 | 450.4 | $292,760.00 |
| Christina Hightower | Litigation | 2017 | $650.00 | 189.2 | $122,980.00 |
| Anthony Hilbert | Corporate | 2019 | $535.00 | 40.2 | $21,507.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $535.00 | 417.9 | $223,576.50 |
| Jay Jamooji | Litigation | 2019 | $565.00 | 60.2 | $34,013.00 |
| Srishti Kalro | Litigation | 2016 | $810.00 | 146.9 | $118,989.00 |
| Jillian Kulikowski | Litigaiton | 2019 | $650.00 | 16.5 | $10,725.00 |
| Rachel Kurzweil | Health | 2017 | $735.00 | 44.2 | $32,487.00 |
| Caitlin Locurto | Corporate | 2017 | $810.00 | 27.1 | $21,951.00 |
| Nicholas Lombardi | Litigation | 2018 | $735.00 | 7.5 | $5,512.50 |
| Amanda Lowe | Litigation | 2018 | $650.00 | 89.4 | $58,110.00 |
| Shanna Miles | Litigation | 2017 | $810.00 | 78.6 | $63,666.00 |
| McKenzie Miller | Litigation | Not yet admitted | $535.00 | 722.2 | $386,377.00 |
| Mouna Moussaoui | Litigation | 2018 | $650.00 | 190.8 | $124,020.00 |
| Rebecca Ney | Corporate | 2019 | $650.00 | 66.7 | $43,355.00 |
| Oluwaremilekun Ojurongbe | Litigation | Not yet admitted | $535.00 | 76.8 | $41,088.00 |
| Paul Park | Corporate | 2016 | $820.00 | 67.6 | $55,432.00 |
| Jennifer Poon | Litigation | 2016 | $810.00 | 545.7 | $442,017.00 |
| Peretz Riesenberg | Tax | 2016 | $920.00 | 42.1 | $38,732.00 |
| Julia Rinker | Corporate | 2020 | $565.00 | 422.6 | $238,769.00 |
| Margo Rusconi | Litigation | 2019 | $535.00 | 65.9 | $35,256.50 |
| Sina Safvati | Litigation | 2016 | $735.00 | 52.1 | $38,293.50 |

| James Salwen | Financial Restructuring | 2017 | $775.00 | 665.9 | $516,072.50 |
|---|---|---|---|---|---|
| Sangita Sahasranaman | Tax | Not yet admitted | $675.00 | 30.4 | $20,520.00 |
| Alexander Schnapp | Corporate | 2020 | $565.00 | 68.1 | $38,476.50 |
| Anthony Sierra | Intellectual Property | 2019 | $535.00 | 433.7 | $232,029.50 |
| Jason Sison | Corporate | 2016 | $810.00 | 419.7 | $339,957.00 |
| Joshua Tate | Litigation | 2019 | $535.00 | 8.3 | $4,440.50 |
| Allison Thornton | Litigation | 2018 | $650.00 | 38.9 | $25,285.00 |
| Kaitlyn Tongalson | Litigation | 2017 | $810.00 | 250.3 | $202,743.00 |
| Izabelle Tully | Litigation | Not yet admitted | $565.00 | 677.6 | $382,844.00 |
| Matthew Turner | Corporate | 2015 | $820.00 | 27.7 | $22,714.00 |
| Laura Vaughn | Labor | 2019 | $535.00 | 7.5 | $4,012.50 |
| **Associate Total:** | | | | **9,367.10** | **$6,145,751.50** |

| Staff Attorneys & Paraprofessionals | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Frank Abduhalikov | International Trade | N/A | $330.00 | $14.70 | $4,851.00 |
| Ganna Anisimova | Law Clerk, Litigation | N/A | $340.00 | $406.60 | $138,244.00 |
| Marisa Browndorf | Paralegal, Intellectual Property | N/A | $330.00 | $101.90 | $33,627.00 |
| Frank Castro | Paralegal, Litigation | N/A | $350.00 | $138.90 | $48,615.00 |
| Daniel Chau | EDiscovery | N/A | $370.00 | $366.50 | $135,605.00 |
| Kimberly La Croix | EDiscovery | N/A | $370.00 | $185.80 | $68,746.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $330.00 | $282.60 | $93,258.00 |
| Cheryle Edmonds | Paralegal, Litigation | N/A | $350.00 | $46.30 | $16,205.00 |
| Rachel Fizette | Paralegal, Financial Restructuring | N/A | $230.00 | $5.50 | $1,265.00 |
| Mitchell Garrett | Practice Attorney, Litigation | 2016 | $380.00 | $20.80 | $7,904.00 |
| Helen Hanks | Paralegal, Tax | N/A | $330.00 | $33.70 | $11,121.00 |
| Adria Hicks | Paralegal, Litigation | N/A | $350.00 | $8.30 | $2,905.00 |
| Julie Hunter | EDiscovery | N/A | $370.00 | $59.10 | $21,867.00 |
| Brenda Kemp | Paralegal, Litigation | N/A | $370.00 | $15.60 | $5,772.00 |

| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $415.00 | $56.40 | $23,406.00 |
|---|---|---|---|---|---|
| Amy Laaraj | Paralegal, Litigation | N/A | $350.00 | $377.10 | $131,985.00 |
| Melanie Langford | Paralegal, Intellectual Property | N/A | $260.00 | $25.40 | $6,604.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | $515.00 | $328.30 | $169,074.50 |
| Cassandra Padget | Law Clerk, International Trade | N/A | $420.00 | $27.80 | $11,676.00 |
| Carrie Varner | Paralegal, Litigation | N/A | $350.00 | $27.00 | $9,450.00 |
| Karen Woodhouse | Practice Attorney, Litigation | N/A | $400.00 | $66.10 | $26,440.00 |
| Melodie Young | Practice Attorney, Litigation | 2003 | $435.00 | $29.20 | $12,702.00 |
| **Staff Attorneys and Paraprofessional Total:** | | | | **2623.60** | **$981,322.50** |
| **Total Hours / Fees Incurred:** | | | | **25,802.90** | **$22,112,857.50** |

## TOTAL FEES FOR THE COMPENSATION PERIOD

| Professionals | Blended Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|
| Partners | $1,290.58 | 5,547.7 | $7,159,724.00 |
| Senior Counsel & Counsel | $946.95 | 8,264.5 | $7,826,059.50 |
| Associates | $656.10 | 9,367.1 | $6,145,751.50 |
| Staff Attorneys & Paraprofessionals | $374.04 | 2,623.6 | $981,322.50 |
| **Blended Attorney Rate** | **$911.66** | | |
| **Blended Rate for All Timekeepers** | **$856.99** | | |
| **Total Hours / Fees Incurred:** | | **25,802.9** | **$22,112,857.50** |

x

## COMPENSATION BY PROJECT CATEGORY
## JUNE 1, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020

| Task Code | Matter | Total Hours Billed | Total Value ($) |
|---|---|---|---|
| 2 | General Case Administration | 37.20 | $27,604.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 311.70 | $246,668.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 61.70 | $50,516.50 |
| 6 | Retention of Professionals | 99.30 | $72,602.50 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 379.10 | $452,753.50 |
| 8 | Hearings and Court Matters/Court Preparation | 187.00 | $231,058.00 |
| 12 | General Claims Analysis/Claims Objections | 1,176.20 | $1,326,235.50 |
| 13 | Analysis of Pre-Petition Transactions | 19,642.90 | $15,922,977.50 |
| 14 | Insurance Issues | 220.20 | $229,353.00 |
| 16 | Automatic Stay Issues | 45.90 | $47,002.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 190.40 | $180,192.00 |
| 18 | Tax Issues | 449.00 | $387,620.50 |
| 19 | Labor Issues/Employee Benefits | 240.70 | $250,510.50 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 247.20 | $185,221.50 |
| 21 | Exclusivity | 8.40 | $7,348.00 |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 215.90 | $174,542.50 |
| 23 | Asset Dispositions/363 Asset Sales/Bidding Procedures | 6.30 | $8,276.50 |
| 28 | General Corporate Matters | 16.50 | $13,626.50 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | 0.40 | $638.00 |
| 31 | Business Operations | 298.20 | $282,917.50 |
| 32 | Intellectual Property | 260.50 | $290,143.00 |
| 33 | Sackler Rule 2004 Discovery | 1,708.20 | $1,725,050.50 |
| **Total Hours / Fees Incurred:** | | **25,802.90** | **$22,112,857.50** |

**EXPENSE SUMMARY**
**JUNE 1, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $16,208.65 |
| Color Copy | $137.00 |
| Computerized Legal Research - Courtlink - In Contract 50% | $1,116.32 |
| Computerized Legal Research - Other | $3,470.56 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $87,437.81 |
| Computerized Legal Research - Westlaw - Out of Contract | $264.36 |
| Corporate Service Fees | $35.54 |
| Courier Service/Messenger Service - Off Site | $245.06 |
| Departmental Special Supplies | $10,608.48 |
| Document Retrieval | $344.64 |
| Dues - Miscellaneous Dues | $250.34 |
| Employee Cash Advance | $65.04 |
| Filing Fees | $1,000.00 |
| Local Transportation - Overtime | $499.18 |
| Meals - Business | $860.18 |
| Meals - Overtime | $50.00 |
| Miscellaneous | $10.72 |
| Overtime - Admin Staff | $123.48 |
| Postage | $17.95 |
| Professional Fees - Legal | $1,229,677.05 |
| Professional Fees – Outside Counsel | $2,146.72 |
| Research | $181.81 |
| Telephone - Long Distance | $1,470.00 |
| Telephone – Cell/Pagers | $354.87 |
| Transcripts | $694.80 |
| Travel - Ground Transporation | $920.23 |
| Travel - Parking | $22.00 |
| **Total Expenses Requested:** | **$1,358,212.79** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

**THIRD INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD
LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF PURDUE PHARMA L.P., ET AL., FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR
THE PERIOD OF JUNE 1, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020**

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Purdue Pharma, L.P. and its affiliated debtors and

debtors in possession (collectively, the "Debtors"), hereby submits its third application (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard,
Stamford, CT 06901.

"Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services rendered to the Committee for the period of June 1, 2020 through and including September 30, 2020 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith.  In support of this Application, Akin Gump submits the declaration of Arik Preis, a partner at Akin Gump, which is attached hereto as **Exhibit A** and incorporated by reference into this Application.  In further support of this Application, Akin Gump respectfully states as follows.

## **INTRODUCTION**

1.      By this Application, Akin Gump seeks: (i) interim allowance of compensation for the professional services rendered by Akin Gump during the Compensation Period in the amount of $22,112,857.50, representing 23,179.3 hours of professional services and 2,623.6 hours of paraprofessional and other non-legal services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in the amount of $1,358,212.79.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in*

2

*Larger Chapter 11 Cases*, 78 Fed. Reg. 36248, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Committee has been given the opportunity to review this Application and the Co-Chairs (as defined below) have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. Approval of this Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

**A.      The Debtors' Chapter 11 Cases**

7.      On September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On September 26, 2019 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated September 27, 2019 [ECF No. 131].  The Committee currently comprises nine members and two

*ex officio* members.[2]  The Blue Cross and Blue Shield Association and Ryan Hampton serve as co-chairs of the Committee (the "Co-Chairs").

**B.      Retention of Akin Gump**

9.      On the Formation Date, the Committee selected Akin Gump as its legal counsel. On November 5, 2019, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Purdue Pharma L.P. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel, Nunc Pro Tunc to September 26, 2019* [ECF No. 421] (the "Akin Retention Application"), which was granted by an order of this Court dated November 21, 2019 [ECF No. 522] (the "Akin Retention Order").[3]

10.      The Akin Retention Order authorizes the Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to September 26, 2019, all as contemplated by the Akin Retention Application.   The Akin Retention Order further authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

---

[2] The Committee comprises the following members:  (i) The Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services L.L.C. and CaremarkPCS Health L.L.C.; (iii) Cheryl Juaire; (iv) Kara Trainor; (v) LTS Lohmann Therapy Systems Corporation; (vi) Pension Benefit Guaranty Corporation; (vii) Ryan Hampton; (viii) Walter Lee Salmons; and (ix) West Boca Medical Center, plus three *ex officio* members, Cameron County, Texas on behalf of the Multi-State Governmental Entities Group and the Cheyenne and Arapaho Tribes, on behalf of certain Native American Tribes and Native American-affiliated creditors, and Thornton Township High School District 205, on behalf of certain public school districts.

[3] The Committee selected Bayard, P.A ("Bayard") to serve as its "efficiency" counsel, Province, Inc. ("Province") to serve as its financial advisor, Jefferies LLC ("Jefferies") to serve as its investment banker, Kurtzman Carson Consultants LLC ("KCC") to serve as its information agent, KPMG LLP ("KPMG") to serve as joint tax consultant to the Committee and the Debtors and Bedell Cristin Jersey Partnership ("Bedell Cristin") to serve as special foreign counsel on September 29, 2019, October 1, 2019 and October 4, 2019, November 1, 2019, December 23, 2019, and February 27, 2020, respectively.  Orders authorizing the retention of Bayard [ECF No. 523], Province [ECF No. 524], Jefferies [ECF No. 526], KCC [ECF No. 527] were entered on November 21, 2019, and orders authorizing the retention of KPMG and Bedell Cristin were entered on February 24, 2020 [ECF No. 867] and June 26, 2020 [ECF No. 1310], respectively.  As disclosed in the *Notice of Change of Firm and Substitution of Counsel*, dated March 6, 2020 [ECF No. 900], Justin Alberto, who was serving as the primary attorney for the Committee at Bayard, resigned as a director at Bayard and became a member of the law firm of Cole Schotz P.C. ("Cole Schotz").  The Court entered an order authorizing the Committee's retention of Cole Schotz [ECF No. 1084] on April 24, 2020.

**C.      Appointment of Fee Examiner**

11.      On April 8, 2020, the Court entered the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327*, dated April 8, 2020 [ECF No. 1023] appointing David M. Klauder, Esq. as fee examiner (the "Fee Examiner").  On May 26, 2020, the Court authorized the retention of Bielli & Klauder, LLC as counsel to the Fee Examiner.  *See Order Authorizing the Retention and Employment of Bielli & Klauder, LLC as Counsel to the Fee Examiner, Nunc Pro Tunc to the Appointment Date*, dated May 26, 2020 [ECF No. 1182].

