# **Exhibit A**

**Certification of Compliance with Fee Guidelines**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### CERTIFICATION OF SALLY WOODHOUSE IN SUPPORT OF SECOND INTERIM APPLICATION OF CORNERSTONE RESEARCH FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS CONSULTANT TO THE DEBTORS FOR THE PERIOD FROM <u>JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020</u>

I, Sally Woodhouse, hereby certify that:

1.    I am a senior vice president at Cornerstone Research, located at 699 Boylston Street, Boston, Massachusetts. I am familiar with the work performed on behalf of the above-captioned debtors and debtors in possession ("Debtors") by Cornerstone Research.

2.    I have reviewed the Second Interim Application of Cornerstone Research for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Consultant to the Debtors for the Period from June 1, 2020 Through September 30, 2020 (the "Application") to certify to certain matters addressed in the (i) Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals entered on November 21, 2019 [ECF No. 529] (the "Interim Compensation Order"), (ii) Rule 2016-1 of the Local Rules of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Bankruptcy Procedure, incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases* [General Order M-447], among other guidelines (the "**Local Guidelines**"), and (iii) The United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases effective as of November 1, 2013 (the "**U.S. Trustee Guidelines,**" and together with Local Guidelines, the "**Fee Guidelines**").[2] The Application covers the period June 1, 2020 through September 30, 2020 (the "**Fee Period**").

3.  To the best of my knowledge, information and belief, the statements contained in the foregoing Application are true and accurate in all material respects and comply with the Fee Guidelines in material part. Cornerstone Research responds to the questions identified in the U.S. Trustee Guidelines as follows:

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Interim Compensation Order.

Question 1: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees, or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

> Answer: Cornerstone Research has not agreed to negotiated discounts off of its standard rates.

Question 2: If the fees sought in the Application as compared to the fees budgeted for the time period covered by the Application are higher by 10% or more, did you discuss the reasons for the variation with the client?

> Answer: Cornerstone Research has provided the client with the actual amount of fees incurred on a monthly basis and engages in ongoing discussions with the client regarding fees and expenses generally, but did not prepare an itemized budget for the Fee Period.

Question 3: Have any of the professionals included in the Application varied their hourly rate based on geographic location of the bankruptcy case?

> Answer: As disclosed in the Retention Application, no.

Question 4: Does the Application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?

> Answer: The Application includes time and fees related to reviewing or revising time records or preparing, reviewing, or revising invoices in connection with the preparation of five monthly fee statements and an interim application relating to period January-May 2020, as well as three monthly fee statements relating to the Fee Period covered by the Application. Cornerstone Research is seeking compensation for 54.30 hours and $30,434.00 in fees related to reviewing and revising time records with respect to the preparation of such fee applications.

Question 5: Does the Application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify hours and fees.

> Answer: The Application includes time and fees related to reviewing time records to redact any privileged or other confidential information. Such charges are included in the time charges set forth in the response to question 4 and are not separately calculated.

Question 6: Did the Application include any rate increases since retention in these cases:

>Answer: The Application includes a single customary annual rate increase for those timekeepers who were promoted as disclosed in a supplemental declaration filed on the Court docket at ECF No. 1603.

Question 7: Did the client agree when retaining Cornerstone Research to accept all future rate increases? If not, did Cornerstone Research inform the client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

>Answer: The client was informed regarding Cornerstone Research's rates and future rate increases as part of its approval of Cornerstone Research's retention application.

Dated:   November 16, 2020
         Boston, Massachusetts

                                         By:   /s/ Sally Woodhouse
                                                Sally Woodhouse
                                                Vice President
                                                CORNERSTONE RESEARCH