Hearing Date and Time: December 15, 2020, at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: December 11, 2020, at 4:00 p.m. (prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF HEARING ON MOTION OF DEBTORS FOR ENTRY OF A THIRD
ORDER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**PLEASE TAKE NOTICE** that on December 1, 2020, the above-captioned debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") filed the *Motion of Debtors for Entry of a Third Order Extending the Exclusive Periods Within Which to File a*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Chapter 11 Plan and Solicit Acceptances Thereof* (the "**Motion**"). A hearing on the Motion will be held on **December 15, 2020** at **10:00 a.m.** (prevailing Eastern Time) (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted telephonically.[2] Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[3] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest,

---

[2] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operations-under-exigent-circumstances-created-covid-19.

[3] The Bankruptcy Court's procedures for telephonic appearances are available at: http://www.nysb.uscourts.gov/telephonic-appearances-white-plains.

2

on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498], so as to be filed and received no later than **December 11, 2020** at **4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default; *provided* that objecting parties shall attend the Hearing telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  December 1, 2020
       New York, New York

                            DAVIS POLK & WARDWELL LLP

By:  */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF DEBTORS FOR ENTRY OF A THIRD ORDER EXTENDING
THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") hereby file this *Motion of Debtors for Entry of a Third Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* (this "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Relief Requested**

1. By this Motion, and pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended or modified, the "**Bankruptcy Code**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), extending the Debtors' exclusive periods to (a) file (the "**Exclusive Filing Period**") a chapter 11 plan of reorganization (the "**Chapter 11 Plan**") by sixty-seven (67) days through and including February 15, 2021 and (b) solicit votes thereon (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**") by ninety-eight (98) days through and including May 17, 2021.[2] The Debtors request this extension to, among other things, complete the ongoing mediation of two remaining key issues, the resolution of which are critical to the formulation of a plan: (1) the resolution of potential claims or causes of action that may be asserted by the Debtors and others against the Sackler family and related parties, and (2) the precise contours of the structure and governance of the successor entity to which the Debtors' assets will be transferred upon effectiveness of the Chapter 11 Plan. The Debtors hope and expect that they will be able to file a Chapter 11 Plan in advance of the requested extension of the Exclusive Filing Period, which is intentionally 30 days shorter than the time period available under 11 U.S.C. § 1121(d).

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a

---

[2] Section 1121(d)(2)(B) of the Bankruptcy Code provides that the Exclusive Solicitation Period may not be extended beyond 20 months after the Petition Date. The 20-month period is technically set to expire on Saturday, May 15, 2021. However, pursuant to Bankruptcy Rule 9006(a)(1)(C), because this period is scheduled to end of a weekend, it is automatically extended "until the end of the next day that is not a Saturday, Sunday, or legal holiday" – i.e., Monday, May 17, 2021.

2

core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

3. The legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006.

4. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## General Background

5. On September 15, 2019 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Cases**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these Cases.

6. Information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [ECF No. 17].

7. The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court on September 18, 2019 in each of the Cases.

3

8. On January 10, 2020, the Debtors filed the *Motion of Debtors for Entry of an Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 734] (the "**First Extension Motion**"). On January 28, 2020, the Court entered the *Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 782] (the "**First Extension Order**") granting the requested 180-day extension and extending the Exclusive Filing Period and the Exclusive Solicitation Period through and including Monday, July 13, 2020 and Wednesday, September 9, 2020, respectively.

9. On July 7, 2020, the Debtors filed the *Motion of Debtors for Entry of a Second Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 1365] (the "**Second Extension Motion**"). On July 24, 2020, the Court entered the *Second Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 1517] (the "**Second Extension Order**") granting the requested 150-day extension and extending the Exclusive Filing Period and the Exclusive Solicitation Period through and including Thursday, December 10, 2020 and Monday, February 8, 2021, respectively.

