

Physicians for Responsible Opioid Prescribing
12800 Whitewater Drive, Suite 100
Minnetonka, MN 55343

www.supportprop.org
T 952 943 3937

December 2, 2020

Honorable Robert Drain
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

      Re: Purdue Pharma L.P., et al, Case No. 19-23649 (RDD)

Dear Judge Drain:

In Doc. No. 2045 (*Motion of Debtors for Entry of a Third Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof*) Purdue Pharma requested an extension, in part, to develop the "contours of the structure and governance of the successor entity to which the Debtors' assets will be transferred[.]"[1] Physicians for Responsible Opioid Prescribing (PROP) is respectfully submitting a letter to the Court regarding this successor entity.

At the last hearing, the Court directed the parties to "negotiate a plan that has an appropriate exit structure" and indicated that the "guiding imperative" for such a plan is the "public interest" and "resolving the opioid crisis."[2] PROP is writing to share our perspective with the Court on the potential negative public health impact of preserving Purdue's business as a public benefit company (PBC).

PROP is a non-profit professional organization founded in 2010 to address the opioid crisis. Our education and advocacy efforts are focused on reducing opioid-related morbidity and mortality by promoting more cautious opioid prescribing. Our members include clinicians and researchers in the fields of Primary Care, Pain Medicine, Addiction Medicine, Anesthesiology, Emergency Medicine, Public Health, Internal Medicine, Rheumatology and other specialties.

Purdue Pharma has argued that the new entity it proposes would positively impact the opioid crisis by making buprenorphine for opioid addiction treatment more accessible. We disagree. The primary barrier to opioid addiction treatment with buprenorphine has little to do with the cost of the medication. Rather, it is a lack of clinicians eligible to prescribe buprenorphine that is impeding access to treatment. Only about 5% of eligible clinicians have obtained the federal waiver required to treat

---

[1] Purdue Pharma L.P., et al, Case No. 19-23649 (RDD).  Doc. No. 2045 (*Motion of Debtors for Entry of a Third Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof*); Page 2.
[2] Purdue Pharma L.P., et al, Case No. 19-23649 (RDD).  Hearing transcript from November 17, 2020; Page 247.

opioid addiction with buprenorphine.[3]  Free buprenorphine provided by a PBC would not impact this barrier.

We are deeply concerned that the proposed PBC would receive funding from ongoing sales of opioid analgesics because this creates a conflict of interest that is harmful to public health.  Despite a recent trend toward more cautious opioid use, the United States continues to consume far more prescription opioids per capita than other countries.[4]   Organizations with a mission to address the opioid crisis should work to reduce overprescribing of opioids.  If the proposed PBC benefits financially from ongoing opioid sales it would have a perverse incentive to maintain a high volume of opioid sales.

PROP fully supports the sale of Purdue Pharma's pharmaceutical assets to other pharmaceutical companies, such that proceeds from the sale of these assets are made available for abating the opioid crisis.  However, we would oppose an asset sales agreement that relies on royalty payments from ongoing opioid analgesic sales because this would create a conflict of interest between the need for funds to address the crisis and the need to reduce opioid analgesic consumption.  The medical community and the public should be able to trust that efforts to address the opioid crisis are not impeded by potential conflicts of interest.

Thank you for considering our concerns.  If you have any questions or if we can be of any assistance to the Court, please let us know.


Sincerely,

*[signature]*

Andrew Kolodny, MD
Executive Director
Physicians for Responsible Opioid Prescribing

---

[3] Haffajee RL, Bohnert ASB, Lagisetty PA. Policy pathways to address provider workforce barriers to buprenorphine treatment. Am J Prev Med. 2018;54:S230-S242; Andrilla CHA, Moore TE, Patterson DG, Larson EH. Geographic distribution of providers with a DEA waiver to prescribe buprenorphine for the treatment of opioid use disorder: A 5-Year Update. J Rural Health. 2019;35:108-112.

[4] Kaafarani HMA, Han K, El Moheb M, et al. Opioids After Surgery in the United States Versus the Rest of the World, Annals of Surgery: December 2020 - Volume 272 - Issue 6 - p 879-886.