B1040 (FORM 1040) (12/15)

|  |  |
|---|---|
| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** |

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Stacey Bridges and Creighton Bloyd et al | Purdue Pharma L.P. , et al. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Frank Ozment, 217 Country Club Park, , Bo 501, Birmingham, AL 35213 (205) 8475401<br>Roderick Graham, P.O. Box 43334, Birmingham. AL 35243 (205) 4279494 |  |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
A class action of opioid patient seeking a trust as a remedy.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☒ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ unspecified |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>Purdue Pharma L.P. et al. | BANKRUPTCY CASE NO.<br>BK-19-23649-RDD |||
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of New York | DIVISION OFFICE<br>White Plain || NAME OF JUDGE<br>Hon. Judge Drain |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
|  |  ||  |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE || NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ Roderick Graham* ||||
| DATE<br>12/11/2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Roderick Graham |||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., et al.,<br><br>                Debtors. | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |
| STACEY BRIDGES and CREIGHTON BLOYD and others similarly situated,<br><br>                Plaintiffs,<br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>                Defendants. | Adversary Proceeding<br><br>Case No. _____ |

## **ADVERSARY PROCEEDING COMPLAINT**

On behalf of themselves and those similarly situated to them, or either of them, Stacey Bridges and Creighton Bloyd bring this adversary proceeding to establish a trust whereby Debtor's victims may have subsidized access to therapeutic counseling and medicine assisted treatment for opioid use disorder, so that the victims recover. In support of this proceeding, Bridges and Bloyd state:

    1.    The United States and the Debtor have entered into a plea agreement and a settlement agreement (collectively, the Settlement Agreement), both of

1

which have received conditional approval from this Court. Debtor pleaded guilty in U.S. District Court to crimes described in the plea agreement.

2. If implemented, the Settlement Agreement would convert Debtor into a public interest corporation for the manufacture and sale of Debtor's existing products, presumably including but not limited to buprenorphine (commonly known as Suboxone) and various forms of OxyContin.

3. Buprenorphine is one of several drugs commonly used in medicine assisted treatment (MAT). Others are vivitrol and methadone.

4. MAT is used to help opioid use disorder patients discontinue using opioids, including heroin.

5. While some counseling may be required by law in connection with some MAT, much of that counseling is insufficient to help victims such as Bridges to overcome or even to manage their disorder.

6. Genuine, therapeutically focused counseling greatly improves the likelihood that MAT patients will adhere to therapy. By the time Debtor's victims become MAT patients, their life circumstances are typically such that they have suffered overwhelming trauma, not to mention practical obstacles such as unemployment, poverty, and alienation from their families.

7. Without counseling, MAT patients relapse into active opioid addiction.

2

8. Bridges is a prime example of the peril that Debtor's victims face.

9. Bridges grew up in Walker County, Alabama, where the per capita opioid prescription rate is among the highest in the Nation.

10. When she was still a teenager, a physician in Walker County prescribed OxyContin for Bridges.

11. Bridges developed opioid use disorder, but became independent of opioid use with MAT.

12. After marrying and in anticipation of becoming pregnant, Bridges ceased MAT.

13. After giving birth to her son, Bridges had an automobile accident, and a physician in Walker County prescribed MS Contin (a time released form of OxyContin) to help Bridges deal with the pain of her injuries.

14. After her husband died in the Walker County Jail (his death was ruled a suicide), Bridges' physician abruptly discontinued her MS Contin prescription.

15. Bridges became addicted to heroin.

16. She transferred custody of her children, became indigent, and was ultimately detained in the Jasper Municipal Jail, where a jailer used access to gabapentin (a drug famous among heroin addicts for easing the pain associated with temporarily discontinuing heroin) to exploit her.

3

17. Over the years, Bridges often attempted to quit using heroin without MAT or with MAT and minimal counseling. However, she would relapse.

18. In recent years, she has managed to stop using heroin by combining MAT and intensive, focused therapy. She pays for her buprenorphine with her own money, because she has no insurance (which rarely covers MAT in any event).

19. On the one hand, Bridges hopes to become independent of MAT again. On the other, she acknowledges that her long history of heroin use puts her at risk of requiring MAT over the foreseeable future, if not her lifetime. In either event, effective counseling significantly increases the likelihood that Bridges will adhere to MAT and ultimately become independent of it, while the lack of effective counseling materially increases the risk she will relapse.

