**EXHIBIT B**

**TARTER KRINSKY & DROGIN**
*Counsel for NAS Children Ad Hoc Committee*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

### *EX PARTE* MOTION OF THE NAS CHILDREN AD HOC REQUESTING A COURT ORDER AUTHORIZING EXAMINATIONS PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9006

The NAS Children Ad Hoc Committee ("**NAS Children Ad Hoc**"), through its counsel,

Tarter Krinsky & Drogin LLP, respectfully submit this *ex parte* motion (the "**Motion**") for entry

of an order authorizing it to both (a) conduct an examination of the records custodian(s) (the

"**Record Custodians**") for the above-captioned debtors and debtors-in-possession (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

"**Debtors**") and (b) seek documents in connection such examinations, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Rules**"). In support of this Motion, the NAS Children Ad Hoc respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Between 300,000 and 500,000 NAS children have been born in the opioid crisis[2] and many suffer from birth defects, learning disabilities and behavioral issues which a number of studies have tried to assess.  Research that Purdue performed over the past 3 decades or more will greatly expand the understanding of these children's damages and will inform the NAS Children Ad Hoc Medical Monitoring Abatement Program (the "**NAS Abatement Program**").

2.      As this Court is aware, the NAS Children Ad Hoc represents the interests of guardians who are responsible for the care, welfare, and upbringing of children suffering from *in utero* exposure to opioids by reason of the birth mother's use during pregnancy of opioids manufactured by Purdue, for example.  To that end, the NAS Children Ad Hoc has successfully negotiated and reduced to a term sheet an arrangement that establishes an abatement trust to administer an NAS Abatement Program.

3.      This motion seeks the further production of medical and scientific information, research, data, studies, and materials (the "**Scientific Information**") currently within the possession or control of the Debtors, on the grounds that the disclosure of the Scientific Information is critical to medical experts, providers and staff in laying the groundwork for a timely and successful launch and implementation of the NAS Abatement Program that provides immediate relief to the countless families caring for an NAS child, as well as provide women of

---

[2] https://www.cdc.gov/mmwr/volumes/65/wr/mm6531a2.htm

child-bearing age with additional information (contained within the sought studies) addressing health risks to their unborn child due to *in utero* opioid exposure. Debtors' disclosure of the Scientific Information will, importantly, serve to mitigate the opioid epidemic.

4.     The discovery sought is consistent with a long-running effort to assist a party in interest in determining the nature and extent of one of Debtors' varied assets—its Scientific Information related to fetal opioid exposure—an asset that, oddly, remains unaccounted for and, as a consequence, its value, currency, and noteworthiness, remain locked. Obtaining the Scientific Information so that it may be considered by the medical professionals, and staff, in the course of implementing the NAS Abatement Program is of paramount importance and value and timely disclosure would, in effect, be a recovery of Debtors' assets for the benefit of creditors. Benefits would also accrue to the medical and science communities as well as both, directly and indirectly, the multitudes of women of child-bearing age nationwide.

5.     Full and comprehensive discovery of Scientific Information has the salutary purpose of assessing the Debtors' and affiliated entities' wrongdoing that allegedly has occurred in what appears to be a conscious misrepresentation and concealment of scientific evidence related to the long-term impacts of fetal opioid exposure. *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004

6.     The proposed requests are attached hereto as **Exhibit A**.

7.     Without timely disclosure of this critical <u>one-of-a-kind</u> collection of records arising from the Debtor's (in concert with other members of the pharmaceutical industry) testing for and identifying the teratogenic and mutagenic impact of in-utero exposure of opioids on mammals and the frequency and scope of the injuries to the embryos of those test animals will remain locked away. Without the remedy sought by this Motion, these irreplaceable records will remain hidden

from medical investigators and scientific researchers alike and, most probably, cause unnecessary delays in developing, understanding and contextualizing follow-up studies researching injuries caused by and related to embryonic opioid exposure. Without timely disclosure in this case, these crucial records stand to remain hidden from medical investigators, among others, all of whom are diligently pursuing clues to identify and treat the harms, now widely reported, associated with in utero opioid exposure affecting literally hundreds of thousands-- even millions-- of children.

