# EXHIBIT 6

UNREDACTED — SHOULD BE TREATED AS PRIVILEGED COMMUNICATIONS - TREATMENT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Porter, Katherine <kporter@akingump.com> |
| **Sent:** | Thursday, March 19, 2020 11:04 PM |
| **To:** | Clarens, Margarita; Duggan, Charles S.; Kaminetzky, Benjamin S.; Huebner, Marshall S. |
| **Cc:** | apreis@akingump.com; Hurley, Mitchell; PURDUE AKIN LIT; Atkinson, Michael (External); Troop, Andrew M. |
| **Subject:** | In re Purdue Pharma - UCC Revised Search Terms and Custodians Proposal to Debtors |
| **Attachments:** | Ex. A - Revised List of Custodians for MDL and Primary Liability Terms.pdf; Ex. B - New Primary Liability Terms.pdf; Ex. C - MDL Search Terms.pdf; Ex. D - New Estate Terms and Custodians.pdf; Ex. E - Non-Director Sacklers Search Terms.pdf |

Dear Charles and Margarita:

Thanks your time on Friday (March 13, 2020). As you know, we provided the Debtors with proposed custodians, time frames and search terms for collecting and producing ESI within the Debtors' possession, custody or control on February 4, 2020. We write now to propose different custodians and search criteria that we believe will result in a greatly reduced production burden to the Debtors. We also remain willing to meet and confer with you regarding further modifications to the criterial to the extent appropriate.

In our February 4 proposal, we identified what we called "**Additional Search Terms**"—search strings that were not run by the Debtors on any custodial files pre-petition—some of which were directed specifically to estate claims ("**New Estate Terms**"), with others directed to issues of primary liability that are relevant to estate claims ("**New Primary Liability Terms**"). Issues of primary liability are directly relevant to key issues raised by the estates' claims against the Sacklers and others, as we have explained.

We asked you to run the Additional Search Terms (including both the New Estate Terms and the New Primary Liability Terms) across the ESI of *all* custodians, including those who were subject to prepetition searches ("**Prepetition Custodians**"). We understand that there were 70 Prepetition Custodians in the MDL. On February 4 we also identified custodians whom we understand were not subject to any prepetition searches of any kind in the MDL ("**New Custodians**"), and asked you to run *both* the Additional Search Terms and the terms that were run in the MDL ("**MDL Search Terms**") against any New Custodians. We identified 75 New Custodians in our Feb. 4 proposal, plus 22 "Practice Fusion" custodians (some of whom were also New Custodians), subject to different proposed terms. We asked that all searches be run from 1995 to the present.

You advised us on February 28, 2020 that the Debtors would not provide any "primary liability" discovery in these cases. Of the Official Committee's proposed Additional Search Terms, the Debtors only offered to run the New Estate Terms, and none of the New Primary Liability Terms or MDL Search Terms. Even with respect to the New Estate Terms, you were willing to run them against only "some" of the New Custodians and Prepetition Custodians ("**Debtors' Proposed Custodians**") that were already in the Special Committee's database, and only for the period from 2006 forward. You also sent us a "hit list" reflecting the number of documents returned by running the New Estate Terms against the Debtors' Proposed Custodians, and asked us to consider narrowing the New Estate Terms in a way that returns fewer documents.

In an effort to narrow or eliminate the parties' disputes regarding ESI we propose the following.

*First*, we are willing to limit the beginning date for the searches to 2001, rather than dating back to 1995 as we originally proposed.

*Second,* as discussed on our call, we believe it is crucial that at least some searches that relate to the primary liability of Purdue (which is integral to the estate claims) are necessary. As a compromise, we propose to substantially reduce the number of custodians subject to searches for both the MDL Search Terms and New Primary Liability Terms. Specifically, we have reduced our proposed custodian list to 40 Prepetition Custodians and 66 New Custodians for the MDL Search Terms and New Primary Liability Terms, as reflected on **Exhibit A**. That reduces our proposed custodians by a total of 39 with respect to these sets of terms, or approximately 30%. Furthermore, out of an abundance of caution, we have continued to be somewhat inclusive in identifying proposed custodians with respect to these sets of terms, but we recognize that you may have developed an understanding about which custodians are likely to have important documents and we would welcome your input about how to narrow these custodian sets further (or to identify any important custodians that we have omitted), and we will consider any such guidance in good faith.

*Third,* as a further compromise, we also narrowed the New Primary Liability Terms as reflected on **Exhibit B** and narrowed the MDL Search Terms (which also go to primary liability) as reflected on **Exhibit C**. We propose that the Debtors apply the Exhibit C narrowed New Primary Liability Terms and Exhibit D narrowed MDL Search Terms *only* to the narrowed list of custodians identified on Exhibit A.

*Fourth*, we also propose to narrow the scope of the New Estate Terms as reflected on **Exhibit D** in an effort to reduce the number of documents returned. While the revised New Estate Terms add some terms that were not among those we supplied in February, we are confident that our inclusion of limiters will greatly reduce the number of documents the revised terms return overall. We propose to run the revised New Estate Terms against the custodians identified in Exhibit D. This is a larger group of custodians than those in Exhibit A, but we are eager to discuss with you and consider your input regarding how to narrow this further.

*Fifth*, we are willing to temporarily defer our request for "Practice Fusion" related custodians and search terms. During our call on Friday March 13, you refused to provide any information relating to the Official Committee's Practice Fusion requests of any kind, and suggested we should discuss those requests with lawyers at Skadden who are representing the Debtors in connection with the Practice Fusion situation. We wrote Ben on March 11 to take him up on his offer to coordinate a call with Skadden and with our white collar partner Paul Butler. We will hold off on pursuing our Practice Fusion discovery until that call occurs, provided it is arranged promptly.

*Finally,* every Sackler was a beneficiary of billions in transfers from Purdue to Sackler trusts, primarily between 2007 and after, and any of those persons could have communications probative of Sackler family knowledge of liability risk at Purdue and their motives for moving huge sums out of the reach of Purdue's creditors and into Sackler trusts. We therefore have prepared a still narrower set of search terms that we ask you to run against the emails of all Sackler family members that were not directors or officers of Purdue but who had a Purdue email address. **Exhibit E** includes those narrow search terms, along with a list of the Sacklers whom we believe had a Purdue email address at some point in time, though we defer to you to completely and accurately identify those custodians.

We believe the foregoing represents a substantial compromise, and will greatly reduce the production burden on the Debtors as compared to our February 4 proposal. In addition, if you will again provide us with "hit reports" once you have run these terms against the proposed custodians, we would be happy to discuss other modifications to further reduce the Debtors' burden. Please let us know if you have questions or wish to discuss.

Best,
Katherine


Katherine Porter
**AKIN GUMP STRAUSS HAUER & FELD** LLP

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.7467 | Internal: 37467
Fax: +1 212.872.1002 | kporter@akingump.com | akingump.com | Bio

2

UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL CONTAINS PRIVILEGED COMMUNICATIONS - TREAT SUBJECT TO PROTECTIVE ORDER

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.