# EXHIBIT 17

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION - TREAT SUBJECT TO PROTECTIVE ORDER



**MITCHELL P. HURLEY**
+1 212.872.1011/fax: +1 212.872.1002
mhurley@akingump.com

August 30, 2020

**VIA E-MAIL**

Benjamin S. Kaminetzky
Charles S. Duggan
James I. McClammy
Margarita Clarens
**Davis Polk & Wardwell LLP**
450 Lexington Ave.
New York, NY 10017
*Counsel to Debtors*

Re: *In re: Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr. S.D.N.Y.)

Dear Counsel:

We write concerning additional issues we have identified with respect to Debtors' privilege logs received August 7 and 15, 2020 (the "Logs").[1] Many of the deficiencies on the Debtors' Logs are similar to those we previously identified with respect to Side A's and Side B's privilege logs, including those identified in letters to those parties' counsel dated August 5, 12, 18, and 20, on which you were copied. Please let us know if you will reconsider your privilege designations within the categories discussed below or provide the information necessary to sustain Debtors' privilege claims, such as applicable engagement agreements as to third-parties on the Logs, no later than **September 2, 2020**, so that we can determine next steps and whether we may need to raise any unresolved issues with Judge Drain.

---

[1] We have identified similar issues with respect to Debtors' numerous privilege logs prepared in connection with the MDL and non-MDL cases based on a limited, preliminary review and reserve our rights to challenge those privilege logs on these and other bases as applicable. We note that because Debtors have not provided "legends" (or in most instances even subject lines or file names) with these logs or otherwise given the Official Committee information to determine the roles/affiliations of individuals appearing on these logs, it is nearly impossible to determine whether the documents and communications have been logged appropriately. We re-urge our request for legends and/or other information sufficient to determine the roles/affiliations of each individual listed on the MDL and non-MDL privilege logs. To the extent we have already identified certain issues addressed herein based on our preliminary review of the MDL and non-MDL logs, we have noted so in this letter and ask that you respond accordingly. However, the Official Committee's review of the MDL and non-MDL logs is ongoing, and subject to your provision of additional information, and the Official Committee therefore reserves its rights to raise further challenges to the entries on those logs.



**Akin Gump**

STRAUSS HAUER & FELD LLP

August 30, 2020
Page 2

**Common Interest**

The logs identify over 2,100 entries as "common interest," but do not supply information sufficient to justify withholding documents on that basis. We again ask that the Debtors please promptly provide answers to the questions below, which previously were supplied to you by email dated August 11, 2020:

1. When did Purdue first enter into a common interest agreement with the Sacklers or their affiliates?

   a. If that agreement was terminated, would you please provide the termination date?

   b. If Purdue entered into more than one such agreement, would you please provide the effective dates for the agreement(s)?

   c. To the extent any agreements are in writing please provide copies (we already have a copy of the only written agreement of which the Official Committee is aware, which appears to be originally dated May 15, 2018).

2. What is the basis of the common interest with the Sacklers or their affiliates? Is the basis opioid litigation only or something else?

3. Did Purdue ever engage any counsel jointly with the Sacklers or any of their affiliates in connection with the opioid crisis? If so:

   a. Please identify such counsel, when each was jointly retained, and the date(s) of termination of the joint engagement, if any.

   b. Please provide a copy of any associated written engagement agreements.

4. On their privilege logs, Side A and Side B each withheld numerous communications from production that involve Davis Polk, Dechert, and/or Quinn Emanuel.

   a. With respect to such communications that include Sacklers who were not then members of the board, the Sacklers apparently intend to claim those



August 30, 2020
Page 3

communications are subject to the common interest doctrine. Would you please review these communications and advise whether you agree that they in fact were exchanged pursuant to a common interest between the Sacklers and the Debtors?

    b. We have [previously sent] copies of the Sackler logs highlighting these communications for your ease of reference. Please note the OPEO confidentiality of the logs.

5. When was the Sacklers' access to the document platform containing Purdue documents terminated?

**Fiduciary/"Good Cause" Exception**

As we have previously advised and discussed, the Official Committee asserts that the fiduciary or "good cause" exception to the attorney-client privilege applies to certain categories of documents Debtors have withheld as privileged. *See, e.g.*, *See Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, 342 B.R. 416, 425 (S.D.N.Y. 2006) (granting unsecured creditor committee's request to set aside debtor's claim of privilege as to several categories of documents because of the "obvious and irreconcilable conflict presented to [debtor] by the Committee's claims" (citing *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970)).

We have previously given you a list of the categories of documents essential to the Official Committee's investigation that should be produced pursuant to the good cause exception, which are repeated below:

1. Transfers made by Debtors that may be subject to avoidance actions, including but not limited to the transfers identified in the Alix Partners's Cash Transfers of Value Analysis [ECF No. 654] and Intercompany and Non-Cash Transfers Analysis [ECF No. 1194];

2. Debtors' solvency or insolvency since at least January 1, 2007;

3. Debtors' attempts to obtain insurance since at least January 1, 2001;



# Akin Gump
STRAUSS HAUER & FELD LLP

August 30, 2020
Page 4

4. Calculation of distributions, including tax distributions, since at least January 1, 2001;[2]

5. Opioid marketing, product liability, opioid-related litigation, opioid-related investigations or governmental inquiries, compliance, suspicious order monitoring programs and abuse and diversion detection programs, opioid abuse and the opioid epidemic, and potential liability related to any of the foregoing; and

6. Matters concerning the 2007 DOJ Settlement and State Consent Judgements, negotiation of the same, and compliance with the same.

Additionally, in response to your inaccurate suggestion that we are seeking a blanket waiver of privilege, we have also attached hereto as **Exhibit 1** a non-exhaustive list of examples of documents on the Logs within each of these categories.[3] We also remain willing to discuss in good faith narrowing or modifying these categories as part of the meet and confer process.

The Official Committee likewise remains hopeful that Debtors will enter into a common interest agreement with it to preserve Debtors' asserted privileges with respect to these documents. As you know, the Sacklers have claimed that they share a common interest with Debtors for certain categories of withheld documents, notwithstanding their clear non-mutuality of interests with Debtors on a variety of issues, including Debtors' ongoing investigation of potential claims against them. *See, e.g.*, Aug. 22, 2020 Letter from A. Lees to M. Hurley. The Official Committee, which represents Debtors' residual beneficiaries, is at least as closely aligned with Debtors as the Sacklers with respect to the categories of documents identified above. Accordingly, without conceding that such an arrangement is proper between the Sacklers and Debtors, the Official Committee in these circumstances would be willing to enter into a common interest agreement with Debtors for the production of these categories of documents based on the common legal interest of investigating any and all estate claims against the Sacklers.

The Official Committee urges Debtors to reconsider their position with regard to these essential categories of documents, including but not limited to those examples listed in Exhibit 1.

---

[2] Categories 1 through 4 are also subject to the crime fraud exception detailed in this letter.

[3] Because in most instances the MDL and non-MDL logs do not even include subject lines or file names associated with their log entries, it is virtually impossible for the Official Committee to identify the entries on these logs within the categories of documents subject to the privilege exceptions the Official Committee has identified. Accordingly, the Official Committee requests that Debtors provide subject lines, file names, or other information sufficient to evaluate these entries.



August 30, 2020
Page 5

If Debtors still refuse to produce the withheld documents pursuant to the good cause exception, and further refuse the proposed common interest compromise, please explain why Debtors are willing to side with the Sacklers to obscure certain responsive information, but will not side with the Official Committee in the investigation of potential claims against the Sacklers.

### Crime-Fraud/At Issue

As we previously have advised, the Official Committee is investigating the extent to which the crime-fraud exception applies to documents withheld by Debtors as privileged. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984) ("[T]here need only be presented a reasonable basis for believing that the objective was fraudulent."); *Amusement Indus. v. Stern*, 293 F.R.D. 420, 427 (S.D.N.Y. 2013) ("the probable cause necessary to sustain the exception is not an overly demanding standard"). The Official Committee has been particularly focused on suspicious transfers out of Debtors to the ultimate benefit of Sackler family members. *See generally* Alix Partners's Cash Transfers of Value Analysis [ECF No. 654]; AlixPartners Intercompany and Non-Cash Transfers Analysis (May 28, 2020) [ECF No. 1194]. As the Department of Justice has observed in its July 30 proof of claim, many of these transfers appear to have been made "with the intent to hinder a recovery by creditors or without receiving reasonably equivalent value for these transfers." As such, the Official Committee does not believe any communications with attorneys discussing or effecting such transfers can be withheld on privilege or work product grounds. *Cf. Cendant Corp. v. Shelton*, 246 F.R.D. 401, 405-06 (D. Conn. 2007) (circumstantial evidence established applicability of crime-fraud exception for suspected fraudulent transfers).

The Official Committee is continuing its investigation; however, from its review to date, it believes communications within at least categories 1-4 listed above (and as further detailed in the non-exhaustive examples provided in Exhibit 1) are subject to production pursuant to the crime-fraud exception. The Official Committee reserves its right to add to these categories as its investigation continues, but asks in the meantime that you please advise whether Debtors will reconsider their privilege assertions over the categories of documents identified above.



August 30, 2020
Page 6

### **Public Relations Firms**[4]

Debtors' Logs contain a number of entries that appear to be to, from, or copying various public relations firms, which as explained in our letters to Side A and Side B, may not be appropriately withheld.  *See* Aug. 5, 2020 Ltr. from M. Hurley to J. Ball and A. Lees; Aug. 12, 2020 Ltr. from M. Hurley to J. Ball and A. Lees.  Although our review is currently ongoing, so far we have identified the following public relations consultants on Debtors' Logs:  McGinn Group, AmeriMerchant, Dezenhall Resources, Teneo (or Teneo Strategies), Risa Heller Communications, Stu Loeser & Co., and Purple Strategies.  Debtors' MDL and non-MDL logs likewise contain hundreds of entries including these same public relations consultants, as well as the following additional public relations firms:  Edelman Holdings, Sard Verbinnen & Co., and the Dilenschneider Group.

### **Lobbyists**

Several entries on the Logs suggest that Debtors are withholding communications and documents exchanged with lobbyists.  Neither the attorney-client privilege nor the work product doctrine protects a lawyer's lobbying or political efforts.  *In re Chevron Corp.*, 749 F. Supp. 2d 141, 165 (S.D.N.Y. 2010); *see also In re Grand Jury Subpoenas*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001) (communications "do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, including advice on matters that may also be the subject of the lobbying efforts") (internal quotation omitted); *P. & B. Marina v. Logrande*, 136 F.R.D. 50, 59 (E.D.N.Y. 1991), *aff'd*, 983 F.2d 1047 (2d Cir. 1992) ("Summaries of legislative meetings, progress reports, and general updates on lobbying activities do not constitute legal advice and, therefore, are not protected by the work-product immunity.").

Presently, we have identified the following firms on the Logs that have lobbied for Purdue per public records:  Wilmer Hale, Capitol Hill Consulting Group (which does not even include attorneys), Constantine Cannon, and Sidley Austin LLP.  Indeed, Debtors' MDL and non-MDL logs include over a thousand entries listing these same lobbying firms.

---

[4] With respect to the various privilege challenges that have been raised, we assume you contend federal common law applies, as you have not identified any applicable state law with respect to any of the entries on your Logs, as is required under Local Rule 26.2(a)(1).  Please let us know if that is not the case, and if so, which state's law you believe applies and to which issues.



August 30, 2020
Page 7

### Accountants

A number of entries on the Logs also include accountants and accounting firm personnel, whose communications generally are not shielded by privilege.  *See* Aug. 18, 2020 Ltr. from M. Hurley to J. Ball; Aug. 20, 2020 Ltr. from M. Hurley to A. Lees.  Although our review is currently ongoing, so far we have identified the following accounting firms on the Logs, as well as on the MDL and non-MDL logs:  Deloitte, Manhattan Review, Grant Thornton, RoeverBroenner GmbH&Co., and Revinova Treuhand AG.  The Logs also include an individual, Michael Costanza, who you have identified as an accountant for the Acorn Foundation Family Office for certain Mortimer Sackler Family Members.

### Investment Advisors

Additionally, the Logs, MDL logs, and non-MDL logs include hundreds of entries featuring individuals associated with investment advising firms, including PJT Partners.  As with any third party, communication with investment advisors generally prevents a valid assertion of privilege as explained in our prior letters to Side A and Side B.  *See* Aug. 18, 2020 Ltr. from M. Hurley to J. Ball; Aug. 20, 2020 Ltr. from M. Hurley to A. Lees.

### Other Consultants

The Logs further include entries involving communications with apparent general third-party consultants, including individuals from Ernst & Young, Venture, Karen Becker Consulting, FactSet Data, Accencio, McKinsey, Cumulus Consulting, Huron Consulting Group, Giuliani Partners, and Iqvia, as well as David Colpman, who you have identified as a consultant regarding "Lic. & Bus. Dev." and Jay Croughwell, who you have identified as a consultant regarding "Manufacturing & QA S."  Debtors' MDL and non-MDL logs likewise contain over 1,500 entries including these same consultants.  As with other advisors (e.g., investment advisors discussed above), these consultants break privilege unless they provide *specialized* services that are *essential* to the attorney's provision of legal advice.  *See* Aug. 18, 2020 Ltr. from M. Hurley to J. Ball; Aug. 20, 2020 Ltr. from M. Hurley to A. Lees.

