# EXHIBIT 95

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| Fill in this information to identify the case (Select only one Debtor per claim form): | | |
|---|---|---|
| ☒ Purdue Pharma L.P. (Case No. 19-23649) | ☐ Seven Seas Hill Corp. (Case No. 19-23656) | ☐ Paul Land Inc. (Case No. 19-23664) |
| ☐ Purdue Pharma Inc. (Case No. 19-23648) | ☐ Ophir Green Corp. (Case No. 19-23657) | ☐ Quidnick Land L.P. (Case No. 19-23665) |
| ☐ Purdue Transdermal Technologies L.P.(Case No. 19-23650) | ☐ Purdue Pharma of Puerto Rico (Case No. 19-23658) | ☐ Rhodes Associates L.P. (Case No. 19-23666) |
| ☐ Purdue Pharma Manufacturing L.P. (Case No. 19-23651) | ☐ Avrio Health L.P. (Case No. 19-23659) | ☐ Rhodes Pharmaceuticals L.P. (Case No. 19-23667) |
| ☐ Purdue Pharmaceuticals L.P. (Case No. 19-23652) | ☐ Purdue Pharmaceutical Products L.P. (Case No. 19-23660) | ☐ Rhodes Technologies (Case No. 19-23668) |
| ☐ Imbrium Therapeutics L.P. (Case No. 19-23653) | ☐ Purdue Neuroscience Company (Case No. 19-23661) | ☐ UDF LP (Case No. 19-23669) |
| ☐ Adlon Therapeutics L.P. (Case No. 19-23654) | ☐ Nayatt Cove Lifescience Inc. (Case No. 19-23662) | ☐ SVC Pharma LP (Case No. 19-23670) |
| ☐ Greenfield BioVentures L.P. (Case No. 19-23655) | ☐ Button Land L.P. (Case No. 19-23663) | ☐ SVC Pharma Inc. (Case No. 19-23671) |

## Modified Form 410
# Non-Opioid Claimant Proof of Claim Form                                04/19

**You may file your claim electronically at PurduePharmaClaims.com via the link entitled "Submit a Claim."**

**For questions regarding this Proof of Claim Form, please call Prime Clerk at (844) 217-0912 or visit PurduePharmaClaims.com.**

Read the instructions at the end of this document before filling out this form. This form is for making a claim for payment in a bankruptcy case.

**Do not** use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

**Do not** use this form to assert a claim against the Debtors based on or involving opioids or their production, marketing and sale, including without limitation, the Debtors' production, marketing and sale of Purdue Opioids, or if you are seeking damages based on personal injury as a result of taking a Purdue Opioid. File such claims on either a General Opioid Claimant Proof of Claim Form, a Personal Injury Claimant Proof of Claim Form, or a Governmental Opioid Claimant Proof of Claim Form, as applicable.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not** send original documents as they will not be returned, and they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of September 15, 2019.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | United States of America, Department of Justice | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. **Has this claim been acquired from someone else?** | ☒ No ☐ Yes. From whom? _____ | |
| 3. **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? Lawrence H. Fogelman Chief Bankruptcy & Tax Unit United States Attorney's Office, S.D.N.Y. 86 Chambers Street, 3rd Floor New York, New York 10007 | Where should payments to the creditor be sent? (if different) |
| | Contact phone (212) 637-2719 | Contact phone _____ |
| | Contact email lawrence.fogelman@usdoj.gov | Contact email _____ |

| 4. | Does this claim amend one already filed? | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known)_____   Filed on _____<br><div style="text-align:right">MM   / DD /  YYYY</div> |
|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed (September 15, 2019)

| 6. | Do you have any number you use to identify the debtor? | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  _____  _____  _____  _____ |
|---|---|---|
| 7. | How much is the claim? | $ <u>unliquidated (see attachment)</u>    **Does this amount include interest or other charges?**<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Ongoing investigation of violations of federal criminal law (see attachment)<br>_____ |
| 9. | Is all or part of the claim secured? | ☒ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>Nature of property:<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe:  _____<br><br>Basis for perfection:  _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:    $_____<br><br>Amount of the claim that is secured:    $_____<br><br>Amount of the claim that is unsecured:  $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:   $_____<br><br>Annual Interest Rate (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |
| 10. | Is this claim based on a lease? | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____ |

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

| 11. **Is this claim subject to a right of setoff?** | [X] No<br>[ ] Yes. Identify the property: _____ | | |
|---|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | [X] No<br>[ ] Yes. *Check one:* | | **Amount entitled to priority** |
| | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | [ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | [ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | [ ] Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | [X] No<br>[ ] Yes. **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.** | | $_____ |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>[ ] I am the creditor.<br>[X] I am the creditor's attorney or authorized agent.<br>[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

**Signature:**  *Eamonn O'Hagan, Esq.*
Eamonn O'Hagan, Esq. (Jul 30, 2020 15:04 EDT)

**Email:**  eamonn.ohagan@usdoj.gov

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Eamonn | James | O'Hagan |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Assistant United States Attorney, Senior Bankruptcy Counsel | | |
| Company | Department of Justice, U.S. Attorney's Office, District of New Jersey | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 970 | Broad Street | 7th Floor |
| | Number | Street | |
| | Newark | NJ | 07102 |
| | City | State | ZIP Code |
| Contact phone | (973) 645-2874 | | Email  eamonn.ohagan@usdoj.gov |

PUBLICLY FILED PER STIPULATION [ECF 2140]

Modified Form 410                    **Non-Opioid Claimant Proof of Claim Form**                    page 3

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
    (attach below)

☐ **I do <u>not</u> have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION** When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Non-Opioid Claimant Proof of Claim Form

United States Bankruptcy Court                                                                                                                12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the bankruptcy case was filed, September 15, 2019.**

- **Check the box for the debtor against whom you are filing a claim.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**

  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because they will not be returned and may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at PurduePharmaClaims.com.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Purdue Opioid** means all natural, semi-synthetic or synthetic chemicals that interact with opioid receptors on nerve cells in the body and brain, and that are approved by the U.S. Food & Drug Administration (FDA) and listed by the DEA as Schedule II or III drugs pursuant to the federal Controlled Substances Act, produced, marketed or sold by the Debtors as (i) the following **Brand Name Medications:** OxyContin®, Hysingla ER®, Butrans®, Dilaudid®, Ryzolt, MS Contin®, MSIR®, Palladone®, DHC Plus®, OxyIR®, and OxyFast®, and (ii) the following **Generic Medications:** oxycodone extended-release tablets, buprenorphine transdermal system, hydromorphone immediate-release tablets, hydromorphone oral solution, tramadol extended-release tablets, morphine extended-release tablets, oxycodone immediate-release tablets, oxycodone and acetaminophen tablets (generic to Percocet®), hydrocodone and acetaminophen tablets (generic to Vicodin® or Norco®). The term "Purdue Opioid(s)" shall not mean: (i) medications and other substances to treat opioid or other substance use disorders, abuse, addiction or overdose; (ii) raw materials and/or immediate precursors used in the manufacture or study of opioids or opioid products, but only when such materials and/or immediate precursors are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers; or (iii) opioids listed by the DEA as Schedule IV drugs pursuant to the federal Controlled Substances Act.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
Purdue Pharma Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
Purdue Pharma Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also file your claim electronically at PurduePharmaClaims.com via the link entitled "Submit a Claim."**

| **Do not file these instructions with your form** |

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* | Chapter 11 |
| Purdue Pharma L.P., *et al.* | Case No. 19-23649 |
| Debtors.[1] | Jointly Administered |

## ADDENDUM TO PROOF OF CLAIM OF THE UNITED STATES OF AMERICA

THE UNITED STATES OF AMERICA, hereby files its proof of claim (hereinafter, the "Proof of Claim") against the Debtors[2] and in support thereof respectfully represents as follows:

## STATEMENT OF CLAIM

1.      The United States Attorney's Office for the District of New Jersey, the Department of Justice, Consumer Protection Branch, and the United States Attorney's Office for the District of Vermont are investigating the Debtors for violations of federal criminal law related to the Debtors' marketing, sale, manufacturing, and distribution of opioid and other pharmaceutical products. The conduct in question potentially implicates a number of federal criminal statutes, including, but not limited to, anti-kickback violations (42 U.S.C. § 1320a-7b(b)), misbranding in violation of the Food, Drug, and Cosmetic Act (21 U.S.C. §§ 331, 333, 352, 353), conspiracy (18 U.S.C. § 371), and others.

