# EXHIBIT B

UNREDACTED VERSION OF PROPOSED SEALED FILING – CONTAINS INFORMATION SUBJECT TO PRIVILEGED COMMUNICATIONS – TREATMENT SUBJECT TO PROTECTIVE ORDER

19-23649-shl Doc 2165-10 Filed 12/18/20 Entered 12/18/20 18:09:56 Exhibit 52B Pg 2 of 6

Exhibit B

## ADDITIONAL INFORMAL REQUESTS

A. All documents and communications concerning any actual or potential claims against or liability of Purdue or any of its owners or other affiliates arising out of or relating to, directly or indirectly, the sale, manufacture, marketing or distribution of opioids.[1]

B. All documents and communications concerning any notice or other disclosure to, discussion, suspicion, concern, or consideration by, or awareness of, any Sackler of any actual or potential claims against or liability of Purdue or any of its owners or other affiliates arising out of or relating to, directly or indirectly, the sale, manufacture, marketing or distribution of opioids.

C. All documents and communications concerning transfers of any kind made or contemplated by Purdue to or for the benefit of any Sackler, including documents concerning or reflecting consideration by any person, including, without limitation, any transferee or Purdue fiduciary, of the reason(s) for or desirability of any such transfer.

D. All documents and communications exchanged between any Sackler and any attorneys or other advisors regarding any of the transfers identified in the Cash Transfers Report, including any communication concerning any actual or potential claims against or liability of Purdue or any of its owners or other affiliates arising out of or relating to, directly or indirectly, the sale, manufacture, marketing or distribution of opioids.

E. All documents and communications concerning any discussion or consideration by or with Purdue, any Sacklers or any Purdue fiduciaries concerning whether Purdue could be, or could become, insolvent, or engaged in business for which it had unreasonably small capital, or incurring debts beyond its ability to pay, or subject to other actual or potential financial distress.

F. All Documents and communications concerning any value allegedly provided in exchange for any transfers directly or indirectly from Purdue to or for the benefit of any Sackler, including without limitation transfers identified in the Cash Transfers Report.

G. Documents and communications sufficient to identify, with respect to each transfer directly or indirectly by Purdue to any Sackler, the location where the transfer was made, including, without limitation, the transfers in the Cash Transfers Report.

H. All tax returns and other filings with any taxing authority by any Sackler that received a transfer directly or indirectly from Purdue, including, without limitation, the transfers identified in the Cash Transfers Report for each year in which a transfer was included in such returns or other filings.

I. All documents prepared by or supplied to, and communications with, the Sacklers concerning the calculation and/or payment of any tax liability associated with Purdue's activities and any dividend or other transfer made by Purdue in connection with such liability.

---

[1] Certain terms used in these informal requests are defined below.

1

UNREDACTED VERSION OF EXHIBIT 52 - CONTAINS PROFESSIONALS OR PRIVILEGED COMMUNICATIONS - TREATED SUBJECT TO PROTECTIVE ORDER

19-23649-shl    Doc 2165-10    Filed 12/18/20    Entered 12/18/20 18:09:56    Exhibit 52B
Pg 3 of 6

Exhibit B

J.  All documents and communications concerning the claim that transfers made directly or indirectly by Purdue to or for the benefit of any Sackler in connection with the payment of taxes are not subject to recovery as fraudulent transfers.

K.  All documents and communications concerning the claim that Purdue ceased distributions when the magnitude of litigation allegedly became apparent in 2017.

L.  Documents sufficient to identify all transfers to partners of Purdue Pharma, L.P., and from those partners to or for the benefit of the Sacklers.

***Documents sufficient to identify all transfers to Pharmaceutical Research Associates L.P. ("PRALP") and reinvestment of the sums transferred to PRALP in affiliates.***

M.  Documents sufficient to identify all tax distribution to or for the benefit of the Sacklers, including, without limitation, distributions made to BR Holdings Associates Inc., or Beacon Company and Rosebay Medical Company L.P.

N.  All documents and communications concerning the knowledge, actual or constructive, of any person, not employed by Purdue, of the existence, amount or other circumstances of any transfer made by Purdue to or for the benefit of Sacklers, including, without limitation, documents sufficient to identify any such persons and the date or dates upon which such persons became aware (or should have become aware) of the existence, amount or other circumstances of the transfers.

O.  All documents concerning any communications to which any Sackler was a party concerning actual or potential claims against or liability of Purdue or any of its owners or other affiliates arising out of or relating to the sale or marketing of opioids during the years 2007 through 2019.

P.  All information supplied to, requested by, or otherwise available to JP Morgan, Moody's, S&P or any other outside entity concerning claims against or potential liability of Purdue arising out of or relating to the sale or marketing of opioids in connection with any reports or analyses prepared by such entities upon which any defendant may rely to try to establish that Purdue was not insolvent at any time.

Q.  All documents and communications concerning agreements, consent judgments or other arrangements of any kind relating to claims against or liability of Purdue, any current or former employee, officer, or director of Purdue, or any of the Sacklers, including, without limitation, any such arrangements with the Department of Justice or any other government unit, agency or instrumentality, whether state, local, federal, tribal or otherwise.

R.  All documents and communications concerning compliance by or oversight Purdue in connection with the Corporate Integrity Agreement ("CIA"), Assurance of Discontinuance ("AOD") or Abuse Deterrence and Detection ("ADD") program or any other obligations imposed upon Purdue or any of its affiliates in connection with any agreements, consent judgments or other arrangements with the Department of Justice or any other government unit, agency or instrumentality, whether state, local, federal, tribal or otherwise.

