UNREDACTED - SHOULD BE UNDER SEAL - ONLY FOR ATTORNEYS' EYES - PRIVILEGED COMMUNICATIONS - TREAT SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 56-1

DRAFT – 9/4/2020

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
jsorkin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of*
*Unsecured Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*, | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF 30(b)(6) DEPOSITION OF THE DEBTORS**

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 30 of the Federal Rules of

Civil Procedure (the "Federal Rules"), as made applicable herein by Rules 7026, 7030 and 9014

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

DRAFT – 9/4/2020

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al. (the "Official Committee"), by and through its undersigned proposed counsel, will take the deposition upon oral examination of a witness or witnesses to be designated by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), who are competent to testify regarding the Topics of Examination set forth in **Exhibit A**. The deposition will commence at [TIME] on [DATE]. The deposition will take place remotely via videoconference before an officer authorized by law to administer oaths and will be recorded by audio, video, and/or stenographic means, and will continue from day to day until completed. Counsel for the Ad Hoc Group of Non-Consenting States will also participate in the examination.

Dated: September [__], 2020
New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

By: ***DRAFT***
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of
Unsecured Creditors of Purdue Pharma L.P., et al.*

DRAFT – 9/4/2020

**EXHIBIT A**

UNREDACTED 19-23649-shl Doc 2165-15 Filed 12/18/20 Entered 12/18/20 08:39:56 Exhibit
SHOULD BE FILED UNDER SEAL – CONTAINS PRIVILEGED
COMMUNICATIONS – TREAT SPECIFIED BY PROTECTIVE ORDER
56-1 Pg 5 of 15

DRAFT – 9/4/2020

## INSTRUCTIONS

The Debtors shall produce to testify on their behalf one or more officers, directors, or managing agents, or designate other persons who consent to testify on their behalf, in each case who have knowledge of the Topics of Examination set forth below. The individual(s) designated shall testify as to matters known or reasonably available to the Debtors. The Debtors shall identify in writing at least 5 business days in advance of the deposition the name of each person who will testify and the subject matters on which each person will testify.

## DEFINITIONS

The following definitions of terms apply to all Topics of Examination below. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. Any references to a corporation, partnership, proprietorship, association, organization or any other business or legal entity (including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

2. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

UNREDACTED 19-23649-rdd Doc 2165-15 Filed 12/18/20 Entered 12/18/20 08:39:56 Exhibit SHOULD BE TREATED AS CONFIDENTIAL – CONTAINS PRIVILEGED COMMUNICATIONS - TREAT SUBJECT TO PROTECTIVE ORDER 56-1 Pg 6 of 15

DRAFT – 9/4/2020

4. The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. The term "<u>including</u>" shall be construed to mean including, but not limited to.

6. "<u>I-Way Entities</u>" means entities that are directly or indirectly owned by only one "side" of the Sackler families, *i.e.*, either the descendants of Mortimer Sackler or the descendants of Raymond Sackler.

7. "<u>II-Way Entities</u>" means entities that are directly or indirectly owned by both "sides" of the Sackler families, but that are not among the IACs as defined herein, including the descendants of Mortimer Sackler and the descendants of Raymond Sackler, including but not limited to: Avrio Health, Inc., BR Holdings Associates Inc., BR Holdings Associates L.P., Connecticut Avenue Realty Co., Inc., Coventry Technologies L.P., E.R.G. Realty, Inc., Essential Raw Materials, IAF Corporation, Midvale Chemical Company, Nappwood Land Corporation, New Suffolk Holdings LLP, One Stamford Realty, L.P., Pharma Associates Inc., Pharma Associates L.P., Pharma Technologies Inc., Pharmaceutical Research Associates L.P., Pharmaceutical Research Associates, Inc., PLP Associates Holdings Inc., PLP Associates Holdings L.P., PRA Holdings, Inc., Purdue Biopharma Inc., Purdue Biopharma L.P., Purdue Healthcare Technologies Inc., Purdue Healthcare Technologies L.P., Purdue Pharma Technologies Inc., Rhodes Pharmaceuticals Inc., Rhodes Technologies Inc., RSJ Company L.P., Sawwood Land Corporation, The P.F. Laboratories, Inc., The Purdue Frederick Company Inc., The Seven Hundred Realty Corporation, The Terramar Foundation, Inc. and TXP Services, Inc.

