# EXHIBIT 68

New York        Paris
Northern California     Madrid
Washington DC     Hong Kong
São Paulo     Beijing
London     Tokyo

**Davis Polk**

**James I. McClammy**

Davis Polk & Wardwell LLP          212 450 4584 tel
450 Lexington Avenue          james.mcclammy@davispolk.com
New York, NY 10017

**CONFIDENTIAL**

September 29, 2020

Re:     Purdue Pharma L.P. et al., No. 19-23649 (Bankr. S.D.N.Y.)

Mitchell P. Hurley
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745

Dear Mitch:

We write in response to the Official Committee of Unsecured Creditors' (the "**Committee**")
September 24 email and letter.

### Privilege Log Issues

We disagree with the Committee's statement that we have "repeatedly said" that we will neither
provide additional information regarding the privilege claims in our logs or produce the
documents.  Not only did we agree to provide the Committee with any documents determined to
be not privileged after additional quality control review, we have asserted that our privilege logs
provide more than sufficient information for the Committee to fully evaluate the privilege claims
made.  We encouraged the Committee to stop its non-constructive practice of identifying
categories of documents as deficient simply because a third party is included on the
communication, and to instead engage in a document-by-document review to provide us with
specific documents that the Committee believes are not privileged for one reason or
another.  For example, the log entry for document PL-00069701 included in Exhibit A of the
Committee's September 21 letter reveals that it is a December 2018 communication in which a
Teneo employee emailed attorneys from WilmerHale, Stites & Harbison, JHA, Dechert, and
Reminger; Purdue's in-house counsel Richard Silbert; a Purdue employee; Tony Roncalli; other
Teneo employees; and a Goldin employee.  The bases for withholding this document are
Attorney-Client Communication, Attorney Work Product and Common Interest; and the privilege
description provides that the document is "[e]mail correspondence containing information or
analysis regarding communications with the press or other media and prepared in connection
with the same, in common interest with related parties."  All of this information should enable the
Committee to conclude that Teneo and Goldin, both public relations firms, were assisting in
formulating PR strategy in connection with litigation.  Further, one of the bases for withholding
this document is the work product doctrine, which as the Committee surely knows, protects

CONFIDENTIAL

2                                                    September 29, 2020

materials prepared in connection with litigation even if a third party is included on the communication. This is just one example that highlights that our logs are not "too vague or conclusory" and that we have met our burden under the rules. It is now incumbent upon the Committee to sufficiently explain why these documents warrant additional review. Could you all please explain why despite all of this information, the Committee still insists that the logs are deficient simply because third parties are included?

Despite the Committee's refusal to even consider engaging in the more productive exercise that we've suggested, we have reviewed and continue to review documents falling in the categories raised by the Committee to determine if any such documents should in fact be produced. We have conducted another review of many of the documents included in the exhibits to the Committee's September 21 letter, and we will produce any documents determined to be not privileged after additional review. As stated in our September 23 email, we will provide amended logs this week to reflect any documents that have been removed. We will also provide the Committee with a list of documents that have been determined to be not privileged after additional review.

## Privilege Exceptions

We are continuing to consider your list of "modified" categories of documents that you contend are subject to disclosure pursuant to the privilege exceptions. We note, though, that this list remains exceedingly broad. For example, you continue to request that the Debtors produce all privileged documents from 2006 to the present day regarding "opioid claims" and "Purdue's potential liability . . . related to fraudulent conduct." As we explained at length in our September 8 letter, your continued demands for a sweeping waiver of the Debtors' privilege with respect to these categories and others you propose is inappropriate and contrary to law. We will not retread that ground here.

We also disagree with your characterization of our meet and confer efforts to date. We have engaged with you in good faith on these issues for nearly two months, including via a teleconference as recently as this past week. We have also repeatedly offered to consider any particularized request for information that you may make. Yet you have made no meaningful attempt to do so. You have claimed that you cannot make more particularized requests because the Debtors' Bankruptcy Privilege Logs are not detailed enough. *See* Letter from M. Hurley to J. McClammy, dated Sept. 13, 2020, at 1. But the Committee has been investigating possible estate claims for many months. The Committee is therefore in the best position to articulate precisely what information it requires to complete its investigation. The approach you propose, by contrast, requires the production of potentially many thousands of documents, which would have to be closely reviewed by many parties at substantial costs to the estates, with potentially comparatively little benefit. That being said, consistent with our many prior offers on this point, we remain prepared to consider any particularized requests to withdraw a privilege assertion. We are also continuing to consider the "modified" categories you propose. For these reasons, we do not believe discussions regarding your requests should be terminated.

We are open to further discussion.

Sincerely,

/s/ Jim McClammy

James I. McClammy