# EXHIBIT 70

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL - CONTAINS PRIVILEGED COMMUNICATIONS - TREATED AS SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| **From:** | McClammy, James I. |
| **Sent:** | Friday, May 22, 2020 7:52 PM |
| **To:** | Katherine Porter |
| **Cc:** | Oluwole, Chautney M.; apreis@akingump.com; Mitchell Hurley; Sorkin Joseph L.; Sara Brauner; Jack Murphy; pbutler@akingump.com; Richards Jillie |
| **Subject:** | Fwd: Purdue: Official Committee Request for DOJ Documents |
| **Attachments:** | June 2019 Letter Agreement.pdf; ATT00001.htm; March 2020 Letter Agreement.pdf; ATT00002.htm |

Katherine/Akin Team

This follows up on our prior communications and your email below. After you review, we can set up a time to finalize a path forward.

For context, we have been diligently working with the Committee to address its requests, all the while mindful of the need to minimize costs – monetary, time and distraction, and potential delay – associated with responding to those requests. We have asked that requests be tailored so that the review process can be focused on reviewing and producing documents pertinent to this proceeding. Accordingly, we have agreed to the review for production of approximately 284,832 documents from 40 custodians and are in discussions with you that could result in the review of upwards of approximately 877,569 more documents on the estate terms alone.

With respect to documents produced to the DOJ, in calls DPW and Skadden, we shared Debtors' position that we would not withhold any document responsive to your requests solely on the grounds that it had been produced to the DOJ, but it was not proper to request, or for us to respond to a request, for the DOJ productions. We understand the Committee disagrees and is maintaining its request for all documents produced to the DOJ.

As discussed, there are essentially three categories of documents that are subject to your request for documents produced to the DOJ: (i) documents produced before the first non-waiver agreement was put in place in June 2019; (ii) documents produced after the non-waiver agreement was put in place in June 2019; and (iii) presentations and white papers prepared in response to DOJ inquiries or otherwise provided to the DOJ. As discussed, just because the first two categories of documents were produced to the DOJ does not mean that they bear any relationship to matters that may be at issue in these cases. Indeed, the DOJ productions are likely significantly over-broad in that they covered a substantial number of custodians and very broad and numerous search terms and the documents were produced, in the interest of time, without conducting a responsiveness review at the insistence of the DOJ with whom we have actively been pursuing a resolution. Turning over again large numbers of documents that are

1

likely to include a meaningful amount of irrelevant material as well as privileged material to be reviewed by parties that are, or perhaps will be, paid by the Debtors' estates is not the best use of estate resources.

As noted, we believe our proposal strikes the right balance to provide the Committee with information to which it may be entitled without overburdening the estates or risking an improper intrusion upon the DOJ investigatory process. I provide below some additional information on that proposal.

With respect to Category 1, documents produced before the first non-waiver agreement was in place, there were approximately 319,000 documents produced to the DOJ. Of that total, the Committee already has access to approximately 219,000 of those documents as they were also produced in other civil litigation proceedings. To resolve the issue with respect to the request for documents produced to the DOJ, we propose producing the remaining approximately 100,000 documents to the committee, initially on a Professionals' Eyes Only – Highly Confidential basis. As mentioned, these documents were produced to the DOJ with a single FOIA confidential treatment requested designation. We would need to conduct a confidentiality review to properly designate these documents in accordance with the terms of the Amended Protective Order that is in place in the bankruptcy.

With respect to Category 2, documents produced after the non-waiver agreement was in place, there are approximately 1,940,000 documents in this category. As stated, these documents were not reviewed for responsiveness and an additional privilege review of these documents would need to be conducted before they could be produced. Debtors would need to conduct an additional privilege review since per the non-waiver agreement, the documents were not previously reviewed with the privilege standard appropriate for production in these cases. A review of this size is, we believe, clearly unwarranted where we have already produced to the UCC 6.7 million documents from the MDL and civil litigations and are in the process of reviewing potentially 1,162,401 more documents for production to the UCC, some of which overlaps with what has been produced to the DOJ. In addition to the burden on the Debtors of conducting a confidentiality and privilege review of these documents, having Debtors pay for counsel to review this large number of documents would be significant and is not a reasonable expense when there is likely a significant percentage of documents in that population that are irrelevant.

