UNREDACTED FOR PROCESSIONAL EYES ONLY - CONTAINS PRIVILEGED COMMUNICATIONS - TREATED AS SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 75

UNREDACTED VERSION OF PROFESSIONAL AND ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS - TREATMENT SUBJECT TO PROTECTIVE ORDER

19-23649-shl Doc 2166-15 Filed 12/18/20 Entered 12/18/20 18:47:42 Exhibit 75 Pg 2 of 4



**JOSEPH L. SORKIN**
+1 212.872.7464/fax: +1 212.872.1002
jsorkin@akingump.com

October 8, 2020

VIA E-MAIL (shecker@kaplanhecker.com;
jdabbs@kaplanhecker.com)

Sean Hecker
Jenna Dabbs
Kaplan Hecker & Fink LLP
350 Fifth Avenue
Suite 7110
New York, NY 10118

    Re:    In re Purdue Pharma L.P. et al., No. 19-23649 (Bankr. S.D.N.Y.)

Dear Counsel:

    As you know, Akin Gump represents the Official Committee of Unsecured Creditors (the "Official Committee") in the above-referenced cases. We, along with the Ad Hoc Group of Non-Consenting States (the "NCSG"), are currently conducting depositions of individuals relating to Purdue (defined below) and the investigation of various potential claims. We write to follow up on our prior communications regarding the deposition of your client, Ms. Robin Abrams, and to confirm that you will accept service of the attached subpoena on behalf of Ms. Abrams.

    In our prior communications, you indicated that Ms. Abrams was not prepared to appear for a deposition voluntarily until (i) pending motions seeking certain privileged communications were resolved and (ii) you received sufficient information regarding the scope and subject matter of the deposition. Today, the Court entered the attached order authorizing the Official Committee and the NCSG to serve subpoenas pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006 on Ms. Abrams and others. Given that we have been unable to reach agreement on Ms. Abrams's voluntary appearance on the dates and timeline we believe necessary for these cases, we are enclosing a subpoena that calls for Ms. Abrams's deposition on Thursday, October 22. Please advise immediately if you are unwilling to accept service of the subpoena. As I believe you know, we must proceed promptly with Ms. Abrams's deposition, including because the parties will participate imminently in a mediation that will likely implicate matters with which Ms. Abrams was closely involved.

    The Official Committee and the NCSG are mindful that Ms. Abrams's position as an attorney could theoretically implicate the attorney-client privilege and/or attorney work product

UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL - CONTAINS PRIVILEGED COMMUNICATIONS - TREATED AS SUBJECT TO PROTECTIVE ORDER



Sean Hecker
Jenna Dabbs
Kaplan Hecker & Fink LLP
October 8, 2020
Page 2

doctrine. We are confident, however, that Ms. Abrams can answer many important questions at her deposition without violating any valid claim of attorney-client privilege or other immunity from disclosure.

You also asked for a preview of topics that we plan to cover with Ms. Abrams, something which we are of course not required to do. As a courtesy, however, and without limiting the scope of the deposition in any way, be advised that the Official Committee and the NCSG plan to ask Ms. Abrams questions concerning her knowledge of operations, procedures, and other aspects of the business of Purdue Pharma L.P. and its affiliated debtors and debtors-in-possession, (collectively, the "<u>Debtors</u>"), including Rhodes Associates L.P., Rhodes Pharmaceuticals L.P., and Rhodes Technologies (collectively, "<u>Rhodes</u>"), and the Debtors' non-Debtor affiliates (together with the Debtors, "<u>Purdue</u>"). Among other things, and as we previously communicated, we intend to ask Ms. Abrams about:

1) Purdue's and Rhodes's anti-diversion and order monitoring programs (including, specifically, Suspicious Order Monitoring (SOM), the Order Monitoring System (OMS), Abuse and Diversion Detection (ADD), Region Zero lists, and any and all related Controlled Substance Act compliance) including reporting to governmental entities and governmental investigations regarding opioids;

2) Internal reporting to management and the Boards of Directors regarding the issues above;

3) Coordination and communications with third parties (outside of Purdue and Rhodes) regarding the above;

4) The sales and marketing of opioids, including Ms. Abrams's involvement in sales and marketing; and

5) Transfers made by Purdue from 2008-2020 to or for the benefit of the Sacklers.

Questions and answers regarding factual information about these and other topics, as opposed to any legal advice she provided, do not implicate privilege concerns. In addition, we intend to question Ms. Abrams concerning some of the many communications and other documents that the Official Committee and the NCSG have received in productions to date for which there was no claim of privilege, concerning which we believe Ms. Abrams may have relevant information,



Sean Hecker
Jenna Dabbs
Kaplan Hecker & Fink LLP
October 8, 2020
Page 3

whether as an author, a recipient or otherwise. We recognize that you and/or the Debtors are likely to object to questions based on privilege and remain available to confer with you and Davis Polk in advance of Ms. Abrams's deposition to discuss your concerns and ways to allow the deposition to proceed as efficiently as possible. In light of the need to proceed with and complete discovery expeditiously, however, we intend to move forward with Ms. Abrams's deposition in advance of any resolution regarding claims of privilege over certain communications withheld by the Debtors.

    Please feel free to reach out should you wish to discuss further.

                        Sincerely,

                        */s/ Joseph L. Sorkin*

                        Joseph L. Sorkin

cc:    Andrew M. Troop, Pillsbury Winthrop Shaw Pittman LLP
        Marshall S. Huebner, Davis Polk & Wardwell LLP