PARTIALLY REDACTED - CONTAINS PROFESSIONALS' EYES ONLY INFORMATION.
TREAT SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 9

PUBLICLY FILED PER STIPULATION [ECF 2140]

PARTIALLY REDACTED - CONTAINS HEALTH PROFESSIONALS' PERSONALLY IDENTIFIABLE INFORMATION. TREAT SUBJECT TO PROTECTIVE ORDER

**To:** Sackler Lefcourt, Ilene ▮▮▮▮▮; Sackler, Dr Kathe ▮▮▮▮▮; Sackler, Dr Raymond R ▮▮▮▮▮; Sackler, Dr Richard ▮▮▮▮▮; Sackler, Dr Mortimer[/O=PURDUE/OU=EU01/CN=RECIPIENTS/CN=MDS01]; Sackler, Jonathan ▮▮▮▮▮; Sackler, Mortimer JR ▮▮▮▮▮; Sackler, Theresa[/OU=VIRTUAL/CN=SACKLERT_VMB]; Baker, Stuart D.[/O=PURDUE/OU=PURDUE US/CN=CHADBOURNE AND PARKE/CN=CHADSTUART.D.BAKER]; Friedman, Michael ▮▮▮▮▮; Gasdia, Russell ▮▮▮▮▮; Landau, Dr. Craig ▮▮▮▮▮; Long, David ▮▮▮▮▮; Mahony, Edward ▮▮▮▮▮; Mallin, William ▮▮▮▮▮; Sexton, Fred ▮▮▮▮▮; Weinstein, Bert ▮▮▮▮▮; Abrams, Robin ▮▮▮▮▮; Bannon, Timothy[▮▮▮▮▮; Rosen, Burt ▮▮▮▮▮; Graham, Aaron ▮▮▮▮▮; Haddox, Dr. J. David ▮▮▮▮▮; Heins, James ▮▮▮▮▮; Must, Alan[▮▮▮▮▮; Silbert, Richard W[▮▮▮▮▮
**Bcc:** ▮▮▮▮▮

**From:** Udell, Howard
**Sent:** Sat 1/27/2007 10:08:24 AM
**Subject:** RE: Settlement

All –

**Redacted**

Howard R. Udell

Executive Vice President, Chief Legal Officer

Purdue Pharma L.P.

PUBLICLY FILED PER STIPULATION [ECF 2140]

CONFIDENTIAL

PPLPC044000010048

PARTIALLY REDACTED - CONTAINS OUTSIDE PROFESSIONALS' PERSONAL INFORMATION. TREAT SUBJECT TO PROTECTIVE ORDER

One Stamford Forum

Stamford, CT 06901



Admitted to Practice in Connecticut and New York

### Purdue settles 90% of pending OxyContin cases

By Jim Zebora
Business Editor

Stamford Advocate

January 27, 2007

Stamford-based drugmaker Purdue Pharma said yesterday it has settled more than 1,000 lawsuits related to its controversial painkiller OxyContin.

Up to now, Purdue said it had resolved every suit claiming injury from OxyContin in its favor, either through dismissal or the plaintiff's withdrawal from the case. The company will not say if its settlement of approximately 90 percent of 1,374 outstanding cases in 10 jurisdictions around the country involved any payment to the plaintiffs.

"We have reached the point that it makes economic sense to resolve these cases under the terms we've been able to realize because of our past success in this litigation," Purdue spokesman Timothy Bannon said.

According to a story in this month's DMReview, an online magazine focusing on business analytics, Purdue ran up more than $400 million in legal fees and expenses fighting the OxyContin cases. The company was billed for about 1.2 million hours of attorney time over several years, DMReview said

Many of the OxyContin suits had been brought by persons claiming to have become addicted to the drug or suffered an overdose, or from families of those who had died from an overdose. None of those claims had succeeded against Purdue, which held that people who illegally obtained or abused OxyContin were responsible for any injuries they suffered.

Likewise, yesterday's settlement "absolutely" does not admit fault by Purdue Pharma in any of the cases, Bannon said.

"This is an important business decision for us," Bannon said. "It enables us to move forward with the development of innovative medicines for physicians to use in the care of patients without having our resources strained by defending product-liability cases."

PUBLICLY FILED PER STIPULATION [ECF 2140]

CONFIDENTIAL

PPLPC044000010049

PARTIALLY REDACTED - CONTAINS OUTSIDE PROFESSIONALS' PERSONALLY INFORMATION. TREAT SUBJECT TO PROTECTIVE ORDER

Companies may have many reasons to stop litigating and start settling cases brought against them, said Stewart Casper of the Stamford law firm Casper & de Toledo LLC.

"The decision a business makes about whether they should fold the tent and resolve a large volume of pending claims is purely a business judgment, but it could be colored by something that is not widely known by the public," said Casper, a former president of the Connecticut Trial Lawyers Association who focuses his practice on medical malpractice and personal injury cases.

Ernest Teitell of Stamford's Silver Golub & Teitell law firm, immediate past president of the CTLA, said any business will perform a risk and benefit analysis on whether to defend or settle a case.

