AKIN GUMP STRAUSS HAUER & FELD LLP
Ira Dizengoff
Arik Preis
Mitchell Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' NOTICE OF FILING**
**OF SECOND SET OF UNREDACTED**
**EXHIBITS TO THE *DECLARATION OF MITCHELL HURLEY***
**_DATED SEPTEMBER 29, 2020_ [ECF NO. 1754]**

Pursuant to the *Stipulation of Settlement and Agreed Order Regarding Media Intervenors'*

*Motion to Unseal Materials Filed in Connection with UCC Privileges Motions* [ECF No. 2140]

(the "Stipulation"), the Official Committee of Unsecured Creditors (the "Official Committee")

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby files the second set of unredacted exhibits that were submitted in connection with the *Declaration of Mitchell Hurley Dated September 29, 2020* [ECF No. 1754] (the "Hurley Declaration") in support of the *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, Or For In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged* [ECF No. 1752] and *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, Or For In Camera Review, Based On Good Cause, Crime Fraud, and At Issue Exceptions To Claims of Privilege* [ECF No. 1753].

Pursuant to paragraph 2 of the Stipulation, the Official Committee hereby files unredacted copies of exhibits 84-86 to the Hurley Declaration.

On December 18, 2020, the Official Committee filed the *Official Committee of Unsecured Creditors' Notice of Filing of First Set of Unredacted or Partially Redacted Exhibits to the Declaration of Mitchell Hurley Dated September 29, 2020* [ECF No. 2161].

The remaining exhibits to the Hurley Declaration will be filed according to the schedule set forth in the Stipulation.

The Official Committee reserves all rights to contest any redactions in accordance with the Stipulation.

[*The remainder of this page has been left blank intentionally.*]

2

Dated: New York, New York   AKIN GUMP STRAUSS HAUER & FELD LLP
December 21, 2020

        By: */s/ Mitchell Hurley*
          Ira Dizengoff
          Arik Preis
          Mitchell Hurley
          Joseph L. Sorkin
          Sara L. Brauner
          One Bryant Park
          New York, New York 10036
          Telephone: (212) 872-1000
          Facsimile: (212) 872-1002
          idizengoff@akingump.com
          apreis@akingump.com
          mhurley@akingump.com
          jsorkin@akingump.com
          sbrauner@akingump.com

          *Counsel to the Official Committee of*
          *Unsecured Creditors Purdue Pharma L.P.,* et al.

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Joseph L. Sorkin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MITCHELL HURLEY**
**DATED SEPTEMBER 29, 2020**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

PUBLICLY FILED PER STIPULATION [ECF 2140]

Under 28 U.S.C. § 1746, I, Mitchell Hurley, declare under the penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      This declaration ("**Declaration**") is submitted in support of the Official Committee of Unsecured Creditors (the "**UCC**") of Purdue Pharma, L.P. et al.'s two motions filed contemporaneously with this Declaration entitled (1) Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and At Issue Exceptions to Privilege (the "**Exceptions Motion**"); and (2) Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged (the "**General Challenges Motion,**" and, together with the Exceptions Motion, the "**Motions**").[2]

2.      I am an attorney in good standing admitted to practice in the State of New York, and I am a partner at the law firm of Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**").  I make this Declaration based on my own personal knowledge and belief, and upon documents and information available to me as counsel to the UCC.

3.      The UCC has met and conferred with counsel for the Sacklers and the Debtors (collectively, the "**Withholding Parties**") in a good faith effort to resolve by agreement the issues raised by the Motions without the intervention of the Court.  The UCC has conferred and corresponded with the Sacklers' and the Debtors' counsel on numerous occasions in an attempt to resolve the UCC's concerns regarding the propriety of the documents withheld or redacted as indicated on the Privilege Logs, as well as the issues regarding the Good Cause, Crime Fraud, and At Issue exceptions to privilege.  A selection of the written correspondence most relevant to the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motions.

PUBLICLY FILED PER STIPULATION [ECF 2140]

issues before the Court is described below and attached to this Declaration.  While the parties informally resolved some of the UCC's challenges, they could not resolve the issues set forth in the Motions.  The UCC, therefore, has filed the Motions in accordance with the briefing schedule provided in the *Amended Stipulation and Agreed Order Regarding Discovery Deadlines and Briefing Scheduling in the Chapter 11 Cases* executed by the Debtors, the Sacklers, the NCSG, the AHC, and the UCC, which was filed and so ordered by the Court on September 28, 2020 [ECF No. 1734].

4.      Further, the UCC is filing the correspondence with the Withholding Parties in redacted form in an abundance of caution in order to accommodate certain Withholding Parties' prior positions concerning the confidentiality of email address and other information that may be contained therein.  By filing in this way, the UCC does not intend to suggest that it agrees the information is or ought to be confidential.

5.      In addition to the correspondence between the UCC and the Withholding Parties, this Declaration describes the documents and testimony attached to this Declaration that support the UCC's position in both Motions.

6.      Certain exhibits attached hereto have been designated as Confidential, Highly Confidential, or Professional's Eyes Only by one or more parties to this proceeding and are filed under seal pursuant to the *Second Amended Protective Order* entered in these proceedings [ECF No. 1540].

