# Exhibit 12

PPLP004402032

# Corporate Compliance Quarterly Report to Board of Directors 3Q08

**Bert Weinstein**

**Vice President, Corporate Compliance**

**November 4, 2008**



PURDUE ®

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# Agenda

- Two Months That Changed the Compliance World

- Purdue's CIA
  - Annual Report to OIG
  - IRO Review
  - Monitoring
  - Corporate Compliance Council Meeting

- Board Guidance on the Updated PhRMA Code

- State Law Reporting

- Hotline and Other Inquiries and Investigations



2

PPLP004402033

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# September and October 2008 Have Changed the Compliance World

- Cephalon: $425 million settlement (off-label promotion of Actiq, Gabitril, Provigil), with new added CIA provisions:
  - Direct Board oversight
  - Board and management certifications of compliance
  - Disclosure of HCP payments (per Physicians Sunshine Act)
  - Notification letters to HCPs

- Lilly: $62 million AG settlement agreement (Zyprexa off-label promotion)
  - 6 year marketing restrictions on promotion, dissemination of medical information, reprints, CME, payments to consultants, etc.
  - $1.4 billion reserve announced for upcoming federal settlement



3

PPLP004402034

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# September and October 2008 Have Changed the Compliance World (continued)

- Pfizer: $60 million AG settlement agreement (Bextra and Celebrex DTC advertising)
  - Pre-review of DTC ads
  - Dissemination of study results and medical information
  - Clinical trials
  - CME activities
  - Medical education grants
  - This settlement builds on Merck's $58 million AG settlement in May 2008 regarding DTC ads and Vioxx

- Abbott: $28 million Texas AG Medicaid pricing settlement



4

PPLP004402035

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# Purdue CIA Highlights

- First Annual Report to OIG submitted 9/25/08, certifies to all CIA requirements, including:
  - Updated policies and procedures
  - Code and other training
  - Disclosure Log information
  - Screening for Excluded Individuals
  - Investigations and Legal Proceedings
  - Material Review Documents
- A copy of the Report (without voluminous attachments) follows these slides

- Purdue is also in full compliance with its AG Agreements
  - Abuse & Diversion Detection (ADD) training – current
  - HCP letter process – current / monitored monthly via Sales



5

PPLP004402036

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# CIA IRO Review and Report

- Huron performed Transaction Review for the First Reporting Period in August

  - Validated databases, processes, and sampled Sales force-related inquiries handled by Medical Services and Promotion Monitoring Forms (Field Contact Reports)

- Compliance reviewed drafts of IRO report, approved final version for inclusion in Purdue's Annual Report to OIG

Redacted



6

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402037



# CIA IRO Review and Report

- Nine non-significant findings:
  - 3 relating to: "MIRF" form, completion, and archiving
  - 1 relating to review process for Medical Services' "custom responses"
  - 1 has to do with Medical Services' archiving of Focus Inquiry Reports
  - 1 has to do with Sales training suggestions
  - 1 relating to representative "development recommendations"
  - 1 recommends development of certain approved Sales messaging materials
  - 1 recommends refresher training on use of FCRs
- All recommendations to be accomplished no later than 12/08



7

PPLP004402038

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402039

8

# CIA Monitoring

- Focus Inquiry Monitoring
  - 3143 Inquiries (all products)
    - 1099 OxyContin Inquiries
      - 181 Field Sales Related OxyContin Inquiries
        - 68 "Focus Inquiries"
  - No "Suspect Inquiries"
- Promotion Monitoring Program
  - 544 Field Contact Reports in 3Q08
    - 35 with rating of '1' in compliance
      - 3 reviewed for potential improper promotion
  - Disciplinary action taken where DM found outdated literature in the trunk of a Representative's car
  - Two matters were investigated – no violation found
    - District Managers were re-trained during the September Managers' Meetings on the proper documentation of Manager Sales Call Observations



PURDUE®

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# CIA Field Contact Reports Monitored-Q3

Field Contact Reports
544

Reports with Compliance Issues
35

Other Compliance Issues
32

Coaching for Late Expense Reporting and Telecommunications

Reviewed for Potential Improper Statements
3

1 Disciplinary Action
2 No Violation Found



9

PPLP004402040

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# Corporate Compliance Council

- Corporate Compliance Council
  - CIA-mandated quarterly meetings "to assist in analysis of compliance risk areas, and monitoring of audits and investigations"
  - Members: B. Weinstein (Chair),  W. Fisher, R. Gasdia, D. Haddox, C. Landau, D. Long, E. Mahony, K. Schady, A. Santopolo, L. Steiner
  - 3Q meeting on 10/22 - reviewed CIA status and first Annual Report to OIG, audits and monitoring as well as future plan and resources, hotline and other matters and investigations, training proposal for Second Reporting Period, and updated PhRMA Code

10



PPLP004402041

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402042

# Board Guidance: Updated PhRMA Code

- Updated Code announced 7/10 and endorsed by Purdue 7/15
- Purdue well along in transition to implementation (required January 2009)
- Significant Revisions:
  - **Gifts:** Only items that are educational, (no more "give-aways")
  - **Meals:** Reps and DMs can provide only modest/occasional in-office or in-hospital meals, and only with informational presentations
  - **Entertainment:** Recreation / entertainment prohibited
  - **CME:** Grant-making functions to be separate from sales/marketing; objective criteria for grant-making decisions; follow ACCME guidelines
  - **Prescriber Data:** Only non-patient identified prescriber data; HCP opt-out must be respected
  - **Certification:** Companies must publicly state intention to abide by Code; annual certification by CEO and CCO required



PURDUE®

11

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Board Guidance: Updated PhRMA Code

- Where Board member interactions with HCPs involve non-business, *personal relationships*, PhRMA Code does <u>not</u> apply.

