# Exhibit 29

# Corporate Compliance Quarterly Report to Board of Directors 1Q2011

## May 20, 2011

## Bert Weinstein

## Vice President, Corporate Compliance



U.S. - 43

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406032

# Summary

- <u>Corporate Integrity Agreement (CIA) Update</u> -  OIG signed-off on year 3 Annual Report, and copy of letter at end of slide deck;   year 4 requirements on track for July 30 completion, including Field Contact Reports and Medical Services Inquiries;   OIG formally notified of two FDA Field Alert Reports

- <u>Speaker Programs Processes</u> –OIG-mandated compliance procedures implemented for new Butrans speaker programs, including monitoring, with no compliance issues to date

- <u>Hotline Calls and Other Inquiries</u> – 88 new matters reviewed, none deemed to involve Reportable Events or significant compliance concerns

- <u>OIG's Exclusion Guidance and New FDA Park Prosecution Guidelines</u> – FDA's new Park Doctrine guidance is meant to increase individual accountability for compliance through wider threatened application of Park misdemeanor prosecutions

- <u>Compliance Audits</u> – Schedule of 2011 planned audits, and summaries of two completed compliance audits with positive findings



2



U.S. - 44

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406033

# Corporate Integrity Agreement

- We have received the Office of Inspector General's (OIG) January 28th letter, copy attached at end of slide deck, confirming satisfactory completion of OIG's review of Purdue's Third Annual Report: "it appears that Purdue was in compliance with the terms of the Corporate Integrity Agreement…."

  - The letter mirrors the comment made by our OIG Monitor, that Purdue should evaluate and strengthen processes in connection with the new speaker programs and other physician fee for service arrangements (see following slide)

- During the first quarter of 2011, we informed OIG of two minor product-related communications with FDA concerning Field Alert Reports-- involving a torn hospital unit dose blister pack, and carry over lactose from lower to higher strengths of MSContin. Under Purdue's CIA we are required to report all communications with FDA, regardless of significance, concerning potential misbranding of product.

- All field-based CIA requirements are being monitored, including the required number of Field Contact Reports (FCRs), with only 164 of 2321 "FCR days" remaining to be completed by July30, 2011, the end of our Fourth Reporting Period.





3

U.S. - 45

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406034

# Speaker Program/Physician Retention Processes

- Corporate Compliance has worked closely with Sales and Marketing and others to implement compliant OxyContin and Butrans speaker programs, with appropriate procedures for making needs assessments, establishing objective selection criteria, fair market value compensation, compliance monitoring, and other practices, all in accordance with current OIG guidance's.

- We have attended all speaker training programs as well as a large sample of speaker programs to monitor compliance; a compliance monitoring program for speaker dinners is now in place. No compliance issues have presented to date.

- A vendor has been retained to prepare fair market valuation guidelines to be used Company-wide in retaining physicians.

- Procedures are in place with Law, Procurement, and Finance to ensure there are contracts in place for all physician arrangements prior to any payments.



4

U.S. - 46

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406035

# CIA- Sales Promotion Monitoring – 1Q11

Purdue's CIA requires Corporate Compliance to review Field Contact Reports (FCRs) with a compliance category rating of "1," indicating less than 100% compliance with Sales SOPs

- 777 FCRs were prepared during  1Q11
  - 81 FCRs had a Compliance Rating of "1" – 10 were sufficiently concerning to require Compliance investigation; 5 resulted in discipline:
    - 1 representative had multiple SOP violations and was terminated
    - 1 representative promoted reformulated OxyContin before being permitted, resulting in 90-day probation
    - 1 representative made incorrect statements on several calls and was placed on 90-day probation.
    - 1 representative had two FCRs requiring review for unclear call notes resulting in a warning letter
    - 1 representative received a warning letter for utilizing a promotional piece on which there were handwritten notes



