# Exhibit 44

# 3Q2012 Compliance Report to the Board of Directors

Bert Weinstein

Vice President, Corporate Compliance

October 5,  2012



U.S. - 82

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
PPLP004408439

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
PPLP004408439

# Corporate Integrity Agreement



The Final Independent Review Organization (IRO) Report under Purdue's CIA successfully concluded:

- Review of Medical Information Request Forms ("MIRFs") from Health Care Professionals (HCP) –
  - Two "Findings" – one unsigned and one Representative-signed MIRF, contrary to SOPs in place
  - Two "Observations" – one illegible HCP signature, and one incorrectly labeled attachment
- Review of Promotion Monitoring Forms-
  - Four Observations, having to do with clarifications of Field Contact Report comments and wordings of District Manager  coaching of Representatives

These findings and observations are minor, but highlight the continued importance of adherence to departmental SOPs. We have agreed with this result in the Purdue Management Response.



U.S. - 83

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408440

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408440

# Corporate Integrity Agreement



## Fifth (and final) Annual Report under Purdue's CIA

- Submitted timely to Office of Inspector General on September 27th, including IRO Review Report and Management Response, Compliance Officer Certifications of the Report and all underlying CIA requirements, with summaries of compliance investigations during year 5.

- The Compliance Officer Certification summarizes elements of the full Report, and is attached for your ready reference. The full Report is available for review by the Board.

- Next Steps: We can expect OIG to begin its review of the Report, ask further questions and, ultimately, send Purdue a letter confirming the successful closure of the CIA. This may well take a further +/- six months.



U.S. - 84

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408441

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408441



# OTHER HIGHLIGHTS



U.S. - 85

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408442

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408442

# New Call Note Review Process

- System and process changes to the call note review process (both ASF and ISF sales forces) have been implemented with the transfer of this function to the Compliance Department:
  - Headcount reduced from three full time contract lawyers, to part-time work of two employees in Compliance Department
  - Reduced call note review cycle to 15-30 days, which allows review and resolution of issues in real-time
  - New process more effectively identifies issues for review, improving risk mitigation and quality of the reviews
  - Most important, the new process speeds up the Sales Discipline Committee review time - by reducing long lag in resolution of issues to one month post-call, issues are addressed quickly before they become big problems



U.S. - 86

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408443

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408443

# Sunshine Act Update



Implementation of Federal Physician Payments Sunshine Act has been delayed by lack of final regulations by HHS.

▪ HHS Administrator testified to Senate Committee in September - "hope" some data would begin to be captured for 2013,

▪ With many unanswered questions as to formatting of data, treatment of clinical trial related expenses, coverage of certain ownership interests

▪ Industry is seeking180 days to implement final regulations when issued

(FYI, through July 2012, the maximum spend by Purdue on an individual HCP was $29,000)



U.S. - 87

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# Deeper R&D Focus



- New Compliance Employee focused on R&D since April, brings six years of R&D compliance expertise from Pfizer
- Goal is to "embed" R&D compliance expert with R&D department through mentoring and other partnership efforts

- Three Areas of Initial Focus
  - Medical Research Operations
  - Medical Affairs
  - Health Outcomes and Pharmacoeconomics (HOPE)



U.S. - 88

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408445

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408445

# Medical Research Operations



- Why focus on Medical Research Operations?
  - We fully outsource all Clinical Trial work – this can create compliance risk if not carefully monitored
  - Medical Research Operations manages the day to day function of Clinical Trials, which are a key risk area for the organization
  - Compliance goal is for key aspects of Clinical Trials to be evaluated and in full compliance
    - Outsourcing & Vendor Alliance Management
    - Clinical Operations
    - Process Management



U.S. - 89

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                        PPLP004408446

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                        PPLP004408446

