UNREDACTED CONTAINS INFORMATION DESIGNATED CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

## BOARDS OF DIRECTORS MEETINGS
### (U.S. Companies)

### Thursday, July 25, 2013

### AGENDA

1.   Interim Decisions

     • None

2.   Pending Decisions

     • None

3.   2Q 2013 Compliance Report **(15 Minutes)**

4.   Project Breeze - Backup Manufacturing **(60 Minutes)**

5.   <div style="border:1px solid">**Redacted**</div>

6.   **Redacted**

7.   Palladone® NDA **(5 Minutes)**

8.   Business Environment - Threats and Opportunities **(120 Minutes)**

9.   McKinsey Report and Actions to be Taken **(20 Minutes)**

10.  R&D Report - Staffing and Project Update **(15 Minutes)**

11.  Targaniq® **(10 Minutes)**

12.  Key Hires Update **(5 Minutes)**

13.  2014 Budget Process **(10 Minutes)**

14.  Other

CPAM: 5659955.1

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                PPLP004409781

UNREDACTED CONTAINS INFORMATION DESIGNATED AS CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# TAB 3

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409782

UNREDACTED VERSION - CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER — TREAT SUBJECT TO PROTECTIVE ORDER

# Quarterly Compliance Report to the Board of Directors: What you must know about the Sunshine Act

Bert Weinstein

Vice President, Corporate Compliance

July 25, 2013



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# What Board Members *Must* Know

- August 1st: Purdue must report payments or other transfers of value ("Payments") made to physicians and teaching hospitals
- Payments include: meals, gifts, educational items, speaking and consulting fees, payments for research activities such as CROs, grants, and more…
- CMS will post Payments information on a public website 9/30/14; physicians and teaching hospitals will have opportunity to review and dispute data in advance
- All Purdue employees, certain contractors, *and* **Board members** will need to accurately record and report any such Payments
- Not Reportable: Payments to Purdue employee-physicians; physicians without active licenses; non-business, personal Payments are not covered



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409784

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Complying with the Sunshine Act



- Purdue has developed a highly automated system and departmental procedures to collect and report Payments (as few manual entries as possible = less human error)
- Many people at Purdue from affected departments have been deeply involved in this effort for over two years
- Live training sessions have been held with employees
- Web-based training for all employees upcoming
- Reminder cards distributed
- Independent audit of system readiness by Navigant Consulting underway



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 5

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409785

UNREDACTED: CONTAINS INFORMATION THE DEBTORS BELIEVE IS SUBJECT TO CONFIDENTIALITY OBLIGATIONS—
TREAT SUBJECT TO PROTECTIVE ORDER



# "Back-up Slides"



U.S. - 6

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409786

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY DESIGNATION UNDER PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Applicable Manufacturer Defined



- Applicable Manufacturers are entities that have a physical location or otherwise conduct activities in the U.S., and either:

  - Manufacture Federally reimbursed products; or

  - Are under common ownership with an entity that manufactures such products and provide a service necessary or integral to the manufacturing, marketing, sale, promotion, or distribution of such products

- Some "tricky" examples of Applicable Manufacturers:

  - A foreign manufacturer selling product in the U.S. through an agent

  - A U.S.- based affiliate that produces active ingredient for a sister company that is an Applicable Manufacturer



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409787

UNREDACTED – CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER – TREAT SUBJECT TO PROTECTIVE ORDER

# Covered "Payments" Included



Examples of Payments to be reported:

- Meals during office visits or speaker programs
- "Educational" items and materials, if not for patient use
- Consulting and Speaker fees, and related expenses (travel, lodging, meals…)
- Educational and research grants
- Payments and in-kind items related to research and development activities (but with delayed publication provision for payments related to products in development)
- Exhibits, Conventions, Product Theaters



U.S. - 8

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409788

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY TREATMENT UNDER PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# "Payments" Not Covered



- Applicable Manufacturers are not required to report :
  - Samples, coupons, and vouchers for patient use
  - Educational materials that directly benefit patients
  - In-kind items used for the provision of charity care
  - Payments or items less than $10, unless the aggregate amount provided to the physician exceeds $100/year
  - Food and beverages at large scale medical conferences
  - Payments made solely in the context of personal relationships, i.e., non-business/social
  - Discounts and rebates



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PPLP004409789

UNREDACTED VERSION – CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY UNDER SECOND AMENDED PROTECTIVE ORDER TREAT SUBJECT TO PROTECTIVE ORDER

# Reporting Requirements Include



For each Physician or Teaching Hospital Payment, must *separately* report the following information:

- First Name, Last Name, Middle Initial, suffix
- Primary business address
- Specialty
- National Provider Identifier #
- Amount of payment
- Date each payment made
- Form of payment

- State License Number
- State(s) of Licensure
- Physician designation (e.g., MD, DO)
- Nature and purpose of payment
- Name of the product(s) to which the payment relates
- NDC number(s) for each product to which the payment relates



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

U.S. - 10

PPLP004409790

UNREDACTED VERSION - CONTAINS HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Physician Ownership Reporting



- Applicable Manufacturers must report to CMS all "ownership and investment interests" that were held by a physician or an immediate family member of a physician during the preceding calendar year
  - BUT, not as to physicians who are employees of the Applicable Manufacturer



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409791

UNREDACTED-CONTAINS PROFESSIONALS' EYES ONLY INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Pre-Posting Review

Physicians and teaching hospitals will have the opportunity to review Payments data  at least 45 days before website posting

- May formally initiate a dispute with the manufacturer
- If disputed, the manufacturer and physician are to attempt to resolve the dispute
- If the dispute is not resolved before CMS publicly posts the data, CMS will post the data as reported by the manufacturer and mark it "disputed"

Attention to the accuracy of our systems for record-keeping has been significant - to avoid disputes with our customers, or to validate Payments in the event of disputes; earlier-than-required pre-reviews of data will be pushed out to leading consultants



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409792

[CONTAINS CONFIDENTIAL BUSINESS INFORMATION;
TREAT SUBJECT TO PROTECTIVE ORDER]

