# EXHIBIT 106

PUBLICLY FILED PER STIPULATION [ECF 2140]

## SHAREHOLDERS' AGREEMENT
## (PURDUE PHARMA INC.)

This Shareholders' Agreement (the "Agreement") effective as of March 4, 2003 by and among Banela Corporation, a British Virgin Islands company, Leslie J. Schreyer, as Trustee under Trust Agreement dated December 23, 1989 FBO the issue of Richard S. Sackler, M.D., and Leslie J. Schreyer, as Trustee under Trust Agreement dated December 23, 1989 FBO the issue of Jonathan D. Sackler (collectively, the "PPI Shareholders"),

W I T N E S S E T H :

WHEREAS, the PPI Shareholders are parties to that certain Shareholders' Agreement effective as of December 1, 1999 (the "Existing Agreement"); and

WHEREAS, the PPI Shareholders desire to restate in its entirety the Existing Agreement to set forth their agreement with respect to certain director, officer and management positions of Purdue Pharma Inc., a New York corporation ("PPI"), and Purdue Pharma L.P., a Delaware limited partnership ("PPLP");

NOW, THEREFORE, in consideration of the premises and mutual covenants set forth herein, the parties hereto hereby adopt this Agreement to replace in its entirety the Existing Agreement and hereby agree as follows:

1.      PPI and PPLP.

      (a)      Board of Directors.

            (i)      Number of Directors.  The Board of Directors of PPI will consist of the following Directors:

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER

(1)      One Class A-1 Director and one or more Class A-2 Directors who shall collectively be designated the "Class A Directors," except that upon the death, resignation or incapacity of the Class A-1 Director, the designations of Class A-1 Director and Class A-2 Directors shall be eliminated automatically and without further action and the remaining Class A-2 Directors shall be redesignated automatically and without further action as the "Class A Directors", and thereafter there shall be two or more Class A Directors; and

(2)      Two or more Class B Directors, who shall collectively be designated the "Class B Directors."

Subject to the minimum requirement that there be at least two Class A Directors, the Class A shareholders of PPI by majority vote of the Class A shares outstanding shall determine the number of Class A Directors and shall have the unilateral right to change the number of Class A Directors at any time and from time to time; provided, however, that the number of Class A Directors shall not exceed five.

Subject to the minimum requirement that there be at least two Class B Directors, the Class B shareholders of PPI by majority vote of the Class B shares outstanding shall determine the number of Class B Directors and shall have the unilateral right to change the number of Class B Directors at any time and from time to time; provided, however, that the number of Class B Directors shall not exceed five.

For purposes of this Agreement, the "incapacity" of an individual shall commence, and an individual shall be deemed to be "incapacitated" upon the receipt of the Executive Vice President, Counsel to the Board of PPI and PPLP of (A) a certificate signed by two qualified examining physicians (a "Physicians' Certificate") stating that such individual is unable to act prudently or effectively because of accident, physical or mental deterioration or

2

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION
TREAT SUBJECT TO PROTECTIVE ORDER

other similar cause, or (B) a copy of the order or decree of a court of competent jurisdiction declaring such individual to be incapacitated. Such incapacity shall be deemed to continue unless or until the Executive Vice President, Counsel to the Board of PPI and PPLP shall receive (A) in the case of any incapacity resulting from the receipt of a Physicians' Certificate, a certificate to the contrary signed by two qualified examining physicians, or (B) in the case of any judicially determined incapacity, a copy of the order or decree of any court of competent jurisdiction declaring such individual no longer to be incapacitated.

(ii)     Election of Directors. With respect to the Class A Directors, the Class A shareholders of PPI by majority vote of the Class A shares outstanding shall have the unilateral right, at any time and from time to time, to elect, remove or replace Class A Directors. With respect to Class B Directors, the Class B shareholders of PPI by majority vote of the Class B shares outstanding shall have the unilateral right, at any time and from time to time, to elect, remove or replace Class B Directors.

(iii)     Compensation. Each Class A Director and each Class B Director shall receive $100,000 as annual compensation for his services as a Class A Director or Class B Director, as the case may be, or such other amount as agreed from time to time by the Board of Directors of PPI; provided, however, if such Director receives other compensation (including, but not limited to, severance payments) in excess of $100,000 then such Director shall receive only such other compensation.

(iv)     Decisions. The Board of Directors of PPI will strive to achieve unanimity in its decisions. If, however, the Co-Chairmen of PPI agree or the Chairman, if there is a single Chairman, or any two Directors of PPI decides that further discussion of an issue will not create unanimity, then the Co-Chairmen acting jointly or the

3

PUBLICLY FILED PER STIPULATION [ECF 2140]

Chairman, if there is a single Chairman, or any two Directors of PPI can call for a vote of the Board of Directors of PPI regarding the issue.

(v)     Quorum; Voting.  With respect to any meeting of Directors of PPI the presence of not less than one-third of the entire Board of Directors of PPI shall be required to constitute a quorum for the transaction of any and all business of the Board of Directors of PPI; provided, however, such quorum must include:

(i)     The presence of (1) if the Class A-1 Director is then in office, (A) the Class A-1 Director and at least one Class A-2 Director or (B) a majority of the Class A-2 Directors, or (2) if the Class A-1 Director has either died, resigned or been removed, a majority of the Class A Directors (the "Class A Quorum Requirements"); and

(ii)     The presence of a majority of the Class B Directors; provided, however, that if two Class B Directors are then in office, two Class B Directors (the "Class B Quorum Requirements"); but in the event of a quorum not being present, a lesser number may adjourn the meeting to some future time.

All actions by the Board of Directors of PPI shall be approved by the vote of each class of Directors, as follows:  (a) a majority of the Class A Directors present at a meeting of the Board of Directors (the "Class A Voting Requirements"), and (b) a majority of the Class B Directors then in office; provided, however, that if two Class B Directors are then in office, two Class B Directors (the "Class B Voting Requirements").

Subject to the applicable provisions of the Business Corporation Law of the State of New York, (i) the Class A shareholders of PPI by majority vote of the Class A shares outstanding shall have the unilateral right to change the Class A Quorum Requirements and/or the Class A Voting Requirements at any time and from time to time,

4

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER

and (ii) the Class B shareholders of PPI by majority vote of the Class B shares outstanding shall have the unilateral right to change the Class B Quorum Requirements and/or the Class B Voting Requirements at any time and from time to time; and to the extent necessary the Class A shareholders of PPI, the Class B shareholders of PPI, the Class A Directors and the Class B Directors will consent to such changes in the Class A Quorum Requirements, the Class A Voting Requirements, the Class B Quorum Requirements or the Class B Voting Requirements, as the case may be, in order that any changes will be effective under the Business Corporation Law of the State of New York.

(vi)    <u>Committee of Advisors to the Board of Directors</u>.  A committee of advisors to the Board of Directors of PPI shall be established (the "Committee of Advisors"), to advise and assist the Board of Directors of PPI; <u>provided</u>, <u>however</u>, the Committee of Advisors shall have no authority within the corporate or partnership hierarchy of PPI and/or PPLP.  The Board of Directors of PPI shall determine the number of members and shall have the right to change the number of members of the Committee of Advisors at any time and from time to time (the "Committee Members").  Each Committee Member shall be elected by the Board of Directors of PPI for a term of three years or until the earlier of his death, incapacity, retirement, resignation or removal as a Committee Member.  The Board of Directors of PPI shall have the right, at any time and from time to time, to elect, remove or replace Committee Members.  The Committee Members shall be entitled to attend meetings of the Board of Directors of PPI, and PPI shall give to all Committee Members copies of all notices, minutes, consents and other materials that PPI provides to the Class A Directors and the Class B Directors at the time and in the manner that such information is provided by PPI to the Class A Directors and the Class B Directors.  A Committee Member shall receive such

5

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER    MSF00026643

compensation, if any, for his services as a Committee Member as may from time to time be determined by the Board of Directors of PPI.

        (vii)   <u>Meetings</u>.

        (A)   <u>Regular Meetings; Notice</u>.  Regular meetings of the Board of Directors of PPI shall be held at such time and at One Stamford Forum, Stamford, Connecticut or an office in New York, New York as the Board of Directors of PPI may from time to time prescribe, or at such other place as the Board of Directors of PPI may from time to time otherwise determine.  No notice need be given of any regular meeting.

        (B)   <u>Special Meetings; Notice</u>.  A special meeting of the Board of Directors of PPI may be called at any time by (i) fifty percent of the Class A shares outstanding or fifty percent of the Class B shares outstanding or (ii) a majority of the Class A Directors then in office, or a majority of the Class B Directors then in office.  Any such meeting shall be held at such time and at One Stamford Forum, Stamford, Connecticut or an office in New York, New York as shall be determined by the body or person calling such meeting, or at such place as the Board of Directors of PPI may otherwise determine.  Notice of such meeting, specifying the purposes thereof and stating the time and place thereof shall be given by delivery of the notice addressed to each Director at his address as it appears on PPI's records or at such address as the Director may have furnished the Executive Vice President, Counsel to the Board of PPI and PPLP for that purpose, by telecopy, computer, or by delivery of the notice by telephone or in person, in each case at least 48 hours before the time fixed for the meeting.

        (C)   <u>Agenda</u>.  Any Director may specify business items for consideration by the Board of Directors of PPI at any regular or special meeting of

6

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER          MSF00026644

the Board of Directors of PPI; provided, however, such business items must be delivered by the requesting Director to the Executive Vice President, Counsel to the Board of PPI and PPLP within a reasonable time before the day fixed for the meeting.

        (b)    <u>Class A Co-Chairman</u>.

        (i)    For purposes of this Agreement the term "Class A Co-Chairman" shall mean initially Mortimer D. Sackler, M.D. ("MDS") and thereafter each successor Class A Co-Chairman elected in accordance with Section 1(b)(iii).

        (ii)    MDS shall be elected the Class A Co-Chairman of PPI and PPLP, and shall serve as the Class A Co-Chairman for a term of three years commencing March 4, 2003 or until the earlier of his death, incapacity, retirement, resignation or removal as a Class A Director of PPI (the Class A Co-Chairman and the Class B Co-Chairman (as defined below) are sometimes collectively referred to herein as the "Co-Chairmen").

