DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF HEARING ON DEBTORS' LIMITED OBJECTION TO THE MEDIA
INTERVENORS' MOTION TO INTERVENE AND UNSEAL JUDICIAL RECORDS
AND CROSS-MOTION TO SEAL CERTAIN JUDICIAL RECORDS**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PLEASE TAKE NOTICE** that on November 23, 2020, certain media intervenors filed a *Motion to Intervene and Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [ECF No. 1828] (the "**First Motion to Intervene and Unseal**" by, collectively, the "**Media Intervenors**"). The Media Intervenors' First Motion to Intervene and Unseal was originally noticed for the December 15, 2020 omnibus hearing.

**PLEASE TAKE FURTHER NOTICE** that on December 15, 2020, the parties filed, and the Court so ordered, the *Stipulation and Agreed Order Regarding Media Intervenors' Motion to Unseal Materials Filed in Connection with UCC Privilege Motions* [ECF No. 2140] ("**Scheduling Stipulation**"). Pursuant to the Scheduling Stipulation, the Media Intervenors' First Motion to Intervene and Unseal was adjourned to January 20, 2021. On December 22, the Media Intervenors filed the *Second Motion to Unseal Judicial Records by Media Intervenors Dow Jones Co., Inc., Boston Globe Media Partners LLC, and Reuters News & Media, Inc.* [Dkt. No. 2188] (the "**Second Motion to Intervene and Unseal**" and with the First Motion to Intervene and Unseal, the "**Motions to Intervene and Unseal**"), also noticed for a hearing on January 20, 2021.

**PLEASE TAKE FURTHER NOTICE** that on January 11, 2021, the above-captioned debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") filed the *Debtors' Limited Objection to the Media Intervenors' Motions to Intervene and Unseal and Cross-Motion to Seal Judicial Documents* (the "**Cross-Motion to Seal**").

**PLEASE TAKE FURTHER NOTICE** a hearing on the Media Intervenors' Motions to Intervene and Unseal and the Debtors' Cross-Motion to Seal will be held on **January 20, 2021** at **10:00 a.m. (Prevailing Eastern Time)** (the "**Hearing**") before the Honorable Robert

D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

PLEASE TAKE FURTHER NOTICE that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted telephonically.[2] Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[3] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Cross-Motion to Seal shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices

---

[2]    A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/courtoperations-under-exigent-circumstances-created-covid-19.

[3]    The Bankruptcy Court's procedures for telephonic appearances are available at: http://www.nysb.uscourts.gov/telephonic-appearances-white-plains.

of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498], so as to be filed and received no later than **January 18, 2021** at **4:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default; *provided* that objecting parties shall attend the Hearing telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:    January 11, 2021
          New York, New York

                              By: /s/ Benjamin S. Kaminetzky
                              DAVIS POLK & WARDWELL LLP
                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone:    (212) 450-4000
                              Facsimile:    (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              James I. McClammy
                              Marc J. Tobak
                              Gerard X. McCarthy
                              Garrett L. Cardillo


                              *Counsel to the Debtors
                              and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[4] | **(Jointly Administered)** |

### DEBTORS' LIMITED OBJECTION TO THE MEDIA INTERVENORS' MOTIONS TO INTERVENE AND UNSEAL JUDICIAL RECORDS AND CROSS-MOTION TO SEAL CERTAIN JUDICIAL RECORDS

---

[4] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

# TABLE OF CONTENTS

PAGE

INTRODUCTION ...........................................................................................................................1

ARGUMENT ..................................................................................................................................6

      I.      The Confidential Commercial Information Redacted By the Debtors Is
Appropriately Shielded Under Section 107(b)(1) Because Its Disclosure
Risks Causing Competitive Harm to the Debtors ....................................................6

            A.      The Bankruptcy Code Mandates the Protection of Confidential
Commercial Information Upon the Request of a Party in Interest ..............6

            B.      The Debtors' Proposed Limited Redactions to Protect Confidential
Research, Development, and Commercial Information Are
Appropriate ................................................................................................9

NO PRIOR REQUEST .................................................................................................................13

NOTICE........................................................................................................................................13

CONCLUSION..............................................................................................................................14

# TABLE OF AUTHORITIES

### Cases

PAGE(S)

*In re Altegrity, Inc.*,
No. 15-10226 (LSS), 2015 WL 10963572 (Bankr. D. Del. July 6, 2015) .................... 7, 8, 11

