DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**DECLARATION OF JON LOWNE
IN SUPPORT OF THE DEBTORS' LIMITED OBJECTION
TO THE MEDIA INTERVENORS' MOTIONS TO INTERVENE**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**INTRODUCTION**

1. I am the Executive Vice President, Chief Financial Officer of Purdue Pharma L.P. ("**PPLP**" and, collectively with each of the other above-captioned debtors, the "**Debtors**," the "**Company**" or "**Purdue**"). I was first employed by Purdue as Senior Internal Auditor in 1995 and gained increasing responsibility in the Company's finance team over time, including as Controller from 2005 to July 2017, and then as Acting Chief Financial Officer from August 2017 to February 2018. Since March 2018, I have been the Chief Financial Officer of PPLP. I am familiar with the day-to-day operations, business, and financial affairs of the Debtors.

2. I make this declaration (the "**Declaration**") in support of the Debtors' Limited Objection to the Media Intervenors' Motions to Intervene (the "**Objection**"), filed contemporaneously herewith.[2]

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of a sample of relevant documents, information provided to me by counsel or Purdue employees, or my opinion based upon experience, knowledge and information concerning the operations of the Debtors and the pharmaceutical industry as a whole. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. I have been advised that the Media Intervenors seek to unseal over 13,500 pages of material that consist of 543 exhibits and 14 briefs and declarations filed by the Debtors and other parties in connection with the Official Committee of Unsecured Creditors' privileges motions [Dkt. Nos. 1752, 1753, 1754] (the "**UCC Privileges Motions**"). I understand that the parties agreed to further group this material into four separate general categories or tranches as part of an

---

[2] All capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.

effort to establish an orderly process to review and evaluate the materials at issue, expeditiously file on the public docket the information that no party contends should remain under seal, and sharpen and narrow any issues that require the Court's resolution.

5.    I have generally familiarized myself with the categories of documents at issue, some of which contain confidential research, development, and commercial information of Purdue and third parties such as Purdue's business partners.[3]  I have further reviewed samples of redactions made by Purdue to protect such information and discussed the process of reviewing and redacting the material at issue with relevant Purdue employees.  For ease of reference, I will address each tranche of material in turn.

### TRANCHE ONE

6.    The Tranche One materials are approximately 6,250 pages that consist of 339 documents and include:  (1) briefs; (2) declarations; (3) deposition transcripts and excerpts; (4) discovery letters and similar communications among counsel; (5) court documents from these chapter 11 cases and prior litigation; (6) emails; (7) presentations made by the Sackler Families; (8) certain documents concerning trusts and distributions; (9) certain settlement agreements; (10) law review and journal articles; (11) discovery privilege logs and related material; and (12) approximately 140 pages of a presentation made by the Raymond Sackler Family, dated December 2019.  I am informed by counsel that the overwhelming majority of these documents were filed on

---

[3] I also understand that the documents at issue Tranches One, Two, Three, and Four contain personally identifiable information ("**PII**") that has been redacted, including addresses, phone numbers, email addresses, names of assistants or secretaries or low-level analysts, references to individuals' medical conditions, employee pictures, and in one instance non-Purdue aspects of an individual's detailed resume.  I understand a further five documents contain redactions for privileged material that was inadvertently produced.

the public docket by the parties on December 18, 2020 with either no redactions or only limited redactions of PII.

7.  With the exception of discovery privilege logs and a handful of related materials, which remain sealed in full, 13 documents were filed by the parties on December 18, 2020 with redactions proposed by the Debtors to protect confidential commercial information. In the intervening time, the Debtors have re-evaluated some of those materials and, at the request of the UCC, counsel for the Debtors reached out to one third party from which the Debtors purchased certain data to obtain permission to remove targeted redactions from such data. As a result of those efforts, the Debtors have removed all of their proposed redactions for confidential commercial information from 6 documents and certain redactions from others. I understand that counsel for the Debtors have further informed the parties they may publicly file revised materials.

