DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut
Marc J. Tobak

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**DEBTORS' REPLY IN SUPPORT OF THE MOTION FOR
AN ORDER APPROVING STIPULATION GRANTING JOINT STANDING
TO PROSECUTE CLAIMS AND CAUSES OF ACTION RELATED TO THE
DEBTORS' INSURANCE COVERAGE TO (1) THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS AND (2) THE AD HOC COMMITTEE OF
GOVERNMENTAL AND OTHER CONTINGENT LITIGATION CLAIMANTS**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.      The Proposed Insurance Stipulation Should Be Approved Under *Housecraft* Because It Is in the Best Interests of the Estates ......................3

          A.     Binding Second Circuit Precedent Supports the Grant of Joint Standing to the Committees. ............................................................3

          B.     The Proposed Insurance Stipulation Is in the Best Interests of the Estates. ...............................................................................................10

    II.     TIG's Attempt to Insert Its Lift Stay Motion Here Is Improper and Baseless ................................................................................................14

CONCLUSION ..............................................................................................................................16

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Adelphia Commc'ns Corp. v. Bank of Am., N.A., (In re Adelphia Commc'ns Corp.)*,
  330 B.R. 364 (Bankr. S.D.N.Y. 2005) ............................................................................. 9, 14

*Beskrone v. OpenGate Capital Grp.* (*In re Pennysaver USA Publ'g, LLC*),
  587 B.R. 445 (Bankr. D. Del. 201) .................................................................................... 6

*Catholic Bishop of N. Alaska v. Cont'l Ins. Co. (In re Catholic Bishop of N. Alaska)*,
  No. F08-001010-DMD, Adv. Pro. No. F08-90019-DMD,
  2009 WL 8446700 (Bankr. D. Alaska Mar. 25, 2009) ...................................................... 10

*Claridge Assocs., LLC v. Schepis* (*In re Pursuit Capital Mgmt., LLC*),
  595 B.R. 631 (Bankr. D. Del. 2018) ................................................................................... 8

*Cohen v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA (In re Cnty. Seat Stores, Inc.)*,
  No. 01 Civ. 2966 (JGK), 2002 WL 141875 (S.D.N.Y. Jan. 31, 2002) .................................. 7

*Commodore Int'l v. Gould* (*In re Commodore Int'l Ltd.*),
  262 F.3d 96 (2d Cir. 2001) ................................................................................................. 3

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'shp. I*,
  No. 15-cv-3474, 2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015) .......................................... 10

*In re Dura Auto. Sys., LLC*,
  No. 19-12378 (Bankr. D. Del. June 10, 2020), Hr'g Tr. Dkt. No. 1115 ................................ 5

*Gavin/Solmonese LLC v. Citadel Energy Partners, LLC* (*In re Citadel Watford City
Disposal Partners, L.P.*),
  603 B.R. 897 (Bankr. D. Del. 2019) ................................................................................... 6

*Glinka v. Murad* (*In re Housecraft Indus. USA, Inc.*),
  310 F.3d 64 (2d Cir. 2002) ...................................................................................... 3, 4, 6, 10

*In re K.G. IM, LLC*,
  620 B.R. 469 (Bankr. S.D.N.Y. 2020) ................................................................................ 8

*In re Marin Motor Oil*,
  689 F.2d 445 (3d Cir. 1982) ............................................................................................... 8

*In re The McClatchy Co.*,
　No. 20-10418 (Bankr. S.D.N.Y. July 6, 2020), Hr'g Tr., Dkt. No. 641 ............................ 5, 6, 7

*Off. Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*,
　No. 01 Civ. 8539 (RWS), 2003 WL 22790916 (S.D.N.Y. Nov. 25, 2003) ............................. 8

*Off. Comm. of Equity Sec. Holders v. Adelphia Commc'ns Corp.* (*In re Adelphia Commc'ns Corp.*),
　371 B.R. 660 (S.D.N.Y. 2007) ............................................................................. 5

*Off. Comm. of Unsecured Creditors v. Chinery* (*In re Cybergenics Corp.*),
　330 F.3d 548 (3d Cir. 2003) ............................................................................. 5

*Off. Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC* (*In re HH Liquidation, LLC*),
　590 B.R. 211 (Bankr. D. Del. 2018) ...................................................................... 6

*Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*),
　4 F.3d 1095 (2d Cir. 1993) ............................................................................... 8

*Phar-Mor, Inc. v. Coopers & Lybrand*,
　22 F.3d 1228 (3d Cir. 1994) .............................................................................. 8

