George R. Calhoun V (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
george@ifrahlaw.com

Counsel for Ironshore Specialty Insurance Company,
formerly known as TIG Specialty Insurance Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>PURDUE PHARMA L.P., *et al.*,[1]<br><br>      Debtors. | Chapter 11<br><br>**Case No. 19-23649-rdd**<br>**(Jointly Administered)** |

**IRONSHORE SPECIALTY INSURANCE COMPANY'S, FORMERLY KNOWN AS TIG
SPECIALTY INSURANCE COMPANY, SUPPLEMENTAL BRIEF IN SUPPORT OF
<u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>**

    Ironshore Specialty Insurance Company, formerly known as TIG Specialty Insurance

Company, ("TIG") respectfully submits this Supplemental Brief in Support of its Motion for Relief

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnic Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

from Automatic Stay (the "Motion").

1.  TIG, The Purdue Frederick Company, Inc. ("Purdue Frederick") and Debtors Purdue Pharma L.P., Purdue Pharma Inc., and Purdue Pharmaceuticals L.P. (collectively with Purdue Frederick, "Purdue") currently are parties to a confidential arbitration proceeding pending in London in connection with the parties' respective rights and obligations under the Policy. TIG initiated that arbitration by serving a Notice to Arbitrate on October 8, 2018. After the panel was established, TIG served its Statement of Claim on February 28, 2019. Purdue served its Statement of Defense on May 15, 2019. TIG served its Reply Submission on June 26, 2019. Subsequently, the parties met with the Tribunal for a Case Management Conference regarding entry of a case management schedule. Purdue thereafter filed for bankruptcy protection on September 15, 2019.

2.  On September 26, 2019, the Office of the United States Trustee for Region 2 appointed the Official Committee of Unsecured Creditors (the "Official Committee") pursuant to Section 1102(a) of the Bankruptcy Code to act as a fiduciary for and represent the interests of all unsecured creditors in the Chapter 11 Cases. Dkt. 131. The Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants ("Ad Hoc Committee") was formed by voluntary association in September 2019 and its professionals are being paid by the estate pursuant to this Court's order entered on December 2, 2019. Dkt. 553.

3.  On December 30, 2019, TIG filed its Motion for Relief from Automatic Stay, arguing among other things that the parties' disputes as to their rights and obligations under the Policy are non-core matters that are subject to mandatory arbitration. Dkt. 712.

4.  On January 17, 2020, Debtors, the Official Committee, and the Ad Hoc Committee (the latter two collectively, the "Committees") filed objections to TIG's Motion for Relief from Automatic Stay. Dkts. 753, 756, 757. Among other things, the objectors stated that they did not

2

want arbitration to interfere with the parties' negotiations. Dkt. 753 at 15–16; Dkt. 756 ¶ 16; Dkt. 757 ¶ 10. As represented in their Motion, those negotiations are now completed or nearly so.

5. TIG filed its Reply in Support of its Motion for Relief from Automatic Stay on January 22, 2020. Dkt. 765. The Court heard argument on TIG's motion on January 24, 2020. The Court did not rule on the Stay Motion at that time, but instead carried it to an indeterminate date in the future.

6. On January 6, 2021, Debtors filed their Motion for an Order Approving Stipulation. Dkt. 2227. Debtors sought an Order from this Court that authorizes the Committees to litigate matters on behalf of Debtors' estates and requires approval from either the Official Committee or the Ad Hoc Committee of any settlement Debtors seek to enter. On January 20, 2021, this Court granted Debtors' motion. Dkt. 2305.

7. In their oppositions to the Stay Motion, the Debtors and Committees argued that litigating coverage issues would distract from the litigation and suggested that it was not the time to move forward with coverage litigation. The Official Committee argued that proceeding with the arbitration could interfere with the negotiation of how to allocate resources among creditors. Dkt. 756 at 4–5. It further contended that whether claims against TIG were ripe depended on whether claims fell within TIG's coverage. *Id*.

8. The Ad Hoc Committee argued that a "pause" was needed to allow the parties space to negotiate a possible consensual resolution. Dkt. 757 at 2. The Ad Hoc Committee further noted that the pursuit of insurance often waited until the control of the insurance assets "are under the consolidated control of a trust that represents the interests of all claimants." *Id.*

9. Similarly, the Debtors argued that lifting the stay to allow the TIG arbitration to proceed would district the Debtors and frustrate their reorganizations. Dkt. 753.

10. The underlying facts now are very different. The Court has granted standing to the Committees, who have retained experienced coverage counsel. As a practical matter, the creditors are now in control of the insurance collection effort.

11. There is no longer any question that the Debtors intend to seek coverage for all its opioid liabilities, despite the Official Committee's prior argument that there might be an issue of whether a claim would reach TIG's policy. The Debtors have made additional notices of claims to their insurers, including TIG, that removed any doubt on that issue. In particular, the Debtors sent a July 30, 2020, letter to TIG in which Debtors stated:

> Purdue previously has provided TIG with notice of claims, circumstances, or occurrences regarding these matters, and, as noted above, TIG also doubtless has seen extensive reporting of these claims in the press. For the avoidance of doubt, Purdue hereby confirms notice of these claims, circumstances, and occurrences under all of the policies and policy years in the attached list. See Schedule of Insurance Policies attached as Exhibit A. Purdue is seeking coverage *with respect to all of its opioid-related liabilities* under all of the policies and policy years in the attached list, as well as under all other policies issued or subscribed by TIG or any related insurer that provide or potentially provide coverage for Purdue's opioid-related liabilities (collectively, the "Policies").

Decl. of G. Calhoun ("Calhoun Decl."), attached hereto, Ex. A at 2 (emphasis added). Although Debtors did not acknowledge TIG's response to this communication, the Debtors sent a further letter on October 2, 2020, in which counsel for the Debtors discussed the substantial progress that had been made in the bankruptcy case and stated: "These developments underscore the importance of moving forward promptly to resolve Purdue's insurers' obligations to address the opioid-related liabilities that are the subject of the bankruptcy proceeding." Calhoun Decl., Ex. B at 2.

12. During the January 21, 2021 hearing, counsel for the Debtors further admitted that the Debtors would be filing a plan on or before February 15, 2021, two days before the hearing scheduled on TIG's motion. Calhoun Decl. Ex. C (Jan. 20, 2021, Hearing Tr.) at 22:17–21.

4

13. This Court also acknowledged that there is no further need for delay, specifically noting that there is "no reason for any delay in resolving the Debtors' insurance claims and rights before confirmation of a plan." *Id.* at 48:18–21.

14. The Debtors and Committees have all taken the position in these cases that they need to move forward to resolve insurance coverage issues. As such, the prior stated objections of the Debtors and Committees with respect to the possible impact that the arbitration might have on bankruptcy negotiations have been overtaken by events and the passage of time.

For these reasons, and for the reasons stated in the Stay Motion, TIG respectfully requests that the Court grant TIG's motion for relief from stay (Dkt. 712) to permit TIG's arbitration, filed pre-bankruptcy, to move forward.

Dated: January 27, 2021
      New York, NY

Respectfully submitted,

/s/ George Calhoun
George R. Calhoun V (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
george@ifrahlaw.com