George R. Calhoun V (*pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006-2004
(202) 524-4140 – Tel.
(202) 524-4141 – Fax
george@ifrahlaw.com

Counsel for Ironshore Specialty Insurance Company,
formerly known as TIG Specialty Insurance Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>PURDUE PHARMA L.P., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>**Case No. 19-23649-rdd**<br>**(Jointly Administered)** |

**DECLARATION OF GEORGE CALHOUN IN SUPPORT OF SUPPLEMENTAL BRIEF**
**IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

      I, George R. Calhoun, V, hereby declare as follows:

      1.      I am a partner with Ifrah PLLC and represent Ironshore Specialty Insurance

Company, formerly known as TIG Specialty Insurance Company ("TIG") in the above-captioned

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnic Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

action. I am providing this Declaration in support of TIG's Supplemental Brief in Support of its

Motion for Relief from the Automatic Stay.

2.      A true and accurate copy of a letter dated July 30, 2020, from Debtors' counsel to

TIG's counsel is attached hereto as Exhibit A.

3.      A true and accurate copy of a letter dated October 2, 2020, from Debtors' counsel

to TIG's counsel is attached hereto as Exhibit B.

4.      A true and accurate copy of the transcript for the January 20, 2021, hearing before

this court is attached hereto as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 27, 2021.                    /s/ George R. Calhoun
                                                 George R. Calhoun, V
                                                 george@ifrahlaw.com

# Exhibit A



**Driving progress
through partnership**

**Ann Kramer**
Direct Phone:  +1 212 205 6057
Email:  AKramer@ReedSmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

**July 30, 2020**

**USPS Priority Mail Express & E-mail:**
**Kathleen_DAndraia@trg.com**
**newnotices@trg.com**

Claims Department
Ironshore Specialty Insurance Company
28 Liberty Street, 4th Floor
New York, NY 10005

**Re:     Insurance policies issued to Purdue Pharma L.P. and associated entities (collectively,**
**"Purdue") by Ironshore Specialty Insurance Company formerly known as TIG Specialty**
**Insurance Company ("TIG")**

Dear Sir or Ma'am:

As TIG is aware, Purdue has been named in numerous lawsuits, claims, subpoenas, and civil
investigative demands (collectively, "claims") in connection with the nationwide opioid crisis, including
with regard to opioid drugs manufactured, marketed, and sold by Purdue and others.  Certain of
Purdue's officers, directors, and employees also have been named in various proceedings in connection
with the opioid crisis, may be named in additional proceedings, and face substantial liabilities in
connection with these matters.

As of September 2019, Purdue and its officers, directors, and employees had been named in over 2,600
such claims across the United States, its territories, and Canada, brought by individuals, other private
parties, and governmental entities.  On September 16, 2019, Purdue filed for chapter 11 bankruptcy
protection in response to these claims, and the bankruptcy process has been proceeding apace.

On March 4, 2020, United States Bankruptcy Judge Robert D. Drain ordered Purdue and creditor groups
representing opioid claimants to mediate regarding how Purdue's assets would be allocated in a plan of
reorganization.  *See* Order Appointing Mediators, *In re Purdue Pharma L.P., et al.*, Case No. 19-23649
(RDD) (Bankr. S.D.N.Y.), Docket no. 895.[1]  Judge Drain appointed the Honorable Layn Phillips and
Mr. Kenneth Feinberg to serve as co-mediators.  The Bankruptcy Court established July 30 as the "bar
date" for any and all potential creditors of Purdue to file "proofs of claim" asserting their right to a
portion of Purdue's assets.  As of the evening of July 29, 2020, according to Prime Clerk, there have

---

[1] The creditor groups that are parties to the mediation include the following: the Ad Hoc Committee of Governmental and
Other Contingent Litigation Claimants; the Ad Hoc Group of Non-Consenting States; the Multi-State Governmental Entities
Group; the Official Committee of Unsecured Creditors; the Ad Hoc Committee of NAS Babies; the Ad Hoc Group of
Hospitals; the Ad Hoc Group of Individual Victims; counsel for the Blue Cross Blue Shield Association, various third-party
payors, and health insurance carrier plaintiffs; and the group of individual health insurance purchasers, represented by
Stevens & Lee. P.C.  *See id.* ¶ 4.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

Claims Department
Page 2



been approximately 82,000 "proofs of claim" filed. Additional proofs of claim will continue to be filed through the deadline.

It is likely that Purdue's bankruptcy proceedings will result in the creation of an entity that will receive Purdue's assets, including proceeds of insurance sold to Purdue, and will distribute those assets to Purdue's creditors.  In that regard, and as we are sure you are aware based on publicly available information, Purdue's creditors' demands exceed, by orders of magnitude, the limits of liability of Purdue's insurance policies.

Purdue purchased a variety of insurance policies for many years from TIG that provide substantial coverage for liabilities that now are the subject of Purdue's bankruptcy proceeding.  Purdue previously has provided TIG with notice of claims, circumstances, or occurrences regarding these matters, and, as noted above, TIG also doubtless has seen extensive reporting of these claims in the press.  For the avoidance of doubt, Purdue hereby confirms notice of these claims, circumstances, and occurrences under all of the policies and policy years in the attached list.  *See* Schedule of Insurance Policies attached as Exhibit A.  Purdue is seeking coverage with respect to all of its opioid-related liabilities under all of the policies and policy years in the attached list, as well as under all other policies issued or subscribed by TIG or any related insurer that provide or potentially provide coverage for Purdue's opioid-related liabilities (collectively, the "Policies").

We would like to discuss the resolution of TIG's obligations under the Policies.  To ensure that we can make substantive progress, the process we envision would include representatives of the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, the Official Committee of Unsecured Creditors, and Purdue, as well as TIG's representatives and principals.  The Committees will coordinate with Purdue's other governmental and non-governmental creditor groups to ensure that the creditors' interests as a whole are broadly represented in our discussions. Given the current situation, we anticipate that video conferences will make the most sense.

We would like to begin these discussions as soon as possible, starting with an initial video conference in the next few days to talk about how best to proceed.  I would be joined by one representative each of the Ad Hoc Committee and the Unsecured Creditors Committee.  Please provide us with a few dates and times when you are available for such a conversation.

Notwithstanding anything contained in or omitted from this letter, Purdue reserves all of its rights with respect to the foregoing and all other matters, and does not waive anything.

We appreciate your prompt attention to and cooperation in this matter.

Very truly yours,

*Ann V. Kramer/s/*

Ann Kramer

AK:mb

Claims Department
Page 3



cc:    Scott Gilbert, counsel to the Ad Hoc Committee of Governmental and Other Contingent
       Litigation Claimants (USPS Express Mail, gilberts@gilberlegal.com, via email)
       Arik Preis, counsel to the Official Committee of Unsecured Creditors (USPS Express Mail,
       apreis@akingump.com, via email)
       George R. Calhoun (george@ifrahlaw.com, via email)

Claims Department
Page 4



**EXHIBIT A**

**<u>SCHEDULE OF INSURANCE POLICIES</u>**

| Current Insurer | Named Insurer In Policy | Policy Number | Policy Term |
|---|---|---|---|
| Ironshore Specialty Insurance Company ("Ironshore") | TIG Specialty Insurance Company | XEX 37690728/XLX38822 826 | 7/1/2001– 7/1/2002 |
| Ironshore | TIG Specialty Insurance Company | XEX 37690728/XLX38822 826 | 7/1/2002– 10/1/2002 |

# Exhibit B



**Driving progress**
through partnership
**Ann Kramer**
Direct Phone:  +1 212 205 6057
Email:  AKramer@ReedSmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

October 2, 2020

**BY ELECTRONIC AND OVERNIGHT MAIL**
Christopher R. Carol
Kennedys Law LLP
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920
Christopher.Carrol@kennedyslaw.com

  Re: **Chapter 11 Bankruptcy Proceedings of Purdue Pharma L.P. and associated entities
    (collectively, "Purdue")**

Dear Chris:

I am writing on behalf of the Debtors, the Official Committee of Unsecured Creditors (the "Official
Committee"), and the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants
(the "Ad Hoc Committee").  The purpose of this letter is to update TIG Specialty Insurance Company
(n/k/a Ironshore Specialty Insurance Company) ("TIG") on recent developments in Purdue's bankruptcy
proceedings and to request dates over the next couple of weeks to have an initial video call to kickstart
discussions concerning a consensual resolution of TIG's coverage obligations with respect to opioid-
related claims against Purdue and its officers, directors, and employees.  We believe that, given recent
developments, it is in everyone's interests to move those discussions forward as promptly and
expeditiously as possible.

In short, as discussed below, phase I of the mediation in the bankruptcy case (which concerned the
allocation of assets among Purdue's public and private claimants), has been largely concluded, and the
mediators have filed on the docket a report outlining the results.  That report is attached.  Purdue and its
claimants intend to turn next to phase II, during which they will seek to resolve, among other things,
open issues among the Debtors, the creditors, and the Sackler family.  The Court's order concerning
phase II, as well as the prior order referenced therein, also are attached.

The Debtors hope to conclude phase II by the end of November, and believe that they will be able to file
a reorganization plan by the end of the year and have it confirmed in the months thereafter.  Given that
the plan likely will provide for a channeling injunction for the benefit of those insurers that resolve their
coverage obligations prior to confirmation, there is now a limited window to resolve TIG's coverage
obligations with that protection.

As Purdue reported in my letter approximately two months ago, United States Bankruptcy Judge Robert
D. Drain had ordered Purdue and its opioid creditor groups to mediate before Layn Phillips and Kenneth
Feinberg regarding how Purdue's assets will be allocated in a plan of reorganization.  In the same letter,
Purdue stated that tens of thousands of proofs of claim had been filed and additional claims would



Christopher R. Carol
October 2, 2020
Page 2

continue to be filed through the July 30, 2020 deadline set by Judge Drain.  Purdue then advised that its
creditors' demands exceeded, by orders of magnitude, the limits of liability of Purdue's insurance
policies (where applicable).

As it turned out, while the proofs of claim are still being tabulated and analyzed, it appears that the total
number of filed proofs of claim will be close to 615,000, and the aggregate value asserted for the claims
will be in the many trillions of dollars.

As a result of phase I mediation discussions, non-federal public claimants have agreed in principle to
parameters for allocating Purdue's assets among themselves and with Native American Tribes.  In
addition, as set forth in the mediators' report, the non-federal public claimants have entered into
individual term sheets outlining the allocation of estate value to certain private claimant groups—
personal injury claimants, hospitals, third party payors, and certain NAS claimants.  Also as set forth in
the mediators' report, these term sheets remain contingent upon satisfaction of other issues related to
final plan confirmation.  Purdue will provide the specific terms of the agreements between its creditor
groups once they are finalized and made public or an agreement is reached among all stakeholders to
permit disclosure to Purdue's insurers.

These developments underscore the importance of moving forward promptly to resolve Purdue's
insurers' obligations to address the opioid-related liabilities that are the subject of the bankruptcy
proceeding.  Purdue and its creditors—who are the ultimate beneficiaries of Purdue's insurance—remain
interested in resolving Purdue's coverage consensually, if possible.  If TIG would like the benefit of a
channeling injunction, we need to reach a resolution within the next several months, and we are prepared
to work with you to accomplish that goal.

Please let us know your availability over the next two weeks for an initial call to discuss the Debtors'
coverage claims and a process to resolve them on a consensual basis.  Please also let us know who will
participate in the initial video conference on behalf of TIG.  Once we receive your available dates and
confirm availability on our side, we will send around a calendar invite.  We anticipate that the initial
meeting will last no more than 90 minutes.

Please note that notwithstanding anything contained in or omitted from this letter, Purdue, the
committees, and Purdue's creditors as a whole reserve all of their rights with respect to the foregoing
and all other matters and do not waive anything.

With best regards,

Ann V. Kramer

cc:    Arik Preis, counsel to the Official Committee (apreis@akingump.com, via email)
       Scott Gilbert, counsel to the Ad Hoc Committee (gilberts@gilbertlegal.com, via email)

Attachments

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
                                                        :
In re:                                                  :    Chapter 11
                                                        :
PURDUE PHARMA L.P., *et al.*,                           :    Case No. 19-23649 (RDD)
                                                        :
                                    Debtors.            :    (Jointly Administered)
                                                        :
------------------------------------------------------------------ X

### MEDIATORS' REPORT

The Honorable Layn Phillips and Mr. Kenneth Feinberg, appointed co-mediators (the

"<u>Mediators</u>") in these cases pursuant to an order of this Court entered March 4, 2020 (the

"<u>Mediation Order</u>") (Dkt. No. 895),[1] respectfully submit this report in accordance with paragraph

17 of the Mediation Order.

### Initial Statement

1.      The Mediators   report that every participant in the Mediation, whether

participating as an official Mediation Party or informally, engaged with both the Mediators and

one another in good faith for the purpose of negotiating an allocation of the Debtors' estate as

among the Private Claimants and Non-Federal Public Claimants.   The participants in the

Mediation process who were not "Mediation Parties" included the United States of America,

Native American Tribes, representatives of a putative class of independent public school districts

(the "<u>PSD</u>")[2], proposed representatives of a putative class of children born with NAS in the State

of West Virginia (the "<u>WV NAS</u>"), the NAACP and a group of victim advocates which refer to

---

[1]      Unless the context requires otherwise, capitalized terms not defined in this Report have the meanings given
them in the Mediation Order.

[2]      The PSD also participated in Mediation pursuant to the April 21, 2020 consent order.  The Public School
Districts are represented by the law firms of Mehri & Skalet, and Hughes Socol Piers Resnick & Dym, Ltd. and their
co-counsel.   The Non-Federal Public Claimants do not include the PSD.

themselves as the "Ad Hoc Committee on Accountability".  The Mediators also heard the views of individual claimants during the Mediation.

2.    For ease of reference, the following defined terms are used in this report:

a.    The Non-Federal Public Claimants means the Ad Hoc Group of Non-Consenting States (the "NCSG"), the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "AHC") and the Multistate Governmental Entity Group (the "MSGE").

b.    The Personal Injury Claimants means the Ad Hoc Group of Individual Victims.

c.    The TPPs means counsel for the Blue Cross Blue Shield Association, various third-party payors and health insurance carrier plaintiffs.

d.    The Hospitals means the Ad Hoc Group of Hospitals.

e.    The NAS Committee means the Ad Hoc Committee of NAS Children.

f.    The Insurance Purchasers means a putative class of individual health insurance purchasers.

g.    Native American Tribes means the Muscogee (Creek) Nation, a member of the AHC, the Cheyenne & Arapaho Tribes, an ex officio member of the Unsecured Creditors' Committee, and other federally recognized tribes represented by various counsel from the Tribal Leadership Committee and the Plaintiffs Executive Committee in MDL No. 2804.

A list of the names and counsel and principals who participated in one or more mediation sessions is attached hereto as Exhibit A.

**Summary of Mediation Outcomes**

*The Non-Federal Public Claimants Abatement Agreement*

3.     During the Mediation, the Non-Federal Public Claimants agreed among themselves that all value received by them through these chapter 11 cases would be exclusively dedicated to programs designed to abate the opioid crisis, and that such value cannot be used for any other purpose (other than an amount to fund administration of the programs themselves and to pay legal fees and costs).   To the Mediators' knowledge, this is the first time States, Territories, Native American Tribes and Local Governments have agreed to be bound by such a commitment.   The Non-Federal Public Claimants also have agreed that these requirements will be embedded in a plan of reorganization for Purdue and the related order confirming such plan.

4.     The NCSG, the AHC and the MSGE also addressed and resolved other significant issues, including value allocation for all Native American Tribes (and the inclusion of culturally appropriate abatement programs for these communities) and a default mechanism that, in the absence of a standalone agreement between a State or Territory and its political subdivisions, provides a structure and process for applying funds to abate the opioid crisis and ensures consultation through local participation mechanisms in determining which programs will be funded from value received.   The NAACP and the Non-Federal Public Claimants are also committed to continuing to engage regarding concerns about the equitable implementation of the abatement program in each State. This discussion has not ended and will continue.   No agreement between the PSDs and the Non-Federal Government Entities has been reached to date. We will continue to seek resolution between the PSDs and the Non-Federal Government Entities.

*The Private Claimants' Agreements*

5.      Subject to limited conditions discussed below, there are four written term sheets each of which, individually, is supported by the Debtors, the Non-Federal Public Claimants and the specific individual Private Claimant group (or counsel to certain members of such Private Claimant Group) that is counterparty to such term sheet, which addresses allocation of estate value to each Private Claimant group, respectively.   Such term sheets have been reached, respectively, with each of the Personal Injury Claimants, the Hospitals, counsel to certain of the TPPs, and the NAS Committee (with regard to abatement) (the "TS Private Claimants").   In addition, the Debtors and the Insurance Purchasers have reached an agreement for an agreed sum to be paid over two years that will be dedicated to a specific abatement use that has been agreed by the Debtors and the Insurance Purchasers.

6.      Subject to the terms of the term sheet reached with the Personal Injury Claimants, personal injury claimants will be eligible to receive cash distributions through fair and equitable trust distribution procedures developed by the Personal Injury Claimants but subject to the consent of the Non-Federal Public Claimants, such consent not to be unreasonably withheld, and approval by the Court as part of a confirmed plan of reorganization.  The NAS Committee (with regard to personal injury claims) and others are participating in the drafting of the trust distribution procedures.

7.      The term sheets for the Hospitals, TPPs, and NAS Committee (with regard to abatement)   require each private creditor group to use substantially all of their respective allocations to fund mutually agreeable programs designed to abate the opioid crisis (including treatments), pursuant to commitments embodied in a confirmed plan of reorganization.

### Other Elements of the Term Sheets

8.     While certain details of the term sheets remain to be finalized, there are certain similarities among the agreements, as set forth below.

9.     First, each of the Private Claimants will receive a fixed amount of value over time, the values and time periods varying for each such group.

10.     Second, in exchange for this treatment under a confirmed plan of reorganization, the Private Claimants will release (or support releases of) the Debtors, their estates, and their respective current and former officers, directors, employees, and owners (and any related trusts and their respective trustees and beneficiaries), subject to paragraph 12 below.

11.     Third, legal fees for each Private Claimant group will be paid exclusively out of its agreed distribution or by other agreements with individual claimants (and not by the estate), although the application of legal fees remains to be resolved between the Non-Federal Public Claimants and each of the Private Claimant groups.

12.     Fourth, all term sheets with the TS Private Claimants are conditioned on the Court's confirmation of a plan of reorganization that includes participation by the Sackler family in the plan of reorganization (although this does not limit the ability of any Non-Federal Public Claimant to object to or vote against a plan of reorganization).  Three of the four term sheets also are conditioned on resolution of the United States' claims on terms reasonably acceptable to the Non-Federal Public Claimants, and email correspondence with respect to the fourth term sheet addresses this issue as well.

### Next Steps

13.     As indicated above, there remain terms to be negotiated by the parties with respect to each of the term sheets in order to reach final agreements between each of the four TS

Private Claimant groups and the Non-Federal Public Claimants, respectively.  In addition, the Debtors and the Insurance Purchasers will need to finalize their agreement.

14.    The Non-Federal Public Claimants and the four TS Private Claimants have indicated an intent to work diligently with the Mediators to resolve certain remaining open issues pertaining to their term sheets.  The Debtors and the Insurance Purchasers will do the same.

15.    We have agreed to remain available throughout September (and, if necessary, longer) to help facilitate resolution of open issues.

Dated:    September 23, 2020

By:  _____
Layn R. Phillips

By:  *Ken Feinberg pp Layn R. Phillips*
Kenneth R. Feinberg

*Mediators*

## Exhibit A

### List of Mediation Parties

| Mediation Parties | Name of Individual Participants |
|---|---|
| Debtors | Marc Kesselman (Purdue Pharma L.P.)<br>Marshall Huebner (Davis Polk & Wardwell LLP)<br>Frances Bivens (Davis Polk & Wardwell LLP)<br>Benjamin Kaminetzky (Davis Polk & Wardwell LLP)<br>Eli Vonnegut (Davis Polk & Wardwell LLP)<br>Sheila Birnbaum (Dechert LLP) |
| Official Committee of Unsecured Creditors | Arik Preis (Akin Gump Strauss Hauer & Feld, LLP)<br>Sara Brauner (Akin Gump Strauss Hauer & Feld, LLP)<br>Mike Atkinson (Province, LLP) |
| NCSG | Michelle Burkart (California Attorney General)<br>Judith Fiorentini (California Attorney General)<br>Kimberly Massicotte (Connecticut Attorney General)<br>Jeremy Pearlman (Connecticut Attorney General)<br>Sandy Alexander (Massachusetts Attorney General)<br>Gillian Feiner (Massachusetts Attorney General)<br>M. Umair Khan (New York Attorney General)<br>David Nachman (New York Attorney General)<br>James Donahue (Pennsylvania Attorney General)<br>Neil Mara (Pennsylvania Attorney General)<br>Melissa Van Eck (Pennsylvania Attorney General)<br>Tad O'Neill (Washington Attorney General)<br>Pillsbury Winthrop Shaw Pittman LLP |
| AHC | John Guard (Florida Attorney General)<br>Gary Gotto (Keller Rohrback LLP)<br>Joseph Rice (Motley Rice LLC)<br>Pamela Thurmond (City of Philadelphia)<br>Paul Hanly (Simmons Hanly Conroy LLC)<br>Michael Leftwich (Tennessee Attorney General)<br>Jennifer Peacock (Tennessee Attorney General)<br>Paul Singer (Texas Attorney General)<br>Brown Rudnick LLP<br>Gilbert LLP<br>Kramer Levin Naftalis & Frankel LLP<br>Otterbourg P.C. |

| Mediation Parties | Name of Individual Participants |
|---|---|
| MSGE | Joanne Cicala (The Cicala Law Firm PLLC)<br>F. Jerome Tapley (Cory Watson, P.C.)<br>John White (Harrison White, P.C.)<br>Dara Hegar (The Lanier Law Firm)<br>Todd Court (McAfee & Taft)<br>Jeffrey Simon (Simon Greenstone Panatier, P.C.)<br>Shelly Sanford (Watts Guerra LLP)<br>Caplin & Drysdale |
| Personal Injury Claimants | Ryan Hampton (Individual)<br>Cheryl Juaire (Individual)<br>Anne Andrews (Andrews & Thornton)<br>Sean Higgins (Andrews & Thornton)<br>Ed Neiger (ASK LLP)<br>Ed Gentle (Gentle, Turner, Sexton & Harbison, LLC)<br>Chris Shore (White & Case LLP) |
| TPPs | Mark Fischer (Rawlings & Associates, PLLC)<br>Tom Sobol (Hagens Berman Sobol Shapiro LLP)<br>Lauren Barnes (Hagens Berman Sobol Shapiro LLP)<br>Gerald Lawrence (Lowey Dannenberg P.C.) |
| Hospitals | John W. (Don) Barrett (Barret Law Group, P.A.)<br>Robert A. Clifford (Clifford Law Offices, P.C.)<br>Jonathan W. Cuneo (Cuneo Gilbert & LaDuca, LLP) |
| NAS Committee | Celeste Brustowicz (Cooper Law Firm, LLC)<br>Scott Bickford (Martzell Bickford & Centola, LLC)<br>Calvin Fayard (Calvin C. Fayard, Jr. APC)<br>Kevin Malone (Krupnick Campbell Malone) |
| Insurance Purchasers | Nicholas F. Kajon (Stevens & Lee, P.C.)<br>James Young (Morgan & Morgan, P.A.)<br>Juan R. Martinez (Morgan & Morgan, P.A.) |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                               :

In re:                             :     Chapter 11
                             :

PURDUE PHARMA L.P., *et al.*,    :     Case No. 19-23649 (RDD)
                             :

              Debtors.        :     (Jointly Administered)
                             :

----------------------------------------------------------------- X

## ORDER EXPANDING SCOPE OF MEDIATION

Entry of an order (this "Supplemental Mediation Order") supplementing the order (the "Mediation Order")[1] entered by the Court on March 4, 2020 [Dkt. No. 895] directing the appointment of the Honorable Layn Phillips and Mr. Kenneth Feinberg (the "Mediators") to serve as co-mediators in these chapter 11 cases as set forth therein being in the estates' best interests; and the Court having jurisdiction to consider such request pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Supplemental Mediation Order being a core proceeding under 28 U.S.C. § 157(b) that this Court may decide by a final order consistent with Article III of the United States Constitution; and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice or a hearing is required; and after due deliberation the Court having determined that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest,

IT IS HEREBY ORDERED THAT:

---

[1] Unless the context requires otherwise, capitalized terms not defined in this Order have the meanings given them in the Mediation Order.

1.      This Supplemental Mediation Order supplements the Mediation Order, as set forth herein, and all provisions of the Mediation Order not expressly amended hereby remain in full force and effect.

2.      In accordance with paragraph 3 of the Mediation Order, the Mediators are authorized to continue the existing mediation to resolve open issues referenced in the *Mediators' Report* [Dkt. No. 1716]; *provided* that the Non-Federal Public Claimants and the Private Claimants shall not reopen or renegotiate issues that have already been resolved in the mediation as of such date.

3.      In accordance with paragraph 3 of the Mediation Order, the scope of the Mediators' authority shall be expanded to authorize the Mediators to mediate any and all potential claims or causes of action that may be asserted by the estate or any of the Non-Federal Public Claimants against the Covered Parties (as defined in the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [Dkt. No. 518]) or that may otherwise become the subject of releases potentially granted to the Covered Parties in these chapter 11 cases (the "Shareholder Claims").

4.      With respect to the mediation of Shareholder Claims as set forth herein, the Mediation Parties shall consist solely of the (i) Debtors, (ii) Creditors' Committee, (iii) Consenting Ad Hoc Committee, (iv) Non-Consenting States, (v) MSGE Group, and (vi) representatives of the Covered Parties.  To the extent not previously executed, the Mediation Parties shall execute and agree to be bound by the Protective Order.  The Federal Government shall be entitled, without further order of the Court, to participate in mediation sessions as an observer.  The advisors to the Mediation Parties listed in this paragraph 4 shall be permitted to disclose information, including, without limitation, discussions, proposals, agreements, and written materials but expressly

excluding any proposal, mediation position, analysis, agreement or similar information from or with a mediation party who has not consented to its disclosure under this paragraph regarding the mediation of Shareholder Claims to counsel to any party that is bound both by the Protective Order and the Mediation Order (including, as applicable for such party, so long as such counsel is included within the designated counsel pursuant to paragraph 44 of the Protective Order), which counsel shall continue to be bound by the Protective Order in connection with the receipt of any such information.

5.      The mediation with respect to the Shareholder Claims authorized hereby shall continue until terminated by the Mediators or by further order of this Court.

6.      Paragraph 14 of the Mediation Order is hereby amended and restated as follows: To the extent that any Mediation Party is in possession of privileged or confidential documents and/or information provided to such Mediation Party pursuant to the terms and conditions of the Protective Order, such information may (with the written consent of the party that owns such privilege), but shall not be required to, be disclosed to the Mediators and other Mediation Parties, but shall otherwise remain privileged and confidential. Any Mediation Party may provide documents and/or information to the Mediators that are subject to a privilege or other protection from discovery, including the attorney-client privilege, the work product doctrine, or any other privilege, right, or immunity the parties may be entitled to claim or invoke (the "Privileged Information"). By providing the Privileged Information to the Mediators or by consenting in writing to the Mediators providing such Privileged Information to another party, no Mediation Party nor its respective professionals intends to, nor shall, waive, in whole or in part, the attorney-client privilege, the work-product doctrine, or any other privilege, right or immunity they may be entitled to claim or invoke with respect to any Privileged Information or otherwise. Any work product, materials, or information shared or produced by a Mediation Party with the Mediators, including Privileged Information, shall be subject to all applicable

3

mediation privileges and shall not be shared by the Mediators with any other Mediation Parties without the consent of the sharing or producing Mediation Party.

7.      References to "Mediation Parties" in paragraphs 5, 9, 10, 11, 12, and 13 of the Mediation Order shall be construed, for purposes of mediation of the Shareholder Claims, to apply to the Mediation Parties listed in paragraph 4 hereof.

8.      Participation in the mediation does not waive any jurisdictional defenses that otherwise would apply to any party, all of which defenses are reserved.

9.      Except as expressly set forth herein, the Mediation Order shall remain in full force and effect.

10.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  September 30, 2020         */s/ Robert D. Drain*
        White Plains, New York       THE HONORABLE ROBERT D. DRAIN
                     1.    UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## <u>ORDER APPOINTING MEDIATORS</u>

Upon the unopposed motion (the "**Motion**") of Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**," the "**Company**," or "**Purdue**"), for entry of an order (this "**Order**") directing the appointment of the Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators and requiring that the Mediation Parties (defined herein) attend and participate in good faith in mediation, which will involve the mediation of the issue(s) defined herein, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.),[2] as a core matter under 28 U.S.C. § 157(b)(1) that this Court may decide by a final order consistent with Article III of the United States Constitution; and this Court having found that venue in this district is proper pursuant to 28 U.S.C. § 157(b); and it appearing that the relief requested is in the best interests of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

Debtors, their estates, and creditors; and that adequate notice has been given and that no further notice is necessary; and after due deliberation, and good and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Court authorizes and appoints the Honorable Layn Phillips and Mr. Kenneth Feinberg, working together on the same terms (both economic and non-economic), to serve as co-mediators in these chapter 11 cases (each a "**Mediator**," and together, the "**Mediators**") and to conduct the mediation as set forth herein.  The Mediators will be compensated at a rate of $500,000 per month each.  The Mediators, upon agreement between them, shall be entitled to retain, in their sole discretion, financial, public health or other professionals or consultants to assist them; *provided however* that the aggregate cost of all such financial or other professionals or consultants so retained shall not exceed $250,000 without further order of this Court.

3.      The Mediators are authorized to mediate the dispute(s) between the Non-Federal Public Claimants, on the one hand, and the Private Claimants,[3] on the other, as to the allocation of value/proceeds available from the Debtors' estates, including, without limitation, from any settlements, to such claimants, in each case on an aggregate basis as between them.  In doing so, the Mediators and Mediation Parties may need to consider a variety of concepts and issues, including, without limitation, various sources of value for the estates, various claims of persons or entities who are not Mediation Parties, the interests of private non-Mediation Parties, such as individuals for whom health care professionals have prescribed the Debtors' FDA-approved pain and other medications, and different modes and methods of allocation.  In addition, the Mediators

---

[3] "Private Claimants" include the parties listed in paragraph 6.b.

may, in their discretion, recommend to the Mediation Parties an expansion to the scope of the mediation. However, subject to the following sentence or further order of this Court, the Mediators are not authorized to mediate disputes, if any, with respect to the allocation(s) of value/proceeds among entities or persons comprising the Non-Federal Public Claimants or among entities or persons comprising the Private Claimants. The Mediators may also mediate any other issues that are agreed upon by all of the Mediation Parties.

4.      The Mediation Parties shall consist of the following: (i) the Debtors; (ii) the Official Committee of Unsecured Creditors (including any *ex officio* members) (the "**Creditors' Committee**"); (iii) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Consenting Ad Hoc Committee**"); (iv) the Ad Hoc Committee of NAS Babies; (v) the Ad Hoc Group of Hospitals[4]; (vi) the Ad Hoc Group of Non-Consenting States (the "**Non-Consenting States**"); (vii) the Multi-State Governmental Entities Group (the "**MSGE Group**"); (viii) the Ad Hoc Group of Individual Victims; (ix) counsel for the Blue Cross Blue Shield Association, various third party payors and health insurance carrier plaintiffs; and (x) the group of individual health insurance purchasers, represented by Stevens & Lee. P.C. (the "**Insurance Purchasers**") (each, a "**Mediation Party**," and, together, the "**Mediation Parties**").[5]  To the extent not previously executed, the Mediation Parties shall execute and agree to be bound by the Protective Order signed by the Court on January 27, 2020, Dkt. No. 784 (the "**Protective Order**").

---

[4] "Ad Hoc Group of Hospitals" shall have the meaning set forth in the *Verified Statement of the Ad Hoc Group of Hospitals Pursuant to Bankruptcy Rule 2019* [Dkt. No. 577] (as the same may be amended, modified or supplemented from time to time).

[5] Nothing in this Order is intended to or shall compel trade claimants (independently of their fiduciary, the UCC), the Debtors' current or former employees, officers and directors, the Federal Government or the shareholders to participate in the mediation at this time.

5.    Unless otherwise directed by the Mediators, each of the Mediation Parties, including a representative subset of their respective principals, attorneys, and advisors who are able to participate and make recommendations on behalf of the applicable Mediation Party shall attend and participate in the mediation sessions.  For the avoidance of doubt, nothing in this Order seeks to delegate the ultimate decision-making authority on any potential resolution of the mediation from a particular Non-Federal Public or Private Claimant to a representative subset; *provided however*, that any settlement agreement(s) involving any Mediation Party reached through mediation shall be subject to the provisions of paragraph 10.  The Mediators, after consultation with the Mediation Parties, may request each Mediation Party participating in a mediation session to appear with at least one principal, although, for the avoidance of doubt, the selection of that principal shall be left to the discretion of each Mediation Party and nothing in this Order requires, or is intended to require—even at the request of the Mediators—the direct participation or attendance at the Mediation by, any particular individual or any individual holding a particular title or rank.

6.    For the avoidance of doubt:

a.    "Non-Federal Public Claimants," as defined in the Motion and used in this Order in connection with the mediation, includes only the states, federal districts and U.S. territories, political subdivisions of the states and Native American Tribes, and does not include the federal government of the United States, or any agency, department, or instrumentality of the federal government (the "**Federal Government**").  The Federal Government is not required to participate in the mediation at this time.  All rights of the Federal Government— and, indeed, all of the parties—with respect to the valuation and ultimate plan

treatment of any claims of the Federal Government are fully reserved. Notwithstanding any other provision of this Order, the Federal Government shall be entitled, without further order of the Court, to send representatives to observe mediation sessions, in a manner to be specified further under the Mediation Procedures (defined below).

b.  "Private Claimants" as defined in this Motion and used in the Proposed Order in connection with the mediation includes only certain private parties, including, hospitals; health insurance carrier plaintiffs and third party payors; purchasers of private health insurance; various individuals and estates alleging personal injury or wrongful death claims, including guardian claimants asserting claims on behalf of minors born with NAS due to exposure to opioids in utero; and claimants comprising a putative class of NAS children seeking medical monitoring funding, and does not include trade claimants (except to the extent represented by their fiduciary, the UCC), current or former employees, officers or directors of the Debtors, or members of the Sackler family (in any capacity).  All rights of these parties—and, indeed, of all parties in interest— with respect to the valuation and ultimate plan treatment of any claims of, or against, these parties not currently in the mediation are fully reserved.

7.    Additional parties in interest other than the Mediation Parties (the "**Additional Parties**") may participate voluntarily in the mediation in response to a request from the Mediators, or further order of this Court.  The Mediators may request that the Court order any Additional Parties to attend the mediation, and nothing herein limits any Mediation Party's rights with respect to the ability to make such a request of the Court.  In such event, appropriate notice and a hearing

shall be provided.  All Additional Parties shall become subject to all of the provisions of this Order and shall agree to be bound by the Protective Order.

8.    No later than three business days following the entry of this Order, or as soon thereafter as the Mediators are available, the Mediators shall meet and confer with the Mediation Parties and the Federal Government to commence discussions regarding mediation procedures and a schedule for mediation, which shall be consistent with the terms of this Order in all material respects (collectively, the "**Mediation Procedures**").  The Mediators will ultimately determine the Mediation Procedures, in their sole discretion, so long as such procedures are consistent with the terms of this Order in all material respects.

9.    Except as provided in paragraphs 7 and 17, the Mediators shall have no communication with the Court relating to the substance of the mediation or matters occurring during the mediation.  Further, the Mediators shall not disclose whether a verbal agreement was reached or a Mediation Party has refused to execute a definitive written settlement agreement.  The Mediators shall have no obligation to make written comments or recommendations.  Except as provided in paragraph 17, the Mediators shall not be compelled to testify or disclose any information concerning the mediation in any forum or proceeding, nor shall any Mediation Party, any Additional Party, or any other party in interest: (a) call or subpoena the Mediators as a witness or expert in any proceeding relating to the mediation, the subject matter of the mediation, or any thoughts or impressions that the Mediators may have about the Mediation Parties, or their respective positions, in the mediation; (b) subpoena any notes, documents or other materials prepared by the Mediators in connection with the mediation; or (c) offer any statements, views or opinions of the Mediators in connection with any proceeding, including, without limitation, any pleading or other submission to any court.

10.     Subject to paragraph 5: (a) no party shall be bound by anything said or done during the mediation, unless a Mediation Party voluntarily agrees to be so bound by a written and signed stipulation submitted to the Mediators and the Mediation Parties; and (b) the results of the mediation are non-binding unless the Mediation Parties that agree to be so bound otherwise agree; *provided however*, that any settlement agreement(s) reached through mediation reduced to writing and signed shall be as binding against each signatory as those reached through litigation, subject, with respect to the Debtors, to the requirements of section 363(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, and this Court will retain jurisdiction to enforce any such settlement agreement(s).

11.     All communications made by and all submissions prepared by a Mediation Party in connection with the mediation, including but not limited to: (a) discussions among any of the Mediation Parties during the course of the mediation, including discussions with or in the presence of the Mediators, (b) mediation statements and any other documents or information provided to the Mediators or the Mediation Parties in the course of the mediation, and (c) all correspondence, settlement proposals, counterproposals, term sheets, and offers of compromise produced for, as a result of, or in connection with the mediation (collectively, the "**Settlement Proposals**") shall remain confidential, shall not be made available to the public and, as applicable, shall be subject to the Protective Order; *provided however*, that (i) the party making any such Settlement Proposal may agree to the disclosure of such Settlement Proposal pursuant to a confidentiality agreement or otherwise; and (ii) nothing in this Order limits the ability of any Mediation Party to (x) speak publicly (whether through court pleadings, court statements or otherwise) regarding issues in these cases, provided that doing so does not disclose confidential mediation exchanges, data or discussions regarding Settlement Proposals or responses thereto, or (y) comment on the opioid

crisis and those involved in it, these Debtors or these cases, provided that doing so does not, independently of this Order, violate the Protective Order.  The materials described in each of the foregoing clauses (a) through (c): (i) shall be protected from disclosure (and shall not be disclosed) to any other Mediation Party or to any other person or party who is not a Mediation Party (including holders of claims for which the Mediation Party is acting in a representative, agent or trustee capacity to the extent such holders are not themselves Mediation Parties) except in accordance with this Order or an applicable confidentiality agreement; (ii) shall not constitute a waiver of any existing privileges and immunities; (iii) shall not be used for any purpose other than the mediation; (iv) shall be subject to protection under Rule 408 of the Federal Rules of Evidence and any equivalent or comparable state law; and (v) except for the sole purpose of enforcing in the Court a settlement agreement reached in this mediation, shall not be admissible for any purpose in any judicial or administrative proceeding.  For the avoidance of doubt, if no such settlement agreement is reached, then the foregoing materials shall not be admissible anywhere.  The terms of the Protective Order and this Order shall govern any issues with respect to any Mediation Party's disclosure of any Settlement Proposals.

12.    The Mediation Parties and their counsel and advisors shall not in any way disclose to any non-party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution, or Settlement Proposal (subject to paragraph 11) that may be made or provided in connection with the mediation; *provided however*, that nothing in this Order shall prevent a Mediation Party from sharing with the Mediators, and thereafter disclosing, to the extent not prohibited by a separate confidentiality agreement or the Protective Order, any draft objections, any potential legal arguments such Mediation Party may raise in the chapter 11 cases, reports of

its own experts, any document produced or obtained in discovery, any information that is, was, or becomes available to a Mediation Party outside of the mediation, such Mediation Party's own work product or materials, or other pleadings filed or to be filed by such Mediation Party with a court of competent jurisdiction.

13.    Notwithstanding anything in this Order to the contrary, nothing in this Order other than compliance with the Protective Order shall prevent a Mediation Party from disclosing information revealed during the mediation to the extent such disclosure is required, or as may be required or requested by a governmental or regulatory entity with oversight or other authority over such Mediation Party, that is within the oversight or other authority of such governmental or regulatory entity, or required by statute or court order or other legal or regulatory requirements applicable to such Mediation Party; *provided however*, that if such Mediation Party is requested or required to disclose any information to any third party or governmental or regulatory authority, such Mediation Party shall, to the extent not legally prohibited, provide the disclosing party with prompt written notice of such requirement prior to any disclosure and shall furnish only that portion of such information or take only such action as is legally required.

14.    To the extent that any Mediation Party is in possession of privileged or confidential documents and/or information provided to such Mediation Party pursuant to the terms and conditions of the Protective Order, such information may, but shall not be required to, be disclosed to the Mediators and other Mediation Parties, but shall otherwise remain privileged and confidential.  Any Mediation Party may provide documents and/or information to the Mediators that are subject to a privilege or other protection from discovery, including the attorney-client privilege, the work-product doctrine, or any other privilege, right, or immunity the parties may be entitled to claim or invoke (the "**Privileged Information**").  By providing the Privileged

Information solely to the Mediators and no other party, no Mediation Party nor its respective professionals intends to, nor shall, waive, in whole or in part, the attorney-client privilege, the work-product doctrine, or any other privilege, right or immunity they may be entitled to claim or invoke with respect to any Privileged Information or otherwise. Any work product, materials, or information shared or produced by a Mediation Party with the Mediators, including Privileged Information, shall be subject to all applicable mediation privileges and shall not be shared by the Mediators with any other Mediation Parties without the consent of the sharing or producing Mediation Party.

15.    Nothing in this Order is intended to, nor shall it, waive, release, compromise, or impair in any way whatsoever, any claims or defenses that a party has or may have, whether known or unknown, in connection with or relating to acts or omissions that took place prior to entry of this Order.

16.    Nothing in this Order is intended to, nor shall it operate as, granting relief from the automatic stay in the chapter 11 cases, or the Preliminary Injunction, as amended from time to time, entered by the Court in the adversary proceeding styled, *Purdue Pharma L.P. et al. v. Commonwealth of Massachusetts et al.*, Adv. Proc. No. 19-08289 (Bankr. S.D.N.Y. Nov. 6, 2019) (RDD), Dkt. No. 105.

17.    Promptly following the termination of the mediation in accordance with the Mediation Procedures (such date, the "**Termination Date**"), but no later than two (2) business day after the Termination Date, the Mediators shall file a notice with the Court setting forth the following: (a) that the Mediators have conducted the mediation, (b) the names of the participants

in the mediation, (c) whether the participants in the mediation acted in good faith, and (d) whether and to what extent the mediation was successful.

18.    The Mediators shall be immune from claims arising out of acts or omissions incident to their service as Mediators in these chapter 11 cases.

19.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion.

20.    For the avoidance of doubt, to the extent any part of this Order shall conflict with Local Rule 9019-1 or the General Order, the terms and provisions of this Order shall govern.

21.    This Court retains exclusive jurisdiction to enter supplemental orders concerning all matters arising from or related to the implementation, interpretation, and enforcement of this Order, and to enter such orders at continued hearings on this Motion.

Dated:    March 3, 2020
          White Plains, New York

                                   */s/Robert D. Drain*

                                   _____
                                   THE HONORABLE ROBERT D DRAIN
                                   UNITED STATES BANKRUPTCY JUDGE

# Exhibit C

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P., et al.,   Case No. 19-23679 (RDD)

8                                  (Jointly Administered)

9         Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13              United States Bankruptcy Court

14              One Bowling Green

15              New York, New York 10004-1408

16

17              January 20, 2021

18              10:08 AM

19          HEARING HELD TELEPHONICALLY

20              VIA COURT SOLUTIONS

21

22

23   B E F O R E :

24   HON ROBERT D. DRAIN

25   U.S. BANKRUPTCY JUDGE

Page 2

1    Hearing re:  Motion of the Debtors for an Order Approving

2    Stipulation and Agreed Order Granting Joint Standing to

3    Prosecute Claims and Causes of Action Related to the

4    Insurance Coverage to (1) Official Committee of Unsecured

5    Creditors and (2) Ad Hoc Committee of Governmental and other

6    Contingent Litigation Claimants (ECF #2227)

7

8    Hearing re:  Objection to Motion (related document(s)2227)

9    filed by George Calhoun IV on behalf

10   of Ironshore Specialty Insurance Company. (ECF #2281)

11

12   Hearing re:  The Ad Hoc Group of Non-Consenting States

13   Statement in Support of Debtors Motion to Approve

14   Stipulation Granting Joint Standing to Prosecute Claims and

15   Causes of Action Related to the Debtors Insurance Coverage

16   to (1) the Official Committee of Unsecured Creditors and (2)

17   the Ad Hoc Committee of Governmental and Other Contingent

18   Litigation Claimants Filed by Andrew M. Troop on Behalf of

19   Ad Hoc Group of Non-Consenting States. (ECF #2289)

20

21

22

23

24

25

1    Hearing re:  Reply in Support of the Motion of the Debtors

2    for an Order Approving Stipulation and Agreed Order Granting

3    Joint Standing to Prosecute Claims and Causes of Action to

4    the Insurance Coverage to (1) Official Committee of

5    Unsecured Creditors and (2) Ad Hoc Committee of Governmental

6    and other Contingent Litigation Claimants (related

7    document(s)2227) filed by Benjamin S. Kaminetzky on behalf

8    of Purdue Pharma L.P. (ECF #2292)

9

10   Hearing re:  Motion to Approve/Motion for Claim Payment, re:

11   Claims No. 10231, 615270, 615218 and 614341 with Certificate

12   of Service filed by Deborah Clonts (ECF #2059)

13

14   Hearing re:  Objection to Motion / Debtors' Omnibus

15   Objection to Deborah Clont's Motions to Approve Claimant

16   Payment and for Lift of Automatic Stay (related

17   document(s)2209, 2059, 2175) filed by James I. McClammy on

18   behalf of Purdue Pharma L.P. (ECF#2266)

19

20   Hearing re:  Motion for Lift of Automatic Stay filed by

21   Deborah Clonts (ECF #2175)

22

23

24

25

Page 4

1    Hearing re:  Debtors' Omnibus Objection to Deborah Clont's

2    Motions to Approve Claimant Payment and for Lift of

3    Automatic Stay (related document(s)2209, 2059, 2175) filed

4    by James I. McClammy on behalf of Purdue Pharma L.P.

5    (ECF #2266)

6

7    Hearing re:  Letter dated 12/21/2020 in support of Amended

8    Motion for Lifting of the Automatic Stay (dated 12/21/2020)

9    Filed by Deborah Clonts (ECF #2194)

10

11    Hearing re:  Amended Motion to Amend Motion for Lift of

12    Automatic Stay (related document(s)2175) filed by Deborah

13    Clonts (ECF #2209)

14

15    Hearing re:  Fifth Amended Order Extending Time to Object to

16    Dischargeability of Certain Debts (related document(s)1829,

17    1289, 700, 720, 1009, 1524) filed by Eli J. Vonnegut on

18    behalf of Purdue Pharma L.P. with presentment to be held on

19    1/19/2021 at 10:00 AM (ECF #2220)

20

21    Hearing re:  Objection to Debtors' Fifth Amended Order

22    Extending Time to Object to Dischargeability of Certain

23    Debts filed by Deborah Clonts (ECF #2270)

24

25

Page 5

1  Hearing re:  Debtors' Reply in Further Support of the Fifth

2  Amended Order Extending Time to Object to Dischargeability

3  of Certain Debts [Related to ECF No. 2220 and ECF No.

4  2270] filed by James I. McClammy on behalf of Purdue Pharma

5  L.P. (ECF #2287)

6

7  Hearing re:  Motion of Debtors for Entry of an Order

8  Extending Time to Object to Dischargeability of Certain

9  Debts (ECF #700)

10

11  Hearing re:  Order signed on 1/7/2020. Extending Time to

12  Object to Dischargeability of Certain Debts (ECF #720)

13

14  Hearing re:  First Order signed on 4/2/2020 Extending Time

15  to Object to Dischargeability of Certain Debts (related

16  document(s)720) (ECF #1009)

17

18  Hearing re:  Second Amended Order signed on 6/17/2020

19  Extending Time to Object to Dischargeability of Certain

20  Debts (ECF #1290)

21

22  Hearing re:  Third Amended Order signed on 7/27/2020

23  Extending Time to Object to Dischargeability of Certain

24  Debts to and including November 2, 2020 (ECF #1524)

25

Page 6

1    Hearing re:  Fourth Amended Order signed on 10/21/2020

2    Extending Time to Object to Dischargeability of Certain

3    Debts (ECF #1829)

4

5    Hearing re:  Motion to Intervene filed by KatieLynn B

6    Townsend on behalf of Dow Jones & Company, Inc., Boston

7    Globe Media Partners, LLC, and Reuters News & Media, Inc.

8    (ECF #2022)

9

10   Hearing re:  Statement / The Ad Hoc Group of Non-Consenting

11   States' Statement Regarding the Motion to Intervene and

12   Unseal Judicial Records by Dow Jones & Company, Inc.,

13   Boston Globe Media Partners, LLC, and Reuters News & Media,

14   Inc. (related document(s)2022) filed by Andrew M. Troop on

15   behalf of Ad Hoc Group of Non- Consenting States (ECF #2065)

16

17   Hearing re:  Statement in Support of Motion to Intervene

18   (related document(s)2022) filed by Paul A. Rachmuth on

19   behalf of Ad Hoc Committee on Accountability (ECF #2066)

20

21

22

23

24

25

Page 7

1    Hearing re: Response /The NAS Children Ad Hoc Committee's

2    Joinder to the Ad Hoc Group of Non-Consenting States'

3    Statement Regarding the Motion to Intervene and Unseal

4    Judicial Records by Dow Jones & Company, Inc., Boston Glob

5    Media Partners, LLC and Reuters News & Media, Inc. (related

6    document(s)2065) filed by Scott S. Markowitz on behalf of Ad

7    Hoc Committee of NAS Babies (ECF #2090)

8

9    Hearing re:  Statement of The Raymond Sackler Family In

10   Respect of The Motion To Intervene And Unseal Judicial

11   Records By Dow Jones & Company, Inc., Boston Globe Media

12   Partners, LLC, and Reuters News & Media, Inc. (related

13   document(s)2022) filed by Gerard Uzzi on behalf of The

14   Raymond Sackler Family (ECF #2132)

15

16   Hearing re:  Debtors' Limited Objection to the Media

17   Intervenors' Motions to Intervene and Unseal Judicial

18   Records and Cross-Motion to Seal Certain Judicial Records

19   (related document(s)1828, 2188) filed by Benjamin S.

20   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2252)

21

22   Hearing re:  Reply to Motion to Unseal (related

23   document(s)2022) filed by KatieLynn B Townsend on behalf of

24   Dow Jones & Company, Inc., Boston Globe Media Partners, LLC,

25   and Reuters News & Media, Inc. (ECF #2288)

Page 8

1    Hearing re:  Motion to Amend Proposed Order (related

2    document(s)2022) filed by KatieLynn B. Townsend on behalf of

3    Dow Jones & Company, Inc., Boston Globe Media Partners,

4    LLC, and Reuters News & Media, Inc. (ECF #2039)

5

6    Hearing re:  Notice of Adjournment of Hearing on Motion to

7    Intervene and Unseal (related document(s)2022) filed by

8    KatieLynn B Townsend on behalf of Dow Jones & Company, Inc.,

9    Boston Globe Media Partners, LLC, and Reuters News & Media,

10   Inc. (ECF #2091)

11

12   Hearing re:  Stipulation / Notice of Filing of Stipulation

13   and Agreed Order Regarding Media Intervenors' Motion to

14   Unseal Materials Filed in Connection with UCC Privilege

15   Motions and Adjournment of Hearing on Media Intervenors'

16   Motion to Unseal (related document(s)2022) Filed by Benjamin

17   S. Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2136)

18

19   Hearing re:  Stipulation and Agreed Order Signed on

20   12/15/2020 Regarding Media Intervenors' Motion to Unseal

21   Materials Filed in Connection with UCC Privilege Motions and

22   Adjournment of Hearing on Media Intervenors' Motion to

23   Unseal (related document(s)2022) (ECF #2140)

24

25

Page 9

1    Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

2    Shortening Notice with Respect to Debtors' Motion for Entry

3    of an Order Sealing Judicial Documents (related

4    document(s)2252) filed by Benjamin S. Kaminetzky on behalf

5    of Purdue Pharma L.P. (ECF #2153)

6

7    Hearing re:  Declaration of Jon Lowne in Support of the

8    Debtors' Limited Objection to Media Intervenors' Motions to

9    Intervene (related document(s)2252) filed by Benjamin S.

10   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2154)

11

12   Hearing re:  Second Motion to Intervene and Unseal filed by

13   KatieLynn B Townsend on behalf of Dow Jones & Company, Inc.,

14   Boston Globe Media Partners, LLC, and Reuters News & Media,

15   Inc. (ECF #2188)

16

17   Hearing re:  Debtors' Limited Objection to the Media

18   Intervenors' Motions to Intervene and Unseal Judicial

19   Records and Cross-Motion to Seal Certain Judicial Records

20   (related document(s)1828, 2188) filed by Benjamin S.

21   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2252)

22

23

24

25

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 45 of 205

Page 10

1    Hearing re:  Statement of the Raymond Sackler Family in

2    Respect of the Second Motion to Unseal Judicial Records by

3    Media Intervenors Dow Jones & Company, Inc., Boston Globe

4    Media Partners, LLC, and Reuters News & Media, Inc. (related

5    document(s)2132, 2188) filed by Gerard Uzzi on behalf of The

6    Raymond Sackler Family. (ECF #2265)

7

8    Hearing re:  Reply to Motion to Unseal (related

9    document(s)2022) filed by KatieLynn B Townsend on behalf of

10    Dow Jones & Company, Inc., Boston Globe Media Partners, LLC,

11    and Reuters News & Media, Inc. (ECF #2288)

12

13    Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

14    Shortening Notice with Respect to Debtors' Motion for Entry

15    of an Order Sealing Judicial Documents (related

16    document(s)2252) filed by Benjamin S. Kaminetzky on behalf

17    of Purdue Pharma L.P. (ECF #2253)

18

19    Hearing re:  Declaration of Jon Lowne in Support of the

20    Debtors' Limited Objection to Media Intervenors' Motions to

21    Intervene (related document(s)2252) filed by Benjamin S.

22    Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2254)

23

24

25

Page 11

1   Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

2   Shortening Notice with Respect to Debtors' Motion for Entry

3   of an Order Sealing Judicial Documents (related

4   document(s)2252) filed by Benjamin S. Kaminetzky on behalf

5   of Purdue Pharma L.P. (ECF #2253)

6

7   Hearing re:  Debtors' Limited Objection to the Media

8   Intervenors' Motions to Intervene and Unseal Judicial

9   Records and Cross-Motion to Seal Certain Judicial Records

10   (related document(s)1828, 2188) filed by Benjamin S.

11   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2252)

12

13   Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

14   Shortening Notice with Respect to Debtors' Motion for Entry

15   of an Order Sealing Judicial Documents (related

16   document(s)2252) filed by Benjamin S. Kaminetzky on behalf

17   of Purdue Pharma L.P. (ECF #2153)

18

19   Hearing re:  Second Motion to Intervene and Unseal filed by

20   KatieLynn B Townsend on behalf of Dow Jones & Company, Inc.,

21   Boston Globe Media Partners, LLC, and Reuters News & Media,

22   Inc. (ECF #2188)

23

24   Transcribed by:  William J. Garling, Pamela A. Skaw, and

25   Sherri L. Breach

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 47 of 205

Page 12

```
 1     A P P E A R A N C E S :

 2     DAVIS POLK & WARDWELL, LLP

 3          Attorneys for Debtors

 4          450 Lexington Avenue

 5          New York, New York 10017

 6

 7     BY:  MARSHALL S. HUEBNER, ESQ.

 8          BENJAMIN S. KAMINETZKY, ESQ.

 9          JAMES I. MCCLAMMY, ESQ.

10

11     PILLSBURY WINTHROP SHAW PITTMAN, LLP

12          Attorneys for the Ad Hoc Group of Non-Consenting States
                        nd
13          31 West 52  Street

14          New York, New York 10019

15

16     BY:  ANDREW M. TROOP, ESQ.

17

18     GILBERT, LLP

19          Attorneys for the Ad Hoc Committee of Governmental and

20          Other Contingent Litigation Claimants

21          700 Pennsylvania Avenue, SE

22          Suite 400

23          Washington, DC 20003

24

25     BY:  RICHARD SHORE, ESQUIRE
```

Page 13

```
 1   A P P E A R A N C E S :

 2   AKIN GUMP STRAUSS HAUER & FELD, LLP

 3        Attorneys for the Official Committee of Unsecured

 4        Creditors

 5        One Bryan Park

 6        New York, New York 10036

 7

 8   BY:  SARA L. BRAUNER, ESQ.

 9        MITCHELL P. HURLEY, ESQ.

10

11   IFRAH LAW

12        Attorneys for Ironshore Specialty Insurance Company

13        1717 Pennsylvania Avenue, NW

14        Suite 650

15        Washington, DC 20006

16

17   BY:  GEORGE CALHOUN IV, ESQ.

18

19   JOSEPH HAGE AARONSON, LLC

20        Attorneys for the Sackler Family

21        485 Lexington Avenue

           th
22        30  Floor

23        New York, New York 10017

24

25   BY:  GREGORY P. JOSEPH, ESQ.
```

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 49 of 205

Page 14

```
 1   A P P E A R A N C E S :

 2   MILBANK, LLP

 3        Attorneys for the Sackler Family

 4        55 Hudson Yards

 5        New York, New York 10001

 6

 7   BY:  ALEXANDER LEES, ESQ.

 8

 9   DEBEVOISE & PLIMPTON, LLP

10        Attorneys for Mortimer Sackler

11        919 Third Avenue

12        New York, New York 10022

13

14   BY:  MAURA K. MONAGHAN, ESQ.

15

16   REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS

17        Attorneys for the Media Intervenors
                     th
18        1156 15  Street, NW

19        Suite 1020

20        Washington, DC 20005

21

22   BY:  KATIELYNN B. TOWNSEND, ESQ.

23

24   APPEARING PRO PER:  DEBORAH CLONTS

25
```

Page 15

1                    P R O C E E D I N G S

2                    THE CLERK:  Good morning, everyone.  My name is

3      Brian, one of Judge Drain's court clerks.

4                    Just as a reminder, today's hearing is 100 percent

5      telephonic, so we do ask everyone to please carry yourself

6      with the same decorum you would inside the courtroom.

7                    Please remember to keep your lines muted when not

8      speaking so we can avoid any unnecessary background invoices

9      that may interfere with today's hearing, and make sure to

10     unmute yourself before speaking so that you are heard.

11                   We do ask that everyone please state your name

12     each time that you speak so that the judge, all other

13     participants, and the recording for the transcriber can keep

14     track of who is speaking at all times.

15                   Thank you, everyone, for your cooperation and your

16     participation, and the judge will be joining us in just a

17     few short minutes.

18                   (Pause)

19                   UNIDENTIFIED SPEAKER:  Hi, Dr. Jay

20     (indiscernible).

21                   THE COURT:  Good morning, this is Judge Drain.

22                   We're here on the omnibus hearing date in January

23     for Purdue Pharma, L.P. et al.  This hearing is completely

24     telephonic.

25                   You should identify yourself and if you're a

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 51 of 205

Page 16

1    lawyer or your client, the first time you speak, you should

2    do so thereafter so there's no doubt that the court reporter

3    can put together your name with your voice.

4            Because this hearing is completely telephonic, you

5    should keep your phone on mute unless you are speaking, of

6    course, another which point you should unmute yourself.

7    There's one authorized recording of these hearings.  It's

8    taken on a daily basis by Court Solutions and provided on a

9    daily basis to our Clerk's Office.

10           If you want a transcript of the hearing on your

11   matter, you should contact the Clerk's Office to arrange for

12   the production of one.

13           So, with that introduction, I have the amended

14   agenda for these omnibus hearings, which came in yesterday

15   and I'm happy to go down that agenda in the order that the

16   agenda lists the matters.

17           MR. HUEBNER:  Thank you, Your Honor.

18           Let me first do a sound check.  This is Marshall

19   Huebner of Davis Polk, on behalf of the Debtors.

20           Can you Court hear me clearly?

21           THE COURT:  Yes, I can hear you fine.  Thanks.

22           MR. HUEBNER:  Terrific.

23           Good morning, Your Honor.  Happy new year, on this

24   important day, obviously, on events far outside of this

25   case.

Page 17

1           As is our custom, I would like to give a brief,

2      and actually in today's case, an unusually brief overall

3      case update before turning to the agenda.

4           Number one, Your Honor, good news on the Noramco

5      front.  So, I would like to note for the benefit of the

6      Court and all parties, that the Noramco Coventry sale that

7      was approved by motion last year closed on December 31st,

8      2020, as we hoped it would.  You know, with all the issues

9      going on in this case (indiscernible) other cases would be

10     very important case developments risked being lost entirely.

11     As we stated in our September 14th motion, this sale will

12     inject significant incremental value into the estate by

13     reducing the cost to Purdue of obtaining necessary active

14     pharmaceutical ingredients for various products.

15          And now that the transaction has closed, I'm very

16     pleased to report that we think that the savings will be

17     even greater than we had projected and will likely,

18     substantially feed $100 million, frankly, of incremental

19     value to stakeholders, which is, in the context of this

20     case, and given the unexpected uses of the estate's value,

21     is particularly important.

22          Number two, Your Honor, very briefly, what I would

23     call cash balance and health of the business.  So that the

24     Court knows, the Debtors' cash balance as of our last

25     publicly filed MOR is $1.275 billion, which, remarkably, is

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 53 of 205

Page 18

1    pretty close to what the considerable cash balance was on

2    the petition date almost a year and a half ago.

3         So that it's clear to all parties, this most

4    assuredly has not been achieved through increase or even in

5    the maintenance of the level of opioid sales.  In fact, if

6    you look at the November MOR and compare it to the one from

7    a year ago, you would see that our net sales are actually

8    down about 22 percent from the same month a year ago;

9    rather, the cash balance is a result of prudent, strategic

10   decisions and stewardship.  It's all the more impressive

11   when you consider the extraordinary burdens of this case

12   both, in soft and hard costs.

13        The complex underlying pharmaceutical business,

14   which obviously has many products, not just OxyContin, as I

15   have said a few times before over the last many months,

16   often gets lost in our various discussions of Purdue as a

17   Defendant or Purdue as a Debtor and the businesses, in fact,

18   have been managed and then performed exceptionally well in

19   the face of the truly extraordinary costs and enormous

20   challenges of these Chapter 11 cases and, of course, the

21   national climate and the pandemic, which has obviously

22   resulted in our highly regulated, you know, factories and

23   other facilities and even more extraordinary restrictions

24   that, you know, were further had to be dealt with and

25   addressed.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 54 of 205

Page 19

1        Number three, Your Honor, very briefly, on the PHI

2    initiatives, just a quick update since we did turn the year-

3    end, the Debtors have continued to progress their public

4    health initiative since each was last discussed with the

5    Court.  We, of course, fully understand and has made clear

6    many times that what happens with the Debtors' assets, post-

7    emergence, including with respect to the scope and the costs

8    of PHI initiatives is an issue whose precise contours are to

9    be worked out with the relevant stakeholders, but while in

10   Chapter 11, as we've also said many times, the company's job

11   continues to be on a cost-effective way advancing these

12   important public health initiatives so that decisions can

13   then be made.

14        As a reminder, we were last before the Court on

15   this topic on June 23rd, 2020, almost seven months ago.  And

16   since then, there have been, which I will very quickly tick

17   through, a couple of -- several, actually, very important

18   milestones.  Number, with respect to Nalmefene, which is the

19   medication intended to reverse opioid overdoses, the Debtors

20   in December filed with the FDA, an abbreviated new drug

21   application, known in the field as an NDA, for approval of

22   the vial version, V-I-A-L, of Nalmefene, and the approval of

23   the other forms, including the autoinjector, which I'm sure

24   the Court remembers, we discussed at some length, are on

25   track as well.  The target submission date for the prefilled

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 55 of 205

Page 20

1    syringe is May 2021 and the autoinjector target filing date

2    is May 2022.

3          With respect to the Debtors' generic version of

4    suboxone tablets, which is one of the leading, current

5    opioid addiction treatments, the FDA approved the Debtors in

6    March and as of May 2020, Purdue's generic suboxone tablets

7    were manufactured and ready for shipment.  So, that one is

8    already at fruition.

9          With respect to the thing we discussed most

10   recently, which is the HRT, low-cost, over-the-counter

11   naloxone nasal spray, to take it out of the world of

12   prescription and hopefully lower the cost dramatically for

13   the whole country, really, this is the medicine that is

14   similar no NARCAN and is intended to be used to reverse

15   opioid overdoses.

16         One clinical trial is required by the FDA

17   (indiscernible) approval.  That actually commenced in

18   September 2020, which followed the FDA's tentative approval

19   of RIVIVE, R-I-V-I-V-E, as the trade name, in May 2020.

20         The target, new-drug application submission date

21   for OTC naloxone is the third quarter of this year with

22   approval and launch both expected in the year thereafter.

23         So, I am happy to report since we, as you know,

24   and many others candidly think that these are extremely

25   important medications, that PI is progressing on track.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 56 of 205

Page 21

1           The last topic, Your Honor, before we go to the

2    agenda is where we are, you know, the end of exclusivity,

3    other upcoming dates in the case and the status of

4    mediation, which I will touch very lightly, but I think a

5    couple of very quick updates are important.

6           Obviously, Your Honor, it's not lost on anyone

7    dialed in this morning to the hearing that you ruled at our

8    last hearing that the mediation will be concluding on

9    January 31, which, at this point, is 11 days away and after

10   that, of course, exclusivity, as the Debtors requested, ends

11   on February 15th.

12          But February 15th is actually a critically

13   important date in this case for a second reason, as well.

14   The extraordinary injunction originally granted by this

15   Court on October 11th, 2019, is currently slated to expire

16   on March 1 and the deadline by which the Debtors have to

17   file a motion to extend that injunction, with respect to

18   either or both of the Debtors and the shareholder-related

19   persons is in fact February 15th on the motion that we

20   expect to be heard at the March 1 hearing at 10:00 a.m.

21          With respect to these issues, I think it's very

22   important for the Court and all parties to understand that

23   unless a settlement has been reached with the shareholders

24   by February 15th or the Debtors believe that one will very

25   soon be reached on or about that date, as I stand here today

Page 22

1    it is very difficult for me to conceive of a circumstance in

2    which the Debtors would, on February 15th, move to extend

3    the injunction, with respect to the shareholder-related

4    (indiscernible).

5           So, that brings us back to February 15th, which is

6    26 days from today.  With respect to the mediation, as the

7    Court and the parties are, of course, also aware, we are

8    extremely limited, as we should be, by the confidentiality

9    provisions and the mediation order we asked this Court to

10   enter as to what we can report.  That said, I don't think

11   it's telling any tales out of school today that we are not

12   currently where we need to be or, of course, I would be

13   standing here today making a good news announcement and I am

14   clearly not doing that.

                                         th
15          We have 26 days until February 15 , and we are

16   working as hard as we know how to on many, many issues with

17   many parties.  And on or about February 15th, we will, as we

18   have been ordered to, as, of course, must because of

19   exclusivity, file the best plan then possible, which we hope

20   will have widespread support, even if it does not yet have

21   complete consensus.

22          As Your Honor has told us again, and again, and

23   again, including on June 3rd, July 23rd, September 30th, and

24   December 15th, work hard to build consensus, but the Court

25   understands the likelihood that everyone will be onboard

1    with all aspects as of any particular date, and that the

2    Debtors need to take the conversations as far as they can,

3    but also need to move the cases forward and not let the

4    perfect be the enemy of the good.

5         I will cite only three examples for context and

6    then turn the agenda over.  On June 3rd, 2020, you said, and

7    I quote:

8         "The parties in this case need to realize that the

9    results in this case cannot be exactly what they want.

10   Perfection is not achievable here... I want this case to

11   move ... and one way to do that is to tell the Debtors we

12   don't need consensus on everything."

13        On July 23rd, 2020, you said:

14        "I sincerely hope that that's an agreement that

15   involves and includes all the mediation parties, but, again,

16   having served in that role many times, I know that sometimes

17   you can't achieve that.  Maybe you get all but one, for

18   example.  I'm not expecting complete consensus ... so I

19   would urge the parties, as I did last month, to put aside

20   the perfect and agree on the good and move on with things to

21   the next stage of this case."

22        And then, finally, and even in more direct context

23   on December 15th, you said:

24        "The parties don't have to reach agreement, but I

25   urge them to do their best to do so by January 31 on these

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 59 of 205

Page 24

1   issues so that if possible, a settlement is reached on both

2   the Debtor claims and potentially the third-party claims ...

3   the parties simply need to conclude these negotiations so

4   the plan can be filed because as we all know, every day that

5   passes, some poor soul is not getting either the counseling

6   that he or she needs or the treatment that he or she needs

7   or a NAF baby is no longer a baby and their grandparents are

8   not getting the help they need."

9          We will of course follow the Court's clear and

10   consistent admonitions.  Candidly, Your Honor, I don't know,

11   as I stand here today, exactly what plan we will be filing.

12   We have 26 days left and we know that the relevant parties

13   will remain intentionally and fully engaged both, through

14   the end of mediation on January 31, as well as the first two

15   weeks in February.

16          But I can assure you, Your Honor, that we will

17   file the best plan we can, based on where we are in the

18   middle of February.  With that, Your Honor, unless the Court

19   has any questions, I would propose to proceed with the

20   agenda.

21          THE COURT:  Okay.  Thanks for the update.

22          I don't have any questions.  I don't know if

23   there's anything that anyone, for example, the committee,

24   wants to respond to or whether to just move on to the

25   agenda.  So, I'll pause for a moment if someone wants to

Page 25

1    address anything that Mr. Huebner has not covered in his

2    opening remarks?

3            (Pause)

4            THE COURT:  Okay.  Then, why don't we proceed down

5    the agenda.

6            MR. HUEBNER:  Terrific, Your Honor.

7            Item 1 on the agenda is a contested matter which

8    is the Debtors' motion.  I would ask my partner, Mr.

9    Kaminetzky, if he would step up to the electronic podium and

10   handle the motion to approve the insurance stipulation.

11           THE COURT:  Okay.

12           MR. KAMINETZKY:  Good morning, Your Honor.  May I

13   please the Court, Benjamin Kaminetzky of Davis Polk on

14   behalf of Purdue, its 22 subsidiaries, and Purdue Pharma,

15   Inc., its general partner.

16           Can you hear me all right?

17           THE COURT:  Yes, I can hear you fine.  Thanks.

18           MR. KAMINETZKY:  So, Your Honor, I'll be

19   addressing the Debtors' motion for the Court to approve the

20   stipulation agreed order granting joint standing to

21   prosecute the Debtors' insurance causes of action to the UCC

22   and the ad hoc committee, which I'll refer to together as

23   "the committees."

24           The stipulation represents an almost unprecedented

25   occasion in these cases where relief has been requested

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 61 of 205

Page 26

1    and/or supported by both estate fiduciaries, the Debtors,

2    and the UCC, by the ad hoc committee, and by the non-

3    consenting states group, whose statement in support is at

4    Docket Number 2289.

5            I'll also be responding to the single objection

6    filed by Ironshore Specialty Insurance, formerly known as

7    TIG, one of the Debtors' insurers.  I will refer to them as

8    "TIG."

9            Now, consistent with the coordination and

10   cooperation among the Debtors and the committees that the

11   stipulation embodies, the committees have left it to me to

12   present the argument on this motion and my colleagues from

13   Akin and the Gilbert firm will step in only on rebuttal or,

14   of course, if the Court has any questions specifically for

15   one of them.

16           Your Honor, three sentences of context.  Debtors

17   and certain related parties are insureds, pursuant to over

18   100 insurance policies covering periods between 2001 and

19   2018 from over 30 insurance groups, which together provide

20   over $3 billion of coverage limits for, among other things,

21   product liability, general liability, and D&O liability.

22   Aside from approximately $275 million that has been

23   exhausted or is insolvent, this coverage remains

24   unexhausted.  The collective proceeds of this remaining

25   coverage is a very large substantial asset of the Debtors'

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 62 of 205

Page 27

1    estate to say the least.

2           Now, the stipulation reflects the Debtors'

3    judgment that is in the best interests of the estates for

4    the Debtors and the committees to cooperate and share

5    responsibility for pursuing the Debtors' insurance proceeds,

6    in which they all share a common interest.  The Debtors and

7    the committees, of course, hope to obtain these proceeds

8    through consensual resolution with our insurers, but certain

9    insurers have been unwilling to engage in productive

10   negotiations.

11          Now, given that intransigence, the Debtors and the

12   committees must prepare and be in a position to seek

13   litigated relief.  This stipulation accomplishes the goals

14   of cooperation and coordination through the following means.

15   Briefly, Your Honor, first it confers joint standing, so-

16   called Housecraft standing on the committees, and authorized

17   the committees jointly as co-Plaintiffs and co-parties with

18   the Debtors to assert, litigate, and resolve any or all

19   claims, causes of action, disputes, or other matters related

20   to Debtors' insurance on behalf of the estates.

21          To be clear, the Debtors will share their standing

22   with the UCC and the ad hoc committee.  This is not STN and

23   it's not Commodore; it's Housecraft.  The Debtors and the

24   committees are committed to cooperating and coordinating in

25   regards to the Debtors insurance causes of action.

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 63 of 205

Page 28

1                Importantly, Your Honor, nothing in this, as

2       stated in the stipulation in recital J, nothing in the

3       stipulation order shall predetermine the terms of a plan of

4       reorganization or bind a post-emergence entity after the

5       effective date of any plan of reorganization in these

6       Chapter 11 cases; in other words, this stipulation does not

7       address or affect who will have the authority to prosecute

8       the Debtors' insurance causes of action after the effective

9       date of the plan of reorganization and the emergence from

10      bankruptcy, at which point, if the insurance issues are not

11      resolved, (indiscernible) will transfer to the post-

12      emergence entity in charge of pursuing any of the Debtors'

13      remaining insurance proceeds.

14               Now, second, the stipulation states that the

15      Debtors will not seek approval of any settlement related to

16      the insurance causes of action without the consent of at

17      least one of the committees and neither of the committees

18      will seek such approval without the consent of the Debtors.

19      The point of this provision, Your Honor, is to avoid

20      disputes and minimize the need to any messy litigation over

21      any proposed insurance settlement.

22               Your Honor, the motion, stipulation are a

23      straightforward application of the Second Circuit's decision

24      in Housecraft.  Housecraft, as Your Honor well knows,

25      confirmed that a Debtor, like Purdue here, may consensually

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 64 of 205

Page 29

1   request, as we have done, that the Court vest committees of

2   creditor or even a single creditor with joint standing to

3   pursue estate causes of action alongside the Debtor, so long

4   as it's in the best interest of the bankruptcy estate and

5   necessary and beneficial to the fair and efficient

6   resolution of the case.

7         No one, not even TIG suggests that the motion and

8   stipulation are not necessary and beneficial to the fair and

9   efficient resolution of the case.  So, there's only one

10  issue before Your Honor today, and that's whether it is in

11  the best interests of the estates for the Court to confer

12  joint standing to the committee under the terms of

13  stipulation consistent with Housecraft and its progeny, so

14  that the committees can coordinate and participate with the

15  Debtors in pursuing the Debtors' insurance causes of action.

16        And we submit, Your Honor, that the answer here is

17  easy and it's an easy yes.  The proposed insurance

18  stipulation sets up a cooperative framework and marshals the

19  resources available to the estates, including the expertise

20  of ad hoc committee's insurance recovery counsel in order to

21  maximize recovery from the Debtors' insurance causes of

22  action, while at the same time, minimizing any need of the

23  parties to the stipulation to jockey for position, second-

24  guess each other, or to litigate related insurance issues

25  among the estate's key constituencies.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 65 of 205

Page 30

1          A single, focused voice aimed at maximizing

2     recoveries is most certainly in the best interests of the

3     estate.  And arriving at an efficient process to pursue

4     proceeds from the Debtors' insurance is critical to the fair

5     and efficient resolution of these cases, as the Debtors'

6     insurance represents one of the estate's most important

7     assets, when faced with resolving over 600,000 claims filed

8     by claimants asserting over $140 trillion in liability.

9          Your Honor, not one of the claimants that filed

10    these 600,000 claims in these cases has objected to the

11    Debtors' motion or second-guessed the judgment of the

12    Debtors, the UCC, and the ad hoc committee, not one.  The

13    only party to object is TIG, one of the Debtors' insurers,

14    and likely a future target of efforts to prosecute the

15    Debtors' insurance causes of action.

16         TIG's objection to what really amounts to an

17    administrative motion is understandably.  It has only to

18    gain from obstructing efforts to bring any proceeds from the

19    Debtors' insurance into these estates and it is only TIG and

20    not the estates themselves, as TIG attempts to suggest, that

21    stands to lose if the motion is granted.  That alone is

22    enough reason to question TIG's argument that the

23    stipulation is not in the estate's best interests, but most

24    importantly, each of their arguments fails on its merits, as

25    well.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 66 of 205

Page 31

1          First, TIG argues that the UCC, a committee,

2     should not be allowed to participate in insurance disputes

3     because the information TIG would seek in a dispute might

4     increase Debtors' exposure to claims brought by the

5     committee's constituents.  Well, as Your Honor well knows,

6     the information sharing in these cases between the Debtors

7     and the committees has been extensive and extraordinary and

8     that is even after the massive amounts of discovery on these

9     issues and the thousands of prepetition lawsuits before we

10    even entered this courtroom.  So, the notion that discovery

11    in an adversary proceeding regarding the Debtors' insurance

12    causes of action would somehow expose the Debtors to

13    additional exposure in a bankruptcy case with over 600,000

14    proofs of claim asserting over $140 trillion in liability

15    is, respectfully, absurd.

16          Second, TIG argued that an ad hoc committee's

17    involvement will not benefit the estates because claims of

18    government creditors are not covered by insurance.  Setting

19    aside the fact for a moment that this is simply not true,

20    that TIG's policies did not cover claims of government

21    entities, which the Debtors and committees will be happy to

22    address upon full briefing at the appropriate time, there is

23    clearly a benefit to all creditors, including those

24    represented by the ad hoc committee to increase the source

25    of value available for distribution to other creditors, so

Page 32

1    as to preserve their own share of estate value.

2            Third, TIG argues that the hourly rate of the ad

3    hoc committee's insurance counsel is higher than the rate of

4    the Debtors' insurance counsel; respectfully, this

5    completely misses the point.  The stipulation is not about

6    legal-rate arbitrage.  The point is that the Debtors will

7    certainly have to pay for this work once and that all

8    parties will benefit from coordination, so that the Debtors

9    do not have to pay for this work twice or three times.  This

10   stipulation ensures that.

11           Fourth, TIG objects to a purported veto right that

12   the committees have over any settlement by the Debtors.  As

13   discussed, Your Honor, the stipulation provides that the

14   Debtors will now file a 9019 motion for improve an insurance

15   settlement without the consent of at least one of the

16   committees.  This is designed to minimize the chance and

17   expense of litigation among the estate's chief

18   constituencies.  This is a sound exercise of the Debtors'

19   business judgment and was agreed to build trust and display

20   a unit of purpose.

21           And, by the way, assuring insurers that a

22   settlement is a settlement and not an opportunity to get

23   salami-sliced by others in a contested 9019 process is, I

24   think, a positive, not a negative.

25           Your Honor, at the end of the day, TIG opposes

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 68 of 205

Page 33

1    this stipulation because it has a very significant interest

2    in reducing any insurance recovery by the estates.  Since

3    the estate's best interests are contrary, this Court should

4    approve this settlement.

5             So, the two elements of Housecraft are satisfied,

6    and I could stop here, but, Your Honor, TIG attempts to cite

7    that the straightforward application of Housecraft by

8    arguing that general state law limits on creditor standing

9    would somehow limit standing under federal bankruptcy law.

10   This is fundamentally mistaken.  Federal bankruptcy law, not

11   state law, governs the question of which party or parties

12   may bring an estate cause of action on behalf of a Debtor.

13   And where federal bankruptcy law provides that another party

14   may bring an estate cause of action, be it a trustee or a

15   committee or a creditor that has standing, whether under

16   state law, a creditor or committee would also have separate

17   standing to bring the claim is simply not relevant at all.

18            Indeed, to be crystal clear, the committees do not

19   contend that they currently have standing to pursue the

20   Debtors' insurance proceeds, independent of the Debtor under

21   New York, Delaware, or any other state's law.  If the

22   committee did so believe, the motion would be unnecessary.

23            It is therefore no surprise that TIG cites no

24   Second Circuit authority that puts any state law constraints

25   on Housecraft standing.  Indeed, Judge Wiles over the summer

Page 34

```
 1    rejected any attempt to import state law standing doctrines

 2    into bankruptcy standing, and I'm referring to the McClatchy

 3    case that we heard in July that we included a discussion in

 4    our brief.

 5              In that case, Judge Wiles explained that what a

 6    committee seeks to do under the STN trilogy is to be

 7    authorized:

 8              "To act as the estate representative to pursue the

 9    claims that belong to the estate and to do so as a matter of

10    federal bankruptcy law, not state law."

11              In other words, slightly paraphrasing Judge Wiles,

12    and I'm again quoting, the committee is not asking the Court

13    to permit a derivative claim under the authority of Delaware

14    law or under other state law because, again, "the claims at

15    issue here plainly belongs to the Debtors' estate and should

16    be pursued on behalf of the estate."

17              Now, TIG relies on a few decisions from the

18    District of Delaware, which appear to hold that a committee

19    vested with standing to sue, sues not as the estate, but as

20    a collection of creditors and, thus, only maintains suits

21    that a creditor could maintain under state law.  And I'm

22    referring to the cases they cite, the Dura case, the HH

23    Liquidation case, Citadel.  But these decisions are simply

24    inconsistent with the Second Circuit's STN, Commodore,

25    Housecraft jurisprudence.
```

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 70 of 205

Page 35

1           The Second Circuit makes clear that a party vested

2      with standing is not prosecuting a cause of action that may

3      prosecute it in its own name, but rather, is suing in the

4      name of the estate by suing alongside with or stepping into

5      the shoes of the Debtor.

6           Now, perhaps these decisions flow from the fact

7      that the Third Circuit's Cybergenics doctrine is somewhat

8      different from the Second Circuit's doctrine.  Among other

9      important differences, Cybergenics does not provide an

10     analog of Housecraft.  But, in any event, it's clear that

11     these cases have no application to this case because the

12     committees here would be sharing the Debtors' standing, just

13     as a creditor in Housecraft shared the standing of the

14     trustee.

15          And as a reminder, Your Honor, the Second Circuit

16     in Housecraft went so far as to emphasize that:

17          "The case for recognition of a creditor's standing

18     ... is more compelling, whereas here, the trustee or Debtor-

19     in-possession, is also named plaintiff."

20          Second, TIG also conflates the concept of

21     Housecraft standing on the one hand and attempts by a

22     committee to intervene in a Debtors' cause of action in its

23     own right under 1109(b), which provides that parties in

24     interest have a right to appear and be heard.  But the

25     proposed insurance stipulation is not grounded on 1109, so

Page 36

1    this entire line of TIG's argument is simply irrelevant and

2    in addition to being irrelevant, it's also completely wrong.

3            It's clear under Second Circuit decision in Caldor

4    in 2002, that even in the absence of the stipulation, the

5    committees would undoubtedly have an unconditional right to

6    intervene and to appear and be heard in every adversary

7    proceeding involving the Debtors' insurance causes of

8    action.  And, further, because Caldor's holding does not

9    draw the core/non-core distinction that TIG hopes to

10   interject, TIG's attempt to raise and litigate that issue

11   now as opposed to do and in connection with full briefing in

12   an adversary proceeding regarding the Debtors' insurance

13   causes of action is not only procedural improper, but it's

14   just plain wrong.

15           Also, the allegedly, factually similar -- that's a

16   quote -- case identified by TIG to support its position,

17   that case out of Alaska, the Catholic Bishop case suffers

18   from at least three defects.  First, it did not involve a

19   Debtors' consent to a committee gaining standing, but,

20   rather, was addressing 1109(b).  Second, the Court there, I

21   believe it mistakenly conflated the interests of the

22   committee with those of an individual tort claimant.  And

23   most importantly, in addressing Section 1109(b), the Court

24   there expressly rejected Caldor, which is binding, Second

25   Circuit precedent for the principle that a creditor has

Page 37

1    unconditional rights to intervene in an action commenced by

2    a Debtor and, instead, cited other Circuit's approach to

3    intervention.

4            Your Honor, finally, TIG's express attempts to

5    litigate the motion for relief from stay without notice in

6    summary fashion in a paragraph is entirely improper and

7    should be denied at this time without prejudice.

8    Procedurally, this motion was never adjourned or re-noticed

9    as direct by the Court at the January 24th, 2020, omnibus

10   hearing, and TIG raising the issue in an objection to an

11   unrelated motion certainly does not comply with the 21-day

12   notice requirement that is required under the case

13   management order for all motions to lift stay.

14           Substantively, as noted in the Debtors' reply,

15   TIG's motion for relief from stay is still inappropriate for

16   decision and should be denied.  As foreshadowed by the

17   stipulation and TIG's vociferous objection to it, it is

18   likely to be very soon that the Debtors and committees

19   decide to litigate in this court the claims TIG argues

20   should be subject to arbitration.

21           When that happens, the parties to the proceedings

22   will be able to fully brief and argue those important

23   issues, but that day is not today.

24           In sum, Your Honor, it is clear that TIG has

25   fallen well short of demonstrating that the stipulation is

Page 38

1   not in the best interests of the estates and the silence and

2   assent of each and every one of the creditors of these

3   estates certainly speak much louder than the self-serving

4   suggestion of a target insurer that it knows better than

5   everyone else what is in the estate's best interests.

6            Accordingly, TIG's objection should be overruled

7   in its entirely, the Debtors' motion should be granted, and

8   the proposed insurance stipulation, among the Debtors, the

9   UCC, and the ad hoc committee should be entered.

10           Your Honor, unless you have any questions, I would

11   propose to turn the podium over to my colleague Andrew

12   Troop, representing the non-consenting states, who I believe

13   wants to be heard on this issue, as well.

14           THE COURT:  Okay.  Well, I do have one question,

15   and I probably ought to hear -- well, I should definitely

16   hear from you.  I should also hear in anyone who's a party

17   to this stipulation disagrees with your answer.

18           The Debtors' response to the objection by TIG, or

19   T-I-G, relies largely and ultimately, perhaps entirely, on

20   the concept embody in the Commodore and Housecraft cases,

21   that when one is conferred standing under those cases, one

22   has standing to bring the Debtors' causes of action on

23   behalf of the estate, generally, the 541 estate.

24           And in reading the stipulation, paragraph I, which

25   starts on page 3 defines the term Debtors' insurance causes

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 74 of 205

Page 39

 1    of action and, at least, based on the plain terms of the

 2    defined term, Debtors' insurance causes of action, it would

 3    appear clear to me that what the parties are agreeing to

 4    cooperate on and for which standing is conferred or joint

 5    standing along with the Debtor, ala Housecraft, are causes

 6    of action that belong to the Debtor.

 7         The definition that precedes the defined term

 8    arguably could be read a little more broadly.  It is any and

 9    all claims, causes of action, disputes, or other matters

10    regarding the Debtors' insurance.  And the authorization

11    paragraph, paragraph 1 on page 4, says subject to the terms

12    of the stipulation and order, the official committee and the

13    ad hoc committee are hereby granted leave, and shall each

14    have joint standing with the Debtors to assert, litigate,

15    and resolve in each case, co-plaintiffs and co-parties with

16    the Debtors, any and all claims, causes of action, disputes,

17    or other matters regarding the Debtors' insurance causes of

18    action on behalf of the Debtors' estates.

19         Now, I read that to mean in paragraph 1,

20    particularly in light of the last clause, to be on behalf of

21    the Debtors' estates and no one else.  One could, I guess,

22    argue that the cooperation provisions of this stipulation

23    could also cover potentially actions that the two committees

24    might have on their own, but I just want confirmation that

25    that's not what's contemplated here.  What's contemplated is

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 75 of 205

Page 40

1    actions on behalf of the Debtors' estates, exclusively.

2              Is that correct?

3              MR. KAMINETZKY:  One hundred percent, Your Honor.

4    That is my intention and apologies if it's unclear.  But

5    it's a purely, you know, Housecraft, you know, they can

6    jointly assert with us, (indiscernible) you know, the

7    insurance causes of action that the Debtors have, it doesn't

8    mean to expand or include anything else, other than the

9    Debtors' causes of action.

10             THE COURT:  Okay.  I don't think it's unclear, but

11   in my experience in insurance litigation, at times,

12   perfectly clear language can be asserted to be unclear and I

13   wanted the record to be clear that this stipulation pertains

14   only to Debtors' estate causes of action or causes of action

15   that belong to the Debtors and their estate.

16             And I mean assuming from the silence by the ad hoc

17   committee and the official committee that that's their view,

18   also.

19             MR. SHORE:  Your Honor, this is Richard Shore of

20   Gilbert, LLC on behalf of the ad hoc committee, and I can

21   confirm that, as well, on behalf of the ad hoc committee.

22             THE COURT:  Okay.

23             MS. BRAUNER:  Good morning, Your Honor.

24             Sara Brauner, Akin Gump, on behalf of the official

25   committee.  We confirm it, as well.

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 76 of 205

Page 41

1              THE COURT:  Okay.  Very well.

2              All right.  That was my one question, and I am now

3     going to hear briefly from, I think, the non-consenting or

4     the ad hoc committee of non-consenting states.  I believe

5     that's who you were going to introduce, Mr. Kaminetzky, and

6     anyone else in support of this motion, if they want to say

7     anything more.

8              MR. KAMINETZKY:  That's correct, Your Honor.

9              Mr. Troop has to say something in support and, as

10    I mentioned, in the up front, unless Your Honor has specific

11    questions, which, indeed, the committee and the official

12    committee and the ad hoc committee was just relying on me,

13    subject to any rebuttal.

14             THE COURT:  Okay.  Very well.

15             MR. TROOP:  Thank you, Your Honor.

16             This is Andrew Troop, on behalf of the ad hoc

17    group of non-consenting states.  I hope that I am clearly

18    audible.

19             THE COURT:  I can hear you fine, thanks.

20             MR. TROOP:  Thank you, Your Honor.

21             Your Honor, I will be brief.  As Mr. Kaminetzky

22    said, I think other than coming before you and asking for an

23    adjournment, this may be the first time that the four major

24    active groups in this case are here with a united view as to

25    what is in the best interests of these estates, and to be

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 77 of 205

Page 42

1    clear, the non-consenting states group not only believes

2    it's in the best interests of these estates for the Debtors'

3    insurance causes of action to be asserted, litigated, if

4    possible, resolved now, but it is in the best interests of

5    these estates for it to be done by this triad of parties.

6           They represent a broad cross-section.  Two are

7    fiduciaries.  One, in particular, the ad hoc committee's

8    lawyers are, you know, at the Gilbert firm, this is what

9    they do and they do so well, efficiently, and always with

10   the view towards what advances the best interests of the

11   estate in the recognition that the monetization of the

12   Debtors' insurance policies will, regardless of how this

13   case resolves itself through a plan of reorganization,

14   benefit all creditors.

15          We are supportive.  We are also very -- we think,

16   also, that the recognitions in the motion and in the

17   statement of common interests that not only the Debtors'

18   committee and the ad hoc committee have, but other

19   committees have.  We think that's absolutely right, and we

20   are confident that the checks and balances put into the

21   stipulation to ensure efficiency and voice are the right way

22   to go here.

23          We are also convinced and can understand that we

24   will be on the side parties in the sense of we are common

25   interests parties, and we will be kept apprised and the

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 78 of 205

Page 43

 1    like, but no more lawyers were necessary, and no more

 2    representatives were necessary to achieve the goals here

 3    that everyone shares.

 4              So, I won't repeat anything on the legal side,

 5    which Mr. Kaminetzky covered fully, but at its core, this

 6    stipulation strikes the appropriate balance to advance the

 7    Estate's interests at a time when it's important to do so

 8    and I would urge the Court to approve it.  Thank you, Your

 9    Honor.

10              THE COURT:  Okay.  Thank you.

11              All right.  I should have said this at the

12    beginning.  I've read the pleadings on this and having heard

13    oral argument on behalf of the movants, I'm happy to hear

14    oral argument on behalf of TIG, although, again, I have

15    reviewed the pleadings from both sides.

16              MR. CALHOUN:  Good morning, Your Honor.

17              This is George Calhoun of Ifrah Law on behalf of

18    Ironshore Specialty Insurance Company, formerly known as TIG

19    Specialty Insurance Company.  I also have Josh Wirtshafter

20    of Kennedys, who's counsel in the pending arbitration.

21              Can you hear me okay, Your Honor?

22              THE COURT:  Yes, I can hear you fine, Mr. Calhoun.

23              MR. CALHOUN:  Okay.  Thank you, Your Honor.

24              So, I know you've read the pleadings.  I won't

25    repeat what's in there, but I did want to respond and

Page 44

1    address to some of the points raised by counsel for Purdue.

2    First, I appreciate the clarification that they're relying

3    strictly on Housecraft, not on 1109(b).  Housecraft is,

4    obviously, a controlling Second Circuit decision and

5    depending on how Your Honor interprets it, it's either not

6    applicable or there's a Circuit split, or a third

7    possibility is it's got to be simply applied and find that

8    there's a -- it's not in the best interests of the estate

9    and let me explain why.

10         Housecraft dealt with an avoidance action under

11   Section 548 and in that case, the creditor in that case,

12   BMT, funded the litigation that the trustee otherwise could

13   not undertake, and so it provided a clear benefit to the

14   estate's causes of action, otherwise it would not have been

15   brought at all.  So, Housecraft, so that situation is

16   completely different than this case where the Debtor is

17   proposing not only to pay its counsel, but two other sets of

18   counsel to pursue an estate cause of action.

19         Housecraft is also not applicable here, Your

20   Honor, because it didn't direct at all in that case where

21   there was a controlling state law that says that this type

22   of action could not be brought by the third party.

23   Housecraft doesn't necessarily purport to override such

24   state law.  There's nothing in the Bankruptcy Code that pre-

25   empts state law that says a creditor or a group of creditors

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 80 of 205

Page 45

1    can bring a cause of action against an insurer, which they

2    concede they can't.  But it's not the case that there's any

3    sort of express preemption or even applied preemption

4    because they haven't shown any inconsistency here.  And,

5    obviously, this is not STN where they've made a demand and

6    haven't been able to pursue it.  So, I think those on

7    points, Housecraft just doesn't apply.  It's a different

8    situation.  There's no need to create a Circuit split

9    between the Second Circuit and the Third Circuit.

10             THE COURT:  Well, what's the Third Circuit split?

11   I'm not clear on that.  Are you referring to the Delaware

12   Bankruptcy Court cases, obviously, those are not Circuit-

13   level cases.

14             MR. CALHOUN:  No, but as Debtors' counsel referred

15   to, it's just a different level of how they apply these

16   principles.  I don't know that the Third Circuit objected

17   (indiscernible), but it's going to get to that issue.

18             THE COURT:  I guess the other point I would ask

19   you about is the Court in Housecraft, and, of course, it's

20   part of a trilogy, dealt with a statute, 548 of the

21   Bankruptcy Code, which, specifically, confers standing on

22   one party, the trustee or Debtor-in-possession.

23             To me, that's not also any specific issue of or

24   raising any sort of issue that would involve preemption

25   principles.  It involved standing principles; i.e., a party

Page 46

1    can take the place of and step into the shoes of a trustee

2    or Debtor in possession under a particular statute to assert

3    the Debtors' rights and I'm not sure that there is any real

4    distinction there between a federal statute and a state

5    statute.

6         It's really a question of who, as a fiduciary,

7    under the ultimate supervision of the Bankruptcy Court, can

8    act on behalf of the Debtor and its -- estate.

9         MR. CALHOUN:  Correct, Your Honor.

10        And what the Second Circuit said in Housecraft

11   with that, if you look at that question, you have to

12   consider what's in the best interests of the estate and --

13        THE COURT:  No, I understand that, but I think one

14   would have to admit that the target of potential litigation

15   is probably the least likely person to listen to, as to

16   what's in the benefit of the estate, as opposed to the

17   Debtor and fiduciaries, or tens of thousands of creditors.

18        MR. CALHOUN:  I understand that, Your Honor, and,

19   obviously, you can factor in that issue, but as counsel for

20   an insurer, we do feel strongly that our coverage litigation

21   should be with our insurer and not with lawyers for the

22   creditors.  It does create (indiscernible) and this really

23   gets into some of the things I want to talk about on that

24   issue, on best interests of the estate and the problems that

25   this causes.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 82 of 205

Page 47

1          I'd just note from the outset, counsel for the

2     Debtors, at one point in his presentation, made the comment

3     that some of the insurance companies were trying to obstruct

4     relief and were (indiscernible) that they were delaying.  I

5     just wanted to point out that, you know, we asked Your Honor

6     nearly a year ago for relief from the stay to pursue our

7     insurance coverage action and the Debtors approached us in

8     July and said, hey, would you like to negotiate?

9          We said, yes.  We didn't hear anything back from

10    them again until October when they ignored a response and

11    said would you like to negotiate?

12         We said sure, but if it doesn't work out, we'd

13    like to get relief from stay to finish resolving these

14    issues.  So, we have absolutely not refused (indiscernible);

15    it's been the opposite.  (Indiscernible) impatient while

16    we've been waiting for some further resolution and the Court

17    directed at our motion at our hearing on the motion for

18    relief from stay.

19         Something else that was said in terms of the

20    presentation that is really critical, they said there should

21    be a single voice, but what they're really asking for is

22    three voices.  They're asking for other groups to represent

23    not the Debtors' interests or the insured's interests, but

24    the interests of creditor groups.  And, certainly, to the

25    extent they had a settlement or something of that nature,

Page 48

1    those parties are going to have the right to weigh in and we

2    understand the desire to build consensus on that and don't

3    really have a problem with that, but we do have problem with

4    having three parties in our litigation multiplying the

5    litigation, which is not in the estate's best interests;

6    It's going to multiply the amount of work that's required.

7    There's been no allegation and there's no contention that

8    the Debtors don't want to maximize their -- the value of

9    their insurance.  They're represented by one of the largest

10   and career insurance groups in the country at Reed Smith.

11           And if we have three parties in our case, the

12   other half is another issue, as much as we'd like this done

13   as soon as possible, I have serious doubts, Your Honor, that

14   an insurance litigation is going to be finished before this

15   confirmation.

16           We're going to then have parties and the

17   litigations who represent committees that will be most

18   likely dissolved.  I know the stipulation doesn't control

19   the issue of what happens but that creates a very serious

20   concern about delay and problems in our ensuing coverage

21   litigation.

22           In fact, Your Honor, just -- I don't see the

23   benefit, on a cost benefit or any other basis, to create

24   those future problems in litigation when the Debtor's

25   perfectly competent and willing to step in and do this.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 84 of 205

Page 49

1            We have no problem if they consult with the

2     committees, but the committees don't need to be parties.

3     The committees being parties, not to represent the estate's

4     interests, but to represent their own, which is what they're

5     saying.  They're there to represent the interests of all

6     these creditors.  It's what's been alleged in the papers and

7     it was what was alleged today.

8            There's no need for it in this case.  The Debtors

9     have -- are perfectly capable of funding this litigation.

10    They're perfectly capable of pursuing it.

11           It's -- you know, we're happy that they can reach

12    consensus with these groups on something.  I'm sure they're

13    -- that can aid in their discussions but it -- it's got

14    nothing to do with it -- with the pursuit in this litigation

15    in an effective manner and efficient manner which is in the

16    estate's interests.

17           Which is why we raised our pending lift stay

18    motion.  We're happy, Your Honor -- we recognize that either

19    way there's some response and not on notice.  We're happy to

20    file a notice and have this heard.

21           We frankly were waiting and hoping that there'd be

22    some resolution or remediation before (indiscernible) this

23    motion prompted it.

24           And so, Your Honor, we think --

25           THE COURT:  That's the problem with telephonic

Page 50

 1    hearings.  I can't -- you have more to say, I guess.

 2            MR. CALHOUN:  No, go ahead, Your Honor.

 3            THE COURT:  No, no.  I thought you might have been

 4    done because there was a pause.  But you were just catching

 5    your breath.

 6            MR. CALHOUN:  Yeah.  I was -- I was just looking

 7    at my notes because they're a little bit scrambled.  But,

 8    yes, Your Honor, you know, so in short, we think there's

 9    good reasons here not to interfere with the state law

10    standing requirements that would ordinarily -- ordinarily

11    would preclude these third parties from participating in

12    this litigation where there's no need to have them in there

13    from a funding or from a motivation standpoint.

14            It avoids any conflict with state law or between

15    other districts and circuits and, frankly, Your Honor, if

16    the term sheet that's proposed is incorporated into the plan

17    and that plan is confirmed, these creditor parties are going

18    to replace the Debtor down the road anyway and, you know,

19    that might be a more appropriate time to deal with that

20    issue.

21            THE COURT:  Okay.  Then you wouldn't raise

22    (indiscernible) cases then?

23            MR. CALHOUN:  (Indiscernible) I can answer -- no,

24    Your Honor.  What I'm saying is if what they really want is

25    to control the insurance litigation, if the plan proposes

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 86 of 205

Page 51

1    that creditors become the new owners of the company, which

2    is my understanding of what was proposed, when they become

3    the new owners of the company, they'll be in control of

4    their insurance litigation.

5              THE COURT:  Okay.

6              MR. CALHOUN:  They're really sort of prejudging

7    that issue by asking that the -- not co-counsel for the

8    estate, but joint parties is what they're asking for, Your

9    Honor.  They're not asking, let's have one voice on behalf

10   of the Debtors in this insurance litigation.  Let's have

11   three voices which is not quite the same thing.

12             THE COURT:  Okay.  Very well.  Anyone else have

13   anything more to say?

14             MR. SHORE:  Your Honor, Richard Shore on behalf of

15   the ad hoc committee and just very, very quickly.

16             Mr. Calhoun said that -- that the Debtor and the

17   two committees reached out to take -- regarding settlement

18   to take -- said, sure, you know, let's sit down and they

19   didn't hear back from us.

20             What Mr. Calhoun left out is the take place, the

21   condition, on its willingness to sit down with us which was

22   that we agree or the Debtor agree that any disputes

23   regarding insurance coverage be resolved through

24   arbitration.

25             Obviously, that was not an acceptable condition to

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 87 of 205

Page 52

1    proceeding with settlement negotiations.

2         Mr. Calhoun also said that -- and I should say,

3    you know, more broadly, we did seek to negotiate with all of

4    the insurers to enter into settlement negotiations.  They

5    would have got little, not no, but little traction.

6         We think approving the stipulation and allowing

7    the Debtor and committees to initiate litigation will focus

8    the insurers on the need to resolve the coverage issue,

9    enhance prospects of settlement and, to the extent that we

10   can't settle during the bankruptcy case, we'll start this --

11   this -- the insurance disputes on the road to judicial

12   resolution sooner rather than later.  So we think that's

13   very important.

14        And then, finally, Mr. Calhoun said that it was

15   unlikely that the litigation would be resolved during the

16   bankruptcy case.  That, in our view, is a reason to approve

17   the stipulation, not not to approve it.

18        It would create approving a stipulation allowing

19   the committee -- the committees and the Debtor to work

20   together in coordination now, will create a smooth

21   transition to what happens, post-confirmation.

22        THE COURT:  Okay.  Thank you.  All right.

23        I have before me a motion by the Debtors in these

24   cases for approval of a stipulation between the Debtors and,

25   on the one hand, and the official unsecured creditors

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 88 of 205

Page 53

1    committee and the ad hoc committee of governmental entities,

2    of states and governmental entities, that is -- which I will

3    refer to as the ad hoc committee.

4          With respect to the Debtors' insurance causes of

5    action, the Debtors are parties to many difference insurance

6    policies and, as often happens in bankruptcy cases involving

7    rights to insurance, as well as outside of bankruptcy, there

8    appear to be disputes or potential disputes between the

9    Debtors and their insurers about the extent of coverage

10   under those policies.

11         The stipulation is brief and provides, first -- so

12   the terms of the stipulation are that the two committees are

13   granted leave and shall have joint standing with the Debtors

14   to assert, litigate and resolve any and all claims, causes

15   of action, disputes, or other matters regarding the Debtors'

16   insurance causes of action on behalf of the Debtors'

17   estates.

18         It is, I believe, clear, in particular because of

19   the last clause of that paragraph one of the stipulation but

20   also based on the representations made on the record today,

21   that standing and the stipulation as a whole pertains to

22   only the Debtors' estates' causes of action in respect of

23   their insurance policies.

24         The committees acknowledge that they currently do

25   not have their own causes of action in respect of the

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 89 of 205

Page 54

1    insurance policies; i.e., they don't have direct action

2    rights at this time and they're not under the stipulation

3    being conferred direct action rights or such standing or

4    even derivative standing but, rather, if I granted the

5    stipulation, standing along with the Debtor, in each case,

6    on behalf of the Debtors' estates with respect to the

7    Debtors' insurance causes of action.

8         The stipulation also prescribes when the Debtors

9    can seek approval of a settlement of causes of action and

10   prescribes the rights of the two committees and prohibits

11   their ability to seek approval of any settlement of the

12   insurance causes of action without the Debtors' consent.

13        That's in paragraph two of the settlement and then

14   finally in paragraph three of the settlement provides that

15   the parties, that is the Debtors and the two committees,

16   shall confer and work cooperatively regarding litigation of

17   the Debtors' insurance causes of actions and the parties

18   shall endeavor to make all decisions by agreement among the

19   parties subject to applicable law.

20        Given that paragraph and the representations in

21   the Debtors' reply to the sold objection to the motion,

22   which is by one of the insurers, Ironshore Specialty

23   Insurance Company, which people have been referring to in

24   this matter by its former name, T-I-G or TIG Specialty

25   Insurance Company, they will work cooperatively to proceed

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 90 of 205

Page 55

1    with any litigation efficiently from the perspective of the

2    Debtors' estate and, of course, will also obviously work

3    cooperatively because they need to, under paragraph two of

4    the settlement, with regard to any settlement negotiations.

5            The Second Circuit has well developed case law on

6    the conference of standing on third parties where standing

7    is, by statute, conferred only on the trustee or a debtor-

8    in-possession, where the conference of standing would permit

9    the third party to have standing to pursue estate causes of

10   action; i.e., causes of action on behalf of the debtor in

11   respect of its property and estate.

12           Starting with Commodore International Ltd. V.

13   Gould (In Re Commodore International Ltd), 262 F3d. 96, 100,

14   (2nd Cir. 2001) and proceeding thereafter to Blinka v.

15   Mirrored Industries USA, Inc., In Re Housecraft, Inc., 310

16   F3d., 64 (2nd Cir. 2002), the circuit has recognized that

17   where a trustee or debtor-in-possession with standing by

18   statute to pursue an estate cause of action or an estate

19   property right, agrees or consents to conferring that

20   standing on a third party, the court will grant that

21   standing and approve that agreement if doing so is (a) in

22   the best interests of the debtor's estate and (b) necessary

23   and beneficial to the fair and efficient resolution of the

24   bankruptcy case or proceeding.

25           In Housecraft, the Second Circuit recognized joint

Page 56

1    standing; i.e., standing on behalf of both the debtor and a

2    third party at the same time to pursue estate causes of

3    action and that is what is being proposed here as well.

4          No creditor of the estate has objected to this

5    motion and, indeed, the three groups collectively

6    representing essentially all of the creditors, affirmatively

7    support the motion; that is, the two parties who are parties

8    to the stipulation along with the Debtors, the official

9    committee of unsecured creditors and the ad hoc committee.

10   And, in addition, the ad hoc committee of so-called non-

11   consenting estates affirmatively support the motion as, of

12   course, do the Debtors.

13         The only party objecting to the motion is one of

14   the potential litigation targets, TIG, an insurer.  In the

15   Housecraft case, the circuit noted that where the debtor is

16   remaining as a party to a litigation and consenting to joint

17   standing, the court is well within its discretion to be

18   differential to that decision.

19         I believe that's particularly the case where all

20   of the key parties-in-interest in the case with an economic

21   stake in maximizing insurance proceeds recovery agree as

22   well to the conference of standing.

23         The objection asserts a few bases in support of

24   that objection.  The first is that the grant of standing

25   might confuse or otherwise impair the Debtors' estates'

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 92 of 205

Page 57

1    rights in respect of the Debtors' insurance claims.

2            The argument is that under applicable state law,

3    only the Debtor would have the ability to pursue these

4    causes of action at this time.

5            Of course, that is also the case or was also the

6    case in the Housecraft and Commodore cases with the

7    exception that the applicable statute there was a section

8    under Chapter 5 of the Bankruptcy Code that conferred

9    standing specially on the trustee or debtor-in-possession.

10           Nevertheless, the courts, as I have noted,

11   accorded standing to third parties to act on behalf of the

12   Debtor's estate.

13           The same logic, to my mind, would apply wherever a

14   third party would be acting literally on behalf of the

15   debtor's estate whether that cause of action be under state

16   or federal law.

17           The objector points to three or four cases decided

18   by the Bankruptcy Court for the District of Delaware as

19   authority for the contrary position that, in fact, the two

20   committees even if accorded standing to pursue the cause of

21   action would, in fact, not have such standing.

22           I have read those cases carefully and I believe

23   they are distinguishable and not, in fact, contrary to the

24   grant of standing here under paragraph one of this proposed

25   stipulation and order.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 93 of 205

Page 58

1          Perhaps the clearest example of that is the most

2    recent of those cases, In Re Citadel Watford City Disposal

3    Partners,  603 B.R. 897 (Bankr. D. Del. 2019).  In that

4    case, pre-bankruptcy -- I'm sorry, during the bankruptcy

5    case, before confirmation of the Chapter 11 plan, the

6    official creditors committee was accorded standing to bring

7    estate causes of action.

8          Under the plan, the liquidation trustee was given

9    that status as the debtor's successor.

10          Nevertheless, the official committee brought the

11   litigation as a derivative matter for breach of fiduciary

12   duty claims under Delaware's Limited Liability Company Act,

13   or Limited Partnership Act.

14          Later, the liquidation trustee sought to modify

15   the caption of the case to include the liquidation trustee

16   as a plaintiff or the plaintiff, as a plaintiff rather,

17   asserting that this was just a procedural matter and of not

18   substantive import.

19          The court, Judge Kerry, in analyzing two prior

20   decisions by his colleagues, which I'll get to in a moment,

21   concluded, under the plain terms of the Delaware Limited

22   Partnership statute, that as of the time that the litigation

23   was commenced, the plaintiff did not have standing to bring

24   the cause of action.

25          At that time, when it was commenced, the official

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 94 of 205

Page 59

1    unsecured creditors committee was the plaintiff and it was

2    bringing the action on a derivative basis which the Delaware

3    statute precluded.

4           The court, I believe, was clear that the

5    liquidation trustee was taking the standing, at that point,

6    as an assignee of the liquidation -- of the unsecured

7    creditors committee and concluded that the liquidation

8    trustee also did not have standing.  Id. at 901 thru 902 as

9    well as 907.

10          The court's whole focus was on derivative

11   standing, not standing as conferred by the Bankruptcy Court

12   to bring causes of action on behalf of the estate but rather

13   derivative standing under Delaware law.

14          That was also the focus in the two cases that

15   Judge Kerry construed, Judge Gross's case, In Re HH

16   Liquidation, LLC, 590 B.R. 211 at 284 through 85, (Bankr. D.

17   Del. 2018) and In Re Pennysaver USA Publishing, LLC, 587

18   B.R. 445, 467 (Bankr. D. Del. 2018).

19          In each of those cases, the courts were focused on

20   the bringing of derivative claims for breach of fiduciary

21   duties owed to creditors of either -- of a limited liability

22   company in that case as opposed to an LP in the Watford City

23   case.

24          The whole focus was on derivative standing, not on

25   direct standing, as conferred by a court order which the

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 95 of 205

Page 60

1   courts did not discuss at all.

2          I believe if that issue had been raised and

3   focused on by them, they would have reached the same result

4   which is that this was an action, if it could be brought by

5   the company, would be brought by the company and its

6   successors as opposed to someone suing derivatively in the

7   name of the company which was precluded by the Delaware

8   statutes.

9          I believe, therefore, that there would be no

10  impediments to standing here in a litigation that would name

11  the Debtor and the two committees as co-plaintiffs in each

12  case, acting on behalf of the Debtor.

13         Of course, if some court disagreed with that

14  analysis, although arguably it would now be collateral

15  estoppel as to TIG, since it's actually been litigated, the

16  solution would be simple.  You would drop the two committees

17  and continue on with the Debtor or its successor under a

18  plan.

19         But that limited prospect, in my view, is no

20  reason to deny approval of the stipulation as not being in

21  the best interests of the estate.

22         The objection also argues that, as a cost and case

23  management matter, the stipulation is not in the best

24  interests of the estate.  Again, I believe that the Debtor

25  has a low bar to meet here given that it would remain a

Page 61

1    party to a litigation and given, in addition, the lack of an

2    objection by anyone except a potential target of the

3    litigation.

4            The other prong of the test bears a little more

5    scrutiny than that, however, i.e., the prong that requires

6    the conference of standing to be necessary and beneficial to

7    the fair and efficient resolution of the bankruptcy

8    proceedings.

9            TIG argues that it will now be confronting three

10   plaintiffs potentially instead of one and that would

11   multiply the conduct of any litigation and unnecessary --

12   and unnecessarily complicates settlement discussions.

13           I've considered that argument carefully; first,

14   whether the focus should even be on the other party to the

15   litigation as opposed to the conduct of the bankruptcy case

16   generally but even putting the focus on the former point, as

17   opposed to the later one, which I believe is probably not

18   the right result, but I will do it anyway, it appears clear

19   to me that in respect of settlement discussions and the

20   settlement process, in the context of this particular case,

21   having the two committees with standing to particulate in

22   settlement discussions under the construct of paragraph two

23   of this stipulation is beneficial not only to the estates

24   generally but also to the other party to those settlement

25   discussions; i.e., the insurer.

1           In this case, the Debtors have been clear, from

2      the start, and this is far from the norm in Chapter 11

3      cases, that they, in one form or another, will make all of

4      their assets, including their insurance assets, available

5      for their creditors.

6           The creditors, as a practical matter, therefore,

7      in their views, are of high importance in the Court's

8      determination as to the approval of any settlement, directly

9      involving the two committees therefore in settlement

10     discussions will cut short any further attack on a

11     settlement or litigation over a settlement, or further

12     negotiations to improve the terms of a settlement,

13     previously negotiated by the Debtors because the key

14     parties-in-interest are actually there with standing to

15     participate directly as a party with standing in the

16     settlement process.

17          As far as litigation is concerned, it is clear

18     from paragraph three of the stipulation as well as the

19     representations made in support of the motion that the

20     parties, as they have done here, will coordinate their

21     efforts so that I do not expect, and I believe it would be

22     perfectly incumbent upon a court or an arbitration panel to

23     so limit if my expectation is not followed by the Debtor and

24     the two committees to prevent unnecessary duplication of

25     argument and discovery and any other aspects of the

Page 63

1   litigation that would be unduly burdensome and costly to the

2   defendant in that litigation.

3          As was the case here, the Debtors' counsel spoke

4   on behalf of the three parties.  They coordinated on a joint

5   reply and I'm assuming that they would do so in similar

6   fashion with regard to any litigation pleadings and the

7   conduct of litigation hearings so that you would not have,

8   for example, three different parties standing up and

9   objecting to the admissibility of any particular exhibit or

10  question of a witness or the like.  But that they would

11  coordinate those to be efficient.

12         I think a trial court would have -- be well within

13  its rights to rein in contrary behavior if it occurred

14  notwithstanding paragraph three of the stipulation.

15         So, it does not appear to me, even I were focusing

16  primarily on the insurers here, and their interests in fair

17  and efficient resolution of the bankruptcy proceedings, as

18  opposed to the fair and efficient resolution of the

19  proceedings generally, to conclude that this motion should

20  be denied.

21         To the contrary, I believe it should be granted.

22         I also believe it should be granted because I see

23  no reason for any delay in resolving the Debtors' insurance

24  claims and rights before confirmation of a plan.

25         Of course, the plan itself can modify again who

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 99 of 205

Page 64

1    would have standing to pursue those claims and rights on

2    behalf of the Debtors' estate but there's no reason to wait

3    for confirmation of a plan to continue with the process

4    that's thus far has been, it appears to me, rather desultory

5    but now with the approval of this motion, I believe, will

6    gain speed along with seriousness given the joint

7    involvement of the two committees.

8           So, I will grant the motion and Mr. Kaminetzky you

9    can email me the proposed order.  You don't need to formally

10   settle it on Mr. Calhoun but you should copy him on the

11   email so he can make sure it's consistent with my ruling and

12   doesn't change anything as far as the stipulation is

13   concerned.

14          MR. KAMINETZKY:  Thank you, Your Honor.

15          THE COURT:  There -- as noted, there's no motion

16   currently before me scheduled for a hearing for relief from

17   the automatic stay by TIG,  Of course, with proper notice, I

18   would hear such a motion although I would hope that, at this

19   point, now that the lines of authority are clear, the

20   parties will engage in trying to resolve these issues before

21   sending them to litigation, whether that would be in this

22   Court, in a district court or in an arbitration.

23          So I think that concludes this matter and we can

24   move on to the next matter on the calendar.

25          MR. KAMINETZKY:  Yes, Your Honor.

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 100 of 205

Page 65

1            Again, Ben -- Benjamin Kaminetzky.  I'm going to

2    turn the virtual podium over to my colleague, Jim McClammy

3    for items two and three on the agenda.

4            THE COURT:  Okay.

5            MR. MCCLAMMY:  Good morning, Your Honor.

6            Jim McClammy of Davis Polk on behalf of the

7    Debtors.

8            Items two and three are the motions that were

9    brought pro se by Ms. Deborah Clonts; one motion for claim

10    payment and that, two, a motion, and amended motion for the

11    lifting of the automatic stay.

12            I believe I see that Ms. Clonts is on the phone.

13            THE COURT:  Right.

14            MS. CLONTS:  Yes, I'm here.

15            THE COURT:  (Indiscernible) what I was about to

16    say.  So Ms. Clonts, you're here.  You're representing

17    yourself; is that correct?

18            MS. CLONTS:  Yes.

19            THE COURT:  Okay.  And it's C-L-O-N-T-S.

20            MS. CLONTS:  Yes, that's correct.

21            THE COURT:  Okay.  So I have reviewed your motion

22    for payment as well as the motion and amended motion for

23    relief from the automatic stay.

24            MS. CLONTS:  Your Honor, if -- uh-huh.

25            THE COURT:  So I just want to let you know that I

1    have reviewed those as well as the Debtors' objections to

2    them.

3            MS. CLONTS:  Uh-huh.

4            THE COURT:  But if you want to say anything more

5    in support of those motions, you could do that now.

6            MS. CLONTS:  Okay.  Before I was making a claim

7    for an exception.  It wasn't just claim payments.  That's

8    why I was motioning for the lift of stay or I'm not sure

9    because, you know, clearly I'm not an attorney.

10           But I'm not sure if it's called the lift of stay

11   or relief.

12           THE COURT:  Either term is fine.  Relief from the

13   stay or lift of the stay.

14           MS. CLONTS:  My term is fine?

15           THE COURT:  Yeah.

16           MS. CLONTS:  Okay.  Yeah.  So that's what I was --

17   that's what I came to argue was the crime fraud exception

18   and if that's okay, I will -- I will continue with that.

19           THE COURT:  Well, again, I've read -- I've read

20   your pleading.  So it's okay for you to continue with, you

21   know, to make an oral argument, too, or you can just rest on

22   the pleading; either one.

23           MS. CLONTS:  Okay.  And to be clear, I didn't -- I

24   have no idea that the UCC was working on this when I started

25   this, just to be clear.  I wanted to state that.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 102 of 205

Page 67

1          It started with me seeing someone file a motion

2     for a claim payment and I just thought, that's easy.  So I

3     filed one.  And then I was issued a hearing and while I was

4     researching for that hearing, I stumbled across the crime

5     fraud exception and I thought, well, that sounds easy.

6     Perdue just pled guilty to fraud.

7          So I went ahead and filed the crime fraud

8     exception.  It seemed like an open and closed case.

9          So I motioned for the lift of automatic stay

10    because, as I understood it, that's what you had to do to

11    invoke the crime fraud exception.  It seemed justified.

12          And with Perdue's strategic and well planned

13    bankruptcy, it just seemed that Perdue and the Sacklers were

14    trying to save billions of dollars in litigation and they

15    could afford excellent attorneys and I just -- I just

16    thought that that didn't seem fair and it seems, to me, that

17    the attorneys are the only ones making any money in this.

18    The victims are -- are not getting paid and, when they do

19    get paid, it seems that it'll just be pennies on the

20    dollars.

21          So the Sacklers breached their fiduciary duty by

22    transferring huge amounts of money anticipating litigation.

23    They transferred it out of Perdue to overseas trusts in an

24    attempt to hide assets from creditors.

25          So that was their -- qualified for their fraud,

Page 68

1    crime fraud exception.

2            Perdue also pled guilty to fraud all the way back

3    to 2007 and now 2020.  Their aggressive marketing tactics,

4    the -- the thing that you were just talking about, the

5    derivative fiduciary duty, that qualifies for that.

6            The directors also failed and breached their

7    fiduciary duty when they knew the company employees were

8    breaking the law and they permitted it.

9            My damages, most importantly, are the -- is the

10   loss of my daughter and up and down the docket is all, you

11   know, many, many documents and many, many exhibits.  You

12   know more than I do because you've probably seen the

13   unredacted ones.

14           And they have been before Congress, taken

15   responsibility, full accountability for everyone to see.

16   And I just believe that when the law for this is applied to

17   this case that it brings it to the level of meeting the

18   burden for crime fraud exception.

19           Thank you, Your Honor.

20           THE COURT:  Okay.  Thank you.  And, again,

21   Mr. McClammy, I've read the pleadings on this.  So you

22   should assume that but I'm happy to hear brief oral argument

23   if you want to do that or you can rest on the pleadings.

24           I think you may still be on mute, Mr. McClammy.

25           MR. MCCLAMMY:  I'm sorry about that, Your Honor.

Page 69

1    Thank you.

2          I think unless there are specific questions that

3    Your Honor has for the Debtors, we will rest on our

4    pleadings and simply reiterate, as this Court is aware, you

5    know, the import of the stay to these cases and moving them

6    forward and the fact that the Debtors and the other

7    constituents in this case, you know, remain very much

8    focused on bringing these cases to a conclusion for the

9    benefit of all the -- all of Perdue's creditors and the

10   public in general.

11         But, again, if Your Honor has specific questions,

12   happy to answer those.

13         THE COURT:  Okay.  That's fine.  Thank you.

14         All right.  I have two motions before me by

15   Ms. Clonts, each of which is opposed by the Debtors in these

16   Chapter 11 cases.

17         The first motion is a motion for payment of

18   Ms. Clonts' claims in these Chapter 11 cases.

19         There were four claims filed by  her and they're

20   each entitled, if allowed, ultimately to payment from the

21   Debtors' estates.  The claims are unsecured and they're pre-

22   petition claims; i.e., claims for harm that occurred to Ms.

23   Clonts based on the death of her daughter before the start

24   of these bankruptcy cases.

25         Ms. Clonts is not the only person who has filed

Page 70

1    such claims in these cases.  In fact, there are tens of

2    thousands of such claims filed against the Debtors

3    unfortunately for the claimants as well as claims by almost

4    all of the states in the United States, thousands of other

5    governmental entities and Indian Tribes, insurers,

6    hospitals, and other non-individual entities.

7              The amount of claims filed in this case, the

8    dollar amount is staggering and the Debtors, with the

9    official unsecured creditors committee, which is the

10   fiduciary for all unsecured creditors, and the ad hoc

11   committees in these cases, representing the states and other

12   governmental entities, as well as specific types of

13   claimants, such as the ad hoc committee of NES babies, and

14   insurers, have been addressing, since the start of these

15   cases, how to distribute to all of the claimants the maximum

16   amount of value that can be distributed.

17             The first motion, as I said, seeks payment now of

18   Ms. Clonts' claim.  She acknowledges that she saw a similar

19   motion made earlier in these cases by a claimant, like

20   herself, who tragically lost a child and believed that

21   making such a motion and the grant of such a motion would be

22   relatively simple.

23             However, the grant of such a motion runs contrary

24   to a fundamental principle of bankruptcy law, which is why I

25   denied the prior motion; namely, it is highly unusual,

Page 71

1   unless there's a net benefit to the other creditors, to pay

2   a pre-petition, unsecured claim before similarly situated

3   claims are paid.

4          The fundamental principle of the Bankruptcy Code

5   is to prevent some creditors from getting a leg up over

6   other creditors in the treatment of their similar claims

7   but, rather, to have that treatment apply to all claims

8   under, in the case of the Chapter 11 case, a Chapter 11

9   plan, that is negotiated as the Debtors have been

10  negotiating with key fiduciaries for creditors and then

11  ultimately proposed, on notice to everyone, and confirmed or

12  not by the Bankruptcy Court.

13         It would unduly prefer Ms. Clonts over the other

14  claimants to grant her motion now for payment and,

15  therefore, I will deny the motion.

16         I will similarly deny the motion for relief from

17  the stay which, to the extent it doesn't seek immediate

18  payment, would seek the ability to litigate the unsecured

19  claim that Ms. Clonts has filed in a non-bankruptcy forum

20  and I believe then, at least reading between the lines of

21  the motion, have it be paid.

22         Again, it is rare to have relief from the

23  automatic stay under 362(a) of the Bankruptcy Code to pursue

24  litigation of a pre-petition claim even without having it be

25  paid, just to have it be litigated unless unique

Page 72

1    circumstances apply such as the litigation is fully insured,

2    or the litigation is very far advanced and it would be more

3    efficient to have the claim be litigated in the forum that

4    has been presiding over the matter or the like.

5         The factors applied by the Second Circuit in the

6    In Re Sonnax Industries case, none of those factors applies

7    here.

8         Ms. Clonts has stated, and I appreciate she's not

9    a lawyer, that she believed that a so-called crime fraud

10   exception would provide for relief from the automatic stay

11   here and noted that the Debtors, Perdue, have already pled

12   guilty to certain crimes in the District Court of the

13   District of New Jersey during the course of these cases.

14        However, there was no such general exception or

15   exclusion from the automatic stay provided for in the

16   Bankruptcy Code.  Section 362(b)(4) provides that certain

17   sections of the automatic stay do not apply to the

18   commencement or continuation of an action or proceeding by a

19   governmental unit to enforce such governmental unit's police

20   and regulatory power including the enforcement of a judgment

21   other than a money judgment obtained in an action or

22   proceeding by the governmental unit to enforce such

23   governmental unit's police or regulatory power.

24        But, by its plain terms, that exception to the

25   automatic stay applies to governments, to governmental units

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 108 of 205

Page 73

1    and would not apply to an individual such as Ms. Clonts.

2         Her motion also references a claim that her claim

3    would not be subject to any discharge in this case under

4    Section 523(a)(2) of the Bankruptcy Code.

5         Again, I recognize that Ms. Clonts is not a lawyer

6    but there are two points to make here.  First, actions for a

7    declaration that the bankruptcy discharge does not apply to

8    a particular debtor under Section 523(a) of the Bankruptcy

9    Code are normally brought by an adversary proceeding rather

10   than a motion like this.

11        But, more importantly, by its plain terms, Section

12   523(a) of the Bankruptcy Code applies only to discharges of

13   individual debtors; i.e., people as interpreted by the

14   Second Circuit as the Second Circuit interprets the term

15   individual debtor.

16        These Debtors are not people.  They're

17   corporations and other legal entities.  For such entities,

18   Congress has a far more restrictive limitation on a

19   discharge.  It is set forth in Section 1141(d)(6) of the

20   Bankruptcy Code.  It says that notwithstanding paragraph

21   (1), which is the general discharge provision for

22   corporations and entities other than people, the

23   confirmation of a plan does not discharge a debtor that is a

24   corporation from any kind -- from -- of a kind of a debt

25   specified in paragraph (2)(a) or (2)(b) of Section 523(a)

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 109 of 205

Page 74

 1    that is owed to a domestic governmental unit or owed to a

 2    period as the result of an action filed under Subchapter 3A

 3    of Chapter 37 of Title 31 where a similar state statute

 4    which, in essence, is a type of statute that lets a person

 5    step into the shoes of a governmental unit like a

 6    whistleblower statute.

 7            Again, Ms. Clonts is not a governmental unit and

 8    doesn't fall into that exception.

 9            So, Ms. Clonts, I understand fully that you would

10    like to have some payment from the Debtors' estate as soon

11    as possible.  That payment, however, cannot come ahead of

12    payments to (indiscernible).  They should be made together

13    once your and their claims are allowed.

14            The parties have been negotiating a process, a

15    structure for reviewing claims like yours, and considering

16    whether they should be allowed in a way that's efficient and

17    cost effective for people like yourself as well as the

18    Debtors that tries to minimize lawyer involvement, for

19    example.

20            Those sorts of procedures have been adopted in

21    many cases where there are claim like yours and I am

22    assuming that if and when a plan is confirmed in this case,

23    such a procedure will be part of it and your claim will be

24    reviewed and whether it be allowed or disallowed or reduced,

25    but once that happens, there will be distribution on it as

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 110 of 205

Page 75

1     that -- and that that same process will apply to everyone

2     else who has filed a claim like yours.

3           But that process is a collective one.  An enormous

4     number of people are affected by these cases and it has

5     taken as long as we have taken in this case to get to a

6     point near to which such a plan can be filed and confirmed.

7           If the Debtor warrants a discharge, if that plan

8     is a truly organization plan as opposed to a liquidation

9     plan, then the Debtor will get a discharge except to the

10    extent it is asserted it is not entitled to one under the

11    section I just read from, Section 1141(d)(6).

12          But, again, that applies to governmental units,

13    i.e., the states and other governmental entities if they

14    want to pursue that type of relief.

15          But, at this point in the case, while people are

16    still dealing with the ultimate structure of a plan, and the

17    resolution of all of the Debtors' estates' claims against

18    third parties, including claims for alleged avoidable

19    transfers, which you have referred to, i.e., transfers of

20    value out of the Debtors for less than fair value or fair

21    consideration, where the Debtors were insolvent or the like.

22          But, again, that needs to be resolved before there

23    can be distributions to creditors.  And I can tell you that

24    the tea parties in this case, whether they be the Debtors,

25    the creditors committee or the ad hoc committees of the

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 111 of 205

Page 76

1    states and governmental entities and other ad hoc

2    committees, I believe have been doing their utmost to

3    resolved those issues as promptly as they can.  And I have

4    been doing my utmost to make sure that they focus on that

5    process in a way that takes into account the risks that they

6    face of not reaching an agreement on the process and the

7    rewards of either reaching an agreement or not reaching one.

8             I believe that that process is coming to a close.

9    I set a deadline on it.  And I am looking at I hope a

10   largely, if not entirely, consensual plan before the spring

11   and confirmation in the spring of this year.

12            We'll see if that can happen.  But I cannot move

13   the process any faster than it is moving at this point.

14            So I will ask Mr. McClammy to submit an order to

15   chambers denying both of the motions.  That order will make

16   it clear that it is not not denying or disallowing your

17   underlying claims.  You file those claims and they will be

18   dealt with under a plan.

19            MR. MCCLAMMY:  We will take care to submit that

20   order, Your Honor.

21            MS. CLONTS:  Thank you.

22            THE COURT:  Okay.

23            MS. CLONTS:  Thank you.  Thank you, Your Honor.

24   I'm so sorry that I had -- I got involved in this and I

25   didn't know what to do.  I didn't know --

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 112 of 205

Page 77

1              THE COURT:  No.  There's no reason --

2              MS. CLONTS:  -- you know --

3              THE COURT:  -- there's no reason to -- ma'am,

4     there's no reason to apologize at all.

5              MS. CLONTS:  Okay.

6              THE COURT:  This --

7              MS. CLONTS:  All right.

8              THE COURT:  -- is -- these are complicated issues.

9              MS. CLONTS:  Uh-huh.

10             THE COURT:  The Bankruptcy Code is something that

11    lawyers work with their entire career and they still learn

12    new things that are in it.

13             MS. CLONTS:  Yes.

14             THE COURT:  So we shouldn't -- you shouldn't

15    apologize.  There's no reason to.

16             But I did want to lay this out carefully so that

17    perhaps --

18             MS. CLONTS:  Uh-huh.

19             THE COURT:  -- the transcript can be pointed to if

20    there are other people, like yourself, who read things in

21    the press and think, oh, well, maybe I can get paid now or,

22    you know, why aren't payments being made now.

23             MS. CLONTS:  Right.

24             THE COURT:  If they reach out to the Debtors or

25    the creditors committee, the Debtors can send them this

Page 78

1    section of the transcript, at least to see how I analyzed it

2    in your situation and if there's a similar, you know, they

3    could then see it.  So --

4         MS. CLONTS:  Well, you made it very clear.  I

5    understand completely.

6         THE COURT:  Yes.  Okay.  All right.

7         MS. CLONTS:  Thank you so much.

8         THE COURT:  And, of course, the -- the claims

9    you've asserted are serious.  I mean, I --

10        MS. CLONTS:  Uh-huh.

11        THE COURT:  -- am not dealing with the merits of

12   those claims at all.  They're serious claims and it's

13   because of the seriousness of those claims and tens of

14   thousands of others, that the parties have been working so

15   hard in this case and by the parties, I mean, not just the

16   Debtors --

17        MS. CLONTS:  Right.

18        THE COURT:  -- but the various committees to try

19   to get a fair resolution for everybody.

20        MS. CLONTS:  Right.  I'm just so relieved this is

21   over.  So thank you again.

22        THE COURT:  It's not over yet, I'm afraid.  I'm

23   just (indiscernible) --

24        MS. CLONTS:  No, I mean -- I mean, for me, this

25   part of the --

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 114 of 205

Page 79

1            THE COURT:  Oh, okay.

2            MS. CLONTS:  -- this, I'm just glad this is over.

3    Thank you.

4            THE COURT:  Okay.  Very well.  Thank you.

5            MS. CLONTS:  Bye-bye.

6            THE COURT:  Okay.  All right.  I think the next

7    matter on the calendar apropos the section that I was just

8    talking about is the Debtors' request for a further

9    extension of the time to object to dischargeability under

10   Bankruptcy Rule 4007(c) and 1141(d).

11           I think that's the next matter.  I don't know who

12   was handling that from Debtors' side.

13           MR. MCCLAMMY:  Yes, Your Honor.  This is Jim

14   McClammy.  I believe that will be handled by Christopher

15   Robertson for us.

16           THE COURT:  Okay.

17           MR. ROBERTSON:  Good afternoon, Your Honor.  For

18   the record, Christopher Robertson, Davis, Polk and Wardwell

19   on behalf of the Debtors.

20           Can I be heard clearly in the Court?

21           THE COURT:  Yes.

22           MR. ROBERTSON:  Oh, thank you, Your Honor.

23           Your Honor, turning to agenda item number four,

24   very briefly, Ms. Clonts also objects to entry of the fifth

25   amended order extending time to object to dischargeability

Page 80

1    of certain debts.

2            I understand this objection remains live

3    notwithstanding the prior discussion.

4            THE COURT:  But this is the only objection, I

5    gather, too.  There's been no other -- no other responses to

6    the motion?

7            MR. ROBERTSON:  That -- that is correct, Your

8    Honor.  I guess let's skip to the end.

9            We initially filed this -- the request to extend

10   the determination deadline back on December 23rd, 2019.

11   There have been no objections to the extension that any, you

12   know, back then or any subsequent time until the present.

13           THE COURT:  Okay.  And have there been any changes

14   to the proposed order?

15           MR. ROBERTSON:  Just updating dates, Your Honor.

16           THE COURT:  Right.  But, I mean, no changes from

17   that -- from those dates, those updated dates.

18           MR. ROBERTSON:  No, Your Honor.

19           THE COURT:  Okay.  All right.

20           And I'm assuming no one has anything further to

21   say on this motion?

22           All right.  I will grant the motion for the same

23   reasons that I've granted the prior extensions.  I believe

24   that, at this time, in these cases, it would be a sideshow

25   and an undue burden on the governmental entities and any

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 116 of 205

Page 81

1    other entity to have to face the deadline under Rule 4007 to

2    seek a declaration of non-dischargeability under Section

3    523(a) to the extent that such a deadline applies and that

4    it's appropriate to extend that deadline so the parties can

5    see whether they can negotiate -- include negotiations on a

6    plan that would deal with dischargeability issues among many

7    others.  Debtors have sought this relief themselves.  They

8    would be the ones benefitting from the imposition of the

9    deadline.  If they're prepared to extend it, and no one else

10   has objected, other than Ms. Clonts, who I believe now

11   understands that the motion really doesn't pertain to

12   directly to her in any event.

13            So I will grant the motion and you can email that

14   order to chambers.

15            MR. ROBERTSON:  Thank you, Your Honor.

16            And, at this time, I would like to turn the podium

17   back over to my colleague, Benjamin Kaminetzky.

18            THE COURT:  Okay.

19            MS. KAMINETZKY:  Your Honor, that brings us to --

20   this is Benjamin Kaminetzky again of Davis Polk.  Good

21   afternoon.

22            That bring us to the final items on the agenda,

23   which is agenda items five, six, seven and eight.

24            I will be addressing those.

25            I'll turn things over to the media intervenors

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 117 of 205

Page 82

 1    shortly to address the specific objections that remain to

 2    the sealing and redactions proposed by the Debtors and the

 3    Sackler families.

 4              But I thought it would be helpful before we jump

 5    into merits to give the Court a brief overview of what's

 6    been going on and kind of the numerous docket entries and

 7    what's actually still --

 8              THE COURT:  I think you may have hit -- I think

 9    you may have hit mute briefly, Mr. Kaminetzky.

10              MR. KAMINETZKY:  Oh, I'm sorry.  I -- what I

11    propose to do is just to kind of update Your Honor on where

12    we are and what's still at issue because I think, quite

13    frankly, it'll make Your Honor happy as well as put

14    everything in context.

15              So -- and then I'll hand it over to Ms. Townsend's

16    representing the media parties to present any issues that

17    remain.

18              So, as you know, back in September, the UCC filed

19    two motions to compel the production of privileged documents

20    from the Debtors and the members of the Sackler families.

21              Motions to which the Debtors and the UCC reached a

22    negotiated resolution back in November.

23              Now, in connection with the UCC's privileges

24    motions, over 550 documents totaling almost 14,000 pages

25    were initially filed under seal or in case -- in the case of

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 118 of 205

Page 83

1    briefing heavily redacted an immense amount of material by

2    any measure and it's these materials that were the subject

3    of the media intervenors motions.

4              As Your Honor may recall, many of those papers

5    were initially filed under seal because they were, you know,

6    constituted documents produced and marked confidential

7    pursuant to the relevant protective orders entered in this

8    case or referenced such materials,

9              At the time, no party had objected to this sealing

10   until the media intervenors filed their motion in late

11   November.

12             It should not be left unsaid that there's no small

13   amount of irony to the fact that the parties are here today

14   on the media intervenors' motion to unseal.

15             The vast majority of the materials that are

16   subject to the motion were filed by the UCC and the

17   Sacklers, not by the Debtors.  And large swaths of it was

18   the Debtors' business material.  Hundreds, or multi hundred

19   page presentations to the Debtors' board of directors

20   containing detailed information about the Debtors' business

21   and product offerings, quarterly reports to the board and

22   the like.

23             Now why was this material filed?  The answer is

24   simple.  The bulk of the exhibits filed by the UCC and the

25   Sacklers are -- were intended to go to the merits of the

Page 84

1    parties' underlying liability argument and were filed so

2    that the parties could "tell their stories" through these

3    two discovery motions and specifically through various

4    arguments concerning the so-called crime fraud exception to

5    the attorney-client privilege.

6              But it was the Debtors who were caught in the

7    middle of the strategic decisions of the UCC and the

8    Sacklers to litigate by their stories, by proxy, through

9    these documents.

10             Now, in light of the fact that the hearing on the

11   privileges motions was until Monday evening scheduled to

12   proceed today, it was the Debtors who had to shoulder the

13   burden of reviewing thousands upon thousands of pages of

14   documents over the holidays, often page-by-page, and even

15   line-by-line.

16             The Debtors were and remain quite supportive of

17   the adjournment of the UCC's privileges motion and so the

18   Sacklers, so it means that the parties will continue to

19   dialogue.

20             But that doesn't change the fact, however, that

21   the Debtors were forced to evaluate reams of information

22   that we most assuredly, we, the Debtors, wouldn't have filed

23   and we had to do this in an extremely compressed timetable

24   demanded by the media parties.

25             With that out of the way, let me be crystal clear

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 120 of 205

Page 85

1    about one thing.  We agree, we fully agree, with the medial

2    intervenors that transparency in judicial proceedings is of

3    paramount importance not only to the parties and to the

4    Court, but also to the press and the American public.

5            There is intense public interest in these specific

6    Chapter 11 cases, understandably so.  Indeed, the Debtors

7    recognize that -- that as these cases enter their final

8    stages hopefully the public's impressed interest in these

9    proceedings is almost certainly to continue unabated.

10           And, for these reasons, the Debtors have been and

11   continue to be committed to transparency in these cases, a

12   commitment that I believe has been exemplified yet again by

13   the Debtors' response to the media intervenors motions to

14   unseal.

15           In short, over just a handful of weeks, a good

16   portion of which fell over Christmas and New Years, the

17   Debtors worked diligently to voluntarily unseal or authorize

18   the unsealing of the vast overwhelming majority of the

19   Debtors' information that was filed in connection with the

20   UCC privileges motion.  Again, mostly by parties other than

21   the Debtors.

22           And I don't think it would be an unfair or an

23   exaggeration in the slightest to say that the redactions

24   that remain are targeted and exceedingly narrow, in many

25   instances mere words or pages in exceedingly lengthy

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 121 of 205

                                                                        Page 86

 1    documents.

 2              Now as Ms. Town said -- Townsend informed the

 3    Court last night, the press and the parties have met and

 4    conferred extensively and narrowed their disputes to

 5    essentially two documents with redactions on a total of 42

 6    pages.  That's .3 percent, not three percent, .3 percent of

 7    the total pages filed in connection with the UCC's

 8    privileges motion.  And there was a remaining issue as well.

 9              Before turning the podium over to Ms. Townsend,

10    let me dispense with the remaining issue, at least as to the

11    debtors.  I don't speak to the Sacklers.

12              As Ms. Townsend informed the Court last night,

13    certain privilege log excerpts and related documents such as

14    compilations of individuals appearing on privilege logs that

15    were exchanged in discovery continued to remain under seal.

16    The debtors believe that withholding to be entirely

17    appropriate because, among other things, these materials

18    contain much information that has little or no relevance to

19    the case.

20              But, nevertheless, the debtors last night kept --

21    continued to consider the issue in good faith and can now

22    inform the Court, and we informed Ms. Townsend earlier

23    today, that the debtors do not now object to the unsealing

24    of the privilege log information so long as there is a

25    reasonable amount of time afforded to the parties to apply

Page 87

1    redactions to any commercially sensitive information which

2    might be theoretically in the subject lines or personally

3    identifiable information, such as email addresses, which is

4    consistent with the redactions that the debtors have applied

5    without objection to the other materials.

6           So in light of that, and I believe we could get

7    that done, Your Honor, in the next two weeks or so.  I

8    believe -- and then we could unseal that as well.

9           So I believe, Your Honor, we're down to literally

10   two documents.  And to be clear, it's not two documents

11   entirely under seal, but sporadic redactions in only two

12   documents that are still at issue, at least with respect to

13   the media and to the debtors.  And those are the documents

14   that Ms. Townsend identified last night, which is Mark Pries

15   Exhibit 137 as well as Leventhal Exhibit 123.

16          So, Your Honor, all that just to say is that we've

17   substantially -- I guess that would be an understanding.

18   We've narrowed the issues to certain redactions on two

19   certain documents that I think are still at issue.

20          But I now turn the podium over to Ms. Townsend who

21   we've been working with for the last several months and who

22   has been, quite frankly, a pleasure to deal with.

23          THE COURT:  Okay.  But before we do that, I just

24   want to -- I want to make sure the context for this is clear

25   in one respect.

Page 88

1          There was extensive discovery in these cases

2     starting early in the cases between the creditors' committee

3     and the ad hoc committee of non-consenting states on the one

4     hand, and the debtors and the Sacklers on the other side,

5     not really on the other hand, the debtors and the Sacklers.

6          As part of that discovery, as is quite common,

7     customary, the parties, both the targets of the discovery

8     and the parties seeking discovery, agreed to protective

9     orders to be so ordered by me whereby they contemplated that

10    certain information provided in the discovery would remain

11    confidential and, in fact, at different levels of

12    confidentiality.  That's a common practice to enable

13    discovery to proceed quickly without fights over what is

14    produced in the first instance.

15          But those orders, as is my practice and the

16    practice of the judges in the Southern District, contemplate

17    that they are subject to review and motions to unseal such

18    information by third parties, including, of course, the

19    press.

20          The debtors have on the calendar today motions to

21    seal documents under Section 107(b) of the Bankruptcy Code

22    and there are sealing orders in the case.  But, again,

23    sealing orders under 107 also recognize, because they're

24    often sought on shorten notice, again, to permit pleadings

25    to be considered without fights over confidentiality by the

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 124 of 205

Page 89

1    Court and other parties that have access to the full

2    information.  But they are subject, again, to the rights of

3    others, including the press, to have the documents be

4    unsealed.

5         In all of these instances, the ultimate burden on

6    disclosure and more appropriately to prevent disclosure is

7    on the party who wants to prevent disclosure.

8         So I appreciate all of the work that the parties

9    have done to focus on what is properly now at this stage in

10   these cases fit for disclosure to the public and it is clear

11   to me that they've done it with a proper eye to the actual

12   law, which would require disclosure of almost everything,

13   and certainly the materials that have been disclosed, which

14   is almost everything and that we're now discussing a far

15   more constrained or limited set of items.  In fact, we're

16   now down, as far as the debtors are concerned, to two pieces

17   of information.

18        This is all, of course, separate and apart from

19   the privilege motion.  And I agree with you, Mr. Kaminetzky,

20   that the issue of the sealed documents is largely

21   precipitated by both the committee and the ad hoc committee

22   of nonconsenting states on the one hand and the Sacklers on

23   the other to litigate, not in front of me, but in public

24   eye, not a privilege motion, but to some extent the merits

25   of their respective positions vis-à-vis each other.

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 125 of 205

Page 90

1           So that's just an inescapable fact as to the state

2      in which these cases were in when those documents were filed

3      and everyone had to deal with that.  There was a period, of

4      course, where the parties were educating themselves and

5      ultimately the issues here are issues to be decided by a

6      court and not by public opinion.  But I don't -- I certainly

7      do not fault anyone for precipitating the disputes that were

8      raised by the media intervenors.

9           So with that, I'm happy to hear from the

10     intervenors' counsel, Ms. Townsend.

11          MS. TOWNSEND:  Thank you, Your Honor.  And for the

12     record, Katie Townsend of the Reporters' Committee for

13     Freedom of the Press on behalf of the media intervenors, Dow

14     Jones & Company Inc., Boston Globe Media Partners, LLC and

15     Reuters News & Media, Inc.

16          As Your Honor is aware and as you and Mr.

17     Kaminetzky have already indicated, in December and January

18     the parties in this matter met and conferred without

19     participation from the media intervenors and ultimately

20     publicly filed in unsealed redacted form the vast majority

21     of the material that was previously sealed in its entirety

22     and that was the subject of the media intervenors' motions

23     to unseal.

24          We've since reviewed those publicly filed

25     materials and we've met and conferred with the relevant

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 126 of 205

Page 91

1    parties who filed timely objections to the motions to

2    unseal.

3            At this point the media intervenors are in a

4    position to voluntarily withdraw their pending motions to

5    unseal without prejudice except as to 17 documents that we

6    contend are still improperly sealed or redacted.  And those

7    documents, 17 documents, Your Honor, fall within two

8    categories identified in our reply.  And I'll address both

9    of those categories briefly.

10           I'll start with two -- the two documents that Mr.

11   Kaminetzky referenced, Exhibit 123 to the October 14th, 2020

12   Leventhal declaration, and Exhibit 137 to the November 18th,

13   2020 Preis declaration.  Those documents have been redacted

14   by the debtors purportedly on the ground that they contain

15   confidential commercial information within the scope of

16   Section 107(b).

17           Now, Your Honor, Section 107(a), as you know,

18   makes any paper filed in a bankruptcy matter like this one a

19   public record open to public inspection unless one of the

20   express enumerated exceptions to that disclosure mandate

21   applies.  Those enumerated exceptions that are found in

22   Section 107(b) or -- and 107(c) are narrowly construed.  And

23   as we explain in our briefing, the Second Circuit has

24   interpreted commercial information in this context to be

25   information that, if disclosed, would give an unfair

Page 92

1    advantage to competitors by revealing details about the

2    entity's commercial operations.

3              With respect to 123, Exhibit -- excuse me, Exhibit

4    123 to the Leventhal declaration and Exhibit 137 to the

5    Preis declaration, the debtors assert the redactions are

6    warranted, and as Your Honor has already indicated they

7    therefore bear the burden of demonstrating that the

8    redactions falls within the scope of an exception to Section

9    107, and that there's a compelling need to preclude public

10   access.

11             It's the media intervenors' position that they

12   have not met that burden with respect to these two

13   documents.  Exhibit 123 is a slide presentation dating back

14   to mid-2016 and we understand that the information redacted

15   from that presentation consists of internal projections

16   about exclusivity periods for certain products.  It's our

17   understanding including opioid products.

18             Exhibit 137 is a 2017 memorandum from Purdue's

19   president and CEO, Mr. Landau expressing his views about the

20   challenges that have been facing the company.  Large swats

21   of that memorandum are -- have been redacted and remain

22   under seal.

23             It's not at all clear and it's our position the

24   debtors haven't demonstrated that unsealing these documents

25   in their entirety, particularly given that they are at least

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 128 of 205

Page 93

1     four or five years old at this point, would give an unfair

2     advantage to any competitor of Purdue Pharma.  And for that

3     reason we argue that they should be unsealed.

4          With respect to the remaining 15 documents, and I

5     understand that the debtor's position with respect to these

6     has changed and so Mr. Kaminetzky didn't address them.

7     Those are privileged logs --

8          THE COURT:  Well, why don't we ask, do the

9     Sacklers still oppose the unsealing of the privilege logs?

10          MR. JOSEPH:  Your Honor, Gregory Joseph for the

11     Raymond Sackler family.  Yes, that is the one thing that we

12     do oppose.

13          THE COURT:  Okay.  All right.  I'm sorry to

14     interrupt you, Ms. Townsend, but I wanted to make sure that

15     you were arguing -- that you needed to argue on this point.

16     But you do, so go ahead.

17          MS. TOWNSEND:  Thank you, Your Honor.

18          With respect to those documents, so those are the

19     privileged log materials, and they include excerpts of

20     privilege logs that were filed as exhibits in connection

21     with the UCC's privileges motion and those are currently

22     sealed -- that are currently sealed in their entirety.

23          So setting aside the debtor is the only party to

24     timely file an objection to the unsealing of the privilege

25     log materials and the only party to offer I would say any

Page 94

1      form of a substantive argument for doing so is the Raymond

2      Sackler family party, and so I'll briefly respond.   We've

3      done so a bit in our reply, but I'll briefly respond to what

4      I understand their arguments in favor of continued sealing

5      of those materials, what I understand those arguments to be.

6                   First, in the written objections, the Raymond

7      Sackler family relies upon this argument that these

8      materials are not evidence and, therefore, they can be

9      sealed in their entirety.   It appears to me that their

10     position is that the materials here are not judicial records

11     to which the common law presumption of public access applies

12     or that the common law presumption is weaker here.

13                  Now to be clear, we disagree that these are

14     nonjudicial records.   We've argued for their disclosure

15     under the First Amendment as well as Section 107 and as

16     we've pointed out --

17                  THE COURT:  Well --

18                  MS. TOWNSEND:  -- in our reply brief --

19                  THE COURT:  -- can I interrupt you on this point?

20     I want to make sure I have -- I want to -- I'm sorry to

21     interrupt you.   I want to make sure I have the facts

22     straight on this.   These are not just privilege logs that

23     were provided in discovery.   They were actually filed on the

24     docket as exhibits to various declarations in the privilege

25     litigation, correct?

Page 95

1               MS. TOWNSEND:  That is correct, Your Honor.  We do

2       not seek --

3               THE COURT:  Okay.

4               MS. TOWNSEND:  Our motions do not seek any unfiled

5       discovery material merely exchanged between the parties,

6       only material that was filed.

7               THE COURT:  Okay.  Okay.  So you can go ahead.  I

8       just wanted to make sure that was clear on the record.

9               MS. TOWNSEND:  Thank you, Your Honor.

10              I think that my next point will sort of dovetail

11      with precisely that.  We do -- it is our position, and as we

12      stated in our reply, that the interpretation of the Second

13      Circuit's decision in Brown v Maxwell is not right, but I

14      think that's a little bit besides the point because we have

15      not moved to unseal these materials under the common law

16      presumption of access because in bankruptcy proceedings the

17      common law presumption has been displaced by Section 107.

18              And so the question here is not, you know, whether

19      or not these are judicial records to which the common law

20      presumption applies and whether that right has been

21      overcome, but rather whether Section 107 applies and, if it

22      does, which it clearly does because Section 107(a) doesn't

23      just apply to any paper.  And this is by plain language.

24      It's expressed in plain language.  It applies to any paper

25      filed in a case under -- in -- under -- in bankruptcy.

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 131 of 205

Page 96

1          So Section 107(a) plainly applies to these

2    materials because they were filed in connection -- they were

3    filed with the Court in this matter.  The question then

4    becomes does an exception apply.

5          Now with respect to the privileged materials as a

6    whole, the Raymond Sackler family has not asserted that any

7    specific exception would, under 107(b) or (c) applies to

8    make those documents not properly unseal -- not -- doesn't

9    require them to be unsealed.  And quite frankly, Your Honor,

10   I can't think of what possible argument that would be --

11          THE COURT:  Well --

12          MS. TOWNSEND:  -- if they are --

13          THE COURT:  -- the only one I can really think of

14   here is the one identified by Mr. Kaminetzky, which is

15   personally identifying information might be in the privilege

16   log for some reason.

17          And you don't have any problem with that being

18   redacted, do you?

19          MS. TOWNSEND:  No.  And to be clear, I was

20   referring to the documents as a whole.  I think to the

21   extent that there is -- that there are -- there is properly

22   with -- that there can be properly redacted, you know, non-

23   public personal identifying information, you know, we

24   wouldn't challenge the redaction of material that actually

25   does fall within an exception.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 132 of 205

Page 97

1        I think I would flag for Your Honor that it's my

2    understanding that the Sackler family parties are -- have --

3    are taking the position, and I'll be frank.  We didn't

4    realize this until meet and confer discussions with their

5    counsel that some of the material would also necessarily

6    from their perspective need to be redacted because it

7    includes counterparty information, so business and

8    investment counterparty information.

9        And the basis that they've asserted for that,

10   which they sort of dealt with as a separate category in

11   their objections to our motions to unseal, is the Court's

12   May 1st, 2020 ruling which brought that material within the

13   scope of sort of a heightened level of protection under the

14   protective order governing discovery.

15       And I think our position there would -- is sort of

16   two-fold:  One, the fact that there is a -- you know, the

17   propriety of the scope of a protective order governing

18   discovery, which is entered on a different standard, a good

19   cause standard, is not really what's at issue here.  What's

20   at issue here is whether this material that was filed with

21   the Court is accepted from disclosure under Section 107.

22       So I would respectfully to the Sackler family's

23   counsel say that the existence of the protective order or

24   the fact that this material is subject to a protective order

25   that governs discovery is not relevant at this stage.  In

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 133 of 205

Page 98

1    fact, most of the material as you've indicated that has been

2    unsealed to date was subject to a protective over governing

3    its provision in discovery.  And, again, those -- as Your

4    Honor's already indicated, protective orders certainly serve

5    different purposes in litigation than a sealing order does.

6              And you would -- we would contend that that

7    material also does not fall within one of the express

8    exceptions under Section 107.  It's not confidential

9    commercial information.  It's not trade secret information.

10   It's not research and development information, the specific

11   categories that have been identified -- that are identified

12   or expressly enumerated in Section 107(b).

13             And so for that reason, too, we would argue that

14   the privilege log materials should be disclosed.  To the

15   extent that there are redactions, that that material that is

16   properly within the subject of an exception to 107, that

17   would be non-public TII, for example, that material could be

18   redacted, but those redactions have not been made.  The

19   material has just been sealed in its entirety.

20             And I think, Your Honor, that really covers the

21   waterfront with respect to the material that's -- the 17

22   documents that we -- that are still at issue.  I would be

23   happy to answer additional questions Your Honor has with

24   respect to those materials.

25             THE COURT:  Well, I have a question for the

Page 99

1    parties.

2          We have been looking for a complete version, both

3    redacted and unredacted, of Exhibit 123 to the Leventhal

4    declaration and Exhibit 137 to the Preis declaration and

5    don't have them.  I would like someone to email those to

6    chambers immediately so I can look at them, both the

7    redacted and unredacted versions.

8          MR. HURLEY:  Your Honor, this is Mitch Hurley with

9    Akin Gump on behalf of the official committee.  We can

10   certainly take care of sending the Preis exhibit you

11   referenced.  And whatever version of the Leventhal exhibit

12   we have we will send as well.

13         THE COURT:  Okay.  And, again, I need both the

14   complete and the redacted ones.

15         MR. KAMINETZKY:  Well, Your Honor, we could --

16   this is Ben Kaminetzky.  I'll have someone do that from my

17   office right away --

18         THE COURT:  Okay.

19         MR. KAMINETZKY:  -- both of them --

20         THE COURT:  Thank you.

21         MR. KAMINETZKY:  -- together.

22         THE COURT:  Okay.

23         MR. KAMINETZKY:  Your Honor, would you like to --

24         THE COURT:  All right.

25         MR. KAMINETZKY:  This is -- I'm sorry.  Would you

Page 100

1    like to deal with the privilege log issue with --

2              THE COURT:  Yeah.

3              MR. KAMINETZKY:  -- the Sacklers or --

4              THE COURT:  We should deal with -- why don't we

5    deal with the privilege logs while I'm waiting to get those

6    other two exhibits.

7              MR. KAMINETZKY:  Okay.  So I will --

8              THE COURT:  So I take that -- I think that means

9    Mr. Joseph?

10             MR. JOSEPH:  Yes, Your Honor.  May it please the

11   Court, thank you.

12             Your Honor, the only issue concerning the

13   privilege logs that I would like to raise is, first, it's

14   only relevant to the general challenges motion which has

15   been adjourned at the request of the UCC to see whether it

16   can be resolved.  As -- and I'll come in a moment to the

17   fact that it has been overwhelmingly resolved so far.

18             But this motion, the general challenges motion,

19   hasn't been heard, may never be heard.  And if it is heard,

20   we're talking about a series of entries that are not

21   evidence, that are not evidential, that are tools that are

22   used for the Court to help identify what the nature of the

23   claim is and how to resolve the evidence issue.  Ninety

24   percent of the entries being sought are irrelevant to any

25   decision the Court would ever render on the general

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 136 of 205

Page 101

1    challenges motion.  That's because during the briefing

2    process, the parties have streamlined the dispute so that

3    almost 90 percent of the entries that the media is seeking

4    will never be relevant, will never be used by the Court to

5    decide the motion.

6         Hurley Exhibit B, which was the privilege log

7    entry exhibit filed with the opening briefs contains over

8    12,500 entries.  Preis Exhibit B, which was filed on reply,

9    cut that number to 1,661 entries.  So that eliminated

10    approximately 90 percent of the initial privilege log

11    entries from potentially even being relevant to Your Honor's

12    decision and we've cut that number down.  By making another

13    production it's still a number in excess of 1,500, and this

14    process is continuing.  That was the reason why the UCC

15    sought to defer the motion for which these are relevant.

16         And we suggest, Your Honor, that 107 under the

17    Second Circuit's opinion in Orion codifies the common law

18    right of access and it specifically says the right is not

19    absolute.  The Court has to grant the motion to protect if

20    it's under 107(b) in there particular categories, but it has

21    discretion.  And the Supreme Court says that when a statute

22    covers an issue that's previously governed by the common

23    law, the statutes interpreted consistently with the common

24    law with the presumption that congress intended to read --

25    retain the substance of the common law.

1          So if we look at what the law is in this area, the

2     leading decision is the decision by the Second Circuit in

3     Brown.  And the Court said that the weight to be given a

4     presumption of access for discovery materials depends on the

5     role the material plays in the exercise of judicial power

6     and the resulting value of the information to people, the

7     media and the public monitoring the federal courts.

8          And the reason it says that is it distinguishes

9     summary judgment materials.  It says those are automatically

10    reviewable.  That's going to lead to an adjudication on the

11    merits.  That's an act of government that has to be

12    reviewable.  But a discovery issue is not an adjudication on

13    the merits.

14         And here we know that if this motion is decided,

15    it's not going to be used -- Your Honor will not be using at

16    least 90 percent of the materials which the media is

17    seeking.  Brown says that you look at the role the material

18    plays in the exercise of judicial power.  Well, we know even

19    for the ten percent that remains it's not comparable to

20    summary judgment evidence.  It's not any evidence.  It's not

21    something you would decide in adjudicating a substantive

22    motion.

23         Public access isn't going to facilitate any

24    meaningful public monitoring of the Court's function and its

25    exercise of its function.  All the relevant entries are

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 138 of 205

Page 103

1    quoted in the briefs.  And there is prejudice in unsealing

2    these materials.  They do contain the names of investment

3    counterparties which Your Honor ruled on May 1 would cause

4    harm to the estate because it would cause harm to the

5    Sacklers in connection with their ability to fund any

6    settlement.  They contain personally identifying

7    information.  All of that would need to be redacted.

8         But there's another prejudice here, too.  It's no

9    secret that our clients have been vilified in the media.

10   They're harassed and threatened on social media.  So

11   publishing thousands of irrelevant entries listing

12   communications with others over a 25-year period will permit

13   those others to be harassed and threatened, and there is no

14   legitimate need for public access to non-evidence.

15        It's also -- if you think, Your Honor, about this

16   for a moment.  Suppose they had made this motion initially

17   when the Hurley Exhibit B was the standard.  Then there

18   would have been 12,500 entries that were potentially

19   relevant.  Now there are about 1,500.  The parties are

20   speaking to see whether they can resolve this general

21   challenges motion altogether and render them entirely

22   irrelevant.  If that happens, then this whole issue as to

23   which these non-evidential privilege log entries were filed

24   would be moot.

25        I would suggest, Your Honor, that at a minimum

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 139 of 205

Page 104

1   this motion is premature because if the parties succeed in

2   resolving the general challenges motion, then none of these

3   materials are ever going to be relevant to a judicial

4   decision.  The issue is going to be moot.  Under the common

5   law, Judge Preska (ph) and Magistrate Judge Ellis have ruled

6   documents submitted on a motion that is moot are not

7   judicial documents under the common law.

8           So we would ask the Court if it's not inclined to

9   deny this motion, to adjourn it to the date which is set for

10  the general challenges motion if that's not resolved.  And

11  we would also know at that point which, if any, entries

12  might actually be considered by the Court and be relevant to

13  the Court in rendering a decision.

14          Thank you, Your Honor.

15          THE COURT:  The issue as to the counterparties,

16  are those current counterparties or past counterparties?

17          MR. JOSEPH:  We are concerned about current

18  counterparties.  That is what Your Honor permitted us to

19  redact.  But we'll have to --

20          THE COURT:  Would --

21          MR. JOSEPH:  -- go through, you know, thousands --

22          THE COURT:  -- that be -- but as far as the

23  privilege logs are concerned, is that -- I mean, are there

24  current counterparties on the privilege logs who are engaged

25  in business not as advisors, but in business with your

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 140 of 205

Page 105

 1     clients?

 2            MR. JOSEPH:  Your Honor, because there were 20,000

 3     entries on those logs, I can't answer that.  I can tell you

 4     we -- on the initial set of logs.  We will have to go

 5     through and identify.  But we have provided who's who of

 6     people on logs which include counter -- investment

 7     counterparties.  But we would have to see whether they're

 8     within either the 12,500 or the 1,661 or whatever the

 9     ultimate number of relevant entries is, depending on Your

10     Honor's decision.

11            THE COURT:  But that hasn't been done yet I

12     gather?

13            MR. JOSEPH:  We did -- correct.  We did not make

14     that review because we don't have Your Honor's permission to

15     do it.  This is now an application to unseal and we would

16     have to get permission to be able to continue to do that

17     just like the personally identifying information, which was

18     also ordered on May 1.

19            THE COURT:  All right.  Have you given me the

20     cases on mootness?

21            MR. JOSEPH:  No, Your Honor, we have not.

22            THE COURT:  Okay.  So what are those cites?

23            MR. JOSEPH:  Yes.  International Equity Investment

24     Inc. versus Opportunity Equity Partners, 2010 Westlaw

25     779314.  That's Magistrate Judge Elli's opinion holding that

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 141 of 205

Page 106

1    the motion became moot when the parties entered a

2    stipulation that resolved the issue raised by the motion.

3    Thus the Court didn't use the documents to make a

4    substantive determination because of the targeted doc --

5    because targeted documents don't fall within the category of

6    judicial documents.  There's no presumptive right of access.

7            The second case is Giuffre, G-I-U-F-F-R-E, versus

8    Maxwell, 2020 Westlaw 133570, and that's Judge Preska's

9    decision from January 30th of 2020 in which she holds that

10   all disputes regarding the underlying merits of the action

11   have been rendered moot by the settlement.  There's, thus,

12   no live controversy to which a judicial power can extend.

13   There was never and now never can be a judicial decision-

14   making process that would trigger the public's right to

15   access the undecided motions and the documents relevant to

16   them.

17           And the Court, Judge Preska, does say in a

18   footnote that the Court will have to consider the issue of a

19   motion that's been submitted and hasn't been decided.  But

20   this is a discovery motion.  This is not a summary judgment

21   motion which as a matter of law means that every document

22   filed is entitled public access.  Lougash (ph) says that and

23   Brown says that.  This is a discovery motion and we're

24   dealing with devices or tools, not evidence.

25           Thank you.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 142 of 205

Page 107

1           THE COURT:  Okay.

2           MS. TOWNSEND:  Your Honor, this is Katie Townsend

3    for the media intervenors.  May I respond briefly to the

4    argument that has been made by Mr. Joseph?

5           THE COURT:  Sure.

6           MS. TOWNSEND:  Thank you.  And I would be happy,

7    Your Honor, as well, to the extent that Your Honor wants to

8    take this under submission, we could certainly provide

9    additional briefing to the Court on these issues.  I note

10   that the two cases that have been cited by Mr. Joseph,

11   neither of those are bankruptcy cases.  And I -- we would

12   agree as the Second Circuit concluded in Orion that Section

13   107(a)'s disclosure requirement is not absolute; that it is

14   qualified, but it is qualified expressly, solely by the

15   exceptions that are set forth in Section 107.  And, again,

16   Section 107(a)'s language that indicates that it applies to

17   any paper filed I think would be controlling in this case.

18           I would also note that the Giuffre Maxwell case,

19   Judge Preska's decision, cited -- that was cited by Mr.

20   Joseph is, in fact, is the same case on remand in the Brown

21   v Maxwell case that was cited by the Sackler family parties

22   in their briefing and again indicates to the contrary that

23   material that is cited, that is filed in connection with a

24   discovery motion, it's not as though the common law

25   presumption does not apply to those materials.  I think the

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 143 of 205

Page 108

1    Second Circuit in Brown v Maxwell make clear that even if

2    the presumption is weaker, it certainly still applies.  And,

3    again, I would note that we think that the presumption has

4    been displaced in this context by Section 107 of the

5    Bankruptcy Code.

6           I would also just want -- like to take issue, I

7    think, with the notion that there's a sort of temporal, you

8    know, sort of a time period when material could be

9    accessible to the public and that that can change depending

10   on actions taken by the parties.  So taken to its logical

11   conclusion, I think the arguments that Mr. Joseph is making

12   is that if a party were to file a motion for summary

13   judgment under seal, that the public would have a right of

14   access to that if it moved to unseal.

15          But if the parties then reached a settlement

16   agreement and withdrew those motions for summary judgments,

17   that the right of access would sort of evaporate into thin

18   air.  And I think that that's just contrary to existing law

19   that makes very clear that the right of access both under

20   the common law and the First Amendment where it applies is a

21   contemporaneous right of access.  The Supreme Court in

22   Nebraska Press against Stewart, the cite for that is 423 US

23   13 -- 1327.  It's a 1975 decision that makes clear that sort

24   of each day that access is delayed or denied to the public

25   constitutes a separate and cognizable infringement on the

Page 109

1    First Amendment right of access.

2              And other lower courts agree, the Fourth Circuit

3    in Doe against Public Citizens, the cite for that is 749

4    F.3rd 246.  That's a 2014 decision from the Fourth Circuit

5    make clear that when the public and press have a right of

6    access to court documents, that right is contemporaneous.

7    In other words, the right of access attaches.

8              And Section 107(a), again, I think it displaces

9    the common law right, but it certainly applies on its face

10   to any paper filed.  It applies as soon as that material is

11   filed with the Court.  There's no sort of temporal

12   requirement that the Court rule on a motion or dispose of a

13   motion, and that includes a motion for summary judgment.  It

14   includes any kind of motion filed with the Court in order

15   for the public's right of -- to have a right of access to

16   that material.

17             So I think fundamentally that argument is simply

18   mis-- the way that the public's right of access operates.

19   It is intended to allow members of the press and public to

20   observe the progress of proceedings.  And that certainly can

21   mean that motions for summary judgment are filed.  The

22   public sees those motions for summary judgments, and then a

23   settlement is reached.  It can mean that a motion to compel

24   is filed and that the party ultimately withdraws that or

25   narrows the scope of issues -- of the issues to be presented

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 145 of 205

Page 110

1    by that motion to compel.  That happens routinely.  It

2    doesn't alter the public's right of access to that material.

3            And I think finally, Your Honor, I would note that

4    again with respect to the business and investment

5    counterparty information, there simply is no exception under

6    Section 107 that would apply to that type information.  If

7    you look at the May 1st, 2020 hearing that Mr. Joseph

8    referenced, he argued at that hearing that the basis for --

9    and, again, we weren't talking about, we weren't talking

10   about sealing material filed with the Court at that point.

11   We were talking about how material exchanged between the

12   parties, the discovery process would be handled by those

13   parties.

14           He contended that to -- that for certain

15   counterparties to be publicly associated with the Sackler

16   family would cause them to, you know, pull away or terminate

17   relationships or potentially end relationships with the

18   family because of that association.  That is not a trade

19   secret information.  That is not research and development

20   information.  That is not confidential commercial

21   information that its disclose would harm an entity's

22   business by giving an unfair advantage to its competitors.

23   It's just simply not the type of information that the

24   exceptions to 107 were intended or the purpose of Section

25   107 -- the exceptions to 107 were intended to protect.

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 146 of 205

Page 111

 1          And so I think I would just finally say, Your

 2    Honor, that with respect to PII, and I think the parties

 3    would -- and the redaction of PII and the privilege log

 4    materials, you know, I think the parties would agree with me

 5    that the media intervenors have not objected to that in a

 6    number of the vast majority of the documents that have been

 7    filed.  Therefore, to the extent the Court would like to

 8    proceed to the debtor's request for a reasonable period of

 9    time for the parties to review those materials to redact

10    PII's, which is non-public email addresses, things of that

11    nature, the media intervenors would not object to that as a

12    way of moving forward with respect to these materials.

13          And with that, Your Honor, again, we're happy if

14    you would prefer -- if you would like or need additional

15    briefing on any of the legal issues, we're happy to provide

16    that.

17          THE COURT:  Okay.  Let me go back to Mr. Joseph.

18          I obviously reviewed the Orion Pictures case

19    before this hearing.  I've looked at it again.  I don't see

20    a recognition by the Circuit in that case that there are any

21    exceptions in 107(a) other than those in 107(b).  Am I

22    missing something?

23          MR. JOSEPH:  Well, Your Honor, on page 27 -- I'm

24    just going to read two sentences if I may.

25          THE COURT:  Right.

Page 112

1          MR. JOSEPH:  Although the right of public access

2    to court records is firmly entrenched and well supported by

3    policy and practical considerations, a right is not

4    absolute.  There's a cite to Colliers.  And then it says, in

5    limited circumstances the Court must deny access to judicial

6    documents generally where open inspection may be used as a

7    vehicle for improper purposes.  Generally, not exclusively.

8    That's not limited to the exceptions in 107(b).

9          Here, the entire purpose on May 1 of not

10   permitting investment counterparty information to go even to

11   the parties int his case was to avoid a leak to the press.

12   That doesn't change because the press now comes to seek it

13   directly.  Counsel --

14          THE COURT:  But --

15          MR. JOSEPH:  -- Ms. Townsend --

16          THE COURT:  But on the other hand --

17          MR. JOSEPH:  I'm sorry, Your Honor.

18          THE COURT:  But congress in 107(a) says, except as

19   provided in Subsections (b) and (c) a paper filed in a case

20   under this title in the dockets of a Bankruptcy Court are

21   public records and open to examination.

22          MR. JOSEPH:  Your Honor, I think that there is a

23   fair argument that a privilege log that is sent as a tool to

24   permit the Court to identify documents isn't a paper that's

25   contemplated by that.  But I'm not going to say that.  I can

Page 113

1    rely on Orion which gives the Court discretion.  There is no

2    --

3              THE COURT:  Well --

4              MR. JOSEPH:  -- proper purpose in getting --

5              THE COURT:  -- the Court only considered 107(b).

6    It didn't consider any other basis for sealing the

7    documents.

8              MR. JOSEPH:  That's true.  But that is two

9    paragraphs down when it actually goes to the statutory

10   exception.  That's subsequent to its recognition of a

11   discretionary exception.  And that --

12             THE COURT:  Well --

13             MR. JOSEPH:  -- is where the inspection may be

14   used as a vehicle for improper --

15             THE COURT:  -- do you have any case that provides

16   a discretionary exception that's not within the ambit of

17   107(b) in a bankruptcy case?

18             MR. JOSEPH:  Other than Orion I do not, Your

19   Honor.

20             THE COURT:  Okay.  And I read that language in

21   Orion as just sort of an introductory discussion of the

22   topic of sealing and not a construction of 107(a).  I mean,

23   it -- I don't see how a judge-made rule, which is what I

24   think we're talking about in the Brown case and other cases,

25   can override a statute.

1                MR. JOSEPH:  Your Honor, the Orion case cites the

2        Nixon decision citing a Rhode Island case saying in this

3        hypo -- in this example, a court can ensure its records are

4        not used to promote public scandal.  I mean, it does --

5                THE COURT:  Well, but that -- if that's --

6                MR. JOSEPH:  -- use its discretion in --

7                THE COURT:  I mean, that's a separate provision in

8        107(b).  It protects a person with respect to scandals or

9        defamatory matter.

10               MR. JOSEPH:  I do understand that, Your Honor.  I

11       do understand that.  But --

12               THE COURT:  I mean, I -- look, I see the language

13       you're referring to.  Court's do sometimes like to explain

14       why there are exceptions to something that's a very

15       important public policy, i.e. the First Amendment or common

16       law right to access.  And the heading of that section is

17       common law right to access, but it's -- I guess I view that

18       as just an introduction to what the Court actually had to

19       decide which is what exception is there to 107(a).  And it

20       only applied 107(b).  It didn't look at anything else.

21               MR. JOSEPH:  In that case, Your Honor, I cannot

22       disagree.  But I think it's relevant that the discussion of

23       107(b) comes up in connection with the common law right of

24       access because the Supreme Court tells us that when a

25       statute covers an issue that was governed by the common law,

Page 115

1    it should be interpreted consistently.  There have to be

2    some limits, which is why the Court talks about improper

3    purposes.

4           And common law --

5           THE COURT:  Well, I guess -- although, I mean, the

6    statute I think arguably isn't a major change from common

7    law because (b) largely covers common law provisions.

8           MR. JOSEPH:  But common law does go --

9           THE COURT:  The common law concept.  In one way it

10    makes it broader with the absolute protection for trade

11    secrets or confidential research development or commercial

12    information.  And then it has the protection against

13    scandalous and defamatory matter.

14           What it doesn't include, what -- and what is

15    included in Rule 12(f) is irrelevant matter.  But I think

16    that's a -- you know, that -- that's a motion to strike

17    something in a pleading, not a --

18           MR. JOSEPH:  Well --

19           THE COURT:  -- an access to pleadings in the first

20    place.

21           MR. JOSEPH:  -- the Court has -- I mean, the Court

22    has access -- the Second Circuit has applied 12(f) beyond --

23    in this -- beyond just filings of pleadings in the case.

24           But, Your Honor, on that reading, which is Ms.

25    Townsend's reading that 107 applies to any paper filed, then

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 151 of 205

Page 116

1    in a case like this it could be used as a vehicle to put in

2    anything for ulterior reasons that -- and then ask the press

3    to come and get it.

4            THE COURT:  No, but if there are --

5            MR. JOSEPH:  I mean --

6            THE COURT:  But, again, if there ulterior reasons,

7    then (b)(2) would protect the person.

8            MR. JOSEPH:  Well, but I'm talking about non-

9    scandalous and defamatory.  I mean, it could be all sorts of

10   things that disclose information just to harm, which is what

11   investment counterparty information does.

12           THE COURT:  Well --

13           MR. JOSEPH:  Disclosing information --

14           THE COURT:  -- but we don't -- I guess that's a

15   separate point that I wanted to raise.

16           One of the key points from the Brown decision,

17   Giuffre v Brown or Brown v Giuffre, and then Brown v Maxwell

18   is that the Court needs to engage in a particularized

19   analysis.  I don't know what the level of harm here is.  You

20   know, it's -- it -- that analysis hasn't been done by the

21   party that's looking to have these remain sealed.  I don't

22   know if there's a threat to safety, for example.  You know,

23   I would think that the most persuasive set of facts for your

24   argument, that there's got to be something beyond 107(b) to

25   prevent public access to something filed in a bankruptcy

Page 117

1    case, or (c) which deals with personally identifiable

2    information, would go to the safety of a person.

3         And yet I don't know whether there's any -- I

4    don't know whether any particular one of these has that

5    issue.  It's not been -- in other words, there's a blanket

6    sealing here.  So it would seem to me that pending that

7    review, the privilege logs should be disclosed with the

8    exception of what's covered by 107(c) personal identifiers,

9    and however without prejudice to the making of a motion,

10   which I would decide on an actual factual record as to

11   whether there is some level of information that is protected

12   here either under 107(b)(1) or (2) or under some common law

13   theory.

14        But I'm just -- we're just hypothesizing right

15   now.  We really don't know what we're talking about.

16        MR. JOSEPH:  But, Your Honor, if I may --

17        THE COURT:  So it seems to me that the burden on

18   this point should be -- since you're going to be reviewing

19   the documents anyway, would be to raise it in that context

20   as opposed to in a general context.

21        MR. JOSEPH:  Your Honor, counsel for the press has

22   suggested briefing.  I've been provided by one of my

23   colleagues with a Bankruptcy Court case from the District of

24   Delaware that does contemplate that a Court retains

25   authority to seal documents when justice so requires.

Page 118

1    Owings Corner Armstrong 560 --

2              THE COURT:  Well, that -- that's fine.  But I

3    guess my issue is I would like to know when justice so

4    requires beyond just the proposition, which is not on the

5    record before me at this point.

6              MS. MONAGHAN:  Your Honor, this is Maura Monaghan

7    from Debevoise & Plimpton.  I represent the Mortimer Sackler

8    branch of the Sackler family.

9              THE COURT:  Right.

10             MS. MONAGHAN:  I just wanted to raise one

11   complication to perhaps discuss about process for making

12   that showing.

13             Your Honor raised the concern about safety which

14   is a real concern and does, we think, require redaction of

15   certain names.  The trouble is if we file something making

16   that motion on the docket, that itself becomes a filing and

17   we have concerns about copycats.  I don't know if Your Honor

18   has any suggestion for a procedure to address that concern.

19   But one of the cleft sticks (sic) we find ourselves in is we

20   don't necessarily want to publicize the threats against our

21   clients and, you know, where those threats took place or

22   what types of threats they were.

23             THE COURT:  Well, has this been discussed with the

24   media parties at all?

25             MS. MONAGHAN:  I don't believe it's been up for

Page 119

1    discussion until now.  We could have that conversation --

2              THE COURT:  All right.

3              MS. MONAGHAN:  -- with Ms. Townsend.

4              THE COURT:  Look, I want to step back for a

5    second.

6              As everyone on this -- every lawyer on this call

7    knows, I really like the briefing to be in advance because I

8    rule from the bench and because these matters need to move

9    ahead and don't warrant delay with a written opinion.

10             Normally I would be quite cross with parties that

11   haven't cited me any of the applicable case law, in fact,

12   any of the actual reasons for denial of the motion except

13   for the reason that was asserted based on the information

14   being irrelevant, which is actually something that I was

15   able to research and it was actually well dealt with in the

16   context of 12(h) -- I'm sorry -- 12(h) -- 12(f) of the

17   federal rules by another District Court, a later District

18   Court.

19             So on the other hand, this motion as it was

20   originally styled and pursued covered an enormously greater

21   amount and range of documents, and the parties have been

22   working hard on narrowing those down and saving the Court

23   from a lot of work on a lot of other issues.

24             I still don't have copies of the other two

25   documents that I actually need to focus on to see if

Page 120

1    107(b)(1) applies.  So I guess all things considered rather

2    than simply saying, no, I'm not going to take any more, you

3    had your chance and that's it.  It probably makes sense for

4    the parties to discuss these two documents as well as give

5    me those documents and I guess provide me at least with the

6    case law on this in simultaneous briefs.

7         I have to say that generally speaking it's hard to

8    see how privilege logs really would lead to anything

9    material in a newspaper story.  But that's not ultimately

10   the point except to say that it's probably worth adjourning

11   this so that I can get those briefs and decide it at the

12   next omnibus hearing with the actual pleadings -- I'm sorry

13   -- the actual court filings that are sought to be redacted

14   and a further description of what the concern is in real

15   terms that the Sacklers have with regard to the privilege

16   logs.

17        In that context, I would expect the media

18   representatives to act responsibly about some means to

19   protect people from public disclosures, to threats on their

20   life or their safety.  That's not something that any

21   reputable media outlet and certainly the media companies

22   that are part of Ms. Townsend's client group are responsible

23   media companies.

24        So I am assuming you would -- you people would be

25   able to work something out on that point so that I could

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 156 of 205

Page 121

1    have a proper record before me.

2             MS. TOWNSEND:  Your Honor, this is Katie Townsend

3    on behalf of the media intervenors.  Just to be clear, this

4    is the first throughout this entire process that we have

5    heard anyone raise any concern with respect to any of the

6    documents that were at issue here, about any --

7             THE COURT:  Well, I understand, Ms. Townsend.

8    And --

9             MS. TOWNSEND:  Okay.

10            THE COURT:  -- frankly, I came into this hearing

11   about 99 percent sure that I would grant your motion as to

12   the privilege logs except for personally identifying

13   information covered by 107(c).

14            But it could be met by the Sacklers' own motion to

15   seal under 107(c) even if I directed these to be unsealed

16   upon a proper review by them, which is really all that I'm

17   asking to have happen at this point.  And so, you know, I

18   think that's just where we are.

19            And I have it hard to belief, put it differently,

20   I find it hard to believe that any press account related to

21   this case generally would be unduly delayed because

22   privilege logs weren't provided, given everything else

23   that's been provided as far as claims and defenses asserted

24   by the parties that go right to the merits.

25            MS. TOWNSEND:  Your Honor, I don't think --

1          MR. LEES:  Your Honor, this is --

2          MS. TOWNSEND:  Oh, I apologize.  Go ahead.

3          MR. LEES:  Your Honor, this is Alex Lees at

4    Milbank for the Raymond Sackler family.  I'm co-counsel to

5    Mr. Joseph.  I just wanted to make one observation of the

6    facts so that the record is clear, which is that our

7    position with respect to the right to redact counterparty

8    names in the public versions of documents that was filed was

9    made in our statement in response to the original motion to

10    unseal filed by the press intervenors.

11          THE COURT:  Yeah.  No, I know --

12          MR. LEES:  And --

13          THE COURT:  -- it was.  But it wasn't

14    particularized.  I didn't know who those people were, you

15    know, what it was, you know.  I mean, it -- whether they're

16    current, whether they're past.  It's just sort of a general

17    statement.  So it's fine as far as it goes, but it's just --

18    you know, if -- as far as meeting a burden, it's just not

19    there.

20          MR. LEES:  Understood, Your Honor.  We had

21    intended to rely on the previous colloquy and ruling in the

22    court.  But I understand the point and we will address it in

23    a more particularized way given the opportunity for further

24    briefing.

25          Thank you.

1          THE COURT:  Okay.  All right.

2          Now, Ms. Townsend, you were going to say

3    something, too.

4          MS. TOWNSEND:  Your Honor, I was just going to say

5    that I understand the predicament that you're in.  I mean, I

6    think we came into this -- the media intervenors came into

7    this hearing very much of the view that the parties had not

8    met their burden to demonstrate that this material to remain

9    sealed precisely because they have not made a particularized

10   showing.

11         THE COURT:  Right.

12         MS. TOWNSEND:  I think that to the Court -- we do

13   not object to the Court giving the parties a reasonable

14   opportunity to -- to giving the parties, including the media

15   intervenors an opportunity to submit additional simultaneous

16   briefing, and provided that the party -- to the extent that

17   the parties are arguing that portions of these documents

18   should remain sealed, that they do, in fact, make that

19   particularized showing for the Court.

20         I recognize we could talk a little bit more about

21   process.  I am happy to defer to whatever Your Honor thinks

22   is the right process, but I want it to be clear that to the

23   extent the Court needs additional information and believes

24   additional information be submitted for Your Honor to rule,

25   we don't object to that approach.

1          THE COURT:  Okay.

2          MR. HURLEY:  Your Honor, it's Mitch Hurley.

3          THE COURT:  Okay.  I did just get -- I did just an

4    email from the debtor's counsel that, I guess, has these

5    documents attached.

6          MR. KAMINETZKY:  Your Honor, we tried initially to

7    just send it by email and it got bounced several times by

8    the Court because of its size.  So we had to set up this

9    client link or whatever it's called.  So now Your Honor

10   should have it in a form.

11         But I don't -- I don't know if Your Honor wants to

12   deal with this today because what we sent Your Honor is --

13         THE COURT:  No.  I will review it.  I may just

14   give the parties my ruling separately on this one.  I mean,

15   again, my chambers practice on motions to seal is to insist

16   that I get the unredacted document and the redacted

17   document.  I look at them and I decide whether I think it's

18   covered by 107 or not, 107(b) or not.

19         And I have the briefing on this.  I have your

20   arguments.  I think I have the case law on it.  We're just

21   talking about 107(b) as far as Exhibits 137 and 123 are

22   concerned.  So I don't need any more briefing on that.  And

23   I may just rule on that before the next hearing.

24         MR. KAMINETZKY:  That's fine, Your Honor.  Let me

25   just -- if you could just allow me to explain.  What we sent

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 160 of 205

Page 125

1    Your Honor was what we called transparent redactions in that

2    you have the whole document, but we put --

3                THE COURT:  Yeah.

4                MR. KAMINETZKY:  -- red boxes around --

5                THE COURT:  The redline.

6                MR. KAMINETZKY:  Right.

7                THE COURT:  The redline.  I see that.

8                MR. KAMINETZKY:  So that you know what it is that

9    -- and we think that this falls -- everything Your Honor

10   said.  This is just a 107(b) and --

11               THE COURT:  Right.

12               MR. KAMINETZKY:  -- we think Mr. Lowne in the

13   declaration that we submitted in connection with our papers,

14   this one declaration that he explains what the basis is

15   under 107(b) for the proposed few redactions on those two

16   documents.  And as far as the debtor is concerned, we'll --

17   with respect to the privilege log we'll do what we said we

18   would do.  We would just -- we would redact PII and, you

19   know, any personal identifying information like email

20   addresses, and then just take a quick look to make sure

21   there's nothing -- no 107(b) information in the subject

22   line, and then just give us a week or two and we'll unseal

23   that.

24               THE COURT:  Okay.  Well, as far as that's

25   concerned, I think that -- I don't' think you're going to

Page 126

1    have to have armies of people on it.  I can't imagine a

2    privilege log likely to have sensitive commercial

3    information on it.  But I understand you want to eyeball it

4    for sure.

5            Okay.  So I will adjourn the hearing on this

6    motion on --

7            MR. HURLEY:  Judge, may I --

8            THE COURT:  There was just an update motion.  So

9    it's really one motion, although there are two motions on

10   the calendar from the media parties to the next omnibus

11   hearing.

12           It's unlikely that I will take additional oral

13   argument.  The parties are both represented by -- are all

14   represented by capable counsel.  And I will -- I know Ms.

15   Townsend said supplemental briefing.  I think actually it's

16   incumbent upon the Sackler parties to submit their brief

17   first and after consulting with the media parties about the

18   safety issue, if that's still an issue and hopefully

19   resolving that, also including for me, you know, specific

20   documents, clean and redacted, that are at issue.  I have a

21   feeling that most of the entries won't be.  And so I want to

22   have the ones identified that are at issue specifically.

23           And then a reply brief can be filed by the media

24   parties three days before the hearing.

25           DR. JOSHI:  Your Honor --

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 162 of 205

Page 127

1          MR. HURLEY:  Your Honor, does that --

2          DR. JOSHI:  Your Honor, I was granted by the Court

3     in December a moment to speak about --

4          THE COURT:  No.  No.  I want to continue on this

5     matter.  Does anyone have any more matters on the media

6     motions?

7          MR. HURLEY:  Your Honor, it's Mitch Hurley.  Can I

8     just make one point of clarification very briefly?

9          THE COURT:  Sure.

10          MR. HURLEY:  Okay.  Mitch Hurley for the

11     committee. The official committee takes no position on the

12     unsealing of the privilege logs, Your Honor.  We don't

13     advocate for it.  We don't oppose it.

14          I do want to be clear, though, that the exhibits

15     we're talking about actually are not exclusively related to

16     the log challenges motion.  There are entries on those

17     exhibits that we have identified as samples in connection

18     with the exceptions motion as well.

19          I just wanted to make that clear for the record.

20          Thank you.

21          THE COURT:  Well, when you say the exceptions

22     motion -- I'm sorry.  What two motions are you referring to?

23          MR. HURLEY:  Sure.  So the committee filed two

24     motions to compel.  One is referred to as the log challenges

25     motion, which was a motion made -- based on ordinary

Page 128

1    challenges to a privilege log.  Third parties are present,

2    you know, non-lawyers waiver, that sort of thing.

3            And then there's the other motion which is the

4    exceptions motion based on the crime fraud and at issue

5    exceptions --

6            THE COURT:  Right.  But they both go to --

7            MR. HURLEY:  -- of these --

8            THE COURT:  -- they both go to privilege issues.

9            MR. HURLEY:  Correct.

10            THE COURT:  And that's how I'm -- that's how I'm

11    treating this even though there are two separate motions.

12    They're both dealing with the admissibility or the -- I'm

13    sorry, the require -- the requirement to produce --

14            MR. HURLEY:  Correct.

15            THE COURT:  -- what are asserted to be privilege

16    documents.

17            MR. HURLEY:  Correct.  I'm just responding to Mr.

18    Joseph had suggested that if we're able to resolve the log

19    challenges motion --

20            THE COURT:  Well, you would have to -- yeah.  I

21    understand, although again --

22            MR. HURLEY:  Yeah.

23            THE COURT:  -- that assumes that I think that

24    there are limits and that those limits are within the facts

25    beyond what is set forth in 107(b) to 107(a) of the

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 164 of 205

Page 129

1    Bankruptcy Code.

2              MR. HURLEY:  Understood.

3              THE COURT:  So there you are.

4              I guess -- so I didn't set a date for the brief

5    from the Sacklers or briefs from the two sides of the

6    Sackler family.  I would say when is -- can someone remind

7    me when the February omnibus hearing is?

8              MR. JOSEPH:  I believe it's February 17th, Your

9    Honor.

10             THE COURT:  All right.  So the 14th would be the

11   reply.  I guess the 7th would be the date for the brief.

12             MR. JOSEPH:  Thank you, Your Honor.

13             THE COURT:  Okay.  Or briefs if the two different,

14   Side A and Side B want to file separate briefs.

15             Okay.  Now someone was speaking up about some

16   other matter.  I think that is the end of today's calendar.

17   But I think someone --

18             DR. JOSHI:  Yes.

19             THE COURT:  -- was raising his hand to speak.

20             DR. JOSHI:  Yeah.  Judge Drain, thank you for a

21   time.  My name is Dr. Jay Joshi.  I filed amicus on behalf

22   of my patients who are represented in some of the cases that

23   have been aggregated.

24             I understand that we're turning towards the end so

25   I will make this quick.

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 165 of 205

Page 130

1              First of all, I would like --

2              THE COURT:  No.  No.  Mr. Joshi, no, don't --

3      wait.  I'm going to interrupt you, Doctor.

4              I thought that I had explained this to you in an

5      email.  I'm going to explain it now again, and I apologize

6      if it wasn't clear before.

7              When one wants to file an amicus pleading, two

8      things have to apply.  First, there has to be a motion for

9      leave to file it; and, second, it has to apply; that is, the

10     underlying pleading has to apply to something that is before

11     the Court to decide.

12             If the Court grants permission to file the amicus

13     pleading, it will consider it only in that context, i.e. it

14     is part of the record for the matter that the Court has

15     before it to decide.  There is nothing before me on today's

16     calendar that pertains to your amicus pleading.  There is no

17     motion to which that pleading would apply.

18             So somehow you've gotten the impression that you

19     can pursue this matter today.  That's simply not the case.

20     An amicus pleading is, as the name suggests, a pleading

21     filed by someone who as a friend to the Court wants to

22     elucidate and illuminate further than the parties have the

23     issues before the Court on a particular matter that the

24     Court has to decide.  I don't have anything before me

25     relating to the document that you have filed.

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 166 of 205

Page 131

1          DR. JOSHI:  Okay.  I understand, sir.  I can

2    probably send you emails that refute that, but out of

3    respect for your time, sir, and respect for everybody else

4    we can maybe take this offline, otherwise I can continue

5    discussion.  But I respect for the Court that --

6          THE COURT:  No.  There's nothing to discuss

7    offline, sir.  The calendar today had five matters on it,

8    some of which had subparts.  None of them pertained to the

9    document that you have filed.  Sometime in the future there

10   may be an issue before me to decide that does pertain to it,

11   at which point you should file a motion seeking leave for

12   consideration of an amicus brief.  But there's nothing

13   before me today.

14          And I don't want there to be any more confusion on

15   it.  There's no more reason to talk to anyone in chambers

16   about it, to anyone in the clerk's office or to me about it.

17   I just want to be clear on that.  Okay.

18          Again, courts decide specific things that are

19   brought before them on a proper record with proper briefing

20   and proper notice.  They're not general forums for

21   expressions of opinion.  Those are, you know, the Boston

22   Globe or Dow Jones or Reuters or a law review article.  But

23   that's not the Court's function.

24          So I think that does close the agenda for

25   today's hearings.  And I'll see you all at the omnibus date

Page 132

1      or, actually, probably just hear you all at the omnibus date

2      in February.

3                  Okay.  Anything else from anyone?

4                  All right.  Very well.  Thank you, all.

5                  MR. JOSEPH:  Thank you, Your Honor.

6                  MR. KAMINETZKY:  Thank you.

7                  (Whereupon these proceedings were concluded at

8      1:20 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                 **I N D E X**

2

3                              RULINGS

4                                                                    PAGE

5    Motion to Approve Insurance Stipulation              64

6    Deborah Clonts Claim Payment Motion                  71

7    Deborah Clonts Motion to Lift Automatic Stay         71

8    Debtors' Fifth Amended Order Extending Time to Object  80

9    to Dischargeability of Certain Debts

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 134

1                    C E R T I F I C A T I O N

2

3    We, William J. Garling, Pamela A. Skaw, and Sherri L.

4    Breach, certify that the foregoing transcript is a true and

5    accurate record of the proceedings.

6

7    _____

8    William J. Garling,

9    AAERT Certified Electronic Transcriber

10

11   _____

12   Pamela A. Skaw

13   AAERT Certified Electronic Transcriber

14

15   _____

16   Sherri L. Breach

17   AAERT Certified Electronic Transcriber

18

19   Date:  January 22, 2021

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 170 of 205

[& - 2281]

Page 1

**&**

**&**   6:6,7,12,13 7:4
7:5,11,12,24,25
8:3,4,8,9 9:13,14
10:3,4,10,11
11:20,21 12:3
13:2 14:9 90:14
90:15 118:7

**1**

**1**   2:4,16 3:4 12:2
21:16,20 25:7
39:11,19 73:21
103:3 105:18
112:9 117:12
120:1
**1,500**   101:13
103:19
**1,661**   101:9 105:8
**1.275**   17:25
**1/19/2021**   4:19
**1/7/2020**   5:11
**10**   12:11
**10/21/2020**   6:1
**100**   15:4 17:18
26:18 55:13
**10001**   14:5
**10004-1408**   1:15
**10017**   12:6 13:23
**10019**   12:15
**10022**   14:12
**10036**   13:6
**1009**   4:17 5:16
**1020**   14:19
**10231**   3:11
**107**   88:21,23
91:16,17,22,22
92:9 94:15 95:17
95:21,22 96:1,7
97:21 98:8,12,16
101:16,20 107:13
107:15,16 108:4
109:8 110:6,24,25
110:25 111:21,21

112:8,18 113:5,17
113:22 114:8,19
114:20,23 115:25
116:24 117:8,12
120:1 121:13,15
124:18,18,21
125:10,15,21
128:25,25
**10:00**   4:19 21:20
**10:08**   1:18
**11**   12:12 18:20
19:10 21:9 28:6
58:5 62:2 69:16
69:18 71:8,8 85:6
**1109**   35:23,25
36:20,23 44:3
**1141**   73:19 75:11
79:10
**11501**   134:25
**1156**   14:18
**11th**   21:15
**12**   12:1,13 115:15
115:22 119:16,16
119:16
**12,500**   101:8
103:18 105:8
**12/15/2020**   8:20
**12/21/2020**   4:7,8
**123**   87:15 91:11
92:3,4,13 99:3
124:21
**1289**   4:17
**1290**   5:20
**13**   12:14 108:23
**1327**   108:23
**133570**   106:8
**137**   87:15 91:12
92:4,18 99:4
124:21
**14**   12:15
**14,000**   82:24
**140**   30:8 31:14

**14th**   17:11 91:11
129:10
**15**   12:16 14:18
22:15 93:4
**1524**   4:17 5:24
**15th**   21:11,12,19
21:24 22:2,5,17
22:24 23:23
**16**   12:17
**17**   12:18 91:5,7
98:21
**1717**   13:13
**17th**   129:8
**18**   12:19
**1828**   7:19 9:20
11:10
**1829**   4:16 6:3
**18th**   91:12
**19**   12:20
**19-23679**   1:7
**1975**   108:23
**1:20**   132:8
**1st**   97:12 110:7

**2**

**2**   2:5,16 3:5 5:24
12:3 73:4,25,25
116:7 117:12
**20**   1:17 12:21
**20,000**   105:2
**20003**   12:24
**20005**   14:20
**20006**   13:15
**2001**   26:18 55:14
**2002**   36:4 55:16
**2007**   68:3
**2010**   105:24
**2014**   109:4
**2016**   92:14
**2017**   92:18
**2018**   26:19 59:17
59:18
**2019**   21:15 58:3
80:10

**2020**   5:24 17:8
19:15 20:6,18,19
23:6,13 37:9 68:3
91:11,13 97:12
106:8,9 110:7
**2021**   1:17 20:1
134:19
**2022**   6:8,14,18
7:13,23 8:2,7,16
8:23 10:9 20:2
**2039**   8:4
**2059**   3:12,17 4:3
**2065**   6:15 7:6
**2066**   6:19
**2090**   7:7
**2091**   8:10
**21**   12:22 37:11
**211**   59:16
**2132**   7:14 10:5
**2136**   8:17
**2140**   8:23
**2153**   9:5 11:17
**2154**   9:10
**2175**   3:17,21 4:3
4:12
**2188**   7:19 9:15,20
10:5 11:10,22
**2194**   4:9
**22**   12:23 18:8
25:14 134:19
**2209**   3:17 4:3,13
**2220**   4:19 5:3
**2227**   2:6,8 3:7
**2252**   7:20 9:4,9,21
10:16,21 11:4,11
11:16
**2253**   10:17 11:5
**2254**   10:22
**2265**   10:6
**2266**   3:18 4:5
**2270**   4:23 5:4
**2281**   2:10

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 171 of 205

[2287 - actual]                                                          Page 2

**2287**   5:5
**2288**   7:25 10:11
**2289**   2:19 26:4
**2292**   3:8
**23**   12:24
**23rd**   19:15 22:23
  23:13 80:10
**24**   12:25
**246**   109:4
**24th**   37:9
**25**   12:25 103:12
**26**   22:6,15 24:12
**262**   55:13
**27**   111:23
**275**   26:22
**284**   59:16
**2nd**   55:14,16

**3**

**3**   12:4 26:20 38:25
  86:6,6
**30**   13:22 26:19
**300**   134:24
**30th**   22:23 106:9
**31**   12:14 21:9
  23:25 24:14 74:3
**310**   55:15
**31st**   17:7
**330**   134:23
**362**   71:23 72:16
**37**   74:3
**3a**   74:2
**3rd**   22:23 23:6

**4**

**4**   12:5 39:11 72:16
**4/2/2020**   5:14
**400**   12:23
**4007**   79:10 81:1
**42**   86:5
**423**   108:22
**445**   59:18
**450**   12:5
**467**   59:18

**485**   13:21

**5**

**5**   12:6 57:8
**52**   12:14
**523**   73:4,8,12,25
  81:3
**541**   38:23
**548**   44:11 45:20
**55**   14:4
**550**   82:24
**560**   118:1
**587**   59:17
**590**   59:16

**6**

**6**   12:7 73:19 75:11
**6/17/2020**   5:18
**600,000**   30:7,10
  31:13
**603**   58:3
**614341**   3:11
**615218**   3:11
**615270**   3:11
**64**   55:16 133:5
**650**   13:14

**7**

**7**   12:8
**7/27/2020**   5:22
**700**   4:17 5:9 12:22
**71**   133:6,7
**720**   4:17 5:12,16
**749**   109:3
**779314**   105:25
**7th**   129:11

**8**

**8**   12:9
**80**   133:8
**85**   59:16
**897**   58:3

**9**

**9**   12:10

**90**   101:3,10
  102:16
**901**   59:8
**9019**   32:14,23
**902**   59:8
**907**   59:9
**919**   14:11
**96**   55:13
**99**   121:11

**a**

**a.m.**   21:20
**aaert**   134:9,13,17
**aaronson**   13:19
**abbreviated**
  19:20
**ability**   54:11 57:3
  71:18 103:5
**able**   37:22 45:6
  105:16 119:15
  120:25 128:18
**absence**   36:4
**absolute**   101:19
  107:13 112:4
  115:10
**absolutely**   42:19
  47:14
**absurd**   31:15
**acceptable**   51:25
**accepted**   97:21
**access**   89:1 92:10
  94:11 95:16
  101:18 102:4,23
  103:14 106:6,15
  106:22 108:14,17
  108:19,21,24
  109:1,6,7,15,18
  110:2 112:1,5
  114:16,17,24
  115:19,22 116:25
**accessible**   108:9
**accomplishes**
  27:13

**accorded**   57:11
  57:20 58:6
**account**   76:5
  121:20
**accountability**
  6:19 68:15
**accurate**   134:5
**achievable**   23:10
**achieve**   23:17
  43:2
**achieved**   18:4
**acknowledge**
  53:24
**acknowledges**
  70:18
**act**   34:8 46:8
  57:11 58:12,13
  102:11 120:18
**acting**   57:14
  60:12
**action**   2:3,15 3:3
  25:21 27:19,25
  28:8,16 29:3,15
  29:22 30:15 31:12
  33:12,14 35:2,22
  36:8,13 37:1
  38:22 39:1,2,6,9
  39:16,18 40:7,9
  40:14,14 42:3
  44:10,14,18,22
  45:1 47:7 53:5,15
  53:16,22,25 54:1
  54:3,7,9,12 55:10
  55:10,18 56:3
  57:4,15,21 58:7
  58:24 59:2,12
  60:4 72:18,21
  74:2 106:10
**actions**   39:23 40:1
  54:17 73:6 108:10
**active**   17:13 41:24
**actual**   89:11
  117:10 119:12

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 172 of 205

[actual - application]                                                      Page 3

120:12,13
ad   2:5,12,17,19
  3:5 6:10,15,19 7:1
  7:2,6 12:13,20
  25:22 26:2 27:22
  29:20 30:12 31:16
  31:24 32:2 38:9
  39:13 40:16,20,21
  41:4,12,16 42:7
  42:18 51:15 53:1
  53:3 56:9,10
  70:10,13 75:25
  76:1 88:3 89:21
addiction   20:5
addition   36:2
  56:10 61:1
additional   31:13
  98:23 107:9
  111:14 123:15,23
  123:24 126:12
address   25:1 28:7
  31:22 44:1 82:1
  91:8 93:6 118:18
  122:22
addressed   18:25
addresses   87:3
  111:10 125:20
addressing   25:19
  36:20,23 70:14
  81:24
adjourn   104:9
  126:5
adjourned   37:8
  100:15
adjourning
  120:10
adjournment   8:6
  8:15,22 41:23
  84:17
adjudicating
  102:21
adjudication
  102:10,12

administered   1:8
administrative
  30:17
admissibility   63:9
  128:12
admit   46:14
admonitions
  24:10
adopted   74:20
advance   43:6
  119:7
advanced   72:2
advances   42:10
advancing   19:11
advantage   92:1
  93:2 110:22
adversary   31:11
  36:6,12 73:9
advisors   104:25
advocate   127:13
affect   28:7
affirmatively   56:6
  56:11
afford   67:15
afforded   86:25
afraid   78:22
afternoon   79:17
  81:21
agenda   16:14,15
  16:16 17:3 21:2
  23:6 24:20,25
  25:5,7 65:3 79:23
  81:22,23 131:24
aggregated
  129:23
aggressive   68:3
ago   18:2,7,8 19:15
  47:6
agree   23:20 51:22
  51:22 56:21 85:1
  85:1 89:19 107:12
  109:2 111:4

agreed   2:2 3:2
  8:13,19 25:20
  32:19 88:8
agreeing   39:3
agreement   23:14
  23:24 54:18 55:21
  76:6,7 108:16
agrees   55:19
ahead   50:2 67:7
  74:11 93:16 95:7
  119:9 122:2
aid   49:13
aimed   30:1
air   108:18
akin   13:2 26:13
  40:24 99:9
al   1:7 15:23
ala   39:5
alaska   36:17
alex   122:3
alexander   14:7
allegation   48:7
alleged   49:6,7
  75:18
allegedly   36:15
allow   109:19
  124:25
allowed   31:2
  69:20 74:13,16,24
allowing   52:6,18
alongside   29:3
  35:4
alter   110:2
altogether   103:21
ambit   113:16
amend   4:11 8:1
amended   4:7,11
  4:15,21 5:2,18,22
  6:1 16:13 65:10
  65:22 79:25 133:8
amendment   94:15
  108:20 109:1
  114:15

american   85:4
amicus   129:21
  130:7,12,16,20
  131:12
amount   48:6 70:7
  70:8,16 83:1,13
  86:25 119:21
amounts   30:16
  31:8 67:22
analog   35:10
analysis   60:14
  116:19,20
analyzed   78:1
analyzing   58:19
andrew   2:18 6:14
  12:17 38:11 41:16
announcement
  22:13
answer   29:16
  38:17 50:23 69:12
  83:23 98:23 105:3
anticipating
  67:22
anyway   50:18
  61:18 117:19
apart   89:18
apologies   40:4
apologize   77:4,15
  122:2 130:5
appear   34:18
  35:24 36:6 39:3
  53:8 63:15
appearing   14:24
  86:14
appears   61:18
  64:4 94:9
applicable   44:6
  44:19 54:19 57:2
  57:7 119:11
application   19:21
  20:20 28:23 33:7
  35:11 105:15

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 173 of 205
[applied - baby]                                                                Page 4

**applied** 44:7 45:3
68:16 72:5 87:4
114:20 115:22
**applies** 72:6,25
73:12 75:12 81:3
91:21 94:11 95:20
95:21,24 96:1,7
107:16 108:2,20
109:9,10 115:25
120:1
**apply** 45:7,15
57:13 71:7 72:1
72:17 73:1,7 75:1
86:25 95:23 96:4
107:25 110:6
130:8,9,10,17
**appreciate** 44:2
72:8 89:8
**apprised** 42:25
**approach** 37:2
123:25
**approached** 47:7
**appropriate**
31:22 43:6 50:19
81:4 86:17
**appropriately**
89:6
**approval** 19:21,22
20:17,18,22 28:15
28:18 52:24 54:9
54:11 60:20 62:8
64:5
**approve** 2:13 3:10
3:15 4:2 25:10,19
33:4 43:8 52:16
52:17 55:21 133:5
**approved** 17:7
20:5
**approving** 2:1 3:2
52:6,18
**approximately**
26:22 101:10

**apropos** 79:7
**arbitrage** 32:6
**arbitration** 37:20
43:20 51:24 62:22
64:22
**area** 102:1
**arguably** 39:8
60:14 115:6
**argue** 37:22 39:22
66:17 93:3,15
98:13
**argued** 31:16
94:14 110:8
**argues** 31:1 32:2
37:19 60:22 61:9
**arguing** 33:8
93:15 123:17
**argument** 26:12
30:22 36:1 43:13
43:14 57:2 61:13
62:25 66:21 68:22
84:1 94:1,7 96:10
107:4 109:17
112:23 116:24
126:13
**arguments** 30:24
84:4 94:4,5
108:11 124:20
**armies** 126:1
**armstrong** 118:1
**arrange** 16:11
**arriving** 30:3
**article** 131:22
**aside** 23:19 26:22
31:19 93:23
**asked** 22:9 47:5
**asking** 34:12
41:22 47:21,22
51:7,8,9 121:17
**aspects** 23:1 62:25
**assent** 38:2
**assert** 27:18 39:14
40:6 46:2 53:14

92:5
**asserted** 40:12
42:3 75:10 78:9
96:6 97:9 119:13
121:23 128:15
**asserting** 30:8
31:14 58:17
**asserts** 56:23
**asset** 26:25
**assets** 19:6 30:7
62:4,4 67:24
**assignee** 59:6
**associated** 110:15
**association**
110:18
**assume** 68:22
**assumes** 128:23
**assuming** 40:16
63:5 74:22 80:20
120:24
**assure** 24:16
**assuredly** 18:4
84:22
**assuring** 32:21
**attached** 124:5
**attaches** 109:7
**attack** 62:10
**attempt** 34:1
36:10 67:24
**attempts** 30:20
33:6 35:21 37:4
**attorney** 66:9
84:5
**attorneys** 12:4,13
12:20 13:3,12,20
14:3,10,17 67:15
67:17
**audible** 41:18
**authority** 28:7
33:24 34:13 57:19
64:19 117:25
**authorization**
39:10

**authorize** 85:17
**authorized** 16:7
27:16 34:7
**autoinjector**
19:23 20:1
**automatic** 3:16,20
4:3,8,12 64:17
65:11,23 67:9
71:23 72:10,15,17
72:25 133:7
**automatically**
102:9
**available** 29:19
31:25 62:4
**avenue** 12:5,22
13:13,21 14:11
**avoid** 15:8 28:19
112:11
**avoidable** 75:18
**avoidance** 44:10
**avoids** 50:14
**aware** 22:7 69:4
90:16

**b**

**b** 1:23 6:5 7:23
8:2,8 9:13 10:9
11:20 14:22 35:23
36:20,23 44:3
55:22 72:16 73:25
88:21 91:16,22
96:7 98:12 101:6
101:8,20 103:17
111:21 112:8,19
113:5,17 114:8,20
114:23 115:7
116:7,24 117:12
120:1 124:18,21
125:10,15,21
128:25 129:14
**b.r.** 58:3 59:16,18
**babies** 7:7 70:13
**baby** 24:7,7

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 174 of 205

[back - brought]                                                          Page 5

**back** 22:5 47:9
51:19 68:2 80:10
80:12 81:17 82:18
82:22 92:13
111:17 119:4
**background** 15:8
**balance** 17:23,24
18:1,9 43:6
**balances** 42:20
**bankr** 58:3 59:16
59:18
**bankruptcy** 1:1
1:13,25 28:10
29:4 31:13 33:9
33:10,13 34:2,10
44:24 45:12,21
46:7 52:10,16
53:6,7 55:24 57:8
57:18 58:4,4
59:11 61:7,15
63:17 67:13 69:24
70:24 71:4,12,19
71:23 72:16 73:4
73:7,8,12,20
77:10 79:10 88:21
91:18 95:16,25
107:11 108:5
112:20 113:17
116:25 117:23
129:1
**bar** 60:25
**based** 24:17 39:1
53:20 69:23
119:13 127:25
128:4
**bases** 56:23
**basis** 16:8,9 48:23
59:2 97:9 110:8
113:6 125:14
**bear** 92:7
**bears** 61:4
**beginning** 43:12

**behalf** 2:9,18 3:7
3:18 4:4,18 5:4
6:6,15,19 7:6,13
7:20,23 8:2,8,17
9:4,10,13,21 10:5
10:9,16,22 11:4
11:11,16,20 16:19
25:14 27:20 33:12
34:16 38:23 39:18
39:20 40:1,20,21
40:24 41:16 43:13
43:14,17 46:8
51:9,14 53:16
54:6 55:10 56:1
57:11,14 59:12
60:12 63:4 64:2
65:6 79:19 90:13
99:9 121:3 129:21
**behavior** 63:13
**belief** 121:19
**believe** 21:24
33:22 36:21 38:12
41:4 53:18 56:19
57:22 59:4 60:2,9
60:24 61:17 62:21
63:21,22 64:5
65:12 68:16 71:20
76:2,8 79:14
80:23 81:10 85:12
86:16 87:6,8,9
118:25 121:20
129:8
**believed** 70:20
72:9
**believes** 42:1
123:23
**belong** 34:9 39:6
40:15
**belongs** 34:15
**ben** 65:1 99:16
**bench** 119:8
**beneficial** 29:5,8
55:23 61:6,23

**benefit** 17:5 31:17
31:23 32:8 42:14
44:13 46:16 48:23
48:23 69:9 71:1
**benefitting** 81:8
**benjamin** 3:7 7:19
8:16 9:4,9,20
10:16,21 11:4,10
11:16 12:9 25:13
65:1 81:17,20
**best** 22:19 23:25
24:17 27:3 29:4
29:11 30:2,23
33:3 38:1,5 41:25
42:2,4,10 44:8
46:12,24 48:5
55:22 60:21,23
**better** 38:4
**beyond** 115:22,23
116:24 118:4
128:25
**billion** 17:25
26:20
**billions** 67:14
**bind** 28:4
**binding** 36:24
**bishop** 36:17
**bit** 50:7 94:3
95:14 123:20
**blanket** 117:5
**blinka** 55:14
**bmt** 44:12
**board** 83:19,21
**boston** 6:6,13 7:4
7:11,24 8:3,9 9:14
10:3,10 11:21
90:14 131:21
**bounced** 124:7
**bowling** 1:14
**boxes** 125:4
**branch** 118:8
**brauner** 13:8
40:23,24

**breach** 11:25
58:11 59:20 134:4
134:16
**breached** 67:21
68:6
**breaking** 68:8
**breath** 50:5
**brian** 15:3
**brief** 17:1,2 34:4
37:22 41:21 53:11
68:22 82:5 94:18
126:16,23 129:4
129:11 131:12
**briefing** 31:22
36:11 83:1 91:23
101:1 107:9,22
111:15 117:22
119:7 122:24
123:16 124:19,22
126:15 131:19
**briefly** 17:22 19:1
27:15 41:3 79:24
82:9 91:9 94:2,3
107:3 127:8
**briefs** 101:7 103:1
120:6,11 129:5,13
129:14
**bring** 30:18 33:12
33:14,17 38:22
45:1 58:6,23
59:12 81:22
**bringing** 59:2,20
69:8
**brings** 22:5 68:17
81:19
**broad** 42:6
**broader** 115:10
**broadly** 39:8 52:3
**brought** 31:4
44:15,22 58:10
60:4,5 65:9 73:9
97:12 131:19

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 175 of 205

[brown - checks]                                                           Page 6

**brown** 95:13
102:3,17 106:23
107:20 108:1
113:24 116:16,17
116:17,17
**bryan** 13:5
**build** 22:24 32:19
48:2
**bulk** 83:24
**burden** 68:18
80:25 84:13 89:5
92:7,12 117:17
122:18 123:8
**burdens** 18:11
**burdensome** 63:1
**business** 17:23
18:13 32:19 83:18
83:20 97:7 104:25
104:25 110:4,22
**businesses** 18:17
**bye** 79:5,5

**c**

**c** 12:2 13:1 14:1
15:1 65:19 79:10
91:22 96:7 112:19
117:1,8 121:13,15
134:1,1
**caldor** 36:3,24
**caldor's** 36:8
**calendar** 64:24
79:7 88:20 126:10
129:16 130:16
131:7
**calhoun** 2:9 13:17
43:16,17,22,23
45:14 46:9,18
50:2,6,23 51:6,16
51:20 52:2,14
64:10
**call** 17:23 119:6
**called** 27:16 56:10
66:10 72:9 84:4
124:9 125:1

**candidly** 20:24
24:10
**capable** 49:9,10
126:14
**caption** 58:15
**care** 76:19 99:10
**career** 48:10
77:11
**carefully** 57:22
61:13 77:16
**carry** 15:5
**case** 1:7 16:25
17:2,3,9,10,20
18:11 21:3,13
23:8,9,10,21 29:6
29:9 31:13 34:3,5
34:22,23 35:11,17
36:16,17,17 37:12
39:15 41:24 42:13
44:11,11,16,20
45:2 48:11 49:8
52:10,16 54:5
55:5,24 56:15,19
56:20 57:5,6 58:4
58:5,15 59:15,22
59:23 60:12,22
61:15,20 62:1
63:3 67:8 68:17
69:7 70:7 71:8,8
72:6 73:3 74:22
75:5,15,24 78:15
82:25,25 83:8
86:19 88:22 95:25
106:7 107:17,18
107:20,21 111:18
111:20 112:11,19
113:15,17,24
114:1,2,21 115:23
116:1 117:1,23
119:11 120:6
121:21 124:20
130:19

**cases** 17:9 18:20
23:3 25:25 28:6
30:5,10 31:6
34:22 35:11 38:20
38:21 45:12,13
50:22 52:24 53:6
57:6,17,22 58:2
59:14,19 62:3
69:5,8,16,18,24
70:1,11,15,19
72:13 74:21 75:4
80:24 85:6,7,11
88:1,2 89:10 90:2
105:20 107:10,11
113:24 129:22
**cash** 17:23,24
18:1,9
**catching** 50:4
**categories** 91:8,9
98:11 101:20
**category** 97:10
106:5
**catholic** 36:17
**caught** 84:6
**cause** 33:12,14
35:2,22 44:18
45:1 55:18 57:15
57:20 58:24 97:19
103:3,4 110:16
**causes** 2:3,15 3:3
25:21 27:19,25
28:8,16 29:3,15
29:21 30:15 31:12
36:7,13 38:22,25
39:2,5,9,16,17
40:7,9,14,14 42:3
44:14 46:25 53:4
53:14,16,22,25
54:7,9,12,17 55:9
55:10 56:2 57:4
58:7 59:12
**ceo** 92:19

**certain** 4:16,22
5:3,8,12,15,19,23
6:2 7:18 9:19 11:9
26:17 27:8 72:12
72:16 80:1 86:13
87:18,19 88:10
92:16 110:14
118:15 133:9
**certainly** 30:2
32:7 37:11 38:3
47:24 85:9 89:13
90:6 98:4 99:10
107:8 108:2 109:9
109:20 120:21
**certificate** 3:11
**certified** 134:9,13
134:17
**certify** 134:4
**challenge** 96:24
**challenges** 18:20
92:20 100:14,18
101:1 103:21
104:2,10 127:16
127:24 128:1,19
**chambers** 76:15
81:14 99:6 124:15
131:15
**chance** 32:16
120:3
**change** 64:12
84:20 108:9
112:12 115:6
**changed** 93:6
**changes** 80:13,16
**chapter** 18:20
19:10 28:6 57:8
58:5 62:2 69:16
69:18 71:8,8 74:3
85:6
**charge** 28:12
**check** 16:18
**checks** 42:20

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 176 of 205

[chief - committee]                                                              Page 7

**chief** 32:17
**child** 70:20
**children** 7:1
**christmas** 85:16
**christopher** 79:14
  79:18
**cir** 55:14,16
**circuit** 33:24 35:1
  35:15 36:3,25
  44:4,6 45:8,9,9,10
  45:12,16 46:10
  55:5,16,25 56:15
  72:5 73:14,14
  91:23 102:2
  107:12 108:1
  109:2,4 111:20
  115:22
**circuit's** 28:23
  34:24 35:7,8 37:2
  95:13 101:17
**circuits** 50:15
**circumstance**
  22:1
**circumstances**
  72:1 112:5
**citadel** 34:23 58:2
**cite** 23:5 33:6
  34:22 108:22
  109:3 112:4
**cited** 37:2 107:10
  107:19,19,21,23
  119:11
**cites** 33:23 105:22
  114:1
**citing** 114:2
**citizens** 109:3
**city** 58:2 59:22
**claim** 3:10 31:14
  33:17 34:13 65:9
  66:6,7 67:2 70:18
  71:2,19,24 72:3
  73:2,2 74:21,23
  75:2 100:23 133:6

**claimant** 3:15 4:2
  36:22 70:19
**claimants** 2:6,18
  3:6 12:21 30:8,9
  70:3,13,15 71:14
**claims** 2:3,14 3:3
  3:11 24:2,2 27:19
  30:7,10 31:4,17
  31:20 34:9,14
  37:19 39:9,16
  53:14 57:1 58:12
  59:20 63:24 64:1
  69:18,19,21,22,22
  70:1,2,3,7 71:3,6
  71:7 74:13,15
  75:17,18 76:17,17
  78:8,12,12,13
  121:23
**clarification** 44:2
  127:8
**clause** 39:20
  53:19
**clean** 126:20
**clear** 18:3 19:5
  24:9 27:21 33:18
  35:1,10 36:3
  37:24 39:3 40:12
  40:13 42:1 44:13
  45:11 53:18 59:4
  61:18 62:1,17
  64:19 66:23,25
  76:16 78:4 84:25
  87:10,24 89:10
  92:23 94:13 95:8
  96:19 108:1,19,23
  109:5 121:3 122:6
  123:22 127:14,19
  130:6 131:17
**clearest** 58:1
**clearly** 16:20
  22:14 31:23 41:17
  66:9 79:20 95:22

**cleft** 118:19
**clerk** 15:2
**clerk's** 16:9,11
  131:16
**clerks** 15:3
**client** 16:1 84:5
  120:22 124:9
**clients** 103:9
  105:1 118:21
**climate** 18:21
**clinical** 20:16
**clont's** 3:15 4:1
**clonts** 3:12,21 4:9
  4:13,23 14:24
  65:9,12,14,16,18
  65:20,24 66:3,6
  66:14,16,23 69:15
  69:18,23,25 70:18
  71:13,19 72:8
  73:1,5 74:7,9
  76:21,23 77:2,5,7
  77:9,13,18,23
  78:4,7,10,17,20
  78:24 79:2,5,24
  81:10 133:6,7
**close** 18:1 76:8
  131:24
**closed** 17:7,15
  67:8
**code** 44:24 45:21
  57:8 71:4,23
  72:16 73:4,9,12
  73:20 77:10 88:21
  108:5 129:1
**codifies** 101:17
**cognizable** 108:25
**collateral** 60:14
**colleague** 38:11
  65:2 81:17
**colleagues** 26:12
  58:20 117:23
**collection** 34:20

**collective** 26:24
  75:3
**collectively** 56:5
**colliers** 112:4
**colloquy** 122:21
**come** 74:11
  100:16 116:3
**comes** 112:12
  114:23
**coming** 41:22
  76:8
**commenced** 20:17
  37:1 58:23,25
**commencement**
  72:18
**comment** 47:2
**commercial** 91:15
  91:24 92:2 98:9
  110:20 115:11
  126:2
**commercially**
  87:1
**commitment**
  85:12
**committed** 27:24
  85:11
**committee** 2:4,5
  2:16,17 3:4,5 6:19
  7:7 12:20 13:3
  14:16 24:23 25:22
  26:2 27:22 29:12
  30:12 31:1,24
  33:15,16,22 34:6
  34:12,18 35:22
  36:19,22 38:9
  39:12,13 40:17,17
  40:20,21,25 41:4
  41:11,12,12 42:18
  42:18 51:15 52:19
  53:1,1,3 56:9,9,10
  58:6,10 59:1,7
  70:9,13 75:25
  77:25 88:2,3

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 177 of 205

[committee - constituencies]                                        Page 8

89:21,21 90:12
99:9 127:11,11,23
**committee's** 7:1
29:20 31:5,16
32:3 42:7
**committees** 25:23
26:10,11 27:4,7
27:12,16,17,24
28:17,17 29:1,14
31:7,21 32:12,16
33:18 35:12 36:5
37:18 39:23 42:19
48:17 49:2,2,3
51:17 52:7,19
53:12,24 54:10,15
57:20 60:11,16
61:21 62:9,24
64:7 70:11 75:25
76:2 78:18
**commodore** 27:23
34:24 38:20 55:12
55:13 57:6
**common** 27:6
42:17,24 88:6,12
94:11,12 95:15,17
95:19 101:17,22
101:23,25 104:4,7
107:24 108:20
109:9 114:15,17
114:23,25 115:4,6
115:7,8,9 117:12
**communications**
103:12
**companies** 47:3
120:21,23
**company** 2:10 6:6
6:12 7:4,11,24 8:3
8:8 9:13 10:3,10
11:20 13:12 43:18
43:19 51:1,3
54:23,25 58:12
59:22 60:5,5,7
68:7 90:14 92:20

**company's** 19:10
**comparable**
102:19
**compare** 18:6
**compel** 82:19
109:23 110:1
127:24
**compelling** 35:18
92:9
**competent** 48:25
**competitor** 93:2
**competitors** 92:1
110:22
**compilations**
86:14
**complete** 22:21
23:18 99:2,14
**completely** 15:23
16:4 32:5 36:2
44:16 78:5
**complex** 18:13
**complicated** 77:8
**complicates** 61:12
**complication**
118:11
**comply** 37:11
**compressed** 84:23
**concede** 45:2
**conceive** 22:1
**concept** 35:20
38:20 115:9
**concern** 48:20
118:13,14,18
120:14 121:5
**concerned** 62:17
64:13 89:16
104:17,23 124:22
125:16,25
**concerning** 84:4
100:12
**concerns** 118:17
**conclude** 24:3
63:19

**concluded** 58:21
59:7 107:12 132:7
**concludes** 64:23
**concluding** 21:8
**conclusion** 69:8
108:11
**condition** 51:21
51:25
**conduct** 61:11,15
63:7
**confer** 29:11
54:16 97:4
**conference** 55:6,8
56:22 61:6
**conferred** 38:21
39:4 54:3 55:7
57:8 59:11,25
86:4 90:18,25
**conferring** 55:19
**confers** 27:15
45:21
**confident** 42:20
**confidential** 83:6
88:11 91:15 98:8
110:20 115:11
**confidentiality**
22:8 88:12,25
**confirm** 40:21,25
**confirmation**
39:24 48:15 52:21
58:5 63:24 64:3
73:23 76:11
**confirmed** 28:25
50:17 71:11 74:22
75:6
**conflated** 36:21
**conflates** 35:20
**conflict** 50:14
**confronting** 61:9
**confuse** 56:25
**confusion** 131:14
**congress** 68:14
73:18 101:24

112:18
**connection** 8:14
8:21 36:11 82:23
85:19 86:7 93:20
96:2 103:5 107:23
114:23 125:13
127:17
**consensual** 27:8
76:10
**consensually**
28:25
**consensus** 22:21
22:24 23:12,18
48:2 49:12
**consent** 28:16,18
32:15 36:19 54:12
**consenting** 2:12
2:19 6:10,15 7:2
12:13 26:3 38:12
41:3,4,17 42:1
56:11,16 88:3
**consents** 55:19
**consider** 18:11
46:12 86:21
106:18 113:6
130:13
**considerable** 18:1
**consideration**
75:21 131:12
**considerations**
112:3
**considered** 61:13
88:25 104:12
113:5 120:1
**considering** 74:15
**consistent** 24:10
26:9 29:13 64:11
87:4
**consistently**
101:23 115:1
**consists** 92:15
**constituencies**
29:25 32:18

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 178 of 205

[constituents - court]                                                           Page 9

constituents 31:5
69:7
constituted 83:6
constitutes 108:25
constrained 89:15
constraints 33:24
construct 61:22
construction
113:22
construed 59:15
91:22
consult 49:1
consulting 126:17
contact 16:11
contain 86:18
91:14 103:2,6
containing 83:20
contains 101:7
contemplate
88:16 117:24
contemplated
39:25,25 88:9
112:25
contemporaneous
108:21 109:6
contend 33:19
91:6 98:6
contended 110:14
contention 48:7
contested 25:7
32:23
context 17:19
23:5,22 26:16
61:20 82:14 87:24
91:24 108:4
117:19,20 119:16
120:17 130:13
contingent 2:6,17
3:6 12:21
continuation
72:18
continue 60:17
64:3 66:18,20

84:18 85:9,11
105:16 127:4
131:4
continued 19:3
86:15,21 94:4
continues 19:11
continuing 101:14
contours 19:8
contrary 33:3
57:19,23 63:13,21
70:23 107:22
108:18
control 48:18
50:25 51:3
controlling 44:4
44:21 107:17
controversy
106:12
conversation
119:1
conversations
23:2
convinced 42:23
cooperate 27:4
39:4
cooperating 27:24
cooperation 15:15
26:10 27:14 39:22
cooperative 29:18
cooperatively
54:16,25 55:3
coordinate 29:14
62:20 63:11
coordinated 63:4
coordinating
27:24
coordination 26:9
27:14 32:8 52:20
copies 119:24
copy 64:10
copycats 118:17
core 36:9,9 43:5

corner 118:1
corporation 73:24
corporations
73:17,22
correct 40:2 41:8
46:9 65:17,20
80:7 94:25 95:1
105:13 128:9,14
128:17
cost 17:13 19:11
20:10,12 48:23
60:22 74:17
costly 63:1
costs 18:12,19
19:7
counsel 29:20
32:3,4 43:20 44:1
44:17,18 45:14
46:19 47:1 51:7
63:3 90:10 97:5
97:23 112:13
117:21 122:4
124:4 126:14
counseling 24:5
counter 20:10
105:6
counterparties
103:3 104:15,16
104:16,18,24
105:7 110:15
counterparty
97:7,8 110:5
112:10 116:11
122:7
country 20:13
48:10 134:23
couple 19:17 21:5
course 16:6 18:20
19:5 21:10 22:7
22:12,18 24:9
26:14 27:7 45:19
55:2 56:12 57:5
60:13 63:25 64:17

72:13 78:8 88:18
89:18 90:4
court 1:1,13,20
15:3,21 16:2,8,20
16:21 17:6,24
19:5,14,24 21:15
21:22 22:7,9,24
24:18,21 25:4,11
25:13,17,19 26:14
29:1,11 33:3
34:12 36:20,23
37:9,19 38:14
40:10,22 41:1,14
41:19 43:8,10,22
45:10,12,18,19
46:7,13 47:16
49:25 50:3,21
51:5,12 52:22
55:20 56:17 57:18
58:19 59:4,11,25
60:13 62:22 63:12
64:15,22,22 65:4
65:13,15,19,21,25
66:4,12,15,19
68:20 69:4,13
71:12 72:12 76:22
77:1,3,6,8,10,14
77:19,24 78:6,8
78:11,18,22 79:1
79:4,6,16,20,21
80:4,13,16,19
81:18 82:5,8 85:4
86:3,12,22 87:23
89:1 90:6 93:8,13
94:17,19 95:3,7
96:3,11,13 97:21
98:25 99:13,18,20
99:22,24 100:2,4
100:8,11,22,25
101:4,19,21 102:3
104:8,12,13,15,20
104:22 105:11,19
105:22 106:3,17

[court - debtors]

106:18 107:1,5,9
108:21 109:6,11
109:12,14 110:10
111:7,17,25 112:2
112:5,14,16,18,20
112:24 113:1,3,5
113:5,12,15,20
114:3,5,7,12,18
114:24 115:2,5,9
115:19,21,21
116:4,6,12,14,18
117:17,23,24
118:2,9,23 119:2
119:4,17,18,22
120:13 121:7,10
122:11,13,22
123:1,11,12,13,19
123:23 124:1,3,8
124:13 125:3,5,7
125:11,24 126:8
127:2,4,9,21
128:6,8,10,15,20
128:23 129:3,10
129:13,19 130:2
130:11,12,14,21
130:23,24 131:5,6
**court's** 24:9 59:10
62:7 97:11 102:24
114:13 131:23
**courtroom** 15:6
31:10
**courts** 57:10
59:19 60:1 102:7
109:2 131:18
**coventry** 17:6
**cover** 31:20 39:23
**coverage** 2:4,15
3:4 26:20,23,25
46:20 47:7 48:20
51:23 52:8 53:9
**covered** 25:1
31:18 43:5 117:8
119:20 121:13

124:18
**covering** 26:18
**covers** 98:20
101:22 114:25
115:7
**create** 45:8 46:22
48:23 52:18,20
**creates** 48:19
**creditor** 29:2,2
33:8,15,16 34:21
35:13 36:25 44:11
44:25 47:24 50:17
56:4
**creditor's** 35:17
**creditors** 2:5,16
3:5 13:4 31:18,23
31:25 34:20 38:2
42:14 44:25 46:17
46:22 49:6 51:1
52:25 56:6,9 58:6
59:1,7,21 62:5,6
67:24 69:9 70:9
70:10 71:1,5,6,10
75:23,25 77:25
88:2
**crime** 66:17 67:4
67:7,11 68:1,18
72:9 84:4 128:4
**crimes** 72:12
**critical** 30:4 47:20
**critically** 21:12
**cross** 7:18 9:19
11:9 42:6 119:10
**crystal** 33:18
84:25
**current** 20:4
104:16,17,24
122:16
**currently** 21:15
22:12 33:19 53:24
64:16 93:21,22
**custom** 17:1

**customary** 88:7
**cut** 62:10 101:9
101:12
**cybergenics** 35:7
35:9

**d**

**d** 1:24 15:1 58:3
59:16,18 73:19
75:11 79:10 133:1
**d&o** 26:21
**daily** 16:8,9
**damages** 68:9
**date** 15:22 18:2
19:25 20:1,20
21:13,25 23:1
28:5,9 98:2 104:9
129:4,11 131:25
132:1 134:19
**dated** 4:7,8
**dates** 21:3 80:15
80:17,17
**dating** 92:13
**daughter** 68:10
69:23
**davis** 12:3 16:19
25:13 65:6 79:18
81:20
**day** 16:24 24:4
32:25 37:11,23
108:24
**days** 21:9 22:6,15
24:12 126:24
**dc** 12:24 13:15
14:20
**deadline** 21:16
76:9 80:10 81:1,3
81:4,9
**deal** 50:19 81:6
87:22 90:3 100:1
100:4,5 124:12
**dealing** 75:16
78:11 106:24
128:12

**deals** 117:1
**dealt** 18:24 44:10
45:20 76:18 97:10
119:15
**death** 69:23
**debevoise** 14:9
118:7
**deborah** 3:12,15
3:21 4:1,9,12,23
14:24 65:9 133:6
133:7
**debt** 73:24
**debtor** 18:17 24:2
28:25 29:3 33:12
33:20 35:5,18
37:2 39:5,6 44:16
45:22 46:2,8,17
50:18 51:16,22
52:7,19 54:5 55:7
55:10,17 56:1,15
57:3,9 60:11,12
60:17,24 62:23
73:8,15,23 75:7,9
93:23 125:16
**debtor's** 48:24
55:22 57:12,15
58:9 93:5 111:8
124:4
**debtors** 1:9 2:1,13
2:15 3:1,14 4:1,21
5:1,7 7:16 9:1,2,8
9:17 10:13,14,20
11:1,2,7,13,14
12:4 16:19 17:24
19:3,6,19 20:3,5
21:10,16,18,24
22:2 23:2,11 25:8
25:19,21 26:1,7
26:10,16,25 27:2
27:4,5,6,11,18,20
27:21,23,25 28:8
28:12,15,18 29:15
29:15,21 30:4,5

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 180 of 205

[debtors - disclosed]                                                    Page 11

30:11,12,13,15,19
31:4,6,11,12,21
32:4,6,8,12,14,18
33:20 34:15 35:12
35:22 36:7,12,19
37:14,18 38:7,8
38:18,22,25 39:2
39:10,14,16,17,18
39:21 40:1,7,9,14
40:15 42:2,12,17
45:14 46:3 47:2,7
47:23 48:8 49:8
51:10 52:23,24
53:4,5,9,13,15,16
53:22 54:6,7,8,12
54:15,17,21 55:2
56:8,12,25 57:1
62:1,13 63:3,23
64:2 65:7 66:1
69:3,6,15,21 70:2
70:8 71:9 72:11
73:13,16 74:10,18
75:17,20,21,24
77:24,25 78:16
79:8,12,19 81:7
82:2,20,21 83:17
83:18,19,20 84:6
84:12,16,21,22
85:6,10,13,17,19
85:21 86:11,16,20
86:23 87:4,13
88:4,5,20 89:16
91:14 92:5,24
**debtors'** 133:8
**debts** 4:16,23 5:3
5:9,12,15,20,24
6:3 80:1 133:9
**december** 17:7
19:20 22:24 23:23
80:10 90:17 127:3
**decide** 37:19
101:5 102:21
114:19 117:10

120:11 124:17
130:11,15,24
131:10,18
**decided** 57:17
90:5 102:14
106:19
**decision** 28:23
36:3 37:16 44:4
56:18 95:13
100:25 101:12
102:2,2 104:4,13
105:10 106:9,13
107:19 108:23
109:4 114:2
116:16
**decisions** 18:10
19:12 34:17,23
35:6 54:18 58:20
84:7
**declaration** 9:7
10:19 73:7 81:2
91:12,13 92:4,5
99:4,4 125:13,14
**declarations**
94:24
**decorum** 15:6
**defamatory** 114:9
115:13 116:9
**defects** 36:18
**defendant** 18:17
63:2
**defenses** 121:23
**defer** 101:15
123:21
**defined** 39:2,7
**defines** 38:25
**definitely** 38:15
**definition** 39:7
**del** 58:3 59:17,18
**delaware** 33:21
34:13,18 45:11
57:18 58:21 59:2
59:13 60:7 117:24

**delaware's** 58:12
**delay** 48:20 63:23
119:9
**delayed** 108:24
121:21
**delaying** 47:4
**demand** 45:5
**demanded** 84:24
**demonstrate**
123:8
**demonstrated**
92:24
**demonstrating**
37:25 92:7
**denial** 119:12
**denied** 37:7,16
63:20 70:25
108:24
**deny** 60:20 71:15
71:16 104:9 112:5
**denying** 76:15,16
**depending** 44:5
105:9 108:9
**depends** 102:4
**derivative** 34:13
54:4 58:11 59:2
59:10,13,20,24
68:5
**derivatively** 60:6
**description**
120:14
**designed** 32:16
**desire** 48:2
**desultory** 64:4
**detailed** 83:20
**details** 92:1
**determination**
62:8 80:10 106:4
**developed** 55:5
**development**
98:10 110:19
115:11

**developments**
17:10
**devices** 106:24
**dialed** 21:7
**dialogue** 84:19
**difference** 53:5
**differences** 35:9
**different** 35:8
44:16 45:7,15
63:8 88:11 97:18
98:5 129:13
**differential** 56:18
**differently** 121:19
**difficult** 22:1
**diligently** 85:17
**direct** 23:22 37:9
44:20 54:1,3
59:25
**directed** 47:17
121:15
**directly** 62:8,15
81:12 112:13
**directors** 68:6
83:19
**disagree** 94:13
114:22
**disagreed** 60:13
**disagrees** 38:17
**disallowed** 74:24
**disallowing** 76:16
**discharge** 73:3,7
73:19,21,23 75:7
75:9
**dischargeability**
4:16,22 5:2,8,12
5:15,19,23 6:2
79:9,25 81:2,6
133:9
**discharges** 73:12
**disclose** 110:21
116:10
**disclosed** 89:13
91:25 98:14 117:7

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 181 of 205

[disclosing - either]                                                    Page 12

disclosing   116:13
disclosure   89:6,6
   89:7,10,12 91:20
   94:14 97:21
   107:13
disclosures
   120:19
discovery   31:8,10
   62:25 84:3 86:15
   88:1,6,7,8,10,13
   94:23 95:5 97:14
   97:18,25 98:3
   102:4,12 106:20
   106:23 107:24
   110:12
discretion   56:17
   101:21 113:1
   114:6
discretionary
   113:11,16
discuss   60:1
   118:11 120:4
   131:6
discussed   19:4,24
   20:9 32:13 118:23
discussing   89:14
discussion   34:3
   80:3 113:21
   114:22 119:1
   131:5
discussions   18:16
   49:13 61:12,19,22
   61:25 62:10 97:4
dispense   86:10
displaced   95:17
   108:4
displaces   109:8
display   32:19
disposal   58:2
dispose   109:12
dispute   31:3
   101:2

disputes   27:19
   28:20 31:2 39:9
   39:16 51:22 52:11
   53:8,8,15 86:4
   90:7 106:10
dissolved   48:18
distinction   36:9
   46:4
distinguishable
   57:23
distinguishes
   102:8
distribute   70:15
distributed   70:16
distribution   31:25
   74:25
distributions
   75:23
district   1:2 34:18
   57:18 64:22 72:12
   72:13 88:16
   117:23 119:17,17
districts   50:15
doc   106:4
docket   26:4 68:10
   82:6 94:24 118:16
dockets   112:20
doctor   130:3
doctrine   35:7,8
doctrines   34:1
document   2:8 3:7
   3:17 4:3,12,16
   5:16 6:14,18 7:6
   7:13,19,23 8:2,7
   8:16,23 9:4,9,20
   10:5,9,16,21 11:4
   11:10,16 106:21
   124:16,17 125:2
   130:25 131:9
documents   9:3
   10:15 11:3,15
   68:11 82:19,24
   83:6 84:9,14 86:1

86:5,13 87:10,10
87:12,13,19 88:21
89:3,20 90:2 91:5
91:7,7,10,13
92:13,24 93:4,18
96:8,20 98:22
104:6,7 106:3,5,6
106:15 109:6
111:6 112:6,24
113:7 117:19,25
119:21,25 120:4,5
121:6 122:8
123:17 124:5
125:16 126:20
128:16
doe   109:3
doing   22:14 55:21
76:2,4 94:1
dollar   70:8
dollars   67:14,20
domestic   74:1
don't   123:25
125:25 127:12
doubt   16:2
doubts   48:13
dovetail   95:10
dow   6:6,12 7:4,11
7:24 8:3,8 9:13
10:3,10 11:20
90:13 131:22
dr   15:19 126:25
127:2 129:18,20
129:21 131:1
drain   1:24 15:21
129:20
drain's   15:3
dramatically
20:12
draw   36:9
drop   60:16
drug   19:20 20:20
duplication   62:24

dura   34:22
duties   59:21
duty   58:12 67:21
68:5,7

e

e   1:23,23 12:2,2
13:1,1 14:1,1 15:1
15:1 20:19 106:7
133:1 134:1
earlier   70:19
86:22
early   88:2
easy   29:17,17
67:2,5
ecf   2:6,10,19 3:8
3:12,18,21 4:5,9
4:13,19,23 5:3,3,5
5:9,12,16,20,24
6:3,8,15,19 7:7,14
7:20,25 8:4,10,17
8:23 9:5,10,15,21
10:6,11,17,22
11:5,11,17,22
economic   56:20
educating   90:4
effective   19:11
28:5,8 49:15
74:17
efficiency   42:21
efficient   29:5,9
30:3,5 49:15
55:23 61:7 63:11
63:17,18 72:3
74:16
efficiently   42:9
55:1
efforts   30:14,18
62:21
eight   81:23
either   21:18 24:5
44:5 49:18 59:21
66:12,22 76:7
105:8 117:12

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 182 of 205

[electronic - exercise]                                                    Page 13

electronic  25:9
134:9,13,17
elements  33:5
eli  4:17
eliminated  101:9
elli's  105:25
ellis  104:5
elucidate  130:22
email  64:9,11
81:13 87:3 99:5
111:10 124:4,7
125:19 130:5
emails  131:2
embodies  26:11
embody  38:20
emergence  19:7
28:4,9,12
emphasize  35:16
employees  68:7
empts  44:25
enable  88:12
endeavor  54:18
ends  21:10
enemy  23:4
enforce  72:19,22
enforcement
72:20
engage  27:9 64:20
116:18
engaged  24:13
104:24
enhance  52:9
enormous  18:19
75:3
enormously
119:20
ensuing  48:20
ensure  42:21
114:3
ensures  32:10
enter  22:10 52:4
85:7

entered  31:10
38:9 83:7 97:18
106:1
entire  36:1 77:11
112:9 121:4
entirely  17:10
37:6 38:7,19
76:10 86:16 87:11
103:21
entirety  90:21
92:25 93:22 94:9
98:19
entities  31:21 53:1
53:2 70:5,6,21
73:17,17,22 75:13
76:1 80:25
entitled  69:20
75:10 106:22
entity  28:4,12
81:1
entity's  92:2
110:21
entrenched  112:2
entries  82:6
100:20,24 101:3,8
101:9,11 102:25
103:11,18,23
104:11 105:3,9
126:21 127:16
entry  5:7 9:1,2
10:13,14 11:1,2
11:13,14 79:24
101:7
enumerated  91:20
91:21 98:12
equity  105:23,24
esq  12:8,9,10,17
13:8,9,17,25 14:7
14:14,22
esquire  12:25
essence  74:4
essentially  56:6
86:5

estate  17:12 26:1
27:1 29:3,4 30:3
32:1 33:12,14
34:8,9,15,16,19
35:4 38:23,23
40:14,15 42:11
44:8,18 46:8,12
46:16,24 51:8
55:2,9,11,18,18
55:22 56:2,4
57:12,15 58:7
59:12 60:21,24
64:2 74:10 103:4
estate's  17:20
29:25 30:6,23
32:17 33:3 38:5
43:7 44:14 48:5
49:3,16
estates  27:3,20
29:11,19 30:19,20
31:17 33:2 38:1,3
39:18,21 40:1
41:25 42:2,5
53:17,22 54:6
56:11,25 61:23
69:21 75:17
estoppel  60:15
et  1:7 15:23
evaluate  84:21
evaporate  108:17
evening  84:11
event  35:10 81:12
events  16:24
everybody  78:19
131:3
evidence  94:8
100:21,23 102:20
102:20 103:14
106:24
evidential  100:21
103:23
ex  9:1 10:13 11:1
11:13

exactly  23:9 24:11
exaggeration
85:23
examination
112:21
example  23:18
24:23 58:1 63:8
74:19 98:17 114:3
116:22
examples  23:5
exceedingly  85:24
85:25
excellent  67:15
exception  57:7
66:7,17 67:5,8,11
68:1,18 72:10,14
72:24 74:8 84:4
92:8 96:4,7,25
98:16 110:5
113:10,11,16
114:19 117:8
exceptionally
18:18
exceptions  91:20
91:21 98:8 107:15
110:24,25 111:21
112:8 114:14
127:18,21 128:4,5
excerpts  86:13
93:19
excess  101:13
exchanged  86:15
95:5 110:11
exclusion  72:15
exclusively  40:1
112:7 127:15
exclusivity  21:2
21:10 22:19 92:16
excuse  92:3
exemplified  85:12
exercise  32:18
102:5,18,25

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 183 of 205

[exhausted - filed]                                                    Page 14

exhausted 26:23
exhibit 63:9 87:15
  87:15 91:11,12
  92:3,3,4,13,18
  99:3,4,10,11
  101:6,7,8 103:17
exhibits 68:11
  83:24 93:20 94:24
  100:6 124:21
  127:14,17
existence 97:23
existing 108:18
expand 40:8
expect 21:20
  62:21 120:17
expectation 62:23
expected 20:22
expecting 23:18
expense 32:17
experience 40:11
expertise 29:19
expire 21:15
explain 44:9
  91:23 114:13
  124:25 130:5
explained 34:5
  130:4
explains 125:14
expose 31:12
exposure 31:4,13
express 37:4 45:3
  91:20 98:7
expressed 95:24
expressing 92:19
expressions
  131:21
expressly 36:24
  98:12 107:14
extend 21:17 22:2
  80:9 81:4,9
  106:12
extending 4:15,22
  5:2,8,11,14,19,23

6:2 79:25 133:8
extension 79:9
  80:11
extensions 80:23
extensive 31:7
  88:1
extensively 86:4
extent 47:25 52:9
  53:9 71:17 75:10
  81:3 89:24 96:21
  98:15 107:7 111:7
  123:16,23
extraordinary
  18:11,19,23 21:14
  31:7
extremely 20:24
  22:8 84:23
eye 89:11,24
eyeball 126:3

f

f 1:23 106:7,7
  115:15,22 119:16
  134:1
f.3rd 109:4
f3d 55:13,16
face 18:19 76:6
  81:1 109:9
faced 30:7
facilitate 102:23
facilities 18:23
facing 92:20
fact 18:5,17 21:19
  31:19 35:6 48:22
  57:19,21,23 69:6
  70:1 83:13 84:10
  84:20 88:11 89:15
  90:1 97:16,24
  98:1 100:17
  107:20 119:11
  123:18
factor 46:19
factories 18:22

factors 72:5,6
facts 94:21 116:23
  122:6 128:24
factual 117:10
factually 36:15
failed 68:6
fails 30:24
fair 29:5,8 30:4
  55:23 61:7 63:16
  63:18 67:16 75:20
  75:20 78:19
  112:23
faith 86:21
fall 74:8 91:7
  96:25 98:7 106:5
fallen 37:25
falls 92:8 125:9
families 82:3,20
family 7:9,14 10:1
  10:6 13:20 14:3
  93:11 94:2,7 96:6
  97:2 107:21
  110:16,18 118:8
  122:4 129:6
family's 97:22
far 16:24 23:2
  35:16 62:2,17
  64:4,12 72:2
  73:18 89:14,16
  100:17 104:22
  121:23 122:17,18
  124:21 125:16,24
fashion 37:6 63:6
faster 76:13
fault 90:7
favor 94:4
fda 19:20 20:5,16
fda's 20:18
february 21:11,12
  21:19,24 22:2,5
  22:15,17 24:15,18
  129:7,8 132:2

federal 33:9,10,13
  34:10 46:4 57:16
  102:7 119:17
feed 17:18
feel 46:20
feeling 126:21
feld 13:2
fell 85:16
fiduciaries 26:1
  42:7 46:17 71:10
fiduciary 46:6
  58:11 59:20 67:21
  68:5,7 70:10
field 19:21
fifth 4:15,21 5:1
  79:24 133:8
fights 88:13,25
file 21:17 22:19
  24:17 32:14 49:20
  67:1 76:17 93:24
  108:12 118:15
  129:14 130:7,9,12
  131:11
filed 2:9,18 3:7,12
  3:17,20 4:3,9,12
  4:17,23 5:4 6:5,14
  6:18 7:6,13,19,23
  8:2,7,14,16,21 9:4
  9:9,12,20 10:5,9
  10:16,21 11:4,10
  11:16,19 17:25
  19:20 24:4 26:6
  30:7,9 67:3,7
  69:19,25 70:2,7
  71:19 74:2 75:2,6
  80:9 82:18,25
  83:5,10,16,23,24
  84:1,22 85:19
  86:7 90:2,20,24
  91:1,18 93:20
  94:23 95:6,25
  96:2,3 97:20
  101:7,8 103:23

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 184 of 205

[filed - goes]                                                                  Page 15

106:22 107:17,23
109:10,11,14,21
109:24 110:10
111:7 112:19
115:25 116:25
122:8,10 126:23
127:23 129:21
130:21,25 131:9
**filing** 8:12 20:1
24:11 118:16
**filings** 115:23
120:13
**final** 81:22 85:7
**finally** 23:22 37:4
52:14 54:14 110:3
111:1
**find** 44:7 118:19
121:20
**fine** 16:21 25:17
41:19 43:22 66:12
66:14 69:13 118:2
122:17 124:24
**finish** 47:13
**finished** 48:14
**firm** 26:13 42:8
**firmly** 112:2
**first** 5:14 16:1,18
24:14 27:15 31:1
36:18 41:23 44:2
53:11 56:24 61:13
69:17 70:17 73:6
88:14 94:6,15
100:13 108:20
109:1 114:15
115:19 121:4
126:17 130:1,8
**fit** 89:10
**five** 81:23 93:1
131:7
**flag** 97:1
**floor** 13:22
**flow** 35:6

**focus** 52:7 59:10
59:14,24 61:14,16
76:4 89:9 119:25
**focused** 30:1
59:19 60:3 69:8
**focusing** 63:15
**fold** 97:16
**follow** 24:9
**followed** 20:18
62:23
**following** 27:14
**footnote** 106:18
**forced** 84:21
**foregoing** 134:4
**foreshadowed**
37:16
**form** 62:3 90:20
94:1 124:10
**formally** 64:9
**former** 54:24
61:16
**formerly** 26:6
43:18
**forms** 19:23
**forth** 73:19
107:15 128:25
**forum** 71:19 72:3
**forums** 131:20
**forward** 23:3 69:6
111:12
**found** 91:21
**four** 41:23 57:17
69:19 79:23 93:1
**fourth** 6:1 32:11
109:2,4
**framework** 29:18
**frank** 97:3
**frankly** 17:18
49:21 50:15 82:13
87:22 96:9 121:10
**fraud** 66:17 67:5
67:6,7,11,25 68:1
68:2,18 72:9 84:4

128:4
**freedom** 14:16
90:13
**friend** 130:21
**front** 17:5 41:10
89:23
**fruition** 20:8
**full** 31:22 36:11
68:15 89:1
**fully** 19:5 24:13
37:22 43:5 72:1
74:9 85:1
**function** 102:24
102:25 131:23
**fund** 103:5
**fundamental**
70:24 71:4
**fundamentally**
33:10 109:17
**funded** 44:12
**funding** 49:9
50:13
**further** 5:1 18:24
36:8 47:16 62:10
62:11 79:8 80:20
120:14 122:23
130:22
**future** 30:14
48:24 131:9

**g**

**g** 15:1 38:19 54:24
106:7
**gain** 30:18 64:6
**gaining** 36:19
**garling** 11:24
134:3,8
**gather** 80:5
105:12
**general** 25:15
26:21 33:8 69:10
72:14 73:21
100:14,18,25
103:20 104:2,10

117:20 122:16
131:20
**generally** 38:23
61:16,24 63:19
112:6,7 120:7
121:21
**generic** 20:3,6
**george** 2:9 13:17
43:17
**gerard** 7:13 10:5
**getting** 24:5,8
67:18 71:5 113:4
**gilbert** 12:19
26:13 40:20 42:8
**giuffre** 106:7
107:18 116:17,17
**give** 17:1 82:5
91:25 93:1 120:4
124:14 125:22
**given** 17:20 27:11
54:20 58:8 60:25
61:1 64:6 92:25
102:3 105:19
121:22 122:23
**gives** 113:1
**giving** 110:22
123:13,14
**glad** 79:2
**glob** 7:4
**globe** 6:7,13 7:11
7:24 8:3,9 9:14
10:3,10 11:21
90:14 131:22
**go** 16:15 21:1
42:22 50:2 83:25
93:16 95:7 104:21
105:4 111:17
112:10 115:8
117:2 121:24
122:2 128:6,8
**goals** 27:13 43:2
**goes** 113:9 122:17

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 185 of 205

[going - holding]                                                                    Page 16

**going** 17:9 41:3,5
45:17 48:1,6,14
48:16 50:17 65:1
82:6 102:10,15,23
104:3,4 111:24
112:25 117:18
120:2 123:2,4
125:25 130:3,5
**good** 15:2,21
16:23 17:4 22:13
23:4,20 25:12
40:23 43:16 50:9
65:5 79:17 81:20
85:15 86:21 97:18
**gotten** 130:18
**gould** 55:13
**governed** 101:22
114:25
**governing** 97:14
97:17 98:2
**government** 31:18
31:20 102:11
**governmental** 2:5
2:17 3:5 12:20
53:1,2 70:5,12
72:19,19,22,23,25
74:1,5,7 75:12,13
76:1 80:25
**governments**
72:25
**governs** 33:11
97:25
**grandparents**
24:7
**grant** 55:20 56:24
57:24 64:8 70:21
70:23 71:14 80:22
81:13 101:19
121:11
**granted** 21:14
30:21 38:7 39:13
53:13 54:4 63:21
63:22 80:23 127:2

**granting** 2:2,14
3:2 25:20
**grants** 130:12
**greater** 17:17
119:20
**green** 1:14
**gregory** 13:25
93:10
**gross's** 59:15
**ground** 91:14
**grounded** 35:25
**group** 2:12,19
6:10,15 7:2 12:13
26:3 41:17 42:1
44:25 120:22
**groups** 26:19
41:24 47:22,24
48:10 49:12 56:5
**guess** 29:24 39:21
45:18 50:1 80:8
87:17 114:17
115:5 116:14
118:3 120:1,5
124:4 129:4,11
**guessed** 30:11
**guilty** 67:6 68:2
72:12
**gump** 13:2 40:24
99:9

**h**

**h** 119:16,16
**hage** 13:19
**half** 18:2 48:12
**hand** 35:21 52:25
82:15 88:4,5
89:22 112:16
119:19 129:19
**handful** 85:15
**handle** 25:10
**handled** 79:14
110:12
**handling** 79:12

**happen** 76:12
121:17
**happens** 19:6
37:21 48:19 52:21
53:6 74:25 103:22
110:1
**happy** 16:15,23
20:23 31:21 43:13
49:11,18,19 68:22
69:12 82:13 90:9
98:23 107:6
111:13,15 123:21
**harassed** 103:10
103:13
**hard** 18:12 22:16
22:24 78:15
119:22 120:7
121:19,20
**harm** 69:22 103:4
103:4 110:21
116:10,19
**hauer** 13:2
**heading** 114:16
**health** 17:23 19:4
19:12
**hear** 16:20,21
25:16,17 38:15,16
38:16 41:3,19
43:13,21,22 47:9
51:19 64:18 68:22
90:9 132:1
**heard** 15:10 21:20
34:3 35:24 36:6
38:13 43:12 49:20
79:20 100:19,19
100:19 121:5
**hearing** 1:19 2:1,8
2:12 3:1,10,14,20
4:1,7,11,15,21 5:1
5:7,11,14,18,22
6:1,5,10,17 7:1,9
7:16,22 8:1,6,6,12
8:15,19,22 9:1,7

9:12,17 10:1,8,13
10:19 11:1,7,13
11:19 15:4,9,22
15:23 16:4,10
21:7,8,20 37:10
47:17 64:16 67:3
67:4 84:10 110:7
110:8 111:19
120:12 121:10
123:7 124:23
126:5,11,24 129:7
**hearings** 16:7,14
50:1 63:7 131:25
**heavily** 83:1
**heightened** 97:13
**held** 1:19 4:18
**help** 24:8 100:22
**helpful** 82:4
**hey** 47:8
**hh** 34:22 59:15
**hi** 15:19
**hide** 67:24
**high** 62:7
**higher** 32:3
**highly** 18:22
70:25
**hit** 82:8,9
**hoc** 2:5,12,17,19
3:5 6:10,15,19 7:1
7:2,7 12:13,20
25:22 26:2 27:22
29:20 30:12 31:16
31:24 32:3 38:9
39:13 40:16,20,21
41:4,12,16 42:7
42:18 51:15 53:1
53:3 56:9,10
70:10,13 75:25
76:1 88:3 89:21
**hold** 34:18
**holding** 36:8
105:25

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 186 of 205

[holds - incumbent]                                                          Page 17

**holds** 106:9
**holidays** 84:14
**hon** 1:24
**honor** 16:17,23
  17:4,22 19:1 21:1
  21:6 22:22 24:10
  24:16,18 25:6,12
  25:18 26:16 27:15
  28:1,19,22,24
  29:10,16 30:9
  31:5 32:13,25
  33:6 35:15 37:4
  37:24 38:10 40:3
  40:19,23 41:8,10
  41:15,20,21 43:9
  43:16,21,23 44:5
  44:20 46:9,18
  47:5 48:13,22
  49:18,24 50:2,8
  50:15,24 51:9,14
  64:14,25 65:5,24
  68:19,25 69:3,11
  76:20,23 79:13,17
  79:22,23 80:8,15
  80:18 81:15,19
  82:11,13 83:4
  87:7,9,16 90:11
  90:16 91:7,17
  92:6 93:10,17
  95:1,9 96:9 97:1
  98:20,23 99:8,15
  99:23 100:10,12
  101:16 102:15
  103:3,15,25
  104:14,18 105:2
  105:21 107:2,7,7
  110:3 111:2,13,23
  112:17,22 113:19
  114:1,10,21
  115:24 117:16,21
  118:6,13,17 121:2
  121:25 122:1,3,20
  123:4,21,24 124:2

124:6,9,11,12,24
  125:1,9 126:25
  127:1,2,7,12
  129:9,12 132:5
**honor's** 98:4
  101:11 105:10,14
**hope** 22:19 23:14
  27:7 41:17 64:18
  76:9
**hoped** 17:8
**hopefully** 20:12
  85:8 126:18
**hopes** 36:9
**hoping** 49:21
**hospitals** 70:6
**hourly** 32:2
**housecraft** 27:16
  27:23 28:24,24
  29:13 33:5,7,25
  34:25 35:10,13,16
  35:21 38:20 39:5
  40:5 44:3,3,10,15
  44:19,23 45:7,19
  46:10 55:15,25
  56:15 57:6
**hrt** 20:10
**hudson** 14:4
**huebner** 12:8
  16:17,19,22 25:1
  25:6
**huge** 67:22
**huh** 65:24 66:3
  77:9,18 78:10
**hundred** 40:3
  83:18
**hundreds** 83:18
**hurley** 13:9 99:8,8
  101:6 103:17
  124:2,2 126:7
  127:1,7,7,10,10
  127:23 128:7,9,14
  128:17,22 129:2

**hypo** 114:3
**hypothesizing**
  117:14

**i**

**i.e.** 45:25 54:1
  55:10 56:1 61:5
  61:25 69:22 73:13
  75:13,19 114:15
  130:13
**idea** 66:24
**identifiable** 87:3
  117:1
**identified** 36:16
  87:14 91:8 96:14
  98:11,11 126:22
  127:17
**identifiers** 117:8
**identify** 15:25
  100:22 105:5
  112:24
**identifying** 96:15
  96:23 103:6
  105:17 121:12
  125:19
**ifrah** 13:11 43:17
**ignored** 47:10
**illuminate** 130:22
**imagine** 126:1
**immediate** 71:17
**immediately** 99:6
**immense** 83:1
**impair** 56:25
**impatient** 47:15
**impediments**
  60:10
**import** 34:1 58:18
  69:5
**importance** 62:7
  85:3
**important** 16:24
  17:10,21 19:12,17
  20:25 21:5,13,22
  30:6 35:9 37:22

43:7 52:13 114:15
**importantly** 28:1
  30:24 36:23 68:9
  73:11
**imposition** 81:8
**impressed** 85:8
**impression**
  130:18
**impressive** 18:10
**improper** 36:13
  37:6 112:7 113:14
  115:2
**improperly** 91:6
**improve** 32:14
  62:12
**inappropriate**
  37:15
**inclined** 104:8
**include** 40:8
  58:15 81:5 93:19
  105:6 115:14
**included** 34:3
  115:15
**includes** 23:15
  97:7 109:13,14
**including** 5:24
  19:7,23 22:23
  29:19 31:23 62:4
  72:20 75:18 88:18
  89:3 92:17 123:14
  126:19
**inconsistency**
  45:4
**inconsistent** 34:24
**incorporated**
  50:16
**increase** 18:4 31:4
  31:24
**incremental** 17:12
  17:18
**incumbent** 62:22
  126:16

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 187 of 205

[independent - ironshore]                                                   Page 18

**independent**
33:20
**indian** 70:5
**indicated** 90:17
92:6 98:1,4
**indicates** 107:16
107:22
**indiscernible**
15:20 17:9 20:17
22:4 28:11 40:6
45:17 46:22 47:4
47:14,15 49:22
50:22,23 65:15
74:12 78:23
**individual** 36:22
70:6 73:1,13,15
**individuals** 86:14
**industries** 55:15
72:6
**inescapable** 90:1
**inform** 86:22
**information** 31:3
31:6 83:20 84:21
85:19 86:18,24
87:1,3 88:10,18
89:2,17 91:15,24
91:25 92:14 96:15
96:23 97:7,8 98:9
98:9,10 102:6
103:7 105:17
110:5,6,19,20,21
110:23 112:10
115:12 116:10,11
116:13 117:2,11
119:13 121:13
123:23,24 125:19
125:21 126:3
**informed** 86:2,12
86:22
**infringement**
108:25
**ingredients** 17:14

**initial** 101:10
105:4
**initially** 80:9
82:25 83:5 103:16
124:6
**initiate** 52:7
**initiative** 19:4
**initiatives** 19:2,8
19:12
**inject** 17:12
**injunction** 21:14
21:17 22:3
**inside** 15:6
**insist** 124:15
**insolvent** 26:23
75:21
**inspection** 91:19
112:6 113:13
**instance** 88:14
**instances** 85:25
89:5
**insurance** 2:4,10
2:15 3:4 13:12
25:10,21 26:6,18
26:19 27:5,20,25
28:8,10,13,16,21
29:15,17,20,21,24
30:4,6,15,19 31:2
31:11,18 32:3,4
32:14 33:2,20
35:25 36:7,12
38:8,25 39:2,10
39:17 40:7,11
42:3,12 43:18,19
47:3,7 48:9,10,14
50:25 51:4,10,23
52:11 53:4,5,7,16
53:23 54:1,7,12
54:17,23,25 56:21
57:1 62:4 63:23
133:5
**insured** 72:1

**insured's** 47:23
**insureds** 26:17
**insurer** 38:4 45:1
46:20,21 56:14
61:25
**insurers** 26:7 27:8
27:9 30:13 32:21
52:4,8 53:9 54:22
63:16 70:5,14
**int** 112:11
**intended** 19:19
20:14 83:25
101:24 109:19
110:24,25 122:21
**intense** 85:5
**intention** 40:4
**intentionally**
24:13
**interest** 27:6 29:4
33:1 35:24 56:20
62:14 85:5,8
**interests** 27:3
29:11 30:2,23
33:3 36:21 38:1,5
41:25 42:2,4,10
42:17,25 43:7
44:8 46:12,24
47:23,23,24 48:5
49:4,5,16 55:22
60:21,24 63:16
**interfere** 15:9
50:9
**interject** 36:10
**internal** 92:15
**international**
55:12,13 105:23
**interpretation**
95:12
**interpreted** 73:13
91:24 101:23
115:1
**interprets** 44:5
73:14

**interrupt** 93:14
94:19,21 130:3
**intervene** 6:5,11
6:17 7:3,10,17 8:7
9:9,12,18 10:21
11:8,19 35:22
36:6 37:1
**intervenors** 7:17
8:13,15,20,22 9:8
9:18 10:3,20 11:8
14:17 81:25 83:3
83:10,14 85:2,13
90:8,10,13,19,22
91:3 92:11 107:3
111:5,11 121:3
122:10 123:6,15
**intervention** 37:3
**intransigence**
27:11
**introduce** 41:5
**introduction**
16:13 114:18
**introductory**
113:21
**investment** 97:8
103:2 105:6,23
110:4 112:10
116:11
**invoices** 15:8
**invoke** 67:11
**involve** 36:18
45:24
**involved** 45:25
76:24
**involvement**
31:17 64:7 74:18
**involves** 23:15
**involving** 36:7
53:6 62:9
**ironshore** 2:10
13:12 26:6 43:18
54:22

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 188 of 205

[irony - know]                                                                  Page 19

**irony** 83:13
**irrelevant** 36:1,2
  100:24 103:11,22
  115:15 119:14
**island** 114:2
**issue** 19:8 29:10
  34:15 36:10 37:10
  38:13 45:17,23,24
  46:19,24 48:12,19
  50:20 51:7 52:8
  60:2 82:12 86:8
  86:10,21 87:12,19
  89:20 97:19,20
  98:22 100:1,12,23
  101:22 102:12
  103:22 104:4,15
  106:2,18 108:6
  114:25 117:5
  118:3 121:6
  126:18,18,20,22
  128:4 131:10
**issued** 67:3
**issues** 17:8 21:21
  22:16 24:1 28:10
  29:24 31:9 37:23
  47:14 64:20 76:3
  77:8 81:6 82:16
  87:18 90:5,5
  107:9 109:25,25
  111:15 119:23
  128:8 130:23
**it'll** 67:19 82:13
**item** 25:7 79:23
**items** 65:3,8 81:22
  81:23 89:15
**iv** 2:9 13:17
**i'm** 111:23 112:17

**j**

**j** 4:17 11:24 28:2
  134:3,8
**james** 3:17 4:4 5:4
  12:10

**january** 1:17
  15:22 21:9 23:25
  24:14 37:9 90:17
  106:9 134:19
**jay** 15:19 129:21
**jersey** 72:13
**jim** 65:2,6 79:13
**job** 19:10
**jockey** 29:23
**joinder** 7:2
**joining** 15:16
**joint** 2:2,14 3:3
  25:20 27:15 29:2
  29:12 39:4,14
  51:8 53:13 55:25
  56:16 63:4 64:6
**jointly** 1:8 27:17
  40:6
**jon** 9:7 10:19
**jones** 6:6,12 7:4
  7:11,24 8:3,8 9:13
  10:3,10 11:20
  90:14 131:22
**joseph** 13:19,25
  93:10,10 100:9,10
  104:17,21 105:2
  105:13,21,23
  107:4,10,20
  108:11 110:7
  111:17,23 112:1
  112:15,17,22
  113:4,8,13,18
  114:1,6,10,21
  115:8,18,21 116:5
  116:8,13 117:16
  117:21 122:5
  128:18 129:8,12
  132:5
**josh** 43:19
**joshi** 126:25 127:2
  129:18,20,21
  130:2 131:1

**judge** 1:25 15:3
  15:12,16,21 33:25
  34:5,11 58:19
  59:15,15 104:5,5
  105:25 106:8,17
  107:19 113:23
  126:7 129:20
**judges** 88:16
**judgment** 27:3
  30:11 32:19 72:20
  72:21 102:9,20
  106:20 108:13
  109:13,21
**judgments** 108:16
  109:22
**judicial** 6:12 7:4
  7:10,17,18 9:3,18
  9:19 10:2,15 11:3
  11:8,9,15 52:11
  85:2 94:10 95:19
  102:5,18 104:3,7
  106:6,12,13 112:5
**july** 22:23 23:13
  34:3 47:8
**jump** 82:4
**june** 19:15 22:23
  23:6
**jurisprudence**
  34:25
**justice** 117:25
  118:3
**justified** 67:11

**k**

**k** 14:14
**kaminetzky** 3:7
  7:20 8:17 9:4,10
  9:21 10:16,22
  11:4,11,16 12:9
  25:9,12,13,18
  40:3 41:5,8,21
  43:5 64:8,14,25
  65:1 81:17,19,20
  82:9,10 89:19

  90:17 91:11 93:6
  96:14 99:15,16,19
  99:21,23,25 100:3
  100:7 124:6,24
  125:4,6,8,12
  132:6
**katie** 90:12 107:2
  121:2
**katielynn** 6:5 7:23
  8:2,8 9:13 10:9
  11:20 14:22
**keep** 15:7,13 16:5
**kennedys** 43:20
**kept** 42:25 86:20
**kerry** 58:19 59:15
**key** 29:25 56:20
  62:13 71:10
  116:16
**kind** 73:24,24
  82:6,11 109:14
**knew** 68:7
**know** 17:8 18:22
  18:24 20:23 21:2
  22:16 23:16 24:4
  24:10,12,22 40:5
  40:5,6 42:8 43:24
  45:16 47:5 48:18
  49:11 50:8,18
  51:18 52:3 65:25
  66:9,21 68:11,12
  69:5,7 76:25,25
  77:2,22 78:2
  79:11 80:12 82:18
  83:5 91:17 95:18
  96:22,23 97:16
  102:14,18 104:11
  104:21 108:8
  110:16 111:4
  115:16 116:19,20
  116:22,22 117:3,4
  117:15 118:3,17
  118:21 121:17
  122:11,14,15,15

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 189 of 205

[know - look]                                                          Page 20

122:18 124:11
125:8,19 126:14
126:19 128:2
131:21
**known**  19:21 26:6
43:18
**knows**  17:24
28:24 31:5 38:4
119:7

**l**

**l**  11:25 13:8 19:22
65:19 134:3,16
**l.p.**  1:7 3:8,18 4:4
4:18 5:5 7:20 8:17
9:5,10,21 10:17
10:22 11:5,11,17
15:23
**lack**  61:1
**landau**  92:19
**language**  40:12
95:23,24 107:16
113:20 114:12
**large**  26:25 83:17
92:20
**largely**  38:19
76:10 89:20 115:7
**largest**  48:9
**late**  83:10
**launch**  20:22
**law**  13:11 33:8,9
33:10,11,13,16,21
33:24 34:1,10,10
34:14,14,21 43:17
44:21,24,25 50:9
50:14 54:19 55:5
57:2,16 59:13
68:8,16 70:24
89:12 94:11,12
95:15,17,19
101:17,23,24,25
102:1 104:5,7
106:21 107:24
108:18,20 109:9

114:16,17,23,25
115:4,7,7,8,9
117:12 119:11
120:6 124:20
131:22
**lawsuits**  31:9
**lawyer**  16:1 72:9
73:5 74:18 119:6
**lawyers**  42:8 43:1
46:21 77:11 128:2
**lay**  77:16
**lead**  102:10 120:8
**leading**  20:4
102:2
**leak**  112:11
**learn**  77:11
**leave**  39:13 53:13
130:9 131:11
**lees**  14:7 122:1,3,3
122:12,20
**left**  24:12 26:11
51:20 83:12
**leg**  71:5
**legal**  32:6 43:4
73:17 111:15
134:22
**legitimate**  103:14
**length**  19:24
**lengthy**  85:25
**letter**  4:7
**level**  18:5 45:13
45:15 68:17 97:13
116:19 117:11
**levels**  88:11
**leventhal**  87:15
91:12 92:4 99:3
99:11
**lexington**  12:5
13:21
**liability**  26:21,21
26:21 30:8 31:14
58:12 59:21 84:1

**life**  120:20
**lift**  3:16,20 4:2,11
37:13 49:17 66:8
66:10,13 67:9
133:7
**lifting**  4:8 65:11
**light**  39:20 84:10
87:6
**lightly**  21:4
**likelihood**  22:25
**limit**  33:9 62:23
**limitation**  73:18
**limited**  7:16 9:8
9:17 10:20 11:7
22:8 58:12,13,21
59:21 60:19 89:15
112:5,8
**limits**  26:20 33:8
115:2 128:24,24
**line**  36:1 84:15,15
125:22
**lines**  15:7 64:19
71:20 87:2
**link**  124:9
**liquidation**  34:23
58:8,14,15 59:5,6
59:7,16 75:8
**listen**  46:15
**listing**  103:11
**lists**  16:16
**literally**  57:14
87:9
**litigate**  27:18
29:24 36:10 37:5
37:19 39:14 53:14
71:18 84:8 89:23
**litigated**  27:13
42:3 60:15 71:25
72:3
**litigation**  2:6,18
3:6 12:21 28:20
32:17 40:11 44:12
46:14,20 48:4,5

48:14,21,24 49:9
49:14 50:12,25
51:4,10 52:7,15
54:16 55:1 56:14
56:16 58:11,22
60:10 61:1,3,11
61:15 62:11,17
63:1,2,6,7 64:21
67:14,22 71:24
72:1,2 94:25 98:5
**litigations**  48:17
**little**  39:8 50:7
52:5,5 61:4 86:18
95:14 123:20
**live**  80:2 106:12
**llc**  6:7,13 7:5,12
7:24 8:4,9 9:14
10:4,10 11:21
13:19 40:20 59:16
59:17 90:14
**llp**  12:3,12,19
13:2 14:2,9
**log**  86:13,24 93:19
93:25 96:16 98:14
100:1 101:6,10
103:23 111:3
112:23 125:17
126:2 127:16,24
128:1,18
**logic**  57:13
**logical**  108:10
**logs**  86:14 93:7,9
93:20 94:22 100:5
100:13 104:23,24
105:3,4,6 117:7
120:8,16 121:12
121:22 127:12
**long**  29:3 75:5
86:24
**longer**  24:7
**look**  18:6 46:11
99:6 102:1,17
110:7 114:12,20

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 190 of 205

[look - minutes]                                                    Page 21

119:4 124:17
125:20
**looked**  111:19
**looking**  50:6 76:9
99:2 116:21
**lose**  30:21
**loss**  68:10
**lost**  17:10 18:16
21:6 70:20
**lot**  119:23,23
**louder**  38:3
**lougash**  106:22
**low**  20:10 60:25
**lower**  20:12 109:2
**lowne**  9:7 10:19
125:12
**lp**  59:22

**m**

**m**  2:18 6:14 12:17
**ma'am**  77:3
**magistrate**  104:5
105:25
**maintain**  34:21
**maintains**  34:20
**maintenance**  18:5
**major**  41:23
115:6
**majority**  83:15
85:18 90:20 111:6
**making**  22:13
66:6 67:17 70:21
101:12 106:14
108:11 117:9
118:11,15
**managed**  18:18
**management**
37:13 60:23
**mandate**  91:20
**manner**  49:15,15
**manufactured**
20:7
**march**  20:6 21:16
21:20

**mark**  87:14
**marked**  83:6
**marketing**  68:3
**markowitz**  7:6
**marshall**  12:8
16:18
**marshals**  29:18
**massive**  31:8
**material**  83:1,18
83:23 90:21 95:5
95:6 96:24 97:5
97:12,20,24 98:1
98:7,15,17,19,21
102:5,17 107:23
108:8 109:10,16
110:2,10,11 120:9
123:8
**materials**  8:14,21
83:2,8,15 86:17
87:5 89:13 90:25
93:19,25 94:5,8
94:10 95:15 96:2
96:5 98:14,24
102:4,9,16 103:2
104:3 107:25
111:4,9,12
**matter**  1:5 16:11
25:7 34:9 54:24
58:11,17 60:23
62:6 64:23,24
72:4 79:7,11
90:18 91:18 96:3
106:21 114:9
115:13,15 127:5
129:16 130:14,19
130:23
**matters**  16:16
27:19 39:9,17
53:15 119:8 127:5
131:7
**maura**  14:14
118:6

**maximize**  29:21
48:8
**maximizing**  30:1
56:21
**maximum**  70:15
**maxwell**  95:13
106:8 107:18,21
108:1 116:17
**mcclammy**  3:17
4:4 5:4 12:10 65:2
65:5,6 68:21,24
68:25 76:14,19
79:13,14
**mcclatchy**  34:2
**mean**  39:19 40:8
40:16 78:9,15,24
78:24 80:16
104:23 109:21,23
113:22 114:4,7,12
115:5,21 116:5,9
122:15 123:5
124:14
**meaningful**
102:24
**means**  27:14
84:18 100:8
106:21 120:18
**measure**  83:2
**media**  6:7,7,13,13
7:5,5,11,12,16,24
7:25 8:3,4,9,9,13
8:15,20,22 9:8,14
9:14,17 10:3,4,4
10:10,11,20 11:7
11:21,21 14:17
81:25 82:16 83:3
83:10,14 84:24
85:13 87:13 90:8
90:13,14,15,19,22
91:3 92:11 101:3
102:7,16 103:9,10
107:3 111:5,11
118:24 120:17,21

120:21,23 121:3
123:6,14 126:10
126:17,23 127:5
**medial**  85:1
**mediation**  21:4,8
22:6,9 23:15
24:14
**medication**  19:19
**medications**  20:25
**medicine**  20:13
**meet**  60:25 97:4
**meeting**  68:17
122:18
**members**  82:20
109:19
**memorandum**
92:18,21
**mentioned**  41:10
**mere**  85:25
**merely**  95:5
**merits**  30:24
78:11 82:5 83:25
89:24 102:11,13
106:10 121:24
**messy**  28:20
**met**  86:3 90:18,25
92:12 121:14
123:8
**mid**  92:14
**middle**  24:18 84:7
**milbank**  14:2
122:4
**milestones**  19:18
**million**  17:18
26:22
**mind**  57:13
**mineola**  134:25
**minimize**  28:20
32:16 74:18
**minimizing**  29:22
**minimum**  103:25
**minutes**  15:17

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 191 of 205

[mirrored - negotiations]                                                    Page 22

mirrored  55:15
mis  109:18
misses  32:5
missing  111:22
mistaken  33:10
mistakenly  36:21
mitch  99:8 124:2
  127:7,10
mitchell  13:9
modify  58:14
  63:25
moment  24:25
  31:19 58:20
  100:16 103:16
  127:3
monaghan  14:14
  118:6,6,10,25
  119:3
monday  84:11
monetization
  42:11
money  67:17,22
  72:21
monitoring  102:7
  102:24
month  18:8 23:19
months  18:15
  19:15 87:21
moot  103:24
  104:4,6 106:1,11
mootness  105:20
mor  17:25 18:6
morning  15:2,21
  16:23 21:7 25:12
  40:23 43:16 65:5
mortimer  14:10
  118:7
motion  2:1,8,13
  3:1,10,10,14,20
  4:8,11,11 5:7 6:5
  6:11,17 7:3,10,18
  7:22 8:1,6,13,16
  8:20,22 9:1,2,12

9:19 10:2,8,13,14
11:1,2,9,13,14,19
17:7,11 21:17,19
25:8,10,19 26:12
28:22 29:7 30:11
30:17,21 32:14
33:22 37:5,8,11
37:15 38:7 41:6
42:16 47:17,17
49:18,23 52:23
54:21 56:5,7,11
56:13 62:19 63:19
64:5,8,15,18 65:9
65:10,10,21,22,22
67:1 69:17,17
70:17,19,21,21,23
70:25 71:14,15,16
71:21 73:2,10
80:6,21,22 81:11
81:13 83:10,14,16
84:17 85:20 86:8
89:19,24 93:21
100:14,18,18
101:1,5,15,19
102:14,22 103:16
103:21 104:1,2,6
104:9,10 106:1,2
106:19,20,21,23
107:24 108:12
109:12,13,13,14
109:23 110:1
115:16 117:9
118:16 119:12,19
121:11,14 122:9
126:6,8,9 127:16
127:18,22,25,25
128:3,4,19 130:8
130:17 131:11
133:5,6,7
motioned  67:9
motioning  66:8
motions  3:15 4:2
  7:17 8:15,21 9:8

9:18 10:20 11:8
37:13 65:8 66:5
69:14 76:15 82:19
82:21,24 83:3
84:3,11 85:13
88:17,20 90:22
91:1,4 95:4 97:11
106:15 108:16
109:21,22 124:15
126:9 127:6,22,24
128:11
motivation  50:13
movants  43:13
move  22:2 23:3,11
  23:20 24:24 64:24
  76:12 119:8
moved  95:15
  108:14
moving  69:5
  76:13 111:12
multi  83:18
multiply  48:6
  61:11
multiplying  48:4
mute  16:5 68:24
  82:9
muted  15:7

n

n  12:2 13:1 14:1
  15:1 65:19 133:1
  134:1
naf  24:7
nalmefene  19:18
  19:22
naloxone  20:11,21
name  15:2,11 16:3
  20:19 35:3,4
  54:24 60:7,10
  129:21 130:20
named  35:19
names  103:2
  118:15 122:8

narcan  20:14
narrow  85:24
narrowed  86:4
  87:18
narrowing  119:22
narrowly  91:22
narrows  109:25
nas  7:1,7
nasal  20:11
national  18:21
nature  47:25
  100:22 111:11
nd  12:14
nda  19:21
near  75:6
nearly  47:6
nebraska  108:22
necessarily  44:23
  97:5 118:20
necessary  17:13
  29:5,8 43:1,2
  55:22 61:6
need  22:12 23:2,3
  23:8,12 24:3,8
  28:20 29:22 45:8
  49:2,8 50:12 52:8
  55:3 64:9 92:9
  97:6 99:13 103:7
  103:14 111:14
  119:8,25 124:22
needed  93:15
needs  24:6,6
  75:22 116:18
  123:23
negative  32:24
negotiate  47:8,11
  52:3 81:5
negotiated  62:13
  71:9 82:22
negotiating  71:10
  74:14
negotiations  24:3
  27:10 52:1,4 55:4

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 192 of 205

[negotiations - opposed]                                                Page 23

62:12 81:5
**neither**   28:17
  107:11
**nes**   70:13
**net**   18:7 71:1
**never**   37:8 100:19
  101:4,4 106:13,13
**nevertheless**
  57:10 58:10 86:20
**new**   1:2,15,15
  12:6,6,15,15 13:6
  13:6,23,23 14:5,5
  14:12,12 16:23
  19:20 20:20 33:21
  51:1,3 72:13
  77:12 85:16
**news**   6:7,13 7:5
  7:12,25 8:4,9 9:14
  10:4,11 11:21
  17:4 22:13 90:15
**newspaper**   120:9
**night**   86:3,12,20
  87:14
**ninety**   100:23
**nixon**   114:2
**non**   2:12,19 6:10
  6:15 7:2 12:13
  26:2 36:9 38:12
  41:3,4,17 42:1
  56:10 70:6 71:19
  81:2 88:3 96:22
  98:17 103:14,23
  111:10 116:8
  128:2
**nonconsenting**
  89:22
**nonjudicial**   94:14
**noramco**   17:4,6
**norm**   62:2
**normally**   73:9
  119:10
**note**   17:5 47:1
  107:9,18 108:3

110:3
**noted**   37:14 56:15
  57:10 64:15 72:11
**notes**   50:7
**notice**   8:6,12 9:2
  10:14 11:2,14
  37:5,12 49:19,20
  64:17 71:11 88:24
  131:20
**noticed**   37:8
**notion**   31:10
  108:7
**notwithstanding**
  63:14 73:20 80:3
**november**   5:24
  18:6 82:22 83:11
  91:12
**number**   17:4,22
  19:1,18 26:4 75:4
  79:23 101:9,12,13
  105:9 111:6
**numerous**   82:6
**nw**   13:13 14:18
**ny**   134:25

---

**o**

**o**   1:23 15:1 65:19
  134:1
**object**   4:15,22 5:2
  5:8,12,15,19,23
  6:2 30:13 79:9,25
  86:23 111:11
  123:13,25 133:8
**objected**   30:10
  45:16 56:4 81:10
  83:9 111:5
**objecting**   56:13
  63:9
**objection**   2:8 3:14
  3:15 4:1,21 7:16
  9:8,17 10:20 11:7
  26:5 30:16 37:10
  37:17 38:6,18
  54:21 56:23,24

60:22 61:2 80:2,4
  87:5 93:24
**objections**   66:1
  80:11 82:1 91:1
  94:6 97:11
**objector**   57:17
**objects**   32:11
  79:24
**observation**   122:5
**observe**   109:20
**obstruct**   47:3
**obstructing**   30:18
**obtain**   27:7
**obtained**   72:21
**obtaining**   17:13
**obviously**   16:24
  18:14,21 21:6
  44:4 45:5,12
  46:19 51:25 55:2
  111:18
**occasion**   25:25
**occurred**   63:13
  69:22
**october**   21:15
  47:10 91:11
**offer**   93:25
**offerings**   83:21
**office**   16:9,11
  99:17 131:16
**official**   2:4,16 3:4
  13:3 39:12 40:17
  40:24 41:11 52:25
  56:8 58:6,10,25
  70:9 99:9 127:11
**offline**   131:4,7
**oh**   77:21 79:1,22
  82:10 122:2
**okay**   24:21 25:4
  25:11 38:14 40:10
  40:22 41:1,14
  43:10,21,23 50:21
  51:5,12 52:22
  65:4,19,21 66:6

66:16,18,20,23
  68:20 69:13 76:22
  77:5 78:6 79:1,4,6
  79:16 80:13,19
  81:18 87:23 93:13
  95:3,7,7 99:13,18
  99:22 100:7
  105:22 107:1
  111:17 113:20
  121:9 123:1 124:1
  124:3 125:24
  126:5 127:10
  129:13,15 131:1
  131:17 132:3
**old**   93:1 134:23
**omnibus**   3:14 4:1
  15:22 16:14 37:9
  120:12 126:10
  129:7 131:25
  132:1
**onboard**   22:25
**once**   32:7 74:13
  74:25
**ones**   67:17 68:13
  81:8 99:14 126:22
**open**   67:8 91:19
  112:6,21
**opening**   25:2
  101:7
**operates**   109:18
**operations**   92:2
**opinion**   90:6
  101:17 105:25
  119:9 131:21
**opioid**   18:5 19:19
  20:5,15 92:17
**opportunity**
  32:22 105:24
  122:23 123:14,15
**oppose**   93:9,12
  127:13
**opposed**   36:11
  46:16 59:22 60:6

61:15,17 63:18
69:15 75:8 117:20
**opposes** 32:25
**opposite** 47:15
**oral** 43:13,14
66:21 68:22
126:12
**order** 2:1,2 3:2,2
4:15,21 5:2,7,11
5:14,18,22 6:1 8:1
8:13,19 9:1,3
10:13,15 11:1,3
11:13,15 16:15
22:9 25:20 28:3
29:20 37:13 39:12
57:25 59:25 64:9
76:14,15,20 79:25
80:14 81:14 97:14
97:17,23,24 98:5
109:14 133:8
**ordered** 22:18
88:9 105:18
**orders** 83:7 88:9
88:15,22,23 98:4
**ordinarily** 50:10
50:10
**ordinary** 127:25
**organization** 75:8
**original** 122:9
**originally** 21:14
119:20
**orion** 101:17
107:12 111:18
113:1,18,21 114:1
**otc** 20:21
**ought** 38:15
**outlet** 120:21
**outset** 47:1
**outside** 16:24 53:7
**overall** 17:2
**overcome** 95:21
**overdoses** 19:19
20:15

**override** 44:23
113:25
**overruled** 38:6
**overseas** 67:23
**overview** 82:5
**overwhelming**
85:18
**overwhelmingly**
100:17
**owed** 59:21 74:1,1
**owings** 118:1
**owners** 51:1,3
**oxycontin** 18:14

**p**

**p** 12:2,2 13:1,1,9
13:25 14:1,1 15:1
**page** 12:1 38:25
39:11 83:19 84:14
84:14 111:23
133:4
**pages** 82:24 84:13
85:25 86:6,7
**paid** 67:18,19
71:3,21,25 77:21
**pamela** 11:24
134:3,12
**pandemic** 18:21
**panel** 62:22
**paper** 91:18 95:23
95:24 107:17
109:10 112:19,24
115:25
**papers** 49:6 83:4
125:13
**paragraph** 37:6
38:24 39:11,11,19
53:19 54:13,14,20
55:3 57:24 61:22
62:18 63:14 73:20
73:25
**paragraphs** 113:9
**paramount** 85:3

**paraphrasing**
34:11
**park** 13:5
**part** 45:20 74:23
78:25 88:6 120:22
130:14
**parte** 9:1 10:13
11:1,13
**participants**
15:13
**participate** 29:14
31:2 62:15
**participating**
50:11
**participation**
15:16 90:19
**particular** 23:1
42:7 46:2 53:18
61:20 63:9 73:8
101:20 117:4
130:23
**particularized**
116:18 122:14,23
123:9,19
**particularly**
17:21 39:20 56:19
92:25
**particulate** 61:21
**parties** 17:6 18:3
21:22 22:7,17
23:8,15,19,24
24:3,12 26:17
27:17 29:23 32:8
33:11 35:23 37:21
39:3,15 42:5,24
42:25 48:1,4,11
48:16 49:2,3
50:11,17 51:8
53:5 54:15,17,19
55:6 56:7,7,20
57:11 62:14,20
63:4,8 64:20
74:14 75:18,24

78:14,15 81:4
82:16 83:13 84:1
84:2,18,24 85:3
85:20 86:3,25
88:7,8,18 89:1,8
90:4,18 91:1 95:5
97:2 99:1 101:2
103:19 104:1
106:1 107:21
108:10,15 110:12
110:13 111:2,4,9
112:11 118:24
119:10,21 120:4
121:24 123:7,13
123:14,17 124:14
126:10,13,16,17
126:24 128:1
130:22
**partner** 25:8,15
**partners** 6:7,13
7:5,12,24 8:3,9
9:14 10:4,10
11:21 58:3 90:14
105:24
**partnership** 58:13
58:22
**party** 24:2 30:13
33:11,13 35:1
38:16 44:22 45:22
45:25 55:9,20
56:2,13,16 57:14
61:1,14,24 62:15
83:9 89:7 93:23
93:25 94:2 108:12
109:24 116:21
123:16
**passes** 24:5
**patients** 129:22
**paul** 6:18
**pause** 15:18 24:25
25:3 50:4
**pay** 32:7,9 44:17
71:1

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 194 of 205

[payment - post]                                                    Page 25

**payment** 3:10,16
4:2 65:10,22 67:2
69:17,20 70:17
71:14,18 74:10,11
133:6
**payments** 66:7
74:12 77:22
**pending** 43:20
49:17 91:4 117:6
**pennies** 67:19
**pennsylvania**
12:22 13:13
**pennysaver** 59:17
**people** 54:23
73:13,16,22 74:17
75:4,15 77:20
102:6 105:6
120:19,24 122:14
126:1
**percent** 15:4 18:8
40:3 86:6,6,6
100:24 101:3,10
102:16,19 121:11
**perdue** 67:6,13,23
68:2 72:11
**perdue's** 67:12
69:9
**perfect** 23:4,20
**perfection** 23:10
**perfectly** 40:12
48:25 49:9,10
62:22
**performed** 18:18
**period** 74:2 90:3
103:12 108:8
111:8
**periods** 26:18
92:16
**permission**
105:14,16 130:12
**permit** 34:13 55:8
88:24 103:12
112:24

**permitted** 68:8
104:18
**permitting** 112:10
**person** 46:15
69:25 74:4 114:8
116:7 117:2
**personal** 96:23
117:8 125:19
**personally** 87:2
96:15 103:6
105:17 117:1
121:12
**persons** 21:19
**perspective** 55:1
97:6
**persuasive** 116:23
**pertain** 81:11
131:10
**pertained** 131:8
**pertains** 40:13
53:21 130:16
**petition** 18:2
69:22 71:2,24
**ph** 104:5 106:22
**pharma** 1:7 3:8
3:18 4:4,18 5:4
7:20 8:17 9:5,10
9:21 10:17,22
11:5,11,17 15:23
25:14 93:2
**pharmaceutical**
17:14 18:13
**phi** 19:1,8
**phone** 16:5 65:12
**pi** 20:25
**pictures** 111:18
**pieces** 89:16
**pii** 111:2,3 125:18
**pii's** 111:10
**pillsbury** 12:12
**pittman** 12:12
**place** 46:1 51:20
115:20 118:21

**plain** 36:14 39:1
58:21 72:24 73:11
95:23,24
**plainly** 34:15 96:1
**plaintiff** 35:19
58:16,16,16,23
59:1
**plaintiffs** 27:17
39:15 60:11 61:10
**plan** 22:19 24:4
24:11,17 28:3,5,9
42:13 50:16,17,25
58:5,8 60:18
63:24,25 64:3
71:9 73:23 74:22
75:6,7,8,9,16
76:10,18 81:6
**planned** 67:12
**plays** 102:5,18
**pleading** 66:20,22
115:17 130:7,10
130:13,16,17,20
130:20
**pleadings** 43:12
43:15,24 63:6
68:21,23 69:4
88:24 115:19,23
120:12
**please** 15:5,7,11
25:13 100:10
**pleased** 17:16
**pleasure** 87:22
**pled** 67:6 68:2
72:11
**plimpton** 14:9
118:7
**pm** 132:8
**podium** 25:9
38:11 65:2 81:16
86:9 87:20
**point** 16:6 21:9
28:10,19 32:5,6
45:18 47:2,5 59:5

61:16 64:19 75:6
75:15 76:13 91:3
93:1,15 94:19
95:10,14 104:11
110:10 116:15
117:18 118:5
120:10,25 121:17
122:22 127:8
131:11
**pointed** 77:19
94:16
**points** 44:1 45:7
57:17 73:6 116:16
**police** 72:19,23
**policies** 26:18
31:20 42:12 53:6
53:10,23 54:1
**policy** 112:3
114:15
**polk** 12:3 16:19
25:13 65:6 79:18
81:20
**poor** 24:5
**portion** 85:16
**portions** 123:17
**position** 27:12
29:23 36:16 57:19
91:4 92:11,23
93:5 94:10 95:11
97:3,15 122:7
127:11
**positions** 89:25
**positive** 32:24
**possession** 35:19
45:22 46:2 55:8
55:17 57:9
**possibility** 44:7
**possible** 22:19
24:1 42:4 48:13
74:11 96:10
**post** 19:6 28:4,11
52:21

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 195 of 205

[potential - proper]                                                              Page 26

potential  46:14
53:8 56:14 61:2
potentially  24:2
39:23 61:10
101:11 103:18
110:17
power  72:20,23
102:5,18 106:12
practical  62:6
112:3
practice  88:12,15
88:16 124:15
pre  44:24 58:4
69:21 71:2,24
precedent  36:25
precedes  39:7
precipitated
89:21
precipitating  90:7
precise  19:8
precisely  95:11
123:9
preclude  50:11
92:9
precluded  59:3
60:7
predetermine
28:3
predicament
123:5
preemption  45:3
45:3,24
prefer  71:13
111:14
prefilled  19:25
preis  91:13 92:5
99:4,10 101:8
prejudging  51:6
prejudice  37:7
91:5 103:1,8
117:9
premature  104:1

prepare  27:12
prepared  81:9
prepetition  31:9
prescribes  54:8
54:10
prescription
20:12
present  26:12
80:12 82:16 128:1
presentation  47:2
47:20 92:13,15
presentations
83:19
presented  109:25
presentment  4:18
preserve  32:1
president  92:19
presiding  72:4
preska  104:5
106:17
preska's  106:8
107:19
press  14:16 77:21
85:4 86:3 88:19
89:3 90:13 108:22
109:5,19 112:11
112:12 116:2
117:21 121:20
122:10
presumption
94:11,12 95:16,17
95:20 101:24
102:4 107:25
108:2,3
presumptive
106:6
pretty  18:1
prevent  62:24
71:5 89:6,7
116:25
previous  122:21
previously  62:13
90:21 101:22

pries  87:14
primarily  63:16
principle  36:25
70:24 71:4
principles  45:16
45:25,25
prior  58:19 70:25
80:3,23
privilege  8:14,21
84:5 86:13,14,24
89:19,24 93:9,20
93:24 94:22,24
96:15 98:14 100:1
100:5,13 101:6,10
103:23 104:23,24
111:3 112:23
117:7 120:8,15
121:12,22 125:17
126:2 127:12
128:1,8,15
privileged  82:19
93:7,19 96:5
privileges  82:23
84:11,17 85:20
86:8 93:21
pro  14:24 65:9
probably  38:15
46:15 61:17 68:12
120:3,10 131:2
132:1
problem  48:3,3
49:1,25 96:17
problems  46:24
48:20,24
procedural  36:13
58:17
procedurally  37:8
procedure  74:23
118:18
procedures  74:20
proceed  24:19
25:4 54:25 84:12
88:13 111:8

proceeding  31:11
36:7,12 52:1
55:14,24 72:18,22
73:9
proceedings
37:21 61:8 63:17
63:19 85:2,9
95:16 109:20
132:7 134:5
proceeds  26:24
27:5,7 28:13 30:4
30:18 33:20 56:21
process  30:3
32:23 61:20 62:16
64:3 74:14 75:1,3
76:5,6,8,13 101:2
101:14 106:14
110:12 118:11
121:4 123:21,22
produce  128:13
produced  83:6
88:14
product  26:21
83:21
production  16:12
82:19 101:13
productive  27:9
products  17:14
18:14 92:16,17
progeny  29:13
progress  19:3
109:20
progressing  20:25
prohibits  54:10
projected  17:17
projections  92:15
promote  114:4
prompted  49:23
promptly  76:3
prong  61:4,5
proofs  31:14
proper  64:17
89:11 113:4 121:1

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 196 of 205

[proper - real]    Page 27

121:16 131:19,19
131:20
**properly** 89:9
96:8,21,22 98:16
**property** 55:11,19
**propose** 24:19
38:11 82:11
**proposed** 8:1
28:21 29:17 35:25
38:8 50:16 51:2
56:3 57:24 64:9
71:11 80:14 82:2
125:15
**proposes** 50:25
**proposing** 44:17
**proposition** 118:4
**propriety** 97:17
**prosecute** 2:3,14
3:3 25:21 28:7
30:14 35:3
**prosecuting** 35:2
**prospect** 60:19
**prospects** 52:9
**protect** 101:19
110:25 116:7
120:19
**protected** 117:11
**protection** 97:13
115:10,12
**protective** 83:7
88:8 97:14,17,23
97:24 98:2,4
**protects** 114:8
**provide** 26:19
35:9 72:10 107:8
111:15 120:5
**provided** 16:8
44:13 72:15 88:10
94:23 105:5
112:19 117:22
121:22,23 123:16
**provides** 32:13
33:13 35:23 53:11

54:14 72:16
113:15
**provision** 28:19
73:21 98:3 114:7
**provisions** 22:9
39:22 115:7
**proxy** 84:8
**prudent** 18:9
**public** 19:3,12
69:10 85:4,5
89:10,23 90:6
91:19,19 92:9
94:11 96:23 98:17
102:7,23,24
103:14 106:22
108:9,13,24 109:3
109:5,19,22
111:10 112:1,21
114:4,15 116:25
120:19 122:8
**public's** 85:8
106:14 109:15,18
110:2
**publicize** 118:20
**publicly** 17:25
90:20,24 110:15
**publishing** 59:17
103:11
**pull** 110:16
**purdue** 1:7 3:8,18
4:4,18 5:4 7:20
8:17 9:5,10,21
10:17,22 11:5,11
11:17 15:23 17:13
18:16,17 25:14,14
28:25 44:1 93:2
**purdue's** 20:6
92:18
**purely** 40:5
**purport** 44:23
**purported** 32:11
**purportedly**
91:14

**purpose** 32:20
110:24 112:9
113:4
**purposes** 98:5
112:7 115:3
**pursuant** 26:17
83:7
**pursue** 29:3 30:3
33:19 34:8 44:18
45:6 47:6 55:9,18
56:2 57:3,20 64:1
71:23 75:14
130:19
**pursued** 34:16
119:20
**pursuing** 27:5
28:12 29:15 49:10
**pursuit** 49:14
**put** 16:3 23:19
42:20 82:13 116:1
121:19 125:2
**puts** 33:24
**putting** 61:16

**q**

**qualified** 67:25
107:14,14
**qualifies** 68:5
**quarter** 20:21
**quarterly** 83:21
**question** 30:22
33:11 38:14 41:2
46:6,11 63:10
95:18 96:3 98:25
**questions** 24:19
24:22 26:14 38:10
41:11 69:2,11
98:23
**quick** 19:2 21:5
125:20 129:25
**quickly** 19:16
51:15 88:13
**quite** 51:11 82:12
84:16 87:22 88:6

96:9 119:10
**quote** 23:7 36:16
**quoted** 103:1
**quoting** 34:12

**r**

**r** 1:23 12:2 13:1
14:1 15:1 20:19
106:7 134:1
**rachmuth** 6:18
**raise** 36:10 50:21
100:13 116:15
117:19 118:10
121:5
**raised** 44:1 49:17
60:2 90:8 106:2
118:13
**raising** 37:10
45:24 129:19
**range** 119:21
**rare** 71:22
**rate** 32:2,3,6
**raymond** 7:9,14
10:1,6 93:11 94:1
94:6 96:6 122:4
**rdd** 1:7
**reach** 23:24 49:11
77:24
**reached** 21:23,25
24:1 51:17 60:3
82:21 108:15
109:23
**reaching** 76:6,7,7
**read** 39:8,19
43:12,24 57:22
66:19,19 68:21
75:11 77:20
101:24 111:24
113:20
**reading** 38:24
71:20 115:24,25
**ready** 20:7
**real** 46:3 118:14
120:14

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 197 of 205

[realize - reply]                                                                 Page 28

**realize** 23:8 97:4
**really** 20:13 30:16
  46:6,22 47:20,21
  48:3 50:24 51:6
  81:11 88:5 96:13
  97:19 98:20
  117:15 119:7
  120:8 121:16
  126:9
**reams** 84:21
**reason** 21:13
  30:22 52:16 60:20
  63:23 64:2 77:1,3
  77:4,15 93:3
  96:16 98:13
  101:14 102:8
  119:13 131:15
**reasonable** 86:25
  111:8 123:13
**reasons** 50:9
  80:23 85:10 116:2
  116:6 119:12
**rebuttal** 26:13
  41:13
**recall** 83:4
**recital** 28:2
**recognition** 35:17
  42:11 111:20
  113:10
**recognitions**
  42:16
**recognize** 49:18
  73:5 85:7 88:23
  123:20
**recognized** 55:16
  55:25
**record** 40:13
  53:20 79:18 90:12
  91:19 95:8 117:10
  118:5 121:1 122:6
  127:19 130:14
  131:19 134:5

**recording** 15:13
  16:7
**records** 6:12 7:4
  7:11,18,18 9:19
  9:19 10:2 11:9,9
  94:10,14 95:19
  112:2,21 114:3
**recoveries** 30:2
**recovery** 29:20,21
  33:2 56:21
**red** 125:4
**redact** 104:19
  111:9 122:7
  125:18
**redacted** 83:1
  90:20 91:6,13
  92:14,21 96:18,22
  97:6 98:18 99:3,7
  99:14 103:7
  120:13 124:16
  126:20
**redaction** 96:24
  111:3 118:14
**redactions** 82:2
  85:23 86:5 87:1,4
  87:11,18 92:5,8
  98:15,18 125:1,15
**redline** 125:5,7
**reduced** 74:24
**reducing** 17:13
  33:2
**reed** 48:10
**refer** 25:22 26:7
  53:3
**referenced** 83:8
  91:11 99:11 110:8
**references** 73:2
**referred** 45:14
  75:19 127:24
**referring** 34:2,22
  45:11 54:23 96:20
  114:13 127:22

**reflects** 27:2
**refused** 47:14
**refute** 131:2
**regard** 55:4 63:6
  120:15
**regarding** 6:11
  7:3 8:13,20 31:11
  36:12 39:10,17
  51:17,23 53:15
  54:16 106:10
**regardless** 42:12
**regards** 27:25
**regulated** 18:22
**regulatory** 72:20
  72:23
**rein** 63:13
**reiterate** 69:4
**rejected** 34:1
  36:24
**related** 2:3,8,15
  3:6,16 4:3,12,16
  5:3,15 6:14,18 7:5
  7:12,19,22 8:1,7
  8:16,23 9:3,9,20
  10:4,8,15,21 11:3
  11:10,15 21:18
  22:3 26:17 27:19
  28:15 29:24 86:13
  121:20 127:15
**relating** 130:25
**relationships**
  110:17,17
**relatively** 70:22
**relevance** 86:18
**relevant** 19:9
  24:12 33:17 83:7
  90:25 97:25
  100:14 101:4,11
  101:15 102:25
  103:19 104:3,12
  105:9 106:15
  114:22

**relief** 25:25 27:13
  37:5,15 47:4,6,13
  47:18 64:16 65:23
  66:11,12 71:16,22
  72:10 75:14 81:7
**relies** 34:17 38:19
  94:7
**relieved** 78:20
**rely** 113:1 122:21
**relying** 41:12 44:2
**remain** 24:13
  60:25 69:7 82:1
  82:17 84:16 85:24
  86:15 88:10 92:21
  116:21 123:8,18
**remaining** 26:24
  28:13 56:16 86:8
  86:10 93:4
**remains** 26:23
  80:2 102:19
**remand** 107:20
**remarkably** 17:25
**remarks** 25:2
**remediation**
  49:22
**remember** 15:7
**remembers** 19:24
**remind** 129:6
**reminder** 15:4
  19:14 35:15
**render** 100:25
  103:21
**rendered** 106:11
**rendering** 104:13
**reorganization**
  28:4,5,9 42:13
**repeat** 43:4,25
**replace** 50:18
**reply** 3:1 5:1 7:22
  10:8 37:14 54:21
  63:5 91:8 94:3,18
  95:12 101:8
  126:23 129:11

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 198 of 205

[report - ruling]                                                      Page 29

**report** 17:16
20:23 22:10
**reporter** 16:2
**reporters** 14:16
90:12
**reports** 83:21
**represent** 42:6
47:22 48:17 49:3
49:4,5 118:7
**representations**
53:20 54:20 62:19
**representative**
34:8
**representatives**
43:2 120:18
**represented** 31:24
48:9 126:13,14
129:22
**representing**
38:12 56:6 65:16
70:17 82:16
**represents** 25:24
30:6
**reputable** 120:21
**request** 29:1 79:8
80:9 100:15 111:8
**requested** 21:10
25:25
**require** 89:12
96:9 118:14
128:13
**required** 20:16
37:12 48:6
**requirement**
37:12 107:13
109:12 128:13
**requirements**
50:10
**requires** 61:5
117:25 118:4
**research** 98:10
110:19 115:11
119:15

**researching** 67:4
**resolution** 27:8
29:6,9 30:5 47:16
49:22 52:12 55:23
61:7 63:17,18
75:17 78:19 82:22
**resolve** 27:18
39:15 52:8 53:14
64:20 100:23
103:20 128:18
**resolved** 28:11
42:4 51:23 52:15
75:22 76:3 100:16
100:17 104:10
106:2
**resolves** 42:13
**resolving** 30:7
47:13 63:23 104:2
126:19
**resources** 29:19
**respect** 7:10 9:2
10:2,14 11:2,14
19:7,18 20:3,9
21:17,21 22:3,6
53:4,22,25 54:6
55:11 57:1 61:19
87:12,25 92:3,12
93:4,5,18 96:5
98:21,24 110:4
111:2,12 114:8
121:5 122:7
125:17 131:3,3,5
**respectfully** 31:15
32:4 97:22
**respective** 89:25
**respond** 24:24
43:25 94:2,3
107:3
**responding** 26:5
128:17
**response** 7:1
38:18 47:10 49:19
85:13 122:9

**responses** 80:5
**responsibility**
27:5 68:15
**responsible**
120:22
**responsibly**
120:18
**rest** 66:21 68:23
69:3
**restrictions** 18:23
**restrictive** 73:18
**result** 18:9 60:3
61:18 74:2
**resulted** 18:22
**resulting** 102:6
**results** 23:9
**retain** 101:25
**retains** 117:24
**reuters** 6:7,13 7:5
7:12,25 8:4,9 9:14
10:4,11 11:21
90:15 131:22
**revealing** 92:1
**reverse** 19:19
20:14
**review** 88:17
105:14 111:9
117:7 121:16
124:13 131:22
**reviewable**
102:10,12
**reviewed** 43:15
65:21 66:1 74:24
90:24 111:18
**reviewing** 74:15
84:13 117:18
**rewards** 76:7
**rhode** 114:2
**richard** 12:25
40:19 51:14
**right** 25:16 32:11
35:23,24 36:5
41:2 42:19,21

43:11 48:1 52:22
55:19 61:18 65:13
69:14 77:7,23
78:6,17,20 79:6
80:16,19,22 93:13
95:13,20 99:17,24
101:18,18 105:19
106:6,14 108:13
108:17,19,21
109:1,5,6,7,9,15
109:15,18 110:2
111:25 112:1,3
114:16,17,23
117:14 118:9
119:2 121:24
122:7 123:1,11,22
125:6,11 128:6
129:10 132:4
**rights** 37:1 46:3
53:7 54:2,3,10
57:1 63:13,24
64:1 89:2
**risked** 17:10
**risks** 76:5
**rivive** 20:19
**road** 50:18 52:11
134:23
**robert** 1:24
**robertson** 79:15
79:17,18,22 80:7
80:15,18 81:15
**role** 23:16 102:5
102:17
**routinely** 110:1
**rule** 79:10 81:1
109:12 113:23
115:15 119:8
123:24 124:23
**ruled** 21:7 103:3
104:5
**rules** 119:17
**ruling** 64:11
97:12 122:21

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 199 of 205

[ruling - settlement]                                                        Page 30

124:14
**rulings** 133:3
**runs** 70:23

**s**

**s** 2:8 3:7,7,17 4:3
4:12,16 5:16 6:14
6:18 7:6,6,13,19
7:19,23 8:2,7,16
8:17,23 9:4,4,9,9
9:20,20 10:5,9,16
10:16,21,21 11:4
11:4,10,10,16,16
12:2,8,9 13:1 14:1
15:1 65:19 107:13
107:16
**sackler** 7:9,14
10:1,6 13:20 14:3
14:10 82:3,20
93:11 94:2,7 96:6
97:2,22 107:21
110:15 118:7,8
122:4 126:16
129:6
**sacklers** 67:13,21
83:17,25 84:8,18
86:11 88:4,5
89:22 93:9 100:3
103:5 120:15
121:14 129:5
**safety** 116:22
117:2 118:13
120:20 126:18
**salami** 32:23
**sale** 17:6,11
**sales** 18:5,7
**samples** 127:17
**sara** 13:8 40:24
**satisfied** 33:5
**save** 67:14
**saving** 119:22
**savings** 17:16
**saw** 70:18

**saying** 49:5 50:24
114:2 120:2
**says** 39:11 44:21
44:25 73:20
101:18,21 102:8,9
102:17 106:22,23
112:4,18
**scandal** 114:4
**scandalous**
115:13 116:9
**scandals** 114:8
**scheduled** 64:16
84:11
**school** 22:11
**scope** 19:7 91:15
92:8 97:13,17
109:25
**scott** 7:6
**scrambled** 50:7
**scrutiny** 61:5
**se** 12:22 65:9
**seal** 7:18 9:19
11:9 82:25 83:5
86:15 87:11 88:21
92:22 108:13
117:25 121:15
124:15
**sealed** 89:20
90:21 91:6 93:22
93:22 94:9 98:19
116:21 123:9,18
**sealing** 9:3 10:15
11:3,15 82:2 83:9
88:22,23 94:4
98:5 110:10 113:6
113:22 117:6
**second** 5:18 9:12
10:2 11:19 21:13
28:14,23 29:23
30:11 31:16 33:24
34:24 35:1,8,15
35:20 36:3,20,24
44:4 45:9 46:10

55:5,25 72:5
73:14,14 91:23
95:12 101:17
102:2 106:7
107:12 108:1
115:22 119:5
130:9
**secret** 98:9 103:9
110:19
**secrets** 115:11
**section** 36:23 42:6
44:11 57:7 72:16
73:4,8,11,19,25
75:11,11 78:1
79:7 81:2 88:21
91:16,17,22 92:8
94:15 95:17,21,22
96:1 97:21 98:8
98:12 107:12,15
107:16 108:4
109:8 110:6,24
114:16
**sections** 72:17
**see** 18:7 48:22
63:22 65:12 68:15
76:12 78:1,3 81:5
100:15 103:20
105:7 111:19
113:23 114:12
119:25 120:8
125:7 131:25
**seeing** 67:1
**seek** 27:12 28:15
28:18 31:3 52:3
54:9,11 71:17,18
81:2 95:2,4
112:12
**seeking** 88:8
101:3 102:17
131:11
**seeks** 34:6 70:17
**seen** 68:12

**sees** 109:22
**self** 38:3
**send** 77:25 99:12
124:7 131:2
**sending** 64:21
99:10
**sense** 42:24 120:3
**sensitive** 87:1
126:2
**sent** 112:23
124:12,25
**sentences** 26:16
111:24
**separate** 33:16
89:18 97:10
108:25 114:7
116:15 128:11
129:14
**separately** 124:14
**september** 17:11
20:18 22:23 82:18
**series** 100:20
**serious** 48:13,19
78:9,12
**seriousness** 64:6
78:13
**serve** 98:4
**served** 23:16
**service** 3:12
**serving** 38:3
**set** 73:19 76:9
89:15 104:9 105:4
107:15 116:23
124:8 128:25
129:4
**sets** 29:18 44:17
**setting** 31:18
93:23
**settle** 52:10 64:10
**settlement** 21:23
24:1 28:15,21
32:12,15,22,22
33:4 47:25 51:17

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 200 of 205

[settlement - standing]                                                                    Page 31

52:1,4,9 54:9,11
54:13,14 55:4,4
61:12,19,20,22,24
62:8,9,11,11,12
62:16 103:6
106:11 108:15
109:23
**seven**  19:15 81:23
**share**  27:4,6,21
32:1
**shared**  35:13
**shareholder**
21:18 22:3
**shareholders**
21:23
**shares**  43:3
**sharing**  31:6
35:12
**shaw**  12:12
**sheet**  50:16
**sherri**  11:25 134:3
134:16
**shipment**  20:7
**shoes**  35:5 46:1
74:5
**shore**  12:25 40:19
40:19 51:14,14
**short**  15:17 37:25
50:8 62:10 85:15
**shorten**  88:24
**shortening**  9:2
10:14 11:2,14
**shortly**  82:1
**shoulder**  84:12
**showing**  118:12
123:10,19
**shown**  45:4
**sic**  118:19
**side**  42:24 43:4
79:12 88:4 129:14
129:14
**sides**  43:15 129:5

**sideshow**  80:24
**signed**  5:11,14,18
5:22 6:1 8:19
**significant**  17:12
33:1
**silence**  38:1 40:16
**similar**  20:14
36:15 63:5 70:18
71:6 74:3 78:2
**similarly**  71:2,16
**simple**  60:16
70:22 83:24
**simply**  24:3 31:19
33:17 34:23 36:1
44:7 69:4 109:17
110:5,23 120:2
130:19
**simultaneous**
120:6 123:15
**sincerely**  23:14
**single**  26:5 29:2
30:1 47:21
**sir**  131:1,3,7
**sit**  51:18,21
**situated**  71:2
**situation**  44:15
45:8 78:2
**six**  81:23
**size**  124:8
**skaw**  11:24 134:3
134:12
**skip**  80:8
**slated**  21:15
**sliced**  32:23
**slide**  92:13
**slightest**  85:23
**slightly**  34:11
**small**  83:12
**smith**  48:10
**smooth**  52:20
**social**  103:10
**soft**  18:12

**sold**  54:21
**solely**  107:14
**solution**  60:16
**solutions**  1:20
16:8 134:22
**somewhat**  35:7
**sonnax**  72:6
**soon**  21:25 37:18
48:13 74:10
109:10
**sooner**  52:12
**sorry**  58:4 68:25
76:24 82:10 93:13
94:20 99:25
112:17 119:16
120:12 127:22
128:13
**sort**  45:3,24 51:6
95:10 97:10,13,15
108:7,8,17,23
109:11 113:21
122:16 128:2
**sorts**  74:20 116:9
**sought**  58:14 81:7
88:24 100:24
101:15 120:13
**soul**  24:5
**sound**  16:18 32:18
**sounds**  67:5
**source**  31:24
**southern**  1:2
88:16
**speak**  15:12 16:1
38:3 86:11 127:3
129:19
**speaker**  15:19
**speaking**  15:8,10
15:14 16:5 103:20
120:7 129:15
**specially**  57:9
**specialty**  2:10
13:12 26:6 43:18
43:19 54:22,24

**specific**  41:10
45:23 69:2,11
70:12 82:1 85:5
96:7 98:10 126:19
131:18
**specifically**  26:14
45:21 84:3 101:18
126:22
**specified**  73:25
**speed**  64:6
**split**  44:6 45:8,10
**spoke**  63:3
**sporadic**  87:11
**spray**  20:11
**spring**  76:10,11
**stage**  23:21 89:9
97:25
**stages**  85:8
**staggering**  70:8
**stake**  56:21
**stakeholders**
17:19 19:9
**stand**  21:25 24:11
**standard**  97:18,19
103:17
**standing**  2:2,14
3:3 22:13 25:20
27:15,16,21 29:2
29:12 33:8,9,15
33:17,19,25 34:1
34:2,19 35:2,12
35:13,17,21 36:19
38:21,22 39:4,5
39:14 45:21,25
50:10 53:13,21
54:3,4,5 55:6,6,8
55:9,17,20,21
56:1,1,17,22,24
57:9,11,20,21,24
58:6,23 59:5,8,11
59:11,13,24,25
60:10 61:6,21
62:14,15 63:8

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 201 of 205

[standing - sure]                                                   Page 32

64:1
**standpoint** 50:13
**stands** 30:21
**start** 52:10 62:2
  69:23 70:14 91:10
**started** 66:24 67:1
**starting** 55:12
  88:2
**starts** 38:25
**state** 15:11 33:8
  33:11,16,24 34:1
  34:10,14,21 44:21
  44:24,25 46:4
  50:9,14 57:2,15
  66:25 74:3 90:1
**state's** 33:21
**stated** 17:11 28:2
  72:8 95:12
**statement** 2:13
  6:10,11,17 7:3,9
  10:1 26:3 42:17
  122:9,17
**states** 1:1,13 2:12
  2:19 6:11,15 7:2
  12:13 26:3 28:14
  38:12 41:4,17
  42:1 53:2 70:4,4
  70:11 75:13 76:1
  88:3 89:22
**status** 21:3 58:9
**statute** 45:20 46:2
  46:4,5 55:7,18
  57:7 58:22 59:3
  74:3,4,6 101:21
  113:25 114:25
  115:6
**statutes** 60:8
  101:23
**statutory** 113:9
**stay** 3:16,20 4:3,8
  4:12 37:5,13,15
  47:6,13,18 49:17
  64:17 65:11,23

66:8,10,13,13
  67:9 69:5 71:17
  71:23 72:10,15,17
  72:25 133:7
**step** 25:9 26:13
  46:1 48:25 74:5
  119:4
**stepping** 35:4
**stewardship**
  18:10
**stewart** 108:22
**sticks** 118:19
**stipulation** 2:2,14
  3:2 8:12,12,19
  25:10,20,24 26:11
  27:2,13 28:2,3,6
  28:14,22 29:8,13
  29:18,23 30:23
  32:5,10,13 33:1
  35:25 36:4 37:17
  37:25 38:8,17,24
  39:12,22 40:13
  42:21 43:6 48:18
  52:6,17,18,24
  53:11,12,19,21
  54:2,5,8 56:8
  57:25 60:20,23
  61:23 62:18 63:14
  64:12 106:2 133:5
**stn** 27:22 34:6,24
  45:5
**stop** 33:6
**stories** 84:2,8
**story** 120:9
**straight** 94:22
**straightforward**
  28:23 33:7
**strategic** 18:9
  67:12 84:7
**strauss** 13:2
**streamlined** 101:2
**street** 12:14 14:18

**strictly** 44:3
**strike** 115:16
**strikes** 43:6
**strongly** 46:20
**structure** 74:15
  75:16
**stumbled** 67:4
**styled** 119:20
**subchapter** 74:2
**subject** 37:20
  39:11 41:13 54:19
  73:3 83:2,16 87:2
  88:17 89:2 90:22
  97:24 98:2,16
  125:21
**submission** 19:25
  20:20 107:8
**submit** 29:16
  76:14,19 123:15
  126:16
**submitted** 104:6
  106:19 123:24
  125:13
**suboxone** 20:4,6
**subparts** 131:8
**subsections**
  112:19
**subsequent** 80:12
  113:10
**subsidiaries** 25:14
**substance** 101:25
**substantial** 26:25
**substantially**
  17:18 87:17
**substantive** 58:18
  94:1 102:21 106:4
**substantively**
  37:14
**succeed** 104:1
**successor** 58:9
  60:17
**successors** 60:6

**sue** 34:19
**sues** 34:19
**suffers** 36:17
**suggest** 30:20
  101:16 103:25
**suggested** 117:22
  128:18
**suggestion** 38:4
  118:18
**suggests** 29:7
  130:20
**suing** 35:3,4 60:6
**suite** 12:23 13:14
  14:19 134:24
**suits** 34:20
**sum** 37:24
**summary** 37:6
  102:9,20 106:20
  108:12,16 109:13
  109:21,22
**summer** 33:25
**supervision** 46:7
**supplemental**
  126:15
**support** 2:13 3:1
  4:7 5:1 6:17 9:7
  10:19 22:20 26:3
  36:16 41:6,9 56:7
  56:11,23 62:19
  66:5
**supported** 26:1
  112:2
**supportive** 42:15
  84:16
**suppose** 103:16
**supreme** 101:21
  108:21 114:24
**sure** 15:9 19:23
  46:3 47:12 49:12
  51:18 64:11 66:8
  66:10 76:4 87:24
  93:14 94:20,21
  95:8 107:5 121:11

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 202 of 205

[sure - times]                                                                    Page 33

125:20 126:4
127:9,23
**surprise** 33:23
**swaths** 83:17
**swats** 92:20
**syringe** 20:1

**t**

**t** 38:19 54:24
65:19 134:1,1
**tablets** 20:4,6
**tactics** 68:3
**take** 20:11 23:2
46:1 51:17,18,20
76:19 99:10 100:8
107:8 108:6 120:2
125:20 126:12
131:4
**taken** 16:8 68:14
75:5,5 108:10,10
**takes** 76:5 127:11
**tales** 22:11
**talk** 46:23 123:20
131:15
**talking** 68:4 79:8
100:20 110:9,9,11
113:24 116:8
117:15 124:21
127:15
**talks** 115:2
**target** 19:25 20:1
20:20 30:14 38:4
46:14 61:2
**targeted** 85:24
106:4,5
**targets** 56:14 88:7
**tea** 75:24
**telephonic** 15:5
15:24 16:4 49:25
**telephonically**
1:19
**tell** 23:11 75:23
84:2 105:3

**telling** 22:11
**tells** 114:24
**temporal** 108:7
109:11
**ten** 102:19
**tens** 46:17 70:1
78:13
**tentative** 20:18
**term** 38:25 39:2,7
50:16 66:12,14
73:14
**terminate** 110:16
**terms** 28:3 29:12
39:1,11 47:19
53:12 58:21 62:12
72:24 73:11
120:15
**terrific** 16:22 25:6
**test** 61:4
**th** 13:21 14:17
22:14
**thank** 15:15 16:17
41:15,20 43:8,10
43:23 52:22 64:14
68:19,20 69:1,13
76:21,23,23 78:7
78:21 79:3,4,22
81:15 90:11 93:17
95:9 99:20 100:11
104:14 106:25
107:6 122:25
127:20 129:12,20
132:4,5,6
**thanks** 16:21
24:21 25:17 41:19
**theoretically** 87:2
**theory** 117:13
**thin** 108:17
**thing** 20:9 51:11
68:4 85:1 93:11
128:2
**things** 23:20
26:20 46:23 77:12

77:20 81:25 86:17
111:10 116:10
120:1 130:8
131:18
**think** 17:16 20:24
21:4,21 22:10
32:24 40:10 41:3
41:22 42:15,19
45:6 46:13 49:24
50:8 52:6,12
63:12 64:23 68:24
69:2 77:21 79:6
79:11 82:8,8,12
85:22 87:19 95:10
95:14 96:10,13,20
97:1,15 98:20
100:8 103:15
107:17,25 108:3,7
108:11,18 109:8
109:17 110:3
111:1,2,4 112:22
113:24 114:22
115:6,15 116:23
118:14 121:18,25
123:6,12 124:17
124:20 125:9,12
125:25,25 126:15
128:23 129:16,17
131:24
**thinks** 123:21
**third** 5:22 14:11
20:21 24:2 32:2
35:7 44:6,22 45:9
45:10,16 50:11
55:6,9,20 56:2
57:11,14 75:18
88:18 128:1
**thought** 50:3 67:2
67:5,16 82:4
130:4
**thousands** 31:9
46:17 70:2,4
78:14 84:13,13

103:11 104:21
**threat** 116:22
**threatened**
103:10,13
**threats** 118:20,21
118:22 120:19
**three** 19:1 23:5
26:16 32:9 36:18
47:22 48:4,11
51:11 54:14 56:5
57:17 61:9 62:18
63:4,8,14 65:3,8
86:6 126:24
**tick** 19:16
**tig** 26:7,8 29:7
30:13,19,20 31:1
31:3,16 32:2,11
32:25 33:6,23
34:17 35:20 36:9
36:16 37:10,19,24
38:18 43:14,18
54:24 56:14 60:15
61:9 64:17
**tig's** 30:16,22
31:20 36:1,10
37:4,15,17 38:6
**tii** 98:17
**time** 4:15,22 5:2,8
5:11,14,19,23 6:2
15:12 16:1 29:22
31:22 37:7 41:23
43:7 50:19 54:2
56:2 57:4 58:22
58:25 79:9,25
80:12,24 81:16
83:9 86:25 108:8
111:9 129:21
131:3 133:8
**timely** 91:1 93:24
**times** 15:14 18:15
19:6,10 23:16
32:9 40:11 124:7

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 203 of 205
[timetable - unexhausted]                                                Page 34

**timetable** 84:23
**title** 74:3 112:20
**today** 21:25 22:6
    22:11,13 24:11
    29:10 37:23 49:7
    53:20 83:13 84:12
    86:23 88:20
    124:12 130:19
    131:7,13
**today's** 15:4,9
    17:2 129:16
    130:15 131:25
**told** 22:22
**tool** 112:23
**tools** 100:21
    106:24
**topic** 19:15 21:1
    113:22
**tort** 36:22
**total** 86:5,7
**totaling** 82:24
**touch** 21:4
**town** 86:2
**townsend** 6:6 7:23
    8:2,8 9:13 10:9
    11:20 14:22 86:2
    86:9,12,22 87:14
    87:20 90:10,11,12
    93:14,17 94:18
    95:1,4,9 96:12,19
    107:2,2,6 112:15
    119:3 121:2,2,7,9
    121:25 122:2
    123:2,4,12 126:15
**townsend's** 82:15
    115:25 120:22
**track** 15:14 19:25
    20:25
**traction** 52:5
**trade** 20:19 98:9
    110:18 115:10
**tragically** 70:20

**transaction** 17:15
**transcribed** 11:24
**transcriber** 15:13
    134:9,13,17
**transcript** 16:10
    77:19 78:1 134:4
**transfer** 28:11
**transferred** 67:23
**transferring**
    67:22
**transfers** 75:19,19
**transition** 52:21
**transparency**
    85:2,11
**transparent** 125:1
**treating** 128:11
**treatment** 24:6
    71:6,7
**treatments** 20:5
**triad** 42:5
**trial** 20:16 63:12
**tribes** 70:5
**tried** 124:6
**tries** 74:18
**trigger** 106:14
**trillion** 30:8 31:14
**trilogy** 34:6 45:20
**troop** 2:18 6:14
    12:17 38:12 41:9
    41:15,16,20
**trouble** 118:15
**true** 31:19 113:8
    134:4
**truly** 18:19 75:8
**trust** 32:19
**trustee** 33:14
    35:14,18 44:12
    45:22 46:1 55:7
    55:17 57:9 58:8
    58:14,15 59:5,8
**trusts** 67:23
**try** 78:18

**trying** 47:3 64:20
    67:14
**turn** 19:2 23:6
    38:11 65:2 81:16
    81:25 87:20
**turning** 17:3
    79:23 86:9 129:24
**twice** 32:9
**two** 17:22 24:14
    33:5 39:23 42:6
    44:17 51:17 53:12
    54:10,13,15 55:3
    56:7 57:19 58:19
    59:14 60:11,16
    61:21,22 62:9,24
    64:7 65:3,8,10
    69:14 73:6 82:19
    84:3 86:5 87:7,10
    87:10,11,18 89:16
    91:7,10,10 92:12
    97:16 100:6
    107:10 111:24
    113:8 119:24
    120:4 125:15,22
    126:9 127:22,23
    128:11 129:5,13
    130:7
**type** 44:21 74:4
    75:14 110:6,23
**types** 70:12
    118:22

_____
**u**
_____

**u** 106:7
**u.s.** 1:25
**ucc** 8:14,21 25:21
    26:2 27:22 30:12
    31:1 38:9 66:24
    82:18,21 83:16,24
    84:7 85:20 100:15
    101:14
**ucc's** 82:23 84:17
    86:7 93:21

**uh** 65:24 66:3
    77:9,18 78:10
**ulterior** 116:2,6
**ultimate** 46:7
    75:16 89:5 105:9
**ultimately** 38:19
    69:20 71:11 90:5
    90:19 109:24
    120:9
**unabated** 85:9
**unclear** 40:4,10
    40:12
**unconditional**
    36:5 37:1
**undecided** 106:15
**underlying** 18:13
    76:17 84:1 106:10
    130:10
**understand** 19:5
    21:22 42:23 46:13
    46:18 48:2 74:9
    78:5 80:2 92:14
    93:5 94:4,5
    114:10,11 121:7
    122:22 123:5
    126:3 128:21
    129:24 131:1
**understandably**
    30:17 85:6
**understanding**
    51:2 87:17 92:17
    97:2
**understands**
    22:25 81:11
**understood** 67:10
    122:20 129:2
**undertake** 44:13
**undoubtedly** 36:5
**undue** 80:25
**unduly** 63:1 71:13
    121:21
**unexhausted**
    26:24

19-23649-shl    Doc 2326-1    Filed 01/27/21    Entered 01/27/21 15:39:20    Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo    Pg 204 of 205

[unexpected - willing]                                                    Page 35

unexpected  17:20
unfair  85:22
  91:25 93:1 110:22
unfiled  95:4
unfortunately
  70:3
unidentified
  15:19
unique  71:25
unit  32:20 72:19
  72:22 74:1,5,7
unit's  72:19,23
united  1:1,13
  41:24 70:4
units  72:25 75:12
unmute  15:10
  16:6
unnecessarily
  61:12
unnecessary  15:8
  33:22 61:11 62:24
unprecedented
  25:24
unredacted  68:13
  99:3,7 124:16
unrelated  37:11
unsaid  83:12
unseal  6:12 7:3,10
  7:17,22 8:7,14,16
  8:20,23 9:12,18
  10:2,8 11:8,19
  83:14 85:14,17
  87:8 88:17 90:23
  91:2,5 95:15 96:8
  97:11 105:15
  108:14 122:10
  125:22
unsealed  89:4
  90:20 93:3 96:9
  98:2 121:15
unsealing  85:18
  86:23 92:24 93:9
  93:24 103:1

127:12
unsecured  2:4,16
  3:5 13:3 52:25
  56:9 59:1,6 69:21
  70:9,10 71:2,18
unusual  70:25
unusually  17:2
unwilling  27:9
upcoming  21:3
update  17:3 19:2
  24:21 82:11 126:8
updated  80:17
updates  21:5
updating  80:15
urge  23:19,25
  43:8
usa  55:15 59:17
use  106:3 114:6
uses  17:20
utmost  76:2,4
uzzi  7:13 10:5

                v

v  19:22 20:19,19
  55:12,14 95:13
  107:21 108:1
  116:17,17,17
value  17:12,19,20
  31:25 32:1 48:8
  70:16 75:20,20
  102:6
various  17:14
  18:16 78:18 84:3
  94:24
vast  83:15 85:18
  90:20 111:6
vehicle  112:7
  113:14 116:1
veritext  134:22
version  19:22
  20:3 99:2,11
versions  99:7
  122:8

versus  105:24
  106:7
vest  29:1
vested  34:19 35:1
veto  32:11
vial  19:22
victims  67:18
view  40:17 41:24
  42:10 52:16 60:19
  114:17 123:7
views  62:7 92:19
vilified  103:9
virtual  65:2
vis  89:25,25
vociferous  37:17
voice  16:3 30:1
  42:21 47:21 51:9
voices  47:22 51:11
voluntarily  85:17
  91:4
vonnegut  4:17

                w

wait  64:2 130:3
waiting  47:16
  49:21 100:5
waiver  128:2
want  16:10 23:9
  23:10 39:24 41:6
  43:25 46:23 48:8
  50:24 65:25 66:4
  68:23 75:14 77:16
  87:24,24 94:20,20
  94:21 108:6
  118:20 119:4
  123:22 126:3,21
  127:4,14 129:14
  131:14,17
wanted  40:13
  47:5 66:25 93:14
  95:8 116:15
  118:10 122:5
  127:19

wants  24:24,25
  38:13 89:7 107:7
  124:11 130:7,21
wardwell  12:3
  79:18
warrant  119:9
warranted  92:6
warrants  75:7
washington  12:24
  13:15 14:20
waterfront  98:21
watford  58:2
  59:22
way  19:11 23:11
  32:21 42:21 49:19
  68:2 74:16 76:5
  84:25 109:18
  111:12 115:9
  122:23
we've  19:10 47:16
  87:16,18,21 90:24
  90:25 94:2,14,16
  101:12
weaker  94:12
  108:2
week  125:22
weeks  24:15 85:15
  87:7
weigh  48:1
weight  102:3
went  35:16 67:7
west  12:14
westlaw  105:24
  106:8
whistleblower
  74:6
widespread  22:20
wiles  33:25 34:5
  34:11
william  11:24
  134:3,8
willing  48:25

19-23649-shl   Doc 2326-1   Filed 01/27/21   Entered 01/27/21 15:39:20   Declaration
of George Calhoun In Support of Supplemental Brief In Support of Mo   Pg 205 of 205

[willingness - à]                                                           Page 36

| | |
|---|---|
| **willingness** 51:21 | 14:12,12 33:21 |
| **winthrop** 12:12 | **à** |
| **wirtshafter** 43:19 | **à** 89:25 |
| **withdraw** 91:4 | |
| **withdraws** 109:24 | |
| **withdrew** 108:16 | |
| **withholding** 86:16 | |
| **witness** 63:10 | |
| **words** 28:6 34:11 85:25 109:7 117:5 | |
| **work** 22:24 32:7,9 47:12 48:6 52:19 54:16,25 55:2 77:11 89:8 119:23 120:25 | |
| **worked** 19:9 85:17 | |
| **working** 22:16 66:24 78:14 87:21 119:22 | |
| **world** 20:11 | |
| **worth** 120:10 | |
| **written** 94:6 119:9 | |
| **wrong** 36:2,14 | |
| **x** | |
| **x** 1:4,11 133:1 | |
| **y** | |
| **yards** 14:4 | |
| **yeah** 50:6 66:15 66:16 100:2 122:11 125:3 128:20,22 129:20 | |
| **year** 16:23 17:7 18:2,7,8 19:2 20:21,22 47:6 76:11 103:12 | |
| **years** 85:16 93:1 | |
| **yesterday** 16:14 | |
| **york** 1:2,15,15 12:6,6,15,15 13:6 13:6,23,23 14:5,5 | |