**EXHIBIT B**

**TARTER KRINSKY & DROGIN**
*Counsel for NAS Children Ad Hoc Committee*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*[1] | : | Case No. 19-23649 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| | : | |

*EX PARTE* MOTION OF THE NAS CHILDREN AD HOC REQUESTING A COURT ORDER AUTHORIZING EXAMINATIONS PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 AND 9006 OF MUNDIPHARMA DOCUMENTS WITHIN THE DOMINION AND CONTROL OF THE ICSP

The NAS Children Ad Hoc Committee ("**NAS Children Ad Hoc**"), through its counsel,

Tarter Krinsky & Drogin LLP, respectfully submit this *ex parte* motion (the "**Motion**") for entry

of an order authorizing it to both (a) conduct an examination of the records custodian(s) (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The ICSPs' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

"**Record Custodians**") for the Initially Covered Sackler Persons (the "**ICSP**")[2] and (b) seek documents in connection such examinations pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Rules**"). In support of this Motion, the NAS Children Ad Hoc respectfully state as follows:

## PRELIMINARY STATEMENT

1.     As this Court is aware, the NAS Children Ad Hoc represents the interests of guardians who are responsible for the care, welfare, and upbringing of children suffering from *in utero* exposure to opioids by reason of the birth mother's use during pregnancy of opioids manufactured by Purdue, for example.  To that end, the NAS Children Ad Hoc has successfully negotiated and reduced to a term sheet an arrangement that establishes an abatement trust, funded with settlement proceeds; to wit, an NAS Family Abatement Trust (the "**NAS Abatement Trust**").[3]

2.     This motion seeks the further production of medical and scientific information, research, data, studies, and materials (the "**Scientific Information**") currently within the possession or control of the ICSP, on the grounds that comprehensive disclosure of the Scientific Information is critical to medical experts, providers and staff in laying the groundwork for a timely and successful launch and implementation of the impending NAS Abatement Trust.

3.     The NAS Abatement Trust is specifically intended to provide immediate relief to the countless families caring for an NAS child, in addition to educating countless women of child-bearing age with additional vital information (contained within the sought studies) addressing

---

[2]     The ICSP in these cases includes the Mortimer Sackler Initial Covered Sackler Persons together with Beverly Sackler, David Sackler, Jonathan Sackler and Richard Sackler; and all of the foregoing persons are Members of Sackler Sides 'A' and 'B' (sometimes "Sackler Sides 'A' and 'B').

[3]     For purposes of completeness, NAS, or neonatal abstinence syndrome, is recognized by the International Classification of Disease (ICD) as a medical reference of a diagnosis applied to neonates suffering neonatal opioid withdrawal syndrome (NOWS) attributed to prenatal opioid exposure (POE). P96.1 is a billable/specific ICD-10-CM code that can be used to indicate a diagnosis for reimbursement purposes in connection with neonatal withdrawal symptoms from maternal use of drugs of addiction. For purposes of completeness, similar terms like fetal opioid exposure are also widely used, seemingly, interchangeably.

health risks associated with maternal use of opioids (to their unborn child due to *in utero* opioid exposure).

4.      As both the creators and custodians of a compendium of medical research and testing of opioids (e.g., animal studies, pre-clinical studies, clinical studies, ongoing studies, *in-vivo* and *in-vitro* genotoxicity studies, mutagenicity) amassed over decades, it is highly logical and reasonable to expect the ICSP to fully cooperate and comply with comprehensive disclosure of the Scientific Information that will, all importantly, serve to mitigate the opioid epidemic.  In the manner that Debtors are expected to adhere to utmost good faith in this action as part of the bargain of receiving broad and enduring discharges in return, nothing less should be expected of the ICSP whom, until most recently, were the stewards of the Debtors in fact if not by name.

5.      The information sought herein is within the possession, dominion and control of the ICSP.  To date, the ICSP have never provided any confirmation (let alone in admissible form) establishing that the ICSP don't have the documents in question.  For purposes of completeness, this same question has been squarely presented to the Debtors both informally as well as in a pending motion, see, e.g., ECF Doc-2139.  To date, neither Debtors nor the ICSP have sought to respond to this challenge.  We respectfully request that the Court order full compliance without further delay.

6.      The discovery sought is consistent with a long-running effort to assist a party in interest in determining the nature and extent of an ICSP asset—its Scientific Information related to fetal opioid exposure—an asset that, oddly, remains unaccounted for and, as a consequence, its value, currency, and noteworthiness, remain locked.

7.      Obtaining the Scientific Information in expedited fashion so that it may be considered by the medical professionals, clinicians, and staff, in the course of implementing the

NAS Abatement Trust is of paramount importance and value; its timely disclosure would, in effect, be a recovery of a highly valuable ICSP asset for the benefit of creditors. Benefits would also accrue to the medical and science communities as well as to, directly and indirectly, the multitudes of women of child-bearing age nationwide that stand to be better informed about reproductive issues.

8.      Full and comprehensive discovery of Scientific Information is also required to fully assess wrongdoing of the ICSP regarding what purports to be conscious misrepresentation and concealment of irreplaceable scientific evidence related to the long-term impacts of fetal opioid exposure known by the ICSP and, it is argued, the Debtors, *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004), separate and apart from the intrinsic value as the Scientific Information has to the NAS Children Ad Hoc. Accordingly, ordering the ICSP to disclose all Scientific Information is entirely consistent with the need for comprehensive and accurate disclosure, and nothing less than honest and comprehensive cooperation in all matters is the bare minimum to be expected of the ICSP in return for the court's due consideration of the equally comprehensive and enduring releases in favor in some if not all individuals designated as an ICSP.

9.      This Motion was not filed for the purposes of disrupting ongoing efforts by the NAS Children Ad Hoc to continue to receive the cooperation of the ICSP through consensual efforts.

10.     Significantly, the NAS Children Ad Hoc is only asking of the ISCP what is also being asked of the Debtors; to either produce the information requested forthwith or, in the alternative, demonstrate that they don't have the documents in question in their possession custody or control. As previously mentioned, Debtors have not responded to this challenge and, it is asserted following numerous communications and two meet and confers with the ISCP, that the

Debtors and ICSP will maintain a unified front by refusing to respond unless and until one or all are ordered by this Court to respond forthwith.

11.     The proposed requests are attached hereto as **Exhibit A.**

12.     The NAS Children Ad Hoc properly notified the ICSP of their intention to file this Motion on repeated occasions, including by letter dated November 17, 2020 (the "**Meet and Confer Request Letter**"), and a true and correct copy is attached hereto as **Exhibit B**.  A telephonic Meet and Confer among the NAS Children Ad Hoc and ICSP transpired on November 18, 2020 and, again, on January 25, 2021 (the "Meet and Confer Letter Request" and the November 18, 2020 and January 25, 2021 telephonic meet and confers are, sometimes, collectively referred as the "**Meet and Confers**").

13.     Without timely disclosure, a critical <u>one-of-a-kind</u> collection of noteworthy scientific records meticulously documenting testing for--and identifying--the teratogenic and mutagenic impact of in-utero exposure on mammals and the frequency and scope of the injuries to the embryos of those test animals will remain locked away.  The Court has the key to unlocking this treasure trove of vital scientific information that is both highly material and timely for purposes of mitigating the opioid epidemic.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under § 157(b)(2).

15.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

16.     The bases for the relief requested herein are Bankruptcy Code section 105 and Bankruptcy Rules 2004, 9006 and 9016.

**RELEVANT BACKGROUND**

17.     The NAS Children Ad Hoc respectfully requests that the Court enter an order pursuant to Bankruptcy Rule 2004, substantially in the form of the proposed order attached hereto as **Exhibit C** (the "**Rule 2004 Order**").  Upon the entry of the Rule 2004 Order, the NAS Children Ad Hoc intends to serve the discovery requests described in Exhibit A upon the ICSs that, in turn, shall require the ICSP and their agents to submit their formal responses and/or objections on an expedited basis and, thereafter, to appear for oral examination under oath through their respective Records Custodians.

18.     The ICSP have already acknowledged before this court that they are the custodians of documents and other electronically stored information related to Mundipharma as well as 31 other Independent Affiliated Companies ("**IAC**") which make up their global opioid-drug-centered corporate portfolio. *See* **Exhibit D**, Second IACs Stipulation; ECF Doc-1518 (the "IAC Stipulation").

19.     The ICSP have also stipulated to having identified 31 records custodians, each of whom is likely to first-hand knowledge of electronically stored information (esi) related to Mundipharma, ICSP, and IAC's like Mundipharma. *See* **Exhibit D**, IAC Stipulation, at ¶4.

20.      The ICSP also stipulated to running search terms against the electronically stored information for these entities as part of the ongoing discovery process in this matter.  Indeed, ICSP have stated they are committed to "(i) make a good faith inquiry to identify and (ii) [..] engage in reasonable searches to collect available ESI from all means of electronic communication used by the Final IAC Custodians, including by retrieving Electronically Stored Information ("**ESI**") from current or former company servers and phones and back up tapes as relevant". *See* **Exhibit D**, IAC Stipulation, at ¶10.

21.     Additionally, the ICSP have been shown to have direct corporate oversight of Mundipharma and related overseas IAC, as depicted in documents disclosed in the 2017 "Paradise Papers" corporate 'leaks' regarding offshore investments. *See* **Exhibit E**, Mundipharma Offshore Outlines.

22.     ICSP agreed to work in good faith to perform "Phase I" and "Phase II" searches of electronically stored information identified by the UCC and return results for these Phase I and II searches by August 25, 2020. *See* Exhibit D, IAC Stipulation, at ¶22c. **While** these initial searches have now been completed, the NAS Children Ad Hoc has additional search terms regarding certain documents from (but not limited to) these same IAC custodians and sources stipulated earlier by the ICSP.

23.     The ICSP have sought to keep certain documents sealed, redacted, or hidden from both NAS Children Ad Hoc and, by extension, the general public, without justification.  This is particularly troubling to understand and to reconcile, if only that it goes against the grain of ICSP's public veneer when factoring also considers the ICSP's on the record acknowledgement of the public's entitlement to access to a document repository, without restriction and scope and, further, have written approvingly regarding the establishment of a comprehensive public document repository.

24.     The ICSP also have acknowledged that the language contained in Debtors' settlement resolution with the DOJ (UCC Statement ¶¶ 18-19 ECF Doc 1920) properly describes the establishment of a public document repository as only setting a floor and not a ceiling with respect to the breadth and comprehensiveness of the contemplated public document repository.

