Gerard Uzzi
Alexander B. Lees
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:   (212) 530-5000
Facsimile:    (212) 530-5219

Gregory P. Joseph
Mara Leventhal
**JOSEPH HAGE AARONSON LLC**
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone:   (212) 407-1200
Facsimile:    (212) 407-1280

*Counsel for the Raymond Sackler Family*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>Jointly Administered |

**LIMITED OBJECTION OF THE RAYMOND SACKLER FAMILY TO THE
FIRST AND SECOND MOTIONS TO UNSEAL JUDICIAL RECORDS BY MEDIA
INTERVENORS DOW JONES & COMPANY, INC., BOSTON GLOBE
MEDIA PARTNERS, LLC, AND REUTERS NEWS & MEDIA, INC.**

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 2

BACKGROUND ............................................................................................................................ 4

ARGUMENT .................................................................................................................................. 7

    I.    Section 107(b) Mandates Protection of Current Counterparty Information .................... 7

    II.   The Court Has Discretion to Permit Redaction of Current Counterparty Information .. 12

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re A C & S Inc.*,
    775 F. App'x 78 (3d Cir. 2019) ................................................................................11

*In re Avaya, Inc.*,
    2019 WL 1750908 (Bankr. S.D.N.Y. Mar. 28, 2019) ................................................11

*In re Bennett Funding Grp., Inc.*,
    226 B.R. 331 (Bankr. N.D.N.Y. 1998) ......................................................................11

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019) ........................................................................................11

*In re EPIC Assocs.*,
    54 B.R. 445 (Bankr. E.D. Va. 1985) ....................................................................10, 12

*In re Farmland Indus.*,
    290 B.R. 364 (Bankr. W.D. Mo. 2003) ......................................................................7

*In re Global Crossing Ltd.*,
    295 B.R. 720 (Bankr. S.D.N.Y. 2003) ........................................................................7

*In re Lomas Fin. Corp.*,
    1991 WL 21231 (S.D.N.Y. Feb. 11, 1991) ................................................................7

*In re Orion Pictures Corp.*,
    21 F.3d 24 (2d Cir. 1994) ........................................................................................10

*United States v. Amodeo*,
    71 F.3d 1044 (1995) ..................................................................................................11

**Statutes**

11 U.S.C. § 107(b) .........................................................................................6, 7, 10, 11

**Other Authorities**

Juliet Chung, Sara Randazzo, & Gregory Zuckerman, *Hedge Fund Tosses Family
    That Controls Maker of OxyContin*, Wall St. J., Mar. 7, 2019 ....................................8

The Raymond Sackler family,[2] by and through its undersigned counsel, hereby submits this limited objection (the "Limited Objection") to the *Motion to Intervene and Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [ECF No. 2022] (the "First Motion to Unseal") and the *Second Motion to Unseal Judicial Records by Media Intervenors Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [ECF No. 2188] (the "Second Motion to Unseal") (collectively, the "Motions to Unseal").[3] The Raymond Sackler family incorporates in full by reference: (i) its statement in respect of the First Motion to Unseal; and (ii) its statement in respect to the Second Motion to Unseal. In support of this Limited Objection, the Raymond Sackler family respectfully states as follows:

## INTRODUCTION

1. As set forth in its statements concerning the First Motion to Unseal [ECF No. 2132] and the Second Motion to Unseal [ECF No. 2265], the Raymond Sackler family supports the public disclosure of documents submitted in connection with the *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged* [ECF No. 1752] and the *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and At Issue Waiver Exceptions to Claims of Privilege* [ECF No. 1753] (collectively, the "Privilege Motions"). The Raymond Sackler family has engaged in an extensive meet-and-confer process with the Media Intervenors and has voluntarily unsealed 529

---

[2] The Raymond Sackler family includes Richard Sackler, David Sackler, and the estate of the late Beverly Sackler and Jonathan Sackler.

[3] Capitalized terms not defined herein have the same meaning as in the Second Motion to Unseal.

2

documents to date. In addition, taking to heart the discussion the parties had with the Court on January 20, 2021, and in an effort to streamline disputes, the Raymond Sackler family no longer objects to unsealing the remaining documents attached to the Privilege Motions, which consist of privilege logs and their addenda – subject to the right to apply narrow redactions consistent with established law and previous orders of this Court.

