

**U.S. Department of Justice**

Office of Legislative Affairs

*Office of the Assistant Attorney General*  *Washington, D.C. 20530*

OCT 3 0 2020

The Honorable Andy Biggs
U.S. House of Representatives
Washington, DC 20515

Dear Congressman Biggs:

    This responds to your letter to the Department of Justice's (Department) United States Trustee Program (USTP) dated August 10, 2020, concerning the disclosures of connections that professionals who seek to be employed in bankruptcy cases are required by law to file with the court. The USTP continues to make enforcement of the disclosure requirements and conflict of interest prohibitions contained in 11 U.S.C. §§ 327 and 1103 and Rule 2014 of the Federal Rules of Bankruptcy Procedure (Rule 2014) a high priority.

    These provisions are critical to protecting creditors against self-dealing by the professionals that are retained and paid by the estate at creditor expense. In large chapter 11 cases, professional firms provide legal and financial advice that affects millions of workers and hundreds of billions of dollars in potential returns to creditors. Moreover, these requirements apply equally to professionals retained in smaller cases.

    To further enforcement efforts in this important area, in December 2019, the USTP issued an internal directive to its staff titled, "Principles to Guide USTP Enforcement of the Duty of Professionals to Disclose Connections to a Bankruptcy Case Under 11 U.S.C. §§ 327 and 1103 and Fed. R. Bankr. P. 2014." The document addressed the USTP's role in policing compliance with these requirements, particularly with respect to emerging issues involving the investments and affiliates of large professional firms retained in bankruptcy cases. The USTP conducted extensive training for its staff, made the document publicly available on its website to provide notice to professionals of the USTP's enforcement positions, and highlighted its enforcement policy at numerous national and local professional gatherings. A copy of the principles document is enclosed for your reference.

    The USTP provides the following responses to your questions.

    1.    In your opinion, how is the policing of Rule 2014 going?

    Response: While there is consensus regarding a professional's duty to disclose its connections, there are frequent disputes about the adequacy of such disclosures. Recent public attention, including widely covered litigation brought by the USTP and the dissemination of the principles document mentioned above, has undoubtedly improved compliance. Anecdotal

The Honorable Andy Biggs
Page Two

information suggests that the breadth of disclosures of connections made under Rule 2014 has increased as a result.

The adequacy of disclosure and disqualification for impermissible conflicts often entail questions of fact. Generally, as the bankruptcy system's "watchdog," the USTP takes a strict position to ensure that the courts—and not the professional firms themselves—determine the adequacy of disclosure and whether potential conflicts of interest are disqualifying based upon a full record. The USTP routinely seeks further information regarding apparent inadequacies in disclosures and potential conflicts and engages in a time-consuming process of negotiation prior to resolution by agreement or court decision. Despite the burden of these efforts, the USTP successfully resolves a significant majority of these issues through agreement. But in other instances, the professional firms remain resistant to supplementing the disclosures or conceding conflicts of interest. When those issues reach the court, the USTP's success rate is 86 percent, which is below that for most of its other enforcement litigation. It is important to note that the USTP often is the only party to raise these matters for court review; debtors and other parties seldom object to known omissions or conflicts of other firms except when it may provide them a strategic advantage in a case.

The following are some illustrative examples of cases brought by the USTP:

- In the Southern District of New York, upon inquiry from the USTP, a global professional firm that initially limited its disclosures to the "engagement team" expanded its conflicts search and supplemented its disclosures to cover connections for all of its global operations. The additional disclosures revealed that different teams from the firm were advising opposing sides in an important debtor transaction. To avoid an objection by the USTP, the firm withdrew from its conflicting representation.

- In the Eastern District of Virginia, the USTP objected to the creditors' committee's proposed retention of a professional firm whose parent had been employed by the debtor on a matter material to the reorganization. The committee withdrew the employment application in response to the USTP's objection.

- In a large chapter 11 case in the Southern District of New York, the USTP objected to the debtor's retention of counsel because of an actual conflict of interest. The firm disclosed that it represented the debtor's equity sponsor-parent in unrelated matters. Prior to the case, the firm represented the parent in its acquisition of a 70 percent stake in the debtors. And in the case, the parent was both the debtor's post-petition lender and the stalking horse bidder for the debtor's remaining 30 percent equity stake that it did not own. The court overruled the objection and approved the retention, concluding that the terms of the sale to the parent were fair to the debtor and the conflict did not affect the professional's performance.

