SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 NORTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-1720
———
TEL: (312) 407-0700
FAX: (312) 407-0411
www.skadden.com

DIRECT DIAL
(312) 407-0806
DIRECT FAX
(312) 827-9320
EMAIL ADDRESS
PATRICK.FITZGERALD@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

February 10, 2021

**VIA EMAIL AND ELECTRONIC COURT FILING**

Office of the United States Trustee
William K. Harrington, United States Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

      RE: *In re: Purdue Pharma L.P. et al.*,
         No. 19-23649 (Bankr. S.D.N.Y.) (RDD)

Dear Mr. Harrington:

  We write in response to the letter submitted by counsel to the Ad Hoc Committee on Accountability (the "committee") on February 8, 2021 (the "Letter"), regarding the May 15, 2018 Memorandum of Understanding Regarding Joint Defense and Common Interest Agreement (the "Joint Defense Agreement" or "JDA") between certain Purdue entities ("Purdue" or the "Debtors"), certain members of the Sackler family, and additional entities and individuals associated with those Sackler family members (collectively, the "JDA Parties"). In its letter, the committee expresses concern that the JDA created a "connection" between Skadden and the Sackler family that should have been disclosed in the retention application for Skadden's appointment as Special Counsel to Purdue in the above-referenced Chapter 11 proceedings, and speculates about "the constraints that the JDA may have placed" on Skadden in its role

Office of the United States Trustee
William K. Harrington, United States Trustee
February 10, 2021
Page 2

as Special Counsel to Purdue. As set forth below, the committee's letter boils down to a claim that when a lawyer or law firm executes an agreement on behalf of a client at the client's request, the agreement becomes a "connection" of the law firm that, regardless of whether it creates any conflict with the client, requires disclosure pursuant to Rule 2014. That does not make logical sense, and is not the law.

**The Committee Misunderstands the Nature of the Joint Defense Agreement**

The committee's letter is premised on a fundamental misunderstanding regarding the nature of the JDA. To put it simply: the JDA is an agreement between the Purdue entities (Skadden's clients) and the other JDA Parties; it is not an agreement between *Skadden* and those Parties. While the JDA is executed through counsel, those counsel—myself included—signed the JDA "on behalf of" their respective clients. (*See* JDA (Letter Ex. A) at 1). Indeed, in paragraph 11 of the JDA, each counsel signing the JDA expressly "states and affirms that he or she has full authority to execute this Agreement on behalf of the Party for whom he or she executes the Agreement." (*Id.* ¶ 11.)

The committee's letter notes that the JDA "was not signed by the Debtors or by any of the Purdue entities; only by their counsel." (Letter at 1.) That is true here—as it is in the case of any number of documents, agreements and stipulations signed by counsel for clients—but also irrelevant. The JDA itself makes explicit that the agreement is between the Parties.

The committee also erroneously suggests that the JDA required its Parties to "mount a 'common defense' strategy based on the 'mutuality of interest' of Purdue and the Sacklers." (Letter at 1.) Not so. The JDA plainly does not obligate any of its Parties to assert a common defense strategy, or even to share any Defense Materials with one another. (*See* JDA ¶ 6.) Rather, the JDA simply provides that *if* any Party chooses to share otherwise privileged Defense Materials, its decision to do so will not constitute a privilege waiver. Any allegation premised on a contrary understanding is unfounded.

**The JDA Was Not Required to be Disclosed Under Rule 2014**

Given the nature of the JDA, the committee is incorrect to suggest that Skadden was required to disclose the JDA under Rule 2014 in its application to serve as Special Counsel to Purdue. Rule 2014 requires professionals being retained in bankruptcy cases to disclose "all of ***the person's*** connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P.

Office of the United States Trustee
William K. Harrington, United States Trustee
February 10, 2021
Page 3

2014(a) (emphasis added). Skadden's retention application did not reference the JDA for the simple reason that the JDA is not a "connection" between *Skadden* and the Parties to the JDA, but rather a connection between *Purdue* and the other Parties. As such, my declaration submitted in support of Skadden's retention application was true and correct when submitted in the fall of 2019, and remains so today.

