**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-23649 (RDD) |

**COMBINED REPLY OF MEDIA INTERVENORS DOW JONES & COMPANY, INC., BOSTON GLOBE MEDIA PARTNERS, LLC, AND REUTERS NEWS & MEDIA, INC. TO THE RAYMOND SACKLER FAMILY'S AND MORTIMER D. SACKLER ICSP'S FEBRUARY 7 OBJECTIONS TO THE MEDIA INTERVENORS' MOTIONS TO <u>UNSEAL JUDICIAL RECORDS</u>**

Dow Jones & Company, Inc. ("Dow Jones"), publisher of *The Wall Street Journal* and other publications, including *WSJ Pro Bankruptcy* and Dow Jones Newswires, Boston Globe Media Partners, LLC, publisher of *The Boston Globe* and *STAT*, and Reuters News & Media, Inc. ("Reuters") (collectively, the "Media Intervenors"), submit this combined reply in response to the February 7, 2021 objections filed by the Mortimer D. Sackler Initial Covered Sackler Persons[1] ("Side A ICSPs") and the Raymond Sackler Family[2] ("Side B") (collectively, the "Sackler Families") to the Media Intervenors' pending unsealing motions.

**Relevant Background**

1.      The Media Intervenors filed their first unsealing motion on November 23, 2020,[3] followed by a second unsealing motion on December 22, 2020.[4]

---

[1] *Mortimer D. Sackler ICSP's Limited Objection to the Media Intervenors' Motion to Intervene and Unseal Judicial Records* [ECF 2361] ("Side A Opp.").
[2] *Limited Objection of the Raymond Sackler Family to the First and Second Motions to Unseal Judicial Records by Media Intervenors Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [ECF 2360] ("Raymond Sackler Opp.").
[3] *Motion to Intervene and Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [ECF 2022] (the "First Unsealing Motion").
[4] *Second Motion to Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [ECF 2188] (the "Second Unsealing Motion"). The Second Unsealing Motion

1

2. Pursuant to a stipulation so ordered by the Court on December 15, 2020,[5] the Official Committee of Unsecured Creditors, Debtors, the Sackler Families, the Non-Consenting States, and the IACs[6] agreed to publicly file the materials that no party asserted should remain under seal in three tranches prior to the January 20, 2021 hearing. Stip. at 5–8.

3. Pursuant to the stipulation, any and all objections to the First Unsealing Motion, including any argument in support of redaction or continued sealing of any document, were to be filed by January 11, 2021. *Id.* at 8.

4. The Raymond Sackler Family timely filed limited objections to the First Unsealing Motion on December 14, 2020,[7] stating their opposition to the unsealing of the names of counterparties and investment advisors with respect to third party investments and business relationships, non-public personal identifying information, personal medical information, and privilege logs and their addenda (collectively, "Privilege Log Materials").

5. The Debtors also timely filed limited objections to the First Unsealing Motion on January 11, 2021.[8]

6. The Media Intervenors filed a Reply in support of their unsealing motions on January 15, 2021, arguing, *inter alia*, that the Privilege Log Materials should be unsealed ("Media Intervenors' Reply").[9]

---

asked the Court to unseal all sealed and redacted judicial documents filed with the Court after the filing of the Media Intervenors' First Unsealing Motion. *See* Second Unsealing Mot. at 1.
[5] *Stipulation and Agreed Order Regarding Media Intervenors' Motion to Unseal Materials Filed in Connection with UCC Privileges Motions*, ECF 2140 (the "Stipulation" or "Stip.").
[6] As used in the Stipulation, "IACs" refer to the entities represented by Royer Cooper Cohen Braunfeld LLC in these Chapter 11 proceedings as of the date of the Stipulation.
[7] *Statement of the Raymond Sackler Family in Respect of the Motion to Intervene and Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* [ECF 2132] (the "Raymond Sackler Statement").
[8] *Debtors' Limited Objection to the Media Intervenors' Motions to Intervene and Unseal Judicial Records and Cross-Motion to Seal Certain Judicial Records* [ECF 2252].
[9] *Reply in Support of Motions to Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.* at 6–7 [ECF 2288].

