# Exhibit 118



# Milbank

**ALEXANDER B. LEES**
*Partner*
55 Hudson Yards | New York, NY 10001-2163
T: 212.530.5161
alees@milbank.com | milbank.com

September 24, 2020

**VIA EMAIL**

Mitchell P. Hurley
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036

    Re:    In re Purdue Pharma L.P., No. 19-23649 (Bankr. S.D.N.Y.)

Dear Mitch:

    I write in response to your letters of September 19 and 22.

**Professionals/Advisors**

    Thank you for acknowledging in your September 19 letter that you concede, as you must, that communications with professionals such as accountants, financial advisors, public relations advisors, and other advisors "could be privileged." We presume you are referring to the numerous doctrines that hold that professionals can be within the scope of legal advice, including when they are employees or the functional equivalent, agents necessary to the provision of legal advice, work product experts, or fiduciaries, among others. Moreover, despite multiple requests that you do so, you have not stated any basis for challenging a work product assertion over documents involving the professionals at issue, and so we assume you have none. We have spelled out in our privilege logs and our several previous letters the reasons why the professionals and advisors were within the scope of a privilege or work product protection for the documents at issue. *See, e.g.*, PS-00562275 (describing document involving investment advisors as "Confidential communication requesting and reflecting request for and provision of legal advice regarding potential transaction" (emphasis added)). We therefore fail to understand why you believe more is needed on this subject, let alone how you could say that we have "not even tried" to justify our privilege assertions.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Mitchell P. Hurley
September 24, 2020                                                                                             Page 2

### Mike Cola

As for Mr. Cola, we find your September 19 missive perplexing. You again refer to "communications with a member of the Special Committee," yet we have told you that we withheld no communications with any "member the Special Committee" acting as such. We withheld communications involving our clients and members of the Purdue board as a whole when the subject was a matter of common interest – namely, opioid litigation in which Purdue and our clients mounted a joint defense. As for what you call "Side B's *ipse dixit* assertion as support for the notion that Mr. Cola was in fact acting in concert with the Sacklers," we remind you that you do not have to take our word for it. Please refer to any of the hundreds of lawsuits brought before the petition date against Purdue and the members of the Sackler family to understand the nature of the claims they asserted. All of the claims against the family members depend on the plaintiffs' success on their claims against Purdue. The complaints in those actions leave no room for doubt about the nature of the common interest.

### Lake Partners

Your September 22 letter continues to challenge the assertion of privilege and work product with respect to communications with Lake Partners on the incorrect assumption that it is a public relations firm. As our August 22 letter explained, Lake Partners is an expert engaged by litigation counsel. Lake Partners perform work product data analysis for litigation counsel, *not* public relations services. *See* https://lakepartners.com/what-we-do. That is why the privilege log describes the Lake Partners entries as "Confidential communication requesting and reflecting request for and provision of legal advice and attorney-work product regarding litigation strategy." You have identified no basis for challenging the assertion of privilege or work product as to communications involving Lake Partners.

### Stuart Baker and Jonathan White

We have explained previously that, when Mr. White and Mr. Baker were the only lawyers involved in a communication, we withheld the document when they were acting in a legal capacity and not just a business capacity. Our privilege log descriptions provide you with the information you need to know this. *See, e.g.*, JS-067631 ("Confidential communication requesting and reflecting *provision of legal advice* regarding potential sale transaction." (emphasis added)). This discharges our obligation. We further have reminded you that we produced tens of thousands of documents involving Mr. Baker where he was acting in a business capacity. We likewise have produced thousands of documents involving Mr. White. This demonstrates that we appropriately sought to discern the capacities in which Mr. Baker and Mr. White were acting and made privilege calls and document productions accordingly. You have offered no evidence to show that any of these judgment calls was incorrect.

