**Hearing Date and Time: April 21, 2021, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Date and Time: April 12, 2021, at 4:00 p.m. (prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF HEARING ON DEBTORS' MOTION TO APPROVE (I) THE ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT, (II) SOLICITATION AND VOTING PROCEDURES, (III) FORMS OF BALLOTS, NOTICES AND NOTICE PROCEDURES IN CONNECTION THEREWITH, AND (IV) CERTAIN DATES WITH RESPECT THERETO

**PLEASE TAKE NOTICE** that on March 15, 2021, the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**") filed the *Debtors' Motion to Approve the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Associates L.P. (N/A), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*(I) Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (the "**Motion**").  A hearing on the Motion will be held on **April 21, 2021, at 10:00 a.m. (prevailing Eastern Time)** (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted telephonically.[2]  Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[3] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing.  The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court,

---

[2]    A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operations-under-exigent-circumstances-created-covid-19.

[3]    The Bankruptcy Court's procedures for telephonic appearances are available at: http://www.nysb.uscourts.gov/telephonic-appearances-white-plains.

including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498], so as to be filed and received no later than **April 12, 2021** at **4:00 p.m.** (prevailing Eastern Time) (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default; *provided* that objecting parties shall attend the Hearing telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:   March 15, 2021
          New York, New York

                    DAVIS POLK & WARDWELL LLP

                    By:   */s/ Darren S. Klein*

                    450 Lexington Avenue
                    New York, New York 10017
                    Telephone: (212) 450-4000
                    Facsimile:  (212) 701-5800
                    Marshall S. Huebner
                    Benjamin S. Kaminetzky
                    Timothy Graulich
                    Eli J. Vonnegut
                    Christopher S. Robertson

                    *Counsel to the Debtors*
                    *and Debtors in Possession*

**Hearing Date and Time: April 21, 2021, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Date and Time: April 12, 2021, at 4:00 p.m. (prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## DEBTORS' MOTION TO APPROVE (I) THE ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT, (II) SOLICITATION AND VOTING PROCEDURES, (III) FORMS OF BALLOTS, NOTICES AND NOTICE PROCEDURES IN CONNECTION THEREWITH, AND (IV) CERTAIN DATES WITH RESPECT THERETO

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Purdue Pharma L.P. ("**PPLP**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully state the following in support of this motion (the "**Motion**"):

### Relief Requested

1.       Contemporaneously herewith, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") and the proposed *Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").  The Disclosure Statement contains over 200 pages of detailed information describing the Debtors' pre-petition business and operations, the events leading up to the filing of these Cases, the extensive process and other events leading up to the filing of the Plan, and the details of the Plan and this complex and interrelated settlements embodied herein.  This Motion seeks, *inter alia*, approval of the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code and approval of proposed solicitation and noticing procedures that are tailored to efficiently soliciting votes from hundreds of thousands of claimants.  The Debtors' respectfully submit that the Disclosure Statement contains adequate information and that such procedures are fair and reasonable.

2.       By this Motion, and pursuant to sections 105, 1125, 1126, and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rules 3017-1, 3018-1, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"**Local Rules**"), the Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "**Order**"), granting the following relief:[2]

a.   ***Disclosure Statement.***   Approving the Disclosure Statement for the Plan as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

b.   ***Disclosure Statement Hearing Notice.***   Approving the form and manner of notice (the "**Disclosure Statement Hearing Notice**") of the hearing to consider the Disclosure Statement (the "**Disclosure Statement Hearing**"), a copy of which is attached to the Order as **Exhibit 11**;

c.   ***Solicitation and Voting Procedures.***   Approving the procedures substantially in the form attached to the Order as **Exhibit 1** for (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "**Solicitation and Voting Procedures**");

d.   ***Ballots.***   Approving the forms of ballots (collectively, the "**Ballots**"), attached to the Order as **Exhibit 2A**, **Exhibit 2B**, **Exhibit 2C**, and procedures for the distribution thereof, including the form of master ballot (the "**Master Ballot**") for the submission of votes to accept or reject the Plan through attorneys representing **four (4) or more** holders of Claims via the provisions of the Solicitation Procedures (the "**Master Ballot Solicitation Procedures**") specific thereto;

e.   ***Notices of Non-Voting Status.***   Approving the following notices: (i) the form of notice applicable to holders of Claims that are Unimpaired under the Plan and that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (ii) the form of notice applicable to holders of Claims and equity Interests that are Impaired[3] under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan; (iii) the form of notice applicable to holders of Impaired Claims in Class 14 that are subject to subordination under section 510(c) or 510 of the Bankruptcy Code or other applicable law and that are, pursuant to section 1126(g) of the Bankruptcy Code, deemed to reject the Plan; (iv) the form of notice applicable to holders of Claims that are subject to a pending objection by the Debtors and that are

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the proposed *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"), a copy of which is attached as Exhibit A to the proposed *Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**").
[3] "Impaired" means, with respect to any Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code. *See* Section 1.1 of the Plan.

not entitled to vote the disputed portion of such Claim; and (v) the form of notice applicable to holders of Co-Defendant Claims that are Impaired under the Plan and that are subject to subordination under section 510(c) or 510 of the Bankruptcy Code or other applicable law, and that are subject to a pending objection by the Debtors, and that are, pursuant to section 1126(g) of the Bankruptcy Code, deemed to reject the Plan and who are not entitled to vote the disputed portion of such Claim (each, a "**Notice of Non-Voting Status**"), substantially in the forms attached to the Order as **Exhibit 3**, **Exhibit 4**, **Exhibit 5**, **Exhibit 6**, and **Exhibit 7**, respectively;

f.    *Solicitation Packages.*  Approving the forms of solicitation packages and finding that the solicitation materials and documents included in the solicitation packages (the "**Solicitation Packages**") that will be sent to, among others, holders of Claims entitled to vote to accept or reject the Plan, comply with Bankruptcy Rules 3017(d) and 2002(b);

g.    *Cover Letter.*  Approving form of cover letter from the Debtors annexed as **Exhibit 13** to the Order describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan;

h.    *Confirmation Hearing Notice.*  Approving the form and manner of notice of the hearing to consider Confirmation of the Plan (the "**Confirmation Hearing**" and, the notice thereof, the "**Confirmation Hearing Notice**"), substantially in the form attached to the Order as **Exhibit 12**;

i.    *Publication Notice.*  Approving the form and manner of notice of the Confirmation Hearing by publication (the "**Publication Notice**"), substantially in the form attached to the Order as **Exhibit 15**;

j.    *Plan Supplement Notice.*  Approving the form of notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as **Exhibit 10** (the "**Plan Supplement Notice**");

k.    *Assumption and Assignment and Rejection Notices.*  Approving the form of notices to be sent to counterparties to Executory Contracts and Unexpired Leases that will be assumed, and, if applicable assigned, or rejected pursuant to the Plan (the "**Assumption and Assignment Notice**" and the "**Rejection Notice**," respectively) substantially in the forms attached to the Order as **Exhibit 8** and **Exhibit 9**, respectively; and

l.    *Confirmation Timeline.*  Establishing the following dates and deadlines, subject to modification as necessary:

| Event | Date |
|---|---|
| Voting Record Date | March 10, 2021 |
| Disclosure Statement Objection Deadline | April 12, 2021, at 4:00 p.m., prevailing Eastern Time |
| Disclosure Statement Hearing | April 21, 2021, at 10:00 a.m., prevailing Eastern Time |
| Solicitation Deadline | May 19, 2021[4] |
| Deadline to Object to Claims for Voting Purposes | July 7, 2021 at 4:00 p.m., prevailing Eastern Time |
| Plan Supplement Filing Deadline | July 9, 2021 |
| Voting Deadline | July 14, 2021, at 4:00 p.m., prevailing Eastern Time |
| Rule 3018(a) Motion Filing Deadline | July 19, 2021, at 4:00 p.m., prevailing Eastern Time |
| Plan Objection Deadline | July 19, 2021, at 4:00 p.m., prevailing Eastern Time |
| Contract Objection Deadline | August 2, 2021, at 4:00 p.m., prevailing Eastern Time |
| Deadline to File Voting Report | August 2, 2021, at 12:00 p.m., prevailing Eastern Time |
| Deadline to File the Confirmation Brief and Omnibus Reply to Plan Objections | August 2, 2021, at 4:00 p.m., prevailing Eastern Time |
| Confirmation Hearing Date | August 9, 2021, at 10:00 a.m., prevailing Eastern Time |

3.     For the Court's reference, and as described in further detail herein, below is a list

of the various exhibits cited throughout this Motion:

| Relevant Document | Exhibit |
|---|---|
| Proposed Order | Exhibit A |
| Solicitation and Voting Procedures | Exhibit 1 to Proposed Order |
| Form of Ballot | Exhibits 2A, 2B, and 2C to Proposed Order |
| Unimpaired Notice of Non-Voting Status | Exhibit 3 to Proposed Order |

---

[4] The Solicitation Agent will use all practicable means to complete the mailing of the Solicitation Packages (as defined herein) within the noted time frame.

| Relevant Document | Exhibit |
|---|---|
| Notice of Non-Voting Status to Holders of Impaired Claims and Equity Interests Conclusively Presumed to Reject the Plan | Exhibit 4 to Proposed Order |
| Notice of Non-Voting Status to Holders of Impaired Claims in Class 14 (Other Subordinated Claims) | Exhibit 5 to Proposed Order |
| Notice of Non-Voting Status to Holders of Disputed Claims | Exhibit 6 to Proposed Order |
| Notice of Non-Voting Status to Holders of Impaired Claims in Class 12 (Co-Defendant Claims) | Exhibit 7 to Proposed Order |
| Assumption and Assignment Notice | Exhibit 8 to Proposed Order |
| Rejection Notice | Exhibit 9 to Proposed Order |
| Plan Supplement Notice | Exhibit 10 to Proposed Order |
| Disclosure Statement Hearing Notice | Exhibit 11 to Proposed Order |
| Confirmation Hearing Notice | Exhibit 12 to Proposed Order |
| Form of Cover Letter | Exhibit 13 to Proposed Order |
| Master Ballot Solicitation Notice and Solicitation Directive | Exhibit 14 to Proposed Order |
| Publication Notice | Exhibit 15 to Proposed Order |

### Jurisdiction and Venue

4.     The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Bankruptcy Rule 7008, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

5.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

6.      On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary Case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these Cases.

