DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**COVER SHEET TO THE FOURTH INTERIM APPLICATION OF DAVIS POLK &
WARDWELL LLP FOR COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION FOR THE PERIOD FROM OCTOBER 1, 2020 THROUGH
JANUARY 31, 2021**

In accordance with Rule 2016-1 of the Local Rules of Bankruptcy Procedure,

incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in the*

*Southern District of New York Bankruptcy Cases* [General Order M-447], among other

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

guidelines (the "**Local Guidelines**") and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel for the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), submits this summary (this "**Summary**") of fees and expenses sought as actual and necessary in the fee application to which this Summary is attached (the "**Application**") for the period of October 1, 2020 through January 31, 2021 (the "**Fee Period**").

| *General Information* | |
|---|---|
| **Name of Applicant:** | Davis Polk & Wardwell LLP<br><br>Counsel to the Debtors and Debtors in Possession |
| **Authorized to Provide Services to:** | Purdue Pharma L.P., *et al.* |
| **Petition Date:** | September 15, 2019 |
| **Retention Date:** | November 25, 2019 *nunc pro tunc* to September 15, 2019 |
| **Date of Order Approving Retention:** | November 25, 2019 [ECF No. 542] |

| *Summary of Fees and Expenses Requested for the Compensation Period* | |
|---|---|
| **Time Period Covered by This Application:** | October 1, 2020 through January 31, 2021 |
| **Total Compensation Requested:** | $31,542,356.50 |
| **Total Expenses Requested:** | $218,406.41 |
| **Total Compensation and Expenses Requested:** | $31,760,762.91 |

| *Summary of Past Requests for Compensation and Prior Payments*[2] | |
|---|---|
| **Compensation Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $25,233,885.20 |
| **Expenses Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $218,406.41 |
| **Total Compensation and Expenses Sought in This Application Already Paid Pursuant to a Compensation Order but Not yet Allowed:** | $25,452,291.61 |

| *Summary of Rates and Other Related Information for the Compensation Period* | |
|---|---|
| **Blended Rate in This Application for All Partners, of Counsel, and Associates:** | $866.48 |
| **Blended Rate in This Application for All Timekeepers:** | $840.69 |
| **Number of Professionals Included in This Application:** | 152 |
| **Difference Between Fees Budgeted and Compensation Sought for This Period:** | $1,515,406.50 |
| **Number of Professionals Billing Fewer Than 15 Hours During This Period:** | 32 |

---

[2] Pursuant to the Interim Compensation Order, objections to the *Seventeenth Monthly Fee Statement of Davis Polk & Wardwell LLP for Compensation for Services and Reimbursement of Expenses Incurred as Counsel to the Debtors and Debtors in Possession for the Period from January 1, 2021 through January 31, 2021* [ECF No. 2435] (the "**January Monthly Fee Statement**") were to be filed no later than March 16, 2021. No objection or other responsive pleading to the January Monthly Fee Statement has been (a) filed with the Court on the docket of the above-captioned chapter 11 cases or (b) served on the Debtors or Davis Polk. Accordingly, Davis Polk anticipates that, prior to the hearing with respect to this Application, it will receive compensation in the amount of $7,342,334.00, which is equal to 80% of the total amount of reasonable compensation for actual, necessary legal services that Davis Polk incurred in connection with such services during the period from January 1, 2021 through and including January 31, 2021 (the "**January Fee Period**") and payment of $70,185.59 for the actual, necessary expenses of Davis Polk incurred in connection with such services during the January Fee Period.

**Increase in Rates Since Date of Retention:**    The compensation period includes a customary annual rate increase for all time keepers which occurred on January 1, 2021, as disclosed on the Court docket at ECF 2219.

This is a(n):        ___ monthly        _x_ interim        ___ final application

### Summary of Prior Monthly Fee Statements of Davis Polk & Wardwell LLP

| Period Covered and ECF No. | Total Fees Requested | Total Expenses Requested | Total Fees and Expenses Requested | Fees Paid | Expenses Paid | Total Balance Remaining to be Paid |
|---|---|---|---|---|---|---|
| 10/1/2020 – 10/31/2020 ECF No. 2130 | $7,822,875.00 | $45,602.35 | $7,868,477.35 | $6,258,300.00 | $45,602.35 | $1,564,575.00 |
| 11/1/2020 – 11/30/2020 ECF No. 2311 | $7,731,153.50 | $55,618.56 | $7,786,772.06 | 6,184,922.80 | $55,618.56 | $1,546,230.70 |
| 12/1/2020 – 12/31/2020 ECF No. 2348 | $6,810,410.50 | $46,999.91 | $6,857,410.41 | $5,448,328.40 | $46,999.91 | $1,362,082.10 |
| 1/1/2021 – 1/31/2021 ECF No. 2435[3] | $9,177,917.50 | $70,185.59 | $9,248,103.09 | $7,342,334.00 | $70,185.59 | $1,835,583.50 |

