AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SUMMARY COVER SHEET TO THE FOURTH INTERIM FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., ET AL.,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF
OCTOBER 1, 2020 THROUGH AND INCLUDING JANUARY 31, 2021**

In accordance with the Local Bankruptcy Rules for the Southern District of New York,

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of

Unsecured Creditors of Purdue Pharma L.P. and its affiliated debtors and debtors in possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp.  (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc.  (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc.  (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

submits this summary (the "Summary") of fees and expenses sought as actual, reasonable and

necessary in the fee application to which the Summary is attached (the "Application")[2] for the

period from October 1, 2020 through and including January 31, 2021 (the "Compensation

Period").

Akin Gump submits the Application as its third interim fee application in accordance with

the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for

Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation

Order").

| *General Information* | |
|---|---|
| Name of Applicant: | Akin Gump |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.* |
| Petition Date: | September 15, 2019 |
| Retention Date: | November 21, 2019, *nunc pro tunc* to September 26, 2019 |
| Prior Applications: | 3 |
| *Summary of Fees and Expenses Sought in this Application* | |
| Time Period Covered by this Application: | October 1, 2020 through and including January 31, 2021 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $17,682,961.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $1,657,026.74 |
| Total Compensation and Expenses Requested for the Compensation Period: | $19,339,987.74 |

---

[2] Capitalized terms used but not defined in the Summary shall have the meanings ascribed to such terms in the Application.

**Summary of Past Requests for Compensation and Prior Payments**

Total Compensation Approved by Interim Order to Date: $41,258,921.50[3]

| | |
|---|---|
| Total Expenses Approved by Interim Order to Date: | $1,707,470.22 |
| Total Allowed Compensation Paid to Date: | $41,258,921.50 |
| Total Allowed Expenses Paid to Date: | $1,707,470.22 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees for the period from October 1, 2020 through and including January 31, 2021):[4] | $11,333,962.80 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses for the period from October 1, 2020 through and including January 31, 2021): | $1,356,172.73 |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $12,690,135.53 |

---

[3] On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements. Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner, and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020. On September 2, 2020, the Court entered an order [ECF No. 1649] allowing the fees and expenses requested by Akin Gump in the Second Interim Fee Application in the total amount of $17,644,573.70, reflecting a fee reduction of $154,951.00 proposed by the Fee Examiner and agreed to by Akin Gump. On December 16, 2020, the Court entered an order [ECF No. 2144] allowing the fees and expenses requested by Akin Gump in the Third Interim Fee Application in the total amount of $23,354,168.98, reflecting a fee reduction of $116,901.31 proposed by the Fee Examiner and agreed to by Akin Gump. The "Total Compensation Approved by Interim Order to Date" ($41,258,921.50) reflects the aforementioned reductions.

[4] As of the date of this Application, Akin Gump has filed monthly fee statements for each month comprising the Compensation Period. Pursuant to the Interim Compensation Order, Akin Gump has received 80% of the fees requested and 100% of the expenses requested by each such Monthly Fee Statement, other than for the Sixteenth Monthly Fee Statement, for which it has not yet received compensation for any fees or reimbursement of expenses. Akin Gump anticipates that it will receive 80% of the fees requested and 100% of the expenses requested in its Sixteenth Monthly Fee Statement before the hearing on this Application. If such fees and expenses are paid as anticipated, as of the date of the hearing on this Application: (i) the total compensation sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $14,146,368.80; (ii) the total expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $1,656,233.54; (iii) the total compensation and expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $15,802,602.34; and (iv) the total compensation and expenses sought in this Application not yet paid will be $3,536,592.20.

| | |
|---|---|
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $6,649,059.01 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $1,688,788.00[5] |

| **Summary of Rates and Other Related Information for the Compensation Period** | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $927.29 |
| Blended Rate in this Application for All Timekeepers: | $861.25 |
| Number of Timekeepers Included in this Application: | 118 (92 attorneys; 26 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 10 |
| Increase in Rates Since Date of Retention: | 2[6] |
| Interim or Final Application: | Interim |

---

[5] Prior to filing its Monthly Fee Statements for the Compensation Period, Akin Gump voluntarily reduced its fees by the aggregate amount of 1,688,788.00. In the Chapter 11 Cases to date, Akin Gump has reduced its fees by the aggregate amount of $7,362,301.00, which amount includes, in addition to the above voluntary amount for the Compensation Period: (i) $362,267.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the First Interim Fee Period; (ii) a $125,739.75 fee reduction for the First Interim Fee Period pursuant to an agreement with the Fee Examiner; (iii) $866,524.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Second Interim Fee Period; (iv) a $154,951.00 fee reduction for the Second Interim Fee Period pursuant to an agreement with the Fee Examiner; (v) $4,059,658.00 for voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Third Interim Fee Period; and (vi) a $1,688,788.00 fee reduction for the Third Interim Fee Period pursuant to an agreement with the Fee Examiner. Akin Gump does not and will not seek payment of the foregoing fees and expenses in this Application or any other application. For the avoidance of doubt, the foregoing voluntary reductions are not based on any determination that such fees are not appropriate or compensable.

[6] Akin Gump increased its rates on January 1, 2020 and January 1, 2021, consistent with its customary practice and as disclosed in the Akin Retention Application and the *Fourth Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP, Nunc Pro Tunc, to September 26, 2019*, dated December 17, 2020 [ECF No. 2151].

## <u>SUMMARY OF MONTHLY FEE STATEMENTS IN THE COMPENSATION PERIOD</u>

<u>Summary of Any Objections to Monthly Fee Statements</u>: None

<u>Compensation and Expenses Sought in This Application Not Yet Paid</u>: $6,649,059.01

## COMPENSATION BY PROFESSIONAL
## OCTOBER 1, 2020 THROUGH AND INCLUDING JANUARY 31, 2021

| Partner | Department | Year of Admission | 2020 Rate | 2021 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,225.00 | $1,265.00 | 513.7 | $634,098.50 |
| Paul Butler | Litigation | 1991 | $1,175.00 | N/A | 60.9 | $71,557.50 |
| Ashley Crawford | Litigation | 2003 | $1,075.00 | N/A | 255.3 | $274,447.50 |
| Olivier De Moor | Tax | 2009 | $1,175.00 | N/A | 25.6 | $30,080.00 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,595.00 | $1,655.00 | 21.9 | $35,128.50 |
| Shawn Hanson | Litigation | 1983 | $1,135.00 | $1,195.00 | 24.6 | $28,833.00 |
| Mitchell Hurley | Litigation | 1997 | $1,595.00 | $1,655.00 | 896.9 | $1,442,357.50 |
| Howard Jacobson | Tax | 1979 | $1,240.00 | $1,310.00 | 21.0 | $26,411.00 |
| Stephen Kho | International Trade | 1998 | $1,135.00 | $1,330.00 | 44.7 | $52,645.50 |
| Jeffrey Kochian | Corporate | 2000 | $1,360.00 | $1,450.00 | 18.7 | $25,954.00 |
| Eli Miller | Corporate | 2009 | $1,075.00 | $1,135.00 | 59.0 | $64,679.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,595.00 | $1,655.00 | 544.2 | $877,641.00 |
| Steven Ross | Litigation | 1976 | $1,300.00 | N/A | 5.7 | $7,410.00 |
| Corey Roush | Litigation | 1997 | $1,135.00 | N/A | 156.5 | $177,627.50 |
| Robert Salcido | Health | 1989 | $1,155.00 | N/A | 16.3 | $18,826.50 |
| Elizabeth Scott | Litigation | 2007 | $1,075.00 | $1,135.00 | 740.4 | $805,788.00 |
| Joseph Sorkin | Litigation | 2008 | $1,350.00 | $1,425.00 | 485.1 | $659,775.00 |
| David Vondle | Intellectual Property | 2002 | $1,115.00 | $1,175.00 | 79.4 | $90,415.00 |
| Scott Welkis | Corporate | 1997 | N/A | $1,450.00 | 15.8 | $22,910.00 |
| Justin Williams | Litigation | 1993 | $1,335.00 | N/A | 6.9 | $9,211.50 |
| Jacqueline Yecies | Litigation | 2009 | $1,115.00 | $1,175.00 | 125.5 | $141,180.50 |
| **Partner Total:** | | | | | **4,118.10** | **$5,496,977.00** |
| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **2020 Rate** | **2021 Rate** | **Total Hours Billed** | **Total Compensation** |
| Christin Carey | Public Law & Policy | 2012 | $885.00 | $960.00 | 544.1 | $488,398.50 |
| Sharon Davidov | Tax | 2013 | $1,010.00 | $1,065.00 | 135.4 | $138,470.00 |
| Eugene Elder | Health | 1990 | $975.00 | N/A | 151.1 | $147,322.50 |
| Melissa Gibson | Intellectual Property | 2010 | $950.00 | $1,005.00 | 447.7 | $430,787.50 |

| Elizabeth Harris | Tax | 1987 | $1,065.00 | $1,125.00 | 387.5 | $415,921.50 |
|---|---|---|---|---|---|---|
| Matthew Hartman | Intellectual Property | 2010 | $930.00 | N/A | 199.9 | $185,907.00 |
| Jeffrey Kane | Litigation | 2015 | $850.00 | N/A | 235.8 | $200,430.00 |
| Kristi Kirksey | Tax | 2014 | $985.00 | N/A | 96.3 | $94,855.50 |
| Edan Lisovicz | Financial Restructuring | 2013 | $975.00 | $1,045.00 | 328.5 | $324,536.50 |
| Matthew Lloyd | Litigation | 2012 | $910.00 | $980.00 | 394.2 | $361,928.00 |
| Clayton Matheson | Litigation | 2010 | $950.00 | N/A | 48.7 | $46,265.00 |
| Brennan Meier | Litigation | 2012 | $910.00 | $980.00 | 445.4 | $410,333.00 |
| Erin Parlar | Litigation | 2015 | $925.00 | $1,005.00 | 443.6 | $417,234.00 |
| Heather Peckham | Litigation | 2000 | $935.00 | $990.00 | 358.1 | $335,192.00 |
| Nicholas Petree | Litigation | 2012 | $910.00 | $980.00 | 190.1 | $175,721.00 |
| Katherine Porter | Litigation | 2011 | $1,025.00 | $1,145.00 | 678 | $711,378.00 |
| Ali Rabbani | Litigation | 2007 | $965.00 | N/A | 8.1 | $7,816.50 |
| Jillie Richards | Litigation | 2007 | $850.00 | $935.00 | 342.1 | $292,017.50 |
| Peretz Riesenberg | Tax | 2016 | $920.00 | N/A | 34.9 | $32,108.00 |
| J. Matthew Schmitten | Litigation | 2020 | $850.00 | N/A | 34.0 | $28,900.00 |
| Sophie Shih-Yu Chu | Corporate | 2007 | $1,025.00 | N/A | 132 | $135,300.00 |
| Jonathan Underwood | Intellectual Property | 2014 | $850.00 | $935.00 | 107.1 | $95,072.50 |
| Jessica Weisel | Litigation | 1995 | $965.00 | N/A | 57.4 | $55,391.00 |
| Melissa Whitaker | Litigation | 2015 | $850.00 | N/A | 11.4 | $9,690.00 |
| Molly Whitman | Litigation | 2013 | $885.00 | $960.00 | 380.8 | $343,945.50 |
| Richard R. Williams, Jr. | Litigation | 2014 | $960.00 | $1,030.00 | 403.3 | $389,800.00 |
| Dennis Windscheffel | Litigation | 2004 | $965.00 | $1,020.00 | 317.9 | $312,169.00 |
| **Senior Counsel & Counsel Total:** | | | | | **6,913.40** | **$6,586,890.00** |

| **Associate** | **Department** | **Year of Admission** | **2020 Rate** | **2021 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|---|
| Sudhana Bajracharya | Health | 2018 | $650.00 | $785.00 | 242.6 | $164,980.00 |
| Brooks Barker | Financial Restructuring | 2018 | $775.00 | $895.00 | 132.6 | $104,601.00 |
| Megi Belegu | Litigation | 2020 | $565.00 | $695.00 | 544.0 | $330,344.00 |
| Fatima Bishtawi | Litigation | Not yet admitted | $565.00 | N/A | 96.5 | $54,522.50 |
| Patrick Benedetto | Corporate | 2019 | $535.00 | N/A | 11.4 | $6,099.00 |

| Nafisa Bringe | Litigation | 2016 | $735.00 | N/A | 21.2 | $15,582.00 |
|---|---|---|---|---|---|---|
| Marc Caplan | Tax | 2019 | $675.00 | N/A | 32.9 | $22,207.50 |
| Alan Carrillo | Financial Restructuring | 2018 | $615.00 | $735.00 | 82.3 | $52,714.50 |
| Jess Coleman | Financial Restructuring | 2020 | $615.00 | $735.00 | 231.1 | $148,522.50 |
| Shane Copelin | Corporate | 2018 | $575.00 | N/A | 84.7 | $48,702.50 |
| Travis Earp | Corporate | 2018 | $575.00 | N/A | 28.8 | $16,560.00 |
| Alyx Eva | Litigation | 2019 | $535.00 | N/A | 23.4 | $12,519.00 |
| Alexander France | Corporate | 2019 | $535.00 | N/A | 193.0 | $103,255.00 |
| Jason Gangwer | Litigation | 2017 | $650.00 | $785.00 | 297.7 | $198,095.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $615.00 | $735.00 | 86.4 | $55,536.00 |
| Lisa Garrett | Corporate | 2017 | $650.00 | $785.00 | 158.9 | $105,512.50 |
| Patrick Glackin | Litigation | 2019 | $650.00 | $770.00 | 412.4 | $275,704.00 |
| Nina Goepfert | Litigation | 2018 | $725.00 | $855.00 | 72.5 | $55,110.50 |
| Clark Gordon | Intellectual Property | 2016 | $735.00 | $870.00 | 40.3 | $30,970.50 |
| Christina Hightower | Litigation | 2017 | $650.00 | $785.00 | 245.1 | $168,130.50 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $535.00 | $650.00 | 151.0 | $81,498.00 |
| Jay Jamooji | Litigation | 2019 | $565.00 | $695.00 | 114.2 | $66,954.00 |
| Srishti Kalro | Litigation | 2016 | $810.00 | $940.00 | 362.6 | $305,055.00 |
| Rachel Kurzweil | Health | 2017 | $735.00 | $870.00 | 87.7 | $66,498.00 |
| Caitlin Locurto | Corporate | 2017 | $810.00 | N/A | 12.8 | $10,368.00 |
| Amanda Lowe | Litigation | 2018 | $650.00 | N/A | 28.3 | $18,395.00 |
| Joseph Lumley | Corporate | 2020 | N/A | $855.00 | 13.9 | $11,884.50 |
| Shanna Miles | Litigation | 2017 | $810.00 | N/A | 8.8 | $7,128.00 |
| McKenzie Miller | Litigation | 2020 | $535.00 | $625.00 | 657.4 | $368,206.00 |
| Mouna Moussaoui | Litigation | 2018 | $650.00 | $770.00 | 185.5 | $124,319.00 |
| Rebecca Ney | Corporate | 2019 | $650.00 | N/A | 90.7 | $58,955.00 |
| Oluwaremilekun Ojurongbe | Litigation | 2020 | $535.00 | N/A | 7.2 | $3,852.00 |
| Jennifer Poon | Litigation | 2016 | $810.00 | $940.00 | 324.7 | $273,511.00 |
| Peretz Riesenberg | Tax | 2016 | $920.00 | N/A | 7.6 | $5,586.00 |
| Julia Rinker | Corporate | 2020 | $565.00 | N/A | 75.2 | $42,488.00 |
| Sina Safvati | Litigation | 2016 | $735.00 | N/A | 90.0 | $66,150.00 |
| Sangita Sahasranaman | Tax | 2020 | $675.00 | N/A | 14.7 | $9,922.50 |

