Melanie L. Cyganowski, Esq.
Jennifer S. Feeney, Esq.
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Telephone:    (212) 661-9100
Facsimile:    (212) 682-6104

*Co-Counsel to the Ad Hoc Committee of*
*Governmental and Other Contingent*
*Litigation Claimants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors[1]. | : | (Jointly Administered) |

------------------------------------------------------------ x

**APPLICATION OF OTTERBOURG P.C. AS CO-COUNSEL TO THE
AD HOC COMMITTEE OF GOVERNMENTAL AND OTHER CONTINGENT
CLAIMANTS FOR FOURTH INTERIM ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM
OCTOBER 1, 2020 THROUGH AND INCLUDING DECEMBER 31, 2020**

| *General Information* | |
|---|---|
| Name of Applicant: | Otterbourg P.C. |
| Applicant's role in case: | Co-Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants |
| Retention date: | September 16, 2019 |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

| Date of Order approving Debtors' payment of fees and expenses of Applicant: | December 2, 2019 [Dkt. No. 553] |
|---|---|
| **Summary of Fees and Expenses Sought in the Application** | |
| Time period covered for interim fees and expenses requested by this application: | October 1, 2020 through and including December 31, 2020 (the "Application Period") |
| Amount of compensation sought as actual, reasonable, and necessary for the Application Period: | $448,798.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary for the Application Period: | $851.68 |
| Total compensation and expense reimbursement requested for the Application Period: | $449,649.68 |
| Amount of compensation paid but not yet allowed to date: | $0.00 |
| Amount of expenses paid but not yet allowed to date: | $0.00 |
| **Summary of Allocation Fees Sought in the Application** | |
| Time period covered for Allocation Fees previously requested: | Petition Date through and including September 30, 2020 |
| Amount of Allocation Fees previously requested [Dkt. No. 2031]: | $455,590.50 |
| Amount authorized and paid (80%): | $364,472.40 |
| Amount authorized but not yet paid to date (20%): | $91,118.10 |
| Amount of unpaid Allocation Fees requested in this Application: | $91,118.10 |
| Total amount of (i) interim fees and expenses and (ii) Allocation Fees requested in this Application: | $540,767.78 |

| Summary of Previous Request(s) and Payment(s) for Compensation and Expense Reimbursement | | | | | | | |
|---|---|---|---|---|---|---|---|
| Application | Period Covered | Fees Requested | Fees Paid | Expenses Requested | Expenses Paid | Balance | Order |
| First Interim Application Dkt. No. 955 | 9/16/2019 through 1/31/2020 | $646,606.50 | $634,943.70[2] | $2,956.87 | $2,956.87 | $0.00 | Dkt. Nos. 1159 and 1306 |
| Second Interim Application Dkt. No. 1456 | 2/1/2020 through 5/31/2020 | $336,192.00 | $331,192.00[3] | $1,604.92 | $1,504.92 | $0.00 | Dkt. No. 1649 |
| Third Interim Application Dkt. No. 1990 | 6/1/2020 through 9/30/2020 | $682,293.50 | $669,130.85[4] | $2,091.13 | $2,091.13 | $0.00 | Dkt. No. 2144 |
| TOTAL: | | $1,665,092.00 | $1,635,266.55 | $6,652.92 | $6,552.92 | $0.00 | |

---

[2]    At the request of the fee examiner, Applicant agreed to a fee and expense accommodation in the amount of $11,662.80 in connection with its first interim fee application.

[3]    At the request of the fee examiner, Applicant agreed to a fee and expense accommodation in the amount of $5,100.00 ($5,000 in fees and $100 in expenses) in connection with its second interim fee application.

[4]    At the request of the fee examiner, Applicant agreed to a fee accommodation in the amount of $13,162.65 in connection with its third interim fee application.

6498469.1

| *Monthly Fee Statements Subject to the Application Period* | | | | | | |
|---|---|---|---|---|---|---|
| Statement | | Amount Requested | | Amount Paid | | |
| Period | Dkt. and Date | Fees | Expenses | Fees (80%) | Expenses (100%) | Balance |
| 10/1/2020 – 10/31/2020 | Dkt. No. 2499 Filed: 3/17/2021 | $141,697.00 | $745.01 | $0.00 | $0.00 | $142,442.01 |
| 11/1/2020 – 11/30//2020 | Dkt. No. 2500 Filed: 3/17/2021 | $133,559.00 | $57.54 | $0.00 | $0.00 | $133,616.54 |
| 12/1/2020 – 12/31/2020 | Dkt. No. 2501 Filed: 3/17/2021 | $173,542.00 | $49.13 | $0.00 | $0.00 | $173,591.13 |
| **TOTAL** | | **$448,798.00** | **$851.68** | **$0.00** | **0.00** | **$449,649.68** |

| This is a(n): | |
|---|---|
| | ____    Monthly |
| | x    Interim |
| | ____    Final Application |

Melanie L. Cyganowski, Esq.
Jennifer S. Feeney, Esq.
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Telephone:    (212) 661-9100
Facsimile:    (212) 682-6104

*Co-Counsel to the Ad Hoc Committee of*
*Governmental and Other Contingent*
*Litigation Claimants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re                                             :    Chapter 11
                                                  :
PURDUE PHARMA L.P., *et al.*,                      :    Case No. 19-23649 (RDD)
                                                  :
                 Debtors[1].                       :    (Jointly Administered)

-------------------------------------------------------- x

**APPLICATION OF OTTERBOURG P.C. AS CO-COUNSEL TO THE
AD HOC COMMITTEE OF GOVERNMENTAL AND OTHER CONTINGENT
CLAIMANTS FOR FOURTH INTERIM ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM
OCTOBER 1, 2020 THROUGH AND INCLUDING DECEMBER 31, 2020**

TO:    THE HONORABLE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE:

Otterbourg P.C. ("**Otterbourg**" or "**Applicant**"), Co-Counsel to the Ad Hoc Committee

of Governmental and Other Contingent Claimants (the "**AHC**") in the above-captioned cases in

support of its fourth application (the "**Application**") for allowance of interim compensation for

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtors's registration number
in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue
Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P.
(0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150),
Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P.
(4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove
Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick
Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC
Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford
Forum, 201 Tresser Boulevard, Stamford, CT 06901.

professional services rendered and reimbursement of expenses incurred from October 1, 2020 through and including December 31, 2020 (the "**Application Period**"), respectfully states:

## JURISDICTION, VENUE AND STATUTORY PREDICATES

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief sought herein are Sections 330 and 331 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").  This Application has been prepared in accordance with *General Order M-447*, the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases pursuant to Local Rule 2016-1(a) (as updated June 17, 2013)* (the "**Local Guidelines**"), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in larger Chapter 11 Cases, effective November 1, 2013* (the "**UST Guidelines**" and, together with the Local Guidelines, the "**Guidelines**").  Attached hereto as <u>Exhibit A</u> is a certification regarding compliance with the Local Guidelines (the "Cyganowski Declaration").

## BACKGROUND

3.     On September 16, 2019 (the "**Petition Date**"), Purdue Pharma L.P. and its affiliates (the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors have remained in possession of their property and continue in the management of their business as a debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.      An official committee of unsecured creditors (the "**UCC**") was appointed by the Office of the United States Trustee (the "**U.S. Trustee**") in these cases on September 27, 2019 [Dkt. No. 131].

6.      On November 21, 2019, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019  (the "**Interim Compensation Order**") [Dkt. No. 529]. The Interim Compensation Order provides, among other procedures, that professionals are required to file and serve monthly itemized billing statements and interim fee applications.

7.      On December 2, 2019, the Court entered an *Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* (the "**Reimbursement Assumption Order**").  [Dkt. No. 553]. The Reimbursement Assumption Order permits the payment of the fees and expenses of the AHC's professionals, including Applicant, *nunc pro tunc* to September 16, 2019, and requires compliance with the procedures set forth in the Interim Compensation Order.  On August 26, 2020, the Court entered the *Supplemental Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* (the "**Supplemental Order**") [Dkt. No. 1617]. On December 22, 2020, the Court entered the *Second Supplemental Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals*  (the "**Second Supplemental Order**," together with the Reimbursement Assumption Order and the

Supplemental Order, the "**Fee Assumption Order**") [Dkt. No. 2190]. The Second Supplemental Order authorized the Debtors to pay fees incurred by the AHC in connection with or relating to the allocation of value among the Debtors' Creditors (the "**Allocation Fees**").  A copy of the Fee Assumption Order is annexed hereto as Exhibit B.

**SUMMARY OF PROFESSIONAL COMPENSATION
AND REIMBURSEMENT OF EXPENSES REQUESTED**

8.      By this Application, Applicant seeks an order (i) approving on an interim basis compensation in the amount of $448,798.00 and expenses in the amount of $851.68, representing actual and necessary expenses Applicant incurred in connection with its rendition of professional services to the AHC during the Application Period; and (ii) authorizing payment of unpaid Allocation Fees in the amount of $91,118.10, representing the 20% holdback of the Allocation Fees previously requested for the period from the Petition Date through and including September 30, 2020.[2]

9.      In accordance with the Interim Compensation Order, Applicant filed the following interim fee applications:

- On March 16, 2020, Applicant filed a request for first interim allowance of fees and expenses in this Case, covering the period from September 16, 2019 through and including January 31, 2020 [Dkt. No. 955]. The Court entered an order on May 15, 2020 approving that first interim request [Dkt. No. 1159]. On June 26, 2020 the Court entered a supplemental order permitting payment of the holdback amounts, less certain reductions

---

[2]      On November 24, 2020, the Debtors filed the *Motion to Supplement the Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committees Professionals* (the "Supplemental Fee Motion"). The Supplemental Fee Motion requested authority to pay the Ad Hoc Committee Professionals' Allocation Fees. As set forth in the *Notice of Filing of the Ad Hoc Committee's Allocation Fees* [Dkt. No. 2031], Otterbourg requested Allocation Fees in the total amount of $455,590.50. On December 22, 2020, the Court granted the Supplemental Fee Motion [Dkt. No. 2190] authorizing the Debtors to pay the Allocation Fees.

of fees and expenses agreed to between Applicant and the fee examiner appointed in these cases [Dkt. No. 1306].

- On July 20, 2020, Applicant filed a request for second interim allowance of fees and expenses in this Case, covering the period from February 1, 2020 through and including May 31, 2020 [Dkt. No. 1456]. The Court entered an order on September 2, 2020 approving that second interim request [Dkt. No. 1649].

- On November 16, 2020, Applicant filed a request for third interim allowance of fees and expenses in this Case, covering the period from June 1, 2020 through and including October 31, 2020 [Dkt. No. 1990]. The Court entered an order on December 16, 2020 approving that third interim request [Dkt. No. 2144].

10.    The following Monthly Fee Statements were filed by Applicant during the Application Period:

| Monthly Fee Statements Subject to the Application Period | | | | | | |
|---|---|---|---|---|---|---|
| Statement | | Amount Requested | | Amount Paid | | |
| Period | Dkt. and Date | Fees | Expenses | Fees (80%) | Expenses (100%) | Balance |
| 10/1/2020 – 10/31/2020 | Dkt. No. 2499 Filed: 3/17/2021 | $141,697.00 | $745.01 | $0.00 | $0.00 | $142,442.01 |
| 11/1/2020 – 11/30//2020 | Dkt. No. 2500 Filed: 3/17/2021 | $133,559.00 | $57.54 | $0.00 | $0.00 | $133,616.54 |
| 12/1/2020 – 12/31/2020 | Dkt. No. 2501 Filed: 3/17/2021 | $173,542.00 | $49.13 | $0.00 | $0.00 | $173,591.13 |
| **TOTAL** | | **$448,798.00** | **$851.68** | **$0.00** | **0.00** | **$449,649.68** |

11.    Applicant attaches the following in support of this Application:

- <u>Exhibit C</u> is a summary of the compensation sought by Applicant by project code for the Application Period and a comparison to the Applicant's budget and proposed staffing plan.

- <u>Exhibit D</u> is a list of the attorneys and paraprofessionals who have worked on these cases during the Application Period, the aggregate time invested by each individual, the applicable hourly billing rate, and the amount of fees attributable to each individual, as well as the hours and time spent by position (*e.g.*, partner, associate, clerk), blended hourly rates, and a comparison against the blended rates of other non-insolvency attorneys and professionals at Otterbourg.

- <u>Exhibit E</u> contains a copy of the computer-generated time entries reflecting the time recorded during the Application Period, organized in project billing categories by the Applicant.

- <u>Exhibit F</u> is a summary of reimbursement sought by the Applicant by expense type for all expenses incurred during the Application Period.

- <u>Exhibit G</u> contains a copy of the computer-generated list of expenses incurred during the Application Period.

## SUMMARY AND HIGHLIGHTS OF SERVICES RENDERED

12.     During the Application Period, Applicant performed services on a variety tasks for the AHC, all of which are set forth in Applicant's detailed time records.  The following summary is intended only to highlight some of the services rendered by Applicant during the Application Period and is not intended to be a complete recitation of all activities or of all activities performed.  Although every effort was made to consistently categorize the actual services provided into the appropriate category, certain tasks were interrelated and could properly be categorized in multiple categories.

### A.     Claims Analysis

13.     In accordance with the previously entered bar date order, on July 30, 2020, a consolidated claim was filed on behalf of forty-nine states, the District of Columbia and six territories (the "**Claimants**"), which asserted damages in excess of $2 trillion (the "**Consolidated Claim**").  During the Application Period, Applicant continued to work with counsel for the Non-Consenting State Group ("**NCSG**"), who represented approximately half of

the Claimants that filed the Consolidated Claim, to present the Consolidated Claim and the
supporting documentation and legal case law for the asserted amounts to the Debtors and their
financial advisors.   Applicant participated in regular meetings, together with counsel
representing the NCSG, to present to the Debtors' financial advisors the legal bases for the
claims and the underlying data that supports the Consolidated Claim.   Applicant also worked
closely with co-counsel for the Ad Hoc Committee to coordinate the division of tasks and avoid
duplication of research or review.   In part because of the magnitude of the claims and the number
of State claimants, co-counsel were able to facilitate completing the review more quickly by
dividing tasks among them.

14.   Applicant also reviewed the claims filed by other parties in these cases, assessing
the types of claims that were filed and the magnitude of each.   This review and the support for
the amounts asserted by the Claimants in the Consolidated Claim was important to helping
finalize settlements with various groups of creditors in connection with a plan of reorganization.

### B.   <u>Asset Analysis and Recovery</u>

15.   In connection with fulfilling its duties, the AHC and its professionals have
undertaken certain due diligence to examine the Debtors' business operations and the assets of
the Sackler family and their holdings.   Such due diligence is necessary in connection with
formulating a plan of reorganization and analyzing strategic options.   Critical to the AHC's work
is understanding the distributable value that may be available to its constituents under a variety
of scenarios and assumptions.

16.   During the Application Period, Applicant participated in conference calls and
virtual meetings with the AHC's financial advisors to review reports regarding the Debtors'
business operations and projections.   In advance of such meetings, Applicant reviewed the
presentations from the AHC's financial advisors, and participated in conference calls, regarding

the due diligence being undertaken with respect to the businesses of the Sackler family. These presentations and analyses were constantly evolving as more information became available, new settlements were reached and business plan projections were updated. Applicant also reviewed the analyses performed were the company to be sold at emergence. These due diligence updates are critical to understanding how to best optimize value in a plan of reorganization for creditors.

17.     In addition, during the Application Period, Applicant participated in a virtual meeting with the Official Committee of General Unsecured Creditors in which it presented its findings regarding its investigation of potential liability by the Sackler family and available funds. Applicant kept apprised of the discovery and due diligence that was being conducted by the UCC and the NCSG. In addition, Applicant monitored ongoing disputed between and among the Sackler family and other parties regarding the production of documents and unsealing of certain documents.

## C.    Plan and Disclosure Statement

18.     By the beginning of the Application Period, the settlements with the various public and private entity constituencies were substantially completed. During the Application Period, Applicant reviewed the various term sheets memorializing such agreements. The mediation then turned to "Phase II" of negotiations, which focused on the monetary contribution to be made by the Sackler family and the post-emergence governance structure. The AHC had previously reached an agreement prior to the bankruptcy filing with the Sacklers, but the AHC and its counsel remained integrally involved in the negotiations between the NCSG and the Sacklers to help facilitate a resolution.

19.     Simultaneously, Applicant and co-counsel were focused on the terms of a post-emergence governing structure, including issues concerning the remaining core business structure, trusts to oversee the operation of the remaining business and trusts to facilitate required

distributions pursuant to the settlement agreements.  These negotiations required ongoing and numerous rounds of discussions with the Debtors, the Department of Justice (the "**DOJ**") and the NCSG.  Applicant and co-counsel would report back to the AHC on the status of negotiations and what terms would be acceptable.  Applicant also spent time reviewing the multiple iterations of the post-governance terms sheets that were drafted by co-counsel and are continuing to be negotiated.

20.     During the Application Period, in addition to reviewing the term sheets, Applicant participated in multiple formal and informal mediation sessions with various groups.  In addition to these mediation sessions, Applicant had weekly calls (usually several times a week) with co-counsel to discuss the status of negotiations and also had calls with subsets of the AHC that were primarily responsible for negotiations.  Applicant also regularly spoke with counsel for the NCSG regarding open plan issues.

