## Exhibit B

**Engagement Agreement**

# Grant Thornton

June 1, 2018

<div style="float:right">

Audit • Tax • Advisory

**Grant Thornton LLP**
Grant Thornton Tower
171 North Clark, Suite 200
Chicago, IL 60601
T 312.856.0200
F 312.602.8205
www.GrantThornton.com

</div>

Phillip Strassburger
SVP IP Strat&LitPPLP/Pres RATG
Purdue Pharma LP
201 Tresser Boulevard
Stamford, CT 06901-3431

Dear Mr. Strassburger:

Grant Thornton LLP ("Grant Thornton," "Firm," or "we") is pleased to provide tax services (the "Services") to Purdue Pharma LP (the "Company," "Client," or "you"). The purpose of this letter, Attachment A, and any related Statement(s) of Work (collectively, the "Agreement"), as defined below, is to confirm the scope and terms of our engagements.

The Agreement is intended to remain in effect indefinitely from June 1, 2018 (the "Effective Date"), unless terminated or modified in accordance with Attachment A.

It is structured to facilitate serving both your current and future tax services needs by allowing multiple tax services to be provided under this Agreement through the execution of additional Statements of Work.

**Providing our services**

The Services we provide to you under this Agreement typically will be set forth in distinct Statements of Work signed by you or your authorized representatives and ours, specifying matters including scope, deliverables, timing, fees and payment terms. From time to time in the course of our relationship we may perform Services you request without a Statement of Work. We will not provide any Services unless you request us to do so. This Agreement will cover all Services rendered whether or not the parties execute a Statement of Work. Such Services will be billed at our standard hourly rates as appropriate or as otherwise agreed.

Attachment A is an important part of this Agreement. You should read it carefully.

If the Company fails to meet any undisputed payment obligation under this Agreement, Grant Thornton may immediately suspend performance of the Services. If we elect to suspend our performance due to non-payment, the Services will not be resumed until your account is paid as agreed, including the payment of any retainer that we may require for continuing services.



**Our professional responsibilities**

Our Services will be performed in accordance with the American Institute of Certified Public Accountants' Statements on Standards for Tax Services and other applicable professional standards, and applicable federal and state laws and regulations.

Professional and regulatory standards require us to secure your consent prior to providing any of your information to third-parties, including your request to allow workpaper access to third-parties. We will secure your written consent before sharing your information with any third-party.

Upon your request we will return documents you provided to us as well as provide copies of other information in our files to the extent required by applicable professional standards. You are solely responsible for maintaining your books and records, including retaining copies of filed tax returns, and should not rely on Grant Thornton as a record-keeper.

Generally, our Services will be based upon information furnished by the Company, and Grant Thornton will not evaluate or have any responsibility to verify independently the accuracy, completeness or sufficiency of any such information. However circumstances may arise where we, in our professional judgment, determine that additional fact gathering and due diligence on our part is required.

Federal and State laws and professional standards impose significant responsibilities on tax return preparers, including non-signing preparers who provide tax advice. We prepare tax returns and/or provide tax advice consistent with our professional responsibilities. Our professional responsibilities may include communicating with you about differences between standards applicable to tax return preparers and penalty provisions that may be imposed on a taxpayer regarding a tax position. We may not sign a tax return or provide tax advice unless we feel that a position is supported by sufficient authority or is appropriately disclosed.

The Internal Revenue Code and Treasury Regulations require taxpayers to disclose certain types of transactions, known as reportable transactions, for which failure to disclose may result in the imposition of substantial penalties. For tax return preparation engagements a completed and signed Reportable Transactions Questionnaire, and the Company's cooperation in regard to any follow-up requests for information, are required prior to processing any tax returns we may be engaged to prepare.

Unless expressly stated otherwise in a Statement of Work, any written advice we provide is limited to the matters and potential tax consequences specifically addressed therein, and not intended or written as advice on the application or potential application of any penalties that may be imposed under any federal, state, or foreign statute or regulation in any manner.

