**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.,** *et al.*,<br><br>Debtors. [1] | **Chapter 11**<br><br>**Case No. 19-23649 (RDD)**<br><br>**(Jointly Administered)** |

### JOINT OBJECTION OF DISTRIBUTORS, MANUFACTURERS AND PHARMACIES TO MOTION OF DEBTORS FOR ENTRY OF ORDER APPROVING (I) OMNIBUS CLAIMS OBJECTION PROCEDURES, (II) OMNIBUS CLAIMS SETTLEMENT PROCEDURES AND (III) OMNIBUS CLAIMS HEARING PROCEDURES

The Distributors, Manufacturers and Pharmacies listed on the attached <u>Exhibit A</u> (collectively, the "<u>DMPs</u>"),[2] by and through each of their respective undersigned counsel, file this joint objection (the "<u>Objection</u>") to the *Motion of Debtors for Entry of Order Approving (i) Omnibus Claims Objection Procedures, (ii) Omnibus Claims Settlement Procedures and (iii) Omnibus Claims Hearing Procedures* [Docket No. 2490] (the "<u>Claims Procedures Motion</u>"),[3] filed by the above-captioned debtors and debtors in possession (the "<u>Debtors</u>").  In support of this Objection, the DMPs respectfully state as follows:[4]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] The DMPs joining in this Objection are each represented by separate counsel, and they each hereby join in the objections raised herein in their separate capacities. Other than as reflected in this Objection, no DMP acts, represents, or speaks on behalf of (or purports to act, represent or speak on behalf of) any other DMP or any other entities in connection with the Chapter 11 Cases.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Claims Procedures Motion and, if not defined therein, in the Proposed Plan (defined below).

[4] By virtue of filing this Objection, the DMPs do not consent to the jurisdiction of this Court or the entry of a final order or judgment by this Court on any matter other than this Objection and the Claims Procedures Motion, and reserve

## PRELIMINARY STATEMENT

1.      Through the Claims Procedures Motion, the Debtors seek to establish Proposed Procedures that deny the DMPs any semblance of meaningful due process.[5]

2.      The Proposed Procedures contravene the well-established burden-shifting framework and rules applicable to claims objections and are designed to stack the deck against the DMPs.  Specifically, the Proposed Procedures improperly: (a) relieve the Debtors of their burden of proof by permitting the Debtors to file vague and factually unsupported objections to claims; (b) shift the burden to the DMPs by requiring them to respond to such objections in further support of the merits of their claims, even if the Debtors have not specifically and properly rebutted the claims' facial validity; (c) force the DMPs to predict and address in their responses all of the Debtors' potential arguments that the Debtors have not yet made, and might never make; (d) favor the Debtors by allowing them to "lay in wait" and reveal their arguments and evidence for the first time in the Debtors' replies merely two days prior to a hearing, without providing any time or procedure for the DMPs to file a sur-reply; and (e) grant the Debtors sole discretion to determine the timing and extent of discovery by DMPs, and the timing and nature of hearings to consider the DMPs' claims.  The Proposed Procedures are neither fair nor efficient.

3.      For these reasons, as further detailed below, the DMPs request that the Court deny the Claims Procedures Motion unless the Proposed Claims Procedures Order is modified to (a) provide that it does not apply to the DMPs' claims, or (b) resolve the DMPs' objections raised herein.

---

all rights to challenge the subject matter, core, non-core, or other jurisdiction, and/or constitutional authority, of this Court to enter final judgment on any matter other than this Objection and the Claims Procedures Motion.

[5] This is unfortunately consistent with the Proposed Plan, through which the Debtors seek to unilaterally, and without any evidentiary basis, disallow the DMPs' valid claims and deprive the DMPs a full and fair opportunity to defend them, as the DMPs will explain in due course in their objection to the Proposed Plan.

ACTIVE/109120544.11

## BACKGROUND

**A.    The Opioid Litigation**

4.      Since May 2014, more than 3,000 complaints have been filed across the United States with respect to the manufacturing, marketing, distribution and dispensing of various opioid products (the "Opioid Litigation").

5.      Plaintiffs in the Opioid Litigation (the "Opioid Plaintiffs") include state attorneys general, municipal entities (including cities, counties, and political subdivisions) governmental agencies, school districts, third-party payers, hospitals, Native American tribes and private plaintiffs (including various putative class actions of individuals) in both state and federal courts and other tribunals.

6.      The complaints in the Opioid Litigation assert claims based on various legal theories, including but not limited to, public nuisance, negligence, fraud, unjust enrichment, civil conspiracy, RICO (and state law analogs), state Medicaid false claims acts, state consumer protection laws, Lanham Act, controlled substances acts, misleading advertising, deceptive and unfair trade practices, wrongful death, and products liability.

7.      The defendants in the Opioid Litigation include certain of the Debtors, the DMPs,[6] and certain members of the Sackler families (who are the ultimate owners of the Debtors).

8.      Each of the DMPs has disputed the allegations in the Opioid Litigation, and reserves all rights to assert any and all claims, defenses, rights of setoff, recoupment and other rights available to it in connection with the Opioid Litigation.[7]  The DMPs also assert the right

---

[6] Nothing contained herein shall be an admission of any fact or theory and each of the DMPs dispute the allegations in the Opioid Litigation, and reserve all rights to assert any and all claims, defenses, rights of setoff, recoupment and other rights available to it in connection with the Opioid Litigation.

[7] In addition, nothing contained herein shall be an admission of any fact or theory in connection with the Opioid Litigation.

ACTIVE/109120544.11

under various applicable laws to seek allocation of fault to the Debtors and other defendants in connection with any judgment issued in the Opioid Litigation—in which the Debtors have been identified as the "taproot of the opioid epidemic"[8]—even if a defendant's liability is discharged under the Proposed Plan.[9]  The DMPs also have defenses available to them under applicable law that could mitigate or eliminate their liability in the Opioid Litigation.

**B.    The Chapter 11 Cases, Mediation and Plan Negotiations**

9.    Beginning on September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to Chapter 11 in this United States Bankruptcy Court for the Southern District of New York (this "Court").  The Chapter 11 Cases are being jointly administered under Case No. 19-23649.

10.    According to the Debtors, "the Debtors committed to turn over all of their assets for the benefit of their claimants and the American public, with the goal of directing as much of the value of their assets as possible to combatting the opioid crisis in this country."[10]

11.    On March 4, 2020, the Bankruptcy Court entered the *Order Appointing Mediators*

---

[8] *State of New York v. Purdue Pharma, L.P.*, No. 400016/2018, Dkt. 101, ¶¶ 5, 12.

