Hearing Date: May 4, 2021 at 10:00 a.m.
Objection Deadline: April 23, 2021 at 4:00 p.m.

CARTER LEDYARD & MILBURN LLP
Aaron R. Cahn
Carter Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
Telephone:  (212) 732-3200
Bankruptcy@clm.com

*Attorneys for the State of West Virginia, ex. rel. Patrick Morrisey, Attorney General*

      -and-

PATRICK MORRISEY, ATTORNEY GEERAL
STATE OF WEST VIRGINIA
Ann L. Haight, Deputy Attorney General
Abby G. Cunningham, Assistant Attorney General
Laurel K. Lackey, Assistant Attorney General (admitted *pro hac vice*)
The Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Ann.L.Haight@wvago.gov
Laurel.K.Lackey@wvago.gov
Abby.G.Cunningham@wvago.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 19-23649 (RDD) |
|  | Chapter 11 |
| PURDUE PHARMA, L.P., et al.,[1] | Jointly Administered |
| Debtors. |  |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717)

                                                     x

## OBJECTION TO DEBTORS' MOTION TO APPROVE DISCLOSURE STATEMENT

The State of West Virginia, *ex. rel.* Patrick Morrisey, Attorney General ("West Virginia"), hereby object to the Debtors' Motion to Approve (i) The Adequacy of Information in the Disclosure Statement, (ii) Solicitation and Voting Procedures, (iii) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (iv) Certain Dates With Respect Thereto (Doc. No. 2489) (the "Motion") and states as follows:

### Introduction

1. Even before these cases were filed more than 18 months ago, West Virginia, in common with virtually all other state governments and other interested parties, has participated in negotiations concerning the ultimate outcome of a restructuring that would be accomplished by a bankruptcy filing. After close to two years of negotiations and months of mediations conducted under the auspices of this Court, the Debtors have filed a plan and disclosure statement.

2. From the outset of the negotiations, and consistently during the course of this case, West Virginia has made clear its position that one of the most important issues from its point of view would be the allocation of proceeds to the various state governments. It has consistently argued that any allocation scheme must be devised so as to account for the intensity of the opioid addiction crisis in each of the states and to give each state the funds necessary to fund meaningful remediation efforts in partnership with its local governments.

---

and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

3. While West Virginia was not included in the mediation sessions, it accepts that meaningful progress has been made on a number of allocation-related fronts. However, neither the plan nor the disclosure statement includes any provisions relating to the actual allocation of proceeds between the various states and territories. Instead, it appears that the intention of the plan – confirmed by a conversation with Debtors' counsel - is to leave the ultimate decision on allocation issues to the trust that is intended to be established by the plan rather than this Court. Accordingly, creditors are being asked to vote on the plan without knowing how their distributions are likely to be calculated, or how to achieve redress if a board of trustees is given sole discretion to allocate funds.

4. In addition, based on information which has been disclosed in various conversations with mediation participants and representatives of the various ad hoc committees that have been active in this case, it appears that at the behest of large population states such as California, Texas and New York, the trustees will be asked to approve a distribution scheme based almost entirely on population with only minimal consideration given to the intensity of the addiction problem within individual states. While the ultimate allocation scheme is a confirmation issue rather than a disclosure statement issue, we bring it to the Court's attention now since we believe that the failure to disclose the terms of the ultimate distribution plan is part and parcel of a desire to avoid court challenges to an inherently inequitable arrangement, and one which violates the overriding principle of this case; namely, that the money should go where it is most needed.

### **The Allocation Issue**

5. As noted above, the allocation plan which the big states have apparently persuaded many of the parties to agree to is based almost entirely on population and ignores almost entirely the issue of intensity.

9826685.3

6. West Virginia and its analytics team have spent a great deal of time and effort analyzing the interstate allocation plan which is being advanced by many of the states, and believe that if adopted, it will render the plan unconfirmable because, although it purports to treat all states equally because all will be governed by the same set of factors, states such as West Virginia will suffer badly because the plan fails to account in any meaningful way for the great disparities in intensity of opioid addiction and opioid death that exist between the states. Accordingly, the equality of treatment that is required to be achieved between unsecured creditors will not exist.

7. West Virginia has developed an alternate allocation plan, using as its starting point models developed by federal agencies such as the Substance Abuse and Mental Health Services Administration ("SAMHSA") that accounts much more directly for the effect of intensity issues than does the interstate allocation plan. But that issue is for plan confirmation, as is the concept of leaving the ultimate determinations to an effectively unaccountable board of trustees. The object of this response, as noted, is simply to obtain disclosure of this most crucial factor to, at the very least, the non-federal public entity creditors.

