**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| PURDUE PHARMA L.P., *et al.* | ) Chapter 11 |
| | ) |
| Debtors | ) Case No. 19-23649 (RDD) |
| | ) |

**OBJECTION TO THE DEBTORS' DISCLOSURE STATEMENT
MOTION BY NAVIGATORS SPECIALTY INSURANCE COMPANY,
AMERICAN GUARANTEE, AND LIABILITY INSURANCE COMPANY
AND STEADFAST INSURANCE COMPANY**

Navigators Specialty Insurance Company ("Navigators"), American Guarantee and Liability Insurance Company ("AGLIC"), and Steadfast Insurance Company ("Steadfast," and together with Navigators and AGLIC, the "Insurers") hereby object to the Debtors' motion [Dkt. 2499] (the "Disclosure Statement Motion") seeking, among other things, approval of the Disclosure Statement [Dkt. 2488] (the "Disclosure Statement") for the Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtor [Dkt. 2487] (the "Plan").[1]

The Bankruptcy Code requires that a disclosure statement provide adequate information, "of a kind, and in sufficient detail, as far as is reasonably practicable ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The Disclosure Statement lacks "adequate information" within the meaning of 11 U.S.C. § 1125 and therefore should not be approved until its deficiencies are remedied.

In particular, the Disclosure Statement fails to disclose that the Insurers (and other of the Debtors' insurers) have informed the Debtors that they do not believe the "insurance neutrality"

---

[1] This objection is limited to disclosure issues only, and Insurers reserve all rights to raise any and all objections that it has to the Plan at the confirmation stage.

1

provision in the Plan is sufficient to protect the insurers' rights, that they have sent the Debtors alternative language, and that this Court, or a court on appeal, may require that such language be included within the Plan as a condition to confirmation. Creditors need to be so informed so they understand that the language of the Plan may need to be modified to be confirmed.

In bankruptcy, property interests are created and defined by state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). "'[T]he owner of an insurance policy cannot obtain greater rights to the proceeds of [an insurance policy] ... by merely filing a bankruptcy petition.'" *In re Denario*, 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001); *accord In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 194–95 (Bankr. S.D.N.Y. 2012) ("[t]he filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy"); *In re Lloyd E. Mitchell, Inc.*, No. 06-13250-NVA, 2012 Bankr. LEXIS 5531, at *20 (Bankr. D. Md. Nov. 29, 2012) ("insurance contracts cannot be re-written by this Court"); *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 107 B.R. 856, 865-66 (E.D. Pa. 1989) ("the rights and obligations of the Debtor and [its insurer] are not altered because of the Debtor's Chapter 11 filing"), *aff'd*, 908 F.2d 961 (3d Cir. 1990). Accordingly, a bankruptcy plan may not abridge the contractual rights of third-party insurers unless a provision of the Bankruptcy Code specifically authorizes that abridgement.

Presumably in recognition of this well-established law, the Plan contains a purported insurance neutrality provision. Specifically, section 5.10 of the Plan provides:

> Insurance Neutrality. Nothing in the Plan, the Plan Documents or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way relate to, or have the effect of, impairing, altering, supplementing, changing expanding, decreasing, or modifying (a) the rights or

2

obligations of any of the Insurance Companies or (b) any rights or obligations of the Debtors arising out of or under any Purdue Insurance Policy.

That language, however, is insufficient and is not nearly as robust as that adopted in other Chapter 11 cases. To be insurance neutral, the Plan must be revised to make clear that the Plan does not and will not abrogate the contractual, legal, and equitable rights of the insurers. Indeed, it is customary for plans that implicate insurance coverage or indemnification to include robust "insurance neutrality" language to protect, and put creditors on notice of, an insurer's rights. *See* 9 New Appleman on Insurance Law Library Edition § 109.02 (2019).

