**PORTEOUS, HAINKEL & JOHNSON, L.L.P.**
*Counsel for Parish of DeSoto*
704 Carondelet Street
New Orleans, LA
Tel: (504) 412-6278
Corey D. Moll, Esq.
Email: cmoll@phjlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al*., | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

## OBJECTION TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION ON BEHALF OF THE PARISH OF DESOTO

1.  NOW INTO COURT, through undersigned counsel, comes the Parish of DeSoto ("**DeSoto**" herein) (Claim No. 144726), who respectfully submits this objection ("**Objection**") to the Debtors' *Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2488] (the "**Disclosure Statement**") for the *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2487] (the "**Plan**")[2]. In support of its Objection, DeSoto respectfully states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meaning given to such term in the Disclosure Statement or Plan, as the case may be.

**PRELIMINARY STATEMENT**

2.      Purdue has filed a disclosure statement that fails to properly identify the eligibility or qualifications for DeSoto or any Municipality Claimant to perfect a claim in this bankruptcy. Further, the draft trust distribution procedures, described in the Disclosure Statement but the details of which remain shielded by confidentiality, fail to provide fair or adequate relief for Municipality Claimants like DeSoto.

3.      Specifically, the Disclosure Statement fails to provide adequate information from which any creditor (including DeSoto) is able to make an informed decision on the Plan by: (a) failing to attach the proposed "NOAT Documents", a key component of the Plan, and (b) failing to include specific criteria in the Statement itself clearly defining which claimants will be treated as "Municipality Claimants" in the non-attached "NOAT Documents."

4.      Failing to disclose this information is fundamentally unfair as it deprives DeSoto and other claimants of critical information necessary to determine how to vote on the Plan, and, given the importance of these issues, could delay confirmation (further prejudicing all creditors).

5.      In addition, the Plan as currently constituted is patently unconfirmable, as it contains unconstitutional releases and contains a non-consensual channeling injunction. Moreover, the NOAT Documents have yet to be disclosed. A plan that does not satisfy sections 1122 and 1123 of the Bankruptcy Code cannot satisfy the requirements of section 1129 of the Bankruptcy Code and therefore should not be distributed to creditors as it is patently unconfirmable.

6.      On April 21, 2022, the United States Trustee for "Region 2" filed *Objection of United States Trustee to Disclosure Statement for Chapter 11 Plan of Purdue Pharma L.P. and its Affiliated Debtors* (D.I. 2686)("Objection of U.S. Trustee"). DeSoto adopts the arguments and

supporting legal authority contained in the U.S. Trustee's Objection. As such, DeSoto incorporates the U.S. Trustee's Objection by reference in its entirety, as if copied herein *in extenso* and attach it hereto as "Exhibit A."

## BACKGROUND

7. DeSoto, an incorporated political subdivision of the State of Louisiana, filed a Complaint against Debtor Purdue Pharma, L.P. (among other named defendants) on February 6, 2019.[3]

8. DeSoto's complaint sets forth allegations that Purdue Pharma, L.P. (and other named defendants) foreseeably caused damages to DeSoto, such as incurring increased costs, including but not limited to providing medical care, first-responders, fire department equipment and personnel, EMS, and other services for patients and other affected persons due to opioid-related addiction or disease, including overdoses and deaths in its community, as well as costs associated with law enforcement and public safety relating to the opioid epidemic.

## LAW AND ARGUMENT

**I.    The Disclosure Statement Fails to Provide Creditors with "Adequate Information," as Required by Section 1125 of the Bankruptcy Code by Failing to Include the NOAT Documents and its Related Documents**

   **A.    Governing Law**

9. Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as: "[i]nformation of a kind, and in sufficient detail…that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan…" 11 U.S.C. § 1125(a)(1). Indeed, Congress intended the disclosure

---

[3] Case No. 19-cv-00153 (W.D. La. 5/9/2018) (Doc. 1).

statement "to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization." In re Scioto Valley Mortg. Co., 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988); see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994) ("The Code obliges a Debtor to engage in full and fair disclosure"); In re Adelphia Commc'ns Corp., 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (The Bankruptcy Code "provides that acceptances or rejections of a reorganization plan can't be solicited without first giving the creditors or others so solicited a court approved disclosure statement, which provides 'adequate information.'").

10. To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. See In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("[S]ubstantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan").

11. Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives…" In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. See In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). "[T]he 'adequate information' requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors." Adelphia, 352 B.R. at 596 (citing Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94, 100 (3d Cir. 1988)). "[O]nce the 'adequate disclosure' floor is satisfied, additional information can go into a disclosure

4

statement too, at least so long as the additional information is accurate and its inclusion is not misleading." <u>Adelphia</u>, 352 B.R. at 596.

12.  As set forth below, the Disclosure Statement falls far short of its statutory purpose because it omits the most basic information concerning whether any Municipality Claimant, DeSoto or otherwise, is either qualified or eligible to recover under the NOAT Documents.

