**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.,**  *et al.*,<br><br>Debtors. [1] | **Chapter 11**<br><br>**Case No. 19-23649 (RDD)**<br><br>**(Jointly Administered)** |

### JOINT OBJECTION OF DISTRIBUTORS, MANUFACTURERS AND PHARMACIES TO DEBTORS' MOTION FOR ORDER ESTABLISHING CONFIRMATION SCHEDULE AND PROTOCOLS

The Distributors, Manufacturers and Pharmacies listed on the attached Exhibit A (collectively, the "DMPs"),[2] by and through each of their respective undersigned counsel, file this joint objection (the "Objection") to the *Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* [Docket No. 2536] (the "Confirmation Procedures Motion"), [3] filed by the above-captioned debtors and debtors in possession (the "Debtors"). In support of this Objection, the DMPs respectfully state as follows:[4]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] The DMPs joining in this Objection are each represented by separate counsel, and they each hereby join in the objections raised herein in their separate capacities. Other than as reflected in this Objection, no DMP acts, represents, or speaks on behalf of (or purports to act, represent or speak on behalf of) any other DMP or any other entities in connection with the Chapter 11 Cases.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Confirmation Procedures Motion and, if not defined therein, in the Proposed Plan (defined below).

[4] By virtue of filing this Objection, the DMPs do not consent to the jurisdiction of this Court or the entry of a final order or judgment by this Court on any matter other than this Objection and the Confirmation Procedures Motion, and reserve all rights to challenge the subject matter, core, non-core, or other jurisdiction, and/or constitutional authority, of this Court to enter final judgment on any matter other than this Objection and the Confirmation Procedures Motion.

## PRELIMINARY STATEMENT

1.      Through the Confirmation Procedures Motion, the Debtors seek to establish an extremely compressed schedule and restrictive protocols (collectively, the "Proposed Confirmation Procedures") to govern any discovery and litigation related to confirmation of the Proposed Plan, including, presumably, litigation with respect to the Debtors' purported motions to estimate at $0 and to subordinate all Co-Defendant Claims, including the DMP Claims.

2.      The Proposed Confirmation Procedures, to the extent they apply to the requested estimation and subordination of the DMP Claims, cannot possibly allow the DMPs a full and fair opportunity to defend themselves and the DMP claims, considering that (a) the Debtors have yet to provide any specific allegations in support of their request to subordinate and estimate the DMP Claims; and (b) there will undoubtedly be a multitude of factual and legal contested issues that will need to be developed in respect of the DMP Claims.  It is patently unreasonable for the Debtors to propose a procedure that assumes, in the context of the compressed three-month timeframe for seeking confirmation of the Proposed Plan, the affected parties and this Court could fully and fairly adjudicate issues that go to the heart of the Opioid Litigation.  Many of these same issues have been pending in other courts for years.  Thus, the Proposed Confirmation Procedures are unfair and deny the DMPs any semblance of meaningful due process.

3.      For these reasons, as further detailed below, the DMPs request that the Court deny the Confirmation Procedures Motion unless the Proposed Order is modified to provide that: (i) the Proposed Order shall not apply with respect to the Debtors' request to estimate and subordinate the DMP Claims, and instead such request shall be raised in a properly filed objection or adversary proceeding and, if so filed, subject to an agreed-upon scheduling order; and (ii) with respect to all other confirmation issues governed by the Proposed Order, the Proposed Confirmation Procedures

ACTIVE/109169825.5

shall apply, subject to a few modifications and modest extensions of two discovery-related deadlines, as described herein.

## BACKGROUND

4.      General background information regarding the Opioid Litigation,[5] the Debtors' Chapter 11 Cases, the DMPs, the DMPs' various claims (the "DMP Claims"), the Proposed Plan and the Disclosure Statement are set forth in the DMPs' (a) *Joint Objection of Distributors, Manufacturers and Pharmacies to Motion of Debtors for Entry of Order Approving (i) Omnibus Claims Objection Procedures, (ii) Omnibus Claims Settlement Procedures and (iii) Omnibus Claims Hearing Procedures* [Docket No. 2644] (the "Claims Objection Procedures Objection"), and (b) joint objection to the Disclosure Statement (the "Disclosure Statement Objection"), which is being filed contemporaneously herewith.

### A.      The Chapter 11 Plan and Disclosure Statement

5.      On March 15, 2021, the Debtors filed a *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2487] (the "Proposed Plan") and a *Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2488] (the "Disclosure Statement").

6.      The Debtors' proposed treatment of Co-Defendant Claims, including the DMP Claims, is set forth in Section 4.15 of the Proposed Plan, which states that "[h]olders of Co-Defendant Claims shall not receive or retain any property on account of such Claims," and that all Co-Defendant Claims "shall be released in accordance with Section 8.4 of the Plan or otherwise deemed expunged, released and extinguished without further action by or order of the Bankruptcy

---

[5] Each of the DMPs has disputed the allegations in the Opioid Litigation, and reserves all rights to assert any and all claims, defenses, rights of setoff, recoupment and other rights available to it in connection with the Opioid Litigation. Nothing contained herein shall be an admission of any fact or theory in connection with the Opioid Litigation.

ACTIVE/109169825.5

Court with no distribution on account thereof, and shall be of no further force or effect."

