**BINDER & SCHWARTZ LLP**  
366 Madison Avenue, 6th Floor  
New York, New York 10017  
Telephone: (212) 510-7008  
Facsimile: (212) 510-7299  
Eric B. Fisher  

Hearing Date: May 4, 2021  
Hearing Time: 10:00 am  

*Attorneys for the Public School District Creditors*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |

**SUPPLEMENT TO OBJECTION OF THE PUBLIC SCHOOL DISTRICT CREDITORS TO DEBTORS' MOTION TO APPROVE (I) THE ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT, (II) SOLICITATION AND VOTING PROCEDURES, (III) FORMS OF BALLOTS, NOTICES AND NOTICE PROCEDURES IN CONNECTION THEREWITH, AND (IV) CERTAIN DATES WITH RESPECT THERETO**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

SUPPLEMENTAL OBJECTION................................................................................................. 2

I.  Public School Districts Will Not Be Meaningfully Funded Under The Debtors' Proposed Plan Of Reorganization................................................................................................ 3

II. The Debtors' Supplemental Filings Do Not Cure The Deficiencies In The Disclosure Statement And The Proposed Plan Of Reorganization......................................................... 4

    A.  The Terms Of The Sackler Settlement Remain Undisclosed ................................. 4

    B.  The Amended Disclosure Statement Remains Inadequate ..................................... 5

    C.  The Amended Plan Remains Unconfirmable As Written....................................... 6

CONCLUSION............................................................................................................................. 7

The Public School District Creditors, in their individual and representative capacities, by and through undersigned counsel, respectfully submit this supplement to the Objection of the Public School District Creditors to Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto (the "Objection") (ECF No. 2720).[2]

## PRELIMINARY STATEMENT

1. In the forty-eight hours following the deadline for objections to the Disclosure Statement (the "Objection Deadline"), the Debtors issued a series of amended and supplemental filings, including an amended plan of reorganization and a revised disclosure statement. Not only does this latest round of filings fail to address the critical deficiencies explained in the Objection, but it reinforces the Public School District Creditors' longstanding concerns that the interests of America's public school districts, and the educational needs of opioid-impacted children, have been and will continue to be ignored in this proceeding.

2. The Debtors' proposed plan of reorganization—both as originally filed and as recently amended—provides no assurance that special education programs and supplemental educational services in the public schools will receive any funding at all, even while it purports to deprive public school districts of any potential alternate recovery against Sackler family members and related third-party entities. The Debtors' amended and supplemental filings confirm what the Public School District Creditors have long suspected: under the Debtors' proposed plan of reorganization, the public schools will be shut out.

---

[2] Capitalized terms not otherwise defined have the meanings given to them in the Objection.

## BACKGROUND

3. On April 23, 2021, the Public School District Creditors filed their Objection to the Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors (the "Disclosure Statement") (ECF No. 2488) and the Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto (ECF No. 2489).

4. On the same day, just hours after the Objection Deadline, the Debtors filed an amended plan of reorganization—the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors (the "Amended Plan") (ECF No. 2731). This was followed the next day by an amended disclosure statement, the Disclosure Statement for First Amended Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors (the "Amended Disclosure Statement") (ECF No. 2734).

5. On April 25, 2021, roughly two days after the Objection Deadline had elapsed, the Debtors filed their Second Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors (the "Second Plan Supplement") (ECF No. 2737-1), providing creditors with their first real glimpse of how abatement funds were to be allocated among the States and local governments.

## SUPPLEMENTAL OBJECTION

6. America's public schools have an indispensable role to play in the abatement efforts contemplated by this proceeding, and yet the interests of America's public schools—and those of the children they serve—have been persistently devalued and set aside. The Debtors' latest round of filings is a stark confirmation that the educational needs of opioid-impacted children have gone unheard.

**I.    Public School Districts Will Not Be Meaningfully Funded Under The Debtors' Proposed Plan Of Reorganization**

7.    Filed just days ago, the Debtors' Second Plan Supplement reveals for the first time the proposed procedures and priorities that would govern the distribution of abatement funds to non-federal domestic governmental claimants under the proposed reorganization plan. The Debtors give lip service to the need for a "comprehensive abatement strategy to address the opioid crisis," but the Second Plan Supplement falls decidedly short of delivering on that promise, in no small part because no opioid abatement strategy can be comprehensive if it fails to address the ongoing impact of the opioid crisis on America's public schools.

