| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: May 12, 2021<br>Hearing Time: 10:00 am |

In re : Chapter 11

PURDUE PHARMA L.P., *et al.*, : Case No. 19-23649 (RDD)

Debtors. : Jointly Administered

**SUPPLEMENT TO OBJECTION OF INDEPENDENT EMERGENCY ROOM PHYSICIAN, DR. MICHAEL MASIOWSKI, INDIVIDUALLY, AND AS PUTATIVE CLASS REPRESENTATIVE TO DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS[1]**

TO: **THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

Dr. Michael Masiowski, individually and as putative class representative for Independent Emergency Medical Room Physicians ("ER Physician"), by and through undersigned counsel, hereby submits this Supplement to The Objection of Independent Emergency Room Physicians (the "Objection ECF No. 2708 filed 4/23/21") to the Disclosure Statement, Amended Disclosure Statement and Second Amended Disclosure Statement for the Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors (the "Disclosure Statement").ECF Doc No. 2488 and 2734 respectively. In support thereof, Dr. Michael Masiowski[2] respectfully states:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Objector, Dr. Michael Masiowski, ( "ER Physician"), timely filed his proof of claim on June 12, 2020.

1

## Supplement

In the original Objection ER Physician argued that the Disclosure Statement fails to provide adequate information for ER Physician to make an informed decision to assess the adequacy of the Disclosure Statement. The Disclosure Statement, *inter alia*, fails to include adequate information in a readily understandable format. The Disclosure Statement is ambiguous and frustrates the ability of claimants including ER Physician, to reach an informed judgment about whether to vote in favor of the proposed plan of reorganization (the "Plan"). ECF Doc. No. 2487.

As additional support ER Physician states:

1. The Second Amended Disclosure Statement filed April 30, 2021 continues to be ambiguous by failing to provide a means to readily identify the inclusion of ER Physician in the "150 proof of claims filed by other treatment providers." These claims are referenced as Class 6. See Amended Disclosure Statement For First Amended Chapter 11 Plan For Purdue Pharma L.P. And Its Affiliated Debtors#2789-1, at 9, 67.

2. The Second Amended Disclosure Statement's identified distribution procedures for the Hospital Trust distribution seem to not include any "other healthcare service providers" and only includes Hospitals, in contradiction of the definition of "Class 6". The language of the Amended Disclosure is ambiguous at best and fails to provide any rationale for this apparently selective distribution. See id, at 67.

3. In addition, the Amended Disclosure statement and the referenced Hospital Trust Distribution procedures seem to provide not only that "other healthcare service providers" that are included in

Class 6 are prohibited from any disbursement, but also that a substantial number of Hospitals [3] are able to obtain a disbursement even if they did not file a valid Claim document. Id.

4.  The actual language of the Debtor Releases based on the definitions of "Releasing Parties" and "Related Parties" is overbroad. Id at 191.

5.  The additional qualification in the Amended Disclosure statement regarding the Releases is convoluted and nearly incomprehensible. Simply, the Amended Disclosure is not in a readily understandable format as required by the Bankruptcy Code. Id at 9, 191

6.  The full Hospital Trust Distribution procedures are not attached to the Disclosure but are in the Amended Plan, (ECF 2732) thus not providing the ability to fully assess the Disclosure before the hearing. Id at 5 (Indicates Distributions procedures in Plan Supplement doc #2732).

## Argument

Independent ER Physician, importantly is not employed by a Hospital, and provides emergency health care treatment to patients presenting to an emergency room. Independent Emergency Room Physicians are providing this service throughout the United States. By law, emergency room physicians are required to provide care regardless of their ability to pay. ER Physicians are paid based on submissions of their individual billing processes to the patient—not from the Hospital. ER Physicians have suffered ascertainable damages and have been negatively impacted by the opioid

---

[3] "The Hospital Trust will make distributions (net of attorneys' fees and costs) to Hospitals based on their damages as calculated pursuant to **those Hospitals** that either (i) filed timely Proofs of Claim prior to the General Bar Date or (ii) are listed on the **national registry of hospitals** maintained by the American Hospital Directory ®, as in effect on the Effective Date and are (x) non-federal acute care hospitals as defined by CMS or (y) non-federal **hospitals or hospital districts** that are required by law to provide inpatient acute care and/or fund the provision of inpatient acute care, subject to certain other eligibility criteria set forth in the trust distribution procedures (the "Hospital Trust Distribution Procedures") set forth in the Hospital Trust Documents in the Plan. Amended Distribution Plan at 57 (ECF 2735-1 blackline version).

