**DAVIS POLK & WARDWELL LLP**

450 Lexington Avenue

New York, New York 10017

Telephone: (212) 450-4000

Facsimile: (212) 701-5800

Marshall S. Huebner

Benjamin S. Kaminetzky

Timothy Graulich

Eli J. Vonnegut

Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.[1]** | **(Jointly Administered)** |

<u>**NOTICE OF FILING OF FOURTH PLAN SUPPLEMENT PURSUANT TO THE
SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**</u>

  **PLEASE TAKE NOTICE** that on May 7, 2021, the above-captioned debtors and debtors

in possession (collectively, the "**Debtors**") filed the *Second Amended Joint Chapter 11 Plan of*

*Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2823] (as modified,

amended, or supplemented from time to time, the "**Plan**"). On May 8, 2021, the Debtors filed the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Disclosure Statement for Second Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2825] (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

PLEASE TAKE FURTHER NOTICE that the Plan and Disclosure Statement contemplate the submission of certain documents (or forms thereof), schedules, and exhibits (the "**Plan Supplement**") in advance of the hearing on confirmation of the Plan (the "**Confirmation Hearing**").

PLEASE TAKE FURTHER NOTICE that, on April 23, 2021, the Debtors filed the *Notice of Filing of Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2732] (the "**First Plan Supplement**") in support of the Plan.

PLEASE TAKE FURTHER NOTICE that, on April 25, 2021, the Debtors filed the *Notice of Filing of Second Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2737] (the "**Second Plan Supplement**") in support of the Plan.

PLEASE TAKE FURTHER NOTICE that, on May 15, 2021, the Debtors filed the *Notice of Filing of Third Plan Supplement Pursuant to the Second Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2867] (the "**Third Plan Supplement**" and, together with the First Plan Supplement and the Second Plan Supplement, the "**Plan Supplement**") in support of the Plan.

PLEASE TAKE FURTHER NOTICE that the Debtors hereby file the revised *PI Trust Distribution Procedure*, attached hereto as **Exhibit C**, which replaces and supersedes all prior-

filed versions of such document, and that a redline of such document compared with the version

filed on April 23, 2021, is attached hereto as **Exhibit C-1**.

     **PLEASE TAKE FURTHER NOTICE** that the forms of documents contained in the Plan

Supplement are integral to, and are considered part of, the Plan.  If the Plan is confirmed, the

documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant

to the order confirming the Plan.

     **PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, subject to the

terms and conditions set forth in the Plan, to alter, amend, modify, or supplement any document

in the Plan Supplement; provided that if any document in the Plan Supplement is altered, amended,

modified, or supplemented in any material respect prior to the hearing to confirm the Plan, the

Debtors will file a blackline of such document with the Bankruptcy Court.

     **PLEASE TAKE FURTHER NOTICE** that copies of the Plan Supplement, the Plan, and

the Disclosure Statement may be obtained free of charge by visiting the website of Prime Clerk

LLC at https://restructuring.primeclerk.com/purduepharma.  You may also obtain copies of any

pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

     **PLEASE TAKE FURTHER NOTICE** that copies of the Plan Supplement may be

obtained free of charge by visiting the website of Prime Clerk LLC at

https://restructuring.primeclerk.com/purduepharma.  You may also obtain copies of any pleadings

by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with

the procedures and fees set forth therein.

     **PLEASE TAKE FURTHER NOTICE** that a hearing to consider the adequacy of the

information contained in the Disclosure Statement (the "**Disclosure Statement Hearing**") is

scheduled for **May 20, 2021, at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"); *provided* that, pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Disclosure Statement Hearing shall be conducted telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[2]

Dated:    May 16, 2021
              New York, New York

DAVIS POLK & WARDWELL LLP

By:    */s/ Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

---

[2]    A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operations-under-exigent-circumstances-created-covid-19.

## **Exhibit C**

PI Trust Distribution Procedure

## INDIVIDUAL PURDUE PHARMA LP
## PI TRUST DISTRIBUTION PROCEDURE

### § 1.    APPLICABILITY AND SUBMISSION INSTRUCTIONS.

This trust distribution procedure ("PI TDP") sets forth the manner in which PI Channeled Claims (as defined below) may become eligible for payments from, and shall be fully discharged by, the PI Trust.[1] Distributions in respect of PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust to Holders of PI Claims on the terms set forth herein.

Pursuant to the plan of reorganization of Purdue Pharma L.P. and its Debtor affiliates (the "Plan"), the following claims ("PI Channeled Claims") will be channeled to, and liability therefore shall be assumed by, the PI Trust as of the Effective Date: (i) all PI Claims, which are claims against any Debtor for alleged opioid-related personal injury or other similar opioid-related claims or Causes of Action against any Debtor, which includes any opioid-related personal injury Claim or similar opioid-related Claim asserted by an NAS Child, and that are not Third-Party Payor Claims, NAS Monitoring Claims, or Claims held by a Domestic Governmental Entity, and (ii) all Released Claims or Shareholder Released Claims that are claims for alleged opioid-related personal injury or that are similar opioid-related claims or Causes of Action, including any opioid-related personal injury Claims or similar opioid-related Claims asserted by an NAS Child, and that are not Third-Party Payor Channeled Claims or NAS Monitoring Channeled Claims or held by a Domestic Governmental Entity. PI Channeled Claims shall be administered, liquidated and discharged pursuant to the PI Trust Documents, and satisfied solely from funds held by the PI Trust as and to the extent provided in this PI TDP. Holders of PI Channeled Claims are referred to herein as "PI Claimants."[2]

PI Channeled Claims liquidated under this TDP shall be (i) Allowed or Disallowed (such PI Channeled Claims so Allowed, "Allowed PI Channeled Claims") and, for Allowed PI Channeled Claims, (ii) liquidated to determine the amounts receivable thereon (an "Award"), in each case pursuant to the terms of this PI TDP.

Awards will be a gross number before deduction of legal fees and expenses, and lien amounts under the Lien Resolution Program Agreement (the "LRP Agreement"), if any, from a PI Claimant's Award. The order of payments to be made by the PI Trust is set forth in § 6. No amounts shall be paid on account of a PI Channeled Claim unless such Claim has been Allowed.

This PI TDP sets forth what evidence and forms you must submit in order to be eligible to receive an Award. Forms may be completed online at the PI Trust's website, www._____.com, or by mailing back the completed forms to the PI Trust at the below address. Evidence in support of your PI Claim should be submitted to [____].[3]

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[2]    "PI Claimant" includes each person holding a PI Claim arising from his/her own opioid use; each person holding a PI Claim arising from the opioid use of a decedent (such deceased person, a "Decedent"), and each NAS Claimant (as defined below) holding a PI Claim arising from the opioid use of the NAS Claimant's biological mother (the "Mother").

[3]    Submission instructions to be added after solicitation

> **ELECTION TO LIQUIDATE PI CLAIM IN THE**
> **TORT SYSTEM RATHER THAN UNDER THIS PI TDP**
>
> **A PI Claimant who (i) timely filed a Proof of Claim in the Chapter 11 Cases prior to the General Bar Date asserting his/her PI Claim against one or more Debtors and (ii) elects expressly, by timely submission of the Claim Form attached hereto as Exhibit A, to liquidate his/her PI Claim in the tort system rather than pursuant to the streamlined procedures set forth in §§ 6-9 of this PI TDP (each, an "Opt-Out Claimant" and, collectively, the "Opt-Out Claimants"), may assert and liquidate such PI Claim in the tort system at his/her own expense, as set forth in more detail in Exhibit B, and shall forfeit all rights to liquidate such PI Claim (and any associated PI Channeled Claims regarding the same injuries that are the same subject of its PI Claim) under the streamlined procedures set forth in §§ 6-9 of this PI TDP, as well as the right to expedited appeal set forth in Exhibit C hereto. The right to litigate in the tort system is available only with respect to Claims that meet the definition of "PI Claim" set forth in the Plan.**

## § 2. ALLOCATION OF FUNDS; CLAIMS ADMINISTRATOR.

(a)  Allocations of Funds to the PI Trust

Monies are to be received by the PI Trust in an initial installment of $300 million on the Effective Date of the Plan, with the remaining monies to be received in additional installments, with the monies expected to total a gross amount of between $700 million and $750 million.

(b)  Claims Administrator.

(i)  The PI Trust shall be established in accordance with § 5.7 of the Plan to (1) assume all liability for the PI Channeled Claims, (2) hold the MDT PI Claim and collect the Initial PI Trust Distribution and payments due under the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (3) administer, process, resolve and liquidate PI Channeled Claims, (4) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents (including this PI TDP), (5) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (6) carry out such other matters as are set forth in the PI Trust Documents.[4] The trustee of the PI Trust (the "Trustee"), Edgar Gentle III, of Gentle, Turner, Sexton & Harbison, LLC, will serve as claims administrator (the "Claims Administrator") to carry out the duties of the Trustee as set forth in the Plan and PI Trust Documents.[5]

---

[4]  The PI Trust Agreement shall provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of this PI Trust Agreement, the PI TDP, and the LRP, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

[5]  The PI Trust Agreement shall provide that the Trustee shall receive a retainer from the PI Trust for his service as a Trustee in the amount of $150,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour. The Trustee shall record all hourly time to be charged to the PI Trust. (continued . . . )

(ii)     The Trustee and the Claims Administrator[6] shall determine, pursuant to the requirements set forth herein, the Allowance or Disallowance and valuation of all PI Channeled Claims liquidated under §§ 6-9 this PI TDP, regardless of the type of Award sought. Distributions hereunder are determined only with consideration to a PI Claim held against the Debtors, and not to any associated PI Channeled Claim against a non-Debtor party. However, any Distribution to a PI Claimant on account of its PI Claim is deemed to be a distribution in satisfaction of all PI Channeled Claims held by such PI Claimant with respect to the injuries that are the subject of his/her PI Claim. The Claims Administrator may investigate any such claim, and may request information from any PI Claimant to ensure compliance with the terms outlined in this document. For PI Claimants who execute the required HIPAA form attached hereto as Exhibit D, the Claims Administrator also has the power to directly obtain such PI Claimant's medical records.

## § 3.     INITIAL PI CHANNELED CLAIM ALLOWANCE.

For a PI Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in §§ 6-9 of this PI TDP to be Allowed, the applicable PI Claimant must, with respect to that PI Channeled Claim:

(a)     Hold such PI Channeled Claim against one or more Debtors;

(b)     Demonstrate usage of a qualifying **prescribed** opioid listed in Exhibit E hereto (a "Qualifying Opioid"),

(i)     PI Claimants who used only (or, as applicable, where the Decedent or Mother used only) a **non-prescribed** (diverted) version of a Qualifying Opioid (OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt) are not eligible for an Easy Payment, Base Payment or Level Award (each as defined below) unless that PI Claimant, Decedent, or Mother (as applicable) was a minor when s/he initiated usage of a non-prescribed, *branded* version of a Qualifying Opioid;

(c)     Have already timely[7] filed an individual personal injury Proof of Claim against one or more Debtors in the Chapter 11 Cases asserting his/her PI Channeled Claim against one or more Debtors;

---

(. . . continued)
The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the Oversight Committee, appropriately adjusted by the Trustee for changes in the cost of living. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

[6]     As the same individual is serving as both Trustee and Claims Administrator, reference to actions by each reference Mr. Gentle acting in such respective capacity.

[7]     If the Proof of Claim was filed after the Bar Date but before April 23, 2021, the Claims Administrator shall consider the PI Channeled Claim without penalty. If the Proof of Claim was filed on April 23, 2021 or after, the PI Channeled Claim asserted by such Proof of Claim shall be Disallowed unless the Claims Administrator determines, which determination shall be on a case-by-case basis, that good cause exists to treat the late-filed PI Channeled Claim as if it were timely filed. Notwithstanding this deadline, in addition to the other requirements herein, up to 274 late-filed Claims filed by NAS Claimants (as defined below) who appear on the West Virginia NAS Birth Score Program and are represented by the WV NAS Ad Hoc Group ("WV NAS Claimants") and who demonstrate the following (continued . . . )

(d)  Complete, sign and submit the Claim Form attached hereto as Exhibit A, checking at least one injury box[8] by the date that is 150 days[9] after the Effective Date of the Plan;[10]

(e)  Complete, sign and submit the HIPAA consent form attached hereto as Exhibit D; and

(f)  If the PI Channeled Claim concerns the injuries of a Decedent, then also execute and submit the Heirship Declaration attached hereto as Exhibit F.

Any PI Claimant who satisfies all of the above requirements (a)-(f) with respect to a given PI Channeled Claim shall have that PI Channeled Claim Allowed; provided, however, that any PI Claimant who is an NAS Claimant shall, in addition to above requirements (a)-(f), have its PI Channeled Claim Allowed hereunder only if such PI Claimant (i) was exposed in utero from a birth mother who used any opioid,[11] (ii) was born alive, and (iii) either proves a diagnosis of neonatal abstinence syndrome ("NAS") in his/her pre-September 2019 records, or, although not receiving a formal diagnosis of NAS, evidences symptoms of opioid withdrawal (such claimant, a "NAS Claimant"). Each NAS Claimant shall submit evidence of the above criteria (i)-(iii) along with its completed and signed Claim Form.

**If a PI Claimant does not satisfy these requirements, and, as applicable, meet these criteria, with respect to its PI Channeled Claim that is being liquidated under §§ 6-9 of this PI TDP, then such PI Channeled Claim shall be Disallowed.**

## § 4.    DETERMINING WHETHER A PRODUCT IS QUALIFYING.

One of the following is required to demonstrate a Qualifying Opioid as listed in Exhibit E:

(a)  A PI Claimant who provides evidence of a prescription for brand name OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt may rely on the name alone without the necessity of a corresponding NDC number.

---

(. . . continued)

to the satisfaction of the Claims Administrator shall be considered as if their Claim had been timely filed: (1) that the Claimant is a WV NAS Claimant, (2) that a Proof of Claim was filed in the Purdue bankruptcy by or on behalf of such WV NAS Claimant prior to April 23, 2021, and (3) a sworn declaration from the parent/guardian/custodian of such WV NAS Claimant that such parent/guardian/custodian did not know about the Purdue bankruptcy or Bar Date prior to the Bar Date.

[8]  For the avoidance of doubt, in the event a PI Claimant does not check any injury box from use of opioids on its Claim Form, its PI Channeled Claim shall be Disallowed. The Claim Form shall include clear language notifying a PI Claimant that if he or she fails to check any injury box from use of opioids, the PI Claimant will receive no recovery on its PI Channeled Claim.

[9]  Within 60 days after Effective Date, the Claim Form will be made available to PI Claimants electronically and, if a PI Claimant is a pro se claimant, also mailed to such PI Claimant in physical copy.

[10]  If the PI Claimant checks the box on the Claim Form indicating its election to liquidate its PI Claim in the tort system rather than under §§ 6-9 of this PI TDP, then such PI Claim will not be liquidated hereunder.

[11]  The opioid used by the Mother does not have to be a Qualifying Opioid, as long as there is evidence of the Mother's use of a Qualifying Opioid at some point in time in satisfaction of requirement (b) of § 3 above.

(b)    In order for a PI Claimant to qualify based on the use of one of the generic products listed in Exhibit E (e.g., oxycodone ER/CR, morphine sulfate ER, hydromorphone), s/he must present either:

    (i)    The corresponding NDC number, which is set forth in Exhibit E;[12] or

    (ii)    A notation in the record that the product is manufactured or sold by Rhodes or Purdue.

(c)    A PI Claimant who used (or, as applicable, where the Decedent or Mother used) a generic oxycodone prescription that does not contain evidence of § 4 (a) or (b) may only qualify if the prescription utilizes one of the following:

    (i)    Oxycodone CR (or controlled release); or

    (ii)    Oxycodone ER (or extended release).

