5-11-21

TO: Clerk of Court,

FROM: Mark Walker M10055
WICC
2500 Route 99 S
Mt. Sterling, Ill  62353

FILED
U.S. BANKRUPTCY COURT
S.D. OF N.Y.
2021 MAY 17  P D 3 36

RE: Purdue Pharma LLP  # 19-23649-RDD

Dear Clerk,

    Please e-file: MOTION (18 pg's)
                   : Attachment / Affadavit (8 pg's)
                   : Exhibits  A - U

    Hopefully the stapled pleadings are
O.K. that was the Law Library's
doing.
          Thank-you

                              Respectfully Submitted

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| Purdue Pharma L.P. | Case # 19-23649 (RDD) |
| et. all | |
| debtors | (Jointly Administered) |

MOTION FOR CONTEMPT
SANTIONS AND OTHER
EXTRAORDINARY ORDERS
DIRECTED AT PRISON OFFICIALS
FOR WILLFULLY, WANTONLY VIOLATING
THIS COURTS ORDER IN VIOLATION
OF THEIR OWN POLICIES AND
STANDING CASELAW


COMES NOW, Creditor Mark E. Walker
Pro-Se, MOVES this Honorable
Court to find Director Rob Jeffreys (entity)
of Ill. Dept of Corrective (IDOC) in CONTEMPT
further issuing appropriate Santions and

$\frac{1}{18}$

awarding MOVANT costs and
damages and other appropriate ORDERS
as the Court deems necessary to
force IDOC and its employees to
follow both this Courts prior ORDER
(Doc 2697) and law, for good
-cause as contained here-in,

## Jurisdiction

Jurisdiction is established under
28 USC §§ 157(a)-(b) and 1334(b) and
the Amended Standy Order of Reference
M-431 dated Jan 31st, 2021
    Jurisdiction is further establish by
Doc 2697 dated 4/22/21 Item #6

    "This Court retains exclusive jurisdiction
    to hear and determine all matters
    arisy from or related to implementation,
    interpettation, and ENFORCEMENT of
    this Order"

$$\frac{2}{18}$$

<u>Brief History</u>

① ⁀ Creditor, Pro-Se ‵MCUANT‵ filed
previous MOTION (DOC 2607) before
this Court showing a ‵Vested Interest‵
as a claiment against debtors and having
no ability to review and ‵object‵
(if warrated) to the proposed ‵Plan‵
dated Apr/ 7 /2021;

② ⁀ In response and with ‵No Objection‵
the Court issued (DOC 2697) on
ORDER directing Non-party prison officials
to allow MOVANT to access the
Court both telephonically and by prison
officials retrieving various pleadings from
the NOTICING AGENT, Prime Clerk LLC
pursuant to the prisons policys and
procedures;

③ ⁀ Prison officials (WICC) have refused to follow
this Courts ORDER in its entirety, As described
in detail in Attachment I "Affodat of Mark Walker";

$\frac{3}{18}$

## Short History prior to Order

① an    Prior to this ORDER MOVANT
has filed a Civil Rights lawsuit <u>Walker</u> v
<u>Scott</u> et.all 20-cv-03155-SEM (Central Dist Ill, Fed)
over disability discrimaton that included
criminal falsification of State Records, Altory of
medical records (cover up) and various other unlawful
activities by WICC officials. The Court has to
look no further then DOC <u>20</u> (In that suit)
Mot. to Leave, and Amend Complaint w/ Exhibits,
to establish prison officials at this facility do
not follow the law -Or- their own policys
(See also DOC <u>31</u>) Mot. Compell/ Evidence tampering.
First, prison officials claimed MOVANT was not
food handler qualified (Exhbit <u>A, B</u>) when
in fact he was because they didn't want to
allow him to participate in ICI program and earn
good-time. AND in yet another big fat
lie IDOC claims thee is no food handler
qualification policys (Exhbit <u>C</u>) theie
coreedly evidence of their wrong-doing thats
discovorable under the Rules of Civ Procedure;

$\frac{4}{18}$

Advocacy Letters. From disability attorneys
to prison officials (Exhibit d, E) were ignored

This establishes prison officials refuse
to follow the law even after given NOTICE;
on Aug 20, 2020; (Exhibit F)

(2). In retaliation MCUANT is now banned
from accessing prison policys in violation of
the policy (Exhibit G) MCUANT was
forced to file FOIA request to recieve
requested policy even though prison officials
know Ill. law prohibits inmates from
FOIA prison policys FOIA Section 7 (1)(e5)
(See again DOC 31 and Exhibit H).

Again establishing prison officials refuse
to follow their own policys and further
lie on the grievances (# 21-0410).

(3). In retaliation for the lawsuit, Defendant
Ashcroft / Heath Care Administrator and dietary doctor
officer discontinued MCUANTS Special doctor
ORDER diet and are imposing deprivations
of food wherein Ashcroft went into the medical
file both altering and destroying medical records to
cover their tracks

5
___
18

④ ,. When EIP #2 (Stimulus Checks $600⁰⁰)
showed up prison illegally garnished MOVANTS
EIP for filing fees on Walker case
in violation of 26 USC Sectn 272(d)
of CAA. To which MOVANT requested
his funds returned. $ Wada Greene. in
which she responded basically that prison
policy trumps Federal Law (Exhibit I₂), J)
    Grievance # 21-0821 was filed and
prison officials then tried to use the Federal
Court as a "Pawn" stating they had to return
the funds first, Verbal threats of involving the
Secret Service netted response the money could
be returned via Grievance Appeal to ARB/Director
                                                    Jeffrey's
    However, prison employees said grievance
was answered and in the prison mail back
to MOVANT weeks ago, MOVANT only has
30 days to file the Appeal,, And it appears
prison officials are merely hoging onto it until after
the 30 days run's to cheat MOVANT
out of his Appeal and Stimulus money
refund that was illegaly taken ,

$$\frac{6}{18}$$

⑤ ~  On/arond May 5, 2021 MOVANT became
aware that prison officials appear to
be illegaly running a covert multi-state
criminal investigation against MOVANT when
they have no authority or jurisdiction under
Illinois Law. As State law designates the
Ill. State Police as investigator of such criminal
matters on behalf of the prison system.

MOVANT became aware of this apparent
investigation when a prison employee brought
up a "fact" buried in a arrest report
23 years ago in another State. The
employee stated "Remember when you told
me (this)" Movant NEVER discussed
that "fact" or (this) with the prison employee
whatsoever. That case was actually dismissed
over a "Speedy Trial" demand in 2016.

So prison officials appear to be engaging
in criminal acts by using their government
resource(s) to look for way's to impose
further retalliatory measures against MOVANT
over the Walker suit with no beneficial
purpose.

7/18

## Credibility of MOVANT

As a courtesy MOVANT provided a copy of this MOTION/Affidavit to Director Rob Jefferys. And if this Court ORDERS IDOC to "Show Cause" why they shouldn't be held in contempt they will most likely try to advance allegations MOVANT is not truthful to the Court, to which MOVANT presents the following evidence:

(A). In 2000, while at Montana State Prison over a $150⁰⁰ check Forgery that was enhanced to Felony, MOVANT Filed suit to Montana Supreme Court over conditions of confinement in what became a media spectacle with over 18 news articles. Prison officials denied everything alledged.

MOVANT garnered a Landmark/published 38 page Opinion 6-1 Walker v State Mt 134 (2003) over mistreatment of prisoners with mental illness the Court deemed prison officials "denied him human dignity, pysalogically tortured Walker" among other things. Walker was proven to be truthful.

8/18

(B). In 2012 MOVANT was a named plantiff
in a class of $5,000 litigants against Sheriff
Gusman / New Orleans  Jones v Gusman (citation omitted)
represented by Southern Poverty Law Center and
later USDOJ signed on as Plantiff counsel also.

In that case Sheriff signed a Settlement Agreement
but refused to admit in violation of requirements
of PLRA which turned into a fairness trial
where all allegations were proven true after 10 days.

