Claimant, Claim No. 104998

Purdue Pharma LP Claims

C/O Advanced Legal Research Group

Claims@advancedlegalresearchgroup.com

FILED
U.S. BANKRUPTCY COURT
2021 MAY 17 P 03
S.D. OF N.Y.

IN THE UNITED STATES BANKRUBTCY COURT

SOUTHER DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA LP., et., al | Case No. 19-23649 RDD |
| Debtors | ( Jointly Administered ) |

# OBJECTION TO MULTI DISTRICT LITIGATION 2804 & DEPT. OF JUSTICE PAYMENTS WITH ELEMENTS FOR LEGITIMATE PRIORITY CLASS

## BY UNSECURED CREDITOR CLAIM No. 104998

### I.    CLAIMANT No. 104998

1.1     Comes Now, an individual Purdue Pharma Claimant, Claim No. 104998, a former patient of physicians targeted by the "Debtor" opioid marketing scheme. For administrative purposes, this *Objection to Multi District Litigation 2804 & Dept of Justice Payments with Elements for Legitimate Priority Class* proceedings will be administered thru Advanced Legal Research Group (ALRG) and their attorneys.

1.2     The Claimants name and personal health care information is federally protected, pursuant to confidentiality under the Health Insurance Portability Accountability Act (HIPPA). Pursuant to

protections of patients healthcare privacy and confidentiality under HIPAA, the Patient / Claimant No. 104998 will address his or her objections and concerns thru ALRG.

## II.    INTRODUCTION

2.1    The Debtor's Sales Representatives targeted Claimant 104998's physicians, who prescribed Oxycontin, Oxycodone ER, Oxycodone IR, Dilaudid, and Norco. The targeted physicians prescribed several thousand dosages of Debtors opioids to the Claimant;

  a.  for non-cancerous chronic pain,

  b.  for extensive periods of time,

  c.  with increasingly higher dosages, and,

  d.  consistently for over five years.

2.2    Several cities, counties, and states from around the country began filing law suits complaining that Purdue used deceptive marketing practices. Alleging that "Purdue, though greed and violation of the law, prioritized money over **the health and well-being of patients.**"[1]

2.3    In December 2017, over 2,000 government entity lawsuits were consolidated under Multidistrict Litigation ("MDL") 2804.[2] Almost all of the law suits were "*brought by Cities, counties, and states who have sued the major drug manufacturers of prescription opioids, for under a whole lot of **theories and statutes**. In a quick summary that they sold and marketed these pills aggressively as being safe and effective for treating long term pain when in fact they are*

---

The United States Dept. of Justice / Justice News Release / Office of Public Affairs Wednesday October 21st, 2020 paragraph 3
Columbia Business law Review , April 2020
https://journals.library.columbia.edu/index.php/CBLR/announcement/view/298

*highly addictive*."[3] "Unfortunately, Purdue's reckless actions and violation of the law senselessly risked **patients** health and well-being."[4]

2.4 The single leading ***theory*** of litigation brought by thousands *Governmental Plaintiffs* in their pleadings (pursuant to MDL 2804) is that Purdue Pharma LP's *Sales Representatives* **targeted physicians and patients**. "Plaintiffs allege that the manufacturers of prescription opioids grossly misrepresented the risks of long-term use of those drugs for persons with chronic pain." [U.S. District Court Northern District Ohio MDL 2804][5]

2.5 By early September over 2,600 MDL 2804 *Governmental Plaintiffs* agreed to a $13 billion dollar settlement with Purdue Pharma LP. The settlement negotiations triggered the Debtors petition for relief under Chapter 11 (Case No. 19-23649 RDD), placing individual Purdue Pharma Claimants at a disadvantage for recovering financial restitution from the Debtor.

### III.    OBJECTIONS & CONCERNS

3.1 The proposed reorganization plan is not **fair and equitable** to the former individual patients who were targeted by Purdue. Because the negotiations between the MDL 2804 Plaintiffs and the U.S. Department of Justice (DOJ) with Purdue failed to take into proper consideration the facts and laws relating to the particular matter.

3.2 The settlement negotiations between Debtors representatives, the thousands of MDL 2804 Government Plaintiffs, and the U.S. Dept of Justice were not concluded in **good faith**. The MDL 2804 Plaintiffs exploited the vulnerable individuals who were targeted by Purdue's marketing

---

The Judge As A Problem Solver Harvard Law Scholl In The Community https://www.youtube.com/watch?v=SjNGgswToOc
Inspector General for Investigations / U.S. Dept. of Health & Human Services
https://www.ohnd.uscourts.gov/mdl-2804

scheme. For the sole purpose of obtaining a settlement award which intentionally excludes the actual individuals directly harmed by Purdue, as defined in their pleadings.

