**Exhibit A**

### Omnibus Disclosure Statement[1] Objections Response Chart[2]

### Resolved and Partially Resolved Objections

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 1. United States Trustee ("**UST**")[3] <br><br> [Dkt. No. 2686] | a. The Disclosure Statement does not "prominently display[] in accessible language [information] so creditors can easily determine their likely recoveries," including "what distributions can creditors expect under the Plan and when will creditors likely receive those distributions." (pg. 13.) For example, the range of recovery for PI claimants estimated by the Ad Hoc Group of Individual Victims "should be clarified and highlighted in the Executive Summary so that opioid victims (and other creditors) can easily discern their potential recoveries under the Plan." (pg. 14.) | a. The Disclosure Statement provides substantial additional disclosure creditor treatment and distributions, including a number of detailed pages in the Executive Summary regarding the process and criteria for determining eligibility and receiving a recovery under each of the Trust Distributions Procedures ("TDP") for the five Creditor Trusts, and, for the personal injury claimants, a potential recovery range. (*See* Disclosure Stmt. § I.B.) Moreover, further detail is provided in the Disclosure Statement's discussion of the creditor agreements reached as the result of mediation. (*Id.* § III.S.) <br><br> The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

---

[1] All references to "**Disclosure Statement**" refer to the Disclosure Statement for the Third Amended Plan filed contemporaneously herewith, which amends and supersedes prior versions filed at docket numbers 2488 ("**Initial Disclosure Statement**"), 2734, and 2825. All references to the "**Cumulative Blackline**" refer to the blackline filed contemporaneously herewith of the Disclosure Statement against the Initial Disclosure Statement.

[2] This chart does not include the Distributors, Manufacturers, and Pharmacies' ("**DMPs**") disclosure statement objection [Dkt. No. 2719] and Johnson & Johnson's joinder to the same [Dkt. No. 2722], which will be addressed separately.

[3] Except where otherwise indicated, capitalized terms used but not defined in this Objections Response Chart have the meanings ascribed to them in the Motion [Dkt. No. 2489] or Reply, or otherwise in the Disclosure Statement or Plan filed contemporaneously herewith.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b.  "The Disclosure Statement fails to contain adequate information regarding the releases and injunctions granted to the Sackler Families" because, "[a]t present, the Disclosure Statement simply indicates that this information will be provided in an Amended plan yet to be filed." (pg. 2, 15-17.) | b.  The Disclosure Statement, as amended, contains the text of the Shareholder Releases.  (*See* Disclosure Stmt. §§ I.F.3, I.F.4).  The Shareholder Released Parties, moreover, are defined in the Disclosure Statement and the Plan.  (*id.* § I.F.3; Plan § 1.1 (defining Shareholder Released Parties to include, among others, any equity owners of the Debtors, members of the Sackler Families, and persons be listed in an Annex to the Shareholder Settlement Agreement that will be filed before the Disclosure Statement hearing).<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement. |
| | c.  The Disclosure Statement does not provide "adequate information" to enable a creditor to determine if "$4.275 billion to be paid by the Sackler Families" is "a realistic settlement based on their current net worth."  (pg. 17.) | c.  In addition to the 17 pages detailing the Special Committee's independent investigation into potential claims against the Sackler Families, the Disclosure Statement provides 19 pages of additional information concerning the Debtors' evaluation of the proposed settlement with the Sackler Families, including issues related to collectability of potential judgments.  (*See* Disclosure Stmt. §§ III.Y, III.AA).<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | d.  The Disclosure Statements does not address "why the payments by the Sackler Families cannot be made in fewer than 9 years." (pg. 17.) | d.  This objection should be overruled.  The Debtors are not required to provide disclosure on alternative plans or settlements that have not in fact been reached.  (*See* Reply ¶¶ 10-11.)  Moreover, in addition to the 17 pages detailing the Special Committee's independent investigation into potential claims against the Sackler Families, the Disclosure Statement contains 19 pages of extensive additional information concerning the Debtors' evaluation of the proposed settlement with the Sackler Families, which is sufficient to meet the Debtors' disclosure obligations in this regard.  (*See* Disclosure Stmt. §§ III.Y; III.AA; Reply ¶¶ 8, 13.) |
| | e.  The Plan does not include information explaining the Court's authority and justification to compel nonconsensual releases. (pg. 18.) | e.  The Disclosure Statement contains extensive information regarding the necessity of the Proposed Shareholder Settlement and nonconsensual releases to the Plan and the reorganization.  (*See* Disclosure Stmt. §§ I.D, III.AA.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125.<br><br>To the extent that the UST was challenging the legal basis for granting nonconsensual third party releases in these chapter 11 cases, including with respect to whether the Court has jurisdiction to confirm a plan providing for nonconsensual third party releases, those issues are properly addressed at confirmation.  (Reply ¶¶ 41, 49-50.) |
| | f.  "The Disclosure Statement fails to provide sufficient information regarding the justification for prospective releases and injunctions provided in the Plan to entities that do not yet exist . . . including, the Plan Administration Trust, NewCo, TopCo, and the Master Disbursement Trust, and the Creditor Trusts, [and their related parties]," or "explain what claims could possibly be asserted against these entities that need to be released or enjoined, or why such prospective releases and | f.  **The UST has confirmed that this disclosure statement objection has been resolved.**<br><br>The Plan and Disclosure Statement removes these entities from the scope of the Plan's releases.  (*See* Cumulative Blackline § I.F.)  Instead, NewCo, TopCo, the Plan Administration Trust, the Master Disbursement Trust, and the Creditor Trusts are Protected Parties |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | injunctions are legally proper and necessary to the Plan." (pgs. 2, 19.) | under the Plan and thus are protected by the Channeling Injunction.  (Disclosure Stmt. § I.E (defining "Protected Parties"); Plan §§ 1.1, 10.8.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |
| | g.  "The Disclosure Statement fails to provide a justification for the releases, injunctions and discharge provided to the Debtors under the Plan" given that "on the effective date of the Plan, the Debtors' business will be liquidated and transferred to NewCo created company" and, "[u]nder 11 U.S.C. § 1141(d)(3), liquidating debtors are not entitled to a discharge under the plain language of the Bankruptcy Code."  (pgs. 2-3, 20-21.) | g.  **The UST has confirmed that this disclosure statement objection has been resolved**.<br><br>The Plan no longer contemplates a discharge of the Liquidating Debtors (PPLP, and potentially PPI and other non-operating debtors).  (*See* Cumulative DS Blackline § I.F.)<br><br>The Debtors believe that the channeling injunction and release provisions with respect to the Liquidating Debtors are appropriate under the Plan structure.  *See, e.g.*, Order Confirming Debtors' First Am. Joint Plan of Liquidation, ¶ 26, Ex. A, §§ VIII.D, F, *In re Cortland Liquidating LLC (f/k/a Century 21 Dep't Stores)*, No. 20-12097 (Bankr. S.D.N.Y. Apr. 26, 2021), Dkt. No. 883 (providing injunction and release to liquidating debtors); Joint Chapter 11 Plan of Barneys N.Y., Inc., ¶ 104, Ex. A, §§ VIII.E, G, *In re Barneys N. Y.*, No. 19-36300 (Bankr. S.D.N.Y. Feb. 5, 2020), ECF No. 789 (same); *see also In re ASR 2401 Fountainview LLC*, No. 14-35323-H3-11, 2015 WL 3465758, at *6 (S.D. Tex. May 29, 2015) ("[T]he plain language of the Bankruptcy Code does not prohibit the granting of . . . an injunction [against collection actions against the [d]ebtors post confirmation].  This court . . . does not find that the injunction in this plan is equivalent to discharge."); *see* Reply II.C.  However, this issue is properly addressed at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | h.    The Disclosure Statement does not include the required liquidation analysis for creditors to determine and understand the potential liquidation value of the Debtors' assets, the potential value of the litigation against the Shareholders, and whether the Plan provides creditors a distribution that is not less than the creditors would receive if the Debtors were liquidated under chapter 11 under 11 U.S.C. § 1129(a)(7).  (pgs. 3, 17.)  In order for creditors to determine and understand the potential liquidated value of the Debtors' assets, the liquidation analysis as well as the omitted financial projections at Appendix C and valuation analysis at Appendix D should be provided at least 10 days before the voting deadline of July 14, 2021.  (*Id.* at 17.) | h.    **The UST has confirmed that this disclosure statement objection has been resolved.**<br><br>This objection has been adequately addressed because the Disclosure Statement includes the liquidation analysis, financial projections, and valuation analysis as Appendices B (liquidation analysis), C (financial projections), and D (valuation).  (*See also* Disclosure Stmt. §§ VI.A & n. 135, B, C, D, E.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |
| | i.    "The Disclosure Statement does not provide sufficient information about or explain clearly why class 11A and B unsecured claims will be paid in full while other classes of unsecured claims will only receive a pro rata distribution." (pgs. 3, 14.)<br><br>"The Disclosure Statement should explain these discrepancies," and should "provide information regarding the estimated distribution to Class 11C (other general unsecured claims) . . . and, if the Debtors are unable to determine such amounts, they should say so and explain why not." (pg. 14.) | i.    **With respect to Classes 11(a) and 11(b), the UST has confirmed that this disclosure statement objection has been resolved.**<br><br>The Disclosure Statement contains additional information regarding Classes 11(a) (Avrio), 11(b) (Adlon), and 11(c) (Other General Unsecured Claims). (*See* Disclosure Stmt. § I.C & nn. 26-27.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | j.  "The Disclosure Statement references certain organizational and trust documents but neither these documents nor the identities of the initial managers and trustees are in the Disclosure Statement," which "will purportedly be included in a Plan Supplement." (pgs. 3, 14-15.)<br><br>• "At present, it is contemplated that the Plan Supplement will be filed five calendar days (including an intervening weekend) before the voting deadline on the Plan[,] [b]ut to give parties sufficient time to review this information, it should be supplied at least ten calendar days before the voting deadline on the Plan, with all parties reserving their rights in connection thereto." (pgs. 3, 15.)<br><br>• "The Plan Supplement should disclose, among other things, the compensation of the initial managers and trustees, the process used to select the managers and trustees, whether the trusts/trustees will be bonded, and the provisions for the retention and compensation of these entities' professionals." (pg. 3.) | j.  This objection has been adequately addressed because Disclosure Statement has been amended to provide that the Plan Supplement will be filed and served seven calendar days prior to the Voting Deadline.  (Disclosure Stmt. §§ I.B n.5, IV.)  In addition, the Debtors have agreed to file the PI Trust Documents at least fourteen calendar days prior to the Voting Deadline.  (Disclosure Stmt. § I.B n.5; Proposed Order ¶ 6 n.4.)  This is consistent with timing routinely approved in other complex chapter 11 cases, is appropriate under the circumstances here, and will provide creditors with ample time to form a yet further informed view on the Plan, to the extent such information is relevant to their decision. (*See* Reply ¶ 13 n.4.)<br><br>Moreover, each type of information that the UST's objections claims should be disclosed in the Plan Supplement has already been disclosed in the current version of the TDP that have been filed (Third Plan Suppl. (May 15, 2021), Dkt. No. 2867 (replacing and superseding prior versions of the Hospital, TPP, NOAT, and Tribe TDP), Fourth Plan Suppl. (May 17, 2021), Dkt. No. 2868 (replacing and superseding prior version of the PI TDP), or will be disclosed as appropriate in the Plan Supplement provided before the Voting Deadline. |
| | k.  "The Disclosure Statement does not contain sufficient information about or explain clearly post-confirmation reporting requirements and duties and the payment of post-confirmation fees due under 28 U.S.C. § 1930(a)(6) after the effective date of the Plan." (pgs. 3, 21-22.) | k.  **<u>The UST has confirmed that this disclosure statement objection has been resolved</u>**.<br><br>The Debtors have amended the Disclosure Statement to clarify post-confirmation reporting requirements and duties and the payment of post-confirmation fees under 28 U.S.C. § 1930(a)(6).  (*See* Disclosure Stmt. § IV.K.5.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | 1. "The Disclosure Statement fails to provide sufficient information regarding the justification for the Plan provisions permitting the Debtors to (a) adjust or expunge a claim from the official claims register without notice or a court order if the claim has been satisfied, amended or superseded, (b) count ballots (without notice or a court order) that are untimely filed, and (c) deem a class of creditors that does not vote to accept the Plan as an accepting class of creditors." (pgs. 3, 22.) | 1. **The UST has confirmed that this disclosure statement objection has been resolved with respect to the points labelled (a) and (b).**<br><br>The Disclosure Statement removes the language in question regarding (a) amending or expunging claims from the official claims register without notice to the Court, and (b) counting ballots that are untimely filed. (*See* Cumulative Blackline §§ I.G.3, V.D.2.)<br><br>With respect to (c), in the unlikely event that there is a voting class in which no creditor chooses to vote, the Plan appropriately deems such class an accepting class. *See, e.g.*, *In re Adelphia Commun'cs. Corp.*, 368 B.R. 140, 260 (Bankr. S.D.N.Y. 2007) ("[A] non-voting, non-objecting creditor who is the only member of a class . . . is deemed to have accepted the Plan for purposes of § 1129(b)."). And the disclosure provided in respect of this is sufficient under section 1125. (*See* Disclosure Stmt. § V.D.2; *see also* Plan § 3.3.) |
| 2. Steadfast Insurance Company, American Guarantee and Liability Insurance Company, Navigators Specialty Insurance Company ("**Insurers**")[4]<br><br>[Dkt. No. 2710] | a. The Disclosure Statement lacks adequate information because it does not disclose that the Insurers have informed the Debtors that they object to the Plan's insurance neutrality provision as failing to adequately "protect the [I]nsurers' rights, [and] that they have sent the Debtors alternative language." (pgs. 1-2.) | a. **The Insurers have confirmed that their disclosure statement objection has been resolved.**<br><br>The Debtors have reached agreement with the Insurers regarding appropriate disclosure of the disagreement between the Debtors and Insurers as to whether the insurance neutrality language in the Plan adequately protects the Insurers rights. (*See* Disclosure Stmt. § VIII.A.9.) The Debtors and the Insurers have agreed to continue discussions regarding the applicable provisions in the Plan with a goal of addressing the underlying disagreement. |

