AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell P. Hurley
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of
Unsecured Creditors of Purdue Pharma L.P.*, et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN RESPECT OF DISCLOSURE STATEMENT AND SOLICITATION
PROCEDURES MOTION FOR THIRD AMENDED CHAPTER 11 PLAN
FOR PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

this statement (the "Statement") in respect of the *Disclosure Statement for Third Amended Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors* [ECF No. 2907] (as amended, the "Disclosure Statement")[2] and the *Debtors' Motion to Approve (i) the Adequacy of Information in the Disclosure Statement, (ii) Solicitation and Voting Procedures, (iii) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (iv) Certain Dates with Respect Thereto* (the "Solicitation Procedures Motion") [ECF No. 2489] to (a) express the Official Committee's current position with regard to the Disclosure Statement and (b) in connection therewith, preview the Official Committee's intention to include in the Debtors' solicitation materials a letter (the "Official Committee Letter") summarizing the Official Committee's position with regard to the Plan.

## STATEMENT

1. The Official Committee had hoped that it would be in a position to express its unqualified support for the Plan and the Disclosure Statement in advance of the hearing to consider the adequacy of the Disclosure Statement, which currently is set for May 26, 2021. Unfortunately, however, as of the filing of this Statement—more than two months after the Debtors filed their first Disclosure Statement on March 16 and less than 48 hours before the anticipated Disclosure Statement hearing—that is not the case.

2. As all parties are aware, the Plan contains numerous complex and interrelated provisions, many of which continue to be negotiated at the moment of this filing. These provisions relate to, among other things: (i) the proposed settlement with the members of the Sackler family (the "Sackler Settlement"), including releases; (ii) the allocation of the estates' value between and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the *Third Amended Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors* [ECF No. 2904] (as amended, the "Plan"), as applicable.

2

among Opioid Claimants[3] and the Debtors' other creditors; (iii) the manner in which such value will be used; (iv) the organizational form and governance of the Master Disbursement Trust and the related Private and Public Creditor Trusts; and (v) the contemplated document repository. The advisors to the Official Committee have participated in literally hundreds of phone calls and Zoom sessions over the past three months with numerous other parties in interest regarding these provisions and dozens of other issues.

3. To be clear, substantial progress has been made. Indeed, the parties currently negotiating the Plan and the Sackler Settlement are engaged and working very hard, and agreements have been reached on countless issues that once seemed irreconcilable. These parties are expending extraordinary efforts to reach resolutions on as many issues as possible so that the resulting Plan—while certainly not perfect—will be something that all parties will feel comfortable prosecuting and defending in light of the numerous complex issues at play and the intense scrutiny that these cases have received and will continue to receive.

4. Notwithstanding these efforts, however, neither the Plan nor the Sackler Settlement has come to a final resting place as of the filing of this Statement. And this is the case even though Phase I of Mediation largely concluded almost 260 days ago, and an agreement in principle on the economic terms of the Sackler Settlement was reached during Phase II of Mediation more than 100 days ago. The Official Committee made clear in its insert in the March 16 Disclosure Statement that its consent to the Plan and the Sackler Settlement was conditioned upon achieving

---

[3] "Opioid Claimants" include: (i) the Federal Government; (ii) the 50 States and other political subdivisions of the United States; (iii) political subdivisions of the States; (iv) Native American tribes; (v) personal injury victims (including children diagnosed with NAS upon birth); (vi) a putative class representing the interests of children diagnosed upon birth with NAS seeking a medical monitoring fund; (vii) hospitals; (viii) third party payors, including health insurance companies and employer and government-sponsored health insurance plans administered by these companies; (ix) purchasers of private insurance; (x) emergency room physicians; and (xi) independent public school districts

resolution regarding all of the other terms of the Plan and the Sackler Settlement (which, in the case of the Sackler Settlement, included agreements, terms and conditions that had not even begun to be negotiated at the time). Now, almost 16 weeks later, there still is no agreement on certain of these provisions, but the negotiating parties are working very hard to resolve all open items.

5. The Debtors have expressed a fervent desire to move forward with the Disclosure Statement hearing on Wednesday, May 26, even absent resolution of these issues. Always cognizant of the costs of these Chapter 11 Cases and the opioid epidemic that plagues this country, the Official Committee supports this approach, and hopes that a resolution on open issues can be reached in the next 45 hours. If and when such a resolution is achieved, and the Official Committee determines that it can support the Plan and the Sackler Settlement, the Official Committee will alert all parties and the Court promptly, either prior to or during the Disclosure Statement hearing. On the other hand, if resolution (imperfect as it may be) cannot be achieved, the parties will need to make a decision on the appropriate path forward.

6. With regard to the Disclosure Statement itself, the Official Committee has refrained from commenting on the drafts for weeks, agreeing with the Debtors early on that rather than attempt to draft numerous surgical inserts into a comprehensive 400 page document that lays out the Debtors' perspective on the Chapter 11 Cases, the Official Committee would include in the Debtors' solicitation materials the Official Committee Letter, a standalone explanation of the Official Committee's perspective on the Plan and the cases as a whole.

7. The Official Committee believes the Debtors' solicitation materials would be incomplete absent the inclusion of the Official Committee Letter. Indeed, particularly in light of the unique nature of these cases and the significant role the Official Committee has played, the Official Committee believes that all creditors must be given the opportunity to understand the

4

Official Committee's perspective in order for such creditors to be in a position to make an informed determination as to whether to support the Plan.  Moreover, many—if not most—of the creditors whose votes will be solicited in connection with the Plan are not traditional financial creditors accustomed to analyzing the terms of a transaction through the lens of a disclosure statement and voluminous related materials, nor do many such parties have their own counsel.[4]  These creditors will benefit from the perspective of the sole creditor-only fiduciary in these cases, particularly in light of the Official Committee's significant and far-reaching role.  The Official Committee therefore submits that the Official Committee Letter will not only be informative to creditors, but also essential to their ability to understand the terms of the Plan and why it is structured the way it is.

8.    In conclusion, the Official Committee remains hopeful that it will be in a position to supplement this Statement with an additional filing (or comments at the Disclosure Statement hearing) indicating the Official Committee's broad support for the Plan.

## **RESERVATION OF RIGHTS**

9.    For the avoidance of doubt, the Official Committee expressly reserves all rights in respect of the Disclosure Statement and the Solicitation Procedures Motion including, without limitation, the right to object to approval of the Disclosure Statement or the Solicitation Procedures Motion, seek discovery and introduce evidence at any hearing related to the Disclosure Statement and the Solicitation Procedures Motion.

---

[4] Since the Debtors initially filed their proposed Plan, counsel to the Official Committee has received inquiries from dozens of creditors (if not more) with significant questions regarding particular provisions of the Plan, why the Plan is structured the way that it is and the Official Committee's views regarding whether the Plan is fair and reasonable.

| | |
|---|---|
| Dated: New York, New York<br>May 24, 2021 | AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>By: /s/ *Arik Preis*<br>Ira S. Dizengoff<br>Arik Preis<br>Mitchell P. Hurley<br>Sara L. Brauner<br>One Bryant Park<br>New York, New York 10036<br>Tel: (212) 872-1000<br>Fax: (212) 872-1002<br>idizengoff@akingump.com<br>apreis@akingump.com<br>mhurley@akingump.com<br>sbrauner@akingump.com<br><br>*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al. |

6