WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 371-2700
Fax: (305) 358-5744
Thomas E Lauria (admitted *pro hac vice*)
Laura L. Femino (admitted *pro hac vice*)

1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
Fax: (212) 354-8113
J. Christopher Shore
Michele J. Meises
Alice Tsier

*Co-Counsel for Ad Hoc Group of Individual
Victims of Purdue Pharma L.P., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------:
In re:                                                         :    Chapter 11
                                                               :
PURDUE PHARMA L.P., *et al.*,                                  :    Case No. 19-23649 (RDD)
                                                               :
                    Debtors.[1]                                :    (Jointly Administered)
                                                               :
---------------------------------------------------------------:

**STATEMENT OF AD HOC GROUP OF INDIVIDUAL VICTIMS IN SUPPORT
OF THE DEBTORS' MOTION TO APPROVE THE ADEQUACY OF INFORMATION
IN THE DISCLOSURE STATEMENT**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

The Ad Hoc Group of Individual Victims (the "**Personal Injury Ad Hoc Group**" or the "**Group**") of Purdue Pharma L.P., *et al*. (collectively, the "**Debtors**" or "**Purdue**"), by and through its undersigned counsel, submits this statement in support of the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures In Connection Therewith, and (IV) Certain Dates With Respect Thereto* [ECF No. 2489] (the "**Motion**"); and the *Debtors' Omnibus Reply in Further Support of the Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. 2910] (the "**Reply**").[2]

### STATEMENT

1. The Personal Injury Ad Hoc Group represents approximately 65,000 individuals who have suffered from direct exposure to opioids, including individuals who have suffered and are presently suffering from addiction, family members who have lost loved ones, and estate executors. The Group also includes (1) over 1,000 guardians of children born with neonatal abstinence syndrome ("**NAS Children**"), (2) individuals who are likely to receive recoveries under the trust distribution procedures to be implemented by the PI Trust (the "**PI TDP**"), and (3) individuals who, at the end of the day, might not be eligible for any recovery at all.

2. Indeed, because of the exceedingly broad and diverse scope of its constituencies, the Personal Injury Ad Hoc Group was substantially and substantively involved in the Mediation, and counsel for the Group has since worked actively with the Debtors to draft the procedures that will govern the allowance and liquidation of PI Channeled Claims.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement. [ECF No. 2908]

AMERICAS 107260850

3.      Two groups have raised potential concerns with the mechanics of the PI TDP in their objections (the "**Objections**") to the Disclosure Statement: The NAS Children Ad Hoc Committee (the "**NAS Committee**") and the Ad Hoc Committee on Accountability (the "**Accountability Committee**") [ECF Nos. 2746, 2745].  The NAS Committee, for its part, raised a number of issues of claim treatment and classification, including whether some holders of PI Claims (the "**PI Claimants**") deserve to receive more money from the PI Trust than other victims.  The Accountability Committee challenges the fairness of requiring that PI Claimants "show that they or their injured family member(s) were prescribed and used a Purdue opioid" in order to recover.  ECF No. 2745, 6.  The Personal Injury Ad Hoc Group agrees with the Debtors that all of these Objections speak to nuanced questions of confirmability of the Plan on file and are premature at this stage.

4.      Nonetheless, the Personal Injury Ad Hoc Group wishes to address two contentions on a preliminary basis at the disclosure stage: (i) the assertion that the PI TDP was drafted in a manner that is biased against certain PI Claimants (and in particular, children born with NAS); and (ii) whether it is in any way improper that the PI TDP requires PI Claimants to show that they used a Purdue opioid in order to recover on their PI Claims under the liquidation provisions of the PI TDP.

5.      First, since the NAS Committee filed its Objection, the parties have come to a resolution that moots the NAS Committee's concerns.  As reflected in the Disclosure Statement, a portion of the funds provided to the PI Trust will be set aside into a separate fund and distributed pursuant to a separate TDP drafted to address the specific circumstances of NAS Claimants.  ECF No. 2908, 5.  The NAS PI TDP will be included in the Plan Supplement.  *Id.*, 6 n. 7.

