# Exhibit B

**Blackline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## ORDER APPROVING (I) THE ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT,  (II) SOLICITATION AND VOTING PROCEDURES, (III) FORMS OF BALLOTS, NOTICES AND NOTICE PROCEDURES IN CONNECTION THEREWITH, <ins>AND (IV) CERTAIN DATES WITH RESPECT THERETO</ins>

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are

debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") for

entry of an order, pursuant to sections 1125, 1126 and 1128 of title 11 of the United

States Code (the "**Bankruptcy Code**"), rules 2002, 3016, 3017, 3018 and 3020 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 3017-1,

3018-1 and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York

(the "**Local Rules**"), approving (a) the adequacy of information in the Disclosure

Statement, (b) Solicitation and Voting Procedures, (c) forms of Ballots, notices and

notice procedures in connection therewith and (d) certain dates with respect thereto, all as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Solicitation and Voting Procedures.

more fully set forth in the Motion; and the Court having jurisdiction to consider the
matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended
Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and
consideration of the Motion and the requested relief being a core proceeding pursuant to
28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C.
§§ 1408 and 1409; and due and proper notice of the Motion having been provided to the
Notice Parties; and such notice having been adequate and appropriate under the
circumstances, and it appearing that no other or further notice need be provided; and the
Court having reviewed the Motion; and the Court having held a hearinghearings on May
26, 2021, June 1, 2021 and June 2, 2021 to consider the relief requested in the Motion on
a final basis (the "**Disclosure Statement** Hearing"); and the Court having determined
that the legal and factual bases set forth in the Motion and at the Disclosure Statement
Hearing establish just cause for the relief granted herein; and the Court having
determined that the relief requested is in the best interests of the Debtors, their estates,
creditors and all parties in interest; and upon all of the proceedings had before the Court
and after due deliberation and sufficient cause appearing therefor,

> **IT IS HEREBY ORDERED THAT**:

> 1.    The Motion is granted as provided herein.

**I.    Approval of the Disclosure Statement.**

> 2.    The Disclosure Statement is approved as providing holders of Claims
entitled to vote on the Plan with adequate information to make an informed decision as to
whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the
Bankruptcy Code, and as otherwise required by applicable law with respect to the Plan.

3.      The Disclosure Statement (including all applicable exhibits thereto and the notices provided for herein), if properly delivered as provided, hereby provides holders of Claims, holders of Interests and all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim or any Shareholder Released Claim with sufficient notice of the releases, exculpatory provisions and injunctions, including the Channeling Injunction and Releases by Holders of Claims and Interests, set forth in Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12 and 10.13 of the Plan, as well as in the Shareholder Settlement, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

4.      The Disclosure Statement Hearing Notice, along with various subsequent adjournment notices, filed by the Debtors and served upon parties in interest in these Chapter 11 Cases constituted adequate and sufficient notice of the hearing to consider approval of the Disclosure Statement and the deadline for filing objections to the Disclosure Statement and responses thereto, and is hereby approved.

5.      All objections, responses, statements or comments, if any, in opposition to approval of the Disclosure Statement and the relief requested in the Motion that have not otherwise been resolved or withdrawn prior to, or on the record at, the Disclosure Statement ~~Hearings~~Hearing are overruled in their entirety.

**II.    Approval of the Timeline and Materials for Soliciting Votes.**

**A.      Approval of Key Dates and Deadlines with Respect to the Plan and the Disclosure Statement.**

6.      The following dates are hereby established (subject to modification as necessary) with respect to the solicitation of votes to accept, and voting on, the Plan (all times prevailing Eastern Time):

| Event | Date |
|---|---|
| Voting Record Date | March 10, 2021 |
| Disclosure Statement Objection Deadline | April 23, 2021, at 4:00 p.m., prevailing Eastern Time |
| Disclosure Statement Hearing | May 26, 2021, at 9:0010:00 a.m., prevailing Eastern Time |
| First Supplemental Disclosure Statement Hearing | June 1, 2021, at 3:00 p.m., prevailing Eastern Time |
| Second Supplemental Disclosure Statement Hearing | June 2, 2021, at 3:00 p.m., prevailing Eastern Time |
| Solicitation Deadline | June 1016, 2021[3] |
| Deadline to Object to Claims for Voting Purposes | July 7, 2021, at 4:00 p.m., prevailing Eastern Time |
| Plan Supplement Filing Deadline[4] | July 7, 2021 |
| Voting Deadline | July 14, 2021, at 4:00 p.m., prevailing Eastern Time |
| Rule 3018(a) Motion Filing Deadline | July 19, 2021, at 4:00 p.m., prevailing Eastern Time |
| Plan Objection Deadline | July 19, 2021, at 4:00 p.m., prevailing Eastern Time |
| Contract Objection Deadline | August 2, 2021, at 4:00 p.m., prevailing Eastern Time |
| Deadline to File Voting Report | August 2, 2021, at 12:00 p.m., prevailing Eastern Time |
| Deadline to File the Confirmation Brief and Omnibus Reply to Plan Objections | August 2, 2021, at 4:00 p.m., prevailing Eastern Time |
| Confirmation Hearing Date | August 9, 2021, at 10:00 a.m., prevailing Eastern Time |

7.    The Confirmation Hearing Date and deadlines related thereto may be continued from time to time by the Court or the Debtors without further notice to parties

---

[3] The Solicitation Agent will use all practicable means to complete the mailing of the Solicitation Packages (as defined herein) within the noted time frame.
[4] The Plan Supplement Filing Deadline with respect to file the PI Trust Documents (as defined in the Plan) is seven calendar days prior to the Plan Supplement Filing Deadlineshall be June 30, 2021.

in interest other than such adjournments announced in open Court and/or a notice of

adjournment filed with the Court and served on the Master Service List.

      **B.**    **Approval of the Form of, and Distribution of, Solicitation Packages to Parties Entitled to Vote on the Plan.**

    8.    The Solicitation Packages are approved.

    9.    In accordance with Bankruptcy Rule 3017(d), the Solicitation Packages

shall contain:

        a.    With respect to the holders of Claims in the Voting Classes (but subject to the Master Ballot Solicitation Procedures), the Solicitation Packages to be transmitted on or before the Solicitation Deadline to those holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date shall include the following, the form of each of which is hereby approved:

            i.    The Confirmation Hearing Notice in substantially the form attached hereto as **Exhibit 12**;

            ii.    The applicable Ballot or Master Ballot, in substantially the applicable form of Ballot attached hereto as **Exhibits 2A, 2B and 2C**, including a prepaid, preaddressed return envelope; and

            iii.    At the Debtors' election, a cover letter in substantially the form attached hereto as **Exhibit 13** describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan and/or a cover letter from the Creditors' Committee ~~and/or counsel to any Mediation Party (as defined in the~~ *~~Order Appointing Mediators~~* ~~[D.I. 895] (as modified by subsequent order of the Court)) in the applicable Class~~ recommending acceptance of the Plan;

            iv.    The Solicitation and Voting Procedures attached hereto as **Exhibit 1**; and

            v.    A flash drive containing each of the following materials:

                (1)    A copy of the Disclosure Statement Order, as entered by the Court; and

      (2)  The Disclosure Statement, as approved by the Court
          (with the Plan annexed thereto); and

  b.  With respect to holders of Claims and Interests in the Non-Voting
    Classes (or Claims in Voting Classes that, as of the deadline set
    forth in the Scheduling Order, are subject to a pending objection or
    otherwise deemed not entitled to vote on the Plan):

    i.  The Confirmation Hearing Notice; and

    ii.  A Notice of Non-Voting Status; and

  c.  With respect to the U.S. Trustee, a copy of each document
    contained in each version of the Solicitation Packages, which may
    include non-customized Ballots and a non-customized Notice of
    Non-Voting Status; and

  d.  Any additional documents that the Court has ordered to be
    included in hard-copy format.

10.  Any party that receives content in the Solicitation Package in flash drive format but would prefer to receive materials in paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously provided in flash drive format (to be provided at the Debtors' expense) via the communication methods set forth in the Solicitation and Voting Procedures attached hereto as **Exhibit 1**.

11.  The Debtors are authorized to serve the relevant Solicitation Packages on Firms via encrypted email or other secured electronic means in lieu of mailing or otherwise serving any paper copies.

12.  The Solicitation Packages provide the holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code and the Local Rules.

13.     The Debtors shall distribute Solicitation Packages to all holders of Claims in the Voting Classes who are entitled to vote on the Plan on or before the Solicitation Deadline or as soon thereafter as reasonably practicable.  Such service on or before the Solicitation Deadline shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  If any portion of such service occurs after the Solicitation Deadline, the Debtors shall cause to be filed a declaration describing the circumstances resulting in such occurrence and the rights of all parties shall be reserved with respect to whether such service after the Solicitation Deadline satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

14.     The Solicitation Agent is authorized to assist the Debtors in (a) distributing the Solicitation Package; (b) receiving, tabulating and reporting on Ballots cast to accept or reject the Plan by holders of Claims against the Debtors; (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding the Plan or as soon as practicable thereafter.

15.     The Solicitation Agent is authorized to accept Master Ballots and accompanying Client lists via encrypted email or other secured method of electronic communication.

16.     The Solicitation Agent is authorized to accept Ballots via electronic online transmission solely through a customized online balloting portal on the Debtors' case

website.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner, and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the customized online balloting portal shall be deemed to contain an original signature.

**C.    Approval of the Confirmation Hearing Notice.**

17.    The Confirmation Hearing Notice, Publication Notice, and plain language summary of the Confirmation Hearing Notice, substantially in the forms attached hereto as **Exhibits 12, 15, and 16**, comply with the requirements of applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and is approved in all respects.  The Confirmation Hearing Notice shall be served upon all known holders of Claims and Interests, which includes all known holders of Shareholder Released Claims, all parties known to the Debtors as having potential claims against the Debtors' estates as defined in paragraph 18(i) of the Bar Date Order (excluding those parties who have requested not to receive notice), and the parties on the Master Service List (regardless of whether such parties are entitled to vote on the Plan) by no later than the Solicitation Deadline.  No later than the Solicitation Deadline or as soon as reasonably practicable thereafter, the Debtors shall publish the Publication Notice, substantially in the form attached hereto as **Exhibit 15**, once in each of the Publications, the *Financial Times (Worldwide edition)*, and the *International Herald Tribune*.  The Debtors shall publish a plain language summary of the Confirmation Hearing Notice substantially in the form attached hereto as **Exhibit 16** in the weekday and Saturday editions of *The Globe & Mail*, *National Post*, and *Le Journal de Montreal*, as well as approximately eighty-five (85)

local newspapers across thirty-nine (39) additional countries, as described in the *Second
Supplemental Declaration of Jeanne C. Finegan* [D.I. [•]2917] (the "**Second
Supplemental Finegan Declaration**"); and in each of the following magazines: *People
Magazine*, *Sports Illustrated*, *People En Español*, *Women's Day*, *Parents*, *Time
Magazine*, *Chatelaine* (English edition), *Maclean's*, ~~*Reader's Digest* (English and French
editions),~~ *Coup de Pouce*, *L'actualite*, and *Hello!* *Canada*.  The *National Geographic*,
*Good Housekeeping, Men's Health,* *Parents Latina*, ~~and~~ *Canadian Geographic*,
*Canadian Living, Chatelaine* (French edition), and *Reader's Digest* (English and French
editions) websites will be added to a whitelist of sites on which display ads may appear.
The Debtors also will serve a plain language summary of the Confirmation Hearing
Notice on those individuals and entities (including prescribers, pharmacies and
institutions that received Purdue Opioids, and third-party organizations) that received the
summary Bar Date Notice, as described in paragraph 6 of the *Supplemental Declaration
of Jeanne C. Finegan* [D.I. 1179], in addition to the American Association for Justice,
and conduct the Supplemental Confirmation Hearing Notice Plan, as described in the
Second Supplemental Finegan Declaration.   The Confirmation Hearing Notice,
Publication Notice, and plain language summary of the Confirmation Hearing Notice
each, if properly delivered or published, as applicable, as provided herein, provide
holders of Claims, holders of Interests and all Persons that have held or asserted, that
hold or assert or that may in the future hold or assert any Channeled Claim or any
Shareholder Released Claim with sufficient notice of the releases, exculpatory
provisions, and injunctions, including the Channeling Injunction and Releases by Holders
of Claims and Interests, set forth in Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12

9

and 10.13 of the Plan, as well as the Shareholder Settlement in satisfaction of the requirements of Bankruptcy Rule 3016(c).

### D.    Approval of Notice of Filing of the Plan Supplement.

18.    The Debtors are authorized to send notice of the filing of the Plan Supplement, substantially in the form attached hereto as **Exhibit 10**, on the date that the Debtors file the Plan Supplement (which will be filed and served at least ~~nine~~seven days prior to the ~~Plan Objection~~Voting Deadline) or as soon as practicable thereafter.

### E.    Approval of the Form of Notices to Non-Voting Classes.

19.    Except to the extent the Debtors determine otherwise, the Debtors are not required to provide Solicitation Packages to holders of Claims or Interests in Non-Voting Classes, as such holders are not entitled to vote on the Plan. Instead, on or before the Solicitation Deadline, the Solicitation Agent shall mail (first-class postage prepaid) a Confirmation Hearing Notice and a Notice of Non-Voting Status, the form of each of which is hereby approved, in lieu of Solicitation Packages, with no further notice necessary or required, to those parties, outlined below, who are not entitled to vote on the Plan:

   a.    ***Unimpaired Claims—Conclusively Presumed to Accept.*** Holders of Claims in Classes 1, 2, 11(a) and 11(b) are not impaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan. As such, holders of such Claims will receive the applicable Notice of Non-Voting Status applicable in lieu of a Solicitation Package.

   b.    ***Co-Defendant Claims—Deemed to Reject.*** Holders of Claims in Class 14 are receiving no recovery under the Plan and, therefore, are deemed to reject the Plan and will receive the applicable Notice of Non-Voting Status in lieu of a Solicitation Package.

   c.    ***Intercompany Claims and Intercompany Interests— Presumed to Accept or Deemed to Reject.*** Holders of Claims or Interests in Classes 12 and 18 are either conclusively presumed to have

accepted the Plan or are deemed to have rejected the Plan.
Accordingly, such holders are not entitled to vote to accept or
reject the Plan and will receive the applicable Notice of Non-
Voting Status in lieu of a Solicitation Package.

d.      ***Shareholder Claims— Deemed to Reject***.  Holders of Claims in
Class 13 are receiving no recovery under the Plan and, therefore,
are deemed to reject the Plan and will receive the applicable Notice
of Non-Voting Status in lieu of a Solicitation Package.

e.      ***Other Subordinated Claims—Deemed to Reject***.  Holders of
Claims in Class 15 are receiving no recovery under the Plan and,
therefore, are deemed to reject the Plan and will receive the
applicable Notice of Non-Voting Status in lieu of a Solicitation
Package.

f.      ***PPLP Interests—Deemed to Reject***.  Holders of Interests in
Class 16 are receiving no recovery under the Plan and, therefore,
are deemed to reject the Plan and will receive the applicable Notice
of Non-Voting Status in lieu of a Solicitation Package.

g.      ***PPI Interests—Deemed to Reject***.  Holders of Interests in Class 17
are receiving no recovery under the Plan and, therefore, are
deemed to reject the Plan and will receive the applicable Notice of
Non-Voting Status in lieu of a Solicitation Package.

h.      ***Disputed Claims***.  Holders of Claims that are subject to a pending
objection by the Debtors are not entitled to vote the disputed
portion of their claim.  As such, holders of such Claims will
receive the applicable Notice of Non-Voting Status in lieu of a
Solicitation Package; *provided*, *however*, that a Notice of Non-
Voting Status is not required to be distributed to any holder of
Claim or Interest that timely filed a Rule 3018 Motion with respect
to such Claim or Interest (unless the Court determines, in
connection such timely filed Rule 3018 Motion, that the holder of
such Claim or Interest is not entitled to vote on the Plan).

20.      The Debtors are not required to mail Solicitation Packages or other

solicitation materials to any party to whom the Disclosure Statement Hearing Notice was

sent but was subsequently returned as undeliverable.

**F.      Approval of the Master Ballot Notice and Solicitation Directive**

21.    The Master Ballot Solicitation Notice and Solicitation Directive (relating to the solicitation of votes of the holders of Claims in Master Ballot Classes to accept or reject the Plan), substantially in the forms attached hereto as **Exhibit 14**, which were mailed by the Debtors by overnight delivery and electronic mail (where available) to all known attorneys (collectively, the "**Firms**") representing **at least four (4)** holders of Claims in Master Ballot Classes and the related procedures set forth in the Solicitation and Voting Procedures attached hereto as **Exhibit 1** are approved.[5]    Each Firm was required to have completed and returned the Solicitation Directive and Client List to the Solicitation Agent on or before the Solicitation Directive Deadline. [6]of April 27, 2021.

G.    **Approval of Notices in Respect of Executory Contracts and Unexpired Leases.**

22.    The Assumption Notice, substantially in the form attached hereto as **Exhibit 8**, and the Rejection Notice, substantially in the form attached hereto as **Exhibit 9** (collectively, the "**Contract Notices**") are approved.

23.    At least twenty-one (21) days prior to the Confirmation Hearing, the Debtors shall serve or cause to be served, the Contract Notices, as applicable, on known counterparties to executory contracts and unexpired leases subject thereto.

24.    Service of the Contract Notices as set forth herein shall be deemed good and sufficient notice of, among other things, the proposed rejection, assumption, or assumption and assignment of executory contracts and unexpired leases of the Debtors (including the proposed Cure Amounts related thereto and the release and satisfaction of any Claims or defaults arising under any assumed executory contract or unexpired lease

---

[5] The Debtors may, in their sole discretion, waive this four-client eligibility minimum for certain Solicitation Directives.
[6] The Debtors have extended the Solicitation Directive Deadline to April 21, 2021.

at any time before the effective date of assumption or assumption and assignment upon the satisfaction thereof), the amendment of contracts in connection with assumption or assignment pursuant to Section 8.4 of the Plan, and the procedures for objecting thereto, and no other or further notice is necessary.

25.    Any objection by a counterparty to the proposed treatment of any executory contract or unexpired lease as set forth in the Plan or the Contract Notices (as applicable), or any other matter pertaining thereto must be asserted pursuant to the procedures set forth in the applicable Assumption Notice or the Rejection Notice by the Contract Objection Deadline, and shall be heard by the Bankruptcy Court at the Confirmation Hearing or at such other date and time as may be fixed by the Court. Any counterparty to an executory contract or unexpired lease who does not timely file and serve an objection by the Contract Objection Deadline pursuant to procedures set forth in the Assumption Notice and the Rejection Notice (as applicable), shall be deemed to have assented to the treatment of such contract or lease on the terms set forth in the Plan and the Contract Notices (as applicable).

26.    The Debtors are authorized, but not directed, to alter, amend, modify or supplement the Schedule of Rejected Contracts and to assume, assume and assign or reject executory contracts and unexpired leases at any time prior to the Effective Date or, with respect to any executory contract or unexpired lease subject to a Contract Dispute that is resolved after the Effective Date, within thirty (30) days following entry of a Final Order of the Bankruptcy Court resolving such Contract Dispute.

**III.    Approval of the Solicitation and Voting Procedures.**

27.    The Debtors are authorized to solicit, receive and tabulate votes to accept or reject the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **Exhibit 1**.  The procedures set forth herein, in the Solicitation and Voting Procedures set forth in **Exhibit 1** and in materials for soliciting votes approved hereby, including, without limitation, the proposed procedures for the temporary disallowance of Claims for the purpose of voting to accept or reject the Plan, the establishment of the Record Date, and the procedures for soliciting and tabulating certain votes under the Master Ballot Solicitation Procedures, provide for a fair and equitable process and are consistent with section 1126 of the Bankruptcy Code, Bankruptcy Code Rule 3018 and the Local Rules, and are hereby approved in their entirety.

28.    In the event that the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the Solicitation Agent is authorized tabulate the vote submitted directly by the Eligible Client and invalidate the vote submitted by the Firm on the Eligible Client's behalf.

29.    With respect to Master Ballot Solicitation Method, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve the conflicting representation, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to purduepharmaballots@primeclerk.com copying all affected Firms confirming such resolution. If the Firms are unsuccessful in reaching consensus regarding which of the Firms is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (i.e., multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only

once for both numerosity and voting amount purposes. If, however, the Firms are

unsuccessful in reaching consensus regarding which Firm is voting on behalf of the

Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account

of such Eligible Client (i.e., a vote to accept the Plan and a vote to reject the Plan), the

Solicitation Agent is authorized to invalidate both such inconsistent votes. If after the

submission of inconsistent votes, the applicable Firms timely reach a consensus regarding

which vote should be counted, one of the applicable Firms may email

purduepharmaballots@primeclerk.com, copying all other affected Firms, and direct the

Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled

to rely upon such an email. For the further avoidance of doubt, if the Solicitation Agent

timely receives a vote from an Eligible Client directly that is inconsistent with a

corresponding vote cast by their Firm, the vote cast by the Eligible Client will control.

## IV.    Approval of the Plan Objection Procedures

30.    The procedures set forth in the Motion regarding the filing of objections or

responses to the Plan provide due, proper and adequate notice, comport with due process,

comply with Bankruptcy Rules 2002, 3017 and 3020 and Local Rule 3020-1, and are

hereby approved.

31.    Objections and responses, if any, to confirmation of the Plan must (a) be

in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local

Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i)

by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac

vice, electronically in accordance with General Order M-399 (which can be found at

http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in

text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (d) be served in accordance with the Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures entered on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto) and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

32.    Objections to confirmation of the Plan that are not timely filed, served and actually received in the manner set forth above shall not be considered unless otherwise agreed by the Debtors or determined by the Court.

33.    The Debtors are authorized to file and serve replies or an omnibus reply to any such objections along with their brief in support of confirmation of the Plan either separately or by a single, consolidated reply on or before the Reply Deadline.  In addition, any party in interest may file and serve a statement in support of confirmation of the Plan and/or a reply to any objections to confirmation of the Plan by the Reply Deadline.

**V.    Amendments and General Provisions.**

34.     The Debtors are authorized to make non-substantive or immaterial changes to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Confirmation Hearing Notice, Solicitation Packages, Notices of Non-Voting Status, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption and Rejection Notices, Voting and Tabulation Procedures and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

35.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

36.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

37.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

38.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Order.

Dated: _____, 2021
       New York, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Solicitation and Voting Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**SOLICITATION AND VOTING PROCEDURES**

---

**PLEASE TAKE NOTICE THAT** on [●] 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") to solicit votes on the ~~Fourth~~Fifth *Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for* ~~Fourth~~Fifth *Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "**adequate information**" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "**Solicitation Packages**"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

    **A.**    **The Voting Record Date.**

    The Court has approved **March 10, 2021** as the record date for purposes of determining which holders of Claims in Class 3 (Federal Government Unsecured Claims), Class 4 (Non-Federal Domestic Governmental Claims), Class 5 (Tribe Claims), Class 6 (Hospital Claims), Class 7 (Third-Party Payor Claims), Class 8 (Ratepayer Claims), Class 9 (NAS Monitoring Claims), Class 10(a) (NAS PI Claims), Class 10(b) (Non-NAS PI Claims), and Class 11(c) (Other General Unsecured Claims) are entitled to vote on the Plan (the "**Voting Record Date**").

    **B.**    **The Voting Deadline.**

    The Court has approved **July 14, 2021, at 4:00 p.m., prevailing Eastern Time** as the voting deadline (the "**Voting Deadline**") for the Plan.

    To be counted as votes to accept or reject the Plan, votes must be submitted on an appropriate ballot (each, a "**Ballot**") or Master Ballot (as defined below) and delivered so that the Ballot or Master Ballot is **actually received**, in any case, no later than the Voting Deadline by Prime Clerk LLC (the "**Solicitation Agent**"). The

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

procedures governing the submission of your vote depend on the class of your voting Claim. Therefore, please refer to your specific Ballot for instructions on the procedures to follow in order to submit your vote properly.

  **C.**  **Form, Content, and Manner of Notices.**

  **1.**  **The Solicitation Package.**

The following materials shall constitute the solicitation package (the "**Solicitation Package**"):

  i.  With respect to holders of Claims in the Voting Classes (but subject to the Master Ballot Solicitation Procedures (defined below)):

    (i)  The *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines*, in substantially the form annexed as **Exhibit 12** to the Disclosure Statement Order (the "**Confirmation Hearing Notice**");

    (ii)  The applicable Ballot, in substantially the applicable form of Ballot annexed within **Exhibits 2A, 2B and 2C** to the Disclosure Statement Order, including a prepaid, preaddressed return envelope;

    (iii)  At the Debtors' election, a cover letter in substantially the form annexed as **Exhibit 13** to the Disclosure Statement Order describing the contents of the Solicitation Package and urging the holders of Claims in each of the Voting Classes to vote to accept the Plan and/or a cover letter from the Creditors' Committee ~~and/or counsel to any Mediation Party (as defined in the *Order Appointing Mediators* [D.I. 895] (as modified by subsequent order of the Court)) in the applicable Class~~ recommending acceptance of the Plan (collectively, the "**Cover Letters**");

    (iv)  These Solicitation and Voting Procedures; and

    (v)  A flash drive containing each of the following materials:

      (1)  The Disclosure Statement Order, as entered by the Court; and

      (2)  The Disclosure Statement, as approved by the Court (with the Plan annexed thereto); and

  ii.  With respect to holders of Claims and Interests in the Non-Voting Classes (or Claims in Voting Classes that, as of the deadline set forth in the Disclosure Statement Order, are subject to a pending objection or otherwise deemed not entitled to vote on the Plan):

    (i)  The Confirmation Hearing Notice; and

    (ii)  The applicable Notice of Non-Voting Status (as defined below); and

  iii.  With respect to the U.S. Trustee: a copy of each document contained in each version of the Solicitation Packages, which may include non-customized Ballots and a non-customized Notice of Non-Voting Status; and

  iv.  Any additional documents that the Court has ordered to be included in hard copy format.

