Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-23649 (RDD)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   PURDUE PHARMA L.P.,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16                  May 26, 2021

17                  10:05 AM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  ART

Page 2

1    HEARING re PURDUE PHARMA LP HEARING WILL BE CONDUCTED USING

2    ZOOM FOR GOVERNMENT VIDEO CONFERENCING. THOSE THAT REQUIRE

3    ACTIVE PARTICIPANT ACCESS TO THE HEARING MUST EMAIL CHAMBERS

4    AT RDD.CHAMBERS@NYSB.USCOURTS.GOV FOR ZOOM ACCESS

5    CREDENTIALS

6

7    HEARING re Notice of Agenda/ Agenda for May 26, 2021

8    Disclosure Statement Hearing Statement /Notice that

9    Disclosure Statement Hearing Scheduled for May 26, 2021 at

10   9:00 a.m. will be Conducted through Zoom (related

11   document(s)2882)

12

13   HEARING re Motion to Approve (I) the Adequacy of Information

14   in the Disclosure Statement, (II) Solicitation and Voting

15   Procedures, (III) Forms of Ballots, Notices and Notice

16   Procedures in Connection Therewith, and (IV) Certain Dates

17   with Respect Thereto Letter from Aaron R. Stimus Objecting

18   to Certain Claims Filed by James I. McClammy on behalf of

19   Purdue Pharma L.P. (ECF #2627)

20

21   HEARING re Objection to document 2494 received 4/12/2021

22   (related document(s)2494, 2489) filed by Jeanette Tostenson.

23   (ECF #2634)

24

25   HEARING re Objection to Purdue Pharma L.P. Proposed

1    Bankruptcy Reconstruction Plan (re: claim 41399; Amended

2    615834) filed by Kevin Lee Mckenney Sr. (ECF #2648)

3

4    HEARING re Letter Re: Reposted Letter from Colonel Ralph

5    Olsen M.D. Filed by Ralph Olsen M.D. - Colonel Army of the

6    US Retired. (ECF #2652)

7

8    HEARING re Objection to Purdue Pharma's Plan of

9    Reorganization filed by Susan D. Haswell. (ECF #2653)

10

11   HEARING re Letter for Reconsideration Filed by Scotti

12   Madison (ECF #2654)

13

14   HEARING re Objection to Disclosure Statement of Purdue

15   Pharma LP and its Affiliated Debtors (related

16   document(s)2487, 2488) filed by Paul Kenan Schwartzberg on

17   behalf of United States Trustee. (ECF #2686)

18

19   HEARING re Objection to Motion by Debtor's to Approve

20   Disclosure Statement (related document(s)2489) filed by

21   Aaron R. Cahn on behalf of State of West Virginia, ex. rel.

22   Patrick Morrisey, Attorney General. (ECF 2703)

23

24

25

1    HEARING re Objection to Disclosure Statement By Independent

2    ER Physician filed by Paul S Rothstein on behalf of Paul S

3    Rothstein.(ECF #2708)

4

5    HEARING re Objection to the Debtors' Disclosure Statement

6    Motion (related document(s)2487, 2488) filed by Isley

7    Markman Gostin on behalf of Steadfast Insurance Company,

8    American Guarantee and Liability Insurance Company,

9    Navigators Specialty Insurance Company. (ECF #2710)

10

11   HEARING re Objection to Motion filed by Mark Stein on behalf

12   of Bridge House Corporation. (ECF #2711)

13

14   HEARING re Objection to Disclosure Statement (related

15   document(s)2488) filed by Corey Moll on behalf of Carpenter

16   Health Network. (ECF #2712)

17

18   HEARING re Objection to Disclosure Statement (related

19   document(s)2488) filed by Corey Moll on behalf of City of

20   Chillicothe, Ohio. (ECF #2713)

21

22   HEARING re Objection to Disclosure Statement (related

23   document(s)2488) filed by Corey Moll on

24   behalf of City of Covington, Louisiana. (ECF #2714)

25

Page 5

1    HEARING re Objection to Disclosure Statement (related

2    document(s)2488) filed by Corey Moll on behalf of Four Winds

3    Tribe Louisiana Cherokee. (ECF #2715)

4

5    HEARING re Objection to Disclosure Statement (related

6    document(s)2488) filed by Corey Moll on behalf of Parish of

7    DeSoto. (ECF #2716)

8

9    HEARING re Objection to Disclosure Statement (related

10   document(s)2488) filed by Corey Moll on behalf of

11   Northwestern Band of the Shoshone Nation. (ECF #2717)

12

13   HEARING re Objection to Disclosure Statement (related

14   document(s)2488) filed by Corey Moll on behalf of Dr.

15   Gregory Fernandez in his Official Capacity as the Coroner of

16   St. Bernard Parish. (ECF #2718)

17

18   HEARING re Joint Objection to Motion Joint Objection Of

19   Distributors, Manufacturers And Pharmacies To Debtors'

20   Motion For An Order Approving Disclosure Statement (related

21   document(s)2489) filed by Barry Z. Bazian on behalf of

22   Allergan Finance LLC, AmerisourceBergen Drug Corporation,

23   CVS Caremark Part D Services, L.L.C., Johnson & Johnson,

24   McKesson Corporation, Sun Pharmaceuticals Canada Inc., Teva

25   Pharmaceuticals USA, Inc., Walgreen Co. and certain

Page 6

1    corporate affiliates and subsidiaries, Walmart, Inc. (ECF

2    #2719)

3

4    HEARING re Statement (Supplement to Johnson & Johnson and

5    Related Entities Joinder to Distributors', Manufacturers'

6    and Pharmacies' Joint Objection to Debtors' Motion for an

7    Order Approving Disclosure Statement) (related

8    document(s)2489, 2719) filed by Adam P. Haberkorn on behalf

9    of Alza Corporation, Janssen Ortho LLC, Janssen

10   Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.,

11   Janssen Pharmaceuticals, Inc., Johnson & Johnson, Ortho-

12   McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen

13   Pharmaceuticals, Inc. (ECF #2722)

14

15   HEARING re Objection to Motion to Approve Adequacy of

16   Information in Disclosure Statement, Objection to Motion for

17   Order Establishing Confirmation Schedule (related

18   document(s)2536, 2489) filed by Eric Fisher on behalf of

19   Baltimore City Board of School Commissioners, Board of

20   Chicago School District No. 299, Board of Education

21   of East Aurora School District 131, Board of Education of

22   Miami-Dade County Public Schools, Board of Education of

23   Thornton Fractional Township High School District

24   215, Board of Education of Thornton Township High School

25   District 205. (ECF #2720)

Page 7

1    HEARING re Statement (Supplement to Johnson & Johnson and

2    Related Entities Joinder to Distributors', Manufacturers'

3    and Pharmacies' Joint Objection to Debtors' Motion for an

4    Order Approving Disclosure Statement) (related

5    document(s)2489, 2719) filed by Adam P. Haberkorn on behalf

6    of Alza Corporation, Janssen Ortho LLC, Janssen

7    Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.,

8    Janssen Pharmaceuticals, Inc., Johnson & Johnson, Ortho-

9    McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen

10   Pharmaceuticals, Inc. (ECF #2722)

11

12   HEARING re Objection to Motion by Debtor's to Approve

13   Disclosure Statement and Joining West Virginia's Objection

14   to Same see ECF 2703 (related document(s)2489) filed by

15   Amanda Peterson on behalf of Barbour County. (ECF #2 723)

16

17   HEARING re Opposition Joinder to Objection to Debtors'

18   Motion to Approve Disclosure Statement (related document(s)

19   2703, 2489, 2488) filed by Hunter J. Shkolnik on behalf of

20   Uphur County Commission, Randolph County Commission,

21   Doddridge County Commission, Marion County Commission,

22   Wetzel County Commission, Tyler County Commission,

23   Ohio County Commission, Marshall County Commission, Lewis

24   County Commission, Monongalia County Commission, Hancock

25   County Commission, Brooke County Commission. (ECF #2725)

Page 8

1    HEARING re Objection to Disclosure Statement (related

2    document(s)2488) filed by Justin M Ellis on

3    behalf of The Cherokee Nation. (ECF #2730)

4

5    HEARING re Objection to Motion to the disclosure statement

6    and the plan generally (related document(s)2494) and

7    (related document(s)2489) filed by Patsy Newmeyer.

8    (ECF #2742)

9

10   HEARING re Objection to Motion to the disclosure statement

11   and the plan generally (related document(s)2494) and

12   (related document(s)2489) filed by Maria Luisa C. Pena Wife,

13   Executor of the Francisco I. Pena MD Estate. (ECF #2743)

14

15   HEARING re Objection to Disclosure Statement Ad Hoc

16   Committee on Accountability Objection to the Disclosure

17   Statement and the First Amended Disclosure Statement for

18   Chapter 11 Plan of Purdue Pharma, L.P., et al. (related

19   document( s )2 731, 2 734) filed by Paul A. Rachmuth on

20   behalf of Ad Hoc Committee on Accountability. (ECF #2745)

21

22

23

24

25

1   HEARING re Objection NAS AD HOC COMMITTEE'S LIMITED

2   OBJECTION TO DISCLOSURE STATEMENT AND SOLICITATION

3   PROCEDURES MOTION (related document(s)2734, 2489) filed by

4   Scott S. Markowitz on behalf of Ad Hoc Committee of NAS

5   Babies. (ECF #2746)

6

7   HEARING re Response / Joinder to State of West Virginias

8   Objection to Debtors Motion to Approve Disclosure Statement

9   (related document(s)2703) (ECF #2749)

10

11   HEARING re Objection/ THE AD HOC GROUP OF NON-CONSENTING

12   STATES OBJECTION TO THE DEBTORS MOTION TO APPROVE (I) THE

13   ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT, (11)

14   SOLICITATION AND VOTING PROCEDURES, (III) FORMS OF BALLOTS,

15   NOTICES AND NOTICE PROCEDURES IN CONNECTION THEREWITH, AND

16   (IV) CERTAIN DATES WITH RESPECT THERETO (related

17   document(s)2734, 2489) filed by Andrew M. Troop on behalf of

18   Ad Hoc Group of Non-Consenting States. (ECF #2762)

19

20   HEARING re Objection to Motion /Object to the Current

21   Restructuring Deal Purdue Pharma has Presented (related

22   document(s)2494) (related document(s)2489) filed by Jeanette

23   Tostenson (ECF #2766)

24

25

1   HEARING re Objection to Motion /Objecting to the Disclosure

2   Statement (related document(s)2494) (related

3   document(s)2489) filed by Kelvin X Singleton. (ECF #2767)

4

5   HEARING re Supplemental Objection to Motion to Approve

6   Adequacy of Information in Disclosure Statement, Objection

7   to Motion for Order Establishing Confirmation Schedule

8   (related document(s)2536, 2489) filed by Eric Fisher on

9   behalf of Baltimore City Board of School Commissioners,

10   Board of Chicago School District No. 299, Board of Education

11   of East Aurora School District 131, Board of Education of

12   Miami-Dade County Public Schools, Board of Education of

13   Thornton Fractional Township High School District

14   215, Board of Education of Thornton Township High School

15   District 205 (ECF #2773)

16

17   HEARING re Supplemental Objection to Disclosure Statement by

18   Independent ER Physician filed by Paul S Rothstein on behalf

19   of Paul S Rothstein. (ECF #2794)

20

21   HEARING re Objection to Motion /Debtors Motion to Approve

22   (I) the Adequacy of Information in the Disclosure Statement,

23   (II) Solicitation and Voting Procedures, (III) Forms of

24   Ballots, Notices and Notice Procedures in Connection

25   Therewith, and (IV) Certain Dates with Respect Thereto

Page 11

1    (related document(s)2489) filed by Jonathan C Lipson on

2    behalf of Peter Jackson. (ECF #2819)

3

4    HEARING re Letter /Objection Letter, Filing and Reasoning

5    (related document(s)2645, 2627) Filed by Aaron R. Stimus.

6    (ECF #2822)

7

8    HEARING re Objection to Disclosure Statement Second Suppl to

9    Objection by Dr. Michael Masiowski Indep ER Physician filed

10   by Paul S Rothstein on behalf of Paul S Rothstein.

11   (ECF #2828)

12

13   HEARING re Response Reply by the Side A Initial Covered

14   Sackler Persons in Support of Disclosure Statement for

15   Second Amended Plan (related document(s)2825, 2489) filed by

16   Jasmine Ball on behalf of Beacon Company. (ECF #2833)

17

18   HEARING re Statement / Submission by The Raymond Sackler

19   Family of a Proposed Position Statement for Inclusion or

20   Reference in the Debtors' Disclosure Statement (related

21   document(s)2825) filed by Gerard Uzzi on behalf of The

22   Raymond Sackler Family. (ECF #2853)

23

24

25

Page 12

1    HEARING re Statement Regarding Objection to Debtors' Motion

2    to Approve Disclosure Statement (related document(s)2703,

3    2489) filed by Aaron R. Cahn on behalf of State of West

4    Virginia, ex. rel. Patrick Morrisey, Attorney General.

5    (ECF #2857)

6

7    HEARING re Objection to Motion /SUPPLEMENTAL OBJECTION OF

8    PETER W. JACKSON TO DISCLOSURE STATEMENT FOR SECOND AMENDED

9    CHAPTER 11 PLAN FOR PURDUE PHARMA, L.P. AND ITS AFFILIATED

10   DEBTORS (FOURTH PLAN SUPPLEMENT) (related document(s)2489)

11   filed by Jonathan C Lipson on behalf of Peter Jackson. (

12   ECF #2881)

13

14   HEARING re Notice of Withdrawal of Limited Objection to

15   Disclosure Statement and Solicitation Procedures Motion

16   (related document(s)2746) filed by Scott S. Markowitz on

17   behalf of Ad Hoc Committee of NAS Babies. (ECF #2903)

18

19   HEARING re Notice of Withdrawal of Joinder to State of West

20   Virginia's Objection to Debtors' Motion to Approve

21   Disclosure Statement (related document(s)2749) filed by

22   Scott S. Markowitz on behalf of Ad Hoc Committee of NAS

23   Babies. (ECF #2906)

24

25

1  HEARING re Statement of the Official Committee of Unsecured

2  Creditors in Respect of Disclosure Statement and

3  Solicitation Procedures Motion for Third Amended Chapter 11

4  Plan for Purdue Pharma L.P. and Its Affiliated Debtors

5  (related document(s)2489, 2907) filed by Ira S. Dizengoff on

6  behalf of The Official Committee of Unsecured Creditors of

7  Purdue Pharma L.P., et al. (ECF #2911)

8

9  Statement of Ad Hoc Group of Individual Victims in support

10 of the Debtors' Motion to Approve the Adequacy of

11 Information in the Disclosure Statement (related

12 document(s)2489, 2910) filed by J. Christopher Shore on

13 behalf of Ad Hoc Group of Individual Victims of Purdue

14 Pharma L.P. (ECF #2914)

15

16 HEARING re Response / Ad Hoc Committee's Response to

17 Disclosure Statement Objections (related document(s)2773,

18 2703, 2720, 2857, 2907) filed by Kenneth H. Eckstein on

19 behalf of Ad Hoc Committee of Governmental and Other

20 Contingent Litigation Claimants. (ECF #2915)

21

22 HEARING re Supplemental Objection to Motion to Approve

23 Adequacy of Information in Disclosure Statement (related

24 document(s)2489) filed by Eric Fisher on behalf of Baltimore

25 City Board of School Commissioners, Board of Chicago School

Page 14

1    District No. 299, Board of Education of East Aurora School

2    District 131, Board of Education of Miami-Dade County Public

3    Schools, Board of Education of Thornton Fractional Township

4    High School District 215, Board of Education of Thornton

5    Township High School District 205. (ECF #2916)

6

7    HEARING re Reply to Motion/ Debtors' Omnibus Reply in

8    Further Support of the Motion to Approve (I) the Adequacy of

9    the Disclosure Statement, (II) Solicitation and Voting

10   Procedures, (III) Forms of Ballots, Notices and Notice

11   Procedures in Connection Therewith, and (IV) Certain Dates

12   with Respect Thereto (related document(s)2489) filed by

13   Darren S. Klein on behalf of Purdue Pharma L.P. (ECF 2910)

14

15   HEARING re Chapter 11 Plan/ Joint Chapter 11 Plan of

16   Reorganization of Purdue Pharma L.P. and its Affiliated

17   Debtors filed by Eli J. Vonnegut on behalf of Purdue Pharma

18   L.P. (ECF #2487)

19

20   HEARING re Disclosure Statement for Chapter 11 Plan for

21   Purdue Pharma L.P. and its Affiliated Debtors (related

22   document(s)2487) filed by Darren S. Klein on behalf of

23   Purdue Pharma L.P. (ECF #2488)

24

25

1   HEARING re Statement /Notice of Filing of Appendix F to the

2   Disclosure Statement filed by Eli J. Vonnegut on behalf of

3   Purdue Pharma L.P. (ECF #2491)

4

5   HEARING re Notice of Hearing/ Notice of Disclosure Statement

6   Hearing (related document(s)2489) filed by Darren S. Klein

7   on behalf of Purdue Pharma L.P. (ECF #2494)

8

9   HEARING re Notice of Adjournment of Hearing/ Notice of

10  Adjournment of Disclosure Statement Hearing (related

11  document(s)2489) filed by Marshall Scott Huebner on behalf

12  of Purdue Pharma L.P. (ECF #2625)

13

14  HEARING re Amended Plan/ First Amended Joint Chapter 11 Plan

15  of Reorganization of Purdue Pharma L.P. and its Affiliated

16  Debtors (related document(s)2487) filed by Eli J.

17  Vonnegut on behalf of Purdue Pharma L.P. (ECF #2731)

18

19  HEARING re Statement/ Notice of Filing of Plan Supplement

20  Pursuant to the First Amended Joint Chapter 11 Plan of

21  Reorganization of Purdue Pharma L.P. and its Affiliated

22  Debtors (related document(s)2731) filed by Eli J. Vonnegut

23  on behalf of Purdue Pharma L.P. (ECF #2732)

24

25

Page 16

1    HEARING re Statement/ Notice of Filing of Blackline of First

2    Amended Plan (related HEARING re document(s)2731) filed by

3    Eli J. Vonnegut on behalf of Purdue Pharma L.P. (ECF #2733)

4

5    HEARING re Amended Disclosure Statement / Disclosure

6    Statement for First Amended Chapter 11 Plan for Purdue

7    Pharma L.P. and its Affiliated Debtors (related

8    document(s)2731) filed by Darren S. Klein on behalf of

9    Purdue Pharma L.P. (ECF #2734)

10

11   HEARING re Statement /Notice of Filing of Blacklines of

12   Disclosure Statement for First Amended Plan (related

13   document(s)2734) filed by Darren S. Klein on behalf of

14   Purdue Pharma L.P. (ECF #2735)

15

16   Statement / Notice of Filing of Revised Proposed Order

17   Approving (I) the Adequacy of Information in the Disclosure

18   Statement, (II) Solicitation and Voting Procedures, Forms of

19   Ballots, Notices and Notice Procedures in Connection

20   Therewith, and (IV) Certain Dates with Respect Thereto

21   (related document(s)2489) filed by Darren S. Klein on

22   behalf of Purdue Pharma L.P. (ECF #2736)

23

24

25

1   HEARING re Statement / Notice of Filing of Second Plan

2   Supplement Pursuant to the First Amended Joint Chapter 11

3   Plan of Reorganization of Purdue Pharma L.P. and its

4   Affiliated Debtors (related document(s)2734, 2731) filed by

5   Eli J. Vonnegut on behalf of Purdue Pharma L.P. (ECF#2737)

6

7   HEARING re Notice of Adjournment of Hearing/ Notice of

8   Adjournment of Disclosure Statement Hearing (related

9   document(s)2489) filed by Darren S. Klein on behalf of

10   Purdue Pharma L.P. (ECF #2780)

11

12   HEARING re Amended Disclosure Statement for First Amended

13   Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated

14   Debtors (related document(s)2731) filed by Darren S. Klein

15   on behalf of Purdue Pharma L.P. (ECF #2788)

16

17   HEARING re Statement /Notice of Piling of Amended Blackline

18   of Disclosure Statement for First Amended Plan (related

19   document(s)2788) filed by Darren S. Klein on behalf of

20   Purdue Pharma L.P. (ECF #2789)

21

22   HEARING re Amended Plan / Second Amended Joint Chapter 11

23   Plan of Reorganization of Purdue Pharma L.P. and its

24   Affiliated Debtors filed by Darren S. Klein on behalf of

25   Purdue Pharma L.P. (ECF #2823)

Page 18

1

2    HEARING re Statement / Notice of Filing of Blackline of

3    Second Amended Plan (related document(s)2823) filed by

4    Darren S. Klein on behalf of Purdue Pharma L.P.

5    (ECF #2824)

6

7    HEARING re Disclosure Statement for Second Amended Chapter

8    11 Plan for Purdue Pharma L.P. and its Affiliated Debtors

9    (related document(s)2823) filed by Darren S. Klein on behalf

10    of Purdue Pharma L.P. (ECF #2825)

11

12    HEARING re Statement / Notice of Filing of Blackline of

13    Disclosure Statement for Second Amended Plan (related

14    document(s)2823, 2825) filed by Darren S. Klein on behalf of

15    Purdue Pharma L.P. (ECF #2826)

16

17    HEARING re Notice of Adjournment of Hearing/ Notice of

18    Adjournment of Disclosure Statement Hearing filed by Darren

19    S. Klein on behalf of Purdue Pharma L.P. (ECF #2839)

20

21    HEARING re Statement / Notice of Filing of Appendix F to the

22    Disclosure Statement filed by Eli J. Vonnegut on behalf of

23    Purdue Pharma L.P. (ECF 2491)

24

25

1    HEARING re Amended Plan / First Amended Joint Chapter 11

2    Plan of Reorganization of Purdue Pharma L.P. and its

3    Affiliated Debtors (related document(s)2487) filed by Eli J.

4    Vonnegut on behalf of Purdue Pharma L.P. (ECF #2731)

5

6    HEARING re Statement / Notice of Filing of Plan Supplement

7    Pursuant to the First Amended Joint Chapter 11 Plan of

8    Reorganization of Purdue Pharma L.P. and its Affiliated

9    Debtors (related document(s)2731) filed by Eli J. Vonnegut

10   on behalf of Purdue Pharma L.P. (ECF #2732)

11

12   HEARING re Amended Disclosure Statement/ Disclosure

13   Statement for First Amended Chapter 11 Plan for Purdue

14   Pharma L.P. and its Affiliated Debtors (related

15   document(s)2731) filed by Darren S. Klein on behalf of

16   Purdue Pharma L.P. (ECF #2734)

17

18   HEARING re Statement/Notice of Filing of Revised Proposed

19   Order Approving (I) the Adequacy of Information in the

20   Disclosure Statement, (II) Solicitation and Voting

21   Procedures, Forms of Ballots, Notices and Notice Procedures

22   in Connection Therewith, and (IV) Certain Dates with Respect

23   Thereto (related document(s)2489) filed by Darren S. Klein

24   on behalf of Purdue Pharma L.P. (ECF #2736)

25

1    HEARING re Statement / Notice of Filing of Second Plan

2    Supplement Pursuant to the First Amended Joint Chapter 11

3    Plan of Reorganization of Purdue Pharma L.P. and its

4    Affiliated Debtors (related document(s)2734, 2731) filed by

5    Eli J. Vonnegut on behalf of Purdue Pharma L.P. (ECF #2737)

6

7    HEARING re Amended Disclosure Statement for First Amended

8    Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated

9    Debtors (related document(s)2731) filed by Darren S. Klein

10   on behalf of Purdue Pharma L.P. (ECF #2788)

11

12   HEARING re Amended Plan/ Second Amended Joint Chapter 11

13   Plan of Reorganization of Purdue Pharma L.P. and its

14   Affiliated Debtors filed by Darren S. Klein on behalf of

15   Purdue Pharma L.P. (ECF #2823)

16

17   HEARING re Statement / Notice of Filing of Third Amended

18   Plan Supplement to the Second Amended Joint Chapter 11 Plan

19   of Reorganization of Purdue Pharma L.P. and its Affiliated

20   Debtors (related document(s)2823, 2825) filed by Eli J.

21   Vonnegut on behalf of Purdue Pharma L.P. (ECF #2867)

22

23

24

25

1    HEARING re Statement/ Notice of Filing of Fourth Plan

2    Supplement to the Second Amended Joint Plan of

3    Reorganization (related document(s)2823) filed by Eli J.

4    Vonnegut on behalf of Purdue Pharma L.P. (ECF #2868)

5

6    HEARING re Statement / Notice that Disclosure Statement

7    Hearing Scheduled for May 26, 2021 at 9:00 a.m. will be

8    Conducted through Zoom (related document(s)2882) filed by

9    Eli J. Vonnegut on behalf of Purdue Pharma L.P. (ECF #2902)

10   Amended Plan / Third Amended Joint Chapter 11 Plan of

11   Reorganization of Purdue Pharma L.P. and its Affiliated

12   Debtors (related document(s)2487, 2489) filed by Eli J.

13   Vonnegut on behalf of Purdue Pharma L.P. (ECF #2904)

14

15   HEARING re Amended Disclosure Statement /Disclosure

16   Statement for Third Amended Joint Chapter 11 Plan of

17   Reorganization of Purdue Pharma L.P. and its Affiliated

18   Debtors (related document(s)2904, 2489) filed by Eli J.

19   Vonnegut on behalf of Purdue Pharma L.P. (ECF #2907)

20

21   HEARING re Motion to Allow/ Debtors' Motion for Leave to

22   Exceed the Page Limit in Filing Omnibus Reply in Opposition

23   to the Objections to the Debtors' Motion to Approve (I)

24   the Adequacy of Information in the Disclosure Statement,

25   (II) Solicitation and Voting Procedures, (III) Forms of

Page 22

1    Ballots, Notices and Notice Procedures in Connection

2    Therewith, and (IV) Certain Dates with Respect Thereto filed

3    by Darren S. Klein on behalf of Purdue Pharma L.P.

4    (ECF #2909)

5

6    HEARING re Statement / Order Approving (I) the Adequacy of

7    Information in the Disclosure Statement, (II) Solicitation

8    and Voting Procedures, (III) Forms, Ballots, Notices and

9    Notice Procedures in Connection Therewith, and (IV) Certain

10    Dates with Respect Thereto (related document(s)2489, 2907)

11    filed by Darren S. Klein on behalf of Purdue Pharma L.P.

12    (ECF #2913)

13

14    HEARING re Declaration/ Second Supplemental Declaration of

15    Jeanne C. Finegan (related document(s)2489) filed by James

16    I. McClammy on behalf of Purdue Pharma L.P. (ECF #2917)

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 23

1   A P P E A R A N C E S :

2

3   DAVIS POLK & WARDWELL LLP

4        Attorneys for Debtor

5        450 Lexington Avenue

6        New York, NY, 10017

7

8   BY:  MARSHALL HUEBNER (TELEPHONICALLY)

9        JAMES MCCLAMMY (TELEPHONICALLY)

10        CHRISTOPHER ROBERTSON (TELEPHONICALLY)

11        ELI J. VONNEGUT (TELEPHONICALLY)

12        DARREN KLEIN (TELEPHONICALLY)

13

14   PORTEOUS HAINKEL & JOHNSON LLP

15        Attorneys for City of Covington, the Parish of DeSoto,

16        the City of Chillicothe, the Coroner of St. Bernard

17        Parish, the Four Winds Louisiana Cherokee, the

18        Northwestern Band of the Shoshone Nation, and the

19        Carpenter Health Network.

20        704 Carondelet Street

21        New Orleans, 70130

22

23   BY:  RALPH R. ALEXIS, III (TELEPHONICALLY)

24

25

Page 24

1    PILLSBURY WINTHROP SHAW PITTMAN LLP

2         Attorneys for Ad Hoc Group of Non-Consenting States

3         31 West 52nd Street

4         New York, NY 10019

5

6    BY:  ANDREW TROOP (TELEPHONICALLY)

7

8    UNITED STATES DEPARTMENT OF JUSTICE

9         Attorneys for the U.S. Trustee

10        201 Varick Street, Suite 1006

11        New York, NY 10014

12

13   BY:  PAUL SCHWARTZBERG (TELEPHONICALLY)

14

15   PAUL S. ROTHSTEIN, P.A.

16        Attorneys for Dr. Michael Masiowski

17        626 NE 1st Street

18        Gainesville, FL 32601

19

20   BY:  PAUL ROTHSTEIN (TELEPHONICALLY)

21

22

23

24

25

Page 25

```
 1    EISENBERG & BAUM, LLP

 2         Attorneys for Ad Hoc Committee

 3         24 Union Square East, Fourth Floor

 4         New York, New York 1000

 5

 6    BY:  MICHAEL S. QUINN (TELEPHONICALLY)

 7

 8    TEMPLE UNIVERSITY-BEASLEY SCHOOL OF LAW

 9         Attorney for Peter Jackson

10         1719 N. Broad Street

11         Philadelphia, PA 19122

12

13    BY:  JONATHAN C. LIPSON (TELEPHONICALLY)

14

15    WHITE & CASE LLP

16         Attorneys for Ad Hoc Group of Individual Victims of

17         Purdue Pharma LP

18         1221 Avenue of the Americas

19         New York, NY 10020

20

21    BY:  J. CHRISTOPHER SHORE (TELEPHONICALLY)

22

23

24

25
```

Page 26

1    JOSEPH HAGE AARONSON

2         Attorneys for The Raymond Sackler Family

3         485 Lexington Avenue, 30th Floor

4         New York, NY 10017

5

6    BY:  GREGORY JOSEPH (TELEPHONICALLY)

7

8    KRAMER LEVIN NAFTALIS & FRANKEL LLP

9         Attorneys for the Ad Hoc Committee

10        1177 Avenue of the Americas

11        New York, NY 10036

12

13   BY:  KENNETH ECKSTEIN (TELEPHONICALLY)

14

15   BINDER & SCHWARTZ LLP

16        Attorneys for Baltimore City Board of School

17        Commissioners et al.

18        366 Madison Avenue, Sixth Floor

19        New York, NY 10017

20

21   BY:  ERIC FISHER (TELEPHONICALLY)

22

23

24

25

1   ASSISTANT UNITED STATES ATTORNEYS

2        86 Chambers Street, Third Floor

3        New York, New York 10007

4

5   BY:   LAWRENCE H. FOGELMAN (TELEPHONICALLY)

6

7   AKIN GUMP STRAUSS HAUER & FELD LLP

8        Attorneys for the Official Committee of Unsecured

9        Creditors

10       One Bryant Park

11       New York, NY 10036

12

13  BY:   ARIK PREIS (TELEPHONICALLY)

14

15  MARTZELL BICKFORD CENTOLA

16       Attorneys for Ad Hoc Committee of NAS Babies

17       338 Lafayette Street

18       New Orleans, LA 70130

19

20  BY:   SCOTT R. BICKFORD (TELEPHONICALLY)

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Drain and

3       we're here in In re: Purdue Pharma, LP, et al.  This is the

4       scheduled hearing on the Debtors' request for approval of

5       their disclosure statement for what is now, I gather, their

6       fourth amended Chapter 11 plan.

7              I think, given the number of parties who've asked

8       to appear and speak at this hearing, rather than take

9       appearances now, I'll just ask you to identify yourself and

10      your client the first time that you speak, and ask you also,

11      if you speak later, to remember to repeat your name, so that

12      the court reporter can put together your voice with your

13      name, since the court reporter doesn't have the benefit of

14      the Zoom screen, as I do.

15             So, I understand that you were informed, as I was,

16      that the Debtors asked for a one-hour delay of this hearing,

17      to finalize some remaining document issues, and they have

18      now filed a fourth amended plan, which I've had the chance

19      to review the blackline of, but I think we should go ahead

20      now with the hearing.  So, I don't know who's going to be

21      taking the lead from the Debtors' counsels' point of view,

22      but I'll ask them to go forward.

23             MR. HUEBNER:  Good morning, Your Honor.  I think

24      that, for worse or for better, that's probably me at the

25      outset.  This is Marshall Huebner of Davis Polk and

Page 29

1    Wardwell, LLP on behalf of the Debtors.  Your Honor, let me

2    first do my traditional sound check and ask if I can be

3    heard clearly by the Court.

4            THE COURT:  Yes, we can year you fine, thanks.

5            MR. HUEBNER:  So, Your Honor, let me begin, which

6    is probably not going to be a surprise to anybody, with both

7    tremendous apologies and tremendous thanks, not only to the

8    Court but to, frankly, all parties.  This case is,

9    obviously, a case unlike any other, and that is, actually,

10   just the simple truth.  You know, we were up well past 3

11   a.m. resolving issues yet again, as we were the night before

12   and the night before that, at 1 a.m. and 3 a.m. and 7 a.m.

13   and 8 a.m. and 9 a.m., and as we speak, there are issues

14   getting resolved and language being exchanged among many

15   parties.

16           It is not our style and not our way to be filing

17   things, you know, on the morning of the hearing or at 3 a.m.

18   the night before a hearing, but unfortunately, sometimes,

19   you know, in cases of complexity like this, it is

20   unavoidable.  Obviously, we're happy to explain and walk

21   through, as we get to each issue, sort of where we are and

22   where we're not, and I'll be talking about that, obviously,

23   a little bit more, as we go through.

24           So I'm going to begin with an overall

25   presentation, catching up the Court and all parties with

Page 30

1    respect to the situation, which I actually think, on the

2    whole, is extremely positive, and I think that you'll hear

3    in a few minutes, that the great number of disclosure

4    statement objections that were pressing, as recently as one

5    hour ago and seven hours ago and twelve hours ago are now

6    resolved, and we are now down to a tiny number of issues

7    with respect to the disclosure statement itself, which I

8    will address.

9            So let me sort of rewind the tape just for a

10   moment, and then just go forward.  You know, as the Court,

11   of course, knows perfectly well, I was accurate and honest

12   and concerned last week at the hearing, and I told you that

13   I was not an all confident that we would be ready to have a

14   disclosure statement hearing on May 26th, whether it was

15   other pressures or whether people understanding that we said

16   it and we meant it and that today may well not be happening

17   and the costs and the risks to all parties in the case

18   (sound drops) could be narrowly material.

19           The last 143 hours, and virtually every one of

20   those hours have been an incredible pressure -- pressurized

21   situation in getting many, many things resolved, and while

22   we are not done, done-done, ultimately, on a call early --

23   very early this morning with various of our key

24   stakeholders, the decision was made, and I think it was a

25   pretty clear decision, and one that our board chair and

Page 31

1    special committee chair endorsed and validated about an

2    hour-and-a-half ago, that proceeding this morning was

3    absolutely the right approach, and hopefully the Court will

4    agree with that, by the time we're done walking through with

5    where we are.

6            So let me sort of begin, I guess, by saying what

7    this hearing is not, because I think that that actually

8    helps frame why we are here today.  Today is not the

9    confirmation hearing, and it is not the day on which we need

10   to actually prove the unquestionable legality of every

11   provision in the plan, and obviously we very much hope,

12   including with the mediation that is upcoming, there still

13   are going to be positive changes that are good for all

14   parties.

15           You'll also hear that, not only with respect to

16   Sackler-facing issues, and obviously, the nonconsenting, or

17   as I like to call them, the currently nonconsenting states

18   group, but you'll also hear that with respect to other

19   issues like the schools, for example, and how we resolved

20   their disclosure statement objection.  I think, you can say

21   what you want about us, but you can't say that we don't work

22   as hard as we can, every single day, to bring as many people

23   into the tent as we can and to resolve as many issues as we

24   possibly can.

25           Today is also not the closing date of a corporate

Page 32

1    transaction, when every single document has to be in

2    execution form, with signatures (indiscernible).  It is not

3    that day.  It is also not the plan supplement filing date,

4    where, as is traditional in every mega-case in which I have

5    ever participated in my career, a variety of documents that

6    do not need to be ready by the disclosure statement

7    deadline, but do need to be ready X days before creditors,

8    to make their final decision, having already absorbed all

9    the information that has been provided to them during a case

10   in many, many forms -- in this case, frankly, more

11   information and more forms and at more junctures than any

12   case in history -- is finally provided to them.

13          What it is, is the disclosure statement hearing,

14   which is a hearing under 1125 to decide whether the document

15   contains enough information to allow a reasonable

16   hypothetical investor to cast an informed vote on the plan.

17          I think it also bears mention, as of course this

18   Court knows probably as well or at least almost as well as

19   we do, that this case has more subgroups and more ad hoc

20   committees and more represented individual slices of the

21   stakeholder world, I genuinely believe, and I do not say

22   this hyperbolically, than any case in the United States

23   bankruptcy history.

24          There has never been a case, to my knowledge, with

25   something like 11 ad hoc committees, and that probably

1    understates it, because, you know, we have lots of other

2    groups.

3          For example, what's very helpful to us is that

4    this so-called codefendant group -- I don't know exactly how

5    they want to be called -- you know, is working in an

6    organized fashion and talking to us as a group and resolved

7    (indiscernible) Ad Hoc Group or the 2019, but, you know,

8    each of the many, many groups facing the situation, you

9    know, is organized and passionately, intensely involved with

10   counsel and so I think that for anybody to credibly say, by

11   the time we're done today, there just isn't enough

12   information for people to know how to vote on this plan,

13   which is the claim they essentially have to make and

14   convince the Court is true, to prevail, is just not going to

15   be a credible statement, from any party.

16         And by the time we're done, we will walk you

17   through in extreme detail why we believe that is true.  So

18   there definitely are issues that remain open, but the

19   question is, are they the types of issues with -- as to

20   which solicitation cannot commence.  We believe the answer

21   is an emphatic no, and the core stakeholder groups with whom

22   we're working hand in glove, day and night, agree with that

23   assessment.

24         The other issue, as the Court knows, because I

25   raise it at every -- virtually every hearing, is that we are

Page 34

1   so painfully aware, every day, of the costs of delay and the

2   fact that those costs translate into the loss of life or the

3   inability to ameliorate the situation as the time to get

4   money out to opioid victims is delayed and is, instead,

5   spent on professional fees and so, you know, this is not a

6   normal case, in any sense of the word, and so, that is

7   another reason why we just feel so passionately, that

8   getting the disclosure statement done and out, and then

9   working just as many hours a day as we are now, every day

10  between now and August, to resolve every remaining issue and

11  bring people into tent, is the way to do it, and that's the

12  relief we're going to be asking for today.

13          So now, let me get a little bit more granular.

14  Your Honor, the fourth amended plan is on file.  The

15  disclosure statement either has hit while I have been

16  talking/bloviating, or is going to hit any second.  It's

17  just a matter of mechanical processing.  The team has been

18  madly catching the disclosure statement up to the final --

19  as of this morning, but not final-final updated provisions

20  in the plan, and as you'll hear in a couple of minutes, we

21  have resolved a tremendous number of the disclosure

22  statement objections, and frankly, a relatively small number

23  remain.

24          With respect to what's really new and different,

25  you know, the documents that are getting on file now, in

1    large part, relate to some of the granular details of the

2    work that the Debtors, the AHC, the UCC, the MSG, and others

3    primarily have done, opposite the Sacklers to ensure that

4    the $4.275 billion, laid out in substantial detail in the

5    initial version of the disclosure statement, with the

6    payment schedule absolutely laid out in an unchanged initial

7    disclosure statement, is made money good.

8           You know, on some level, Your Honor, it's sort of

9    like a covenant package and the security documents, which

10   very often wouldn't even be known until much later in the

11   process, right.  Very often, you know, with respect to, you

12   know, a credit agreement or an exit securitization or an

13   exit securities offering, at the time of the disclosure

14   statement, there would actually be only a short form terms

15   sheet, and everything else would follow later.

16          We understand that this is not an ordinary case

17   and we were absolutely, positively, neither we nor the ACH

18   nor the UCC nor the MSG, we would not be willing to proceed

19   to this hearing -- would not, let me be very clear -- if

20   what we had today was merely what we had, as momentous as it

21   was, on March 15th facing the Sacklers, because it's not

22   only a security agreement for a credit facility, right.

23          This $4.275 billion is, obviously, you know,

24   potentially the cornerstone or capstone of the value being

25   distributed and the Court, I think, can take a lot of

1    comfort from the fact that between the four law firms on the

2    AHC side -- Akin Gump, which has been as intense and focused

3    in this case as in any case I have seen them in my 20-

4    whatever year career, and obviously all Debtors and their

5    professionals and the MSG, that, you know, there were not

6    one group, but there were four groups opposite the Sacklers

7    negotiating to ensure that we believe we have a money good

8    deal that is going to be honored and we are going to get all

9    of these payments, and frankly, I don't know that a

10   hypothetical, reasonable creditor, in fact, needs to

11   understand, you know, Section 5.2.A.C.4 of a collateral

12   package to cast an informed vote.

13          The fact that there were four intensely armed sets

14   of constituencies opposite the Sacklers ensuring that we

15   have a deal that we could believe is money good, we actually

16   think, is of inestimable value in giving people comfort.

17          And just to give sort of preview sketch, Your

18   Honor, so that hopefully you will, you know, at least get

19   comfort on a preliminary basis, while this is all for

20   confirmation -- and I'm not actually even sure which section

21   of 1129 this may relate to, frankly, on the objectors' side,

22   but we'll leave that for another day -- we have a fair

23   amount of collateral that we are quite comfortable with at

24   the end of the day, in addition to the fact, obviously, if

25   the Sacklers default, the consequences of that default, we

Page 37

1    could be -- potentially be liable to be sued for hundreds of

2    billions of dollars, we think, is obviously a risk that they

3    have decided to put away forever for 4.275 and 4.5 counting

4    the DOJ money.

5            And the notion that they would begin to pay, and

6    pay us a billion or $2 billion or $3 billion, and then

7    default and risk being sued for hundreds of billions and

8    having their lives destroyed by the fact that every

9    government, every private plaintiff will have the right to

10   sue them, as well as the estate will have the right to sue

11   them, the natural structural comfort built into this deal is

12   tremendous, but we did not remotely view it as enough.

13           And so the structure that we have, involves the

14   pledge of all of the worldwide IACs, which, as the Court --

15   or virtually all the worldwide IACs, which, as the Court

16   remembers, was a critical part of the initial deal in

17   October 2019 -- those entities are believed to have several

18   billion dollars of value, all on their own, and the net

19   proceeds come to the Debtors -- we also have separate

20   collateral from each of the ten pods that is very material

21   in value, on top of the IACs, and of course, we have the

22   personal guarantees and pledges upon which we are resting to

23   withhold the hellfire that Debtors' causes of action and the

24   termination of the injunction would otherwise release, not

25   only on the initial covered Sackler persons, but the

Page 38

1    additional covered Sackler persons as well.

2            We also have, as people can see in the documents,

3    comprehensive covenants and reporting requirements,

4    different for each of the pods, because each is different,

5    that the Debtors believe are sufficient to ensure that the

6    shareholder parties will fulfill their obligations under the

7    shareholder agreement, and while it is not for me to comment

8    on information allegedly provided to Congress or allegedly

9    disclosed by Congress, you know, it sort of cuts both ways,

10   that at least the Congressional releases suggested the

11   Sacklers have over $11 billion of wealth, which, I think,

12   gives people confidence that they have an unthinkable amount

13   at risk, were they ever to breach this deal post-emergence,

14   as, as I said before, and I'll say it once last time, not

15   only are all of the Debtors' causes of action to be snapped

16   back, including potentially very material fraudulent

17   transfer claims, but everyone's claims snap back.

18           And so, whether it is, you know, the states or the

19   privates or the munis or the hospitals or the TVPs or the

20   tribes or the PIs, I mean, the notion that the family would

21   risk thousands of lawsuits, each asserting hundreds of

22   millions, billions, or tens of billions of liability,

23   strikes us as a very, very remote proposition, which is an

24   important, inherent structural part of the deal.

25           So, Your Honor, we have also, as I hope the

Page 39

1    amended disclosure statements filed in advance of this

2    morning make clear, tried to be extremely responsive to

3    every, what I'll call actual disclosure objection that was

4    filed, and so, in response, for example, to the concerns by

5    the U.S. Trustee, we did a whole gaggle of things.  Among

6    those things were moving back the plan supplement date, as

7    requested by the U.S. Trustee, to give people more time with

8    the final documents.

9           Again, I don't really, frankly, think that very

10   many creditors, if any, are really, truly going to be basing

11   their vote on what is in the plan supplements, but maybe

12   they will, and that's not for me to say, so that deadline

13   has been moved back.  We also, frankly, gave more time than

14   we found in pretty much any mega-case.  I think if you look

15   at our reply brief at Paragraph 13, Note 4, you'll see a

16   pretty big collection of pretty well-known names you would

17   know cases, and I think we have as long or longer periods

18   now than, I think, on pretty much any case that we know

19   about, or with very few exceptions.

20          I'm not going to quote the Court back to the

21   Court, because I think that's kind of obstreperous, but Your

22   Honor, you made it very clear to us on May 20th when you

23   urged us to move forward, to call balls and strikes where we

24   needed to, and reminded everyone that cases move in stages

25   and that some things get resolved before the disclosure

Page 40

1    statement and some things get resolved between the

2    disclosure statement and confirmation, and this is what I

3    said on the first day of the case, literally, it was almost

4    my opening words, those many months ago.  We remain

5    available 24 hours a day, every single day, between now and

6    confirmation to resolve any and every issue that we possibly

7    can, and there will be a lot more documentation coming as

8    soon as it is ready or we think that those things are

9    confirmation related issues.

10          So, with respect to the Sacklers, let me now just

11   explain where we are, sort of from a deal perspective.

12   Documents are being filed as we speak.  The material

13   business issues with both the A side and the B side on sort

14   of what I'll just generally call collateral and covenants

15   have now been resolved.

16          All issues are definitely not resolved and there

17   are definitely some brackets in the terms sheets and they're

18   definitely the kinds of things that you'd expect to be done

19   between sort of now and the plan supplement filing date when

20   we will hopefully have a fully executed, obviously zero

21   blanks, zero brackets, signed set of settlement documents,

22   but the last issues got resolved only about an hour ago,

23   that we believed had to be resolved by today, and while, you

24   know, various parties will for sure -- and I invite it, in

25   fact, it's no problem at all -- we'll stop and say, for the

Page 41

1    avoidance of doubt, Your Honor, we are not yet resolved on

2    Issue A, and I'm sure the Sacklers will say that as well.

3           We understand and agree, there are some blanks and

4    brackets in what is an unthinkably complicated deal, with

5    ten different Sackler pods, but again, that is not today's

6    issue.  It is not the plan supplement date.  It is not the

7    confirmation hearing.  There's a lot of other really good

8    news, separate and apart from the disclosure statement

9    objections.

10          The settlement between the federal government and

11   the personal injury trust, I foreshadowed this last week,

12   Your Honor, that this was a potentially large open issue on

13   which the parties were productively engaged, and I like to

14   think we played a little bit of a part in helping mediate

15   them towards something that works.

16          The United States -- I won't keep saying allegedly

17   or potentially, but certainly asserts and believes that it

18   has the right to get recoveries out of personal injury

19   claimants and many other claimants who, themselves, get

20   recoveries from alleged tortfeasors and plaintiffs.  Again,

21   obviously a bunch of money that was suffered in terms of

22   losses may have been things that were reimbursed by the

23   federal government, whether it's Medicare or Medicaid or

24   veterans benefits or the like, and so the federal

25   government, potentially, was looking at reserving its rights

Page 42

```
1    to surcharge or seek subrogation or liens or other sort of

2    similar remedies against the PIs.

3              We're delighted, delighted, delighted to report

4    that issue is fully resolved and the United States and the

5    PIs have agreed that the United States will take $26 million

6    over time approximately 3.7 percent or so of the $700

7    million minimum amount allocated under the plan to the PI

8    Trust.  Those amounts are to get paid in installments.  I

9    think there's $11 or $11.1 million, I think it is, that gets

10   paid on the effective date, then there's language in the

11   schedule for paying the rest over time.  Very important

12   issue that could've actually derailed the plan and is now

13   resolved.

14             The second issue that also relates to the

15   disclosure statement, and resolves another important set of

16   objections, is another resolution between the NAS personal

17   injury claims and sort of the larger body or adult sort of

18   personal injury claims, and that has also now been resolved,

19   which also, in part, was responsible for the resolution of

20   the NAS disclosure statement objection.

21             In broad brush terms, just to update the Court and

22   everyone else and forgive me if I get the details a little

23   bit wrong.  A separate fund is going to be established under

24   the PI trust for the holders of NAS PI claim -- PI claims in

25   particular -- and funded with 6.43 percent of the amount
```

Page 43

1    distributed to the PI Trust up to an aggregate amount of $45

2    million and there'll be separate trust distribution

3    procedures, henceforth TDPs -- we'll be talking about those

4    a lot today -- for the NAS block.  Another really important

5    resolution.

6              With respect to the federal government's claims,

7    there is another really important resolution that is now

8    baked, which is, as the Court may or may not remember, since

9    we have just this case most of the time, all day, but of

10   course, Your Honor has hundreds of cases and we don't forget

11   that, the original DOJ settlement approved by the Court back

12   in the ancient days of yore did not specify a treatment for

13   the DOJ's very large -- I believe the number is $6.544

14   billion -- of unsecured claims, and the DOJ also has strong

15   views that it has the right to participate as a TPP as a

16   third party payor, in the third party payor sort of separate

17   cash pot.

18             Those issues have now also been resolved, and

19   there is now an agreed treatment for the DOJ's general

20   unsecured claims, not the forfeiture claim, which of course,

21   as the Court knows, another cornerstone of the plan is

22   treated separately with 225 of cash and admitted, agreed

23   under this plan structure, 1.775 credit, in light of the

24   fact that that money is going to state and local

25   governments, exclusively for opioid abatement, and so there

Page 44

1   is -- and the federal government and the states and the TPPs

2   have essentially agreed that for a single set of money paid

3   to federal government over several years, that satisfies

4   both their general unsecured claims and what could have been

5   another sort of deal blocker view of their right to

6   participate separately in the TPP class.  Now, they're being

7   paid under the plan for that, and that is also resolved.

8          So, big things have been happening, frankly, day

9   by day, but we are very encouraged by it.  So let me say one

10  thing before I go into the -- one of the later substantive

11  issues, which is, there are going to be several times during

12  this hearing where someone is going to correct me, possibly

13  sharply, or say that I have misstated something.  Normally,

14  I would actually find that embarrassing and I would probably

15  be ready to say, actually, you're wrong, I'm not wrong.

16         Today may not be that day, because so many things

17  are moving in such a complicated way, including things that

18  are, frankly, in some cases, outside my general area of

19  experience, that I'm pretty confident I am going to get

20  things wrong, and so, I will probably not mind at all if

21  someone says, Mr. Huebner, may I cut in, you just totally,

22  completely bungled that, like, who even hired you, I can't

23  believe they even made you a partner at Davis Polk.  And

24  that's going to be okay, because there's only one Debtor and

25  we can only do so much in a day and get our arms around

Page 45

1    things of incredible complexity.

2            So, I tread carefully in the area of attorneys'

3    fees, which is, obviously, I don't live in the mass tort

4    world, and the issues of MDLs and common benefit funds and

5    scoops and (indiscernible) shares and turnovers and things

6    like that are just not my bailiwick.  But here's my general

7    understanding of where we are.

8            One of the issues that was in, basically, all of

9    the fees (sound drops) terms sheets, and they were each

10   worded a little bit differently, and Davis Polk actually

11   didn't draft or, actually, work on any of those.  They were

12   actually presented to all of us, essentially, as a fait

13   accompli.  I'm not criticizing in any way the drafting, I'm

14   just saying that I didn't draft it, so I can't put my chop

15   on it, but all the phase one terms sheets, essentially, say

16   satisfaction or resolution of attorneys' fees in a manner

17   acceptable is a condition of the various phase one or

18   private side terms sheets.

19           And obviously, those provisions, either of which

20   is quite laconic, possibly mean different things to

21   different people, possibly could be read to mean different

22   things to different people, and there has been a tremendous

23   amount of discussion about attorneys' fees, all sorts of

24   directions, right.  People are trying to get paid what they

25   perceive is fair for their extraordinary efforts in this

1    case.  On the governmental side, I think there is an

2    interest in ensuring that as much money as possible goes to

3    abatement.  Part of it is just, frankly, to be very direct,

4    the class action lawyers are -- do this a lot.  There are

5    multiple deals going simultaneously.  There are multiple

6    deals (indiscernible) past.  There are just lots of

7    complexities in this whole issue of attorneys' fees that,

8    frankly, I don't know people often ask me why the hell I do

9    the crazy thing that I do in the "middle of a bankruptcy,"

10   but I -- this is happily not an issue I've had to deal with

11   before.

12          So, here's sort of where we are fundamentally in

13   Section 5.8 of the plan.  The public side legal fees that

14   are going to be paid out of the public side distributions,

15   and when I say public, sorry, just to be clear, Your Honor,

16   I mean non-federal governmental, right.  I don't mean

17   disrespect to federal government.  I do not have a

18   wellspring of affection for it based on this case, but just

19   for the sort of shortening of time of the hearing, public

20   means non-federal governmental claimants.

21          So, fundamentally, 5.5 percent of the

22   distributions are going to be allocated for the attorneys'

23   fees of the local municipal governments and tribes by the

24   public side creditor trust, up to a maximum of $275 million

25   in the aggregate.  For the states, there's going to be a

```
 1    fund for attorneys' fees funded up to 4.5 percent of the

 2    public side distributions, up to a maximum of $225 million

 3    in the aggregate.  Then, there's going to be something

 4    called a common benefit escrow, which is going to be

 5    established for the benefit of attorneys who performed work

 6    that is also deemed or found to have benefitted all parties

 7    in the Chapter 11 cases and the exact mechanics of this are

 8    still being worked out, but fundamentally, here's sort of

 9    the dynamic, and I'm just going to say it in plain English.

10    I'm sure someone will hate me, but there it is, right.

11              There are law firms who have been working on suing

12    Purdue for years and years, and actually have spent ten,

13    maybe even in excess of $100 million or more of "their own

14    money" and in their view colloquially, those are the firms

15    whose years of effort has brought Purdue to its knees and

16    brought it into Chapter 11 and effectuated the resolution

17    that is now seeing billions of dollars going to lots of

18    creditor groups.

19              There are other law firms who have arrived on the

20    scene much more recently, representing creditors who, for

21    example, have not filed any prepetition lawsuits against

22    Purdue, but merely -- I don't mean merely in a judgmental

23    sense, but who actually sort of joined the situation either

24    just before or very soon after the bankruptcy case got

25    filed, representing individual constituents who are now
```

Page 48

1    getting substantial sums of money.

2           And so the question of sort of how that works and

3    how that's fair, as I understand it, in the MDL or mass

4    tort, what we might call a 503(b) substantial contribution,

5    they more traditionally and for decades have a structure

6    called sort of an MDL common benefit fund, where, in

7    addition to the amounts that each claimant pays his or her

8    or its own lawyer, by virtue of agreement, there's a certain

9    amount that essentially comes off the top and goes to those

10   as determined by a Court who created the benefit for all

11   that enabled the resolution.

12          And again, it is true that some law firms have

13   been suing Purdue for many years, at tremendous cost, and

14   others have joined much more recently.  And so, where I

15   understand that we are right now with respect to this sort

16   of MDL common benefit type fund concept, it's a little bit

17   complicated.  I'm actually not going to explain the details

18   because I actually -- I'm not sure that for right now, given

19   how much we have to cover, the exact details matter, but my

20   general understanding is that the personal injury group, the

21   NAS monitoring group, and the hospitals group are all

22   agreeable, either in concept or much more specifically than

23   in concept, with overall 5 percent of the amounts that

24   otherwise would have been going to their -- not would have

25   been going -- that are otherwise slated and provided for in

1    the phase one terms sheet to our constituencies, to go into

2    this common benefit structure, to be determined by a court

3    as to exactly, sort of, where that common benefit (sound

4    drops) people who created the common benefit.

5            My understanding, as of this morning, and I think

6    they filed sort of, we're not sure this is okay with us, we

7    reserve our rights, is that the TPP group, the third party

8    payor group, is the one private side group that is not or

9    slash not yet on board with this approach, but my

10   understanding also -- again, I'm just going to be totally

11   straight -- is that these types of things tend to get worked

12   out among the lawyers who do this with one another sort of

13   all the time, and so, we've gotten as far as we can.  Calls

14   are actually ongoing even as we speak, but from the meta-

15   perspective, I would say it like this.

16           The public side, which is getting the majority of

17   the distributions, the fees and expenses for those lawyers,

18   which are quite material as the Court heard, given the

19   quantum of distributions involved -- the percentages,

20   actually, are potentially lower, frankly, than many other

21   groups, although that's not unusual.  The larger the number,

22   the lower the percentage.  Those are going to be paid

23   exclusively out of the recoveries going to the public side.

24   So, it sort of goes out to the creditor trusts, then the

25   creditor trusts pay the fees in an allocated way.

1            In general, the private sides pay their fees, just

2      as they do, once the money goes out to each of the private

3      side trusts, and the primary open issue -- and it may be

4      open in principle, really, only with the TPPs -- is whether

5      they have likewise agreed, and if not, hopefully, we'll

6      ultimately get to a deal, with this sort of 5 percent which

7      has been subdivided into a 2 percent, 3 percent for fees

8      versus expenses, but again, those are details that I'm not

9      sure are germane for today, sort of, not really turnover,

10     but allocation of 5 percent, partially to come out of, I

11     think, legal fees and partially to come out of client

12     recoveries.  It was a common benefit structure.

13            So, I'm sure that I have mangled that and I'm sure

14     that I have (sound drops) out, but because it's not -- it's

15     very, frankly -- I've never before been in a case where

16     legal fees were discussed at all in a plan of

17     reorganization.

18            Plans are normally about creditors and creditor

19     claims and allocation to save value to stakeholders, but

20     obviously, mass (sound drops) are different and I think

21     that, on the whole, many law firms were actually getting

22     less -- maybe the overwhelming majority of law firms -- are

23     getting less than their original contingency fee contracts

24     with their client would have provided, because that was a

25     social aim that some stakeholders in the case felt very

Page 51

1    strongly about.

2          So, with respect to things that I think are now

3    largely resolved or resolved enough for disclosure statement

4    purposes, I think that that is probably not a terrible

5    summary.  What I was going to do, but I first want to pause

6    and if someone else, obviously, wants to correct me or speak

7    up -- none of this is actually (sound drops) disclosure

8    statement -- say, where I'm going to go next, just a sign

9    post, because obviously, there's a lot to cover today, is

10   actually begin to walk through what's going to be in the

11   plan supplements, so that the Court and others have no doubt

12   about what's coming, and then to begin to actually march at

13   a high level through the disclosure statement, objections,

14   and what has been resolved.

15         So, one other issue, before I do that, that I

16   should raise at a conceptual level, is I think, every party

17   in this case that I have spoken to that -- spoken to, that

18   the Debtor have spoken to, I think, shares an extremely

19   strong view that there are no futures claims in this

20   situation.  We, obviously, made the decision early in the

21   case, after talking to many constituencies, not to proceed

22   with a future (sound drops), which we agreed was unnecessary

23   and inappropriate and a tremendous waste of money.

24         This is no disrespect to other cases where a

25   different approach was taken, but that was (indiscernible).

Page 52

1      This is not asbestos.  This is not a latency case, per se.

2              The issue of exactly how we deal with the very

3      remote possibility that someone comes up in the future and

4      says, wait a minute, despite the most extensive, broad,

5      technically sophisticated noticing in the history of the

6      world -- I think we spent $53 million on our noticing, and I

7      think we touched, if my memory is right, we touched every

8      single human being in America 5.6 times, and I think the

9      world has quite noticed the situation of OxyContin and

10     Purdue's alleged liability and the like, and so exactly how

11     we sort of situate the extremely unlikely, remove, and, we

12     believe, very small contingent risk of that, is something

13     that is still being worked on, and so I don't -- there are

14     still a couple of open things that we are working through.

15             So that is one of them.  So let me just pause for

16     a second before I keep going because I -- or maybe I should

17     keep going.  I'm not really sure which one, but just take a

18     breath for a second and see if any believes that I have

19     misspoken.  There are others, I'd just like -- I want the

20     distributors and co-defendants to feel hurt if I didn't

21     mention them in the big intro, so let me just address that

22     for a second and hopefully I'm totally au courant.

23             They filed a pretty serious, pretty good read

24     disclosure statement objection as we took everybody's

25     concerns.  We took their concerns very seriously.  We worked

Page 53

1    out language with them, and announced happily that we

2    resolved their objection, except we were running so fast,

3    that we actually forgot/didn't run it by the Sacklers, who

4    then said whoa, wait a second.  Like, this actually,

5    potentially impacts our releases, like what the hell.  And

6    so, then we were like, okay, we don't think there's a

7    business issue there, how about this.  And then this morning

8    starting at like 6 a.m., the Sacklers, the Debtor, and the

9    co-defendants have been working on language that, I'm quite

10   hopeful, is going to resolve the issue.

11          I don't want to over promise and I think we don't

12   have to resolve this at, you know, 10:47 this morning,

13   because if it's not already resolved, I have a very good

14   feeling that it's going to be resolved by 11:47 or 12:47,

15   but if it's not, then at the end of the day today, we will

16   certainly circle back to it.

17          Obviously, if in the end, we have to make a choice

18   between either language the co-dependents can't live with or

19   the Sacklers can't live with, we'll have to live with the

20   consequences of that and whoever is unhappy will have to say

21   their piece and the Court will have to decide what to do,

22   but I have a pretty strong feeling that that's just not

23   going to be where we end up.  I'm hopeful -- maybe that's

24   Panglossian -- but I'm (indiscernible) that it's just

25   cautiously optimistic as opposed to unrealistic.

1          So, if distributors, co-defendants didn't mean to

2     leave you out of the lineup, and we are grateful to them, by

3     the way.  It is, in fact, obnoxious and not the Davis Polk

4     way when you tell someone your objection is resolved, you

5     have agreed language, and then several hours before the

6     hearing, you say oh, wait, sorry, here are a bunch of tweaks

7     to it, which is not, again, a place we like to be, but we're

8     truly working as fast as we can, and I think everybody does

9     appreciate that, and obviously, it's just all very

10    complicated.

11         So, I'll pause for a second, but then I'm ready to

12    move on to stuff that's going to be coming in the plan

13    supplements and disclosure statement objections themselves,

14    unless the Court has question or other parties feel the need

15    at this particular juncture to jump in.

16         THE COURT:  Okay, well let me note, I have

17    reviewed the blackline of the fourth amended plan, the major

18    changes to which you've been addressing.  It's not an

19    extensive blackline.  I'd say many of the changes are simply

20    -- involve taking out bracketed -- brackets around language

21    in the third amended plan or putting in a date where there

22    wasn't one before.  My impression is that you have

23    summarized the changes, in large measure, that are not like

24    that, and there are not a lot of them, but I did have a

25    question as to the last point that you raised.

```
 1              Is there language in the blackline of the fourth

 2     amended plan, dealing with the so-called co-defendant

 3     defensive rights, et cetera?  That's the Debtors' language

 4     and you say you're still working that out or what --

 5              MR. HUEBNER:  Yeah -- happy to summarize.

 6              THE COURT:  What's the state of that language?  Is

 7     it just as you described it, that this is what you had

 8     proposed with the defendants and there's still an issue with

 9     it or is this language that you're hoping will resolve all

10     of the issues?

11              MR. HUEBNER:  Sure.  So, I think I'm going to get

12     this one right.  This is not the original language that we

13     agree to with the co-defendants.  This was the language with

14     a tweak added that we actually thought would be okay with

15     them to address the Sacklers' concerns.  We were wrong.  It

16     was definitely not okay with them.

17              Now, new language is being negotiated, literally

18     as we speak.  There's sort of emails and there was a very

19     long conference call from, like, 9:08 to 9:52 that Eli

20     Vonnegut, my partner, was on.  So, there will need to be new

21     language.  New language is already being circulated that

22     tweaks this.  Mr. Weintraub pointed out the circularity

23     between 10.6 and 10.7 and (indiscernible) -- I hope I'm

24     pronouncing that right.  I feel terrible if I'm not --

25     pointed out another issue, so this is going to be slightly
```

Page 56

1    tweaked further.

2            It will be one of those things, Your Honor, it

3    plays very bittersweet when you look at a blackline after,

4    like, not sleeping for seven days and the changes just look

5    to immaterial and you're like, how did we just, like, pull

6    four all-nighters for these changes.  I think the language

7    change will not actually look all that material, but it is

8    one that's important to people and I think we will work it

9    out.

10           So, there will be new language on this, by the end

11   of the day or we'll have to see where we are if we're not

12   (indiscernible).

13           THE COURT:  Okay.  All right, fine.  At this

14   point, I don't think we need to summarize more excessively

15   the changes between the fourth and third amended plans.  I

16   have, as I'm sure others have -- others have things to say

17   about the disclosure statement as it relates to the plan and

18   I did have a couple of questions just as to how the language

19   in the plan is supposed to work, but that really is in the

20   nature of summarizing the changes.

21           So, I think it probably does make sense to move on

22   to the next step of the hearing.

23           MR. HUEBNER:  Your Honor, let me give all parties

24   and the Court comfort about the tremendous forest of paper

25   that is actually going to be filed, we believe,

Page 57

1    appropriately in advance of the voting deadline in the form

2    of plan supplements, as I said before, which is typical for

3    virtually, certainly I think, every mega-case I know about,

4    let alone ones that I was involved in.

5          Obviously, the TDP stuff has been sort of hitting

6    the docket on a rolling basis:  the final trust agreements

7    for the master disbursement trust, the plan administration

8    trust, each of the creditor trusts will be filed by the plan

9    supplement date, as will the NewCo transfer agreement, the

10   NewCo operating agreement, the TopCo operating agreement,

11   the NewCo credit support agreement, the identity of the MDT

12   trustees and the MDT executive director, the identity of

13   NewCo's managers and TopCo's managers, the identify of the

14   plan administration trust and the PPLP liquidator, the

15   identify of the creditors trustees, if not previously

16   identified, the schedule of rejected contracts, the schedule

17   of the retained causes of action, the schedule of excluded

18   parties, the shareholder settlement agreement -- obviously,

19   that's kind of a big one -- and the restructuring (sound

20   drops) memorandum.

21         So, I do want to give the Court and all parties

22   comfort that this case has had, as I think the Court has

23   said a couple times, more information than possibly any case

24   ever.  By the time people actually have to cast votes, and

25   certainly, some number of appropriate days in front of that,

Page 58

1    there will be more documents and more information and more

2    granularity than any body could possibly know what to do

3    with.  There is nothing, I think, that is going to be done

4    in this case before an appropriate deadline without the

5    full, blazing sunlight of public filing.

6            With respect to the disclosure statement itself,

7    Your Honor, the blackline is over 350 pages long, and there

8    are probably changes on almost all of or the majority of

9    those 350 pages.  The clean is over 300 pages long.  I think

10   that is a testament to the extraordinary seriousness for

11   which, not only Debtors, but other stakeholders as well,

12   have taken the provision of information to parties in this

13   case.

14           The reply brief lays out, and I am most not going

15   to summarize (sound drops) in the reply brief, which, I

16   hope, was well done and a good read.  We think that we are

17   far, far above the bar of 1125's requirement of adequate

18   information.  Mr. Robertson, Mr. McClammy, and Mr. Klein

19   divided up the objections and they're going to go into some

20   more detail on each of them when it's time to do that, but

21   I'm going to give some preliminary observations on what

22   we've done and then I will turn the podium over, pending any

23   questions from the Court.

24           One, there are very few, like, kind of not more

25   than a handful, candidly, of unresolved disclosure statement

Page 59

1    objections in a case with over 614,000 claimants.  Even the

2    original number objections, 45, was filed by, obviously, a

3    teeny fraction of the constituencies and creditors in this

4    case, and many of those were filed to the initial disclosure

5    statement which had a bunch of holes in it, and those

6    objections were understandable, because things were missing

7    as of March 15, as we unapologetically knew they were, and

8    told the Court that we were, and we said from the very

9    beginning, that the final documents would have way more

10   information and be very different than the one filed on

11   March 15.

12           And so, many of the 45, as you'll hear in a

13   minute, are now resolved.  In fact, to be more precise, I

14   believe that 17 of the 45 have been resolved in their

15   entirety.  That's not to say that each of these parties is

16   not fully reserving their rights, which is exactly

17   appropriate, and frankly, as you'll hear in a few minutes,

18   actually what we think the rest of the objectors should've

19   done and we're kind of surprised that they didn't.  The

20   objectors who are resolved are reserving their rights, in

21   all respects, to object to confirmation.  In fact, many of

22   the disclosure statement objections are just confirmation

23   objections, and that's actually, we think, the better

24   approach.

25           A couple of them were resolved with specific

Page 60

1    assurances or promises from Debtors.  Let me mention on in

2    particular, which is the schools.  We have agreed, which I

3    think was sort of gracious on their part and appropriate on

4    our part, to engage in a mediation with the schools group

5    and several other groups in the case and Ken Feinberg,

6    which, of course, the Court remembers perfectly well, is one

7    of our two mediators from phase one and has agreed to assist

8    us in a one-day mediation to see if we can work something

9    out with the schools, who -- I don't think anybody is saying

10   that the schools are not unthinkably worthy as recipients of

11   value towards abatement and education at working on opioid

12   issues and opioid addiction prevention at the school and

13   pediatric level is not of inestimable value, but there are

14   just complex issues among governmental entities about how

15   it's done, and who gets what, and what the structure is, and

16   sort of that -- and that kind of thing, so that's why it's

17   not resolved yet.

18           It is resolved today for disclosure statement

19   purposes and we appreciate the thoughtful approach taken by

20   multiple parties, including, I actually believe, if I'm not

21   wrong, and Mr. Maclay of the MSGE Group, actually helped

22   facilitate the resolution of putting a one-day mediation in

23   place in exchange for not having a rodeo today with the

24   school, so I thank him for those efforts, and obviously, Mr.

25   Feinberg, who has agreed to take another day out of his life

Page 61

1    when thought that his eleven-month sort of tour of duty in a

2    difficult space was over, to see if something can be popped

3    out there, also gets, I think, gratitude from many parties.

4           With respect to the objections that were resolved,

5    they include the insurer objection, which was by Steadfast,

6    American Guarantee and Liability, and Navigators Specialty.

7    The West Virginia objection, which again, like all the

8    others -- I'm not going to say it each time -- fully

9    reserves their rights on confirmation, as all the adjourned

10   disclosure statement objections largely do.  And again,

11   that's totally appropriate and we appreciate it.

12          The NAS committee is resolved-resolved.  As the

13   Court heard, they now have a deal sort of as for the 6.43

14   percent sub-trust within the PI world.  The public schools,

15   I could describe, I won't repeat myself, Bridge House -- I'm

16   not reading docket numbers.  I can, if that's helpful to the

17   Court, but I wasn't planning to.  Carpenter Health, the City

18   of Chillicothe, the City of Covington, the Four Winds Tribe,

19   the Parish of DeSoto, the Northwestern Band of the Shoshone

20   Nation, the coroner of St. Bernard passion -- sorry, St.

21   Bernard Parish, the Cherokee Nation, the distributors,

22   manufacturers, and pharmacies, we already discussed at

23   length and so we'll have my prior description, maybe a

24   description of that, and then Johnson & Johnson's joinder.

25          With respect to the U.S. Trustee, and again, we'll

Page 62

1    do --

2            THE COURT:  Can I just --

3            MR. HUEBNER:  -- the sort of specific --

4            THE COURT:  Can I interrupt you for a second, Mr.

5    Huebner?  You've just gone through a list and it's also

6    referenced in the Debtors' reply to the disclosure statement

7    objections of objectors who have either withdrawn their

8    objection to the disclosure statement in full or withdrawn

9    it, obviously, with a reservation of rights with respect to

10   the right to object to confirmation.

11           Do any of those parties disagree with that

12   characterization of where they stand at this point, with

13   regard to the disclosure statement?

14           MR. ALEXIS:  Your Honor, if I may, Ralph Alexis of

15   the firm of Porteous, Hainkel, and Johnson in New Orleans.

16   Your Honor, we represent the City of Covington, the Parish

17   of DeSoto, the City of Chillicothe, the Coroner of St.

18   Bernard Parish, the Four Winds Louisiana Cherokee, the

19   Northwestern Band of the Shoshone Nation, and the Carpenter

20   Health Network.

21           And Your Honor, we confirm that we have withdrawn

22   our objections because, based on discussions with counsel

23   for the Debtors, we were able to confirm in writing with

24   them that our clients were properly solicited in their

25   respective classes, so we withdraw our objection to the

Page 63

1    disclosure statement and we do respectfully reserve our

2    rights to object to the plan itself or to any motion to

3    confirm the plan as a whole.

4              And I want to say, Your Honor, counsel for the

5    Debtors were very gracious and generous in their time in

6    talking to us and it's sincerely appreciated.  Thank you.

7              THE COURT:  All right, thank you.  Again, I don't

8    -- I just want to make sure that no one who was

9    characterized as having withdrawn their disclosure statement

10   objection disagrees with that, and that characterization

11   included Mr. Huebner's statement that, obviously, rights

12   with respect to confirmation have been reserved, where

13   they've been reserved.

14             Okay.  Why don't you go ahead then, Mr. Huebner?

15             MR. HUEBNER:  Sure.  So, Your Honor, as we'll talk

16   about in a second -- maybe I should just sort of turn to it

17   now -- we, obviously, have, I hope, been very responsive

18   both to the requests and concerns of the Court and also

19   where we (indiscernible) to the U.S. Trustee, so let me

20   first -- which I'm sure was not lost on any party -- that

21   Article 3 Section AA of the plan now has a 19-page, single-

22   spaced, I believe, description called "Evaluation of the

23   Settlement with the Sackler Families."

24             THE COURT:  You mean --

25             MR. HUEBNER:  As I said at the last --

1          THE COURT:  -- of the disclosure statement, not of

2      the plan.

3          MR. HUEBNER:  Correct.

4          THE COURT:  Right.

5          MR. HUEBNER:  Yes, I'm sorry.  Did I say plan?  I

6      certainly meant disclosure statement.

7          THE COURT:  That's fine.

8          MR. HUEBNER:  As I described at the last hearing,

9      it was a very good reason we did not file this previously,

10     until we knew that we, at least, had a sufficient agreement,

11     in principle, to proceed to a disclosure statement with the

12     Sacklers.  Laying out in technicolor for the Sacklers and

13     the whole world to see exactly what went into our thinking

14     and an appropriate, high-level assessment of the strengths

15     and weaknesses seemed decidedly ill advised in terms of the

16     type of negotiation we were in the middle of having with

17     them, which, candidly, has been pretty difficult and even

18     unpleasant at times, to be candid.  No blame on any party.

19     It's just a simple description of the facts.

20          We're going to make, hopefully, life easier for

21     the Court and other parties.  I actually believe that we

22     went -- essentially went through the TMT Trailer factors.

23     As the Court might imagine in the hundreds of special

24     committee meetings, they were always guided by what the

25     applicable law is and applying the facts to the law and

Page 65

1    being comfortable that we were very, very well within the

2    borders of the 9019, sort of, approval rubric, and so there

3    wasn't any reason not to walk the world through sort of what

4    we believe the applicable law is and how the facts as we saw

5    them applied to the law.

6              While I otherwise express a view on it, the fact

7    that the Sacklers -- and as we promised we would do --

8    themselves have filed their sort of initial summary views of

9    the positions they would take, and certainly others are

10   going to take a diametrically opposite view, this is exactly

11   -- it sort of proves the point.  We have defendants on the

12   one hand who believe passionately that they will deploy all

13   of their billions of dollars to sort of fight us to the

14   bitter end, because they believe they did nothing wrong and

15   have no liability.

16             We have a tremendous number of stakeholders who,

17   themselves, have tremendous resources, including those of

18   state and federal governments, who believe equally

19   passionately that great wrong was done here and that value

20   was taken out where it should not have been and they're

21   going to use those resources to extract the value that they

22   believe appropriate to balance the recompense for that, and

23   obviously, as the Debtors fiduciary, our job is, ultimately,

24   to listen to all that and if we can come to a settlement

25   that we believe balances those -- all of those concerns

Page 66

1    under TMT Trailer, we bring it forth to sharehold -- to

2    creditors for a vote, and that's exactly what we have done.

3            With respect to Your Honor's other comments, I was

4    sort of right there with you when you were citing the

5    caselaw.  Liquidation analysis is actually an issue we've

6    thought a lot about and given that that hearing was running

7    long, I decided not to engage in an overly long intellectual

8    colloquy about the place of third-party claims in doing a

9    best interest analysis, but in any event, I think there is

10   no doubt that the liquidation analysis now clearly takes

11   that possibility into account and cross references and is

12   express about the fact that direct claims would not be

13   released.

14           If you look at the disclosure statement Section

15   IV.b, and at the -- at 5 Note 3, you will see that now quite

16   clearly laid out for the parties.  This is not really the

17   time, although as part of colloquy, it makes sense to

18   explain why we think that, even with direct claims retained

19   by third parties, there is just no possible legitimate

20   question that, sort of, people are doing better under this

21   plan than they would under an alternative, but obviously, if

22   we need to get into the merits of that, we'll do that at

23   confirmation, certainly not today, because it is a

24   confirmation burden to satisfy 1129.  Today's burden is to

25   satisfy 1125.

1           So, let's, then, I guess, turn for just a high-

2     level flyby to the remaining objections, although, I should

3     also note, I think I said before, last time, but hopefully

4     the U.S. Trustee is smiling benignly upon us, since we put

5     in -- (indiscernible) remember the exact, like a 16-page or

6     something, plain English executive summary with charts and

7     grids and things like that.  Their point, ironically, was

8     not that there was too little information, but there was

9     actually too much information, so much so, that it was

10    difficult for maybe hypothetical, reasonable individual

11    voter to synthesize and figure out what this was about.

12           And so, we just wrote a whole new section of the

13    disclosure statement.  Rather than arguing about it, we just

14    did what we could to address it.  And so, we feel pretty

15    good that anything that was an actual disclosure statement

16    objection to the adequacy of the disclosure, we resolved, in

17    some cases with two pages, in some cases, with 10 pages, in

18    some cases, with 20 pages, and of the stuff that's left,

19    just isn't a disclosure statement objection at all and,

20    candidly, we kind of wish that other parties would've taken

21    the thoughtful approach of the schools and West Virginia and

22    the distributors, who have really, serious confirmation

23    objections, as to which they are not satisfied.

24           You're allowed to not like the plan.  You're

25    allowed to vote against the plan.  You're allowed to object

Page 68

1    to the plan.  But that's going to happen in July or August.

2    Today's question is only, does the plan have enough

3    information for a hypothetical, reasonable creditor to cast

4    a vote.  And so, the remaining objections, basically -- I

5    don't mean to be unkind -- but they're just all confirmation

6    objections.  It's just that simple, and many of them, in

7    fact, right in their pleading, they say, this is, in

8    essence, a confirmation objection or this is a confirmation

9    objection.

10          And then there's that, like, thin little tendril

11   that they try to throw across the chasm to say, but our

12   confirmation objection is so awesome, so unthinkably great,

13   that this plan should not even be allowed to go out to

14   creditors for them to cast a vote about.  People don't even

15   get their day in court.  They shouldn't even be allowed to

16   vote.  No voting.  It's so illegal, that I just get to stop

17   it right now.

18          Well, the problem with that is that it virtually

19   never, ever happens, and for very good reason, which is the

20   standard, is almost impossible to meet, that the plan is so

21   fatally flawed, so unthinkably unlawful, that confirmation

22   is "impossible."  The word is literally impossible, in In

23   re:  Cardinal Congregate I, 121 B.R. 760 at 764, which is

24   why people just can't put together string cites, ever, of

25   large or even medium sized or even small sized cases, where

Page 69

1    this objection actually prevailed, because it's like a 1 out

2    of 5,0000 thing where a court actually believes that the

3    plan is so insane, lunatic, illegal that it's just a waste

4    of time to send it out at all, and I would respectfully

5    submit that there is just no universe in which that is the

6    case.

7            Let me just spend two minutes dealing with a

8    couple of our issues.  I actually, really went back and

9    forth and forth and back about whether to discuss the

10   confirmation objections embedded in supposed disclosure

11   statement objections at all, but since at the end of the day

12   that's all the objectors have to talk about, it seemed at

13   the end of the day, to say at least something was probably

14   the better approach.

15           I'm going to be quite brief.  Obviously, we've

16   reserved many trial days for this at confirmation, and the

17   Court can be quite confident that win, lose, or draw, we are

18   going to be very ready to litigate with everything we have,

19   the propriety of this plan, which we believe in quite

20   strongly.

21           With respect to third-party releases -- and I'm

22   not going to attribute objections to individual parties

23   where I can help it, because these are sort of conceptual

24   issues and it's just about the law.  The law is very clear

25   that third-party releases and their propriety is a

Page 70

1    confirmation issue.  I don't think that's open to question.

2    It's also pretty clear to me that White Plains and Manhattan

3    and Connecticut and lots of other places are actually in the

4    Second Circuit, where the law is also clear, as it is clear

5    in the majority of circuits, which I don't think anybody

6    disagrees with.

7            They don't always like to cite Metromedia.  They

8    like to, sort of, pretend we're somewhere else, but we're

9    just not, and we wouldn't have been, in any circumstance,

10   because that's just not where these companies are.  So, I'm

11   not going to quote the Court to the Court, because you've

12   actually expressed views at multiple hearings already about

13   third-party releases as, obviously, has the judge who heard

14   the appeal in this case, both in this case and in other

15   cases, including one from this Court, except to say, that

16   the notion that the third-party releases in this case, in

17   this circuit, are inherently, unthinkably illegal, is just

18   simply not -- it's just not credible, and I'll just leave it

19   at that.  I won't be sharper than that.

20           There is no police power exception in Metromedia.

21   There is no caselaw supporting that claim, and if you

22   actually go and read the cases cited by the objectors, and

23   we really hope you do, all they do is prove that, as you

24   read each one with a highlighter and a pen in your hand.

25           With respect to whether we satisfied Metromedia as

Page 71

1    this being, sort of, extraordinary circumstances and a

2    contribution by settling parties without whom the plan could

3    not proceed, again, I'll leave that to confirmation but I

4    would say this.  Show me a case where somebody paid $4.5

5    billion into the estate that likely constituted the

6    substantial majority of the consideration going to

7    stakeholders.  Show me those facts and then show me a court

8    that found that it wasn't exceptional circumstances that

9    satisfied Metromedia.

10          With respect to subject matter jurisdiction, Your

11   Honor, we'll leave that for confirmation.  I think that's

12   way -- it actually gives more time than I think is

13   appropriate at a disclosure statement hearing to go into

14   sort of the technical subpoints in the confirmation

15   objection filed at the disclosure statement hearing.

16          But Metromedia's words are rare circumstances or

17   unique.  If this case is not unique and doesn't present rare

18   circumstances, then I don't know what case ever could

19   satisfy that standard.  With respect to classification, Your

20   Honor, again, I'll just do a high level and sort of see what

21   we -- how much time we want to spend on it going forward.

22   It just -- it's among the most classic of all confirmation

23   issues, right, 1129 requires satisfaction of the 1122, and I

24   understand quite well that our main opponent at, virtually,

25   every hearing in this case and almost all hearing our only

Page 72

1    opponent, why the nonconsenting states would love to be in

2    their own class so that if, as I very much hope and trust,

3    will not be the case by confirmation, you know, slightly

4    more than half of the states, themselves, are not there,

5    they can say that their class voted no.

6            I get it.  They want to gerrymander the plan.

7    Like, I don't begrudge them effort.  The problem is, it's

8    just not the law and they're not the Debtors and don't get

9    to have their own class because they would like to have

10   their own class to be able to say that their class voted no.

11           Whether their class voted no actually would change

12   the outcome in confirmation.  There's another very

13   complicated issue that we're definitely not going to discuss

14   today, but again, this Court does not need me to describe

15   the caselaw under 1122 in the Second Circuit, and if

16   dissimilar claims can be classified together and similar

17   claims can be classified together only for a legitimate

18   reason.

19           We hit it at great length in our reply.  I think

20   I'm just going to rest on that, because we've got a lot to

21   cover, but at the end of the day, there's just nothing more

22   classic as a confirmation objection in classification and

23   the notion that our classification is so illegal that it

24   makes conformation "impossible."  We urge the Court to deny.

25           I would also note, since it does matter what other

Page 73

1    Courts have done in other mega-cases, including other mega-

2    cases in which these very parties are currently involved,

3    that what we're doing is quite common, including in PG&E in

4    California and Insys, other currently pending -- actually, I

5    guess, (indiscernible) there, too -- opioid case.

6           So, I'll leave it at that.  the notion that all

7    the public side agreed to go into NOAT, to be part of the

8    NOAT TDP, to work out who gets what within NOAT, to have

9    NOAT be a single pot, and then to say, but no, no, no.  But

10   for voting, we're radically different and so much of your

11   plan is totally illegal and needs to be buried right now and

12   no one gets to have a view on it, it's just not something

13   that we can agree with.

14          With respect to the TDPs, I'll leave that to Mr.

15   Klein and Mr. McClammy.  This is the objection of Mr.

16   Jackson.  Suffice it to say that they'll have a lot to say

17   on that.

18          And then the best interests test, again, you know,

19   this is Professor Lipson, who, I think, filed a pro hac and

20   joined our case a few weeks ago representing a single tort

21   claimant, Mr. McClammy will address that, but again, there's

22   no -- there's nothing more classic as a confirmation

23   objection than, especially, a single part out of 614,000

24   alleging a plan can't pass the best interest test, which,

25   obviously, is among the most classic of all 1129 issues.

1          So, at its face, and with this, I will close.  We

2    have added, for disclosure and more sections and more pods

3    and more charts and more language and more plain English and

4    more executive summaries than I think have been -- I don't

5    know how to end that sentence.  I'll just back out of there.

6    We have had an incredible amount of all those things, and we

7    believe that in more than some places, we believe that the

8    tiny, tiny number of remaining disclosure statement

9    objections are all classic confirmation objections.

10          Frankly, while we hope and expect that every one

11    of those parties will be satisfied by the time we get to

12    confirmation in whole or part, we stand more than ready

13    along with overwhelming number of stakeholders and

14    stakeholder groups who support this plan, to defeat every

15    one of those objections at confirmation.  We would not be

16    proposing a plan that we and many other key stakeholders did

17    not believe was lawful, and the notion that it is so

18    impossibly illegal that no one should be allowed to form a

19    view on it, vote on it, or have their objections actually

20    heard and responsibly addressed at a confirmation trial, is

21    obviously a position with which we passionately and

22    strenuously disagree.

23          So, Mr. McClammy, I think, if I'm right, that I

24    now pass the podium to you for a slightly more, sort of,

25    detailed connectivity to maybe some of the objections

Page 75

1    (indiscernible) that you're handling.  If I'm wrong, please

2    correct me, but if I'm right, I'll just smile benignly and

3    put myself on mute.

4              MR. MCCLAMMY:  Good morning, Your Honor.  Jim

5    McClammy of David Polk on behalf of the Debtors.  Are you

6    able to hear me, Your Honor?

7              THE COURT:  Yes, I can see you, too.

8              MR. MCCLAMMY:  Great, great.  Thank you, Your

9    Honor.  As much as I would like to correct Mr. Huebner,

10   (indiscernible) the attorney for some of the specific

11   objections, but I also wanted to take care of an evidentiary

12   matter, and it makes sense to do that.  We have Ms. Finegan

13   available on the video and she filed a supplemental

14   declaration in connection with the notice program for

15   confirmation, if that works.

16             THE COURT:  Okay.  You're asking to have that be

17   admitted as her direct testimony?

18             MR. MCCLAMMY:  Exactly, Your Honor.  Her

19   declaration sets out at Docket No. 2917, some of the

20   additional notice that has been requested, both by the

21   shareholders and other parties here with the understanding

22   that even with how broad the bar date notice was at that

23   time, we had not yet reached full agreement among the

24   various parties with the shareholders, and there was no

25   description of the shareholder releases at that time.

Page 76

1           So, in addition to making sure that we are serving

2    everybody who filed a proof of claim in this matter, we also

3    have some additional publication notice, both here in the

4    United States and Canada and outside of the U.S. as well, as

5    described in Ms. Finegan's declaration.  I'm happy to walk

6    Your Honor through the details, but otherwise, I would ask

7    that that declaration be admitted into evidence.  As I

8    mentioned, Ms. Finegan is here and available on the video

9    conference, if there were anyone that had questions.

10           THE COURT:  Okay.  Well, let me swear in Ms.

11    Finegan and ask her to confirm her declaration.  Would you

12    raise your right hand, please.  Do you swear or affirm to

13    tell the truth, the whole truth, and nothing but the truth,

14    so help you God?

15           THE WITNESS:  Yes, I do.  This is Jeanne Finegan.

16           THE COURT:  And it's F-I-N-E-G-A-N?

17           THE WITNESS:  That's correct, Your Honor.

18           THE COURT:  Okay.  So, Ms. Finegan, you submitted

19    a second supplemental declaration in connection with the

20    Debtors' request for approval of solicitation procedures,

21    knowing that it would be your direct testimony today in

22    support of that motion or application.  Is there anything

23    that you would wish to change?

24           THE WITNESS:  No, Your Honor.

25           THE COURT:  Okay.  So, we're not really that point

1  of the hearing to deal with solicitation procedures.  I

2  don't know whether anyone, however, thinks that they would

3  want to cross examine Ms. Finegan, and maybe it makes sense

4  to ask that.  You don't have to necessarily commit to it,

5  but if you think you might, you should let me know.

6  Otherwise, I think I'll excuse her.  I don't have any

7  questions on her declaration and I'd be prepared to admit it

8  into evidence.

9          Mr. Troop?

10          MR. TROOP:  Your Honor, just a question.  I just

11  want to be clear because I -- and I'm sorry, I was off

12  because I was trying to (indiscernible) because I wasn't

13  expecting to talk now.

14          THE COURT:  We can keep her here.  You don't have

15  to -- we could come back to this.

16          MR. TROOP:  No, I don't want to keep Ms. Finegan

17  here if she doesn't need to be --

18          THE COURT:  Okay.

19          MR. TROOP:  I just have a simple question.

20          THE COURT:  All right.

21          MR. TROOP:  Which is, and I -- she's sworn for

22  this, but anyone on the Debtors' side can answer it.  I just

23  want to make sure that the $8.1 million that's estimated for

24  the solicitation costs, in fact, includes all the

25  publication notices.  Because in the paragraph on -- in the

1   paragraph talking about publication notices, it's the only

2   part that doesn't seem to have a specific dollar amount that

3   was associated with it, and so I just wanted to make sure

4   that it wasn't -- that's included in the total.  That's all.

5           THE COURT:  Can you answer that, Ms. Finegan?

6           THE WITNESS:  This is Jeanne Finegan, and yes,

7   that total cost includes all publication elements.

8           THE COURT:  Okay.

9           MR. TROOP:  Thank you, Ms. Finegan.  Your Honor, I

10  won't be cross examining, so (indiscernible).

11          THE COURT:  Does anyone else have a desire to ask

12  Ms. Finegan any questions on her declaration?  You don't

13  have to do it now, you just have to tell me now, in which

14  case, I'll ask her to stay on the line for when it would be

15  appropriate to do so, when we turn to that motion.

16          Okay, you can sign off, Ms. Finegan.

17          THE WITNESS:  Thank you, Your Honor.

18          THE COURT:  And the declaration, the second

19  supplemental declaration, is admitted, Mr. McClammy.

20      (Finegan Declaration Admitted Into Evidence.)

21          MR. MCCLAMMY:  Thank you very much, Your Honor.  I

22  appreciate that.  And then, I guess with Your Honor's

23  guidance, I can turn to some of the individual objections.

24  I would --

25          THE COURT:  Well, why don't --

Page 79

```
 1              MR. MCCLAMMY:  -- anyone handling --

 2              THE COURT:  I mean, you put them in order as to

 3    the exhibit to the reply.  Many of those in front have been

 4    resolved, but the first one is not, I gather, been

 5    completely resolved, which is the U.S. Trustee's objection

 6    to the disclosure statement, and there are some other

 7    disclosure statement objections that "adopt" or join in

 8    those objections, so why don't we go with that one, first.

 9              MR. MCCLAMMY:  Thank you, Your Honor.  I believe

10    Mr. Robertson will be handling the U.S. Trustee's objection.

11              THE COURT:  Okay, and then after that, we can go

12    in the order that you want to go in, but I'd like to focus

13    on specific ones in each case.

14              MR. MCCLAMMY:  Certainly, Your Honor.

15              MR. ROBERTSON:  Thank you, Your Honor.

16    Christopher Robertson, Davis Polk and Wardwell, on behalf of

17    the Debtors.  Can you hear me clearly?

18              THE COURT:  Yes.

19              MR. ROBERTSON:  Thank you, Your Honor.  So, for

20    the U.S. Trustee's objection, there are a number of points I

21    would categorize as --

22              THE COURT:  Can I interrupt you, Mr. Robertson?

23    Can I interrupt you?

24              MR. ROBERTSON:  I'm sorry, go ahead.

25              THE COURT:  I'd like to hear from the U.S. Trustee
```

Page 80

1    as to what the office is still pursuing, and it may be that

2    I can deal with it.  I've reviewed the objection.  I've

3    reviewed the reply.  I've reviewed the plan and disclosure

4    statement.  So, that may be most efficient here, and then

5    you can -- if there's something that we've left out, you can

6    chime in.

7              MR. ROBERTSON:  That's perfect, Your Honor.

8              THE COURT:  Okay.  So, I think it's going to be

9    Mr. Schwartzberg from the U.S. Trustee's Office.  I think

10   you're on mute, sir.

11             MR. SCHWARTZBERG:  I apologize.  I hit the wrong

12   button.  Paul Schwartzberg on behalf of the U.S. Trustee,

13   Your Honor.  Good morning.

14             THE COURT:  Good morning.

15             MR. SCHWARTZBERG:  If there's a general noise in

16   the background, an air conditioner, I turned it off --

17             THE COURT:  I can't hear it, so that's fine.

18             MR. SCHWARTZBERG:  Okay.  It's bugging me, Your

19   Honor.  So, Your Honor, in regard to the disclosure

20   statement, the U.S. Trustee does acknowledge various and

21   many of our objections have been resolved.  We do have a few

22   remaining ones.  In regard to the disclosure statement, the

23   U.S. Trustee has a concern in response to the shareholder

24   releases that were just set forth on the May 24th disclosure

25   statement that was filed.  Those shareholder releases were

Page 81

1   set forth for the first time.

2          I have not had an opportunity to look at what was

3   filed today or this morning, but in regard to that, the U.S.

4   Trustee believes a major part of the case is the shareholder

5   releases, and investors should know who's being released and

6   if the parties that are being released are contributing to

7   the plan, and it is unclear from Section 10.7 of the plan

8   and disclosure statement who, in fact, is being released.

9          Although, the shareholder releases clearly include

10  the Sackler family members, which include the descendants of

11  Raymond and Mortimer Sackler, and their trusts and related

12  trusts and related parties, however, the shareholder

13  releases also include persons identified on the annex to the

14  settlement agreement and it's really unclear who these

15  people are going to be.  If it's not the Sackler family

16  members and their trusts and related parties, the disclosure

17  statement should identify who these parties are.

18          Simply, it's unclear if everyone receiving release

19  is contributing to the plan.  The disclosure statement is

20  silent on who, in fact, is contributing to the plan and if

21  there are released parties who are not contributing to the

22  plan.

23          A hypothetical investor should know who's being

24  released and what, if anything, they're contributing to

25  receive that release.  That is not in the disclosure

Page 82

1    statement.  Also, Your Honor, the parties providing releases

2    include not only the releasing parties, but "all other

3    parties."  Releasing parties are defined to include, among

4    other things, all holders of claims, but it's unclear who

5    and why --

6              THE COURT:  I'm sorry.  I want to make sure I

7    understand.  I don't -- are you reading from the definition

8    of releasing parties or the release provision of the plan?

9              MR. SCHWARTZBERG:  Your Honor, that, I believe --

10   and since it just popped up -- is in the definition of

11   releasing parties.  And just -- Your Honor, so you don't

12   think I'm bringing -- because this is an issue that came up

13   on May 24th -- I did raise this with -- I apologize, Your

14   Honor.  It's in the definition -- it's in the Section

15   10.7(b).

16             THE COURT:  So, I'm sorry.  That language says

17   "shall be released by the releasing parties."

18             MR. SCHWARTZBERG:  It says, "on or behalf of the

19   releasing parties or any other persons."

20             THE COURT:  But it's only -- but the release is by

21   the releasing parties.  If they have a claim on behalf of

22   some other person, they're releasing it.  But the release is

23   given by the releasing parties, no one else.

24             MR. SCHWARTZBERG:  Your Honor, that -- if that's

25   the way it's defined, that would be helpful.  I had asked

Page 83

1    the Debtors this on the 25th and I was waiting for a

2    response and I hadn't gotten that response yet.

3              THE COURT:  Well, is that right, Mr. Robertson --

4              MR. ROBERTSON:  So, Your Honor --

5              THE COURT:  -- I mean, it's the releasing parties

6    that are getting the release.  They may --

7              MR. ROBERTSON:  So, Your Honor --

8              THE COURT:  They may have claims held on behalf of

9    other parties, but obviously, if they hold those claims,

10   they have the ability to release them.  If they don't, they

11   don't, right?  Am I missing something there?

12             MR. HUEBNER:  I wouldn't say -- Your Honor, I'm

13   going to jump in for a second, with apologies to Mr.

14   Robertson.  I wouldn't say you're missing something.  I

15   would say that I'm not sure that's the intent of the

16   provision.  I think Mr. Schwartzberg actually has it right,

17   which is that the deal that we struck was that we would seek

18   to obtain a release with respect to all other persons as

19   well, because the Sacklers are paying $4.275 billion and

20   they very much plan, expect to be done forever with this

21   chapter.

22             And while it's not easy to identify the category

23   we're talking about, if somehow there is someone who is not

24   a holder of a claim or interest against Purdue but is an

25   other person, they would like that and we have agreed to

Page 84

1    submit an order that provides for that being resolved and

2    released as well.  As we are going to be very prepared to

3    show you at confirmation, this is not atypical in mass tort

4    cases and there are other sort of famous cases you would

5    know that have done that as well, but again, it's just not a

6    today issue.  This is the disclosure statement hearing, and

7    the fact that we've been talking about --

8             THE COURT:  Well, given that I was confused about

9    it as well as Mr. Schwartzberg, I think you need to make it

10   clear in the disclosure statement that it covers even those

11   who are not releasing parties.

12            MR. HUEBNER:  Okay.  Yeah, that we could certainly

13   do.  Send us a disclosure statement objection, Your Honor,

14   as you know, we only have one answer, which is, let's add

15   more disclosure and make it more clear, so maybe it's a

16   parenthetical that says, even those who are not holders

17   (indiscernible) or something like that, so we'll figure

18   something out that works, that makes it clear, and if by the

19   time we get to confirmation, someone is unhappy about that,

20   we will present argument and the Court will decide.

21            THE COURT:  Okay.

22            MR. SCHWARTZBERG:  Your Honor, can I further that

23   point in terms of -- regarding the disclosure?  It's

24   unclear, then, if all other persons include people who are

25   not voting on the plan, who are receiving a distribution

1    under the plan.

2            THE COURT:  Well, that's clear.

3            MR. SCHWARTZBERG:  I'm still not --

4            THE COURT:  That's clear, because that applies to

5    the 1126 no distribution folks.

6            MR. ROBERTSON:  If I could jump in for one (sound

7    drops).  It's Chris Robertson on behalf of the Debtors.  Just

8    to address that point that Mr. Schwartzberg brought up

9    earlier, the annexes that are referenced in the shareholder

10   release party definition have been filed as of this morning.

11   They're attached to the amended disclosure statement as is a

12   detailed settlement terms sheet describing the terms of the

13   shareholder settlement.

14           THE COURT:  So, each of the released parties, the

15   parties in addition to the shareholders, they're describe

16   now in the exhibit or the annex?

17           MR. ROBERTSON:  That's right.  They're -- that's

18   right.

19           THE COURT:  They're listed.  Okay.

20           MS. LIBBY:  Your Honor --

21           MR. ROBERTSON:  That's correct.

22           MS. LIBBY:  Sorry.  Your Honor, Angela Libby on

23   behalf of the Debtors.  (indiscernible) jumping in.  I just

24   want to be very clear on this.  There's a definition, in the

25   plan, that describes the categories of people who are being

Page 86

1    released.  It is kind of standard categories of the types of

2    people that you would sort of be expecting to be released.

3    That category is in the plan.  I think it's laid out in

4    terms of categories.  In addition, as part of that

5    definition, there was a reference to annexes and a specified

6    list of people who were, sort of, in addition to those

7    categories, and in it -- it's fair to say that that was not

8    filed before this morning.

9            It is those -- that exhibit with those additional

10   lists of specified parties in addition to categories in the

11   definition that were filed as of this morning.

12           THE COURT:  Okay.

13           MS. LIBBY:  Thank you, Your Honor.

14           MR. SCHWARTZBERG:  Your Honor, and I'd just like

15   to follow up, and maybe I didn't understand what Your Honor

16   had indicted, but it still is not clear to me that the

17   disclosure statement is clear on who all other persons are

18   and Your Honor had referenced something, but I'm not exactly

19   sure if it referenced or answered my question, if people who

20   are not actually voting on the plan, are being forced to

21   provide releases.

22           MR. HUEBNER:  Yeah, so let me help, Mr.

23   Schwartzberg.  Again, we owe you a huge apology.  We know

24   how many cases you deal with and documents are literally

25   hitting the docket in volume.  We will further clarify it.

Page 87

1    That's what I was trying to say before and I was clearly

2    inarticulate.

3            As the judge said, he, himself, was snagged by our

4    ambiguity and our less than perfect drafting, and we will

5    fix that imperfect drafting, add a term (indiscernible) or

6    something that says, including parties who are not holders

7    of claims or interests against the Debtors -- not sure I'm

8    getting that exactly right, although Angela -- Ms. Libby

9    rarely nods when I say things, and she looks like she's

10   nodding, so maybe my (indiscernible) is not far off the

11   mark, so we will make it very clear and we will run the

12   language by you, although, I think it is as simple as saying

13   something like including the persons who are not holders of

14   claims or interests against the Debtors, and then, there

15   will be no ambiguity whatsoever, and if people are unhappy

16   about the legality of that at confirmation, we will

17   (indiscernible).

18           MR. SCHWARTZBERG:  Obviously, we observe our right

19   to getting that information, and also looking at the annexes

20   that were filed.  But with respect to the releases, Your

21   Honor, the United States -- in regard to the releases, the

22   United States reserves its rights for confirmation and those

23   were our disclosure statement objections to the releases,

24   mostly due to this -- the information that was filed on the

25   24th.  We have a few other issues, Your Honor --

Page 88

1            THE COURT:  Well, let me just cover this one point

2       before we go further.  I don't think it's a disclosure

3       statement requirement to list the contribution by each party

4       who's getting a release.  That is a confirmation issue as

5       opposed to a disclosure statement issue, and similarly, I

6       believe that when one gets to the categories of agents or

7       persons acting on released parties' behalf, they do not have

8       to be specifically identified, but it has to be clear who is

9       getting the release.

10           Now, I had a question pertaining to the plan and

11      disclosure statement related to that point, though.  The

12      plan has a defined term, excluded parties, and there's a

13      reference to a schedule of excluded parties.  It's not clear

14      to me how that term, though, excluded parties, ties into the

15      term released parties.  I don't see any language, maybe I'm

16      missing it, that says that a released party is everyone that

17      fits into this definition or now that we -- it's clear that

18      -- who, generally, the released parties are, I didn't see an

19      exception that said, except that it won't include the

20      excluded parties.  Is that contemplated?  Because I didn't

21      see that in the plan.  If not, what is the purpose of the

22      definition, excluded parties?

23           MR. HUEBNER:  So, Your Honor, it's definitely

24      contemplated.  I'm very much hopeful that either Mr.

25      Robertson or Ms. Libby is about to come off mute and point

Page 89

1    you to where in the document the excluded parties are

2    actually excluded from the releases, because otherwise, it

3    actually would be rather farcical, and while we do many

4    things, we attempt not to be farcical during the day when we

5    practice law, so if I could ask somebody from Davis Polk to

6    please point the judge to where the phrase excluded parties

7    is used as a carveout from the releases, I'd be grateful.

8           MR. KLEIN:  Your Honor, it's Darren Klein from

9    Davis Polk & Wardwell.  Can you hear me?

10          THE COURT:  Yes.

11          MR. KLEIN:  I'll attempt to answer this one, as

12   well, Your Honor.  In the plan, excluded parties shows up at

13   proviso to the definition of released parties, and the

14   proviso reads, "provided, however, that notwithstanding the

15   foregoing," which is laying out who the released parties

16   are, "or anything herein to the contrary, no excluded party

17   or shareholder released snapback party shall be a released

18   party (sound drops)."

19          THE COURT:  Okay.  All right.  Maybe I just

20   skipped over that when I was reading it.  But you're exactly

21   right.  It's in the definition of released parties.  Okay.

22   And that list is going to be filed with the plan supplement,

23   correct?

24          MR. KLEIN:  I believe that is correct, Your Honor.

25          THE COURT:  Okay.  All right.

1          MS. LIBBY:  And, Your Honor, while we're winding

2     it up, the other definition of released parties is the

3     shareholder released parties and you'll see that there's the

4     same proviso at the end with respect to excluded parties are

5     also carved out of that definition.

6          THE COURT:  Okay, very well.  All right.  So, Mr.

7     Schwartzberg, you were going to go on with other objections

8     that remain?

9          MR. SCHWARTZBERG:  Yes, just a few, Your Honor.

10    One, the disclosure statement indicates that there's going

11    to be a payout by the Sackler parties over a nine-year

12    period, and obviously, these are Debtors seeking -- non-

13    Debtors seeking releases.

14          For a debtor to get a discharge, they have to

15    disclose financial information, liquidation analysis,

16    financial (indiscernible), however, there's no information

17    being disclosed about financial information about these

18    parties to obtain releases, so without that information,

19    there should at least be an explanation as to why the

20    payments are being made over nine years rather than, for

21    instance, a lump sum payment.  Is it that the Sackler

22    families don't have the sufficient liquidation to do it

23    currently or is it just for some other reason?

24          I can go on my next point, Your Honor.

25          THE COURT:  Well, why don't we hear the response

1    to that?  I, frankly, it's not, to my mind, necessary.  It

2    might be helpful.  It's more of a, I guess, an issue as to

3    evaluating the settlement generally, which is discussed at

4    length, but is there a quick response to that, Mr.

5    Robertson?

6              MR. ROBERTSON:  Yes, Your Honor.  I mean, we set

7    forward, I think, more than fulsome disclosure on the

8    settlement, and we don't think that we have to describe the

9    terms of a different deal or hypothetical deal --

10             THE COURT:  No, I don't think Mr. Schwartzberg is

11   asking for a description of alternatives.  I think just,

12   what is the rationale for the parties having agreed on a

13   nine-year payout or, you know, extended payout.

14             MR. ROBERTSON:  I think that, ultimately, the

15   answer is that it was part of a very detailed and intense

16   negotiation over many, many months, if not years, in this

17   case and that there's no -- I'm not sure exactly what Mr.

18   Schwartzberg is looking for us to say about it.

19             THE COURT:  It's part of the overall --

20             MR. ROBERTSON:  (indiscernible).

21             THE COURT:  -- in essence.

22             MR. ROBERTSON:  (indiscernible), yeah.

23             THE COURT:  All right.  I think that's really more

24   for the purpose of evaluating the issue at confirmation, Mr.

25   Schwartzberg.

1          MR. HUEBNER:  And, Your Honor, just to give the

2     Court another -- or at least, comfort that the four parties

3     facing the Sacklers have had time period negotiations --

4          THE COURT:  No, that's clear from the disclosure

5     statement.  It's clear that there are many parties who've

6     negotiated this agreement.

7          MR. HUEBNER:  No, no, agree.  I just wanted to

8     give one substantive point I think might be helpful.

9          THE COURT:  Okay.

10          MR. HUEBNER:  Which is, there are ten different

11     Sackler pods and they have very different levels of wealth,

12     and potentially, very different levels of exposure.  And for

13     some of them, frankly, liquidating the IACs and having the

14     Sacklers, essentially, get out of the world (indiscernible),

15     which was very important to many people on our side, is

16     actually necessary to create a liquidity to pay these sums,

17     which, despite the Sacklers' wealth, are material sums.

18          And so, it's not just that we cut the best deal we

19     could and there were four huge parties facing the Sacklers,

20     but there were real rationales for some payment over time,

21     including the need to liquidate assets to generate $4.5

22     billion, which is, obviously, not a trivial sum.  So, I just

23     don't want people to think that we sort of did a terrible

24     job, because I don't --

25          THE COURT:  Well --

1           MR. HUEBNER:  -- actually think --

2           THE COURT:  I guess Mr. Schwartzberg's point is,

3   why don't you put in a sentence that says that.

4           MR. SCHWARTZBERG:  Exactly, Your Honor.

5           MR. HUEBNER:  Yeah, let us work on that.  I don't

6   see why that should be an issue.  Among the considerations

7   were the Sacklers --

8           THE COURT:  The size of the contribution and --

9           MR. HUEBNER:  -- claims representation --

10          THE COURT:  -- the nature of their assets.

11          MR. HUEBNER:  Yeah.  Yeah, and clearly the

12  Sacklers' representation that they needed to liquidate IACs

13  and other holdings to generate the cash payments required by

14  the settlement, again, we'll work with the Sacklers because

15  we're a little bit saying what they told us, part of

16  negotiations.  Obviously, UCC, AHC --

17          THE COURT:  This is --

18          MR. HUEBNER:  -- but --

19          THE COURT:  This is just from the Debtors'

20  perspective.  We don't need to get into what the Sacklers

21  told you, just your --

22          MR. HUEBNER:  Okay, good.  Even better.  Too bad,

23  Sacklers.  We don't care what you think.  We'll come up with

24  a couple of sentences and put them in.

25          MR. SCHWARTZBERG:  I wanted to hear if Marshall

Page 94

1   had anything else to day.

2           MR. TROOP:  I was (indiscernible).

3           THE COURT:  We can't hear you, Mr. Troop.

4           MR. TROOP:  I'm sorry.  I thought Mr. Huebner said

5   that he wasn't farcical during the day.

6           THE COURT:  Okay.  All right, Mr. Schwartzberg,

7   you want to go on?

8           MR. SCHWARTZBERG:  Your Honor, I do have two

9   comments that related to both the disclosure statement and

10  also the proposed order for those solicitation and voting

11  procedures.

12          THE COURT:  right.

13          MR. SCHWARTZBERG:  The first deals with the plan

14  supplement, including the shareholder settlement agreements.

15  Our initial objective had indicated that the five days that

16  they had sought, which, I believe, to file those documents

17  prior the voting deadline, was insufficient, not only

18  because it included a (indiscernible) the summer and

19  included a weekend.  They've agreed to push that out to

20  seven days.  The U.S. Trustee still believes these are

21  voluminous documents that are being filed pretty close to

22  the voting deadline.  They contain the trust documents.

23  They contain, most importantly, the shareholder settlement

24  agreement, and we believe seven days is just -- which also

25  include the weekend -- is not sufficient.

1          Not everybody has the ability to read and digest

2     these things in just a few hours, and so, we believe that

3     the plan supplement should be filed ten days prior to the

4     voting deadline, extend it out a little bit more and get a

5     little more than a week (indiscernible).

6          THE COURT:  Okay --

7          MR. SCHWARTZBERG:  Also --

8          THE COURT:  I did have a question on the

9     solicitation procedures on how that timing works, and I

10    think we could come back to that.  But I think the key

11    point, the first key point to recognize here, is that

12    there's more than one plan supplement.  In fact, you're

13    filing plan supplements all the time.  I think the seven

14    days is the outside date for the last plan supplement, and I

15    think that should be made clear, and I think it also is, as

16    I understand it, and I think Ms. Libby just said this, you

17    filed or will be filing today the terms sheet for the

18    settlement agreement, correct?

19          MR. ROBERTSON:  Your Honor, this is --- go ahead,

20    go ahead.

21          MS. LIBBY:  I'm sorry.  Your Honor, immediately

22    before this hearing, at the start of this hearing, we filed

23    an updated terms sheet of the settlement agreement that had

24    significantly more detail.  In addition to that, we filed a

25    series of what we're calling the credit support terms sheets

Page 96

1    that really have significant levels of detail on the

2    collateral and the covenants that each of the pods will be

3    subject to.  In addition to that, we filed a terms sheet

4    that deals with the post-effective date issues related to

5    things that can come up on a table.

6             So, we have already filed, really, a series of

7    terms sheets this morning that are really, really quite

8    detailed and, of course, those will be turned into

9    definitive docs before the plan supplement deadline.

10            THE COURT:  Right.  So, I think I'm comfortable

11   with the seven days, generally, because of the filings that

12   are happening.

13            Obviously, if something is materially different,

14   which I don't think will happen, because of all of the

15   agreements among the parties that have negotiated these

16   agreements for their approval being necessary for any

17   change, but as far as the trust documents are concerned,

18   again, the trust distribution documents have, in large

19   measure, been filed or described already, and it's one thing

20   if what's filed seven days before the confirmation hearing

21   is materially different than what's described in the plan or

22   in the earlier documents, but I don't think that's what's

23   contemplated here.

24            So, I think the seven days is sufficient, except

25   where it's agreed by the Debtors, they're doing it earlier

Page 97

1    in a couple of places.

2              MR. SCHWARTZBERG:  Your Honor, yes.  I just wanted

3    to point out, I believe the VIP Trust documents will be

4    filed 14 days before --

5              THE COURT: Right.

6              MR. SCHWARTZBERG:  -- voting deadline.

7              THE COURT:  Right.  That --

8              MR. SCHWARTZBERG:  Appreciate that, so I wanted --

9              THE COURT:  -- that earlier.

10             MR. SCHWARTZBERG:  Hold Debtors' feet to the fire

11   on that.

12             THE COURT:  Right.

13             MR. SCHWARTZBERG:  Also, in connection with the

14   solicitation and the disclosure statement, I just note --

15   and it's on Page 282 of the May 24th disclosure statement.

16   It provides that if no holders of claims in a particular

17   class that is entitled to vote on the plan, vote to accept

18   or reject the plan, then such class shall be deemed to

19   accept the plan.  My concern there, Your Honor, is if all

20   the class either don't vote or vote against the plan, so

21   that we're in a situation where nobody, no class has voted

22   affirmatively to the plan, the Debtors use the non-vote to

23   confirm the plan.

24             THE COURT:  I understand that point, but I think,

25   two things.  First, it's addressing an issue that I think is

Page 98

1   highly unlikely to happen, the 1129(a)(10) issue.  Secondly,

2   the Courts are in dispute about it, including in the

3   Southern District.  There's an opinion, an early opinion, by

4   Judge Brozman saying you can't do that.  There's a later

5   opinion by Judge Gerber that says you can.  Collier says the

6   courts are divided on this issue.  Judge Gerber's opinion

7   makes it clear that it's very fact based, and it ties in, as

8   you said, to the 1129(a)(10), there must be at least one

9   accepting impaired class point for confirmation.

10          And I think it's not, under those circumstances,

11   worthwhile to decide that issue now.  I did have, in my

12   comments to the disclosure statement, a comment -- and when

13   I go through them, I'll give it to you all -- that says,

14   "the Debtors will assert," and then go on with the language.

15   And the plan also provides, and the disclosure statement

16   provides, that if the Court disagrees with something like

17   that, then that's the end of it.

18          But, you know, given the -- there are two reasoned

19   cases by good judges, In re:  Adelphia Communications Corp.,

20   368 B.R. 140 at 259-60 (Bankr. S.D.N.Y. 2007) and In re:

21   Tribune Co. -- that's Judge Walrath -- 464 B.R. 126 at 183-

22   84 (Bankr. D. Del. 2011), that disagree with the U.S.

23   Trustee's position.  I recognize there are other cases that

24   go the other way and in small cases, I have gone the other

25   way, as Judge Gerber said he probably would go the other way

1    in In re:  Adelphia Communications.

2            The circuit in the Ruti-Sweetwater case, the Tenth

3    Circuit, was relied on by Judge Gerber for his ruling, but

4    there's a District Court opinion out of Chicago, In re:

5    Vita Corp., 380 B.R. 525, 528 (C.D. Ill.) -- I guess it's

6    not out of Chicago, it's out of the Central District if

7    Illinois, 2008, that takes the view you've espoused as did

8    Judge Brozman in the Friese case, F-R-I-E-S-E, that Judge

9    Gerber contrasts in his opinion.

10           But, to me, this is just not worth fighting about

11   at this point.  It may never happen.  By the way, the law

12   seems pretty clearly to have moved that you just need an

13   accepting impaired class for a plan, even though it's for

14   multiple Debtors, so this may never come up and I'm just not

15   prepared to address it at this point, as long as it's clear

16   in the disclosure statement that the Debtors will assert

17   this position and that people don't vote at all at their own

18   risk.

19           MR. SCHWARTZBERG:  All right, Your Honor.  I was

20   going to go into the facts in the Adelphia case, which --

21           THE COURT:  It's not worth it.  These are fact

22   based, too, and we -- I want to avoid making a fact-based

23   determination without the facts, which is the case at this

24   point.

25           MR. SCHWARTZBERG:  All right --

Page 100

1          THE COURT:  One thing that Judge Gerber made clear

2     in Adelphia is that part of his fact-based determination was

3     based on the warning that the Debtor gave people in the

4     disclosure statement that they would take this position, so

5     I think I just want to highlight that warning a little more

6     than it is now.

7          MR. SCHWARTZBERG:  The last, Your Honor, is --

8     it's more of a reservation of rights.  Section 5.8 of the

9     plan is a new section and Mr. Huebner had spoken about it,

10    which is going to have over half a million dollars of funds

11    going to pay attorney fees, so the U.S. Trustee really

12    hasn't had the time to actually sit down and review

13    (indiscernible), so we just reserve our right to address

14    this issue at confirmation.

15         THE COURT:  Right.  That's fine.  And I know, Mr.

16    Huebner, you said that the parties are still working on

17    this, at least as far as the special fund or the enhancement

18    fund.  I want to make sure that when they're doing it, that

19    they recognize and make it clear that 1129(a)(4) applies

20    here with respect to any fees that aren't fees for future

21    work, as opposed to past work, to the extent required in

22    1129(a)(4).  This isn't just, you know, a free pass to get

23    paid, in other words.

24         MR. HUEBNER:  Yes, Your Honor.  We certainly are

25    aware of those code provisions and this is definitely

Page 101

1    something that's (indiscernible), and I think you're exactly

2    right, which is, the primary thing that is open is

3    essentially the common benefit fund --

4              THE COURT:  Right.

5              MR. HUEBNER:  -- allocation, like, of the private

6    side groups.  The public side -- Mr. Schwartzberg is quite

7    correct -- the number does, in fact, on the public side, for

8    the public side's own lawyers, approach something like $500

9    million which is, obviously, an extremely material sum.

10   That said, the expected distributions to the public side

11   are, hopefully, in the $5 billion range and I'm guessing

12   that -- I'm not a mass tort expert -- but that what

13   essentially is, you know, arguably a 10 percent fee, you

14   know, may well fit extremely comfortably on the spectrum of

15   reasonable.

16             Again, I don't want to over speak or under speak.

17   It's not my area, but obviously, these would all be things

18   that we'll be ready to discuss at confirmation, to the

19   extent people are unhappy about them and want to bring --

20   press and, sort of, the like, it will all need to be

21   resolved.  The good news, again, for today -- I really do

22   hate to sound like a broken record, not that people below 25

23   even know what a broken record is -- but these are just

24   classic confirmation objections and if they're still there

25   at the time, just like if all 19 classes vote no, which I

Page 102

1     view as kind of a zero probability event, we'll be happy to

2     discuss it at the time with our opponent as to lawful, but

3     the Courts guidance of make it more clear that that's a

4     possibility, is exactly how disclosure statement objections

5     should be resolved, and of course, we're furiously, you

6     know, annotating a document every time something is

7     suggested at this morning's hearing.

8              THE COURT:  So, on the 5.8 discussion, in the

9     disclosure statement, though, I think you need to add a

10    sentence that says that all of these fees will be subject to

11    1129(a)(4) to the extent that 11 -- you know, to the extent

12    that they are for, and then you can just quote what

13    1129(a)(4) covers.

14             MR. HUEBNER:  Yeah, I don't think we're allowed to

15    do things in the bankruptcy court that violate the

16    Bankruptcy Code.  I cannot imagine --

17             THE COURT:  I just want it to be clear.  I don't

18    want some attorney to think that he or she is not going to

19    have to do that.  It needs to be clear.  And I'm saying

20    this, in part, because I was -- at least with regard to the

21    public side, somewhat puzzled by the amount, given that

22    payments have been ongoing since the start of the case, at

23    least with regard to the Ad Hoc Committee and others.  So,

24    it's just -- I agree with Mr. Schwartzberg.  The Court needs

25    to have a handle on this.

Page 103

1           MR. SCHWARTZBERG:  Your Honor, if I could just

2    add, on the disclosure statement side of it, it was still

3    unclear to me, at least for the noncommon benefit fund, how

4    the payouts or the requests for payouts from those funds

5    were to be made and the decisions to determine --

6           THE COURT:  That's why I --

7           MR. SCHWARTZBERG:  -- amount --

8           THE COURT:  That's why 1129(a)(4) is so important.

9    I agree with you.

10          MR. SCHWARTZBERG:  Then, with that, Your Honor, I

11   have nothing else for today.

12          THE COURT:  All right.

13          MR. SCHWARTZBERG:  Other than, as I indicated, we

14   reserve our rights regarding the confirmation, which, of

15   course, Your Honor had indicated before --

16          THE COURT:  Okay.  Thank you.  And I do -- there

17   was one other point that was made in the objection and I

18   gather you're not pursuing it, but I do want to address it.

19   It suggests that the plan could not protect the trusts or

20   NewCo or TopCo claims that they couldn't be channeled to the

21   sources of payment, because Purdue was going out of

22   existence.  And I don't understand the rationale of that.

23          I know you're not pushing that objection today,

24   but I do just want to state that the business is not going

25   out of existence, but more importantly, the assets are not

Page 104

1    going out of existence, and they can be protected under a

2    plan, I think, and I think almost every plan in a major case

3    does that with an injunction.  Certainly, every plan that

4    sets up a creditor trust, creditor liquidation trust,

5    creditor litigation trust, either of those things -- and

6    it's well recognized and I think that, frankly, that should

7    not be an issue at confirmation, but luckily, we don't have

8    to address it here, either.

9              MR. HUEBNER:  Yeah, and Your Honor, just to note

10   the sort of potential irony, and I'm confident this will be

11   worked out, it was actually absolutely critical to the

12   United States of America that Purdue itself not emerge from

13   Chapter 11.  It was absolutely a critical prong of the

14   settlement with the DOJ.  It is also extremely important to

15   many of the states and many other stakeholders, for obvious

16   reasons, that Purdue is never coming out of bankruptcy --

17             THE COURT:  Right.

18             MR. HUEBNER:  -- and its assets are being

19   distributed, so --

20             THE COURT:  I understand that, but the assets need

21   to be protected to that the people who were going to get

22   paid from them, can get paid from them, and --

23             MR. HUEBNER:  No, no, I'm only agreeing.  I'm just

24   saying, having one part of the DOJ, basically issuing

25   something that is there because it was demanded by the

Page 105

1    states themselves, we'll figure it out by confirmation.

2              THE COURT:  There's nothing --

3              MR. HUEBNER:  You're exactly right.

4              THE COURT:  What I'm saying is I don't think

5    there's anything to figure out here.  I think it would call

6    into question, basically, ever major Chapter 11 plan done in

7    the last, you know, 30 years, wherever there was any sort of

8    litigation trust or liquidation trust created.  So, I think

9    the Court has plenty of authority to protect those assets.

10   Anyway --

11             MR. HUEBNER:  Thank you, Your Honor.

12             THE COURT:  And I think, probably, the U.S.

13   Trustee saw that, because the Office is not pursuing that

14   objection, but I just wanted to note that.  I did consider

15   it and would've overruled it.  Let's put it that way.  So,

16   that deals with the U.S. Trustee's objection, and again --

17   and this may drive everyone crazy.  I do have my own

18   comments on the disclosure statement and plan.  I've already

19   foreshadowed those already in a couple of cases in

20   addressing the U.S. Trustee's objection, but I'll give you

21   all a second chance, just going through them very quickly at

22   the end of this hearing, if I don't do it --

23             MR. SCHWARTZBERG:  Understood.

24             THE COURT:  -- in response to other objections.

25   So, which one do you want to deal with next, Mr. McClammy?

Page 106

1          MR. MCCLAMMY:  Thank you, Your Honor.  I think one

2    of the objections that also, in part, relied on the

3    Trustee's objection, which was Agenda Letter I or 1-I.  It's

4    the ER Physician objections and there were supplemental

5    objections filed.  These would be at Docket Number 2708,

6    2794, and 2828, and they're Agenda Items 1-I, HH, and KK.

7          THE COURT:  Okay.

8          MR. MCCLAMMY:  Your Honor, in these objections

9    filed on behalf of Dr. Masiowski, an independent emergency

10   room physician, essentially objected to the disclosure

11   statement and the initial objection, one of which, the

12   objections were raised, we believe, an untimely objection to

13   the claims procedures.  Those procedures have since been

14   approved by the Court, as indicated in our response at

15   (indiscernible), and we believe that objection should be

16   overruled.

17          To the remaining objections, they broadly fall

18   into two categories.  First, he asserts a disclosure related

19   objection regarding the hospital claims in Class 6, the

20   hospital TDPs are really just -- I think those are really

21   just guised as confirmation objections, and as was also

22   discussed by Mr. Huebner, we believe those objections should

23   be overruled.

24          In addition, Dr. Masiowski asserts objections

25   regarding the planned abatement-centric framework and the

Page 107

1   substance of the hospital TDPs.  I'm sorry, Your Honor, are

2   you having trouble hearing me?

3           THE COURT:  No, I'm just trying to figure out

4   whether I should just hear from Dr. Masiowski's counsel to

5   see what's left here, of the objection.

6           MR. ROTHSTEIN:  I'm available, Your Honor.

7           THE COURT:  Okay.

8           MR. ROTHSTEIN:  This is Paul Rothstein.

9           THE COURT:  All right.  So, look, the Debtors have

10  been quite candid.  They have been filing the backup for the

11  treatment sections for different classes in this case since

12  the original disclosure statement was filed, including, in

13  this case, the so-called hospital -- well, the Class 6.  So,

14  at this point, I'm just not sure what's left as far as the

15  objection to the disclosure statement.

16          MR. ROTHSTEIN:  Sure, Your Honor.  And just

17  preliminarily, I do want to say on behalf of Dr. Masiowski

18  that we adopt and incorporate the second supplemental

19  objection of the public school district creditors to

20  Debtors' motion to approve, and that was Document No. 2916.

21          THE COURT:  Well, they've withdrawn that, so this

22  -- you can't do that.  I mean, it's theirs, okay?  It's just

23  --

24          MR. ROTHSTEIN:  Well -- okay.  Well --

25          THE COURT:  And they're a different entity.  I

1    don't even know what you mean what you say when you adopt

2    it.  They're a school board.  They're school districts.

3    Your client --

4              MR. ROTHSTEIN:  Well, Your Honor --

5              THE COURT:  -- is an emergency room physician.

6              MR. ROTHSTEIN:  I get that, Your Honor, and what

7    they said in the content of that was detailed about how all

8    of these documents have been basically put on everybody in a

9    very short period of time, so I want to reserve the right to

10   be able to have further objections, given the fact that of

11   the burden of having to go through these pages of documents,

12   and this is a disclosure issue, Your Honor.  It's not a

13   confirmation plan issue.  But let me --

14             THE COURT:  Mr. McClammy, when was the Class 6 TDP

15   filed?  You're on mute.

16             MR. MCCLAMMY:  Sorry, Your Honor.  Let me just

17   check on the exact date on that, but that -- it was filed in

18   advance of the current round, my understanding.

19             MR. ROTHSTEIN:  It was filed two days ago, I

20   believe.

21             THE COURT:  Okay.  I read it this morning.

22             MR. ROTHSTEIN:  Okay.  I'm just saying, Your

23   Honor, that -- I'm just putting that on the record.

24             THE COURT:  This is the hearing, all right.  Tell

25   me what your objection is.

1          MR. ROTHSTEIN:  Fair enough.  Fair enough.  So, my

2     objection is, Your Honor, that the disclosure is misleading,

3     at best, because essentially, emergency room physicians,

4     there's 70,000 of them.  I understand I'm only representing

5     one and as a putative class representative of a class action

6     that's been filed in the NDL, but in the Class 6, nobody,

7     especially the emergency room physician, cannot make a

8     claim, and I'm asking the Court to rewrite the Class 6

9     definition that they have to explicitly say that if you're

10    not a hospital, you cannot make a claim.

11         And the reason you can't make a claim, Your Honor,

12    is that the actual, one, the claim form itself hasn't been

13    completed, but the information necessary in the claims form

14    that's represented in the document is something that an

15    emergency room physician cannot certify to.  There are

16    information requirements in the claim form that there is no

17    way the emergency room physician can certify to, because

18    that information is in the exclusive control of the

19    hospital.

20         So, an independent emergency room physician, who

21    doesn't work for the hospital, has absolutely no possibility

22    of making a valid claim, and that needs to be explicit.  So,

23    if they're going to say that you're in group six, then tell

24    everybody, well, if you're an emergency room physician or

25    other than a hospital, you can't make a claim.  Now, we've

Page 110

1    already paid a substantial contribution to the amended plan,

2    because now, they're saying that it's not only hospitals but

3    it's holders of hospital claim.  So, that's one issue.

4              The second issue, Your Honor, that's most

5    significant from our standpoint, is that a hospital does not

6    have had to have filed a claim to be eligible for an

7    allocation.  And if that's the case, although it's ambiguous

8    in the disclosure, that needs to be explicit, because

9    emergency room physicians should be afforded -- that's not

10   me, Your Honor -- should be afforded the same right and the

11   same privilege.  What do I mean by that?  Emergency room

12   physicians should not have had to file --

13             THE COURT:  Can we just -- let me ask Mr.

14   McClammy.  Is there any definitional distinction between

15   hospitals, health care providers, and emergency room

16   physicians, or is it the Debtors' intention that emergency

17   room physicians be included in the reference to hospitals

18   and health care providers?

19             MR. MCCLAMMY:  We believe, Your Honor, that it's

20   clear in the documents, including the disclosure statement,

21   that the physicians, including the independent emergency

22   room physicians, would qualify to participate in this this

23   class and are not excluded from potentially recovering.

24             THE COURT:  Okay.  So, it's not a definitional

25   issue, that Mr. Rothstein is talking about.  If it is, he's

1    just closing his eyes to the document.  What he's talking

2    about, although, this did not come through in the objection,

3    but I understand his point now, is that as a practical

4    matter, the information needed to assert a right to the

5    trust can't be provided by an emergency room physician, I

6    guess without the cooperation of the hospital for which he

7    or she works.

8           I don't know if that's ever been raised with you

9    before.  Has it been discussed?

10          MR. MCCLAMMY:  We did have a brief call with

11    counsel for the emergency room physician.  Some of these

12    issues were raised.  We turned him back to the -- we believe

13    that the certifications that are requested are things that

14    the doctors can, in fact, provide, so we haven't seen

15    anything that would be --

16          THE COURT:  What is it --

17          MR. MCCLAMMY:  -- issues that they couldn't meet.

18          THE COURT:  What is it that the physicians could

19    not provide, Mr. Rothstein?

20          MR. ROTHSTEIN:  The issue that they have laid out

21    is like the hospital in terms of what the expenditures are

22    in the hospital, what's going on in the hospital itself, is

23    what the certification seems to require, and that's not

24    something an independent emergency room physician, who

25    doesn't work for the hospital, Your Honor -- these are

Page 112

1   independent contractors.  They don't have anything related

2   to the hospital other than that's where they do their work.

3   And they're on the front line of all of this.

4          THE COURT:  Does the form actually just say the

5   hospital or does it just say the healthcare provider?

6          MR. ROTHSTEIN:  Well, the original form --

7          THE COURT:  I'm talking about the form now.

8          MR. ROTHSTEIN:  The form now says holders of

9   hospital claims.  That's the language that they've amended.

10  And -- but, Your Honor, there is no form.  They reference a

11  form, but there's no form in the document itself.

12         THE COURT:  Let's just agree on one thing.  A --

13  two things.  One, the emergency room physicians are in the

14  class; and two, if the form that is proposed to be used

15  makes it impossible for them to assert a claim, then you'll

16  have a valid objection to the plan.

17         MR. ROTHSTEIN:  My -- I understand, and my third

18  point is, the point that I haven't said yet, the allocation

19  information in terms of how the monies in the trust are

20  going to be allocated, is subject to a confidential,

21  proprietary algorithm that is not being disclosed and is not

22  being disclosed in the plan, either.  So, this proprietary

23  algorithm is something that we believe any holder of the

24  hospital claim signing an appropriate protective order

25  should have access to because that is determining how all of

Page 113

1    the funds in this particular trust are going to be

2    allocated.

3              THE COURT:  Okay.

4              MR. ROTHSTEIN:  And that's a disclosure issue.

5              THE COURT:  Well, it's not really a disclosure

6    issue.  It's an issue as far as preparing for the

7    confirmation hearing.  I'm assuming that, subject to a

8    confidentiality agreement, that is something that, if

9    someone wants to review it in preparing for the confirmation

10   hearing, they can, right, Mr. McClammy?

11             MR. MCCLAMMY:  Yes, Your Honor, and this is a

12   model that is employed by the hospital TDPs.  It's based on

13   things like diagnostic codes that associated with certain

14   forms of treatment and things along those lines.

15             THE COURT:  Okay.

16             MR. MCCLAMMY:  I don't think that there would be

17   any problem with that.

18             THE COURT:  Well, I mean, again, if that model, by

19   just its very operation, excludes everyone other than a

20   hospital, then the point that the Debtors have made, which

21   is that this category includes healthcare providers as well,

22   isn't going to work.  So, just a head's up.  I'm assuming it

23   appropriately addresses the whole class, and to do the due

24   diligence on that, if someone wants to pursue it, they

25   should be able to have access to it, signing the appropriate

Page 114

1    confidentiality agreement, since it is, apparently

2    proprietary, so that they can prepare for the confirmation

3    hearing.

4          It's not something that would be disclosed in the

5    disclosure statement.

6          MR. ROTHSTEIN:  Well, Your Honor, and just to

7    address this other point about, I want you to understand,

8    they treat -- they recognize this and document -- I'm going

9    back to the issue of whether it's a hospital or an emergency

10   room physician who can certify for allocation purposes, and

11   it's Document No. 2910, Footnote 12.  It's important, also,

12   from us to -- I mean, for me to state this, is that the

13   doctor has to certify.

14         The emergency room doctor and all healthcare

15   providers have to certify that they met the standard of

16   care, that they've acted reasonably and so forth and so on,

17   to sign the certification.  And what I'm saying is, the

18   information for them to complete that form where they have

19   acted within the standard of care and conducted themselves

20   within the standard of care, that information, much of it,

21   is within the exclusive control of the hospital.

22         I understand what the Court is saying, that --

23         THE COURT:  I don't understand what you're saying.

24   Why shouldn't any doctor be able to certify to that?

25         MR. ROTHSTEIN:  Because they don't have access to

Page 115

1    the information that's being required to get the allocation.

2    This is, for purposes of being able to complete a form, that

3    you're going to be able to submit to be entitled to a

4    certain allocation, and an emergency room physician cannot

5    sign off on that if they're not going to have access to all

6    of the information within the purview of the hospital.

7    That's the point, as it's now stated.  That's all I'm

8    saying.  I mean, we need to see a form, the claim form, and

9    be able to evaluate whether --

10            THE COURT:  Well, I guess the one thing you stated

11   is they have to certify that they've met the standard of

12   care?

13            MR. ROTHSTEIN:  I don't have a problem with that.

14   That's fine.

15            THE COURT:  Okay.

16            MR. ROTHSTEIN:  I'm just saying they can't do that

17   in the context of this claim form because they're not going

18   to have access to the information that the hospital --

19            THE COURT:  They can't do what?  I'm sorry.  They

20   can't do what?  They can't certify they met the standard of

21   care?

22            MR. ROTHSTEIN:  If they're not being -- if they're

23   not having the information in terms of what the particular

24   individual -- what the program is allocating.  Let's say

25   that the program is allocating X number of dollars to be

Page 116

1    able to treat the opioid disorder and that information about

2    that is exclusively within the control of the hospital and

3    not accessible to the emergency room physician.  That

4    information has to be made available to the emergency room

5    physician in order to be able to sign that certification.

6    That's one part of the --

7             THE COURT:  All right.

8             MR. ROTHSTEIN:  -- certification.

9             THE COURT:  I understand what you're saying, now.

10   This is looking forward, not looking backward.  And looking

11   forward --

12            MR. ROTHSTEIN:  Correct.

13            THE COURT:  All right.  Again, don't -- it's a

14   logical point, but it would seem to me that, again, if the

15   trust is going to have categories that the class fits into,

16   they have to make those categories known to people as part

17   of -- so they can fill out a claim form.  I don't have any

18   problem with that.  I don't think it's the disclosure

19   statement issue, it just -- it is a confirmation issue.

20            MR. ROTHSTEIN:  Yeah, I mean, in the context of

21   the -- if they ever -- I guess what I would ask the Court to

22   require is that the claim form that's going to be available

23   to other hospital potential claimants be made available

24   within 30 days of the day of this hearing whether it be an

25   outpatient clinic form, whether it be for emergency room

Page 117

1    physicians, and we should have a right to be able to see the

2    type of document that's going to be required to be able to

3    make an allocation possible.

4            THE COURT:  I think that's all part of the plan

5    supplement in confirmation.  I don't see any reason to go

6    anything different than that.  So, I'll overrule that

7    objection.

8            MR. ROTHSTEIN:  That's all we have, Your Honor.

9            THE COURT:  Okay.  But again, Mr. McClammy, I

10   mean, and for whoever is preparing these forms, which is a

11   step more detailed than the trust distribution procedures,

12   they need to focus on actually the mechanics to that, in

13   fact, people in the class can make the claim.  Common sense.

14           MR. MCCLAMMY:  Absolutely, Your Honor.

15   Understood.

16           THE COURT:  Okay.  All right, so who -- which

17   objection would you like to deal with next?

18           MR. MCCLAMMY:  Your Honor --

19           THE COURT:  I don't know who's having the vacuum

20   cleaner, but they should put themselves on mute.  Okay, go

21   ahead, Mr. McClammy.

22           MR. MCCLAMMY:  I believe next on the list would be

23   the Ad Hoc Committee on Accountability at BB, Docket No.

24   2791.

25           THE COURT:  Okay.

Page 118

```
 1              MR. MCCLAMMY:  And, shall I start, Your Honor, or

 2    --

 3              THE COURT:  No, why don't I hear -- I mean, I've

 4    read the objection.  I've read your reply.  I don't know

 5    whether there's anything more -- well, I mean, I -- what is

 6    this group pursuing at this point?  Are you pursuing all of

 7    the objection?

 8              MR. QUINN:  Your Honor, it's Michael Quinn from

 9    Eisenberg & Baum for the Ad Hoc Committee.  I can just focus

10    on one objection and move on.  I know you have -- we have a

11    long day ahead of us.

12              THE COURT:  Okay.

13              MR. QUINN:  If that's okay.  I just want to

14    identify one fact that the Debtors should disclose today.

15    In the Personal Injury Proof of Claim Form, Question 13 asks

16    each claimant to check the box indicating he was prescribed

17    a Purdue opioid.  There were three boxes:  yes, no, and

18    unknown.  We see from this most recent plan and a few plans

19    before this, and the disclosure statements, that the

20    question -- the answer to Question 13 is very important.

21    Victims who don't have a Purdue description are now, what

22    we've learned, are excluded from the trust distribution

23    plan.

24              The way I see it, their only changes for recovery

25    will be to file a lawsuit against the trust.  I also
```

Page 119

1    understand there are about a 130,000 personal injury claims.

2    I'm just asking that Purdue disclose how many of those

3    individuals checked yes, how many checked no, and how many

4    checked unknown.  I would imagine this breakdown is fairly

5    easy for Purdue to produce and to put into the disclosure

6    statement.  They could probably run a easy search, whether

7    it's Prime Clerk or Davis Polk, maybe even before this

8    entire hearing is over.

9            If, for example, if 50,000 additional people

10   checked no and they have to file a lawsuit against the

11   trust, I think this information is material fact that every

12   creditor should know.

13           THE COURT:  Well, if you, yourself, know it, I

14   mean I'm not -- mean you.  If a claimant knows it because

15   they filled out the box, they're the ones that are voting.

16   Why do other people need to know it?

17           MR. QUINN:  Well, I think it's a percentage issue,

18   Your Honor.  Let's say two-thirds of the people who filed

19   claims checked No, one-third checked yes.  I think that

20   would be very interesting piece of information for all

21   personal injury victims to understand when they go to vote

22   on this plan.

23           THE COURT:  Why?

24           MR. QUINN:  Well, because it might seem like this

25   plan was crafted in such a way to exclude a large amount of

Page 120

1    individuals who thought they may have a potential claim

2    against Purdue.

3              THE COURT:  But each one of them know -- each one

4    that checks no would know that already.

5              MR. QUINN:  Well, they would've just learned it

6    very recently, Your Honor.  When they filed these --

7              THE COURT:  They'll get the disclosure statement.

8    They'll have more than the statutory notice of it, along

9    with the discussion about their options and causation and

10   all of that.

11             MR. QUINN:  So, if six people check yes out of

12   130,000 people, that wouldn't change the people's

13   understanding of whether this plan was fair or not?

14             THE COURT:  It's as to their own claim, and they

15   would have that view themselves.

16             MR. QUINN:  So, this is -- people can't use

17   information based on the totality of circumstances of this

18   plan, whether it's a fair plan, whether they want to engage

19   in it, whether they want to reject it.  You're just saying

20   it's up to each individual.  Everybody's walking alone here.

21             THE COURT:  Yes.  I mean, that's generally what

22   happens when people vote.  They make a decision on what

23   they're voting on.  I mean, I don't -- I guess --

24             MR. QUINN:  Your Honor --

25             THE COURT:  -- thing would be a poll.  You know,

Page 121

1    just because there's a pre-election poll that says one

2    candidate is ahead by 60 percent or one candidate is ahead

3    by, in your analogy, 99 percent, shouldn't really change how

4    someone votes.  It's their vote, and the information --

5              MR. QUINN:  Well, your --

6              THE COURT:  -- regarding causation and potential

7    recoveries and the risks you run, that's all in the

8    disclosure statement.  So, I'm going to overrule that

9    objection.  It doesn't -- it's not worth it.  It's not -- it

10   doesn't go to the holder, the claimant.  It's a nice press

11   release, and that's not what disclosure statements are

12   about.

13             MR. QUINN:  Maybe you could explain further, Your

14   Honor?

15             THE COURT:  No, I don't need to.  I think you know

16   perfectly well what I'm saying.  It doesn't go to the

17   holder.  Just leave it at that.

18             MR. MCCLAMMY:  Okay, Your Honor.  I think this

19   draft -- the next objection that I will be handling would be

20   the objection filed on behalf of Mr. Peter Jackson,

21   represented by Professor Jonathan Woodson.

22             THE COURT:  Okay.  And I do want --

23             MR. MCCLAMMY:  That is II --

24             THE COURT:  can I interrupt you, Mr. McClammy?

25   I'm sorry.  Before we conclude with the -- with this Ad Hoc

Page 122

1    Committee, I obviously read the objection, the Debtors'

2    reply.  The objection is phrased in terms of a number of

3    questions, which is an interesting way to object to

4    information, and having read it carefully, I just -- again,

5    I accept the opening analysis of what we're here for, that

6    was given by Mr. Huebner, which is, adequacy of information

7    to that people can vote on a plan, and I believe the

8    disclosure statement sufficiently addresses, not the

9    questions, because the questions are really off point.

10           I think that they -- on the other hand, the

11   Debtors have addressed sufficiently the aspects of the plan

12   and the formation of it that would enable someone to vote on

13   the plan and make a choice as to whether they wanted to vote

14   yes or no.  So, you can go ahead, Mr. McClammy.

15           MR. MCCLAMMY:  Thank you, Your Honor.  I was

16   stating that the next objection that I have on my place

17   would be that filed by -- on behalf of Mr. Jackson by his

18   counsel Professor Lipson that appears on the agenda at II,

19   Docket No, 2819 and OO, Docket 2811.  One piece of

20   information I did want to provide, Your Honor, as part of

21   some of the disclosure statement objections that were raised

22   on behalf of Mr. Jackson.  Some of them were directed to the

23   fact that the shareholder releases and the definition of the

24   shareholder release parties were not included.  Did want to

25   repeat the information that the Court is aware of that we

Page 123

1    have filed annexes to the shareholder settlement providing

2    that list.  I believe that's Exhibit H to the disclosure

3    statement that was filed earlier today.  In addition, with

4    respect to information on the collateral and just with the

5    covenant and remedies, there were terms sheets that were

6    also filed on the docket today that I believe addressed that

7    part of the objection.

8         THE COURT:  And can you just remind me, and I

9    haven't been up, you know, for the last 36 hours that some

10   of you have, but can you remind me, has the list of the

11   excluded parties also been filed today or was it to be filed

12   before the plan supplement deadline?  Maybe that's --

13        MR. MCCLAMMY:  I believe --

14        THE COURT:  -- answer, I don't know.

15        MR. MCCLAMMY:  -- that -- yes, I believe it was

16   also confirmed by Ms. Libby, but I believe that information

17   was actually filed today.

18        THE COURT:  Okay.

19        MR. MCCLAMMY:  -- setting out the list of the

20   Sackler release parties.

21        THE COURT:  She's furrowing her brow.  I'm not

22   sure that's the case.

23        MS. LIBBY:  I think that excluded parties is still

24   to come, Your Honor.

25        THE COURT:  That'll be --

1                MS. LIBBY:  -- list.

2                THE COURT:  That'll be by the plan supplement

3    deadline?

4                MS. LIBBY:  Yes, unless somebody else on the Davis

5    Polk team --

6                THE COURT:  Okay.

7                MS. LIBBY:  -- corrects me (indiscernible).

8                THE COURT:  All right, thank you.

9                MR. HUEBNER:  I'd like to wish anyone on the Davis

10   Polk team the very best of luck in correcting Ms. Libby.

11               THE COURT:  Okay.  All right.  So, I guess -- Mr.

12   Lipson, I'm going to ask you the same question I've asked

13   others.  At this point, what in the disclosure statement

14   objection is still being pursued?

15               MR. LIPSON:  Thank you, Your Honor.  This is

16   Jonathan Lipson for Peter Jackson.  Can you hear and see me

17   okay?

18               THE COURT:  Yeah.

19               MR. LIPSON:  Great, thank you.  Thank you, Your

20   Honor.  I want to keep this quick.  You've got a lot on your

21   agenda.  I think the Debtors have made significant progress

22   between the time that we filed our two objections and today.

23   Mr. Huebner, I think, said well, Mr. Jackson's objections

24   are all confirmation objections, and obviously, in part,

25   they are.  That's correct.  We broke them into two basic

Page 125

1        groups, one, distributed objections, the other procedural.

2              The distributed objection was the best interests

3        of creditors objection.  Mr. Huebner said, well, courts

4        almost never deny approval of a disclosure statement on

5        grounds that the plan is facially unconfirmable, but of

6        course, sometimes, they do.  The Debtors, I think, have

7        addressed the facial confirmability question with respect to

8        best interests, but we do have a couple of concerns about

9        disclosures that haven't been made in the disclosure

10       statement that, I think, should be in order to satisfy the

11       adequate information standard for the best interests issue.

12             Number two are the procedural objections.  We said

13       well, you know, the Debtors want to force all personal

14       injury creditors into an arbitration proceeding, and we

15       don't think that's permissible in a bankruptcy --

16             THE COURT:  I don't understand that objection.  I

17       really don't.  I mean, they have the ability to opt out.

18             MR. LIPSON:  No, no.  Correct, Your Honor.  They

19       did.  So, after we filed that objection, they then added the

20       consent procedures and we object to those because we think

21       that they don't provide any meaningful choice, and the

22       reason we think they don't provide any meaningful choice is,

23       number one, they, in effect, impose a second bar date on

24       creditors.

25             If a personal injury creditor wants to get paid,

Page 126

1    they have to have filed their claim by the bar date, but

2    then in addition, sometime in the future, after

3    confirmation, within, I think, 150 days of the effective

4    date, they have to execute a second form providing a variety

5    of some information that, I think, the Debtors probably

6    legitimately need, but in addition, they are consenting

7    either to use the arbitration proceeding or they're agreeing

8    to go to the District Court under constrained condition.

9         There are three major constraints that would be

10   imposed on personal injury claimants, even if they elect to

11   go to the District Court.  Number one, they cannot recover

12   or assert claims against anyone other than the trust, and

13   so, for example, they can't assert claims against non-

14   Debtors who might otherwise be liable.  They can't,

15   apparently, assert claims -- obviously, they can't assert

16   claims against the Debtors any longer, but the point is that

17   like many personal injury claimants believe that they have

18   claims against non-Debtors, they won't, I don't think, be

19   able to take discovery of anyone other than whoever the

20   Debtors agree to provide to the trust.

21        So very limited ability to assert claims against

22   anybody that the personal injury claimant might think they

23   have claims against.  I realize the non-Debtor releases are

24   not on today, but we didn't object to those on disclosure

25   grounds, but we do think that the District Court should not

Page 127

1    be so constrained in --

2              THE COURT:  Why?

3              MR. LIPSON:  -- in the sort of --

4              THE COURT:  It's the same point.  Every court

5    would be constrained if I approved the plan.  Every single

6    court would not be able to go against the -- I'm not saying

7    I'm going to confirm it or not going to confirm it, but

8    every single court would be -- would have that limitation,

9    because of the plan.

10             MR. LIPSON:  Well, Your Honor, I think 1129(a)(1)

11   says that the plan cannot be approved unless it complies,

12   and we know that under 158 -- 157 --

13             THE COURT:  That's --

14             MR. LIPSON:  -- (2)(B) --

15             THE COURT:  You're talking about the payment of

16   the claim, not the litigation of the claim, and as far as

17   the payment is concerned, that would be governed by the

18   plan, which is channeled to the trust.

19             MR. LIPSON:  I understand that, Your Honor.

20   That's correct.  I'm not --

21             THE COURT:  Well, you just said that the District

22   Court would somehow -- it would be improper to say the

23   District Court would say that you could go to some other

24   source for payment.  But the plan would --

25             MR. LIPSON:  No, no --

Page 128

1           THE COURT:  -- govern that.  That's the whole

2    point of an injunction.

3           MR. LIPSON:  I'm sorry, Your Honor, can I finish?

4    I said, for discovery, not for payment.  So, for purposes of

5    discovery --

6           THE COURT:  Well, all right.  We'll talk about

7    that, but I think you went way beyond discovery.  You were

8    talking about not having a claim against someone else.

9           MR. LIPSON:  Well, it is, for sure, Your Honor,

10   true, and that -- this is the second point, that the trust

11   distribution procedures lock in the channeling injunction,

12   so that by the time we get to --

13          THE COURT:  Because it's premised on --

14          MR. LIPSON:  -- confirmation --

15          THE COURT:  -- confirmation and the effective date

16   --

17          MR. LIPSON:  Right, but by the time --

18          THE COURT:  -- of the plan.

19          MR. LIPSON:  Right, and by the time, we all know,

20   Your Honor, by the time we get to confirmation, everyone

21   will say, well, it's too late.  We can't change it now.

22   We've already solicited all these votes and we have these

23   votes and what have you.

24          THE COURT:  Why would -- but why would -- I --

25          MR. LIPSON:  Our objection --

```
 1              THE COURT:  -- makes, literally, no sense.  Let's

 2    go back to discovery -- the discovery point.  I don't -- is

 3    there a limitation on discovery from third parties if you

 4    want to opt out, Mr. McClammy, as long as you're not

 5    asserting a claim against them?

 6              MR. MCCLAMMY:  Not -- we will confirm that, Your

 7    Honor, but no, not that I'm aware of.

 8              THE COURT:  Okay.

 9              MR. MCCLAMMY:  I think that there is -- there is a

10    process that is meant to be an expedited process.

11              THE COURT:  Now, we're talking if they opt out.

12    We're talking about if they opt out.

13              MR. MCCLAMMY:  Right, but -- right.  And if they

14    go into litigation, that's correct, Your Honor.

15              THE COURT:  Okay.  All right.  Is there something

16    that says otherwise, Mr. Lipson?  I mean --

17              MR. LIPSON:  My understanding is that the Debtors

18    have said they're going to provide some information to the

19    trust and the trust will be the only named defendant, and so

20    I don't know how else anybody else would be able to provide

21    any information if they aren't named or can't be brought

22    into the litigation.  But if the Debtors are saying that

23    discovery will remaining according the ordinary rules of

24    discovery and not otherwise constrained, I think that's

25    fine.
```

1           THE COURT:  For opt-outs.  Okay?

2           MR. MCCLAMMY:  I think, just to clarify, Your

3    Honor, to the extent that they're talking about having a

4    claim against a non-Debtor, that is completely --

5           THE COURT:  No, no, no.  This is a --

6           MR. MCCLAMMY:  -- not Purdue related --

7           THE COURT:  -- only a claim -- this is only a

8    claim against the trust.

9           MR. MCCLAMMY:  Right, so in a claim against the

10   trust --

11          THE COURT:  Right.

12          MR. MCCLAMMY:  -- the thought would be that the

13   massive amounts of discovery that have been conducted (sound

14   drops) already would be made available --

15          THE COURT:  Sure, that would streamline it.

16          MR. MCCLAMMY:  -- contemplated.

17          THE COURT:  Right.  That would streamline it, and

18   I'm assuming any district judge would say, look there first,

19   and then tell me what else you need, you know, but -- right?

20          MR. LIPSON:  Right, but so --

21          THE COURT:  Okay.

22          MR. LIPSON:  The basic point with respect to the

23   procedures, Your Honor, is that I think the Debtors

24   recognize that in their initial form, those --

25          THE COURT:  I don't care about what happened.  I'm

1     caring about what's open today, okay.

2               MR. LIPSON:  Right, so --

3               THE COURT:  You raised important issues in your

4     objection.  I want to know what we're dealing with today as

5     opposed to what happened previously.

6               MR. LIPSON:  Well, Your Honor, their whole process

7     for dealing with personal injury claims, now, I think, is

8     predicated on the idea that creditors will have consented to

9     one or the other of these two paths and our basic point is

10    they offer a Hobson's choice.  There is no meaningful choice

11    between them.

12              THE COURT:  I don't understand.

13              MR. LIPSON:  Mr. Huebner --

14              THE COURT:  There's a very clear choice.  You opt

15    in or you opt out, and the disclosure statement makes

16    reasonably clear at least what the Debtors believe the risks

17    are of either one, either choice.  What other choice is

18    there?

19              MR. LIPSON:  Right, and so --

20              THE COURT:  What other choice would there be?

21              MR. LIPSON:  Well, so, Mr. Huebner mentioned the

22    PG&E disclosure statement, and I should take one step back.

23    I know Mr. Huebner is not happy that I'm involved in this

24    case at this point, but his colleagues have been incredibly

25    helpful in working this stuff through, and they've made

Page 132

1   significant changes that we appreciate.  So, Mr. Huebner

2   mentions the PG&E case, so I sent the PG&E disclosure

3   statement to Davis Polk.  Maybe they haven't had a chance to

4   look at it, but that case uses an opt in, not an opt out.

5   If you want to be in the arbitral proceeding, you opt into

6   the arbitral proceeding.  You don't have to opt out of it.

7          And more importantly, issues involving the

8   liquidation and estimation, determination of personal injury

9   claims was sent up to the District Court at the outset, and

10  so we don't have an arbitrator making that decision and we

11  are not forcing people to make a choice that is really not,

12  I don't think, a choice at all.

13          THE COURT:  All right.  A choice is a choice,

14  whether you opt in or you opt out.  You have that choice.

15  Point one.  Point two is --

16          MR. LIPSON:  If they don't --

17          THE COURT:  -- I don't understand why you say

18  there's not a choice.  There is a choice.

19          MR. LIPSON:  Because if they don't make one of

20  those two choices, they don't get paid at all, even though

21  they've already filed a proof of claim timely and there's

22  been no objection their claims, Your Honor.

23          THE COURT:  I don't -- let --

24          MR. LIPSON:  The Debtors --

25          THE COURT:  -- different point.  When you're

Page 133

1    saying that they don't make the choice at all, I mean --

2            MR. LIPSON:  Right.

3            THE COURT:  The purpose --

4            MR. LIPSON:  Can I finish again, Your Honor?

5            THE COURT:  Yeah.

6            MR. LIPSON:  I'm saying --

7            THE COURT:  There's 150 days for someone to choose

8    which system they want to go with, right?  Now, you're

9    saying that there should be an assumption that if they don't

10   make the choice, they're in one or the other?  Is that what

11   you're saying?

12           MR. LIPSON:  No, Your Honor.  What I'm saying is

13   that the way the Debtors have structured this, if you want

14   to get paid at all, even if you've already filed a proof of

15   claim timely, you still have to file this supplemental,

16   second proof of claim and by doing that, you are deemed to

17   make one of these two choices, and I don't think, in the

18   end, they're materially different choices, and I think

19   they're designed, obviously, to deter people from choosing

20   going to the District Court, but there's no point here.

21           THE COURT:  Are you -- I'm going to deal with that

22   point one more time, and then I'm going to go back to the

23   other point you've raised.  By saying that there really is

24   no choice, I don't understand what alternative you even

25   think there could be between either a opt out where you

Page 134

1    liquidate your claim in the court system and the benefits

2    and risks of that are described in disclosure statement, or

3    you proceed with a claims resolution facility system through

4    the trust.  Now, one could say that you could have tweaks on

5    the latter, but that's up to the Debtors to decide.

6            I don't think there's a third choice.  What is the

7    third choice?

8            MR. LIPSON:  The third choice is --

9            THE COURT:  Have a judge in Canada decide it,

10   that, to have -- I don't understand what the third choice

11   is.  Those are the two choices, right?  There's no other

12   choice.  Is there any other choice?

13           MR. LIPSON:  May I answer the question, Your

14   Honor?

15           THE COURT:  Yes.

16           MR. LIPSON:  So, the Bankruptcy Code, Section

17   502(a) says that timely filed proofs of claim are deemed

18   allowed unless objected.

19           THE COURT:  No --

20           MR. LIPSON:  We know the Debtors --

21           THE COURT:  -- different point.  I'm just dealing

22   with the point that you've now made three times, which is,

23   people really don't have a choice.  And I'm assuming,

24   because you haven't given me an answer to what I've said,

25   that point is overruled.  Now, I want to go to your other

Page 135

1    point.  Your other point, which you -- instead of answering

2    my question, you just made, is that the form that people are

3    supposed to fill out and send in to the trust within 150

4    days of the effective date provides -- you're supposed to

5    provide information on it and make an election as to whether

6    you opt in or opt out of the procedures.

7            Are you saying that if you don't file that form at

8    all timely, your claim is disallowed?  Is that what you're

9    saying?

10           MR. LIPSON:  That's my understanding from the

11   Debtors, Your Honor.

12           THE COURT:  All right.  Is that right, Mr.

13   McClammy?

14           MR. MCCLAMMY:  The -- yes.  The way that it is --

15   they way it is currently drafted, people have to make a

16   choice or they're -- for their recovery options.

17           THE COURT:  Well, I understand they have to make a

18   choice, and I can understand that if they don't make a

19   choice, they will be deemed to be in one or the other?  But

20   no, no, I'm just -- hypothetically, not in real life.  If

21   they don't make a choice, they'll be deemed to be in one or

22   the other, and it would be up to the Debtors to decide which

23   one they'd be in, in the plan as well as the people that

24   negotiated this with them.  But it does seem to me that if

25   they don't file the document at all, that the disallowance

Page 136

1    of their claim is draconian.

2            That point, which, frankly, I don't think was made

3    in either of the two objections, is a legitimate one, I

4    think, and probably is something that should be described in

5    the disclosure statement.

6            MR. MCCLAMMY:  Okay.  We will go back to confirm

7    on the drafting on that, Your Honor.

8            THE COURT:  Right.  I mean, I think the part that

9    needs to be described in the disclosure statement is, first,

10   it's clear to me that for the trust to function efficiently

11   and to distribute as much money to people as opposed to

12   people's lawyers, it's worthwhile to have a procedure where

13   people opt in or opt out, and the corollary to that is they

14   should probably have a deadline to do that, and if they

15   don't do one or the others, the Debtors and the people that

16   negotiated this on the PI side should say, you will

17   therefore be -- if you haven't made this choice, you will be

18   assumed to be in X, because that's a consequence of your not

19   making the choice, either the opt out or opt in.

20           It may be that as part of the procedures -- not

21   the opt in or opt out, but as far as the procedures are

22   concerned, you could require information to be provided by a

23   certain deadline.  I've done that and my colleagues have

24   done that and judges all over the country have done that in

25   many, many, many cases during the case.  Any supermarket

Page 137

1    case.  Hundreds of people have personal injury claims

2    because they slip and fall, literally, on bananas at

3    supermarkets.

4            It's common practice and well accepted, including

5    by tort claimants, that you give people the option to

6    liquidate their personal injury claims through a procedure

7    like this that does set out deadlines for when you provide

8    information to the people that will be making those

9    decisions.  But you opt into that.  It really shouldn't be

10   part of the opt in or opt out process.  It should be after

11   you are -- you've elected to or deemed to have elected to

12   opt into the non-judicial process.

13           MR. VONNEGUT:  Excuse me, Your Honor.  This is Eli

14   Vonnegut from Davis Polk.  Can you hear me?

15           THE COURT:  Yes.

16           MR. VONNEGUT:  I just have a few clarifying,

17   hopefully helpful points.  I think the deadline that we're

18   talking about principally is what you just described, Your

19   Honor.  It's a deadline to submit information to the

20   personal injury claims trust in order to allow that trust to

21   assess the relevant claim for purposes of filtering it

22   through the trust distribution procedures.

23           THE COURT:  Okay.

24           MR. VONNEGUT:  So, we will revisit the disclosure

25   on that point to make sure that it's clear and touch base

Page 138

1    with the personal injury group about how those deadlines

2    operate.

3              THE COURT:  It shouldn't be --

4              MR. VONNEGUT:  One other point that I want --

5              THE COURT:  Can I just -- it should not, however,

6    be --

7              MR. VONNEGUT:  Of course.

8              THE COURT:  -- a deadline, a bar, if you fail to

9    do it, of you opt in to the court system.

10             MR. VONNEGUT:  Yes, sir, understood, and we will

11   revisit that point with the personal injury group.

12             THE COURT:  Okay.

13             MR. VONNEGUT:  The last point, where I just wanted

14   to make sure that there was no misunderstanding, because I

15   think there was a little confusion, is discovery.  For

16   personal injury claimants that opt out of the trust

17   distribution procedures, they are not barred from seeking

18   discovery.  What there is in opt out procedures in something

19   akin to the procedure that we've established for plan

20   confirmation in this case.

21             THE COURT:  Right.

22             MR. VONNEGUT:  I.e., there is a large repository

23   of documents --

24             THE COURT:  Right.

25             MR. VONNEGUT:  -- established --

Page 139

```
 1              THE COURT:  I think that was clear.  I think that

 2    was clear --

 3              MR. VONNEGUT:  Okay.

 4              THE COURT:  -- in the disclosure statement.  That

 5    was for the benefit of those who opt out.  They --

 6              MR. VONNEGUT:  That's correct, Your Honor.

 7              THE COURT:  They don't have to reinvent the wheel.

 8              MR. VONNEGUT:  That's right.

 9              THE COURT:  Okay.

10              MR. VONNEGUT:  Thank you.

11              MR. LIPSON:  Your Honor --

12              MR. HUEBNER:  Your Honor, one -- a couple of quick

13    things from this end, and again, I sort of apologize, for

14    the multiple voices.  Obviously, we're dancing at

15    extraordinary speed here.  So first, just for the avoidance

16    of doubt, we welcome all constructive engagement and

17    anything that improves the plan and makes it more fair for

18    stakeholders is fabulous for us and I hope that all

19    claimants understand that, despite the sort of press of time

20    and circumstance.  I hope that we are always courteous to

21    everybody who joins the case.

22              Number to is, just so the record is clear, the

23    Debtors and Davis Polk in particular have been advocating

24    for an opt out for months, long before, frankly, Professor

25    Lipson or others joined this case, and I really don't want
```

Page 140

1    anybody to sort of take credit and say, because of my

2    objection, this happened.  There are a lot of cooks in this

3    case and a lot of people are thoughtful and caring and want

4    the best for everybody.

5           With respect to the third issue, this is an intra-

6    PI issue, to be clear.  It's not that the Debtors have

7    views, right.  These TDPs were drafted largely by the PIs

8    who represent hundreds of thousands of claimants, and while

9    we're certainly happy to take the Court's direction, I do

10   want to be clear that the original mechanical gave people

11   150 days.  I mean, that's true.

12          You file a claim, it's prima facie valid under

13   501, but then any objection throws the burden back to you

14   and it could be deemed to be the equivalent analytically of

15   a pro forma objection in response to which you now need to

16   file more information, and 150 days is longer than pretty

17   much any bar date in any case, so --

18          THE COURT:  Well --

19          MR. HUEBNER:  We will, of course, take the Court's

20   direction and that's done.  It's cooked.  I'm not arguing

21   that.  I just don't want anybody to have the view that

22   either it was the Debtors or that it was me and you stirred

23   it, that 150 days, which almost half a year, to fill out a

24   form -- the point is that the PIs want to get the money out

25   to the PIs and not have it sit for years while each claim is

Page 141

1    resolved individually --

2            THE COURT:  I --

3            MR. HUEBNER:  -- and have long deadlines.

4            THE COURT:  Right, I understand that, Mr. Huebner,

5    and I think that I don't have any problem with a deadline to

6    opt in or opt out, or a presumption which -- but it needs to

7    be made clear to people, in the disclosure statement, that

8    if you do neither, you will be deemed to have subjected

9    yourself to the procedures, which means that you have to

10   provide the information by the deadline.

11           But again, it just isn't -- if you're going to

12   have an opt out, you don't want to limit the information --

13           MR. HUEBNER:  Yep.

14           THE COURT:  -- that --

15           MR. HUEBNER:  Understood.  And so, I think we've

16   improved the TDP, and we've improved the document, and

17   that's all a good thing.

18           THE COURT:  Okay.

19           MR. HUEBNER:  But, obviously, there are sort of

20   very pro-PI things that animated the approach and that we've

21   tweaked --

22           THE COURT:  That's fine.

23           MR. HUEBNER:  -- even better, and that's a good

24   thing.

25           THE COURT:  Okay.

1              MR. HUEBNER:  We appreciate --

2              THE COURT:  And I think this is a disclosure

3      issue, because people need to be know -- need to know the

4      consequences of not doing either, which effectively means --

5              MR. HUEBNER:  And by the way, just --

6              THE COURT:  -- you have to provide that

7      information within 150 days, which is fine.  I think that's

8      --

9              MR. HUEBNER:  Correct.  And Your Honor, I don't

10     mean to put anybody on the spot, but the PI lawyers who

11     largely drafted the TDPs and do this all the time, are

12     listening to this hearing.  I'm assuming, since the Debtors

13     are nodding and agreeing and, you know, and tweaking and the

14     like, that if for some reason we are saying something or

15     agreeing to do something that they find anathema, that they

16     actually need to say it now as opposed to after the hearing,

17     saying we listened to you agree to make the 150 an opt

18     in/opt out choice, but not a claim disallowance choice,

19     absolutely not.  We're now withdrawing our support for the

20     plan.

21              And I apologize to Mr. Shore and Ms. Steege and

22     others, but we're making sausage here.  I don't know a

23     better way to do it, and there are lots of parties who are

24     staying silent as we are agreeing to tweaks that the Court

25     is all but demanding/suggesting, and I do feel as a matter

Page 143

1    of process, that anyone disagrees, it's a little bit speak

2    nor or forever hold your peace, and again, I do -- I don't

3    mean to put anybody on the spot, but I just don't know a

4    better way to do it.

5                THE COURT:  Mr. Shore, you're on mute, I think.

6                MR. SHORE:  I'm sorry, Your Honor.  Chris Shore

7    from White & Case.  I had some comments to make later about

8    bigger issues.  On the scale of issues that are likely to

9    cause a plan failure or not, the issues that are being

10   discussed right now are not, and I will speak up if and when

11   we get to one.  As Your Honor just laid it out, a hundred --

12   as long as we can do 150 days and if, after that period, you

13   haven't filed, you're deemed to be in, we'll just make sure

14   the disclosure is robust.

15               THE COURT:  Okay.  Thank you.  Okay.  Anything

16   else, Mr. Lipson?

17               MR. LIPSON:  Yes, just a couple of quick things.

18   First, I apologize if we didn't make that issue clear enough

19   at the outset, but the procedures themselves weren't

20   provided until very recently.

21               THE COURT:  That's fine.

22               MR. LIPSON:  I apologize if that wasn't clear.

23   But my understanding, just for the clarity of the record, is

24   that if you fail to exercise the option one way or the

25   other, the Debtors will put you into one category or the

Page 144

1   other.  They are not simply disallowing your claim.  Is that

2   correct, Your Honor?

3          THE COURT:  Well, except -- I think the

4   consequence of not acting is that you would be in the non-

5   judicial liquidation --

6          MR. LIPSON:  Of course.

7          THE COURT:  -- mode --

8          MR. LIPSON:  Of course.

9          THE COURT:  And that mode will have a deadline and

10  I think --

11         MR. LIPSON:  Of course.

12         THE COURT:  -- I don't have a problem with the

13  notice saying, you have to provide this information by the

14  opt in deadline, so --

15         MR. LIPSON:  Yeah.

16         THE COURT:  -- it just needs to be clear you're in

17  one or the other.

18         MR. LIPSON:  Right.  So then, I think we've

19  addressed that one.

20         THE COURT:  Okay.

21         MR. LIPSON:  We did have two points on the best

22  interests issue, which I'm happy to address now, I'm happy

23  to address later.  It's really whatever is best for Your

24  Honor.

25         THE COURT:  Now is good.

1          MR. LIPSON:  Okay, so Your Honor pointed out,

2     correctly, that there are two ways of thinking about the

3     personal injury claims.  One, those that could possibly be

4     asserted directly against non-Debtors and those that would

5     be derivative.  And that, I think, is a helpful way of

6     thinking about this.  I think the point that we raised with

7     respect to best interests is that the early version said

8     nothing about what would happen, what the value of those

9     direct claims which, obviously, creditors would retain in a

10    Chapter 7 liquidation.

11         The Debtors have added a footnote in the

12    liquidation analysis saying, essentially, well, you would

13    retain those direct claims, whatever they are, in a

14    liquidation.  But none of the numbers in the liquidation

15    analysis change and there's no other valuation.  Now, the

16    Debtors' response, obviously, as well, these are speculative

17    and they're hard to estimate and we don't know.

18         And I understand that.  But, having said that,

19    Your Honor, I think everybody knows that shortly before

20    petition date, it sounds like that Sacklers did lose two

21    motions to dismiss that asserted direct claims against them.

22    They were not personal injury claims, as I understand it.

23    Nevertheless, they established that maybe there is --

24         THE COURT:  But the plan --

25         MR. LIPSON:  -- direct claim --

Page 146

1              THE COURT:  The plan discusses personal -- non-

2     derivative third-party claims, in the discussions --

3              MR. LIPSON:  Can I just -- they added a great deal

4     of material on it.  That's correct, Your Honor.  But what

5     they didn't say, and I think any creditor reasonably would

6     want to know, is by the way, there were these two motions to

7     dismiss against the Sacklers that were denied shortly before

8     bankruptcy, and we -- they must've had some value, Your

9     Honor, otherwise, we wouldn't have worried about the

10    preliminary injunction.  We wouldn't be worried about the

11    non-Debtor releases.

12             I'm not asking for a precise number.  I am asking

13    for disclosure of the fact that it sounds like shortly

14    before bankruptcy --

15             THE COURT:  I think that --

16             MR. LIPSON:  -- some plans were making --

17             THE COURT:  The discussion actually references

18    motions to dismiss, both granted and not granted, and then -

19    -

20             MR. LIPSON:  I don't -- as to non-Debtors, I

21    didn't see it, Your Honor.  If I did -- if I missed it, I

22    apologize.

23             THE COURT:  I think it does.

24             MR. LIPSON:  If the Debtors are willing to make

25    that clear, then I'm fine on that.  There's only one other

1    issue.

2            THE COURT:  Okay.

3            MR. HUEBNER:  Your Honor, let me help for a

4    second, if I may.  If the disclosure statement does not

5    already reference those two decisions, I think we're

6    probably happy to add them.  Obviously, this is just about

7    more information which we're always good with.  But just to

8    potentially help people along, I'm actually going to take

9    two minutes and explain some more of our thinking about

10   this.

11           It will be our burden at confirmation, but it's

12   just critically important to me that the Court and all

13   parties -- frankly, the objectors maybe most of all,

14   understand that we believe we have considered, really, an

15   almost innumerable number of things.  The issue, to us, is

16   not that an individual plaintiff might not win a lawsuit

17   against the Sacklers at some point.

18           The issue is that there are hundreds of thousands

19   of them, and the collective tragedy of the commons is -- or

20   negative tragedy of the commons, I'm not sure which way to

21   think about it -- is that if every one of those lawsuits

22   proceeds, they are competing with the estate.  They are

23   competing with a fair and efficient distribution.  The

24   Sacklers would use all of their resources, obviously, to

25   avoid the cataclysmic outcome of losing those lawsuits.

Page 148

1            Billions would probably be spent on legal fees.

2    It would be years until, if ever, individual claimant might

3    actually get a recovery, because, presumably, the Sacklers

4    would fight as long as the needed to, appeal as they needed

5    to, and then if it really came to that, because the

6    judgements were overwhelming, declare bankruptcy in the U.S.

7    fora or other fora, as they needed to, and ultimately, they

8    would be in control of those bankruptcies as opposed to sort

9    of fiduciaries for the estate who are the plaintiffs

10   opposite the Sacklers.

11           And so, we're not taking the view, which is why we

12   might not have cited those two cases, in the disclosure

13   statement that no one is going to win an individual claim

14   against the Sacklers, nor is that remotely our burden.  I

15   don't actually believe it to be true, as it happens.  You

16   know, you roll the dice 100,000 times or 10,000 times or

17   2,000 times or 1,000 times, every combination of numbers

18   some up.  That's just now math works, and it's certainly how

19   our legal system works.

20           So, from the first moment of these cases, the

21   ethos that has been animating us that I believe is shared by

22   the Court and, frankly, virtually every stakeholder in the

23   case, is a collective action approach to, frankly, get the

24   most money we can including from the Sacklers.  So, I just

25   want to be clear.  We're not going to be able to put on a

Page 149

1    case at confirmation, nor would we ever try, that -- but I

2    don't know if he prefers to be called Professor Lipson or

3    Mr. Lipson -- I'm actually trying to be maximally

4    respectful, but I don't know which is better -- that

5    Professor Lipson's client would lose against the Sacklers

6    and that's why we win the best interest test.  We would

7    never do that.

8              As you know, Davis Polk has never defended having

9    zero liability and that we win every lawsuit.  That has been

10   something we sidestepped from the information brief that was

11   filed within one second of the filing.

12             The issue isn't if Professor Lipson's right and

13   his client and 600,000 other clients and 48 states and the

14   federal government and 30,000 municipalities all have valid

15   claims and they all pursue them individually, first of all,

16   the estate claims, we believe, are radically stronger,

17   including with the ability to invade the Sacklers' trust,

18   potentially, on a fraudulent transfer theory, so we actually

19   think they lose to the estate in a world of limited

20   resources.

21             But if they all won, they all lose, and in the

22   end, lawyers make billions and claimants, potentially, get

23   little to nothing, and it's years and years away.  That is

24   our view on best interest that we will be prepared to show

25   at confirmation.  We may be wrong, Your Honor, but we truly

Page 150

1    believe that the path that we have in front of us is the

2    best available to help the American people and each of the

3    stakeholders.

4            THE COURT:  Okay.  Well, I think the disclosure

5    statement's additions that were in the version for the third

6    amended plan make all those points and I think, under the

7    circumstances, the liquidation analysis is sufficient when

8    coupled with that now pretty lengthy discussion.

9            MR. LIPSON:   Your Honor, thank you.  I did have

10   one other best interest point to make if that's okay.  And

11   again, it sounds like the Debtors are not willing to add

12   language about those litigations, and so be it.  We're not

13   here, litigation confirmation.  We understand that this is a

14   collective action problem, but we also understand that, you

15   know, the best interest test is an individual test.  It's

16   not a collective test.  But we're not litigating that now.

17           We, obviously, reserve all of our rights to deal

18   with that at confirmation.  The other disclosure issue with

19   respect to best interests, involves the, what you call or I

20   think you characterize as the derivative claims, such as

21   veil piercing, that could be asserted against -- might be

22   (indiscernible) against the Sacklers.  And I think it would

23   be helpful for there to be some explication of the

24   relationship between the standard that the Debtors have

25   articulated in the disclosure statement for doing that, on

Page 151

1    the one hand, versus statements that they've made in both

2    their preliminary injunction complaints and in the

3    settlement with the Department of Justice.

4              And very briefly, it's that the -- I think the

5    standard to -- they articulate for piercing the veil

6    involves showing that the shareholders exercised complete

7    domination over the corporation and did so to perpetrate

8    some sort of wrong.  Fine.  That's a standard that may or

9    may not be correct.  I have no view on that.  We know from

10   the Department of Justice settlement, the Debtors' own plea

11   agreement, I believe, that there's statements to the effect

12   that the certain member of the family that were on the board

13   were acting as the de facto CEOs of the company at certain

14   points in time.  Well, those two things seem to be in

15   conflict.

16             Obviously, the disclosure statement is not the

17   place to resolve that conflict, but if I'm a reasonable

18   creditor, I'd like to know about that statement, because

19   maybe I don't want to vote for a plan that releases them,

20   because I don't want to give up that set of right.

21             THE COURT:  Well --

22             MR. LIPSON:  And --

23             THE COURT:  I think, frankly, if you're going to

24   do that, then you should also refer to the Second Circuit,

25   and frankly, it's around the country law that makes clear

Page 152

1   that those rights, unless the actions were addressed to a

2   particular creditor, are derivative, and therefore, not a

3   third party's rights, going back to --

4                    MR. LIPSON:  I --

5                    THE COURT:  -- St. Paul Fire and Marine v. Pepsico

6   and there's a good discussion in Cabrini Medical Center, 489

7   B.R. 7 (S.D.N.Y. 2012) from Judge Scheindlin, so again, we

8   were talking about releases and I was a little surprised

9   that creditors weren't made aware of those -- of that

10  caselaw, which basically says that's an estate cause of

11  action, not a third-party cause of action, i.e., veil

12  piercing, unless the exception is established, so I think if

13  it goes anywhere, it's not on the non-derivative causes of

14  action, the third-party causes of action.  It would be in

15  the Debtors' evaluation of the settlement, and --

16                   MR. LIPSON:  I think that's correct, Your Honor.

17                   THE COURT:  I'm loathe to add anything to that

18  section, since it's already in seven single-spaced pages,

19  but I think, there is a cross reference to the facts

20  attached to the DOJ judgment, but if not, there can be one,

21  I suppose.  I don't have a problem with that, cross

22  reference to it.

23                   MR. LIPSON:  I think that, and I think the fact

24  that the Debtors, you know, have certainly said that they

25  were inextricably intertwined with the Sacklers, which seems

Page 153

1    to go to this same set of standards.  I think --

2               THE COURT:  Well --

3               MR. LIPSON:  -- that's information the Debtors

4    would want to know about.

5               THE COURT:  I think that would be a good subject

6    for a law school exam, not a disclosure statement, so I

7    think we don't need to get into that level of detail.

8               MR. LIPSON:  Okay.  With that, Your Honor, I --

9    we, obviously, reserve our rights to address these issues at

10   confirmation, but thank you very much for hearing us and

11   thank you to Davis Polk for working with us.

12              THE COURT:  Okay.  Okay, Mr. McClammy.

13              MR. MCCLAMMY:  Thank you, Your Honor.  One last

14   one from me before I turn the podium over to Mr. Klein.

15   Late last night, there was a submission.  It wasn't even a

16   filing.  I believe chambers may have received an email with

17   a letter from the Miley Legal Group purporting to represent

18   156 children who filed claims --

19              THE COURT:  No, I read that.

20              MR. MCCLAMMY:  -- in the bankruptcy and --

21              THE COURT:  I read that.  I don't really -- I

22   mean, I find -- I don't know if counsel for them is on the

23   phone.  No?  I mean, I read the letter.  It's -- to me, it's

24   a straight confirmation objection issue as to the allocation

25   as between the various personal injury claimants, i.e., the

Page 154

1    NAS group on the one hand and the non-NAS PI group on the

2    other.  Of course, there's a separate NAS trust as well.

3           I think those are all confirmation issues.  I

4    don't think they really raise a disclosure statement issue.

5    I think the disclosure statement sets out, I think, a -- one

6    can reasonably, particularly if you are representing 150

7    people, particularly since you weren't involved in the

8    negotiations and chose not to be, I gather, figure out on

9    your own or pretty well figure out on your own why there's

10   the distinction as far as the amount of payment to each

11   party, i.e., potentially more for someone who died.

12          But, so to the extent it would be viewed as a

13   disclosure statement objection, I'll overrule it.

14   Obviously, those --

15          MR. MCCLAMMY:  Thank you, Your Honor.

16          THE COURT:  Those issues are reserved for

17   confirmation.

18          MR. MCCLAMMY:  Thank you, Your Honor.  Just wanted

19   to make sure that we had the record clear with that.  And

20   with that, I'll turn the podium over to Mr. Klein.

21          THE COURT:  Okay.

22          MR. KLEIN:  Thank you, Your Honor.  For the

23   record, Darren Klein from Davis Polk.  Can you hear me?

24          THE COURT:  Yes.  Fine, thanks.

25          MR. KLEIN:  I believe that takes us up to the

1    objection of the nonconsenting state group --

2              THE COURT:  Okay.

3              MR. KLEIN:  -- at Docket 2762, so I would turn it

4    over to Mr. Troop, unless Your Honor wants to do it

5    differently.

6              THE COURT:  No, that's fine.  I'll handle this

7    like I handled the other ones, which is, I'm going to ask

8    you, Mr. Troop, what, in light of what has been filed, since

9    the declaration was filed, is the nonconsenting state group

10   pursuing at this point?

11             MR. TROOP:  Thank you, Your Honor.  Andrew Troop

12   for the nonconsenting state group.  I'd like to thank Mr.

13   Klein and his colleagues for their time just this past

14   Sunday morning to talk with us about our disclosure

15   statement objections.  I think during that process,

16   (indiscernible) a lot of information and I also think that

17   it will help narrow some issues here today.

18             Your Honor, I'm just going to preserve the record

19   for some things, but I understand I'm not going to change

20   your mind on some things.

21             THE COURT:  Okay.

22             MR. TROOP:  (indiscernible).  Thank you.  Your

23   Honor, with respect to when the plan supplement should be

24   filed, I very much appreciate the fact that there's a lot of

25   stuff put on the record today about the most critical issue

1    in this case, I think, with respect to parties deciding to

2    vote yes or no.  And I haven't had a chance to look through

3    that, but what I did hear today is that this ultimate

4    document and what's been filed today is anything but easily

5    accessible and readable.

6           I heard things about ten pods, which I've heard

7    about before, but I don't know what they are, who they are.

8    I heard about, effectively -- and maybe I misheard it --

9    I've heard about different collateral and covenant packages

10   for each pod.  I've heard about different levels of

11   liability as or among the pods.  And from a timing

12   perspective, Your Honor, however complete the terms sheets

13   were that were filed today, having only ten days before the

14   voting deadline to look at final documents that would clear

15   up questions, raise questions, resolve open issues, that

16   still seems small, like too little time, Your Honor.

17          And we didn't ask for much more.  We understand

18   that the Debtors are pushing for a quick (sound drops) I

19   think, at this point, too quick, but a quick process to get

20   to confirmation, and we asked for two weeks.  And it's hard

21   to say -- I shouldn't say that.  (indiscernible), Your

22   Honor.

23          It strikes me that these documents that have been

24   listed for the plan supplement, in particular, the Sacklers'

25   settlement agreement, need to be finalized at least two

Page 157

1    weeks before the filing and nobody needs that extra four

2    days that you gave them, so I would ask you to reconsider

3    that timing issue and to require the final date for the plan

4    supplement to be two weeks before the filing deadline.

5              I'm going to run through them all, Your Honor --

6              THE COURT:  Well, again, the -- I think, given the

7    detail that is filed before then, people can certainly

8    prepare to read those documents and raise issues with them

9    before the hearing, with the seven days' notice.  I have to

10   balance the need to get this addressed at confirmation with

11   people's ability to function.  We're talking about people

12   who have very sophisticated counsel and I think, obviously,

13   have a real interest in this matter, so with the caveat that

14   if there are real changes from the terms sheet, I don't see

15   why the seven days isn't sufficient.

16             MR. TROOP:  (indiscernible).

17             THE COURT:  It may be --

18             MR. TROOP:  (indiscernible) ten days, Your Honor.

19             THE COURT:  Well, whatever.  I think it's seven,

20   actually.

21             MR. TROOP:  Seven?

22             THE COURT:  Yeah.

23             MR. KLEIN:  It's seven, Your Honor.

24             THE COURT:  So, but I think that, again, if people

25   have questions, my experience is that if they're legitimate

Page 158

1    questions and not just intended to delay things and I am

2    pretty sure you would fall into the former camp and not the

3    latter one, the Debtors and their counsel will give people

4    more time and engage, and if they don't and there's a good

5    reason to give you more time, I would do it.  So, you know,

6    the deadline works two ways.  If you really do need more

7    time, because the document raises a whole host of issues,

8    materials ones that can't be reviewed in that period before

9    the objection deadline, I'll give you more time to object,

10   but --

11              MR. TROOP:  -- actually --

12              THE COURT:  -- deal with that then as opposed to

13   now, because in my view, deadlines actually lead to

14   agreements and results and I think this is a sufficient

15   deadline here.

16              MR. TROOP:  Thanks, Your Honor, but to be clear, I

17   wasn't considering the issue of being teed up for the

18   objection deadline with respect to the plan, which is longer

19   than seven days after the plan supplement.  I was focused on

20   the voting deadline.

21              THE COURT:  Well --

22              MR. TROOP:  Seven days before the voting.  And so,

23   it's not an issue.

24              THE COURT:  That, too, could be --

25              MR. TROOP:  To me --

Page 159

1         THE COURT:  -- extended on agreement.  All right?

2         MR. TROOP:  Understood, Your Honor.

3         THE COURT:  Okay.

4         MR. TROOP:  Okay, thank you.  Your Honor, the next

5    issue with respect to -- been raised with respect to the

6    term listings, and I very much appreciate the additional

7    disclosure.  I remind the Court only that under the phase

8    one agreements, these abatements with respect to attorneys'

9    fees have to be acceptable to the creditor group, as a

10   group, and that includes my group and my (indiscernible).

11   And we have not consented, and are not taking a position on

12   the merits at the moment.  We saw the final proposal, just

13   as you did, and it's out there, Your Honor --

14        THE COURT:  That's fair, but I do expect your

15   group to engage on it.

16        MR. TROOP:  Right.

17        THE COURT:  And I know they will.

18        MR. TROOP:  As we have in the past and will again

19   (indiscernible), Your Honor.  The next issue has to do with

20   that seven-page, or whatever it is (indiscernible) depending

21   upon who's telling, description of the Sackler settlement,

22   and Your Honor, only you can decide whether that description

23   adequately answers your questions for the Debtors to have

24   set forth the pros and cons of that settlement, and, as you

25   remarked, there may not be much that my client needs to know

Page 160

1    more, given our involvement in it.

2            And so, I make my disclosure statement,

3    disclosure-disclosure comments about that section, in a very

4    focused way.  One of the things that I think everyone needs

5    or is entitled to know is what the Sacklers are worth today.

6            THE COURT:  What they're worth?

7            MR. TROOP:  What they're worth today, right?

8            THE COURT:  I don't -- you know --

9            MR. TROOP:  I think that gauging a settlement and

10   gauging the claims has a lot to do with, what are they

11   worth.

12           THE COURT:  It's not -- Mr. Troop, when you say

13   "they," you mean each individual person and then have a line

14   as to, you know, collectability because they're offshore and

15   then a line saying risk of liability?  I mean, I think it's

16   -- I guess if you're going to say it in the aggregate, you

17   have to make all those other points, right, or else that

18   could be misleading.  You know, it's not like, as I gather,

19   Scrooge McDuck, who just, like, takes a bath in the vault of

20   cash that he has in his apartment, right.

21           There's not -- A, there's not one Scrooge McDuck.

22   There are a lot of them.  B, it's not cash.  You know, so

23   there are a lot of permutations to what you're suggesting.

24           MR. TROOP:  Your Honor, I do think, fundamentally,

25   that's the kind of information that individuals are being

Page 161

1    asked to effect -- being asked.  Not being asked, maybe

2    compelled --

3             THE COURT:  Well --

4             MR. TROOP:  -- to give up their direct claims

5    against the Sacklers, should know, Your Honor.  It's the

6    kind of information they would ask for on their own, if they

7    were being asked --

8             THE COURT:  All right.  All I'm saying -- you're

9    going to say there's an aggregate value that the Debtors

10   believe the Sacklers are worth, and I'm not even sure if

11   that's net of liabilities or just before liabilities, but

12   value they're worth.  One would also have to say, there are

13   many of them.  Some are worth more than others within that

14   aggregate group.  Some have liabilities that are -- I mean,

15   some have different levels of potential liability and some

16   have different levels of collectability in respect of the

17   assets that they have.

18             I guess one could say that.  it's not that helpful

19   when you actually address all of those points, but I guess

20   one could say that.

21             MR. TROOP:  And again, Your Honor, I'm thinking of

22   this from the perspective of, what would an individual who's

23   being asked to give up their claims --

24             THE COURT:  Well, but --

25             MR. TROOP:  -- against parties, take into account?

Page 162

1    Because I really am going to try not to engage, too much, on

2    --

3              THE COURT:  I'm agreeing with you, Mr. Troop.  I'm

4    just saying, that you have to put -- you can't just say

5    they're worth, pick a number, $11 billion.  You can't just

6    say that, because that's actually misleading.  That would

7    mislead someone to think that I could recover up to $11

8    billion.  It's just not -- that's not fair.

9              That actually is misleading, on many grounds, even

10   before you get to the merits, so if one is going to put a

11   number down, you have to say those other things, and I'm --

12   I guess I'm okay with it in that context, being said, but

13   just basically just saying that and I'm reacting to it,

14   because the objection actually said, and the U.S. Trustee's

15   objection mirrored this, that someone doesn't explain how

16   you can't collect, in essence $11 billion from these people,

17   and as, I think, every lawyer on the phone knows, if you

18   just say $11 billion, people who aren't lawyers think oh, I

19   can collect $11 billion.  Just, that's misleading.

20             MR. TROOP:  Your Honor, I think --

21             THE COURT:  Mr. Klein, do you have any problem

22   with saying that there have been statements by the Sackler

23   families themselves that, in the aggregate, their net worth

24   is X and combine that with a statement about, obviously,

25   that's a aggregate net worth.  There are different people

Page 163

1    who have different net worth within that aggregate number

2    who have different levels of potential liability and

3    finally, who have different levels of collectability?

4              MR. KLEIN:  Your Honor --

5              MR. HUEBNER:  Your Honor -- hey, Darren, sorry.

6    Your Honor, this is a special committee issue, and actually,

7    this isn't me (indiscernible) on a Mr. Klein thing.  I

8    apologize to him if it's not, that he probably doesn't know

9    the right answer.  I'm sure he does, but I -- we've actually

10   been very careful about this and those are not meetings he's

11   in, so I would like to answer, and with apologies to Mr.

12   Klein.

13             THE COURT:  All right.

14             MR. HUEBNER:  The special committee absolutely

15   took exactly these things into account.  There was very

16   detailed financial diligence about the individual wealth and

17   individual liquidity of individual Sackler pods, which is

18   why each of the eight A-side pods, frankly, has a slightly

19   different collateral package and a slightly different set of

20   covenants, and I think that it is the Debtors' settlement

21   and our job is to show that it is reasonable, not, in fact,

22   to publish every piece of information --

23             THE COURT:  But I'm not --

24             MR. HUEBNER:  -- what was received in doing so.

25   No -- I know, I'm --

Page 164

1         THE COURT:  -- talking about publishing or not.  I

2    think we're basically saying --

3         MR. HUEBNER:  No, agree.  I'm about to --

4         THE COURT:  -- aggregate statement, which is out

5    there in the press, and say how it was analyzed, not --

6         MR. HUEBNER:  Yeah, no --

7         THE COURT:  -- steps that were taken.

8         MR. HUEBNER:  Yeah, I was about to get to, yes.

9         THE COURT:  Okay.

10        MR. HUEBNER:  I was literally going there next.

11        THE COURT:  Okay.

12        MR. HUEBNER:  Which is -- and therefore, we are,

13   of course delighted to add more language that essentially

14   says -- and I'm assuming the Sacklers would tell us if they

15   believed that what Congress put out as having been submitted

16   by the Sacklers is not correct, that we were aware of the

17   aggregate wealth number as well as substantially more

18   detailed information that the Debtors and the UCC and the

19   AHC and the MSGE all had access to and took all of that into

20   account, including different levels of wealth, liquidity,

21   potential liability, and accessibility, as part of coming to

22   the settlement and the individual terms sheets.

23        THE COURT:  Okay.

24        MR. HUEBNER:  Delighted to do that.

25        THE COURT:  All right.

Page 165

1           MR. HUEBNER:  Absolutely, full stop.  It's a fair

2    request and we're happy to add it.

3           THE COURT:  Okay.

4           MR. TROOP:  Thank you.  Thank you, Your Honor.  If

5    I may, then, just one other point on that.

6           THE COURT:  Sure.

7           MR. TROOP:  The information that was provided or

8    at least released by the Congress is out of date

9    information.  I believe that for Side A, it was as of

10   September 2019, and I can't remember whether -- I honestly,

11   just at the moment, can't remember what the information was,

12   with respect to Side B.

13          But I also know that within our groups, we don't

14   have updated information that's not eight or nine months

15   old, and so I'm assuming that either the Debtors relied on

16   the existing, out-of-date information or they got updated

17   information and that what would go in the -- if they had

18   updated information, what would go in the disclosure

19   statement would be based on the updated information, the

20   diligence that they undertook, and consideration, in

21   connection with reaching this agreement.  Or, if they relied

22   on the other, they should say that, too.  People should just

23   know.

24          THE COURT:  Okay.  In the aggregate.

25          MR. HUEBNER:  Yeah, Your Honor, we'll put in what

Page 166

1    we can.  I don't want to over speak, given that a lot of the

2    financial diligence was done by, essentially, kind of

3    forensic financial advisors, from Alix and otherwise,

4    similar to how the massive reports on Sackler transfers on

5    the docket were done, but Mr. Troop's question is a fair

6    one.

7            Again, balancing the disclosure statement is --

8    and TMT Trailer required adequate information.  We'll be as

9    sensitive as we can to saying as much as we can about the

10   quality and nature of information, knowing that you're not

11   looking for a new white paper on this.

12           Mr. Joseph, there's a lot of background noise, if

13   you could just wait until I'm done, if you don't mind, and

14   stay on mute.

15           So, we'll add some stuff, is the short answer, and

16   do the best we can.  Again, we're very pro disclosure and

17   happy to explain, as I think I'm making possibly painfully

18   obvious, what went into our thinking and the incredible

19   amounts of information that was synthesized to come to the

20   conclusions, and we're happy to say a little bit more about

21   it as best we can.

22           THE COURT:  Okay.

23           MR. JOSEPH:  Your Honor, Gregory Joseph for Side

24   B, just briefly.  In the position statement that we provided

25   to the Court, we linked to a website that has the

Page 167

1    information we provided to Congress about all financial

2    information, which included a bring-down as of March 2021.

3    There's a lag time involved --

4              THE COURT:  Right.

5              MR. JOSEPH:  -- but it's current (sound drops)

6    information --

7              THE COURT:  Okay.

8              MR. JOSEPH:  -- given that lag time.  So that's

9    already public.

10             THE COURT:  All right.  And there is a hyperlink

11   in the document, but I think --

12             MR. JOSEPH:  Right.

13             THE COURT:  -- still putting that in the section

14   of the disclosure statement is, as discussed the last few

15   minutes, is worthwhile, so that's fine.

16             MR. HUEBNER:  Yep.  Done.

17             THE COURT:  Okay.  Anything else, Mr. Troop?

18             MR. TROOP:  Yes, Your Honor.  I'm just scrolling

19   through my notes.

20             THE COURT:  Okay.

21             MR. TROOP:  Sorry.  Your Honor, this morning, when

22   Mr. Huebner was getting his summary, he talked about how the

23   negotiations had been over, how to make the settlement with

24   the Sacklers money good.  And I apologize for a second, Your

25   Honor.  My allergies are kicking in, so my voice may be

Page 168

1    (indiscernible) in and out.

2            I think one of the things that the disclosure

3    statement should explain to people is why the Sacklers

4    settlement is money good, and why it doesn't suffer from the

5    same collection issues that have been raised with respect to

6    the existing claims, and I make that point, Your Honor,

7    again in -- admittedly with some level of (sound drops),

8    because I haven't been through all of the -- or, frankly,

9    any of the documents filed this morning.

10           But again, my understanding is that there are ten

11   pods with, effectively, ten different sets of agreements

12   with ten different potential results if any one of the ten

13   default -- one.  And two, then there are collection issues

14   at that moment in time.  And I think parties are entitled to

15   understand what those challenges are.  I heard Mr. Huebner

16   say that, you know, the net of litigation --

17           THE COURT:  Can I interrupt you, Mr. Troop?  And I

18   tried not to interrupt you too much, because I don't like to

19   interrupt you, any more than anyone else.  But to me, just a

20   reference to the efforts that the Debtors, the Committee,

21   and others have made and obtained to enhance the

22   enforceability of the payment of the settlement, is enough.

23   Beyond that, you're really speculating, and you're

24   speculating, again, in this context.

25           It's a choice of someone to vote in favor of the

Page 169

1    plan or not, and we're talking about in favor of the release

2    or not, and all of those concerns would exist in spades if

3    they didn't -- if there were not a contribution and there

4    were not a release, because you wouldn't have anything.  You

5    wouldn't have the guarantee.  You wouldn't have collateral.

6    You wouldn't -- et cetera.

7              So, I think, at that point, you're getting a

8    couple steps removed from what people really need to focus

9    on, but it's certainly fine to highlight, and I'm assuming

10   that the modified disclosure statement does -- I just

11   haven't had a chance to review it -- that, in fact, these

12   terms have been negotiated.  They're in the terms sheet and

13   the purpose of it, as sought by the estate parties, was to

14   enhance the collectability if there was ever a default.

15             MR. KLEIN:  Your Honor, it's Darren Klein.  You're

16   correct that the terms sheets that were filed this morning,

17   some of them focused exactly on the security from the ten

18   different pods and the covenants that various different pods

19   are signing up to, all of which was up to the last minute

20   being negotiated exactly for this reason, to maximize

21   (indiscernible).

22             THE COURT:  But again, it's -- I don't think

23   anyone reading the document would assume that, you know,

24   that this is the equivalent of a letter of credit.  But on

25   the other hand, I think they would also realize that their

Page 170

```
 1   alternative is far away from a letter of credit as well, so

 2   I think that's sufficient.

 3            MR. KLEIN:  Thank you.

 4            MR. HUEBNER:  Your Honor, just one second on this.

 5   I want to correct one thing that I was not aware of before.

 6   In addition to the hyperlink to the Sacklers' presentation,

 7   which I (indiscernible) much more brought down financial

 8   information, we actually did already put in the new section,

 9   on Page 137, that the $11 billion figure released by

10   Congress, and so I do want to note that we actually did do

11   that, and so I think that that's --

12            THE COURT:  I thought you did, but I think the

13   context in which the special committee considered it is

14   worthwhile because it is --

15            MR. HUEBNER:  No, no, that -- agreed.  I'm not

16   reopening what -- the change we are, for sure, already going

17   to make.  I just wanted to let the Court and the world know,

18   and these are, obviously, all things we considered.  One

19   last thing, as I've mentioned this.

20            I think probably -- we probably spent a fair

21   amount of time on this, but whether or not any party in this

22   case, even after two years, has any reason to doubt the

23   complete integrity and dispassion of the Debtors itself, it

24   does bear mention, because people very often confuse and

25   forget this, that the UCC, which has been a bitter --
```

Page 171

1    bitterly opposed litigant and a passionate litigant opposite

2    the Sacklers and the consenting states and MDL, PC -- and

3    MDL PC was one of the original litigants that brought all

4    this to where we are today -- as well as the MSGE, we're all

5    the counterparties here, and I think that, frankly, every

6    party should take comfort that there are four serious

7    adverse parties who've been facing the Sacklers for months

8    negotiating things like a billion dollars of pledged

9    collateral, in addition to a pledge of the multibillion

10   dollar IACs plus customized covenant packages --

11            THE COURT:  Okay, but, again, I think this is in

12   the disclosure statement, so I want to just --

13            MR. HUEBNER:  Correct.

14            THE COURT:  -- focus on what's before me today,

15   which is the disclosure statement.

16            MR. TROOP:  Thank you, Your Honor.  And again, to

17   the extent that it wasn't clear, the objection on this point

18   and the request for additional information --

19            THE COURT:  Right.

20            MR. TROOP:  -- was not intended to suggest that

21   Mr. Huebner and his team, Mr. Preis and his team, Mr.

22   Eckstein and his team, Mr. Gilbert and his team, Ms.

23   Cyganowski, Mr. Maclay, haven't worked their tails off to

24   try to get the best -- to try to get a package that they

25   think is the best that they can.  The request was, or the

Page 172

```
 1   issue was, that if where they could get through negotiation,

 2   continues to have sufficient collectability risks upon

 3   default, then parties who are being able to give up their

 4   claims ought to know that they may just be trading a problem

 5   they have now for a problem they'll have later.  And I --

 6   and Your Honor --

 7            THE COURT:  Again, people will be able to evaluate

 8   that by seeing the terms sheet with the collateral and the

 9   like.  I just -- beyond that, you really are speculating

10   about people and businesses and the economy and again, if

11   you do that, then you're just going to invite more

12   discussion, although there's plenty of it in there already,

13   about people's ability to collect, if the pursue individual

14   causes of action.  So, I think we have to draw a balance

15   here.  I think what we've come up with is sufficient.

16            MR. TROOP:  I understand your ruling, Your Honor.

17            THE COURT:  Okay.

18            MR. TROOP:  The next part of the objection that, I

19   think, I want to address has to do with -- I'm sorry.  One

20   second.  Your Honor, I'd like to talk for a moment in a very

21   brief moment about the public document repository.  You, in

22   a prior draft of the plan, there was a footnote which

23   identified that this issue had not yet been resolved and was

24   still being addressed, and I note that this is an issue that

25   we're addressing together with the consenting states and not
```

Page 173

1    independently.

2            That footnote has been dropped from the disclosure

3    statement and the plan.  Today, during the course of the

4    hearing, we received an email from Dechert, not bankruptcy

5    counsel, but counsel to the Debtors, confirming that the

6    dropping of that footnote was not intended to suggest that

7    there was agreement on the contours of the document

8    discovery or that discussions had ended about it.  If what

9    Dechert's told me is wrong (indiscernible), I would

10   appreciate that -- knowing that.

11           THE COURT:  Okay.

12           MR. KLEIN:  I was on that email, Mr. Troop.

13   Dechert's email is not wrong.  We're going to still continue

14   to negotiate the contours of that.

15           THE COURT:  Okay.

16           MR. TROOP:  Thank you.

17           THE COURT:  While we're on that subject, I did

18   have a question about that, that I don't think is addressed

19   -- and maybe this is because you're still discussing it --

20   the documents being provided are subject to privilege.  If

21   someone wants to challenge a privilege in a non-Court

22   setting, i.e., a professor or an author, who do they go to?

23   Do they go to the Special Master first and then if she says

24   it's privileged, you can't have access to it, do they go to

25   a Court at that point and, you know, for the Court to pass

Page 174

1    on that?

2            It just wasn't clear to me how that issue -- I

3    mean, obviously, if it comes up in a litigation context, the

4    judge presiding over the litigation will deal with it, but

5    if it's just someone that wants access to write a book or an

6    article, who is to make that decision, or is that an issue

7    that's still being decided?

8            MR. KLEIN:  Your Honor, I could not answer the

9    question, honestly, either way.  We're now (indiscernible).

10   Mr. McClammy was still on --

11           MR. VONNEGUT:  Your Honor, this is Eli Vonnegut

12   from Davis Polk again.  I can answer that question.  The

13   short answer is, it's still subject to discussion.

14           THE COURT:  All right.

15           MR. VONNEGUT:  One of the many features of the

16   document repository --

17           THE COURT:  That's fine.

18           MR. VONNEGUT:  -- that are continuing to be

19   discussed.

20           THE COURT:  I just -- it seemed to me that the

21   plan and disclosure statement didn't address it and I don't

22   think they need to at this point.  I don't think it's enough

23   to really -- I mean, obviously, if there's a privilege,

24   someone should have the ability to decide whether it

25   actually is privileged or not and who that someone is, is

Page 175

1      really less important, I think, than just recognizing the

2      obvious, which is that one does need to have someone decide

3      that issue put in controversy, but I want to make sure that

4      the plan hasn't yet decided that, because if it hasn't -- if

5      it has, then that should be addressed in the disclosure

6      statement, because -- but as you're saying, it hasn't yet,

7      so there's a reason why it's not addressed.

8                MR. KLEIN:  Yes, Your Honor.  Fully understood and

9      agreed.  We are working out parameters for the handling of

10     privileged materials, including the resolution of any

11     disputes as to what is and is not privileged.

12               THE COURT:  Okay.  All right, thanks.

13               MR. KLEIN:  Thank you.

14               MR. TROOP:  Consistent with my understanding as

15     well, Your Honor.

16               THE COURT:  Okay.

17               MR. TROOP:  So, Your Honor, I think that brings us

18     to our big two objections, which are the objections that go

19     to unconfirmability of the plan and not letting this

20     particular disclosure statement go out for solicitation with

21     respect to this particular plan.  And in that regard, Your

22     Honor, we're all very familiar with the caselaw, and as both

23     Mr. Huebner and Mr. Lipson addressed the caselaw -- caselaw

24     in this district, stopping plans from going out by not

25     approving a disclosure statement, and Prime Clerk's

1    declaration makes it clear that going out for solicitation

2    on this plan is an expensive process.

3         It may be less than the fees the estate is paying

4    out on a monthly basis, but it's an expensive process, and

5    therefore, whether to defer or not, is a meaningful issue in

6    this case.  And within the objection, Your Honor, I'm really

7    going to -- I've really decided to focus just on two -- two

8    (indiscernible) of it today.  And they are, whether the

9    (sound drops) should send out for solicitation a plan that

10   24 states and the District of Columbia have said they will

11   not support with the releases that were in it, or the

12   Sackler settlement -- with the Sackler settlement.

13        Letting it go out on the hope that that

14   circumstance will change incurs expense when I both believe

15   is (indiscernible) and the law that representatives of

16   (indiscernible) percent of the United States saying no, will

17   undercut, I don't know what (indiscernible).  Your Honor, I

18   don't (indiscernible).

19        THE COURT:  I'm sorry, I couldn't hear that last

20   point.

21        MR. TROOP:  I don't know why we're getting

22   feedback, Your Honor.  I don't think it's me.

23        THE COURT:  Oh.

24        MR. TROOP:  I can't see --

25        THE COURT:  Yeah, I'm not hearing feedback.  Just

Page 177

1    your voice lowered, that's all.

2              MR. TROOP:  I don't think that on these facts at

3    this time, this plan is confirmable and it should go out for

4    a vote.  Doing that doesn't derail anything else that is

5    going on in the case in the hopes of reaching a resolution,

6    and without (indiscernible) and updating the Court, without

7    updating anyone any details, it's not that Judge Chapman is

8    waiting to get started.  Judge Chapman has gotten started

9    and spent, I think, a lot of time with many of us.

10             The second thing that I would focus on, Your

11   Honor, is the classification issue.  This plan fairly

12   offends states on many levels, and one level on which it

13   offends states is that between the combination of the

14   estimation proposal of a dollar per claim and being put into

15   a class that will be decided by its political subdivisions -

16   - political subdivisions, giving the numbers, period, period

17   -- that it turns the relationship embedded in our

18   constitution, and in every state, on its head and it doesn't

19   --

20             THE COURT:  What constitutional provision deals

21   with classification of the claims of states and local

22   governments?

23             MR. TROOP:  It reserves to the states' sovereignty

24   and sovereignty over their domains, Your Honor.

25             THE COURT:  But each state has set up its own

Page 178

1    rules with regard to local governments, but they all have

2    the same types of claims.

3              MR. TROOP:  But Your Honor, there's nothing that

4    says that states have given up their superiority over their

5    political subdivision.

6              THE COURT:  So, are you saying that the states

7    could object to a local government's claim within their

8    state and say, we're not going to let you assert that claim?

9    Your claim should be disallowed because we're a sovereign

10   state?

11             MR. TROOP:  I think, in some states, in fact,

12   that's probably true, Your Honor, right?  And in fact, I

13   think, for example, in the State of Connecticut it's been

14   held that its political subdivisions don't have standing to

15   assert these kinds of claims.

16             THE COURT:  In what context, a class action or in

17   a separate context?

18             MR. TROOP:  I --

19             THE COURT:  But standing is a different issue,

20   right?  We're not really --

21             MR. TROOP:  They're not --

22             THE COURT:  -- which types of claims we're talking

23   about.

24             MR. TROOP:  They don't have the power to assert

25   the claim.

1          THE COURT:  Well, you can object to the claim,

2     then, on that basis, but until it's objected to, it's a

3     claim and it's based on the same facts, I think, that the

4     states are asserting.

5          MR. TROOP:  Some, not all.

6          THE COURT:  But let me go to a different point.

7     It's really not clear to me, ultimately, whether this

8     argument matters.  The plan contemplates and the law

9     contemplates that if I think that someone does have a

10    classification objection, it's not a treatment objection,

11    right, it's the same treatment, and you all haven't opposed

12    that.  In fact, you negotiated that in phase one

13    (indiscernible).

14          I can say, count these votes and put them in Class

15    5A or 4A, whatever, and we'll see, and then the Debtors have

16    to satisfy, potentially, a cramdown.  I'm not sure that

17    matters here, because the treatment's the same and you've

18    never had a problem with the treatment.  The issue is the

19    release and the injunction, so it just seems to me that this

20    is not a reason to stop people from voting -- in fact, not a

21    reason to stop your own clients from voting, no matter how

22    they want to vote, because the only reason it matters is if

23    they vote the way they said they might vote.

24          So, I just -- this, to me, is not an issue that

25    should derail people's voting on the plan, one way or the

Page 180

1    other.

2          MR. TROOP:  Your Honor, I understanding your

3    ruling and I make the assumptions -- but I don't have

4    anything more to argue about it -- that I'm not going to

5    change your mind.

6          THE COURT:  Well, I think that's right, because I

7    don't think there's a basis to.  I think, at some point, you

8    can try to at the confirmation hearing, although, there's a

9    lot of law that what's classified for purposes of 1122 are

10   claims, not people or entities, and they need to be

11   substantially similar and a plan proponent is given a great

12   deal of flexibility in terms of classification, and to say

13   that people shouldn't be allowed to vote because there's a

14   dispute over that, particularly where the plan and the law

15   would permit the Court, if ultimately there was an issue

16   worth fighting about, and the Court determined that the

17   classification was improper, to just let the Debtors amend

18   the plan and create the new class, particularly where the

19   treatment's exactly the same.

20         MR. TROOP:  In that regard, it's interesting, Your

21   Honor, because you can argue about what -- actually, I was

22   (indiscernible).  The treatment's not exactly the same.  The

23   treatment provides that all the money goes to the states,

24   provides that all the money will go to the states and then

25   it will go to regional and non-regional buckets to which

Page 181

1  political subdivisions then need to make grants,

2  applications, in order to get --

3           THE COURT:  The plan says what it says on that

4  point.  All I'm -- the point I'm making is that in the phase

5  one mediation with the caveats that still exist on that, all

6  the states agreed to the allocation among the governmental

7  parties and the non-governmental parties.  So, you know, all

8  we're fighting about here is a potential cramdown fight

9  that, to me, doesn't really mean a lot.  I just -- so it's

10  not a basis to hold up confirmation -- on voting on --

11           MR. TROOP:  Your Honor, as I said, I heard you.

12           THE COURT:  Okay.

13           MR. TROOP:  You made a statement that I thought

14  was not accurate.

15           THE COURT:  Well.

16           MR. TROOP:  I, again, didn't think it was going to

17  change the outcome, right, but I did think it was worth

18  identifying --

19           THE COURT:  Well, I'm not -- I think the plan is

20  very carefully drafted on the treatment of the non-federal

21  public entities, and I'm not going to characterize it, but I

22  will say that your summary of it, actually, reflects your

23  position about the importance of the states, so again, I

24  think this is -- this really does fall into the category of

25  courts don't let people who have confirmation objections

Page 182

1    hold up voting, because it, A, is contrary to the idea that

2    people should be allowed to vote, in almost all cases, and

3    B, the purpose behind it is largely a, I think, a tactical

4    one as opposed to, you know, and ultimately practical

5    effect, in this particular instance.

6            But maybe we should go back to the other point,

7    unless -- to me, your -- I had two responses to the argument

8    that the proposed settlement with the Sacklers and the

9    third-party injunction is a issue that should stop the

10   parties in their tracks at this point.  The first is that --

11   well, it's one, I think, that your clients should

12   understand.  I don't know if they're all elected, but they

13   certainly serve in a public setting.  They know the

14   importance of elections, of voting.

15           They also know that people often change their

16   vote, up to the moment that they actually are about to pull

17   the lever.  I have heard creditors tell me, time and time

18   and time again, I'm going to vote this way, so you might as

19   well not go ahead.  And, frankly, I think the issues are too

20   important here to just accept that at this point and again,

21   it would tilt the playing field too much the other way, if I

22   did so.

23           I think preserving the ability to vote and then to

24   hear the facts, depending on the analysis, is really

25   important and I think if anyone would understand that, it's

Page 183

1   politicians who listen to their own voters and would want

2   them to evaluate it on the facts as they exist at the time

3   when the vote is due.

4        Secondly, it is a confirmation issue and it's very

5   fact driven, and the caselaw is summarized in the Debtors'

6   reply.  I'm not going to have to repeat it to you.  You know

7   it well.  You know Metromedia.  You know Millennium.  You

8   know the -- probably, you've read every case involving a

9   plan injunction and third-party release there is.  I'll note

10  one other one from the Southern District, which also happens

11  to be from Judge McMahon, In re:  Karta Corp. -- K-A-R-T-A

12  Corp. -- 342 B.R. 45 (Bankr. S.D.N.Y. 2006).

13       It's just -- it's a fact-based inquiry and, in

14  part, voting is important.  There are times when people vote

15  in favor of something, just because they don't want to have

16  a fight over it, and that may well happen here.  Or some

17  people will.  But it's a multifactor inquiry, and one of the

18  inquiries is, what are the benefits to someone if they don't

19  get enjoined or have their independent claims deemed

20  released?

21       So, I know that the states have raised, in

22  addition to that, their unique status as states and their

23  police power and their consumer power, but I will note that,

24  while 362(b)(4) references it, 1129 and 1141 don't.  I will

25  note, also, that we're talking about money here.  There's no

Page 184

1    question that the Sacklers aren't engaging at this point

2    with these Debtors or the post-reorganization entities, in

3    anything related to opioids.  So, we're not talking about

4    enforcement of the police power going forward.

5            We're talking about collecting money, and the

6    Courts, really, have not had any problem in enjoining the

7    exercise of police power when it was to collect money.  Most

8    recently discussed in In re:  Peabody Energy, 958 F.3d 717

9    (8th Cir., 2020).  And if you look at the orders in two of

10   the most high-profile cases in history, that certainly

11   involved state claims -- Enron and Washington Mutual, and

12   these are reported.

13           Those orders provided -- I don't know how much

14   they were liquidated, but the orders provided that the

15   injunction would not prevent the exercise of a state's

16   police or regulatory powers, provided, further, that the

17   foregoing proviso does not prohibit any state from obtaining

18   any monetary recovery from the reorganized party.  That's

19   WaMu at 2012 WL 1563880 (Bankr. D. Del., February 24, 2012)

20   and In re:  Enron Corp., 2004 WL 6075307 (Bankr. S.D.N.Y.

21   2004).

22           So again, it's a nuanced analysis, but I think

23   that to say that people cannot vote on this and even if they

24   vote no, one would clearly not confirm a plan that actually

25   enjoins the rights of states to collect money, because of

Page 185

```
 1    their police power or based on their police power, where

 2    there is no ongoing relationship to be policed, so it's just

 3    a debt, is a stretch.  It's not --

 4              MR. TROOP:  Your Honor --

 5              THE COURT:  It's not the case that you lose on

 6    that point.  I just think it needs to be decided on a proper

 7    record, and that's at the confirmation hearing.

 8              MR. TROOP:  Your Honor -- and Your Honor, I hear

 9    you.  I -- as I said, I understand what you're saying.  I

10    will simply note with regard to the release language that

11    you read, if I heard it correctly, it mirrors what 364(b)(4)

12    says.  It says that you can go out and prove up your police

13    power claims, but you need to come back and collect through

14    this bankruptcy.

15              THE COURT:  Right.

16              MR. TROOP:  And what that recognizes is that there

17    is a -- among other things, there is a component to police

18    power actions, establishing liability, having matters

19    decided in state courts on those issues that is unrelated to

20    the economic result.  But we'll argue more about that later,

21    Your Honor.

22              THE COURT:  We will, because actually --

23              MR. TROOP:  I just wanted to say that --

24              THE COURT:  -- and Peabody actually precludes

25    going and fixing the claim somewhere else, too, but it's
```

Page 186

1      another story.  In any event --

2              MR. TROOP:  It's for another --

3              THE COURT:  I just -- look.  Fundamentally,

4      there's, I hope, a basic dispute between your clients and

5      the parties who have agreed, subject to the remaining few

6      caveats to the settlement, which is, your clients believe

7      they would to better outside of this case.  The courts have

8      said that there are times when people who take that position

9      for the good of everyone else and perhaps even their own

10     good -- although, the courts are kind of circumspect when

11     they say that -- can't do that because, in effect, they're

12     burning money when they do that.

13             And again, this is about money.  That's what we're

14     talking about here.  We're talking about, you know,

15     collecting money and applying it to abate the opioid crisis.

16     So, I fully understand.  It's a perfectly fair point that

17     someone could say, it's not enough or we need this, that, or

18     the other element to the agreement.  Hopefully, that could

19     be negotiated.  If not, people have a decision to make for

20     the people of their states.  Do I take the risk of getting

21     nothing or a lot less, or do I go along with the settlement?

22             And if they don't go along with it, they're

23     certainly entitled to vote no, and then we'll have the

24     hearing on whether they can be forced to go along with it,

25     and I think it's just -- it's appropriate that those steps

Page 187

1    be gone through, as opposed to cutting off at this point,

2    given the open issues.

3           MR. TROOP:  I understand, Your Honor, and I

4    understand that you're not prejudging anything.

5           THE COURT:  Right.

6           MR. TROOP:  That, in effect, you and I are having

7    a conversation amongst 107 people (sound drops).

8           THE COURT:  Correct.

9           MR. TROOP:  And that when the time comes, we'll

10   get into it some more, and so I -- but if it were different,

11   we'd keep talking now.  But I don't think it's necessary --

12          THE COURT:  Right.  Look, I mean, your clients

13   have settled claims in the past involving the opioid crisis.

14   It's not a -- something that they're prohibited from doing.

15          MR. TROOP:  And no one's ever said it was, Your

16   Honor.

17          THE COURT:  I understand.  So, I --

18          MR. TROOP:  It's always --

19          THE COURT:  -- they're evaluating this as it goes

20   along.  I also will say, if the plan is improved, obviously,

21   it's unlikely that it would need to be resolicited, so I

22   just don't want to tilt the playing field by stopping the

23   process.

24          MR. TROOP:  Your Honor, that does raise, sorry,

25   one drafting issue, which I forgot to mention and I

Page 188

1    apologize.  Section 12.3 of the plan says that the plan may

2    be modified, amended, supplemented by the Debtors in the

3    manner provided for by Section 1127 or as otherwise

4    permitted by law, without additional disclosure pursuant to

5    Section 1125 of the Bankruptcy Code, except as otherwise

6    ordered by the bankruptcy court, provided that they've got

7    consent from certain parties.

8            It strikes me, that the decision as to whether

9    additional solicitation is required under 1145 based upon

10   modifications, is a decision that you need to make under

11   1125 and that the plan or the disclosure statement or the

12   order shouldn't presume that as long as it's signed off on

13   by these people, they don't have to solicit.

14           THE COURT:  I agree with that, but I think that

15   language is consistent with that view.  The only time when

16   there doesn't need to be more disclosure or re-solicitation

17   is where it is shown to the Court that it's not necessary,

18   which 3018, 3019 permit, under the right circumstances.  So,

19   I don't think -- it's awkwardly drafted, because the

20   concepts are multiple, but you can't contract around that

21   modification requirement, and I think the introductory cross

22   governs everything.

23           MR. KLEIN:  Your Honor --

24           MR. TROOP:  And to be clear, Your Honor, Mr. Klein

25   and I talked about this on Sunday -- and I took a deep

Page 189

1    breath, and then I'll let you talk -- Your Honor, and he

2    told me that's how he reads this section, and as long as we

3    all agree that that's what it says --

4              THE COURT:  Well --

5              MR. TROOP:  -- I'm fine with it.

6              THE COURT:  That's how I read it.

7              MR. TROOP:  I don't want to get bit by it later,

8    that's all.

9              THE COURT:  All right.  Okay.  That's how I read

10   it.

11             MR. KLEIN:  For the record, Your Honor, Darren

12   Klein.  I read it the same way you do.

13             THE COURT:  Okay.  All right, very well.  Okay,

14   thank you, Mr. Troop.

15             MR. TROOP:  Thank you, Your Honor.

16             MR. KLEIN:  Your Honor, I may be mistaken, but I

17   think we're down to the pro se objections at the end,

18   starting on No. 26 of our reply chart.  I don't know if you

19   want to omnibus call and see if anybody's here or how you

20   want to (indiscernible).

21             THE COURT:  Right.  I think there may have been at

22   least one of those objectors here.  Let me just -- let me

23   turn to the list that I have.

24             MR. KLEIN:  It starts on the bottom of 52.

25             THE COURT:  Okay.  So, the first one, then, would

Page 190

1    be the objection by Mr. Stimus, S-T-I-M-U-S, Aaron Stimus.

2    If you're on the phone, sir, this is your chance to speak in

3    support of this objection to -- okay.  I reviewed this

4    objection and I think it really is a plan objection as

5    opposed to a disclosure statement objection.  Basically,

6    asserts that there should be different treatment than the

7    plan provides for as between the people who, I think,

8    frankly, would fall into Mr. Stimus' fact pattern, and he

9    specifically singles out state and federal claimants,

10   government claimants, and claims of people who did not have

11   a legal prescription to OxyContin.

12           The plan, I think, pretty carefully, as dealt with

13   in the mediation, phase one mediation, balanced those types

14   of issues and came out where it came out.  I think it

15   explains how it came out and why or at least one could

16   reasonably infer why, so I think it's truly a confirmation

17   objection.

18           The other request is really an information request

19   which is one that, frankly, someone who truly is interested

20   can go and find, based on public dockets, but it's not

21   really something that's germane to the plan, which is, to

22   identify what courts are going to have criminal and/or civil

23   adjudications against Purdue and its employees and others.

24   I don't think -- as I've said earlier in this hearing, I

25   don't think that type of information really is necessary or

Page 191

1    -- to give someone adequate information to vote on the plan

2    and they have their ability find it on their own.

3            I really covered both the original and the

4    supplement.  Supplement just added more detail to those

5    objections.  The next one is an objection by Jeanette

6    Tostenson, T-O-S-T-E-N-S-O-N.  Are you on the phone, ma'am,

7    or on the screen?  Okay.  Again, I've read this objection

8    and it is, like the objection by Mr. Stimus, that the -- Ms.

9    Tostenson is unhappy with the plan's estimate of what

10   personal injury claimants would recover, and consequently,

11   the negotiated resolution in the phase one mediation as

12   between the public and private side claimants, and complains

13   that the public side is getting too much money.

14           I think that, again, the explanation of the

15   respective class' treatment is clear.  In fact, I think the

16   objection reflects that.  And as far as the reasons for the

17   allocation are concerned, I think one can -- one has enough

18   information to evaluate that allocation and object, if one

19   wants to, to the plan and vote against the plan, but as far

20   as the underlying merits are concerned of such an objection,

21   that would be a confirmation issue as well.

22           The next one is Mr. McKenney's, Kevin McKenney,

23   Sr.  Are you on the phone, sir?  Could you join us if you

24   are?  Okay.  You are -- no, that's not Mr. McKenney.  So,

25   this objection is really in two parts.  The first part, I

Page 192

1    think, may -- well, it may be moot at this point. I think

2    the disclosure statement has made it crystal clear that

3    there is not release or injunction or otherwise any relief

4    from any party under this plan of any potential criminal

5    liability that's an expressly and excluded claim, so I think

6    that is clear in the disclosure statement and in the plan,

7    and therefore, this objection, to the extent it still

8    survives, would be overruled because it's clear and

9    obviously, it probably doesn't because it's moot at this

10   point.

11           And then, Mr. McKenney also asked for legal

12   representation to all parties in the case.  This is a civil

13   proceeding.  There's no requirement for such legal

14   representation, and there, in fact, is collective

15   representation of all unsecured creditors in the form of a

16   Official Unsecured Creditors Committee, which was appointed

17   by the U.S. Trustee and has been incredibly diligent and

18   active in this case, looking after the interests of all

19   unsecured creditors.

20           In addition, there were -- there's an Ad Hoc

21   Committee of personal injury claimants, which doesn't have

22   official status, but represents a large number of personal

23   injury claimants, which, one can assume, has overlapping

24   interests with unrepresented personal injury claimants, and

25   therefore, that request would be denied.

Page 193

1           The next objection is by Ralph -- Dr. Ralph Olsen.

2      Mr. Olsen, are you on the phone?  All right.  Mr. Olsen has

3      two objections to the disclosure statement, but both of them

4      clearly are confirmation objections.

5           The first is that Mr. Olsen would oppose any plan

6      that would provide for any payments under the plan derived

7      by revenue from Purdue in selling more opioid products.  At

8      the same time, Mr. Olsen says that his claim should be

9      deemed non-dischargeable and payable in full.  Both of those

10     objections are confirmation objections, as I said.  I think

11     it also is clear that the first one is in conflict with the

12     second one, which seeks payment in full.

13          And of course, as far as non-dischargeability is

14     concerned, Congress has specifically spelled out what is not

15     dischargeable in a Chapter 11 case, and the basis for

16     asserting non-dischargeability in Mr. Olsen's objection is

17     not among those grounds.  I will note that the plan goes to

18     great lengths, as the Debtors have in the bankruptcy case,

19     to set up a corporate governance structure and the continued

20     function of a monitor to try to ensure as much as possible

21     that NewCo will actually set the standard, contrary to past

22     history for this corporation pre-bankruptcy, for the sale of

23     opioid products.  But again, all of that is a confirmation

24     issue.

25          The next pro se objection is by Susan Haswell.  Is

Page 194

1    Ms. Haswell on the phone?  Okay.  Again, this objection

2    essentially states that the Debtor is not entitled to a

3    discharge and should not continue in business.  As I noted

4    with respect to the prior two objections, A, that's a

5    confirmation issue, and B, frankly, I don't think that there

6    is a basis to deny a discharge here.  And as far as the

7    other issues are concerned, we'll deal with them in

8    confirmation.

9            The next objection is by Scotti -- S-C-O-T-T-I --

10   Madison.  Mr. Madison, are you on the phone?  No?  All

11   right.  This is another objection to the allocation as

12   derived from the phase one mediation as between the private

13   side claimants and the public claimants.  That's clearly a

14   confirmation issue as well.

15           As I noted, the plan lays out the terms of the --

16   and the disclosure statement, lay out the terms of the

17   allocation, clearly, and I believe one can infer the

18   rationale as well as the fact that they were negotiated

19   heavily at arm's length by informed parties on both sides in

20   the phase one mediation, so I'll overrule that objection.

21   Obviously, all of those issues can be raised at

22   confirmation, if someone wants to raise them.

23           The next pro se objection is by Pat Newmeyer, N-E-

24   W-M-E-Y-E-R.  Is the objector on the phone for that?  This

25   is an objection similar to Ms. Haswell's, Dr. Olsen's, and

Page 195

1    Mr. McKenney's in that Mr. Madison, understandably -- I'm

2    sorry, excuse me.  Ms. Newmeyer, excuse me, wants the Court

3    to be sensitive and properly listen to and recognize those

4    who have claims, including claims for physical injury and

5    death because of over prescription and over marketing of

6    OxyContin.

7            I don't think there's anyone in this case,

8    certainly not myself, who believes that the whole purpose of

9    this case is to allocate as much money as possible to

10   address the effects of over prescription and improper

11   marketing of OxyContin and other opioid products.  Whether

12   the plan does that, sufficiently to be confirmed is, by its

13   very nature, a confirmation issue.

14           Simply stopping the process and wasting that

15   money, accordingly, I believe -- and I believe it's at least

16   an issue that should not prevent consideration of the plan -

17   - is not properly acting in remembrance of those victims.

18   So, I will overrule the objection.  Again, the issue could

19   be raised at confirmation.

20           One can, conceivably, take the view that the

21   opioid and Purdue's role in it is so extreme that the value

22   in Purdue's estate and the amount to be contributed by third

23   parties under the plan should be foregone as a memorial, but

24   clearly, one could certainly take the opposite view, that

25   the more of that money that goes to abate the opioid crisis,

Page 196

1    and as negotiated also to go to individuals who would likely

2    have a claim against Purdue should be given a chance.

3           The next objection is by Maria Luisa Pena, and

4    it's not that clear, but I take it to be an objection,

5    again, to the allocation of funds between individual

6    claimants and the public side claimants or the trusts where

7    money is going to abate the opioid crisis.  The plan strikes

8    a careful balance that was heavily negotiated as regards

9    that allocation, and this is not the type of objection that

10   would preclude parties from voting on such a plan.  It could

11   be raised at confirmation if Ms. Pena wants to do that.

12          The next objection is by Daniel Jackson -- this is

13   not Peter Jackson.  This is not Mr. Lipson's client.  This

14   is Daniel Jackson.  This disclosure statement objection is,

15   really, quite brief and I don't think actually objects to

16   anything other than saying, I object, so I will over rule

17   it, in that it doesn't actually specify a basis for the

18   objection.

19          The next objection is by Kelvin Singleton?  Is Mr.

20   Singleton on the phone?  No?  Okay.  Mr. Singleton's

21   objection really falls into one of the two categories that

22   most of these have fallen into.  It is either -- or it can

23   be read either as an objection to the allocation as between

24   personal injury claimants, which I believe Mr. Singleton is

25   asserting he is, and public side claimants, which, of

Page 197

1    course, for the reasons I've already stated, would be a

2    confirmation objection and not a reason to preclude voting

3    on the plan.

4             The disclosure statement sufficiently describing

5    the allocation as between the two, or, alternatively, it can

6    be viewed as an objection similar to Ms. Newmeyer's, which

7    is, in essence, a request to be heard for the effects that

8    Mr. Singleton has suffered.

9             And again, I believe everyone in this case, and

10   certainly myself, is very aware, having gotten not only

11   objections like this, but numerous letters of that

12   suffering, and have tried as hard as they can to come up

13   with a fair way to address it that is consistent with public

14   health and public policy, so this issue is not a proper

15   disclosure statement issue, either, as I've already noted,

16   although, Mr. Singleton is certainly free to object to the

17   disclosure -- to the confirmation of the plan.

18            The next and next-to-last objection is by Carlos

19   Martinez-Bermudez.  I don't know if Mr. Martinez-Bermudez is

20   on the phone.  By its face, it appears that Mr. Bermudez has

21   not actually filed a claim in this case.  He seeks leave to

22   intervene to do so and have a counsel appointed for him.

23   Again, this isn't really a disclosure statement objection,

24   and I will overrule it.

25            The last one, I believe, is just anonymous, and

Page 198

1    falls into the category that I've already addressed several

2    times.  It is by a person, who I believe, is a personal

3    injury claimant.  References a specific claim, but I gather

4    that the creditor did not want his name to be known or her

5    name to be known, and it basically complains about the

6    allocation as between personal injury claimants, I believe,

7    and the public side creditors.  And again, for the reasons

8    I've already stated, that's not properly a disclosure

9    statement objection to this disclosure statement, but

10   rather, one that could be raised at confirmation.

11           So, I am not granting any of those objections.

12           MR. KLEIN:  Thank you, Your Honor.

13           THE COURT:  Mr. Klein, I don't think there were

14   any others.

15           MR. KLEIN:  I don't believe so, either.

16           THE COURT:  Okay.  All right.  Now, I appreciate

17   it's 2:35.  I don't know if people need a short break.  We

18   still need to briefly go through my comments, to the extent

19   that they've not already been raised, and address the

20   solicitation procedures.  I'm happy to take a five-minute

21   break or keep going, depending on people's wishes.

22           MR. HUEBNER:  Your Honor, so let me jump in for a

23   second, if I may.  Number one, I think a true five-minute

24   break of exactly five minutes seems fair to everybody,

25   including Your Honor who does not have the liberty of

1    turning off his video and leaving your chair like most of

2    the other people, I think, do, so I just for human mercy,

3    that sounds perfectly awesome.

4              Number two, I would note that in addition to going

5    through Your Honor's comments, of course, several people are

6    standing by with pen in hand to take them down, I know that

7    Mr. Shore has said he has some remarks that he would make at

8    the end.  I believe that Mr. Eckstein on behalf of the AHC

9    and Mr. Preis on behalf of the UCC, likewise, has some brief

10   comments to make on the -- and I have nothing more to say,

11   hopefully, other than we're waiting for the final-final

12   confirmation on the co-defendant Sackler Debtor tripartite

13   language that has been going in the background all day and

14   looks to me like we're a couple of (indiscernible) units

15   away from agreed language, but hopefully, between the five-

16   minute break and the couple of sets of remarks people have

17   to make and the like, then we'll be done and I will have

18   some final-final things at the end (sound drops) next step.

19             So that sound simple as the order (sound drops), I

20   think that --

21             THE COURT:  Okay, why don't we come back at

22   quarter of, then.  Should -- I'm asking the people in the

23   clerk's office -- should people just keep their link on?

24   So, don't hang up?  You can put -- you know, take the camera

25   off, of course, but come back at quarter of.  Thank you.

Page 200

1       (Recess)

2            THE COURT:  Okay, we're back on the record in In

3       re:  Purdue Pharma, LP, et al. on the disclosure statement

4       hearing.  I understood from Mr. Huebner that there are some

5       parties who wish to make a statement, who've also filed

6       either reservations of rights or earlier statements, such as

7       the Ad Hoc Committee of Personal Injury Claimants, but

8       before doing that, let me ask.  Is there anyone else who has

9       an objection to the disclosure statement?

10           MR. FISHER:  Your Honor, this is Eric Fisher from

11      Binder and Schwartz for the public school creditors.  As

12      Your Honor knows, we had an objection and we've reached an

13      agreement, but when it's convenient for the Court, I'd like

14      to just take two minutes of the Court's time to speak to our

15      agreement to withdraw our disclosure statement objections.

16           THE COURT:  Okay.

17           MR. KLEIN:  Your Honor, it's Darren Klein from

18      Davis Polk.  I'm sorry.  I just wanted to bring to your

19      attention that there was one late filed objection that

20      didn't make our summary chart because of timing, that I was

21      just made aware of, and I didn't want the Court to not know

22      it was there.  It is Docket 2921.  It's a pro se objection.

23           THE COURT:  All right.  Well, who is the objector?

24           MR. KLEIN:  Carrie McGaha, M-C-G-A-H-A.

25           THE COURT:  Okay.  Is that person on the phone?

Page 201

1   All right.  I -- my order setting out a timetable for

2   objections to the disclosure statement did provide an escape

3   hatch for those who were objecting to portions of the

4   disclosure statement that were new from the date that I

5   originally set as the deadline to object, and that was that

6   I would hear it at the hearing.  I don't know whether Ms.

7   McGaha's objection is to a new portion, but in any event, I

8   said I would hear it at the hearing, but that requires the

9   participation of the objected at the hearing, so I'm not

10  able to hear it.  Sorry.  So, I won't entertain it at this

11  point.

12          MR. HUEBNER:  Your Honor, Marshall Huebner for the

13  Debtors.  One other thing that I learned during the break,

14  which is Mr. Larry Fogelman who, obviously, as

15  (indiscernible) is the head of the Bankruptcy and Tax

16  Division of the Department -- of the S.D.N.Y. would like to

17  make come clarifying comments.  They actually got more

18  things wrong than they feared, but the (sound drops)

19  telephone (indiscernible) like to correct exactly where they

20  are in their approval process of the various deals that I

21  described, which are all their wheel, and so, because that's

22  a more focused comment and not general reflection, might

23  make sense to do that first before we turn it over to Mr.

24  Eckstein and Mr. Preis and Mr. Fisher as well for their

25  reflections.

1           THE COURT:  Okay.  So, Mr. Fisher, we'll put you

2    aside for just a moment, figuratively speaking, and I'll

3    hear from Mr. Fogelman.

4           MR. FOGELMAN:  Thank you, Your Honor.  Can you

5    hear me?

6           THE COURT:  Yes, I can hear you fine.

7           MR. FOGELMAN:  Good afternoon.  This is Larry

8    Fogelman from the U.S. Attorney's Office for the Southern

9    District of New York on behalf of the United States.  We

10   want to echo the Debtors' comments from this morning that

11   substantial progress has been made regarding the resolution

12   of the claims of the United States in this case, and we

13   appreciate the Debtors' involvement in helping to negotiate

14   certain aspects of proposed resolutions.

15           However, we can't say, at this point, that we are

16   resolved, which is the term Debtors used earlier this

17   morning, as we are still continuing to discuss the relevant

18   language relating to our claims with our agencies and other

19   stakeholders, and once we have finalized language, we will

20   need to secure formal approval from DOJ.  We are optimistic

21   that we will reach closure on these issues and we are

22   working hard to do so, but at this point, we just wanted to

23   note for the record that these issues are not "resolved."

24   Thank you, Your Honor.

25           THE COURT:  Okay, thank you.  All right.  Mr.

Page 203

1    Fisher.

2         MR. FISHER:  Thank you, Your Honor.  Eric Fisher

3    from Binder and Schwartz on behalf of the public school

4    district creditors, and I'm mindful of the fact that one of

5    the chief benefits of our decision to withdraw our

6    disclosure statement objections is that you really don't

7    need to hear that much from me today, so I'll be very brief.

8         We wanted to express, first, our gratitude to the

9    Debtors and also to the Creditors Committee.  It's really

10   only because they were willing to have a continuing focus on

11   our issue that I think we're now on a path that we hope will

12   be a promising path towards resolving our issues.

13        We recognize that this is a very complicated

14   bankruptcy proceeding with many different facets to it, but

15   we also appreciate that it is really driven by an over

16   arching public interest concern, which is the concern to

17   create as large a pool of funding for impactful abatement

18   programming as possible, and we think that this mediation

19   that the Debtors, the Creditors Committee, and the MSGE have

20   agreed to participate in under the auspices of Mr. Feinberg

21   presents a really important opportunity to address an area

22   of abatement that, to date, has gone completely unaddressed

23   and those are, special education needs and other educational

24   supports and interventions at public schools directed

25   towards the welfare of public school children affected by

1    the opioid crisis.

2          At the same time as we're optimistic about this

3    mediation path, we are actively and quickly, to keep

4    everything running on time, prosecuting potential

5    confirmation objections by which, I mean we already have

6    issued discovery requests and deposition notices that would

7    help us advance our confirmation objections if we're not

8    able to reach resolution, but we're grateful for the chance

9    to have sort of come into the tent and have an opportunity

10   to have a really meaningful conversation about trying to

11   resolve our issues consensually and it's on that basis that

12   we agreed to withdraw all of our disclosure statement

13   objections and reserve all of our rights with respect to

14   confirmation.

15          THE COURT:  Okay.  All right, thank you.

16          MR. FISHER:  Thank you, Your Honor.

17          THE COURT:  Obviously, I'm glad Mr. Feinberg was

18   able to step in and we didn't have to impinge on Judge

19   Chapman.  Okay.  Mr. Eckstein, you wanted to address the

20   Court?

21          MR. ECKSTEIN:  Your Honor, good afternoon.

22   Kenneth Eckstein of Kramer Levin, co-counsel for the Ad Hoc

23   Committee of Governmental claimants in the case.  I would

24   like to make a few brief remarks, given the significance of

25   today's hearing, if that's okay with Your Honor.  Your

Page 205

1    Honor, I know that you fully appreciate that the Ad Hoc

2    Committee is a committee that has been actively involved in

3    the case, consisting of states, local governments, and

4    tribes, and from the time that the Committee organized in

5    the fall of, I guess, 2019, our focus has been on trying to

6    help move this case to a point where we could ultimately put

7    in place not only a global settlement, but a settlement that

8    would be focused on providing abatement for the benefit of

9    the citizens of all states and the local governments of the

10   country.

11          And today's hearing is a crucial step in achieving

12   the goals that underscored our purposes from the outset.

13   That said, today (sound drops) important step, but it's

14   certainly far from a conclusion.  It goes without saying, as

15   Mr. Huebner described at the outset of today's hearing, that

16   this has required working quite intensively with many, many

17   parties, including the Debtor, the UCC, the MSGE Group, the

18   various groups representing the different private creditor

19   entities, as well as the Sacklers, and these interactions

20   have been, on the one hand, collaborative and on the other

21   hand, (indiscernible) and remain quite intense through, as

22   you heard Mr. Huebner describe, the various nights leading

23   up to this morning's hearing.

24          And there is work to be done and there are several

25   important issues that are advanced but are not yet complete,

Page 206

1    and as Mr. Fogelman said, it does mean that there's still

2    work to be done and we do intend to continue working quite

3    hard over the next several days to ensure that the remaining

4    issues with both the Sacklers on the one hand and with the

5    private creditors and the governmental entities on the other

6    can be finalized in advance of the order being submitted to

7    Your Honor for approval of the disclosure statement.

8            That said, the Ad Hoc Committee has been very

9    supportive of going forward today.  We believe that this is

10   a critical step moving forward and we agree with the

11   sentiment that it's important to make progress in moving

12   this case to a conclusion, and that there will be ample

13   opportunities to deal with disputes if we are unable to

14   resolve those disputes between now and confirmation.

15           I think, as Your Honor appreciates, this is a

16   uniquely complicated case.  I look at this case as at least

17   a five-dimensional plan process.  We've had to deal with a

18   reorganization of a pharma company, which, in and of itself,

19   makes most Chapter 11 cases complicated.  We have been

20   dealing with extremely complicated litigation against a

21   third party and have tried to embody a difficult and

22   complicated settlement with the Sackler family, both the B

23   side and the A side, which is finally embedded in terms

24   sheets.

25           There has been resolution among public creditors

Page 207

1    and that involves the states, the local governments, and the

2    tribes, which preceded phase one of the mediation, was a

3    critical foundation to be able to even get to a plan.  There

4    was the negotiation between the public creditors and the

5    various private constituencies, also highly complex and

6    could make for a case in and of itself, and all of the

7    intercreditor issue that run through all of these different

8    settlements have been embodied in the plan of

9    reorganization.

10           So, it hopefully comes as no surprise to Your

11   Honor and -- or all the parties involved in this case, when

12   you hear repeatedly from Mr. Huebner how hard everybody

13   (sound drops) how complicated the base is.  I want to

14   underscore, it really is the case, and the fact that we've

15   gotten the case to this point is, I think, a testament to

16   the hard work and the creativity that all parties have

17   shown, but we are supportive of the Court ultimately

18   entering the order that approves the disclosure statement.

19           We think that there is a great deal of disclosure

20   and there's ample information upon which all parties in this

21   case should be able to cast their ballots.  It goes without

22   saying that this plan involves extensive compromises.  Every

23   single aspect of this case has had to be negotiated and

24   every party has had to give a great deal off of where they

25   ideally wanted to be in order to get to a fragile balance,

Page 208

1    and it is fragile, Your Honor.  I want to underscore that in

2    every respect.

3          Nonetheless, it is a tremendous accomplishment and

4    it is an opportunity to do something that is very unique in

5    the context of both bankruptcy and mass tort litigation,

6    which is to achieve a kind of resolution and closure that

7    will provide a unique benefit for the public at large, which

8    is something that is not often accomplished through a

9    bankruptcy.  So, we're hoping that we can, ultimately, use

10   today as a launching pad to move to confirmation over the

11   next, really, two to three months, and we think that this

12   disclosure statement (sound drops) that basis.

13         I was going to, Your Honor, speak to the issues

14   that have been raised by both the school districts and by

15   West Virginia in their objections.  I appreciate the fact

16   that both the school and West Virginia have agreed to

17   withdraw their objections to the disclosure statement, and

18   do appreciate that both cases, those issues have been

19   reserved for confirmation.

20         We did submit a reply to the objections and I

21   trust Your Honor had an opportunity to see it, and I don't

22   need to belabor that, other than to say that these are both

23   examples of, while there may not be complete agreement on

24   these issues, there is tremendous respect for the concerns

25   raised by the schools and every effort is being made to

Page 209

1   ensure that the interests of the school districts and of

2   education and how education is implicated by the opioid

3   crisis is being addressed through the abatement (sound

4   drops) that are already embedded in the plan, and we will

5   continue to dialog with the schools and hopefully the

6   mediation can help address and resolve whatever remains

7   open.

8           Similarly, with West Virginia, the states are

9   extremely sensitive to the interests and the concerns of

10  West Virginia and any other similarly situated state and

11  local government about their share and participation in the

12  abatement proceeds and hopefully, we can continue to dialog

13  with all these constituencies, but every effort that we made

14  to try to be mindful of these issues and putting in place

15  the allocation, which, again, was one many compromises.

16          So, with that, Your Honor, I just want to

17  underscore the fact that the Ad Hoc Committee supports the

18  approval of the disclosure statement, but does reserve the

19  opportunity to continue to discuss with the UCC, the private

20  creditors, and the Sacklers, and the Debtor the few

21  remaining but important issues that need to be buttoned up.

22  We're hopeful that it's not going to necessitate any further

23  hearing, but to the extent that any further modifications

24  are made, I'm sure they'll be reflected in documents that

25  are filed with the Court prior to approval.

1             So, I thank Your Honor for your time today and for

2     this important hearing. And my last observation, Your Honor,

3     is I know a lot of things have been referred to

4     confirmation, and we intend to work with the Debtor and the

5     other parties, and if appropriate, I may be asking guidance

6     from the Court to make sure that the evidence that is going

7     to be prepared and submitted to the Court in advance of

8     confirmation is responsive to what the Court is expecting to

9     see, and whether that, with allocation or attorneys' fees,

10    or any of the other aspects of the settlement that are

11    embedded in the plan, we're going to focus ourselves on

12    making sure that the evidence at confirmation be responsive.

13             THE COURT:  Okay.  Thank you.

14             MR. ECKSTEIN:  Thank you.

15             THE COURT:  Mr. Preis, I see you on the screen.

16    Did you want to say something?

17             MR. PREIS:  I did, Your Honor, but I wasn't sure

18    if it was my turn or Mr. Shore's turn, because I know he had

19    said that he had some things he wanted to say.

20             THE COURT:  Okay.  Well, Mr. Shore, you can go

21    ahead, too.

22             MR. SHORE:  Sure.  However Your Honor wants.  I'm

23    going to keep my comments brief.  Chris Shore from White &

24    Case on behalf of the Ad Hoc Group of Personal Injury

25    Claimants.  As Your Honor may have noticed, we've been very

1    quiet in the courtroom in these cases.  That said, the

2    group's advisors, the real bankruptcy and personal injury

3    lawyers, have been very active outside the courtroom,

4    literally spending tens of thousands of hours on this

5    project, including negotiating the splits with the other

6    prepetition unsecured creditors, starting last summer,

7    negotiating the plan terms reflecting those deals in all of

8    the iterations and in all of the amendments, assisting in

9    the drafting of the PI TDP and associated trust documents,

10   providing disclosure.

11          Just this past month, the team has had to deal

12   with the Debtors and other creditor constituencies day and

13   night, closing out the lien resolution procedures, I'll

14   note, as Mr. Fogelman just said, the deal is not quite done

15   on both sides.  Language has been sent and both sides are

16   seeing if we can't get there.  We're hopeful we will be able

17   to.

18          We've been working on assisting the -- and

19   drafting the opt out procedures, and it sounds like we're

20   going to have to have a discussion with the Debtors after

21   this hearing about modifications with respect to separating

22   out the opt out concept from the documentation concept.

23   We've been addressing the common benefit fund.  I don't

24   think Mr. Huebner got it quite right about how it works.

25   It's actually addressed well in the disclosure statement s

Page 212

1    to how the amounts are calculated.

2            And, of course, we spent significant time dealing

3    with the NAS group and their objections, and ultimately,

4    creating a separate NAS TDP and making sure that all works

5    throughout all the plan documentation.

6            As to the disclosure statement, we did fill a

7    limited response to make our views part of the record at

8    this stage, and to make clear to the Court both the

9    challenges to and the ongoing processes for addressing the

10   treatment of prepetition claims for personal injuries

11   related to opioid use.

12           Simply, we just didn't think it was right to let

13   accusations that the public private split is so bad that it

14   renders the plan unconfirmable or that the TDP was drafted

15   in bad faith to benefit some rather than others.  We just

16   didn't think those should sit out there for months without a

17   response.

18           The fact is, that given the emotional, legal, and

19   economic issues involved, and given that no amount of money

20   might every fully compensate a personal -- a prepetition

21   personal injury creditors, we're likely never to get to a

22   universal consensus, either between all the various creditor

23   groups or even within the personal injury community.

24   Limited funds and zero-sum games just don't work out that

25   way.

Page 213

1              That said, we'll continue to try and do believe

2     (sound drops) can result in consensual or nonconsensual

3     amendments to the plan that can allow closure that don't

4     raise re-solicitation issues.

5              I do want to respond to Mr. Huebner's opening

6     comments on what he called couple of blanks in the plan and

7     that Mr. Eckstein just referred to, especially in light of

8     Mr. Huebner's speak now or forever hold your peace

9     statement.  The plan filed this morning reflects a change to

10    some key definitional terms that were first raised on a

11    Sunday night iteration of the plan.  Those changes are, we

12    understand and ask from the Debtors and maybe the Sacklers

13    and others to have the PI creditors agree to let in new

14    classes of plaintiffs into the PI trust.

15             And the (sound drops) could, modify who can and,

16    indeed, must look to the PI TDP and the NAS TDP for

17    recoveries.  We don't fault the Debtors for using the plan

18    on the docket as a means to drive negotiations or make asks.

19    It does put a lot of pressure on the Court and the parties

20    to focus on the blacklines.  As we saw this morning, the

21    addition of two-word or three-work phrase like "or other

22    persons" to modify releasing parties, can be a material

23    change, even though the blackline is tiny.

24             To be clear, with respect to the proposed changes

25    to the plan and in the last iteration, the Ad Hoc Group is

Page 214

1     not there.  We've not accepted the changes.  We might not

2     ever get there.  It leads to an objection, so be it.  That's

3     a confirmation issue.

4          I don't think it's productive to air out this

5     issue on the record, much less negotiate on the record.

6     We're going to continue to talk.  I understand we're going

7     to talk this afternoon about it to see if we can't solve

8     another issue.  The only concern, and the one I wanted to

9     put on the record, is that if we don't solve it before

10    solicitation, we all may, as a practical matter, be putting

11    a materiality limitation on the options available for

12    resolution.

13          There's no specific disclosure about who beyond

14    prepetition holders of personal injury claims has a right to

15    look at the PI trusts.  If we don't fix this problem now,

16    before solicitation, we may not be able to fix it without

17    reason.

18          THE COURT:  Okay.  Thank you.

19          MR. SHORE:  Welcome.

20          MR. HUEBNER:  Your Honor --

21          MR. BICKFORD:  Your Honor --

22          MR. HUEBNER:  Mr. Bickford, give me one second, if

23    you would, just --

24          MR. BICKFORD:  Sure.

25          MR. HUEBNER:  I was going to say two additional

Page 215

1    things.  Number one, Mr. Bickford had emailed

2    (indiscernible) and asked to also make some remarks, so I'll

3    turn the podium over to him in a second before Mr. Preis.

4    With respect to Mr. Shore, appreciate, frankly, everything

5    about the presentation.  For the avoidance of doubt, I was

6    actually clear that the blanks and brackets refer to various

7    things in the Sackler terms sheets.

8              There are several different things that need to be

9    buttoned up before we're going to be willing to send in the

10   order for, hopefully, entry, obviously (indiscernible)

11   that's what Mr. Shore referred to which does need to be

12   resolved and we can be sure that the second (indiscernible)

13   win on this hearing.

14             The parties, PIs are prepared, AHC and UCC will be

15   diving right back in to hopefully get that swatted away as

16   well as hopefully for the (indiscernible) legal fees, so I

17   just want Mr. Shore to take comfort that I don't think the

18   issue was minimized.  I think it is one that needs to be

19   addressed and we're going to do so.

20             So, with that, let me turn the virtual podium over

21   to Mr. Bickford, then Mr. Preis, assuming we have no other

22   comments, I will address next steps in the process.

23             THE COURT:  Okay.

24             MR. HUEBNER:  -- comment, of course.

25             MR. BICKFORD:  Thank you, Mr. Huebner.  Your

Page 216

1    Honor, good afternoon.  Scott Bickford and Harold Israel on

2    behalf of the NAS Children's Ad Hoc, and I will be brief.

3    As the Debtors stated, the NAS Ad Hoc has withdrawn its

4    objections to the disclosure statement, reserving rights.

5    In light of that, we must thank Ken Feinberg, the PI

6    representatives, as well as the Debtors, all of whom, as Mr.

7    Huebner has noted, worked around the clock in a very short

8    period of time to resolve most of the issues related to NAS

9    children.

10           As a result of their efforts, the issues raised in

11   our objection have largely been resolved.  The NAS children

12   now have their own subclass, a separate allocation of funds,

13   as well as a separate TDP which seeks to compensate all of

14   those children, and I repeat, all of those children who've

15   filed proof of claims in these bankruptcy cases.  We

16   remembered Your Honor's admonition of not letting the

17   perfect get in the way of the good.  This is a compromise,

18   and like all good compromises, I don't think either side is

19   completely satisfied.

20           Like all families, the attorneys representing the

21   NAS children don't always speak in one voice nor on every

22   single detail.  There are a few key details that still

23   remain to be addressed.  The most pressing issue, however,

24   is how to ensure that new funds get to the children now,

25   with the least amount of expenses and impediments.  As Your

1    Honor may know, multiple states have laws governing minors'

2    settlements in any amounts, some compelling the funds be

3    deposited until a child is 18, others have more liberal

4    provisions.

5            Federal courts and federal bankruptcy courts have

6    faced these issues before, notable in a matter I was

7    personally involved in, the Deepwater Horizon and the

8    (indiscernible).  In search of a solution to facilitate a

9    faster distribution, we're working with the Debtors to

10   determine if we can request this Court to invoke its

11   jurisdiction to affirm minors' settlements, eliminating the

12   need to go state by state and incur the attendant costs

13   prior to making distributions to minors.

14           In the event that's not possible, there's also

15   discussion on how to -- on how these costs will be borne,

16   but the goal is not to burden the recovery of these children

17   with excessive costs for delays and whether that involves an

18   award of imposition of additional costs, administrative --

19   or administrative processing costs.  While there are

20   outstanding issues, we are working to resolve those that --

21   between now and the plan confirmation.

22           Again, we thank the Court for its indulgence, and

23   I'm happy to answer any questions the Court may have.

24   Otherwise, thank you, Your Honor, for your time and

25   indulgences today.

Page 218

1              THE COURT:  Okay.  Thank you.

2              MR. PREIS:  Okay, all right.  Your Honor -- can

3       you hear me?

4              THE COURT:  Yes.  And see you.

5              MR. PREIS:  Okay.  Good afternoon, for the record,

6       Arik Preis (sound drops) for the Debtors.  Your Honor, we

7       filed a very brief statement on Monday afternoon after the

8       last iteration of the plan disclosure form, it's at docket

9       number 2944.  I'd like to make four points.  First, I just

10      wanted to level set about what we're doing at this hearing

11      and what we're not doing.  Second, to address the UCC's firm

12      position of the plan and the proposed settlement this (sound

13      drops).  Third, to address the adequacy of the disclosure

14      statement, and then four -- last to address how important it

15      is from the UCC's perspective that the case move forward and

16      the parties in the case focus on achieving resolution,

17      similar to what Mr. Eckstein said.

18              But first, just to level set where we are, as Mr.

19      Huebner pointed out, that now it's 13 hours ago, the

20      advisors to the debtors, the agency, and the UCC agree that

21      even though we weren't done yet with everything, it still

22      made sense to go forward today, given the number of open

23      issues.  So, it's not quite a hearing to approve a final and

24      filed disclosure statement, because things aren't done yet.

25      So, as I'm going to explain, the current iteration of the

1   plan of disclosure statement does (indiscernible) on file

2   are not done, and they're not in the position that we can

3   support yet.

4         Second, I'd like to address the UCC's current

5   position on the plan, and the proposed act to settle a

6   specific issue.  As we stated in the brief statement we made

7   on Monday, at the time of that filing, we were not in a

8   position yet to support the plan.  There were still open

9   issues.  Since then, many of them have been resolved.  And I

10   can -- as Mr. Huebner went through, we are almost there on

11   most things, but there's still some issues left.  From the

12   UCC's perspective, I can tell you there are basically five.

13   A few of them are the things that Mr. Shore were pointing

14   out on his future (indiscernible phrase) is what I'll call

15   the fact that treatment of the any other person channel

16   from.

17         Third is the scope of the debtor reliefs.  Four

18   are the attorney fee issues, and fifth are the document

19   repository issues, which -- as we have conceded, at the

20   understanding it will get resolved, a clean solicitation and

21   confirmation.  As a result, at the moment, we're not in a

22   position to support either the plan or the proposed

23   settlement, and we will continue to start working on those

24   issues in the next few days, and we believe that we will be

25   able to get the resolution.

Page 220

1           Third, I want to address the adequacy of the

2    disclosure statement.  Putting aside the fact that we don't

3    support the claim in its current form, the issue today is,

4    as you've pointed out, on the adequacy of the disclosure

5    statement.  Of course, as a threshold matter, the disclosure

6    statement must include as per described a confirmable plan.

7    And until the plan negotiations end, and as Mr. Huebner

8    pointed out, the biggest part of the plan, right, is the

9    Sackler contribution.  And that is not completely done yet,

10   even for solicitation purposes, those -- because those

11   provisions are not agreed, the disclosure statement doesn't

12   really describe yet the confirmable plan.  Strictly

13   speaking, even for solicitations (indiscernible), the

14   negotiations are not (sound drops).  But putting that issue

15   aside, because we do believe that will happen in the next

16   couple of days, the question is whether the 400-page

17   disclosure statement contains information required for the

18   bankruptcy.

19           To be clear, we do believe the disclosure

20   statement is comprehensive, and that Davis Polk and the

21   debtors have done a very, very nice job, and we are grateful

22   for all the changes that parties have made to it, and the

23   debtors in being accommodating.  But from our perspective,

24   these cases are unique in that inclusion in a debtor's

25   solicitation materials of our positional (sound drops).  And

Page 221

1    the reasons for our position are in and of themselves

2    necessary for the disclosure statement and the solicitation

3    materials made 11/25.

4            We feel this way not just because of the very

5    active role we've played, but for two very specific reasons.

6    First, as Your Honor pointed out, the discovery taken in

7    connection with this -- with our investigation of the estate

8    causes of action.  Mr. Sackler has been as expansive as any

9    case Your Honor has been a part of.  And as everyone is

10   aware, we are the party that served most of the discovery,

11   or the party that took most of the discovery, or the party

12   that provided our analysis of the potential plans and causes

13   of action to various parties in the case during mediation,

14   and we then utilized that work and per -- that we performed

15   in negotiating the Sackler penalty.  We feel it's important

16   for the creditors in the case, and indeed frankly in their

17   public, to understand what exactly we did, what we analyzed,

18   why we came to the conclusion we did, whatever that

19   conclusion may be.  And for whatever reasons we reached

20   them.  Some people may think this means we're lauding the

21   work we did or belittling the work that others did, that's

22   100 percent not true.

23           And quite frankly, irrelevant and wrong.  What

24   causes it and we recognize in our (sound drops) are the

25   efforts of the debtor and the non-consenting state in the

Page 222

1    discovery packet.  However, it means we believe that all

2    creditors, when they go to (indiscernible) an appointment,

3    deserve the right to know what they pay for.  And what our

4    conclusions were and why.  Second, I'd also point out that

5    the creditor constituency of these cases is overwhelmingly

6    made up of contingent, unliquidated opioid Plaintiffs, most

7    of whom are (sound drops) or (sound drops) who did not have

8    their own bankruptcy counsel.

9              And we have therefore received hundreds of

10   inquiries about the case, and those inquiries have picked up

11   since the plan was filed.  We have fielded questions that

12   deserve answers, like what's our position on the pharma

13   plant?  Why was the settlement entered into?  Why is the

14   allocation okay?  And these are not easy to explain.  We

15   therefore believe it's fair and appropriate for all 620,000

16   Plaintiffs who are voting on the plan to receive the same

17   information and views prior to the time they vote.

18             And it's not a surprise that many of the inquiry

19   (indiscernible) some of the letters that were filed on the

20   docket include the underlying ethos that the Claimant

21   doesn't trust Purdue, given their deal -- their historical

22   interactions with them.  And as such, they want to hear from

23   the independent creditor fiduciary.  This isn't mean --

24   meant to derogate from, disparage, say anything about the

25   negative -- anything negative about the efforts of the

Page 223

1  debtors, Davis Polk for this case.  Something that uphold us

2  many times, and I don't think it comes as a surprise to

3  anybody who's listening.

4         As a result, and rather than including the

5  disclosure statement and various inserts that they get lost

6  in a 400 to 500-page document, we've been working on a

7  letter that will be included (sound drops).  We have

8  discussed that letter with the debtors, and they have

9  provided focused, professionally and carefully some

10 suggestions or comments.  We're still working on it, and

11 when the plan negotiations end, we will be in a position to

12 finalize, and as the debtor's disclosure statement stated,

13 they intend on including the letter in the solicitation

14 packet.

15        With that, I move to my last point, which is the

16 case must move forward.  I know many people have said this

17 in the past, but as these cases now move into their close to

18 20th month, the time has come for the parties to stop

19 fighting about every little point, pick the points that are

20 most critical to them, and negotiate.  And here I'm

21 referring both to the unresolved plan issues with Sackler

22 settlement, as well as the upcoming mediation.  In addition,

23 we believe the time has come for all the parties in the case

24 to stop engaging in, and being motivated by (indiscernible)

25 emotions.

1        If a party's to stop catering to their perception

2   of what the American public wants to hear, rather than what

3   this Court will require to consider the plan, and for the

4   parties to put aside their differences and do the right

5   thing.  We're hopeful that the mediation with the NCSG and

6   the Sacklers will lead to some resolution with as many non-

7   consenting states as possible.  But we also hope that the

8   main negotiating parties in that mediation will focus on

9   mediation.  And by this, I'm referring not just to the AGs,

10  but I'm referring to the Sacklers themselves, who apparently

11  and quite frustratingly, while we've been negotiating with

12  them (sound drops), took it upon themselves to set up an

13  internet site entitled JudgeYourself.com --

14  JudgeForYourself.com, in which they try to tell their side

15  of the story.

16        As we stated at the beginning of these cases, the

17  members of the UCC, many of whom are victim advocates,

18  agreed to stop advocating publicly for the last 20 months,

19  have been under a gag order.  We strongly urge everyone else

20  to do the same.  And quite honestly, we could not believe

21  that the Sacklers would put out such a site in the middle of

22  our negotiations with them.

23        Finally, we are hopeful that another constituent

24  (sound drops) will be able to resolve their potential

25  confirmation objective, because we believe their issues are

Page 225

1    resolvable, and frankly not for a large sum of money.  With

2    that, Your Honor, I just want to reiterate my initial point.

3    Neither the plan, nor the disclosure statement, is in a

4    position we can support yet, but we do believe that within

5    the next couple of days at most they will be, and that we

6    hope these issues will be resolved prior to (indiscernible),

7    so that the case can go forward.  Thank you, Your Honor.

8            THE COURT:  Okay, thank you.

9            MAN 1:  I'm sorry, Your Honor, the -- whatever

10   your pleasure is, I think --

11           THE COURT:  No, I just want to ask if someone else

12   has something to say before I go back to the debtors.

13           MAN 1:  Sure.  Yup.

14           MR. JOSEPH:  Your Honor, Gregory Joseph for the

15   Raymond Sackler family.  Over the last three years, there

16   have been approximately 400,000 tweets about the Sackler

17   family based on a public narrative that is false.  We took

18   to heart the Court's statement that it's necessary to hear

19   the merits of the case, and we put on -- in our submission a

20   website that I -- that has a presentation for several hours

21   going through the evidence, all publicly available.  We also

22   put out a shorter website which summarizes public

23   information.

24           The family has been vilified for the last three

25   years.  It's got public information only.  Everybody else

Page 226

1   attacks the family in these proceedings and doesn't want any

2   response, and that's the reason why a public website was

3   made.  It was not -- it has nothing to do with these

4   proceedings, Your Honor, but the family does have to live in

5   the world, and it does -- it is the subject, as Your Honor's

6   seen in the briefing, to not only anti-Semitic threats, but

7   to other threats and it's necessary that it be allowed to

8   respond, and that's all that we have done.  I only wanted to

9   respond to Mr. Preis, Your Honor, I have nothing else.

10          THE COURT:  Okay.

11          MR. JOSEPH:  But I will respond to any questions

12   you may have.

13          THE COURT:  Okay, thank you.

14          MS. MONAGHAN:  Your Honor, this is Maura Monaghan

15   from Debevoise & Plimpton on behalf of the Mortimer Sackler

16   family, and I just wanted to clarify that when Mr. Joseph

17   was speaking and Mr. Preis was referring to this website,

18   those are Raymond Sackler family issues, the Mortimer

19   Sackler side of the family have not joined that website.

20          THE COURT:  Okay, thank you.  All right.  Does

21   anyone else, before we get back to the debtor's counsel,

22   have anything to say?  No.  Okay.

23          MAN 2:  Can I say something?

24          THE COURT:  Well, let me just -- I appreciate all

25   of those remarks.  One thing that is quite clear to me is

Page 227

1    that there are very serious, substantive people working on

2    these cases in good faith.  And I think they do appreciate

3    the importance of moving ahead in them while they try to

4    resolve the remaining open issues.  I, early in this case,

5    discouraged in essence the filing of pleadings and other

6    public statements that didn't go specifically to the issues

7    right before the Court, because I felt it would distract the

8    efforts of those serious and substantive people from

9    resolving the very complex issues that these cases present.

10            I have not reviewed, and I will not review the

11   website that was referred to.  I could ask the debtors to

12   state their views in the disclosure statement on the third-

13   party claims as well as the estate claims, and they've done

14   so.  I would rather make less of that disclosure than more

15   of it, that is the website disclosure, and take Mr. Preis up

16   on his very well-stated suggestion that now really is the

17   time for the parties to do their best to bring these cases

18   to a conclusion, if they can.  The lawyers here and the

19   professionals they're working with, and frankly their

20   clients, all have the skills to do that, and I think

21   ultimately the will to do that.

22            And this isn't the time for anyone, really, to do

23   anything other than look at the remaining issues in a clear-

24   headed, practical, and non-inflammatory way.  Ultimately,

25   they owe that to their clients, and if they're public

Page 228

1    servants, to the people that they represent.  Some -- at

2    some point, and I think the point is now, people need to

3    show leadership, and not anything less than that.  And that

4    goes not only for the creditors in this case, but also the

5    Sacklers.  So, Mr. Huebner, my approach for the rest of this

6    hearing would be to focus on my now rather small number of

7    comments on the plan and disclosure statement, and then turn

8    to the solicitation procedures order.

9              MR. HUEBNER:  Yup.  Yup.  My only question is,

10   probably before you move to that last issue, could I have 90

11   seconds, and it would not be more than that, to reflect on

12   the comments that were just made by various parties?  I

13   think it probably would be helpful.

14             THE COURT:  Okay.

15             MR. HUEBNER:  I have another -- and I have another

16   great news update.

17             THE COURT:  Okay.

18             MR. HUEBNER:  Okay, so number one, as

19   prognosticated, the co-defendant Sackler debtor

20   (indiscernible) type issue is resolved.  There was an

21   (indiscernible) going back and forth until about 17 minutes

22   ago, and it is now agreed and acceptable, and so then we

23   (indiscernible) file -- we indexed the open file and then

24   updated when -- which will be in there and it is good to go.

25             Number two, and I actually thank -- I thank

Page 229

1  everyone for their comments so far, with respect to Mr.

2  Preis' five issues, just to put them in context for about

3  five seconds, the document with public story which, as the

4  Court may not remember, way back in October 2019 was

5  actually originated by the debtors at the very first

6  injunction hearing.  Everyone agrees that we're going to be

7  (indiscernible) that quite seriously, I think Mr. Troop

8  referenced a footnote and clarification from Mr. Klein, and

9  so that is a post-disclosure statement issue.

10       And it will be addressed as soon as we get past

11 this intense week or so, and we will all be back to that and

12 try to work it out.  So, that's one of those

13 (indiscernible).  Number two with attorney's fees which we

14 already discussed, we have I believe (indiscernible phrase)

15 group one, between a bunch of parties, AHC, etc.  And so, I

16 am confident that we will be ready to follow that, and if

17 it's not enough, we (indiscernible phrase), that will be

18 good.

19       With the debtor release, I actually think was

20 resolved, 'cause of -- it was in (indiscernible) around 2:00

21 in the morning, then with respect to who the debtors

22 (indiscernible phrase) be clear, because that is certainly

23 not (indiscernible phrase) your right, it's the

24 (indiscernible phrase).

25       THE COURT:  Mr. Huebner, you have to speak a

Page 230

1    little slower.  I think the Court Reporter may have a hard

2    time following you.

3             MR. HUEBNER:  Sure, I'm sorry, Your Honor.  The --

4    is this also a little bit more clear?

5             THE COURT:  Yes.

6             MR. HUEBNER:  Okay.  The debtor release issue, I

7    actually think was resolved in principal, and maybe that

8    there's just language, some moving around, but for the

9    avoidance of doubt, the post-emergence vehicles certainly

10   are not going to be preserving claims and causes of action

11   against individuals, to the extent that we do business with

12   entities and companies and their cross-claims and defenses

13   and things like that, I think everyone has agreed that

14   that's the conceptual approach, so I think we all figured

15   that out.  That's three of five.

16             Four of five is the releases in favor of the

17   Sacklers by, "any other person", which we discussed earlier

18   today, people who may not be holders of claims for interests

19   against the debtors, which I believe is a null set, but

20   we're putting in further language in the disclosure

21   statement, I think we've already put that one to bed.  And

22   then futures, as Mr. Shore and Mr. Eckstein and Mr. Preis

23   and Mr. Huebner all noted, as soon as the bell rings on this

24   hearing, that's our (indiscernible) for one job, and we'll

25   get that done.

Page 231

1           Hopefully, and this -- if not then we'll have to

2    figure out the way forward and be back before you, but we'll

3    discuss that at the very, very end.  With respect to Mr.

4    Preis' letter, which I did not know was going to be the

5    subject of a conversation today, it is not atypical for the

6    UCC to have a support letter go out with the plan, they are

7    the other statutorily appointed fiduciary, and obviously,

8    are designed to be quite representative and appointed by the

9    Department of Justice.  Those letters, as this Court

10   probably knows much better than I do, are normally two or

11   three pages, not 30 pages.  Or, I don't remember the exact

12   length, but it's about 30.  I am not expressing a view -- I

13   didn't know if this was going to be discussed at all today,

14   on whether or not 1125 in this case requires a separate

15   letter from the UCC.  If I had to form a view, I would guess

16   that it's probably definitively not my view, but we're

17   totally fine with them putting in the letter, we think that

18   a lot of what Mr. Preis said about the work they did and

19   that they were in many ways viewed as the primary

20   protagonist with no prior ties of any kind to the Sacklers,

21   and a constituency that nobody could possibly allege is not

22   poised fiercely opposite to Sacklers, is a very good thing.

23           We keep commenting on the letter, in part to

24   ensure that it is as helpful as possible, and I'm sure that

25   we will get to something, but at the end of the day it will

Page 232

1    go before the Court like other disclosure materials go

2    before the Court, and we'll figure it out from there.  But

3    on the whole, there's probably a 84.3 percent overlap

4    between Mr. Preis' view and explanation of the importance

5    and need for his letter and our view, although again, we

6    don't agree with everything in the letter to be sure, and

7    our disclosure statement will allude to that, and I don't

8    want their views to be ascribed to us, just like vice versa,

9    and the letter -- and I appreciate Mr. Preis' kind comments

10   about the professional, cordial, but intense nature of

11   interactions.

12          It continues to move closer to something or other

13   parties obviously may have their own views.  So, we are in a

14   very good place.  I do want the Court, hopefully to end

15   where I think we started, which is we resolved a

16   breathtaking number of issues between last week and this

17   week, far more than I thought were possible.  Even the five

18   issues that Mr. Preis listed I think one -- it's really kind

19   of 2.1 issues or so, by my count, 'cause one is post and two

20   are basically done and two we've to bang out.  And so, with

21   that, Your Honor, I just -- I think it is important to not

22   lose sight of just how far we have come, but also that we

23   have a real set of issues ahead, and to be clear, Your

24   Honor, even when these immediate issues come to rest, there

25   are also several Sackler-facing issues that the debtors feel

Page 233

1   as fiduciaries, they need to make more progress on before

2   the (indiscernible) are actually sent out for a vote.

3          I alluded in the beginning to a few blanks and

4   brackets, some of those I think can stay in when we commence

5   solicitation, because it's essentially still the term sheet

6   phase.  Some of them, frankly, we and others feel have to be

7   resolved, and so the good news is, I think we have several

8   more days before we would be ready to hand up an order, as

9   it were.  Right now, my hope, of obviously at the end of the

10  day, as in all things I take direction from the Court, my

11  hope is that if everything works out in the best available

12  way, I don't think we need another hearing or a continuation

13  of the hearing, I think the evidence frankly should be

14  closed, the only witnesses were admitted with no request to

15  cross-examine, and there is no other evidence.  There would

16  -- may be that we would need an hour or two on Tuesday if

17  things do not go -- I have no idea if the Court's available,

18  I know I'm being totally cheeky and I apologize, because

19  hearing several parties correctly note that there's just a

20  couple of things left before we're ready to potentially

21  start making 600,000 thumb drives to mail to every hamlet in

22  the country.

23         But that may not be the case.  Things fall into

24  place, and maybe either we can submit something on

25  certification of counsel to parties A, B, C, D, and E who

Page 234

1    are the effected parties are all okay with it.  I would like

2    to end, before we turn to the Court's comments, 'cause I

3    hope not to speak again except to say yes, Your Honor, yes,

4    Your Honor, of course, Your Honor, absolutely, Your Honor,

5    great comment, Your Honor, to thank many, many parties for

6    truly extraordinary efforts.  I think many of us have been

7    doing this for a long time, and this is not the confirmation

8    hearing, so I'll keep the valedictory lap short.

9         I have never seen teams work harder on any case in

10   my entire career then in this case, and the issues are very,

11   very fiercely fought and very passionately held, and

12   nonetheless we are just about there.  (indiscernible) just

13   about ready to go to print, and then we remain ready,

14   willing, and able 24 hours a day to work with the very few

15   remaining objectors out of a case that has 11 ad hoc

16   committees and all that to get it over the goal line, but we

17   have crossed oceans, despite the fact that we have a river

18   or two in front of us.

19        So, with that framing, Your Honor, I will zip it,

20   and obviously turn to the Court's comments on the

21   solicitation procedures and disclosure statement.

22        THE COURT:  Okay.  Fine, thank you.  I wrote most

23   of mine on the third note of the plan, and most of those

24   have now gone away, 'cause you filled in blanks or taken out

25   brackets in a lot of cases, so I don't have very many.  The

Page 235

1   reason I'm starting with the plan as opposed to the

2   disclosure statement is that in part, in evaluating the

3   disclosure statement, I think the Judge needs to make sure

4   that the plan and the disclosure statement are in sync, and

5   sometimes that requires understanding the plan and making

6   sure there isn't a glitch in the plan, as opposed to just

7   something that either the Court doesn't understand or that

8   isn't quite described the same way in the disclosure

9   statement.

10           So, I guess we began this hearing by talking about

11   the addition to the disclosure state -- or to the release

12   provision of other persons.  I -- when people talk about

13   future claimants, they make -- they sometimes talk about two

14   different types of concepts, but it ultimately, to me, comes

15   down to due notice, and as you said, almost frankly I think

16   every person or his or her parent or guardian had notice of

17   this case of the bar date, and there's also an ample

18   procedure in place to give notice of the plan.

19           So, as far as notice is concerned, I think people

20   probably have enough to know that if they are -- they use

21   Purdue products before the plan is confirmed, they may well

22   be covered.  I guess what I'm concerned about is that you

23   all go down an alley that says somehow the claims against

24   Purdue for what Purdue does in the future might be released

25   as to the Sacklers.  To me, that's just -- first of all, I

Page 236

1    can't imagine what those claims would be, unless the

2    Sacklers somehow would do what they're not going to do,

3    which is get involved again with Purdue, so I just hope

4    people don't spend a lot of time trying to find that type of

5    releasing party.

6           As far as the release goes itself, I'm just not

7    sure what the meaning is of some language in the second full

8    paragraph on page 110, on the black line of the fourth

9    united plan.  It says notwithstanding anything herein to the

10   contrary, X nothing in the plan shall release any excluded

11   claim, and while nothing in this section, 10.6B shall A,

12   release any cause of action against any shareholder release

13   snapback parties or any holder of codefendant claims, and my

14   confusion is, is -- what is not being released in A, as far

15   as holders and codefendant claims?  Is it just any holder or

16   is it just with respect to cause of action?  I'm just -- is

17   it -- or does it matter?

18          I mean, I think you could say release any cause of

19   action against any shown or released snapback party or

20   against any holder or alternatively you could say release

21   any cause of action against any shareholder or released

22   snapback party or release any holder of codefendant claims?

23   But I think you probably need to choose which of those two

24   approaches to take, whether you use the word against in

25   front of any holder or whether you use the words or release

Page 237

1    any holder.

2           MR. VONNEGUT:  Yeah, Your Honor, this is Eli

3    Vonnegut (sound drops) intent is to exclude claims against

4    holders of codefendant claims from the release, so we will

5    make that clearer.

6           THE COURT:  Okay.  All right.  That's fine.  Then

7    the rest of my comments I wrote on the third amended plan,

8    so if you have that version, I think it's worth turning to

9    that.  The administrative claims bar date definition is

10   right now 30 days following the effective date, and I think

11   you should add 30 days following the filing of notice of the

12   effective date.  And then, on the same page, the definition

13   of allowed, right towards the bottom, it says except as

14   otherwise provided in the plan or any final order, that

15   amount of (indiscernible) claims shall not include interest

16   or other charges of such claim on or after the petition

17   date.  Fine.  And then it says, no claim of any person

18   subject to 502D of the bankruptcy code shall be deemed

19   allowed unless or until such person pays in full the amount

20   that it owes such debtor.

21          Or the plan administration trustee.  I think

22   that's too much shorthand for purposes of 502D.  502D just

23   refers to certain amounts that are used in 502D.  There are

24   others that need to be repaid, so I will change it to say

25   instead of that, it owes to for which it is liable as

Page 238

1    provided under section 502D.  So, it just track -- it goes

2    back to track the requirements of 502D.

3               MR. VONNEGUT:  Understood.  We'll (indiscernible)

4    it.

5               THE COURT:  Okay, and then --

6               MR. PREIS:  Your Honor, just to jump back one

7    second, on the effective date notice, to be clear, you said

8    at -- the debtor shall -- after they have filed the notice

9    of the effective date?

10              THE COURT:  Yes.

11              MR. PREIS:  Can we just add the words on the

12   docket?

13              THE COURT:  Yeah, that's fine.

14              MR. PREIS:  'Cause I don't want there to be any

15   ambiguity --

16              THE COURT:  That's fine.  (overlapping

17   conversation)  That's what I meant.  So.

18              MR. PREIS:  Thank you.

19              THE COURT:  I appreciate you all have been working

20   on this all day, and worked on it some before the hearing

21   started today, but I just want to make sure there's not a --

22   inconsistency between the definition of co-defendant claim

23   and co-defendant defensive rights.  Because there is this

24   agreed carve out in respect of co-defendant defensive

25   rights, but co-defendant claim, that definition refers to,

1   among other things, contribution, indemnification,

2   reimbursement, setoff, or recoupment.  So, I just -- you

3   just need to make sure that that definition is not working

4   across purposes of the underlying which you have on

5   codefendant rights.

6            MR. VONNEGUT:  Understood, Your Honor, we've been

7   working on that throughout the course of the day.

8            THE COURT:  I'm assuming you are, I just wanted to

9   highlight it.

10            MR. VONNEGUT:  Thank you, yes.  We are -- we're

11   attempting to make clearer the division effectively between

12   offensive rights and defensive rights.

13            THE COURT:  Right.

14            MR. VONNEGUT:  So, there's -- there will be

15   amended language on this issue filed in the next plan.

16            THE COURT:  Okay.  Okay, the next comment is on

17   the definition on page 33 of the shareholder settlement

18   agreement.  And this is described as the settlement

19   agreement to be entered into on or prior to the effective

20   date.  Now, I think everyone has been assuming, including

21   the debtors, that it will be disclosed no later than the

22   agreement itself, the (indiscernible) will be disclosed in

23   the last filed plan supplemented at the latest.  So, I don't

24   want this to operate contrary to that assumption.  I think

25   maybe rather than saying to be entered into, that you say to

Page 240

1    be effective upon.  I mean, parties are going to agree to

2    it, I think, before then, although it will be effective on

3    the effective date.  Am I missing something there?

4            MR. PREIS:  Your Honor, let me make a suggestion.

5    There is no possible ambiguity in anyone's mind so let me

6    formally represent on the record on behalf of the debtors,

7    we are absolutely filing this formal agreement on the plan

8    supplement filing date, period, end of story.  I would

9    prefer not to play with the definition if possible, because

10   the act of gathering signatures from all over the world and

11   all that, right, the (indiscernible) requires an agreed

12   form, I don't know the length of the regulatory timelag

13   between confirmation and effective and so, your concern is

14   that this -- someone doesn't accidentally take away the

15   obligation to file the final form on the plan supplement

16   date.  It is -- there's no world in which that is going to

17   happen, and I would think that probably works, but if there

18   is language you feel strongly about, of course we will

19   accommodate.

20           THE COURT:  Okay, well I think at a minimum you

21   should say in the definition, the form of which shall be

22   filed on the --

23           MR. PREIS:  Perfect.  That's literally perfect.

24           THE COURT:  And then I also -- I -- the people who

25   -- I'm not as -- put it differently.  I don't want to go

Page 241

1    through an entire confirmation hearing and vote when people

2    are assuming this has been agreed to, and then hear that oh

3    no, we didn't agree to it.  So, I -- that's really the

4    second aspect of this that I really get -- that gave me

5    pause.  That it's entered into on the effective date.  I

6    understand the signing, but I think there needs to be some

7    statement when you file it that this is subject to all the

8    other conditions to the effective date of the plan, the

9    parties agree to this.

10           MR. PREIS:  Yeah, Your Honor, we agree and that

11   will happen.  We are not going to file it and proceed to

12   confirmation unless it is in agreed form with each of the

13   required signatories, and let me tell you, if any

14   signatories counsel on this hearing disagrees with that,

15   they'd better speak now, 'cause that is how it is going to

16   be.

17           THE COURT:  Okay.  All right.  And then the last

18   comment on the plan, this is like a ridiculously small one,

19   on page 71 there's just a typo in the fifth line down that

20   is stated twice.  The word that.

21           MR. PREIS:  Your honor, no -- we actually put that

22   typo into every one of our plans, I should note that you are

23   one of two out of 17 Judges who have caught it so far.  So,

24   thank you.

25           THE COURT:  Okay, well, I don't get a prize for

Page 242

1    that, so.  But I caught it anyway.  The -- on the disclosure

2    statement, I am grateful that the debtors took the US

3    Trustee up on the suggestion to have a shorter summary at

4    the start of the plan.  My experience is that most people

5    who get a disclosure statement read only that, and therefore

6    it's important.  I note the statements made by Mr. Preis and

7    Mr. Eckstein, among others, who said we're not yet able to

8    recommend the plan, but we do recommend strongly moving

9    forward.

10           At some point, and that point needs to come soon,

11   I think that decision needs to be made, and there are a

12   couple of places in the disclosure statement, in the early

13   sections, that you have to address on that.  It comes up on

14   page three and it comes up on page 19, and you just have to

15   come to grips with that.  That's one of the changes that I

16   expect to be able to review.  And if they do support it, on

17   page 33, instead of saying the plan is supported by a

18   litany, I would say the plan is supported by most of the

19   debtors' diverse prior constituencies, including the

20   official Creditors Committee.

21           And then if they're able to do that, then we'll

22   hyperlink to their letter.  And as far as the letter is

23   concerned, the way I've normally dealt with those, where

24   they have not been ready at the disclosure statement hearing

25   is that I just asked committee counsel to forward the letter

Page 243

1    in its proposed final form to chambers, as well as to the

2    key people who played a role in the case.  I've never had to

3    have a hearing on it, as you said it's (indiscernible)

4    conceivable I would need to, but I think probably as with

5    all of the changes we're talking about here, emailing the

6    letter or in the case of the changes, a black line to

7    chambers with copies to the parties who have appeared today

8    probably will be sufficient.

9            I obviously have reviewed the documents carefully.

10   I think I know what needs to be said to make them adequate,

11   and parties are certainly free to send off an email saying

12   they don't like this language or that language, but

13   ultimately, I think I can decide from any of those in the

14   docket -- and the changes themselves as to whether any

15   further change needs to be made, so that's the way I propose

16   that we proceed here with, I guess reserving a potential

17   time, but this would really be at my discretion to have a

18   hearing on the additional changes early next week, and you

19   should speak to Ms. (indiscernible) just to reserve half a

20   day for that.

21           I -- we're going to page four.  The fourth line in

22   the first full paragraph, (indiscernible) the negotiations

23   included a mediation, and I would add the phrase after

24   mediation, conducted by skilled neutral mediators.  And

25   then, in the second to last line of that sentence which

Page 244

1    begins among creditor constituencies while the second

2    primarily concerns settlement of the debtors causes of

3    action against the Sackler families, I would add after the

4    word debtors and third-party, and then add the word civil

5    causes of action against the Sackler families.

6              In the footnote four, it should add the word also,

7    where it says the debtors will, and then add the word also.

8    And then, a person that isn't really intimately involved

9    with the case might not know what the Truth Initiative

10   Foundation is, so I'd put in, because I -- this is my guess

11   as to what it is, the phrase for educational purposes after

12   that.  If that isn't what the Truth Initiative Foundation

13   does, you should just put a -- that similarly lengthy

14   description of what it is.

15             And then, this is a much more important point.  At

16   the very bottom of page four, the first full sentence says,

17   copies of the trust distribution procedures for each such

18   trust, and the PI trust is described below, is included in

19   the plan supplement, and the plan supplement, as defined, is

20   clear that there's more than one, so you know that they may

21   be filed at different times, but I think for this purpose,

22   you can't just rely on the definition.  I think you should

23   say, copies of the final trust distribution procedures or

24   substantially final, I think it should actually say final.

25   For each such trust, and the PI trust is defined below, and

Page 245

1    I'd rather say is, say will be included no later than in the

2    last filed plan supplement.

3            And then, you should say the last date to file

4    those.  Or for those to be filed.  Okay.  No, I think that

5    will be dealt with later.  On page nine, in two places there

6    are discussion of the resolution with the third-party payers

7    as far as the PI claimants, in the first full paragraph and

8    in the last full paragraph, depending on whether it's a non-

9    NAS or an NAS one, and I think again, what -- this is the

10   section that ordinary people are going to be reading, so

11   there's a sentence in both of those, it says, your

12   distribution may be further reduced on account of certain

13   liens held by healthcare insurance companies, also known as

14   third-party payers or TPPs or liens held by state insurance

15   programs, and then I would add in both cases, against you.

16   So, they know that this money that was paid to you would

17   actually be subject to a lien.  It's not like it's being

18   taken from you and given to someone else that doesn't

19   already have a lien on your assets.

20           MR. VONNEGUT:  Judge -- Your Honor, can we add the

21   against you after the word held, so it actually modifies

22   held instead of programs?  I actually think that's probably

23   a good -- grammatically better place for it.

24           THE COURT:  Yeah, that's fine.  Sure.  Yup.

25           MR. VONNEGUT:  Thanks.

1          THE COURT:  Okay, on page 11, the second full

2     paragraph, the last sentence says, additionally, if even

3     after reduction of your final judgement pursuant to the opt-

4     out procedures you ultimately receive more on your PI claim

5     than you would have received had you liquidated your PI

6     claim under the PI TPP, then your award will proportionately

7     reduce the awards of the other similarly situated qualified

8     individual victims.  I think -- again, this is for the folks

9     who are looking at this for the first time, I think you need

10    to do the flip side of that, which is that your award will

11    also be pro rata reduced so that there's -- I think that's

12    what it -- I'm assuming that's what it is -- intended,

13    right, it works both ways?  Your award gets reduced too, so

14    it's all equal pro rata?  Or not?

15          MR. KLEIN:  Your Honor, it's Darren Klein, can you

16    hear me?

17          THE COURT:  Yes.

18          MR. KLEIN:  I think the idea is that if you go to

19    the Court system and get an outside reward, then you would

20    have gotten in the trust, and then that gets multiplied by

21    the trust recovery, I think what the sentence is saying is,

22    the fact that you've gotten more than you would have through

23    the offering just means that the final trust money is lower,

24    and everybody else that didn't opt out (indiscernible).

25          THE COURT:  Well, just answer this.  It -- let's

Page 247

```
 1    say you get a judgement for $100,000.  But the pro rata

 2    distribution from the trust is 20 percent.  I'm just picking

 3    these numbers out of the air.  Is your $100,000 judgement

 4    going to get a $20,000 recovery along with everyone else

 5    getting their 20 percent?

 6              MR. KLEIN:  It will get reduced, yes.

 7              THE COURT:  All right.  But, see the way that this

 8    is worded, it just said others' rewards will be

 9    proportionately reduced, at least the implication that yours

10    won't be.  So that's what I'm referring to.

11              MR. KLEIN:  I understand, Your Honor.  I think we

12    can clean that up.

13              THE COURT:  Okay.

14              MR. HUEBNER:  Your Honor, for the avoidance of

15    doubt, this was actually intended to get a different point.

16    So I don't actually think it's -- you're just trying to add

17    another point.

18              THE COURT:  Yeah, I know, I know.  I just didn't

19    want to leave them with the impression --

20              MR. HUEBNER:  Right, don't get --

21              THE COURT:  -- they weren't getting a pro rata

22    recovery either.

23              MR. HUEBNER:  Yes, understand.  We'll add the

24    additional solution point.

25              THE COURT:  Okay.  And then in the last full
```

Page 248

1    paragraph on this page, there is a sentence that begins at

2    the bottom, "In practice, a PI claimant without sufficient

3    evidence."  I think it's sort of been practice that you just

4    say "thus" and instead of "high," it should say "higher."

5            And then on page 12, I really had a hard time

6    following the third full paragraph.  I want to make sure.

7    Maybe I'm just misreading it.  If you could give me a

8    moment.  Yeah, this is, this is what confused me.

9            It says, and again, we're talking to people who

10   may not be represented by lawyers.  It says "Non-NAS PI

11   claims liquidated under the Non-NAS PI TDP will be paid by

12   the PI Trust approximately 2 percent of the amount they

13   would be awarded by a court if such PI claims were litigated

14   in the tort system."

15           I think what was confusing to me there and I think

16   would be even confusing even more so to a non-lawyer, is the

17   word "awarded."  The suggestion there is that some how

18   you're going to get a much bigger judgment in the state --

19   in tort court -- in the tort system.  I don't think that's

20   the intention.  In fact, I'm pretty sure it isn't.  What is

21   the intention is that whether you get a judgment in the

22   state court system or the non-opt out, given the amount of

23   claims, it's about a 2 percent recovery.

24           This leaves the impression that the, you know, the

25   recovery would be a lot higher in the state court in the

Page 249

1  tort system and I don't think that's the case.  I think that

2  you've already made the case that it might actually be lower

3  and further, because of the aggregate amount of claims

4  asserted, the pro rata recovery under the plan for all

5  claims, whether they're opt-outs or not, will be roughly 2

6  percent of what would be awarded if they were in the court

7  system.

8         MR. HUEBNER:  Your Honor, we'll clean that up.

9  Obviously, its more, probably better to say the face amount

10  of any judgment received in a non-bankruptcy proceeding,

11  which would then be reduced and treated pursuant to the TDP,

12  something like that to make clear that the reduction surely

13  obtains in both places you're not going to get, you know, 48

14  times or 50 times the recovery in the tort system.

15         So, it's a great catch and we'll work with the

16  relevant parties to clean it up.  I can't imagine that

17  anyone disagrees and thank you for catching it.

18         THE COURT:  Okay.  Okay.  We talked about the

19  hospital claims and hospital trust earlier in the hearing.

20  I guess I had an issue, besides what we talked about there

21  as far as NOAT, the disclosure statement issued, but the

22  Debtors making sure that anyone who would fall in the

23  definition of the holder of a hospital claim would be able

24  actually, to effectively assert one assuming they met that

25  definition.  And again, that doesn't need to be in the

Page 250

1    disclosure statement, but it obviously needs to be the case

2    or it creates an issue for the plan by the time it comes up

3    for confirmation.

4         But in the third full paragraph, I think this may

5    be related to that point.  First, in the second full

6    paragraph, it says for the holder of a hospital claim to be

7    eligible to receive a payment from the hospital trust, they

8    must either, one or two."  It says have filed proof of claim

9    prior to July 30, or two, and it says be (x) a non-federal

10   acute care hospital as defined by CMS or (y) a non-federal

11   hospital or hospital district as required by law to provide

12   inpatient acute care and/or fund the provision of inpatient

13   acute care, in each case, (x) and (y), that is listed on the

14   National Registry of Hospitals maintained by the American

15   Hospital Registry.

16        So then you go to the next paragraph and it says

17   that the algorithm is based on unreimbursed charges incurred

18   by the hospital and then applies a waiting formula based on

19   the hospital's service area, opioid-related patient

20   population, opiated-related unreimbursed charges and whether

21   the holder of a hospital claim either timely filed a proof

22   of claim or is a safety net hospital under the Cares Act and

23   that phrase, "or is a safety net hospital under the Cares

24   Act," is different than the language in the preceding

25   paragraph in that enumerated clause two, which doesn't say

Page 251

1    that.  It says be (x) a non-federal acute care hospital or

2    (y) a non-federal hospital et cetera.

3             Now maybe as a practical matter it's the same

4    thing, but the definitions just don't mesh, I think.  Okay.

5             MR. KLEIN:  Thank you, Your Honor.  Let us take

6    this one away and discuss a possible way to address this.

7             THE COURT:  All right.  Okay.  I expect this will

8    change.  On page 15, there are a couple of references when

9    you're talking about the National Opioid Abatement Trust to

10   the table in and then it just says "zero."  Just want to

11   make sure you address that.

12            And then about six lines from the bottom of that

13   paragraph that's headed "National Opioid Abatement Trust,"

14   it says "And the specific abatement uses of the fund shall

15   be determined by the State -- and State should be

16   capitalized -- with input from a consulting body that

17   includes broad local government representation."  If that,

18   if that consulting body has been further defined, I think

19   you should reference to where it is further defined.

20            If not, and if it's an issue that, you know, is

21   just covered by a term sheet for now, I think you should at

22   least say how that body is intended to be selected.  But

23   hopefully, it's going to be defined soon.

24            Now, that may tie into the school district issues.

25   Frankly, I've always had a hard time understanding their

Page 252

1   concerns, but I think state governments are often acutely

2   aware and sensitive to school districts since that's where

3   the voters are, but maybe I'm missing something.  But you'd

4   think that they might be part of the consulting body or at

5   least have input with the consulting body because, again, my

6   experience, but maybe New York is different, is that school

7   districts are where people win and lose elections.

8          There's a small typo in the definition of Tribe

9   Trust or discussion of Tribe Trust on page 16.  And then, I

10  think this is important, to say in this letter statement, in

11  the second full paragraph on page 16, it says "Each

12  Abatement Trust shall monitor the use of funds received by

13  Abatement distribution recipients in accordance with the

14  authorized abatement purposes and prepare and deliver the

15  master disbursement trust for publication in annual reports

16  on the disbursement used, and to the extent feasible and

17  cost-effective efficacy of Abatement distributions."

18         And that's fine.  I wouldn't change any of that

19  language, but I don't see anywhere in the disclosure

20  statement how the -- a discussion of how the plan

21  contemplates that the key provision of the plan, which is

22  that this money in each Abatement Trust be actually used for

23  abatement is enforced.  And I think it's probably worth

24  putting a sentence in here to state how that requirement can

25  be enforced if it's not satisfied, if it's not met.

1           Mr. Huebner, am I being clear on that point?

2           MR. HUEBNER:  Your Honor, you are, this from Mr.

3    Vonnegut who is in charge of this.

4           THE COURT:  Okay.

5           MR. VONNEGUT:  Your Honor, this is Eli Vonnegut of

6    Davis Polk, let me chime in.  That will be addressed in the

7    Trust documents for NOAT and the Tribe Trust.

8           THE COURT:  No.  I understand.  This is for the

9    ordinary people that aren't going to want to read the Trust.

10   I just think it's important for everyone to understand that,

11   you know, if you're a, if you're a, you know, someone who

12   really cares about abatement and you read in this report

13   that it's going to reduce taxes or pay for the maintenance

14   of a golf course, you know, that's a public golf course, you

15   have somewhere to go to say you're not in compliance with

16   the plan that, whoever --

17          MR. VONNEGUT:  Yes.

18          THE COURT:  So I think I would put a sentence in

19   here that just says that.

20          MR. VONNEGUT:  Very much understood.  We'll make

21   that very clear, Your Honor.

22          THE COURT:  Okay.  All right.  I'm coming to the

23   end of this as my focus was really on the short form,

24   primarily.  On page 17, the last full paragraph that begins

25   "Prior to," there's a sentence, there's a line four lines

Page 254

1   down, "Exacting review of their claims."  I think I would

2   just say the Debtors and their Estate's claims.

3          Oh, and then on the top of page 19, the first full

4   sentence says the Sackler families will have no role in the

5   selection of the new co-managers or in any other aspect of

6   NewCo's governance or operations.  I would add after NewCo

7   "or TopCo's governance or operations," assuming that's true.

8          MR. HUEBNER:  That is true.

9          MR. VONNEGUT:  That is true.

10          THE COURT:  Right.  Page 23, the second full

11   paragraph, the last line begins "To individual claimants"

12   and it says "and does not describe procedures for making

13   distribution to individual claimants, I'd add a comma and

14   then "which are described elsewhere in this disclosure

15   statement."

16          And then on Page 25, the paragraph that starts at

17   the bottom of the page, third line, at the underline is the

18   word "undoubtedly," and I changed that to "likely."  And on

19   the top of Page 26, the fourth line down, it says the word

20   "massively" and I changed to "materially."

21          You're all probably grateful that I've come to

22   most of the end of this.  But I think there should be on

23   what was, what is the third plan, Page 37, before the

24   heading "G. Confirmation of the Plan," so after the last

25   paragraph that just quotes the releases, you should have a

Page 255

1    cross-reference to the section later where you discuss the

2    analysis by the Debtors of why they have agreed to the

3    releases because you're just left hanging with the

4    description of the releases, but I think you need to see a

5    cross-reference as to where they go and, you know, why, why

6    they're chosen.

7            On Page 38, this goes to the voting procedures,

8    this is a point that I made earlier with the U.S. Trustee's

9    counsel, I think in the voting procedures, you should state

10   that it is the Debtor's position and they will -- or the

11   Debtors will argue to the Bankruptcy Court that if there are

12   no votes cast in a particular class, the class will be

13   presumed to have accepted the plan.

14           I also think you should say here that because of

15   the deemed one dollar allowed amount for voting purposes,

16   effectively, a two-thirds' vote will be required for

17   approval unless a different dollar amount for claims is

18   established.  And you say that elsewhere so use that same

19   language -- not in this document, but in a different

20   document.

21           Now, I raised the point on who determines the

22   privilege.  That would be on Page 124.  If you can't get to

23   that before -- the agreement on that before this goes out,

24   fine.  If you can, you should add it here as to, you know,

25   in the case where the privilege issue is not before a court,

1    specifically, you know, what is the procedure for contesting

2    a privilege assertion?  And then the cross-reference that I

3    said you should put in earlier, is related to the discussion

4    that begins on page 142.  It is headed "Evaluation of the

5    Settlement with the Sackler families."

6              And, in addition to the language that we talked

7    about that should be added in the discussion during the

8    hearing with Mr. Troop, I really do think you should make a

9    reference to the St. Paul Fire and Marine Insurance Company

10   versus PepsiCo case, 884 F.2d 688 (2nd Circuit 1989) and

11   probably also In Re Cabrini Medical Center, 489 B.R.7 (SDNY

12   2012).

13             When you talk at Page 158 about piercing the veil,

14   it's really, you know, it's one thing and you do discuss

15   this.  We spent some time on it with Mr. -- with Professor

16   Lipson too, to discuss the merits of whether you can pierce

17   a veil or not.  But there's a second issue, which is is that

18   claim even a third-party claim as opposed to an estate

19   claim, which I think people who are worried about giving up

20   estate -- I mean non-estate, third-party claims should be

21   made aware of.  They may not, and probably don't have such a

22   claim or standing to bring it because it's an estate claim.

23             MR. HUEBNER:  Well, what -- Your Honor, I actually

24   believe I said at the time, I might have been misheard, that

25   would add those references.

1          THE COURT:  Okay.

2          MR. HUEBNER:  But let me confirm, again, for the

3     record that we will add them.  More information is always

4     better and for the avoidance of doubt, we actually think we

5     know the law pretty well.  We've all done quite a bit in

6     this case and many others and we believe completely that we

7     think we reserve estate remedies and claims that others are

8     not giving up.

9          THE COURT:  Right.  Okay.  So those are my

10    comments and I don't want to stint on the proposed order

11    because I have a fair number of questions and comments on

12    that too, but again, my usual practice where there are

13    changes to be made in a disclosure statement is to take the

14    changes as they're emailed to chambers with, you know,

15    copies having been sent to the parties who appear to have

16    taken an interest in the disclosure statement, the

17    disclosure statement hearing, in an objection or a statement

18    in support, or just a statement, and I generally know, since

19    we're down to the short strokes, whether those address my

20    comments or other's comments, or to the extent there is

21    something new, whether it's clear and not over-reaching.

22          My experience is that if you give people a little

23    bit of time, a day or so, to react either before you send

24    them in or after you send them in, so that they can promptly

25    email the Court, that's enough.  I hope it would be enough

Page 258

1    here and that we wouldn't need to have any additional

2    hearing time on it.  And that's how I'd like to proceed

3    although, the Debtors, as I said, should reserve a half a

4    day, I guess, next week.

5              And that really relates also to the first issue

6    that I had on the proposed order which has the slightly

7    revised schedule toward confirmation in it.

8              You have, and this is fine, a June 10th

9    solicitation deadline with the footnote to it.  But my

10   question, I guess, is when does -- this is a practical

11   question, when does the order need to be entered so that you

12   know what the final changes are for you to meet that

13   deadline?

14             MR. ROBERTSON:  I'm sorry, Your Honor, this is

15   Christopher Robertson.  I'm from Davis Polk.  Our current

16   guidance from Prime Clerk is that we need to have the order

17   entered and the materials final by tomorrow close of

18   business in order to meet that deadline.  But, you know, we

19   can go back and talk to them about that.

20             THE COURT:  That doesn't mean, I mean people have

21   been talking about spending some -- I mean I don't think

22   that's a fact, frankly.  People have been talking about

23   potentially reserving time next Tuesday for example.

24             MR. ROBERTSON:  I understand, Your Honor.  Those

25   are just the latest emails I have from Prime Clerk.

Page 259

1           THE COURT:  Okay.  Well, again, June 2, I'm sorry,

2    June 10 is certainly more than the 28 days that the code

3    requires in the rules.  So you do have some flexibility with

4    the June 10 date.  But I just don't -- I want everyone to

5    understand and I think you-all should let them know as soon

6    as you know what that last date is --

7           MR. ROBERTSON:  Understood.

8           THE COURT:  -- to have appropriate notice under

9    Rule 2002.

10          On this schedule, I had a couple, I had three

11   comments.  First, well, I'll just put a hold on that one

12   because it comes up later too.  There's a, there's an entry

13   here that says "Plan supplement filing deadline" and I just

14   don't think it's accurate in all respects.

15          First, on Page 9 it says that it will be nine days

16   prior to the plan objection deadline and here it's July 7th,

17   and the plan objection deadline is July 19th, so that's more

18   than nine days.  And then I'm not sure that the footnote is

19   accurate where it says that the PI Trust documents deadline

20   is seven calendar days.  That is right.  You agreed to that,

21   right?  Anyway, I just you to make sure that that's the

22   date, seven calendar days prior to the plan supplement

23   filing deadline.

24          MR. ROBERTSON:  We did agree to that, Your Honor.

25          THE COURT:  Okay.  All right.  So I think the

Page 260

1    thing to reconcile is the reference on Page 9 in paragraph

2    18 with the plan supplement filing deadline here.

3            And then I think you should add to this.  It says

4    "deadline to file the confirmation brief and omnibus reply

5    to plan objections," which is a week before the confirmation

6    hearing, that should also be the deadline to file

7    declarations of witnesses within a party's control and to

8    provide the Court with those as well as the joint agreed

9    exhibit book.

10           I'm not going to put in the rest of the schedule

11   here.  The parties can work that out.  If they can't, they

12   should set up a conference with me to get to that point, you

13   know, the meeting conferred designated witnesses, et cetera,

14   that's covered elsewhere.  But I think it's worthwhile to

15   put that in here that the time to file witness declarations

16   and profile them in the exhibit book to chambers.

17           Okay.  So in Paragraph 18, either it or this

18   charge needs to be adjusted as to the deadline.

19           I think at this point with the solicitation

20   package, are we just talking about a letter from the

21   Committee?  Is there anyone else that thinks that they have

22   a letter in mind?

23           MR. HUEBNER:  Your Honor, there's a very short

24   Debtor cover letter that we filed on the docket during this

25   hearing.  I think it's two pages long.

Page 261

```
1          THE COURT:  Well, no, if it's a Debtor cover
2    letter, that's fine.  But, again, the -- on, well, these
3    pages aren't numbered, but the solicitation and voting
4    procedures, which is Page 21 on the top, Exhibit A,
5    C(1)(iii) says at the Debtor's election, a cover letter and
6    substantially the form annexed as Exhibit 13 to the
7    disclosure statement, that's fine.
8          MR. HUEBNER:  Your Honor, let me take this one.
9          THE COURT:  And then it says "and/or a cover
10   letter from the Creditor's Committee, and/or counsel to any
11   mediation party."  And the only reason I'm asking about this
12   is I'm fine with reviewing a Committee letter.  If everyone
13   else wants to chime in, I think, you know, I don't think
14   that's intended.  I just want to make sure that someone is
15   not going to be sending everyone a letter, you know, sort of
16   out of left field, other than the Committee, which isn't out
17   of left field because it's been clearly aired and discussed.
18         MR. HUEBNER:  Yeah, Your Honor.  Let me jump in on
19   that one.  We are definitely not contemplating any other
20   letters from any other parties.  We certainly respect and
21   understand that many parties have very strong views, but in
22   the Debtor's Solicitation package, once in a great while
23   there's a UCC letter, although it's relatively rare.  I have
24   never seen other parties and as you know from the last
25   hearing, we said absolutely not to the Sacklers and agreed
```

Page 262

1    only to hyperlink and I think this issue is done.  So I

2    don't think there will be anything else.

3              THE COURT:  Right.  Okay.  So I would just take

4    this out.  I don't think you should even contemplate it

5    because even though you're saying it's a Debtor's election,

6    other people will want to see it and it's unlikely that it

7    would ever go in and it's unlikely that anyone even wants it

8    to go in.

9              MR. HUEBNER:  Yeah.  Happy to take it out.  It's a

10   better approach.

11             THE COURT:  Okay.  Why don't I raise this issue

12   now?  The -- this is on the master solicitation ballot

13   materials, Page 32, it refers to two different solicitation

14   methods, the master method and the direct solicitation

15   method.  And there are two later documents.  One is Page 265

16   of 286, which is the letter to attorneys representing

17   holders of claims and it deals with master ballots.

18             And if you go to Page 265, it defines the term,

19   the solicitation directive deadline, which is the deadline

20   to say whether you're doing direct solicitation or master

21   ballot.  And it's already happened.  It's April 5.  So it's

22   in the past tense.

23             Now, if you go back to Page 32, it describes the

24   two methods, i.e. master ballot or direct solicitation as if

25   you can still make this election.  In (b) on Page 32, it

Page 263

1    says if a firm prefers to have each of its eligible clients

2    cast their own vote, you know, fine, you can do it that way.

3    But it's already done, right?  Or am I missing something?

4             MR. HUEBNER:  Your Honor, on that point, if you

5    look at Page 30 in G, you'll see reference to the definition

6    of what this directive's deadline is, 4 p.m. on April 5th,

7    2021 and such deadline may be extended by the Debtors in

8    their sole discretion --

9             THE COURT:  Right.

10            MR. HUEBNER:  -- in consultation with the

11   Creditors Committee.  And in practice, we have extended the

12   deadline for certain parties.  And my understanding is this

13   master ballot option has been very well received by other

14   creditors.

15            THE COURT:  Okay.  That's fine, but I think you

16   need to have some outside date because otherwise, you're not

17   going to leave enough time for the individuals to vote.

18   Right?  This is a determination that the lawyers are allowed

19   to make in consultation with their clients.  But you've got

20   to have, you've got to have at least enough time under the

21   bankruptcy rules so if they say, oh, no, we decided we're

22   not going to do that, that the individuals will do it.

23            MR. HUEBNER:  I think we can do that, Your Honor.

24   I think the way the procedure works if an individual and

25   their lawyer both cast a ballot, the individual ballot

Page 264

1    controls, so you're not freezing out any creditor.  But the

2    point is taken and we can clean it up.

3            THE COURT:  Okay.  And I think -- I would

4    therefore add to the chart on page 4 the solicitation

5    directive deadline and just say it's April 15th unless --

6    I'm sorry, April 5th, unless expressly extended and in any

7    event to be no later than and then pick the date so that

8    there's enough time for the client to vote.  Okay?

9            In the -- I think this is apropos in the

10   discussion that Professor Lipson that we had earlier, on

11   page 38 of the materials, there's this important notice to

12   holders of personal injury claims regarding requirement to

13   file additional claim information and option to liquidate.

14   I think you just have to adjust that so that's it's clear

15   that the additional claim information deadline is if you're

16   an opt-out and you'll be deemed to be an opt-out if you

17   don't take that action by the 150 days to -- I'm sorry.

18   You'll be deemed to be not an opt-out unless you opt-out by

19   that deadline, the 150-day deadline.

20           And you should make it clear that the information

21   doesn't need to be provided if you have opted out, but

22   otherwise, does need to be provided by that deadline.  So

23   that, I think in addition to the disclosure statement,

24   should be in this form, which is more likely to be read by

25   them than the disclosure statement.

Page 265

1                 MR. HUEBNER: Your Honor, sorry.  I think you might

2       have meant to say you don't need to provide if you were

3       opting in --

4                 THE COURT:  Yeah, I got it backwards.

5                 MR. HUEBNER: You said opting out.

6                 THE COURT:  Exactly.  If you opt-out, you don't

7       need to provide the information.

8                 MR. HUEBNER:  Okay.

9                 THE COURT:  But if you either -- well, if you

10      don't opt-out and/or don't do anything, you must provide the

11      information and you'll be deemed to be in the streamlined

12      procedures.  Again, what we discussed with Mr. Lipson.

13                I think you need to say it here in these documents

14      in addition to the disclosure statement.

15                MR. KLEIN:  Marshall, it's Darren.  Judge Drain is

16      correct.

17                MR. HUEBNER:  Not a surprise.  Let's keep rolling.

18                THE COURT:  Okay.  By the way, I don't know what's

19      more respectful, Professor or Mister, I think it depends on

20      whether you got an A or a C in the class in referring to

21      Professor or Mister.

22                Yeah, it comes up also on Page 67, I mean 66 in

23      these materials.

24                Okay.  Last comment on the forms is on all of the

25      non-voting notices, that's both the no recovery and

Page 266

1    unimpaired, you need to add, and I think it's right before

2    Exhibit 1 in each case, so I'm just using Page 137 as an

3    example, but it's on each of those notices, a statement to

4    the effect that -- and I would underline it as well as bold

5    it -- the Debtors will contend and the Court may accept that

6    if you don't object to confirmation of the plan, or if you

7    object and your objection is denied, the plan and the

8    foregoing provisions will be binding on you.

9            It's important that I say "if the Court may"

10   because, obviously, that issue hasn't been decided yet, but

11   I think it's important here to make it clear as part of this

12   notice that your opportunity not to be bound by the notice

13   is to object to confirmation.

14           And then we talked about this section already.

15   Page 265 refers to the solicitation deadline.  If you have

16   been extending it, you need to say, it should say on April

17   5, 2021, or such date -- or such later date as agreed by I

18   think you say the Debtors in consultation with the

19   Committee.  But then I think you should have an absolute

20   outside date, you know, provided that such date shall be no

21   later than, and then pick the date so there's enough time

22   for the individual client to vote while you, you know, on

23   the plan since there won't be a master ballot.

24           And then the last point is -- I think we should

25   say this.  I don't think you need to change all the other

1    notices which refer to a telephonic confirmation hearing.

2    But on Page 3 on the Notice of Hearing, which is Page 277 of

3    the procedures document, it says in the first full paragraph

4    "Such confirmation hearing shall be conducted

5    telephonically" and I would add "and by Zoom for those will

6    actually participate in the hearing," so the comma before

7    "and" and then after "hearing."

8           And Mr. Huebner, we will get to see you then,

9    right?

10          MR. HUEBNER:  You will, Your Honor.  And I

11   appreciate the Court's indulgence, although I actually did

12   everybody a favor by not seeing me today, but obviously as I

13   advised the Court before the hearing, we have been forced --

14          THE COURT:  And you asked because you were going

15   to be working on documents and taking phone calls and the

16   like while your colleagues were speaking, which is fine, and

17   I granted permission.

18          MR. HUEBNER:  Thank you, Your Honor.  So, Your

19   Honor, a couple of quick things from my end and I think we

20   can bring it home.  Number one, with respect to the Court's

21   concern before about when the Sacklers sign, I do actually

22   want to slightly backtrack or at least create more

23   optionality.  It is actually entire possible that either the

24   Debtors or the UCC or the AHC or the MSG or the Sacklers or

25   the same states who have come on board, any one of those

Page 268

1    parties might actually insist that the documents actually be

2    executed prior to the plan supplement date or the plan

3    confirmation date so that there's no possible question that

4    the documents are done and binding and enforceable subject

5    only to conditions expressed in.

6            I was not suggesting to the contrary.  I just

7    didn't want to accidently get boxed in.  So I do want to be

8    clear --

9            THE COURT:  I'm fine with that.  I'm happy with

10   that.  I certainly don't want to waste time if people

11   haven't actually agreed to it.

12           MR. HUEBNER:  Exactly.

13           THE COURT:  It won't be effective unless the plan

14   is confirmed and goes effective on the other conditions to

15   effect --

16           MR. HUEBNER:  Exactly.  I just wanted to telegraph

17   it a little bit more broadly that it may actually well be

18   that we or other parties demand actual John Hancock's prior

19   to Date X or Date Y and we'll just see where that goes.

20           THE COURT:  Okay.

21           Mr. HUEBNER:  Number two Your Honor, another

22   housekeeping matter, the amended plan litigation procedures

23   order says this order in Paragraph 8, this order will

24   terminate and cease to have any effect if and only if the

25   disclosure statement is not approved at the disclosure

1    statement hearing on May 26th or such other date as set by

2    the Court.

3              THE COURT:  Right.

4              MR. HUEBNER:  So what I would ask, I think we can

5    do this orally if it's the Court's pleasure.  I don't think

6    we need to trouble the State with the expense of yet another

7    order.  I am guessing that somewhere between Friday and

8    Tuesday after we go beat the daylights out of Prime Clerk,

9    although to their credit, to be fair, they have to, you

10   know, make something like 600,000 thumb drives.  This is, in

11   fact, launching an entire thing of gargantuan proportions,

12   but we don't have a lot of time here to finish up these

13   issues and get documents in.  That said, I know that we

14   don't want to have to double and triple bounce on this order

15   permission.

16             THE COURT:  Are you recommending that the outside

17   date is Tuesday?

18             MR. HUEBNER:  No, I would go a couple of days

19   longer than that because as long as it's clear to everybody,

20   we may not even have them until Tuesday.  We'll see.

21   Hopefully, we will have them on Tuesday, but just not to

22   have you bounce it and issue yet another order and spend

23   another few thousand dollars on a form of order, why don't

24   we just set it for next Thursday right now, as a bench

25   ruling --

Page 270

1          THE COURT:  Right.

2          MR. HUEBNER:  -- if that's okay with the

3    understanding so that everyone is clear, we probably almost

4    surely cannot wait until next Thursday to begin

5    solicitation.

6          THE COURT:  Right.

7          MR. HUEBNER:  But just to not have to redo this

8    order yet again.  This is an outside, outside date and then

9    we will work with the parties as soon as we're done here to

10   set the real outside date and then work like -- move heaven

11   and earth to get the few remaining issues swatted away so we

12   can finalize and resubmit the documents.

13         THE COURT:  Right.  I will authorize it that the

14   date will be Thursday, although, again, the parties should

15   be assuming that as far as the schedule is concerned, they

16   really need to get this done by Tuesday, if not before.

17         MR. HUEBNER:  Thank you, Your Honor.  We'll read

18   Thursday, June 3 as the new sort of date in paragraph 8 of

19   the confirmation of the litigation procedures order.

20         THE COURT:  Right.  That's fine.  Okay.

21         MR. HUEBNER:  I think, unless somebody on my team

22   corrects me, because I assume we're fiercely taking notes

23   and that everyone is a-okay perfect with those issues, Your

24   Honor, I think there is nothing further from the Debtors

25   other than to get back to work on the very tiny number of

Page 271

1    presolicitation business close-down points and obviously the

2    Court's comments and other concessions, representations made

3    today, the co-defendant, revised language, et cetera, and I

4    think it is absolutely -- I think I speak on behalf of a

5    hundred people on the phone the fact that you're catching

6    typos and footnotes on Page 237 of a document filed at 6:20

7    this morning is actually just -- I don't even know what word

8    to use.  I don't usually use adjectives, so I'm not going to

9    fill one in.  But everyone -- I'm confident I can speak for

10   everyone and just say wow and thank you.

11                    We will take the energy and momentum of

12   today as a whole and get the rest of the stuff done and then

13   we will keep working with every single party not yet in the

14   deal between now and confirmation, both in and out of the

15   now two mediations that are scheduled or to be scheduled for

16   the upcoming days or weeks or already underway.

17                    THE COURT:  Okay.  Last word.  I'm not sure if

18   I've actually said this.  It's certainly implicit in my

19   comments and my rulings on the objections, some of which

20   I've granted, some of which I've denied.  As far as the

21   document stands today, with the changes that have been set

22   forth on the record, the document does, in fact, provide

23   adequate information under Section 1125 of the Bankruptcy

24   Code to those who would be voting to accept or reject the

25   plan.  And proposed order and attached solicitation

Page 272

1   documents and other notices also would satisfy the

2   applicable Bankruptcy rules.  Obviously as Mr. Price said,

3   one needs to come to ground at least from the Debtors plan

4   prospective of the key remaining open terms.  Hopefully,

5   that will not be just the Debtor but the other key parties

6   to get their consent and, again, I trust that I will be able

7   to review that language as well as the changes that would be

8   conforming to what's the record today within the time that's

9   contemplated.

10          So clearly, the parties really should be focusing

11  on those key, what I'll call important, secondary deal

12  points and just get me the document in time with the

13  proposed order.

14          As far as the remaining major deal point, again,

15  I'm very grateful to Judge Chapman for already being at work

16  and do urge the parties, again, to take advantage of that

17  and the positions that you have to make the tough decisions.

18  This is what an official really lives to do and I'm sure

19  they'll do it.

20          And it's also critical, I don't think there's

21  anything more important for the Sackler parties then to

22  focus on, with her direction and insight, which is always,

23  in my experience, extraordinary, to listen to her carefully.

24  All right.  Thank you.

25          (Whereupon these proceedings were concluded at 4:54 PM)

Page 273

1                         I N D E X

2

3                         RULINGS

4                                              Page        Line

5

6    Objections Overruled                      198         11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 274

1                     C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6     Sonya Ledanski          Digitally signed by Sonya Ledanski Hyde
                              DN: cn=Sonya Ledanski Hyde, o, ou,
                              email=digital@veritext.com, c=US
7     Hyde                    Date: 2021.05.31 16:59:24 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 31, 2021

| & | | | |
| --- | --- | --- | --- |

**&**

**&** 5:23 6:4,11 7:1
7:8 23:3,14 25:1
25:15 26:8,15
27:7 61:24 89:9
118:9 143:7
210:23 226:15

**1**

**1** 29:12 69:1 106:3
106:6 127:10
225:9,13 261:5
266:2
**1,000** 148:17
**1.775** 43:23
**10** 67:17 98:1,8
101:13 259:2,4
**10,000** 148:16
**10.6** 55:23
**10.6b** 236:11
**10.7** 55:23 81:7
82:15
**100** 47:13 221:22
**100,000** 148:16
247:1,3
**1000** 25:4
**10007** 27:3
**10014** 24:11
**10017** 23:6 26:4
26:19
**10019** 24:4
**10020** 25:19
**10036** 26:11 27:11
**1006** 24:10
**10601** 1:14
**107** 187:7
**10:05** 1:17
**10:47** 53:12
**10th** 258:8
**11** 8:18 9:13 12:9
13:3 14:15,15,20
15:14,20 16:6
17:2,13,22 18:8
19:1,7,13 20:2,8

20:12,18 21:10,16
28:6 32:25 38:11
42:9 47:7,16
102:11 104:13
105:6 162:5,7,16
162:18,19 170:9
193:15 206:19
234:15 246:1
273:6
**11.1** 42:9
**11/25** 221:3
**110** 236:8
**1122** 71:23 72:15
180:9
**1125** 32:14 66:25
188:5,11 231:14
271:23
**1125's** 58:17
**1126** 85:5
**1127** 188:3
**1129** 36:21 66:24
71:23 73:25 98:1
98:8 100:19,22
102:11,13 103:8
127:10 183:24
**1141** 183:24
**1145** 188:9
**11501** 274:23
**1177** 26:10
**11:47** 53:14
**12** 114:11 248:5
**12.3** 188:1
**121** 68:23
**1221** 25:18
**124** 255:22
**126** 98:21
**12:47** 53:14
**13** 39:15 118:15
118:20 218:19
261:6
**130,000** 119:1
120:12

**131** 6:21 10:11
14:2
**137** 170:9 266:2
**14** 97:4
**140** 98:20
**142** 256:4
**143** 30:19
**15** 59:7,11 251:8
**150** 126:3 133:7
135:3 140:11,16
140:23 142:7,17
143:12 154:6
264:17,19
**156** 153:18
**1563880** 184:19
**157** 127:12
**158** 127:12 256:13
**15th** 35:21 264:5
**16** 67:5 252:9,11
**17** 59:14 228:21
241:23 253:24
**1719** 25:10
**18** 217:3 260:2,17
**183** 98:21
**19** 63:21 101:25
242:14 254:3
**19-23649** 1:3
**19122** 25:11
**198** 273:6
**1989** 256:10
**19th** 259:17
**1st** 24:17

**2**

**2** 7:15 8:19,19
37:6 50:7 127:14
226:23 248:12,23
249:5 259:1
**2,000** 148:17
**2.1** 232:19
**20** 36:3 67:18
224:18 247:2,5
**20,000** 247:4

**131** 6:21 10:11

**2002** 259:9
**2004** 184:20,21
**2006** 183:12
**2007** 98:20
**2008** 99:7
**201** 24:10
**2011** 98:22
**2012** 152:7 184:19
184:19 256:12
**2019** 33:7 37:17
165:10 205:5
229:4
**2020** 184:9
**2021** 1:16 2:7,9
21:7 167:2 263:7
266:17 274:25
**205** 6:25 10:15
14:5
**20th** 39:22 223:18
**21** 261:4
**215** 6:24 10:14
14:4
**225** 43:22 47:2
**23** 254:10
**237** 271:6
**24** 25:3 40:5
176:10 184:19
234:14
**248** 1:13
**2487** 3:16 4:6
14:18,22 15:16
19:3 21:12
**2488** 3:16 4:6,15
4:19,23 5:2,6,10
5:14 7:19 8:2
14:23
**2489** 2:22 3:20
5:21 6:8,18 7:5,14
7:19 8:7,12 9:3,17
9:22 10:3,8 11:1
11:15 12:3,10
13:5,12,24 14:12
15:6,11 16:21

**[2489 - 4a]**                                                                 Page 2

17:9 19:23 21:12
21:18 22:10,15
**2491**   15:3 18:23
**2494**   2:21,22 8:6
8:11 9:22 10:2
15:7
**24th**   80:24 82:13
87:25 97:15
**25**   101:22 254:16
**2536**   6:18 10:8
**259-60**   98:20
**25th**   83:1
**26**   1:16 2:7,9 21:7
42:5 189:18
254:19
**2625**   15:12
**2627**   2:19 11:5
**2634**   2:23
**2645**   11:5
**2648**   3:2
**265**   262:15,18
266:15
**2652**   3:6
**2653**   3:9
**2654**   3:12
**2686**   3:17
**26th**   30:14 269:1
**2703**   3:22 7:14,19
9:9 12:2 13:18
**2708**   4:3 106:5
**2710**   4:9
**2711**   4:12
**2712**   4:16
**2713**   4:20
**2714**   4:24
**2715**   5:3
**2716**   5:7
**2717**   5:11
**2718**   5:16
**2719**   6:2,8 7:5
**2720**   6:25 13:18
**2722**   6:13 7:10

**2725**   7:25
**2730**   8:3
**2731**   15:17,22
16:2,8 17:4,14
19:4,9,15 20:4,9
**2732**   15:23 19:10
**2733**   16:3
**2734**   9:3,17 16:9
16:13 17:4 19:16
20:4
**2735**   16:14
**2736**   16:22 19:24
**2737**   17:5 20:5
**2742**   8:8
**2743**   8:13
**2745**   8:20
**2746**   9:5 12:16
**2749**   9:9 12:21
**275**   46:24
**2762**   9:18 155:3
**2766**   9:23
**2767**   10:3
**277**   267:2
**2773**   10:15 13:17
**2780**   17:10
**2788**   17:15,19
20:10
**2789**   17:20
**2791**   117:24
**2794**   10:19 106:6
**28**   259:2
**2811**   122:19
**2819**   11:2 122:19
**282**   97:15
**2822**   11:6
**2823**   17:25 18:3,9
18:14 20:15,20
21:3
**2824**   18:5
**2825**   11:15,21
18:10,14 20:20
**2826**   18:15

**2828**   11:11 106:6
**2833**   11:16
**2839**   18:19
**2853**   11:22
**2857**   12:5 13:18
**286**   262:16
**2867**   20:21
**2868**   21:4
**2881**   12:12
**2882**   2:11 21:8
**2902**   21:9
**2903**   12:17
**2904**   21:13,18
**2906**   12:23
**2907**   13:5,18
21:19 22:10
**2909**   22:4
**2910**   13:12 14:13
114:11
**2911**   13:7
**2913**   22:12
**2914**   13:14
**2915**   13:20
**2916**   14:5 107:20
**2917**   22:16 75:19
**2921**   200:22
**2944**   218:9
**299**   6:20 10:10
14:1
**2:35**   198:17
**2nd**   256:10

**3**

**3**   29:10,12,17 37:6
50:7 63:21 66:15
267:2 270:18
**3.7**   42:6
**30**   105:7 116:24
231:11,12 237:10
237:11 250:9
263:5
**30,000**   149:14
**300**   1:13 58:9
274:22

**3018**   188:18
**3019**   188:18
**30th**   26:3
**31**   24:3 274:25
**32**   262:13,23,25
**32601**   24:18
**33**   239:17 242:17
**330**   274:21
**338**   27:17
**342**   183:12
**350**   58:7,9
**36**   123:9
**362**   183:24
**364**   185:11
**366**   26:18
**368**   98:20
**37**   254:23
**38**   255:7 264:11
**380**   99:5

**4**

**4**   39:15 100:19,22
102:11,13 103:8
183:24 185:11
263:6 264:4
**4.275**   35:4,23 37:3
83:19
**4.5**   37:3 47:1 71:4
92:21
**4/12/2021**   2:21
**400**   220:16 223:6
**400,000**   225:16
**41399**   3:1
**45**   43:1 59:2,12,14
183:12
**450**   23:5
**464**   98:21
**48**   149:13 249:13
**485**   26:3
**489**   152:6 256:11
**4:54**   272:25
**4a**   179:15

**5**

**5** 48:23 50:6,10
66:15 101:11
262:21 266:17
**5,0000** 69:2
**5.2.a.c.4** 36:11
**5.5** 46:21
**5.6** 52:8
**5.8** 46:13 100:8
102:8
**50** 249:14
**50,000** 119:9
**500** 101:8 223:6
**501** 140:13
**502** 134:17
**502d** 237:18,22,22
237:23 238:1,2
**503** 48:4
**52** 189:24
**525** 99:5
**528** 99:5
**52nd** 24:3
**53** 52:6
**5a** 179:15
**5th** 263:6 264:6

**6**

**6** 53:8 106:19
107:13 108:14
109:6,8
**6.43** 42:25 61:13
**6.544** 43:13
**60** 121:2
**600,000** 149:13
233:21 269:10
**6075307** 184:20
**614,000** 59:1
73:23
**615834** 3:2
**620,000** 222:15
**626** 24:17
**66** 265:22
**67** 265:22

**688** 256:10

**7**

**7** 29:12 145:10
152:7
**70,000** 109:4
**700** 42:6
**70130** 23:21 27:18
**704** 23:20
**71** 241:19
**717** 184:8
**723** 7:15
**731** 8:19
**734** 8:19
**760** 68:23
**764** 68:23
**7th** 259:16

**8**

**8** 29:13 268:23
270:18
**8.1** 77:23
**84** 98:22
**84.3** 232:3
**86** 27:2
**884** 256:10
**8th** 184:9

**9**

**9** 29:13 259:15
260:1
**90** 228:10
**9019** 65:2
**958** 184:8
**99** 121:3
**9:00** 2:10 21:7
**9:08** 55:19
**9:52** 55:19

**a**

**a.m.** 2:10 21:7
29:11,12,12,12,13
29:13,17 53:8
**aa** 63:21
**aaron** 2:17 3:21
11:5 12:3 190:1

**aaronson** 26:1
**abate** 186:15
195:25 196:7
**abatement** 43:25
46:3 60:11 106:25
203:17,22 205:8
209:3,12 251:9,13
251:14 252:12,13
252:14,17,22,23
253:12
**abatements** 159:8
**ability** 83:10 95:1
125:17 126:21
149:17 157:11
172:13 174:24
182:23 191:2
**able** 62:23 72:10
75:6 108:10
113:25 114:24
115:2,3,9 116:1,5
117:1,2 126:19
127:6 129:20
148:25 172:3,7
201:10 204:8,18
207:3,21 211:16
214:16 219:25
224:24 234:14
242:7,16,21
249:23 272:6
**absolute** 266:19
**absolutely** 31:3
35:6,17 104:11,13
109:21 117:14
142:19 163:14
165:1 234:4 240:7
261:25 271:4
**absorbed** 32:8
**accept** 97:17,19
122:5 182:20
266:5 271:24
**acceptable** 45:17
159:9 228:22

**accepted** 137:4
214:1 255:13
**accepting** 98:9
99:13
**access** 2:3,4
112:25 113:25
114:25 115:5,18
164:19 173:24
174:5
**accessibility**
164:21
**accessible** 116:3
156:5
**accidentally**
240:14
**accidently** 268:7
**accommodate**
240:19
**accommodating**
220:23
**accompli** 45:13
**accomplished**
208:8
**accomplishment**
208:3
**account** 66:11
161:25 163:15
164:20 245:12
**accountability**
8:16,20 117:23
**accurate** 30:11
181:14 259:14,19
274:4
**accusations**
212:13
**ach** 35:17
**achieve** 208:6
**achieving** 205:11
218:16
**acknowledge**
80:20
**act** 219:5 240:10
250:22,24

acted  114:16,19
acting  88:7 144:4
  151:13 195:17
action  37:23
  38:15 46:4 57:17
  109:5 148:23
  150:14 152:11,11
  152:14,14 172:14
  178:16 221:8,13
  230:10 236:12,16
  236:19,21 244:3,5
  264:17
actions  152:1
  185:18
active  2:3 192:18
  211:3 221:5
actively  204:3
  205:2
actual  39:3 67:15
  109:12 268:18
acute  250:10,12
  250:13 251:1
acutely  252:1
ad  8:15,20 9:1,4
  9:11,18 12:17,22
  13:9,13,16,19
  24:2 25:2,16 26:9
  27:16 32:19,25
  33:7 102:23
  117:23 118:9
  121:25 192:20
  200:7 204:22
  205:1 206:8
  209:17 210:24
  213:25 216:2,3
  234:15
adam  6:8 7:5
add  84:14 87:5
  102:9 103:2 147:6
  150:11 152:17
  164:13 165:2
  166:15 237:11
  238:11 243:23

244:3,4,6,7
245:15,20 247:16
247:23 254:6,13
255:24 256:25
257:3 260:3 264:4
266:1 267:5
added  55:14 74:2
  125:19 145:11
  146:3 191:4 256:7
addiction  60:12
addition  36:24
  48:7 76:1 85:15
  86:4,6,10 95:24
  96:3 106:24 123:3
  126:2,6 170:6
  171:9 183:22
  192:20 199:4
  213:21 223:22
  235:11 256:6
  264:23 265:14
additional  38:1
  75:20 76:3 86:9
  119:9 159:6
  171:18 188:4,9
  214:25 217:18
  243:18 247:24
  258:1 264:13,15
additionally
  246:2
additions  150:5
address  30:8
  52:21 55:15 67:14
  73:21 85:8 99:15
  100:13 103:18
  104:8 114:7
  144:22,23 153:9
  161:19 172:19
  174:21 195:10
  197:13 198:19
  203:21 204:19
  209:6 215:22
  218:11,13,14
  219:4 220:1

242:13 251:6,11
257:19
addressed  74:20
  122:11 123:6
  125:7 144:19
  152:1 157:10
  172:24 173:18
  175:5,7,23 198:1
  209:3 211:25
  215:19 216:23
  229:10 253:6
addresses  113:23
  122:8
addressing  54:18
  97:25 105:20
  172:25 211:23
  212:9
adelphia  98:19
  99:1,20 100:2
adequacy  2:13
  6:15 9:13 10:6,22
  13:10,23 14:8
  16:17 19:19 21:24
  22:6 67:16 122:6
  218:13 220:1,4
adequate  58:17
  125:11 166:8
  191:1 243:10
  271:23
adequately
  159:23
adjectives  271:8
adjourned  61:9
adjournment  15:9
  15:10 17:7,8
  18:17,18
adjudications
  190:23
adjust  264:14
adjusted  260:18
administration
  57:7,14 237:21

administrative
  217:18,19 237:9
admit  77:7
admitted  43:22
  75:17 76:7 78:19
  78:20 233:14
admittedly  168:7
admonition
  216:16
adopt  79:7 107:18
  108:1
adult  42:17
advance  39:1 57:1
  108:18 204:7
  206:6 210:7
advanced  205:25
advantage  272:16
adverse  171:7
advised  64:15
  267:13
advisors  166:3
  211:2 218:20
advocates  224:17
advocating
  139:23 224:18
affection  46:18
affiliated  3:15
  12:9 13:4 14:16
  14:21 15:15,21
  16:7 17:4,13,24
  18:8 19:3,8,14
  20:4,8,14,19
  21:11,17
affiliates  6:1
affirm  76:12
  217:11
affirmatively
  97:22
afforded  110:9,10
afternoon  202:7
  204:21 214:7
  216:1 218:5,7

agencies 202:18
agency 218:20
agenda 2:7,7
  106:3,6 122:18
  124:21
agents 88:6
aggregate 43:1
  46:25 47:3 160:16
  161:9,14 162:23
  162:25 163:1
  164:4,17 165:24
  249:3
ago 30:5,5,5 31:2
  40:4,22 73:20
  108:19 218:19
  228:22
agree 31:4 33:22
  41:3 55:13 73:13
  92:7 102:24 103:9
  112:12 126:20
  142:17 164:3
  188:14 189:3
  206:10 213:13
  218:20 232:6
  240:1 241:3,9,10
  259:24
agreeable 48:22
agreed 42:5 43:19
  43:22 44:2 50:5
  51:22 54:5 60:2,7
  60:25 73:7 83:25
  91:12 94:19 96:25
  170:15 175:9
  181:6 186:5
  199:15 203:20
  204:12 208:16
  220:11 224:18
  228:22 230:13
  238:24 240:11
  241:2,12 255:2
  259:20 260:8
  261:25 266:17
  268:11

agreeing 104:23
  126:7 142:13,15
  142:24 162:3
agreement 35:12
  35:22 38:7 48:8
  57:9,10,10,11,18
  64:10 75:23 81:14
  92:6 94:24 95:18
  95:23 113:8 114:1
  151:11 156:25
  159:1 165:21
  173:7 186:18
  200:13,15 208:23
  239:18,19,22
  240:7 255:23
agreements 57:6
  94:14 96:15,16
  158:14 159:8
  168:11
agrees 229:6
ags 224:9
ahc 35:2 36:2
  93:16 164:19
  199:8 215:14
  229:15 267:24
ahead 28:19 63:14
  79:24 95:19,20
  117:21 118:11
  121:2,2 122:14
  182:19 210:21
  227:3 232:23
aim 50:25
air 80:16 214:4
  247:3
aired 261:17
akin 27:7 36:2
  138:19
al 8:18 13:7 26:17
  28:3 200:3
alexis 23:23 62:14
  62:14
algorithm 112:21
  112:23 250:17

alix 166:3
allege 231:21
alleged 41:20
  52:10
allegedly 38:8,8
  41:16
alleging 73:24
allergan 5:22
allergies 167:25
alley 235:23
allocate 195:9
allocated 42:7
  46:22 49:25
  112:20 113:2
allocating 115:24
  115:25
allocation 50:10
  50:19 101:5 110:7
  112:18 114:10
  115:1,4 117:3
  153:24 181:6
  191:17,18 194:11
  194:17 196:5,9,23
  197:5 198:6
  209:15 210:9
  216:12 222:14
allow 21:21 32:15
  137:20 213:3
allowed 67:24,25
  67:25 68:13,15
  74:18 102:14
  134:18 180:13
  182:2 226:7
  237:13,19 255:15
  263:18
allude 232:7
alluded 233:3
alternative 66:21
  133:24 170:1
alternatively
  197:5 236:20
alternatives 91:11

alza 6:9 7:6
amanda 7:15
ambiguity 87:4,15
  238:15 240:5
ambiguous 110:7
ameliorate 34:3
amend 180:17
amended 3:1 8:17
  11:15 12:8 13:3
  15:14,14,20 16:2
  16:5,6,12 17:2,12
  17:12,17,18,22,22
  18:3,7,13 19:1,1,7
  19:12,13 20:2,7,7
  20:12,12,17,18
  21:2,10,10,15,18
  28:6,18 34:14
  39:1 54:17,21
  55:2 56:15 85:11
  110:1 112:9 150:6
  188:2 237:7
  239:15 268:22
amendments
  211:8 213:3
america 52:8
  104:12
american 4:8 61:6
  150:2 224:2
  250:14
americas 25:18
  26:10
amerisourceber...
  5:22
amount 36:23
  38:12 42:7,25
  43:1 45:23 48:9
  74:6 78:2 102:21
  103:7 119:25
  154:10 170:21
  195:22 212:19
  216:25 237:15,19
  248:12,22 249:3,9
  255:15,17

**amounts** 42:8
48:7,23 130:13
166:19 212:1
217:2 237:23
**ample** 206:12
207:20 235:17
**analogy** 121:3
**analysis** 66:5,9,10
90:15 122:5
145:12,15 150:7
182:24 184:22
221:12 255:2
**analytically**
140:14
**analyzed** 164:5
221:17
**anathema** 142:15
**ancient** 43:12
**andrew** 9:17 24:6
155:11
**angela** 85:22 87:8
**animated** 141:20
**animating** 148:21
**annex** 81:13 85:16
**annexed** 261:6
**annexes** 85:9 86:5
87:19 123:1
**annotating** 102:6
**announced** 53:1
**annual** 252:15
**anonymous**
197:25
**answer** 33:20
77:22 78:5 84:14
89:11 91:15
118:20 123:14
134:13,24 163:9
163:11 166:15
174:8,12,13
217:23 246:25
**answered** 86:19
**answering** 135:1

**answers** 159:23
222:12
**anti** 226:6
**anybody** 29:6
33:10 60:9 70:5
126:22 129:20
140:1,21 142:10
143:3 223:3
**anybody's** 189:19
**anyone's** 240:5
**anyway** 105:10
242:1 259:21
**apart** 41:8
**apartment** 160:20
**apologies** 29:7
83:13 163:11
**apologize** 80:11
82:13 139:13
142:21 143:18,22
146:22 163:8
167:24 188:1
233:18
**apology** 86:23
**apparently** 114:1
126:15 224:10
**appeal** 70:14
148:4
**appear** 28:8
257:15
**appearances** 28:9
**appeared** 243:7
**appears** 122:18
197:20
**appendix** 15:1
18:21
**applicable** 64:25
65:4 272:2
**application** 76:22
**applications**
181:2
**applied** 65:5
**applies** 85:4
100:19 250:18

**applying** 64:25
186:15
**appointed** 192:16
197:22 231:7,8
**appointment**
222:2
**appreciate** 54:9
60:19 61:11 78:22
97:8 132:1 142:1
155:24 159:6
173:10 198:16
202:13 203:15
205:1 208:15,18
215:4 226:24
227:2 232:9
238:19 267:11
**appreciated** 63:6
**appreciates**
206:15
**approach** 31:3
49:9 51:25 59:24
60:19 67:21 69:14
101:8 141:20
148:23 228:5
230:14 262:10
**approaches**
236:24
**appropriate**
57:25 58:4 59:17
60:3 61:11 64:14
65:22 71:13 78:15
112:24 113:25
186:25 210:5
222:15 259:8
**appropriately**
57:1 113:23
**approval** 28:4
65:2 76:20 96:16
125:4 201:20
202:20 206:7
209:18,25 255:17
**approve** 2:13 3:19
6:15 7:12,18 9:8

9:12 10:5,21 12:2
12:20 13:10,22
14:8 21:23 107:20
218:23
**approved** 43:11
106:14 127:5,11
268:25
**approves** 207:18
**approving** 5:20
6:7 7:4 16:17
19:19 22:6 175:25
**approximately**
42:6 225:16
248:12
**april** 262:21 263:6
264:5,6 266:16
**apropos** 264:9
**arbitral** 132:5,6
**arbitration**
125:14 126:7
**arbitrator** 132:10
**arching** 203:16
**area** 44:18 45:2
101:17 203:21
250:19
**aren't** 218:24
**arguably** 101:13
**argue** 180:4,21
185:20 255:11
**arguing** 67:13
140:20
**argument** 84:20
179:8 182:7
**arik** 27:13 218:6
**arm's** 194:19
**armed** 36:13
**arms** 44:25
**army** 3:5
**arrived** 47:19
**art** 1:25
**article** 63:21
174:6

articulate  151:5
articulated
  150:25
asbestos  52:1
ascribed  232:8
aside  202:2 220:2
  220:15 224:4
asked  28:7,16
  82:25 124:12
  156:20 161:1,1,1
  161:7,23 192:11
  215:2 242:25
  267:14
asking  34:12
  75:16 91:11 109:8
  119:2 146:12,12
  199:22 210:5
  261:11
asks  118:15
  213:18
aspect  207:23
  241:4 254:5
aspects  122:11
  202:14 210:10
assert  98:14 99:16
  111:4 112:15
  126:12,13,15,15
  126:21 178:8,15
  178:24 249:24
asserted  145:4,21
  150:21 249:4
asserting  38:21
  129:5 179:4
  193:16 196:25
assertion  256:2
asserts  41:17
  106:18,24 190:6
assess  137:21
assessment  33:23
  64:14
assets  92:21 93:10
  103:25 104:18,20
  105:9 161:17

245:19
assist  60:7
assistant  27:1
assisting  211:8,18
associated  78:3
  113:13 211:9
assume  169:23
  192:23 270:22
assumed  136:18
assuming  113:7
  113:22 130:18
  134:23 142:12
  164:14 165:15
  169:9 215:21
  239:8,20 241:2
  246:12 249:24
  254:7 270:15
assumption  133:9
  239:24
assumptions
  180:3
assurances  60:1
attached  85:11
  152:20 271:25
attacks  226:1
attempt  89:4,11
attempting
  239:11
attendant  217:12
attention  200:19
attorney  3:22
  12:4 25:9 75:10
  100:11 102:18
  219:18
attorney's  202:8
attorneys  23:4,15
  24:2,9,16 25:2,16
  26:2,9,16 27:1,8
  27:16 45:2,16,23
  46:7,22 47:1,5
  159:8 210:9
  216:20 262:16

attorney's  229:13
attribute  69:22
atypical  84:3
  231:5
au  52:22
august  34:10 68:1
aurora  6:21 10:11
  14:1
auspices  203:20
author  173:22
authority  105:9
authorize  270:13
authorized
  252:14
available  40:5
  75:13 76:8 107:6
  116:4,22,23
  130:14 150:2
  214:11 225:21
  233:11,17
avenue  23:5 25:18
  26:3,10,18
avoid  99:22
  147:25
avoidance  41:1
  139:15 215:5
  230:9 247:14
  257:4
award  217:18
  246:6,10,13
awarded  248:13
  248:17 249:6
awards  246:7
aware  34:1
  100:25 122:25
  129:7 152:9
  164:16 170:5
  197:10 200:21
  221:10 252:2
  256:21
awesome  68:12
  199:3

awkwardly
  188:19

**b**

b  1:21 40:13 48:4
  82:15 127:14
  160:22 165:12
  166:24 182:3
  183:24 185:11
  194:5 206:22
  233:25 262:25
b.r.  68:23 98:20
  98:21 99:5 152:7
  183:12
b.r.7  256:11
babies  9:5 12:17
  12:23 27:16
back  38:16,17
  39:6,13,20 43:11
  53:16 69:8,9 74:5
  77:15 95:10
  111:12 114:9
  129:2 131:22
  133:22 136:6
  140:13 152:3
  182:6 185:13
  199:21,25 200:2
  215:15 225:12
  226:21 228:21
  229:4,11 231:2
  238:2,6 258:19
  262:23 270:25
background
  80:16 166:12
  199:13
backtrack  267:22
backup  107:10
backward  116:10
backwards  265:4
bad  93:22 212:13
  212:15
bailiwick  45:6
baked  43:8

**balance** 65:22
157:10 172:14
196:8 207:25
**balanced** 190:13
**balances** 65:25
**balancing** 166:7
**ball** 11:16
**ballot** 262:12,21
262:24 263:13,25
263:25 266:23
**ballots** 2:15 9:14
10:24 14:10 16:19
19:21 22:1,8
207:21 262:17
**balls** 39:23
**baltimore** 6:19
10:9 13:24 26:16
**bananas** 137:2
**band** 5:11 23:18
61:19 62:19
**bang** 232:20
**bankr** 98:20,22
183:12 184:19,20
**bankruptcies**
148:8
**bankruptcy** 1:1
1:12,23 3:1 32:23
46:9 47:24 102:15
102:16 104:16
125:15 134:16
146:8,14 148:6
153:20 173:4
185:14 188:5,6
193:18,22 201:15
203:14 208:5,9
211:2 216:15
217:5 220:18
222:8 237:18
249:10 255:11
263:21 271:23
272:2
**bar** 58:17 75:22
125:23 126:1

138:8 140:17
235:17 237:9
**barbour** 7:15
**barred** 138:17
**barry** 5:21
**base** 137:25
207:13
**based** 46:18 62:22
98:7 99:22,22
100:2,3 113:12
120:17 165:19
179:3 183:13
185:1 188:9
190:20 225:17
250:17,18
**basic** 124:25
130:22 131:9
186:4
**basically** 45:8
68:4 104:24 105:6
108:8 152:10
162:13 164:2
190:5 198:5
219:12 232:20
**basing** 39:10
**basis** 36:19 57:6
176:4 179:2 180:7
181:10 193:15
194:6 196:17
204:11 208:12
**bath** 160:19
**baum** 25:1 118:9
**bazian** 5:21
**bb** 117:23
**beacon** 11:16
**bear** 170:24
**bears** 32:17
**beasley** 25:8
**beat** 269:8
**bed** 230:21
**began** 235:10
**beginning** 59:9
224:16 233:3

**begins** 244:1
248:1 253:24
254:11 256:4
**begrudge** 72:7
**behalf** 2:18 3:17
3:21 4:2,7,11,15
4:19,24 5:2,6,10
5:14,21 6:8,18 7:5
7:15,19 8:3,20 9:4
9:17 10:9,18 11:2
11:10,16,21 12:3
12:11,17,22 13:6
13:13,19,24 14:13
14:17,22 15:2,7
15:11,17,23 16:3
16:8,13,22 17:5,9
17:15,19,24 18:4
18:9,14,19,22
19:4,10,15,24
20:5,10,14,21
21:4,9,13,19 22:3
22:11,16 29:1
75:5 79:16 80:12
82:18,21 83:8
85:7,23 88:7
106:9 107:17
121:20 122:17,22
199:8,9 202:9
203:3 210:24
216:2 226:15
240:6 271:4
**belabor** 208:22
**believe** 32:21
33:17,20 36:7,15
38:5 43:13 44:23
52:12 56:25 59:14
60:20 63:22 64:21
65:4,12,14,18,22
65:25 69:19 74:7
74:7,17 79:9 82:9
88:6 89:24 94:16
94:24 95:2 97:3
106:12,15,22

108:20 110:19
111:12 112:23
117:22 122:7
123:2,6,13,15,16
126:17 131:16
147:14 148:15,21
149:16 150:1
151:11 153:16
154:25 161:10
165:9 176:14
186:6 194:17
195:15,15 196:24
197:9,25 198:2,6
198:15 199:8
206:9 213:1
219:24 220:15,19
222:1,15 223:23
224:20,25 225:4
229:14 230:19
256:24 257:6
**believed** 37:17
40:23 164:15
**believes** 41:17
52:18 69:2 81:4
94:20 195:8
**belittling** 221:21
**bell** 230:23
**bench** 269:24
**benefit** 28:13 45:4
47:4,5 48:6,10,16
49:2,3,4 50:12
101:3 103:3 139:5
205:8 208:7
211:23 212:15
**benefits** 41:24
134:1 183:18
203:5
**benefitted** 47:6
**benignly** 67:4
75:2
**bermudez** 197:19
197:19,20

**bernard** 5:16
23:16 61:20,21
62:18
**best** 66:9 73:18,24
92:18 109:3
124:10 125:2,8,11
140:4 144:21,23
145:7 149:6,24
150:2,10,15,19
166:16,21 171:24
171:25 227:17
233:11
**better** 28:24 59:23
66:20 69:14 93:22
141:23 142:23
143:4 149:4 186:7
231:10 241:15
245:23 249:9
257:4 262:10
**beyond** 128:7
168:23 172:9
214:13
**bickford** 27:15,20
214:21,22,24
215:1,21,25 216:1
**big** 39:16 44:8
52:21 57:19
175:18
**bigger** 143:8
248:18
**biggest** 220:8
**billion** 35:4,23
37:6,6,6,18 38:11
43:14 71:5 83:19
92:22 101:11
162:5,8,16,18,19
170:9 171:8
**billions** 37:2,7
38:22,22 47:17
65:13 148:1
149:22
**binder** 26:15
200:11 203:3

**binding** 266:8
268:4
**bit** 29:23 34:13
41:14 42:23 45:10
48:16 93:15 95:4
143:1 166:20
189:7 230:4 257:5
257:23 268:17
**bitter** 65:14
170:25
**bitterly** 171:1
**bittersweet** 56:3
**black** 236:8 243:6
**blackline** 16:1
17:17 18:2,12
28:19 54:17,19
55:1 56:3 58:7
213:23
**blacklines** 16:11
213:20
**blame** 64:18
**blanks** 40:21 41:3
213:6 215:6 233:3
234:24
**blazing** 58:5
**block** 43:4
**blocker** 44:5
**bloviating** 34:16
**board** 6:19,19,20
6:21,22,24 10:9
10:10,10,11,12,14
13:25,25 14:1,2,3
14:4 26:16 30:25
49:9 108:2 151:12
267:25
**body** 42:17 58:2
251:16,18,22
252:4,5
**bold** 266:4
**book** 174:5 260:9
260:16
**borders** 65:2

**borne** 217:15
**bottom** 189:24
237:13 244:16
248:2 251:12
254:17
**bounce** 269:14,22
**bound** 266:12
**box** 118:16 119:15
**boxed** 268:7
**boxes** 118:17
**bracketed** 54:20
**brackets** 40:17,21
41:4 54:20 215:6
233:4 234:25
**breach** 38:13
**break** 198:17,21
198:24 199:16
201:13
**breakdown** 119:4
**breath** 52:18
189:1
**breathtaking**
232:16
**bridge** 4:12 61:15
**brief** 39:15 58:14
58:15 69:15
111:10 149:10
172:21 196:15
199:9 203:7
204:24 210:23
216:2 218:7 219:6
260:4
**briefing** 226:6
**briefly** 151:4
166:24 198:18
**bring** 31:22 34:11
66:1 101:19 167:2
200:18 227:17
256:22 267:20
**bringing** 82:12
**brings** 175:17
**broad** 25:10 42:21
52:4 75:22 251:17

**broadly** 106:17
268:17
**broke** 124:25
**broken** 101:22,23
**brooke** 7:25
**brought** 47:15,16
85:8 129:21 170:7
171:3
**brow** 123:21
**brozman** 98:4
99:8
**brush** 42:21
**bryant** 27:10
**buckets** 180:25
**bugging** 80:18
**built** 37:11
**bunch** 41:21 54:6
59:5 229:15
**bungled** 44:22
**burden** 66:24,24
108:11 140:13
147:1 148:14
217:16
**buried** 73:11
**burning** 186:12
**business** 40:13
53:7 103:24 194:3
230:11 258:18
271:1
**businesses** 172:10
**button** 80:12
**buttoned** 209:21
215:9

| c |
| --- |

**c** 8:12 11:1 12:11
22:15 23:1 25:13
28:1 194:9 200:24
233:25 261:5
265:20 274:1,1
**c.d.** 99:5
**cabrini** 152:6
256:11

cahn  3:21 12:3
calculated  212:1
calendar  259:20
  259:22
california  73:4
call  30:22 31:17
  39:3,23 40:14
  48:4 55:19 105:5
  111:10 150:19
  189:19 219:14
  272:11
called  33:4,5 47:4
  48:6 55:2 63:22
  107:13 149:2
  213:6
calling  95:25
calls  49:13 267:15
camera  199:24
camp  158:2
canada  5:24 76:4
  134:9
candid  64:18
  107:10
candidate  121:2,2
candidly  58:25
  64:17 67:20
can't  236:1
  244:22
capacity  5:15
capitalized
  251:16
capstone  35:24
cardinal  68:23
care  75:11 93:23
  110:15,18 114:16
  114:19,20 115:12
  115:21 130:25
  250:10,12,13
  251:1
career  32:5 36:4
  234:10
careful  163:10
  196:8

carefully  45:2
  122:4 181:20
  190:12 223:9
  243:9 272:23
caremark  5:23
cares  250:22,23
  253:12
caring  131:1
  140:3
carlos  197:18
carondelet  23:20
carpenter  4:15
  23:19 61:17 62:19
carrie  200:24
carve  238:24
carved  90:5
carveout  89:7
case  1:3 25:15
  29:8,9 30:17 32:4
  32:9,10,12,19,22
  32:24 34:6 35:16
  36:3,3 39:14,18
  40:3 43:9 46:1,18
  47:24 50:15,25
  51:17,21 52:1
  57:3,22,23 58:4
  58:13 59:1,4 60:5
  69:6 70:14,14,16
  71:4,17,18,25
  72:3 73:5,20
  78:14 79:13 81:4
  91:17 99:2,8,20
  99:23 102:22
  104:2 107:11,13
  110:7 123:22
  131:24 132:2,4
  136:25 137:1
  138:20 139:21,25
  140:3,17 143:7
  148:23 149:1
  156:1 170:22
  176:6 177:5 183:8
  185:5 186:7

  192:12,18 193:15
  193:18 195:7,9
  197:9,21 202:12
  204:23 205:3,6
  206:12,16,16
  207:6,11,14,15,21
  207:23 210:24
  218:15,16 221:9
  221:13,16 222:10
  223:1,16,23 225:7
  225:19 227:4
  228:4 231:14
  233:23 234:9,10
  234:15 235:17
  243:2,6 244:9
  249:1,2 250:1,13
  255:25 256:10
  257:6 266:2
caselaw  66:5
  70:21 72:15
  152:10 175:22,23
  175:23 183:5
cases  29:19 39:17
  39:24 43:10 44:18
  47:7 51:24 67:17
  67:17,18 68:25
  70:15,22 73:1,2
  84:4,4 86:24
  98:19,23,24
  105:19 136:25
  148:12,20 182:2
  184:10 206:19
  208:18 211:1
  216:15 220:24
  222:5 223:17
  224:16 227:2,9,17
  234:25 245:15
cash  43:17,22
  93:13 160:20,22
cast  32:16 36:12
  57:24 68:3,14
  207:21 255:12
  263:2,25

cataclysmic
  147:25
catch  249:15
catching  29:25
  34:18 249:17
  271:5
categories  85:25
  86:1,4,7,10 88:6
  106:18 116:15,16
  196:21
categorize  79:21
category  83:22
  86:3 113:21
  143:25 181:24
  198:1
catering  224:1
caught  241:23
  242:1
causation  120:9
  121:6
cause  143:9
  152:10,11 229:20
  232:19 234:2,24
  236:12,16,18,21
  238:14 241:15
causes  37:23
  38:15 57:17
  152:13,14 172:14
  221:8,12,24
  230:10 244:2,5
cautiously  53:25
caveat  157:13
caveats  181:5
  186:6
cease  268:24
center  152:6
  256:11
centola  27:15
central  99:6
centric  106:25
ceos  151:13
certain  2:16,18
  5:25 9:16 10:25

14:11 16:20 19:22
22:2,9 48:8
113:13 115:4
136:23 151:12,13
188:7 202:14
237:23 245:12
263:12
**certainly** 41:17
53:16 57:3,25
64:6 65:9 66:23
79:14 84:12
100:24 104:3
140:9 148:18
152:24 157:7
169:9 182:13
184:10 186:23
195:8,24 197:10
197:16 205:14
229:22 230:9
243:11 259:2
261:20 268:10
271:18
**certification**
111:23 114:17
116:5,8 233:25
**certifications**
111:13
**certified** 274:3
**certify** 109:15,17
114:10,13,15,24
115:11,20
**cetera** 55:3 169:6
251:2 260:13
271:3
**chair** 30:25 31:1
199:1
**challenge** 173:21
**challenges** 168:15
212:9
**chambers** 2:3
27:2 153:16 243:1
243:7 257:14
260:16

**chance** 28:18
105:21 132:3
156:2 169:11
190:2 196:2 204:8
**change** 56:7 72:11
76:23 96:17
120:12 121:3
128:21 145:15
155:19 170:16
176:14 180:5
181:17 182:15
213:9,23 237:24
243:15 251:8
252:18 266:25
**changed** 254:18
254:20
**changes** 31:13
54:18,19,23 56:4
56:6,15,20 58:8
118:24 132:1
157:14 213:11,24
214:1 220:22
242:15 243:5,6,14
243:18 257:13,14
258:12 271:21
272:7
**channel** 219:15
**channeled** 103:20
127:18
**channeling**
128:11
**chapman** 177:7,8
204:19 272:15
**chapter** 8:18 12:9
13:3 14:15,15,20
15:14,20 16:6
17:2,13,22 18:7
19:1,7,13 20:2,8
20:12,18 21:10,16
28:6 47:7,16
83:21 104:13
105:6 145:10
193:15 206:19

**characterization**
62:12 63:10
**characterize**
150:20 181:21
**characterized**
63:9
**charge** 253:3
260:18
**charges** 237:16
250:17,20
**chart** 189:18
200:20 264:4
**charts** 67:6 74:3
**chasm** 68:11
**check** 29:2 108:17
118:16 120:11
**checked** 119:3,3,4
119:10,19,19
**checks** 120:4
**cheeky** 233:18
**cherokee** 5:3 8:3
23:17 61:21 62:18
**chicago** 6:20
10:10 13:25 99:4
99:6
**chief** 203:5
**child** 217:3
**children** 153:18
203:25 216:9,11
216:14,14,21,24
217:16
**children's** 216:2
**chillicothe** 4:20
23:16 61:18 62:17
**chime** 80:6 253:6
261:13
**choice** 53:17
122:13 125:21,22
131:10,10,14,17
131:17,20 132:11
132:12,13,13,14
132:18,18 133:1
133:10,24 134:6,7

134:8,10,12,12,23
135:16,18,19,21
136:17,19 142:18
142:18 168:25
**choices** 132:20
133:17,18 134:11
**choose** 133:7
236:23
**choosing** 133:19
**chop** 45:14
**chose** 154:8
**chosen** 255:6
**chris** 85:7 143:6
210:23
**christopher** 13:12
23:10 25:21 79:16
258:15
**cir** 184:9
**circle** 53:16
**circuit** 70:4,17
72:15 99:2,3
151:24 256:10
**circuits** 70:5
**circularity** 55:22
**circulated** 55:21
**circumspect**
186:10
**circumstance**
70:9 139:20
176:14
**circumstances**
71:1,8,16,18
98:10 120:17
150:7 188:18
**cite** 70:7
**cited** 70:22 148:12
**cites** 68:24
**citing** 66:4
**citizens** 205:9
**city** 4:19,24 6:19
10:9 13:25 23:15
23:16 26:16 61:17
61:18 62:16,17

**civil** 190:22
192:12 244:4
**claim** 3:1 33:13
42:24 43:20 70:21
76:2 82:21 83:24
109:8,10,11,12,16
109:22,25 110:3,6
112:15,24 115:8
115:17 116:17,22
117:13 118:15
120:1,14 126:1
127:16,16 128:8
129:5 130:4,7,8,9
132:21 133:15,16
134:1,17 135:8
136:1 137:21
140:12,25 142:18
144:1 145:25
148:13 177:14
178:7,8,9,25
179:1,3 185:25
192:5 193:8 196:2
197:21 198:3
220:3 236:11
237:16,17 238:22
238:25 246:4,6
249:23 250:6,8,21
250:22 256:18,18
256:19,22,22
264:13,15
**claimant** 48:7
73:21 118:16
119:14 121:10
126:22 148:2
198:3 222:20
248:2
**claimants** 13:20
41:19,19 46:20
59:1 116:23
126:10,17 137:5
138:16 139:19
140:8 149:22
153:25 190:9,10

191:10,12 192:21
192:23,24 194:13
194:13 196:6,6,24
196:25 198:6
200:7 204:23
210:25 235:13
245:7 254:11,13
**claims** 2:18 38:17
38:17 42:17,18,24
43:6,14,20 44:4
50:19 51:19 66:8
66:12,18 72:16,17
82:4 83:8,9 87:7
87:14 93:9 97:16
103:20 106:13,19
109:13 112:9
119:1,19 126:12
126:13,15,16,18
126:21,23 131:7
132:9,22 134:3
137:1,6,20 145:3
145:9,13,21,22
146:2 149:15,16
150:20 153:18
160:10 161:4,23
168:6 172:4
177:21 178:2,15
178:22 180:10
183:19 184:11
185:13 187:13
190:10 195:4,4
202:12,18 212:10
214:14 216:15
227:13,13 230:10
230:12,18 235:23
236:1,13,15,22
237:3,4,9,15
248:11,13,23
249:3,5,19 254:1
254:2 255:17
256:20 257:7
262:17 264:12

**clarification**
229:8
**clarify** 86:25
130:2 226:16
**clarifying** 137:16
201:17
**clarity** 143:23
**class** 44:6 46:4
72:2,5,9,10,10,11
97:17,18,20,21
98:9 99:13 106:19
107:13 108:14
109:5,5,6,8
110:23 112:14
113:23 116:15
117:13 177:15
178:16 179:14
180:18 191:15
255:12,12 265:20
**classes** 62:25
101:25 107:11
213:14
**classic** 71:22
72:22 73:22,25
74:9 101:24
**classification**
71:19 72:22,23
177:11,21 179:10
180:12,17
**classified** 72:16
72:17 180:9
**clause** 250:25
**clean** 58:9 219:20
247:12 249:8,16
264:2
**cleaner** 117:20
**clear** 30:25 35:19
39:2,22 46:15
69:24 70:2,4,4
77:11 84:10,15,18
85:2,4,24 86:16
86:17 87:11 88:8
88:13,17 92:4,5

95:15 98:7 99:15
100:1,19 102:3,17
102:19 110:20
131:14,16 136:10
137:25 139:1,2,22
140:6,10 141:7
143:18,22 144:16
146:25 148:25
151:25 154:19
156:14 158:16
171:17 174:2
176:1 179:7
188:24 191:15
192:2,6,8 193:11
196:4 212:8
213:24 215:6
220:19 226:25
227:23 229:22
230:4 232:23
238:7 244:20
249:12 253:1,21
257:21 264:14,20
266:11 268:8
269:19 270:3
**clearer** 237:5
239:11
**clearly** 29:3 66:10
66:16 79:17 81:9
87:1 93:11 99:12
184:24 193:4
194:13,17 195:24
261:17 272:10
**clerk** 119:7
258:16,25 269:8
**clerk's** 175:25
199:23
**client** 28:10 50:11
50:24 108:3 149:5
149:13 159:25
196:13 264:8
266:22
**clients** 62:24
149:13 179:21

182:11 186:4,6
187:12 227:20,25
263:1,19
**clinic** 116:25
**clock** 216:7
**close** 74:1 94:21
223:17 258:17
271:1
**closed** 233:14
**closer** 232:12
**closing** 31:25
111:1 211:13
**closure** 202:21
208:6 213:3
**cms** 250:10
**code** 100:25
102:16 134:16
188:5 237:18
259:2 271:24
**codefendant** 33:4
236:13,15,22
237:4 239:5
**codes** 113:13
**collaborative**
205:20
**collateral** 36:11
36:23 37:20 40:14
96:2 123:4 156:9
163:19 169:5
171:9 172:8
**colleagues** 131:24
136:23 155:13
267:16
**collect** 162:16,19
172:13 184:7,25
185:13
**collectability**
160:14 161:16
163:3 169:14
172:2
**collecting** 184:5
186:15

**collection** 39:16
168:5,13
**collective** 147:19
148:23 150:14,16
192:14
**collier** 98:5
**colloquially** 47:14
**colloquy** 66:8,17
**colonel** 3:4,5
**columbia** 176:10
**combination**
148:17 177:13
**combine** 162:24
**come** 37:19 50:10
50:11 65:24 77:15
88:25 93:23 95:10
96:5 99:14 111:2
123:24 166:19
172:15 185:13
197:12 199:21,25
201:17 204:9
223:18,23 232:22
232:24 242:10,15
254:21 267:25
272:3
**comes** 48:9 52:3
174:3 187:9
207:10 223:2
235:14 242:13,14
250:2 259:12
265:22
**comfort** 36:1,16
36:19 37:11 56:24
57:22 92:2 171:6
215:17
**comfortable**
36:23 65:1 96:10
**comfortably**
101:14
**coming** 40:7
51:12 54:12
104:16 164:21
253:22

**comma** 254:13
267:6
**commence** 33:20
233:4
**comment** 38:7
98:12 201:22
215:24 234:5
239:16 241:18
265:24
**commenting**
231:23
**comments** 66:3
94:9 98:12 105:18
143:7 160:3
198:18 199:5,10
201:17 202:10
210:23 213:6
215:22 223:10
228:7,12 229:1
232:9 234:2,20
237:7 257:10,11
257:20,20 259:11
271:2,19
**commission** 7:20
7:20,21,21,22,22
7:23,23,24,24,25
7:25
**commissioners**
6:19 10:9 13:25
26:17
**commit** 77:4
**committee** 8:16
8:20 9:4 12:17,22
13:1,6,19 25:2
26:9 27:8,16 31:1
61:12 64:24
102:23 117:23
118:9 122:1 163:6
163:14 168:20
170:13 192:16,21
200:7 203:9,19
204:23 205:2,2,4
206:8 209:17

242:20,25 260:21
261:10,12,16
263:11 266:19
**committee's** 9:1
13:16
**committees** 32:20
32:25 234:16
**common** 45:4
47:4 48:6,16 49:2
49:3,4 50:12 73:3
101:3 117:13
137:4 211:23
**commons** 147:19
147:20
**communications**
98:19 99:1
**community**
212:23
**companies** 70:10
230:12 245:13
**company** 4:7,8,9
11:16 151:13
206:18 256:9
**compelled** 161:2
**compelling** 217:2
**compensate**
212:20 216:13
**competing** 147:22
147:23
**complains** 191:12
198:5
**complaints** 151:2
**complete** 114:18
115:2 151:6
156:12 170:23
205:25 208:23
**completed** 109:13
**completely** 44:22
79:5 130:4 203:22
216:19 220:9
257:6
**complex** 60:14
207:5 227:9

complexities  46:7
complexity  29:19
  45:1
compliance
  253:15
complicated  41:4
  44:17 48:17 54:10
  72:13 203:13
  206:16,19,20,22
  207:13
complies  127:11
component
  185:17
comprehensive
  38:3 220:20
compromise
  216:17
compromises
  207:22 209:15
  216:18
conceded  219:19
conceivable  243:4
conceivably
  195:20
concept  48:16,22
  48:23 211:22,22
concepts  188:20
  235:14
conceptual  51:16
  69:23 230:14
concern  80:23
  97:19 203:16,16
  214:8 240:13
  267:21
concerned  30:12
  96:17 127:17
  136:22 191:17,20
  193:14 194:7
  235:19,22 242:23
  270:15
concerns  39:4
  52:25,25 55:15
  63:18 65:25 125:8

169:2 208:24
  209:9 244:2 252:1
concessions  271:2
conclude  121:25
concluded  272:25
conclusion  205:14
  206:12 221:18,19
  227:18
conclusions
  166:20 222:4
condition  45:17
  126:8
conditioner  80:16
conditions  241:8
  268:5,14
conducted  2:1,10
  21:8 114:19
  130:13 243:24
  267:4
conference  55:19
  76:9 260:12
conferencing  2:2
conferred  260:13
confidence  38:12
confident  30:13
  44:19 69:17
  104:10 229:16
  271:9
confidential
  112:20
confidentiality
  113:8 114:1
confirm  62:21,23
  63:3 76:11 97:23
  127:7,7 129:6
  136:6 184:24
  257:2
confirmability
  125:7
confirmable
  177:3 220:6,12
confirmation  6:17
  10:7 31:9 36:20

40:2,6,9 41:7
  59:21,22 61:9
  62:10 63:12 66:23
  66:24 67:22 68:5
  68:8,8,12,21
  69:10,16 70:1
  71:3,11,14,22
  72:3,12,22 73:22
  74:9,12,15,20
  75:15 84:3,19
  87:16,22 88:4
  91:24 96:20 98:9
  100:14 101:18,24
  103:14 104:7
  105:1 106:21
  108:13 113:7,9
  114:2 116:19
  117:5 124:24
  126:3 128:14,15
  128:20 138:20
  147:11 149:1,25
  150:13,18 153:10
  153:24 154:3,17
  156:20 157:10
  180:8 181:10,25
  183:4 185:7
  190:16 191:21
  193:4,10,23 194:5
  194:8,14,22
  195:13,19 196:11
  197:2,17 198:10
  199:12 204:5,7,14
  206:14 208:10,19
  210:4,8,12 214:3
  217:21 219:21
  224:25 234:7
  240:13 241:1,12
  250:3 254:24
  258:7 260:4,5
  266:6,13 267:1,4
  268:3 270:19
  271:14

confirmed  123:16
  195:12 235:21
  268:14
confirming  173:5
conflict  151:15,17
  193:11
conformation
  72:24
conforming  272:8
confuse  170:24
confused  84:8
  248:8
confusing  248:15
  248:16
confusion  138:15
  236:14
congregate  68:23
congress  38:8,9
  164:15 165:8
  167:1 170:10
  193:14
congressional
  38:10
connecticut  70:3
  178:13
connection  2:16
  9:15 10:24 14:11
  16:19 19:22 22:1
  22:9 75:14 76:19
  97:13 165:21
  221:7
connectivity
  74:25
cons  159:24
consensual  213:2
consensually
  204:11
consensus  212:22
consent  125:20
  188:7 272:6
consented  131:8
  159:11

consenting 9:11
9:18 24:2 126:6
171:2 172:25
221:25 224:7
consequence
136:18 144:4
consequences
36:25 53:20 142:4
consequently
191:10
consider 105:14
224:3
consideration
71:6 165:20
195:16
considerations
93:6
considered
147:14 170:13,18
considering
158:17
consistent 175:14
188:15 197:13
consisting 205:3
constituencies
36:14 49:1 51:21
59:3 207:5 209:13
211:12 242:19
244:1
constituency
222:5 231:21
constituent
224:23
constituents
47:25
constituted 71:5
constitution
177:18
constitutional
177:20
constrained 126:8
127:1,5 129:24

constraints 126:9
constructive
139:16
consultation
263:10,19 266:18
consulting 251:16
251:18 252:4,5
consumer 183:23
contain 94:22,23
contains 32:15
220:17
contemplate
262:4
contemplated
88:20,24 96:23
130:16 272:9
contemplates
179:8,9 252:21
contemplating
261:19
contend 266:5
content 108:7
contesting 256:1
context 115:17
116:20 162:12
168:24 170:13
174:3 178:16,17
208:5 229:2
contingency
50:23
contingent 13:20
52:12 222:6
continuation
233:12
continue 173:13
194:3 206:2 209:5
209:12,19 213:1
214:6 219:23
continued 193:19
continues 172:2
232:12
continuing 174:18
202:17 203:10

contours 173:7,14
contract 188:20
contractors 112:1
contracts 50:23
57:16
contrary 89:16
182:1 193:21
236:10 239:24
268:6
contrasts 99:9
contributed
195:22
contributing 81:6
81:19,20,21,24
contribution 48:4
71:2 88:3 93:8
110:1 169:3 220:9
239:1
control 109:18
114:21 116:2
148:8 260:7
controls 264:1
controversy 175:3
convenient
200:13
conversation
187:7 204:10
231:5 238:17
convince 33:14
cooked 140:20
cooks 140:2
cooperation 111:6
copies 243:7
244:17,23 257:15
cordial 232:10
core 33:21
corey 4:15,19,23
5:2,6,10,14
cornerstone 35:24
43:21
corollary 136:13
coroner 5:15
23:16 61:20 62:17

corp 98:19 99:5
183:11,12 184:20
corporate 6:1
31:25 193:19
corporation 4:12
5:22,24 6:9 7:6
151:7 193:22
correct 44:12 51:6
64:3 75:2,9 76:17
85:21 89:23,24
95:18 101:7
116:12 124:25
125:18 127:20
129:14 139:6
142:9 144:2 146:4
151:9 152:16
164:16 169:16
170:5 171:13
187:8 201:19
265:16
correcting 124:10
correctly 145:2
185:11 233:19
corrects 124:7
270:22
cost 48:13 78:7
252:17
costs 30:17 34:1,2
77:24 217:12,15
217:17,18,19
could've 42:12
counsel 33:10
62:22 63:4 107:4
111:11 122:18
153:22 157:12
158:3 173:5,5
197:22 204:22
222:8 226:21
233:25 241:14
242:25 255:9
261:10
counsels 28:21

**count** 179:14
232:19
**counterparties**
171:5
**counting** 37:3
**country** 136:24
151:25 205:10
233:22 274:21
**county** 6:22 7:15
7:20,20,21,21,22
7:22,23,23,24,24
7:25,25 10:12
14:2
**couple** 34:20
52:14 56:18 57:23
59:25 69:8 93:24
97:1 105:19 125:8
139:12 143:17
169:8 199:14,16
213:6 220:16
225:5 233:20
242:12 251:8
259:10 267:19
269:18
**coupled** 150:8
**courant** 52:22
**course** 30:11
32:17 37:21 43:10
43:20 60:6 96:8
102:5 103:15
125:6 138:7
140:19 144:6,8,11
154:2 164:13
173:3 193:13
197:1 199:5,25
212:2 215:24
220:5 234:4 239:7
240:18 253:14,14
**court** 1:1,12 28:2
28:12,13 29:3,4,8
29:25 30:10 31:3
32:18 33:14,24
35:25 37:14,15

39:20,21 42:21
43:8,11,21 48:10
49:2,18 51:11
53:21 54:14,16
55:6 56:13,24
57:21,22 58:23
59:8 60:6 61:13
61:17 62:2,4 63:7
63:18,24 64:1,4,7
64:21,23 68:15
69:2,17 70:11,11
70:15 71:7 72:14
72:24 75:7,16
76:10,16,18,25
77:14,18,20 78:5
78:8,11,18,25
79:2,11,18,22,25
80:8,14,17 82:6
82:16,20 83:3,5,8
84:8,20,21 85:2,4
85:14,19 86:12
88:1 89:10,19,25
90:6,25 91:10,19
91:21,23 92:2,4,9
92:25 93:2,8,10
93:17,19 94:3,6
94:12 95:6,8
96:10 97:5,7,9,12
97:24 98:16 99:4
99:21 100:1,15
101:4 102:8,15,17
102:24 103:6,8,12
103:16 104:17,20
105:2,4,9,12,24
106:7,14 107:3,7
107:9,21,25 108:5
108:14,21,24
109:8 110:13,24
111:16,18 112:4,7
112:12 113:3,5,15
113:18 114:22,23
115:10,15,19
116:7,9,13,21

117:4,9,16,19,25
118:3,12 119:13
119:23 120:3,7,14
120:21,25 121:6
121:15,22,24
122:25 123:8,14
123:18,21,25
124:2,6,8,11,18
125:16 126:8,11
126:25 127:2,4,4
127:6,8,13,15,21
127:22,23 128:1,6
128:13,15,18,24
129:1,8,11,15
130:1,5,7,11,15
130:17,21,25
131:3,12,14,20
132:9,13,17,23,25
133:3,5,7,20,21
134:1,9,15,19,21
135:12,17 136:8
137:15,23 138:3,5
138:8,9,12,21,24
139:1,4,7,9
140:18 141:2,4,14
141:18,22,25
142:2,6,24 143:5
143:15,21 144:3,7
144:9,12,16,20,25
145:24 146:1,15
146:17,23 147:2
147:12 148:22
150:4 151:21,23
152:5,17 153:2,5
153:12,19,21
154:16,21,24
155:2,6,21 157:6
157:17,19,22,24
158:12,21,24
159:1,3,7,14,17
160:6,8,12 161:3
161:8,24 162:3,21
163:13,23 164:1,4

164:7,9,11,23,25
165:3,6,24 166:22
166:25 167:4,7,10
167:13,17,20
168:17 169:22
170:12,17 171:11
171:14,19 172:7
172:17 173:11,15
173:17,21,25,25
174:14,17,20
175:12,16 176:19
176:23,25 177:6
177:20,25 178:6
178:16,19,22
179:1,6 180:6,15
180:16 181:3,12
181:15,19 185:5
185:15,22,24
186:3 187:5,8,12
187:17,19 188:6
188:14,17 189:4,6
189:9,13,21,25
195:2 198:13,16
199:21 200:2,13
200:16,21,23,25
202:1,6,25 204:15
204:17,20 207:17
209:25 210:6,7,8
210:13,15,20
212:8 213:19
214:18 215:23
217:10,22,23
218:1,4 224:3
225:8,11 226:10
226:13,20,24
227:7 228:14,17
229:4,25 230:1,5
231:9 232:1,2,14
233:10 234:22
235:7 237:6 238:5
238:10,13,16,19
239:8,13,16
240:20,24 241:17

241:25 245:24
246:1,17,19,25
247:7,13,18,21,25
248:13,19,22,25
249:6,18 251:7
253:4,8,18,22
254:10 255:11,25
257:1,9,25 258:20
259:1,8,25 260:8
261:1,9 262:3,11
263:9,15 264:3
265:4,6,9,18
266:5,9 267:13,14
268:9,13,20 269:2
269:3,16 270:1,6
270:13,20 271:17
**court's** 140:9,19
200:14 267:11,20
269:5 271:2
**courteous** 139:20
**courtroom** 211:1
211:3
**courts** 73:1 98:2,6
102:3 125:3
181:25 184:6
185:19 186:7,10
190:22 217:5,5
**court's** 225:18
233:17 234:2,20
**covenant** 35:9
123:5 156:9
171:10
**covenants** 38:3
40:14 96:2 163:20
169:18
**cover** 48:19 51:9
72:21 88:1 260:24
261:1,5,9
**covered** 11:13
37:25 38:1 191:3
235:22 251:21
260:14

**covers** 84:10
102:13
**covington** 4:24
23:15 61:18 62:16
**crafted** 119:25
**cramdown** 179:16
181:8
**crazy** 46:9 105:17
**create** 92:16
180:18 203:17
267:22
**created** 48:10
49:4 105:8
**creates** 250:2
**creating** 212:4
**creativity** 207:16
**credentials** 2:5
**credible** 33:15
70:18
**credibly** 33:10
**credit** 35:12,22
43:23 57:11 95:25
140:1 169:24
170:1 269:9
**creditor** 36:10
46:24 47:18 49:24
49:25 50:18 57:8
68:3 104:4,4,5
119:12 125:25
146:5 151:18
152:2 159:9 198:4
205:18 211:12
212:22 222:5,23
244:1 264:1
**creditor's** 261:10
**creditors** 13:2,6
27:9 32:7 39:10
47:20 50:18 57:15
59:3 66:2 68:14
107:19 125:3,14
125:24 131:8
145:9 152:9
182:17 192:15,16

192:19 198:7
200:11 203:4,9,19
206:5,25 207:4
209:20 211:6
212:21 213:13
221:16 222:2
228:4 242:20
263:11,14
**criminal** 190:22
192:4
**crisis** 186:15
187:13 195:25
196:7 204:1 209:3
**critical** 37:16
104:11,13 155:25
206:10 207:3
223:20 272:20
**critically** 147:12
**criticizing** 45:13
**cross** 66:11 77:3
78:10 152:19,21
188:21 230:12
233:15 255:1,5
256:2
**crossed** 234:17
**crucial** 205:11
**crystal** 192:2
**current** 9:20
108:18 167:5
218:25 219:4
220:3 258:15
**currently** 31:17
73:2,4 90:23
135:15
**customized**
171:10
**cut** 44:21 92:18
**cuts** 38:9
**cutting** 187:1
**cvs** 5:23
**cyganowski**
171:23

                    **d**

**d** 1:22 3:9 5:23
28:1 98:22 184:19
233:25 273:1
**dade** 6:22 10:12
14:2
**dancing** 139:14
**daniel** 196:12,14
**darren** 14:13,22
15:6 16:8,13,21
17:9,14,19,24
18:4,9,14,18
19:15,23 20:9,14
22:3,11 23:12
89:8 154:23 163:5
169:15 189:11
200:17 246:15
265:15
**date** 31:25 32:3
39:6 40:19 41:6
42:10 54:21 57:9
75:22 95:14 96:4
108:17 125:23
126:1,4 128:15
135:4 140:17
145:20 157:3
165:8,16 201:4
203:22 235:17
237:9,10,12,17
238:7,9 239:20
240:3,8,16 241:5
241:8 245:3 259:4
259:6,22 263:16
264:7 266:17,17
266:20,20,21
268:2,3,19,19
269:1,17 270:8,10
270:14,18 274:25
**dates** 2:16 9:16
10:25 14:11 16:20
19:22 22:2,10
**david** 75:5

**davis** 23:3 28:25
44:23 45:10 54:3
79:16 89:5,9
119:7 124:4,9
132:3 137:14
139:23 149:8
153:11 154:23
174:12 200:18
220:20 223:1
253:6 258:15

**day** 31:9,22 32:3
33:22 34:1,9,9
36:22,24 40:3,5,5
43:9 44:8,9,16,25
53:15 56:11 60:8
60:22,25 68:15
69:11,13 72:21
89:4 94:1,5
116:24 118:11
199:13 211:12
231:25 233:10
234:14 238:20
239:7 243:20
257:23 258:4
264:19

**daylights** 269:8

**days** 32:7 43:12
56:4 57:25 69:16
94:15,20,24 95:3
95:14 96:11,20,24
97:4 108:19
116:24 126:3
133:7 135:4
140:11,16,23
142:7 143:12
156:13 157:2,9,15
157:18 158:19,22
206:3 219:24
220:16 225:5
233:8 237:10,11
259:2,15,18,20,22
264:17 269:18
271:16

**de** 151:13

**deadline** 32:7
39:12 57:1 58:4
94:17,22 95:4
96:9 97:6 123:12
124:3 136:14,23
137:17,19 138:8
141:5,10 144:9,14
156:14 157:4
158:6,9,15,18,20
201:5 258:9,13,18
259:13,16,17,19
259:23 260:2,4,6
260:18 262:19,19
263:6,7,12 264:5
264:15,19,19,22
266:15

**deadlines** 137:7
138:1 141:3
158:13

**deal** 9:21 36:8,15
37:11,16 38:13,24
40:11 41:4 44:5
46:10 50:6 52:2
61:13 77:1 80:2
83:17 86:24 91:9
91:9 92:18 105:25
117:17 133:21
146:3 150:17
158:12 174:4
180:12 194:7
206:13,17 207:19
207:24 211:11,14
222:21 271:14
272:11,14

**dealing** 55:2 69:7
131:4,7 134:21
206:20 212:2

**deals** 46:5,6 94:13
96:4 105:16
177:20 201:20
211:7 262:17

**dealt** 190:12
242:23 245:5

**death** 195:5

**debevoise** 226:15

**debt** 185:3

**debtor** 1:9 23:4
44:24 51:18 53:8
90:14 100:3
126:23 130:4
146:11 194:2
199:12 205:17
209:20 210:4
219:17 221:25
228:19 229:19
230:6 237:20
238:8 260:24
261:1 272:5

**debtor's** 3:19 7:12
255:10 261:5,22
262:5

**debtors** 3:15 4:5
5:19 6:6 7:3,17
9:8,12 10:21
11:20 12:1,10,20
13:4,10 14:7,17
14:21 15:16,22
16:7 17:4,14,24
18:8 19:3,9,14
20:4,9,14,20
21:12,18,21,23
28:4,16,21 29:1
35:2 36:4 37:19
37:23 38:5,15
55:3 58:11 60:1
62:6,23 63:5
65:23 72:8 75:5
76:20 77:22 79:17
83:1 85:7,23 87:7
87:14 90:12,13
93:19 96:25 97:10
97:22 98:14 99:14
99:16 107:9,20
110:16 113:20

118:14 122:1,11
124:21 125:6,13
126:5,14,16,18,20
129:17,22 130:23
131:16 132:24
133:13 134:5,20
135:11,22 136:15
139:23 140:6,22
142:12 143:25
145:4,11,16
146:20,24 150:11
150:24 151:10
152:15,24 153:3
156:18 158:3
159:23 161:9
163:20 164:18
165:15 168:20
170:23 173:5
179:15 180:17
183:5 184:2 188:2
193:18 201:13
202:10,13,16
203:9,19 211:12
211:20 213:12,17
216:3,6 217:9
218:6,20 220:21
220:23 223:1,8
225:12 227:11
229:5,21 230:19
232:25 239:21
240:6 242:2 244:2
244:4,7 249:22
254:2 255:2,11
258:3 263:7 266:5
266:18 267:24
270:24 272:3

**debtors'** 242:19

**debtor's** 220:24
223:12 226:21

**decades** 48:5

**dechert** 173:4

**dechert's** 173:9
173:13

**decide**  32:14
  53:21 84:20 98:11
  134:5,9 135:22
  159:22 174:24
  175:2 243:13
**decided**  37:3 66:7
  174:7 175:4 176:7
  177:15 185:6,19
  263:21 266:10
**decidedly**  64:15
**deciding**  156:1
**decision**  30:24,25
  32:8 51:20 120:22
  132:10 174:6
  186:19 188:8,10
  203:5 242:11
**decisions**  103:5
  137:9 147:5
  272:17
**declaration**  22:14
  22:14 75:14,19
  76:5,7,11,19 77:7
  78:12,18,19,20
  155:9 176:1
**declarations**
  260:7,15
**declare**  148:6
**deemed**  47:6
  97:18 133:16
  134:17 135:19,21
  137:11 140:14
  141:8 143:13
  183:19 193:9
  237:18 255:15
  264:16,18 265:11
**deep**  188:25
**deepwater**  217:7
**default**  36:25,25
  37:7 168:13
  169:14 172:3
**defeat**  74:14
**defendant**  55:2
  129:19 199:12

228:19 238:22,23
  238:24,25 271:3
**defendants**  52:20
  53:9 54:1 55:8,13
  65:11
**defended**  149:8
**defenses**  230:12
**defensive**  55:3
  238:23,24 239:12
**defer**  176:5
**defined**  82:3,25
  88:12 244:19,25
  250:10 251:18,19
  251:23
**defines**  262:18
**definitely**  33:18
  40:16,17,18 55:16
  72:13 88:23
  100:25 261:19
**definition**  82:7,10
  82:14 85:10,24
  86:5,11 88:17,22
  89:13,21 90:2,5
  109:9 122:23
  237:9,12 238:22
  238:25 239:3,17
  240:9,21 244:22
  249:23,25 252:8
  263:5
**definitional**
  110:14,24 213:10
**definitions**  251:4
**definitive**  96:9
**definitively**
  231:16
**del**  98:22 184:19
**delay**  28:16 34:1
  158:1
**delayed**  34:4
**delays**  217:17
**delighted**  42:3,3,3
  164:13,24

**deliver**  252:14
**demand**  268:18
**demanded**  104:25
**demanding**
  142:25
**denied**  146:7
  192:25 266:7
  271:20
**deny**  72:24 125:4
  194:6
**department**  24:8
  151:3,10 201:16
  231:9
**dependents**  53:18
**depending**  159:20
  182:24 198:21
  245:8
**depends**  265:19
**deploy**  65:12
**deposited**  217:3
**deposition**  204:6
**derail**  177:4
  179:25
**derailed**  42:12
**derivative**  145:5
  146:2 150:20
  152:2,13
**derived**  193:6
  194:12
**derogate**  222:24
**descendants**
  81:10
**describe**  61:15
  72:14 85:15 91:8
  205:22 220:12
  254:12
**described**  55:7
  64:8 76:5 96:19
  96:21 134:2 136:4
  136:9 137:18
  201:21 205:15
  220:6 235:8
  239:18 244:18

254:14
**describes**  85:25
  262:23
**describing**  85:12
  197:4
**description**  61:23
  61:24 63:22 64:19
  75:25 91:11
  118:21 159:21,22
  244:14 255:4
**deserve**  222:3,12
**designated**  260:13
**designed**  133:19
  231:8
**desire**  78:11
**desoto**  5:7 23:15
  61:19 62:17
**despite**  52:4 92:17
  139:19 234:17
**destroyed**  37:8
**detail**  33:17 35:4
  58:20 95:24 96:1
  153:7 157:7 191:4
  216:22
**detailed**  74:25
  85:12 91:15 96:8
  108:7 117:11
  163:16 164:18
**details**  35:1 42:22
  48:17,19 50:8
  76:6 177:7 216:22
**deter**  133:19
**determination**
  99:23 100:2 132:8
  263:18
**determine**  103:5
  217:10
**determined**  48:10
  49:2 180:16
  251:15
**determines**
  255:21

determining 112:25

diagnostic 113:13

dialog 209:5,12

diametrically 65:10

dice 148:16

didn't 227:6 231:13 241:3 246:24

died 154:11

differences 224:4

different 34:24 38:4,4 41:5 45:20 45:21,21,22 50:20 51:25 59:10 73:10 91:9 92:10,11,12 96:13,21 107:11 107:25 117:6 132:25 133:18 134:21 156:9,10 161:15,16 162:25 163:1,2,3,19,19 164:20 168:11,12 169:18,18 178:19 179:6 187:10 190:6 203:14 205:18 207:7 215:8 235:14 244:21 247:15 250:24 252:6 255:17,19 262:13

differently 45:10 155:5 240:25

difficult 61:2 64:17 67:10 206:21

digest 95:1

diligence 113:24 163:16 165:20 166:2

diligent 192:17

dimensional 206:17

direct 46:3 66:12 66:18 75:17 76:21 145:9,13,21,25 161:4 262:14,20 262:24

directed 122:22 203:24

direction 140:9,20 233:10 272:22

directions 45:24

directive 262:19 264:5

directive's 263:6

directly 145:4

director 57:12

disagree 62:11 74:22 98:22

disagrees 63:10 70:6 98:16 143:1 241:14 249:17

disallowance 135:25 142:18

disallowed 135:8 178:9

disallowing 144:1

disbursement 57:7 252:15,16

discharge 90:14 194:3,6

dischargeability 193:13,16

dischargeable 193:9,15

disclose 90:15 118:14 119:2

disclosed 38:9 90:17 112:21,22 114:4 239:21,22

disclosure 2:8,9 2:14 3:14,20 4:1,5 4:14,18,22 5:1,5,9

5:13,20 6:7,16 7:4 7:13,18 8:1,5,10 8:15,16,17 9:2,8 9:13 10:1,6,17,22 11:8,14,20 12:2,8 12:15,21 13:2,11 13:17,23 14:9,20 15:2,5,10 16:5,5 16:12,17 17:8,12 17:18 18:7,13,18 18:22 19:12,12,20 20:7 21:6,15,15 21:24 22:7 28:5 30:3,7,14 31:20 32:6,13 34:8,15 34:18,21 35:5,7 35:13 39:1,3,25 40:2 41:8 42:15 42:20 51:3,7,13 52:24 54:13 56:17 58:6,25 59:4,22 60:18 61:10 62:6 62:8,13 63:1,9 64:1,6,11 66:14 67:13,15,16,19 69:10 71:13,15 74:2,8 79:6,7 80:3 80:19,22,24 81:8 81:16,19,25 84:6 84:10,13,15,23 85:11 86:17 87:23 88:2,5,11 90:10 91:7 92:4 94:9 97:14,15 98:12,15 99:16 100:4 102:4 102:9 103:2 105:18 106:10,18 107:12,15 108:12 109:2 110:8,20 113:4,5 114:5 116:18 118:19 119:5 120:7 121:8 121:11 122:8,21

123:2 124:13 125:4,9 126:24 131:15,22 132:2 134:2 136:5,9 137:24 139:4 141:7 142:2 143:14 146:13 147:4 148:12 150:4,18,25 151:16 153:6 154:4,5,13 155:14 159:7 160:2,3,3 165:18 166:7,16 167:14 168:2 169:10 171:12,15 173:2 174:21 175:5,20,25 188:4 188:11,16 190:5 192:2,6 193:3 194:16 196:14 197:4,15,17,23 198:8,9 200:3,9 200:15 201:2,4 203:6 204:12 206:7 207:18,19 208:12,17 209:18 211:10,25 212:6 214:13 216:4 218:8,13,24 219:1 220:2,4,5,11,17 220:19 221:2 223:5,12 225:3 227:12,14,15 228:7 229:9 230:20 232:1,7 234:21 235:2,3,4 235:8,11 242:1,5 242:12,24 249:21 250:1 252:19 254:14 257:13,16 257:17 261:7 264:23,25 265:14 268:25,25

**disclosures** 125:9
**discouraged**
  227:5
**discovery** 126:19
  128:4,5,7 129:2,2
  129:3,23,24
  130:13 138:15,18
  173:8 204:6 221:6
  221:10,11 222:1
**discretion** 243:17
  263:8
**discuss** 69:9 72:13
  101:18 102:2
  202:17 209:19
  231:3 251:6 255:1
  256:14,16
**discussed** 50:16
  61:22 91:3 106:22
  111:9 143:10
  167:14 174:19
  184:8 223:8
  229:14 230:17
  231:13 261:17
  265:12
**discusses** 146:1
**discussing** 173:19
**discussion** 45:23
  102:8 120:9
  146:17 150:8
  152:6 172:12
  174:13 211:20
  217:15 245:6
  252:9,20 256:3,7
  264:10
**discussions** 62:22
  146:2 173:8
**dismiss** 145:21
  146:7,18
**disorder** 116:1
**disparage** 222:24
**dispassion** 170:23
**dispute** 98:2
  180:14 186:4

**disputes** 175:11
  206:13,14
**disrespect** 46:17
  51:24
**dissimilar** 72:16
**distinction** 110:14
  154:10
**distract** 227:7
**distribute** 136:11
**distributed** 35:25
  43:1 104:19 125:1
  125:2
**distribution** 43:2
  84:25 85:5 96:18
  117:11 118:22
  128:11 137:22
  138:17 147:23
  217:9 244:17,23
  245:12 247:2
  252:13 254:13
**distributions**
  46:14,22 47:2
  49:17,19 101:10
  217:13 252:17
**distributors** 5:19
  6:5 7:2 52:20 54:1
  61:21 67:22
**district** 1:2 6:20
  6:21,23,25 10:10
  10:11,13,15 14:1
  14:2,4,5 98:3 99:4
  99:6 107:19 126:8
  126:11,25 127:21
  127:23 130:18
  132:9 133:20
  175:24 176:10
  183:10 202:9
  203:4 250:11
  251:24
**districts** 108:2
  208:14 209:1
  252:2,7

**diverse** 242:19
**divided** 58:19
  98:6
**diving** 215:15
**division** 201:16
  239:11
**dizengoff** 13:5
**docket** 57:6 61:16
  75:19 86:25 106:5
  117:23 122:19,19
  123:6 155:3 166:5
  200:22 213:18
  218:8 222:20
  238:12 243:14
  260:24
**dockets** 190:20
**docs** 96:9
**doctor** 114:13,14
  114:24
**doctors** 111:14
**document** 2:11,21
  2:22 3:16,20 4:6
  4:15,19,23 5:2,6
  5:10,14,21 6:8,18
  7:5,14,18 8:2,6,7
  8:11,12,19 9:3,9
  9:17,22,22 10:2,3
  10:8 11:1,5,15,21
  12:2,10,16,21
  13:5,12,17,24
  14:12,22 15:6,11
  15:16,22 16:2,8
  16:13,21 17:4,9
  17:14,19 18:3,9
  18:14 19:3,9,15
  19:23 20:4,9,20
  21:3,8,12,18
  22:10,15 28:17
  32:1,14 89:1
  102:6 107:20
  109:14 111:1
  112:11 114:8,11
  117:2 135:25

  141:16 156:4
  158:7 167:11
  169:23 172:21
  173:7 174:16
  219:18 223:6
  229:3 255:19,20
  267:3 271:6,21,22
  272:12
**documentation**
  40:7 211:22 212:5
**documents** 32:5
  34:25 35:9 38:2
  39:8 40:12,21
  58:1 59:9 86:24
  94:16,21,22 96:17
  96:18,22 97:3
  108:8,11 110:20
  138:23 156:14,23
  157:8 168:9
  173:20 209:24
  211:9 243:9 253:7
  259:19 262:15
  265:13 267:15
  268:1,4 269:13
  270:12 272:1
**doddridge** 7:21
**doesn't** 220:11
  222:21 226:1
  235:7 240:14
  245:18
**doing** 66:8,20
  73:3 96:25 100:18
  133:16 142:4
  150:25 163:24
  177:4 187:14
  200:8 218:10,11
  234:7 262:20
**doj** 37:4 43:11,14
  104:14,24 152:20
  202:20
**doj's** 43:13,19
**dollar** 78:2 171:10
  177:14 255:15,17

**dollars** 37:2,18
47:17 65:13
100:10 115:25
171:8 269:23
**domains** 177:24
**domination** 151:7
**don't** 220:2 223:2
231:11 232:6,7
233:12 234:25
236:4 238:14
239:23 240:12,25
241:25 243:12
**double** 269:14
**doubt** 41:1 51:11
66:10 139:16
170:22 215:5
230:9 247:15
257:4
**dr** 5:14 11:9 24:16
106:9,24 107:4,17
193:1 194:25
**draconian** 136:1
**draft** 45:11,14
121:19 172:22
**drafted** 135:15
140:7 142:11
181:20 188:19
212:14
**drafting** 45:13
87:4,5 136:7
187:25 211:9,19
**drain** 1:22 28:2
265:15
**draw** 69:17
172:14
**drive** 105:17
213:18
**driven** 183:5
203:15
**drives** 233:21
269:10
**dropped** 173:2

**dropping** 173:6
**drops** 30:18 45:9
49:4 50:14,20
51:7,22 57:20
58:15 85:7 89:18
130:14 156:18
167:5 168:7 176:9
187:7 199:18,19
201:18 205:13
207:13 208:12
209:4 213:2,15
218:6,13 220:14
220:25 221:24
222:7,7 223:7
224:12,24 237:3
**drug** 5:22
**due** 87:24 113:23
183:3 235:15
**duty** 61:1
**dynamic** 47:9

**e**

**e** 1:21,21 23:1,1
28:1,1 76:16 99:8
99:8 191:6 194:23
194:24,24 233:25
273:1 274:1
**earlier** 85:9 96:22
96:25 97:9 123:3
190:24 200:6
202:16 230:17
249:19 255:8
256:3 264:10
**early** 30:22,23
51:20 98:3 145:7
227:4 242:12
243:18
**earth** 270:11
**easier** 64:20
**easily** 156:4
**east** 6:21 10:11
14:1 25:3
**easy** 83:22 119:5
119:6 222:14

**ecf** 2:19,23 3:2,6,9
3:12,17,22 4:3,9
4:12,16,20,24 5:3
5:7,11,16 6:1,13
6:25 7:10,14,15
7:25 8:3,8,13,20
9:5,9,18,23 10:3
10:15,19 11:2,6
11:11,16,22 12:5
12:12,17,23 13:7
13:14,20 14:5,13
14:18,23 15:3,7
15:12,17,23 16:3
16:9,14,22 17:5
17:10,15,20,25
18:5,10,15,19,23
19:4,10,16,24
20:5,10,15,21
21:4,9,13,19 22:4
22:12,16
**echo** 202:10
**eckstein** 13:18
26:13 171:22
199:8 201:24
204:19,21,22
210:14 213:7
218:17 230:22
242:7
**economic** 185:20
212:19
**economy** 172:10
**ecro** 1:25
**education** 6:20,21
6:22,24 10:10,11
10:12,14 14:1,2,3
14:4 60:11 203:23
209:2,2
**educational**
203:23 244:11
**effect** 125:23
151:11 161:1
182:5 186:11
187:6 266:4

268:15,24
**effected** 234:1
**effective** 42:10
96:4 126:3 128:15
135:4 237:10,12
238:7,9 239:19
240:1,2,3,13
241:5,8 252:17
268:13,14
**effectively** 142:4
156:8 168:11
239:11 249:24
255:16
**effects** 195:10
197:7
**effectuated** 47:16
**efficacy** 252:17
**efficient** 80:4
147:23
**efficiently** 136:10
**effort** 47:15 72:7
208:25 209:13
**efforts** 45:25
60:24 168:20
216:10 221:25
222:25 227:8
234:6
**eight** 163:18
165:14
**eisenberg** 25:1
118:9
**either** 34:15 45:19
47:23 48:22 53:18
62:7 88:24 97:20
104:5,8 112:22
126:7 131:17,17
133:25 136:3,19
140:22 142:4
165:15 174:9
196:22,23 197:15
198:15 200:6
212:22 216:18
219:22 233:24

235:7 247:22
250:8,21 257:23
260:17 265:9
267:23
**elect** 126:10
**elected** 137:11,11
182:12
**election** 121:1
135:5 261:5 262:5
262:25
**elections** 182:14
252:7
**element** 186:18
**elements** 78:7
**eleven** 61:1
**eli** 14:17 15:2,16
15:22 16:3 17:5
18:22 19:3,9 20:5
20:20 21:3,9,12
21:18 23:11 55:19
137:13 174:11
237:2 253:5
**eligible** 110:6
250:7 263:1
**eliminating**
217:11
**ellis** 8:2
**email** 2:3 153:16
173:4,12,13
243:11 257:25
**emailed** 215:1
257:14
**emailing** 243:5
**emails** 55:18
258:25
**embarrassing**
44:14
**embedded** 69:10
177:17 206:23
209:4 210:11
**embodied** 207:8
**embody** 206:21

**emerge** 104:12
**emergence** 38:13
230:9
**emergency** 106:9
108:5 109:3,7,15
109:17,20,24
110:9,11,15,16,21
111:5,11,24
112:13 114:9,14
115:4 116:3,4,25
**emotional** 212:18
**emotions** 223:25
**emphatic** 33:21
**employed** 113:12
**employees** 190:23
**enable** 122:12
**enabled** 48:11
**encouraged** 44:9
**ended** 173:8
**endorsed** 31:1
**energy** 184:8
271:11
**enforceability**
168:22
**enforceable** 268:4
**enforced** 252:23
252:25
**enforcement**
184:4
**engage** 60:4 66:7
120:18 158:4
159:15 162:1
**engaged** 41:13
**engagement**
139:16
**engaging** 184:1
223:24
**english** 47:9 67:6
74:3
**enhance** 168:21
169:14
**enhancement**
100:17

**enjoined** 183:19
**enjoining** 184:6
**enjoins** 184:25
**enron** 184:11,20
**ensure** 35:3 36:7
38:5 193:20 206:3
209:1 216:24
231:24
**ensuring** 36:14
46:2
**entered** 222:13
239:19,25 241:5
258:11,17
**entering** 207:18
**entertain** 201:10
**entire** 119:8
234:10 241:1
267:23 269:11
**entirety** 59:15
**entities** 6:5 7:2
37:17 60:14
180:10 181:21
184:2 205:19
206:5 230:12
**entitled** 97:17
115:3 160:5
168:14 186:23
194:2 224:13
**entity** 107:25
**entry** 215:10
259:12
**enumerated**
250:25
**equal** 246:14
**equally** 65:18
**equivalent** 140:14
169:24
**er** 4:2 10:18 11:9
106:4
**eric** 6:18 10:8
13:24 26:21
200:10 203:2

**escape** 201:2
**escrow** 47:4
**especially** 73:23
109:7 213:7
**espoused** 99:7
**essence** 68:8
91:21 162:16
197:7 227:5
**essentially** 33:13
44:2 45:12,15
48:9 64:22 92:14
101:3,13 106:10
109:3 145:12
164:13 166:2
194:2 233:5
**established** 42:23
47:5 138:19,25
145:23 152:12
255:18
**establishing** 6:17
10:7 185:18
**estate** 8:13 37:10
71:5 147:22 148:9
149:16,19 152:10
169:13 176:3
195:22 221:7
227:13 256:18,20
256:20,22 257:7
**estate's** 254:2
**estimate** 145:17
191:9
**estimated** 77:23
**estimation** 132:8
177:14
**et** 8:18 13:7 26:17
28:3 55:3 169:6
200:3 251:2
260:13 271:3
**ethos** 148:21
222:20
**evaluate** 115:9
172:7 183:2
191:18

evaluating  91:3
  91:24 187:19
  235:2
evaluation  63:22
  152:15 256:4
event  66:9 102:1
  186:1 201:7
  217:14 264:7
everybody  54:8
  76:2 95:1 108:8
  109:24 139:21
  140:4 145:19
  198:24 207:12
  225:25 246:24
  267:12 269:19
everybody's
  52:24 120:20
everyone's  38:17
evidence  76:7
  77:8 78:20 210:6
  210:12 225:21
  233:13,15 248:3
evidentiary  75:11
ex  3:21 12:4
exact  47:7 48:19
  67:5 108:17
  231:11
exacting  254:1
exactly  33:4 49:3
  52:2,10 59:16
  64:13 65:10 66:2
  75:18 86:18 87:8
  89:20 91:17 93:4
  101:1 102:4 105:3
  163:15 169:17,20
  180:19,22 198:24
  201:19 221:17
  265:6 268:12,16
exam  153:6
examine  77:3
  233:15
examining  78:10

example  31:19
  33:3 39:4 47:21
  119:9 126:13
  178:13 258:23
  266:3
examples  208:23
exceed  21:22
exception  70:20
  88:19 152:12
exceptional  71:8
exceptions  39:19
excess  47:13
excessive  217:17
excessively  56:14
exchange  60:23
exchanged  29:14
exclude  119:25
  237:3
excluded  57:17
  88:12,13,14,20,22
  89:1,2,6,12,16
  90:4 110:23
  118:22 123:11,23
  192:5 236:10
excludes  113:19
exclusive  109:18
  114:21
exclusively  43:25
  49:23 116:2
excuse  77:6
  137:13 195:2,2
execute  126:4
executed  40:20
  268:2
execution  32:2
executive  57:12
  67:6 74:4
executor  8:13
exercise  143:24
  184:7,15
exercised  151:6
exhibit  79:3 85:16
  86:9 123:2 260:9

260:16 261:4,6
  266:2
exist  169:2 181:5
  183:2
existence  103:22
  103:25 104:1
existing  165:16
  168:6
exit  35:12,13
expansive  221:8
expect  40:18
  74:10 83:20
  159:14 242:16
  251:7
expected  101:10
expecting  77:13
  86:2 210:8
expedited  129:10
expenditures
  111:21
expense  176:14
  269:6
expenses  49:17
  50:8 216:25
expensive  176:2,4
experience  44:19
  157:25 242:4
  252:6 257:22
  272:23
expert  101:12
explain  29:20
  40:11 48:17 66:18
  121:13 147:9
  162:15 166:17
  168:3 218:25
  222:14
explains  190:15
explanation  90:19
  191:14 232:4
explication
  150:23
explicit  109:22
  110:8

explicitly  109:9
exposure  92:12
express  65:6
  66:12 203:8
expressed  70:12
  268:5
expressing  231:12
expressly  192:5
  264:6
extend  95:4
extended  91:13
  159:1 263:7,11
  264:6
extending  266:16
extensive  52:4
  54:19 207:22
extent  100:21
  101:19 102:11,11
  130:3 154:12
  171:17 192:7
  198:18 209:23
  230:11 252:16
  257:20
extra  157:1
extract  65:21
extraordinary
  45:25 58:10 71:1
  139:15 234:6
  272:23
extreme  33:17
  195:21
extremely  30:2
  39:2 51:18 52:11
  101:9,14 104:14
  206:20 209:9
eyes  111:1

**f**

f  1:21 15:1 18:21
  76:16 99:8 274:1
f.2d  256:10
f.3d  184:8
fabulous  139:18

**face** 74:1 197:20
  249:9
**faced** 217:6
**facets** 203:14
**facial** 125:7
**facially** 125:5
**facie** 140:12
**facilitate** 60:22
  217:8
**facility** 35:22
  134:3
**facing** 31:16 33:8
  35:21 92:3,19
  171:7 232:25
**fact** 34:2 36:1,10
  36:13,24 37:8
  40:25 43:24 54:3
  59:13,21 65:6
  66:12 68:7 77:24
  81:8,20 84:7
  95:12 98:7 99:21
  99:22 100:2 101:7
  108:10 111:14
  117:13 118:14
  119:11 122:23
  146:13 152:23
  155:24 163:21
  169:11 178:11,12
  179:12,20 183:5
  183:13 190:8
  191:15 192:14
  194:18 203:4
  207:14 208:15
  209:17 212:18
  234:17 246:22
  248:20 258:22
  269:11 271:5,22
**facto** 151:13
**factors** 64:22
**facts** 64:19,25
  65:4 71:7 99:20
  99:23 152:19

  177:2 179:3
  182:24 183:2
**fail** 138:8 143:24
**failure** 143:9
**fair** 36:22 45:25
  48:3 86:7 109:1,1
  120:13,18 139:17
  147:23 159:14
  162:8 165:1 166:5
  170:20 186:16
  197:13 198:24
  222:15 257:11
  269:9
**fairly** 119:4
  177:11
**fait** 45:12
**faith** 212:15 227:2
**fall** 106:17 137:2
  158:2 181:24
  190:8 205:5
  233:23 249:22
**fallen** 196:22
**falls** 196:21 198:1
**false** 225:17
**familiar** 175:22
**families** 63:23
  90:22 162:23
  216:20 244:3,5
  254:4 256:5
**family** 11:19,22
  26:2 38:20 81:10
  81:15 151:12
  206:22 225:15,17
  225:24 226:1,4,16
  226:18,19
**famous** 84:4
**far** 49:13 58:17,17
  87:10 96:17
  100:17 107:14
  113:6 127:16
  136:21 154:10
  170:1 191:16,19
  193:13 194:6

  205:14 229:1
  232:17,22 235:19
  236:6,14 241:23
  242:22 245:7
  249:21 270:15
  271:20 272:14
**farcical** 89:3,4
  94:5
**fashion** 33:6
**fast** 53:2 54:8
**faster** 217:9
**fatally** 68:21
**fault** 213:17
**favor** 168:25
  169:1 183:15
  230:16 267:12
**feared** 201:18
**feasible** 252:16
**features** 174:15
**february** 184:19
**federal** 41:10,23
  41:24 43:6 44:1,3
  46:16,17,20 65:18
  149:14 181:20
  190:9 217:5,5
  250:9,10 251:1,2
**fee** 50:23 101:13
  219:18
**feedback** 176:22
  176:25
**feel** 34:7 52:20
  54:14 55:24 67:14
  142:25 221:4,15
  232:25 233:6
  240:18
**feeling** 53:14,22
**fees** 34:5 45:3,9
  45:16,23 46:7,13
  46:23 47:1 49:17
  49:25 50:1,7,11
  50:16 100:11,20
  100:20 102:10
  148:1 159:9 176:3

  210:9 215:16
  229:13
**feet** 97:10
**feinberg** 60:5,25
  203:20 204:17
  216:5
**feld** 27:7
**felt** 50:25 227:7
**fernandez** 5:15
**fiduciaries** 148:9
  233:1
**fiduciary** 65:23
  222:23 231:7
**field** 182:21
  187:22 261:16,17
**fielded** 222:11
**fiercely** 231:22
  234:11 270:22
**fifth** 219:18
  241:19
**fight** 65:13 148:4
  181:8 183:16
**fighting** 99:10
  180:16 181:8
  223:19
**figuratively** 202:2
**figure** 67:11 84:17
  105:1,5 107:3
  154:8,9 170:9
  231:2 232:2
**figured** 230:14
**file** 34:14,25 64:9
  94:16 110:12
  118:25 119:10
  133:15 135:7,25
  140:12,16 219:1
  228:23,23 240:15
  241:7,11 245:3
  260:4,6,15 264:13
**filed** 2:18,22 3:2,5
  3:9,11,16,20 4:2,6
  4:11,15,19,23 5:2
  5:6,10,14,21 6:8

[filed - focus]                                                      Page 26

6:18 7:5,14,19 8:2
8:7,12,19 9:3,17
9:22 10:3,8,18
11:1,5,9,15,21
12:3,11,16,21
13:5,12,18,24
14:12,17,22 15:2
15:6,11,16,22
16:2,8,13,21 17:4
17:9,14,19,24
18:3,9,14,18,22
19:3,9,15,23 20:4
20:9,14,20 21:3,8
21:12,18 22:2,11
22:15 28:18 39:1
39:4 40:12 47:21
47:25 49:6 52:23
56:25 57:8 59:2,4
59:10 65:8 71:15
73:19 75:13 76:2
80:25 81:3 85:10
86:8,11 87:20,24
89:22 94:21 95:3
95:17,22,24 96:3
96:6,19,20 97:4
106:5,9 107:12
108:15,17,19
109:6 110:6
119:18 120:6
121:20 122:17
123:1,3,6,11,11
123:17 124:22
125:19 126:1
132:21 133:14
134:17 143:13
149:11 153:18
155:8,9,24 156:4
156:13 157:7
168:9 169:16
197:21 200:5,19
209:25 213:9
216:15 218:7,24
222:11,19 238:8

239:15,23 240:22
244:21 245:2,4
250:8,21 260:24
271:6
**filing**   11:4 15:1,19
16:1,11,16 17:1
18:2,12,21 19:6
19:18 20:1,17
21:1,22 29:16
32:3 40:19 58:5
95:13,17 107:10
149:11 153:16
157:1,4 219:7
227:5 237:11
240:7,8 259:13,23
260:2
**filings**   96:11
**fill**   116:17 135:3
140:23 212:6
271:9
**filled**   119:15
234:24
**filtering**   137:21
**final**   32:8 34:18
34:19,19 39:8
57:6 59:9 156:14
157:3 159:12
199:11,11,18,18
218:23 237:14
240:15 243:1
244:23,24,24
246:3,23 258:12
258:17
**finalize**   28:17
223:12 270:12
**finalized**   156:25
202:19 206:6
**finally**   32:12
163:3 206:23
224:23
**finance**   5:22
**financial**   90:15,16
90:17 163:16

166:2,3 167:1
170:7
**find**   44:14 142:15
153:22 190:20
191:2 236:4
**fine**   29:4 56:13
64:7 80:17 100:15
115:14 129:25
141:22 142:7
143:21 146:25
151:8 154:24
155:6 167:15
169:9 174:17
189:5 202:6
231:17 234:22
237:6,17 238:13
238:16 245:24
252:18 255:24
258:8 261:2,7,12
263:2,15 267:16
268:9 270:20
**finegan**   22:15
75:12 76:8,11,15
76:18 77:3,16
78:5,6,9,12,16,20
**finegan's**   76:5
**finish**   128:3 133:4
269:12
**fire**   97:10 152:5
256:9
**firm**   62:15 218:11
263:1
**firms**   36:1 47:11
47:14,19 48:12
50:21,22
**first**   8:17 15:14,20
16:1,6,12 17:2,12
17:18 19:1,7,13
20:2,7 28:10 29:2
40:3 51:5 63:20
79:4,8 81:1 94:13
95:11 97:25
106:18 130:18

136:9 139:15
143:18 148:20
149:15 173:23
182:10 189:25
191:25 193:5,11
201:23 203:8
213:10 218:9,18
221:6 229:5
235:25 243:22
244:16 245:7
246:9 250:5 254:3
258:5 259:11,15
267:3
**fisher**   6:18 10:8
13:24 26:21
200:10,10 201:24
202:1 203:1,2,2
204:16
**fit**   101:14
**fits**   88:17 116:15
**five**   94:15 198:20
198:23,24 199:15
206:17 219:12
229:2,3 230:15,16
232:17
**fix**   87:5 214:15,16
**fixing**   185:25
**fl**   24:18
**flawed**   68:21
**flexibility**   180:12
259:3
**flip**   246:10
**floor**   25:3 26:3,18
27:2
**flyby**   67:2
**focus**   79:12
117:12 118:9
169:8 171:14
176:7 177:10
203:10 205:5
210:11 213:20
218:16 224:8
228:6 253:23

272:22
**focused** 36:2
  158:19 160:4
  169:17 201:22
  205:8 223:9
**focusing** 272:10
**fogelman** 27:5
  201:14 202:3,4,7
  202:8 206:1
  211:14
**folks** 85:5 246:8
**follow** 35:15
  86:15 229:16
**following** 230:2
  237:10,11 248:6
**footnote** 114:11
  145:11 172:22
  173:2,6 229:8
  244:6 258:9
  259:18
**footnotes** 271:6
**fora** 148:7,7
**force** 125:13
**forced** 86:20
  186:24 267:13
**forcing** 132:11
**foregoing** 89:15
  184:17 266:8
  274:3
**foregone** 195:23
**forensic** 166:3
**foreshadowed**
  41:11 105:19
**forest** 56:24
**forever** 37:3
  83:20 143:2 213:8
**forfeiture** 43:20
**forget** 43:10
  170:25
**forgive** 42:22
**forgot** 53:3
  187:25

**form** 32:2 35:14
  57:1 74:18 109:12
  109:13,16 112:4,6
  112:7,8,10,11,11
  112:14 114:18
  115:2,8,8,17
  116:17,22,25
  118:15 126:4
  130:24 135:2,7
  140:24 192:15
  218:8 220:3
  231:15 240:12,15
  240:21 241:12
  243:1 253:23
  261:6 264:24
  269:23
**forma** 140:15
**formal** 202:20
  240:7
**formally** 240:6
**formation** 122:12
**former** 158:2
**forms** 2:15 9:14
  10:23 14:10 16:18
  19:21 21:25 22:8
  32:10,11 113:14
  117:10 265:24
**formula** 250:18
**forth** 66:1 69:9,9
  80:24 81:1 114:16
  159:24 228:21
  271:22
**forward** 28:22
  30:10 39:23 71:21
  91:7 116:10,11
  184:4 206:9,10
  218:15,22 223:16
  225:7 231:2 242:9
  242:25
**fought** 234:11
**found** 39:14 47:6
  71:8

**foundation** 207:3
  244:10,12
**four** 5:2 23:17
  36:1,6,13 56:6
  61:18 62:18 92:2
  92:19 157:1 171:6
  218:9,14 219:17
  230:16 243:21
  244:6,16 253:25
**fourth** 12:10 21:1
  25:3 28:6,18
  34:14 54:17 55:1
  56:15 236:8
  243:21 254:19
**fraction** 59:3
**fractional** 6:23
  10:13 14:3
**fragile** 207:25
  208:1
**frame** 31:8
**framework**
  106:25
**framing** 234:19
**francisco** 8:13
**frankel** 26:8
**frankly** 29:8
  32:10 34:22 36:9
  36:21 39:9,13
  44:8,18 46:3,8
  49:20 50:15 59:17
  74:10 91:1 92:13
  104:6 136:2
  139:24 147:13
  148:22,23 151:23
  151:25 163:18
  168:8 171:5
  182:19 190:8,19
  194:5 215:4
  221:16,23 225:1
  227:19 233:6,13
  235:15 251:25
  258:22

**fraudulent** 38:16
  149:18
**free** 100:22
  197:16 243:11
**freezing** 264:1
**friday** 269:7
**friese** 99:8
**front** 57:25 79:3
  112:3 150:1
  234:18 236:25
**frustratingly**
  224:11
**fulfill** 38:6
**full** 58:5 62:8
  75:23 165:1 193:9
  193:12 236:7
  237:19 243:22
  244:16 245:7,8
  246:1 247:25
  248:6 250:4,5
  252:11 253:24
  254:3,10 267:3
**fully** 40:20 42:4
  59:16 61:8 175:8
  186:16 205:1
  212:20
**fulsome** 91:7
**function** 136:10
  157:11 193:20
**fund** 42:23 47:1
  48:6,16 100:17,18
  101:3 103:3
  211:23 250:12
  251:14
**fundamentally**
  46:12,21 47:8
  160:24 186:3
**funded** 42:25 47:1
**funding** 203:17
**funds** 45:4 100:10
  103:4 113:1 196:5
  212:24 216:12,24
  217:2 252:12

furiously 102:5
furrowing 123:21
further 14:8 56:1
  84:22 86:25 88:2
  108:10 121:13
  184:16 209:22,23
  230:20 243:15
  245:12 249:3
  251:18,19 270:24
future 51:22 52:3
  100:20 126:2
  219:14 235:13,24
futures 51:19
  230:22

g

g 28:1 76:16
  200:24 254:24
  263:5
gag 224:19
gaggle 39:5
gainesville 24:18
games 212:24
gargantuan
  269:11
gather 28:5 79:4
  103:18 154:8
  160:18 198:3
gathering 240:10
gauging 160:9,10
general 3:22 12:4
  43:19 44:4,18
  45:6 48:20 50:1
  80:15 201:22
generally 8:6,11
  40:14 88:18 91:3
  96:11 120:21
  257:18
generate 92:21
  93:13
generous 63:5
genuinely 32:21
gerard 11:21

gerber 98:5,25
  99:3,9 100:1
gerber's 98:6
germane 50:9
  190:21
gerrymander
  72:6
getting 29:14
  30:21 34:8,25
  48:1 49:16 50:21
  50:23 83:6 87:8
  87:19 88:4,9
  167:22 169:7
  176:21 186:20
  191:13 247:5,21
gilbert 171:22
give 36:17 39:7
  56:23 57:21 58:21
  92:1,8 98:13
  105:20 137:5
  151:20 158:3,5,9
  161:4,23 172:3
  191:1 207:24
  214:22 235:18
  248:7 257:22
given 28:7 48:18
  49:18 66:6 82:23
  84:8 98:18 102:21
  108:10 122:6
  134:24 157:6
  160:1 166:1 167:8
  178:4 180:11
  187:2 196:2
  204:24 212:18,19
  218:22 222:21
  245:18 248:22
gives 38:12 71:12
giving 36:16
  177:16 256:19
  257:8
glad 204:17
glitch 235:6

global 205:7
glove 33:22
go 28:19,22 29:23
  30:10 44:10 49:1
  51:8 58:19 63:14
  68:13 70:22 71:13
  73:7 79:8,11,12
  79:24 88:2 90:7
  90:24 94:7 95:19
  95:20 98:13,14,24
  98:25 99:20
  108:11 117:5,20
  119:21 121:10,16
  122:14 126:8,11
  127:6,23 129:2,14
  133:8,22 134:25
  136:6 153:1
  165:17,18 173:22
  173:23,24 175:18
  175:20 176:13
  177:3 179:6
  180:24,25 182:6
  182:19 185:12
  186:21,22,24
  190:20 196:1
  198:18 210:20
  217:12 218:22
  222:2 225:7,12
  227:6 228:24
  231:6 232:1,1
  233:17 234:13
  235:23 240:25
  246:18 250:16
  253:15 255:5
  258:19 262:7,8,18
  262:23 269:8,18
goal 217:16
  234:16
goals 205:12
god 76:14
goes 46:2 48:9
  49:24 50:2 152:13
  180:23 187:19

193:17 195:25
205:14 207:21
228:4 236:6 238:1
255:7,23 268:14
268:19
going 28:20 29:6
  29:24 31:13 33:14
  34:12,16 36:8,8
  39:10,20 42:23
  43:24 44:11,12,19
  44:24 46:5,14,22
  46:25 47:3,4,9,17
  48:17,24,25 49:10
  49:22,23 51:5,8
  51:10 52:16,17
  53:10,14,23 54:12
  55:11,25 56:25
  58:3,14,19,21
  61:8 64:20 65:10
  65:21 68:1 69:15
  69:18,22 70:11
  71:6,21 72:13,20
  80:8 81:15 83:13
  84:2 89:22 90:7
  90:10 99:20
  100:10,11 102:18
  103:21,24 104:1
  104:21 105:21
  109:23 111:22
  112:20 113:1,22
  114:8 115:3,5,17
  116:15,22 117:2
  121:8 124:12
  127:7,7 129:18
  133:20,21,22
  141:11 147:8
  148:13,25 151:23
  152:3 155:7,18,19
  157:5 160:16
  161:9 162:1,10
  164:10 170:16
  172:11 173:13
  175:24 176:1,7

177:5 178:8 180:4
181:16,21 182:18
183:6 184:4
185:25 190:22
196:7 198:21
199:4,13 206:9
208:13 209:22
210:6,11,23
211:20 214:6,6,25
215:9,19 218:25
225:21 228:21
229:6 230:10
231:4,13 236:2
240:1,16 241:11
241:15 243:21
245:10 247:4
248:18 249:13
251:23 253:9,13
260:10 261:15
263:17,22 267:14
271:8
**golf** 253:14,14
**good** 28:2,23
31:13 35:7 36:7
36:15 41:7 52:23
53:13 58:16 64:9
67:15 68:19 75:4
80:13,14 93:22
98:19 101:21
141:17,23 144:25
147:7 152:6 153:5
158:4 167:24
168:4 186:9,10
202:7 204:21
216:1,17,18 218:5
227:2 228:24
229:18 231:22
232:14 233:7
245:23
**gostin** 4:7
**gotten** 49:13 83:2
177:8 197:10
207:15 246:20,22

**govern** 128:1
**governance**
193:19 254:6,7
**governed** 127:17
**governing** 217:1
**government** 2:2
37:9 41:10,23,25
44:1,3 46:17
149:14 190:10
209:11 251:17
**government's**
43:6 178:7
**governmental**
13:19 46:1,16,20
60:14 181:6,7
204:23 206:5
**governments**
43:25 46:23 65:18
177:22 178:1
205:3,9 207:1
252:1
**governs** 188:22
**gracious** 60:3
63:5
**grammatically**
245:23
**granted** 146:18,18
267:17 271:20
**granting** 198:11
**grants** 181:1
**granular** 34:13
35:1
**granularity** 58:2
**grateful** 54:2 89:7
204:8 220:21
242:2 254:21
272:15
**gratitude** 61:3
203:8
**great** 30:3 65:19
68:12 72:19 75:8
75:8 124:19 146:3
180:11 193:18

207:19,24 228:16
234:5 249:15
261:22
**gregory** 5:15 26:6
166:23 225:14
**grids** 67:7
**grips** 242:15
**ground** 272:3
**grounds** 125:5
126:25 162:9
193:17
**group** 9:11,18
13:9,13 24:2
25:16 31:18 33:4
33:6,7 36:6 48:20
48:21,21 49:7,8,8
60:4,21 109:23
118:6 138:1,11
153:17 154:1,1
155:1,9,12 159:9
159:10,10,15
161:14 205:17
210:24 212:3
213:25 229:15
**group's** 211:2
**groups** 33:2,8,21
36:6 47:18 49:21
60:5 74:14 101:6
125:1 165:13
205:18 212:23
**guarantee** 4:8
61:6 169:5
**guarantees** 37:22
**guardian** 235:16
**guess** 31:6 67:1
73:5 78:22 91:2
93:2 99:5 111:6
115:10 116:21
120:23 124:11
160:16 161:18,19
162:12 205:5
231:15 235:10,22
243:16 244:10

249:20 258:4,10
**guessing** 101:11
269:7
**guidance** 78:23
102:3 210:5
258:16
**guided** 64:24
**guised** 106:21
**gump** 27:7 36:2

| h |
|---|

**h** 13:18 27:5
123:2 200:24
**haberkorn** 6:8 7:5
**hac** 73:19
**hage** 26:1
**hainkel** 23:14
62:15
**half** 31:2 72:4
100:10 140:23
243:19 258:3
**hamlet** 233:21
**hancock** 7:24
**hancock's** 268:18
**hand** 33:22 65:12
70:24 76:12
122:10 151:1
154:1 169:25
199:6 205:20,21
206:4 233:8
**handful** 58:25
**handle** 102:25
155:6
**handled** 155:7
**handling** 75:1
79:1,10 121:19
175:9
**hang** 199:24
**hanging** 255:3
**happen** 68:1
96:14 98:1 99:11
145:8 183:16
220:15 240:17
241:1

**happened** 130:25
131:5 140:2
262:21
**happening** 30:16
44:8 96:12
**happens** 68:19
120:22 148:15
183:10
**happily** 46:10
53:1
**happy** 29:20 55:5
76:5 102:1 131:23
140:9 144:22,22
147:6 165:2
166:17,20 198:20
217:23 262:9
268:9
**hard** 31:22 145:17
156:20 197:12
202:22 206:3
207:12,16 230:1
248:5 251:25
**harder** 234:9
**harold** 216:1
**haswell** 3:9
193:25 194:1
**haswell's** 194:25
**hatch** 201:3
**hate** 47:10 101:22
**hauer** 27:7
**head** 177:18
201:15
**head's** 113:22
**headed** 227:24
251:13 256:4
**heading** 254:24
**health** 4:16 23:19
61:17 62:20
110:15,18 197:14
**healthcare** 112:5
113:21 114:14
245:13

**hear** 30:2 31:15
31:18 34:20 59:12
59:17 75:6 79:17
79:25 80:17 89:9
90:25 93:25 94:3
107:4 118:3
124:16 137:14
154:23 156:3
176:19 182:24
185:8 201:6,8,10
202:3,5,6 203:7
207:12 218:3
222:22 224:2
225:18 241:2
246:16
**heard** 29:3 49:18
61:13 70:13 74:20
156:6,6,8,9,10
168:15 181:11
182:17 185:11
197:7 205:22
**hearing** 2:1,1,3,7
2:8,9,13,21,25 3:4
3:8,11,14,19 4:1,5
4:11,14,18,22 5:1
5:5,9,13,18 6:4,15
7:1,12,17 8:1,5,10
8:15 9:1,7,11,20
10:1,5,17,21 11:4
11:8,13,18 12:1,7
12:14,19 13:1,16
13:22 14:7,15,20
15:1,5,5,6,9,9,10
15:14,19 16:1,2,5
16:11 17:1,7,7,8
17:12,17,22 18:2
18:7,12,17,17,18
18:21 19:1,6,12
19:18 20:1,7,12
20:17 21:1,6,7,15
21:21 22:6,14
28:4,8,16,20
29:17,18 30:12,14

31:7,9 32:13,14
33:25 35:19 41:7
44:12 46:19 54:6
56:22 64:8 66:6
71:13,15,25,25
77:1 84:6 95:22
95:22 96:20 102:7
105:22 107:2
108:24 113:7,10
114:3 116:24
119:8 142:12,16
153:10 157:9
173:4 176:25
180:8 185:7
186:24 190:24
200:4 201:6,8,9
204:25 205:11,15
205:23 209:23
210:2 211:21
215:13 218:10,23
228:6 229:6
230:24 233:12,13
233:19 234:8
235:10 238:20
241:1,14 242:24
243:3,18 249:19
256:8 257:17
258:2 260:6,25
261:25 267:1,2,4
267:6,7,13 269:1
**hearings** 70:12
**heart** 225:18
**heaven** 270:10
**heavily** 194:19
196:8
**held** 83:8 178:14
234:11 245:13,14
245:21,22
**hell** 46:8 53:5
**hellfire** 37:23
**help** 69:23 76:14
86:22 147:3,8
150:2 155:17

204:7 205:6 209:6
**helped** 60:21
**helpful** 33:3 61:16
82:25 91:2 92:8
131:25 137:17
145:5 150:23
161:18 228:13
231:24
**helping** 41:14
202:13
**helps** 31:8
**henceforth** 43:3
**hey** 163:5
**hh** 106:6
**high** 6:23,24
10:13,14 14:4,5
51:13 64:14 67:1
71:20 184:10
248:4
**higher** 248:4,25
**highlight** 100:5
169:9 239:9
**highlighter** 70:24
**highly** 98:1 207:5
**hired** 44:22
**historical** 222:21
**history** 32:12,23
52:5 184:10
193:22
**hit** 34:15,16 72:19
80:11
**hitting** 57:5 86:25
**hobson's** 131:10
**hoc** 8:15,20 9:1,4
9:11,18 12:17,22
13:9,13,16,19
24:2 25:2,16 26:9
27:16 32:19,25
33:7 102:23
117:23 118:9
121:25 192:20
200:7 204:22
205:1 206:8

209:17 210:24
213:25 216:2,3
234:15
**hold**  83:9 97:10
143:2 181:10
182:1 213:8
259:11
**holder**  83:24
112:23 121:10,17
236:13,15,20,22
236:25 237:1
249:23 250:6,21
**holders**  42:24
82:4 84:16 87:6
87:13 97:16 110:3
112:8 214:14
230:18 236:15
237:4 262:17
264:12
**holdings**  93:13
**holes**  59:5
**home**  267:20
**hon**  1:22
**honest**  30:11
**honestly**  165:10
174:9 224:20
**honor**  28:23 29:1
29:5 34:14 35:8
36:18 38:25 39:22
41:1,12 43:10
46:15 56:2,23
58:7 62:14,16,21
63:4,15 71:11,20
75:4,6,9,18 76:6
76:17,24 77:10
78:9,17,21 79:9
79:14,15,19 80:7
80:13,19,19 82:1
82:9,11,14,24
83:4,7,12 84:13
84:22 85:20,22
86:13,14,15,18
87:21,25 88:23

89:8,12,24 90:1,9
90:24 91:6 92:1
93:4 94:8 95:19
95:21 97:2,19
99:19 100:7,24
103:1,10,15 104:9
105:11 106:1,8
107:1,6,16 108:4
108:6,12,16,23
109:2,11 110:4,10
110:19 111:25
112:10 113:11
114:6 117:8,14,18
118:1,8 119:18
120:6,24 121:14
121:18 122:15,20
123:24 124:15,20
125:18 127:10,19
128:3,9,20 129:7
129:14 130:3,23
131:6 132:22
133:4,12 134:14
135:11 136:7
137:13,19 139:6
139:11,12 142:9
143:6,11 144:2,24
145:1,19 146:4,9
146:21 147:3
149:25 150:9
152:16 153:8,13
154:15,18,22
155:4,11,18,23
156:12,16,22
157:5,18,23
158:16 159:2,4,13
159:19,22 160:24
161:5,21 162:20
163:4,5,6 165:4
165:25 166:23
167:18,21,25
168:6 169:15
170:4 171:16
172:6,16,20 174:8

174:11 175:8,15
175:17,22 176:6
176:17,22 177:11
177:24 178:3,12
180:2,21 181:11
185:4,8,8,21
187:3,16,24
188:23,24 189:1
189:11,15,16
198:12,22,25
200:10,12,17
201:12 202:4,24
203:2 204:16,21
204:25 205:1
206:7,15 207:11
208:1,13,21
209:16 210:1,2,17
210:22,25 214:20
214:21 216:1
217:1,24 218:2,6
221:6,9 225:2,7,9
225:14 226:4,9,14
230:3 232:21,24
234:3,4,4,4,5,19
237:2 238:6 239:6
240:4 241:10,21
245:20 246:15
247:11,14 249:8
251:5 253:2,5,21
256:23 258:14,24
259:24 260:23
261:8,18 263:4,23
265:1 267:10,18
267:19 268:21
270:17,24
**honor's**  66:3
78:22 199:5
216:16
**honored**  36:8
**honor's**  226:5
**hope**  31:11 38:25
55:23 58:16 63:17
70:23 72:2 74:10

139:18,20 176:13
186:4 203:11
224:7 225:6 233:9
233:11 234:3
236:3 257:25
**hopeful**  53:10,23
88:24 209:22
211:16 224:5,23
**hopefully**  31:3
36:18 40:20 50:5
52:22 64:20 67:3
101:11 137:17
186:18 199:11,15
207:10 209:5,12
215:10,15,16
231:1 232:14
251:23 269:21
272:4
**hopes**  177:5
**hoping**  55:9 208:9
**horizon**  217:7
**hospital**  106:19
106:20 107:1,13
109:10,19,21,25
110:3,5 111:6,21
111:22,22,25
112:2,5,9,24
113:12,20 114:9
114:21 115:6,18
116:2,23 249:19
249:19,23 250:6,7
250:10,11,11,15
250:18,21,22,23
251:1,2
**hospital's**  250:19
**hospitals**  38:19
48:21 110:2,15,17
250:14
**host**  158:7
**hour**  28:16 30:5
31:2 40:22 233:16
**hours**  30:5,5,19
30:20 34:9 40:5

54:5 95:2 123:9
211:4 218:19
225:20 234:14
**house** 4:12 61:15
**housekeeping**
268:22
**huebner** 15:11
23:8 28:23,25
29:5 44:21 55:5
55:11 56:23 62:3
62:5 63:14,15,25
64:3,5,8 75:9
83:12 84:12 86:22
88:23 92:1,7,10
93:1,5,9,11,18,22
94:4 100:9,16,24
101:5 102:14
104:9,18,23 105:3
105:11 106:22
122:6 124:9,23
125:3 131:13,21
131:23 132:1
139:12 140:19
141:3,4,13,15,19
141:23 142:1,5,9
147:3 163:5,14,24
164:3,6,8,10,12
164:24 165:1,25
167:16,22 168:15
170:4,15 171:13
171:21 175:23
198:22 200:4
201:12,12 205:15
205:22 207:12
211:24 214:20,22
214:25 215:24,25
216:7 218:19
219:10 220:7
228:5,9,15,18
229:25 230:3,6,23
247:14,20,23
249:8 253:1,2
254:8 256:23

257:2 260:23
261:8,18 262:9
263:4,10,23 265:1
265:5,8,17 267:8
267:10,18 268:12
268:16,21 269:4
269:18 270:2,7,17
270:21
**huebner's** 63:11
213:5,8
**huge** 86:23 92:19
**human** 52:8 199:2
**hundred** 143:11
271:5
**hundreds** 37:1,7
38:21 43:10 64:23
137:1 140:8
147:18 222:9
**hunter** 7:19
**hurt** 52:20
**hyde** 22:25 274:3
274:8
**hyperbolically**
32:22
**hyperlink** 167:10
170:6 242:22
262:1
**hypothetical**
32:16 36:10 67:10
68:3 81:23 91:9
**hypothetically**
135:20

**i**

**i.e.** 138:22 152:11
153:25 154:11
173:22 262:24
**iacs** 37:14,15,21
92:13 93:12
171:10
**idea** 131:8 182:1
233:17 246:18
**ideally** 207:25

**identified** 57:16
81:13 88:8 172:23
**identify** 28:9
57:13,15 81:17
83:22 118:14
190:22
**identifying**
181:18
**identity** 57:11,12
**ii** 2:14 10:23 14:9
16:18 19:20 21:25
22:7 121:23
122:18
**iii** 2:15 9:14 10:23
14:10 21:25 22:8
23:23 261:5
**illegal** 68:16 69:3
70:17 72:23 73:11
74:18
**illinois** 99:7
**imagine** 64:23
102:16 119:4
236:1 249:16
**immaterial** 56:5
**immediate** 232:24
**immediately**
95:21
**impactful** 203:17
**impacts** 53:5
**impaired** 98:9
99:13
**impediments**
216:25
**imperfect** 87:5
**impinge** 204:18
**implicated** 209:2
**implication** 247:9
**implicit** 271:18
**importance**
181:23 182:14
227:3 232:4
**important** 38:24
42:11,15 43:4,7

56:8 92:15 103:8
104:14 114:11
118:20 131:3
147:12 175:1
182:20,25 183:14
203:21 205:13,25
206:11 209:21
210:2 218:14
221:15 232:21
242:6 244:15
252:10 253:10
264:11 266:9,11
272:11,21
**importantly**
94:23 103:25
132:7
**impose** 125:23
**imposed** 126:10
**imposition** 217:18
**impossible** 68:20
68:22,22 72:24
112:15
**impossibly** 74:18
**impression** 54:22
247:19 248:24
**improper** 127:22
180:17 195:10
**improved** 141:16
141:16 187:20
**improves** 139:17
**inability** 34:3
**inappropriate**
51:23
**inarticulate** 87:2
**include** 61:5 81:9
81:10,13 82:2,3
84:24 88:19 94:25
220:6 222:20
237:15
**included** 63:11
78:4 94:18,19
110:17 122:24
167:2 223:7

243:23 244:18
245:1
**includes** 77:24
78:7 113:21
159:10 251:17
**including** 31:12
38:16 44:17 60:20
65:17 70:15 73:1
73:3 87:6,13
92:21 94:14 98:2
107:12 110:20,21
137:4 148:24
149:17 164:20
175:10 195:4
198:25 205:17
211:5 223:4,13
239:20 242:19
**inclusion** 11:19
220:24
**inconsistency**
238:22
**incorporate**
107:18
**incredible** 30:20
45:1 74:6 166:18
**incredibly** 131:24
192:17
**incur** 217:12
**incurred** 250:17
**incurs** 176:14
**indemnification**
239:1
**indep** 11:9
**independent** 4:1
10:18 106:9
109:20 110:21
111:24 112:1
183:19 222:23
**independently**
173:1
**indexed** 228:23
**indicated** 94:15
103:13,15 106:14

**indicates** 90:10
**indicating** 118:16
**indicted** 86:16
**indiscernible** 32:2
33:7 45:5 46:6
51:25 53:24 55:23
56:12 63:19 67:5
73:5 75:1,10
77:12 78:10 84:17
85:23 87:5,10,17
90:16 91:20,22
92:14 94:2,18
95:5 100:13 101:1
106:15 124:7
150:22 155:16,22
156:21 157:16,18
159:10,19,20
163:7 168:1
169:21 170:7
173:9 174:9 176:8
176:15,16,17,18
177:6 179:13
180:22 189:20
199:14 201:15,19
205:21 215:2,10
215:12,16 217:8
219:1,14 220:13
222:2,19 223:24
225:6 228:20,21
228:23 229:7,13
229:14,17,20,22
229:23,24 230:24
233:2 234:12
237:15 238:3
239:22 240:11
243:3,19,22
246:24
**individual** 13:9,13
25:16 32:20 47:25
67:10 69:22 78:23
115:24 120:20
147:16 148:2,13
150:15 160:13

161:22 163:16,17
163:17 164:22
172:13 196:5
246:8 254:11,13
263:24,25 266:22
**individually**
141:1 149:15
**individuals** 119:3
120:1 160:25
196:1 230:11
263:17,22
**indulgence**
217:22 267:11
**indulgences**
217:25
**inestimable** 36:16
60:13
**inextricably**
152:25
**infer** 190:16
194:17
**inflammatory**
227:24
**information** 2:13
6:16 9:13 10:6,22
13:11,23 16:17
19:19 21:24 22:7
32:9,11,15 33:12
38:8 57:23 58:1
58:12,18 59:10
67:8,9 68:3 87:19
87:24 90:15,16,17
90:18 109:13,16
109:18 111:4
112:19 114:18,20
115:1,6,18,23
116:1,4 119:11,20
120:17 121:4
122:4,6,20,25
123:4,16 125:11
126:5 129:18,21
135:5 136:22
137:8,19 140:16

141:10,12 142:7
144:13 147:7
149:10 153:3
155:16 160:25
161:6 163:22
164:18 165:7,9,11
165:14,16,17,18
165:19 166:8,10
166:19 167:1,2,6
170:8 171:18
190:18,25 191:1
191:18 207:20
220:17 222:17
225:23,25 257:3
264:13,15,20
265:7,11 271:23
**informed** 28:15
32:16 36:12
194:19
**inherent** 38:24
**inherently** 70:17
**initial** 11:13 35:5
35:6 37:16,25
59:4 65:8 94:15
106:11 130:24
225:2
**initiative** 244:9,12
**injunction** 37:24
104:3 128:2,11
146:10 151:2
179:19 182:9
183:9 184:15
192:3 229:6
**injuries** 212:10
**injury** 41:11,18
42:17,18 48:20
118:15 119:1,21
125:14,25 126:10
126:17,22 131:7
132:8 137:1,6,20
138:1,11,16 145:3
145:22 153:25
191:10 192:21,23

192:24 195:4
196:24 198:3,6
200:7 210:24
211:2 212:21,23
214:14 264:12
**innumerable**
147:15
**inpatient** 250:12
250:12
**input** 251:16
252:5
**inquiries** 183:18
222:10,10
**inquiry** 183:13,17
222:18
**insane** 69:3
**inserts** 223:5
**insight** 272:22
**insist** 268:1
**installments** 42:8
**instance** 90:21
182:5
**insufficient** 94:17
**insurance** 4:7,8,9
245:13,14 256:9
**insurer** 61:5
**insys** 73:4
**integrity** 170:23
**intellectual** 66:7
**intend** 206:2
210:4 223:13
**intended** 158:1
171:20 173:6
246:12 247:15
251:22 261:14
**intense** 36:2 91:15
205:21 229:11
232:10
**intensely** 33:9
36:13
**intensively** 205:16
**intent** 83:15 237:3

**intention** 110:16
248:20,21
**interactions**
205:19 222:22
232:11
**intercreditor**
207:7
**interest** 46:2 66:9
73:24 83:24 149:6
149:24 150:10,15
157:13 203:16
237:15 257:16
**interested** 190:19
**interesting** 119:20
122:3 180:20
**interests** 73:18
87:7,14 125:2,8
125:11 144:22
145:7 150:19
192:18,24 209:1,9
230:18
**internet** 224:13
**interrupt** 62:4
79:22,23 121:24
168:17,18,19
**intertwined**
152:25
**intervene** 197:22
**interventions**
203:24
**intimately** 244:8
**intra** 140:5
**intro** 52:21
**introductory**
188:21
**invade** 149:17
**investigation**
221:7
**investor** 32:16
81:23
**investors** 81:5
**invite** 40:24
172:11

**invoke** 217:10
**involve** 54:20
**involved** 33:9
49:19 57:4 73:2
131:23 154:7
167:3 184:11
205:2 207:11
212:19 217:7
236:3 244:8
**involvement**
160:1 202:13
**involves** 37:13
150:19 151:6
207:1,22 217:17
**involving** 132:7
183:8 187:13
**ira** 13:5
**ironically** 67:7
**irony** 104:10
**irrelevant** 221:23
**isley** 4:6
**isn't** 222:23
227:22 235:6,8
244:8,12
**israel** 216:1
**issue** 29:21 33:24
34:10 40:6 41:2,6
41:12 42:4,12,14
46:7,10 50:3
51:15 52:2 53:7
53:10 55:8,25
66:5 70:1 72:13
82:12 84:6 88:4,5
91:2,24 93:6
97:25 98:1,6,11
100:14 104:7
108:12,13 110:3,4
110:25 111:20
113:4,6,6 114:9
116:19,19 119:17
125:11 140:5,6
142:3 143:18
144:22 147:1,15

147:18 149:12
150:18 153:24
154:4 155:25
157:3 158:17,23
159:5,19 163:6
172:1,23,24 174:2
174:6 175:3 176:5
177:11 178:19
179:18,24 180:15
182:9 183:4
187:25 191:21
193:24 194:5,14
195:13,16,18
197:14,15 203:11
207:7 214:3,5,8
215:18 216:23
219:6 220:3,14
228:10,20 229:9
230:6 239:15
249:20 250:2
251:20 255:25
256:17 258:5
262:1,11 266:10
269:22
**issued** 204:6
249:21
**issues** 28:17 29:11
29:13 30:6 31:16
31:19,23 33:18,19
40:9,13,16,22
43:18 44:11 45:4
45:8 55:10 60:12
60:14 69:8,24
71:23 73:25 87:25
96:4 111:12,17
131:3 132:7 143:8
143:8,9 153:9
154:3,16 155:17
156:15 157:8
158:7 168:5,13
182:19 185:19
187:2 190:14
194:7,21 202:21

202:23 203:12
204:11 205:25
206:4 208:13,18
208:24 209:14,21
212:19 213:4
216:8,10 217:6,20
218:23 219:9,11
219:18,19,24
223:21 224:25
225:6 226:18
227:4,6,9,23
229:2 232:16,18
232:19,23,24,25
234:10 251:24
269:13 270:11,23
**issuing** 104:24
**items** 106:6
**iteration** 213:11
213:25 218:8,25
**iterations** 211:8
**it's** 218:8,19,23
221:15 222:15,18
225:18,25 226:7
229:17,23 231:12
231:16 232:18
233:5 237:8 241:5
242:6 243:3 245:8
245:17,17 246:14
246:15 256:14
**iv** 2:16 9:16 10:25
14:11 16:20 19:22
22:2,9
**iv.b** 66:15
**i'd** 218:9 219:4
222:4 244:10
245:1
**i'll** 219:14 234:8
**i'm** 217:23 218:25
223:20 224:9,10
225:9 230:3
231:24 233:18
235:1,22 236:6,16
239:8 240:25

246:12 247:2
**i've** 242:23 243:2

**j**

**j** 7:19 13:12 14:17
15:2,16,22 16:3
17:5 18:22 19:3,9
20:5,20 21:3,9,12
21:18 23:11 25:21
**jackson** 11:2 12:8
12:11 25:9 73:16
121:20 122:17,22
124:16 196:12,13
196:14
**jackson's** 124:23
**james** 2:18 22:15
23:9
**janssen** 6:9,9,10
6:11,12,12 7:6,6,7
7:8,9,9
**jasmine** 11:16
**jeanette** 2:22 9:22
191:5
**jeanne** 22:15
76:15 78:6
**jim** 75:4
**job** 65:23 92:24
163:21 220:21
230:24
**john** 268:18
**johnson** 5:23,23
6:4,4,11,11 7:1,1
7:8,8 23:14 61:24
62:15
**johnson's** 61:24
**join** 79:7 191:23
**joinder** 6:5 7:2,17
9:7 12:19 61:24
**joined** 47:23
48:14 73:20
139:25 226:19
**joining** 7:13
**joins** 139:21

**joint** 5:18,18 6:6
7:3 14:15 15:14
15:20 17:2,22
19:1,7 20:2,12,18
21:2,10,16 260:8
**jonathan** 11:1
12:11 25:13
121:21 124:16
**joseph** 26:1,6
166:12,23,23
167:5,8,12 225:14
225:14 226:11,16
**judge** 1:23 28:2
70:13 87:3 89:6
98:4,5,6,21,25
99:3,8,8 100:1
130:18 134:9
152:7 174:4 177:7
177:8 183:11
204:18 235:3
245:20 265:15
272:15
**judgeforyoursel...**
224:14
**judgement** 246:3
247:1,3
**judgements** 148:6
**judges** 98:19
136:24 241:23
**judgeyourself.c...**
224:13
**judgment** 152:20
248:18,21 249:10
**judgmental** 47:22
**judicial** 137:12
144:5
**july** 68:1 250:9
259:16,17
**jump** 54:15 83:13
85:6 198:22 238:6
261:18
**jumping** 85:23

**juncture** 54:15
**junctures** 32:11
**june** 258:8 259:1
259:2,4 270:18
**jurisdiction** 71:10
217:11
**justice** 24:8 151:3
151:10 231:9
**justin** 8:2

**k**

**k** 6:10,12 7:7,9
183:11
**karta** 183:11
**keep** 41:16 52:16
52:17 77:14,16
124:20 187:11
198:21 199:23
204:3 210:23
231:23 234:8
265:17 271:13
**kelvin** 10:3
196:19
**ken** 60:5 216:5
**kenan** 3:16
**kenneth** 13:18
26:13 204:22
**kevin** 3:2 191:22
**key** 30:23 74:16
95:10,11 213:10
216:22 243:2
252:21 272:4,5,11
**kicking** 167:25
**kind** 39:21 57:19
58:24 59:19 60:16
67:20 86:1 102:1
160:25 161:6
166:2 186:10
208:6 231:20
232:9,18
**kinds** 40:18
178:15
**kk** 106:6

**klein** 14:13,22
15:6 16:8,13,21
17:9,14,19,24
18:4,9,14,19
19:15,23 20:9,14
22:3,11 23:12
58:18 73:15 89:8
89:8,11,24 153:14
154:20,22,23,25
155:3,13 157:23
162:21 163:4,7,12
169:15,15 170:3
173:12 174:8
175:8,13 188:23
188:24 189:11,12
189:16,24 198:12
198:13,15 200:17
200:17,24 229:8
246:15,15,18
247:6,11 251:5
265:15
**knees** 47:15
**knew** 59:7 64:10
**know** 28:20 29:10
29:17,19 30:10
33:1,4,5,7,9,12
34:5,25 35:8,11
35:12,23 36:5,9
36:11,18 38:9,18
39:17,18 40:24
46:8 53:12 57:3
58:2 71:18 72:3
73:18 74:5 77:2,5
81:5,23 84:5,14
86:23 91:13 98:18
100:15,22 101:13
101:14,23 102:6
102:11 103:23
105:7 108:1 111:8
117:19 118:4,10
119:12,13,16
120:3,4,25 121:15
123:9,14 125:13

127:12 128:19
129:20 130:19
131:4,23 134:20
142:3,3,13,22
143:3 145:17
146:6 148:16
149:2,4,8 150:15
151:9,18 152:24
153:4,22 156:7
158:5 159:17,25
160:5,8,14,18,22
161:5 163:8,25
165:13,23 168:16
169:23 170:17
172:4 173:25
176:17,21 181:7
182:4,12,13,15
183:6,7,7,8,21
184:13 186:14
189:18 197:19
198:17 199:6,24
200:21 201:6
205:1 210:3,18
217:1 222:3
223:16 231:4,13
233:18 235:20
240:12 243:10
244:9,20 245:16
247:18,18 248:24
249:13 251:20
253:11,11,14
255:5,24 256:1,14
257:5,14,18
258:12,18 259:5,6
260:13 261:13,15
261:24 263:2
265:18 266:20,22
269:10,13 271:7
**knowing** 76:21
166:10 173:10
**knowledge** 32:24
**known** 35:10
39:16 116:16

198:4,5 245:13
**knows** 30:11
32:18 33:24 43:21
119:14 145:19
162:17 200:12
231:10
**kramer** 26:8
204:22

**l**

**l.l.c.** 5:23
**l.p.** 1:7 2:19,25
8:18 12:9 13:4,7
13:14 14:13,16,18
14:21,23 15:3,7
15:12,15,17,21,23
16:3,7,9,14,22
17:3,5,10,13,15
17:20,23,25 18:4
18:8,10,15,19,23
19:2,4,8,10,14,16
19:24 20:3,5,8,10
20:13,15,19,21
21:4,9,11,13,17
21:19 22:3,11,16
**la** 27:18
**laconic** 45:20
**lafayette** 27:17
**lag** 167:3,8
**laid** 35:4,6 66:16
86:3 111:20
143:11
**language** 29:14
42:10 53:1,9,18
54:5,20 55:1,3,6,9
55:12,13,17,21,21
56:6,10,18 74:3
82:16 87:12 88:15
98:14 112:9
150:12 164:13
185:10 188:15
199:13,15 202:18
202:19 211:15
230:8,20 236:7

239:15 240:18
243:12,12 250:24
252:19 255:19
256:6 271:3 272:7
**lap** 234:8
**large** 35:1 41:12
43:13 54:23 68:25
96:18 119:25
138:22 192:22
203:17 208:7
225:1
**largely** 51:3 61:10
140:7 142:11
182:3 216:11
**larger** 42:17
49:21
**larry** 201:14
202:7
**late** 128:21 153:15
200:19
**latency** 52:1
**latest** 239:23
258:25
**lauding** 221:20
**launching** 208:10
269:11
**law** 25:8 36:1
47:11,19 48:12
50:21,22 64:25,25
65:4,5 69:24,24
70:4 72:8 89:5
99:11 151:25
153:6 176:15
179:8 180:9,14
188:4 250:11
257:5
**lawful** 74:17
102:2
**lawrence** 27:5
**laws** 217:1
**lawsuit** 118:25
119:10 147:16
149:9

| | | | |
|---|---|---|---|
| **lawsuits** 38:21 47:21 147:21,25 | **legitimate** 66:19 72:17 136:3 157:25 | **liability** 4:8 38:22 52:10 61:6 65:15 149:9 156:11 | **lipson** 11:1 12:11 25:13 73:19 122:18 124:12,15 |
| **lawyer** 48:8 162:17 248:16 263:25 | **legitimately** 126:6 **length** 61:23 72:19 91:4 194:19 | 160:15 161:15 163:2 164:21 185:18 192:5 | 124:16,19 125:18 127:3,10,14,19,25 128:3,9,14,17,19 |
| **lawyers** 46:4 49:12,17 101:8 136:12 142:10 | 231:12 240:12 **lengths** 193:18 **lengthy** 150:8 | **liable** 37:1 126:14 237:25 **libby** 85:20,22,22 | 128:25 129:16,17 130:20,22 131:2,6 131:13,19,21 |
| 149:22 162:18 211:3 227:18 248:10 263:18 | 244:13 **letter** 2:17 3:4,4 3:11 11:4,4 106:3 | 86:13 87:8 88:25 90:1 95:16,21 123:16,23 124:1,4 | 132:16,19,24 133:2,4,6,12 134:8,13,16,20 |
| **lay** 194:16 **laying** 64:12 89:15 | 153:17,23 169:24 170:1 223:7,8,13 231:4,6,15,17,23 | 124:7,10 **liberal** 217:3 **liberty** 198:25 | 135:10 139:11,25 143:16,17,22 144:6,8,11,15,18 |
| **lays** 58:14 194:15 **lead** 28:21 158:13 224:6 | 232:5,6,9 242:22 242:22,25 243:6 252:10 260:20,22 | **lien** 211:13 245:17 245:19 **liens** 42:1 245:13 | 144:21 145:1,25 146:3,16,20,24 149:2,3 150:9 |
| **leadership** 228:3 **leading** 205:22 **leads** 214:2 | 260:24 261:2,5,10 261:12,15,23 262:16 | 245:14 **life** 34:2 60:25 64:20 135:20 | 151:22 152:4,16 152:23 153:3,8 175:23 256:16 |
| **learned** 118:22 120:5 201:13 **leave** 21:21 36:22 | **letters** 197:11 222:19 231:9 261:20 | **light** 43:23 155:8 213:7 216:5 **likewise** 50:5 | 264:10 265:12 **lipson's** 149:5,12 196:13 |
| 54:2 70:18 71:3 71:11 73:6,14 121:17 197:21 | **letting** 175:19 176:13 216:16 **let's** 246:25 | 199:9 **limit** 21:22 141:12 **limitation** 127:8 | **liquidate** 92:21 93:12 134:1 137:6 264:13 |
| 247:19 263:17 **leaves** 248:24 **leaving** 199:1 | **level** 35:8 51:13 51:16 60:13 64:14 67:2 71:20 153:7 | 129:3 214:11 **limited** 9:1 12:14 126:21 149:19 | **liquidated** 184:14 246:5 248:11 **liquidating** 92:13 |
| **ledanski** 22:25 274:3,8 **lee** 3:2 | 168:7 177:12 218:10,18 **levels** 92:11,12 | 212:7,24 **line** 78:14 112:3 160:13,15 234:16 | **liquidation** 66:5 66:10 90:15,22 104:4 105:8 132:8 |
| **left** 67:18 80:5 107:5,14 219:11 233:20 255:3 | 96:1 156:10 161:15,16 163:2,3 164:20 177:12 | 236:8 241:19 243:6,21,25 253:25 254:11,17 | 144:5 145:10,12 145:14,14 150:7 **liquidator** 57:14 |
| 261:16,17 **legal** 46:13 50:11 50:16 148:1,19 | **lever** 182:17 **levin** 26:8 204:22 **lewis** 7:23 | 254:19 273:4 **lines** 113:14 251:12 253:25 | **liquidity** 92:16 163:17 164:20 **list** 62:5 86:6 88:3 |
| 153:17 190:11 192:11,13 212:18 215:16 274:20 | **lexington** 23:5 26:3 **liabilities** 161:11 | **lineup** 54:2 **link** 199:23 **linked** 166:25 | 89:22 117:22 123:2,10,19 124:1 189:23 |
| **legality** 31:10 87:16 | 161:11,14 | | |

listed  85:19
  156:24 232:18
  250:13
listen  65:24 183:1
  195:3 272:23
listened  142:17
listening  142:12
  223:3
listings  159:6
lists  86:10
litany  242:18
literally  40:3
  55:17 68:22 86:24
  129:1 137:2
  164:10 211:4
  240:23
litigant  171:1,1
litigants  171:3
litigate  69:18
litigated  248:13
litigating  150:16
litigation  13:20
  104:5 105:8
  127:16 129:14,22
  150:13 168:16
  174:3,4 206:20
  208:5 268:22
  270:19
litigations  150:12
little  29:23 34:13
  41:14 42:22 45:10
  48:16 67:8 68:10
  93:15 95:4,5
  100:5 138:15
  143:1 149:23
  152:8 156:16
  166:20 223:19
  230:1,4 257:22
  268:17
live  45:3 53:18,19
  53:19 226:4
lives  37:8 272:18

llc  5:22 6:9 7:6
llp  23:3,14 24:1
  25:1,15 26:8,15
  27:7 29:1
loathe  152:17
local  43:24 46:23
  177:21 178:1,7
  205:3,9 207:1
  209:11 251:17
lock  128:11
logical  116:14
long  39:17 55:19
  58:7,9 66:7,7
  99:15 118:11
  129:4 139:24
  141:3 143:12
  148:4 188:12
  189:2 234:7
  260:25 269:19
longer  39:17
  126:16 140:16
  158:18 269:19
look  39:14 56:3,4
  56:7 66:14 81:2
  107:9 130:18
  132:4 156:2,14
  184:9 186:3
  187:12 206:16
  213:16 214:15
  227:23 263:5
looking  41:25
  87:19 91:18
  116:10,10,10
  166:11 192:18
  246:9
looks  87:9 199:14
lose  69:17 145:20
  149:5,19,21 185:5
  232:22 252:7
losing  147:25
loss  34:2
losses  41:22

lost  63:20 223:5
lot  35:25 40:7
  41:7 43:4 46:4
  51:9 54:24 66:6
  72:20 73:16
  124:20 140:2,3
  155:16,24 160:10
  160:22,23 166:1
  166:12 177:9
  180:9 181:9
  186:21 210:3
  213:19 231:18
  234:25 236:4
  248:25 269:12
lots  33:1 46:6
  47:17 70:3 142:23
louisiana  4:24 5:3
  23:17 62:18
love  72:1
lower  49:20,22
  246:23 249:2
lowered  177:1
lp  2:1 3:15 25:17
  28:3 200:3
luck  124:10
luckily  104:7
luisa  8:12 196:3
lump  90:21
lunatic  69:3

m

m  8:2 9:17 190:1
  194:24 200:24
m.d.  3:5,5
ma'am  191:6
maclay  60:21
  171:23
madison  3:12
  26:18 194:10,10
  195:1
madly  34:18
mail  233:21
main  71:24 224:8

maintained
  250:14
maintenance
  253:13
major  54:17 81:4
  104:2 105:6 126:9
  272:14
majority  49:16
  50:22 58:8 70:5
  71:6
making  76:1
  99:22 109:22
  132:10 136:19
  137:8 142:22
  146:16 166:17
  181:4 210:12
  212:4 217:13
  233:21 235:5
  249:22 254:12
man  225:9,13
  226:23
managers  57:13
  57:13 254:5
mangled  50:13
manhattan  70:2
manner  45:16
  188:3
manufacturers
  5:19 6:5 7:2 61:22
march  35:21
  51:12 59:7,11
  167:2
maria  8:12 196:3
marine  152:5
  256:9
marion  7:21
mark  4:11 87:11
marketing  195:5
  195:11
markman  4:7
markowitz  9:4
  12:16,22

marshall 7:23
15:11 23:8 28:25
93:25 201:12
265:15
martinez 197:19
197:19
martzell 27:15
masiowski 11:9
24:16 106:9,24
107:17
masiowski's
107:4
mass 45:3 48:3
50:20 84:3 101:12
208:5
massive 130:13
166:4
massively 254:20
master 57:7
173:23 252:15
262:12,14,17,20
262:24 263:13
266:23
material 30:18
37:20 38:16 40:12
49:18 56:7 92:17
101:9 119:11
146:4 213:22
materiality
214:11
materially 96:13
96:21 133:18
254:20
materials 158:8
175:10 220:25
221:3 232:1
258:17 262:13
264:11 265:23
math 148:18
matter 1:5 34:17
48:19 71:10 72:25
75:12 76:2 111:4
142:25 157:13

179:21 214:10
217:6 220:5
236:17 251:3
268:22
matters 179:8,17
179:22 185:18
maura 226:14
maximally 149:3
maximize 169:20
maximum 46:24
47:2
mcclammy 2:18
22:16 23:9 58:18
73:15,21 74:23
75:4,5,8,18 78:19
78:21 79:1,9,14
105:25 106:1,8
108:14,16 110:14
110:19 111:10,17
113:10,11,16
117:9,14,18,21,22
118:1 121:18,23
121:24 122:14,15
123:13,15,19
129:4,6,9,13
130:2,6,9,12,16
135:13,14 136:6
153:12,13,20
154:15,18 174:10
mcduck 160:19
160:21
mcgaha 200:24
mcgaha's 201:7
mckenney 3:2
191:22,24 192:11
mckenney's
191:22 195:1
mckesson 5:24
mcmahon 183:11
mcneil 6:12 7:9
md 8:13
mdl 48:3,6,16
171:2,3

mdls 45:4
mdt 57:11,12
mean 38:20 45:20
45:21 46:16,16
47:22 54:1 63:24
68:5 79:2 83:5
91:6 107:22 108:1
110:11 113:18
114:12 115:8
116:20 117:10
118:3,5 119:14,14
120:21,23 125:17
129:16 133:1
136:8 140:11
142:10 143:3
153:22,23 160:13
160:15 161:14
174:3,23 181:9
187:12 204:5
206:1 222:23
236:18 240:1
256:20 258:20,20
258:21 265:22
meaning 236:7
meaningful
125:21,22 131:10
176:5 204:10
means 46:20
141:9 142:4
213:18 221:20
222:1 246:23
meant 30:16 64:6
129:10 222:24
238:17 265:2
measure 54:23
96:19
mechanical 34:17
140:10
mechanics 47:7
117:12
mediate 41:14
mediation 31:12
60:4,8,22 181:5

190:13,13 191:11
194:12,20 203:18
204:3 207:2 209:6
221:13 223:22
224:5,8,9 243:23
243:24 261:11
mediations
271:15
mediators 60:7
243:24
medicaid 41:23
medical 152:6
256:11
medicare 41:23
medium 68:25
meet 68:20 111:17
258:12,18
meeting 260:13
meetings 64:24
163:10
mega 32:4 39:14
57:3 73:1,1
member 151:12
members 81:10
81:16 224:17
memorandum
57:20
memorial 195:23
memory 52:7
mention 32:17
52:21 60:1 170:24
187:25
mentioned 76:8
131:21 170:19
mentions 132:2
mercy 199:2
merely 35:20
47:22,22
merits 66:22
159:12 162:10
191:20 225:19
256:16

mesh 251:4
met 114:15
  115:11,20 249:24
  252:25
meta 49:14
method 262:14,15
methods 262:14
  262:24
metromedia 70:7
  70:20,25 71:9
  183:7
metromedia's
  71:16
miami 6:22 10:12
  14:2
michael 11:9
  24:16 25:6 118:8
middle 46:9 64:16
  224:21
miley 153:17
millennium 183:7
million 42:5,7,9
  43:2 46:24 47:2
  47:13 52:6 77:23
  100:10 101:9
millions 38:22
mind 44:20 91:1
  155:20 166:13
  180:5 240:5
  260:22
mindful 203:4
  209:14
mine 234:23
mineola 274:23
minimized 215:18
minimum 42:7
  240:20
minors 217:1,11
  217:13
minute 52:4 59:13
  169:19 198:20,23
  199:16

minutes 30:3
  34:20 59:17 69:7
  147:9 167:15
  198:24 200:14
  228:21
mirrored 162:15
mirrors 185:11
misheard 156:8
  256:24
mislead 162:7
misleading 109:2
  160:18 162:6,9,19
misreading 248:7
missed 146:21
missing 59:6
  83:11,14 88:16
  240:3 252:3 263:3
misspoken 52:19
misstated 44:13
mistaken 189:16
mister 265:19,21
misunderstanding
  138:14
mode 144:7,9
model 113:12,18
modification
  188:21
modifications
  188:10 209:23
  211:21
modified 169:10
  188:2
modifies 245:21
modify 213:15,22
moll 4:15,19,23
  5:2,6,10,14
moment 30:10
  148:20 159:12
  165:11 168:14
  172:20,21 182:16
  202:2 219:21
  248:8

momentous 35:20
momentum
  271:11
monaghan 226:14
  226:14
monday 218:7
  219:7
monetary 184:18
money 34:4 35:7
  36:7,15 37:4
  41:21 43:24 44:2
  46:2 47:14 48:1
  50:2 51:23 136:11
  140:24 148:24
  167:24 168:4
  180:23,24 183:25
  184:5,7,25 186:12
  186:13,15 191:13
  195:9,15,25 196:7
  212:19 225:1
  245:16 246:23
  252:22
monies 112:19
monitor 193:20
  252:12
monitoring 48:21
monongalia 7:24
month 61:1
  211:11 223:18
monthly 176:4
months 40:4
  91:16 139:24
  165:14 171:7
  208:11 212:16
  224:18
moot 192:1,9
morning 28:2,23
  29:17 30:23 31:2
  34:19 39:2 49:5
  53:7,12 75:4
  80:13,14 81:3
  85:10 86:8,11
  96:7 108:21

155:14 167:21
  168:9 169:16
  202:10,17 213:9
  213:20 229:21
  271:7
morning's 102:7
  205:23
morrisey 3:22
  12:4
mortimer 81:11
  226:15,18
motion 2:13 3:19
  4:6,11 5:18,20 6:6
  6:15,16 7:3,12,18
  8:5,10 9:3,8,12,20
  10:1,5,7,21,21
  12:1,7,15,20 13:3
  13:10,22 14:7,8
  21:21,21,23 63:2
  76:22 78:15
  107:20
motions 145:21
  146:6,18
motivated 223:24
move 39:23,24
  54:12 56:21
  118:10 205:6
  208:10 218:15
  223:15,16,17
  228:10 232:12
  270:10
moved 39:13
  99:12
moving 39:6
  44:17 206:10,11
  227:3 230:8 242:8
msg 35:2,18 36:5
  267:24
msge 60:21
  164:19 171:4
  203:19 205:17
multibillion 171:9

**multifactor**
183:17
**multiple** 46:5,5
60:20 70:12 99:14
139:14 188:20
217:1
**multiplied** 246:20
**municipal** 46:23
**municipalities**
149:14
**munis** 38:19
**must've** 146:8
**mute** 75:3 80:10
88:25 108:15
117:20 143:5
166:14
**mutual** 184:11

**n**

**n** 6:10,12 7:7,9
23:1 25:10 28:1
76:16,16 191:6,6
194:23 273:1
274:1
**naftalis** 26:8
**name** 28:11,13
198:4,5
**named** 129:19,21
**names** 39:16
**narrative** 225:17
**narrow** 155:17
**narrowly** 30:18
**nas** 9:1,4 12:17,22
27:16 42:16,20,24
43:4 48:21 61:12
154:1,1,2 212:3,4
213:16 216:2,3,8
216:11,21 245:9,9
248:10,11
**nation** 5:11 8:3
23:18 61:20,21
62:19
**national** 250:14
251:9,13

**natural** 37:11
**nature** 56:20
93:10 166:10
195:13 232:10
**navigators** 4:9
61:6
**ncsg** 224:5
**ndl** 109:6
**ne** 24:17
**necessarily** 77:4
**necessary** 91:1
92:16 96:16
109:13 187:11
188:17 190:25
221:2 225:18
226:7
**necessitate** 209:22
**need** 31:9 32:6,7
54:14 55:20 56:14
66:22 72:14 77:17
84:9 92:21 93:20
99:12 101:20
102:9 104:20
115:8 117:12
119:16 121:15
126:6 130:19
140:15 142:3,3,16
153:7 156:25
157:10 158:6
169:8 174:22
175:2 180:10
181:1 185:13
186:17 187:21
188:10,16 198:17
198:18 202:20
203:7 208:22
209:21 215:8,11
217:12 228:2
232:5 233:1,12,16
236:23 237:24
239:3 243:4 246:9
249:25 255:4
258:1,11,16

263:16 264:21,22
265:2,7,13 266:1
266:16,25 269:6
270:16
**needed** 39:24
93:12 111:4 148:4
148:4,7
**needs** 36:10 73:11
102:19,24 109:22
110:8 136:9 141:6
144:16 157:1
159:25 160:4
185:6 203:23
215:18 235:3
241:6 242:10,11
243:10,15 250:1
260:18 272:3
**negative** 147:20
222:25,25
**negotiate** 173:14
202:13 214:5
223:20
**negotiated** 55:17
92:6 96:15 135:24
136:16 169:12,20
179:12 186:19
191:11 194:18
196:1,8 207:23
**negotiating** 36:7
171:8 211:5,7
221:15 224:8,11
**negotiation** 64:16
91:16 172:1 207:4
**negotiations** 92:3
93:16 154:8
167:23 213:18
220:7,14 223:11
224:22 243:22
**neither** 35:17
141:8 225:3
**net** 37:18 161:11
162:23,25 163:1
168:16 250:22,23

**network** 4:16
23:19 62:20
**neutral** 243:24
**never** 32:24 50:15
68:19 99:11,14
104:16 125:4
149:7,8 179:18
212:21 234:9
243:2 261:24
**nevertheless**
145:23
**new** 1:2 23:6,21
24:4,11 25:4,4,19
26:4,11,19 27:3,3
27:11,18 34:24
55:17,20,21 56:10
62:15 67:12 100:9
166:11 170:8
180:18 201:4,7
202:9 213:13
216:24 252:6
254:5 257:21
270:18
**newco** 57:9,10,11
103:20 193:21
254:6
**newco's** 57:13
254:6
**newmeyer** 8:7
194:23 195:2
**newmeyer's** 197:6
**news** 41:8 101:21
228:16 233:7
**nice** 121:10
220:21
**night** 29:11,12,18
33:22 153:15
211:13 213:11
**nighters** 56:6
**nights** 205:22
**nine** 90:11,20
91:13 165:14
245:5 259:15,18

noat  73:7,8,8,9
249:21 253:7
nodding  87:10
142:13
nods  87:9
noise  80:15
166:12
non  9:11,18 24:2
46:16,20 90:12
97:22 126:13,18
126:23 130:4
137:12 144:4
145:4 146:1,11,20
152:13 154:1
173:21 180:25
181:7,20 193:9,13
193:16 221:25
224:6 227:24
245:8 248:10,11
248:16,22 249:10
250:9,10 251:1,2
256:20 265:25
noncommon
103:3
nonconsensual
213:2
nonconsenting
31:16,17 72:1
155:1,9,12
normal  34:6
normally  44:13
50:18 231:10
242:23
northwestern
5:11 23:18 61:19
62:19
notable  217:6
note  39:15 54:16
66:15 67:3 72:25
97:14 104:9
105:14 170:10
172:24 183:9,23
183:25 185:10

193:17 199:4
202:23 211:14
233:19 234:23
241:22 242:6
noted  194:3,15
197:15 216:7
230:23
notes  167:19
270:22
notice  2:7,8,15
9:15 10:24 12:14
12:19 14:10 15:1
15:5,5,9,9,19 16:1
16:11,16,19 17:1
17:7,7,17 18:2,12
18:17,17,21 19:6
19:18,21 20:1,17
21:1,6 22:1,9
75:14,20,22 76:3
120:8 144:13
157:9 235:15,16
235:18,19 237:11
238:7,8 259:8
264:11 266:12,12
267:2
noticed  52:9
210:25
notices  2:15 9:15
10:24 14:10 16:19
19:21 22:1,8
77:25 78:1 204:6
265:25 266:3
267:1 272:1
noticing  52:5,6
notion  37:5 38:20
70:16 72:23 73:6
74:17
notwithstanding
89:14 236:9
nuanced  184:22
null  230:19
number  28:7 30:3
30:6 34:21,22

43:13 49:21 57:25
59:2 65:16 74:8
74:13 79:20 101:7
106:5 115:25
122:2 125:12,23
126:11 139:22
146:12 147:15
162:5,11 163:1
164:17 192:22
198:23 199:4
215:1 218:9,22
228:6,18,25
229:13 232:16
257:11 267:20
268:21 270:25
numbered  261:3
numbers  61:16
145:14 148:17
177:16 247:3
numerous  197:11
ny  1:14 23:6 24:4
24:11 25:19 26:4
26:11,19 27:11
274:23
nysb.uscourts.gov
2:4

o

o  1:21 28:1 191:6
191:6 194:9 274:1
object  9:20 59:21
62:10 63:2 67:25
122:3 125:20
126:24 158:9
178:7 179:1
191:18 196:16
197:16 201:5
266:6,7,13
objected  106:10
134:18 179:2
201:9
objecting  2:17
10:1 201:3

objection  2:21,25
3:8,14,19 4:1,5,11
4:14,18,22 5:1,5,9
5:13,18,18 6:6,15
6:16 7:3,12,13,17
8:1,5,10,15,16 9:1
9:2,8,11,12,20
10:1,5,6,17,21
11:4,8,9 12:1,7,7
12:14,20 13:22
31:20 39:3 42:20
52:24 53:2 54:4
61:5,7 62:8,25
63:10 67:16,19
68:8,9,12 69:1
71:15 72:22 73:15
73:23 79:5,10,20
80:2 84:13 103:17
103:23 105:14,16
105:20 106:3,11
106:12,15,19
107:5,15,19
108:25 109:2
111:2 112:16
117:7,17 118:4,7
118:10 121:9,19
121:20 122:1,2,16
123:7 124:14
125:2,3,16,19
128:25 131:4
132:22 140:2,13
140:15 153:24
154:13 155:1
158:9,18 162:14
162:15 171:17
172:18 176:6
179:10,10 190:1,3
190:4,4,5,17
191:5,7,8,16,20
191:25 192:7
193:1,16,25 194:1
194:9,11,20,23,25
195:18 196:3,4,9

196:12,14,18,19
196:21,23 197:2,6
197:18,23 198:9
200:9,12,19,22
201:7 214:2
216:11 257:17
259:16,17 266:7
**objections** 13:17
  21:23 30:4 34:22
  41:9 42:16 51:13
  54:13 58:19 59:1
  59:2,6,22,23 61:4
  61:10 62:7,22
  67:2,23 68:4,6
  69:10,11,22 74:9
  74:9,15,19,25
  75:11 78:23 79:7
  79:8 80:21 87:23
  90:7 101:24 102:4
  105:24 106:2,4,5
  106:8,12,17,21,22
  106:24 108:10
  122:21 124:22,23
  124:24 125:1,12
  136:3 155:15
  175:18,18 181:25
  189:17 191:5
  193:3,4,10,10
  194:4 197:11
  198:11 200:15
  201:2 203:6 204:5
  204:7,13 208:15
  208:17,20 212:3
  216:4 260:5
  271:19 273:6
**objective** 94:15
  224:25
**objector** 194:24
  200:23
**objectors** 36:21
  59:18,20 62:7
  69:12 70:22
  147:13 189:22

234:15
**objects** 196:15
**obligation** 240:15
**obligations** 38:6
**obnoxious** 54:3
**observation** 210:2
**observations**
  58:21
**observe** 87:18
**obstreperous**
  39:21
**obtain** 83:18
  90:18
**obtained** 168:21
**obtaining** 184:17
**obtains** 249:13
**obvious** 104:15
  166:18 175:2
**obviously** 29:9,20
  29:22 31:11,16
  35:23 36:4,24
  37:2 40:20 41:21
  45:3,19 50:20
  51:6,9,20 53:17
  54:9 57:5,18 59:2
  60:24 62:9 63:11
  63:17 65:23 66:21
  69:15 70:13 73:25
  74:21 83:9 87:18
  90:12 92:22 93:16
  96:13 101:9,17
  122:1 124:24
  126:15 133:19
  139:14 141:19
  145:9,16 147:6,24
  150:17 151:16
  153:9 154:14
  157:12 162:24
  170:18 174:3,23
  187:20 192:9
  194:21 201:14
  204:17 215:10
  231:7 232:13

233:9 234:20
243:9 249:9 250:1
266:10 267:12
271:1 272:2
**oceans** 234:17
**october** 37:17
  229:4
**offends** 177:12,13
**offensive** 239:12
**offer** 131:10
**offering** 35:13
  246:23
**office** 80:1,9
  105:13 199:23
  202:8
**official** 5:15 13:1
  13:6 27:8 192:16
  192:22 242:20
  272:18
**offshore** 160:14
**oh** 54:6 162:18
  176:23 241:2
  254:3 263:21
**ohio** 4:20 7:23
**okay** 44:24 49:6
  53:6 54:16 55:14
  55:16 56:13 63:14
  75:16 76:10,18,25
  77:18 78:8,16
  79:11 80:8,18
  84:12,21 85:19
  86:12 89:19,21,25
  90:6 92:9 93:22
  94:6 95:6 103:16
  106:7 107:7,22,24
  108:21,22 110:24
  113:3,15 115:15
  117:9,16,20,25
  118:12,13 121:18
  121:22 123:18
  124:6,11,17 129:8
  129:15 130:1,21
  131:1 136:6

137:23 138:12
139:3,9 141:18,25
143:15,15 144:20
145:1 147:2 150:4
150:10 153:8,12
153:12 154:21
155:2,21 159:3,4
162:12 164:9,11
164:23 165:3,21
166:22 167:7,17
167:20 171:11
172:17 173:11,15
175:12,16 181:12
189:9,13,15,25
190:3 191:7,24
194:1 196:20
198:16 199:21
200:2,16,25 202:1
202:25 204:15,19
204:25 210:13,20
214:18 215:23
218:1,2,5 222:14
225:8 226:10,13
226:20,22 228:14
228:17,18 230:6
234:1,22 237:6
238:5 239:16,16
240:20 241:17,25
245:4 246:1
247:13,25 249:18
249:18 251:4,7
253:4,22 257:1,9
259:1,25 260:17
262:3,11 263:15
264:3,8 265:8,18
265:24 268:20
270:2,20,23
271:17
**old** 165:15 274:21
**olsen** 3:5,5 193:1
  193:2,2,5,8
**olsen's** 193:16
  194:25

**omnibus** 14:7
21:22 189:19
260:4
**once** 38:14 50:2
202:19 261:22
**one's** 187:15
**ones** 57:4 79:13
80:22 119:15
155:7 158:8
**ongoing** 49:14
102:22 185:2
212:9
**oo** 122:19
**open** 33:18 41:12
50:3,4 52:14 70:1
101:2 131:1
156:15 187:2
209:7 218:22
219:8 227:4
228:23 272:4
**opening** 40:4
122:5 213:5
**operate** 138:2
239:24
**operating** 57:10
57:10
**operation** 113:19
**operations** 254:6
254:7
**opiated** 250:20
**opinion** 98:3,3,5,6
99:4,9
**opioid** 34:4 43:25
60:11,12 73:5
116:1 118:17
186:15 187:13
193:7,23 195:11
195:21,25 196:7
204:1 209:2
212:11 222:6
250:19 251:9,13
**opioids** 184:3

**opponent** 71:24
72:1 102:2
**opportunities**
206:13
**opportunity** 81:2
203:21 204:9
208:4,21 209:19
266:12
**oppose** 193:5
**opposed** 53:25
88:5 100:21 131:5
136:11 142:16
148:8 158:12
171:1 179:11
182:4 187:1 190:5
235:1,6 256:18
**opposite** 35:3 36:6
36:14 65:10
148:10 171:1
195:24 231:22
**opposition** 7:17
21:22
**opt** 125:17 129:4
129:11,12 130:1
131:14,15 132:4,4
132:5,6,14,14
133:25 135:6,6
136:13,13,19,19
136:21,21 137:9
137:10,10,12
138:9,16,18 139:5
139:24 141:6,6,12
142:17,18 144:14
211:19,22 246:3
246:24 248:22
249:5 264:16,16
264:18,18 265:6
265:10
**opted** 264:21
**optimistic** 53:25
202:20 204:2
**opting** 265:3,5

**option** 137:5
143:24 263:13
264:13
**optionality**
267:23
**options** 120:9
135:16 214:11
**orally** 269:5
**order** 5:20 6:7,17
7:4 10:7 16:16
19:19 22:6 79:2
79:12 84:1 94:10
112:24 116:5
125:10 137:20
181:2 188:12
199:19 201:1
206:6 207:18,25
215:10 224:19
228:8 233:8
237:14 257:10
258:6,11,16,18
268:23,23,23
269:7,14,22,23
270:8,19 271:25
272:13
**ordered** 188:6
**orders** 184:9,13
184:14
**ordinary** 35:16
129:23 245:10
253:9
**organized** 33:6,9
205:4
**original** 43:11
50:23 55:12 59:2
107:12 112:6
140:10 171:3
191:3
**originally** 201:5
**originated** 229:5
**orleans** 23:21
27:18 62:15

**ortho** 6:9,11 7:6,8
**ought** 172:4
**outcome** 72:12
147:25 181:17
**outpatient** 116:25
**outs** 130:1 249:5
**outset** 28:25 132:9
143:19 205:12,15
**outside** 44:18 76:4
95:14 186:7 211:3
246:19 263:16
266:20 269:16
270:8,8,10
**outstanding**
217:20
**overall** 29:24
48:23 91:19
**overlap** 232:3
**overlapping**
192:23 238:16
**overly** 66:7
**overrule** 117:6
121:8 154:13
194:20 195:18
197:24
**overruled** 105:15
106:16,23 134:25
192:8 273:6
**overwhelming**
50:22 74:13 148:6
**overwhelmingly**
222:5
**owe** 86:23 227:25
**owes** 237:20,25
**oxycontin** 52:9
190:11 195:6,11

        **p**
**p** 6:8 7:5 23:1,1
28:1
**p.a.** 24:15
**p.m.** 263:6
**pa** 25:11

**package** 35:9
36:12 163:19
171:24 260:20
261:22
**packages** 156:9
171:10
**packet** 222:1
223:14
**pad** 208:10
**page** 21:22 63:21
67:5 97:15 159:20
170:9 220:16
223:6 236:8
237:12 239:17
241:19 242:14,14
242:17 243:21
244:16 245:5
246:1 248:1,5
251:8 252:9,11
253:24 254:3,10
254:16,17,19,23
255:7,22 256:4,13
259:15 260:1
261:4 262:13,15
262:18,23,25
263:5 264:4,11
265:22 266:2,15
267:2,2 271:6
273:4
**pages** 58:7,9,9
67:17,17,18
108:11 152:18
231:11,11 260:25
261:3
**paid** 42:8,10 44:2
44:7 45:24 46:14
49:22 71:4 100:23
104:22,22 110:1
125:25 132:20
133:14 245:16
248:11
**painfully** 34:1
166:17

**panglossian** 53:24
**paper** 56:24
166:11
**paragraph** 39:15
77:25 78:1 236:8
243:22 245:7,8
246:2 248:1,6
250:4,6,16,25
251:13 252:11
253:24 254:11,16
254:25 260:1,17
267:3 268:23
270:18
**parameters** 175:9
**parent** 235:16
**parenthetical**
84:16
**parish** 5:6,16
23:15,17 61:19,21
62:16,18
**park** 27:10
**part** 5:23 35:1
37:16 38:24 41:14
42:19 46:3 60:3,4
66:17 73:7,23
74:12 78:2 81:4
86:4 91:15,19
93:15 100:2
102:20 104:24
106:2 116:6,16
117:4 122:20
123:7 124:24
136:8,20 137:10
164:21 172:18
183:14 191:25
212:7 220:8 221:9
231:23 235:2
252:4 266:11
**partially** 50:10,11
**participant** 2:3
**participate** 43:15
44:6 110:22
203:20 267:6

**participated** 32:5
**participation**
201:9 209:11
**particular** 42:25
54:15 60:2 97:16
113:1 115:23
139:23 152:2
156:24 175:20,21
182:5 255:12
**particularly**
154:6,7 180:14,18
**parties** 28:7 29:8
29:15,25 30:1
31:14 38:6 40:24
41:13 47:6 54:14
56:23 57:18,21
58:12 59:15 60:20
61:3 62:11 64:21
66:16,19 67:20
69:22 71:2 73:2
74:11 75:21,24
81:6,12,16,17,21
82:1,2,3,3,8,11,17
82:19,21,23 83:5
83:9 84:11 85:14
85:15 86:10 87:6
88:7,12,13,14,15
88:18,20,22 89:1
89:6,12,13,15,21
90:2,3,4,11,18
91:12 92:2,5,19
96:15 100:16
122:24 123:11,20
123:23 129:3
142:23 147:13
156:1 161:25
168:14 169:13
171:7 172:3 181:7
181:7 182:10
186:5 188:7
192:12 194:19
195:23 196:10
200:5 205:17

207:11,16,20
210:5 213:19,22
215:14 218:16
220:22 221:13
223:18,23 224:4,8
227:17 228:12
229:15 232:13
233:19,25 234:1,5
236:13 240:1
241:9 243:7,11
249:16 257:15
260:11 261:20,21
261:24 263:12
268:1,18 270:9,14
272:5,10,16,21
**partner** 44:23
55:20
**parts** 191:25
**party** 33:15 43:16
43:16 49:7 51:16
63:20 64:18 66:8
69:21,25 70:13,16
85:10 88:3,16
89:16,17,18 146:2
152:11,14 154:11
170:21 171:6
182:9 183:9
184:18 192:4
206:21 207:24
221:10,11,11
227:13 236:5,19
236:22 244:4
245:6,14 256:18
256:20 261:11
271:13
**party's** 152:3
260:7
**party's** 224:1
**pass** 73:24 74:24
100:22 173:25
**passion** 61:20
**passionate** 171:1

passionately 33:9
34:7 65:12,19
74:21 234:11
pat 194:23
path 150:1 203:11
203:12 204:3
paths 131:9
patient 250:19
patrick 3:22 12:4
patsy 8:7
pattern 190:8
paul 3:16 4:2,2
8:19 10:18,19
11:10,10 24:13,15
24:20 80:12 107:8
152:5 256:9
pause 51:5 52:15
54:11 241:5
pay 37:5,6 49:25
50:1 92:16 100:11
222:3 253:13
payable 193:9
payers 245:6,14
paying 42:11
83:19 176:3
payment 35:6
90:21 92:20
103:21 127:15,17
127:24 128:4
154:10 168:22
193:12 250:7
payments 36:9
90:20 93:13
102:22 193:6
payor 43:16,16
49:8
payout 90:11
91:13,13
payouts 103:4,4
pays 48:7 237:19
pc 171:2,3
peabody 184:8
185:24

peace 143:2 213:8
pediatric 60:13
pen 70:24 199:6
pena 8:12,13
196:3,11
penalty 221:15
pending 58:22
73:4
people 30:15
31:22 33:12 34:11
36:16 38:2,12
39:7 45:21,22,24
46:8 49:4 56:8
57:24 66:20 68:14
68:24 81:15 84:24
85:25 86:2,6,19
87:15 92:15,23
99:17 100:3
101:19,22 104:21
116:16 117:13
119:9,16,18
120:11,12,16,22
122:7 132:11
133:19 134:23
135:2,15,23
136:11,13,15
137:1,5,8 140:3
140:10 141:7
142:3 147:8 150:2
154:7 157:7,11,24
158:3 162:16,18
162:25 165:22
168:3 169:8
170:24 172:7,10
179:20 180:10,13
181:25 182:2,15
183:14,17 184:23
186:8,19,20 187:7
188:13 190:7,10
198:17 199:2,5,16
199:22,23 221:20
223:16 227:1,8
228:1,2 230:18

235:12,19 236:4
240:24 241:1
242:4 243:2
245:10 248:9
252:7 253:9
256:19 257:22
258:20,22 262:6
268:10 271:5
people's 120:12
136:12 157:11
172:13 179:25
198:21
pepsico 152:5
256:10
perceive 45:25
percent 42:6,25
46:21 47:1 48:23
50:6,7,7,10 61:14
101:13 121:2,3
176:16 221:22
232:3 247:2,5
248:12,23 249:6
percentage 49:22
119:17
percentages 49:19
perception 224:1
perfect 80:7 87:4
216:17 240:23,23
270:23
perfectly 30:11
60:6 121:16
186:16 199:3
performed 47:5
221:14
period 90:12 92:3
108:9 143:12
158:8 177:16,16
216:8 240:8
periods 39:17
permissible
125:15
permission
267:17 269:15

permit 180:15
188:18
permitted 188:4
permutations
160:23
perpetrate 151:7
person 82:22
83:25 160:13
198:2 200:25
219:15 230:17
235:16 237:17,19
244:8
personal 37:22
41:11,18 42:16,18
48:20 118:15
119:1,21 125:13
125:25 126:10,17
126:22 131:7
132:8 137:1,6,20
138:1,11,16 145:3
145:22 146:1
153:25 191:10
192:21,22,24
196:24 198:2,6
200:7 210:24
211:2 212:10,20
212:21,23 214:14
264:12
personally 217:7
persons 11:14
37:25 38:1 81:13
82:19 83:18 84:24
86:17 87:13 88:7
213:22 235:12
perspective 40:11
49:15 93:20
156:12 161:22
218:15 219:12
220:23
pertaining 88:10
peter 11:2 12:8,11
25:9 121:20
124:16 196:13

peterson  7:15
petition  145:20
  237:16
pg&e  73:3 131:22
  132:2,2
pharma  1:7 2:1
  2:19,25 3:15 8:18
  9:21 12:9 13:4,7
  13:14 14:13,16,17
  14:21,23 15:3,7
  15:12,15,17,21,23
  16:3,7,9,14,22
  17:3,5,10,13,15
  17:20,23,25 18:4
  18:8,10,15,19,23
  19:2,4,8,10,14,16
  19:24 20:3,5,8,10
  20:13,15,19,21
  21:4,9,11,13,17
  21:19 22:3,11,16
  25:17 28:3 200:3
  206:18 222:12
pharmaceutica
  6:10 7:7
pharmaceuticals
  5:24,25 6:10,11
  6:12,13 7:7,8,9,10
pharmacies  5:19
  6:6 7:3 61:22
pharma's  3:8
phase  45:15,17
  49:1 60:7 159:7
  179:12 181:4
  190:13 191:11
  194:12,20 207:2
  233:6
philadelphia
  25:11
phone  153:23
  162:17 190:2
  191:6,23 193:2
  194:1,10,24
  196:20 197:20

200:25 267:15
  271:5
phrase  89:6
  213:21 219:14
  229:14,17,22,23
  229:24 243:23
  244:11 250:23
phrased  122:2
physical  195:4
physician  4:2
  10:18 11:9 106:4
  106:10 108:5
  109:7,15,17,20,24
  111:5,11,24
  114:10 115:4
  116:3,5
physicians  109:3
  110:9,12,16,17,21
  110:22 111:18
  112:13 117:1
pi  42:7,24,24,24
  43:1 61:14 136:16
  140:6 141:20
  142:10 154:1
  211:9 213:13,14
  213:16 214:15
  216:5 244:18,25
  245:7 246:4,5,6
  248:2,10,11,12,13
  259:19
pick  162:5 223:19
  264:7 266:21
picked  222:10
picking  247:2
piece  53:21
  119:20 122:19
  163:22
pierce  256:16
piercing  150:21
  151:5 152:12
  256:13
piling  17:17

pillsbury  24:1
pis  38:20 42:2,5
  140:7,24,25
  215:14
pittman  24:1
place  54:7 60:23
  66:8 122:16
  151:17 205:7
  209:14 232:14
  233:24 235:18
  245:23
places  70:3 74:7
  97:1 242:12 245:5
  249:13
plain  47:9 67:6
  74:3
plains  1:14 70:2
plaintiff  37:9
  147:16
plaintiffs  41:20
  148:9 213:14
  222:6,16
plan  3:1,8 8:6,11
  8:18 11:15 12:9
  12:10 13:4 14:15
  14:15,20 15:14,14
  15:19,20 16:2,6
  16:12 17:1,3,13
  17:18,22,23 18:3
  18:8,13 19:1,2,6,7
  19:13 20:1,3,8,12
  20:13,18,18 21:1
  21:2,10,10,16
  28:6,18 31:11
  32:3,16 33:12
  34:14,20 39:6,11
  40:19 41:6 42:7
  42:12 43:21,23
  44:7 46:13 50:16
  51:11 54:12,17,21
  55:2 56:17,19
  57:2,7,8,14 63:2,3
  63:21 64:2,5

66:21 67:24,25
  68:1,2,13,20 69:3
  69:19 71:2 72:6
  73:11,24 74:14,16
  80:3 81:7,7,19,20
  81:22 82:8 83:20
  84:25 85:1,25
  86:3,20 88:10,12
  88:21 89:12,22
  94:13 95:3,12,13
  95:14 96:9,21
  97:17,18,19,20,22
  97:23 98:15 99:13
  100:9 103:19
  104:2,2,3 105:6
  105:18 108:13
  110:1 112:16,22
  117:4 118:18,23
  119:22,25 120:13
  120:18,18 122:7
  122:11,13 123:12
  124:2 125:5 127:5
  127:9,11,18,24
  128:18 135:23
  138:19 139:17
  142:20 143:9
  145:24 146:1
  150:6 151:19
  155:23 156:24
  157:3 158:18,19
  169:1 172:22
  173:3 174:21
  175:4,19,21 176:2
  176:9 177:3,11
  179:8,25 180:11
  180:14,18 181:3
  181:19 183:9
  184:24 187:20
  188:1,1,11 190:4
  190:7,12,21 191:1
  191:19,19 192:4,6
  193:5,6,17 194:15
  195:12,16,23

[plan - possible]                                                    Page 48

196:7,10 197:3,17
206:17 207:3,8,22
209:4 210:11
211:7 212:5,14
213:3,6,9,11,17
213:25 217:21
218:8,12 219:1,5
219:8,22 220:6,7
220:8,12 222:11
222:16 223:11,21
224:3 225:3 228:7
231:6 234:23
235:1,4,5,6,18,21
236:9,10 237:7,14
237:21 239:15,23
240:7,15 241:8,18
242:4,8,17,18
244:19,19 245:2
249:4 250:2
252:20,21 253:16
254:23,24 255:13
259:13,16,17,22
260:2,5 266:6,7
266:23 268:2,2,13
268:22 271:25
272:3
**plan's** 191:9
**planned** 106:25
**planning** 61:17
**plans** 50:18 56:15
118:18 146:16
175:24 221:12
241:22
**plant** 222:13
**play** 240:9
**played** 41:14
221:5 243:2
**playing** 182:21
187:22
**plays** 56:3
**plea** 151:10
**pleading** 68:7

**pleadings** 227:5
**please** 75:1 76:12
89:6
**pleasure** 225:10
269:5
**pledge** 37:14
171:9
**pledged** 171:8
**pledges** 37:22
**plenty** 105:9
172:12
**plimpton** 226:15
**plus** 171:10
**pm** 272:25
**pod** 156:10
**podium** 58:22
74:24 153:14
154:20 215:3,20
**pods** 37:20 38:4
41:5 74:2 92:11
96:2 156:6,11
163:17,18 168:11
169:18,18
**point** 28:21 54:25
56:14 62:12 65:11
67:7 76:25 84:23
85:8 88:1,11,25
89:6 90:24 92:8
93:2 95:11,11
97:3,24 98:9
99:11,15,24
103:17 107:14
111:3 112:18,18
113:20 114:7
115:7 116:14
118:6 122:9
124:13 126:16
127:4 128:2,10
129:2 130:22
131:9,24 132:15
132:15,25 133:20
133:22,23 134:21
134:22,25 135:1,1

136:2 137:25
138:4,11,13
140:24 145:6
147:17 150:10
155:10 156:19
165:5 168:6 169:7
171:17 173:25
174:22 176:20
179:6 180:7 181:4
181:4 182:6,10,20
184:1 185:6
186:16 187:1
192:1,10 201:11
202:15,22 205:6
207:15 222:4
223:15,19 225:2
228:2,2 242:10,10
244:15 247:15,17
247:24 250:5
253:1 255:8,21
260:12,19 263:4
264:2 266:24
272:14
**pointed** 55:22,25
145:1 218:19
220:4,8 221:6
**pointing** 219:13
**points** 79:20
137:17 144:21
150:6 151:14
160:17 161:19
218:9 223:19
271:1 272:12
**poised** 231:22
**police** 70:20
183:23 184:4,7,16
185:1,1,12,17
**policed** 185:2
**policy** 197:14
**political** 177:15
177:16 178:5,14
181:1

**politicians** 183:1
**polk** 23:3 28:25
44:23 45:10 54:3
75:5 79:16 89:5,9
119:7 124:5,10
132:3 137:14
139:23 149:8
153:11 154:23
174:12 200:18
220:20 223:1
253:6 258:15
**poll** 120:25 121:1
**pool** 203:17
**popped** 61:2
82:10
**population**
250:20
**porteous** 23:14
62:15
**portion** 201:7
**portions** 201:3
**position** 11:19
74:21 98:23 99:17
100:4 159:11
166:24 181:23
186:8 218:12
219:2,5,8,22
221:1 222:12
223:11 225:4
255:10
**positional** 220:25
**positions** 65:9
272:17
**positive** 30:2
31:13
**positively** 35:17
**possibility** 52:3
66:11 102:4
109:21
**possible** 46:2
66:19 117:3
193:20 195:9
203:18 217:14

224:7 231:24
232:17 240:5,9
251:6 267:23
268:3
**possibly** 31:24
40:6 44:12 45:20
45:21 57:23 58:2
145:3 166:17
231:21
**post** 38:13 51:9
96:4 184:2 229:9
230:9 232:19
**pot** 43:17 73:9
**potential** 104:10
116:23 120:1
121:6 161:15
163:2 164:21
168:12 181:8
192:4 204:4
221:12 224:24
243:16
**potentially** 35:24
37:1 38:16 41:12
41:17,25 49:20
53:5 92:12 110:23
147:8 149:18,22
154:11 179:16
233:20 258:23
**power** 70:20
178:24 183:23,23
184:4,7 185:1,1
185:13,18
**powers** 184:16
**pplp** 57:14
**practical** 111:3
182:4 214:10
227:24 251:3
258:10
**practice** 89:5
137:4 248:2,3
257:12 263:11
**pre** 121:1 193:22

**preceded** 207:2
**preceding** 250:24
**precise** 59:13
146:12
**preclude** 196:10
197:2
**precludes** 185:24
**predicated** 131:8
**prefer** 240:9
**prefers** 149:2
263:1
**preis** 27:13
171:21 199:9
201:24 210:15,17
215:3,21 218:2,5
218:6 226:9,17
227:15 230:22
231:18 232:18
238:6,11,14,18
240:4,23 241:10
241:21 242:6
**preis'** 229:2 231:4
232:4,9
**prejudging** 187:4
**preliminarily**
107:17
**preliminary**
36:19 58:21
146:10 151:2
**premised** 128:13
**prepare** 114:2
157:8 252:14
**prepared** 77:7
84:2 99:15 149:24
210:7 215:14
**preparing** 113:6,9
117:10
**prepetition** 47:21
211:6 212:10,20
214:14
**prescribed** 118:16
**prescription**
190:11 195:5,10

**present** 71:17
84:20 227:9
**presentation**
29:25 170:6 215:5
225:20
**presented** 9:21
45:12
**presents** 203:21
**preserve** 155:18
**preserving** 182:23
230:10
**presiding** 174:4
**presolicitation**
271:1
**press** 101:20
121:10 139:19
164:5
**pressing** 30:4
216:23
**pressure** 30:20
213:19
**pressures** 30:15
**pressurized** 30:20
**presumably** 148:3
**presume** 188:12
**presumed** 255:13
**presumption**
141:6
**pretend** 70:8
**pretty** 30:25
39:14,16,16,18
44:19 52:23,23
53:22 64:17 67:14
70:2 94:21 99:12
140:16 150:8
154:9 158:2
190:12 248:20
257:5
**prevail** 33:14
**prevailed** 69:1
**prevent** 184:15
195:16

**prevention** 60:12
**preview** 36:17
**previously** 57:15
64:9 131:5
**price** 272:2
**prima** 140:12
**primarily** 35:3
244:2 253:24
**primary** 50:3
101:2 231:19
**prime** 119:7
175:25 258:16,25
269:8
**principal** 230:7
**principally**
137:18
**principle** 50:4
64:11
**print** 234:13
**prior** 61:23 94:17
95:3 172:22 194:4
209:25 217:13
222:17 225:6
231:20 239:19
242:19 250:9
253:25 259:16,22
268:2,18
**private** 37:9 45:18
49:8 50:1,2 101:5
191:12 194:12
205:18 206:5
207:5 209:19
212:13
**privates** 38:19
**privilege** 110:11
173:20,21 174:23
255:22,25 256:2
**privileged** 173:24
174:25 175:10,11
**prize** 241:25
**pro** 73:19 140:15
141:20 166:16
189:17 193:25

194:23 200:22
246:11,14 247:1
247:21 249:4
**probability** 102:1
**probably** 28:24
29:6 32:18,25
44:14,20 51:4
56:21 58:8 69:13
98:25 105:12
119:6 126:5 136:4
136:14 147:6
148:1 163:8
170:20,20 178:12
183:8 192:9
228:10,13 231:10
231:16 232:3
235:20 236:23
240:17 243:4,8
245:22 249:9
252:23 254:21
256:11,21 270:3
**problem** 40:25
68:18 72:7 113:17
115:13 116:18
141:5 144:12
150:14 152:21
162:21 172:4,5
179:18 184:6
214:15
**procedural** 125:1
125:12
**procedure** 136:12
137:6 138:19
235:18 256:1
263:24
**procedures** 2:15
2:16 9:3,14,15
10:23,24 12:15
13:3 14:10,11
16:18,19 19:21,21
21:25 22:1,8,9
43:3 76:20 77:1
94:11 95:9 106:13

106:13 117:11
125:20 128:11
130:23 135:6
136:20,21 137:22
138:17,18 141:9
143:19 198:20
211:13,19 228:8
234:21 244:17,23
246:4 254:12
255:7,9 261:4
265:12 267:3
268:22 270:19
**proceed** 35:18
51:21 64:11 71:3
134:3 241:11
243:16 258:2
**proceeding** 31:2
125:14 126:7
132:5,6 192:13
203:14 249:10
**proceedings**
226:1,4 272:25
274:4
**proceeds** 37:19
147:22 209:12
**process** 35:11
129:10,10 131:6
137:10,12 143:1
155:15 156:19
176:2,4 187:23
195:14 201:20
206:17 215:22
**processes** 212:9
**processing** 34:17
217:19
**produce** 119:5
**productive** 214:4
**productively**
41:13
**products** 193:7,23
195:11 235:21
**professional** 34:5
232:10

**professionally**
223:9
**professionals** 36:5
227:19
**professor** 73:19
121:21 122:18
139:24 149:2,5,12
173:22 256:15
264:10 265:19,21
**profile** 184:10
260:16
**prognosticated**
228:19
**program** 75:14
115:24,25
**programming**
203:18
**programs** 245:15
245:22
**progress** 124:21
202:11 206:11
233:1
**prohibit** 184:17
**prohibited** 187:14
**project** 211:5
**promise** 53:11
**promised** 65:7
**promises** 60:1
**promising** 203:12
**promptly** 257:24
**prong** 104:13
**pronouncing**
55:24
**proof** 76:2 118:15
132:21 133:14,16
216:15 250:8,21
**proofs** 134:17
**proper** 185:6
197:14
**properly** 62:24
195:3,17 198:8
**proponent** 180:11

**proportionately**
246:6 247:9
**proportions**
269:11
**proposal** 159:12
177:14
**propose** 243:15
**proposed** 2:25
11:19 16:16 19:18
55:8 94:10 112:14
182:8 202:14
213:24 218:12
219:5,22 243:1
257:10 258:6
271:25 272:13
**proposing** 74:16
**proposition** 38:23
**proprietary**
112:21,22 114:2
**propriety** 69:19
69:25
**pros** 159:24
**prosecuting** 204:4
**prospective** 272:4
**protagonist**
231:20
**protect** 103:19
105:9
**protected** 104:1
104:21
**protective** 112:24
**prove** 31:10 70:23
185:12
**proves** 65:11
**provide** 86:21
111:14,19 122:20
125:21,22 126:20
129:18,20 135:5
137:7 141:10
142:6 144:13
193:6 201:2 208:7
250:11 260:8
265:2,7,10 271:22

**provided** 32:9,12
38:8 48:25 50:24
89:14 111:5
136:22 143:20
165:7 166:24
167:1 173:20
184:13,14,16
188:3,6 221:12
223:9 237:14
238:1 264:21,22
266:20
**provider** 112:5
**providers** 110:15
110:18 113:21
114:15
**provides** 84:1
97:16 98:15,16
135:4 180:23,24
190:7
**providing** 82:1
123:1 126:4 205:8
211:10
**provision** 31:11
58:12 82:8 83:16
177:20 235:12
250:12 252:21
**provisions** 34:19
45:19 100:25
217:4 220:11
266:8
**proviso** 89:13,14
90:4 184:17
**public** 6:22 10:12
14:2 46:13,14,15
46:19,24 47:2
49:16,23 58:5
61:14 73:7 101:6
101:7,8,10 102:21
107:19 167:9
172:21 181:21
182:13 190:20
191:12,13 194:13
196:6,25 197:13

197:14 198:7
200:11 203:3,16
203:24,25 206:25
207:4 208:7
212:13 221:17
224:2 225:17,22
225:25 226:2
227:6,25 229:3
253:14
**publication** 76:3
77:25 78:1,7
252:15
**publicly** 224:18
225:21
**publish** 163:22
**publishing** 164:1
**pull** 56:5 182:16
**purdue** 1:7 2:1,19
2:25 3:8,14 8:18
9:21 12:9 13:4,7
13:13 14:13,16,17
14:21,23 15:3,7
15:12,15,17,21,23
16:3,6,9,14,22
17:3,5,10,13,15
17:20,23,25 18:4
18:8,10,15,19,23
19:2,4,8,10,13,16
19:24 20:3,5,8,10
20:13,15,19,21
21:4,9,11,13,17
21:19 22:3,11,16
25:17 28:3 47:12
47:15,22 48:13
83:24 103:21
104:12,16 118:17
118:21 119:2,5
120:2 130:6
190:23 193:7
196:2 200:3
222:21 235:21,24
235:24 236:3

**purdue's** 52:10
195:21,22
**purporting**
153:17
**purpose** 88:21
91:24 133:3
169:13 182:3
195:8 244:21
**purposes** 51:4
60:19 114:10
115:2 128:4
137:21 180:9
205:12 220:10
237:22 239:4
244:11 252:14
255:15
**pursuant** 15:20
17:2 19:7 20:2
188:4 246:3
249:11
**pursue** 113:24
149:15 172:13
**pursued** 124:14
**pursuing** 80:1
103:18 105:13
118:6,6 155:10
**purview** 115:6
**push** 94:19
**pushing** 103:23
156:18
**put** 28:12 37:3
45:14 67:4 68:24
75:3 79:2 93:3,24
105:15 108:8
117:20 119:5
142:10 143:3,25
148:25 155:25
162:4,10 164:15
165:25 170:8
175:3 177:14
179:14 199:24
202:1 205:6
213:19 214:9

224:4,21 225:19
225:22 229:2
230:21 240:25
241:21 244:10,13
253:18 256:3
259:11 260:10,15
**putative** 109:5
**putting** 54:21
60:22 108:23
167:13 209:14
214:10 220:2,14
230:20 231:17
252:24
**puzzled** 102:21

## q

**qualified** 246:7
**qualify** 110:22
**quality** 166:10
**quantum** 49:19
**quarropas** 1:13
**quarter** 199:22,25
**question** 33:19
48:2 54:14,25
66:20 68:2 70:1
77:10,19 86:19
88:10 95:8 105:6
118:15,20,20
124:12 125:7
134:13 135:2
166:5 173:18
174:9,12 184:1
220:16 228:9
258:10,11 268:3
**questions** 56:18
58:23 76:9 77:7
78:12 122:3,9,9
156:15,15 157:25
158:1 159:23
217:23 222:11
226:11 257:11
**quick** 91:4 124:20
139:12 143:17
156:18,19,19

267:19
**quickly** 105:21
 204:3
**quiet** 211:1
**quinn** 25:6 118:8
 118:8,13 119:17
 119:24 120:5,11
 120:16,24 121:5
 121:13
**quite** 36:23 45:20
 49:18 52:9 53:9
 66:15 69:15,17,19
 71:24 73:3 96:7
 101:6 107:10
 196:15 205:16,21
 206:2 211:14,24
 218:23 221:23
 224:11,20 226:25
 229:7 231:8 235:8
 257:5
**quote** 39:20 70:11
 102:12
**quotes** 254:25

            **r**

**r** 1:21 2:17 3:21
 11:5 12:3 23:1,23
 27:20 28:1 99:8
 183:11 194:24
 274:1
**rachmuth** 8:19
**radically** 73:10
 149:16
**raise** 33:25 51:16
 76:12 82:13 154:4
 156:15 157:8
 187:24 194:22
 213:4 262:11
**raised** 54:25
 106:12 111:8,12
 122:21 131:3
 133:23 145:6
 159:5 168:5
 183:21 194:21

195:19 196:11
 198:10,19 208:14
 208:25 213:10
 216:10 255:21
**raises** 158:7
**ralph** 3:4,5 23:23
 62:14 193:1,1
**randolph** 7:20
**range** 101:11
**rare** 71:16,17
 261:23
**rarely** 87:9
**rata** 246:11,14
 247:1,21 249:4
**rationale** 91:12
 103:22 194:18
**rationales** 92:20
**raymond** 11:18
 11:22 26:2 81:11
 225:15 226:18
**rdd** 1:3
**rdd.chambers** 2:4
**reach** 202:21
 204:8
**reached** 75:23
 200:12 221:19
**reaching** 165:21
 177:5 257:21
**react** 257:23
**reacting** 162:13
**read** 45:21 52:23
 58:16 70:22,24
 95:1 108:21 118:4
 118:4 122:1,4
 153:19,21,23
 157:8 183:8
 185:11 189:6,9,12
 191:7 196:23
 242:5 253:9,12
 264:24 270:17
**readable** 156:5
**reading** 61:16
 82:7 89:20 169:23

245:10
**reads** 89:14 189:2
**ready** 30:13 32:6
 32:7 40:8 44:15
 54:11 69:18 74:12
 101:18 229:16
 233:8,20 234:13
 234:13 242:24
**real** 92:20 135:20
 157:13,14 211:2
 232:23 270:10
**realize** 126:23
 169:25
**really** 34:24 39:9
 39:10 41:7 43:4,7
 50:4,9 52:17
 56:19 66:16 67:22
 69:8 70:23 76:25
 81:14 91:23 96:1
 96:6,7,7 100:11
 101:21 106:20,20
 113:5 121:3 122:9
 125:17 132:11
 133:23 134:23
 137:9 139:25
 144:23 147:14
 148:5 153:21
 154:4 158:6 162:1
 168:23 169:8
 172:9 174:23
 175:1 176:6,7
 178:20 179:7
 181:9,24 182:24
 184:6 190:4,18,21
 190:25 191:3,25
 196:15,21 197:23
 203:6,9,15,21
 204:10 207:14
 208:11 220:12
 227:16,22 232:18
 241:3,4 243:17
 244:8 248:5
 253:12,23 256:8

256:14 258:5
 270:16 272:10,18
**reason** 34:7 64:9
 65:3 68:19 72:18
 90:23 109:11
 117:5 125:22
 142:14 158:5
 169:20 170:22
 175:7 179:20,21
 179:22 197:2
 214:17 226:2
 235:1 261:11
**reasonable** 32:15
 36:10 67:10 68:3
 101:15 151:17
 163:21
**reasonably**
 114:16 131:16
 146:5 154:6
 190:16
**reasoned** 98:18
**reasoning** 11:4
**reasons** 104:16
 191:16 197:1
 198:7 221:1,5,19
**receive** 81:25
 222:16 246:4
 250:7
**received** 2:21
 153:16 163:24
 173:4 222:9 246:5
 249:10 252:12
 263:13
**receiving** 81:18
 84:25
**recess** 200:1
**recipients** 60:10
 252:13
**recognize** 95:11
 98:23 100:19
 114:8 130:24
 195:3 203:13
 221:24

**recognized** 104:6
**recognizes** 185:16
**recognizing** 175:1
**recommend** 242:8
242:8
**recommending**
269:16
**recompense** 65:22
**reconcile** 260:1
**reconsider** 157:2
**reconsideration**
3:11
**reconstruction**
3:1
**record** 101:22,23
108:23 139:22
143:23 154:19,23
155:18,25 185:7
189:11 200:2
202:23 212:7
214:5,5,9 218:5
240:6 257:3
271:22 272:8
274:4
**recoupment** 239:2
**recover** 126:11
162:7 191:10
**recoveries** 41:18
41:20 49:23 50:12
121:7 213:17
**recovering** 110:23
**recovery** 118:24
135:16 148:3
184:18 217:16
246:21 247:4,22
248:23,25 249:4
249:14 265:25
**redo** 270:7
**reduce** 246:7
253:13
**reduced** 245:12
246:11,13 247:6,9
249:11

**reduction** 246:3
249:12
**refer** 151:24
215:6 267:1
**reference** 11:20
86:5 88:13 110:17
112:10 147:5
152:19,22 168:20
251:19 255:1,5
256:2,9 260:1
263:5
**referenced** 62:6
85:9 86:18,19
229:8
**references** 66:11
146:17 183:24
198:3 251:8
256:25
**referred** 210:3
213:7 215:11
227:11
**referring** 223:21
224:9,10 226:17
247:10 265:20
**refers** 237:23
238:25 262:13
266:15
**reflect** 228:11
**reflected** 209:24
**reflecting** 211:7
**reflection** 201:22
**reflections** 201:25
**reflects** 181:22
191:16 213:9
**regard** 62:13
80:19,22 81:3
87:21 102:20,23
175:21 178:1
180:20 185:10
**regarding** 12:1
84:23 103:14
106:19,25 121:6
202:11 264:12

**regards** 196:8
**regional** 180:25
180:25
**registry** 250:14,15
**regulatory** 184:16
240:12
**reimbursed** 41:22
**reimbursement**
239:2
**reinvent** 139:7
**reiterate** 225:2
**reject** 97:18
120:19 271:24
**rejected** 57:16
**rel** 3:21 12:4
**relate** 35:1 36:21
**related** 2:10,22
3:15,20 4:6,14,18
4:22 5:1,5,9,13,20
6:5,7,17 7:2,4,14
7:18 8:1,6,7,11,12
8:18 9:3,9,16,21
9:22 10:2,2,8 11:1
11:5,15,20 12:2
12:10,16,21 13:5
13:11,17,23 14:12
14:21 15:6,10,16
15:22 16:2,7,12
16:21 17:4,8,14
17:18 18:3,9,13
19:3,9,14,23 20:4
20:9,20 21:3,8,12
21:18 22:10,15
40:9 81:11,12,16
88:11 94:9 96:4
106:18 112:1
130:6 184:3
212:11 216:8
250:5,19,20 256:3
**relates** 42:14
56:17 258:5
**relating** 202:18

**relationship**
150:24 177:17
185:2
**relatively** 34:22
261:23
**release** 37:24
81:18,25 82:8,20
82:22 83:6,10,18
85:10 88:4,9
121:11 122:24
123:20 169:1,4
179:19 183:9
185:10 192:3
229:19 230:6
235:11 236:6,10
236:12,12,18,20
236:22,25 237:4
**released** 66:13
81:5,6,8,21,24
82:17 84:2 85:14
86:1,2 88:7,15,16
88:18 89:13,15,17
89:17,21 90:2,3
165:8 170:9
183:20 235:24
236:14,19,21
**releases** 38:10
53:5 69:21,25
70:13,16 75:25
80:24,25 81:5,9
81:13 82:1 86:21
87:20,21,23 89:2
89:7 90:13,18
122:23 126:23
146:11 151:19
152:8 176:11
230:16 254:25
255:3,4
**releasing** 82:2,3,8
82:11,17,19,21,22
82:23 83:5 84:11
213:22 236:5

**relevant** 137:21
202:17 249:16
**relied** 99:3 106:2
165:15,21
**relief** 34:12 192:3
**reliefs** 219:17
**rely** 244:22
**remain** 33:18
34:23 40:4 90:8
205:21 216:23
234:13
**remaining** 28:17
34:10 67:2 68:4
74:8 80:22 106:17
129:23 186:5
206:3 209:21
227:4,23 234:15
270:11 272:4,14
**remains** 209:6
**remarked** 159:25
**remarks** 199:7,16
204:24 215:2
226:25
**remedies** 42:2
123:5 257:7
**remember** 28:11
43:8 67:5 165:10
165:11 229:4
231:11
**remembered**
216:16
**remembers** 37:16
60:6
**remembrance**
195:17
**remind** 123:8,10
159:7
**reminded** 39:24
**remote** 38:23 52:3
**remotely** 37:12
148:14
**remove** 52:11

**removed** 169:8
**renders** 212:14
**reopening** 170:16
**reorganization**
3:9 14:16 15:15
15:21 17:3,23
19:2,8 20:3,13,19
21:3,11,17 50:17
184:2 206:18
207:9
**reorganized**
184:18
**repaid** 237:24
**repeat** 28:11
61:15 122:25
183:6 216:14
**repeatedly** 207:12
**reply** 11:13 14:7,7
21:22 39:15 58:14
58:15 62:6 72:19
79:3 80:3 118:4
122:2 183:6
189:18 208:20
260:4
**report** 42:3
253:12
**reported** 184:12
**reporter** 28:12,13
230:1
**reporting** 38:3
**reports** 166:4
252:15
**repository** 138:22
172:21 174:16
219:19
**reposted** 3:4
**represent** 62:16
140:8 153:17
228:1 240:6
**representation**
93:9,12 192:12,14
192:15 251:17

**representations**
271:2
**representative**
109:5 231:8
**representatives**
176:15 216:6
**represented** 32:20
109:14 121:21
248:10
**representing**
47:20,25 73:20
109:4 154:6
205:18 216:20
262:16
**represents** 192:22
**request** 28:4
76:20 165:2
171:18,25 190:18
190:18 192:25
197:7 217:10
233:14
**requested** 39:7
75:20 111:13
**requests** 63:18
103:4 204:6
**require** 2:2
111:23 116:22
136:22 157:3
224:3
**required** 93:13
100:21 115:1
117:2 166:8 188:9
205:16 220:17
241:13 250:11
255:16
**requirement**
58:17 88:3 188:21
192:13 252:24
264:12
**requirements**
38:3 109:16 238:2
**requires** 71:23
201:8 231:14

235:5 240:11
259:3
**reservation** 62:9
100:8
**reservations**
200:6
**reserve** 49:7 63:1
100:13 103:14
108:9 150:17
153:9 204:13
209:18 243:19
257:7 258:3
**reserved** 63:12,13
69:16 154:16
208:19
**reserves** 61:9
87:22 177:23
**reserving** 41:25
59:16,20 216:4
243:16 258:23
**resolicited** 187:21
**resolution** 42:16
42:19 43:5,7
45:16 47:16 48:11
60:22 134:3
175:10 177:5
191:11 202:11
204:8 206:25
208:6 211:13
214:12 218:16
219:25 224:6
245:6
**resolutions**
202:14
**resolvable** 225:1
**resolve** 31:23
34:10 40:6 53:10
53:12 55:9 151:17
156:15 204:11
206:14 209:6
216:8 217:20
224:24 227:4

**resolved** 29:14
30:6,21 31:19
33:6 34:21 39:25
40:1,15,16,22,23
41:1 42:4,13,18
43:18 44:7 51:3,3
51:14 53:2,13,14
54:4 59:13,14,20
59:25 60:17,18
61:4,12,12 67:16
79:4,5 80:21 84:1
101:21 102:5
141:1 172:23
202:16,23 215:12
216:11 219:9,20
225:6 228:20
229:20 230:7
232:15 233:7
**resolves** 42:15
**resolving** 29:11
203:12 227:9
**resources** 65:17
65:21 147:24
149:20
**respect** 2:17 9:16
10:25 13:2 14:12
16:20 19:22 22:2
22:10 30:1,7
31:15,18 34:24
35:11 40:10 43:6
48:15 51:2 58:6
61:4,25 62:9
63:12 66:3 69:21
70:25 71:10,19
73:14 83:18 87:20
90:4 100:20 123:4
125:7 130:22
140:5 145:7
150:19 155:23
156:1 158:18
159:5,5,8 161:16
165:12 168:5
175:21 194:4

204:13 208:2,24
211:21 213:24
215:4 229:1,21
231:3 236:16
238:24 261:20
267:20
**respectful** 149:4
265:19
**respectfully** 63:1
69:4
**respective** 62:25
191:15
**respects** 59:21
259:14
**respond** 213:5
226:8,9,11
**response** 9:7
11:13 13:16,16
39:4 80:23 83:2,2
90:25 91:4 105:24
106:14 140:15
145:16 212:7,17
226:2
**responses** 182:7
**responsible** 42:19
**responsibly** 74:20
**responsive** 39:2
63:17 210:8,12
**rest** 42:11 59:18
72:20 228:5
232:24 237:7
260:10 271:12
**resting** 37:22
**restructuring**
9:21 57:19
**resubmit** 270:12
**result** 185:20
213:2 216:10
219:21 223:4
**results** 158:14
168:12
**retain** 145:9,13

**retained** 57:17
66:18
**retired** 3:6
**revenue** 193:7
**review** 28:19
100:12 113:9
169:11 227:10
242:16 254:1
272:7
**reviewed** 54:17
80:2,3,3 158:8
190:3 227:10
243:9
**reviewing** 261:12
**revised** 16:16
19:18 258:7 271:3
**revisit** 137:24
138:11
**reward** 246:19
**rewards** 247:8
**rewind** 30:9
**rewrite** 109:8
**ridiculously**
241:18
**right** 31:3 35:11
35:22 37:9,10
41:18 43:15 44:5
45:24 46:16 47:10
48:15,18 52:7
55:12,24 56:13
62:10 63:7 64:4
66:4 68:7,17
71:23 73:11 74:23
75:2 76:12 77:20
83:3,11,16 85:17
85:18 87:8,18
89:19,21,25 90:6
91:23 94:6,12
96:10 97:5,7,12
99:19,25 100:13
100:15 101:2,4
103:12 104:17
105:3 107:9 108:9

108:24 110:10
111:4 113:10
116:7,13 117:1,16
124:8,11 128:6,17
128:19 129:13,13
129:15 130:9,11
130:17,19,20
131:2,19 132:13
133:2,8 134:11
135:12,12 136:8
138:21,24 139:8
140:7 141:4
143:10 144:18
149:12 151:20
159:1,16 160:7,17
160:20 161:8
163:9,13 164:25
167:4,10,12
171:19 174:14
175:12 178:12,20
179:11 180:6
181:17 185:15
187:5,12 188:18
189:9,13,21 193:2
194:11 198:16
200:23 201:1
202:25 204:15
211:24 212:12
214:14 215:15
218:2 220:8 222:3
224:4 226:20
227:7 229:23
233:9 237:6,10,13
239:13 240:11
241:17 246:13
247:7,20 251:7
253:22 254:10
257:9 259:20,21
259:25 262:3
263:3,9,18 266:1
267:9 269:3,24
270:1,6,13,20
272:24

**rights** 41:25 49:7
55:3 59:16,20
61:9 62:9 63:2,11
87:22 100:8
103:14 150:17
152:1,3 153:9
184:25 200:6
204:13 216:4
238:23,25 239:5
239:12,12
**rings** 230:23
**risk** 37:2,7 38:13
38:21 52:12 99:18
160:15 186:20
**risks** 30:17 121:7
131:16 134:2
172:2
**river** 234:17
**road** 274:21
**robert** 1:22
**robertson** 23:10
58:18 79:10,15,16
79:19,22,24 80:7
83:3,4,7,14 85:6,7
85:17,21 88:25
91:5,6,14,20,22
95:19 258:14,15
258:24 259:7,24
**robust** 143:14
**rodeo** 60:23
**role** 195:21 221:5
243:2 254:4
**roll** 148:16
**rolling** 57:6
265:17
**room** 1:13 106:10
108:5 109:3,7,15
109:17,20,24
110:9,11,15,17,22
111:5,11,24
112:13 114:10,14
115:4 116:3,4,25

**rothstein** 4:2,3
10:18,19 11:10,10
24:15,20 107:6,8
107:8,16,24 108:4
108:6,19,22 109:1
110:25 111:19,20
112:6,8,17 113:4
114:6,25 115:13
115:16,22 116:8
116:12,20 117:8
**roughly** 249:5
**round** 108:18
**rubric** 65:2
**rule** 196:16 259:9
**rules** 129:23
178:1 259:3
263:21 272:2
**ruling** 99:3
172:16 180:3
269:25
**rulings** 271:19
273:3
**run** 53:3 87:11
119:6 121:7 157:5
207:7
**running** 53:2 66:6
204:4
**ruti** 99:2

**s**

**s** 2:11,22 3:16,20
4:2,2,6,15,19,23
5:2,6,10,14,21 6:8
6:18 7:5,14,18 8:2
8:6,7,11,12,19 9:3
9:4,9,17,22,22
10:2,3,8,18,19
11:1,5,10,10,15
11:21 12:2,10,16
12:16,21,22 13:5
13:5,12,17,24
14:12,13,22,22
15:6,6,11,16,22
16:2,8,8,13,13,21

16:21 17:4,9,9,14
17:14,19,19,24
18:3,4,9,9,14,14
18:19 19:3,9,15
19:15,23,23 20:4
20:9,9,14,20 21:3
21:8,12,18 22:3
22:10,11,15 23:1
24:15 25:6 28:1
99:8 190:1,1
191:6,6 194:9
211:25
**s.d.n.y.** 98:20
152:7 183:12
184:20 201:16
**sackler** 11:14,18
11:22 26:2 31:16
37:25 38:1 41:5
63:23 81:10,11,15
90:11,21 92:11
123:20 159:21
162:22 163:17
166:4 176:12,12
199:12 206:22
215:7 220:9 221:8
221:15 223:21
225:15,16 226:15
226:18,19 228:19
232:25 244:3,5
254:4 256:5
272:21
**sacklers** 35:3,21
36:6,14,25 38:11
40:10 41:2 53:3,8
53:19 55:15 64:12
64:12 65:7 83:19
92:3,14,17,19
93:7,12,14,20,23
145:20 146:7
147:17,24 148:3
148:10,14,24
149:5,17 150:22
152:25 156:24

160:5 161:5,10
164:14,16 167:24
168:3 170:6 171:2
171:7 182:8 184:1
205:19 206:4
209:20 213:12
224:6,10,21 228:5
230:17 231:20,22
235:25 236:2
261:25 267:21,24
**safety** 250:22,23
**sale** 193:22
**satisfaction** 45:16
71:23
**satisfied** 67:23
70:25 71:9 74:11
216:19 252:25
**satisfies** 44:3
**satisfy** 66:24,25
71:19 125:10
179:16 272:1
**sausage** 142:22
**save** 50:19
**saw** 65:4 105:13
159:12 213:20
**saying** 31:6 41:16
45:14 60:9 87:12
93:15 98:4 102:19
104:24 105:4
108:22 110:2
114:17,22,23
115:8,16 116:9
120:19 121:16
127:6 129:22
133:1,6,9,11,12
133:23 135:7,9
142:14,17 144:13
145:12 160:15
161:8 162:4,13,22
164:2 166:9 175:6
176:16 178:6
185:9 196:16
205:14 207:22

239:25 242:17
243:11 246:21
262:5
**says** 44:21 52:4
82:16,18 84:16
87:6 88:16 93:3
98:5,5,13 102:10
112:8 121:1
127:11 129:16
134:17 152:10
164:14 173:23
178:4 181:3,3
185:12,12 188:1
189:3 193:8
235:23 236:9
237:13,17 244:7
244:16 245:11
246:2 248:9,10
250:6,8,9,16
251:1,10,14
252:11 253:19
254:4,12,19
259:13,15,19
260:3 261:5,9
263:1 267:3
268:23
**scale** 143:8
**scene** 47:20
**schedule** 6:17
10:7 35:6 42:11
57:16,16,17 88:13
258:7 259:10
260:10 270:15
**scheduled** 2:9
21:7 28:4 271:15
271:15
**scheindlin** 152:7
**school** 6:19,20,21
6:23,24 10:9,10
10:11,13,14 13:25
13:25 14:1,4,5
25:8 26:16 60:12
60:24 107:19

108:2,2 153:6
200:11 203:3,25
208:14,16 209:1
251:24 252:2,6
**schools** 6:22 10:12
14:3 31:19 60:2,4
60:9,10 61:14
67:21 203:24
208:25 209:5
**schwartz** 26:15
200:11 203:3
**schwartzberg**
3:16 24:13 80:9
80:11,12,15,18
82:9,18,24 83:16
84:9,22 85:3,8
86:14,23 87:18
90:7,9 91:10,18
91:25 93:4,25
94:6,8,13 95:7
97:2,6,8,10,13
99:19,25 100:7
101:6 102:24
103:1,7,10,13
105:23
**schwartzberg's**
93:2
**scoops** 45:5
**scope** 219:17
**scott** 9:4 12:16,22
15:11 27:20 216:1
**scotti** 3:11 194:9
**screen** 28:14
191:7 210:15
**scrolling** 167:18
**scrooge** 160:19,21
**sdny** 256:11
**se** 52:1 189:17
193:25 194:23
200:22
**search** 119:6
217:8

**second** 11:8,15
12:8 17:1,22 18:3
18:7,13 20:1,12
20:18 21:2 22:14
34:16 42:14 52:16
52:18,22 53:4
54:11 62:4 63:16
70:4 72:15 76:19
78:18 83:13
105:21 107:18
110:4 125:23
126:4 128:10
133:16 147:4
149:11 151:24
167:24 170:4
172:20 177:10
193:12 198:23
214:22 215:3,12
218:11 219:4
222:4 236:7 238:7
241:4 243:25
244:1 246:1 250:5
252:11 254:10
256:17
**secondary** 272:11
**secondly** 98:1
183:4
**seconds** 228:11
229:3
**section** 36:11,20
46:13 63:21 66:14
67:12 81:7 82:14
100:8,9 134:16
152:18 160:3
167:13 170:8
188:1,3,5 189:2
236:11 238:1
245:10 255:1
266:14 271:23
**sections** 74:2
107:11 242:13
**secure** 202:20

**securities** 35:13
**securitization**
35:12
**security** 35:9,22
169:17
**see** 7:14 38:2
39:15 52:18 56:11
60:8 61:2 64:13
66:15 71:20 75:7
88:15,18,21 90:3
93:6 107:5 115:8
117:1,5 118:18,24
124:16 146:21
157:14 176:24
179:15 189:19
208:21 210:9,15
214:7 218:4 247:7
252:19 255:4
262:6 263:5 267:8
268:19 269:20
**seeing** 47:17
172:8 211:16
267:12
**seek** 42:1 83:17
**seeking** 90:12,13
138:17
**seeks** 193:12
197:21 216:13
**seen** 36:3 111:14
226:6 234:9
261:24
**selected** 251:22
**selection** 254:5
**selling** 193:7
**semitic** 226:6
**send** 69:4 84:13
135:3 176:9 215:9
243:11 257:23,24
**sending** 261:15
**sense** 34:6 47:23
56:21 66:17 75:12
77:3 117:13 129:1
201:23 218:22

sensitive  166:9
  195:3 209:9 252:2
sent  132:2,9
  211:15 233:2
  257:15
sentence  74:5
  93:3 102:10
  243:25 244:16
  245:11 246:2,21
  248:1 252:24
  253:18,25 254:4
sentences  93:24
sentiment  206:11
separate  37:19
  41:8 42:23 43:2
  43:16 154:2
  178:17 212:4
  216:12,13 231:14
separately  43:22
  44:6
separating  211:21
september  165:10
series  95:25 96:6
serious  52:23
  67:22 171:6 227:1
  227:8
seriously  52:25
  229:7
seriousness  58:10
servants  228:1
serve  182:13
served  221:10
service  250:19
services  5:23
serving  76:1
set  40:21 42:15
  44:2 80:24 81:1
  91:6 137:7 151:20
  153:1 159:24
  163:19 177:25
  193:19,21 201:5
  218:10,18 224:12
  230:19 232:23

260:12 269:1,24
  270:10 271:21
setoff  239:2
sets  36:13 75:19
  104:4 154:5
  168:11 199:16
setting  123:19
  173:22 182:13
  201:1
settle  219:5
settled  187:13
settlement  40:21
  41:10 43:11 57:18
  63:23 65:24 81:14
  85:12,13 91:3,8
  93:14 94:14,23
  95:18,23 104:14
  123:1 151:3,10
  152:15 156:25
  159:21,24 160:9
  163:20 164:22
  167:23 168:4,22
  176:12,12 182:8
  186:6,21 205:7,7
  206:22 210:10
  218:12 219:23
  222:13 223:22
  239:17,18 244:2
  256:5
settlements  207:8
  217:2,11
settling  71:2
seven  30:5 56:4
  94:20,24 95:13
  96:11,20,24
  152:18 157:9,15
  157:19,21,23
  158:19,22 159:20
  259:20,22
share  209:11
shared  148:21
sharehold  66:1

shareholder  38:6
  38:7 57:18 75:25
  80:23,25 81:4,9
  81:12 85:9,13
  89:17 90:3 94:14
  94:23 122:23,24
  123:1 236:12,21
  239:17
shareholders
  75:21,24 85:15
  151:6
shares  45:5 51:18
sharper  70:19
sharply  44:13
shaw  24:1
sheet  35:15 49:1
  85:12 95:17,23
  96:3 157:14
  169:12 172:8
  233:5 251:21
sheets  40:17 45:9
  45:15,18 95:25
  96:7 123:5 156:12
  164:22 169:16
  206:24 215:7
shkolnik  7:19
shore  13:12 25:21
  142:21 143:5,6,6
  199:7 210:20,22
  210:23 214:19
  215:4,11,17
  219:13 230:22
shore's  210:18
short  35:14 108:9
  166:15 174:13
  198:17 216:7
  234:8 253:23
  257:19 260:23
shortening  46:19
shorter  225:22
  242:3
shorthand  237:22

shortly  145:19
  146:7,13
shoshone  5:11
  23:18 61:19 62:19
should've  59:18
show  71:4,7,7
  84:3 149:24
  163:21 228:3
showing  151:6
shown  188:17
  207:17 236:19
shows  89:12
side  11:13 36:2,21
  40:13,13 45:18
  46:1,13,14,24
  47:2 49:8,16,23
  50:3 73:7 77:22
  92:15 101:6,6,7
  101:10 102:21
  103:2 136:16
  163:18 165:9,12
  166:23 191:12,13
  194:13 196:6,25
  198:7 206:23,23
  216:18 224:14
  226:19 246:10
side's  101:8
sides  50:1 194:19
  211:15,15
sidestepped
  149:10
sight  232:22
sign  51:8 78:16
  114:17 115:5
  116:5 267:21
signatories
  241:13,14
signatures  32:2
  240:10
signed  40:21
  188:12
significance
  204:24

**significant** 96:1
110:5 124:21
132:1 212:2
**significantly**
95:24
**signing** 112:24
113:25 169:19
241:6
**silent** 81:20
142:24
**similar** 42:2 72:16
166:4 180:11
194:25 197:6
218:17
**similarly** 88:5
209:8,10 244:13
246:7
**simple** 29:10
64:19 68:6 77:19
87:12 199:19
**simply** 54:19
70:18 81:18 144:1
185:10 195:14
212:12
**simultaneously**
46:5
**sincerely** 63:6
**single** 31:22 32:1
40:5 44:2 52:8
63:21 73:9,20,23
127:5,8 152:18
207:23 216:22
271:13
**singles** 190:9
**singleton** 10:3
196:19,20,24
197:8,16
**singleton's** 196:20
**sir** 80:10 138:10
190:2 191:23
**sit** 100:12 140:25
212:16

**site** 224:13,21
**situate** 52:11
**situated** 209:10
246:7
**situation** 30:1,21
33:8 34:3 47:23
51:20 52:9 97:21
**six** 109:23 120:11
251:12
**sixth** 26:18
**size** 93:8
**sized** 68:25,25
**sketch** 36:17
**skilled** 243:24
**skills** 227:20
**skipped** 89:20
**slash** 49:9
**slated** 48:25
**sleeping** 56:4
**slices** 32:20
**slightly** 55:25
72:3 74:24 163:18
163:19 258:6
267:22
**slip** 137:2
**slower** 230:1
**small** 34:22 52:12
68:25 98:24
156:16 228:6
241:18 252:8
**smile** 75:2
**smiling** 67:4
**snagged** 87:3
**snap** 38:17
**snapback** 89:17
236:13,19,22
**snapped** 38:15
**social** 50:25
**sole** 263:8
**solicit** 188:13
**solicitation** 2:14
9:2,14 10:23
12:15 13:3 14:9

16:18 19:20 21:25
22:7 33:20 76:20
77:1,24 94:10
95:9 97:14 175:20
176:1,9 188:9,16
198:20 213:4
214:10,16 219:20
220:10,25 221:2
223:13 228:8
233:5 234:21
258:9 260:19
261:3,22 262:12
262:13,14,19,20
262:24 264:4
266:15 270:5
271:25
**solicitations**
220:13
**solicited** 62:24
128:22
**solution** 217:8
247:24
**solutions** 274:20
**solve** 214:7,9
**somebody** 71:4
89:5 124:4 270:21
**somewhat** 102:21
**sonya** 22:25 274:3
274:8
**soon** 40:8 47:24
229:10 230:23
242:10 251:23
259:5 270:9
**sophisticated** 52:5
157:12
**sorry** 46:15 54:6
61:20 64:5 77:11
79:24 82:6,16
85:22 94:4 95:21
107:1 108:16
115:19 121:25
128:3 143:6 163:5
167:21 172:19

176:19 187:24
195:2 200:18
201:10 225:9
230:3 258:14
259:1 264:6,17
265:1
**sort** 29:21 30:9
31:6 35:8 36:17
38:9 40:11,13,19
42:1,17,17 43:16
44:5 46:12,19
47:8,23 48:2,6,15
49:3,6,12,24 50:6
50:9 52:11 55:18
57:5 60:3,16 61:1
61:13 62:3 63:10
65:2,3,8,11,13
66:4,20 69:23
70:8 71:1,14,20
74:24 84:4 86:2,6
92:23 101:20
104:10 105:7
127:3 139:13,19
140:1 141:19
148:8 151:8 204:9
248:3 261:15
270:18
**sorts** 45:23
**sought** 94:16
169:13
**sound** 29:2 30:18
45:9 49:3 50:14
50:20 51:7,22
57:19 58:15 85:6
89:18 101:22
130:13 156:18
167:5 168:7 176:9
187:7 199:18,19
199:19 201:18
205:13 207:13
208:12 209:3
213:2,15 218:6,12
220:14,25 221:24

222:7,7 223:7
224:12,24 237:3
**sounds** 145:20
146:13 150:11
199:3 211:19
**source** 127:24
**sources** 103:21
**southern** 1:2 98:3
183:10 202:8
**sovereign** 178:9
**sovereignty**
177:23,24
**space** 61:2
**spaced** 63:22
152:18
**spades** 169:2
**speak** 28:8,10,11
29:13 40:12 49:14
51:6 55:18 101:16
101:16 143:1,10
166:1 190:2
200:14 208:13
213:8 216:21
229:25 234:3
241:15 243:19
271:4,9
**speaking** 202:2
220:13 226:17
267:16
**special** 31:1 64:23
100:17 163:6,14
170:13 173:23
203:23
**specialty** 4:9 61:6
**specific** 59:25
62:3 75:10 78:2
79:13 198:3
214:13 219:6
221:5 251:14
**specifically** 48:22
88:8 190:9 193:14
227:6 256:1

**specified** 86:5,10
**specify** 43:12
196:17
**spectrum** 101:14
**speculating**
168:23,24 172:9
**speculative**
145:16
**speed** 139:15
**spelled** 193:14
**spend** 69:7 71:21
236:4 269:22
**spending** 211:4
258:21
**spent** 34:5 47:12
52:6 148:1 170:20
177:9 212:2
256:15
**split** 212:13
**splits** 211:5
**spoken** 51:17,17
51:18 100:9
**spot** 142:10 143:3
**square** 25:3
**sr** 3:2 191:23
**st** 5:16 23:16
61:20,20 62:17
152:5 256:9
**stage** 212:8
**stages** 39:24
**stakeholder** 32:21
33:21 74:14
148:22
**stakeholders**
30:24 50:19,25
58:11 65:16 71:7
74:13,16 104:15
139:18 150:3
202:19
**stand** 62:12 74:12
**standard** 68:20
71:19 86:1 114:15
114:19,20 115:11

115:20 125:11
150:24 151:5,8
193:21
**standards** 153:1
**standing** 178:14
178:19 199:6
256:22
**standpoint** 110:5
**stands** 271:21
**start** 95:22 102:22
118:1 219:23
233:21 242:4
**started** 177:8,8
232:15 238:21
**starting** 53:8
189:18 211:6
235:1
**starts** 189:24
254:16
**state** 3:21 9:7 12:3
12:19 43:24 55:6
65:18 103:24
114:12 155:1,9,12
177:18,25 178:8
178:10,13 184:11
184:17 185:19
190:9 209:10
217:12,12 221:25
227:12 235:11
245:14 248:18,22
248:25 251:15,15
252:1,24 255:9
269:6
**state's** 184:15
**stated** 115:7,10
197:1 198:8 216:3
219:6 223:12
224:16 227:16
241:20
**statement** 2:8,8,9
2:14 3:14,20 4:1,5
4:14,18,22 5:1,5,9
5:13,20 6:4,7,16

7:1,4,13,18 8:1,5
8:10,15,17,17 9:2
9:8,13 10:2,6,17
10:22 11:8,14,18
11:19,20 12:1,2,8
12:15,21 13:1,2,9
13:11,17,23 14:9
14:20 15:1,2,5,10
15:19 16:1,5,6,11
16:12,16,18 17:1
17:8,12,17,18
18:2,7,12,13,18
18:21,22 19:6,12
19:13,18,20 20:1
20:7,17 21:1,6,6
21:15,16,24 22:6
22:7 28:5 30:4,7
30:14 31:20 32:6
32:13 33:15 34:8
34:15,18,22 35:5
35:7,14 40:1,2
41:8 42:15,20
51:3,8,13 52:24
54:13 56:17 58:6
58:25 59:5,22
60:18 61:10 62:6
62:8,13 63:1,9,11
64:1,6,11 66:14
67:13,15,19 69:11
71:13,15 74:8
79:6,7 80:4,20,22
80:25 81:8,17,19
82:1 84:6,10,13
85:11 86:17 87:23
88:3,5,11 90:10
92:5 94:9 97:14
97:15 98:12,15
99:16 100:4 102:4
102:9 103:2
105:18 106:11
107:12,15 110:20
114:5 116:19
119:6 120:7 121:8

122:8,21 123:3
124:13 125:4,10
131:15,22 132:3
134:2 136:5,9
139:4 141:7 147:4
148:13 150:25
151:16,18 153:6
154:4,5,13 155:15
160:2 162:24
164:4 165:19
166:7,24 167:14
168:3 169:10
171:12,15 173:3
174:21 175:6,20
175:25 181:13
188:11 190:5
192:2,6 193:3
194:16 196:14
197:4,15,23 198:9
198:9 200:3,5,9
200:15 201:2,4
203:6 204:12
206:7 207:18
208:12,17 209:18
211:25 212:6
213:9 216:4 218:7
218:14,24 219:1,6
220:2,5,6,11,17
220:20 221:2
223:5,12 225:3,18
227:12 228:7
229:9 230:21
232:7 234:21
235:2,3,4,9 241:7
242:2,5,12,24
249:21 250:1
252:10,20 254:15
257:13,16,17,17
257:18 261:7
264:23,25 265:14
266:3 268:25
269:1

statement's 150:5
statements 39:1
  118:19 121:11
  151:1,11 162:22
  200:6 227:6 242:6
states 1:1,12 3:17
  9:12,18 24:2,8
  27:1 31:17 32:22
  38:18 41:16 42:4
  42:5 44:1 46:25
  72:1,4 76:4 87:21
  87:22 104:12,15
  105:1 149:13
  171:2 172:25
  176:10,16 177:12
  177:13,21,23
  178:4,6,11 179:4
  180:23,24 181:6
  181:23 183:21,22
  184:25 186:20
  194:2 202:9,12
  205:3,9 207:1
  209:8 217:1 224:7
  267:25
stating 122:16
status 183:22
  192:22
statutorily 231:7
statutory 120:8
stay 78:14 166:14
  233:4
staying 142:24
steadfast 4:7 61:5
steege 142:21
stein 4:11
step 56:22 117:11
  131:22 199:18
  204:18 205:11,13
  206:10
steps 164:7 169:8
  186:25 215:22
stimus 2:17 11:5
  190:1,1,8 191:8

stint 257:10
stirred 140:22
stop 40:25 68:16
  165:1 179:20,21
  182:9 223:18,24
  224:1,18
stopping 175:24
  187:22 195:14
story 186:1
  224:15 229:3
  240:8
straight 49:11
  153:24
strauss 27:7
streamline 130:15
  130:17
streamlined
  265:11
street 1:13 23:20
  24:3,10,17 25:10
  27:2,17
strengths 64:14
strenuously 74:22
stretch 185:3
strictly 220:12
strikes 38:23
  39:23 156:23
  188:8 196:7
string 68:24
strokes 257:19
strong 43:14
  51:19 53:22
  261:21
stronger 149:16
strongly 51:1
  69:20 224:19
  240:18 242:8
struck 83:17
structural 37:11
  38:24
structure 37:13
  43:23 48:5 49:2
  50:12 60:15

193:19
structured 133:13
stuff 54:12 57:5
  67:18 131:25
  155:25 166:15
  271:12
style 29:16
sub 61:14
subclass 216:12
subdivided 50:7
subdivision 178:5
subdivisions
  177:15,16 178:14
  181:1
subgroups 32:19
subject 71:10 96:3
  102:10 112:20
  113:7 153:5
  173:17,20 174:13
  186:5 226:5 231:5
  237:18 241:7
  245:17 268:4
subjected 141:8
submission 11:18
  153:15 225:19
submit 69:5 84:1
  115:3 137:19
  208:20 233:24
submitted 76:18
  164:15 206:6
  210:7
subpoints 71:14
subrogation 42:1
subsidiaries 6:1
substance 107:1
substantial 35:4
  48:1,4 71:6 110:1
  202:11
substantially
  164:17 180:11
  244:24 261:6
substantive 44:10
  92:8 227:1,8

sue 37:10,10
sued 37:1,7
suffer 168:4
suffered 41:21
  197:8
suffering 197:12
suffice 73:16
sufficient 38:5
  64:10 90:22 94:25
  96:24 150:7
  157:15 158:14
  170:2 172:2,15
  243:8 248:2
sufficiently 122:8
  122:11 195:12
  197:4
suggest 171:20
  173:6
suggested 38:10
  102:7
suggesting 142:25
  160:23 268:6
suggestion 227:16
  240:4 242:3
  248:17
suggestions
  223:10
suggests 103:19
suing 47:11 48:13
suite 24:10 274:22
sum 90:21 92:22
  101:9 212:24
  225:1
summaries 74:4
summarize 55:5
  56:14 58:15
summarized
  54:23 183:5
summarizes
  225:22
summarizing
  56:20

summary 51:5
  65:8 67:6 167:22
  181:22 200:20
  242:3
summer 94:18
  211:6
sums 48:1 92:16
  92:17
sun 5:24
sunday 155:14
  188:25 213:11
sunlight 58:5
superiority 178:4
supermarket
  136:25
supermarkets
  137:3
suppl 11:8
supplement 6:4
  7:1 12:10 15:19
  17:2 19:6 20:2,18
  21:2 32:3 39:6
  40:19 41:6 57:9
  89:22 94:14 95:3
  95:12,14 96:9
  117:5 123:12
  124:2 155:23
  156:24 157:4
  158:19 191:4,4
  240:8,15 244:19
  244:19 245:2
  259:13,22 260:2
  268:2
supplemental
  10:5,17 12:7
  13:22 22:14 75:13
  76:19 78:19 106:4
  107:18 133:15
supplemented
  188:2 239:23
supplements
  39:11 51:11 54:13
  57:2 95:13

support 11:14
  13:9 14:8 57:11
  74:14 76:22 95:25
  142:19 176:11
  190:3 219:3,8,22
  220:3 225:4 231:6
  242:16 257:18
supported 242:17
  242:18
supporting 70:21
supportive 206:9
  207:17
supports 203:24
  209:17
suppose 152:21
supposed 56:19
  69:10 135:3,4
surcharge 42:1
sure 36:20 40:24
  41:2 47:10 48:18
  49:6 50:9,13,13
  52:17 55:11 56:16
  63:8,15,20 76:1
  77:23 78:3 82:6
  83:15 86:19 87:7
  91:17 100:18
  107:14,16 123:22
  128:9 130:15
  137:25 138:14
  143:13 147:20
  154:19 158:2
  161:10 163:9
  165:6 170:16
  175:3 179:16
  209:24 210:6,12
  210:17,22 212:4
  214:24 215:12
  225:13 230:3
  231:24 232:6
  235:3,6 236:7
  238:21 239:3
  245:24 248:6,20
  249:22 251:11

259:18,21 261:14
  271:17 272:18
surely 249:12
  270:4
surprise 29:6
  207:10 222:18
  223:2 265:17
surprised 59:19
  152:8
survives 192:8
susan 3:9 193:25
swatted 215:15
  270:11
swear 76:10,12
sweetwater 99:2
sworn 77:21
sync 235:4
synthesize 67:11
synthesized
  166:19
system 133:8
  134:1,3 138:9
  148:19 246:19
  248:14,19,22
  249:1,7,14

**t**

t 183:11 190:1
  191:6,6 194:9,9
  274:1,1
table 96:5 251:10
tactical 182:3
tails 171:23
take 28:8 35:25
  42:5 52:17 60:25
  65:9,10 75:11
  100:4 126:19
  131:22 140:1,9,19
  147:8 161:25
  171:6 186:8,20
  195:20,24 196:4
  198:20 199:6,24
  200:14 215:17
  227:15 233:10

236:24 240:14
251:5 257:13
261:8 262:3,9
264:17 271:11
272:16
**taken**   51:25 58:12
60:19 65:20 67:20
164:7 221:6
234:24 245:18
257:16 264:2
**takes**   66:10 99:7
154:25 160:19
**talk**   63:15 69:12
77:13 128:6
155:14 172:20
189:1 214:6,7
235:12,13 256:13
258:19
**talked**   167:22
188:25 249:18,20
256:6 266:14
**talking**   29:22 33:6
34:16 43:3 51:21
63:6 78:1 83:23
84:7 110:25 111:1
112:7 127:15
128:8 129:11,12
130:3 137:18
152:8 157:11
164:1 169:1
178:22 183:25
184:3,5 186:14,14
187:11 235:10
243:5 248:9 251:9
258:21,22 260:20
**tape**   30:9
**tax**   201:15
**taxes**   253:13
**tdp**   57:5 73:8
108:14 141:16
211:9 212:4,14
213:16,16 216:13
248:11 249:11

**tdps**   43:3 73:14
106:20 107:1
113:12 140:7
142:11
**team**   34:17 124:5
124:10 171:21,21
171:22,22 211:11
270:21
**teams**   234:9
**technical**   71:14
**technically**   52:5
**technicolor**   64:12
**teed**   158:17
**teeny**   59:3
**telegraph**   268:16
**telephone**   201:19
**telephonic**   267:1
**telephonically**
23:8,9,10,11,12
23:23 24:6,13,20
25:6,13,21 26:6
26:13,21 27:5,13
27:20 267:5
**tell**   54:4 76:13
78:13 108:24
109:23 130:19
164:14 182:17
219:12 224:14
241:13
**telling**   159:21
**temple**   25:8
**ten**   37:20 41:5
47:12 92:10 95:3
156:6,13 157:18
168:10,11,12,12
169:17
**tend**   49:11
**tendril**   68:10
**tens**   38:22 211:4
**tense**   262:22
**tent**   31:23 34:11
204:9

**tenth**   99:2
**term**   87:5 88:12
88:14,15 159:6
202:16 233:5
251:21 262:18
**terminate**   268:24
**termination**   37:24
**terms**   35:14 40:17
41:21 42:21 45:9
45:15,18 49:1
64:15 84:23 85:12
85:12 86:4 91:9
95:17,23,25 96:3
96:7 111:21
112:19 115:23
122:2 123:5
156:12 157:14
164:22 169:12,12
169:16 172:8
180:12 194:15,16
206:23 211:7
213:10 215:7
272:4
**terrible**   51:4
55:24 92:23
**test**   73:18,24
149:6 150:15,15
150:16
**testament**   58:10
207:15
**testimony**   75:17
76:21
**teva**   5:24
**thank**   60:24 63:6
63:7 75:8 78:9,17
78:21 79:9,15,19
86:13 103:16
105:11 106:1
122:15 124:8,15
124:19,19 139:10
143:15 150:9
153:10,11,13
154:15,18,22

155:11,12,22
159:4 165:4,4
170:3 171:16
173:16 175:13
189:14,15 198:12
199:25 202:4,24
202:25 203:2
204:15,16 210:1
210:13,14 214:18
215:25 216:5
217:22,24 218:1
225:7,8 226:13,20
228:25,25 234:5
234:22 238:18
239:10 241:24
249:17 251:5
267:18 270:17
271:10 272:24
**thanks**   29:4,7
154:24 158:16
175:12 245:25
**that's**   217:14
221:21 226:2,8
229:12 230:14,15
230:24 235:25
237:6,22 238:13
238:16,17 240:23
241:3 242:15
243:15 245:22,24
246:11,12
**theirs**   107:22
**theory**   149:18
**thereto**   2:17 9:16
10:25 14:12 16:20
19:23 22:2,10
**therewith**   2:16
9:15 10:25 14:11
16:20 19:22 22:2
22:9
**there's**   217:14
219:11 230:8
232:3 233:19
235:17 238:21

239:14 240:16
241:19 244:20
245:11 246:11
**they'd**  241:15
**they're**  219:2
227:19,25 236:2
242:21
**they've**  227:13
**thin**  68:10
**thing**  44:10 46:9
60:16 69:2 96:19
100:1 101:2
112:12 115:10
120:25 141:17,24
163:7 170:5,19
177:10 201:13
224:5 226:25
231:22 251:4
256:14 260:1
269:11
**things**  29:17
30:21 39:5,6,25
40:1,8,18 41:22
44:8,16,17,20
45:1,5,20,22
49:11 51:2 52:14
56:2,16 59:6 67:7
74:6 82:4 87:9
89:4 95:2 96:5
97:25 101:17
102:15 104:5
111:13 112:13
113:13,14 139:13
141:20 143:17
147:15 151:14
155:19,20 156:6
158:1 160:4
162:11 163:15
168:2 170:18
171:8 185:17
199:18 201:18
210:3,19 215:1,7
215:8 218:24

219:11,13 230:13
233:10,17,20,23
239:1 267:19
**think**  28:7,19,23
30:1,2,24 31:7,20
32:17 33:10 35:25
36:16 37:2 38:11
39:9,14,17,18,21
40:8 41:14 42:9,9
46:1 49:5 50:11
50:20 51:2,4,16
51:18 52:6,7,8
53:6,11 54:8
55:11 56:6,8,14
56:21 57:3,22
58:3,9,16 59:18
59:23 60:3,9 61:3
66:9,18 67:3 70:1
70:5 71:11,12
72:19 73:19 74:4
74:23 77:5,6 80:8
80:9 82:12 83:16
84:9 86:3 87:12
88:2 91:7,8,10,11
91:14,23 92:8,23
93:1,23 95:10,10
95:13,15,15,16
96:10,14,22,24
97:24,25 98:10
100:5 101:1 102:9
102:14,18 104:2,2
104:6 105:4,5,8
105:12 106:1,20
113:16 116:18
117:4 119:11,17
119:19 121:15,18
122:10 123:23
124:21,23 125:6
125:10,15,20,22
126:3,5,18,22,25
127:10 128:7
129:9,24 130:2,23
131:7 132:12

133:17,18,25
134:6 136:2,4,8
137:17 138:15
139:1,1 141:5,15
142:2,7 143:5
144:3,10,18 145:5
145:6,19 146:5,15
146:23 147:5,21
149:19 150:4,6,20
150:22 151:4,23
152:12,16,19,23
152:23 153:1,5,7
154:3,4,5,5
155:15,16 156:1
156:19 157:6,12
157:19,24 158:14
160:4,9,15,24
162:7,17,18,20
163:20 164:2
166:17 167:11
168:2,14 169:7,22
169:25 170:2,11
170:12,20 171:5
171:11,25 172:14
172:15,19 173:18
174:22,22 175:1
175:17 176:22
177:2,9 178:11,13
179:3,9 180:6,7,7
181:16,17,19,24
182:3,11,19,23,25
184:22 185:6
186:25 187:11
188:14,19,21
189:17,21 190:4,7
190:12,14,16,24
190:25 191:14,15
191:17 192:1,1,5
193:10 194:5
195:7 196:15
198:13,23 199:2
199:20 203:11,18
206:15 207:15,19

208:11 211:24
212:12,16 214:4
215:17,18 216:18
221:20 223:2
225:10 227:2,20
228:2,13 229:7,19
230:1,7,13,14,21
231:17 232:15,18
232:21 233:4,7,12
233:13 234:6
235:3,15,19
236:18,23 237:8
237:10,21 239:20
239:24 240:2,17
240:20 241:6
242:11 243:4,10
243:13 244:21,22
244:24 245:4,9,22
246:8,9,11,18,21
247:11,16 248:3
248:15,15,19
249:1,1 250:4
251:4,18,21 252:1
252:4,10,23
253:10,18 254:1
254:22 255:4,9,14
256:8,19 257:4,7
258:21 259:5,14
259:25 260:3,14
260:19,25 261:13
261:13 262:1,2,4
263:15,23,24
264:3,9,14,23
265:1,13,19 266:1
266:11,18,19,24
266:25 267:19
269:4,5 270:21,24
271:4,4 272:20
**thinking**  64:13
145:2,6 147:9
161:21 166:18
**thinks**  77:2
260:21

**third**  13:3 20:17
21:10,16 27:2
43:16,16 49:7
54:21 56:15 66:8
66:19 69:21,25
70:13,16 112:17
119:19 129:3
134:6,7,8,10
140:5 146:2 150:5
152:3,11,14 182:9
183:9 195:22
206:21 218:13
219:17 220:1
227:12 234:23
237:7 244:4 245:6
245:14 248:6
250:4 254:17,23
256:18,20
**thirds**  119:18
255:16
**thornton**  6:23,24
10:13,14 14:3,4
**thought**  55:14
61:1 66:6 94:4
120:1 130:12
170:12 181:13
232:17
**thoughtful**  60:19
67:21 140:3
**thousand**  269:23
**thousands**  38:21
140:8 147:18
211:4
**threats**  226:6,7
**three**  118:17
126:9 134:22
208:11 213:21
225:15,24 230:15
231:11 242:14
259:10
**threshold**  220:5
**throw**  68:11

**throws**  140:13
**thumb**  233:21
269:10
**thursday**  269:24
270:4,14,18
**tie**  251:24
**ties**  88:14 98:7
231:20
**tilt**  182:21 187:22
**time**  28:10 31:4
33:11,16 34:3
35:13 38:14 39:7
39:13 42:6,11
43:9 46:19 49:13
57:24 58:20 61:8
63:5 66:17 67:3
69:4 71:12,21
74:11 75:23,25
81:1 84:19 92:3
92:20 95:13
100:12 101:25
102:2,6 108:9
124:22 128:12,17
128:19,20 133:22
139:19 142:11
151:14 155:13
156:16 158:4,5,7
158:9 167:3,8
168:14 170:21
177:3,9 182:17,17
182:18 183:2
187:9 188:15
193:8 200:14
204:2,4 205:4
210:1 212:2 216:8
217:24 219:7
222:17 223:18,23
227:17,22 230:2
234:7 236:4
243:17 246:9
248:5 250:2
251:25 256:15,24
257:23 258:2,23

260:15 263:17,20
264:8 266:21
268:10 269:12
272:8,12
**timelag**  240:12
**timely**  132:21
133:15 134:17
135:8 250:21
**times**  44:11 52:8
57:23 64:18
134:22 148:16,16
148:17,17 183:14
186:8 198:2 223:2
244:21 249:14,14
**timetable**  201:1
**timing**  95:9
156:11 157:3
200:20
**tiny**  30:6 74:8,8
213:23 270:25
**tmt**  64:22 66:1
166:8
**today**  30:16 31:8
31:8,25 33:11
34:12 35:20 40:23
43:4 44:16 50:9
51:9 53:15 60:18
60:23 66:23 72:14
76:21 81:3 84:6
95:17 101:21
103:11,23 118:14
123:3,6,11,17
124:22 126:24
131:1,4 155:17,25
156:3,4,13 160:5
160:7 171:4,14
173:3 176:8 203:7
205:13 206:9
208:10 210:1
217:25 218:22
220:3 230:18
231:5,13 238:21
243:7 267:12

**271:**3,12,21 272:8
**today's**  41:5 66:24
68:2 204:25
205:11,15
**told**  30:12 59:8
93:15,21 173:9
189:2
**tomorrow**  258:17
**top**  37:21 48:9
254:3,19 261:4
**topco**  57:10
103:20
**topco's**  57:13
254:7
**tort**  45:3 48:4
73:20 84:3 101:12
137:5 208:5
248:14,19,19
249:1,14
**tortfeasors**  41:20
**tostenson**  2:22
9:23 191:6,9
**total**  78:4,7
**totality**  120:17
**totally**  44:21
49:10 52:22 61:11
73:11 231:17
233:18
**touch**  137:25
**touched**  52:7,7
**tough**  272:17
**tour**  61:1
**township**  6:23,24
10:13,14 14:3,5
**tpp**  43:15 44:6
49:7 246:6
**tpps**  44:1 50:4
245:14
**track**  238:1,2
**tracks**  182:10
**trading**  172:4
**traditional**  29:2
32:4

traditionally  48:5
tragedy  147:19,20
trailer  64:22 66:1
  166:8
transaction  32:1
transcribed  22:25
transcript  274:4
transfer  38:17
  57:9 149:18
transfers  166:4
translate  34:2
tread  45:2
treat  114:8 116:1
treated  43:22
  249:11
treatment  43:12
  43:19 107:11
  113:14 179:10,11
  179:18 180:23
  181:20 190:6
  191:15 212:10
  219:15
treatment's
  179:17 180:19,22
tremendous  29:7
  29:7 34:21 37:12
  45:22 48:13 51:23
  56:24 65:16,17
  208:3,24
trial  69:16 74:20
tribe  5:3 61:18
  252:8,9 253:7
tribes  38:20 46:23
  205:4 207:2
tribune  98:21
tried  39:2 168:18
  197:12 206:21
tripartite  199:12
triple  269:14
trivial  92:22
troop  9:17 24:6
  77:9,10,16,19,21
  78:9 94:2,3,4

155:4,8,11,11,22
157:16,18,21
158:11,16,22,25
159:2,4,16,18
160:7,9,12,24
161:4,21,25 162:3
162:20 165:4,7
167:17,18,21
168:17 171:16,20
172:16,18 173:12
173:16 175:14,17
176:21,24 177:2
177:23 178:3,11
178:18,21,24
179:5 180:2,20
181:11,13,16
185:4,8,16,23
186:2 187:3,6,9
187:15,18,24
188:24 189:5,7,14
189:15 229:7
256:8
troop's  166:5
trouble  107:2
  269:6
true  33:14,17
  48:12 128:10
  140:11 148:15
  178:12 198:23
  221:22 254:7,8,9
  274:4
truly  39:10 54:8
  149:25 190:16,19
  234:6
trust  41:11 42:8
  42:24 43:1,2
  46:24 57:6,7,8,14
  61:14 72:2 94:22
  96:17,18 97:3
  104:4,4,5 105:8,8
  111:5 112:19
  113:1 116:15
  117:11 118:22,25

119:11 126:12,20
127:18 128:10
129:19,19 130:8
130:10 134:4
135:3 136:10
137:20,20,22
138:16 149:17
154:2 208:21
211:9 213:14
222:21 244:17,18
244:18,23,25,25
246:20,21,23
247:2 248:12
249:19 250:7
251:9,13 252:9,9
252:12,15,22
253:7,7,9 259:19
272:6
trustee  3:17 24:9
  39:5,7 61:25
  63:19 67:4 79:25
  80:12,20,23 81:4
  94:20 100:11
  105:13 192:17
  237:21 242:3
trustee's  79:5,10
  79:20 80:9 98:23
  105:16,20 106:3
  162:14 255:8
trustees  57:12,15
trusts  49:24,25
  50:3 57:8 81:11
  81:12,16 103:19
  196:6 214:15
truth  29:10 76:13
  76:13,13 244:9,12
try  68:11 149:1
  162:1 171:24,24
  180:8 193:20
  209:14 213:1
  224:14 227:3
  229:12

trying  45:24
  77:12 87:1 107:3
  149:3 204:10
  205:5 236:4
  247:16
tuesday  233:16
  258:23 269:8,17
  269:20,21 270:16
turn  58:22 63:16
  67:1 78:15,23
  153:14 154:20
  155:3 189:23
  201:23 210:18,18
  215:3,20 228:7
  234:2,20
turned  80:16 96:8
  111:12
turning  199:1
  237:8
turnover  50:9
turnovers  45:5
turns  177:17
tvps  38:19
tweak  55:14
tweaked  56:1
  141:21
tweaking  142:13
tweaks  54:6 55:22
  134:4 142:24
tweets  225:16
twelve  30:5
twice  241:20
two  60:7 67:17
  69:7 94:8 97:25
  98:18 106:18
  108:19 112:13,14
  119:18 124:22,25
  125:12 131:9
  132:15,20 133:17
  134:11 136:3
  144:21 145:2,20
  146:6 147:5,9
  148:12 151:14

156:20,25 157:4
158:6 168:13
170:22 175:18
176:7,7 182:7
184:9 191:25
193:3 194:4
196:21 197:5
199:4 200:14
208:11 213:21
214:25 221:5
228:25 229:13
231:10 232:19,20
233:16 234:18
235:13 236:23
241:23 245:5
250:8,9,25 255:16
260:25 262:13,15
262:24 268:21
271:15
**tyler**  7:22
**type**  48:16 64:16
117:2 190:25
196:9 228:20
236:4
**types**  33:19 49:11
86:1 178:2,22
190:13 235:14
**typical**  57:2
**typo**  241:19,22
252:8
**typos**  271:6

**u**

**u**  190:1
**u.s.**  1:23 24:9 39:5
39:7 61:25 63:19
67:4 76:4 79:5,10
79:20,25 80:9,12
80:20,23 81:3
94:20 98:22
100:11 105:12,16
105:20 148:6
162:14 192:17
202:8 255:8

**ucc**  35:2,18 93:16
164:18 170:25
199:9 205:17
209:19 215:14
218:20 224:17
231:6,15 261:23
267:24
**ucc's**  218:11,15
219:4,12
**ultimate**  156:3
**ultimately**  30:22
50:6 65:23 91:14
148:7 179:7
180:15 182:4
205:6 207:17
208:9 212:3
227:21,24 235:14
243:13 246:4
**unable**  206:13
**unaddressed**
203:22
**unapologetically**
59:7
**unavoidable**
29:20
**unchanged**  35:6
**unclear**  81:7,14
81:18 82:4 84:24
103:3
**unconfirmability**
175:19
**unconfirmable**
125:5 212:14
**undercut**  176:17
**underline**  254:17
266:4
**underlying**
191:20 222:20
239:4
**underscore**
207:14 208:1
209:17

**underscored**
205:12
**understand**  28:15
35:16 36:11 41:3
48:3,15 71:24
82:7 86:15 95:16
97:24 103:22
104:20 109:4
111:3 112:17
114:7,22,23 116:9
119:1,21 125:16
127:19 131:12
132:17 133:24
134:10 135:17,18
139:19 141:4
145:18,22 147:14
150:13,14 155:19
156:17 168:15
172:16 182:12,25
185:9 186:16
187:3,4,17 213:12
214:6 221:17
235:7 241:6
247:11,23 253:8
253:10 258:24
259:5 261:21
**understandable**
59:6
**understandably**
195:1
**understanding**
30:15 45:7 48:20
49:5,10 75:21
108:18 120:13
129:17 135:10
143:23 168:10
175:14 180:2
219:20 235:5
251:25 263:12
270:3
**understates**  33:1
**understood**
105:23 117:15

138:10 141:15
159:2 175:8 200:4
238:3 239:6
253:20 259:7
**undertook**  165:20
**underway**  271:16
**undoubtedly**
254:18
**unfortunately**
29:18
**unhappy**  53:20
84:19 87:15
101:19 191:9
**unimpaired**  266:1
**union**  25:3
**unique**  71:17,17
183:22 208:4,7
220:24
**uniquely**  206:16
**united**  1:1,12 3:17
24:8 27:1 32:22
41:16 42:4,5 76:4
87:21,22 104:12
176:16 202:9,12
236:9
**units**  199:14
**universal**  212:22
**universe**  69:5
**university**  25:8
**unkind**  68:5
**unknown**  118:18
119:4
**unlawful**  68:21
**unliquidated**
222:6
**unnecessary**
51:22
**unpleasant**  64:18
**unquestionable**
31:10
**unrealistic**  53:25
**unreimbursed**
250:17,20

unrelated 185:19
unrepresented
  192:24
unresolved 58:25
  223:21
unsecured 13:1,6
  27:8 43:14,20
  44:4 192:15,16,19
  211:6
unthinkable
  38:12
unthinkably 41:4
  60:10 68:12,21
  70:17
untimely 106:12
unusual 49:21
upcoming 31:12
  223:22 271:16
update 42:21
  228:16
updated 34:19
  95:23 165:14,16
  165:18,19 228:24
updating 177:6,7
uphold 223:1
uphur 7:20
urge 72:24 224:19
  272:16
urged 39:23
usa 5:25
use 65:21 97:22
  120:16 126:7
  147:24 208:9
  212:11 235:20
  236:24,25 252:12
  255:18 271:8,8
uses 132:4 251:14
usual 257:12
usually 271:8
utilized 221:14
uzzi 11:21

**v**

v 152:5
vacuum 117:19
valedictory 234:8
valid 109:22
  112:16 140:12
  149:14
validated 31:1
valuation 145:15
value 35:24 36:16
  37:18,21 50:19
  60:11,13 65:19,21
  145:8 146:8 161:9
  161:12 195:21
varick 24:10
variety 32:5 126:4
various 30:23
  40:24 45:17 75:24
  80:20 153:25
  169:18 201:20
  205:18,22 207:5
  212:22 215:6
  221:13 223:5
  228:12
vault 160:19
vehicles 230:9
veil 150:21 151:5
  152:11 256:13,17
veritext 274:20
versa 232:8
version 35:5
  145:7 150:5 237:8
versus 50:8 151:1
  256:10
veterans 41:24
vice 232:8
victim 224:17
victims 13:9,13
  25:16 34:4 118:21
  119:21 195:17
  246:8
video 2:2 75:13
  76:8 199:1

view 28:21 37:12
  44:5 47:14 51:19
  65:6,10 73:12
  74:19 99:7 102:1
  120:15 140:21
  148:11 149:24
  151:9 158:13
  188:15 195:20,24
  231:12,15,16
  232:4,5
viewed 154:12
  197:6 231:19
views 43:15 65:8
  70:12 140:7 212:7
  222:17 227:12
  232:8,13 261:21
vilified 225:24
violate 102:15
vip 97:3
virginia 3:21 12:4
  61:7 67:21 208:15
  208:16 209:8,10
virginia's 7:13
  12:20
virginias 9:7
virtual 215:20
virtually 30:19
  33:25 37:15 57:3
  68:18 71:24
  148:22
virtue 48:8
vita 99:5
voice 28:12
  167:25 177:1
  216:21
voices 139:14
volume 86:25
voluminous 94:21
vonnegut 14:17
  15:2,17,22 16:3
  17:5 18:22 19:4,9
  20:5,21 21:4,9,13
  21:19 23:11 55:20

137:13,14,16,24
138:4,7,10,13,22
138:25 139:3,6,8
139:10 174:11,11
174:15,18 237:2,3
238:3 239:6,10,14
245:20,25 253:3,5
253:5,17,20 254:9
vote 32:16 33:12
  36:12 39:11 66:2
  67:25 68:4,14,16
  74:19 97:17,17,20
  97:20,22 99:17
  101:25 119:21
  120:22 121:4
  122:7,12,13
  151:19 156:2
  168:25 177:4
  179:22,23,23
  180:13 182:2,16
  182:18,23 183:3
  183:14 184:23,24
  186:23 191:1,19
  222:17 233:2
  241:1 255:16
  263:2,17 264:8
  266:22
voted 72:5,10,11
  97:21
voter 67:11
voters 183:1
  252:3
votes 57:24 121:4
  128:22,23 179:14
  255:12
voting 2:14 9:14
  10:23 14:9 16:18
  19:20 21:25 22:8
  57:1 68:16 73:10
  84:25 86:20 94:10
  94:17,22 95:4
  97:6 119:15
  120:23 156:14

158:20,22 179:20
179:21,25 181:10
182:1,14 183:14
196:10 197:2
222:16 255:7,9,15
261:3 265:25
271:24

**w**

w   12:8 194:24
**wait**   52:4 53:4
  54:6 166:13 270:4
**waiting**   83:1
  177:8 199:11
  250:18
**walgreen**   5:25
**walk**   29:20 33:16
  51:10 65:3 76:5
**walking**   31:4
  120:20
**walmart**   6:1
**walrath**   98:21
**wamu**   184:19
**want**   31:21 33:5
  51:5 52:19 53:11
  57:21 63:4,8
  71:21 72:6 77:3
  77:11,16,23 79:12
  82:6 85:24 92:23
  94:7 99:22 100:5
  100:18 101:16,19
  102:17,18 103:18
  103:24 105:25
  107:17 108:9
  114:7 118:13
  120:18,19 121:22
  122:20,24 124:20
  125:13 129:4
  131:4 132:5 133:8
  133:13 134:25
  138:4 139:25
  140:3,10,21,24
  141:12 146:6
  148:25 151:19,20

153:4 166:1 170:5
170:10 171:12
172:19 175:3
179:22 183:1,15
187:22 189:7,19
189:20 198:4
200:21 202:10
207:13 208:1
209:16 210:16
213:5 215:17
220:1 222:22
225:2,11 226:1
232:8,14 238:14
238:21 239:24
240:25 247:19
248:6 251:10
253:9 257:10
259:4 261:14
262:6 267:22
268:7,7,10 269:14
**wanted**   75:11
  78:3 92:7 93:25
  97:2,8 105:14
  122:13 138:13
  154:18 170:17
  185:23 200:18
  202:22 203:8
  204:19 207:25
  210:19 214:8
  218:10 226:8,16
  239:8 268:16
**wants**   51:6 113:9
  113:24 125:25
  155:4 173:21
  174:5 191:19
  194:22 195:2
  196:11 210:22
  224:2 261:13
  262:7
**wardell**   23:3
  29:1 79:16 89:9
**warning**   100:3,5

**washington**
  184:11
**waste**   51:23 69:3
  268:10
**wasting**   195:14
**way**   29:16 34:11
  44:17 45:13 49:25
  54:3,4 59:9 71:12
  82:25 98:24,25,25
  99:11 105:15
  109:17 118:24
  119:25 122:3
  128:7 133:13
  135:14,15 142:5
  142:23 143:4,24
  145:5 146:6
  147:20 160:4
  174:9 179:23,25
  182:18,21 189:12
  197:13 212:25
  216:17 221:4
  227:24 229:4
  231:2 233:12
  235:8 242:23
  243:15 247:7
  251:6 263:2,24
  265:18
**ways**   38:9 145:2
  158:6 231:19
  246:13
**we've**   49:13 58:22
  66:5 69:15 72:20
  80:5 84:7 109:25
  118:22 128:22
  138:19 141:15,16
  141:20 144:18
  163:9 172:15
  200:12 206:17
  207:14 210:25
  211:18,23 214:1
  257:5
**weaknesses**   64:15

**wealth**   38:11
  92:11,17 163:16
  164:17,20
**website**   166:25
  225:20,22 226:2
  226:17,19 227:11
  227:15
**week**   30:12 41:11
  95:5 229:11
  232:16,17 243:18
  258:4 260:5
**weekend**   94:19,25
**weeks**   73:20
  156:20 157:1,4
  271:16
**weintraub**   55:22
**welcome**   139:16
  214:19
**welfare**   203:25
**wellspring**   46:18
**went**   64:13,22,22
  69:8 128:7 166:18
  219:10
**weren't**   218:21
**west**   3:21 7:13 9:7
  12:3,19 24:3 61:7
  67:21 208:15,16
  209:8,10
**wetzel**   7:22
**we'll**   230:24 231:1
  231:2 232:2 238:3
  242:21
**we're**   218:10,11
  219:21 221:20
  223:10 224:5
  229:6 230:20
  231:16 233:20
  239:10 242:7
  243:5,21
**we've**   221:5 223:6
  224:11 230:21
  232:20 239:6

whatsoever  87:15
what's  222:12
wheel  139:7
  201:21
white  1:14 25:15
  70:2 143:7 166:11
  210:23
who've  28:7 92:5
  171:7 200:5
  216:14
whoa  53:4
who's  223:3
wife  8:12
willing  35:18
  146:24 150:11
  203:10 215:9
  234:14
win  69:17 147:16
  148:13 149:6,9
  215:13 252:7
winding  90:1
winds  5:2 23:17
  61:18 62:18
winthrop  24:1
wish  67:20 76:23
  124:9 200:5
wishes  198:21
withdraw  62:25
  200:15 203:5
  204:12 208:17
withdrawal  12:14
  12:19
withdrawing
  142:19
withdrawn  62:7,8
  62:21 63:9 107:21
  216:3
withhold  37:23
witness  76:15,17
  76:24 78:6,17
  260:15
witnesses  233:14
  260:7,13

wl  184:19,20
won  149:21
woodson  121:21
word  34:6 68:22
  213:21 236:24
  241:20 244:4,4,6
  244:7 245:21
  248:17 254:18,19
  271:7,17
worded  45:10
  247:8
words  40:4 71:16
  100:23 236:25
  238:11
work  31:21 35:2
  45:11 47:5 56:8
  56:19 60:8 73:8
  93:5,14 100:21,21
  109:21 111:25
  112:2 113:22
  205:24 206:2
  207:16 210:4
  212:24 213:21
  221:14,21,21
  229:12 231:18
  234:9,14 249:15
  260:11 270:9,10
  270:25 272:15
worked  47:8
  49:11 52:13,25
  104:11 171:23
  216:7 238:20
working  33:5,22
  34:9 47:11 52:14
  53:9 54:8 55:4
  60:11 100:16
  131:25 153:11
  175:9 202:22
  205:16 206:2
  211:18 217:9,20
  219:23 223:6,10
  227:1,19 238:19
  239:3,7 267:15

271:13
works  41:15 48:2
  75:15 84:18 95:9
  111:7 148:18,19
  158:6 211:24
  212:4 233:11
  240:17 246:13
  263:24
world  32:21 45:4
  52:6,9 61:14
  64:13 65:3 92:14
  149:19 170:17
  226:5 240:10,16
worldwide  37:14
  37:15
worried  146:9,10
  256:19
worse  28:24
worth  99:10,21
  121:9 160:5,6,7
  160:11 161:10,12
  161:13 162:5,23
  162:25 163:1
  180:16 181:17
  237:8 252:23
worthwhile  98:11
  136:12 167:15
  170:14 260:14
worthy  60:10
would've  67:20
  105:15 120:5
wow  271:10
write  174:5
writing  62:23
wrong  42:23
  44:15,15,20 55:15
  60:21 65:14,19
  75:1 80:11 149:25
  151:8 173:9,13
  201:18 221:23
wrote  67:12
  234:22 237:7

**x**

x  1:4,10 10:3 32:7
  115:25 136:18
  162:24 236:10
  250:9,13 251:1
  268:19 273:1

**y**

y  194:24 250:10
  250:13 251:2
  268:19
yeah  55:5 84:12
  86:22 91:22 93:5
  93:11,11 102:14
  104:9 116:20
  124:18 133:5
  144:15 157:22
  164:6,8 165:25
  176:25 237:2
  238:13 241:10
  245:24 247:18
  248:8 261:18
  262:9 265:4,22
year  29:4 36:4
  90:11 91:13
  140:23
years  44:3 47:12
  47:12,15 48:13
  90:20 91:16 105:7
  140:25 148:2
  149:23,23 170:22
  225:15,25
yep  141:13 167:16
yore  43:12
york  1:2 23:6 24:4
  24:11 25:4,4,19
  26:4,11,19 27:3,3
  27:11 202:9 252:6
you've  220:4
  246:22
yup  225:13 228:9
  228:9 245:24

**[z - zoom]**

| **z** |
|---|
| **z**  5:21 |
| **zero**  40:20,21 |
|   102:1 149:9 |
|   212:24 251:10 |
| **zip**  234:19 |
| **zoom**  2:2,4,10 |
|   21:8 28:14 267:5 |