June 29, 2021

Marshall S. Huebner
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, N.Y. 10017
(212) 450-4099
marshall.huebner@davispolk.com

*Re: Your Letter Dated June 16, 2021*

Mr. Huebner,

  Judge Drain and I have jointly reviewed your letter dated June 16, 2021, I have the following response, with which Judge Drain concurs:

  First (and probably foremost), it is not appropriate for this letter to be addressed to me. At the moment there is nothing pending before me in the Purdue bankruptcy. While I appreciate being your choice to handle any motion to withdraw the reference, you don't get to choose your judge. If you make a motion to withdraw the reference, our Clerk of Court will wheel it out at random, unless it is designated as "related" when the motion is filed. If it is so designated, the formal procedures for determining relatedness – which involve both the judge with the lowest docket number and the Assignment Committee – will have to be followed. See Local Rules of the Southern and Eastern Districts of New York 13(b)(2). So while I have handled one or two prior appeals in this matter pursuant to Local Rule 4(b), that does not make me the "Purdue bankruptcy judge;" and until you file a motion and obtain a formal ruling on relatedness, there is no basis for you to address the motion you are proposing to me – or to any district judge.

  To the extent that you seek to compare this situation with a matter involving Judges Drain and Rakoff some years ago (the Twin Laboratories bankruptcy), it is my understanding that there are many differences between the two cases. Chief among them is the fact that Judge Rakoff was at that time handling a large number of personal injury actions against multiple ephedra products manufacturers and distributors, one of which defendants was in bankruptcy before Judge Drain. By contrast, I am not handling any Purdue Pharma personal injury cases. The judge who can logically be compared to Judge Rakoff in the ephedra cases is Judge Polster, who is presiding over the MultiDistrict Litigation in Ohio.

Second, after reading your letter a number of times and talking to Judge Drain, it does not appear to either of us that there is any reason to convene a "joint trial," at which Judge Drain and I (or another district judge) would preside, in order to deal with the two issues as to which you are contemplating a motion to withdraw the reference.

The first of those issues, as I understand it, is a decision about whether the bankruptcy court has the authority to enter a third party bar order and injunction as a final order – a *Stern v. Marshall* issue. While I appreciate that the references could be withdrawn for just that particular aspect of the confirmation proceedings, per 28 U.S.C. § 157(d), the issue appears to present a pure question of law, not an issue that requires an evidentiary hearing. Additionally Judge Drain has not yet issued any bar order and injunction, and as I understand it that will only occur, if it does occur, at the conclusion of the confirmation hearing. Any advance ruling on the propriety of Judge Drain's action risks being a purely advisory opinion (and so unconstitutional). And the presence of a district judge at the confirmation hearing for the purpose of ruling on whether Judge Drain had the power to enter such an order at the conclusion of the proceeding would be superfluous.

The second issue I understand less well, but I gather, after talking with Judge Drain, that it involves whether a bankruptcy judge has the power to estimate, as opposed to deciding, personal injury claims in the context of plan confirmation, or otherwise rule on a chapter 11 plan's treatment of such claims in the light of 28 U.S.C. § 157(b)(5) and perhaps 28 U.S.C. § 157(b)(2). Again, that presents a pure legal issue, which in the ordinary course a district court would address on appeal if the Plan is confirmed as proposed. Moreover, it is my understanding that we cannot yet know whether an estimation hearing is necessary – and if so what it would entail – because the date for filing requests to have a claim estimated has not yet arrived and no such requests have been filed. This issue might involve a handful of claims that could be addressed in a fairly short time; but it also might involve hundreds or even thousands of requests, which would require a different approach – one that might even require consultation or coordination with the MDL judge.

I appreciate, as I know Judge Drain appreciates, the desire of all parties to see money flowing to the victims of the Oxycontin scandal as soon as possible, and I applaud you for trying to come up with a creative course of action to accomplish that laudable goal. However, it seems to me that the bests way to get the result you want is not via some novel procedure that may or may not end up speeding this litigation along, but by allowing matters to develop in the ordinary course, in accordance with the rules of the court and the schedule that I understand is already in place.

*[Signature]*

BY ECF TO ALL COUNSEL
BY EMAIL TO JUDGE DRAIN