**D.      Monthly Fee Statements**

12.      On January 10, 2020, Akin Gump filed and served the *First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 26, 2019 Through October 31, 2019*, dated January 10, 2020 [ECF No. 736] (the "First Monthly Fee Statement"),[4] pursuant to which Akin Gump sought payment of (i) $2,139,642.40 (80% of $2,674,553.00) as compensation for professional services rendered and (ii) $44,481.58 for reimbursement of expenses.  Akin Gump did not receive any objections to its First Monthly Fee Statement and received payment in respect thereof on February 10, 2020.

13.      On February 7, 2020, Akin Gump filed and served the *Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 Through November 30, 2019*, dated February 7, 2020 [ECF No. 812]

---

[4] A copy of the First Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzIzMjY4&id2=0.

(the "Second Monthly Fee Statement"),[5] pursuant to which Akin Gump sought payment of (i) 1,758,302.40 (80% of $2,197,878.00) as compensation for professional services rendered and (ii) $28,963.85 for reimbursement of expenses. Akin Gump did not receive any objections to the Second Monthly Fee Statement and received payment in respect thereof on March 2, 2020.

14.    On March 10, 2020, Akin Gump filed and served the *Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2019 Through December 31, 2019* [ECF No. 904] (the "Third Monthly Fee Statement"),[6] pursuant to which Akin Gump sought payment of (i) $1,491,816.00 (80% of $1,864,770.00) as compensation for professional services rendered and (ii) $23,812.68 for reimbursement of expenses. Akin Gump did not receive any objections to the Third Monthly Fee Statement and received payment in respect thereof on March 30, 2020.

15.    On March 13, 2020, Akin Gump filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 Through January 31, 2019* [ECF No. 926] (the "Fourth Monthly Fee Statement"),[7] pursuant to which Akin Gump sought payment of (i) $2,480,835.20 (80% of $3,101,044.00) as compensation for professional services rendered and (ii) $68,475.18 for reimbursement of expenses. Akin Gump did not receive any objections to the Fourth Monthly Fee Statement and received payment in respect thereof on April 2, 2020.

---

[5] A copy of the Second Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzI4MTk2&id2=0.

[6] A copy of the Third Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM2OTgz&id2=0.

[7] A copy of the Fourth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4MzE3&id2=0.

16.     On March 16, 2020, Akin Gump filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.*, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of September 26, 2019 Through and Including January 31, 2020* [ECF No. 947] (the "First Interim Fee Application"),[8] pursuant to which Akin Gump sought allowance of (i) $9,838,245.00 as compensation for professional services rendered and (ii) $165,733.29 for reimbursement of expenses.  On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts[9] pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements.  Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020.

17.     On April 29, 2020, Akin Gump filed and served the *Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2020 Through February 29, 2020* [ECF No. 1105] (the "Fifth Monthly Fee Statement"),[10] pursuant to which Akin Gump sought payment of (i) $2,612,236.40 (80% of $3,265,295.50) as compensation for professional services rendered and (ii) $51,460.31 for reimbursement of

---

[8] A copy of the First Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4Nzk0&id2=0.

[9] Pursuant to Paragraph 2(vi) of the Interim Compensation Order, the payment received by Akin Gump for compensation allowed in connection with the First through Fourth Monthly Fee Statements was subject to a 20% holdback.

[10] A copy of the Fifth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzcyNzgx&id2=0.

expenses. Akin Gump did not receive any objections to the Fifth Monthly Fee Statement and received payment in respect thereof on May 18, 2020.

18.     On May 18, 2020, Akin Gump filed and served the *Sixth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2020 Through March 31, 2020* [ECF No. 1165] (the "Sixth Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $3,918,530.40 (80% of $4,898,163.00) as compensation for professional services rendered and (ii) $52,477.20 for reimbursement of expenses. Akin Gump did not receive any objections to the Sixth Monthly Fee Statement and received payment in respect thereof on June 8, 2020.

19.     On June 15, 2020, Akin Gump filed and served the *Seventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2020 Through April 30, 2020* [ECF No. 1276 ] (the "Seventh Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $4,270,396.80 (80% of $5,337,996.00) as compensation for professional services rendered and (ii) $65,548.73 for reimbursement of expenses. Akin Gump did not receive any objections to the Seventh Monthly Fee Statement and received payment in respect thereof on July 6, 2020.

20.     On July 14, 2020, Akin Gump filed and served the *Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of May 1,*

---

[11] A copy of the Sixth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=Mzk4MjYx&id2=0.

[12] A copy of the Seventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDIzNTky&id2=0.

*2020 Through May 31, 2020* [ECF No. 1382] (the "Eighth Monthly Fee Statement"),[13] pursuant to which Akin Gump sought payment of (i) $3,249,619.60 (80% of $4,062,024.50) as compensation for professional services rendered and (ii) $66,559.50 for reimbursement of expenses. Akin Gump did not receive any objections to the Eighth Monthly Fee Statement and received payment in respect thereof on July 28, 2020.

21.    On July 17, 2020, Akin Gump filed and served the *Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al., *for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of February 1, 2020 Through and Including May 31, 2020* [ECF No. 1441] (the "Second Interim Fee Application"),[14] pursuant to which Akin Gump sought allowance of (i) $17,563,479.00 as compensation for professional services rendered and (ii) $236,045.74 for reimbursement of expenses. Following discussions with the Fee Examiner, Akin Gump agreed to a voluntary reduction of $154,951.00 in the fees requested pursuant to the Second Interim Fee Application, and the Court entered an order granting the Second Interim Fee Application subject to the agreed reduction on September 2, 2020. *See Omnibus Order Granting Second Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 1649].

22.    On August 11, 2020, Akin Gump filed and served the *Ninth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1,*

---

[13] A copy of the Eighth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDc1OTk3&id2=0.

[14] A copy of the Second Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDgyNTY1&id2=0.

*2020 Through June 30, 2020* [ECF No. 1559] (the "Ninth Monthly Fee Statement"),[15] pursuant to which Akin Gump sought payment of (i) $3,599,723.20 (80% of $4,499,654.00) as compensation for professional services rendered and (ii) $128,348.37 for reimbursement of expenses. Akin Gump did not receive any objections to the Ninth Monthly Fee Statement and received payment in respect thereof on August 31, 2020.

23.    On September 16, 2020, Akin Gump filed and served the *Tenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of July 1, 2020 Through July 31, 2020* [ECF No. 1696] (the "Tenth Monthly Fee Statement),[16] pursuant to which Akin Gump sought payment of (i) $3,926,677.60 (80% of $4,908,347.00) as compensation for professional services rendered and (ii) $124,849.29 for reimbursement of expenses. Akin Gump did not receive any objections to the Tenth Monthly Fee Statement and received payment in respect thereof on October 8, 2020.

24.    On October 19, 2020, Akin Gump filed and served the *Eleventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of August 1, 2020 Through August 31, 2020* [ECF No. 1696] (the "Eleventh Monthly Fee Statement),[17] pursuant to which Akin Gump sought payment of (i) $4,599,810.80 (80% of $5,749,763.50) as compensation for professional services rendered and (ii) $646,665.40 for

---

[15] A copy of the Ninth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: [https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NTc0MDc1&id2=0].

[16] A copy of the Tenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTA3MTAwNQ==&id2=0.

[17] A copy of the Eleventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExMTUyNA==&id2=0.

reimbursement of expenses.  Akin Gump did not receive any objections to the Eleventh Monthly

Fee Statement.

25.    On November 11, 2020, Akin Gump filed and served the *Twelfth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of September 1, 2020 Through September 30, 2020* [ECF No. 1696] (the "Twelfth Monthly

Fee Statement),[18] pursuant to which Akin Gump sought payment of (i) $5,564,074.40 (80% of

$6,955,093.00) as compensation for professional services rendered and (ii) $458,349.73 for

reimbursement of expenses.  As of the filing of this Application, Akin Gump has not received any

objections to the Twelfth Monthly Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

26.    By this Application, Akin Gump requests allowance of interim compensation for

professional services rendered to the Committee during the Compensation Period in the amount of

$22,112,857.50 and expense reimbursements of $1,358,212.79.[19]   During the Compensation

Period, Akin Gump professionals and paraprofessionals expended a total of 25,802.9 hours for

which compensation is sought.

---

[18] A copy of the Twelfth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExNDU0Mg==&id2=0.

[19] During the Compensation Period, Akin Gump voluntarily reduced its fees and expenses by the following amounts: $4,509,658.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Third Interim Fee Period.  In the Chapter 11 Cases to date, Akin Gump has reduced its fees by the aggregate amount of $5,569,139.75, which amount includes, in addition to the above voluntary amount for the Compensation Period: (i) $362,267.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the First Interim Fee Period; (ii) a $125,739.75 fee reduction for the First Interim Fee Period pursuant to an agreement with the Fee Examiner; (iii) $866,524.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Second Interim Fee Period; and (iv) a $154,951.00 fee reduction for the Second Interim Fee Period pursuant to an agreement with the Fee Examiner.  Akin Gump does not and will not seek payment of the foregoing fees and expenses in this Application or any other application.   For the avoidance of doubt, the foregoing voluntary reductions are not based on any determination that such fees are not appropriate or compensable.

27.    The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

28.    Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code against budgeted fees and hours is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services for the Committee during the Compensation Period have been filed and served with the Monthly Fee Statements in accordance with the Interim Compensation Order.

29.    Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

30.    Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN GUMP DURING THE COMPENSATION PERIOD

31.      The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Committee and commensurate with the complexity and significance of the matter.  Moreover, the nature of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Committee's objectives and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

32.      The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

33.      Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the matters and issues that Akin Gump was required to address during the Compensation Period.

A.    **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|:---:|:---:|
| 37.20 | $27,604.00 |

34.    This category includes time spent by Akin Gump professionals and paraprofessionals performing various general administrative tasks necessary to the Committee's involvement in the Chapter 11 Cases, including among other things: (i) maintaining distribution lists; (ii) monitoring the docket for the Chapter 11 Cases to track filings and to remain apprised of critical dates;; (iii) ensuring that the appropriate parties and professionals are notified of filed documents, relevant objection and response deadlines, hearing dates and other critical dates; (iv) communicating with the members of the Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters; and (v) performing other necessary general administrative tasks.

35.    During the Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss when various motions and applications would be filed and the information the Committee would require to analyze each motion or application properly and in a timely manner.  Akin Gump also consulted with Cole Schotz, Province and/or Jefferies multiple times each day with respect to documents and other information received from the Debtors, their representatives and other parties in interest.  In addition, Akin Gump professionals and paraprofessionals monitored the docket for the Chapter 11 Cases to remain apprised of all critical matters.  For each significant filing, Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto.  Due to Akin Gump's experience counseling official committees of unsecured creditors,

Akin Gump believes it was able to address all issues relating to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.    Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 311.70 | $246,668.00 |

36.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the preparation of Akin Gump's monthly fee statements and fee applications.    During the Compensation Period, these efforts included ensuring that the schedules attached to the Seventh, Eighth, Ninth and Tenth Monthly Fee Statements complied with the Fee Guidelines, and that such schedules did not contain information that was privileged, confidential or subject to attorney work product protection.    Akin Gump professionals and paraprofessionals also prepared, filed and served the Second Interim Fee Application and began to prepare the Eleventh and Twelfth Monthly Fee Statements and this Application, each of which was filed after the close of the Compensation Period.    To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Monthly Fee Statements and schedules for the Second Interim Fee Application, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

**C.    Analysis of Other Professionals' Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 61.70 | $50,516.50 |

37.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements submitted to the Court by other estate-compensated professionals.    Akin Gump reviewed such fee statements to ensure that such professionals operated in accordance with their individual mandates and sought reasonable compensation and reimbursement of expenses in connection with their roles in the Chapter 11

Cases.  This category also includes time spent assisting the Committee's other professionals in reviewing, finalizing and filing their respective monthly fee statements and interim fee applications.

**D.    Retention of Professionals (Task Code 6)**

| Total Hours | Fees |
|---|---|
| 99.30 | $72,602.50 |

38.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with various professional retention matters, including the Committee's engagement of Bedell Cristin as special foreign counsel to provide advice regarding certain issues arising under Jersey and Guernsey law that may be of substantial importance to the Committee's evaluation of the Settlement Framework.  During the Compensation Period, Akin Gump professionals assisted the Committee in engaging and retaining Bedell Cristin as special foreign counsel, including assisting Bedell Cristin with the drafting of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing Retention and Employment of Bedell Cristin Jersey Partnership as Special Foreign Counsel, Nunc Pro Tunc to February 27, 2020*, dated June 9, 2020 [ECF No. 1244] (the "Bedell Retention Application").  The Court entered an order approving the Bedell Retention Application on June 29, 2020.  [ECF No. 1310].

39.    Finally, this category includes time spent by Akin Gump professionals in connection with the retention of professionals by various other parties in the Chapter 11 Cases. During the Compensation Period, Akin Gump professionals considered issues related to the retention of two consultants by former United States Secretary of Agriculture Tom Vilsack, who was appointed by the Court as a monitor to oversee the Debtors' compliance with their obligations under the voluntary self-injunction.  *See Motion for Entry of an Order Permitting the Monitor to*

*Employ Data Analytics Consultant at the Cost and Expense of the Debtors,* dated August, 12, 2020

[ECF No. 1567]; *Motion for Entry of an Order Permitting the Monitor to Employ Legal Consultant*

*at the Cost and Expense of the Debtors*, dated June, 27, 2020 [ECF No. 1308].  In addition, Akin

Gump professionals reviewed and discussed with the Committee as necessary the Debtors'

application to retain a consultant[20] and the *Application of Debtors for Authority to Supplement*

*Retention and Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel to*

*the Debtors* Nunc Pro Tunc *to March 6, 2020*, dated July 10, 2020 [ECF No. 1370].

**E.    Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|---|---|
| 379.10 | $452,753.50 |

40.    This category includes time spent by Akin Gump professionals and

paraprofessionals: (i) preparing for and participating in meetings and conference calls with the

Committee as a whole or with individual members of the Committee, including bi-weekly

conference calls with the full Committee; (ii) communicating with the Committee's other advisors

on a day-to-day basis regarding pending matters and case strategy; (iii) attending meetings with

various parties in interest on the Committee's behalf; (iv) responding to inquiries from individual

unsecured creditors; (v) providing Committee members with summaries and updates regarding

court filings and relevant response deadlines, hearing dates and any other critical matters related

thereto; and (vi) attending to other general Committee matters.

41.    The Committee played a very active[21] role in the Chapter 11 Cases during the

Compensation Period, and Akin Gump, together with the Committee's other advisors, held no

---

[20] *See Order Authorizing the Retention and Employment of Cornerstone Research as Consultants for the Debtors Nunc Pro Tunc to January 14, 2020*, dated June 11, 2020 [ECF No. 1255].