**Preliminary Statement**

10. This is the third, and hopefully final, motion to extend the Debtors' Exclusive Periods in these cases. The Debtors' first sought a 180-day extension, which was granted by the Court on January 28, 2020. In the Second Exclusivity Extension Motion, the Debtors intentionally requested a shorter extension of 150 days, to December 10, 2020.

11. At the hearing to consider the Second Extension Motion, the Debtors expressed their belief that filing a Chapter 11 Plan "in October or early November seems like the right

4

target, and hopefully achievable." Hr'g Tr. 31:24-25 (Jul. 23, 2020). That view was predicated on, among other things, a hope that the parties would enter into "end-stage negotiations on a global deal" well before November. *Id*. at 32:18-33:1. By contrast, other parties expressed the view that the Debtors' views on the case timeline were "overly optimistic" and sought a slower track for discovery and negotiations. *Id*. at 49:2-6. While the first phase of mediation was ultimately a resounding success, achieving that result took significantly longer than anticipated despite the best efforts of the Debtors and other parties to expedite the process at every opportunity.

12.   Material further progress toward filing a Chapter 11 Plan has been made over the last 150 days. Today, however, is the deadline for the Debtors to file this Motion to be heard at the scheduled December 15, 2020 omnibus hearing without a request for shortened notice. Negotiations on the two remaining issues in the mediation—a comprehensive settlement with the Sacklers and the precise contours of the Debtors' successor entity—remain ongoing, and the Debtors do not believe that it would yet be productive to file a Chapter 11 Plan. The Debtors are therefore seeking a further, intentionally brief extension of the Exclusive Filing Period to February 15, 2021 to permit the mediation process to conclude so that a Plan can be filed that incorporates the resolution of the remaining issues, and an extension of the Exclusive Solicitation Period to May 17, 2021. While this request is without prejudice to the rights of the Debtors to request one final further extension of the Exclusive Filing Period to March 15, 2021, as would be permitted under the Bankruptcy Code, the Debtors hope and expect that no further extension will be necessary and that in fact a Chapter 11 Plan will be on file well before February. For this to happen, the Debtors believe that the parties need to reach an agreement in principle and sign term sheets this year.

5

13.     The agreements reached in the first phase of mediation provide a framework for the allocation and distribution of estate value. *See Mediators' Report* [ECF No. 1716] (the "**Mediators' Report**") ¶¶ 3-7. And just two weeks ago, the Debtors took another monumental step forward on the path to a confirmable Chapter 11 Plan when the Court approved the Debtors' motion pursuant to Bankruptcy Rule 9019 seeking approval to enter into the settlement with the Department of Justice (the "**DOJ Resolution**").[3]

14.     At the conclusion of the November 17, 2020 omnibus hearing, the Court expressed its strong view that the remaining issues "can and should all be resolved over the next 30 days." Hr'g Tr. 249:20-24 (Nov. 17, 2020). The Debtors could not agree more. It is imperative that the remaining settlement negotiations proceed quickly to enable the Debtors to file a Chapter 11 Plan and accompanying disclosure statement and advance these cases to a successful end. Every month of delay means that tens of millions of dollars' worth of value is eroded that would otherwise be dedicated to addressing and abating the opioid crisis and another month in which billions of dollars of value is not yet working to abate the opioid crisis.

15.     Allowing many creditor constituencies—including ten unofficial committees—to file competing plans reflecting their views on the serious and complex issues involved in these Cases would slow, if not entirely derail, settlement negotiations that will hopefully yield their hoped-for results. Diversion of time and resources into such a chaotic and time-consuming process would be particularly unfortunate when the Debtors anticipate being in position to file a Chapter 11 Plan reflecting months of arduous good faith negotiations and providing the surest and swiftest path to confirmation in the near term.

---

[3] *Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements between the Debtors and the United States* [ECF No. 2004] (the "**DOJ Resolution Order**").

16. The Debtors therefore respectfully request that the Exclusive Filing Period and Exclusive Solicitation Period be extended through and including February 15, 2021 and May 17, 2021, respectively.