20. Creighton Bloyd began using OxyContin as a college student in East Tennessee.

21. The "pipeline" that made OxyContin available in East Tennessee began in Florida, where prescriptions for Debtor's products were outrageously frequent and often medically unnecessary.[1]

---

[1] The story behind the pipeline was described in a feature length article published in Rolling Stone magazine. https://www.rollingstone.com/culture/culture-news/the-dukes-of-oxy-how-a-band-of-teen-wrestlers-built-a-smuggling-empire-226940/#utm_medium=social&utm_source=email&utm_campaign=social_bar&utm_content=bottom_amp&utm_id=226940.

4

22.     Bloyd became addicted to OxyContin while he was a college student. He was fortunate that he did not become a heroin user.

23.     Bloyd has attempted to overcome his opioid addiction without MAT, but he would inevitably relapse, despite his best efforts.

24.     With MAT, Bloyd has managed to lead a successful life. He has married and his work as a consumer finance executive is going very well.

25.     While Bloyd has medical insurance, Bloyd pays for his MAT out of his own pocket.

26.     Bloyd acknowledges that he will likely require MAT for the foreseeable future.

27.     The Settlement Agreement appears to attempt to subsidize MAT indirectly by depriving Debtor of a profit motive and requiring Debtor to operate in the public interest. Whether that is, in fact, the intent of the Settlement Agreement is unclear: whether that strategy will work is plainly speculative.

28.     The Settlement Agreement does not subsidize the costs of counseling.

29.     The Settlement Agreement unapologetically attempts to deprive Bridges and other victims similarly situated to her of the rights they have as crime victims under the Mandatory Victim Restitution Act, 18 U.S.C. 3663. In pertinent part, section 3663(A) states that victims of bodily injury are entitled to reimbursement for: "professional services and devices relating to physical,

psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment." It is important to note that the U.S. District Court has not yet entered an order formally depriving Bridges and Bloyd and persons similarly situated to them, or either of them, of restitution.

30. It is unconscionable for the Settlement Agreement to serve as the lever for depriving Bridges, Bloyd, and victims similarly situated to them, or either of them, of the rights they have as creditors in this case. However laudable the ambitions of a public interest corporation may be, such an organization serves the public in general, not the Debtor's victims in particular. Put differently, Debtor's victims who have filed claims in this case are not merely entitled to a buprenorphine discount available to all opioid use disorder patients across the Nation, many of whom may have had no connection with Debtor whatsoever.

31. Now that Debtor has pleaded guilty, Bridges, Bloyd, and the class of persons similarly situated to them, or either of them, are entitled to a lien on Debtor's assets pursuant to the MVRA, with such lien being in the amount of restitution necessary to pay for the MAT for Bridges, Bloyd, or either of them, and the class of persons they represent. While Bridges and Bloyd have not yet persuaded the District Court to impose such a lien, they respectfully submit they

6

are entitled to an equivalent, equitable lien in this case regardless whether the District Court recognizes their rights under the MVRA.

32. The United States agreed to forego seeking restitution under the plea agreement because the government claims calculating restitution would result in unnecessary "prolongation." Calculating the amount of restitution necessary to pay for the MAT associated with Debtor's victims would not be impossibly complex.[2] While the present value of such an amount may exceed Debtor's ability to pay if the United States succeeds in gaining (for its penalty) priority over all other claims and expenses, any amount of restitution paid for the benefit of Debtor's victims is better than no amount or a mere market wide subsidy for the price of buprenorphine (which subsidy may be unrealistic over time).

33. Bridges and Bloyd recognize that cash restitution payments to MAT patients, much less opioid use disorder victims in active addiction, may be impracticable or even imprudent.

34. The claims of Bridges and Bloyd are typical of the claims asserted by other opioid use disorder patients who have timely filed claims in this case.

---

[2] If the Debtor's consultants could calculate how big of a rebate to give a pharmacy each time a pharmacy's customer overdosed on Debtor's products, the task of calculating the present value of bi-weekly or monthly buprenorphine prescriptions and weekly counsel should be manageable. See https://www.nytimes.com/2020/11/27/business/mckinsey-purdue-oxycontin-opioids.html

7

35. There are questions of fact common to Bridges' claim and Bloyd's claim and those of other opioid use disorder patients. These include whether Debtor's products were consumed and were a cause of the opioid use disorder.