### NAS CHILDREN AD HOC COMMITTEE DISCOVERY EFFORTS

8.      The NAS Children Ad Hoc has duly and diligently engaged in informal Rule 2004 discovery of the Debtor(s) for seven months.

9.      Although this motion seeks to compel further discovery from the Debtors, that is not to say the Meet and Confer efforts have not been fruitful. The Debtors have, over a period of months, provided the NAS Children Ad Hoc with valuable insight into both the organization and source of the documents Purdue and Rhodes had produced in the MDL Discovery, which greatly informed the NAS Children Ad Hoc's analysis while narrowing further inquiry. To their credit, the Debtors and the NAS Children Ad Hoc diligently and successfully bridged a number of discovery requests but suffice to say, requests remain unfulfilled and in need of court consideration.

10.      By way of background, the NAS Children Ad Hoc sent the Meet and Confer Letter to Debtors on April 17, 2020. This letter requested copies of all scientific studies in Debtors' possession related to NAS, information crucial for the assessment of Debtors' knowledge and wrongdoing. In response, Debtors provided bates ranges, consisting of over 28,000 pages of materials constituting, for the most part, Scientific Information. These documents were useful in allowing the NAS Children Ad Hoc to narrow requests for scientific studies; however, it stood to

reason that this initial disclosure by Debtors neither represented, nor encompassed, the full range of scientific studies performed by Debtors in the formulation of their opioid drugs.

11.    After reviewing these bates ranges, the NAS Children Ad Hoc then sent a second meet and confer letter with a narrower set of requests, via email on August 21, 2020 and included the titles and designations of specific ███████ studies performed by Debtors, in addition to renewing requests for other documents still outstanding.  The April 17, 2020 and August 21, 2020 meet and confer letters are collectively referred to as the "Meet and Confer Letters".

12.    In order to discuss these issues further, the NAS Children Ad Hoc held a teleconference with Debtors, on August 21, 2020.

13.    Debtors followed up on, September 9, 2020, by furnishing the bates range designations of the requested ███████ studies. Receiving these studies from the Debtors proved helpful in allowing the NAS Children Ad Hoc's experts to further analyze the body of medical and scientific knowledge available to the Debtors regarding the relationship of their products to NAS.  However, it is equally notable and prejudicial that other requested documents, including any preliminary studies conducted by, upon information and belief, Mundipharma which are in the Debtors' possession, remain undisclosed. Additionally, upon Debtors' recent suggestion, the NAS Children Ad Hoc has made similar requests for Scientific Information upon legal representatives for, respectively, Sackler Family Side 'A" and Side 'B' (in mid-November 2020), and Mundipharma (on November 25, 2020) while, to date, only the former has responded.

14.    On September 18, 2020, NAS Children Ad Hoc both engaged in a second teleconference with Debtors to discuss documents not yet disclosed and, on same date, transmitted a follow up email regarding the status of additional outstanding document requests. Debtors responded on September 30, 2020 by designating additional bates ranges regarding some of the

requested documents; however, Debtors again only disclosed a portion of the total documents requested by NAS Children Ad Hoc, without explanation.

15.    On November 11, 2020, NAS Children Ad Hoc engaged in a third teleconference to discuss documents still not yet disclosed. A follow up email was sent on November 12, 2020. On November 20, 2020, the Debtors responded with additional bates ranges regarding outstanding productions, including ███████████████████████████████, only hours in advance of a fourth teleconference, held that same morning.  Later that day, NAS Children Ad Hoc sent a follow up email regarding additional questions on still outstanding productions.   On November 23, 2020, Debtors' counsel sent a response confirming that Debtors had no objection to NAS Children Ad Hoc working with UCC counsel to search for some of the materials still outstanding. A similar understanding was reached with Counsel for Sackler Family Side A and Side B.