### Real Estate Firms

Debtors' Logs also include communications with individuals from the real estate firms Jones Lange LaSalle, CBRE, and Benenson Capital Partners.  However, communications with real

UNREDACTED- CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER



August 30, 2020
Page 8

estate brokers and developers are not privileged, and the presence of such third parties on communications typically breaks the privilege even where an attorney is a party. *See* Aug. 18, 2020 Ltr. from M. Hurley to J. Ball; Aug. 20, 2020 Ltr. from M. Hurley to A. Lees.

**Communications with Non-Debtors' Counsel**

The Official Committee has identified numerous individuals on the Logs who appear to be associated with outside law firms but are not indicated as attorneys for Debtors in the legends to the Logs.  These include the following:

| Law Firm | Name / Domain from Legends |
| --- | --- |
| Bär & Karrer | ███████████████ |
| Berkowitz, Trager & Trager, LLC | █████████████ |
| Connecticut Veterans Legal Center | Cathy Wong |
| | Cindy Johnson |
| | Margaret Middleton |
| Connors & Connors, PC | ██████████████ |
| Cruse Scott Henderson & Allen LLP | John Scott |
| Dr. Yitzhak Hess & Partners | Yitzhak Hess |
| Express Scripts | John Vandervoot |
| Gassauer-Fleissner Rechtsanwälte | Wolner Michael |
| Goldfarb & Fleece, LLP | Bruce Leffler |
| | Spencer Stein |
| Gomez-Acebo & Pombo Abogados SLP | Ralph Smith |
| Horton Shields & Knox PC | Jane Dube |
| Howery, Simon, Baker & Murchison | Bart Van Den Broek |
| | Geert Theuws |
| | Maarten Meulenbelt |
| | Marie-Theodora Vandewiele |
| | Shannon Carreen |
| | Willem Hoyng |
| Huff Wilkes, LLP | David Wilkes |
| Law Offices of Edward Pedwell | Todd Pedwell |
| Meyerlustenberger Lachenal | Holzer Simon |
| | Michael Ritscher |



August 30, 2020
Page 9

| Law Firm | Name / Domain from Legends |
|---|---|
| | Simon Holzer |
| Mintz & Gold, LLP | Steve Gold |
| Oliver, Oliver & Waltz PC | J.F. Waltz |
| | James Waltz |
| | John Oliver |
| Pam May Law Firm, P.S.C. | Pam May |
| Ritscher & Partner AG | ████████████ |
| Stroock & Stroock & Lavan LLP | Justin Steinmark |
| | Margot Wainger |
| | William Campbell |
| Uria Menendez | ████████████ |
| Veirano Advogados | Fatima Cristina do Amaral Ferraz |
| | Fernando Braune |
| | Guilherme Peres Potenza |
| | Maria Paula De Mello Ribeiro |
| | Paula Santos e Silva |
| | Rafael Urbano Gimenes |
| | Sinara Travisani Cardozo |
| Williams Venker & Sanders, LLC | Lisa Larkin |
| | Steven Sanders |

Please confirm that the names listed above did not serve as counsel for Debtors, and if not, why their presence on communications does not destroy privilege. We have identified numerous entries where one or more of the above individuals appears on communications that are not marked as being subject to the common interest doctrine.

**Other Third-Party Participants**

In addition to the categories addressed above, Debtors' Logs, as well as the MDL and non-MDL logs, claim attorney-client privilege and/or work product protection with respect to communications copying various other third-party participants who appear to break privilege, as



August 30, 2020
Page 10

listed below with their apparent roles: [5]

| Name | Apparent Role |
| --- | --- |
| David Stark | Officer at TEVA USA |
| Kevin Mannix | Investor Relations at TEVA USA |
| Kerry Sulkowicz | Principal at Boswell Group |
| Lynn Henkhaus | Employee at ILMO Products Company |
| Jamie/Josie Robinson | Employee at Smith & Carson |
| Brian Flaherty | Assistant Professor at New York University |
| Richard Stewart | Professor at New York University Law School |
| Connie Milnes | Unknown |
| Isadore Rosenfeld | Unknown |
| Jeffrey Ketchman | Unknown |
| John Mcneill | Unknown |
| Judith Udell | Unknown |
| ███████████ | Unknown |
| ███████████ | Unknown |
| ███████████ | Unknown |
| Niki Ketchman | Unknown |
| Thomas Freeman | Unknown |
| ███████████ | Unknown |
| Guillem Filhol | Advisor at PricewaterhouseCoopers |
| Pawan Thampi | Advisor at PricewaterhouseCoopers |
| Brian Riewerts | Advisor at PricewaterhouseCoopers |
| ███████████ | News Outlet |
| ███████████ | News Outlet |
| ███████████ | News Outlet |
| ███████████ | News Outlet |
| ███████████ | News Outlet |
| ███████████ | News Outlet |

---

[5] According to Chautney Oluwole's August 25, 2020 email, Debtors are still seeking to confirm the role and title information for Craig Bowman and Jonathan Eilian.  Accordingly, the Official Committee reserves the right to raise additional issues with respect to entries on Debtors' Logs that include those individuals.



**Akin Gump**
STRAUSS HAUER & FELD LLP

August 30, 2020
Page 11

|  |  |
|---|---|
|  | News Outlet |
|  | News Outlet |
| Gregory Wood | United States Department of Justice |
| Michael Lewis | United States Department of Justice |
| Jacqueline Honoway | United States Department of Justice |
| Robert Gleason | United States Department of Justice |
| Scott Kurtz | United States Department of Justice |
| James Arnold | United States Department of Justice |
| Leonard Levin | United States Department of Justice |
| Louis Reedt | United States Sentencing Commission |
| Josh Trent | United States House of Representatives |
|  | United States Food and Drug Administration |
|  | Connecticut Office of the Attorney General |
| Christopher M. Haddad | Connecticut Office of the Attorney General |
| Michael Cole | Connecticut Office of the Attorney General |
| Richard Kehoe | Connecticut Office of the Attorney General |
| Bob Sharpe | Florida Department of Health |
| George Kitchens | Florida Department of Health |
| Jerry Wells | Florida Department of Health |
|  | Food and Drug Administration |
| Bill McConagha | Food and Drug Administration |
| Carol Barstow | Food and Drug Administration |
| Charlie Cichon | Maryland Department of Health |
| KCammarata@dhmh.state.md.us | Maryland Department of Health |
| Danna Droz | State of Kentucky |
| Joshua Slen | State of Vermont |
| Robert Kerns | State of Virginia |
|  | Centers for Medicare & Medicaid Services – Department of Health & Human Services |
| Christian Hampp | Food & Drug Administration – Department of Health & Human Services |
| Craig Miner | Centers for Medicare & Medicaid Services – Department of Health & Human Services |
| Deborah Goodman | United States Department of Health and Human Services |



August 30, 2020
Page 12

| Deirdre Duzor | Centers for Medicare & Medicaid Services – Department of Health & Human Services |
| Keshia Thompson | Office of Inspector General – Department of Health & Human Services |
| Larry Reed | Centers for Medicare & Medicaid Services – Department of Health & Human Services |
| Ann Rugg | Vermont Agency of Human Services |
| Eileen Elliott | Vermont Agency of Human Services |
| John Dick | Vermont Agency of Human Services |
| Joseph Jacobs | Vermont Agency of Human Services |
| Paul Wallace-Brodeur | Vermont Agency of Human Services |
| Samantha Haley | Vermont Agency of Human Services |
| Susan Harritt | Vermont Agency of Human Services |
| Herb Olson | Vermont Department of Financial Regulation |
| Paulette Thabault | Vermont Department of Financial Regulation |
| Julie Brill | Vermont Office of the Attorney General |
| Rose Hayes | Vermont Office of the Attorney General |
| Chris Winters | Vermont Secretary of State Department |
| Ashley Taylor | Virginia Office of the Attorney General |

As discussed with respect to the categories of third-party documents above, the attorney-client privilege and work product doctrine require confidentiality, among other things, and ordinarily cannot be asserted with respect to documents to which non-clients are party, or that are disclosed to such third parties. Aug. 18, 2020 Ltr. from M. Hurley to J. Ball; Aug. 20, 2020 Ltr. from M. Hurley to A. Lees.

**Communications with Non-Affiliates**

The Official Committee has identified several entries on the Logs that include personnel from entities that are not affiliates of the Debtors (the "Non-Affiliates").[6]  Because these Non-Affiliates are unrelated third parties, the Official Committee is concerned that confidentiality of

---

[6]  To date, the Official Committee has identified the following Non-Affiliates on the Logs: Infinity Pharmaceuticals; Single Family Office; Inpendra Limited; Acorn Foundation; Cheyenne Petroleum Company; Rafa Laboratories, Ltd.; and Cipla, Ltd.  The Official Committee reserves the right to identify others as they are uncovered.



August 30, 2020
Page 13

the associated communications has been destroyed, and any privilege has been lost.  *See Music Sales Corp. v. Morris*, No. 98 Civ. 902 (SAS) (FM), 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999) ("The voluntary disclosure of privileged attorney-client communications to unrelated third parties typically constitutes a waiver of the privilege.").  It is not apparent from the Logs that the Non-Affiliates have an *identical* legal interest to the Debtors that was the subject of the withheld communication.  *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (when evaluating the common interest "[t]he key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial") (internal quotation omitted).  Second, Debtors have failed to demonstrate common ownership or control sufficient to raise a common interest.  *See Music Sales Corp.*, 1999 WL 974025, at *7.  In fact, because the Non-Affiliates are separate corporate entities wholly removed from Debtors' corporate structure, the requisite level of common ownership or control cannot exist as to the Non-Affiliates.  *Cf. Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 503 (E.D.N.Y. 1986) (finding the attorney-client privilege protected communications shared among related companies who shared a "single grandparent" corporation).  Further, several of the Non-Affiliates are entities with ties to only one side of the Sackler family.

Therefore, we request that Debtors reconsider their privilege designations with respect to documents that include the Non-Affiliates and produce the documents or provide a more detailed basis for withholding these documents as privileged, including affidavits to support any such factual assertions.

### Communications Without Counsel

The Official Committee has identified over 350 parent emails on the Logs without any attorneys in the "to," "from," or "cc" fields—including the Non-Debtors' counsel listed above. All such entries were withheld entirely from production, and all but 10 include an assertion of attorney-client privilege.  At least 200 of these entries include descriptions alleging the emails were "providing legal advice."

"[T]he attorney-client privilege generally applies only to communications between the attorney and the client . . . ."  *Ackert*, 169 F.3d at 139.  While it is possible that attorney-client privilege and/or work product protection may protect certain communications despite counsel's absence, the numerous entries without attorneys on Debtor's Logs that are described as "providing" legal advice raises concerns.  The Official Committee requests that you ensure all non-attorney communications are properly being withheld from production.



August 30, 2020
Page 14

### Stuart Baker and Jonathan White

Debtors have withheld over 2,900 documents and communications on the Logs based on the fact that Stuart Baker or Jonathan White sent, received, or was copied on the communications. Debtors have likewise withheld close to another 3,000 documents and communications on the MDL and non-MDL logs with Stuart Baker and/or Jonathan White.  While we understand that each of these individuals is a lawyer, that does not automatically confer privilege status for every item on which they appear.  *See* Aug. 18, 2020 Ltr. from M. Hurley to J. Ball; Aug. 20, 2020 Ltr. from M. Hurley to A. Lees.

The Logs entries containing Stuart Baker and Jonathan White do not delineate when they are participating in a communication in their business or legal capacities.  The following is only a sample of generic privilege descriptions that have been applied to large numbers of emails including either Mr. Baker or Mr. White:

| Privilege Explanation | Entries with Baker |
|---|---|
| Email correspondence providing legal advice regarding general corporate advice. | 311 |
| Email correspondence providing legal advice regarding contract drafting and/or review. | 167 |
| Email correspondence seeking legal advice regarding general corporate advice. | 121 |
| Email providing legal advice re: compliance with regulatory or other legal requirements | 311 (MDL and non-MDL) |
| Email providing information for the purpose of requesting legal advice re: compliance with regulatory or other legal requirements | 275 (MDL and non-MDL) |
| Email reflecting legal advice re: compliance with regulatory or other legal requirements | 142 (MDL and non-MDL) |

| Privilege Explanation | Entries with White |
|---|---|
| Email correspondence providing legal advice regarding general corporate advice. | 22 |
| Email providing legal advice re: communications with media | 10 (MDL and non-MDL) |



August 30, 2020
Page 15


        These are far from the only examples of generic entries including either Mr. Baker or Mr. White; but as the breadth of these examples illustrates, the Logs do not allow the Official Committee to delineate in what capacity Mr. Baker or Mr. White was serving from one entry to the next.  Indeed, even where Mr. Baker or Mr. White was serving as an attorney, the Official Committee cannot discern from the Logs whether Messrs. Baker or White were serving as attorneys to Debtors, Side B, or Side A (in which case the communications could only potentially avoid waiver under common interest or work product doctrine).

        At a minimum, the Official Committee requests that you supplement the Logs to indicate whether Messrs. Baker and White are participating in communications based on their business or legal capacities for the above generic descriptions, and if serving in a legal capacity, whether they are representing Debtors.  Please note that the Official Committee's review of the Logs is ongoing, and the Official Committee continues to reserve its right to challenge specific entries including Messrs. Baker or White.

                                                        * * *

        Please contact us if you have any questions or want to discuss any of the foregoing.  As noted above, we ask that you provide the information or documents requested herein no later than **September 2, 2020**.  As you know, expedited consideration is necessary so that we may raise any unresolved issues with Judge Drain in accordance with the Court's July 23, 2020 admonition that the Official Committee raise "important privilege issues" promptly.