---

[1] The Debtors in these cases are as follows: Purdue Pharma L.P., Purdue Pharma Inc., Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP, and SVC Pharma Inc. (collectively, the "Debtors").

[2] This Proof of Claim is asserted against all of the Debtors pursuant to Paragraph 4(e) and Paragraph 11 of the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Therefore* [ECF Doc. No. 800].

2.      If convicted of criminal offenses, the conduct in question could result in a criminal fine of approximately $6,200,000,000 or in excess thereof pursuant to 18 U.S.C. § 3571(d). Pursuant to 18 U.S.C. § 3613(c), the imposition of a criminal fine pursuant to 18 U.S.C. § 3571 creates a lien of the United States "on all property and rights to property" of the Debtors.

3.      In addition to the payment of criminal fines, the Debtors could be required to forfeit approximately $3,500,000,000 or in excess thereof to the United States pursuant to 18 U.S.C. § 982(a), which provides for forfeiture of "property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of [a qualifying] offense."

4.      The above-described charges could also give rise to an order of restitution pursuant to 18 U.S.C. §§ 3663, 3663A, in an amount equal to the losses suffered by any victims of the Debtors' offenses.  The precise amount of such restitution is to be determined by the sentencing court.  Pursuant to 18 U.S.C. § 3613(c), the imposition of an order of restitution creates a lien of the United States "on all property and rights to property" of the Debtors.

## RESERVATION OF RIGHTS REGARDING ASSET FORFEITURE

5.       With respect to criminal forfeiture, the property subject to forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture."  21 U.S.C. § 853(c) (incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c)).

6.      Based on the foregoing, the United States expressly reserves the right to attach any and all assets that are subject to forfeiture by the Debtors, which assets would vest in the United States prior to the commencement of these bankruptcy proceedings and would not be part of the Debtors' bankruptcy estates or subject to administration in these Chapter 11 proceedings.

2

## GENERAL RESERVATION OF RIGHTS

7.      The filing of this Proof of Claim is not intended to: (a) waive the right to seek withdrawal of the reference with respect to the subject matter of the Proof of Claim, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this proceeding against or otherwise involving the United States; or (b) constitute an election of remedies that waives or otherwise affects any other remedy.

8.      The United States expressly reserves the right to amend, modify, and/or supplement this Proof of Claim at any time, for whatever reason.

9.      The United States expressly reserves all rights of setoff and recoupment that the United States may have, including any right under 11 U.S.C. § 553 to setoff, against the claims herein, debts owed (if any) to Debtors by the United States, or any federal agency.


Dated: July 30, 2020

BY:

CRAIG CARPENITO
United States Attorney
District of New Jersey

GUSTAV W. EYLER
Director, Consumer Protection Branch
U.S. Department of Justice

CHRISTINA E. NOLAN
United States Attorney
District of Vermont

PUBLICLY FILED PER STIPULATION [ECF 2140]

# Electronic Proof of Claim_YROKW27462

Final Audit Report                                                                    2020-07-30

| | |
|---|---|
| Created: | 2020-07-30 |
| By: | Prime Clerk (purduepharmaefiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAZt9nR64Y-txPzQDVxbYVYKrm3WebLdgK |

## "Electronic Proof of Claim_YROKW27462" History

Web Form created by Prime Clerk (purduepharmaefiling@primeclerk.com)
2020-03-27 - 4:56:34 PM GMT

Eamonn O'Hagan, Esq. (eamonn.ohagan@usdoj.gov) uploaded the following supporting documents:
Attachment
2020-07-30 - 7:04:29 PM GMT

Web Form filled in by Eamonn O'Hagan, Esq. (eamonn.ohagan@usdoj.gov)
2020-07-30 - 7:04:29 PM GMT- IP address: 149.101.180.121

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
AppleWebKit/537.36 (KHTML, like Gecko) Chrome/83.0.4103.116 Safari/537.36)
2020-07-30 - 7:04:33 PM GMT- IP address: 149.101.180.121

Signed document emailed to Eamonn O'Hagan, Esq. (eamonn.ohagan@usdoj.gov) and Prime Clerk
(purduepharmaefiling@primeclerk.com)
2020-07-30 - 7:04:33 PM GMT

Prime Clerk    POWERED BY
Adobe Sign

PUBLICLY FILED PER STIPULATION [ECF 2140]

# EXHIBIT 96

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

# UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | |
|---|---|---|
| ☒ Purdue Pharma L.P. (Case No. 19-23649) | ☐ Seven Seas Hill Corp. (Case No. 19-23656) | ☐ Paul Land Inc. (Case No. 19-23664) |
| ☐ Purdue Pharma Inc. (Case No. 19-23648) | ☐ Ophir Green Corp. (Case No. 19-23657) | ☐ Quidnick Land L.P. (Case No. 19-23665) |
| ☐ Purdue Transdermal Technologies L.P.(Case No. 19-23650) | ☐ Purdue Pharma of Puerto Rico (Case No. 19-23658) | ☐ Rhodes Associates L.P. (Case No. 19-23666) |
| ☐ Purdue Pharma Manufacturing L.P. (Case No. 19-23651) | ☐ Avrio Health L.P. (Case No. 19-23659) | ☐ Rhodes Pharmaceuticals L.P. (Case No. 19-23667) |
| ☐ Purdue Pharmaceuticals L.P. (Case No. 19-23652) | ☐ Purdue Pharmaceutical Products L.P. (Case No. 19-23660) | ☐ Rhodes Technologies (Case No. 19-23668) |
| ☐ Imbrium Therapeutics L.P. (Case No. 19-23653) | ☐ Purdue Neuroscience Company (Case No. 19-23661) | ☐ UDF LP (Case No. 19-23669) |
| ☐ Adlon Therapeutics L.P. (Case No. 19-23654) | ☐ Nayatt Cove Lifescience Inc. (Case No. 19-23662) | ☐ SVC Pharma LP (Case No. 19-23670) |
| ☐ Greenfield BioVentures L.P. (Case No. 19-23655) | ☐ Button Land L.P. (Case No. 19-23663) | ☐ SVC Pharma Inc. (Case No. 19-23671) |

## Modified Form 410
# Non-Opioid Claimant Proof of Claim Form                    04/19

You may file your claim electronically at **PurduePharmaClaims.com** via the link entitled "Submit a Claim."

**For questions regarding this Proof of Claim Form, please call Prime Clerk at (844) 217-0912 or visit PurduePharmaClaims.com.**

Read the instructions at the end of this document before filling out this form. This form is for making a claim for payment in a bankruptcy case.