2

UNREDACTED VERSION OF EXHIBIT CONTAINS PRIVILEGED COMMUNICATIONS - TREATMENT SUBJECT TO PROTECTIVE ORDER

Exhibit B

S. All documents and communications concerning any investigation relating to Purdue and its opioid marketing, sales and distribution practices by the Department of Justice or any other government unit, agency or instrumentality, whether state, local, federal, tribal or otherwise, including, without limitation, the investigation carried out by the New York Attorney General.

T. All documents and communications concerning the formation of Purdue Pharma L.P., Purdue Pharma Inc. and any limited partners of Purdue Pharma L.P., including any reason(s) for transitioning to the limited partnership structure and selection of, and modifications to, the identities of the limited partners of Purdue Pharma L.P.

U. For each of Purdue, including Purdue Pharma L.P. and Purdue Pharma Inc., and any of the intermediate entities allegedly standing between Purdue and the Sackler family members or the trusts established for their benefit:

1. all (a) incorporation or similar formation documents, including bylaws, operating agreements and amendments, articles of organization and shareholder ledgers (b) minutes, presentations, resolutions or similar materials of any board or similar governing body, (c) documents and communications concerning any bank accounts or other assets, including with respect to any comingling of assets with other affiliated entities, (d) state and federal tax returns or other filings and all K1's for individual members or partners, (e) financial statements (f) bank information, including banking institution and specific bank account numbers, bank statements, cancelled checks or similar, and

2. documents and communications sufficient to identify the entity's capitalization at all relevant times, and all of the entity's (a) addresses, (b) directors, officers, managers, general partners, managing members or similar (c) limited partners, members, stockholders and other owners or stakeholders of any kind, (d) distributions, dividends or similar, (e) efforts to maintain corporate formalities and (f) operations or activities of any kind, and

3. all documents and communications concerning the reason(s) for the formation and/or interposition of such entity between Purdue and the Sackler family members or the trusts established for their benefit.

V. All other documents and communications concerning any of the defenses to liability and other claims and arguments identified in the December 6, 2019 presentations of the Sacklers, including the portions filed on the bankruptcy docket on or around December 20, 2019 and later withdrawn.

**DEFINITIONS**

Please refer to the definitions provided below in responding to the requests above.

**"Abuse Deterrence and Detection"** or **"ADD"** refers to 2002 Purdue-initiated program implemented as a tool to assist its salesforce in recognizing and reporting improper prescribing and abuse and diversion of opioids.

3

UNREDACTED VERSION OF EXHIBIT 52B FILED FOR IN CAMERA INSPECTION - PRIVILEGED COMMUNICATIONS - TREATMENT SUBJECT TO PROTECTIVE ORDER

19-23649-shl  Doc 2165-10  Filed 12/18/20  Entered 12/18/20 18:39:56  Exhibit 52B
Pg 5 of 6

Exhibit B

"**Assurance of Discontinuance**" or "**AOD**" refers to August 20, 2105 agreement entered into between Purdue and the New York Attorney General in which Purdue agreed to oversight over its ADD program.

"**Cash Transfers Report**" means the report of the Special Committee of the Board of Directors of Purdue Pharma L.P., entitled *Cash Transfers of Value Analysis*, which is Exhibit A to Notice of Filing of Report of the Special Committee filed in the Debtors' chapter 11 cases at Docket No. 654.

"**Claim**" includes any actual or potential cause of action, complaint, lawsuit, or obligation, whether brought in or resulting from a civil, criminal, regulatory, or administrative proceeding.

"**Communication**" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

"**Concerning**" means relating to, referring to, describing, evidencing or constituting.

"**Corporate Integrity Agreement**" or "**CIA**" means the agreement entered into between Purdue Pharma L.P and the Office of Inspector General of the U.S Department of Health and Human Services, with effective date July 31, 2007.

"**Covered Parties**" has the meaning ascribed to it in the Amended Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties filed in the Debtors' chapter 11 cases at Docket No. 431.

"**Document**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

"**Identify**" **(with respect to persons)**: When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

"**Identify**" **(with respect to documents)**: When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

"**Independent Associated Company**" or "**IAC**" means any company that is associated with Purdue and/or ultimately owned, wholly or in part, directly or indirectly, by any Covered Party, including but not limited to Mundipharma, and any officer, director, or employee of the same.

"**Person**" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

4

UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL - CONTAINS INFORMATION SUBJECT TO COMMON INTEREST PRIVILEGED COMMUNICATIONS - TREATED AS CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

19-23649-shl Doc 2165-10 Filed 12/18/20 Entered 12/18/20 18:39:56 Exhibit 52B Pg 6 of 6

Exhibit B

**"Purdue"** means Purdue Pharma L.P., and all of its predecessors, affiliates, subsidiaries, officers, directors, agents, and/or employees.

**"Sackler"** or **"Sacklers"** includes the Covered Parties as defined in the Amended Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties filed in the Debtors' chapter 11 cases at Docket No. 431, and the late Beverly, Raymond and Mortimer Sackler where applicable, and any Trusts, IACs, representatives, agents, attorneys and advisors to any of them.

**"Transfer"** means the creation of a lien, the retention of title as a security interest, the foreclosure of a debtor's equity of redemption, or each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property, or an interest in property, including, but not limited to, transfers identified in the Cash Transfers Report and any non-cash transfers.

**"Trust"** means any trust or other entity (not including the IACs) created by any Covered Party or over which any Covered Party possesses a beneficial interest or trusteeship, or over which any Covered Party possesses, exercised or released any general power of appointment.