UNREDACTED – SHOULD BE DECLASSIFIED ONLY AFTER CONSULTING INTERNAL PRIVILEGED COMMUNICATIONS – TREAT SUBJECT TO PROTECTIVE ORDER

DRAFT – 9/4/2020

8. "Concerning" has the meaning set forth in Local Rule 26.3, as adopted by Local Bankruptcy Rule 7026-1, and means relating to, referring to, describing, evidencing or constituting.

9. "Debtors" means the debtors in the case titled *In re Purdue Pharma L.P., et al.*, chapter 11 No. 19-23649 (RDD) (Bankr. S.D.N.Y.) and any and all predecessors, officers, directors, employees, agents, consultants, advisors, attorneys, and representatives or other persons acting on their behalf (including the outside counsel of such entities), and any board of directors, and any committee or subcommittee of any board of directors of any of the Debtors.

10. Independent Associated Company" or "IAC" has the meaning ascribed to it in the July 6, 2020 Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examinations of and Document Production by Third Parties, filed in the Debtors' chapter 11 cases at Docket No. 1340, and the Amended Case Stipulation.

11. "McKinsey" means McKinsey & Company, and any of its affiliates, subsidiaries, officers, directors, employees, agents, consultants, or other persons acting on their behalf.

12. "Person" has the meaning set forth in Local Rule 26.3, as adopted by Local Bankruptcy Rule 7026-1, and means any natural person, corporation, firm, partnership, other unincorporated association, company, trust, fund, government agency, or entity. For the avoidance of doubt, this includes current and former employees, officers, directors, partners, agents, brokers, representatives, and accountants.

13. "Professional" means any counsel, consultant, advisor, testifying expert, nontestifying expert, agent, representative, or other Person engaged to provide or involved in providing at any time any services.

14. "Sackler Entities" comprise both the so-called I-Way Entities and II-Way Entities.

6

UNREDACTED 19-23649-rdd Doc 2165-15 Filed 12/18/20 Entered 12/18/20 08:39:56 Exhibit
SHOULD ONLY BE FILED UNDER SEAL AT 56-1 Pg 8 of 15 INTERIM PRIVILEGED
COMMUNICATIONS - TREAT SUBJECT TO PROTECTIVE ORDER

DRAFT – 9/4/2020

15. Transfer" means each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with real or tangible property (including goods and services), or an interest in property, including but not limited to royalties, licensing of rights, business services, rent, Transfers identified in the Cash Transfers Report and the Intercompany and Non-Cash Transfers Report, any cash distribution or tax distribution, the creation of a lien, the retention of title as a security interest, the foreclosure of a Debtor's equity of redemption, the purchase of shares or "preferred shares", and loan(s) equity transfers or other forms of funding.

16. "You" or "Your" means the Debtors, as well as their affiliates, predecessors, successors, partners, principals, officers, directors, attorneys, and Professionals, and other advisors, agents, employees, representatives, and other persons acting or purporting to act on their behalf.

## TOPICS OF EXAMINATION

1. The Debtors' assessments of actual or potential litigation liability, by year since 2000, including but not limited to knowledge of any studies on opioid liability; any actions, whether individual, class, governmental, or otherwise, filed against the Debtors or other manufacturers and marketers of opioid products; types of potential claims that could have been filed against the Debtors or other manufacturers and marketers of opioid products; and identities and/or groupings of potential claimants that did assert or could have asserted claims against the Debtors.

2. Debtors' monitoring of actual and potential litigation, as described in Topic 1, by year since 2007.

3. Any protocol(s) implemented by the Debtors, by year since 2000, for assessing any actual or potential litigation liability.