Regarding the issue of privilege, we have attached versions of the relevant non-waiver agreements in a form that will assist further discussion of this issue. We can arrange a time to further discuss.

Lastly, with respect to Category 3, we reiterate our concern that your request for presentations and whitepapers provided to the DOJ improperly interferes with the DOJ's investigation and

confidential settlement and plea discussions, and is contrary to the protections given to confidential settlement and plea discussions, including Federal Rules of Evidence 408 and/or 410. In light of the hundreds of thousands of additional documents Debtors have already agreed to review and produce, together with the Category 1 documents we are agreeing to produce here, we are hopeful that the Committee will stand down from this request. Our hope is the Committee will seriously consider our expressions of concern that producing such materials would be counterproductive and not risk an intrusion on confidential investigation and settlement/plea agreement processes. We believe that sharing these materials would impede our ability to seek a fair and just resolution as efficiently as possible, which would have a seriously detrimental effect on the estate.

Best,

J.I.M.

---

**From:** McClammy, James I. <james.mcclammy@davispolk.com>
**Sent:** Thursday, May 21, 2020 10:23 AM
**To:** 'Porter, Katherine' <kporter@akingump.com>; Oluwole, Chautney M. <chautney.oluwole@davispolk.com>
**Cc:** apreis@akingump.com; Hurley, Mitchell <mhurley@AkinGump.com>; Sorkin, Joseph L. <jsorkin@AkinGump.com>; Brauner, Sara <sbrauner@akingump.com>; Murphy, Jack <jmurphy@AKINGUMP.com>; Butler, Paul <pbutler@akingump.com>; Richards, Jillie <richardsj@akingump.com>
**Subject:** RE: Purdue: Official Committee Request for DOJ Documents

Katherine –

Acknowledging receipt of the below and confirming that we are working on your requests and will revert. We will also respond on the substance of some of the points presented below.

J.I.M.

**James I. McClammy**

**Davis Polk & Wardwell** LLP

450 Lexington Avenue | New York, NY 10017

+1 212 450 4584 tel | ▇▇▇▇▇▇▇ mobile

james.mcclammy@davispolk.com

Confidentiality Note: This email is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Unauthorized use, dissemination, distribution or copying of this email or the information herein or taking any action in reliance on the contents of this email or the information herein, by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is strictly prohibited. If you have received this email in error, please notify the sender immediately and destroy the original message, any attachments thereto and all copies. Please refer to the firm's Privacy Notice for important information on how we process personal data. Our website is at www.davispolk.com.

**From:** Porter, Katherine <kporter@akingump.com>
**Sent:** Wednesday, May 20, 2020 8:31 PM
**To:** McClammy, James I. <james.mcclammy@davispolk.com>; Oluwole, Chautney M. <chautney.oluwole@davispolk.com>
**Cc:** apreis@akingump.com; Hurley, Mitchell <mhurley@AkinGump.com>; Sorkin, Joseph L. <jsorkin@AkinGump.com>; Brauner, Sara <sbrauner@akingump.com>; Murphy, Jack <jmurphy@AKINGUMP.com>; Butler, Paul <pbutler@akingump.com>; Richards, Jillie <richardsj@akingump.com>
**Subject:** Purdue: Official Committee Request for DOJ Documents

Jim,

Below is a summary of our call yesterday, May 19, regarding documents produced by the Debtors to the DOJ.  Please get back to us on the items we have noted, and let us know if your recollection differs regarding any of the points below.

You advised there are three categories of documents that the Debtors have provided to the DOJ in connection with its investigation of Purdue's role in the opioid crisis: (1) productions made to the DOJ before the execution of the so-called non-waiver agreement between the Debtors and DOJ ("NWA"); which you said you thought had been executed in or around June of 2019; (2) productions made to the DOJ after the execution of the NWA; and (3) the Debtors' presentations and white papers.  You then offered a proposal regarding which of these categories the Debtors were willing to produce.  Although the non-consenting states ("NCSG") were not on the call, you said you would be making the same proposal to them in a separate call.  Please confirm that you have spoken to the NCSG and provide us any details of that conversation.