"They ask how much do we have to spend in legal time and what do we risk in payout," Teitell said. Often, he added, citing the multibillion-dollar settlement by the tobacco companies several years ago, evidence that emerges in the discovery process over multiple cases will influence the decision to settle, especially if that evidence would factor into litigating further claims against a company.

Casper said that cases involving pharmaceuticals and other medical products are complex and can change in scope and nature as science advances the knowledge of their effects.

He cited silicone breast implants, which spawned thousands of personal injury lawsuits and a multibillion-dollar settlement with plaintiffs, only to be allowed back on the market by the Food and Drug Administration after it found they were not harmful.

"The jury is still out" on whether the implants will lead to lawsuits in the future, Casper said. "There is no black and white in this at all."

As for Purdue Pharma, the OxyContin settlements remove a big distraction, but do not mean the company won't defend itself going forward.

"New baseless claims will be met with the same vigorous defense that resulted in more than 400 cases being resolved in our favor," Bannon said. "We do not intend to capitulate to baseless claims in the future, just as we have resisted them in the past."

Copyright © 2007, Southern Connecticut Newspapers, Inc.

_____

**From:** Udell, Howard
**Sent:** Saturday, January 27, 2007 8:41 AM
**To:** Sackler Lefcourt, Ilene; Sackler, Dr Kathe; Sackler, Dr Raymond R; Sackler, Dr Richard; Sackler, Dr. Mortimer; Sackler, Jonathan; Sackler, Mortimer JR; Sackler, Theresa; Baker, Stuart D.; Friedman, Michael; Gasdia, Russell; Landau, Dr. Craig; Long, David; Mahony, Edward; Mallin, William; Sexton, Fred; Weinstein, Bert; Abrams, Robin; Bannon, Timothy; Burt Rosen; Graham, Aaron; Haddox, Dr. J. David; Jim Heins; Must, Alan; Silbert, Richard W
**Subject:** Settlement

PRIVILEGED AND CONFIDENTIAL

PUBLICLY FILED PER STIPULATION [ECF 2140]

CONFIDENTIAL

PPLPC044000010050

PARTIALLY REDACTED - CONTAINS OUTSIDE PROFESSIONALS' PERSONAL INFORMATION. TREAT SUBJECT TO PROTECTIVE ORDER

ATTORNEY-CLIENT COMMUNICATION
ATTORNEY WORK PRODUCT

All –

Here's the Staten Island story. Unfortunately, the $75 million was leaked. As Richard Silbert has pointed out, while the $75 million is going to only 1374 individuals ($54,500 per plaintiff), the tolled claims of several thousand additional claimants are also settled.

Howard R. Udell

Executive Vice President, Chief Legal Officer

Purdue Pharma L.P.

One Stamford Forum

Stamford, CT 06901



Admitted to Practice in Connecticut and New York

# OxyContin maker settles suit for $75M

### Agreement with Purdue Pharma includes more than 1,100 lawsuits filed on the Island

Saturday, January 27, 2007

### By FRANK DONNELLY

**STATEN ISLAND ADVANCE**

The maker of the painkiller OxyContin has reached a landmark $75 million national settlement that includes more than 1,100 lawsuits filed on Staten Island by patients alleging they became addicted to the drug and suffered side effects, the Advance has learned.

The agreement, the largest civil litigation settlement on Staten Island, is the first made in a private products-liability case by the manufacturer, Purdue Pharma, which has successfully beaten back more than 400 other claims involving nearly 1,700 claimants

PUBLICLY FILED PER STIPULATION [ECF 2140]

CONFIDENTIAL

PPLPC044000010051

PARTIALLY REDACTED - CONTAINS OUTSIDE PROFESSIONALS' PERSONAL INFORMATION. TREAT SUBJECT TO PROTECTIVE ORDER

around the country in the past six years. It effectively shuts down nearly all existing products-liability litigation against the company.

Stipulations discontinuing the actions were filed yesterday at the Richmond County Clerk's office.

Neither the plaintiffs' lawyers nor Purdue Pharma revealed settlement details, but sources put the total package at $75 million.

At least 20 Staten Islanders were among those awarded settlements, based on the Advance's calculations.

The agreements affect all 1,117 actions brought here, including 924 plaintiffs who live outside New York, plus several hundred other lawsuits brought in various courts around the country.

Prior to the agreement, there had been 1,374 active cases against Purdue Pharma, a company spokesman said.

**NO ADMISSION OF GUILT**

In a statement, Purdue Pharma said the settlement terms for the cases filed on Staten Island "make it economically sensible to resolve these claims now rather than to continue to pay the expenses and bear the burden of defending them."

The company said it would devote the time and money it would have spent defending the lawsuits toward "making and selling innovative medications for the treatment of disease and pain."

There was no admission of guilt on Purdue Pharma's part, said Timothy F. Bannon, the company spokesman. Bannon would not comment on any possible impact the settlement could have on OxyContin sales, which were $948 million in 2005, the most recent year for which figures are available.