7.      Attached hereto as **Exhibit A** is a true and correct copy of an excel workbook containing the entries on Side A's privilege log that the UCC is challenging in the General Challenges Motion and the Exceptions Motion, separated by category based on the tabbed worksheets in the excel workbook.  For the Exceptions Motion, the privilege entries are a non-

PUBLICLY FILED PER STIPULATION [ECF 2140]

exhaustive, illustrative list of the Challenged Documents that the UCC believes may fit within the categories of privileged documents of which, by the Exceptions Motion, the UCC is seeking to compel production.

8.    Attached hereto as **Exhibit B** is a true and correct copy of an excel workbook containing the entries on Side B's privilege log that the UCC is challenging in the General Challenges Motion and the Exceptions Motion, separated by category based on the tabbed worksheets in the excel workbook. For the Exceptions Motion, the privilege entries are a non-exhaustive, illustrative list of the Challenged Documents that the UCC believes may fit within the categories of privileged documents of which, by the Exceptions Motion, the UCC is seeking to compel production.

9.    Attached hereto as **Exhibit C** is a true and correct copy of an excel workbook containing the entries on Debtors' privilege log that the UCC is challenging in the General Challenges Motion and the Exceptions Motion, separated by category based on the tabbed worksheets in the excel workbook. For the Exceptions Motion, the privilege entries are a non-exhaustive, illustrative list of the Challenged Documents that the UCC believes may fit within the categories of privileged documents of which, by the Exceptions Motion, the UCC is seeking to compel production.

10.    Attached hereto as **Exhibit 1** is a true and correct copy of an email from J. McClammy to K. Porter, dated May 22, 2020.

11.    Attached hereto as **Exhibit 2** is a true and correct copy of a letter from M. Hurley to J. Ball, A. Lees, and G. Joseph, dated July 25, 2020.

12.    Attached hereto as **Exhibit 3** is a true and correct copy of a letter from A. Lees to M. Hurley, dated July 28, 2020.

4

PUBLICLY FILED PER STIPULATION [ECF 2140]

13.      Attached hereto as **Exhibit 4** is a true and correct copy of a letter from A. Lees to M. Hurley, dated July 31, 2020.

14.      Attached hereto as **Exhibit 5** is a true and correct copy of a letter from M. Hurley to J. Ball, A. Lees, and G. Joseph, dated August 5, 2020.

15.      Attached hereto as **Exhibit 6** is a true and correct copy of a letter from A. Lees to M. Hurley, dated August 7, 2020.

16.      Attached hereto as **Exhibit 7** is a true and correct copy of a letter from J. Ball to Akin Gump counsel, dated August 10, 2020.

17.      Attached hereto as **Exhibit 8** is a true and correct copy of a letter from M. Hurley to J. Ball and A. Lees, dated August 12, 2020.

18.      Attached hereto as **Exhibit 9** is a true and correct copy of a letter from J. Ball to M. Hurley, dated August 16, 2020.

19.      Attached hereto as **Exhibit 10** is a true and correct copy of a letter from A. Lees to M. Hurley, dated August 16, 2020.

20.      Attached hereto as **Exhibit 11** is a true and correct copy of a letter from J. Ball, A. Lees, J. Dougherty, and M. Hirschfield to M. Hurley, dated August 17, 2020.

21.      Attached hereto as **Exhibit 12** is a true and correct copy of a letter from M. Hurley to J. Ball, dated August 18, 2020.

22.      Attached hereto as **Exhibit 13** is a true and correct copy of a letter from M. Hurley to A. Lees, dated August 20, 2020.

23.      Attached hereto as **Exhibit 14** is a true and correct copy of a letter from A. Lees to M. Hurley, dated August 22, 2020.

PUBLICLY FILED PER STIPULATION [ECF 2140]

24.     Attached hereto as **Exhibit 15** is a true and correct copy of a letter from J. Ball to M. Hurley, dated August 23, 2020.

25.     Attached hereto as **Exhibit 16** is a true and correct copy of a second letter from J. Ball to M. Hurley, dated August 23, 2020.

26.     Attached hereto as **Exhibit 17** is a true and correct copy of a letter from M. Hurley to B. Kaminetzky, C. Duggan, J. McClammy, M. Clarens, dated August 30, 2020.

27.     Attached hereto as **Exhibit 18** is a true and correct copy of a letter from M. Hurley to J. Ball, dated August 30, 2020.

28.     Attached hereto as **Exhibit 19** is a true and correct copy of a letter from M. Hurley to A. Lees, dated August 30, 2020.

29.     Attached hereto as **Exhibit 20** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 2, 2020.

30.     Attached hereto as **Exhibit 21** is a true and correct copy of a letter from J. McClammy to M. Hurley, dated September 8, 2020.

31.     Attached hereto as **Exhibit 22** is a true and correct copy of a letter from J. Ball to M. Hurley, dated September 8, 2020.

32.     Attached hereto as **Exhibit 23** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 12, 2020.

33.     Attached hereto as **Exhibit 24** is a true and correct copy of a letter from M. Hurley to J. Ball, dated September 12, 2020.