- Where Board member interactions with HCPs involve Purdue business, PhRMA Code does apply.

- Where Board members are engaged in Purdue business and pay for meals with HCPs, the restaurants and meals must be "reasonable" and "customary" for business entertainment.

- The Code provisions on entertainment and recreation, support for CME, hiring of consultants, gifts and educational items, apply to pharmaceutical companies overall, including Board members. Prior to engaging in such activities, please consult with LaDonna Steiner or Bert Weinstein.



12

PPLP004402043

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# State Law Reporting Update

- **3Q Reports**
  - Timely filed reports in Maine and District of Columbia
  - Made a timely certification of compliance as required by California

- **New state requirements**
  - Awaiting implementing regulations in Massachusetts
  - Ensuring compliance with DC Safe Rx Act requirements, which provide for licensing of personnel who interact with HCPs in DC

- **Federal legislation – Physician Payments Sunshine Act**
  - Not passed this year
  - More stringent requirements anticipated next year

- **No compliance issues identified**



13

PPLP004402044

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402045

# Hotline Calls and Other Inquiries
## 3Q08



**PURDUE** ®

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# Hotline and Other Inquires - 3Q08

- Investigated 163 matters in 3Q08, including:

  - 54 Institutional Policies

  - 18 PhRMA Code interpretation questions

  - 13 questions pertaining to IPAP program

  - 5 CIA-related questions

  - No significant violations



15

PPLP004402046

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402047

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

16



# Inquiries by Quarter (1Q05 – 3Q08)

Direct Inquiries ▪ Hotline

PURDUE®



PPLP004402048

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402049

# 3Q08 Compliance Inquiries

18



- ☐ Other , 10
- ▪ Grants, 1
- ☐ Abuse &Diversion, 3
- ▪ Compliance & Ethics, 12
- ▪ R &D, 1
- ▪ Reports, 2
- ▪ Human Resources, 3
- ▪ Medical, 24
- ▪ Sales & Marketing, 100



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# Inquiry Response Time

## Days to Close Inquiries 3Q08 (as of 10/8/2008)





19

PPLP004402050

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



# Time to Completion 2006 to 2008

| | Rollout | CP 1 Wk | CP 2 Wks | CP as of due date | # Days Overdue |
|---|---|---|---|---|---|
| Ethical Leadership | 02/06/06 | 53% | 76% | 99% | 11 |
| Recognizing COIs | 05/01/06 | 68% | 90% | 97% | 8 |
| E-Mail | 07/31/06 | 52% | 69% | 93% | 12 |
| HCLC Policies | 11/27/06 | 60% | 82% | 96% | 19 |
| Workplace Harassment | 02/20/07 | 63% | 84% | 96% | 12 |
| AEs/Product Complaints | 05/21/07 | 76% | 90% | 99% | 5 |
| Fraud and Abuse | 08/06/07 | 76% | 92% | 99% | 4 |
| Mktng & Promo Basic | 09/17/07 | 98% | 99% | 99% | 6 |
| Mktng & Promo Special | 10/15/07 | 51% | 65% | 99% | 4 |
| Code of Ethics | 10/01/07 | 69% | 97% | 95% | 8 |
| HCLC Policies | 10/22/07 | 80% | 99% | 98% | 11 |
| Recognizing COIs | 03/31/08 | 73% | 89% | 98% | 6 |
| Certification of COI | 04/23/08 | 72% | 87% | 99% | 7 |
| Workplace Harassment | 06/02/08 | 73% | 89% | 98% | 13 |
| Fraud and Abuse | 09/07/08 | 95% | 98% | 99% | 3 |

**PURDUE** ®

20

PPLP004402051

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402052

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



Purdue Pharma L.P.

One Stamford Forum
Stamford, CT 06901-3431
(203) 588 8000
Fax (203) 588 8850
www.purduepharma.com

## First Annual Report of Purdue Pharma L.P.

## Under Corporate Integrity Agreement

## Dated May 8, 2007

**Dated: September 25, 2008**

**Stamford, Connecticut**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**Purdue Pharma L.P.**

One Stamford Forum
Stamford, CT 06901-3431
(203) 588 8000
Fax (203) 588 8850
www.purduepharma.com

September 25, 2008

**Via Federal Express**
Keshia B. Thompson, Esq.,
Senior Counsel
Administrative and Civil Remedies Branch
Office of Counsel to the Inspector General
U.S. Department of Health and Human Services
Cohen Building, Room 5527
330 Independence Avenue, S.W.
Washington, DC  20201

Re:   **Purdue Pharma L.P.**

Dear Keshia:

Enclosed is Purdue's First Annual Report.

As always, I would be glad to hear from you, if you have any questions or would
like to discuss this Report.