5



**U.S. - 47**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406036

# CIA Medical Services Monitoring – 1Q11

Purdue's CIA requires review of certain HCP inquiries to Medical Services regarding sales representative referrals (reflects OIG's general concern for off-label or improper promotion)

- During 1Q11 there were a total of 8548 Inquiries received by Medical Services concerning *all products*

  - 5509of these inquiries pertained to OxyContin and Ryzolt, the "Covered Products" during CIA year 4

  - 277 of these inquiries fell into CIA specified categories/topics, and 38 of these inquiries required review, with no improper matters noted



6



U.S. - 48

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406037

# Hotline Calls and Other Inquiries 1Q2011



7



U.S. - 49

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Hotline and Other Inquiries 1Q2011

## Compliance had 88 matters in 1Q2011, including:

- 39 Sales and Marketing matters relating to promotion, marketing materials, gifts, meals, CIA compliance, and grants ( 6 requests from sales representatives seeking review of Institutional Policies)

- There are a small number of open sales investigations into representative call notes concerning potential improper promotion and violations of Sales Department SOPs. All open matters are reviewed at our monthly Reportable Events Committee meetings, and none of these was deemed to rise to the level of CIA Reportable Events.

    (The significantly fewer 1Q matters is attributed to reduction in OxyContin inquiries and institutional policy reviews)



8



U.S. - 50

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406039

# Inquiries by Quarter (1Q05 – 1Q11)





9



U.S. - 51

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406040

# 1Q 2011 Compliance Inquiries



Abuse/Diversion, 1     Human Resources, 5

Other, 2

OTC Products, 4

Compliance/Ethics, 19

Medical, 9

Legal Matters, 2

Field/Marketing, 39

Institutional Policies, 6

Grants, 1



10



U.S. - 52

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406041

# Inquiry Response Time

## Days to Close Inquiries 1Q11 as of 4/4/11)





11



U.S. - 53

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004406042

## OIG's Exclusion Guidance

- As previously discussed with the Board, in October, 2010, the OIG released a guidance document describing its approach to excluding individuals from participation in federal health care programs. In that guidance, the OIG asserts new authority by creating a <u>presumption in favor of exclusion</u> in certain cases and endorsing a new strict liability exclusion standard in other cases. These enforcement positions accelerate the government's recent efforts to focus on holding individuals accountable for corporate wrongdoing.

- The guidance sets forth OIG's presumption that an owner, controller, officer or managing employee of a sanctioned entity who knows or should know of the conduct giving rise to the sanction will be excluded. This presumption "may" be overcome only if OIG finds that "significant factors" weigh against exclusion.

 

12



U.S. - 54

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                          PPLP004406043

# New FDA Park Doctrine Prosecution Guidelines

- On January 26, 2011, the FDA released to the public new guidelines to be employed in applying the Park Doctrine.

- As you know, the Park Doctrine, as established by Supreme Court case law, provides that a responsible corporate official can be held liable for a first time misdemeanor under the Federal Food, Drug, and Cosmetic Act, without proof that the corporate official acted with intent or even negligence, and even if such corporate official did not have any actual knowledge of, or participation in, the specific offense.

- The Government's thinking is that misdemeanor prosecutions, like exclusions, particularly against responsible corporate officials, can have a strong deterrent effect – whereas CIAs and large settlement payments are viewed as having failed to prevent wrongdoing.





13

**U.S. - 55**

# FDA Park Doctrine Prosecution Guidelines

- When considering whether to recommend a misdemeanor prosecution against a corporate official, the FDA has advised that it will consider the individual's position in the company and relationship to the violation, and whether the official had the authority to correct or prevent the violation. Knowledge of and actual participation in the violation are not a prerequisite to a misdemeanor prosecution but are factors that may be relevant when deciding whether to recommend charging a misdemeanor violation.

- The existence of an effective compliance program is a factor to be taken into account



14



U.S. - 56

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    PPLP004406045

# 2011 Planned Audits List

In consultation with other areas, Compliance makes determinations to audit and monitor compliance priority risks throughout Purdue. The activities are subject to change based on perceived risk over time.