# Medical Affairs



- Why focus on Medical Affairs?
  - Investigator Initiated Trials (IIT) are a new area for Purdue
  - They carry significant compliance risk
  - IITs provide support (drug product and/or funding) to external researchers conducting independent investigator sponsored studies
  - Can be perceived as "seeding" and leading to improper promotion



U.S. - 90

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408447

PPLP004408447

# HOPE



- Why focus on Health Outcomes and Pharmacoeconomics (HOPE)
  - HOPE studies will be a component of Clinical Trials to help products are appropriately placed within managed care tier structures
  - Payor influence is pushing companies to obtain data to support formulary acceptance of new products
  - HOPE data should provide us with information such as why a patient would want to take, a doctor prescribe and a payer pay for our drug(s)



U.S. - 91

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408448

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408448

# Overall Compliance Performance



- Through the Third Quarter, the Company continues to maintain a state of effective compliance, with all components of the Annual Compliance Scorecard above the established standards, including Sales and Marketing, Manufacturing and Quality, and R&D

- Through a series of employee emails, communications, and presentations, all personnel have received reinforcement of the need for continued excellent compliance performance, notwithstanding the completion of the CIA.

- There have been no significant compliance matters to report for the third quarter



U.S. - 92

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408449

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408449

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

## 1. Section V.B.1 – Compliance Officer*

There have not been any changes in the identity or position description of the Compliance Officer since the First Annual Report submitted to the OIG on September 25, 2008, which stated:

In March 2004, prior to the Effective Date of the Purdue Pharma L.P. ("Purdue" or the "Company") Corporate Integrity Agreement ("CIA"), Purdue appointed the following individual as Corporate Compliance Officer:

Bert I Weinstein, Vice President, Corporate Compliance
One Stamford Forum
Stamford, CT 06901-3431
Phone Number: (203) 588-8288

The Vice President, Corporate Compliance reports directly to the President and Chief Executive Officer, is a member of the Executive Committee of the Company, and is responsible for providing day-to-day leadership of the Company's compliance program, including appropriate oversight, monitoring, and support to departmental compliance efforts. The Vice President, Corporate Compliance reports to the Board of Directors on a quarterly basis, and is authorized to report to the Board of Directors on compliance matters at any time he determines is appropriate.

The Vice President, Corporate Compliance is responsible for developing and implementing policies, procedures, and practices designed to ensure compliance with the requirements set forth in the CIA, as well as for any reporting obligations set forth under the CIA, and with Federal health care program and FDA requirements.

The Compliance Officer does not have any non-compliance responsibilities.

2

---

*Note:  Section number references in this report correspond to Corporate Integrity Agreement Annual Report provisions at CIA pages 27-29.

**U.S. - 93**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408450

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY              PPLP004408450

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

The following individuals, as required by Section III.A.2 of Purdue's CIA, were members of the Corporate Compliance Council during the Fifth Reporting Period.

| Name | Title |
| --- | --- |
| Windell Fisher | Executive Director, Sales Force |
| Todd Baumgartner | Vice President, Regulatory Affairs |
| Russell Gasdia | Vice President, Sales and Marketing |
| Joseph Northington | Head of Quality Operations (as of May 1, 2012) |
| Dr. David Haddox | Vice President, Health Policy |
| Dr. Craig Landau | Chief Medical Officer and Vice President, Research and Development, Innovation, Clinical and Medical Affairs |
| David Long | Senior Vice President, Human Resources |
| Edward Mahony | Executive Vice President and Chief Financial Officer |
| Larry Pickett Jr. | Vice President, Chief Information Officer |
| LaDonna Steiner | Associate General Counsel |
| Albert Stockalis | Senior Director, Corporate Quality Assurance |
| Bert I Weinstein | Vice President, Corporate Compliance, Chair |

3

U.S. - 94

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                PPLP004408451

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                PPLP004408451

Confidential and FOIA Exempt

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

## 2. Section V.B.2 – Purdue's Policies and Procedures

All Policies and Procedures required under Section III.B.2 of the CIA were reviewed during the Fifth Reporting Period. The following Policy has been amended as part of the periodic review. The amended policy is attached hereto (See Tab 2 below).