# TAB 4

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 13

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409793

UNREDACTED CONTAINS HIGHLY CONFIDENTIAL INFORMATION – SUBJECT TO PROTECTIVE ORDER TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS HIGHLY CONFIDENTIAL INFORMATION / PROFESSIONALS' EYES ONLY PURSUANT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED DOCUMENT CONTAINS CONFIDENTIAL, PROFESSIONAL EYES' DESIGNATED UNDER PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY AND PROFESSIONALS' EYES ONLY
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION UNLESS WE ALSO DESIGNATED HIGHLY CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED - CONTAINS INFORMATION SUBJECT TO A PROFESSIONALS' EYES ONLY / TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION UNLESS DESIGNATED TREAT DESIGNATED AS CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED DOCUMENT CONTAINS CONFIDENTIAL AND HIGHLY CONFIDENTIAL - PROFESSIONALS' EYES ONLY INFORMATION. PLEASE TREAT SUBJECT TO THE PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED – CONTAINS INFORMATION DESIGNATED CONFIDENTIAL OR HIGHLY CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY / COURT ONLY
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS CONFIDENTIAL AND PROFESSIONAL EYES ONLY
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION CONTAINS CONFIDENTIAL OR PROFESSIONALS' EYES ONLY INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO ADDITIONAL PROFESSIONALS' EYES ONLY PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION CONTAINS INFORMATION THAT UNLESS DESIGNATED, SHALL BE DESIGNATED TO
TREAT SUBJECT TO THE PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO UNLESS DESIGNATED OTHERWISE AS CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY TREATMENT UNDER PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS INFORMATION SUBJECT TO PRESSLEY-GREENE ORDER - RECEIVING PARTIES MUST
TREAT SUBJECT TO A HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY DESIGNATION UNDER PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED – CONTAINS INFORMATION THAT PROFESSIONALS DESIGNATED HIGHLY CONFIDENTIAL
TREAT SUBJECT TO PARAGRAPH 9 OF PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION SUBJECT TO PRESSURE FITTING IN ACCORDANCE
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED DOCUMENT CONTAINS CONFIDENTIAL MATERIAL - PLEASE TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL — CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS CONFIDENTIAL PROFESSIONALS' EYES ONLY MATERIAL SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409816

UNREDACTED DOCUMENT CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED - CONTAINS INFORMATION UNLESS DESIGNATED SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION SOUGHT TO BE FILED UNDER SEAL - CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION — CONTAINS INFORMATION DESIGNATED CONFIDENTIAL — PROFESSIONALS' EYES ONLY OR SUBJECT TO PROTECTIVE ORDER — TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS CONFIDENTIAL PROFESSIONAL EYES ONLY & SUBJECT TO
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS CONFIDENTIAL PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO THE PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION -
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION FILED UNDER SEAL—CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION SOUGHT TO BE FILED UNDER SEAL — CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION — CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY AND THE COURT ORDER TO TREAT SUBJECT TO THE PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO AND OTHERWISE PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO AN AGREEMENT TO TREAT SUBJECT MATTER UNDER PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                    PPLP004409830

UNREDACTED CONTAINS CONFIDENTIAL PROFESSIONAL EYES ONLY TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED - CONTAINS INFORMATION DESIGNATED AS CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION CONTAINS INFORMATION DESIGNATED AS CONFIDENTIAL – PARTIES AGREED TO TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS INFORMATION PROFESSIONALS' EYES ONLY SUBJECT TO
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409834

UNREDACTED CONTAINS INFORMATION UNDER POSSIBLE HIGHLY CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED—CONTAINS INFORMATION SUBJECT TO HIGHLY CONFIDENTIAL TREATMENT AND/OR PROFESSIONALS' EYES ONLY TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLP004409836

UNREDACTED DOCUMENT CONTAINS INFORMATION CONFIDENTIAL PROFESSIONALS' EYES ONLY AND/OR PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION CONTAINS INFORMATION FROM DOCUMENTS PROFESSIONALS' EYES ONLY OR TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLP004409838

UNREDACTED – CONTAINS HIGHLY CONFIDENTIAL, PROFESSIONALS' EYES ONLY INFORMATION [SUBJECT TO
TREAT SUBJECT TO PROTECTIVE ORDER]

# TAB 5

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 59

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION PROFESSIONAL EYES ONLY DO NOT TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED – CONTAINS INFORMATION THE DEBTORS OR THIRD PARTIES DESIGNATED AS CONFIDENTIAL OR HIGHLY CONFIDENTIAL AND TREAT SUBJECT TO THE DISCOVERY CONFIDENTIALITY AND PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED DOCUMENT CONTAINS HIGHLY CONFIDENTIAL INFORMATION DESIGNATED AS ATTORNEYS' EYES ONLY
TREAT SUBJECT TO THE TERMS OF THE PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED - CONTAINS INFORMATION DESIGNATED AS CONFIDENTIAL OR PROFESSIONALS' EYES ONLY - SUBJECT TO THE PROTECTIVE ORDER - TREAT SUBJECT TO PROTECTIVE ORDER

# TAB 6

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 65

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION PROFESSIONALS' EYES ONLY PURSUANT TO
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS INFORMATION PROFESSIONALS' EYES ONLY
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY DESIGNATION AND SUBJECT TO
TREAT SUBJECT TO STIPULATION AND PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION CONTAINS CONFIDENTIAL INFORMATION AND IS FILED UNDER SEAL - PLEASE TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO RESTRICTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION SOUGHT TO BE FILED UNDER SEAL CONTAINS INFORMATION PROFESSIONALS' EYES ONLY PURSUANT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION SUBJECT TO A PROTECTIVE ORDER

TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED VERSION CONTAINS INFORMATION SUBJECT TO A CONFIDENTIALITY DESIGNATION - TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION UNLESS REDACTED PER PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED CONTAINS INFORMATION SUBJECT TO PRESERVATION OBLIGATIONS AND PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Redacted

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION — CONTAINS INFORMATION PROFESSIONALS ARE DIRECTED TO TREAT SUBJECT TO THE PROTECTIVE ORDER

# TAB 8

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 77

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409857

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY PROVISIONS OF THE MDL 2804 PROTECTIVE ORDER AND PEC DESIGNATION - TREAT SUBJECT TO PROTECTIVE ORDER