        (iii)    Upon MDS ceasing to act as Class A Co-Chairman for any reason as set forth in Section 1(b)(vii) below, the Class A Directors by majority vote shall have the power to nominate, elect, remove and replace subsequent Class A Co-Chairmen of PPI and PPLP, each for a three-year term; provided, however, that, prior to exercising the power to nominate, elect, remove or replace, the Class A Directors shall (A) promptly notify the Class B Directors in writing of, and shall consult with the Class B Directors regarding, each proposed nomination, and (B) obtain the prior written consent of the Class B Directors to any proposed nomination, which consent will not be unreasonably withheld.  If the Class B Directors do not consent to such nomination within thirty days of the date of receipt by the Class B Directors of notification of such nomination, the Class A Directors shall submit for resolution the issue of whether the consent of the Class B Directors was unreasonably

7

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER        MSF00026645

withheld to binding arbitration in accordance with the provisions of Section 3.  The Class A Directors shall be entitled, upon notice to and consultation with the Class B Directors as provided above, to renominate in the future as a Class A Co-Chairman, any nominee not previously consented to by the Class B Directors.

(iv)     If either the Class B Directors consent to the Class A Directors' nominee for Class A Co-Chairman within thirty days of the date of receipt of notification of such nomination, or the Class B Directors do not consent to the Class A Directors' nominee for Class A Co-Chairman but the arbitrator decides that the consent of the Class B Directors was unreasonably withheld, then the Class A Directors' nominee shall be elected the Class A Co-Chairman upon the consent of the Class B Directors or upon the date of the arbitrator's decision, as the case may be.  If the Class B Directors do not consent to the Class A Directors' nominee for Class A Co-Chairman and the arbitrator decides that the consent of the Class B Directors was reasonably withheld, then the Class A Directors shall again nominate a Class A Co-Chairman of PPI and PPLP pursuant to Section 1(b)(iii).

(v)     If for any reason a vacancy occurs in the office of the Class A Co-Chairman during any three-year term, the person elected to fill such vacancy in accordance with the provisions of this Section 1(b) shall serve as the Class A Co-Chairman only for the remainder of such three-year term (i.e., a new three-year term shall not commence upon the election of the person filling such vacancy).

(vi)     Subject to the provisions of this Section 1(b), the same person may be re-elected to an unlimited number of three-year terms as the Class A Co-Chairman of PPI and PPLP.

8

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER                MSF00026646

(vii)    In the event of the death, incapacity, retirement, resignation, removal or expiration of term of the then current Class A Co-Chairman, the Class A Directors may promptly notify the Class B Directors in writing of, and shall consult with the Class B Directors regarding a proposal to nominate and elect a single Chairman of PPI and PPLP to replace the Class A Co-Chairman and the Class B Co-Chairman in accordance with this Section 1(b)(vii). Within thirty days of the date of receipt of notification of a proposal by the Class A Directors to nominate and elect a single Chairman of PPI and PPLP to replace the Class A Co-Chairman and the Class B Co-Chairman, the Class B Directors shall either object to the proposal or agree in consultation with the Class A Directors to propose to nominate and elect a single Chairman of PPI and PPLP. If the Class B Directors do not respond within the applicable time period specified in the preceding sentence, or if a single Chairman of PPI and PPLP has not been nominated and elected within thirty days of receipt of notification of such a proposal from the Class A Directors, then the proposal to elect a single Chairman of PPI and PPLP shall be deemed to have been rejected.

(viii)    If at any time the Class B Directors believe that the Class A Co-Chairman should be removed from office on the grounds of either incapacity or for cause, the Class B Directors shall so notify the Class A Directors in writing specifying the grounds for removal and shall consult with the Class A Directors regarding such proposed removal. If after consultation with the Class A Directors, the Class B Directors continue to believe that the Class A Co-Chairman should be removed from office on the specified grounds, the Class B Directors shall submit the issue of the Class A Co-Chairman's removal to a binding decision of arbitration in accordance with the provisions of Section 3. The Class A Co-Chairman shall remain in office during the pendency of such proceedings.

9

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

(c)    Class B Co-Chairman.

(i)    For purposes of this Agreement the term "Class B Co-Chairman" shall mean initially Richard S. Sackler, M.D. ("RSS") and thereafter each successor Class B Co-Chairman elected in accordance with Section 1(c)(iii).

(ii)    RSS shall be elected the Class B Co-Chairman of PPI and PPLP, and shall serve as the Class B Co-Chairman for a term of three years commencing March 4, 2003 or until the earlier of his death, incapacity, retirement, resignation or removal as a Class B Director of PPI.

(iii)    Upon RSS ceasing to act as Class B Co-Chairman for any reason as set forth in Section 1(c)(vii) below, the Class B Directors by majority vote shall have the power to nominate, elect, remove and replace subsequent Class B Co-Chairmen of PPI and PPLP, each for a three-year term; provided, however, that, prior to exercising the power to nominate, elect, remove or replace, the Class B Directors shall (A) promptly notify the Class A Directors in writing of, and shall consult with the Class A Directors regarding, each proposed nomination, and (B) obtain the prior written consent of the Class A Directors to any proposed nomination, which consent will not be unreasonably withheld.  If the Class A Directors do not consent to such nomination within thirty days of the date of receipt by the Class A Directors of notification of such nomination, the Class B Directors shall submit for resolution the issue of whether the consent of the Class A Directors was unreasonably withheld to binding arbitration in accordance with the provisions of Section 3.  The Class B Directors shall be entitled, upon notice to and consultation with the Class A Directors as provided above, to renominate in the future as a Class B Co-Chairman, any nominee not previously consented to by the Class A Directors.

10

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

(iv)   If either the Class A Directors consent to the Class B Directors' nominee for Class B Co-Chairman within thirty days of the date of receipt of notification of such nomination, or the Class A Directors do not consent to the Class B Directors' nominee for Class B Co-Chairman but the arbitrator decides that the consent of the Class A Directors was unreasonably withheld, then the Class B Directors' nominee shall be elected the Class B Co-Chairman upon the consent of the Class A Directors or upon the date of the arbitrator's decision, as the case may be.  If the Class A Directors do not consent to the Class B Directors' nominee for Class B Co-Chairman and the arbitrator decides that the consent of the Class A Directors was reasonably withheld, then the Class B Directors shall again nominate a Class B Co-Chairman of PPI and PPLP pursuant to Section 1(c)(iii).

(v)   If for any reason a vacancy occurs in the office of the Class B Co-Chairman during any three-year term, the person elected to fill such vacancy in accordance with the provisions of this Section 1(c) shall serve as the Class B Co-Chairman only for the remainder of such three-year term (i.e., a new three-year term shall not commence upon the election of the person filling such vacancy).

(vi)   Subject to the provisions of this Section 1(c), the same person may be re-elected to an unlimited number of three-year terms as the Class B Co-Chairman of PPI and PPLP.

(vii)   In the event of the death, incapacity, retirement, resignation, removal or expiration of term of the then current Class B Co-Chairman, the Class B Directors may promptly notify the Class A Directors in writing of, and shall consult with the Class A Directors regarding a proposal to nominate and elect a single Chairman of PPI and PPLP to replace the Class A Co-Chairman and the Class B Co-Chairman in

11

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER

MSF00026649

accordance with this Section 1(c)(vii). Within thirty days of the date of receipt of notification of a proposal by the Class B Directors to nominate and elect a single Chairman of PPI and PPLP to replace the Class A Co-Chairman and the Class B Co-Chairman, the Class A Directors shall either object to the proposal or agree in consultation with the Class B Directors to propose to nominate and elect a single Chairman of PPI and PPLP. If the Class A Directors do not respond within the applicable time period specified in the preceding sentence, or if a single Chairman of PPI and PPLP has not been nominated and elected within thirty days of receipt of notification of such a proposal from the Class B Directors, then the proposal to elect a single Chairman of PPI and PPLP shall be deemed to have been rejected.

(viii)    If at any time the Class A Directors believe that the Class B Co-Chairman should be removed from office on the grounds of either incapacity or for cause, the Class A Directors shall so notify the Class B Directors in writing specifying the grounds for removal and shall consult with the Class B Directors regarding such proposed removal. If after consultation with the Class B Directors, the Class A Directors continue to believe that the Class B Co-Chairman should be removed from office on the specified grounds, the Class A Directors shall submit the issue of the Class B Co-Chairman's removal to a binding decision of arbitration in accordance with the provisions of Section 3. The Class B Co-Chairman shall remain in office during the pendency of such proceedings.

(d)    Co-Chairmen.  Subject to the provisions of Section 1(f) of this Agreement, the Co-Chairman of PPI and PPLP shall have no executive authority within the corporate or partnership hierarchy of PPI and/or PPLP, as the case may be; provided, however, each meeting of the Board of Directors of PPI shall be presided over by the Co-Chairmen or the Chairman, if there is a single Chairman. If (A) the Class A Co-Chairman is not present or

12

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER                MSF00026650

the office of Class A Co-Chairman is vacant, then a majority of the Class A Directors present shall choose a Class A Director to preside with the Class B Co-Chairman at such meeting of the Board of Directors of PPI, or (B) the Class B Co-Chairman is not present or the office of Class B Co-Chairman is vacant, then a majority of the Class B Directors present shall choose a Class B Director to preside with the Class A Co-Chairman at such meeting of the Board of Directors of PPI.

 (e) <u>Co-Chief Executive Officers</u>.  MDS and RRS shall resign effective the date hereof as Co-Chief Executive Officers of PPI and PPLP.

 (f) <u>President and Chief Executive Officer</u>.

 (A) <u>Appointment; Reporting</u>.  Upon execution of this Agreement, Michael Friedman shall be elected the President and Chief Executive Officer of PPI and PPLP (the "President and CEO"), until the earlier of his death, incapacity, retirement, resignation or removal.  The Board of Directors of PPI shall have the right to remove at any time, with or without cause, the President and CEO.

 All PPI and PPLP executives shall report to the President and CEO, except for matters related to the shareholders, Board of Directors of PPI or its Committees, where the Executive Vice President, Counsel to the Board of PPI and PPLP shall report as otherwise agreed.  The President and CEO shall report to the Board of Directors of PPI and the Co-Chairmen, jointly; <u>provided</u>, <u>however</u>, that upon either (i) MDS ceasing to act as Class A Co-Chairman for any reason as set forth in Section 1(b)(vii) above, or (ii) RSS ceasing to act as Class B Co-Chairman for any reason as set forth in Section 1(c)(vii) above, the President and CEO shall report only to the Board of Directors of PPI.