*In re Barney's, Inc.*,
201 B.R. 703 (Bankr. S.D.N.Y. 1996) ................................................................. 7

*In re Borders Grp., Inc.*,
462 B.R. 42 (Bankr. S.D.N.Y. 2011) ............................................................. 6, 7

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ........................................................................ 12

*Cohen v. Gerson Lehrman Grp., Inc.*,
No. 09 CIV. 4352 PKC, 2011 WL 4336679 (S.D.N.Y. Sept. 15, 2011) ................................ 8

*In re Food Mgmt. Grp., LLC*,
359 B.R. 543 (Bankr. S.D.N.Y. 2007) ............................................................... 6

*In re Glob. Crossing Ltd.*,
295 B.R. 720 (Bankr. S.D.N.Y. 2003) ............................................................... 7

*Gowan v. Westford Asset Mgmt. LLC* (*In re Dreier LLP*),
485 B.R. 821 (Bankr. S.D.N.Y. 2013) ................................................... 6, 7, 10, 12

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ...................................................................... 2

*In re Northstar Energy, Inc.*,
315 B.R. 425 (Bankr. E.D. Tex. 2004) ............................................................. 7

*Old Republic Ins. Co. v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
No. 03 C 5238, 2006 WL 3782994 (N.D. Ill. Dec. 21, 2006) ........................................ 12

*Pub. Citizen Health Research Grp. v. FDA*,
185 F.3d 898 (D.C. Cir. 1999) .................................................................... 9

*UCP Int'l Co. v. Balsam Brands Inc.*,
420 F. Supp. 3d 966 (N.D. Cal. 2019) ............................................................ 10

ii

*Verde Env't Techs., Inc. v. C2R Glob. Mfg.* (*In re C2R Glob. Mfg.*),

    No. 20-02028-beh, 2020 WL 7265867 (Bankr. E.D. Wis. Dec. 10, 2020) .............................. 9

*Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*),

    21 F.3d 24 (2d Cir. 1994) ............................................................................................ 6, 7, 10

*ViroPharma Inc. v. Dep't of Health & Human Servs.*,

    839 F. Supp. 2d 184 (D.D.C. 2012) ........................................................................................ 9


STATUTES & RULES

11 U.S.C. § 105 ................................................................................................................................. 1
11 U.S.C. § 107 ........................................................................................................................ *passim*
Fed. R. of Bankr. P. 2018................................................................................................................ 5
Fed. R. of Bankr. P. 9018................................................................................................................ 6
Local Bankr. R. 9018-1....................................................................................................................1


OTHER AUTHORITIES

2 Collier on Bankruptcy ¶ 107.03 (16th ed. 2020) .........................................................................6

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, "**Debtors**," "**Company**," or "**Purdue**") hereby submit this limited objection ("**Objection**") to the *Motion to Intervene and Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [Dkt. No. 1828] and the *Second Motion to Unseal Judicial Records by Media Intervenors Dow Jones Co., Inc., Boston Globe Media Partners LLC, and Reuters News & Media, Inc.* [Dkt. No. 2188] (the "**Motions**" by, collectively, the "**Media Intervenors**") and cross-motion seeking entry of an order, substantially in the form attached hereto as **Exhibit A**, to seal certain judicial records pursuant to 11 U.S.C. §§ 105(a) and 107, Federal Rule of Bankruptcy Procedure 9018 and Local Bankruptcy Rule 9018-1 ("**Cross-Motion**").[5]  In response to the Motions and in support of the Debtors' Cross-Motion, the Debtors respectfully state as follows:

## **INTRODUCTION**

1.       On November 23, 2020 and December 22, 2020, the Media Intervenors moved to unseal briefing and exhibits that were submitted in connection with two separate motions filed by the Official Committee of Unsecured Creditors ("**UCC**") to compel the production of documents, obtain *in camera* review, or otherwise challenge claims of privilege asserted by the Debtors and the Sackler Families with respect to specified documents and categories of documents ("**UCC Privileges Motions**").  The material that the Media Intervenors sought to unseal is substantial by any measure, totaling more than 550 documents and well over 13,500 pages.  The vast majority of this information, much of which was produced by the Debtors and is subject to the operative protective orders, was filed with the court by parties other

---

[5] In accordance with Local Bankruptcy Rule 9018-1(b), redacted copies of exhibits filed in connection with the UCC Privileges Motions have been, or in due course will be, filed on the Bankruptcy Court's dockets by the parties.

than the Debtors (which reached a settlement with the UCC with respect to the UCC Privileges
Motions in November 2020).