8.  There are 7 documents remaining in Tranche One to which the Debtors have proposed redactions to protect confidential commercial information—in all but one instance only a few words or sentences in relatively lengthy documents. These include (1) certain redactions related to third party business partners, insurance settlements, compounds, and projects that I have been advised are subject to confidentiality agreements or are of the type that, in the ordinary course, would likely be subject to confidentiality agreements, although in the time allotted the Debtors may not have located the relevant agreements for some of the documents; (2) redactions to patent settlement information; (3) redactions to certain third party financial rating information that I have been advised are subject to confidentiality agreements; and (4) redactions to a May 2017 memorandum by Purdue Pharma's current Chief Executive Officer setting forth his assessment of business challenges facing the pharmaceutical businesses owned indirectly by members of the Sackler Families, including Purdue Pharma L.P., and potential strategy and solutions moving

forward. Public disclosure of this information would harm the Debtors and advantage competitors. For example, in the pharmaceutical industry, maintaining in confidence business information subject to confidentiality agreements is important not just to maintaining productive relationships with current business partners but also to developing relationships with future business partners. Further, release of a relatively recent memorandum of the Debtors' current Chief Executive Officer may give competitors an advantage over Purdue by providing those competitors with insight into Purdue's strategic priorities and potential business plans. The minimal redactions proposed by Purdue to the Tranche One materials are important to protecting the Debtors' business interests and avoiding competitive harm to such interests.

## TRANCHE TWO

9.      The Tranche Two materials are approximately 900 pages that consist of 56 presentations, reports, correspondence, and related documents concerning the Debtors' compliance program. I understand that 47 of these documents were filed on the public docket on December 21, 2020 without redaction, and the remaining 9 documents were filed with only minor redaction for PII-related information.

## TRANCHE THREE

10.     The Tranche Three materials, which I understand will be filed by the parties contemporaneously or nearly contemporaneously with my declaration on the docket on January 11, 2021, are approximately 5,300 pages that consist of 76 documents that can be generally grouped into the following high-level categories: (1) audited financial statements, financial presentations, financial ratings material, and documents related to the foregoing; (2) detailed budgetary materials; (3) compiled board decisions and minutes; (4) materials related to licensing and M&A; (5) quarterly reports delivered to the board of directors of Purdue Pharma

L.P.; (6) miscellaneous board and management reports; and (7) risk reports related to the business. Among the four tranches of materials, the Tranche Three documents are on the whole the most lengthy—with many over 100 pages long and several totaling many hundreds of pages each—and are those that touch most directly on core aspects of the Debtors' business. In the ordinary course of business, the Debtors have treated these materials as confidential, and these are types of materials that, aside from reporting obligations imposed by law, companies routinely treat confidentially to protect their business interests and protect against competitive harm.

11. The Debtors proposed no redactions to 24 of the documents. Two ratings documents from Standard & Poor's Rating Services and one ratings document from Moody's Investor Services will be withheld in full pursuant to confidentiality agreements, and two documents contain only redactions for privileged material that was inadvertently produced. The remaining 47 documents in the Tranche Three materials contain narrowly tailored redactions to protect commercially sensitive information, including certain research and development information, the release of which would cause harm to the Debtors and/or give competitors an unfair advantage. Given the nature and breadth of the materials, the Debtors' proposed redactions are necessarily varied such that it is not feasible to describe every single one. However, the vast majority of Purdue's proposed redactions fall into a number of general categories described below.

12. For example, the Debtors have redacted certain confidential research and development information. The redacted information includes but is not limited to certain descriptions and assessments of molecules and other compounds as well as research and development projects, including with third party partners. Research and development is at the core of a pharmaceutical business and its strategic decision-making. It is critical to the stability and success of pharmaceutical companies as well as their competitiveness. Release of the redacted

information, which Purdue has invested significantly to develop or acquire, could harm Purdue and give competitors an advantage by providing them with such information at no cost.

13. The Debtors have also redacted certain information related to authorized generic drugs and financial information concerning various discounts, fees, and rebates that are part of net sales. An authorized generic drug is a drug manufactured and sold pursuant to the brand's new drug approval but without using the brand's trademark. Release of certain information concerning a company's authorized generics and strategy could cause harm to the company and advantage competitors seeking to introduce generic products. Similarly, financial information concerning various discounts, fees, and rebates is proprietary information, the release of which may advantage competitors and future counterparties in patent dispute negotiations with the Debtors.