*Sonnax Indus. v. Tri Component Prods. Corp.* (*In re Sonnax Indus.*),
　907 F.2d 1280 (2d Cir. 1990) ............................................................................. 8

*Unsecured Creditors of Comm. of Debtor STN Enters., Inc. v. Noyes* (*In re STN Enters.*),
　779 F.2d 901 (2d Cir. 1985) .............................................................................. 3

*Term Loan Holder Comm. v. Ozer Grp., L.L.C.* (*In re The Caldor Corp.*),
　303 F.3d 161 (2d Cir. 2002) .............................................................................. 8

## STATUTES & RULES

11 U.S.C. § 363(b) ............................................................................................ 7
11 U.S.C. § 1109(b) ..................................................................................... 2, 8, 9

## OTHER AUTHORITIES

7 Collier on Bankruptcy ¶ 1109.04[1][a][i] (15th ed. Rev. 2001) ............................. 8, 9

iii

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, "**Debtors**," "**Company**," or "**Purdue**") hereby submit this reply ("**Reply**") in further support of their *Motion for an Order Approving Stipulation Granting Joint Standing to Prosecute Claims and Causes of Action Related to the Debtors' Insurance Coverage to (1) the Official Committee of Unsecured Creditors and (2) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants* [Dkt. No. 2227] (the "**Motion**" or "**Mot.**"; and the underlying stipulation, the "**Proposed Insurance Stipulation**" or "**Stipulation**")[2] and in response to *Ironshore Specialty Insurance Company's, Formerly Known as TIG Specialty Insurance Company, Objection to Debtors' Motion for an Order Approving Stipulation* [Dkt. No. 2281] (the "**Objection**" or "**Obj.**") filed by Ironshore Specialty Insurance Company, formerly known as TIG Specialty Insurance Company ("**TIG**"), in response thereto. The Official Committee and the Ad Hoc Committee (together, the "**Committees**") support the relief requested in the Motion and this Reply. The Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  There is only a single question before the Court: Is the Proposed Insurance Stipulation in the best interests of the estates? TIG's Objection removes any doubt that the answer is yes.

2.  As described in the Motion, the Proposed Insurance Stipulation arose from a recognition by the Debtors and the Committees that collaborating to pursue the estates' critically important insurance assets and agreeing in advance to a division of labor in connection with the Debtors' Insurance Causes of Action would increase the value of the Debtors' Insurance for all stakeholders. (*See* Mot. ¶¶ 17-19.) As a result of this consensus among two estate fiduciaries

---

[2] Except where otherwise indicated, capitalized terms used but not defined in this Reply have the meanings ascribed to them in the Motion.

and a committee whose members hold or represent the interests of a substantial number and amount of the claims against the Debtors, the Debtors agreed—as any debtor is entitled to do—to allow the Committees to participate jointly with the Debtors in the prosecution of the Debtors' Insurance Causes of Action consistent with *Housecraft* and its progeny. The Ad Hoc Group of Non-Consenting States, recognizing the benefits of this arrangement, has filed a statement supporting this endeavor.[3] And not a single one of the creditors who have filed over 600,000 proofs of claim in these cases asserting over $140 trillion of liability disagrees with the path contemplated by the Motion. Tellingly, the only objector is TIG—an insurer whose insurance coverage is at issue, who is seeking to derail efforts to maximize the Debtors' insurance recovery for the benefit of the estates, and an entity to which neither the Debtors nor the Official Committee owes any fiduciary duties.

3.  TIG's Objection boils down to three erroneous propositions that do not withstand scrutiny: (i) the Court should ignore binding Second Circuit precedent regarding *Housecraft* standing (and, although not applicable here, intervention under 11 U.S.C. § 1109(b)) in favor of weaving together inapposite, out-of-circuit precedent on irrelevant issues of intervention and state law; (ii) TIG's judgment regarding the estates' best interest should supersede that of the estates' fiduciaries and the Ad Hoc Committee; and (iii) the Court should revisit TIG's lift-stay motion from over a year ago, which is not properly before this Court at this time and remains not ripe for decision. None of these unsupportable positions moves the needle even slightly in TIG's favor.

---

[3] (*See* The Ad Hoc Grp. of Non-Consenting States' Statement in Supp. of Debtors' Mot. to Approve Stip. Granting Joint Standing to Prosecute Claims & Causes of Action Related to the Debtors' Ins. Coverage to (1) the Official Comm. of Unsecured Creditors & (2) the Ad Hoc Comm. of Governmental & Other Contingent Litig. Claimants (Jan. 16, 2021), Dkt. No. 2289.)