> The UCC's final concern regarding the scope of the document repository described in the DOJ Resolution (UCC Stmt. ¶¶ 18-19), which the UCC emphasizes has the support of all creditors and the Court, has *an easy answer that the ICSPs are happy to provide—the language sets a floor, not*

> *a ceiling. The ICSPs intend that the document repository*—promised by the ICSPs at no fewer than five hearings (see Oct. 11, 2019 Prelim. Inj. Hr'g Tr. 66:17-18; id. at 67:5-20; Nov. 6, 2019 Prelim. Inj. Hr'g Tr. 30:19-31:19; June 3, 2020 Bar Date Ext. Hr'g Tr. 20:18-21:8; July 23, 2020 Omnibus Hr'g Tr. 48:12-18; Oct. 28, 2020 Omnibus Hr'g Tr. 30:20-22)—*that will exist upon emergence will go beyond the repository described in the DOJ Resolution.* (See Plea Agreement at 10-11.)  The ICSPs' agreement with the DOJ regarding the minimum context of a document repository is but one more stepping stone on the road to emergence.
>
> *See* Omnibus Reply In Support Of The Motion Of ICSPs Pursuant To 11 U.S.C. § 105 And Fed. R. Bankr. P. 9019 Authorizing And Approving Settlements Between The ICSPs And The United States. ECF-Doc 1962, Entered 11/16/20. (emphasis supplied)

Additionally, at a hearing on November 17, 2020, Arik Preis, Esq., UCC counsel, declared that discovery is both still open and ongoing in this matter, and Judge Drain concurred:

> **PREIS:** Finally, I just want to clarify something Mr.
> 24 Huebner said. He said something about the fact that this
> 25 ends any and all discovery that the Committee and the non-
> 1 consenting states will serve on the ICSPs in these cases.
> 2 And if I misheard that, I apologize. That's not exactly
> 3 true. It does put an end to the discovery we will be
> 4 serving on the ICSPs as it relates to the items and the
> 5 issues that are at play on the estate causes of action.
> 6 Obviously if there are other issues in the case, like plan
> 7 confirmation or something else that has nothing to do with
> 8 the topics that we have already sought discovery from the
> 9 ICSPs, that's obviously fair game, and the ICSPs
> 10 understand that, and that is in the stipulation. I just
> 11 didn't want there to be any confusion about that.
> 12 **THE COURT**: Right. No, that's clear to me.
> 11/17/20 Hearing Transcript, 17:24-18:12

With parties and the court in agreement about the ongoing nature of discovery in this case, the NAS Children Ad Hoc's requests are both timely, proper, and reasonable.

**The Requests for Scientific Information are Fair and Reasonable in Scope and Application.**

25.     Curiously, discovery efforts being pursued by the NAS Children Ad Hoc with the ICSP has reached a point in time where—at this late juncture and at no fault of the NAS Children Ad Hoc—counsel to the ICSP, like the Debtors' counsel before them, is openly encouraging and

directing the NAS Children Ad Hoc to approach Mundipharma, presumably as the person possessing or controlling the Scientific Information sought herein or, similarly, with knowledge of its whereabouts.  In lockstep, the Debtors first and, subsequently, the ISCP, would cooperate with the NAS Children Ad Hoc only then to point it to yet another person—a bigger fish as it were—as the possible responsible custodian.  The below narrative will illustrate the discovery equivalent of the 'Bermuda Triangle' that has been seemingly orchestrated by Debtors and ICSP and Mundipharma, a disclosed IAC.

**Debtors' Extent of Cooperation.**

26.     Details of Debtors' history of cooperation, beginning in and about April 2020 and now ongoing for more than seven months, is the subject of a prior motion, styled as *Ex Parte Motion of the NAS Children Ad Hoc Requesting a Court Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006 of Mundipharma Documents Within the Dominion and Control of the ICSPs;* and the relevant allegations are incorporated herein by reference as if fully set forth here. ECF Doc-2139, at paras.1-17 and 20-49.

27.     Important for purposes of this motion is the fact that, in November 2020, Debtors recommended to the NAS Children Ad Hoc that it contact the ISCP and Mundipharma to continue the inquiry regarding Scientific Information.

**ICSP Extent of Cooperation.**

28.     Starting in November 2020, the NAS Children Ad Hoc has coordinated with the ICSP to run targeted search terms on the "Sackler Families" databases in accordance with a mutually-agreed protocol between the producing parties (i.e., the Debtors, in addition to Sackler Sides 'A' and 'B'), the UCC, and the NAS Children Ad Hoc (the "**Search Term Protocol**").

29.     The role of the UCC is limited to running the search terms on certain databases. On or about January 4, 2021, the UCC notified the NAS Children Ad Hoc that the relevant search terms had returned over 505,111 documents in total, of which 241,111 documents are produced by the Sackler Families (with Debtors producing the other 260,000 documents).  Shortly thereafter, the NAS Children Ad Hoc notified the ICSP of the UCC's report and requested their continued cooperation.

30.     On January 15, 2021, the ICSP introduced significant and highly cumbersome non-negotiable additions (the "**Sackler Term Sheet**") to the previously agreed to Search Term Protocol, adding further layering (a 3-layer process) and delay to a process that had begun two months earlier.  The NAS Children Ad Hoc duly registered in writing its objections to these changes to no avail.

31.     Layer 1 Production to the Sackler Term Sheet, to paraphrase, involves the ICSP providing the UCC with a complete list of those documents that were designated Confidential or Highly Confidential, and that appear in a family of documents where all documents were marked Highly Confidential or below under the protective order, in addition to Side A and Side B also consenting to the UCC sharing those documents and their family members directly with the NAS Children Ad Hoc "by the end of the day on Tuesday, January 19, 2021."  Layer 2 Production involves providing the NAS Children Ad Hoc "by the end of the day on Tuesday, January 19, 2021." with a list of all documents designated PEO-Confidential or PEO-Highly Confidential under the protective order and, further, that appear in a family of documents where all family members were marked PEO-HC or below, and thereafter, Side A and Side B loading that family of documents into a view-only platform by the end of day on Friday, January 22, 2021.  Layer 3 Production is the most restrictive layer and, according to counsel for the ICSP, "Side A and Side B

do not consent to the sharing of these documents." under any circumstances but, presumably, will upon court order.  This discovery impasse can only be rectified by a swift rebuke by the court, amplified by an order directing full and unconditional compliance.

32.    The paucity of information that the ICSP had furnished on the January 22, 2021 deadline, and thereafter, on an ICSP-approved and controlled view-only platform, is largely if not entirely irrelevant and unresponsive following preliminary review.  In fact, none of the information produced appears on its face to be related to the relevant set of search terms, calling into question the diligence and actions of the producing parties.  The additional fact that the ICSP openly admit to having "never seen" the search terms demonstrate a professed passivity regarding their responsibilities to cooperate and comply with agreed protocols in good faith.  It is highly unlikely, even inconceivable, that the professionals representing the legal interests of the ICSP in this action did not exert any effort in reviewing the search terms when, by comparison, it is apparent that the ICSP had exerted an inordinate amount of effort towards negotiating and tweaking the Search Term Protocol and, thereafter, formulating an entirely separate Sackler Term Sheet.

33.    Without the remedy sought by this motion, these irreplaceable records will remain hidden from medical investigators and scientific researchers alike and, most probably, cause unnecessary delays in developing, understanding and contextualizing follow-up studies researching injuries caused by and related to prenatal opioid exposure or, similarly, a diagnosis of NAS.  Without timely disclosure in this case, crucial records stand to remain hidden from medical investigators, among others, all of whom are diligently pursuing clues to identify and treat the harms. now widely reported to be associated with prenatal opioid exposure affecting literally hundreds of thousands—possibly millions—of children of all ages.

**The Scope of Scientific Information is Fair and Nonprejudicial.**

34.     The material and reasonable requests made pursuant to this Motion are, as a matter of procedure, being made on an *ex parte* basis in accordance with both Bankruptcy Rule 2004 as well as this Court's Chambers Rules.  The ICSP received advance notice that the NAS Children Ad Hoc would be proceeding with this Motion via the Meet and Confer Letter as well as during telephonic meet and confers, each a procedural step—and courtesy—that diminishes if not dispels any claim of prejudice.  Accordingly, the NAS Children Ad Hoc respectfully submits that the relief requested by this Motion is properly sought and entered on an *ex parte* basis.  Of course, any specific discovery disputes will be brought to the Court's attention as they arise, to the extent they cannot be otherwise worked out by the NAS Children Ad Hoc and the ICSP.[4]

35.     The NAS Children Ad Hoc and the ICSP have mutually and diligently continued their discussions of the discovery requests that remain unresolved.  The NAS Children Ad Hoc is clearly entitled to the requested discovery from the ICSP in these cases.

36.     The discovery requests, which are attached as Exhibit A, include requests for specific medical and scientific information that may be relevant, or may lead to discovery of relevant information, relating to the long-term impact of fetal opioid exposure, as well as relating to the issues of the ICSP's knowledge of fetal opioid exposure arising from research and development opioids, and relating to the sufficiency of science warnings and product labeling, including but not limited to information regarding disclosures—to pregnant women and women of childbearing ages alike—of the full extent of the risks of maternal use of opioids.

---

[4]     NAS Children Ad Hoc continues to work cooperatively with the Debtors with respect to certain discovery and, at the same time, unresolved matters have been brought before the court, see *Motion to Authorize The NAS Children Ad Hoc Committee's Motion Entry Of Order Pursuant To 11 U.S.C. §§ 105(A) And 107(B) And Fed. R. Bankr. P. 9018 Authorizing The Filing Of Certain Information And Exhibits Under Seal In Connection With The NAS Children Ad Hoc Committee's Ex Parte Motion Requesting A Court Order Authorizing Examinations Pursuant To Federal Rules Of Bankruptcy Procedure 2004 And 9006.* ECF-Doc-2139.

37.    The nature of the documents produced, thus far, regarding warnings to doctors prescribing opioids to pregnant women (and women of childbearing ages), it is argued, demonstrate that Purdue had downplayed and minimized known risks of fetal opioid exposure; misrepresented the data from animal studies; engaged in joint efforts with other manufacturers to mislead regulators; and ignored peer-reviewed studies that could have the effect of adversely impacting and suppressing opioid sales to women of child bearing age.

## **RELIEF REQUESTED**

**The NAS Children Ad Hoc And The Implementation Of The
NAS Abatement Trust Stand To Greatly Benefit From Discovery
Of The Nature And Extent Of Scientific Information Possessed By The ICSP.**

38.    Let there be no doubt that the documents the ICSP and Debtors have furnished the NAS Children Ad Hoc establishes to a reasonable certainty that the ICSP also possess far more scientific information responsive to those discovery demands that remain outstanding, and those demands are both relevant and purposeful to the objectives of abatement currently being pursued by the NAS Abatement Trust.

39.    Documents produced thus far indicate that the ICSP seemingly continue to conceal, without justification, toxicological information and data relating to deformities, congenital malformations, increased infant test animal deaths, decreased infant test animal birth weights, chromosomal aberrations, teratogenic potential, increased genotoxicity, including written admissions that animal studies show reproductive toxicological effects.

40.    The following excerpts compare language from the Amended Draft Version and the Final Version of a certain Mundipharma draft report ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████







41.    Just these several excerpts, alone, confirm the NAS Children Ad Hoc's contentions that the ICSP, or their agents, have possession, dominion, or control of undisclosed Scientific Information of greatest value and relevance to the implementation of the NAS Abatement Trust.

42.    Another example is found in an email string, ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████

43.    ███████████████████████ Drs. Sackler and CEO Landau, ███████████

███████████████████████████████████████████████████████████

44. ███████████████████████████████

45. ███████████████████████████████

46.    The measured evasiveness of the testimony of Drs. Sackler and Landau creates, at best, an incomplete understanding of their knowledgebase surrounding *in vitro* genotoxicity, justifying the discovery sought herein.

47.    In his supporting declaration, attached as **Exhibit J,** Dr. Carl Werntz, both a licensed physician and a former professor at the West Virginia University School of Medicine, reports:

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████  *See* **Exhibit J**, Werntz at ¶10

48.  ████████████████████████████████████████

██████████████████████████████████████████████

████

49.  ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███

50.  ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

51.    Documents adduced in discovery, thus far, reveal that the ICSP and/or related-entity Mundipharma had actively been discussing issues and concerns surrounding suggestions of genotoxic impacts and chromosomal aberrations.