2.      There is thus only one issue that remains in dispute in respect of the Motions to Unseal: through this Limited Objection, the Raymond Sackler family seeks to ensure that any order granting the Motions to Unseal conforms to the Court's earlier order of May 1, 2020, and authorizes the Raymond Sackler family to redact the names of business counterparties and investment advisors that have ongoing commercial relationships with the Raymond Sackler family (the "<u>Current Counterparty Information</u>").[4] This Court already has ruled – on a contested motion, following briefing and argument – that this information needs to be protected because, if it were to appear in the press, that disclosure could cause serious financial harm not only to the Raymond Sackler family, but also to the bankruptcy estates. That is, experience has shown that public disclosure of counterparties' connections with the Raymond Sackler family risks causing the counterparties to cease doing business with the family. This risk diminishes the value of the Raymond Sackler family investments, inhibits its ability to make new investments, and ultimately impairs its ability to fund a settlement in these cases. This results from the intense and inaccurate attention paid to the Raymond Sackler family by the media, which for years has pushed the unsubstantiated – and untrue – narrative that the Sackler families and Purdue "caused" the opioid crisis. The concern about counterparties severing connections with the Raymond Sackler family is

---

[4] Counsel for the Media Intervenors confirmed on February 1, 2021, that there is no dispute that the Raymond Sackler family can apply redactions to protect nonpublic personally identifying information. This agreement is reflected in Exhibit A hereto.

3

equally as valid today as it was in May 2020 when the Court first authorized the protection of Current Counterparty Information.

3. Current Counterparty Information therefore is entitled to be redacted in any public versions of the documents subject to the Motions to Unseal. This result is compelled by section 107(b)(1) of the Bankruptcy Code, which *mandates* that "commercial information" – *i.e.*, information that, if disclosed, would cause commercial harm to a party – be protected. So, too, is this Court permitted, based on its inherent supervisory power over its own records, to exercise its discretion to protect Current Counterparty Information from disclosure. Since Current Counterparty Information has nothing to do with any issue that the Court will have to decide in connection with the Privilege Motions, the public's interest in this information is nonexistent; at the same time, disclosure of this information could cause great commercial harm. Accordingly, section 107 requires, and the Court also has discretion to permit, the requested redactions.

## BACKGROUND

4. The Raymond Sackler family's entitlement to redact Current Counterparty Information was already litigated and affirmed by the Court months ago. In its April 26, 2020, Limited Objection to the Ad Hoc Group Of Non-Consenting States' Rule 2004 Motion [ECF No. 1087], the Raymond Sackler family argued that the Protective Order [ECF No. 1935] governing discovery in these cases did not provide sufficient protection of Current Counterparty Information as evidenced by leaks to the press that had previously occurred. Following briefing and oral argument, the Court recognized that public disclosure of Current Counterparty Information would threaten substantial harm to the Raymond Sackler family's current commercial investments, and that such harm would, in turn, necessarily threaten the Raymond Sackler family's ability to fund a settlement in these cases. As such, on May 1, 2020, the Court authorized the Raymond Sackler family to designate Current Counterparty Information as "Outside Professionals Eyes Only," and

4

to redact Current Counterparty Information from discovery materials produced to constituents other than outside professionals. *See* May 1, 2020 Hr'g Tr. At 42:12-15 [ECF No. 1139]. The Court determined that this was necessary in order to mitigate the risk of leaks to the press. *Id.* at 39:17-25, 40:1-9.

5.  Months later, on November 23, 2020, the Media Intervenors filed their First Motion to Unseal requesting that the Court require public and unredacted filing of all sealed and redacted briefs, declarations, and exhibits filed in connection with the Privilege Motions. At the direction of the Court, the parties engaged in a meet-and-confer process to discuss the timing and process for unsealing over 548 documents to the extent no party objected to disclosure. Throughout the meet-and-confer process, the parties expressly reserved their rights to apply redactions to protect commercial information. For example, on December 4, 2020, the Debtors emailed the Court – and copied the Media Intervenors – stating that before unsealing the documents, the Debtors would need to conduct a page-by-page (and at times line-by-line) review of over 10,000 pages to identify confidential commercial information. *See* Exh. B.

6.  Additionally, the Raymond Sackler family repeatedly made clear to the Media Intervenors and other participants in the meet-and-confer process that it intended to redact Current Counterparty Information. On December 8, 2020, counsel for the Raymond Sackler family emailed the Media Intervenors that, in any stipulation to unseal documents, the Raymond Sackler family must have the right to redact "the names of current investment and business counterparties (consistent with the May 1 ruling)." Exh. B. In its December 14, 2020, statement concerning the First Motion to Unseal, the Raymond Sackler family once again stated its intention to redact Current Counterparty Information consistent with this Court's May 1, 2020, ruling. ECF No. 2132 at 3-4. And in numerous telephonic meet-and-confer calls, counsel for the Raymond Sackler family

5

repeatedly told counsel for the Media Intervenors that the Raymond Sackler family would be redacting Current Counterparty Information. At no point in this process did the Media Intervenors object to the protection of this information.