The Honorable Andy Biggs
Page Three

- In a significant case in the Eastern District of Virginia, the USTP objected to the chapter 11 debtor's retention of a law firm that also represented the debtor's proposed post-petition lender in unrelated matters. In addition, one of the lender's affiliates was the stalking horse bidder seeking to purchase the debtor's assets. The lender represented approximately four percent of the law firm's revenues—many millions of dollars. The USTP argued that the extent and significance of these connections, as well as other connections, rendered the law firm not disinterested. In overruling the USTP's objection, the court concluded that there was no actual conflict and, regardless, it would "be too disruptive to the debtors" to deny retention.

- In a smaller case in the Southern District of Florida, a creditor revealed an irregularity in the debtor law firm's disclosure of connections. After review, the USTP concluded that the law firm did not disclose its prior representation of an interested party and successfully objected to payment of the law firm's fees of more $400,000, including disgorgement of more than $200,000 in fees that had been paid on an interim basis.

Finally, the USTP is currently reviewing the organizational structure of numerous national and global professional firms and their information barriers to determine if objections to employment are warranted. The complex structure of the largest professional firms continues to evolve along with the scope of their disclosures.

2.    Do you see any issues that are emerging regarding professionals and Rule 2014?

Response: The challenging issues that are emerging include the duty to disclose "confidential" clients, connections of affiliates, and investments made by or on behalf of the professional firm or its members. Although there appears to be more general agreement that firms that promise confidentiality to their clients cannot conceal those connections other than in the extraordinary circumstances set forth in the Bankruptcy Code, firms continue to seek exceptions from those requirements. With respect to affiliates, in some cases, firms adopt a narrow view of the definition of a "professional" who is subject to the disclosure requirements of Rule 2014. In addition, questions sometimes arise about whether affiliates are so remote from the bankruptcy engagement as to excuse disclosures. Finally, investments present extremely vexing factual issues regarding knowledge and the efficacy of information barriers.

The examples above also illustrate that professionals seeking to be retained, particularly in the larger cases, commonly disclose dual representations of other parties in the case on "unrelated matters." Delving into these otherwise undescribed engagements is burdensome, but in some cases, has resulted in the disclosure of disqualifying conflicts.

3.    What can Congress do to help? Do you need any additional resources, rules or regulations to ensure that professionals comply with Rule 2014?

Response: Given the fact-sensitive nature of many of the disputes, we have no recommendations for legislative action at this time. Based in part on the USTP's opposition, the

The Honorable Andy Biggs
Page Four

Judicial Conference's Advisory Committee on Rules of Bankruptcy Procedure rejected a recommendation to revise Rule 2014 to provide professionals with the discretion to determine which connections to disclose.

  4. For 2018, 2019 and, to the extent possible, 2020, how many objections were registered by the U.S. Trustee Office to retention applications for lack of disinterestedness and can you, again, break that number down by regional offices?

  Response: The table below reflects actions taken under sections 327 and 1103 of the Bankruptcy Code by the USTP's 21 regions related to retention applications in each of the past three fiscal years, broken down by formal objections filed by the USTP with the court and actions taken to resolve matters informally. These objections generally are based on grounds of disinterestedness and point out infirmities in the retention application or extrinsic evidence that demonstrate its inadequacy or inaccuracy. USTP objections commonly result in the applicant's withdrawal, supplemental disclosures, or other resolution.