Moreover, even where a connection exists between a retention applicant and one of the parties identified in Rule 2014, the disclosure requirement is limited by the purpose of Rule 2014, which is "to provide the Court (and the United States Trustee) with information to determine whether the professional's retention is in the best interests of the estate . . . and to maintain the integrity of the bankruptcy system." *In re Enron Corp.*, No. 01-16034 (AJG), 2002 WL 32034346, at *5 (Bankr. S.D.N.Y. May 23, 2002), *aff'd*, No. 02 CIV. 5638 (BSJ), 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003). Courts have recognized the need for a "common sense analysis of what connections are reasonably defined as pertinent to the ultimate question of disinterestedness, so that competent professionals do not find the requirements of representing parties in bankruptcy cases so burdensome as to deter them from doing so." *In re Fibermark, Inc*., No. 04-10463, 2006 WL 723495, at *11 (Bankr. D. Vt. Mar. 11, 2006); *see also In re The Leslie Fay Cos., Inc*., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (Rule 2014 requires disclosure of "facts that may have any bearing on the disinterestedness of a professional"). We need not debate where that line is drawn here, because there is neither a connection between Skadden and the JDA Parties other than its disclosed client, Purdue, nor any reason to believe that signing the JDA on Purdue's behalf caused Skadden's interests to diverge from those of Purdue.

Skadden was retained as Special Counsel to the Debtors pursuant to section 327(e) of the Bankruptcy Code.[1] The "ultimate question of disinterestedness" of special counsel retained under section 327(e) is only whether Skadden "does not represent or hold any interest adverse to the debtor or to the estate *with respect to the matter on which such attorney is to be employed*." *See* 11 U.S.C. § 327(e) (emphasis added). The Second Circuit has held that no conflict exists so long as "the interest of the special counsel and the interest of the estate are identical with respect to the matter for which special counsel is retained." *Bank Brussels Lambert v. Coan* (*In re AroChem Corp.*), 176 F.3d 610, 622 (2d Cir. 1999) (emphasis omitted); *see also In re JMK Constr. Grp., Ltd.*, 441 B.R. 222, 229 (Bankr. S.D.N.Y. 2010). That is precisely the case here. The interests of Skadden and the estate are aligned, and the act of signing

---

[1] The Committee's letter contains several references that allude to the requirements of section 327(a), including that "Skadden held or represented an interest adverse to the estate that was not disclosed when Skadden was retained." (*See* Letter at 4-5.) Section 327(a) has no application here.

Office of the United States Trustee
William K. Harrington, United States Trustee
February 10, 2021
Page 4

the JDA on Purdue's behalf and at Purdue's direction did not somehow put daylight between Skadden's interests and the interests of Purdue and the estate.

*In re Molten Metals Technology, Inc.*, 289 B.R. 505 (Bankr. D. Mass 2003), on which the committee heavily relies, is not to the contrary. That case is unique and readily distinguishable. There, more than three years into the bankruptcy, the debtor's special counsel made known for the first time that it had signed a joint defense agreement on behalf of its client, and boldly argued that agreement precluded it from sharing materials with the Chapter 11 trustee—which by that point was in effect the law firm's own client. Thus, the court found that the "estate was handicapped by a blind spot . . . of which it was unaware" up until the time of its disclosure three years after the bankruptcy began. *Id.* at 513. Because the agreement "contractually precluded [special counsel] from discharging certain obligations to the bankruptcy estate," *id.* at 512, and "could reasonably have had an effect on the firm's judgment and conduct in the case," *id.* at 513, the court held that it should have been disclosed under Rule 2014.

Of course, unlike in *Molten Metals*, there is no Chapter 11 trustee here. Moreover, in contrast to the peculiar agreement in *Molten Metals* (or at least the law firm's peculiar reading of the agreement), the JDA here does not in any way preclude Skadden from sharing materials and information with our own client.[2] Contrary to the committee's suggestions, the JDA only shields Defense Materials from "disclosure to any *third party*." (JDA ¶ 1 (emphasis added).) As Purdue is not a "third party" to the JDA, but rather a Party to it, any suggestion that the JDA "created a blind spot" for Purdue or the Debtors' estate is unfounded.[3]

**The JDA Has Not Been Concealed During the Bankruptcy Proceedings**

We recognize that Rule 2014 requires the disclosure of "connections" at the time of an application to be retained as counsel pursuant to section 327 of the Bankruptcy Code. For the reasons set forth above, no failure to disclose occurred here;

---

[2] The court in *Molten Metals* specifically found that the agreement gave the firm an interest adverse to the estate with regard to the matters for which they were retained because it prevented the firm from reporting to the estate on the results of investigations of the debtor's directors and officers. *Id.* at 513-14. As noted above, the JDA here in no way creates an interest adverse to the estate with regard to the matters for which Skadden was retained.