7. On January 19, 2021, the day before the hearing on Media Intervenors' motions to unseal, the Side A ICSPs untimely filed a statement of joinder to the Raymond Sackler Family's objections, raising no new objections of their own (the "Side A Joinder").[10]

8. At the January 20, 2021 hearing, counsel for the Raymond Sackler Family presented argument in support of the objections raised in their reply. *See* Jan. 20, 2021 Hr'g Tr. at 100:12–106:25. Towards the end of the hearing, counsel for the Side A ICSPs asserted, for the first time, a "concern about safety" that "we think, require[s] redaction of certain names" in the Privilege Log Materials—an argument that had not been previously raised by any party. *Id.* at 118:13–15.

9. The Court ordered the parties to submit supplemental briefing as to the Privilege Log Materials, requiring the Sacker Families to make a "particularized" showing to justify redaction of the Privilege Log Materials, including by providing "actual court filings that are sought be redacted and a further description of what the concern is in real terms that the Sacklers have with regard to the [Privilege Log Materials]." *Id.* at 120:13–15, 122:14.

10. The Raymond Sackler Family filed its supplemental limited objection on February 7, 2021, reiterating their position that they are entitled to redact from the Privilege Log Materials the names of business counterparties and investment advisors with whom they have ongoing commercial relationships ("Current Counterparty Information"). *See* Raymond Sackler Opp. at 3. In support of this argument, the Raymond Sackler Family asserts, first, that the Media Intervenors did not object to the redaction of Current Counterparty Information until the January 20, 2021 hearing; second, that the Court has already ruled that Current Counterparty

---

[10] *Statement of the Mortimer Sackler Initial Covered Sackler Persons in Respect of the Reply in Support of Motions to Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.*, at 3 [ECF 2301].

3

Information constitutes confidential commercial information that must be redacted under Section 107(b)(1); and third, that the Court has discretion to redact Current Counterparty Information in the exercise of its inherent supervisory power. *Id.* at 6–13.

11. The Side A ICSPs also filed a supplemental limited objection on February 7, 2021. In addition to joining Side B's objection "seeking to maintain as confidential the identities of current investment counterparties," the Side A ICSPs also object to the disclosure of the names of "public-facing entities that are ultimately owned in whole or significant part by Side A ICSPs[,]" citing concerns about the potential for vandalism and violence towards the property and employees of said entities. *See* Side A Opp. at 3; 4–8. The Side A ICSP opposition was accompanied by a redacted Declaration of Jasmine Ball, as well as six sealed exhibits, ECF 2362.

12. As explained herein, the Raymond Sackler Family and the Side A ICSPs have failed to make the particularized showing required. Accordingly, redaction from the Privilege Log Materials of Current Counterparty Information, or the names of public-facing entities owned in part or in whole by the Side A ICSPs, is not permissible under Section 107 of the Bankruptcy Code or the First Amendment.

## ARGUMENT

### A. The Sealed and Redacted Filings Submitted in Support of the Side A ISCP's February 7 Objections Should Be Unsealed.

13. As an initial matter, the Media Intervenors object to the Side A ICSP's procedurally and substantively improper filing of exhibits under seal, as well as a partially sealed Declaration of Jasmine Ball.[11] The Side A ICSPs made no motion to file these materials under

---

[11] The Media Intervenors were not informed in advance that the Side A ICSPs intended to file anything under seal in response to the motions to unseal.

4

seal and have not even attempted to demonstrate that such sealing is permissible under Section 107 or the First Amendment. Nor could they make such a showing. Among other things, the contents of the exhibits filed with the Court under seal are repeated—almost verbatim—in the Side A ICSPs' publicly filed February 7 objections. *See* Side A Opp. at 5. For these reasons, the Court should order these materials immediately unsealed.

      **B.**    **The Media Intervenors Timely Objected to Redaction of the Privilege Log Materials, Including the Current Counterparty Information Therein, Pursuant to the Procedure in the So-Ordered Stipulation.**

    14.    The Raymond Sackler Family incorrectly asserts that the Media Intervenors did not raise objections to the redaction of Current Counterparty Information until the January 20, 2021 hearing.