Mitchell P. Hurley
September 24, 2020                                                                                              Page 3

### Steve Ives

The only thing in this debate that could possibly be considered (to use your word) "nonsense" is your assertion that you lack information about Mr. Ives and his relationship to the Raymond Sackler family. After nearly a year of discovery, the receipt of millions of pages of documents – including over 50,000 documents from Mr. Ives's personal files and his office – Mr. Ives's deposition transcript from the Oklahoma litigation against Purdue, and the deposition testimony that you took of Mr. Ives this week, we find it strange that you would say you do not understand his role. You are now indisputably aware that, in addition to serving as an accountant, Mr. Ives is a long-time employee and manager of the family office as well as a trustee of Raymond-side trusts and an officer of various Raymond-side entities. Yet your only justification for a challenge to our privilege assertions as to *every* privilege log involving Mr. Ives is that accountants, broadly, are not always within the scope of privilege.

You properly acknowledge that "there may be some circumstances in which an accountant's presence on a communication does not vitiate a claim of privilege," which we take as a concession that we properly withheld documents where Mr. Ives was acting as an accountant and facilitating a lawyer's provision of legal advice. *See, e.g.*, PS-00592975 (email from Steve Ives to Jonathan Sackler and Les Schreyer; Subject: "Ct use tax"; Description: "Confidential communication requesting and reflecting information provided to counsel for the purpose of providing legal advice and attorney-work product regarding litigation strategy."); PS-01442512 (email from Nathan Redman to Chadbourne attorneys and Steve Ives; Subject: Dr. Raymond & Beverly 2014 Gift Tax; Description: "Confidential communication requesting and reflecting request for legal advice regarding family estate."). But beyond this, you turn a blind eye to all other facts supporting the contention that Mr. Ives, separate from his role as accountant, is within the scope of privilege for Raymond Sackler family members and related trusts and entities – including that Mr. Ives was a trustee entitled to receive legal advice in respect of trusts, and that he was an employee, entitled to share in legal advice in respect of the family office and directed to perform a variety of other tasks on behalf of Raymond Sackler family members. *See, e.g.*, PS-02029407 (email from Tracy Adcock to Steve Ives and others; Subject: "FW: North Bay Trust Company Inc."; Description: Redacted confidential communication requesting and reflecting provision of legal advice of Leslie Schreyer regarding family estate.").

Even after a nearly 8-hour deposition of Mr. Ives on September 22, in which you covered the breadth of his role in respect of the Raymond Sackler family in detail (*see, e.g.*, Ives Tr. 41:21-48:15, 53:18-68:18, 89:3-89:6, 110:2-112:6, 147:5-151:10, 179:15-190:20, 199:13-202:21, 215:16-216:8, 230:7-233:5, 253:13-254:5), you have made no attempt to narrow your challenges. Instead, your September 22 letter doubles down on your tenuous position and extends it to any employee of the Raymond Sackler family office that works with Mr. Ives or has any accounting qualification. We reject your blunderbuss challenge.

Mitchell P. Hurley
September 24, 2020							Page 4

**Risa Heller, Randy Rose, Joel Burris**

With respect to the other newly identified individuals in your September 22 letter (Risa Heller, Randy Rose, Joel Burris), you have stated that you are relying on arguments from earlier correspondence. We thus assume you are reiterating your categorical assertions that professionals and advisors cannot be within the scope of privilege – notwithstanding your concession in your September 19 letter that this is not an accurate view of the law.

Mr. Rose and his roles and relationships with the Raymond Sackler family were the subject of extended testimony at Mr. Ives's deposition this week. Any assertion that you lack sufficient information to evaluate privilege assertions involving Mr. Rose is not well founded. *See* Ives Tr. 74:3-86:22, 210:10-211:21. Moreover, Mr. Rose appears on only two entries on our privilege log, both of which are subject to a claim of work product protection, which means, setting aside other arguments regarding the attorney-client privilege, the protection would be waived only if the disclosure to him increased the likelihood that an adversary would gain access to the material. *See* August 22 Letter (citing *N.Y. Times Co. v. United States DOJ*, 939 F.3d 479, 494 (2d Cir. 2019)). Similarly, Ms. Heller appears in a single entry on our privilege log, as to which we asserted work product protection. You have put forward no facts to support a conclusion that any disclosure to Ms. Heller or Mr. Rose waives the work product protection.