7.      These Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court in each of the Cases.

8.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [ECF No. 17].

## Plan Summary

9.      The Plan contemplates classifying holders of Claims and Interests into the following Classes of Claims and Interests for all purposes, including with respect to voting on, and distributions under, the Plan, pursuant to section 1126 of the Bankruptcy Code:[5]

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 1 | Secured Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| Class 3 | Federal Government Unsecured Claims | Impaired | Yes |

---

[5] The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor.  The classifications set forth in Classes 1-17 shall be deemed to apply to each Debtor.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 4 | Non-Federal Domestic Governmental Claims | Impaired | Yes |
| Class 5 | Tribe Claims | Impaired | Yes |
| Class 6 | Hospital Claims | Impaired | Yes |
| Class 7 | Third-Party Payor Claims | Impaired | Yes |
| Class 8 | Ratepayer Claims | Impaired | Yes |
| Class 9 | NAS Monitoring Claims | Impaired | Yes |
| Class 10 | PI Claims | Impaired | Yes |
| Class 11(a) | Avrio General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| Class 11(b) | Adlon General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| Class 11(c) | Other General Unsecured Claims | Impaired | Yes |
| Class 12 | Intercompany Claims | Unimpaired or Impaired | No (Presumed to Accept or Deemed to Reject) |
| Class 13 | Co-Defendant Claims | Impaired | No (Deemed to Reject) |
| Class 14 | Other Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 15 | PPLP Interests | Impaired | No (Deemed to Reject) |
| Class 16 | PPI Interests | Impaired | No (Deemed to Reject) |
| Class 17 | Intercompany Interests | Unimpaired or Impaired | No (Presumed to Accept or Deemed to Reject) |

10.     The Debtors propose to solicit votes to accept or reject the Plan from holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10, and 11(c) (the "**Voting Classes**").  The Debtors will not solicit votes to accept or reject the Plan from holders of Claims and Interests in Classes 1, 2, 11(a), 11(b), 12, 13, 14, 15, 16 and 17 (collectively, the "**Non-Voting Classes**").

### Basis for Relief

**II.    The Court Should Approve the Disclosure Statement.**

**A.    The Standard of Approval for a Disclosure Statement.**

11.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan. 11 U.S.C. § 1125.    Specifically, section 1125(a)(1) of the Bankruptcy Code states, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

12.    A disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 28 (S.D.N.Y. 1995) (adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties" (internal citation omitted)); *see also In re Amfesco Indus., Inc.*, No. CV-88-2952 (JBW), 1988 WL 141524, at *5 (E.D.N.Y. Dec. 21, 1988) (stating that "[u]nder section 1125 of the Bankruptcy Code, a reasonable and typical creditor or equity security holder must be provided 'adequate information' to make an informed judgment regarding a proposed plan"); *BSL Operating Corp. v. 125 E Taverns, Inc. (In re BSL Operating Corp.)*, 57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986) (stating that "[s]ection 1125 might be described as a non-rigid 'how-to-

inform' section . . . . A disclosure statement . . . is evaluated only in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests"); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (the adequacy of a disclosure statement is to be "determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negation process between informed interested parties"). "Adequate information" is a flexible standard, based on the facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *see also First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case."). This Court and others acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court. *See, e.g.*, *Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a): 'Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case.'" (*quoting* H.R. Rep. No. 595, at 408–09 (1977)); *see also In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (same);

*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court."); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) (internal citations omitted) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D. N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case.").

13.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

a.    the circumstances that gave rise to the filing of the bankruptcy petition;

b.    a description of the available assets and their value;

c.    the anticipated future of the debtor;

d.    the source of the information provided in the disclosure statement;

e.    the condition and performance of the debtor while in chapter 11;

f.    claims against the debtor's estate;

g.    a liquidation analysis setting forth the estimated return that creditors would receive if the debtor's case was converted to a case under chapter 7 of the Bankruptcy Code;

h.    the accounting and valuation methods used to produce the financial information in the disclosure statement;

i.    the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

j.    a summary of the chapter 11 plan;

k.      an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

l.      the collectability of any accounts receivable;

m.      any financial information, including financial valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

n.      the risks to creditors and interest holders under the plan;

o.      the actual or projected value that can be obtained from avoidable transfers;

p.      the existence, likelihood and possible success of nonbankruptcy litigation; and

q.      the tax consequences of the plan.

*See In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988); *see also In re Source Enters.*, 2007 Bankr. LEXIS 4770, *7–8 (Bankr. S.D.N.Y. July 31, 2007) (using similar list); *Phoenix Petroleum*, 278 B.R. at 393 (citing similar factors that courts have used to determine the adequacy of information contained in disclosure statements, while cautioning that "no one list of categories will apply in every case").

## B.      The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.

14.      The Disclosure Statement provides "adequate information" to allow holders of Claims in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains or will contain a number of categories of information that courts consider "adequate information," including (a) a description of the Debtors' business and assets; (b) a description of the circumstances that gave rise to the filing of the bankruptcy petition; (c) information about certain key events in the Cases; (d) the terms of the Plan; (e) the classification and treatment of holders of all Classes of Claims and Interests; (f) the effect of the Plan on holders of Claims and Interests and other parties in interest thereunder; (g) certain risk factors to consider that may affect the Plan; (h) certain tax issues

related to the Plan and distributions to be made thereunder; and (i) the means for implementation of the Plan.

15.    Based on the foregoing, the Debtors submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to holders of Claims entitled to vote to accept or reject the Plan.  Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and therefore should be approved.

### C.    The Disclosure Statement Provides Sufficient Notice of Injunction, Exculpation, and Release Provisions in the Plan.

16.    Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).

17.    The Plan provides that, on or prior to the Effective Date,[6] pursuant to the Plan and in accordance with the NewCo Transfer Agreement,[7] the NewCo Transferred Assets,[8] including the Initial NewCo Cash[9], shall be transferred to and vest in NewCo[10] or one or more

---

[6] "Effective date" means the date selected by the Debtors for the consummation of the Plan, or as soon thereafter as reasonably practicable.  *See* Section 9.1 of the Plan.

[7] "NewCo Transfer Agreement" means one or more agreements transferring the NewCo Transferred Assets, and all documents and information of the Debtors related thereto, from the Debtors to NewCo (or the transfer of the Transferred PPLP Subsidiaries to NewCo and the re-vesting of the NewCo Transferred Assets held by such Transferred PPLP Subsidiaries in such Transferred PPLP Subsidiaries), the terms of which shall be consistent with the Plan and otherwise acceptable to the Debtors, the Governmental Consent Parties and the DOJ, and which shall be filed with the Plan Supplement.  *See* Section 5.4 of the Plan.

[8] "NewCo Transferred Assets" means (i) the Initial NewCo Cash and (ii) all non-Cash Assets of the Debtors on the Effective Date (prior to giving effect to the Restructuring Transactions) other than the Excluded Assets.  *See* Section 5.4 of the Plan.

[9] "Initial NewCo Cash" means $200 million (subject to revision) of Effective Date Cash to be transferred to NewCo on the Effective Date.  *See* Section 5.4 of the Plan.

[10] "NewCo" means a newly formed Delaware limited liability company to be created in accordance with Section 5.4 of the Plan to receive the NewCo Transferred Assets and operate such NewCo Transferred Assets in accordance with the NewCo Operating Agreement.  *See* Section 5.4 of the Plan.

Subsidiaries[11] of NewCo (other than any NewCo Transferred Assets held by a Transferred PPLP

Subsidiary,[12] which shall revest in such Transferred PPLP Subsidiary), in each case free and

clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind.  *See* Plan

§ 5.4(c).  The Plan also provides that, on the Effective Date, the PAT Assets[13] shall vest in the

Plan Administration Trust[14] pursuant to the Plan and in accordance with the MDT Agreement,[15]

the MDT Transferred Assets[16] shall be transferred to and vest in the Master Disbursement

Trust,[17] and the Debtors shall irrevocably transfer, grant and assign to the Master Disbursement

Trust, MDT Insurance Rights,[18] in each case free and clear of all Claims, Interests, Liens, other

---

[11] "Subsidiaries" means, with respect to a Person, all direct and indirect subsidiaries of such Person. *See* Section 1.1 of the Plan.

[12] "Transferred PPLP Subsidiary" means a Debtor that is (i) a Subsidiary of PPLP as of immediately prior to the Effective Date and (ii) acquired directly or indirectly by NewCo pursuant to the NewCo Transfer Agreement.  *See* Section 5.4 of the Plan.