---

[3] Pursuant to the Interim Compensation Order, objections to the *Seventeenth Monthly Fee Statement of Davis Polk & Wardwell LLP for Compensation for Services and Reimbursement of Expenses Incurred as Counsel to the Debtors and Debtors in Possession for the Period from January 1, 2021 through January 31, 2021* [ECF No. 2435] (the "**January Monthly Fee Statement**") were to be filed no later than March 16, 2021. No objection or other responsive pleading to the January Monthly Fee Statement has been (a) filed with the Court on the docket of the above-captioned chapter 11 cases or (b) served on the Debtors or Davis Polk. Accordingly, Davis Polk anticipates that, prior to the hearing with respect to this Application, it will receive compensation in the amount of $7,342,334.00, which is equal to 80% of the total amount of reasonable compensation for actual, necessary legal services that Davis Polk incurred in connection with such services during the period from January 1, 2021 through and including January 31, 2021 (the "**January Fee Period**") and payment of $70,185.59 for the actual, necessary expenses of Davis Polk incurred in connection with such services during the January Fee Period.

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**FOURTH INTERIM APPLICATION OF DAVIS POLK & WARDWELL LLP FOR
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED AS COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION FOR THE PERIOD FROM OCTOBER 1, 2020
THROUGH JANUARY 31, 2021**

Pursuant to sections 327, 330, and 331 of chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases* [General Order M-447], among other guidelines (the "**Local Guidelines**"), The United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel for the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), submits this *Fourth Interim Application for Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from October 1, 2020 Through January 31, 2021* (this "**Application**").  By this Application, Davis Polk seeks allowance of compensation for actual and necessary professional services rendered for the Debtors in the total amount of $31,542,356.50, and for reimbursement of actual, necessary disbursements that Davis Polk incurred in connection with such services in the total amount of $218,406.41, for an aggregate total of $31,760,762.91 during the period of October 1, 2020 through January 31, 2021 (the "**Fee Period**").

## Jurisdiction

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.      On September 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 18, 2019, the Court entered an order [ECF No. 59] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.  On September 27, 2019, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 131].

4.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to facilitate effective administration of these chapter 11 cases are set forth in the *Debtors' Informational Brief* [ECF No. 17].

5.      On November 21, 2019, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

6.      On April 8, 2020, the Court entered the *Order Authorizing the Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327* [ECF No. 1023], appointing David M. Klauder as the fee examiner in these cases.

### The Debtors' Retention of Davis Polk

7.      On November 25, 2019, the Court entered the *Order Approving Application of Debtors for Authority to Employ and Retain Davis Polk & Wardwell LLP as Attorneys for the*

3

*Debtors Nunc Pro Tunc to the Petition Date* [ECF No. 542] (the "**Retention Order**"), authorizing Davis Polk's retention by the Debtors. The Retention Order attached hereto as **Exhibit B** and incorporated by reference allows the Debtors to compensate and reimburse Davis Polk in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Guidelines, and the Interim Compensation Order.

8.  The Retention Order also authorizes the Debtors to compensate Davis Polk at its hourly rates charged for services of this type and for the firm's actual, necessary expenses incurred in connection such services rendered during the Fee Period. Among other things, it permits Davis Polk to render the following services:

    a.    prepare, on behalf of the Debtors, all necessary or appropriate motions, applications, objections, replies, answers, orders, reports and other papers in connection with the administration of the Debtors' estates;

    b.    counsel the Debtors with regard to their rights and obligations as debtors in possession, and their powers and duties in the continued management and operation of their businesses and properties;

    c.    provide advice, representation and preparation of necessary documentation and pleadings and taking all necessary or appropriate actions in connection with statutory bankruptcy issues, strategic transactions, asset sale transactions, real estate, intellectual property, employee benefits, tort, commercial and governmental litigation, and corporate and tax matters;

    d.    take all necessary or appropriate actions to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved and the preparation of objections to claims filed against the Debtors' estates;

    e.    take all necessary or appropriate actions in connection with any chapter 11 plan, all related disclosure statements, all related documents and such further actions as may be required in connection with the administration of the

Debtors' estates; and

f.      act as restructuring counsel for the Debtors and performing all other necessary or appropriate legal services in connection with the chapter 11 cases.