| James Salwen | Financial Restructuring | 2017 | $775.00 | $895.00 | 299.7 | $245,731.50 |
| Anthony Sierra | Intellectual Property | 2019 | $535.00 | $625.00 | 315.8 | $172,382.00 |
| Jason Sison | Corporate | 2016 | $810.00 | N/A | 80.8 | $65,448.00 |
| Joshua Tate | Litigation | 2019 | $535.00 | $625.00 | 107.2 | $59,800.00 |
| Allison Thornton | Litigation | 2018 | $650.00 | N/A | 20.8 | $13,520.00 |
| Kaitlyn Tongalson | Litigation | 2017 | $810.00 | N/A | 262.3 | $212,463.00 |
| Izabelle Tully | Litigation | 2020 | $565.00 | $695.00 | 650.3 | $394,303.50 |
| Grace Zhu | Financial Restructuring | 2021 | N/A | $650.00 | 24.7 | $16,055.00 |
| **Associate Total:** | | | | | **7,031.70** | **$4,670,141.50** |

| Staff Attorneys & Paraprofessionals | Department | Year of Admission | 2020 Rate | 2021 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Ganna Anisimova | Law Clerk, Litigation | N/A | $340.00 | $360.00 | 338.2 | $116,758.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $415.00 | $440.00 | 26.5 | $11,317.50 |
| Frank Castro | Paralegal, Litigation | N/A | $350.00 | $370.00 | 219.1 | $77,237.00 |
| Daniel Chau | EDiscovery | N/A | $370.00 | $390.00 | 262.7 | $99,395.00 |
| Kimberly La Croix | EDiscovery | N/A | $370.00 | $390.00 | 162.4 | $60,262.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $330.00 | $350.00 | 170.8 | $56,596.00 |
| Karren Ejoh | Paralegal, Litigation | N/A | $285.00 | N/A | 47.5 | $13,537.50 |
| Patricia Gunn | Paralegal, Corporate | N/A | $435.00 | N/A | 13.2 | $5,742.00 |
| Salie Henry | Paralegal, Corporate | N/A | $350.00 | N/A | 32.5 | $11,375.00 |
| Julie Hunter | EDiscovery | N/A | $370.00 | N/A | 15.5 | $5,735.00 |
| Amy Laaraj | Paralegal, Litigation | N/A | $350.00 | $370.00 | 583.0 | $207,520.00 |
| Jennifer Langmack | Paralegal, Litigation | N/A | $350.00 | N/A | 14.2 | $4,970.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Kate Lochner | Paralegal, International Trade | N/A | $150.00 | N/A | 23.1 | $3,465.00 |
| James Moore | Trial Services | N/A | N/A | $300.00 | 20.5 | $6,150.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | $515.00 | $545.00 | 322.2 | $168,873.00 |
| Michael Morse | EDiscovery | N/A | $370.00 | N/A | 5.1 | $1,887.00 |
| Jordan Orange | Paralegal, International Trade | N/A | $205.00 | N/A | 25.9 | $5,309.50 |
| Matt Pinkney | Trial Services | N/A | N/A | $225.00 | 7.0 | $1,575.00 |
| Francesco Racanati | Trial Services | N/A | N/A | $300.00 | 15.7 | $4,710.00 |
| Camille Schoonmaker | Paralegal, Litigation | N/A | $215.00 | N/A | 25.5 | $5,482.50 |
| Gisselle Singleton | EDiscovery | N/A | N/A | $390.00 | 29.6 | $11,544.00 |
| Risa Slavin | Paralegal, Litigation | N/A | $390.00 | N/A | 16.0 | $6,240.00 |
| Bennett Walls | Paralegal, Litigation | N/A | $215.00 | N/A | 25.6 | $5,504.00 |
| Elizabeth Watson | Paralegal, Corporate | N/A | $245.00 | N/A | 11.0 | $2,695.00 |
| Karen Woodhouse | Practice Attorney, Litigation | N/A | $400.00 | $420.00 | 68.6 | $27,808.00 |
| Melodie Young | Practice Attorney, Litigation | 2003 | $435.00 | N/A | 16.7 | $7,264.50 |
| **Staff Attorneys and Paraprofessional Total:** | | | | | **2498.10** | **$928,952.50** |
| **Total Hours / Fees Incurred:** | | | | | **20,561.30** | **$17,682,961.00** |

## COMPENSATION BY PROJECT CATEGORY
## <u>OCTOBER 1, 2020 THROUGH AND INCLUDING JANUARY 31, 2021</u>

| Task Code | Matter | Total Hours Billed | Total Value ($) |
|---|---|---|---|
| 2 | General Case Administration | 42.60 | $30,081.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 336.90 | $257,158.50 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 50.90 | $43,064.50 |
| 6 | Retention of Professionals | 21.90 | $19,201.50 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 246.40 | $307,248.50 |
| 8 | Hearings and Court Matters/Court Preparation | 757.40 | $718,088.00 |
| 12 | General Claims Analysis/Claims Objections | 176.30 | $185,271.50 |
| 13 | Analysis of Pre-Petition Transactions | 17,445.20 | $14,624,510.00 |
| 14 | Insurance Issues | 204.50 | $221,606.00 |
| 16 | Automatic Stay Issues | 0.50 | $367.50 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 78.90 | $87,858.50 |
| 18 | Tax Issues | 236.10 | $228,234.50 |
| 19 | Labor Issues/Employee Benefits | 23.20 | $31,430.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 153.80 | $95,619.00 |
| 21 | Exclusivity | 4.10 | $2,785.50 |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 383.60 | $414,206.50 |
| 23 | Asset Dispositions/363 Asset Sales/Bidding Procedures | 0.40 | $638.00 |
| 31 | Business Operations | 29.40 | $29,346.50 |
| 32 | Intellectual Property | 110.20 | $117,442.00 |
| 33 | Sackler Rule 2004 Discovery | 259.00 | $268,803.50 |
| **Total Hours / Fees Incurred:** | | **20,561.30** | **$17,682,961.00** |

**EXPENSE SUMMARY**
**OCTOBER 1, 2020 THROUGH AND INCLUDING JANUARY 31, 2021**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $6,378.44 |
| Color Copy | $840.33 |
| Computerized Legal Research - Courtlink - In Contract 50% | $1,207.41 |
| Computerized Legal Research - Other | $4,617.23 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $54,545.08 |
| Computerized Legal Research - Westlaw - Out of Contract | $130.05 |
| Corporate Service Fees | $0.00 |
| Courier Service/Messenger Service - Off Site | $936.05 |
| Departmental Special Supplies | $0.00 |
| Deposition | $22,683.80 |
| Document Retrieval | $117.50 |
| Dues - Miscellaneous Dues | $0.00 |
| Duplication - Off Site | $721.04 |
| Duplication - In House | $848.00 |
| Filing Fees | $0.00 |
| Imaging/Computerized Litigation Support | $5,010.16 |
| Local Transportation - Overtime | $1,407.16 |
| Meals - Business | $437.55 |
| Meals - Overtime | $87.65 |
| Meals (100%) | $80.68 |
| Miscellaneous | $15.72 |
| Overtime - Admin Staff | $0.00 |
| Postage | $0.00 |
| Professional Fees - Legal | $1,549,984.65 |
| Professional Fees – Miscellaneous | $1,120.00 |
| Research | $4.20 |
| Telephone - Long Distance | $700.00 |
| Telephone – Cell/Pagers | $31.97 |
| Transcripts | $1,179.00 |
| Travel - Ground Transportation | $3,943.07 |
| **Total Expenses Requested:** | **$1,657,026.74** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**FOURTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD
LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF PURDUE PHARMA L.P., ET AL., FOR ALLOWANCE OF COMPENSATION
FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
INCURRED FOR THE PERIOD OF OCTOBER 1, 2020 THROUGH
AND INCLUDING JANUARY 31, 2021**

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Purdue Pharma, L.P. and its affiliated debtors and

debtors in possession (collectively, the "Debtors"), hereby submits its third application (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

"Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services rendered to the Committee for the period of October 1, 2020 through and including January 31, 2021 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith. In support of this Application, Akin Gump submits the declaration of Arik Preis, a partner at Akin Gump, which is attached hereto as **Exhibit A** and incorporated by reference into this Application. In further support of this Application, Akin Gump respectfully states as follows.

## **INTRODUCTION**

1.      By this Application, Akin Gump seeks:  (i) interim allowance of compensation for the professional services rendered by Akin Gump during the Compensation Period in the amount of $17,682,961.00, representing 18,063.2 hours of professional services and 2,498.1 hours of paraprofessional and other non-legal services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in the amount of $1,657,026.74.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in*

*Larger Chapter 11 Cases*, 78 Fed. Reg. 36248, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.       The Committee has been given the opportunity to review this Application and the Co-Chairs (as defined below) have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. Approval of this Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.       Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.       The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

**A.       The Debtors' Chapter 11 Cases**

7.       On September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.       On September 26, 2019 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated September 27, 2019 [ECF No. 131].  The Committee currently comprises nine members and two

*ex officio* members.[2]  The Blue Cross and Blue Shield Association and Ryan Hampton serve as co-chairs of the Committee (the "Co-Chairs").

**B.    Retention of Akin Gump**

9.    On the Formation Date, the Committee selected Akin Gump as its legal counsel. On November 5, 2019, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Purdue Pharma L.P. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel, Nunc Pro Tunc to September 26, 2019* [ECF No. 421] (the "Akin Retention Application"), which was granted by an order of this Court dated November 21, 2019 [ECF No. 522] (the "Akin Retention Order").[3]

10.    The Akin Retention Order authorizes the Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to September 26, 2019, all as contemplated by the Akin Retention Application.    The Akin Retention Order further authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

---

[2] The Committee comprises the following members:  (i) The Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services L.L.C. and CaremarkPCS Health L.L.C.; (iii) Cheryl Juaire; (iv) Kara Trainor; (v) LTS Lohmann Therapy Systems Corporation; (vi) Pension Benefit Guaranty Corporation; (vii) Ryan Hampton; (viii) Walter Lee Salmons; and (ix) West Boca Medical Center, plus three *ex officio* members, Cameron County, Texas on behalf of the Multi-State Governmental Entities Group and the Cheyenne and Arapaho Tribes, on behalf of certain Native American Tribes and Native American-affiliated creditors, and Thornton Township High School District 205, on behalf of certain public school districts.

[3] The Committee selected Bayard, P.A ("Bayard") to serve as its "efficiency" counsel, Province, Inc. ("Province") to serve as its financial advisor, Jefferies LLC ("Jefferies") to serve as its investment banker, Kurtzman Carson Consultants LLC ("KCC") to serve as its information agent, KPMG LLP ("KPMG") to serve as joint tax consultant to the Committee and the Debtors and Bedell Cristin Jersey Partnership ("Bedell Cristin") to serve as special foreign counsel on September 29, 2019, October 1, 2019 and October 4, 2019, November 1, 2019, December 23, 2019, and February 27, 2020, respectively.  Orders authorizing the retention of Bayard [ECF No. 523], Province [ECF No. 524], Jefferies [ECF No. 526], KCC [ECF No. 527] were entered on November 21, 2019, and orders authorizing the retention of KPMG and Bedell Cristin were entered on February 24, 2020 [ECF No. 867] and June 26, 2020 [ECF No. 1310], respectively.  As disclosed in the *Notice of Change of Firm and Substitution of Counsel*, dated March 6, 2020 [ECF No. 900], Justin Alberto, who was serving as the primary attorney for the Committee at Bayard, resigned as a director at Bayard and became a member of the law firm of Cole Schotz P.C. ("Cole Schotz").  The Court entered an order authorizing the Committee's retention of Cole Schotz [ECF No. 1084] on April 24, 2020.

### C.    Appointment of Fee Examiner

11.    On April 8, 2020, the Court entered the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327*, dated April 8, 2020 [ECF No. 1023] appointing David M. Klauder, Esq. as fee examiner (the "Fee Examiner").  On May 26, 2020, the Court authorized the retention of Bielli & Klauder, LLC as counsel to the Fee Examiner.  *See Order Authorizing the Retention and Employment of Bielli & Klauder, LLC as Counsel to the Fee Examiner, Nunc Pro Tunc to the Appointment Date*, dated May 26, 2020 [ECF No. 1182].

### D.    Monthly Fee Statements

12.    On January 10, 2020, Akin Gump filed and served the *First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 26, 2019 Through October 31, 2019*, dated January 10, 2020 [ECF No. 736] (the "First Monthly Fee Statement"),[4] pursuant to which Akin Gump sought payment of (i) $2,139,642.40 (80% of $2,674,553.00) as compensation for professional services rendered and (ii) $44,481.58 for reimbursement of expenses.  Akin Gump did not receive any objections to its First Monthly Fee Statement and received payment in respect thereof on February 10, 2020.