21.     During the Application Period, Applicant also considered alternative plan options should the Sacklers and the NCSG fail to reach a resolution, Applicant reviewed the terms of such alternative plan structure, including the pros and cons of such alternative plan and helped report on such analyses to the AHC so that the committee could make an informed decision regarding alternatives.  Also during the Application Period, a third party expressed an interest in the sale of Purdue.  Applicant spent time analyzing such proposal and the evolving structure of such sale, including the AHC's financial advisors' analyses of the proposal and comparison to other plan options that did not involve the immediate sale of the business.  In connection with this option, Applicant participated in many calls with the AHC's advisors, the AHC, the NCSG and the Debtors.

22.    In addition, during the Application Period, the DOJ announced that it had reached a resolution with the Sackler family.  Applicant reviewed and analyzed the terms of such settlement and the impact on other plan negotiations.  Applicant also participated in calls with the DOJ regarding the settlement and the post-governance structure of Purdue and the ongoing businesses.

### D.    Case Administration/General Services/Business Operations

23.    During the Application Period, Applicant participated in many conference calls and video calls with its co-counsel, individual members of the AHC, and other parties to these cases, including, among others, the DOJ, counsel to the NCSG, counsel to the multi-state group and the monitor appointed in these cases to receive an overview of his report.  Applicant also reviewed the pending motions before the Court and participated in court hearings.

24.    Throughout all of these activities, Applicant organized with co-counsel by regularly communicating among the firms and determining the specific tasks to be undertaken by each.  It was also particularly important given the size of the AHC that subsets of groups could organize and have a point of contact to discuss issues specific to each constituency and communicate them to other co-counsel and the remainder of the AHC group.  Applicant primarily coordinated with the states on intra-committee issues to ascertain their positions and seek solutions.  While there were activities that necessarily required full participation of the professionals, tasks were coordinated to avoid duplication of efforts.

25.    Applicant also prepared and filed monthly fee statements and its third interim fee application as required by the Compensation Procedures Order.

### E.    Meetings and Communications with Ad Hoc Committee

26.    Throughout the Application Period, Applicant and its co-counsel kept the AHC members advised of all matters in these cases, providing regular updates and responding to

inquiries.  The AHC has weekly update calls with the entire AHC and also has regular calls with the subcommittees, some of which occur on a weekly basis and others on an as-needed basis. Certain more pressing issues required multiple conference calls in a single day.  Applicant also had regular calls with the counsel to the NCSG to discuss issues that are common to all the states, including the Consolidated Claim.

## EVALUATING APPLICANT'S SERVICES

27.    Applicant respectfully submits that its request for the fourth interim allowance of compensation is reasonable and appropriate.  The services rendered by Applicant, as highlighted above, required substantial time and effort.

28.    Bankruptcy Code section 331 provides for interim compensation of professionals and incorporates the substantive standards of Bankruptcy Code section 330 to govern the Court's award of such compensation.  Bankruptcy Code section 330 provides that a court may award a professional employed under Bankruptcy Code section 327 "reasonable compensation for actual, necessary services rendered … and reimbursement for actual, necessary expenses."  Bankruptcy Code section 330 also sets forth the criteria for the award of such compensation and reimbursement.

29.    In determining the amount of reasonable compensation to be awarded, the Court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:

    a.    the time spent on such services;

    b.    the rates charged for such services;

    c.    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    d.    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    e.    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

30.    Applicant respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the AHC, the Debtors, the Debtors' estates, and other parties in interest. Applicant also submits that the services rendered to the AHC were performed economically, effectively and efficiently and were necessary. Applicant further submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services and that the fees billed and expenses incurred were well within the parameters of the budget provided to the Debtors, which estimated monthly fees of $250,000.

31.    Applicant coordinated with co-counsel to the AHC to assign tasks and avoid duplication of services. Certain services, such as participation in court hearings, conference calls and meetings and review of pertinent documents, necessarily required the involvement of multiple co-counsel advising the AHC. Applicant was primarily responsible for interfacing with the state members of the AHC and bringing such issues and concerns to the remainder of the AHC and other co-counsel.

32.    Applicant's hourly rates and fees charged are consistent with the market rate for comparable services. As set forth in the Cyganowski Certification, the hourly rates and fees charged by Applicant are the same as those generally charged to, and paid by, Applicant's other clients. In accordance with its regular practice, Applicant's hourly rates are reviewed and adjusted in October of each year.

33.     Applicant, to the best of its knowledge, has not included in its request for interim fees any Allocation Fees. Pursuant to the Second Supplemental Order, the previously incurred Allocation Fees were approved through a separate application process [Dkt. No. 2190].

34.     In summary, the services rendered by Applicant were necessary and beneficial to the AHC and the Debtors' estates, and were consistently performed in a timely manner commensurate with the complexity, importance, novelty and nature of the issues involved. Accordingly, approval of the compensation sought herein is warranted.

## **DISBURSEMENTS**

35.     Applicant incurred actual and necessary out-of-pocket expenses during the Application Period, which are set forth in Exhibit G.  By this Application, Applicant respectfully requests allowance of such reimbursement in full.  The disbursements for which Applicant seeks reimbursement include, among others:

    a.    Computer Research Charges – Otterbourg's practice is to bill clients for electronic research at actual cost, which does not include amortization for maintenance and equipment.

    b.    Conference Calls– Otterbourg's practice is bill clients for conference calls at actual cost to the firm.

## **APPLICANTS' STATEMENT PURSUANT TO APPENDIX B OF THE UST GUIDELINES**

36.     The following statement is provided pursuant to § C.5. of the UST Guidelines.

a.     **Question**:  Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms of services pertaining to this engagement that were provided during the application period?  If so, please explain.

**Answer**: No.

b.     **Question**:  If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: The fees sought in the Application do not exceed the fees budgeted for the Application Period and are, in fact, considerably less than the amount budgeted.

c. **Question**: Have any of the professionals included in this fee application varied their hourly rage based on the geographic location of the bankruptcy case?

**Answer**: No.

d. **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

**Answer**: Yes. There were 1.4 hours ($1,253.00) recorded for reviewing fee time.

e. **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

**Answer**: No.

f. **Question**: If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: Pursuant to Applicant's ordinary practices, hourly billable rates were increased in October 2020 and are reflected in this Application. Applicant was not subject to a separate retention application. The Debtors were authorized to pay the fees of Applicant pursuant to the Fee Assumption Order. However, the increase in Otterbourg's hourly rate was disclosed to the AHC in Otterbourg's October monthly statement and reviewed by the AHC prior to filing with the Court.

<u>**CONCLUSION**</u>

**WHEREFORE**, the Applicant respectfully requests that this Court enter an order (i) (a) allowing on an interim basis compensation in the aggregate amount of $448,798.00 for fees for services rendered during the Application Period; (b) allowing on an interim basis actual,

necessary expenses incurred in connection with such services in the aggregate amount of $851.68; (c) authorizing and directing the Debtors to pay to the unpaid fees for services rendered during the Application Period expenses associated with such services; (ii) authorizing payment of unpaid Allocation Fees in the amount $91,118.10, representing the 20% holdback of the Allocation Fees previously requested for the period from the Petition Date through and including September 30, 2020;  and (iii) granting such other and further relief as may be just or proper.

New York, New York
Dated: March 17, 2021

OTTERBOURG P.C.

By: */s/ Melanie L. Cyganowski*
Melanie L. Cyganowski, Esq.
Jennifer S. Feeney, Esq.
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Telephone:        (212) 661-9100
Facsimile:        (212) 682-6104

*Co-Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*

6498469.1

# EXHIBIT A

**Certification**

Melanie L. Cyganowski, Esq.
Jennifer S. Feeney, Esq.
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Telephone:      (212) 661-9100
Facsimile:      (212) 682-6104

*Co-Counsel to the Ad Hoc Committee of*
*Governmental and Other Contingent*
*Litigation Claimants*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re                                                   :    Chapter 11
                                                        :
PURDUE PHARMA L.P., *et al.*,                           :    Case No. 19-23649 (RDD)
                                                        :
              Debtors[1].                               :    (Jointly Administered)
                                                        :
-------------------------------------------------------- x


**CERTIFICATION OF MELANIE L. CYGANOWSKI IN RESPECT OF APPLICATION
OF OTTERBOURG P.C. AS CO-COUNSEL TO THE AD HOC COMMITTEE OF
GOVERNMENTAL AND OTHER CONTINGENT CLAIMANTS FOR
FOURTH INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM
<u>OCTOBER 1, 2020 THROUGH AND INCLUDING DECEMBER 31, 2020</u>**

         I, Melanie L. Cyganowski, hereby certify that:

         1.       I am a member of the firm of Otterbourg P.C. ("<u>Otterbourg</u>").   By Order of the

Court, dated December 2, 2019, the Debtor was authorized to pay fees and expenses of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

6492567.1

Otterbourg as Co-Counsel to the Ad Hoc Committee of Governmental and Other Contingent Claimants *nunc pro tunc* to September 16, 2019 (the "Petition Date").  [553]

2.     I am the professional designated by Otterbourg with the responsibility for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases* (as updated June 17, 2013) (the "Local Guidelines"), and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, adopted by the Executive Office for the United States Trustee (the "UST Guidelines", and together with the Local Guidelines, the "Guidelines") and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, [Dkt. No. 529] (the "Interim Compensation Order").

3.     This Certification is made in support of Otterbourg's fourth interim application (the "Interim Fee Application") for the interim allowance of compensation for services rendered and reimbursement of expenses incurred for the period from October 1, 2020 through and including December 31, 2020 (the "Application Period").

4.     I have reviewed the Interim Fee Application.

5.     To the best of my knowledge, information and belief formed after reasonable inquiry of the Otterbourg accounting personnel and legal and paraprofessional staff, the Interim Fee Application complies with the mandatory guidelines set forth in the Guidelines.

6.     The fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Otterbourg and generally accepted by Otterbourg's clients.

7.     To the best of my knowledge, information and belief formed after reasonable inquiry of the Otterbourg personnel, Otterbourg does not make a profit in connection with any disbursements sought in the Interim Fee Application except (i) in recording certain

6492567.1

disbursements, for administrative convenience, charges are rounded up to the nearest dollar (*e.g.*, long distance telephone calls); (ii) volume discounts, if any, are not reflected (*e.g.*, Federal Express); and (iii) certain estimates for expenses related to various disbursements are not specifically calculated (*e.g.*, taxes, rental charges and related costs of Westlaw).

8.      To the best of my knowledge, information and belief formed after reasonable inquiry of the Otterbourg accounting personnel, Otterbourg does not include in the amount of any disbursements the amortization of the cost of any investment, equipment or capital outlay.

9.      To the best of my knowledge, information and belief formed after reasonable inquiry of the Otterbourg accounting personnel, to the extent that Otterbourg has purchased or contracted for services from a third party, reimbursement is sought only for the amount billed by the third party to Otterbourg and paid.

10.     Otterbourg maintains supporting documentation for each item for which reimbursement is sought (*e.g.*, conference calls, meals chargeable and transportation) and such documentation is available for review on request by the Court or the United States Trustee.

11.     Otterbourg has complied with the provisions requiring it to provide the United States Trustee for the Southern District of New York and the Debtor with a statement of the Applicant's fees and expenses.

12.     The Notice Parties (as defined in the Interim Compensation Order) will each be provided with a copy of the Interim Fee Application.

New York, New York
Dated: March 17, 2021

By:  ___/s/ *Melanie L. Cyganowski*
     Melanie L. Cyganowski
     230 Park Avenue
     New York, New York 10169
     (212) 661-9100
     *Co-Counsel to the Ad Hoc Committee of*
     *Governmental and Other Contingent*
     *Litigation Claimants*

6492567.1

# EXHIBIT B

**Fee Assumption Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | **(Jointly Administered)** |

### ORDER AUTHORIZING THE DEBTORS TO ASSUME THE REIMBURSEMENT AGREEMENT AND PAY THE FEES AND EXPENSES OF THE AD HOC COMMITTEE'S PROFESSIONALS

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors

and debtors in possession in these cases (collectively, the "**Debtors**"), pursuant to sections 105(a),

363(b) and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (this

"**Order**") (a) authorizing the Debtors to assume the Reimbursement Agreement, attached to the

Motion as **Exhibit B**, and (b) authorizing but not directing the Debtors to pay the reasonable and

documented fees and expenses under the Reimbursement Agreement, without the need for further

motion, fee application or order of the Court, as more fully set forth in the Motion; and the Court

having jurisdiction to decide the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and upon the objections (or joinders to objections) to the relief requested in the Motion filed by the Ad Hoc Group of Individual Victims, the NAS Babies Ad Hoc Committee, the Official Committee of Unsecured Creditors, the Private Insurance Plaintiffs, the U.S. Trustee, and Certain Native American Tribes [Docket Nos. 454, 458, 459, 462, 463 and 468] and the responses thereto; and the Court having held a hearing to consider the relief requested in the Motion on November 19, 2019 (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and after due deliberation and for the reasons stated by the Court in its bench ruling at the Hearing the Court having determined that the legal and factual bases set forth in the Motion establish good and sufficient cause for the relief granted herein, which is in the best interests of the Debtors, their estates, their creditors and all parties in interest; now, therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The Debtors are authorized to perform the Reimbursement Agreement pursuant to section 363 of the Bankruptcy Code, subject to and as modified by the terms of this Order.

3.      Specifically, the Debtors are authorized, but not directed, to pay (i) Brown Rudnick LLP, (ii) Gilbert, LLP, (iii) Kramer Levin Naftalis & Frankel LLP, (iv) Otterbourg PC, (v) FTI Consulting, Inc., (vi) Compass Lexecon and (vii) Coulter & Justice (collectively, the "**Professionals**") for their reasonable and documented fees and expenses in accordance with the terms and conditions of the Reimbursement Agreement and this Order; *provided* that, for the avoidance of doubt, the Debtors shall have no obligation to pay any fees, expenses or other

2

amounts incurred after the termination of the Reimbursement Agreement in accordance with its terms.

4.      The authorization of the Debtors to pay (i) the reasonable and documented fees and expenses of the Professionals (other than those Professionals set forth in paragraph 3(vi) and (vii) above, which are addressed in subsection (z) of this paragraph 4 below) and (ii) reasonable and documented expenses (e.g., hotels, meals, travel costs, etc., but excluding the fees and expenses of any professional, including internal counsel, retained or employed by any Ad Hoc Committee member) incurred by the Ad Hoc Committee members in furtherance of their service on the Ad Hoc Committee (the "**Member Expenses**") shall be subject, *mutatis mutandis*, to the procedures with respect to authorization of payment of the fees and expenses of the professionals of the Debtors and the UCC set forth in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [Docket No. 529] (as may be modified or amended by any subsequent order of the Court with respect thereto, the "**Interim Compensation Order**") including, for the avoidance of doubt, the filing of Monthly Fee Statements and Applications (in each case as defined in the Interim Compensation Order), Interim Fee Hearings (as defined in the Interim Compensation Order), the expiration of the Objection Deadline (as defined in the Interim Compensation Order) or resolution of any Objections (as defined in the Interim Compensation Order) with respect each Monthly Fee Statement, and the 20% holdback with respect to fees until further order of the Court; *provided* that the standard for authorization of payment of the fees and expenses of the Professionals shall be whether such fees and expenses are (a) reasonable and documented and (b) reimbursable under the Reimbursement Agreement (including, without limitation, that such fees and expenses are not duplicative of other Professionals and are within the Scope (as defined in the Reimbursement Agreement)); *provided*

*further* that, for the avoidance of doubt, that the Professionals shall not be considered retained

professionals of the Debtors or UCC and the retention of the Professionals shall not be required to

satisfy the standards for retention set forth in sections 327-328 or 1103 of the Bankruptcy Code;

*provided further* that, the Professionals shall seek reimbursement only for fees and expenses that

are within the Scope (and, for the avoidance of doubt, neither filing objections to the claims of

other creditors or advancing or prosecuting the claims of the individual members of the Ad Hoc

Committee shall be considered within the Scope); *provided further* that, (x) the aggregate amount

authorized to be paid pursuant to this Order shall not exceed $1,500,000 with respect to the fees

and expenses of the Professionals (including Compass Lexecon and Coulter & Justice) incurred

prior to the Petition Date, (y) such prepetition fees and expenses of the Professionals, together with

any prepetition Member Expenses, shall be sought only upon the earlier of (1) the execution of a

restructuring support agreement among parties including the Debtors and each member of the Ad

Hoc Committee and (2) confirmation of a chapter 11 plan for the Debtors, and (z) the Debtors shall

not be authorized to pay any amounts to the Professionals set forth in paragraph 3(vi) and 3(vii)

above (who are not currently actively engaged) unless and until authorized to do so by subsequent

order of this Court in connection with one of the Applications referred to above; *provided further*

that the fees and expenses of the Professionals incurred in connection with or relating to the

allocation of value among the Debtors' creditors  (the "**Allocation Fees**"), shall be segregated and

recorded in separate matters or projects and shall be sought by Application only upon the earlier

of (a) the approval by the Court of a restructuring support agreement among parties including the

Debtors and each member of the Ad Hoc Committee (the "**RSA**") or (b) confirmation of a chapter

11 plan for the Debtors; *provided further* that to the extent an emergency relief fund for the use,

prior to confirmation, of a substantial amount of the Debtors' cash to provide emergency relief and

4

assistance with respect to the opioid crisis (an "**ERF**") has not previously been sought or approved by the Court, the RSA shall have within it a valid and credible proposal for an ERF; *provided further* that prior to the earlier of approval by the Court of an RSA or confirmation of a chapter 11 plan for the Debtors, each Professional that submits a Monthly Fee Statement or Application will include a representation therein that it has separately recorded its Allocation Fees and has not, to the best of its knowledge, included Allocation Fees in such Monthly Fee Statement or Application.