**Term**

 Grant Thornton

This Agreement shall remain in full force and effect in accordance with its terms and conditions and shall constitute legal, valid, binding, and enforceable obligations of both Grant Thornton and the Company until terminated by either party in accordance with the termination provision set forth in Attachment A. Because applicable professional standards, law, and regulations may change in the future Grant Thornton reserves the right to amend this Agreement upon appropriate notice and your consent.

**Other matters**

Please confirm your acceptance of this Agreement by signing below and also signing the enclosed Statement(s) of Work, and returning the Agreement to me in the enclosed self-addressed envelope. We look forward to the opportunity to serve you.

Very truly yours,

**GRANT THORNTON LLP**

*Linette Barclay*

Linette Barclay
Managing Director

Enc     Attachment A
        Statement of Work

**Agreed and accepted**

The foregoing letter and Attachment A fully describes our understanding and is accepted by us.

**Purdue Pharma LP**

By: _Philip C. Stressburger_     Date: _June 5, 2018_
Philip C. Stressburger
Senior V.P., IP Strategy &
Name, Title       Litigation

**Grant Thornton**

<div style="text-align: right">
Purdue Pharma LP
Agreement dated **June 1, 2018**
</div>

## ATTACHMENT A - STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS

It is understood and agreed that the terms and conditions in this Attachment A refer to the Grant Thornton letter to which it is attached. The addressee of the letter, by signing the letter, has agreed to all of the terms and conditions in this Attachment A. In the event that there is a conflict between this Attachment A and the letter, including any Statements of Work, attachments, or amendments to the Agreement, the terms of Attachment A shall control. Any capitalized terms in this Attachment A that are not defined shall have the meanings in the letter.

1.    <u>Management Participation and Responsibilities</u>. You will designate at least one management level individual who possesses the suitable skill, knowledge, experience, judgment, and willingness to be responsible for overseeing the Services on your behalf. You will be solely responsible for applying independent business judgment with respect to the Services, including without limitation, establishing and monitoring the performance of the Services to ensure the objectives have been met, evaluating the adequacy of the engagement and any recommendations made, exclusively rendering decisions that involve management functions related to the engagement, accepting full responsibility for decisions on implementation or other further course(s) of action, and establishing and maintaining internal controls. Moreover, you will in all events remain responsible for the care and control of your premises, for all internal books and recordkeeping, for establishing and maintaining effective internal control systems and for all management functions, responsibilities and decisions.

2.    <u>Business Risk Allocations</u>. The terms of this Section 2 shall apply regardless of the nature of any claim asserted (including but not limited to contract, statute, tort, strict liability, or any form of negligence, whether by you, Grant Thornton, or others) but such terms shall not apply to the extent finally determined to be contrary to any applicable law.

(a)    **<u>Limitation of Liability</u>. With respect to the Services and this Agreement generally, the liability of Grant Thornton and its present and former partners, principals, directors, employees, agents and contractors (collectively referred to as the "Grant Thornton Firm") for all claims, including but not limited to the Grant Thornton Firm's own negligence, shall not exceed the fees payable for the portion of the work giving rise to such liability. This limitation shall not apply to the extent that it is finally determined that any claims, losses, or damages are the result of the Grant Thornton Firm's willful misconduct or fraud.**

(b)    **IN NO EVENT SHALL THE GRANT THORNTON FIRM BE LIABLE FOR, AND YOU HEREBY WAIVE, ANY INDIRECT, SPECIAL, CONSEQUENTIAL, INCIDENTAL, OR EXEMPLARY DAMAGES OR LOSS, INCLUDING WITHOUT LIMITATION, ANY LOST PROFITS, TAXES, INTEREST, PENALTIES, LOSS OF SAVINGS, OR LOST BUSINESS OPPORTUNITY.**

In responding to any claim asserted, the Grant Thornton Firm shall avail itself of any defense available to it under applicable law, but in no event shall the aggregate liability of the Grant Thornton Firm for any claims, losses or damages related to this Agreement exceed an amount that is proportional to the relative fault of the Grant Thornton Firm that is finally determined to have caused your losses.