[9] Dozens of state statutes provide the DMPs with the right to seek judgment reduction, offset and/or allocation of fault. *See e.g.*, Alaska Stat. § 09.17.080 (Alaska law permits, in certain circumstances, for allocation of fault and liability to defendants on the basis of their conduct and culpability); *Cty. of Los Angeles* (1994) 27 Cal.App.4th 125, 151 (California law recognizes that "liability must be apportioned to each actor who caused the harm in direct proportion to such actor's respective fault, . . . whether or not each actor is a defendant in the lawsuit." (citing *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 602)); Fla Stat. § 768.31(5) (Florida law permits apportionment of fault to non-parties under certain circumstances); Ga. Code § 51-12-33 (Georgia law permits the apportionment of fault whether or not a party is named in the lawsuit); Ind. Code § 34-51-2-15 (Indiana law permits raising the fault of a non-party as an affirmative defense); *Kearny v. Brandt*, 67 A.3d 601 (N.J. 2013) (recognizing the right of joint defendants to apportion fault among parties dismissed from case); Ohio Code § 2315.32-36 (Ohio law permits fault to be apportioned to non-parties); Ok. Stat. § 12-832(H) (Under Oklahoma law, in cases of partial settlements with one joint tortfeasor, the other non-settling defendants are entitled to a claim reduction in the amount of the consideration paid for such partial settlement); Tenn. Code Ann. § 29-11-107(d) (Tennessee law permits the allocation of fault to third party or a settling party).  In addition, generally recognized tort principles give DMPs the right to apportion any damages among "two or more causes" where "each of the causes in question consists of the tortious conduct of a person." Restatement (Second) Torts § 433A, cmt. a.  For purposes of such apportionment, "it is immaterial whether all or any such persons are joined as defendants in the particular action." *Id.*

[10] Disclosure Statement at 2.

4

(Docket No. 895), appointing the Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators of a mediation primarily aimed at resolving disputes regarding allocation of the Debtors' value across the certain groups of Opioid Plaintiffs (the "Mediation").[11]

12.    None of the DMPs were invited to participate in the Mediation in its capacity as a DMP.[12]    In fact, when several DMPs including, without limitation, AmerisourceBergen, McKesson, and Teva asked to participate in the Mediation, the Debtors asked them to stand down.

13.    The Mediation not only resulted in settlements of claims of certain of the Opioid Plaintiffs, but it also established the architecture of the Proposed Plan, all of which was negotiated and completed without the participation of the DMPs.[13]    While the DMPs appreciate the complexity of the negotiations, the resulting Proposed Plan unfortunately proposes to take from the DMPs, among other things, all of their claims and rights of allocation and contribution, making the process by which this Court decides claims objections critically important to the DMPs.

C.    **The DMPs and Their Claims**

14.    The DMPs manufacture, distribute and/or dispense, *inter alia*, opioid medications and/or opioid abatement products.

15.    The DMPs hold liquidated and unliquidated claims against the Debtors which aggregate in the billions of dollars.  The DMPs' claims are based on or relate to the Opioid

---

[11] *See Debtors' Motion for Entry of An Order Appointing Mediators* [Docket No. 855].

[12] Disclosure Statement at 53 (identifying parties to the Mediation).  *See also Mediators' Report* at 2-8 [Docket No. 2548]. Counsel for CVS Caremark Part D Services and Caremark PCS Health participated in the Mediation in their capacity as members of the Creditors' Committee on a limited basis and for certain discrete matters.

[13] *See* Disclosure Statement at Art. III.F. ("The Debtors and their key stakeholders engaged in an extensive process leading up to filing the Plan, including through the Court ordered Mediation (defined below), to develop, build upon and refine the Settlement Framework. That process involved negotiating the proposed terms of the settlement of claims against the Debtors' shareholders, reaching agreement on the allocation of estate value among various classes of creditors and addressing a host of other issues expressly left open in the term sheet memorializing the Settlement Framework. The Plan represents the culmination of this intensive further negotiation and diligence process. Gate four is the Confirmation Hearing where the Debtors will seek approval of the substantially improved settlement embodied in the Plan.").

ACTIVE/109120544.11

Litigation and assert contractual indemnification rights, theories of common law contribution, and common law indemnity, rights under Purdue insurance policies, and other contractual and common law rights related to the Opioid Litigation (the "DMP Claims").

16.    In total, the DMPs collectively filed thousands of claims against the Debtors.  The DMP Claims were properly and timely filed.

17.    Collectively, the DMP Claims assert hundreds of millions of dollars in liquidated amounts, based on, among other things, prepetition contractual arrears, and settlement payments or attorneys' fees and other legal expenses that have been incurred or paid in connection with the Opioid Litigation for which the Debtors owe indemnity or reimbursement either under existing contracts or applicable law, or both.  Other aspects of the DMP Claims are presently contingent and/or unliquidated, based on the fact that many of the cases pending in the Opioid Litigation have not settled or been fully litigated to judgment.

### D.    Chapter 11 Plan and Disclosure Statement

18.    On March 15, 2021, the Debtors filed a *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2487] (the "Proposed Plan"), and a *Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2488] (the "Disclosure Statement").

19.    Despite their operational importance to the Debtors and the Proposed Plan and their enormous claims,[14] the DMPs were denied an opportunity to participate in plan negotiations with all of the other relevant stakeholders.

---

[14] The Disclosure Statement provides that upon the Effective Date of the Proposed Plan, the Debtors' businesses will be transferred to NewCo—a company created for the purpose of, *inter alia*, effectively deploying its assets to address the opioid crisis. *See* Disclosure Statement at Art. I.B. ("[T]he new company will continue the Debtors' development of opioid overdose reversal and addiction treatment medications, and will be authorized to deliver an unlimited amount of such medications at cost when development is complete."). The DMPs play an integral role in the complex supply chain serving the United States healthcare system.

20.     The Proposed Plan provides for the creation of post-confirmation trusts (the "Trusts") that will be funded by contributions by the Sacklers of approximately $4.28 billion, and other assets such as the Debtors' claims and causes of action, and rights under Purdue insurance policies, and NewCo's future revenue and asset sales. As proposed, the Trusts will distribute value to their beneficiaries in accordance with such Trust's governing documents.

21.     According to the Proposed Plan, the "Abatement Trusts," which consist of NOAT, the Tribe Trust, the Hospital Trust, the TPP Trust and the NAS Monitoring Trust (each as defined in the Proposed Plan), will make distributions to eligible recipients of funds for specific authorized opioid abatement purposes.[15]  NOAT and the Tribe Trust, as indirect owners of NewCo,[16] will dedicate distributions they receive from NewCo exclusively to programs designed to abate the opioid crisis.[17]  As such, ongoing operations will likely require NewCo to have contracts with many of the DMPs in order to enable NewCo to manufacture, deliver and distribute abatement-focused medications, which is critical to NewCo's mission to combat the opioid crisis afflicting the United States.