**The Failure to Disclose State Allocations Requires Rejection of the Disclosure Statement**

8. It is, of course, hornbook law that a disclosure statement must provide adequate information to permit creditors to make an informed judgment about the plan (11 U.S.C. 1125(a)), and that the adequacy of information be evaluated on a case-by-case basis. *In re A.H. Robins Company, Incorporated*, 880 F.2d 694, 696 (4th Cir. 1989). While the factors to be considered necessarily vary with the facts of each case, and have been defined in various ways by many different courts, a crucial component of any disclosure statement is that it "should provide the average unsecured creditor 'what it is going to get, when it is going to get it, and what

contingencies there are to getting its distribution.'" [citation omitted]. *In re Radco Properties, Inc*. 402 B.R. 666, 683 (Bankr. E.D.N.C. 2009).

9. It goes without saying that there are, necessarily, a great many unknowns at this stage of the case as to how much money any creditor will receive and when it will receive it. But one piece of information that is known is the allocation scheme which the major parties in this case have either agreed on or at least agreed to present to the trustee for implementation. Without disclosure of that important piece of information, creditors cannot be said to have adequate information to enable them to vote on the plan.

10. Since the state creditors have filed proofs of claim that, in total, exceed $2 trillion, the votes of those creditors will clearly be critical to approval of any plan. But all creditors have an interest in how the distributions allocated to the states will be apportioned. Under the plan, local governments will receive their distributions from the states according to distribution schemes that have been or will be put in place. And even the personal injury claimants have an interest in knowing whether the states they reside in will be receiving adequate funds to combat the addiction crisis facing in that jurisdiction.

11. As noted in paragraph 3 above, the Debtors have confirmed their intention to permit the non-federal governmental entities to decide for themselves how to allocate the distributions that will eventually wend their way to the National Opioid Abatement Trust ("NOAT"), the body that will be charged by the plan with making distributions to the states and local governments. Whether or not such a procedure – that is, directing a sum of money to a group of creditors not legally united in interest and allowing that group, working through a board of trustees legally answerable to no one except perhaps a majority of state creditors, to decide for itself how to split the money – satisfies the Bankruptcy Code's requirement for equality of treatment of creditors is a confirmation

issue. But knowing what those arrangements will be and how they will operate is vital to consideration of the plan and must be disclosed at this stage of the proceedings.

12. Accordingly, the disclosure statement, in its present form, must be rejected for failing to provide adequate information as defined in the Bankruptcy Code.

### Joinders

13. The Attorney General is joined in this objection by the following West Virginia local governments, all of which have authorized their inclusion in this objection:

**Counties:** Berkeley, Braxton, Calhoun, Gilmer, Jackson, Jefferson, Morgan, Nicholas, Pendleton, Pleasants, Pocahontas, Raleigh, Ritchie, Roane, Summers, Wirt, Wood, and Wyoming.

**Cities and Towns:** Belle, Bluefield, Buckhannon, Ceredo, Charles Town, Charleston, Chesapeake, Clarksburg, Clendenin, Dunbar, Eleanor, Elizabeth, Fayetville, Fort Gay, Gauley Bridge, Glenville, Granville, Harrisville, Hinton, Hurricane, Kenova, Lester, Logan, Mabscott, Madison, Martinsburg, Milton, Mitchell Heights, Montgomery, Mt. Hope, Nitro, Nutter Fort, Oak Hill, Paden City, Parkersburg, Pax, Pineville, Princeton, Quinwood, Rainelle, Ravenswood, Richwood, Ripley, Romney, Ronceverte, Rupert, Shinnston, Sistersville, Smithers, Sophia, South Charleston, Spencer, St. Albans, St. Mary's, Star City, Stonewood, Summersville, Sutton, Wayne, West Logan, White Sulphur Springs, Whitesville, Williamstown, and Winfield.

Dated: April 23, 2021
New York, New York

CARTER LEDYARD & MILBURN LLP

_____s/Aaron R. Cahn_____
Aaron R. Cahn
Carter Ledyard & Milburn LLP
*Attorneys for the State of West Virginia, ex. rel. Patrick Morrisey, Attorney General*
2 Wall Street

6

New York, NY  10005
Telephone: (212) 732-3200
Fax: (212) 732-3232
Bankruptcy@clm.com

-and-

PATRICK MORRISEY, ATTORNEY GEERAL
STATE OF WEST VIRGINIA
Ann L. Haight, Deputy Attorney General
Abby G. Cunningham, Assistant Attorney General
Laurel K. Lackey, Assistant Attorney General
(admitted *pro hac vice*)
The Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Ann.L.Haight@wvago.gov
Laurel.K.Lackey@wvago.gov
Abby.G.Cunningham@wvago.gov

9826685.3