The Insurers (and certain other insurers of the Debtors) have sent language to the Debtors designed to accomplish this. That language is attached hereto as Exhibit A. In sum, the language clarifies, among other things, that:

- Neither the Plan, Plan Documents, or Confirmation Order:
    - constitutes a determination establishing the liability of any MDT Insurer or establishing a coverage obligation in subsequent litigation relating to any Opioid Mass Tort Claims or under any of the MDT Insurance Policies;
    - establishes the liability or obligation of the Debtors with respect to any Opioid Mass Tort Claim that binds any MDT Insurer; or
    - precludes any MDT Insurer from asserting that the Settlement Structure, Plan, or Plan Documents (including the distribution procedures of the Private Creditor Trusts or the Public Creditor Trusts) or negotiations leading to any of the foregoing violated or is otherwise contrary to a term or condition of any MDT Insurance Policy.

- The MDT Insurers shall retain and be permitted to assert (x) all of their rights and defenses with respect to coverage of any Opioid Mass Tort Claim, and (y) all of the Debtors' defenses to liability in connection with any Opioid Mass Tort Claims

- No orders, findings of fact, or conclusions of law, shall be admissible in any current or future litigation concerning any Opioid Mass Tort Claim or any MDT Insurance Policy against an MDT Insurer (except to demonstrate that the Debtors' rights under the MDT Insurance Policies have been transferred pursuant to the Plan), or have any res judicata, collateral estoppel, or other preclusive effect on, or otherwise prejudice any claim, defense, right or counterclaim of any MDT Insurer in any litigation concerning any Opioid Mass Tort Claim or any MDT Insurance Policy.

The language proposed by the Insurers is consistent with insurance neutrality provisions in other plans of reorganization that have been confirmed, and confirmation orders that have been entered, in this district. For example, the draft language proposed here is modeled after the language in the confirmation order entered by Judge Gerber in *General Motors*. *See* Confirmation Order ¶ 63, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. Mar. 29, 2011), Dkt. 9941 (attached hereto as Exhibit B). And the language proposed here is far more streamlined than insurance neutrality provisions adopted in other bankruptcy cases in this district. *See* Stipulation and Agreed Order, *In re T H Agriculture & Nutrition, L.L.C.*, No. 08-14692 (Bankr. S.D.N.Y. Feb. 10, 2009), Dkt. 302 (attached hereto as Exhibit C); Fifth Amended Plan of Reorganization § 10.4, *In re Quigley Co.,* No. 04-15739 (Bankr. S.D.N.Y. Aug. 13, 2012), Dkt. 2431 (attached hereto as Exhibit D).

Although the Insurers sent their proposed language on April 13, they have not heard back from the Debtors. At a minimum, the Disclosure Statement should be amended to disclose that

4

certain of Debtors' insurers take the position that section 5.10 is inadequate and that those insurers have proposed alternative language that they believe will need to be incorporated in the Plan for it to be confirmed. The Disclosure Statement should also disclose that language and inform creditors that such language or some variant on it may be required by this Court, or a court on appeal, to be included in the Plan or any Confirmation Order. Without this additional disclosure, the Disclosure Statement does not contain adequate information under Section 1125 and should not be approved.

19-23649-shl    Doc 2710    Filed 04/23/21    Entered 04/23/21 14:28:23    Main Document
Pg 6 of 6

<table>
<tr><td>Dated: April 23, 2021</td><td>/s/ *Isley M. Gostin*<br>Isley Markman Gostin<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Tel: (202) 663-6551<br>Fax: (202) 663-6363<br>isley.gostin@wilmerhale.com</td></tr>
</table>

Colleen P. Sorensen
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Ave., Suite 3400
Chicago, IL 60601
Tel: (312) 784-5400
Fax: (312) 784-5499
csorensen@hww-law.com

*Counsel for Navigators Specialty Insurance Company*

Kelly H. Tsai
CROWELL & MORING LLP
590 Madison Avenue, 19th Floor
New York, New York 10022
Tel: 212-223-4000
Fax: 212-223-4134
ktsai@crowell.com

Mark D. Plevin (*pro hac vice forthcoming*)
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Tel: 415-986-2800
Fax: 415-986-2827
mplevin@crowell.com

Lynn H. Murray (*pro hac vice forthcoming*)
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Drive, Suite 4700
Chicago, Illinois 60606
Tel: 312-704-7700
Fax: 312-558-1195
lhmurray@shb.com

*Attorneys for American Guarantee and Liability Insurance Company and Steadfast Insurance Company*