        **B.**      **The Disclosure Statement Fails to Provide Adequate Information Regarding the Anticipated Recoveries for the Municipality Claimants such as DeSoto and Fails to Attach the NOAT Documents.**

13.  The NOAT Documents, a critical component of the Plan that necessarily informs whether DeSoto will vote in favor of the Plan, were not attached to the Plan or filed with the Disclosure Statement. Nevertheless, all DeSoto' Claims will be governed by the terms of the undisclosed NOAT Documents. For example, Section 4.4(b) of the Plan, provides that:

> On the Effective Date, pursuant to the Plan, each Holder of a Non-Federal Domestic Governmental Claim shall have its Claim permanently channeled to NOAT, and **such Non-Federal Domestic Governmental Claim shall thereafter be asserted exclusively against NOAT and resolved in accordance with the terms, provisions and procedures of the NOAT Documents.** Pursuant to the Plan, Holders of Non-Federal Domestic Governmental Claims are enjoined from filing against any Debtor, Released Party or Shareholder Released Party any future litigation, Claims or Causes of Action arising out of such Non-Federal Domestic Governmental Claims, and may not proceed in any manner against any Debtor, Released Party or Shareholder Released Party on account of such Claims in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue such Claims exclusively against NOAT, solely as and to the extent provided in the NOAT Documents

> Plan, § 4.4(b) (emphasis added).

"NOAT Documents" is defined in Section 1.1 of the Plan as follows:

> …the trust agreement establishing and delineating the terms and conditions for the creation and operation of NOAT and the Abatement Distributions procedures to be implemented by NOAT,

5

> in each case, the terms of which shall be consistent with the Plan and otherwise acceptable to the DOJ, the Ad Hoc Committee and the MSGE Group, in consultation with the Debtors and the Creditors' Committee, and which shall be filed with the Plan Supplement.
>
> Plan, § 1.1

In cases involving the channeling of claims into a trust, trust distribution procedures (NOAT Document as applied to DeSoto) typically establish a relative valuation process that classifies compensable claims into injury categories that correlate with a monetary recovery for such injuries based on the amount of assets available for distribution. Trust distribution procedures are particularly important in cases where, as here, the NOAT Documents alone will govern the reconciliation, liquidation, and valuation of all Municipality Claims.

14. Disclosure statements must provide adequate information "so that the creditors can decide whether or not to approve the proposed plan treatment of their respective claims." In re Duratech Indus., Inc., 241 B.R. 291, 298 (Bankr. E.D.N.Y.), aff'd, 241 B.R. 283 (E.D.N.Y. 1999). In addition, in order for a Disclosure Statement to be approved as having adequate disclosure, it must be complete. In re Medley, 58 B.R. 255, 256 (Bankr. E.D. Mo. 1986) (holding that a disclosure statement would not be approved where it was a "superficial outline" that did not provide creditors with material information). Without including the NOAT Documents, the Disclosure Statement cannot be considered "complete." In any event, having failed to provide detailed information with clear and simple language delineating the effect of the Plan on Municipality Claimants such as DeSoto, the Debtor create an artificiality as to its plan that undermines the legal requirements of a Disclosure Statement.

15. **Without the actual NOAT Documents, DeSoto (or any other Municipality Claimant) are provided no reliable information as to the proposed plan treatment of their**

**respective claims**. In fact, the claims of Municipality Claimants are to be resolved according to a document which is not required to be filed until **July 9, 2021**. The Disclosure Statement briefly summarized the underlying claims of municipalities such as DeSoto (or "non-federal domestic governmental claimants" as described in the Disclosure Statement; however, the Debtors provide no information whatsoever as to how any municipality claims (however situated) will be calculated or how certain Municipality Claimants will be treated by the NOAT Documents compared to others. The Disclosure Statement does not indicate what evidence is necessary for Municipality Claimants like DeSoto. Without the NOAT Documents, DeSoto and Municipality Claimants lack the sufficient information to determine the nature of their recoveries or how their claims will be liquidated and paid.

16. Again, the Disclosure Statement provides that all Municipality Claims will be dealt with only through the NOAT in a procedure set forth in the NOAT Documents. The Debtors' vague description of this claims process is unacceptable. In other words, the procedure contained in the NOAT Documents, *which has yet to be seen*, is binding on all creditors subject to the Plan. See Plan at 5.7(g) ("The determination by the applicable Creditor Trustee of the eligibility, amount and Allowance of each Channeled Claim shall be final and binding, and shall not be subject to any challenge or review of any kind, by any court or other Person, except as set forth in the Creditor Trust Documents.").

17. In other mass tort bankruptcy cases, debtors have filed full versions of the trust distribution procedures prior to the disclosure statement hearing in order to give creditors the information necessary to vote on the Plan. For example, in W.R. Grace (an asbestos mass tort case), the debtors filed a full version of the trust distribution procedures with the disclosure statement. See In re W.R. Grace & Co., Case No. 01-01139-AMC (Bankr. D. Del. Nov. 13, 2004)

[Docket No. 6897, Exhibit 7]. See also In re Quigley Company, Inc. Case No. 04-15739-SMB (Bankr. S.D.N.Y. Mar. 4, 2005) [Docket No. 288 at pp. 50-69] (while full trust distribution procedures were not attached to the disclosure statement, the disclosure statement contained a fulsome, nineteen page discussion of the same which included a summary of the evidentiary requirements that personal injury claimants would need to show or prove-up a claim, including a four page summary of the necessary medical evidence and exposure evidence).