7.    To implement the Proposed Plan's unlawful treatment of Co-Defendant Claims, the Proposed Plan purports to constitute: (i) an objection to all Co-Defendant Claims pursuant to Bankruptcy Code Section 502(e)(1); (ii) a motion to estimate all Co-Defendant Claims at $0; and (iii) a motion to subordinate all Co-Defendant Claims pursuant to Bankruptcy Code Section 509(c) or 510 or other applicable law.[6]    The Proposed Plan simply assumes the Debtors' purported objection and motion to disallow or subordinate all Co-Defendant Claim has already succeeded. That is, the Proposed Plan provides no distribution for allowed Co-Defendant Claims and no reserve for disputed Co-Defendant Claims.  Notably, other than the vague, threadbare allegations set forth in Section 4.15(a) of the Proposed Plan, the Proposed Plan and the Disclosure Statement lack *any* factual and legal detail supporting the Debtors' purported objections and motions.

8.    Contemporaneously herewith, the DMPs are filing the Disclosure Statement Objection that sets forth in detail their objections to their treatment under the Proposed Plan and shows that (i) the Proposed Plan is not confirmable, and (ii) the Disclosure Statement lacks any information, let alone adequate information, in support of the claims objections and subordination being sought pursuant to the Proposed Plan.

**B.**    **The Omnibus Claims Objection Procedures Order**

9.    On March 16, 2021, the Debtors filed the *Motion of Debtors for Entry of Order Approving (i) Omnibus Claims Objection Procedures, (ii) Omnibus Claims Settlement Procedures and (iii) Omnibus Claims Hearing Procedures* [Docket No. 2490] (the "Claims Objection Procedures Motion"), through which the Debtors sought to establish procedures governing omnibus objections to claims.

---

[6] *See* Proposed Plan § 4.15(a).

4

10.     On April 15, 2021, the DMPs filed the Claims Objection Procedures Objection. Thereafter, the DMPs and the Debtors resolved the Claims Objection Procedures Objection through modifications to the order granting the Claims Objection Procedures Motion.

11.     On April 22, 2021, the Court entered an order granting the Claims Objection Procedures Motion [Docket No. 2696] (the "Claims Objection Procedures Order"). Pursuant to the Claims Objection Procedures Order, in the event of any conflict between the Claims Objection Procedures Order and an order establishing plan confirmation hearing procedures or protocols (such as the Proposed Order, as defined below), the Claims Objection Procedures Order governs. *See* Claims Objection Procedures Order ¶ 15.

12.     Accordingly, the Proposed Confirmation Procedures will not apply to the Debtors' purported objection, made through the Proposed Plan, to the DMP Claims pursuant to Section 502(e)(1) of the Bankruptcy Code. Rather, any such objection must be made and noticed pursuant to a separate objection that complies with, and is governed by, the Claims Objection Procedures Order.[7]

13.     The Proposed Confirmation Procedures are only relevant to the DMP Claims insofar as the Debtors have moved via the Proposed Plan to estimate at $0 and subordinate the DMP Claims. Such purported motions—which are not within the procedures established by the Claims Objection Procedures Order—and any discovery and litigation related thereto, are presumably intended to be governed by the Proposed Confirmation Procedures.

---

[7] To the extent the Debtors intend, contrary to the terms of the Claims Objection Procedures Order, for the Proposed Confirmation Procedures to govern the Debtors' purported objection to the DMP Claims set forth in the Proposed Plan, the DMPs request that this Court order that such objection must be made and noticed pursuant to a separate pleading that complies with, and is governed by, the Claims Objection Procedures Order or, alternatively, that such objection shall be subject to an agreed-upon scheduling order.

ACTIVE/109169825.5

14.     As described herein, to the extent the Debtors seek to apply the Proposed Confirmation Procedures to the DMP Claims, the DMPs object to the Proposed Confirmation Procedures as they fail to meet the minimum due process threshold for adjudicating the DMP Claims.  Regardless of whether the Proposed Confirmation Procedures are appropriate for other confirmation disputes, they are wholly inappropriate for resolving the two-party disputes between the Debtors and each of the DMPs as to the proposed estimation and subordination of the DMP Claims.

15.     While the DMPs can only guess as to the bases for subordination the Debtors will allege, presumably it will be an attempt to shift the blame for the opioid crisis from the Debtors to the DMPs.  Thus, in the context of a confirmation hearing, the Debtors are proposing that this Court, in approximately 3 months, must and will try the same issues that have been pending in the National Prescription Opiate Litigation in the U.S. District Court for the Northern District of Ohio since 2017.

### C.    Confirmation Procedures Motion

16.     On March 18, 2021, the Debtors filed the Confirmation Procedures Motion. Through the Confirmation Procedures Motion, the Debtors seek  entry of an order establishing the Proposed Confirmation Procedures, which include: (a) a compressed schedule governing discovery and litigation related to confirmation of the Proposed Plan, including, presumably, the estimation and subordination of the DMP Claims (the "Proposed Confirmation Schedule"); and (b) restrictive protocols governing discovery related to such litigation, including, presumably, the estimation and subordination of the DMP Claims (the "Proposed Confirmation Protocols").