8.    The Second Plan Supplement makes no provision whatever for funding of the special education programs and supplemental educational services that are so critical to meeting the developmental and educational needs of opioid-impacted children. Under the distribution procedures set out in the Second Plan Supplement, funding is to be allocated by the NOAT exclusively in furtherance of "Approved Opioid Abatement Uses," with priority given to nine "Core Strategies." Not one of these "Core Strategies" addresses the educational needs of opioid-impacted children. And not one of the "Approved Opioid Abatement Uses" would allow funding for special education and supplemental educational services in the public schools.[3]

9.    This exclusion of public school districts from the NOAT distributions underscores the fundamental inequity of the Debtors' proposed plan of reorganization. The Public School

---

[3] The "Core Strategies" call for "[f]unding for evidence-based prevention programs in schools." *See* Schedule A § G(2). The exclusive focus on school-based "prevention programs" only serves to highlight that funding will *not* be allocated to special education programs and supplemental educational services directed to the needs of opioid-impacted children. Similarly, the "Approved Uses" contemplate some programs that may involve the public schools, including school-based prevention programs and naloxone training, *see* Schedule B §§ C(3), C(12), G(8)-(9), G(11)-(12), H(1), H(3)-(4), but again, none of these programs address the special educational and supplemental educational needs of opioid-impacted children.

3

District Creditors were denied a seat at the table when the distribution protocols were being negotiated, and the all-too-predictable result is that the needs of the public schools have been ignored and excluded. Public school districts are now being asked to relinquish potential claims against the "Sackler Parties" for what amounts to no consideration, for the Debtors' plan allocates no funding to support the educational needs of opioid-impacted children. And while public school districts may oppose this brazenly one-sided deal, their opposition will amount to nothing if they are outvoted by other non-federal domestic governmental creditors who *did* have a seat at the table and whose needs *are* being addressed under the proposed distribution terms.

10. The Debtors' proposed plan leaves the public schools not only without funding but without a voice.

## II. The Debtors' Supplemental Filings Do Not Cure The Deficiencies In The Disclosure Statement And The Proposed Plan Of Reorganization

11. The deficiencies identified by the Public School District Creditors have not been cured—and in many instances have not even been addressed—by the Debtors' most recent round of filings. Patent errors and inconsistencies identified by the Public School District Creditors have not been corrected. The Debtors *still* have not filed a complete disclosure statement and *still* have not filed a plan of reorganization that includes the terms of the Sackler release. In plain disregard of the rights of their creditors, the Debtors are barreling forward with approval of a disclosure statement whose most basic features have not been described.

### A. The Terms Of The Sackler Settlement Remain Undisclosed

12. With only four days remaining before the scheduled Disclosure Statement hearing, creditors are still left to guess at the terms of the Sackler release, one of the most critical and controversial features of the proposed plan. The Amended Plan contains the same empty placeholders where the terms of the Sackler release and the related channeling injunction should

4

be. *See* Amended Plan §§ 10.10, 10.11. To keep creditors in the dark for so long about what may be the most pivotal provisions of the proposed plan of reorganization is an outrageous violation of the Debtors' duty to provide full and fair disclosure.[4]

13. Similarly, the Amended Disclosure Statement, like the Disclosure Statement that came before, fails to disclose the terms, scope or value of the third-party releases, and it provides no basis for assessing the adequacy of the consideration being offered in exchange. It remains a mystery exactly who is to be released and exactly who is to be doing the releasing. Inasmuch as the Sackler release and other third-party releases may purport to bind public school district creditors that stand to gain nothing from the proposed plan, the releases are all take and no give. The Public School District Creditors cannot be bound by releases for which they are receiving no consideration. And whatever else the Sackler Parties may think that they are buying with their $4.275 billion, they cannot possibly buy immunity from lawsuits brought by public school districts that are absent members of an uncertified class.

**B. The Amended Disclosure Statement Remains Inadequate**

14. Other deficiencies identified by the Public School District Creditors also remain unaddressed. Not only is the Amended Disclosure Statement substantially incomplete, but the Debtors have actually inserted *additional* placeholders for information still "[t]o come." *See* Amended Disclosure Statement §§ III.S(6)(i)-(ii) (Interstate and Intrastate Allocations of NOAT Abatement Funds), III.AA ("Evaluation of the Settlement with the Sackler Families"). The exit of the Sackler family from the opioid business remains subject to undisclosed "exceptions to be

---

[4] In light of the Debtors' failure to provide timely disclosure of the terms of the Sackler release, the Public School District Creditors recommend that the hearing on the disclosure statement be postponed until after a meaningful opportunity to mediate outstanding issues regarding third party releases with counsel for the Debtors, the Sackler family, the Public School District Creditors, and other objecting litigants potentially impacted by the proposed releases.

agreed," *see id*. § III.Z, and the "affirmative and restrictive covenants" to be imposed under the Sackler Settlement Agreement likewise remain undisclosed and "to be mutually agreed." *See id*.