3

misuse epidemic. A significant number of individuals that have opioid misuse disorders present to emergency rooms across the country. ER Physicians are the first healthcare services providers to see that person and be able to intervene to assist those patients in abatement efforts.

*1. The Amended Disclosure Statement Does Not Adequately Identify If ER Physicians Are Included In Class 6.*

The Amended Disclosure Statement appears to classify Independent ER Physicians as a "provider of healthcare services or social services" and place ER physician's claims into Class 6 (Hospital Claims). The Amended Disclosure Statement defines Class 6 claims as:

> "Pursuant to the Plan, Hospital Claims consist of all Claims against any Debtor held by a **provider of healthcare treatment services or any social services**, in its capacity as such, and that is not held by a Domestic Governmental Entity, including, based on the Debtors' initial review, the Claims set forth in the 1,030 Proofs of Claims filed by hospitals **and the 150 Proofs of Claims filed by other treatment providers".** (emphasis added)

However, nowhere does the Amended Disclosure Statement provide any means to identify who is included in the "150 Proofs of Claims filed by other treatment providers". It is impossible to tell if ER Physicians are thus entitled to a Distribution pursuant to the Disclosure Statement. The Disclosure Statement must inform the average creditor what it will receive and when and what contingencies might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The Amended Disclosure Statement does not provide the means to ascertain if ER Physicians are included in Class 6. Amended Disclosure Statement For First Amended Chapter 11 Plan For Purdue Pharma L.P. And Its Affiliated Debtors 2789-1 at 9,67.

*2.     The Amended Disclosure Statement's Identified Distribution Procedures For The Hospital Trust Distribution Do Not Include Any "Other Healthcare Service Providers" And Only Includes Hospitals, In Contradiction Of The Definition Of "Class 6".*

Assuming ER Physician is included in Class 6 above, the identified distribution procedures for the Hospital Trust distribution appear to not include any "other healthcare service providers" and only includes Hospitals, in contradiction of the definition of "Class 6". Id at 67. This makes the Disclosure Statement ambiguous.

As quoted above, the Amended Disclosure Statement, states that Class 6 includes:

> "Hospital Claims consist of all Claims against any Debtor held by a **provider of healthcare treatment services or any social services**, in its capacity as such, and that is not held by a Domestic Governmental Entity". Amended Distribution Plan at 57 (ECF 2735-1 blackline version) Id.

The very next paragraph in the Amended Disclosure statement then describes how the Hospital Trust will make distributions. It provides:

> "The Hospital Trust will make distributions (net of attorneys' fees and costs) to Hospitals based on their damages as calculated pursuant to **those Hospitals** that either (i) filed timely Proofs of Claim prior to the General Bar Date or (ii) are listed on the **national registry of hospitals** maintained by the American Hospital Directory ®, as in effect on the Effective Date and are (x) non-federal acute care hospitals as defined by CMS or (y) non-federal **hospitals or hospital districts** that are required by law to provide inpatient acute care and/or fund the provision of inpatient acute care, subject to certain other eligibility criteria set forth in the trust distribution procedures (the "Hospital Trust Distribution Procedures") set forth in the Hospital Trust Documents in the Plan Supplement (those Hospitals that satisfy such criteria, the "Hospital Authorized . In order to receive an abatement distribution from the Hospital Trust, Hospitals will be required to submit a Hospital Abatement Distribution Form (as defined with the Hospital Trust Documents) to the Hospital Trust accompanied by certain additional data. The amount of the abatement distribution(s) made to each Hospital Authorized Recipient shall be subject to a calculation methodology set forth in the Hospital Trust Documents….." Id 67.

5

That process only speaks about Hospitals—not other types of healthcare providers that submitted valid claims. The Hospital Trust Distribution Procedures in the Plan, create more ambiguity in the Disclosure Statement. That process from the Disclosure Statement is reiterated in the proposed Hospital Trust Distribution Procedures. *See Notice of Plan Supplement pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue, Exhibit A doc # 2732*. As the Second Amended Disclosure Statement doc. 2789-1 pg. 5 specifically states:

> "The process by which each trust will make distributions to claimants is set forth in the Trust Distribution Procedures applicable to such trust, which are included in the Plan Supplement. **The description of the trust distribution procedures that follows is for explanatory purposes only and is qualified in its entirety by the Trust Distribution Procedures themselves that are filed as part of the Plan Supplement**"