## § 5.    TYPES OF EVIDENCE REQUIRED FOR QUALIFYING PRODUCTS.

All PI Claimants must demonstrate a prescription (which contains the name of the PI Claimant, Decedent or, Mother, as applicable) and a "Qualifying Opioid" by one of the following pieces of evidence:

(a)    Pharmacy prescription records;

(b)    Prescription records, including without limitation:

    (i)    A visit note in which the prescribing physician lists a prescription for one of the Qualifying Opioids; or

    (ii)    A signed prescription from a doctor for one of the Qualifying Opioids;

(c)    A historical reference to one of the Qualifying Opioids, including but not limited to:[13]

    (i)    A reference in contemporaneous medical records to historical use of one of the Qualifying Opioids;

    (ii)    A reference in contemporaneous substance abuse/rehabilitation/mental health records to historical use of one of the Qualifying Opioids;

    (iii)    A reference in contemporaneous law enforcement records to historical use of one of the Qualifying Opioids; or

    (iv)    A reference in contemporaneous family law or other legal proceedings records to historical use of one of the Qualifying Opioids;

(d)    A photograph of the prescription bottle or packaging of one of the Qualifying Opioids with the name of the PI Claimant, Decedent, or Mother (as applicable) as the patient listed the prescription label; or

(e)    A certification supplied by a Debtor, any of its successors (including the PI Trust), or a third party at a Debtor's or one of its successors' request, indicating that customer loyalty programs, patient assistance programs ("PAPs"), copay assistance programs, or any other data otherwise available to the certifying entity reflects that the PI Claimant, Decedent or Mother (as applicable) had at least one prescription for one of the Qualifying Opioids.

---

[12]    Subject to additional NDC numbers after discovery from or other disclosure by Debtors.

[13]    The record must have been created prior to September 15, 2019 only if the historical reference is self-reported by the PI Claimant.

(f)   With respect to PI Claimants whose PI Channeled Claim is based on the PI Claimant's, Decedent's, or Mother's use of only *diverted* (i.e., without a lawful prescription) qualifying branded products as a minor pursuant to § 3(b)(i) above and who cannot meet the evidentiary requirements of § 5(a)-(e) above[14] may qualify if the PI Claimant can demonstrate both of the following:[15]

    (i)   A declaration under penalty of perjury (a) from the PI Claimant, or (b) in the case of an NAS Claimant, from the Mother, guardian or custodian of the NAS Claimant (or other third party with knowledge of the Mother's opioid use), or (c) in the case of a claim arising from a Decedent's opioid use, from any third party with knowledge of the Decedent's opioid use, that the PI Claimant, Decedent, or Mother (as applicable) is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must also state how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the PI Channeled Claim would qualify for Tier 2 or Tier 3; and

    (ii)   An *additional* declaration from a third party with personal knowledge of the PI Claimant's, Decedent, or Mother's (as applicable) use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the PI Claimant, Decedent, or Mother (as applicable) is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must claim how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the PI Channeled Claim would qualify for Tier 2 or Tier 3.

(g)   In the event a PI Claimant who is not an NAS Claimant holds a claim arising from a *lawful* prescription of a qualifying product and cannot meet the evidentiary requirements of § 5(a)-(e) above, s/he may only qualify if s/he demonstrates all of the following:

    (i)   That the PI Claimant or his/her agents made a bona fide attempt to retrieve all known prescribing physician medical charts, all known pharmacy charts, all known rehabilitation charts, and all known insurance explanation of benefits was made. An affidavit of no records (ANR), certificate of no records (CNR), affidavit of destroyed records (ADR), or certificate of destroyed records (CNR) must be provided as to all known records listed above (and in the Claim Form). Alternatively, if some medical records were produced in response to PI Claimant's request but others were not, then evidence must be provided that PI Claimant requested all records but that only limited records were produced by the facilities (with an explanation of how the portion of records not provided by the custodian likely contains the qualifying product and the basis for that assessment of probability); and

---

[14]   Since by definition diversion cases do not have a prescription, a PI Claimant could otherwise meet the evidentiary requirements above only with a historical reference to the diverted use of a qualifying product as a minor. In the absence of that historical reference in the medical records, this affidavit requirement can be used under the conditions set forth in this subsection.

[15]   Sample affidavits will be made available on the PI Trust website.

(ii)    A declaration under penalty of perjury from the PI Claimant or, in the case of a claim arising from the opioid use of a Decedent, from a third party with knowledge of the Decedent's opioid use, that the PI Claimant or Decedent (as applicable) is known to have been prescribed and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the PI Channeled Claim would qualify for Tier 2 or Tier 3; and

(iii)    A supporting declaration from a third party with personal knowledge of the PI Claimant's or Decedent's (as applicable) use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the PI Claimant or Decedent (as applicable) is known to have used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the PI Channeled Claim would qualify for Tier 2 or Tier 3.

(h)    In the event an NAS *Claimant's* Mother received a *lawful* prescription of a qualifying product and cannot meet the evidentiary requirements of § 5(a)-(e) above, the NAS Claimant may qualify only if s/he demonstrates all of the following:

(i)    If the *Mother* is *unavailable*:

A.    A declaration under penalty of perjury from the guardian or custodian of the NAS Claimant that the Mother is alive and 1. her whereabouts are unknown, 2. she is incarcerated, or 3. she refuses to cooperate in obtaining her medical records for use by the NAS Claimant (i.e., is unavailable); and

B.    A supporting declaration from a third party, whether the guardian/custodian or someone else, with personal knowledge of the Mother's use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the Mother is known to have been prescribed and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the PI Channeled Claim would qualify for Tier 2 or Tier 3.

(ii)    If the *Mother* is *available*, the requirements of § 5(g)(i)-(iii) must be met with respect to the Mother.

(i)    The Claims Administrator shall have discretion, subject to the appeal process set forth in Exhibit C hereto, to determine whether the requirements in § 5(f)-(h) above have been met so as to provide sufficient indicia of reliability that the PI Claimant, Decedent, or Mother (where applicable) was prescribed (or received diverted as a minor) and used OxyContin,

MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt.

(j)     In no event may a PI Claimant whose evidence of qualifying product use is based solely on the declarations under § 5(f)-(h) qualify for Tier 1A or Tier 1B. Whether the PI Claimant qualifies for Tier 2 or Tier 3 will be based on the length of use stated in the declaration.

(k)     Any PI Claimant not meeting the requirements of § 3, § 4 and § 5(a)-(h) is not entitled to any payment, including Easy Payment, Base Payment, or Level Award (each as defined below).

(l)     The Claims Administrator has the discretion to request additional documentation believed to be in the possession of the PI Claimant or his or her authorized agent or lawyer. The Claims Administrator has the sole discretion, subject to the appeal process set forth in Exhibit C hereto, to Disallow, or to reduce or eliminate Awards on, claims being liquidated hereunder where he concludes that there has been a pattern and practice to circumvent full or truthful disclosure under this Section.

## § 6.    ORDER OF PAYMENTS; EASY PAYMENT.

A PI Claimant may choose between receiving an "Easy Payment" *or* a "Base Payment" and "Level Award," as detailed below.

The PI Trust will make payments in the following order:

(i)     Easy Payment (as defined below) of $3,500 per qualifying PI Claimant to those PI Claimants who elect to receive an Easy Payment; and

(ii)    Base Payments and Level Awards (each as defined below) to qualified PI Claimants who did not elect to receive an Easy Payment. Because monies are being received by the PI Trust in installments, payments of Awards may be in installments.

A PI Claimant meeting the requirements of § 3 (Allowance) pursuant to the standards set in § 4 (Determining What is a Qualifying Product) and § 5 (Evidence Required to Demonstrate a Qualifying Product) may elect on the Claim Form to receive a set payment (an "Easy Payment") in lieu of other compensation. **NOTE: if you select an Easy Payment, you are NOT eligible to receive any additional funds for your PI Channeled Claim**. That means you cannot receive any of the Base Payments or Level Awards below. If you select an Easy Payment and your PI Channeled Claim is determined to be an Allowed PI Channeled Claim, you will receive a payment of $3,500, before deduction of any fees, costs or liens as described herein, within a reasonably short amount of time after receipt of your claims package by the Claims Administrator, or as soon as all applicable liens have been cleared. It is expected those declining Easy Payment and seeking additional Awards may be paid at later stages, including in installments over time. The Easy Payment is also expected to be free of many (but not all) types of health care liens, including liens of Third Party Payors.

§ 7.    **ADDITIONAL AWARD DETERMINATION.**

(a)    Allowed PI Channeled Claims held by PI Claimants who do not elect to receive an Easy Payment and who otherwise meet the Qualifying Opioid requirement shall be categorized[16] as follows:

   (i)    **Tier 1A:**
      A.    Base Payment:
         1.    For PI Claimants who are not NAS Claimants, those that demonstrate that his/her or the Decedent's (where applicable) addiction, dependence or substance abuse began while using one of the Qualifying Opioids.
         2.    For NAS Claimants that demonstrate either:
            aa.    One of the Qualifying Opioids was used by the Mother while pregnant with the NAS Claimant; or
            bb.    One of the Qualifying Opioids was used by the Mother and the Mother's addiction, dependence or substance abuse began while using a Qualifying Opioid.

---

[16]    PI Claimants who assert or allege Qualifying Opioid usage in their Claim Form for which they cannot produce corresponding evidence will not recover on account of such alleged opioid usage.

3.  Other than submission of qualifying product records under § 3, § 4 and § 5(a)-(f), no additional documents are required for a Holder of an Allowed PI Channeled Claim to secure a Tier 1A Base Payment. The showing required for a Tier 1A Base Payment is a temporal relationship between use of a qualifying product and the onset of addiction, dependence or substance abuse within six months after use of a qualifying product.[17] There is a presumption that proof of qualifying product usage under the methods above within six months before the onset of addiction, dependence or substance abuse (as set forth in the Claim Form) is sufficient.

aa.  However, notwithstanding evidence of a qualifying product usage before the onset of addiction, dependence or substance abuse noted in the Claim Form, if the Claim Form, pharmacy, medical or other records demonstrate any of the below indicia of addiction, dependence or substance abuse that precede the earliest use of a qualifying product demonstrated by a PI Claimant that is not an NAS Claimant, the claim does not qualify for Tier 1A. Similarly, if an NAS Claimant's Tier 1 claim is based on the use by the Mother of a Qualifying Opioid when the addiction began (§ 7(a)(i)(A)(2)(bb)) and the Claim Form, pharmacy, medical or other records demonstrate any of the below indicia of addiction, dependence or substance abuse that precede the earliest use of a qualifying product by the Mother as demonstrated by the NAS Claimant, the claim does not qualify for Tier 1A.

a.  diagnosis of addiction, dependence or substance abuse relating to opioid use made by any medical professional;

b.  treatment in a rehabilitation center for opioid use disorder;

c.  overdose, withdrawal, or detox from an opioid;

d.  consecutive use of opioids with MME of greater than 90 mg/day for six months or more;

e.  use of illegal opioids; or

f.  use of medication-assisted treatment ("MAT") like methadone.

B.  Level Awards: In addition to Base Payments, Tier 1A PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

1  Level A:

aa.  For PI Claimants who are not NAS Claimants demonstrating one or more of the following:

a.  Opioid Use Disorder ("OUD");[18]

---

[17]  In the case of NAS Claimants proceeding under § 7(a)(1)(A)(2)(aa) (qualifying product use during pregnancy), use of a Qualifying Opioid by the Mother within 9 months prior to the date of birth of the NAS Claimant qualifies for Tier 1A. NAS Claimants proceeding under § 7(a)(1)(A)(2)(bb) (qualifying product use started addiction) will use the same showing as Claimants that are not NAS Claimants.

[18]  The diagnosis can be made by any medical professional, specifically including physicians, nurses, physician's assistant, mental health counselor or therapist, or professional at a rehabilitation center.

  b. MAT usage >6 months. MAT drugs include methadone, buprenorphine, Butrans, Suboxone, Zubsolv, Methadose, and naltrexone; or

  c. Administration of Narcan, Evzio or Naloxone.

 bb. For NAS Claimants demonstrating one or more of the following:

  a. NICU 2-30 days; or

  b. Other minor NAS-related injuries.[19]

2 *Level B*:

 aa. For PI Claimants who are not NAS Claimants demonstrating death caused by an opioid (such as overdose or withdrawal).

 bb. For NAS Claimants demonstrating one or more of the following:

  a. NICU >30 days; or

  b. Other serious NAS-related injuries.[20]

C. <u>Additional Evidence for Level Awards</u>:

1. If making a claim for a Tier 1A Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

2. If making a claim for a Tier 1 A Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in § 5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

3. If making a claim for a Tier 1A Level Award based on death, the death certificate of the Decedent as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying product use. No affidavits may be used to meet this requirement.

4. If making a claim for a Tier 1A Level Award based on other minor or serious NAS-related injuries, such medical documentation and scientific literature such as to meet the causal requirements herein to the satisfaction of the Claims Administrator in his sole discretion.

5. The PI Claimant may submit such additional information as the PI Claimant believes will assist the Claims Administrator's

---

[19]   Includes but not limited to general developmental delays or learning disabilities. The Claims Administrator has sole discretion to determine whether sufficient scientific evidence has been provided to support a causal connection to NAS such that there is a reasonable scientific basis to make such an award.

[20]   Includes but is not limited to death, congenital malformation, Spina Bifida, or heart defects. The Claims Administrator has sole discretion to determine whether sufficient scientific evidence has been provided to support a causal connection to NAS such that there is a reasonable scientific basis to make such an Award.

determination of the appropriate amount of any PI Channeled Claim that has satisfied the initial claim validity requirements.

(ii)     **Tier 1B:** Opioid-related death (overdose or withdrawal) while on OxyContin (temporal relationship between date of death and usage of OxyContin) qualify for Tier 1B Base Payment. Only branded OxyContin would qualify under Tier 1B (i.e., no other Qualifying Opioids). There are no Level Awards. If a PI Claimant is making a claim for a Tier 1B Award, the death certificate of the Decedent as well as any toxicology reports or autopsy reports must be produced. The death must coincide in time with the provided qualifying product use (i.e. the timing of usage, including number of pills, falls within 5 days of the death). For example, if the Decedent had a prescription 20 days before death and the number of pills in that prescription was enough such that it can reasonably be expected the Decedent was using it within 5 days of death, the case qualifies. Conversely, if the Decedent had a prescription 45 days before death and the number of pills in the prescription was such that it can reasonably be expected that the Decedent would have run out of pills 15 days before death, the case does not qualify. The underlying addiction does not need to have begun during qualifying product use; OxyContin use at the time of death is sufficient.

(iii)    **Tier 2:** PI Claimants must demonstrate use of a qualifying product for more than 6 months; however, the usage does not have to be consecutive.

A.    <u>Base Payment</u>: Other than for qualifying product records under § 3, § 4 and § 5(a)-(g), no additional documents are required for a Tier 2 Base Payment. All PI Claimants that qualify for Tier 2 will receive a Base Payment.

B.    <u>Level Awards</u>: In addition to Base Payments, Tier 2 PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

1    *Level A*:

aa.    For PI Claimants who are not NAS Claimants demonstrating one or more of the following:

a.    Opioid Use Disorder (OUD);

b.    MAT >6 months days; or

c.    Administration of Narcan, Evzio or Naloxone.

bb.    For NAS Claimants demonstrating one or more of the following:

a.    NICU 2-30 days; or

b.    Other minor NAS-related injuries.

2    *Level B*:

aa.    For PI Claimants who are not NAS Claimants demonstrating death caused by an opioid.

bb.    For NAS Claimants demonstrating one or more of the following:

a.    NICU >30 days; or

b.    Other serious NAS-related injuries.

C.    <u>Additional Evidence for Level Awards</u>:

1.    If making a claim for a Tier 2 Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made

by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

2.    If making a claim for a for a Tier 2 Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in §5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

3.    If making a claim for a Tier 2 Level Award based on death, the death certificate of the Decedent as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying product use. No affidavits may be used to meet this requirement.

4.    If making a claim for a Tier 2 Level Award based on other minor or serious NAS-related injuries, such medical documentation and scientific literature such as to meet the causal requirements herein to the satisfaction of the Claims Administrator in his sole discretion.

(iv)    **Tier 3:** Use of a qualifying product less than 6 months or otherwise not meeting the criteria of Tier 1A, Tier 1B or Tier 2 are entitled to no additional payments other than the Base Payment. Just for clarification, individuals who elect to receive the Easy Payment cannot receive any additional compensation and no Tier applies to their PI Claim. However, in the event a PI Claimant declines the Easy Payment and elects to proceed but does not qualify for Tiers 1A, 1B, or 2, such PI Claimant will receive the Tier 3 Base Payment and only the Tier 3 Base Payment.

## § 8.   BASE PAYMENTS AND LEVEL AWARDS.

(a)   Grid Origins.