Ultimately Judge Africk took the new
$240 M jail w/ $75 M dollar kitchen
away from Sheriff and put it into Federal
control in 2016.

A side suit Walker v Gusman (citation omitted)
for damages was also settled out of Court in
2016, The Court actually approved that settlement
in violation of PLRA as Sheriff refused to
admitt on it also as is required by law.

MOVANTS background clearly demonstrates
credibility in this MOTION, As do the
exhibits attached to this MOTION.

9
——
18

## Contempt Citation Justified

① ~ This Court ORDERED prison officials to put MOVANT on the phone to participate telephonically at upcoming Court hearings. (May 4, 2021 for example)

As described in the attached Affidavit of Mark Walker (Attch __1__) Counselor Brown after receiving a e-mail (presumably from Clerk) went to the legal department for reason to deny the phone call, Then e-mailed the Court, MOVANT wouldn't be attending Court hearing telephonically in VIOLATION of this Courts ORDER and WICC policy on legal calls.

First off, the policy actually states Offenders aren't allowed to use correctional telephones, (Exhibit __K__) But as demonstrated (in Affidavit of Mark Walker Item # __13__) prison officials are constantly and repeatedly putting Offenders on the phone for legal calls - now selectively imposing MOVANT be subjected to the policy as yet more retaliation over Walker suit.

$$\frac{10}{18}$$

Furthermore, there is actually some caselaw on remote appearance by electronic means (telephone is electronic means) ruled on by 7th Circuit/Appeals Court. In Thorton v Snyder 423 F3d 690 (2005) ruled it permissable for a Pro-Se inmate litigant to litigate his civil jury trial via videoconference and further all witness(s) appearing remotely. In that case there were security concerns due to Thortens potential of escape or threat.

In this case, MOVANT is a Minimum Security Inmate w/ a Escape classification of "Low" now "NONE" And has not had a displenary writeup in IDOC since 2010. (Exhibit L ).

Prison officials in this case simply ~~chose~~ chose to deny MOVANT access to the Court in violation of not only this Courts order but their own policys and caselaw without any legitiment penelogical purpose.

$$\frac{11}{18}$$

②.— As for this Courts ORDER that the prison librian (Mr. Scott Gregory) retrieve various pleadings from Prime Clerk LLC "NOTICING AGENT" pursuant to prison policys and precedures,, As clearly documented in Attachment 1 "Affadavit" Mr. Gregory made the decision from the start to refuse to follow this Courts ORDER and went to Connie Cosey (title unknown) to find justification to ignore this Courts Order,

MOVANT is a crediter and therefore a litigant in the "Purdue" matter and thus is entitled to the pleadings filed in the matter by law and prison policy,

Due to Mr. Gregory's unlawful willfuly, wantonly contemptous actions with no penealogical purpose he has caused MOVANT Irrepairable Injury in as far as MOVANT was denied opportunity to review supplement plan and PI claim questionare and Object (if warrented) by the Courts deadline,

See DOC 2488  ) 12   (Exhibit M)
P. 59 or 68  ) 18

## MOVANTS INTEREST IN PROCEEDINGS

MOVANT has a deeply ingrained vested interest into the construction and development of the PI claim questionare based on the following. this is why he filed the original MOTION to the Court to protect his rights.

① In anticpation of the Court demandy "Proof of Claim" MOVANT contacted "Great Falls Cline" the repository of <u>all</u> medical records for Cascade County, Montana where MOVANT was a resident from birth (1969) to 2004.

Great Falls Clinic has destroyed all MOVANTS medical records except two doctor visits in 2004 for "Staph" and "Thrush" (Exhibits N, O, P, Q, ).

Plantiffs opioid exposure and subsequent addiction spans a time period of 1990's restfocy in Aug 2001 - until 2003 timeframe. while in Montana.

② MOVANT then attempted to secure the Phomeeitical records, which has become

<u>13</u>

18

impossible as Buttery's Grocery and
Pharmacy chain went bankrupt over a decade
ago, And Publix Drug burnt down and
its MOVANTS understandly these records
were also lost.

It was imperitive, that MOVANT get
a peek at the PI claim questinaire to
ensure it covered those type of issue(s) not
just in MOVANTS case But all similarly
situated claimants, And be able to
file his "Objecters" (if warrented) prison
officials have essentially "cheated" MOVANT
out of his Constitunal Rights without provide
any policys, policy numbers, nothing, just
simply because they didn't feel like
follow the Courts Order.
The Court cannot even believe any
stories excuses or policys the prison may
introduce in they're defense, As they've
altered, changed, Felsefied the Inmate
Orientation Manual (policy book) itself.

14
18

The policybook was revisited on 7/2020 and signed by acting Warden Justin Hommers (P.2) (Exhibit S,T) Now the same 7/2020 policy book on P.2 shows Warden Britney Greene as the Warden at the revision time also stated on the page P.2 (Exhibit U).

Greene didn't become Warden until around December 2020, After Hommes was promoted and Warden French was removed over some inmate deaths due to staff misconduct.

So if prison officials falsefy P.2 of the policybook, what else has been changed and altered to undermine, tamper with evidence, in regards to all the pendly lawsuits against facility. Whats this Court to believe?

Conclusion

Prison officials unlawfully and without any penological purpose have violated both this Courts Order and MOVANTS Constitutional rights knowingly willfully and
15
wantonly
18

MOVANT is entitled to a ruling of 'Contempt of Court' against prison officials, Dir. Jeffoy's (entity) including both sanctions, costs and damages as he has been irrepairablay harmed in this litigation.

Its gay to take a daily fine in large amount ($10,000 a day) against IDCC, and the U.S. Marshalls to arrest and detain Warden Greene, Scott Gregory, Greg Brown for the refusal to follow this Court's Orders to get the message accaross/understand.

Prison officials are betting that a Judge from New York will not enforce his Order, So they are essentially thumbing their noses at both the Court and MOVANT in this case.

MOVANT apologizes for the 'runaway train' that this Motion has become, But he wants the Court to fully understand the dynamics at play at this facility and the F.B.I will most likely verify also,

16
18

WHEREFORE, MOVANT prays on this
Honorable Court for the following:

① ORDER Director Jeffry's to 'show cause'
why his department and employees should not
be held in 'Contempt of Court';

② ORDER contempt citations and sanctions
against all involved prison officials and their
entity IDOC/Dir Jeffry's as this Court
deems appropriate;

③ ORDER prison officials -pay damages and
costs to MOVANT and the Court in this
'Contempt issue, As photocopying, postage and
MOVANTS time aren't free;

④ Any and all other ORDERs this Court
deem's necessary to foalliatete forcing
prison officials to follow any/all future
Court ORDERS.

    Thank-you.

        17
        ——
        18

Dated this __8th__ day of May, 2021

Mark Walker M10655
Creditor / MOVANT / Pro-Se
2500 Route 99 S.
Mt. Sterling, Ill 62353

## Certificate of Service

I hereby certify that on __11th__ day of May, 2021 I placed this attached "MOTION" in the U.S. mail to Clerk of Court to serve parties of interest via the Courts Pacer automated filing system;

— Davis, Polk and Wardwell, LLP, Counsel for debtors.

— Additively, copy sent to non-party (prison officials) Director Rob Jeffreys / IDOC P.O. Box 19277, Springfield, Ill 62794

Mark Walker M10655
2500 Route 99 S
Mt. Sterling, Ill 62353

18/18

ATTACHMENT
1

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| Purdue Pharma, L.P. | Case # 19-23649 (RDD) |
| et.all | |
| Debtors | ( Jointly Administered ) |

# AFFADAVDT
## OF MARK EDWARD WALKER

State of Illinois
}  - SS:
County of Brown

I hereby depose and state the following:

① .. That, I am a Claimant / Creditor in the above-entitled matter holding claims titled under numbers  A.. 22993  filed June 2
                                                        B.. 23559         2020

$\frac{1}{8}$

(2). That, I am currently incarcerated at Western Ill. Corr. Center located at Mount Sterling, Illinois 62353 under Inmate # M10655;

(3). That, due to my incarceration I have no access to Prime Clerk the NOTICING AGENT in this matter via either telephonically, or directly via Internet at their website;

(4). That, I recieved NOTICE of Hearing (DOC 2474) from Prime Clerk informing me of an Objection deadline to the Plan (DOC 2487) (DOC 2488) Prime Clerk provided later via U.S. Mail on/around April 18th/2021;

(5). That, simultaneously on April 7/2021 I filed MOTION (DOC 2807) to this Court to participate telephonically with upcoming Court hearing, And Further recieve pleadings on the above-captioned case;

$$\frac{2}{8}$$

⑥~ That, on/crerd I ~~was~~ recievd From
Counselor Gregery Broug a copy of this
Courts ORDER (DOC 2697 ) GRANTING
my MOTION, Ordery Prison officals to
  Ⓐ.. Allow me to attend Cout hearg telephorely,
  Ⓑ... Print of various pleadings at the
    NOTICING AGENTS website by librianon.