3.3    The MDL 2804 Plaintiffs settlements with Purdue for 13 billion dollars, forced Purdue Pharma into Chapter 11 Bankruptcy, and where the DOJ could leverage control of the Debtors remaining assets. Manipulating control of approximately twenty one billion dollars away from the legitimate individual Claimants who were harmed is an **abuse of power**.

3.4    The MDL 2804 Governmental Plaintiffs and the DOJ have worked together to bring about particular result. To force Debtor into bankruptcy, where they would benefit as a priority class.

## IV.    FACTS ABOUT PURDUE PHARMA BANKRUPTCY

4.1    Throughout the entire opioid litigation process, governmental entities have continued to demonstrate a callus disregard for the citizens which those government entities allegedly serve. The MDL 2804 and DOJ settlement negotiations with Debtor is **unprecedented**. Never before in U.S. history have governmental entities reaped enormous financial gains thru fines and settlements agreements, while excluding the individual citizens with legitimate causation from negotiations.

4.2    While the Courts continue to approve demonstrative monthly fee statements for professional services and multi-billion dollar demands by government entities are settled, the question of how much money will be available or accessible valid individual Purdue Pharma Claimants remains unknown.

4.3    Governmental entities have described a marketing scheme which targeted physicians and their patients in their original pleadings and complaints. Which creates a necessity for the Court to

establish elements for valid Claimants. More specifically, establish a *"unique priority class"* of

made up of the former patients which Purdue's Sales Representatives targeted in the first place.

## V.   LEGITIMATE BASIS FOR CLAIMS

5.1      The basis for litigation is the fact that the Sackler family and or Purdue Pharma LP Sales

Representatives mislead physicians and their patients about dangers of Oxycontin. The Debtors

prescription opioid marketing strategy exploited physicians and patients, not government entities.

1. The Defendants Sales Representatives targeted physicians and patients.

2. Persuading physicians to overprescribe Debtors opioids to patients for patients with non-

    cancerous moderate chronic pain;

    a.  Prescribing powerful opioids for long—term use,

    b.  With increasingly higher dosages,

    c.  For exceedingly longer periods of time,

    d.  To increase sales and profits, while exploiting patients for financial gain.

The above aforementioned essential elements demonstrates genuine issues of material fact for

causation, effecting individual patients targeted by the Debtor, and not governmental entities.

5.2      The MDL 2804 Governmental Plaintiffs and DOJ's formal argument consisting of a

major and a minor premises and their conclusions are **syllogistic**. A strong association is not proof

of a valid claim. The governmental entities theories of causation are consistent with **syllogistic**

**logic**;

i.    That all horses have four legs

ii.   Animals with four legs are quadra-peds

iii.   Therefore all four legged animals are horses

A strong association is not proof of causation.

## VI.   FAILED POLICIES

6.1   Dr Richard Sackler's emails have been highly criticized in the media and by Governmental Plaintiffs. Where "Sackler blamed the victim." *We have to hammer abusers in every possible way. They are the culprits and the problem. They are reckless criminals.* [6]

6.2   Ironically, Sackler's unconscionable position on patients who had become either **dependent** on Purdue Pharma opioids is the expressed policy of MDL 2804 Governmental Plaintiffs and the DOJ. Sackler's emails plagiarize **governmental entities**, which have been *"hammering"* **opioid dependent patients** and labeling **opioid addicts** as *"culprits"* or *"reckless criminals"* for decades.

6.3   Even though the U.S. Dept. of Justice (and their counterparts) acknowledge that "opioid withdrawal is difficult, painful, and sometimes dangerous," and also that "people struggling to overcome addiction face challenges that can often seem unsurmountable." [7] The rules, laws, and policies continue to restrict or refuse access to Suboxone.

6.4   Suboxone is a drug approved by the FDA for "recovering opioid addicts to avoid or reduce withdrawal symptoms." [8] Suboxone contains Buprenorphine, which has been an effective treatment for opioid disorder treatment for over seventeen (17) years. It is the single leading effective solution to opioid withdrawal and the opioid epidemic. Under seven percent (%7) of U.S. physicians currently have the DEA

---

The People of The State of California vs. Purdue Pharma LP Case No. 19ST19045 pg. 16 paragraph 60 lines 23, 24, 25
U.S. Dept of Justice
U.S. Dept of Justice

"X-Waiver" required to prescribe Suboxone. Because Congress, the policies of Dept of Health & Human Services, and the Drug Enforcement Agency;

    a.   restrict the number of physicians, allowed to prescribe Suboxone, and,

    b.   restrict the number of patients the limited number of physicians are allowed to prescribe Suboxone.