---

[4] The Insurers have not filed proofs of claim in these cases.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b.  The Plan's insurance neutrality provision is insufficient and "not nearly as robust as that adopted in other Chapter 11 cases." The Insurers argue that the insurance neutrality provision "must be revised to make clear that the Plan does not and will not abrogate the contractual, legal and equitable rights of the insurers." (pgs. 3-4.) | b.  **The Insurers have confirmed that their disclosure statement objection has been resolved.**<br><br>The Debtors have reached agreement with the Insurers regarding appropriate disclosure of the disagreement between the Debtors and Insurers as to whether the insurance neutrality language in the Plan adequately protects the Insurers rights. (*See* Disclosure Stmt. § VIII.A.9.) The Debtors and the Insurers have agreed to continue discussions regarding the applicable provisions in the Plan with a goal of addressing the underlying disagreement. |
| | c.  In order for the Plan to be confirmed, the Debtors need to amend the Plan to incorporate the Insurers' drafted language that the Insurers believe will "protect, and put creditors on notice of an insurer's rights." (pgs. 3-5.) | c.  **The Insurers have confirmed that their disclosure statement objection has been resolved.**<br><br>The Debtors have reached agreement with the Insurers regarding appropriate disclosure of the disagreement between the Debtors and Insurers as to whether the insurance neutrality language in the Plan adequately protects the Insurers rights. (*See* Disclosure Stmt. § VIII.A.9.) The Debtors and the Insurers have agreed to continue discussions regarding the applicable provisions in the Plan with a goal of addressing the underlying disagreement. |
| 3.  Bridge House Corporation<br><br>[Dkt. No. 2711] | a.  The bulk of the objections raised by Bridge House are the same as those made by the UST, and essentially serve as a joinder to the UST's objection. See *supra* Rows 1(b)-(i). | a.  **Bridge House has confirmed that its disclosure-related objections, including its joinder to the UST's objection, have been resolved.**<br><br>To the extent that the UST's objection raises confirmation issues, those issues will be addressed in connection with the confirmation hearing. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b. The Disclosure Statement fails to provide adequate information because the Debtors "failed to file the associated Hospital Trust Procedures that will govern distributions within Class 6." (pg. 2.) | b. **Bridge House has confirmed that its disclosure-related objections, including its joinder to the UST's objection, have been resolved.**<br><br>The Hospital Trust Distribution Procedures have been filed.  (Ex. A, Third Plan Suppl. (May 15, 2021), Dkt. No. 2867 (replacing and superseding prior version attached thereto as Exhibit A-1) ("**Hospital TDP**")). |
| | c. The Disclosure Statement fails to provide adequate information regarding "the final proposed Hospital [Trust Distribution Procedures] and other essential documents" (pg. 14-15) because it does not provide "essential information to creditors about potential distributions and their timing."  (*Id.*) | c. **Bridge House has confirmed that its disclosure-related objections, including its joinder to the UST's objection, have been resolved.**<br><br>The Hospital TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). |
| | d. The Disclosure Statement fails to provide the authority that allows the Debtors to "deem" a class of creditors (11A (Avrio) and 11B (Adlon)) that is not entitled to vote on the Plan as an accepting class.  (pg. 25.) | d. **Bridge House has confirmed that its disclosure-related objections, including its joinder to the UST's objection, have been resolved.**<br><br>Under section 1129(a)(8)(B), acceptance of the Plan by a class that is not impaired (such as Class 11A and 11B) is not required for confirmation. |
| 4.  Carpenter Health Network<br><br>[Dkt. No. 2712] | a. Carpenter Health Network adopts the objections of the UST, incorporates those objections by reference, and attaches the UST's objections as Exhibit A to its objection.  (¶ 6.)  See *supra* Row 1 for the UST's objections. | a. **Carpenter Health Network has confirmed that its disclosure statement objections have been resolved.**<br><br>To the extent that the UST's objection raises confirmation issues, those issues will be addressed in connection with the confirmation hearing. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b. The Disclosure Statement lacks adequate information because it does not "attach the proposed 'Hospital Trust Documents,'" or "include specific criteria in the Statement itself clearly defining which claimants will be treated as 'Hospital Claimants,'" and, therefore, Carpenter Health Network and similarly situated Hospital Claimants "are provided no reliable information as to the proposed plan treatment of their respective claims." (¶¶ 3, 15.)<br><br>"[T]he Hospital Trust Documents should be filed in advance of a hearing on the disclosure statement," or alternatively, "the Debtors must not be permitted to solicit votes on the Plan without filing the Hospital Trust Documents and all necessary supplementing documentation." (¶ 22.) | b. **Carpenter Health Network has confirmed that its disclosure statement objections have been resolved.**<br><br>The Hospital TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). In addition, the Disclosure Statement describes the Hospital TDP and the treatment of claims in Class 6 in detail. (*See* Disclosure Stmt. § III.S.1.) |
| | c. The Plan's third-party releases and nonconsensual channeling injunction render the Plan patently unconfirmable. (¶ 5.) | c. **Carpenter Health Network has confirmed that its disclosure statement objections have been resolved.**<br><br>This issue will be addressed at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | d.  The Plan is patently unconfirmable because it "creates a class for 'Treatment Provider Claims' but fails to provide a definition for exactly what claims constitute those of a 'Treatment Provider,'" and, without the Hospital Trust Documents, fails to sufficiently describe a "way of discerning any path or procedure for recovery under the Plan." (¶ 25.) | d.  **Carpenter Health Network has confirmed that its disclosure statement objections have been resolved.**<br><br>The Hospital TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). In addition, the Disclosure Statement and TDP themselves make clear that the Hospital TDP apply to all claims in Class 6, which include claims by hospitals and other treatment providers, including Dr. Masiowski. (*See* Hospital TDP at 1 & n. 3; Disclosure Stmt. § III.S.1.)  Moreover, the Hospital TDP are not ambiguous nor do they preclude distributions to treatment providers other than hospitals.  As the Disclosure Statement and Hospital TDP state, each claimant—whether a hospital or non-hospital treatment provider—that makes the required certifications (Disclosure Stmt. § III.S.1; Hospital TDP §§ 3, 7) and submits the necessary abatement form and proof of claims data (Disclosure Stmt. § III.S.1; Hospital TDP §§ 4.1(a)(c), 5) is eligible to recover under the applicable model. |
| 5.  City of Chillicothe, Ohio ("**Chillicothe**")<br><br>[Dkt. No. 2713] | a.  Chillicothe adopts the objections of the UST, incorporates those objections by reference, and attaches the UST's objections as Exhibit A to its objection.  (¶ 6.)  See *supra* Row 1 for the UST's objections. | a.  **Chillicothe has confirmed that its disclosure statement objections have been resolved.**<br><br>To the extent that the UST's objection raises confirmation issues, those issues will be addressed at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b. The Disclosure Statement lacks adequate information because it does not "attach the proposed 'NOAT Documents,'" or "include specific criteria in the Statement itself clearly defining which claimants will be treated as 'Municipality Claimants,'" and therefore Chillicothe and similarly situated Municipality Claimants "are provided no reliable information as to the proposed plan treatment of their respective claims." (¶¶ 3, 15.)<br><br>Chillicothe argues that "the NOAT Documents should be filed in advance of a hearing on the disclosure statement," or alternatively, that "the Debtors must not be permitted to solicit votes on the Plan without filing the NOAT Documents and all necessary supplementing documentation." (¶ 22.) | b. **Chillicothe has confirmed that its disclosure statement objections have been resolved.**<br><br>The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).) |
| | c. The Plan's third party releases and non-consensual channeling injunction render the Plan patently unconfirmable. (¶ 5.) | c. **Chillicothe has confirmed that its disclosure statement objections have been resolved.**<br><br>This issue will be addressed at confirmation. |
| | d. The Plan is patently unconfirmable because it "creates a class for 'non-federal Domestic Governmental Claims' but fails to provide a definition for exactly what claims constitute those of a 'Non-federal Domestic Governmental Claimant,'" and without NOAT documents, fails to sufficiently describe a "way of discerning any path or procedure for recovery under the Plan." (¶ 25.) | d. **Chillicothe has confirmed that its disclosure statement objections have been resolved.**<br><br>The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).) To the extent this raises an objection to the Plan, it will be addressed at confirmation. |