AMERICAS 107260850

6. However, while the specific substance of the NAS Committee's Objection has been resolved, the Personal Injury Ad Hoc Group wishes to address for the record any residual doubt regarding the inclusiveness of the PI TDP drafting process. At the time the PI TDP was filed, it was a supplement to the Debtors' Plan, and reflected the Debtors' views as to appropriate mechanisms for addressing the approximately 130,000 proofs of claim for personal injury filed against the Debtors.[3] It was also the product of many months of consultation with multiple creditor constituencies in the Chapter 11 Cases, including the Personal Injury Ad Hoc Group, with an eye to striking an appropriate balance among a myriad of factors, including: (1) that claims against Purdue are treated consistently, transparently, and fairly by using objective criteria evaluated by a neutral PI Claims Administrator, (2) that the extraordinarily limited funds available for personal injury victims are used to compensate those holding legitimate claims against the Debtors and not victims of the opioid crisis writ large, (3) that the PI TDP is streamlined and efficient to conserve PI Trust resources and reduce the burden on PI Claimants, and (4) that the PI TDP deters and prevents fraud. The PI TDP seeks to balance all of these concerns and reflects the outcome of an extensive Court-directed Mediation process among the Debtors' major creditor constituencies, which resulted in an extraordinary compromise that avoids intercreditor litigation over the flashpoint issues of claim allowance and claim subordination. The Debtors, the Personal Injury Ad Hoc Group, the Non-Federal Public Claimants, had all weighed in on the PI TDP and had all approved it. Since then, counsel for the Ad Hoc Group has continued to work with the Debtors and their creditors to further refine the PI TDP, and the Debtors filed a revised version, reflecting further compromise with stakeholders.[4] Put simply, the PI TDP is being proposed in good faith, with the support of nearly every active group in these Chapter 11 Cases.

---

[3] *See* ECF No. 2732, Ex. C.
[4] *See* ECF No. 2868, Ex. C.

4

7.     Second, the Personal Injury Ad Hoc Group certainly recognizes that the opioid crisis presents an intractable set of legal, ethical, and emotional issues and has caused harm and suffering far greater than can be addressed through this one bankruptcy proceeding. But this proceeding is about *Purdue* and *Purdue's conduct*. As noted, the Personal Injury Ad Hoc Group includes NAS Children and adult PI Claimants and families who lost loved ones to the opioid crisis who still may not be eligible for recovery under the PI TDP. The amounts available for distribution to creditors in the Chapter 11 Cases are limited and cannot possibly compensate everyone who was ever injured by an opioid product at any time throughout the world. Claimants who used other branded opioid products made by other companies can and should seek recovery from those other companies, but not from Purdue.

8.     To be as fair as possible to as many as possible, the Group believes that the PI TDP must ensure first that the funds allocated for distribution to personal injury creditors of Purdue are in fact distributed to personal injury creditors *of Purdue*. Objections to the mechanism by which the PI TDP does this – along with the other concerns raised in the Objections – are issues of confirmability, not issues of disclosure, and are properly addressed at confirmation. To be clear, though, it is not correct that those who did not use Purdue-branded opioid products will "receive nothing," as the Accountability Committee contends. ECF No. 2745, 6. Under the Plan, billions of dollars will be used for abatement purposes to benefit the victim community at large. That extraordinary result would not exist but for the Plan. Moreover and notwithstanding all of the foregoing (including the strong belief of the Personal Injury Ad Hoc Group that Purdue's money should be used to satisfy victims *of Purdue*), the Debtors have nonetheless included in the PI TDP an "opt out" construct that permits PI Claimants who are dissatisfied with the liquidation provisions of the PI TDP to liquidate their PI Claims in the tort system. This "opt out" is available,

5

for example, to PI Claimants who did not take Purdue opioid products but nonetheless believe they hold valid claims against Purdue that should receive a distribution from the estates. While the PI Trust may argue that such claims are not, in fact, claims against Purdue, that determination will be left to the court system in the first instance, and not the PI Claims Administrator.

9. For the avoidance of doubt, the Personal Injury Ad Hoc Group reserves all rights with respect to the issues raised in the Objections and any other objections to the Disclosure Statement and Plan, including its right to be heard on these issues at the upcoming hearing on the Disclosure Statement and at the confirmation stage.

AMERICAS 107260850

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the Motion and the Reply, the Personal Injury Ad Hoc Group respectfully requests that the Court overrule the Objections, approve the Disclosure Statement, and grant such other relief as this Court may deem just and proper.

Dated: May 24, 2021
New York, New York

WHITE & CASE LLP

By: *J. Christopher Shore*

Michele J. Meises
Alice Tsier
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
Fax: (305) 358-5744
cshore@whitecase.com
michele.meises@whitecase.com
alice.tsier@whitecase.com

Thomas E Lauria (admitted *pro hac vice*)
Laura L. Femino (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 371-2700
Fax: (305) 358-5744
tlauria@whitecase.com
laura.femino@whitecase.com

*Co-Counsel for Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al.*

AMERICAS 107260850