2.    **Distribution of the Solicitation Package.**

The Solicitation Package shall include a flash drive containing electronic copies of the Plan, the Disclosure Statement, and the Disclosure Statement Order. All other contents of the Solicitation Package, including Ballots, shall be provided in paper format. Any party that would prefer paper format versions of all of the documents in the Solicitation Package may contact the Solicitation Agent by: (a) calling (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https:restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmaballots@primeclerk.com with a reference to "**Purdue Pharma**" in the subject line and requesting paper copies of the corresponding materials (to be provided at the Debtors' expense).

The Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the customized Ballots and customized Notice of Non-Voting Status) on the U.S. Trustee and all parties who have requested copies of papers in this case pursuant to Bankruptcy Rule 2002 as of the Voting Record Date. In addition, the Debtors shall mail, or cause to be mailed, the Solicitation Package to all holders of Claims in the Voting Classes who are entitled to vote on or before June ~~10~~16, 2021 or as soon as reasonably practicable as described in Section D herein. To accommodate the transmission of the Client List (in Excel format) along with a Master Ballot to Firms (as defined below), the Debtors shall serve the relevant Solicitation Packages to Firms via encrypted email or other secured electronic means in lieu of any paper copies.

To avoid duplication and reduce expenses, the Debtors will use reasonable efforts to ensure that any holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor. Whether two or more Claims are duplicative will be left to the discretion of the Debtors and their professionals, in consultation with the professionals for the Creditors' Committee, and the Solicitation Agent is authorized to take instruction from the Debtors and their professionals to mark all except the latest filed among such Claims as duplicative (and therefore not entitled to receive a Solicitation Package and/or to vote) irrespective of whether an objection has been filed identifying such Claims as duplicative. Additionally, for purposes of serving the Solicitation Packages (and subject to the Master Ballot Solicitation Procedures), the Debtors may rely on the address information for Voting and Non-Voting Classes as compiled, updated, and maintained by the Solicitation Agent as of the Voting Record Date. The Debtors and the Solicitation Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots).

3.    **Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan.**

Certain holders of Claims and Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code will receive only the *Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan*, substantially in the form annexed as **Exhibit 3** to the Disclosure Statement Order (the "**Unimpaired Notice of Non-Voting Status**"). Such notice will instruct such holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots). Certain holders of Claims and Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Notice of Non-Voting Status to Holders of Impaired Claims and Interests Conclusively Presumed to Reject the Plan*, *Notice of Non-Voting Status to Holders of Disputed Claims*, ~~[~~*Notice of Non-Voting Status to Holders of Impaired Claims in Class 14 (Co-Defendant Claims)*~~]~~, or *Notice of Non-Voting Status to Holders of Impaired Claims in Class 15 (Other Subordinated Claims)*, each substantially in the form annexed as **Exhibits 4, 6, 7 and 5** to the Disclosure Statement Order (collectively, the "**Impaired Notices of Non-Voting Status**" and, together with the *Notice of Non-Voting Status to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan*, the "**Notices of Non-Voting Status**"), as applicable. Such notice will instruct such Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots). Each party that receives a Notice of Non-Voting Status will also receive a Confirmation Hearing Notice.

4.      **Notices in Respect of Executory Contracts and Unexpired Leases.**

Counterparties to Executory Contracts and Unexpired Leases that receive a *Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, If Any, and (C) Related Procedures in Connection Therewith* or a *Notice Regarding Executory Contracts and Unexpired Leases to Be Rejected Pursuant to the Plan* substantially in the forms attached as **Exhibit 8** and **Exhibit 9** to the Disclosure Statement Order, respectively, may file an objection to the Debtors' proposed assumption and/or rejection, as applicable, and cure amounts, if applicable. Such objections must be filed with the Court by **August 2, 2021, at 4:00 p.m., prevailing Eastern Time** and served as set forth in the applicable notice of assumption or rejection. For the avoidance of doubt, a holder will only be entitled to receive a Solicitation Package on account of a Claim arising from the rejection of an Executory Contract or Unexpired Lease if the Claim is filed by the Voting Record Date.

D.      **Establishing Claim Amounts for Voting Purposes and Allowance and Disallowance of Claims for Tabulation Purposes.**

A claimant who holds a Claim in a Voting Class is nonetheless not entitled to vote to the extent that:

i.      such claimant's Claim has been disallowed, expunged, superseded, disqualified, or suspended;

ii.     such claimant's Claim is listed on the Schedules filed by the Debtors as "disputed," "contingent," or "unliquidated" and such claimant did not timely file a Proof of Claim with respect to such Claim; or

iii.    such claimant's Claim is subject to an objection, subject to the procedures set forth below.

Solely for the purpose of voting, each Claim within the Voting Classes is temporarily allowed in an amount equal to the liquidated, noncontingent, and undisputed amount of such Claim set forth in the Schedules or Proof of Claim, as applicable, subject to the following exceptions:

i.      If a Claim is deemed Allowed under the Plan, such Claim is allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

ii.     If a Proof of Claim was timely filed in an amount that is wholly liquidated, noncontingent and undisputed, such Claim is temporarily allowed for voting purposes only in the amount set forth on the Proof of Claim, unless such Claim is disputed as set forth in subparagraph x below;

iii.    If a Claim for which a Proof of Claim has been timely filed is wholly contingent, unliquidated, or disputed (based on the face of such Proof of Claim or as determined upon the review of the Debtors), such Claim is accorded one (1) vote and valued at One Dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution, unless such Claim is disputed as set forth in subparagraph x below;

iv.     Notwithstanding anything to the contrary herein, each Claim in Class 4 (Non-Federal Domestic Governmental Claims), Class 5 (Tribe Claims), Class 6 (Hospital Claims), Class 7 (Third-Party Payor Claims), Class 8 (Ratepayer Claims), Class 9 (NAS Monitoring Claims), Class 10(a) (NAS PI Claims), and Class 10(b) (Non-NAS PI Claims) shall be accorded one (1) vote and valued at One Dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution, unless such Claim is disputed as set forth in subparagraph x below;

v.      If a Claim is listed on a timely filed Proof of Claim as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the amount that is liquidated,

noncontingent, and undisputed, unless such Claim is disputed as set forth in subparagraph x below;

vi.    Subject to subparagraphs x-xi below, if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court on or before the Voting Deadline, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only;[3] *provided* that nothing in these Solicitation and Voting Procedures shall limit in any way the effect of any order allowing a Claim for purposes of distribution and allowance;

vii.    Any claimant who has filed or purchased duplicate Claims within the same Class (based on the reasonable determination of the Debtors, in consultation with the Creditors' Committee) will be provided with only one (1) Solicitation Package and one (1) Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claim;

viii.    Each claimant who holds or has filed more than one (1) non-duplicative Claim within a particular Class shall be treated as if such claimant has only one (1) Claim in such Class in the aggregate dollar amount of such Claims;

ix.    If a Proof of Claim has been validly amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amended Claim shall entitle the holder of such Claim to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim. Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules;

x.    If any party in interest with appropriate standing has filed an objection to a Claim on or before July 7, 2021, at 4:00 p.m. (prevailing Eastern Time) (such Claim, a "**Disputed Claim**"), such Disputed Claim is temporarily disallowed for voting purposes, except as otherwise provided in a stipulation, settlement, or other agreement filed by the Debtors (in consultation with the Creditors' Committee) or as ordered by the Court prior to or concurrent with entry of an order confirming the Plan, including pursuant to an order on any Rule 3018 Motion (as described below) filed regarding such Claim; *provided* that if the objection seeks to reclassify or reduce the allowed amount of such Claim, then such Claim is temporarily allowed for voting purposes in the reduced amount and/or as reclassified, except as otherwise provided in a stipulation, settlement, or other agreement filed by the Debtors (in consultation with the Creditors' Committee) or as may be otherwise ordered by the Court prior to or concurrent with entry of an order confirming the Plan;

xi.    If any claimant seeks to challenge the disallowance of its Claim for voting purposes pursuant to subparagraph x above, such claimant must file a motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018 Motion**") on or before July 19, 2021 at 4:00 p.m. (prevailing Eastern Time) (the "**Rule 3018(a) Motion Filing Deadline**"), unless such deadline is extended by agreement of the Debtors (in consultation with the Creditors' Committee). Upon the filing of a timely Rule 3018 Motion, the Solicitation Agent will provide such claimant with a Ballot or a new Ballot with an updated voting amount (as applicable). For purposes of filing the Voting Report, if the Rule 3018 Motion is resolved by order of

---

[3] For the avoidance of doubt, pursuant to the DOJ 9019 Order, entered November 18, 2020 [D.I. 2004], the DOJ Unsecured Claims are allowed for voting purposes.

the Court, stipulation, or settlement by the business day before the deadline to file the Voting Report, the Solicitation Agent will tabulate (or not tabulate, as applicable) such vote according to any aforementioned resolution.  Otherwise, the Solicitation Agent will treat the vote with respect to such Claim as disallowed for voting purposes to the extent provided in subparagraph x above for the purposes of tabulating (or not tabulating) votes in connection with preparation and filing of the Voting Report.  The vote with respect to such Claim shall be treated as disallowed for voting purposes to the extent provided in subparagraph x above for purposes of confirmation of the Plan except as otherwise provided in a stipulation, settlement, or other agreement filed by the Debtors (in consultation with the Creditors' Committee) or as ordered by the Court prior to or concurrently with entry of an order confirming the Plan, including pursuant to an order on any Rule 3018 Motion.  For the avoidance of doubt, any Claim in Class 4 (Non-Federal Domestic Governmental Claims), Class 5 (Tribe Claims), Class 6 (Hospital Claims), Class 7 (Third-Party Payor Claims), Class 8 (Ratepayer Claims), Class 9 (NAS Monitoring Claims), Class 10(a) (NAS PI Claims) or Class 10(b) (Non-NAS PI Claims) temporarily allowed for voting purposes pursuant to this subparagraph xi shall be accorded one (1) vote and valued at One Dollar ($1.00) for voting purposes only; and

E. **Return of Ballots.**

    i.    Votes to accept or reject the Plan will be counted only if such votes are included on a valid Ballot (or Master Ballot (as defined below), as applicable) properly executed, completed, and delivered to the Solicitation Agent so that such Ballot (or Master Ballot, as applicable) is **actually received** by the Solicitation Agent no later than the Voting Deadline;

    ii.    In addition to accepting hard copy Ballots via first-class mail, overnight courier, or hand delivery, (or, in the case of Master Ballots (as defined below) via email), the Debtors will accept Ballots submitted via an online balloting portal accessible at the Debtors' chapter 11 case website ("**E Ballots**");[4] and

    iii.    For the avoidance of doubt, the Debtors will accept Master Ballots submitted by Firms (as defined below) via email, and to that end, the Debtors encourage Firms to submit Master Ballots and accompanying Client Lists (setting forth the Eligible Clients' votes) via encrypted email or other secured method of electronic transmission. Firms with any questions about such secured transmission methods should contact Prime Clerk at: purduepharmaballots@primeclerk.com.

F. **Tabulation Procedures.**

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right (in consultation with the Creditors' Committee) to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

    i.    Except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted to the Solicitation Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors, in consultation with the Creditors' Committee), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with Confirmation of the Plan;

    ii.    The Solicitation Agent will date-stamp all Ballots when received. The Solicitation Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan and thereafter may discard such original Ballots, unless otherwise ordered by the Court or requested by the Debtors. The Solicitation Agent shall tabulate Ballots on a Debtor-by-Debtor basis;

    iii.    Consistent with the requirements of Local Rule 3018-1, the Solicitation Agent will file with the Court, on or before August 2, 2021 at 12:00 p.m., (prevailing Eastern Time) or as soon as practicable thereafter, a certification of votes (the "**Voting Report**"). The Voting Report shall, among other things, certify to the Court in writing the amount and number of Allowed Claims of each Class accepting or rejecting the Plan, and delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, received via facsimile or electronic mail (in instances where submission by email is not permitted), or damaged ("**Irregular Ballots**"). The Voting Report shall

---

[4] The encrypted Ballot data and audit trail created by such online submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed immediately legally valid and effective.

indicate the Debtors' intentions with regard to each such Irregular Ballot. Subject to the confidentiality provisions applicable to Proof of Claim forms set forth in the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [D.I. 800] and to the *Third Amended Protective Order* [D.I. 1935], nothing herein shall prohibit the public disclosure of the Voting Report (including the report of Irregular Ballots), prepared on the basis thereof. The Voting Report shall be served upon the Creditors' Committee and the U.S. Trustee;

iv.    The method of delivery pursuant to Section E(ii) or E(iii) (as applicable) of these Solicitation and Voting Procedures of Ballots to be sent to the Solicitation Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot;

v.    Delivery of a Ballot to the Solicitation Agent by facsimile, or any electronic means other than as expressly provided in these Solicitation and Voting Procedures (including with respect to Master Ballots) will not be valid;

vi.    No Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), the Debtors' financial or legal advisors, or the Court, and if so sent, and not otherwise properly and timely delivered to the Solicitation Agent, will not be counted;

vii.    Except as described in Section G below, if multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received by the Solicitation Agent will be deemed to reflect that holder's intent and will supersede and revoke any prior Ballot;

viii.    Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot, other than a Master Ballot, that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class, the Debtors may, in their discretion (in consultation with the Creditors' Committee), aggregate the Claims of any particular holder within a Class for the purpose of counting votes;

ix.    Any person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a holder of Claims must indicate such capacity when signing;

x.    The Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

xi.    Neither the Debtors, the Solicitation Agent, nor any other Entity, will be under any duty to provide notification to any party of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

xii.    Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

xiii.    In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to

accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

xiv.    Subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

xv.    Neither the Debtors, the Debtors' professionals, nor the Solicitation Agent shall be obligated to coordinate with voters to cure any Irregular Ballots;

xvi.    If a Claim has been estimated or otherwise Allowed for voting purposes only by order of the Court, stipulation or settlement, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution under the Plan;

xvii.    If an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

xviii.    The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of such Claim; (ii) any Ballot cast by any Entity that does not hold a Claim in a Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed; (iv) any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot cast via the Solicitation Agent's online "E-Balloting" portal or an executed Master Ballot returned electronically pursuant to the Master Ballot Solicitation Procedures will be deemed to contain an original signature); (v) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (vi) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein;

xix.    After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, in consultation with the Creditors' Committee; and

xx.    The Debtors, in consultation with the Creditors' Committee, are authorized to enter into a stipulation with the holder of any Claim agreeing to the amount of a Claim for voting purposes.

**G.    Master Ballot Solicitation, Voting and Tabulation Procedures.**

The following procedures (the "**Master Ballot Solicitation Procedures**") shall apply in cases where an attorney (such attorneys collectively, the "**Firms**") representing **four (4) or more** holders of Claims in Classes 4, 5, 6, 7, 8, 9, 10(a) and 10(b) (collectively, the "**Master Ballot Classes**")[5] returned a properly completed solicitation directive (the "**Solicitation Directive**"), substantially in the form attached to the Disclosure Statement Order as **Exhibit 14**, and an associated list of such Firm's four (4) or more client(s) (the "**Eligible Clients**")[6] that hold Claims in any Master Ballot Class in the precise, readily accessible electronic format dictated by the Solicitation Agent (the "**Client List**"), that it directed be solicited pursuant to the Master Ballot Solicitation Procedures on or before 4:00 p.m. on April 527, 2021, as such deadline may be extended by the Debtors in their sole discretion in consultation

---

[5] The Debtors may, in their sole discretion, waive this four-client eligibility minimum for Master Ballot solicitation.

[6] To streamline solicitation, any Firm that represents represented three (3) or fewer Eligible Clients will be has been deemed to have selected for its Eligible Clients the Direct Solicitation Method (as defined as described below) for its Eligible Clients.

~~with the Creditors' Committee~~ (the "**Solicitation Directive Deadline**").[7]  Any Firm that ~~fails~~failed to return the Solicitation Directive by the Solicitation Directive Deadline ~~will be~~has been deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Eligible Clients according to the Direct Solicitation Method (defined below).  Except as otherwise specifically provided in the Master Ballot Solicitation Procedures, the procedures set forth above for establishing Claim amounts for voting purposes and allowance and disallowance of Claims for tabulation purposes continue to apply to Claims voted by Master Ballot.

Each Client List, Master Ballot, and the contents thereof (including attachments) shall be subject to the confidentiality provisions applicable to Proof of Claim forms set forth in the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [D.I. 800] and to the *Third Amended Protective Order* [D.I. 1935], *provided*, for the avoidance of doubt, that nothing herein shall prohibit the public disclosure of the Voting Report prepared on the basis thereof.

The Client List must mirror precisely the format attached to the Solicitation Directive and include at least each applicable Eligible Client's name and the number (the "**Claim Number**") assigned by the Solicitation Agent to each Proof of Claim of each Eligible Client on the Client List that will be subject to the Master Ballot Solicitation Procedures.  If a Firm ~~returns~~returned the Solicitation Directive and Client List by the Solicitation Directive Deadline,[8] but the Client List does not contain applicable Claim Numbers, contains fewer than four (4) Eligible Clients, does not precisely follow the "Client List Formatting Instructions" provided with the Solicitation Directive, or is otherwise defective, the Solicitation Agent will solicit votes on the Plan from your Eligible Clients according to the Direct Solicitation Method.  The Solicitation Agent may have, but ~~is~~was not required to, contact parties who ~~submit~~submitted incomplete or otherwise deficient Solicitation Directives to make a reasonable effort to cure such deficiencies prior to the Solicitation Directive Deadline.  Each Firm is required to confirm the accuracy of the Client List in the Solicitation Directive.

The Claims of Eligible Clients listed on each Solicitation Directive shall be solicited pursuant to the solicitation method below selected by the Firm on the applicable Solicitation Directive:

a. **Master Ballot Solicitation Method**. If a Firm ~~certifies~~certified that (i) the Firm will collect and record the votes of its Eligible Clients through customary and accepted practices, or that it has obtained (or will obtain) authority to procedurally cast each Eligible Client's vote (*provided* that the Firm complies with the voting procedures set forth herein and each Eligible Client indicates an informed decision on such vote) or (ii) it has the authority under applicable law to vote to accept or reject the Plan on behalf of its Eligible Clients (with a valid power of attorney provided to the Solicitation Agent), the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Ballot (a "**Master Ballot**") on which the Firm must record the votes on the Plan for each of its Eligible Clients in accordance with the Firm's customary and accepted practices (the "**Master Ballot Solicitation Method**"). If it is the Firm's customary and accepted practice to receive or collect authorizations or instructions from its Eligible Clients by email, telephone, or other standard communication methods (including electronic methods, such as a website or smart phone application), the Firm will be authorized to follow such customary practices. Any Firm that ~~elects~~elected this procedure shall meet all applicable standards to receive informed consent from its Eligible Clients. Each Firm that ~~elects~~elected this procedure shall either (i) provide the Disclosure Statement, via instructions detailing how to access electronic versions or in hard copy or electronic format, to its Eligible Clients, or (ii) request that, for informational purposes and by selecting the applicable box on the Solicitation Directive, the Solicitation Agent

serve Solicitation Packages (without Ballots) on its Eligible Clients.[97] Any Firm that ~~elects~~elected this procedure must return the Master Ballot with the votes of its applicable Eligible Clients set forth on the accompanying Client List (in Excel format) to the Solicitation Agent so that it is received by the Voting Deadline. The Master Ballot must be returned to the Solicitation Agent pursuant to the instructions on the form of Master Ballot attached to the Disclosure Statement Order as **Exhibit 2B**. Please note that the Debtors encourage Firms to submit Master Ballots and accompanying Client Lists (setting forth the Eligible Clients' votes) via encrypted email or other secured method of electronic transmission. Firms with any questions about such secured transmission methods should contact Prime Clerk at: purduepharmaballots@primeclerk.com.

b.    **Direct Solicitation Method**. If a Firm prefers to have each of its Eligible Clients cast their own vote to accept or reject the Plan or it does not have authority from its Eligible Clients as described above, such Firm may direct the Solicitation Agent to solicit votes on the Plan directly from its Eligible Clients by mailing Solicitation Packages (including Ballots) directly to the Firm's Eligible Clients at the addresses provided on the Client List (the "**Direct Solicitation Method**"). If no address is set forth on the Client List, the Solicitation Agent shall solicit votes on the Plan directly from the Firm's Eligible Clients by mailing the Solicitation Packages (including Ballots) directly to the Firm's Eligible Clients at the primary addresses as indicated in the applicable Proof of Claim forms. Under this procedure, completed Ballots will be submitted to the Solicitation Agent individually by the Eligible Clients. For the avoidance of doubt, any Firm that ~~fails~~failed to properly return the Solicitation Directive by the Solicitation Directive Deadline[10] ~~will be~~has been deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Eligible Clients according to the Direct Solicitation Method.

To the extent that the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the Solicitation Agent may tabulate the vote submitted directly by the Eligible Client and invalidate the vote submitted by the Firm on the Eligible Client's behalf.

To the extent that an Eligible Client appears on the Client List of more than one Firm, the Solicitation Agent will use reasonable efforts to inform such multiple Firms of the duplicative and/or conflicting representation. It is the sole obligation and responsibility of the Firms to coordinate with each other to resolve the conflicting representation, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to purduepharmaballots@primeclerk.com copying all affected Firms confirming such resolution. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (i.e., multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (i.e., a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent is authorized to invalidate both such inconsistent votes. If after the submission of inconsistent votes, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email purduepharmaballots@primeclerk.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. For the further avoidance of doubt, if the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the vote cast by the Eligible

---

[97] Such informational Solicitation Packages may contain a generic, non-customized insert explaining that the recipient's attorney has elected to utilize the Master Ballot Solicitation Method.

[10] ~~See footnote 7.~~

Client will control.  Notwithstanding anything to the contrary herein, neither the Debtors nor the Solicitation Agent are obligated to attempt to cure any inconsistent votes.

      **H.**      **Amendments to the Plan and Solicitation and Voting Procedures.**

      The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption and Rejection Notices, Voting and Tabulation Procedures, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

### Exhibit 2A

**Form of Individual Ballot**

**Classes 4, 5, 6, 7, 8, 9, 10(a) and 10(b) Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) Case No. 19-23649 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE ~~THIRD AMENDED JOINT~~FIFTH AMENDED JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF**
**PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

**CLASS [•]: [CLASS NAME] CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY**
**<u>BEFORE</u> COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO**
**BE <u>ACTUALLY RECEIVED</u> BY PRIME CLERK LLC ("PRIME CLERK" OR THE**
**"SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING EASTERN TIME) ON**
**July 14, 2021 (THE "<u>VOTING DEADLINE</u>").**

---

The Solicitation Agent, on behalf of Purdue Pharma L.P. ("**Purdue Pharma**"), its general partner Purdue Pharma Inc. ("**PPI**"), and Purdue Pharma's wholly owned direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**"), is soliciting votes to accept or reject the *~~Third~~Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated ~~May 24~~June 2, 2021 [D.I. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

supplemented from time to time, the "**Plan**"[2]) from the holders of certain Impaired Claims against the Debtors.

You are receiving this ballot (the "**Ballot**") because you hold a Claim against the Debtors as of **MARCH 10, 2021** (the "**Voting Record Date**"). Your Claim is classified under the Plan in Class [•] ([•] Claims). Except as otherwise set forth in the Bar Date Order, all timely filed Claims have been deemed filed against the Debtors, and, therefore, you are entitled to vote to accept or reject the Plan in Class [•].

The rights of holders of Claims in Class [•] are described in the Disclosure Statement for the Plan, filed on ~~May 24~~June 2, 2021 [D.I. [~~•~~•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [D.I. [•]] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Solicitation Package you are receiving with this Ballot provides instructions detailing how to access electronic versions, request hard copies or request flash-drive format versions of each of the Disclosure Statement Order as entered by the Bankruptcy Court (without any exhibits) and the Disclosure Statement as approved by the Court (with the Plan annexed thereto). If you need to obtain additional solicitation materials, you may contact the Solicitation Agent by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/purduepharma; (ii) writing Purdue Pharma Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165; (iii) emailing purduepharmaballots@primeclerk.com; or (iv) calling the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at https://www.nysb.uscourts.gov/.

Pursuant to the Disclosure Statement and Solicitation Procedures Order, the Bankruptcy Court has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is <u>actually received</u> no later than <u>4:00 p.m. (prevailing Eastern Time) on July 14, 2021</u>.**

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the

---

[2]  Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

If you have any questions on how to properly complete this Ballot, please call the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, INJUNCTION, AND CHANNELING INJUNCTION PROVISIONS IN THE PLAN**

**Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions. Thus, you are advised to review and consider the Plan carefully. For your convenience, such provisions are set forth on __Exhibit 1__ hereto.  Below is a summary of the release provisions. For the avoidance of doubt, to the extent any provision of this notice conflicts with the terms of the plan, the terms of the plan will control.  Capitalized terms used below and in __Exhibit 1__ have the meanings ascribed to such terms in the Plan.**

**INFORMATION ABOUT RELEASE PROVISIONS, INCLUDING THIRD-PARTY RELEASES:**

**Pursuant to the Plan, certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action.**

**The Releasing Parties include all holders of Claims and Interest under the Plan.**

**The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in __Section 10.6(a)__ of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided*, *however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.  The Shareholder Released Parties are the beneficiaries of the separate shareholder release provisions in the Plan.  The Plan Supplement will include the Shareholder Settlement, which will provide for, among other things, the settlement of claims against the Shareholder Released Parties.**

4

---

[3] [This notice will appear only on Ballots with respect to Claims in Classes 10(a) and 10(b).]
[4]  For PI Channeled Claims that are liquidated pursuant to the liquidation procedures of the PI TDP, the ~~Claims Administrator~~PI Trust claims administrator will consider exceptions for good cause on a case-by case basis.
[5] Subject to exceptions set forth in the PI TDP.
[6] Subject to extension which the PI Trust claims administrator may give in his discretion.
[7] Subject to extension which the PI Trust claims administrator may give in his discretion.