[21] *See* Transcript of June 3, 2020 Hearing 95:3–5 (THE COURT: "You have an *active*, well-informed and diligent official creditors committee that represents everyone.") (emphasis added);  Transcript of September 30, 2020 Hearing 83:12-13 ("We have had an extremely active and well represented and thoughtful official Creditors' Committee.").

17

fewer than 28 telephonic meetings with the full Committee during the Compensation Period, in addition to numerous telephonic conferences with individual Committee members and subcommittees. Prior to each biweekly telephonic meeting with the full Committee, Akin Gump professionals reviewed pending matters, prepared an agenda describing issues requiring the Committee's attention and coordinated with the Committee's other advisors regarding such matters. In addition, Akin Gump professionals prepared and/or assisted the Committee's other advisors in preparing detailed memoranda and presentations for the Committee addressing pertinent matters in the Chapter 11 Cases. During such meetings, Akin Gump assisted the Committee in fulfilling its statutory duty to exercise informed judgment regarding the various issues arising in the Chapter 11 Cases and formulating positions with respect to significant matters. Akin Gump also sent daily email updates to the Committee to ensure the Committee remained apprised of relevant matters.

42. Akin Gump professionals and paraprofessionals devoted a significant number of hours to these tasks during the Compensation Period in order to ensure that the Committee was prepared to make informed decisions with respect to significant case issues. Although such tasks do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated the Committee's participation in the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

43. This category also includes time spent by Akin Gump professionals in connection with the addition of Thornton Township High School District 205 ("Thornton Township") as an *ex officio* member of the Committee. Prior to the Compensation Period, certain public school districts (the "Public School Districts") filed motions to participate in the ongoing mediation,[22] which were

---

[22] *See Creditor Board of Chicago School District No. 299's Motion to Submit Claim to Mediation, dated March 30, 2020* [ECF No. 998]; *Creditors the Board of Education of Thornton Township High School District 205, the Board of*

resolved pursuant to a stipulation negotiated among the parties' advisors.  *See Stipulation and Agreed Order Resolving the Board of Education of Thornton Township High Schools, Illinois District No. 205, the Board of Education of Thornton Fractional Township High Schools, Illinois District No. 215, and the Board of Education of East Aurora, Illinois School District No. 131's Motion to Submit Claims of Independent Public School Districts to Mediation*, dated April 21, 2020 [ECF No. 1073].

44.     On June 2, 2020, the Public School Districts filed the *Motion by Public School Districts for an Order Allowing Them to Proceed with a Class Proof of Claim and Certifying a Class* [ECF No. 1211] (the "Public Schools Class Claim Motion").  In the course of discussions between the Public Schools Districts and the Committee regarding the Public Schools Mediation Motions and the Public Schools Class Claim Motion, the Public School Districts expressed an interest in serving as *ex officio* members of the Committee.  Following deliberations consistent with the Committee's fiduciary obligations to all creditors, the Committee approved the addition of the Public School Districts as an *ex officio* member during the June 18, 2020 meeting of the Committee.  The Public School Districts accepted the invitation on June 19, 2020 and, thereafter, appointed Thornton Township to serve as an *ex officio* member of the Committee on their behalf. The Committee disclosed these developments during the June 23, 2020 hearing.[23]

45.     Finally, this category includes time spent by Akin Gump professionals, on behalf of the Committee, responding to inquiries from numerous unsecured creditors in order to fulfill the Committee's responsibility under Bankruptcy Code section 1102(b)(3) to "provide access to information for creditors . . . not appointed to the [C]ommittee."  Prior to the Compensation Period,

---

*Education of Thornton Fractional Township High School District 2015, and the Board of Education of East Aurora School District 131's Motion to Submit Claims of Independent Public School Districts to Mediation*, dated April 13, 2020 [ECF No. 1038] (collectively, the "Public Schools Mediation Motions").

[23] *See* Transcript of June 23, 2020 Hearing 28:8-29:15.

the Court entered the *Order Clarifying the Committee's Requirement to Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information*, dated December 23, 2019 [ECF No. 699], which authorized the Committee to establish a website at which creditors can receive information regarding the status of the Chapter 11 Cases (among other things). The Committee's website, which is maintained by KCC, makes general information about the Chapter 11 Cases available to creditors, including information regarding case developments, key contact information and a detailed case calendar addressing upcoming hearings and other critical events. During the Compensation Period, Akin Gump professionals, in coordination with KCC, posted relevant updates and materials on the Committee's website, including detailed case calendars, information regarding case developments and key contact information.

## F.    Hearings and Court Matters/Meetings (Task Code 8)

| Total Hours | Fees |
| --- | --- |
| 187.00 | $231,058.00 |

46.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Court hearings and status conferences held during the Compensation Period. Akin Gump professionals prepared for and participated in each of the five hearings and one Chambers conference before the Court during the Compensation Period. In preparing for such hearings, Akin Gump professionals, together with the Committee's other advisors, reviewed and analyzed all relevant issues, motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and the advisors to other parties in interest the relief requested and, as necessary, asserted the Committee's positions at such hearings. In addition, following each hearing, Akin Gump professionals provided

the Committee with summaries and analyses of the results thereof, either in written form or telephonically during the next Committee meeting.

**G.      General Claims Analysis/Claims Objections (Task Code 12)**

| Total Hours | Fees |
|:---:|:---:|
| 1,176.20 | $1,326,235.50 |

47.      This category includes time spent by Akin Gump professionals evaluating the merits of the vast universe of claims against the Debtors and potential approaches to addressing such claims in the Chapter 11 Cases, including analyzing and participating in mediation regarding allocation of the value of the Debtors' estates among various creditor constituencies.  Claims against the Debtors include, among others, a wide variety of contingent litigation claims, including, but not limited to, claims by personal injury plaintiffs, hospitals, insurance ratepayers, third-party payors, health plans, states, municipalities, the United States, Native American Tribes and children born with Neonatal Abstinence Syndrome.  During the Compensation Period, Akin Gump professionals engaged in extensive factual and legal research to assess the relative strengths and weaknesses of such claims and prepared various memoranda and analyses with respect thereto.  In connection with such analysis, Akin Gump professionals communicated with representatives of both public and private creditor constituencies on a regular basis to better understand the basis for such claims.

48.      This category also includes time spent by Akin Gump and the Committee's other advisors working closely with numerous other parties in interest to address the critical issue of the allocation of estate value among the various classes of litigation creditors without requiring such creditors or the Debtors' estates to spend substantial resources establishing the validity of claims through litigation.  Such efforts included research regarding the law governing various types of claims against the Debtors and factual analysis of potential recoveries for such claims.  Among

other things, Akin Gump professionals reviewed and analyzed litigation documents and related materials provided to the Committee's advisors and updated its ongoing analysis of the strength of various litigation claims according to its review.

49.    Prior to the Compensation Period, the Court entered the *Order Appointing Mediators*, dated as of March 4, 2020 [ECF No. 895] (the "Mediation Order"), pursuant to which Kenneth Feinberg and Layn Phillips were appointed co-mediators (the "Mediators") to oversee a mediation process involving nearly all significant creditor constituencies to address the relative allocation of the value of the Debtors' estates between the Non-Federal Public Claimants[24] and private opioid litigants, and certain other related issues (the "Allocation Mediation").[25] Throughout the course of the Allocation Mediation, which concluded shortly following the close of the Compensation Period, Akin Gump professionals worked on behalf of the Committee to promote agreements among the Mediation Parties and progress towards a consensual resolution. Specifically, Akin Gump professionals' extensive work in connection with the Allocation Mediation included significant time communicating with various public and private creditor constituencies regarding the strengths and weaknesses of theirs' and other creditors' claims, participating in mediation sessions, analyzing issues raised therein, participating in calls with the Mediators and the Committee regarding the progress of the Allocation Mediation and reviewing, analyzing and discussing with the Mediation Parties various term sheets reflecting proposals and counterproposals among the Mediation Parties.

---

[24] Capitalized terms used but not otherwise defined in this paragraph shall have the meanings assigned to such terms in the Mediators' Report (as defined below).

[25] The parties to the Allocation Mediation included: (i) the MSGE Group; (ii) the Ad Hoc Committee of NAS Babies; (iii) the Ad Hoc Group of Hospitals; (iv) the Ad Hoc Group of Individuals; (v) various third-party payors and health insurance carrier plaintiffs, including The Blue Cross Blue Shield Association; (vi) a group of individual health insurance purchasers; (vii) the CAHC; (viii) the Non-Consenting States; (ix) the Committee; and (x) the Debtors (in each case as defined in the *Debtors' Motion for Entry of an Order Appointing Mediators*, dated February 20, 2020 [ECF No. 855], and, collectively, the "Mediation Parties"). Certain other parties participated in the Mediation but were not "Mediation Parties."

50.    Ultimately, these efforts culminated in agreement among the Mediation Parties on several key case issues, including, among other things, the Non-Federal Public Claimants' agreement that all value received by them in the Chapter 11 Cases will be used to fund programs designed to abate the opioid crisis and four written term sheets addressing allocation of estate value among four Private Claimant groups—the Personal Injury Claimants, the Hospitals, counsel to certain of the TPPs and the NAS Committee (with regard to abatement)—each of which was agreed to by the Debtors, the Non-Federal Public Claimants and the specific Private Claimant group that is party to such term sheet.  The term sheets for the Hospitals, TPPs and NAS Committee also required each group to use substantially all of the value received under a plan to fund programs to abate the opioid crisis.[26]  *See Mediator's Report*, dated September 23, 2020 [ECF No. 1716] (the "Mediators' Report").

51.    In addition, this category includes time spent by Akin Gump professionals addressing motions pursuant to which several parties (the "Class Movants") sought authorization to file class proofs of claim on behalf of themselves and other similarly situated creditors (the "Class Claim Motions"),[27] which were filed during the pendency of the Allocation Mediation and shortly before the Extended Bar Date (as defined below).  Following discussions with the Class Claim Movants and the Mediation Parties, and deliberations among the Committee members and

---

[26] In addition, the Debtors and the Insurance Purchasers reached agreement on a sum to be paid over two years and dedicated to abatement purposes.

[27] The Class Claim Motions include: (i) the *Motion by Public School Districts for an Order Allowing them to Proceed with a Class Proof of Claim and Certifying a Class* [ECF No. 1211]; (ii) the *Motion of the Private Insurance Class Claimants for Leave to File Class Proofs of Claim* [ECF No. 1321]; (iii) the *Hospital Claimants' Motion Pursuant to Fed. Bankr. P. 9014 and 7023 for an Order Making Fed. R. Civ. P. 23 Applicable to These Proceedings and Permitting Them to File a Class Proof of Claim* [ECF No. 1330]; (iv) the *NAS Guardians on Behalf of the NAS Children's Abatement Class Action Claimants Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 9014 and 7023 Permitting them to File a Class Proof of Claim and Granting Related Relief* [ECF No. 1362]; (v) the *Motion by Cheyenne & Arapaho Tribes and Certain Other Indian Tribes Claimants Pursuant to Fed. R. Bankr. P. 9014 and 7023 to Permit the Filing of a Class Proof of Claim* [ECF No. 1363]; and the *Motion to Permit the Filing of a Class Proof of Claim* filed by Tiffany Dunford as Next Friend of T.N. Dunford [ECF No. 1408].

their advisors, the Committee determined that the Class Claim Motions (and the objections and responsive pleadings filed in connection therewith)[28] raised issues regarding the merits of the Class Movants' claims that were, in fact, the subject of the Allocation Mediation, and that rulings on the Class Claim Motions would likely interfere with the significant progress that was being achieved in that process.

52.     To address these concerns, Akin Gump professionals engaged in discussions with the advisors to the Class Movants and the Mediation Parties and proposed an adjournment of the Class Claim Motions pending the completion of the Allocation Mediation.   While the Class Movants were amenable to adjourning the Class Claim Motions until after the conclusion of the Allocation Mediation, various other Mediation Parties—including the Debtors—preferred to address the merits of the Class Claim Motions while the Allocation Mediation was still ongoing. Due to this inability to achieve consensus, Akin Gump professionals drafted and filed *The Official Committee of Unsecured Creditors' Response to and Request for Adjournment of Class Claim Motions until Conclusion of Mediation,* dated July 16, 2020 [ECF No. 1425] (the "Adjournment Motion"), which requested that the Court adjourn the Class Claim Motions to enable the Mediation

---

[28] Such responsive pleadings include: the *Public Claimants' Omnibus Objection to Motions for Leave to File Class Proofs of Claim* [ECF No. 1431]; the *Hospital Claimants' Omnibus Reply to the Objections/Responses Filed at Docket Nos. 1415, 1421, 1423, 1425 and 1431 to Hospital Claimants' Motion Pursuant to Fed. Bankr. P. 9014 and 7023 for an Order Making Fed. R. Civ. P. 23 Applicable to These Proceedings, Permitting Them to File a Class Proof of Claim and Granting Related Relief* [ECF No. 1461]; the *Supplement to Hospital Claimants' Omnibus Reply to the Objections/Responses Filed at Docket Nos. 1415, 1421, 1423, 1425 and 1431 to Hospital Claimants' Motion Pursuant to Fed. Bankr. P. 9014 and 7023 for an Order Making Fed. R. Civ. P. 23 Applicable to These Proceedings, Permitting Them to File a Class Proof of Claim and Granting Related Relief* [ECF No. 1462]; the *Omnibus Reply by Independent Public School Districts in Support of Their Motion for Class Certification and a Classwide Proof of Claim* [ECF No. 1473]; the *Reply of the Private Insurance Class Claimants in Further Support of Motion for Leave to File Class Proofs of Claim* [ECF No. 1475]; *The NAS Children Ad Hoc Committee's Joinder to the Official Committee of Unsecured Creditors' Response to and Request for Adjournment of Class Claim Motions until Conclusion of Mediation* [ECF No. 1486]; the *Omnibus Reply by NAS Guardians on Behalf of the NAS Children's Abatement Class Action Claimants to Objections Filed to Their Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 9014 and 7023 Permitting Them to File a Class Proof of Claim and Granting Related Relief* [ECF No. 1487]; the *Debtors' Objection to Tiffany Dunford's Motion to Permit the Filing of a Class Proof of Claim* [ECF No. 1489]; *Public Claimants' Joint Objection to Tiffany Dunford's Motion to Permit the Filing of a Class Proof of Claim* [ECF No. 1493]

Parties to continue discussions regarding consensual allocations of estate value, subject to an order preserving the rights of all parties in the event that the Allocation Mediation proved unsuccessful. Akin Gump professionals prepared for and argued in support of the Adjournment Motion at the July 23, 2020 hearing on the Class Claim Motions, during which the Court granted the Adjournment Motion over the objections of certain Mediation Parties. *See Order Adjourning Class Claim Motions*, dated July 24, 2020 [ECF No. 1514].