## Basis for Relief Requested

17. Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case. If a debtor files a plan during this period, section 1121(c)(3) of the Bankruptcy Code provides the debtor with an initial period of 180 days as of the commencement of the chapter 11 case to solicit acceptance of such plan. Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause." *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). For the reasons described in this Motion, the Debtors respectfully submit that "cause" exists to further extend the Exclusive Periods.

18. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of the particular case. *See, e.g.*, *In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Although the Bankruptcy Code does not define "cause," courts have construed the term in consideration of the Bankruptcy Code's underlying legislative history. *See, e.g.*, *In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), as reprinted in 1994 U.S.C.C.A.N.

3340, 3344) (noting that the exclusive periods under section 1121 of the Bankruptcy Code are intended "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated"); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989) (examining the applicable legislative history and noting that "[t]he 'cause' standard referred to in Section 1121 has been referred to as a general standard that allows the Bankruptcy Court 'maximum flexibility to suit various types of reorganization proceedings'" (citations omitted)). The opportunity for a debtor to negotiate a plan unimpaired by competition is intended to allow a debtor time to negotiate with its creditors, win support for its plan, and ultimately survive as a business. H.R. Rep. No. 95-595 at 231–32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191 (indicating that "cause" should be interpreted in such a way "to allow the debtor to reach an agreement"); *see also In re Publ. Serv. Co. of New Hampshire*, 88 B.R. 521, 533–34 (Bankr. D.N.H. 1988) (noting "legislative intent . . . to afford maximum flexibility"); *accord In re Glob. Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003) (noting that so long as the debtors give the court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested extension of exclusivity . . . should be granted").

19. In determining whether to extend a debtor's exclusive periods, courts consider a variety of factors to assess the totality of circumstances affecting whether or not "cause" exists, including:

   a) the size and complexity of the case;
   b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
   c) the existence of good faith progress toward reorganization;
   d) the fact that the debtor is paying its bills as they come due;
   e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
   f) whether the debtor has made progress in its negotiations with creditors;
   g) the amount of time that has elapsed in the case;
   h) whether creditors are prejudiced by the extension;

  i) whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

  j) the existence of an unresolved contingency.

*See In re Adelphia Communs. Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997) (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same); *In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (noting the debtors' "substantial efforts . . . to stabilize their business and develop a viable exit strategy"). Any one of these factors may constitute sufficient grounds for extending a debtor's exclusive periods. *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Not all of the above factors are relevant to every case, and the court considers only the relevant factors to determine whether cause exists to grant an exclusivity extension. *See In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (holding that size and complexity of the chapter 11 case is sufficient cause to extend exclusivity); *In re Express One Int'l*, 194 B.R. at 100–01 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors).

  a. *The Cases Are Large and Complex, and the Debtors Require Sufficient Time to Negotiate a Chapter 11 Plan in Good Faith*

20.  Courts regularly consider the size and complexity of a chapter 11 case a determining factor of whether a court should grant an extension of the exclusive periods. *See, e.g.*, *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause" can include an "unusually large case") (citation omitted); *In re Texaco*, 76 B.R. at 326 ("The

9

large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); *see also* H.R. Rep. No. 95-595, at 231–32 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for multiple extensions of exclusivity. *See In re Express One Int'l*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone).

21. These Cases are extraordinarily complex, involving over 613,000 claims filed by various governmental and private creditors against the Debtors that are working to distribute 100% of the value of their sophisticated, operating pharmaceutical businesses to their creditors through a largely unprecedented plan structure. Since this Court's previous extension of exclusivity, the Debtors have accomplished a great deal to narrow remaining issues, advance these Cases and further the plan process, including:

(a) obtaining approval of the DOJ Resolution;

(b) concluding the first phase of mediation with agreements that provide a framework for the allocation and distribution of estate value among the Private Claimants and Non-Federal Public Claimants;[4]

(c) obtaining an order expanding the scope of mediation to address Shareholder Claims under the supervision of the same two highly respected mediators who guided the parties to an immensely successful resolution of the first phase of mediation;[5]

---

[4] *See* Mediators' Report. The terms "Private Claimants" and "Non-Federal Public Claimants" have the meanings ascribed to such terms therein.