36. There are numerous claims against Debtor, both filed in this case and otherwise.

37. Bridges and Bloyd are adequate representatives of the class.

38. A class claim is a superior means of adjudicating the controversy described herein.

WHEREFORE, on behalf of themselves and others similarly situated to them, or either of them, Bridges and Bloyd respectfully request this Court to enter an order as follows:

A. To require Debtor to establish a directed trust (the Trust), 1) the primary beneficiaries of which are those natural persons a) who have filed claims in this case, b) who are opioid use disorder victims, and c) who consumed Debtor's opioid products (other than those who consumed buprenorphine only), and the secondary beneficiaries of which are persons who satisfy conditions b) and c), and 2) the powers of which Trust shall be those necessary to accomplish the purpose of providing MAT, including counseling, to primary and secondary beneficiaries.

B.  To require Debtor to designate Truist Bank, or, in the event Truist Bank is unwilling or unable to accept the appointment, another similarly sized depositary institution with trust powers as the trustee for the Trust.

C.  To require Debtor to designate an acceptable money manager for the Trust from a slate of managers presented by the Unsecured Creditor's Committee to the Court.

D.  To take evidence and, if necessary, to have a hearing (whether virtually or otherwise) on the amount necessary to cover the MAT, including counseling, for Bridges, Bloyd, or either of them, and the class of persons they would represent.

E.  To impose a lien (the Lien) against the Debtor's assets in an amount that the Court determines as an appropriate amount to pay as restitution for Bridges, Bloyd, or either of them, and the class of persons they represent, which amount shall be the amount described above.

F.  To require Debtor to deposit into the Trust cash or cash equivalents in an amount necessary to satisfy the Lien.

G.  From a list provided by Bridges, Bloyd, or either of them, and after hearing objections, if any, from creditors, to appoint administrative, medical, and psychological experts to advise the trust from time to time on methods for

9

reimbursing service providers (including pharmacies) who provide MAT, including therapy, to beneficiaries of the Trust.

      H.      After the funds of the Trust are such that efficient administration is not practical, or after the beneficiaries have completed MAT and counseling, or upon other good cause shown by any beneficiary, trustee of the Trust, or advisor of the Trust, to disburse the corpus of the trust to such persons whose usage of the funds would be consistent with the purpose of the Trust.

      i.      Award attorney's fee and cost to the plaintiff.

Respectfully submitted,

s/ Frank Ozment
Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, AL 35213
Phone: (205) 847-5401
Email: frankozmentlaw@gmail.com

s/Roderick Graham
Roderick Graham
Attorney for Plaintiff
Graham and Associates, P.C.
PO Box 43334
Birmingham, Alabama 35243
Phone: (205)427-9494
Email: Rodgrah@hotmail.com

***Attorney for Plaintiffs***

# United States Bankruptcy Court
## Southern District of New York

In re

PURDUE PHARMA L.P., et al.,

Debtors.

Bankruptcy
Case No. 19-23649 (RDD)

Debtor(s)

STACEY BRIDGES and CREIGHTON BLOYD and others similarly situated,

Plaintiff(s)

PURDUE PHARMA L.P., et al.,

Adversary
Proceeding No.

Defendant(s)

### SUMMONS AND NOTICE OF PRETRIAL CONFERENCE IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

> United States Bankruptcy Court, Southern District of New York
> 300 Quarropas Street, 2nd Floor
> White Plains, New York 10601

Page 1 of 2

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> **Name and Address of Plaintiff's Attorney:**
> Frank Ozment
> Frank Ozment Attorney at Law, LLC
> 217 Country Club Park, Box 501
> Birmingham, AL 35213
>
> Roderick Graham
> Graham and Associates, LLC
> PO Box 43334, Birmingham, Alabama 35243

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| United States Bankruptcy Court<br>Southern District of New York<br>300 Quarropas Street, 2nd Floor<br>White Plains, NY 10601 | Room: |
| --- | --- |
|  | Date and Time: |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

/s/
*Clerk of the Bankruptcy Court*

By: /s/

_____
Date

*Deputy Clerk*

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER |
|---|---|
| **PLAINTIFFS**<br>Stacey Bridges and Creighton Bloyd et al | **DEFENDANTS**<br>Purdue Pharma L.P. , et al. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Frank Ozment, 217 Country Club Park, , Bo 501, Birmingham, AL 35213 (205) 8475401<br>Roderick Graham, P.O. Box 43334, Birmingham. AL 35243 (205) 4279494 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
A class action of opioid patient seeking a trust as a remedy.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☒ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ unspecified |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Purdue Pharma L.P. et al. | BANKRUPTCY CASE NO.<br>BK-19-23649-RDD | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of New York | DIVISION OFFICE<br>White Plain | NAME OF JUDGE<br>Hon. Judge Drain | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br>12/11/2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Roderick Graham | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.