16.    The NAS Children Ad Hoc believes it is necessary to supplement requests made to the Debtors and addressed in the Meet and Confer Letters and during ongoing telephonic "meet and confer" efforts continuing between the NAS Children Ad Hoc and the Debtors.  This Motion was not filed for the purposes of disrupting such efforts as the NAS Children Ad Hoc wishes to continue to seek Debtors' cooperation and to pursue consensual efforts while, simultaneously and out of an abundance of caution, utilizing formal discovery requests and procedures, including the exchange and filing of formal responses and formal objections, if any.

17.    The material and reasonable requests made pursuant to this Motion is, as a matter of procedure, being made on an *ex parte* basis in accordance with both Bankruptcy Rule 2004 as well as this Court's Chambers Rules. The Debtors received advance notice the NAS Children Ad Hoc would be proceeding with this Motion, including an advanced copy of the motion, a

procedural step—and courtesy—that diminishes if not dispels any claim of prejudice. Accordingly, the NAS Children Ad Hoc respectfully submits the relief sought by this Motion is properly sought and entered on an *ex parte* basis. Of course, any specific discovery disputes will be brought to the Court's attention as they arise, to the extent they cannot be otherwise worked out by the NAS Children Ad Hoc and the Debtors.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under § 157(b)(2).

19.    Venue is proper under 28 U.S.C. §§ 1408 and 1409.

20.    The bases for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rules 2004, 9006 and 9016.

## RELEVANT BACKGROUND

21.    The NAS Children Ad Hoc has not issued any formal discovery in this action. Nevertheless, the NAS Children Ad Hoc has initiated informal discussions with the Debtors, starting with the Meet and Confer Letters that, significantly, included an earlier draft of this Motion as well as the attached document requests. Thereafter, and through the filing of this Motion, the NAS Children Ad Hoc and the Debtors have mutually and diligently continued their discussions of the discovery requests that remain unresolved. The NAS Children Ad Hoc is clearly entitled to the requested discovery from the Debtors in these cases.[3]

22.    The discovery requests, which are attached as **Exhibit A**, include requests for specific medical and scientific information related to the long-term impact of fetal opioid exposure

---

[3] A separate ongoing request for Scientific Information has been made by the NAS Ad Hoc Children upon legal representatives for, respectively, Sackler Family Side 'A' and Side 'B' (in mid-November 2020), and Mundipharma (on November 25, 2020).

and documents that may be relevant, or may lead to discovery of relevant information, regarding or relating to the issues of the adequacy of, *inter alia*, Debtors' warnings regarding the full extent of the risks—to pregnant women and women of childbearing ages alike—of using opioids during pregnancy.

23.     ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████.

## **RELIEF REQUESTED**

24.     The NAS Children Ad Hoc respectfully requests the Court enter an order pursuant to Bankruptcy Rule 2004, substantially in the form of the proposed order attached hereto as **Exhibit B**.  Upon the entry of the Rule 2004 Order, the NAS Children Ad Hoc intends to serve the discovery requests described in **Exhibit A** upon the Debtors that, in turn, shall require the Debtors to submit their formal responses and/or objections and, thereafter, to appear for oral examination under oath through their Records Custodians.

25.     Debtors have sought to keep certain documents sealed, redacted, or hidden from both NAS Children Ad Hoc and, by extension, the general public.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████.

26. Debtors recently acknowledged the language contained in its settlement resolution with the DOJ (UCC Statement ¶¶ 18-19) describing the establishment of a public document repository as only setting a floor and not a ceiling with respect to the breadth and comprehensiveness of the contemplated public document repository.