        The foregoing is not intended to be a comprehensive catalogue of all of the Official Committee's concerns relating to Debtors' Logs and other positions taken in discovery in these cases, which the Official Committee continues to review.  Nothing herein constitutes a waiver or relinquishment of any of the Official Committee's claims, defenses, rights, or remedies.

                                        Sincerely,

                                        */s/ Mitchell Hurley*
                                        Mitchell P. Hurley



August 30, 2020
Page 16


cc:    Andrew Troop (Pillsbury Winthrop Shaw Pittman LLP)
        Andrew Alfano (Pillsbury Winthrop Shaw Pittman LLP)
        Jason Sharp (Pillsbury Winthrop Shaw Pittman LLP)
        Kenneth H. Eckstein (Kramer Levin Naftalis & Frankel LLP)
        Rachael Ringer (Kramer Levin Naftalis & Frankel LLP)



August 30, 2020
Page 17

### EXHIBIT 1

**NON-EXHAUSTIVE LIST OF EXAMPLE CONTROL NUMBERS FOR PRIVILEGE LOG ENTRIES THAT FALL WITHIN THE FIDUCIARY/GOOD CAUSE EXCEPTION**

| | | |
|---|---|---|
| PL-00000008 | PL-00001845 | PL-00003290 |
| PL-00000189 | PL-00001915 | PL-00003307 |
| PL-00000190 | PL-00001916 | PL-00003308 |
| PL-00000200 | PL-00002266 | PL-00003309 |
| PL-00000216 | PL-00002267 | PL-00004400 |
| PL-00000217 | PL-00002268 | PL-00004411 |
| PL-00000357 | PL-00002356 | PL-00004608 |
| PL-00000720 | PL-00002364 | PL-00004678 |
| PL-00000928 | PL-00002412 | PL-00004682 |
| PL-00000929 | PL-00002413 | PL-00004756 |
| PL-00000930 | PL-00002414 | PL-00006738 |
| PL-00000968 | PL-00002439 | PL-00007493 |
| PL-00000969 | PL-00002440 | PL-00007495 |
| PL-00000982 | PL-00002441 | PL-00007674 |
| PL-00000983 | PL-00002446 | PL-00007732 |
| PL-00000984 | PL-00002469 | PL-00008168 |
| PL-00001008 | PL-00002470 | PL-00008170 |
| PL-00001009 | PL-00002471 | PL-00008172 |
| PL-00001115 | PL-00002798 | PL-00008183 |
| PL-00001196 | PL-00002799 | PL-00008189 |
| PL-00001663 | PL-00002833 | PL-00009015 |
| PL-00001718 | PL-00002834 | PL-00010053 |
| PL-00001719 | PL-00002843 | PL-00012010 |
| PL-00001720 | PL-00002844 | PL-00012011 |
| PL-00001840 | PL-00002856 | PL-00012059 |
| PL-00001841 | PL-00002857 | PL-00012146 |
| PL-00001842 | PL-00003287 | PL-00012215 |
| PL-00001843 | PL-00003288 | |
| PL-00001844 | PL-00003289 | |

# EXHIBIT 18



**Akin Gump**

STRAUSS HAUER & FELD LLP

**MITCHELL P. HURLEY**
+1 212.872.1011/fax: +1 212.872.1002
mhurley@akingump.com

August 30, 2020

**VIA E-MAIL**

Jasmine Ball
**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
*Counsel to Sackler Family Side A
(Mortimer) ICSPs, ACSPs, and Entities*

Re:     *In re: Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr. S.D.N.Y.)

Dear Jasmine:

Thank you for your August 23, 2020 response to our August 18, 2020 letter concerning deficiencies on Side A's privilege log (the "Log").[1]  We write to confirm your commitment to reconsidering your privilege designations as to numerous categories of documents on the Log and producing designated documents and an amended privilege log.

In particular, we understand from your letter that you are re-reviewing all Log entries involving third parties and have already identified 16 individuals or entities whose communications you previously logged that are not privileged.  You are also re-reviewing all entries involving Special Committee members, and have determined that nine documents on your Log as to this category are not privileged.[2]  Finally, you are re-reviewing all entries where Stuart Baker or Jonathan White are the only attorneys listed, given your recognition that they acted in both legal and non-legal capacities.  Please confirm by **September 2** that you will produce all de-designated documents and an amended privilege log no later than **September 8**.  Please also confirm which (if any) of your re-review efforts are reflected in the August 28 revised privilege log, as our preliminary analysis suggests many are not.

Your suggestions that you ***may*** reconsider other categories of documents to the extent the Official Committee provides further information or "prioritizes" the issues ignores our prior

---

[1] At 11:01 pm on August 28, Side A produced an updated log that purports to include over 3,000 new entries and adds over 800 new entries to the accompanying appendix.  The Official Committee reserves its rights to challenge the privilege designations in this log, including but not limited to on the bases described herein.

[2] We note that in your August 28 log, control nos. 23209, 23210, 23216, 23221, and 23223, have been removed, but 23351, 23352, 23366, and 23367 remain on the log.

PUBLICLY FILED PER STIPULATION [ECF 2140]



August 30, 2020
Page 2

correspondence and is unproductive.  As you know, over the past several weeks, the Official Committee has sent you numerous letters and emails and has had calls raising these privilege issues.  At this point, the Official Committee has provided more than ample information for Side A to reconsider its numerous over-inclusive privilege designations.  In response, Side A has consistently attempted to shift its burden to establish privilege back on the Official Committee by requesting granular details and line-by-line challenges to Side A's Log.  Such requests come despite the fact that Side A has failed to provide critical information (such as assertions of common interest doctrine or other non-waiver explanations) on a similar line-by-line basis.  Side A has therefore taken a completely backwards approach to asserting privilege.  *See, e.g.*, *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, . . . a burden not discharged by mere conclusory or ipse dixit assertions.  The party invoking the privilege also has the burden to show that the privilege has not been waived.") (internal quotations and citations omitted).

Nevertheless, as Side A has committed to re-reviewing other areas of the Log, please confirm by **September 2** that you will also prioritize your efforts on the following categories and produce all de-designated documents and an amended privilege log by **September 8**.

- An entry-by-entry review and designation of all documents withheld on the basis of common interest.  At a minimum, Side A should do so for any documents remaining on the Log following re-review of the above categories (i.e., third parties, Special Committee, and Baker/White) since any added burden of designating a document as "common interest" during such re-review is extremely light.

- During your re-review of the Special Committee documents, please also reconsider your purported grounds for assertion of the common interest doctrine in light of applicable law.  The Official Committee is troubled by Side A's assertion that its members shared a common interest with the Special Committee with respect to "(*i*) opposition to allegations that Purdue and its Former Directors engaged in supposedly unlawful marketing practices and (*ii*) negotiating a global settlement to the prescription opioid litigation."  A shared personal stake in litigation—much less a shared business interest—does not establish a common legal interest sufficient to avoid waiver.  *See, e.g.*, *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) (rejecting application of common interest doctrine because, "[a]lthough Shamis and BankBoston would both benefit from a judgment . . . they do not share identical legal interests"); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447-48 (S.D.N.Y. 1995) ("[T]he common interest doctrine



August 30, 2020
Page 3

does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation."). Among other things, the Special Committee exists to investigate misconduct of the Company and its directors and officers in certain circumstances. Indeed, as to the global settlement for which you claim a common interest with the Special Committee, the Special Committee is currently investigating whether that Settlement and the releases it would provide your clients are fair and reasonable or whether the Company should pursue claims against your clients. Given that posture, it frankly seems impossible that the Special Committee could share an identical (or near-identical) legal interest with Purdue employees, executives, and officers accused of misconduct.

- Promptly produce or amend the Log entries for the over 450 non-attorney emails (plus any corresponding attachments) that are described as "[r]eflecting an intent to seek legal advice." As stated in our August 18 letter, this is an invalid privilege assertion. A list of control numbers for such parent emails is attached to this letter as **Exhibit A**.[3] This list may not be fully comprehensive of the entries on the Log falling within this category, and the Official Committee reserves its right to challenge additional entries on this basis.

- In an August 20 email, Elizabeth Scott noted that Kathe Sackler appears on 17 Log entries with a Debevoise email address where no other attorneys are present. You have since provided additional information with respect to two of those entries: Control nos. 17745 and 25138. Please produce or amend the Log with respect to the other 15. For reference, a list of corresponding control numbers is attached as **Exhibit B**.

- With respect to the issues the Official Committee has identified in connection with the crime-fraud and at-issue doctrines, we note that you have not disagreed with our characterization of the law but rather have requested examples of documents falling within these exceptions. While the Official Committee does not believe it has an obligation to identify such documents on an entry-by-entry basis, attached to this letter as **Exhibit C** is a *non-exhaustive* list of *example* control numbers for communications the Official Committee believes are within the categories of documents subject to the crime-fraud and/or at-issue exceptions, as set forth in the Official Committee's August 18 letter. Please review and let us know promptly if Side A will agree to de-designate and produce these documents, as well as others within the categories the Official Committee has identified.

---

[3] Although the Official Committee is hesitant to provide this list of control numbers out of concern that Side A will see no need to revisit Log entries beyond the numbers provided, we provide them here to crystalize any disputed issues as quickly as possible in case they need to be raised with the Court.



August 30, 2020
Page 4

If you do not let us know by **September 2** that you will agree to re-review the above categories of documents and produce all de-designated documents and an amended privilege log no later than **September 8**, we will assume that we are at an impasse.

Finally, as for the other categories of documents Side A continues to improperly withhold as privileged despite the Official Committee's numerous letters, emails, and calls over the last few weeks—including documents with public relations firms and communications with government investigative agencies—it appears that no agreement can be reached and that further negotiations are pointless.

* * *

Please feel free to contact us if you have any questions or wish to discuss any of the foregoing. The Official Committee's review is ongoing, and we reserve the right to raise additional issues at a later date, including on a categorical basis where appropriate.

Sincerely,

*/s/ Mitchell Hurley*
Mitchell P. Hurley

cc:   Marshall Huebner (Davis Polk & Wardwell LLP)
      Ben Kaminetzky (Davis Polk & Wardwell LLP)
      Charles Duggan (Davis Polk & Wardwell LLP)
      James McClammy (Davis Polk & Wardwell LLP)
      Margarita Clarens (Davis Polk & Wardwell LLP)
      Chautney M. Oluwole (Davis Polk & Wardwell LLP)
      Andrew Troop (Pillsbury Winthrop Shaw Pittman LLP)
      Andrew Alfano (Pillsbury Winthrop Shaw Pittman LLP)
      Jason Sharp (Pillsbury Winthrop Shaw Pittman LLP)
      Kenneth H. Eckstein (Kramer Levin Naftalis & Frankel LLP)
      Rachael Ringer (Kramer Levin Naftalis & Frankel LLP)



August 30, 2020
Page 5

<u>EXHIBIT A</u>

**NON-EXHAUSTIVE LIST OF EXAMPLE CONTROL NUMBERS FOR PRIVILEGE
LOG ENTRIES FOR NON-ATTORNEY PARENT EMAILS**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 33 | 2620 | 5802 | 8039 | 9523 | 10160 | 11078 | 12474 | 13241 | 14455 | 15690 |
| 35 | 2621 | 5803 | 8055 | 9525 | 10161 | 11303 | 12476 | 13252 | 14509 | 15721 |
| 159 | 2622 | 5804 | 8064 | 9542 | 10162 | 11397 | 12478 | 13288 | 14512 | 15782 |
| 380 | 2829 | 5805 | 8065 | 9543 | 10163 | 11423 | 12503 | 13289 | 14533 | 15855 |
| 443 | 2928 | 5817 | 8068 | 9579 | 10380 | 11461 | 12506 | 13355 | 14534 | 15944 |
| 685 | 2955 | 5818 | 8137 | 9592 | 10770 | 11625 | 12507 | 13358 | 14642 | 15948 |
| 686 | 2956 | 5879 | 8300 | 9593 | 10772 | 11636 | 12508 | 13454 | 14657 | 16091 |
| 709 | 3008 | 5955 | 8302 | 9594 | 10907 | 11637 | 12509 | 13455 | 14658 | 16112 |
| 710 | 3074 | 5973 | 8339 | 9595 | 10910 | 11804 | 12510 | 13456 | 14670 | 16113 |
| 711 | 3615 | 6078 | 8620 | 9597 | 10911 | 11805 | 12511 | 13457 | 14762 | 16206 |
| 722 | 3763 | 6199 | 8621 | 9598 | 10912 | 11806 | 12512 | 13458 | 14807 | 16279 |
| 728 | 3833 | 6323 | 8622 | 9599 | 10913 | 11807 | 12513 | 13459 | 14808 | 16300 |
| 729 | 3842 | 6324 | 8681 | 9600 | 10914 | 11808 | 12514 | 13460 | 14809 | 16306 |
| 845 | 3890 | 6325 | 8774 | 9601 | 10915 | 11809 | 12515 | 13708 | 14811 | 16340 |
| 1077 | 4202 | 6435 | 8780 | 9602 | 10916 | 11810 | 12516 | 13710 | 14812 | 16343 |
| 1079 | 4245 | 6437 | 8781 | 9603 | 10917 | 11811 | 12517 | 13711 | 14888 | 16386 |
| 1086 | 4391 | 6709 | 8782 | 9699 | 10918 | 11857 | 12518 | 13866 | 14915 | 16399 |
| 1256 | 4957 | 6710 | 8897 | 9778 | 10919 | 11861 | 12519 | 13872 | 14919 | 16400 |
| 1455 | 5077 | 6748 | 8914 | 9807 | 10920 | 11996 | 12521 | 13873 | 15036 | 16441 |
| 1486 | 5142 | 7484 | 8961 | 9960 | 10921 | 12019 | 12522 | 13874 | 15157 | 16455 |
| 1862 | 5285 | 7499 | 8969 | 9962 | 10922 | 12036 | 12523 | 13876 | 15165 | 16457 |
| 2137 | 5290 | 7500 | 8970 | 9963 | 10923 | 12093 | 12524 | 13878 | 15166 | 16458 |
| 2231 | 5294 | 7543 | 9306 | 9964 | 10924 | 12101 | 12525 | 14047 | 15201 | 16459 |
| 2232 | 5311 | 7650 | 9309 | 10083 | 10925 | 12118 | 12526 | 14290 | 15252 | 16466 |
| 2311 | 5312 | 7731 | 9510 | 10113 | 10926 | 12119 | 12527 | 14311 | 15268 | 16668 |
| 2517 | 5421 | 7755 | 9517 | 10116 | 10927 | 12120 | 12720 | 14327 | 15407 | 16725 |
| 2616 | 5433 | 7860 | 9519 | 10125 | 10928 | 12121 | 12783 | 14331 | 15456 | 16726 |
| 2617 | 5542 | 7870 | 9520 | 10126 | 10929 | 12379 | 13046 | 14345 | 15534 | 16727 |
| 2618 | 5678 | 7871 | 9521 | 10134 | 10954 | 12417 | 13222 | 14348 | 15535 | 16728 |
| 2619 | 5764 | 7946 | 9522 | 10159 | 11069 | 12453 | 13227 | 14453 | 15615 | 16729 |