**Do not** use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

**Do not** use this form to assert a claim against the Debtors based on or involving opioids or their production, marketing and sale, including without limitation, the Debtors' production, marketing and sale of Purdue Opioids, or if you are seeking damages based on personal injury as a result of taking a Purdue Opioid. File such claims on either a General Opioid Claimant Proof of Claim Form, a Personal Injury Claimant Proof of Claim Form, or a Governmental Opioid Claimant Proof of Claim Form, as applicable.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not** send original documents as they will not be returned, and they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of September 15, 2019.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | United States, Department of Justice | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? | |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | Lawrence H. Fogelman<br>Chief Bankruptcy & Tax Unit<br>United States Attorney's Office, S.D.N.Y.<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007 | |
| | Contact phone  (212) 637-2719 | Contact phone |
| | Contact email  lawrence.fogelman@usdoj.gov | Contact email |

| 4. | Does this claim amend one already filed? | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on _____<br>MM / DD / YYYY |
|---|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ | |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed (September 15, 2019)** |
|---|---|

| 6. | Do you have any number you use to identify the debtor? | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  _____  _____  _____  _____ |
|---|---|---|
| 7. | How much is the claim? | $ <u>unliquidated (see attachment)</u>   **Does this amount include interest or other charges?**<br>☒ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Ongoing investigation of violations of federal law (see attachment)<br>_____ |
| 9. | Is all or part of the claim secured? | ☒ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**  _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $_____<br><br>**Amount of the claim that is secured:**   $_____<br><br>**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**  $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |
| 10. | Is this claim based on a lease? | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____ |

| 11. | Is this claim subject to a right of setoff? | ☐ No |
| | | ☒ Yes. Identify the property: Any payment owed by the United States to the Debtors. |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
| | | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

| 13. | Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? | ☒ No | |
| | | ☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.** | $_____ |

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Natalie A. Waites*
Natalie A. Waites (Jul 30, 2020 16:40 EDT)

**Email:**   natalie.a.waites@usdoj.gov

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Natalie | Ann | Waites |
| | First name | Middle name | Last name |

| Title | Assistant Director, Fraud Section, Civil Division |

| Company | U.S. Department of Justice |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 175 N Street NE |
| | Number    Street |
| | Washington | DC | 20002 |
| | City | State | ZIP Code |

| Contact phone | (202) 616-2964 | Email | natalie.a.waites@usdoj.gov |

PUBLICLY FILED PER STIPULATION [ECF 2140]

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   (attach below)

☐ I do <u>not</u> have supporting documentation.

Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Non-Opioid Claimant Proof of Claim Form

United States Bankruptcy Court                                                                                     12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the bankruptcy case was filed, September 15, 2019.**

- **Check the box for the debtor against whom you are filing a claim.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**

  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because they will not be returned and may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

### Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at PurduePharmaClaims.com.

### Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. § 507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Purdue Opioid** means all natural, semi-synthetic or synthetic chemicals that interact with opioid receptors on nerve cells in the body and brain, and that are approved by the U.S. Food & Drug Administration (FDA) and listed by the DEA as Schedule II or III drugs pursuant to the federal Controlled Substances Act, produced, marketed or sold by the Debtors as (i) the following **Brand Name Medications:** OxyContin®, Hysingla ER®, Butrans®, Dilaudid®, Ryzolt, MS Contin®, MSIR®, Palladone®, DHC Plus®, OxyIR®, and OxyFast®, and (ii) the following **Generic Medications:** oxycodone extended-release tablets, buprenorphine transdermal system, hydromorphone immediate-release tablets, hydromorphone oral solution, tramadol extended-release tablets, morphine extended-release tablets, oxycodone immediate-release tablets, oxycodone and acetaminophen tablets (generic to Percocet®), hydrocodone and acetaminophen tablets (generic to Vicodin® or Norco®). The term "Purdue Opioid(s)" shall not mean: (i) medications and other substances to treat opioid or other substance use disorders, abuse, addiction or overdose; (ii) raw materials and/or immediate precursors used in the manufacture or study of opioids or opioid products, but only when such materials and/or immediate precursors are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers; or (iii) opioids listed by the DEA as Schedule IV drugs pursuant to the federal Controlled Substances Act.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
Purdue Pharma Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4850
New York, NY 10163-4850

**If by overnight courier or hand delivery:**
Purdue Pharma Claims Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**You may also file your claim electronically at**
**PurduePharmaClaims.com** via the link entitled "Submit a Claim."

| **Do not file these instructions with your form** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------

| | | |
|---|---|---|
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 19-23649 (RDD)** |
| **PURDUE PHARMA L.P.,** *et al.*, | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

-------------------------------------------------------

## <u>ADDENDUM TO PROOF OF CLAIM OF THE UNITED STATES OF AMERICA</u>

1.      The United States of America submits this proof of claim on behalf of the Department of Health and Human Services ("HHS") and its component agency, the Centers for Medicare and Medicaid Services ("CMS"), which administers the Medicare program ("Medicare") and is responsible for overseeing the Medicaid program ("Medicaid"); the Office of Personnel Management ("OPM"), which administers the Federal Employees Health Benefits program ("FEHB"); and the Defense Health Agency, which administers the TRICARE program ("TRICARE") (collectively, the "United States" or the "Government") against all debtors in this matter (the "Debtors"), all with corporate headquarters located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901, namely:

   a.      Purdue Pharma L.P., a Delaware limited partnership (No. 19-23649);

   b.      Purdue Pharma Inc., a New York corporation (No. 19-23648);

   c.      Purdue Transdermal Technologies L.P., a Delaware limited partnership (No. 19-23650);

   d.      Purdue Pharma Manufacturing L.P., a Delaware limited partnership (No. 19-23651);

   e.      Purdue Pharmaceuticals L.P., a Delaware limited partnership (No. 19-23652);

f.      Imbrium Therapeutics L.P., a Delaware limited partnership (No. 19-23653);

g.      Adlon Therapeutics L.P., a Delaware limited partnership (No. 19-23654);

h.      Greenfield BioVentures L.P., a Delaware limited partnership (No. 19-23655);

i.      Seven Seas Hill Corp., a British Virgin Islands limited partnership (No. 19-23656);

j.      Ophir Green Corp., a British Virgin Islands corporation (No. 19-23657);

k.      Purdue Pharma of Puerto Rico, a Delaware general partnership (No. 19-23658);

l.      Avrio Health L.P., a Delaware limited partnership (No. 19-23659);

m.      Purdue Pharmaceutical Products L.P., a Delaware limited partnership (No. 19-23660);

n.      Purdue Neuroscience Company, a Delaware general partnership (No. 19-23661);

o.      Nayatt Cove Lifescience Inc., a Delaware corporation (No. 19-23662);

p.      Button Land L.P., a Delaware limited partnership (No. 19-23663);

q.      Rhodes Associates L.P., a Delaware limited partnership (No. 19-23666);

r.      Paul Land Inc., a New York corporation (No. 19-23664);

s.      Quidnick Land L.P., a Delaware limited partnership (No. 19-23665);

t.      Rhodes Pharmaceuticals L.P., a Delaware limited partnership (No. 19-23667);

u.      Rhodes Technologies, a Delaware general partnership (No. 19-23668);

PUBLICLY FILED PER STIPULATION [ECF 2140]

      v.      UDF L.P., a Delaware limited partnership (No. 19-23669);

      w.      SVC Pharma L.P., a Delaware limited partnership (No. 19-23670); and

      x.      SVC Pharma Inc., a Delaware corporation (No. 19-23671).[1]

2.      Debtors all filed voluntary petitions under Chapter 11 of the Bankruptcy Code on September 15, 2019, thereby initiating these proceedings.[2]  The Court entered an order establishing July 30, 2020, as the deadline by which each governmental entity must file a proof of claim against any of the Debtors listed above.  Purdue has represented to this Court in the Debtors' Informational Brief that it ran all Debtors as a single entity. *See* Dkt. No. 17 (Brief at 14).  Accordingly, in general, Debtors will be referred to herein as "Purdue."

3.      On February 3, 2020, the Court entered an order (the "Proof of Claim Order") permitting the United States to file a non-Opioid Claimant Proof of Claim Form (the "Proof of Claim Form"). *See* Dkt. No. 800.  The Proof of Claim Order further provides that the United States' Proof of Claim filed in the lead case, *In re Purdue Pharma L.P.*, et al., No. 19-23649 (RDD), shall be deemed filed against all Debtors.