4. Consideration, approval, execution, terms, and purpose of any Transfers or proposed Transfers, by year since 2000, out of the Debtors for the direct or indirect benefit of the Sackler family, including but not limited to Transfers to the IACs, the Debtors' parent entities, any Sackler Entity, and any of the Debtors' affiliates, subsidiaries, and predecessors, whether such Transfers were of cash, non-cash, or otherwise, including, specifically:

   a. OxyContin royalty payments made by the IACs to the Debtors;

   b. Transfer of rights to non-abuse deterrent formulation (ADF) OxyContin to Purdue Holdings LP (now known as Pharmaceutical Research Associates LP) effective January 1, 2017;

   c. Transactions between Lucien Holdings Sarl and the Debtors; and

   d. Transfer of stock of Infinity Pharmaceuticals, Inc. to Purdue Holdings LP (now known as Pharmaceutical Research Associates LP) in 2008, 2009, and 2013.

5. The diligence, negotiation, and terms of all license agreements or intellectual property transfers between the Debtors, on the one hand, and any IACs, on the other hand, and any amendments thereto, including:

   a. How royalty rates owed by the IACs under such agreements were established;

   b. Who negotiated and approved and/or authorized the terms of such agreements;

   c. When and why the royalty rates under such agreements were changed; and

   d. Debtors' analysis of the value of any intellectual property, license agreements, royalty agreements, or the consideration received in return for any licensing or transfer of intellectual property, including but not limited to non-abuse-deterrent formulations of OxyContin and any product of the Debtors.

8

UNREDACTED SHOULD BE CLASSIFIED ONLY AS CONFIDENTIAL PRIVILEGED COMMUNICATIONS - TREAT SUBJECT TO PROTECTIVE ORDER

DRAFT – 9/4/2020

6. The involvement of the Debtors in the diligence, negotiation, terms, amendments, and attempted or actual termination of all license agreements between any IAC and any third party, and any impact the Debtors' economic viability, including the discontinuance of royalty payments by the IACs for non-ADF OxyContin to PPLP, and/or bankruptcy may have or arguably may have on any third party's right to terminate or renegotiate such agreements.

7. Assessments of the liquidity and/or solvency of the Debtors prepared by, for, or on behalf of the Debtors, or otherwise provided to the Debtors.

8. The corporate structure of the Debtors, including the reasons for any changes in such corporate structure, by year since 2000, changes in membership of the Debtors' respective Boards of Directors, including the selection of independent directors, and the identity, nature, dates of existence, and purview of any committee(s) of the Debtors' respective Boards of Directors, including the Special Committee of the Board of Directors of Purdue Pharma Inc. and any other committee or subcommittee of the Board of Directors of Purdue Pharma Inc.

9. Discussion or consideration by the Debtors regarding appointment of counsel for the Special Committee of the Board of Directors of Purdue Pharma Inc. and any other committee or subcommittee of the Board of Directors, including but not limited to the decision whether to appoint separate counsel to the Special Committee of the Board of Directors of Purdue Pharma Inc., and any discussion or consideration of potential or actual conflicts of interest with regard to such representation.

10. The process for decisionmaking by the respective Boards of Directors (or other governing bodies) of the Debtors, including both all formal processes and procedures (e.g., holding meetings, deliberations, taking minutes, etc.) and informal processes and procedures (including any informal advisors, boards, committees, or pre-Board meetings with the ability to

UNREDACTED — SHOULD BE CLASSIFIED AS CONFIDENTIAL AND/OR CONTAINS PRIVILEGED COMMUNICATIONS — SUBJECT TO PROTECTIVE ORDER

19-23649-rdd  Doc 2165-15  Filed 12/18/20  Entered 12/18/20 08:39:56  Exhibit 56-E1 at Pg 11 of 15

DRAFT – 9/4/2020

control, direct, or otherwise influence the decisionmaking of the Debtors Boards/governing bodies).

11. The selection, addition, and roles of outside and/or independent directors, by year since 2000, including but not limited to the process and deliberation of selection of such directors, the roles such directors played in connection with their service on the Debtors' respective boards of directors, and the indemnification of any such directors by any of the Debtors for their service as board members.