**Category 1 – Productions made to the DOJ before the execution of the NWA.**

You conceded that the Debtors do not claim the documents in Category 1 are subject to any Debtor-privilege.  You offered to produce those documents, but claimed doing so still would involve a significant burden because the Debtors would have to review them for

UNREDACTED - CONTAINS COMMUNICATIONS THAT ARE ASSERTED TO CONTAIN PRIVILEGED COMMUNICATIONS - TREAT SUBJECT TO PROTECTIVE ORDER

19-23649-shl Doc 2166-10 Filed 12/18/20 Entered 12/18/20 18:47:42 Exhibit 70 Pg 6 of 7

"confidentiality" to ensure they are properly designated under the existing protective order. As a preliminary note, we do not believe documents that already have been produced to a third party without any non-disclosure agreement with that third party could still be considered confidential within the definitions provided in the bankruptcy protective order. Nevertheless, we asked whether the burden you described in connection with confidentiality review would be eliminated if the receiving parties agreed to let you produce all of them on an OPEO basis (subject of course to the receiving parties right to challenge that designation once received), and you agreed that it would.

You advised that these documents number in the six-figure range, and that they can be produced relatively quickly. We asked you to give us a more precise figure for the volume of documents in this category. We hope you will get back to us with this information promptly.

## Category 2 – Productions made to the DOJ after the execution of the NWA.

The Debtors will not agree to produce the documents in Category 2. But, if documents that were produced to the DOJ in this timeframe are also independently picked up by the Official Committee's existing search criteria, the Debtors will not withhold them from production on that basis. You identified two reasons for withholding documents in Category 2. First, you advised that they were not subject to any review for relevance before their production to the DOJ, and therefore many of these documents may not be relevant to the Official Committee's investigation. If so, this could result in some additional burden to the Official Committee, but not to the Debtors, who have already gathered the documents and can send them to us at the push of a button. Nevertheless, to help us consider your concern, please advise with more specificity and as soon as possible the types of documents that were part of this production that you claim likely would or could be irrelevant to the Official Committee's investigation in these cases.

You also argued (as you did on our call last Friday May 15) that some documents in Category 2 were privileged, and that those documents would remain privileged despite their disclosure by the Debtors to the DOJ because of the existence of the NWA. As a result, you contend it would be burdensome to produce to the Official Committee the documents in Category 2 because that would require a privilege review. As you know, we asked you on May 15 to give us a copy of the NWA so we can better assess your claim, but so far you have failed to do so. When we spoke again yesterday, you told us the Debtors have denied our request for a copy of the NWA. You claim this is because the NWA could somehow reveal aspects of the DOJ's investigation, though you freely admit that the DOJ itself has never asserted any claim of "investigatory privilege" with respect to any of these materials, including the NWA and including the Category 2 documents. You also were unable to tell us how many documents are in Category 2.

**Category 3 – The Debtors' presentations and white papers.**

The Debtors also will not agree to produce the documents in Category 3. You advised that the Debtors are not claiming that these documents are subject to attorney-client privilege. Rather, you identified two reasons for withholding them. First, you argued that some of these documents are protected from disclosure because they are subject to Federal Rules of Evidence 408 and 410. We do not agree that either of these rules is a basis for withholding documents from production in discovery, and you cited no authorities to suggest that they are. Second, you argued that disclosure may interfere with the grand jury process or with the DOJ's ongoing investigation. Once again, however, you acknowledged that the government has not attempted to assert any grand jury or investigative privilege itself, and that the concern you identified is purely speculative.

If you do not address our requests above by Friday, May 22, we are prepared to bring this matter to the court's attention. Thank you.

Regards,

Katherine Porter

**AKIN GUMP STRAUSS HAUER & FELD** LLP

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.7467 | Internal: 37467
Fax: +1 212.872.1002 | kporter@akingump.com | akingump.com | Bio

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.