Last week, state Supreme Court Justice Joseph J. Maltese, assigned to coordinate the pretrial discovery process in all the New York state cases, denied the company's bid to dismiss the claims filed by the 924 out-of-state residents. It was not immediately clear how much, if any, role that decision played in the agreement.

Lawyer John D'Amato, of the West Brighton firm of Russo, Scamardella & D'Amato, represented the plaintiffs, along with attorneys from the law firms of Hanly Conroy, Bierstein & Sheridan in Manhattan and Simmons Cooper, LLC, in East Alton, Ill.

While acknowledging the agreement, D'Amato said he was prevented from discussing its terms and conditions. But he said the case marks the first mass-tort settlement in the history of Staten Island civil litigation.

"This is breakthrough litigation for the Staten Island legal system," he said.

PUBLICLY FILED PER STIPULATION [ECF 2140]

CONFIDENTIAL

PPLPC044000010052

His co-counsel, Paul J. Hanly Jr., Jayne Conroy and Jeffrey S. Cooper, did not return telephone calls yesterday seeking comment.

## SYNTHETIC PAINKILLER

OxyContin, a synthetic morphine-like painkiller, was introduced in 1996 for patients with moderate to severe pain of long duration, such as cancer, severe forms of arthritis and "chronic pain syndromes." Its medicine is slowly released over 12 hours, although some allege its effects wear off sooner.

It quickly became the No.1-prescribed narcotic of its kind -- generating, at its peak, $1.6 billion in sales in 2003.

The drug has been a boon to countless patients who say it was the only medicine that effectively relieves their pain.

However others, including dozens of Staten Islanders, allege Purdue Pharma over-aggressively marketed OxyContin. Despite being prescribed the drug by their doctors, they claim they became addicted and allegedly suffered debilitating side effects, including withdrawal, paranoia, delusions, anxiety and obsessive-compulsive behavior.

"There is quickly becoming a national health crisis caused by the overly aggressive and misleading marketing practices of these companies," D'Amato argued in September 2003, when five Staten Island clients sued OxyContin. One plaintiff, former Great Kills resident Reinee Pitt, told the Advance at the time that she suffered temper tantrums, wrenching of the spine, insomnia and hallucinations after being prescribed OxyContin following a bone transplant and hip replacement.

"It's like having the devil jump in you," she said then. "I think it's terrible that there's a pill that makes you want to die."

Ms. Pitt, 39, who has since moved to Florida, declined to discuss the settlement when reached yesterday by telephone.

But she said the litigation, for her, wasn't so much about money as raising public awareness about the drug and pushing for tighter federal regulation of it.

## LEGAL ASSAULT

In July 2001, the federal Food and Drug Administration, which approved OxyContin, required Purdue Pharma to strengthen the warnings and precautions on the drug's labeling. Labels now include a "black box" warning, which notes the potentially lethal consequences of crushing the tablets and snorting or injecting the powder.

In addition, the indication for use was clarified to reflect OxyContin's approval for the treatment of moderate to severe pain in patients who require around-the-clock narcotics for an extended time.

PUBLICLY FILED PER STIPULATION [ECF 2140]

CONFIDENTIAL

PPLPC044000010053

PARTIALLY REDACTED - CONTAINS OUTSIDE PROFESSIONALS' PERSONALLY INFORMATION. TREAT SUBJECT TO PROTECTIVE ORDER

The legal assault against Purdue Pharma on the Island began in September 2003, when five residents filed suit.

Maltese ultimately denied the plaintiffs' bid for class-action status, saying their cases had "important individual issues" and needed to be evaluated separately. He suggested, instead, the cases be considered for mass-tort status, meaning they all would be argued at once, and the plaintiffs' damages individually assessed if they won.

In August 2005, Maltese was appointed to coordinate the discovery process in all lawsuits brought in New York state against Purdue Pharma. Discovery is the pretrial process in which both sides disclose evidence and information.

Days earlier, 1,000 litigants -- 15 from Staten Island, the other 985 hailing from all 50 states, along with Guam, Canada and England -- sued Purdue Pharma in state Supreme Court, St. George.

## OUT-OF-STATE CLAIMS

The out-of-state plaintiffs brought their suits here, contending that Purdue Pharma and some of its related companies were incorporated in New York state or have their partnership interests held by a New York corporation.

Purdue Pharma moved to dismiss the out-of-state claims, maintaining they should have been filed in those plaintiffs' home states. Bringing doctors, documents and other records to New York would prove cumbersome, the company contended.

Maltese swept aside those arguments.

Purdue Pharma's only other settlement came in 2004, when it reached a $10 million agreement with West Virginia, whose attorney general alleged the company had over-aggressively marketed OxyContin, and sought to recoup health-care expenses paid by the state.

Purdue Pharma admitted no wrongdoing in that settlement.

Frank Donnelly is a news reporter for the Advance. He may be reached at fdonnelly@siadvance.com.

PUBLICLY FILED PER STIPULATION [ECF 2140]

CONFIDENTIAL

PPLPC044000010054