34.     Attached hereto as **Exhibit 25** is a true and correct copy of a letter from M. Hurley to J. McClammy, dated September 13, 2020.

6

PUBLICLY FILED PER STIPULATION [ECF 2140]

35.     Attached hereto as **Exhibit 26** is a true and correct copy of a letter from J. Ball to Akin Gump counsel, dated September 17, 2020.

36.     Attached hereto as **Exhibit 27** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 17, 2020.

37.     Attached hereto as **Exhibit 28** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 19, 2020.

38.     Attached hereto as **Exhibit 29** is a true and correct copy of a letter from M. Hurley to J. McClammy, dated September 21, 2020.

39.     Attached hereto as **Exhibit 30** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 22, 2020.

40.     Attached hereto as **Exhibit 31** is a true and correct copy of a letter from J. Ball to Akin Gump counsel, dated September 22, 2020.

41.     Attached hereto as **Exhibit 32** is a true and correct copy of a letter from M. Hurley and A. Troop to J. McClammy and P. Fitzgerald, dated September 23, 2020.

42.     Attached hereto as **Exhibit 33** is a true and correct copy of a letter from M. Hurley to J. McClammy, dated September 24, 2020.

43.     Attached hereto as **Exhibit 34** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 24, 2020.

44.     Attached hereto as **Exhibit 35** is a true and correct copy of a letter from M. Hurley to J. Ball, dated September 24, 2020.

45.     Attached hereto as **Exhibit 36** is a true and correct copy of a letter from M. Hurley to A. Lees, dated September 25, 2020.

PUBLICLY FILED PER STIPULATION [ECF 2140]

46.      Attached hereto as **Exhibit 37** is a true and correct copy of a letter from M. Grier to M. Huebner, M. Hurley, R. Ringer, and A. Troop, dated September 26, 2020.

47.      Attached hereto as **Exhibit 38** is a true and correct copy of a letter from A. Lees to M. Hurley, dated September 28, 2020.

48.      Attached hereto as **Exhibit 39** is a true and correct copy of an email from J. McClammy to G. Feiner, dated May 11, 2020.

49.      Attached hereto as **Exhibit 40** is a true and correct copy of a letter from J. McLaughlin to K. Porter, dated April 9, 2020.

50.      Attached hereto as **Exhibit 41** is a true and correct copy of a letter from M. Hirschfield to A. Vinson Crawford, dated September 16, 2020.

51.      Attached hereto as **Exhibit 42** is a true and correct copy of a letter from M. Leventhal to J. McClammy, C. Duggan, and C. Oluwole, dated September 26, 2020.

52.      Attached hereto as **Exhibit 43** is a true and correct copy of an excerpt from the transcript of the deposition of David Sackler: 66:13-18; 86:20-87:10; 156:5-157:21; 190:6-15; 211:9-224:1; 225:6-232:17; 379:6-380:3; dated August 28, 2020.

53.      Attached hereto as **Exhibit 44** is a true and correct copy of an excerpt from the transcript of the deposition of Marianna Sackler: 4:19-22; 302:14-25; dated September 2, 2020.

54.      Attached hereto as **Exhibit 45** is a true and correct copy of an excerpt from the transcript of the deposition of Stephen Ives: 5:4-6; 31:23-37:21; 309:19-310:14; dated September 22, 2020.

55.      Attached hereto as **Exhibit 46** is a true and correct copy of excerpts from the transcript of the deposition of Ilene Sackler Lefcourt: 78:7-12; 91:18-92:7; dated September 18, 2020.

PUBLICLY FILED PER STIPULATION [ECF 2140]

56.    Attached hereto as **Exhibit 47** is a true and correct copy of an excerpt from the transcript of the deposition of Dame Theresa Sackler: 50:18-52:6; 63:25-65:16; 452:21-453:12; dated September 23-24, 2020.

57.    Attached hereto as **Exhibit 48** is a true and correct copy of a Memorandum of Understanding Regarding Joint Defense and Common Interest dated May 15, 2018, as sent by E. Lilburn to M. Hurley on July 31, 2020.

58.    Attached hereto as **Exhibit 49** is a true and correct copy of an email dated March 31, 2015 with an attached document entitled "Report of SDB Activities and Responsibilities," which was produced to the UCC under the Bates numbers PPLPUCC000336422 and PPLPUCC000336423, respectively.

59.    Attached hereto as **Exhibit 50** is a true and correct copy of a document entitled "Purdue Pharma Inc. Board of Directors," which was produced to the UCC under the Bates number PPLPUCC500140094.

60.    Attached hereto as **Exhibit 51** is a true and correct copy of Mortimer-Side Informational Presentation, Nov. 22, 2019.

61.    Attached hereto as **Exhibit 52** is a true and correct copy of an email chain dated August 28, 2013 among Jonathan Sackler and Dame Theresa Sackler, which was produced to the UCC under the Bates number MDSF00019408.

62.    Attached hereto as **Exhibit 53** is a true and correct copy of an email dated May 3, 2010, which was produced to the UCC under the Bates number MSF00077969.