Sincerely,

Bert I Weinstein

Vice President, Corporate Compliance

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

First Annual Report of Purdue Pharma L.P.
September 25, 2008

# Table of Contents

| Tab # | Item |
|---|---|
| 1. | First Annual Report |
| 2. | Amended Policies and Procedures |
| 3. | Code of Business Ethics Certification |
| 4. | Independent Review Organization Report |
| 5. | Purdue Corrective Action Plan |
| 6. | IRO Certification of Independence |
| 7. | Disclosure Log Summary |
| 8. | Screening Persons Against Exclusion Lists Revised Policy |
| 9. | Ongoing Investigations or Legal Proceedings |
| 10. | Compliance Officer Certification |
| 11. | Legal Counsel Reviewed Documents List |

1

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
PPLP004402055

First Annual Report of Purdue Pharma L.P.
September 25, 2008

## 1. Section V.B.1 – Compliance Officer

There have not been any changes in the identity or position description of the Compliance Officer since the Implementation Report submitted to the OIG on November 28, 2008, which stated:

In March 2004, prior to the Effective Date of the Purdue Pharma L.P. ("Purdue" or the "Company") Corporate Integrity Agreement ("CIA"), Purdue appointed the following individual as Corporate Compliance Officer:

Bert I Weinstein, Vice President, Corporate Compliance

One Stamford Forum

Stamford, CT 06901-3431

Phone Number: (203) 588-8288

The Vice President, Corporate Compliance reports directly to the President, is a member of the Executive Committee of the Company, and is responsible for providing day-to-day leadership of the Company's compliance program, including appropriate oversight, monitoring, and support to departmental compliance efforts. The Vice President, Corporate Compliance reports to the Board of Directors on a quarterly basis, and is authorized to report to the Board of Directors on compliance matters at any time he determines is appropriate.

The Vice President, Corporate Compliance is responsible for developing and implementing policies, procedures, and practices designed to ensure compliance with the requirements set forth in the CIA, as well as for any reporting obligations set forth under the CIA, and with Federal health care program and FDA requirements.

The Compliance Officer does not have any non-compliance responsibilities.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    PPLP004402056

First Annual Report of Purdue Pharma L.P.
September 25, 2008

There has not been any change in the membership of the Corporate Compliance Council described in Section III.A.2. since the Implementation Report, which stated:

In 2004, prior to the Effective Date of the CIA, Purdue established a Corporate Compliance Council. The following individuals, as required by Section III.A.2 of Purdue's CIA, are currently members of the Corporate Compliance Council:

| **Name** | **Title** |
| --- | --- |
| Windell Fisher | Executive Director, Sales Force. |
| Russell Gasdia | Vice President, Sales and Marketing |
| Dr. David Haddox | Vice President, Health Policy, Medical Services, Healthcare Education & Liaison Programs, and Library & Information Services |
| Dr. Craig Landau | Chief Medical Officer and Vice President, Clinical, Medical, and Regulatory Affairs |
| David Long | Senior Vice President, Human Resources |
| Edward Mahony | Executive Vice President and Chief Financial Officer |
| Anthony Santopolo | Vice President, Regulatory Affairs |
| Kathleen Schady | Vice President, Corporate Quality |
| LaDonna Steiner | Associate General Counsel |
| Bert I Weinstein | Vice President, Corporate Compliance, Chair |

3

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

First Annual Report of Purdue Pharma L.P.
September 25, 2008

**2. Section V.B.2 – Purdue's Policies and Procedures**

All Policies and Procedures required under Section III.B.2 of the CIA were
reviewed during the first Reporting Period. The following Policies and Procedures have
been amended as part of the periodic review. The amended policies are attached hereto
(See Tab 2 below)

| Name of Policy | Policy Number(s) | Reason for Change |
|---|---|---|
| Guidelines on Product Promotion | Sales Force SOP II (pages 12-14) | Changes were made to this policy to reflect updated internal procedures and the newly revised PhRMA Code on Interactions with Healthcare Professionals. |
| Compensation for Relevant Covered Persons engaged in Promotion and Selling of Purdue's Products | • HR-SBP 6.2<br>• HR-SBP 6.6<br>• HR-SBP 6.7 | Changes were made to these policies to reflect current practices at Purdue.<br>A new policy was added to reflect the bonus program for National Accounts personnel. |
| Processing Medical Inquiries Related to Purdue's Products | MA-MS-SOP-000001 | Changes were made to reflect updated definitions consistent with other Medical Services Policies and Procedures. |
| Creation, Review, and Approval of Standard Responses and Custom Responses | MA-MS-SOP-000003 | Changes were made to this policy to reflect enhanced processes and to address internal audit findings. |
| Retention of Healthcare Professionals as Consultants, Advisors and Speakers | GC-SOP-0001.02 | Changes were made in anticipation of adoption of the newly revised PhRMA Code on Interactions with Healthcare Professionals |
| Non-Healthcare Donation Review Committee and Review Process | NHGRC-01-02.00 | Changes were made to:<br>• Add a voting member.<br>• Streamline the processing of and voting on grants to make it easier to keep track of votes.<br>• Note that Finance department will summarize donation-related spending on a quarterly |