Current audits and assessments include:

- Home Office expenses on HCPs
- Vermont State law sales compliance issues
- Call Note Audits
- District Manager Automobile Trunk Checks of Materials
- CIA Training / HRIS Database
- Aggregate Spend
- Fee for Service Arrangements
- FCPA / UK Bribery
- Speaker Programs



15



U.S. - 57

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406046

# 1Q2011 Audits

Two audit assessments were completed during 1Q11:

1) Sales Force and Sales Manager Training during 2010.

- Together with Sales Management, Compliance reviewed a large sample of both compliance and non-compliance-related live training sessions for Sales Representatives and Managers.  The goal of this review was to assure that training materials have not been revised from approved versions, and that the trainers stay on-topic, and true to the materials.

- We found that all training materials had been approved through the Aprimo Material Review system, and trainers were on topic and consistent with materials.  In addition, the Sales Training group demonstrated some best practices that are used in the development of their training classes to help keep the trainer on topic and the class engaged in the learning process.





16

U.S. - 58

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406047

# 1Q2011 Audits

## 2) In-Service Sign-in Sheet Audit

- "In-Service" Sign-in Sheets were audit for the time frame of January 1, 2010 thru September 30, 2010. The purpose of this audit is to determine compliance to requirements for Sales Representatives when conducting HCP in-services meals. Representatives are required to obtain a sign-in sheet for in-services of five or more individuals along with legible receipts and are expected to follow the Sales Standard Operating Policy (SOP). Expense reports for this audit were evaluated and reviewed for data entry capture and accuracy in eleven different categories.

- Based on our findings, there was a 92% accuracy rating for data entry and reporting requirements. Our review revealed that there were several examples in which data accuracy is occurring at or above 99%. These findings underscore improvement over last year's findings.





17

U.S. - 59

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406048

# Blue Sheet

U.S. - 60

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    PPLP004406049



**DEPARTMENT OF HEALTH & HUMAN SERVICES**   Office of Inspector General
Office of Counsel to the Inspector General

January 28, 2011

Bert Weinstein
Vice President, Corporate Compliance
Purdue Pharma, L.P.
One Stamford Forum
Stamford, CT  06901

    Re:    Review of Third Annual Report

Dear Mr. Weinstein:

We have reviewed the additional information submitted in response to our inquiries
regarding the Third Annual Report for Purdue Pharma, L.P. (Purdue).  Based on our
review of this additional information and the information provided in Purdue's Third
Annual Report, it appears that Purdue was in compliance with the terms of the Corporate
Integrity Agreement (CIA) between the Office of Inspector General (OIG) of the
Department of Health and Human Services and Purdue during the third annual reporting
period.  Based upon our on-site visit and review of documents in connection with the
Third Annual Report, we reiterate that Purdue should focus on evaluating and
strengthening its processes concerning arrangements with health care providers.

This letter is not intended to affirm that Purdue has implemented an effective compliance
program.  Purdue is in the best position to determine the effectiveness of its compliance
efforts based upon its own particular circumstances (e.g., size, structure, resources,
results of internal assessments, etc.).  Notwithstanding, during the remaining term of
Purdue's CIA, the OIG will continue to evaluate whether Purdue has demonstrated that it
is adhering to the requirements of the CIA.

The OIG makes no representations in this letter as to Purdue's practices or conduct that
may be the subject of ongoing investigations, if any.  Also, our comments do not reflect
our assessment of any legal claims that may be made against Purdue in connection with
any ongoing or future investigations.

As a reminder, Purdue's next Annual Report is due no later than **September 30, 2011**.

**U.S. - 61**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    PPLP004406050

Page 2- Bert Weinstein

_____

If you have any questions regarding Purdue's CIA requirements, please contact me at

Sincerely,

Keshia B. Thompson
Senior Counsel

**U.S. - 62**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004406051