| Name of Policy | Policy Number(s) | Reason for Change |
|---|---|---|
| Local Exhibit Display Program Planning and Attendance | MKTG-SOP-069 | Added a statement that Purdue does not participate in giveaways, lotteries or contests in order to encourage participants to visit the booth sponsored by the Company. Added Local Exhibit Display and Graphic Panels. |

4

**U.S. - 95**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408452

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408452

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

### 3. Section V.B.3 – Purdue's Code of Business Ethics

The Code of Business Ethics reflects Purdue's commitment to ethical conduct in all of its affairs, including compliance with all Federal health care program laws and regulations and FDA requirements. Adherence to compliance and ethical standards stated in the Code of Business Ethics is an element in evaluating the performance of all employees.

In the Fifth Reporting Period, the number of individuals required to complete the Code of Business Ethics certification under Section III.B.1 was 2478 and 100 percent of those individuals have completed such certification (See Tab 3 below). All Covered Persons required to certify that they have received, read, understood, and agree to abide by Purdue's Code of Business Ethics within the requisite time period specified under the CIA have done so.

5

U.S. - 96

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408453

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408453

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

### 4. Section V.B.4 – Training

Purdue has provided General Training and Specific Training to all Covered Persons and Relevant Covered Persons, as required by CIA Section III.C.

General Training covered the following areas:

a.  CIA requirements;

b.  Purdue's Compliance Program (including the Code of Conduct and Policies and Procedures as they pertain to general compliance issues); and

c.  The proper methods of promoting, marketing, selling, and disseminating information about Purdue's products in accordance with Federal health care programs and FDA requirements.

The General Training was conducted through computer-based training on relevant topics. The training sessions were in excess of the requisite 2 hours specified in the CIA. The training was launched in three different modules: (1) "Adverse Events and Product Complaints" (launched on an ongoing basis from 7/31/11 to 4/8/12; revised version was launched to all required individuals beginning 4/9/12); (2) "Code of Business Ethics" (launched on an ongoing basis from 7/31/11 to 2/12/12; revised version was launched to all required individuals beginning 2/13/12); and (3) "Healthcare Law Compliance Policies Part I of II" (launched on an ongoing basis from 7/31/11 to 5/6/12; revised version was launched to all required individuals beginning 5/7/12).

The number of individuals required to complete the "Adverse Events and Product Complaints" module was 2418, and 100% percent of those individuals have completed such training. The number of individuals required to complete the "Code of Business Ethics" module was 2478, and 100 percent of those individuals have done so. The number of individuals required to complete the "Healthcare Law Compliance Policies Part I" module was 2420 and 100 percent of those individuals have completed the training.[*]

6

---

[*] In the course of the Fifth Reporting Period there have been changes in the number of Relevant Covered Persons due to new hires, leaves of absence, terminations, etc. These changes account for the fluctuation in the populations taking the different training modules at different times.

**U.S. - 97**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                        PPLP004408454

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                              PPLP004408454

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

During the monthly auditing and monitoring of training course completions on June 1, 2012, it was discovered that a new employee was overdue in completing four out of six CIA requirements. The issue occurred due to a system error after the vendor, Axentis, implemented a system enhancement which caused the start date of the employee to be reset to four days after his actual start date. This caused his due date to be extended by four days as well. The individual completed all the required trainings by June 1, 2012, his actual due date was May 30, 2012.

Specific Training covered the following areas:

a. Federal health care program requirements relevant to the proper methods for selling, marketing, promoting, and providing information (including pricing information) about Purdue's products, including, but not limited to, the requirements of the Federal anti-kickback statute; the Civil Monetary Penalties Law; the civil False Claims Act; and the Medicaid Drug Rebate statute;

b. Applicable FDA requirements relevant to promotion, marketing, research, and dissemination of medical or scientific information about Purdue's products including but not limited to, the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations and written directives;

c. The personal obligation of each Relevant Covered Person involved in Product Services Related Functions to comply with all applicable legal requirements;

d. The legal sanctions for violations of the Federal health care program requirements or FDA requirements relating to Product Services Related Functions;

e. Examples of proper and improper practices relating to Product Services Related Functions.

f. The PhRMA code effective January 2009.