# Business Conditions Report

## External Environment

### John H. Stewart
### July 25, 2013

**Privileged and Confidential**

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 78

UNREDACTED - CONTAINS HIGHLY CONFIDENTIAL PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

# Overview

- ☐ Review the convergence of several activities that significantly impact the environment, including:
  - ▪ Pharma - generally
  - ▪ Purdue - specifically
  - ▪ Opioid analgesics and OxyContin in particular
- ☐ Provide context to these issues and how we see them impacting Purdue and its Products
- ☐ Outline a strategy and tactics to address the issues, seeking to engage others and leverage opportunities
- ☐ Recognize that some of the changes underway will impact the opioid analgesic market for the foreseeable future



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409859

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Positive Impact of AD OxyContin

❑ Positive Media Coverage of Abuse-Deterrent Formulations

❑ Meaningful Reduction in Abuse - Especially Parenteral

❑ Fewer Pharmacy Thefts Reported by Law Enforcement

❑ Positive Reputation and Relationships with FDA and DEA

❑ Opportunity to link AD Formulations with Broader Anti-Abuse Initiatives

❑ Opportunity to Build on Expertise with ADFs



PUBLICLY FILED PER STIPULATION [ECF 2140]
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
PPLP004409860

UNREDACTED – CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Context:  Environment Challenges

❑ Legal/Regulatory

- Sunshine Act
- Senate Finance Committee
- City of Chicago
- CDC Activities/Reports
- NIDA Activities
- DEA Activities
- PROP Citizen's Petition

❑ State Legislative/Regulatory

- Actions to Limit Opioid Prescribing



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 81

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409861

UNREDACTED - CONTAINS INFORMATION SUBJECT TO MOTION TO SEAL AND CONFIDENTIALITY
TREAT SUBJECT TO PROTECTIVE ORDER

# Context: Environment Challenges

- ❑ Advocacy
  - ▪ Impact of Senate Finance Committee and other Initiatives
  - ▪ Key Opinion Leaders
- ❑ Commercial (Payor and Retail Pharmacy)
  - ▪ Significant downward pressure on sales of OxyContin and potential revenue from pipeline analgesic products
- ❑ Media/Reputational



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409862

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY PROVISIONS OF PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Context: Environment Challenges

- ❑ PROP Citizen's Petition
  - ▪ Strike the term moderate from the indication for use in non-cancer pain
  - ▪ Add a maximum daily dose of 100mg morphine for non-cancer pain
  - ▪ Add a maximum of 90 days continuous use for non-cancer pain
- ❑ PROP Message: Opioids Harmful to Patients, Even when Taken as Prescribed; Overprescribing the Problem
  - ▪ Challenge to CME program content
  - ▪ Challenge to HYD protocol and informed consent
  - ▪ Widespread presence at conferences, FDA meetings, in media



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                        PPLP004409863

UNREDACTED – CONTAINS INFORMATION SUBJECT TO HIGHLY CONFIDENTIAL
TREAT SUBJECT TO PROTECTIVE ORDER

# Context:  Environment Challenges

- ❑ Paradigm has shifted to reduced risk tolerance, as opposed to the need for treatment of pain

- ❑ Forces seeking to restrict opioid prescribing
  - ▪ PROP
  - ▪ DEA
  - ▪ CDC
  - ▪ States
  - ▪ WCBs

- ❑ Impact on important audiences
  - ▪ Prescribers
  - ▪ Wholesalers
  - ▪ Chain drug stores
  - ▪ Pharmacists
  - ▪ FDA



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409864

UNREDACTED - CONTAINS INFORMATION DESIGNATED CONFIDENTIAL OR UNDER INTERIM TREAT SUBJECT TO PROTECTIVE ORDER

# Plan To Address These Issues

❑ Strategic Response: Highest Priority

❑ Well-coordinated and Interdisciplinary Effort

❑ Resources to Accelerate and Broaden Response

❑ Develop and Disseminate More Data - with Interpretations

- ■ Opioid Safety and Efficacy Analyses

- ■ OxyContin Epidemiology Studies

- ■ Pharmacoeconomic Analyses

- ■ Publication Plans

- ■ Presentations to KOLs and Policy Influencers (CDC, ONDCP, etc.)



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409865

UNREDACTED CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

# Plan To Address These Issues

- Re-energize Pain Treatment Advocacy
  - Opioids to Treat Pain Debate at PAINWeek
  - PROP versus PROMPT
  - Opportunity to have balanced, scientific exchange
  - Potential broader discussion of policy implications
  - Utilize Burson Marsteller
- Collaboration on Order Monitoring Strategies
  - Wholesalers
  - National Chains



PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409866

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER TREAT SUBJECT TO PROTECTIVE ORDER

# Plan To Address These Issues

- ❑ Federal Legislative Activity
  - ▪ STOPP Act
  - ▪ Pain Care Forum

- ❑ State Legislative Activity
  - ▪ AD Initiatives
  - ▪ Florida Attorney General Summit on Access to Medicines
  - ▪ State Boards of Pharmacy and Medicine

- ❑ Regulatory Activity
  - ▪ Application of ADF Draft Guidance
  - ▪ Citizen's Petitions



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 87

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409867

UNREDACTED - CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL - TREAT SUBJECT TO PROTECTIVE ORDER

# Summary of Action Plans

❑ Media and Reputation

■ Proactive Communications by:

   o Third Parties

   o Purdue

■ Topics

   o Advantages of AD-Opioid Analgesics

   o Data on Long-Term Safety and Effectiveness of Opioids

   o IOM Report Findings and Recommendations

      • Prevalence of Under-treatment of Pain

      • Costs of Under-treated Pain (Human, Financial)



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 88

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS INFORMATION SUBJECT TO A PROTECTIVE ORDER DESIGNATED AS CONFIDENTIAL OR HIGHLY CONFIDENTIAL — TREAT SUBJECT TO PROTECTIVE ORDER