13

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER MSF00026651

(B)    <u>Co-Equal Authority</u>.  The Class A Co-Chairman and the Class B Co-Chairman shall have co-equal authority.  Neither the Class A Co-Chairman nor the Class B Co-Chairman shall be deemed superior to the other in the corporate or partnership hierarchy of PPI and/or PPLP.  If the Class A Co-Chairman and the Class B Co-Chairman do not agree on any issue, they shall submit such disputed issue to the Board of Directors of PPI.

(C)    <u>Direct Reporting to the Board of Directors</u>.  The Class A Directors by majority vote shall have the power, at any time and from time to time, to direct that the President and CEO shall report only to the Board of Directors of PPI, and the Class B Directors by majority vote shall have the power, at any time and from time to time, to direct that the President and CEO shall report only to the Board of Directors of PPI.  The Class A Directors or the Class B Directors, as the case may be, shall exercise such right to have the President and CEO report only to the Board of Directors of PPI by delivering written notice of such event to the Executive Vice President, Counsel to the Board of PPI and PPLP.

(D)    <u>Formal Reports</u>.  The President and CEO shall make a formal report on at least a quarterly basis regarding the business of PPLP to the Board of Directors of PPI, which formal report shall include the reports of the Executive Vice Presidents who report to the President and CEO; <u>provided</u>, <u>however</u>, that in addition, the President and CEO shall ensure that the Board of Directors of PPI receives all information necessary on a current basis in order to enable the Board of Directors of PPI to be informed of all major events and matters that alone or in the aggregate would have a material effect on the business, assets, operations or condition, financial or otherwise, or prospects of PPLP.  The Class A Directors by unanimous vote of the Class A Directors present or the Class B Directors by unanimous vote of the Class B Directors present, voting at a meeting of the Board of

14

NY2 - 334696.10

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER

MSF00026652

Directors, may request of the President and CEO to request the attendance and formal report by any Executive Vice President of PPI and PPLP at a meeting of the Board of Directors of PPI.

    (E) <u>Attendance of the President and CEO</u>.  The President and CEO shall attend, if available, all meetings of the Board of Directors of PPI unless excused by the Board of Directors of PPI.

    (F) <u>Authority</u>.  The President and CEO shall exercise the powers and perform the duties incident to his office subject to the limitations set forth in Schedule 1 attached hereto, as varied from time to time by the Board of Directors of PPI.

    (g) <u>Other Offices</u>.  The following persons shall be elected to the following offices of PPI and PPLP, until otherwise determined by the Board of Directors of PPI:

| <u>Name</u> | <u>Title</u> |
| --- | --- |
| Edward W. Albright | Executive Vice President, Manufacturing |
| Stuart D. Baker | Executive Vice President, Counsel to the Board |
| Paul D. Goldenheim | Executive Vice President, Worldwide Research & Development |
| Edward B. Mahony | Executive Vice President, Chief Financial Officer |
| Howard R. Udell | Executive Vice President, General Counsel |

  2. <u>Restriction on Transfer; Distributions</u>.

    (a) <u>Restrictions on Transfer</u>.

      (i) <u>Class A Restrictions</u>.  During the term of this Agreement, the Class A shares of PPI, the Class A shares of PLP Associates Holdings Inc., a New York corporation ("Holdings Inc.") and the interest in PLP Associates Holdings L.P., a Delaware limited partnership ("Holdings") held by Beacon Company, a Delaware general

15

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER    MSF00026653

partnership ("Beacon Company"), shall not be, directly or indirectly, sold, offered for sale, disposed of or otherwise transferred, other than to a Family Entity (as defined by the Sixth Memorandum Regarding Distribution Agreement - Permitted Transferees of Equity Interests in II Way Companies dated as of April 29, 1994; such definition shall survive the expiration or termination of that certain Distribution Agreement dated October 24, 1991, as amended and supplemented by the First through Fourth Memorandum Regarding Distribution Agreement dated as of April 15, 1993 and the Sixth through Seventh Memorandum Regarding Distribution Agreement dated as of April 29, 1994, and that certain Distribution Agreement II Extended dated as of January 1, 1998 (the "Distribution Agreement, as amended")) (the "Class A Restrictions").

(ii)    Class B Restrictions.  During the term of this Agreement, the Class B shares of PPI, the Class B shares of Holdings Inc. and the interest in Holdings held by Rosebay Medical Company L.P., a Delaware limited partnership ("Rosebay"), shall not be, directly or indirectly, sold, offered for sale, disposed of or otherwise transferred, other than to a Family Entity (the "Class B Restrictions").

(b)    Distributions.  Commencing for the calendar year ending December 31, 2003, after those amounts distributed in accordance with Section 2A of that certain Distribution Agreement II Extended dated as of January 1, 1998, PPLP shall distribute annually the free cash flow of PPLP, less $10 million, x 60% ("Distributions") to Holdings, and Holdings shall distribute immediately upon its receipt thereof the Distributions to its limited partners.  Whenever used in this Agreement, "free cash flow" shall mean net income as determined in accordance with U.S. generally accepted accounting principles consistently applied after deduction for those amounts distributed in accordance with Section 2A of that

16

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER                MSF00026654

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION TREAT SUBJECT TO PROTECTIVE ORDER

certain Distribution Agreement II Extended dated as of January 1, 1998, less capital expenditures, plus depreciation, plus amortization and plus or minus changes in working capital.  Distributions will be distributed at least quarterly in arrears on the last day of each March, June, September and December.

Beacon Company, and its permitted successors and assigns (the "Class A Limited Partner"), and Rosebay, and its permitted successors and assigns (the "Class B Limited Partner"), shall have the unilateral right, at any time and from time to time, to suspend the distribution of the Distributions; provided, however, that regardless of any such notice to suspend the Distributions, PPLP shall continue during the term of this Agreement to distribute the amounts to be distributed in accordance with Section 2A of that certain Distribution Agreement II Extended dated as of January 1, 1998 to Holdings, and Holdings shall distribute immediately upon its receipt thereof such amounts to the Class A Limited Partner and the Class B Limited Partner.  The Class A Limited Partner or the Class B Limited Partner, as the case may be, shall exercise such right to suspend Distributions by delivering written notice of such event to the Executive Vice President, Counsel to the Board of PPI and PPLP (each, a "Suspension Notice").

Effective upon the receipt by the Executive Vice President, Counsel to the Board of a Suspension Notice, such suspension of Distributions shall continue unless and until the Executive Vice President, Counsel to the Board shall receive (i) from the Class A Limited Partner where the Class A Limited Partner delivered the Suspension Notice, or (ii) from the Class B Limited Partner where the Class B Limited Partner delivered the Suspension Notice, written notice that such Suspension Notice is of no further force or effect (each, a "Re-Instatement Notice").

17

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

Effective upon the receipt by the Executive Vice President, Counsel to the Board of a Suspension Notice and until delivery of a Re-Instatement Notice, (i) the Class A Restrictions and the Class B Restrictions shall be suspended, and (ii) the provisions of the Distribution Agreement, as amended, that relate to restrictions on transfer and distributions shall apply to PPLP without prejudice, as well as the provisions that relate to restrictions on transfer and distributions of that certain Amended and Restated Purdue Pharma L.P. Limited Partnership Agreement dated as of January 2, 1997 without prejudice.

3.    Arbitration Procedures.  The following procedures shall govern each arbitration proceeding provided for under this Agreement:

(a)    The Class A Directors or the Class B Directors, as the case may be, submitting to arbitration an issue required to be submitted to arbitration hereunder, shall so inform the other Class of Directors in writing and shall request the President of the American Arbitration Association immediately to appoint a single arbitrator in accordance with the rules of the American Arbitration Association.

(b)    The seat of the arbitral tribunal shall be in New York, New York.

(c)    The arbitration shall be governed by the rules of the American Arbitration Association.

(d)    The Class A Directors and the Class B Directors shall each as a group be entitled to submit to the arbitrator written evidence supporting their respective positions.  The nominee for Class A Co-Chairman or the nominee for Class B Co-Chairman, as the case may be, shall be entitled to personally appear before the arbitrator to present evidence supporting his or her appointment, and the Class A Directors by majority vote and the Class B Directors by majority vote shall each be entitled to select one person (who need

18

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER

MSF00026656

not be a Class A Director or Class B Director) to personally appear before the arbitrator to present evidence supporting their respective positions.

(e)    The arbitrator shall render his decision within twenty days of his appointment as arbitrator.

(f)    Any decision rendered by the arbitrator shall be final and binding, without appeal.  The arbitrator will have the discretion to impose the cost of the arbitration upon the losing party or divide it between the parties on any terms which he deems equitable; each party, though will bear its own legal fees.

(g)    Any decision rendered by the arbitrator may be enforced in any court of competent jurisdiction.

4.    <u>Termination</u>.  This Agreement shall commence on the date hereof and shall continue until terminated upon the written consent of the parties to this Agreement.

5.    <u>Miscellaneous</u>.

(a)    This Agreement contains the entire understanding of the parties to this Agreement with respect to the subject matter hereof, and it supercedes and replaces in its entirety the Existing Agreement.

(b)    The parties agree to, and the PPI Shareholders shall take all requisite actions including granting all consents and approvals necessary and instructing or causing the Board of Directors of PPI to make such changes in the corporate charter and by-laws of PPI and to adopt resolutions and prepare such similar documents and take all such actions as are necessary to carry out the intent of this Agreement and Section 2(b); <u>provided</u>, <u>however</u>, that in the event of any conflict or inconsistency between the terms or provisions of this Agreement and the terms and provisions of any changes implemented in the corporate

19

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

charter or by-laws of PPI in order to carry out the intent of this Agreement, or any adopted resolutions or other similar documents prepared in order to carry out the intent of this Agreement, the terms or provisions of this Agreement shall govern.

(c)    This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors and permitted assigns in interest.  This Agreement may not be assigned by any party without the prior written consent of the other parties, except that any party may assign this Agreement to its respective Family Entity without the consent of the other parties.

(d)    This Agreement may be amended, modified, supplemented or waived only by written agreement of the parties hereto.

(e)    This Agreement is governed by the laws of the State of New York without regard to principles of conflicts of law.