2.      The Debtors have been committed to transparency in these proceedings
from the outset of these chapter 11 cases and that commitment is, by now, well established.
Separate and apart from this, the Debtors are aware that the "right of public access to judicial
documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435
F.3d 110, 119 (2d Cir. 2006).  In furtherance of transparency and public access, the Debtors
worked closely with the Media Intervenors, the UCC, the Sackler Families, the Ad Hoc Group of
Non-Consenting States ("**Non-Consenting States**"), and the IACs to put into place an orderly
process to evaluate the voluminous materials at issue, expeditiously file on the public docket the
information that no party contends should remain under seal, and sharpen and narrow any issues
that require the Court's resolution.  The Debtors' hope was that, after review, the parties would
be in broad agreement that much of the material should be unsealed.

3.      Notwithstanding that expectation, careful assessment of the documents
was time consuming and resource intensive.  This evaluation required a painstaking page-by-
page (and at times line-by-line) review in close consultation with, and with significant input
from, employees and management of the Debtors—individuals who are already stretched by
extensive business and bankruptcy-related obligations, particularly at this critical juncture.
Following this review process, the Debtors are happy to report that the overwhelming majority of
information at issue has now been publicly filed (or will be publicly filed shortly), and the
withholding and redactions that remain can only be fairly described as very limited in scope.

4.      To facilitate the review, assessment and public filing of the documents, the
parties agreed to group them into four general categories or tranches.  The parties publicly filed

2

on the public docket the first tranche of these materials on December 18, 2020 ("**Tranche One**

**materials**" or "**Tranche One documents**").  These Tranche One materials consist of 339

documents, totaling approximately 6,250 pages.  These include briefs, declarations, deposition

transcripts, discovery letters and similar communications among counsel, court documents from

these chapter 11 cases and prior litigation, emails, presentations made by the Sackler Families,

certain documents concerning trusts and distributions, certain settlement agreements, and journal

articles.  The vast majority of these were filed with no redactions or only limited redactions of

personally identifiable information such as addresses, phone numbers, email addresses and

associated metadata, a handful of secretary or analyst names, personal medical information,

employee pictures, and in one instance portions of an individual's detailed resume.  With the

exception of discovery privilege logs and a handful of related materials, there remain as a result

of the parties' meet and confer efforts only 7 documents in Tranche One that contain redactions

proposed by the Debtors to protect confidential commercial information—in all but one instance,

the redactions consist of only a few words or sentences in relatively lengthy documents.[6]

5.        The parties publicly filed on the public docket the second tranche of

materials on December 21, 2020 ("**Tranche Two materials**" or "**Tranche Two documents**").

These Tranche Two materials consist of 56 compliance documents, many of which are quarterly

compliance reports to Purdue's board of directors, totaling approximately 900 pages.  Of these,

47 documents were filed entirely without redaction, and the remaining 9 were filed with only

very minor redactions for certain personally identifiable information, including email addresses

and phone numbers.  The Debtors made no redactions for confidential commercial information.

---

[6] Thirteen documents were filed by the parties on December 18, 2020 with redactions proposed
by the Debtors to protect confidential commercial information.  (J. Lowne. Decl. ¶ 7.)
Contemporaneous with the filing of this Motion, the Debtors informed the parties of the
additional material that may be unredacted in Tranche 1.

3

6.      The third tranche of materials ("**Tranche Three materials**" or "**Tranche Three documents**") is slated to be filed on the public docket nearly contemporaneously with this brief.  These Tranche Three materials consist of 76 documents, totaling over 5,000 pages, and include audited financials, financial statements, ratings material from third-party investor rating agencies, detailed budgetary materials, compiled board decisions and minutes, materials related to licensing and M&A, quarterly reports delivered to the Debtors' board of directors, miscellaneous board reports and management reports, and risk reports related to the business.  In comparison to material in other tranches, the Tranche Three materials are on the whole the most lengthy (with many totaling over 100 pages and some totaling many hundreds of pages) and most directly related to the core of the Debtors' business.  The Debtors, like many other companies, maintain these materials confidentially in the ordinary course.  Of these, the Debtors proposed no redactions at all to 24 documents.  Two ratings documents from Standard & Poor's Rating Services and one ratings document from Moody's Investor Services will be withheld in full pursuant to confidentiality agreements, and two documents contain only redactions for privileged material that was inadvertently produced.  The Debtors proposed limited redactions to commercially sensitive information in the remaining 47 documents.  Overall, the Tranche Three materials contain comparatively more redactions proposed by the Debtors for confidential commercial information than those in other tranches, which is entirely unsurprising given the sensitive nature of the materials at issue and their scope.  Even these redactions, however, are modest.