14. The Debtors have proposed certain redactions related to patent settlements and agreements. In addition to often being subject to confidentiality clauses, patent settlements are highly commercially sensitive. Patents that protect a pharmaceutical company's intellectual property are of paramount importance in the pharmaceutical industry, and litigation and/or disputes concerning patents and intellectual property are common. Though the Debtors have settled some patent litigation matters, there is ongoing patent litigation and may be future patent litigation. Disclosure of information related to the settlement of patent disputes—including but not limited to terms of any licenses or distribution and supply agreements for authorized generics—would provide competitors of both the Debtors (and third parties the Debtors have settled with) with key insight into the Debtors' and such third parties' strategy and business and confer upon them an unfair advantage in competing with the Debtors or such third parties. Disclosure of terms, strategy, and other information with respect to patent settlements would make it more difficult for the Debtors to settle currently pending and future patent litigations. The Debtors would be prejudiced

if competitors had inside knowledge of the specific terms of settlement agreements and would be able to negotiate with the Debtors with the benefit of such knowledge. In fact, even absent settlement, potential competitors would be able to craft competitive strategies that take advantage of access to confidential Debtor documents.

15. Additional redactions in the Tranche Three materials relate to third party business partners, insurance settlements, compounds, projects, collaborations and licenses that I have been advised are subject to confidentiality agreements or are of the type that, in the ordinary course, would likely be subject to confidentiality agreements, although in the time allotted the Debtors may not have located the relevant agreements for some of the documents. Agreements to maintain information in confidence are routine in the pharmaceutical industry. Failing to maintain confidentiality expected by the Debtors' business partners and counterparties would not only harm existing relationships but also may impede the Debtors' ability to collaborate in the future and therefore harm the business, thus conferring an advantage upon competitors. In addition, disclosure of the structure, terms, and conditions of confidential ventures may advantage future counterparties in negotiations with the Debtors.

16. The Tranche Three materials also include very limited redactions to assessments of current products and certain internal and relatively recent assessments of potential loss of exclusivity for certain products. In the pharmaceutical industry, a significant portion of an innovative product's commercial value is usually realized during the period in which the product has market exclusivity. This is generally determined by the duration and scope of patent rights and regulatory exclusivity to which the product is entitled. Though the dates of patent and regulatory data exclusivity expirations are publicly known, loss of exclusivity is an internal prediction used for business planning purposes. Loss of exclusivity is impossible to predict with

certainty, and estimates, which Purdue maintains in confidence, require a careful assessment of a number of factors. Disclosure of loss of exclusivity predictions would make it more difficult for the Debtors to settle currently pending and future patent litigations. Moreover, disclosure of these assessments would provide competitors with inside knowledge of the Debtors' strategies and views and would enable them to craft competitive strategies that take advantage of this knowledge while Debtors would be left in the dark about its competitors' strategies.

## TRANCHE FOUR

17. Tranche Four, which I understand will be filed by the parties contemporaneously or nearly contemporaneously with my declaration on the docket on January 11, 2021, are approximately 1,200 pages that consist of 86 exhibits filed with the Sackler Families' sur-replies filed on December 9, 2020. The exhibits to the sur-replies can be broadly grouped into the following sixteen categories, many of which overlap with those categories of materials found in prior tranches: (1) compliance reports and presentations, (2) court documents from the MDL and prior litigation, (3) deposition transcripts and excerpts, (4) discovery letters and communications between counsel in the Chapter 11 Cases, (5) emails, (6) government correspondence, (7) Sackler presentations in the Chapter 11 Cases, (8) documents concerning trusts or distributions, (9) settlement agreements, (10) audited financials, financial statements, presentations, and ratings, (11) budgetary materials, (12) compiled board decisions and minutes, (13) miscellaneous board and management reports, (14) internal ADD documents, (15) Purdue promotional materials, and (16) miscellaneous documents.

18. I understand that 48 of the 86 exhibits in Tranche Four will be released without any redaction proposed by the Debtors, and that 26 will be released with only PII redactions. One exhibit contains only redactions for privileged material that was inadvertently produced. The

remaining 11 exhibits contain tailored redactions that are generally consistent with those contained in the Tranche Three materials.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed:   January 11, 2021

By:   */s/ Jon Lowne*
Jon Lowne
Executive Vice President,
Chief Financial Officer
Purdue Pharma L.P.