4.  Rather, TIG objects to the Proposed Insurance Stipulation for the very reason it should be approved: The benefit to the estates from maximizing the Debtors' Insurance is to the detriment of TIG, and so TIG objects to any streamlining and coordination of that process. Accordingly, and for the reasons set forth in further detail below, the Objection should be overruled and the Motion granted.

## ARGUMENT

**I. The Proposed Insurance Stipulation Should Be Approved Under *Housecraft* Because It Is in the Best Interests of the Estates**

**A. Binding Second Circuit Precedent Supports the Grant of Joint Standing to the Committees.**

5.  The Debtors and the Committees ask this Court to authorize their arrangement under federal bankruptcy law, as articulated in the "*STN* Trilogy" of *Unsecured Creditors Committee of Debtor Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901 (2d Cir. 1985) ("***STN***"), *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96 (2d Cir. 2001) ("***Commodore***"), and *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64 (2d Cir. 2002) ("***Housecraft***"), which governs derivative standing in the Second Circuit.[4] *Housecraft* confirmed that a debtor in possession may consensually request that the court vest a committee or creditor with joint standing to pursue an estate cause of action alongside the debtor in possession when doing so is (a) in the best interest of the bankruptcy estate and (b) "necessary and beneficial" to the fair and efficient resolution of the case, and emphasized that a debtor's

---

[4] *STN* held that an official committee may seek and obtain standing to pursue "in the name of the debtor in possession" estate claims that such debtor's management have unjustifiably refused to pursue. While *STN* standing is a sort of equitable simulacrum of demand rights and derivative actions available to other stakeholders under various state laws, it is a creation of <u>federal</u> law and does not rely on the existence of a state-law right to sue. *See* 779 F.2d at 904. *Commodore* went further, noting that, outside of the demand-futility framework, a debtor may consent to the prosecution of its causes of action by a committee so long as suit by the committee is (a) in the best interest of the bankruptcy estate and (b) "necessary and beneficial" to the fair and efficient resolution of the case. 262 F.3d at 100.

3

consent to such an arrangement renders the request for creditor standing "all the more compelling." *In re Housecraft Indus. USA*, 310 F.3d at 70-71 ("The case for recognition of creditor standing is more compelling . . . because the Trustee is also a named plaintiff [and] any [challenge to the Trustee's standing] would be meritless.").

6. TIG's Objection fundamentally misunderstands the *Housecraft* standard and the relief sought by the Motion. TIG first argues that "under applicable Delaware and New York law, the Committees do not have standing to pursue insurance claims." (Obj. at 4.) Even if true, this is a red herring: the Committees do not contend that they currently have standing to pursue the Debtors' Insurance Causes of Action independent of the Debtors. If they did, the Motion would be unnecessary—the Committees could simply sue in their own right, without obtaining consent from the Debtors or seeking leave of the Court. (*Cf.* Mot. ¶ 15.)

7. TIG's next argument—that "applicable Delaware and New York law preclude[] the grant of standing to any party other than the insured" (Obj. at 5)—likewise misses the mark. Federal bankruptcy law, not state law, governs who will get to bring suit against an insurer on behalf of the insured's successor—Purdue's estates. The Stipulation answers that question consensually by assigning roles to the Debtors (as a fiduciary for all parties in these Chapter 11 Cases), the Official Committee (as a fiduciary for all creditors in these Chapter 11 Cases), and the Ad Hoc Committee (as a representative body on behalf of the interests of holders of a substantial number and amount of claims against the Debtors). Before filing for bankruptcy, Purdue, as the insured, had the right to pursue these claims. This TIG does not dispute. Now, after filing for bankruptcy, these claims became part of Purdue's estates, and federal bankruptcy law dictates who may assert these claims on behalf of the estates. And the question of whether the Committees should be conferred joint standing to assert estate claims alongside Purdue

4

likewise is "a matter of federal bankruptcy law that is governed by [these] decisions, not by . . . state law." July 6, 2020 Hr'g Tr. 31:11-13, *In re The McClatchy Co.*, No. 20-10418 (Bankr. S.D.N.Y. 2020), Dkt. No. 641 ("**McClatchy Tr.**"). It is "[f]ederal Bankruptcy law and [this Court's] orders, and not state law, [that] determine who may speak for the estate in this bankruptcy case." *Id.* at 31:7-9.[5] TIG's argument that the Committees could not obtain the right to sue under state law, even if correct, is thus entirely irrelevant.[6]