52.  ████████████████████████████████████████

████████████████████████████████████████████████

---
5 ████████████████████████████████████████
████████████████████



**BASIS FOR RELIEF**

55.     Bankruptcy Rule 2004(a) provides, in relevant part, that "[o]n motion of any party in interest, the court may order examination of any entity." Under Bankruptcy Rule 2004, a party-in-interest (such as the NAS Children Ad Hoc) may request discovery related to "acts, conduct, or property, or to the liabilities and financial condition of the [ICSP], or to any matter which may affect the administration of the [ICSP's] estate or to the right to a discharge." Fed. R. Bankr. P. 2004(b).

---



56.     The purpose of Bankruptcy Rule 2004 is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). Rule 2004 permits discovery "to determine the extent of the estate's assets and recover those assets for the benefit of creditors." *In re Madison Williams & Co., LLC*, No 11-15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Oct. 30, 2014) ("The underlying purpose of Rule 2004 is to 'allow the court to gain a clear picture and whereabouts of the bankrupt's estate.'" (quoting *Keene Corp. v. Johns-Mansville Corp. (In re Johns-Mansville Corp.)*, 42 B.R. 362, 364 (S.D.N.Y. 1984))).

57.     The scope of discovery allowed under Bankruptcy Rule 2004 is "'very broad and great latitude of inquiry is ordinarily permitted.'" *In re Madison* Williams, 2014 WL 56070, at *3 (quoting *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985)). Courts have repeatedly recognized that discovery provided for under Rule 2004 encompasses "broader discovery than is available under the Federal Rules of Civil Procedure." *In re: Bernard L. Madoff*, 2014 WL 5486279, at *2 (citing *In re Recoton Corp.*, 307 B.R. at 755); *see also In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[T]he scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure . . .".'"); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).

58.     While the NAS Children Ad Hoc is engaged in good faith discussions with the ICSPs regarding the discovery, the NAS Children Ad Hoc needs, nonetheless, the formal protections of a Rule 2004 Order so that it can properly bring any discovery disputes before the Court.

## COMPLIANCE WITH THE RULES

59.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, together with a discussion of their application to this Motion. The NAS Children Ad Hoc respectfully submits this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

60.     The NAS Children Ad Hoc is proceeding with this Motion on an *ex parte* basis. Nevertheless, the NAS Children Ad Hoc has duly provided informal notice of this Motion to the ICSPs.

## NO PRIOR REQUEST

61.     No prior request for the relief sought in this Motion has been made in this Action.

## RESERVATION OF RIGHTS

62.     The NAS Children Ad Hoc and its members reserve all of their respective rights, claims, defenses and remedies, including, without limitation, the right to amend, modify or supplement this Motion, to seek additional discovery, add additional parties, or to raise additional grounds for granting this Motion during any hearing on the Motion.

## **CONCLUSION**

63.     The NAS Children Ad Hoc respectfully requests that the Court enter an order, substantially in the form of **Exhibit C** attached hereto, that authorizes the NAS Children Ad Hoc to issue discovery and undertake a Rule 2004 examination of the Records Custodian(s) of the ICSP.

Dated: January 29, 2021
New York, NY

Respectfully submitted,

/s/Scott S. Markowitz

**TARTER KRINSKY & DROGIN LLP**

Scott S. Markowitz
1350 Broadway, 11th Floor
New York, NY 10018
Telephone: 212-216-8000
Facsimile: 212-216-8001
Email: smarkowitz@tarterkrinsky.com

**MARTZELL, BICKFORD & CENTOLA**

Scott R. Bickford (LA 1165)
Spencer R. Doody (LA 27795)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com
srd@mbfirm.com
usdcndoh@mbfirm.com

**CREADORE LAW FIRM PC**

450 Seventh Avenue, 14th Floor
New York, NY 10123
Telephone: 212.355.7200
Donald Creadore, Esq. (NY 2090702)
donald@creadorelawfirm.com

**LAW OFFICES OF KENT HARRISON ROBBINS, P.A.**

242 Northeast 27th Street
Miami, Florida 33137
Telephone: (305) 532-0500
Facsimile: (305) 531-0150
khr@khrlawoffices.com

**EXHIBIT A**

REQUESTS FOR PRODUCTION – Rule 2004 Motion, Exhibit A.

NAS Ad Hoc Children ask that ICSPs please produce the following:

1. Any and all Preclinical Toxicology Studies in the possession of Mundipharma involving synthetic opioids including but not limited to reproductive toxicology studies, preclinical neurobehavioral studies, non-GLP studies, studies not disclosed to regulators (federal, state, foreign), studies in support of New Drug Applications, Ames tests, genotoxicity tests or chromosomal aberrations.

2. Please produce any and all emails, memos, presentations, white papers and other materials  related to request for production 1, together with the full name of the author(s), recipient(s), custodian(s), and date and purpose of each.  Please provide any and all draft versions, final versions and published versions of each listed document.  Also, please provide any and all memos, emails, internal reports, communications with regulators (federal, state, foreign) or other information  that refers to teratogenic or neonatal effects of opioid drugs.

**EXHIBIT B**
**(Redacted)**

# EXHIBIT C

**TARTER KRINSKY & DROGIN**
*Counsel for NAS Children Ad Hoc Committee*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------
                                                      :
In re:                                                :    Chapter 11
                                                      :
PURDUE PHARMA L.P., *et al*.,                         :    Case No. 19-23649 (RDD)
                                                      :
                                      Debtors.[1]     :    (Jointly Administered)
                                                      :
------------------------------------------------------------------------

**ORDER PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004
AUTHORIZING EXAMINATIONS AND DOCUMENT PRODUCTIONS**

Upon the motion (the "Motion") dated December 1, 2020 of the NAS Children  Ad Hoc

Committee (the "NAS Children Ad Hoc") for an order pursuant to Fed. R. Bankr. P. 2004 and

9016 authorizing the examinations and discovery described therein; and the Court having

jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the Motion

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this District

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014).

pursuant to 28 U.S.C. §§ 1408 and 1409; and no additional notice being required except as

provided herein; and, after due deliberation, good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as provided herein.

2. That, pursuant to Fed. R. Bankr. P. 2004, to conduct examinations of, including, without

   limitation, by seeking electronically stored information and other documents identified in

   **Exhibit A** (NAS Children Ad Hoc Discovery Requests) from, as the case may be, the

   Debtors or the ICSPs, defined in the Motion as Purdue Pharma LLP and related entities,

   including Mundipharma and identified IACs (collectively, the "Producing Parties").

3. The examinations and document production required hereby shall be subject to the assertion

   of applicable privilege; provided, that if a document required to be produced hereby is

   withheld on the basis of an asserted privilege, the Party withholding such document shall

   provide a proper privilege log at the time of production hereunder.

4. NAS Children Ad Hoc, and the Producing Parties shall meet and confer not only to attempt in

   good faith to resolve any disputes over any Subpoenas but also to efficiently coordinate the

   issuance of and compliance with the Subpoenas. In furtherance of the foregoing, on a going

   forward basis these parties with the exception of the Producing Parties shall record all time and

   expenses on this discovery matter and report the aggregate sum to each other on a weekly basis

   and also on a weekly basis discuss any cost containment issues.

5. This court retains jurisdiction with respect to all matters arising from or relating to
   implementation of this order.

Dated: January __, 2021
White Plains, New York

_____
The Honorable Robert D Drain
United States Bankruptcy Judge

# EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*, | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**SECOND STIPULATION AND AGREED ORDER AMONG THE OFFICIAL**
**COMMITTEE AND THE STIPULATING IACs**
**REGARDING DISCOVERY DEADLINES IN THE CHAPTER 11 CASES**

The Official Committee of Unsecured Creditors (the "**Official Committee**")[2] appointed in

the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of Purdue Pharma L.P. and certain

of its affiliates that are debtors in possession (collectively, the "**Debtors**"), and the Independent

Associated Companies (the "**IACs**") party hereto (the "**Stipulating IACs**"), by and through their

undersigned counsel, hereby stipulate and agree as set forth below in this stipulation and agreed

order (the "**Stipulation**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).
[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the *Stipulation and Agreed Order among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases*, dated June 22, 2020 [ECF No. 1346].

## Recitals

A.      On September 15, 2019, each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

B.      On September 26, 2019, the Office of the United States Trustee for Region 2 appointed the Official Committee pursuant to Bankruptcy Code section 1102(a) to act as a fiduciary for and represent the interests of all unsecured creditors in the Chapter 11 Cases. *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated September 27, 2019 [ECF No. 131].

C.      On March 25, 2020, the Official Committee filed the *Ex Parte Motion of the Official Committee of Unsecured Creditors of Purdue Pharma, et al. for an Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [ECF No. 981], which motion was granted by order of the Court on March 27, 2020 [ECF No. 992] (as amended by the *Amended Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006 Authorizing Examination of Third Parties*, dated April 14, 2020 [ECF No. 1008], the "**Official Committee Rule 2004 Order**").   By the Official Committee Rule 2004 Order, the Court authorized the Official Committee (and certain other parties), to conduct an examination of, and obtain documents (including electronically stored information ("**ESI**")) from the Initial Covered Sackler Persons ("**ICSPs**").   Following entry of the Official Committee Rule 2004 Order, the Official Committee issued subpoenas to the ICSPs on March 31, 2020.

2

D.      On April 26, 2020, the Official Committee, through its counsel Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**"), submitted a letter to the Court seeking resolution of certain discovery disputes, including disputes relating to production of documents relating to the IACs.

E.      During a hearing on May 1, 2020, the Court directed counsel for the ICSPs to instruct the IACs, entities which the ICSPs directly or indirectly own, to appoint counsel to coordinate with the Official Committee regarding discovery in these cases, and to instruct each to accept service of a subpoena or explain why they cannot. Hearing Tr. at 87-88.

F.      On or around May 5, 2020, the ICSPs relayed the Court's instructions to Bryan Lea, who is employed by Mundipharma International Limited, one of the IACs, and acts as global (ex-United States) General Counsel for other IACs.

G.      On June 22, 2020, the Official Committee and the IACs party thereto executed a Stipulation and Agreed Order Among the Official Committee and the Stipulating IACs Regarding Discovery Deadlines in the Chapter 11 Cases, which was so ordered by the Court on July 7, 2020 (the "**First Discovery Stipulation**") [ECF Nos. 1295, 1346] pertaining to various discovery issues. All obligations under the First Discovery Stipulation continue unless expressly eliminated or modified.

H.      Royer Cooper Cohen Braunfeld LLC ("**RCCB**") has, in accordance with the Parties' First Discovery Stipulation, completed its due diligence with respect to identifying IACs and advises it was retained by 159 IACs, and will continue to investigate additional potential IACs about which the Official Committee may inquire.

3

I.       As of June 30, 2020, RCCB advises that it has been authorized by 136 IACs to accept service of subpoenas on their behalf,  as set forth in the Master IAC List that RCCB prepared in accordance with the First Discovery Stipulation (the "**Master List**").

J.       The First Discovery Stipulation required the Official Committee, on or before June 30, 2020, to provide RCCB with a draft of the subpoena (the "**Draft Subpoena**") that the Official Committee intended to serve on IACs.  On June 26, 2020, the Official Committee fulfilled this obligation (the "**Delivery Date**").  The Draft Subpoena substantially comprised the items contained in the Official Committee's March 31, 2020 subpoenas on the ICSPs that were highlighted for RCCB by the Committee on May 25, 2020, and by counsel for the ICSPs on May 5, 2020.  As mandated by the First Discovery Stipulation, on the Delivery Date the Official Committee also identified for RCCB the items of the Draft Subpoena that the Official Committee considers to be the priority requests, (the "**Priority Requests**"), without waiving or withdrawing any other requests including the balance of the requests in the Draft Subpoena (the "**Remaining Requests**").