7. The meet-and-confer process culminated in a stipulation, so ordered by the Court, which set forth a schedule by which the Debtors, the UCC, and the Raymond and Mortimer Sackler families would publicly file versions of the briefs and related documents submitted with the Privilege Motions. *See* ECF No. 2140. As set forth in the stipulation, the Debtors, IACs,[5] and Raymond and Mortimer Sackler families proposed sealing or redacting the documents prior to publicly filing them. *Id.* at 5-7. Over the past several months, the parties have worked diligently to review over 548 documents and have publicly filed almost all briefs and exhibits with no or few redactions.

8. Despite having notice that the Raymond Sackler family intended to redact Current Counterparty Information, the Media Inventors did not object to the redaction of this information during the course of the meet-and-confer process, either telephonically or by email, nor did they object in their reply in support of the Motions to Unseal filed on January 15, 2021 [ECF No. 2288].[6] It was only at the January 20, 2021, hearing that the Media Intervenors first insisted – without giving any notice – that the privilege log materials attached to the Privilege Motions must be filed without redactions to protect Current Counterparty Information.

9. At the hearing, especially because the Media Intervenors' objection to the redaction of Current Counterparty Information came as a complete surprise, the Raymond Sackler family

---

[5] The term "IACs" refers to the entities represented by Royer Cooper Cohen Braunfeld LLC in these Chapter 11 Cases.

[6] In their reply, the Media Intervenors objected to certain redactions applied by the Debtors to protect confidential commercial information, but they did not object to a single redaction—including redactions applied to Current Counterparty Information—applied by the Raymond Sackler family.

6

requested an opportunity to submit additional briefing and evidence on the issue. The Court granted this request and instructed that any additional submissions by the Raymond Sackler family be submitted by February 7. *See* Jan. 20, 2021 Hr'g Tr. at 129: 4-12.

## ARGUMENT

10. Public disclosure of confidential commercial information, like Current Counterparty Information, is not mandated by law. That is especially so when, as here, such disclosure would result in harm that this Court has already recognized. The Raymond Sackler family has relied on the Court's May ruling throughout the discovery process, precisely to ensure that Current Counterparty Information would not appear in the press. Now, months later, the disclosure of Current Counterparty Information as a consequence of the instant Motions to Unseal would present the same risk of harm and must be prevented for the same reasons. Given the Court's earlier recognition that Current Counterparty Information constitutes commercial information entitled to protection during discovery, despite the existence of a protective order governing the parties, in order to prevent leaks to the press, it would be illogical, inconsistent, and highly risky not to accord the same information protection here under the plain language of section 107(b)(1) and the inherent discretion of the Court.

**I.    Section 107(b) Mandates Protection of Current Counterparty Information**

11. The Raymond Sackler family must be permitted to continue to redact Current Counterparty Information pursuant to section 107(b)(1), which provides that, on the request of a party in interest, the Court "***shall*** . . . protect an entity with respect to . . . commercial information." 11 U.S.C. § 107(b) (emphasis added). Such redactions would apply only to the names of current third-party investment or business counterparties, and not to the Debtors, the IACs, or entities that are wholly owned by the Sackler families or their trusts (including the entities in the chain of ownership of the Debtors or the IACs). This would be entirely consistent with the way redactions

7

were applied in discovery to conform to the Court's order of May 1, 2020. Analysis of the privilege log materials filed with the Privilege Motions indicates that such redactions would be minimal. Of 52,838 privilege log entries in those materials, only 513 (fewer than one percent), would require redaction by the Raymond Sackler family for Current Counterparty Information.

12.     The names of current third-party investment and business counterparties and advisors qualify as "commercial information" under section 107(b)(1). Contrary to the position taken by the Media Intervenors at the January 20, 2021, hearing (Jan. 20, 2021 Hr'g Tr. at 110: 14-25), "commercial information" under section 107(b)(1) encompasses more than just information that would give competitors an unfair advantage. Courts have held that information that, if publicly disclosed, could cause harm to the party seeking to prevent its release, "have a chilling effect on [their business] negotiations," or "affect[] the viability" of the bankruptcy process, qualifies as commercial information. *In re Lomas Fin. Corp.*, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991) (holding that "information related 'to the buying and selling of securities on the open market'" or that has "the ability to affect the market into which [creditors] might sell their claims" is commercial information); *see also In re Global Crossing Ltd.*, 295 B.R. 720, 725-26 (Bankr. S.D.N.Y. 2003) ("[T]he commercial information that is entitled to protection under Code section 107(b) and Bankruptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors, and squarely includes information that could prejudice either of them as part of a sale process."); *In re Farmland Indus.*, 290 B.R. 364, 369 (Bankr. W.D. Mo. 2003) (order prohibiting disclosure deemed necessary to protect the value of the bankruptcy estate).