| REGION (REGIONAL OFFICE) | OBJECTIONS FILED | | | INFORMAL ACTIONS | | |
|---|---|---|---|---|---|---|
| | FY 2018 | FY 2019 | FY 2020 (Through 6/30/2020)* | FY 2018 | FY 2019 | FY 2020 (Through 6/30/2020)* |
| 1 (Boston, MA) | 12 | 13 | 4 | 27 | 15 | 6 |
| 2 (New York, NY) | 27 | 43 | 22 | 349 | 385 | 223 |
| 3 (Philadelphia, PA) | 86 | 80 | 50 | 434 | 471 | 383 |
| 4 (Columbia, SC) | 40 | 39 | 17 | 121 | 100 | 60 |
| 5 (New Orleans, LA) | 18 | 23 | 16 | 29 | 20 | 20 |
| 6 (Dallas, TX) | 4 | 9 | 8 | 36 | 44 | 25 |
| 7 (Houston, TX) | 5 | 8 | 20 | 164 | 189 | 228 |
| 8 (Memphis, TN) | 9 | 12 | 11 | 46 | 35 | 31 |
| 9 (Cleveland, OH) | 16 | 15 | 7 | 67 | 50 | 51 |
| 10 (Indianapolis, IN) | 22 | 4 | 2 | 10 | 6 | 3 |
| 11 (Chicago, IL) | 8 | 13 | 12 | 35 | 22 | 22 |
| 12 (Cedar Rapids, IA) | 16 | 9 | 10 | 18 | 16 | 13 |
| 13 (Kansas City, MO) | 6 | 4 | 3 | 8 | 3 | 6 |
| 14 (Phoenix, AZ) | 4 | 3 | 3 | 2 | 1 | 2 |
| 15 (San Diego, CA) | 26 | 22 | 8 | 39 | 26 | 53 |
| 16 (Los Angeles, CA) | 69 | 60 | 40 | 76 | 60 | 42 |
| 17 (San Francisco, CA) | 35 | 23 | 15 | 62 | 59 | 39 |
| 18 (Seattle, WA) | 18 | 21 | 14 | 77 | 72 | 42 |
| 19 (Denver, CO) | 9 | 15 | 17 | 20 | 25 | 27 |
| 20 (Wichita, KS) | 24 | 10 | 6 | 9 | 12 | 4 |
| 21 (Atlanta, GA) | 50 | 50 | 41 | 129 | 116 | 91 |
| **Grand Total:** | **504** | **476** | **326** | **1,758** | **1,727** | **1,371** |

* Action totals for the third quarter of FY 2020 are preliminary and may change by the end of the fiscal year.

The Honorable Andy Biggs
Page Five

      The Department appreciates your support of the USTP's efforts to police compliance with bankruptcy laws and rules governing the disclosure of connections and conflicts of interest by professionals seeking to be retained in bankruptcy cases. We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

                                            Sincerely,

                                            Stephen E. Boyd
                                            Assistant Attorney General

Enclosure



U.S. Department of Justice

Executive Office for United States Trustees

*Office of the Director*                                *Washington, DC  20530*

December 4, 2019

**MEMORANDUM**

TO:           United States Trustees

FROM:    Clifford J. White III
              Director

SUBJECT:    Principles to Guide USTP Enforcement of the Duty of Professionals to Disclose Connections to a Bankruptcy Case Under 11 U.S.C. §§ 327 and 1103 and Fed. R. Bankr. P. 2014

      Pursuant to 28 U.S.C. § 586(a)(3)(I), the United States Trustee Program (USTP) has an important responsibility to review applications in chapter 11 cases to employ law and other professional firms ("professional firms")[1] that will seek payment from the bankruptcy estate. Due to the multiplicity of interests in a case—from large to small creditors, from employees to other stakeholders—the Bankruptcy Code and Rules mandate that professional firms disclose their connections to other parties in the case and satisfy conflict of interest standards.

      Although all parties in a case may object to the adequacy of a professional firm's disclosures and to a professional firm's retention because of potential or actual conflicts, it is usually only the USTP that makes inquiries or files objections. Our role as the "watchdog" of the bankruptcy system is to faithfully read and apply the Code and Rules and to raise issues that we have identified so that the court may make the ultimate determination on a professional firm's employment.

      The organizational structure of many professional firms seeking to be retained in bankruptcy cases has grown more complex in recent years. Some professional firms are affiliates of larger businesses that provide a variety of services to clients, both inside and outside of the bankruptcy system. In addition, some professional firms (including parents and affiliates) sponsor funds that invest in their business clients, in distressed debt that may be at issue in a bankruptcy case, or in industries (including competitors of their business clients) to which they provide services.

---

[1] As used herein, this term includes the individual professionals of a professional firm.