[3] It is also worth noting that since the *Molten Metals* decision was issued in 2003, no other court appears to have cited its discussion regarding the disclosure of the joint defense agreement at issue under Rule 2014, and we have not identified any cases that apply the same or similar reasoning.

Office of the United States Trustee
William K. Harrington, United States Trustee
February 10, 2021
Page 5

the JDA was not disclosed in Skadden's retention application because it did not create a "connection" between Skadden and the JDA Parties other than Purdue.

Nevertheless, we should note that the record is clear that there was no effort to conceal the JDA in the Chapter 11 proceedings. To the contrary, less than two weeks after Skadden was retained (on November 25, 2019), Skadden filed its first monthly fee statement, which included time records that reference joint defense calls with counsel for the Sackler family as early as September 26, 2019, and carrying forward consistently from that time. (*See, e.g.*, *Notice of First Monthly Statement of Skadden, Arps, Slate, Meagher & Flom LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Special Counsel to the Debtors for the Period From September 15, 2019 Through October 31, 2019*, Ex. D at 16, 23, 41, *In re Purdue Pharma, L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 6, 2019) [Dkt. No. 607] (referring to " JOINT DEFENSE GROUP CALL", " JOINT DEFENSE CALL WITH DEBEVOISE AND PAUL WEISS", and " CONFERENCE CALL WITH CLIENT, DAVIS POLK AND DECHERT RE: JOINT DEFENSE ISSUES").) And, as the committee's letter acknowledges, Skadden has filed multiple fee statements since that time that have included similar disclosures. (*See* Letter at 2, n.5.) Furthermore, prior to interim approval for its fees for the period September 15, 2019 through January 31, 2020, Skadden filed a fee application that expressly noted that throughout the fee period, Skadden "participated in numerous internal and external conference calls and meetings to coordinate various investigation and litigation workstreams and develop legal strategy, including with co-counsel and counsel for other parties with whom Debtors share a common interest." (*See First Interim Fee Application of Skadden, Arps, Slate, Meagher & Flom, LLP For Services Rendered and Reimbursement of Expenses as Special Counsel to the Debtors for the Period From September 15, 2019 Through and Including January 31, 2020* at p. 16, *In re Purdue Pharma, L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. May 14, 2020) [Dkt. No. 1154].) Moreover, in the course of its simultaneous investigation of potential causes of action, the Official Committee of Unsecured Creditors appointed in these Chapter 11 proceedings received a copy of the JDA in July of 2020.

**The JDA Had No Impact on the DOJ Resolution**

The committee also wildly speculates about the potential impact of the JDA on Purdue's settlement with the Department of Justice and Skadden's involvement in the negotiations thereof. (Letter at 4-5.) That speculation is neither grounded in reality nor relevant to the question of whether an agreement signed by a lawyer on behalf of his or her client with the client's approval creates a disclosable connection for the lawyer's firm or a potential conflict of interest.

Office of the United States Trustee
William K. Harrington, United States Trustee
February 10, 2021
Page 6

      We understand that the committee has expressed its disagreement with the Court's decision on the Rule 9019 motion to approve the settlement on a number of occasions. That is fair, and parties have the right to disagree. But it is an imposition on the Court and counsel to manufacture a false claim of inappropriate conduct where a plain reading of Rule 2014's requirement of disclosure of "person[al]" connections and the language of the JDA itself (which clearly identifies the Parties to the agreement) make clear that Skadden did not create a disclosable "person[al]" connection or any potential conflict of interest when it signed an agreement on behalf of a client at the client's request.

      If you have any questions or would like to discuss these matters further, please let us know.

      Respectfully,

      */s/ Patrick J. Fitzgerald*

      Patrick J. Fitzgerald

cc:    Honorable Robert D. Drain
       U.S. Bankruptcy Court for the Southern District of New York
       300 Quarropas Street, Room 248
       White Plains, NY 10601

       Office of the United States Trustee
       Attn.: Linda Riffkin, Assistant United States Trustee, Paul Schwartzberg, and Brian Masumoto
       U.S. Federal Office Building
       201 Varick Street, Suite 1006
       New York, NY 10014