    15.    As is clear from the email exchange filed as Exhibit B to the Raymond Sackler Opposition, ECF 2360-2, and memorialized in the so-ordered Stipulation, the Media Intervenors stipulated only as to the timing of the public filing of documents that no party asserted should remain under seal, with the understanding that any substantive objections on the part of the Media Intervenors regarding the propriety of continued sealing and redaction would be resolved at the January 20, 2021 hearing. Indeed, the Stipulation expressly provides that "[n]o agreement(s) as between the UCC, Debtors, the Sackler Families, the IACs, and the Non-Consenting States, and/or any other party, as to the continued sealing or redaction of any material filed in connection with the UCC Privileges Motions, or any other sealed or redacted material submitted to the Court in this matter shall be binding on the Media Intervenors, or otherwise affect their rights to assert that such material should be unsealed." Stip. at 8.

    16.    The Media Intervenors dedicated two pages of their January 15 Reply brief to opposing redaction of the Privilege Log Materials. *See* Media Intervenors' Reply at 6–7.

17. Thus, the Raymond Sackler Family's assertion that "[i]t was only at the January 20, 2021, hearing that the Media Intervenors first insisted—without giving any notice—that the privilege log materials attached to the Privilege Motions must be filed without redactions to protect Current Counterparty Information" is wrong, and ignores the process outlined in the so-ordered Stipulation.

### C. Current Counterparty Information is Not Confidential Commercial Information.

18. Citing, again, the Court's issuance of a protective order at the May 1, 2020 hearing in this matter, the Raymond Sackler Family reiterates its assertion that the Current Counterparty Information should be subject to redaction under Section 107(b)(1). *Compare* Raymond Sackler Opp. at 7–13, *with* Raymond Sackler Statement at 3–4. However, while the Court ordered that Current Counterparty Information exchanged between the parties in discovery should be "designated outside professionals only/confidential" under the parties' protective order, May 1, 2020 Hr'g Tr. at 42:13 [ECF 1139], the Court's ruling did not reach the question of whether such information constitutes confidential commercial information that should be redacted upon filing with the Court under Section 107(b)(1).

19. The Raymond Sackler Family contends that Current Counterparty Information qualifies as confidential commercial information. Raymond Sackler Opp. at 7–8 (citing *In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003); *In re Farmland Indus., Inc.*, 290 B.R. 364, 369 (Bankr. W.D. Mo. 2003); *In re Lomas Fin. Corp.*, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991)). That argument rests on an unreasonably expansive interpretation of Section 107(b)(1)'s prohibition on the release of confidential commercial information that ignores binding Second Circuit precedent.

20. Contrary to the Raymond Sackler Family's argument, Section 107(b)(1)'s protections do not sweep so broadly as to require redaction of any information that could "harm the Raymond Sackler family's economic interests and jeopardize its ability to fund a settlement." *Id.* at 9. The Second Circuit has defined confidential commercial information as information that would give "an unfair advantage to competitors" by revealing details about the debtor's commercial operations. *Video Software Dealers Assn. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (quoting *Ad Hoc. Protective Comm. For 10 ½ Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (Bankr. 9th Cir. 1982)).

21. This court in *In re Global Crossing Ltd.* noted that information that would give "an unfair advantage to competitors" may include information that could "prejudice [the estate or its creditors] as part of a sale process." 295 B.R. at 725. Similarly, in *In re Farmland Industries, Inc.*, the court found that public disclosure of the information for which redaction was requested—the dates by which the debtors were required to sell certain assets and information about the debtors' liquidity—would give potential buyers "substantial leverage," placing the debtor at "a distinct disadvantage" in the forthcoming negotiations. 290 B.R. at 369. The tangible and direct competitive disadvantage that would have befallen the debtor estates in these two cases stands in stark contrast to the speculative, generalized economic consequences posited by the Raymond Sackler Family here.

22. The Raymond Sackler Family hypothesizes that disclosure of Current Counterparty Information will encourage the counterparties to cease doing business with the Sackler Families, which in turn will hurt the Sackler Families financially, ultimately "jeopardiz[ing]" their ability to fund a settlement. Raymond Sackler Opp. at 9; *see also* May 1, 2020 Hr'g Tr. at 35:11–21 [ECF 1139] (arguing that "counterparties pull away if their names are

7

publicly associated with the [Sackler] family. . . . It's going to be counterproductive to the success of the cases if the family's wealth is harmed by disclosing counterparty names because relationships are terminated, or redemptions are forced.").