Mr. Burris is a real estate agent that appears on two communications: one with the file name "Lease Negotiations and Comments on Insurance Provisions" and described as a "Confidential communication requesting and reflecting request for and provision of legal advice regarding insurance," and a second with a file name "RE: Summer Road LLC - 655 Madison Avenue - 19th floor" described as a "confidential communication requesting and reflecting request for and provision of legal advice regarding family estate." These entries provide ample information to demonstrate that Mr. Burris was facilitating the provision of legal advice concerning a transaction. This defeats your assertion that Mr. Burris was not within the scope of privilege.

**Steve Ives's Pastor**

You included MB1172653_00002 in your list of entries involving accountants in Exhibit B to your September 22 letter. We find this mystifying. This document involves a conversation between Mr. Ives and his pastor, which was withheld under the clergy-communicant privilege, and was the subject of a lengthy interrogation by you during Mr. Ives's September 22 deposition. *See* Ives Tr. 383:3-391:15. During that interrogation, you established that all the elements of the privilege were present: namely, that Mr. Ives was communicating in confidence with his pastor, acting as such. Mr. Ives's pastor, moreover, is not an accountant for the Raymond Sackler family, or otherwise an employee of the family office. We therefore reject your challenge with respect to this privilege log entry.

Mitchell P. Hurley
September 24, 2020                                                                                                    Page 5

                                              *    *    *

It is apparent that you are intent on challenging the vast majority of our privilege assertions (the exhibits to your September 12 and 22 letters contain over 12,000 documents, which is approximately 2/3 of all entries on our privilege logs) no matter how much information about the specific individuals and entries we provide to you. You continue to profess ignorance of the abundant facts in your possession that would help you understand privilege relationships. We are disappointed by the UCC's head-in-the-sand approach. In response, however, while we are under no obligation to do so, we have undertaken to compile a list of individuals and entities appearing on our privilege log and provide additional information about the relationships among them. This chart demonstrates that many of the individuals and entities on our privilege logs have been discussed in our previous correspondence, which (along with this letter) we incorporate into the privilege logs by reference. For the others, we believe their relationships, including as they pertained to the common interest doctrine, were and remain apparent and straightforward, but we have spelled them out for you for the avoidance of doubt.

Finally, it should no longer be left unsaid that you have made no effort to hone your privilege challenges to focus on documents that actually matter to these cases. Some of the documents discussed in this letter exemplify the point: the documents involving Mr. Burris concern a real estate transaction that occurred in 2013, and has nothing to do with Purdue's marketing and sale of opioids, partnership distributions from Purdue, the settlement being offered in Purdue's bankruptcy, or any other matter that you are investigating. Similarly, in your September 12 letter, you continue to press for documents involving Joseph Madri, who we told you held a common interest with Richard Sackler with respect to a transaction with Yale University. These are mere examples. The point is that your sprawling discovery program has resulted in tens of thousands of privilege log entries, most of which are of no significance to the bankruptcy, and your expansive approach to privilege challenges already has and will continue to create a substantial amount of unnecessary work for the Court and the parties.

This problem is of the UCC's own making. You served an overbroad and disproportionate subpoena with more than 120 document requests including subparts, seeking documents dating back 25 years. (*see* your March 31 letter and attachment); you insisted that we take the most expansive approach to responsiveness possible, to ensure that even irrelevant documents that are responsive would be swept into our review (*see* your May 25 letter ("The ICSPs also include 'relevance' among many of their specific objections to the Subpoenas. We believe, however, that responsive documents returned by the agreed criteria should be produced despite relevance or other objections in virtually all cases."); and you demanded a document-by-document privilege log rather than following the local practice of generating categorical logs. You did this, moreover, in disregard of the Court's instruction to you that discovery in these cases was supposed to be in aid of due diligence of the proposed settlement, not preparation for trial, and should be tailored accordingly. *See, e.g.*, June 23 Tr. 38 ("[T]his is bankruptcy discovery. It's not in the context of an adversary proceeding or contested matter. This is to perform due diligence. It's very important due diligence, but it's to perform due diligence. So