[13] "PAT Assets" means (i) the PAT Reserves; (ii) the PAT Distribution Accounts; (iii) the Excluded Assets that are not MDT Transferred Assets and (iv) the Retained Causes of Action relating solely to, and only to the extent necessary for, the administration of Claims against the Debtors (other than Channeled Claims), the enforcement of the Plan Administration Trust's rights and the other responsibilities of the Plan Administration Trust, provided, however, that, notwithstanding the foregoing, no Retained Causes of Action against Excluded Parties shall constitute PAT Assets, except as necessary to object to and resolve any Disputed Claims held by an Excluded Party.  *See* Section 5.3 of the Plan.

[14] "Plan Administration Trust" means the trust to be created in accordance with Section 5.3 **Error! Reference source not found.**of the Plan to administer and make Distributions in respect of Claims against the Debtors (other than Channeled Claims) and administer the Plan.  *See* Section 5.3 of the Plan.

[15] "MDT Agreement" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the Master Disbursement Trust, the terms of which shall be consistent with the Plan and otherwise reasonably acceptable to the Debtors, the Governmental Consent Parties and the Creditors' Committee[, in consultation with the NAS Committee,] and which shall be filed with the Plan Supplement.  *See* Section 5.6 of the Plan.

[16] "MDT Transferred Assets" means all right, title and interest of the Debtors arising under, or related to, (i) the MDT Operating Reserve; (ii) the MDT Causes of Action; (iii) the MDT Insurance Rights; (iv) the Shareholder Claim Rights; (v) any other Assets of the Debtors to be transferred to the Master Disbursement Trust, which shall be identified in the MDT Agreement; (vi) all Claims, entitlements, proceeds, payments, benefits, Causes of Action and choses in action arising under, or related to, any of the foregoing in accordance with the terms of the Plan; and (vii) any Surplus Reserve Cash to be distributed to the Master Disbursement Trust, upon the identification thereof by the Plan Administration Trustee or the dissolution of the Plan Administration Trust, in accordance with Section 5.12(c) of the Plan. *See* Section 5.6 of the Plan.

[17] "Master Disbursement Trust" means the trust established in accordance with Section 5.5(g) of the Plan to, among other things, (i) hold and administer the MDT Transferred Assets, (ii) make payments to the Private Creditor Trusts in satisfaction of the MDT Claims in accordance with the Private Entity Settlements and (iii) make Public Creditor Trust Distributions in respect of the MDT Interests from MDT Excess Cash in accordance with the Plan and the Public Entity Settlements.  *See* Section 5.6 of the Plan.

[18] "MDT Insurance Rights" means the Purdue Insurance Rights to be transferred by the Debtors to the Master Disbursement Trust on the Effective Date in respect of the MDT Insurance Policies.  *See* Section 5.6 of the Plan.

encumbrances and liabilities of any kind.  *See* Plan §§ 5.3(b), 5.6(b), 5.6(g).  The Plan and

Disclosure Statement clearly state, in bold, conspicuous language, that these terms are binding on

and enforceable against all Persons as a permanent injunction pursuant to Section 10.5(b) of the

Plan.  *See* Plan § 10.5(b); Disclosure Statement § IV.I.

18.    Further, Section 10.7 of the Plan provides for a channeling injunction pursuant to

which all Persons that have held or asserted, that hold or assert, or that may in the future hold or

assert any Channeled Claim[19] shall be permanently and forever stayed, restrained and enjoined

from taking any action for the purpose of directly or indirectly collecting, recovering or receiving

payments, satisfaction, recovery or judgment of any form from or against NewCo (or any of its

Subsidiaries), TopCo,[20] the Master Disbursement Trust, the Plan Administration Trust, or any

other Released Parties[21] with respect to any Channeled Claims or any Released Claims[22] arising

out of or related thereto (the "**Channeling Injunction**") and Section 10.6(b) of the Plan provides

for a release (the "**Releases by Holders of Claims and Interests**") by parties including all

Holders of Claims against or Interests in the Debtors in favor of (i) the Debtors, (ii) the Plan

Administration Trust and the Plan Administration Trustee[23], (iii) NewCo, (iv) TopCo, (v) the

---

[19] "Channeled Claim" means, collectively, Non-Federal Domestic Governmental Claims, Tribe Claims, Hospital Claims, Third-Party Payor Claims, NAS Monitoring Claims, PI Claims and, in each case, all Claims against Released Parties arising out of or related to any of the foregoing Claims. *See* Section 10.7 of the Plan.

[20] "TopCo" means a newly formed Delaware limited liability company to be created in accordance with Section 5.5 of the Plan to (i) receive and hold the NewCo Interest and collect TopCo Distributions of NewCo Excess Cash, (ii) enter into the NewCo/TopCo Guarantee and Keepwell Documents to which it is a party and (iii) make Public Creditor Trust Distributions in respect of the TopCo Interests from TopCo Excess Cash, in each case in accordance with the Plan and the TopCo Operating Agreement. *See* Section 5.5 of the Plan.

[21] "Released Parties" means, collectively, (i) the Supporting Claimants, solely in their respective capacities as such, and (ii) all Holders of Claims against or Interests in the Debtors, and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii) and the Debtors, each of their Related Parties. *See* Article X of the Plan.

[22] "Released Claims" means any Claims released pursuant to Section 10.6 of this Plan. *See* Section 10.6 of the Plan.

[23] "Plan Administration Trustee" means the trustee of the Plan Administration Trust appointed in accordance with Section 5.3(c) of the Plan. *See* Section 5.3(c) of the Plan.

Master Disbursement Trust and the MDT Trustees,[24] (vi) the Creditor Trusts,[25] and the Creditor

Trustees[26] (vii) the Creditors' Committee and its members, solely in their capacity as such,

(viii) the Ad Hoc Committee and its members, solely in their capacity as such, (ix) the MSGE

Group[27] and its members, solely in their capacity as such and (x) with respect to each of the

foregoing Entities in clauses (i) through (x), each of their Related Parties;[28] *provided*, *however*,

that no Excluded Party[29] shall be a Released Party in any capacity or respect.  The releases,

exculpatory provisions, and injunctions, including the Channeling Injunction and Releases by

Holders of Claims and Interests, are fully set forth in the Proposed Plan and Disclosure

Statement in conspicuous language.  *See* Plan §§ 10.6, 10.7, [10.8, 10.9,] 10.10 and 10.11;

Disclosure Statement § IV.I.  Further, each of the proposed forms of Ballots attached to the

Order as **Exhibits 2A, 2B and 2C** sets forth the releases, exculpatory provisions, and

---

[24] "MDT Trustees" means the trustees of the Master Disbursement Trust appointed in accordance with Section 5.6(d) of the Plan. *See* Section 5.6(d) of the Plan.

[25] "Creditor Trust" means (i) with respect to Non-Federal Domestic Governmental Claims, NOAT, (ii) with respect to Tribe Claims, the Tribe Trust, (iii) with respect to Hospital Claims, the Hospital Trust, (iv) with respect to Third-Party Payor Claims, the TPP Trust, (v) with respect to NAS Monitoring Claims, the NAS Monitoring Trust and (vi) with respect to PI Claims, the PI Trust. *See* Section 5.7 of the Plan.

[26] "Creditor Trustees" means each trustee of a Creditor Trust or collectively the trustees of the Creditor Trusts, in each case, appointed in accordance with Section 5.7(b) of the Plan. *See* Section 5.7 of the Plan.

[27] "MSGE Group" means the Multi-State Governmental Entities Group, the members of which consist of certain cities, counties and other governmental entities, tribal nations, hospital districts (but excluding hospitals themselves asserting Hospital Claims), medical groups and funds across 38 States, as described in the *Second Amended Verified Statement of the Multi-State Governmental Entities Group Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure* [ECF No. 1794], as amended from time to time. *See* Section 1.1 of the Plan.

[28] "Related Parties" means, with respect to a Person, such Person's predecessors, successors, assigns, Subsidiaries, affiliates, managed accounts or funds, past, present, and future officers, board members, directors, principals, agents, servants, independent contractors, co-promoters, third-party sales representatives, medical liaisons, members, partners (general or limited), managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys and legal representatives, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals and advisors, insurers, trusts (including trusts established for the benefit of such Person) trustees, protectors, beneficiaries, direct or indirect owners and/or equityholders, parents, transferees, heirs, executors, estates, nominees, administrators, legatees, as well as the Related Parties of each of the foregoing, in each case in their respective capacities as such. For the avoidance of doubt, the citizens and residents of a State shall not be deemed to be Related Parties of such State solely as a result of being citizens or residents of such State. *See* Sections 1.1 and 5.6 of the Plan.

[29] "Excluded Party" means (i) each Person identified on the Schedule of Excluded Parties and (ii) each Holder of a Claim against or Interest in any Debtor that votes to reject (if such Holder is entitled to vote) or objects to the Plan and such Holder's Related Parties. *See* Article X of the Plan.

injunctions, including the Channeling Injunction and Releases by Holders of Claims and Interests, in clear and conspicuous language.

19.     Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined by the Plan.