## Compensation Paid and Its Sources

9.      All services during the Fee Period for which compensation is requested by Davis Polk were performed for or on behalf of the Debtors.  Additionally, Davis Polk has not received any payment or promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with matters covered by this Fee Application.   A certification confirming Davis Polk's compliance with the Fee Guidelines is annexed hereto as **Exhibit A**.

10.      To the extent that billable time or disbursement charges for services rendered or expenses incurred relate to the Fee Period, but were not processed prior to the preparation of this Fee Application, Davis Polk reserves the right to request compensation for such services and reimbursement of such expenses in a future fee application.

11.      These professional services were rendered by Davis Polk's partners, counsel, associates and paraprofessionals from its various practice groups, including restructuring, litigation, corporate, intellectual property, executive compensation and benefits, and tax.

## Summary of Professional Compensation and Reimbursement of Expenses Requested

12.      During the Fee Period, Davis Polk's professionals and paraprofessionals expended a total of 37,519.5 hours in connection with providing necessary services.  Davis Polk has been able to efficiently provide services by utilizing the expertise of professionals and paraprofessionals within relevant practice groups to effectively advise the Debtors regarding discrete issues and ensuring that the level of seniority is commensurate with the assignment. Davis Polk, in connection with services rendered on behalf of the Debtors, respectfully requests

allowance of reasonable compensation of such services rendered in the total amount of $31,542,356.50 and reimbursement of actual and necessary expenses incurred in the amount of $218,406.41, for an aggregate total of $31,760,762.91 for the Fee Period. Annexed hereto as **Exhibit C** is a list of Davis Polk Professionals and paraprofessionals, their position with the firm, the department in which the individual practices, the hourly rate charged for their services, the number of hours worked on this matter, and other pertinent information. **Exhibit D** annexed hereto is a list of the various categories and the total fees and total hours expended by subject matter category. Davis Polk maintains computerized, detailed time records of services rendered by its professionals and paraprofessionals. The detailed records for this Fee Period were appended to Davis Polk's Monthly Fee Statements. Davis Polk engaged in ongoing discussions with the Debtors regarding budgeting and staffing issues. Annexed hereto as **Exhibit E** is Davis Polk's budget plan in connection with services rendered to the Debtors.

## Case Status

13.     Certain of the Debtors have been named in over 2,900 civil actions pending in various state and federal courts and other fora across the United States and its territories (the "**Pending Actions**"). The Debtors commenced these chapter 11 cases to pursue a fair and efficient global resolution of the Pending Actions in order to preserve the value of the Debtors' estates and put that value to work helping address and combat the opioid crisis. On March 1, 2021, the Court extended the preliminary injunction with respect to the Pending Actions, through March 24, 2021.[2] On March 12, 2021, the Debtors filed a motion seeking a further extension of the preliminary injunction through April 21, 2021.

---

[2] The Preliminary Injunction was initially entered on October 11, 2019, became final on November 6, 2019, *see* Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion For a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Nov. 6, 2019) [ECF No. 105], and (....continued)

14.    The Debtors made meaningful progress towards a successful reorganization during the Fee Period.  Among other things, during the Fee Period the Debtors obtained Court approval to enter into a settlement of criminal and civil liabilities with the Department of Justice (the "**DOJ**") that offers a clear path to a successful reorganization that preserves billions of dollars of value for the Debtors' other creditors.[3]  In addition, the Debtors made material progress towards resolving remaining critical issues with key stakeholders and filing a plan of reorganization and disclosure statement[4] and successfully negotiated stipulations to confer joint standing on estate stakeholders to resolve insurance coverage disputes.[5] The Debtors continued to manage the extremely complicated and extensive Rule 2004 discovery issues surrounding numerous diligence requests to and from various constituencies.  Furthermore, the Debtors continued a robust investigation and analysis of potential claims by the Debtors against members of the Sackler Families and their associated companies and trusts.  At the same time, the Debtors obtained approval to implement a key employee incentive plan[6] and continued to operate their businesses while in chapter 11 during these unprecedented times.

---

(continued….)

has been subsequently amended.  The currently operative preliminary injunction order was entered on March 1, 2021. *See* Fifteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Mar. 1, 2021) [ECF No. 224].

[3] See *Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United States* [ECF No. 2004].

[4] The Debtors have since filed a plan of reorganization and disclosure statement. *See Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [ECF No. 2487].