13.    On February 7, 2020, Akin Gump filed and served the *Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 Through November 30, 2019*, dated February 7, 2020 [ECF No. 812]

---

[4] A copy of the First Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzIzMjY4&id2=0.

(the "Second Monthly Fee Statement"),[5] pursuant to which Akin Gump sought payment of (i) 1,758,302.40 (80% of $2,197,878.00) as compensation for professional services rendered and (ii) $28,963.85 for reimbursement of expenses. Akin Gump did not receive any objections to the Second Monthly Fee Statement and received payment in respect thereof on March 2, 2020.

14.     On March 10, 2020, Akin Gump filed and served the *Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2019 Through December 31, 2019* [ECF No. 904] (the "Third Monthly Fee Statement"),[6] pursuant to which Akin Gump sought payment of (i) $1,491,816.00 (80% of $1,864,770.00) as compensation for professional services rendered and (ii) $23,812.68 for reimbursement of expenses. Akin Gump did not receive any objections to the Third Monthly Fee Statement and received payment in respect thereof on March 30, 2020.

15.     On March 13, 2020, Akin Gump filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 Through January 31, 2019* [ECF No. 926] (the "Fourth Monthly Fee Statement"),[7] pursuant to which Akin Gump sought payment of (i) $2,480,835.20 (80% of $3,101,044.00) as compensation for professional services rendered and (ii) $68,475.18 for reimbursement of expenses. Akin Gump did not receive any objections to the Fourth Monthly Fee Statement and received payment in respect thereof on April 2, 2020.

---

[5] A copy of the Second Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzI4MTk2&id2=0.

[6] A copy of the Third Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM2OTgz&id2=0.

[7] A copy of the Fourth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4MzE3&id2=0.

16. On March 16, 2020, Akin Gump filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.*, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of September 26, 2019 Through and Including January 31, 2020* [ECF No. 947] (the "First Interim Fee Application"),[8] pursuant to which Akin Gump sought allowance of (i) $9,838,245.00 as compensation for professional services rendered and (ii) $165,733.29 for reimbursement of expenses. On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts[9] pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements. Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020.

17. On April 29, 2020, Akin Gump filed and served the *Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2020 Through February 29, 2020* [ECF No. 1105] (the "Fifth Monthly Fee Statement"),[10] pursuant to which Akin Gump sought payment of (i) $2,612,236.40 (80% of $3,265,295.50) as compensation for professional services rendered and (ii) $51,460.31 for reimbursement of

---

[8] A copy of the First Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4Nzk0&id2=0.

[9] Pursuant to Paragraph 2(vi) of the Interim Compensation Order, the payment received by Akin Gump for compensation allowed in connection with the First through Fourth Monthly Fee Statements was subject to a 20% holdback.

[10] A copy of the Fifth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzcyNzgx&id2=0.

expenses.  Akin Gump did not receive any objections to the Fifth Monthly Fee Statement and received payment in respect thereof on May 18, 2020.

18.     On May 18, 2020, Akin Gump filed and served the *Sixth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2020 Through March 31, 2020* [ECF No. 1165] (the "Sixth Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $3,918,530.40 (80% of $4,898,163.00) as compensation for professional services rendered and (ii) $52,477.20 for reimbursement of expenses.  Akin Gump did not receive any objections to the Sixth Monthly Fee Statement and received payment in respect thereof on June 8, 2020.

19.     On June 15, 2020, Akin Gump filed and served the *Seventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2020 Through April 30, 2020* [ECF No. 1276 ] (the "Seventh Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $4,270,396.80 (80% of $5,337,996.00) as compensation for professional services rendered and (ii) $65,548.73 for reimbursement of expenses.  Akin Gump did not receive any objections to the Seventh Monthly Fee Statement and received payment in respect thereof on July 6, 2020.

20.     On July 14, 2020, Akin Gump filed and served the *Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of May 1,*

---

[11] A copy of the Sixth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=Mzk4MjYx&id2=0.

[12] A copy of the Seventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDIzNTky&id2=0.

*2020 Through May 31, 2020* [ECF No. 1382] (the "Eighth Monthly Fee Statement"),[13] pursuant

to which Akin Gump sought payment of (i) $3,249,619.60 (80% of $4,062,024.50) as

compensation for professional services rendered and (ii) $66,559.50 for reimbursement of

expenses.  Akin Gump did not receive any objections to the Eighth Monthly Fee Statement and

received payment in respect thereof on July 28, 2020.

21.     On July 17, 2020, Akin Gump filed and served the *Second Interim Fee Application*

*of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured*

*Creditors of Purdue Pharma L.P.,* et al.*, for Allowance of Compensation for Services Rendered*

*and Reimbursement of Expenses for the Period of February 1, 2020 Through and Including May*

*31, 2020* [ECF No. 1441] (the "Second Interim Fee Application"),[14] pursuant to which Akin Gump

sought allowance of (i) $17,563,479.00 as compensation for professional services rendered and

(ii) $236,045.74 for reimbursement of expenses.  Following discussions with the Fee Examiner,

Akin Gump agreed to a voluntary reduction of $154,951.00 in the fees requested pursuant to the

Second Interim Fee Application, and the Court entered an order granting the Second Interim Fee

Application subject to the agreed reduction on September 2, 2020.  *See Omnibus Order Granting*

*Second Interim Fee Applications of Professionals for Allowance and Payment of Compensation*

*for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses*

[ECF No. 1649].

22.     On August 11, 2020, Akin Gump filed and served the *Ninth Monthly Fee Statement*

*of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements*

*Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1,*

---

[13] A copy of the Eighth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDc1OTk3&id2=0.

[14] A copy of the Second Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDgyNTY1&id2=0.

*2020 Through June 30, 2020* [ECF No. 1559] (the "Ninth Monthly Fee Statement"),[15] pursuant to

which Akin Gump sought payment of (i) $3,599,723.20 (80% of $4,499,654.00) as compensation

for professional services rendered and (ii) $128,348.37 for reimbursement of expenses. Akin

Gump did not receive any objections to the Ninth Monthly Fee Statement and received payment

in respect thereof on August 31, 2020.

23.     On September 16, 2020, Akin Gump filed and served the *Tenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of July 1, 2020 Through July 31, 2020* [ECF No. 1696] (the "Tenth Monthly Fee

Statement),[16] pursuant to which Akin Gump sought payment of (i) $3,926,677.60 (80% of

$4,908,347.00) as compensation for professional services rendered and (ii) $124,849.29 for

reimbursement of expenses. Akin Gump did not receive any objections to the Tenth Monthly Fee

Statement and received payment in respect thereof on October 8, 2020.

24.     On October 29, 2020, Akin Gump filed and served the *Eleventh Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of August 1, 2020 Through August 31, 2020* [ECF No. 1870] (the "Eleventh Monthly Fee

Statement),[17] pursuant to which Akin Gump sought payment of (i) $4,599,810.80 (80% of

$5,749,763.50) as compensation for professional services rendered and (ii) $646,665.40 for

---

[15] A copy of the Ninth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at:
[https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NTc0MDc1&id2=0].

[16] A copy of the Tenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at:
https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTA3MTAwNQ==&id2=0.

[17] A copy of the Eleventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at:
https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExMTUyNA==&id2=0.

reimbursement of expenses. Akin Gump did not receive any objections to the Eleventh Monthly

Fee Statement and received payment in respect thereof on November 19, 2020.

25.    On November 11, 2020, Akin Gump filed and served the *Twelfth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of September 1, 2020 Through September 30, 2020* [ECF No. 1696] (the "Twelfth Monthly

Fee Statement),[18] pursuant to which Akin Gump sought payment of (i) $5,564,074.40 (80% of

$6,955,093.00) as compensation for professional services rendered and (ii) $458,349.73 for

reimbursement of expenses. Akin Gump did not receive any objections to the Twelfth Monthly

Fee Statement and received payment in respect thereof on December 7, 2020.

26.    On November 16, 2020, Akin Gump filed and served the *Third Interim Fee*

*Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of*

*Unsecured Creditors of Purdue Pharma L.P.,* et al*., for Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses for the Period of June 1, 2020 Through and Including*

*September 30, 2020* [ECF No. 1983] (the "Third Interim Fee Application"),[19] pursuant to which

Akin Gump sought allowance of (i) $22,112,857.50 as compensation for professional services

rendered and (ii) $1,358,212.79 for reimbursement of expenses. Following discussions with the

Fee Examiner, Akin Gump agreed to a voluntary reduction of $104,373.25 in the fees requested

pursuant to the Third Interim Fee Application, and the Court entered an order granting the Second

Interim Fee Application subject to the agreed reduction on December 16, 2020. *See Omnibus*

*Order Granting Third Interim Fee Applications of Professionals for Allowance and Payment of*

---

[18] A copy of the Twelfth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExNDU0Mg==&id2=0.

[19] A copy of the Third Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExNjM5OA==&id2=0.

*Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 2144].

27.     On January 11, 2021, Akin Gump filed and served the *Thirteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of October 1, 2020 Through October 31, 2020* [ECF No. 2245] (the "Thirteenth Monthly Fee Statement")[20] pursuant to which Akin Gump sought payment of (i) 5,402,867.60 (80% of $6,753,584.50) as compensation for professional services rendered and (ii) $475,392.29 for reimbursement of expenses.  Akin Gump did not receive any objections to the Thirteenth Monthly Fee Statement and received payment in respect thereof on January 28, 2021.

28.     On January 28, 2021, Akin Gump filed and served the *Fourteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2020 Through November 30, 2020* [ECF No. 2330] (the "Fourteenth Monthly Fee Statement")[21] pursuant to which Akin Gump sought payment of (i) $3,610,640.80 (80% of $4,513,301.00) as compensation for professional services rendered and (ii) $441,183.42 for reimbursement of expenses.  Akin Gump did not receive any objections to the Fourteenth Monthly Fee Statement and received payment in respect thereof on February 18, 2021.

29.     On February 22, 2021, Akin Gump filed and served the *Fifteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

---

[20] A copy of the Thirteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTEzNzU4MA==&id2=0.

[21] A copy of the Fourteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE0MDQzOA==&id2=0.

*Period of December 1, 2020 Through December 31, 2020* [ECF No. 2407] (the "Fifteenth Monthly Fee Statement")[22] pursuant to which Akin Gump sought payment of (i) $2,320,454.40 (80% of $2,900,568.00) as compensation for professional services rendered and (ii) $350,047.89 for reimbursement of expenses. Akin Gump did not receive any objections to the Fifteenth Monthly Fee Statement and received payment in respect thereof on March 11, 2021.

30.     On March 12, 2021, Akin Gump filed and served the *Sixteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2021 Through January 31, 2021* [ECF No. 2473] (the "Sixteenth Monthly Fee Statement")[23] pursuant to which Akin Gump sought payment of (i) $2,812,406.00 (80% of $3,515,507.50) as compensation for professional services rendered and (ii) $390,403.14 for reimbursement of expenses. As of the date hereof, Akin Gump has not received any objections to the Sixteenth Monthly Fee Statement.

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

31.     By this Application, Akin Gump requests allowance of interim compensation for professional services rendered to the Committee during the Compensation Period in the amount of $17,682,961.00 and expense reimbursements of $1,657,026.74. During the Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 20,561.30 hours for which compensation is sought.

---

[22] A copy of the Fifteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE3MjQ4Mw==&id2=0.

[23] A copy of the Sixteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE5NTgyNw==&id2=0.

32.    The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

33.    Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code against budgeted fees and hours is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services for the Committee during the Compensation Period have been filed and served with the Monthly Fee Statements in accordance with the Interim Compensation Order.

34.    Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

35.    Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN GUMP DURING THE COMPENSATION PERIOD

36.     The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Committee and commensurate with the complexity and significance of the matter.  Moreover, the nature of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Committee's objectives and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

37.     The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

38.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the matters and issues that Akin Gump was required to address during the Compensation Period.

A.     **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|:---:|:---:|
| 42.6 | $30,081.00 |

39.     This category includes time spent by Akin Gump professionals and paraprofessionals performing various general administrative tasks necessary to the Committee's involvement in the Chapter 11 Cases, including among other things: (i) maintaining distribution lists; (ii) monitoring the docket for the Chapter 11 Cases to track filings and to remain apprised of critical dates;; (iii) ensuring that the appropriate parties and professionals are notified of filed documents, relevant objection and response deadlines, hearing dates and other critical dates; (iv) communicating with the members of the Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters; and (v) performing other necessary general administrative tasks.

40.     During the Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss when various motions and applications would be filed and the information the Committee would require to analyze each motion or application properly and in a timely manner.  Akin Gump also consulted with Cole Schotz, Province and/or Jefferies multiple times each day with respect to documents and other information received from the Debtors, their representatives and other parties in interest.  In addition, Akin Gump professionals and paraprofessionals monitored the docket for the Chapter 11 Cases to remain apprised of all critical matters.  For each significant filing, Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto.  Due to Akin Gump's experience counseling official committees of unsecured creditors, Akin Gump believes it was able to address all issues relating to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.**     **Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 336.9 | $257,158.50 |

41.     This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the preparation of Akin Gump's monthly fee statements and fee applications.   During the Compensation Period, these efforts included ensuring that the schedules attached to the Eleventh, Twelfth, Thirteenth and Fourteenth Monthly Fee Statements complied with the Fee Guidelines, and that such schedules did not contain information that was privileged, confidential or subject to attorney work product protection.  Akin Gump professionals and paraprofessionals also prepared, filed and served the Third Interim Fee Application.   To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Monthly Fee Statements and schedules for the Third Interim Fee Application, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

**C.**     **Analysis of Other Professionals' Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 50.9 | $43,064.50 |

42.     This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements submitted to the Court by other estate-compensated professionals.   Akin Gump reviewed such fee statements to ensure that such professionals operated in accordance with their individual mandates and sought reasonable compensation and reimbursement of expenses in connection with their roles in the Chapter 11 Cases.  This category also includes time spent assisting the Committee's other professionals in reviewing, finalizing and filing their respective monthly fee statements and interim fee applications.