5.     Notwithstanding anything to the contrary herein, the Debtors shall not be authorized to pay the fees and any expenses of any advisor to the Ad Hoc Committee other than the Professionals (as defined in paragraph 3), and the authorization to pay the fees and expenses of any advisor to the Ad Hoc Committee other than the Professionals (including any investment banker, as contemplated by the Reimbursement Agreement) shall be sought by a supplemental motion to this Court, *provided* that the Debtors are authorized to pay the fees of an investment banker, as contemplated by the Reimbursement Agreement, subject the same procedures applicable to the Professionals (as defined in paragraph 3), with the consent of the Debtors, U.S. Trustee and UCC to the retention of such investment banker and the terms of such retention.

6.     Pursuant to and consistent with information and confidentiality protocols to be agreed between the Ad Hoc Committee, the Ad Hoc Group of Non-Consenting States[3] and the Governmental Entities Group[4], and acceptable to the Debtors, and any protective order in these cases, the work product of certain financial professionals engaged by the Ad Hoc Committee, including FTI Consulting, Inc., shall be made available to the Ad Hoc Group of Non-Consenting States and the Governmental Entities Group with respect to matters on which such parties share a

---

[3] The Bankruptcy Rule 2019 statement for the Ad Hoc Group of Non-Consenting States is filed at Docket No. 296.

[4] The Bankruptcy Rule 2019 statement for the Governmental Entities Group is filed at Docket No. 409.

common interest, subject to the terms therein, and where such work product does not contain, reflect or reference confidential information of the Debtors that they have provided to the Ad Hoc Committee but not provided to the Ad Hoc Group of Non-Consenting States and the Governmental Entities Group. The delivery of information pursuant to such information protocols described in this paragraph shall not be deemed a waiver of any common interest privilege, attorney-client privilege, work product protection, or any other applicable privileges or protections with respect thereto.

7.      The contents of the Motion and the notice procedures set forth therein constitute good and sufficient notice and satisfy the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

8.      Nothing in this Order shall be deemed to constitute (i) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (ii) a waiver of any rights, claims or defenses of the Debtors.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

10.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of these chapter 11 cases to cases under chapter 7.

11.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: December 2, 2019             /s/ Robert D. Drain
        White Plains, New York      THE HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## SUPPLEMENTAL ORDER AUTHORIZING THE DEBTORS TO ASSUME THE REIMBURSEMENT AGREEMENT AND PAY THE FEES AND EXPENSES OF THE AD HOC COMMITTEE'S PROFESSIONALS

On the Debtors' request for the entry of an order (this "**Supplemental Order**")

supplementing the order (the "**Reimbursement Assumption Order**")[2] entered by the Court [Dkt.

No. 553] (a) authorizing Purdue Pharma L.P. and its affiliates that are debtors and debtors in

possession in these cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b) and

365 of title 11 of the United States Code (the "**Bankruptcy Code**"), to assume the Reimbursement

Agreement, and (b) authorizing but not directing the Debtors to pay the reasonable and

documented fees and expenses under the Reimbursement Agreement, without the need for further

motion, fee application or order of the Court; and the Court having jurisdiction to enter this

Supplemental Order and the relief requested in accordance with 28 U.S.C. §§ 157(a)-(b) and

1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Reimbursement Assumption Order.

C.J.); and consideration of the Supplemental Order and the requested relief being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§

1408 and 1409; and due and proper notice of the relief requested in the Supplemental Order having

been provided; and there being no objections to the requested relief; and it appearing that no other

or further notice or a hearing is required; and after due deliberation the Court having determined

that there is good and sufficient cause for the relief granted herein and that such relief is in the best

interests of the Debtors, their estates, their creditors and all parties in interest,

**IT IS HEREBY ORDERED THAT:**

1.      In accordance with paragraph 5 of the Reimbursement Assumption Order, the

Reimbursement Assumption Order is supplemented to authorize the engagement of Houlihan

Lokey Capital, Inc. ("**Houlihan Lokey**") as financial advisor and investment banker to the Ad Hoc

Committee, on the terms and conditions set forth in the Engagement Letter attached hereto as

**Exhibit A**, with the agreement of the Debtors and the Creditors' Committee.  The Debtors are

authorized to compensate and reimburse Houlihan Lokey pursuant to the terms of the Engagement

Letter, subject to the terms of the Reimbursement Assumption Order.

2.      None of the fees payable to Houlihan Lokey shall constitute a "bonus" or fee

enhancement under applicable law.

3.      The Debtors shall be bound by the indemnification, contribution, reimbursement

and exculpation provisions set forth in the Engagement Letter, subject during the pendency of

these cases subject to the following:

> a.   All requests by Indemnified Parties for the payment of indemnification,
> contribution, or otherwise as set forth in the Engagement Letter during the
> pendency of these chapter 11 cases shall be made by means of an application to
> the Court and shall be subject to review by the Court to ensure that payment of
> such indemnity, contribution, or other payment conforms to the terms of the
> Engagement Letter and is reasonable under the circumstances of the litigation
> or settlement in respect of which indemnity, contribution, or other payment is

sought; underline{provided} that in no event shall any Indemnified Party be indemnified in the case of its own bad-faith, actual fraud, gross negligence, or willful misconduct.  In no event shall an Indemnified Party be indemnified if the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim arose out of, such Indemnified Party's own bad-faith, actual fraud, gross negligence, or willful misconduct.

b.  In the event an Indemnified Party seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity, contribution or other claim pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Houlihan Lokey's own applications, both interim and final, and such invoices and time records shall be subject to the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (General Order M-447), and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

4.    In the event that Houlihan Lokey's services are terminated at any point during the pendency of these chapter 11 cases in accordance with the Engagement Letter, Houlihan Lokey shall still file a final application for compensation in the chapter 11 cases, and such application shall include notice of any such termination.

5.    In accordance with the Reimbursement Assumption Order, Houlihan Lokey shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred, *provided however*, that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable procedures and orders of the Court or the United States Trustee Fee Guidelines, the Houlihan Lokey professionals shall be required only to maintain reasonably detailed time records in 0.5 hour increments containing descriptions of those services rendered for the Ad Hoc Committee, and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

6.      The fees incurred by FTI Consulting, as financial advisor to the Ad Hoc Committee for the period commencing January 1, 2020 and ending December 31, 2020, shall be limited to $5.8 million in the aggregate.

7.      Except as expressly set forth herein, all other terms of the Reimbursement Assumption Order shall remain valid and fully enforceable.

8.      The Debtors are authorized to take all actions necessary to perform their obligations set forth in the Engagement Letter, except as expressly modified herein, and to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, or 9014.

10.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of these chapter 11 cases to cases under chapter 7.

11.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:   August 26, 202
         White Plains, New York

/s/ Robert D. Drain
_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Engagement Letter**

EXECUTION VERSION

March 22, 2020

To:    Kramer Levin Naftalis & Frankel LLP, Brown Rudnick LLP, Gilbert LLP, and Otterbourg P.C., in their capacity as counsel to the members of the ad hoc committee of governmental claimants (each, a "Member" and collectively, the "Ad Hoc Committee") (in such capacity, "Counsel") (Counsel and the Ad Hoc Committee are collectively referred to herein as the "Client Group") with respect to opioid-related litigation claims against Purdue Pharma L.P. and their affiliated debtor entities, *In re: Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD) (collectively, the "Company"), in care of:

**Kramer Levin Naftalis & Frankel LLP**
1177 Avenue of the Americas
New York, NY 10036
Attn: Kenneth H. Eckstein, Partner

**Brown Rudnick, LLP**
7 Times Square
New York, NY 10036
Attn: Steven D. Pohl, Partner

**Gilbert LLP**
1100 New York Avenue, NW
Washington, DC 20005
Attn: Scott D. Gilbert, Partner

**Otterbourg P.C.**
230 Park Avenue
New York, NY 10169
Attn: Melanie L. Cyganowski, Partner

Dear Ladies and Gentlemen:

    This letter agreement (this "Agreement") confirms the terms of the agreement among Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), Counsel, and the Company, pursuant to which Counsel has engaged Houlihan Lokey on behalf of the Ad Hoc Committee, effective as of January 1, 2020 (the "Engagement Effective Date"), as a financial advisor to provide financial advisory and investment banking services, as further described below.

    1.    **Scope of Engagement.**  Pursuant to its engagement on behalf of the Ad Hoc Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by Counsel, assisting Counsel and the Ad Hoc Committee in, and advising Counsel and the Ad Hoc Committee in connection with:

    (a)    Reviewing and analyzing the financial and operating statements of the Company;

Page 2

(b)     Evaluating the assets and liabilities of the Company;

(c)     Analyzing business plans, forecasts, and related financial projections of the Company;

(d)     Evaluating financing and capital raising alternatives available to the Company;

(e)     Assessing the financial issues relating to any settlement of opioid-related litigations and liabilities;

(f)     Monitoring and advising the Client Group with regard to (i) the sale process involving the international pharmaceutical companies owned by the Sackler family (collectively, the "IACs") as contemplated in the current settlement framework between the Company and the Ad Hoc Committee and (ii) any other relevant issues;

(g)     Providing expert advice and testimony regarding financial matters related to any Transaction(s), to the extent appropriate and necessary;

(h)     Developing and evaluating options and implementing strategies for any settlement of opioid-related litigations and liabilities, including participation in negotiations among the Ad Hoc Committee, the Company, the Company's other creditors, and other parties in interest; and

(i)     Such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and Counsel.

As used herein, the term "Transaction" means the consummation of any of the following, whether through one transaction or a series of transactions:

(a)     The consummation of any plan of reorganization, liquidation, scheme or similar arrangement (but excluding any plan under chapter 7 of the Bankruptcy Code); or

(b)     Any sale, transfer or assumption of all or substantially all of the assets or liabilities of the Company (including, without limitation, any consolidation or merger involving any entity comprising all or substantially all of the Company).

2.     **Obligation to Pay Fees.**  Notwithstanding anything to the contrary set forth herein, including, without limitation the "Scope of Engagement" set forth in Section 1 of this Agreement and the Company's obligation to pay the fees and expenses as set forth in Sections 3, 4 and 6 of this Agreement, this Agreement is in all respects subject to that certain *Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* entered by the Bankruptcy Court on December 2, 2019 [Docket No. 553] (the "Reimbursement Order"), pursuant to which the Company is authorized, but not directed, to pay the reasonable and documented fees and expenses of the Ad Hoc Committee's professionals in accordance with the terms and conditions of that certain reimbursement agreement, dated September 15, 2019, by and among the Debtors and the Ad Hoc Committee (the "Reimbursement Agreement").  Any and all of the Company's obligations hereunder to pay the fees and expenses of Houlihan Lokey set forth in Sections 3, 4, and 6 of this Agreement, including, without limitation, the Monthly Fees and the Deferred Fee, and the indemnification, contribution, and reimbursement obligations under Section 14 hereof (but solely to the extent such obligations relate to any loss, claim, damage, liability, or expense which arises out of any action or failure to act by the applicable Indemnified Party (as defined below) that occurred after the termination of the Reimbursement Agreement and/or the time at which the Reimbursement Order ceases to be in full force and effect), shall terminate

immediately upon termination of the Reimbursement Agreement and/or the time at which the Reimbursement Order ceases to be in full force and effect in each case with respect to all professionals subject to the Reimbursement Agreement and Reimbursement Order, and not only with respect to Houlihan Lokey; provided, however, that termination of the Reimbursement Agreement shall not terminate the Company's obligation to pay a Deferred Fee to Houlihan Lokey for any Transaction consummated during the term of this Agreement or the Tail Period, as defined below; and provided further that, if the Reimbursement Agreement is terminated prior to consummation of a Transaction, Houlihan Lokey shall be paid on or soon after the consummation of a Transaction during the Tail Period an amount equal to a pro-rated portion of the Deferred Fee calculated as (i) the number of days elapsed from the Engagement Effective Date through the date of termination of the Reimbursement Agreement divided by (ii) 366 (i.e., the number of days that would elapse from the Engagement Effective Date to a Transaction if such Transaction were to occur on December 31, 2020) and multiplied by (iii) $7,000,000 (i.e., the Deferred Fee, as defined below). For the avoidance of doubt, (i) termination of this Agreement by Counsel to the Ad Hoc Committee in accordance with Section 4 hereof shall not cause the amount of the Deferred Fee to be reduced on a pro rata basis in accordance with the immediately preceding sentence and (ii) no portion of the Deferred Fee shall be paid prior to the consummation of a Transaction. Each of the parties hereto acknowledges and agrees that all fees and expenses of Houlihan Lokey incurred in connection with or relating to the allocation of value among the Debtors' creditors shall be segregated and recorded separately and shall be sought by separate application only upon the earlier of (i) the approval by the Bankruptcy Court of a restructuring support agreement among the parties, including the Debtors and each member of the Ad Hoc Committee or (ii) confirmation of a chapter 11 plan for the Debtors.

Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company's obligation to pay Houlihan Lokey's fees and expenses hereunder is terminated or otherwise ceases for any reason. In such event, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of the termination or cessation of the Company's obligation to pay such fees and expenses, subject to any requirements imposed by the Bankruptcy Court.

3. **Fees**. In consideration of Houlihan Lokey's acceptance of this engagement, the Company shall pay Houlihan Lokey the following:

(a) *Monthly Fees*: In addition to the other fees provided for herein, upon the Engagement Effective Date, and on every monthly anniversary of the Engagement Effective Date during the term of this Agreement, Houlihan Lokey shall be paid in advance, a nonrefundable cash fee of $200,000 ("Monthly Fee"). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. If this Agreement is terminated before the end of 6 months from the Engagement Effective Date (other than a termination for Cause), Houlihan Lokey shall be paid, on the effective date of such termination, the difference between $1,200,000 and the sum of all Monthly Fees previously paid to Houlihan Lokey on a timely basis.

Fifty percent (50%) of the Monthly Fees paid on a timely basis to Houlihan Lokey under this Agreement after the fourth Monthly Fee shall be credited against the Deferred Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Deferred Fee be reduced below zero; and

(b) *Deferred Fee*: In addition to the other fees provided for herein, upon the consummation of a Transaction, Houlihan Lokey shall be paid a fee in cash (the "Deferred Fee") equal to

Page 4

$7,000,000. The Deferred Fee shall be earned and payable upon the consummation of a Transaction. Notwithstanding anything to the contrary herein, only one Deferred Fee shall be payable hereunder.

4.     **Term and Termination.**  This Agreement may be terminated at any time by Houlihan Lokey or by Counsel on behalf of the Ad Hoc Committee upon thirty (30) days' prior written notice of termination to the other party.  The Company's obligations to pay the fees and expenses set forth in Section 3 and Section 6 of this Agreement shall terminate upon the earlier of (i) the termination of the Reimbursement Agreement, (ii) the time at which the Reimbursement Order ceases to be in full force and effect, (iii) the effective date of any chapter 11 plan or (iv) the consummation of any Transaction; provided, however, that termination of the Reimbursement Agreement shall not terminate the Company's obligation to pay a Deferred Fee to Houlihan Lokey for any Transaction consummated during the term of this Agreement or the Tail Period, as defined below.

The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3 and (ii) Houlihan Lokey's right to receive any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement (other than termination of this Agreement for Cause by Counsel on behalf of the Ad Hoc Committee and except as otherwise set forth in section 2 hereof), Houlihan Lokey shall be entitled to full payment of the Deferred Fee described in this Agreement so long as a Transaction is consummated during the term of this Agreement, or within eighteen (18) months after the date of expiration or termination of this Agreement ("Tail Period").  "Cause" shall mean the willful misconduct, gross negligence, bad faith, or actual fraud by Houlihan Lokey which results in a material failure to perform the services set forth in Section 1 of this Agreement. If Counsel reasonably believes that Cause exists, then, within ten (10) days of becoming aware of such Cause, Counsel shall give Houlihan Lokey a notice of its intent to terminate for Cause, specifying the conduct constituting such alleged Cause, and Houlihan Lokey shall then have thirty (30) days to cure such conduct.  If Houlihan Lokey fails to cure such conduct within such time period, then Counsel may terminate this Agreement for Cause upon written notice to Houlihan Lokey.  For the avoidance of doubt, Houlihan Lokey shall be entitled to its Deferred Fee unless and until there is a final judicial determination from the Bankruptcy Court that Houlihan Lokey has engaged in such willful misconduct, gross negligence, bad faith, or actual fraud.