(c)    <u>Indemnity</u>. You shall, upon the receipt of written notice, indemnify, defend and hold harmless the Grant Thornton Firm from and against any liability, damages, fees, expenses, losses, demands and costs (including reasonable defense costs) associated with any claim arising from or relating to: (i) your misrepresentations; (ii) any third party claims related to Services provided under this Agreement; or (iii) false or incomplete information provided to us by you or your agents. You agree to reimburse the Grant Thornton Firm for all reasonable expenses including reasonable attorney's fees and expenses, as they are incurred in connection with the investigation of, preparation for, or defense of, any pending or threatened claim or action or proceeding arising from this Agreement, whether or not the Grant Thornton Firm is a party.

(d)    <u>Limitation on Period to File Claims</u>. It is expressly agreed that any claim by or on behalf of either party arising out of the Services, whether it be in contract, tort, or otherwise, shall be deemed waived if a claim is asserted more than two years from the date that the Deliverable is issued.

3.    <u>Use of Documentation and Reliance</u>. Our professional standards require us to maintain sufficient documentation to support our work. This documentation may include copies of your information. However to the

Purdue Pharma LP
Agreement dated **June 1, 2018**

extent that we have copies of your information, we will protect and safeguard your information from unauthorized disclosure.

You agree to protect all data, materials, deliverables and reports, and opinions delivered to you (the "Deliverables") from unauthorized use and prevent disclosure of the Deliverables to unauthorized third parties who may rely on them. Moreover, you agree that we have not and shall not be deemed to assume any duties or obligations to any third party, including without limitation an affiliate, subsidiary, parent company or shareholders, partners, members, creditors or any third party beneficiaries. Taxing jurisdictions are not considered third parties with respect to tax filings contemplated in a Statement of Work.

Our Deliverables will be based on our interpretation of the federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities, in effect when we provide our deliverables. All of these authorities are subject to change, and such change may be retroactive or prospective in effect. We assume no responsibility to either advise you of, or to update our conclusions, for changes in respect to federal and state laws, regulations, administrative and judicial pronouncements, and other relevant authorities. As a result, evaluation of our Deliverables shall be based solely on its substantial conformance with any standards or specifications expressly set forth in this Agreement and applicable law and any claim of nonconformance must be clearly and convincingly shown.

4.      <u>Third Party Proceedings</u>. Unless expressly provided for in a Statement of Work, our Services do not include giving testimony or appearing or participating in discovery proceedings, in administrative hearings, in court, or in other legal or regulatory inquiries or proceedings. Moreover, our costs, expenses and time spent in legal and regulatory matters or proceedings arising from this Agreement to which we are not a party and the Services are not at issue, such as subpoenas, testimony, bankruptcy filings or proceedings, consultation involving private litigation, arbitration, government or industry regulation inquiries, whether made at your request or the request of a third party or by subpoena or equivalent, will be billed to you separately at our then current rates.

5.      <u>Access to Resources and Information</u>. Unless specified in a Statement of Work as the responsibility of Grant Thornton to provide, you shall have obtained for us on a timely basis any internal and third party permissions, licenses or approvals that are required for us to perform the Services contemplated hereunder (including use of any necessary software or data). You shall also provide us, on a timely basis, with such information, approvals and assistance as may be necessary to our work or as we may reasonably request, and our personnel assigned to any work hereunder shall not be assumed or deemed to have knowledge of information provided to others, whether external to or within the Grant Thornton Firm.