22.     Pursuant to the Proposed Plan, the DMP Claims are classified as "Co-Defendant Claims,"[18] a sweeping category which includes among other things, any claim that "is for or based

---

[15] Proposed Plan at § 5.7(c) ("Each Abatement Trust shall, in accordance with the Proposed Plan, the Confirmation Order and the applicable Abatement Trust Documents, make Abatement Distributions to Authorized Recipients for Authorized Abatement Purposes. The Abatement Trust Documents for each Abatement Trust shall provide that decisions concerning Abatement Distributions made by Abatement Trusts will consider the need to ensure that underserved urban and rural areas, as well as minority communities, receive equitable access to the funds.").

[16] Disclosure Statement at Art. III.T.1 ("NewCo will be a newly formed Delaware limited liability company that will be directly owned by TopCo (which will own 100% of the voting and economic interests in NewCo) and indirectly owned by NOAT and the Tribe Trust.").

[17] Disclosure Statement at Art.I.B ("All value distributed to NOAT and the Tribe Trust will be exclusively dedicated to programs designed to abate the opioid crisis and for no other purpose (other than to fund administration of the programs themselves and to pay fees and costs).").

[18] Claims held by the Shareholder Released Parties (*i.e.*, the Sacklers) are included within the definition of Co-Defendant Claims. However, the Shareholder Released Parties and their claims receive different treatment under the Proposed Plan. As such, for purposes of this Objection, references to "Co-Defendant Claims" excludes any claims held by the Shareholder Released Parties.

7

upon or arises from contribution, indemnification, reimbursement, setoff or recoupment or any other similar claim or Cause of Action" that "seeks to recover, directly or indirectly, any costs, losses, damages, fees, expenses or any other amounts whatsoever, actually or potentially imposed upon the Holder of such Claim, in each case relating to or arising from any actual or potential litigation or dispute, whether accrued or unaccrued, asserted or unasserted, existing or hereinafter arising, based on or relating to, or in any manner arising from, in whole or in part, Opioid-Related Activities or otherwise relating to opioids . . ."[19]

23.    Specifically, in the Proposed Plan, the Debtors place every Co-Defendant Claim in Class 13, regardless of its basis or underlying facts or whether such claim is liquidated or unliquidated, contingent, or non-contingent.   Indeed, the definition of "Co-Defendant Claim" expressly states that "[n]otwithstanding anything to the contrary in the Plan, any Claim that satisfies the definition of a Co-Defendant Claim shall be a Co-Defendant Claim notwithstanding that such Claim would otherwise satisfy the definition of another type of Claim." Proposed Plan, § 1.1.  Accordingly, the Proposed Plan denies holders of Co-Defendant Claims from being eligible for far more favorable treatment being provided to holders of Cure Claims, rejection damages claims and Other General Unsecured Claims, among others, even though certain of the Co-Defendant Claims would satisfy the definitions of those claims, such as trade claims held by DMPs that arose in the ordinary course of business unrelated to the Opioid Litigation. Further, other provisions of the Proposed Plan eliminate rights on the part of the holders of Co-Defendant Claims, without providing a rationale or consideration for such unlawful treatment.

24.    The Debtors' proposed treatment of Co-Defendant Claims is set forth in Section

---

[19] Proposed Plan at pp. 4-5.

ACTIVE/109120544.11

4.15 of the Proposed Plan,[20] which states that "[h]olders of Co-Defendant Claims shall not receive or retain any property on account of such Claims." Instead, all Co-Defendant Claims "shall be released in accordance with Section 8.4 of the Plan or otherwise deemed expunged, released and extinguished without further action by or order of the Bankruptcy Court with no distribution on account thereof, and shall be of no further force or effect." As holders of Co-Defendant Claims are receiving nothing under the Proposed Plan, the Proposed Plan provides that such holders are deemed to reject the Proposed Plan and not entitled to vote.

25.    The DMPs intend to file objections to the Proposed Plan and Disclosure Statement that will set forth in detail their objections to their treatment under the Proposed Plan and show that the Proposed Plan is not confirmable.[21]

### E.    Claims Procedures Motion

26.    On March 16, 2021, the Debtors filed the Claims Procedures Motion. Through the Claims Procedures Motion, the Debtors seek entry of an order attached as Exhibit A to the Claims Procedures Motion (the "Proposed Claims Procedures Order"): (a) authorizing the Debtors to file omnibus objections to claims ("Omnibus Claims Objections") in accordance with procedures set forth in the Proposed Claims Procedures Order (the "Proposed Claims Procedures"); and (b) establishing procedures governing hearings on the Debtors' objections to claims (omnibus or otherwise) (the "Proposed Hearing Procedures" and together with the Proposed Claims

---

[20] Section 4.15 of the Proposed Plan is bracketed, with a footnote stating that "The treatment of Co-Defendant Claims, including the treatment of any Estate Causes of Action against Holders of Co-Defendant Claims and other matters, remains subject to adjustment based on the outcome of ongoing discussions and substantive negotiations among the Debtors, the Ad Hoc Committee and the Holders of Co-Defendant Claims; *provided* that the treatment of Co-Defendant Claims, including the treatment of any Estate Causes of Action against Holders of Co-Defendant Claims shall be subject to the consent of the Ad Hoc Committee and the MSGE Group." However, since the Proposed Plan's filing and despite outreaches by the DMPs, the Debtors have not engaged in any negotiations with the DMPs.

[21] In addition, the DMPs intend to object to the Debtors' proposed confirmation schedule and protocols that are the subject of the *Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* [Docket Nos. 2536, 2626], which, like the Proposed Procedures, disregard the DMPs' rights to a full and fair opportunity to defend themselves and their claims.

ACTIVE/109120544.11

Procedures, the "<u>Proposed Procedures</u>").