18.     In a more recent case, In re Imerys Talc America, Inc., Case No. 19-10289-LSS (Bankr. D. Del.), the debtors initially failed to attach the trust distribution procedures to their disclosure statement. Numerous parties, including the United States Trustee, objected to the debtors' failure to attach the relevant trust distribution procedures. The debtors eventually were compelled to, and did, file the trust distribution procedures at least twenty-eight days in advance of a hearing on their disclosure statement. See Imerys, Docket No. 2184. Indeed, the bankruptcy judge in Imerys recognized the critical importance of filing of the trust distribution procedures before holding a hearing on the disclosure statement:

> I would also like, on Wednesday [the next hearing date], a realistic assessment of when the trust distribution procedures will be filed, and so that we can, again, make a realistic assessment of when we can go forward with the disclosure statement hearing.

In re Imerys Talc America, Inc., Case No. 19-10289-LSS (Bankr. D. Del.), Aug. 24, 2020 Hr'g. Tr., at 22:8-12.

19.     In addition, the Imerys court recognized that the goal of meeting procedural deadlines and dates in the case does not justify the prejudice that would be visited on parties by depriving them of the opportunity to review and object to relevant documents, such as trust distribution procedures:

> But it's not my intent that, after months and months and months of negotiations, to jam other people to get-- for the sole purpose of getting to a particular date that's already scheduled.

Id. at 23:3-6.

20. However, the Debtors in this case are not required to file the necessary Trust Documents or similar supplementing documentation until July 9, 2021, a date which is over **one hundred (100) days** after the proposed hearing on the Disclosure Statement; only **five (5) days** before the Voting Deadline; only **ten (10) days** prior to the Plan Objection Deadline; and long after all pertinent discovery deadlines in this matter.  See, e.g., Disclosure Statement at Section III.S.1; Solicitation Procedures Motion at ¶ 2; *Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* [Docket No. 2536, at ¶ 7].

21. This delay will result in what the Imerys court sought to avoid - creditors being "jammed" as they will not have sufficient time to analyze the NOAT Documents in full prior to the Voting Deadline.

22. As in Imerys and W.R. Grace, the NOAT Documents should be filed in advance of a hearing on the disclosure statement, in order that creditors have adequate information to analyze the Plan and all component documents to be incorporated therein.  Alternatively, at a minimum, the Debtors must not be permitted to solicit votes on the Plan without filing the NOAT Documents and *all* necessary supplementing documentation.  Without the filed NOAT Document in final form, the Disclosure Statement lacks the "adequate information" which section 1125 of the Bankruptcy Code be approved and distributed to creditors.

    **II.**    **The Disclosure Statement Cannot be Approved because the Plan, as Currently Constituted, is Unconfirmable**

23. Even if the Disclosure Statement provided adequate information, it describes a plan that is unconfirmable on its face should not be approved.  See, e.g., In re 266 Washington Assocs.,

9

141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation."); In re Am. Capital Equip., LLC, 688 F.3d 145, 154 (3d Cir. 2012) ("Courts have recognized that if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing.") (internal quotations and citations omitted).

24.    In fact, if the Plan on its face cannot be confirmed, approval of the Disclosure Statement must be denied in order to prevent the diminution of estate assets that would result from the expense of soliciting votes and seeking confirmation on an unconfirmable plan.  See, e.g., In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) ("If, on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation").

25.    The Plan is patently unconfirmable on its face in that it improperly creates a class for "Non-federal Domestic Governmental Claims" but fails to provide a definition for exactly what claims constitute those of a "Non-federal Domestic Governmental Claimant."  Much less, without the NOAT Documents, a "non-federal domestic governmental" creditor such DeSoto has no way of discerning any path or procedure for recovery under the Plan.

## RESEVATION OF RIGHTS

26.    Nothing contained herein shall constitute a waiver of any rights or remedies of DeSoto under title 11 of the United States Code or applicable law, including, without limitation, the right to (i) amend, modify, or supplement this Objection, or (ii) raise any other additional arguments at a later date, including, but not limited to, in an objection to the Plan,

## CONCLUSION

27. DeSoto respectfully requests that the Court not approve the Disclosure Statement.

Dated: April 23, 2021
New Orleans, Louisiana

Respectfully submitted,

/s/    Corey D. Moll
Corey D. Moll (34245)
*Pro Hac Vice admission applied for and pending.*
**PORTEOUS, HAINKEL AND JOHNSON, LLP**
704 Carondelet Street
New Orleans, LA 70130-3774
Phone: (504) 581-3838
Fax: (504) 581-4069
Email: cmoll@phjlaw.com
*Counsel for Parish of DeSoto*