17.     On April 9, 2021, the Debtors filed a notice adjourning the hearing on the Confirmation Procedures Motion, which attached thereto as Exhibit A a revised proposed order

6

granting the Confirmation Procedures Motion [Docket No. 2626-1] (the "Proposed Order").  The

Proposed Order further compressed various deadlines proposed under the original Proposed

Confirmation Schedule.[8]

18.    The Proposed Confirmation Schedule, as modified by the Proposed Order, is

summarized in the following chart.  The dates and deadlines comprising the Proposed

Confirmation Schedule are marked with an asterisk.  The unmarked dates and deadlines are the

subject of the Debtors' separate Disclosure Statement Motion but are included for context.  *See*

*Debtors' Motion to Approve (i) the Adequacy of Information in the Disclosure Statement, (ii)*

*Solicitation and Voting Procedures, (iii) Forms of Ballots, Notices and Notice Procedures in*

*Connection Therewith, and (iv) Certain Dates with Respect Thereto* [Docket No. 2489] (the

"Disclosure Statement Motion").  To the extent that the relief sought herein affects any proposed

dates or deadlines contained in the Disclosure Statement Motion, the DMPs hereby object to them

for the reasons described herein.

| Event | Date |
|---|---|
| Voting Record Date | March 10, 2021 |
| Disclosure Statement Objection Deadline | April 23, 2021 |
| Deadline to File Reply to Disclosure Statement Objections | April 30, 2021 |
| Disclosure Statement Hearing | May 4, 2021 |
| *Deadline to Serve Document Requests | May 12, 2021 |
| *Deadline to Respond to Document Requests | May 19, 2021 |
| *Deadline to Designate Initial Experts | May 19, 2021 |
| Solicitation Deadline | May 19, 2021 |
| *Deadline to Substantially Complete Document Discovery | June 2, 2021 |
| *Deadline to Submit Initial Expert Reports | June 9, 2021 |

---

[8] For example, in the original schedule set forth in the Confirmation Procedures Motion, the deadline to serve document requests was May 5, 2021—14 days after the then-scheduled hearing on the motion—but in the revised schedule set forth in the Proposed Order, the deadline to serve document requests is May 12, 2021, a mere 8 days after the currently-scheduled hearing.  Other deadlines have also been significantly shortened.

ACTIVE/109169825.5

| | |
|---|---|
| *Deadline to Designate Additional Experts for Rebuttal | June 23, 2021 |
| *Deadline to Submit Rebuttal Expert Reports | June 30, 2021 |
| Plan Supplement Filing Deadline | July 9, 2021 |
| *Deadline to Complete Discovery, including Depositions | July 12, 2021 |
| Voting Deadline | July 14, 2021 |
| Deadline to Serve Contract Notices | July 19, 2021 |
| Rule 3018(a) Motion Filing Deadline | July 19, 2021 |
| Plan Objection Deadline | July 19, 2021 |
| *Deadline to Exchange Initial Witness and Exhibit Lists | July 26, 2021 |
| *Deadline to Exchange Objections to Initial Witness and Exhibit Lists | July 29, 2021 |
| Deadline to File Voting Report | August 2, 2021 |
| Contract Objection Deadline | August 2, 2021 |
| Deadline to File Confirmation Brief and Omnibus Reply to Plan Objections | August 2, 2021 |
| *Deadline to Submit Proposed Virtual Procedures Order | August 2, 2021 |
| *Deadline to Conduct Evidentiary Dispute Resolution | August 4, 2021 |
| *Deadline to Submit Joint Exhibit Book and Joint Witness List, and File Case-in-Chief Witness Declarations | August 4, 2021 |
| *Final Pretrial Conference | August 5, 2021 |
| Confirmation Hearing | August 9, 2021 |

19.     As reflected in the chart above, the Debtors seek to impose a 69-day process[9] to adjudicate any confirmation disputes, including presumably the estimation and subordination of the DMP Claims, during which period the DMPs are expected to: (i) review a Document Reserve containing tens of millions of pages of documents (before any discovery requests may be served); (ii) complete all fact discovery, including depositions; and (iii) complete expert discovery.

20.     The Proposed Confirmation Protocols provide, among other things, that the Debtors will establish a "Document Reserve for Confirmation" (the "Document Reserve"), into which the

---

[9] From the date of the May 4, 2021 hearing on the Confirmation Procedures Motion, which is the earliest date the Debtors will grant parties access to the Document Reserve (defined herein).

ACTIVE/109169825.5

Debtors will deposit "tens of millions of pages of documents and information."[10]  The Document Reserve will be made available to requesting parties upon entry of the Proposed Order.[11]  In other words, parties will have access to the Document Reserve no earlier than May 4, 2021.  The Debtors have not provided any details or assurances that the Document Reserve will be indexed, categorized, and easily accessible such that DMPs or other parties requesting access can identify documents relevant to their particular disputes.

21.    As proposed, any party requesting additional documents or testimonial discovery must, by May 12, 2021 (*i.e.*, at most, *8 days* after having first been granted access to the Document Reserve),[12] "(i) represent that the Requesting Party has conducted a reasonable search of the Document Reserve for Confirmation and believes that the documents, information, or testimony it seeks is not available in the Document Reserve for Confirmation; and (ii) state and explain the basis for the Requesting Party's good faith belief that the additional discovery it seeks is relevant to the Confirmation Proceedings."[13]

22.    Parties subject to a document request must respond or object to such request by May 19, 2021, merely *7 days* after the deadline for such requests.[14]

23.    In addition, absent an order of this Court, parties are prohibited from serving any interrogatories or requests for admission.[15]

24.    With respect to expert discovery and testimony, the Proposed Confirmation Procedures require the DMPs to: (i) submit initial expert reports within 36 days after the hearing

---

[10] *See* Confirmation Procedures Motion ¶ 10.
[11] *See* Proposed Order ¶ 4.b.
[12] *See* Proposed Order ¶ 3.d.i.
[13] *See* Proposed Order ¶ 4.c.
[14] *See* Proposed Order ¶ 3.d.ii.
[15] *See* Proposed Order ¶ 4.e.