15. The scope of the claim holders' releases and the channeling injunctions are also still inadequately disclosed. Among other things, the Amended Disclosure Statement does not tell creditors that the parties to be released include not only the Debtors themselves and their related parties, but also the related parties of those related parties. *See* Amended Disclosure Statement §§ I.E, I.F.2.[5]

16. To the extent that the Second Plan Supplement expands on the procedures that will govern the NOAT distributions, the additional information only underscores the unfairness of the proposed plan. The Public School District Creditors have long had reason to believe that other public creditor groups were striking allocation deals to the exclusion of the public school districts. The Second Plan Supplement confirms that special education and supplemental services for public school children affected by opioids will not be funded by the NOAT distributions, as the monetary allocations have already been predetermined.[6]

C.  **The Amended Plan Remains Unconfirmable As Written**

17. For all the reasons set forth in the Objection, the Amended Plan remains unconfirmable as written. Just days ahead of the Disclosure Statement Hearing, the terms of the Sackler release and the related channeling injunction remain blank. *See* Amended Plan §§ 10.10,

---

[5] The Amended Disclosure Statement's description of the release provision contains the same error that was identified by the Public School District Creditors in their Objection. *See* Objection ¶ 45 n.20; Amended Disclosure Statement § I.F(2).

[6] The Amended Disclosure Statement, like the Disclosure Statement, contains confusing references to a "Shareholder Settlement Agreement" that appears to be the Sackler Settlement Agreement by another name. *See, e.g.*, Amended Disclosure Statement §§ I.F(1) n.14, IV.C(15)(i), IV.C(15)(ii) n. 70, IV.C(18)(i), IV.C(19)(i), IV.D(2)(iv) n.72, IV.D(2)(v) n.74, IV.D(2)(vii), IV.D(6)(i)(b), IV.D(6)(ii), IV.H(1)(ix), IV.J(1)(i)(p), IV.K(4), IV.K(6)(i), IX.D(3).

6

10.11. The proposed releases of the Debtors and others are still impermissibly overbroad, extending far-reaching immunity to an expansive and ill-defined web of "Related Parties." *See id*. §§ 1.1, 10.6(b).[7] And the Amended Plan continues to lump the public school districts together with all of the other non-federal domestic governmental claimants, even while other creditor constituencies—Tribe Claims, Hospital Claims, Third-Party Payor Claims, Ratepayer Claims, NAS Monitoring Claims and PI Claims—have been given their own respective classes. This classification structure ensures that the interests of the public schools—and the educational needs of opioid-impacted children—will continue to be drowned out.

## CONCLUSION

For the foregoing reasons, the Public School District Creditors respectfully request that the Court (i) sustain their objections; (ii) deny approval of the Amended Disclosure Statement; and (iii) grant such other and further relief as the Court deems appropriate.

---

[7] The definition of "Released Parties" has been revised under the Amended Plan to include the following all-but-incomprehensible proviso:

> "For the avoidance of doubt, the Released Parties referenced in clause (vi) of this definition include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related."

Amended Plan § 1.1. The revision appears to be a response to concerns about the overbreadth of the release provision, but it does not reduce the multitude of third parties who may potentially fall within the definition of "Released Parties," for it continues to include related parties of related parties within the scope of the release.

7

Dated: April 29, 2021
     New York, New York

Respectfully submitted,

/s/ *Eric B. Fisher*
Eric B. Fisher
**BINDER & SCHWARTZ LLP**
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008
Fax: (212) 510-7299
efisher@binderschwartz.com

Matthew J. Piers
Charles D. Wysong
Emily R. Brown
Margaret Truesdale
**HUGHES SOCOL PIERS RESNICK & DYM, LTD.**
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Tel: (312) 580-0100
Fax: (312) 580-1994
mpiers@hsplegal.com
cwysong@hsplegal.com
ebrown@hsplegal.com
mtruesdale@hsplegal.com

Cyrus Mehri
Steve Skalet
Joshua Karsh
Aisha Rich
**MEHRI & SKALET, PLLC**
1250 Connecticut Ave., NW, Suite 300
Washington, D.C. 20036
Tel: (202) 822-5100
Fax: (202) 822-4997
cmehri@findjustice.com
sskalet@findjustice.com
jkarsh@findjustice.com
arich@findjustice.com

Wayne Hogan
Leslie Goller
**TERRELL HOGAN YEGELWEL, P.A.**
233 E. Bay Street, 8th Floor
Jacksonville, FL 32202
Tel.: (904) 722-2228
hogan@terrellhogan.com
lgoller@terrellhogan.com

Neil Henrichsen
Dawn Stewart
**HENRICHSEN LAW GROUP, PLLC**
1440 G. Street, NW
Washington, D.C. 20005
Tel.: (202) 423-3649
Fax: (202) 379-9792
nhenrichsen@hslawyers.com
dstewart@hslawyers.com

*Attorneys for the Public School District Creditors*