See Amended Disclosure Statement For First Amended Chapter 11 Plan For Purdue Pharma L.P. And Its Affiliated Debtors pg. 5

Looking at those procedures then, in Exhibit A, **footnote 6** it provides there are approximately 1,080 Hospital Claims of which 150 are Proof of Claims filed by other treatment providers. The language suggests these other providers are eligible to receive an allocation so it is ambiguous if this is the case and if so how those "other healthcare service providers" would be eligible for a distribution. Currently, the Disclosure Statement indicates the first step is for a party to submit a Hospital Trust Abatement Form. Pursuant to the Plan, the form requires a certification that the Hospital adheres to the standard of care for the emergency department, hospital wards and outpatient clinics at the time of any prospective evaluation, diagnosis, and treatment of OUD [4]. ER Physician cannot certify what is required. Therefore, the Disclosure Statement is ambiguous as to 1) whether ER physician is included

---

[4] Notice of Plan Supplement pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue, Exhibit A doc # 2732 pg. 2 section 3A

in Class 6 and 2) if so what process would be used to apply to an allocation.

This is so even though ER Physician, just like Hospitals, is mandated by law to provide " (y) non-federal **hospitals or hospital districts** that are required by law to provide inpatient acute care and/or fund the provision of inpatient acute care" as identified in the distribution process for Hospitals in the Disclosure. See Id at 67.

*3.    A Substantial Number Of Hospitals May be Able To Obtain A Disbursement Even If They Did Not File A Valid Proof Of Claim Which on Its Face is Ambiguous.*

In that a court ordered bar date is present in this cause, any entity that sought a distribution from the estate must have filed a valid Proof of Claim. As shown above the Amended Disclosure Statement provides: "The Hospital Trust will make distributions (net of attorneys' fees and costs) to Hospitals based on their damages as calculated pursuant to those Hospitals that **either (i) filed timely Proofs of Claim prior to the General Bar Date or (ii) are listed on the national registry of hospitals maintained by the American Hospital Directory ®, as in effect on the Effective Date and are (x) non-federal acute care hospitals as defined by CMS or (y) non-federal hospitals or hospital districts that are required by law to provide inpatient acute care and/or fund the provision of inpatient acute care,** subject to certain other eligibility criteria set forth in the trust distribution procedures….." (the "Hospital Trust Distribution Procedures")" See Id.  (emphasis added). [5] Also as shown in argument #2 herein, "other healthcare service providers" included in Class

---

[5] Other provisions in the proposed Hospital Trust Distribution Procedures, filed in the Notice of Plan Supplement pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue, Exhibit A doc # 2732 support the position that Hospitals that did not file proof of claims can receive disbursements. For ex. Exhibit A **§** 4 Eligibility for Hospital Abatement Distributions states "To qualify as a Hospital Authorized Recipient eligible to receive Hospital Abatement Distributions from the Hospital Trust, each applicable Hospital Claimant must:
(a) Have timely filed a Proof of Claim in the Debtors' Chapter 11 case (that is, on or before July 30, 2020); provided, that this requirement shall not apply to a Hospital Claimant that (i) is listed on the national registry of hospitals maintained by the American Hospital Directory®, as in effect on the Effective Date *and* (ii) is (x)

6, appear to be ineligible from any disbursement but this is ambiguous. What is not ambiguous, is that the Disclosure Statement fails to provide any rationale for the invidious discrimination against ER Physicians, or other healthcare providers if they are excluded or provide any explanation as to why Hospitals that did not file Proof of Claims are included. Unwarranted and unjustified exceptions in violation of General Bar Date of July 30, 2020 cannot be court sanctioned. *See Notice of Plan Supplement pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue, Exhibit A doc # 2732, § 4.1(a).*

The record is clear that, in the instant case, the Hospitals filed a motion to treat their claims as a class claim, but did not proceed to a court ruling on the validity of that claim. In that this Court nor any other court has ever certified a class of Hospital entities or claimants, there is no rational basis to allocate resources for abatement exclusively to Hospital Claimants and Hospital Claimants that did not file a valid Proof of Claim. Why would "other healthcare service providers" like ER Physician that filed a valid Proof of Claim not stand in the same place as other timely filed Claimants and stand ahead of Hospitals that did not file a Proof of Claim in the abatement allocation? The Second Amended Disclosure Statement should provide that information.