The point values provided in this grid resulted from the work of counsel to the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject matter experts for the Ad Hoc Group of Individual Victims and the other holders of PI Channeled Claims, and collaborative discussions with stakeholders. The estimated amount per point is based on a sample, and will be updated periodically on the PI Trust's website, www. _____.com.

(b)   Amount of Money Per Point.

Based on an initial sample, we estimate that the dollar award amount per point will be between $0.80 and $1.20. The dollar amount ultimately awarded per point will be determined with reference to the funds remaining in the PI Trust (after the payment of Easy Payments and the costs and expenses of the PI Trust, as set forth in further detail in the PI Trust Agreement) and to the pool of claims remaining against the PI Trust.

| | **Tier 1A: PI** *Addiction from Purdue Opioids* | **Tier 1B: PI** *Death on OxyContin* | **Tier 2: PI** *Purdue Opioids Use ≥6 months* | **Tier 3: PI** *No Addiction/ Death from Purdue Opioids, and Purdue Opioids Use <6 months* | **Tier 1A: NAS** *Addiction from Purdue Opioids, or Purdue Opioids Use During Pregnancy* | **Tier 2: NAS** *Purdue Opioids Use ≥6 months* | **Tier 3: NAS** *No Addiction from Purdue Opioids, No Purdue Opioids Use During Pregnancy, and Purdue Opioids Use <6 months* |
|---|---|---|---|---|---|---|---|
| **BASE PAYMENTS** | 20,000 pts[21] | 40,000 pts | 6,000 pts | $3,500 | 20,000 pts | 6,000 pts | $3,500 |
| **LEVELS (one of the below)[22]** | | | | | | | |
| **A** | 10,000 pts<br><br>OUD Diagnosis, OR MAT for > 6 months | N/A | 3,000 pts<br><br>OUD Diagnosis, OR MAT for > 6 months | N/A | 10,000 pts<br><br>NICU of 2-30 days, OR minor NAS-related injuries | 3,000 pts<br><br>NICU of 2-30 days, OR minor NAS-related injuries | N/A |
| **B** | 20,000 pts<br><br>Death from an Opioid | N/A | 20,000 pts<br><br>Death from an Opioid | N/A | 20,000 pts<br><br>NICU >30 days, OR Other serious NAS-related injuries | 20,000 pts<br><br>NICU >30 days, OR Other serious NAS-related injuries | N/A |

---

[21]   PI Claimants who do not claim addiction, dependence or abuse of opioids are not entitled to receive Tier 1A Awards.

[22]   If a PI Claimant does not qualify for additional Level Awards, they do not get additional money above the Base Payment. A PI Claimant can only qualify for one, but not multiple, Level Awards.

## § 9.    ADDITIONAL CLAIM FACTORS AND VALUATION

(a)    To the extent practicable, only objective factors are to be scored, based upon the axiom that in mass torts consistency is fairness.

(b)    This grid is based in part on other scoring grids developed in comparable cases and development of a scoring grid with unique customization according to the claims and injuries encountered and reviewed in sampling the individual PI Claimants.

(c)    Because of limited funds, economic damages are not compensable. This PI TDP only compensates general pain and suffering. Nonetheless, all damages from use of Qualifying Opioids are being channeled to the PI Trust and released, including both economic and non-economic or general damages.

(d)    Only reported injuries are to be scored.

(e)    In no circumstance shall the Claims Administrator assign any claim value for any punitive damages, exemplary damages, statutory enhanced damages, or attorneys' fees or costs (including statutory attorneys' fees and costs).

(f)    Only PI Claims based on injuries or facts occurring prior to the filing of a Proof of Claim in the Chapter 11 Cases are eligible for recovery.

## § 10.    BAR FOR PRIOR SETTLED CASES

A PI Claimant whose PI Channeled Claim was reduced prior to the Petition Date to a settlement, judgment, or award against a Debtor shall be barred from receiving any Award under this PI TDP (Easy Payment, Base Payment or Level Award) on account of such PI Channeled Claim and shall not recover from the PI Trust on account of such PI Channeled Claim; provided, however, that a prior settlement with respect to a living person's OUD claim does not bar a subsequent wrongful death claim arising out of that settled OUD claim.

## § 11.    SPECIAL PROCEDURES IN RESPECT OF MINORS

For PI Claimants who are minors under applicable law, the special procedures set forth in Exhibit G hereto also apply and shall supplement the procedures set forth in this PI TDP.

## § 12.    FAIRNESS AUDITS AND FRAUD PREVENTION.

The Claims Administrator will use appropriate technology and strategies to prevent paying fraudulent claims while making the claims process as simple as possible. Reasonable steps will be taken to mitigate fraud so as to ensure a fair and secure claims review and payment process. Among the techniques will be technology to prevent claims submitted by BOTS, unique PI Claimant identification numbers, and strategic Claim Form fields, while not falsely flagging legitimate PI Channeled Claims. Periodic fairness audits will be conducted on samples of PI Channeled Claims, to ensure that they are being graded and paid fairly.

## § 13.    CHARITY.

The PI Trust will establish a charitable trust to accept donations that can be used to address the opioid addiction crisis by providing grant funding for recovery support services, addiction and addiction family harm reduction-related activities, education, family support, community-based advocacy efforts, and assistance to organizations providing services to individuals and caregivers grappling with opioid-related problems of PI Claimants. The distribution of funding provided by this charity may be streamlined through qualified not-for-profit organizations. The charity will be funded only through donations; none of the funds

received by the PI Trust under the Plan will be diverted to fund this charity. PI Claimants may choose to allocate part or all of their share of their recovery to this charity.

## § 14.   APPEALS.

Each PI Claimant who has its PI Channeled Claims liquidated under this PI TDP has an appeal right, which is described in Exhibit C. The decision of the Appeals Master pursuant to Exhibit C is final and binding, and PI Claimants have no further appeal rights beyond those set forth in Exhibit C.

**EXHIBIT B**

**PROCEDURES FOR PI CLAIMANTS WHO OPT TO LIQUIDATE
THEIR PI CLAIMS IN THE TORT SYSTEM RATHER THAN UNDER THE
INDIVIDUAL PURDUE PHARMA LP TRUST DISTRIBUTION PROCEDURE**

The following procedures shall apply in the case of a PI Claimant[1] who elects, subject to the terms hereof, to liquidate his or her PI Claim by commencing a lawsuit in the tort system after so indicating on his or her Claim Form filed by the date that is 150 days after the Effective Date of the Plan. By so electing, such PI Claimant forfeits any right to have its PI Claim liquidated under sections 6 through 9 (inclusive) of the PI TDP, and instead shall have the right to liquidate its PI Claim exclusively in the tort system. This option is available only for claims that meet the definition of "PI Claim" under the Plan. The adjudication of a PI Claim in the tort system shall be deemed to be an adjudication of that PI Claim and any associated PI Channeled Claims of the PI Claimant regarding the same injuries that are the subject of its PI Claim. Any Distribution from the PI Trust on a Final Judgment in respect of such PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such PI Claim and such associated PI Channeled Claims.

1.01    **Suits in the Tort System.** If a PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting its PI Claim, then it may elect to liquidate such PI Claim in the tort system rather than under the PI TDP by checking the box so indicating on his or her Claim Form filed by the date that is one hundred and fifty (150) days after the Effective Date of the Plan.[2] If the PI Claimant makes such election, then the PI Claimant may file a lawsuit regarding only its PI Claim (and no other claims) against only the PI Trust (and including no other parties as defendants) solely in the United States District Court for the Southern District of New York, unless such court shall order pursuant to 28 USC § 157(b)(5) that such suit may be tried in the United States District Court (other than the United States District Court for the Southern District of New York) for the district in which the PI Claim arose.

Any such lawsuit must be filed by the PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit may be consolidated with the lawsuit of any other plaintiff. All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[3]

If a PI Claimant obtains a judgment on his/her PI Claim in the tort system and such judgment becomes a final order (each, a "Final Judgment"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Trust, subject

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the PI TDP.
[2] The filing of a Claim Form indicating that a PI Claimant has elected to liquidate his or her PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the claims asserted by such PI Claimant's action.
[3] Among other things, the PI Trust reserves all rights to assert that the claim that is the subject of a PI Claimant's lawsuit is not a "PI Claim" within the meaning of the Plan.

to the limitation on damages provision set forth below, as well as the Payment Percentage and the Maximum Point Value (each as defined below), as provided in <u>Section 1.06</u> below, and the resolution of healthcare liens, as provided in <u>Section 1.07</u> below. If the PI Claim liquidated in the tort system is a claim concerning the death of an opioid user, then in order to receive payment from the PI Trust, the PI Claimant must first execute the Heirship Declaration attached to the PI TDP as Exhibit F.

**1.02    Limitation on Damages and Attorneys' Fees.**   Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any PI Claim litigated against the PI Trust in the tort system.

**1.03    Maximum Point Value.**   The following sets forth the maximum number of points to be attributed to a Final Judgment (such limitation, as applicable, the "<u>Maximum Point Value</u>"):

   a)      If the Final Judgment, subject to the limitation on damages provision set forth above, is more than $0 but not more than $x: [ ] points.

   b)      If the Final Judgment, subject to the limitation on damages provision set forth above, is more than $x but not more than $y: [ ] points.

   c)      If the Final Judgment, subject to the limitation on damages provision set forth above, is more than $y: [ ] points.

Points will be converted to dollars (as converted, the "<u>Maximum Value</u>") consistent with the conversion set forth in section 8 of the PI TDP. As set forth in more detail in the TDP, the dollar amount ultimately awarded per point will be determined with reference to the funds remaining in the PI Trust and to the pool of claims remaining against the PI Trust. It will vary depending on how many people choose to opt out their claims and how expensive it is for the PI Trust to defend those claims in the tort system. It will also depend on the payment elections made by those who are liquidating their claims under sections 6-9 (inclusive) of the PI TDP.

At this time, it is estimated that the dollar award amount per point will be between $0.80 and $1.20.

**1.04    Payment Percentage.**   A Final Judgment shall be subject to reduction by the same percentage that PI Claims liquidated under the PI TDP are reduced prior to payment. In other words, a PI Claimant who elects to liquidate his or her PI Claim in the tort system shall not be entitled to receive more than its pro-rata share of the value available for distribution to all PI Channeled Claims entitled to a recovery pursuant to the PI TDP. Based upon the work of the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject-matter experts for the Ad Hoc Group of Individual Victims and other holders of PI Claims, review of judgments obtained in lawsuits, settlement history, and collaborative discussions with stakeholders, the Base

Payments and Level Awards described in the PI TDP represent an estimated pro-rata percentage recovery by PI Claimants holding Allowed PI Channeled Claims of approximately [   ]% (such pro-rata percentage recovery as may be altered over time, the "Payment Percentage"). Accordingly, the initial Payment Percentage is [   ]%.

No holder of a PI Claim who elects to liquidate his or her PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her PI Claim multiplied by the Payment Percentage in effect at the time of payment (such value so reduced, the "Percentage-Reduced Claim"); provided, however, that if there is a reduction in the Payment Percentage, the PI Trustee, in his or her sole discretion, may cause the PI Trust to pay a PI Claim based on the Payment Percentage that was in effect prior to the reduction if the judgment in respect of such PI Claim became a Final Judgment prior to the date the PI Trustee proposes the new Payment Percentage to the Oversight Committee and the processing of such PI Claim was unreasonably delayed due to circumstances beyond the control of the PI Claimant or the Claimant's Counsel (as applicable).

**1.05    Adjustment of the Payment Percentage.**  The Payment Percentage shall be subject to change if the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, determines that an adjustment is required. No less frequently than once every three (3) years, commencing with the date that is three (3) years after the Effective Date, the PI Trustee (with the assistance of the Claims Administrator) shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage if necessary with the consent of the Oversight Committee. The PI Trustee shall reconsider the then-applicable Payment Percentage at shorter intervals if he or she deems such reconsideration to be appropriate or it requested to do so by the Oversight Committee.

The PI Trustee shall base his or her determination of the Payment Percentage on current estimates of the number, types, and values of PI Channeled Claims, the value of the assets of the PI Trust available for the payment of Allowed PI Channeled Claims pursuant to the PI TDP and amounts due and estimated to become due pursuant to the PI TDP in respect to Final Judgments obtained by PI Claimants who elect to liquidate their PI Claims in the tort system, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of (i) full value to all holders of Allowed PI Channeled Claims and (ii) the Maximum Value to PI Claimants who elect to liquidate their PI Claims in the tort system. When making these determinations, the PI Trustee (with the assistance of the Claims Administrator) shall exercise common sense and flexibly evaluate all relevant factors.

If a redetermination of the Payment Percentage has been proposed in writing to the Oversight Committee by the PI Trustee, but such redetermination of the Payment Percentage has not yet been adopted by the Oversight Committee, a PI Claimant that has obtained a Final Judgment shall receive the lower of the then-current Payment Percentage and the proposed Payment Percentage. However, if the proposed Payment Percentage is the lower amount but is not subsequently adopted by the Oversight Committee, the PI Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage is the higher

3

amount and subsequent adopted, the PI Claimant who has obtained a Final Judgment shall thereafter receive the difference between the over current amount and the higher adopted amount.

At least thirty (30) days prior to proposing in writing to the Oversight Committee a change in the Payment Percentage, the PI Trustee shall post to the PI Trust's website a notice indicating the PI Trustee is reconsidering the Payment Percentage.

If the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, makes a determination to increase the Payment Percentage due to a material change in estimates of the future assets and/or liabilities of the PI Trust, the Claims Administrator shall make supplemental payments to all PI Claimants who obtained previously a Final Judgment and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the PI Channeled Claim in question multiplied by the newly-adjusted Payment Percentage, less all amounts paid previously to the PI Claimant with respect of such PI Channeled Claim.

The PI Trust's obligation to make a supplemental payment to a PI Claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $100.00. However, the PI Trust's obligation shall resume, and the PI Trust shall pay any such aggregate supplemental payments due to the PI Claimant that obtained a Final Judgment at such time that the total exceeds $100.00.

1.06    **Payment of Judgments for Money Damages.**    A PI Claimant who obtains a Final Judgment shall receive from the PI Trust, in full and final satisfaction of that Final Judgment, a total amount equal to the *lesser* of (i) the Percentage-Reduced Claim and (ii) the Maximum Value, in each case as in effect on the date of the pending payment, as described next. Such amount shall be paid to the PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; *subject, however*, to the prior satisfaction of healthcare liens as set forth in Section 1.07 below. In no event shall interest be paid in respect of any judgment obtained in the tort system. Neither these amounts nor the payment schedule thereof shall not subject to any appeal or reconsideration.

1.07    **Resolution of Health Care Liens**.    The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his reasonable satisfaction that any private or governmental health care liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

1.08    **Applicability of Special Procedures for Minors and Heirs.**    The special procedures set forth in Exhibit G to the PI TDP shall apply to PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in their capacity as an heir must execute and submit the Heirship Declaration attached to the PI TDP as Exhibit F.

**EXHIBIT C**

**PROCEDURE FOR DEFICIENCIES AND APPEALS FOR**
**THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE**

These procedures apply only to PI Channeled Claims liquidated under sections 6 through 9 (inclusive) of the PI Trust Distribution Procedure (PI TDP), and are not available for PI Claims liquated in the tort system.

1.01    **Curing Deficiencies.**    If the Claims Administrator[1] determines that a claim submitted pursuant to the PI TDP is incomplete, (s)he will notify the PI Claimant and afford a 14-day period to cure any such deficiency.    Such deficiencies include, but are not limited to, failure to sign the Claim Form (Exhibit A to the PI TDP), failure to complete the Claim Form, failure to execute a HIPAA authorization (Exhibit D to the PI TDP), or submission of a declaration that fails to meet the requirements of § 5 of the PI TDP.    If the deficiency is timely cured to the satisfaction of the Claims Administrator, no deduction or penalty will be assessed to an otherwise qualifying Claim.    If the deficiency is not timely cured, or not cured at all, the Claims Administrator, depending on the nature of the deficiency, has the authority to prevent the PI Claimant from receiving all or part of any award (s)he would otherwise be entitled to.