⑦~ That, on, April 27/2021 I presented
Mr. Scott Gregory the Law Librian a copy
of this Courts Order (DOC 2697), he
made a photocoopy, Then stated he
was refusy to Follow this Courts ORDER
unless his boss ORDER's him to do
so " ;

⑧~ That on /appreviarntly I sent Worden
Brittney Greene (Gregory's Boss) on inmate
Kite requesty she ORDER Mr Gregory
to follow this Courts ORDER, she
never responded ;

3/8

⑨— That on May/5/2021 I returned to law library on another matter and was infored by Mr. Gregay the follwing=

Ⓐ He WAS NOT follwy the Court ORDER,

Ⓑ That a Ms. Cossey told him not too (Connie Casey) (Gregay refusy to give Cossey's title)

Ⓒ Threw it in My face that Warden Greene shoud him the "kite" I wrote her;

⑩. That on 5/3/2021, I was infored by Mr. Browning our counselor that he recieved e-mail-a request I attend the 5/4/2021 Court heary, and he contacted IDOC legal department and they told him not to let me attend telephically;

⑩— That, Gregay further stated he sent e-mail back to Court (presumably) that I would not be allowed to telephically attend the 5/4/2021 heary —Or— any other upcomy hearys before this Court as well;

$$\frac{4}{8}$$

(12). That on May 5th, 2021 I did not attend
said hearing telephonically due to prison
officials actions against me;

(13). That on May/5th/2021 at approximately
2:00 p.m. I witnessed another inmate
on Counselor Brown's Correctional telephone
commence a legal call, And that prison
routinely allows this even though it states
on P.10 of Inmate Orientation Manual that
its prohibited. (Exhibit K);

(14). That, I am the Plaintiff in disability
discrimination lawsuit Walker v Scott 20-cve 03155-SEA
against prison officials that includes violations of
various State and Federal laws, Falsefication of
State Records, alteration and molestation of my
medical and prison files to cover up the original
misdeeds, and various other unlawful acts
not otherwise specified by prison officials;
Filed in Fed Court for Central District of
Illinois (Judge Myers cough);

$$\frac{5}{8}$$

(15) ⌐ That, prison officials have retaliated against me over lawsuit described in item __14__ of this affidavt by food deprivation torture, denial to access to prison policys except thregh FOIA requests in violation of State law on such, and other retaliatory actions, not otherwise specified;

(16) / That on/around May 3, 2021 I became aware that prison officials appear to be running a multi-state covert criminal investigation of me for which they are not an authorized investigative agency under Illinois State Law, in further retaliation over <u>Walker v Scott</u>;

(17) ⌐ Lastily, that I have been irrepairebly damaged in this Court due to the unlawful and policy violating acts of prison officials at Western Ill Correctional Center, thre their willful and wanton refusal to follow this Courts Order (DOC <u>2697</u>).

$$\frac{6}{7}$$

## Affaint

I declare under penalty of Perjury that facts and statements contained in this my Affadvit of Mark E. Walker are true and correct to the best of my Knowledge and understanding, as to the events, as they occured at the time.

Mark E. Walker M10655

WICC

2500 Route 99 S.

Mt. Sterling, Ill    62353

Subscribed and Sworn before me on this 5th day of MAY , 2021

_____
Notary Public

SCOTT GREGORY
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Jul 15, 2024

7/8

<u>Certificate of Service</u>

I hereby certify that on <u>11th</u> day May, 2021, I served parties of interest via the Courts PACER automated filing system by U.S. mail, the the Clerk of Court this Affidut to e-file into the System:

— Davis, Polk, and Wordwell LLP, Counsel for Debtors —

I further certify non-parties (press officials) have been served via U.S. Mail directed to: Director IDOC Rob Jeffry's
            P.O. Box 19277
            Springfield, Ill. 62794

Mark Walker M10655
WICC
2500 Route 99 S.
Mt. Sterling, Ill 62353

8/8

Creditars

Exhibit

A



Illinois Dept of Corrections

INMATE

M10655

WALKER, MARK

ADA MEDICAL
LEGALLY BLIND

Issued On: 2/21/2015

Exhibit B

**ICI**
*ILLINOIS CORRECTIONAL INDUSTRIES*

**Bruce Rauner**
GOVERNOR

Western Illinois Correctional Industries/2500 Rt. 99 South / Mt. Sterling, IL 62353 / Telephone:  217-773-4441

# M E M O R A N D U M

**DATE:**   February 26, 2020

**TO:**   Walker, M10655
4-D-19

**FROM:**   Heidi Scott
Superintendent of ICI - Western

**SUBJECT: REQUEST**

Be advised we have received your request for an Industry assignment.  After reviewing your Illinois Department of Corrections records and history it has been determined that you do not meet the criteria for an industry assignment at this time due to not being a qualified food handler.  My recommendation is to set up a meeting with your counselor or health care regarding the designation of not being a "qualified food handler" so you have a better understanding as to what this means and if it is at all possible to change.  Until you become a qualified food handler, I urge you to continue applying for other assignments and taking additional college courses as this can only benefit you in the long run.  Degrees and educational credits are something no one can ever take away from you.

Please resubmit your request once you are no longer pay restricted.

JB Pritzker
Governor



*Created
Exhibit
C*

Rob Jeffreys
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

March 25, 2021

Mark Walker, M10655
Western Illinois Correctional Center
2500 Rt. 99 South
Mt. Sterling, IL 62353

Re:     Freedom of Information Request #210318215

This letter is in response to your request to the Illinois Department of Corrections ("IDOC") pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1, et seq.

You have requested written documents or records of the requirements for inmate to be food handler qualified.

Response:     IDOC does not possess or maintain records responsive to this request.

In the event you view this response as a denial of your request, you have a right to have the denial reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General.  5 ILCS 140/9.5(a).  You can file your request for review with the PAC to:

Public Access Counselor
Office of the Attorney General
500 South 2nd Street
Springfield, Illinois 62706

You also have the right to seek judicial review of your denial by filing a lawsuit in the state circuit court, pursuant to 5 ILCS 140/11.

If you choose to file a request for review with the PAC, you must do so within 60 calendar days of the date of this denial letter (5 ILCS 140/9.5(a)).  Please note that you must include a copy of your original FOIA request and this denial letter when filing a request for review with the PAC.

Sincerely,
Maggie Meikle
Freedom of Information Officer

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

*Recvd 2th 21
April 2021*



## Advancing the human and civil rights of people with disabilities

SELF-ADVOCACY ASSISTANCE ★ LEGAL SERVICES ★ DISABILITY RIGHTS EDUCATION ★ PUBLIC POLICY ADVOCACY ★ ABUSE INVESTIGATIONS

January 22, 2021

Creditor
Exhibit
d

<u>By USPS and Fascimile</u>
Brittany Greene, Warden
2500 Rt. 99 South
Mount Sterling, IL 62353
Fax: (217) 773-2202

Re: Mark Walker # M10655

Dear Warden French:

I am writing to provide you with a copy of a letter we sent to the previous warden regarding Mr. Walker. We understand that Mr. Walker continues to be denied employment with the Illinois Correctional Industries (ICI) program due to his disability. This raises serious concerns under federal laws that prohibit discrimination against people with disabilities and require reasonable accommodations where necessary to prevent their exclusion from programs such as this.