The opioid epidemic has continued to grow and has continued to perpetuated for decades because of the rules, laws, and "failed policies" passed by legislative bodies such as Congress and related career politicians.

6.5     As far back as 2015, President Obama set a 90 day deadline for federal agencies to identify and remove barriers to Suboxone treatment.[9] Acknowledging that "prescription medication aimed at addressing a patient for opioid use disorder was forbidden."[10]

6.6     Less than a year later (2016), Kamala Harris filed a law suit against Indivior, the manufacturer of Suboxone, along with 34 other states (MDL 2804 litigants).[11] Attacking the manufacturer making Suboxone, which prevents opioid withdrawal from being difficult, painful, and sometimes dangerous.[12]

6.7     The DOJ's approach to addressing the opioid epidemic is to cash in and profit from it. By indicting the manufacturers of Suboxone, a drug which helps "people struggling to overcome addiction" ... and facing ... "challenges that can often seem insurmountable."[13]

6.8     The DOJ "Indicted Indivior for allegedly engaging in an illicit nationwide scheme to increase prescriptions of Suboxone." "Indivior Inc. and Indivior PLC agreed to pay a total of $600

---

[.] https://medmark.com/obama-weighs-suboxone-treatment-centers/
[0] https://www.huffpost.com/entry/obama-opioid-addiction-treatment_n_5627b3d6e4b0bce347034174
[1] https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-files-lawsuit-against-pharmaceutical-company
[2] U.S. Dept of Justice Public Affairs News Release July 11th, 2019
[3] U.S. Dept of Justice Public Affairs News Release July 11th, 2019

million to resolve criminal and civil liability associated with the marketing of opioid-addiction-treatment drug Suboxone. Together with a $1.4 billion resolution with Indivior's former parent, Rickett Benckiser Group PLC ( RB Group), announced in 2019." "The total resolution relating to the marketing of Suboxone is more than $2. Billion."[14]

6.9    In late 2019, the Trump administration sought to bypass Congress via Executive Order, enabling more doctors to prescribe Buprenorphine, a "move widely hailed by physicians with the head of the American College of Emergency Physicians."[15]

6.10    Finally, "the Biden (Harris) administration was criticized by physicians and law makers following reports that the new President would halt Trumps plan." Even though (if elected) the former Presidential Candidate Joe Biden criticized the prescribing rules and vowed to lift them if elected.

## VII.    LEGISLATIVE INTENT OF GOVERNMENTAL CLAIMS

7.1    The legislative intent of the **theories** and **statutes** utilized to levy approximately twenty one billion dollars away from individual claimants for governmental entities was intended for the individual public benefit. The legislative purpose of the theories and statutes exercised by governmental entities is supposed to be for the benefit of individuals, not the government. It was never the legislative intent of the Food, Drug, and Cosmetics Act, the Federal Anti-Kickback Statute, and or the False Claims Act to enable the Federal Government to leverage control billions of dollars away from its citizens in Bankruptcy court.

---

[4] U.S. Dept. of Justice Public Affairs Justice News July 24th, 2020
 https://www.justice.gov/opa/pr/indivior-solutions-pleads-guilty-felony-charge-and-indivior-entities-agree-pay-600-million
[5] https://www.washingtonpost.com/health/2021/01/27/biden-kills-buprenorphine-waiver/

## VIII.      SUMMATION OF OBJECTIONS

8.1      In a common law system, judges are obliged to make their rulings as consistent as reasonably as possible with previous judicial decisions on the same subject. By the U.S. Department of Justice's own additions, the agency has bragged about the fact that the settlement agreement against the Debtor is **unprecedented.**

8.2      "The largest penalties ever levied against a pharmaceutical manufacturer,"…a "fine of $3.544 billion and an additional $2 billion in criminal forfeiture." "Purdue has also agreed to a civil settlement in the amount of $2.8 billion to resolve its civil liability under the False Claims Act. Separately, the Sackler family agreed to pay $225 million in damages to resolve its False Claims Act liability."[16]

8.3      Additionally unprecedented is the "resolution with the company subject to the approval of by the bankruptcy court in the Southern District of New York. The company would cease to operate in its current form and would and would instead merge from bankruptcy as a **public benefit company** (PBC) owned by a trust or similar entity designed for the benefit of the American public, to function entirely in the public interest."