| Objecting Party | | Summary of Objection | | Debtors' Response |
|---|---|---|---|---|
| 6. City of Covington, Louisiana ("**Covington**")<br><br>[Dkt. No. 2714] | a. | Covington adopts the objections of the UST, incorporates those objections by reference, and attaches the UST's objections as Exhibit A to its objection. (¶ 6.) See *supra* Row 1 for the UST's objections. | a. | **Covington has confirmed that its disclosure statement objections have been resolved.**<br><br>To the extent that the UST's objection raises confirmation issues, those issues will be addressed at confirmation. |
| | b. | The Disclosure Statement lacks adequate information because it does not "attach the proposed 'NOAT Documents,'" or "include specific criteria in the Statement itself clearly defining which claimants will be treated as 'Municipality Claimants,'" and therefore Covington and similarly situated Municipality Claimants "are provided no reliable information as to the proposed plan treatment of their respective claims." (¶¶ 3, 15)<br><br>Covington argues that "the NOAT Documents should be filed in advance of a hearing on the disclosure statement," or alternatively, that "the Debtors must not be permitted to solicit votes on the Plan without filing the NOAT Documents and all necessary supplementing documentation." (¶ 22.) | b. | **Covington has confirmed that its disclosure statement objections have been resolved.**<br><br>The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).) |
| | c. | The Plan's third-party releases and nonconsensual channeling injunction render the Plan patently unconfirmable. (¶ 5.) | c. | **Covington has confirmed that its disclosure statement objections have been resolved.**<br><br>This issue will be addressed at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | d.  The Plan is patently unconfirmable because it "creates a class for 'non-federal Domestic Governmental Claims' but fails to provide a definition for exactly what claims constitute those of a 'Non-[F]ederal Domestic Governmental Claimant,'" and without NOAT documents, fails to sufficiently describe a "way of discerning any path or procedure for recovery under the Plan." (¶ 25.) | d.  **Covington has confirmed that its disclosure statement objections have been resolved**. <br><br> The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).) To the extent this raises an objection to the Plan, it will be addressed at confirmation. |
| 7.  The Four Winds Tribe Louisiana Cherokee ("**Four Winds Tribe**") <br><br> [Dkt. No. 2715] | a.  The Four Winds Tribe adopts the objections of the UST, incorporates those objections by reference, and attaches the UST's objections as Exhibit A to its objection.  (¶ 6.)  See *supra* Row 1 for the UST's objections. | a.  **Four Winds Tribe has confirmed that its disclosure statement objections have been resolved**. <br><br> To the extent that the UST's objection raises confirmation issues, those issues will be addressed at confirmation. |
| | b.  The Disclosure Statement lacks adequate information because it does not "attach the proposed 'Tribe Trust Documents,'" or "include specific criteria in the Statement itself clearly defining which claimants will be treated as 'Tribe Claimants,'" and therefore the Four Winds Tribe and similarly situated Tribe Claimants "are provided no reliable information as to the proposed plan treatment of their respective claims."  (¶¶ 3, 16) <br><br> "[T]he Tribe Trust Documents should be filed in advance of a hearing on the disclosure statement," or alternatively, that "the Debtors must not be permitted to solicit votes on the Plan without filing the Tribe Trust Documents and all necessary supplementing documentation." (¶ 23.) | b.  **Four Winds Tribe has confirmed that its disclosure statement objections have been resolved**. <br><br> The Tribe TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the Tribe TDP. (Disclosure Stmt. § III.S.6.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | c. The Plan's third party releases and non-consensual channeling injunction render the Plan patently unconfirmable. (¶ 5.) | c. **Four Winds Tribe has confirmed that its disclosure statement objections have been resolved**.<br><br>This issue will be addressed at confirmation. |
| | d. The Plan is patently unconfirmable because it "creates a class for 'Tribe Claims' but fails to provide a definition for exactly what claims constitute those of a 'Tribe Claimant,'" and without Tribe Trust Documents, fails to sufficiently describe a "way of discerning any path or procedure for recovery under the Plan." (¶ 26.) | d. **Four Winds Tribe has confirmed that its disclosure statement objections have been resolved**.<br><br>The Tribe TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the Tribe TDP. (Disclosure Stmt. § III.S.6.) To the extent this raises an objection to the Plan, it will be addressed at confirmation. |
| 8. Parish of DeSoto ("**DeSoto**")<br><br>[Dkt. No. 2716] | a. DeSoto adopts the objections of the UST, incorporates those objections by reference, and attaches the UST's objections as Exhibit A to its objection. (¶ 6.) See *supra* Row 1 for the UST's objections. | a. **DeSoto has confirmed that its disclosure statement objections have been resolved**.<br><br>To the extent that the UST's objection raises confirmation issues, those issues will be addressed at confirmation. |
| | b. The Disclosure Statement lacks adequate information because it does not "attach the proposed 'NOAT Documents,'" or "include specific criteria in the Statement itself clearly defining which claimants will be treated as 'Municipality Claimants,'" and therefore DeSoto and similarly situated Municipality Claimants "are provided no reliable information as to the proposed plan treatment of their respective claims." (¶¶ 3, 15.)<br><br>"[T]he NOAT Documents should be filed in advance of a hearing on the disclosure statement," or alternatively, that "the Debtors must not be permitted to solicit votes on the Plan without filing the NOAT Documents and all necessary supplementing documentation." (¶ 22.) | b. **DeSoto has confirmed that its disclosure statement objections have been resolved**.<br><br>The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | c.   The Plan's third-party releases and nonconsensual channeling injunction render the Plan patently unconfirmable. (¶ 5.) | c.   **DeSoto has confirmed that its disclosure statement objections have been resolved**.<br><br>This issue will be addressed at confirmation. |
| | d.   The Plan is patently unconfirmable because it "creates a class for 'non-federal Domestic Governmental Claims' but fails to provide a definition for exactly what claims constitute those of a 'Non-federal Domestic Governmental Claimant,'" and without NOAT documents, fails to sufficiently describe a "way of discerning any path or procedure for recovery under the Plan." (¶ 25.) | d.   **DeSoto has confirmed that its disclosure statement objections have been resolved**.<br><br>The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).)  To the extent this raises an objection to the Plan, it will be addressed at confirmation. |
| 9.   The Northwestern Band of the Shoshone Nation<br><br>[Dkt. No. 2717] | a.   The Northwestern Band of the Shoshone Nation adopts the objections of the UST, incorporates those objections by reference, and attaches the UST's objections as Exhibit A to its objection. (¶ 6.) See *supra* Row 1 for the UST's objections. | a.   **The Northwestern Band of the Shoshone Nation has confirmed that its disclosure statement objections have been resolved**.<br><br>To the extent that the UST's objection raises confirmation issues, those issues will be addressed at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b. The Disclosure Statement lacks adequate information because it does not "attach the proposed 'Tribe Trust Documents,'" or "include specific criteria in the Statement itself clearly defining which claimants will be treated as 'Tribe Claimants,'" and therefore the Northwestern Band of the Shoshone Nation and similarly situated Tribe Claimants "are provided no reliable information as to the proposed plan treatment of their respective claims." (¶¶ 3, 16.)<br><br>"[T]he Tribe Trust Documents should be filed in advance of a hearing on the disclosure statement," or alternatively, that "the Debtors must not be permitted to solicit votes on the Plan without filing the Tribe Trust Documents and all necessary supplementing documentation." (¶ 23.) | b. **The Northwestern Band of the Shoshone Nation has confirmed that its disclosure statement objections have been resolved**.<br><br>The Tribe TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the Tribe TDP. (Disclosure Stmt. § III.S.6.) |
| | c. The Plan's third party releases and non-consensual channeling injunction render the Plan patently unconfirmable. (¶ 5.) | c. **The Northwestern Band of the Shoshone Nation has confirmed that its disclosure statement objections have been resolved**.<br><br>This issue will be addressed at confirmation. |
| | d. The Plan is patently unconfirmable because it "creates a class for 'Tribe Claims' but fails to provide a definition for exactly what claims constitute those of a 'Tribe Claimant,'" and without Tribe Trust Documents, fails to sufficiently describe a "way of discerning any path or procedure for recovery under the Plan." (¶ 26.) | d. **The Northwestern Band of the Shoshone Nation has confirmed that its disclosure statement objections have been resolved**.<br><br>The Tribe TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the Tribe TDP. To the extent this raises an objection to the Plan, it will be addressed at confirmation. |
| 10. Dr. Gregory Fernandez in his Official Capacity as the Coroner of St. Bernard Parish (the "**Coroner**")<br><br>[Dkt. No. 2718] | a. The Coroner adopts the objections of the UST, incorporates those objections by reference, and attaches the UST's objections as Exhibit A to its objection. (¶ 6.) See *supra* Row 1 for the UST's objections. | a. **The Coroner has confirmed that its disclosure statement objections have been resolved**.<br><br>To the extent that the UST's objection raises confirmation issues, those issues will be addressed at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b.  The Disclosure Statement lacks adequate information because it does not "attach the proposed 'NOAT Documents,'" or "include specific criteria in the Statement itself clearly defining which claimants will be treated as 'Municipality Claimants,'" and therefore the Coroner and similarly situated Municipality Claimants "are provided no reliable information as to the proposed plan treatment of their respective claims."  (¶¶ 3, 15)<br><br>"[T]he NOAT Documents should be filed in advance of a hearing on the disclosure statement," or alternatively, that "the Debtors must not be permitted to solicit votes on the Plan without filing the NOAT Documents and all necessary supplementing documentation." (¶ 22.) | b.  **The Coroner has confirmed that its disclosure statement objections have been resolved**.<br><br>The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).) |
| | c.  The Plan's third-party releases and nonconsensual channeling injunction render the Plan patently unconfirmable. (¶ 5.) | c.  **The Coroner has confirmed that its disclosure statement objections have been resolved**.<br><br>This issue will be addressed at confirmation. |
| | d.  The Plan is patently unconfirmable because it "creates a class for 'non-federal Domestic Governmental Claims' but fails to provide a definition for exactly what claims constitute those of a 'Non-federal Domestic Governmental Claimant,'" and without NOAT documents, fails to sufficiently describe a "way of discerning any path or procedure for recovery under the Plan." (¶ 25.) | d.  **The Coroner has confirmed that its disclosure statement objections have been resolved**.<br><br>The NOAT TDP have been filed in the Plan Supplement, which is sufficient under section 1125(a). Moreover, the Disclosure Statement, as amended, summarizes the NOAT TDP, including interstate and intrastate allocation agreements and procedures. (Disclosure Stmt. §§ III.S.5(i)-(ii).) To the extent this raises an objection to the Plan, it will be addressed at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 11. Ad Hoc Committee for NAS Children ("**NAS Committee**")<br><br>Limited Objection to Disclosure Statement & Solicitation Procedures Motion<br><br>[Dkt. No. 2746]<br><br>Notice of Withdrawal of Limited Objection to Disclosure Statement & Solicitation Procedures Motion<br><br>[Dkt. No. 2903]<br><br>Joinder to the State of West Virginia's Objection.<br><br>[Dkt. No. 2749]<br><br>Notice of Withdrawal of Joinder to the State of West Virginia's Objection<br><br>[Dkt. No. 2906] | a.  The Disclosure Statement lacks sufficient information regarding eligibility and other criteria in connection with the PI Trust. Moreover, the Plan is patently unconfirmable, among other reasons, because the Plan wrongly classifies claims of NAS children with other personal injury claims, the Plan's treatment of NAS children claims does not comply with the Bankruptcy Code, and the proposed releases of claims are overbroad and improper. | a.  **The NAS Committee has withdrawn its Objection to the Disclosure Statement [Dkt. No. 2903] and its joinder to West Virginia's Objection [Dkt. No. 2906].**<br><br>The Plan, as amended, provides that the claims of NAS children will be separately classified (Classes 10(a)), channeled to the PI Trust, and resolved in accordance with the terms of the NAS PI TDP  The NAS PI TDP will be filed before the Disclosure Statement hearing. |