**IMPORTANT NOTICE TO HOLDERS OF PERSONAL INJURY CLAIMS IN CLASSES 10(a) and 10(b) REGARDING REQUIREMENT TO FILE ADDITIONAL CLAIM FORM AND OPTION TO ELECT TO LIQUIDATE CLAIMS IN THE TORT SYSTEM:[3]**

Pursuant to the Plan, PI Claims against the Debtors will be channeled to the PI Trust, which will be the only source of recovery for holders of qualified personal injury claims in Classes 10(a) (NAS PI Claims) and 10(b) (Non-NAS PI Claims).

In order to be eligible to recover money on your PI Channeled Claim under the PI TDP, you must have *already* filed a Proof of Claim in the Chapter 11 Cases[4] asserting such PI Channeled Claim against one or more Debtors no later than April 23, 2021.[5] Further, you must complete, sign and submit an *additional* signed claim form ***no later than (i) 90 days[6] after the dissemination of the Non-NAS PI Claim Form or (ii)*** *150 days[7] after the* ~~*Effective Date*~~*dissemination of the* ~~*Plan*~~*NAS PI Claim Form* describing your injury and electing your payment option, as well as a HIPAA consent form. ~~Both of these~~These forms are attached to the PI TDP in the Plan Supplement, and will also be available on a website to be set up by the PI Trust.

As set forth in Article III.T of the Plan and the Plan Supplement, you may elect to liquidate your PI Claim pursuant to the streamlined liquidation procedures set forth in the in the personal injury trust distribution procedures ("**PI TDP**"). Alternatively, you may "opt out" of the streamlined liquidation procedures and liquidate your PI Claim through a lawsuit in the tort system that you commence against the PI Trust (and only the PI Trust), and not against the Debtors or any members of the Sackler Families.

The special procedures set forth in Exhibit G to the PI TDP shall apply to PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in their capacity as an heir must execute and submit the Heirship Declaration attached to the PI TDP as Exhibit F.

**In order to "opt out" and liquidate your PI Claim in the tort system, you must make such an election by checking the "opt out" box on the additional signed claim form that must be submitted no later than (i) 90 days after the dissemination of the Non–NAS PI Claim Form or (ii) 150 days after the** ~~**Effective Date of the Plan as described above.**~~**dissemination of the NAS PI Claim Form. Failure to respond does not constitute "opting out." If you do not timely return such claim form as instructed, you will be deemed to have consented to have your PI Channeled Claim liquidated under the applicable trust distribution procedures, which provide that if you fail to return the claim form by the deadline, your personal injury claims will be disallowed, you will not recover any money on it from the PI Trust, and you will be forever barred from pursuing your claims in any forum.**

---

[3] [This notice will appear only on Ballots with respect to Claims in Classes 10(a) and 10(b).]

[4] For PI Channeled Claims that are liquidated pursuant to the liquidation procedures of the PI TDP, the ~~Claims Administrator~~PI Trust claims administrator will consider exceptions for good cause on a case-by case basis.

[5] Subject to exceptions set forth in the PI TDP.

[6] Subject to extension which the PI Trust claims administrator may give in his discretion.

[7] Subject to extension which the PI Trust claims administrator may give in his discretion.

**An election to liquidate your PI Claim in the tort system instead of under the PI TDP cannot be reversed.  If you choose to opt out, you will be forever barred from accessing the streamlined and expedited liquidation processes under the PI TDP as well as the expedited appeal process set forth in the PI TDP.**

Each of these options has a distinct proof threshold.  The liquidation process under the PI TDP requires you to submit minimal evidence to prove your claim, such as prescription records or an affidavit swearing that you took certain Purdue opioid products.  By contrast, the tort system will require you to prove every legal "element" of your PI Claim.

The Plan fixes a set amount of money available to compensate all PI Claimants for their opioid-related personal injuries.  On average, it costs more money to resolve claims in the tort system than it does to resolve them under the streamlined liquidation procedures of the PI TDP.  Therefore, the more PI Claimants who "opt out," the less money will be available for the individual victims as a group.  The responsibility, costs and expenses of defending against your PI Claim will fall solely on the PI Trust, and will reduce the already-limited amount of money available to compensate other individual victims of Purdue opioid products.

If you elect to opt out of the streamlined procedures set forth in the PI TDP, and succeed in proving your PI Claim in court, your judgment may still be subject to appeal, which may add additional time and expense to the litigation process, further reducing the amount of money you can ultimately receive.  Payments on account of a successful final judgment will also be subject to certain limitations and caps that ensure no personal injury claimant receives more than its pro rata recovery on account of opioid-related personal injury claims against the Debtors.  Any multiple, exemplary, statutory-enhanced and/or punitive damages, attorneys' fees and costs, and interest, awarded by a court as part of a final judgment will be excluded for purposes of calculating any payments to be made by the PI Trust in respect of such final judgment.

**You are advised to carefully review Article III.T of the Plan and the Plan Supplement, which set forth the eligibility requirements and process by which the PI Trust will make distributions to holder of qualified PI Claims in Classes 10(a) and 10(b).  For the avoidance of doubt, to the extent any provision of this notice conflicts with the terms of the Plan, the terms of the Plan will control.  Capitalized terms used herein have the meanings ascribed to such terms in the Plan.**

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan.  The terms of the Plan are described in the Disclosure Statement.  **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class [•] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Claims in Class [•] that vote on the Plan in each such Class.  In the event that Class [•] votes to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Claims in Class [•] if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Claims in Class [•] and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or vote to reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must complete, sign, and return this Ballot so that it is <u>actually received</u> by the Solicitation Agent no later than the Voting Deadline of <u>July 14, 2021 at 4:00 p.m. (prevailing Eastern Time)</u>.**  Ballots must be delivered to the Solicitation Agent at the appropriate address listed below:

| If by E-Ballot: | If by standard or overnight: | If by hand delivery: |
|---|---|---|
| Visit https://restructuring.primeclerk.com/ purduepharma and click on the "Submit E-Ballot" link | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street, Suite 1440 New York, NY 10165 | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street, Suite 1440 New York, NY 10165 |
| For your E-Ballot login credentials and further detail, please see page 7 below. | | If you plan to hand-deliver your Ballot to Prime Clerk's office, please email purduepharmaballots@primeclerk.com at least twenty-four (24) hours in advance to arrange delivery. |

**Class [__] Ballots will not be accepted by telecopy, facsimile, email, or other electronic means of transmission (other than by E-Ballot).**

You must properly complete the Ballot as follows:

a.   <u>Item 1 (Amount of Claim)</u>.  Make sure that the information contained in Item 1 below regarding the amount of your Claim is correct.  **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Claim in Class [•] has been allowed in the amount of $1.00 for**

**voting purposes only, and not for distribution, allowance, or any other purpose.**

b.    Item 2 (Vote on the Plan).  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below. You must vote the entire amount of your Claim either to accept (i.e., vote in favor of) or reject (i.e., vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.    If you hold Claims in a Class other than Class [•], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot.

d.    If more than one timely, properly completed Ballot is received, unless the holder of the Class [•] Claim receives Bankruptcy Court approval otherwise, then the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot.

e.    If you fail to designate either an acceptance or rejection of the Plan or designate both an acceptance and rejection of the Plan, the Solicitation Agent may, in its discretion, either contact you to attempt to cure the defect or not count your vote as either an acceptance or rejection of the Plan.

f.    Item 3 (Acknowledgments and Certifications).  Item 3 contains certain required certifications, which you are making by signing and returning the Ballot.  Please ensure that you have read and understood the certifications prior to signing the Ballot and the certifications are correct for your Ballot.  Provide your name, mailing address, and any remaining information requested in Item 3 below.

g.    If you are completing this Ballot on behalf of another claimant, indicate your relationship with such claimant and the capacity in which you are signing on the appropriate line in Item 3 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

h.    Sign and date the Ballot.

i.    If additional space is required to respond to any item on the Ballot, please use additional sheets of paper clearly marked to indicate the applicable item of the Ballot to which you are responding. Do not include medical records with this Ballot. Medical records cannot be returned by the Solicitation Agent.

j.    Deliver the completed, executed Ballot so as to be **actually received** by the Solicitation Agent before the Voting Deadline.

**PLEASE NOTE:**

No Ballot shall constitute or be deemed a Proof of Claim or an assertion of a Claim.  No fees, commissions, or other remuneration will be payable for soliciting votes on the Plan.

**NOTHING CONTAINED HEREIN OR IN THE SOLICITATION PACKAGES SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, OR (C) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-217-0912 (DOMESTIC TOLL-FREE) OR 347-859-8093 (INTERNATIONAL), OR BY EMAILING PURDUEPHARMABALLOTS@PRIMECLERK.COM.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**SUBMITTING BY E-BALLOT**

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit https://restructuring.primeclerk.com/purduepharma. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:_____**

**The Solicitation Agent's "E-Ballot" platform is the sole manner in which your Ballot will be accepted via electronic or online transmission. Ballots submitted by telecopy, facsimile, email, or other electronic means of transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Holders who cast a Ballot using the Solicitation Agent's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

## [CLASS NAME] BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Amount of [Class Name] Claims.**  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 10, 2021, the undersigned holds Class [•] Claims in the amount set forth below. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Claim in Class [•] has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

| |
|---|
| **Claims Amount:** $1.00 |

**Item 2.  Vote on the Plan.**  The undersigned holder of Class [•] Claims in the amount set forth in Item 1 above hereby votes to:

**Check one box**:          ☐     **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan

                                      ☐     **REJECT (I.E., VOTE AGAINST)** the Plan


*[Remainder of Page Intentionally Left Blank / Certification Page to Follow]*

**Item 3.  Acknowledgments and Certification.**  By signing this Ballot, the undersigned certifies that the undersigned has been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, the Disclosure Statement and Solicitation Procedures Order without exhibits and a Confirmation Hearing Notice.  The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Claimant: _____

Signature: _____

Name of Signatory (if different than Claimant): _____

If authorized by Agent, Title of Agent _____

Street Address: _____

Street Address:
(continued) _____

City, State, Zip Code: _____

Telephone Number: _____

Email Address: _____

Date Completed: _____

## EXHIBIT 1

**Section 10.6(a)**             **Releases by Debtors**

            **As of the Effective Date, for good and valuable consideration, the adequacy
of which is hereby confirmed, including, without limitation, the service of the Released Parties
before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the
implementation of the Restructuring Transactions, and except as otherwise explicitly provided in
the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely,
unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and
their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits,
judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses,
contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in
each case, of any kind, character or nature whatsoever, including any derivative claims asserted or
assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action
arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any
of their Estates, or that any other Person or party claiming under or through any Debtor or any of
their Estates, would have presently or in the future been legally entitled to assert in its own right
(whether individually or collectively) or on behalf of any Debtor or any of their Estates or any
other Person, notwithstanding section 1542 of the California Civil Code or any law of any
jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed
waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known
or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or
hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or
contract or based on any other legal or equitable theory or principle (including fraud, negligence,
gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance,
breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability,
unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation
and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising
under federal or state statutory or common law, or any other applicable international, foreign or
domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of
where in the world accrued or arising, from the beginning of time, in each case, based on or
relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed
prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without
limitation, (1i) the subject matter of, or the transactions or events giving rise to, any Claim or
Interest that is treated in the Plan, (2ii) the business or contractual arrangements or interactions
between any Debtor and any Released Party (including historical business or contractual
arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and
any exercise of any common law or contractual rights of setoff or recoupment by any Released
Party at any time on or prior to the Effective Date), (3iii) any employment or retention of any
Released Party by the Debtors (including any service as a director, officer, executive, consultant or
advisor to the Debtors or service in any similar capacity), (4iv) any direct or indirect beneficial
ownership of any equity interest in or debt obligation of the Debtors, (5v) the Restructuring
Transactions, (6vi) the Pending Opioid Actions, (7vii) Opioid-Related Activities or the Debtors'
development, production, manufacture, licensing, labeling, marketing, advertising, promotion,
distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each
case, including the Debtors' interactions with regulators and regardless of where in the world any
such activities or any result, loss, injury or damage resulting therefrom occurred, (8viii) any past,
present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of
its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event,
transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

(9ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (10x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (11xi) the solicitation of votes with respect to the Plan, or (12xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this <u>Section 10.6(a)</u>.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Section 10.6(b)        Releases by Releasing Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the

Chapter 11 Cases, including, without limitation, (~~13~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~14~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~15~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~16~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~17~~v) the Restructuring Transactions, (~~18~~vi) the Pending Opioid Actions, (~~19~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~20~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~21~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~22~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~23~~xi) the solicitation of votes with respect to the Plan, or (~~24~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against (I) any Shareholder Release Snapback Party or (II) any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)**          **Releases by Debtors of Holders of Claims**

~~To~~          **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding, **in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~, Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, (~~25~~i) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and~~**or** (~~26~~ii) such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(c) shall (A) release any **contractual** Estate Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions,** (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)        Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(a), by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~27~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~28~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~29~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~30~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~31~~v) the Restructuring Transactions, (~~32~~vi) the Pending Opioid Actions, (~~33~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (34viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (35ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (36x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (37xi) the solicitation of votes with respect to the Plan, or (38xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)       Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties and all other Persons from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~39~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~40~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~41~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~42~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~43~~v) the Restructuring Transactions, (~~44~~vi) the Pending Opioid Actions, (~~45~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~46~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~47~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~48~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~49~~xi) the solicitation of votes with respect to the Plan, or (~~50~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(b)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this <u>Section 10.7(b)</u> shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this <u>Section 10.7(c)</u>, by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~51~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (52ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (53iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (54iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (55v) the Restructuring Transactions, (56vi) the Pending Opioid Actions, (57vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (58viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (59ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (60x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (61xi) the solicitation of votes with respect to the Plan, or (62xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this Section 10.7(c) shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, and including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any claimsClaims held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this Section 10.7(c) of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this Section 10.7(c) shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8          Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in Sections 10.5, 10.6 and 10.7 of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a) (a)    **Terms.    In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in Sections 10.5, 10.6 and 10.7 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i) (i)    **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii) (ii)    **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii) (iii)    **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v) (v)    **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b) (b)    **Reservations. Notwithstanding anything to the contrary in this Section 10.8 or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

(i) (i)    **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)   the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)   the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)   the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)   the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)   the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)   the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)   NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)   **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)   **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

24

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9          Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10**          **MDT Insurer Injunction**

(a) (a)    **Terms.** In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:

(i) (i)    commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(ii) (ii)    enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iii) (iii)      creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iv) (iv)    asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and

(v) (v)    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.

(b) (b)    **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

26

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.10, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**          **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)   **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)   **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)       **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or
attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation,
indemnity, contribution or recoupment of any kind, whether
directly or indirectly, against any obligation due to any such
Settling MDT Insurer, or against the property of such
Settling MDT Insurer, on account of such Claim based on,
arising under or attributable to such MDT Insurance Policy;
and

(v) (v) taking any act, in any manner, in any place whatsoever, that
does not conform to, or comply with, the provisions of the
Plan applicable to such Claim based on, arising under or
attributable to such MDT Insurance Policy.

(b) (b) **Reduction of Insurance Judgments.** Any right, Claim, or cause of
action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but
for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under
applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim
against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in
question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall
be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that
Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative
recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right,
Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may
assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right,
Claim, or cause of action.

(c) (c) **Modifications**. There can be no modification, dissolution or termination
of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d) N**on-Limitation of Settling MDT Insurer Injunction**. Except as set
forth in paragraphs (b) and (c) of this Section 10.11, nothing in the Plan, the MDT Documents or the
Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or
effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12        Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall
have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation,
suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in
connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit
of the Disclosure Statement (including any information provided, or statements made, in the Disclosure
Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement
Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor
Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation
of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan
and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating
Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or
Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a
criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

**<u>Exhibit 2B</u>**

**Form of Master Ballot**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) Case No. 19-23649 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE ~~THIRD AMENDED JOINT~~FIFTH AMENDED JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF**
**PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

**CLASSES 4, 5, 6, 7, 8, 9, 10(A) AND 10(B) CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE "SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING EASTERN TIME) ON JULY 14, 2021 (THE "VOTING DEADLINE").**

---

The Solicitation Agent, on behalf of Purdue Pharma L.P. ("**Purdue Pharma**"), its general partner Purdue Pharma Inc. ("**PPI**"), and Purdue Pharma's wholly owned direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**"), is soliciting votes to accept or reject the *~~Third~~Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated ~~May 24~~June 2, 2021 [D.I. [♠●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

supplemented from time to time, the "**Plan**"[2]) from the holders of certain Impaired Claims against the Debtors.

You are receiving this ballot (the "**Master Ballot**") because you represent **at least four or more** Eligible Clients[3] that hold Eligible Claims against the Debtors in at least one of Classes 4, 5, 6, 7, 8, 9, 10(a) and/or 10(b) as of **March 10, 2021** (the "**Voting Record Date**").  You are receiving this Master Ballot because you previously certified to the Solicitation Agent in a Solicitation Directive that (i) you will expend commercially reasonable efforts to collect and record the votes of your Eligible Clients on the Client List associated with such Solicitation Directive through customary and accepted practices, or that you have obtained authority to procedurally cast such Eligible Clients' votes (provided that you have complied with the voting procedures set forth in the Disclosure Statement and Solicitation Procedures Order, and each such Eligible Client has indicated an informed decision on such vote) or (ii) you have the authority under applicable law to vote to accept or reject the Plan on behalf of such Eligible Clients and have provided a valid power of attorney to the Solicitation Agent.  **To use this Master Ballot, you must meet all applicable standards to receive informed consent from your Eligible Clients on such Client List.**  In addition, you must either (i) provide the Disclosure Statement to your Eligible Clients on the Client List via detailed instructions on how to access electronic versions thereof, or in hard copy or electronic format, or (ii) have requested that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without Ballots) on your Eligible Clients on the Client List using the addresses included thereon.

The rights of holders of Eligible Claims are described in the Disclosure Statement for the Plan, filed on ~~May 24~~June 2, 2021 [D.I. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [D.I. [•]] (the "**Disclosure Statement and Solicitation Procedures Order**").  The Solicitation Package you are receiving with this Master Ballot provides instructions detailing how to access electronic versions, request hard copies, or request flash-drive format versions of each of the Disclosure Statement and Solicitation Procedures Order as entered by the Bankruptcy Court, and the Disclosure Statement as approved by the Court (with the Plan annexed thereto).  If you need to obtain additional solicitation materials, you may contact the Solicitation Agent by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/purduepharma; (ii) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165; (iii) emailing purduepharmaballots@primeclerk.com; or (iv) calling the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (if calling from outside the U.S. or Canada).  You may also access these materials for a fee via PACER at https://www.nysb.uscourts.gov/.

Pursuant to the Disclosure Statement and Solicitation Procedures Order, the Bankruptcy Court has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code.  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  This Master Ballot may not be

---

[2]  Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

[3] Or Debtors have granted a waiver of such requirement with respect to you.

used for any purpose other than to record the votes of your Eligible Clients on the Client List to accept or reject the Plan.  If you believe that you have received this Master Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

**For the votes of your Eligible Clients on the Client List to be counted, this Master Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is actually received no later than <u>4:00 p.m. (prevailing Eastern Time) on July 14, 2021</u>.  As set forth below, you will need to attach or otherwise submit an exhibit to this Master Ballot containing details of the Eligible Clients on the Client List that you represent and for whom you are voting on their behalf with respect to their Eligible Claims under this Master Ballot (the "<u>Exhibit</u>"), including whether each of your Eligible Clients on the Client List votes to accept the Plan, reject the Plan, or abstains from voting by Master Ballot (including by not providing you with voting instructions).**

Each Client List, Master Ballot, and the contents thereof (including attachments) shall be subject to the confidentiality provisions applicable to Proof of Claim forms set forth in the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [D.I. 800], and to the *Third* Amended Protective Order [D.I. ~~969~~1935]; *provided*, for the avoidance of doubt, that nothing herein shall prohibit the public disclosure of the Voting Report prepared on the basis thereof.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

If you have any questions on how to properly complete this Master Ballot, please call the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE                                        LEGAL                                        ADVICE.**

**IMPORTANT NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, INJUNCTION, AND CHANNELING INJUNCTION PROVISIONS IN THE PLAN**

Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions. Thus, you are advised to review and consider the Plan carefully. For your convenience, such provisions are set forth on <u>Exhibit 1</u> hereto.  Below is a summary of the release provisions. For the avoidance of doubt, to the extent any provision of this notice conflicts with terms of the plan, the terms of the plan will control.  Capitalized terms used below and in <u>Exhibit 1</u> have the meanings ascribed to such terms in the Plan.

**INFORMATION ABOUT RELEASE PROVISIONS, INCLUDING THIRD-PARTY RELEASES:**

Pursuant to the Plan, certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action.

The Releasing Parties include all holders of Claims and Interest under the Plan.

The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in <u>Section 10.6(a)</u> of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided*, *however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.  The Shareholder Released Parties are the beneficiaries of the separate shareholder release provisions in the Plan.  The Plan Supplement will include the Shareholder Settlement, which will provide for, among other things, the settlement of claims against the Shareholder Released Parties.

---

[4] [This notice will appear only on Ballots with respect to Claims in Classes 10(a) and 10(b).]

[5] For PI Channeled Claims that are liquidated pursuant to the liquidation procedures of the PI TDP, the ~~Claims Administrator~~PI Trust claims administrator will consider exceptions for good cause on a case-by case basis.

[6] Subject to exceptions set forth in the PI TDP.

[7] Subject to extension which the PI Trust claims administrator may give in his discretion.

[8] Subject to extension which the PI Trust claims administrator may give in his discretion.

**IMPORTANT NOTICE TO HOLDERS OF PERSONAL INJURY CLAIMS IN CLASSES 10(a) and 10(b) REGARDING REQUIREMENT TO FILE ADDITIONAL CLAIM FORM AND OPTION TO ELECT TO LIQUIDATE CLAIMS IN THE TORT SYSTEM:[4]**

Pursuant to the Plan, PI Claims against the Debtors will be channeled to the PI Trust, which will be the only source of recovery for holders of qualified personal injury claims in Classes 10(a) (NAS PI Claims) and 10(b) (Non-NAS PI Claims).

In order to be eligible to recover money on your PI Channeled Claim under the PI TDP, you must have *already* filed a Proof of Claim in the Chapter 11 Cases[5] asserting such PI Channeled Claim against one or more Debtors no later than April 23, 2021.[6]  Further, you must complete, sign and submit an *additional* signed claim form **no later than *(i) 90 days[7] after the dissemination of the Non-NAS PI Claim Form or (ii)*150 days[8]** *after the* ~~Effective Date~~*dissemination of the* ~~Plan~~*NAS PI Claim Form* describing your injury and electing your payment option, as well as a HIPAA consent form. ~~Both of these~~These forms are attached to the PI TDP in the Plan Supplement, and will also be available on a website to be set up by the PI Trust.

As set forth in Article III.T of the Plan and the Plan Supplement, you may elect to liquidate your PI Claim pursuant to the streamlined liquidation procedures set forth in the in the personal injury trust distribution procedures ("PI TDP").  Alternatively, you may "opt out" of the streamlined liquidation procedures and liquidate your PI Claim through a lawsuit in the tort system that you commence against the PI Trust (and only the PI Trust), and not against the Debtors or any members of the Sackler Families.

The special procedures set forth in Exhibit G to the PI TDP shall apply to PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in their capacity as an heir must execute and submit the Heirship Declaration attached to the PI TDP as Exhibit F.

**In order to "opt out" and liquidate your PI Claim in the tort system, you must make such an election by checking the "opt out" box on the additional signed claim form that must be submitted no later than (i) 90 days after the dissemination of the Non–NAS PI Claim Form or (ii) 150 days after the ~~Effective Date of the Plan as described above.~~dissemination of the NAS PI Claim Form.  Failure to respond does not constitute "opting out."  If you do not timely return such claim form as instructed, you will be deemed to have consented to have your PI Channeled Claim liquidated under the applicable trust distribution procedures, which provide that if you fail to return the claim form by the deadline, your personal injury claims will be disallowed, you will not recover any money on it from the PI Trust, and you will be forever barred from pursuing your claims in any forum.**

---

[4]  [This notice will appear only on Ballots with respect to Claims in Classes 10(a) and 10(b).]
[5]  For PI Channeled Claims that are liquidated pursuant to the liquidation procedures of the PI TDP, the ~~Claims Administrator~~PI Trust claims administrator will consider exceptions for good cause on a case-by case basis.
[6] Subject to exceptions set forth in the PI TDP.
[7] Subject to extension which the PI Trust claims administrator may give in his discretion.
[8] Subject to extension which the PI Trust claims administrator may give in his discretion.