53.    This category also includes time spent by Akin Gump professionals reviewing, analyzing and advising the Committee with respect to issues raised by the *Motion to Intervene on Behalf of the NAACP*, dated July 24, 2020 (the "NAACP Intervention Motion") [ECF No. 1555], and the papers filed in response thereto.  By the NAACP Intervention Motion, which was filed towards the end of the Allocation Mediation, the National Association for the Advancement of Colored People (the "NAACP") expressed an interest in participating in the Allocation Mediation to ensure that recoveries directed to governmental claimants would be appropriately directed to communities of color.  Akin Gump professionals engaged with the NAACP, the Debtors and certain of the Mediation Parties in an effort to formulate a mechanism that would permit the NAACP to participate in the Allocation Mediation in a constructive manner without destabilizing the progress that had already been made.  These efforts ultimately culminated a stipulation among the parties that granted the NAACP the opportunity to participate meaningfully in the Allocation Mediation, which the Court approved on August 26, 2020.  *See Stipulation and Agreed Order Resolving Motion of the National Association for the Advancement of Colored People to Intervene in Chapter 11 Case* [ECF No. 1614].

54.    This category also includes significant time spent by Akin Gump professionals addressing issues related to the bar date for filing claims in the Chapter 11 Cases (the "Bar Date").

Specifically, in the months following entry of the Bar Date Order,[29] various parties in interest, including creditors, individuals and advocacy organizations, raised concerns that the June 30 deadline no longer provided adequate time for creditors to submit their claims in light of the COVID-19 pandemic.  Prior to and continuing into the Compensation Period, Akin Gump professionals and the Committee's other advisors spent significant time discussing with the Committee, various creditor constituents (both public and private) and the Debtors the impact that the COVID-19 pandemic could have on creditors' ability to timely file proofs of claim and whether, and to what extent, an extension of the Bar Date would be appropriate.  Following such discussions, the Committee and the Debtors agreed that a universal 30-day extension of the Bar Date was both reasonable in light of the unprecedented facts and circumstances of these Chapter 11 Cases, including the COVID-19 pandemic, and an appropriate middle ground among the starkly divided creditor constituencies.  To obtain such an extension, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 2002 and 3003(c)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof*, dated May 20, 2020 [ECF No. 1178] (the "Bar Date Extension Motion"), and Akin Gump professionals drafted and filed the *Statement of the Official Committee of Unsecured Creditors In Support of Debtors' Motion Pursuant to 11 U.S.C. §§ 105(A) and 501 and Fed. R. Bankr. P. 2002 and 3003(C)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof*, dated June 2, 2020 [ECF No. 1213].

---

[29] Prior to the Compensation Period, the Court entered the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof*, dated February 3, 2020 [ECF No. 800] (the "Bar Date Order"), which established June 30, 2020 at 5:00 p.m. (ET) as the Bar Date.

55.    In connection with the extension of the Bar Date, Akin Gump professionals worked with counsel to the Debtors to develop an appropriate notice plan to provide creditors with notice of the extension and the new Bar Date.  Akin Gump attorneys prepared for and participated in the hearing on the Bar Date Extension Motion on June 3, 2020, during which the Court granted the motion and extended the Bar Date to Thursday, July 30, 2020, at 5:00 p.m. (ET) (the "Extended Bar Date").  *See Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof*, dated June 3, 2020 [ECF No. 1221].

56.    In the hours following the Extended Bar Date, between 5:01 p.m. (ET) and 11:59 p.m. (ET) on July 30, 2020, 597 claims were filed either electronically or by hand delivery (the "*De Minimis* Late Claims").  In an effort to move the Chapter 11 Cases toward resolution and preserve estate resources by avoiding litigation on potentially hundreds of motions to allow late proofs of claim, Akin Gump professionals engaged in discussions with the Debtors regarding such claims and the Committee and the Debtors ultimately agreed to treat the *De Minimis* Late Claims as timely filed pursuant to the terms set forth in the *Stipulation and Agreed Order Regarding Late Claims Filed on July 30, 2020 Claim Inquiries*, dated September 16, 2020 [ECF No. 1695].[30]

57.    This category also includes time spent by Akin Gump Professionals in connection with the *Stipulation and Order Permitting the Filing of a Class Proof of Claim Solely for Administrative Convenience in Order to Effectuate a Potential Settlement in Respect of Certain Canadian Litigation*, dated June 30, 2020 [ECF No. 1313] (the "Canadian Class Stipulation"). The Canadian Class Stipulation sought approval of an agreement between the Debtors and the lead plaintiffs (the "Canadian Plaintiffs") in ten opioid-related class actions commenced in certain Canadian provinces between May 11, 2007 and June 22, 2012 (the "Canadian Class Actions"),

---

[30] On September 30, 2020, the Court approved the stipulation.  *See Stipulation and Agreed Order Regarding Late Claims Filed on July 30, 2020* [ECF No. 1758].

pursuant to which the Canadian Plaintiffs would be permitted to file a proof of claim in the Chapter

11 Cases for the sole purpose of effectuating a conditional national class action settlement

agreement. On behalf of the Committee, Akin Gump professionals analyzed the potential impact

of the Canadian Class Stipulation on the Chapter 11 Cases, including in light of an objection filed

by various Canadian governmental entities,[31] and worked with the parties to reach the resolution

embodied in the *Amended and Restated Stipulation and Order Permitting the Filing of a Class*

*Proof of Claim Solely For Administrative Convenience in Order to Effectuate a Potential*

*Settlement in Respect of Certain Canadian Patient Litigation* [ECF No. 1515].

58.     Finally, this category includes time spent by Akin Gump professionals and

paraprofessionals addressing all other issues and inquiries relating to the Bar Date and the proof

of claim process, including communications with numerous potential claimants to address various

inquiries regarding the claim-filing process and the proof of claim forms. Akin Gump

professionals responded to no less than sixty such inquiries during the Compensation Period and

prior to the Bar Date, and maintained a log of all such interactions.

## H.     Prepetition Transactions (Task Code 13)

| Total Hours | Fees |
|---|---|
| 19,642.90 | $15,922,977.50 |

59.     This category includes time spent by Akin Gump professionals and

paraprofessionals investigating and evaluating potential estate causes of action, including those

against the Debtors' shareholders and affiliated entities, arising from prepetition transfers of value

or the incurrence of obligations from the Debtors to other entities, as well as numerous other

potential causes of action arising out of prepetition conduct and transactions. Such efforts involved

---

[31] *See Objection of Her Majesty the Queen in Right of the Province of British Columbia to Presentment of Stipulation and Order Permitting the Filing of a Class Proof of Claim Solely for Administrative Convenience in Order to Effectuate a Potential Settlement in Respect of Certain Canadian Litigation* [ECF No. 1369].

extensive legal research with respect to identifying and analyzing potential causes of action, as well as potential defenses to such causes of action. This category also includes time related to evaluating the Debtors' proposed Settlement Framework, which contemplates a global settlement of estate and third-party causes of action against the Debtors' shareholders, including certain diligence related to the IACs, the sale of which is contemplated to provide a portion of the consideration for the settlement of such claims. In connection with these ongoing efforts, Akin Gump professionals coordinated closely with other creditor constituencies, including the Ad Hoc Group of Non-Consenting States (the "Non-Consenting States").

60.    Specifically, during the Compensation Period, Akin Gump professionals and paraprofessionals spent significant time reviewing and analyzing materials produced by the Debtors, the Sacklers and other parties in interest in connection with the Committee's ongoing investigation of potential estate causes of action. Pursuant to the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated November 20, 2019 [ECF No. 518] (the "Case Stipulation"), the Committee was entitled to receive information from the Debtors and their shareholders regarding transfers to, and the assets of, the Debtors' shareholders, including information produced by the Debtors in prepetition litigation. Akin Gump professionals expended significant effort seeking disclosure of additional information necessary to its investigation in these cases, including extensive negotiations concerning voluntary disclosures from the Debtors, the Sacklers and other third parties, moving the Court for authority to seek compulsory discovery from the Sacklers and their entities pursuant to Bankruptcy Rule 2004 and seeking the Court's assistance to resolve other discovery disputes. During the Compensation Period, this included Akin Gump professionals' efforts in connection with three separate motions seeking authorization from the Court to conduct

comprehensive discovery of various entities and individuals subject to the Committee's investigation. *See The Official Committee's Omnibus* Ex Parte *Motion for Authorization to Conduct Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016*, dated June 30, 3030 [ECF No. 1317]; Ex Parte *Motion of the Official Committee of Unsecured Creditors of Purdue Pharma,* et al., *and the Ad Hoc Group of Non-Consenting States for Entry of an Order Authorizing Examinations of Certain Insurance Brokers Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006*, dated August 12, 2020 [ECF No. 1569]; Ex Parte *Motion of the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al. *and the Non-Consenting States Group for Entry of an Order Authorizing Examinations of Certain Former Debtor Executives, Separately Represented Debtor Personnel, and Norton Rose Fulbright Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [ECF No. 1779].  In addition to compulsory discovery, Akin Gump professionals expended significant time pursuing consensual resolutions of various discovery matters involving the Debtors, including the production of documents previously produced to the United States Department of Justice in connection with its ongoing investigation of the Debtors. *See, e.g., Stipulation and Agreed Order Among the Official Committee, the Non-Consenting States Group and the Debtors Regarding Discovery in the Chapter 11 Cases*, dated August 6, 2020 [ECF No. 1553].

61.    During the Compensation Period, Akin Gump, in conjunction with the Committee's other advisors, continued reviewing voluminous materials produced by the Debtors, the Sacklers and other entities and conducting fact discovery to assess potential causes of action on behalf of the Debtors' estates and the likelihood of recovery.  As of shortly after the close of the Compensation Period, the Committee's advisors had received approximately 13 million documents comprising more than 92 million pages through discovery and other voluntary

disclosures, including the Debtors' productions in the multidistrict litigation pending in the United States District Court for the Northern District of Ohio, *In re Nat'l Prescription Opiate Litigation, No. 1:17-MD-2804* (N.D. Ohio 2017) (the "MDL"), and other prepetition litigations, as well as other productions made by the Debtors, the Sacklers and other parties in these cases.  In connection with the foregoing, and in light of the expedited timeframe under which the Committee's investigation is proceeding, the Committee's advisors established a document review protocol assisted by analytics and used such analytics and tailored searches to conduct targeted reviews of large volumes of materials.  Akin Gump professionals engaged in extensive document review, with a broad-based document review team, in order to identify and review the most relevant documents. Akin Gump professionals have also prepared various memoranda and other work product in connection with their ongoing review of these documents and factual investigation.

62.    Additionally, Akin Gump professionals and paraprofessionals spent significant time during the Compensation Period analyzing and challenging (as necessary) the nearly 400,000 documents the Debtors and the Sacklers initially withheld from production based on assertions of attorney-client privilege, work product protection, common interest and other grounds.  Akin Gump professionals reviewed voluminous privilege log entries and redactions associated with the withheld documents and engaged in a thorough meet and confer process with the Debtors and the Sacklers regarding various deficiencies in the privilege logs, as well as the exceptions to the asserted privileges the Committee believes apply under the circumstances.  This process included the exchange of nearly 40 meet and confer letters, numerous emails and multiple telephonic conferences.

63.    Despite extensive efforts by Akin Gump professionals to reach consensual resolutions regarding the production of purportedly privileged information withheld by the

Debtors and the Sacklers, it became apparent that the Court's assistance would be necessary in order for the Committee to obtain improperly withheld documents. Accordingly, Akin Gump professionals spent significant time researching and analyzing the parties' legal positions and drafted two separate motions challenging the Debtors' and the Sacklers' privilege designations, which were filed shortly before the end of the Compensation Period. *See Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents or for In Camera Review, based on Good Cause, Crime Fraud, and At Issue Exceptions to Claims of Privilege*, dated September 30, 2020 [ECF No. 1753] and *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged*, dated September 30, 2020 [ECF No. 1752] (together, the "Privilege Motions"). Following the filing of the Privilege Motions and related meet and confers with counsel to the Debtors and the Sacklers, the Debtors and the Sacklers agreed to voluntarily produce in full or reduce the number of redactions for more than 12,000 documents that were previously withheld and/or redacted as privileged. In addition, following the conclusion of the Compensation Period, the Committee and the Debtors reached a consensual resolution of the Privilege Motions as to the Debtors that will provide the Committee (on a common interest basis) meaningful access to thousands of the Debtors' privileged documents throughout the relevant prepetition time period subject to investigation, both with regard to transfers and various communications by and among the Sacklers and other Board members. *See Notice of Agreement Between Debtors and Official Committee of Unsecured Creditors Regarding Privilege Motions and Adjournment of Hearing with Respect to Remaining Privilege Disputes as to the Sacklers*, dated November 6, 2020 [ECF No. 1908].

64.     In addition, the Committee's investigation of potential estate causes of action has included significant analysis and diligence with respect to the more than 160 Independent Affiliated Companies (the "IACs") controlled by the Debtors' shareholders.  Among other things, Akin Gump professionals, in conjunction with the Committee's other advisors, examined significant cash and non-cash transfers from the Debtors for the benefit of the IACs and the Sacklers, conducted legal research regarding potential estate claims related thereto and analyzed the value of the IACs for the purposes of evaluating the appropriateness of the Settlement Framework.  In connection with the foregoing, Akin Gump professionals conducted an extensive review of documents produced by the Debtors, the Sacklers, the IACs and others.  Akin Gump professionals also met and conferred with counsel for certain IACs to identify relevant sources of documents and arrange for the production of those materials.

65.     This category also includes time spent by Akin Gump professionals scheduling, preparing for and taking depositions of individuals with key information related to potential estate causes of action.  As with numerous other issues in connection with the Committee's investigation, Akin Gump professionals worked closely with representatives of other creditor groups, including the Non-Consenting States, in preparing the Committee's strategy in connection with such depositions and the investigation into estate causes of action generally.