[5] *See Order Expanding Scope of Mediation* [ECF No. 1756]. The term "Shareholder Claims" has the meaning ascribed to such term therein.

10

(d) continuing to negotiate the terms of a proposed comprehensive settlement, including the terms of a proposed chapter 11 plan, with multiple constituencies in parallel with the mediation;

(e) reaching a consensual resolution of certain complex discovery and privilege-related issues with the UCC under which the Debtors produced a huge volume of responsive documents and information, and collaborated with creditors and other stakeholders, such as the UCC, the Ad Hoc Committee, the Non-Consenting States Group, and the Sackler Families, on extremely complex Rule 2004 discovery and diligence issues;

(f) continuing to provide information and access to former Iowa Governor and former United States Secretary of Agriculture Thomas J. Vilsack in his capacity as monitor pursuant to the voluntary injunction, leading up to the monitor's preparation and filing of the Third Monitor Report;

(g) obtaining approval of the sale of the Debtors' manufacturing facility located in Coventry, RI and entry into an agreement to outsource the Debtors' supply of various active pharmaceutical ingredients in a transaction that is expected to materially benefit the Debtors' estates;

(h) obtaining a critical further extended preliminary injunction through March 1, 2021, subject to a carefully crafted earlier opt-out procedure; and

(i) preparing for and successfully arguing numerous other motions and applications at multiple hearings.

22. At this time, the Debtors are seeking a brief further extension of the Exclusive Periods in order to complete the extensive work done to date, resolve the last remaining issues as expeditiously as possible and file a Chapter 11 Plan in the near future. Accordingly, the first three factors listed above all weigh in favor of the Court granting a further extension of the Exclusive Periods.

   b. *The Debtors Pay Their Bills as They Come Due*

23. The Debtors have continued to make timely payments on account of their undisputed post-petition obligations. As such, this factor also weighs in favor of allowing the Debtors to extend the Exclusive Periods.

*c. The Amount of Time that has Elapsed in these Cases*

24.     While over 14 months have elapsed in the Cases, similar extensions are frequently granted in cases of this size and complexity. *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312-RDD (Bankr. S.D.N.Y. June 22, 2020), ECF No. 2186 (extending exclusive periods a fourth time more than 16 months after the petition date); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007-RDD (Bankr. S.D.N.Y. July 14, 2016), ECF No. 3015 (extending exclusive periods a third time approximately 12 months after the petition date). Moreover, the Debtors are asking for an extension of the Exclusive Filing Period to February 15, 2021, and anticipate filing a Chapter 11 Plan in advance of that date. Accordingly, the requested further extension of the Exclusive Periods is appropriate under the circumstances.

*d. The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan and Are Making Progress in Negotiations with Creditors*

25.     The Court was clear at the November 17, 2020 omnibus hearing that negotiation of the remaining issues that are predicates to filing a Chapter 11 Plan must proceed quickly. The Court observed that "[t]he DOJ settlement is a critical building block in this case. It has enough flexibility in it so you can negotiate the remaining open issue as to the exit structure." Hr'g Tr. 249:3-9 (Nov. 17, 2020). The Court directed the parties to "focus over the next months on both sets of issues pertaining to the Sacklers and the emergent structure issues and reach an agreement" (*Id.* at 248:20-23) and exhorted the parties to move quickly, tell them that "now is the time," and that "you can do it, and you need to do it" (*Id.* at 2:4924-250:1; 248:23-24). The Debtors agree that the parties should be able to reach agreement on the remaining issues in the very near future as the Court instructed, and intend to file a Chapter 11 Plan shortly after resolving such issues on the tight time frame envisioned by the Court. Accordingly, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