> The UCC's final concern regarding the scope of the document repository described in the DOJ Resolution (UCC Stmt. ¶¶ 18-19), which the UCC emphasizes has the support of all creditors and the Court, has *an easy answer that the Debtors are happy to provide—the language sets a floor, not a ceiling. The Debtors intend that the document repository*—promised by the Debtors at no fewer than five hearings (see Oct. 11, 2019 Prelim. Inj. Hr'g Tr. 66:17-18; id. at 67:5-20; Nov. 6, 2019 Prelim. Inj. Hr'g Tr. 30:19-31:19; June 3, 2020 Bar Date Ext. Hr'g Tr. 20:18-21:8; July 23, 2020 Omnibus Hr'g Tr. 48:12-18; Oct. 28, 2020 Omnibus Hr'g Tr. 30:20-22)—*that will exist upon emergence will go beyond the repository described in the DOJ Resolution.* (See Plea Agreement at 10-11.) The Debtors' agreement with the DOJ regarding the minimum context of a document repository is but one more stepping stone on the road to emergence.

*See Omnibus Reply In Support Of The Motion Of Debtors Pursuant To 11 U.S.C. § 105 And Fed. R. Bankr. P. 9019 Authorizing And Approving Settlements Between The Debtors And The United States.* ECF-Doc 1962, Entered 11/16/20. (emphasis supplied).

27. Additionally, at a hearing on November 17, 2020, Arik Preis, Esq., counsel for the unsecured creditors committee, declared that discovery is both still open and ongoing in this matter, and Judge Drain concurred:

> **Mr. Preis**: Finally, I just want to clarify something Mr. Huebner said. He said something about the fact that this ends any and all discovery that the Committee and the non-consenting states will serve on the Debtors in these cases. And if I misheard that, I apologize. That's not exactly true. It does put an end to the discovery we will be serving on the Debtors as it relates to the items and the issues that are at play on the estate causes of action. Obviously if there are other issues in the case, like plan confirmation or something else that has nothing to do with the topics that we have already sought discovery from the Debtors, that's obviously fair game, and the Debtors understand that, and that's in the stipulation. I just didn't want there to be any confusion about that.

**THE COURT**: Right. No, that's clear to me.

*See* 11/17/20 Hearing Transcript, 17:24-18:12.  With parties and the Court in agreement about the

ongoing nature of discovery in this case, NAS Children Ad Hoc's requests are both timely, proper,

and reasonable.

28.    Upon information and belief, disturbing and damning information is being

withheld from the NAS Ad Hoc Children and, by extension, the medical and scientific

communities, in stark contrast to Debtors' prior cooperation and track record in producing

responsive information.

29.    Admittedly, under Federal Rule of Bankruptcy Procedure 9018, the Court may,

either on formal motion or upon its own initiative, seek to protect matters that are secret,

confidential, scandalous or defamatory.  The information and data contained in the Scientific

Information, which Debtors seemingly are withholding from the public inspection is <u>not</u> in any

respect secret, confidential, scandalous or defamatory, rendering Rule 9018 inapplicable.  The

same Scientific Information, however, has profound and extraordinary value to the NAS

Abatement Program (and scientists, researchers, families and children alike) in terms of providing

NAS Abatement Program with a rich, vital, unrivaled and irreplaceable source of medical data and

materials to build upon.  This same information and data may also provide the clues that scientists

and researchers have been looking for in their noble efforts to unlock unresolved medical mysteries

surrounding the life-altering injuries associated with *in utero* opioid exposure.  Further, the U.S.

Supreme Court has held that documents and testimony related to important historical events may

remain sealed only if competing interests outweigh the public's need for access to these documents

and testimony. See *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978).  In Debtors' case, the

public has an undeniably important, rational, and compelling need to obtain access to the Scientific

Information.