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER



**Akin Gump**

STRAUSS HAUER & FELD LLP

August 30, 2020
Page 6

| | | | | |
|---|---|---|---|---|
| 17150 | 19855 | 28593 | 30439 | 17906 |
| 17154 | 20366 | 28742 | 30508 | 17907 |
| 17157 | 20732 | 28762 | 30536 | 18354 |
| 17167 | 21680 | 28851 | 30546 | 18998 |
| 17219 | 23373 | 28915 | 30617 | 19008 |
| 17293 | 23449 | 28919 | 30678 | 19012 |
| 17668 | 23536 | 28977 | 30717 | 19016 |
| 17776 | 24383 | 29106 | 30759 | 19104 |
| 17877 | 24690 | 29141 | 30879 | 19242 |
| 18202 | 24709 | 29323 | 30929 | 22784 |
| 18298 | 24816 | 29526 | 30978 | 23266 |
| 18355 | 25602 | 29580 | 31030 | 25788 |
| 18671 | 25988 | 29596 | 31031 | 26925 |
| 18907 | 26273 | 29644 | 31118 | 26962 |
| 18908 | 26274 | 29681 | 31234 | 27555 |
| 19075 | 26285 | 29769 | 31272 | 27556 |
| 19171 | 26286 | 29906 | 31394 | 27558 |
| 19172 | 26287 | 30038 | 17875 | 27573 |
| 19173 | 26783 | 30088 | 17876 | 27591 |
| 19296 | 26808 | 30146 | 17878 | 27592 |
| 19323 | 26810 | 30186 | 17879 | 27609 |
| 19696 | 26926 | 30193 | 17880 | 27615 |
| 19699 | 26963 | 30347 | 17902 | 30691 |
| 19705 | 27137 | 30375 | 17903 | |
| 19706 | 27138 | 30395 | 17904 | |
| 19854 | 27238 | 30396 | 17905 | |



August 30, 2020
Page 7

## EXHIBIT B

### LIST OF CONTROL NUMBERS FOR PRIVILEGE LOG ENTRIES
### WITH KATHE SACKLER DEBEVOISE EMAIL AND NO ATTORNEYS

18156
21578
21582
22203
22206
22669
22785
24821
25208
25327
26356
21577
22202
25003
25397



**Akin Gump**

STRAUSS HAUER & FELD LLP

August 30, 2020
Page 8

## EXHIBIT C

## NON-EXHAUSTIVE LIST OF EXAMPLE CONTROL NUMBERS FOR PRIVILEGE LOG ENTRIES THAT FALL WITHIN THE CRIME-FRAUD/AT-ISSUE EXCEPTIONS

| | | | |
|---|---|---|---|
| 137 | 6031 | 7996 | 29319 |
| 138 | 6032 | 7997 | 29329 |
| 571 | 6033 | 8016 | 9445 |
| 678 | 6034 | 8017 | 29334 |
| 679 | 6079 | 8018 | 29337 |
| 680 | 28505 | 8019 | 9557 |
| 681 | 28506 | 8052 | 9558 |
| 965 | 6147 | 8053 | 9669 |
| 966 | 28508 | 28909 | 9670 |
| 28370 | 6295 | 28910 | 10006 |
| 1972 | 6332 | 8696 | 10007 |
| 2629 | 6393 | 8697 | 10008 |
| 2650 | 6421 | 8698 | 10009 |
| 2651 | 6430 | 8699 | 10010 |
| 2652 | 6431 | 8700 | 10011 |
| 2664 | 6457 | 8701 | 10012 |
| 2665 | 6458 | 8709 | 10013 |
| 2667 | 6470 | 8922 | 10014 |
| 2668 | 6471 | 8923 | 10015 |
| 28428 | 6476 | 8924 | 10016 |
| 28432 | 6477 | 8925 | 10017 |
| 28433 | 6573 | 8926 | 10018 |
| 28439 | 6574 | 8927 | 10019 |
| 5275 | 6662 | 29147 | 10020 |
| 5278 | 6674 | 9207 | 10021 |
| 5279 | 6940 | 9334 | 10022 |
| 5280 | 28625 | 29294 | 10023 |
| 5359 | 28626 | 29295 | 10028 |
| 5819 | 28634 | 29296 | 10029 |
| 5930 | 7991 | 29308 | 10030 |
| 5931 | 7992 | 29314 | 10033 |
| 6030 | 7995 | 29315 | 10034 |

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION TREAT SUBJECT TO PROTECTIVE ORDER

**Akin Gump**

STRAUSS HAUER & FELD LLP

August 30, 2020
Page 9

| | | | |
|---|---|---|---|
| 10035 | 11877 | 15206 | 24851 |
| 10036 | 11878 | 15392 | 24859 |
| 10037 | 11879 | 15393 | 26990 |
| 10038 | 11938 | 15654 | |
| 10039 | 13122 | 15655 | |
| 10040 | 30395 | 15656 | |
| 10041 | 13167 | 16167 | |
| 10042 | 13168 | 16168 | |
| 10043 | 13188 | 16484 | |
| 10044 | 13189 | 16485 | |
| 10045 | 13190 | 16794 | |
| 10046 | 13191 | 16795 | |
| 10047 | 13192 | 17061 | |
| 10048 | 13193 | 20821 | |
| 29696 | 13219 | 20822 | |
| 29699 | 13368 | 20824 | |
| 11050 | 13369 | 20825 | |
| 11057 | 13370 | 20831 | |
| 11058 | 13527 | 20833 | |
| 11059 | 13957 | 20864 | |
| 11061 | 14151 | 20866 | |
| 11068 | 14152 | 23528 | |
| 11069 | 14382 | 23529 | |
| 11071 | 14383 | 23583 | |
| 11073 | 14560 | 23785 | |
| 11361 | 14578 | 23824 | |
| 11363 | 14579 | 23841 | |
| 11364 | 14580 | 24208 | |
| 11365 | 14581 | 24209 | |
| 11611 | 14582 | 24210 | |
| 11817 | 14583 | 31245 | |
| 11820 | 14586 | 31246 | |
| 11821 | 14587 | 31247 | |
| 11822 | 14592 | 24212 | |
| 29977 | 14648 | 24213 | |
| 11875 | 30701 | 24215 | |
| 11876 | 15205 | 24835 | |

# EXHIBIT 19



**MITCHELL P. HURLEY**
+1 212.872.1011/fax: +1 212.872.1002
mhurley@akingump.com

August 30, 2020

**VIA E-MAIL**

Alex Lees
Milbank LLP
55 Hudson Yards
New York, NY 10001
Counsel to Sackler Family Side B
(Raymond) ICSPs, ACSPs, and Entities

  Re: *In re: Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr. S.D.N.Y.)

Dear Alex:

  Thank you for your August 22, 2020 response to our letter dated August 20, 2020 regarding Side B's privilege log deficiencies.  We write to confirm your commitment to reconsidering your privilege designations as to various categories of documents and producing certain improperly withheld documents.

  In particular, you committed to removing the following documents from your privilege logs and producing them in unredacted form:

- PS-00024728, PS-00700128, PS-00696254, PS-00142096, PS-01003509, and RS0852774;

- Documents corresponding to log entries with Ernst & Young (including PS-01163388, PS-01163441, PS-01163386, and PS-01163446); and

- Documents corresponding to log entries with MG Mobiles India PVT Ltd. (including PS-00734840 / RSF00055195).

  You have also committed to amending your privilege logs to provide revised descriptions in connection with ███████████████, Jason Krellman, and Jerry Gliklich, and to remove the asterisk next to Kathe Sackler's name that erroneously denoted her as a lawyer.

  Additionally, you have committed to re-reviewing your privilege designations and/or conferring with other parties as to the privilege designations for the following:  Management Revisions Ltd.; Joerg Fischer (including with his ██████████ and ██████████ addresses);



**Akin Gump**

STRAUSS HAUER & FELD LLP

August 30, 2020
Page 2

Purple Strategies; Evercore Group LLC; and Jonathan White.

Please confirm by **September 2** that you will re-review your privilege log, produce documents you no longer consider privileged, and amend your log by **September 8**. For documents you are submitting to other parties to assess privilege status, please also confirm by **September 2** that those have been sent to the proper parties for review.

For privilege log entries for which you have refused to revise privilege designations, including those involving Alex Troy, ███████████████████████, Joseph Valentino,[1] Adam Russell, Dina Ligotino, Itziar Duran, Jacquie Cox, Stacy Latocha Newelt, Steve Miller, Kenneth Buckfire, and Stuart Baker, it appears that we have reached an impasse.

There are a few additional categories where the parties appear to be at an impasse, but we request that you reconsider Side B's position. These include the following:

- Special Committee. Please reconsider your purported grounds for assertion of the common interest doctrine with respect to the Special Committee members. Your August 22 letter suggests that Side B believes communications are shielded by the common interest doctrine merely because the parties to the communications are not adverse. But this is not the standard for establishing a common legal interest. *See Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) ("The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.") (quoting *N. River Ins. Co. v. Columbia Cas. Co.*, No. 90 Civ. 2518, 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995)). Moreover, the Official Committee is troubled by Side B's assertion that its members shared a common interest with the Special Committee concerning "opioid litigation in which Purdue and [y]our clients were sued jointly on the same facts and same legal theories." A shared stake in litigation does not establish a common legal interest sufficient to avoid waiver. *See, e.g.*, *Shamis*, 34 F. Supp. 2d at 893 ("Indeed, sharing a desire to succeed in an action does not create a 'common interest.'"); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447-48 (S.D.N.Y. 1995) ("[T]he common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation."). Among other things, the Debtors have said that the Special Committee exists to investigate misconduct of the

---

[1] Your August 22 letter states only that "Mr. Valentino is a lawyer." However, it is not apparent from your Logs and appendix whether Mr. Valentino was providing general "trust and tax" advice or actual legal advice in his capacity as Richard Sackler's attorney. If Mr. Valentino only appears on the Logs in a legal capacity and is providing legal advice in that capacity, please confirm that to the Official Committee as soon as possible.



August 30, 2020
Page 3

Company and its directors and officers in certain circumstances.  In that regard, Debtors have indicated that the Special Committee is currently investigating whether a global settlement with respect to the litigation upon which you claim a common interest and the releases it would provide your clients are fair and reasonable or whether the Company should pursue claims against your clients.  Given that posture, it frankly seems impossible that the Special Committee could share an identical (or near-identical) legal interest with Purdue employees, executives, and officers accused of misconduct.  Your letter also notes that the Special Committee members "coordinated on a joint defense" with Side B.  We do not believe such coordination is apparent from the Joint Defense Agreement previously provided to the Official Committee.  Please provide any other documents you are relying upon for this assertion.

- Crime-fraud.  The Official Committee disagrees with your position that the crime-fraud privilege exception is not triggered by transfers made with an intent to hinder, delay, or defraud creditors.  *See, e.g.*, *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 109 (S.D.N.Y. 2017) ("As the Trustee accurately observes, these intentional actions to hinder, delay, or defraud BLMIS's creditors arguably constitute fraudulent transfers under the Bankruptcy Code . . . which are themselves sufficient to trigger the crime-fraud exception.").  You have also disputed any connection between the crime-fraud exception and the document categories set forth by the Official Committee.  For the sake of clarity, attached to this letter as **Exhibit A** is a *non-exhaustive* list of *example* control numbers for communications the Official Committee believes are within the categories of documents subject to the crime-fraud exception.[2]

If you do not let us know by **September 2** that you will agree to re-review or reconsider your position with respect to the above categories of documents, we will assume that we are at an impasse.

Finally, as for the other categories of documents Side B continues to improperly withhold as privileged despite the Official Committee's numerous letters, emails, and calls over the last few weeks—including communications with public relations firms, communications with government

---

[2] Although the Official Committee is hesitant to provide lists of control numbers out of concern that Side B will see no need to revisit Log entries beyond the numbers provided, we provide non-exhaustive samples here to crystalize any disputed issues as quickly as possible in case they need to be raised with the Court.

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION –
TREAT SUBJECT TO PROTECTIVE ORDER



August 30, 2020
Page 4

investigative agencies, and documents and communications subject to the at-issue exception[3]—it appears that no agreement can be reached and that further negotiations are pointless.