4.      As expressly permitted by the Proof of Claim Order, the United States reserves the right to amend or supplement this Proof of Claim in any respect, to fix or liquidate any claims stated herein, or to specify the quantity of expenses, damages, attorney's fees and costs incurred by the United States, including seeking post-petition interest in the event the Debtors are determined to be solvent and such claim would become due.

5.      With respect to <u>Proof of Claim Form Section 7, How much is the claim?</u>, and subject to the reservations of rights herein, the United States estimates that it has a civil claim for

---

[1] *See* Doc. 1 at 17 (Purdue's organizational chart, as submitted to the bankruptcy court).
[2] *See* Doc. 1 at 1 (Purdue Pharma L.P.'s petition)

single damages in the amount of $2.8 billion or in excess thereof, plus treble damages and penalties. This amount is estimated based upon the findings to date of the United States' civil investigation of Purdue, which remains ongoing.

6.    With respect to <u>Proof of Claim Form Section 9, What is the basis of the claim?</u>, and subject to the reservations of rights herein, the United States alleges upon information and belief as set forth below. The United States' civil investigation of Purdue remains ongoing, and the United States expressly reserves its right to amend or supplement the allegations below.

<p align="center"><strong><u>PRELIMINARY STATEMENT</u></strong></p>

7.    This Proof of Claim is based on the United States' non-dischargeable civil claims under the False Claims Act, 31 U.S.C. §§ 3729-33; the equitable principle of Unjust Enrichment; the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq.* (FDCPA); and the Civil Forfeiture Statute, 18 U.S.C. § 981(a)(1)(C).[3]

8.    From 2010 through 2018, Purdue detailed prescribers nationwide each year, including prescribers that Purdue knew were facilitating medically unnecessary prescriptions.

9.    Purdue also paid kickbacks to prescribers through its corporate advisor and speaker programs to induce prescriptions of Purdue opioids.

10.    Purdue paid kickbacks to specialty pharmacies to induce them to dispense prescriptions that other pharmacies refused to fill.

11.    Purdue paid kickbacks to Practice Fusion, an electronic health records vendor, to induce it to recommend and arrange for prescriptions of opioids by creating alerts that would

---

[3] The United States does not believe that a Civil Forfeiture *in rem* action falls within the purview of the debtor-in-possession, but is including this action in an abundance of caution.

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

appear within Practice Fusion's electronic health records software while providers were seeing patients.

12.     Through its marketing and kickbacks, from 2010 to 2018, Purdue knowingly caused the submission of false and fraudulent claims to federal health care benefit programs for its opioid drugs that were: (1) prescribed for uses that were unsafe, ineffective, and medically unnecessary, and that were often diverted for uses that lacked a legitimate medical purpose; or (2) tainted by illegal kickbacks.

13.     From 2008 to 2018, Purdue transferred more than $4 billion to its owners, the Sackler family, and their holding companies and trusts.

## FACTUAL ALLEGATIONS

**I.     Purdue Caused Medically Unnecessary Prescriptions to be Submitted to Federal Healthcare Programs**

14.     Purdue sought to increase and maintain opioid sales by sending sales representatives to prescribers' offices and pharmacies to meet with prescribers in person; deliver company-developed messaging; give the prescribers gifts (such as coffee, breakfast, and lunch), marketing materials (such as articles, brochures, and other media) and incentives (such as prescription savings cards); and provide information about pharmacies stocking Purdue opioids and insurance coverage, including coverage under federal healthcare benefit programs.

15.     This practice is known in the pharmaceutical industry as "calling on" or "detailing" healthcare providers and pharmacies.

16.     Purdue acted at least with reckless disregard or deliberate ignorance as to whether calling on or detailing healthcare providers and pharmacies caused them to prescribe and dispense, respectively, more of Purdue's opioid drugs.

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

17.   At all relevant times, Purdue maintained an Abuse and Diversion Detection ("ADD") program, through which Purdue had the means and ability to identify prescribers suspected of engaging in fraud and abuse.

18.   The ADD program operated from approximately 2002 until 2018 and was governed during most of that time period by Standard Operating Procedure ("SOP") 1.7.1.

19.   SOP 1.7.1 instructed Purdue employees to refer prescribers who displayed indicia of fraud and abuse to ADD.  Employees referred these prescribers to ADD by issuing a Report of Concern ("ROC").

20.   Some Purdue sales representatives detected and reported prescribers suspected of fraud and abuse to ADD. However, high-volume prescribers were often not reported and, even if they were, they were sometimes not added to Region Zero until they lost the ability to prescribe through legal or medical board action.

## II.   Kickbacks to Doctors to Induce and Reward Prescriptions

21.   As an additional means to induce doctors to prescribe Purdue's opioid drugs, from 2010 through 2018, Purdue paid doctors to serve as corporate advisors and speakers.

22.   For example, from 2013 through 2018, Purdue paid doctors over $3 million for advising and over $10 million for speaking.

23.   Under the processes described above, Purdue marketing and sales personnel, acting within the scope of their authority and to benefit Purdue, knowingly and willfully selected doctors to retain as paid corporate advisors and speakers specifically to induce them to prescribe and reward them for prescribing Purdue's drugs in violation of the AKS.

## III.   Kickbacks to an Electronic Health Records Vendor for Prescriptions

24.   Practice Fusion, Inc. (Practice Fusion) is a company that provides electronic

PUBLICLY FILED PER STIPULATION [ECF 2140]

healthcare records (EHR) services to medical providers.  Practice Fusion provided EHR services to tens of thousands of healthcare providers in the United States, and was used during millions of patient visits each month.

25.      Purdue paid Practice Fusion to create a CDS alert (Pain CDS), which went live on the Practice Fusion's EHR platform from on or about July 6, 2016 to the spring of 2019, to prompt doctors using Practice Fusion's EHR to take certain clinical actions that Purdue believed would increase prescriptions for Purdue's extended release opioid products (EROs), which included OxyContin, Butrans, and Hysingla.

**IV.    Kickbacks to Specialty Pharmacies to Fill Medically Unnecessary Prescriptions**

26.      From October 2015 through 2018, Purdue paid three specialty pharmacies over $137,000 to fill OxyContin prescriptions that other traditional pharmacies had rejected.

27.      Pursuant to agreements with the three specialty pharmacies, Purdue referred patients and prescribers to the specialty pharmacies, the specialty pharmacies filled the prescriptions, and Purdue paid the specialty pharmacies approximately $40 per prescription to call the patient, send the patient a pre-printed marketing pamphlet about Hysingla with the prescription, and provide data that Purdue never used.

28.      During the time period the arrangements were in place, these specialty pharmacies filled over $2,000,000 in Medicare prescriptions for Purdue opioids.

**IX.    Transfer of Assets from Purdue**

29.      Purdue filed a Cash Transfers Report indicating that from January 1, 2008 through September 30, 2019, the net cash distributions from Purdue and Rhodes totaled $10.4 billion.  *See* Dkt. 654-1, at 12.

30.     During that time, Purdue approved more than $4 billion in transfers of funds as cash distributions to the Sackler family holding companies and trusts. These transfers were separate and apart from tax distributions to the Sackler family and its trusts and holding companies to be used to pay the taxes on Purdue's corporate earnings.