12. Government or regulatory investigations of the Debtors and/or their products, by year since 2000, including but not limited to any government or regulatory investigations by a governmental entity or subdivision thereof within the United States, and any government or regulatory investigations by any government, governmental entity, or subdivision thereof in any other country.

13. Any joint defense, common interest, joint representation, or other asserted privileged relationship between the Debtors or any Debtor, on one hand, and any individual member of the Sackler family or any IAC or IACs on the other, including specifically identifying any interests shared with (or adversity between) such parties, the related claims or other proceedings in connection with such interest is shared, and the dates and nature of any alleged joint engagement(s) respecting those persons.

14. The Debtors' consideration of and/or involvement in any poppy farm projects, investments, and/or joint ventures, including but not limited to any such projects in Tanzania, and any such projects, investments, and/or joint ventures with Noramco, whether or not any such project was undertaken or completed.

UNREDACTED 19-23649-rdd Doc 2165-15 Filed 12/18/20 Entered 12/18/20 08:39:56 Exhibit
SHOULD BE CLASSIFIED AS HIGHLY CONFIDENTIAL OR PRIVILEGED
COMMUNICATIONS - 56-1 at Pg 12 of 15 SUBJECT TO PROTECTIVE ORDER

DRAFT – 9/4/2020

15. The Debtors' suspicious order monitoring ("SOM") programs, efforts, and/or initiatives, by year since 2000, including but not limited to any changes in SOM programs over time, governmental and/or regulatory oversight of SOM, designation of certain prescribers as "Region Zero", and the establishment [and operations] of the Order Monitoring System ("OMS") Committee.

16. The Debtors' awareness of abuse or diversion of any opioid product, by year since 2000, including but not limited to any studies on opioid abuse or diversion, and Debtors' consideration or implementation of anti-abuse or anti-diversion efforts and any changes in such efforts over time.

17. The Debtors' awareness of harms from opioid overdoses, opioid addiction, and opioid use disorder, by year since 1995, including but not limited to harms associated with patients taking higher doses of opioids and taking opioids for longer periods of time, and Debtors' consideration or implementation of efforts to reduce such harms.

18. The Debtors' efforts, at any time since 1995, to resist or counteract public health initiatives related to opioids by public health and safety organizations including but not limited to the Food and Drug Administration, Centers for Disease Control and Prevention, Drug Enforcement Administration, United States Department of Justice ("DOJ"), and state attorneys general.

19. The Debtors' efforts, at any time since 1995, to monitor or influence the dose mix of the Debtors' opioids prescribed or dispensed in the United States, the average number of tablets per prescriptions, or the length of therapy.

20. The retention of McKinsey by the Debtors, including but not limited to any proposals made or advice given to the Debtors by McKinsey. The Official Committee further

UNREDACTED 19-23649-shl Doc 2165-15 Filed 12/18/20 Entered 12/18/20 08:39:56 Exhibit PRIVILEGED COMMUNICATIONS - SUBJECT TO 56-1 AT Pg 13 of 15 PROTECTIVE ORDER

DRAFT – 9/4/2020

requests copies of any and all engagement letters entered into among any of the Debtors, on the one hand, and McKinsey on the other.

21. The Debtors' involvement with any electronic health record ("EHR") company, including but not limited to Practice Fusion, and any negotiations and/or discussions with any EHR company relating to inclusion of any of the Debtors' products in or on any EHR platform, including the conduct described in paragraphs 24-25 of the Addendum to the Proof of Claim filed by the DOJ.

22. The Debtors' involvement with the specialty pharmacy companies LindenCare, ReCept, and SimfaRose, including the conduct described in paragraphs 26-28 of the Addendum to the Proof of Claim filed by the DOJ.

23. The Debtors' payments to prescribers to serve as corporate advisors or speakers, including the conduct described in paragraphs 21-23 of the Addendum to the Proof of Claim filed by the DOJ.