63.    Attached hereto as **Exhibit 54** is a true and correct copy of a "Family Council Meeting" agenda for a meeting dated November 5, 2012, which was produced to the UCC under the Bates number PPLPUCC000620611.

9

PUBLICLY FILED PER STIPULATION [ECF 2140]

64.     Attached hereto as **Exhibit 55** is a true and correct copy of an email chain dated September 22, 2017, which was produced to the UCC under the Bates number MSF00591611.

65.     Attached hereto as **Exhibit 56** is a true and correct copy of an email chain among Jonathan White and Dame Theresa Sackler from June 19, 2015, which was produced to the UCC under the Bates number MSF90010331.

66.     Attached hereto as **Exhibit 57** is a true and correct copy of an email chain dated June 12, 2015, which was produced to the UCC by Beth Cohen under the Bates numbers BCOH0000049.

67.     Attached hereto as **Exhibit 58** is a true and correct copy of excerpts from a December 6, 2019 presentation by Joseph Hage Aaronson LLC, on behalf of the Raymond-side Sacklers entitled "*In Re: Purdue Pharma L.P., et al.*: Presentation of Defenses: Pursuant to November 5, 2019 Amended Stipulation ¶ 17(b) (ECF No. 431)."

68.     Attached hereto as **Exhibit 59** is a true and correct copy of an email chain dated March 3, 2010, which was produced to the UCC under the Bates numbers PPLPC012000259875.

69.     Attached hereto as **Exhibit 60** is a true and correct copy of a native file containing a presentation entitled "Purdue Pharma L.P. and Independent Associated Companies:  Insurance Update" dated September 2012, which was produced to the UCC under the Bates number PWG004469106.

70.     Attached hereto as **Exhibit 61** is a true and correct copy of an email chain dated April 13, 2012 attaching a presentation produced in native format entitled "OxyContin Market Events:   4/12/12 - FINAL," which was produced to the UCC under the Bates numbers PPLPC012000372436.

PUBLICLY FILED PER STIPULATION [ECF 2140]

71.     Attached hereto as **Exhibit 62** is a true and correct copy of an email chain dated November 20, 2006, which was produced to the UCC under the Bates numbers PPLPC057000003694.

72.     Attached hereto as **Exhibit 63** is a true and correct copy of an email chain dated May 15, 2007, which was produced to the UCC under the Bates numbers PWG004474511.

73.     Attached hereto as **Exhibit 64** is a true and correct copy of an email chain dated May 17, 2007, which was produced to the UCC under the Bates numbers PPLPUCC002683256.

74.     Attached hereto as **Exhibit 65** is a true and correct copy of an email chain dated February 27, 2007, which was produced to the UCC under the Bates numbers PPLPUCC000555709.

75.     Attached hereto as **Exhibit 66** is a true and correct copy of an email chain dated June 25, 2007, which was produced to the UCC under the Bates number PPLPUCC000886987.

76.     Attached hereto as **Exhibit 67** is a true and correct copy of an email chain dated February 13, 2008, which was produced to the UCC under the Bates numbers PPLPUCC000177443.

77.     Attached hereto as **Exhibit 68** is a true and correct copy of an email chain dated June 22, 2007, which was produced to the UCC under the Bates numbers PWG004473999.

78.     Attached hereto as **Exhibit 69** is a true and correct copy of an email chain dated July 26, 2007 attaching a document entitled "Confidential Memorandum to Jon Sackler," which was produced to the UCC under the Bates numbers PPLPUCC9000491386.

79.     Attached hereto as **Exhibit 70** is a true and correct copy of a document entitled "Memorandum to Dr. Richard Sackler.  From:  F. Peter Boer" dated April 12, 2008, which was produced to the UCC under the Bates numbers PDD9316314303.

PUBLICLY FILED PER STIPULATION [ECF 2140]

80.    Attached hereto as **Exhibit 71** is a true and correct copy of an email chain dated February 22, 2008, which was produced to the UCC the Debtors under the Bates numbers PPLPC042000011911.

81.    Attached hereto as **Exhibit 72** is a true and correct copy of excerpts from a December 6, 2019 presentation by Debevoise & Plimpton, on behalf of the Mortimer-side Sacklers entitled "Presentation of Defenses ('Side A'): Pursuant to November 5, 2019 Amended Stipulation ¶ 17(b) (ECF No. 431)."

82.    Attached hereto as **Exhibit 73** is a true and correct copy of a WhatsApp conversation from October 2017, which was produced to the UCC under the Bates number MSF00023231.

83.    Attached hereto as **Exhibit 74** is a true and correct copy of a WhatsApp conversation from 2017 to 2019, which was produced to the UCC under the Bates number MSF00022423.

84.    Attached hereto as **Exhibit 75** is a true and correct copy of an email chain dated December 21, 2011, which was produced to the Senate Finance Committee by Purdue prior to Purdue's bankruptcy filings under the Bates number SFC00007403.

85.    Attached hereto as **Exhibit 76** is a true and correct copy of an email chain dated March 6, 2015, which was produced to the UCC under the Bates number PNY000485015.