4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        PPLP004402058

First Annual Report of Purdue Pharma L.P.
September 25, 2008

| Non-Healthcare Donation Review Committee and Review Process (Cont.) | | basis and will review about 20 donations each quarter to ensure compliance with the SOP. |
|---|---|---|
| Healthcare Grant Review Committee and Review Process | HGRC-01-04.00 | The following changes were made:<br>• Paragraph 2: The scope was revised to specifically refer to accreditation standards such as Accreditation Council for Continuing Medical Education ("ACCME") and Accreditation Council for Pharmacy Education ("ACPE"). Cross-References were added to other SOPs, including the non-healthcare grant SOP, the Retention of Healthcare Professionals as Consultants, Advisors and Speakers SOP, and the Product Donations of Inventory SOP.<br>• Paragraph 6.2: Changes were made to reflect the switch to an online grant application process. References were added to the need for Lobbying Disclosure Act disclosures, and the need to submit details if a grant request relates to a clinical research proposal.<br>• Paragraph 6.4.3: Objective criteria were added regarding the evaluation of grant requests.<br>• Paragraph 6.7.4: Grant decisions will be archived in a system that is available to all employees.<br>• Paragraph 6.8.2: Grant recipients will be notified that Purdue reserves the right to |

5

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

First Annual Report of Purdue Pharma L.P.
September 25, 2008

| Healthcare Grant Review Committee and Review Process (Cont.) | | publicly disclose grant information.<br><br>• Paragraph 6.11:  Certain steps will be taken to follow up on budget reconciliation requests.<br><br>• Paragraph 6.12.2:  Finance department will summarize donation-related spending on a quarterly basis and will review about 20 donations a quarter to ensure compliance with the SOP. |
| Material Review Process | GC-SOP-002.02 | Purdue has modified the Policy to reflect updates in the Material Review Process. |

6

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402060

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 3. Section V.B.3 – Purdue's Code of Business Ethics

The Code of Business Ethics reflects Purdue's commitment to ethical conduct in all of its affairs, including compliance with all Federal health care programs and FDA requirements. Promotion of and adherence to the Code of Business Ethics is an element in evaluating the performance of all employees.

The number of individuals required to complete the Code of Business Ethics certification under Section III.B.1 was 1584, and 100 percent of those individuals have completed such certification (See Tab 3 below). All Covered Persons required to certify that they have received, read, understood, and agree to abide by Purdue's Code of Business Ethics within the requisite time period specified under the CIA have done so.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                          PPLP004402061

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 4. Section V.B.4 – Training

Purdue has provided General Training and Specific Training to all Covered Persons and Relevant Covered Persons, as required by CIA Section III.C, and continues to do so with respect to new Covered Persons and new Relevant Covered Persons.

General Training covered the following areas:

a.  CIA requirements;

b.  Purdue's Compliance Program (including the Code of Conduct and Policies and Procedures as they pertain to general compliance issues); and

c.  The proper methods of promoting, marketing, selling, and disseminating information about Purdue's products in accordance with Federal health care programs and FDA requirements.

The General Training was conducted through live and computer based training on relevant topics. The training sessions took in excess of the requisite 2 hours specified in the CIA. The training was launched in three different modules: "Adverse Events and Product Complaints" (May 21, 2007), "Code of Business Ethics" (October 1, 2007), and "Healthcare Law Compliance Policies" (October 22, 2007).

The number of individuals required to complete the "Adverse Events and Product Complaints" module was 1531, and 100 percent of those individuals have completed such training. The number of individuals required to complete the "Code of Business Ethics" module was 1584, and 100 percent of those individuals have done so, and the number of individuals required to complete the "Healthcare Law Compliance Policies" module was 1535, and 100 percent of those individuals have completed the training.[1]

With the one following exception, all Covered Persons required to complete General Training within the requisite time period specified under the CIA have done so.

---

[1] In the course of the first Reporting Period there have been changes in the number of Covered Persons due to new hires, leave of absence, terminations, etc. These changes account for the fluctuation in the populations taking the different training modules.

8

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004402062

First Annual Report of Purdue Pharma L.P.
September 25, 2008

Explanation for an exception of Rhodes Pharmaceuticals Inc. Director completing his training within the requisite time period:

On August 11, 2008, Purdue's Corporate Compliance and General Counsel Departments discovered that a new director of Rhodes Pharmaceuticals Inc., an independent associated company of Purdue, attended a board meeting on June 4, 2008, pursuant to an agreement that was ultimately executed on July 24, 2008. A notification about the appointment was not sent to Corporate Compliance and General Counsel Departments. As a result, the new Director did not complete his training within 30 days of becoming a Covered Person as required under the CIA.

Once this problem was discovered, it was immediately corrected and the affected director completed his training within three days. An internal procedure was established to avoid repeating these situations.

Specific Training covered the following areas:

a. Federal health care program requirements relevant to the proper methods for selling, marketing, promoting, and providing information (including pricing information) about Purdue's products, including, but not limited to, the requirements of the Federal anti-kickback statute; the Civil Monetary Penalties Law; the civil False Claims Act; and the Medicaid Drug Rebate statute;

b. Applicable FDA requirements relevant to promotion, marketing, research, and dissemination of medical or scientific information about Purdue's products including but not limited to, the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations and written directives;

c. The personal obligation of each Relevant Covered Person involved in Product Services Related Functions to comply with all applicable legal requirements;

d. The legal sanctions for violations of the Federal health care program requirements or FDA requirements relating to Product Services Related

9

First Annual Report of Purdue Pharma L.P.
September 25, 2008

Functions;

e. Examples of proper and improper practices relating to Product Services Related Functions.