7

U.S. - 98

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408455

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408455

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

The Specific Training was accomplished through live and computer-based training modules. The training sessions were in excess of the requisite 3 hours specified in the CIA. The training was launched in 3 different modules: (1) "PhRMA Code" training launched to new CPs and RCPs on an ongoing basis from 7/31/11 to 3/11/12, then the 2012 version was launched to all required individuals from 3/12/12 to 7/30/12; (2) "Purdue Corporate Integrity Agreement" launched to new CPs and RCPs from 7/31/11 to 1/15/12, then the 2012 version was launched to all required individuals from 1/16/12 to 7/30/2012); and (3) Healthcare Law Compliance Policies Part II of II – (launched on an ongoing basis from 7/31/11 to 6/03/12; revised version was launched to all required individuals beginning 6/04/12).

The number of individuals required to complete the "PhRMA Code" training was 2437, and 100 percent of those individuals have done so. The number of individuals required to complete the "Purdue Corporate Integrity Agreement" module was 2481, and 100 percent of those individuals have done so.[*] The number of individuals required to complete the "Healthcare Law Compliance Policies Part II" module was 2420 and 100 percent of those individuals have completed the training.[*]

Supplemental Training covered the following areas: Updates to product labeling, notifications of reporting requirements, Material Review SOP trainings, and training on the Healthcare Grant Review Process. The supplemental training was conducted live or delivered electronically. Sales representatives were required to sign an attendance sheet at live trainings. Electronic trainings included a certification in electronic form. All Supplemental Training was completed by 100% of the individuals within the requisite time period specified under the CIA, as indicated in the table below.

[*] In the course of the Fifth Reporting Period there have been changes in the number of Relevant Covered Persons due to new hires, leaves of absence, terminations, etc. These changes account for the fluctuation in the populations taking the different training modules at different times.

**U.S. - 99**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408456

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        PPLP004408456

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

| Supplemental Training | Description | Launch Date | Number of Individuals Required to be Trained |
|---|---|---|---|
| 2011 Healthcare Grant Review Committee and Review Process | This training provided notice and details of an update to the Healthcare Grant Review Committee and Review Process to relevant personnel per their job function. | 08/02/11 | 907 |
| 2011 Material Review SOP | This training provided notice and details of updated Purdue Material Review procedure to relevant personnel per their job function. | 08/03/11 | 395 |
| 2011 Sales Bulletin # 125 - Changes to Dilaudid Package Inserts | This training provided notice and details of an update to the Dilaudid Package Inserts. | 08/04/2011 | 641 |
| 2011 Sales Bulletin # 134-Update to Butrans Full Prescribing Information | This training provided notice and details of an update to the Butrans Full Prescribing Information. | 08/02/2011 | 643 |
| 2011 Sales Bulletin # 180 - Update to OxyContin Tablets Full Prescribing Information | This training provided notice and details of an update to the OxyContin Tablets Full Prescribing Information. | 10/31/2011 | 633 |
| 2011 Sales Bulletin # 203 – Update to Ryzolt Full Prescribing Information | This training provided notice and details of an update to the Ryzolt Full Prescribing Information. | 12/14/2011 | 635 |

9

**U.S. - 100**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408457

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408457

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

## 5. Section V.B.5 – Independent Review Organization Reviews

Complete copies of the following Independent Review Organization's ("IRO")
Reports are attached in Tab 4 below.

- Report on "Promotional and Product Services Transactions Engagement,
  Reporting Period 5," dated September 25, 2012.