# Summary of Action Plans

- ❏ Advocacy:  Thought Leaders and Patients
  - ▪ Proactive and Reactive Communication by:
    - ○ Patients & Patient-organizations
    - ○ Key Opinion Leaders
- ❏ Focus and Messaging
  - ▪ Support Access to Medication
  - ▪ Address Challenges for Patients (e.g., Stigmatization)
  - ▪ Identify and Rectify Unintended Consequences of Legislative and Regulatory Actions Aimed at Reducing Abuse and Diversion
  - ▪ Support Utilization of AD Opioid Formulations



PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 89

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409869

UNREDACTED CONTAINS CONFIDENTIAL PROFESSIONALS' EYES ONLY INFORMATION – TREAT SUBJECT TO PROTECTIVE ORDER

# TAB 9

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 90

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL

Memorandum to
John Stewart
Russ Gasdia

From
McKinsey & Company

July 18, 2013

# Identifying granular growth opportunities for OxyContin: First Board update

In June, Purdue engaged McKinsey to conduct a rapid assessment of the underlying drivers of current OxyContin performance, identify key opportunities to increase near-term OxyContin revenue and develop plans to capture priority opportunities.

While our work is only partially complete, we believe there is significant opportunity to improve OxyContin performance despite strong opioid marketplace trends that may be shaping a 'new normal'. We are pursuing 20+ distinct opportunities. All require further analysis, some will require testing, but several can be implemented quickly.

This memo provides an interim update that is not comprehensive of all the work done. The memo is divided into four sections:

1. Overall analytical approach

2. Early findings from diagnostic

3. Emerging opportunities

4. Next steps

## 1. Overall analytical approach

We set out to objectively examine OxyContin performance in seven areas – market landscape, commercial resourcing levels, messaging, targeting, field execution, market access, and medical/scientific support. In each area, we are taking an independent, fact-based, and granular approach. For the analyses, we are leveraging existing data, and where needed, we have requested that Purdue purchase new data (e.g., IMS prescriber level milligram dosing data). In

1

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PPLP004409871

UNREDACTED VERSION CONTAINING INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY AND HIGHLY CONFIDENTIAL DESIGNATIONS
TREAT SUBJECT TO PROTECTIVE ORDER

some cases we are generating entirely new data (e.g., having Purdue's sales force match specific prescribers to local 'corporatized providers' that make economically based usage decisions, such as Accountable Care Organizations.)

Our perspectives are shaped by 30+ interviews with external stakeholders including physicians, nurse practitioners, and pharmacists, as well as daily discussions with leaders in Stamford and initial ride-alongs with reps. There are strong marketplace headwinds from newer stakeholders (e.g., PROP, Corporatized Providers) that we are continuing to assess and quantify. In recognition of the complexity of the landscape and to better uncover root drivers, we have purposely and consistently focused on analyses at the local market level (e.g., zip code level analysis of growth). We have also leveraged McKinsey experts (e.g., field force execution, medical affairs) as well as proprietary tools (e.g., corporatized provider network connector) and McKinsey benchmarks (e.g., commercial spend, field productivity). Lastly our work builds upon our prior experiences serving Purdue that go back 10 years.

One important note: We have gathered and analyzed large amounts of data in a short period of time. Some initial findings will require refinement as we fill gaps in our fact base. We have been encouraged to provide an unvarnished, independent perspective on opportunities for improvement. As a result, our diagnostic focuses more on what's not working than what is. We see opportunity for Purdue to improve performance and hope these perspectives are received in that spirit.


## 2. Findings from diagnostic

So far, we see four broad areas for improvement: market insights, local market fact-based decision-making, optimization of current resources, and tailored go-to-market approaches. Below we detail what we have found to date. These do not represent recommendations at this stage, although these findings inform the emerging opportunities we describe in section 3.

### A) Growth by Geography

We believe that despite a national decline, micro market analysis suggests important pockets of growth that Purdue should focus on. It is encouraging that at a zip code level; roughly 40% of zips are actually growing their OxyContin prescription volume (Exhibit 1). The diffuse pattern in the geographic mapping also illustrates the extent of local dynamics– allowing Purdue to significantly improve its local market approach to capture these opportunities.

2

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 92

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED — CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

## Exhibit 1: OxyContin growth by geography

TRx growth by zip code, Apr 2011-Mar 2012 v. Apr 2012-Mar 2013



| Number of growing and declining zip codes[1] | | |
|---|---|---|
| Number of zipcodes | 40% | 60% |
| | | 5,481 |
| | 3,566 | |

| | Growing zipcodes | Declining zipcodes |
|---|---|---|
| Avg TRx/zip | 669 | 538 |
| Example zip codes | Fort Wayne, IN (+5.1K) Pinehurst, NC (+3.2 K) Fayetteville, NC (+2.6K) | Knoxville, TN (-1.9K) Tampa, FL (-1.9K) Renton, WA (-1.5K) |

1 Zip codes with fewer than 60 Oxycontin TRx in both 2011 and 2012 were not considered, accounting for approximately 100,000 TRx in 2011 and 2012

SOURCE: IMS; Purdue Sales and Marketing; Team analysis

McKinsey & Company | 1

## B) Growth by Prescriber

Going one step further to a physician level, 47% of all OxyContin writers (between March 2012 and March 2013) increased their prescribing of OxyContin and 60,000 new prescribers began writing OxyContin. To better understand where this growth is coming from, we examined growth by specialty.

Nurse practitioners and physician assistants (NP/PAs) stand out as the only group growing in double digits (11%, Exhibit 2). They have the greatest sales rep access and are increasingly important in large group practices. NPs are currently able to prescribe OxyContin in 41 states. In addition, NP/PAs as a group are expected to grow at ~3.5% over the next 5 years. Today Purdue calls on NP/PAs when they appear on a target list, however there is not a tailored approach or strategy for NPs. Purdue also does not systematically capture data affiliating NP/PA OxyContin writers with the practice in which they work (e.g., in primary care or as part of a pain practice).