(f)    The provisions of this Agreement are solely for the benefit of the parties hereto and (i) MDS, Theresa E. Sackler and the descendants of MDS and (ii) RRS, Beverly Sackler and the descendants of RRS, and are not intended to, and shall not be construed to, confer a right or benefit on any other person or entity.

(g)    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable, this Agreement shall be construed and enforced as if

20

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

MSF00026658

such illegal, invalid or unenforceable provisions had never comprised a part of this Agreement and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provisions or by their severance from this Agreement.  Furthermore, in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK;

SIGNATURE PAGE FOLLOWS]

21

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written and agree to the extent they have power to do so to cause all other respective necessary parties over which the parties hereto have control to agree to the foregoing.

BANELA CORPORATION

By _____
Title:  Director

_____
Leslie J. Schreyer,
as Trustee under Trust Agreement
dated December 23, 1989 FBO the
issue of Richard S. Sackler, M.D.

_____
Leslie J. Schreyer,
as Trustee under Trust Agreement
dated December 23, 1989 FBO the
issue of Jonathan D. Sackler

CONSENTED AND AGREED TO THIS
4th DAY OF MARCH, 2003:

PLP ASSOCIATES HOLDINGS L.P.,
    by its general partner,
    PLP Associates Holdings Inc.

By _____
    Mortimer D. Sackler, M.D.
    Chairman

By _____
    Raymond R. Sackler, M.D.
    President

MILBORNE TRUST COMPANY LIMITED,
as Trustee of the Hercules
Trust

by _____
    Director

22

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER

MSF00026660

SHAREHOLDERS OF PLP ASSOCIATES HOLDINGS INC.:

BANELA CORPORATION

By_____
    Title:  Director

_____
Leslie J. Schreyer, as Trustee under
Trust Agreement dated December 23, 1989
FBO the issue of Richard S. Sackler, M.D.

_____
Leslie J. Schreyer, as Trustee under
Trust Agreement dated December 23, 1989
FBO the issue of Jonathan D. Sackler

LIMITED PARTNERS OF PLP ASSOCIATES HOLDINGS L.P.:

BEACON COMPANY,
    by a general partner, Beacon Trust Company Ltd.,
    as Trustee under Trust Agreement dated
    December 31, 1993

By_____
    Title:  Director

ROSEBAY MEDICAL COMPANY L.P.,
    by its general partner, Rosebay Medical Company, Inc.

By_____
    Title:  President

23

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER          MSF00026661

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION - TREAT SUBJECT TO PROTECTIVE ORDER

SCHEDULE 1

## MATTERS RESERVED TO THE BOARD OF DIRECTORS

All substantive matters not in the day-to-day ordinary course of business will be decided by the Board of Directors and shall include, but not be limited to, the following:

1.    Approval of budgets:

    (i)    Annual budgets and research budgets;

    (ii)    Material changes of approved budgets; and

    (iii)    Three to five-year projected operating budgets and strategic business plans.

2.    Introduction of new products.

3.    Approval of significant book pricing changes.

4.    Product and other intellectual or ancillary property right acquisitions costing more than 1% of gross margin of the company making the acquisition.

5.    Product and other intellectual or ancillary property right dispositions.

6.    Asset acquisitions and dispositions involving more than 1/2% of gross margin of the company so acting.

7.    Election of officers, engagement or termination of senior officers, and decisions regarding the bonus and compensation of senior officers (including corporate officers, e.g., Secretary and Treasurer), and the bonus and compensation policies applicable to employees.  For purposes hereof, "senior officers" shall mean corporate officers and those officers at the Vice President level and higher.

8.    Employment agreements for an aggregate term of more than one year and involving compensation of $350,000 or more annually.

9.    Joint ventures, negotiations and other arrangements that involve sharing revenues or profits with third parties or deploying significant manpower resources.

1

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

MSF00026662

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION. TREAT SUBJECT TO PROTECTIVE ORDER

10.    Matters involving the limited partnership interests, the shares or other security instruments of a company.

11.    Creation of any lien or encumbrance over any property of a company in excess of $1,000,000.

12.    Refinancing or restructuring of debt, including expansion of the aggregate debt with banks or other financial institutions by more than $1,000,000 per year.

13.    Incurring contractual liabilities not in the ordinary course of business and exceeding approved budget by more than 3% in any one year or by 10% on any one project or item.

14.    Guarantees or indemnities to secure the liabilities of any person.

15.    Decisions as to the site or change of site of the principal office, principal headquarters or other principal facilities.

16.    Decisions to engage new consultants in excess of $350,000 in any one year or on any one project or item.

17.    Decisions regarding the commencement or termination, by settlement or otherwise, and decisions regarding the conduct, prosecution or defense of threatened, pending or completed actions, suits or proceedings relating to a company's products, and other material matters, whether civil, criminal, administrative or investigative, other than those decisions made in the ordinary course of the company's business.

18.    All changes in pension, retirement, health or insurance programs and plans for employees.

19.    All matters of philanthropy that deviate in magnitude from past practice with a specific organization or are in excess of budget.

NY2 - 334696.10

PUBLICLY FILED PER STIPULATION [ECF 2140]

OUTSIDE PROFESSIONALS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER

MSF00026663

# EXHIBIT 107

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION.
TREAT SUBJECT TO PROTECTIVE ORDER

# PURDUE PHARMA INC.

---

### Minutes of a Meeting of
### the Board of Directors

---

### March 4, 2003

A meeting of the Board of Directors of Purdue Pharma Inc., a New York corporation (the "Corporation"), and the general partner of Purdue Pharma L.P., a Delaware limited partnership (the "Partnership"), was held on March 4, 2003 in New York City (the "Meeting").  A quorum of the Board of Directors was present and at the request of those Directors present, Stuart D. Baker acted as Secretary of the Meeting.

The first order of business was a discussion of the proposed amendment and restatement of the Certificate of Incorporation of the Corporation and the amendment of the By-Laws of the Corporation.  After discussion, and on motion duly made and seconded, it was decided by a majority of the Class A Directors of the Corporation present with one Class A Director abstaining and by all of the Class B Directors of the Corporation as follows:

RESOLVED, that it is in the best interests of the Corporation to amend and restate its Certificate of Incorporation as set forth in Article SIXTH of the Certificate of Amendment and Restatement of the Certificate of Incorporation of the Corporation in the form attached hereto as Schedule 1 (the "Certificate of Amendment and Restatement"), and that in accordance therewith, the proposed amended and restated Certificate of Incorporation of the Corporation, as set forth in Article SIXTH of the Certificate of Amendment and Restatement be submitted to the shareholders of the Corporation for their consideration at a special meeting of the shareholders to be held immediately following the conclusion of the Meeting; and further

RESOLVED, that contingent upon receiving approval from the shareholders of the Corporation to amend and restate the Certificate of Incorporation of the Corporation, that the proper officers of the Corporation be and each of them hereby is authorized and directed to execute and file the Certificate of Amendment and Restatement, with such changes, additions

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647319
PPLPUCC500647319

and modifications thereto, as the officers so acting shall approve, such approval to be conclusively evidenced by the execution and delivery thereof; and further

RESOLVED, that contingent upon receiving approval from the shareholders of the Corporation, the proposed amendments to the By-Laws of the Corporation in the form attached hereto as Schedule 2, be and the same hereby are adopted and approved as amendments to the By-Laws of the Corporation, and that in accordance therewith, the proposed amendments to the By-Laws of the Corporation in the form attached hereto as Schedule 2 be submitted to the shareholders of the Corporation for their consideration at a special meeting of the shareholders to be held immediately following the conclusion of the Meeting.

The next order of business was a discussion of the election of officers of the Corporation and the Partnership and an announcement of the reorganization of the Partnership. After discussion, and in each instance contingent upon receiving approval from the shareholders of the Corporation (i) to amend and restate the Certificate of Incorporation of the Corporation, as set forth in article SIXTH of the Certificate of Amendment and Restatement, and (ii) of the proposed amendments to the By-Laws of the Corporation in the form attached hereto as Schedule 2, and on motion duly made and seconded, it was decided by a majority of the Class A Directors of the Corporation present with one Class A Director abstaining and by all of the Class B Directors of the Corporation as follows:

RESOLVED, that Mortimer D. Sackler, M.D. be and he hereby is elected the Class A Co-Chairman of the Corporation and the Partnership, to serve as the Class A Co-Chairman for a term of three years commencing March 4, 2003 or until the earlier of his death, incapacity, retirement, resignation or removal as a Class A Director of the Corporation; and further

RESOLVED, that Richard S. Sackler, M.D. be and he hereby is elected the Class B Co-Chairman of the Corporation and the Partnership, to serve as the Class B Co-Chairman for a term of three years commencing March 4, 2003 or until the earlier of his death, incapacity, retirement, resignation or removal as a Class B Director of the Corporation; and further

RESOLVED, the following persons be and they hereby are elected to the offices of the Corporation and the Partnership set forth opposite their respective names, to hold office until their respective successors are elected and qualified:

2

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647320

PPLPUCC500647319

| Name | Title |
|---|---|
| Michael Friedman | President and Chief Executive Officer |
| Edward W. Albright | Executive Vice President, Manufacturing |
| Stuart D. Baker | Executive Vice President, Counsel to the Board |
| Paul D. Goldenheim | Executive Vice President, Worldwide Research & Development |
| Edward B. Mahony | Executive Vice President, Chief Financial Officer |
| Howard R. Udell | Executive Vice President, General Counsel |

; and further

RESOLVED, that Howard R. Udell ("HRU"), will report to the President and Chief Executive Officer and will be responsible for managing all aspects of the Partnership's legal affairs and matters pertaining to the crisis associated with media reports of abuse and diversion of OxyContin™ tablets.  HRU will have responsibility for appointing law firms to work for the Partnership and managing their activities.  Reporting to HRU will be: Public Affairs, Federal Government Affairs, State Government Affairs, all litigation attorneys, Intellectual Property Law, FDA and DEA Law, DEA Compliance and Health Policy.  HRU will also report to Mortimer D. Sackler, M.D. and Raymond R. Sackler, M.D. and the Board of Directors of the Corporation in regard to litigation, and only to Mortimer D. Sackler, M.D., Raymond R. Sackler, M.D. and the Board of Directors of the Corporation in regard to international matters; and further