7.      Materials in the fourth and final tranche ("**Tranche Four materials**" or "**Tranche Four documents**") are also scheduled to be publicly filed nearly contemporaneously with this brief.  The Tranche Four materials consist of 86 exhibits, totaling approximately 1,200

4

pages, that were filed with the Sackler Families' sur-reply briefs and declarations on December 9, 2020 [Dkt. Nos. 2093, 2094, 2095, 2096] (the "**Sur-replies**").  These exhibits contain categories of documents that overlap with those in other tranches and include compliance reports and presentations, court documents from the MDL and prior litigation, deposition transcripts and excerpts, discovery letters and communications between counsel in the chapter 11 cases, emails, government correspondence, Sackler presentations in the chapter 11 cases, documents concerning trusts or distributions, settlement agreements, audited financial statements, budgetary materials, compiled board decisions and minutes, miscellaneous board and management reports, internal ADD documents, Purdue promotional materials, and other miscellaneous documents. The Debtors proposed no redactions to 48 of these documents, only redactions related to personally identifiable information to a further 26 documents, redactions for privileged material that was inadvertently produced to one document, and redactions for commercially sensitive information to the remaining 11 documents (together with the proposed redacted documents in Tranches One, Two, and Three discussed above, the "**Debtors' Sealed Documents**").

# ARGUMENT[7]

## I. The Confidential Commercial Information Redacted By the Debtors Is Appropriately Shielded Under Section 107(b)(1) Because Its Disclosure Risks Causing Competitive Harm to the Debtors[8]

### A. The Bankruptcy Code Mandates the Protection of Confidential Commercial Information Upon the Request of a Party in Interest

8.      Section 107(b)(1) of the Bankruptcy Code provides that, upon the request of an interested party, the bankruptcy court "shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information."  11 U.S.C. § 107(b)(1).[9]  In other words, although the Bankruptcy Code codifies a general right of access to court materials, *see* 11 U.S.C. § 107(a), the Bankruptcy Code expressly carves out two categories of protected information—namely (1) trade secrets or (2) confidential research, development, or commercial information.  *See Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir. 1994).  In fact, if information falls into one of these categories, "the court is <u>required</u> to protect a requesting interested party and has no discretion to deny the application."  *Id.* (emphasis in original); *see also* 2 Collier on Bankruptcy ¶

---

[7] The Debtors do not object to the Media Intervenors' request to intervene pursuant to Federal Rule of Bankruptcy Procedure 2018(a) for the limited purpose of seeking to unseal judicial documents. Mot. [ECF No. 2022] at ¶ 14.

[8] For the avoidance of doubt, the Debtors do not seek in their Cross-Motion to protect any material pursuant to Bankruptcy Code section 107(b)(2) (permitting sealing regarding "scandalous" or "defamatory" matter).

[9] Federal Rule of Bankruptcy Procedure 9018, which implements section 107(b), states: "[o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ."

6

107.03 (16th ed. 2020) ("Protection is mandatory [under Section 107(b)(2)] when requested by a 'party in interest.'").[10]

9.       Confidential research, development, or commercial information ("**CCI**"), in particular, "need not rise to the level of a trade secret to qualify for protection under section 107(b)." *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011). Rather, CCI includes any information that might cause "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d at 27; *see also Gowan v. Westford Asset Mgmt. LLC (In re Dreier LLP)*, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013) (Section 107(b) "protects parties from the release of information that could cause them harm or give competitors an unfair advantage.").