8.  To the extent that TIG argues that alleged limitations on grants of derivative standing under state law should somehow constrain the application of federal bankruptcy law, this argument also fails. (*See* Obj. at 6-9.) TIG cites <u>no</u> authority from the Second Circuit holding that state-law limitations on "derivative" standing constrain a bankruptcy court's grant of *Housecraft* standing. And for good reason: importing state-law standing limitations into *Housecraft* standing would fundamentally undermine the purposes of the Second Circuit's standing doctrine. The courts in two of the Delaware cases TIG cites concluded that an official

---

[5] To the extent that the Bankruptcy Court for the District of Delaware in *In re Dura Automotive Systems, LLC*, No. 19-12378 (Bankr. D. Del. June 10, 2020), Dkt. No. 1115, seems to have reached an opposite conclusion, that case applies the Third Circuit's derivative standing scheme, set out in *Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 330 F.3d 548, 572 (3d Cir. 2003), which does not contain an analogue for *Commodore* and *Housecraft*. *Cf. Off. Comm. of Equity Sec. Holders v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 371 B.R. 660, 671 (S.D.N.Y. 2007) ("The Second Circuit has emphasized the difference between a debtor-in-possession whose conduct is unjustifiable or unreasonable (an *STN* situation), and a debtor-in-possession whose conduct is 'less likely antithetical to the interests of the estate' (a *Smart World*, *Commodore* or *Housecraft* situation)."). In addition, the applicability of Delaware cases like (if not including) *Dura* was expressly disclaimed by Judge Wiles in *In re The McClatchy Co.* less than a month later. *See McClatchy* Tr. 31:9-13 ("I am aware that there may be decisions in Delaware that go both ways on this point, but I think the better view is [that] [t]his motion is a matter of federal bankruptcy law that is governed by *STN* and other decisions, not by Delaware State law.").

[6] TIG's additional argument that an injured party's rights in connection with a direct action against an insurer are no greater than the insured's rights (Obj. at 9) is, even if true, likewise misplaced: the joint standing that the Debtors seek to afford the Committees is to pursue claims of the Debtors' estates, which necessarily does not give the Committees rights that are greater than those of the Debtors.

5

committee of unsecured creditors could not maintain a claim for breach of fiduciary duty on behalf of a debtor because a committee is a "collection of unsecured creditors" whose "derivative claims are limited to the derivative standing of its members." *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 284 (Bankr. D. Del. 2018) (explaining that committee was a "collection of unsecured creditors" and that creditors cannot pursue derivative claims on behalf of a Delaware LLC); *Gavin/Solmonese LLC v. Citadel Energy Partners, LLC (In re Citadel Watford City Disposal Partners, L.P.)*, 603 B.R. 897, 904-05 (Bankr. D. Del. 2019) (same, citing *HH Liquidation*). Under Second Circuit precedent, however, a creditor vested with *Housecraft* standing does not sue in its capacity as a creditor but rather jointly exercises the power of a trustee or debtor in possession to prosecute estate claims. *See In re Housecraft Indus. USA*, 310 F.3d at 70-71. This is fatal to TIG's argument, as even the cases upon which TIG relies acknowledge the difference between pursuing a derivative claim on behalf of creditors and exercising the power of a trustee or debtor in possession. In the *Pennysaver* case, for example, the court carefully distinguished between claims that a Chapter 7 trustee sought to bring on behalf of the <u>debtors</u>, which the court adjudicated on the merits, and the claims that the Chapter 7 trustee sought to bring on behalf of <u>creditors</u>, which the court dismissed for lack of standing. *See Beskrone v. OpenGate Capital Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 463-66 (Bankr. D. Del. 2018) (addressing merits of trustee's claim for breach of fiduciary duty to debtors); *id.* at 466-67 (dismissing trustee's claim for breach of fiduciary duty to creditors). Indeed, courts in this District have rejected this interpretation of and reliance upon Delaware state law when assessing *STN* standing. *See, e.g.*, *McClatchy* Tr. 31:9-13 ("I am aware that there may be decisions in Delaware that go both ways on this point, but I think the better view is [that]

6

[t]his motion is a matter of federal bankruptcy law that is governed by STN and other decisions, not by Delaware State law."). The Debtors and the Committees certainly agree with the *McClatchy* court that Delaware law has no impact on the rights of a debtor in this Court to assign or otherwise share claims that comprise estate property.