K.       On July 7, 2020, pursuant to the First Discovery Stipulation, the Stipulating IACs provided to the Official Committee a spreadsheet that included (i) 41 individuals that the Stipulating IACs identified as all of the individuals included on Exhibit A to the Official Committee's June 14, 2020 email to RCCB [ECF No. 1295, Exh. 1] who have or have had an IAC-hosted email account, with the exception of four individuals included on Exhibit A to the Official Committee's June 14, 2020 email to RCCB [ECF No. 1295, Exh. 1] that the Parties have since determined also have or have had an IAC-hosted email account, and (ii) nine additional individuals

4

whose IAC-hosted email accounts the IACs believe are likely to include information responsive to the Draft Subpoena.

L.      The Parties have conferred, and will continue to confer, in good faith on a variety of matters with respect to the Chapter 11 Cases and have reached the agreements set forth below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1.      On July 6, 2020, the Official Committee provided by email to RCCB a copy of the final form of its subpoena on the IACs (the "**IAC Subpoena**"), which was substantially identical to the Draft Subpoena delivered to RCCB on June 26, 2020.

2.      For the avoidance of doubt, the IAC Subpoena includes each of the Priority Requests and the Remaining Requests as defined in the First Discovery Stipulation and identified for RCCB by the Official Committee on the Delivery Date.  On July 6, 2020, the date on which the Court entered its order authorizing the Official Committee to conduct an examination of the IACs, the IAC Subpoena was deemed to have been served on each IAC identified on the IAC Master List as having authorized RCCB to accept service on its behalf.  The Official Committee may in its sole discretion withdraw its service of the IAC Subpoena on any Stipulating IAC by written notice to RCCB, which notice may be in the form of an email.

3.      A Stipulating IAC's willingness to enter into this Stipulation and to accept service of a subpoena and/or comply with the Official Committee's discovery requests and the Court's rulings or instructions concerning discovery disputes with the Official Committee shall not be, and shall not be construed as, (i) consent by a Stipulating IAC, to jurisdiction in the Bankruptcy Court

5

or any other forum in the United States for any purpose other than enforcement of such subpoena and this Stipulation; (ii) an agreement regarding the admissibility of any materials produced; or (iii) a waiver by a Stipulating IAC of jurisdictional defenses or objections to the service of any subpoena or other documents or process, provided, however, that a Stipulating IAC that consents to service of a subpoena pursuant to the Court's May 1 instructions and as identified on the Master IAC List waives its right to object on the grounds of improper service to any subpoena delivered by counsel to the Official Committee to such Stipulating IAC's counsel. For the avoidance of doubt, the Official Committee does not waive or otherwise relinquish its right to argue that a Stipulating IAC is subject to jurisdiction in any forum in the United States for any purpose, including the Bankruptcy Court, on any grounds other than such Stipulating IAC's consent to the terms of this stipulation and/or agreement to accept service of a subpoena as set forth herein.

## I. __Identification of Custodians__

4.      The Official Committee and the Stipulating IACs have identified thirty one (31) custodians (the "**Phase I Custodians**"), each of whom is likely to have ESI, as defined in Section II below, responsive to the IAC Subpoena.

5.      Fifteen of the Phase I Custodians have email accounts which are housed exclusively in a Microsoft Office 365 exchange server (the "__Initial Phase I Custodians__").

6.      The balance of Phase I Custodians (the "__Remaining Phase I Custodians__") have email accounts which are housed across several different email servers or archive environments, which include Office 365, locally-hosted email exchanges which were established for particular IACs over time, Enterprise Vault, and a handful of locally-maintained back up storage volumes.

6

7.      Attached hereto and incorporated herein as Appendix A is the Phase I Custodian ESI inventory, which was prepared by the Stipulating IACs to represent the amount, distribution, and location of the email data for each of the Phase I Custodians that is now available, as well as certain historical context respecting the hosting and retention practices for IAC emails.

8.      The Phase I Custodians set forth in Appendix A shall not be construed as an express or implied limitation on the final list of custodians to be identified for the IACs.

9.      On or before July 31, 2020, the Parties will complete their meet and confer efforts to identify a list of additional custodians (the "**Phase II Custodians**") who are likely to have information responsive to the IAC Subpoena from whom the Stipulating IACs will collect ESI, as defined in Section II below (collectively, the Phase I Custodians and the Phase II Custodians, are referred to herein as the "**Final IAC Custodians**").  If the Parties have not reached an agreement on the list of Final IAC Custodians by that date, either side may apply to the Court for relief pursuant to paragraph 36 below.

## II.      **Identification and Production of ESI**

10.      For the purposes of this Stipulation, "**ESI**" shall mean emails and electronic documents, text messages, and other forms of electronic messages, to the extent such emails and electronic documents, text messages, and other forms of electronic messages, are in the possession, custody or control of the Stipulating IACs, including all available attachments to and metadata regarding such emails and electronic documents, text messages, and other forms of electronic messages.  Counsel for the Stipulating IACs shall (i) make a good faith inquiry to identify and (ii) shall engage in reasonable searches to collect available ESI from all means of electronic

7

communication used by the Final IAC Custodians, including by retrieving ESI from current or former company servers and phones and back up tapes as relevant.

11.     By July 24, 2020, RCCB shall have gathered, and made ready for running search terms against, all available ESI in the possession, custody or control of the Stipulating IACs for the Initial Phase I Custodians and all ESI contained in the Microsoft Office 365 email server referenced in paragraph 5 for the Remaining Phase I Custodians (collectively the "**Initial IAC ESI**").

12.     By July 31, 2020, RCCB shall have gathered, and made ready for running search terms against, all ESI in the possession, custody or control of the Stipulating IACs for the Remaining Phase I Custodians, which was not initially captured as Initial IAC ESI (the "**Remaining Phase I Custodian ESI**").  The Initial IAC ESI and the Remaining Phase I Custodian ESI shall be collectively referred to herein as "**Phase I Custodian ESI**."

13.     The dates for collection of the Phase I Custodian ESI, except as the Parties may agree or the Court may order with respect to any particular custodians or categories of custodians, shall be whatever Phase I Custodian ESI is available from January 1, 2006 to March 31, 2020, for the Phase I Custodians, except for the following: Mortimer D.A. Sackler, Craig Landau, Stuart Baker, Theresa Sackler, Samantha Hunt, David Sackler, Kathe Sackler, Ake Wikstrom, and Karen Reimer (collectively the "**Extended History Phase I Custodians**").  The dates for collection of Phase I Custodian ESI for the Extended History Phase I Custodians shall be whatever Phase I Custodian ESI is available from January 1, 1996, until March 31, 2020.

14.     The following schedule shall govern the search for and production of Phase I

8

Custodian ESI.  On or before:

    a.  **July 24, 2020:**  The Official Committee will identify initial search terms that RCCB will run against the Initial IAC ESI (the "**Initial Phase I Search Terms**").

    b.  **July 27, 2020:**  RCCB shall generate and provide to Akin Gump a search term hit report for the Initial Phase I Search Terms run against the Initial IAC ESI that details the number of documents returned, after using electronic deduplication methods and email threading that eliminate only true duplicates.

    c.  **August 4, 2020:** RCCB shall generate and provide to Akin Gump a search term hit report for the Initial Phase I Search Terms run against the Remaining Phase I Custodian ESI that details the number of documents returned, after using electronic deduplication methods and email threading that eliminate only true duplicates.

    d.  **July 27, 2020 — August 10, 2020:**  Counsel for the Parties will meet and confer regarding the results of the Initial Phase I Search Terms run against the Initial IAC ESI and the Remaining Phase I Custodian ESI.  Unless the Parties otherwise agree in writing (which may be in the form of an email exchange), RCCB shall provide to Akin Gump hit reports for any revisions to the Initial Phase I Search Terms that Akin Gump may propose within 3 business days of receiving such revised search terms from Akin Gump.

    e.  **August 10, 2020:**  Final search terms for the Phase I Custodian ESI (the "**Final Phase I Search Terms**") shall be agreed among the Parties by August 10, 2020.  If the Parties have not reached an agreement by that date, either side may apply to the

9

Court for relief pursuant to paragraph 36 below.

15.     If the Final Phase I Search Terms return, collectively, fewer than 300,000 unique documents from the Phase I Custodians,[3] upon the Official Committee's written request for the Stipulating IACs to commence their review and production, which may be in the form of an email, responsive, non-privileged Phase I Custodian ESI shall be produced on a rolling basis, and the Stipulating IACs shall complete the review and production of such documents within 37 calendar days of the Official Committee's written request.

16.     If the Final Phase I Search Terms return, collectively, more than 300,000 documents but fewer than 500,000 unique documents from the Phase I Custodians, upon the Official Committee's written request for the Stipulating IACs to commence their review and production, which may be in the form of an email, responsive, non-privileged documents shall be produced on a rolling basis, and the Stipulating IACs shall complete the review and production of responsive, non-privileged documents (i) from at least 300,000 of such unique documents within 37 calendar days of the Official Committee's written request, and (ii) from the remaining documents within 52 calendar days of the Official Committee's written request.

17.     If the Final Phase I Search Terms return, collectively, more than 500,000 documents but fewer than 750,000 unique documents from the Phase I Custodians, upon the Official Committee's written request for the Stipulating IACs to commence their review and

---

[3] IAC Search Terms that return documents within the threshold identified in paragraph 15 (fewer than 300,000 unique documents) shall be presumptively acceptable to the Parties. However, the Stipulating IACs reserve the right to seek relief from the Court if they object to using any particular Search Terms. Provided that the Stipulating IACs raise any objection to the Court within three calendar days of notification that the Official Committee consents to the use of particular Search Terms, all deadlines respecting the review and production of Phase I Custodian ESI shall be automatically stayed until the Court has resolved the Stipulating IACs' objection.

production, which may be in the form of an email, responsive, non-privileged documents shall be produced on a rolling basis, and the Stipulating IACs shall complete the review and production of responsive, non-privileged documents (i) from at least 300,000 of such unique documents within 37 calendar days of the Official Committee's written request, (ii) from another 200,000 documents within 52 calendar days of the Official Committee's written request, and (iii) from the remaining documents within 67 calendar days of the Official Committee's written request..

18. The Parties will work in good faith to attempt to agree to Final Phase I Search Terms which, collectively, return fewer than 750,000 documents from the Phase I Custodians.

19. If the Parties agree to Final Phase I Search Terms which, collectively, return more than 750,000 unique documents from the Phase I Custodians, the Parties shall meet and confer to try to agree to a date for substantial completion of rolling productions of Phase I Custodian ESI in excess of 750,000 unique documents.

20. If the Official Committee requests the use of Final Phase I Search Terms that, collectively, return in excess of 750,000 unique documents and if the Stipulating IACs do not agree on such Final Phase I Search Terms, or if the Stipulating IACs do agree on such terms but the Parties cannot agree on a date for completion of review and production of the Phase I Custodian ESI in excess of 750,000 unique documents, they may raise their dispute promptly to the Court in accordance with paragraph 36.

21. By August 14, 2020, RCCB shall have gathered, and made ready for running search terms against, all available ESI in the possession, custody or control of the Stipulating IACs for the Phase II Custodians (the "**Phase II Custodian ESI**").  For the avoidance of doubt, Phase II

11

Custodian ESI shall also include any Phase I Custodian ESI which was inadvertently missed during the initial collection of the Phase I Custodian ESI.