13.     Current Counterparty Information constitutes "commercial information" under section 107(b) because it relates directly to current business investments by the Raymond Sackler

family and because its disclosure will harm the Raymond Sackler family's economic interests and jeopardize its ability to fund a settlement. The dire consequences of prior disclosures of similar information proves this point. In the past, when nonpublic information identifying entities or individuals who transact with the Raymond Sackler family has been publicly disclosed, counterparties have terminated their business dealings with the family, thereby subjecting the Raymond Sackler family's existing investments and business relationships to unpredictable and value-destroying risks. *See* Lynam Decl. at ¶¶ 5-9; Vellucci Decl. at ¶ 4. The impairment of the value of the Raymond Sackler family's existing investments and interruptions in their banking business arrangements will necessarily make it harder for them to fund a consensual resolution of these cases. All of this stems from the fact that the press has viciously and inaccurately pushed the false narrative for years that the Sackler families and Purdue are responsible for the opioid crisis.

14.     The concern about counterparties pulling away is not hypothetical. For example, Hildene Capital Management, LLC ("Hildene") forced the Jonathan Sackler and Richard Sackler families out of Hildene-managed hedge funds in late 2018 due to reputational concerns. Lynam Decl. at ¶ 5. An unknown source leaked news of the Hildene redemption to The Wall Street Journal in early 2019. *See* Juliet Chung, Sara Randazzo, & Gregory Zuckerman, *Hedge Fund Tosses Family That Controls Maker of OxyContin*, WALL ST. J., Mar. 7, 2019, https://www.wsj.com/articles/hedge-fund-tosses-family-that-controls-maker-of-oxycontin-11551985100. In reporting on the Hildene redemption, The Wall Street Journal mentioned another confidential Jonathan Sackler family investment counterparty, DeepCurrents Investment Group, LLC ("DeepCurrents"). *Id*. Shortly thereafter, DeepCurrents redeemed the Jonathan Sackler family from its hedge fund. Lynam Decl. at ¶ 6. Its decision was directly related to the March 2019 Wall Street Journal article and DeepCurrents' concern that maintaining a commercial relationship

9

with the Jonathan Sackler family in light of the public disclosure would be detrimental to DeepCurrents' business. *Id*. Other investment managers have identified similar concerns. *Id*. at ¶ 7.

15. Similarly, two days after a December 16, 2019, New York Times article reporting that the attorney general of New York was seeking detailed financial records for the Sackler families, an investment counterparty notified Kokino LLC ("Kokino"), Jonathan Sackler's family office, that it would terminate its business relationship with the Jonathan Sackler family in 2020 due to the perceived impact on its business if its relationship with the Jonathan Sackler family became publicly known. *Id.* at ¶ 8. This single termination caused economic losses to the Jonathan Sackler family of more than $20 million in the form of forgone investment profits in 2020 alone. *Id.*

16. Many other financial institutions have: (i) terminated their banking or broker-dealer relationships with the Jonathan Sackler or Richard Sackler families (and associated business entities or private foundations); or (ii) decided to avoid or limit business with their families. Lynam Decl. at ¶ 9; Vellucci Decl. at ¶ 4. The decisions by these financial institutions to limit or terminate their business relationships with the Jonathan Sackler or Richard Sackler families were motivated by concerns over the risk that their commercial relationship with the Sackler families would become public and that such publicity would be detrimental to their business. Vellucci Decl. at ¶ 4.

17. Even public companies in which the Raymond Sackler family holds a minority interest have been unable to escape the negative consequences of the publication of a business' relationship with the family. For example, in Spring 2019, media reports about the Richard Sackler family's investment in Peak Resorts, Inc. prompted calls for boycotts of its resort properties. *Id.* at

10

¶ 5.

18. There are numerous other examples of instances where counterparties terminated their relationships with members of the Raymond Sackler family after it was publicly revealed that they conducted business with them. Disclosure of counterparty information has proven to frustrate the ability of the Raymond Sackler family to deploy capital into attractive investments, force the family to exit investments at less than desirable times, and cause the family to forgo profitable opportunities. Lynam Decl. at ¶ 4.