The increasingly complex profile of professional firms subject to the disclosure and conflict provisions of 11 U.S.C §§ 327 and 1103 and Fed. R. Bankr. P. 2014 makes both our review of employment applications and the court's decision on such applications more challenging. Accordingly, set forth below are the general principles that should guide you, as USTP personnel, in reviewing applications to employ professional firms in bankruptcy cases.

1.   **Enforce the Law**. The USTP's responsibilities start and stop with a textual reading and expert application of the Bankruptcy Code and Rules. Although professional firms may adopt internal protocols that guide their processes for compliance, these internal protocols cannot change substantive law. Nor can these protocols provide a safe harbor for a firm that does not meet the strict legal requirements governing disclosures and conflicts.

2.   **Disclose Connections on the Public Record.** It is the USTP's position that relevant bankruptcy law requires professional firms to disclose on the public record their connections to a case, even if they have a contractual arrangement to keep client information, including client names, confidential. The USTP will argue that a professional firm required to disclose information must either publicly disclose it on the record or file a properly supported motion to seal it under section 107 of the Bankruptcy Code for the court to adjudicate. Should the professional firm choose to file a motion to seal rather than publicly disclose the required information on the record, the USTP has a responsibility to object to any motion that does not satisfy the high bar for sealing.

3.   **Disclose Affiliate Connections**. It is the USTP's position that a professional firm being employed must disclose the connections of all its affiliates. Every case is fact specific and, in some circumstances, a professional firm may be able to show that it is sufficiently separate from its affiliates to excuse affiliate disclosure.[2] The applicant seeking to employ the professional firm bears the burden of proof and only the court has authority to excuse affiliate disclosure.

4.   **Disclose Connections Based on Investments**. Investments by the professional firm's investment affiliates or by their individual professionals may create conflicts and, depending on the circumstances, those conflicts can be just as serious as conflicts created by working for clients with adverse interests. It is the USTP's position that relevant bankruptcy law requires the professional firm to disclose connections that extend to investments in clients and other entities that may be a party in interest in the case, such as a stalking horse bidder, DIP lender, or other creditor. Investments include direct investments in such entity, as well as investments made through third parties.

In deciding whether investments must be disclosed, the USTP will analyze two key factors: (1) knowledge and (2) control. If the professional firm knew or could have known about the investment in a particular entity that may be involved in the case or an investment in the debtor's industry, then it is the USTP's position that the investment should be disclosed. Or, if the professional firm controlled or could have controlled the selection of the investment in a

---

[2] Separate incorporation may not be dispositive of whether affiliate disclosure may be excused. Professional firms routinely disclose connections of their separately incorporated affiliates when, for example, the separate legal entities belong to an international cooperative.

relevant entity or industry, then it is the USTP's position that the investment must be disclosed. Thus, for example, a typical investment in a diversified mutual fund that is managed by an independent outside advisor need not be disclosed. But a professional firm that sponsors pooled investments in clients who may be parties in interest in the case may be required to disclose those investments.

It is vital that the USTP acts consistently from district to district in this and other legal matters. Please ensure that all staff who review chapter 11 retention applications are familiar with these general disclosure principles. Each case will have unique facts that should be considered in a manner consistent with these principles.

The Office of the General Counsel should be consulted if there are any questions regarding these principles or their application in specific cases. This memorandum may be expanded and will be incorporated into the USTP Policy and Practices Manual, which will be made available to the public.[3] This memorandum is an internal directive to guide USTP personnel in carrying out their duties, but the ultimate determination on the obligations of professionals under section 327 and Fed. R. Bankr. P. 2014 resides solely with the court. Nothing in this memorandum has any force or effect of law, and nothing stated herein imposes on parties outside the USTP any obligations that go beyond those set forth in the Bankruptcy Code and Rules.

Thank you for your continued cooperation and diligence in this important area of responsibility.

---

[3] The USTP will continue to review and update this internal guidance, as appropriate. Moreover, nothing in this internal guidance: (1) limits the USTP's discretion to request additional information necessary for the review of a particular application; (2) limits the USTP's discretion to file comments or objections to applications, including as to whether a professional firm is disinterested or otherwise satisfies the statutory standards for retention in the case; or (3) creates any private right of action on the part of any person enforceable against the USTP or the United States.