23. In addition to such a result being wholly speculative, shielding investment counterparties from the potential reputational effects of being publicly associated with the Sackler Families, in order to (potentially) protect the general economic interests of the Sackler Families, is simply not the type of interest that Section 107(b)(1) was intended to protect. This is, in effect, an effort to redact information that might cause embarrassment. *See, e.g.*, Raymond Sackler Opp. at 3 (raising concerns about "the intense and inaccurate attention paid to the Raymond Sackler family by the media, which for years has pushed the unsubstantiated—and untrue—narrative that the Sackler families and Purdue 'caused' the opioid crisis"). And "'[m]ere embarrassment, or harm to reputation based on [disclosure of] nonscandalous, nondefamatory information' is insufficient" to warrant sealing under Section 107(b); "'the dissemination of merely prejudicial material cannot be enjoined under the provision.'" *In re Motors Liquidation Co.*, 561 B.R. 36, 42 (Bankr. S.D.N.Y. 2016) (citing 2 Collier on Bankruptcy ¶ 107.03[1][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016)); *see also In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007) ("Section 107(b) is not intended to save the debtor or creditors from embarrassment.").

24. The final case relied upon by the Raymond Sackler Family, *In re Lomas Corp.*, does not counsel to the contrary. While the *In re Lomas Corp.* court declined to adopt a limited reading of Section 107(b)(1) that protected only information that would give an unfair advantage to a debtor's competitors, 1991 WL 21231 at *2, it has been abrogated by more recent decisions making clear that a narrow reading of Section 107(b)(1) is correct: "Although the information

8

need not rise to the level of a 'trade secret,' the information must be 'so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors.'" *In re Motors Liquidation Co.*, 561 B.R. at 43 (citing *In re Borders Grp., Inc.*, 462 B.R. 42, 47–48 (Bankr. S.D.N.Y. 2011)).

25. In short, Current Counterparty Information is not confidential commercial information under Section 107(b)(1) and should not be redacted from the Privilege Log Materials.

**D. Section 107 and the First Amendment Provide the Relevant Substantive Standards for Sealing or Redaction of Court Records in this Case.**

26. Under Section 107, any "paper filed in" a bankruptcy case must be made available to the public unless it is subject to one of the express, enumerated exemptions set forth therein. 11 U.S.C.A. § 107; *In re Food Mgmt. Grp., LLC*, 359 B.R. at 554. In addition, the First Amendment to the U.S. Constitution provides that documents filed in civil matters shall be open to the public unless "specific, on the record findings are made demonstrating that closure is essential to preserve higher values." *Lugosch v. Pyramid Co. of Onondaga*, 453 F.3d 110, 120 (2d Cir. 2006) (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)); *see also In re Traversa*, 371 B.R. 1, 5–6 (D. Conn. 2007) (applying First Amendment standard when evaluating motion to seal documents in bankruptcy proceeding).

27. While the common law also affords the public a presumptive right of access to judicial documents—which requires a court to balance public and private interests when determining whether sealing or redaction is warranted—that common law right has been codified and displaced in the context of bankruptcy proceedings by Section 107. *See In re Food Mgmt. Grp., LLC*, 359 B.R. at 554. As one court explained:

> Adopted by Congress in 1978, § 107 made an important change in the common law regarding public access to bankruptcy court records. It is no longer left to the bankruptcy court to balance the interests of the public and private parties in determining whether to seal records from public view. Under § 107(a), unless a paper filed in a bankruptcy court falls within one of the express exceptions in § 107(b) or (c), it must be open to public inspection.

*Id.*

28.     As set forth below, the remaining arguments raised by the Sackler Families in favor of continued sealing of portions of the Privilege Log Materials must fail under the applicable legal framework. Contrary to the Sackler Families' arguments, the Court cannot invoke common law—or supervisory—authority to seal or redact documents in a manner contrary to the requirements of Section 107.

### i.  Settlement of the Privileges Motions is Irrelevant.

29.     At the January 20, 2021 hearing, counsel for the Raymond Sackler Family argued that if the Privileges Motions are resolved by the parties without judicial intervention, any documents filed in conjunction with those Motions will not be judicial records subject to the presumptive right of access. *See* Jan. 20, 2021 Hr'g Tr. at 104:4–7, 105:23–25, 106:1–16 (discussing *Internat'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 2010 WL 779314 (S.D.N.Y. Mar. 2, 2010); *Giuffre v. Maxwell*, 2020 WL 133570 (S.D.N.Y. Jan. 13, 2020)).