Mitchell P. Hurley
September 24, 2020

Page 6

those who practice the bankruptcy area should know the difference."); August 26 Tr. 25 ("I just think it's important for the bankruptcy lawyers to keep an eye on the litigators and make sure that they understand the difference between doing due diligence and an examination and taking discovery for purposes of a trial.").

It is unfortunate that the UCC has chosen to proceed this way, at a cost to the estates of millions of dollars a month without any meaningful upside. But after our numerous letter exchanges, we see that you are determined to move for disclosure of manifestly irrelevant and privileged documents, and we perceive no way to persuade you to conduct a more rational and targeted process. As such, we agree we are at an impasse. Our next exchange on privilege matters will therefore have to be before the Court. We look forward to addressing these issues there.

Very truly yours,

/s/ Alexander B. Lees
Alexander B. Lees

cc:   Marshall Huebner (Davis Polk & Wardwell LLP)
      Andrew Troop (Pillsbury Winthrop Shaw Pittman LLP)
      Kenneth H. Eckstein (Kramer Levin Naftalis & Frankel LLP)
      Jasmine Ball (Debevoise & Plimpton LLP)

## Supplemental Information Regarding Relationships Between Raymond Sackler Family Members and Other Parties on the Privilege Logs

| Individuals/Entities Addressed in Prior Correspondence | | | |
|---|---|---|---|
| Acorn Foundation | *See* August 17, 2020 Letter. | Joseph Madri | *See* August 22, 2020 Letter. |
| Personal Assistant to Michael Sackler | *See* August 22 and September 2, 2020 Letters. | Joseph Valentino | *See* August 22, 2020 Letter. |
| Alex Troy | *See* August 22, 2020 Letter. | Kenneth Buckfire | *See* August 22 and September 2, 2020 Letters. |
| Amy Stevens | *See* August 7 and 16, 2020 Letters. | Kokino LLC | *See* July 28 and 31, 2020 Letters. |
| Anthony Roncalli | *See* August 17, 2020 Letter. | Lake Partners | *See* August 22, 2020 Letter. |
| Brian Olson | *See* July 28 and 31, 2020 Letters. | Investment Advisor | *See* August 22, 2020 Letter. |
| Bracewell LLP | *See* September 17 Letter. | Management Revisions Ltd. | *See* August 22 and September 2, 2020 Letters. |
| Chadbourne & Parke LLP | *See* August 17, 2020 Letter. | [redacted] | *See* September 24 Letter. |
| Cheyenne Petroleum Co. | *See* August 17, 2020 Letter. | Private Equity Investment | *See* August 22, 2020 Letter. |
| Davis Polk & Wardwell LLP | *See* August 7, 2020 E. Lilburn email. | Michael Kassen | *See* August 22, 2020 Letter. |
| Dezenhall Resources, Ltd. | *See* August 7 and 16, 2020 Letters. | Milbank LLP | *See* July 28 and 31, 2020 Letters. |
| Dina Ligotino | *See* August 22 and September 2, 2020 Letters. | Modi Group | *See* August 17, 2020 Letter. |
| Ernst & Young | *See* August 22, 2020 Letter. | Norton Rose Fulbright | *See* August 17, 2020 Letter. |
| Evercore Group L.L.C. | *See* August 22 and September 2, 2020 Letters. | Poco Bay Company | *See* August 17, 2020 Letter. |
| Foote & Associates LLP | *See* August 22, 2020 Letter. | Purple Strategies | *See* August 22 and September 2, 2020 Letters. |
| Goldin Solutions | *See* August 7 and 16, 2020 Letters. | Revinova Treuhand AG | *See* August 22 and September 2, 2020 Letters. |
| Hill & Knowlton Strategies | *See* September 17 and 24 Letters. | Risa Heller | *See* September 24 Letter. |
| Huron Consulting Group | *See* August 22, 2020 Letter. | Simpson Thacher & Bartlett LLP | *See* August 22 Letter. |
| Itziar Duran | *See* August 22 and September 2, 2020 Letters. | Real Estate Investment | *See* August 17, 2020 Letter. |
| Personal Assistant to Theresa Sac[kler] | *See* August 22 and September 2, 2020 Letters. | Executive Assistant to Mortimer D.A. Sackler | *See* August 22 and September 2, 2020 Letters. |
| Jason Krellman | *See* August 22, 2020 Letter. | Stephen A. Ives | *See* September 17 and 24, 2020 Letters. |
| Jerry Gliklich | *See* August 22, 2020 Letter. | Steve Miller | *See* August 22 and September 2, 2020 Letters. |
| Joerg Fischer | *See* August 22 and September 2, 2020 Letters. | Stuart Baker | *See* August 17 and 22, 2020 Letters. |
| Joel Burris | *See* September 24 Letter. | Summer Road LLC | *See* July 28 and 31, 2020 Letters. |
| Private Equity Investment | *See* August 22, 2020 Letter. | TXP Services Inc. | *See* May 20 and August 17, 2020 Letters. |
| Jonathan White | *See* August 22 and September 2, 2020 Letters. | Weil, Gotshal & Manges LLP | *See* July 31, 2020 Letter. |
| Joseph Hage Aaronson LLC | *See* July 28 and 31, 2020 Letters. | Whalen Search Group | *See* Nov. 11, 2019 Raymond-side Informational Presentation. |