### D.     Approval of the Disclosure Statement Hearing Notice.

20.     Bankruptcy Rules 3017(a) and 2002 and Local Rule 3017-1 require that twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections and the hearing to approve a disclosure statement.  Concurrently with the filing of this Motion, the Debtors will serve the Disclosure Statement Hearing Notice in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* [ECF No. 498] upon all parties required to be noticed pursuant to Bankruptcy Rules 2002 and 3017 (the "**Notice Parties**").  The Disclosure Statement Hearing Notice identifies (a) the date, time, and place of the Disclosure Statement Hearing as April 21, 2021 at 10:00 a.m. (prevailing Eastern Time) and held telephonically, (b) the deadline for filing objections to approval of the Disclosure Statement as April 12, 2021 at 4:00 p.m. (prevailing Eastern Time), (c) the procedures for filing such objections, and (d) the manner in which a copy of the Disclosure Statement and/or the exhibits thereto can be obtained.  Copies of the Disclosure Statement and the Plan also are on file with the Clerk of the Court for review during normal business hours and are also available free of charge on the website maintained by the Solicitation Agent at https://restructuring.primeclerk.com/purduepharma/ (the "**Case Website**").

21.     The Debtors respectfully submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing for all purposes and, accordingly, request that the

Court approve such procedures as adequate and find that such notice is due and proper and that no further notice is necessary.

III.    **The Court Should Approve the Solicitation Materials and Timeline for Soliciting Votes on the Plan.**

A.    **The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting Deadline.**

22.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a). Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

23.    The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish **March 10, 2021** as the voting record date (the "**Voting Record Date**"), **May 19, 2021** as the solicitation mailing deadline (the "**Solicitation Deadline**"), and **July 14, 2021, at 4:00 p.m., prevailing Eastern Time** as the voting deadline (the "**Voting Deadline**").

24.    The Debtors request that, after they distribute Solicitation Packages to holders of Claims entitled to vote on the Plan (or such holders' Firm pursuant to the applicable response to the Solicitation Directive) by the Solicitation Deadline, the Court require that all holders of Claims entitled to vote on the Plan (or such holders' Firm pursuant to the applicable response to

the Solicitation Directive) complete, execute, and return their Ballots so that they are **actually received** by Prime Clerk LLC, in its capacity as solicitation agent for the Debtors (the "**Solicitation Agent**"), on or before the Voting Deadline.

25.    The foregoing timing and materials will afford holders of Claims entitled to vote on the Plan at least fifty-six (56) days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline, consistent with the requirements of the applicable Bankruptcy Rules. *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims). Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to the holders of Claims in the Voting Classes.

**B.    The Court Should Approve the Procedures for Establishing Claim Amounts for Voting Purposes and Temporary Allowance and Disallowance of Claims for Tabulation Purposes.**

26.    Pursuant to section 1126(a) of the Bankruptcy Code, the holder of an "allowed" claim may accept or reject a chapter 11 plan. A class of claims accepts a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors that voted. 11 U.S.C. § 1126(c). Bankruptcy Rule 3018(a) provides that the court may temporarily allow a claim in an amount that the bankruptcy court deems appropriate for the purpose of such claim holder accepting or rejecting a plan. The Debtors submit the following procedures provide for a fair and equitable voting process.

27.     The Debtors propose that, solely for the purpose of voting, each Claim within the Voting Classes be temporarily allowed in an amount equal to the liquidated, noncontingent, and undisputed amount of such Claim set forth in the Schedules[30] or Proof of Claim,[31] as applicable, subject to the following exceptions:

    i.    If a Claim is deemed Allowed[32] under the Plan, such Claim is allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

    ii.    If a Proof of Claim was timely filed in an amount that is wholly liquidated, noncontingent, and undisputed, such Claim is temporarily allowed for voting purposes only in the amount set forth on the Proof of Claim, unless such Claim is disputed as set forth in subparagraph x below;

    iii.    If a Claim for which a Proof of Claim has been timely filed is wholly contingent, unliquidated, or disputed (based on the face of such Proof of Claim or as determined upon the review of the Debtors), such Claim is accorded one (1) vote and valued at One Dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution, unless such Claim is disputed as set forth in subparagraph x below;

    iv.    Notwithstanding anything to the contrary herein, each Claim in Class 4 (Non-Federal Domestic Governmental Claims), Class 5 (Tribe Claims), Class 6 (Hospital Claims), Class 7 (Third-Party Payor Claims), Class 8 (Ratepayer Claims), Class 9 (NAS Monitoring Claims) and Class 10 (PI Claims) shall be accorded one (1) vote and valued at One Dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution, unless such Claim is disputed as set forth in subparagraph x below;

---

[30] "Schedules" means the schedules of assets and liabilities, statements of financial affairs, lists of Holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court to the extent such filing is not waived pursuant to an order of the Bankruptcy Court. *See* Sections 1.1 of the Plan.

[31] "Proof of Claim" means a proof of Claim against any of the Debtors filed in the Chapter 11 Cases in accordance with section 501 of the Bankruptcy Code. *See* Section 1.1 of the Plan.

[32] "Allowed" means (i) with respect to a Channeled Claim, such Claim that has been allowed by the applicable Creditor Trustee in accordance with the applicable Creditor Trust Documents. Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim on and after the Petition Date and (ii) with respect to any Claim (other than a Channeled Claim) against or Interest in a Debtor, such Claim or Interest (A) that is allowed pursuant to the Plan or a Final Order; (B) as to which no objection has been timely filed and that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Bar Date or that is not required to be evidenced by a filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code or a Final Order; or (C) the amount of which has been agreed, compromised, settled or otherwise resolved pursuant to the authority of the Debtors or the Plan Administration Trustee, as applicable. No Claim of any Person subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Person pays in full the amount that it owes such Debtor or the Plan Administration Trustee. Correlative terms such as "Allow" and "Allowance" have correlative meanings. *See* Section 1.1 of the Plan.

v.      If a Claim is listed on a timely filed Proof of Claim as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the amount that is liquidated, noncontingent and undisputed, unless such Claim is disputed as set forth in subparagraph x below;

vi.     Subject to subparagraphs x-x below, if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court on or before the Voting Deadline, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only;[33] *provided* that nothing in the Solicitation and Voting Procedures shall limit in any way the effect of any order allowing a Claim for purposes of distribution and allowance;

vii.    Any claimant who has filed or purchased duplicate Claims within the same Class (based on the reasonable determination of the Debtors, in consultation with the Creditors' Committee) will be provided with only one (1) Solicitation Package and one (1) Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claim;

viii.   Each claimant who holds or has filed more than one (1) non-duplicative Claim within a particular Class shall be treated as if such claimant has only one (1) Claim in such Class in the aggregate dollar amount of such Claims;

ix.     If a Proof of Claim has been validly amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall entitle the holder of such Claim to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim.  Except as otherwise ordered by the Court, any amendments to proofs of claim after the Voting Record Date shall not be considered for purposes of these tabulation rules;

x.      If any party in interest with appropriate standing has filed an objection to a Claim on or before July 7, 2021 at 4:00 p.m. (prevailing Eastern Time) (such claim, a "**Disputed Claim**"), such Disputed Claim is temporarily disallowed for voting purposes, except as otherwise provided in a stipulation, settlement, or other agreement filed by the Debtors (in consultation with the Creditors' Committee) or as ordered by the Court prior to or concurrent with entry of an order confirming the Plan, including pursuant to an order on any Rule 3018 Motion (as described below) filed regarding such Claim; *provided* that if the objection seeks to reclassify or reduce the allowed amount of such Claim, then such Claim is

---

[33]  For the avoidance of doubt, pursuant to the DOJ 9019 Order, entered November 18, 2020 (ECF 2004), the DOJ Unsecured Claims are allowed for voting purposes.

temporarily allowed for voting purposes in the reduced amount and/or as reclassified, except as otherwise provided in a stipulation, settlement, or other agreement filed by the Debtors (in consultation with the Creditors' Committee) or as may be otherwise ordered by the Court prior to or concurrent with entry of an order confirming the Plan;

xi.     If any claimant seeks to challenge the disallowance of its Claim for voting purposes pursuant to subparagraph x above, such claimant must file a motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018 Motion**") on or before July 19, 2021 at 4:00 p.m. (prevailing Eastern Time) (the "**Rule 3018(a) Motion Filing Deadline**"), unless such deadline is extended by agreement of the Debtors (in consultation with the Creditors' Committee). Upon the filing of a timely Rule 3018 Motion, the Solicitation Agent will provide such claimant with a Ballot or a new Ballot with an updated voting amount (as applicable). For purposes of filing the Voting Report, if the Rule 3018 Motion is resolved by order of the Court, stipulation, or settlement by the business day before the deadline to file the Voting Report, the Solicitation Agent will tabulate (or not tabulate, as applicable) such vote according to any aforementioned resolution. Otherwise, the Solicitation Agent will treat the vote with respect to such Claim as disallowed for voting purposes to the extent provided in subparagraph x above for the purposes of tabulating (or not tabulating) votes in connection with preparation and filing of the Voting Report. The vote with respect to such Claim shall be treated as disallowed for voting purposes to the extent provided in subparagraph x above for purposes of confirmation of the Plan except as otherwise provided in a stipulation, settlement, or other agreement filed by the Debtors (in consultation with the Creditors' Committee) or as ordered by the Court prior to or concurrently with entry of an order confirming the Plan, including pursuant to an order on any Rule 3018 Motion. For the avoidance of doubt, any Claim in Class 4 (Non-Federal Domestic Governmental Claims), Class 5 (Tribe Claims), Class 6 (Hospital Claims), Class 7 (Third-Party Payor Claims), Class 8 (Ratepayer Claims), Class 9 (NAS Monitoring Claims), Class 10 (PI Claims), or Class 11 (c) (Other General Unsecured Claims) temporarily allowed for voting purposes pursuant to this subparagraph (xi) shall be accorded one (1) vote and valued at One Dollar ($1.00) for voting purposes only; and

xii.    The Debtors shall not be required to send Solicitation Packages to creditors whose Claims (a) are based solely on amounts scheduled by the Debtors that have already been paid in the full scheduled amount or (b) have been scheduled in a wholly unliquidated, contingent, or disputed amount and with respect to which such creditor did not timely file a Proof of Claim.