[5] *See Stipulation and Agreed Order Granting Joint Standing to Prosecute Claims and Causes of Action Related to the Debtors' Insurance Coverage to (1) The Official Committee of Unsecured Creditors and (2) the Ad Hoc Committee of Governmental and other Contingent Litigation Claimants* [ECF No. 2305].

[6] *See Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [ECF No. 1861] and *Supplemental Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [ECF No. 2002].

15.    As the foregoing summary demonstrates, the Debtors have accomplished a great deal in the Fee Period, and continue to make progress on many different fronts.

### Summary of Services Rendered

16.    Davis Polk provided extensive and critical professional advice and other services in connection with the key developments described above and on myriad other important issues, often on an urgent basis and within a limited time frame.  Summaries of significant services are detailed below in accordance with Davis Polk's internal system of project categories:

Asset Acquisitions/Dispositions
Fees: $39,225.50, Total Hours: 33.0

- Under this project category, Davis Polk assisted the Debtors with issues related to the sale of Rhodes Technologies' API manufacturing facility in Coventry, Rhode Island (the "**Coventry Facility**"), among other things.  Specifically, Davis Polk:
    - Advised the Debtors regarding the sale of the Coventry Facility and entry into long-term API supply agreement;
    - Participated in calls and meetings with the Debtors, their advisors, and other parties in interest in connection with same; and

Automatic Stay/Preliminary Injunction/Litigation/DOJ
Fees: $5,186,344.50, Total Hours: 4,506.6

- Under this project category, Davis Polk assisted the Debtors with issues arising in conjunction with (i) activities related to the preliminary injunction; (ii) activities related to the enforcement of the automatic stay and of the preliminary injunction; (iii) defensive litigation efforts, including, among other things, activities related to various omnibus hearings, and motion practice and oral argument preparations related to various automatic-stay related issues, motions to compel production of the Debtors' privileged documents, and the Media Intervenors' motion to unseal judicial documents; and (iv) issues related to settlement agreement with the Department of Justice, including securing approval of a settlement of DOJ claims against the estates.
    - With respect to the preliminary injunction:
        - Prepared to move to extend the preliminary injunction.  Engaged with numerous creditors and creditors groups regarding possible further extension of the preliminary injunction;
        - Drafted, filed, and obtained Court approval of amended preliminary

injunction orders; and

- ▪ Communicated with Prime Clerk LLC ("**Prime Clerk**") regarding ongoing notice and service issues for a proceeding involving hundreds of parties.

- o With respect to the defense of the automatic stay and the preliminary injunction:

  - ▪ Tracked, reviewed, and responded to (threatened and completed) court filings by various parties in violation of the automatic stay;

  - ▪ Reviewed, researched, and analyzed various stay- and preliminary-injunction-violation issues as they arose, including complaints filed after the petition date, continued litigation after the preliminary injunction order was entered, and additional service issues; and

  - ▪ Communicated with various creditors and counsel regarding potential violations of the automatic stay and preliminary injunction.

- o With respect to other defensive litigation efforts:

  - ▪ Drafted arguments for various hearings, including but not limited to the October 28, 2020 Omnibus Hearing, the November 17, 2020 Omnibus Hearing, the December 15, 2020 Omnibus Hearing, and the January 20, 2021 Omnibus Hearing. Prepared materials for oral argument for the same. Communicated with Debtors' other counsel, including tort counsel and regulatory counsel, on hearing strategy. Reviewed and analyzed hearing transcripts. Advised on strategy regarding various issues that could have potential litigation consequences;

  - ▪ Advised the Debtors and other counsel to the Debtors on possible litigation in connection with potential insurance coverage disputes. Researched and analyzed numerous related legal issues. Communicated with Debtors and Debtors' insurance counsel regarding strategy. Negotiated stipulation to confer joint standing on estate stakeholders in order to ensure efficiency related to efforts to resolve insurance coverage disputes and defended stipulation from objection of an insurance coverage provider. Coordinated with estate stakeholders pursuant to aforementioned joint standing stipulation;

  - ▪ Engaged with the Debtors, co-counsel, and counsel for creditors and creditor groups on other automatic stay issues. Researched and analyzed issues related to stay violations. Communicated with Debtors' tort counsel regarding co-defendants' motion to lift the stay;

  - ▪ Engaged with the Debtors and counsel for creditor groups in connection with co-defendant tolling agreements. Reviewed and revised draft tolling agreements; and

- ▪ Analyzed Media Intervenors' motion to unseal judicial documents and advised Debtors in connection with the same. Reviewed documents to determine confidentiality and commercial sensitivity and redact the same. Engaged extensively with the Debtors, co-counsel, other stakeholders, and the Media Intervenors to facilitate unsealing of Debtor documents. Researched, drafted and revised limited objection to Media Intervenors' motion to unseal and prepared declaration in support of the same. Prepared for oral argument at two hearings in connection with same.