43.    This category also includes time spent by Akin Gump professionals in connection with the *Debtors' Motion to Supplement the Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals*, dated November 24, 2020 [ECF No. 2030] (the "Supplemental Fees Motion"), which motion sought to modify certain terms of the Court's order (the "Reimbursement Order")[24] authorizing the Debtors to pay certain reasonable and documented fees and expenses of professionals to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "CAHC").[25]

44.    For several months following the Court's entry of the Reimbursement Order, key creditor constituencies engaged in mediation (the "Allocation Mediation") regarding the relative allocation of the value of the Debtors' estates between public and private opioid litigants, and certain other related issues.  Among the results of the Allocation Mediation were broad-based agreements among parties in interest regarding allocation of the Debtors' estates and the commitment by certain parties, including the CAHC, to use their distributions under a plan to fund abatement programs.  Therefore, although certain conditions precedent to payment in the Reimbursement Order had not been satisfied, the Debtors argued in the Supplemental Fees Motion that it nevertheless was appropriate under the circumstances for the Debtors to pay the allocation-related fees and expenses of the CAHC.

---

[24] *See Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals*, dated December 2, 2019 [ECF No. 553].

[25] Due in part to certain objections raised by the Committee, the Court entered an order on December 2, 2019 authorizing the Debtors to pay certain fees and expenses of the CAHC professionals but providing that such professionals could not receive payment for time expended in connection issues pertaining to intercreditor allocation until the earlier of: (i) approval by the Court of (a) the Debtors' entry into a restructuring support agreement (an "RSA") and (b) establishment of an emergency relief fund for the use, prior to plan confirmation, of a substantial amount of the Debtors' cash to provide emergency relief and assistance with respect to the opioid crisis; or (ii) confirmation of a chapter 11 plan.

45.     Akin Gump professionals analyzed the Supplemental Fees Motion, including assessing the impact of the requested relief on ongoing negotiations among the parties and the extent to which the agreements reached in the Allocation Mediation were an adequate substitute for the conditions precedent in the Reimbursement Order.  After significant analysis and discussion regarding these issues, the Committee determined not to object to the Supplemental Fees Motion, which the Court approved on December 22, 2020.  *See Second Supplemental Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* [ECF No. 2190].

**D.     Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|:---:|:---:|
| 246.4 | $307,248.50 |

46.     This category includes time spent by Akin Gump professionals and paraprofessionals: (i) preparing for and participating in meetings and conference calls with the Committee as a whole or with individual members of the Committee, including bi-weekly conference calls with the full Committee; (ii) communicating with the Committee's other advisors on a day-to-day basis regarding pending matters and case strategy; (iii) attending meetings with various parties in interest on the Committee's behalf; (iv) responding to inquiries from individual unsecured creditors; (v) providing Committee members with summaries and updates regarding court filings and relevant response deadlines, hearing dates and any other critical matters related thereto; and (vi) attending to other general Committee matters.

47.     The Committee continued to play a very active[26] role in the Chapter 11 Cases during the Compensation Period, and Akin Gump, together with the Committee's other advisors, held no

---

[26] *See, e.g.,* Transcript of June 3, 2020 Hearing 95:3-5 (THE COURT: "You have an ***active***, well-informed and diligent official creditors committee that represents everyone.") (emphasis added); Transcript of September 30, 2020 Hearing

fewer than 27 telephonic meetings with the full Committee during the Compensation Period, in addition to numerous telephonic conferences with individual Committee members and subcommittees. Prior to each biweekly telephonic meeting with the full Committee, Akin Gump professionals reviewed pending matters, prepared an agenda describing issues requiring the Committee's attention and coordinated with the Committee's other advisors regarding such matters. In addition, Akin Gump professionals prepared and/or assisted the Committee's other advisors in preparing detailed memoranda and presentations for the Committee addressing pertinent matters in the Chapter 11 Cases. During such meetings, Akin Gump assisted the Committee in fulfilling its statutory duty to exercise informed judgment regarding the various issues arising in the Chapter 11 Cases and formulating positions with respect to significant matters. Akin Gump also sent daily email updates to the Committee to ensure the Committee remained apprised of relevant matters.

48.     Akin Gump professionals and paraprofessionals devoted a significant number of hours to these tasks during the Compensation Period in order to ensure that the Committee was prepared to make informed decisions with respect to significant case issues. Although such tasks do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated the Committee's participation in the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

49.     Importantly, this category also includes time spent by Akin Gump professionals, on behalf of the Committee, responding to inquiries from numerous unsecured creditors in order to fulfill the Committee's responsibility under Bankruptcy Code section 1102(b)(3) to "provide access to information for creditors . . . not appointed to the [C]ommittee." Prior to the

---

83:12-13 (THE COURT: "We have had an extremely active and well represented and thoughtful official Creditors' Committee.").

Compensation Period, the Court entered the *Order Clarifying the Committee's Requirement to Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information*, dated December 23, 2019 [ECF No. 699], which authorized the Committee to establish a website at which creditors can receive information regarding the status of the Chapter 11 Cases (among other things).   The Committee's website, which is maintained by KCC, makes general information about the Chapter 11 Cases available to creditors, including information regarding case developments, key contact information and a detailed case calendar addressing upcoming hearings and other critical events.   During the Compensation Period, Akin Gump professionals, in coordination with KCC, posted relevant updates and materials on the Committee's website, including detailed case calendars, information regarding case developments and key contact information.

**E.      Hearings and Court Matters/Meetings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 757.4 | $718,088.00 |

50.     This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Court hearings and status conferences held during the Compensation Period.  Akin Gump professionals prepared for and participated in each of the five hearings during the Compensation Period.   In preparing for such hearings, Akin Gump professionals, together with the Committee's other advisors, reviewed and analyzed all relevant issues, motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and the advisors to other parties in interest the relief requested and, as necessary, asserted the Committee's positions at such hearings.  Specifically, extensive time was spent during the Compensation Period preparing for a hearing, which was originally scheduled for October 28, 2020, regarding several disputes between the Committee and

the Sacklers concerning the Privilege Motions (as defined below).  In light of the progress of the

cases and various ongoing discussions, however, the Committee determined, with the consent of

the Sacklers, to adjourn such hearings to a later date to be determined.[27]  In addition, following

each hearing, Akin Gump professionals provided the Committee with summaries and analyses of

the results thereof, either in written form or telephonically during the next Committee meeting.

### F.    General Claims Analysis/Claims Objections (Task Code 12)

| Total Hours | Fees |
| --- | --- |
| 176.3 | $185,271.50 |

51.    This category includes time spent by Akin Gump professionals in continuing to

evaluate the merits of the vast universe of claims against the Debtors and potential approaches to

addressing such claims in the Chapter 11 Cases, including addressing various issues in connection

with the Allocation Mediation.  Claims against the Debtors include, among others, a wide range

of contingent litigation claims, including, but not limited to, claims by personal injury plaintiffs,

hospitals, insurance ratepayers, third-party payors, health plans, states, municipalities, the United

States, Native American Tribes and children born with Neonatal Abstinence Syndrome.

52.    Prior to the Compensation Period, the Court entered the *Order Appointing

Mediators*, dated as of March 4, 2020 [ECF No. 895] (the "Mediation Order"), pursuant to which

Kenneth Feinberg and Layn Phillips were appointed co-mediators (the "Mediators") to oversee the

Allocation Mediation.[28]  Throughout the course of the Allocation Mediation, which concluded

---

[27] *See Notice of Agreement Between Debtors and Official Committee of Unsecured Creditors Regarding Privilege Motions and Adjournment of Hearing with Respect to Remaining Privilege Disputes as to the Sacklers*, dated November 6, 2020 [ECF No. 1908]; *Notice of Adjournment of Hearing on Privileges Disputes*, dated December 17, 2020 [ECF No. 2153]; *Notice of Adjournment of Hearing on Privilege Disputes*, dated January 19, 2021 [ECF No. 2291]; *Stipulation and Agreed Order Regarding Exhibits for Use at Hearing on Privileges Motions*, dated February 22, 2021 [ECF No. 2405].

[28] The parties to the Allocation Mediation included: (i) the MSGE Group; (ii) the Ad Hoc Committee of NAS Babies; (iii) the Ad Hoc Group of Hospitals; (iv) the Ad Hoc Group of Individuals; (v) various third-party payors and health insurance carrier plaintiffs, including The Blue Cross Blue Shield Association; (vi) a group of individual health insurance purchasers; (vii) the CAHC; (viii) the Non-Consenting States; (ix) the Committee; and (x) the Debtors (in

during the Compensation Period, Akin Gump professionals analyzed, conducted research and communicated with the Phase I Mediation Parties regarding the strengths and weaknesses of various creditors' claims, participated in mediation sessions, reviewed and analyzed various term sheets reflecting proposals and counterproposals among the Phase I Mediation Parties and worked on behalf of the Committee to promote agreements among the Phase I Mediation Parties. Ultimately, these efforts culminated in agreement among the Phase I Mediation Parties on several key case issues, including, among other things: (i) the Non-Federal Public Claimants' agreement that all value received by them in the Chapter 11 Cases will be used to fund programs designed to abate the opioid crisis; and (ii) term sheets addressing allocation of estate value among four Private Claimant groups—the Personal Injury Claimants, the Hospitals, counsel to certain of the TPPs and the NAS Committee (with regard to abatement)—each of which was agreed to by the Debtors, the Non-Federal Public Claimants and the specific Private Claimant group that is party to such term sheet.  The term sheets for the Hospitals, TPPs and NAS Committee also required each group to use substantially all of the value received under a plan to fund programs to abate the opioid crisis.[29] *See Mediator's Report*, dated September 23, 2020 [ECF No. 1716] (the "Mediators' Report"). Following the conclusion of the Allocation Mediation, Akin Gump professionals continued to work with the other Phase I Mediation Parties to progress the terms of agreements reached in the Allocation Mediation and resolve outstanding issues related thereto.

53.     In addition, this category includes time spent by Akin Gump professionals in connection with the *Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019*

---

each case as defined in the *Debtors' Motion for Entry of an Order Appointing Mediators*, dated February 20, 2020 [ECF No. 855], and, collectively, the "Phase I Mediation Parties").  Certain other parties participated in the Mediation but were not "Mediation Parties" (as defined in the Mediation Order).  Capitalized terms used but not otherwise defined in this paragraph shall have the meanings assigned to such terms in the Mediators' Report (as defined below).

[29] In addition, the Debtors and the insurance purchasers reached agreement on a sum to be paid over two years and dedicated to abatement purposes.

*Authorizing and Approving Settlements Between the Debtors and the United States*, dated October 21, 2020 [ECF No. 1828] (the "DOJ Settlement Motion"), which was filed concurrently with the announcement by the United States Department of Justice (the "DOJ") of two settlements related to the Chapter 11 Cases: (i) a civil settlement and a criminal guilty plea by the Debtors (the "Debtor DOJ Settlement and Plea"); and (ii) a civil, but not a criminal, settlement between the United States and the Sackler Families (the "Sackler DOJ Settlement").

54.    During the Compensation Period, Akin Gump professionals, in coordination with the Committee's other advisors, spent time analyzing and evaluating the terms of the Debtor DOJ Settlement and Plea and engaging in discussions with the Debtors and other creditor constituencies regarding such terms.    Informed by extensive analysis conducted by Akin Gump and the Committee's other advisors, and following extensive discussions, the Committee determined to raise certain of its concerns regarding the Debtor DOJ Settlement and Plea with the Court, focusing in particular on the potential impact of the Debtor DOJ Settlement and Plea on the settlements reached in the Allocation Mediation.    Specifically, the Committee had concerns regarding: (i) the possibility that the contemplated reorganization of the Debtors as a public benefit corporation might not satisfy certain conditions precedent in such allocation settlements; (ii) the possibility that the Debtor DOJ Settlement and Plea, including a $2 billion "superpriority administrative expense claim" contemplated to be granted to the United States, could dilute recoveries to other creditors; (iii) the lack of assurance that the United States would use funds received pursuant to the settlement for purposes of abating the opioid crisis; and (iv) the limited scope of documents contemplated to be made available to the public in connection with the settlement.    To bring these concerns to the Court's attention, Akin Gump professionals drafted and filed *The Official Committee of Unsecured Creditors' Statement Regarding Motion of Debtors Pursuant to 11 U.S.C.*

*§ 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United States and Request for Certain Modifications in the Proposed Form of Order Approving the Same*, dated November 11, 2020 [ECF No. 1920].  Following two hearings in which the Court and various parties in interest engaged in lengthy dialogue regarding the issues raised by the Committee, the Court entered an order approving the Debtor DOJ Settlement Motion on November 18, 2020.  *See Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United States* [ECF No. 2004].

**G.    Prepetition Transactions (Task Code 13)**

| Total Hours | Fees |
|:---:|:---:|
| 17,445.2 | $14,624,510.00 |

55.    This category includes time spent by Akin Gump professionals and paraprofessionals investigating and evaluating potential estate causes of action, including those against the Sacklers and certain affiliated entities, arising from prepetition transfers of value or the incurrence of obligations from the Debtors to other entities, as well as numerous other potential causes of action arising out of prepetition conduct and transactions.  Such efforts involved extensive legal research with respect to identifying and analyzing potential causes of action, as well as potential defenses to such causes of action.  This category also includes time related to evaluating the Debtors' proposed settlement framework (the "Settlement Framework")—which contemplates a global settlement of estate and third-party causes of action against the Sacklers and certain related entities—including certain diligence related to the Independent Associated Companies (the "IACs"), the sale of which is contemplated to provide a portion of the consideration for the settlement of such claims.  In connection with ongoing efforts regarding such causes of action and the Settlement Framework, Akin Gump professionals coordinated closely with other creditor constituencies, including the Non-Consenting States.

56.     Specifically, during the Compensation Period, Akin Gump, in conjunction with the Committee's other advisors, continued reviewing voluminous materials produced by the Debtors, the Sacklers, the IACs and other parties and conducting fact discovery to assess potential causes of action on behalf of the Debtors' estates and the likelihood of recovery, obtain purportedly privileged documents withheld by the Sacklers and the Debtors and aid the Committee's efforts to evaluate the Settlement Framework and engage in the Shareholder Claims Mediation (as defined below).  As of shortly after the close of the Compensation Period, the Committee's advisors had received approximately 14 million documents comprising more than 103 million pages through discovery and other voluntary disclosures.  In light of the expedited timeframe under which the Committee's investigation is proceeding, the Committee's advisors established a document review protocol assisted by analytics, and used such analytics and tailored searches to conduct targeted reviews of large volumes of materials.  Akin Gump professionals engaged in extensive document review, with a broad-based document review team, in order to identify and review the most relevant documents.  Akin Gump professionals also prepared various memoranda and other work product in connection with their ongoing review of these documents and factual investigation. Further, these efforts included significant diligence and analysis related to the more than 160 IACs, including tailored document review in order to identify and review materials most relevant to the significant cash and non-cash transfers from the Debtors for the benefit of the IACs and the Sacklers.   Akin Gump professionals also worked with the Committee's other advisors, as well as the Debtors' advisors, to analyze licensing agreements entered into between the Debtors and the IACs for the purposes of valuing estate causes of action and the appropriateness of the Settlement Framework.