5.     **Reasonableness of Fees.**  The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for Houlihan Lokey.  Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for Houlihan Lokey.  Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company and the Ad Hoc Committee.

6.     **Expenses.**  In addition to all of the other fees and expenses described in this Agreement and regardless of whether any Transaction is consummated, the Company shall, upon submission of a monthly fee application by Houlihan Lokey in accordance with the Reimbursement Order, and approval thereof, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses, including, but not limited to, (i) travel-related and certain other expenses, without regard to

volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors; and (ii) research, database and similar information charges paid to third-party vendors, and reprographics expenses to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

In addition to any other reimbursement rights Houlihan Lokey may have hereunder, Houlihan Lokey shall, in addition, be reimbursed by the Company for fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) any disputes related to Houlihan Lokey's retention and (ii) the payment of all fees and expenses due to Houlihan Lokey hereunder, including, without limitation, in connection with any fee dispute.

7. **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall, unless otherwise expressly permitted herein, be made in lawful money of the United States, and shall be made in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

8. **Information.** The Company will use commercially reasonable efforts to provide Houlihan Lokey with access to management and other representatives of the Company and (to the extent possible) other participants in the Transaction, as reasonably requested by Houlihan Lokey. The Company will use commercially reasonable efforts to furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder (other than information the Company deems subject to attorney client or other privilege), all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. In addition, with respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the Company and IACs, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Company's and the IACs' management, as the case may be, as to the matters covered thereby. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company and the IACs or otherwise reviewed by, or discussed with, Houlihan Lokey. The Client Group understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Client Group acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Company, IACs, or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. The Client Group acknowledges that Houlihan Lokey's ability to render the services hereunder will depend upon the extent of cooperation that it receives from the Company, and the Company's advisors. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Client Group in evaluating a Transaction, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey. Notwithstanding the two immediately preceding sentences, the Ad Hoc Committee may furnish Houlihan Lokey's advice and materials relating to a Transaction in response to any subpoena, court order, or similar legal demand, provided that prompt prior written notice thereof shall be given to Houlihan Lokey so that Houlihan Lokey may seek a protective

order or other appropriate remedy, and, if Houlihan Lokey fails to obtain such remedy, the Ad Hoc Committee may disclose only that information which its counsel advises it is legally compelled to disclose. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent, provided that the foregoing restriction shall not apply in respect of submissions required to be made by the Company to the Bankruptcy Court in connection herewith. At the direction of Counsel, certain communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Ad Hoc Committee in connection with this matter, will be considered in preparation for litigation relating to the restructuring of the Company, and accordingly, will be subject to the attorney-client privilege and work-product doctrine.

9. **Limitations on Services as Advisor.** Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing by the parties hereto (including the Company) and the UCC; provided, however, that no agreement in writing shall be required for modifications to Houlihan Lokey's services that do not result in modifications to the fees set forth in this Agreement . Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Client Group, and that Houlihan Lokey is not acting as an agent or fiduciary of the Client Group, the Company or any other person or entity in connection with this engagement, and each of the Client Group and the Company agrees that it shall not make, and hereby waives, any claim based on an assertion of such an agency or fiduciary relationship. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for any decision by any Member, the Company or any other party on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by such party in its sole discretion. Houlihan Lokey is being retained on behalf of, and will report solely to, the Client Group, notwithstanding that Houlihan Lokey's fees and expenses will be paid by the Company, and that certain covenants and representations are made by the Company herein. It is understood that Houlihan Lokey is providing the services hereunder solely to, and will take direction solely from, the Ad Hoc Committee or its duly authorized representative and no other party (including, without limitation, any individual Member).

10. **Additional Services.** To the extent Houlihan Lokey is requested by the Client Group to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey only such fees as shall be mutually agreed upon by the parties hereto (including the Company) and the UCC in writing, in advance.

11. **Required Services.** In the event this Agreement is terminated in accordance with Section 2 or Section 4 of this Agreement, if Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable and documented related out-of-pocket costs and expenses, including, among other things, the reasonable and documented legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

12. **Credit.** After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith.

Page 7

13. **Choice of Law; Jury Trial Waiver; Jurisdiction**. **THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF THE PARTIES (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (THE "BANKRUPTCY COURT"), WHICH COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND AGREES TO VENUE IN SUCH COURTS. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE EXCLUSIVELY TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN THE BANKRUPTCY COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN THE BANKRUPTCY COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT ONE STAMFORD FORUM 201 TRESSER BOULEVARD, STAMFORD, CT 06901.**

14. **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees, (i) to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or the matters contemplated by, this Agreement, and (ii) to reimburse each Indemnified Party for all reasonable and documented expenses (including, without limitation, the reasonable and documented fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to such engagement or matter. However, the Company shall not be liable under the foregoing indemnification provision for any loss, claim, damage, or liability (or related expenses) which arises out of any action or failure to act by such Indemnified Party and is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct, gross negligence, bad faith or actual fraud of such Indemnified Party.

Page 8

If for any reason, the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any Indemnified Party or to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of the losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions in such proportion as is appropriate to reflect the relative benefits received by the Ad Hoc Committee and/or the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by such Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Ad Hoc Committee and/or the Company (and their respective affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey pursuant to this Agreement except, with respect to an Indemnified Party, for any losses, claims, damages, liabilities or expenses to the extent they both arise out of any action or failure to act by such Indemnified Party and are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence, bad faith, actual fraud, or willful misconduct of such Indemnified Party. Relative benefits received by the Ad Hoc Committee and/or the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders and creditors (including, without limitation, the Ad Hoc Committee), as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement. None of Counsel, any Member or the Company may settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an Indemnified Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to any Member or any person or entity asserting claims on behalf of or in right of any Member arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by the Ad Hoc Committee which arise out of any action or failure to act by such Indemnified Party and are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct, gross negligence, bad faith or actual fraud of such Indemnified Party, and no Indemnified Party shall have any liability whatsoever to the Company, Counsel or any other person or entity.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of any entity comprising all or substantially all of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

The indemnity, reimbursement, and other obligations and agreements of the Client Group and any entity comprising all or substantially all of the Company set forth herein (i) shall apply to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, and (iii) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement. The Company and the Client Group agree that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

15.    **Responsibility for Obligations.**  Notwithstanding anything herein to the contrary, neither the Ad Hoc Committee, any of the Members, nor any of their respective advisors or professionals (including, but not limited to, Counsel), shall be liable for the fees, expenses or other amounts owed by the Company to Houlihan Lokey hereunder.

16.    **Miscellaneous.**  This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed on behalf of the Company.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than (i) the UCC (solely with respect to their consent rights hereunder), (ii) the Company and (iii) the Client Group, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third-party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.  This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto (including the Company).

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, each of the parties hereto will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Company's equity interests as well as the Company's executive officers, and (ii) certain identifying information necessary to verify such party's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument.  By executing this Agreement, the Company confirms that all such information provided to Houlihan Lokey is accurate and complete.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

Page 10

The signatories hereto have the requisite power and authority to enter into this Agreement. Counsel has the requisite power and authority to enter into this Agreement in the capacity as counsel to the Ad Hoc Committee and with the consent and authorization of the Ad Hoc Committee. Upon entry of an order from the Bankruptcy Court approving this Agreement (or such earlier time as the Ad Hoc Committee, the Debtors, the UCC and the U.S. Trustee may agree in writing), this Agreement shall be duly and validly authorized by all necessary action on the part of the Company, shall be deemed duly executed and delivered by the Company and shall constitute a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Client Group confirms that the Ad Hoc Committee is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

Each of the Company and the Client Group understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, one or more entities comprising the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to one or more entities comprising the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about the Company, a Transaction or such other parties, or that otherwise may be of interest to the Client Group, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Client Group or to use such information on the Client Group's behalf.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, each of the Client Group and the Company agrees that, subject to the terms of the Protective Order, Houlihan Lokey may share information obtained from the Company, the Client Group and other parties hereunder with other members of the Houlihan Lokey Group, and may perform the services contemplated hereby in conjunction with such other members.

Page 11

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

**HOULIHAN LOKEY CAPITAL, INC.**

By: _____
Saul E. Burian
Managing Director

Accepted and agreed to as of the Engagement Effective Date:

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:   */s/ Kenneth H. Eckstein*
      Kenneth H. Eckstein
      Partner

**BROWN RUDNICK LLP**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:   */s/ Steven D. Pohl*
      Steven D. Pohl
      Partner

**GILBERT LLP**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:   */s/ Scott D. Gilbert*
      Scott D. Gilbert
      Partner

**OTTERBOURG P.C.**, solely in its capacity as counsel to, on behalf of, and with the consent and authorization of, the Ad Hoc Committee

By:   */s/ Melanie L. Cyganowski*
      Melanie L. Cyganowski
      Partner

Page 12

Acknowledged and agreed to as of the Effective Date:

**PURDUE PHARMA L.P.**, on its own behalf, and on behalf of its subsidiaries and affiliates

By:  _____

Jon Lowne
Chief Financial Officer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

**PURDUE PHARMA L.P.,** *et al.,*

Debtors.[1]

Chapter 11

Case No. 19-23649 (RDD)

(Jointly Administered)

---

## SECOND SUPPLEMENTAL ORDER AUTHORIZING THE DEBTORS TO ASSUME THE REIMBURSEMENT AGREEMENT AND PAY THE FEES AND EXPENSES OF THE AD HOC COMMITTEE'S PROFESSIONALS

Upon the Reimbursement Motion [ECF No. 394] and the Reimbursement Order [ECF No. 553], as supplemented prior to the date hereof; and upon the motion, by notice of presentment dated November 24, 2020 (the "**Supplemental Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for the entry of an order (this "**Order**") supplementing the Reimbursement Order to authorize the Debtors to pay the Allocation Fees on the terms set forth therein; and the Court having jurisdiction to decide the Reimbursement Motion and the Supplemental Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Supplemental Motion.

Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Reimbursement Motion and the Supplemental Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Reimbursement Motion and the Supplemental Motion and the opportunity for a hearing on the Supplemental Motion having been provided; and there being no objections to the Supplemental Motion; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Reimbursement Motion on November 19, 2019, and no additional hearing being required with respect to the Supplemental Motion; and after due deliberation the Court having determined that the legal and factual bases set forth in the Reimbursement Motion and the Supplemental Motion establish good and sufficient cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; now, therefore, it is hereby

**IT IS HEREBY ORDERED THAT:**

1.      The Supplemental Motion is granted to the extent set forth herein.

2.      The Reimbursement Order is supplemented to authorize the payment of the Allocation Fees (as defined in the Reimbursement Order) subject to all other terms of the Reimbursement Order with the exception of the precondition of a Court-approved RSA or with respect to the ERF.  The filing of consolidated monthly invoices in respect of the Allocation Fees by the Professionals contemporaneously with the filing of the Supplemental Motion is hereby deemed to have been in compliance with the Reimbursement Order as supplemented hereby.

3.      Except as expressly set forth herein, all other terms of the Reimbursement Order shall remain valid and fully enforceable.

4.      The contents of the Supplemental Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Rules, and no other or further notice of the Supplemental Motion or the entry of this Order shall be required.

5.      Nothing in this Order shall be deemed to constitute (i) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (ii) a waiver of any rights, claims or defenses of the Debtors.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Supplemental Motion.

7.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of these chapter 11 cases to cases under chapter 7.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:   December 22, 2020
       White Plains, New York

*/s/Robert D. Drain*
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

**Summary of Compensation By Project Code**

**SUMMARY OF COMPENSATION BY
PROJECT CODE FOR THE APPLICATION PERIOD**

| Project Code | Project Category | Total Billed Hours | Average Hourly Rate | Fees Recorded |
|---|---|---|---|---|
| PU01 | Asset Analysis and Recovery | 14.7 | $1,070.20 | $15,732.00 |
| PU03 | Business Operations | 2.0 | $895.00 | $1,790.00 |
| PU04 | Case Administration | 80.8 | $1,122.63 | $90,708.50 |
| PU05 | Claims Analysis | 77.8 | $1,369.88 | $106,576.50 |
| PU06 | Employment and Fee Applications | 17.1 | $685.00 | $11,713.50 |
| PU08 | Litigation: Contested Matters, Adversary | 2.6 | $895.00 | $2,327.00 |
| PU09 | Meetings and Communications with Ad Hoc | 44.6 | $1,270.92 | $56,683.00 |
| PU11 | Plan and Disclosure Statement | 137.0 | $1,191.73 | $163,267.50 |
| | **TOTALS:** | **376.6** | **$1,191.71** | **$448,798.00** |

## BUDGET V. ACTUAL FEES REQUESTED

| Project Code | Project Category | Budgeted Hours | Actual Hours | Budgeted Fees | Actual Fees |
|---|---|---|---|---|---|
| PU01 | Asset Analysis and Recovery | 90 | 14.7 | $85,000.00 | $15,732.00 |
| PU02 | Assumption and Rejection of Leases and Contract | 0 | 0 | $0 | $0 |
| PU03 | Business Operations | 30 | 2.0 | $50,000.00 | $1,790.00 |
| PU04 | Case Administration | 100 | 80.8 | $105,000.00 | $90,708.50 |
| PU05 | Claims Analysis | 90 | 77.8 | $75,000.00 | $106,576.50 |
| PU06 | Employment and Fee Applications | 45 | 17.1 | $30,000.00 | $11,713.50 |
| PU07 | Emergency Financing | 0 | 0 | $0 | $0 |
| PU08 | Litigation: Contested Matters, Adversary | 10 | 2.6 | $15,000.00 | $2,327.00 |
| PU09 | Meetings and Communications with Ad Hoc | 80 | 44.6 | $90,000.00 | $56,683.00 |
| PU10 | Non-Working Travel | 0 | 0 | $0 | $0 |
| PU11 | Plan and Disclosure Statement | 225 | 137.0 | $300,000.00 | $163,267.50 |
| **TOTAL:** | | **670.0** | **376.6** | **$750,000.00** | **$448,798.00** |

## PROPOSED STAFFING PLAN APPLICATION PERIOD

| Category of Timekeeper | Estimated Number of Timekeepers | Actual Number of Timekeepers | Average Hourly Rate Based on Actual Timekeepers |
|---|---|---|---|
| Partner | 1 | 1 | $1400.00 |
| Of Counsel | 1 | 1 | $895.00 |
| Associate | 2 | 1 | $675.00 |
| Paralegal | 1 | 1 | $325.00 |

# EXHIBIT D

**Summary of Hours By Professional**

## SUMMARY OF HOURS BILLED BY
## PROFESSIONALS FOR THE APPLICATION PERIOD

### Attorney Hours for the Application Period

| Professional | Year Admitted | Rate Per Hour | No. of Hours | Total Compensation |
|---|---|---|---|---|
| Melanie L. Cyganowski ("MLC") Partner | 1982 | $1400.00 | 238.4 | $333,760.00 |
| Jennifer S. Feeney ("JSF") Of Counsel | 1998 | $895.00 | 108.9 | $97,465.50 |
| Robert C. Yan ("RCY") Associate | 2002 | $675.00 | 23.0 | $15,525.00 |
| | **TOTAL** | | **370.3** | **$446,750.50** |

### Paraprofessional Hours for the Application Period

| Professional | Year Admitted | Rate Per Hour | No. of Hours | Total Compensation |
|---|---|---|---|---|
| Jessica K. Hildebrandt ("JKH") Paralegal | N/A | $325.00 | 6.3 | $2,047.50 |
| | **TOTAL** | | **6.3** | **$2,047.50** |

**Total Fees for the Application Period By Position**

| Professional | Blended Rate | Total Hrs. | Total Fees Recorded |
|---|---|---|---|
| Partner | $1400.00 | 238.4 | $333,760.00 |
| Of Counsel | $895.00 | 108.9 | $97,465.50 |
| Associate | $675.00 | 23.0 | $15,525.00 |
| Paralegal | $325.00 | 6.3 | $2,047.50 |
| **Blended Professional Rate** | $1,191.71 | **376.6** | **$448,798.00** |

**Blended Hourly Rate for Professionals Billing to Case v. Blended Hourly Rate of All Other Professionals for Last 12 Months**

| Professionals and Paraprofessionals | Blended Hourly Rate of Professionals and Paraprofessionals Not Billing to this Matter for Prior 12-Month Period by Position | Blended Hourly Rate of Professionals Billed for Application Period by Position |
|---|---|---|
| Partner | $963.98 | $1,400.00 |
| Of Counsel | $802.01 | $895.00 |
| Associate | $455.44 | $675.00 |
| Paraprofessional and Other Staff | $310.00 | $325.00 |
| Blended Attorney Rate/Total Attorney Fees | $783.17 | $1,191.71 |
| Blended Paralegal Rate | $310.00 | $325.00 |

# EXHIBIT E

**Time Entries**

6492567.1

# Otterbourg P.C.

230 Park Avenue

New York, NY  10169-0075

March 14, 2021
BILL NO. 215866

Client/Matter No.:     20186/0002
Matter Name:           CHAPTER 11
Billing Partner:       RL STEHL

For Services Rendered Through December 31, 2020:

---

Phase: PU01                              ASSET ANALYSIS AND RECOVERY

---

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/09/20 JSF | Telephone Call(s) Participate in ACH and NCSG Conference re: Sackler/Purdue Due Diligence | 2.20 | 1,969.00 |
| 10/13/20 JSF | Telephone Call(s) Participate in Video Conference with Full AHC re: Sackler and IAC Due Diligence Update | 1.00 | 895.00 |
| 10/19/20 JSF | Telephone Call(s) Participate in Conference with UCC, AHC and NCSG re: Insider Transfer Analysis | 1.40 | 1,253.00 |
| 10/19/20 JSF | Examine Documents Review of Debtors' Omnibus Reply to UCC Motion to Compel Production of Privileged Documents | .60 | 537.00 |
| 10/19/20 JSF | Examine Documents Review of Non-Cash Transfers Deck Prepared by UCC for Discussion | .50 | 447.50 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY 10169-0075

Client/Matter:  20186/0002                                    March 14, 2021
Page 2                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/01/20 MLC | Analysis of Memorandum Review of condensed summary of Steward deposition | .80 | 1,120.00 |
| 11/01/20 MLC | Analysis of Memorandum Review of Cecil Pickett Deposition Summary | .70 | 980.00 |
| 11/02/20 JSF | Examine Documents Review of Summary of Cecil Pickett Deposition | .30 | 268.50 |
| 11/02/20 JSF | Examine Documents Review of Summary of John Stewart Deposition | .30 | 268.50 |
| 11/03/20 JSF | Examine Documents Review Summary of Deposition of Mark Timney | .30 | 268.50 |
| 11/03/20 MLC | Analysis of Memorandum Review of memo from KL summarizing deposition of Timnery | .90 | 1,260.00 |
| 11/03/20 MLC | Analysis of Memorandum Review of memo prepared by KL re upcoming deposition and discovery schedule of Sackler family | .70 | 980.00 |
| 11/09/20 JSF | Examine Documents Review of Company Value/Sale Scenario | .30 | 268.50 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 3                                                           BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/09/20 MLC | Analysis of Memorandum Review of summary of deposition of Kathe Sackler | .60 | 840.00 |
| 11/10/20 JSF | Examine Documents Review of Summary of Kathe Sackler Deposition | .20 | 179.00 |
| 11/11/20 JSF | Examine Documents Review of HL/FTI Updated Cash Flow Analysis | .20 | 179.00 |
| 11/12/20 JSF | Telephone Call(s) Participate in Conference with UCC, AHC and NCSG: Presentation by UCC re: Sacklers | 1.80 | 1,611.00 |
| 11/13/20 JSF | Examine Documents Review Summary of Mortimer Sackler Deposition | .30 | 268.50 |
| 11/16/20 JSF | Examine Documents Review of Sacklers Response to Objections to Motion for Comfort Order to Pay DOJ | .20 | 179.00 |
| 11/23/20 MLC | Analysis of Memorandum Review of summary of deposition of Dr Richard Sackler | .60 | 840.00 |
| 12/01/20 MLC | Analysis of Memorandum Review of summary of deposition of Jonathan White | .80 | 1,120.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:  20186/0002                                  March 14, 2021
Page 4                                                      BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| TOTAL PHASE PU01 | | 14.70 | $15,732.00 |

---

Phase: PU03                                           BUSINESS OPERATIONS

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/20/20 JSF | Telephone Call(s) Participate in Video Conference Presentation by Debtors re: PHI | 1.20 | 1,074.00 |
| 12/07/20 JSF | Examine Documents Review of Debtors' Response to Status of Due Diligence Requests of Interested Purchaser | .40 | 358.00 |
| 12/22/20 JSF | Examine Documents Review of Summary of Updated Debtors' Business Plan Forecast | .40 | 358.00 |
| TOTAL PHASE PU03 | | 2.00 | $1,790.00 |

---

Phase: PU04                                            CASE ADMINISTRATION

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/04/20 MLC | Analysis of Memorandum Review of article about Sacklers' wealth | .70 | 980.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                March 14, 2021
Page 5                                                      BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/06/20<br>MLC | Analysis of Memorandum<br>Review of Stipulation and Agreed Order for<br>the Withdrawal without Prejudice of the<br>City of Bellefontaine Neighbors,<br>Missouri's Motion to Allow Late Filed Claim | .40 | 560.00 |
| 10/07/20<br>MLC | Analysis of Memorandum<br>Review of articles re plea agreement<br>between Purdue Pharma and Sacklers and DOJ | .70 | 980.00 |
| 10/07/20<br>MLC | Correspondence<br>Review of Guard email re DOJ and NCSG<br>reaction | .30 | 420.00 |
| 10/08/20<br>MLC | Analysis of Memorandum<br>Review of Court order approving the request<br>from the UCC and NCSG to serve discovery on<br>current and former executives | .80 | 1,120.00 |
| 10/12/20<br>JSF | Correspondence<br>E-Mail to Debtor re: Payment of Monthly Fee<br>Statement | .20 | 179.00 |
| 10/12/20<br>MLC | Analysis of Memorandum<br>Review of Sackler Family quarterly fee<br>analysis | .60 | 840.00 |
| 10/12/20<br>MLC | Analysis of Memorandum<br>Review of KL Update re: Lowne/KEIP | .70 | 980.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

```
Client/Matter:   20186/0002                          March 14, 2021
Page 6                                               BILL NO. 215866
```

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/14/20 MLC | Analysis of Memorandum Review of UCC objection to motion filed by Mortimer Sackler to certain discovery demands and privilege assertions | .80 | 1,120.00 |
| 10/15/20 JSF | Examine Documents Review of Information Sharing Protocol with Debtors for Sign Off by AHC Professionals | .30 | 268.50 |
| 10/15/20 MLC | Analysis of Memorandum Review of Debtors' motion objecting to UCC omnibus motion to compel discovery of privileged documents | .60 | 840.00 |
| 10/15/20 MLC | Correspondence Correspondence among AHC professionals re discovery sharing protocol | .30 | 420.00 |
| 10/16/20 JSF | Examine Documents Review of Updates to AHC re: Status of Pending Motions and Discovery | .60 | 537.00 |
| 10/18/20 MLC | Analysis of Memorandum Review and analysis of Debtors' motion re discovery costs and release of privilege documents | 1.30 | 1,820.00 |
| 10/21/20 JSF | Examine Documents Review of KEIP/KERP Proposed Resolution | .20 | 179.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002
Page 7

March 14, 2021
BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/26/20 MLC | Telephone Call(s) Telcon with Paul Singer re NCSG and claims process and next steps | .50 | 700.00 |
| 10/26/20 MLC | Correspondence Correspondence from HL re analysis of Sacklers' IACs | .20 | 280.00 |
| 10/27/20 MLC | Analysis of Memorandum Review of amended agenda for court hearing | .40 | 560.00 |
| 10/28/20 JSF | Telephone Call(s) Participate in Omnibus Court Hearing for Consideration of Among Other Things, Contribution by Sacklers to DOJ Settlement | 3.10 | 2,774.50 |
| 10/28/20 MLC | Court Appearance - General Hearing on KEIP/KERP motion and motion to confirm Payment of Funds by Sackler family under DOJ settlement | 3.20 | 4,480.00 |
| 10/29/20 MLC | Correspondence Correspondence with DPW re attorney fees for allocation services by AHC professionals | .40 | 560.00 |
| 10/29/20 RCY | Examine Documents Examine docket and pleadings for summary status. | 1.10 | 742.50 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 8                                                         BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/30/20<br>MLC | Correspondence<br>Correspondence with AHC, DPW, UCC and NCSG concerning proposed amendments to joint protective order | .50 | 700.00 |
| 10/30/20<br>MLC | Correspondence<br>Correspondence among AHC professionals re Debtors' motion to amend order re payment of fees for allocation services | .30 | 420.00 |
| 11/03/20<br>JSF | Examine Documents<br>Review of Proposed KEIP/KERP Resolution | .30 | 268.50 |
| 11/03/20<br>MLC | Correspondence<br>Review of memo from KL to AHC re governance protocol | .50 | 700.00 |
| 11/05/20<br>MLC | Conference call(s)<br>Conference call with Gilbert, Eckstein, Ringer, FTI and Troop re third party's potential offer to purchase Purdue Pharma | 1.00 | 1,400.00 |
| 11/05/20<br>MLC | Conference call(s)<br>Conference call with AHC counsel and FTI/HL re governance term sheet for new Purdue | 1.00 | 1,400.00 |
| 11/05/20<br>MLC | Analysis of Memorandum<br>Review and analysis of memorandum summarizing pleadings and filings | 1.10 | 1,540.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 9                                                           BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/05/20 RCY | Examine Documents<br>Examine case docket and prepare summary memo of documents filed. | 3.70 | 2,497.50 |
| 11/06/20 MLC | Conference call(s)<br>Conference call with Monitor giving status report in advance of written report | .80 | 1,120.00 |
| 11/06/20 RCY | Examine Documents<br>Follow up on case docket for update to summary memo. | .20 | 135.00 |
| 11/10/20 RCY | Examine Documents<br>Examine documents filed and prepare summary memo of filings. | 2.40 | 1,620.00 |
| 11/11/20 MLC | Conference call(s)<br>FTI/HL presentation to MSGE re Sackler assets | 1.00 | 1,400.00 |
| 11/17/20 JSF | Telephone Call(s)<br>Participate in Telephonic Omnibus Hearing re: KEIP/KERP and DOJ Settlements (JSF Portion) | 5.20 | 4,654.00 |
| 11/17/20 MLC | Court Appearance - General<br>Appeared at court hearing concerning approval of DOJ settlement agreement and other matters | 7.50 | 10,500.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                March 14, 2021
Page 10                                                     BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/17/20 RCY | Examine Documents<br>Prepare summary of case docket and pleadings | 2.30 | 1,552.50 |
| 11/20/20 MLC | Conference call(s)<br>Conference call with Purdue and AHC mediation subgroup re PHI | 1.00 | 1,400.00 |
| 11/23/20 MLC | Analysis of Memorandum<br>Review of Dow Jones motion to intervene in case | .70 | 980.00 |
| 11/23/20 RCY | Examine Documents<br>Examine court documents and prepare update memo to MLC and JSF. | 2.60 | 1,755.00 |
| 11/25/20 MLC | Correspondence<br>Correspondence concerning discovery protocol for Sacklers' depositions | .40 | 560.00 |
| 11/25/20 MLC | Correspondence<br>Correspondence with UCC and Troop re analysis of Sackler financial information | .80 | 1,120.00 |
| 11/30/20 MLC | Conference call(s)<br>Conference call meeting with Purdue re its presentation to Public Entities re PHI | 1.40 | 1,960.00 |

# OTTERBOURG P.C.

230 PARK AVENUE
NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 11                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/30/20 MLC | Correspondence<br>Correspondence with Andrew Troop and Brattle re follow up with Cornerstone re Consolidated POC | .60 | 840.00 |
| 12/01/20 RCY | Examine Documents<br>Follow up on case status and filings of relevance. | .60 | 405.00 |
| 12/03/20 MLC | Draft/revise<br>Reviewed and revised letter to David Klauder re pending interim fee application | .40 | 560.00 |
| 12/04/20 MLC | Telephone Call(s)<br>Telcon with Rachael Ringer re call with States re third party proposal | .20 | 280.00 |
| 12/04/20 MLC | Conference call(s)<br>Conference call with AHC counsel re review of third party proposal and related issues | 1.30 | 1,820.00 |
| 12/04/20 MLC | Correspondence<br>Correspondence among AHC counsel re unsealing motion and request for court chambers conference | .60 | 840.00 |
| 12/04/20 MLC | Correspondence<br>Review of Sacklers correspondence to court re request for chambers conference re unsealing of certain documents | .30 | 420.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 12                                                          BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/04/20<br>MLC | Correspondence<br>Review of Boston Globe correspondence with parties concerning request for chambers conference to discuss unsealing of certain documents | .30 | 420.00 |
| 12/04/20<br>MLC | Analysis of Memorandum<br>Review and analysis of memorandum from third party counsel outlining new purchase proposal | 1.30 | 1,820.00 |
| 12/04/20<br>MLC | Correspondence<br>Review of UCC response to correspondence from Sacklers and others concerning request for court chambers conference re unsealing issues | .30 | 420.00 |
| 12/04/20<br>MLC | Correspondence<br>Review of NCSG response to correspondence concerning request for chambers conference | .20 | 280.00 |
| 12/05/20<br>MLC | Correspondence<br>Correspondence among AHC professionals re third party revised proposal | .40 | 560.00 |
| 12/07/20<br>JSF | Examine Documents<br>Review of Docket Updates - Summaries of Recently Filed Motions | .40 | 358.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY 10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 13                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/07/20 JSF | Examine Documents Review of Media Intervention Motion and Statements of NCSG and Committee on Accountability in Support | .80 | 716.00 |
| 12/07/20 MLC | Correspondence Correspondence to Judge Drain chambers from proposed amicus party | .20 | 280.00 |
| 12/07/20 MLC | Correspondence Review of correspondence from PJT responding to UCC email re unsealing of certain privilege documents | .30 | 420.00 |
| 12/07/20 MLC | Analysis of Memorandum Review of KL memo to AHC committee re Media Intervention Motion and other open issues | .70 | 980.00 |
| 12/07/20 MLC | Analysis of Memorandum Review of summary of various pending motions before the Court | .60 | 840.00 |
| 12/07/20 RCY | Examine Documents Examine docket and filings and prepare summary memo on same. | 3.60 | 2,430.00 |
| 12/08/20 MLC | Telephone Call(s) Telcon with Ken Eckstein re general status of matters and next steps | .40 | 560.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 14                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/09/20 MLC | Telephone Call(s) Call with Andrew Troop re next steps re Sackler negotiations | .20 | 280.00 |
| 12/09/20 RCY | Examine Documents Follow up on recent filings. | .20 | 135.00 |
| 12/10/20 MLC | Correspondence Correspondence among AHC counsel re adjournment of pending motion re allocation fees before court | .40 | 560.00 |
| 12/10/20 RCY | Examine Documents Recent filings in preparation of memo. | .30 | 202.50 |
| 12/11/20 JSF | Examine Documents Review of Pending Motions for Omnibus Hearing | .20 | 179.00 |
| 12/14/20 MLC | Analysis of Memorandum Review of response by Sackler family to Boston Globe motion to intervene | .60 | 840.00 |
| 12/14/20 MLC | Analysis of Memorandum Review of summary of pending motions including motion to intervene and others | .70 | 980.00 |
| 12/14/20 RCY | Examine Documents Examine docket and recently filed pleadings and prepare summary memo of same. | 1.70 | 1,147.50 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY   10169-0075

Client/Matter:   20186/0002                                March 14, 2021
Page 15                                                     BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/15/20 JSF | Telephone Call(s) Participate in Omnibus Court Hearing | 1.50 | 1,342.50 |
| 12/15/20 MLC | Court Appearance - General Appeared at court hearing re fee applications and other pending matters | 2.20 | 3,080.00 |
| 12/17/20 MLC | Correspondence Review of correspondence by NAS Children Ad Hoc to Court re motion to file under seal | .50 | 700.00 |
| 12/18/20 MLC | Analysis of Memorandum Review of article re the Congressional Oversight Committee report | .30 | 420.00 |
| 12/18/20 MLC | Analysis of Memorandum Review of Sackler Family court filings responding to exceptions pleadings | .40 | 560.00 |
| 12/21/20 MLC | Analysis of Memorandum Review of summary of pending motions | .70 | 980.00 |
| 12/21/20 RCY | Examine Documents Examine docket activity and recent pleadings and prepare summary memo of same | 2.60 | 1,755.00 |
| 12/22/20 JSF | Examine Documents Review of Docket Updates and Status of Privilege and Disclosure Issues with Sacklers | .60 | 537.00 |

OTTERBOURG P.C.