6.      <u>Term and Termination</u>. This Agreement will commence on the Effective Date and it will not expire, unless earlier terminated as provided in this Attachment A. We shall each have the right to terminate this Agreement, in whole or in part, at any time without further obligation to the other by giving not less than thirty (30) days written notice to the other party; provided that in-process Statements of Work shall be completed, except in the event of an uncured, material breach. Further, Grant Thornton shall have the right to terminate this Agreement if it discovers practices by you that we deem dishonest, fraudulent, or illegal; or we determine that the American Institute of Certified Public Accountants, Public Company Accounting Oversight Board, Securities and Exchange Commission, or other applicable rules or professional standards result in the Grant Thornton Firm's inability to complete the work, the Grant Thornton Firm may terminate the applicable Statement of Work or this Agreement. In the event that either party terminates this Agreement or any or all Statements of Work as set forth in this section, you agree to pay us for the Services, including out-of-pocket expenses and costs, rendered up to the date of such termination.

7.      <u>Grant Thornton International Limited – A Global Organization of Independent Firms</u>. Grant Thornton LLP is the U.S. member of Grant Thornton International Ltd ("GTIL"), a global organization of member firms in more than 100 countries. Member firms are not part of one international partnership or otherwise legal partners with each other. There is no common ownership, control, governance, or agency relationship between member firms. However, from time to time, Grant Thornton affiliates or GTIL member firms may provide services in support of this Agreement. If GTIL member firms or Grant Thornton affiliates participate in providing Services under this Agreement, the terms of this Attachment A shall apply for the benefit of such GTIL member firms or Grant Thornton affiliates with respect to any work performed by them under this Agreement.

8.      <u>Electronic communications.</u> During the course of our engagement, we may need to electronically transmit confidential information to each other and to third-party service providers or other entities engaged by either Grant Thornton or you. Electronic methods include telephones, cell phones, e-mail, and fax. These technologies provide a fast and convenient way to communicate. However, all forms of electronic communication have inherent security

**Grant Thornton**

Purdue Pharma LP
Agreement dated **June 1, 2018**

weaknesses, and the risk of compromised confidentiality cannot be eliminated. You agree to the use of electronic methods to transmit and receive information, including confidential information.

9.    <u>Privacy.</u> Grant Thornton is committed to protecting personal information. We will maintain such information in confidence in accordance with professional standards and governing laws. Therefore, any personal information provided to us by the Company will be kept confidential and not disclosed to any third party unless expressly permitted by the Company or required by law, regulation, legal process, or professional standards. The Company is responsible for obtaining, pursuant to law or regulation, consents from parties that provided the Company with their personal information, which will be obtained, used, and disclosed by Grant Thornton for its required purposes.

Notwithstanding anything to the contrary herein, Grant Thornton imposes no conditions of confidentiality on any information it provides to you to the extent that it concerns the tax structure or tax treatment of any transaction.

10.    <u>Basis for Our Conclusions</u>. Our conclusions are limited solely to the matters for which we were engaged. No conclusions should be inferred as to any matters not specifically covered in the Agreement. Further, the conclusions are based upon the facts and information presented by you and may be inapplicable if the actual facts differ from those presented in any respect.

You represent that we may rely on the following, to the extent applicable, without verification.

(a)    All original documents, signatures and copies of documents provided by you are authentic.

(b)    When only drafts of pertinent documents are available, the executed versions of the draft documents will not vary materially from the ones provided by you for examination.

(c)    There are no inconsistent or adverse facts that are not otherwise provided by you and not apparent from the face of the documents that we have relied upon.

(d)    All legal documents necessary to perform the services have been duly and validly authorized, approved and executed by the appropriate persons.

With respect to (a) – (d) above, you hereby agree not to sue the Grant Thornton Firm and release the Grant Thornton Firm from all claims, whether known or unknown, liability, damages, fees, expenses and costs (including defense costs) relating to the Services that arise or relate to any information provided by you, your personnel or agents, that is misleading, incomplete, or not current.

11.    <u>Dispute resolution</u>. In the unlikely event that differences arise in connection with the validity, enforceability, performance or breach of this Agreement or our fees, either of us may request mediation in writing. Any mediation shall be assisted by a neutral mediator acceptable to you and Grant Thornton and each of us will use our best efforts to discuss our respective positions and resolve any dispute.