27.    The Proposed Claims Procedures authorize the Debtors to object to as many as 500 claims in a single Omnibus Claims Objection.  *See* Proposed Claims Procedures Order, ¶ 2(c).  As proposed, the Debtors would be permitted to file objections on the grounds set forth in Bankruptcy Rule 3007(d), as well as certain "Additional Permitted Grounds" (as defined in the Proposed Claims Procedures Order) that are not set forth in Bankruptcy Rule 3007(d), including:

a.    the amount claimed is inconsistent with the Debtors' books and records;

b.    the Proof of Claim fails to specify sufficiently the basis for the claim or provide sufficient supporting documentation for such claim;

c.    the Debtors are not liable to the claimant for the amount or claim asserted;

d.    the claim is filed against non-Debtors, the wrong Debtor, or is filed against multiple Debtors, except to the extent permitted under the Bar Date Orders;

e.    the claimant is not entitled to the asserted secured status or other priority;

f.    the claim has been satisfied in full by a party that is not a Debtor;

g.    the claim has been waived or withdrawn pursuant to an agreement with the Debtors or the entry of a Court order; or

h.    the claim is objectionable under section 502(e)(1) of the Bankruptcy Code.[22]

28.    As proposed, other than stating a general basis of their objection to the claims set forth in an Omnibus Claims Objection, the Debtors would not be required to provide *any* evidence or even specific descriptions of the factual or legal bases supporting their objection to any particular claim.

29.    Pursuant to the Proposed Claims Procedures, regardless of the Debtors' failure to sufficiently describe their objections, creditors are required to file a response within 21 days after service of an Omnibus Claims Objection.[23]  However, having been denied the Debtors' specific

---

[22] *See* Proposed Claims Procedures Order at ¶ 2(a).
[23] *See* Proposed Claims Procedures Order at ¶ 3.

ACTIVE/109120544.11

factual and legal allegations, a creditor would have no choice but to predict and address in its responsive brief every conceivable potential argument the Debtors might, or might not, make in support of their Omnibus Claims Objection so that it is not sandbagged by an unexpected or overlooked argument first revealed in the Debtors' reply.

30.     Once the creditor files a response, the Debtors are granted an option, <u>exercised in their sole discretion</u>, to schedule either (a) a "Sufficiency Hearing," which is described as a non-evidentiary hearing at which the Court will determine whether the contested claim should be dismissed pursuant to Bankruptcy Rule 7012, applying a legal standard of review "equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted[,]" or (b) a "Merits Hearing," which is described as an evidentiary hearing on the merits of the contested claim.[24]

31.     Then, the Debtors would be permitted to file a reply to the creditor's response until two business days prior to the applicable hearing.[25]  However, the Debtors' reply deadline is illusory, given that the Debtors <u>are again granted sole discretion</u> and authorization to adjourn any hearing at any time simply by providing notice to the creditor and the Court.[26]

32.     Despite the fact that the Debtors' reply might be the first pleading in which the Debtors reveal their detailed arguments, the Proposed Procedures do not permit a creditor to file a sur-reply.

33.     As proposed, creditors are prohibited from seeking discovery until either (a) the Court has held a Sufficiency Hearing and determined that the contested claim states a claim that could be allowed and should not be dismissed pursuant to Bankruptcy Rule 7012, or (b) the

---

[24] *See* Proposed Claims Procedures Order at ¶ 7(d).
[25] *See* Proposed Claims Procedures Order at ¶ 7(f).
[26] *See* Proposed Claims Procedures Order at ¶ 7(f).

ACTIVE/109120544.11

Debtors have served the creditor with a Notice of Merits Hearing.[27]  If the Debtors schedule a Merits Hearing, only then will the rules and procedures applicable to a Merits Hearing be subject to a scheduling order issued by the Court in connection therewith.[28]

34.     Thus, in addition to the other defects described herein, the Proposed Hearing Procedures are unfair and one-sided in the Debtors' favor, as there is no guarantee of an actual timely hearing, and no mechanism for any of the DMPs to schedule, or seek relief from the Court to schedule, a hearing on the merits of objected-to claims or to engage in meaningful discovery regarding the Debtors' assertions regarding those claims.

## **OBJECTION**

35.     Although the Proposed Procedures are touted as typical procedures[29] meant to "facilitate and expedite the review and reconciliation"[30] of claims that have been asserted against the Debtors, they are far from typical, but instead turn normal notice pleading procedures upside down to stack the deck against creditors— particularly, holders of Co-Defendant Claims.

36.     Through this Objection, the DMPs object to specific features of the Proposed Procedures that prejudice the DMPs' rights to a full and fair opportunity to defend their claims in accordance with well-established law.  Unless the DMP Claims are excluded from the Proposed Procedures or those Proposed Procedures are modified as set forth herein, the Claims Procedures Motion should be denied.

---

[27] *See* Proposed Claims Procedures Order at ¶ 7(e).

[28] *See id*.

[29] Although the Debtors stress that "similar procedures" have been authorized by this Court in other "mega cases," including the Sears Holding Corp. and The Great Atlantic & Pacific Tea Company chapter 11 cases, no party in either of those two cases objected to the procedures.

[30] *See* Claims Procedures Motion at ¶ 15.

12

A.      **The Proposed Claims Procedures Improperly Shift The Debtors' Burden When Objecting To Claims.**

37.      As this Court has explained in prior opinions, objections to proofs of claim are subject to a shifting burden of proof. *See In re Pinnock*, 594 B.R. 609, 612 (Bankr. S.D.N.Y. 2018). Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). In addition, pursuant to Bankruptcy Rule 3001(f), a correctly and timely filed proof of claim constitutes prima facie evidence of the validity and amount of the claim.  *See* Fed. R. Bankr. P. 3001(f).  To overcome this prima facie validity, the objector "must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000); s*ee also In re Pinnock*, 594 B.R. at 612.

38.      Consequently, "[i]f the objector does not introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, **the claimant need offer no further proof of the merits of the claim.**" *In re Residential Cap., LLC,* 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014) (emphasis added) (second alteration in original) (internal citation omitted).  Only after the objector presents "evidence equal in force to the prima facie case" that refutes at least one allegation essential to the claim does the burden shift back to the creditor to "prove by a preponderance of the evidence that under applicable law, the claim should be allowed."  *In re Oneida, Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (internal citations omitted).