ACTIVE/109169825.5

on the Confirmation Procedures Motion (*i.e.*, by June 9, 2021); and (ii) submit rebuttal expert reports 21 days thereafter (*i.e.*, by June 30, 2021), all without notice of the Debtors' allegations and theories supporting their request to subordinate and estimate the DMP Claims.    Indeed, as proposed, the Debtors would not be required to reveal their allegations and theories until the Debtors file their confirmation brief and reply one week prior to the Confirmation Hearing, long after the DMPs are required to file their objection to the Proposed Plan.

## **OBJECTION**

25.    Through the Proposed Plan, the Debtors purportedly move to estimate at $0 and subordinate all Co-Defendant Claims, including the DMP Claims.  Because the Debtors have made these requests solely through the Proposed Plan and without providing notice of any separate hearing, presumably the Debtors intend for the Proposed Confirmation Procedures to govern any discovery and litigation regarding the proposed treatment of the DMP Claims, as well as objections to confirmation of the Proposed Plan.

26.    The Proposed Confirmation Procedures, however, unfairly prejudice creditors, and the DMPs in particular,[16] by: (a) imposing an extremely compressed Confirmation Schedule that cannot possibly allow creditors a full and fair opportunity to defend their claims and other interests that are being impaired or extinguished under the Proposed Plan; (b) shifting onto the creditors the Debtors' discovery burdens, particularly with respect to document production; and (c) limiting discovery devices that make fact discovery more, not less, efficient.

---

[16] Although all creditors will, presumably, be subject to the same discovery and timing constraints set forth in the Proposed Confirmation Procedures, no other group of creditors faces the Debtors' requests for disallowance, estimation and equitable subordination of their claims in their entirety, as the DMPs do, to be determined at the Confirmation Hearing.

ACTIVE/109169825.5

27.    The Proposed Confirmation Procedures are unreasonable, unworkable, unfair to the DMPs and cannot be condoned. Accordingly, unless the Proposed Confirmation Procedures are modified as set forth herein as they relate to the DMP Claims (and with a few modest changes to the procedures as they apply generally to confirmation), the Confirmation Procedures Motion should be denied.

A.    **The Proposed Confirmation Schedule Is Extremely, And Unnecessarily, Compressed, And Is Unworkable As To The DMP Claims In Particular.**

28.    The Proposed Confirmation Schedule is extremely compressed, unfair and will not afford the DMPs a meaningful opportunity to conduct discovery in defense of their DMP Claims.

29.    As proposed, the schedule contemplates a 69-day process in which the DMPs will be required to commence and complete all fact and expert discovery, including all depositions, in defense of the DMP Claims, all without any notice of the detailed legal and factual bases for the Debtors' request to subordinate and estimate such claims. As part of that schedule, the DMPs will be required to: (i) review the Document Reserve, which will contain "tens of millions of pages" of documents; (ii) within 8 days (*i.e.*, by May 12, 2021),[17] and only <u>after</u> they have reviewed the Document Reserve,[18] serve requests for documents; (iii) within 15 days (*i.e.*, by May 19, 2021), designate initial experts; (iv) within 29 days (*i.e.*, by June 2, 2021), substantially complete all document discovery; (v) within 36 days (*i.e.*, by June 9, 2021), submit initial expert reports and, only 21 days thereafter (*i.e.*, by June 30, 2021), submit rebuttal expert reports; (vi) within 69 days (*i.e.*, by July 12, 2021), complete all discovery, including all depositions. Such a process fails all

---

[17] Assuming that (a) an order granting the Confirmation Procedures Motion is entered on the same day as the hearing currently scheduled for May 4, 2021, and (b) the Debtors immediately grant the DMPs' request for access to the Document Reserve.

[18] As noted above, the Proposed Confirmation Procedures require a party requesting additional documents or testimonial discovery to represent, among other things, that it has conducted a reasonable search of the Document Reserve and believes that the documents, information, or testimony it seeks is not available therein.

notions of fair play and justice, and affords no due process of law to the DMPs on account of the DMP Claims.

30.    The proposed timeline is simply unworkable considering the multitude of factual and legal issues that are contested and will need to be developed in respect of the DMP Claims, especially given that the Debtors have yet to provide any specific allegations in support of their request to subordinate and estimate the DMP Claims. Many of the DMP Claims arise out of the Opioid Litigation, which has been ongoing for years, spans thousands of cases, involves numerous complex issues of law and fact, and remains unresolved. The requirement that such litigation be duplicated and compressed into a 69-day process is both impossible and absurd.

31.    Moreover, the DMP Claims can be litigated (or, preferably, resolved) after confirmation of the Proposed Plan. The fact that—as the Debtors might argue—the viability of the Proposed Plan is contingent on the complete disallowance or subordination of all Co-Defendant Claims because the Proposed Plan provides no recovery and no reserve for such claims (including cure claims), is an insufficient reason to impose prejudicial procedures on the DMPs. Rather, as explained in the DMPs' Disclosure Statement Objection, that contingency is entirely self-inflicted and renders the Proposed Plan unconfirmable. In contrast, a contract with a DMP can be lawfully assumed and cures made (as required by law, or as negotiated), a reserve for the DMP Claims can be established, and NewCo can address any required (or negotiated) plan treatment of allowed DMP Claims. That the Debtors and the other stakeholders have not substantively engaged the DMPs on these issues is entirely of their own making.

32.    The DMPs' objections to the Proposed Plan and its unlawful treatment of the DMP Claims should be litigated in an efficient manner, but not at the prejudice of the DMPs' rights for a fair opportunity to defend themselves and their claims. Accordingly, the DMPs request that the

ACTIVE/109169825.5

Proposed Order be modified to provide that the Proposed Order shall not apply with respect to the Debtors' requests to estimate and subordinate the DMP Claims (or any objection to the DMP Claims). Rather, any such request by the Debtors should be raised in a properly filed objection or adversary proceeding and, if so filed, such request should be subject to an agreed-upon scheduling order.