---

a non-federal acute care hospital as defined by CMS or (y) a non-federal hospital or hospital district that is required by law to provide inpatient acute care and/or fund the provision of inpatient acute care;
*****
"Those Hospital Claims that are evidenced by timely filed Proofs of Claim in the Debtors' Chapter 11 Cases (that is, for which Proofs of Claim were filed prior to or on the General Bar Date of July 30, 2020, i.e., D.I. 1536) that contained all of the Requisite Claims Data for such Hospital Claims have satisfied the requirements of §§ 4(1)(a) and 4(1)(c), and shall be required to **submit only a Hospital Abatement Distribution Form** that provides the certifications set forth in § 4(1)(b) to qualify for Hospital Abatement Distributions." Doc 2732, Exhibit A pg. 4

  *4. The Actual Language Of The Debtor Releases Based On The Definitions Of "Releasing Parties" And "Related Parties" Is Overbroad.*

  The Disclosure is also inadequate and does not contain sufficient information because the actual language of the debtor releases, based on the definitions of "releasing parties" and "related parties" is overbroad. Nothing in the disclosure statement alerts creditors to the astonishing sweep of the proposed release. *See Amended Distribution Plan at 166, Releases (ECF 2735-1 blackline version)*. Together, the defined terms create an exponentially expanding web of released and releasing parties, extending backward into the past and forward into the future. The release thus encompasses a vast and indeterminate multitude and may function as an improper back-door release of untold numbers of non-debtors, including non-debtors who may have contributed nothing to the reorganization while bearing a level of responsibility for the ascertainable damages.

  The implications of this failure are not merely theoretical. To take just one example, numerous creditors in this bankruptcy have lawsuits pending against McKinsey & Company, Inc. ("McKinsey"), a consulting firm formerly engaged by Purdue Pharma and alleged to have masterminded a marketing strategy aimed at "turbocharging" OxyContin sales. How many of these creditors even suspect that a vote for the Plan could be a vote to extinguish their own pending or contemplated lawsuits against non-debtor defendants such as McKinsey?

  The Amended Disclosure adopts the definitions of terms from the Plan but does not include the definitions in the Amended Disclosure. Only through close scrutiny of the Plan itself (which will not have a hearing until July 14th—well before the hearing the Amended Disclosure) may a determined and observant creditor discover that the "Released Parties" include not only the Debtors, NewCo and TopCo, the Plan Administration Trust, the Master Disbursement Trust and the Creditor Trusts, but also all of the "Related Parties" of those entities, including: predecessors, successors, assigns,

Subsidiaries, affiliates, managed accounts or funds, past, present, and future officers, board members, directors, principals, agents, servants, independent contractors, co-promoters, third-party sales representatives, medical liaisons, members, partners (general or limited), managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys and legal representatives, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals and advisors, trusts . . ., trustees, protectors, beneficiaries, direct or indirect owners and/or equity holders, parents, transferees, heirs, executors, estates, nominees, administrators, legatees . . . . *See Plan § 1.1.*

Such an all-embracing definition would be sufficiently objectionable in itself, but the Plan goes one step further, drawing in all of the "Related Parties" of the "Related Parties," as well. *See id.* (including the "Related Parties of each of the foregoing"). Thus, employees of employees, advisors of agents, consultants to advisors, and so on, are all also captured within the meaning of "Released Parties."

The same two-degrees-of-separation approach applies to the definition of "Releasing Parties," rendering that definition similarly unworkable. The "Releasing Parties" encompass not only the holders of claims against the Debtors, but also the "Related Parties" of those claim holders, and the "Related Parties" of such "Related Parties." *See id*. Thus, the same vast assortment of advisors of agents, consultants of employees, representatives of subcontractors, and so on, is also captured within the definition of "Releasing Parties."

Again, nothing in the Disclosure Statement alerts creditors to the industrial vacuum sweep of the proposed release.

*5.     The Additional Qualification In The Amended Disclosure Statement Regarding The Releases And Who It Applies To Is So Convoluted As To Require a Translator And Certainly Is Not In A Readily Understandable Format As Mandated By The Bankruptcy Code.*

The Amended Disclosure added the following to the Release provision:

Debtors Releases

"For the avoidance of doubt, the Released Parties referenced in clause (vi) above include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related party is related."

See Amended Disclosure Statement For First Amended Chapter 11 Plan For Purdue Pharma L.P. And Its Affiliated Debtors (ECF 2789-1 Blackline)  Pg.9, 191.