1.02    **Appeals to the Claims Administrator.**    If a PI Claimant is dissatisfied with his/her award determination pursuant to the PI TDP or a determination by the Claims Administrator to limit or prohibit an award pursuant to the deficiency process described in Section 1.01 above, (s)he can appeal to the Claims Administrator within fourteen (14) days of receiving notice of such Claims Administrator determination by submitting a written document clearly marked as "Appeal to Claims Administrator."    In that document, the PI Claimant should identify the determination with which the PI Claimant disagrees and state the reasons for the disagreement.    The PI Claimant may submit any additional documentation (s)he wishes to have considered.    Only one appeal is permitted per Proof of Claim.    The Claims Administrator shall conduct a de novo review and promptly issue a ruling in writing to the PI Claimant and/or his/her counsel, as applicable.    In the event that the Claims Office determines that the records submitted in support of the Claim are unreliable, the Notification of Status letter shall advise the PI Claimant of such determination and shall identify the particular records or statements that are deemed unreliable.    The Claims Administrator shall not change the PI TDP allowance criteria.    The PI Claimant shall have the right to appeal any such determination to the Appeals Master as set forth in Section 1.03 herein.

1.03    **Appeals to Appeals Master.**    PI Claimants who disagree with the ruling of the Claims Administrator may appeal to the Appeals Master within fourteen (14) days of notice of such ruling by submitting a written statement outlining the PI Claimant's position and

---

[1]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the PI TDP.

1

why the PI Claimant believes the Claims Office and Claims Administrator have erred. An appeal fee of $1,000 shall be assessed against the PI Claimant's recovery from the PI Trust regardless of the outcome of the Appeal.   The Appeals Master shall review only the appeal record and Claim file in deciding the appeal.   The Appeals Master shall apply the guidelines and procedures established in the PI TDP, and the appeals process shall not result in any modification of substantive eligibility criteria.   The Appeals Master shall issue a determination on the appeal in writing, which shall be served on the PI Claimant (and his/her counsel, where applicable) and the Claims Administrator. Decisions of the Appeals Master pursuant hereto are final and binding, and PI Claimants have no further appeal rights beyond those set forth herein.

## EXHIBIT E

## QUALIFYING OPIOIDS FOR
## THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE

| Drug Name | NDC Labeler and Drug Prefix |
| --- | --- |
| OxyContin | 59011-410- |
| OxyContin | 59011-415- |
| OxyContin | 59011-420- |
| OxyContin | 59011-430- |
| OxyContin | 59011-440- |
| OxyContin | 59011-460- |
| OxyContin | 59011-480- |
| OxyContin | 59011-0100- |
| OxyContin | 59011-0103- |
| OxyContin | 59011-0105- |
| OxyContin | 59011-0107- |
| OxyContin | 59011-0109- |
| OxyContin | 43063-0244- |
| OxyContin | 43063-0245- |
| OxyContin | 43063-0246- |
| OxyContin | 43063-0354- |
| Butrans | 59011-750- |
| Butrans | 59011-751- |
| Butrans | 59011-752- |
| Butrans | 59011-757- |
| Butrans | 59011-758- |
| Hysingla ER | 59011-271- |
| Hysingla ER | 59011-272- |
| Hysingla ER | 59011-273- |
| Hysingla ER | 59011-274- |
| Hysingla ER | 59011-275- |
| Hysingla ER | 59011-276- |
| Hysingla ER | 59011-277- |
| MS Contin | 42858-515- |
| MS Contin | 42858-631- |
| MS Contin | 42858-760- |
| MS Contin | 42858-799- |
| MS Contin | 42858-900- |
| MS Contin | 00034-0513- |
| MS Contin | 00034-0514- |
| MS Contin | 00034-0515- |
| MS Contin | 00034-0516- |
| MS Contin | 00034-0517- |
| MS Contin | 16590-884- |
| Dilaudid | 42858-122- |
| Dilaudid | 42858-234- |

| | |
|---|---|
| Dilaudid | 42858-338- |
| Dilaudid | 42858-416- |
| Dilaudid | 76045-009- |
| Dilaudid | 76045-010- |
| Dilaudid | 0074-2414- |
| Dilaudid | 0074-2415- |
| Dilaudid | 0074-2416- |
| Dilaudid | 0074-2426- |
| Dilaudid | 0074-2451- |
| Dilaudid | 0074-2452- |
| OxyIR | 59011-0201- |
| OxyFast | 59011-0225- |
| MSIR | 00034-0518- |
| MSIR | 00034-0519- |
| MSIR | 00034-0521- |
| MSIR | 00034-0522- |
| MSIR | 00034-0523- |
| Palladone | 59011-0312- |
| Palladone | 59011-0313- |
| Palladone | 59011-0314- |
| Palladone | 59011-0315- |
| Buprenorphine | 42858-353- |
| Buprenorphine | 42858-493- |
| Buprenorphine | 42858-501- |
| Buprenorphine | 42858-502- |
| Buprenorphine | 42858-586- |
| Buprenorphine | 42858-750- |
| Buprenorphine | 42858-839- |
| Hydromorphone Hydrochloride | 42858-301- |
| Hydromorphone Hydrochloride | 42858-302- |
| Hydromorphone Hydrochloride | 42858-303- |
| Hydromorphone Hydrochloride | 42858-304- |
| Morphine Sulfate | 42858-801- |
| Morphine Sulfate | 42858-802- |
| Morphine Sulfate | 42858-803- |
| Morphine Sulfate | 42858-804- |
| Morphine Sulfate | 42858-805- |
| Morphine Sulfate | 0904-6557- |
| Morphine Sulfate | 0904-6558- |
| Morphine Sulfate | 0904-6559- |
| Morphine Sulfate | 35356-833- |
| Morphine Sulfate | 35356-836- |
| Morphine Sulfate | 35356-838- |
| Morphine Sulfate | 42858-801- |
| Morphine Sulfate | 42858-802- |
| Morphine Sulfate | 42858-803- |
| Morphine Sulfate | 42858-810- |
| Morphine Sulfate | 42858-811- |
| Morphine Sulfate | 42858-812- |

| | |
|---|---|
| Morphine Sulfate | 61919-966- |
| Morphine Sulfate | 67296-1561- |
| Morphine Sulfate | 68084-157- |
| Morphine Sulfate | 68084-158- |
| Morphine Sulfate | 63304-400- |
| Morphine Sulfate | 63304-401- |
| Morphine Sulfate | 16590-966- |
| Oxycodone Hydrochloride | 0406-0595- |
| Oxycodone Hydrochloride | 0093-0031- |
| Oxycodone Hydrochloride | 0093-0032- |
| Oxycodone Hydrochloride | 0093-0033- |
| Oxycodone Hydrochloride | 0093-5731- |
| Oxycodone Hydrochloride | 0093-5732- |
| Oxycodone Hydrochloride | 0093-5733- |
| Oxycodone Hydrochloride | 0093-5734- |
| Oxycodone Hydrochloride | 0115-1556- |
| Oxycodone Hydrochloride | 0115-1557- |
| Oxycodone Hydrochloride | 0115-1558- |
| Oxycodone Hydrochloride | 0115-1559- |
| Oxycodone Hydrochloride | 0115-1560- |
| Oxycodone Hydrochloride | 0115-1561- |
| Oxycodone Hydrochloride | 0115-1562- |
| Oxycodone Hydrochloride | 0591-2693- |
| Oxycodone Hydrochloride | 0591-2708- |
| Oxycodone Hydrochloride | 0591-3503- |
| Oxycodone Hydrochloride | 0781-5703- |
| Oxycodone Hydrochloride | 0781-5726- |
| Oxycodone Hydrochloride | 0781-5767- |
| Oxycodone Hydrochloride | 0781-5785- |
| Oxycodone Hydrochloride | 10702-801- |
| Oxycodone Hydrochloride | 10702-803- |
| Oxycodone Hydrochloride | 42858-001- |
| Oxycodone Hydrochloride | 42858-002- |
| Oxycodone Hydrochloride | 42858-003- |
| Oxycodone Hydrochloride | 42858-004- |
| Oxycodone Hydrochloride | 42858-005- |
| Oxycodone Hydrochloride | 49884-136- |
| Oxycodone Hydrochloride | 49884-137- |
| Oxycodone Hydrochloride | 49884-138- |
| Oxycodone Hydrochloride | 49884-197- |
| Oxycodone Hydrochloride | 60505-3537- |
| Oxycodone Hydrochloride | 60505-3538- |
| Oxycodone Hydrochloride | 60505-3539- |
| Oxycodone Hydrochloride | 60505-3540- |
| Oxycodone Hydrochloride | 60951-0702- |
| Oxycodone Hydrochloride | 60951-0703- |
| Oxycodone Hydrochloride | 60951-0705- |
| Oxycodone Hydrochloride | 60951-0710- |
| Oxycodone Hydrochloride | 67296-1376- |

| | |
|---|---|
| Oxycodone Hydrochloride | 67296-1560- |
| Oxycodone Hydrochloride | 68774-0161- |
| Oxycodone Hydrochloride | 68774-0162- |
| Oxycodone Hydrochloride | 68774-0163- |
| Oxycodone Hydrochloride | 68774-0164- |
| Oxycodone Hydrochloride | 00093-0024- |
| Oxycodone Hydrochloride | 00093-0031- |
| Oxycodone Hydrochloride | 00093-0032- |
| Oxycodone Hydrochloride | 00093-0033- |
| Oxycodone Hydrochloride | 00115-1644- |
| Oxycodone Hydrochloride | 00172-6354- |
| Oxycodone Hydrochloride | 00172-6355- |
| Oxycodone Hydrochloride | 00172-6356- |
| Oxycodone Hydrochloride | 00172-6357- |
| Oxycodone Hydrochloride | 00591-3501- |
| Oxycodone Hydrochloride | 00591-3502- |
| Oxycodone Hydrochloride | 00591-3503- |
| Oxycodone Hydrochloride | 00591-3504- |
| Oxycodone Hydrochloride | 52152-0408- |
| Oxycodone Hydrochloride | 52152-0409- |
| Oxycodone Hydrochloride | 52152-0410- |
| Oxycodone Hydrochloride | 52152-0411- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-040- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-139- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-201- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-202- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-203- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-238- |
| Oxycodone/Acetaminophen | 42858-102- |
| Oxycodone/Acetaminophen | 42858-103- |
| Oxycodone/Acetaminophen | 42858-104- |

## EXHIBIT G

## DISTRIBUTIONS TO OR FOR THE BENEFIT OF MINOR CLAIMANTS FOR THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE[1]

The following procedures apply to any PI Claimant who is a minor under applicable law (a "Minor Claimant") for so long as the PI Claimant remains a minor under applicable law. These procedures apply regardless of whether the Minor Claimant elects to have its PI Claim liquidated under the PI TDP or to pursue its claim in the tort system.

1.  **Actions by Proxy of Minor Claimant.**  A Minor Claimant's custodial parent, its legal guardian under applicable law (a "Guardian"), or an adult providing custody and care to the minor (any of the foregoing acting on behalf of the Minor Claimant, the "Proxy") is authorized to make submissions on behalf of the Minor Claimant under the PI TDP, subject to paragraph 2 below.  The Proxy shall be responsible for submitting, on behalf of such Minor Claimant, all required forms under the PI TDP, including the Claim Form, as well as any evidence required by the PI Trust to support the Claim Form, and any other documentation required or requested pursuant to the PI TDP.  The Proxy is authorized to take, on behalf of a Minor Claimant, all actions under the PI TDP that the Minor Claimant would be authorized to take if such Minor Claimant were an adult, other than receiving distributions from the PI Trust (unless so authorized by paragraph 5 below).  These actions include, where permitted, making an opt-out or payment election or requesting an appeal pursuant to Exhibit C to the PI TDP.

2.  **Establishing Proxy of a Minor Claimant**. Any purported Proxy making a submission to the PI Trust on behalf of a Minor Claimant shall include along with such submission

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PI Trust Distribution Procedure ("PI TDP").

documentation of his/her authority to act on behalf of the Minor Claimant, consisting of the following:

a.  If the purported Proxy is the Guardian of the Minor Claimant, then the court order appointing that Proxy as Guardian, or other documents reasonably acceptable to the Claims Administrator as sufficient under applicable law to evidence the guardianship.

b.  If the purported Proxy is the custodial parent of the Minor Claimant, then a sworn statement that such Proxy is the custodial parent of the Minor Claimant.

c.  If the purported Proxy is neither the Guardian nor custodial parent of the Minor Claimant, then a sworn statement by the purported Proxy that he/she is providing custody and care to the Minor Claimant, stating for how long he/she has been providing such care and custody, explaining his/her relationship to the Minor Claimant and the circumstances around the provision of care and custody, as well as a statement and/or records from one or more of the following in support of his/her sworn statement:

1.  Minor Claimant's school

2.  Purported Proxy's landlord or property manager

3.  Minor Claimant's health provider

4.  Minor Claimant's child care provider

5.  Purported Proxy's placement agency

6.  Governmental social services agency

7.  Indian tribe officials

8.  Purported Proxy's Employer

Whether the purported Proxy is a Guardian, custodial parent, or neither, the Claims
Administrator may require additional corroborating evidence at his discretion, including
in the event that instructions are received from more than one purported Proxy for the
same Minor Claimant.

3. **Distributions to Minor Claimants.**    When the PI Trust has determined the final
distributable amount on a Minor Claimant's claim, it will send notice of such final amount
to the Minor Claimant's Proxy and counsel (if known).  Such notice will include a letter
inviting the Proxy to discuss how the distributable amount was determined, and the Claims
Administrator will take reasonable steps to ensure that the Proxy understands how such
amount was determined.  Any distributions owing to a Minor Claimant that are ready for
issue by the PI Trust at a time when the Minor Claimant is still a minor under applicable
law shall be (i) used to pay the individual attorneys' fees of the Minor Claimant pursuant
to paragraph (4) below and (ii) with respect to the remainder, paid into an interest-bearing
sub-fund of the Trust (the "Minor Claimants Account"), held there for the sole benefit of
the Minor Claimant, and invested in a U.S. governmental money-market fund until such
funds are distributed pursuant to Section 5 below or until the Minor Claimant becomes an
adult under applicable law (the "Adult Distribution Date"), at which time the amount then
held in such account (including interest earned) shall be paid directly to such PI Claimant.
Pending distributions for all Minor Claimants may be held in the same sub-fund.

4. **Payments of attorneys' fees.**

Within a reasonable period following receipt of Notice of the final distributable amount on
Minor Claimant's PI Channeled Claim, and using forms to be provided by the Claims
Administrator, the Minor Claimant's counsel shall submit to the PI Trust, with a copy to

the Proxy, a request for payment of legal fees and expenses from the Minor's recovery.  It is the Minor Claimant's attorney's duty to comply with all ethical and legal rules respecting such legal fees and expenses, and the Claims Administrator is permitted to rely upon such representation in issuing payments in respect of such fees and expenses.  Absent objection from the Proxy with respect to such asserted fees and expenses, the Claims Administrator shall remit payment to the Minor Claimant's attorney in accordance with the latter's request.

5. **Early Distributions.**  Funds held in the Minor Claimants Account for a Minor Claimant may be released prior to the Adult Distribution Date only pursuant to order of a U.S. court of general jurisdiction in the Minor Claimant's state of residence.

**Exhibit C-1**

Redline of PI Trust Distribution Procedure

### INDIVIDUAL PURDUE PHARMA LP
### PI TRUST DISTRIBUTION PROCEDURE

## § 1.    APPLICABILITY AND SUBMISSION INSTRUCTIONS.

This trust distribution procedure ("PI TDP") sets forth the manner in which PI Channeled Claims (as defined below) may become eligible for payments from, and shall be fully discharged by, the PI Trust.[1] Distributions in respect of PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust to Holders of PI Claims on the terms set forth herein.