I am attaching a letter dated August 20, 2020 that was sent to the previous warden, Mr. Hammers, about this matter. We again ask that attention be given to this issue immediately.

Thank you for your time and consideration.

Sincerely,

Amanda Antholt
Civil Rights Team

Enclosure: 8/20/2020 Letter from Equip for Equality to IDOC

cc:    Mark Walker (by mail)
       Anne Rayhill, IDOC Legal Counsel (by email)

THE INDEPENDENT, FEDERALLY MANDATED PROTECTION & ADVOCACY SYSTEM FOR THE STATE OF ILLINOIS

MARK P. ROTATORI, BOARD CHAIRPERSON   ZENA NAIDITCH, PRESIDENT & CEO

MAIN OFFICE: 20 N. MICHIGAN AVENUE, SUITE 300  ★  CHICAGO, IL 60602  ★  EMAIL: contactus@equipforequality.org  ★  TEL: (312) 341-0022

TOLL FREE: (800) 537-2632 ★ TTY: (800) 610-2779 ★ FAX: (312) 541-7544 ★ MULTIPLE LANGUAGE SERVICES

WWW.EQUIPFOREQUALITY.ORG

Exhibit
E



## Advancing the human and civil rights of people with disabilities

SELF-ADVOCACY ASSISTANCE ★ LEGAL SERVICES ★ DISABILITY RIGHTS EDUCATION ★ PUBLIC POLICY ADVOCACY ★ ABUSE INVESTIGATIONS

August 20, 2020

By USPS
Justin Hammers, Warden
Kathy Ashcraft, ADA Coordinator
Western Illinois Correctional Center
2500 Rt. 99 South
Mount Sterling, IL 62353

Anne Rayhill
IDOC Legal Counsel
Springfield, Illinois
(by email)

*Re: Mark Walker, IDOC # M10655*

Dear Warden Hammer and ADA Coordinator Ashcroft and Legal Counsel Rayhill,

I am writing on behalf of Mark Walker, IDOC # M10655, currently incarcerated at Western Illinois Correctional Center. Mr. Walker is blind and has a mental illness. He is therefore a person with disabilities within the meaning of the Americans with Disabilities Act. Mr. Walker has repeatedly applied for the Illinois Correctional Industries (ICI) program at Western but has consistently been denied, apparently due to his disabilities.

Equip for Equality is the designated protection and advocacy system for the State of Illinois, charged with protecting the rights of Illinois residents with disabilities. As such, we write with grave concern that IDOC is violating federal law by excluding Mr. Walker from the industries program because of his disabilities.

When Mr. Walker first arrived at Western Illinois CC in January 2019, he applied for the ICI program so that he could learn a trade while also earning good time credit. He appeared to meet the eligibility criteria for the program: he had been at the facility for at least 30 days, was within 1-10 years of his release, was classified as minimum security and on A-grade status, and had not been in segregation in the previous 90 days. He believed that he was not pay-restricted, given that his TABE score was higher than the minimum required to be eligible for state-pay employment.

But in June 2019, when Mr. Walker's name came up for the program, he was denied a position in the industries due to "not meeting the criteria." No further explanation was given to him about which criteria he did not meet.

THE INDEPENDENT, FEDERALLY MANDATED PROTECTION & ADVOCACY SYSTEM FOR THE STATE OF ILLINOIS

JOHN K. HOLTON, PH.D. , BOARD CHAIRPERSON    ZENA NAIDITCH, PRESIDENT & CEO

MAIN OFFICE: 20 N. MICHIGAN AVENUE, SUITE 300 ★ CHICAGO, IL 60602 ★ EMAIL: CONTACTUS@EQUIPFOREQUALITY.ORG ★ TEL: (312) 341-0022

TOLL FREE: (800) 537-2632 ★ TTY: (800) 610-2779 ★ FAX: (312) 541-7544 ★ MULTIPLE LANGUAGE SERVICES

WWW.EQUIPFOREQUALITY.ORG

Page 2
August 20, 2020

Mr. Walker then reapplied for the program, and when his name came up again in February 2020, he was again denied. The memorandum he received from Superintendent Scott stated that he was denied due to not being a "qualified food handler." Superintendent Scott encouraged Mr. Walker to speak with his counselor or health care to determine why he was not qualified as a food handler. Superintendent Scott also informed him that he was "pay restricted," and would not be able to begin a job in industry until he was no longer pay restricted.

Mr. Walker followed Superintendent Scott's advice and wrote a kite to the healthcare staff asking why he was not food qualified. The response he received was that he *was,* in fact, qualified. He spoke with his counselor, who confirmed that he is listed as "pay restricted," but was unable to determine why. As previously stated, Mr. Walker has taken the TABE and earned above the minimum score required to qualify for a job earning state pay.

Still unable to understand why he had been denied the industry position, Mr. Walker then submitted a grievance on this issue. The response he received indicates that he had been denied a position in industry is due to his vision impairment. Indeed, the grievance response states, in relevant part:

> ADA coordinator Mrs. Ashcraft stated on 04/14/2020, for this offenders safety, he could not be assigned to ICI due to his status of being legally blind. There are knives, saws and presses in ICI that would need to have a keen eye on at all times during operation. I truly would be afraid for this offenders safety and well-being if he was to be put in ICI. ...

This response suggests that the prior justifications given—that he was pay restricted and not qualified to be a food handler—were merely pretext for discrimination based on Mr. Walker's disability. Moreover, the ADA Coordinator's response demonstrates just the sort of paternalistic judgment that the Americans with Disabilities Act was intended to dispel.

The very purpose of the ADA's requirements in the employment and programmatic context are to stop paternalistic views about the abilities of people with disabilities. It is incorrect to assume that someone who is blind cannot work in industry—in fact, Mr. Walker has worked in food service at prisons in other states prior to his incarceration at the IDOC. People with disabilities, including those who are blind, work in all sectors, including in industries and culinary arts.

The Americans with Disabilities Act requires that access to the programming available within the IDOC, including educational and vocational programs, must be equally available to persons with disabilities as to non-disabled people. It is a violation of Title II of the ADA to exclude persons with medical or mental health needs from vocational programs offered by the IDOC merely *because* they have a disability. *See* 42 U.S.C. § 12132 (explaining that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity"). The Rehabilitation Act provides similar protections for people with disabilities in this context. 29 U.S.C. §794(a) ("No otherwise qualified individual with a disability in the United States.... shall, solely by reason of her or his disability, be excluded from

Page 3
August 20, 2020

the participation in, be denied the benefits of, or be subjected to discrimination under any
program or activity receiving Federal financial assistance or under any program or activity
conducted by any Executive agency ....").

To the extent Mr. Walker's disabilities require accommodation in order for him to participate in
the ICI program, it is a violation of the law to not make "reasonable modifications in policies,
practices, or procedures when the modifications are necessary to avoid discrimination on the
basis of disability." 28 C.F.R. § 35.130(b)(7).

In a case similar to this one, *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012), the
U.S. Court of Appeals for the Seventh Circuit found that a prisoner who walked with a cane
stated a claim against the IDOC under the Rehabilitation Act for his exclusion from a work
release program. Like Mr. Walker, that prisoner met the eligibility requirements of the program:
he was within two years of his release date and classified as minimum security. But Jaros was
denied transfer to a work-release program because of a "medical hold" on his file, solely because
he used a cane. When he tried to contest the medical hold, Jaros was told that he was
"appropriately placed." The Court of Appeals found it plausible that the Department's
"appropriately placed" rationale was pretext for discrimination, and allowed his claim for
disability discrimination to go forward. Here, the pretext has already been dispelled. The basis
for Mr. Walker's exclusion from the employment program was his disability.

We are writing to ask that attention be given to this matter immediately. As a result of denying
him access to the ICI program, Mr. Walker already has lost out on over a year's worth of pay
(estimated between $2400 and $3600) and several months of good time credit, all potentially due
to his disability.