8.4      The negotiations between the Debtor and the governmental entities raises significant issues with significant substantive questions about the entire opioid litigation process. Beginning with MDL 2804 theories and statutes, and ending with the DOJ settlement which was rushed through for approval.

---

[6] U.S. Dept. of Justice Public Affairs Justice News Release October 21st, 2020 & November 24th, 2020
https://www.justice.gov/opa/pr/justice-department-announces-global-resolution-criminal-and-civil-investigations-opioid
https://www.justice.gov/opa/pr/opioid-manufacturer-purdue-pharma-pleads-guilty-fraud-and-kickback-conspiracies

1. The Chapter 11 reorganization plan is unprecedented, in that it is favorable to governmental entities, and unfair to the individual citizens with legitimate causation for a valid claim.

2. The legislative intent or purpose intended of the statutes which governmental plaintiffs base their claims. Specifically that when applied, has been used to exclude or deny the citizens whom were actually harmed and bar from settlement negotiations.

3. Constitutional questions of unlawful seizure of Debtors funds or assets which rightfully belong to the individual claimants who were actually harmed.

4. An *abuse of degression* by governmental entities, by failing to take into proper consideration the facts and laws relating to this particular matter. The arbitrary or unreasonable departure from precedent by governmental entities. The obvious over-reaching *"abuse of authority,"* originally condoned by the rules, regulations, and laws exercised by governmental entities, have been extended beyond what was initially conceived. Misuse of governmental power for financial gain, while exploiting its citizens.

Respectfully Submitted on this 10th day of May, 2021,

By; _____

Steve Dobelman, for Claimant No. 104998

Advanced Legal Research Group

Skyway Suite # 102                          P.O. Box 787

Paradise, CA 95969                          Paradise, CA 95967

(530) XXX-XXXX                              claims@advancedlegalresearchgroup.com

C
D

LAW OFFICE

May 10th, 2021

FILED
U.S. BANKRUPTCY COURT

2021 MAY 17 P 2 03

S.D. OF N.Y.

Clerk of the Court

U.S. Bankruptcy Court

Southern Dist. New York

300 Quarropas Street

White Plains, New York 10601-4140

Re:     Purdue Pharma LP Case No. 19-23649 RDD

U.S. Certified Mail # 7020 0090 0001 6412 5607

Dear Clerk of the Court,

Enclosed is Purdue Pharma Claimant No. 104998's "Objections To Multi District Litigation 2804 and U.S. Dept of Justice Payments With Elements For Legitimate Priority Class." Please file appropriately.

Respectfully,

Steve Dobelman

Steve Dobelman,

Litigation & Discovery Team

Cc:     File

Steve Dobelman                                                     claims@advancedlegalresearchgroup.com

May 10th, 2021

FILED
U.S. BANKRUPTCY COURT

2021 MAY 17  P 2 03

S.D. OF N.Y.

Prime Clerk, Purdue Pharma Claims

Grand Central Station

P.O. Box 4850

New York, NY 10163-4850

Re;      **NOTICE OF CHANGE OF ADDRESS & CLAIMS ADMINISTRATOR CLAIM NO. 104998**

Dear Prime Clerk

The purpose of this notice is to inform you of the following;

1.  Amended legal authority for Purdue Pharma Claim No. 104998
2.  For administrative purposes of Claim No. 104998, all legal notices, responses, and pleadings, settlement offers, and financial settlements involving Purdue Pharma Claim No. 104998 will be addressed to and managed by Advanced Legal Research Group.
3.  That all legal authority for this claim, represented by the Law Offices of Hofker & Associates, will be addressed and directed to Advanced Legal Research Group.

| **Previous Address:** | **Change of Address:** | |
| --- | --- | --- |
| Hofker & Associates | Advanced Legal Research Group | |
| 6411 Ella Lee Lane | P.O. Box 787 | |
| Houston, Texas 77057 | Paradise, California 95967 | |
| (713) 266-0070 | (530) XXX-XXXX | (supplied later date) |
| | claims@advancedlegalresearchgroup.com | |

Sincerely,

Steve Dobelman,

Cc:      U.S. Bankruptcy Court Southern District Of New York

Law Offices of Hofker & Associates

Steve Dobelman                Advanced Legal Research Group                Litigation & Discovery