**Unresolved Objections**

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 12. Ad Hoc Group of Non-Consenting States ("**NCSG**") [Dkt. No. 2762] | a. "The [NCSG] . . . join in and adopt" the objections of the UST, and incorporate the UST's objection by reference. (¶¶ 6 n.6, 52, 73.)  *See supra* Row 1 for the UST's objections. | a. To the extent the NCSG joins in an objection by the UST that has been fully or partially resolved, the NCSG's joinder in that objection should be likewise resolved.  (*See* Second Am. Order Establishing Certain Notice, Case Mgmt., & Admin. Procedures, ¶ 39 ("CMO").)  To the extent the NCSG joins in an objection by the UST that has been overruled, the NCSG's joinder in that objection should be likewise overruled.  (*Id.*)  To the extent the Court deems the NCSG to have separately and independently incorporated the objections raised by the UST into their pleading, those objections should be overruled on the merits for the reasons stated in Row 1, *supra*. |
|  | b. With respect to the UST's objection at Row 1(j) *supra*, the NCSG argue that "two weeks before the voting deadline[] is the shortest amount of time that creditors should be given to receive and evaluate Plan Supplement materials in a case as complex as this one." (¶ 73.).  *See* Row 1(j) for the UST's objection. | b. This objection should be overruled to the extent that it asserts that the Plan Supplement must be filed fourteen days before the Voting Deadline.  As explained in connection with the UST's objection (*supra* Row 1(j)), the Debtors have amended the Disclosure Statement to provide that the Plan Supplement will be filed and served seven calendar days prior to the Voting Deadline, which is consistent with precedent and appropriate in these chapter 11 cases. (Disclosure Stmt. §§ I.B n.5, IV; *see* Reply ¶ 13 n.4.)  In addition, the Debtors have agreed to file the PI Trust Documents at least fourteen calendar days prior to the Voting Deadline.  (Disclosure Stmt. § I.B n.5; Proposed Order ¶ 6 n.4.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | c.   The Disclosure Statement and Plan do not provide "any information or adequate description of the negotiated resolution of attorneys' fees among Non-Federal Public Claimants, and with Private Claimants that is a requirement of the various mediated resolutions in these cases.  The [NCSG] understand that these details remain blank because there is no agreement to disclose." (¶ 2 n.4.) | c.   The amended Disclosure Statement explains that the Plan provides for the establishment of funds for the payment of attorneys' fees and costs. (Disclosure Stmt. § IV.D.8; Plan § 5.8.) |
| | d.   The Disclosure Statement and Plan "omit critical provisions and information relating to the Sackler Families, including with respect to the releases proposed to be provided to them, the channeling injunction proposed to accompany those releases, and the time of payments, all of which are subject to ongoing negotiations." (¶¶ 2 n.4, 57.) | d.   The Disclosure Statement, as amended, contains the text of the Shareholder Releases.  (*See* Disclosure Stmt. § I.F.)  As explained *supra* Row 1(b), the Shareholder Released Parties are defined in the Disclosure Statement and the Plan.  (*Id.* § I.F.3; Plan § 1.1 (defining Shareholder Released Parties to include, among others, any equity owners of the Debtors, members of the Sackler Families, and persons be listed in an Annex to the Shareholder Settlement Agreement that will be filed before the Disclosure Statement hearing).)<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement.<br><br>Moreover, the Disclosure Statement describes the timing of payments to be made by the Sackler Families pursuant to the Shareholder Settlement.  (*See* Disclosure Stmt. § III.Z (providing chart with payment schedule).) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
|  | e.  The Disclosure Statement fails to provide adequate or accurate information regarding "[t]he risks on implementation of a Plan conditioned on broad non-consensual third-party releases of the Sackler Families, the justification for granting the releases, and attendant risks that the releases will not be approved," or "[t]he potential impact of even an unsuccessful confirmation order appeal on the timing of distributions to creditors, and additional administrative expenses." (¶ 6; *see also* ¶ 57.)  The Disclosure Statement's disclosure that "'[t]here can be no assurance' that the releases will be granted" is insufficient. (¶¶ 57-58.) | e.  This objection has been adequately addressed and, to the extent not addressed, should otherwise be overruled.<br><br>With respect to providing a "justification" for the proposed Shareholder Releases, the Disclosure Statement contains extensive information regarding the necessity of the proposed Shareholder Settlement and third party releases to the Plan and the reorganization. (*See, e.g.*, Disclosure Stmt. §§ I.D, F, III.Y-AA.)<br><br>With respect to implementation and appellate risk, the Debtors submit that the Disclosure Statement, as originally filed, amply satisfied section 1125's requirements, including as to releases.  (*Id.* §§ VIII.A.1 (noting for example, that "[e]ven if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court will confirm the Plan"), VIII.A.7 (noting that "[t]here can be no assurance that the Plan releases . . . will be granted").  Nevertheless, the Debtors have added a risk factor discussing the general possibility of an appeal from the confirmation order and the effects such an appeal might have for implementation of the Plan.  (*Id.* § VIII.A.2.))<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125.<br><br>Ultimately, the NCSG's objection is nothing more than an improper attempt to include their litigation position in respect of the Plan's releases, which the Debtors are simply not required to do.  (*See* Reply ¶¶ 11, 41-50.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | f. The Disclosure Statement fails to provide adequate or accurate information regarding the "substantive evaluation of the merits of the settlement with the Sackler Families," including:<br><br>  (i) the "substantive analysis of non-cash transfers to the Sackler Families that was conducted by Bates White" (¶¶ 6, 59-61);<br><br>  (ii) the "reasonableness of the amounts being paid under the Sackler Settlement and the 9-10 year period over which these payments (without interest) are made," including "the wealth of the Sackler Families and why that wealth (admittedly multiples of the nominal amount of the proposed payment by the Sackler Families) cannot be paid immediately or over a period substantially less than 9-10 years from the Effective Date" (¶¶ 6, 53, 55);<br><br>  (iii) "a sufficient substantive analysis of the risks and rewards of the settlement agreement required under the factors for approval of a settlement outlined by the Second Circuit in *Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007)." (¶¶ 6, 54);<br><br>  (iv) the current Sackler Settlement or provide "[a] meaningful comparison of the initial Settlement Framework (which was rejected by the [NCSG]) to the current settlement agreement with the Sackler Families to support the Debtors' contention that the current settlement is $1.275 billion more than the prepetition settlement structure." (¶¶ 6, 67-68.) | f. This objection has been adequately addressed because the Disclosure Statement contains an extensive amount of material concerning the proposed Shareholder Settlement that directly addresses each of the items raised by the NCSG.<br><br>The Disclosure Statement contains (i) a detailed, 17-page summary of the Special Committee's investigation of claims against the Shareholders (Disclosure Stmt. § III.Y); (ii) a summary of the investigation of the same by the Debtors' creditors (*id.* § III.BB); and (iii) a 19-page evaluation of the merits of the Shareholder Settlement and potential risks of pursuing litigation under the same *Iridium* factors that the Court will apply in determining whether to approve the settlement, (*see id.* § III.AA). In addition, the Disclosure Statement, as originally, provides a description of the evaluation of the non-cash transfers by the Debtors to Sackler Families and their associated entities. (*See id.* §§ III.Y.1(iv)(b)-(c).)<br><br>Finally, the Disclosure Statement provides a comparison of the terms of the proposed Shareholder Settlement and the terms of the Settlement Framework entered at the outset of these chapter 11 cases. (*See id.* §§ I.B (describing how the Plan significantly improves on the initial Settlement Framework by, among other things, increasing the amount that the Shareholders will be required to pay in the aggregate from $3.0 billion to $4.5 billion); III.AA.2(i) (explaining why the proposed settlement materially exceeds the benefits contemplated by the Settlement Framework).)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125.<br><br>To the extent that the NCSG's objection seeks more disclosure, it is merely an attempt to include their litigation position on these topics, which is not required under section 1125. (*See* Reply ¶¶ 41-50.) Debtors are not required to provide disclosure on alternative plans or settlements. (*See id.* ¶ 11.) |

24

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | g.  The Disclosure Statement fails to provide adequate or accurate information regarding "[t]he Master Disbursement Trust's ability to force the Sackler Families to make payments under the settlement agreement upon default, including the guarantees and security securing those payments, remedies upon a breach, and the risks to the estate of non-payment." (¶¶ 6, 53, 56.)<br><br>More specifically, "the Disclosure Statement should include a list of all the collateral securing the Sackler Families' payment obligations, the value of that collateral, an analysis of the Master Disbursement Trust's ability to foreclose and liquidate it upon default, and any other issues that relate to the Master Disbursement Trust's ability to collect in the event of non-payment." (¶ 56.) "The summary currently in Article VIII of the Disclosure Statement on these issues is insufficient." (*Id.*) | g.  Additional information regarding collateral, restrictive covenants, and remedies in connection with Shareholder Settlement Agreement will be provided before the Disclosure Statement hearing. |
| | h.  The Disclosure Statement fails to provide adequate or accurate information regarding "[t]he fiduciary duties of the MDT Trustees" and other "[i]nformation about the trusts, including the trust documents that will be disclosed in the Plan Supplement." (¶¶ 6, 69.) | h.  The Disclosure Statement provides detail concerning the role of the MDT Trustees in the event of a specified default under the Plan.  (*See* Disclosure Stmt. § IV.D .6(iv).)  The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | i.   The Disclosure Statement fails to describe "[t]he contours of the public document repository."  (¶¶ 6, 52, 62.) | i.   This objection has been addressed because the Disclosure Statement as amended contains robust disclosures regarding the contents of the Public Document Repository contemplated under the Plan, including that it will contain approximately 13 million documents of more than 100 million pages produced by the Debtors during the course of the Purdue Legal Matters, including the following nine categories (*see* Disclosure Stmt. § III.X; Plan § 1.1 (defining "Purdue Legal Matter")): <br><br> i.   documents from the Debtors' email system from present and former officers and senior current and former employees in marketing, sales, R&D, legal, compliance, and regulatory; <br><br> ii.   documents that members of the Sackler family sent or received on the Debtors' email system; <br><br> iii.   documents that reflect clinical and pre-clinical research regarding opioids, including research related to safety and effectiveness of opioids; <br><br> iv.   minutes and documents presented to the Purdue Board of Directors; <br><br> v.   marketing and sales plans for opioid medications; <br><br> vi.   sales call notes; <br><br> vii.   standard operating procedures; <br><br> viii.   suspicious order monitoring data and documents; and <br><br> ix.   reports of concern and ADD files pertaining to prescribers. <br><br> The Public Document Repository also will include all deposition transcripts taken in the Purdue Legal Matters of the Debtors' current and former employees and board members, along with the exhibits to those depositions, and documents provided to the Special Committee for review.  (Disclosure Stmt. § III.X.)  The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

26

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | j.  The Disclosure Statement fails to provide adequate or accurate information regarding the "[t]reatment of the United States' general unsecured claims for civil and criminal penalties totaling approximately $6.3 billion under the DOJ Settlement, and the claims of federal agencies not addressed by the DOJ Settlement, and their impact on distributions to creditors." (¶¶ 6, 52, 63-66.) | j.  This objection should be overruled because the Disclosure Statement, as amended, explains the treatment of the Federal Government Unsecured Claims. (Disclosure Stmt. §§ I.C, IV.C.3.)  Moreover, the Disclosure Statement as amended explains in a risk factor that the "amount of distributions on account of the Allowed Federal Government Unsecured Claims" are linked to and will reduce "the amount of distributions to NOAT and the Tribe Trusts."  (Disclosure Stmt. § VIII.A.13.) |
| | k.  The "terms of the trust distribution procedures among holders of Non-Federal Governmental Domestic Claims have not been finalized." (¶ 71.) "[T]he Disclosure Statement should make clear the risk that any holder may withdraw consent to the proposed distribution if all these issues are not resolved satisfactorily." (¶ 72.) | k.  This objection should be overruled because the NOAT TDP have been filed.<br><br>With respect to the demand for language concerning "risk" regarding the NCSG "withdraw[ing] consent to the proposed distribution," this objection should be overruled because that is the functional equivalent of disclosing that the NSCG may not to accept the Plan, and the Debtors are not required to log a particular creditor or creditor group's likelihood of voting to accept or reject the Plan in order to meet section 1125's "adequate information" requirements.  (*See* Reply ¶¶ 11-12, 18.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | l.  The Disclosure Statement and Plan's "omissions must be rectified before any solicitation is authorized, and additional time to supplement objections or raise new objections, if any, and for the Court to consider them, must be provided before any disclosure statement is approved." (¶ 2 n.4.)<br><br>"[S]olicitation of the Plan is premature because there remain unresolved disputes within and between creditor constituencies that must be wrapped up for creditors to make an informed decision on the Plan.  This includes resolutions with holders of the Hospital Claims, the private health insurers referred to as third-party payors or 'TPPs,' the personal injury claimants, the U.S. Department of Justice, and the UCC." (¶¶ 7, 70.) | l.  This procedural objection should be overruled given that the NCSG's disclosure-related objections should be overruled for the reasons set forth herein.<br><br>The Debtors have described the material aspects of the Plan and made disclosures regarding the same that meet the "adequate information" requirement of section 1125. |
| | m.  The Plan is patently unconfirmable because "the non-consensual releases of State police power claims against the Sackler Families . . . do not satisfy the Second Circuit's requirements for non-consensual releases in *Metromedia* and its progeny."  (¶¶ 3, 11-28.) | m.  The NCSG is challenging whether the nonconsensual third party releases contemplated under the Plan satisfy the applicable Second Circuit standard for granting such releases but that is an issue that is properly addressed at confirmation.  (*See* Reply ¶¶ 22-25.)<br><br>Moreover, as discussed at length in the Reply, the Plan is not patently unconfirmable because third party releases are permitted under Second Circuit law.  (*See id.* ¶¶ 42-45.)  And, as the Debtors will demonstrate at confirmation, the proposed nonconsensual third-party releases are necessary and appropriate in these cases under applicable law.  (*See id.* ¶¶ 46-48.) |
| | n.  "A non-consensual release of state police power claims also exceeds this Court's subject matter jurisdiction" because "[t]here is no Bankruptcy Code authority for granting that release, and the claims to be released will not affect the estate *res*." (¶¶ 29-37.) | n.  The NCSG is challenging the legal basis for granting nonconsensual third party releases in these chapter 11 cases, including with respect to whether the Court has jurisdiction to confirm a plan providing for nonconsensual third party releases.  But these issues are properly addressed at confirmation.  (*See* Reply ¶¶ 22-25.)<br><br>Moreover, as discussed at length in the Reply, the Plan is not patently unconfirmable because the Court has |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | jurisdiction to confirm a plan with nonconsensual third party releases. (*See id.* ¶¶ 42-45, 49-50.)  The Debtors will demonstrate at confirmation that the Shareholder Releases contemplated under the Plan are necessary and appropriate in these chapter 11 cases. (*See id.* ¶¶ 46-48.) |
| | o.  The Court does not have jurisdiction to grant criminal releases but "[n]otwithstanding the Court's invitation for the Debtors or others to confirm that the proposed releases under the Plan do not and will not cover criminal releases of the Sackler Families, the Debtors have effectively declined to do so" and "neither the Disclosure Statement nor the Plan answers the question whether the releases of the Sackler Families to be contained in the Plan are intended to include the non-consensual release of criminal liability." (¶¶ 38-40.) | o.  This objection has been adequately addressed because the Plan and Disclosure Statement do not purport to provide criminal releases to the Shareholders.  (Plan § 1.1 (defining "Excluded Claim" to include "any criminal action or criminal proceeding . . . ."); Disclosure Stmt. § I.F).  Moreover, the Disclosure Statement, as amended, states clearly that "[a]ll releases provided for in the Plan specifically exclude from the scope thereof any criminal action or proceeding . . . ." (Disclosure Stmt. § I.F.)<br><br>The Debtors have described the material aspects of the Plan and made disclosures regarding the same that meet the "adequate information" requirement of section 1125. |
| | p.  "The Plan . . . is unconfirmable as a matter of law because it proposes an improper classification scheme under Bankruptcy Code section 1122 combining the States and political subdivisions, clearly a scheme to advance the Debtors' cramdown aspirations." (¶ 4.)  This "violates the core of state sovereignty, upends the *parens patriae* powers of the States, and undermines the broad statutory, constitutional, and common-law powers that State Attorneys General have as chief law enforcement for their citizens," as well as "the so-called Dillon Rule." (¶¶ 4, 44-50.) | p.  This objection is properly addressed at confirmation.<br><br>This objection also fails on the merits.  As explained in the Reply, claims in Class 4—which contains all Non-Federal Governmental Claims—are properly classified under the Bankruptcy Code. (*See* Reply ¶¶ 26-33.) |