**An election to liquidate your PI Claim in the tort system instead of under the PI TDP cannot be reversed. If you choose to opt out, you will be forever barred from accessing the streamlined and expedited liquidation processes under the PI TDP as well as the expedited appeal process set forth in the PI TDP.**

Each of these options has a distinct proof threshold. The liquidation process under the PI TDP requires you to submit minimal evidence to prove your claim, such as prescription records or an affidavit swearing that you took certain Purdue opioid products. By contrast, the tort system will require you to prove every legal "element" of your PI Claim.

The Plan fixes a set amount of money available to compensate all PI Claimants for their opioid-related personal injuries. On average, it costs more money to resolve claims in the tort system than it does to resolve them under the streamlined liquidation procedures of the PI TDP. Therefore, the more PI Claimants who "opt out," the less money will be available for the individual victims as a group. The responsibility, costs and expenses of defending against your PI Claim will fall solely on the PI Trust, and will reduce the already-limited amount of money available to compensate other individual victims of Purdue opioid products.

If you elect to opt out of the streamlined procedures set forth in the PI TDP, and succeed in proving your PI Claim in court, your judgment may still be subject to appeal, which may add additional time and expense to the litigation process, further reducing the amount of money you can ultimately receive. Payments on account of a successful final judgment will also be subject to certain limitations and caps that ensure no personal injury claimant receives more than its pro rata recovery on account of opioid-related personal injury claims against the Debtors. Any multiple, exemplary, statutory-enhanced and/or punitive damages, attorneys' fees and costs, and interest, awarded by a court as part of a final judgment will be excluded for purposes of calculating any payments to be made by the PI Trust in respect of such final judgment.

**You are advised to carefully review Article III.T of the Plan and the Plan Supplement, which set forth the eligibility requirements and process by which the PI Trust will make distributions to holder of qualified PI Claims in Classes 10(a) and 10(b). For the avoidance of doubt, to the extent any provision of this notice conflicts with the terms of the Plan, the terms of the Plan will control. Capitalized terms used herein have the meanings ascribed to such terms in the Plan.**

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

**Please note: Master Ballot Solicitation Procedures shall only apply in cases where a Firm represents four or more Eligible Clients who may hold Eligible Claims.**

This Master Ballot is provided to you to solicit, collect, and record the votes of your Eligible Clients on the Client List to accept or reject the Plan. The terms of the Plan are described in the Disclosure Statement. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

The Plan will be accepted by a voting Class if the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Claims in that Class vote in favor of the Plan. In the event that a Class votes to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Claims in that Class if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Claims in that Class and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or vote to reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have the votes of your Eligible Clients on the Client List reflected on this Master Ballot counted, this Master Ballot must be completed, signed, and returned to the Solicitation Agent so that it is actually received no later than Voting Deadline of <u>July 14, 2021 at 4:00 p.m. (prevailing Eastern Time)</u>.** Master Ballots must be delivered to the Solicitation Agent at the appropriate address listed below:

| If by email: | If by standard or overnight: | If by hand delivery: |
|---|---|---|
| purduepharmaballots@primeclerk.com | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place, 60 East 42nd Street, Suite 1440 New York, NY 10165 | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place, 60 East 42nd Street, Suite 1440 New York, NY 10165 |
| Please note that the Debtors encourage Firms to submit Master Ballots and accompanying Client Lists (setting forth the Eligible Clients' votes) via encrypted email or other secured method of electronic transmission. Firms with any questions about such secured transmission methods should contact Prime Clerk at: purduepharmaballots@primeclerk.com. | | If you plan to hand-deliver your Master Ballot to Prime Clerk's office, please email purduepharmaballots@primeclerk.com at least twenty-four (24) hours in advance to arrange delivery. |

Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by email to purduepharmaballots@primeclerk.com). Please note that email is an acceptable means of transmitting Master Ballots only—any Clients voting directly that wish to transmit their vote electronically to the Solicitation Agent must use Prime Clerk's dedicated online "E-Ballot" portal, available at the Debtors' chapter 11 case                                                                                           website.

You must properly complete the Master Ballot as follows:

a.    Item 1 (Exhibit).  Item 1 below requires that you include with this Master Ballot the completed Excel exhibit (the "**Exhibit**"), in the precise, readily accessible electronic format provided by the Solicitation Agent, that lists the information set forth herein with respect to each of your Eligible Clients on the Client List; *provided, however*, that if you choose the Master Ballot Solicitation Method and you do not make the Informational Service Election, then you may leave blank the "address" column. Enclosed with this Master Ballot is a pre-populated Exhibit, in Excel format, with the Eligible Client information you submitted with your Solicitation Directive.  For each of the Eligible Clients for which you are casting votes to accept or reject the Plan on this Master Ballot, you must indicate whether the Eligible Client votes to accept or reject the Plan or abstains from voting by Master Ballot (including by not providing you with voting instructions).

| Claim Number | Schedule Number | Plan Class | Claim Amount | Last Name | First Name | Address | Vote on the Plan |
|---|---|---|---|---|---|---|---|
| 1001 | 1502 | Class 1 | $1 | Smith | Alex | 123 Main St, City, California 9000 | Accept |
| 1002 | 1501 | Class 2 | $1 | Jones | John | 321 Side St, City, California 9000 | Reject |

**Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Eligible Claim has been allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

If you have any technical questions or need to arrange for special delivery of your Exhibit, please contact the Solicitation Agent at purduepharmaballots@primeclerk.com or by telephone at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (international).

b.    The Debtors are relying on the Client Lists you provided with the Solicitation Directive as the comprehensive list of your Eligible Clients; therefore, votes of any additional Eligible Clients you add to the Exhibit will not be counted.

c.    Item 2 (Voting Summary).  Item 2 below requires you to summarize the votes of your Eligible Clients on the Client List for the Solicitation Agent.  If all of your Eligible Clients set forth in the Exhibit have voted in the same manner (e.g., all such Eligible Clients have voted to accept the Plan or all such Eligible Clients have voted to reject the Plan), please check the applicable box marked "A" or "B" in Item 2 below.  If certain of your Eligible Clients set forth in the Exhibit have voted to accept the Plan and others have voted to reject the Plan, please check the

box marked "C" in Item 2 below.  **Please note that the Solicitation Agent will
review the Exhibit to collect and record the individual votes of each of your
Eligible Clients regardless of your answer in Item 2 below.**  In the event there
is a discrepancy between your response to Item 2 and the individual votes of any
of the Eligible Clients included in the Exhibit, the individual votes reflected in the
Exhibit will govern and will supersede your response in Item 2 below; *provided*
that, time-permitting, the Solicitation Agent will, but is not required to, make
commercially reasonable efforts to inform you of any such discrepancy and
address such discrepancy prior to filing the Voting Report.

d.     Each Eligible Client that votes must vote the entire amount of his, her, or its
       Eligible Claim (i.e., $1.00) to accept (i.e., vote in favor of) or reject (i.e., vote
       against) the Plan and may not split such vote.  Accordingly, any vote within a
       single Class that attempts partially to accept and partially reject the Plan will not
       be counted.

e.     If the Exhibit to this Master Ballot fails to designate either an acceptance or
       rejection of the Plan or designates both an acceptance and rejection of the Plan for
       any particular Eligible Client, the Solicitation Agent may, in its discretion, either
       contact the party submitting the Master Ballot to attempt to cure the defect or
       disregard the vote of that particular Eligible Client such that it shall not be
       counted as either an acceptance or rejection of the Plan.

f.     Item 3 (Acknowledgements and Certifications).  Item 3 contains certain required
       certifications that you are making by signing and returning the Master Ballot.
       Please ensure that you have read and understood the certifications prior to signing
       the Master Ballot and the certifications are correct for each Eligible Claim voted
       on the Master Ballot. Provide your name, mailing address, and any remaining
       information requested in Item 3 below.

g.     Sign and date the Master Ballot.

h.     If additional space is required to respond to any item on the Master Ballot, please
       use additional sheets of paper clearly marked to indicate the applicable item of the
       Master Ballot to which you are responding.

i.     Deliver the completed, executed Master Ballot so as to be **actually received** by
       the Solicitation Agent before the Voting Deadline.  Please note that the Debtors
       encourage Firms to submit Master Ballots and accompanying Client Lists (setting
       forth the Eligible Clients' votes) via encrypted email or other secured method of
       electronic transmission.  Firms with any questions about such secured
       transmission methods should contact Prime Clerk at:
       purduepharmaballots@primeclerk.com.

**PLEASE NOTE:**

No Master Ballot shall constitute or be deemed a Proof of Claim or an assertion of a Claim.  No fees, commissions, or other remuneration will be payable to your Firm for soliciting votes on the Plan.

**NOTHING CONTAINED HEREIN OR IN THE SOLICITATION PACKAGES SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR MASTER BALLOT, OR (C) NEED ADDITIONAL COPIES OF THE MASTER BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-217-0912 (DOMESTIC TOLL-FREE) OR 347-859-8093 (INTERNATIONAL), OR BY EMAILING PURDUEPHARMABALLOTS@PRIMECLERK.COM.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

# MASTER BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Required Exhibit List of Eligible Clients.**  Please include the Exhibit described above, in the precise, readily accessible electronic format provided by the Solicitation Agent, with respect to each Eligible Client for whom you are submitting a vote to accept or reject the Plan. For the votes of your Eligible Clients to be counted, the Exhibit must be in the format and include all of the information set forth in paragraph (a) of the Instructions to this Master Ballot.

**Item 2.  Summary of Votes with Respect to Plan.** Please summarize the votes of your Eligible Clients below.  To the extent there are inconsistencies between the summary below and the votes as recorded on the Excel exhibit, the votes on the Excel exhibit shall govern.

The undersigned certifies that:

*CHECK ONE BOX ONLY*

A  ☐  **ALL** of the Eligible Clients listed on the Exhibit required in Item 1 **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan.

B  ☐  **ALL** of the Eligible Clients listed on the Exhibit required in Item 1 **REJECT (*I.E.*, VOTE AGAINST)** the Plan.

C  ☐  **CERTAIN** of the Eligible Clients listed on the Exhibit required in Item 1 **ACCEPT (I.E., VOTE IN FAVOR OF)** the Plan, while **OTHER** Eligible Clients **REJECT (*I.E.*, VOTE AGAINST)** the Plan.

**Item 3.  Acknowledgments and Certification.**  By signing this Master Ballot, the undersigned certifies that the following statements are true and correct:

    a)    I have been provided with the Solicitation Package, including a copy of the Disclosure Statement, the Plan and all other exhibits thereto, the Disclosure Statement and Solicitation Procedures Order without exhibits, and a Confirmation Hearing Notice.

    b)    Each of the individuals set forth on the Exhibit attached hereto is an Eligible Client holding an Eligible Claim under the Plan.

    c)    Each of the Eligible Clients set forth on the Exhibit is represented by me and, through the execution and filing of this Master Ballot with the Solicitation Agent, I either (i) have collected and recorded the votes of the Eligible Clients voting via this Master Ballot through customary and accepted practices, or have obtained authority to procedurally cast each Eligible Client's vote, and I have complied with the voting procedures set forth in the Disclosure Statement and Solicitation Procedures Order, and each of my Eligible Clients has indicated an informed

decision on such vote; or (ii) have the authority under applicable law to vote to accept or reject the Plan on behalf of my Eligible Clients, and I have provided a valid power of attorney to the Solicitation Agent.

d)      I have met all applicable standards to receive informed consent from each of my Eligible Clients set forth on the Exhibit with respect to his, her, or its vote on this Master Ballot.

e)      I have either (i) provided the Disclosure Statement to my Eligible Clients, either via detailed instructions on how to access an electronic version thereof, or in hard copy or electronic format, or (ii) requested that the Solicitation Agent serve Solicitation Packages (without Ballots) on each of the Eligible Clients set forth on the Exhibit.

The undersigned further acknowledges that the solicitation of votes on the Plan is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Attorney:          _____

Signature:          _____

Name of Law Firm:          _____

Street Address:          _____

Street Address:
(continued)          _____

City, State, Zip Code:          _____

Telephone Number:          _____

Email Address:          _____

Date Completed:          _____

# EXHIBIT 1

**Section 10.6(a)**          **Releases by Debtors**

            **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (1i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (2ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (3iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (4iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (5v) the Restructuring Transactions, (6vi) the Pending Opioid Actions, (7vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (8viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

(9ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (10x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (11xi) the solicitation of votes with respect to the Plan, or (12xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Section 10.6(b)          Releases by Releasing Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (13i) the subject matter of, or the transactions or

2

events giving rise to, any Claim or Interest that is treated in the Plan, (~~14~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~15~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~16~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~17~~v) the Restructuring Transactions, (~~18~~vi) the Pending Opioid Actions, (~~19~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~20~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~21~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~22~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~23~~xi) the solicitation of votes with respect to the Plan, or (~~24~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against <u>(I)</u> any Shareholder Release Snapback Party or <u>(II)</u> any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement                                                   Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim, and shall be released automatically from all Claims described in this paragraph upon the

exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)**        **Releases by Debtors of Holders of Claims**

~~To~~ **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding**, in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~**,** Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, (**25i**) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and~~**or** (**26ii**) such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(c)</u> shall (A) release any **contractual** Estate Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim **solely** in accordance with the Plan, (C) release

any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~ the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)        Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(a), by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~27~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~28~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~29~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~30~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~31~~v) the Restructuring Transactions, (~~32~~vi) the Pending Opioid Actions, (~~33~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of

where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (34viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (35ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (36x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (37xi) the solicitation of votes with respect to the Plan, or (38xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)**        **Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties and all other Persons from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the

Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~39~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~40~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~41~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~42~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~43~~v) the Restructuring Transactions, (~~44~~vi) the Pending Opioid Actions, (~~45~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~46~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~47~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~48~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~49~~xi) the solicitation of votes with respect to the Plan, or (~~50~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this Section 10.7(b) shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this Section 10.7(b) shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(c), by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~51~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (~~52~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~53~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~54~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~55~~v) the Restructuring Transactions, (~~56~~vi) the Pending Opioid Actions, (~~57~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~58~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~59~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~60~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~61~~xi) the solicitation of votes with respect to the Plan, or (~~62~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(c)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, <u>and</u> including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any ~~claims~~<u>Claims</u> held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this <u>Section 10.7(c)</u> of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this <u>Section 10.7(c)</u> shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8          Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a)(a)    **Terms.    In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i)(i)    **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii)(ii)    **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii)(iii)    **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv)(iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v)(v)    **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b)(b)    **Reservations. Notwithstanding anything to the contrary in this <u>Section 10.8</u> or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

(i)(i)    **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)    the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)    the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)    the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)    the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)    the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)    the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)    NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)    **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)    **Modifications.** Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9    Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10**                **MDT Insurer Injunction**

(a) (a)    **Terms. In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:**

(i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iii) (iii)    **creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and**

(v) (v)    **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.**

(b) (b)    **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.10, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**        **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)  **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)  **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)  **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and

(v) (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.

(b) (b) **Reduction of Insurance Judgments.** Any right, Claim, or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim, or cause of action.

(c) (c) **Modifications**. There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d) N**on-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.11, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12        Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

> To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

**<u>Exhibit 2C</u>**

**Form of Individual Ballot**

**Classes 3 and 11(c) Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) )  Chapter 11 |
| PURDUE PHARMA L.P., *et al.*,[1] | )  Case No. 19-23649 (RDD) |
| Debtors. | ) ) )  (Jointly Administered) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE ~~THIRD AMENDED JOINT~~ FIFTH AMENDED JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF**
**PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

**CLASS [•]: [CLASS NAME] CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY**
**BEFORE COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO**
**BE ACTUALLY RECEIVED BY PRIME CLERK LLC ("PRIME CLERK" OR THE**
**"SOLICITATION AGENT") BY 4:00 P.M. (PREVAILING EASTERN TIME) ON**
**JULY 14, 2021 (THE "VOTING DEADLINE").**

---

The Solicitation Agent, on behalf of Purdue Pharma L.P. ("**Purdue Pharma**"), its general partner Purdue Pharma Inc. ("**PPI**"), and Purdue Pharma's wholly owned direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**"), is soliciting votes to accept or reject the *~~Third~~Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated ~~May 24~~June 2, 2021 [D.I. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

supplemented from time to time, the "**Plan**"[2]) from the holders of certain Impaired Claims against the Debtors.

You are receiving this ballot (the "**Ballot**") because you hold a Claim against the Debtors as of **MARCH 10, 2021** (the "**Voting Record Date**"). Your Claim is classified under the Plan in Class [•] ([•] Claims). Except as otherwise set forth in the Bar Date Order, all timely filed Claims have been deemed filed against the Debtors, and, therefore, you are entitled to vote to accept or reject the Plan in Class [•].

The rights of holders of Claims in Class [•] are described in the Disclosure Statement for the Plan, filed on ~~May 24~~June 2, 2021 [D.I. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") and the Order approving the Disclosure Statement and related solicitation procedures [D.I. [•]] (the "**Disclosure Statement and Solicitation Procedures Order**"). The Solicitation Package you are receiving with this Ballot provides instructions detailing how to access electronic versions, request hard copies or request flash-drive format versions of each of the Disclosure Statement Order as entered by the Bankruptcy Court (without any exhibits) and the Disclosure Statement as approved by the Court (with the Plan annexed thereto). If you need to obtain additional solicitation materials, you may contact the Solicitation Agent by (i) visiting the Debtors' case website at https://restructuring.primeclerk.com/purduepharma; (ii) writing Purdue Pharma Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165; (iii) emailing purduepharmaballots@primeclerk.com or (iv) calling the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (if calling from outside the U.S. or Canada). You may also access these materials for a fee via PACER at https://www.nysb.uscourts.gov/.

Pursuant to the Disclosure Statement and Solicitation Procedures Order, the Bankruptcy Court has approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe that you have received this Ballot in error, please contact the Solicitation Agent at the address or telephone numbers set forth above.

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a ballot or notice, which identifies your Claim as belonging to a specific class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement and Solicitation Procedures Order (as defined herein), as applicable.

Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

**For your vote to be counted, this Ballot must be properly completed, signed, and returned to the Solicitation Agent so that it is <u>actually received</u> no later than <u>4:00 p.m. (prevailing Eastern Time) on July 14, 2021</u>.**

If you have any questions on how to properly complete this Ballot, please call the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (international). **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**IMPORTANT NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, INJUNCTION, AND CHANNELING INJUNCTION PROVISIONS IN THE PLAN**

**Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions. Thus, you are advised to review and consider the Plan carefully. For your convenience, such provisions are set forth on <u>Exhibit 1</u> hereto.  Below is a summary of the release provisions. For the avoidance of doubt, to the extent any provision of this notice conflicts with the terms of the plan, the terms of the plan will control.  Capitalized terms used below and in <u>Exhibit 1</u> have the meanings ascribed to such terms in the Plan.**

**INFORMATION ABOUT RELEASE PROVISIONS, INCLUDING THIRD-PARTY RELEASES:**

**Pursuant to the Plan, certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action.**

**The Releasing Parties include all holders of Claims and Interest under the Plan.**

**The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in <u>Section 10.6(a)</u> of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided*, *however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.  The Shareholder Released Parties are the beneficiaries of the separate shareholder release provisions in the Plan.  The Plan Supplement will include the Shareholder Settlement, which will provide for, among other things, the settlement of claims against the Shareholder Released Parties.**

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Ballot is submitted to you to solicit your vote to accept or reject the Plan.  The terms of the Plan are described in the Disclosure Statement.  **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The Plan will be accepted by Class [•] if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and at least one-half (1/2) in number of Claims in Class [•] that vote on the Plan in each such Class.  In the event that Class [•] votes to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan and, thereby, make the Plan binding on the holders of Claims in Class [•] if the Bankruptcy Court finds that the Plan does not unfairly discriminate against, and accords fair and equitable treatment to, the holders of Claims in Class [•] and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against, and Interests in, the Debtors (including those holders who abstain from voting on or vote to reject the confirmed Plan, and those holders who are not entitled to vote on the confirmed Plan) will be bound by the confirmed Plan and the transactions contemplated thereunder.

**To have your vote counted, you must be complete, sign, and return this Ballot so that it is actually received by the Solicitation Agent no later than the Voting Deadline of July 14, 2021 at 4:00 p.m. (prevailing Eastern Time).**  Ballots must be delivered to the Solicitation Agent at the appropriate address listed below:

| If by E-Ballot: | If by standard or overnight: | If by hand delivery: |
|---|---|---|
| Visit https://restructuring.primeclerk.com /purduepharma and click on the "Submit E-Ballot" link.<br><br>For your E-Ballot login credentials and further detail, please see page 7 below. | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street, Suite 1440 New York, NY 10165 | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street, Suite 1440 New York, NY 10165 If you plan to hand-deliver your Ballot to Prime Clerk's office, please e-mail purduepharmaballots@primeclerk.com at least twenty-four (24) hours in advance to arrange delivery. |

**Class [__] Ballots will not be accepted by telecopy, facsimile, email, or other electronic means of transmission (other than by E-Ballot).**

You must properly complete the Ballot as follows:

a.    Item 1 (Amount of Claim).  Make sure that the information contained in Item 1 below regarding the amount of your Claim is correct.

b.    Item 2 (Vote on the Plan).  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2 below. You must vote the entire amount of your Claim either to accept (i.e., vote in favor of) or reject (i.e., vote against) the Plan

and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.     If you hold Claims in a Class other than Class [•], you may receive more than one Ballot or Solicitation Package, labeled for a different Class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot.

d.     If more than one timely, properly completed Ballot is received, unless the holder of the Class [•] Claim receives Bankruptcy Court approval otherwise, then the last properly executed Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot.

e.     If you fail to designate either an acceptance or rejection of the Plan or designate both an acceptance and rejection of the Plan, the Solicitation Agent may, in its discretion, either contact you to attempt to cure the defect or not count your vote as either an acceptance or rejection of the Plan.

f.     <u>Item 3 (Acknowledgements and Certifications)</u>.  Item 3 contains certain required certifications, which you are making by signing and returning the Ballot.  Please ensure that you have read and understood the certifications prior to signing the Ballot and the certifications are correct for your Ballot.  Provide your name, mailing address, and any remaining information requested in Item 3 below.

g.     If you are completing this Ballot on behalf of another claimant, indicate your relationship with such claimant and the capacity in which you are signing on the appropriate line in Item 3 below. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act).

h.     Sign and date the Ballot.

i.     If additional space is required to respond to any item on the Ballot, please use additional sheets of paper clearly marked to indicate the applicable item of the Ballot to which you are responding.

j.     Deliver the completed, executed Ballot so as to be **actually received** by the Solicitation Agent before the Voting Deadline.

**PLEASE NOTE:**

No Ballot shall constitute or be deemed a Proof of Claim or an assertion of a Claim.  No fees, commissions, or other remuneration will be payable for soliciting votes on the Plan.

**NOTHING CONTAINED HEREIN OR IN THE SOLICITATION PACKAGES SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

**IF YOU (A) HAVE ANY QUESTIONS REGARDING THE BALLOT, (B) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, OR (C) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT 844-217-0912 (DOMESTIC TOLL-FREE) OR 347-859-8093 (INTERNATIONAL), OR BY EMAILING PURDUEPHARMABALLOTS@PRIMECLERK.COM.   PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

**SUBMITTING BY E-BALLOT**

**PLEASE COMPLETE THE FOLLOWING:**

**To submit your Ballot via the "E-Ballot" platform, please visit
https://restructuring.primeclerk.com/purduepharma.   Click on the "Submit E-Ballot"
section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your
customized E-Ballot:**

**Unique E-Ballot ID#:_____**

**The Solicitation Agent's "E-Ballot" platform is the sole manner in which your Ballot will
be accepted via electronic or online transmission.  Ballots submitted by telecopy, facsimile,
email or other electronic means of transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of
your E-Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive,
as applicable.**

Holders who cast a Ballot using the Solicitation Agent's "E-Ballot" platform should <u>NOT</u> also
submit a paper Ballot.