66.     Specifically, during the Compensation Period, Akin Gump professionals identified various witnesses relevant to the Committee's investigation and negotiated with counsel to such parties regarding scheduling the depositions on an appropriate timetable.  Due to the unique challenges presented by the COVID-19 pandemic, Akin Gump professionals negotiated a protocol with counsel to numerous witnesses to govern the process of taking depositions remotely.  Akin Gump professionals participated in the depositions of five key witnesses during the Compensation

Period and spent significant time preparing for such depositions, including reviewing voluminous documents relevant to each witness, drafting deposition notices, preparing exhibits and drafting relevant questions and deposition outlines.

67.     Additionally, although extensive discovery from the Debtors, the shareholder parties, the IACs and other parties is essential to the Committee's evaluation of any plan of reorganization or other settlement proposed in the Chapter 11 Cases, the Committee recognizes that all parties have a common interest in working together to coordinate discovery efforts to minimize costs and maximize the value available to creditors.   Accordingly, Akin Gump professionals have worked with the Debtors' public and private creditor constituencies to streamline critical discovery efforts, contain the costs of the investigation into estate causes of action without unduly limiting its scope and avoid duplicative efforts by multiple parties in interest. To document and formalize these efforts, during the Compensation Period, Akin Gump professionals drafted and negotiated a discovery and information-sharing stipulation (the "Discovery Stipulation"), pursuant to which the Committee agreed to take the highly unusual step of making certain of its professionals' work product and privileged communications available to parties that agree to the stipulation in exchange for such parties' agreement not to seek reimbursement from estate assets of fees they may incur in conducting discovery undertaken by the Committee.  *See Amended Stipulation and Agreed Order Among the Official Committee and Other Parties in Interest Regarding Discovery and the Sharing of Information in the Chapter 11 Cases*, dated July 31, 2020 [ECF No. 1231].

68.     Finally, following the conclusion of the Allocation Mediation, the Debtors proposed that the Mediators continue to serve in an expanded capacity to mediate claims and causes of action that may be asserted by the Debtors' estates or creditors against members of the Sackler family

and related individuals and entities.  While the Committee did not object in principle to mediating

such disputes, the Committee believed it would be premature to commence mediation at the time

in light of the significant discovery outstanding and key unresolved disputes regarding pivotal

information to which the Committee may be entitled, including the disputes raised in the Privilege

Motions.  However, following a Chambers conference during which the Court directed the parties

to engage in such mediation (the "Shareholder Claims Mediation"), Akin Gump professionals

engaged in discussions with counsel to the parties to the Shareholder Claims Mediation regarding

the form of order governing such mediation.  The Court entered an order substantially in the form

agreed to by the parties to the Shareholder Claims Mediation on September 30, 2020.  *See Order*

*Expanding Scope of Mediation*, dated September 30, 2020 [ECF No. 1756].

## I.    Insurance Issues (Task Code 14)

| Total Hours | Fees |
|---|---|
| 220.20 | $229,353.00 |

69.    This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with the Committee's ongoing investigation into the scope, value

and limitations of the Debtors' various insurance policies, which likely will represent a critical

source of value for the Debtors' creditors.   In particular, Akin Gump professionals continued

performing comprehensive analyses regarding the potential availability of insurance coverage for

opioid-related claims against the Debtors, including under the Debtors' directors and officers,

general liability and products liability insurance policies.  In connection with such analyses, Akin

Gump professionals reviewed hundreds of additional insurance-related documents and

communications produced by the Debtors, which collectively totaled thousands of pages.

70.    Akin Gump professionals also continued to conduct research regarding numerous

critical insurance-related issues, including potential limitations on the ability of the Debtors and/or

unsecured creditors to obtain the benefit of coverage under such policies for the various litigation claims against the Debtors. To facilitate this work, Akin Gump professionals held several telephonic conferences during the Compensation Period with the Debtors' insurance coverage counsel and communicated by email and telephone with counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigants (the "CAHC") and other creditor constituencies regarding the foregoing issues, and assisted with efforts to obtain insurance-related documents and communications from the Debtors' insurance brokers.

71.     In addition, Akin Gump's insurance professionals: (i) analyzed and worked with counsel to the Debtors and the CAHC to develop strategies for maximizing the recovery of the estate's insurance assets; (ii) reviewed hundreds of newly produced insurance-related documents from the Debtors, the Sacklers and other parties in interest; and assessed the impact of those documents on the Committee's ongoing analysis regarding the available coverage for opioid-related claims under the Debtors' insurance policies; (iii) finalized document subpoenas to the Debtors' insurance brokers and conferred with counsel to the insurance brokers regarding their responsive productions; and (iv) assisted with the preparation of insurance-related deposition strategies, questions and exhibits.

**J.     Automatic Stay Issues (Task Code 16)**

| Total Hours | Fees |
|:---:|:---:|
| 45.90 | $47,002.00 |

72.     This category includes time spent by Akin Gump professionals addressing matters related to the automatic stay. Specifically, on July 2, 2020, the Debtors filed the *Debtors' Motion for Order Modifying the Automatic Stay to Permit the Debtors to Prosecute Certain Pending Patent Litigation* [ECF No. 1328] (the "Collegium Lift-Stay Motion") seeking relief from the automatic stay to proceed with certain patent litigation (the "Federal Court Action") against

Collegium Pharmaceutical, Inc. ("Collegium").  On July 20, 2020, Collegium filed the *Motion of Collegium Pharmaceutical, Inc. for Relief from the Automatic Stay* [ECF No. 1465] (the "PTAB Lift-Stay Motion," and together with the Collegium Lift-Stay Motion, the "Lift-Stay Motions"), by which Collegium argued that the Court should only permit the Federal Court Action to proceed if the stay is also lifted to permit the continuation of a proceeding brought by Collegium seeking a declaration from the Patent Trial and Appeal Board that one of the Debtors' patents is invalid. During the Compensation Period, Akin Gump professionals analyzed the Lift-Stay Motions and the various related pleadings, and discussed the potential impact of such motions on the Debtors' estates and creditors with the Committee.[32]  Following a contested hearing on August 26, 2020, the Court entered an order granting the Lift-Stay Motions on September 1, 2020 and Collegium thereafter filed a notice of appeal on September 15, 2020.  *See Order Granting Motions for Relief from the Automatic Stay* [ECF No. 1644]; *Notice of Appeal and Statement of Election* [ECF No. 1691].

73.    In addition, this category includes time spent by Akin Gump professionals in connection with the *Motion of Debtors for Entry of an Order (I) Approving the Dismissal Agreement by and among the Debtors and Intellipharmaceutics and (II) Granting Related Relief*, dated July 2, 2020 [ECF No. 1327] (the "IPCI Settlement Motion").  By the IPCI Settlement Motion, the Debtors sought the Court's approval to enter into and perform under a dismissal agreement by and among certain of the Debtors and Intellipharmaceutics International Inc. and its

---

[32] On July 20, 2020, Collegium filed a response (the "Collegium Response") to the Collegium Lift-Stay Motion. *Response of Collegium Pharmaceutical, Inc. to Debtors' Motion for Order Modifying the Automatic Stay to Permit the Debtors to Prosecute Certain Pending Patent Litigation* [ECF No. 1463].  On August 19, 2020, the Debtors filed a reply to the Collegium Response and an objection to the PTAB Lift-Stay Motion, *Debtors' Omnibus Objection and Reply in Support of Debtors' Motion for Order Modifying the Automatic Stay to Permit the Debtors to Prosecute Certain Pending Patent Litigation* [ECF No. 1592], to which Collegium responded on August 24, 2020.  *Response to Debtors' Objection to Collegium Pharmaceutical, Inc.'s Motion for Relief from the Automatic Stay and Debtors' Reply in Support of Debtors' Motion for Order Modifying the Automatic Stay to Permit the Debtors to Prosecute Certain Pending Patent Litigation* [ECF No. 1601].

affiliates (collectively, "IPCI"), which would have the effect of concluding litigation between the

Debtors and IPCI regarding certain disputes involving the Debtors' patents.    During the

Compensation Period, Akin Gump professionals reviewed the IPCI Settlement Motion and

discussed relevant issues with the Committee.    The Court entered an order approving the IPCI

Settlement Motion on July 24, 2020.    *See Order (I) Approving the Dismissal Agreement By and

Among the Debtors and Intellipharmaceutics and (II) Granting Related Relief* [ECF No. 1516].

**L.    Adversary Proceedings (Task Code 17)**

| Total Hours | Fees |
|:---:|:---:|
| 190.40 | $180,192.00 |

74.    This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with the adversary proceeding commenced by the Debtors on

September 18, 2019, captioned *Purdue Pharma L.P. v. Commonwealth of Massachusetts*, Adv. Pro.

No. 19-08289 (Bankr. S.D.N.Y. 2019) (the "Adversary Proceeding") and matters relating to the

*Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction* [Adv.

Pro. ECF No. 82] (the "Preliminary Injunction"), including subsequent extensions and appeals of

the Preliminary Injunction.

75.    At the outset of the Chapter 11 Cases, the Committee determined to support the

Preliminary Injunction, which stayed all litigation against the Debtors, the Sacklers and certain

related parties for an initial period of 180 days (the "Initial Stay Period"), in exchange for the

various rights and remedies negotiated by the Committee in the Case Stipulation.    Certain parties

associated with the State of Tennessee (the "PI Appellants") objected to the Preliminary Injunction

and appealed the Court's order approving the Preliminary Injunction to the United States District

Court for the Southern District of New York (the "District Court").    *See Dunaway v. Purdue Pharm.*

*L.P. (In re Purdue Pharm. L.P.)*, Case No. 19-10941-CM [ECF No. 1] (S.D.N.Y. Nov. 26, 2020).

As the end of the Initial Stay Period neared, the Debtors filed the *Debtors' Motion to Extend the Preliminary Injunction*, dated March 4, 2020 [Adv. Pro. ECF No. 146] (the "First PI Extension Motion"), by which the Debtors sought entry of an order extending the Preliminary Injunction by 180 days (the "First PI Extension Period").  During a hearing on March 18, 2020, the Court granted the First PI Extension Motion over another objection by the PI Appellants.  *See Eighth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated March 30, 2020 [Adv. Pro. ECF No. 167] (the "PI Extension Order").   On April 10, 2020, the PI Appellants appealed the First PI Extension Order.  *See Dunaway v. Purdue Pharm. L.P. (In re Purdue Pharm. L.P.)*, Case No. 20-03048-CM [ECF No. 1] (S.D.N.Y. April 15, 2020) (the "Second PI Appeal").

76.     Prior to and during the Compensation Period, Akin Gump professionals undertook research, considered strategy and conferred with counsel to the Debtors regarding the issues raised in the opening appellate brief filed by the PI Appellants in the Second PI Appeal.  *See Appellants' Principal Brief (Second Appeal)*, Second PI Appeal, dated May 22, 2020 [ECF No. 17].  Akin Gump professionals also spent time researching issues related to and drafting the Committee's responsive brief in the Second PI Appeal, which was filed on June 22, 2020.  *Brief of Appellee the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.*, Second PI Appeal [ECF No. 20].  Thereafter, Akin Gump professionals reviewed the PI Appellants' *Reply Brief*, dated July 10, 2010, Second PI Appeal [ECF No. 28], and prepared for possible oral argument in connection with the Second PI Appeal.   On August 11, 2020, the District Court issued an opinion and order upholding the First PI Extension.  *See Decision and Order Affirming the Bankruptcy Court's Preliminary Injunction*, Second PI Appeal [ECF No. 29].

77.    On September 16, 2020, the Debtors filed the *Motion to Extend the Preliminary Injunction* [Adv. Pro. ECF No. 197] (the "Second PI Extension Motion"), seeking entry of an order extending the Preliminary Injunction by 180 days (the "Second PI Extension Period").    Akin Gump professionals analyzed the Second PI Extension Motion and the pleadings filed in response thereto, including objections filed by various parties.  After considering the analysis performed by Akin Gump and the Committee's other advisors, the Committee determined that an extension of the First Preliminary Injunction was warranted to ensure that, among other things, the Debtors and the Sacklers were not distracted by outside litigation and would be able to focus on producing the information necessary for the Committee and other parties in interest to evaluate the merits of the Settlement Framework, including the proposed third-party releases for the members of the Sackler family, as well as on Mediation efforts.  Accordingly, the Committee determined not to oppose the Second PI Extension Motion, and the Court granted the Second PI Extension Motion on September 30, 2020  *See Thirteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated October 1, 2020 [Adv. Pro. ECF No. 208].

78.    Additionally, this category includes Akin Gump professionals' efforts in connection with the *Suggestion of Death*, dated June 30, 2020 [ECF No. 1316], filed by Jonathan Sackler's former counsel.   Akin Gump professionals communicated with Mr. Sackler's former counsel to ensure that representatives of Mr. Sackler's decedent estate were aware of and would abide by the terms of the Case Stipulation, including the anti-secretion provision, such that no assets would be removed from Mr. Sackler's estate absent further order of the Court.    To confirm this understanding, Akin Gump professionals drafted and filed the *Statement of the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al*., Regarding the Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*, dated July

3, 2020 [ECF No. 1337], which informed parties the Court and other interest parties of the foregoing and gave notice of the Committee's intention to move to enforce the terms of the Case Stipulation to the extent it discovers information suggesting that the representatives of Mr. Sackler's decedent estate are not complying with the Case Stipulation.

79.     Finally, this category includes work performed by Akin Gump professionals and paraprofessionals in connection with the *Protective Order*, dated January 28, 2020 [ECF No. 784], which was amended on March 20, 2020 [ECF No. 969] and on July 31, 2020 [ECF No. 1540] (as amended, the "Protective Order").  The Protective Order governs the terms pursuant to which parties in interest, including Committee members and Committee professionals, have access to certain documents and information from the Debtors and other parties in the Chapter 11 Cases. During the Compensation Period, Akin Gump professionals analyzed various issues concerning a proposed amendment to the Protective Order that was intended to address concerns related to the handling of protected health information (particularly as to the sharing of information among each of the Debtors, the Committee, CAHC and the Non-Consenting States), and engaged with the various parties to the Protective Order to arrive at a consensual modification.

**K.     Tax Issues (Task Code 18)**

| Total Hours | Fees |
| --- | --- |
| 449.00 | $387,620.50 |

80.     This category includes time spent by Akin Gump professionals reviewing and analyzing various tax issues affecting unsecured creditors.  Specifically, Akin Gump tax professionals devoted significant effort during the Compensation Period to, among other things: (i) coordinating with other Akin Gump professionals regarding various deposition proceedings and requests; (ii) ongoing diligence regarding prior U.S. federal and state tax returns, distributions, tax distributions and withholdings; (iii) participating in discussions related to, and evaluating,

potential tax consequences of distributions to the Debtors' direct and indirect shareholders; and (iv) researching and analyzing potential tax consequences of certain prior transactions and prior filing and reporting by the Debtors or their direct and indirect owners.