>   *e. The Debtors Are Not Seeking to Extend Exclusivity to Pressure Creditors to Accede to the Debtors' Demands, and Creditors Are Not Prejudiced by the Extension*

26. Continued exclusivity will permit the Debtors to bring to culmination the substantial progress—including agreements with many creditor groups—that has been achieved to date. The Debtors also continue to show flexibility in searching for consensus around a host of difficult issues, and indeed have worked with creditors throughout this case to compromise and resolve matters that in many cases would have required judicial intervention. Only a relatively short additional period is hopefully required for the Debtors to file a Chapter 11 Plan, which they anticipate will have the support of numerous creditor groups. Accordingly, this factor also weighs in favor of the relief requested herein.

>   *f. Consensus Regarding the Proposed Settlement Remains an "Unresolved Contingency"*

27. As discussed above, the Debtors believe that a short extension is warranted to permit agreement to be reached with various creditor groups regarding the remaining contingencies to the Debtors filing a Chapter 11 Plan.

## The Relief Request Should Be Granted

28. The Debtors and their major creditor constituencies have invested an incredible amount of time and effort—at a substantial cost to the Debtors' estates—in the carefully negotiated agreements reached to date. It is imperative that the Debtors move swiftly to confirmation to minimize further costs to the Debtors' estates and instead allow those resources to be put to work abating the opioid crisis as soon as possible. Loss of the Debtors' exclusive right to file and solicit votes on a Chapter 11 Plan at this point could derail the current negotiations, squandering the time and resources expended to date and materially delaying the point at which the value of the Debtors' estates can be put to work for the benefit of the American public. Indeed, it would be highly disruptive to this process to allow one or more

groups of the Debtors' creditors to formulate and propose alternative plans of reorganization contemporaneously with the Debtors' own plan process in the midst of end-stage restructuring negotiations. Such disruption would be especially damaging in this case where the Debtors are attempting to direct all available value to abatement or to victims of the opioid crisis. Accordingly, the Debtors request a further extension of the Exclusive Periods to allow the Debtors to pursue the plan confirmation process without the costly and needless disruption that would occur if competing chapter 11 plans were to be proposed.

29. Furthermore, courts in this jurisdiction have granted relief similar to that requested herein. *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312-RDD (Bankr. S.D.N.Y. June 20, 2019), ECF Nos. 699, 1329, 1706, 2186 (providing for an initial extension of the exclusivity periods by 180 days, a second extension of 120 days and two additional extensions of 60 days each); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, No. 15-23007-RDD (Bankr. S.D.N.Y. Nov. 13, 2015), ECF Nos. 1838, 2637, 3015 (first extension of 131 days, second extension of 124 days and third extension of 185 days); *In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Bankr. S.D.N.Y. Nov. 16, 2018) (granting the debtors' fourth extension of the exclusive periods, for a total extension of 341 days); *In re Residential Capital, LLC*, Case No. 12-12020-MG (Bankr. S.D.N.Y. Sept. 11, 2012), ECF Nos. 1413, 2489, 3007, 3102, 3440, 3634, 3919) (granting four exclusivity extensions for a total of 464 days).

**Automatic Extension**

22. Pursuant to the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498] (the "**Case Management Order**"):

> If a Request for Relief to extend the time to take any action
> is filed prior to the expiration of the time period provided

>> by the Bankruptcy Code *(including any Request for Relief pursuant to section 1121 of the Bankruptcy Code)*, the Bankruptcy Rules, the Local Rules, or any order of the Court, the time to so take action shall be automatically extended until the Court considers and rules upon the Request for Relief.

Case Management Order at ¶ 45 (emphasis added). In addition, pursuant to Local Rule 9006-2, the Exclusive Filing Periods are automatically extended until the Court acts on this Motion, without the necessity for the entry of a bridge order.

## Notice

24. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this motion. The Debtors respectfully submit that no further notice is required.

## No Prior Request

25. The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed form of order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated: December 1, 2020
New York, New York

By: */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*