30.     The Multidistrict Opioid Litigation itself provides an example of the importance of

disclosure of data for tackling the opioid crisis. A recent Ohio State Law Journal article by Jennifer

D Olivia, associate professor of law at Seton Hall University, investigates the efforts of plaintiffs

and the media to unseal and publicly disclosed DEA ARCOS opioid sales tracking data in the

Multidistrict Opioid Litigation.  The efforts undertaken by opioid manufacturers, including Purdue,

to keep DEA ARCOS data under seal due to the data's purported status as "trade secrets" has

denied the public an important right to access information addressing the public health issues of

the opioid crisis.  After the data was disclosed by a West Virginia newspaper, the Charleston

Gazette (it received a Pulitzer prize for its reporting on the opioid crisis), Judge Polster saw the

benefit to the public presented by the data contained in the DEA ARCOS database far outweighed

any "trade secret" qualities found in the data and, accordingly, promptly called for the data to be

unsealed by the court.  Professor Olivia finds that transparent discovery is more likely to improve

public health policy-making when compared to secret proceedings and confidential settlements.

"The public should advocate for transparent health and safety litigation because history teaches

that it is the disclosure of health crisis provoking and exacerbating facts- and not the award of

settlement funds- that drive meaningful public health reform. *See* Olivia, Jennifer D, "*Opioid

Multidistrict Litigation Secrecy*", Ohio State Law Journal, Vol. 80:4

31.     Undoubtedly, Debtors' bankruptcy represents an important historical moment in

terms of a national health crisis and, hopefully, an inflection point towards reversing the nation's

opioid epidemic. Unsealing studies, documents, and testimony by Debtors related to the effects of

using opioids during pregnancy and, similarly, in utero exposure to opioids, would permit the

medical and scientific communities unique and extraordinary access to much-needed data.

**THE NAS CHILDREN AD HOC AND
THE IMPLEMENTATION OF THE NAS ABATEMENT PROGRAM
STAND TO GREATLY BENEFIT FROM DISCOVERY OF THE NATURE
AND EXTENT OF SCIENTIFIC INFORMATION POSSSESSED BY THE DEBTORS**

32.    Let there be no doubt ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████.

33.    Documents produced thus far indicate ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████.

34.    The following excerpts compare language from the Amended Draft Version and the

Final Version of a draft report ██████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████.

35.

36.

████████████████████████████████████████████████████████

████████████

37.    ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

        ██████████████████████████████████████████

        ██████████████████████████████████████████

        ██████████████████████████████████████████

        ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

38.    In his supporting declaration, attached as **Exhibit F,** Dr. Carl Werntz, licensed physician and former professor at West Virginia University School of Medicine, reports:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

39.    Dr. Werntz goes on to opine: ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

40.    Dr. Werntz throughout his Declaration explains how the discovery requests will assist the Medical Professionals who implement the NAS Abatement Program resulting from the NAS Children Ad Hoc Medical Monitoring/Surveillance Abatement plan achieved during mediation.

41.    Dr. Werntz explains that previously undisclosed Preliminary Studies, Investigative Studies, Pilot Studies and Dose-Ranging Studies, all sought in Requests 1 and 2, as well as other information sought in Requests 3, 5 and 7, will all be of benefit to the NAS Children Ad Hoc because of "the potential to reveal potential human impacts of fetal opioid exposure in the immediate, near and long term not described in previously disclosed literature." See **Exhibit F**, Dr. Werntz at ¶6.

42.    ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

43.     Documents produced in discovery thus far reveal the Debtors and/or related-entity Mundipharma engaged in, discussed among themselves, and potentially jointly funded research into the genotoxic impacts and chromosomal aberrations, together with Mallinckrodt and Johnson & Johnson's then-subsidiary, Noramco4. See **Exhibit G**, E01_00002130 and **Exhibit H**, E513_00114030. [5]

44.     According to Dr. Werntz, Requests 6 and 9 properly seek archived scientific literature, and indexes of scientific literature, in possession of the Debtor(s), all of which can benefit the NAS Children Ad Hoc, to the extent that unfettered access to the scientific information known by the Debtors when they made their regulatory disclosure requirements here and abroad, and identifies what was withheld from the regulators

45.     Finally, according to Dr. Werntz, Request 7 and 8 will benefit the NAS Children Ad Hoc and its constituents by providing access to information relevant to the immediate, near- and long-term impact of fetal opioid exposure not covered by other discovery requests; in fact, this request is narrowly drawn to avoid capturing an excessive volume of material.