* * *

Please feel free to contact us if you have any questions or wish to discuss any of the foregoing. The Official Committee's review is ongoing, and we reserve the right to raise additional issues at a later date, including on a categorical basis where appropriate.

Sincerely,

*/s/ Mitchell Hurley*
Mitchell P. Hurley

cc:    Marshall Huebner (Davis Polk & Wardwell LLP)
        Ben Kaminetzky (Davis Polk & Wardwell LLP)
        Charles Duggan (Davis Polk & Wardwell LLP)
        James McClammy (Davis Polk & Wardwell LLP)
        Margarita Clarens (Davis Polk & Wardwell LLP)
        Chautney M. Oluwole (Davis Polk & Wardwell LLP)
        Andrew Troop (Pillsbury Winthrop Shaw Pittman LLP)
        Andrew Alfano (Pillsbury Winthrop Shaw Pittman LLP)
        Jason Sharp (Pillsbury Winthrop Shaw Pittman LLP)
        Kenneth H. Eckstein (Kramer Levin Naftalis & Frankel LLP)
        Rachael Ringer (Kramer Levin Naftalis & Frankel LLP)

---

[3] Your August 22 letter argues that none of Side B's withheld documents must be produced because Side B's December 6 presentation did not disclose privileged information. However, the at-issue exception is triggered where a party asserts a claim or defense "that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Whether fairness requires disclosure is decided on a case-by-case basis. *In re Grand Jury Proceedings*, 219 F.3d 175, 182-83 (2d Cir. 2000). There is no per se requirement that a party relied on privileged communications for the exception to apply. *See, e.g.*, *Pereira v. United Jersey Bank*, Nos. 94 Civ. 1565, 94 Civ. 1844, 1997 WL 773716, at *4 (S.D.N.Y. Dec. 11, 1997) (privilege may be waived if privilege holder "makes factual assertions the truth of which can only be assessed by examination of the privileged communication"). It is therefore not dispositive even if you are correct that Side B carefully crafted the defenses in its December 6 presentation to reference non-privileged documents. The Official Committee believes, regardless, that it requires access to Side B's privileged communications to evaluate the truth of your clients' assertions regarding their belief that their actions were legal at all relevant times.



August 30, 2020
Page 5

## EXHIBIT A

## NON-EXHAUSTIVE LIST OF EXAMPLE CONTROL NUMBERS FOR ENTRIES THAT FALL WITHIN THE CRIME-FRAUD EXCEPTION

| | | | |
|---|---|---|---|
| JS-068231 | PS-00059481 | PS-00259478 | PS-01039361 |
| JS-068232 | PS-00059485 | PS-00259480 | PS-01048749 |
| JS-068233 | PS-00066472 | PS-00259481 | PS-01054901 |
| JS-068371 | PS-00066473 | PS-00259482 | PS-01055152 |
| JS-068377 | PS-00087305 | PS-00259484 | PS-01055162 |
| JS-068380 | PS-00087307 | PS-00259493 | PS-01055206 |
| JS-068386 | PS-00087309 | PS-00259503 | PS-01055207 |
| JS-070147 | PS-00092492 | PS-00260002 | PS-01062548 |
| PS-00001341 | PS-00101844 | PS-00435115 | PS-01062796 |
| PS-00001631 | PS-00101846 | PS-00528578 | PS-01062798 |
| PS-00002253 | PS-00106015 | PS-00584224 | PS-01062799 |
| PS-00002729 | PS-00107349 | PS-00588654 | PS-01062818 |
| PS-00002910 | PS-00109909 | PS-00701201 | PS-01062821 |
| PS-00002982 | PS-00110042 | PS-00701624 | PS-01063547 |
| PS-00002984 | PS-00110140 | PS-00726420 | PS-01063549 |
| PS-00002986 | PS-00110143 | PS-00726421 | PS-01063616 |
| PS-00002990 | PS-00114474 | PS-00770992 | PS-01063618 |
| PS-00003020 | PS-00134141 | PS-00779159 | PS-01063641 |
| PS-00003032 | PS-00134142 | PS-00809517 | PS-01063657 |
| PS-00003096 | PS-00156185 | PS-01003318 | PS-01063658 |
| PS-00003258 | PS-00163312 | PS-01003436 | PS-01063665 |
| PS-00003289 | PS-00163316 | PS-01003473 | PS-01063698 |
| PS-00003329 | PS-00167266 | PS-01010891 | PS-01063712 |
| PS-00003371 | PS-00168995 | PS-01015079 | PS-01063713 |
| PS-00003533 | PS-00169123 | PS-01015096 | PS-01063715 |
| PS-00003535 | PS-00169124 | PS-01015104 | PS-01063719 |
| PS-00003597 | PS-00177366 | PS-01015135 | PS-01063756 |
| PS-00039093 | PS-00177367 | PS-01015153 | PS-01063757 |
| PS-00048789 | PS-00177368 | PS-01024217 | PS-01114033 |
| PS-00049412 | PS-00217046 | PS-01024218 | PS-01114034 |
| PS-00049413 | PS-00220509 | PS-01036630 | RS0084012 |
| PS-00054968 | PS-00237040 | PS-01039360 | RS0084013 |

PUBLICLY FILED PER STIPULATION [ECF 2140]

**Akin Gump**

STRAUSS HAUER & FELD LLP

August 30, 2020
Page 6

| | |
|---|---|
| RS0084014 | RS0896973 |
| RS0089934 | RSM-140871 |
| RS0090461 | RSM-143742 |
| RS0096912 | RSM-160111 |
| RS0096927 | RSM-175793 |
| RS0096929 | RSM-196228 |
| RS0096958 | RSNY12014558 |
| RS0096986 | RSNY12015783 |
| RS0097062 | RSNY12018238 |
| RS0097073 | RSNY12032012 |
| RS0098661 | RSNY12049054 |
| RS0099236 | RSNY12049056 |
| RS0101372 | RSNY12406472 |
| RS0101772 | RSNY12412250 |
| RS0139111 | RSNY12412596 |
| RS0141789 | RSNY12413503 |
| RS0141791 | RSNY12416940 |
| RS0141793 | RSNY12419990 |
| RS0234588 | RSNY12436974 |
| RS0469910 | RSNY12436975 |
| RS0469911 | RSNY15168735 |
| RS0587953 | |
| RS0615971 | |
| RS0616477 | |
| RS0627513 | |
| RS0677520 | |
| RS0716646 | |
| RS0724510 | |
| RS0724918 | |
| RS0745419 | |
| RS0751211 | |
| RS0819746 | |
| RS0829603 | |
| RS0837609 | |
| RS0838748 | |
| RS0855828 | |
| RS0893517 | |

# EXHIBIT 20

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION -
TREAT SUBJECT TO PROTECTIVE ORDER



# Milbank

**ALEXANDER B. LEES**

*Partner*

55 Hudson Yards | New York, NY 10001-2163

T: 212.530.5161

alees@milbank.com | milbank.com

September 2, 2020

**VIA EMAIL**

Mitchell P. Hurley
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036

      Re:    In re Purdue Pharma L.P., No. 19-23649 (Bankr. S.D.N.Y.)

Dear Mitch:

      I write to follow up on our letter of August 22, and in response to your letter of August 30, 2020. With respect to the first three paragraphs of your letter, we believe that our letter of August 22 suffices to set forth our commitments and need not be repeated. We will amend our privilege log accordingly by September 8 and produce the related documents promptly.

## Joerg Fischer and Evercore

      We provided documents on our privilege log involving Joerg Fischer to counsel for the IACs. Counsel informed us that the IACs believe those documents are privileged. As a result, we will not produce them. Please direct any further inquiries regarding Joerg Fischer as it relates to privilege assertions to the IACs' counsel. We also stated in our letter of August 22 that we would provide documents on our privilege log involving Evercore Group LLC to counsel for the IACs, but the documents involving Evercore overlapped with other documents that we committed to produce in our August 22 letter, and thus Evercore no longer will appear on our privilege log.

## Purple Strategies

      We provided documents on our privilege log involving Purple Strategies to counsel to the Debtors. Counsel informed us that the Debtors believe those documents are privileged. As a result, we will not produce the redacted documents on our privilege log involving Purple Strategies. For the documents on our privilege log involving Purple Strategies that were fully withheld, we will produce redacted versions of these documents according to guidance from the

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

PUBLICLY FILED PER STIPULATION [ECF 2140]

Mitchell P. Hurley
September 2, 2020                                                                                                            Page 2

Debtors.[1] Please direct any further inquiries concerning Purple Strategies as it relates to privilege assertions to the Debtors' counsel.

## Jonathan White

We provided documents on our privilege log involving Jonathan White to counsel for the Mortimer Sackler family. Counsel informed us that the Mortimer Sackler family believes those documents are privileged. As a result, we will not produce them. Please direct any further inquiries concerning Jonathan White as it relates to privilege assertions to the Mortimer Sackler family's counsel.

## Management Revisions

We have re-reviewed the documents on our privilege log involving Management Revisions Ltd. We reiterate our disagreement with your sweeping assertion that documents involving accountants cannot be privileged. Nevertheless, after review, we have determined that a number of documents involving Management Revisions are not privileged for other reasons.[2] We will revise our privilege log to reflect these changes by September 8 and produce the related documents promptly. As to the remaining documents involving Management Revisions on our privilege log, we continue to assert that they were properly withheld.

## Common Interest with the Debtors

With respect to documents involving directors of PPI who also serve on the Special Committee, we do not intend to change our position. In urging us to do so, you have misstated our argument and set up a straw man. We have never contended, as your letter wrongly posits, that our clients and the Special Committee share a common interest; nor have we asserted that our clients and the Special Committee advanced a joint defense. Rather, our letter was clear that our clients share a common interest and joint defense with *the Debtors*. Messrs. Miller and Buckfire, as we noted in our August 22 letter, serve on PPI's board as a whole and therefore act in capacities separate from their roles on the Special Committee. We have not withheld documents where Messrs. Miller and Buckfire were acting in their capacities as members of the Special Committee. Rather, we withheld documents where they were acting as members of the

---

[1] We will be producing PS-00004765, PS-00004774, PS-00127899, RS0904910, PS-00127946, RS0871198 and RS0990410 with redactions.

[2] We will be producing DSF0064208; DSF0064209; DSF0064215; DSF0064217; DSF0017585; PS-01158713; PS-01158930; PS-01160598; DSF0032279; DSF0039346; PS-00077431; RSM-260639; PS-01138338; PS-01141906; RSM-281394; RSM-137614; PS-01096289; PS-01043199; JS-068494; JS-068495; JS-068527; JS-068547; JS-068603; RS0826344; RS0811002; RS0816777; RS0892102; RS0869416; RS0817855; RS0819746; RS0859187; RS0833628; RS0844899; RS0874991; RS0865994; RS0815648; RS0835038; RS0902770; RS0820038; RS0893632; RS0840051; RS0766076RS0677520; RS0709475; and RS0710044.

Mitchell P. Hurley
September 2, 2020                                                                                          Page 3

broader PPI board, and the subjects of discussion were covered by a common interest between
the Debtors and our clients.

Our clients and the Debtors shared an *identical* legal interest in defending against opioid
litigation: they were sued for the same alleged conduct based on the same legal theories, and as a
result, they shared a common interest in defending those lawsuits. That is a paradigmatic
application of the common-interest doctrine. That our clients and members of the PPI board –
when not acting as members of the Special Committee – were jointly privy to legal advice on the
subject of opioid litigation in no way waives the privilege.

Your cited cases do not persuade us otherwise. In *Shamis v. Ambassador Factors Corp.*,
34 F. Supp. 2d 879 (S.D.N.Y. 1999), the court held that the plaintiff and a third party to the
litigation merely would both benefit from a judgment, not that they coordinated on a legal
strategy. And in *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437
(S.D.N.Y. 1995), the court found that the parties merely had a common business interest and did
not pursue a common legal strategy. Here, by contrast, members of the Sackler families and the
Debtors shared the same legal interest in debunking the meritless claims brought against them,
and they coordinated to advance that interest. We see no reason why you should be "troubled" in
these circumstances.

**Crime-Fraud Exception**

We likewise reject your invitation to revisit our position on the crime-fraud exception. As
noted in our August 22 letter, the UCC bears the burden of showing that the exception applies
because withheld documents reflect that legal advice was given to facilitate and further deceitful
conduct. You cited *no* evidence to support such a claim in your letter of August 21. Your most
recent letter conspicuously does not even try to rectify this failure.

Your citation of *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
319 F.R.D. 100 (S.D.N.Y. 2017) does not advance your position. That ruling confirms that
"[m]ere suspicion" of fraud "is not enough to warrant invading the attorney-client privilege";
rather, there must be "substantial reason to believe that [the client] engaged in or attempted to
commit a fraud and used communications with [the] attorney to do so." *Id.* at 108 (quoting *In re
Omnicom Grp., Inc. Sec. Litig.,* 233 F.R.D. 400, 410 (S.D.N.Y. 2006)). Despite the millions of
documents produced by our clients and others – including documents produced by the financial
institutions that our clients use – the UCC has not identified even one document to substantiate
its rank speculation. The UCC has articulated no reason to suspect fraud, let alone come forward
with sufficient evidence to satisfy its burden.

We also reiterate that the crime-fraud exception requires fraud in the traditional sense of
deceit and trickery, as the cases cited in our August 30 letter hold. Not all "fraudulent transfers,"
despite the name, involve such conduct. And a decision from the *Madoff* case discussing the

Mitchell P. Hurley
September 2, 2020                                                                        Page 4

crime-fraud exception in circumstances involving the most notorious Ponzi scheme in history does nothing to rebut this point.