31.     Purdue made the cash distributions into Sackler family holding companies and trusts, including but not limited to the approximate amounts below:

| Year | Amount |
|------|--------|
| 2008 | $751 million |
| 2009 | $880 million |
| 2010 | $846 million |
| 2011 | $559 million |
| 2012 | $406 million |
| 2013 | $278 million |
| 2014 | $118 million |
| 2015 | $129 million |
| 2016 | $154 million |
| Total | $4.121 billion |

32.     In particular, Purdue made the following distributions which, on information and belief, ultimately flowed to the accounts and entities owned or controlled by or for the benefit of the Sacklers:

| APPROXIMATE DATE | APPROXIMATE AMOUNT | TRANSFEREE |
|------------------|--------------------|------------|
| April 18, 2008 | $50,000,000 | PLP Associate Holdings LP ("PLP LP") |
| June 27, 2008 | $250,000,000 | PLP Associate Holdings LP |
| September 25, 2008 | $199,012,182 | PLP Associate Holdings LP |
| September 25, 2008 | $492,818 | PLP Associate Holdings Inc. ("PLP Inc.") |
| September 25, 2008 | $495,000 | Purdue Pharma Inc. |
| November 4, 2008 | $2,805,169 | Beacon & Rosebay |
| November 6, 2008 | $100,000,000 | Beacon Company |
| November 6, 2008 | $100,000,000 | Rosebay Medical Company LP |
| March 5, 2009 | $200,000,000 | PLP Associate Holdings LP |
| March 5, 2009 | $495,264 | PLP Associate Holdings Inc. |
| March 5, 2009 | $497,457 | Purdue Pharma Inc. |
| June 26, 2009 | $162,000,000 | PLP Associate Holdings LP |
| June 26, 2009 | $402,052 | PLP Associate Holdings Inc. |
| June 26, 2009 | $402,052 | Purdue Pharma Inc. |
| September 23, 2009 | $173,000,000 | PLP Associate Holdings LP |

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

| September 23, 2009 | $858,703 | Purdue Pharma Inc. & PLP AH Inc. ("PLP AH") |
| February 4, 2010 | $236,650,000 | PLP Associate Holdings LP |
| February 4, 2010 | $588,616 | Purdue Pharma Inc. |
| February 4, 2010 | $586,021 | PLP Associate Holdings Inc. |
| April 1, 2010 | $141,000,000 | PLP Associate Holdings LP |
| April 1, 2010 | $350,707 | Purdue Pharma Inc. |
| April 1, 2010 | $349,161 | PLP Associate Holdings Inc. |
| September 10, 2010 | $241,191,265 | Purdue Holdings LP |
| December 2, 2010 | $261,290,537 | Purdue Holdings LP |
| April 6, 2011 | $190,641,596 | Purdue Holdings LP |
| June 24, 2011 | $200,992,721 | Purdue Holdings LP |
| September 1, 2011 | $141,498,875 | Purdue Holdings LP |
| December 9, 2011 | $23,900,000 | BR Holdings Associates LP ("BR Holdings") |
| April 5, 2012 | $90,000,000 | BR Holdings Associates LP |
| April 17, 2012 | $25,000,000 | BR Holdings Associates LP |
| July 11, 2012 | $117,000,000 | BR Holdings Associates LP |
| October 15, 2012 | $158,900,000 | BR Holdings Associates LP |
| December 21, 2012 | $60,000,000 | BR Holdings Associates LP |
| April 4, 2013 | $121,467,760 | BR Holdings Associates LP |
| July 8, 2013 | $42,000,000 | BR Holdings Associates LP |
| October 17, 2013 | $130,500,000 | BR Holdings Associates LP |
| April 2, 2014 | $90,500,000 | BR Holdings Associates LP |
| December 2, 2014 | $73,000,000 | BR Holdings Associates LP |
| September 9, 2015 | $135,000,000 | BR Holdings Associates LP |
| December 3, 2015 | $60,000,000 | BR Holdings Associates LP |
| January 4, 2016 | $107,000,000 | BR Holdings Associates LP |
| April 8, 2016 | $20,000,000 | BR Holdings Associates LP |
| July 1, 2016 | $14,000,000 | BR Holdings Associates LP |
| October 5, 2016 | $17,000,000 | BR Holdings Associates LP |
| December 22, 2016 | $17,000,000 | BR Holdings Associates LP |
| September 14, 2017 | $200,000 | BR Holdings Associates LP |

33.    These distributions caused a significant diminution in Purdue's value.

34.    Purdue also transferred assets directly and indirectly to PRA LP, the parent company of Purdue.  PRA LP is not a party to this bankruptcy proceeding.  PRA LP is ultimately owned and controlled by other entities owned and controlled by or for the benefit of the Sacklers.

35.    Purdue valued the assets it transferred to PRA LP in accounting records as follows:

| ESTIMATED DATE | PURDUE ASSET | PURDUE VALUATION |
| --- | --- | --- |
| January 1, 2008 | Equity of Coventry Technologies, L.P. | $52,328,000 |
| December 31, 2008 | Stock of Infinity Pharmaceuticals, Inc. | $21,160,000 |

PUBLICLY FILED PER STIPULATION [ECF 2140]

| January 7, 2009 | Stock of Infinity Pharmaceuticals, Inc. | $11,830,000 |
|---|---|---|
| January 1, 2009 | Equity of Millsaw Realty L.P. | $7,412,000 |
| September 30, 2009 | Stock of Kolltan Pharmaceuticals | $12,950,000 |
| February 28, 2009 | Stock of Novelos Therapeutics, Inc. | $23,140,097 |
| 2010 | Equity of Lucien Holdings S.ar.l. | ($543,000) |
| 2010 | Equity of New Suffolk Holdings LLP | $32,761,081 |
| December 31, 2013 | Stock of Infinity Pharmaceuticals, Inc. | $230,095,802 |
| December 31, 2014 | Stock of Kolltan Pharmaceuticals and Cash | $2,170,802 |
| January 1, 2017 | Rights to non-ADF OxyContin | unknown |
| May 1, 2017 | Rights to Dilaudid | $16,966,491 |
| May 1, 2017 | Rights to MS Contin | Unknown |
| | | **$412,272,152** |

36.     Purdue did not fully document many of the transfers and did not conduct full valuations of certain of the transferred assets.

37.     On information and belief, Purdue made the transfers described above with the intent to hinder a recovery by creditors or without receiving reasonably equivalent value for these transfers.

38.     The Government is continuing to investigate whether there were any additional cash payments and non-cash payments to the Sacklers and related entities, beyond the $4.12 billion in cash transfers discussed above.

39.     The Sackler family owns and controls PRA LP, PLP AH, PLP Inc., BR Holdings, and BR Inc.

## CAUSES OF ACTION AGAINST PURDUE

40.     Based on the foregoing conduct, the United States asserts that it has certain legal claims against Purdue, as set forth below.  The United States reserves its right to supplement these legal claims and the allegations set forth above based on additional information obtained during its investigation.

## False Claims Act

41.     The United States incorporates by reference all allegations above as though fully set forth herein.

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

42.     Through its marketing and kickbacks, from 2010 to 2018, Purdue knowingly caused the submission of false and fraudulent claims to federal health care benefit programs for its opioid drugs that were: (1) prescribed for uses that were unsafe, ineffective, and medically unnecessary, and that were often diverted for uses that lacked a legitimate medical purpose; or (2) tainted by illegal kickbacks.

43.     More specifically, claims for opioids that are not medically necessary are not covered by federal health care programs.

44.     It was reasonably foreseeable that some of those prescriptions would be for federal healthcare program beneficiaries and that claims for those prescriptions would be submitted to federal healthcare programs.  Many such prescriptions or claims based on such prescriptions were, in fact, submitted to and paid for by federal healthcare programs.

45.     Likewise, claims that include items or services resulting from a violation of the AKS constitute false or fraudulent claims under the AKS.

46.     By providing remuneration to physicians, Practice Fusion, and the Specialty Pharmacies, Purdue knowingly and willfully intended to induce kickback recipients to prescribe, arrange for or recommend prescription of Purdue EROs.