24. The Debtors' entry into a consent decree with the DOJ in 2007, including but not limited to:

    a. the negotiation of the consent decree;

    b. the Debtors' obligations thereunder;

    c. any subsequent government investigations based on the Debtors' obligations,

    d. any changes in the Debtors' sales practices after entry into the consent decree,

    e. any efforts by the Debtors to identify, discipline, or terminate the supervisors and employees who committed misconduct described in the Agreed Statement of Facts contained in such consent decree;

UNREDACTED 19-23649-rdd Doc 2165-15 Filed 12/18/20 Entered 12/18/20 08:39:56 Exhibit
SHOULD BE CLASSIFIED AS CONFIDENTIAL – POTENTIALLY PRIVILEGED
COMMUNICATIONS - SUBJECT TO PROTECTIVE ORDER
56-1 At Pg 14 of 15

DRAFT – 9/4/2020

      f. any discussions with any of the states that did not enter into the consent decree, by year, since 2007.

25. Communications between the Debtors, on the one hand, and federal, state, or tribal governmental agencies or entities since 2007 regarding any and all issues relating to opioids.

26. The Debtors' insurance policies, by year since 2000, including but not limited to any attempts made to obtain products liability, general liability, and/or directors' and officers' insurance, whether or not such insurance was a result of self-insurance or provided by an insurance carrier, and entities covered by such policies, and communications with the board concerning those matters.

27. The roles that members of the Sackler family held, whether formally or informally, at the Debtors, including but not limited to membership on any of the Debtors' boards of directors or committees thereof, employment by the Debtors, and/or role as consultant to the Debtors, by year since 2000, and involvement in or influence over the affairs of the Debtors regardless of whether formally employed by the Debtors

28. Any contemplated sales of any of the Debtors' assets, businesses, or properties, whether in whole or in part, and any marketing thereof.

29. The relationship between MNP Consulting Limited ("MNP") and MN Consulting LLC ("MNC") and the Debtors (including their limited partner and indirect owners through BR Holdings), including but not limited to:

      a. Composition of MNP/MNC Board of Directors, including selection of and appointment of directors;

      b. MNP/MNC oversight of and/or recommendations and other communications to the Debtors, including advice or oversight relating to Transfers or distributions out of the Debtors;

13

UNREDACTED 19-23649-rdd Doc 2165-15 Filed 12/18/20 Entered 12/18/20 08:39:56 Exhibit
56-1 at Pg 15 of 15
SHOULD NOT BE FILED ON ECF – PRIVILEGED COMMUNICATIONS - SUBJECT TO PROTECTIVE ORDER

DRAFT – 9/4/2020

    c. MNP/MNC authority to control, direct, or otherwise influence the operations and/or strategy of the Debtors;

    d. How the Debtors determined whether to accept the recommendations and/or advice provided by MNP/MNC, and how often such recommendations and/or advice were rejected by the Debtors; and

    e. The policies, procedures, and practice(s) of the Debtors for reporting to and/or elevating issues to MNC/MNP.

30. The involvement and/or use of Debtor personnel or other Debtor resources in any research and development projects conducted or products developed by the IACs.

31. Discussion, analysis, or consideration by the Debtors' of increasing the amount of corporate debt of the Debtors, by year since 2007, including but not limited to the Debtors' receipt of any credit ratings reports.

32. Diligence, negotiations, preparation, implementation, and oversight of any of the Debtors' proposed public health initiatives.

33. The history and management of any IT services, email or other electronic platforms or systems used by the Debtors, whether or not shared with the IACs, including:

    a. The approval(s) and reason(s) for any decisions related to the use of such IT services;

    b. The migration of IAC emails to Microsoft Office 365 ("O365"), and transition of O365 from the United States to Europe;

    c. The separation or segregation of Purdue emails from O365;

    d. The history and scope of services provided by Mundipharma IT Services Limited and its subsidiaries to the IACs, the Debtors, and/or any other Sackler Entities, including the terms of all agreements related to such services; and;

    e. Any suspected or actual loss of ESI for any IAC, including the cause, timing, and content (e.g., subject matter, custodians, date range) of such lost ESI, and any investigations or audits of any suspected loss(es).