86.    Attached hereto as **Exhibit 77** is a true and correct copy of an email chain dated October 20, 2017, which was produced to the UCC under the Bates number MDSF00019747.

87.    Attached hereto as **Exhibit 78** is a true and correct copy of a document entitled "Purdue Quarterly Report to the Board April 15, 2008," which was produced to the UCC under the Bates numbers PWG004497873.

PUBLICLY FILED PER STIPULATION [ECF 2140]

88.    Attached hereto as **Exhibit 79** is a true and correct copy of an email chain dated December 8, 2011, which was produced to the UCC under the Bates numbers PWG004463776.

89.    Attached hereto as **Exhibit 80** is a true and correct copy of a presentation entitled "Risk Identification and Mitigation:  Selected Risks," dated September 30, 2013, which was produced to the UCC by the Debtors under the Bates numbers PPLPC031001489270.

90.    Attached hereto as **Exhibit 81** is a true and correct copy of a presentation entitled "Risk Identification and Mitigation:  Selected Risks," dated December 1, 2014, which was produced in native format to the UCC by the Debtors under the Bates number PPLPC032000394439.

91.    Attached hereto as **Exhibit 82** is a true and correct copy of a Purdue Board Meeting Agenda and materials, dated September 13, 2018.

92.    Attached hereto as **Exhibit 83** is a true and correct copy of an email dated May 15, 2012 attaching a letter from the United States Senate Committee on Finance to John H. Stewart, dated May 8, 2012, which was produced to the UCC under the Bates numbers RSF00679318.

93.    Attached hereto as **Exhibit 84** is a true and correct copy of a presentation entitled "4Q12 Compliance Report to the Board of Directors," dated January 2013, which was produced in native format to the UCC under the Bates number PPLPUCC001456442.

94.    Attached hereto as **Exhibit 85** is a true and correct copy of an excerpt of a Board presentation dated May 15, 2014, which was produced to the UCC under the Bates numbers PPLP004411166.

95.    Attached hereto as **Exhibit 86** is a true and correct copy of an excerpt of a Board presentation dated April 21, 2015, which was produced to the UCC under the Bates numbers PPLP004412071.

PUBLICLY FILED PER STIPULATION [ECF 2140]

96.      Attached hereto as **Exhibit 87** is a true and correct copy of a Distribution Agreement dated October 24, 1991, which was produced to the UCC under the Bates numbers MSF00026491.

97.      Attached hereto as **Exhibit 88** is a true and correct copy of excerpts of Board decisions dated January 15, 2013, which was produced to the UCC under the Bates numbers PPLP004417308.

98.      Attached hereto as **Exhibit 89** is a true and correct copy of an email chain dated July 24, 2015, which was produced to the UCC under the Bates number PPLPUCC9002715623.

99.      Attached hereto as **Exhibit 90** is a true and correct copy of an email chain dated September 9, 2014, which was produced to the UCC under the Bates numbers MDSF00018083.

100.     Attached hereto as **Exhibit 91** is a true and correct copy of email correspondence from September 5, 2020 to September 25, 2020 between M. Hirschfield and A. Vinson Crawford, among others.

101.     Attached hereto as **Exhibit 92** is a true and correct copy of excerpts of Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Adjudication in the case *In re National Prescription Opiate Litigation*, Case No. 17-md-2804, United States District Court for the Northern District of Ohio, dated July 19, 2019, Doc. No. 1910-1.

102.     Attached hereto as **Exhibit 93** is a true and correct copy of excerpts of Plaintiffs' Consolidated Reply Memorandum in Further Support of Plaintiffs' Motions for Partial Summary Adjudication in the case *In re National Prescription Opiate Litigation*, Case No. 17-md-2804, United States District Court for the Northern District of Ohio, dated August 26, 2019, Doc. No. 2545.

PUBLICLY FILED PER STIPULATION [ECF 2140]

103.    Attached hereto as **Exhibit 94** is a true and correct copy of "An Analysis of Distributor and Manufacturer Regulatory Compliance to Maintain Effective Controls for the Prevention of Diversion of Controlled Substances" filed in the case *In re National Prescription Opiate Litigation*, Case No. 17-md-2804, United States District Court for the Northern District of Ohio, dated January 31, 2020, Doc. No. 3124-14.

104.    Attached hereto as **Exhibit 95** is a true and correct copy of an excerpt of a United States Department of Justice Civil Proof of Claim Form in these cases dated July 30, 2020.

105.    Attached hereto as **Exhibit 96** is a true and correct copy of an excerpt of a United States Department of Justice Criminal Proof of Claim Form Addendum in these cases dated July 30, 2020.

106.    Attached hereto as **Exhibit 97** is a true and correct copy of a letter from J. Sorkin to K. Marino, dated July dated September 15, 2020.

107.    Attached hereto as **Exhibit 98** is a true and correct copy of an email from K. Marino to J. Sorkin, dated September 28, 2020.

108.    Attached hereto as **Exhibit 99** is a true and correct copy of the April 14, 2009 Decision regarding "Funding – Rhodes Pharmaceuticals L.P.," which was produced to the UCC under the Bates number PPLPUCC000619871.