The Specific Training was accomplished through live and computer-based training modules. The training sessions took in excess of the requisite 3 hours specified in the CIA. The training was launched in four different modules: "Fraud and Abuse in the Pharmaceutical Industry: Basic Issues" (August 6, 2007), "Marketing and Promotion of Medical Products: Basic Issues" (September 17, 2007), "Marketing and Promotion of Medical Products: Special Topics" (October 15, 2007) and "Purdue Corporate Integrity Agreement" (live training at various times since the date of the CIA, and computer-based training launched on November 7, 2007 for those not trained live).

The number of individuals required to complete the "Fraud and Abuse in the Pharmaceutical Industry: Basic Issues" module was 865, and 100 percent of those individuals have completed such training. The number of individuals required to complete the "Basic Issues on Marketing and Promotion of Medical Products" module was 846, and 100 percent of those individuals have completed the training. The number of individuals required to complete the "Special Topics on Marketing and Promotion of Medical Products" module was 857, and 100 percent of those individuals have completed the training, and the number of individuals required to complete the "Purdue Corporate Integrity Agreement" module was 842, and 100 percent of those individuals have done so.[2]

With the exception of the following two instances, all Relevant Covered Persons ("RCPs") required to complete the required Specific Training within the requisite time period specified under the CIA have done so.

---

[2] In the course of the first Reporting Period there have been changes in the number of Covered Persons due to new hires, leave of absence, terminations, etc. These changes account for the fluctuation in the populations taking the different training modules.

10

First Annual Report of Purdue Pharma L.P.
September 25, 2008

Explanation for exceptions in completing the course "Marketing and Promotion of Medical Products: Basic Issues" within the requisite time period:

On April 8, 2008, Purdue's Corporate Compliance Department discovered that the requirement, "Basic Issues: Marketing and Promotion of Medical Products for Employees" was not being assigned to RCPs in Axentis Enterprise, the Compliance Management System Purdue is using to manage the disclosure log, training obligations, and other compliance-related matters. Investigation revealed that the requirement had unintentionally been deleted from the system on January 28, 2008 which caused three RCPs to not be assigned the requirement in a timely fashion.

Once this problem was discovered, it was immediately corrected and the three affected employees completed the course by April 11, 2008.

Explanation for exceptions in completing the course "Fraud and Abuse in the Pharmaceutical Industry: Basic Issues" within the requisite time period:

On April 15, 2008, Purdue's Corporate Compliance Department discovered that since January 1, 2008, RCPs were not being assigned to take the course entitled, "Fraud and Abuse in the Pharmaceutical Industry: Basic Issues". As a result, 21 RCPs did not complete this course within 30 days of becoming RCPs, as required under the CIA.

Once this problem was discovered, it was immediately corrected and all 21 affected employees completed the course by April 21, 2008.

11

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402065

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 5. Section V.B.5 – Independent Review Organization Review

Attached is a complete copy of the Independent Review Organization's ("IRO")
Report on Promotional and Product Services Transactions Engagement Reporting Period
1, dated August 14, 2008, the only report prepared pursuant to Section III.D, along with a
copy of the IRO's engagement letter (See Tab 4 below).

12

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402066

First Annual Report of Purdue Pharma L.P.
September 25, 2008

**6. Section V.B.6 – Purdue's Response to IRO Review**

Attached is a copy of Purdue's response and corrective action plan(s) related to
any issues raised by the reports prepared pursuant to Section III.D (See Tab 5 below);

13

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402067

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 7. Section V.B.7 – Purdue's Engagements with the IRO

There are neither new engagements nor new agreements between Purdue and the IRO since the submission of the Implementation Report on November 28, 2007. There has been an update to the engagement between Purdue and the IRO, Huron Consulting Services LLC ("Huron"), since then. Statement of Work #2 (SOW #2) to Master Service Agreement Between Purdue and Huron as well as Exhibit A to SOW #2 Between Purdue and Huron, dated July 30, 2008, re: Independent Review Organization ("IRO") Engagement – Year 2 have been added and are attached hereto (See Tab 4 below).

14

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402068

First Annual Report of Purdue Pharma L.P.
September 25, 2008

## 8. Section V.B.8 – IRO Certification of Independence

The IRO has certified its professional independence and objectivity, taking into account the nature of the engagement, with respect to Purdue. The certification is attached hereto (See Tab 6 below).

15

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 9. Section V.B.9 – Reportable Events

Purdue has established a Reportable Events Committee. The committee's role is to discuss disclosures from the disclosure log and decide whether they match the Reportable Events definition.

During the first Reporting Period the Reportable Events Committee did not identify any Reportable Events as defined in Section III.H of the CIA.

16

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402070

First Annual Report of Purdue Pharma L.P.
September 25, 2008

**10. Section V.B.10 – Disclosure Log**

Prior to the Effective Date of the CIA, Purdue established a Disclosure Program in accordance with Section III.E of the CIA. The Purdue Ethics and Compliance Hotline ("Hotline") has been in operation since 2001. The Disclosure Program emphasizes Purdue's non-retribution, non-retaliation policy. Retaliation in any form against an individual who reports a violation of Purdue's Code of Business Ethics or of law, regulation or policy or against an individual who assists in the investigation of a reported violation is itself a serious violation of Purdue's Code of Business Ethics. The Hotline provides an avenue for individuals to report an ethics or compliance concern or suspected misconduct, or to obtain information or advice regarding the application of Company policies, procedures and practices in a confidential manner.