10

**U.S. - 101**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408458

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          PPLP004408458

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

### 6. Section V.B.6 – Purdue's Response to IRO Reviews

Attached is a copy of Purdue's response related to the recommendations
contained in the IRO Reports prepared pursuant to Section III.D (See Tab 5 below).

U.S. - 102

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408459

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408459

Confidential and FOIA Exempt

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

## 7. Section V.B.7 – Purdue's Engagements with the IRO

Huron Consulting Services LLC ("Huron") was retained by Purdue pursuant to a Master Services Agreement dated July 30, 2007.  Huron and Purdue have entered into "Statement of Work #5" effective as of October 28, 2011 covering IRO Services for this fifth reporting period; following Tab 4.

12

**U.S. - 103**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                        PPLP004408460

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                          PPLP004408460

Confidential and FOIA Exempt

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

## 8. Section V.B.8 – IRO Certification of Independence

The IRO has certified to its professional independence and objectivity, taking into account the nature of the engagement, with respect to Purdue. The certification is attached hereto (See Tab 6 below).

U.S. - 104

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408461

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408461

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

**9. Section V.B.9 – Reportable Events**

Purdue has had a Reportable Events Committee (REC) since the implementation of the CIA. The Committee's role is to evaluate all disclosures from the Disclosure Log, including Hotline and other matters as may be brought to the attention of Corporate Compliance, and to decide their status under the Reportable Events definition of the CIA. The REC's meetings are scheduled monthly, and include review of matters newly-opened or that have been ongoing during the time period covered by the respective monthly review.

During the Fifth Reporting Period, no Reportable Events were identified.  (During the Fourth Reporting Period there was a matter reported to OIG, initially by letter dated August 30, 2010, concerning an internal investigation of some Sales Representatives' call notes that reflected potential comparative promotional claims between two of our prescription products, OxyContin® (oxycodone HCl extended-release) tablets and Ryzolt® (tramadol HCl extended-release) tablets, on the one hand, and competitive short-acting or long acting products, on the other. This matter was the subject of a final supplemental report during the Fifth Reporting Period, by letter dated September 9, 2011.)

14

U.S. - 105

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          PPLP004408462

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          PPLP004408462

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

**10. Section V.B.10 – Disclosure Log**

Prior to the Effective Date of the CIA, Purdue established a Disclosure Program in accordance with Section III.E of the CIA. The Purdue Ethics and Compliance Hotline ("Hotline") has been in operation since 2001. The Disclosure Program emphasizes Purdue's non-retribution, non-retaliation policy. Retaliation in any form against an individual who in good faith reports a violation of Purdue's Code of Business Ethics or of law, regulation or policy or against an individual who assists in the investigation of a reported violation is considered a serious violation warranting investigation and possible discipline up to and including termination of employment. The Hotline provides an avenue for individuals to report an ethics or compliance concern, suspected misconduct, or to obtain information or advice regarding the application of Company policies, procedures and practices in a confidential manner.

Calls to the Hotline are not traced or recorded, and callers may remain anonymous if they choose.

The Hotline is publicized through various means including, but not limited to: the Company's Internet and Intranet websites, employee e-mails, the company's quarterly employee newsletter, the Code of Business Ethics, Purdue's Healthcare Law Compliance Policies, new employee orientation programs, desk "coasters" distributed to employees, posters in public locations, and through other means.

To reach the Hotline, individuals call 1-877-PURDUE1 (1-877-787-3831). The caller will reach a 24-hour communication response center that is staffed by operators from a third party company that specializes in receiving calls from individuals with ethics or compliance questions and concerns. When individuals call, an operator listens to the caller's concerns, asks questions, and reviews the information provided. The operator then forwards a written call report by email to Purdue's Corporate Compliance Department and to Purdue legal counsel, who ensure appropriate action is taken, including an investigation, if warranted.