3

U.S. - 93

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY PROVISIONS OF PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

## Exhibit 2: OxyContin growth by prescriber

**OxyContin % TRx by prescriber specialty**

| 100%= | 1.4M TRx | 1.3M TRx | 1.2M TRx | 2011-13 TRx CAGR | Number of prescribers 2012 (% Purdue Reach) | TRx/prescriber (2012) |
|---|---|---|---|---|---|---|
| | 100 | 100 | 100 | | | |
| Other specialty | 21 | 20 | 19 | -11 | 68,400 (12%) | 15 |
| PCP | 43 | 41 | 39 | -10 | 92,724 (31%) | 24 |
| Anesthesiology Nurse practitioner/physician assistant | 13 | 14 | 14 | -2 | 4,842 (66%) | 153 |
| Physical Med & rehab | 12 | 14 | 16 | 11 | 30,206 (25%) | 26 |
| Pain Medicine (narrowly defined)[2] | 10 | 10 | 10 | -4 | 4,976 (57%) | 111 |
| | 1 | 1 | 2 | 5 | 373 (73%) | 207 |
| | Q1 2011 | Q1 2012 | Q1 2013 | | | |

- Nurse practitioner/assistant TRx growing at double-digit rates[1]
- PCPs are one of the fastest declining segments of the market
- Narrowly defined pain specialists account for <2% of TRx

1 NPs can prescribe controlled substances in 41 states
2 Does not include pain medicine as a subspeciality

SOURCE: IMS; NP Central; Team analysis

McKinsey & Company | 2

## C) OxyContin Reach and Targeting

The diffuse geographic pattern of OxyContin growth combined with the above prescriber analysis prompted an exploration of Purdue's current reach and targeting.

In Q1 2013, Purdue reached 21% of all OxyContin prescribers, covering 54% of total OxyContin prescriptions (TRx). (Exhibit 3)

In Q1 2013, Purdue reached 22% of all OxyContin prescribers, covering 39% of total OxyContin prescriptions (NBRx).

Based on OxyContin's brand size, its relatively new reformulation and newer label change, improving Purdue's reach may be a profitable opportunity. Determining the optimal reach for OxyContin requires significant further analysis as it is both brand and situation specific. However for other brands of this size in similar situations, we regularly see reach near 80% of TRx when the brand is call sensitive.

Thus at an overall level, there is likely an opportunity to profitably expand reach.

4

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409874

UNREDACTED - CONTAINS HIGHLY CONFIDENTIAL PROFESSIONALS' EYES ONLY MATERIAL SUBJECT TO
TREAT SUBJECT TO PROTECTIVE ORDER

The sales force today is designed and incented entirely on TRx, not incorporating NBRx.   This is evident in the reach analysis of prescribers deciled by TRx vs by NBRx.(Exhibit 4)  TRx reach is consistently higher than NBRx, e.g., in decile 10, Purdue covers 85% of TRx vs 61% of NBRx.

## Exhibit 3: Reach by OxyContin TRx and NBRx

OxyContin sales force reach in Q1 2013 (including P1 or P2 calls)



| | Oxy TRx | | | Oxy NBRx | |
|---|---|---|---|---|---|
| | Total = 155K | Total = 1.3MM | | Total = 116K | Total = 177K |
| | 100 | 100 | | 100 | 100 |
| Called on | 21 | | | 22 | |
| | | 54 | | | 39 |
| Not called on | 79 | | | 78 | |
| | | 46 | | | 61 |
| | # Prescribers | TRx | | # Prescribers | NBRx |

1 For 3-month period ending in March 2013; Reach defined as any physician who received at least one call (P1 or P2) in the time period specified

SOURCE: IMS; Purdue Sales and Marketing; team analysis

McKinsey & Company  |  3

5

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 95

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS PROFESSIONALS' EYES ONLY INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

**Exhibit 4: Prescriber Deciling by TRx and NBRx**

Sales force reach by Oxy Prescriber Decile for TRx and NBRx in Q1 2013
% Reach

1 Reach defined as at least 1 P1 or P2 in Q1 2013

SOURCE: IMS; Purdue Sales and Marketing; Team analysis

McKinsey & Company | 4

*(Note: each decile contains 10% of the volume of TRx or NBRx. Each decile has different numbers of physicians. Decile 10 contains the smallest number of physicians but also those of highest value)*

Targeting that only incorporates TRx can create sub-optimal field deployment as reps could spend too much time with historically high writers. These prescribers may largely be maintaining patients, with minimal risk of switching stable patients. As a result, these prescribers may not justify as high a call frequency.

Incorporating NBRx would encourage the field to seek out prescribers who are putting new patients on OxyContin, both opioid naives and switchers. It is critical for the field to message physicians experiencing a high rate of brand decision moments, e.g., someone expanding their practice. Identifying and supporting high NBRx prescribers is critical to growing your patient base. We have seen many companies with chronic products initiate sales acceleration strategies focused on NBRx to boost new starts.

Thus there is a tangible opportunity for Purdue to adjust its targeting to incorporate NBRx.

6

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 96

UNREDACTED CONTAINS INFORMATION PROFESSIONALS' EYES ONLY
TREAT SUBJECT TO PROTECTIVE ORDER

Industry best practice targets physicians based on a composite value incorporating TRx and NBRx, as well as access and other behavioral indicators.

## D) OxyContin Call Responsiveness

Given the size of the "unreached population" and unique characteristics of OxyContin (e.g., a well-known brand with new characteristics), we examined the impact of prescribers not being called upon using vacancies as a proxy.

Despite its age, OxyContin is surprisingly responsive to both a lack of calls and re-introduction of calls. Calling on a 'vacant' prescriber appears to increase sales in that prescriber on average by 15%. (Exhibit 5) This is consistent with internal Purdue analysis on call sensitivity.

OxyContin's call responsiveness suggests there is tangible opportunity to benefit from increased reach.

Please note this analysis does not imply that more reps are needed; later on we will explore whether additional reach capacity could be found in the current force.

7

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PPLP004409877

UNREDACTED - CONTAINS HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO
TREAT SUBJECT TO PROTECTIVE ORDER

## Exhibit 5: OxyContin call responsiveness



- After 10 months of vacancy, Oxy TRx falls an average of 8% v. the overall trend; the effect is similar when zips are filled post- vacancy
- Given that the sales force calls on ~54% of OxyContin volume, this is **consistent with a ~15% impact on prescribers actually called**

1 % changes calculated using a weighted average of month TRx change for 8373 zip codes with >100 total TRx in a 28 month period (Jan 2011 to April 2013)

SOURCE: IMS; Purdue Sales Operations; team analysis                                          McKinsey & Company | 6

## E) OxyContin Sales Force Efficiency and Effectiveness

The level of reach and responsiveness invite examination of the efficiency and effectiveness of the field force.