RESOLVED, that effective as of April 4, 2003, HRU's title will change to Executive Vice President, Chief Legal Officer of the Corporation and the Partnership; and further

RESOLVED, that routine corporate legal matters will be assigned to a new General Counsel reporting to HRU; and further

RESOLVED, that the Corporation for itself and on behalf of the Partnership be and it hereby is authorized and directed to hire a new executive responsible for DEA Compliance reporting to the Executive Vice President, General Counsel; and further

RESOLVED, that Stuart D. Baker ("SDB"), as the Executive Vice President, Counsel to the Board will report to the President and Chief Executive Officer in regard to matters for the Corporation and the Partnership except for matters related to the shareholders, the Board of Directors of the Corporation or its committees.  Tax planning and legal-finance matters will continue to be the responsibility of SDB; and further

3

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

PUBLICLY FILED PER STIPULATION [ECF 2140]

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION TREAT SUBJECT TO PROTECTIVE ORDER

RESOLVED, that Theresa Muchnick, as the Vice President, Quality Assurance of the Corporation and the Partnership, be and she hereby is authorized and directed to report to the President and Chief Executive Officer; and further

RESOLVED, that the Corporation for itself and on behalf of the Partnership be and it hereby is authorized and directed to create a new position of Chief Compliance Officer reporting to the President and Chief Executive Officer of the Corporation and the Partnership. The President and Chief Executive Officer is hereby directed to find senior level executive candidates to be considered by the Board of Directors of the Corporation as soon as possible for this position of Chief Compliance Officer of the Corporation and the Partnership; and further

RESOLVED, that although no public announcement of the reorganization of the Partnership shall be made, the Corporation and the Partnership be and they hereby are authorized and directed to release on March 6, 2003 to employees the announcement in the form attached hereto as Schedule 3.

There being no further business to come before the Meeting, the same was, upon motion, adjourned.

_____
Stuart D. Baker

NY2 - 358817.01

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647322

PPLPUCC500647319

## RESTATED CERTIFICATE OF INCORPORATION
## OF PURDUE PHARMA INC.

---

### Under Section 807 of the
### Business Corporation Law

---

Purdue Pharma Inc., a corporation organized and existing under the Business Corporation Law of the State of New York (the "Corporation"), hereby certifies as follows:

FIRST:  The name of the Corporation is Purdue Pharma Inc.

SECOND:  The Certificate of Incorporation of the Corporation was filed with the New York Department of State on October 2, 1990.

THIRD:  The Certificate of Incorporation of the Corporation is hereby amended or changed to effect one or more amendments or changes authorized by the Business Corporation Law of the State of New York, namely, to add provisions authorized by the Business Corporation Law of the State of New York regarding the classification of the Board of Directors of the Corporation and the amendment of certain quorum and voting requirements with respect to actions by the Directors of the Corporation.

FOURTH:  To accomplish the foregoing amendment, Article THIRD of the Certificate of Incorporation of the Corporation is amended to read as set forth in the same numbered article THIRD of the Certificate of Incorporation of the Corporation as hereinafter restated.

FIFTH:  The restatement of the Certificate of Incorporation of the Corporation herein provided for was authorized by resolutions setting forth the proposed restatement of the Certificate of Incorporation of the Corporation duly adopted at a meeting of the Board of

NY2 - 358817.01

Directors of the Corporation held on March 4, 2003.  Thereafter, pursuant to the By-Laws of the Corporation, a special meeting of the shareholders of the Corporation was duly held on March 4, 2003, at which meeting all the outstanding shares entitled to vote thereon were voted in favor of said restatement of the Certificate of Incorporation of the Corporation.

SIXTH:  The text of the Certificate of Incorporation of the Corporation is hereby restated as further amended or changed herein to read as follows:

"CERTIFICATE OF INCORPORATION

OF

PURDUE PHARMA INC.

---

Under Section 402 of the Business Corporation Law

---

Purdue Pharma Inc., a corporation formed under Section 402 of the Business Corporation Law of the State of New York, hereby certifies:

FIRST:  The name of the Corporation is Purdue Pharma Inc.

SECOND:  The purposes for which it is formed are:

(a)    To constitute the general partner of a partnership or partnerships organized to engage in any purpose identified in (b) through (k) below;

(b)    To undertake, engage in or foster chemical, pharmacologic and clinical research on medicinal and potential medicinal preparations;

(c)    To undertake, engage in or foster investigations of the literature pertaining to chemical, pharmacologic and clinical research on medicinal preparations; to

2

NY2 - 358817.01

compile the same and the preparation of promotional and related materials and services concerning chemicals, biologicals, pharmaceuticals and other related agents;

(d)     To undertake, engage in or foster studies relevant to these matters pursuant to the preparation of reports of a critical or advisory capacity relating to chemicals, biologicals and pharmaceuticals and as well as the operations and organizations dealing with these;

(e)     To encourage the development and to develop patents on chemicals, biologicals, pharmaceuticals and other related agents as well as the exploitation of these;

(f)     To manufacture, compound, refine, distill, treat, prepare, analyze, synthesize, produce, buy, sell, import, export, and in every way deal in chemicals, drugs, medicines, pharmaceutical supplies, materials and products; dye-stuffs, paints, colors, oils, varnishes and their ingredients; to do all things incidental or customarily appertaining to the chemical, drug and pharmaceutical business and trade, as manufacturer, wholesaler and retailer;

(g)     To conduct generally the business of analytical and consulting chemists, to make analysis, inspections, formulae, and to conduct research work.  To maintain and conduct a laboratory or laboratories for chemical research and physiological research work.  To acquire all real property and equipment necessary to conduct the business;

(h)     To buy, sell, exchange, hire, lease and otherwise acquire or dispose of property real or personal for the purpose of the business and to enter into any and all manners and kinds of contracts with respect thereto;

(i)     To purchase or otherwise acquire, undertake, carry on, improve or develop all or any of the business, good will, rights and assets of, and in connection therewith to

3

NY2 - 358817.01

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647325

PPLPUCC500647319

assume the liabilities of any person, firm, association or corporation, carrying on any kind of business of the same or a similar nature to that which this corporation is authorized to carry on;

(j)    To borrow money for its corporate purposes and to make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures or other obligations from time to time, and if deemed proper, to secure the payment of any obligation by mortgage, pledge, deed of trust or otherwise; and

(k)    To engage in any lawful act or activity for which corporations may be organized under the Business Corporation Law of the State of New York.  The Corporation is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body, without such consent or approval being obtained.

THIRD:  The total number of shares that may be issued by the Corporation is 1,000 shares, and the par value of each such share shall be one dollar; such shares are to be divided into two classes of 500 shares each.

The two classes of shares shall be designated respectively Class A Shares and Class B Shares.  Each such class of shares outstanding shall vote separately as a class in connection with the election of Directors.  A majority of the Class A Shares outstanding shall elect one Class A-1 Director and one or more Class A-2 Directors who shall collectively be designated the "Class A Directors," except that upon the death, resignation or incapacity of the Class A-1 Director, the designations of Class A-1 Director and Class A-2 Directors shall be eliminated automatically and without further action, and the remaining Class A-2 Directors shall be redesignated automatically and without further action as the "Class A Directors," and thereafter there shall be two or more Class A Directors; provided, however, that the number of

4

NY2 - 358817.01

PPLPUCC500647326
PPLPUCC500647319

Class A Directors shall not exceed five.  A majority of the Class B Shares outstanding shall elect two or more Directors who shall collectively be designated the "Class B Directors"; provided, however, that the number of Class B Directors shall not exceed five.

With respect to shareholder voting in matters other than the election of Directors, (i) the presence, in person or by proxy, of the holders of a majority of each class of shares then outstanding and entitled to vote shall be required to constitute a quorum for the transaction of business by the shareholders of the Corporation, but in the event that a quorum is not present, a lesser number may adjourn the meeting to some future time, and (ii) all actions by the shareholders of the Corporation shall be approved by the vote of a majority of each class of shares then outstanding and entitled to vote.

With respect to any meeting of the Board of Directors of the Corporation the presence of not less than one-third of the entire Board of Directors of the Corporation shall be required to constitute a quorum for the transaction of any and all business of the Board of Directors of the Corporation; provided, however, such quorum must include:

(i)    The presence of (1) if the Class A-1 Director is then in office, (A) the Class A-1 Director and at least one Class A-2 Director or (B) a majority of the Class A-2 Directors, or (2) if the Class A-1 Director has either died, resigned or been removed, a majority of the Class A Directors; and

(ii)    The presence of a majority of the Class B Directors; provided, however, that if two Class B Directors are then in office, two Class B Directors; but in the event of a quorum not being present, a lesser number may adjourn the meeting to some future time.

5

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647327
PPLPUCC500647319

All actions by the Board of Directors of the Corporation shall be approved by the vote of each class of Directors voting separately, as follows:

(i)  A majority of the Class A Directors present at a meeting of the Board of Directors of the Corporation, and

(ii)  A majority of the Class B Directors then in office; provided, however, that if two Class B Directors are then in office, two Class B Directors.

FOURTH:  The office of the Corporation is to be located in the County of New York, State of New York.

FIFTH:  The Secretary of State is designated as the agent of the Corporation upon whom process against the Corporation may be served.  The address to which the Secretary of State shall mail a copy of process against the Corporation which may be served upon him is c/o Chadbourne & Parke LLP, 30 Rockefeller Plaza, New York, New York 10112.

SIXTH:  The name and address of the registered agent of the Corporation are Corporation Service Company, 80 State Street, 6th Floor, Albany, New York 12207-2543 and the registered agent is to be the agent of the Corporation upon whom process against it may be served."

IN WITNESS WHEREOF, the Corporation has caused this Restatement of the Certificate of Incorporation of the Corporation to be subscribed by its Executive Vice President, Counsel to the Board and affirmed by him as true under the penalties of perjury this          day of April, 2003.