10.      Under this standard, courts routinely protect information that reveals strategic decision making or other key business information that, if disclosed, could cause competitive harm to the debtor or another entity. *See In re Dreier LLP*, 485 B.R. at 823 (holding that an employee's testimony about how an investment fund structured its investments, even though "general," was CCI because it "involve[d] the type of strategic decision making that could rightly be categorized as commercial information" (internal quotation marks omitted)); *see also In re Orion Pictures Corp.*, 21 F.3d at 28 (affirming sealing order of nonpublic licensing agreement); *In re Borders Grp., Inc.*, 462 B.R. at 48 (sealing identities of key employees and

---

[10] In their Motions, the Media Intervenors also argue that the First Amendment establishes a presumption of public access to redacted judicial documents that must be overcome in order for judicial records to be sealed. Mot. [ECF No. 2022] at ¶¶ 30-33; 38. Bankruptcy cases do not as a general matter typically address the First Amendment right of access to judicial documents, which is hardly surprising given that there is a statute on point and that rights of public access to judicial materials—such as those codified in Section 107—are ultimately "rooted in the public's First Amendment right to know about the administration of justice." *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007). In any event, the materials at issue should remain sealed under either analysis for essentially the same reasons.

vendors and financial information of the company and its purchaser); *In re Altegrity, Inc.*, No.

15-10226 (LSS), 2015 WL 10963572, at *4 (Bankr. D. Del. July 6, 2015) (sealing identities of

key customers and independent contractors); *In re Barney's, Inc.*, 201 B.R. 703, 709 (Bankr.

S.D.N.Y. 1996) (recognizing that "pricing formulae, short and long term marketing strategies"

and the terms of agreements with suppliers" may be protectable CCI); *In re Northstar Energy,

Inc.*, 315 B.R. 425, 427, 430 (Bankr. E.D. Tex. 2004) (sealing lists of potential investors).

11.    At bottom, the purpose of section 107(b)(1) is to "protect business entities

from disclosure of information that <u>could reasonably be expected</u> to cause the entity commercial

injury." *In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (emphasis

added). Here, the Debtors, ever cognizant of the public's interest in these chapter 11 cases and

the public's general right of access to bankruptcy court proceedings, have worked tirelessly to

facilitate the unsealing of the <u>vast</u> majority of the information contained within the documents

filed in connection with the UCC Privileges Motions. For the reasons that follow, the limited

sealing that the Debtors have proposed to protect against the risks of commercial injury is

appropriate and warranted under applicable law. [11]

---

[11] Materials in Tranches One, Two, Three, and Four also contain redactions of personally identifying information ("**PII**"), including addresses, phone numbers, email addresses and associated metadata, names of assistants or secretaries or low-level analysts, references to individuals' medical conditions, employee pictures, and in one instance non-Purdue aspects of an individual's detailed resume. (J. Lowne Decl. ¶ 5 n.3.) Such information, which has no bearing whatsoever on the issues in dispute with respect to the UCC Privileges Motions, is appropriately protected—particularly in the context of these chapter 11 cases, where public interest is intense and there are passionately held views concerning the Debtors and the ultimate resolution of these bankruptcy proceedings. *See* 11 U.S.C. § 107(c); *see also Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 CIV. 4352 PKC, 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15, 2011) (protecting "individual contact information, such as e-mail addresses, home addresses and phone numbers" because "such information [was] not at issue in [the] dispute and the individuals [had] a countervailing privacy interest in their non-disclosure"); *In re Altegrity, Inc.*, 2015 WL 10963572, at *2 (sealing material containing employee and contractor addresses under section

8

**B.    The Debtors' Proposed Limited Redactions to Protect Confidential Research, Development, and Commercial Information Are Appropriate**

12.    In light of the length and breadth of the documents at issue, it is simply not feasible to describe each redaction.  However, the vast majority of Purdue's proposed redactions to confidential research, development, and commercial information fall into a small number of general categories.  These are described in turn.

13.    First, the Debtors have proposed redactions to certain confidential research and development information.  (J. Lowne Decl. ¶ 11-12.)  This information includes, but is not limited to, certain descriptions and assessments of molecules and other compounds as well as research and development projects, including with third-party partners.  (J. Lowne Decl. ¶ 12.) As set forth in the accompanying declaration of Jon Lowne, Executive Vice President and Chief Financial Officer of Purdue Pharma L.P. ("**Lowne Decl.**"), research and development is at the core of a pharmaceutical business and is vital to the success of pharmaceutical companies. (J. Lowne Decl. ¶ 12.)  Release of the redacted information, which Purdue has invested significantly to acquire, could harm Purdue and give competitors an advantage by providing them with such information at no cost.  (J. Lowne Decl. ¶ 12.)  Courts routinely protect such information from disclosure.  *See, e.g.*, *Verde Env't Techs., Inc. v. C2R Glob. Mfg.*  (*In re C2R Glob. Mfg.*), No. 18-30182-BEH, 2020 WL 7265867, at *3 (Bankr. E.D. Wis. Dec. 10, 2020) (sealing research and development information because it contained "confidential information regarding the design, development, and testing" of the debtor's product); *see also Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 185 F.3d 898, 905 (D.C. Cir. 1999) (in the FOIA context, holding that disclosure of research and development data submitted in connection with a