9. That New York insurance law limits the circumstances in which an injured party can maintain an action against a tortfeasor's insurer—as TIG argues (Obj. at 7-8)—is even further afield and of even less relevance. The Committees do not seek to bring claims in their own right—for the Committees themselves are not injured parties, but representative and fiduciary bodies established for the purposes of these Chapter 11 Cases—or on behalf of parties that have asserted claims against the Debtors. Accordingly, notwithstanding direct-action statutes like that in New York, this and other bankruptcy courts permit claimant committees to participate in adversary proceedings and pursue the Debtors' insurance rights. *See, e.g.*, Second Am. Compl., *Rapid-Am. Corp. v. Travelers Cas. & Surety Ins. Co. (In re Rapid-Am. Corp.)*, No. 13-10687, Adv. Pro. 15-01095 (S.D.N.Y. Bankr July 25, 2015), Dkt. No 26 (claimant committee participated as co-plaintiff in adversary proceeding concerning Debtors' insurance asset); *Cohen v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA (In re Cnty. Seat Stores, Inc.)*, No. 01 Civ. 2966 (JGK), 2002 WL 141875, at *7 (S.D.N.Y. Jan. 31, 2002) (permitting an unsecured creditors committee to join a debtor as a co-plaintiff in an insurance coverage action).

10. The rights of derivative standing or direct action that state law grants or does not grant to individual creditors are irrelevant to the *Housecraft* standard, which relies on two uncontroversial premises: (i) the Debtors have a statutory right under 11 U.S.C. § 363(b) to use and dispose of their assets, including litigation assets; and (ii) the Committees have the right to appear and be heard in connection with litigation. On the first point, it is clear from the text of

the Bankruptcy Code that, subject to this Court's review of the Debtors' business judgment, the Debtors may use their estate property—including litigation assets—as they see fit. *See In re K.G. IM, LLC*, 620 B.R. 469, 478 (Bankr. S.D.N.Y. 2020); *Claridge Assocs., LLC v. Schepis (In re Pursuit Capital Mgmt., LLC)*, 595 B.R. 631, 665 n.151 (Bankr. D. Del. 2018); s*ee also Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993). Likewise, even without the Proposed Insurance Stipulation, the Committees would have the right to "appear and be heard" in any adversary proceeding involving the Debtors' Insurance Causes of Action under bankruptcy law. *See* 11 U.S.C. 1109(b) ("**Section 1109(b)**"). It is well-settled in the Second Circuit that parties in interest have an "unconditional right to intervene" without regard to whether the proceeding is core or non-core pursuant to Section 1109(b). *See Term Loan Holder Comm. v. Ozer Grp., L.L.C. (In re The Caldor Corp.)*, 303 F.3d 161, 163, 176 (2d Cir. 2002) (holding that the right of a party in interest (including the debtor and a creditors' committee) under Section 1109(b) to "raise . . . and appear and be heard on any issue in a case under" the Bankruptcy Code includes "an unconditional statutory right . . . to intervene in adversary proceedings" and adopting the Third Circuit's recognition of the unconditional right to intervene in non-core proceedings as set out in *In re Marin Motor Oil*, 689 F.2d 445 (3d Cir. 1982) and *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994)); *see Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1283 (2d Cir. 1990) (holding that the term "case" in Section 1109(b) refers to an "umbrella [of] litigation often covering numerous actions that are related only by the debtor's status as a litigant"); *Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, No. 01 Civ. 8539 (RWS), 2003 WL 22790916, at *2 (S.D.N.Y. Nov. 25, 2003) (applying *Caldor* and *Sonnax* to grant a legal representative's motion to intervene in an avoidance action); 7 Collier on Bankruptcy

8

¶ 1109.04[1][a][i] (15th ed. Rev. 2001) ("A bankruptcy case is[,] . . . in colloquial terms, the whole ball of wax").  Indeed, courts in this District and others have routinely approved authority-sharing stipulations of this sort with respect to adversary proceedings.  *See, e.g.*, *Adelphia Commc'ns Corp. v. Bank of Am., N.A., (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364, 372 (Bankr. S.D.N.Y. 2005) (debtor and official committee joined as co-plaintiffs to bring avoidance actions); Order Approving Am. Mot. for An Order Approving Stip. Regarding Global Resolution of Open Issues Between Debtor, Second Lien Lenders & Committee Pursuant to Rule 9019 of the Fed. R. Bankr. P., Including Authorization to Obtain Postpetition Financing From Second Lien Lender & Retention of Replacement Counsel, *In re Metropark USA, Inc.*, No. 11-22866 (S.D.N.Y. Jan. 18, 2013), Dkt. No. 443 (approving stipulation whereby official committee, funded by second lien lenders, obtained temporary exclusive right to prosecute adversary proceeding, subject to oversight by debtors and termination of right after 13 months).  Here, the Debtors and the Committees have concluded that proceeding as co-plaintiffs would be more effective and efficient than having Debtors as initial plaintiffs and the Committees as intervenors because, among other things, intervention would not include the terms of cooperation and coordination set forth in the Proposed Insurance Stipulation and Order.