22.     The following schedule shall govern the search for and production of Phase II Custodian ESI.  On or before:

    a.  **August 18, 2020:**  RCCB shall generate and provide to Akin Gump a search term hit report for the Final Phase I Search Terms run against the Phase II Custodian ESI that details the number of new documents returned, after using electronic deduplication methods and email threading, that eliminate only true duplicates.  The report will only include unique hits for the Phase II Custodian ESI.

    b.  **August 18, 2020 — August 25, 2020:**  Counsel for the Parties will meet and confer regarding the results of the search term reports for the Phase II Custodian ESI. Unless the Parties otherwise agree in writing (which may be in the form of an email exchange), RCCB shall provide to Akin Gump hit reports for any revisions to the Final Phase I Search Terms that Akin Gump may propose for application to the Phase II Custodian ESI within 3 calendar days of receiving such revised search terms from Akin Gump.

    c.  **August 25, 2020:**  Final search terms for the Phase II Custodian ESI (the "**Final Phase II Search Terms**") shall be agreed among the Parties.  If the Parties have not reached an agreement by that date, either side may apply to the Court for relief pursuant to paragraph 36 below.

12

23.     The Parties will work in good faith to attempt to agree to Final Phase II Search Terms that will result in the review of fewer than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI.  To illustrate, if the Phase I Search Terms collectively return 300,000 unique documents from the Phase I Custodians, then the Parties will work in good faith to attempt to agree to Final Phase II Search Terms that will result in fewer than 700,000 unique documents from the Phase II Custodian ESI.

24.     If the Parties agree to Final Phase II Search Terms that will result in the review of more than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI, the Parties shall meet and confer to try to agree to dates for rolling productions of responsive, non-privileged Phase II Custodian ESI, which shall, in all events, be completed by October 15, 2020.

25.     If (i) the Official Committee requests the use of Final Phase II Search Terms that will result in the review of more than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI but the Stipulating IACs do not agree on such Final Phase II Search Terms, or (ii) the Parties agree to Final Phase II Search Terms that will result in the review of more than 1,000,000 unique documents for both the Phase I Custodian ESI and the Phase II Custodian ESI but the Parties cannot agree on a date for completion of review and production of the Phase II Custodian ESI, the Parties may raise their dispute promptly to the Court in accordance with paragraph 36.

III.    **Identification of Information Responsive to IAC Subpoena by Means other than Electronic Searching**

26.     On or before August 3, 2020, RCCB shall provide by email to counsel for the

Official Committee the Stipulating IACs' objections and responses to the IAC Subpoena (the "**Objections and Responses**").

27.     On or before August 3, 2020, RCCB shall also, subject to the Objections and Responses, make an initial, good-faith production (the "**Initial Non-ESI Production**") of non-privileged documents and information that are responsive to the Priority Requests that may be gathered through targeted document gathering as opposed to ESI searches ("**Non-ESI Searches**").

28.     Subject to the Objections and Responses, unless otherwise ordered by the Court or agreed to by the Parties, subsequent non-ESI productions ("**Subsequent Non-ESI Productions**") (the Initial Non-ESI Production and the Subsequent Non-ESI Productions are collectively referred to herein as the "**Non-ESI Productions**") will be made available on a rolling basis as additional Non-ESI Searches are undertaken.  All Non-ESI Searches and Non-ESI Productions shall be substantially completed by September 18, 2020.

29.     Non-ESI Searches shall be used for the collection of responsive materials for the period January 1, 2008 to March 31, 2020, including for IAC Subpoena Requests Nos. 48 and 49, with the exception of (i) documents responsive to IAC Subpoena Requests Nos. 3 and 4, which shall be collected and produced for the period January 1, 1996 to March 31, 2020, and (ii) as the Parties may otherwise agree or as the Court may order with respect to any particular Request(s) or categories of Requests.

30.     Between August 3, 2020 and September 18, 2020, the Parties shall meet and confer regarding the IAC Subpoena and the Objections and Responses in connection with the Non-ESI Productions that are responsive to the Priority Requests to be collected through Non-ESI Searches.

14

If the Parties are unable to resolve all disputes concerning the Non-ESI Productions for information responsive to the Priority Requests by September 18, 2020, either side may thereafter apply to the Court for relief pursuant to paragraph 36 hereof.

31.     Between September 18, 2020 and October 2, 2020, the Parties shall meet and confer regarding the IAC Subpoena and Objections and Responses in connection with the Non-ESI Searches for information responsive to the Remaining Requests.  If the Parties are unable to resolve all disputes concerning such searches by October 2, 2020, either side may thereafter apply to the Court for relief pursuant to paragraph 36 hereof.

**IV.**     **Privilege Logs**

32.     Responsive documents that are withheld or redacted for privilege or similar reasons shall be logged in accordance with Federal Rule of Bankruptcy Procedure 7026(b)(5).  The Parties agree to meet and confer regarding the format and contents of privilege logs during the week of August 10, 2020.

33.     Privilege logs shall be provided within 15 calendar days of the ordered or agreed substantial completion date for each such production and shall include all documents identified as privileged or potentially privileged and withheld from production or redacted on that or any other basis up to such ordered or agreed substantial completion date.

**V.**     **Miscellaneous**

34.     The Parties will meet and confer in an effort to agree on an approach or approaches for obtaining information from or relating to each IAC on the IAC Master List that has not authorized RCCB to accept service of a subpoena on its behalf.  If the Parties are unable to reach

15

agreement on such an approach or approaches by August 3, 2020, either party may seek relief from

the Court pursuant to paragraph 36 hereof.

35.     Any Party to this Stipulation may request an extension from the other Party of any

deadline set forth herein for good cause, the standard applicable to requests to modify a scheduling

order under Federal Rule of Civil Procedure 16.  Such requesting Party shall provide to the other

Party a brief statement (which may take the form of an email) that sets forth the requesting Party's

cause for the requested extension.  Upon receipt of such statement, the receiving Party shall

consent to the extension request if it determines in good faith and considering all of the

circumstances, that good cause exists for the requested extension.  The Parties may agree to modify

any deadline in this Stipulation without further order of the Court provided they do so in writing,

which may take the form of an email.  For the avoidance of doubt, all deadlines provided in this

Stipulation shall be binding unless modified by agreement of the parties, or order of the Court

upon a finding of good cause.

36.     In the event the Parties have disputes concerning the matters addressed in this

Stipulation, including but in no way limited to the modification of any deadlines set forth herein,

they may seek a discovery conference by submitting a letter to the Court, not to exceed three

single-spaced pages, containing a representation to the Court of the kind described in Rule 7001-

7 of the Local Bankruptcy Rules.  The opposing Party may respond within three calendar days

with a letter not to exceed three single-spaced pages.  In addition, the Parties agree that any dispute

may be heard on an emergency basis, subject to Court availability.

16

37.     Productions of documents and privilege logs in accordance with this Stipulation shall be made simultaneously to the Official Committee, the Debtors, the Ad Hoc Group of Non-Consenting States (as set forth in the verified statement pursuant to Bankruptcy Rule 2019 [ECF No. 296]), and the ad hoc committee of governmental and other contingent litigation claimants (as set forth in the verified statement pursuant to Bankruptcy Rule 2019 [ECF No. 279]), consistent with past practice in the Chapter 11 Cases.  For the avoidance of doubt, nothing in this Stipulation shall affect, change, or prejudice any Party's rights or obligations under any protective order governing the materials produced, including any Party's right to seek to amend the protective order or otherwise obtain authorization to provide information supplied pursuant to this Stipulation to persons other than those listed in this paragraph 36.  Nor shall anything in this Stipulation affect, change or prejudice any Party's rights or obligations under Rule 7026(b)(5)(B) of the Federal Rules of Bankruptcy Procedure.

38.     The Official Committee reserves its right to seek additional documents and information, including ESI, from the Stipulating IACs, whether based on information that may be produced in accordance with this Stipulation or otherwise, and the Stipulating IACs reserve their right to oppose any such request for additional searches and productions.


[*The remainder of this page has been left blank intentionally.*]

17

**STIPULATED AND AGREED:**

Dated:     July 22, 2020
               New York, New York

*/s/ Mitchell Hurley*                                    */s/ Marc E. Hirschfield*
AKIN GUMP STRAUSS HAUER          ROYER COOPER COHEN BRAUNFELD
& FELD LLP                                          LLC
Ira Dizengoff                                       Marc E. Hirschfield
Arik Preis                                            Marc Skapof
Mitchell Hurley                                  1120 Avenue of the Americas, 4th FL
Joseph L. Sorkin                                New York, NY 10036
Sara L. Brauner                                  Telephone: (212) 994-0451
One Bryant Park
Bank of America Tower                       *Counsel to the Stipulating IACs*
New York, New York 10036
Telephone: (212) 872-1000


*Counsel to the Official Committee of
Unsecured Creditors*


**SO ORDERED.**

Dated:  July 24, 2020                          */s/ Robert D. Drain*
            White Plains, New York           THE HONORABLE ROBERT D. DRAIN
                                                            UNITED STATES BANKRUPTCY JUDGE

18

# Appendix A

[Redacted]

**EXHIBIT E**

OFFSHORE LEAKS DATABASE

We believe this data should be publicly–available, and we need your support to keep it that way.      ✖

Make a donation and help us keep it free, online and accessible.

| Search the full Offshore Leaks database |   SEARCH |

OFFICER
# Sackler - Mortimer D.                                                        🐦   f   </>

Connected to **1 entity**

- 📍 Linked countries: Austria, United States
- 🔒 Data from: Paradise Papers - Appleby
- ❶ Appleby data is current through 2014
- 🔍 Search in opencorporates
- 💬 Got a tip? Help ICIJ investigate: contact us or leak to us securely



| MERGANSER LIMITED | ✖ |
| --- | --- |
| Merganser Limited | |
| **Jurisdiction** | |
| Bermuda | |
| **Incorporation Date** | |
| 14-DEC-1998 | |
| **Linked To** | |
| Bermuda | |
| **Data From** | |
| Paradise Papers - Appleby | |

Merganser Limited

Sackler - Mortimer D.

Category
- ● Officer
- ● Entity

Database powered by Neo4j. What is it?

CONNECTIONS ❶

## Entity



| | From | To | Incorporation | Jurisdiction | Status | Data From |
| --- | --- | --- | --- | --- | --- | --- |
| Merganser Limited | - | - | 14-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |

**OFFSHORE LEAKS DATABASE**
by The International Consortium of Investigative Journalists

ABOUT     DOWNLOAD     SUPPORT US

We believe this data should be publicly-available, and we need your support to keep it that way.
Make a donation and help us keep it free, online and accessible.   ✖

Search the full Offshore Leaks database     SEARCH

ENTITY

# Merganser Limited

🐦   f   </>

Connected to **2 addresses**

Connected to **13 officers**

Connected to **1 other**

📅 Incorporated: **14-DEC-1998** ❶
📅 Closed: **01-OCT-2009** ❶
📍 Registered in: Bermuda
📍 Linked countries: Bermuda
🔖 Data from: Paradise Papers - Appleby
👤 Agent: **Appleby**
❶ Appleby data is current through 2014
🔍 Search in opencorporates
💬 Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
● Officer
● Address
● Entity
● Other

Database powered by Neo4j. What is it?