19. Should the names of remaining investment counterparties or business partners of the Raymond Sackler family become known, there is a very real risk that those business relationships will be disrupted or terminated, subjecting the Raymond Sackler family's business interests to potential losses and uncertainty. And inasmuch as the preservation of the value of the Raymond Sackler family's existing investments and business arrangements is essential to funding a consensual resolution of these cases, ruptures to existing business relationships will destroy value and undermine settlement efforts in progress. The Court recognized this harm when it made its May 1, 2020 order and it should do so again under section 107(b)(1) in ruling on the Motions to Unseal.

20. As the Second Circuit observed in *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994), "if the information fits any of the specified categories [under section 107(b)], the court is *required* to protect a requesting party and has no discretion to deny the application" (italics in original). Here, because Confidential Counterparty Information constitutes "commercial information" under section 107(b)(1), the Court should grant the Raymond Sackler family's request to protect it.

## II.     The Court Has Discretion to Permit Redaction of Current Counterparty Information

21.     Not only does section 107(b)(1) mandate the protection of Current Counterparty Information, but the Court also should permit redaction of that information as an exercise of its "inherent supervisory power . . . over its own records and files." *In re EPIC Assocs.*, 54 B.R. 445, 450 (Bankr. E.D. Va. 1985) (sealing information regarding the identities of financial institutions both under section 107(b) and the court's discretionary power over its records). *See also In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 336 (Bankr. N.D.N.Y. 1998) (explaining that when information does not fall into one of the section 107(b) categories, "whether to permit [public] access . . . is a matter left to the Court's discretion" after "examin[ing] the relevant facts and circumstances and . . . balanc[ing] the interests of the party opposing disclosure with that of the public") (citing *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589 (1978)).[7]

22.     Here, the balance of interests strongly favors permitting redactions of Current Counterparty Information. That information has no relevance whatsoever to any issue on the motions before the Court, and as a result, the public's interest in disclosure is *de minimis*. *See, e.g., United States v. Amodeo*, 71 F.3d 1044, 1050 (1995) ("Where . . . documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of access] is low and amounts to little more than a prediction of public access absent a countervailing reason."); *see also Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) (holding that the presumption of public access

---

[7]     *Cf. In re A C & S Inc.*, 775 F. App'x 78, 79 (3d Cir. 2019) (affirming order limiting access to exhibits filed with the bankruptcy court and noting "[e]very court has supervisory power over its own records and files"); *In re Avaya, Inc.*, 2019 WL 1750908, at *5 (Bankr. S.D.N.Y. Mar. 28, 2019) ("If a court determines that the document at issue is a judicial record and the presumption of public access attaches, it must then balance concerns for impairing law enforcement or judicial efficiency against the privacy interests of the person resisting disclosure. Although this standard was developed in cases that involved the common law presumption of public access, it provides helpful guidance in deciding whether the party seeking redaction has shown cause under 11 U.S.C. § 107(c) and Rule 9037." (citations omitted)).

in filings submitted in connection with discovery disputes, like the Privilege Motions, is lower than the presumption applied to material introduced at trial, or in connection with dispositive motions). On the opposite side of the scale, as discussed above, redactions are necessary to prevent situations – which have happened many times in the past – where counterparties pull away, destabilizing the Raymond Sackler family's financial interests and undermining its ability to fund a settlement. Under these circumstances, the court should exercise its discretion in favor of redacting Current Counterparty Information. *See In re EPIC*, 54 B.R. at 450 (ruling that the identities of financial institutions should be sealed, over objections from the press, because disclosure could cause substantial economic harm to creditors and investors).

## CONCLUSION

23.    The Raymond Sackler family respectfully requests that any order granting the Motions to Unseal provide that the Raymond Sackler family is authorized to redact public versions of unsealed materials to protect Current Counterparty Information, and that the Court grant the Raymond Sackler family such other relief as is just and proper.

Dated: February 7, 2021
      New York, New York

                                                Respectfully submitted,

 /s/ Gerard Uzzi
Gerard Uzzi
Alexander B. Lees
Eric K. Stodola
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219

 /s/ Gregory P. Joseph
Gregory P. Joseph
**JOSEPH HAGE AARONSON LLC**
485 Lexington Avenue, 30th Floor
New York, New York 10017
Telephone:    (212) 407-1200
Facsimile:    (212) 407-1280

*Counsel for the Raymond Sackler Family*

14