30.     Purporting to apply the Second Circuit's reasoning in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the district court in *Giuffre* concluded that no right of access attached to papers filed in conjunction with motions that were never decided, as litigation between the parties had settled. 2020 WL 133570, at *2–3. However, the right of access addressed in *Brown* and *Giuffre* is the common law right—which, as noted above, has been codified and displaced by Section 107 in the bankruptcy context. *See In re Food Mgmt. Grp., LLC*, 359 B.R. at 554;

10

Jan. 20, 2021 Hr'g Tr. at 104:4–5.  The plain language of Section 107 provides that all "papers filed in" bankruptcy proceedings shall be presumptively open to the public, regardless of whether a judicial decision has been rendered.  11 U.S.C.A. § 107(a).

31.  Even if this Court looks to *Brown* to inform its decision as to whether to unseal the Privilege Log Materials, it should give little to no weight to the *Giuffre* court's reading of the case.  A more recent district court decision, *Dawson v. Merck & Co., Inc.*, 2021 WL 242148 (E.D.N.Y. Jan. 24, 2021), disagreed with the *Giuffre* court's interpretation of *Brown*.  Noting that the Second Circuit has held that "a 'presumption of *immediate* public access attaches . . . upon filing of a judicial document,'" the *Dawson* court concluded that "a judicial decision is not a prerequisite to finding a presumptive right of public access."  2021 WL 242148, at *5 (citing *Lugosch*, 435 F.3d at 120–21, 126).  The district court further took note of the Second Circuit's finding that a complaint remains a judicial document subject to the presumptive right of access, even after settlement, even when no judicial decision was rendered.  *Id.* (citing *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016)).  Accordingly, the court found that "[o]nce filed on the docket, the presumption of access attaches to a document and does not disappear."  *Id.*

32.  For these reasons, whether the parties reach a settlement on the Privileges Motions is irrelevant to the resolution of the Media Intervenors' unsealing motions.

### ii. The Court Cannot Exercise Supervisory Authority to Seal Filings in Contravention of Section 107 or the First Amendment.

33.  While it is true that "every court has supervisory power over its own records and files," *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978), that does not translate to unfettered authority to seal or redact material in a manner at odds with statutory or constitutional mandates.  *See In re Food Mgmt. Grp., LLC*, 359 B.R. at 554.  In support of its contention to the

11

contrary, the Raymond Sackler Family cites to *In re Avaya, Inc.*, 2019 WL 1750908 (Bankr. S.D.N.Y. Mar. 28, 2019). Raymond Sackler Opp. at 12 n.7. That case, however, does not support the Raymond Sackler Family's position; it merely explains that requiring a court to "balance concerns for impairing law enforcement or judicial efficiency against the privacy interests of the person resisting disclosure" is a standard used "in cases that involved the common law presumption of public access." *In re Avaya, Inc.*, 2019 WL 1750908, at *5.

34.     While the common law standards for sealing judicial records may be helpful for courts in determining whether certain personal identifying information should be redacted under Section 107(c), *see id.*, the common law does not vest courts with any independent authority to choose to seal materials otherwise required by statute to be publicly available. The cases cited by the Raymond Sackler Family suggesting otherwise are either unpublished and out-of-circuit[12] or predate this court's ruling to the contrary in *In re Food Management Group, LLC*.[13]

E.     **The Side A ICSPs' Belated Assertions of Speculative Safety Concerns Do Not Justify the Redaction of Names of "Public-Facing Entities" They Own "in Whole or in Significant Part."**

35.     The purported safety concerns raised by the Side A ICSPs are far too attenuated to justify continued sealing of any portion of the Privilege Log Materials. In support of their contention that Privilege Log Materials that would identify public-facing entities they own in whole or in part should remain under seal, the Side A ICSPs speculate that identifying these businesses could lead to vandalism or violent attacks against the property or employees of such entities. Side A Opp. at 3–4. In support of this, the Side A ICSPs point to statements made in

---

[12] *In re A C & S, Inc.*, 775 F. App'x 78 (3d Cir. 2019).
[13] *In re Bennett Funding Group, Inc.*, 226 B.R. 331 (Bankr. N.D.N.Y. 1998); *In re EPIC Assocs. V.*, 54 B.R. 445 (Bankr. E.D. Va. 1985).

online forums about members of the Sackler family. *Id.* at 4; *see generally* Exs. to Decl. of Jasmine Ball.