- 1 -

| Raymond Sackler Family Members |
|---|

**Description**: Descendants of Raymond Sackler and their family members

**Associated Domain(s) (other than Sackler custodians):** █████

**Additional Detail on Relationships among Raymond Sackler Family Members:**

- The Raymond Sackler Family Members have a common interest relationship with one another regarding legal issues related to family trust matters; family business and investment matters; and bankruptcy planning and proceedings.
- The R-ICSPs and Marianna Sackler have a joint defense and common interest relationship with one another with respect to underlying opioid litigation.

**Counsel and Other Agents, Employees and Representatives of Raymond Sackler Family Members that Appear on the Privilege Logs not Previously Addressed in Correspondence:**

- Consultant
- Brian Pusch
- Christian Guzzy
- Christopher Mitchell
- Clare Locke LLP
- Conner & Winters LLP (also counsel to Steve Ives)
- Dierdre Daly (also counsel to Steve Ives)
- Dr. Hans-Ulrich Freimuller
- Elam & Burke, P.A.
- Administrative Assistant to Theresa Sackler
- Elvinger Hoss Prussen
- Farella, Braun & Martel LLP
- Francis Wikstrom (Richard Sackler)
- Henry Dove (through Paul Weiss in capacity as counsel to the Raymond Sackler Family)
- Hunton Andrews Kurth LLP (Joss Sackler)
- James Ledbetter
- Larry R. Watson
- Luther Strange & Associates LLC
- Marni Grossman
- Miller & Wells PLC
- McCown & Evans LLP (Marianna Sackler & ███)
- McDermott Will & Emery (R-ICSPs)
- Paul, Weiss, Rifkind, Wharton & Garrison LLP
- Phillip Bobbit (Richard Sackler)
- Ross Klenoff (Joss Sackler)
- Richard Wasserman
- Ruth Edelson (trust for Beth Sackler's benefit)
- Solomon Ward Seidenwurm & Smith, LLP
- Susan Frunzi (Beth Sackler and trusts for her benefit)
- Wachtell Lipton Rosen & Katz LLP (Richard & Jonathan Sackler)
- Withers LLP

---

[1] Beth Cohen is the ex-spouse of Richard Sackler and the mother of Marianna, Rebecca and David Sackler.