28.     The vast majority of the over 600,000 Claims are unliquidated.  Estimating such Claims for purposes of voting on a claim-by-claim basis would be an incredibly burdensome and expensive endeavor.  Allowing each Claim at $1.00 as set forth above is a reasonable proxy for voting purposes.  Courts presiding over numerous other mass tort chapter 11 cases have allowed claims temporarily for limited purposes, including allowing such claims at $1.00 for voting purposes, in order to facilitate voting on plans of reorganization and to ensure that the votes of tort victims are adequately represented in chapter 11 cases.  *See, e.g.*, *In re A.H. Robins Co., Inc.*, 88 B.R. 742, 747 (E.D. Va. 1988), *aff'd*, 880 F.2d 694 (4th Cir. 1989) (the placement of a nominal value on each claim for voting purposes was appropriate as "[a]ny attempt to evaluate each individual claim for purposes of voting on the Debtor's Plan of Reorganization would, as a practical matter, be an act of futility, and would be so time consuming as to impose on many, many deserving claimants further intolerable delay all not only to their detriment, but to the detriment of the financial well being of the estate as well"); *In re Johns-Manville Corp.*, 68 B.R. 618, 631 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987) (approving procedures fixing asbestos claims at $1.00 for voting purposes and finding that "[t]he effect of the voting procedures adopted for AH claimants in this case has been to enfranchise the greatest possible number of asbestos health victims" and further holding that "[i]t has been the stated goal of this court and of the parties in interest throughout these proceedings to ensure the protection and participation of the interests of the asbestos health victims.  The construct of the voting procedure is proper as it clearly meets the desideratum of expanded sufferage and participation in the reorganization by all parties in interest"), *aff'd*, 843 F.2d 636 (2d Cir. 1988); *Pension Ben. Guar. Corp. v. Enron Corp.*, No. 04 CIV. 5499 (HB), 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004) (citing *Johns-Manville*, 68 B.R. at 631); *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 428

(Bankr. D. Md. 2007) (approving procedures that valued personal injury claims at $1.00 temporarily for voting purposes where, among other things, the official committee with fiduciary duties to such personal injury claimants supported the proposed voting procedures, and further holding that "the objectors appear to lose sight of the fact that the Class 3 claims are only being allowed for voting purposes.  They will not be adjudicated by the bankruptcy court, and there is no reason, as the Objectors suggest, to hold hearings, complete with evidence and argument, as to the value of the asbestos claims"); *In re Plant Insulation Co.*, Case No. 09-31347 (TC) [ECF No. 1000] (Bankr. N.D. Cal. Feb. 1, 2011) (approving procedures to temporarily allow claims of asbestos claimants for voting purposes only at set amounts based on injury schedule); *In re Thorpe Insulation Co.*, Case No. 19271 (BB) [ECF No. 1270] (C.D. Cal. Aug. 8, 2008) (same); *In re Maremont Corp.*, Case No. 199-10118 (KJC) (Bankr. D. Del. May 17, 2019) [ECF No. 241] (same); *In re TK Holdings, Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) [ECF No. 1639] (approving procedures temporarily allowing tort claims relating to Debtors' defective airbag inflators, whether based on personal injury, wrongful death, or economic loss, at $1.00 for voting purposes).

29.    If any claimant seeks to challenge the disallowance of its Claim for voting purposes, the Debtors propose that such claimant must file a motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a Rule 3018 Motion).  Upon the filing of a Rule 3018 Motion, the Debtors propose that the Debtors will direct the Solicitation Agent to provide such claimant with a Ballot (or a new Ballot with an updated voting amount, as applicable) and that such Ballot shall be provisionally counted in accordance with the above-designated guidelines (or as otherwise agreed to by the Debtors, on consultation with the Creditors' Committee, and such claimant) and finally counted if

temporarily allowed for voting purposes by an order of the Court entered prior to or concurrent with entry of an order confirming the Plan. The Debtors propose that any Rule 3018 Motion must be filed on or before July 19, 2021 at 4:00 p.m. (prevailing Eastern Time) (the Rule 3018(a) Motion Filing Deadline), unless such deadline is extended by agreement of the Debtors.

### C.    The Court Should Approve the Forms of the Ballots.

30.    In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots. Although based on Official Form No. 314, the Ballots have been modified to address the particular circumstances of these Cases and include certain additional information that is relevant and appropriate for Claims in certain of the Voting Classes. The proposed form Ballots for each Voting Class are annexed as **Exhibits 2A, 2B and 2C** to the Order, respectively. The Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

### D.    The Court Should Approve the Form and Distribution of Solicitation Packages.

31.    **General Solicitation Procedures.**  Upon approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, the Debtors propose to mail, or cause to be mailed, the following materials in connection with voting on the Plan and notice of the Confirmation Hearing (the "**Solicitation Packages**"):[34]

> i.    With respect to holders of Claims in the Voting Classes (but subject to the Master Ballot Solicitation Procedures (defined below)):
>
> > (i)    The *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines*, in substantially the form annexed

---

[34] To accommodate the transmission of the Client List (in Excel format and as defined below) along with a Master Ballot to Firms (also as defined below), the Debtors seek authorization to serve the relevant Solicitation Packages to Firms via encrypted email or other secured electronic means in lieu of mailing or otherwise serving any paper copies.

as **Exhibit 11** to the Order (the "**Confirmation Hearing Notice**");

(ii)    The applicable Ballot, in substantially the applicable form of Ballot annexed within **Exhibits 2A, 2B and 2C** to the Order, including a prepaid, preaddressed return envelope; and

(iii)    At the Debtors' election, a cover letter in substantially the form annexed as **Exhibit 12** to the Order describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan and/or a cover letter from the Creditors' Committee and/or counsel to any Mediation Party (as defined in the *Order Appointing Mediators* [ECF No. 895] (as modified by subsequent order of the Court)) in the applicable Class recommending acceptance of the Plan (collectively, the "**Cover Letters**");

(iv)    The Solicitation and Voting Procedures; and

(v)    A flash drive containing each of the following materials:

(1)    The Disclosure Statement Order, as entered by the Court; and

(2)    The Disclosure Statement, as approved by the Court (with the Plan annexed thereto); and

ii.    With respect to holders of Claims and Interests in the Non-Voting Classes (or Claims in Voting Classes that, as of the deadline set forth in the Disclosure Statement Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan):

(i)    The Confirmation Hearing Notice; and

(ii)    The applicable Notice of Non-Voting Status (as defined below); and

iii.    With respect to the U.S. Trustee, a copy of each document contained in each version of the Solicitation Packages, which may include non-customized Ballots and a non-customized Notice of Non-Voting Status; and

iv.    Any additional documents that the Court has ordered to be included in hard copy format.

32.    The Debtors request that they be authorized to distribute a flash drive to members of the Voting Classes containing (i) a copy of the Order granting the relief requested herein and approving the Disclosure Statement; (ii) the Disclosure Statement (with the Plan annexed thereto); and (iii) any additional documents that the Court has ordered to be made available; *provided*, *however*, that any party may request to receive paper copies of such materials from the Solicitation Agent at no cost to such party.    Given the length of the Plan, the Disclosure Statement, and the Order, distribution in this manner will translate into significant monetary savings for the Debtors' estates.    The Ballots, the Cover Letter, the Solicitation and Voting Procedures, and the Confirmation Hearing Notice will be provided in paper format.    Moreover, the Order and the Disclosure Statement (with the Plan annexed thereto) will also be available free of charge on the Case Website.    For the avoidance of doubt, the Debtors will only deliver flash drives to holders in Classes 3, 4, 5, 6, 7, 8, 9, 10 and 11(c) in accordance with the Solicitation and Voting Procedures.

33.    With respect to holders of Claims of Class 13 (Co-Defendant Claims), Class 14 (Other Subordinated Claims), Class 15 (PPLP Interests) and Class 16 (PPI Interests) which are impaired and deemed to reject the Plan, and which Classes are not entitled to vote on the Plan, pursuant to section 105(a) of the Bankruptcy Code, each holder will be deemed to have received all notices upon entry of the Order without actual delivery of such notices.

34.    The Debtors also propose to mail a copy of the Confirmation Hearing Notice (to the extent not already provided in the distributions set forth above) to all Notice Parties.

35.    Consistent with section 1126(f) and 1126(g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Solicitation Packages for holders of Claims or Interests in the following Classes that are either conclusively presumed to accept or deemed to reject the Plan

under section 1126(f) and 1126(g) of the Bankruptcy Code, respectively, will not include a Ballot: Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 11(a) (Avrio General Unsecured Claims), Class 11(b) (Adlon General Unsecured Claims), Class 12 (Intercompany Claims), Class 13 (Co-Defendant Claims), Class 14 (Other Subordinated Claims), Class 15 (PPLP Interests), Class 16 (PPI Interests) and Class 17 (Intercompany Claims).