- o With respect to potential litigation of discovery/diligence issues:

  - ▪ Researched and analyzed legal issues in connection with the Debtors' withholding of privileged documents. Advised the Debtors on strategy in connection with possible motions to compel production of documents. Drafted objections to UCC motions to compel production of the Debtors' privileged documents. Drafted motion for protective order to preclude disclosure of the same. Engaged with the Debtors, co-counsel, and counsel for the UCC and related parties regarding disputes over privileged documents. Negotiated stipulation to resolve the UCC's motions to compel; and

  - ▪ Prepared for and attended depositions of witnesses to protect the Debtors' attorney-client privilege;

- o With respect to DOJ issues:

  - ▪ Advised the Debtors on ongoing negotiations and ultimate settlement with the DOJ. Communicated with co-counsel and DOJ counsel in connection with the settlement;

  - ▪ Prepared arguments and materials for hearing regarding issues related to settlement between the Sackler Families. Communicated with co-counsel, including tort counsel and regulatory counsel, on hearing strategy. Reviewed and analyzed hearing transcripts. Advised on strategy regarding various issues that could have potential litigation consequences; and

  - ▪ Researched, drafted and revised motion requesting approval of DOJ settlement ("**9019 Motion**") and related documents. Reviewed and analyzed objections to 9019 Motion. Drafted and revised reply to objections to 9019 Motion. Communicated with Debtors' other counsel regarding 9019 Motion. Prepared for oral argument regarding 9019 Motion and objections thereto. Secured Court approval of settlement of DOJ claims against the estates.

Bar Date/Estimation/Claims/Allowance Issues
Fees: $1,654,195.00, Total Hours: 1,478.9

- • Under this project category, Davis Polk assisted the Debtors with the analysis,

negotiation, and preparation of materials related to estimation, allowance, allocation, and settlement of claims. Specifically, Davis Polk:

- o Conducted legal research and factual diligence on a wide variety of claims-related issues, including objection procedures, estimation, allowance, allocation, damages, abatement, proofs of claim, and settlement and mediation thereof, to assess the Debtors' options for resolving and exiting these chapter 11 cases;

- o Consulted with and responded to inquiries from the Debtors, the UCC, and other stakeholders regarding the foregoing;

- o Researched and prepared mediation materials, and attended presentations and mediation sessions with the mediators and/or various parties;

- o Researched, prepared, and filed litigation materials regarding claims-related motions filed by creditors, including late claim motions and motions for claim payment;

- o Researched and prepared litigation materials regarding claims objection procedures;

- o Coordinated and consulted with Cornerstone Research and co-counsel regarding claims analyses and allocation discussions with the Debtors, the UCC, and other creditor constituencies; and

- o Coordinated and consulted with the Debtors' Court-appointed claims and noticing agent, Prime Clerk, and co-counsel regarding claims issues, proofs of claim, claimant questions, and claims analysis.

<u>Corporate Governance, Board Matters and Communications</u>
Fees: $433,396.00, Total Hours: 314.8

- Under this project category, Davis Polk assisted the Debtors' board of directors (the "**Board**") and various Board committees with analysis and advice regarding corporate governance issues, reviewed and prepared corporate documents, and provided advice regarding communications with the media and other stakeholders, among other things. Specifically, Davis Polk:

  - o Prepared for and attended general meetings of the Board, the Special Committee of the Board and other committees thereof;

  - o Coordinated review of press releases and reports;

  - o Advised, prepared materials for, and participated in numerous meeting and calls with the Board and various committees, including on issues regarding emergence from chapter 11, pending litigation, and chapter 11 case status and strategy;

  - o Drafted and reviewed various governance documents for the Board and various committees including minutes, resolutions, secretary certificates, shareholder and director consents; and

- o   Conducted research and advised the Debtors with respect to various public filings, disclosure requirements, audits, examinations, inquiries and other issues.