57.     This category also includes time spent by Akin Gump professionals scheduling, preparing for and taking depositions of individuals with key information related to potential estate causes of action.  As with numerous other issues in connection with the Committee's investigation, Akin Gump professionals worked closely with representatives of other creditor groups, including the Non-Consenting States, in developing the Committee's strategy in connection with such depositions and the investigation into estate causes of action generally.  During the Compensation Period, Akin Gump professionals identified various witnesses relevant to the Committee's investigation, negotiated with counsel to such parties regarding scheduling the depositions on an appropriate timetable and negotiated a protocol to govern the taking of depositions remotely.  Akin Gump professionals participated in the depositions of more than ten witnesses during the Compensation Period and spent significant time preparing for such depositions, including reviewing documents relevant to each witness, drafting deposition notices, preparing exhibits and drafting relevant questions and deposition outlines.

58.     In addition, Akin Gump professionals and paraprofessionals spent significant time during continuing to analyze and challenge (as necessary) the nearly 400,000 documents the Debtors and the Sacklers initially withheld from production based on assertions of attorney-client privilege, work product protection, common interest and other grounds, which were the subject of two separate motions[30] filed by the Committee just prior to the  Compensation Period.  Akin Gump professionals continued to review voluminous privilege log entries and redactions associated with the withheld documents and engaged in a thorough meet and confer process with the Debtors and

---

[30] *See Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents or for In Camera Review, based on Good Cause, Crime Fraud, and At Issue Exceptions to Claims of Privilege*, dated September 30, 2020 [ECF No. 1753];  *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged*, dated September 30, 2020 [ECF No. 1752] (together, the "Privilege Motions").

the Sacklers regarding various deficiencies in the privilege logs, as well as the exceptions to the asserted privileges that the Committee believes apply under the circumstances.

59.    During the Compensation Period, and following numerous meet and confer conferences with counsel to the Debtors and the Sacklers regarding the Privilege Motions, the Debtors and the Sacklers agreed voluntarily to produce in full or reduce the number of redactions for more than 16,300 documents that were previously withheld and/or redacted as privileged.  In addition, the Committee and the Debtors were able to reach a consensual resolution of the Privilege Motions as to the Debtors that provided the Committee (on a common interest basis) access to many thousands of the Debtors' privileged documents throughout the relevant time period subject to investigation, both with regard to transfers and various communications by and among the Sacklers and other board members.  *See Notice of Agreement Between Debtors and Official Committee of Unsecured Creditors Regarding Privilege Motions and Adjournment of Hearing with Respect to Remaining Privilege Disputes as to the Sacklers*, dated November 6, 2020 [ECF No. 1908].

60.    Although the Committee was able to resolve the Privilege Motions with respect to the Debtors, its attempts to reach a consensual resolution with the Sacklers were not successful and thus Akin Gump professionals were required to address various issues related to the Privileges Motions and discovery related to the Committee's investigation in general.  In particular, Akin Gump professionals spent significant time during the Compensation Period preparing the Committee's reply briefs in support of the Privilege Motions, including carefully reviewing the Sacklers' objections to the Privilege Motions, the Debtor DOJ Settlement and Plea Agreement and the Sackler Settlement.  Akin Gump professionals also reviewed significant additional discovery on a rolling basis and supplemented the factual record for the Privilege Motions with more than

100 additional exhibits uncovered in the continued review of documents produced by the Debtors, the Sacklers and other parties, including documents produced by the Debtors pursuant to their agreement with the Committee regarding the Privilege Motions.

61.    After filing replies in support of the Privilege Motions,[31] Akin Gump professionals analyzed and researched issues raised in the sur-replies filed by the Sacklers in opposition to the Privilege Motions and the additional exhibits filed by the Sacklers in connection therewith.  *See The Raymond Sackler Family's Surreply in Further Support of Its Opposition to the Official Committee of Unsecured Creditors' Exceptions Motion*, dated December 9, 2020 [ECF No. 2093]; *Sur-reply Memorandum of Objection of Mortimer Sackler Initial Covered Sackler Persons to the Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and At Issue Exceptions to Claims of Privilege*, dated December 9, 2020 [ECF No. 2095].  Akin Gump professionals continued to negotiate with the Sacklers regarding disputed issues in an effort to narrow or resolve aspects of the Privilege Motions, while simultaneously devoting significant time to preparing for the hearing regarding the Privilege Motions.  As a result of these discussions, the Committee made significant progress narrowing disputed issues and (as noted above) agreed to adjourn the hearing on the Privilege Motions multiple times so that negotiations could continue. Despite these efforts, the dispute remains live, and Akin Gump professionals negotiated (and continue to negotiate) with the Sacklers regarding the Privilege Motions and how such motions would be presented when ultimately set for hearing.  *See, e.g., Notice of Adjournment of Hearing*

---

[31] *See Official Committee of Unsecured Creditors' Reply in Support of Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers to Demonstrate Documents Identified on Logs are Privileged*, dated November 18, 2020 [ECF No. 2013]; *Official Committee of Unsecured Creditors' Reply in Support of its Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and at Issue Exceptions to Claims of Privilege*, dated November 19, 2020 [ECF No. 2014].

*on Privilege Disputes*, dated January 19, 2021 [ECF No. 2291]; *Stipulation and Agreed Order Regarding Exhibits for Use at Hearing on Privileges Motions*, dated February 22, 2021 [ECF No. 2405].

62.     Additionally, this category includes time spent by Akin Gump professionals on behalf of the Committee in connection with second phase of the mediation regarding claims and causes of action that may be asserted by the Debtors' estates or creditors against members of the Sackler family and related individuals and entities (the "Shareholder Claims Mediation").  *See Order Expanding Scope of Mediation*, dated September 30, 2020 [ECF No. 1756].  During the Compensation Period, Akin Gump professionals and the Committee's other advisors worked to facilitate agreement between the Debtors and the various creditor groups, on the one hand, and the Sackler Families, on the other hand (collectively, the "Phase II Mediation Parties").  Specifically, these efforts included communicating with various creditor constituencies regarding the strengths and weaknesses of the Debtors' and creditors' claims against the Sacklers, preparing analyses and presentations addressing such claims and related issues, participating in other mediation sessions, reviewing and analyzing various mediation proposals and counterproposals, and participating in meetings and discussions with the Mediators, the Phase II Mediation Parties and various significant creditor constituencies regarding the progress of the Shareholder Claims Mediation and the impact of developments therein on the Chapter 11 Cases.  The Shareholder Claims Mediation continued throughout the Compensation Period.

63.     Finally, this category includes time spent by Akin Gump professionals working with counsel to the Debtors and the Sacklers in connection with the motion of Dow Jones & Co, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc. (the "Media Intervenors") to intervene in the Chapter 11 Cases to obtain an order unsealing all sealed and

redacted documents filed with the Bankruptcy Court, focusing specifically on documents related to the Privilege Motions. *See Motion to Intervene and Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.*, dated November 23, 2020 [ECF No. 2022] (the "Unsealing Motion"). Following the filing of the Unsealing Motion, Akin Gump professionals, on behalf of the Committee, wrote to the Debtors and the Sacklers and advised them that the Committee intended to seek the Court's permission to file on the public docket without redaction most of the materials the Committee filed in connection with the Privilege Motions, unless the Debtors and the Sacklers consented to such filings. Following this communication, Akin Gump professionals negotiated with counsel to the Debtors, the Sacklers, the Non-Consenting States, the IACs and the Media Intervenors and agreed to a largely consensual resolution of the Unsealing Motion that provided a procedure for reviewing and unredacting the briefing and exhibits to the Privileges Motions to the extent possible in an efficient and timely manner. During the last two months of the Compensation Period, the Debtors, the Sacklers and the IACs submitted proposed redactions to such materials in tranches, and Akin Gump professionals reviewed and analyzed such redactions in compliance with this procedure. To the extent the parties did not agree on any proposed redactions, Akin Gump professionals engaged in a meet and confer process with counsel to the Debtors, the Sacklers and the IACs to resolve their disputes. This negotiation process resulted in modifications to the initial proposed redactions that allowed more material to appear on the public docket. As a result of these efforts, less redacted or unredacted versions of most of the materials pertaining to the Privileges Motions have been filed on the public docket, and the issues raised by the Unsealing Motion were narrowed significantly. *See Stipulation and Agreed Order Regarding Media Intervenors' Motion to Unseal*

*Materials Filed in Connection With UCC Privileges Motions*, dated December 15, 2020 [ECF No. 2140]. [32]

## H.    Insurance Issues (Task Code 14)

| Total Hours | Fees |
|---|---|
| 204.5 | $221,606.00 |

64.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Committee's ongoing investigation into the scope, value and limitations of the Debtors' various insurance policies.  In particular, Akin Gump professionals continued performing comprehensive analyses regarding the potential availability of insurance coverage for opioid-related claims against the Debtors, including under the Debtors' directors and officers, general liability and products liability insurance policies.  In connection with the

---

[32]   Akin Gump professionals and paraprofessionals also spent time during the Compensation Period preparing the less redacted versions of the Committee's filings regarding the Privilege Motions. *See Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs are Privileged*, dated December 18, 2020 [ECF No. 2156]; *Official Committee of Unsecured Creditors' Notice of Filing of First Set of Unredacted or Partially Unredacted Exhibits to the Declaration of Mitchell Hurley Dated September 29, 2020*, dated December 18, 2020 [ECF No. 2161]; *Official Committee of Unsecured Creditors' Reply in Support of Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers to Demonstrate Documents Identified on Logs are Privileged*, dated December 18, 2020 [ECF No. 2163]; *Official Committee of Unsecured Creditors' Reply in Support of Its Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and At Issue Exceptions to Claims of Privilege*, dated December 18, 2020 [ECF No. 2164]; *Official Committee of Unsecured Creditors' Notice of Filing of First Set of Unredacted or Partially Redacted Exhibits to the Declaration of Arik Preis Dated November 18, 2020*, dated December 18, 2020 [ECF No. 2169]; *Official Committee of Unsecured Creditors' Notice of Filing of Second Set of Unredacted Exhibits to the Declaration of Mitchell Hurley Dated September 29, 2020*, dated December 21, 2020 [ECF No. 2178]; *Official Committee of Unsecured Creditors' Notice of Filing of Second Set of Unredacted Exhibits to the Declaration of Arik Preis Dated November 18, 2020*, dated December 21, 2020 [ECF No. 2179]; *Official Committee of Unsecured Creditors' Notice of Filing of Third Set of Unredacted Exhibits to the Declaration of Arik Preis Dated November 18, 2020*, January 11, 2021 [ECF No. 2248]; *Official Committee of Unsecured Creditors' Notice of Filing of Third Set of Unredacted or Partially Unredacted Exhibits to the Declaration of Mitchell Hurley Dated September 29, 2020*, January 12, 2021 [ECF No. 2250]; *Official Committee of Unsecured Creditors' Notice of Filing of Fourth Set of Partially Redacted Exhibits to the Declaration of Mitchell Hurley Dated September 29, 2020*, dated January 12, 2021 [ECF No. 2259]; *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and At Issue Exceptions to Claims of Privilege*, dated January 12, 2021 [ECF No. 2260]; *Official Committee of Unsecured Creditors' Notice of Filing of Fourth Set of Partially Redacted Exhibits to the Declaration of Arik Preis Dated November 18, 2020*, dated January 12, 2021 [ECF No. 2261]; *Official Committee of Unsecured Creditors' Notice of Filing of Fifth Set of Unredacted Exhibits to the Declaration of Arik Preis Dated November 18, 2020*, January 21, 2021 [ECF No. 2317].

foregoing, Akin Gump professionals reviewed thousands of pages of insurance-related documents produced by the Debtors, the Debtors' insurance brokers, and other parties in interest.

65.     In addition, this category includes time spent by Akin Gump professionals in connection with the *Motion of the Debtors for an Order Approving Stipulation and Agreed Order Granting Joint Standing to Prosecute Claims and Causes of Action Related to the Debtors' Insurance Coverage to (1) the Official Committee of Unsecured Creditors and (2) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*, dated January 6, 2021 [ECF No. 2227] (the "Insurance Stipulation Motion"), which sought entry of an order granting joint standing to the Committee, the CAHC and the Debtors to assert, as co-plaintiffs, claims related to the Debtors' insurance assets, subject to the terms of an agreed-upon stipulation (the "Insurance Stipulation").  In an effort to avoid duplication of efforts, Akin Gump professionals coordinated closely with the Debtors and the CAHC during the Compensation Period regarding the terms of the Insurance Stipulation and discussed issues and strategy related thereto with such parties as well as the Committee and other creditor constituencies.  Akin Gump professionals also analyzed and conducted research regarding the issues raised in the objection to the Insurance Stipulation Motion filed by Ironshore Specialty Insurance Company ("TIG"),[33] including TIG's renewed request that the Court grant its previously-filed motion for relief from the automatic stay.[34] Thereafter, Akin Gump professionals coordinated with the advisors to the Debtors and the CAHC regarding the drafting of the *Debtors' Reply in Support of the Motion for an Order Approving Stipulation Granting Joint Standing to Prosecute Claims and Causes of Action Related to the Debtors' Insurance Coverage to (1) the Official Committee of Unsecured Creditors and (2) the Ad*

---

[33] *See The Ironshore Specialty Insurance Company's, Formerly Known as TIG Specialty Insurance Company, Objection to Debtors' Motion for an Order Approving Stipulation*, dated January 15, 2021[ECF No. 2281].

[34] *See Motion for Relief from Automatic Stay*, dated December 30, 2019 [ECF No. 712].

*Hoc Committee of Governmental and Other Contingent Litigation Claimants*, dated January 19, 2021 [ECF No. 2292], and prepared to participate in a contested hearing on the Insurance Stipulation Motion.  Following oral argument at the January 20, 2021 hearing, the Court approved the Insurance Stipulation[35] and TIG agreed to adjourn its request for relief from the automatic stay.