230 PARK AVENUE
NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 16                                                        BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/22/20<br>MLC | Analysis of Memorandum<br>Review of HL/FTI analysis of debtors'<br>company financials including projections | 1.10 | 1,540.00 |
| 12/22/20<br>MLC | Correspondence<br>Correspondence with NCSG re sharing of PHI<br>materials | .20 | 280.00 |
| 12/22/20<br>MLC | Conference call(s)<br>Call with NCSG counsel re Brattle<br>discussions with Cornerstone | .40 | 560.00 |
| 12/28/20<br>JSF | Examine Documents<br>Review of Purdue Docket and Recently Filed<br>Motions | .40 | 358.00 |

TOTAL PHASE PU04                                        80.80      $90,708.50

Phase: PU05                                                   CLAIMS ANALYSIS

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/05/20<br>MLC | Conference call(s)<br>Mediation preparation call with AHC and<br>counsel | 1.50 | 2,100.00 |
| 10/05/20<br>MLC | Conference call(s)<br>Conference call re Sacklers' financial<br>information and analysis | 1.00 | 1,400.00 |

# Otterbourg P.C.

230 Park Avenue

New York, NY   10169-0075

Client/Matter:   20186/0002
Page 17

March 14, 2021
BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/06/20 MLC | Conference call(s) Conference call meeting with AHC and mediators | 2.00 | 2,800.00 |
| 10/06/20 MLC | Correspondence Correspondence with States and Jim Donahue and Troop re coordination of conferences between Brattle and Cornerstone to analyze States POC | .30 | 420.00 |
| 10/06/20 MLC | Correspondence Correspondence with AHC members and AHC professionals re mediation sessions, coordination of presentations and presenters | .90 | 1,260.00 |
| 10/07/20 MLC | Conference call(s) Conference call with AHC delegation re Sackler/Purdue financial information | 1.30 | 1,820.00 |
| 10/07/20 MLC | Analysis of Memorandum Review of claims analysis prepared by Gilbert re NAS and other abatement issues | .90 | 1,260.00 |
| 10/08/20 MLC | Correspondence Correspondence with DPW re discovery claims protocol re Consolidated POC | .50 | 700.00 |
| 10/09/20 MLC | Conference call(s) Meeting with AHC and NCSG mediation delegations re Sackler/Purdue financial information | 2.00 | 2,800.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 18                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/09/20 MLC | Draft/revise<br>Final review of claims protocol with DPW and Cornerstone/Brattle | .80 | 1,120.00 |
| 10/09/20 MLC | Correspondence<br>Correspondence between Pillsbury and DPW re Consolidated POC | .30 | 420.00 |
| 10/09/20 MLC | Correspondence<br>Correspondence with DPW and NCSG concerning signing of confidential disclosure protocol | .40 | 560.00 |
| 10/10/20 MLC | Correspondence<br>Follow up correspondence with DPW re discovery protocol and meetings with Cornerstone and Brattle | .30 | 420.00 |
| 10/12/20 MLC | Correspondence<br>Follow up correspondence with DPW and Brattle/Cornerstone re Consolidated POC | .60 | 840.00 |
| 10/12/20 MLC | Analysis of Memorandum<br>Review of Guard memo re next steps in mediation | .60 | 840.00 |
| 10/12/20 MLC | Analysis of Memorandum<br>Review of memorandum re mediation strategy | .40 | 560.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 19                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/12/20 MLC | Correspondence<br>Correspondence with Troop and Brattle re coordinating meeting and presentation of data with Cornerstone and DPW | .30 | 420.00 |
| 10/13/20 MLC | Conference call(s)<br>Financial presentation re Sacklers/IACs/Purdue | 1.00 | 1,400.00 |
| 10/13/20 MLC | Correspondence<br>Follow up correspondence with Guard and core states re Guard mediation memo and next steps | .60 | 840.00 |
| 10/13/20 MLC | Correspondence<br>Correspondence among AHC professionals re abatement term sheet amendments | .20 | 280.00 |
| 10/14/20 MLC | Correspondence<br>Correspondence from Gilbert re UCC presentation re Sacklers and fraudulent transfers | .20 | 280.00 |
| 10/14/20 MLC | Correspondence<br>Review of Troop memo attaching letter from AG Barr to NCSG States re Purdue/Sacklers | .70 | 980.00 |
| 10/14/20 MLC | Correspondence<br>Correspondence with Mediators, AHC professionals and NCSG re up-coming all hands mediation session | .60 | 840.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                     March 14, 2021
Page 20                                                         BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/15/20 MLC | Conference call(s) Conference with Cornerstone and Brattle regarding Brattle/States' Model | 1.00 | 1,400.00 |
| 10/15/20 MLC | Analysis of Memorandum Review and analysis of Purdue slide presentation re update on company financial status | 1.20 | 1,680.00 |
| 10/15/20 MLC | Correspondence Review of DOJ statement re position in mediation and settlement objectives | .80 | 1,120.00 |
| 10/18/20 MLC | Conference call(s) Conference call with AHC counsel and AHC mediation parties re plan discussions | .80 | 1,120.00 |
| 10/19/20 MLC | Conference call(s) Zoom meeting with UCC and NCSG and AHC re UCC litigation analysis | 1.30 | 1,820.00 |
| 10/19/20 MLC | Conference call(s) Zoom meeting with Sackler family and AHC representatives | 1.10 | 1,540.00 |
| 10/19/20 MLC | Conference call(s) Zoom call with Brattle, Jim Donahue and Andrew Troop re preparing for meeting with Cornerstone | .50 | 700.00 |

# OTTERBOURG P.C.

230 PARK AVENUE
NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                              March 14, 2021
Page 21                                                  BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/20/20<br>MLC | Conference call(s)<br>Conference call with AHC mediation<br>subgroup re mediation strategy development | 2.00 | 2,800.00 |
| 10/20/20<br>MLC | Conference call(s)<br>Conference call with DPW and Cornerstone<br>with Brattle and Troop re Consolidated POC | 1.00 | 1,400.00 |
| 10/20/20<br>MLC | Correspondence<br>Correspondence with Brattle and<br>Cornerstone re presentation of factual<br>analysis of POC | .60 | 840.00 |
| 10/20/20<br>MLC | Correspondence<br>Correspondence with AHC/NCSG mediation<br>subgroup re DOJ and Sackler negotiations | .80 | 1,120.00 |
| 10/20/20<br>MLC | Analysis of Memorandum<br>Review of outline prepared by KL re<br>priorities in mediation and case | 1.10 | 1,540.00 |
| 10/21/20<br>MLC | Conference call(s)<br>Conference call with Andrew Troop and<br>Brattle to debrief from call with<br>DPW/Cornerstone the day before | .50 | 700.00 |
| 10/21/20<br>MLC | Correspondence<br>Follow up correspondence between Brattle<br>with Cornerstone re review of additional<br>documents | .40 | 560.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 22                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/21/20 MLC | Analysis of Memorandum<br>Review and analysis of DOJ settlement with Purdue | 1.40 | 1,960.00 |
| 10/23/20 MLC | Conference call(s)<br>Conference call meeting with mediators and AHC mediation subgroup | 1.00 | 1,400.00 |
| 10/26/20 MLC | Correspondence<br>Correspondence with KL re mediation strategy concerning governance issues | .80 | 1,120.00 |
| 10/26/20 MLC | Conference call(s)<br>Conference call with KL and Aaron Cahn re VA plan issues and concerns | .50 | 700.00 |
| 10/27/20 JSF | Examine Documents<br>Review of Summary of Canadian Purdue Claims | .30 | 268.50 |
| 10/27/20 MLC | Telephone Call(s)<br>Telcon with Andrew Troop and Brattle and Jim Donahue re States POC | .40 | 560.00 |
| 10/27/20 MLC | Conference call(s)<br>Conference call with Cornerstone, DPW and Brattle re Consolidated States POC | 1.00 | 1,400.00 |
| 10/27/20 MLC | Conference call(s)<br>Conference call with professionals re Purdue and Sacklers | .60 | 840.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 23                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/27/20 MLC | Analysis of Memorandum Analysis of memo re claims filed by government in Purdue Canada and their impact on US plan | 1.10 | 1,540.00 |
| 10/27/20 MLC | Correspondence Reviewed correspondence between John Guard and David Nachman re reconciliation of NCSG and CSG claims | .70 | 980.00 |
| 10/27/20 MLC | Prepare for Meeting Reviewed documents in preparation for call with Brattle and Cornerstone re States POC | 1.30 | 1,820.00 |
| 10/27/20 MLC | Analysis of Memorandum Analysis of KL memo reviewing Debtors/DOJ settlement and critical terms | .90 | 1,260.00 |
| 10/28/20 MLC | Telephone Call(s) Follow up telcon with Andrew Troop re Consolidated State POC and related issues | .50 | 700.00 |
| 10/28/20 MLC | Conference call(s) Follow up call with AHC professionals re third party proposal | .60 | 840.00 |
| 10/28/20 MLC | Analysis of Memorandum Review of amendment filed by Debtors concerning its settlement with DOJ | .60 | 840.00 |

# OTTERBOURG P.C.

230 PARK AVENUE
NEW YORK, NY 10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 24                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/28/20 MLC | Analysis of Memorandum Analysis of memo prepared by Gilbert concerning status of various negotiations by mediators with key constituent groups | 1.20 | 1,680.00 |
| 10/28/20 MLC | Analysis of Memorandum Review of structure deck prepared by Gilbert firm | .60 | 840.00 |
| 10/28/20 MLC | Analysis of Memorandum Review of draft of mediation proposal deck to present to NCSG tomorrow in mediation session with mediators | .60 | 840.00 |
| 10/29/20 MLC | Correspondence Follow up correspondence with FTI.HL re settlement negotiations and next steps | .80 | 1,120.00 |
| 11/02/20 MLC | Correspondence Correspondence with Brattle and Troop re discussions and follow up with Cornerstone re States Consolidated POC | .60 | 840.00 |
| 11/03/20 MLC | Telephone Call(s) Telcon with Andrew Troop re Cornerstone/Brattle analysis and follow up | .80 | 1,120.00 |
| 11/06/20 MLC | Conference call(s) Conference call with KL and Gilbert concerning mediation strategy | .60 | 840.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 25                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/09/20 MLC | Correspondence Correspondence with Brattle and Troop re preparing for a meeting with Cornerstone to further discuss States POC | .90 | 1,260.00 |
| 11/10/20 MLC | Conference call(s) Conference call with Brattle and Cornerstone and DPW re Debtors' analysis of States Consolidated POC | .80 | 1,120.00 |
| 11/10/20 MLC | Analysis of Memorandum Review of NCSG objection to DOJ/Debtors settlement | .90 | 1,260.00 |
| 11/10/20 MLC | Correspondence Correspondence with AHC counsel re NCSG objection to DOJ settlement | .40 | 560.00 |
| 11/11/20 JSF | Examine Documents Review of UCC Statement re: Motion to Approve DOJ Settlement | .40 | 358.00 |
| 11/11/20 JSF | Examine Documents Review and Analysis of Arguements in Objection to DOJ Settlement made by NCSG, AHC of Individual Victims, and AHC on Accountability | .80 | 716.00 |
| 11/11/20 JSF | Examine Documents Review and Professors' Amicus Brief re: DOJ Settlement and Judge Drain Response | .30 | 268.50 |

# OTTERBOURG P.C.

230 PARK AVENUE
NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                              March 14, 2021
Page 26                                                  BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/11/20 MLC | Conference call(s) Conference call with Andrew Troop and DPW (Kathryn and Marc T) re review of consolidated states POC | .80 | 1,120.00 |
| 11/11/20 MLC | Prepare for Meeting Reviewed Brattle analysis in preparation for meeting with Cornerstone | 1.30 | 1,820.00 |
| 11/12/20 MLC | Conference call(s) Conference call with Andrew Troop, Mark Berman (Brattle) and Jim Donahue re call with DPW and next steps with Cornerstone re consolidated state POC | .40 | 560.00 |
| 11/12/20 MLC | Conference call(s) UCC litigation presentation re potential Sacklers' liability | 1.50 | 2,100.00 |
| 11/12/20 RCY | Telephone Call(s) Listen in on Creditor Committee presentation. | 1.70 | 1,147.50 |
| 11/16/20 JSF | Examine Documents Review of Debtors' Response to Objections to Settlement with DOJ | .40 | 358.00 |
| 11/16/20 MLC | Correspondence Correspondence with Gilbert re his calls with Nachman and Troop re NCSG mediation positions | .90 | 1,260.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                   March 14, 2021
Page 27                                                       BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/16/20 MLC | Correspondence Correspondence with core States re mediation strategy | .40 | 560.00 |
| 11/17/20 MLC | Conference call(s) Conference call with Brattle and Cornerstone re Consolidated Claim | .30 | 420.00 |
| 11/21/20 MLC | Correspondence Correspondence with Troop and AHC counsel re DOJ settlement | .90 | 1,260.00 |
| 11/23/20 MLC | Correspondence Correspondence with AHC counsel re mediation schedule | .30 | 420.00 |
| 11/23/20 MLC | Analysis of Memorandum Review of revisions to governance term sheet prepared by KL | .60 | 840.00 |
| 11/23/20 MLC | Correspondence Review of correspondence from DPW re MSGE negotiations and plan strategy | .50 | 700.00 |
| 11/24/20 MLC | Correspondence Correspondence with Troop and Brattle re follow up meetings with Cornerstone | .30 | 420.00 |
| 11/25/20 MLC | Conference call(s) Meeting of AHC and NCSG mediation delegations re Sacklers | 1.50 | 2,100.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                        March 14, 2021
Page 28                                                            BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/30/20 MLC | Conference call(s) Mediation session with mediators and Sacklers' counsel/representatives | 1.60 | 2,240.00 |
| 11/30/20 MLC | Conference call(s) Conference call with Non-Settling states re mediation session with Sacklers | 1.00 | 1,400.00 |
| 12/01/20 MLC | Conference call(s) Call with States representatives and KL re NCSG approach | 1.00 | 1,400.00 |
| 12/01/20 MLC | Correspondence Correspondence with certain State members of AHC re potential consequences if agreements not reached between certain interested parties | .60 | 840.00 |
| 12/03/20 MLC | Conference call(s) Conference call mediation session re Hospitals and their claims | 1.20 | 1,680.00 |
| 12/03/20 MLC | Prepare for Meeting Prepared for meeting with Hospitals and mediators | .40 | 560.00 |
| 12/04/20 MLC | Draft/revise Review and revision to power point analysis of States consolidated POC | 1.10 | 1,540.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                March 14, 2021
Page 29                                                     BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/08/20 MLC | Analysis of Memorandum Review and analysis of Gilbert memo outlining Sackler counter to NCSG mediation demands | .70 | 980.00 |
| 12/08/20 MLC | Correspondence Review of correspondence from Tribal coalition responding to Sackler Phase II negotiations | .40 | 560.00 |
| 12/09/20 MLC | Analysis of Memorandum Review of Sackler family sur-reply response to UCC opposition to exceptions memo | .50 | 700.00 |
| 12/10/20 MLC | Prepare for Meeting Review of latest version of NAS registry proposal in preparation for mediation session with NAS representatives | 1.10 | 1,540.00 |
| 12/11/20 MLC | Correspondence Correspondence among NAS working group re mediation proposals | .60 | 840.00 |
| 12/11/20 MLC | Correspondence Follow up correspondence re NAS mediation session | .30 | 420.00 |
| 12/14/20 MLC | Correspondence Follow up correspondence with NCSG members re NAS negotiations | .30 | 420.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 30                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/18/20 MLC | Conference call(s) Conference call with mediator Feinberg and NAS parties with States re claims set up | 1.70 | 2,380.00 |
| 12/30/20 MLC | Correspondence Correspondence with NCSG and AHC re NAS working group to discuss experts' analysis re ID documentation registrar | .90 | 1,260.00 |
| 12/31/20 MLC | Correspondence Review of correspondence from Gilbert concerning latest developments in negotiations between NCSG and Sacklers in mediation | .70 | 980.00 |
| TOTAL PHASE PU05 | | 77.80 | $106,576.50 |

| Phase: PU06 | | | EMPLOYMENT & FEE APPLICATIONS |
|---|---|---|---|

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/26/20 JSF | Prepare Legal Papers Preparation of Interim Fee Application | .60 | 537.00 |
| 11/03/20 JKH | Prepare Papers Prepare draft statement for August | .20 | 65.00 |
| 11/03/20 JKH | Prepare Papers Prepare draft statement for September | .20 | 65.00 |

## OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 31                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/06/20 JSF | Prepare Legal Papers Preparation of Monthly Fee Statement (July) | 1.40 | 1,253.00 |
| 11/10/20 JSF | Prepare Legal Papers Preparation of August Fee Statement | 1.20 | 1,074.00 |
| 11/10/20 JSF | Examine Documents Review of July and August Time Detail | 1.40 | 1,253.00 |
| 11/11/20 JSF | Examine Documents Review of Tenth Monthly Fee Statement | .60 | 537.00 |
| 11/11/20 JSF | Examine Documents Review of Eleventh Monthly Fee Statement | .60 | 537.00 |
| 11/11/20 JKH | Prepare Legal Papers Prepare July statement | .40 | 130.00 |
| 11/11/20 JKH | Prepare Legal Papers Prepare August statement, including review of expenses | .80 | 260.00 |
| 11/12/20 JSF | Prepare Legal Papers Prepare Third Interim Fee Application | 2.20 | 1,969.00 |
| 11/12/20 JKH | Prepare Legal Papers Prepare September monthly statement | .70 | 227.50 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:  20186/0002                                            March 14, 2021
Page 32                                                               BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/13/20 JKH | Prepare Legal Papers<br>Prepare monthly statements for filing | .60 | 195.00 |
| 11/13/20 JKH | Prepare Chart(s)<br>Prepare exhibits for Third Interim Fee Application | 1.30 | 422.50 |
| 11/16/20 JSF | Examine Documents<br>Review of Interim Fee Application for Filing | 2.40 | 2,148.00 |
| 11/16/20 JKH | Draft/revise<br>Prepare and edit exhibits for filingThird Interim Application | 1.30 | 422.50 |
| 11/19/20 JSF | Examine Documents<br>Review Draft of Debtor Motion Requesting Payment of AHC Mediation Fees | .40 | 358.00 |
| 11/30/20 JKH | Correspondence<br>Prepare draft email regarding payment of monthly fee statements | .20 | 65.00 |
| 12/08/20 JKH | Prepare Legal Papers<br>Prepare monthly statement | .60 | 195.00 |