The parties may disclose facts during the mediation in an attempt to resolve the dispute. Any facts disclosed will be in furtherance of settlement and maintained as confidential by all parties. The parties agree to conclude mediation within sixty (60) days from receipt of the written notice unless the parties jointly agree to extend, terminate or waive mediation. Each party will each pay its own costs of mediation but will share equally the fees and expenses of the mediator.

In the event that mediation is not successful, we both recognize that the matter will probably involve complex business or accounting issues that would be decided most equitably to us both by a judge hearing evidence without a jury. Accordingly, to the extent now or hereafter permitted by applicable law, the parties agree to waive any right to trial by jury in any action, proceeding or counterclaim arising out of or relating to the Services or this Agreement.

If the above jury trial waiver is determined to be prohibited by applicable law, then the parties agree that the dispute or claim shall be settled by binding arbitration.  The arbitration proceeding shall take place in the city in which the Grant Thornton office providing the relevant Services is located unless the parties mutually agree to a different location.  The proceeding shall be governed by the provisions of the Federal Arbitration Act ("FAA") and will proceed in accordance with the then current Arbitration Rules for Professional Accounting and Related Disputes of the

![Grant Thornton]

Purdue Pharma LP
Agreement dated **June 1, 2018**

American Arbitration Association ("AAA"), except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitrator. The arbitrator will be selected from AAA, JAMS, the Center for Public Resources or any other internationally or nationally-recognized organization mutually agreed upon by the parties. Potential arbitrator names will be exchanged within 15 days of the parties' agreement to terminate or waive mediation, and arbitration will thereafter proceed expeditiously. The arbitration will be conducted before a single arbitrator, experienced in accounting and tax matters. The arbitrator shall have no authority to award non-monetary, equitable relief and will not have the right to award punitive damages. The award of the arbitration shall be in writing and shall be accompanied by a well-reasoned opinion. The award issued by the arbitrator may be confirmed in a judgment by any federal or state court of competent jurisdiction. Each party shall be responsible for their own costs associated with the arbitration, except that the costs of the arbitrator shall be equally divided by the parties. The arbitration proceeding and all information disclosed during the arbitration shall be maintained as confidential, except as may be required for disclosure to professional or regulatory bodies or in a related confidential mediation or arbitration.

12.     <u>General</u>.

(a)     Neither party shall assign any rights, obligations or claims relating to this Agreement.

(b)     Neither party shall be liable for any delay or failure in performance due to circumstances beyond its reasonable control.

(c)     Except for GTIL member firms and Grant Thornton affiliates, no third-party beneficiaries are intended under this Agreement.

(d)     Neither party shall use the other's name, service marks, or trademarks without prior written consent.

(e)     This Agreement, including its formation and the parties' respective rights and duties and all disputes that might arise from or in connection with this Agreement or its subject matter, shall be governed by and construed in accordance with the laws of Illinois, without giving effect to conflicts of laws rules. The parties consent to the personal jurisdiction of the courts of the state where the Grant Thornton office performing the Services is located and the United States District Court for the District of such state, and the parties waive objection to venue in any of these courts.

(f)     Each party is an independent contractor with respect to the other and shall not be construed as having a trustee, joint venture, agency or fiduciary relationship.

(g)     If any portion of this Agreement is held invalid, it is agreed that such invalidity shall not affect any of the remaining portions. Furthermore, if the Services are subject to the independence rules of the U.S. Securities and Exchange Commission ("SEC") with respect to you, such that any provision in this Agreement would impair our independence under the SEC's rules, such provision shall, to that extent, be of no further force and effect and the Agreement shall consist of the remaining provisions.

(h)     This Agreement, including any other incorporated attachments, sets forth the entire understanding between and among the parties regarding the Services and supersedes all prior and contemporaneous agreements, arrangements and communications and may not be modified or amended, except by the mutual written agreement of both parties.

(i)     The clauses regarding liability limitations, third party proceedings, indemnification and resolution of differences shall survive any termination of this Agreement.