39.      The Proposed Claims Procedures turn this well-established framework on its head by permitting the Debtors to assert vague and unsupported objections to claims.  But the Advisory Committee's notes to Rule 3007(d) make clear that Congress carefully enumerated only a handful of circumstances where objections "can be resolved without material factual or legal disputes," and, thus, could be made in an omnibus objection. Fed. R. Bankr. Pro. 3007(d), Adv. Com. Note,

2007 Amendments. The Debtors' proposed "Additional Permitted Grounds" would enlarge the limited exceptions in Bankruptcy Rule 3007(d) to eviscerate the rule that a proof of claim is *prima facie* valid and must be rebutted with evidence. For example, in response to a *prima facie* validly filed claim, the Debtors' procedures would permit them to simply respond—with no supporting evidence—"not liable for the amount asserted," and the burden would shift back to the creditor. In turn, a creditor would be required to respond and provide further proof of the merits of its claims, even if the Debtors have not specifically rebutted the claims' facial validity, therefore failing as a matter of law to satisfy their initial the burden of proof.[31]

40.    According to the Proposed Claims Procedures, the Debtors would be permitted to file objections to as many as 500 claims in a single Omnibus Claims Objection on any of the Permitted Grounds, including the Additional Permitted Grounds. Other than stating a general basis of their objection, the Debtors would not be required to provide any evidence or even specific descriptions of the factual or legal bases supporting their objection to any particular claim. For example, the Debtors could object to 500 claims with the bare pronouncement that "the claims are objectionable under section 502(e)(1) of the Bankruptcy Code,"[32] without providing any further explanation, including, for example, upon which of the three subsections of section 502(e)(1) the Debtors are objecting, the portion or amount of the claim that is objectionable, or a description of the Debtors' co-liability with the creditor. Such vague allegations, without specific evidence refuting each subject claim, would not satisfy the Debtors' burden or provide the creditor with sufficient information to submit a thorough and meaningful defense of its claim. *See In re Residential Cap., LLC*, No. 12-12020 (MG), 2014 WL 1058921, at *5 (Bankr. S.D.N.Y. 2014)

---

[31] Indeed, the Debtors have already asserted vague and unsupported objections to the DMP Claims, among others, through the Proposed Plan's treatment of Co-Defendant Claims in Class 13.
[32] *See* Proposed Claims Procedures Order at ¶ 2(a)(viii).

ACTIVE/109120544.11

(overruling the debtors' omnibus "boilerplate books and records" objection as insufficient to shift the burden because the debtors failed to present evidence specifically addressing the creditor's contentions contained in the proof of claim).

41.    The Proposed Claims Procedures also force the creditor to respond to an Omnibus Claims Objection and provide further proof supporting its claims within 21 days after service of an objection.[33]    Unless it is provided specific factual allegations and legal bases supporting the objection to its claim, a creditor could not meaningfully respond and the suggested deadline for responding does not provide sufficient time for the creditor to conduct any discovery.    Such a procedure clashes with due process, which requires that, prior to judicial action being taken against a party, that party receive notice and a meaningful opportunity to be heard.    *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("[D]ue process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993) (A "claim against the [bankruptcy] estate[] constitutes property within the meaning of the Amendment[] and cannot be forfeited through proceedings lacking in due process.").

42.    This procedure does not comply with the adversary proceeding rules that the Debtors seek to invoke: Federal Rule of Civil Procedure 7(b)(1), which applies in adversary proceedings pursuant to Bankruptcy Rule 7007, requires that "A request for a court order must be made by motion. The motion must . . . **state with particularity the grounds for seeking the order** . . ." Fed. R. Civ. P. 7(b)(1) (emphasis added).    Although an Omnibus Claims Objection is a contested matter, not an adversary proceeding, the Debtors have requested that this Court employ

---

[33] *See* Proposed Claims Procedures Order at ¶ 3.

ACTIVE/109120544.11

the rules used in adversary proceedings for its claims objections, including the standard of review under Federal Rule of Civil Procedure 12(b)(6). *See* Claims Procedures Motion at ¶ 45 ("Bankruptcy Rule 9014(c), in turn, specifically authorizes bankruptcy courts to implement the formal rules used in adversary proceedings for claims objections . . ."). Accordingly, if the Debtors are permitted to employ certain rules governing adversary proceedings for their benefit, it is only fair that creditors be afforded protections provided under that same framework, including that the Debtors must state the factual and legal bases for their Omnibus Claims Objections with particularity and provide creditors an opportunity to conduct discovery regarding the claims at issue.

43.     The Proposed Hearing Procedures further illustrate the Debtors' attempt to conflate the burden-shifting rules applicable to claims objections with those of ordinary civil litigation, giving the Debtors sole control over the procedure and providing claimants with no ability to hold the Debtors to their evidentiary burden. If a creditor files a response, the Debtors have sole discretion to schedule either a Sufficiency Hearing or a Merits Hearing.[34] Until either a Sufficiency Hearing has been held or the Debtors have served the creditor a Notice of Merits Hearing, no discovery is permitted with respect to a contested claim.[35] In other words, the Proposed Procedures relieve the Debtors of their evidentiary burden and, in all circumstances, improperly shift the burden of proof to the creditor without affording the creditor an ability to meaningfully respond to the Debtors' objections. That is, the Debtors are the exclusive gatekeepers of whether the DMPs face a motion to dismiss, or a trial on the merits and when the DMPs are permitted to start conducting any related discovery. Whereas a civil defendant may elect to challenge the sufficiency of the pleadings or to proceed to the evidence, a debtor responding to a properly filed proof of

---

[34] *See* Proposed Claims Procedures Order at ¶ 7(d).
[35] *See* Proposed Claims Procedures Order at ¶ 7(e).

ACTIVE/109120544.11

claim cannot sidestep its burden to respond with evidence. This Proposed Procedure falls far short of satisfying either the applicable rules or fundamental due process.

44.     In sum, the Proposed Claims Procedures are inherently inefficient and procedurally unfair because, if the Debtors are not required to specify the legal and factual bases of their objections, the DMPs would be forced to predict all of the Debtors' actual objections and brief even the most trivial arguments that the Debtors have not yet made, or might never make, under penalty that an overlooked or unexpected argument will not be properly addressed by the DMPs. Likewise, the Debtors would be able to "lay in wait" and finally reveal their arguments and evidence merely **two days before a hearing**, leaving the DMPs **no time and no procedure to respond**.

45.     Accordingly, the DMPs request that the Proposed Claims Procedures Order be modified to: (a) include a clarification that nothing therein shall be construed to modify the burden-shifting framework under applicable law; (b) provide that if the Debtors file a reply, the DMPs shall have at least seven days to file a sur-reply and more time if discovery is required; (c) allow the DMPs to request the Court to schedule a Sufficiency Hearing, which shall be timely heard; (d) at such Sufficiency Hearing, the Court will first determine whether the Debtors have met their burden and, only if the Court determines that they have, the Court would then apply the Debtors' proposed legal standard of review, *i.e.*, the equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted; and (e) if following a Sufficiency Hearing it is determined that there are disputed issues of material fact, allow the DMPs to request the Court to schedule a Merits Hearing, which shall be timely heard with time for an appropriate discovery schedule as may be necessary for such Merits Hearing.