33.    In addition, the DMPs request that the Proposed Order be modified to provide that, with respect to all other confirmation issues governed by the Proposed Order, the Proposed Confirmation Procedures shall apply, except that (a) the deadline by which a party may serve document requests shall be May 17, 2021 (*i.e.*, 5 days later than the deadline proposed by the Debtors); and (b) the deadline by which a party must respond to document requests shall be May 27, 2021 (*i.e.*, 10 days after the extended deadline to serve document requests). These modest extensions will provide parties with additional time to review the Document Reserve and propound and respond to discovery requests without prejudicing the Debtors or delaying the proposed confirmation briefing and hearing schedule.

**B.**    **The Document Reserve Places Too High a Hurdle to Discovery.**

34.    As part of the Proposed Confirmation Procedures, the Debtors offer up the Document Reserve, which will be established upon entry of the Proposed Order and will serve as a centralized repository of documents relating to the Debtors, their prepetition litigation and the Chapter 11 Cases. The Debtors tout this Document Reserve as the "centerpiece of the confirmation discovery process," which will include "tens of millions of pages of documents and information."[19] The Debtors provide no further information, however, as to how these documents will be organized and identified within the Document Reserve. For all purposes, the Proposed Order should require

---

[19] *See* Confirmation Procedures Motion ¶ 10.

ACTIVE/109169825.5

that the Document Reserve be indexed, categorized, and easily accessible to identify the documents contained therein, including those relevant to the Debtors' request to subordinate and estimate the DMP Claims.

35.     In the context of attempting to equitably subordinate DMP Claims, replacing rules-based discovery with access to a data room containing tens of millions of pages[20] is particularly prejudicial and unreasonably burdensome to the DMPs, given the Debtors' failure to allege a single fact justifying equitable subordination. Accordingly, as to the DMP Claims, in addition to requiring that such request be raised in a properly-filed objection or adversary proceeding, general rules of discovery should govern and such request should be subject to an agreed-upon scheduling order as requested herein.

36.     The Document Reserve presents an unreasonable barrier to discovery in connection with confirmation, particularly when coupled with the Proposed Confirmation Schedule. As proposed, parties in interest will have a very limited opportunity to serve document requests. As set forth above, the Proposed Confirmation Schedules provides parties only 8 days to review the Document Reserve and prepare document requests and written justifications for those requests (all as required under the Proposed Confirmation Procedures).

37.     Given this unfair timing, it is wholly unreasonable to require, and practically impossible for, the DMPs to review the voluminous Document Reserve prior to serving document requests. Accordingly, in addition to the modest extensions to the discovery-related deadlines requested herein, the Proposed Order should provide that the DMPs are permitted to serve document requests without having to first review the Document Reserve, and the Debtors—who are the most familiar with the documents contained in the Document Reserve and how they are

---

[20] At the April 21, 2021 omnibus hearing, the Debtors' counsel estimated that the Document Reserve may contain between 70 million and 100 million pages.

ACTIVE/109169825.5

organized—are required to provide copies of, or at least point the DMPs to the specific locations within the Document Reserve containing, the documents requested by the DMPs.

### C.    Outside of the Plan Context, the DMPs Would Have Greater Rights.

38.    A critical reason the Proposed Confirmation Procedures should not apply to the Debtors' request to equitably subordinate the DMP Claims is that doing so would deprive the DMPs of the entire regime governing adversary proceedings that is designed to promote fairness, avoid surprises, assess the truth and narrow the issues in dispute before trial for the benefit of all parties and the court. For example, had the Debtors filed a complaint seeking to equitably subordinate the DMP Claims based on the same deficient allegations that the Debtors have made in the Proposed Plan, the DMPs would have the opportunity, prior to any discovery, to seek dismissal of the complaint pursuant to Bankruptcy Rule 7012. The Proposed Confirmation Procedures do not allow the DMPs to file a motion to dismiss the Debtors' request to subordinate the DMP Claims.

39.    Moreover, even if such a motion to dismiss failed, in an adversary proceeding the DMPs would still receive the benefit of the Debtors' mandatory disclosures under Bankruptcy Rule 7026. In addition, the DMPs would have the ability to serve interrogatories and requests for admission, which would allow them to ask basic questions that are not well suited for document requests, such as regarding the Debtors' justification for equitable subordination or disallowance of the DMP Claims. The Proposed Confirmation Procedures do not require the Debtors to make the mandatory disclosures under Bankruptcy Rule 7026, and they prohibit interrogatories and requests for admission. These discovery tools promote efficiency by clarifying and narrowing the issues that are actually in dispute. *See Dubin* v. *E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989) ("[The] purpose of [requests for admission] is to allow for the narrowing or

ACTIVE/109169825.5

elimination of issues in a case."); *Sofia* v. *Esposito*, 2019 WL 6529432, at *7 (S.D.N.Y. Dec. 4, 2019) ("[C]ontention interrogatories are 'designed to assist parties in narrowing and clarifying the disputed issues . . .'") (quoting *Wechsler* v. *Hunt Health Systems, Ltd.*, 1999 WL 672902, *1 (S.D.N.Y. Aug. 27, 1999). Thus, these discovery tools available in an adversary proceeding make discovery more, not less, efficient and are necessary to allow the DMPs to defend their claims.