To reiterate basic law: A disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Disclosure statements must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). Disclosure statements should not contain overly technical language that the average creditor cannot readily understand. See *In re Waterville Timeshare Group,* 67 B.R. 412 (Bankr.D. N.H.1986). Other courts have agreed. See, e.g., *In re Cardinal Congregate I, supra, at 766; In re Scioto Valley Mortgage Co., supra at 171*. One recent court has adopted "the Plain English Disclosure Statement Rule." *In re Dakota Rail, Inc.,* 104 B.R. 138, 150 (Bankr.D. Minn.1989). Another Court aptly phrased this requirement as follows:

> The burden of deciphering the meaning of the treatment of a claim should not be placed upon a creditor inexperienced with the technicalities of bankruptcy law at this early stage of a bankruptcy proceeding. (quoting In re Ferretti, 128 B.R.at 19)

The Disclosure Statement Release language, especially that quoted above, is not in plain English, is not understandable by large numbers of consumer creditors to whom it is directed, who are not knowledgeable in commercial transactions or bankruptcy law and seems, in fact, is designed to obfuscate rather than disclose.

The Disclosure Statement should be amended to narrow the Releases and to explain the impact of the Releases (who is released and when), in clear readily understandable language not obfuscated by legalize.

> 6. *The Full Hospital Trust Distribution Procedures Are Not Attached To The Disclosure But Are In The Amended Plan, Thus Not Providing The Ability To Fully Assess The Disclosure Prior To The Hearing.*

Additionally, the Hospital Trust Distribution Procedures were not filed with the Amended Disclosure. They were filed in the Amended Plan filing on April 23, 2021 (ECF 2732). Any objections to those procedures cannot be heard until July 14, the Plan Objection hearing date. A disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The failure to attach the Distribution procedures to the Disclosure Statement is not cured by a paragraph that tells the average creditor they are in the Plan and can be found there. Especially as changes are coming in almost biweekly to the Disclosure Statement and the Plan. The failure to attach the Hospital Distribution procedures to the Disclosure does not permit creditors to make an informed assessment of the Disclosure since it doesn't provide all the requisite information. The Disbursement procedures (including by default procedures that determine who gets disbursements) is part of that decision

making process. The fact that any decision on those procedures is not made until AFTER the Disclosure acceptance deadline is also blatantly unacceptable.

In other mass tort bankruptcy cases, debtors have filed full versions of the trust distribution procedures prior to the disclosure statement hearing in order to give creditors the information necessary to vote on the Plan. For example, in W.R. Grace (an asbestos mass tort case), the debtors filed a full version of the trust distribution procedures with the disclosure statement. See *In re W.R. Grace & Co.*, Case No. 01-01139-AMC (Bankr. D. Del. Nov. 13, 2004) [Docket No. 6897, Exhibit 7]. See also *In re Quigley Company, Inc.* Case No. 04-15739-SMB (Bankr. S.D.N.Y. Mar. 4, 2005) [Docket No. 288 at pp. 50-69] (while full trust distribution procedures were not attached to the disclosure statement, the disclosure statement contained a fulsome, nineteen-page discussion of the same which included a summary of the evidentiary requirements that personal injury claimants would need to show or prove-up a claim, including a four-page summary of the necessary medical evidence and exposure evidence).

18. In a more recent case, *In re Imerys Talc America, Inc.*, Case No. 19-10289-LSS (Bankr. D. Del.), the debtors initially failed to attach the trust distribution procedures to their disclosure statement. Numerous parties, including the United States Trustee, objected to the debtors' failure to attach the relevant trust distribution procedures. The debtors eventually were compelled to, and did, file the trust distribution procedures at least twenty-eight days in advance of a hearing on their disclosure statement. See *Imerys*, Docket No. 2184. Indeed, the bankruptcy judge in *Imerys* recognized the critical importance of filing of the trust distribution procedures before holding a hearing on the disclosure statement. *In re Imerys Talc America, Inc.,* Case No. 19-10289-LSS (Bankr. D. Del.), Aug. 24, 2020 Hr'g. Tr., at 22:8-12.

19. WHEREFORE, Emergency Room Physician respectfully submits that the Court sustain the Objection and Supplement thereto, of the Emergency Room Physician and grant such other relief as is

just.

Dated: May 3, 2021

   Respectfully submitted,
PAUL S. ROTHSTEIN, P.A.

*/s/ Paul S. Rothstein*
Paul S. Rothstein, P.A.
Bar No.: 310123
626 NE 1st Street
Gainesville, FL 32601
Ph: (352)376-7650
PSR@RothsteinForJustice.com
*Pro Hac Vice Admitted*
*Attorney for the ER Physician Mike Masiowski*

14