~~This Trust Distribution Procedure ("TDP") sets forth (i) the criteria and process by which PI Claims channeled to the PI Trust shall be Allowed or Disallowed (such PI Claims so Allowed, "Allowed PI Claims"), and (ii) for Allowed PI Claims, the criteria for determining the amount receivable on such claims and the process by which such recoveries shall be distributed from the PI Trust.~~

~~The PI Claims (as defined in the Chapter 11 Plan (the "Plan")~~[1] Pursuant to the plan of reorganization of Purdue Pharma L.P. and its ~~debtor~~Debtor affiliates~~), which have been~~ (the "Plan"), the following claims ("PI Channeled Claims") will be channeled to, and liability therefore shall be assumed by, the PI Trust~~, are Claims~~ as of the Effective Date: (i) all PI Claims, which are claims against any Debtor for alleged opioid-related personal injury or other similar opioid-related ~~claim~~claims or ~~Cause~~Causes of Action~~, including~~ against any Debtor, which includes any opioid-related personal injury Claim or similar opioid-related Claim asserted by a ~~a~~an NAS Child, and that ~~is~~are not ~~a~~ Third-Party Payor ~~Claim~~Claims, ~~a~~ NAS Monitoring ~~Claim or a Claim~~Claims, or Claims held by a Domestic Governmental Entity, and (ii) all Released Claims or Shareholder Released Claims that are claims for alleged opioid-related personal injury or that are similar opioid-related claims or Causes of Action, including any opioid-related personal injury Claims or similar opioid-related Claims asserted by an NAS Child, and that are not Third-Party Payor Channeled Claims or NAS Monitoring Channeled Claims or held by a Domestic Governmental Entity. PI Channeled Claims shall be administered, liquidated and discharged pursuant to the PI Trust Documents, and satisfied solely from funds held by the PI Trust as and to the extent provided in this PI TDP. Holders of PI Channeled Claims are referred to herein as "PI Claimants."[2]

PI Channeled Claims liquidated under this TDP shall be (i) Allowed or Disallowed (such PI Channeled Claims so Allowed, "Allowed PI Channeled Claims") and, for Allowed PI Channeled Claims, (ii) liquidated to determine the amounts receivable thereon (an "Award"), in each case pursuant to the terms of this PI TDP.

~~Individual awards set forth herein~~Awards will be a gross number before deduction of legal fees and expenses, and lien amounts under the Lien Resolution Program Agreement (the "LRP Agreement"), if any, from a PI Claimant's ~~payment under this TDP (an "~~Award~~")~~. The order of payments to be made by the PI Trust is set forth in § 6. No amounts shall be paid on account of a PI Channeled Claim unless such Claim has been Allowed.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[1] ~~Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.~~

[2] "PI Claimant" includes each person holding a PI Claim arising from his/her own opioid use; each person holding a PI Claim arising from the opioid use of a decedent (such deceased person, a "Decedent"), and each NAS Claimant (as defined below) holding a PI Claim arising from the opioid use of the NAS Claimant's biological mother (the "Mother").

This PI TDP sets forth what evidence and forms you must submit in order to be eligible to receive an Award. Forms may be completed online at the PI Trust's website, www. _____.com, or by mailing back the completed forms to the PI Trust at the below address. Evidence in support of your PI Claim should be submitted to [ _____ ].[3]

> **ELECTION TO LIQUIDATE PI CLAIM IN THE TORT SYSTEM RATHER THAN UNDER THIS PI TDP**
>
> **A PI Claimant who (i) timely filed a Proof of Claim in the Chapter 11 Cases prior to the General Bar Date asserting his/her PI Claim against one or more Debtors and (ii) elects expressly, by timely submission of the Claim Form attached hereto as Exhibit A, to liquidate his/her PI Claim in the tort system rather than pursuant to the streamlined procedures set forth in §§ 6-9 of this PI TDP (each, an "Opt-Out Claimant" and, collectively, the "Opt-Out Claimants"), may assert and liquidate such PI Claim in the tort system at his/her own expense, as set forth in more detail in Exhibit B, and shall forfeit all rights to liquidate such PI Claim (and any associated Channeled Claims regarding the same injuries that are the same subject of its PI Claim) under the streamlined procedures set forth in §§ 6-9 of this PI TDP, as well as the right to expedited appeal set forth in Exhibit C hereto. The right to litigate in the tort system is available only with respect to Claims that meet the definition of "PI Claim" set forth in the Plan.**

## § 2.  ALLOCATION OF FUNDS; CLAIMS ADMINISTRATOR.

(a)    Allocations of Funds to the PI Trust

Monies are to be received by the PI Trust in an initial installment of $300 million on the Effective Date of the Plan, with the remaining monies to be received in additional installments, with the monies expected to total a gross amount of between $700 million and $750 million.

(b)    Claims Administrator.

(i)    i.  The PI Trust shall be established in accordance with § –5.7 of the Plan to (1) assume all liability for the PI Channeled Claims, (2) hold the MDT PI Claim and collect the Initial PI Trust Distribution and payments due under the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (3) administer, process, resolve and liquidate PI Channeled Claims, (4) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents (including these Trust Distribution Procedures this PI TDP), (5) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (6) carry out such other matters as are set forth in the PI Trust Documents.[4] The trustee of the PI Trust (the "Trustee"), Ed Edgar Gentle III,

---

[3]  Submission instructions to be added after solicitation
[4]  The PI Trust Agreement shall provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of this PI Trust Agreement, the PI TDP, and the LRP, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

of Gentle, Turner, Sexton & Harbison, LLC, will serve as claims administrator (the "Claims Administrator") to carry out the duties of the Trustee as set forth in the Plan and PI Trust ~~provisions.~~ Documents.[5]

    (ii) ~~ii.~~ The Trustee and the Claims Administrator[36] shall determine ~~the Allowance and valuation of any individual PI Claim regardless of the type of Award sought~~, pursuant to the requirements set forth herein, the Allowance or Disallowance and valuation of all PI Channeled Claims liquidated under §§ 6-9 this PI TDP, regardless of the type of Award sought. Distributions hereunder are determined only with consideration to a PI Claim held against the Debtors, and not to any associated PI Channeled Claim against a non-Debtor party. However, any Distribution to a PI Claimant on account of its PI Claim is deemed to be a distribution in satisfaction of all PI Channeled Claims held by such PI Claimant with respect to the injuries that are the subject of his/her PI Claim. The Claims Administrator may investigate any such claim, and may request information from any PI Claimant to ensure compliance with the terms outlined in this document. ~~Under the HIPAA forms signed by each PI Claimant~~ For PI Claimants who execute the required HIPAA form attached hereto as Exhibit D, the Claims Administrator also has the power to directly obtain such PI Claimant's medical records ~~for each PI Claimant~~.

## § 3.    INITIAL PI CHANNELED CLAIM ALLOWANCE.

For a ~~given~~ PI ~~Claim to qualify as an Allowed PI Claim~~ Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in §§ 6-9 of this PI TDP to be Allowed, the applicable PI Claimant must, with respect to that PI Channeled Claim:

    (a)    Hold such PI Channeled Claim against one or more Debtors;

    (b)    ~~(a)~~ Demonstrate usage of a qualifying **prescribed** opioid listed ~~on~~ in Exhibit ~~A~~ E hereto (a "Qualifying Opioid"),

        (i)    ~~i.~~ PI Claimants who used only (or, as applicable, where the Decedent or Mother used only) a **non-prescribed** (diverted) version of a ~~qualifying opioid in Exhibit A~~ Qualifying Opioid (OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans,

---

[5] The PI Trust Agreement shall provide that the Trustee shall receive a retainer from the PI Trust for his service as a Trustee in the amount of $150,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour. The Trustee shall record all hourly time to be charged to the PI Trust. (continued . . . )

(. . . continued)
The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the Oversight Committee, appropriately adjusted by the Trustee for changes in the cost of living. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

[36] As the same individual is serving as both Trustee and Claims Administrator, reference to actions by each reference Mr. Gentle acting in such respective capacity.

DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt) are <u>not</u> eligible for ~~payments~~an Easy Payment, Base Payment or Level Award (each as defined below) unless that PI Claimant, Decedent, or Mother (as applicable) was a minor when s/he initiated usage of a non-prescribed, *branded* version of a ~~qualifying opioid in Exhibit A~~Qualifying Opioid;

(c)    ~~(b)~~ Have already timely[7] filed an individual personal injury Proof of Claim against one or more Debtors in the Chapter 11 Cases; [4] asserting his/her PI Channeled Claim against one or more Debtors;

(d)    ~~(c) Completed, signed and submitted~~Complete, sign and submit the Claim Form attached hereto as Exhibit ~~B~~A, checking at least one injury box,[8] by the date that is ~~90~~150 days[9] after ~~Confirmation~~the Effective Date of the Plan;[5] and[10]

---

[7]    If the Proof of Claim was filed after the Bar Date but before April 23, 2021, the Claims Administrator shall consider the PI Channeled Claim without penalty. If the Proof of Claim was filed on April 23, 2021 or after, the PI Channeled Claim asserted by such Proof of Claim shall be Disallowed unless the Claims Administrator determines, which determination shall be on a case-by-case basis, that good cause exists to treat the late-filed PI Channeled Claim as if it were timely filed. Notwithstanding this deadline, in addition to the other requirements herein, up to 274 late-filed Claims filed by NAS Claimants (as defined below) who appear on the West Virginia NAS Birth Score Program and are represented by the WV NAS Ad Hoc Group ("WV NAS Claimants") and who demonstrate the following (continued . . . )

*(. . . continued)*
to the satisfaction of the Claims Administrator shall be considered as if their Claim had been timely filed: (1) that the Claimant is a WV NAS Claimant, (2) that a Proof of Claim was filed in the Purdue bankruptcy by or on behalf of such WV NAS Claimant prior to April 23, 2021, and (3) a sworn declaration from the parent/guardian/custodian of such WV NAS Claimant that such parent/guardian/custodian did not know about the Purdue bankruptcy or Bar Date prior to the Bar Date.

[4]    ~~If the Proof of Claim was filed after the Bar Date but before April 23, 2021, the Claims Administrator shall consider the PI Claim without penalty. If the Proof of Claim was filed on April 23, 2021 or after, the PI Claim asserted by such Proof of Claim shall be Disallowed unless the Claims Administrator determines, which determination shall be on a case-by-case basis, that good cause exists to treat the late-filed PI Claim as if it were timely filed. Notwithstanding this deadline, in addition to the other requirements herein, up to 274 late-filed claims filed by NAS Claimants (as defined below) who appear on the West Virginia NAS Birth Score Program and are represented by the WV NAS Ad Hoc Group ("WV NAS Claimants") and who demonstrate the following to the satisfaction of the Claims Administrator shall be considered as if their Claim had been timely filed: 1) that the Claimant is a WV NAS Claimant, 2) that a Proof of Claim was filed in the Purdue Bankruptcy by or on behalf of such WV NAS Claimant prior to April 15, 2021, and 3) a sworn declaration from the parent/guardian/custodian of such WV NAS Claimant that such parent/guardian/custodian did not know about the Purdue bankruptcy or Bar Date prior to the Bar Date.~~

[8]    For the avoidance of doubt, in the event a PI Claimant does not check any injury box from use of opioids on its Claim Form, its PI Channeled Claim shall be Disallowed. The Claim Form shall include clear language notifying a PI Claimant that if he or she fails to check any injury box from use of opioids, the PI Claimant will receive no recovery on its PI Channeled Claim.

[9]    Within 60 days after Effective Date, the Claim Form will be made available to PI Claimants electronically and, if a PI Claimant is a pro se claimant, also mailed to such PI Claimant in physical copy.

[5]    ~~For the avoidance of doubt, in the event a Claimant does not check any injury box from use of opioids on its Claim Form, its PI Claim shall be Disallowed. The Claim Form shall include clear language notifying a Claimant that if they fail to check any injury box from use of opioids, the Claimant will receive no recovery.~~

[10]    If the PI Claimant checks the box on the Claim Form indicating its election to liquidate its PI Claim in the tort system rather than under §§ 6-9 of this PI TDP, then such PI Claim will not be liquidated hereunder.

(e)  ~~(d)  Executed a~~Complete, sign and submit the HIPAA consent form attached hereto as Exhibit ~~C.~~D; and

(f)  If the PI Channeled Claim concerns the injuries of a Decedent, then also execute and submit the Heirship Declaration attached hereto as Exhibit F.

Any PI Claimant who ~~meets~~satisfies all of the above ~~criteria~~requirements (a)-(~~d~~f) with respect to a given PI Channeled Claim shall have that PI Channeled Claim Allowed; provided, however, that any PI Claimant who is ~~a~~an NAS Claimant shall, in addition to ~~the~~above requirements ~~of~~ (a)-(~~d~~f) ~~above~~, have its PI Channeled Claim Allowed ~~hereunder~~ only if such PI Claimant (i) was exposed in utero from a birth mother who used any opioid,[611] (ii) was born alive, and (iii) either proves a diagnosis of neonatal abstinence syndrome ("NAS") in his/her pre-September 2019 records, or, although not receiving a formal diagnosis of NAS, evidences symptoms of opioid withdrawal (such claimant, a "NAS Claimant"). Each NAS Claimant shall submit evidence of the above criteria (i)-(iii) along with its completed and signed Claim Form.

**If a PI Claimant does not satisfy these requirements, and, as applicable, meet these criteria, with respect to its PI Channeled Claim, that is being liquidated under §§ 6-9 of this PI TDP, then such PI Channeled Claim ~~is~~shall be Disallowed ~~and shall receive no recovery ($0) from the PI Trust~~.**

## § 4.  DETERMINING WHETHER A PRODUCT IS QUALIFYING.

One of the following is required to demonstrate a ~~qualifying opioid~~Qualifying Opioid as listed in Exhibit ~~A~~E:

(a)  ~~a)~~ A PI Claimant who provides evidence of a prescription for brand name OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt may rely on the name alone without the necessity of a corresponding NDC number.

(b)  ~~b)~~ In order for a PI Claimant to qualify based on the use of one of the generic products listed in Exhibit ~~A~~E (e.g., oxycodone ER/CR, morphine sulfate ER, hydromorphone), s/he must present either:

(i)   The corresponding NDC number, which is set forth in Exhibit ~~A~~E;[712] or
(ii)  A notation in the record that the product is manufactured or sold by Rhodes or ~~[~~Purdue~~]~~.

(c)  ~~c)~~ A PI Claimant who used (or, as applicable, where the Decedent or Mother used) a generic oxycodone prescription that does not contain evidence of § 4 (a) or (b) may only qualify if the prescription utilizes one of the following:

(i)   Oxycodone CR (or controlled release); or
(ii)  Oxycodone ER (or extended release).

---

[611]  The opioid used by the Mother does not have to be a ~~qualifying opioid listed on Exhibit A~~Qualifying Opioid, as long as there is evidence of the Mother's use of a ~~qualifying opioid listed on Exhibit A~~Qualifying Opioid at some point in time in satisfaction of requirement (~~a~~b) of § 3 above.

[712]  Subject to additional NDC numbers after discovery from or other disclosure by Debtors.

## § 5.    TYPES OF EVIDENCE REQUIRED FOR QUALIFYING PRODUCTS.

All PI Claimants must demonstrate a prescription (which contains the name of the PI Claimant, Decedent or, Mother, as applicable) and ~~an opioid listed in Exhibit A (a "qualifying opioid~~a "Qualifying Opioid")~~ by one of the following pieces of evidence:

(a)    Pharmacy prescription records; or

(b)    Prescription records, including without limitation:
  (i)    A visit note in which the prescribing physician lists a prescription for one of the ~~qualifying opioids~~Qualifying Opioids; or
  (ii)    A signed prescription ~~pad~~from a doctor for one of the ~~qualifying opioids~~Qualifying Opioids;

(c)    A historical reference to one of the ~~opioids listed in Exhibit A~~Qualifying Opioids, including but not limited to:[8][13]
  (i)    A reference in contemporaneous medical records to historical use of one of the ~~qualifying opioids~~Qualifying Opioids;
  (ii)    A reference in contemporaneous substance abuse/rehabilitation/mental health records to historical use of one of the ~~qualifying opioids~~Qualifying Opioids;
  (iii)    A reference in contemporaneous law enforcement records to historical use of one of the ~~qualifying opioids~~Qualifying Opioids; or
  (iv)    A reference in contemporaneous family law or other legal proceedings records to historical use of one of the ~~qualifying opioids~~Qualifying Opioids;

(d)    A photograph of the prescription bottle or packaging of one of the ~~qualifying opioids~~Qualifying Opioids with the name of the PI Claimant, Decedent, or Mother (as applicable) as the patient listed the prescription label; or

(e)    A certification supplied by a Debtor, any of its successors (including the PI Trust), or a third party at a Debtor's or one of its successors' request, indicating that customer loyalty programs, patient assistance programs ("PAPs"), copay assistance programs, or any other data otherwise available to the certifying entity reflects that the PI Claimant, Decedent or Mother (as applicable) had at least one prescription for one of the ~~qualifying opioids.[9]~~Qualifying Opioids.

(f)    With respect to PI Claimants whose ~~claim~~PI Channeled Claim is based on the PI Claimant's, Decedent's, or Mother's use of only *diverted* (i.e., without a lawful prescription) qualifying branded products as a minor pursuant to § 3(~~a~~b)(i) above and who

---

[8][13]    The record must have been created prior to September 15, 2019 only if the historical reference is self-reported by the PI Claimant.