We ask that Mr. Walker be approved for the ICI program as soon as possible. To the extent that
any reasonable accommodations must be made to allow him to participate in the ICI work, we
ask that the ADA Coordinator communicate with him directly to better understand his needs
including how he can work safely in Industries. We are also happy to be resources and provide
information regarding some of the workplace accommodations sometimes utilized to provide
equal treatment of blind employees.

Thank you for your attention to this concern.

Sincerely,

Amanda Antholt
Civil Rights Team

cc:    Mark Walker
       IDOC Legal Counsel Anne Rayhill (by email)



## Advancing the human and civil rights of people with disabilities

SELF-ADVOCACY ASSISTANCE ★ LEGAL SERVICES ★ DISABILITY RIGHTS EDUCATION ★ PUBLIC POLICY ADVOCACY ★ ABUSE INVESTIGATIONS

January 22, 2021

*Privileged LEGAL Correspondence*
Mark Walker, M10655
2500 Route 99 South
Mt. Sterling, IL 62353

Dear Mr. Walker:

Thank you for your letter to Equip for Equality ("EFE") dated November 17, 2020. You requested that we send our prior advocacy letter regarding your employment at the ICI program to the new warden. You also had questions about your case *Walker v. Scott*, 3:20-cv-03155-SEM and asked for legal representation.

We have forwarded the current warden, Brittany Greene, the advocacy letter that we sent on your behalf on August 20, 2020. Enclosed is a copy for your reference.

Unfortunately, EFE cannot provide legal representation on *Walker v. Scott*. I understand that you have written to five attorneys from our Civil Rights Attorneys list, but only one of them has replied. We encourage you to continue writing to more attorneys. In your letters, it would be helpful to reference that your ADA claim survived merit review. Even if attorneys deny representation, it will be beneficial to demonstrate to the court your attempts to hire counsel by providing the letters of denial. Although the court denied your motion for recruitment of counsel in the merit review, it may reconsider upon your compliance in making reasonable attempts to obtain counsel and attaching the responses received.

To respond to some of your specific concerns about the court's decision:

1. As you described, the court's decision does seem to conflate the ADA and constitutional claims, but this will likely be resolved as the case moves forward.
2. The proper defendant in an ADA case is the public entity and not individuals. For an ADA claim in IDOC, the named defendant should be the Director of IDOC, Rob Jeffreys. More information regarding legal claims under the ADA or Rehabilitation Act is provided in the fact sheet.

At this point, we have provided you with all of the information that we have agreed to provide on this particular issue. Pursuant to our standard operating procedures, I am enclosing a copy of EFE's grievance brochure. We wish you well.

Sincerely,

Amanda Antholt
Civil Rights Team

Enclosures: Letter to Warden French, *Walker v. Scott* Merit Review, ADA Fact Sheet, Grievance Brochure

THE INDEPENDENT, FEDERALLY MANDATED PROTECTION & ADVOCACY SYSTEM FOR THE STATE OF ILLINOIS

MARK P. ROTATORI, BOARD CHAIRPERSON   ZENA NAIDITCH, PRESIDENT & CEO

MAIN OFFICE: 20 N. MICHIGAN AVENUE, SUITE 300 ★ CHICAGO, IL 60602 ★ EMAIL: contactus@equipforequality.org ★ TEL: (312) 341-0022

TOLL FREE: (800) 537-2632 ★ TTY: (800) 610-2779 ★ FAX: (312) 541-7544 ★ MULTIPLE LANGUAGE SERVICES

WWW.EQUIPFOREQUALITY.ORG

*Creditor
Exhibit
F*

# ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

September 14, 2020

Mark Walker
(M10655)
2500 Rte. 99 South
Sterling, IL 62353

Re: Control Number: 20M0520.02
Respondent: Illinois Department of Corrections Mt.
Western Illinois Corrections

Dear Complainant:

After considering your communication it appears that a charge of discrimination cannot be filed with the Department of Human Rights for the reason(s) indicated below:

1. ___ The Human Rights Act requires that a charge of discrimination be made within 300 days of the alleged civil rights violation (180 days if the violation took place before June 8, 2018). Your communication was not mailed or received within that period.

2. ___ The Employer you are accusing of a violation of the Human Rights Act employs fewer than 15 employees.

3. _X_ The Employer or **Entity** you are accusing of a violation is not subject to the provisions of the Human Rights Act.

4. ___ You have not claimed that you were discriminated against because of a protected basis. The Human Rights Act prohibits discrimination on the basis of race; color; religion; sex; national origin; ancestry; age (40 and over); marital status; physical or mental disability, unrelated to ability to perform the job; military status; sexual orientation (including gender identity); unfavorable military discharge; sexual harassment; arrest record; citizenship status; order of protection status; willful interference; (retaliation for having openly opposed unlawful discrimination); and aiding, abetting, compelling or coercing a person to discriminate based on any of the categories mentioned.

5. _X_ OTHER: 1. The Illinois Department of Human Rights does not have jurisdiction over prison facilities.
   2. Please contact a private attorney to file a lawsuit against the Illinois Department of Corrections for violating your Federal ADA Rights during your incarceration.

The Department has closed your file. However, if you still believe that you have a charge of discrimination within this Department's jurisdiction, you must write to us within ten (10) days of receipt of this letter explaining your reasons. For your convenience, our fax number is (312) 814-6251. Always be sure to refer to your control number when writing.

Sincerely,

Hector M. Sanchez
Human Rights Investigator
Intake UnitIN2Rev. 4/19

Exhibit G

F.     Rules and Regulations

Fundamental to the successful operation of the Western Illinois Correctional Center is the need for both offenders and staff to follow all established rules, bulletins, policy statements, and Department Rules (available in the Library). Copies of appropriate and applicable Warden's Bulletins are located in the living units and library. Your counselor will be able to assist you with any questions that you may have. While all of the Department Rules are important, ones to which you should pay particular attention are:

Diminution of Sentence, DR 107B

Statutory Good Time, DR 107B

Program Sentence Credits, DR 107B

Meritorious Good Time, DR 107C

Program Sentence Credits, DR 107F

Assignment of Committed Persons, DR Part 420

Library Services and Legal Materials, DR 430

Committed Persons' Business Ventures, DR 445

Disposition of Contraband, DR 501C

Personal Cleanliness and Grooming for Offenders, DR 502B

Clothing, Bedding and Linen, DR 502C

Classification and Transfers, DR 503B

Administration of Discipline (Maintaining Good Order) DR Part 504A and Table A

Segregation, Investigative Confinement and Administrative Detention – Adult, DR504D

Grievance Procedure for Offenders, DR 504F

Grievance Procedure for Releases, DR 504G

Rights and Privileges, Visitation, DR525A

Rights and Privileges, Mail and Telephone Calls, DR 525B

Rights and Privileges, Publications, DR525C

Rights and Privileges, Marriage, DR525D

Personal Property, DR 535

Inmate Orientation Manual

Exhibit H

Pencil Response

Please include 2 copies
of ~~IDOC~~ Policy on Food
handler qualified (?)medical requirments s

Add copies to bill on
money transfer

Thanks

Rcv'd from Library
approx Feb 10, 21

Created
Exhibit
I

~~Warden Breede~~

FROM: ~~Michele Watts~~ M0655                    2-d-17

According to 26 USC Section 272(d)
of the law regarding stimulus payments
(2nd are $600) the prison is not allowed
to take any money for garnishment or
levies

Your people took $120.00 of my
stimulus (2nd payment) for Court fees
to the Federal Court, And I Per Springfield,
want that money returned to my Per A.D regarding
inmate account immediately restitutions and Court
Consider this my informal fees, funds may
resolution prior to asking the I.R.S be collected from
audit this prisons books to see all incoming
how many inmates were subjected to revenue sources
this illegal act by YOUR STAFF include offenders
I will be providing Carseler Browne a account,
copy of the law letter on this should be This includes
choose to give it to you Stimulus Payments
Respectfully Submitted
~~M E M~~

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | M10655 | **Counseling Date** | 03/16/21 09:46:32:303 |
| **Offender Name** | WALKER, MARK | **Type** | Collateral |
| **Current Admit Date** | 11/19/2018 | **Method** | Grievance |
| **MSR Date** | 09/22/2023 | **Location** | WIL   CLINICAL SERVICES-YARD OFFICE |
| **HSE/GAL/CELL** | 02-D -17 | **Staff** | CRARY, LORI L., Office Coordinator |

Grievance office received grievance #21-0821 regarding trust fund, dated 3/11/2021.  Forward to counselor for response.