Claimant, Claim No. 104998

Purdue Pharma LP Claims

C/O Advanced Legal Research Group

Claims@advancedlegalresearchgroup.com

IN THE UNITED STATES BANKRUBTCY COURT

SOUTHER DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA LP., et., al | Case No. 19-23649 RDD |
| Debtors | ( Jointly Administered ) |

## OBJECTION TO MULTI DISTRICT LITIGATION 2804 & DEPT. OF JUSTICE PAYMENTS WITH ELEMENTS FOR LEGITIMATE PRIORITY CLASS

### BY UNSECURED CREDITOR CLAIM No. 104998

### I.   CLAIMANT No. 104998

1.1     Comes Now, an individual Purdue Pharma Claimant, Claim No. 104998, a former patient of physicians targeted by the "Debtor" opioid marketing scheme. For administrative purposes, this *Objection to Multi District Litigation 2804 & Dept of Justice Payments with Elements for Legitimate Priority Class* proceedings will be administered thru Advanced Legal Research Group (ALRG) and their attorneys.

1.2     The Claimants name and personal health care information is federally protected, pursuant to confidentiality under the Health Insurance Portability Accountability Act (HIPPA). Pursuant to

protections of patients healthcare privacy and confidentiality under HIPAA, the Patient / Claimant

No. 104998 will address his or her objections and concerns thru ALRG.

## II.    INTRODUCTION

2.1    The Debtor's Sales Representatives targeted Claimant 104998's physicians, who

prescribed Oxycontin, Oxycodone ER, Oxycodone IR, Dilaudid, and Norco. The targeted

physicians prescribed several thousand dosages of Debtors opioids to the Claimant;

    a.   for non-cancerous chronic pain,

    b.   for extensive periods of time,

    c.   with increasingly higher dosages, and,

    d.   consistently for over five years.

2.2    Several cities, counties, and states from around the country began filing law suits

complaining that Purdue used deceptive marketing practices. Alleging that "Purdue, though greed

and violation of the law, prioritized money over **the health and well-being of patients.**"[1]

2.3    In December 2017, over 2,000 government entity lawsuits were consolidated under

Multidistrict Litigation ("MDL") 2804.[2] Almost all of the law suits were "*brought by Cities,*

*counties, and states who have sued the major drug manufacturers of prescription opioids, for*

*under a whole lot of **theories and statutes**. In a quick summary that they sold and marketed these*

*pills aggressively as being safe and effective for treating long term pain when in fact they are*

---

The United States Dept. of Justice / Justice News Release / Office of Public Affairs Wednesday October 21st, 2020 paragraph 3
Columbia Business law Review , April 2020
https://journals.library.columbia.edu/index.php/CBLR/announcement/view/298

*highly addictive*."[3] "Unfortunately, Purdue's reckless actions and violation of the law senselessly

risked **patients** health and well-being."[4]

2.4     The single leading *theory* of litigation brought by thousands *Governmental Plaintiffs* in

their pleadings (pursuant to MDL 2804) is that Purdue Pharma LP's *Sales Representatives*

**targeted physicians and patients**. "Plaintiffs allege that the manufacturers of prescription opioids

grossly misrepresented the risks of long-term use of those drugs for persons with chronic pain."

[U.S. District Court Northern District Ohio MDL 2804][5]

2.5     By early September over 2,600 MDL 2804 *Governmental Plaintiffs* agreed to a $13

billion dollar settlement with Purdue Pharma LP. The settlement negotiations triggered the Debtors

petition for relief under Chapter 11 (Case No. 19-23649 RDD), placing individual Purdue Pharma

Claimants at a disadvantage for recovering financial restitution from the Debtor.

### III.     OBJECTIONS & CONCERNS

3.1     The proposed reorganization plan is not **fair and equitable** to the former individual

patients who were targeted by Purdue. Because the negotiations between the MDL 2804 Plaintiffs

and the U.S. Department of Justice (DOJ) with Purdue failed to take into proper consideration the

facts and laws relating to the particular matter.

3.2     The settlement negotiations between Debtors representatives, the thousands of MDL 2804

Government Plaintiffs, and the U.S. Dept of Justice were not concluded in **good faith**. The MDL

2804 Plaintiffs exploited the vulnerable individuals who were targeted by Purdue's marketing

---

The Judge As A Problem Solver Harvard Law Scholl In The Community https://www.youtube.com/watch?v=SjNGgswToOc
Inspector General for Investigations / U.S. Dept. of Health & Human Services
https://www.ohnd.uscourts.gov/mdl-2804

scheme. For the sole purpose of obtaining a settlement award which intentionally excludes the actual individuals directly harmed by Purdue, as defined in their pleadings.