| Objecting Party | | Summary of Objection | | Debtors' Response |
|---|---|---|---|---|
| | q. | The Plan violates the Bankruptcy Code because it "permits the Debtors to modify the scope of the Plan's releases on consent of the Governmental Consent Parties (which do not include the [NCSG]) without additional disclosure pursuant to Bankruptcy Code section 1125." (¶ 74.) | q. | This objection should be overruled because the Plan does not purport to remove the requirement of complying with section 1125 (for those modifications that require such compliance) should the Debtors make a modification to the releases pursuant to the section 1127. Rather, the language quoted by the NCSG adds an <u>additional</u> limitation to the Debtors' ability to modify the release language by providing that "any such amendment, modification or supplement that expands the scope of the Releases shall be acceptable to the Governmental Consent Parties." (*See* Disclosure Stmt. § IV.K.3(i).) |
| 13. The State of West Virginia, ex rel. Patrick Morrisey, Attorney General ("**West Virginia**") [Dkt. No. 2703] | a. | Although "the ultimate allocation scheme is a confirmation issue rather than a disclosure statement issue" (¶ 4), the Disclosure Statement lacks adequate information because neither the Plan nor the Disclosure Statement includes provisions relating to the actual allocation of proceeds between the various states and territories. (¶¶ 8-11.) Because "it appears that the intention is to leave the ultimate decision of allocation issues to" NOAT, "creditors are being asked to vote on the plan without knowing how their distributions are likely to be calculated, or how to achieve redress if a board of trustees is given sole discretion to allocate funds." (¶ 3.) "West Virginia and its analytics team have spent a great deal of time and effort analyzing the interstate allocation plan which is being advanced by many of the states, and believe that if adopted, it will render the plan unconfirmable because, although it purports to treat all states equally because all will be governed by the same set of factors, states such as West Virginia will suffer badly because the plan fails to account in any meaningful way for the great disparities in intensity of opioid addiction and opioid death that exists between the states." (¶ 6.) West Virginia is joined in its objection by a number of West Virginia local governments listed in the objection. (¶ 13.) | a. | The Debtors submit that this objection is moot as West Virginia acknowledges (*see infra* Row 13) that this objection has been addressed because the NOAT Trust Distribution Procedures ("**NOAT TDP**") have been filed. (*See* Ex. G, Third Plan Suppl. (May 15, 2021), Dkt. No. 2867 (replacing and superseding prior version attached thereto as Exhibit G-1).) With respect to its substantive challenge to the allocation scheme under the NOAT TDP, West Virginia concedes that this is an issue properly addressed at confirmation. (*Id.*) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 14. Supplemental Statement Regarding West Virginia's Objection (**"W.V. Statement"**)<br><br>[Dkt. No. 2857] | a. The Debtors have "provided a formula setting forth distribution percentages, rending the objection to the Disclosure Statement moot, but nonetheless, West Virginia reserves its right to, and currently intends to, objection to the approval of the Plan insofar as it adopts the allocation scheme as presently structured." (¶ 3.)<br><br>"Without exploring West Virginia's concerns about the allocation scheme in greater depth at this stage of the case, it suffices to say that West Virginia believes that this allocation scheme represents an attempt by some of the more populous states to claim a greater share of the proceeds to be distributed than would be the case if the money were truly going where it is most needed." (¶ 5.)<br><br>"West Virginia hopes to resolve these issues through negotiation rather than litigation, since it shares the goal of all parties of a speedy confirmation process so that the distribution process can begin as quickly as possible." (*Id.*) | a. As West Virginia acknowledges (W.V. Stmt. ¶¶ 2-3), this objection has been addressed because the NOAT TDP have been filed.<br><br>With respect to its substantive challenge to the allocation scheme under the NOAT TDP, West Virginia concedes that this is an issue properly addressed at confirmation. (*Id.* ¶ 5.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 15. Barbour County and Certain Other West Virginia Cities, Towns, and Counties<br><br>[Dkt. No. 2723][5] | a. The Objectors filed a joinder to the objection of the State of West Virginia.  See *supra* Row 13 for West Virginia's objection. | a. See *supra* Row 13 for responses to West Virginia's objection. |
| 16. Uphur County Commission, Randolph County Commission, Doddridge County Commission, Marion County Commission, Wetzel County Commission, Tyler County Commission, Ohio County Commission, Marshall County Commission, Lewis County Commission, Monongalia County Commission, Hancock County Commission, Brooke County Commission.<br><br>[Dkt. No. 2725] | a. The Objectors filed a joinder to the objection of the State of West Virginia.  See *supra* Row 13 for West Virginia's objection. | a. See *supra* Row 13 for responses to West Virginia's objection. |

[5] The West Virginia cities, towns, and counties include: Clay County; Hardy County; Lincoln County; Mason County; McDowell County; Mercer County; Mingo County; Preston County; Taylor County; Tucker County; Webster County; Mineral County; Grant County; Monroe County; Town of Addison (a/k/a Town of Webster Springs); Village of Barboursville; City of Belington; Town of Chapmanville; Town of Delbarton; Town of Gilbert; City of Grafton; Town of Hamlin; Town of Junior; Town of Kermit; Town of Matewan; City of Moundsville; City of Mullens; Town of Oceana; City of Philippi; City of Point Pleasant; City of Weirton; City of Welch; Town of West Hamlin; and City of Williamson.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 17. Independent Emergency Room Physician, Michael Masiowski, Individually and as a Putative Class Representative ("**Dr. Masiowski**")[6]<br><br>[Dkt. No. 2708] | a. The bulk of the objections raised by Dr. Masiowski are the same as those made by the UST, as indicated in footnote 3 of his pleading, and thus his pleading is essentially a joinder to the UST's objection. (*See* pg. 3 n.3.) | a. To the extent Dr. Masiowski joins in an objection by the UST that has been fully or partially resolved, Masiowski's joinder in that objection should be likewise resolved. (CMO ¶ 39.)  To the extent Dr. Masiowski joins in an objection by the UST that has been overruled, Dr. Masiowski's joinder in that objection should be likewise overruled. (*Id*.)  To the extent the Court deems Dr. Masiowski to have separately and independently incorporated the objections raised by the UST into his pleading, those objections should be overruled on the merits for the reasons stated in Row 1, *supra*. |

---

[6] Notwithstanding Dr. Masiowski's representation that he is a "putative class representative" of a class of "independent emergency room physicians," Dr. Masiowski withdrew his Motion for Class Treatment and does not represent a class.  *See* Dkt. No. 1746 (Notice of Withdrawal of ER Physician's Motion for Class Treatment [1629]).