## [CLASS NAME] BALLOT

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Amount of [Class Name] Claims.**  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 10, 2021, the undersigned holds Class [•] Claims in the amount set forth below.

| |
|---|
| **Claims Amount:** $_____ |

**Item 2.  Vote on the Plan.**  The undersigned holder of Class [•] Claims in the amount set forth in Item 1 above hereby votes to:

**Check one box**:          ☐          **ACCEPT (I.E. VOTE IN FAVOR OF)** the Plan

                            ☐          **REJECT (I.E. VOTE AGAINST)** the Plan

*[Remainder of Page Intentionally Left Blank / Certification Page to Follow]*

**Item 3.  Acknowledgments and Certification.**  By signing this Ballot, the undersigned certifies that the undersigned has been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, the Disclosure Statement and Solicitation Procedures Order without exhibits and a Confirmation Hearing Notice.  The undersigned further acknowledges that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and Solicitation Procedures Order, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Claimant: _____

Signature: _____

Name of Signatory (if different than Claimant): _____

If authorized by Agent, Title of Agent _____

Street Address: _____

Street Address:
(continued) _____

City, State, Zip Code: _____

Telephone Number: _____

Email Address: _____

Date Completed: _____

# EXHIBIT 1

**Section 10.6(a)**          **Releases by Debtors**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (1i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (2ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (3iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (4iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (5v) the Restructuring Transactions, (6vi) the Pending Opioid Actions, (7vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (8viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

(9ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (10x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (11xi) the solicitation of votes with respect to the Plan, or (12xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Section 10.6(b)         Releases by Releasing Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the

Chapter 11 Cases, including, without limitation, (~~13~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~14~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~15~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~16~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~17~~v) the Restructuring Transactions, (~~18~~vi) the Pending Opioid Actions, (~~19~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~20~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~21~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~22~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~23~~xi) the solicitation of votes with respect to the Plan, or (~~24~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against <u>(I)</u> any Shareholder Release Snapback Party or <u>(II)</u> any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)        Releases by Debtors of Holders of Claims**

~~To~~                **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding**, in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~**,** Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, (~~25~~**i**) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and~~**or** (~~26~~**ii**) such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(c)</u> shall (A) release any **contractual** Estate Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)          Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(a)**, by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~27~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~28~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~29~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~30~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~31~~v) the Restructuring Transactions, (~~32~~vi) the Pending Opioid Actions, (~~33~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (34viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (35ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (36x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (37xi) the solicitation of votes with respect to the Plan, or (38xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)**        **Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties ~~and all other Persons~~ from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

16

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~39~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~40~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~41~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~42~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~43~~v) the Restructuring Transactions, (~~44~~vi) the Pending Opioid Actions, (~~45~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~46~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~47~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~48~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~49~~xi) the solicitation of votes with respect to the Plan, or (~~50~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

17

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(b)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this <u>Section 10.7(b)</u> shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)          Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this <u>Section 10.7(c)</u>, by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~51~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (~~52~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~53~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~54~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~55~~v) the Restructuring Transactions, (~~56~~vi) the Pending Opioid Actions, (~~57~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~58~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~59~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~60~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~61~~xi) the solicitation of votes with respect to the Plan, or (~~62~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(c)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, <u>and</u> including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any ~~claims~~<u>Claims</u> held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this <u>Section 10.7(c)</u> of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this <u>Section 10.7(c)</u> shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8        Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a) (a)   **Terms.   In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in <u>Sections 10.5, 10.6</u> and <u>10.7</u> of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i) (i)   **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii) (ii)   **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii) (iii)   **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv) (iv)   **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v) (v)   **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b) (b)   **Reservations. Notwithstanding anything to the contrary in this <u>Section 10.8</u> or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

(i) (i)   **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)    the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)    the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)    the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)    the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)    the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)    the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)    NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)    **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)    **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9            Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under ~~Section [2.01] of~~ the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10**          **MDT Insurer Injunction**

(a) (a)    **Terms. In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:**

(i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iii) (iii)    **creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and**

(v) (v)    **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.**

(b) (b)    **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.10, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**          **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)    **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and

(v) (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.

(b) (b) **Reduction of Insurance Judgments.** Any right, Claim, or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim, or cause of action.

(c) (c) **Modifications**. There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d) N**on-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.11, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12        Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

**Exhibit 3**

**Unimpaired Notice of Non-Voting Status**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) Case No. 19-23649 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF UNIMPAIRED
CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN**

> **PLEASE TAKE NOTICE THAT** on [•], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") to solicit acceptances for the ~~*Third*~~*Fifth* *Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for* ~~*Third*~~*Fifth* *Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

> **PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, **you are not entitled to vote on the Plan on account of such Claim or Interest**. Specifically, under the terms of the Plan, as a holder of a Claim or Interest (as currently asserted against the Debtors) that is not

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

impaired and conclusively presumed to have accepted the Plan pursuant to section
1126(f) of the Bankruptcy Code, you are **not** entitled to vote on the Plan.

   **PLEASE TAKE FURTHER NOTICE THAT** if you hold a separate, additional
Claim for which you are entitled to vote (or part of your Claim falls into a Class of
Claims entitled to vote) you will also receive a Ballot under separate cover.  In such an
instance, the Debtors encourage you to follow the instructions in the Ballot.

   **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court
will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on
**August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert
D. Drain, in the United States Bankruptcy Court for the Southern District of New York,
located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that,
pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order
M-543**"), such Hearing shall be conducted **telephonically** so long as General Order
M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[3] The
Confirmation Hearing may be continued from time to time by the Court or the Debtors
without further notice other than by such adjournment being announced in open court, by
Agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and
served on all parties entitled to notice.

   **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections
to the Plan is **July 19, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Plan
Objection Deadline**"). All objections to the relief sought at the Confirmation Hearing
**must**: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and
the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the
Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted
pro hac vice, electronically in accordance with General Order M-399 (which can be
found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-
ROM, in text-searchable portable document format (PDF) (with a hard copy delivered
directly to Chambers), in accordance with the customary practices of the Bankruptcy
Court and General Order M-399, to the extent applicable, and (d) be served in accordance
with the *Second Amended Order Establishing Certain Notice, Case Management, and
Administrative Procedures* entered on November 18, 2019 [D.I. No. 498], on (i) counsel
to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New
York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut
and Christopher S. Robertson), (ii) counsel to the Creditors' Committee, (A) Akin Gump
Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik
Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C.,
500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R.
Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York,
201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K.
Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

---

[3] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-
operationsunder-exigent-circumstances-created-covid-19.

PLEASE TAKE FURTHER NOTICE that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

PLEASE TAKE FURTHER NOTICE THAT the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**"), by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions. For your convenience, such provisions are set forth on Exhibit 1 hereto. Pursuant to the Plan, ~~the Releasing Parties~~certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action. The Releasing Parties include all holders of Claims and Interest under the Plan. The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; _provided_, _however_, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of**

a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.

**PLEASE TAKE FURTHER NOTICE THAT the Debtors will contend, and the Court may accept, that if you do not object to confirmation of the Plan or if you object and your objection is denied, the Plan and the foregoing provisions will be binding on you.**

**EXHIBIT 1**

**Section 10.6(a)**          **Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~1~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~2~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~3~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~4~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~5~~v) the Restructuring Transactions, (~~6~~vi) the Pending Opioid Actions, (~~7~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~8~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing,

(9ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (10x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (11xi) the solicitation of votes with respect to the Plan, or (12xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Section 10.6(b)        Releases by Releasing Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without

limitation, (~~13~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~14~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~15~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~16~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~17~~v) the Restructuring Transactions, (~~18~~vi) the Pending Opioid Actions, (~~19~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~20~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~21~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~22~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~23~~xi) the solicitation of votes with respect to the Plan, or (~~24~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against <u>(I)</u> any Shareholder Release Snapback Party or <u>(II)</u> any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)**          **Releases by Debtors of Holders of Claims**

~~To~~            **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding, **in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~**or,** Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, (~~25~~i) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and~~**or** (~~26~~ii) such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(c)</u> shall (A) release any **contractual** Estate Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~ the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)**          **Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(a)**, by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~27~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~28~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~29~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~30~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~31~~v) the Restructuring Transactions, (~~32~~vi) the Pending Opioid Actions, (~~33~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (34viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (35ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (36x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (37xi) the solicitation of votes with respect to the Plan, or (38xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)    Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties and all other Persons from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~39~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~40~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~41~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~42~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~43~~v) the Restructuring Transactions, (~~44~~vi) the Pending Opioid Actions, (~~45~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~46~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~47~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~48~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~49~~xi) the solicitation of votes with respect to the Plan, or (~~50~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(b)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this <u>Section 10.7(b)</u> shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this <u>Section 10.7(c)</u>, by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~51~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (~~52~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~53~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~54~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~55~~v) the Restructuring Transactions, (~~56~~vi) the Pending Opioid Actions, (~~57~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~58~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~59~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~60~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~61~~xi) the solicitation of votes with respect to the Plan, or (~~62~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(c)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, <u>and</u> including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any ~~claims~~<u>Claims</u> held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this <u>Section 10.7(c)</u> of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this <u>Section 10.7(c)</u> shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8          Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

**(a) (a)   Terms.   In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

**(i) (i)   commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

**(ii) (ii)   enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

**(iii) (iii)   creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

**(iv) (iv)   asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

**(v) (v)   taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

**(b) (b)   Reservations. Notwithstanding anything to the contrary in this <u>Section 10.8</u> or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

**(i) (i)   the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii) the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii) the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv) the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v) the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi) the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii) the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii) NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c) **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d) **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

16

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9       Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10        MDT Insurer Injunction**

(a) (a)    **Terms.** In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:

(i) (i)    commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(ii) (ii)    enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iii) (iii)        creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iv) (iv)    asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and

(v) (v)    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.

(b) (b)    **Reservations.** The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.10, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**          **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)  **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)  **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)          **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and

(v) (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.

(b) (b) **Reduction of Insurance Judgments.** Any right, Claim, or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim, or cause of action.

(c) (c) **Modifications**. There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d) N**on-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.11, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12          Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13        Injunction Related to Releases and Exculpation**

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

## **Exhibit 4**

**Notice of Non-Voting Status to Holders of Impaired Claims and Interests Conclusively
Presumed to Reject the Plan**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF NON-VOTING STATUS TO HOLDERS OF IMPAIRED CLAIMS AND INTERESTS CONCLUSIVELY PRESUMED TO REJECT THE PLAN

**PLEASE TAKE NOTICE THAT** on [•], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), to solicit acceptances for the ~~*Third*~~*Fifth* Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for* ~~*Third*~~*Fifth* Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim or Interest under the Plan, **you are not entitled to vote on the Plan on account of such Claim or Interest**. Specifically, under the terms of the Plan, as a holder of a Claim or Interest (as currently asserted against the Debtors) that is receiving no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** if you hold a separate, additional Claim for which you are entitled to vote (or part of your Claim falls into a Class of Claims entitled to vote) you will also receive a Ballot under separate cover.  In such an instance, the Debtors encourage you to follow the instructions in the Ballot.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Hearing shall be conducted **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[3] The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court, by Agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and served on all parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **July 19, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Plan Objection Deadline**"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. No. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the

---

[3]  A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**"), by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions. For your convenience, such provisions are set forth on Exhibit 1 hereto. Pursuant to the Plan, ~~the Releasing Parties~~certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action. The Releasing Parties include all holders of Claims and Interest under the Plan. The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided*, *however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the**

underlying claim against the Released Party is released against the Person to which the Related Party is related.

**PLEASE TAKE FURTHER NOTICE THAT the Debtors will contend, and the Court may accept, that if you do not object to confirmation of the Plan or if you object and your objection is denied, the Plan and the foregoing provisions will be binding on you.**

**EXHIBIT 1**

Section 10.6(a)          **Releases by Debtors**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~1~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~2~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~3~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~4~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~5~~v) the Restructuring Transactions, (~~6~~vi) the Pending Opioid Actions, (~~7~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~8~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

(9ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (10x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (11xi) the solicitation of votes with respect to the Plan, or (12xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.6(b)        Releases by Releasing Parties**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without

limitation, (~~13~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~14~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~15~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~16~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~17~~v) the Restructuring Transactions, (~~18~~vi) the Pending Opioid Actions, (~~19~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~20~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~21~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~22~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~23~~xi) the solicitation of votes with respect to the Plan, or (~~24~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against <u>(I)</u> any Shareholder Release Snapback Party or <u>(II)</u> any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)**          **Releases by Debtors of Holders of Claims**

~~To~~                    **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding**, in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~**,** Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, (~~25~~**i**) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and~~**or** (~~26~~**ii**) such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(c) shall (A) release any **contractual** Estate Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)          Shareholder Releases - Releases by Debtors**

          As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(a)**, by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~27~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~28~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~29~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~30~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~31~~v) the Restructuring Transactions, (~~32~~vi) the Pending Opioid Actions, (~~33~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (34viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (35ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (36x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (37xi) the solicitation of votes with respect to the Plan, or (38xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)**          **Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties and all other Persons from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~39~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~40~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~41~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~42~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~43~~v) the Restructuring Transactions, (~~44~~vi) the Pending Opioid Actions, (~~45~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~46~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~47~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~48~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~49~~xi) the solicitation of votes with respect to the Plan, or (~~50~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this Section 10.7(b) shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this Section 10.7(b) shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(c), by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~51~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (~~52~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~53~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~54~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~55~~v) the Restructuring Transactions, (~~56~~vi) the Pending Opioid Actions, (~~57~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~58~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~59~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~60~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~61~~xi) the solicitation of votes with respect to the Plan, or (~~62~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(c)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements,<u> and</u> including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any ~~claims~~<u>Claims</u> held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this <u>Section 10.7(c)</u> of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this <u>Section 10.7(c)</u> shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8          Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in Sections 10.5, 10.6 and 10.7 of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a) (a)   **Terms.   In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in Sections 10.5, 10.6 and 10.7 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i) (i)   **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii) (ii)   **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii) (iii)   **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv) (iv)   **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v) (v)   **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b) (b)   **Reservations. Notwithstanding anything to the contrary in this Section 10.8 or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

(i) (i)   **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)  the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)  the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)  the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)  the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)  the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)  the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)  NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)  **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)  **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

16

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9          Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10**          **MDT Insurer Injunction**

(a) (a)    **Terms.** In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:

(i) (i)    commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(ii) (ii)    enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iii) (iii)    creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iv) (iv)    asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and

(v) (v)    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.

(b) (b)    **Reservations.** The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.10, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**          **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)     **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)        **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and

(v) (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.

(b) (b) **Reduction of Insurance Judgments.** Any right, Claim, or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim, or cause of action.

(c) (c) **Modifications.** There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d) **Non-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.11, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12          Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

**<u>Exhibit 5</u>**

**Notice of Non-Voting Status to Holders of
Impaired Claims in Class 15 (Other Subordinated Claims)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF NON-VOTING STATUS TO**
**HOLDERS OF IMPAIRED CLAIMS IN CLASS 15 (SUBORDINATED CLAIMS )**

**PLEASE TAKE NOTICE THAT** on [•], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), to solicit acceptances for the ~~*Third*~~*Fifth* *Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for* ~~*Third*~~*Fifth* *Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan on account of such Claim**. Specifically, under the terms of the Plan, as a holder of a Claim (as currently asserted against the Debtors) [that is not a Co-Defendant Claim or a Shareholder Claim and] is subject to subordination under section 509(c) or 510 of the Bankruptcy Code or other applicable law **you are not entitled to receive or retain any property on account of such Claim**. Therefore, you are deemed to reject the Plan

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you hold a separate, additional Claim for which you are entitled to vote (or part of your Claim falls into a Class of Claims entitled to vote) you will also receive a Ballot under separate cover.  In such an instance, the Debtors encourage you to follow the instructions in the Ballot.

**PLEASE TAKE FURTHER NOTICE THAT** if you wish to challenge the disallowance of your Claim for voting purposes, you must file a motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018 Motion**").  Any Rule 3018 Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on July 19, 2021 (the "**Rule 3018(a) Motion Filing Deadline**") and served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498].  Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Confirmation Hearing shall be conducted **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[3] The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court, by Agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and served on all parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **July 19, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Plan Objection Deadline**"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to

---

[3]  A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors' Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

PLEASE TAKE FURTHER NOTICE that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

PLEASE TAKE FURTHER NOTICE THAT if you disagree with the Debtors' treatment of your Claim as subordinated under section 509(c) or 510 of the Bankruptcy Code or other applicable law, you must file an objection to the Plan by the Plan Objection Deadline as described above. Unless an objection is timely filed, your Claim will be subordinated pursuant to section 509(c) or 510 of the Bankruptcy Code or other applicable law and you will not be entitled to Distributions under the Plan.

PLEASE TAKE FURTHER NOTICE THAT the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**"), by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling**

**MDT insurer injunction and shareholder channeling injunction provisions.  For
your convenience, such provisions are set forth on Exhibit 1 hereto.  Pursuant to the
Plan, ~~the Releasing Parties~~certain parties are releasing the Released Parties, which
include certain third parties, and the Shareholder Released Parties (subject to and
in accordance with the terms of the Shareholder Settlement) from certain Claims
and Causes of Action. The Releasing Parties include all holders of Claims and
Interest under the Plan. The Released Parties include, collectively, (i) the Debtors,
(ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases
by the Debtors in <u>Section 10.6(a)</u> of the Plan, the Supporting Claimants, the
Creditors' Committee and the Creditors' Committee's members and each of their
respective professionals, in each case solely in their respective capacities as such;
*provided*, *however*, that, notwithstanding the foregoing or anything herein to the
contrary, no Excluded Party or Shareholder Release Snapback Party shall be a
Released Party in any capacity or respect. For the avoidance of doubt, the Released
Parties referenced in clause (ii) of this definition of Released Parties include Persons
referenced in clause (ii) of the definition of Related Parties only to the extent (x) a
claim arises from actions taken by such Person in its capacity as a Related Party of
a Person referenced in clause (i) of the definition of Related Parties and (y) the
underlying claim against the Released Party is released against the Person to which
the Related Party is related.**

**PLEASE TAKE FURTHER NOTICE THAT the Debtors will contend, and
the Court may accept, that if you do not object to confirmation of the Plan or if you
object and your objection is denied, the Plan and the foregoing provisions will be
binding on you.**

<u>**EXHIBIT 1**</u>

**Section 10.6(a)**          **Releases by Debtors**

   **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (1i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (2ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (3iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (4iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (5v) the Restructuring Transactions, (6vi) the Pending Opioid Actions, (7vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (8viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

(9ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (10x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (11xi) the solicitation of votes with respect to the Plan, or (12xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.6(b)        Releases by Releasing Parties**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without

limitation, (~~13~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~14~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~15~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~16~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~17~~v) the Restructuring Transactions, (~~18~~vi) the Pending Opioid Actions, (~~19~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~20~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~21~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~22~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~23~~xi) the solicitation of votes with respect to the Plan, or (~~24~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against <u>(I)</u> any Shareholder Release Snapback Party or <u>(II)</u> any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)**          **Releases by Debtors of Holders of Claims**

~~To~~ **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding, **in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~**,** Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, (~~25~~**i**) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and~~**or** (~~26~~**ii**) such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(c)</u> shall (A) release any ~~contractual~~ **Estate** Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

9

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)        Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(a), by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~27~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~28~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~29~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~30~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~31~~v) the Restructuring Transactions, (~~32~~vi) the Pending Opioid Actions, (~~33~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (34viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (35ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (36x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (37xi) the solicitation of votes with respect to the Plan, or (38xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)**        **Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties and all other Persons from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~39~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~40~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~41~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~42~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~43~~v) the Restructuring Transactions, (~~44~~vi) the Pending Opioid Actions, (~~45~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~46~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~47~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~48~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~49~~xi) the solicitation of votes with respect to the Plan, or (~~50~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

12

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this Section 10.7(b) shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this Section 10.7(b) shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(c), by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~51~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (~~52~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~53~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~54~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~55~~v) the Restructuring Transactions, (~~56~~vi) the Pending Opioid Actions, (~~57~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~58~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~59~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~60~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~61~~xi) the solicitation of votes with respect to the Plan, or (~~62~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(c)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, <u>and</u> including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any ~~claims~~<u>Claims</u> held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this <u>Section 10.7(c)</u> of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this <u>Section 10.7(c)</u> shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8          Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a) (a)    **Terms.    In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i) (i)    **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii) (ii)    **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii) (iii)    **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v) (v)    **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b) (b)    **Reservations. Notwithstanding anything to the contrary in this <u>Section 10.8</u> or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

(i) (i)    **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)    the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)    the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)    the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)    the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)    the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)    the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)    NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)    **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)    **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

16

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9          Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10        MDT Insurer Injunction**

(a) (a)    **Terms. In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:**

(i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iii) (iii)    **creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and**

(v) (v)    **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.**

(b) (b)    **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

18

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**.  To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**.  Except as set forth in paragraphs (b) and (c) of this Section 10.10, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**          **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)        **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and

(v) (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.

(b) (b) **Reduction of Insurance Judgments.** Any right, Claim, or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim, or cause of action.

(c) (c) **Modifications**. There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d) N**on-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this <u>Section 10.11</u>, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12        Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

21

**<u>Exhibit 6</u>**

**Notice of Non-Voting Status to Holders of Disputed Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*,[1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

---

### NOTICE OF NON-VOTING STATUS TO HOLDERS OF DISPUTED CLAIMS

    **PLEASE TAKE NOTICE THAT** on [•], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**") (a) authorizing Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") to solicit acceptances for the *~~Third~~Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for ~~Third~~Fifth Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

    **PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**"), by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the holder of a Claim that is subject to a pending objection. **You are not entitled to vote any disputed portion of your Claim on the Plan** unless one or more of the following events takes place:

> 1. 1. A motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018 Motion**") is filed on or before 4:00 p.m. (prevailing Eastern Time) on July 19, 2021 (the "**Rule 3018(a) Motion Filing Deadline**") and such Rule 3018 Motion is granted by the Bankruptcy Court prior to or concurrent with entry of an order confirming the Plan. Upon the timely filing of a Rule 3018 Motion, the Solicitation Agent shall distribute a Ballot and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Solicitation Agent no later than the Voting Deadline; or

> 2. 2. At least three (3) business days prior to the Voting Deadline of **July 14, 2021, at 4:00 p.m., prevailing Eastern Time**, the pending objection is withdrawn by the objecting party, an order of the Court is entered allowing such Claim, or a stipulation, settlement, or other agreement allowing such Claim for voting purposes in an agreed-upon amount is filed by the Debtors. No later than two (2) business days after the occurrence of an event in this subparagraph (2), the Solicitation Agent shall distribute a Ballot and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Solicitation Agent no later than the Voting Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claims, you should contact the Solicitation Agent in accordance with the instructions provided above.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Confirmation Hearing shall be conducted **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[3] The Confirmation Hearing may be continued from time to time by the Court or the

---

[3]   A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

Debtors without further notice other than by such adjournment being announced in open court, by Agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and served on all parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **July 19, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Plan Objection Deadline**"). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors' Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

**PLEASE TAKE FURTHER NOTICE THAT Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions.    For your**

convenience, such provisions are set forth on Exhibit 1 hereto. Pursuant to the Plan, the Releasing Parties certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action. The Releasing Parties include all holders of Claims and Interest under the Plan. The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided*, *however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.

PLEASE TAKE FURTHER NOTICE THAT the Debtors will contend, and the Court may accept, that if you do not object to confirmation of the Plan or if you object and your objection is denied, the Plan and the foregoing provisions will be binding on you.

## EXHIBIT 1

**Section 10.6(a)**          **Releases by Debtors**

          **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, ~~1.~~(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, ~~2.~~(ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), ~~3.~~(iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), ~~4.~~(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ~~5.~~(v) the Restructuring Transactions, ~~6.~~(vi) the Pending Opioid Actions, ~~7.~~(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, ~~8.~~(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

**9.(ix)** the restructuring of any Claim or Interest before or during the Chapter 11 Cases, **10.(x)** the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, **11.(xi)** the solicitation of votes with respect to the Plan, or **12.(xii)** any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this <u>Section 10.6(a)</u>.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.6(b)**          **Releases by Releasing Parties**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without

limitation, ~~13.~~(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, ~~14.~~(ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), ~~15.~~(iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), ~~16.~~(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ~~17.~~(v) the Restructuring Transactions, ~~18.~~(vi) the Pending Opioid Actions, ~~19.~~(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, ~~20.~~(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, ~~21.~~(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, ~~22.~~(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, ~~23.~~(xi) the solicitation of votes with respect to the Plan, or ~~24.~~(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against (I) any Shareholder Release Snapback Party or (II) any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)        Releases by Debtors of Holders of Claims**

~~To~~ **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding**, in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~**,** Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, ~~25.~~**(i)** the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and 26.~~**or (ii)** such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(c) shall (A) release any ~~contractual~~ **Estate** Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

9

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)**          **Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(a), by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, ~~27.~~(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, ~~28.~~(ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), ~~29.~~(iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), ~~30.~~(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ~~31.~~(v) the Restructuring Transactions, ~~32.~~(vi) the Pending Opioid Actions, ~~33.~~(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

10

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, 34.(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, 35.(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, 36.(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, 37.(xi) the solicitation of votes with respect to the Plan, or 38.(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)        Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties and all other Persons from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, ~~39.~~(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, ~~40.~~(ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), ~~41.~~(iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), ~~42.~~(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ~~43.~~(v) the Restructuring Transactions, ~~44.~~(vi) the Pending Opioid Actions, ~~45.~~(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, ~~46.~~(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, ~~47.~~(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, ~~48.~~(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, ~~49.~~(xi) the solicitation of votes with respect to the Plan, or ~~50.~~(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(b)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this <u>Section 10.7(b)</u> shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this <u>Section 10.7(c),</u> by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, ~~51.~~<u>(i)</u> the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, ~~52.~~(ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), ~~53.~~(iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), ~~54.~~(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ~~55.~~(v) the Restructuring Transactions, ~~56.~~(vi) the Pending Opioid Actions, ~~57.~~(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, ~~58.~~(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, ~~59.~~(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, ~~60.~~(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, ~~61.~~(xi) the solicitation of votes with respect to the Plan, or ~~62.~~(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(c)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, <u>and</u> including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any ~~claims~~<u>Claims</u> held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this <u>Section 10.7(c)</u> of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this <u>Section 10.7(c)</u> shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

**Section 10.8**          **Channeling Injunction**

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in Sections 10.5, 10.6 and 10.7 of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a) (a) **Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in Sections 10.5, 10.6 and 10.7 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i) (i) **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii) (ii) **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii) (iii) **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv) (iv) **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v) (v) **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b) (b) **Reservations. Notwithstanding anything to the contrary in this Section 10.8 or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

(i) (i) **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)   the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)   the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)   the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)   the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)   the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)   the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)   NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)   **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)   **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9          Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10              MDT Insurer Injunction**

(a) (a)    **Terms. In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:**

(i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iii) (iii)    **creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and**

(v) (v)    **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.**

(b) (b)    **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c) **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d) **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this <u>Section 10.10</u>, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11        Settling MDT Insurer Injunction**

(a) (a)    **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)        **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and

(v) (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.

(b) (b)  **Reduction of Insurance Judgments.** Any right, Claim, or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim, or cause of action.