81.     The foregoing tasks required extensive review and analysis of significant tax diligence related to the IACs, the Debtors and other affiliated entities.  In light of the unusual structure of many of the Debtors' shareholders' holdings and the wide scope and variety of prepetition distributions made by the Debtors, Akin Gump professionals were required to spend significant time conducting legal research and analysis concerning these and other complex tax-related issues, and Akin Gump professionals communicated regularly with the Committee's other professionals and with the advisors to the Debtors and other interested parties regarding such issues.  Finally, this category includes time spent by Akin Gump professionals analyzing discovery materials related to taxes, identifying missing information and priority requests and assisting with, drafting and revising correspondence and discovery requests related to tax-related issues.

**L.    Labor Issues/Employee Benefits (Task Code 19)**

| Total Hours | Fees |
|:---:|:---:|
| 240.70 | $250,510.50 |

82.     This category includes time spent by Akin Gump professionals in connection with labor and employee benefit issues arising in the Chapter 11 Cases.  During the Compensation Period, Akin Gump's efforts in this category related primarily to the *Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan*, dated September 9, 2020 [ECF No. 1674] (the "Bonuses Motion").  Pursuant to the Bonuses Motion, the Debtors sought approval of, among other things: (i) a Key Employee Incentive Plan (the "KEIP") that proposed to pay a total of $16 million to certain of the Debtors' insiders over a period of three years; and (ii) a Key Employee Retention Plan (the "KERP" and,

together with the KEIP, the "Bonus Plans") that proposed to pay a total of $51 million to the Debtors' non-insider employees over the same period. Notably, both the KEIP and the KERP included a retentive component that guaranteed certain employees and insiders would receive certain bonus payments through 2023 as long as they remained employed by the company.

83.    Akin Gump professionals conducted extensive diligence of the Bonus Plans, including analyzing materials provided by the Debtors in support thereof and working with Committee's other advisors to perform independent analysis to ensure that the compensation contemplated by the Bonus Plans would be consistent with market terms. Akin Gump professionals also worked closely with the advisors to the Non-Consenting States and the CAHC in analyzing the appropriateness of proposed compensation, and reviewed and analyzed the issues raised by the United States Trustee and the Ad Hoc Committee on Accountability in their objections to the Bonuses Motion. *See Objection of the United States Trustee to Motion of Debtors for Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan*, dated September 22, 2020 [ECF No. 1708]; *The Ad Hoc Committee on Accountability's Objection to Debtor's Motion Authorizing Implementation of a Key Employee Incentive Plan and Key Employee Retention Plan*, dated September 22, 2020 [ECF No. 1709]. Following such analysis and discussion, the Committee identified a number of concerns with the proposed Bonuses Plans, including with respect to the aggregate compensation contemplated thereunder and the portions of the proposals that would bind the Debtors (and their successors) for years into the future.

84.    After discussing these concerns with the Committee, the Non-Consenting States and the CAHC, Akin Gump professionals, in conjunction with the Committee's other advisors, prepared a counterproposal to the KERP that was supported by each of the foregoing parties and

requested that the Debtors adjourn the originally scheduled hearing on the KEIP in order to give the parties more time to reach agreement on its terms.  Following negotiations with the Debtors on this proposal, the parties ultimately reached agreement regarding an adjournment of the KEIP to a later date and certain modifications to the KERP , including: (i) a $4 million reduction of the 2023 long-term retention plan (the "LTPR"); (ii) delayed timing of the KERP payments; and (iii) acceleration of the LTRP payments scheduled for 2022-23 to the effective date of a chapter 11 plan.  In addition, all of the payments under the Bonus Plans would be subject to a clawback mechanism in the event any individuals receiving payment thereunder were later found to have been involved in wrongdoing.  The Court entered an order approving the KERP subject to the foregoing modifications and adjourning the hearing on the KEIP to October 28, 2020.  *See Order Authorizing the Debtors to Implement a Key Employee Retention Plan*, dated October 1, 2020 [ECF No. 1762].

**M.    Interaction/Review of Other Opioid Companies and Cases (Task Code 20)**

| Total Hours | Fees |
|:---:|:---:|
| 247.20 | $185,221.50 |

85.    This category includes time spent by Akin Gump professionals reviewing and analyzing developments in other opioid litigation pending throughout the country, including reports in news articles and academic publications, to assess the potential impact of such matters on the positions of the various parties in interest in the Chapter 11 Cases.  Given the wide-ranging nature of the opioid crisis and the numerous repeat players involved in litigation and/or settlement discussions with multiple defendants in numerous jurisdictions and throughout the country, tracking and ensuring that the Committee remains informed with respect to such developments has been critical to Akin Gump's ability to assess issues of vital importance to these cases, including

its assessment of the various litigation claims against the Debtors and issues related to intercreditor

allocations (including the Allocation Mediation) and potential settlement structures.

86.    For example, during the Compensation Period, Akin Gump professionals

monitored developments in the MDL and other pending opioid litigation, including the motion of

the Plaintiffs' Co-Lead Counsel, Liaison Counsel, the members of the Plaintiffs' Executive

Committee in the MDL (collectively, the "PEC") to establish a "common benefit fund" to provide

for the reimbursement of the fees and expenses of the PEC's advisors through a 7% assessment on

any settlements or recoveries in respect of opioid-related claims brought by MDL plaintiffs and

other potential creditors in these Chapter 11 Cases.  *See Amended Motion for Entry of Order*

*Establishing Common Benefit Fund, dated January 28, 2020* [MDL ECF No. 3112] (the "Common

Benefit Fund Motion").  Following extensive briefing by the parties in interest, Judge Polster

denied the Common Benefit Fund Motion on July 27, 2020.  [MDL ECF No. 3397].  Akin Gump

professionals also analyzed the potential impact of the Sixth Circuit's September 24, 2020 decision

decertifying the "negotiation class" of 33,000 cities, towns and counties.  *City of N. Royalton v.*

*McKesson Corp. (In re Nat'l Prescription Opiate Litig.)*, Case No. 19-4097 [ECF No. 94] (6th Cir.

Sept. 24, 2020).

## N.    Exclusivity (Task Code 21)

| Total Hours | Fees |
|:---:|:---:|
| 8.40 | $7,348.00 |

87.    This category includes time spent by Akin Gump professionals in connection with

the Debtors' second request to extend their exclusivity periods.  During the Compensation Period,

the Debtors filed the *Motion of Debtors for Entry of a Second Order Extending the Exclusive*

*Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof*, dated July 9,

2020 [ECF No. 1365] (the "Exclusivity Motion"), which sought 150-day extensions of the

Debtors' exclusive periods to file and solicit approval of a chapter 11 plan. Akin Gump professionals reviewed the Exclusivity Motion, analyzed the implications of the relief sought for the Chapter 11 Cases and discussed relevant considerations with Committee. The Committee determined not to oppose the Exclusivity Motion, and the Court entered an order granting the Exclusivity Motion on July 24, 2020. *See Second Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof*, dated July 24, 2020 [ECF No. 1517].

**O.    Disclosure Statement/Solicitation/Plan/Confirmation (Task Code 22)**

| Total Hours | Fees |
|---|---|
| 215.90 | $174,542.50 |

88.    This category includes time spent by Akin Gump professionals researching and analyzing numerous complex issues that may arise in connection with the formulation of a chapter 11 plan in these cases. Specifically, during the Compensation Period, Akin Gump professionals conducted research regarding the structures and mechanisms included in chapter 11 plans approved in prior bankruptcy cases and analyzed issues relating to the potential applicability of such structures to the Debtors' unprecedented situation.

**P.    Asset Sales/Dispositions (Task Code 23)**

89.    This category includes time spent by Akin Gump professionals in connection with the *Motion of the Debtors for Entry of an Order (I) Approving Sale of Debtors' Coventry Facility and Related Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtors' Entry into a Long-Term API Supply Agreement, (III) Authorizing Assumption and Assignment or Assignment, as Applicable, of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, dated September 14, 2020 [ECF No. 1687] (the "Coventry Sale Motion"), pursuant to which the Debtors sought to sell their facility in Coventry, Rhode Island to a third party

and enter into a long-term supply agreement with the purchaser.  During the Compensation Period,
Akin Gump professionals, in conjunction with the Committee's other advisors, performed
diligence and communicated with the Debtors regarding the relief requested in the Coventry Sale
Motion, reviewed the information provided by the Debtors and analyzed the relevant issues and
their potential effect on the Chapter 11 Cases.  Ultimately, after reviewing the analysis presented
by the Committee's professionals, the Committee determined not to object to the Coventry Sale
Motion.

## Q.    General Corporate Matters (Task Code 28)

| Total Hours | Fees |
|:---:|:---:|
| 16.50 | $13,626.50 |

90.    This category includes time spent by Akin Gump professionals in connection with
general corporate diligence matters.  Specifically, during the Compensation Period, Akin Gump
professionals conducted corporate diligence regarding the Debtors' businesses, including by
reviewing diligence materials received in the Chapter 11 Cases.

## R.    Business Operations (Task Code 31)

| Total Hours | Fees |
|:---:|:---:|
| 298.20 | $282,917.50 |

91.    This category includes work performed by Akin Gump professionals with respect
to ongoing review and analysis of the Debtors' business operations and performance, including
the Debtors' business plan and related operational matters.  During the Compensation Period, Akin
Gump professionals, in conjunction with the Committee's other advisors, analyzed issues related
to the Debtors' businesses in the context of the unique posture of these Chapter 11 Cases in which
the Debtors propose to turn over the full value of their enterprise to creditors and transition into a
public benefit corporation.  The Debtors' proposed transition into a public benefit corporation

through certain public health initiatives, as contemplated under the Settlement Framework,[33] has

required—and continues to require—significant diligence by the Committee and its professionals.

These efforts have assisted—and will continue to assist—the Committee in evaluating whether to

support the Debtors' vision of the future of Purdue.

92.     This category also includes time spent by Akin Gump professionals in connection

with the *Motion of Debtors for Authorization to Enter into Funding Agreement*, dated April 1, 2020

[ECF No. 1005] (the "HRT Motion"), which sought authorization for the Debtors to enter into an

agreement (the "Funding Agreement") with Harm Reduction Therapeutics, Inc. ("HRT") pursuant

to which the Debtors would fund HRT's development of an over-the-counter formulation of

naloxone, a prevalent overdose treatment drug, to be distributed to the American public for free or

at cost.  Prior to the Compensation Period, Akin Gump professionals, on behalf of the Committee,

had obtained the agreement of the Debtors to defer a hearing on the HRT Motion until the

Committee and other creditors had the opportunity to perform additional diligence regarding the

viability of the initiative and HRT's historical relationship with the Debtors.  With the benefit of

additional diligence conducted by Akin Gump professionals and the Committee's other advisors,

the Committee concluded that the Debtors' decision to pursue the HRT Motion was premature in

light of the absence of creditor support for the Public Health Initiative, and that any consideration

of the HRT Motion should be deferred until there was greater clarity and creditor consensus

regarding the Debtors' futures.  After the Committee's views were shared with the advisors to the

Debtors and various other creditor constituencies, the Debtors indicated that the HRT Motion could

not be further adjourned without jeopardizing the success of the initiative but agreed to limit the

funds that would be expended under the Funding Agreement and to represent that the HRT Motion

---

[33] The Debtors' proposed public health initiatives (the "Public Health Initiative") are described in detail in the *Debtors' Informational Brief*, dated September 16, 2019 [ECF No. 17].

was not a referendum on the Public Health Initiative.  In light of these concessions, the Committee determined not to object to the HRT Motion and instead filed the *Statement of the Official Committee of Unsecured Creditors with Respect to the Amended Motion of Debtors for Authorization to Enter into Funding Agreement*, dated June 16, 2020 [ECF No. 1278] to make its concerns known.

93.     In addition, this category includes time spent by Akin Gump professionals in connection with the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Clarifying the Debtors' Obligations with Regard to Political Contributions*, dated July 10, 2020 [ECF No. 1373] (the "Political Contributions Motion").  During the Compensation Period, the Committee became aware of certain contributions made by the Debtors to certain political organizations after the Petition Date.  Upon learning of these political contributions, the Committee expressed concerns about the appropriateness of the contributions and potential harmful effects on the Chapter 11 Cases.  Shortly thereafter, the Committee brought the contributions to the attention of the Debtors, the CAHC and the Non-Consenting States and reached an agreement whereby certain beneficiaries of the Debtors' political contribution would return the funds to the Debtors' estates.  While the Committee felt strongly about the contents of the Political Contributions Motion, Akin Gump and the Committee were cognizant of the dollar amount at issue and thus Akin Gump determined to take a voluntary reduction of all fees incurred in connection with the Political Contribution Motion.  Akin Gump disclosed this voluntary reduction in its Eighth Monthly Fee Statement and the Second Interim Fee Application.

94.     This category also includes time spent in connection with adverse event reporting related to the Debtors' products.  Among other things, Akin Gump professionals communicated with the Debtors' advisors regarding the Debtors' obligations under FDA regulations to report

"serious and unexpected" events arising from use of the Debtors' products, including protocols for communicating with claimants that are represented by counsel in the Chapter 11 Cases and unrepresented individuals.

95.    Finally, this category includes time spent by Akin Gump professionals in connection with the efforts of former United States Secretary of Agriculture Tom Vilsack, who was appointed by the Court as a monitor to oversee the Debtors' compliance with their obligations under the voluntary self-injunction. *See Seventh Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated March 4, 2020 [Adv. Pro. No. 19-08289, ECF No. 143] at 7 and App'x 1.  During the Compensation Period, Akin Gump professionals, in coordination with the Committee's advisors, reviewed the findings detailed in the *Initial Monitor Report*, dated May 20, 2020 [ECF No. 1175] (the "Monitor's Report"), and discussed the Monitor's Report in detail with the Committee and Secretary Vilsack to address the Committee's concerns.