## **BASIS FOR RELIEF**

46.     Bankruptcy Rule 2004(a) provides, in relevant part, that "[o]n motion of any party in interest, the court may order examination of any entity." Under Bankruptcy Rule 2004, a party-in-interest (such as the NAS Children Ad Hoc) may request discovery related to "acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may

---

4 J&J spun off Noramco to SK Capital Partners LLC in and about 2015.  Noramco recently acquired Purdue's API assets pursuant to court approval.

5 During the meet and confer process, Debtors shared with undersigned counsel the fact that many of the exhibits including the two mentioned here were extracted from a legacy hard-drive at .txt files without associated images and thus these exhibits are cumbersome and difficult to read.

affect the administration of the debtor's estate or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

47.     The purpose of Bankruptcy Rule 2004 is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). Rule 2004 permits discovery "to determine the extent of the estate's assets and recover those assets for the benefit of creditors." *In re Madison Williams & Co., LLC*, No 11-15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Oct. 30, 2014) ("The underlying purpose of Rule 2004 is to 'allow the court to gain a clear picture and whereabouts of the bankrupt's estate.'" (quoting *Keene Corp. v. Johns-Mansville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362, 364 (S.D.N.Y. 1984))).

48.     The scope of discovery allowed under Bankruptcy Rule 2004 is "'very broad and great latitude of inquiry is ordinarily permitted.'" *In re Madison* Williams, 2014 WL 56070, at *3 (quoting *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)). Courts have repeatedly recognized that discovery provided for under Rule 2004 encompasses "broader discovery than is available under the Federal Rules of Civil Procedure." *In re: Bernard L. Madoff*, 2014 WL 5486279, at *2 (citing *In re Recoton Corp.*, 307 B.R. at 755); *see also In re Hughes* , 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[T]he scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure . . .".'"); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).

49.     The discovery sought pursuant to this Motion is critical to the NAS Children Ad Hoc's  deriving the full benefit of the injunctive relief that it secured in its settlement during the mediation process (by revealing the nature of and assessing whether wrongdoing has occurred in

its claims against the Debtors). While the NAS Children Ad Hoc is engaged in good faith discussions with the Debtors regarding the discovery, the NAS Children Ad Hoc needs, nonetheless, the formal protections of a Rule 2004 Order so that it can properly bring any discovery disputes before the Court.

## COMPLIANCE WITH THE RULES

50.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, together with a discussion of their application to this Motion. The NAS Children Ad Hoc respectfully submits this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

51.     The NAS Children Ad Hoc is proceeding with this Motion on an *ex parte* basis. Nevertheless, the NAS Children Ad Hoc has duly provided informal notice of this Motion to the Debtors.

## NO PRIOR REQUEST

52.     No prior request for the relief sought in this Motion has been made in this Action.

## RESERVATION OF RIGHTS

53.     The NAS Children Ad Hoc and its members reserve all of their respective rights, claims, defenses and remedies, including, without limitation, the right to amend, modify or supplement this Motion, to seek additional discovery, add additional parties, or to raise additional grounds for granting this Motion during any hearing on the Motion.

## CONCLUSION

54.     The NAS Children Ad Hoc respectfully requests that the Court enter an order, substantially in the form of **Exhibit G** attached hereto, that authorizes the NAS Children Ad Hoc

to issue discovery and undertake a Rule 2004 examination of the Records Custodian(s) of the

Debtors.