**At-Issue Waiver**

We reject your at-issue waiver argument, which you say is made in service of a desire to "access . . . Side B's privileged communications to evaluate the truth of assertions" (fn. 3 of your letter) set forth in the December 6 presentation. We reiterate the relevant potion of that presentation cites exclusively the many non-privileged documents produced by the Debtor that show that PPI board members were repeatedly told that Purdue was in compliance with its legal obligations. Since these numerous non-privileged documents demonstrate what the PPI board members were told, the UCC has no basis to obtain discovery of privileged information. Your failure to identify any assertion in the presentation that is not supported by non-privileged documents vitiates your claim of at-issue waiver.

                                        *        *        *

To the extent that you believe we have reached an impasse on these or other issues related to our privilege assertions and intend to raise them with the Court, we look forward to your response to our August 26 proposal for a briefing schedule. We have been informed that counsel for the Mortimer Sackler family joins our proposal, and we will coordinate with them on these issues.

                                        Very truly yours,

                                        */s/ Alexander B. Lees*
                                        Alexander B. Lees

cc:     Marshall Huebner (Davis Polk & Wardwell LLP)
        Andrew Troop (Pillsbury Winthrop Shaw Pittman LLP)
        Kenneth H. Eckstein (Kramer Levin Naftalis & Frankel LLP)
        Jasmine Ball (Debevoise & Plimpton LLP)

# EXHIBIT 21

| | |
|---|---|
| New York | Paris |
| Northern California | Madrid |
| Washington DC | Hong Kong |
| São Paulo | Beijing |
| London | Tokyo |

## Davis Polk

**James I. McClammy**

Davis Polk & Wardwell LLP       212 450 4584 tel
450 Lexington Avenue            james.mcclammy@davispolk.com
New York, NY 10017

**CONFIDENTIAL**

September 8, 2020

Re:     Purdue Pharma L.P. et al., No. 19-23649 (Bankr. S.D.N.Y.)

Mitchell P. Hurley
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745

Dear Mitch:

We write in response to the Official Committee of Unsecured Creditors' (the "**Committee**")
August 30, 2020 letter (the "**Letter**") concerning Debtors' privilege logs.

Our analysis has found that many of the issues you raise with respect to the Debtors' "Logs" as
defined in the Letter are not actually relevant to the Debtors' logs that have been produced as a
result of the Committee's search terms and custodians in the bankruptcy (the "**Bankruptcy
Privilege Logs**").  Pursuant to the October 11, 2019 Case Stipulation among the Debtors, the
Committee and Certain Related Parties, we provided the Committee with the MDL and non-MDL
productions, and related privilege logs.  The Committee received these documents and privilege
logs in the same way in which they were originally produced.  We are not going to repeat or
supplement the massive amount of work that was previously completed by other counsel with
respect to the MDL or other litigations, nor are we going to evaluate the issues the Committee
has raised with respect to the MDL and non-MDL logs.  The first MDL and non-MDL logs were
produced to the plaintiffs in those actions nearly two years ago, and as appropriate, there were
meet and confers with respect to specific entries in the logs, but there was never a challenge to
the format or content of the logs, as none is warranted.  However, as you know we are reviewing
documents responsive to your requests as set forth in the Discovery Stipulation, excluding
anything produced in the MDL and non-MDL litigations.  As such, to the extent that the
Committee's search terms and custodians hit on documents that were not previously produced –
including on the basis of an applicable privilege – those documents are part of the current review
population and will be produced or logged accordingly.  Thus, this response is limited to the
Committee's issues that have been raised as they relate to the Bankruptcy Privilege Logs.

The Letter identifies a number of third parties, ranging from accountants to investment advisors,
who, according to the Committee, are purported to prevent a valid assertion of privilege.
However, it is well-established law that the presence of a third party does not prevent a valid

CONFIDENTIAL

September 8, 2020

assertion of privilege when the third party's presence is necessary for counsel's provision of legal advice. Any such third party's presence on an otherwise privileged communication is even less likely to affect the privilege when the work product doctrine is applicable. Accordingly, unlike the Committee's attempt to apply a blanket rule with respect to third parties, this privilege analysis must be completed on a document-by-document basis, which we have done in the course of our privilege review. The Committee has flagged certain third parties that appear on the Debtors' "Logs," but has neglected to note that all of these same third parties also appear in documents that have been produced to the Committee. Therefore, it is evident that we are of the view that this determination must be made per document, and in some instances, a third party's presence will either 1) indicate that the communication is not privileged; or 2) waive the privilege attached to a communication that is otherwise privileged. To the extent that Bankruptcy Privilege Logs include third parties, it means that we have determined that the third parties' presence does not negate or waive the privilege. However, it is inevitable that in a review of hundreds of thousands of documents and in the production of privilege logs with tens of thousands of entries, mistakes can be made, so as a show of good faith, we have taken another look at many of the documents associated with the third parties included in the Letter. Although we continue to believe that the overwhelming majority of these documents are protected from disclosure, if we determine that some of these documents are not privileged, we will promptly produce them.

**Common Interest**

We fundamentally disagree with your assertion that the Bankruptcy Privilege Logs "do not supply information sufficient to justify withholding documents" on a common interest basis. First, as we have previously communicated to the Committee, there is no obligation under the Local Rules to identify documents on a privilege log as "common interest," since this is a doctrine and not a privilege. However, as an accommodation to the Committee, we took on the burdensome exercise of identifying such entries on the Bankruptcy Privilege Logs. Second, for any such entries, the Bankruptcy Privilege Logs include a detailed privilege description, including, but not limited to, the below:

- Document compiled by or at the direction of counsel in anticipation of litigation relating to compliance with regulatory or other legal requirements and prepared in connection with the same, in common interest with related parties.

- Document compiled by or at the direction of counsel in anticipation of litigation relating to general corporate advice and in common interest with related parties.

- Document compiled by or at the direction of counsel in anticipation of litigation relating to issues relating to an actual or potential restructuring and prepared in connection with the same, in common interest with related parties.

- Document compiled by or at the direction of counsel in anticipation of litigation relating to opioid-related civil litigation affecting the Company and prepared in connection with the same, in common interest with related parties.

- Document compiled by or at the direction of counsel in anticipation of litigation relating to opioid-related government investigations and enforcement actions affecting the Company and prepared in connection with the same, in common interest with related parties.

- Document compiled by or at the direction of counsel in anticipation of litigation relating to patent litigation affecting the Company and prepared in connection with the same, in common interest with related parties.

These descriptions are more than sufficient justification for withholding the documents to which the common interest doctrine was applicable, and was no easy effort to complete.  Any suggestion to the contrary is far-reaching and baseless.

The Letter asks the Debtors to answer numerous interrogatory-like questions regarding the Debtors' log entries that claim a "common interest" with certain third parties, including certain members of the Sackler Family.  The Debtors are not required to supply the specific dates on which Purdue entered into common interest agreements with other persons, the number of such agreements, their scope and the basis for them, their dates of termination, etc.  Parties who assert a common interest are not required to produce such information; rather, they must merely log the bases for their assertions of common-interest in respect of particular documents, which often can be established on the face of the communications themselves, without such additional detailed information.  The broad, interrogatory-like questions that you pose seek answers that could be supplied only with expending significant legal resources, to little if any purpose.  The Debtors are not required to answer them in order to claim a common interest.  We are prepared to answer questions as to the application of the common-interest doctrine as to specific documents.

The Letter also asks the Debtors to review each entry on the privilege logs provided by Side A and Side B that invoke a common interest with the Debtors to determine which of them in the Debtors' view appropriately identifies a common-interest communication.  Here, again, the Letter supplies no reason why the Debtors should conduct that review.  These documents were withheld and logged by Side A and Side B in response to requests from the Committee, not the Debtors; the Debtors presumably have many if not all of the documents that have been withheld by Side A or Side B on the basis that they reflect common-interest communications with the Debtors, and the Debtors have no reason to incur the expense of evaluating the Side A or Side B claims of common interest in withholding documents from the Committee.  The Committee's counsel purports to have reviewed these privilege logs already; if the Committee has concerns regarding the validity of particular entries on those logs, the Committee can raise those questions with Side A or Side B as the case may be.  We are prepared to evaluate specific questions as to specific documents, should they warrant our attention and the expenditure of resources that such a challenge would entail.  We are not prepared to engage in the patently wasteful wholesale review that you propose.

Lastly, the Sacklers' access to the document platform containing Purdue documents was terminated on August 10, 2020.

**Fiduciary/"Good Cause" Exception**

We have considered your renewed request to withdraw privilege assertions pursuant to the fiduciary duty exception to the attorney client privilege (the "fiduciary exception"), and we again decline to do so.

**CONFIDENTIAL**

4                                                  September 8, 2020

As we have previously explained, there is no basis under the fiduciary exception to compel production of the six extensive "categories" of privileged documents identified in the Letter.  As an initial matter, your waiver request includes categories such as all privileged documents created or sent at any time concerning "opioid-related litigation" and "transfers made by the Debtors that may be subject to avoidance actions."  These categories and the others you identify together would seemingly capture virtually every privileged document responsive to the Committee's document requests and/or hitting on the Committee's search terms, custodians and date ranges.  No authority cited in the Letter requires such a wide-ranging waiver of privilege under the fiduciary exception.[1]  Nor, to be clear, do the Debtors think a wholesale waiver of the Debtors' privilege would ever be appropriate in these cases.  The purpose of the fiduciary exception is to provide a safety valve to the "ironclad veil of secrecy" afforded by the attorney-client privilege in circumstances where a producing party has duties that run to the benefit of others and its "judgment is questioned."  *Kleeberg v. Eber*, No. 16CV9517LAKKHP, 2019 WL 2085412, at *9 (S.D.N.Y. May 13, 2019).  The Debtors have, at every turn in these cases, acted consistent with, and in furtherance of, their fiduciary duties to creditors.

We also note that you originally provided your list of six "categories" to us on August 11, 2020, and we advised you on that same day that while open to continued meet and confer efforts, we could not agree to your demand as framed.  *See* August 11, 2020 Email from K. Porter to B. Kaminetzky; August 11, 2020 Email from B. Kaminetzky to K. Porter.  Yet you have made no attempt in the intervening weeks (including in the Letter) to narrow your request or otherwise specify why the Committee has a need for sweeping disclosure of privileged documents.  While the Debtors remain willing to consider particularized requests to withdraw a privilege assertion, your continued insistence that the Debtors do so as to overbroad "categories" that would involve waiving privilege over many thousands of documents is unwarranted and unproductive.

Moreover, even if the blanket waiver contemplated by the Letter could somehow be appropriate—and the Debtors do not believe it could ever be here—the Letter still fails to identify the necessary "good cause" to compel production, including as to the 85 exemplar documents that you cite in Exhibit 1 of the Letter.  As numerous courts have recognized, the discovering party must establish "good cause" to overcome the producing party's assertion of privilege.  *See, e.g.*, *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 424 (S.D.N.Y. 2006) ("*G-I Holdings*").  Courts consider among other factors:  "(1) the discovering party's stake in the fiduciary relationship; (2) the apparent merit of the claim; (3) the need of the discovering party for the information; and (4) the nature of the communication itself."  *Id.*  The Letter, however, makes no attempt to demonstrate that these factors are satisfied.  For example, you have not asserted, much less demonstrated, that the information you seek in the Debtors' privileged documents is unavailable from other sources, including from any of the millions of documents that the Debtors or other parties have already produced.  For these and other reasons, the Committee cannot demonstrate "good cause" to compel disclosure as to any of the Debtors' documents.

*G-I Holdings*, the authority you cite as supporting application of the fiduciary exception in these circumstances, is distinguishable on numerous grounds.  There, the Official Committee of

---

[1] Likewise, the sweeping categorical approach you propose is inconsistent with case law, which demonstrates that application of the fiduciary exception requires a highly fact- and document-dependent analysis. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 13CV07060CMKHP, 2019 WL 1259382, at *10 (S.D.N.Y. Mar. 19, 2019) (analyzing assertion of fiduciary exception as to specifically identified documents).

Unsecured Creditors (which had been granted derivative standing to pursue the debtor's fraudulent transfer causes of action arising from a spin-off transaction) sought discovery of privileged communications surrounding those transfers in the context of an adversary proceeding.  The circumstances here, of course, are materially different.  Moreover, while the Court in *G-I Holdings* granted the Official Committee of Unsecured Creditors' motion, it appears to have done so as to only a limited set of contemporaneous documents and because the Official Committee of Unsecured Creditors in that case demonstrated "a substantial need to discover" such information.  *Id.* at 425.  Your proposed categories, by contrast, fail to provide any meaningful time limitation.  Indeed, some of the 85 exemplar documents in Exhibit 1 that you say are subject to disclosure quite astonishingly include communications dated as recently as September and October 2018 between the Debtors and Davis Polk, their bankruptcy counsel.[2] You have also failed, as noted above, to demonstrate any current need for any of the documents you have requested, much less a "substantial" need.

Notwithstanding the above, we have re-reviewed the 85 privileged documents you cited in Exhibit 1 to The Letter.  While we do not believe that any would be subject to disclosure under the fiduciary exception or any other exception at this time, we have determined that the following documents are not privileged for other reasons and will be included in our next production:

- PL-00000189;
- PL-00000190;
- PL-00000200;
- PL-00000357;
- PL-00001718;
- PL-00001719;
- PL-00001720;
- PL-00001840;
- PL-00001841;
- PL-00001842;
- PL-00001843;
- PL-00001844;
- PL-00001845;
- PL-00001916;
- PL-00002364; and
- PL-00002441.