47.     It was reasonably foreseeable that some of those prescriptions would be for federal healthcare program beneficiaries and that claims for those prescriptions would be submitted to federal healthcare programs.  Many such prescriptions or claims based on such prescriptions were, in fact, submitted to and paid for by federal healthcare programs.

**Unjust Enrichment**

48.     The United States incorporates by reference all allegations above as though fully set forth herein.

11

49.     Purdue was enriched at the expense of federal health care programs.

50.     Equity and good conscience militate against permitting Purdue to retain revenues and profits resulting from its misconduct.

## Fraudulent Transfers

51.     The United States incorporates by reference all allegations above as though fully set forth herein.

52.     The United States alleges that under 28 U.S.C. Sections 3304(b)(1)(A), 3304(b)(1)(B), and 3304(a)(1) some or all of the  transfers described above should be adjudged fraudulent and void to the extent necessary to satisfy the United States' debt and the legitimated debts of Purdue's other creditors.  Alternatively, damages in the amount of the value of the property should be assessed against transferees who received the property.

53.     The United States does not concede that its claims for fraudulent transfer pursuant to the FDCPA are assigned to the Debtors by operation of the Bankruptcy Code or otherwise.

## Civil Forfeiture

54.     The United States incorporates by reference all allegations above as though fully set forth herein.

55.     Civil forfeiture is an action *in rem* against property that is proceeds, or traceable to proceeds, of a criminal violation of, among other statutes, the Criminal False Claims Statute, 18 U.S. Code § 287; the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); the Health Care Fraud Statute, 18 U.S.C. § 1347; or the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 331(a).

56.     Purdue's misconduct gives rise to criminal liability under such statutes and obtained proceeds from its activity.

57.     Upon information and belief, those proceeds are traceable to Purdue's crimes.

PUBLICLY FILED PER STIPULATION [ECF 2140]

## AMOUNT OF CLAIM

58.     Based on the allegations set forth above, and subject to amendments which may occur as a result of the United States' ongoing civil investigation, the United States estimates that Purdue has caused single damages for false and fraudulent claims in the amount of $2.8 billion or in excess thereof.  The False Claims Act allows the United States to recover three times its damages plus penalties.

59.     The amount arising from the United States' unjust enrichment claim is $2.8 billion or in excess thereof.

60.     The amount arising from the United States' fraudulent transfer claims is contingent/unliquidated.

61.     The amount arising from the United States' civil forfeiture claims is contingent/unliquidated.

## RESERVATION OF RIGHTS REGARDING ASSET FORFEITURE

62.     The United States has included claims for civil forfeiture in this proof of claim protectively and out of an abundance of caution. The United States does not concede that an action for civil forfeiture, or any claim of right or title to forfeitable property, is a "claim" within the meaning of 11 U.S.C. § 101(5).

63.     With respect to civil forfeiture, the property subject to forfeiture "shall vest in the United States upon commission of the act giving rise to forfeiture under this section."18 U.S.C. § 981(f); accord 21 U.S.C. § 881(h).

64.     Based on the foregoing, the United States expressly reserves the right to attach any and all assets that are subject to forfeiture, which assets would vest in the United States prior

to the commencement of these bankruptcy proceedings and would not be part of the Debtors'

bankruptcy estates or subject to administration in these Chapter 11 proceedings.

## GENERAL RESERVATION OF RIGHTS

65.     The filing of this Proof of Claim is not intended to: (a) waive the right to seek

withdrawal of the reference with respect to the subject matter of the Proof of Claim, any

objection or other proceedings commenced with respect thereto, or any other proceedings

commenced in this proceeding against or otherwise involving the United States; or (b) constitute

an election of remedies that waives or otherwise affects any other remedy.

66.     The United States expressly reserves all rights of setoff and recoupment that the

United States may have, including any right under 11 U.S.C. § 553 to setoff, against the claims

herein, debts owed (if any) to Debtors by the United States, or any federal agency.

67.     Additional documentation in support of this Proof of Claim is too voluminous to

attach, but is available upon request.

68.     The United States reserves the right to amend any of the foregoing information,

including the amount of its claim, based on its ongoing review and investigation of the matters

alleged herein, or for any other reason.

Dated:  July 30, 2020

CRAIG CARPENITO
United States Attorney
District of New Jersey

MICHAEL D. GRANSTON
Deputy Assistant Attorney General
Civil Division
U.S. Department of Justice

CHRISTINA E. NOLAN
United States Attorney
District of Vermont

# Electronic Proof of Claim_YROKW27462

Final Audit Report                                                                    2020-07-30

| | |
|---|---|
| Created: | 2020-07-30 |
| By: | Prime Clerk (purduepharmaefiling@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAUPZFQZ8TPuQ8DZY9DdAK44n0WvZCKVfi |

## "Electronic Proof of Claim_YROKW27462" History

Web Form created by Prime Clerk (purduepharmaefiling@primeclerk.com)
2020-03-27 - 4:56:34 PM GMT

Natalie A. Waites (natalie.a.waites@usdoj.gov) uploaded the following supporting documents:
  Attachment
2020-07-30 - 8:40:23 PM GMT

Web Form filled in by Natalie A. Waites (natalie.a.waites@usdoj.gov)
2020-07-30 - 8:40:23 PM GMT- IP address: 149.101.1.114

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
AppleWebKit/537.36 (KHTML, like Gecko) Chrome/58.0.3029.110 Safari/537.36 Edge/16.16299)
2020-07-30 - 8:40:26 PM GMT- IP address: 149.101.1.114

Signed document emailed to Natalie A. Waites (natalie.a.waites@usdoj.gov) and Prime Clerk
(purduepharmaefiling@primeclerk.com)
2020-07-30 - 8:40:26 PM GMT

Prime Clerk ⬦ POWERED BY Adobe Sign

# EXHIBIT 97

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER



**Akin Gump**

STRAUSS HAUER & FELD LLP

**JOSEPH L. SORKIN**
+1 212.872.7464/fax: +1 212.872.1002
jsorkin@akingump.com

September 15, 2020

VIA E-MAIL

Kevin Marino
**Marino, Tortorella & Boyle, P.C.**
437 Southern Boulevard
Chatham Township, NJ 07928
*Counsel to John Stewart*

Re: *In re: Purdue Pharma L.P. et al.*, No. 19-23649 (Bankr. S.D.N.Y.)

Mr. Marino:

Thank you for speaking with me on September 14, 2020.  As indicated, Akin Gump represents the Official Committee of Unsecured Creditors (the "Official Committee") in the above-referenced cases.  We, along with the Ad Hoc Group of Non-Consenting States (the "NCSG"), are currently conducting depositions of individuals relevant to the Official Committee's investigation.  Your client, John Stewart, was the CEO and President of Purdue from 2007 until 2013 and possesses information relevant to our investigation.  We would like to depose Mr. Stewart during the week beginning October 5, 2020.

During our call you advised that Mr. Stewart plans to invoke the Fifth Amendment as a basis for refusing to answer questions that may be posed to him during that deposition. While we understand that he might seek to invoke that right with respect to some—and perhaps even many—questions, we nevertheless intend to proceed with his deposition.  Among other things, whether the circumstances permitting invocation of the Fifth Amendment are present must be evaluated on a question-by-question basis.  We are available to discuss any concerns you might have about the process of the deposition to make it as efficient as possible, to the extent possible without prejudicing the Official Committee's investigation.

Please let us know by September 16, 2020 whether Mr. Stewart will sit for deposition, without the need for a formal subpoena.  Assuming he will agree, please confirm which days during the week beginning October 5, 2020 he and you are available to proceed.  If he will not agree, we are prepared to issue a subpoena to require Mr. Stewart's attendance.

We are available to discuss if you have any questions.