109.    Attached hereto as **Exhibit 100** is a true and correct copy of April 1, 2010 Decision regarding "Purdue Pharma L.P. – 2Q 2010 Distribution," which was produced to the UCC under the Bates number PPLPUCC000440913.

110.    Attached hereto as **Exhibit 101** is a document describing the categories of privileged documents (namely, the Fiduciary Documents, the Crime Fraud Documents, and the At Issue Documents) that the UCC is seeking to compel as set forth in the Motions.

PUBLICLY FILED PER STIPULATION [ECF 2140]

111.    Attached hereto as **Exhibit 102** is a document entitled "Dr. Craig Landau Appointed President and CEO Purdue Pharma L.P.," dated August 28, 2018, was produced to the UCC by the Debtors under the Bates number PPLPUCC000013176.

112.    Attached hereto as **Exhibit 103** is true and correct copy of a letter from Mara Leventhal (Joseph Hage Aaronson) to James I. McClammy (Davis Polk) et al. dated September 26, 2020.

113.    Attached hereto as **Exhibit 104** is a true and correct copy of the April 16, 2013 Beacon Company SEC Form 4.

114.    Attached hereto as **Exhibit 105** is a true and correct copy of the April 16, 2013 Rosebay Medical Company L.P. SEC Form 4.

115.    Attached hereto as **Exhibit 106** is a true and correct copy of the March 4, 2003 Shareholders' Agreement (Purdue Pharma Inc.), which was produced to the UCC under the Bates number MSF00026639.

116.    Attached hereto as **Exhibit 107** is a true and correct copy of the Minutes of a March 4, 2003 Meeting of the Board of Directors of Purdue Pharma Inc., which was produced to the UCC under the Bates number PPLPUCC500647319.

117.    Attached hereto as **Exhibit 108** is a true and correct copy of the December 4, 2015 email from Kathe Sackler, which was produced to the UCC under the Bates number MSF00806366.

118.    Attached hereto as **Exhibit 109** is a true and correct copy of a document entitled "MNP Consulting Limited - List of Directors," sent as an attachment to a July 14, 2020 email from J. Upin to A. V. Crawford RE: IAC custodians follow up.

PUBLICLY FILED PER STIPULATION [ECF 2140]

Executed on: September 29, 2020

*/s/ Mitchell Hurley*
Mitchell Hurley

PUBLICLY FILED PER STIPULATION [ECF 2140]

# EXHIBIT 84

**Produced Natively**

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

# 4Q2012 Compliance Report to the Board of Directors

Bert Weinstein

Vice President, Corporate Compliance

January 2013

PURDUE

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED – CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

# Corporate Integrity Agreement



Purdue's final Annual Report was submitted September 27th, and our Office of Inspector General Monitor has already reviewed the Report and asked follow up questions. Responsive answers and materials were provided. This is a faster time frame than expected, and a positive development for formal close-out of Purdue's CIA.

Subsequent to submission of the Final Report, Compliance discovered an Intermezzo Sales Force District Manager was not performing job responsibilities during the term of the CIA with respect to Ride-Alongs, among other things – a CIA requirement (DM terminated). Decision was reached to report to this to OIG, and extensive information was provided to OIG about our investigation and remedial actions (a copy of our eight page December 14th letter is attached for information). We do not expect adverse impact to the close-out of the CIA from this matter.



# Compliance Environment Hostile



- The US Department of Justice, FDA, OIG, and state enforcement agencies continue to focus on the pharmaceutical and device industries

- $6 billion in pharma settlements in 2012 alone (GSK $3 billion, Abbott $1.5 billion), compared to ~$15 billion during 2000-2011

- Five of the 2012 matters included criminal components to the settlements, mainly for off-label promotion of products

- Punishment of individuals is now the focus, with exclusion and incarceration more likely



# New (2012) CIA Requirements



New CIAs focus on particular company issues, but reflect OIG's wider views on what makes for an effective compliance program. OIG's views of the industry have become more sophisticated and nuanced. The most recent CIAs contain the following new elements:

- Sales Representative Incentive compensation plans must minimize risk of off-label promotion and exclude compensation for off-label prescribing/promotion; there are "claw-back" provisions for executive incentive compensation

- Transparency/disclosure requirements are increasing -- Disclosures of interest required of Consultants and authors; reporting of physician payments, medical education grants, charitable contributions, clinical trials, post marketing commitments and other transfers of value to HCPs/customers, more broadly than will be required under Sunshine Act



PUBLICLY FILED PER STIPULATION [ECF 2140]

4

# New (2012) CIA Requirements



- Semi-annual product-by-product risk management plans
- Monitoring requirements continue to expand to include more promotional, non-promotional, and managed care functions:
  - Sales Representative call notes, documents, emails, promotional materials
  - Consulting arrangements, speaker programs, publication activities, medical education grants, research studies
  - Medical Services materials
  - Medical personnel interactions with HCPs
- Annual reviews of call plans and sample plans
- Pricing and rebate reviews

Purdue's Compliance department considers and adopts new OIG requirements to our compliance program, where applicable



# Sunshine Act Update



Implementation of Federal Physician Payments Sunshine Act has been delayed by lack of final regulations by HHS.