Calls to the Hotline are not traced or recorded, and callers may remain anonymous if they choose.

The Hotline is publicized through various means including, but not limited to: the Company's Internet and Intranet websites, employee e-mails, the company's quarterly newsletter, "@ Purdue", the Code of Business Ethics, Purdue's Healthcare Law Compliance Policies, new employee orientation programs, desk "coasters" distributed to employees, and posters in public locations.

To reach the Hotline, individuals may call 1-877-PURDUE1 (1-877-787-3831). The caller will reach a 24-hour communication response center that is staffed by operators from a third party company that specializes in receiving calls from individuals with ethics or compliance questions and concerns. When individuals call, an operator listens to the caller's concerns, asks questions, and reviews the information provided. The operator then forwards a written description of the call to Purdue's Corporate Compliance Department, which will ensure appropriate action is taken, including an investigation, if warranted.

Purdue maintains a disclosure log of all compliance related inquiries that are raised through the Hotline and other means, both by Purdue employees and third parties. The disclosure log includes a record and summary of each disclosure received

17

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004402071

First Annual Report of Purdue Pharma L.P.
September 25, 2008

(whether anonymous or not), the status of the respective internal reviews, and any corrective action taken in response to the internal reviews. The disclosures in the disclosure log are communications to and from the Hotline and also direct inquiries received either by phone, email, mail, fax, personal conversation, and meetings.

In the first Reporting Period, Purdue received 362 compliance related inquiries of which 123 were received through the Hotline.

Of the 362 inquiries received, only 70 are related to Federal health care programs or to FDA requirements.

A summary of the 70 disclosures in the disclosure log required by Section III.E that relate to Federal health care programs or to FDA requirements is attached hereto (See Tab 7 below).

18

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

First Annual Report of Purdue Pharma L.P.
September 25, 2008

## 11. Section V.B.11 – Screening Persons against Exclusion Lists

As required by Section III.F of the CIA, Purdue has reviewed Screened Persons as called for in the CIA, against the HHS/OIG list of Excluded Individuals/Entities and the General Services Administration List of Parties Excluded from Federal Programs ("Exclusion Lists").

Since our Implementation Report, prospective employees have continued to be screened as part of the Company's pre-employment background screening process. In addition, beginning in January 2008 and ending in February 2008, as was the case previously, Purdue conducted its annual screening of all employees under the Exclusion Lists.

Since our Implementation Report, all officers, directors and owners have also been screened pursuant to a similar screening process developed for such individuals, with one exception. On August 11, 2008, Purdue's Corporate Compliance and General Counsel Departments discovered that a new director of Rhodes Pharmaceuticals Inc., an independent associated company of Purdue, attended a board meeting on June 4, 2008, pursuant to an agreement that was ultimately executed on July 24, 2008. A notification about the appointment was not sent to the Corporate Compliance and General Counsel Departments. Once this problem was discovered, it was immediately corrected and an internal procedure was established to avoid repeating this situations. The affected director was promptly screened pursuant to the screening process developed for such individuals.

Since our Implementation Report, Purdue has also continued to assess whether contractors, subcontractors, agents, vendors or consultants qualify as Screened Persons and to screen such individuals who are determined to meet such criteria.

Purdue developed and implemented written Policies and Procedures to provide for disclosures regarding debarment, exclusion or other ineligibility by Screened Persons.

The screening Policies and Procedures also provide for identification and screening of Screened Persons prior to retention and on an annual basis (See Tab 8 below). The procedures provide for screening of employees, officers, directors, owners and contractors, subcontractors, agents, vendors or consultants who qualify as Screened

19

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                                      PPLP004402073

First Annual Report of Purdue Pharma L.P.
September 25, 2008

Persons and outline a process to follow in the event it is determined that a Screened Person has become an Ineligible Person. The Code of Business Ethics, which is provided to all Covered Persons, requires disclosure of debarment, exclusion, suspension or other events that may make an individual an Ineligible Person. Contractual language in applicable vendor agreements also requires such disclosure. Screened Persons who are not Covered Persons were likewise notified of this disclosure requirement.

20

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402074

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 12. Section V.B.12 – Ineligible Persons

Purdue has determined that no Screened Persons are Ineligible Persons as defined in the CIA. Therefore no action has been necessary under the removal obligations set forth in CIA Section III.F.3.

However, as the OIG is aware, Purdue has also separately notified the OIG of the receipt by the Chief Legal Officer of a letter from the Department of Health and Human Services, which outlines considering his exclusion from participation in all Federal healthcare programs. On April 14, 2008 Purdue informed the OIG of the actions Purdue proposed to take with respect to the Chief Legal Officer pursuant to CIA Section III.F.4. On May 5, 2008, the OIG approved the proposed plan of action should exclusion be exercised.

21

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                                                PPLP004402075

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 13. Section V.B.13 – Ongoing Investigation or Legal Proceeding

Purdue has periodically submitted to the OIG a summary describing any ongoing investigations or legal proceedings as required under Section III.G.

A current summary is attached hereto (See Tab 9 below).

No new items were reported or uncovered since such report was last provided to the OIG on Friday, May 2, 2008. However, there are slight revisions since the May report to accommodate the status column.

No significant information has been added.