15

**U.S. - 106**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408463

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY              PPLP004408463

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

Purdue maintains a disclosure log of all compliance related inquiries that are raised through the Hotline, through other contacts with Corporate Compliance, through monitoring activities, and through other means, both by Purdue employees and third parties. The disclosure log includes a record and summary of each disclosure received (including whether anonymous or not), the status of the respective internal reviews, and any corrective action taken in response to the internal reviews. The disclosures covered in the disclosure log include Hotline communications and also direct inquiries received either by phone, email, mail, fax, personal conversation, and meetings with employees and other persons.

In the Fifth Reporting Period, there were a total of 331 matters recorded in the disclosure log, of which 76 were received through the Hotline. (It is important to note that because Purdue's Hotline is publicized on the company's internet site, the largest number of Hotline matters concern customer product and other inquiries or requests having no compliance implications.)

Of the 331 total matters, 105 were related to Federal health care programs or to FDA requirements.

A summary of the 105 disclosures in the disclosure log required by Section III.E that relate to Federal health care programs or to FDA requirements is attached hereto (See Tab 7 below).

16

U.S. - 107

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PPLP004408464

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    PPLP004408464

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

## 11. Section V.B.11 – Screening Persons against Exclusion Lists

As required by Section III.F of the CIA, Purdue has reviewed Screened Persons as called for in the CIA against the HHS/OIG list of Excluded Individuals/Entities and the General Services Administration List of Parties Excluded from Federal Programs ("Exclusion Lists").

Purdue has written Policies and Procedures to require disclosures regarding debarment, exclusion or other ineligibility by Screened Persons. The Code of Business Ethics, which is provided to all Covered Persons, requires disclosure of debarment, exclusion, suspension or other events that may make an individual an Ineligible Person. Contractual language in applicable vendor agreements also requires such disclosure. Screened Persons who are not Covered Persons were likewise notified of this disclosure requirement within the Fifth Reporting Period in February 2012. Purdue's screening Policies and Procedures provide for identification and screening of Screened Persons prior to retention and on an annual basis. The procedures provide for screening of employees, officers, directors, owners and contractors, subcontractors, agents, vendors or consultants who qualify as Screened Persons and outline a process to follow in the event it is determined that a Screened Person has become an Ineligible Person.

During the Fifth Reporting Period, prospective employees have continued to be screened as part of the Company's pre-employment background screening process. In addition, in February 2012, Purdue conducted its annual screening of all employees under the Exclusion Lists. In the Fifth Reporting Period, we identified one gap in employee screening due to an individual being hired outside of the routine applicant process. The employee was hired on January 18, 2012 however notice of the individual's hire was not provided until January 23, 2012. Screening was conducted on January 23 & 24, 2012.

During the Fifth Reporting Period, screening of all officers, directors and owners also was conducted in February 2012. In the Fifth Reporting Period, we identified two gaps in director and officer screening. On January 13, 2012, the Office of the General Counsel learned that a new director of Rhodes Pharmaceuticals Inc. and Rhodes Technologies Inc. had been appointed to the Board of Directors effective January 11,

17

**U.S. - 108**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408465

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408465

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

2012. Notification of that appointment had not been provided to Purdue's Corporate Compliance or the Office of the General Counsel prior to such appointment. The affected director was screened on January 24, 2012, and again as part of the annual ineligible persons screening of directors, owners and officers in February 2012. Those responsible for providing such notice were reminded of the procedure in place for such notifications. In addition, in mid-February 2012, as part of the annual screening process, the Office of the General Counsel was notified of the birth of a child during the Fourth Reporting Period (June 2011) who is deemed an "owner" and thus required screening based on the company's procedure relating to screening of directors, officers and owners. Upon receipt of notice of the birth, screening was immediately conducted.