At the highest level, Purdue's annual goal of 1400 calls per rep is below our observed industry best practices of 1700 calls per rep for primary care. If the entire Purdue sales force was treated as effectively primary care, this benchmark would suggest 21% greater productivity is possible.

Specialty call rates can be lower but a major driver is geographic workload given specialty forces are typically half of Purdue's current size.

Being more conservative and treating Purdue's field force as a composite of primary care and specialty suggests 15% greater number of calls could be possible. (Exhibit 6)

An additional factor is that Purdue reps make calls to pharmacists outside the 1400 calls per rep aspiration and these are not on the official call list. As part of the opportunity to increase productivity, the value of these 'extra' calls should be re-evaluated.

8

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 98

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                          PPLP004409878

UNITED DOCUMENT CONTAINS INFORMATION SUBJECT TO A PROFESSIONALS' EYES ONLY PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

Best practice field force productivity optimization requires a significant holistic approach (beyond the scope of this project) with robust analysis of many factors; therefore please view this observation as directional and preliminary.

## Exhibit 6: OxyContin call productivity



**Sales force calls**
Annualized

1,168 — Purdue Q1 2013 (annualized)
1,354 — Purdue Q2 2013 (annualized)
1,700 — Primary
1,080 — Specialist
+15%
1,557 — Purdue weighted benchmark assuming 77/23 primary/specialty call mix[1]

Benchmark

1 77% of Purdue OxyContin details are for GPs; GPs include GPs, NRP, Phys Med & Rehab;
2 Assuming 12 calls/ year/ prescriber, 39 incremental scripts per prescriber that is newly called upon (assuming Decile 5-7 sales responsiveness calculated by ZS Associates). 71 pills/script. $6.2 average price per pill, with 25% rebate and other fees.

SOURCE: GP/Specialist mix from ZS report "M6 Alignment and Preliminary Placement Review v2.0", slide 74; McKinsey benchmarks; Purdue sales reports; Team analysis

McKinsey & Company | 6

In terms of call attainment for OxyContin, in the first half of 2013 the field delivered 79% of target PDEs – 67% of the intended first position details (P1s) and 99% of second position details (P2s).(Exhibit 7) The rebalancing of territories in January is a factor but does not explain the entire difference, as Q2 P1% had risen to 80%.

9

U.S. - 99

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED – CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

## Exhibit 7: OxyContin call attainment

**Average monthly OxyContin calls**
Jan – June 2013

|  | P1 | P2 | Primary detail equivalents (PDEs)[1] |
|---|---|---|---|
| **Per Rep** | | | |
| • Target[2] | 55 | 59 | 84 |
| • Actual[3] | 37 | 58 | 66 |
| **Field force total** | | | |
| • Target | 28,875 | 30,713 | 44,231 |
| • Actual | 19,600 | 30,400 | 34,800 |
| • **% actual v. target** | **67%** | **99%** | **79%** |

1 P1s plus 50% of P2s
2 Target based on published call plan (e.g. 2 calls/month on Oxy Supercores and 1 call/month on Cores)
3 Assuming 525 active sales reps

SOURCE: Purdue sales reports; Purdue internal interviews; team analysis                    McKinsey & Company  |  7

Looking more closely at P1s, we examined call adherence to the headquarters list. The year to date level of adherence to the HQ list is 56%, meaning that 44% of the calls were made to prescribers not on the HQ target list. This is well below what we have seen at other companies which typically reach 85-95%.

10

PUBLICLY FILED PER STIPULATION [ECF 2140]

**U.S. - 100**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    PPLP004409880

UNREDACTED CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER TREAT SUBJECT TO PROTECTIVE ORDER

## Exhibit 8: HQ call list adherence

**Number of prescribers reached for OxyContin in Q1 2013**



| | A | B | C | D |
|---|---|---|---|---|
| | Head-quarter suggested list | Call plan # targets | Actual P1 calls made | On-list P1 calls made |
| **# of Prescribers** | 42,000 | 26,000 | 18,000 | 10,000 |
| *Per rep* | *80* | *50* | *34* | *19* |

68%    38%

**8,000 out of the 18,000 calls actually made were *off-list* (44%)**

SOURCE: ZS Associates report; Purdue call data; Team analysis

McKinsey & Company | 9

Understandably given the particular characteristics of OxyContin, there may be a high percentage of no-see doctors. However these should be accounted for both when the HQ list is constructed and when the field is reducing it to their target list. This may explain the high degree of room for selection of only 50 out of 80 targets per rep.

In the above example from Q1, of the 50 target calls per rep – only 34 P1s were made, and of those only 19 were from the HQ list. Thus 56% (19/34) of the calls made were on the target list. Extracting further, 38% (19/50) of the original HQ target P1s on the list were made.

This degree of freedom can work if Purdue's reps are making consistently better real time decisions. However examination of off list P1s shows that 91% were to lower value decile 0-5 prescribers, with 47% coming from decile 0 and 1. Thus it appears that the degree of flexibility may be allowing the field to trade off higher value prescribers for lower ones. Purdue should

11

PUBLICLY FILED PER STIPULATION [ECF 2140]

**U.S. - 101**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED CONTAINS PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

re-evaluate the optimal degree of freedom, which in turn could enable greater capture of benefits from adjustments to reach and targeting.

## F) OxyContin information

Moving to what the field actually says once in the physician's office, it is clear from our early physician interviews that there is an opportunity to increase awareness and understanding of both the new formulation and the AD label change.

We detected a consistent difference between pain specialists and PCPs in their understanding of the new formulation and AD label change. Many pain specialists saw significant value in the AD properties while PCPs generally had a lower level of understanding and a correspondingly lower level of perceived value. Pain specialists suggested PCP perception of AD value was largely driven by their incorrect assessment of the lack of abuse risk in their patients.