_____

Stuart D. Baker
Executive Vice President,
Counsel to the Board

6

NY2 - 358817.01

# PURDUE PHARMA INC.

---

### Amendments to By-Laws

---

1.      Section 11 of Article II of the By-Laws of the Corporation is amended in its entirety to read as follows:

"SECTION 11.  <u>COMMITTEE OF ADVISORS TO THE BOARD OF DIRECTORS</u>.  A committee of advisors to the Board of Directors shall be established (the "Committee of Advisors"), to advise and assist the Board of Directors; <u>provided</u>, <u>however</u>, the Committee of Advisors shall have no authority within the corporate hierarchy of the Corporation or the partnership hierarchy of Purdue Pharma L.P., a Delaware limited partnership of which the Corporation is the general partner (the "Partnership").  The Board of Directors shall determine the number of members and shall have the right to change the number of members of the Committee of Advisors at any time and from time to time (the "Committee Members").  Each Committee Member shall be elected by the Board of Directors for a term of three years or until the earlier of his death, incapacity, retirement, resignation or removal as a Committee Member.  The Board of Directors shall have the right, at any time and from time to time, to elect, remove or replace Committee Members.  The Committee Members shall be entitled to attend meetings of the Board of Directors, and the Corporation shall give to all Committee Members a copy of all notices, minutes, consents and other materials that the Corporation provides to the Class A Directors and the Class B Directors at the time and in the manner that such information is provided by the Corporation to the Class A Directors and the Class B

NY2 - 358817.01

PUBLICLY FILED PER STIPULATION [ECF 2140]

Directors. A Committee Member shall receive such compensation, if any, for his services as a Committee Member as may from time to time be determined by the Board of Directors."

2.        Article III of the By-Laws of the Corporation regarding officers of the Corporation is hereby amended in its entirety to read as follows:

"ARTICLE III

OFFICERS

SECTION 1.    <u>OFFICERS</u>.  The officers of this Corporation and the Partnership shall be a Class A Co-Chairman, a Class B Co-Chairman, a President and Chief Executive Officer (the "President and CEO"), Senior Vice Presidents, Executive Vice Presidents, Vice Presidents, a Treasurer and a Secretary.  Any two or more offices may be held by the same person.

SECTION 2.    <u>ELECTION OF OFFICERS OTHER THAN CLASS A CO-CHAIRMAN AND CLASS B CO-CHAIRMAN</u>.  All officers of the Corporation and the Partnership, other than the Class A Co-Chairman and the Class B Co-Chairman shall be elected annually at the same time by the Board of Directors at its meeting held immediately after the annual meeting of shareholders, and shall hold office for a term of one year or until their successors are duly elected and qualified.

SECTION 3.    <u>ELECTION OF CLASS A CO-CHAIRMAN</u>.  The following provisions of this Article III, Section 3, shall remain in effect until termination of that certain Shareholders' Agreement regarding the Corporation effective as of March 4, 2003 by and among Banela Corporation, a British Virgin Islands company, Leslie J. Schreyer, as Trustee under Trust Agreement dated December 23, 1989 f/b/o the issue of Richard S. Sackler, M.D., and Leslie J. Schreyer, as Trustee under Trust Agreement dated December 23, 1989 f/b/o the issue

2

NY2 - 358817.01

of Jonathan D. Sackler (the "Shareholders' Agreement"), and thereafter shall terminate and have no further force and effect, and the references to the Class A Co-Chairman shall be deleted from Article III, Sections 6 and 7:

(i)    For purposes hereof the term "Class A Co-Chairman" shall mean initially Mortimer D. Sackler, M.D. ("MDS") and thereafter each successor Class A Co-Chairman elected in accordance with Article III, Section 3(iii).

(ii)    MDS shall serve as the Class A Co-Chairman for a term of three years commencing March 4, 2003 or until the earlier of his death, incapacity, retirement, resignation or removal as a Class A Director (the Class A Co-Chairman and the Class B Co-Chairman (as defined below) are sometimes collectively referred to herein as the "Co-Chairmen").

(iii)    Upon MDS ceasing to act as Class A Co-Chairman for any reason as set forth in Article III, Section 3(vii) below, the Class A Directors by majority vote shall have the power to nominate, elect, remove and replace subsequent Class A Co-Chairmen, each for a three-year term; provided, however, that, prior to exercising the power to nominate, elect, remove or replace, the Class A Directors shall (A) promptly notify the Class B Directors in writing of, and shall consult with the Class B Directors regarding, each proposed nomination, and (B) obtain the prior written consent of the Class B Directors to any proposed nomination, which consent will not be unreasonably withheld.  If the Class B Directors do not consent to such nomination within thirty days of the date of receipt by the Class B Directors of notification of such nomination, the Class A Directors shall submit for resolution the issue of whether the consent of the Class B Directors was unreasonably withheld to binding arbitration in accordance with the provisions of Article VIII, Section 4 of the By-Laws of the Corporation.  The Class A

3

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647331
PPLPUCC500647319

Directors shall be entitled, upon notice to and consultation with the Class B Directors as provided above, to renominate in the future as a Class A Co-Chairman, any nominee not previously consented to by the Class B Directors.

(iv)    If either the Class B Directors consent to the Class A Directors' nominee for Class A Co-Chairman within thirty days of the date of receipt of notification of such nomination, or the Class B Directors do not consent to the Class A Directors' nominee for Class A Co-Chairman but the arbitrator decides that the consent of the Class B Directors was unreasonably withheld, then the Class A Directors' nominee shall be elected the Class A Co-Chairman upon the consent of the Class B Directors or upon the date of the arbitrator's decision, as the case may be.  If the Class B Directors do not consent to the Class A Directors' nominee for Class A Co-Chairman and the arbitrator decides that the consent of the Class B Directors was reasonably withheld, then the Class A Directors shall again nominate a Class A Co-Chairman pursuant to Article III, Section 3(iii).

(v)    If for any reason a vacancy occurs in the office of the Class A Co-Chairman during any three-year term, the person elected to fill such vacancy in accordance with the provisions of this Article III, Section 3 shall serve as the Class A Co-Chairman only for the remainder of such three-year term (i.e., a new three-year term shall not commence upon the election of the person filling such vacancy).

(vi)    Subject to the provisions of this Article III, Section 3, the same person may be re-elected to an unlimited number of three-year terms as the Class A Co-Chairman.

(vii)    In the event of the death, incapacity, retirement, resignation, removal or expiration of term of the then current Class A Co-Chairman, the Class A

4

NY2 - 358817.01

Directors may promptly notify the Class B Directors in writing of, and shall consult with the Class B Directors regarding a proposal to nominate and elect a single Chairman of the Corporation and the Partnership to replace the Class A Co-Chairman and the Class B Co-Chairman in accordance with this Article III, Section 3(vii).  Within thirty days of the date of receipt of notification of a proposal by the Class A Directors to nominate and elect a single Chairman of the Corporation and the Partnership to replace the Class A Co-Chairman and the Class B Co-Chairman, the Class B Directors shall either object to the proposal or agree in consultation with the Class A Directors to propose to nominate and elect a single Chairman of the Corporation and the Partnership.  If the Class B Directors do not respond within the applicable time period specified in the preceding sentence, or if a single Chairman of the Corporation and the Partnership has not been nominated and elected within thirty days of receipt of notification of such a proposal from the Class A Directors, then the proposal to elect a single Chairman of the Corporation and the Partnership shall be deemed to have been rejected.

(viii)    If at any time the Class B Directors believe that the Class A Co-Chairman should be removed from office on the grounds of either incapacity or for cause, the Class B Directors shall so notify the Class A Directors in writing specifying the grounds for removal and shall consult with the Class A Directors regarding such proposed removal.  If after consultation with the Class A Directors, the Class B Directors continue to believe that the Class A Co-Chairman should be removed from office on the specified grounds, the Class B Directors shall submit the issue of the Class A Co-Chairman's removal to a binding decision of arbitration in accordance with the provisions of Article VIII, Section 4 of the By-Laws of the Corporation.  The Class A Co-Chairman shall remain in office during the pendency of such proceedings.

5

NY2 - 358817.01

SECTION 4.   ELECTION OF CLASS B CO-CHAIRMAN.  The following provisions of this Article III, Section 4, shall remain in effect until termination of the Shareholders' Agreement, and thereafter shall terminate and have no further force and effect, and the references to the Class B Co-Chairman shall be deleted from Article III, Sections 6 and 7:

(i)    For purposes hereof the term "Class B Co-Chairman" shall mean initially Richard S. Sackler, M.D. ("RSS") and thereafter each successor Class B Co-Chairman elected in accordance with Article III, Section 4(iii).

(ii)    RSS shall serve as the Class B Co-Chairman for a term of three years commencing March 4, 2003 or until the earlier of his death, incapacity, retirement, resignation or removal as a Class B Director.

(iii)    Upon RSS ceasing to act as Class B Co-Chairman for any reason as set forth in Article III, Section 4(vii) below, the Class B Directors by majority vote shall have the power to nominate, elect, remove and replace subsequent Class B Co-Chairmen, each for a three-year term; provided, however, that, prior to exercising the power to nominate, elect, remove or replace, the Class B Directors shall (A) promptly notify the Class A Directors in writing of, and shall consult with the Class A Directors regarding, each proposed nomination, and (B) obtain the prior written consent of the Class A Directors to any proposed nomination, which consent will not be unreasonably withheld.  If the Class A Directors do not consent to such nomination within thirty days of the date of receipt by the Class A Directors of notification of such nomination, the Class B Directors shall submit for resolution the issue of whether the consent of the Class A Directors was unreasonably withheld to binding arbitration in accordance with the provisions of Article VIII, Section 4.  The Class B Directors shall be entitled, upon

6

NY2 - 358817.01

notice to and consultation with the Class A Directors as provided above, to renominate in the future as a Class B Co-Chairman, any nominee not previously consented to by the Class A Directors.

(iv)    If either the Class A Directors consent to the Class B Directors' nominee for Class B Co-Chairman within thirty days of the date of receipt of notification of such nomination, or the Class A Directors do not consent to the Class B Directors' nominee for Class B Co-Chairman but the arbitrator decides that the consent of the Class A Directors was unreasonably withheld, then the Class B Directors' nominee shall be elected the Class B Co-Chairman upon the consent of the Class A Directors or upon the date of the arbitrator's decision, as the case may be.  If the Class A Directors do not consent to the Class B Directors' nominee for Class B Co-Chairman and the arbitrator decides that the consent of the Class A Directors was reasonably withheld, then the Class B Directors shall again nominate a Class B Co-Chairman pursuant to Article III, Section 4(iii).

(v)    If for any reason a vacancy occurs in the office of the Class B Co-Chairman during any three-year term, the person elected to fill such vacancy in accordance with the provisions of this Article III, Section 4 shall serve as the Class B Co-Chairman only for the remainder of such three-year term (i.e., a new three-year term shall not commence upon the election of the person filling such vacancy).