---

107).  Moreover, five documents contain redactions for privileged material that was inadvertently produced.  (J. Lowne Decl. ¶ 5 n.3.)

new drug application to the FDA "would cause substantial harm to [the drug maker's]

competitive position"); *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d

184, 191 (D.D.C. 2012) (protecting, in the FOIA context, "safety and effectiveness information

obtained through preliminary trials").  Research and development information also falls squarely

within the express ambit of the protections afforded by section 107.  *See* 11 U.S.C. § 107(b)(1)

(The bankruptcy court "shall . . . protect an entity with respect to . . . confidential research,

development, or commercial information.").

        14.    Second, the Debtors have redacted certain information related to

authorized generic drugs and financial information concerning various discounts, fees, and

rebates that are part of net sales.  An authorized generic drug is a drug manufactured and sold

pursuant to the brand's new drug approval but without using the brand's trademark.  (J. Lowne

Decl. ¶ 13.)  Release of information concerning a company's authorized generics, and its strategy

surrounding them, could cause harm to the company and advantage competitors, particularly

those seeking to introduce generic products.  (J. Lowne Decl. ¶ 13.)  Similarly, financial

information concerning various discounts, fees, and rebates is proprietary information, the

release of which may advantage competitors and future counterparties in patent dispute

negotiations with the Debtors.  (J. Lowne Decl. ¶ 13.)  This information is appropriately

redacted.  *See, e.g.*, *In re Dreier LLP*, 485 B.R. at 823-24 (protecting information reflecting

strategic decision making); *see also In re Orion Pictures Corp.*, 21 F.3d at 28 (affirming sealing

order of nonpublic licensing agreement).

        15.    Third, the Debtors have redacted information related to patent settlements

and agreements.  These agreements are generally subject to confidentiality provisions and are

highly commercially sensitive in the pharmaceutical space.  (J. Lowne Decl. ¶ 14.)  As set forth

10

in Mr. Lowne's accompanying declaration, patents and other protections of a pharmaceutical

company's intellectual property are critically important in the pharmaceutical industry, and

litigation is common.  (J. Lowne Decl. ¶ 14.)  Disclosure of information related to settlement of

intellectual property disputes—including but not limited to terms of any licenses or distribution

and supply agreements for authorized generics—would provide competitors of both the Debtors,

and third parties Debtors have settled, with key insight into the Debtors' and such third parties'

strategy and business and confer upon them an unfair advantage in competing with the Debtors

or such third parties.  (J. Lowne Decl. ¶ 14.)  Such information would make it not only more

difficult to resolve pending and future patent litigations on terms favorable to the Debtors, but

could also provide competitors with information they could use to craft competitive strategies

vis-à-vis the Debtors.  (J. Lowne Decl. ¶ 14.)  This information is appropriately protected.  *See

UCP Int'l Co. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 985 (N.D. Cal. 2019) (sealing a

patent settlement agreement between the parties "because of the potential harm that could befall

[a party] if competitors or future opposing parties had access to the specific terms on which it

settled").

16.     Fourth, the Debtors have proposed redactions that relate to third-party

business partners, insurance settlements, compounds, projects, collaborations, licenses, and third-

party financial ratings information that are, or are likely to be, subject to confidentiality

agreements. (J. Lowne Decl. ¶ 7, 15.)  This information should remain sealed.  In the

pharmaceutical industry, maintaining business information that is subject to confidentiality

agreements in confidence is of paramount importance, not only for preserving productive

relationships with current business partners, but also for developing relationships with future

business partners.  (J. Lowne Decl. ¶ 7, 15.)  Disclosure of such information would therefore risk

11

harm to the Debtors' business interests. Accordingly, this information is entitled to protection. *See In re Altegrity, Inc.*, 2015 WL 10963572, at *2 (sealing identities of key customers and independent contractors where debtors kept identities confidential in the ordinary course pursuant to confidentiality agreements).