11.     TIG's arguments that the Stipulation could not be predicated on Section 1109(b) because that section does not apply in non-core proceedings (Obj. at 6, 11-13) are thus non-responsive (because the Proposed Insurance Stipulation is predicated on federal bankruptcy law as elucidated in *Housecraft*), incorrect on the law (because Section 1109(b) provides an unconditional right to intervene in all cases and adversary proceedings under Second Circuit precedent), and incorrect on the facts (as no determination has been made as to whether a future

adversary proceeding regarding insurance coverage disputes here would be core or non-core).[7] Indeed, while TIG purports to identify a "factually similar" case, *In re Catholic Bishop of Northern Alaska*, TIG neglects to note that that case: (i) involved no agreement between the debtor and the committee seeking standing; (ii) mistakenly conflated the interests of the committee with those of an individual tort claimant; and (iii) <u>explicitly rejected the Second Circuit's holding in *Caldor*</u> regarding a creditor party's right to intervene in an action commenced by the debtors. *See Catholic Bishop of N. Alaska v. Cont'l Ins. Co. (In re Catholic Bishop of N. Alaska)*, No. F08-001010-DMD, Adv. Pro. No. F08-90019-DMD, 2009 WL 8446700 at *2 (Bankr. D. Alaska Mar. 25, 2009). This purportedly "factually similar" case is thus entirely unavailing.

12.  Accordingly, the Court should decline TIG's invitation to break from well-established and binding Second Circuit precedent, and instead should approve the Proposed Insurance Stipulation because it easily satisfies the *Housecraft* standard.

**B.  The Proposed Insurance Stipulation Is in the Best Interests of the Estates.**

13.  The Second Circuit's *Housecraft* decision is straightforward: Where, as here, a debtor consents to confer joint standing on another party, standing should be conferred when in the best interests of the estate and necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. *See In re Housecraft Indus. USA*, 310 F.3d at 71. Both elements are plainly satisfied here. The Proposed Insurance Stipulation is demonstrably in the best

---

[7] The important question of whether an adversary proceeding regarding insurance coverage disputes is core should be addressed, if properly raised, when such an adversary proceeding is initiated and the parties to that proceeding have the opportunity to present their respective arguments on full briefing—not in the offhand manner suggested by TIG in its Objection. *See Credit Suisse AG v. Appaloosa Inv. Ltd. Partnership I*, No. 15-cv-3474, 2015 WL 5257003, at *8 n.72 (S.D.N.Y. Sept. 9, 2015) ("Whether an action is core or non-core is determined at the time an action is filed."). As the Debtors and the Committees will establish through full briefing at the appropriate time, TIG's blanket assertion that "coverage claims are not core proceedings" is incorrect.

interests of the estate because it codifies cooperation and coordination among the Debtors, the Official Committee, and the Ad Hoc Committee (through specialized counsel with considerable insurance recovery expertise) with respect to resolving the Debtors' Insurance Causes of Action while protecting the Debtors' rights to approve, consent to, or reject any settlement. (*See* Mot. ¶ 17; Stip. ¶¶ 1-3.) And it is undisputed that the Proposed Insurance Stipulation will facilitate the fair and efficient resolutions of these Chapter 11 Cases by ensuring all appropriate efforts are brought to bear to maximize the value and proceeds of the Debtors' Insurance, as no party has argued to the contrary. (*See* Mot. ¶ 18.)