**CONNECTIONS** ❶

| | Role | From | To | Data From |
|---|---|---|---|---|
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Business address; residential address | - | - | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Montarsolo - Marco L | Vice-president | 10-SEP-2004 | 24-FEB-2006 | Paradise Papers - Appleby |
| Montarsolo - Marco L | Director | 10-SEP-2004 | 24-FEB-2006 | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Erskine - Alex J | Vice-president | 03-DEC-2008 | 01-OCT-2009 | Paradise Papers - Appleby |
| Erskine - Alex J | Director | 03-DEC-2008 | 01-OCT-2009 | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Business address; residential address | - | - | Paradise Papers - Appleby |
| Carter - Linda L | Secretary | 14-DEC-1998 | 22-JUL-2010 | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Business address; residential address | - | - | Paradise Papers - Appleby |
| Collis - Judith | Vice-president | 24-FEB-2006 | 03-DEC-2008 | Paradise Papers - Appleby |
| Collis - Judith | Director | 14-DEC-1998 | 03-DEC-2008 | Paradise Papers - Appleby |
| Docherty - Douglas | Vice-president | 15-OCT-2009 | 22-JUL-2010 | Paradise Papers - Appleby |
| Docherty - Douglas | Director | 14-DEC-1998 | 22-JUL-2010 | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Business address; residential address | - | - | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Goras - Fiona Adenike | Is signatory for | - | - | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Keyes - James Michael | Vice-president | 14-DEC-1998 | 18-JUN-2003 | Paradise Papers - Appleby |
| Keyes - James Michael | President | 18-JUN-2003 | 22-JUL-2010 | Paradise Papers - Appleby |
| Keyes - James Michael | Director | 14-DEC-1998 | 22-JUL-2010 | Paradise Papers - Appleby |

## Address

| | Data From |
|---|---|
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton HM 12; Bermuda | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Paradise Papers - Appleby |
| Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda | Paradise Papers - Appleby |

OFFSHORE LEAKS DATABASE

We believe this data should be publicly–available, and we need your support to keep it that way.   ✖

Make a donation and help us keep it free, online and accessible.

| Search the full Offshore Leaks database | SEARCH |

OTHER

# Mundipharma Group

Connected to **37 entities**

- 📍 Linked countries: Bermuda
- 🔒 Data from: Paradise Papers – Appleby
- ℹ️ **Appleby data is current through 2014**
- 💬 Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
- ● Entity
- ● Other

Database powered by Neo4j. What is it?

## CONNECTIONS ℹ️

### Entity

| | Role | From | To | Incorporation | Jurisdiction | Status | Data From |
|---|---|---|---|---|---|---|---|
| Transworld Pharma Limited | Connected to | - | - | 19-DEC-2006 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Corporation Limited | Connected to | - | - | 23-JUN-2006 | Bermuda | - | Paradise Papers - Appleby |

| ational Limited | | | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
|---|---|---|---|---|---|---|
| nitee | Connected to | - | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Limited | Connected to | - | - | 13-OCT-1990 | Bermuda | - | Paradise Papers - Appleby |
| B.I. Carrolton Limited | Connected to | - | - | 13-DEC-1990 | Bermuda | - | Paradise Papers - Appleby |
| The Research Foundation Ltd. | Connected to | - | - | 18-DEC-1987 | Bermuda | - | Paradise Papers - Appleby |
| Aerolab Limited | Connected to | - | - | 05-OCT-1992 | Bermuda | - | Paradise Papers - Appleby |
| Tom Pharmaceuticals Limited | Connected to | - | - | 01-SEP-1993 | Bermuda | - | Paradise Papers - Appleby |
| Bormac Limited | Connected to | - | - | 09-JUN-1995 | Bermuda | - | Paradise Papers - Appleby |
| Margannar Limited | Connected to | - | - | 14-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |
| Sheldrake Limited | Connected to | - | - | 15-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma Research Company Limited | Connected to | - | - | 21-DEC-1999 | Bermuda | - | Paradise Papers - Appleby |
| NC Pharmaceutical Company | Connected to | - | - | 27-JUL-1999 | Bermuda | - | Paradise Papers - Appleby |
| MNR Company | Connected to | - | - | 01-APR-1993 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma Company | Connected to | - | - | 21-APR-1993 | Bermuda | - | Paradise Papers - Appleby |
| Nice Cosmetics and Toiletries Company | Connected to | - | - | 14-DEC-1993 | Bermuda | - | Paradise Papers - Appleby |
| JSC Company | Connected to | - | - | 31-DEC-1993 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma Pharmac... ...mpany | Connected to | - | - | 16-NOV-1984 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma... | Connected to | - | - | 01-MAR-1991 | Bermuda | - | Paradise Papers - Appleby |

Show all conn...

SEE ALL
POWER PLAYERS

## ABOUT THIS DATABASE

This ICIJ database contains information on more than 785,000 offshore entities that are part of the Panama Papers, the Offshore Leaks, the Bahamas Leaks and the Paradise Papers Investigations. The data covers nearly 80 years up to 2016 and links to people and companies in more than 200 countries and territories.

* About this data
* About ICIJ
* FAQ
* Download
* Data sources
* How to use this database
* Credits

## DISCLAIMER

There are legitimate uses for offshore companies and trusts. We do not intend to suggest or imply that any people, companies or other entities included in the ICIJ Offshore Leaks Database have broken the law or otherwise acted improperly. Many people and entities have the same or similar names. We suggest you confirm the identities of any individuals or entities located in the database based on addresses or other identifiable information. If you find an error in the database please get in touch with us.

## DOWNLOAD DATA

The ICIJ Offshore Leaks Database is licensed under the Open Database License and contents under Creative Commons Attribution-ShareAlike license. Always cite the International Consortium of Investigative Journalists when using this data. You can download a raw copy of the database here.

SUPPORT US

Help ICIJ investigate

ABOUT US

**OFFSHORE LEAKS DATABASE**
by The International Consortium of Investigative Journalists

ABOUT     DOWNLOAD     SUPPORT US

We believe this data should be publicly-available, and we need your support to keep it that way.
Make a donation and help us keep it free, online and accessible.    ✕

| Search the full Offshore Leaks database | SEARCH |

ADDRESS
# Mundipharma House; 14 Par-La-Ville Road; Hamilton HM 11; B⟨ ⟩

Connected to **6 officers**
Connected to **5 entities**

- ⚲ Linked countries: Bermuda
- ⚑ Data from: Paradise Papers - Appleby
- ⓘ Appleby data is current through 2014
- ▥ View in Google Maps
- ⬚ Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
- ● Officer
- ▦ Address
- ● Entity

Database powered by Neo4j. What is it?

CONNECTIONS ⓘ

## Entity

| | Role | From | To | Incorporation | Jurisdiction | Status | Data From |
|---|---|---|---|---|---|---|---|

| | Role | From | To | | Country | | Data From |
|---|---|---|---|---|---|---|---|
| TK International Limited | Business address | - | | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| TK International Limited | Is signatory for | - | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| TK International Limited | Is signatory for | - | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| TK International Limited | Director | 02-FEB-2005 | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| TK International Limited | Vice-president | 15-OCT-2009 | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| Laysan Limited | Business address | - | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| Laysan Limited | Is signatory for | - | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| Laysan Limited | Is signatory for | - | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| Laysan Limited | Vice-president | 15-OCT-2009 | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| Laysan Limited | Director | 02-FEB-2005 | - | 01-FEB-2005 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Business address | - | - | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Is signatory for | - | - | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Is signatory for | - | - | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Shareholder | - | - | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Shareholder | - | - | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Vice-president | 15-OCT-2009 | - | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Director | 28-JUL-1997 | 14-APR-2000 | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Director | 28-JUL-1997 | - | 16-OCT-1987 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Business address | - | - | 27-OCT-2000 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Is signatory for | - | - | 27-OCT-2000 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Is signatory for | - | - | 27-OCT-2000 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Director | 30-OCT-2000 | - | 27-OCT-2000 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Vice-president | 16-OCT-2009 | - | 27-OCT-2000 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma Company | Registered office | - | - | 21-APR-1993 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma Company | Is signatory for | - | - | 21-APR-1993 | Bermuda | - | Paradise Papers - Appleby |

## Officer

| | Role | From | To | Data From |
|---|---|---|---|---|
| Docherty - Douglas | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| TK International Limited | Is signatory for | - | - | Paradise Papers - Appleby |
| TK International Limited | Director | 02-FEB-2005 | - | Paradise Papers - Appleby |
| TK International Limited | Vice-president | 15-OCT-2009 | - | Paradise Papers - Appleby |
| Laysan Limited | Is signatory for | - | - | Paradise Papers - Appleby |
| Laysan Limited | Vice-president | 15-OCT-2009 | - | Paradise Papers - Appleby |
| Laysan Limited | Director | 02-FEB-2005 | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Is signatory for | - | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Shareholder | - | - | Paradise Papers - Appleby |

7/2/2018  Mundipharma House; 14 Par-La-Ville | ICIJ Offshore Leaks Database

19-23649-shl Doc 2340-2 Filed 02/01/21 Entered 02/01/21 10:12:26 Exhibit B - Redacted 2004 Motion Pg 58 of 79

| | | | | |
|---|---|---|---|---|
| Ebury Investments Limited | | | | Paradise Papers - Appleby |
| Ebury Investments Limited | Director | 28-JUL-1997 | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Is signatory for | - | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Director | 30-OCT-2000 | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Vice-president | 16-OCT-2009 | - | Paradise Papers - Appleby |
| Mundipharma Company | Is signatory for | - | - | Paradise Papers - Appleby |
| Leslie - Brian G. | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Shareholder | - | - | Paradise Papers - Appleby |
| Ebury Investments Limited | Director | 28-JUL-1997 | 14-APR-2000 | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Business address | - | - | Paradise Papers - Appleby |
| Tk International Limited | Business address | - | - | Paradise Papers - Appleby |
| Laysan Limited | Business address | - | - | Paradise Papers - Appleby |
| Dawson - David | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| TK International Limited | Is signatory for | - | - | Paradise Papers - Appleby |
| Laysan Limited | Is signatory for | - | - | Paradise Papers - Appleby |
| Ebury Investm | Is signatory for | - | - | Paradise Papers - Appleby |

SEE ALL
POWER PLAYERS

## ABOUT THIS DATABASE

This ICIJ database contains information on more than 785,000 offshore entities that are part of the Panama Papers, the Offshore Leaks, the Bahamas Leaks and the Paradise Papers investigations. The data covers nearly 80 years up to 2016 and links to people and companies in more than 200 countries and territories.

- About this data
- About ICIJ
- FAQ
- Download
- Data sources
- How to use this database
- Credits

## DISCLAIMER

There are legitimate uses for offshore companies and trusts. We do not intend to suggest or imply that any people, companies or other entities included in the ICIJ Offshore Leaks Database have broken the law or otherwise acted improperly. Many people and entities have the same or similar names. We suggest you confirm the identities of any individuals or entities located in the database based on addresses or other identifiable information. If you find an error in the database please get in touch with us.

## DOWNLOAD DATA

The ICIJ Offshore Leaks Database is licensed under the Open Database License and contents under Creative Commons Attribution-ShareAlike license. Always cite the International Consortium of Investigative Journalists when using this data. You can download a raw copy of the database here.

SUPPORT US

Help ICIJ investigate

## ABOUT US

The International Consortium of Investigative Journalists is a global network of more than 190 investigative journalists in more than 65 countries who collaborate on in-depth investigative stories.

Learn more

OFFSHORE LEAKS DATABASE

We believe this data should be publicly–available, and we need your support to keep it that way. ✖
Make a donation and help us keep it free, online and accessible.