36. Section 107(c)(1) provides that a court may redact certain identifying information in order to protect an individual "to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C.A. § 107(c)(1). "The person who seeks to prevent disclosure must support his request with a concrete showing of potential harm." *In re Avaya, Inc.*, 2019 WL 1750908, at *6 (citing *Bernstein*, 814 F.3d at 144–45).

37. While unquestionably hateful and vitriolic, all examples provided by the Side A ICSPs are directed solely and specifically towards the Sackler family, whose central role in the opioid crisis has unquestionably made them the target of public ire. *See* Side A Opp. at 5. The Side A ICSPs offer no evidence of any threat of "unlawful injury" directed towards any business or other entity merely known to be affiliated with the Debtors or the Sackler family. *See id.*

38. By comparison, one court upheld the redaction of information under Section 107(c) where highly sensitive information of elderly claimants in the case—such as social security numbers and medical histories, combined with the individuals' names and addresses— were contained in court filings. *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 751–53 (Bankr. D. Del. 2018). There, the risk of identity theft or other unlawful injury to those vulnerable claimants was clearly demonstrated; here, the Side A ICSPs ask the Court to assume without any evidence that all threats directed towards the Sacklers must also be read as threats to properties and employees at entities they own in whole or in part.

39. The Side A ICSPs do not allege in their opposition, nor do they demonstrate in any of their supporting exhibits, that any member of the public has threatened violence against

13

employees of entities owned in whole or in part by members of the Sackler Families. *See* Side A Opp. at 4–7. Instead, they ask the Court to make a profound leap of logic and assume that online comments directed towards the Sackler family would necessarily metastasize into vandalism or acts of violence directed towards any business known to be owned in whole or in part by the Side A ICSPs. This falls far short of justifying redaction of the names of public-facing entities under Section 107(c)(1).

40. Further, the seriousness of these purported safety concerns is belied by the fact that the Side A ICSPs did not raise them until the January 20, 2021 hearing, nine days after the deadline to object to the Media Intervenors' unsealing motions. As agreed by the parties and so-ordered by the Court in the Stipulation, any objections to the Media Intervenors' unsealing motion were to be filed by January 11, 2021. Stip. at 8. The Side A ICSPs filed no objection, whatsoever, to unsealing on or before January 11, 2021.

41. On the eve of the January 20, 2021 hearing, the Side A ICSPs filed a statement indicating that they joined the Debtors and the Raymond Sackler family in asking the Court to deny the Media Intervenors' request to unseal the Privilege Log Materials. Side A Joinder at 3. The Side A ICSPs, again, did not raise concerns about the supposed risk of injury to individuals or property at that time, nor did the Debtors or the Raymond Sackler family raise such concerns in their respective oppositions to the unsealing motions.

42. Only during the January 20, 2021 hearing did counsel for the Side A ICSPs raise, for the first time, any concern about risk of injury to persons or property. The lateness of this objection only underscores the speculative and attenuated nature of the claimed risk.

## CONCLUSION

43. Neither the Raymond Sackler Family nor the Side A ICSPs has made a sufficient showing to warrant continued sealing of the categories of information they seek to redact. Neither Section 107(b)(1) nor the First Amendment permits the redaction of Current Counterparty Information; nor do speculative, unsupported concerns of risk of injury to persons or property justify the redaction of the names of business entities owned in whole or in part by the Side A ICSPs. Accordingly, for the foregoing reasons, the Privilege Log Materials should be unsealed without such information redacted.

## NOTICE

44. All parties in interest receiving electronic notifications of filings in these cases will have been provided with notice of this Reply.

Date:  February 14, 2021

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel for Media Intervenors
Dow Jones & Company, Inc.,
Boston Globe Media Partners, LLC,
and Reuters News & Media, Inc.*