## Purdue Pharma

**Description**: Debtor

**Associated Domain(s):** pharma.com; purdue.onmicrosoft.com; purduepharma.com

**Additional Detail on Relationships between Raymond Sackler Family and Purdue Pharma:**

- The R-ICSPs were directors of Debtors.
- Raymond Sackler Family Members have a common interest relationship with Debtors with respect to legal issues concerning a settlement of opioid litigation, including through a bankruptcy process, and motion practice in the bankruptcy court for a preliminary injunction in aid of a settlement.
- The R-ICSPs and Marianna Sackler have a joint defense and common interest relationship with Debtors with respect to underlying opioid litigation and related investigations, including potential claims against Purdue and settlements of litigation.
- Raymond Sackler Family Members are beneficiaries of trusts with ownership interests in Purdue.

**Directors, Counsel and Other Agents, Employees and Representatives of Purdue Pharma that Appear on the Privilege Logs Not Previously Addressed in Correspondence:**

- Anderson Kill P.C.
- Brian Lockwood
- Cecil Pickett (*also co-defendant in underlying opioid litigation*)
- Clare Locke LLP
- Dechert LLP
- Edelman Holdings, Inc. / Daniel J. Edelman Limited
- Fish & Neave LP
- Herbert Schwartz
- Holbrook Bugbee
- Howard Udell
- J. David Haddox
- Jacques Theurillat
- Jones Day
- Josephine Martin
- Lynn Pinker Hurst & Schwegmann LLP
- Michael Joseph Collins
- Morgan, Lewis & Bockius LLP

- Peter Mathers
- Pam May Law Firm, P.S.C.
- Patricia Leigh
- Paulo Costa (*also co-defendant in underlying opioid litigation*)
- Peter Boer (*also co-defendant in underlying opioid litigation*)
- Ralph Snyderman (*also co-defendant in underlying opioid litigation*)
- Robert Kupper
- Skadden, Arps, Slate, Meagher & Flom LLP
- SmithTaylor Client Services, Sotheby's International Realty
- Stites & Harbison
- Stu Loeser & Co.
- Teneo
- The Dilenschneider Group
- Troutman Sanders LLP
- Vinson & Elkins LLP
- William Loomis
- Wilmer Cutler Pickering Hale and Dorr LLP

| IACs |
|---|
| **Description**: Independent Associated Companies<br><br>**Associated Domain(s):** mundipharma.com; mundipharma.co.uk; mundipharma.co.jp mundipharma-cbd.com; mundipharma.com.sg; mundipharma.ch; mundipharma.de; mundipharma.ae; mundipharma-rd.eu; mundipharma-edo.com; mundipharma.com.cn; mundipharma.com.br; mundipharma.es; mundipharma.co.za; mundipharma.com.co; mundipharma.co.kr; mundipharma.com.au; mundipharma.com.mx; mundipharma.fr; mundipharma.it; mundipharma.bm; mundipharma.com.my; mundipharma.hk; mundipharmaitservices.com; mundipharma.at; mundipharma.com.ar; mundipharma-to.com; modimundipharma.com; mundipharma.be; mundipharma.co.id; mundipharma.com.cy; mundipharma.com.ph; mundipharma.com.vn; mundipharma.dk; mundipharma.eg; mundipharma.no; mundipharma.pt; mundipharma.ru; mundipharmaservices.com; mundipharma-tous.com; mundibiopharma.com; norpharma.dk; napp.co.uk; pmn-iaf.com; winmedicare.com; windmedicare.com<br><br>**Additional Detail on Relationships between Raymond Sackler Family and the IACs:**<br><br>- The R-ICSPs were directors of certain IACs.<br>- The R-ICSPs were directors of MNP Consulting Ltd., which was an advisory board to the IACs.<br>- David Sackler is a director of MN Consulting LLC, which is an advisory board to the IACs.<br>- Raymond Sackler Family Members are direct or indirect shareholders of the IACs.<br>- Raymond Sackler Family Members have a common interest relationship with the IACs with respect to certain bankruptcy matters, including the proposed settlement.<br>- The R-ICSPs have a common interest relationship with the IACs with respect to investigations, including potential claims.<br><br>**Directors, Counsel and Other Agents, Employees and Representatives of IACs that Appear on the Privilege Logs Not Previously Addressed in Correspondence:**<br><br>- Ake Wikstrom<br>- Christopher Mitchell<br>- Cravath, Swaine & Moore LLP<br>- Hermance Schaepman<br>- Kitchen Table Partners<br>- Ogier<br>- Patricia Leigh |