36.     Because such Classes are presumed to have accepted or deemed to have rejected the Plan, in an effort to conserve the resources of the Debtors' estates, the Debtors propose to send to holders of such Claims or Interests a Notice of Non-Voting Status.  Each of the Notices of Non-Voting Status will include, among other things, (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) a disclosure regarding the releases, exculpatory provisions, and injunctions, including the Channeling Injunction and Releases by Holders of Claims and Interests, set forth in Sections 10.6, 10.7, [10.8, 10.9,] 10.10 and 10.11 of the Plan; and (c) notice of the Plan Objection Deadline.  These parties will also receive the Confirmation Hearing Notice.  The Debtors submit that such notice satisfies the requirements of Bankruptcy Rule 3017(d).  The Debtors request that the Court determine that they are not required to distribute copies of the Plan or Disclosure Statement to any holder of a non-voting Claim or Interest unless otherwise requested in writing on or before twenty (20) days prior to the Confirmation Hearing.

37.     The Debtors also propose that notice need not be sent to creditors whose Claims have already been paid in full; *provided*, *however*, that if any such creditor would be entitled to receive notice for any reason other than by virtue of the fact that the Claim had been paid in full

by the Debtors, such creditor will be sent notice in accordance with the procedures set forth above.

38.     The Debtors anticipate that some notices may be returned by the United States Postal Service as undeliverable.  The Debtors believe that it would be costly and wasteful to mail such notices to the same addresses to which previous notices have been returned as undeliverable.  Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from mailing such notices to those persons listed at such addresses unless the Debtors are provided with accurate addresses.  For purposes of serving the Solicitation Packages, the Debtors seek authorization to rely on the address information for all classes of claims and interests as compiled, updated, and maintained by the Solicitation Agent as of the Voting Record Date.  Neither the Debtors nor the Solicitation Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots).

39.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures, and request that the Court approve such notice as adequate under the circumstances.

40.     **Return of Ballots.**  The Debtors request that the Court approve the procedures set forth in the Ballots governing the submission of such Ballots.  As part of those procedures, votes to accept or reject the Plan will be counted only if such votes are included on a valid Ballot (or Master Ballot) properly executed, completed, and delivered to the Solicitation Agent so that such Ballot is **<u>actually received</u>** by the Solicitation Agent no later than the Voting Deadline.  Detailed instructions for online transmission of Ballots are set forth on the form of such Ballots.

41.     In addition to accepting hard copy Ballots via first class mail, overnight courier, or hand delivery, or, in the case of Master Ballots (as defined below) via electronic mail, the Debtors request authorization to accept Ballots submitted via an online balloting portal accessible at the Debtors' chapter 11 case website ("**E-Ballots**").  The encrypted E-Ballot data and audit trail created by such online submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed immediately legally valid and effective.

42.     For the avoidance of doubt, the only Ballots for which the Debtors seek authorization to accept by email are Master Ballots submitted by Firms.  The Solicitation and Voting Procedures strongly encourage Firms to submit Master Ballots and accompanying Client Lists via encrypted email or other secured method of electronic transmission.  The Solicitation Agent will be available to answer any questions about such secured transmission methods.

43.     **Master Ballot Solicitation Procedures.**   Upon the filing of the Disclosure Statement, the Debtors commenced serving copies of a notice (the "**Master Ballot Solicitation Notice**") and a certified plan solicitation directive (the "**Solicitation Directive**"), substantially in the form attached to the Order as **Exhibit 14**, by overnight delivery and electronic mail (where available), to all known attorneys (collectively, the "**Firms**") representing **at least four (4)** holders of Claims in Classes 6, 7, 8, 9, and 10 (collectively, the "**Master Ballot Classes**").  The Master Ballot Solicitation Notice (a) notifies the Firms of the options set forth below for soliciting votes from their clients that may hold Claims in Master Ballot Classes to accept or reject the Plan, and (b) requests that each Firm complete and return the Solicitation Directive and a Client List (as defined below) to the Solicitation Agent on or before 4:00 p.m. prevailing Eastern Time on April 5, 2021, as such deadline may be extended by the Debtors in their sole

discretion in consultation with the Creditors' Committee (the "**Solicitation Directive Deadline**").

44.    The Solicitation Directive permits each Firm to direct the Solicitation Agent with regard to the solicitation of votes on the Plan from each Firm's clients that may hold Claims in Master Ballot Classes (collectively, the "**Clients**") according to one of two different solicitation methods.  These methods and the procedures for soliciting the votes of holders of Claims in Master Ballot Classes were developed by the Debtors in coordination with representatives of the Creditors' Committee and certain attorneys representing a significant number of holders of Claims in the Master Ballot Classes.  While the methods proposed are intended to expedite and streamline the transmission of information to the Clients, increase voter participation, and better ensure such claimants are empowered to make informed and meaningful decisions as to whether to accept or reject the Plan, each voting decision rests exclusively with each Client.  Each Firm is required to comply with the applicable rules regarding aggregate settlements and informed consent.  Each of the two proposed solicitation methods is described below:

a.    **Master Ballot Solicitation Method.**  If a Firm certifies that (i) the Firm will collect and record the votes of its Eligible Clients through customary and accepted practices, or that it has obtained (or will obtain) authority to procedurally cast each Eligible Client's vote (provided that the Firm complies with the voting procedures set forth herein and each Eligible Client indicates an informed decision on such vote) or (ii) it has the authority under applicable law to vote to accept or reject the Plan on behalf of its Eligible Clients (with a valid power of attorney provided to the Solicitation Agent), the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which the Firm must record the votes on the Plan for each of its Eligible Clients in accordance with the Firm's customary and accepted practices.  If it is the Firm's customary and accepted practice to receive or collect authorizations or instructions from its Eligible Clients by email, telephone, or other standard communication methods (including electronic methods, such as a website or smart phone application), the Firm will be authorized to follow such customary practices.  Any Firm that elects this procedure shall meet all applicable standards to receive informed consent from its

Eligible Clients. Each Firm that elects this procedure shall either (i) provide the Disclosure Statement, via instructions detailing how to access electronic versions or in hard copy or electronic format, to its Eligible Clients, or (ii) request that, for informational purposes and by selecting the applicable box on the Solicitation Directive the Solicitation Agent serve Solicitation Packages (without Ballots) on its Eligible Clients.[35] Any Firm that elects this procedure must return the Master Ballot to the Solicitation Agent so that it is received by the Voting Deadline. The Master Ballot must be returned to the Solicitation Agent pursuant to the instructions on the form of Master Ballot attached to the Disclosure Statement Order as **Exhibit 14**. The Solicitation and Voting Procedures strongly encourage Firms to submit Master Ballots and accompanying Client Lists via encrypted email or other secured method of electronic transmission.

b.    **Direct Solicitation Method.** If a Firm prefers to have each of its Eligible Clients cast its own vote to accept or reject the Plan or it does not have authority from its Eligible Clients as described above, such Firm may direct the Solicitation Agent to solicit votes on the Plan directly from its Eligible Clients by mailing Solicitation Packages (including Ballots) directly to the Firm's Eligible Clients at the addresses provided on the Client List. If no address is set forth on the Client List, the Solicitation Agent shall solicit votes on the Plan directly from the Firm's Eligible Clients by mailing the Solicitation Packages (including Ballots) directly to the Firm's Eligible Clients at the primary addresses as indicated in the applicable Proof of Claim forms. Under this procedure, completed Ballots will be submitted to the Solicitation Agent individually by the Eligible Clients. For the avoidance of doubt, any Firm that fails to properly return the Solicitation Directive by the Solicitation Directive Deadline will be deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Eligible Clients according to the Direct Solicitation Method.

45.    To facilitate the timely delivery of Solicitation Packages, the Debtors have requested that each Firm submit the Solicitation Directive to the Solicitation Agent by the Solicitation Directive Deadline. If a Firm fails to return the Solicitation Directive by the Solicitation Directive Deadline, the Firm will be deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Eligible Clients according to the Direct Solicitation Method.

46.    Each Firm that elects to return a Solicitation Directive must also return a list of its clients in the precise, readily accessible electronic format dictated by the Solicitation Agent (the

---

[35] Such informational Solicitation Packages may contain a generic, non-customized insert explaining that the recipient's attorney has elected to utilize the Master Ballot Solicitation Method.

"**Client List**") that each Firm is directing be solicited pursuant to the Master Ballot Solicitation Procedures.  The Client List must mirror precisely the format attached to the Solicitation Directive and include at least each applicable Eligible Client's name and the number (the "**Claim Number**") assigned by the Solicitation Agent to each Proof of Claim of each Eligible Client on the Client List that will be subject to the Master Ballot Solicitation Procedures.  If a Firm returns the Solicitation Directive and Client List by the Solicitation Directive Deadline, but the Client List does not contain applicable Claim Numbers, contains fewer than four (4) Eligible Clients, does not precisely follow the "Client List Formatting Instructions" provided with the Solicitation Directive, or is otherwise defective, the Solicitation Agent will solicit votes on the Plan from your Eligible Clients according to the Direct Solicitation Method.  The Solicitation Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Solicitation Directives to make a reasonable effort to cure such deficiencies prior to the Solicitation Directive Deadline.  Each Firm is required to confirm the accuracy of the Client List in the Solicitation Directive.

47.    The Solicitation and Voting Procedures provide that to the extent that the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the Solicitation Agent may tabulate the vote submitted directly by the Eligible Client and invalidate the vote submitted by the Firm on the Eligible Client's behalf.