Creditor/UCC/AHC Issues
Fees: $5,557,757.50,  Total Hours: 9,561.1

- Under this project category, Davis Polk assisted the Debtors with coordinating and communicating with creditors, including the UCC, the Ad Hoc Committee and the Non-Consenting States Group on a variety of issues.  Specifically, Davis Polk:

  - o   Prepared, reviewed and revised materials for, corresponded with, and participated in meetings with the UCC, the Ad Hoc Committee, the Non-Consenting States Group and other creditor groups regarding all aspects of the Chapter 11 cases, including the production of diligence and documents in response to various information requests;

  - o   Participated on numerous calls and coordination meetings with Debtors and their advisors to formulate strategies for responding to requests from the UCC, the Ad Hoc Committee, the Non-Consenting States Group and other creditors groups;

  - o   Reviewed an extensive number of diligence requests from various creditor groups, and coordinated with Debtors, in-house electronic discovery team and external vendors (PJT Partners, AlixPartners, Cobra and TCDI) for the compilation of information, answers, summaries and documents responsive to the various requests;

  - o   Conducted review of hundreds of thousands of documents and communications for ongoing productions of electronically stored information and privilege logs to the UCC, the Ad Hoc Committee, the Non-Consenting States Group and other creditor groups.

  - o   Prepared, discussed, reviewed and revised responses to UCC privilege motions, negotiated stipulated resolution of those motions as applied to Debtors, and conferred with UCC to resolve subsequent privilege issues in connection with those motions.

Cross border/International Issues
Fees: $44,290.50,  Total Hours: 42.5

- Under this project category, Davis Polk assisted the Debtors with issues related to proceedings in foreign jurisdictions, among other things.  Specifically, Davis Polk:

  - o   Coordinated and managed foreign proceedings, and monitored critical dates and case workstreams in order to facilitate effective progress; and

  - o   Conducted regular conferences and calls with foreign counsel and parties in interest.

Equityholder/IAC Issues
Fees: $76,462.00, Total Hours: 54.2

- Under this project category, Davis Polk assisted the Debtors with the analysis of issues concerning the Debtors' equityholders and independent associated companies ("**IACs**"). Specifically, Davis Polk:
    - Attended and participated in numerous meetings with counsel for the equityholders on issues including shareholder diligence, contribution issues and tolling agreement;
    - Attended discussions and meetings with shareholder counsel and counsel for other parties in interest regarding mediation and related issues; and
    - Conducted research and analysis of intercompany transactions involving IACs.

Customer/Vendor/Lease/Contract Issues
Fees: $634,377.00, Total Hours: 639.7

- Under this project category, Davis Polk assisted the Debtors with issues related to the Debtors' customers and vendors, negotiations with lease and contract parties and preparation of pleadings and litigation regarding the Debtors' commercial agreements, among other things. Specifically, Davis Polk:
    - Conducted extensive research and reviewed and analyzed numerous executory and other contracts, leases, and agreements in response to inquiries from the Debtors and the Debtors' other advisors;
    - Reviewed and analyzed numerous executory and other contracts, leases, and agreements in connection with emergence planning;
    - Discussed with the Debtors' management and advisors matters regarding emergence planning and related contract review; and
    - Drafted and reviewed amendments to numerous commercial agreements under negotiation by contractual counterparties and Debtor's management.

Employee/Pension Issues
Fees: $719,833.00, Total Hours: 623.0

- Under this project category, Davis Polk assisted the Debtors with the review and analysis of employee-related issues including compensation, bonuses, incentive plans, severance and retirement plan issues, among other things. Specifically, Davis Polk:
    - Reviewed and discussed materials on compensation programs, including Wills Towers Watson's work product on employee compensation programs, with the Debtors and their advisors;
    - Drafted and revised resolutions, compensation letters, and other ancillary

documents related to employee compensation;

- o Assisted in the drafting of pleadings and other documents in connection with the Key Employee Incentive Plan and Key Employee Retention Plan; and

- o Advised the Debtors on questions and issues related to compensation issues, termination and retirement provisions, personnel related matters, and related regulatory filings.

General Case Administration
Fees: $1,418,223.00,  Total Hours: 1,398.6

- Under this project category, Davis Polk assisted the Debtors with general matters related to case administration, including case coordination, case calendaring, the filing of court papers, and attending hearings. Specifically, Davis Polk:

  - o Prepared for and attended:

    - ▪ The Omnibus Hearing on October 28, 2020

    - ▪ The Omnibus Hearing on November 17, 2020

    - ▪ The Omnibus Hearing on December 15, 2020

    - ▪ The Omnibus Hearing on January 20, 2021

  - o Prepared for, coordinated, and attended weekly internal meetings on case status in order to develop and efficiently manage workstreams;

  - o Maintained a critical dates calendar for clients and co-advisors and reviewed and distributed filings on the Court's docket to the Debtors' co-advisors and internal teams;

  - o Provided advice regarding matters not reflected in other project codes;

  - o Prepared and revised various pleadings, including motions related to sealing documents; and

  - o Drafted and filed numerous court papers related to case administration, including notices of hearing dates and adjournments and hearing agendas.