66.    Finally, this category includes time spent by Akin Gump professionals related to preparing an adversary complaint against the Debtors' liability insurers.  *See Avrio Health L.P. et al. v. AIG Specialty Insurance Company (f/k/a American International Specialty Lines Insurance Company)* [Adv. Pro. No. 21-07005, ECF No. 1] (the "Insurance Adversary Complaint").  Again, Akin Gump professionals worked closely with the advisors to the Debtors and the CAHC to prepare the Insurance Adversary complaint, including reviewing the Debtors' insurance-related materials and researching issues related thereto, and continued to analyze strategy in connection with settlement negotiations with the Debtors' various insurers.

**L.    Adversary Proceedings (Task Code 17)**

| Total Hours | Fees |
|---|---|
| 78.9 | $87,858.50 |

67.    This category includes time spent by Akin Gump professionals in connection with the *Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction, dated October 11, 2019* [Adv. Pro. No. 19-08289, ECF No. 82] (as amended, the "Preliminary Injunction"), which stayed all litigation against the Debtors, the Sacklers and certain related parties for an initial period of 180 days and was subsequently extended.  *See, e.g., Thirteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated October 1, 2020 [Adv. Pro. No. 19-08289, ECF No. 208].  During the Compensation Period, the Debtors

---

[35] *See Stipulation and Agreed Order Granting Joint Standing to Prosecute Claims and Causes of Action Related to the Debtors' Insurance Coverage to (1) the Official Committee of Unsecured Creditors, and (2) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*, dated January 20, 2021 [ECF No. 2305].

raised with the Committee and certain other key creditor constituencies the prospect of a further,

limited extension of the Preliminary Injunction to allow for, among other things, continued

discussions with the Sacklers and regarding various issues related to a potential chapter 11 plan.

Accordingly, Akin Gump professionals communicated with the Committee and the advisors to the

Debtors and key creditor constituencies regarding various considerations related to the Chapter 11

Cases to determine whether and to what extent such an extension was warranted by the facts and

circumstances of the cases.  Following such discussions, the Committee ultimately determined to

support an extension of the Preliminary Injunction through and including March 24, 2021, which

the Debtors sought and obtained following the conclusion of the Compensation Period.  *See*

*Fifteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary*

*Injunction*, dated March 1, 2021 [Adv. Pro. No. 19-08289, ECF No. 224].

68.    This category also includes time spent by Akin Gump professionals in connection

with the *Notice by the Sackler Families of Settlement with the United States Department of Justice*

*and Motion to Confirm that Payment by the Sackler Families Under Settlement with the United*

*States Department of Justice Is Not Prohibited by this Court*, dated October 22, 2020 [ECF No.

1833] (the "Sackler Settlement Motion").  Specifically, Akin Gump professionals, along with the

Committee's other advisors, analyzed the terms of the Sackler Settlement Motion and

communicated with the Committee and the advisors to the Debtors and other key creditor

constituencies, including the Non-Consenting States, regarding its potential impact on other

important case issues.

69.    Following such discussions and analyses, Akin Gump professionals prepared and

filed the *Statement Regarding and Limited Objection to Notice by the Sackler Families of*

*Settlement with the United States Department of Justice and Motion to Confirm that Payment by*

*the Sackler Families Under Settlement with the Department of Justice Is Not Prohibited by This Court*, dated October 27, 2020 [ECF No. 1856] (the "Joint Sackler Settlement Objection"), on behalf of the Committee and the Non-Consenting States.  The Joint Sackler Settlement Objection expressed certain concerns regarding the Sackler DOJ Settlement shared by the Committee and the Non-Consenting States, and requested that any order approving the Sackler Settlement Motion include language: (i) ensuring that the Sacklers be prohibited from satisfying their obligations under the Sackler DOJ Settlement using funds that were transferred directly or indirectly by the Debtors; (ii) explicitly stating that the Court was not approving any provision of the Sackler DOJ Settlement as a matter of law; and (iii) confirming that any order approving the Sackler DOJ Settlement had no effect on the disposition of the Debtor DOJ Settlement Motion.

70.    Thereafter, Akin Gump and counsel for the Non-Consenting States continued discussions with counsel for the Sacklers regarding the Sackler DOJ Settlement Motion. Ultimately, these efforts resulted in agreed upon terms to include in the form of order approving the Sackler DOJ Settlement provisions addressing each of the three concerns raised in the Joint Sackler Settlement Objection.  The Court entered this agreed order on November 18, 2020.  *See Order Confirming That Payment by the Sackler Families Under Settlement with the United States Department of Justice Is Not Prohibited by This Court's Preliminary Injunction* [ECF No. 2003].

I.    **Tax Issues (Task Code 18)**

| Total Hours | Fees |
|:---:|:---:|
| 236.1 | $228,234.50 |

71.    This category includes time spent by Akin Gump professionals reviewing and analyzing various tax issues affecting unsecured creditors.  Specifically, Akin Gump tax professionals devoted significant effort during the Compensation Period to, among other things: (i) ongoing diligence regarding prior U.S. federal and state tax returns (including such documents

as provided by non-Debtors), distributions, tax distributions and withholdings; (ii) participating in discussions related to, and evaluating, potential tax consequences of distributions to the Debtors' direct and indirect shareholders; (iii) researching, analyzing and advising on potential tax consequences for the Debtors, IACs, other affiliated entities and various creditors; and (iv) researching and analyzing potential tax consequences of certain prior transactions and related tax filings and reporting by the Debtors or their direct and indirect owners.

72.    The foregoing tasks required extensive review and analysis of significant tax diligence related to the IACs, the Debtors and other affiliated entities.  In light of the unusual structure of many of the Sacklers' assets and holdings and the wide scope and variety of prepetition distributions made by the Debtors, Akin Gump professionals were required to spend significant time conducting legal research and analysis concerning these and other complex tax-related issues, and communicated regularly with the Committee's other professionals and with the advisors to the Debtors and other interested parties regarding such issues.  Finally, this category includes time spent by Akin Gump professionals analyzing discovery materials related to taxes, identifying missing information and priority requests and assisting with, drafting and revising correspondence and requests related to tax-related issues.

**J.    Labor Issues/Employee Benefits (Task Code 19)**

| Total Hours | Fees |
|---|---|
| 23.2 | $31,430.00 |

73.    This category includes time spent by Akin Gump professionals in connection with labor and employee benefit issues arising in the Chapter 11 Cases.  During the Compensation Period, Akin Gump's efforts in this category related primarily to the *Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan*, dated September 9, 2020 [ECF No. 1674] (the "Bonuses Motion").  Pursuant to

the Bonuses Motion, the Debtors sought approval of, among other things: (i) a Key Employee Incentive Plan (the "<u>KEIP</u>") that proposed to pay a total of $16 million to certain of the Debtors' insiders over a period of three years; and (ii) a Key Employee Retention Plan (the "<u>KERP</u>" and, together with the KEIP, the "<u>Bonus Plans</u>") that proposed to pay a total of $51 million to the Debtors' non-insider employees over the same period.

74.    At the beginning of the Compensation Period, the Court entered an order approving the KERP, subject to certain modifications negotiated by the Committee, and adjourning the hearing on the KEIP to October 28, 2020. *See Order Authorizing the Debtors to Implement a Key Employee Retention Plan*, dated October 1, 2020 [ECF No. 1762]. Thereafter, Akin Gump professionals worked with the Committee's other professionals and the advisors to the Debtors and the Non-Consenting States regarding outstanding issues related to the KEIP, including in particular, issues regarding the timing and economics of bonuses to be paid under the KEIP to certain insiders. Following extensive discussions, the parties ultimately agreed to modify certain provisions of the KEIP as they pertained to four of the Debtors' insiders, including: (i) a total reduction in bonus payouts of $395,382.00; (ii) a delayed payment schedule; and (iii) and inclusion of a provision making payments authorized under the KEIP subject to clawback in the event any recipient is determined to have been involved in misconduct. *See Order Authorizing the Debtors to Implement a Key Employee Incentive Plan*, dated October 28, 2020 [ECF No. 1861]. The parties also agreed to adjourn the hearing on the KEIP as to the Debtors' Chief Financial Officer, Jonathan Lowne, and Chief Executive Officer, Craig Landau, while the parties continued to work towards agreement on their participation in the KEIP.

75.    Ultimately, following further negotiations, the parties agreed to modifications for Mr. Lowne and Mr. Landau similar to those agreed upon as to the other KEIP participants, as well

as a further reduction of the aggregate amount of compensation to be paid under the KEIP.  The

Court entered an order reflecting these modifications on November 18, 2020.  *See Supplemental

Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [ECF No. 2002].

**K.    Interaction/Review of Other Opioid Companies and Cases (Task Code 20)**

| Total Hours | Fees |
|:---:|:---:|
| 153.8 | $95,619.00 |

76.     This category includes time spent by Akin Gump professionals reviewing and

analyzing developments in other opioid litigation pending throughout the country, including

reports in news articles and academic publications, to assess the potential impact of such matters

on the positions of the various parties in interest in the Chapter 11 Cases.  Given the wide-ranging

nature of the opioid crisis and the numerous repeat players involved in litigation and/or settlement

discussions with multiple defendants in numerous jurisdictions and throughout the country,

tracking and ensuring that the Committee remains informed with respect to such developments has

been critical to the Committee's advisors' ability to assess issues of vital importance to these cases,

including assessment of the various litigation claims against the Debtors and issues related to

intercreditor allocations (including the Allocation Mediation) and potential settlement structures.

**L.    Exclusivity (Task Code 21)**

| Total Hours | Fees |
|:---:|:---:|
| 4.1 | $2,785.50 |

77.     This category includes time spent by Akin Gump professionals in connection with

the Debtors' third request to extend their exclusivity periods.  During the Compensation Period,

the Debtors filed the *Motion of Debtors for Entry of a Third Order Extending the Exclusive Periods

Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof*, dated December 1, 2020

[ECF No. 2045] (the "Exclusivity Motion"), which sought (i) a 67-day extension of the Debtors'

exclusive period within which to file a chapter 11 plan of and (ii) a 98-day extension of the Debtors'

exclusive period within which to solicit acceptances of a chapter 11 plan. Akin Gump professionals reviewed the Exclusivity Motion, analyzed the implications of the relief sought for the Chapter 11 Cases and discussed relevant considerations with Committee. Following these deliberations, the Committee determined not to oppose the Exclusivity Motion, and the Court entered an order granting the Exclusivity Motion on December 16, 2020. *See Third Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 2143].

**M.      Disclosure Statement/Solicitation/Plan/Confirmation (Task Code 22)**

| Total Hours | Fees |
|:---:|:---:|
| 383.6 | $414,206.50 |

78.      This category includes time spent by Akin Gump professionals researching and analyzing numerous complex issues that may arise in connection with the formulation of a chapter 11 plan in these cases. Specifically, during the Compensation Period, Akin Gump professionals conducted research regarding the structures and mechanisms included in chapter 11 plans approved in prior bankruptcy cases and analyzed issues relating to the potential applicability of such structures to the Debtors' unprecedented situation. Akin Gump professionals also: (i) reviewed various presentation materials and term sheets prepared by the Debtors regarding the anticipated structure of the reorganized Debtors and the potential terms of a chapter 11 plan; (ii) analyzed and discussed issues related thereto with the Committee's other advisors; and (iii) prepared presentations and analyses for the Committee regarding the foregoing. Further, Akin Gump professionals conducted extensive research, prepared analyses and engaged in communications with the advisors to the Debtors and other key constituencies regarding numerous plan-related issues, including the mechanisms that may be required or appropriate to implement the settlements

reached in the Allocation Mediation (including various strategic alternatives in connection with the same) and any resolution in the Shareholder Claims Mediation.

79.    Finally, this category includes time spent by Akin Gump professionals in connection with the efforts of a third party (the "Interested Party") that contacted the Debtors on an unsolicited basis and submitted a non-binding proposal to acquire substantially all of the Debtors' operating assets during the Compensation Period.  Akin Gump professionals, together with  the Committee's other advisors, conducted diligence and prepared analyses with respect to the Interested Party's proposal and communicated with the Committee and the advisors to the Debtors and other key constituencies regarding issues related to the proposal.

**N.    Business Operations (Task Code 31)**

| Total Hours | Fees |
|:---:|:---:|
| 29.4 | $29,346.50 |

80.    This category includes time spent by Akin Gump professionals in connection with the efforts of (then) former United States Secretary of Agriculture Tom Vilsack, who was appointed by the Court as monitor (the "Monitor") to oversee the Debtors' compliance with their obligations under the voluntary self-injunction.  *See Seventh Amended Order Pursuant to 11 U.S.C. 105(a) Granting Motion for a Preliminary Injunction*, dated March 4, 2020 [Adv. Pro. No. 19-08289, ECF No. 143] at 7 and App'x 1.  During the Compensation Period, Akin Gump professionals reviewed the findings detailed in the *Third Monitor Report*, dated November 16, 2020 [ECF No. 1956] (the "Monitor's Report") and discussed the Monitor's Report in detail with the Committee.  Further, during the Compensation Period, President Biden nominated Secretary Vilsack to serve again as the United States Secretary of Agriculture, which required his resignation as the Monitor.  Thus, Akin Gump professionals, in coordination with the Committee and other key creditor constituencies, began discussions regarding a replacement for Secretary Vilsack.

81.    In addition, this category includes time spent by Akin Gump professionals in connection with the Debtors' obligations, pursuant to regulations promulgated by the Food and Drug Administration (the "FDA"), to report serious and unexpected adverse events related to their products.  During the Compensation Period, Akin Gump professionals became aware that certain personal injury claimants that filed proofs of claim in the Chapter 11 Cases were subsequently contacted by the Debtors as a result of the Debtors' obligations under FDA regulations to investigate adverse events and report additional information related to such events to the FDA. This resulted in confusion among numerous personal injury claimants regarding whether such outreach related to their claims in the Chapter 11 Cases.  To address this issue, Akin Gump professionals worked with the Debtors and their regulatory counsel to prepare letters to such claimants that explained that the Debtors' adverse event reporting communications did not pertain to claims filed in the Chapter 11 Cases, and that no further action from claimants in response to such letters was required.