TOTAL PHASE PU06                                          17.10        $11,713.50

Phase: PU08                          LITIGATION: CONTESTED MATTERS, ADVERSARY

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY   10169-0075

Client/Matter:   20186/0002                                          March 14, 2021
Page 33                                                              BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/27/20 JSF | Examine Documents Review of Objection of UCC and NCSG to Sacklers Request to Use Funds For DOJ Settlement | 1.60 | 1,432.00 |
| 10/27/20 JSF | Examine Documents Review of Ad Hoc Committee on Accountability Objection to Sackler Motion to Use Funds | .60 | 537.00 |
| 11/03/20 JSF | Examine Documents Review of NCSG and UCC Statement re: Motion of Sacklers to Use Funds for DOJ Settlement | .40 | 358.00 |
| TOTAL PHASE PU08 | | 2.60 | $2,327.00 |

Phase: PU09                              MEETINGS & COMMUNICATIONS W/ AD HOC

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/01/20 MLC | Correspondence Correspondence with AHC re certain discovery re Sacklers and UCC | .70 | 980.00 |
| 10/05/20 MLC | Analysis of Memorandum Analysis of confidentiality protection overview provided to AHC members | .80 | 1,120.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY   10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 34                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/05/20 MLC | Correspondence<br>Correspondence re scheduling and coordination re various meetings with members | .30 | 420.00 |
| 10/07/20 JSF | Telephone Call(s)<br>Participate in Weekly Team Conference Call with AHC | 1.20 | 1,074.00 |
| 10/07/20 MLC | Conference call(s)<br>Regular weekly meeting with AHC members | 1.50 | 2,100.00 |
| 10/07/20 MLC | Conference call(s)<br>Conference call with State Group and KL re mediation phrase II approach | .50 | 700.00 |
| 10/07/20 MLC | Correspondence<br>Correspondence with States representatives and AHC counsel | .40 | 560.00 |
| 10/07/20 MLC | Draft/revise<br>Review and revision to draft agenda for AHC meeting | .30 | 420.00 |
| 10/15/20 JSF | Telephone Call(s)<br>Participate in Weekly AHC Meeting | .30 | 268.50 |
| 10/15/20 MLC | Conference call(s)<br>Weekly conference call with AHC members and counsel | 1.00 | 1,400.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY 10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 35                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/15/20 MLC | Correspondence<br>Correspondence among AHC professionals and AHC members re scheduling and coordinating of mediation sessions and AHC subcommittee meetings | .40 | 560.00 |
| 10/21/20 JSF | Telephone Call(s)<br>Participate in Weekly Conference Call with AHC | .40 | 358.00 |
| 10/21/20 MLC | Conference call(s)<br>Weekly AHC meeting | 1.30 | 1,820.00 |
| 10/26/20 MLC | Conference call(s)<br>Conference call with John Guard, Singer, Peacock and AHC counsel re claims process | 1.00 | 1,400.00 |
| 10/28/20 JSF | Telephone Call(s)<br>Participate in Weekly Update Call with AHC | 1.00 | 895.00 |
| 10/28/20 MLC | Conference call(s)<br>Weekly AHC meeting | 1.40 | 1,960.00 |
| 10/28/20 MLC | Correspondence<br>Correspondence among AHC professionals concerning DOJ settlement and DOJ negotiations with Debtors | .40 | 560.00 |
| 10/28/20 MLC | Prepare for Meeting<br>Prepared for meeting with AHC committee members | .30 | 420.00 |

# Otterbourg P.C.

230 Park Avenue
New York, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 36                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/28/20 MLC | Correspondence<br>Correspondence between Guard and Gilbert concerning settlement negotiations | .30 | 420.00 |
| 10/29/20 MLC | Correspondence<br>Correspondence among AHC professionals and certain core states concerning mediation strategy | .40 | 560.00 |
| 10/30/20 MLC | Correspondence<br>Correspondence with certain states re negotiations with NCSG | .30 | 420.00 |
| 11/02/20 MLC | Conference call(s)<br>Conference call with AHC counsel and certain AHC members re various plan negotiations and strategies | 1.60 | 2,240.00 |
| 11/04/20 JSF | Telephone Call(s)<br>Participte in Telconference of Weekly AHC Meeting | 1.00 | 895.00 |
| 11/04/20 MLC | Conference call(s)<br>Conference call meeting with AHC members | 1.10 | 1,540.00 |
| 11/09/20 MLC | Conference call(s)<br>Conference call with AHC counsel re pending matters including mediation issues | .70 | 980.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                     March 14, 2021
Page 37                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/09/20 MLC | Correspondence<br>Correspondence with AHC committee concerning stipulation re standing issue for insurance cases | .70 | 980.00 |
| 11/10/20 MLC | Conference call(s)<br>Conference call with counsel and AHC representatives re next steps | 1.00 | 1,400.00 |
| 11/12/20 MLC | Conference call(s)<br>Conference call with AHC counsel and certain members re catch up and status of pending matters | 1.00 | 1,400.00 |
| 11/18/20 JSF | Telephone Call(s)<br>Participate in Meeting of AHC re: Post-Effective Date Organizational Structure | 1.50 | 1,342.50 |
| 11/18/20 MLC | Conference call(s)<br>Weekly meeting of AHC | 1.50 | 2,100.00 |
| 11/19/20 MLC | Conference call(s)<br>Conference call with certain state representatives and AHC counsel re mediation/plan efforts | .70 | 980.00 |
| 11/20/20 JSF | Examine Documents<br>Review of Updates to AHC - Motions, Depositions Summaries | .50 | 447.50 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                        March 14, 2021
Page 38                                                            BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/30/20<br>MLC | Conference call(s)<br>Conference call with AHC counsel re next<br>steps in mediation and related matters | 1.00 | 1,400.00 |
| 12/02/20<br>JSF | Examine Documents<br>Review of Update to AHC re: Exclusivity and<br>Media Motion to Intervene | .30 | 268.50 |
| 12/02/20<br>JSF | Telephone Call(s)<br>Participate in Weekly Conference Call of<br>AHC and Professionals | 1.60 | 1,432.00 |
| 12/02/20<br>MLC | Conference call(s)<br>Weekly meeting of AHC | 1.70 | 2,380.00 |
| 12/02/20<br>MLC | Prepare for Meeting<br>Prepared for weekly meeting with AHC<br>committee | .60 | 840.00 |
| 12/03/20<br>MLC | Conference call(s)<br>Conference call with States'<br>representatives and AHC counsel re claims<br>update | .50 | 700.00 |
| 12/08/20<br>MLC | Conference call(s)<br>Conference call with certain States re<br>status of mediation matters | .60 | 840.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY 10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 39                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/08/20 MLC | Correspondence<br>Correspondence with Ken Eckstein and mediation subcommittee re status of various matters including Sackler/NCSG discussions and third party proposal | .50 | 700.00 |
| 12/09/20 JSF | Telephone Call(s)<br>Participate in Weekly AHC Call to Review Plan and Other Upcoming Matters | 1.90 | 1,700.50 |
| 12/09/20 MLC | Conference call(s)<br>Call with Ken Eckstein and Paul Singer re proposed plan strategies | .50 | 700.00 |
| 12/09/20 MLC | Conference call(s)<br>Weekly meeting with AHC and Counsel, FTI and HL | 1.90 | 2,660.00 |
| 12/09/20 MLC | Prepare for Meeting<br>Prepared for meeting with AHC | .40 | 560.00 |
| 12/10/20 MLC | Conference call(s)<br>Conference call with AHC counsel and certain State representatives | .50 | 700.00 |
| 12/15/20 MLC | Conference call(s)<br>Strategy meeting with AHC counsel and state representatives | .50 | 700.00 |
| 12/16/20 JSF | Telephone Call(s)<br>Participate in Weekly AHC Call | 1.70 | 1,521.50 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                  March 14, 2021
Page 40                                                      BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/16/20 MLC | Conference call(s) Weekly meeting and focus on plan B | 1.80 | 2,520.00 |
| 12/17/20 MLC | Conference call(s) Conference call with AHC counsel and State representatives re strategy and next steps | 1.00 | 1,400.00 |
| 12/22/20 MLC | Conference call(s) Conference call with AHC co-counsel and certain State reps re negotiations and strategy | .50 | 700.00 |
| 12/22/20 MLC | Correspondence Correspondence with AHC committee members outlining status of negotiations and next steps | .60 | 840.00 |
| 12/22/20 MLC | Correspondence Correspondence with AHC re status of various pending matters | .50 | 700.00 |
| 12/24/20 MLC | Conference call(s) Conference call with AHC counsel and States' subcommittee re status of negotiations | .50 | 700.00 |

TOTAL PHASE PU09                                       44.60        $56,683.00

Phase: PU11                              PLAN & DISCLOSURE STATEMENT

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:  20186/0002
Page 41

March 14, 2021
BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/01/20<br>MLC | Correspondence<br>Correspondence with John Guard and<br>Jonathan Blanton concerning potential<br>resolution of Sacklers' claims | .80 | 1,120.00 |
| 10/01/20<br>MLC | Analysis of Memorandum<br>Review of Hospitals' draft abatement term<br>sheet | .80 | 1,120.00 |
| 10/11/20<br>MLC | Correspondence<br>Correspondence re upcoming presentation by<br>Debtors of financials | .20 | 280.00 |
| 10/13/20<br>JSF | Telephone Call(s)<br>Partiicpate in Video Conference With<br>Debtor and AHC re: Post-Emergence Entity | 1.60 | 1,432.00 |
| 10/13/20<br>JSF | Examine Documents<br>Review and Analysis of Letter from NCSG re:<br>Post-Emergence Entity | .40 | 358.00 |
| 10/13/20<br>MLC | Conference call(s)<br>Presentation by Purdue to AHC re future of<br>company | 1.50 | 2,100.00 |
| 10/14/20<br>JSF | Examine Documents<br>Review and Analysis of Statement from DOJ<br>re: Post-Emergence Company | .50 | 447.50 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 42                                                         BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/15/20 JSF | Examine Documents Review of Deck re: Overview of PBC Governance/Purpose re: Post-Emergence Entity | 1.20 | 1,074.00 |
| 10/18/20 JSF | Telephone Call(s) Participate in Conference Call with AHC Subgroup re: Plan Structure and Upcoming Discussions with Sacklers | .90 | 805.50 |
| 10/19/20 JSF | Telephone Call(s) Participate in Conference with AHC and Debtors re: Post-Emergence Trust Structure | 1.10 | 984.50 |
| 10/19/20 MLC | Conference call(s) Zoom meting with debtors counsel re post emergence structure | 1.10 | 1,540.00 |
| 10/19/20 MLC | Conference call(s) Zoom meeting with AHC professionals re governance structure | 1.00 | 1,400.00 |
| 10/20/20 JSF | Telephone Call(s) Participate in Videoconference with Mediators and Mediation Partie re: Final Plan Isssues and Sackler Contribution | .80 | 716.00 |
| 10/20/20 JSF | Examine Documents Review of Open Issues to Be Addressed in Mediation for Final Issues re: Plan | .30 | 268.50 |

## OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 43                                                         BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/21/20<br>JSF | Examine Documents<br>Review and Analysis of Proposed Settlement<br>with DOJ | .50 | 447.50 |
| 10/21/20<br>JSF | Examine Documents<br>Review of Term Sheet with AHC and Debtor re:<br>Outline for Parameters of a Plan and<br>Sackler Contribution | .70 | 626.50 |
| 10/21/20<br>MLC | Analysis of Memorandum<br>Analysis of power point presentation<br>prepared by HL concerning governance<br>structure post-confirmation | 1.30 | 1,820.00 |
| 10/22/20<br>JSF | Examine Documents<br>Review of Sackler Settlement with DOJ and<br>Payments to Be Made By Sacklers/Impact on<br>Plan and Other Issues | .80 | 716.00 |
| 10/23/20<br>JSF | Telephone Call(s)<br>Participate in Conference with Mediators<br>and AHC re: Preliminary Discussin of Issues<br>for Finalizing Plan and Next Steps | 1.00 | 895.00 |
| 10/23/20<br>JSF | Examine Documents<br>Review of Public Statements of Members of<br>NCSG re: DOJ Settlement | .20 | 179.00 |
| 10/23/20<br>MLC | Conference call(s)<br>Conference call with AHC mediation<br>delegation re Purdue and Trust Structure<br>Options | 1.00 | 1,400.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY 10169-0075

Client/Matter:  20186/0002                                    March 14, 2021
Page 44                                                       BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 10/26/20 MLC | Conference call(s) Conference call with counsel re plan process | 1.00 | 1,400.00 |
| 10/27/20 JSF | Examine Documents Review and Analysis of Sackler and DOJ Settlement and Sackler Motion to Utilize Funds | 1.40 | 1,253.00 |
| 10/28/20 JSF | Examine Documents Review of Deck re: Proposed Post-Emergence Governance Structure | .40 | 358.00 |
| 10/29/20 JSF | Telephone Call(s) Participate in Video Conference Between AHC and NCSG Members re: Post-Emergence Governance Structure | 2.30 | 2,058.50 |
| 10/29/20 MLC | Conference call(s) Conference call re AHC structure and economic presentation to NCSG | 2.00 | 2,800.00 |
| 10/30/20 JSF | Telephone Call(s) Participate in Call with Plan Mediation Subcommittee re: Status of Discussions with NCSG on Post-Emergence Structure | .90 | 805.50 |
| 10/30/20 MLC | Conference call(s) AHC mediation delegation meeting with HL and FTI | 1.00 | 1,400.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                          March 14, 2021
Page 45                                                              BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/03/20 JSF | Telephone Call(s) Participate in Teleconference with AHC and DOJ re: Post-Emergence Structure | 1.30 | 1,163.50 |
| 11/03/20 MLC | Conference call(s) Conference call with DOJ and AHC counsel/members to discuss plans for future Purdue post confirmation | 1.50 | 2,100.00 |
| 11/04/20 MLC | Conference call(s) AHC presentation on Structure and Economics | 1.00 | 1,400.00 |
| 11/09/20 JSF | Telephone Call(s) Participate in Call with AHC Professionals re: Response to DOJ Settlement | .70 | 626.50 |
| 11/09/20 MLC | Analysis of Memorandum Review of UCC correspondence concerning third party purchase proposal | .80 | 1,120.00 |
| 11/11/20 MLC | Telephone Call(s) Telcon with Ken Eckstein re next steps re plan | .30 | 420.00 |
| 11/12/20 JSF | Telephone Call(s) Participate in Presentation to Debtors re: Post-Emergence Corporate Structure | 2.50 | 2,237.50 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY   10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 46                                                        BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/12/20 JSF | Telephone Call(s) Participate Follow-Up Call with AHC Professionals re: Meeting with Debtors re: Post-Emergence Corporate Structure | .40 | 358.00 |
| 11/12/20 MLC | Conference call(s) Conference call with DPW and Company re governance structure and issues | 1.50 | 2,100.00 |
| 11/13/20 JSF | Examine Documents Review of Post-Effective Date Proposed Governance Chart | .40 | 358.00 |
| 11/16/20 JSF | Examine Documents Review Draft of Presenation to AHC re: Plan Options Under Different Scenarios | .70 | 626.50 |
| 11/18/20 MLC | Analysis of Memorandum Review of revised presentation on governance | 1.50 | 2,100.00 |
| 11/20/20 JSF | Telephone Call(s) Participate in Video Meeting with AHC and NCSG re: Post-Emergence Structure and Other Plan Issues | 2.00 | 1,790.00 |
| 11/20/20 MLC | Conference call(s) Conference call with NCSG and AHC delegations re structure and governance | 1.50 | 2,100.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY 10169-0075

Client/Matter:  20186/0002                                    March 14, 2021
Page 47                                                       BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/23/20 JSF | Examine Documents<br>Preliminary Review of Draft Plan Term Sheet | .60 | 537.00 |
| 11/23/20 MLC | Analysis of Memorandum<br>Review and analysis of draft of plan term sheet prepared by DPW | 2.20 | 3,080.00 |
| 11/23/20 MLC | Analysis of Memorandum<br>Review of draft governance term sheet | .60 | 840.00 |
| 11/24/20 JSF | Examine Documents<br>Review of Draft Governance Term Sheet and Issues List | .40 | 358.00 |
| 11/24/20 JSF | Examine Documents<br>Review of Draft Plan Term Sheet | 1.20 | 1,074.00 |
| 11/25/20 JSF | Examine Documents<br>Review of NCSG Sackler Demand | .40 | 358.00 |
| 11/25/20 JSF | Telephone Call(s)<br>Participate in Conference with AHC and NCSG re: Sackler Discussions | .60 | 537.00 |
| 11/25/20 JSF | Examine Documents<br>Review of Draft Plan Term Sheet and Existing Term Sheets of Constituent Groups | 1.20 | 1,074.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 48                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 11/30/20 JSF | Telephone Call(s) Participate in Conference with Sacklers, Mediators and AHC re: Status of Negotiations and Sackler Contribution | 1.10 | 984.50 |
| 11/30/20 JSF | Telephone Call(s) Participate in Conference with AHC and NCSG re: Status of Discussions with Sacklers | .70 | 626.50 |
| 11/30/20 JSF | Telephone Call(s) Participate in Conference Call with AHC Professionals re: Next Steps in Negotiations with Sacklers and Plan | .90 | 805.50 |
| 11/30/20 JSF | Examine Documents Review of Options - Alternative Plan and Post-Governance Structure Options for Purdue | 1.40 | 1,253.00 |
| 11/30/20 JSF | Examine Documents Review of Plan Term Sheet and Analysis of Relaed Issues | 1.60 | 1,432.00 |
| 12/01/20 MLC | Analysis of Memorandum Review and analysis of debtors' motion to extend exclusivity | .60 | 840.00 |
| 12/02/20 JSF | Examine Documents Review of Revised Presentation re: Plan Alternatives | .40 | 358.00 |