13.     <u>Personnel</u>.  During the term of this Agreement and for a period of one (1) year after the Services are completed, we both agree not to solicit, directly or indirectly, or hire, the other's personnel participating on an engagement without express written consent. If this provision is violated, the violating party will pay the other party a fee equal to the hired person's annual salary in effect at the time of the violation to reimburse the estimated costs of hiring and training replacement personnel, **unless the individual is hired in response to a general advertisement made available to the public.**

14.     Successors and Affiliates. Recognizing that at times Grant Thornton's work may pertain not only to you but also to various subsidiaries, affiliates, advisors and contractors, partnerships, companies, trusts or foundations, you

![Grant Thornton]

Purdue Pharma LP
Agreement dated **June 1, 2018**

agree, as may be requested by Grant Thornton from time to time (including subsequent to completion of the Services), to obtain written acceptance of the terms of this Agreement. Furthermore, you represent and warrant that this Agreement shall be binding on each party hereto and on each of your respective subsidiaries, successors, assigns and legal representatives.

15. <u>Reportable Transactions</u>.  Taxpayers are required to disclose their participation in reportable transactions on forms filed with their federal income tax returns and/or with the IRS Office of Tax Shelter Analysis, and with agencies of certain states (or, in some cases, foreign jurisdictions) that impose similar requirements.  Failure to adhere to reportable transaction disclosure and filing requirements may result in the imposition of significant penalties under applicable federal, state and/or foreign law.  We may be a "Material Advisor" with regard to Services provided to you and we may be subject to our own federal and/or state reporting, registration and list maintenance obligations, which are separate and independent of any taxpayer disclosure obligation.  We may be required to maintain and disclose to applicable federal and/or state regulatory agencies certain information regarding your participation in a reportable transaction, including your name and federal identification number, and other information as required.

Except as specifically stated in this Agreement, Grant Thornton does not assume any obligation to express any opinion on, provide any advice related to, or identify from any information provided by you or obtained by us during the course of providing Services to you under this Agreement, whether any particular transaction is a reportable transaction or the potential consequences of non-compliance with disclosure and filing requirements pertaining to a reportable transaction.  Reliance on any opinion or advice we may provide regarding whether a transaction is or is not a reportable transaction and/or any disclosure and filing requirements may not avoid the imposition of any penalty imposed on you for the failure to comply with such disclosure and filing obligations.

16. <u>Privileges Relating to Taxpayer Communications</u>.  Any advice given by Grant Thornton with respect to a matter that is within the scope of our authority to practice before the IRS may be privileged under federal and state laws. This privilege may be asserted in any non-criminal tax matter before the IRS and in any non-criminal tax proceeding in Federal court and may be asserted to the extent such communication would be considered privileged communication if it were between a taxpayer and an attorney. At your sole cost and expense, we will cooperate with your efforts to assert taxpayer privileges when we receive a demand or inquiry for your information to the extent required by law.

◉ **GrantThornton**                                                                         1

# Purdue Pharma LP and Subsidiaries
# Statement of Work for Tax Structuring Services
### (For Tax Consulting Engagements Not Subject to the SEC Independence Rules)

This Statement of Work ("Statement of Work") dated March 15, 2021, becomes a part of and is subject to the terms and conditions of the Agreement dated June 1, 2018, between Purdue Pharma L.P.("Client," "Company," or "you") and Grant Thornton LLP ("Grant Thornton," "Firm," or "we"). Any capitalized terms that are not defined in this Statement of Work shall have the meanings in the Agreement.

The purpose of this Statement of Work is to describe the scope of services ("Services") the Company is requesting Grant Thornton to perform, and to set forth the agreed fee, timing and other matters related to the Services. This Statement of Work shall be deemed effective as of January 20, 2021, which is the date that Grant Thornton was requested by the Company to start providing Services to the Company hereunder.