ACTIVE/109120544.11

**B.    The Proposed Hearing Procedures Unfairly Prejudice Creditors And Favor The Debtors**

46.    The Proposed Hearing Procedures grant the Debtors sole discretion to (a) set, at their option, either a Sufficiency Hearing or a Merits Hearing; and (b) schedule, at their convenience, such hearing.[36]  In addition, even after a hearing has been scheduled, the Debtors are granted sole discretion to adjourn a hearing "at any time by providing notice to the Court and the Claimant."[37]

47.    Granting the Debtors sole discretion over the scheduling of hearings will unfairly provide the Debtors with significant leverage over creditors in the claims litigation process.  For example, as proposed, although a creditor is required to file a response to an Omnibus Claims Objection within 21 days after service (or a shorter period if the Debtors' seek and obtain an order shortening notice),[38] the Debtors may file a reply until 4:00 p.m. on the day that is two business days prior to the hearing.[39] Practically, this schedule provides the Debtors with unlimited time to file a reply because (a) the Debtors have sole discretion to set the date of the hearing; and (b) even after the hearing has been set, the Debtors can adjourn the hearing, without consent of the creditor, simply by filing a notice with the Court.  These procedures would also permit the Debtors to adjourn hearings, and hold creditors and their recoveries in limbo, indefinitely.  That is neither fair nor efficient.

48.    In addition, as proposed, the Debtors would have authority to set a substantive Merits Hearing in as few as thirty days after serving a Notice of Merits Hearing.  However, given that creditors would be prohibited from serving discovery until either completion of a Sufficiency

---

[36] *See* Proposed Claims Procedures Order at ¶ 7(d).

[37] *See* Proposed Claims Procedures Order at ¶ 7(g).

[38] *See* Proposed Claims Procedures Order at ¶ 3.

[39] *See* Proposed Claims Procedures Order at ¶ 7(f).

ACTIVE/109120544.11

Hearing or service of a Notice of Merits Hearing, the proposed timetable would enable the Debtors to effectively avoid any meaningful discovery process. Under the Federal Rules of Bankruptcy Procedure, the Debtors would have at least thirty days from receipt within which to respond to any document requests, interrogatories, or requests for admission served by creditors. Permitting the Debtors to schedule a Merits Hearing within thirty days would (i) deprive creditors sufficient time to address discovery disputes, including assertions of privilege, (ii) eliminate creditors' ability to serve follow-up discovery requests, and (iii) force creditors to take depositions prior to receiving responses to written discovery. The DMP Claims arise from massive complex cases that when tried by state courts have required years of discovery and months of trial, and with all discovery of the Debtors and Sacklers having been stayed since commencement, it is unrealistic to think and improper to provide that these claims can be resolved under the Debtors' proposed timeframe or in a perfunctory hearing.

49. To prevent gamesmanship and prejudice to creditors that could result from the Proposed Hearing Procedures, the DMPs request that they be modified to provide that in the event a creditor files a response to an Omnibus Claims Objection, the Debtors and the creditor must agree on a hearing date for a Sufficiency Hearing (if requested by the Debtors or the creditor) or a Merits Hearing, and any adjournment would require agreement by the Debtors and creditor, or if such an agreement is not reached, a Court order, which can be sought by a creditor or the Debtors on an expedited basis. Any scheduling order in connection with a Merits Hearing would be based on an agreed-upon schedule that includes time for appropriate discovery, or if such an agreement is not reached, a Court order if following a Sufficiency Hearing it is determined that there are disputed issues of material fact.

50. These proposed modifications to the Proposed Hearing Procedures will more fairly

ACTIVE/109120544.11

balance the rights of creditors and lead to greater efficiency in narrowing issues and resolving or determining Omnibus Claims Objections.

### C.    The Debtors Must Object To Claims In An Efficient Manner

51.    The Debtors request authority to object to as many as 500 claims in a single Omnibus Claims Objection, on the ground that doing so "will ease the administrative burden on the Court and the administrative and financial burden on the Debtors' estates during the claims reconciliation process."[40]   However, there is no requirement that should the Debtors intend to object to multiple claims held by the same or affiliated creditors on the same or similar ground(s), such objections must be set forth in a single Omnibus Claim Objection.[41]   Accordingly, as proposed, the Debtors would be permitted to object to claims held by the same creditor or affiliated creditors in numerous separate Omnibus Claims Objections, which would unnecessarily multiply costs and proceedings and subject all parties to potentially inconsistent rulings.

52.    Consistent with the Debtors' goal to promote efficiency and reduce costs to the Debtors' estate, and in order to reduce costs to creditors responding to Omnibus Claims Objections, the Proposed Hearing Procedures should be modified to provide that:  (a) to the extent the Debtors intend to object to multiple claims of a creditor or affiliated creditors on the same or similar ground(s), the Debtors shall object to all of such claims in a single Omnibus Claims Objection; and (b) the hearing(s) and any other proceeding(s) on such objections shall, unless otherwise agreed by the Debtors and the creditor, or by order of the Court, be considered on a consolidated basis.

*[Remainder of Page Intentionally Left Blank]*

---

[40] *See* Claims Procedures Motion at ¶ 18.
[41] *See* Proposed Claims Procedures Order at ¶ 2(c).

ACTIVE/109120544.11

## CONCLUSION

WHEREFORE, the DMPs respectfully request that this Court enter an order: (a) denying

the Claims Procedures Motion unless the Proposed Claims Procedures Order is modified to either

(i) provide that it does not apply to the DMP Claims, or (ii) resolve the DMPs' objections raised

herein, and (b) granting to the DMPs such other and further relief as is just and proper.

Dated: April 15, 2021

/s/ Michael H. Goldstein
**GOODWIN PROCTER LLP**
Michael H. Goldstein
William P. Weintraub
Howard S. Steel
Barry Z. Bazian
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 813-8840
Fax: (212) 409-8404
Email: mgoldstein@goodwinlaw.com
            wweintraub@goodwinlaw.com
            hsteel@goodwinlaw.com
            bbazian@goodwinlaw.com

*Counsel for Teva Pharmaceuticals USA, Inc.*
*and Related Entities*

/s/ Claudia Z. Springer
**REED SMITH LLP**
Christopher A. Lynch
599 Lexington Avenue
New York, New York 10022-7650
Tel: (212) 521-5400
Fax: (212) 521-5450
Email: clynch@reedsmith.com

-and-

**REED SMITH LLP**
Claudia Z. Springer (*admitted Pro Hac Vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
Email: cspringer@reedsmith.com

-and-

**CRAVATH, SWAINE & MOORE LLP**
Michael T. Reynolds
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel: (212) 474 - 1552
Fax: (212) 474 - 3700
Email: mreynolds@cravath.com