40.    Accordingly, the DMPs request that, notwithstanding the Proposed Confirmation Procedures that would be applicable to other confirmation issues, in any litigation regarding the Debtors' request to subordinate the DMP Claims, and the related scheduling order shall provide: (a) the DMPs are permitted to move to dismiss the Debtors' request to subordinate the DMP Claims; (b) the Debtors are required, if requested by a DMP and within 7 days of such request, to provide the disclosures required under Bankruptcy Rule 7026; and (c) the DMPs are permitted, but not required, to serve interrogatories and requests for admission.

## CONCLUSION

41.    As set forth above, applying the Proposed Confirmation Procedures to the Debtors' request to estimate and subordinate the DMP Claims unfairly prejudices the DMPs and is practically impossible. In fact, litigating the Debtors' request prior to confirmation—if the DMPs are to be provided a full and fair opportunity to defend themselves and their DMP Claims—would unnecessarily delay confirmation of the Proposed Plan, a critical step in fighting opioid addiction and abuse, by many months. Rather, the DMP Claims can and should be adjudicated on a separate track pursuant to fair and agreed-upon procedures that afford the DMPs meaningful due process, after confirmation of the Proposed Plan. Accordingly, the DMPs request that the Court enter an order consistent therewith as described herein.

*[Remainder of Page Intentionally Left Blank]*

ACTIVE/109169825.5

WHEREFORE, the DMPs respectfully request that this Court enter an order: (a) denying

the Confirmation Procedures Motion unless the Proposed Order is modified to resolve the DMPs'

objections raised herein; and (b) granting to the DMPs such other and further relief as is just and

proper.

Dated: April 23, 2021

<table>
<tr>
<td>

*/s/ Michael H. Goldstein*
**GOODWIN PROCTER LLP**
Michael H. Goldstein
William P. Weintraub
Howard S. Steel
Barry Z. Bazian
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 813-8840
Fax: (212) 409-8404
Email: mgoldstein@goodwinlaw.com
      wweintraub@goodwinlaw.com
      hsteel@goodwinlaw.com
      bbazian@goodwinlaw.com

*Counsel for Teva Pharmaceuticals USA, Inc.
and Related Entities*

</td>
<td>

*/s/ Claudia Z. Springer*
**REED SMITH LLP**
Christopher A. Lynch
599 Lexington Avenue
New York, New York 10022-7650
Tel: (212) 521-5400
Fax: (212) 521-5450
Email: clynch@reedsmith.com

-and-

**REED SMITH LLP**
Claudia Z. Springer (*admitted Pro Hac Vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
Email: cspringer@reedsmith.com

-and-

**CRAVATH, SWAINE & MOORE LLP**
Michael T. Reynolds
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel: (212) 474 - 1552
Fax: (212) 474 - 3700
Email: mreynolds@cravath.com

*Counsel for AmerisourceBergen Drug Corporation*

</td>
</tr>
</table>

<u>/s/ Douglas K. Mayer</u>
**WACHTELL, LIPTON, ROSEN & KATZ**
Richard G. Mason
Douglas K. Mayer
Elaine P. Golin
Angela K. Herring
51 W. 52nd St.
New York, New York 10019
Tel: (212) 403-1000
Fax:  (212) 403-2000
Email: RGMason@wlrk.com
          DKMayer@wlrk.com
          EPGolin@wlrk.com
          AKHerring@wlrk.com

*Counsel for Cardinal Health, Inc. and Related Entities*

<u>/s/Geoffrey S. Goodman</u>
**FOLEY & LARDNER LLP**
Geoffrey S. Goodman
321 N. Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Tel: (312) 832-4500
Fax: (312) 832-4700
E-mail: ggoodman@foley.com

-and-

**FOLEY & LARDNER LLP**
Leah M. Eisenberg, Esq.
90 Park Avenue
New York, New York 10016
Tel: (212) 682-7474
Fax: (713) 276-6727
E-mail: leisenberg@foley.com

*Counsel for CVS Pharmacy, Inc. and its Related Entities*

<u>/s/ Catherine Steege</u>
**JENNER & BLOCK LLP**
Catherine Steege
Melissa Root
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 222-9350
Email: csteege@jenner.com
          mroot@jenner.com

-and-

**JENNER & BLOCK LLP**
Richard Levin
919 Third Avenue
New York, New York 10022-3908
Tel: (212) 891-1600
Email: rlevin@jenner.com

*Counsel for McKesson Corporation and Related Entities*

<u>/s/ Evan M. Jones</u>
**O'MELVENY & MYERS LLP**
Evan M. Jones (admitted *pro hac vice*)
400 South Hope Street
Los Angeles, California 90071
Tel: (213) 430-6000
Email: ejones@omm.com

-and-

**O'MELVENY & MYERS LLP**
Nathaniel Asher
Adam P. Haberkorn
7 Times Square
New York, New York  10036
Tel: (212) 326-2000
Email: nasher@omm.com
          ahaberkorn@omm.com

*Counsel for Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil- Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., Alza Corporation, Janssen Ortho LLC, and Janssen Inc.*

18

/s/ Norman L. Pernick
**COLE SCHOTZ P.C.**
Norman L. Pernick
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Tel: (302) 652-3131
Fax: (302) 652-3117
Email: npernick@coleschotz.com

-and-

**COLE SCHOTZ P.C.**
David M. Bass
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Tel: (212) 752-8000
Fax: (212) 752-8393
Email: dbass@coleschotz.com

*Counsel for Endo International plc and its
Related Entities*

/s/ Jeremy W. Ryan
**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan, Esq.
Aaron H. Stulman, Esq.
D. Ryan Slaugh, Esq.
1313 N. Market Street, Sixth Floor
Wilmington, Delaware 19801
Tel: (302) 984-6000
Fax: (302) 658-1192
Emails: jryan@potteranderson.com
        astulman@potteranderson.com
        rslaugh@potteranderson.com