[9]    ~~The Trust provisions contain the process by which the Trustee may provide Claimants with access to such records in their possession, custody or control in the course of resolving the respective Claimant's PI Claim.~~

cannot meet the evidentiary requirements of § 5(a)-(e) above~~1014~~ [14] may qualify if the PI Claimant can demonstrate both of the following:~~1115~~ [15]

(i) A declaration under penalty of perjury (a) from the PI Claimant, or (b) in the case of ~~a~~an NAS Claimant, from the Mother, guardian or custodian of the NAS Claimant (or other third party with knowledge of the Mother's opioid use), or (c) in the case of a claim arising from a Decedent's opioid use, from any third party with knowledge of the Decedent's opioid use, that the PI Claimant, Decedent, or Mother (as applicable) is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must also state how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the PI Channeled Claim would qualify for Tier 2 or Tier 3; and

(ii) An *additional* declaration from a third party with personal knowledge of the PI Claimant's, Decedent, or Mother's (as applicable) use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the PI Claimant, Decedent, or Mother (as applicable) is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must claim how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the PI Channeled Claim would qualify for Tier 2 or Tier 3.

(g) In the event a PI Claimant who is not ~~a~~an NAS Claimant holds a claim arising from a *lawful* prescription of a qualifying product and cannot meet the evidentiary requirements of § 5(a)-(e) above, s/he may only qualify if s/he demonstrates all of the following:

(i) That the PI Claimant or his/her agents made a bona fide attempt to retrieve all known prescribing physician medical charts, all known pharmacy charts, all known rehabilitation charts, and all known insurance explanation of benefits was made. An affidavit of no records (ANR), certificate of no records (CNR), affidavit of destroyed records (ADR), or certificate of destroyed records (CNR) must be provided as to all known records listed above (and in the Claim Form). Alternatively, if some medical records were produced in response to PI Claimant's request but others were not, then evidence must be provided that PI Claimant requested all records but that only limited records were produced by the facilities (with an explanation of how the portion of records not provided by the custodian likely contains the qualifying product and the basis for that assessment of probability); and

---

~~1014~~ [14] Since by definition diversion cases do not have a prescription, ~~they~~a PI Claimant could otherwise ~~only~~ meet the evidentiary requirements above only with a historical reference to the diverted use of a qualifying product as a minor. In the absence of that historical reference in the medical records, this affidavit requirement can be used under the conditions set forth in this subsection.

~~1115~~ [15] Sample affidavits ~~can be found~~will be made available on the PI ~~Trust's~~Trust website.

(ii) A declaration under penalty of perjury from the PI Claimant or, in the case of a claim arising from the opioid use of a Decedent, from a third party with knowledge of the Decedent's opioid use, that the PI Claimant or Decedent (as applicable) is known to have been prescribed and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the ~~claim~~PI Channeled Claim would qualify for Tier 2 or Tier 3; and

(iii) A supporting declaration from a third party with personal knowledge of the PI Claimant's or Decedent's (as applicable) use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the PI Claimant or Decedent (as applicable) is known to have used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the ~~claim~~PI Channeled Claim would qualify for Tier 2 or Tier 3.

(h) In the event ~~a~~an NAS *Claimant's* Mother received a *lawful* prescription of a qualifying product and cannot meet the evidentiary requirements of § 5(a)-(e) above, the NAS Claimant may qualify only if s/he demonstrates all of the following:

(i) ~~a.~~If the *Mother* is *unavailable*:

A. ~~i.~~A declaration under penalty of perjury from the guardian or custodian of the NAS Claimant that the Mother is alive and 1. her whereabouts are unknown, 2. she is incarcerated, or 3. she refuses to cooperate in obtaining her medical records for use by the NAS Claimant (i.e., is unavailable); and

B. ~~ii.~~A supporting declaration from a third party, whether the guardian/custodian or someone else, with personal knowledge of the Mother's use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the Mother is known to have been prescribed and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the ~~claim~~PI Channeled Claim would qualify for Tier 2 or Tier 3.

(ii) ~~b.~~If the *Mother* is *available*, the requirements of § 5(g)(i)-(iii) must be met with respect to the Mother.

(i) The Claims Administrator shall have discretion, subject to the appeal process set forth in Exhibit ~~D~~C hereto, to determine whether the requirements in § 5(f)-(h) above have been met so as to provide sufficient indicia of reliability that the PI Claimant, Decedent, or Mother (where applicable) was prescribed (or received diverted as a minor) and used

OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt.

(j)    In no event may a PI Claimant whose evidence of qualifying product use is based solely on the declarations under § 5(f)-(h) qualify for Tier 1A or Tier 1B. Whether the PI Claimant qualifies for Tier 2 or Tier 3 will be based on the length of use stated in the declaration.

(k)    Any PI Claimant not meeting the requirements of § 3, § 4 and § 5(a)-(h) is not entitled to any payment, including Easy Payment, Base Payment, or Level Award (each as defined below).

(l)    The Claims Administrator has the discretion to request additional documentation believed to be in the possession of the PI Claimant or his or her authorized agent or lawyer. The Claims Administrator has the sole discretion, subject to the appeal process set forth ~~on~~in Exhibit ~~D~~C hereto, to Disallow, or to reduce or eliminate Awards on, claims ~~in which s/~~being liquidated hereunder where he concludes that there has been a pattern and practice to circumvent full or truthful disclosure under this Section.

## § 6.    ORDER OF PAYMENTS; EASY PAYMENT.

A PI Claimant may choose between receiving an "Easy Payment" *or* a "Base Payment" and "Level Award," as detailed below.

The PI Trust will make payments in the following order:

(i)    Easy Payment (as defined below) of $3,500 per qualifying PI Claimant to those PI Claimants who elect to receive an Easy Payment; and

(ii)    Base Payments and Level Awards (each as defined below) to qualified PI Claimants who did not elect to receive an Easy Payment. Because monies are being received by the PI Trust in installments, payments of Awards will be in installments.

A PI Claimant meeting the requirements of § 3 (Allowance) pursuant to the standards set in § 4 (Determining What is a Qualifying Product) and § 5 (Evidence Required to Demonstrate a Qualifying Product) may elect on the Claim Form to receive a set payment (an "Easy Payment") in lieu of other compensation. **NOTE: if you select an Easy Payment, you are NOT eligible to receive any additional funds for your PI Channeled Claim**. That means you cannot receive any of the Base ~~Payment~~Payments or Level Awards below. If you select an Easy Payment and your PI Channeled Claim is determined to be an Allowed PI Channeled Claim, you will receive a payment of $~~3,500.00~~3,500, before deduction of any fees, costs or liens as described herein, within a reasonably short amount of time after receipt of your claims package by the Claims Administrator, or as soon as all applicable liens have been cleared. It is expected those declining Easy Payment and seeking additional Awards may be paid at later stages, including in installments over time. The Easy Payment is also expected to be free of many (but not all) types of health care liens, including liens of Third Party Payors.

## § 7.    ADDITIONAL AWARD DETERMINATION.

(a)    Allowed PI <u>Channeled</u> Claims held by PI Claimants who do not elect to receive an Easy Payment and who otherwise meet the ~~qualifying opioid~~<u>Qualifying Opioid</u> requirement shall be categorized[12][16] as follows:

(i)    <u>**Tier 1A:**</u>

      A.    <u>Base Payment</u>:

          1.    For PI Claimants who are not NAS Claimants, those that demonstrate that his/her or the Decedent's (where applicable) addiction, dependence or substance abuse began while using one of the ~~qualifying opioids~~<u>Qualifying Opioids</u>.

          2.    For NAS Claimants that demonstrate either:

            aa.    One of the ~~qualifying opioids~~<u>Qualifying Opioids</u> was used by the Mother while pregnant with the NAS Claimant; or

            bb.    One of the ~~qualifying opioids~~<u>Qualifying Opioids</u> was used by the Mother and the Mother's addiction, dependence or substance abuse began while using a ~~qualifying opioid~~<u>Qualifying Opioid</u>.

---

[12][16]  PI Claimants who assert or allege ~~qualifying opioid~~<u>Qualifying Opioid</u> usage <u>in their Claim Form</u> for which they cannot produce corresponding evidence ~~(i.e., they produce some evidence of qualifying opioid use but they allege additional qualifying opioid usage for which they cannot produce evidence) are restricted to the actual evidence produced. In other words, Claimants do not get credit for usage based on their allegations alone, however well intentioned; they must produce evidence.~~<u>will not recover on account of such alleged opioid usage.</u>

3. Other than submission of qualifying product records under § 3, § 4 and § 5(a)-(f), no additional documents are required for a Holder of an Allowed PI Channeled Claim to secure a Tier 1A Base Payment. The showing required for a Tier 1A Base Payment is a temporal relationship between use of a qualifying product and the onset of addiction, dependence or substance abuse within six months after use of a qualifying product.[13][17] There is a presumption that proof of qualifying product usage under the methods above within six months before the onset of addiction, dependence or substance abuse (as set forth in the Claim Form) is sufficient.

aa. However, notwithstanding evidence of a qualifying product usage before the onset of addiction, dependence or substance abuse noted in the Claim Form, if the Claim Form, pharmacy, medical or other records demonstrate any of the below indicia of addiction, dependence or substance abuse that precede the earliest use of a qualifying product demonstrated by a PI Claimant that is not ~~a~~ an NAS Claimant, the claim does not qualify for Tier 1A. Similarly, if an NAS Claimant's Tier 1 claim is based on the use by the Mother of a ~~qualifying opioid~~ Qualifying Opioid when the addiction began (§ 7(a)(i)(A)(2)(bb)) and the Claim Form, pharmacy, medical or other records demonstrate any of the below indicia of addiction, dependence or substance abuse that precede the earliest use of a qualifying product by the Mother as demonstrated by the NAS Claimant, the claim does not qualify for Tier 1A.

a. diagnosis of addiction, dependence or substance abuse relating to opioid use made by any medical professional;

b. treatment in a rehabilitation center for opioid use disorder;

c. overdose, withdrawal, or detox from an opioid;

d. consecutive use of opioids with MME of greater than 90 mg/day for six months or more;

e. use of illegal opioids; or

f. use of medication-assisted treatment ("MAT") like methadone.

B. Level Awards: In addition to Base Payments, Tier 1A PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

1 Level A:

aa. For PI Claimants who are not NAS Claimants demonstrating one or more of the following:

a. Opioid Use Disorder ("OUD");[14][18]

---

[13][17] In the case of NAS Claimants proceeding under § 7(a)(1)(A)(2)(aa) (qualifying product use during pregnancy), use of a ~~qualifying opioid~~ Qualifying Opioid by the Mother within 9 months prior to the date of birth of the NAS Claimant qualifies for Tier 1A. NAS Claimants proceeding under § 7(a)(1)(A)(2)(bb) (qualifying product use started addiction) will use the same showing as Claimants that are not ~~a~~ NAS Claimants.

[14][18] The diagnosis can be made by any medical professional, specifically including physicians, nurses, physician's assistant, mental health counselor or therapist, or professional at a rehabilitation center.

11

      b.     MAT usage >6 months. MAT drugs include methadone, buprenorphine, Butrans, Suboxone, Zubsolv, Methadose, and naltrexone; or

      c.     Administration of Narcan, Evzio or Naloxone.

bb.    For NAS Claimants demonstrating one or more of the following:

      a.     NICU 2-30 days; or

      b.     Other minor NAS-related injuries.[~~15~~19]

2    *Level B*:

aa.    For PI Claimants who are not NAS Claimants demonstrating death caused by an opioid (such as overdose or withdrawal).

bb.    For NAS Claimants demonstrating one or more of the following:

      a.     NICU >30 days; or

      b.     Other serious NAS-related injuries.[~~16~~20]

C.    <u>Additional Evidence for Level Awards</u>:

1.    If making a claim for a Tier 1A Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

2.    If making a claim for a Tier 1 A Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in § 5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

3.    If making a claim for a Tier 1A Level Award based on death, the death certificate of the ~~decedent~~<u>Decedent</u> as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying product use. No affidavits may be used to meet this requirement.

4.    If making a claim for a Tier 1A Level Award based on other minor or serious NAS-related injuries, such medical documentation and scientific literature such as to meet the causal requirements herein to the satisfaction of the Claims Administrator in his sole discretion.

---

mental health counselor or therapist, or professional at a rehabilitation center.

[~~15~~19] Includes but not limited to general developmental delays or learning disabilities. The Claims Administrator has sole discretion to determine whether sufficient scientific evidence has been provided to support a causal connection to NAS such that there is a reasonable scientific basis to make such an award.

[~~16~~20] Includes but is not limited to death, congenital malformation, Spina Bifida, or heart defects. The Claims Administrator has sole discretion to determine whether sufficient scientific evidence has been provided to support a causal connection to NAS such that there is a reasonable scientific basis to make such an ~~award~~<u>Award</u>.

5. The PI Claimant may submit such additional information as the PI Claimant believes will assist the Claims Administrator's determination of the appropriate amount of any ~~claim~~PI Channeled Claim that has satisfied the initial claim validity requirements.

(ii) **Tier 1B:** Opioid-related death (overdose or withdrawal) while on OxyContin (temporal relationship between date of death and usage of OxyContin) qualify for Tier 1B Base Payment. Only branded OxyContin would qualify under Tier 1B (i.e., no other ~~qualifying opioids~~Qualifying Opioids). There are no Level Awards. If a PI Claimant is making a claim for a Tier 1B Award, the death certificate of the Decedent as well as any toxicology reports or autopsy reports must be produced. The death must coincide in time with the provided qualifying product use (i.e. the timing of usage, including number of pills, falls within 5 days of the death). For example, if the Decedent had a prescription 20 days before death and the number of pills in that prescription was enough such that it can reasonably be expected the ~~decedent~~Decedent was using it within 5 days of death, the case qualifies. Conversely, if the Decedent had a prescription 45 days before death and the number of pills in the prescription was such that it can reasonably be expected that the Decedent would have run out of pills 15 days before death, the case does not qualify. The underlying addiction does not need to have begun during qualifying product usage; OxyContin use at the time of death is sufficient.

(iii) **Tier 2:** PI Claimants must demonstrate use of a qualifying product for more than 6 months; however, the usage does not have to be consecutive.

   A. <u>Base Payment</u>: Other than for qualifying product records under § 3, § 4 and § 5(a)-(g), no additional documents are required for a Tier 2 Base Payment. All PI Claimants that qualify for Tier 2 will receive a Base Payment.

   B. <u>Level Awards</u>: In addition to Base Payments, Tier 2 PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

      1 *Level A*:

         aa. For PI Claimants who are not NAS Claimants demonstrating one or more of the following:

            a. Opioid Use Disorder (OUD);

            b. MAT >6 months days; or

            c. Administration of Narcan, Evzio or Naloxone.

         bb. For NAS Claimants demonstrating one or more of the following:

            a. NICU 2-30 days; or

            b. Other minor NAS-related injuries.

      2 *Level B*:

         aa. For PI Claimants who are not NAS Claimants demonstrating death caused by an opioid.

         bb. For NAS Claimants demonstrating one or more of the following:

            a. NICU >30 days; or

            b. Other serious NAS-related injuries.

13

C. <u>Additional Evidence for Level Awards</u>:

1. If making a claim for a Tier 2 Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

2. If making a claim for a for a Tier 2 Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in §5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

3. If making a claim for a Tier 2 Level Award based on death, the death certificate of the ~~decedent~~<u>Decedent</u> as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying product use. No affidavits may be used to meet this requirement.

4. If making a claim for a Tier 2 Level Award based on other minor or serious NAS-related injuries, such medical documentation and scientific literature such as to meet the causal requirements herein to the satisfaction of the Claims Administrator in his sole discretion.

(iv)   ~~(iv)~~   **Tier 3:** Use of a qualifying product less than 6 months or otherwise not meeting the criteria of Tier 1A, Tier 1B or Tier 2 are entitled to no additional payments other than the Base ~~Award~~<u>Payment</u>. Just for clarification, individuals who elect to receive the Easy Payment cannot receive any additional compensation and no Tier applies to their PI Claim. However, in the event a PI Claimant declines the Easy Payment and elects to proceed but does not qualify for Tiers 1A, 1B, or 2, such PI Claimant will receive the Tier 3 Base ~~Award~~<u>Payment</u> and only the Tier 3 Base ~~Award~~<u>Payment</u>.