Creditor Exhibit U

Stolen stimulus Money

**Print Date**  3/16/2021

Credit Exhibit K

#33 contradicts this / Not follow

Not follow

31. Offenders shall be allowed to make collect phone calls to relatives, friends, or attorneys. Third party calls are not allowed. Telephone calls shall be limited to twenty (20) minutes in duration and access shall be available only after 7:15 a.m. count and until 9:30 p.m. Calls in segregation shall be limited to 15 minutes in duration, if in grade. Calls must not interfere with regular institutional routines and will be terminated during counts.

In order to use the offender telephone system in the housing units, you must submit a Telephone Number Request Sheet with no more than 30 numbers to the Counselor. In addition, you must use your personal identification number, when prompted, after dialing a number. Telephone calls are subject to monitoring and recording at any time.

You may place calls to a licensed attorney by checking the legal call box on the Telephone Number Request Sheet, provided Western Illinois Correctional Center is able to verify that number as belonging to a licensed attorney, the call will not be monitored and not be recorded.

If you experience difficulty with the offender telephone system, you can process an Offender Telephone System Trouble Report form, which will be forwarded to the Telephone System Administrator.

Friends and family of offenders may call 1-800-844-6591 for customer service, rate information, or any other questions.

32. Offenders are prohibited from using Correctional Center telephones.

33. Offenders are expected to be fully dressed (i.e., shoes/boots, shirt and pants, with belts buckled), when leaving the housing unit. Shirts must be fully buttoned to the second button down from the collar and tucked in. Pants should be worn at waist level. Offenders going to assignments and/or entering the Visiting Room for a visit will be required to wear a state blue buttoned shirt and blue pants.

34. When offenders are in their housing units, including dayroom activity, informal dress is authorized. Bathrobes, gym shorts and tee shirts are permissible. No towels or underwear will be worn in the dayroom, or on the landing areas. Shoes and/or shower shoes must be worn any time an offender leaves his room. No plastic type headgear will be worn out of the housing unit.

35. Offenders are required to wear a state blue shirt as well as state blue pants on their respective assignments. The exception will be those offenders assigned to Dietary, Commissary, Maintenance, Clothing, Laundry, Warehouse and other assignments requiring jumpsuits. State blue clothing is not to be worn under jumpsuits. Religious clothing and/or headwear cannot be worn except in the cell or the Chapel.

36. No state clothing will be altered from its original state.

37. Offenders entering Dietary for meals are required to wear state issued blue pants and shirts. No tank tops or shirts without sleeves will be allowed.

38. Offender workers will be allowed to wear their issued jumpsuits when on duty. Industry workers will be allowed to wear their work clothes when reporting to the Dining Room when they are on duty.

39. One pre-packaged items such as potato chips or cookies may be taken from the serving line back to your living unit if you choose not to eat those items in the dining room. Food items are to be wrapped and sealed when being stored in an offender's room. NO FRUIT, MILK, OR OTHER BEVERAGES MAY BE TAKEN FROM THE DINING ROOM.

(Inmate Orientation Manual
avant Jil 2020)

OERCP101  ILLINOIS DEPARTMENT OF CORRECTIONS     PAGE: 100
Offender 360
PRINTED SCHED. CALL PASS 

RUN DATE: 6/2/2020

RUN TIME: 5:21:49 PM

ILLINOIS DEPARTMENT OF CORRECTIONS - OTS
OFFENDER CALL PASS ISSUED

IDOC: M10655 WALKER,MARK         Minimum          A      Low          WIL:WIL:04:D:19:L 1

PRIMARY: UNASSIGNED , PARTICIPANT-WIL710010009

DESTINATION: HOUSE 04              DAY: 6/3/2020     AT: 9:20:00 AM

PASS TYPE: TELEPSYCH

COMMENTS: MANDATORY
TELEPSYCH: IN-HOUSE (DR. MERMIGAS)

AUTHORIZED: Aubri Shawgo

CELL HOUSE SIGNATURE:    _____        TIME: ____:____

DESTINATION SIGNATURE:    _____        TIME: ____:____

EXIT SIGNATURE:    _____        TIME: ____:____

RETURN SIGNATURE:    _____        TIME: ____:____

Plaintiff
Exhibit
L

Creditor
Exhibit
M

filed as part of the Plan Supplement. The TDP sets out the criteria for determining the eligibility and qualification for allowance of each opioid-related personal injury claim, as well as the evidence that the claims administrator may consider in making such determinations.

Approximately 130,000 opioid-related personal injury victims filed claims in the Chapter 11 Cases. The TDP provides a fair and expeditious process for evaluating those claims and providing holders of qualifying opioid-related personal injury claims with compensation. The TDP resolves opioid-related personal injury claims in a way that is equitable and reasonable given the finite amount of funds available to satisfy such claims. To participate in the TDP process, holders of opioid-related personal injury claims will complete and submit a claim form and an executed HIPAA form (each in the form attached to the TDP) to the claims administrator.[47] Holders of opioid-related personal injury claims who (i) submitted a Proof of Claim in the Chapter 11 Cases, and (ii) show that they or their injured family member(s) were prescribed and used a Purdue opioid listed on Exhibit A to the TDP, are eligible to receive a settlement payment from the PI Trust. Claimants who used only opioids manufactured by companies other than the Debtors will not be eligible or qualified to receive a settlement payment from the PI Trust. The TDP outlines several ways that individuals can show their eligibility, including through prescription or pharmacy records. It also provides a way for holders of opioid-related personal injury claims who cannot retrieve their prescription or pharmacy records to show that they are eligible to receive a settlement payment from the PI Trust. For a complete description of qualifying Purdue products and evidentiary requirements, you should carefully review the TDP, which will be included in the Plan Supplement filed with the Bankruptcy Court and served on applicable parties.

The claims administrator will value eligible opioid-related personal injury claims based on a scoring grid that uses objective metrics to assign a certain number of points to different compensable injuries. The points will ultimately be translated into dollar amounts, to determine the settlement amount payable for specific compensable injuries.

The scoring grid, detailed in the TDP, was developed using statistical sampling and modeling performed by financial analysts and experts, based on scoring grids developed in comparable cases, and with unique customization based on the injuries suffered by victims of Purdue's opioid products and activities related thereto. The chart below summarizes the scoring grid:

---

[47] Executing a HIPAA form will allow the claims administrator to obtain the medical records of the holder of an opioid-related personal injury claim directly. This will allow the claims administrator to investigate the validity of claims and prevent fraud while reducing the burden on individual claimants. At no point will the claims administrator share claimants' confidential health information with any other person for any other purpose.

Creditors Exhibit N

R 8021

ILLINOIS DEPARTMENT OF CORRECTIONS

M 1011 0751

## Authorization for Release of Offender Medical Health Information

This Authorization may not be used for mental health or substance abuse treatment information (use form DOC 0240)

The Department of Corrections will not condition treatment on this authorization. If authorizing disclosure to persons or organizations that are not health plans, covered health care providers or health care clearinghouses subject to federal health information privacy laws, they may further disclose the protected health information. However, genetic testing or HIV/AIDS information disclosed pursuant to this authorization may not be further disclosed except pursuant to authorization.