3.3    The MDL 2804 Plaintiffs settlements with Purdue for 13 billion dollars, forced Purdue Pharma into Chapter 11 Bankruptcy, and where the DOJ could leverage control of the Debtors remaining assets. Manipulating control of approximately twenty one billion dollars away from the legitimate individual Claimants who were harmed is an **abuse of power**.

3.4    The MDL 2804 Governmental Plaintiffs and the DOJ have worked together to bring about particular result. To force Debtor into bankruptcy, where they would benefit as a priority class.

## IV.    FACTS ABOUT PURDUE PHARMA BANKRUPTCY

4.1    Throughout the entire opioid litigation process, governmental entities have continued to demonstrate a callus disregard for the citizens which those government entities allegedly serve. The MDL 2804 and DOJ settlement negotiations with Debtor is **unprecedented**. Never before in U.S. history have governmental entities reaped enormous financial gains thru fines and settlements agreements, while excluding the individual citizens with legitimate causation from negotiations.

4.2    While the Courts continue to approve demonstrative monthly fee statements for professional services and multi-billion dollar demands by government entities are settled, the question of how much money will be available or accessible valid individual Purdue Pharma Claimants remains unknown.

4.3    Governmental entities have described a marketing scheme which targeted physicians and their patients in their original pleadings and complaints. Which creates a necessity for the Court to

establish elements for valid Claimants. More specifically, establish a *"unique priority class"* of

made up of the former patients which Purdue's Sales Representatives targeted in the first place.

## V.   LEGITIMATE BASIS FOR CLAIMS

5.1      The basis for litigation is the fact that the Sackler family and or Purdue Pharma LP Sales

Representatives mislead physicians and their patients about dangers of Oxycontin. The Debtors

prescription opioid marketing strategy exploited physicians and patients, not government entities.

1. The Defendants Sales Representatives targeted physicians and patients.

2. Persuading physicians to overprescribe Debtors opioids to patients for patients with non-

    cancerous moderate chronic pain;

    a. Prescribing powerful opioids for long—term use,

    b. With increasingly higher dosages,

    c. For exceedingly longer periods of time,

    d. To increase sales and profits, while exploiting patients for financial gain.

The above aforementioned essential elements demonstrates genuine issues of material fact for

causation, effecting individual patients targeted by the Debtor, and not governmental entities.

5.2      The MDL 2804 Governmental Plaintiffs and DOJ's formal argument consisting of a

major and a minor premises and their conclusions are **syllogistic**. A strong association is not proof

of a valid claim. The governmental entities theories of causation are consistent with **syllogistic**

**logic**;

i.    That all horses have four legs

ii.   Animals with four legs are quadra-peds

iii.    Therefore all four legged animals are horses

A strong association is not proof of causation.

## VI.    FAILED POLICIES

6.1    Dr Richard Sackler's emails have been highly criticized in the media and by Governmental Plaintiffs. Where "Sackler blamed the victim." *"We have to hammer abusers in every possible way. They are the culprits and the problem. They are reckless criminals."*[6]

6.2    Ironically, Sackler's unconscionable position on patients who had become either **dependent** on Purdue Pharma opioids is the expressed policy of MDL 2804 Governmental Plaintiffs and the DOJ. Sackler's emails plagiarize **governmental entities**, which have been *"hammering"* **opioid dependent patients** and labeling **opioid addicts** as *"culprits"* or *"reckless criminals"* for decades.

6.3    Even though the U.S. Dept. of Justice (and their counterparts) acknowledge that "opioid withdrawal is difficult, painful, and sometimes dangerous," and also that "people struggling to overcome addiction face challenges that can often seem unsurmountable."[7] The rules, laws, and policies continue to restrict or refuse access to Suboxone.

6.4    Suboxone is a drug approved by the FDA for "recovering opioid addicts to avoid or reduce withdrawal symptoms."[8] Suboxone contains Buprenorphine, which has been an effective treatment for opioid disorder treatment for over seventeen (17) years. It is the single leading effective solution to opioid withdrawal and the opioid epidemic. Under seven percent (%7) of U.S. physicians currently have the DEA

---

The People of The State of California vs. Purdue Pharma LP Case No. 19ST19045 pg. 16 paragraph 60 lines 23, 24, 25
U.S. Dept of Justice
U.S. Dept of Justice

"X-Waiver" required to prescribe Suboxone. Because Congress, the policies of Dept of Health & Human Services, and the Drug Enforcement Agency;

    a. restrict the number of physicians, allowed to prescribe Suboxone, and,

    b. restrict the number of patients the limited number of physicians are allowed to prescribe Suboxone.