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b.  The Disclosure Statement "fails to provide sufficient information regarding the justification for the Court's authority, constitutional or otherwise, to direct a substantial amount of the estate value to be directed to resolving disputes regarding allocation of the Debtors' value across certain groups of Opioid Plaintiffs (non-personal injury) exclusively for abatement." (pg. 4)<br><br>The Disclosure Statement improperly mandates that settlement distributions be used for abatement without providing information "as to what would be a valid Abatement Plan and who would administer such a plan." (pgs. 15-16.) | b.  This objection should be overruled.  The Disclosure Statement, as amended, describes the abatement distribution framework contemplated by the Plan at length.  (Disclosure Stmt. §§ I.B, III.S.)  For example, the Disclosure Statement contains an extensive, plain-English overview of the trust framework in its Executive Summary, including an overview of the proposed $250 million distribution to a trust for hospitals and other treatment providers ("**Hospital Trust**") and the procedures by which this Hospital Trust will process, and make appropriate distributions on account of, claims in Class 6, including Dr. Masiowski's. (*id.* §§ I.B, III.S.)  Moreover, the Disclosure Statement provides an overview of approved abatement purposes for which distributions by the Hospital Trusts may be used. (*id.* § III.S.1.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125.<br><br>To the extent that this objection is a substantive challenge to Hospital TDP procedural requirements or the recoveries that may be provided thereunder, including a critique of the abatement-centric framework, it should be overruled because that issue is properly addressed at confirmation.  (Reply ¶ 37 n.12.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | c. The Disclosure Statement "fails to provide sufficient information regarding the justification related to the [c]laims [p]rocedures and shifting of the [b]urden of [p]roof" because "the Plan permits Debtors to assert vague and unsupported objections to claims," in violation of section 502(a).  (pgs. 4, 22-24.)<br><br>The objection process is "illusory" because the Debtors are given "sole discretion and authorization to adjourn any hearing at any time simply by providing notice to the creditor and the Court." (pgs. 23-24.)<br><br>Masiowski adopts the joint objection of distributors, manufacturers, and pharmacies to the Debtors' motion for entry of an order approving omnibus claims objection, settlement, and hearing procedures, to the extent that the "arguments are intertwined." (pgs. 24-25.) | c. This untimely objection to the Debtors' proposed claims objection procedures should be overruled.  The Court entered the *Order Approving Omnibus Procedures* on April 22, 2021 [Dkt. No. 2878]. |
| 18. Supplement to Objection of Independent Emergency Room Physician, Dr. Michael Masiowski<br><br>[Dkt. No. 2794] | a. The Disclosure Statement, as amended, "continues to be ambiguous by failing to provide a means to readily identify the inclusion of ER Physician in the '150 proof of claims filed by other treatment providers.'" (pg. 2.)<br><br>Dr. Masiowski asserts that "[i]t is impossible to tell if ER Physicians are [ ] entitled to a [d]istribution pursuant to the Disclosure Statement" because there are no "means to identify who is included in the '150 Proofs of Claims filed by other treatment providers.'" (pg. 4.) | a. This objection should be overruled because the Disclosure Statement defines Class 6 as including "all Claims against any Debtor held by a <u>provider of healthcare treatment services or any social services</u>, in its capacity as such, and that is not held by a Domestic Governmental Entity, including, based on the Debtors' initial review, the Claims set forth in the 1,030 Proofs of Claims filed by hospitals and the 150 Proofs of Claims filed by other treatment providers." (Disclosure Stmt. § III.S.1 (emphasis added).)  The Debtors submit that this description is clear on its face.  Indeed, Dr. Masiowski was able to identify himself as being classified in this class, and all of the Proofs of Claims that are mentioned as being a part of the Hospital Claims will receive a Hospital Claims ballot.<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b.  The language of the Disclosure Statement is ambiguous because (1) the Hospital TDP "seem to not include any 'other healthcare service providers' and only include[] Hospitals, in contradiction of the definition of 'Class 6'"; (2) the Hospital TDP "seem to provide . . . that 'other healthcare service providers' that are included in Class 6 are prohibited from any disbursement"; and (3) "the Disclosure Statement fails to provide any rationale for . . . why Hospitals that did not file Proof of Claims are included" as potential recipients under the Hospital TDP.  (pgs. 2, 5-8.)<br><br>Moreover, the Disclosure Statement's explanation of the Hospital TDP "create[s] more ambiguity" because the "process only speaks about Hospitals—not other types of healthcare providers that submitted valid claims."  (pgs. 5-7.)  In particular, the "Hospital Trust Abatement Form . . . requires a certification that the Hospital adheres to the standard of care for the emergency department, hospital wards and outpatient clinics at the time of any prospective evaluation, diagnosis, and treatment of OUD" and the "ER Physician cannot certify what is required."  (pg. 6.) | b.  This objection should be overruled.  The Disclosure Statement and TDP themselves make clear that the Hospital TDP apply to all claims in Class 6, which include claims by hospitals and other treatment providers, including Dr. Masiowski.  (*See* Disclosure Stmt. § III.S.1; Hospital TDP at 1 & n. 3.)  Moreover, the Hospital TDP are not ambiguous nor do they preclude distributions to treatment providers other than hospitals.  As the Disclosure Statement and Hospital TDP state, each claimant—whether a hospital or non-hospital treatment provider—that makes the required certifications (Disclosure Stmt. § III.S.1; Hospital TDP §§ 3, 7.) and submits the necessary Hospital Abatement Distribution Form and proof of claims data (Cumulative Blackline § III.S.1; Hospital TDP §§ 4.1(a)(c), 5) is eligible to recover under the applicable model. (Reply ¶ 37 n.12.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125.<br><br>The remaining objections (including as to substance of the required certifications claimants have to make to be eligible for distributions, who is eligible for distributions, or the model governing distributions) are not disclosure statement objections.  They are instead premature objections to the substance of the Hospital TDP themselves and should therefore be overruled and deferred to confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | c. The language of the Debtors releases "is overbroad" "based on the definitions of 'Releasing Parties' and 'Related Parties.'" (pgs. 3, 9.) "[T]he defined terms create an exponentially expanding web of released and releasing parties, extending backward into the past and forward into the future." (pgs. 9-10.)<br><br>The "additional qualification in the Amended Disclosure [S]tatement regarding the Releases is convoluted and nearly incomprehensible" and, thus, "is not in a readily understandable format as required by the Bankruptcy Code." (pgs. 3, 11-12.) | c. This objection should be overruled because the Plan and the Disclosure Statement define "Releasing Parties" and explain that the releases may apply to Related Parties of Related Parties under certain circumstances. (*See* Plan § 1.1; Disclosure Stmt. § I.F.2.) Moreover, the Disclosure Statement now includes a "plain language" summary of the meaning of the Related Parties clause. (*See* Disclosure Stmt. § I.F.1.)<br><br>In addition, although the schedule of Excluded Parties referenced in the Plan is subject to ongoing negotiations and is not included in the Disclosure Statement, the Disclosure Statement states that the schedule will be provided in the Plan Supplement prior to the Voting Deadline. (*See* Disclosure Stmt. § IV.)<br><br>These disclosures adequately inform voting creditors about the scope of the releases contemplated under the Plan, and, thus, the Debtors respectfully submit are sufficient to satisfy the "adequate information" requirement under section 1125 and permit solicitation to proceed. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | d.  The "Hospital Trust Distribution Procedures were not filed with the Amended Disclosure" and, thus, "[a]ny objections to those procedures cannot be heard until July 14, the Plan Objection hearing date." (pg. 12.)  "The failure to attach the [d]istribution procedures to the Disclosure Statement is not cured by a paragraph that tells the average creditor they are in the Plan and can be found there[,] [e]specially as changes are coming in almost biweekly to the Disclosure Statement and the Plan." (pgs. 12-13.) | d.  This objection should be overruled because drafts of the Hospital TDP were filed prior to the Disclosure Statement hearing and the Supplemental Objection Deadline, and the Disclosure Statement informs creditors how the TDP can be obtained free of charge from the Prime Clerk LLC, the Solicitation Agent, including by visiting the restructuring website for these cases chapter 11 cases, which allow them the opportunity to evaluate the Hospital TDP before the Voting Deadline.  (Ex. A, Third Plan Suppl. (May 15, 2021), Dkt. No. 2867 (replacing and superseding prior version attached thereto as Exhibit A-1); Disclosure Stmt. § I.B n.5.)<br><br>In addition, the Disclosure Statement describes in detail the Hospital TDP and the treatment of claims in Class 6. (*See* Disclosure Stmt. § III.S.1.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 19. Second Supplement to Objection of Independent Emergency Room Physician, Dr. Michael Masiowski<br><br>[Dkt. No. 2828] | a. "The Amended Disclosure Statement does not provide any information about the calculation methodology that explains how it was determined and the basis of why the Leiger Model and Algorithm is effective and acceptable. The information in the Amended Disclosure Statement is completely inadequate for a creditor to determine whether the methodology is a valued process to determine abatement distributions." (pgs. 3-4.) | a. This objection should be overruled. The Disclosure Statement explains that the calculation methodology is based on "(1) the diagnostic codes associated with the operational charges incurred by the Hospital Authorized Recipient in connection with the treatment of Opioid Use Disorder ("OUD"), (2) the portion of such charges that were not reimbursed, and (3) certain other weighted determination factors." (*See* Disclosure Stmt.§ III.S.1.)<br><br>To the extent Dr. Masiowski is objecting to the substance of the Hospital TDP (including the Leiger Model), that is an issue that is properly addressed at confirmation on a full evidentiary record. (*See* Reply ¶ 37 n.12.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |
| 20. Baltimore City Board of School Commissioners, Board of Chicago School District No. 299, Board of Education of East Aurora School District 131, Board of Education of Miami-Dade County Public Schools, Board of Education of Thornton Fractional Township High School District 215, Board of Education of Thornton Township High | a. The Disclosure Statement does not contain adequate information because it fails to define "Sackler Parties" and/or "Sackler Entities" under the Plan with any specificity, thereby failing to identify the Sackler individuals and entities that would be released. (¶¶ 30, 30 n.13.) | a. The Disclosure Statement, as amended, contains the text of the Shareholder Releases. (*See* Disclosure Stmt. §§ I.F.3-5). The Shareholder Released Parties, moreover, are defined in the Disclosure Statement and the Plan. (*id.* § I.F.3; Plan § 1.1 (defining "Shareholder Released Parties" to include, among others, any equity owners of the Debtors, members of the Sackler Families, and persons be listed in an Annex to the Shareholder Settlement Agreement that will be filed before the Disclosure Statement hearing).<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement. (Reply ¶ 1.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| School District 205.[7]<br><br>[Dkt. No. 2720] | b.  The Disclosure Statement does not contain adequate information because the Disclosure Statement and Plan fail to define "Shareholder Released Claims," thereby failing to identify the claims against the Sackler Entities that would be released. (¶¶ 31-32, 32 n.15.) | b.  The Disclosure Statement, as amended, contains the text of the Shareholder Releases. (*See* Disclosure Stmt. §§ I.F.3-5). Moreover, the Plan and Disclosure Statement define "Shareholder Released Claims." (*See id.* § I.F.3; Plan § 1.1.)<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement. (Reply ¶ 1.) |
| | c.  The Disclosure Statement lacks adequate information because it fails to provide a "basis for evaluating the adequacy of the consideration that the Sackler Parties are offering." (¶ 33.) | c.  This objection has been adequately addressed because the Disclosure Statement, as amended, contains 17 pages detailing the Special Committee's independent investigation into potential claims against the Sackler Families and 19 pages of additional information concerning the Debtors' evaluation of the proposed settlement with the Sackler Families. (*See* Disclosure Stmt. §§ III.Y, III.AA.) In addition, the Disclosure Statement includes a summary of the investigation of claims against the Sacklers conducted by the Debtors' creditors. (*See id.* § III.BB.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |

[7] The following public schools listed in Exhibit A of this objection have not filed proofs of claim in these cases: Board of Education of Mason County Public School District, Board of Education of Putnam County Schools, Board of Education of Wyoming County Schools, Board of Education of Marion County Schools, and Board of Education of Jefferson County Public Schools.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | d. The Disclosure Statement lacks adequate information because it fails to specify the proposed restrictions that would be placed on the Sacklers upon confirmation of the settlement, including because the prohibition is subject to "exceptions" yet "to be agreed" and because the Disclosure Statement does not explain what "affirmative and restrictive covenants" will be "mutually agreed." (¶ 34.) | d. The Disclosure Statement provides a summary of the terms of the proposed Shareholder Settlement, including that "certain members of the Sackler Entities to be agreed . . . will be prohibited from engaging in the manufacturing or sale of opioids, subject to exceptions to be agreed." (Disclosure Stmt. § III.Z.) Additional information regarding covenants in connection with the Shareholder Settlement Agreement will be provided before the Disclosure Statement hearing. |
| | e. The Disclosure Statement lacks adequate information about the procedure for allocating NOAT distributions, including because it does not state (i) how "NOAT proposes to pick and choose among abatement initiatives" (ii) "the priorities that may guide [NOAT's] decision making process," (iii) whether there has been any "predetermined allocation amounts . . . already reserved for certain creditor groups," (iv) "[w]hat prevents the NOAT from favoring one constituency over another," (v) whether claimants will "have the right to opt out of the NOAT procedures," and (vi) whether "the Public School District Creditors [can] challenge and appeal determinations of the NOAT." (¶¶ 35-39.) | e. This objection should be overruled. The Disclosure Statement, as amended, sets out in detail how NOAT will allocate abatement funds among states, including the specific percentage allocations to each state. (See Disclosure Stmt. § III.S.5.) The Disclosure Statement also contains an overview of the procedures governing intrastate allocation of NOAT abatement funds, including a description of the process by which claimants may file a "Statewide Abatement Agreement" ("SAAs"), or in the absence of a consensual intrastate allocation agreement, a "Default Allocation Mechanism" for Non-SAA states and the corresponding allocation model to be employed in that scenario. (See id.)<br><br>Finally, the Disclosure Statement describes the procedure by which claimants may object to any apportionment, allocation, or use or expenditure of NOAT funds. (See id.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125.<br><br>To the extent that the Public Schools are objecting to the substance of the NOAT TDP, that is an issue for confirmation. (See Reply ¶¶ 35-37.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | f.  The Disclosure Statement lacks adequate information because it fails to adequately describe the scope of Claim Holders' releases of the Debtors' "Related Parties" (¶¶ 41-45) in the following ways:<br><br>• "Released Parties" is not defined in the Disclosure Statement (¶ 41);<br><br>• The Disclosure Statement fails to alert creditors that Claim Holders' release extends beyond the Debtors to NewCo, TopCo, the Plan Administration Trust, the Master Disbursement Trust and the Creditor Trusts and the "related parties" of each of these entities, as that term is defined in Plan § 1.1 (¶ 42);<br><br>• The Disclosure Statement fails to alert creditors that releases extend to the "Related Parties of each of the [Related Parties]" identified in Plan § 1.1 (¶¶ 42-44); and<br><br>• The Disclosure Statement does not alert creditors to the possibility that they may be releasing claims against McKinsey & Company through the scope of the Claim Holders' releases (¶ 45). | f.  The objection has been adequately addressed because the Plan and Disclosure Statement removes NewCo, TopCo, the Plan Administration Trust, the Master Disbursement Trust, and the Creditors Trusts from the scope of the releases.  (*See* Cumulative Blackline § I.F.) As noted with respect to the UST's objection (Row 1(f)), these entities are now defined as Protected Parties and thus protected by the Channeling Injunction instead. (Disclosure Stmt. § I.E.)<br><br>The remainder of this objection should be overruled because the Plan and the Disclosure Statement define "Released Parties" and explain that the releases may apply to Related Parties of Related Parties under appropriate circumstances. (*See* Plan § 1.1; Disclosure Stmt. § I.F.1; Reply ¶¶ 7-8, 13, 46-48.)  Moreover, the Disclosure Statement now includes a "plain language" summary of the meaning of the Related Parties clause. (Disclosure Stmt. § I.F.1.)<br><br>In addition, although the schedule of Excluded Parties referenced in the Plan is subject to ongoing negotiations and is not included in the Disclosure Statement, the Disclosure Statement states that the schedule will be provided in the Plan Supplement prior to the Voting Deadline. (*See* Disclosure Stmt. § IV.)<br><br>These disclosures satisfy the "adequate information" requirement under section 1125.<br><br>To the extent that the Public Schools are challenging the propriety of the claim holders' releases, that is a plan objection that should be deferred to confirmation.  (*See* Reply ¶¶ 22-25.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | g. The Disclosure Statement's description of the release provision in Section I.F.2 contains an "error" because the Plan does not provide for a release from claims arising from or related to "Releasing Parties." (¶ 45 n. 20.) | g. This objection has been adequately addressed.  The Debtors have revised Disclosure Statement Section I.F.2 to parallel the Plan's release provisions and eliminate any ambiguity concerning the scope of the release of the Debtors.  (*See supra* Row 1(b).)   These disclosures satisfy the "adequate information" requirement under section 1125. |
| | h. The plan is unconfirmable because "nothing in the Bankruptcy Code expressly authorizes the release or permanent injunction of claims against non-debtors." (¶¶ 47, 53.) | h. This objection should be overruled.  The Schools are challenging whether the nonconsensual third party releases contemplated under the Plan satisfy the applicable Second Circuit standard for granting such releases but that plainly is an issue that is properly addressed at confirmation.  (*See* Reply ¶¶ 22-25, 41.) <br><br> As discussed at length in the Reply, the Plan is not patently unconfirmable because third party releases are permitted under Second Circuit law.  (*See id.* ¶¶ 42-45.) <br><br> Moreover, this objection fails on the merits because the Debtors will be able to demonstrate at confirmation that proposed nonconsensual third-party releases are necessary and appropriate in these cases.  (*See id.* ¶¶ 46-48.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | i.  The Plan is unconfirmable because the terms of the Sackler releases are not included in the Plan. (¶ 51.) | i.  The Disclosure Statement, as amended, contains the text of the Shareholder Releases. (*See* Disclosure Stmt. § I.F.3-5). The Shareholder Released Parties, moreover, are defined in the Disclosure Statement and the Plan. (*Id.* § I.F.3; Plan § 1.1 (defining "Shareholder Released Parties" to include, among others, any equity owners of the Debtors, members of the Sackler Families, and persons be listed in an Annex to the Plan that will be provided before the Disclosure Statement hearing).<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement. |
| | j.  The Plan is unconfirmable because the Plan provides no basis for finding that the "release and injunction of the Public School Creditors' claims are adequately supported by consideration." (¶ 52.) | j.  This objection should be overruled. The Schools are challenging whether the nonconsensual third party releases contemplated under the Plan satisfy the applicable Second Circuit standard for granting such releases but that is an issue that is properly addressed at confirmation. (*See* Reply ¶¶ 22-25, 41.)<br><br>As discussed at length in the Reply, the Plan is not patently unconfirmable because third party releases are permitted under Second Circuit law. (*See id.* ¶¶ 42-45.)<br><br>Moreover, this objection fails on the merits because the Debtors will be able to demonstrate at confirmation that proposed nonconsensual third-party releases are appropriate in these cases. (*See id.* ¶¶ 46-48.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | k. The Plan is unconfirmable because the definitions of "Released Parties" and "Releasing Parties" in Section 10.6(b) of the Plan are overly broad, including because they may release "McKinsey." (¶¶ 55-56.) | This objection should be overruled. This is not a disclosure statement objection; it is properly addressed at confirmation.<br><br>In addition, although the schedule of Excluded Parties referenced in the Plan is subject to ongoing negotiations and is not included in the Disclosure Statement, the Disclosure Statement states that the schedule will be provided in the Plan Supplement prior to the Voting Deadline. (*See* Disclosure Stmt. § IV.)<br><br>Moreover, this objection fails on the merits because the Debtors will be able to demonstrate at confirmation that the releases contemplated under the Plan are necessary and appropriate in these chapter 11 cases. (*See* Reply ¶¶ 46-48.) |
| | l. The Plan is unconfirmable because the Plan illegally classifies the Public School District Claimants with the Non-Federal Domestic Governments. More specifically, the "Public School District Creditors have not been treated on a par with other creditors in the non-federal domestic governmental class," including because "Government Consent Parties" under the Plan do not include an entity to represent school interests. (¶ 58.)<br><br>The Public School District Claimants should instead be classified in their own class like other claimholders (e.g., Tribes, Hospitals, Third-Party Payor, Ratepayer, NAS Monitoring, PI) because of the "open ended character of the harm sets the public school claimants apart." (¶ 58.) | k. This objection should be overruled. This objection is not a disclosure statement objection; classification objection are objections properly addressed at confirmation. (*See* Reply ¶¶ 22-25.)<br><br>Nevertheless, as set out in the reply, this objection also fails on the merits. The classification scheme provided under the Plan, including as it applies to the Non-Federal Governmental Claims, is proper under the Bankruptcy Code. (*See id.* ¶¶ 26-34.) |
| | m. The discovery schedule is unreasonable and violates due process because all document discovery is compressed into a four-week period (¶ 62.) | l. This objection was resolved in connection with the *Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* (Mar. 18, 2021), Dkt. No. 2536. *See* May 12 Hr'g Tr. 34:9-24, 48:13-21. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 21. Supplement to Objection of the Public School District Creditors to Debtors' Motion<br><br>[Dkt. No. 2773] | a. The scope of the claim holders' releases and the channeling injunctions are still inadequately disclosed because the Disclosure Statement "does not tell creditors that the parties to be released include not only the Debtors themselves and their related parties." (¶ 15.) The Disclosure Statement does not adequately identify "the related parties" contemplated in the release definition of "related parties" to the releases. (*Id.*) | a. The Plan and the Disclosure Statement define "Released Parties" and explain that the releases may apply to Related Parties of Related Parties under appropriate circumstances. (*See* Plan § 1.1; Disclosure Stmt. § I.F.1; Reply ¶¶ 13, 46-47.) Moreover, the Disclosure Statement now includes a "plain language" summary of the meaning of the Related Parties clause. (Disclosure Stmt. § I.F.1.) |
| | b. The Disclosure Statement "fails to disclose the terms, scope or value of the third-party releases" and "provides no basis for assessing the adequacy of the consideration being offered in exchange." (¶ 13.) | b. The Disclosure Statement, as amended, contains the text of the Shareholder Releases. (*See* Disclosure Stmt. §§ I.F.3-5. In addition, the Disclosure Statement contains a detailed overview of the Special Committee's independent investigation into potential claims against the Sackler Families and additional information concerning the Debtors' evaluation of the proposed settlement with the Sackler Families, including issues related to collectability of potential judgments. (*See id.* §§ III.Y, III.AA.)<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement. (Reply ¶ 1.) |
| | c. The hearing on the disclosure statement should be postponed until after a meaningful opportunity to mediate outstanding issues regarding third party releases with counsel for the Debtors, the Sackler family, and objecting litigants. (¶ 12 n.4.) | c. This objection should be overruled for the reasons stated by the Court at the hearing held on May 12, 2021. (*See* May 12, 2021 Hr'g Tr. 18:25-19:11.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | d. Even as amended, the Plan "provides no assurance that special education programs and supplemental educational services in the public schools will receive any funding at all." (¶ 2.)<br><br>The additional information in the Second Plan Supplement "only underscores the unfairness of the proposed plan" because it "expands on the procedures that will govern the NOAT distribution" and "confirms that special education and supplemental services for public school children affected by opioids will not be funded by the NOAT distributions" because the money allocations have "been predetermined." (¶ 16.) | d. This objection should be overruled. This is not a disclosure statement objection; it is instead a challenge to the substance of the NOAT TDP, an issue properly litigated only at confirmation. (*See* Reply ¶¶ 35-37.) At confirmation, the Debtors will prove that the distribution scheme contemplated by the Plan complies with section 1129 and should be confirmed. (*See id.* ¶¶ 52-56.) |
| | e. The Debtors have violated their "duty to provide full and fair disclosure" because the "creditors are still left to guess at the terms of the Sackler release, one of the most critical and controversial features of the proposed plan." (¶ 12.)<br><br>The Disclosure Statement does not provide adequate information on the Sackler settlement, including "[t]he exit of the Sackler family from the opioid business" and "the 'affirmative and restrictive covenants' to be imposed under the Sackler Settlement Agreement." (¶ 14.) | e. The Disclosure Statement, as amended, contains the text of the Shareholder Releases. (*See* Disclosure Stmt. §§ I.F.3-5).<br><br>Moreover, additional information regarding covenants in connection with the Shareholder Settlement Agreement will be provided before the Disclosure Statement hearing.<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement. (Reply ¶ 1.) |
| | f. The Disclosure Statement "contains confusing references to a 'Shareholder Settlement Agreement' that appears to be the Sackler Settlement Agreement by another name." (¶ 16 n.6.) | f. This objection has been adequately addressed because the language in the Disclosure Statement regarding the defined term "Shareholder Settlement Agreement" has been clarified. (*See generally* Cumulative Blackline § I.F) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | g. The "Amended Plan remains unconfirmable as written" because "the proposed releases of the Debtors and others are still impermissibly overbroad, extending far-reaching immunity to an expansive and ill-defined web of 'Related Parties.'" (¶ 17.) | g. As noted above in Row 20(f), this objection has been adequately addressed because the Plan and the Disclosure Statement define "Released Parties" and explain that the releases may apply to Related Parties of Related Parties under appropriate circumstances. (Disclosure Stmt. § I.F.1; Plan § 1.1.) These disclosures satisfy the "adequate information" requirement under section 1125. |
| | h. The "Amended Plan remains unconfirmable as written" because the Plan "continues to lump the public school districts together with all of the other non-federal domestic governmental claimants" and other creditor constituencies "have been given their own respective classes." (¶ 17.) | h. This objection should be overruled. This is an objection that is properly addressed at confirmation.<br><br>However, this objection also fails on the merits because the classification scheme provided under the Plan, including as it applies to the Non-Federal Governmental Claims, is proper under the Bankruptcy Code. (*See* Reply ¶ 34.) |
| 22. Cherokee Nation<br>[Dkt. No. 2730] | a. The Disclosure Statement lacks adequate information because it references many documents that have not been filed. (¶ 3.) | a. This objection has been addressed. The additional Plan documents referenced have been filed. (*See, e.g.*, Plan Supplements, Dkt. Nos. 2732, 2737.) |
| | b. The Plan is patently unconfirmable because of several provisions, including, without limitation, the provisions proposing any purported restrictions on the use of proceeds that are distributed to creditors. (¶ 5.)<br><br>The Cherokee Nation notes that it is in discussions with the Debtors and their constituencies to remedy these infirmities (unnamed in the objection) and that "[u]ntil the Debtors revise the Plan to address these concerns, the Plan is patently unconfirmable and, as such, the Disclosure Statement should not be approved." (*Id.*) | b. The Disclosure Statement describes the abatement distribution framework contemplated under the Plan. (*See* Disclosure Stmt. § III.S.)<br><br>The Debtors respectfully submit that these disclosures are sufficient to satisfy the "adequate information" requirement under section 1125. |
| 23. Ad Hoc Committee on Accountability ("**AHCA**")<br>[Dkt. No. 2745] | a. This objection raises sixteen "questions" regarding the Disclosure Statement. | a. The objection should be overruled for the reasons set forth in the Reply. (*See* Reply ¶¶ 19-21.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 24. Peter W. Jackson<br><br>[Dkt. No. 2819] | a. "Mr. Jackson references and joins the objections of the United States Trustee." (pg. 2.) See *supra* Row 1 for the UST's objections. | a. To the extent that Mr. Jackson joins in an objection by the UST that has been fully or partially resolved, Mr. Jackson's joinder in that objection should be likewise resolved. (CMO ¶ 39.) To the extent Mr. Jackson joins in an objection by the UST that has been overruled, Mr. Jackson's joinder in that objection should be likewise overruled. (*Id.*) To the extent the Court deems Mr. Jackson to have separately and independently incorporated the objections raised by the UST into their pleading, those objections should be overruled on the merits for the reasons stated in Row 1, *supra*. |
| | b. "Mr. Jackson references and joins the objections of . . . the Ad Hoc Group of [NCSG]." (pg. 2.) See *supra* Row 12 for the NCSG's objections. | b. For the Debtors' responses to the objections, see *supra* Row 12 for responses to the NCSG's objections. |
| | c. "Mr. Jackson references and joins the objections of . . . the [AHCA]." (pg. 2.) See *supra* Row 23 for the AHCA's objection. | c. For the Debtors' responses to the objections, see Reply ¶¶ 19-20 for responses to the AHCA's objections. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | d.  "The Disclosure Statement appears to contain no analysis of the basis for granting the Shareholder Releases or the merits of the Sackler Direct Claims" and the "critical elements of [the Sackler] settlement have not been disclosed," including "[t]he final form of any [Shareholder] releases." (¶¶ 5, 7.) | d.  The Disclosure Statement provides 19 pages of additional information concerning the Debtors' evaluation of the proposed settlement with the Sackler Families, including issues related to collectability of potential judgments.  (*See* Disclosure Stmt. §§ III.Y, III.AA.)<br><br>The Disclosure Statement, as amended, contains the text of the Shareholder Releases.  (*See id.* § I.F.3-5).  The Shareholder Released Parties, moreover, are defined [in the Disclosure Statement] and the Plan.  (*Id.* § I.F.3; Plan § 1.1 (defining "Shareholder Released Parties" to include, among others, any equity owners of the Debtors, members of the Sackler Families, and persons be listed in an Annex to the Shareholder Settlement Agreement that will be filed before the Disclosure Statement hearing).<br><br>As set forth in the Reply, the Debtors and key estate stakeholders are working to resolve open points with respect to the Proposed Shareholder Settlement.  (Reply ¶ 1.) |
| | e.  "The Plan described in the Disclosure Statement is facially unconfirmable" because "by failing to value claims that personal injury and wrongful death tort claimants have asserted or could assert directly against the Debtors shareholders and related entities [in the liquidation analysis], the Plan would "violate the 'best interest of creditors' test of section 1129(a)(7)."  (¶¶ 2, 8-15.)<br><br>The Disclosure Statement "should include a liquidation analysis comparing creditors' recoveries under the Plan against the value creditors would 'receive *or retain*' in a chapter 7 liquidation of the Debtors" and provide assurance that the creditors "would, in fact, fare better under the plan than in a chapter 7 liquidation."  (¶¶ 14, 18-19.) | e.  This is not a disclosure statement objection; it is a best interest objection that must be addressed at confirmation.   As the Debtors also demonstrate in the Reply, this objection likewise fails on the merits.  (*See* Reply ¶¶ 51-56.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | f. The Plan "is facially unconfirmable" because it "would effectively force all personal injury and wrongful death claimants into a kind of mandatory arbitration" as it "appears to depend on nondebtor releases and channeling injunctions" that would make "the preliminary injunction permanent" against "about 600 lawsuits asserting direct personal injury and/or wrongful death tort claims." (¶¶ 2-4.)<br><br>"Bankruptcy Courts have no authority under the Judicial Code to determine the merits of [personal injury] claims—especially when they could be asserted against nondebtors." (¶ 21.)<br><br>"The PI Trust Distribution Procedures appear to vest in an 'administrator' the power to allow or disallow PI Claims," subject to "final and binding" appeals to an appeals master and, thus, it "appears that the plan creates a process that fully decides the allowability and amount of claims for personal injury and wrongful death torts without an opportunity for hearing before or determination by *any* judge. It is tantamount to mandatory arbitration of claims that would otherwise be subject to ordinary adjudication." (¶¶ 25-32.) | f. This objection has been adequately addressed because, as explained in the Disclosure Statement, the Non-NAS PI TDP includes an opt out mechanism which allows PI Claimants to elect to have their claims liquidated in the tort system pursuant to the procedures outlined in Exhibit B to the Non-NAS PI TDP or through the PI Trust pursuant to the streamlined procedures set forth in sections 6-9 of the Non-NAS PI TDP. (Disclosure Stmt. §§ I.B, III.S.7; PI Trust Distribution Procedures, Ex. C, Fourth Plan Suppl. § 1, Ex. B (May 17, 2021), Dkt. No. 2868 (replacing and superseding prior version).)<br><br>Moreover, as the Debtors demonstrate in the Reply, the Bankruptcy Court has jurisdiction to confirm the Plan, including the TDP. (*See* Reply ¶¶ 10, 23, 36.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 25. Supplemental Objection of Peter W. Jackson<br><br>[Dkt. No. 2881][8] | a.  "Because the original PI Trust Distribution Procedures were impermissible, and the new opt-out election cannot save them, the Amended Plan is unconfirmable. Because the Court should not approve a disclosure statement for a plan that is unconfirmable, the Amended Disclosure Statement should not be approved." (¶¶ 5-6.)<br><br>The Plan violates the Bankruptcy Code because it "creates a process that fully decides the allowability and amount of claims for personal injury or wrongful death torts without any opportunity for hearing before or determination by *any* judge. It is tantamount to mandatory arbitration of claims that would otherwise be subject to ordinary adjudication." (¶ 9.)<br><br>"Failing to satisfy the most basic requirements of contract law, the 'consent' that would be induced by the 'election' in the PI Trust Distribution Procedures is illusory. Thus, as demonstrated above, the Amended Plan is left to implement those procedures forcibly—but impermissibly—in violation of section 1129(a)(1)'s requirement that the Plan comply with the applicable provisions of the Bankruptcy Code and the Judicial Code." (¶ 31.) | a.  This objection is challenging the substance of the Non-NAS PI TDP, which is an issue that is properly addressed at confirmation on a full evidentiary record.<br><br>Moreover, Mr. Jackson cannot show that the Non-NAS PI TDP on its face renders the Plan patently unconfirmable.  To the contrary, as the Debtors demonstrate in the Reply, the Non-NAS PI TDP is appropriate under the Bankruptcy Code and all applicable law.  (*See* Reply ¶¶ 35-36, 38-40.)  And the Debtors will demonstrate at confirmation that the Non-NAS PI TDP, including the opt-out mechanism, complies with the Bankruptcy Code and are appropriate under the circumstance of these cases. |
| 26. Aaron R. Stimus[9]<br><br>[Dkt. No. 2627] | a.  Mr. Stimus "object[s] to all claims of state and federal attorney generals' claims." (pg. 2.) | a.  This issue is properly raised at confirmation. |