(c) (c)  **Modifications**. There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d)  **Non-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this <u>Section 10.11</u>, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12        Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

**<u>Exhibit 7</u>**

**Notice of Non-Voting Status to Holders of
Impaired Claims in Class 14 (Co-Defendant Claims)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.,*[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF NON-VOTING STATUS TO**
**HOLDERS OF IMPAIRED CLAIMS IN CLASS 14 (CO-DEFENDANT CLAIMS )**

     **PLEASE TAKE NOTICE THAT** on [•], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") to solicit acceptances for the *~~Third~~Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for ~~Third~~Fifth Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

     **PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, **you are not entitled to vote on the Plan on account of such Claim**. Specifically, under the terms of the Plan, you are a holder of a Claim (as currently asserted against the Debtors) that is subject to subordination under section 509(c) or 510 of the Bankruptcy Code.  As a result of such subordination or the Disallowance of such Claims pursuant to a separate motion to be filed by the Debtors with the Bankruptcy Court, **you are not entitled to receive or retain any property on**

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

**account of such Claim**. Therefore, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT as of the Effective Date, all Co-Defendant Claims shall be released in accordance with Section 8.4 of the Plan or otherwise deemed expunged, released and extinguished without further action by or order of the Bankruptcy Court with no distribution on account thereof, and shall be of no further force or effect. [Except to the extent that the Holder of a Co-Defendant Claim otherwise agrees or fails to object to such treatment, the assumption or rejection of a contract or lease with the Holder of a Co-Defendant Claim shall not operate as (i) a release, waiver or discharge of any Co-Defendant Defensive Rights; or (ii) a release of any rights, interests, benefits, insurance coverage or Claims in or to any MDT Insurance Policies.]Co-Defendant Claims.

PLEASE TAKE FURTHER NOTICE THAT if you hold a separate, additional Claim for which you are entitled to vote (or part of your Claim falls into a Class of Claims entitled to vote), you will also receive a Ballot under separate cover.  In such an instance, the Debtors encourage you to follow the instructions in the Ballot.

PLEASE TAKE FURTHER NOTICE THAT if you wish to challenge the disallowance of your Claim for voting purposes, you must file a motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes (a "**Rule 3018 Motion**").  Any Rule 3018 Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on July 19, 2021 (the "**Rule 3018(a) Motion Filing Deadline**") and served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498].  Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Confirmation Hearing shall be conducted **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[3] The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court, by Agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and served on all parties entitled to notice.

PLEASE TAKE FURTHER NOTICE THAT the deadline for filing objections to the Plan is **July 19, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Plan**

---

[3]  A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

3

**Objection Deadline**”). All objections to the relief sought at the Confirmation Hearing **must**: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

**PLEASE TAKE FURTHER NOTICE THAT** if you disagree with the Debtors’ treatment of your Claim as subordinated under section 509(c) or 510 of the Bankruptcy Code or other applicable law, you must file an objection to the Plan by the Plan Objection Deadline as described above. Unless an objection is timely filed, your Claim will be subordinated pursuant to section 509(c) or 510 of the Bankruptcy Code or other applicable law and you will not be entitled to Distributions under the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these

Chapter 11 Cases (the "**Solicitation Agent**"), by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions. For your convenience, such provisions are set forth on Exhibit 1 hereto. Pursuant to the Plan, ~~the Releasing Parties~~certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action. The Releasing Parties include all holders of Claims and Interest under the Plan. The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided*, *however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.**

**PLEASE TAKE FURTHER NOTICE THAT the Debtors will contend, and the Court may accept, that if you do not object to confirmation of the Plan or if you object and your objection is denied, the Plan and the foregoing provisions will be binding on you.**

**EXHIBIT 1**

Section 10.6(a)                **Releases by Debtors**

                **As of the Effective Date, for good and valuable consideration, the adequacy
of which is hereby confirmed, including, without limitation, the service of the Released Parties
before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the
implementation of the Restructuring Transactions, and except as otherwise explicitly provided in
the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely,
unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and
their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits,
judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses,
contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in
each case, of any kind, character or nature whatsoever, including any derivative claims asserted or
assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action
arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any
of their Estates, or that any other Person or party claiming under or through any Debtor or any of
their Estates, would have presently or in the future been legally entitled to assert in its own right
(whether individually or collectively) or on behalf of any Debtor or any of their Estates or any
other Person, notwithstanding section 1542 of the California Civil Code or any law of any
jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed
waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known
or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or
hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or
contract or based on any other legal or equitable theory or principle (including fraud, negligence,
gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance,
breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability,
unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation
and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising
under federal or state statutory or common law, or any other applicable international, foreign or
domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of
where in the world accrued or arising, from the beginning of time, in each case, based on or
relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed
prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without
limitation, (1i) the subject matter of, or the transactions or events giving rise to, any Claim or
Interest that is treated in the Plan, (2ii) the business or contractual arrangements or interactions
between any Debtor and any Released Party (including historical business or contractual
arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and
any exercise of any common law or contractual rights of setoff or recoupment by any Released
Party at any time on or prior to the Effective Date), (3iii) any employment or retention of any
Released Party by the Debtors (including any service as a director, officer, executive, consultant or
advisor to the Debtors or service in any similar capacity), (4iv) any direct or indirect beneficial
ownership of any equity interest in or debt obligation of the Debtors, (5v) the Restructuring
Transactions, (6vi) the Pending Opioid Actions, (7vii) Opioid-Related Activities or the Debtors'
development, production, manufacture, licensing, labeling, marketing, advertising, promotion,
distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each
case, including the Debtors' interactions with regulators and regardless of where in the world any
such activities or any result, loss, injury or damage resulting therefrom occurred, (8viii) any past,
present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of
its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event,
transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

(9ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (10x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (11xi) the solicitation of votes with respect to the Plan, or (12xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Section 10.6(b)            Releases by Releasing Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without

limitation, (~~13~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~14~~ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (~~15~~iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~16~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~17~~v) the Restructuring Transactions, (~~18~~vi) the Pending Opioid Actions, (~~19~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~20~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~21~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~22~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~23~~xi) the solicitation of votes with respect to the Plan, or (~~24~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against <u>(I)</u> any Shareholder Release Snapback Party or <u>(II)</u> any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim ~~against a Debtor~~<u>solely</u> in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)          Releases by Debtors of Holders of Claims**

~~To~~          **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding**, in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~**,** Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, (~~25~~**i**) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and~~**or** (~~26~~**ii**) such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(c)</u> shall (A) release any ~~contractual~~ **Estate** Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of ~~business against ongoing commercial counterparties of NewCo~~ the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)          Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(a)**, by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~27~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~28~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~29~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~30~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~31~~v) the Restructuring Transactions, (~~32~~vi) the Pending Opioid Actions, (~~33~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~34~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~35~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~36~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~37~~xi) the solicitation of votes with respect to the Plan, or (~~38~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)**        **Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties ~~and all other Persons~~ from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~39~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (~~40~~ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (~~41~~iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (~~42~~iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (~~43~~v) the Restructuring Transactions, (~~44~~vi) the Pending Opioid Actions, (~~45~~vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (~~46~~viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (~~47~~ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (~~48~~x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (~~49~~xi) the solicitation of votes with respect to the Plan, or (~~50~~xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this Section 10.7(b) shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this Section 10.7(b) shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(c), by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (~~51~~i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (52ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (53iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (54iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (55v) the Restructuring Transactions, (56vi) the Pending Opioid Actions, (57vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (58viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (59ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (60x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (61xi) the solicitation of votes with respect to the Plan, or (62xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this Section 10.7(c) shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, and including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any claimsClaims held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this Section 10.7(c) of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this Section 10.7(c) shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8          Channeling Injunction

14

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a) **(a)** **Terms.** **In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i) **(i)** **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii) **(ii)** **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii) **(iii)** **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv) **(iv)** **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v) **(v)** **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b) **(b)** **Reservations.** Notwithstanding anything to the contrary in this <u>**Section 10.8**</u> or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:

(i) **(i)** **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)    the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)    the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)    the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)    the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)    the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)    the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)    NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)    **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)    **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

16

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9      Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10**          **MDT Insurer Injunction**

(a) (a)    **Terms. In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:**

> (i) (i)    **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

> (ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

> (iii) (iii)    **creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

> (iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and**

> (v) (v)    **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.**

(b) (b)    **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**.  To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**.  Except as set forth in paragraphs (b) and (c) of this <u>Section 10.10</u>, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**          **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)      **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)    **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)      **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or
attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation,
indemnity, contribution or recoupment of any kind, whether
directly or indirectly, against any obligation due to any such
Settling MDT Insurer, or against the property of such
Settling MDT Insurer, on account of such Claim based on,
arising under or attributable to such MDT Insurance Policy;
and

(v) (v)    taking any act, in any manner, in any place whatsoever, that
does not conform to, or comply with, the provisions of the
Plan applicable to such Claim based on, arising under or
attributable to such MDT Insurance Policy.

(b) (b)    **Reduction of Insurance Judgments.** Any right, Claim, or cause of
action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but
for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under
applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim
against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in
question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall
be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that
Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative
recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right,
Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may
assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right,
Claim, or cause of action.

(c) (c)    **Modifications.** There can be no modification, dissolution or termination
of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d)    N**on-Limitation of Settling MDT Insurer Injunction**. Except as set
forth in paragraphs (b) and (c) of this <u>Section 10.11</u>, nothing in the Plan, the MDT Documents or the
Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or
effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12**          **Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall
have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation,
suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in
connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit
of the Disclosure Statement (including any information provided, or statements made, in the Disclosure
Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement
Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor
Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation
of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan
and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating
Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or
Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a
criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

**<u>Exhibit 8</u>**

**Notice of Assumption of Executory Contracts and Unexpired Leases**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) Case No. 19-23649 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF (A) EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS**
**PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,**
**AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE THAT** on [●], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**") (a) authorizing Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") to solicit acceptances for the ~~Third~~*Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for ~~Third~~Fifth Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**"), by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

https://restructuring.primeclerk.com/purduepharma; and/or (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, 60 East 42nd Street, Suite 1440, New York, NY 10165. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** Section 8.1 of the Plan, provides that, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party[, as amended pursuant to Section 8.4 of the Plan], will be deemed assumed by the applicable Debtor and, except with respect to any contract or lease held by a Transferred Debtor, assigned to NewCo or its designee, except for any executory contract or unexpired lease that:

(i)     Has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court;

(ii)    Is specifically identified on the Schedule of Rejected Contracts;

(iii)   Is the subject of a separate assumption or rejection motion filed by the Debtors under section 365 of the Bankruptcy Code pending on the Confirmation Date;

(iv)    Is the subject of a pending Contract Dispute; or

(v)     Is being otherwise treated pursuant to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are a counterparty to an executory contract or unexpired lease that, as of and subject to the occurrence of the Effective Date, will be assumed by the applicable Debtor or assumed by the applicable Debtor and assigned to NewCo (as applicable) and that, accordingly, has been specifically designated, along with a proposed cure amount (the "**Cure Amounts**") on the Schedule of Assumed Contracts, attached hereto as **Exhibit A**.  If you have received this notice but your executory contract or unexpired lease is not listed on **Exhibit A**, the proposed Cure Amount for your executory contract or unexpired lease is Zero Dollars ($0).

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to a proposed Cure Amount, to the assumption of your executory contract or unexpired lease by the applicable Debtor or assumption by the applicable Debtor and assignment to NewCo (as applicable), including, without limitation, with respect to the provision of "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code)[, or to the amendment of any such contract that gives rise to any obligation described in Section 8.4(a) of the Plan] is **August 2, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Contract Objection Deadline**"). Such objection **must**: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General

Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors' Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Contract Objection Deadline.

> **PLEASE TAKE FURTHER NOTICE THAT** any counterparty to an executory contract or unexpired lease who receives this notice and who fails to timely make an objection to (i) the proposed assumption, or assumption and assignment, of such executory contract or unexpired lease pursuant to the Plan, (ii) the adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code, (iii) the Cure Amount with respect to such executory contract or unexpired lease identified on **Exhibit A** (which will be deemed to be Zero Dollars ($0) if such contract is not listed thereon), [or (iv) the amendment of such contract in connection with assumption, or assumption and assignment, thereof pursuant to Section 8.4 of the Plan on or before the Contract Objection Deadline] will be deemed to have assented to the treatment described herein and in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed Disallowed and expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person. [ Except to the extent that the Holder of a Co-Defendant Claim otherwise agrees or fails to object to such treatment, the assumption or rejection of a contract or lease with the Holder of a Co-Defendant Claim shall not operate as (i) a release, waiver or discharge of any Co-Defendant Defensive Rights; or (ii) a release of any rights, interests, benefits, insurance coverage or Claims in or to any MDT Insurance Policies.]Co-Defendant Claims.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan shall constitute (i) an amendment to each assumed or assumed and assigned contract or lease as necessary to render null and void any and all terms or provisions thereof solely to the extent such terms or provisions create an obligation of any Debtor (or any assignee thereof), or give rise to a right in favor of any non-Debtor under any MDT Insurance Policy, for the indemnification or reimbursement of any Person for costs, losses, damages, fees, expenses or any other amounts whatsoever relating to or arising from any actual or potential opioid-related litigation or dispute, whether accrued or unaccrued, asserted or unasserted, existing or hereinafter arising, based on or relating to, or in any manner arising from, in whole or in part, Opioid-Related Activities or other conduct

occurring prior to the Effective Date; and (ii) an agreement by each counterparty to release the Debtors (and any assignee thereof or successor thereto) and all Insurance Companies from any and all obligations, liabilities, Claims, Causes of Action and other rights of recovery arising under or relating to such indemnification and reimbursement rights to the extent relating to any conduct occurring prior to the Effective Date, and an agreement by such party to release any and all Co-Defendant Claims held by such party and to channel, in accordance with the Channeling Injunction, all Channeled Claims arising under or relating to such contract, including any such Claims that might otherwise be elevated to administrative status through assumption of such contract or lease. On the Effective Date, (x) all Co-Defendant Claims arising under or related to any such assumed or assumed and assigned contract or lease shall be released and discharged with no consideration on account thereof, and all Proofs of Claim in respect thereof shall be deemed Disallowed and expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person and (y) all Channeled Claims arising under or related to any such assumed or assumed and assigned contract or lease shall be channeled in accordance with the Channeling Injunction. For the avoidance of doubt, unless otherwise agreed by the counterparty to any assumed or assumed and assigned contract or lease, the foregoing shall not release or otherwise modify any term or provision of such contract or lease to the extent of any indemnification or reimbursement rights accruing after the Effective Date for conduct occurring after the Effective Date. To the extent an objection to the amendments and releases described in Section 8.4(a) of the Plan is not timely filed and properly served on the Debtors with respect to a contract or lease in accordance with the procedures set forth in the Assumption Notice, (i) the counterparty to such contract or lease and all other applicable Persons shall be bound by and deemed to have assented to the terms set forth in Section 8.4(a) of the Plan, including the amendment of such contract or lease as described in Section 8.4(a)(i) of the Plan and the assumption or assumption and assignment of such contract or lease, as so amended, (ii) except to the extent such contract or lease is included in the Schedule of Rejected Contracts, as of the Effective Date, subject to the consensual resolution of any applicable Contract Dispute by such counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee), such contract or lease, solely as amended pursuant to Section 8.4 of the Plan, shall be assumed by the applicable Debtor and, except with respect to any such contract of the Transferred Debtors, assigned to NewCo (or one of its Subsidiaries), and (iii) as of the Effective Date, such counterparty and all other applicable Persons shall be deemed to have released any and all rights, obligations, liabilities, Claims, Causes of Action and other rights of recovery described in Section 8.4(a)(ii) of the Plan. To the extent an objection to the amendment and release described in Section 8.4(a) of the Plan is timely filed and properly served on the Debtors by any counterparty with respect to such counterparty's contract or lease, and such objection has not been consensually resolved between such counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee) prior to the Confirmation Hearing, (i) such contract or lease shall be deemed to be rejected, (ii) any Claims against the Debtors resulting from such rejection shall be classified and treated in accordance with Section 8.5 of the Plan and (iii) all Estate Causes of Action against such counterparty shall be preserved and not released and shall constitute Retained Causes of Action.

**PLEASE TAKE FURTHER NOTICE THAT** your status as a counterparty to an executory contract or an unexpired lease does not, without more, entitled you to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the listing of an executory contract or unexpired lease on **Exhibit A** shall not constitute an admission by the Debtors or that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder, with the exception of the proposed Cure Amount.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors, subject to the terms of the Plan, reserve the right to modify the treatment of any particular executory contract or unexpired lease pursuant to the Plan. Furthermore, notwithstanding anything to the contrary in the Plan, the Debtors may alter, amend, modify or supplement the Schedule of Rejected Contracts and assume, assume and assign or reject executory contracts and unexpired leases at any time prior to the Effective Date or, with respect to any executory contract or unexpired lease subject to a Contract Dispute that is resolved after the Effective Date, within thirty (30) days following entry of a Final Order of the Bankruptcy Court resolving such Contract Dispute.

**PLEASE TAKE FURTHER NOTICE** that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

---

**Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions.** Pursuant to the Plan, certain parties are releasing the Released Parties, which include certain third parties, from certain Claims and Causes of Action. Thus, you are advised to review and consider the Plan carefully because your rights might be affected thereunder.

**This notice is being sent to you for informational purposes only. If you have any questions about this notice, you should contact the Solicitation Agent in accordance with the instructions provided above. Please note the that Solicitation Agent cannot give you legal advice or advise you on how the Plan affects you or what actions you should take with respect to the Plan. Any questions regarding those matters should be referred to your own counsel.**

---

Dated:    [●], 2021
          New York, New York

                              DAVIS POLK & WARDWELL LLP


                              By:    /s/ DRAFT _____

                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile: (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              ~~Timothy Graulich~~
                              Eli J. Vonnegut
                              James I. McClammy
                              Christopher S. Robertson

                              *Counsel to the Debtors and Debtors in
                              Possession*

**Exhibit A**

**Schedule of Assumed Contracts**

| Debtor Obligor | Counterparty Name | Description of Contract | Amount Required to Cure Default Thereunder, If Any |
|---|---|---|---|
| [●] | [●] | [●] | [●] |

### Exhibit 9

**Notice of Rejection of Executory Contracts and Unexpired Leases**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| | ) |
| In re: | ) |
| | ) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) |
| | ) |
| Debtors. | ) |
| | ) |

Chapter 11

Case No. 19-22312 (RDD)

(Jointly Administered)

---

**NOTICE REGARDING EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES TO BE REJECTED PURSUANT TO THE PLAN**

---

      **PLEASE TAKE NOTICE THAT** on [●], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), to solicit acceptances for the ~~*Third*~~*Fifth* *Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for* ~~*Third*~~*Fifth* *Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

      **PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**"), by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/purduepharma; and/or (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, 60 East 42nd Street, Suite 1440, New York, NY 10165. You

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Associates L.P. (N/A), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT** Section 8.1 of the Plan provides that, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party, as amended pursuant to Section 8.4 of the Plan will be deemed assumed by the applicable Debtor and, except with respect to any contract or lease held by a Transferred Debtor, assigned to NewCo or its designee, except for any executory contract or unexpired lease that:

    (i)      Has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court;

    (ii)    Is specifically identified on the Schedule of Rejected Contracts;

    (iii)   Is the subject of a separate assumption or rejection motion filed by the Debtors under section 365 of the Bankruptcy Code pending on the Confirmation Date;

    (iv)   Is the subject of a pending Contract Dispute; or

    (v)    Is being otherwise treated pursuant to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are a counterparty to an executory contract or unexpired lease that as of and subject to the occurrence of the Effective Date, will be rejected by the Debtors and that, accordingly has been specifically designated on the Schedule of Rejected Contracts, attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to a proposed rejection of your executory contract or unexpired lease is **August 2, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Contract Objection Deadline**"). Such objection **must**: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201

Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Contract Objection Deadline.

> **PLEASE TAKE FURTHER NOTICE THAT** any counterparty to an executory contract or unexpired lease who receives this notice and who fails to timely make an objection to the proposed rejection of such executory contract or unexpired lease by the Contract Objection Deadline will be deemed to have assented to such rejection.

**PLEASE TAKE FURTHER NOTICE THAT** as a result of the rejection of an executory contract or unexpired lease to which you are counterparty, you may be entitled to an unsecured Claim for which a Proof of Claim must be filed. Pursuant to Section 8.5 of the Plan, in the event that the rejection of an executory contract or unexpired lease by any of the Debtors herein results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their Estates, properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Debtors no later than thirty **(30) days** after the entry of the order of the Bankruptcy Court (including the Confirmation Order) authorizing the rejection of such executory contract or unexpired lease. Any such Claim shall be classified in accordance with the classification of Claims set forth in <u>Article III</u> of the Plan, including that any such Claims that constitute Co-Defendant Claims shall be classified as such. The Confirmation Order shall constitute the Bankruptcy Court's authorization of the rejection of all the leases and contracts identified in the Schedule of Rejected Contracts.

**PLEASE TAKE FURTHER NOTICE THAT** the listing of an executory contract or unexpired lease on **<u>Exhibit A</u>** shall not constitute an admission by the Debtors or that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder, with the exception of the proposed Cure Amount.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors, subject to the terms of the Plan, reserve the right to modify the treatment of any particular executory contract or unexpired lease pursuant to the Plan. Furthermore, notwithstanding anything to the contrary in the Plan, the Debtors may alter, amend, modify or supplement the Schedule of Rejected Contracts and assume, assume and assign or reject executory contracts and unexpired leases at any time prior to the Effective Date or, with respect to any executory contract or unexpired lease subject to a Contract Dispute that is resolved after the Effective Date, within thirty (30) days following entry of a Final Order of the Bankruptcy Court resolving such Contract Dispute.

**PLEASE TAKE FURTHER NOTICE** that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-

Defendant Claims under Sections 1.1 and 4.15 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.16 of the Plan shall be an Other Subordinated Claim.

**Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions.** Pursuant to the Plan, certain parties are releasing the Released Parties, which include certain third parties, from certain Claims and Causes of Action. Thus, you are advised to review and consider the Plan carefully because your rights might be affected thereunder.

**This notice is being sent to you for informational purposes only. If you have any questions about this notice you should contact the Solicitation Agent in accordance with the instructions provided above. Please note that the Solicitation Agent cannot give you legal advice or advise you on how the Plan affects you or what actions you should take with respect to the Plan. Any questions regarding those matters should be referred to your own counsel.**

*[Remainder of page intentionally left blank.]*

Dated:    [●], 2021
          New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        By:    /s/ DRAFT

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile: (212) 701-5800
                                        Marshall S. Huebner
                                        Benjamin S. Kaminetzky
                                        Timothy Graulich
                                        Eli J. Vonnegut
                                        James I. McClammy
                                        Christopher S. Robertson

                                        *Counsel to the Debtors and Debtors in
                                        Possession*

**Exhibit A**

**Schedule of Rejected Contracts**

| Debtor Obligor | Counterparty Name | Description of Contract |
|---|---|---|
| [●] | [●] | [●] |

# Exhibit 10

## Plan Supplement Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FILING OF PLAN SUPPLEMENT**

　　　　**PLEASE TAKE NOTICE THAT** on [●], 2021, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), to solicit acceptances for the ~~*Third*~~*Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for ~~Third~~Fifth Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

　　　　**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order approving the Disclosure Statement, the Debtors filed the ~~Fourth~~Fifth Plan Supplement with the Court on May ~~17~~26, 2021 [D.I. ~~2868~~2938]. The Plan Supplement includes the following materials in connection with confirmation (each as defined in the Plan): (a) MDT Documents, (b) the NewCo Transfer Agreement, (c) the NewCo Operating Agreement, (d) the TopCo Operating Agreement, (e) the ~~Plan Administration Trust~~PAT Agreement, (f) the PI Trust Documents (including the LRP

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

Agreement), (g) the NAS Monitoring Trust Documents, (h) the Hospital Trust
Documents, (i) the TPP Trust Documents, (j) the NOAT Documents, (k) the Tribe Trust
Documents, (l) the NewCo Credit Support Agreement, (m) the identity of the MDT
Trustees, (n) the identity of the MDT Executive Director, (o) the identity of the NewCo
Managers, (p) the identity of the TopCo Managers, (q) the identity of the Plan
Administration Trustee and PPLP Liquidator, (r) the identity of the Creditor Trustees, (s)
the Schedule of Rejected Contracts, (t) the Schedule of Retained Causes of Action, (u)
the Schedule of Excluded Parties, (v) the Shareholder Settlement Agreement and (w) the
Restructuring Steps Memorandum.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court
will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on
**August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert
D. Drain, in the United States Bankruptcy Court for the Southern District of New York,
located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that,
pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order
M-543**"), such Confirmation Hearing shall be conducted **telephonically** so long as
General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[3]
The Confirmation Hearing may be continued from time to time by the Court or the
Debtors **without further notice** other than by such adjournment being announced in
open court, by Agenda filed with the Court, and/or by a Notice of Adjournment filed with
the Court and served on all parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections
to the Plan is **July 19, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Plan
Objection Deadline**"). Any objection to the Plan **must** (a) be in writing, (b) conform to
the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the
Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in
the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in
accordance with General Order M-399 (which can be found at
http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in
text-searchable portable document format (PDF) (with a hard copy delivered directly to
Chambers), in accordance with the customary practices of the Bankruptcy Court and
General Order M-399, to the extent applicable, and (d) be served in accordance with the
*Second Amended Order Establishing Certain Notice, Case Management, and
Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to
the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York
10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and
Christopher S. Robertson), (ii) counsel to the Creditors' Committee, (A) Akin Gump
Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Arik
Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C.,
500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R.
Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York,

---

[3]   A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-
operationsunder-exigent-circumstances-created-covid-19.