## S.    Intellectual Property (Task Code 32)

| Total Hours | Fees |
|:---:|:---:|
| 260.50 | $290,143.00 |

96.    This task code includes time spent by Akin Gump professionals and paraprofessionals in connection with analyzing the Debtors' patents and patent applications, intellectual property license and ancillary agreements, intercompany intellectual property arrangements and related intellectual property issues, and supporting work streams in other categories that involved the Debtors' intellectual property.  Specifically, during the Compensation Period, Akin Gump professionals performed diligence and investigated numerous intellectual property issues, including, among other things:  (i) issues related to patent history, prosecution, and expiration; (ii) product exclusivity and expiration of patent coverage for the Debtors' products;

(iii) ongoing, former and potential patent litigation (in particular patent infringement litigation); and (iv) patent licenses covering the Debtors' past and current product offerings. As the proposed Settlement Framework contemplates ongoing operations based on future expected revenues derived from current and pipeline products, the Committee's intellectual property analysis has encompassed ongoing discussions with the Debtors and their advisors regarding the Debtors' businesses and operations, analyses of the proposed value of the Debtors' and the IACs' patents and the Debtors' patent portfolio. In addition, Akin Gump professionals analyzed the Debtors' license agreements with the IACs, as well as the IACs' intellectual property and licenses, in connection with the Committee's continued evaluation of potential estate causes of action and the Settlement Framework.

**T.     Sackler Rule 2004 Discovery (Task Code 33)**

| Total Hours | Fees |
| --- | --- |
| 1,708.20 | $1,725,050.50 |

97.     This category includes time spent by Akin Gump professionals obtaining compulsory discovery from certain parties pursuant to certain discovery orders pursuant to Bankruptcy Rule 2004. *See Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties*, dated March 27, 2020 [ECF No. 992]; *Order Pursuant to Federal Rules of Bankruptcy 2004 and 9016 Authorizing Examinations of and Document Production by Third Parties*, dated July 6, 2020 [ECF No. 1340]; *Order Pursuant to Federal Rules of Bankruptcy 2004 and 9016 Authorizing Examinations of Third Parties*, dated August 26, 2020 [ECF No. 1622] (collectively, the "Rule 2004 Orders"). As noted, the Committee determined that it was necessary for its investigation of potential estate causes of action against the Debtors' beneficial owners and others to seek compulsory discovery from certain parties, and thus sought and obtained authorization under the Rule 2004 Orders. This category includes time

spent by Akin Gump professionals related to drafting document request subpoenas to be served pursuant to the Rule 2004 Orders, meeting and conferring with counsel regarding such subpoenas, drafting and responding to correspondence concerning such subpoenas and negotiating and drafting stipulations to govern the production of documents and privilege logs called for by the subpoenas. *See, e.g., Stipulation and Agreed Order Among the Official Committee and the Mortimer Side Covered Parties Regarding Discovery Deadlines In The Chapter 11 Cases*, dated as of July 7, 2020 [ECF No. 1347]; *Stipulation and Agreed Order Among the Official Committee and the Raymond Side Covered Parties Regarding Discovery Deadlines In The Chapter 11 Cases*, dated as of July 7, 2020 [ECF No. 1348]; *Stipulation and Agreed Order Between the Official Committee and Beth Cohen as Trustee For Certain Covered Sackler Person Trusts Regarding Discovery Deadlines In The Chapter 11 Cases*, dated as of July 7, 2020 [ECF No. 1345]; *Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines In The Chapter 11 Cases*, dated as of July 7, 2020 [ECF No. 1346]; *Second Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines In The Chapter 11 Cases*, dated as of July 24, 2020 [ECF No. 1518].

## ACTUAL AND NECESSARY DISBURSEMENTS

98.    Akin Gump seeks allowance of reimbursement in the amount of $1,358,212.79 for expenses incurred during the Compensation Period in the course of providing professional services to the Committee.  Akin Gump's disbursement policies pass through all out of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example, as it relates to computerized research, Akin Gump believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain.  Other reimbursable expenses (whether the service is performed by Akin Gump in-house or through a

third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries,

court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

99.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
> > (A) the time spent on such services;
> >
> > (B) the rates charged for such services;
> >
> > (C) whether the services were necessary to the administration of,
> > or beneficial at the time at which the service was rendered
> > toward the completion of, a case under this title;
> >
> > (D) whether the services were performed within a reasonable
> > amount of time commensurate with the complexity,
> > importance, and nature of the problem, issue, or task
> > addressed; and
> >
> > (E) with respect to a professional person, whether the person is
> > board certified or otherwise has demonstrated skill and
> > experience in the bankruptcy field; and
> >
> > (F) whether the compensation is reasonably based on the
> > customary compensation charged by comparably skilled
> > practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

100.     The clear congressional intent and policy expressed in Bankruptcy Code section

330 is to provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R.

13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court,

establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal

specialists."); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994)

("Congress rather clearly intended to provide sufficient economic incentive to lure competent

bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotation marks omitted).

101.    In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A*., 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298–99 (5th Cir. 1977) have been adopted by most courts.[34]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212–13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered in determining a reasonable allowance of compensation").

102.    Akin Gump respectfully submits that a consideration of these factors should result in the Court's allowance of the full compensation sought in this Application.

---

[34] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson*, with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

a. <u>Time and Labor Required</u>.  Akin Gump billed a total of 23,179.3 hours of professional services and 2,623.6 hours of paraprofessional and other non-legal services during the Compensation Period.  As evidenced by this Application, Akin Gump professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period.  This is especially clear when considering the nature and complexity of the issues that arose in the Chapter 11 Cases during the Compensation Period.  In particular, the Compensation Period involved many material motions and issues that required a favorable resolution for the Debtors' estates and unsecured creditors, including, among other things, the Second PI Appeal, the Second PI Extension Motion, the Allocation Mediation, the Class Claim Motions, the Rhodes Motion, the Privileges Motions, the Bonuses Motion and various matters related to discovery of the Debtors, the Sacklers, the IACs and other parties in connection with the Committee's analysis of estate causes of action and the Settlement Framework.  Akin Gump's representation of the Committee has required it to balance the need to provide quality services with the need to act quickly and represent the Committee in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant—and often urgent—legal and business issues raised and the numerous pleadings filed in the Chapter 11 Cases.

b. <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, corporate, tax, trusts and estates, insurance and other issues.  As further described herein, Akin Gump's teams of skilled practitioners assisted the Committee in analyzing, among other things, novel and/or difficult questions in connection with, among other things, the Second PI Appeal, the Second PI Extension Motion, the HRT Motion, the Lift-Stay Motions, the Class Claim Motions, the Bonuses Motion, potential estate claims, insurance issues and various issues relating to an eventual chapter 11 plan.

c. <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of complex issues has contributed to the administration of the Chapter 11 Cases and benefited the Debtors and the Committee.  Due to the nature and complexity of the legal issues presented by the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax, labor and corporate transaction matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

55

d. <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e. <u>Customary Fee</u>. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f. <u>Whether the Fee Is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Committee in the Chapter 11 Cases.

g. <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines. For example, Akin Gump and the Committee's other advisors were faced with limited time in which to formulate an approach to numerous key case issues, including, among others, various discovery matters and the Privileges Motions, the Class Claim Motions and the Bonuses Motion, while simultaneously pursuing consensual modifications to or resolutions of such matters. The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h. <u>Amount Involved and Results Obtained</u>. Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors. During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in preserving potential sources of recovery for the benefit of unsecured creditors. In

56

particular, Akin Gump's efforts in connection with, among other things, the Class Claim Motions and the Bonuses Motion have been instrumental in preserving value for the benefit of all creditor constituencies. Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.  <u>Experience, Reputation and Ability of Attorneys</u>. Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code. During the Compensation Period, Akin Gump solicited the skill and expertise of its professionals and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines. Akin Gump professionals have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Sears Holdings Corp., In re Insys Therapeutics, Inc., In re PG&E Corp., In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc., In re Chassix Holdings, Inc., In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC, In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC, In re Eastman Kodak Company*, *In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC, In re Overseas Shipholding Group, Inc., In re QCE Finance LLC, In re Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.* and many others. Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.  <u>"Undesirability" of the Cases</u>. This factor is not applicable to the Chapter 11 Cases.

k.  <u>Nature and Length of Professional Relationship</u>. Akin Gump has been rendering professional services to the Committee since it was selected as counsel to the Committee on September 26, 2019.

103. For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Committee and consistently performed in a timely manner. The compensation sought in this Application is reasonable in light of the value of such services to the Committee and

all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

104.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

### **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

105.    The following is provided in response to the request for additional information set forth in ¶ C.5 of the U.S. Trustee Guidelines.

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:    No.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    Not applicable.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:      Yes.  During the Compensation Period, 166.1 hours and $126,235.50 in fees were
               spent reviewing time records for compliance with the Fee Guidelines.

**Question**:      Does this fee application include time or fees for reviewing time records to redact
               any privileged or other confidential information? If so, please quantify by hours
               and fees.

Response:      See above.

**Question**:      If the fee application includes any rate increases since retention:  (i) Did your client
               review and approve those rate increases in advance?  (ii) Did your client agree when
               retaining the law firm to accept all future rate increases? If not, did you inform your
               client that they need not agree to modified rates or terms in order to have you
               continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:      Akin Gump disclosed to the Committee the hourly rates charged at the time of its
               retention and the hourly rates to be charged beginning in January 2020 in the Akin
               Retention Application, which the Committee agreed to.

## RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the
Compensation Period but were not processed prior to the preparation of the Application, Akin
Gump reserves the right to request additional compensation for such services and reimbursement
of such expenses in a future application.

*[Remainder of Page Left Blank Intentionally]*

59

## **CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $22,112,857.50 and expense reimbursement in the amount of $1,358,212.79; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
       November 16, 2020

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Arik Preis*
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al.*

# EXHIBIT A

## CERTIFICATION OF ARIK PREIS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE
THIRD INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF JUNE 1, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020**

I, Arik Preis, hereby certify that:

1.      I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of the above captioned Debtors.  Akin Gump is counsel to Official Committee of Unsecured Creditors of Purdue Pharma, L.P. and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.
[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

a.     I have read the Application;

b.     to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

c.     the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

d.     in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.     In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.     In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Committee are each being provided with a copy of the Application.

Dated: New York, New York           By: */s/ Arik Preis*_____
       November 16, 2020                 Arik Preis

# EXHIBIT B

## CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE

| Blended Hourly Rates | | |
|---|---|---|
| Category of Timekeeper | Billed by NY Office for Preceding Year[1] | Billed in this Application |
| Partner | $1,396.55 | $1,290.58 |
| Senior Counsel & Counsel | $993.98 | $946.95 |
| Associate | $681.40 | $656.10 |
| Paraprofessional | $340.08 | $374.04 |
| **All Timekeepers Aggregated** | **$911.57** | **$856.99** |

1. Consistent with U.S. Trustee Guidelines, this column discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (*i.e.*, the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group. This data is based on information from a rolling 12-month period ending September 30, 2020.

## EXHIBIT C

## SUMMARY OF COMPENSATION BY TIMEKEEPER

| Partner | Department | Year of Admission | Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,225.00 | 899.3 | $1,101,642.50 |
| Paul Butler | Litigation | 1991 | $1,175.00 | 59.9 | $70,382.50 |
| Nathan Brown | Health | 2000 | $1,135.00 | 5.8 | $6,583.00 |
| Julius Chen | Litigation | 2010 | $1,015.00 | 69.7 | $70,745.50 |
| Ashley Crawford | Litigation | 2003 | $1,075.00 | 572.9 | $615,867.50 |
| Olivier De Moor | Tax | 2009 | $1,175.00 | 23.2 | $27,260.00 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,595.00 | 5.5 | $8,772.50 |
| Shawn Hanson | Litigation | 1983 | $1,135.00 | 42.8 | $48,578.00 |
| Mitchell Hurley | Litigation | 1997 | $1,595.00 | 1056.2 | $1,684,639.00 |
| Howard Jacobson | Tax | 1979 | $1,240.00 | 37.7 | $46,748.00 |
| Stephen Kho | International Trade | 1998 | $1,135.00 | 118.5 | $134,497.50 |
| Jeffrey Kochian | Corporate | 2000 | $1,360.00 | 191.3 | $260,168.00 |
| Eli Miller | Corporate | 2009 | $1,075.00 | 85.6 | $92,020.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,595.00 | 617.9 | $985,550.50 |
| Abid Qureshi | Financial Restructuring | 1995 | $1,595.00 | 1.6 | $2,552.00 |
| Steven Ross | Litigation | 1976 | $1,300.00 | 5.3 | $6,890.00 |
| Corey Roush | Litigation | 1997 | $1,135.00 | 42.3 | $48,010.50 |
| Robert Salcido | Health | 1989 | $1,155.00 | 78.4 | $90,552.00 |
| Elizabeth Scott | Litigation | 2007 | $1,075.00 | 714.4 | $767,980.00 |
| Seth Slotkin | Tax | 1996 | $1,195.00 | 24.4 | $29,158.00 |
| Joseph Sorkin | Litigation | 2008 | $1,350.00 | 279.6 | $377,460.00 |
| James Tysee | Litigation | 2008 | $1,075.00 | 43.6 | $46,870.00 |
| David Vondle | Intellectual Property | 2002 | $1,115.00 | 291.1 | $324,576.50 |
| Alan Yanovich | International Trade | 1997 | $1,035.00 | 9.5 | $9,832.50 |
| Jacqueline Yecies | Litigation | 2009 | $1,115.00 | 271.2 | $302,388.00 |
| **Partner Total:** | | | | **5,547.70** | **$7,159,724.00** |

| Senior Counsel & Counsel | Department | Year of Admission | 2020 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Christin Carey | Public Law & Policy | 2012 | $885.00 | 187.8 | $166,203.00 |
| Sharon Davidov | Tax | 2013 | $1,010.00 | 191.5 | $193,415.00 |
| Eugene Elder | Health | 1990 | $975.00 | 283.5 | $276,412.50 |
| Melissa Gibson | Intellectual Property | 2010 | $950.00 | 178.8 | $169,860.00 |
| Daniel Graver | Health | 2014 | $885.00 | 41 | $36,285.00 |