Dated: December 15, 2020
      New York, New York

                        **TARTER KRINSKY & DROGIN LLP**
                        *Counsel for NAS Children Ad Hoc Committee*

            By:   /s/ Scott S. Markowitz
                Scott S. Markowitz, Esq.
                Rocco A. Cavaliere, Esq.
                Michael Z. Brownstein, Esq.
                1350 Broadway, 11th Floor
                New York, NY 10018
                Tel: (212) 216-8000
                Scott S. Markowitz, Esq.
                Rocco A. Cavaliere, Esq.
                Michael Z. Brownstein, Esq.
                Email: smarkowitz@tarterkrinsky.com
                Email: rcavaliere@tarterkrinsky.com
                Email: mbrownstein@tarterkrinsky.com

                **MARTZELL, BICKFORD & CENTOLA**
                Scott R. Bickford (LA 1165)
                Spencer R. Doody (LA 27795)
                338 Lafayette Street
                New Orleans, LA 70130
                Telephone: 504-581-9065
                Facsimile: 504-581-7635
                sbickford@mbfirm.com
                srd@mbfirm.com
                usdcndoh@mbfirm.com

                **CREADORE LAW FIRM PC**
                450 Seventh Avenue, 14th Floor
                New York, NY 10123
                Telephone: 212.355.7200
                Donald Creadore, Esq. (NY 2090702)
                donald@creadorelawfirm.com

**LAW OFFICES OF KENT HARRISON
ROBBINS, P.A**.
242 Northeast 27th Street
Miami, Florida 33137
Telephone: (305) 532-0500
 Facsimile: (305) 531-0150
Email: khr@khrlawoffices.com

## RULE 2004 MOTION, EXHIBIT A.

## PROPOSED REQUESTS FOR PRODUCTION

NAS Ad Hoc Children ask that Debtors please produce the following:

1. All Preclinical Toxicology Studies, including but not limited to reproductive toxicology, mutagenicity, genotoxicity, chromosomal, dose-ranging, exploratory, investigative or non-GLP studies regarding opioids in the possession of the Debtor(s) that have not been disclosed to the FDA.

**EXHIBIT B**

**TARTER KRINSKY & DROGIN**
*Counsel for NAS Children Ad Hoc Committee*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------
|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al*., | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
-------------------------------------------------------------------------------

## <u>ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AUTHORIZING EXAMINATIONS AND DOCUMENT PRODUCTIONS</u>

Upon the motion (the "<u>Motion</u>") dated December 1, 2020 of the NAS Children  Ad Hoc

Committee (the "<u>NAS Children Ad Hoc</u>") for an order pursuant to Fed. R. Bankr. P. 2004 and

9016 authorizing the examinations and discovery described therein; and the Court having

jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the Motion

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this District

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

pursuant to 28 U.S.C. §§ 1408 and 1409; and no additional notice being required except as provided herein; and, after due deliberation, good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as provided herein.

2. That, pursuant to Fed. R. Bankr. P. 2004, to conduct examinations of, including, without limitation, by seeking electronically stored information and other documents identified in **Exhibit A** (NAS Children Ad Hoc Discovery Requests) from the Debtors, defined in the Motion as Purdue Pharma LLP and related entities (collectively, the "Producing Parties").

3. The examinations and document production required hereby shall be subject to the assertion of applicable privilege; provided, that if a document required to be produced hereby is withheld on the basis of an asserted privilege, the Party withholding such document shall provide a proper privilege log at the time of production hereunder.

4. NAS Children Ad Hoc, and the Producing Parties shall meet and confer not only to attempt in good faith to resolve any disputes over any Subpoenas but also to efficiently coordinate the issuance of and compliance with the Subpoenas. In furtherance of the foregoing, on a going forward basis these parties with the exception of the Producing Parties shall record all time and expenses on this discovery matter and report the aggregate sum to each other on a weekly basis and also on a weekly basis discuss any cost containment issues.

5. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: December __, 2020
White Plains, New York

_____
United States Bankruptcy Judge