Finally, your remark that the Debtors are "sid[ing] with the Sacklers to obscure certain responsive information" by declining to provide you with what amounts to a blanket privilege waiver, is false and inflammatory.  There is simply no basis in fact to the insinuation that Debtors are not disclosing responsive information or otherwise acting inconsistent with their fiduciary duties. Moreover, the Debtors' fiduciary duties include ensuring that due diligence efforts in pursuit of a global resolution are conducted in an efficient and value-maximizing fashion.  As the Court has repeatedly recognized, all parties in interest should strive to keep diligence costs in check in order to maximize the value of the estates for creditors.  *See, e.g.*, May 1, 2020 Hr'g Tr. 49:3-24 (emphasizing that in the diligence process there is a need to ensure "that the money that's going

---

[2] *See, e.g.*, PL-00002843 and PL-00002856.

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL

6                                                    September 8, 2020

to go to creditors doesn't get eaten up in preparing for a perfect litigation"); June 23, 2020 Hr'g Tr. 20:1-16 (recognizing "people should do only the due diligence that's necessary and approach these matters with a fair measure of common sense"); Aug. 26, 2020 Hr'g Tr. 25:14-21 (noting that "it's important for the bankruptcy lawyers to keep an eye on the litigators and make sure that they understand the difference between doing due diligence and an examination and taking discovery for the purposes of a trial").  Again, the Debtors remain willing to discuss any particularized request that the Committee may have, but the Debtors cannot agree to waive privilege broadly over hundreds of thousands of documents—the result of which will necessarily entail additional reviews by many parties and thus substantial additional costs to the estates—based on nothing more than the Committee's unsupported demand.

### Crime-Fraud/At Issue

Likewise, the Debtors do not intend to withdraw privilege assertions as to any documents pursuant to the crime-fraud exception to the attorney client privilege at this time.

As with the fiduciary exception, you have not provided any specific basis to believe that any of the Debtors' privileged documents are subject to disclosure under this exception.  The Letter requests that the Debtors reconsider privilege assertions as to certain broad categories of documents.  But, again, none of the authorities you cite concerning the crime-fraud exception support the notion that a blanket waiver of all of a debtor's privileged communications would be appropriate under these circumstances.

Moreover, as the Second Circuit has held, to compel production under this exception, the discovering party must make a "showing of probable cause to believe that [1] a fraud or crime has been committed and [2] that the communications in question were in furtherance of the fraud or crime."  *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir.1997).  This requires, at the very least, a showing that a "prudent person" would have a "reasonable basis" for believing that the objective of the client's communication with the attorney was to further a fraudulent scheme.  *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984).  The Letter states that the Committee has "been particularly focused on suspicious transfers out of the Debtors" and that the Committee "does not believe any communications with attorneys discussing or effecting such transfers can be withheld on privilege or work product grounds."  You also cite the Department of Justice's proof of claim form.  These broad assertions are insufficient to compel production under this exception. Simply put, they lack the specificity necessary — i.e., at the very least, information as to which transfers, which time frames, which custodians, which attorneys, etc. — to demonstrate a reasonable basis for believing that the objective of any communication being withheld was to further an alleged fraud.

In addition, we have re-reviewed the documents cited in Exhibit 1 to The Letter that are being withheld for privilege, and we continue to believe that none are subject to disclosure under the crime-fraud exception.[3]

---

[3] The Letter also references the "at issue" waiver doctrine.  We note, however, that you have not provided any supporting analysis explaining how this doctrine may be applicable to any specific documents being withheld on privilege grounds by the Debtors.

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION -
TREAT SUBJECT TO PROTECTIVE ORDER

**CONFIDENTIAL**

7                                    September 8, 2020

**Public Relations Firms**

As stated above, the presence of third parties, including public relations firms, on an otherwise privileged communication is not grounds for waiver if the public relations firm is assisting in the formulation of public relations in connection with litigation and working with counsel in this regard. Of the ten public relations firms referenced in the Letter as being included on Debtors' Logs, only five public relations firms, Dezenhall Resources, Teneo, Risa Heller Communications, Stu Loeser & Co. and Purple Strategies, appear on the Bankruptcy Privilege Logs, and account for only 47 entries – all of which we continue to believe are privileged. Comparably, we have produced to the Committee in the bankruptcy a total of 652 documents that include these five public relations firms. With respect to the remaining five public relations firms referenced in The Letter which were only included on the MDL and non-MDL privilege logs, a total of 1,289 documents including these public relation firms have been produced to the Committee in the bankruptcy. These figures demonstrate our recognition that these third parties do not confer privilege, or may sometimes waive privilege on an otherwise privileged communication.

**Lobbyists**

The Letter identifies WilmerHale and Sidley Austin as law firms that have "lobbied for Purdue per public records," and categorizes both law firms as lobbyists for this reason. However, both WilmerHale and Sidley Austin have served as counsel to Purdue since the early 2000s, and both firms continue to serve as counsel to Purdue today. Any communications including WilmerHale and Sidley Austin are subject to the attorney-client privilege and work product doctrine, and have been withheld for this purpose.

The two remaining "lobbyists" referenced in The Letter only account for five entries on the Bankruptcy Privilege Logs, compared to 35 communications including these two "lobbyists" that have been produced to the Committee in the bankruptcy. We have re-reviewed the five documents and continue to believe they are privileged.

**Accountants**

As previously stated, it is well-established law that the presence of an accountant on an otherwise privileged communication does not waive the privilege if the accountant is assisting counsel in providing legal advice. All accountants referenced in the Letter except Manhattan Review appear in the Bankruptcy Privilege Logs, but only account for 12 entries. Comparably, 3,149 documents including these same accountants have been produced to the Committee in the Bankruptcy.

Upon further review, we have determined that PL-00000824 is not privileged for other reasons, and will be included in our next production.

**Investment Advisors**

As Side A and Side B stated in their August 23 and August 22 responses, it is well established that the presence of an investment advisor does not "prevent[] a valid assertion of privilege" when the investment advisor is present to assist counsel in the provision of legal advice. Specifically with respect to PJT Partners ("**PJT**"), as stated in Jamie O'Connell's Declaration in

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION -
TREAT SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL

8                                      September 8, 2020

Support of Debtors' Motion for a Preliminary Injunction, PJT was initially retained in November
2017 "as Purdue faced mounting litigation related to its opioid medications."  *See In re: Purdue
Pharma L.P.*, No. 19-23649 (RDD), Dkt. 6 (Bankr. S.D.N.Y.).  PJT's scope of work has ranged
from assisting the Company and counsel in assessing the impact of litigation to supporting
Debtors' counsel in negotiations with advisors to the various litigants and preparation of the
Debtors' chapter 11 bankruptcy filing.  *See id.*  Given this information, it should come as no
surprise that PJT is included on privileged communications, and many of these communications
are also covered by the Work Product doctrine.  But as with the other third parties included in the
Letter, Debtors have also produced a number of documents including PJT to the Committee in
the bankruptcy.

After further review, PL-00010175 is being downgraded to privilege redact for other reasons and
will be included in the next production.

**Other Consultants**

Of the "other consultants" identified in the Letter, all appear in the Bankruptcy Privilege Logs
except Venture and Cumulus Consulting.

The Letter identifies Giuliani Partners as an "other consultant."  Our research indicates that
despite Giuliani Partners' status as a management consulting firm, Purdue retained Giuliani
Partners as lawyers, led by Rudy Giuliani, in 2002 to represent them in connection with a number
of issues, including the WDVA investigation.  Of the 102 entries on the Bankruptcy Privilege Logs
including "other consultants," Giuliani Partners accounts for 87 of these entries, and we continue
to assert that 86 of these communications are privileged, but PL-00007644 will be downgraded to
privilege redact and included in the next production.  PL-00008204 was previously determined to
be not privileged after additional QC and it was produced to the Committee with bates stamp
PPLPUC001662412.  In addition, we note that 114 documents including Giuliani Partners have
been produced to the Committee in the bankruptcy, further evidencing our document-by-
document nuanced approach to privilege designations.

For the remaining "other consultants" that only account for 14 entries in the Bankruptcy Privilege
Logs, 4,295 documents including these "other consultants" have been produced to the
Committee in the bankruptcy.  After additional review, we have determined that PL-00000390
and PL-00009038 are not privileged, and will be included in the next production.

**Real Estate Firms**

The three real estate firms listed in the Letter each account for a single entry on the Bankruptcy
Privilege Logs, which we continue to believe are privileged.  Comparably, we have produced 148
documents including these companies to the Committee in the bankruptcy.

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL

9                                        September 8, 2020

**Communications with Non-Debtors' Counsel**

Below is additional information about the law firms and entities included in the Letter that are not counsel to Purdue:

| Law Firm/Company | Additional Information |
|---|---|
| Express Scripts | Express Scripts assisted Purdue's counsel in the provision of legal advice related to potential litigation. |
| Connecticut Veterans Legal Center | The communication with Connecticut Veterans Legal Center relates to pro bono work that Purdue and Chadbourne & Parke completed on behalf of clients of the center. |
| Law Offices of Edward Pedwell | Todd Pedwell was hired as a Consultant to assist in the implementation of Purdue's patent database. |
| Bär & Karrer | Counsel to Mundipharma |
| Berkowitz, Trager & Trager, LLC | Personal counsel to Purdue employees |
| Mintz & Gold, LLP | Counsel to Mortimer Sackler Jr. |

We determined that the two communications on the Bankruptcy Privilege Logs including Goldfarb & Fleece, LLP, PL-00010123 and PL-00010124, are not privileged and will be included in the next production.

The 16 remaining law firms included in the Letter served as counsel to Debtors. We will ensure that these law firms and attorneys are notated as attorneys in supplemental privilege logs.

**Other Third-Party Participants[4]**

Our analysis indicates that only 17 of the 74 individuals listed as "other third party participants" are included in the Bankruptcy Privilege Logs. Further, the Bankruptcy Privilege Logs have over 12,000 entries, and these individuals are included on only 37 such entries. We have conducted another review of these documents, and we have concluded the following documents are not privileged and will be included in our next production:

- PL-00002915;

---

[4] The role included in the Letter for Lynn Henkhaus is incorrect. Henkhaus was, at the time of the relevant communications, an attorney at HelplerBroom LLC, a firm operating in Illinois and Missouri.

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION -
TREAT SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL

10                                    September 8, 2020

- PL-00000921;
- PL-00007099;
- PL-00007274;
- PL-00007524;
- PL-00008257;
- PL-00002216;
- PL-00002217; and
- PL-00003346.

A single document including Jeffrey Ketchman. Niki Ketchman and Judith Udell was previously determined to be not privileged.  This document was removed from the Supplemental Privilege Log as reflected in the Amended Privilege Log produced to the Committee on August 25, 2020, and the document was produced to the Committee on the same date in Production Volume PPLPUCC015.

Also, Austin O'Connor, identified in the Letter as _____, is not a third party.  He is the Legal Representative to Halm SàrL, a shareholder of Mundipharma SAS.  However, the corresponding two documents are not privileged for other reasons.

**Communications with Non-Affiliates**

The assertions that because the "Non-Affiliates" as defined in the Letter are "separate corporate entities wholly removed from the Debtors' corporate structure" and that "several of the Non-Affiliates are entities with ties to only one side of the Sackler family" are simply irrelevant to the question of whether Purdue shared a common legal interest with the entities.  Further, some of these documents are privileged because the communications reflect privileged advice provided to the Non-Affiliates, which are associated with the Sacklers.  To the extent that "Non-Affiliates" are included on the Bankruptcy Privilege Logs, we have concluded that these documents are privileged, either because the common interest doctrine applies or because the documents are Family privileged.  However, after additional review of documents including "Non-Affiliates," we have determined that PL-00007901, PL-00001219, PL-00001947 and PL-00012090 are not privileged, and will be included in the next production.  If the Committee wants to continue to challenge the validity of the entries including the "Non-Affiliates" on the Bankruptcy Privilege Logs, please identify with specificity the relevant documents and we will consider the challenge(s) in good faith.

**Communications Without Counsel**

As the Committee recognizes, the absence of counsel on a communication does not negate that a communication may be otherwise privileged.  This fact should not in and of itself raise concerns.  However, we do agree that documents described as "providing legal advice" without the presence of counsel may indicate that documents are not privileged or may simply reflect inaccurate privilege descriptions.  We have completed an additional review of some documents falling into this category, and we have found that many of the documents include counsel providing advice on lower parts of the email chain, which is then forwarded to other Purdue employees who continue to discuss the legal advice.  Nevertheless, if after an additional quality check review, we determine that any of the privilege descriptions should be amended, we will

CONFIDENTIAL

make these changes and produce an amended privilege log.  We will also produce any documents that are found to be not privileged in our next production.

**Stuart Baker and Jonathan White**

Debtors recognize that Stuart Baker served in dual attorney and business roles for Purdue, the Sacklers and the IACs.  In addition, Jonathan White served as a Purdue board member from 1998 to 2002, and based on our understanding was also an advisor to the Mortimer Sackler Family, and served as a trustee for one or more Sackler Family trusts.  However, the Committee's request that we supplement our "Logs" to indicate where Stuart Baker and Jonathan White participated in a communication based on their business or legal capacities is unduly burdensome and unnecessary.  First, the Letter states "Debtors have withheld over 2,900 documents and communications on the Logs" including Stuart Baker or Jonathan White in the to, from or cc fields, [5] but fails to note that Debtors have also produced over 43,000 documents including Stuart Baker and over 5,000 documents including Jonathan White to the Committee in the bankruptcy (inclusive of email families).  These figures highlight that Debtors have not applied a blanket privilege approach to any such communications.  Second, many of the communications include other attorneys who are either providing legal advice or being asked to provide legal advice; or otherwise includes the discussion of legal advice.  Third, when read in the context of other information provided on the log, including all parties to the communication, dates and subject of the communication, there is more than sufficient information to provide the Committee with the basis for which any such documents were withheld.  The Committee's implication that more is required is contrary to the Local Rules. *See* Local Civil Rule 26.2 (encouraging "efficient means of providing information regarding claims of privilege").