PUBLICLY FILED PER STIPULATION [ECF 2140]



September 15, 2020
Page 2

                                    Sincerely,

                                    */s/ Joseph Sorkin*
                                    Joseph L. Sorkin

cc    Marshall Huebner (Davis Polk & Wardwell LLP)
      Ben Kaminetzky (Davis Polk & Wardwell LLP)
      Charles Duggan (Davis Polk & Wardwell LLP)
      James McClammy (Davis Polk & Wardwell LLP)
      Margarita Clarens (Davis Polk & Wardwell LLP)
      Chautney M. Oluwole (Davis Polk & Wardwell LLP)

# EXHIBIT 98

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Kevin Marino <kmarino@khmarino.com> |
| **Sent:** | Monday, September 28, 2020 4:38 PM |
| **To:** | Sorkin, Joseph L. |
| **Cc:** | PPLP Group; Huebner, Marshall S.; Kaminetzky, Benjamin S.; Duggan, Charles S.; McClammy, James I.; Clarens, Margarita; Oluwole, Chautney M.; Williams, Richie; Miller, McKenzie |
| **Subject:** | RE: Purdue: Deposition of John Stewart |

**\*\*EXTERNAL Email\*\***

Joseph,

Unfortunately, Mr. Stewart is not available to be deposed on October 8, 2020 as scheduled. I apologize for the inconvenience, and am happy to discuss.

Thanks,
Kevin

*Kevin H. Marino, Esq.*
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, NJ  07928-1488
Phone:  973-824-9300
Fax:  973-824-8425



---

**From:** Kevin Marino
**Sent:** Wednesday, September 16, 2020 5:00 PM
**To:** Sorkin, Joseph L. <jsorkin@AkinGump.com>
**Cc:** PPLP Group <PPLPGroup@akingump.com>; Huebner, Marshall S. <marshall.huebner@davispolk.com>; Kaminetzky, Benjamin S. <ben.kaminetzky@davispolk.com>; Duggan, Charles S. <charles.duggan@davispolk.com>; McClammy, James I. <james.mcclammy@davispolk.com>; Clarens, Margarita <margarita.clarens@davispolk.com>; Oluwole, Chautney M. <chautney.oluwole@davispolk.com>; Williams, Richie <williamsr@akingump.com>; Miller, McKenzie <mckenzie.miller@akingump.com>
**Subject:** RE: Purdue: Deposition of John Stewart

Mr. Stewart will sit for a Zoom deposition on October 8, 2020.

*Kevin H. Marino, Esq.*
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard

Chatham, NJ  07928-1488
Phone:  973-824-9300
Fax:  973-824-8425



---

**From:** Sorkin, Joseph L. <jsorkin@AkinGump.com>
**Sent:** Tuesday, September 15, 2020 3:18 PM
**To:** Kevin Marino <kmarino@khmarino.com>
**Cc:** PPLP Group <PPLPGroup@akingump.com>; Huebner, Marshall S. <marshall.huebner@davispolk.com>; Kaminetzky, Benjamin S. <ben.kaminetzky@davispolk.com>; Duggan, Charles S. <charles.duggan@davispolk.com>; McClammy, James I. <james.mcclammy@davispolk.com>; Clarens, Margarita <margarita.clarens@davispolk.com>; Oluwole, Chautney M. <chautney.oluwole@davispolk.com>; Williams, Richie <williamsr@akingump.com>; Miller, McKenzie <mckenzie.miller@akingump.com>
**Subject:** Purdue: Deposition of John Stewart

Kevin – Please see attached correspondence following up on our discussion yesterday. Let me know if you would like to discuss.

Best,

**Joseph L. Sorkin**
**AKIN GUMP STRAUSS HAUER & FELD** LLP

One Bryant Park  |  New York, NY 10036-6745  |  USA  |  Direct: +1 212.872.7464  |  Internal: 37464
Fax: +1 212.872.1002  |  jsorkin@akingump.com  |  akingump.com  |  Bio

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 99

**DECISION**

**April 14, 2009**

Funding -- Rhodes Pharmaceuticals L.P.

It was recommended that Purdue Pharma L.P. distribute $27,134,017* such that each of Beacon Company ("Beacon") and Rosebay Medical Company L.P. ("Rosebay") ultimately receives $13.5 million (i.e., the $134,017 will be paid to certain general partner corporations in the ownership structure based upon their respective interest in Purdue Pharma L.P.).  Upon receipt of the foregoing funds, each of Beacon and Rosebay will immediately contribute $13.5 million to Coventry Technologies L.P. ("Coventry"), and Coventry in turn will contribute $27 million to Rhodes Pharmaceuticals L.P.

(Recommendation of the Board of Directors of MNP Consulting Limited)

---

*The $27,134,017 would be funded $19.3 million immediately (the 2008 capital contribution of $4.3 million plus $15 million 2009 capital contribution) and the balance would be funded at an amount agreed as part of the shareholder 2010 budget approval.

[ title ]

PUBLICLY FILED PER STIPULATION [ECF 2140]
PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER          PPLPUCC000619871

PPLPUCC000619871

# EXHIBIT 100

# DECISION

## April 1, 2010

Purdue Pharma L.P. - 2Q 2010 Distribution

     It was recommended that Purdue Pharma L.P. ("PPLP") distribute $141,699,855 immediately as the 2Q 2010 distribution as follows:

1.     PPLP will distribute $141,699,855 as follows:

| Company | Amount |
|---|---|
| Purdue Pharma Inc. | $350,707 |
| PLP Associates Holdings Inc. | 349,148 |
| PLP Associates Holdings L.P. | 141,000,000 |
| TOTAL | $141,699,855 |

2.     PLP Associates Holdings L.P. will thereafter distribute $141,000,000 to BR Holdings Associates L.P.; and

3.     BR Holdings Associates L.P. will then distribute $141,000,000 as follows:

| Company | Amount |
|---|---|
| Beacon Company | $70,500,000 |
| Rosebay Medical Company L.P. | 70,500,000 |
| TOTAL | $141,000,000 |

(Recommendation of the Board of Directors of MNP Consulting Limited)

[ title ]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 103

# JOSEPH HAGE AARONSON LLC

485 LEXINGTON AVENUE

NEW YORK, NEW YORK 10017

(212) 407-1200

WWW.JHA.COM

MARA LEVENTHAL
DIRECT DIAL: (212) 407-1218
DIRECT FAX:  (212) 407-1268
EMAIL:  mleventhal@jha.com

September 26, 2020

**By Email**

James I. McClammey, Esq.
Charles S. Duggan, Esq.
Chautney Oluwole, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Email:  james.mcclammy@davispolk.com
        charles.duggan@davispolk.com
        chautney.oluwole@davispolk.com

**Re:**    *In re Purdue Pharma L.P. et al.*, Case No. 19-23649

Dear Jim, Charles, and Chautney:

I write on behalf of the Raymond-Side Initial Covered Sackler Persons whom we represent in response to Chautney's email of September 23.

We appreciate your confirmation that you have produced or will promptly produce to us all historic custodial ESI documents that you have produced to the UCC.  However, we also reiterate our request that you provide a log comprising bates ranges for all historical custodial ESI productions you have made to the UCC.  Without a log, we are unable to confirm that we have in fact received all relevant productions from you.