- HHS Administrator testified to Senate Committee in September - "hope" some data would begin to be captured for 2013

- With many unanswered questions as to formatting of data, treatment of clinical trial related expenses, coverage of certain ownership interests

- Industry is seeking 180 days to implement final regulations when issued



PUBLICLY FILED PER STIPULATION [ECF 2140]

# Overall Compliance Performance

- Throughout 4Q12, the Company continued to maintain a state of effective compliance, with all components of the Annual Compliance Scorecard above the established standards, including Sales and Marketing, Manufacturing and Quality, and R&D

- While there are numerous compliance matters detected, investigated, and remediated on an on-going basis, there have been no *significant* compliance matters to report for 4Q12, with the exception of the Intermezzo District Manager non-performance matter discussed above.

- The following slides display 4Q12 compliance matters (64 total), and 2012 full year matters (279 total, 1/1/12-12/3/12).







# Matters by Quarter (1Q05 – 4Q12)



PUBLICLY FILED PER STIPULATION [ECF 2140]

8

# 4Q 2012 Compliance Matters







PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

# Full Year 2012 Compliance Matters







PUBLICLY FILED PER STIPULATION [ECF 2140]

# EXHIBIT 85

# Quarterly Compliance Report to Board of Directors 1Q2014

Bert Weinstein

Vice President, Corporate Compliance

May 15, 2014



U.S. - 118

PUBLICLY FILED PER STIPULATION [ECF 2140]

# Compliance Summary for 1Q2014

Purdue continues to have excellent systems and processes in place to prevent and detect violations, and to remediate issues before they become major.

No significant compliance issues to date in 2014

Company-Wide Compliance Scorecard YTD score is 3.14 out of 3.5

- in-line with previous year's scores  (2011= 3.09; 2012= 3.12;   2013 = 3.15)



U.S. - 119

PUBLICLY FILED PER STIPULATION [ECF 2140]
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411167

# Government Action Continues



- Government pharma fraud and abuse prosecutions continue apace, with aggressive plaintiffs bar "supplementing" limited government resources - - *$8 billion recovered* in 2013 by Federal and state governments

- 2014 Significant Federal Activity
  - Astellas – off-label pediatric promotion of anti-fungal - 4/2014
  - Teva – kick-backs paid to induce Rx's of anti-psychotic - 3/2014
  - Endo – off-label promotion of Lidoderm – 2/2014
  - Novartis – Federal suit for payments to specialty pharmacy – 1/2014



U.S. - 120

PUBLICLY FILED PER STIPULATION [ECF 2140]
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411168

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

# Top Compliance Risks 1Q14





- ■ High - 1
- ■ Medium - 12
- ■ Low -22



U.S. - 121

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411169

# Top Compliance Risks, and Mitigation



We prioritize compliance activities based on relative risks

## Managed Care (High Risk)

- Increased government scrutiny, affecting large number of lives, significant generic pressure on formulary listing; Managed Care seeking aggressive rebate levels and implementing Prior Authorizations for most opioids

- Mitigation includes auditing and monitoring by Corporate Compliance, training, guidelines and procedures

## Government Price Reporting (Medium Risk)

- Continued focus by CMS and OIG on accurate price reporting, with highly complex regulations

- Mitigation includes oversight by Law and EAC, third party audits, policies and procedures



U.S. - 122

PUBLICLY FILED PER STIPULATION [ECF 2140]
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004411170

# Top Compliance Risks, and Mitigation



## Sunshine Act (Medium Risk)

- Receiving clean data from CROs, and numerous data inaccuracies in meals provided to HCPs (both home office and sales force) are still problematic
- Mitigation includes increased training and business manager accountability

## Appropriate Promotion (Medium Risk)

- Includes Sales Representative, Third-Party Activities, Speaker Programs, and Social Media, with risk around inappropriate promotion around abuse potential, comparisons to other products, convenience / superiority claims
- Mitigation includes auditing and monitoring by Corporate Compliance, training, guidelines, and procedures



U.S. - 123

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411171

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

# Compliance Audits Completed - 2014



## Medical Information Requests (Low Risk)

▪ To provide a level of assurance that inquires received by Medical Services were not solicited and/or confirm whether or not improper promotion may have occurred by Sales Representatives

▪ No Critical Findings; positive practice noted around detection of potential solicitation of inquiries

## Call Note Follow-Up Audit (Medium Risk)

▪ Follow-up to 2010 Compliance audit, to verify that District Managers were properly reviewing, coaching, and documenting any issues discovered in call notes

▪ No Critical Findings; 2 Major Findings (unclear call notes, missed AEs); improvements shown from previous audit



U.S. - 124

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411172

# Compliance Audits Completed - 2014



Material Review (Medium Risk)

- To assess expired status of materials in the APRIMO system
- Report pending - No Critical Findings; 1 Major Finding (~5% of materials were expired but still in use); several positive practices were noted

Field Contact Report Audits (Medium Risk)