22

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402076

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 14. Section V.B.14 – Communication with the FDA

During the first Reporting Period, Purdue did not have any correspondence or communication with the FDA that substantively addressed Purdue's or a Covered Person's unlawful or improper promotion of Purdue's products or the misbranding of Purdue products. Therefore Purdue does not have anything to report as required under Section III.I.

23

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY   PPLP004402077

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 15. Section V.B.15 – Purdue's Locations

An updated list of all of Purdue Pharma L.P.'s associated U.S. company locations (those companies that are engaged in manufacturing, marketing, promotion, selling or distribution of healthcare products in the U.S. and Puerto Rico), corresponding information, and other relevant information required by Section V.A.12, is as follows:

**Corporate Headquarters – Stamford, Connecticut**

Purdue Pharma L.P.
Purdue Products L.P.
Purdue Pharmaceuticals Products L.P.

One Stamford Forum / 201 Tresser Blvd.

Stamford, CT 06901-3431

(203) 588-8000

Toll Free: (800) 733-1333 or (800) 745-7445

Fax: (203) 588-8850

**Summer Street – Stamford, Connecticut**

Purdue Pharma L.P.

1600 Summer St.

Stamford, CT 06901

(203) 588-8000

Toll Free: (800) 733-1333 or (800) 745-7445

Fax: (203) 588-8850

**Garret Mountain, New Jersey** (This office was vacated by August 30, 2008)

Purdue Pharma L.P.

3 Garret Mountain Plaza

West Paterson, NJ 07424

(973) 837-5252

Fax: (973) 247-9902

24

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

First Annual Report of Purdue Pharma L.P.
September 25, 2008

**Washington, D.C.**

Purdue Pharma L.P.

700  Thirteenth St, NW

Suite 525

Washington, D.C. 20005

(202) 508-0750

Fax: (202) 508-0755

**Wilson, North Carolina**

Purdue Pharmaceuticals L.P.
Purdue Pharma L.P.

4701 Purdue Drive

Wilson, NC 27893

(252) 265-1900

Fax: (252) 243-2533

**Totowa, New Jersey**

The P.F. Laboratories, Inc.
The P.F. Laboratories, Inc.

700 Union Blvd

Totowa, NJ 07512

(973) 256-3100

Fax: (973) 256-4177

**Cranbury, New Jersey**

Purdue Pharma L.P.

6 Cedarbrook Drive

Cranbury, NJ 08512

(609) 409-5123

Fax: (609) 409-5799 or (609) 409-5899

25

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402079

First Annual Report of Purdue Pharma L.P.
September 25, 2008

**Puerto Rico**
Purdue Pharma of Puerto Rico

530 Constitution Avenue

San Juan, Puerto Rico 00901

(787) 289-8700

Two independent associated companies, Rhodes Technologies and Rhodes Pharmaceuticals, are
located as follows:

**Coventry, Rhode Island**

Rhodes Technologies
Rhodes Pharmaceuticals

498 Washington St.

Coventry, RI 02816

(401) 262-9200 or (401) 262-9400

Fax: (401) 262-9201 or (401) 262-9401

26

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    PPLP004402080

First Annual Report of Purdue Pharma L.P.
September 25, 2008

## 16. Section V.B.16 – Purdue's Internal Audits

Below please find a description of the internal audit relating to the Product Services Related Functions completed in the First Reporting Period.

Date of Audit:          April 7 – 11, 2008

Functional Area:        Medical Services

Subject of Audit:       The processes related to handling of inquiries about Purdue products by the Medical Services Department were evaluated.

Scope of Audit:         This audit included a review of departmental procedures, training records, and the inquiry database.

Number of Critical Findings: 0

Number of Other Findings:    8

Number of CAPA (Corrective Action and/or Preventative Action): 8

Percentage CAPA:        100%

Date of Audit:          Commenced June 30, 2008 – In Progress

Functional Area:        Use of Materials by Field Sales

Scope of Audit:         Qualification and Training of Personnel; Organization and Management; Policies and Procedures; Notification of Discontinued Materials; Warehousing and Inventory Management of Materials; Destruction of Discontinued Materials.

27

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    PPLP004402081

First Annual Report of Purdue Pharma L.P.
September 25, 2008

### 17. Section V.B.17 – Compliance Officer Certification

The Compliance Officer Certification required by CIA Section V.C is attached hereto (See Tab 10 below).

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402082

Confidential and FOIA Exempt

First Annual Report of Purdue Pharma L.P.
September 25, 2008

## Compliance Officer Certification – Code of Business Ethics Distribution

## Purdue Pharma L.P.

Bert I Weinstein, Vice President, Corporate Compliance, Purdue Pharma L.P. ("Purdue"), does hereby certify to the best of his knowledge, information and belief, as follows:

1.    Purdue has distributed the Code of Conduct (Code of Business Ethics) to all Covered Persons.

2.    Purdue has complied with its obligations under Section III.B.1 of the CIA.  As of the date of this Certification, all Covered Persons required to certify within the requisite period under the CIA have acknowledged that they have received, read, understood and shall abide by Purdue's Code of Business Ethics. Such Covered Persons have acknowledged that they agree to abide by this Code of Business Ethics and that they understand that if they are aware or become aware of a conflict of interest or a violation of law, regulation, or Purdue policy or procedure, including a violation of the Code of Business Ethics, they are obligated to promptly report this conflict or violation to/through one of the following mechanisms: supervisor or manager;  a member of the Corporate Compliance Department; an attorney in the Office of the General Counsel Office;  a Human Resources generalist; or the Purdue Ethics & Compliance Hotline.