Throughout the Fifth Reporting Period, Purdue also has continued to assess whether contractors, subcontractors, agents, vendors or consultants qualify as Screened Persons and to screen such individuals who are determined to meet such criteria. During our annual screening process we became aware in early 2012 of one additional instance in the Fourth Reporting Period in which required screening for a vendor was not conducted timely. In this case, a vendor designated as a Relevant Covered Person received and completed required training but was not screened until approximately one year after her retention due to a failure to alert the appropriate individuals that screening was required under the Standard Business Practice regarding Determination, Screening and Training of Relevant Covered Person and/or AG Covered Person Vendors. In this instance, once individuals responsible for the screening learned of the lapse, screening was conducted.

With respect to the individuals identified above as gaps in the screening processes, none were found to be Ineligible Persons.

18

U.S. - 109

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408466

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408466

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

### 12. Section V.B.12 – Ineligible Persons

Purdue has determined that no Screened Persons are Ineligible Persons as defined in the CIA.  Therefore no action has been necessary under the removal obligations set forth in CIA Section III.F.3.

### 13. Section V.B.13 – Ongoing Investigation or Legal Proceeding

Purdue has periodically submitted to the OIG a summary describing any ongoing investigations or legal proceedings as required under Section III.G.

A current summary is attached hereto (See Tab 8 below).

No new items were reported or uncovered during this Reporting Period since such summary was last provided to the OIG, dated May 15, 2012.

19

U.S. - 110

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408467

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408467

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

**14. Section V.B.14 – Communication with the FDA**

During the Fifth Reporting Period, Purdue did not have any correspondence or communication with the FDA that substantively addressed Purdue's or a Covered Person's unlawful or improper promotion of Purdue's products. Seven matters involving communications with FDA concerning quality issues of Purdue products were reported to OIG during the Fifth Reporting Period as of the dates identified, as follows:

- On August 17, 2011, a Final Field Alert Report that was submitted to FDA on August 14th, in follow up to an Initial Field Alert Report dated July 15th, forwarded to OIG on July 19th, concerning older formulation OxyContin OC 40mg tablets allegedly found by a pharmacist in a Purdue stock bottle of the newer formulation OxyContin OP 40mg tablets.

- On August 17, 2011, a copy of an Initial Field Alert Report, dated July 25th, and on August 24th a copy of the Final Field Alert dated August 24th, concerning complaints of faulty cap sealing on bottles of Ryzolt, manufactured and packaged in Canada for Purdue by a third party supplier.

- On August 18, 2011, a copy of FDA's August 15th letter to Purdue concluding a recall of a lot of Colace Stool Softener.

- On February 10. 2012, a copy of an Initial Field Alert Report dated February 8th, regarding an unbroken, unopened Dilaudid ampule found by a pharmacist to contain visible shards of glass.

- On April 4, 2012, a copy of an April 3rd Initial Field Alert Report concerning a batch of 10 mg. OxyContin tablets that had an out of specification degradation test result, supplemented on April 17th; and a Final Field Alert Report dated May 3rd, submitted May 7th.

- On June 12, 2012, a copy of the Company's Response to a FDA Form 483 Report, together with a copy of the May 25th report from FDA, concerning an FDA inspection the week of May 21-25, 2012 focused on Purdue's REMS program for Butrans.

- On June 14, 2012, a copy of an Initial Field Alert Report dated June 13th, having to do with pink colored particulates noticed in lots of active pharmaceutical ingredient used in lots of 60 mg. OxyContin tablets; on July 18th, a copy of a follow up Initial Field Alert Report dated July 12th; and on July 27th, a copy of the Final Field Alert Report dated July 25th.

20

U.S. - 111

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408468

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408468

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

### 15. Section V.B.15 – Purdue's Locations

An updated list of all of Purdue Pharma L.P.'s associated U.S. company locations
(those companies that are engaged in manufacturing, marketing, promotion, selling or
distribution of healthcare products in the U.S. and Puerto Rico), corresponding
information, and other relevant information required by Section V.A.12, is as follows:

**Corporate Headquarters – Stamford, Connecticut**

Purdue Pharma L.P.
Purdue Products L.P.
Purdue Pharmaceuticals Products L.P.