In our initial rep rides, we have seen missed opportunities for medical follow up to improve physician understanding. Yet we also heard from reps and management that medical has not optimally met physician needs due to a combination of: (a) MSL team being directed to focused on other stakeholders (but not necessarily prescribers); (b) no explicit channel for real-time engagement, and; (c) lack of belief that education will be beneficial for physicians, even when prescribers ask. In best practice medical organizations, each of these three observations is reversed: MSLs prioritize building strong relationships with physicians, Medical leverages real time technology – phone, video and even Google like proprietary tools, and the sales force routinely coordinates with their Medical colleagues to address physician needs.

The Medical Services information line is underutilized by physicians and the field appears under-trained on how to appropriately discuss it.

Given the unmet physician need to increase their understanding of the new formulation and AD label change, MSL resourcing and their ability to strategically engage physicians should be reconsidered.

## G) Broader Marketplace Strategy

Moving beyond physicians, Purdue's marketplace is facing forceful headwinds but strategies for evolving stakeholders such as corporatized providers, Managed Care and Pharmacies have not kept pace with competitors and require attention.

### Corporatized providers

Corporatized providers, ranging from large group practices to Acountable Care Organizations (ACOs) to large integrated delivery networks (IDNs) who are making use decisions using economic criteria, likely represent 25-35% of your potential business today and more going forward. Yet Purdue today does not purchase data on OxyContin performance in these groups.

12

**U.S. - 102**

PUBLICLY FILED PER STIPULATION [ECF 2140]

This is in contrast to competitors (e.g., Pfizer, BI) that buy the data and have already redesigned their sales forces to respond to these new stakeholders (e.g., creating dedicated key account teams that have different capabilities and regulatory guidelines from traditional reps). For this diagnostic, we are bringing a proprietary field affiliation tool that will shortly give Purdue its first view on performance in this corporatized provider segment. Given the lack of focus on these stakeholders, we expect the performance of OxyContin to be well below its national share.

Based on this new data, a decision needs to be made whether it is better to bolster relationships to regain share or reduce sales effort in these accounts.

Health Economics

HECON is becoming increasingly important – from payors to corporatized providers to physicians. Given its increasing relevance, Purdue's policies and strategic focus should be reconsidered.

For example, we understand that today Purdue does not proactively engage payors on HECON issues as a matter of policy and only responds to unsolicited requests. Therefore Purdue is not proactively sharing its new label or any of the supporting data to help inform formulary decisions. We are not aware of another pharmaco in the US that takes this approach. Rather we see increasing resources, in HECON and payor groups, and even growing numbers of institutional reps and key account managers empowered to shape these types of economic discussions.

Purdue's policy and strategy have led to an undersized and underutilized HECON team of two. We recognize that HECON to support OxyContin and other pain products is more challenging than in other therapeutic areas. However your portfolio and the evolving landscape stress the importance of real effort in this area.

We believe there is an opportunity to build out the HECON story about AD in a way that payors and corporatized providers will take notice. We believe AD should be the disproportionate focus of your HECON efforts. Currently Purdue is also exploring a Budget Impact Model (BIM) to show payors that formulary restriction is a poor financial decision. While we appreciate this may be valuable in a few targeted situations, there is also certainly risk of this approach being counterproductive and potentially driving more severe restrictions including being taken off formulary.

Thus we see value in re-considering Purdue's HECON policies and increasing focus on developing the AD value proposition.

Managed Care

While this is an unlikely source of near term opportunity, we did uncover two findings that suggest there are some actions that can be taken quickly. First, when we explored changes in OxyContin formulary status in multiple Part D plans, we detected a clear drop off in the

13

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 103

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED - CONTAINS PROFESSIONALS' EYES ONLY INFORMATION SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

commercial book of business for the same plan. This is inconsistent with industry best practice. (Exhibit 9)  Additionally in areas where Part D coverage was lost, we found there was no concerted physician or patient advocacy effort to champion ongoing patient access to OxyContin and put complementary pressure on the payor.  This is an opportunity to improve commercial access awareness today and going forward as Part D will continue to present formulary challenges.

**Exhibit 9: Part D formulary loss spillover into Commercial plan**



Summary of OxyContin performance in Aetna plans post loss of Medicare Part D formulary status

OxyContin ERO share

SOURCE: IMS PlanTrak; Purdue iGallery data; Purdue interviews; Team analysis

McKinsey & Company | 10

The second potential opportunity we identified was addressing instances of differential field force pull-through in equal access situations within the same state.  This will require further local inquiry to validate individual opportunities. (Exhibit 10)

14

U.S. - 104

PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLP004409884

UNITED CONTAINS INFORMATION DESIGNATED AS CONFIDENTIAL ... TREAT SUBJECT TO PROTECTIVE ORDER

**Exhibit 10: Differential pull through in equal access situations**

| Territory pair | State | % of EROs where OxyContin on formulary | OxyContin share of ERO | | |
|---|---|---|---|---|---|
| Cherry Hill, Long Branch | NJ | ~60% | | 38 | 49 |
| Goldsboro, Burlington | NC | ~55% | | 22 | 33 |
| Houston Central, San Antonio North | TX | ~45% | | 14 | 22 |
| North Atlanta, Savannah | GA | ~45% | | 16 | 24 |
| West Chester, Scranton | PA | ~45% | | 28 | 39 |

SOURCE: IMS, Igallery, team analysis                                     McKinsey & Company | 10

More generally, payor pressures like those Purdue has experienced in Part D and MA-PD plans are likely to intensify. To date, Purdue has not actively prioritized deeply understanding payor customers and developing value propositions that go beyond rebates. Thus we believe these are both near-term and mid-term opportunities for Purdue to strengthen its managed care efforts.

<u>Retail pharmacy</u>

The retail channel, both pharmacies and distributors, is under intense scrutiny and direct risk. We see clear disruption impacting patients and it is spreading. The range of obstacles include entire pharmacies being shut off by distributors, pharmacies themselves imposing tablet limits, decreases in channel inventory leading to greater stockouts, and pharmacies choosing to not stock OxyContin. Yet against this clear and direct threat to patient access, we have not found a Purdue strategy for response or any significant mitigation steps taken. This requires an urgent response. Later on, we will describe one early idea to potentially address this issue.