(vi)    Subject to the provisions of this Article III, Section 4, the same person may be re-elected to an unlimited number of three-year terms as the Class B Co-Chairman.

(vii)    In the event of the death, incapacity, retirement, resignation, removal or expiration of term of the then current Class B Co-Chairman, the Class B

7

NY2 - 358817.01

Directors may promptly notify the Class A Directors in writing of, and shall consult with the Class A Directors regarding a proposal to nominate and elect a single Chairman of the Corporation and the Partnership to replace the Class A Co-Chairman and the Class B Co-Chairman in accordance with this Article III, Section 4(vii). Within thirty days of the date of receipt of notification of a proposal by the Class B Directors to nominate and elect a single Chairman of the Corporation and the Partnership to replace the Class A Co-Chairman and the Class B Co-Chairman, the Class A Directors shall either object to the proposal or agree in consultation with the Class B Directors to propose to nominate and elect a single Chairman of the Corporation and the Partnership. If the Class A Directors do not respond within the applicable time period specified in the preceding sentence, or if a single Chairman of the Corporation and the Partnership has not been nominated and elected within thirty days of receipt of notification of such a proposal from the Class B Directors, then the proposal to elect a single Chairman of the Corporation and the Partnership shall be deemed to have been rejected.

(viii)  If at any time the Class A Directors believe that the Class B Co-Chairman should be removed from office on the grounds of either incapacity or for cause, the Class A Directors shall so notify the Class B Directors in writing specifying the grounds for removal and shall consult with the Class B Directors regarding such proposed removal. If after consultation with the Class B Directors, the Class A Directors continue to believe that the Class B Co-Chairman should be removed from office on the specified grounds, the Class A Directors shall submit the issue of the Class B Co-Chairman's removal to a binding decision of arbitration in accordance with the provisions of Article VIII, Section 4 of the By-Laws of the Corporation. The Class B Co-Chairman shall remain in office during the pendency of such proceedings.

8

NY2 - 358817.01

SECTION 5.  DUTIES OF OFFICERS.  The duties and powers of the officers of the Corporation and the Partnership shall be as follows:

(i)  CO-CHAIRMEN.

A.  Authority.  Subject to the provisions of Article III, Section 5(ii) of these By-Laws, the Co-Chairmen shall have no executive authority within the corporate or partnership hierarchy of the Corporation and/or the Partnership, as the case may be; provided, however, each meeting of the Board of Directors shall be presided over by the Co-Chairmen or the Chairman, if there is a single Chairman.  If (A) the Class A Co-Chairman is not present, or the office of Class A Co-Chairman is vacant, then a majority of the Class A Directors present shall choose a Class A Director to preside with the Class B Co-Chairman at such meeting of the Board of Directors, or (B) the Class B Co-Chairman is not present or the office of Class B Co-Chairman is vacant, then a majority of the Class B Directors present shall choose a Class B Director to preside with the Class Co-Chairman at such meeting of the Board of Directors.

B.  Co-Equal Authority.  The Class A Co-Chairman and the Class B Co-Chairman shall have co-equal authority.  Neither the Class A Co-Chairman nor the Class B Co-Chairman shall be deemed superior to the other in the corporate or partnership hierarchy of the Corporation and/or the Partnership.  If the Class A Co-Chairman and the Class B Co-Chairman do not agree on any issue, they shall submit such disputed issue to the Board of Directors.

C.  Decisions.  The Board of Directors of the Corporation will strive to achieve unanimity in its decisions.  If, however, the Co-Chairmen agree or the Chairman, if there is a single Chairman, or any two Directors of the Corporation decides that

9

NY2 - 358817.01

further discussion of an issue will not create unanimity, then the Co-Chairmen acting jointly or the Chairman, if there is a single Chairman, or any two Directors of the Corporation can call for a vote of the Board of Directors regarding the issue.

(ii)    PRESIDENT AND CHIEF EXECUTIVE OFFICER.

A.    Reporting.  All Corporation and Partnership executives shall report to the President and CEO, except for matters related to the shareholders, Board of Directors or its committees, where the Executive Vice President, Counsel to the Board shall report as otherwise agreed.  The President and CEO shall report to the Board of Directors and the Co-Chairmen, jointly; provided, however, that upon either (i) MDS ceasing to act as Class A Co-Chairman for any reason as set forth in Article III, Section 3(vii) above, or (ii) RSS ceasing to act as Class B Co-Chairman for any reason as set forth in Article III, Section 4(vii) above, the President and CEO shall report only to the Board of Directors.

B.    Direct Reporting to the Board of Directors.  The Class A Directors by majority vote shall have the power, at any time and from time to time, to direct that the President and CEO shall report only to the Board of Directors, and the Class B Directors by majority vote shall have the power, at any time and from time to time, to direct that the President and CEO shall report only to the Board of Directors.  The Class A Directors or the Class B Directors, as the case may be, shall exercise such right to have the President and CEO report only to the Board of Directors by delivering written notice of such event to the Executive Vice President, Counsel to the Board.

C.    Formal Reports.  The President and CEO shall make a formal report on at least a quarterly basis regarding the business of the Partnership to the Board of Directors, which formal report shall include the reports of the Executive Vice Presidents who

10

NY2 - 358817.01

report to the President and CEO; provided, however, that in addition, the President and CEO

shall ensure that the Board of Directors receives all information necessary on a current basis in

order to enable the Board of Directors to be informed of all major events and matters that alone

or in the aggregate would have a material effect on the business, assets, operations or condition,

financial or otherwise, or prospects of the Partnership.   The Class A Directors by unanimous

vote of the Class A Directors present or the Class B Directors by unanimous vote of the Class B

Directors present, voting at a meeting of the Board of Directors, may request of the President

and CEO to request the attendance and formal report by any Executive Vice President at a

meeting of the Board of Directors.

        D.      Attendance of the President and CEO.  The President and

CEO shall attend, if available, all meetings of the Board of Directors unless excused by the

Board of Directors.

        E.      Authority.  The President and CEO shall exercise the

powers and perform the duties incident to his office subject to the limitations set forth in

Annex 1 attached hereto, as varied from time to time by the Board of Directors.

        (iii)    SENIOR VICE PRESIDENTS.  The Senior Vice Presidents shall

exercise the powers and shall perform the duties incident to their respective offices, subject to

the direction of the Board of Directors.

        (iv)    EXECUTIVE VICE PRESIDENTS.  The Executive Vice

Presidents shall exercise the powers and shall perform the duties incident to their respective

offices, subject to the direction of the Board of Directors; provided, however, that with respect

to matters related to the shareholders, Board of Directors or its committees, the Executive Vice

President, Counsel to the Board shall report as otherwise agreed.

11

NY2 - 358817.01

(v)   <u>VICE PRESIDENTS</u>.  The Vice Presidents shall exercise the powers and shall perform the duties incident to their respective offices, subject to the direction of the Board of Directors.

(vi)   <u>TREASURER</u>.  The Treasurer shall have care of all funds and securities of the Corporation and the Partnership and shall exercise the powers and shall perform the duties incident to the office of Treasurer, subject to the direction of the Board of Directors.

(vii)   <u>SECRETARY</u>.  The Secretary shall keep the minutes of all meetings of the shareholders, the Board of Directors and the Partnership.  The Secretary shall be custodian of the minute books of the Corporation and the Partnership and the corporate seal and shall affix the corporate seal or cause it to be affixed to such instruments as require such seal and attest the same and shall exercise the powers and shall perform the duties incident to the office of Secretary, subject to the direction of the Board of Directors.

SECTION 6.   <u>VACANCIES; HOW FILLED</u>.  All vacancies in any office, other than the offices of Class A Co-Chairman and Class B Co-Chairman, shall be filled by the Board of Directors without undue delay, at its regular meeting, or at a meeting specially called for that purpose.  Vacancies in the office of Class A Co-Chairman shall be filled in accordance with the provisions of Article III, Section 3(iii) above.  Vacancies in the office of Class B Co-Chairman shall be filled in accordance with the provisions of Article III, Section 4(iii) above.

SECTION 7.   <u>REMOVAL</u>.  The Board of Directors may remove any officer, other than the Class A Co-Chairman or the Class B Co-Chairman at any time with or without cause.

SECTION 8.   <u>COMPENSATION OF OFFICERS</u>.  The officers shall receive such salary or compensation as may be determined by the Board of Directors.

12

NY2 - 358817.01

SECTION 9.  OTHER OFFICERS.  The Board of Directors may designate any other officers of the Corporation, including one or more Vice Presidents, one or more Assistant Secretaries, and one or more Assistant Treasurers, who shall exercise the powers and shall perform the duties incident to their offices, subject to the direction of the Board of Directors.

3.    Article VIII of the By-Laws of the Corporation regarding provisions regarding shareholders and directors are hereby amended in their entirety to read as follows:

"ARTICLE VIII

PROVISIONS REGARDING SHAREHOLDERS AND DIRECTORS

SECTION 1.  CONSTRUCTION.  To the extent that the provisions of this Article VIII may conflict or not be consistent with any provision contained in Articles I through VII of these By-Laws, the provisions of this Article VIII shall supersede any conflicting or inconsistent provision contained in Articles I through VII of these By-Laws.

SECTION 2.  SHAREHOLDER VOTING.  The following provisions shall apply with respect to all matters upon which shareholders of the Corporation are entitled to vote:

(i)    CLASSIFICATION AND NUMBER OF DIRECTORS.  The classification and number of Directors of the Corporation shall be determined in accordance with the provisions of this Section 2(i).

A.    Classification.  The Board of Directors of the Corporation shall be classified in accordance with the provisions set forth in the Certificate of Incorporation of the Corporation, as the same may be amended from time to time.

B.    Number of Directors.

(1)    Class A Directors.  Subject to the minimum requirement that there be at least two Class A Directors, the Class A shareholders of the

13

NY2 - 358817.01

Corporation by majority vote of the Class A shares outstanding shall determine the number of Class A Directors and shall have the unilateral right to change the number of Class A Directors at any time and from time to time; provided, however, that the number of Class A Directors shall not exceed five.