17.     Fifth, the materials at issue also include limited redactions to assessments of current products and certain internal and relatively recent assessments of potential loss of patent exclusivity for certain products. (J. Lowne Decl. ¶ 16.) In the pharmaceutical industry, a significant portion of an innovative product's commercial value is usually realized during the period in which the product has market exclusivity. (J. Lowne Decl. ¶ 16.). As explained by Mr. Lowne, this is generally determined by patent rights and regulatory forms of exclusivity to which the product is entitled. (J. Lowne Decl. ¶ 16.) Loss of exclusivity is impossible to predict with certainty and is an internal prediction used for business planning purposes. (J. Lowne Decl. ¶ 16.) Estimates require careful consideration of a number of complex factors, and Purdue maintains these estimates in confidence. (J. Lowne Decl. ¶ 16.) Disclosure of the redacted information would provide competitors with knowledge of the Debtors' strategies and views and allow them to craft strategies based on this information. (J. Lowne Decl. ¶ 16.) Like other information discussed above and below, this information too must be protected. *See* paragraphs 14, 18, herein.

18.     Finally, the Debtors have proposed redactions to a May 2017 memorandum by Purdue Pharma's current Chief Executive Officer setting forth his assessment of business challenges facing the pharmaceutical businesses owned indirectly by members of the Sackler Families, including Purdue Pharma L.P., and potential strategy and solutions moving forward (the "**2017 Strategy Memo**"). (J. Lowne Decl. ¶ 8.) Release of a relatively recent

memorandum of the Debtors' current Chief Executive Officer risks giving competitors an

advantage over the Debtors by providing those competitors with insight into the Debtors' current

strategic priorities and potential business plans.  (J. Lowne Decl. ¶ 8.)  This information lies at

the core of section 107(b)(1)'s protection, and therefore is entitled to be sealed.  *See, e.g.*, *In re*

*Dreier LLP*, 485 B.R. at 823 (holding that employee's testimony about how investment decisions

are made and investments are structured, even though "general," was CCI because it "involve[d]

the type of strategic decision making that could rightly be categorized as commercial

information" (internal quotation marks omitted)).[12]

## NO PRIOR REQUEST

19.    No previous request for the relief sought herein has been made by the

Debtors to this Court or any other court.

## NOTICE

20.    Notice of this Motion will be provided to (a) the entities on the Master

Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case*

*Management, and Administrative Procedures* entered on November 18, 2019 [Dkt. No. 498] and

---

[12] In addition to the foregoing proposed redactions to protect the Debtors' CCI and PII, the Debtors have continued to withhold in full 13 exhibits containing excerpts of privilege logs and other related privilege log information.  These materials, which are lawyer-created documents that reflect a substantial amount of irrelevant information regarding company communications, do not constitute evidence, and therefore do not give rise to the same interest in public access to judicial documents as do the Debtors' underlying documents.  *See Old Republic Ins. Co. v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, No. 03 C 5238, 2006 WL 3782994, at *13 (N.D. Ill. Dec. 21, 2006) ("[T]he privilege log itself is not evidence; rather, the document named in the privilege log is the evidence."); *see also Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (holding that materials submitted in connection with discovery motions are subject to lesser presumption of public access).  Importantly, the UCC has informed the Debtors that it does not seek public disclosure of certain excerpts of privilege logs, *see* Letter from M. Hurley to B. Kaminetzky et al., dated Nov. 30, 2020, and the Raymond Sackler Family actively opposes disclosure of such documents, *see* Statement of the Raymond Sackler Family in Respect of the Motion [ECF No. 2132] at 6.

available on the Debtors' restructuring case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this Motion. The Debtors respectfully submit that no further notice is required.

## CONCLUSION

21.    For all of the foregoing reasons, the Debtors respectfully request that this Court sustain the Debtors' limited objection to the Media Intervenors' Motions and grant the Debtors' Cross-Motion for an order authorizing the sealing of the Debtors' Sealed Documents.

Dated:   January 11, 2020
         New York, New York

By: */s/ Benjamin S. Kaminetzky*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:    (212) 450-4000
Facsimile:    (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors*
*and Debtors in Possession*

14