14. Only TIG has argued that the Proposed Insurance Stipulation is not in the best interests of the estates. TIG does not dispute any of the facts underlying the Debtors' determination that the Stipulation is in the estates' best interests. Instead, TIG offers four reasons why, notwithstanding such facts, it believes that the Proposed Insurance Stipulation is not in the estates' interests: (i) information TIG would seek in a dispute might increase the Debtors' exposure to claims against the Debtors; (ii) it will not "benefit the estate to have the Ad Hoc Committee's counsel pursue a recovery from TIG"; (iii) the Debtors will not realize any financial benefits from the stipulation; and (iv) conferring on the Committees a "veto right" over any settlement is not appropriate. (Obj. at 9-11.) None of these arguments is compelling in its own right nor could they together overwhelm the many benefits to the estates of the Proposed Insurance Stipulation.

15. First, TIG's argument that the information it would seek from the Debtors might increase the Debtors' exposure by "inviting attorneys for the claimants into the litigation" is not only speculative but also counterfactual given the massive amount of discovery and virtually unparalleled noticing process that has occurred. Putting aside that the Debtors do not agree with

11

TIG's discussion of the so-called "expected or intended" issue, the merits of which are beyond the scope of the Motion, the Debtors have produced millions of pages of documents to the parties to the Proposed Insurance Stipulation and these parties have conducted numerous depositions. It is hard to imagine what information TIG might obtain in an insurance dispute that the parties to the Proposed Insurance Stipulation do not already have. Moreover, even if TIG's fanciful argument were true, TIG has not—and cannot—demonstrate that increasing the quantum of any claim against the estates would outweigh the benefit of bringing insurance proceeds into the estates, which benefits <u>all</u> creditors. Indeed, given that the claims asserted against the estates are greater than $140 trillion, exceeding by orders of magnitude all of the assets of the Debtors' estates including the Debtors' Insurance, the notion that any discovery that TIG might seek could meaningfully increase the Debtors' exposure to underlying claims in a manner that could negatively impact the Debtors cannot be credited.

16.    <u>Second</u>, TIG also is wrong when it contends that it does not benefit the estates to have the Ad Hoc Committee's counsel pursue a recovery from TIG. TIG's suggestion that its policy does not cover the claims of governmental entities, and therefore the Ad Hoc Committee "may have a lower incentive to maximize the value of any remaining insurance" (Obj. at 10), is incorrect. As an initial matter, and as the Debtors and Committees will address upon full briefing at the appropriate time,[8] it is simply not true that TIG's policy does not cover governmental claims, and TIG's contention that its policy excludes "governmental or criminal fines or penalties" is not to the contrary. More immediately, TIG's contention about the Ad Hoc Committee's incentives is utterly without substance or support and is entirely speculative.

---

[8] The Debtors and the Committees intend to pursue coverage under TIG's policy to the full extent of its available coverage, including with respect to claims by the Ad Hoc Committee's constituency, and neither accept nor agree with TIG's characterization of the coverage of its policy.

12

Recovery of any insurance proceeds on account of any claims against the estates benefits all creditors. Even if it were true that the TIG policy did not cover governmental claims, which it is not, the Ad Hoc Committee—like all creditors—would still have every incentive to maximize alternative sources of recovery for other claimants to preserve its own share of estate resources. And if TIG truly believed that the Ad Hoc Committee's involvement would decrease the incentives to maximize the value of recoveries from TIG, it is hard to see why TIG objects to the Ad Hoc Committee's, and its counsel's, involvement.

17. <u>Third</u>, TIG's argument that the estates will not financially benefit from the Stipulation also ignores the reality of these cases. The Debtors generally pay the professional fees of the Official Committee and Ad Hoc Committee, so the right question is not which counsel has the lowest hourly rate to pursue this case. The right question is how to avoid wasteful or duplicative efforts concerning insurance recoveries in these Chapter 11 Cases. The Proposed Insurance Stipulation sets up a streamlined process through which the estates' two fiduciaries and a firm with considerable insurance recovery expertise representing the Ad Hoc Committee can confidently and efficiently coordinate litigation and settlement strategy and minimize costs to the estates.

18. <u>Fourth</u>, and for this very reason, the Proposed Insurance Stipulation requires that the Debtors obtain the consent of either the Official Committee or the Ad Hoc Committee before seeking Court approval of a settlement. (*See* Stip. ¶ 2.b.) This requirement is intended to reduce—and hopefully eliminate—any need to litigate approval of any insurance settlement over the objection of the Official Committee or Ad Hoc Committee. While TIG argues that this requirement "attempts to constrain the Debtors' business judgment" (Obj. at 11), on the contrary,

it is a sound exercise of judgment to attempt to ensure support for any settlement long before the filing of a Rule 9019 motion.