Search the full Offshore Leaks database    SEARCH

OFFICER

# Mundipharma International Holdings Limited    🐦  f  </>

Connected to **3 addresses**

Connected to **1 entity**

⚲  Linked countries: Bermuda
🔒  Data from: Paradise Papers - Appleby
ⓘ  Appleby data is current through 2014
🔍  Search in opencorporates
💬  Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
● Officer
✿ Address
🏢 Entity

Database powered by Neo4j. What is it?

CONNECTIONS ⓘ

## Entity

| | Role | From | To | Incorporation | Jurisdiction | Status | Data From |
|---|---|---|---|---|---|---|---|

Mundipharma International Holdings | ICIJ Offshore Leaks Database

| | | | | |
|---|---|---|---|---|
| | Registered | | | Paradise Papers - Appleby |
| ...inna International Corporation Limited | Shareholder | - | - | 23-JUN-2006 | Bermuda | - | Paradise Papers - Appleby |

# Address

| | Data From |
|---|---|
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Argyle House, 41 C... ...amilton HM 12, Bermuda | Paradise Papers - Appleby |
| Mundipharma... ...t, Hamilton HM 11, Bermuda | Paradise Papers - Appleby |

SEE ALL
POWER PLAYERS

## ABOUT THIS DATABASE

This ICIJ database contains information on more than 785,000 offshore entities that are part of the Panama Papers, the Offshore Leaks, the Bahamas Leaks and the Paradise Papers investigations. The data covers nearly 80 years up to 2016 and links to people and companies in more than 200 countries and territories.

* About this data
* About ICIJ
* FAQ
* Download
* Data sources
* How to use this database
* Credits

## DISCLAIMER

There are legitimate uses for offshore companies and trusts. We do not intend to suggest or imply that any people, companies or other entities included in the ICIJ Offshore Leaks Database have broken the law or otherwise acted improperly. Many people and entities have the same or similar names. We suggest you confirm the identities of any individuals or entities located in the database based on addresses or other identifiable information. If you find an error in the database please get in touch with us.

## DOWNLOAD DATA

The ICIJ Offshore Leaks Database is licensed under the Open Database License and contents under Creative Commons Attribution-ShareAlike license. Always cite the International Consortium of Investigative Journalists when using this date. You can download a raw copy of the database here.

SUPPORT US

Help ICIJ investigate

## ABOUT US

**The International Consortium of Investigative Journalists** is a global network of more than 190 investigative journalists in more than 65 countries who collaborate on in-depth investigative stories.

Learn more

## SUPPORT US

**Independent, fearless investigative journalism is expensive and ICIJ relies on your support.**

Help protect global societies from unprecedented threats by supporting independent investigative journalism.

Become a sponsor

**OFFSHORE LEAKS DATABASE**
by The International Consortium of Investigative Journalists

ABOUT    DOWNLOAD    SUPPORT US

We believe this data should be publicly–available, and we need your support to keep it that way. ✕
Make a donation and help us keep it free, online and accessible.

Search the full Offshore Leaks database    SEARCH

ENTITY
# Mundipharma International Corporation Limited

🐦 f </>

Connected to **1 address**

Connected to **12 officers**

Connected to **1 other**

📅 Incorporated: 23-JUN-2006 ⓘ
🌐 Registered in: Bermuda
📍 Linked countries: Bermuda
🔖 Data from: Paradise Papers : Appleby
👤 Agent: Appleby
ⓘ Appleby data is current through 2014
🔍 Search in opencorporates
💬 Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
● Officer
● Address
● Entity
● Other

Database powered by Neo4j. What is it?

**CONNECTIONS** ⓘ

| | Role | From | To | Data From |
|---|---|---|---|---|
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Erskine - Alex J | Director | 05-DEC-2008 | 01-OCT-2009 | Paradise Papers - Appleby |
| Erskine - Alex J | Vice-president | 05-DEC-2008 | 01-OCT-2009 | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Carter - Linda L | Secretary | 23-JUN-2006 | 21-OCT-2013 | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Callis - Judith | Vice-president | 17-JAN-2007 | 05-DEC-2008 | Paradise Papers - Appleby |
| Callis - Judith | Director | 23-JUN-2006 | 05-DEC-2008 | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Oxmerding - Sarah C | Appleby assigned attorney | 30-JUN-2014 | - | Paradise Papers - Appleby |
| Docherty - Douglas | Director | 23-JUN-2006 | - | Paradise Papers - Appleby |
| Docherty - Douglas | Vice-president | 30-NOV-2012 | - | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Forte - Allison | Secretary | 21-OCT-2013 | - | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Business address; residential address | - | - | Paradise Papers - Appleby |
| Goros - Fiona Adenike | Director | 17-JAN-2007 | 05-DEC-2008 | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Keyes - James Michael | President | 23-JUN-2006 | - | Paradise Papers - Appleby |
| Keyes - James Michael | Director | 23-JUN-2006 | - | Paradise Papers - Appleby |
| Maurer - Patrik Dominik | Vice-president | 30-NOV-2006 | 30-NOV-2012 | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Saltus - Julia | Director | 23-JUN-2006 | 17-JAN-2007 | Paradise Papers - Appleby |
| Saltus - Julia | Vice-president | 23-JUN-2006 | 17-JAN-2007 | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Mundipharma International Holdings Limited | Shareholder | - | - | Paradise Papers - Appleby |

## Address

| | Data From |
|---|---|
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |

## Other

| | Data From |
|---|---|
| | Paradise Papers - Appleby |



Mundipharma

OFFSHORE LEAKS DATABASE

We believe this data should be publicly–available, and we need your support to keep it that way.

Make a donation and help us keep it free, online and accessible.   ✖

| Search the full Offshore Leaks database | SEARCH |

ENTITY

# Mundipharma Pharmaceutical Company

Connected to **2 addresses**

Connected to **12 officers**

Connected to **1 other**

📅 Incorporated: **16-NOV-1984** ❶

🌐 Registered in: Bermuda

📍 Linked countries: Bermuda

🏛 Data from: Paradise Papers - Appleby

👤 Agent: **Appleby**

❶ Appleby data is current through 2014

🔍 Search in opencorporates

💬 Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
- ● Officer
- ● Address
- ● Entity
- ● Other

Linkurious

Database powered by Neo4j.

**CONNECTIONS** ❶

7/2/2018    Mundipharma Pharmaceutical Company | ICIJ Offshore Leaks Database
19-23649-shl    Doc 2340-2    Filed 02/01/21    Entered 02/01/21 10:12:26    Exhibit B -
Cover    Redacted 2004 Motion    Pg 64 of 79

| | Role | From | To | Data From |
|---|---|---|---|---|
| Ernst & Young Ltd. | Auditor | 04-DEC-1998 | - | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Deroeding - Sarah C | Appleby assigned attorney | 30-JUN-2014 | - | Paradise Papers - Appleby |
| Docherty - Douglas | Secretary | 28-JUN-2000 | - | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Kewes - James Michael | President | 08-DEC-2003 | - | Paradise Papers - Appleby |
| Leslie - Brian G. | Secretary | 09-OCT-1997 | 28-JUN-2000 | Paradise Papers - Appleby |
| Buboozer - Peter - Bermuda | President | 09-OCT-1997 | 08-DEC-1983 | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Mallard Limited | Shareholder | | | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Kelly Pharmaceuticals Limited | Shareholder | | | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 13, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Iom Pharmaceuticals Limited | Shareholder | | | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| JK International Limited | Shareholder | | | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Laysan Limited | Shareholder | | | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Registered office | - | - | Paradise Papers - Appleby |

## Address

| | Data From |
|---|---|
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 13, Bermuda | Paradise Papers - Appleby |
| Canon's Court, 22 Victoria Street, Hamilton, HM 12, Bermuda | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 12, Bermuda | Paradise Papers - Appleby |
| Argyle House, 41a Cedar Avenue, Hamilton HM 13, Bermuda | Paradise Papers - Appleby |

use: 41a Cedar Avenue; Hamilton HM 12; Bermuda      Paradise Papers - Appleby

use: 41a Cedar Avenue; Hamilton HM 12; Bermuda      Paradise Papers - Appleby

Argyle House; 41a Cedar Avenue; Hamilton HM 12; Bermuda      Paradise Papers - Appleby

# Other



Mundipharma      **Data From**

Paradise Papers - Appleby

SEE ALL
POWER PLAYERS

## ABOUT THIS DATABASE

This ICIJ database contains information on more than 785,000 offshore entities that are part of the Panama Papers, the Offshore Leaks, the Bahamas Leaks and the Paradise Papers investigations. The data covers nearly 80 years up to 2016 and links to people and companies in more than 200 countries and territories.

* About this data
* About ICIJ
* FAQ
* Download
* Data sources
* How to use this database
* Credits

## DISCLAIMER

There are legitimate uses for offshore companies and trusts. We do not intend to suggest or imply that any people, companies or other entities included in the ICIJ Offshore Leaks Database have broken the law or otherwise acted improperly. Many people and entities have the same or similar names. We suggest you confirm the identities of any individuals or entities located in the database based on addresses or other identifiable information. If you find an error in the database please get in touch with us.

## DOWNLOAD DATA

The ICIJ Offshore Leaks Database is licensed under the Open Database License and contents under Creative Commons Attribution-ShareAlike license. Always cite the International Consortium of Investigative Journalists when using this data. You can download a raw copy of the database here.

SUPPORT US

Help ICIJ investigate

## ABOUT US

**The International Consortium of Investigative Journalists** is a global network of more than 190 investigative journalists in more than 65 countries who collaborate on in-depth investigative stories.

Learn more

## SUPPORT US

**Independent, fearless investigative journalism is expensive and ICIJ relies on your support.**

Help protect global societies from unprecedented threats by supporting independent investigative journalism.

Become a sponsor

7/2/2018

OFFSHORE LEAKS DATABASE

| Search the full Offshore Leaks database | SEARCH |

ENTITY

# Transworld Pharma Limited

Connected to **1 address**

Connected to **17 officers**

Connected to **1 other**

- 🗓 Incorporated: **19-DEC-2006** ⓘ
- ⊘ Registered in: Bermuda
- ⦿ Linked countries: Bermuda
  - 🔖 Data from: Paradise Papers - Appleby
  - 👤 Agent: **Appleby**
  - ⓘ Appleby data is current through 2014
  - 🔍 Search in opencorporates
  - 💬 Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
- ● Officer
- ● Address
- ● Entity
- ● Other

Database powered by Neo4j. What is it?