| MN Consulting LLC and MNP Consulting Ltd. |
|---|
| **Description**: Advisory board to IACs |
| **Associated Domain(s)**: ██████ |
| **Additional Detail on Relationships between Raymond Sackler Family and MN Consulting LLC/MNP Consulting Ltd.:** <ul><li>The R-ICSPs were directors of MNP Consulting Ltd.</li><li>David Sackler is a director of MN Consulting LLC.</li><li>The R-ICSPs have a common interest relationship with MNP with respect to underlying opioid litigation.</li><li>The R-ICSPs have a common interest with MNP and MN with respect to investigations, including potential claims.</li><li>Raymond Sackler Family Members have a common interest relationship with MN and MNP with respect to certain bankruptcy matters, including the proposed settlement.</li></ul> **Directors, Counsel and Other Agents, Employees and Representatives of IACs that Appear on the Privilege Logs Not Previously Addressed in Correspondence:** <ul><li>Ake Wikstrom</li><li>Cecil Pickett</li><li>Jacques Theurillat</li><li>Melanie Rolli</li><li>Paulo Costa</li><li>Peter Boer</li><li>Ralph Snyderman M.D.</li><li>Subhanu Saxena</li><li>William Loomis</li><li>Xi Li</li></ul> |

| Mortimer Sackler Family Members |
|---|

**Description**: Descendants of Mortimer Sackler and their family members

**Associated Domain(s)**: [REDACTED]

**Additional Detail on Relationships between Raymond Sackler Family and Mortimer Sackler Family Members:**

- The R-ICSPs and certain Mortimer Sackler Family Members were directors of Debtors, certain IACs, MNP Consulting Ltd. and MN Consulting LLC.
- The R-ICSPs have a common interest and joint defense relationship with those M-ICSPs in underlying opioid litigation.
- Raymond Sackler Family Members have a common interest relationship with Mortimer Sackler Family members with respect legal issues relating to II-way business, investment and shareholder matters; IAC business, investment and shareholder matters; other joint family investments; bankruptcy planning and proceedings.

**Directors, Counsel and Other Agents, Employees and Representatives of Mortimer Sackler Family Members that Appear on the Privilege Logs:**

- A.J. O'Connor
- Carey Olsen
- Christopher Mitchell
- Clare Locke LLP
- Debevoise & Plimpton LLP
- Dr. Hans-Ulrich Freimuller
- Edelman Holdings, Inc. / Daniel J. Edelman Limited (through Debevoise & Plimpton in capacity as counsel to Mortimer Sackler Family)
- Elvinger Hoss Prussen
- Helen Bonneau
- Hermance Schaepman
- Kerry Sulkowicz
- Sard Verbinnen & Co. (through Debevoise & Plimpton in capacity as counsel to Mortimer Sackler Family)

| Other Parties | |
|---|---|
| Private Equity Investment | Agent of Private Equity Investment with which the R-ICSP custodians have a common interest as controlling shareholders. |
| Financial Intermediary | Banker for certain members of the Raymond Sackler Family; lender to certain R-ICSPs |
| Marc Magee | Agent of recipient of charitable donation from Jonathan Sackler |
| Financial Intermediary | Banker to entity managed by Kokino LLC |
| Shmaryahu Levin | Shareholder of joint venture partially owned by Raymond Sackler Family |