48.    The Solicitation and Voting Procedures further provide that it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve the conflicting representation, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to purduepharmaballots@primeclerk.com copying all affected Firms

confirming such resolution.  If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (i.e., multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes.  If, however, the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (i.e., a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent is authorized to invalidate both such inconsistent votes.  If after the submission of inconsistent votes, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email purduepharmaballots@primeclerk.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted.  The Solicitation Agent is entitled to rely upon such an email.  For the further avoidance of doubt, if the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the vote cast by the Eligible Client will control.

49.    The Debtors submit that the Master Ballot Solicitation Procedures should be approved because they are appropriate and will provide for a more efficient solicitation process with respect to both the Debtors and the applicable claimants.  Similar procedures allowing for the submission of votes by attorneys and the use of master ballots have been approved by bankruptcy courts in connection with the solicitation of plan votes of tort claimants in other chapter 11 cases.  *See, e.g.*, *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 426 (Bankr. D. Md. 2007) ("The use of master ballots in mass tort cases is a long-standing procedural mechanism

that has been employed almost as a matter of course."); *In re PG&E Corporation and Pacific Gas and Electric Company*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [ECF No. 6340] (approving master ballot procedures for attorneys who submitted client lists to the solicitation agent for fire victim claimants); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. Del. Dec. 4, 2019) [ECF No. 952] (authorizing master ballots for tort claimants); *In re Kaiser Gypsum Company, Inc.*, Case No. 16-31602 (JCW) (Bankr. W.D.N.C. Oct. 23, 2019) [ECF No. 1875] (approving procedures for the submission of client lists and the use of master ballots for asbestos claimants); *In re Maremont Corp.*, Case No. 199-10118 (KJC) (Bankr. D. Del. May 17, 2019) [ECF No. 241] (approving the use of master ballots for attorneys of record for voting the claims of personal injury and asbestos claimants); *In re Yarway Corp.*, Case No. 13-11025 (BLS) (Bankr. D. Del. Jan. 27, 2015) [ECF No. 756] (approving master ballot procedures for attorneys who submitted client lists to the solicitation agent for asbestos personal injury claimants); *In re Plant Insulation Co.*, Case No. 09-31347 (TC) (Bankr. N.D. Cal. Feb. 1, 2011) [ECF No. 1000] (approving procedures to allow authorized counsel to cast master ballots on behalf of asbestos claimant clients); *In re Thorpe Insulation Co.*, Case No. 19271 (BB) (C.D. Cal. Aug 8, 2008) [ECF No. 1270] (same).

### E.    The Proposed Notice of Confirmation Hearing Is Reasonable and Appropriate.

50.    The Debtors will serve the Confirmation Hearing Notice on all known holders of Claims and Interests, all parties known to the Debtors as having potential claims against the Debtors' estates as defined in paragraph 18(i) of the Bar Date Order (excluding those parties who have requested not to receive notice), and the Notice Parties (regardless of whether such parties are entitled to vote on the Plan) by no later than the Solicitation Deadline.  The Confirmation Hearing Notice will include the following: (a) instructions as to how to view or obtain copies of

the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan Objection Deadline; and (e) notice of the Confirmation Hearing Date and information related thereto.

51.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).   Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Confirmation Hearing Notice in a format modified for publication one time on or before Solicitation Deadline in each of *The Wall Street Journal*, *The New York Times* and *USA Today* (collectively, the "**Publications**").   The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail.   Additionally, service and publication of the Confirmation Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.   The Debtors also will serve a plain language summary of the Confirmation Hearing Notice on those individuals and entities (including prescribers, pharmacies and institutions that received Purdue Opioids, and third-party organizations) that received the summary Bar Date Notice, as described in paragraph 6 of the *Supplemental Declaration of Jeanne C. Finegan* [ECF No. 1179] and conduct a supplemental noticing plan ("**Supplemental Confirmation Hearing Notice Plan**") consisting of digital and social media outreach that will provide broad publication notice to unknown claimants, using noticing and optimization tactics

similar to those employed in the Debtors' extraordinary Supplemental Notice Plan in connection with the General Bar Date.

### F. The Proposed Plan Supplement Notice Is Reasonable and Appropriate.

52.     The Plan defines "Plan Supplement" to mean a supplemental appendix to the Plan, which shall be filed with the Bankruptcy Court prior to the Confirmation Hearing, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.  *See* Plan § 12.3.  The Plan Supplement will include the following materials in connection with confirmation: the MDT Agreement, the NewCo Transfer Agreement, the NewCo Operating Agreement, [36] the Plan Administration Trust Agreement, [37] the PI Trust Documents [38], the NAS Monitoring Trust Documents, [39] the Hospital Trust Documents, [40] the TPP Trust Documents, [41] the NOAT

---

[36] "NewCo Operating Agreement" means the limited liability company agreement of NewCo, the terms of which shall be consistent with the Plan and the NewCo/TopCo Governance Term Sheet and otherwise acceptable to the Governmental Consent Parties and the DOJ and reasonably acceptable to the Debtors, and which shall be filed in the Plan Supplement.  *See* Section 5.4 of the Plan.

[37] "Plan Administration Trust Agreement" means the trustee of the Plan Administration Trust appointed in accordance with Section 5.3(c) of the Plan.  *See* Section 5.3 of the Plan.

[38] "PI Trust Documents" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the PI Trust and the trust distribution procedures to be implemented by the PI Trust, in each case, the terms of which shall be consistent with the Plan and otherwise acceptable to the Debtors and the Ad Hoc Group of Individual Victims and reasonably acceptable to the Governmental Consent Parties and the Creditors' Committee, and which shall be filed with the Plan Supplement.  *See* Sections 5.7 and 10.7 of the Plan.

[39] "NAS Monitoring Trust Documents" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the NAS Monitoring Trust and the Abatement Distributions procedures to be implemented by the NAS Monitoring Trust, in each case, the terms of which shall be consistent with the Plan and otherwise acceptable to the Debtors and the NAS Committee and reasonably acceptable to the Governmental Consent Parties and the Creditors' Committee, and which shall be filed with the Plan Supplement.  *See* Section 5.7 of the Plan.

[40] "Hospital Trust Documents" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the Hospital Trust and the Abatement Distribution procedures to be implemented by the Hospital Trust, in each case, the terms of which shall be acceptable to the Debtors and the Ad Hoc Group of Hospitals and reasonably acceptable to the Governmental Consent Parties and the Creditors' Committee, and which shall be filed with the Plan Supplement.  *See* Section 5.7 of the Plan.

[41] "TPP Trust Documents" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the TPP Trust and the Abatement Distributions procedures to be implemented by the TPP Trust, in each case, the terms of which shall be consistent with the Plan and otherwise acceptable to the Debtors and

Documents,[42] the Tribe Trust Documents,[43] the NewCo/TopCo Guarantee and Keepwell Agreement,[44] the identity of the Creditor Trustees,[45] the Schedule of Rejected Contracts,[46] the Schedule of Retained Causes of Action,[47] the Schedule of Excluded Parties,[48] the Shareholder Settlement Agreement,[49] and the Restructuring Steps Memorandum.[50]

53.     To ensure that all holders of Claims receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the

---

the Third-Party Payor Group and reasonably acceptable to the Governmental Consent Parties, and which shall be filed with the Plan Supplement. *See* Section 5.7 of the Plan.

[42] "NOAT Documents" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of NOAT and the Abatement Distributions procedures to be implemented by NOAT, in each case, the terms of which shall be consistent with the Plan and otherwise acceptable to the Governmental Consent Parties and the DOJ, in consultation with the Debtors and the Creditors' Committee, and which shall be filed with the Plan Supplement. *See* Section 5.7 of the Plan.

[43] "Tribe Trust Documents" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the Tribe Trust and the Abatement Distribution procedures to be implemented by the Tribe Trust, in each case, the terms of which shall be consistent with the Plan and otherwise acceptable to the Debtors and the Native American Tribe Group and reasonably acceptable to the Governmental Consent Parties and the Creditors' Committee, and which shall be filed with the Plan Supplement. *See* Section 4.5 of the Plan.

[44] "NewCo/TopCo Guarantee and Keepwell Agreement" means the guarantee and keepwell agreement documenting the terms and conditions of the obligations of NewCo and TopCo to make Cash payments to the Master Disbursement Trust, which such terms and conditions shall be consistent with the Plan and otherwise reasonably acceptable to the Debtors, the Governmental Consent Parties and the Creditors' Committee, and which shall be filed with the Plan Supplement. *See* Section 5.3 of the Plan.

[45] "Creditor Trustees" means each trustee of a Creditor Trust or collectively the trustees of the Creditor Trusts, in each case, appointed in accordance with Section 5.7(b) of the Plan.

[46] "Schedule of Rejected Contracts" means the schedule of all executory contracts and unexpired leases to be rejected by the Debtors, if any, filed with the Plan Supplement, which shall be in form and substance acceptable to the Debtors and reasonably acceptable to the Governmental Consent Parties, in consultation with the Creditors' Committee. *See* Section 1.1 of the Plan.

[47] "Schedule of Retained Causes of Action" means the schedule of Retained Causes of Action filed with the Plan Supplement, which shall be in form and substance acceptable to the Debtors and reasonably acceptable to the Governmental Consent Parties, and the Creditors' Committee. *See* Section 10.11 of the Plan.

[48] "Schedule of Excluded Parties" means the schedule of Excluded Parties filed with the Plan Supplement, which shall include only Persons agreed to by the Debtors with input from the Governmental Consent Parties, and the Creditors' Committee. *See* Section 1.1 of the Plan.