Non-DPW Retention and Fee Issues
Fees: $50,196.50,  Total Hours: 46.0

- Under this project category, Davis Polk assisted the Debtors with the preparation of retention materials, disclosures and fee applications for the Debtors' non-Davis Polk professionals. Specifically, Davis Polk:

  - o Assisted with application to obtain court authorization to retain a new ordinary course professional;

  - o Coordinated with various professionals regarding seeking approval of their interim fee applications and ordinary course professional fee cap increases;

  - o Assisted and responded to inquiries from the Debtors' other professionals

with respect to retention and the preparation and filing of fee statements and applications;  and

o   Attended multiple calls and corresponded with the Debtors and the Debtors' other professionals regarding the retention process and related fee orders.

Support Agreement/Plan/Disclosure Statement
Fees: $4,125,348.50,  Total Hours: 3,589.5

- Under this project category, Davis Polk assisted the Debtors with issues related to the Debtors' plan of reorganization and post-emergence structure, among other things.  Specifically,  Davis Polk:

  o   Prepared and revised the plan term sheet and negotiated with the DOJ, the UCC, the Ad Hoc Committee and other major stakeholders;

  o   Drafted and revised the plan of reorganization, the disclosure statement, the motion and proposed order to approve the disclosure statement and related documents;

  o   Conducted extensive research and reviewed and analyzed numerous legal precedents regarding plan structure considerations and strategies in response to inquiries from the Debtors and major stakeholders;

  o   Drafted and obtained approval of the third exclusivity extension motion; and

  o   Drafted and filed the fourth exclusivity extension motion.

DPW Retention/Preparation of Fee Statements/Applications Budget
Fees: $877,395.00,  Total Hours: 1,362.4

- Under this project category, Davis Polk assisted the Debtors with issues related to Davis Polk's retention, including the preparation and review of Davis Polk's monthly fee applications.  Specifically, Davis Polk:

  o   Drafted and prepared monthly fee applications for the months of August, September, October, November, and December of 2020;

  o   Drafted and prepared the third interim fee application;

  o   Drafted and prepared responses to fee examiner's inquiries to the third interim fee application;

  o   Conducted conflicts research regarding the firm's representation of Purdue co-defendants; and

  o   Internally coordinated and reviewed over eight hundred pages of time entries for privilege and confidentiality.

IP, Regulatory and Tax
Fees: $1,458,985.50,  Total Hours: 1,237.0

- Under this project category, Davis Polk assisted the Debtors with intellectual property and tax issues, among other things. Specifically, Davis Polk:

  o Drafted, reviewed, and advised Debtors in connection with a variety of intellectual property and commercial agreements, including licenses, development agreements, settlement agreements, employment agreements, and patent and other intellectual property assignment agreements;

  o Advised Debtors and reviewed documentation in connection with intellectual property-related issues relating to emergence and potential transaction;

  o Continued to advise and perform analysis on tax issues, including research and preparation of presentations related to emergence structures and related tax consideration, review of documentation related to Debtor business activities, and discussions and analysis of tax issues related to historic tax distributions;

  o Engaged in discussions and analysis related to models of the tax consequences of the sale of the IACs prepared by KPMG; and

  o Drafted and revised tax sections in chapter 11 plan of reorganization and disclosure statement.

Special Committee/Investigation Issues
Fees: $4,680,008.50, Total Hours: 4,648.0

- Under this project category, Davis Polk assisted and advised the Special Committee of the Debtors' Board of Directors (the "**Special Committee**"). Specifically, Davis Polk:

  o Investigated, assessed, and conducted an extensive review of documents relating to potential claims against the Debtors' equityholders, including members of the Sackler Families and their associated companies and trusts, including, but not limited to, potential claims for fraudulent conveyances, alter ego and veil-piercing, and breach of fiduciary duty;

  o Reviewed, supervised, and assisted Bates White's transfer pricing analysis of all non-cash distributions and transfers identified by AlixPartners between the Debtors and the Sackler Family, or entities owned by or operated for the benefit of the Sackler Family;

  o Provided information and/or presentations to the Special Committee and various third parties, including the UCC and its advisors, regarding the scope and status of the Special Committee's investigation into potential claims held by the Debtors;

  o Prepared for and attended depositions of members of the Sackler Families, their advisors, and others, as well as collected relevant material and provided same to the UCC on a common interest basis;

  o Engaged in numerous meet and confers and other discussions with the

16

various creditor groups, including the UCC, regarding discovery and diligence requests;

o   Advised the Special Committee on issues concerning the indemnification of the Debtors' employees and other issues within its mandate; and

o   Advised the Special Committee regarding the mediation and negotiation of a potential settlement of the estate's causes of action against the Debtors' equityholders, including members of the Sackler Families and their associated companies and trusts.