**O.    Intellectual Property (Task Code 32)**

| Total Hours | Fees |
|:---:|:---:|
| 110.2 | $117,442.00 |

82.    This task code includes time spent by Akin Gump professionals and paraprofessionals in connection with analyzing the Debtors' patents and patent applications, intellectual property license and ancillary agreements, intercompany intellectual property arrangements and related intellectual property issues, and supporting work streams in other categories that involved the Debtors' intellectual property.  Specifically, during the Compensation Period, Akin Gump professionals performed diligence and investigated numerous intellectual property issues, including, among other things:  (i) issues related to patent history, prosecution, and expiration; (ii) product exclusivity and expiration of patent coverage for the Debtors' products;

(iii) ongoing, former and potential patent litigation (in particular patent infringement litigation and proceedings before the United States Patent and Trademark Office); and (iv) patent licenses and ancillary agreements covering the Debtors' past and current product offerings.  As the proposed Settlement Framework contemplates ongoing operations based on future expected revenues derived from current and pipeline products, the Committee's intellectual property analysis has encompassed ongoing discussions with the Debtors and their advisors regarding the Debtors' businesses and operations regarding those products, analyses of the proposed value of the Debtors' and the IACs' patents and the Debtors' patent portfolio.  In addition, Akin Gump professionals analyzed the Debtors' license agreements with the IACs, as well as the IACs' intellectual property and licenses, in connection with the Committee's continued evaluation of potential estate causes of action and the Settlement Framework.

**P.      Sackler Rule 2004 Discovery (Task Code 33)**

| Total Hours | Fees |
|:---:|:---:|
| 259.0 | $268,803.50 |

83.    This category includes time spent by Akin Gump professionals obtaining compulsory discovery from certain parties pursuant to certain discovery orders under  Bankruptcy Rule 2004.  See *Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties*, dated March 27, 2020 [ECF No. 992]; *Order Pursuant to Federal Rules of Bankruptcy 2004 and 9016 Authorizing Examinations of and Document Production by Third Parties*, dated July 6, 2020 [ECF No. 1340]; *Order Pursuant to Federal Rules of Bankruptcy 2004 and 9016 Authorizing Examinations of Third Parties*, dated August 26, 2020 [ECF No. 1622] (collectively, the "Rule 2004 Orders"); *Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Certain Former Debtor Executives, Separately Represented Debtor Personnel, and Norton Rose Fulbright Pursuant to*

*Federal Rules of Bankruptcy Procedure 2004 and 9006*, dated October 8, 2020 [ECF No. 1788].

As noted, the Committee determined that it was necessary for its investigation of potential estate

causes of action against the Debtors' beneficial owners and others to seek compulsory discovery

from certain parties, and thus sought and obtained authorization through the Rule 2004 Orders to

seek such discovery.    During the Compensation Period, Akin Gump professionals spent time

drafting document request subpoenas to be served pursuant to the Rule 2004 Orders, meeting and

conferring with counsel regarding such subpoenas, drafting and responding to correspondence

concerning such subpoenas and negotiating and drafting stipulations to govern the production of

documents and privilege logs called for by the subpoenas.  *See, e.g., Stipulation and Agreed Order*

*Regarding Production of Documents and Privilege Logs Concerning Materials in the Immediate*

*Possession of Norton Rose Fulbright LLP*, dated January 14, 2021 [ECF No. 2276].

## ACTUAL AND NECESSARY DISBURSEMENTS

84.    Akin Gump seeks allowance of reimbursement in the amount of $1,657,026.74 for

expenses incurred during the Compensation Period in the course of providing professional services

to the Committee.  Akin Gump's disbursement policies pass through all out of pocket expenses at

actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example,

as it relates to computerized research, Akin Gump believes that it does not make a profit on that

service as a whole although the cost of any particular search is difficult to ascertain.   Other

reimbursable expenses (whether the service is performed by Akin Gump in-house or through a

third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries,

court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## **FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

85.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of,
> or beneficial at the time at which the service was rendered
> toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and
>
> (E) with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and
> experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonably based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

86.     The clear congressional intent and policy expressed in Bankruptcy Code section

330 is to provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R.

13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court,

establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal

specialists."); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994)

("Congress rather clearly intended to provide sufficient economic incentive to lure competent

bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotation

marks omitted).

87.    In assessing the "reasonableness" of the fees requested, the Second Circuit has

stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*,

while also incorporating the "lodestar method."  *See Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007)

(citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other*

*grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The "lodestar method" of

calculating the reasonable fee contemplates "the number of hours reasonably expended . . .

multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983);

*Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A*., 130 S.Ct. 1662, 1672 (2010);

*In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991).  The factors set

forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298–99 (5th Cir. 1977)

have been adopted by most courts.[36]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y.

1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212–

13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir.

2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King

ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered

in determining a reasonable allowance of compensation").

88.    Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

     a.    <u>Time and Labor Required</u>.  Akin Gump billed a total of $16,782,925.50 hours
of professional services and $917,408.50 hours of paraprofessional and other
non-legal services during the Compensation Period.  As evidenced by this
Application, Akin Gump professionals and paraprofessionals worked diligently

---

[36] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,*
with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress.  *See*
*Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398,
1403 (11th Cir. 1997).

and efficiently without unnecessary duplication of efforts throughout the Compensation Period. This is especially clear when considering the nature and complexity of the issues that arose in the Chapter 11 Cases during the Compensation Period. In particular, the Compensation Period involved many material motions and issues that required a favorable resolution for the Debtors' estates and unsecured creditors, including, among other things, the Supplemental Fees Motion, the Debtor DOJ Settlement Motion, the Sackler Settlement Motion, the Privilege Motions, the Insurance Stipulation Motion, the Bonuses Motion, the Exclusivity Motion, the Shareholder Claims Mediation and various matters related to discovery of the Debtors, the Sacklers, the IACs and other parties in connection with the Committee's analysis of estate causes of action and the Settlement Framework. Akin Gump's representation of the Committee has required it to balance the need to provide quality services with the need to act quickly and represent the Committee in an effective, efficient and timely manner. Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant—and often urgent—legal and business issues raised and the numerous pleadings filed in the Chapter 11 Cases.

b. <u>Novelty and Difficulty of the Questions</u>. Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, corporate, tax, trusts and estates, insurance and other issues. As further described herein, Akin Gump's teams of skilled practitioners assisted the Committee in analyzing, among other things, novel and/or difficult questions in connection with, among other things, the Privilege Motions, the Insurance Stipulation Motion, the DOJ Settlement Motion, the Sackler DOJ Settlement Motion the Shareholder Claims Mediation, potential estate claims, insurance issues and various issues relating to an eventual chapter 11 plan.

c. <u>Skill Requisite to Perform the Legal Services Properly</u>. Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of complex issues has contributed to the administration of the Chapter 11 Cases and benefited the Debtors and the Committee. Due to the nature and complexity of the legal issues presented by the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax, labor and corporate transaction matters. Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d. <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive

action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e. <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters.   Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required.  The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here.  Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f. <u>Whether the Fee Is Fixed or Contingent</u>.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Committee in the Chapter 11 Cases.

g. <u>Time Limitations Imposed by the Client or Other Circumstances</u>.  As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines.  For example, Akin Gump and the Committee's other advisors were faced with limited time in which to formulate an approach to numerous key case issues, including, among others, various discovery matters and the Privileges Motions, the Class Claim Motions and the Bonuses Motion, while simultaneously pursuing consensual modifications to or resolutions of such matters.  The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h. <u>Amount Involved and Results Obtained</u>.   Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in preserving potential sources of recovery for the benefit of unsecured creditors.   In particular, Akin Gump's efforts in connection with, among other things, the Class Claim Motions and the Bonuses Motion have been instrumental in preserving value for the benefit of all creditor constituencies.  Akin Gump submits that the fees requested in this Application are reasonable and

appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.  <u>Experience, Reputation and Ability of Attorneys</u>.   Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Compensation Period, Akin Gump solicited the skill and expertise of its professionals and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump professionals have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Sears Holdings Corp., In re Insys Therapeutics, Inc., In re PG&E Corp., In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc., In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC*, *In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp*. and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.  <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

k.  <u>Nature and Length of Professional Relationship</u>.  Akin Gump has been rendering professional services to the Committee since it was selected as counsel to the Committee on September 26, 2019.

89.     For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Committee and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation

charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

90.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

### ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

91.    The following is provided in response to the request for additional information set forth in ¶ C.5 of the U.S. Trustee Guidelines.

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:    No.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    Not applicable.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:    Yes.  During the Compensation Period, 199.5 hours and $151,641.50 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:    See above.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Akin Gump disclosed to the Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2020 in the Akin Retention Application, which the Committee agreed to.  On December 17, 2020, Akin Gump filed a notice disclosing to the Committee and other parties in interest that its hourly rates would be adjusted, in accordance with its customary practice, effective as of January 1, 2021.  *See Fourth Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP, Nunc Pro Tunc, to September 26, 2019*, dated December 17, 2020 [ECF No. 2151].

## RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

*[Remainder of Page Left Blank Intentionally]*

## <u>CONCLUSION</u>

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $17,682,961.00 and expense reimbursement in the amount of $1,657,026.74; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
       March 17, 2021

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Arik Preis*
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al.*

## **EXHIBIT A**

**CERTIFICATION OF ARIK PREIS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

### CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE FOURTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF OCTOBER 1, 2020 THROUGH AND INCLUDING JANUARY 31, 2021

I, Arik Preis, hereby certify that:

1.     I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of the above captioned Debtors.  Akin Gump is counsel to Official Committee of Unsecured Creditors of Purdue Pharma, L.P. and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2.     In accordance with the Fee Guidelines, this certification is made with respect to the Application for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.     In respect of section B.1 of the Local Guidelines, I certify that:

a.     I have read the Application;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

b.  to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

c.  the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

d.  in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.  In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.  In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Committee are each being provided with a copy of the Application.

Dated: New York, New York            By: */s/ Arik Preis*            
      March 17, 2021                      Arik Preis

## **EXHIBIT B**

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by Non-FR Timekeepers for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,077.56 | $1,334.83 |
| Senior Counsel & Counsel | $840.37 | $952.94 |
| Associate | $618.78 | $665.42 |
| Paraprofessional | $255.53 | $341.53 |
| Others | $507.57 | $400.39 |
| **All Timekeepers Aggregated** | **$804.19** | **$860.01** |

---

[1] Consistent with U.S. Trustee Guidelines, this column discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., Dallas, New York and Washington, D.C.), segre-gated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group. This data is based on information from a rolling 12-month period ending January 31, 2021.

## **EXHIBIT C**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Partner | Department | Year of Admission | 2020 Rate | 2021 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,225.00 | $1,265.00 | 513.7 | $634,098.50 |
| Paul Butler | Litigation | 1991 | $1,175.00 | N/A | 60.9 | $71,557.50 |
| Ashley Crawford | Litigation | 2003 | $1,075.00 | N/A | 255.3 | $274,447.50 |
| Olivier De Moor | Tax | 2009 | $1,175.00 | N/A | 25.6 | $30,080.00 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,595.00 | $1,655.00 | 21.9 | $35,128.50 |
| Shawn Hanson | Litigation | 1983 | $1,135.00 | $1,195.00 | 24.6 | $28,833.00 |
| Mitchell Hurley | Litigation | 1997 | $1,595.00 | $1,655.00 | 896.9 | $1,442,357.50 |
| Howard Jacobson | Tax | 1979 | $1,240.00 | $1,310.00 | 21 | $26,411.00 |
| Stephen Kho | International Trade | 1998 | $1,135.00 | $1,330.00 | 44.7 | $52,645.50 |
| Jeffrey Kochian | Corporate | 2000 | $1,360.00 | $1,450.00 | 18.7 | $25,954.00 |
| Eli Miller | Corporate | 2009 | $1,075.00 | $1,135.00 | 59 | $64,679.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,595.00 | $1,655.00 | 544.2 | $877,641.00 |
| Steven Ross | Litigation | 1976 | $1,300.00 | N/A | 5.7 | $7,410.00 |
| Corey Roush | Litigation | 1997 | $1,135.00 | N/A | 156.5 | $177,627.50 |
| Robert Salcido | Health | 1989 | $1,155.00 | N/A | 16.3 | $18,826.50 |
| Elizabeth Scott | Litigation | 2007 | $1,075.00 | $1,135.00 | 740.4 | $805,788.00 |
| Joseph Sorkin | Litigation | 2008 | $1,350.00 | $1,425.00 | 485.1 | $659,775.00 |
| David Vondle | Intellectual Property | 2002 | $1,115.00 | $1,175.00 | 79.4 | $90,415.00 |
| Scott Welkis | Corporate | 1997 | N/A | $1,450.00 | 15.8 | $22,910.00 |
| Justin Williams | Litigation | 1993 | $1,335.00 | N/A | 6.9 | $9,211.50 |
| Jacqueline Yecies | Litigation | 2009 | $1,115.00 | $1,175.00 | 125.5 | $141,180.50 |
| **Partner Total:** | | | | | **4,118.10** | **$5,496,977.00** |

| Senior Counsel & Counsel | Department | Year of Admission | 2020 Rate | 2021 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Christin Carey | Public Law & Policy | 2012 | $885.00 | $960.00 | 544.1 | $488,398.50 |
| Sharon Davidov | Tax | 2013 | $1,010.00 | $1,065.00 | 135.4 | $138,470.00 |
| Eugene Elder | Health | 1990 | $975.00 | | 151.1 | $147,322.50 |
| Melissa Gibson | Intellectual Property | 2010 | $950.00 | $1,005.00 | 447.7 | $430,787.50 |
| Elizabeth Harris | Tax | 1987 | $1,065.00 | $1,125.00 | 387.5 | $415,921.50 |
| Matthew Hartman | Intellectual Property | 2010 | $930.00 | N/A | 199.9 | $185,907.00 |
| Jeffrey Kane | Litigation | 2015 | $850.00 | N/A | 235.8 | $200,430.00 |
| Kristi Kirksey | Tax | 2014 | $985.00 | N/A | 96.3 | $94,855.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Edan Lisovicz | Financial Restructuring | 2013 | $975.00 | $1,045.00 | 328.5 | $324,536.50 |
| Matthew Lloyd | Litigation | 2012 | $910.00 | $980.00 | 394.2 | $361,928.00 |
| Clayton Matheson | Litigation | 2010 | $950.00 | | 48.7 | $46,265.00 |
| Brennan Meier | Litigation | 2012 | $910.00 | $980.00 | 445.4 | $410,333.00 |
| Erin Parlar | Litigation | 2015 | $925.00 | $1,005.00 | 443.6 | $417,234.00 |
| Heather Peckham | Litigation | 2000 | $935.00 | $990.00 | 358.1 | $335,192.00 |
| Nicholas Petree | Litigation | 2012 | $910.00 | $980.00 | 190.1 | $175,721.00 |
| Katherine Porter | Litigation | 2011 | $1,025.00 | $1,145.00 | 678 | $711,378.00 |
| Ali Rabbani | Litigation | 2007 | $965.00 | N/A | 8.1 | $7,816.50 |
| Jillie Richards | Litigation | 2007 | $850.00 | $935.00 | 342.1 | $292,017.50 |
| Peretz Riesenberg | Tax | 2016 | $920.00 | N/A | 34.9 | $32,108.00 |
| J. Matthew Schmitten | Litigation | 2020 | $850.00 | N/A | 34 | $28,900.00 |
| Sophie Shih-Yu Chu | Corporate | 2007 | $1,025.00 | N/A | 132 | $135,300.00 |
| Jonathan Underwood | Intellectual Property | 2014 | $850.00 | $935.00 | 107.1 | $95,072.50 |
| Jessica Weisel | Litigation | 1995 | $965.00 | N/A | 57.4 | $55,391.00 |
| Melissa Whitaker | Litigation | 2015 | $850.00 | N/A | 11.4 | $9,690.00 |
| Molly Whitman | Litigation | 2013 | $885.00 | $960.00 | 380.8 | $343,945.50 |
| Richard R. Williams, Jr. | Litigation | 2014 | $960.00 | $1,030.00 | 403.3 | $389,800.00 |
| Dennis Windscheffel | Litigation | 2004 | $965.00 | $1,020.00 | 317.9 | $312,169.00 |
| **Senior Counsel & Counsel Total:** | | | | | **6,913.40** | **$6,586,890.00** |