# OTTERBOURG P.C.

230 PARK AVENUE
NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 49                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/02/20 MLC | Correspondence<br>Correspondence among AHC professionals concerning impact of Plan B and its contours | .80 | 1,120.00 |
| 12/02/20 MLC | Correspondence<br>Correspondence among certain States re Plan B ideas | .40 | 560.00 |
| 12/02/20 MLC | Analysis of Memorandum<br>Review and analysis of term sheet outlining Plan B | 1.20 | 1,680.00 |
| 12/02/20 MLC | Correspondence<br>Review of Guard memo re Plan B negotiations | .60 | 840.00 |
| 12/02/20 MLC | Correspondence<br>Correspondence with States mediation group and AHC counsel re compensation for post confirmation governance directors | .50 | 700.00 |
| 12/03/20 JSF | Telephone Call(s)<br>Participate in Call with AHC, NCSG and DOJ re: Post-Emergence Structure | 1.90 | 1,700.50 |
| 12/03/20 JSF | Examine Documents<br>Review of Presentation Materials re: Alternative Plan Options | .60 | 537.00 |

# OTTERBOURG P.C.

### 230 PARK AVENUE
### NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                          March 14, 2021
Page 50                                                              BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/03/20 JSF | Examine Documents<br>Review and Analysis of Alternate Plan Structures and Status of Open Plan Issues | 1.20 | 1,074.00 |
| 12/04/20 JSF | Telephone Call(s)<br>Participate in Call with AHC Professionals re: Plan Alternatives | .90 | 805.50 |
| 12/04/20 JSF | Examine Documents<br>Review of Options for Sale of Assets | .40 | 358.00 |
| 12/04/20 MLC | Telephone Call(s)<br>Telcon with Eckstein re Plan timeline and third party development | .30 | 420.00 |
| 12/06/20 JSF | Telephone Call(s)<br>Participate in Conference Call with AHC Professionals re: Emergence Alternatives | 1.30 | 1,163.50 |
| 12/06/20 JSF | Examine Documents<br>Review of AHC Financial Advisors' Presentation re: Alternative Plan/Sale Option | .50 | 447.50 |
| 12/06/20 MLC | Analysis of Memorandum<br>Review and analysis of third party proposal and HL economic analysis of strategic options | 1.80 | 2,520.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 51                                                         BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/06/20 MLC | Conference call(s) Conference call with HL and AHC counsel re third party proposal economic analysis | 1.50 | 2,100.00 |
| 12/08/20 JSF | Examine Documents Review of Letter from Tribal Coalition to Mediators re: Sackler Plan Contribution | .20 | 179.00 |
| 12/08/20 JSF | Examine Documents Review of Presentation to AHC re: Alternative Plan Options | .60 | 537.00 |
| 12/08/20 JSF | Examine Documents Review of Presentation for AHC Outlining Issues of Post-Confirmation Governance | .40 | 358.00 |
| 12/08/20 MLC | Correspondence Correspondence with mediation subcommittee re selection process for directors and trustees | .40 | 560.00 |
| 12/09/20 JSF | Examine Documents Review of Communication to AHC and NCSG re: Topics and Issues for Meeting with DOJ | .20 | 179.00 |
| 12/09/20 JSF | Examine Documents Review Revised Presentation re: Plan Alternatives | .30 | 268.50 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                    March 14, 2021
Page 52                                                        BILL NO. 215866

| DATE<br>ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/09/20<br>JSF | Examine Documents<br>Review of Economic Analysis of Strategic<br>Alternatives Prepared for AHC | .80 | 716.00 |
| 12/09/20<br>MLC | Analysis of Memorandum<br>Review of HL side by side analysis of third<br>party proposal with other alternatives | 1.20 | 1,680.00 |
| 12/09/20<br>MLC | Correspondence<br>Review of Gilbert email outlining<br>alternative scenarios for mediation issues | .80 | 1,120.00 |
| 12/09/20<br>MLC | Correspondence<br>Correspondence with AHC counsel and<br>mediation subcommittee re trustee<br>selection process and search firms | .60 | 840.00 |
| 12/09/20<br>MLC | Correspondence<br>Correspondence among AHC counsel<br>concerning recent calls with DPW re plan<br>structure | .50 | 700.00 |
| 12/09/20<br>MLC | Prepare for Meeting<br>Prepared for meeting with NCSG and AHC<br>mediation subcommittee re DOJ discussions | .80 | 1,120.00 |
| 12/10/20<br>JSF | Telephone Call(s)<br>Parrticipate in Video Conference with AHC,<br>NCSG and DOJ re: Plan and Post-Effective<br>Date Structure | 1.10 | 984.50 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY   10169-0075

Client/Matter:   20186/0002                              March 14, 2021
Page 53                                                  BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/10/20 JSF | Examine Documents<br>Review of Update on Discussions Concerning MSGE Term Sheet | .30 | 268.50 |
| 12/10/20 JSF | Examine Documents<br>Review of Update Between Sacklers and NCSG re: Sackler Contribution | .30 | 268.50 |
| 12/10/20 MLC | Conference call(s)<br>Zoom meeting with DOJ, NCSG and AHC re plan structure | 1.20 | 1,680.00 |
| 12/10/20 MLC | Correspondence<br>Follow up correspondence among AHC counsel concerning NCSG counter offer to Sackler proposal | .80 | 1,120.00 |
| 12/10/20 MLC | Analysis of Memorandum<br>Analysis of memo providing background regarding the Cleveland negotiations/settlement | .80 | 1,120.00 |
| 12/10/20 MLC | Correspondence<br>Correspondence with AHC counsel concerning discussions with NCSG counsel and status of negotiations re the Sackler family | .90 | 1,260.00 |
| 12/11/20 JSF | Examine Documents<br>Review of Post-Emergence Governance Open Issues | .80 | 716.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                        March 14, 2021
Page 54                                                            BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/11/20 MLC | Conference call(s) Zoom mediation meeting with NCSG, AHC and NAS/Hospitals | .80 | 1,120.00 |
| 12/11/20 MLC | Prepare for Meeting Prepared for meeting with NAS/Hospitals by reviewing mediation documents circulated in advance by Troop | 1.00 | 1,400.00 |
| 12/14/20 MLC | Correspondence Correspondence among AHC counsel and committee concerning latest status of negotiations between NCSG and Sackler family | .70 | 980.00 |
| 12/14/20 MLC | Analysis of Memorandum Review and analysis of memo prepared by Gilbert concerning NCSG negotiations with Sackler family and next steps | .80 | 1,120.00 |
| 12/15/20 MLC | Correspondence Correspondence among AHC counsel concerning MSGE negotiations re plan term sheet | .60 | 840.00 |
| 12/15/20 MLC | Correspondence Review of correspondence between Sackler family counsel and NCSG counsel concerning pending negotiations | .40 | 560.00 |

## OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY 10169-0075

Client/Matter:  20186/0002                                    March 14, 2021
Page 55                                                       BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/15/20 MLC | Analysis of Memorandum<br>Review and analysis of NCSG revisions to draft governance term sheet | 1.40 | 1,960.00 |
| 12/16/20 JSF | Examine Documents<br>Review of Plan Term Sheet Mark-Up by AHC | .40 | 358.00 |
| 12/16/20 MLC | Prepare for Meeting<br>Reviewed and revised draft of Plan B power point | 1.50 | 2,100.00 |
| 12/16/20 MLC | Correspondence<br>Correspondence among AHC counsel and working mediation subgroup re proposed revisions to draft governance term sheet | .80 | 1,120.00 |
| 12/16/20 MLC | Conference call(s)<br>Conference call mediation session with NCSG re governance term sheet | 1.00 | 1,400.00 |
| 12/16/20 MLC | Correspondence<br>Correspondence re mediation issues with working group | .60 | 840.00 |
| 12/16/20 MLC | Correspondence<br>Correspondence re Plan B presentation | .40 | 560.00 |
| 12/16/20 MLC | Analysis of Memorandum<br>Review and analysis of plan term sheet governance mark-up as revised | 2.10 | 2,940.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY 10169-0075

Client/Matter:  20186/0002                                          March 14, 2021
Page 56                                                             BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/16/20 MLC | Correspondence Correspondence outlining States' response to NCSG comments to governance term sheet | .50 | 700.00 |
| 12/17/20 MLC | Conference call(s) Working session with AHC mediation subgroup re responses to Debtors' term sheet | 2.10 | 2,940.00 |
| 12/17/20 MLC | Analysis of Memorandum Review of proposed comments by AHC subcommittee to governance term sheet | .70 | 980.00 |
| 12/17/20 MLC | Analysis of Memorandum Review of revisions to governance term sheet reflecting comments from earlier meeting | 1.10 | 1,540.00 |
| 12/17/20 MLC | Correspondence Correspondence among AHC professionals and working mediation subgroup concerning proposed revisions to governance term sheet from the tax perspective | .80 | 1,120.00 |
| 12/17/20 MLC | Prepare for Meeting Review and analysis of TDP draft from the PI claimants in preparation for mediation sessions tomorrow | .70 | 980.00 |
| 12/18/20 JSF | Examine Documents Review of Letter from NAS to Debtors re: TDP Discussions | .20 | 179.00 |

# OTTERBOURG P.C.

230 PARK AVENUE
NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                      March 14, 2021
Page 57                                                          BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/18/20 JSF | Examine Documents<br>Review of Draft TDP Plan for Personal Injury Claimant Distribution | .40 | 358.00 |
| 12/18/20 JSF | Telephone Call(s)<br>Participate in Video Conference with Private and Public Claimants re: TDP | 1.50 | 1,342.50 |
| 12/18/20 MLC | Correspondence<br>Correspondence from TDP claimants to Debtors | .30 | 420.00 |
| 12/18/20 MLC | Correspondence<br>Correspondence re the NAS Children Working Group effort to coordinate meetings among the experts with NCSG | .20 | 280.00 |
| 12/18/20 MLC | Correspondence<br>Correspondence with AHC professionals from Gilbert concerning NCSG counter response to Sackler Family | .40 | 560.00 |
| 12/20/20 MLC | Analysis of Memorandum<br>Review of final turn of revisions to term sheet | 1.10 | 1,540.00 |
| 12/21/20 JSF | Examine Documents<br>Review of Purdue Plan Term Sheet Governance Section Mark-Up | .60 | 537.00 |

# OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                              March 14, 2021
Page 58                                                  BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/21/20 MLC | Analysis of Memorandum<br>Review of Plan PHI deck | .40 | 560.00 |
| 12/21/20 MLC | Correspondence<br>Correspondence with AHC mediation subgroup<br>re latest revisions to plan term sheet | .50 | 700.00 |
| 12/21/20 MLC | Analysis of Memorandum<br>Review of memo to AHC concerning status of<br>mediation negotiations and next steps over<br>the holidays | .70 | 980.00 |
| 12/21/20 MLC | Conference call(s)<br>Conference call mediation session with<br>DOJ/AHC/NCSG | 2.00 | 2,800.00 |
| 12/21/20 MLC | Analysis of Memorandum<br>Review and analysis of Debtors' latest<br>revisions to plan term sheet | 1.40 | 1,960.00 |
| 12/22/20 JSF | Telephone Call(s)<br>Participate in Video Conference with UCC,<br>AHC, NCSG and MSGE re: Post-Emergence<br>Business Plan Scenarios and Projections | 1.70 | 1,521.50 |
| 12/22/20 JSF | Examine Documents<br>Review of Plan Term Sheet - Governance<br>Provisions | .60 | 537.00 |

### OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                        March 14, 2021
Page 59                                                            BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/22/20 JSF | Examine Documents<br>Review of AHC's Financial Advisors Updated Economic Analysis of Strategic Options | .90 | 805.50 |
| 12/22/20 MLC | Conference call(s)<br>Zoom meeting with DOJ, NCSG and AHC re presentation by FTI and HL concerning financials and third party proposal | 1.80 | 2,520.00 |
| 12/22/20 MLC | Analysis of Memorandum<br>Review and analysis of FTI/HL presentation re third party proposal and other exit scenarios | 1.10 | 1,540.00 |
| 12/22/20 MLC | Correspondence<br>Correspondence among AHC professionals concerning KL call with DPW re plan developments | .40 | 560.00 |
| 12/22/20 MLC | Draft/revise<br>reviewed and revised plan term sheet which reflects collective comments to governance term sheet of NCSG and AHC | 1.40 | 1,960.00 |
| 12/23/20 JSF | Telephone Call(s)<br>Participate in Videoconference with Debtors, DOJ, AHC, NCSG and MSGE re: Post-Emergence Structure | 2.00 | 1,790.00 |
| 12/23/20 MLC | Conference call(s)<br>Mediation conference call with DOJ and Public Mediation group re OpCo | 2.00 | 2,800.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY 10169-0075

Client/Matter:   20186/0002                          March 14, 2021
Page 60                                              BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/23/20 MLC | Correspondence<br>Correspondence with AHC concerning counter proposal by Sackler family to NCSG proposal | .60 | 840.00 |
| 12/23/20 MLC | Correspondence<br>Follow up correspondence among AHC professionals concerning morning meeting with Debtors and DOJ | .40 | 560.00 |
| 12/24/20 MLC | Conference call(s)<br>Conference call with AHC counsel re negotiations and next steps | .60 | 840.00 |
| 12/24/20 MLC | Analysis of Memorandum<br>Review of debtors' term sheet compared to AHC/NCSG term sheet | 1.30 | 1,820.00 |
| 12/29/20 JSF | Examine Documents<br>Review of Further Revised Plan Term Sheet - Non-Governance Sections | 1.60 | 1,432.00 |
| 12/29/20 MLC | Analysis of Memorandum<br>Review of revised governance term sheet | 1.30 | 1,820.00 |
| 12/29/20 MLC | Conference call(s)<br>Conference call with AHC professionals and AHC subcommittee to discuss revised governance term sheet | 1.00 | 1,400.00 |

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:  20186/0002                                    March 14, 2021
Page 61                                                       BILL NO. 215866

| DATE ATTORNEY | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 12/29/20 MLC | Correspondence Correspondence re proposed revisions to revised draft governance term sheet | .60 | 840.00 |
| 12/29/20 MLC | Analysis of Memorandum Review and analysis of draft of non-governance term sheet | 2.20 | 3,080.00 |
| 12/30/20 JSF | Examine Documents Review of Plan Term Sheet | 1.30 | 1,163.50 |
| 12/30/20 MLC | Correspondence Follow up correspondence re revisions to governance term sheet | .60 | 840.00 |
| 12/30/20 MLC | Analysis of Memorandum Review of proposed changes to part of governance term sheet concerning payment of attorney fees | .80 | 1,120.00 |
| 12/30/20 MLC | Analysis of Memorandum Review of final proposed changes to governance term sheet before circulating to NCSG and UCC | 1.10 | 1,540.00 |

TOTAL PHASE PU11                                137.00        $163,267.50


                               TOTAL FOR SERVICES        $448,798.00

# EXHIBIT F

**Summary of Expenses**

6492567.1

**DISBURSEMENTS FOR THE APPLICATION PERIOD**

| Expense Category | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Conference Calls | West Unified (conference call service) | $382.62[1] |
| Electronic Research | Westlaw | $469.06 |
| **TOTAL:** | | **$851.68** |

---

[1] This relates to the following conference calls: (1) conference call held on September 2, 2020 lasting approximately 20 minutes, in which 6 people participated; (2) conference call held on September 2, 2020, lasting approximately 5 minutes, in which 2 people participated; (3) conference call held on September 9, 2020, lasting approximately 35 minutes, in which 7 people participated; (4) CourtSolutions appearance for a hearing held on April 22, 2020; (5) conference call held on October 28, 2020, lasting approximately 25 minutes, in which 6 people participated; and (6) conference call held on December 9, lasting approximately 30 minutes, in which 3 people participated.

6492567.1

# EXHIBIT G

**List of Expenses**

6492567.1

OTTERBOURG P.C.

230 PARK AVENUE

NEW YORK, NY  10169-0075

Client/Matter:   20186/0002                                March 14, 2021
Page 62                                                    BILL NO. 215866

DISBURSEMENTS FOR YOUR ACCOUNT

    Conference Call(s)                                           382.62

    Electronic Research                                          469.06

                                                            _____

                              TOTAL DISBURSEMENTS                851.68