**The services we will provide**
The Services we will provide under this Statement of Work will include assisting Company management in analyzing the income tax consequences to the Company with respect to transactions between the Company and the new entity ("Newco") anticipated to be created in the bankruptcy reorganization:

- Discuss and consult with the Company and its legal counsel, Davis Polk, regarding the federal and state income tax implications of transactions required by the Court (transactions as proposed by Davis Polk) effectuating the bankruptcy reorganization;

- Assist Company management in determining the federal income tax basis in the assets of the Newco and its affiliates immediately following the bankruptcy reorganization; and

- Assist in modeling future US federal and state income tax cash tax liabilities for Newco following emergence from bankruptcy.

The Services under this Statement of Work are intended solely for the benefit of Company and its affiliate debtors with pending cases under Chapter 11 (the "Chapter 11 Cases") of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and may not be relied on by any other third party including but not limited to Newco and its potential actual or beneficial owners.

**Delivering the services**
We will discuss with you an appropriate timeline for providing the Services listed above, including an agreed upon timeframe for completion. We will provide the Company with a request for information required to complete the Services based on the mutually agreed timeline.

Statement of Work – Non-SEC M&A Tax Structuring 04/03/2020 C19

Grant Thornton LLP
U.S. member firm of Grant Thornton International Ltd.

 Grant Thornton

2

This Statement of Work and the Services provided hereunder are subject to Bankruptcy Court approval in the Chapter 11 Cases. At the Company's request, Grant Thornton began providing Services under and in accordance with this Statement of Work effective as of January 20, 2021. The Company agrees to assist Grant Thornton and its counsel in promptly seeking Bankruptcy Court approval of this Statement of Work and Grant Thornton's retention in the bankruptcy cases *nunc pro tunc* to January 20, 2021, including filing and serving any pleadings in connection therewith.

The parties are entering into this Statement of Work at a time when a national emergency has been declared and the nation is responding to the Coronavirus (COVID-19) pandemic. Grant Thornton will use reasonable efforts to complete the Services as specified herein, while also taking the steps it deems necessary to protect the health, welfare and safety of its professionals. Neither party shall be liable for any delay or failure in performance (excluding payment for fees and expenses incurred) due to circumstances resulting from the pandemic which are beyond its reasonable control.

Limitations
Our responsibility under this Statement of Work extends only to Services we expressly agree to provide herein. Our responsibility does not include, for example, studies, detailed research or analysis not specifically set forth in this Statement of Work. If such items arise or you request additional Services, we will provide you a fee estimate and a new Statement of Work before we invest significant professional time.

US federal and state tax laws are ever changing and complex. Grant Thornton is only engaged to provide Services expressly set forth in this Statement of Work in accordance with applicable professional standards. Such obligation expressly does not include any obligation or responsibility to identify, suggest, model or advise on tax minimization or deferral opportunities, including but not limited to any such matters that may arise from the recently enacted CARES Act or other legislation or regulatory guidance. As your tax advisor, we welcome the opportunity to discuss your tax and business objectives and how we may serve you.

All engagements undertaken by Grant Thornton are subject to evaluating and resolving any potential or actual conflict of interest or independence concerns. While the occurrence is highly unusual, matters may arise from the ordinary course of our business operations, or yours, requiring us to resolve a conflict matter and/or terminate or suspend this engagement until any conflict or independence issue is resolved.

Additionally, Grant Thornton may use third parties to provide administrative and operational support to Grant Thornton business operations. All of these third-party service providers are subject to confidentiality obligations to protect the confidentiality of client data. Such entities may be located within or outside the United States. Grant Thornton shall be responsible for any such third-parties compliance with this Statement of Work.

◯ GrantThornton                                                                                3

## Use of GT Affiliate

Appropriate use of technology and resources is an important aspect of serving you. In our tax return preparation and tax consulting processes, we use the technology and resources of GT US Shared Services Center India Private Limited ("GTSSC") and/or the Grant Thornton Knowledge and Capability Center India Private Limited ("KCC"), affiliates of Grant Thornton located in Bangalore, India, to assist in providing tax services. Our affiliates' address is No.65/2, Bagmane Tridib, Block "A", 3rd and 4th Floor, Bagmane Tech Park, C.V. Raman Nagar, Bangalore – 560093.