*Counsel for AmerisourceBergen Drug Corporation*

ACTIVE/109120544.11

*/s/ Douglas K. Mayer*
**WACHTELL, LIPTON, ROSEN & KATZ**
Richard G. Mason
Douglas K. Mayer
Elaine P. Golin
Angela K. Herring
51 W. 52nd St.
New York, New York 10019
Tel: (212) 403-1000
Fax:  (212) 403-2000
Email: RGMason@wlrk.com
       EPGolin@wlrk.com
       AKHerring@wlrk.com

*Counsel for Cardinal Health, Inc. and Related Entities*

*/s/ Catherine Steege*
**JENNER & BLOCK LLP**
Catherine Steege
Melissa Root
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 222-9350
Email: csteege@jenner.com
       mroot@jenner.com

-and-

**JENNER & BLOCK LLP**
Richard Levin
919 Third Avenue
New York, New York 10022-3908
Tel: (212) 891-1600
Email: rlevin@jenner.com

*Counsel for McKesson Corporation and Related Entities*

*/s/Geoffrey S. Goodman*
**FOLEY & LARDNER LLP**
Geoffrey S. Goodman
321 N. Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Tel: (312) 832-4500
Fax: (312) 832-4700
E-mail: ggoodman@foley.com

-and-

**FOLEY & LARDNER LLP**
Leah M. Eisenberg, Esq.
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (713) 276-6727
E-mail: leisenberg@foley.com

*Counsel for CVS Pharmacy, Inc. and its Related Entities*

*/s/ Evan M. Jones*
**O'MELVENY & MYERS LLP**
Evan M. Jones (admitted *pro hac vice*)
400 South Hope Street
Los Angeles, California 90071
Tel: (213) 430-6000
Email: ejones@omm.com

-and-

**O'MELVENY & MYERS LLP**
Nathaniel Asher
Adam P. Haberkorn
7 Times Square
New York, New York  10036
Tel: (212) 326-2000
Email: nasher@omm.com
       ahaberkorn@omm.com

*Counsel for Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil- Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., Alza Corporation, and Janssen Ortho LLC*

ACTIVE/109120544.11

/s/ Norman L. Pernick
**COLE SCHOTZ P.C.**
Norman L. Pernick
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 652-3131
Fax: (302) 652-3117
Email: npernick@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
David M. Bass
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Tel: (212) 752-8000
Fax: (212) 752-8393
Email: dbass@coleschotz.com

*Counsel for Endo International plc. and its
Related Entities*

/s/ Jeremy W. Ryan
**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan, Esq.
Aaron H. Stulman, Esq.
D. Ryan Slaugh, Esq.
1313 N. Market Street, Sixth Floor
Wilmington, Deleware 19801
Tel: (302) 984-6000
Fax: (302) 658-1192
Emails: jryan@potteranderson.com
astulman@potteranderson.com
rslaugh@potteranderson.com

*Counsel for Walmart, Inc.*

/s/ Joseph D. Frank
**FRANKGECKER LLP**
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
1327 W. Washington Blvd., Suite 5 G-H
Chicago, Illinois  60607
Tel: (312) 276-1400
Fax: (312) 276-0035
Email: jfrank@fgllp.com
jkleinman@fgllp.com

*Counsel for Walgreen Co., Walgreen Eastern
Co., Inc. and Walgreen Arizona Drug Co.*

/s/ Mark S. Indelicato
**HAHN & HESSEN LLP**
Mark S. Indelicato, Esq.
488 Madison Avenue
New York, New York 10022
Tel: (212) 478-7200
Fax: (212) 478-7400
E-mail: mindelicato@hahnhessen.com

*Counsel for Mylan Inc., Mylan Pharmaceuticals Inc.,
Mylan Technologies Inc., Mylan Specialty L.P., Mylan
Bertek Pharmaceuticals Inc., Mylan Pharmaceuticals
ULC, BGP Pharma ULC, and Viatris Inc. (successor-
in-interest to Mylan N.V.)*

ACTIVE/109120544.11

/s/ Ryan A. Wagner
**GREENBERG TRAURIG, LLP**
Ryan A. Wagner
200 Park Avenue
New York, NY 10166
Telephone: 212.801.3191
Email: wagnerr@gtlaw.com

*Counsel for Sandoz Inc.*

/s/ Alissa K. Piccione
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Henry J. Jaffe (*pro hac vice* to be filed)
Marcy J. McLaughlin Smith (*pro hac vice* to be filed)
Hercules Plaza
1313 N. Market Street, Suite 5100
P.O. Box 1709
Wilmington, Delaware 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: Henry.Jaffe@troutman.com
            Marcy.Smith@troutman.com

-and-

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Suzanne Forbis Mack (*pro hac vice* to be filed)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103
Tel: (215) 981-4000
Fax: (215) 981-4750
Email: Suzanne.Mack@troutman.com

-and-

/s/ G. Robert Gage, Jr.
**GAGE SPENCER & FLEMING LLP**
G. Robert Gage, Jr.
410 Park Avenue
New York, New York 10022
Tel: 212-768-4900
Fax: 212-768-3629
Email: grgage@gagespencer.com

*Counsel for Allergan Finance, LLC, Allergan Limited, Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Warner Chilcott Sales (US), LLC, and AbbVie Inc.*

/s/ Reuel D. Ash
**ULMER & BERNE LLP**
Reuel D. Ash (0055843)
600 Vine Street, Suite 2800
Cincinnati, Ohio  45202
Tel: (513) 698-5118
Fax: (513) 698-5119
Email: rash@ulmer.com

*Counsel for Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals of New York, LLC, Impax Laboratories, Inc. and Impax Laboratories, LLC*

/s/ Gregory Gartland
**WINSTON & STRAWN, LLP**
Gregory Gartland
200 Park Avenue
New York, New York 10166
Tel: (212) 294-2693
Email: ggartland@winston.com

*Counsel for Hikma Pharmaceuticals USA Inc. f/k/a West-Ward Pharmaceuticals Corp.*

ACTIVE/109120544.11

**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
Alissa K. Piccione
875 Third Avenue
New York, NY 10022
Tel: (212) 704-6000
Fax: (212) 704-6288
Email: Alissa.Piccione@troutman.com

*Counsel for Sun Pharmaceuticals Canada, Inc.,
Sun Pharmaceutical Industries, Inc., and
Ranbaxy Pharmaceuticals Canada Inc.*

*/s/ Thomas E. Rice*
**BAKER STERCHI COWDEN & RICE LLC**
Thomas E. Rice
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108-2533
Tel: 816-471-2121
Email: rice@bscr-law.com