*Counsel for Walmart Inc.*

/s/ Joseph D. Frank
**FRANKGECKER LLP**
Joseph D. Frank (admitted *pro hac vice*)
Jeremy C. Kleinman (admitted *pro hac vice*)
1327 W. Washington Blvd., Suite 5 G-H
Chicago, Illinois  60607
Tel: (312) 276-1400
Fax: (312) 276-0035
Email: jfrank@fgllp.com
        jkleinman@fgllp.com

*Counsel for Walgreen Co., Walgreen Eastern
Co., Inc. and Walgreen Arizona Drug Co.*

/s/ Mark S. Indelicato
**HAHN & HESSEN LLP**
Mark S. Indelicato, Esq.
488 Madison Avenue
New York, New York 10022
Tel: (212) 478-7200
Fax: (212) 478-7400
E-mail: mindelicato@hahnhessen.com

*Counsel for Mylan Inc., Mylan Pharmaceuticals Inc.,
Mylan Technologies Inc., Mylan Specialty L.P., Mylan
Bertek Pharmaceuticals Inc., Mylan Pharmaceuticals
ULC, BGP Pharma ULC, and Viatris Inc. (successor-
in-interest to Mylan N.V.)*

19

/s/ Ryan A. Wagner
**GREENBERG TRAURIG, LLP**
Ryan A. Wagner
200 Park Avenue
New York, NY 10166
Telephone: 212.801.3191
Email: wagnerr@gtlaw.com

*Counsel for Sandoz Inc.*

/s/ Henry J. Jaffe
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Henry J. Jaffe (admitted *pro hac vice*)
Marcy J. McLaughlin Smith (admitted *pro hac vice*)
Hercules Plaza
1313 N. Market Street, Suite 5100
P.O. Box 1709
Wilmington, Delaware 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: Henry.Jaffe@troutman.com
          Marcy.Smith@troutman.com

-and-

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Suzanne Forbis Mack (*pro hac vice* to be filed)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103
Tel: (215) 981-4000
Fax: (215) 981-4750
Email: Suzanne.Mack@troutman.com

-and-

/s/ G. Robert Gage, Jr.
**GAGE SPENCER & FLEMING LLP**
G. Robert Gage, Jr.
410 Park Avenue
New York, New York 10022
Tel: 212-768-4900
Fax: 212-768-3629
Email: grgage@gagespencer.com

*Counsel for Allergan Finance, LLC, Allergan Limited, Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Warner Chilcott Sales (US), LLC, and AbbVie Inc.*

/s/ Reuel D. Ash
**ULMER & BERNE LLP**
Reuel D. Ash (0055843)
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Tel: (513) 698-5118
Fax: (513) 698-5119
Email: rash@ulmer.com

*Counsel for Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals of New York, LLC, Impax Laboratories, Inc. and Impax Laboratories, LLC*

/s/ Gregory Gartland
**WINSTON & STRAWN, LLP**
Gregory Gartland
200 Park Avenue
New York, New York 10166
Tel: (212) 294-2693
Email: ggartland@winston.com

*Counsel for Hikma Pharmaceuticals USA Inc. f/k/a West-Ward Pharmaceuticals Corp.*

20

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Alissa K. Piccione
875 Third Avenue
New York, NY 10022
Tel: (212) 704-6000
Fax: (212) 704-6288
Email: Alissa.Piccione@troutman.com

*Counsel for Sun Pharmaceuticals Canada, Inc.,
Sun Pharmaceutical Industries, Inc., and
Ranbaxy Pharmaceuticals Canada Inc.*

*/s/ John P. McDonald*
**LOCKE LORD LLP**
John P. McDonald (*admitted pro hac vice*)
Texas Bar No. 13549090
jpmcdonald@lockelord.com
Brandan J. Montminy (*admitted pro hac vice*)
Texas Bar No. 24088080
brandan.montminy@lockelord.com
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)

*Counsel for Henry Schein, Inc.; Henry Schein
Medical Systems, Inc.; Insource, Inc.; and General
Injectables & Vaccines, Inc*

*/s/ Thomas E. Rice*
**BAKER STERCHI COWDEN & RICE LLC**
Thomas E. Rice
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108-2533
Tel: 816-471-2121
Email: rice@bscr-law.com

*Counsel for KVK - Tech, Inc*

ACTIVE/109169825.5

# EXHIBIT A[1]

## Distributors, Manufacturers and Pharmacies

### *AbbVie*
- AbbVie Inc.

### *Allergan*
- Allergan Limited f/k/a Allergan plc f/k/a Actavis plc
- Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.
- Allergan Sales, LLC
- Allergan USA, Inc.
- Allergan, Inc.
- Warner Chilcott Sales (US), LLC

### *AmerisourceBergen*
- AmerisourceBergen Drug Corporation, in its individual capacity
- AmerisourceBergen Drug Corporation, as successor in interest to Bellco Drug Corp.
- Integrated Commercialization Solutions, Inc.
- American Medical Distributors, Inc.
- AmerisourceBergen Corporation
- J.M. Blanco, Inc.
- MWI Veterinary Supply, Inc.
- PharMEDium Services, LLC
- H.D. Smith Holdings LLC
- H.D. Smith, LLC
- Valley Wholesale Drug Co., LLC

### *Amneal*
- Amneal Pharmaceuticals of New York, LLC
- Amneal Pharmaceuticals LLC

### *Impax Laboratories*

- Impax Laboratories, Inc.
- Impax Laboratories, LLC

### *Cardinal*
- Cardinal Health, Inc.
- Cardinal Health 3, LLC
- Cardinal Health 3, Inc.
- Cardinal Health 5, LLC

---

[1] The DMPs reserve all rights to modify, amend, and/or supplement this **Exhibit A** from time to time. Information regarding the claims filed by each DMP can be found in the DMPs' respective proofs of claim.