## § 8.    BASE PAYMENTS AND LEVEL AWARDS.

(a)    a) Grid Origins.

The point values provided in this grid resulted from the work of counsel to the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject matter experts for the Ad Hoc Group of Individual Victims and the other holders of PI Channeled Claims, and collaborative discussions with stakeholders. The estimated amount per point is based on a sample, and will be updated periodically on the PI Trust's website, www._____.com.

(b)    b) Amount of Money Per Point.

a. Based on an initial sample, we estimate that the dollar award amount per point will be between $0.80 and $1.20. The dollar amount ultimately awarded per point will be determined with reference to the funds remaining in the PI Trust (after the payment of Easy Payments and the costs and expenses of the PI Trust, as set forth in further detail in the PI Trust Agreement) and to the pool of claims remaining against the PI Trust.

| | Tier 1A: PI *Addiction from Purdue Opioids* | Tier 1B: PI *Death on OxyContin* | Tier 2: PI *Purdue Opioids Use ≥6 ~~mo~~months* | Tier 3: PI *No Addiction/ Death from Purdue Opioids, and Purdue Opioids Use <6 ~~mo.~~months* | Tier 1A: NAS *Addiction from Purdue Opioids, or Purdue Opioids Use During Pregnancy* | Tier 2: NAS *Purdue Opioids Use ≥6 ~~mo~~months* | Tier 3: NAS *No Addiction from Purdue Opioids, No Purdue Opioids Use During Pregnancy, and Purdue Opioids Use <6 ~~mo.~~months* |
|---|---|---|---|---|---|---|---|
| **BASE ~~AWARD~~PAYMENTS** | 20,000 pts[~~19~~21] | 40,000 pts | 6,000 pts | $3,500 | 20,000 pts | 6,000 pts | $3,500 |
| **LEVELS (one of the below)[~~18~~22]** | | | | | | | |
| **A** | 10,000 pts  OUD Diagnosis, OR MAT for > 6 | N/A | 3,000 pts  OUD Diagnosis, OR MAT for > 6 | N/A | 10,000 pts  NICU of 2-30 days, OR minor NAS-related injuries | 3,000 pts  NICU of 2-30 days, OR minor NAS- | N/A |

---

[~~17~~21]  PI Claimants who do not claim addiction, dependence or abuse of opioids are not entitled to receive Tier 1A Awards.

[~~18~~22]  If a PI Claimant does not qualify for additional Level Awards, they do not get additional money above the Base ~~Award~~Payment. A PI Claimant can only qualify for one, but not multiple, Level Awards.

| | months | | months | | | related injuries | |
|---|---|---|---|---|---|---|---|
| **B** | 20,000 pts<br><br>Death ~~From An~~<u>from an</u> Opioid | N/A | 20,000 pts<br><br>Death ~~From An~~<u>from an</u> Opioid | N/A | 20,000 pts<br><br>NICU >30 days, OR Other serious NAS-related injuries | 20,000 pts<br><br>NICU >30 days, OR Other serious NAS-related injuries | N/A |

## § 9.   BAR FOR PRIOR SETTLED CASES

Prior Settlements and Awards—A PI Claimant whose PI Claim was reduced to a prior settlement, judgment, or award against a Debtor shall be barred from any Award in this TDP (Easy Payment, Base Award or Level Award) on account of such PI Claim and shall not recover from the Trust on account of such PI Claim; provided, however, that a prior settlement with respect to a living person's OUD claim does not bar a subsequent wrongful death claim arising out of that settled OUD claim.

## § ~~9~~10.   ADDITIONAL CLAIM FACTORS AND VALUATION

(a)    To the extent practicable, only objective factors are to be scored, based upon the axiom that in mass torts consistency is fairness.

(b)    This grid is based in part on other scoring grids developed in comparable cases and development of a scoring grid with unique customization according to the claims and injuries encountered and reviewed in sampling the individual PI Claimants.

(c)    Because of limited funds, economic damages are not compensable. This PI TDP only compensates general pain and suffering. Nonetheless, all damages from use of ~~qualifying opioids~~Qualifying Opioids are being channeled to ~~this~~the PI Trust and released, including both economic and non-economic or general damages.

(d)    Only reported injuries are to be scored.

(e)    In no circumstance shall the ~~Trust claims administrator~~Claims Administrator assign any claim value for any punitive damages, exemplary damages, statutory enhanced damages, or ~~statutory~~attorneys' fees or costs (including statutory attorneys' fees and costs).

(f)    Only PI Claims based on injuries or facts occurring prior to the filing of a ~~proof~~Proof of ~~claim form~~Claim in the Chapter 11 Cases are eligible for recovery.

## § 10.   BAR FOR PRIOR SETTLED CASES

A PI Claimant whose PI Channeled Claim was reduced prior to the Petition Date to a settlement, judgment, or award against a Debtor shall be barred from receiving any Award under this PI TDP (Easy Payment, Base Payment or Level Award) on account of such PI Channeled Claim and shall not recover from the PI Trust on account of such PI Channeled Claim; provided, however, that a prior settlement with respect to a living person's OUD claim does not bar a subsequent wrongful death claim arising out of that settled OUD claim.

## § 11.   SPECIAL PROCEDURES IN RESPECT OF MINORS

For PI Claimants who are minors under applicable law, the special procedures set forth in Exhibit G hereto also apply and shall supplement the procedures set forth in this PI TDP.

## § ~~11~~12.       FAIRNESS AUDITS AND FRAUD PREVENTION.

The Claims Administrator will use appropriate technology and strategies to prevent paying fraudulent claims while making the claims process as simple as possible. Reasonable steps will be taken to mitigate fraud so as to ensure a fair and secure claims review and payment process. Among the techniques will be technology to prevent claims submitted by BOTS, unique PI Claimant ~~ID~~identification numbers, and strategic ~~claim form~~Claim Form fields, while not falsely flagging legitimate ~~claims~~PI Channeled Claims. Periodic fairness audits will be conducted on samples of ~~claims~~PI Channeled Claims, to ensure that they are being graded and paid fairly.

§ ~~12~~13.        CHARITY.

The PI Trust will establish a charitable trust to accept donations that can be used to address the opioid addiction crisis by providing grant funding for recovery support services, addiction and addiction family harm reduction-related activities, education, family support, community-based advocacy efforts, and assistance to organizations providing services to individuals and caregivers grappling with opioid-related problems of PI Claimants. The distribution of funding provided by this charity may be streamlined through qualified not-for-profit organizations. The charity will be funded only through donations; none of the funds received by the PI Trust under the Plan will be diverted to fund this charity. PI Claimants may choose to allocate part or all of their share of their recovery to this charity.

§ ~~13~~14.        APPEALS.

Each PI Claimant who has its PI Channeled Claims liquidated under this PI TDP has an appeal right, which is described in Exhibit ~~D~~C. The decision of the Appeals Master pursuant to Exhibit ~~D~~C is final and binding, and PI Claimants have no further appeal rights beyond those set forth in Exhibit ~~D~~C.

**EXHIBIT B**

**PROCEDURES FOR PI CLAIMANTS WHO OPT TO LIQUIDATE
THEIR PI CLAIMS IN THE TORT SYSTEM RATHER THAN UNDER THE
INDIVIDUAL PURDUE PHARMA LP TRUST DISTRIBUTION PROCEDURE**

The following procedures shall apply in the case of a PI Claimant[1] who elects, subject to the terms hereof, to liquidate his or her PI Claim by commencing a lawsuit in the tort system after so indicating on his or her Claim Form filed by the date that is 150 days after the Effective Date of the Plan. By so electing, such PI Claimant forfeits any right to have its PI Claim liquidated under sections 6 through 9 (inclusive) of the PI TDP, and instead shall have the right to liquidate its PI Claim exclusively in the tort system. This option is available only for claims that meet the definition of "PI Claim" under the Plan. The adjudication of a PI Claim in the tort system shall be deemed to be an adjudication of that PI Claim and any associated PI Channeled Claims of the PI Claimant regarding the same injuries that are the subject of its PI Claim. Any Distribution from the PI Trust on a Final Judgment in respect of such PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such PI Claim and such associated PI Channeled Claims.

**1.01**    **Suits in the Tort System.**  If a PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting its PI Claim, then it may elect to liquidate such PI Claim in the tort system rather than under the PI TDP by checking the box so indicating on his or her Claim Form filed by the date that is one hundred and fifty (150) days after the Effective Date of the Plan.[2] If the PI Claimant makes such election, then the PI Claimant may file a lawsuit regarding only its PI Claim (and no other claims) against only the PI Claim (and including no other parties as defendants) solely in the United States District Court for the Southern District of New York, unless such court shall order pursuant to 28 USC § 157(b)(5) that such suit may be tried in the United States District Court (other than the United States District Court for the Southern District of New York) for the district in which the PI Claim arose.

Any such lawsuit must be filed by the PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit may be consolidated with the lawsuit of any other plaintiff. All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[3]

If a PI Claimant obtains a judgment on his/her PI Claim in the tort system and such judgment becomes a final order (each, a "Final Judgment"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Trust,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the PI TDP.
[2] The filing of a Claim Form indicating that a PI Claimant has elected to liquidate his or her PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the claims asserted by such PI Claimant's action.
[3] Among other things, the PI Trust reserves all rights to assert that the claim that is the subject of a PI Claimant's lawsuit is not a "PI Claim" within the meaning of the Plan.

subject to the limitation on damages provision set forth below, as well as the Payment Percentage and the Maximum Point Value (each as defined below), as provided in Section 1.06 below, and the resolution of healthcare liens, as provided in Section 1.07 below. If the PI Claim liquidated in the tort system is a claim concerning the death of an opioid user, then in order to receive payment from the PI Trust, the PI Claimant must first execute the Heirship Declaration attached to the PI TDP as Exhibit F.

**1.02** **Limitation on Damages and Attorneys' Fees.** Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any PI Claim litigated against the PI Trust in the tort system.

**1.03** **Maximum Point Value.** The following sets forth the maximum number of points to be attributed to a Final Judgment (such limitation, as applicable, the "Maximum Point Value"):

a)   If the Final Judgment, subject to the limitation on damages provision set forth above, is more than $0 but not more than $x: [ ] points.

b)   If the Final Judgment, subject to the limitation on damages provision set forth above, is more than $x but not more than $y: [ ] points.

c)   If the Final Judgment, subject to the limitation on damages provision set forth above, is more than $y: [ ] points.

Points will be converted to dollars (as converted, the "Maximum Value") consistent with the conversion set forth in section 8 of the PI TDP. As set forth in more detail in the TDP, the dollar amount ultimately awarded per point will be determined with reference to the funds remaining in the PI Trust and to the pool of claims remaining against the PI Trust. It will vary depending on how many people choose to opt out their claims and how expensive it is for the PI Trust to defend those claims in the tort system. It will also depend on the payment elections made by those who are liquidating their claims under sections 6-9 (inclusive) of the PI TDP.

At this time, it is estimated that the dollar award amount per point will be between $0.80 and $1.20.

**1.04** **Payment Percentage.** A Final Judgment shall be subject to reduction by the same percentage that PI Claims liquidated under the PI TDP are reduced prior to payment. In other words, a PI Claimant who elects to liquidate his or her PI Claim in the tort system shall not be entitled to receive more than its pro-rata share of the value available for distribution to all PI Channeled Claims entitled to a recovery pursuant to the PI TDP. Based upon the work of the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject-matter experts for the Ad Hoc Group of Individual Victims and other holders of PI Claims, review of judgments obtained in lawsuits, settlement history, and collaborative discussions with stakeholders,

the Base Payments and Level Awards described in the PI TDP represent an estimated pro-rata percentage recovery by PI Claimants holding Allowed PI Channeled Claims of approximately [  ]% (such pro-rata percentage recovery as may be altered over time, the "Payment Percentage"). Accordingly, the initial Payment Percentage is [  ]%.

No holder of a PI Claim who elects to liquidate his or her PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her PI Claim multiplied by the Payment Percentage in effect at the time of payment (such value so reduced, the "Percentage-Reduced Claim"); provided, however, that if there is a reduction in the Payment Percentage, the PI Trustee, in his or her sole discretion, may cause the PI Trust to pay a PI Claim based on the Payment Percentage that was in effect prior to the reduction if the judgment in respect of such PI Claim became a Final Judgment prior to the date the PI Trustee proposes the new Payment Percentage to the Oversight Committee and the processing of such PI Claim was unreasonably delayed due to circumstances beyond the control of the PI Claimant or the Claimant's Counsel (as applicable).

**1.05    Adjustment of the Payment Percentage.**  The Payment Percentage shall be subject to change if the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, determines that an adjustment is required. No less frequently than once every three (3) years, commencing with the date that is three (3) years after the Effective Date, the PI Trustee (with the assistance of the Claims Administrator) shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration, change the Payment Percentage if necessary with the consent of the Oversight Committee. The PI Trustee shall reconsider the then-applicable Payment Percentage at shorter intervals if he or she deems such reconsideration to be appropriate or it requested to do so by the Oversight Committee.

The PI Trustee shall base his or her determination of the Payment Percentage on current estimates of the number, types, and values of PI Channeled Claims, the value of the assets of the PI Trust available for the payment of Allowed PI Channeled Claims pursuant to the PI TDP and amounts due and estimated to become due pursuant to the PI TDP in respect to Final Judgments obtained by PI Claimants who elect to liquidate their PI Claims in the tort system, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of (i) full value to all holders of Allowed PI Channeled Claims and (ii) the Maximum Value to PI Claimants who elect to liquidate their PI Claims in the tort system. When making these determinations, the PI Trustee (with the assistance of the Claims Administrator) shall exercise common sense and flexibly evaluate all relevant factors.

If a redetermination of the Payment Percentage has been proposed in writing to the Oversight Committee by the PI Trustee, but such redetermination of the Payment Percentage has not yet been adopted by the Oversight Committee, a PI Claimant that has obtained a Final Judgment shall receive the lower of the then-current Payment Percentage and the proposed Payment Percentage. However, if the proposed Payment Percentage is

3

the lower amount but is not subsequently adopted by the Oversight Committee, the PI Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Payment Percentage is the higher amount and subsequent adopted, the PI Claimant who has obtained a Final Judgment shall thereafter receive the difference between the over current amount and the higher adopted amount.

At least thirty (30) days prior to proposing in writing to the Oversight Committee a change in the Payment Percentage, the PI Trustee shall post to the PI Trust's website a notice indicating the PI Trustee is reconsidering the Payment Percentage.

If the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, makes a determination to increase the Payment Percentage due to a material change in estimates of the future assets and/or liabilities of the PI Trust, the Claims Administrator shall make supplemental payments to all PI Claimants who obtained previously a Final Judgment and received payments based on a lower Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the PI Channeled Claim in question multiplied by the newly-adjusted Payment Percentage, less all amounts paid previously to the PI Claimant with respect of such PI Channeled Claim.

The PI Trust's obligation to make a supplemental payment to a PI Claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $100.00. However, the PI Trust's obligation shall resume, and the PI Trust shall pay any such aggregate supplemental payments due to the PI Claimant that obtained a Final Judgment at such time that the total exceeds $100.00.

**1.06**     **Payment of Judgments for Money Damages.**   A PI Claimant who obtains a Final Judgment shall receive from the PI Trust, in full and final satisfaction of that Final Judgment, a total amount equal to the *lesser* of (i) the Percentage-Reduced Claim and (ii) the Maximum Value, in each case as in effect on the date of the pending payment, as described next. Such amount shall be paid to the PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; *subject, however*, to the prior satisfaction of healthcare liens as set forth in Section 1.07 below. In no event shall interest be paid in respect of any judgment obtained in the tort system. Neither these amounts nor the payment schedule thereof shall not subject to any appeal or reconsideration.

**1.07**     **Resolution of Health Care Liens**.   The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his reasonable satisfaction that any private or governmental health care liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

**1.08** **Applicability of Special Procedures for Minors and Heirs.** The special procedures set forth in Exhibit G to the PI TDP shall apply to PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in their capacity as an heir must execute and submit the Heirship Declaration attached to the PI TDP as Exhibit F.