I hereby authorize ___Great Falls Clinic___ to release the following information: (State
                                              Facility
specific medical health information to be disclosed including date(s) or date range)

— All medical records from 1988 - 1993
→ All medical records from Aug 2001 - 2004
✗✗ There should be records from 1969 - 2004. If no
records exist at all need verification of this — Or what does exist   and records
                                                                        themselves

☒ At Request of Offender and/or: __for existing Court case__    S9.N# 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
                                   Purpose of disclosure

from the records of _____    __Mark Edward Walker__
                      ID#           Print Offender's Name

to: ☒ Self   ☐ Authorized Attorney   ☐ Health Care Facility   ☐ Other: _____

Name: __Mark Walker   M10655__                    ( D.O.B. )
         Print Name

Address: __2500 Route 99 S.__
           Street Address
__Mt. Sterling__          __Ill__    __62353__
   City                     State      Zip Code

I hereby release and hold harmless, the State of Illinois, the Department of Corrections, and its employees from any liability which may occur as a result of the disclosure or dissemination of the records or information contained therein resulting from the access permitted to the authorized attorney, health care facility, other as specified, or self. Records disclosed may contain confidential medical information including HIV disease information. I understand that I have the right to revoke this authorization at any time prior to disclosure by giving written notice (witnessed by someone who knows my identity) to the prison Facility Privacy Officer.

Mailed    AUG 04 2020

**Expiration:** This authorization will expire (complete one):

☐   45 days from date of signature

☒   Upon the occurrence of the following event (must relate to the individual or purpose of the authorization):
__Written withdrawal from me__

**Signature:**

_____          ___Self___              __7/17/2020__
Signature of Offender or Person Authorized to Consent      Relationship          Date

Give Offender a copy if DOC made the request for release.

Distribution:   Offender's Medical File

OFFICIAL SEAL
JENNA ZOLLER    Printed on Recycled Paper
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 04-19-2023

7/17/2020
Jenna Zoller

DOC 0241 (Rev. 01/2005)

Date: August 4, 2020

Regarding Patient: Walker,Mark

M10110751
R8021

To Whom It May Concern,

We cannot process your request for copies of health information for one or more of the following reasons.

_____ The patient cannot be identified has having been a Great Falls Clinic patient.
Please provide additional information such as date of birth or other identifying information.

_____ The patient was not seen during the time period of _____ as requested.

_____ The patient was not seen at the facility or by the provider that was requested.

✳ The records requested have been destroyed as allowed by state and/or federal statute.

_____ Our records indicate that the records requested were already sent on _____.

_____ The authorization signed by the patient appears to have been altered.
Correction tape or fluid voids the authorization.

_____ The authorization is electronically signed.  Great Falls Clinic requires an original signature
in order to assist in confirming the patient's identity.

_____ The authorization does not meet the requirements of a valid authorization as defined by HIPAA
Privacy regulations (164.508(c)).  Please have the attached/enclosed authorization FULLY
completed by the patient or their legal representative.

_____ The request cannot be completed without one or more of the following documents

        _____ Copy of death certificate and/or letter of appointment of personal representative

        _____ Copy of Healthcare Durable Power of Attorney

        _____ Other papers indicating the right to obtain medical records

        _____ Other: _____

Please contact the Health Information Management Department at the Great Falls Clinic at 406-771-3106 with
any questions.

Thank you,

Great Falls Clinic Health Information Management Release of Information

AUG 04 2020

*Exhibit P*

*Fax 406-771-3047*

ILLINOIS DEPARTMENT OF CORRECTIONS

## Authorization for Release of Offender Medical Health Information

**This Authorization may not be used for mental health or substance abuse treatment information (use form DOC 0240)**

The Department of Corrections will not condition treatment on this authorization. If authorizing disclosure to persons or organizations that are not health plans, covered health care providers or health care clearinghouses subject to federal health information privacy laws, they may further disclose the protected health information. However, genetic testing or HIV/AIDS information disclosed pursuant to this authorization may not be further disclosed except pursuant to authorization.

I hereby authorize _Great Falls Clinic_ to release the following information: (State specific medical health information to be disclosed including date(s) or date range)
_____ Facility

_89-90-91 Medical Records_
_____
_____
_____
_____
_____

☑ At Request of Offender and/or: _C.O.C.    Dr. Trausswyl_    Purpose of disclosure

from the records of _M10655_    _Mark Walker_    D.O.B. _3/8/69_
                        ID#            Print Offender's Name

to: ☐ Self    ☑ Authorized Attorney    ☐ Health Care Facility    ☐ Other: _____

Name: _____
                        Print Name

Address: _____
                        Street Address

_____    _____    _____
        City                    State                Zip Code

I hereby release and hold harmless, the State of Illinois, the Department of Corrections, and its employees from any liability which may occur as a result of the disclosure or dissemination of the records or information contained therein resulting from the access permitted to the authorized attorney, health care facility, other as specified, or self. Records disclosed may contain confidential medical information including HIV disease information. I understand that I have the right to revoke this authorization at any time prior to disclosure by giving written notice (witnessed by someone who knows my identity) to the prison Facility Privacy Officer.

**Expiration:** This authorization will expire (complete one):

☐    45 days from date of signature

☐    Upon the occurrence of the following event (must relate to the individual or purpose of the authorization): _____

**Signature:**

_Mark Walker_    _Self_    _5-28-20_
Signature of Offender or Parson Authorized to Consent    Relationship    Date

**Give Offender a copy if DOC made the request for release.**

Distribution:    Offender's Medical File

*Printed on Recycled Paper*    DOC 0241 (Rev. 01/2005)



### Wexford Health
SOURCES INCORPORATED

## FAX COVER SHEET

**DATE:** Great Falls Clinic          ATTN:
Crystal L.

**TO:**

**FAX #:** 406 771 3047

**FROM:** Crawford SA          Walker
M 10655

**WESTERN ILLINOIS CORRECTIONAL CENTER**
**2500 ROUTE 99 SOUTH**          Return to Email
**MT. STERLING, IL 62353**
Crystal.crawford @
illinois.gov.

**PHONE: 217-773-4441**
**FAX: 217-773-2365**

## NUMBER OF PAGES BEING TRANSMITTED:

---

**CONFIDENTIALITY NOTICE: CONFIDENTIAL HEALTH INFORMATION ENCLOSED**
    Protected Health Information (PHI) is personal sensitive information related to a person's health care. Faxed PHI is sent only after appropriate authorization from the patient or circumstances that do not require patient authorization. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Re-disclosure without additional patient consent or a permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

**IMPORTANT WARNING:** This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law.

If you are not the intended recipient, employee or agent responsible for delivering this information to the intended recipient, you are hereby notified that disclosures, copying or distribution is Strictly Prohibited. If you have received this message by error, please notify us immediately and destroy the related message.

This communication is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender. Thank you.

501 HOLIDAY DRIVE | FOSTER PLAZA FOUR | PITTSBURGH, PA  15220 | P: 412-937-8590 | F: 412-937-8599 | WWW.WEXFORDHEALTH.COM

CLINIC


Creditor
Exhibit
R

# GREAT FALLS CLINIC, LLP

**MEDICAL RECORDS**
1400 29TH Street South
Great Falls, MT 59405
(406) 771-3106

## FAX COVER SHEET

### FAX NUMBER (406) 771-3047

Date: 6/15/2020

To: Western Illinois Correctional Center

Fax Number: 217.773.2365

Attn: Crystal Crawford / Dr. Trusewyel

From: Crystal L. / HIM Dept ☺

Total number of pages, including this cover page: 3p

If you do not receive any of the following pages, please call our office at (406)771-3106

Comments: Records 1989-1990 w/ GFC
*we do not have records for
that time frame. Sorry
☺ Have a Great Day!

Confidentiality Notice: This facsimile transmission is intended only for the address named above. It contains information that is privileged, confidential or otherwise protected from use and disclosure. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying or dissemination of this transmission or the taking of any action in reliance on its contents or other use is strictly prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for it to be returned to us. Thank you for your cooperation.

M.W.


FAXED
CU



Creditor
Exhibit
S

### GENERAL INTRODUCTION

Welcome to Western Illinois Correctional Center. This facility was newly constructed and opened during April, 1989. The basic design is similar to the designs of Shawnee, Danville, and Hill Correctional Centers with the concept of a fewer number of buildings combining many programs and operational issues under one roof, but maintaining their unique and separate identity.