The opioid epidemic has continued to grow and has continued to perpetuated for decades because of the rules, laws, and "failed policies" passed by legislative bodies such as Congress and related career politicians.

6.5    As far back as 2015, President Obama set a 90 day deadline for federal agencies to identify and remove barriers to Suboxone treatment.[9] Acknowledging that "prescription medication aimed at addressing a patient for opioid use disorder was forbidden."[10]

6.6    Less than a year later (2016), Kamala Harris filed a law suit against Indivior, the manufacturer of Suboxone, along with 34 other states (MDL 2804 litigants).[11] Attacking the manufacturer making Suboxone, which prevents opioid withdrawal from being difficult, painful, and sometimes dangerous.[12]

6.7    The DOJ's approach to addressing the opioid epidemic is to cash in and profit from it. By indicting the manufacturers of Suboxone, a drug which helps "people struggling to overcome addiction" … and facing … "challenges that can often seem insurmountable."[13]

6.8    The DOJ "Indicted Indivior for allegedly engaging in an illicit nationwide scheme to increase prescriptions of Suboxone." "Indivior Inc. and Indivior PLC agreed to pay a total of $600

---

https://medmark.com/obama-weighs-suboxone-treatment-centers/
[0] https://www.huffpost.com/entry/obama-opioid-addiction-treatment_n_5627b3d6e4b0bce347034174
[1] https://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-files-lawsuit-against-pharmaceutical-company
[2] U.S. Dept of Justice Public Affairs News Release July 11th, 2019
[3] U.S. Dept of Justice Public Affairs News Release July 11th, 2019

million to resolve criminal and civil liability associated with the marketing of opioid-addiction-treatment drug Suboxone. Together with a $1.4 billion resolution with Indivior's former parent, Rickett Benckiser Group PLC ( RB Group), announced in 2019." "The total resolution relating to the marketing of Suboxone is more than $2. Billion."[14]

6.9    In late 2019, the Trump administration sought to bypass Congress via Executive Order, enabling more doctors to prescribe Buprenorphine, a "move widely hailed by physicians with the head of the American College of Emergency Physicians."[15]

6.10    Finally, "the Biden (Harris) administration was criticized by physicians and law makers following reports that the new President would halt Trumps plan." Even though (if elected) the former Presidential Candidate Joe Biden criticized the prescribing rules and vowed to lift them if elected.

## VII.    LEGISLATIVE INTENT OF GOVERNMENTAL CLAIMS

7.1    The legislative intent of the **theories** and **statutes** utilized to levy approximately twenty one billion dollars away from individual claimants for governmental entities was intended for the individual public benefit. The legislative purpose of the theories and statutes exercised by governmental entities is supposed to be for the benefit of individuals, not the government. It was never the legislative intent of the Food, Drug, and Cosmetics Act, the Federal Anti-Kickback Statute, and or the False Claims Act to enable the Federal Government to leverage control billions of dollars away from its citizens in Bankruptcy court.

---

[4] U.S. Dept. of Justice Public Affairs Justice News July 24th, 2020
   https://www.justice.gov/opa/pr/indivior-solutions-pleads-guilty-felony-charge-and-indivior-entities-agree-pay-600-million
[5] https://www.washingtonpost.com/health/2021/01/27/biden-kills-buprenorphine-waiver/

## VIII.    SUMMATION OF OBJECTIONS

8.1     In a common law system, judges are obliged to make their rulings as consistent as reasonably as possible with previous judicial decisions on the same subject. By the U.S. Department of Justice's own additions, the agency has bragged about the fact that the settlement agreement against the Debtor is **unprecedented.**

8.2     "The largest penalties ever levied against a pharmaceutical manufacturer,"…a "fine of $3.544 billion and an additional $2 billion in criminal forfeiture." "Purdue has also agreed to a civil settlement in the amount of $2.8 billion to resolve its civil liability under the False Claims Act. Separately, the Sackler family agreed to pay $225 million in damages to resolve its False Claims Act liability."[16]

8.3     Additionally unprecedented is the "resolution with the company subject to the approval of by the bankruptcy court in the Southern District of New York. The company would cease to operate in its current form and would and would instead merge from bankruptcy as a **public benefit company** (PBC) owned by a trust or similar entity designed for the benefit of the American public, to function entirely in the public interest."