---

[8] This objection was not timely filed.

[9] On April 14, 2021, the Debtors received a subsequent letter from Mr. Stimus indicating that he wanted his prior letter to be disregarded after he realized that the Debtors were not the proper party to file the objection on his behalf.  However, given that Mr. Stimus is *pro se*, and for the sake of completeness, the Debtors have included his objection and provided a response thereto.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b.  Mr. Stimus "object[s] to all claims of . . . all persons who did not have a legal prescription to OxyContin."  (pg. 2.) | b.  This objection is properly raised at confirmation. |
| | c.  Mr. Stimus requests to be provided with "what courts (if any) have criminal and (or) civil adjudications (judges' orders) against Purdue-Pharma [sic] and its employees" and further requests the "court name and case number."  (pg. 2.) | c.  To the extent that Mr. Stimus is objecting to the adequacy of the information contained in the Disclosure Statement, the Disclosure Statement provides adequate information regarding the nature of the claims against the Debtors.  (*See* Disclosure Stmt. § I.B.) |
| 27.  Supplement Objection by Aaron R. Stimus<br><br>[Dkt. No. 2822] | a.  Mr. Stimus explains that his "objecti[on] to persons without a legal prescription is self[-]explanatory" because "Purdue Pharma would not be negligent to these persons and [it would] fraudulently take assets from persons with legitimate claims." (pg. 4.) | a.  This objection is properly raised at confirmation. |
| | b.  Mr. Stimus explains that he objected to the state and federal prosecutors' "agreement for 8.3 billion dollars" with Purdue "for criminal and civil charges" because the settlement "gives a lion share of the assets to the government, leaving a pittance to personal injury claims." (pg. 4.)<br><br>Mr. Stimus asserts that "it could be argued . . . that the government's agencies were complicit [i]n allowing the defective medication to come to market and being rewarded for incompetence." (*Id.*)<br><br>Mr. Stimus asks "Will the state and federal governments when receiving these billions of dollars give the tax payers a break or refund?" (*Id.*) | b.  This objection is properly raised at confirmation. |
| 28.  Jeanette Tostenson<br><br>[Dkt. Nos. 2634, 2766] | a.  Ms. Tostenson "object[s] to the current restructuring deal Purdue Pharma has presented" because "the maximum amount the individual and families that lost loved ones" may receive "is between $16,000 and $48,000, and there is no guarantee; it is based on a points system" while "[i]t appears the [f]ederal and [s]tate [g]overnment is receiving the majority of the funds offered by Purdue." (pg. 1.) | a.  This objection is properly raised at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | b.  Ms. Tostenson acknowledges that "this is a chapter 11 [b]ankruptcy case, so the Debtors should have the opportunity to restructure, but if this case continues to be extended, there won't be money left to be allocated" and "they should make every efforts to take care of the victims that are still suffering from their loss of a loved one." (pg. 1.) | b.  The Debtors remain fully committed to moving these cases forward as quickly and efficiently as possible in order to maximize and transfer the value of the estates to allowed or accepted claimants to address the opioid crisis. |
| 29.  Kevin McKenney Sr.  [Dkt. No. 2648] | a.  Mr. McKenney "object[s] to the restructuring plan and any plea deals or deals for criminal [sic] immunity" with the DOJ because "Purdue itself incorporated their own criminal disposition," "Judge Drain granted or ordered that criminal disposition to be incorporated into this civil bankruptcy filing," and this case "is an exception to the typical proceedings because criminal disposition is also addressed."  (pgs. 2-3.) | a.  This objection is properly raised at confirmation. |
| | b.  Mr. McKenney asks the court to "provide legal representation to all parties in this Bankruptcy Chapter 11 case" because "the court must provide" legal counsel to criminal defendants who are "financially unable to do so" and "therefore. . .the court must provide the same equality" to "creditors whom are financially unable" to retain legal representation.  (pgs. 3-4.) | b.  The U.S. Trustee appointed the Creditors' Committee to represent the interests of all unsecured creditors in these cases, including personal injury claimants like Mr. McKenney. |
| 30.  Ralph Olsen M.D.  [Dkt. No. 2652] | a.  Dr. Olsen indicates that he has filed a claim to recovery personal injury damages "based on the over-prescription [and] administration of OxyContin over a period of 8 weeks in late 2018." (pg. 1.)  Dr. Olsen argues that "[t]o even consider a settlement that can partially be paid by profits of Purdue Pharma selling more opioids is an insult to those who have suffered and more tragic than [him], died."  (Id.) | a.  This objection is properly raised at confirmation. |
| | b.  Dr. Olsen asks "the damages [he] seek[s] should be deemed non-dischargeable, due and payable in full" because "Purdue Pharma has admitted – under oath in Federal Court – that they are guilty of 'gross negligence.'" (Id.) | b.  This objection is properly raised at confirmation. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 31. Susan D. Haswell<br><br>[Dkt. No. 2653] | a. Ms. Haswell objects to "Purdue Pharma's Plan of Reorganization" because she believes that the Debtors "ha[ve] never been an honest debtor" based on "multiple articles" and that a "primary purpose of the law of bankruptcy is to give an honest debtor a 'fresh start.'" (pg. 1.) Ms. Haswell asserts that her "father was never educated on the risk of addiction related to [O]xy[C]ontin" and became "dependent on it" until he died. (pgs. 1-2.) Ms. Haswell believes that the Debtor will continue "to destroy more lives" if the reorganization plan is approved. (pg. 2.) | a. This objection is properly raised at confirmation. |
| 32. Scotti Madison<br><br>[Dkt. No. 2654] | a. Mr. Madison asks the Court to "reverse the amounts considered" for allocation to "individual states and local governments" because "the States are being rewarded the 'Lion's share', some four billion dollars, of the Settlement while the personal claimants" receive "an average claim of $5,196." (pgs. 1-2.) Mr. Madison believes that giving the government money received from the settlement is "just plain wrong." (*Id.*) | a. This objection is properly raised at confirmation. |
| 33. Pat Newmeyer<br><br>[Dkt. No. 2742] | a. Ms. Newmeyer "object[s] to the reorganization or restructuring of the Purdue Pharma" because the individual wants the Court "to remember the victims" and "not allow these drug companies to forget the victims who have no voice to object" like the individual's son who "was given OxyContin for pain relief," "overdosed on this medication and died." (pgs. 1-2.) | a. This objection is properly raised at confirmation. |
| 34. Maria Luisa C. Pena, wife and executor of the Francisco I. Pena, M.D. Estate<br><br>[Dkt. No. 2743] | a. Ms. Pena "object[s] to the disclosure statement and the [Debtors'] motions for bankruptcy" because she "inten[ds] to receive compensation." (pg. 1.) | a. This objection is properly raised at confirmation. |
| 35. Daniel L. Jackson<br><br>[Dkt. No. 2744] | a. Mr. Jackson asks that the Court "accept [his] objection to the Disclosure Statement and the Motion." (pg. 1.) | a. To the extent that this is an objection to the adequacy of the information provided in the Disclosure Statement, no basis is provided.<br><br>The Disclosure Statement meets the requirements of section 1125. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 36. Kelvin C. Singleton<br><br>[Dkt. No. 2767] | a. Mr. Singleton "object[s] to the Disclosure Statement filed by the debtors" because he "was fed opio[i]ds from oxyco[n]tin to [V]icodin to morphine" without anyone "telling [him] how addicted [he] could become" and he is "still suffering from the years of being addicted to this substance." (pgs. 1-3.) | a. To the extent that this is an objection to the adequacy of the information provided in the Disclosure Statement, no basis is provided.<br><br>The Disclosure Statement meets the requirements of section 1125. |
| 37. Carlos Martinez-Bermudez[10]<br><br>[Dkt. No. 2772] | a. Mr. Martinez-Bermudez asks "to intervene, join as a claimant, and be appointed counsel to assist [him] in filing a claim as well as to represent [him] at the April 21, 2021 hearing and submit objections." (pg. 2.) | a. To the extent that this is an objection to the adequacy of the information provided in the Disclosure Statement, no basis is provided.<br><br>The Disclosure Statement meets the requirements of section 1125. |
| 38. Unsecured Creditor Claim No. 104998<br><br>("**Claim No. 104998**")<br><br>[Dkt. No. 2876][11] | a. Claim No. 104998 objects, among other things, that the Plan is not "fair and equitable to the former individual patients who were targeted by Purdue." (¶ 3.1) | a. To the extent that this is an objection to the adequacy of the information provided in the Disclosure Statement, no basis is provided.<br><br>The Disclosure Statement meets the requirements of section 1125. |

[10] Mr. Bermudez has not filed a proof of claim in these cases.

[11] This objection was not timely filed.