201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a Ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan Supplement as well as the Disclosure Statement (including the Plan and the other exhibits thereto), Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**"), by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at http://www.nysb.uscourts.gov.

[*Remainder of page intentionally left blank.*]

Dated:    [●], 2021
          New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By:    */s/ DRAFT* _____

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone: (212) 450-4000
                                    Facsimile: (212) 701-5800
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Timothy Graulich
                                    Eli J. Vonnegut
                                    James I. McClammy
                                    Christopher S. Robertson

                                    *Counsel to the Debtors and Debtors in
                                    Possession*

**<u>Exhibit 11</u>**

**Disclosure Statement Hearing Notice**

Hearing Date and Time: April 21, 2021, at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: April 12, 2021, at 4:00 p.m. (prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*,[1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF DISCLOSURE STATEMENT HEARING**

**PLEASE TAKE NOTICE** that, on March 15, 2021, Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") filed (i) the *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as may be modified, amended, or supplemented from time to time, the "**Plan**") and (ii) the *Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**").[2]

**PLEASE TAKE FURTHER NOTICE** that, on March 15, 2021, the Debtors filed the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (the "**Motion**") seeking entry of an order approving, among other things, (a) the adequacy of information in the Disclosure Statement, (b) Solicitation and Voting Procedures, (c) forms of Ballots, notices and notice procedures in connection therewith and (d) certain dates with respect thereto.

**PLEASE TAKE FURTHER NOTICE** that the Disclosure Statement (including the Plan and the other exhibits thereto), the Motion or related documents, may be obtained at no charge from Prime Clerk LLC, the Solicitation Agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable. The Debtors reserve the right to amend, supplement, or modify the Plan or the Disclosure Statement.

**Agent**"), by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165; and/or (d) emailing purduepharmainfo@primeclerk.com.  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **April 21, 2021, at 10:00 a.m. (prevailing Eastern Time)** (the "**Disclosure Statement Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Court**"), or at such other time as the Bankruptcy Court may determine; *provided* that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Disclosure Statement Hearing shall be conducted **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Court.[3]  The Disclosure Statement Hearing may be continued from time to time by the Court or the Debtors **without further notice** other than by such adjournment being announced in open court, by Agenda Filed with the Court, and/or by a Notice of Adjournment Filed with the Court and served on all parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the Disclosure Statement and the Motion is **April 12, 2021, at 4:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**").  Any objections to the relief sought at the Disclosure Statement Hearing must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner, and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Objection Deadline.

Dated:    [●], 2021
         New York, New York

---

[3]    A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

DAVIS POLK & WARDWELL LLP

By:    */s/ DRAFT*

450 Lexington Avenue
New York, New York 10017
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson
*Counsel to the Debtors and Debtors in
Possession*

**Exhibit 12**

**Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) Case No. 19-23649 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF HEARING TO CONSIDER**
**CONFIRMATION OF THE THIRD AMENDED CHAPTER 11 PLAN FILED BY THE**
**DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

~~1.~~1.    On [•], 2021, the United States Bankruptcy Court for the Southern District of

New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing

Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the

"**Debtors**"), to solicit acceptances for the *~~Third~~Fifth Amended Joint Chapter 11 Plan of*

*Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended or

supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for*

*~~Third~~Fifth Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the

"**Disclosure Statement**")[2] as containing "**adequate information**" pursuant to section 1125 of

the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

the solicitation packages; and (d) approving procedures for soliciting, receiving and tabulating votes on the Plan and for filing objections to the Plan.

2. 2.    The hearing at which the Court will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Confirmation Hearing shall be conducted ~~telephonically~~via **Zoom videoconference** for those who will be participating in the Confirmation Hearing[3] so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[34] The Confirmation Hearing may be continued from time to time by the Court or the Debtors **without further notice** other than by such adjournment being announced in open court, by Agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and served on all parties entitled to notice.

3. 3.    The Plan contemplates a Shareholder Settlement by and among the Debtors, the Master Disbursement Trust, and certain of the Shareholder Released Parties (including **members of the Sackler families** and certain other individuals and related entities). The Plan provides for the release of any actual or potential claims or causes of action against the Shareholder Released Parties relating to the Debtors (including claims in connection with Opioid-Related Activities)

---

[3]    Parties or members of the public who wish to participate in the Confirmation Hearing should consult the Court's calendar with respect to the day of the Confirmation Hearing at https://www.nysb.uscourts.gov/calendars/rdd.html for information regarding how to be added as a participant. Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so telephonically at a number to be provided.

[34]    A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

and the channeling injunction described below, in exchange for the payment by certain of the
Shareholder Released Parties of $4.275 billion and the relinquishment of their equity interests in
the Debtors.

     4. 4.    The deadline for filing objections to the Plan is **July 19, 2021, at 4:00 p.m.,
prevailing Eastern Time** (the "**Plan Objection Deadline**"). All objections to the relief sought
at the Confirmation Hearing **must** (a) be in writing, (b) conform to the Federal Rules of
Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,
(c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including
attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which
can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-
ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to
Chambers), in accordance with the customary practices of the Bankruptcy Court and General
Order M-399, to the extent applicable, and (d) be served in accordance with the *Second Amended
Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered
on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP,
450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin
S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors
Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York
10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner and Edan Lisovicz) and (B)
Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention:
Justin R. Alberto), and (iii) the Office of the U.S. Trustee for the Southern District of New York,
201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg),
so as to be actually received on or before the Plan Objection Deadline.

5.5.    Pursuant to the Order, the Court approved the use of certain materials in the solicitation of votes to accept or reject the Plan and certain procedures for the tabulation of votes to accept or reject the Plan.  Subject to the Master Ballot Solicitation Procedures (pursuant to which (among other things) your Law Firm may be casting a vote on your behalf), if you are a holder of a Claim against the Debtors as of **March 10, 2021,** and entitled to vote, you have received with this Notice, a ballot form (a "**Ballot**") and instructions for completing the Ballot.

6. 6.    The deadline for voting on the Plan is on <u>**July 14, 2021, at 4:00 p.m., prevailing Eastern Time**</u> (the "**Voting Deadline**"). If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you **must** (a) follow the Ballot instructions carefully; (b) complete **all** of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it (or the Master Ballot submitted on your behalf, as applicable) is **actually received** by the Debtors' Solicitation Agent, Prime Clerk LLC (the "**Solicitation Agent**") on or before the Voting Deadline.  **A failure to follow such instructions may disqualify your vote.**

7. 7.    Please note that if you hold a Claim in Classes 4, 5, 6, 7, 8, 9, 10(a) and/or 10(b) as of the Voting Record Date that is otherwise allowed for voting purposes and you are represented by an attorney, it is possible that your attorney has elected, through exercising the option in the Solicitation Directive, to cast a vote on your behalf through a Master Ballot.  If your attorney elects to vote your claim by Master Ballot, it is possible that you may not receive a copy of the Plan, Disclosure Statement, Disclosure Statement Order and/or a Ballot.  Therefore, if you hold a Claim in Classes 4, 5, 6, 7, 8, 9, 10(a) and/or 10(b) as of the Voting Record Date that is otherwise allowed for voting purposes and you did not receive a Plan, Disclosure Statement,

Disclosure Statement Order and/or a Ballot and wish to receive any of the aforementioned materials, you are encouraged to contact your attorney.

8. 8.    If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claim under Sections 1.1 and 4.16 of the Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

9. 9.    If any claimant wishes to challenge the disallowance of its Claim for voting purposes, such claimant must file a motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes (a "**Rule 3018 Motion**"). Any Rule 3018 Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on July 19, 2021 (the "**Rule 3018(a) Motion Filing Deadline**") and served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498].

10. 10. The Debtors will file the Plan Supplement (as defined in the Plan) on or before **July 7, 2021**, and will serve notice on all holders of Claims entitled to vote on the Plan and all known holders of other Released Claims, Shareholder Released Claims, or Channeled Claims, which will (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

11. 11. If confirmed, the Plan shall bind all holders of Claims and Interests to the maximum extent permitted by applicable law, whether or not such holder will receive or retain any property or interest in property under the Plan, has filed a Proof of Claim in these Chapter 11 Cases, or failed to vote to accept or reject the Plan or voted to reject the Plan.

12. **12. Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling injunction provisions. For your convenience, such provisions are set forth on Exhibit 1 hereto. Pursuant to the Plan, the Releasing Parties certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action. The Releasing Parties include all holders of Claims and Interest under the Plan. The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided*, *however*, that, notwithstanding the**

foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.

13. 13. If confirmed, the Plan will conclusively, absolutely, unconditionally, irrevocably, and forever release the Shareholder Released Parties from actual or potential claims or causes of action relating to the Debtors (including Purdue prescription opioids, like OxyContin, or other prescription opioids manufactured, marketed or sold by Purdue, or any other claims in connection with Opioid-Related Activities) subject to the conditions set forth in the Plan, including Sections 10.7(a) and (b) thereof.  Holders of such actual or potential claims or causes of action will be bound by the releases and Channeling Injunctions in the Plan, whether or not such holders will receive or retain any property or interest in property under the Plan, have filed a Proof of Claim in these Chapter 11 Cases or failed to vote to accept or reject the Plan or voted to reject the Plan.

14. 14. If you should have any questions or if you would like to obtain additional solicitation materials at no charge, please contact the Debtors' Solicitation Agent, by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot

Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New

York, New York 10165; and/or (d) emailing purduepharmainfo@primeclerk.com.  You may also

obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at:

http://www.nysb.uscourts.gov.  Please be advised that the Solicitation Agent is authorized to

answer questions about, and provide additional copies of, solicitation materials, but may **not**

advise you as to whether you should vote to accept or reject the Plan.


Dated:      [●], 2021
            New York, New York


                                    DAVIS POLK & WARDWELL LLP

                                    By:   */s/ DRAFT*_____

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Timothy Graulich
                                    Eli J. Vonnegut
                                    James I. McClammy
                                    Christopher S. Robertson
                                    *Counsel to the Debtors and Debtors in*
                                    *Possession*

# EXHIBIT 1

**Section 10.6(a)**            **Releases by Debtors**

                **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether in rem, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, a.(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, b.(ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), c.(iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), d.(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, e.(v) the Restructuring Transactions, f.(vi) the Pending Opioid Actions, g.(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, h.(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing,**

i.(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, j.(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, k.(xi) the solicitation of votes with respect to the Plan, or l.(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.6(b)    Releases by Releasing Parties**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without

limitation, m.(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, n.(ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), o.(iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), p.(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, q.(v) the Restructuring Transactions, r.(vi) the Pending Opioid Actions, s.(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, t.(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, u.(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, v.(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, w.(xi) the solicitation of votes with respect to the Plan, or x.(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(b) shall (A) release any Cause of Action against (I) any Shareholder Release Snapback Party or (II) any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim against a Debtorsolely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim,

and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

**Section 10.6(c)**        **Releases by Debtors of Holders of Claims**

~~To~~        **As of** the ~~maximum extent permitted by applicable law~~**Effective Date**, all Holders of Channeled Claims (excluding, **in all respects,** any Excluded Party, Shareholder Release Snapback Party ~~or~~, Co-Defendant **or MDT Insurer**) are hereby released by the Debtors ~~from any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability~~**and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities** for any Claim in connection with, or arising out of, ~~y.~~**(i)** the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing ~~and z.~~**or (ii)** such Holder's participation in the Pending Opioid Actions. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(c).**

**As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(c)</u> shall (A) release any **contractual** Estate Cause of Action ~~against a Governmental Unit with respect to taxes~~**or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions**, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor ~~or a Holder of a Channeled Claim~~, to the extent such Estate Cause of Action is necessary

for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of business against ongoing commercial counterparties of NewCo the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

**Section 10.7(a)          Shareholder Releases - Releases by Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(a), by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, aa.(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, bb.(ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), cc.(iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), dd.(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ee.(v) the Restructuring Transactions, ff.(vi) the Pending Opioid Actions, gg.(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds

therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, ~~hh.~~(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, ~~ii.~~(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, ~~jj.~~(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, ~~kk.~~(xi) the solicitation of votes with respect to the Plan, or ~~ll.~~(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this **Section 10.7(a)**.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this **Section 10.7(a)** shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this **Section 10.7(a)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this **Section 10.7(a)** had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A),the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**Section 10.7(b)**          **Shareholder Releases - Releases by Non-Debtors**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(b)**, by the Releasing Parties ~~and all other Persons~~ from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the

Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, ~~mm.~~(i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, ~~nn.~~(ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), ~~oo.~~(iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), ~~pp.~~(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ~~qq.~~(v) the Restructuring Transactions, ~~rr.~~(vi) the Pending Opioid Actions, ~~ss.~~(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, ~~tt.~~(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, ~~uu.~~(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, ~~vv.~~(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, ~~ww.~~(xi) the solicitation of votes with respect to the Plan, or ~~xx.~~(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-

sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(b)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this <u>Section 10.7(b)</u> shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

Section 10.7(c)        Shareholder Releases - Releases by Shareholder Released Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this <u>Section 10.7(c)</u>, by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, ~~yy.~~<u>(i)</u> the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, ~~zz.~~(ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), ~~aaa.~~(iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), ~~bbb.~~(iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, ~~ccc.~~(v) the Restructuring Transactions, ~~ddd.~~(vi) the Pending Opioid Actions, ~~eee.~~(vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, ~~fff.~~(viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, ~~ggg.~~(ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, ~~hhh.~~(x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, ~~iii.~~(xi) the solicitation of votes with respect to the Plan, or ~~jjj.~~(xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(c)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, <u>and</u> including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any ~~claims~~<u>Claims</u> held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this <u>Section 10.7(c)</u> of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this <u>Section 10.7(c)</u> shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

Section 10.8        Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in Sections 10.5, 10.6 and 10.7 of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a) (a)    **Terms.    In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in Sections 10.5, 10.6 and 10.7 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

(i) (i)    **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

(ii) (ii)    **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

(iii) (iii)    **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

(iv) (iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

(v) (v)    **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(b) (b)    **Reservations. Notwithstanding anything to the contrary in this Section 10.8 or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar or enjoin:**

(i) (i)    **the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to**

assert such Channeled Claims solely in accordance with **Section 6.21 of the Plan,** the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

(ii) (ii)    the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

(iii) (iii)    the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

(iv) (iv)    the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

(v) (v)    the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

(vi) (vi)    the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

(vii) (vii)    the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

(viii) (viii)    NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(c) (c)    **Notice of Shareholder Release Snapback.** Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to this Section 10.8(c), the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(d) (d)    **Modifications**. Except as expressly set forth in paragraph (c) of this Section 10.8, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

(e) (e)  **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of this Section 10.8, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(f) (f)  **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 10.9        Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction**

(a) (a)  **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and (iii) with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under Section [2.01] of the Shareholder Settlement Agreement.

(b) (b)  **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

**Section 10.10            MDT Insurer Injunction**

(a) (a)   **Terms.** In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:

(i) (i)   commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(ii) (ii)   enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iii) (iii)   creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and

(v) (v)   taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.

(b) (b)   **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors,

officers, employees and agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c) (c)  **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that (i) any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and (ii) the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(d) (d)  **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.10, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

**Section 10.11**          **Settling MDT Insurer Injunction**

(a) (a)  **Terms.  In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

(i) (i)  **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(ii) (ii)  **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

(iii) (iii)  **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on**

account of such Claim based on, arising under or attributable to such MDT Insurance Policy;

(iv) (iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and

(v) (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.

(b) (b) **Reduction of Insurance Judgments.** Any right, Claim, or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim, or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim, or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim, or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim, or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim, or cause of action.

(c) (c) **Modifications**. There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d) (d) N**on-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of this Section 10.11, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

**Section 10.12        Exculpation**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in

addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

**Section 10.13          Injunction Related to Releases and Exculpation**

            To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to this Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

## Exhibit 13

**Cover Letter to Solicitation Package**

~~May~~June [●], 2021

RE:    *In re Purdue Pharma L.P., et al., Chapter 11 Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.)*

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession (collectively, the "**Debtors**"): each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on September 15, 2019.

You have received this letter and the enclosed materials because you are entitled to vote on the [~~*Third*~~]*Fifth* *Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended, or supplemented from time to time, the "**Plan**"). On ~~May~~June [●], 2021 the Court entered an order (the "**Disclosure Statement Order**") (a) authorizing the Debtors to solicit acceptances for the Plan; (b) approving the *Disclosure Statement for* [~~*Third*~~]*Fifth* *Amended Joint Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the "**Disclosure Statement**")[1] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "**Solicitation Package**"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan, and for filing objections to the Plan.

As explained in the enclosed Disclosure Statement, under the Plan, billions of dollars will flow into trusts established for the benefit of states and localities, Native American Tribes, hospitals, third-party payors and insurance carriers, children with a history of Neonatal Abstinence Syndrome and their guardians, and personal injury claimants.  With the exception of the personal injury trust, which will make unrestricted distributions to individual holders, each trust will require that all value be dedicated exclusively to opioid abatement efforts (subject to payment of attorneys' fees and administrative costs), and there will be transparency to ensure that funds are not spent for any other purpose.

Purdue Pharma's existing shareholders will be required to pay $4.5 billion in the aggregate, consisting of $4.275 billion that will be paid to the Debtors' estates and distributed to creditors through the trusts described above, and $225 million that has been paid by the Sackler Families to satisfy their civil settlement with the United States Department of Justice.  This represents a significant improvement to the initial settlement framework that was in place at the commencement of these Chapter 11 Cases, most notably by increasing the amount that Purdue Pharma's existing shareholders will be required to pay in the aggregate from $3.0 billion to $4.5 billion.  This material

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

improvement in the recovery from the shareholders directly increases by $1.275 billion the amount of guaranteed funds payable to the stakeholders.

As for Purdue Pharma, it will cease to exist.  On the Effective Date, the Debtors' businesses will be transferred to a newly created company, which will be indirectly owned by two of the opioid abatement trusts, with the value of the business benefiting those trusts.

In short, the Plan fulfils the goal of directing as much of the value of the Debtors' assets as possible to combatting the opioid crisis in this country.

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to holders of Claims in connection with the solicitation of votes to accept the Plan.  The Solicitation Package consists of the following:

    a.  the notice of the hearing to consider confirmation of the Plan;

    b.  a copy of the Solicitation and Voting Procedures;

    c.  a Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope;

    d.  this letter;

    e.  a flash drive containing each of the following materials:

        (1)  the Disclosure Statement Order, as entered by the Court;

        (2)  the Disclosure Statement, as approved by the Court (with the Plan annexed thereto); and

    f.  such other materials as the Court may direct.

The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions, however, please feel free to contact Prime Clerk LLC, the Solicitation Agent retained by the Debtors in the chapter 11 cases (the "**Solicitation Agent**"), by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in the chapter 11 cases at no charge by contacting the Solicitation Agent by any of the means listed above.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

> **You are receiving this letter because you are entitled to vote on the Plan.  Therefore, you should read this letter carefully and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.**

The Debtors and [~~NTD:~~ Official Committee of Unsecured Creditors ~~to be inserted when agreed~~], [the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants], the Multi-State Governmental Entity Group, the Native American Tribes Group, the Ad Hoc Group Of Individual Victims, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the Ratepayer Mediation Participants, and the Ad Hoc Group of NAS Children all support confirmation of the Plan.  This level of consensus is extraordinary, given the nature of the litigation against certain Debtors and the differing views on fundamental settlement and allocation issues held over time by the various supporting stakeholders.  **The Debtors and many other stakeholder groups[, including the Official Committee of Unsecured Creditors,] urge all holders of Claims entitled to vote on the Plan to vote to accept the Plan.**

Sincerely,

**Purdue Pharma L.P.**
on its own behalf and for each of the other Debtors

**<u>Exhibit 14</u>**

**Form of Notice of Solicitation Directive and
Solicitation Directive**

> This Notice is not a solicitation for consents to accept or reject any chapter 11 plan of reorganization for the Debtors. Votes to accept or reject any chapter 11 plan may not be solicited unless and until a disclosure statement has been approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.
>
> To ensure timely solicitation of your client's votes, the enclosed Solicitation Directive and your Client List must be returned to the Solicitation Agent so that it is **actually** **received** no later than 4:00 p.m. (prevailing Eastern Time) on the Solicitation Directive Deadline.

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
~~Timothy Graulich~~
Eli J. Vonnegut
James I. McClammy
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PURDUE PHARMA L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF (I) PROCEDURES
## FOR SOLICITING

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**VOTES OF HOLDERS OF CLAIMS IN CLASSES 4, 5, 6, 7, 8, 9, 10(a), 10(b)
TO ACCEPT OR REJECT ~~FIRST~~FIFTH AMENDED JOINT CHAPTER 11
PLAN OF REORGANIZATION OF PURDUE PHARMA L.P. AND ITS AFFILIATED
DEBTORS; (II) DEADLINE FOR ATTORNEYS TO SUBMIT SOLICITATION
DIRECTIVES AND CLIENT LISTS; AND (III) OTHER RELATED DEADLINES**

**TO:    ATTORNEYS REPRESENTING HOLDERS OF CLAIMS IN APPLICABLE
CLASSES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

~~1.~~1.    On September 15, 2019, each of Purdue Pharma L.P., its general partner Purdue Pharma Inc., and Purdue Pharma's wholly owned direct and indirect subsidiaries as debtors and debtors in possession (collectively, the "**Debtors**"), commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). On ~~[•]~~June 2, 2021, the Debtors filed a proposed disclosure statement [D.I. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended or supplemented from time to time, the "**Proposed Disclosure Statement**") for the *~~First~~Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated ~~April 23~~June 2, 2021 [D.I. ~~2731~~[•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"). On March 15, 2021, the Debtors filed the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection therewith, and (IV) Certain Dates with Respect Thereto* [D.I. 2489] (the "**Disclosure Statement Motion**"),[2] to which the Debtors attached a proposed disclosure statement order and annexed in **Exhibit 1** thereto proposed solicitation and voting procedures (the "**Solicitation and Voting Procedures**"). The hearing on the Disclosure Statement Motion is currently scheduled for ~~May 3~~June 2, 2021 at ~~10:00  a~~3:00  p.m. (prevailing Eastern Time) (the "**Disclosure Statement Hearing**").

~~2.~~2.    The Solicitation and Voting Procedures set forth the proposed solicitation and voting procedures that are applicable to you and your clients if you have **four (4) or more** clients that may hold Claims in Classes 4, 5, 6, 7, 8, 9, 10(a) and 10(b) (each an "**Eligible Claim**" and the clients you represent that may hold Eligible Claims, your "**Eligible Clients**").[3] With respect to your Eligible Clients, the Solicitation and Voting Procedures require you to direct the Debtors regarding your preferred method of distribution of the Solicitation Packages that may (depending on your election) contain the Ballots and other information relevant for your Eligible Clients to vote to accept or reject the Plan. In particular, the Solicitation and Voting Procedures require that you complete and return to the Debtors' solicitation agent, Prime Clerk LLC (the "**Solicitation Agent**"), the enclosed Solicitation Directive either (i) by email at purduepharmaballots@primeclerk.com[4] or (ii) by mail (with the Client List included on a USB

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or Disclosure Statement Motion, as applicable.

[3] The Debtors may, in their sole discretion, waive this four-client eligibility minimum for certain Solicitation Directives.

[4] Please note that the Debtors encourage Firms to submit Master Ballots and accompanying Client Lists via encrypted email or other secured method of electronic transmission.  Firms with any questions about such secured

3

drive) at Purdue Pharma Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165 so that it is received by the Solicitation Agent no later than **4:00 p.m. (prevailing Eastern Time) on April 5̶27, 2021**, which is the Solicitation Directive Deadline.[5]

3̶.̶ 3.    As explained in further detail in the attachment, **if your Firm represents four (4) or more Eligible Clients**, the Solicitation Directive allows you to select your preferred method for the Solicitation Agent to solicit the votes of your Eligible Clients to accept or reject the Plan from **two (2) different solicitation methods**. These methods are intended to expedite and streamline the transmission of information to the Eligible Clients, increase voter participation and better ensure such claimants are empowered to make informed and meaningful decisions as to whether to accept or reject the Plan. Ultimately, each voting decision rests exclusively with each Eligible Client. If you wish to vote on behalf of your Eligible Clients, you must be authorized under applicable law to vote on their behalf, and must comply with applicable rules regarding aggregate settlements and informed consent. Each of the two proposed solicitation methods are described in the attached Solicitation Directive. If your Firm represents fewer than four (4) Eligible Clients, do not return the Solicitation Directive; the Solicitation Agent will instead solicit your Clients directly.  For the avoidance of doubt, if your Firm represents fewer than four (4) Eligible Clients, the Solicitation Agent will disregard any election you might make on the Solicitation Directive and solicit those Eligible Clients through the Direct Solicitation Method.

4̶.̶ 4.    The Solicitation and Voting Procedures also require you to provide a single list (the "**Client List**") of the name of each Eligible Client and number (the "**Claim Number**") assigned by the Solicitation Agent to each Proof of Claim with respect to each Eligible Claim. If you elect to have the Solicitation Agent solicit each of your Eligible Clients via the Direct Solicitation Method or include them in the Informational Service, you are encouraged to also provide mailing addresses for your Eligible Clients, if known.  For the avoidance of doubt, the Solicitation Agent will only send customized Ballots to each Eligible Client via hard copy. Ballots will <u>not</u> be sent to Eligible Clients via email under the Direct Solicitation Method or the Informational Service method. An Excel spreadsheet template for the Client List is provided herewith under "Client List Formatting Instructions". Please return the Client List in the precise electronic format of such template no later than the Solicitation Directive Deadline (April 5̶27, 2021, at 4:00 p.m. (prevailing Eastern Time)).[6]  Each Client List, Master Ballot, and the contents thereof (including attachments) shall be subject to the confidentiality provisions applicable to Proof of Claim forms set forth in the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof [D.I. 800], and to the Third Amended Protective Order*

---

encrypted email or other secured method of electronic transmission.  Firms with any questions about such secured transmission methods should contact Prime Clerk at: purduepharmaballots@primeclerk.com.