| Elizabeth Harris | Tax | 1987 | $1,065.00 | 379 | $403,635.00 |
|---|---|---|---|---|---|
| Matthew Hartman | Intellectual Property | 2010 | $930.00 | 151.4 | $140,802.00 |
| Taylor Lea Jones | Health | 2007 | $965.00 | 23.7 | $22,870.50 |
| Jeffrey Kane | Litigation | 2015 | $850.00 | 578.7 | $491,895.00 |
| Kristi Kirksey | Tax | 2014 | $985.00 | 248.9 | $245,166.50 |
| Erika Leon | Corporate | 2013 | $985.00 | 54 | $53,190.00 |
| Howard Leventhal | Tax | 1976 | $1,170.00 | 5.4 | $6,318.00 |
| Edan Lisovicz | Financial Restructuring | 2013 | $975.00 | 456.2 | $444,795.00 |
| Matthew Lloyd | Litigation | 2012 | $910.00 | 489.7 | $445,627.00 |
| Daniel Lund | International Trade | 2014 | $925.00 | 11.5 | $10,637.50 |
| Clayton Matheson | Litigation | 2010 | $950.00 | 52.9 | $50,255.00 |
| Brennan Meier | Litigation | 2012 | $910.00 | 413.8 | $376,558.00 |
| John Murphy | Litigation | 2011 | $1,025.00 | 33.9 | $34,747.50 |
| Erin Parlar | Litigation | 2015 | $925.00 | 661.9 | $612,257.50 |
| Heather Peckham | Litigation | 2000 | $935.00 | 412.9 | $386,061.50 |
| Nicholas Petree | Litigation | 2012 | $910.00 | 196.9 | $179,179.00 |
| Katherine Porter | Litigation | 2011 | $1,025.00 | 1030.2 | $1,055,955.00 |
| Ali Rabbani | Litigation | 2007 | $965.00 | 80.2 | $77,393.00 |
| Jillie Richards | Litigation | 2007 | $850.00 | 752.3 | $639,455.00 |
| Sophie Shih-Yu Chu | Corporate | 2007 | $1,025.00 | 533.9 | $547,247.50 |
| Dustin Stark | Labor | 2013 | $985.00 | 20.9 | $20,586.50 |
| M. Todd Tuten | Public Law & Policy | N/A | $1,035.00 | 7.4 | $7,659.00 |
| Jonathan Underwood | Intellectual Property | 2014 | $850.00 | 115.7 | $98,345.00 |
| Molly Whitman | Litigation | 2013 | $885.00 | 152.1 | $134,608.50 |
| Richard R. Williams, Jr. | Litigation | 2014 | $960.00 | 323.3 | $310,368.00 |
| Dennis Windscheffel | Litigation | 2004 | $965.00 | 195.1 | $188,271.50 |
| **Senior Counsel & Counsel Total:** | | | | **8,264.50** | **$7,826,059.50** |

| **Associate** | **Department** | **Year of Admission** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|
| Tyler Andrews | Corporate | 2019 | $535.00 | 11.1 | $5,938.50 |
| Sudhana Bajracharya | Health | 2018 | $650.00 | 88.8 | $57,720.00 |
| Brooks Barker | Financial Restructuring | 2018 | $775.00 | 398 | $308,450.00 |
| Rachel Bayefsky | Litigation | 2016 | $820.00 | 89.4 | $73,308.00 |
| Megi Belegu | Litigation | Not yet admitted | $565.00 | 366 | $206,790.00 |
| Patrick Benedetto | Corporate | 2019 | $535.00 | 5.4 | $2,889.00 |
| Nafisa Bringe | Litigation | 2016 | $735.00 | 60.2 | $44,247.00 |
| Marc Caplan | Tax | 2019 | $675.00 | 182.8 | $123,390.00 |
| Jess Coleman | Financial Restructuring | Not yet admitted | $615.00 | 339.5 | $208,792.50 |

| Shane Copelin | Corporate | 2018 | $575.00 | 138.3 | $79,522.50 |
|---|---|---|---|---|---|
| Richard D'Amato | Litigation | 2017 | $810.00 | 226.7 | $183,627.00 |
| Travis Earp | Corporate | 2018 | $575.00 | 129.3 | $74,347.50 |
| Alyx Eva | Litigation | 2019 | $535.00 | 44.5 | $23,807.50 |
| Sanzana Faroque | Corporate | 2020 | $565.00 | 232.8 | $131,532.00 |
| Alexander France | Corporate | 2019 | $535.00 | 46.5 | $24,877.50 |
| Jason Gangwer | Litigation | 2017 | $650.00 | 272.2 | $176,930.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $615.00 | 160.4 | $98,646.00 |
| Lisa Garrett | Corporate | 2017 | $650.00 | 126.5 | $82,225.00 |
| Patrick Glackin | Litigation | 2019 | $650.00 | 450.4 | $292,760.00 |
| Christina Hightower | Litigation | 2017 | $650.00 | 189.2 | $122,980.00 |
| Anthony Hilbert | Corporate | 2019 | $535.00 | 40.2 | $21,507.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $535.00 | 417.9 | $223,576.50 |
| Jay Jamooji | Litigation | 2019 | $565.00 | 60.2 | $34,013.00 |
| Srishti Kalro | Litigation | 2016 | $810.00 | 146.9 | $118,989.00 |
| Jillian Kulikowski | Litigation | 2019 | $650.00 | 16.5 | $10,725.00 |
| Rachel Kurzweil | Health | 2017 | $735.00 | 44.2 | $32,487.00 |
| Caitlin Locurto | Corporate | 2017 | $810.00 | 27.1 | $21,951.00 |
| Nicholas Lombardi | Litigation | 2018 | $735.00 | 7.5 | $5,512.50 |
| Amanda Lowe | Litigation | 2018 | $650.00 | 89.4 | $58,110.00 |
| Shanna Miles | Litigation | 2017 | $810.00 | 78.6 | $63,666.00 |
| McKenzie Miller | Litigation | Not yet admitted | $535.00 | 722.2 | $386,377.00 |
| Mouna Moussaoui | Litigation | 2018 | $650.00 | 190.8 | $124,020.00 |
| Rebecca Ney | Corporate | 2019 | $650.00 | 66.7 | $43,355.00 |
| Oluwaremilekun Ojurongbe | Litigation | Not yet admitted | $535.00 | 76.8 | $41,088.00 |
| Paul Park | Corporate | 2016 | $820.00 | 67.6 | $55,432.00 |
| Jennifer Poon | Litigation | 2016 | $810.00 | 545.7 | $442,017.00 |
| Peretz Riesenberg | Tax | 2016 | $920.00 | 42.1 | $38,732.00 |
| Julia Rinker | Corporate | 2020 | $565.00 | 422.6 | $238,769.00 |
| Margo Rusconi | Litigation | 2019 | $535.00 | 65.9 | $35,256.50 |
| Sina Safvati | Litigation | 2016 | $735.00 | 52.1 | $38,293.50 |
| James Salwen | Financial Restructuring | 2017 | $775.00 | 665.9 | $516,072.50 |
| Sangita Sahasranaman | Tax | Not yet admitted | $675.00 | 30.4 | $20,520.00 |
| Alexander Schnapp | Corporate | 2020 | $565.00 | 68.1 | $38,476.50 |
| Anthony Sierra | Intellectual Property | 2019 | $535.00 | 433.7 | $232,029.50 |
| Jason Sison | Corporate | 2016 | $810.00 | 419.7 | $339,957.00 |
| Joshua Tate | Litigation | 2019 | $535.00 | 8.3 | $4,440.50 |
| Allison Thornton | Litigation | 2018 | $650.00 | 38.9 | $25,285.00 |
| Kaitlyn Tongalson | Litigation | 2017 | $810.00 | 250.3 | $202,743.00 |

| Izabelle Tully | Litigation | Not yet admitted | $565.00 | 677.6 | $382,844.00 |
|---|---|---|---|---|---|
| Matthew Turner | Corporate | 2015 | $820.00 | 27.7 | $22,714.00 |
| Laura Vaughn | Labor | 2019 | $535.00 | 7.5 | $4,012.50 |
| **Associate Total:** | | | | **9,367.10** | **$6,145,751.50** |

| **Staff Attorneys & Paraprofessionals** | **Department** | **Year of Admission** | **2020 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|
| Frank Abduhalikov | International Trade | N/A | $330.00 | $14.70 | $4,851.00 |
| Ganna Anisimova | Law Clerk, Litigation | N/A | $340.00 | $406.60 | $138,244.00 |
| Marisa Browndorf | Paralegal, Intellectual Property | N/A | $330.00 | $101.90 | $33,627.00 |
| Frank Castro | Paralegal, Litigation | N/A | $350.00 | $138.90 | $48,615.00 |
| Daniel Chau | EDiscovery | N/A | $370.00 | $366.50 | $135,605.00 |
| Kimberly La Croix | EDiscovery | N/A | $370.00 | $185.80 | $68,746.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $330.00 | $282.60 | $93,258.00 |
| Cheryle Edmonds | Paralegal, Litigation | N/A | $350.00 | $46.30 | $16,205.00 |
| Rachel Fizette | Paralegal, Financial Restructuring | N/A | $230.00 | $5.50 | $1,265.00 |
| Mitchell Garrett | Practice Attorney, Litigation | 2016 | $380.00 | $20.80 | $7,904.00 |
| Helen Hanks | Paralegal, Tax | N/A | $330.00 | $33.70 | $11,121.00 |
| Adria Hicks | Paralegal, Litigation | N/A | $350.00 | $8.30 | $2,905.00 |
| Julie Hunter | EDiscovery | N/A | $370.00 | $59.10 | $21,867.00 |
| Brenda Kemp | Paralegal, Financial Restructuring | N/A | $370.00 | $15.60 | $5,772.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $415.00 | $56.40 | $23,406.00 |
| Amy Laaraj | Paralegal, Litigation | N/A | $350.00 | $377.10 | $131,985.00 |
| Melanie Langford | Paralegal, Intellectual Property | N/A | $260.00 | $25.40 | $6,604.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | $515.00 | $328.30 | $169,074.50 |
| Cassandra Padget | Law Clerk, International Trade | N/A | $420.00 | $27.80 | $11,676.00 |
| Carrie Varner | Paralegal, Litigation | N/A | $350.00 | $27.00 | $9,450.00 |

| | | | | | |
|---|---|---|---|---|---|
| Karen Woodhouse | Practice Attorney, Litigation | N/A | $400.00 | $66.10 | $26,440.00 |
| Melodie Young | Practice Attorney, Litigation | 2003 | $435.00 | $29.20 | $12,702.00 |
| **Staff Attorneys and Paraprofessional Total:** | | | | **2623.60** | **$981,322.50** |
| **Total Hours / Fees Incurred:** | | | | **25,802.90** | **$22,112,857.50** |

## EXHIBIT D

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 50–100 | $38,750–$77,500 | 37.20 | $27,604.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 400–600 | $310,000–$465,000 | 311.70 | $246,668.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 50–75 | $48,750–$73,125 | 61.70 | $50,516.50 |
| 6 | Retention of Professionals | 75–150 | $67,500–$135,000 | 99.30 | $72,602.50 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 250–500 | $300,000–$600,000 | 379.10 | $452,753.50 |
| 8 | Hearings and Court Matters/Court Preparation | 200–400 | $240,000–$480,000 | 187.00 | $231,058.00 |
| 12 | General Claims Analysis/Claims Objections | 1000–2000 | $775,000–$1,550,000 | 1176.20 | $1,326,235.50 |
| 13 | Analysis of Pre-Petition Transactions | 17500–25000 | $15,750,000–$22,500,000 | 19642.90 | $15,922,977.50 |
| 14 | Insurance Issues | 250–500 | $225,000–$450,000 | 220.20 | $229,353.00 |
| 16 | Automatic Stay Issues | 50–100 | $40,000–$80,000 | 45.90 | $47,002.00 |
| 17 | Adversary Proceedings | 200–400 | $180,000–$360,000 | 190.40 | $180,192.00 |
| 18 | Tax Issues | 400–600 | $360,000–$540,000 | 449.00 | $387,620.50 |
| 19 | Labor Issues/Employee Benefits | 200–400 | $180,000–$360,000 | 240.70 | $250,510.50 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 250–400 | $225,000–$360,000 | 247.20 | $185,221.50 |
| 21 | Exclusivity | 5–10 | $4,500–$9,000 | 8.40 | $7,348.00 |
| 22 | Disclosure Statement/ Solicitation/Plan/Confirmation | 200–300 | $180,000–$270,000 | 215.90 | $174,542.50 |
| 23 | Asset Dispositions/363 Asset Sales/Bidding Procedures | 0-25 | $0–$22,500 | 6.30 | $8,276.50 |
| 28 | General Corporate Matters | 0–25 | $9,000–$22,500 | 16.50 | $13,626.50 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | 0-10 | $0–$9,000 | 0.40 | $638.00 |
| 31 | Business Operations | 250–500 | $225,000–$450,000 | 298.20 | $282,917.50 |
| 32 | Intellectual Property | 250–500 | $225,000–$450,000 | 260.50 | $290,143.00 |
| 33 | Sackler Rule 2004 Discovery | 1500–2000 | $1,575,000–$2,100,000 | 1708.20 | $1,725,050.50 |
| **TOTAL** | | 23,080–34,570 | $20,949,500–$31,363,625 | 25,802.90 | $22,112,857.50 |

**<u>EXHIBIT E</u>**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $16,208.65 |
| Color Copy | $137.00 |
| Computerized Legal Research - Courtlink - In Contract 50% | $1,116.32 |
| Computerized Legal Research - Other | $3,470.56 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $87,437.81 |
| Computerized Legal Research - Westlaw - Out of Contract | $264.36 |
| Corporate Service Fees | $35.54 |
| Courier Service/Messenger Service - Off Site | $245.06 |
| Departmental Special Supplies | $10,608.48 |
| Document Retrieval | $344.64 |
| Dues - Miscellaneous Dues | $250.34 |
| Employee Cash Advance | $65.04 |
| Filing Fees | $1,000.00 |
| Local Transportation - Overtime | $499.18 |
| Meals - Business | $860.18 |
| Meals - Overtime | $50.00 |
| Miscellaneous | $10.72 |
| Overtime - Admin Staff | $123.48 |
| Postage | $17.95 |
| Professional Fees - Legal | $1,229,677.05 |
| Professional Fees – Outside Counsel | $2,146.72 |
| Research | $181.81 |
| Telephone - Long Distance | $1,470.00 |
| Telephone – Cell/Pagers | $354.87 |
| Transcripts | $694.80 |
| Travel - Ground Transportation | $920.23 |
| Travel - Parking | $22.00 |
| **Total Expenses Requested:** | **$1,358,212.79** |

## __EXHIBIT F__

## STAFFING PLAN

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 25 | $1,250.00 |
| Senior Counsel and Counsel | 30 | $975.00 |
| Associate | 50 | $675.00 |
| Staff Attorneys and Paraprofessionals | 25 | $350.00 |