Sincerely,

/s/ Jim McClammy

James I. McClammy

---

[5] The Bankruptcy Privilege Logs only reflect 89 documents that include Jonathan White.

PUBLICLY FILED PER STIPULATION [ECF 2140]

# EXHIBIT 22

## Debevoise & Plimpton

**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

CONFIDENTIAL / SUBJECT TO PROTECTIVE ORDER

September 8, 2020

<u>BY EMAIL</u>

Mitchell Hurley
Katherine Porter
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
mhurley@akingump.com
kporter@akingump.com

***In re: Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr. S.D.N.Y.)**

Counsel:

We write with regard to the letter from the Official Committee of Unsecured Creditors (the "UCC") dated August 30, 2020, concerning the privilege log (the "Privilege Log") produced by the Mortimer Sackler ICSPs[1] regarding assertions of privilege and confidentiality over documents withheld or redacted from document productions in the Rule 2004 discovery in these chapter 11 cases.[2]

---

[1]   The Mortimer Sackler ICSPs preserve and do not waive all defenses, including, but not limited to, defenses based on lack of personal jurisdiction.

[2]   Per the parties' agreement and the Stipulation and Agreed Order Among the Official Committee and the Mortimer Side Covered Parties Regarding Discovery Deadlines in the Chapter 11 Cases [Dkt. No. 1347] (the "Stipulation"), Side A has produced updated versions of the Privilege Log on a rolling basis. The most recent version of the Privilege Log was produced on August 28, 2020. We are confused by your statement that the revised version of the Privilege Log that we provided you on August 28, 2020 "purports to add" new entries to the log and appendix. The addition of entries to the Privilege Log was consistent with the Stipulation, which provides that the Mortimer Sackler ICSPs would provide a version of the Privilege Log with entries for documents redacted or withheld from the production of documents from certain Mortimer Sackler ACSPs fifteen days after that production, which was made on August 13, 2020 by agreement of the parties. We also

PUBLICLY FILED PER STIPULATION [ECF 2140]

Mitchell Hurley                    2                    September 8, 2020

CONFIDENTIAL / SUBJECT TO PROTECTIVE ORDER

First, we reject your assertion that our request for the UCC to prioritize its requests with regard to the Side A privilege log was somehow "unproductive" in light of prior UCC correspondence. We made that invitation in recognition of the scale of the Rule 2004 discovery covering hundreds of thousands of documents generated over more than two decades and the benefits of narrowing discovery disputes. Prior correspondence from the UCC, by contrast, raised categorical arguments about the UCC's legal positions concerning the attorney-client privilege and related issues. As we explained in our August 23 letter, privilege cannot be litigated in the ether and courts require focus on specific communications.[3] We appreciate that the UCC provided us in its August 30 letter with hundreds of privilege log entries that the UCC disputes and a list of third-party entities that the UCC contends are outside the scope of privileges potentially applicable to communications to which those entities were party. We have completed our review of the communications specifically identified by the UCC along with certain additional communications, and will complete our review of additional Privilege Log entries promptly. To date, we have identified approximately 300 documents that we have determined are not privileged or should be subject to fewer redactions. We will produce these re-designated documents shortly and provide the UCC with a correspondingly updated version of the Privilege Log, and continue on a rolling basis. We appreciate the UCC's stated desire to have privilege issues resolved on an accelerated basis, but believe it is beneficial to the process for the UCC to identify specific additional Privilege Log entries that it would like us to re-review and we will do so on a timely basis.

**Communications Including Special Committee Members**

We disagree with the categorical assertion in your August 30, 2020 letter (without reference to specific documents) that all communications involving members of the Special Committee are not privileged. As we have previously explained, your argument rests on the unfounded assumption that the sole function of the Special Committee members is to assess the possibility of asserting claims against Purdue's

---

added entries to the Appendix per your request that we review the Privilege Log for any missing entries, including individuals who appeared on the Privilege Log in connection with more than one email address.

[3]   *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80 (S.D.N.Y. 2019), does not support the UCC's claim that it is entitled not to identify with specificity the communications that it claims are not privileged. In *Universal Standard*, the privilege dispute submitted to the court only concerned two specific email chains. *See id.* at 84 ("In his declaration, Blakely identified the emails at issue as being contained in email chains from June 19-25, 2018, and June 26-27, 2018. After briefing on this motion was completed, the Court required production of the emails and has reviewed them *in camera*." (citation omitted)).

Mitchell Hurley                                    3                          September 8, 2020

CONFIDENTIAL / SUBJECT TO PROTECTIVE ORDER

shareholders and former directors. You ignore that the Special Committee members also sit on Purdue's full board. Both Purdue and its former directors have been subject to suit based on the same subject matter: Purdue's marketing of prescription opioids. Purdue—including its board—and the former directors share common interests as co-defendants in defending, and ultimately resolving these cases. The UCC's assertion that joint defendants in litigation could not share a common interest is meritless. *See, e.g.*, *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (The common interest doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."; holding common interest existed between joint defendants). Nevertheless, we will review communications involving Special Committee members and re-designate documents as appropriate.

### Communications Reflecting an Intention to Seek Legal Advice

Your blanket assertion that communications reflecting an intention to seek legal advice cannot be privileged is incorrect. *See In re Grand Jury Proceedings*, No. M-11-189, 2001 WL 1167497, at *28 (S.D.N.Y. Oct. 3, 2001) ("A few documents created by the Doe Corp. Team submitted by Doe Corp. as privileged do not copy counsel. Those communications were shared between and among members of the Doe Corp. Team tasked with providing reports and recommendations to counsel. Because I find that those documents 'would not have been created had [the team] not needed the assistance of counsel,' I find these documents to be privileged." (citation omitted)). Nevertheless, as described above, we are reviewing the documents listed in Exhibit A and other similar documents.

### Crime-Fraud Exception

It is clear on the face of the UCC's August 18 letter that the crime-fraud exception is inapplicable here.[4] As the Court explained in *Amusement Indus. v. Stern*, 293 F.R.D. 420 (S.D.N.Y. 2013), one of the cases cited by the UCC, a party seeking to invoke the exception must satisfy a two part test. It "must demonstrate that there is a <u>factual basis</u> for a showing of probable cause to believe that a fraud or crime has been committed—or has been attempted—<u>and</u> that the communications in question were in furtherance of the fraud or crime. The factual basis must strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration

---

[4]    Your statement in your August 30, 2020 letter that we "have not disagreed with [the UCC's] characterization of the law" misconstrues our position. As we explained in our August 23, 2020 letter, the UCC's request was simply too premature and vague for us to engage with it meaningfully. We requested that the UCC provide specific examples so that we could consider the UCC's legal position on something more than speculation.

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

Mitchell Hurley                                4                          September 8, 2020

CONFIDENTIAL / SUBJECT TO PROTECTIVE ORDER

of a crime or fraud, and that the communications were in furtherance thereof." *Id.* at 426 (emphasis added). The UCC, however, has not come forward with any facts that would constitute a reasonable basis for concluding that there was an actual or attended crime or fraud here—much less that correspondence with counsel somehow facilitated this alleged misconduct. Instead, the UCC relies only on a generalized, unsubstantiated allegation from the DOJ proof of claim against Debtors. That is plainly insufficient to meet the crime fraud standard. Regardless, the allegation is meritless: all distributions from Purdue were approved by Purdue's full board (including outside directors) and were made prior to the wave of litigation beginning in 2017. To the contrary, cash distributions dropped sharply in 2012 and thereafter and Purdue's cash cushion rose substantially – exceeding $1 billion in 2014 and thereafter. These facts are fundamentally inconsistent with the allegation that distributions were made when Purdue was insolvent.

The examples provided in Exhibit C prove that the UCC's invocation of the crime/fraud exception is little more than a scattershot attempt to seek access to thousands of privileged communication without showing that there is any basis to do so. For example:

- Control No. 965 and 966, as indicated by the subject line contained in the privilege log, discuss certain issues pertaining to a proposed change in name of a corporate entity in 2006.

- Control No. 1972 discusses legal advice relating to the settlement of certain litigation in the Western District of Virginia in May 2007. As is clear from the entry in the Privilege Log, this document does not even relate to the four issues listed in the UCC's August 18, 2020 letter.

- Control No. 5280 discusses distributions from the estate of the late Muriel Lazarus Sackler, who divorced Mortimer D. Sackler over half a century ago.

- Control No. 5930, as is clear from the redacted copy that was produced, simply discusses certain issues related to the retention of a professional to advise Side A on investments. As the title of the withheld attachment indicates, one of these issues was a draft confidentiality agreement.

- Control No. 9445 is partially redacted to protect the confidentiality of certain communications between spouses relating to an invitation to participate in an educational program at Columbia University. The document has nothing to do with the four issues listed in the UCC's August 18, 2020 letter or otherwise relate in any way to the perpetuation of a crime or fraud, much less indicate that the communications between spouses were intended to further such crime or fraud.

Mitchell Hurley                                  5                          September 8, 2020

CONFIDENTIAL / SUBJECT TO PROTECTIVE ORDER

- Control No. 14648 relates to an insurance claim based on fire damage to a
  private aircraft (as can be inferred from the subject line, which contains the
  aircraft number, and the title of the attachment, which refers to a "galley
  fire").  We are befuddled by the UCC's apparent claim that this
  communication relates to the issues cited in its August 18, 2020, much less
  was in furtherance of a supposed crime or fraud related to distributions from
  Purdue.

Regardless of the inapplicability of the crime/fraud exception, we are currently re-
reviewing the documents identified in Appendix C of the Committee's August 30,
2020 letter and evaluating the assertions of privilege.  As appropriate, we will de-
designate documents or update the privilege log.

**Issues at an Impasse**

Your August 30, 2020 letter represents that the UCC believes that the meet-and-
confer process has reached an impasse regarding issues about the Privilege Log, but
only specifies two: "documents with public relations firms and communications with
government investigative agencies."

- ***Public Relations Professionals:*** The last communication concerning the issue
  of public relations professionals is our letter of August 23, 2020.  In that
  letter, we provided additional information regarding the overall relationship
  between counsel, public relations professionals, and clients as well as
  explanations of how exemplar communications identified by the UCC in prior
  correspondence are privileged under applicable law.[5]  You have not
  responded to these explanations or identified any other communications that
  you believe are not privileged.  Nor have you explained the relevance of
  communications between counsel, clients and public relations professionals
  that long post-date the subject matter that is the subject of the UCC's
  diligence.  We do not believe we are at an impasse except with regard to the
  UCC's improper demand that we categorically de-designate thousands of
  documents simply because the communications involve public relations
  professionals.

- ***Communications with Government Investigative Agencies:*** The UCC has
  not provided any reasonable justification for its request for documents in this
  category other than a rote recitation of the Rule 2004 standard.  As we have
  previously explained, disclosure of such confidential communications risks
  jeopardizing sensitive discussions the success of which are critical to the

---

[5]    Although the UCC has claimed that *In re Grand Jury Subpoenas*, 265 F.
Supp. 2d 321 (S.D.N.Y. 2003) is an "outlier," the UCC does not and cannot
contend that it is an inaccurate statement of the law.

Mitchell Hurley                               6                        September 8, 2020

CONFIDENTIAL / SUBJECT TO PROTECTIVE ORDER

resolution of the chapter 11 cases.  Moreover, any communications between counsel for Side A and government investigators are not evidence and have no relevance to the UCC's duties.  The UCC already has what it needs to conduct diligence: access to millions of contemporaneous documents and access to numerous individuals who have been or will be deposed.  We reject the UCC's attempt to characterize its inability to justify its conclusory demand for documents in this category as an impasse.

There are additional issues that the parties have discussed that we assume the UCC's representation to indicate will not be the subject of further negotiation:

- ***Spousal Privilege:*** To date, the UCC has drawn our attention to two communications designated as confidential marital communications on the Privilege Log.  We provided additional information and revised the privilege log entries as necessary with regard to those communications.  We have noted our availability to meet and confer regarding additional documents, if any, that the UCC claims may not be subject to the marital communications privilege, but to date the UCC has not identified any such additional entries on the Privilege Log.

- ***Communications without Attorneys:***  As we noted in our August 23 letter, the UCC's assertion that the number of communications on the Privilege Log without attorneys raises unspecified "red flags" is not a bona fide objection.  As the UCC itself recognizes, there are many situations in which communications without attorneys may be privileged, *e.g.*, where two co-defendants are discussing advice provided by their counsel.  You did not respond to our offer to meet and confer regarding more particularized concerns or issues.

- ***At-Issue Exception to Privilege:*** In our August 23, 2020 letter, we requested that you identify the privileged communications you claimed had been put in issue by referring us to the specific portions of the deck and transcript from the December 6, 2019 presentation and entries on the Privilege Log.  As we have not received any such list, we believe this issue to have been resolved.

Best regards,


*/s/ Jasmine Ball*
Jasmine Ball

Mitchell Hurley                          7                    September 8, 2020

CONFIDENTIAL / SUBJECT TO PROTECTIVE ORDER