Our concern is not academic.  On September 18, Steve Ives was presented with an exhibit created by financial advisors to the creditors, which cites historical Purdue financial documents bearing PLPUCC bates stamps that you still have not produced to us.[1]  And that is not a lone example.  On or around July 24, you promised to provide us with copies of the custodial ESI documents that you had produced to the UCC and then proceeded to provide us with access to a number of productions that you had made to the UCC.  However, on August 27 we learned—

---

[1]    *See* Ives Exhibit 23; PLPUCC500051645; PPLPUCC500057294; PPLPUCC500057352; PPLPUCC500057387; PPLPUCC500057423; PPLPUCC500057459; PPLPUCC500057514; PPLPUCC500057354; PPLPUCC500056807; PPLPUCC500056885; PPLPUCC500056924; PPLPUCC500057004; PPLPUCC500057051; PPLPUCC500057135; PPLPUCC500056752; PPLPUCC500057235; PPLPUCC500000404; PPLPUCC500052164.

# JOSEPH HAGE AARONSON LLC

September 26, 2020
Page 2

from our document vendor, not from you—that the productions you had provided did not include copies of the custodial ESI documents that we had been promised a month earlier.  On August 31, after David Sackler's deposition had already taken place, you <u>again</u> agreed to provide us with copies of all of the custodial ESI documents that had been produced to the UCC.  We did not receive those documents until the morning of September 2, the day of Marianna Sackler's deposition.  Several custodial ESI documents—which had previously been produced by the Debtors to the UCC and NCSG—were used as exhibits in those depositions.[2]  And even today, the productions that you have given us access to bear Bates stamps beginning PPLPUCC000250929.  This strongly suggests to us that we have not received access to over 250,000 pages of documents (PPLPUCC000000001 to PPLPUCC000250928) that went to the UCC.  Without a log describing the documents that you have provided to the UCC—and an explanation as to whether you are providing us with copies of those documents or not—we are simply left guessing about what documents have not been produced, why we have not received them, and whether additional documents you have agreed to produce are still outstanding.  That is not a fair way to conduct these proceedings.

We ask, again, that you produce all historic custodial ESI documents and other non-work product documents that you have produced to the UCC, including the documents referenced in Ives Exhibit 23 (*see* fn.1, above), to us immediately.  If any of the documents referenced in Ives Exhibit 23 are among the documents you claim are protected by work product, their voluntary disclosure at Mr. Ives' deposition waives any arguable work product protection.  *See In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646, 2013 WL 12185082, at *7 (S.D.N.Y. Nov. 19, 2013) (parties "waived work product protection for the material that they provided to the SEC, as well as any underlying factual material explicitly referenced in it"); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) ("voluntary submission of the memorandum to the Enforcement Division waived the protections of the work product doctrine").  Accordingly, those documents must also be produced.

In addition, for the avoidance of doubt, we ask that you produce documents that reflect historical periodic financial results for the Debtor entities, whether or not you consider such documents to comprise the "historical custodial ESI documents" you have agreed to produce.  The Debtors' existing periodic financial records do not constitute work product under any analysis.

Discovery is underway and the mediation is fast approaching.  Fairness demands that we have access to the same documents that the Debtors have willingly provided to other parties in this action, so that we can prepare for and engage in discovery and settlement negotiations based on the same information available to those parties.  *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[m]utual knowledge of all the relevant facts gathered by both parties is essential to

---

[2] *See, e.g.*, DS Ex. 2, 7; MS Ex. 2, 7, 25.

# JOSEPH HAGE AARONSON LLC

September 26, 2020
Page 3

proper litigation. To that end, either party may compel the other party to disgorge whatever facts he has in his possession … thus reducing the possibility of surprise.").

Sincerely,

*/s/ Mara Leventhal*
Mara Leventhal

# EXHIBIT 108

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION - SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | Aponte, Elidia |
| **To:** | Sackler, Dr Kathe (af) |
| **Sent:** | 12/4/2015 11:23:51 AM |
| **Subject:** | Re: IMPORTANT |

Dear Dr. Kathe,

I sat with Matt earlier this week just after our conversation. We went over a detailed summary of all the tax notices received and the status of them. He sent me last night an updated summary, as of yesterday, that I plan to go over it today. I will review the summary, and certainly will discuss in further detail the SOP regarding tax notices and how all of them should be handled, to have a clear idea of where do we stand regarding all the tax notices and determine further actions for all of them. We can definitely have a short call today to discuss these matters.

Regards,
Elidia

Sent from my iPhone

On Dec 4, 2015, at 1:49 AM, Sackler, Dr Kathe (af) <                > wrote:

Dear Elidia,

If you have not had a chance yet, since our call with Les earlier this week, to have a look at the Tax Notices for the KAS Family Group, and to review with Matt and Michele (and Usha, for information purposes) the protocols for handling tax notices and tax agency correspondence, please do so tomorrow at your earliest convenience and include a discussion of Acorn's Communications SOPs regarding internal and external communications on tax matters – that is that, all internal communications between AF and C&P and/or McG on tax matters related to Tax Notices or Audits are to be handled by telephone NOT BY EMAIL, and that until further notice, no telephonic or written mailed or faxed correspondence is to be conducted with tax agencies without Jeff Robins or Les Schreyer's review and written sign off. Under no circumstances should Email be used for such communications with tax agencies, unless specifically approved by Les Schreyer.

Let's then have a short call with Les and Jeff to discuss this sometime tomorrow, as I am concerned by Matt's emails sent to Les earlier today.

Regards,
Kathe


K. A. Sackler, MD
The Acorn Foundation for
the Arts and Sciences, Inc.

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER          MSF00806366
MSF00806366

PUBLICLY FILED PER STIPULATION [ECF 2140]
OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER
MSF00806367
MSF00806366

# EXHIBIT 109

## MNP CONSULTING LIMITED – LIST OF DIRECTORS

**Class A Directors**

| Name | Date Appointed | Date Resigned |
|------|----------------|---------------|
| Mortimer D. Sackler, M.D. (A-1) | September 13, 1996 | March 24, 2010[1] |
| Theresa E. Sackler (A-2) | September 13, 1996 | February 19, 2019 |
| Ilene Sackler Lefcourt (A-2) | September 13, 1996 | September 18, 2018 |
| Kathe A. Sackler, M.D. (A-2) | September 13, 1996 | February 5, 2019 |
| Samantha S. Sackler (A-2) | September 13, 1996<br>October 13, 2011<br>October 8, 2015 | March 8, 2003<br>October 6, 2015<br>October 17, 2017 |
| Mortimer D. A. Sackler (A-2) | September 13, 1996 | April 1, 2019[2] |
| Jonathan G. White (A-2) | September 13, 1996 | September 5, 2002 |
| Robert Shapiro (A) | February 4, 2005 | November 21, 2005 |
| Judy Lewent (A) | March 20, 2009 | December 31, 2014 |
| Cecil Pickett (A) | January 21, 2010 | August 9, 2018 |
| Jacques Theurillat (A) | February 2, 2016<br>October 19, 2018[3] | October 18, 2018<br>April 1, 2019[2] |
| Subhanu Saxena (A) | May 1, 2018 | April 1, 2019[2] |

**Class B Directors**

| Name | Date Appointed | Date Resigned |
|------|----------------|---------------|
| Raymond R. Sacker, M.D. | September 13, 1996 | July 17, 2017[1] |
| Beverly Sackler | September 13, 1996 | October 17, 2017 |
| Richard S. Sackler, M.D. | September 13, 1996 | October 1, 2018 |
| Jonathan D. Sackler | September 13, 1996 | September 20, 2018 |
| Peter Boer | April 18, 2008 | August 26, 2018 |
| William Loomis | May 14, 2008 | July 31, 2008 |
| Paulo F. Costa | April 25, 2012 | April 1, 2019[2] |
| David A. Sackler | July 19, 2012 | April 1, 2019[2] |
| Ralph Snyderman | August 1, 2012 | October 30, 2017 |
| Åke Wikström | October 18, 2018 | April 1, 2019[2] |

---

[1] Date of death.
[2] Removed by Written Consent of the Sole Stockholder
[3] Appointed Chairman of Board of Directors without Class A or Class B designation.

34522377.1