- One random audit and one for-cause audit (7 DMs)
- To assess whether District Managers were accurately documenting compliance issues on Field Contact Reports and appropriately evaluating Sales Representative compliance
- Report pending - No Critical Findings; 3 Major Findings (timeliness of expense reporting, poor call notes, accuracy of FCR documentation)



U.S. - 125

PUBLICLY FILED PER STIPULATION [ECF 2140]
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411173

# Sunshine Act Update



- Phase I registration timely, with filings on behalf of six entities:
  - Purdue Pharma L.P.
  - Purdue Neuroscience Company
  - Purdue Pharma of Puerto Rico
  - Purdue Pharma Products L.P.
  - Purdue Transdermal Technologies L.P.
  - Rhodes Pharmaceuticals

- Phase II filing anticipated to begin late May-late June (tbd)
  - 16,559 unique HCPs and Teaching Hospitals to be reported
- Data publication anticipated September 30, 2014 (?)





U.S. - 126

PUBLICLY FILED PER STIPULATION [ECF 2140]

# Sunshine Act Update



## Total Reported in Phase I:  $10,223,108.93

| Open Payments Report | Total Aggregated Spend $ | Total # of Records | Total # of Covered Recipients |
|---|---|---|---|
| Research Payments | $6,451,951.85 | 2,943 | 315 |
| General Payments | $3,771,157.08 | 25,329 | 16,244 |

## Type of Spend*



Research
■ General



\* As of May 5, 2014; subject to change.

U.S. - 127

PUBLICLY FILED PER STIPULATION [ECF 2140]
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411175



# Top 15 Physicians*

| Last Name | First Name | State | Recipient Type | Spend Amount |
|---|---|---|---|---|
| Apseloff | Glen | OH | MD | $1,502,280.28 |
| Reiner | David | NJ | MD | $623,494.00 |
| Pellechi | Thomas | CT | MD | $147,345.95 |
| Buchanan | William | TX | MD | $126,000.00 |
| Chipman Ii | Howard | FL | MD | $112,578.02 |
| Hale | Martin | FL | MD | $83,967.43 |
| Dawson | Gary | GA | MD | $65,957.29 |
| Buynak | Robert | IN | MD | $64,200.49 |
| Cucchiaro | Giovanni | CA | MD | $62,102.92 |
| Pergolizzi Jr | Joseph | FL | MD | $57,247.61 |
| Surowitz | Ronald | FL | MD | $56,942.54 |
| Taber | Louise | AZ | MD | $48,812.01 |
| Ratzman | David | IN | MD | $39,176.13 |
| Schertzinger | Howard | OH | MD | $37,507.76 |
| Simon | Steven | KS | MD | $36,452.03 |



\* As of May 5, 2014; subject to change.

U.S. - 128

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004411176

# EXHIBIT 86

# Quarterly Compliance Report to Board of Directors for 1Q2015

## Bert Weinstein
## Vice President, Corporate Compliance
## April 21, 2015



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 41

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004412071

# Bottom Line

Purdue continues to have strong systems and processes in place to prevent and detect violations of law, regulations and Company policies, and to remediate issues before they become significant problems.

## *There have been no significant compliance issues in the 1st quarter, 2015*

We have been focused on Hysingla ER launch preparations, and are closely monitoring promotion activities.



**PUBLICLY FILED PER STIPULATION [ECF 2140]**

U.S. - 42

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# 2015 Compliance Priorities



- In concert with business heads, we are focusing on 16 categories of compliance risk deemed to present Medium risk, including:
  - Product Promotion
  - Third-Party Promotional Activities
  - Managed Care
  - IDN Initiative
  - Incentive Compensation
  - Speaker Programs
  - Publications and Authorship
- We work closely with Purdue's business areas to monitor and control these Medium compliance risks (as well as lesser risks, of course). There are no High risk areas at this time.



**PUBLICLY FILED PER STIPULATION [ECF 2140]**

U.S. - 43

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004412073

# 2015 Sunshine Act filing (2014 data)



- Purdue's 2015 report timely completed by March 30, 2015 (despite extensive CMS Portal and helpdesk failures)

- Total Purdue entity spend for 2014 was $24 million, of which $16.3 million was "Research Spend," and $7.7 million was "General Spend."

  - The General Spend category includes items such as speaker programs, HCP in-office meals, and HCP marketing consulting spend; these items are subject to a 45-day dispute resolution period and will then become public on June 30th

  - Research spend is subject to a delay in public posting to preserve confidential research activities (Hysingla ER and Targiniq data will be public due to product approvals)



**PUBLICLY FILED PER STIPULATION [ECF 2140]**

U.S. - 44

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004412074

# 2015 Federal Government Focus



FYI -- Based on senior officials' presentations, the following have been emphasized as enforcement priorities for 2015:

- Prosecution of individuals at all levels in an organization (reiterated)
- New focus on small to mid-size pharma, with recognition of compliance progress by "big pharma"
- Less emphasis on off-label cases, and focusing on kickbacks
- With increased M&A activity Government view is that compliance due diligence is inadequate. Officials emphasizing need for pre-purchase due diligence, and identification, remediation, and disclosure to government



**PUBLICLY FILED PER STIPULATION [ECF 2140]**

**U.S. - 45**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004412075