Such Covered Persons have certified their agreement with all of the statements outlined in the Code of Business Ethics, either in writing, or electronically, as if they had signed in writing.

_____
Bert I Weinstein
Vice President, Corporate Compliance

September 25, 2008
Stamford, Connecticut

Confidential and FOIA Exempt

First Annual Report of Purdue Pharma L.P.
September 25, 2008

## Compliance Officer Certification

## Purdue Pharma L.P.

Bert I Weinstein, Vice President, Corporate Compliance, Purdue Pharma L.P. ("Purdue"), does hereby certify to the best of his knowledge, information and belief, as follows:

1.      Purdue is in compliance with all of the requirements of the Corporate Integrity Agreement (CIA) entered into between Purdue Pharma L.P. and the Office of Inspector General of the Department of Health and Human Services.

2.      I have reviewed this Annual Report and have either direct knowledge or have made reasonable inquiry regarding its content and believe that the information in this report is accurate and truthful.

3.      Purdue has complied with its obligations under the Settlement Agreement with the United States:

    a.      not to resubmit to any Federal health care program payors any previously denied claims related to the Covered Conduct addressed in the Settlement Agreement, and not to appeal any such denials of claims;

    b.      not to charge to or otherwise seek payment from federal or state payors for unallowable costs (as defined in the Settlement Agreement); and

    c.      to identify and adjust any past charges or claims for unallowable costs;

4.      Purdue's:

    a.      Policies and Procedures as referenced in Section III.B.2 of the CIA above;

    b.      Templates for certain standardized contracts and other similar documents;

    c.      Training materials used for purposes of Section III.C of the CIA ; and

    d.      Materials as defined in the CIA, in use on or after the Implementation Date of July 31, 2007,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Confidential and FOIA Exempt

First Annual Report of Purdue Pharma L.P.
September 25, 2008

have been reviewed by competent legal counsel and have been found to be in compliance with the requirements of the Federal anti-kickback statute, the Prescription Drug Marketing Act, and other applicable Federal health care programs or FDA requirements (See Tab 11 below for reviewed documents or descriptions of reviewed documents).

5.    Purdue has complied with its obligations under Sections III.B.2.m-n to review Materials during the Reporting Period.  Purdue has taken appropriate action to update Materials where deemed necessary.

Bert I Weinstein

Vice President, Corporate Compliance

September 25, 2008
Stamford, Connecticut



# Mission: Possible
## Sales Force Monitoring



**COMMUNICATION AND BRANDING**
- Compliance Program Logo
- Quarterly Corporate Newsletter
- Regular e-mails regarding Compliance Programs
- Compliance objectives incorporated into Performance Management Program

**OTHER MONITORING PROGRAMS**
- Expenses
- Conventions
- Training
- Sampling
- Speakers
- Principal Investigators

**OTHER DM ACTIVITIES**
- Weekly call note review
- Call note annotation tool for managers
- Ride-Alongs

**INVESTIGATIONS**
- Reports via disclosure program (Hotline, Direct, Etc.)
- Matters found during other compliance activities
- Call notes used as documented evidence to confirm or deny allegations

**CALL NOTE KEYWORD SEARCH**
- List of keywords developed by Corporate Compliance & Law Departments
- Two-level review by law department
- Potential compliance or regulatory matters forwarded to Corporate Compliance for review

**NON-DM RIDE-ALONGS**
- Corporate Compliance Department
- Sales Management
- Law Department
- Sales Training Department

**CALL NOTES**
- Free text
- Report AEs, sampling, YTD HCP expenses

**MEDICAL INQUIRIES**
- Medical inquiries classified by category & topic by HCP in Medical Services Department
- Quarterly review by Corporate Compliance of field sales related inquiries in category & topic most likely to indicate off-label or inappropriate use of products
- Verify request via call note review
- Review call notes for documented evidence of appropriate referral or appropriate discussion of Purdue Products

**FIELD CONTACT REPORT (FCR)**
- Built into sales Territory Management System
- For each two-day work session, DM required to document sales representative's performance
- Manager sales call observations of representative interaction with each HCP visited
- Category Compliance Section of FCR
  - Legal Guidelines for Product
  - Promotion
  - Healthcare Law Compliance
  - PhCLD Policies
  - Code of Business Ethics
  - Diversion
  - Expense Reporting & Intrusion
  - Call Reporting
  - AE Reporting & Product Complaints
  - Reports Of Concern (ROCs)
  - Sampling (PDMA)
  - Professional Conduct
  - Requests for Off-Label
  - Information
  - Goals
- Rating of "1" in Compliance category means not fully compliant
- Rating of "5" in Compliance category means no known issues or violations
- Corporate Compliance automatically notified if a rating of "1" is given
- Corporate Compliance determines type of review based on ratings and manager's comments

**COMPLIANCE REPORTING**
- Adverse events, product complaints, Indications of abuse or diversion recorded in call system and automatically sent to Drug Safety & Pharmacovigilance Department

Ninth Annual Pharmaceutical Regulatory and
Compliance Congress and Best Practices Forum
October 27-29, 2008
Contact: Cbnh_papma@nobodypharma.com

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004402086