One Stamford Forum / 201 Tresser Blvd.

Stamford, CT 06901-3431

(203) 588-8000

Toll Free: (800) 733-1333 or (800) 745-7445

Fax: (203) 588-8850

**Washington, D.C.**

Purdue Pharma L.P.

700  Thirteenth St, NW

Suite 525

Washington, D.C. 20005

(202) 508-0750

Fax: (202) 508-0755

**Wilson, North Carolina**

Purdue Pharmaceuticals L.P.
Purdue Pharma L.P.

4701 Purdue Drive

Wilson, NC 27893

(252) 265-1900

Fax: (252) 243-2533

21

**U.S. - 112**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408469

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408469

Confidential and FOIA Exempt

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

**Totowa, New Jersey**

The P.F. Laboratories, Inc.

700 Union Blvd

Totowa, NJ 07512

(973) 256-3100

Fax: (973) 256-4177

**Cranbury, New Jersey**

Purdue Pharma L.P.

6 Cedarbrook Drive

Cranbury, NJ 08512

(609) 409-5123

Fax: (609) 409-5799 or (609) 409-5899

**Puerto Rico**

Purdue Pharma of Puerto Rico

530 Constitution Avenue

San Juan, Puerto Rico 00901

(787) 289-8700

Two independent associated companies, Rhodes Technologies and Rhodes Pharmaceuticals, are
located as follows:

**Coventry, Rhode Island**

Rhodes Technologies
Rhodes Pharmaceuticals

498 Washington St.

Coventry, RI 02816

(401) 262-9200 or (401) 262-9400

Fax: (401) 262-9201 or (401) 262-9401

22

**U.S. - 113**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004408470

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

PPLP004408470

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

## 16. Section V.B.16 – Purdue's Internal Audits

Below please find a description of the internal audits and risk assessments relating to the Product Services Related Functions completed in the Fifth Reporting Period.

Date of Audit:        June 21, 2011 – July 31, 2011

Report Issued on:     April 24, 2012

Functional Area:      Third Party Vendor

Subject of Audit:     Speaker Bureau Program Receipts and Methodology

Scope of Audit:       The purpose of this audit was to determine compliance to SOP requirements for Logistic Innovations when conducting Speaker Bureau Programs.   Accuracy, completeness and adherence to regulatory requirements of these expenses are important due to State law reporting requirements, the forthcoming Federal Physician Payment Sunshine Act and to avoid conflict with Health Care Provider attendees.

Number of Critical Findings: 0

Number of Other Findings:    6

Number of CAPA (Corrective Action and/or Preventative Action): 0

Percentage CAPA Complete: N/A

23

U.S. - 114

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408471

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408471

Confidential and FOIA Exempt

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

<u>Date of Risk Assessment:</u>    June 21, 2011 – March 31, 2012

<u>Report Issued on:</u>    July 5, 2012

<u>Functional Area:</u>    Sales Force

<u>Subject of Assessment:</u>    Speaker Bureau Program Monitoring

<u>Scope of Assessment:</u>    The purpose of this review was to outline a compliance
assessment performed on Speaker Bureau Monitoring
Forms submitted by Sales Representatives through the
Sales Force Automation system.

<u>Number of Critical Findings:</u> 0

<u>Number of Other Findings:</u>    2

<u>Number of CAPA (Corrective Action and/or Preventative Action):</u> 0

<u>Percentage CAPA Complete:</u> N/A

U.S. - 115

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                PPLP004408472

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                PPLP004408472

Confidential and FOIA Exempt

Fifth Annual Report of Purdue Pharma L.P.
September 27, 2012

### 17. Section V.B.17 – Compliance Officer Certification

The Compliance Officer Certification required by CIA Section V.C is attached hereto (See Tab 9 below).

25

**U.S. - 116**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004408473

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    PPLP004408473