The broader external environment around opioids is being shaped by others and Purdue is being impacted. In some cases such as state legislation, Purdue has taken action. Yet for other

15

PUBLICLY FILED PER STIPULATION [ECF 2140]

**U.S. - 105**

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER - FILED UNDER SEAL
TREAT SUBJECT TO PROTECTIVE ORDER

significant influencers like PROP (Physicians for Responsible Opioid Prescribing), Purdue does not appear to have a clear strategy nor has it taken significant action.

The theme for these emerging stakeholders is that Purdue needs quicker, deeper insights and pro-active mitigation strategies.

## 3. Emerging opportunities

Our initial focus has been on the diagnostic. Our work will shift to opportunities over the coming weeks. To date we have identified and are pursuing 20+ tangible and near term opportunities to improve Purdue's performance. All require further analysis; several will require real world testing. We are launching a 'test and learn' approach in close coordination with the sales force.

Initial opportunities fall into three areas: (I) *Immediate tactical opportunities* for impact within 6 months (II) *Near term opportunities requiring testing* for impact in 6-12 months, and (III) *Strategic policy decisions* to be debated and resolved. (Exhibit 11)

**Exhibit 11: Examples of opportunities to pursue**          WORK-IN-PROGRESS

| | |
|---|---|
| **I. Immediate tactical opportunities** | • Make adjustments to select sales force efficiency and effectiveness levers (e.g., call productivity, reach, targeting, attainment, adherence)<br>• Increase involvement of MSLs in prescriber interactions to ensure effective communication of scientific results<br>• Increase messaging in low-share, high payer access territories on quality of OxyContin coverage<br>• Promote patient savings cards in areas with high Walgreen's concentration<br>• Expand 'starter kit' distribution |
| **II. Opportunities requiring testing** | • Move to 100% OxyContin P1s and Butrans P2s in select territories, adjusting incentives accordingly<br>• Selectively reduce peak frequency of OxyContin and use incremental capacity to increase reach, targeting high ERO and high NBRx prescribers being missed today<br>• Increase reach and frequency of calls to NPs and develop tailored messaging |
| **III. Strategic policy decisions** | • Create an alternative distribution channel to respond to retail patient access challenges<br>• Increase overall sales force productivity through fundamental re-examination of all the sales and marketing components, ranging from co-positioning to compensation to territory re-definition<br>• Develop new strategy to approach or deprioritize corporatized providers<br>• Reconsider policy around HECON engagement with payors |

16

U.S. - 106

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                    PPLP004409886

UNREDACTED CONTAINS PROFESSIONALS' EYES ONLY MATERIAL SUBJECT TO PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

Below we provide examples of each of these types of opportunities:

I. Immediate tactical opportunities require further validation and adoption by OxyContin brand leadership.  These ideas are primarily about implementing industry best practices in execution. These best practices can be adapted for Purdue and rolled out quickly.  These include: higher call productivity, full delivery of OxyContin P1s, higher reach of decile 6-10 prescribers, greater adherence to call lists, and field training on how to appropriately engage medical.

II. Near term opportunities requiring testing represent a higher degree of change.  We suggest evidence from pilots is needed prior to scale up.

An example would be a transformative shift in OxyContin and Butrans call objectives to 100% OxyContin in P1s and Butrans in P2s.  This could be part of a temporary build up or more permanent in many markets.  This could come with corresponding targeting and compensation changes.  We'd suggest this be a 'test and learn' given the value of insight from real world implementation (e.g., sizing both the potential OxyContin upside and Butrans downside.)

III. Strategic policy decisions are less about on the ground operations and more about fundamental change Purdue's go to market model.  Many of these decisions could deliver short performance impact.

One example is reconsidering Purdue's policy regarding proactively engaging in HECON discussions with payors and corporatized providers.

Another example is an early idea to create an alternative model for how patients receive OxyContin.  This model would  bypass retail , likely through a third party vendor who would provide  adjudication and direct distribution to patients.(Exhibit 12)  Physician offices or patients would send in prescriptions and this alternative channel could replace pharmacy call backs with patient care value added services.  Recordkeeping could be much easier if done centrally by experts.  Pfizer, J&J and AZ have all developed versions of this direct to patient distribution model to improve patient access.

17

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 107

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                           PPLP004409887

UNREDACTED CONTAINS PROFESSIONALS' EYES ONLY AND
TREAT SUBJECT TO PROTECTIVE ORDER



Exhibit 12: An early idea for disruption of OxyContin fulfillment

Implementation of ideas in all three areas requires a cultural and mindset change for Purdue. Successful adoption of new approaches will be challenging for the organization. We are encouraged by many leaders who are ready and highly supportive of driving the types of changes described here.

## 4. Next steps

We are only partially through our work and many analyses are in progress. For example, we know that over 40% of OxyContin decline (in milligrams sold) is due to a reduction in tabs/Rx and mgs/Rx. We are developing a perspective based on channel inventory data, external discussions with pharmacists and new IMS data. Other in progress analyses include: deeper evaluation of the micro-markets, consideration of sales curves by market characteristics and assessment of pricing by dosage.

Given the focus on near term performance, we will continue to focus disproportionately on those opportunities that can have the biggest impact.

We recognize the urgency, complexity and scale of the issues we have found to date. We will proceed with our absolute best efforts. We are confident that significant progress will be made and at a substantially accelerated pace; but the scale and degree of change being considered is substantial. Capturing these opportunities will be a journey, not an event for Purdue.

18

PUBLICLY FILED PER STIPULATION [ECF 2140]

U.S. - 108

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

PPLP004409888

UNREDACTED - CONTAINS INFORMATION SUBJECT TO PROFESSIONALS' EYES ONLY DESIGNATION UNDER PROTECTIVE ORDER
TREAT SUBJECT TO PROTECTIVE ORDER

In our final report, you can expect a comprehensive assessment of our findings, quantified recommendations on the biggest opportunities and specific guidance on implementation – recognizing culture and mindset change requirements. It will include a roadmap for further work Purdue will need to do to make rapid progress on capturing these opportunities.

Purdue has had a remarkable history of success. So far, we have seen significant opportunity to drive performance improvements and openness to the scale of change that is needed.

19

PUBLICLY FILED PER STIPULATION [ECF 2140]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    PPLP004409889