(2)    Class B Directors.  Subject to the minimum requirement that there be at least two Class B Directors, the Class B shareholders of the Corporation by majority vote of the Class B shares outstanding shall determine the number of Class B Directors and shall have the unilateral right to change the number of Class B Directors at any time and from time to time; provided, however, that the number of Class B Directors shall not exceed five.

(ii)    ELECTION OF DIRECTORS.  With respect to Class A Directors, the Class A shareholders of the Corporation by majority vote of the Class A shares outstanding shall have the unilateral right, at any time and from time to time, to elect, remove or replace, in accordance with the provisions of the Certificate of Incorporation, as the same may be amended from time to time, and the provisions of this Article VIII, Section 2, Class A Directors and shall be required to notify the Class B shareholders and the Board of Directors in writing of any such election, removal or replacement and the names of such Class A Directors within five business days thereafter.  With respect to Class B Directors, the Class B shareholders of the Corporation by majority vote of the Class B shares outstanding shall have the unilateral right, at any time and from time to time, to elect, remove or replace, in accordance with the provisions of the Certificate of Incorporation, as the same may be amended from time to time, and the provisions of this Article VIII, Section 2, Class B Directors and shall be required to notify the Class A

14

NY2 - 358817.01

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]

shareholders and the Board of Directors in writing of any such election, removal or replacement and the names of such Class B Directors within five business days thereafter.

(iii)    SHAREHOLDER VOTING ON OTHER MATTERS.  The following provisions shall apply with respect to any meeting of shareholders of the Corporation for the transaction of any business other than the election of Directors:

A.    Quorum.  A quorum of shareholders at any meeting of shareholders shall be constituted in accordance with the provisions set forth in the Certificate of Incorporation of the Corporation, as the same may be amended from time to time.  The quorum requirements set forth in the Certificate of Incorporation of the Corporation shall apply at every meeting of shareholders of the Corporation including any meeting that has been adjourned and reconvened.

B.    Voting.  Voting at all meetings of shareholders shall be conducted in accordance with the provisions set forth in the Certificate of Incorporation of the Corporation, as the same may be amended from time to time.

SECTION 3.    DIRECTORS.  The following provisions shall apply with respect to the Directors of the Corporation:

(i)    DIRECTOR VOTING.  With respect to any meeting of Directors of the Corporation:

A.    Quorum.  A quorum of Directors at any meeting of the Board of Directors shall be constituted in accordance with the provisions set forth in the Certificate of Incorporation of the Corporation, as the same may be amended from time to time. The quorum requirements set forth in the preceding sentence shall apply at every meeting of Directors of the Corporation including any meeting that has been adjourned and reconvened.

15

NY2 - 358817.01

B.    <u>Voting</u>.  Voting at all meetings of the Board of Directors shall be conducted in accordance with the provisions set forth in the Certificate of Incorporation of the Corporation, as the same may be amended form time to time.

(ii)    <u>VACANCIES</u>.  Vacancies in the Board of Directors shall be filled as follows: (A) vacancies among the Class A Directors shall be filled by the Class A shareholders of the Corporation by majority vote of the Class A shares outstanding, and (B) vacancies among the Class B Directors shall be filled by the Class B shareholders of the Corporation by majority vote of the Class B shares outstanding.  The shareholders filling any vacancy in accordance with the provisions of the preceding sentence shall notify the Board of Directors and the remaining shareholders within five business days of the name of the person appointed to fill such vacancy.

(iii)    <u>REMOVAL OF DIRECTORS</u>.  At any time, any one or more of the Class A Directors may be removed, with or without cause, by the Class A shareholders of the Corporation by majority vote of the Class A shares outstanding; <u>provided</u>, <u>however</u>, that the Class A-1 Director may not be removed without cause.  At any time, any one or more of the Class B Directors may be removed, with or without cause, by the Class B shareholders of the Corporation by majority vote of the Class B shares outstanding.  The shareholders removing any Director in accordance with the provisions of this Article VIII, Section 3(iii) shall notify the Board of Directors and the remaining shareholders within five business days of the name of such removed Director.

(iv)    <u>MEETINGS OF DIRECTORS</u>.

A.    <u>Regular Meetings; Notice</u>.  Regular meetings of the Board of Directors shall be held at such time and at One Stamford Forum, Stamford, Connecticut or an

16

NY2 - 358817.01

office in New York, New York as the Board of Directors may from time to time prescribe, or at such other place as the Board of Directors may from time to time otherwise determine.  No notice need be given of any regular meeting.

          B.     <u>Special Meetings; Notice</u>.  A special meeting of the Board of Directors may be called at any time by (i) fifty percent of the Class A shares outstanding or fifty percent of the Class B shares outstanding or (ii) a majority of the Class A Directors then in office, or a majority of the Class B Directors then in office.  Any such meeting shall be held at such time and at One Stamford Forum, Stamford, Connecticut or an office in New York, New York as shall be determined by the body or person calling such meeting, or at such place as the Board of Directors may otherwise determine.  Notice of such meeting, specifying the purposes thereof and stating the time and place thereof shall be given by delivery of the notice addressed to each Director at his address as it appears on the Corporation's records or at such address as the Director may have furnished the Executive Vice President, Counsel to the Board for that purpose, by telecopy, computer, or by delivery of the notice by telephone or in person, in each case at least 48 hours before the time fixed for the meeting.

          C.     <u>Agenda</u>.  Any Director may specify business items for consideration by the Board of Directors at any regular or special meeting of the Board of Directors; <u>provided</u>, <u>however</u>, such business items must be delivered by the requesting Director to the Executive Vice President, Counsel to the Board within a reasonable time before the day fixed for the meeting.

     SECTION 4.   <u>ARBITRATION PROCEDURES</u>.  The arbitration procedures set forth in Section 3 of the Shareholders' Agreement shall govern each arbitration proceeding provided for under these By-Laws.

17

NY2 - 358817.01

SECTION 5.   <u>INCAPACITY</u>.  For purposes of these By-Laws, the "incapacity" of an individual shall commence, and an individual shall be deemed to be "incapacitated" in accordance with the provisions regarding "incapacity" as set forth in the Shareholders' Agreement.

18

NY2 - 358817.01

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647346
PPLPUCC500647319

UNREDACTED - CONTAINS OUTSIDE PROFESSIONALS' EYES ONLY INFORMATION TREAT SUBJECT TO PROTECTIVE ORDER

ANNEX 1

## MATTERS RESERVED TO THE BOARD OF DIRECTORS

All substantive matters not in the day-to-day ordinary course of business will be decided by the Board of Directors and shall include, but not be limited to, the following:

1. Approval of budgets:

    (i)     Annual budgets and research budgets;

    (ii)    Material changes of approved budgets; and

    (iii)   Three to five-year projected operating budgets and strategic business plans.

2. Introduction of new products.

3. Approval of significant book pricing changes.

4. Product and other intellectual or ancillary property right acquisitions costing more than 1% of gross margin of the company making the acquisition.

5. Product and other intellectual or ancillary property right dispositions.

6. Asset acquisitions and dispositions involving more than 1/2% of gross margin of the company so acting.

7. Election of officers, engagement or termination of senior officers, and decisions regarding the bonus and compensation of senior officers (including corporate officers, e.g., Secretary and Treasurer), and the bonus and compensation policies applicable to employees. For purposes hereof, "senior officers" shall mean corporate officers and those officers at the Vice President level and higher.

8. Employment agreements for an aggregate term of more than one year and involving compensation of $350,000 or more annually.

9. Joint ventures, negotiations and other arrangements that involve sharing revenues or profits with third parties or deploying significant manpower resources.

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647347
PPLPUCC500647319

10.  Matters involving the limited partnership interests, the shares or other security instruments of a company.

11.  Creation of any lien or encumbrance over any property of a company in excess of $1,000,000.

12.  Refinancing or restructuring of debt, including expansion of the aggregate debt with banks or other financial institutions by more than $1,000,000 per year.

13.  Incurring contractual liabilities not in the ordinary course of business and exceeding approved budget by more than 3% in any one year or by 10% on any one project or item.

14.  Guarantees or indemnities to secure the liabilities of any person.

15.  Decisions as to the site or change of site of the principal office, principal headquarters or other principal facilities.

16.  Decisions to engage new consultants in excess of $350,000 in any one year or on any one project or item.

17.  Decisions regarding the commencement or termination, by settlement or otherwise, and decisions regarding the conduct, prosecution or defense of threatened, pending or completed actions, suits or proceedings relating to a company's products, and other material matters, whether civil, criminal, administrative or investigative, other than those decisions made in the ordinary course of the company's business.

18.  All changes in pension, retirement, health or insurance programs and plans for employees.

19.  All matters of philanthropy that deviate in magnitude from past practice with a specific organization or are in excess of budget.

NY2 - 358817.01

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]

PPLPUCC500647348
PPLPUCC500647319

SCHEDULE 3

FOR RELEASE AFTER DINNER MARCH 6, 2003, FOLLOWING VERBAL
NOTIFICATIONS TO SELECTED INDIVIDUALS AND ALL VICE PRESIDENTS

Dear Colleagues,

We are pleased to be writing to you today to inform you of the following organizational changes that will take effect immediately:

Dr. Richard S. Sackler has been appointed and will serve with Dr. Mortimer D. Sackler as Co-Chairmen of the Board of Directors of Purdue Pharma Inc., the general partner of Purdue Pharma L.P. (PPLP).  Drs. Mortimer D. Sackler and Raymond R. Sackler will serve as Co-Chairmen of the Board of Directors of The Purdue Frederick Company (PF).

Mr. Michael Friedman has been appointed President and Chief Executive Officer of PPLP and PF, reporting to the Co-Chairmen, and to the respective Boards of Directors of these companies.

Michael will direct and guide all company operations, including: Sales and Marketing; Licensing and Business Development; Research and Development, including Regulatory Affairs; Human Resources; Law; Security; Corporate Affairs; Finance; Production; and Quality Assurance and Control.

Michael is eminently qualified to lead the company at this time in its development.  He has been associated with the owners of the company for close to twenty years and with Purdue for the last eighteen years.  Most important, Michael shares our absolute commitment to patients and physicians.

The Boards of Directors will establish fundamental business policies, participate in all major decisions and continue to guide the management on an ongoing basis. We expect that these changes will enable us to continue to enhance Purdue's commitment to patients and physicians.

The Boards of Directors

PROFESSIONALS' EYES ONLY/HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
PUBLICLY FILED PER STIPULATION [ECF 2140]