19. Taking a step back, it is indeed notable that the only party to object to entry into the Stipulation is TIG. TIG has not filed a proof of claim in these Chapter 11 Cases, is not a creditor of the Debtors, and therefore has no economic interest in the estates. What it does have is a very significant interest in reducing any insurance recovery by the estates. It is no surprise, then, that TIG opposes relief supported by the estates' fiduciaries and groups representing significant creditors such as the Ad Hoc Committee and the Ad Hoc Group of Non-Consenting States. (*See generally* Obj.; The Ad Hoc Grp. of Non-Consenting States' Statement in Supp. of Debtors' Mot. to Approve Stip. Granting Joint Standing to Prosecute Claims & Causes of Action Related to the Debtors' Ins. Coverage to (1) the Official Comm. of Unsecured Creditors & (2) the Ad Hoc Comm. of Governmental & Other Contingent Litig. Claimants (Jan. 16, 2021), Dkt. No. 2289.) TIG's motives in objecting to the Proposed Stipulation are not to benefit the estate, but to protect its own interest, and thus the Objection should be viewed with an appropriate dose of skepticism. *See, e.g.*, *In re Adelphia Commc'ns*, 330 B.R. at 368 ("Perhaps significantly, neither of the [c]ommittees' motions [pursuant to *Housecraft* and related cases] is opposed by anyone other than" "those with an interest in defeating the claims" at issue. "Those with an interest in maximizing the value of the estate . . . do not seem to be troubled by the [c]ommittees' proposed use of estate resources[.]").

## II.    TIG's Attempt to Insert Its Lift Stay Motion Here Is Improper and Baseless

20. TIG's request to re-open its Motion for Relief from Stay, without notice, in summary fashion, and unrelated to the Debtors' Motion, should be summarily denied without prejudice.

14

21.     As a procedural matter, TIG has failed to either formally adjourn its motion or re-notice it for this or any hearing, as TIG was directed to do by the Court. (*See* Jan. 24, 2020 Omnibus Hr'g Tr. 140:8-14 (THE COURT: "Or you can adjourn it to a date in July, if you want. That's fine, then you don't have to refile it. . . . I'm happy to have it be schedule[d] to an omnibus date in July.").) Moreover, TIG has failed to comply with the case management order in these Chapter 11 Cases, which requires that notice of any motion seeking relief from the automatic stay must be served upon the Debtors at least twenty-one calendar days before the omnibus hearing date at which such motion will be heard. (*See* Second Am. Order Establishing Certain Notice, Case Mgmt., & Admin. Procedures, ¶ 40 (Nov. 18, 2019), Dkt. No. 498.)

22.     As a substantive matter, TIG's Motion for Relief from Stay still remains inappropriate for decision as "[o]nly one side wants an answer today [on arbitrability], and it's not the Debtor" (Jan. 24, 2020 Omnibus Hr'g Tr. 139:23-24; *see generally id.* at 117:8-140:18), and still should be denied for reasons the Debtors addressed in their objection (s*ee* Debtors' Obj. to TIG's Mot. for Relief from the Automatic Stay (Jan. 17, 2020), Dkt. No. 753), the Official Committee addressed in their objection (s*ee* Obj. of the Official Comm. of Unsecured Creditors to the Mot. of Ironshore Specialty Ins. Co. for Relief from Automatic Stay & Joinder to the Debtor[s'] Obj. to Such Mot. (Jan. 17, 2020), Dkt. No. 756), and the Ad Hoc Committee addressed in their statement in support of the Debtors' objections to the same (*see* Ad Hoc Comm.'s Statement in Supp. of Debtors' Obj. to TIG's Mot. for Relief from the Automatic Stay (Jan. 17, 2020), Dkt. No. 757), which are incorporated herein by reference.

23.     The Proposed Insurance Stipulation describes a coordination process for resolving the Debtors' Insurance Causes of Action. When an adversary complaint is filed "to litigate in court claims that [TIG] argues should instead proceed in arbitration" (Debtors' Obj. to TIG's

15

Mot. for Relief from the Automatic Stay, at 7 (Jan. 17, 2020), Dkt. No. 753), the parties to that proceeding will have the opportunity to present their respective arguments regarding, inter alia, whether arbitration should be compelled, on full briefing. But today is not that day.

## **CONCLUSION**

24. For all of the foregoing reasons, the Debtors respectfully request that this Court grant the Motion.

Dated: January 19, 2021
New York, New York

By: /s/ *Benjamin S. Kaminetzky*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:   (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut
Marc J. Tobak

*Counsel to the Debtors
and Debtors in Possession*