Linkurious

## CONNECTIONS ⓘ

| | Role | From | To | Data From |
|---|---|---|---|---|
| Baker - Stuart D | Director | 15-FEB-2012 | - | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Eve - Jennifer S | Is signatory for | - | - | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Brough - Christopher J | Is signatory for | - | - | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Carter - Linda L | Secretary | 01-MAR-2007 | 31-OCT-2013 | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Collis - Judith | Director | 01-MAR-2007 | 14-FEB-2012 | Paradise Papers - Appleby |
| Collis - Judith | Vice-president | 01-MAR-2007 | 14-FEB-2012 | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Mailing address; residential address | - | - | Paradise Papers - Appleby |
| Demerling - Sarah C | Appleby assigned attorney | 30-JUN-2014 | - | Paradise Papers - Appleby |
| Docherty - Douglas | Is signatory for | - | - | Paradise Papers - Appleby |
| Docherty - Douglas | Chief financial officer | 01-MAR-2007 | - | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Forte - Allison | Secretary | 31-OCT-2013 | - | Paradise Papers - Appleby |
| Grossmann - Martin | Director | 01-MAR-2007 | - | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Residential address; business address | - | - | Paradise Papers - Appleby |
| Keyes - James Michael | Is signatory for | - | - | Paradise Papers - Appleby |
| Keyes - James Michael | President | 01-MAR-2007 | 14-FEB-2012 | Paradise Papers - Appleby |
| Keyes - James Michael | Director | 01-MAR-2007 | 14-FEB-2012 | Paradise Papers - Appleby |
| Leitch - James Robert | Director | 01-MAR-2007 | - | Paradise Papers - Appleby |
| Mitchell - Christopher B. | Director | 15-FEB-2012 | - | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Residential address; mailing address | - | - | Paradise Papers - Appleby |
| Moniz-DeSouza - Andrea | Is signatory for | - | - | Paradise Papers - Appleby |

## Address

| | Data From |
|---|---|
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |
| Canon's Court; 22 Victoria Street; Hamilton; HM 12; Bermuda | Paradise Papers - Appleby |

## Other





## OFFSHORE LEAKS DATABASE
by The International Consortium of Investigative Journalists

ABOUT        DOWNLOAD        SUPPORT US

We believe this data should be publicly-available, and we need your support to keep it that way.
Make a donation and help us keep it free, online and accessible.    ✕

Search the full Offshore Leaks database        SEARCH

OFFICER
# Docherty - Douglas

Connected to **2 addresses**
Connected to **40 entities**

- ⚲  Linked countries: Bermuda, United Kingdom
- 🔒  Data from: Paradise Papers - Appleby
- ⓘ  Appleby data is current through 2014
- 🔍  Search in opencorporates
- 💬  Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
- ⬤ Officer
- ⬤ Address
- ⬤ Entity

Database powered by Neo4j. What is it?

## CONNECTIONS ⓘ

## Entity

| | Role | From | To | Incorporation | Jurisdiction | Status | Data From |
|---|---|---|---|---|---|---|---|

OFFSHORE LEAKS DATABASE

We believe this data should be publicly-available, and we need your support to keep it that way. ✖
Make a donation and help us keep it free, online and accessible.

Search the full Offshore Leaks database    SEARCH

OFFICER

# Docherty - Douglas

🐦  f  </>

Connected to **2 addresses**
Connected to **40 entities**

- 📍 Linked countries: Bermuda, United Kingdom
- 🔒 Data from: Paradise Papers - Appleby
- ❶ Appleby data is current through 2014
- 🔍 Search in opencorporates
- 💬 Got a tip? Help ICIJ investigate: contact us or leak to us securely



Category
- ● Officer
- ◉ Address
- ● Entity

Database powered by Neo4j. What is it?

## CONNECTIONS ❶

# Entity

| | Role | From | To | Incorporation | Jurisdiction | Status | Data From |
|---|---|---|---|---|---|---|---|
| Captor Limited | Director | 02-OCT- | - | 03-JUN-1991 | Bermuda | - | Paradise Papers - Appleby |

| Center Limited | Director | 02-OCT-1997 | - | 02-JUNE-891 | Bermuda | - | Paradise Papers - Appleby |
|---|---|---|---|---|---|---|---|
| Teal Limited | Director | 02-OCT-1997 | - | 29-JAN-1992 | Bermuda | - | Paradise Papers - Appleby |
| Transworld Pharma Limited | Is signatory for | - | - | 19-DEC-2006 | Bermuda | - | Paradise Papers - Appleby |
| Transworld Pharma Limited | Chief financial officer | 01-MAR-2007 | - | 19-DEC-2006 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Corporation Limited | Director | 23-JUN-2006 | - | 23-JUN-2006 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Corporation Limited | Vice-president | 30-NOV-2012 | - | 23-JUN-2006 | Bermuda | - | Paradise Papers - Appleby |
| Petra Jod Venture Management Limited | Shareholder | - | - | 02-MAY-2005 | Bermuda | - | Paradise Papers - Appleby |
| Petra Jod Venture Management Limited | President | 11-MAY-2005 | 11-SEP-2009 | 02-MAY-2005 | Bermuda | - | Paradise Papers - Appleby |
| Petra Jod Venture Management Limited | Director | 06-MAY-2005 | 11-SEP-2009 | 02-MAY-2005 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Limited | Vice-president | 16-OCT-2009 | - | 13-OCT-1990 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma International Limited | Director | 02-OCT-1997 | - | 13-OCT-1990 | Bermuda | - | Paradise Papers - Appleby |
| Streea Limited | Director | 02-OCT-1997 | 26-FEB-2001 | 03-JUN-1991 | Bermuda | - | Paradise Papers - Appleby |
| The Aesculapius Foundation Ltd. | Is signatory for | - | - | 24-JAN-1989 | Bermuda | - | Paradise Papers - Appleby |
| Brookspest Estate Limited | Director | 28-NOV-1997 | 10-APR-2003 | 30-MAR-1984 | Bermuda | - | Paradise Papers - Appleby |
| Scalab Limited | Director | 28-JUL-1997 | 11-APR-2002 | 05-OCT-1992 | Bermuda | - | Paradise Papers - Appleby |
| Tivu Pharmaceuticals Limited | Shareholder | - | - | 01-SEP-1993 | Bermuda | - | Paradise Papers - Appleby |
| Tivu Pharmaceuticals Limited | Director | 01-OCT-1997 | 21-JUL-2010 | 01-SEP-1993 | Bermuda | - | Paradise Papers - Appleby |
| Mergansor Limited | Vice-president | 15-OCT-2009 | 22-JUL-2010 | 14-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |
| Mergansor Limited | Director | 14-DEC-1998 | 22-JUL-2010 | 14-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |
| Sheldrake Limited | Is signatory for | - | - | 15-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |
| Sheldrake Limited | Director | 15-DEC-1998 | - | 15-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |
| Sheldrake Limited | Vice-president | 24-FEB-2006 | - | 15-DEC-1998 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma Research Company Limited | Vice-president | 16-OCT-2009 | - | 21-DEC-1999 | Bermuda | - | Paradise Papers - Appleby |
| Mundipharma Research Company Limited | Director | 21-DEC-1999 | - | 21-DEC-1999 | Bermuda | - | Paradise Papers - Appleby |
| MNB Company | Is signatory for | - | - | 01-APR-1993 | Bermuda | - | Paradise Papers - Appleby |

Show all connections

# Address

| | Data From |
|---|---|
| Mundipharma House; 14 Par-La-Ville Road; Hamilton HM 11; Bermuda | Paradise Papers - Appleby |
| Mundipharma House; 14 Par-La-Ville Road; Hamilton HM 11; Bermuda | Paradise Papers - Appleby |
| Fritholme Garden; ... Park Paget PGDA; Bermuda | Paradise Papers - Appleby |

Show all conn...



SEE ALL
POWER PLAYERS

| node_id | name | jurisdiction | jurisdiction_description | | country_codes | countries | incorporation_date | i |
|---------|------|--------------|-------------------------|---|---------------|-----------|--------------------|---|
| 82003606 | **Sheldrake Limited** | BM | Bermuda | BMU | Bermuda | ######## | | |
| 82007068 | Mundipharma International Corporation Limited | BM | Bermuda | BMU | Bermuda | 23-Jun-06 | | |

**EXHIBIT F**

  
Home ▸ News ▸ Press Releases

## Bipartisan Outrage Towards Sackler Family and Purdue Pharma for Lack of Accountability in Role in Fueling Opioid Crisis

Dec 18, 2020  |  Press Release

### News

**Press Releases**
Reports
**Stay Connected**
News Archive
Letters

Washington, D.C. (Dec. 18, 2020)—Rep. Carolyn B. Maloney, the Chairwoman of the Committee on Oversight and Reform, held a hearing to examine the role of Purdue Pharma and members of the Sackler family in fueling the nationwide opioid epidemic for decades by pushing Purdue executives to flood the market with the highly addictive painkiller OxyContin.

Chairwoman Maloney issued the following statement at the end of hearing:

"You have played a critical, active role in sparking and fueling the opioid epidemic.  You approved and monitored dangerous marketing plans.  You directed their sales representatives to focus on the highest-volume prescribers and the strongest versions of OxyContin.  You targeted vulnerable populations with misleading messages.

"You have the ability now to mitigate at least some of the damage you caused.  Stop hiding and offshoring your assets, stop nickel and diming the negotiators, make a massive financial contribution that leaves no doubt about your commitment, and finally acknowledge your wrongdoing.  The families whose lives you have ruined deserve at least that much."

Witnesses included David Sackler, former Member of the Board of Directors (2012 to 2018); Dr. Kathe Sackler, former Vice President and Member of the Board of Directors (1990 to 2018); and Craig Landau, President and CEO of Purdue Pharma.

**Members expressed bipartisan outrage for the lack of accountability for the role of the Sackler family and Purdue Pharma in fueling the opioid epidemic.**

When asked by Chairwoman Maloney whether she would apologize for her role in the opioid crisis, Dr. Kathe Sackler said:  "There is nothing that I can find that I would have done differently based on what I believed and understood then."

Rep. Kelly Armstrong said, "It is beyond the pale of believability to think that after settling with the federal government in 2007, that you could honestly say—watching the sale of your own company's drugs—that you didn't know a problem was coming down the pike, and to say that is just past believability and is absolutely abhorrent and appalling to the victims of opioid addiction."

**Patients and families provided emotional stories about how the opioid epidemic has affected their lives.**

For example, Alexis Pleus from Binghamton, New York, described how her high-school aged son was prescribed OxyContin after a knee injury and was told to take pills every four hours for months as he worked through physical therapy.  She explained that no one told her or her son that it might not be easy to stop using OxyContin or about the risks of addiction, and her son died from an overdose.  She stated:  "The damage and the pain and the grief is life long, and Purdue Pharma and the Sacklers need to be held accountable for what they've done to our family and countless other families."

**Members questioned the Sackler family on the withdrawal of billions of dollars from Purdue Pharma to avoid compensating affected families.**

Chairwoman Maloney asked David Sackler about an email he wrote in 2007 – one week after Purdue settled with DOJ on charges of misbranding and agreed to pay $600 million in fines – that said: "We're rich? For How long? Until which suits get through to the family?"

Chairwoman Maloney told David Sackler:  "I think it's clear your family has tried to fraudulently shield money for your own personal benefit.  I think it's appalling.  Those profits, in my opinion, should be clawed back.  You and your family should compensate the American public for the harm that you caused and you should be held fully accountable for your actions."

Ranking Member James Comer similarly told Mr. Sackler:  "I am just sick to see what it appears to me a family and a company that is going to use the bankruptcy process to get out of this and to continue to be one of the wealthiest families in America.  It is unacceptable."

**Members pressed the Sackler family to provide greater transparency into their involvement in the management of Purdue Pharma and their financial arrangements.**

In his sworn testimony, David Sackler claimed:  "We want the American people to know what actually happened at Purdue."

To this end, Rep. Jamie Raskin pressed David Sackler to commit to contributing the Sackler family's documents to the public document repository that will be created as a result of Department of Justice settlement announced in October.

In addition, Chairwoman Maloney asked David Sackler to produce to the Committee an accounting of all shell companies that he and his family controls, as well as how much of the Sackler family's wealth is being held in foreign bank accounts.

###

Issues: Opioids
116th Congress

     Share  1

**EXHIBIT G**
**(Redacted)**

**EXHIBIT H**
**(Redacted)**

**EXHIBIT I**
**(Redacted)**

**EXHIBIT J**
**(Redacted)**

**EXHIBIT K**
**(Redacted)**

**EXHIBIT L**
**(Redacted)**