[49] "Shareholder Settlement Agreement" means the settlement agreement to be entered into on or prior to the Effective Date by and among the Debtors, the Master Disbursement Trust and certain of the Shareholder Released Parties, which shall provide for, among other things, the settlement of claims against the Shareholder Released Parties and the payment of $4.275 billion by certain Shareholder Released Parties to the Master Disbursement Trust, and the terms of which shall be consistent with the Plan and the Shareholder Settlement Term Sheet and otherwise acceptable to the Debtors, the Creditors' Committee and the Governmental Consent Parties. *See* Section 5.2 of the Plan.

[50] "Restructuring Steps Memorandum" means the summary of transaction steps to complete the Restructuring Transactions, which shall be consistent with the Plan and otherwise acceptable to the Debtors and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be included in the Plan Supplement. *See* Sections 1.1 of the Plan.

Debtors file the Plan Supplement, or as soon as practicable thereafter. Accordingly, the Plan Supplement Notice should be approved.

### G. The Proposed Notices to Contract and Lease Counterparties Are Reasonable and Appropriate.

54. The Plan provides that, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party, as amended pursuant to Section 8.4 of the Plan shall be deemed assumed by the applicable Debtor and, except with respect to any contract or lease held by a Transferred PPLP Subsidiary, assigned to NewCo or its designee, except, for any executory contract or unexpired lease that (a) has previously been assumed or rejected pursuant to a Final Order[51] of the Bankruptcy Court, (b) is specifically identified on the Schedule of Rejected Contracts, which shall be filed with the Plan Supplement, (c) is the subject of a separate assumption or rejection motion filed by the Debtors under section 365 of the Bankruptcy Code pending on the Confirmation Date, (d) is the subject of a pending Contract Dispute, or (e) is being treated pursuant to the Plan. *See* Section 8.1 of the Plan.

55. Accordingly, to ensure that counterparties to executory contracts and unexpired leases receive notice of rejection, assumption, or assumption and assignment (as applicable) of their contract or lease pursuant to the Plan, the Debtors will provide such counterparties with an Assumption Notice or Rejection Notice (as applicable), substantially in the form attached to the

---

[51] "Final Order" means an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case, or of any other court of competent jurisdiction (i) that has not been reversed, stayed, modified or amended, and (ii) (A) as to which the time to appeal, seek certiorari or move for a new trial, re-argument or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, re-argument or rehearing has been timely taken, or (B) as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, re-argument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

Proposed Order as **Exhibit 8** and **Exhibit 9** (together, the "**Contract Notices**"), at least twenty-one (21) days prior to the Confirmation Hearing.

56.     The Contract Notices will inform such counterparties, among other things, of the following:

(a)     the proposed rejection, assumption, or assumption and assignment of executory contracts and unexpired leases of the Debtors (including the proposed Cure Amounts related thereto and the release and satisfaction of any Claims or defaults arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption or assumption and assignment upon the satisfaction thereof);

(b)     the amendment of contracts in connection with assumption, or assumption and assignment pursuant to Section 8.4 of the Plan;

(c)     the deadline to file a Proof of Claim for rejection damages;

(d)     the procedures and deadline for objecting to 3(a)-(3)(c) or to any other matter pertaining to the treatment of any executory contract or unexpired lease as set forth in the Plan or in the Contract Notices (as applicable) (the "**Contract Objection Deadline**"); and

(e)     that the failure of any counterparty to any executory contract or unexpired lease to timely assert an objection by the Contract Objection Deadline pursuant to the procedures set forth in the Contract Notices (as applicable), shall be deemed to have assented to the treatment of such contract or lease on the terms set forth in the Plan and the Contract Notices (as applicable).

57.     Any time prior to the closing of the Effective Date, the Debtors may alter, amend, modify or supplement the Schedule of Rejected Contracts to assume, assume and assign or reject executory contracts and unexpired leases or, with respect to any executory contract or unexpired lease subject to a Contract Dispute that is resolved after the Effective Date, within thirty (30) days following entry of a Final Order of the Bankruptcy Court resolving such Contract Dispute.

58.     The Debtors respectfully submit that these notices and procedures comply with the Bankruptcy Code and, therefore, should be approved.

**IV.     The Proposed Solicitation and Voting Procedures Are Reasonable and Appropriate**

A.      **The Standard for Approval of Solicitation and Voting Procedures**

59.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> section (e) of this section that holds at least two-thirds in amount
> and more than one-half in number of the allowed claims of such
> class held by creditors, other than any entity designed under
> subsection (e) of this section, that have accepted or rejected the
> plan.  11 U.S.C. § 1126(c).

60.     Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).  Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures.  The Solicitation and Voting Procedures include specific voting and tabulation requirements and procedures, as described below.

B.      **Completion of Ballots**

61.     To ease and clarify the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria.  Specifically, the Solicitation and Voting Procedures provide that the Debtors not count a Ballot if it is, among other things, illegible, unidentifiable, lacking signature or lacking necessary information, received via facsimile or electronic mail (in instance where submission by email is not permitted), or damaged.  Further, the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the report tabulating the voting on the Plan (the "**Voting Report**").

C.      **General Ballot Tabulation and Voting Procedures.**

62.     The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to holders of Claims, and tabulation of such votes.  The Debtors believe that the proposed Solicitation and Voting Procedures will facilitate the Plan confirmation process.  Specifically, the procedures will clarify any obligations of holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Solicitation and Voting Procedures are in the best interests of their estates, holders of Claims, and other parties in interest, and that good cause supports the relief requested herein.

## V.    The Proposed Confirmation Hearing Date Is Reasonable and Appropriate.

63.     Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation.  11 U.S.C. § 1128.    Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan.  Fed. R. Bankr. P. 3017(c).   In accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy Code, the Debtors request that the Court establish **August 9, 2021**, as the initial Confirmation Hearing Date.  The Debtors further request that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than such adjournment announced in open court and/or a notice of adjournment filed with the Court and served on the Notice Parties.

## VI.    Plan Objection Procedures

64.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Local Rule 3020-1 requires that

objections to confirmation of a plan be filed no later than seven (7) days before the Confirmation

Hearing.  Bankruptcy Rule 2002(b) provides that parties must receive at least twenty-eight (28)

days' notice of the deadline for filing objections to confirmation.  Accordingly, the Debtors

propose **July 19, 2021** at 4:00 p.m. (prevailing Eastern Time) as the deadline to object or

respond to confirmation of the Plan (the "**Plan Objection Deadline**").  The Debtors request that

the Court direct that any objections to confirmation of the Plan comply with the procedures for

filing objections set forth in the Confirmation Hearing Notice.  Pursuant to Bankruptcy Rule

3020(b), "[i]f no objection is timely filed, the [C]ourt may determine that the plan has been

proposed in good faith and not by any means forbidden by law without receiving evidence on

such issues."  Fed. R. Bankr. P. 3020(b)(2).

65.    The Debtors request that objections and responses, if any, to confirmation of the

Plan (a) be in writing, (b) conform to the Federal Rules and of Bankruptcy Procedure and the

Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by

attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice,

electronically in accordance with General Order M-399 (which can be found at

http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-

searchable portable document format (PDF) (with a hard copy delivered directly to Chambers),

in accordance with the customary practices of the Bankruptcy Court and General Order M-399,

to the extent applicable, and (d) be served in accordance with the *Second Amended Order*

*Establishing Certain Notice, Case Management, and Administrative Procedures* entered on

November 18, 2019 [ECF No. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP,

450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin

S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors

Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

66.    The Debtors submit that, if there are objections to confirmation, it will assist the Court and may streamline the Confirmation Hearing if the Debtors file a reply to any such objections.    Accordingly, the Debtors request that they be authorized to file and serve an omnibus reply to any such objections and that the Court set **August 2, 2021 at 4:00 p.m. (prevailing Eastern Time)** (the "**Reply Deadline**") as the deadline for filing and service of replies or an omnibus reply to any objections to confirmation of the Plan.

67.    The Debtors also request that the Court establish the Reply Deadline as the deadline for the Debtors to file their brief (the "**Confirmation Brief**").    In addition, the Debtors request that any party in interest be permitted to file and serve a statement in support of confirmation of the Plan and/or reply to any objection to confirmation of the Plan by the Reply Deadline.

68.    The Debtors respectfully request that the Court approve the procedures for filing objections to the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002, 3017, and 3020 and Local Rule 3020-1.

### <u>Non-Substantive Modifications</u>

69.    The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Plan, Confirmation Hearing Notice, Solicitation Packages, Notices of Non-Voting Status, Ballots, Publication Notice, Cover Letter, Solicitation and Voting

Procedures, Plan Supplement Notice, Assumption and Rejection Notices, Voting and Tabulation Procedures, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.  Fed. R. Bankr. P. 3019.

## **Notice**

70.    The Debtors have provided notice of this Motion to (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at http://www.restructuring.primeclerk.com/purduepharma/) and (b) any person or entity with a particularized interest in the subject matter of this Motion.  The Debtors respectfully submit that no other or further notice is necessary.

## **No Prior Request**

71.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:    March 15, 2021
          New York, New York

                        DAVIS POLK & WARDWELL LLP

                        By:    */s/ Darren S. Klein*    _____

                        450 Lexington Avenue
                        New York, New York 10017
                        Telephone: (212) 450-4000
                        Facsimile:  (212) 701-5800
                        Marshall S. Huebner
                        Benjamin S. Kaminetzky
                        Timothy Graulich
                        Eli J. Vonnegut
                        Christopher S. Robertson

                        *Counsel to the Debtors*
                        *and Debtors in Possession*