Rule 2004 Discovery
Fees: $4,586,318.50,  Total Hours: 7,984.2

•   Under this project category, Davis Polk assisted the Debtors with coordinating and communicating with creditors and other stakeholders, including the UCC, the Ad Hoc Committee, the Non-Consenting States Group, the NAS Group, and the Sackler Families on Rule 2004 discovery issues, and reviewed and analyzed materials related to Rule 2004 discovery. Specifically, Davis Polk:

o   Prepared, reviewed and revised materials for, corresponded with, and participated in meetings with co-counsel for the Debtors and counsel for the UCC, the Ad Hoc Committee, the Non-Consenting States Group, the IACs, the II-Way Entities, the NAS Group, and the Sackler Families regarding Rule 2004 discovery requests, objections, and related disputes and issues;

o   Corresponded with and participated in meetings with counsel for the above groups regarding document requests, discovery disputes, and preparation for the depositions of potential and actual deponents;

o   Reviewed and facilitated production of tens of thousands of Debtors' documents in connection with Committee requests for documents in custody of Norton Rose Fulbright and II-Way Entities;

o   Prepared, reviewed, and revised interview outlines, chronologies of documents, and other materials in preparation for various depositions taken and/or requested pursuant to the UCC's various subpoenas and requests for depositions; and

o   Attended witness depositions requested by the UCC and prepared confidentiality designations of deposition transcripts in connection with the same.

**Actual and Necessary Expenses**

17.    As set forth in **Exhibit F** hereto, Davis Polk has incurred or disbursed $218,406.41 in expenses in providing professional services to the Debtors during the Compensation Period. These expense amounts are intended to cover Davis Polk's direct

17

operating costs, which costs are not incorporated into the Davis Polk hourly billing rates. Only clients for whom the services are actually used are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would unfairly impose additional costs upon clients who do not require extensive photocopying, delivery, and other services. Davis Polk charges all of its bankruptcy clients $0.10 per page for photocopying and printing job expenses. On several occasions, overnight delivery of documents and other materials were required as a result of circumstances necessitating the use of such express services.

18.     Regarding providers of online legal research (e.g., LexisNexis and Westlaw), Davis Polk charges all of its clients the standard usage rates these providers charge, which, due to contractual flat fees, may not always equal Davis Polk's actual cost. Davis Polk currently is under contract to pay these providers a flat fee every month. Charging its clients the online providers' standard usage rates allows Davis Polk to cover adequately the monthly flat fees it must pay to these types of providers.

19.     Davis Polk has made every effort to minimize its expenses in the Chapter 11 Cases. The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and other parties in interest.

### Davis Polk's Requested Compensation and Reimbursement Should Be Allowed

20.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered … and reimbursement for actual,

necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award

of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including –
>
> (a)   the time spent on such services;
>
> (b)   the rates charged for such services;
>
> (c)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

21.      The foregoing professional services were performed by Davis Polk in an efficient

manner, were necessary and appropriate to the administration of the Chapter 11 Cases, and were

in the best interests of the Debtors, their estates, and other parties in interest.  Compensation for

the foregoing services as requested is commensurate with the complexity, importance, and nature

of the problems, issues, and tasks involved.  As required by the U.S. Trustee guidelines, annexed

hereto as **Exhibit G** is a chart setting forth the comparative blended rates of the professionals and

paraprofessionals who rendered services with a corresponding comparison of rates for

professionals and paraprofessionals not involved in these chapter 11 cases.

### Notice

22.      The Debtors will provide notice of this Application in accordance with the Interim

Compensation Order.  The Debtors submit that no other or further notice be given.

19

[*Remainder of Page Left Blank Intentionally*]

WHEREFORE, Davis Polk, in connection with services rendered on behalf of the Debtors, respectfully requests allowance of reasonable compensation of such services rendered in the total amount of $31,542,356.50 and reimbursement of actual and necessary expenses incurred in the amount of $218,406.41, for an aggregate total of $31,760,762.91 for the Fee Period.

Dated:   March 17, 2021
         New York, New York

DAVIS POLK & WARDWELL LLP

By:   */s/ Marshall S. Huebner*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors and Debtors in Possession*