| **Associate** | **Department** | **Year of Admission** | **2020 Rate** | **2021 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|---|
| Sudhana Bajracharya | Health | 2018 | $650.00 | $785.00 | 242.6 | $164,980.00 |
| Brooks Barker | Financial Restructuring | 2018 | $775.00 | $895.00 | 132.6 | $104,601.00 |
| Megi Belegu | Litigation | 2020 | $565.00 | $695.00 | 544 | $330,344.00 |
| Fatima Bishtawi | Litigation | Not yet admitted | $565.00 | N/A | 96.5 | $54,522.50 |
| Patrick Benedetto | Corporate | 2019 | $535.00 | N/A | 11.4 | $6,099.00 |
| Nafisa Bringe | Litigation | 2016 | $735.00 | N/A | 21.2 | $15,582.00 |
| Marc Caplan | Tax | 2019 | $675.00 | N/A | 32.9 | $22,207.50 |
| Alan Carrillo | Financial Restructuring | 2018 | $615.00 | $735.00 | 82.3 | $52,714.50 |
| Jess Coleman | Financial Restructuring | 2020 | $615.00 | $735.00 | 231.1 | $148,522.50 |
| Shane Copelin | Corporate | 2018 | $575.00 | N/A | 84.7 | $48,702.50 |
| Travis Earp | Corporate | 2018 | $575.00 | N/A | 28.8 | $16,560.00 |
| Alyx Eva | Litigation | 2019 | $535.00 | N/A | 23.4 | $12,519.00 |

| Alexander France | Corporate | 2019 | $535.00 | N/A | 193 | $103,255.00 |
|---|---|---|---|---|---|---|
| Jason Gangwer | Litigation | 2017 | $650.00 | $785.00 | 297.7 | $198,095.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $615.00 | $735.00 | 86.4 | $55,536.00 |
| Lisa Garrett | Corporate | 2017 | $650.00 | $785.00 | 158.9 | $105,512.50 |
| Patrick Glackin | Litigation | 2019 | $650.00 | $770.00 | 412.4 | $275,704.00 |
| Nina Goepfert | Litigation | 2018 | $725.00 | $855.00 | 72.5 | $55,110.50 |
| Clark Gordon | Intellectual Property | 2016 | $735.00 | $870.00 | 40.3 | $30,970.50 |
| Christina Hightower | Litigation | 2017 | $650.00 | $785.00 | 245.1 | $168,130.50 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $535.00 | $650.00 | 151 | $81,498.00 |
| Jay Jamooji | Litigation | 2019 | $565.00 | $695.00 | 114.2 | $66,954.00 |
| Srishti Kalro | Litigation | 2016 | $810.00 | $940.00 | 362.6 | $305,055.00 |
| Rachel Kurzweil | Health | 2017 | $735.00 | $870.00 | 87.7 | $66,498.00 |
| Caitlin Locurto | Corporate | 2017 | $810.00 | N/A | 12.8 | $10,368.00 |
| Amanda Lowe | Litigation | 2018 | $650.00 | N/A | 28.3 | $18,395.00 |
| Joseph Lumley | Corporate | 2020 | N/A | $855.00 | 13.9 | $11,884.50 |
| Shanna Miles | Litigation | 2017 | $810.00 | N/A | 8.8 | $7,128.00 |
| McKenzie Miller | Litigation | 2020 | $535.00 | $625.00 | 657.4 | $368,206.00 |
| Mouna Moussaoui | Litigation | 2018 | $650.00 | $770.00 | 185.5 | $124,319.00 |
| Rebecca Ney | Corporate | 2019 | $650.00 | N/A | 90.7 | $58,955.00 |
| Oluwaremilekun Ojurongbe | Litigation | 2020 | $535.00 | N/A | 7.2 | $3,852.00 |
| Jennifer Poon | Litigation | 2016 | $810.00 | $940.00 | 324.7 | $273,511.00 |
| Peretz Riesenberg | Tax | 2016 | $920.00 | N/A | 7.6 | $5,586.00 |
| Julia Rinker | Corporate | 2020 | $565.00 | N/A | 75.2 | $42,488.00 |
| Sina Safvati | Litigation | 2016 | $735.00 | N/A | 90 | $66,150.00 |
| Sangita Sahasranaman | Tax | 2020 | $675.00 | N/A | 14.7 | $9,922.50 |
| James Salwen | Financial Restructuring | 2017 | $775.00 | $895.00 | 299.7 | $245,731.50 |
| Anthony Sierra | Intellectual Property | 2019 | $535.00 | $625.00 | 315.8 | $172,382.00 |
| Jason Sison | Corporate | 2016 | $810.00 | N/A | 80.8 | $65,448.00 |
| Joshua Tate | Litigation | 2019 | $535.00 | $625.00 | 107.2 | $59,800.00 |
| Allison Thornton | Litigation | 2018 | $650.00 | N/A | 20.8 | $13,520.00 |
| Kaitlyn Tongalson | Litigation | 2017 | $810.00 | N/A | 262.3 | $212,463.00 |
| Izabelle Tully | Litigation | 2020 | $565.00 | $695.00 | 650.3 | $394,303.50 |
| Grace Zhu | Financial Restructuring | 2021 | N/A | $650.00 | 24.7 | $16,055.00 |
| **Associate Total:** | | | | | **7,031.70** | **$4,670,141.50** |

| Staff Attorneys & Paraprofessionals | Department | Year of Admission | 2020 Rate | 2021 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Ganna Anisimova | Law Clerk, Litigation | N/A | $340.00 | $360.00 | 338.2 | $116,758.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $415.00 | $440.00 | 26.5 | $11,317.50 |
| Frank Castro | Paralegal, Litigation | N/A | $350.00 | $370.00 | 219.1 | $77,237.00 |
| Daniel Chau | EDiscovery | N/A | $370.00 | $390.00 | 262.7 | $99,395.00 |
| Kimberly La Croix | EDiscovery | N/A | $370.00 | $390.00 | 162.4 | $60,262.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $330.00 | $350.00 | 170.8 | $56,596.00 |
| Karren Ejoh | Paralegal, Litigation | N/A | $285.00 | N/A | 47.5 | $13,537.50 |
| Patricia Gunn | Paralegal, Corporate | N/A | $435.00 | N/A | 13.2 | $5,742.00 |
| Salie Henry | Paralegal, Corporate | N/A | $350.00 | N/A | 32.5 | $11,375.00 |
| Julie Hunter | EDiscovery | N/A | $370.00 | N/A | 15.5 | $5,735.00 |
| Amy Laaraj | Paralegal, Litigation | N/A | $350.00 | $370.00 | 583.0 | $207,520.00 |
| Jennifer Langmack | Paralegal, Litigation | N/A | $350.00 | N/A | 14.2 | $4,970.00 |
| Kate Lochner | Paralegal, International Trade | N/A | $150.00 | N/A | 23.1 | $3,465.00 |
| James Moore | Trial Services | N/A | N/A | $300.00 | 20.5 | $6,150.00 |
| Donna Moye | Practice Attorney, Litigation | N/A | $515.00 | $545.00 | 322.2 | $168,873.00 |
| Michael Morse | EDiscovery | N/A | $370.00 | N/A | 5.1 | $1,887.00 |
| Jordan Orange | Paralegal, International Trade | N/A | $205.00 | N/A | 25.9 | $5,309.50 |
| Matt Pinkney | Trial Services | N/A | N/A | $225.00 | 7.0 | $1,575.00 |
| Francesco Racanati | Trial Services | N/A | N/A | $300.00 | 15.7 | $4,710.00 |
| Camille Schoonmaker | Paralegal, Litigation | N/A | $215.00 | N/A | 25.5 | $5,482.50 |
| Gisselle Singleton | EDiscovery | N/A | N/A | $390.00 | 29.6 | $11,544.00 |
| Risa Slavin | Paralegal, Litigation | N/A | $390.00 | N/A | 16.0 | $6,240.00 |

4

| Bennett Walls | Paralegal, Litigation | N/A | $215.00 | N/A | 25.6 | $5,504.00 |
|---|---|---|---|---|---|---|
| Elizabeth Watson | Paralegal, Corporate | N/A | $245.00 | N/A | 11.0 | $2,695.00 |
| Karen Woodhouse | Practice Attorney, Litigation | N/A | $400.00 | $420.00 | 68.6 | $27,808.00 |
| Melodie Young | Practice Attorney, Litigation | 2003 | $435.00 | N/A | 16.7 | $7,264.50 |
| **Staff Attorneys and Paraprofessional Total:** | | | | | **2498.10** | **$928,952.50** |
| **Total Hours / Fees Incurred:** | | | | | **20,561.30** | **$17,682,961.00** |

## **EXHIBIT D**

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 50–100 | $37,500–$75,000 | 42.60 | $30,081.00 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 300–500 | $232,500–$387,500 | 336.90 | $257,158.50 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 50–75 | $45,000–$67,500 | 50.90 | $43,064.50 |
| 6 | Retention of Professionals | 25–50 | $22,500–$45,000 | 21.90 | $19,201.50 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 200–400 | $250,000–$500,000 | 246.40 | $307,248.50 |
| 8 | Hearings and Court Matters/Court Preparation | 600–800 | $600,000–$800,000 | 757.40 | $718,088.00 |
| 12 | General Claims Analysis/Claims Objections | 200–400 | $200,000–$400,000 | 176.30 | $185,271.50 |
| 13 | Analysis of Pre-Petition Transactions | 15,000–20,000 | $12,750,000–$17,000,000 | 17445.20 | $14,624,510.00 |
| 14 | Insurance Issues | 200–400 | $200,000–$400,000 | 204.50 | $221,606.00 |
| 16 | Automatic Stay Issues | 25–50 | $19,375–$38,750 | 0.50 | $367.50 |
| 17 | Adversary Proceedings | 50–100 | $55,000–$110,000 | 78.90 | $87,858.50 |
| 18 | Tax Issues | 200–300 | $195,000–$292,500 | 236.10 | $228,234.50 |
| 19 | Labor Issues/Employee Benefits | 25–75 | $31,250–$93,750 | 23.20 | $31,430.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 150–250 | $105,000–$175,000 | 153.80 | $95,619.00 |
| 21 | Exclusivity | 5–10 | $3,500–$7,000 | 4.10 | $2,785.50 |
| 22 | Disclosure Statement/ Solicitation/Plan/Confirmation | 300–500 | $330,000–$550,000 | 383.60 | $414,206.50 |
| 23 | Asset Dispositions/363 Asset Sales/Bidding Procedures | 0–25 | $0–$35,000 | 0.40 | $638.00 |
| 31 | Business Operations | 50–100 | $50,000–$100,000 | 29.40 | $29,346.50 |
| 32 | Intellectual Property | 250–500 | $275,000–$550,000 | 110.20 | $117,442.00 |
| 33 | Sackler Rule 2004 Discovery | 200–400 | $210,000–$420,000 | 259.00 | $268,803.50 |
| **TOTAL** | | **17,880–23,035** | **$15,611,625–$22,047,000** | **20,561.30** | **$17,682,961.00** |

## EXHIBIT E

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---:|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $6,378.44 |
| Color Copy | $840.33 |
| Computerized Legal Research - Courtlink - In Contract 50% | $1,207.41 |
| Computerized Legal Research - Other | $4,617.23 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $54,545.08 |
| Computerized Legal Research - Westlaw - Out of Contract | $130.05 |
| Corporate Service Fees | $0.00 |
| Courier Service/Messenger Service - Off Site | $936.05 |
| Departmental Special Supplies | $0.00 |
| Deposition | $22,683.80 |
| Document Retrieval | $117.50 |
| Dues - Miscellaneous Dues | $0.00 |
| Duplication - Off Site | $721.04 |
| Duplication - In House | $848.00 |
| Filing Fees | $0.00 |
| Imaging/Computerized Litigation Support | $5,010.16 |
| Local Transportation - Overtime | $1,407.16 |
| Meals - Business | $437.55 |
| Meals - Overtime | $87.65 |
| Meals (100%) | $80.68 |
| Miscellaneous | $15.72 |
| Overtime - Admin Staff | $0.00 |
| Postage | $0.00 |
| Professional Fees - Legal | $1,549,984.65 |
| Professional Fees – Miscellaneous | $1,120.00 |
| Research | $4.20 |
| Telephone - Long Distance | $700.00 |
| Telephone – Cell/Pagers | $31.97 |
| Transcripts | $1,179.00 |
| Travel - Ground Transportation | $3,943.07 |
| **Total Expenses Requested:** | **$1,657,026.74** |

## **EXHIBIT F**

## **STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 20 | $1,350.00 |
| Senior Counsel and Counsel | 30 | $975.00 |
| Associate | 45 | $675.00 |
| Staff Attorneys and Paraprofessionals | 25 | $350.00 |