The Firm's contract with such affiliates requires that they maintain the confidentiality of any tax return information provided to them in connection with providing tax services.

Professional and regulatory standards require us to obtain your written consent prior to providing your tax return information to such affiliates. Your authorization includes only prior year(s) and current year information in the possession of Grant Thornton that is necessary for the purpose of providing the Services covered by this Statement of Work.

If you do not advise us that you wish to limit the duration of your consent, your consent is valid for one year from the date of signature or the time period necessary to complete the Services under this Statement of Work, whichever is greater. If you wish, you may limit the amount, type, or scope of tax return information disclosed by letting us know in writing.

To acknowledge your consent to the disclosure of your tax return information as set forth above, please sign this Statement of Work.

## Fees and payment terms

Fees

Our fees for the Services under the Statement of Work will be based on our discounted hourly rates for this type of work, as reflected in the table below.

| Level | Discounted Hourly Rate |
| --- | --- |
| Partner / Managing Director | $765 |
| Senior Manager / Director | $650 |
| Manager | $570 |
| Senior Associate | $460 |
| Associate | $280 |



4

We will discuss with you circumstances that require us to do additional work which may include, but are not limited to, work to satisfy our obligations under applicable professional standards including additional fact gathering, analysis and preparation of disclosure forms, unforeseen scope changes including additional state returns or previously unidentified transactions or tax positions requiring analysis, and late or incomplete client provided information.

Payment schedule
Upon execution of this Statement of Work, you understand and agree that we will invoice you monthly as time is incurred. We will submit an itemized and detailed billing statement, and we will request payment of our fees and expenses in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Bankruptcy Court's Local Rules (the "Local Rules"), and any orders entered in the Bankruptcy Case. We will submit our invoices as work progresses and payment of them will be made upon receipt or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any other applicable orders of the Bankruptcy Court allow. We acknowledge that payment of our fees and expenses hereunder is subject to the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code.

In addition to the fees set forth above, we will bill you for direct expenses incurred by Grant Thornton in connection with the Services provided herein and its retention and fee applications submitted in the Chapter 11 Cases, including, but not limited to, reasonable and customary out-of-pocket expenses for items such as copies, postage, supplies, computer and technology usage, software licensing, research and library databases and similar expense items, as well as the fees and expenses that Grant Thornton's counsel directly bills Grant Thornton in connection with this engagement. If Grant Thornton is requested or authorized by the Company, or is required by government regulation, subpoena or other legal process, to produce its documents or personnel as witnesses with respect to the Services or this Statement of Work, the Company shall, so long as Grant Thornton is not a party in the proceeding in which such information is sought, reimburse Grant Thornton for its professional time and expenses, as well as the fees and expenses of Grant Thornton's counsel, if any, incurred in responding to such requests.

From time to time, Grant Thornton may receive certain incentives in the form of bonuses and rewards from its corporate card and other vendors. Such incentives to the extent received will be retained by Grant Thornton to cover firm expenses.

**Entire agreement**
This Statement of Work represents the parties' entire understanding with respect to the Services in this document. This Statement of Work does not modify or amend the Agreement. In the event of a conflict between this Statement of Work, Attachment A – Standard Grant Thornton LLP Terms and Conditions, and any other exhibit or attachment included in the Agreement, the terms of the Attachment A shall govern.

◯ **Grant Thornton**                                                                                                                5

## Agreed and accepted

The undersigned hereby agree to the terms and conditions as set forth above.

**GRANT THORNTON LLP**

By: _Russell A. Daniel_ (signature)                                 Date: 03/15/2021

Russell A. Daniel
Tax Partner

**PURDUE PHARMA L.P.**

By: _J. RL_ (signature)                                              Date: 3/15/2021

Jon Lowne
Executive Vice President, Chief Financial Officer