*Counsel for KVK - Tech, Inc.*

ACTIVE/109120544.11

# EXHIBIT A[1]

## Distributors, Manufacturers and Pharmacies

### *AbbVie*
- AbbVie Inc.

### *Allergan*
- Allergan Limited f/k/a Allergan plc f/k/a Actavis plc
- Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.
- Allergan Sales, LLC
- Allergan USA, Inc.
- Allergan, Inc.
- Warner Chilcott Sales (US), LLC

### *AmerisourceBergen*
- AmerisourceBergen Drug Corporation, in its individual capacity
- AmerisourceBergen Drug Corporation, as successor in interest to Bellco Drug Corp.
- Integrated Commercialization Solutions, Inc.
- American Medical Distributors, Inc.
- AmerisourceBergen Corporation
- J.M. Blanco, Inc.
- MWI Veterinary Supply, Inc.
- PharMEDium Services, LLC
- H.D. Smith Holdings LLC
- H.D. Smith, LLC
- Valley Wholesale Drug Co., LLC

### *Amneal*
- Amneal Pharmaceuticals of New York, LLC
- Amneal Pharmaceuticals LLC

### *Impax Laboratories*

- Impax Laboratories, Inc.
- Impax Laboratories, LLC

### *Cardinal*
- Cardinal Health, Inc.
- Cardinal Health 3, LLC
- Cardinal Health 3, Inc.
- Cardinal Health 5, LLC

---

[1] The DMPs reserve all rights to modify, amend, and/or supplement this **Exhibit A** from time to time. Information regarding the claims filed by each DMP can be found in the DMPs' respective proofs of claim.

- Cardinal Health 6 Inc. (f/k/a Physicians Purchasing, Inc.)
- Cardinal Health 100, Inc.
- Cardinal Health 103, Inc.
- Cardinal Health 104 LP
- Cardinal Health 105, Inc. (d/b/a Specialty Pharmaceutical Services)
- Cardinal Health 106, Inc.
- Cardinal Health 107, LLC
- Cardinal Health 107 Inc.
- Cardinal Health 108, LLC (f/k/a Cardinal Health 108, Inc.) (d/b/a Specialty Pharmaceutical Distribution) (d/b/a Metro Medical Supply)
- Cardinal Health 110, LLC (d/b/a Gen-Source RX) (f/k/a Cardinal Health 110, Inc.)
- Cardinal Health 112, LLC
- Cardinal Health 113, Inc.
- Cardinal Health 113, LLC
- Cardinal Health 122, LLC (f/k/a P4 Healthcare, LLC)
- Cardinal Health 132, LLC
- Cardinal Health 200, LLC
- Cardinal Health 201, LLC
- Cardinal Health 201, Inc.
- Cardinal Health 411, Inc.
- Cardinal Health 414, LLC
- Cardinal Health P.R. 120, Inc. (f/k/a Borschow Hospital & Medical Supplies, Inc.)
- Cardinal Health Pharmacy Services, LLC
- Dik Drug Company, LLC
- The Harvard Drug Group, L.L.C. (d/b/a Major Pharmaceuticals) (d/b/a Rugby Laboratories)
- Kinray, LLC (f/k/a Kinray, Inc.)
- Kinray I LLC
- ParMed Pharmaceuticals, LLC (f/k/a Parmed Pharmaceuticals, Inc.)

### *CVS*
- CVS Caremark Part D Services, L.L.C.
- Caremark PCS Health, L.L.C.

### *Endo*
- Endo International plc
- Endo Health Solutions Inc.
- Endo Pharmaceuticals Inc.
- Par Pharmaceutical Inc.
- Par Pharmaceutical Companies, Inc.
- Endo Generics Holdings, Inc.
- Vintage Pharmaceuticals, LLC
- Generics Bidco I, LLC
- DAVA Pharmaceuticals, LLC
- Paladin Labs Inc.

ACTIVE/109120544.11

### *Hikma*
- Hikma Pharmaceuticals USA Inc.
- Boehringer Ingelheim Corp.
- Baxter Healthcare Corp.

### *Johnson & Johnson*
- Johnson & Johnson
- Janssen Pharmaceuticals, Inc.
- Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.
- Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.
- Alza Corporation
- Janssen Ortho LLC

### *KVK-Tech*
- KVK - Tech, Inc.

### *McKesson*
- McKesson Corporation
- McKesson Canada Corporation
- McKesson Medical Surgical Inc.
- Health Mart Systems, Inc.
- PSS World Inc.
- McKesson Specialty Care Distribution Corporation
- McKesson Specialty Distribution, LLC
- McKesson Medical-Surgical Minnesota Supply Inc.

### *Mylan*
- Mylan Inc.
- Viatris Inc. successor-in-interest to Mylan N.V.
- Mylan Pharmaceuticals Inc.
- Mylan Institutional Inc.
- Mylan Technologies Inc.
- Mylan Specialty L.P.
- Mylan Bertek Pharmaceuticals Inc.
- Mylan Pharmaceuticals ULC
- BGP Pharma ULC

### *Sandoz*
- Sandoz Inc.

### *Sun Pharmaceuticals*
- Sun Pharmaceuticals Canada, Inc.
- Sun Pharmaceutical Industries, Inc.
- Ranbaxy Pharmaceuticals Canada Inc.

ACTIVE/109120544.11

### *Teva*

- Teva Pharmaceuticals USA, Inc.
- Cephalon, Inc.
- Cupric Holding Co., Inc.
- Teva Canada Limited
- Teva Pharmaceutical Holdings Cooperative U.A.
- Teva Pharmaceuticals Europe B.V.
- Teva Sales and Marketing, Inc.
- Teva Branded Pharmaceutical Products R&D, Inc.
- Anda, Inc.
- Anda Pharmaceuticals, Inc.
- Anesta LLC
- Barr Laboratories Inc.
- Teva Biopharmaceuticals USA, Inc.
- Anda Marketing Inc.
- Actavis Pharma, Inc.
- Actavis LLC
- Actavis South Atlantic LLC
- Actavis Mid Atlantic LLC
- Actavis Totowa LLC
- Actavis Elizabeth LLC
- Actavis Kadian LLC
- Watson Laboratories, Inc.
- Teva Puerto Rico LLC
- Actavis Laboratories UT, Inc.
- Actavis Laboratories FL, Inc.
- Cobalt Pharmaceuticals Inc.

### *Walgreens*

- Walgreen Co.
- Walgreen Eastern Co., Inc.
- Walgreen Arizona Drug Co.

### *Walmart*

- Walmart, Inc.

ACTIVE/109120544.11