ACTIVE/109169825.5

- Cardinal Health 6 Inc. (f/k/a Physicians Purchasing, Inc.)
- Cardinal Health 100, Inc.
- Cardinal Health 103, Inc.
- Cardinal Health 104 LP
- Cardinal Health 105, Inc. (d/b/a Specialty Pharmaceutical Services)
- Cardinal Health 106, Inc.
- Cardinal Health 107, LLC
- Cardinal Health 107 Inc.
- Cardinal Health 108, LLC (f/k/a Cardinal Health 108, Inc.) (d/b/a Specialty Pharmaceutical Distribution) (d/b/a Metro Medical Supply)
- Cardinal Health 110, LLC (d/b/a Gen-Source RX) (f/k/a Cardinal Health 110, Inc.)
- Cardinal Health 112, LLC
- Cardinal Health 113, Inc.
- Cardinal Health 113, LLC
- Cardinal Health 122, LLC (f/k/a P4 Healthcare, LLC)
- Cardinal Health 132, LLC
- Cardinal Health 200, LLC
- Cardinal Health 201, LLC
- Cardinal Health 201, Inc.
- Cardinal Health 411, Inc.
- Cardinal Health 414, LLC
- Cardinal Health P.R. 120, Inc. (f/k/a Borschow Hospital & Medical Supplies, Inc.)
- Cardinal Health Pharmacy Services, LLC
- Dik Drug Company, LLC
- The Harvard Drug Group, L.L.C. (d/b/a Major Pharmaceuticals) (d/b/a Rugby Laboratories)
- Kinray, LLC (f/k/a Kinray, Inc.)
- Kinray I LLC
- ParMed Pharmaceuticals, LLC (f/k/a Parmed Pharmaceuticals, Inc.)

### *CVS*
- CVS Caremark Part D Services, L.L.C.
- Caremark PCS Health, L.L.C.

### *Endo*
- Endo International plc
- Endo Health Solutions Inc.
- Endo Pharmaceuticals Inc.
- Par Pharmaceutical, Inc.
- Par Pharmaceutical Companies, Inc.
- Endo Generics Holdings, Inc.
- Vintage Pharmaceuticals, LLC
- Generics Bidco I, LLC
- DAVA Pharmaceuticals, LLC
- Paladin Labs Inc.

ACTIVE/109169825.5

### *Henry Schein*
- Henry Schein, Inc.
- Henry Schein Medical Systems, Inc.
- Insource, Inc.
- General Injectables & Vaccines, Inc.

### *Hikma*
- Hikma Pharmaceuticals USA Inc.
- Boehringer Ingelheim Corp.
- Baxter Healthcare Corp.

### *Johnson & Johnson*
- Johnson & Johnson
- Janssen Pharmaceuticals, Inc.
- Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.
- Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.
- Alza Corporation
- Janssen Ortho LLC
- Janssen Inc.

### *KVK-Tech*
- KVK - Tech, Inc.

### *McKesson*
- McKesson Corporation
- McKesson Canada Corporation
- McKesson Medical Surgical Inc.
- Health Mart Systems, Inc.
- PSS World Inc.
- McKesson Specialty Care Distribution Corporation
- McKesson Specialty Distribution, LLC
- McKesson Medical-Surgical Minnesota Supply Inc.

### *Mylan*
- Mylan Inc.
- Viatris Inc. successor-in-interest to Mylan N.V.
- Mylan Pharmaceuticals Inc.
- Mylan Institutional Inc.
- Mylan Technologies Inc.
- Mylan Specialty L.P.
- Mylan Bertek Pharmaceuticals Inc.
- Mylan Pharmaceuticals ULC
- BGP Pharma ULC

ACTIVE/109169825.5

### *Sandoz*
- Sandoz Inc.

### *Sun Pharmaceuticals*
- Sun Pharmaceuticals Canada, Inc.
- Sun Pharmaceutical Industries, Inc.
- Ranbaxy Pharmaceuticals Canada Inc.

### *Teva*
- Teva Pharmaceuticals USA, Inc.
- Cephalon, Inc.
- Cupric Holding Co., Inc.
- Teva Canada Limited
- Teva Pharmaceutical Holdings Cooperative U.A.
- Teva Pharmaceuticals Europe B.V.
- Teva Sales and Marketing, Inc.
- Teva Branded Pharmaceutical Products R&D, Inc.
- Anda, Inc.
- Anda Pharmaceuticals, Inc.
- Anesta LLC
- Barr Laboratories Inc.
- Teva Biopharmaceuticals USA, Inc.
- Anda Marketing Inc.
- Actavis Pharma, Inc.
- Actavis LLC
- Actavis South Atlantic LLC
- Actavis Mid Atlantic LLC
- Actavis Totowa LLC
- Actavis Elizabeth LLC
- Actavis Kadian LLC
- Watson Laboratories, Inc.
- Teva Puerto Rico LLC
- Actavis Laboratories UT, Inc.
- Actavis Laboratories FL, Inc.
- Cobalt Pharmaceuticals Inc.

### *Walgreens*
- Walgreen Co.
- Walgreen Eastern Co., Inc.
- Walgreen Arizona Drug Co.

### *Walmart*
- Walmart Inc.

ACTIVE/109169825.5