**~~SCHEDULE D~~EXHIBIT C**

**PROCEDURE FOR DEFICIENCIES AND APPEALS FOR
THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE**

These procedures apply only to PI Channeled Claims liquidated under sections 6 through 9 (inclusive) of the PI Trust Distribution Procedure (PI TDP), and are not available for PI Claims liquated in the tort system.

1.01    **Curing Deficiencies.**  If the Claims Administrator[1] determines that a claim submitted pursuant to the ~~Trust Distribution Procedure (~~PI TDP~~)~~ is incomplete, (s)he will notify the PI Claimant and afford a 14-day period to cure any such deficiency.  Such deficiencies include, but are not limited to, failure to sign the Claim Form (Exhibit [~~~~]A to the PI TDP), failure to complete the Claim Form, failure to execute a HIPAA authorization (Exhibit [~~~~]D to the PI TDP), or submission of a declaration that fails to meet the requirements of § 5 of the PI TDP.  If the deficiency is timely cured to the satisfaction of the Claims Administrator, no deduction or penalty will be assessed to an otherwise qualifying Claim.  If the deficiency is not timely cured, or not cured at all, the Claims Administrator, depending on the nature of the deficiency, has the authority to prevent the PI Claimant from receiving all or part of any award (s)he would otherwise be entitled to.

1.02    **Appeals to the Claims Administrator.**  If a PI Claimant is dissatisfied with his/her award determination pursuant to the PI TDP or a determination by the Claims Administrator to limit or prohibit an award pursuant to the deficiency process described in Section 1.01 above, (s)he can appeal to the Claims Administrator within fourteen (14) days of receiving notice of such Claims Administrator determination by submitting a written document clearly marked as "Appeal to Claims Administrator."   In that document, the PI Claimant should identify the determination with which the PI Claimant disagrees and state the reasons for the disagreement.  The PI Claimant may submit any additional documentation (s)he wishes to have considered.  Only one appeal is permitted per Proof of Claim.  The Claims Administrator shall conduct a de novo review and promptly issue a ruling in writing to the PI Claimant and/or his/her counsel, as applicable. In the event that the Claims Office determines that the records submitted in support of the Claim are unreliable, the Notification of Status letter shall advise the PI Claimant of such determination and shall identify the particular records or statements that are deemed unreliable.  The Claims Administrator shall not change the PI TDP allowance criteria. The PI Claimant shall have the right to appeal any such determination to the Appeals Master as set forth in Section 1.03 herein.

1.03    **Appeals to Appeals Master.**  PI Claimants who disagree with the ruling of the Claims Administrator may appeal to the Appeals Master within fourteen (14) days of notice of such ruling by submitting a written statement outlining the PI Claimant's position and

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the PI TDP.

why the PI Claimant believes the Claims Office and Claims Administrator have erred. An appeal fee of $1,000 shall be assessed against the PI Claimant's recovery from the PI Trust regardless of the outcome of the Appeal. The Appeals Master shall review only the appeal record and Claim file in deciding the appeal. The Appeals Master shall apply the guidelines and procedures established in the PI TDP, and the appeals process shall not result in any modification of substantive eligibility criteria. The Appeals Master shall issue a determination on the appeal in writing, which shall be served on the PI Claimant (and his/her counsel, where applicable) and the Claims Administrator. Decisions of the Appeals Master pursuant hereto are final and binding, and PI Claimants have no further appeal rights beyond those set forth herein.

2

**~~SCHEDULE A~~EXHIBIT E**

**QUALIFYING OPIOIDS FOR
THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE**

| **Drug Name** | **NDC Labeler and Drug Prefix** |
|---|---|
| OxyContin | 59011-410- |
| OxyContin | 59011-415- |
| OxyContin | 59011-420- |
| OxyContin | 59011-430- |
| OxyContin | 59011-440- |
| OxyContin | 59011-460- |
| OxyContin | 59011-480- |
| OxyContin | 59011-0100- |
| OxyContin | 59011-0103- |
| OxyContin | 59011-0105- |
| OxyContin | 59011-0107- |
| OxyContin | 59011-0109- |
| OxyContin | 43063-0244- |
| OxyContin | 43063-0245- |
| OxyContin | 43063-0246- |
| OxyContin | 43063-0354- |
| Butrans | 59011-750- |
| Butrans | 59011-751- |
| Butrans | 59011-752- |
| Butrans | 59011-757- |
| Butrans | 59011-758- |
| Hysingla ER | 59011-271- |
| Hysingla ER | 59011-272- |
| Hysingla ER | 59011-273- |
| Hysingla ER | 59011-274- |
| Hysingla ER | 59011-275- |
| Hysingla ER | 59011-276- |
| Hysingla ER | 59011-277- |
| MS Contin | 42858-515- |
| MS Contin | 42858-631- |
| MS Contin | 42858-760- |
| MS Contin | 42858-799- |
| MS Contin | 42858-900- |
| MS Contin | 00034-0513- |
| MS Contin | 00034-0514- |
| MS Contin | 00034-0515- |
| MS Contin | 00034-0516- |
| MS Contin | 00034-0517- |
| MS Contin | 16590-884- |
| Dilaudid | 42858-122- |
| Dilaudid | 42858-234- |

| | |
|---|---|
| Dilaudid | 42858-338- |
| Dilaudid | 42858-416- |
| Dilaudid | 76045-009- |
| Dilaudid | 76045-010- |
| Dilaudid | 0074-2414- |
| Dilaudid | 0074-2415- |
| Dilaudid | 0074-2416- |
| Dilaudid | 0074-2426- |
| Dilaudid | 0074-2451- |
| Dilaudid | 0074-2452- |
| OxyIR | 59011-0201- |
| OxyFast | 59011-0225- |
| MSIR | 00034-0518- |
| MSIR | 00034-0519- |
| MSIR | 00034-0521- |
| MSIR | 00034-0522- |
| MSIR | 00034-0523- |
| Palladone | 59011-0312- |
| Palladone | 59011-0313- |
| Palladone | 59011-0314- |
| Palladone | 59011-0315- |
| Buprenorphine | 42858-353- |
| Buprenorphine | 42858-493- |
| Buprenorphine | 42858-501- |
| Buprenorphine | 42858-502- |
| Buprenorphine | 42858-586- |
| Buprenorphine | 42858-750- |
| Buprenorphine | 42858-839- |
| Hydromorphone Hydrochloride | 42858-301- |
| Hydromorphone Hydrochloride | 42858-302- |
| Hydromorphone Hydrochloride | 42858-303- |
| Hydromorphone Hydrochloride | 42858-304- |
| Morphine Sulfate | 42858-801- |
| Morphine Sulfate | 42858-802- |
| Morphine Sulfate | 42858-803- |
| Morphine Sulfate | 42858-804- |
| Morphine Sulfate | 42858-805- |
| Morphine Sulfate | 0904-6557- |
| Morphine Sulfate | 0904-6558- |
| Morphine Sulfate | 0904-6559- |
| Morphine Sulfate | 35356-833- |
| Morphine Sulfate | 35356-836- |
| Morphine Sulfate | 35356-838- |
| Morphine Sulfate | 42858-801- |
| Morphine Sulfate | 42858-802- |
| Morphine Sulfate | 42858-803- |
| Morphine Sulfate | 42858-810- |
| Morphine Sulfate | 42858-811- |
| Morphine Sulfate | 42858-812- |

| Morphine Sulfate | 61919-966- |
| Morphine Sulfate | 67296-1561- |
| Morphine Sulfate | 68084-157- |
| Morphine Sulfate | 68084-158- |
| Morphine Sulfate | 63304-400- |
| Morphine Sulfate | 63304-401- |
| Morphine Sulfate | 16590-966- |
| Oxycodone Hydrochloride | 0406-0595- |
| Oxycodone Hydrochloride | 0093-0031- |
| Oxycodone Hydrochloride | 0093-0032- |
| Oxycodone Hydrochloride | 0093-0033- |
| Oxycodone Hydrochloride | 0093-5731- |
| Oxycodone Hydrochloride | 0093-5732- |
| Oxycodone Hydrochloride | 0093-5733- |
| Oxycodone Hydrochloride | 0093-5734- |
| Oxycodone Hydrochloride | 0115-1556- |
| Oxycodone Hydrochloride | 0115-1557- |
| Oxycodone Hydrochloride | 0115-1558- |
| Oxycodone Hydrochloride | 0115-1559- |
| Oxycodone Hydrochloride | 0115-1560- |
| Oxycodone Hydrochloride | 0115-1561- |
| Oxycodone Hydrochloride | 0115-1562- |
| Oxycodone Hydrochloride | 0591-2693- |
| Oxycodone Hydrochloride | 0591-2708- |
| Oxycodone Hydrochloride | 0591-3503- |
| Oxycodone Hydrochloride | 0781-5703- |
| Oxycodone Hydrochloride | 0781-5726- |
| Oxycodone Hydrochloride | 0781-5767- |
| Oxycodone Hydrochloride | 0781-5785- |
| Oxycodone Hydrochloride | 10702-801- |
| Oxycodone Hydrochloride | 10702-803- |
| Oxycodone Hydrochloride | 42858-001- |
| Oxycodone Hydrochloride | 42858-002- |
| Oxycodone Hydrochloride | 42858-003- |
| Oxycodone Hydrochloride | 42858-004- |
| Oxycodone Hydrochloride | 42858-005- |
| Oxycodone Hydrochloride | 49884-136- |
| Oxycodone Hydrochloride | 49884-137- |
| Oxycodone Hydrochloride | 49884-138- |
| Oxycodone Hydrochloride | 49884-197- |
| Oxycodone Hydrochloride | 60505-3537- |
| Oxycodone Hydrochloride | 60505-3538- |
| Oxycodone Hydrochloride | 60505-3539- |
| Oxycodone Hydrochloride | 60505-3540- |
| Oxycodone Hydrochloride | 60951-0702- |
| Oxycodone Hydrochloride | 60951-0703- |
| Oxycodone Hydrochloride | 60951-0705- |
| Oxycodone Hydrochloride | 60951-0710- |
| Oxycodone Hydrochloride | 67296-1376- |

| | |
|---|---|
| Oxycodone Hydrochloride | 67296-1560- |
| Oxycodone Hydrochloride | 68774-0161- |
| Oxycodone Hydrochloride | 68774-0162- |
| Oxycodone Hydrochloride | 68774-0163- |
| Oxycodone Hydrochloride | 68774-0164- |
| Oxycodone Hydrochloride | 00093-0024- |
| Oxycodone Hydrochloride | 00093-0031- |
| Oxycodone Hydrochloride | 00093-0032- |
| Oxycodone Hydrochloride | 00093-0033- |
| Oxycodone Hydrochloride | 00115-1644- |
| Oxycodone Hydrochloride | 00172-6354- |
| Oxycodone Hydrochloride | 00172-6355- |
| Oxycodone Hydrochloride | 00172-6356- |
| Oxycodone Hydrochloride | 00172-6357- |
| Oxycodone Hydrochloride | 00591-3501- |
| Oxycodone Hydrochloride | 00591-3502- |
| Oxycodone Hydrochloride | 00591-3503- |
| Oxycodone Hydrochloride | 00591-3504- |
| Oxycodone Hydrochloride | 52152-0408- |
| Oxycodone Hydrochloride | 52152-0409- |
| Oxycodone Hydrochloride | 52152-0410- |
| Oxycodone Hydrochloride | 52152-0411- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-040- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-139- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-201- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-202- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-203- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-238- |
| Oxycodone/Acetaminophen | 42858-102- |
| Oxycodone/Acetaminophen | 42858-103- |
| Oxycodone/Acetaminophen | 42858-104- |

**EXHIBIT G**

**DISTRIBUTIONS TO OR FOR THE BENEFIT OF MINOR CLAIMANTS FOR
THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE[1]**

The following procedures apply to any PI Claimant who is a minor under applicable law (a "Minor Claimant") for so long as the PI Claimant remains a minor under applicable law.  These procedures apply regardless of whether the Minor Claimant elects to have its PI Claim liquidated under the PI TDP or to pursue its claim in the tort system.

1.  **Actions by Proxy of Minor Claimant.**  A Minor Claimant's custodial parent, its legal guardian under applicable law (a "Guardian"), or an adult providing custody and care to the minor (any of the foregoing acting on behalf of the Minor Claimant, the "Proxy") is authorized to make submissions on behalf of the Minor Claimant under the PI TDP, subject to paragraph 2 below.  The Proxy shall be responsible for submitting, on behalf of such Minor Claimant, all required forms under the PI TDP, including the Claim Form, as well as any evidence required by the PI Trust to support the Claim Form, and any other documentation required or requested pursuant to the PI TDP.  The Proxy is authorized to take, on behalf of a Minor Claimant, all actions under the PI TDP that the Minor Claimant would be authorized to take if such Minor Claimant were an adult, other than receiving distributions from the PI Trust (unless so authorized by paragraph 5 below).  These actions include, where permitted, making an opt-out or payment election or requesting an appeal pursuant to Exhibit C to the PI TDP.

2.  **Establishing Proxy of a Minor Claimant**. Any purported Proxy making a submission to the PI Trust on behalf of a Minor Claimant shall include along with such submission

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PI Trust Distribution Procedure ("PI TDP").

documentation of his/her authority to act on behalf of the Minor Claimant, consisting of the following:

    a.   If the purported Proxy is the Guardian of the Minor Claimant, then the court order appointing that Proxy as Guardian, or other documents reasonably acceptable to the Claims Administrator as sufficient under applicable law to evidence the guardianship.

    b.   If the purported Proxy is the custodial parent of the Minor Claimant, then a sworn statement that such Proxy is the custodial parent of the Minor Claimant.

    c.   If the purported Proxy is neither the Guardian nor custodial parent of the Minor Claimant, then a sworn statement by the purported Proxy that he/she is providing custody and care to the Minor Claimant, stating for how long he/she has been providing such care and custody, explaining his/her relationship to the Minor Claimant and the circumstances around the provision of care and custody, as well as a statement and/or records from one or more of the following in support of his/her sworn statement:

        1.   Minor Claimant's school

        2.   Purported Proxy's landlord or property manager

        3.   Minor Claimant's health provider

        4.   Minor Claimant's child care provider

        5.   Purported Proxy's placement agency

        6.   Governmental social services agency

        7.   Indian tribe officials

        8.   Purported Proxy's Employer

Whether the purported Proxy is a Guardian, custodial parent, or neither, the Claims Administrator may require additional corroborating evidence at his discretion, including in the event that instructions are received from more than one purported Proxy for the same Minor Claimant.

3. **Distributions to Minor Claimants.**  When the PI Trust has determined the final distributable amount on a Minor Claimant's claim, it will send notice of such final amount to the Minor Claimant's Proxy and counsel (if known).  Such notice will include a letter inviting the Proxy to discuss how the distributable amount was determined, and the Claims Administrator will take reasonable steps to ensure that the Proxy understands how such amount was determined.  Any distributions owing to a Minor Claimant that are ready for issue by the PI Trust at a time when the Minor Claimant is still a minor under applicable law shall be (i) used to pay the individual attorneys' fees of the Minor Claimant pursuant to paragraph (4) below and (ii) with respect to the remainder, paid into an interest-bearing sub-fund of the Trust (the "Minor Claimants Account"), held there for the sole benefit of the Minor Claimant, and invested in a U.S. governmental money-market fund until such funds are distributed pursuant to Section 5 below or until the Minor Claimant becomes an adult under applicable law (the "Adult Distribution Date"), at which time the amount then held in such account (including interest earned) shall be paid directly to such PI Claimant.  Pending distributions for all Minor Claimants may be held in the same sub-fund.

4. **Payments of attorneys' fees.**

Within a reasonable period following receipt of Notice of the final distributable amount on Minor Claimant's PI Channeled Claim, and using forms to be provided by the Claims

Administrator, the Minor Claimant's counsel shall submit to the PI Trust, with a copy to the Proxy, a request for payment of legal fees and expenses from the Minor's recovery.  It is the Minor Claimant's attorney's duty to comply with all ethical and legal rules respecting such legal fees and expenses, and the Claims Administrator is permitted to rely upon such representation in issuing payments in respect of such fees and expenses.  Absent objection from the Proxy with respect to such asserted fees and expenses, the Claims Administrator shall remit payment to the Minor Claimant's attorney in accordance with the latter's request.

5.  **Early Distributions.**  Funds held in the Minor Claimants Account for a Minor Claimant may be released prior to the Adult Distribution Date only pursuant to order of a U.S. court of general jurisdiction in the Minor Claimant's state of residence.