This manual has been prepared for you. It will serve as a guideline to the rules and regulations, organization, Programs and Services of this institution. Your first responsibility is to read it in its entirety. You should be familiar with its contents. Your next responsibility is to follow the established rules thereby creating a safe and secure environment. Such an environment will allow each of you to make choices for a productive stay with us. Offenders are assigned to this facility with the expectation that they do not need the rigid security requirements of a maximum-security facility. It is your responsibility to avoid disruptive and negative behavior.

It is the intention of the staff to provide a secure and humane institutional environment based upon understanding and fairness. You can make a contribution to a better living situation by avoiding conflicts with other offenders and staff, by taking care of your authorized property and by being conscientious on your work assignment. Program opportunities and a variety of leisure time activities are available for your participation.

If you begin experiencing problems of any nature, you should talk to your housing unit officer, your counselor, your assignment supervisor, the shift commander or some other appropriate staff person in an attempt to resolve the problem.

Justin Hammers, Warden
Western Illinois Correctional Center

Revised 07/2020



-2-   Inmate Orientation Manual
(exerpt)



**WESTERN ILLINOIS CORRECTIONAL CENTER**
**ADMINISTRATION**
**EFFECTIVE JULY, 2020**

**SPSA – WARDEN**
**JUSTIN HAMMERS**

**ADMINISTRATIVE ASSISTANT II**
**DANIELLE HAYES**

**EXECUTIVE SECRETARY III**
**LISA BLOOMFIELD**

**ADMINISTRATIVE ASSISTANT I**
**VACANT**

**INTERNAL AFFAIRS LT J. MAHER**
**INTEL C/O RICHMILLER, C/O**
**RUFFCORN, C/O MOON**

**HUMAN RESOURCES REPRESENTATIVE**
**EMILY LERCH**

**SPSA – A/W PROGRAMS**
**BRITTANY GREENE**

**SPSA – A/W OPERATIONS**
**GLENDAL FRENCH**

**PSA – BUSINESS ADMINISTRATOR**
**KIMBERLY WATSON**

**SPSA – HCU**
**ADMINISTRATOR**
**KATHY ASHCRAFT**

**CLINICAL SERVICES**
**SUPERVISOR**
**JULIA VINCENT**

**EXECUTIVE SECRETARY I**
**ANGELA MCKITTRICK**

**PSA – CLAYTON WORK CAMP**
**VACANT**

**OFFICE COORDINATOR**
**NICOLE BENJAMIN**

**DIRECTOR OF NURSING**
**JENNY HAYS**

**CORR LEISURE ACTIVITY**
**SPECIALIST 4 VACANT**

**SHIFT SUPERVISORS :**
**L. FUNDEL, M. CAWTHON,**
**S. BRADSHAW, W.**
**THOMPSON, G. GURSKI, P.**
**LAWSON**

**LAUNDRY MANAGER I**
**SUSAN SURRATT**

**BUSINESS ADMIN SPEC.**
**JENNIFER SNYDER**

**BARBER**
**JIM PRATT**

**MH ADMINISTRATOR**
**PAMELA HEWITT-MEYER**

**FOOD SRVC PROG. MGR**
**TODD BOLTON**

**PSA – INDUSTRIES SUPT.**
**HEIDI SCOTT**

**ACCOUNTANT ADVANCED**
**CINDY SHELTS**

**CHAPLAIN II**
**BRANDON LLEWELLYN**

**CORR IDENTIFICATION**
**SUPV – EDDIE DURELL**

**STATIONARY ENG–CHIEF**
**JAMES ROBINSON**

**TRAINING**
**COORDINATOR**
**LT STEVE RYAN**

**ACCOUNTANT**
**LAURA LANE**

**EDUCATION FACILITY**
**ADMIN – MICHELLE MOELLER**

**MAILROOM OFFICE**
**ADMIN III JILL**
**TREADWAY**

**SUPPLY SUPERVISOR III**
**ROGER BARNETT**

Creditor
Exhibit
1



# Western Illinois Correctional Center

Exhibit
U

# Offender Orientation Manual

Mt. Sterling Illinois

- 1 -

GENERAL INTRODUCTION

Welcome to Western Illinois Correctional Center. This facility was newly constructed and opened during April, 1989. The basic design is similar to the designs of Shawnee, Danville, and Hill Correctional Centers with the concept of a fewer number of buildings combining many programs and operational issues under one roof, but maintaining their unique and separate identity.

This manual has been prepared for you. It will serve as a guideline to the rules and regulations, organization, Programs and Services of this institution. Your first responsibility is to follow the established rules and regulations, organization, Programs and Services of this institution. Your first responsibility is to follow the established areas thereby creating a safe and secure environment. Such an environment will allow each of you to make choices for a productive stay with us. Offenders are assigned to this facility with the expectation that they do not meet the rigid security requirements of a maximum-security facility. It is your responsibility to avoid disruptive and negative behavior.

It is the intention of the staff to provide a secure and humane institutional environment based upon understanding and fairness. You can make a contribution to a better living situation by avoiding conflicts with other offenders and staff, by taking care of your authorized property and by being conscientious on your work assignment. Program opportunities and a variety of leisure time activities are available for your participation.

If you begin experiencing problems of any nature, you should talk to your housing unit officer, your counselor, your assignment supervisor, the shift commander or some other appropriate staff person in an attempt to resolve the problem.

Brittany Greene, Warden
Western Illinois Correctional Center



Revised 07/2020





- 2 -

## TABLE OF CONTENTS

PAGE

I. General Introduction — 2
  A. Mission Statement — 5
  B. Department Goals — 5
  C. Classification — 5
  D. Institutional Placement — 5
  E. Orientation — 5

II. INSTITUTIONAL ORGANIZATION
  A. Table of Organization — 6
  B. Responsibility of Major Departments — 7

III. INSTITUTIONAL OPERATION
  A. New Admission Procedures — 9
  B. Offender Living Units — 9
  C. Schedules — 9
  D. Movement — 9
  E. Assignment — 9
  F. Rules and Regulations — 10
  G. Drug and Alcohol Testing of Offenders — 15
  H. Program Unit Hearing Procedures — 16
  I. Adjustment Committee Hearing Procedures — 16
  J. Personal Property/State Issue Clothing/Bed Linens — 16
  K. Personal Property Storage Boxes — 16
  L. Non-Smoking Policy — 17
  M. Thermal Wear — 17
  N. Offender Dress Out Clothing — 18

IV. INSTITUTIONAL PROGRAMS AND SERVICES
  A. Counseling — 18
  B. Leisure Time Activities — 19
  C. Library — 19
  D. Volunteer Programs — 22
  E. Work Programs — 22
  F. Education — 23
  G. Services
    1. Barber — 23
    2. Business Office/Trust Office — 24
    3. Commissary — 24
    4. Counseling Services — 25
    5. Crisis Intervention — 25

    6. Medical/Mental Health — 25
    7. Grievance Procedures — 26
    8. Laundry — 28
    9. Mail Services — 29
    10. Books and Magazines — 32
    11. Mail order — 32
    12. Notary Public — 33
    13. Chaplaincy — 33
    14. Record Office — 33
    15. Telephone Services — 34
    16. Visiting Privileges — 34
    17. Offender Business Ventures — 40
  H. Directions to the Western Illinois Correctional Center — 41
  I. Emergency Procedures — 42
  J. Americans with Disabilities Act (ADA) — 42
  K. Notification to Register with Selective Service — 43
  L. Fire Prevention — 43
  M. Renunciation Policy — 44
  N. Mandatory DNA Testing — 44
  O. Temporary Identification Card for Released Offenders — 44
  P. Recovery of the Cost of Incarceration — 45
  Q. International Transfer Requests — 45
  R. Sexual Abuse/Assault/Misconduct Prevention & Intervention — 46
  S. Prison Rape Elimination Act (PREA) — 47
  T. Certificate of Relief from Disabilities — 50
  U. Lockdown Hotline — 50
  V. Memorandum concerning DR504 changes — 51

- 3 -

- 4 -