8.4     The negotiations between the Debtor and the governmental entities raises significant issues with significant substantive questions about the entire opioid litigation process. Beginning with MDL 2804 theories and statutes, and ending with the DOJ settlement which was rushed through for approval.

---

[6] U.S. Dept. of Justice Public Affairs Justice News Release October 21st, 2020 & November 24th, 2020
https://www.justice.gov/opa/pr/justice-department-announces-global-resolution-criminal-and-civil-investigations-opioid
https://www.justice.gov/opa/pr/opioid-manufacturer-purdue-pharma-pleads-guilty-fraud-and-kickback-conspiracies

1. The Chapter 11 reorganization plan is unprecedented, in that it is favorable to governmental entities, and unfair to the individual citizens with legitimate causation for a valid claim.

2. The legislative intent or purpose intended of the statutes which governmental plaintiffs base their claims. Specifically that when applied, has been used to exclude or deny the citizens whom were actually harmed and bar from settlement negotiations.

3. Constitutional questions of unlawful seizure of Debtors funds or assets which rightfully belong to the individual claimants who were actually harmed.

4. An *abuse of degression* by governmental entities, by failing to take into proper consideration the facts and laws relating to this particular matter. The arbitrary or unreasonable departure from precedent by governmental entities. The obvious over-reaching *"abuse of authority,"* originally condoned by the rules, regulations, and laws exercised by governmental entities, have been extended beyond what was initially conceived. Misuse of governmental power for financial gain, while exploiting its citizens.

Respectfully Submitted on this 10th day of May, 2021,

By; _____

Steve Dobelman, for Claimant No. 104998

    Advanced Legal Research Group

    Skyway Suite # 102            P.O. Box 787

    Paradise, CA 95969         Paradise, CA 95967

    (530) XXX-XXXX          claims@advancedlegalresearchgroup.com

C
D

7.15

9.15 × 2

3.60

1.49 × 2

21.28

21.77 Tot.

May 10th, 2021

FILED
U.S. BANKRUPTCY COURT

2021 MAY 17 P 03

S.D. OF N.Y.

Prime Clerk, Purdue Pharma Claims

Grand Central Station

P.O. Box 4850

New York, NY 10163-4850

Re;    **NOTICE OF CHANGE OF ADDRESS & CLAIMS ADMINISTRATOR CLAIM NO. 104998**

Dear Prime Clerk

The purpose of this notice is to inform you of the following;

1. Amended legal authority for Purdue Pharma Claim No. 104998
2. For administrative purposes of Claim No. 104998, all legal notices, responses, and pleadings, settlement offers, and financial settlements involving Purdue Pharma Claim No. 104998 will be addressed to and managed by Advanced Legal Research Group.
3. That all legal authority for this claim, represented by the Law Offices of Hofker & Associates, will be addressed and directed to Advanced Legal Research Group.

**Previous Address:**                    **Change of Address:**

Hofker & Associates                   Advanced Legal Research Group

6411 Ella Lee Lane                    P.O. Box 787

Houston, Texas 77057                  Paradise, California 95967

(713) 266-0070                        (530) XXX-XXXX          (supplied later date)

claims@advancedlegalresearchgroup.com

Sincerely,

Steve Dobelman,

Cc:    U.S. Bankruptcy Court Southern District Of New York

Law Offices of Hofker & Associates

Steve Dobelman                    Advanced Legal Research Group                    Litigation & Discovery

P.O. BOX 787
PARADISE, CA 95967

ADVANCED LEGAL RESEARCH GROUP

May 10th, 2021

FILED
U.S. BANKRUPTCY COURT

2021 MAY 17 P 2 03

S.D. OF N.Y.

Judge Robert D. Drain

U.S. Bankruptcy Court

Southern Dist. New York

300 Quarropas Street

White Plains, New York 10601-4140

Re:    Purdue Pharma LP Case No. 19-23649 RDD

U.S. Certified Mail # 7020 0090 0001 6412 5591

Dear Judge Drain,

Enclosed is Purdue Pharma Claimant No. 104998's "Objections To Multi District Litigation 2804 and U.S. Dept of Justice Payments With Elements For Legitimate Priority Class." Please review these Objections carefully. Although this document is not edited or complete, the basis for objections are intelligible.

There is extensive documentation to support the allegations against MDL 2804 Plaintiffs and the DOJ. We are establishing offices with dedicated telephone lines this week. With the intent of Appealing approval of the current bankruptcy plan.

Respectfully,

Steve Dobelman

Steve Dobelman,

Litigation & Discovery Team

Cc:    File

Steve Dobelman                                    claims@advancedlegalresearchgroup.com