[5]  ~~The Solicitation Directive Deadline is subject to extension pursuant to the Solicitation and Voting Procedures. The Solicitation Directive Deadline has been extended to April 14, 2021 pursuant to the Solicitation and Voting Procedures with respect to Solicitation Directives submitted by counsel affiliated with the Ad Hoc Committee, the NCSG and the MSGE.~~

[6]  ~~See footnote 5.~~

4

*[D.I. ~~969~~1935]*, provided, for the avoidance of doubt, that nothing herein shall prohibit the public disclosure of the Voting Report prepared on the basis thereof.

~~5.~~ 5. **If you fail to return the Solicitation Directive and Client List by the Solicitation Directive Deadline, the Solicitation Agent will, by default, solicit votes on the Plan from your Eligible Clients via the Direct Solicitation Method. Moreover, if you return the Solicitation Directive and Client List by the Solicitation Directive Deadline, but the Client List does not contain applicable Claim Numbers, contains fewer than four (4) Eligible Clients or does not precisely follow the "Client List Formatting Instructions" provided with the Solicitation Directive, the Solicitation Agent will, by default, solicit votes on the Plan from your Eligible Clients according to the Direct Solicitation Method. The Solicitation Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Solicitation Directives to make a reasonable effort to cure such deficiencies prior to the Solicitation Directive Deadline. Each Firm is required to confirm the accuracy of the Client List in the Solicitation Directive.**

~~6.~~ 6.    To the extent that an Eligible Client appears on the Client List of more than one Firm, the Solicitation Agent will use reasonable efforts to inform such multiple Firms of the duplicative and/or conflicting representation. It is the sole obligation and responsibility of the Firms to coordinate with each other to resolve the conflicting representation, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to purduepharmaballots@primeclerk.com copying all affected Firms confirming such resolution. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (i.e., multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (i.e., a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent is authorized to invalidate both such inconsistent votes. If after the submission of inconsistent votes, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email purduepharmaballots@primeclerk.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon any such email.

~~7.~~ 7.    For the further avoidance of doubt, if the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the vote cast by the Eligible Client will control. In addition, if an Eligible Client for whom a Firm elected the Master Ballot Solicitation Method contacts the Solicitation Agent and requests a Ballot for purposes of voting directly, then notwithstanding the election made by the Firm, the Solicitation Agent shall send a Solicitation Package and Ballot directly to the Eligible Client.

~~8.~~ 8.    Notwithstanding anything to the contrary herein, neither the Debtors nor the Solicitation Agent are obligated to attempt to cure any inconsistent votes.

9. 9.    Pursuant to the Solicitation and Voting Procedures, the Solicitation Agent will provide instructions detailing how to access electronic versions, request hard copies or request flash-drive versions of each of: (a) the Disclosure Statement Order as entered by the Bankruptcy Court; (b) the Disclosure Statement as approved by the Court (with the Plan annexed thereto); and (c) an appropriate Ballot in accordance with the instructions set forth on the Solicitation Directive.

10. 10. Copies of the Proposed Disclosure Statement, the Plan and the Disclosure Statement Motion are available for review on the Solicitation Agent's website at https://restructuring.primeclerk.com/purduepharma. In addition, copies of the Proposed Disclosure Statement, the Plan and the Disclosure Statement Motion are available upon request by contacting the Solicitation Agent by mail at Purdue Pharma Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165 or by email at purduepharmainfo@primeclerk.com. If you have any questions regarding the instructions for completing the Solicitation Directive, please contact the Solicitation Agent at purduepharmaballots@primeclerk.com.

11. 11. If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a ballot or notice, which identifies your Claim as belonging to a specific class for voting and distribution purposes, [any Claim that satisfies the definition of Co-Defendant Claims under Sections 1.1 and [4.16] of the Plan shall be a Co-Defendant Claim and] any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

> **To ensure the timely solicitation of your Eligible Clients' votes on the Plan, you must complete and return the enclosed Solicitation Directive and Client List either (i) by email to purduepharmaballots@primeclerk.com or (ii) by mail (with the Client List included on a USB drive) to Purdue Pharma Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, in either case so that it is actually received by the Solicitation Agent on or before 4:00 p.m. (prevailing Eastern Time) on April 527, 2021.**

Dated:    New York, New York
          [●], 2021


                              DAVIS POLK & WARDWELL LLP

By:    */s/ DRAFT*    _____

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
~~Timothy Graulich~~
Eli J. Vonnegut
James I. McClammy
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PURDUE PHARMA L.P., *et al.*,[1] | ) Case No. 19-23649 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## SOLICITATION DIRECTIVE

I hereby direct that distribution of Solicitation Packages in connection with the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated [●]June 2, 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") be implemented as set forth below with respect to the Eligible Claims[2] of my Eligible Clients as set forth in this Solicitation Directive (the "**Solicitation Directive**").

Enclosed herewith is an Excel spreadsheet that lists the name and Claim Number of each Eligible Claim of each Eligible Client to which this Solicitation Directive applies in the precise format as set forth below in the "Client List Formatting Instructions" (the "**Client List**").

**Box 1    No Solicitation Required.** I do not represent any Eligible Clients asserting Eligible Claims against the Debtors. By signing below, I hereby certify and authorize the Solicitation Agent to remove me from any further service or distribution lists relating to Eligible Claims in the above-captioned Chapter 11 Cases.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan, the *Form of Master Solicitation Notice and Master Solicitation Directive* attached as Exhibit 14 to the *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection therewith, and (IV) Certain Dates with Respect Thereto* [D.I. 2489] (the "**Disclosure Statement Motion**") or the Disclosure Statement Motion, as applicable.

**Box 2     Master Ballot Solicitation Method**. I certify that (a) I will expend commercially reasonable efforts to collect and record the votes of each of my Eligible Clients through customary and accepted practices (e.g., by email, telephone, or other standard communications); (b) with respect to those Eligible Claims for which I submit votes, I have obtained (or will obtain) authority to procedurally cast votes for each of my Eligible Clients with respect to Eligible Claims; or (c) I have the authority under applicable law to vote to accept or reject the Plan on behalf of each of my Eligible Clients with respect to those Eligible Claims for which I hereby submit votes (and I will provide the Solicitation Agent with a valid power of attorney to that effect, upon request). Accordingly, in lieu of the Solicitation Agent soliciting votes from each of my Eligible Clients directly, I will record the votes to accept or reject the Plan for each of my Eligible Clients on a single master ballot (a "**Master Ballot**") that I will submit to the Solicitation Agent. I understand that by electing this procedure I must meet all applicable standards to receive informed consent from my Eligible Clients. I understand that if I elect this procedure I shall either (i) provide the Disclosure Statement, via instructions detailing how to access electronic versions or in hard copy or electronic format, to my Eligible Clients, or (ii) request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without Ballots) on my Eligible Clients.

By signing below, I hereby certify that: (i) I have authority under applicable law or I will expend commercially reasonable efforts to collect or otherwise receive duly valid and enforceable authorizations or instructions to vote to accept or reject the Plan on behalf of my Eligible Clients on the Client List in accordance with my Firm's customary practices; (ii) no Solicitation Packages need to be provided to any of my Eligible Clients on the Client List unless I have made the informational service election below; and (iii) I represent each of my Eligible Clients set forth on the Client List that I am submitting to the Solicitation Agent contemporaneously with this Solicitation Directive.

> Informational Service Election. Although I have authority to record the votes of my Eligible Clients pursuant to the Master Ballot Solicitation Method set forth above, I request that the Solicitation Agent serve copies of the Solicitation Packages (without Ballots) on each of my Eligible Clients at the addresses identified in the Client List (or, if no address is identified, the address listed on the applicable Proof of Claim or in the Schedules).

> I understand that if I do not provide addresses for my Eligible Clients and the proofs of claim filed on behalf of those Eligible Clients list my Firm's address, my Firm will receive a separate, individually mailed Solicitation Package (without a Ballot) for each such Eligible Client.

> If you have made this election, please indicate the number of Eligible Clients that you represent: _____.

**Box 3    Direct Solicitation Method.** I do not have authority to vote to accept or reject the Plan on behalf of my Eligible Clients or I have such authority but do not intend to exercise it, and/or I have less than four (4) Eligible Clients.  Accordingly, I hereby

direct the Solicitation Agent to send Solicitation Packages (including Ballots) directly to each of my Eligible Clients at the addresses identified in the Client List (or, if no address is identified, the address listed on the applicable Proof of Claim or in the Schedules). I understand and will advise my Eligible Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Eligible Clients under this procedure.  I also understand that if I do not provide addresses for my Eligible Clients and the proofs of claim filed on behalf of those Eligible Clients list my Law Firm's address, my Firm will receive a separate, individually mailed Solicitation Packages (including a Ballot) for each such Eligible Client.

> If you have made this election, please indicate the number of Eligible Clients that you represent: _____.

By signing below, I hereby certify that I represent each of the Eligible Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Solicitation Directive.

**SIGNATURE:**

Name of Attorney:

Name of Law Firm: _____

Street Address: _____

City, State and Zip Code: _____

Telephone Number: _____

Email Address: _____

Signature: _____

Date Completed: _____

**Instructions for Returning This Directive**

The Debtors are requesting that this Solicitation Directive be returned so that it is **actually received** by the Debtors' Solicitation Agent on or before **4:00 p.m. (prevailing Eastern Time) on April 5~~5~~27, 2021,**[3] either (i) by email at purduepharmaballots@primeclerk.com or (ii) by mail (with the Client List included on a USB drive) at Purdue Pharma Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

> **In accordance with the Solicitation and Voting Procedures, if you fail to return the Solicitation Directive by the Solicitation Directive Deadline, the Solicitation Agent will, by default, solicit votes on the Plan from your Eligible Clients according to the Direct Solicitation Method described above.**

**Requirements for the Client List**

As indicated above, you must provide a list, in the precise electronic format dictated by the Solicitation Agent, of the name of each Eligible Client and the Claim Number with respect to each Eligible Claim held by each Eligible Client. You are encouraged to also provide addresses and email addresses for each Eligible Client, if known, unless you choose the Master Ballot Solicitation Method and you do not make the Informational Service Election; *provided, however,* that even if you make the Informational Service Election, you are not required to provide addresses or email addresses for each Eligible Client; rather, at minimum, you must include each of your Eligible Client's Claim Numbers. You are encouraged to utilize the template for the Client List provided with the notice sent by the Solicitation Agent.

Client Lists must be returned so as to be received no later than **4:00 p.m. (prevailing Eastern Time) on April 5~~5~~27, 2021,** either (i) by email at purduepharmaballots@primeclerk.com or (ii) by mail (with the Client List included on a USB drive) at Purdue Pharma Ballot Processing, c/o Prime Clerk, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.[4] If you have any technical questions or need to arrange for special delivery of your Client List, please contact the Solicitation Agent at purduepharmaballots@PrimeClerk.com.

The Debtors encourage Firms to submit Master Ballots and accompanying Client Lists (setting forth the Eligible Clients' votes) via encrypted email or other secured method of electronic transmission. Firms with any questions about such secured transmission methods should contact Prime Clerk at: purduepharmaballots@primeclerk.com.

---

[3] ~~The Solicitation Directive Deadline is subject to extension pursuant to the Solicitation and Voting Procedures. The Debtors have extend the Solicitation Directive Deadline to April 21, 2021.~~
[4] ~~See footnote 3.~~

Each Client List, Master Ballot and the contents thereof (including attachments) shall be subject to the confidentiality provisions applicable to Proof of Claim forms set forth in the *Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof [D.I. 800], and to the Third Amended Protective Order [D.I. 9691935]*, provided, for the avoidance of doubt, that nothing herein shall prohibit the public disclosure of the Voting Report prepared on the basis thereof.

**To the extent that an Eligible Client appears on the Client List of more than one Firm, the Solicitation Agent will use reasonable efforts to inform such multiple Firms of the duplicative and/or conflicting representation.  It is the sole obligation and responsibility of the Firms to coordinate with each other, resolve the conflicting representation and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to purduepharmaballots@primeclerk.com copying all affected Firms confirming such resolution.  If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple *consistent* votes on account of such Eligible Client (i.e., multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for numerosity purposes.   If, however, the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple *inconsistent* votes on account of such Eligible Client (i.e., a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent is authorized to invalidate both such inconsistent votes. If after the submission of inconsistent votes, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email purduepharmaballots@primeclerk.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon any such email.  For the further avoidance of doubt, if the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the vote cast by the Eligible Client will control. Notwithstanding anything to the contrary herein, neither the Debtors nor the Solicitation Agent are obligated to attempt to cure any inconsistent                                votes.**

### Client List Formatting Instructions

*If you have elected to complete a Master Ballot*, the Solicitation Directive requires that you submit a Client List to the Solicitation Agent. The Client List should be in Excel and should be formatted to include each of the following fields (in the order listed below); provided, however, that if you choose the Master Ballot Solicitation Method and you do not make the Informational Service Election, then you may omit the lines for Eligible Client Mailing Address and Eligible Client Email Address:

1.~~1.~~ Eligible Client Claim Number *Required Field*

2.~~2.~~ Eligible Client Name *Required Field*

3.~~3.~~ Eligible Client Mailing Address (Line 1)

4.~~4.~~ Eligible Client Mailing Address (Line 2)

5.~~5.~~ Eligible Client Mailing Address (Line 3)

6.~~6.~~ Eligible Client Mailing Address (City)

7.~~7.~~ Eligible Client Mailing Address (State)

8.~~8.~~ Eligible Client Mailing Address (Postal Code)

9.~~9.~~ Eligible Client Mailing Address (Country)

~~10.~~10. Eligible Client Email Address

**Please ensure that columns are no greater than 45 characters wide.**

For your convenience, a sample template is set forth below and may also be downloaded in Excel format from the Solicitation Agent's website at https://restructuring.primeclerk.com/purduepharma.

| Claim Number | Name | Mailing Address Line 1 | Mailing Address Line 2 | Mailing Address Line 3 | City | State | Postal Code | Country | Email Address |
|---|---|---|---|---|---|---|---|---|---|
| 6789 | John Smith | 123 Street | Suite 110 | Apartment 5A | Town | State | 12345 | USA | 123@aol.com |

## <u>Exhibit 15</u>

**Publication Version of Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*,[1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING TO CONSIDER**
**CONFIRMATION OF THE THIRD AMENDED CHAPTER 11 PLAN FILED**
**BY THE DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

~~1.~~1.    On [●], 2021, the United States Bankruptcy Court for the Southern District of

New York (the "**Court**") entered an order (the "**Disclosure Statement Order**"), (a) authorizing

Purdue Pharma L.P. and its affiliated debtors and debtors in possession (collectively, the

"**Debtors**"), to solicit acceptances for the ~~*Third*~~*Fifth* *Amended Joint Chapter 11 Plan of*

*Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (as modified, amended or

supplemented from time to time, the "**Plan**"); (b) approving the *Disclosure Statement for*

~~*Third*~~*Fifth* *Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* (the

"**Disclosure Statement**")[2] as containing "**adequate information**" pursuant to section 1125 of

the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

the solicitation packages; and (d) approving procedures for soliciting, receiving and tabulating votes on the Plan and for filing objections to the Plan.

2. 2.    The hearing at which the Court will consider Confirmation of the Plan (the "**Confirmation Hearing**") will commence on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; *provided* that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Confirmation Hearing shall be conducted ~~telephonically~~via **Zoom videoconference** for those who will be participating in the Confirmation Hearing[3] so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[34] The Confirmation Hearing may be continued from time to time by the Court or the Debtors **without further notice** other than by such adjournment being announced in open court, by Agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and served on all parties entitled to notice.

3. 3.    The Plan contemplates a Shareholder Settlement by and among the Debtors, the Master Disbursement Trust, and certain of the Shareholder Released Parties (including **members of the Sackler families** and certain other individuals and related entities). The Plan provides for the release of any actual or potential claims or causes of action against the Shareholder Released Parties relating to the Debtors (including claims in connection with Opioid-Related Activities)

---

[3] Parties or members of the public who wish to participate in the Confirmation Hearing should consult the Court's calendar with respect to the day of the Confirmation Hearing at https://www.nysb.uscourts.gov/calendars/rdd.html for information regarding how to be added as a participant.  Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so telephonically at a number to be provided.

[34] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

and the channeling injunction described below, in exchange for the payment by certain of the Shareholder Released Parties of $4.275 billion and the relinquishment of their equity interests in the Debtors.

4.    4.    The deadline for filing objections to the Plan is **July 19, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Plan Objection Deadline**"). All objections to the relief sought at the Confirmation Hearing **must** (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable and (d) be served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498], on (i) counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut and Christopher S. Robertson), (ii) counsel to the Creditors Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attention: Arik Preis, Mitchell P. Hurley, Sara L. Brauner and Edan Lisovicz) and (B) Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attention: Justin R. Alberto); and (iii) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attention: Paul K. Schwartzberg), so as to be actually received on or before the Plan Objection Deadline.

5.5.    Pursuant to the Order, the Court approved the use of certain materials in the solicitation of votes to accept or reject the Plan and certain procedures for the tabulation of votes to accept or reject the Plan. If you are a holder of a Claim against the Debtors as of **March 10, 2021,** and entitled to vote, you have received with this Notice, a ballot form (a "**Ballot**") and instructions for completing the Ballot.

6.6.    The deadline for voting on the Plan is on **July 14, 2021, at 4:00 p.m., prevailing Eastern Time** (the "**Voting Deadline**"). If you received a Solicitation Package including a Ballot and intend to vote on the Plan you **must** (a) follow the Ballot instructions carefully; (b) complete **all** of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it (or the Master Ballot submitted on your behalf, as applicable) is **actually received** by the Debtors' Solicitation Agent, Prime Clerk LLC (the "**Solicitation Agent**") on or before the Voting Deadline. **A failure to follow such instructions may disqualify your vote**.

7.7.    If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan. Notwithstanding the fact that your Claim would otherwise satisfy the definition of another type of Claim, or your receipt of a ballot or notice, which identifies your Claim as belonging to a specific Class for voting and distribution purposes, any Claim that satisfies the definition of Co-Defendant Claim under Sections 1.1 and 4.16 of the

5

Plan shall be a Co-Defendant Claim and any Claim that satisfies the definition of an Other Subordinated Claim under Sections 1.1 and 4.17 of the Plan shall be an Other Subordinated Claim.

8. 8. If any claimant wishes to challenge the disallowance of its Claim for voting purposes, such claimant must file a motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes (a "**Rule 3018 Motion**"). Any Rule 3018 Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on July 19, 2021 (the "**Rule 3018(a) Motion Filing Deadline**") and served in accordance with the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498].

9. 9. The Debtors will file the Plan Supplement (as defined in the Plan) on or before **July 7, 2021,** and will serve notice on all holders of Claims entitled to vote on the Plan and all known holders of other Released Claims, Shareholder Released Claims, or Channeled Claims, which will: (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

10. 10. If confirmed, the Plan shall bind all holders of Claims and Interests to the maximum extent permitted by applicable law, whether or not such holder will receive or retain any property or interest in property under the Plan, has filed a Proof of Claim in these Chapter 11 Cases or failed to vote to accept or reject the Plan or voted to reject the Plan.

11. 11. **Sections 10.6, 10.7, 10.8, 10.9, 10.10, 10.11, 10.12, and 10.13 of the Plan contain release, shareholder release, exculpation, injunction, channeling injunction, MDT insurer injunction, Settling MDT insurer injunction and shareholder channeling**

injunction provisions.   Pursuant to the Plan, ~~the Releasing Parties~~certain parties are releasing the Released Parties, which include certain third parties, and the Shareholder Released Parties (subject to and in accordance with the terms of the Shareholder Settlement) from certain Claims and Causes of Action. The Releasing Parties include all holders of Claims and Interest under the Plan.  The Released Parties include, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; provided, however, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.

~~12.~~ 12. If confirmed, the Plan will conclusively, absolutely, unconditionally, irrevocably, and forever release the Shareholder Released Parties from actual or potential claims or causes of action relating to the Debtors (including Purdue prescription opioids, like OxyContin, or other prescription opioids manufactured, marketed or sold by Purdue, or any other claims in connection with Opioid-Related Activities) subject to the conditions set forth in the Plan, including Sections 10.7(a) and (b) thereof.  Holders of such actual or

**potential claims or causes of action will be bound by the releases and Channeling Injunctions in the Plan, whether or not such holders will receive or retain any property or interest in property under the Plan, have filed a Proof of Claim in these Chapter 11 Cases or failed to vote to accept or reject the Plan or voted to reject the Plan.**

13. 13. If you should have any questions or if you would like to obtain additional solicitation materials at no charge, please contact the Debtors' Solicitation Agent, by: (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at: https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the Plan.

Dated:     [●], 2021
           New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        By:   /s/ DRAFT _____

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
James I. McClammy
Christopher S. Robertson

*Counsel to the Debtors and Debtors in
Possession*

## Exhibit 16

**Plain Language Version of Confirmation Hearing Notice**

**Did You File a Claim Against Purdue Pharma as
Part of its Bankruptcy Proceeding? Do You have a Claim Against
Purdue Pharma's Owners?
A Hearing to Consider Confirmation
of the Chapter 11 Plan May Affect Your Rights.**

**Confirmation Hearing August 9, 2021**

**WHAT IS THIS ABOUT?**

On [●], 2021, as part of Purdue Pharma L.P.'s bankruptcy proceedings, the United States Bankruptcy Court for the Southern District of New York entered an order called the "**Disclosure Statement Order**" that:

(a) (a)    Authorized Purdue Pharma L.P. and its affiliated debtors and debtors in possession to solicit acceptances of the *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, which includes (a) releases of any actual or potential claims against Sackler family members, and certain other individuals and related entities, relating to Purdue Pharma L.P. and its affiliated debtors (including Purdue prescription opioids, like OxyContin, or other prescription opioids manufactured or sold by Purdue); and (b) an injunction requiring that certain claims against the released parties be asserted only against trusts established under the plan;

(b) (b)    Approved the *Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* as containing "**adequate information**" pursuant to section 1125 of the Bankruptcy Code;

(c) (c)    Approved the solicitation materials and documents to be included in solicitation packages; and

(d) (d)    Approved procedures for soliciting, receiving, and tabulating votes on the plan and for filing objections to the plan.

The Court will consider confirmation of the plan at the Confirmation Hearing.

**WHEN IS THE HEARING?**

The Confirmation Hearing will be held on **August 9, 2021, at 10 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140. The hearing will be conducted ~~telephonically~~via **Zoom videoconference** for those who

will be participating in the Confirmation Hearing[1] if General Order M-543 is still in effect or unless otherwise ordered by the Bankruptcy Court.

The Confirmation Hearing may be extended and rescheduled by the Court or the Debtors **without further notice** by an agenda filed with the Court, and/or by a Notice of Adjournment filed with the Court and delivered to all parties who are entitled to notice.

**WHAT ARE YOUR OPTIONS?**

**Vote on the Plan:** Your vote must be submitted so it is actually received on or before **July 14, 2021, at 4:00 p.m., prevailing Eastern Time**. Detailed instructions on how to vote are available at **https://restructuring.primeclerk.com/purduepharma** or by calling (844) 217-0912 (toll free) or (347) 859-8093 (international). Failure to follow instructions properly may disqualify your vote.

**Object to the Plan:** An objection must be submitted so that it is actually received on or before **July 19, 2021, at 4:00 p.m., prevailing Eastern Time**. Detailed instructions on how to file an objection are available at **https://restructuring.primeclerk.com/purduepharma** or by calling (844) 217-0912 (toll free) or (347) 859-8093 (international).

**Allowance Request:** If you believe that you hold a claim against Purdue Pharma L.P. that is not currently entitled to vote but that you believe should be entitled to vote, you can request the allowance of such claim for voting purposes. To do so, you must file a motion with the Court on or before **July 19, 2021 (prevailing Eastern Time)**. Detailed instructions on how to file an allowance request are available at **https://restructuring.primeclerk.com/purduepharma** or by calling (844) 217-0912 (toll free) or (347) 859-8093 (international).

**If the plan is confirmed, anyone with an actual or potential claim against Purdue Pharma L.P. or any of its affiliated debtors, or with an actual or potential claim against Sackler family members, and certain other individuals and related entities, relating to Purdue Pharma L.P. and its affiliated debtors (including Purdue prescription opioids, like**

---

[1] Parties or members of the public who wish to participate in the Confirmation Hearing should consult the Court's calendar with respect to the day of the Confirmation Hearing at https://www.nysb.uscourts.gov/calendars/rdd.html for information regarding how to be added as a participant.  Members of the public who wish to listen to, but not participate in, the Hearing free of charge may do so telephonically at a number to be provided.

**OxyContin, or other prescription opioids manufactured or sold by Purdue), will be bound by the terms of the plan, including the releases and injunctions contained therein.**

*This is only a summary*. For more information:

- **Call:** (844) 217-0912 (toll free) or (347) 859-8093 (international)
- **Visit https://restructuring.primeclerk.com/purduepharma**
- **Write:** Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165
- **Email:** purduepharmainfo@primeclerk.com

Please be advised that Prime Clerk LLC is authorized to answer questions about, and provide additional copies of, solicitation materials, but may **not** advise you as to whether you should vote to accept or reject the plan.